## EXHIBIT A

Affiliates of ELT and/or CDC

Automated Systems Group, L.L.C.
Commercial Development Company, Inc.
Environmental Liability Transfer, Inc.
ELT-Marietta, Ohio, L.L.C.
Hagerstown, L.L.C.
Illinois Coal Mine, LLC
Tradesman, L.L.C.
West Virginia Coal Mine, LLC

## EXHIBIT B

### Properties

Exhibits B-1 through B-10:

| | |
|---|---|
| B-1 | Atlanta, GA |
| B-2 | Charleston, SC |
| B-3 | Fort Pierce, FL |
| B-4 | Guanica, PR |
| B-5 | Joplin, MO |
| B-6 | Memphis, TN |
| B-7 | Owensboro, KY |
| B-8 | Travelers Rest, SC |
| B-9 | Waterloo, NY |
| B-10 | Woburn, MA |

Each exhibit includes :

Legal Description, including name of owner;
Schedule of Equipment and Personal Property;
Schedule of Permitted Title Exceptions;
Deed Restrictions;
Schedule of Assignable Contracts;
Schedule of Licenses and Permits;
Schedule of Monetary Liens.

## EXHIBIT B-1 - Atlanta, GA

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property*:
1) 2 manufacturing buildings (about 150,000 square feet total)
    a) solvent and water based production areas – mix tanks, storage tanks, kettles, drum mixers, pumps, associated piping, conveyors, electrical controls, storage racks, scales, and other miscellaneous manufacturing equipment
    b) lab equipment and furniture – small air powered mixer, miscellaneous testing equipment
    c) waste water treatment equipment including equalization tank
    d) electric boiler and air compressors
    e) miscellaneous office furniture and equipment including kitchen furniture and appliances
    f) maintenance – miscellaneous parts, powered floor sweeper and drill press
2) above-ground solvent tank farm and piping with rack
3) silos, baghouses, and additional above-ground tank farm
4) covered outside warehouse area
5) drum racks
6) truck load rack
7) propane tank
8) multi-phase extraction and treatment system (extraction wells, vacuum pump, oil water separator/holding tank, air stripper, two 500-pound carbon units in a trailer type enclosure)
9) groundwater monitoring wells
10) Shed – Empty
11) Fire and security alarm systems – fire pumps, monitors, sprinklers, and halon system

* Two large transformers outside the solvent building are owned by Georgia Power.

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
    1) 3/7/06 Master Service Agreement - ATC Associates Inc.

Access Agreements:
    1) 5/17/05 Fulton County

Schedule of Orders and Permits:  Attached

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:  None

ATLANTA, GA

**CHICAGO TITLE INSURANCE COMPANY**
**COMMITMENT FOR TITLE INSURANCE**

SCHEDULE A

1.   Commitment No. 07-V216                          Effective Date: June 15, 2007

2.   Policy or Policies to be issued:

   (a)   ALTA OWNER'S POLICY                       $ TBD

         Proposed Insured:       TBD

   (b)   ALTA LOAN POLICY                          $TBD__

         Proposed Insured:       TBD

3.   Title to the fee simple estate or interest in the land described or referred to in this Commitment is at
     the effective date hereof vested in:

     **W. R. Grace & Co. - Conn., successor by merger to W.R. Grace & Co., a Connecticut**
     **corporation pursuant to Certificate of Merger dated May 25, 1988**

4.   The land referred to in this Commitment is located in the County of **Fulton**, State of Georgia, and
     described as follows:

     All that tract or parcel of land lying and being in Land Lots 86 & 87, 14th FF District, Fulton County,
     Georgia and being more particularly described on Exhibit "A" attached hereto.

Countersigned in Atlanta, Georgia

McLAIN & MERRITT, P.C.

By:_____
     C. Edward Goodgame, Vice President
     Authorized Agent

This Commitment is invalid unless Schedules A and B are assembled as one document with the cover,
containing the insuring provisions, exclusions, conditions and stipulations.

**ATLANTA, GA**

## LEGAL DESCRIPTION

TRACT 1

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 86 AND 87 OF THE 14TH FF DISTRICT, FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHEASTERLY RIGHT–OF–WAY LINE OF THE ATLANTIC COAST LINE RAILROAD (100' RIGHT–OF–WAY) AND THE NORTHWESTERLY RIGHT–OF–WAY OF PHILLIP LEE DRIVE (100' RIGHT–OF–WAY); THENCE ALONG THE SAID SOUTHEASTERLY RIGHT–OF–WAY LINE OF THE ATLANTIC COAST LINE RAILROAD 90.49 FEET LONG A CURVE TO THE RIGHT HAVING A RADIUS OF 669.25 FEET AND A CHORD BEARING NORTH 42 DEGREES 43 MINUTES 29 SECONDS EAST, 90.42 FEET;
THENCE CONTINUING NORTH 46 DEGREES 35 MINUTES 54 SECONDS EAST, 623.26 FEET TO THE SOUTHWESTERLY RIGHT–OF–WAY LINE OF THE ATLANTIC COAST LINE RAILROAD;
THENCE 789.00 FEET ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 783.80 FEET AND A CHORD BEARING SOUTH 10 DEGREES 46 MINUTES 46 SECONDS EAST, 753.52 FEET;
THENCE CONTINUING SOUTH 40 DEGREES 20 MINUTES 06 SECONDS EAST, 246.80 FEET TO A #4 REBAR, FOUND;
THENCE DEPARTING THE SAID SOUTHWESTERLY RIGHT–OF–WAY SOUTH 52 DEGREES 55 MINUTES 28 SECONDS WEST, 388.56 FEET TO A ¾" IRON PIPE, FOUND;
THENCE ALONG THE NORTHEASTERLY RIGHT–OF–WAY OF PHILLIP LEE ROAD NORTH 37 DEGREES 05 MINUTES 00 SECONDS WEST, 837.25 FEET TO THE POINT OF BEGINNING.
CONTAINING 8.75 ACRES OF LAND, MORE OR LESS.

TRACT 2

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 86 OF THE 14TH FF DISTRICT, FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING FROM THE INTERSECTION OF THE SOUTHEASTERLY RIGHT–OF–WAY LINE OF THE ATLANTIC COAST LINE RAILROAD (100' RIGHT–OF–WAY) AND THE NORTHWESTERLY RIGHT–OF–WAY OF PHILLIP LEE DRIVE (100' RIGHT–OF–WAY); THENCE ALONG THE SAID SOUTHEASTERLY RIGHT–OF–WAY LINE OF THE ATLANTIC COAST LINE RAILROAD 90.49 FEET LONG A CURVE TO THE RIGHT HAVING A RADIUS OF 669.25 FEET AND A CHORD BEARING NORTH 42 DEGREES 43 MINUTES 29 SECONDS EAST, 90.42 FEET;
THENCE DEPARTING SAID RIGHT–OF–WAY NORTH 43 DEGREES 24 MINUTES 06 SECONDS WEST, 100.00 FEET TO THE NORTHWESTERLY ATLANTIC COAST LINE RAILROAD RIGHT–OF–WAY, ALSO BEING THE POINT OF BEGINNING;

FROM SAID POINT OF BEGINNING, THENCE 4.71 FEET ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 769.25 FEET AND A CHORD BEARING SOUTH 46 DEGREES 25 MINUTES 23 SECONDS WEST, 4.71 FEET TO THE POINT OF BEGINNING;
THENCE DEPARTING THE SAID NORTHWESTERLY RIGHT–OF–WAY LINE OF THE ATLANTIC COAST LINE RAILROAD NORTH 36 DEGREES 51 MINUTES 17 W, 522.01 FEET TO THE TOP OF BANK OF THE CHATTAHOOCHEE RIVER;
THENCE CONTINUING ALONG THE TOP OF BANK OF THE CHATTAHOOCHEE RIVER 336.21 FEET HAVING A CHORD NORTH 49 DEGREES 52 MINUTES 37 SECONDS EAST, 333.40 FEET;
THENCE SOUTH 38 DEGREES 51 MINUTES 17 SECONDS EAST, 502.80 FEET TO A #4 REBAR, FOUND IN THE SAID NORTHWESTERLY RIGHT–OF–WAY LINE OF THE ATLANTIC COAST LINE RAILROAD;
THENCE ALONG THE SAID NORTHWESTERLY RIGHT–OF–WAY LINE OF THE ATLANTIC COAST LINE RAILROAD SOUTH 46 DEGREES 35 MINUTES 54 SECONDS WEST, 330.34 FEET TO THE POINT OF BEGINNING.
CONTAINING 3.92 ACRES OF LAND, MORE OR LESS.

ATLANTA, GA

## CHICAGO TITLE INSURANCE COMPANY
## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B – Section 2

Part II, Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

9.  Restrictive Covenants recorded in Deed Book 4395, Page 227, Fulton County, Georgia Records, but omitting any covenants or restrictions, if any, based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.

10. Indemnification Agreement by and between W.R. Grace & Co. - Conn./Dewey & Almy Division and Fulton County dated January 16, 1996 and filed January 23, 1996 in Deed Book 20505, Page 299, Fulton County, Georgia Records.

12. Sewer Easement in favor of City of Atlanta dated June 15, 1972 and filed July 31, 1972 in Deed Book 5626, Page 336, Fulton County, Georgia records.

13. Easement in favor of Georgia Power company dated May 14, 1969 and filed June 19, 1969 in Deed Book 5081, page 49, Fulton County, Georgia records.

14. Permit for Anchors, Guy Poles and Wires to Georgia Power Company dated September 8, 1965 and filed October 21, 1965 in Deed Book 4500, page 395, Fulton County, Georgia Records.

15. Easement to Georgia Power Company dated September 8, 1965 and filed October 26, 1965 in Deed Book 4500, Page 405, Fulton County, Georgia Records.

16. Clarification or Modification of Easement to American Telephone and Telegraph Company dated April 1, 1965 and filed April 12, 1965 in Deed book 4399, Page 513, Fulton county, Georgia Records.

17. Clarification, Modification and partial Release of Easement to Southern Bell Telephone and Telegraph dated April 1, 1965 and filed April 12, 1965 in Deed book 4399, Page 516, Fulton County, Georgia Records.

18. Matters appearing on Plat recorded in Plat Book 82, Page 16, Fulton County, Georgia, but omitting any covenants or restrictions, if any, based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.

21. Rights of upper and lower riparian landowners in and to the waters of the branch, creek or river crossing and/or forming a boundary of the captioned property, and the natural flow thereof, free from diminution or pollution.

**Liability Transfer Project**
**List of Orders and Permits for Transfer to ELT**

| Atlanta, GA | | |
|---|---|---|

| Site Name and Location | 5225 Phillip Lee Drive<br>Atlanta, GA | 5225 Phillip Lee Drive<br>Atlanta, GA |
|---|---|---|
| Name of Order/Type of Permit | Not Applicable. Corrective Action Plan required by regulation - 40 CFR 280.66 | Wastewater Discharge Permit |
| ID Number | Not Applicable | U-62206.100 |
| Expiration Date | Not Applicable | June 30, 2011 |
| Regulatory Information | USEPA Region IV<br>Steven Burton<br>Underground Storage Tank Section<br>61 Forsyth Street, S.W.<br>Atlanta, GA 30303-9464<br>404-562-9466 | Fulton County Department of Public Works<br>David Cross<br>Water Quality Manager<br>1030 Marietta Highway<br>Roswell, GA 30075<br>770-640-3061 x111 |
| Notice Requirements | None | Permit Part XI. Wastewater discharge permits are issued to a specific user for a specific operation and are not assignable to another user or transferable to any other location without prior written approval of the County.<br><br>Sale by a user obligates the purchaser to seek prior written approval of the County for continued discharge to the sewer system. |

## EXHIBIT B-2 - Charleston, SC

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
   1)  Groundwater Monitoring Wells

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
   1)  6/7/05 Master Services Agreement - RMT, Inc.
   2)  7/3/06 Remediation Agreement - Shamrock Environmental Corporation

Access Agreements:
   1)  3/12/04 North Charleston Sewer District
   2)  3/13/04 Crosby's Seafood
   3)  3/22/04 Salmons Dredging Corporation
   4)  6/29/04 Tekna Investments, Inc.
   5)  8/6/04 Charleston Constructors, Inc.
   6)  4/30/06 CSX Transportation, Inc.

Schedule of Orders and Permits:  Attached

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:
   1)  The City of Charleston has expressed intent to acquire property by eminent domain if property is not voluntarily conveyed to them.  To that end, the City of Charleston filed a Motion for Relief from the Automatic Stay dated 12/21/07 to permit the City to proceed with an eminent domain action.  Grace filed an objection to the Motion on 1/11/08.
   2)  Remedium is currently in settlement discussions with RMT, Inc. (environmental contractor) for cost recovery related to wetlands remediation work performed at the Charleston site in late 2006/early 2007.

STATE OF SOUTH CAROLINA        )
                                     )      **DECLARATION OF COVENANTS**

COUNTY OF CHARLESTON         )           **AND RESTRICTIONS**

### RECITALS

THIS DECLARATION OF COVENANTS AND RESTRICTIONS ("Declaration") is made and entered into this ____ day of February 2008, by W.R. Grace & Co.-Conn., a Connecticut corporation (hereinafter referred to as "GRACE").

WHEREAS, GRACE is the owner of certain real property in Charleston County, South Carolina, more particularly described in Exhibit A attached hereto and incorporated herein by reference ("Property"); and

WHEREAS, the Property is the subject of Administrative Consent Agreement 89-34-SW,S as amended by a 2003 Amendment both entered into by the South Carolina Department of Health and Environmental Control (the "Department") and GRACE, pursuant to the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq., and the South Carolina Hazardous Waste Management Act ("HWMA"), S.C. Code Ann. § 44-56-200; and

WHEREAS, GRACE implemented remediation pursuant to the Department's November 2002 Record of Decision for the Site Remedy; and

WHEREAS, after completion of the Remedy, contaminants in excess of allowable concentrations for unrestricted use remain at the Property; and

WHEREAS, the Department has determined that the Property may be used for certain purposes without further remediation when certain restrictions are placed on development and use of the Property; and

WHEREAS, GRACE has agreed to impose restrictions on the manner in which the Property may be developed (said restrictions to run with the land and inure to the benefit of and be enforceable by the Department and its successor agencies).

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS that GRACE hereby declares and covenants on behalf of itself and its successors and assigns that the Property described in Exhibit A shall be held, mortgaged, transferred, sold, conveyed, leased, occupied, and used subject to the following restrictions, which shall touch and concern and run with the title of the Property.

1.      GRACE hereby covenants for itself and its successors and assigns that the Property shall not be used for the following purposes:  residential, agricultural, child day care facilities, schools, or elderly care facilities.

2.  GRACE hereby covenants for itself and its successors and assigns that groundwater beneath the Property may not be withdrawn or used without prior approval from the Department or its successor agency.

3.  GRACE hereby covenants for itself and its successors and assigns that soil at the Property shall not be excavated, graded, or removed without prior approval from the Department or its successor agency.

4.  GRACE hereby covenants for itself and its successors and assigns that the groundwater monitoring network shall be maintained in accordance with the Remedy under an approved long-term monitoring plan and all on-site monitoring wells shall not be destroyed or abandoned without the express written approval of the Department.

5.  GRACE hereby covenants for itself and its successors and assigns that the Department or its successor agency, and all other parties performing response actions under the Department's oversight, shall be and hereby are provided an easement for reasonable access to inspect the Property, to oversee the activities conducted on the Property, or to take samples as may be necessary to enforce this Declaration.

6.  The covenants and restrictions set forth herein shall run with the title to the Property and shall be binding upon GRACE, its successors and assigns. GRACE and its successors and assigns shall include the following notice on all deeds, mortgages, plats, or any legal instruments used to convey any interest in the Property (failure to comply with this paragraph does not impair the validity or enforceability of these covenants):

> NOTICE: This Property is subject to Declaration of Covenants and Restrictions recorded at _____ and any subsequent Amendments.

7.  GRACE, its successors and assigns, and any Grantee of all or any portion of the Property as of May 1 of any year, annually on or before May 31, shall submit to the Department a statement that the terms of this Declaration were maintained, including a description of any exceptions to such maintenance, during the preceding calendar year. Such statement shall be addressed to:

> Site Assessment and Remediation Division
> South Carolina Department of Health & Environmental Control
> 2600 Bull Street
> Columbia, SC 29201

8.  This Declaration shall remain in place until such time as the Department has made a written determination that the covenants and restrictions set forth herein are no

SCDHEC/W.R. Grace & Co.-Conn. Site
Declaration of Covenants and Restrictions
BL&WM Site File # 20111

2

longer necessary. This Declaration shall not be amended without the written consent of the Department or its successor agency.

9.  This Declaration only applies to the Property expressly identified in Exhibit A and does not impair the Department's authority with respect to the Property or other real property under the control of GRACE.

10. The obligation under this Declaration shall be assigned to any Grantee of Grace and its successors or assigns upon the recording of a deed to such Grantee in the Registrar of Mense Office of Charleston County, South Carolina.

IN WITNESS WHEREOF, GRACE has caused this instrument to be executed as of the date first above written.

WITNESSES:

W.R. GRACE & CO.-CONN.
A Connecticut Corporation

By: _____

_____

_____
(Name and Title)

_____

STATE OF _____)
                         )

COUNTY OF _____)

**ACKNOWLEDGEMENT**

I, _____ (Notary Public), do hereby certify that _____, an authorized representative of the W.R. Grace & Co.-Conn., personally appeared before me this day and acknowledged the due execution of the foregoing instrument, on behalf of the corporation.

Witness my hand and official seal this ____ day of February 2008.

_____

Notary Public for: _____

My Commission Expires: _____

SCDHEC/W.R. Grace & Co.-Conn. Site
Declaration of Covenants and Restrictions
BL&WM Site File # 20111

3

IN WITNESS WHEREOF, the Department has caused this Declaration to be executed as of the date first above-written.

WITNESSES:

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL**

By: _____

_____

      Robert W. King, Jr., P.E.
      Deputy Commissioner
      Environmental Quality Control

_____

STATE OF SOUTH CAROLINA    )

                                )      **ACKNOWLEDGEMENT**

COUNTY OF RICHLAND        )

I, _____ (Notary Public), do hereby certify that, Robert W. King, Jr., P.E., Deputy Commissioner, Environmental Quality Control of the South Carolina Department of Health & Environmental Control, personally appeared before me this day and acknowledged the due execution of the foregoing instrument, on behalf of the corporation.

Witness my hand and official seal this \_\_\_\_ day of February 2008.

_____

Notary Public for: _____

My Commission Expires: _____

SCDHEC/W.R. Grace & Co.-Conn. Site
Declaration of Covenants and Restrictions
BL&WM Site File # 20111

4

# Exhibit A

LEGAL DESCRIPTION
TRACT A

ALL THAT CERTAIN PIECE, PARCEL OR TRACT OF LAND SITUATE, LYING AND BEING IN THE CITY OF CHARLESTON, CHARLESTON COUNTY, SOUTH CAROLINA DESIGNATED AS TRACT A ON AN ALTA/ACSM LAND TITLE SURVEY BY THOMAS V. BESSENT, PLS DATED SEPTEMBER 21, 2007 MORE PARTICULARLY DESCRIBED WITH RESPECT TO SAID SURVEY AS FOLLOWS:

BEGINNING AT A 5/8" REBAR AT THE INTERSECTION OF THE SOUTHWESTERLY RIGHT—OF—WAY LINE OF SEABOARD COASTLINE RAILROAD AND THE NORTHERLY RIGHT—OF—WAY LINE OF HERBERT STREET (S—10—132), BEING THE POINT OF BEGINNING OF THIS DESCRIPTION; THENCE WESTERLY ALONG SAID NORTHERLY RIGHT—OF—WAY S70°09'03"W 894.69' TO A 5/8" REBAR AT THE SOUTHEASTERLY CORNER OF PROPERTY OF J. ROY GIBSON; THENCE ALONG SAID PROPERTY N15°25'57"W 331.00' TO A 5/8" REBAR; THENCE CONTINUING ALONG SAID PROPERTY S72°08'43"W 252.28 TO A 3/4" IRON PIPE; THENCE ALONG THE EASTERLY RIGHT—OF—WAY LINE OF HARMON STREET (S—10—293) THE FOLLOWING THREE COURSES AND DISTANCES; N 15°58'17" W 110.19' TO A RAILROAD SPIKE; S73°59'34"W 19.96' TO A RAILROAD SPIKE; N15°53'46"W 362.78' TO A 5/8" REBAR; THENCE ALONG PROPERTY OF CHARLESTON CONSTRUCTORS INC. N69°08'45"E 272.42 TO A 5/8" REBAR; THENCE CONTINUING ALONG SAID PROPERTY N24°47'39"W 136.84' TO A 5/8" REBAR; THENCE ALONG PROPERTY OF C AND A RENTALS LLC N68°43'44"E 353.25' TO A 1" IRON PIPE; THENCE ALONG THE SOUTHWESTERLY RIGHT—OF—WAY LINE OF SEABOARD COASTLINE RAILROAD S47°05'00"E 1081.79' TO A 5/8" REBAR BEING THE POINT OF BEGINNING OF THIS DESCRIPTION;

CONTAINED WITHIN SAID BOUNDS 16.466 ACRES.

SCDHEC/W.R. Grace & Co.-Conn. Site
Declaration of Covenants and Restrictions
BL&WM Site File # 20111

5

CHARLESTON, SC

**A.L.T.A. COMMITMENT**
**CHICAGO TITLE INSURANCE COMPANY**
3700 Forest Drive, Suite 201, Columbia, SC 29204
Issued By: Dodds & Hennessy
1 North Adgers Wharf
Charleston, SC   29401
(843) 577-3025

**SCHEDULE A**

Office File Number RE 13094

| | | |
|---|---|---|
| Commitment Number | Effective Date | Loan Amount $TBD |
| | July 17, 2007 | |
| RE 13094 | at 4:00 p.m. | Owners Amount $TBD |

1.   Policy or Policies to be issued:
     ALTA LOAN POLICY, Form (10-17-92)
     Proposed Insured:

     TBD

     ALTA OWNER'S POLICY, Form Commercial
     Proposed Insured:

     TBD

2.   The estate or interest in the land described or referred to in this Commitment and covered herein is a fee simple, and title thereto is at the effective date hereof vested in:

     W. R. Grace & Co. - Conn., a Connecticut corporation f/k/a W.R. Grace & Co.

3.   The Land is described as follows:

     All that certain piece, parcel or tract of land, situate, lying and being in the City of Charleston, County of Charleston, State of South Carolina, shown and designated as TMS 464-02-00-051, WR Grace and Co, 16.464 Acres, on a plat entitled, "PLAT SHOWING THE BOUNDARY SURVEY OF A 16.464 ACRE PARCEL OWNED BY WR GRACE AND COMPANY LOCATED IN THE CITY OF CHARLESTON CHARLESTON COUNTY, SOUTH CAROLINA," by Engineering, Surveying, & Planning, Inc dated February 5, 1991, revised February 13, 1992 and recorded in Plat Book CG at Page 177 in the RMC Office for Charleston County. Said tract having such size, shape, dimensions, buttings and boundings as will by reference to said plat more fully appear.

Note: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This Commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert pages.

F. 1895

CHARLESTON, SC

LEGAL DESCRIPTION
TRACT A

ALL THAT CERTAIN PIECE, PARCEL OR TRACT OF LAND SITUATE, LYING AND BEING IN THE CITY OF CHARLESTON, CHARLESTON COUNTY, SOUTH CAROLINA DESIGNATED AS TRACT A ON AN ALTA/ACSM LAND TITLE SURVEY BY THOMAS V. BESSENT, PLS DATED SEPTEMBER 21, 2007 MORE PARTICULARLY DESCRIBED WITH RESPECT TO SAID SURVEY AS FOLLOWS:

BEGINNING AT A 5/8" REBAR AT THE INTERSECTION OF THE SOUTHWESTERLY RIGHT—OF—WAY LINE OF SEABOARD COASTLINE RAILROAD AND THE NORTHERLY RIGHT—OF—WAY LINE OF HERBERT STREET (S—10—132), BEING THE POINT OF BEGINNING OF THIS DESCRIPTION;

THENCE WESTERLY ALONG SAID NORTHERLY RIGHT—OF—WAY S70°09'03"W 894.69' TO A 5/8" REBAR AT THE SOUTHEASTERLY CORNER OF PROPERTY OF J. ROY GIBSON; THENCE ALONG SAID PROPERTY N15°25'57"W 331.00' TO A 5/8" REBAR; THENCE CONTINUING ALONG SAID PROPERTY S72°08'43"W 252.28 TO A 3/4" IRON PIPE; THENCE ALONG THE EASTERLY RIGHT—OF—WAY LINE OF HARMON STREET (S—10—293) THE FOLLOWING THREE COURSES AND DISTANCES; N 15°58'17" W 110.19' TO A RAILROAD SPIKE; S73°59'34"W 19.96' TO A RAILROAD SPIKE; N15°53'46"W 362.78' TO A 5/8" REBAR; THENCE ALONG PROPERTY OF CHARLESTON CONSTRUCTORS INC. N69°08'45"E 272.42 TO A 5/8" REBAR; THENCE CONTINUING ALONG SAID PROPERTY N24°47'39"W 136.84' TO A 5/8" REBAR; THENCE ALONG PROPERTY OF C AND A RENTALS LLC N68°43'44"E 353.25' TO A 1" IRON PIPE; THENCE ALONG THE SOUTHWESTERLY RIGHT—OF—WAY LINE OF SEABOARD COASTLINE RAILROAD S47°05'00"E 1081.79' TO A 5/8" REBAR BEING THE POINT OF BEGINNING OF THIS DESCRIPTION;

CONTAINED WITHIN SAID BOUNDS 16.466 ACRES.

CHARLESTON, SC

**A.L.T.A. COMMITMENT**
**CHICAGO TITLE INSURANCE COMPANY**
**SCHEDULE B - Section 2**

Commitment Number RE 13094

**Special Exceptions**

(a)   Taxes and assessments for the year 2007, and subsequent years, which are a lien but are not yet due and payable.

(b)   Easement to the Commissioners of Public Works of the City of Charleston appearing of record in Book F30, page 326, aforesaid records.

(c)   A right of easement to construct and maintain a ditch or drain to Charleston County appearing of record in Book C45, page 370, aforesaid records and shown on plat appearing of record in Plat Book CG, page 177 as 700' x 10' Drainage Easement

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Charleston, SC - Page 1 of 2

| Site Name and Location | 1820 Harmon Street<br>Charleston, SC | 1820 Harmon Street<br>Charleston, SC | 1820 Harmon Street<br>Charleston, SC |
|---|---|---|---|
| Name of Order/Type of Permit | Administrative Consent Decree | Amendment to Administrative Consent Agreement | Approval to Place Into Operation |
| ID Number | 89-34-SW,S | 89-34-SW,S | 19044-IW |
| Expiration Date | Not Applicable | Not Applicable | Not Applicable. (System to be closed out 180 days after ending operation or terminated approvals.) |
| Regulatory Information | SC Department of Health and Environmental Control<br>Ms. Judy L. Canova, P.G.<br>Bureau of Land and Waste Management<br>2600 Bull Street<br>Columbia, SC 29201<br>803-896-4046 | SC Department of Health and Environmental Control<br>Ms. Judy L. Canova, P.G.<br>Bureau of Land and Waste Management<br>2600 Bull Street<br>Columbia, SC 29201<br>803-896-4046 | SC Department of Health and Environmental Control<br>Mr. Harvey Wilkins, PE<br>Environmental Quality Control<br>1362 McMillian Avenue, Suite 300<br>Charleston, SC 29405<br>843-740-1590 |
| Notice Requirements | None | None | None |

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Charleston, SC - Page 2 of 2

| Site Name and Location | 1820 Harmon Street<br>Charleston, SC | 1820 Harmon Street<br>Charleston, SC | 1820 Harmon Street<br>Charleston, SC |
|---|---|---|---|
| Name of Order/Type of Permit | Pretreatment Permit | Department of the Army Permit (Wetlands Permit) | Critical Area/Water Quality Certification/Coastal Zone Consistency Permit |
| ID Number | Permit #2101 | Permit #2005-1R-130 | Permit #2005-1R-130-P |
| Expiration Date | December 31, 2007 | June 30, 2011 | May 4, 2011 |
| Regulatory Information | North Charleston Sewer District<br>Ms. Kelly Slinger<br>Industrial Pretreatment Supervisor<br>P. O. Box 63009<br>North Charleston, SC 29419<br>843-764-3072 | Department of the Army - Charleston District<br>Corps of Engineers<br>Ms. Tina Hadden, Chief - Regulatory Division<br>69-A Hagood Avenue<br>Charleston, SC 29403-5107<br>[Robin Socha: 843-329-5167] | SC Department of Health and Environmental Control<br>Office of Coastal Resource Management<br>Mr. Curtis M. Joyner, Manager - Critical Area Permitting<br>1362 McMillan Avenue, Suite 400<br>Charleston, SC 29405<br>843-747-4323 ext 115 |
| Notice Requirements | Part III, E. In the event of any change in control or ownership of the facilities from which the authorized discharges emanate, the Permittee shall notify the succeeding owner or controller of the existence of this permit by letter, a copy of which shall be forwarded to the District. This permit is transferable only | General Condition #4. If you sell the property associated with this permit, you must obtain the signature of the new owner in the space provided and forward a copy of the permit to this office to validate the transfer of this authorization. | General Condition #8. That this permit may not be transferred to a third party without prior written notice to the OCRM, either by the transferee's written agreement to comply with all terms and conditions of this permit or by the transferred subscribing to this permit and thereby agreeing to comply. |

## EXHIBIT B-3 - Ft. Pierce, FL

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
1)  Groundwater Monitoring Wells

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
1)  8/1/05 Global Master Services Agreement - URS Corporation

Access Agreements:
1)  12/19/03 Nick and Veronica Pantelidis
2)  1/8/04 B. K. Dorsey
3)  4/13/06 Terpening Holdings, LLC

Schedule of Orders and Permits:   Attached

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:  None

Encroachments and Other Survey Matters:
1)  Legal description currently not plattable per survey note #9.  New legal description will need to be drafted in accordance with survey, which Chicago Title will need to insure.  As of 2/21/08, this is still pending.
2)  Resolution needed as to ownership of triangular parcel of land at intersection of U.S. Highway No. 1 and Naco Road.  Survey shows parcel being part of Grace property; title commitment does not.

FT. PIERCE, FL

 Chicago Title Insurance Company

COMMITMENT FOR TITLE INSURANCE
**SCHEDULE A**

Agent Order/File No.:    Title No.: 430703201

Rev 10/3/07

1.  Effective Date: 07/12/2007 at 08:00 AM

2.  Policy or Policies to be issued:

    (a) ALTA Owner Policy (10-17-92) with Florida Modifications

    Policy Amount: $ TBD

    Proposed Insured: To be determined

3.  The estate or interest in the land described or referred to in this Commitment and covered herein is:

    Fee Simple

4.  Title to the estate or interest in said land is at the effective date hereof vested in:

    W.R. Grace & Co. – Conn, a Connecticut corporation, formerly known as W.R. Grace & Co.

5.  The land referred to in the Commitment is described as follows:

    SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

ALTA Commitment -1966

Title No.:  430703201

**FT. PIERCE, FL**

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

PARCEL A:

That part of the Northeast quarter of the Southeast quarter of Section 33, Township 34 South, Range 40 East, St. Lucie County, Florida, bounded as follows:

On the East by the west right of way line of the Florida East Coast Railway Company; on the West by the West boundary of the Northeast quarter of the Southeast quarter of said Section 33; on the North by a line parallel to and 91.4 feet southerly from, measured at right angles, the North line of the Northeast quarter of the Southeast quarter of said Section 33; on the South by a line parallel to and 424.6 feet southerly from, measured at right angles, the North line of the Northeast quarter of the Southeast quarter of Section 33.

PARCEL B:

Parcel 1:

To locate point of beginning, commence on the West bank of the Indian River at a stake marking the Northeast corner of the South 1/3 of Lot 1 of Section 33, Township 34 South, Range 40 East, St. Lucie County, Florida; from this stake run due South 2 chains and 9 links and set a stake; thence run West parallel with the land line to the West line of the Dixie Highway so-called, which is the point of beginning of the tract herein described; thence continue on said line from the point of beginning to a point which is 22 chains and 50 links West of the second stake mentioned in this description; run thence North 2 chains 9 links to a stake; run thence West to the subdivision line between the East and West halves of Section 33, run thence South along said subdivision line to the center of Section 33; run thence East 20 chains more or less to the line dividing Lots 3 and 4 of Section 33; run thence South parallel with the land lines to a point due West of the Southwest corner of the land formerly owned by John L. Howard; being the Southwest corner of the Howard fence; also being the Southwest corner of the land described as Lot 1 and the North 2 acres of Lot 2 in Section 34, Township 34 South, Range 40 East; proceed thence South 2 chains 9 links; run thence East parallel with the land lines to the West line of the Dixie Highway so-called; thence Northerly along the West boundary line of the Dixie Highway to the point of beginning;

EXCEPTING, from the foregoing Parcel B Parcel 1 description the following three parcels, to-wit:

A.  That parcel conveyed from the Robbins & Graham Company to the Indian River Guano Company, said conveyance being recorded in Deed Book 97, page 327, in the office of the Clerk of the Circuit Court of St. Lucie County, Florida, more particularly described as follows:
Starting at a rock monument at the Northwest corner of the NE 1/4 of the SE 1/4 of Section 33, Township 34 South, Range 40 East; run thence South on the lot line dividing Government Lots 3 and 4 of said section, a distance of 91.4 feet to an Iron Pipe Monument which is the point of beginning of the tract of land hereby conveyed.  From said point of beginning, continue South along said lot line a distance of 333.2 feet to a rock monument on the South line of a certain tract of land described in a deed from F.D. Reynolds et al, to East Coast Lumber and Supply Company, which deed is recorded in Deed Book 80, page 12, of the Public Records of St. Lucie County, Florida; thence run east along the south line of the tract of land conveyed by said deed a distance of 1009 feet to a pipe monument, which is the Southeast corner of the tract of land conveyed by said deed from Reynolds to East Coast Lumber and Supply Company and which point is located on the west line of the right of way of the Old Dixie Highway and now known as State Road #140; thence run northerly along the west line of said State Road #140 a distance of 355.4 feet to a pipe monument; thence run west parallel with the lot line to the point of beginning.

B.  That parcel conveyed from East Coast Lumber and Supply Company to Antonio M. Peres, et ux, said conveyance being recorded in Deed Book 136, page 261, of the Public Records of St. Lucie County, Florida, as amended by that conveyance from the aforesaid grantor to the aforesaid grantees, said amended conveyance being recorded in Deed Book 149, page 3, of the Public Records of St. Lucie County, Florida, said amended conveyance being more particularly described as follows:  From a conquina rock at Northwest corner of the NW

ALTA Commitment -1966

1/4 of the SE 1/4 of Section 33, Township 34 South, Range 40 East, run north on the quarter line for a distance of 1735.9 feet from coquina rock, run thence East for a distance of 588 feet to center line of the present New Dixie Highway, being 66 feet wide and known as State Road #5 (formerly #4) and U.S. Highway #1, run thence southeasterly with the center line of said present Dixie Highway for a distance of 1832.8 feet to a point which is the center of said present Dixie Highway, said point being 109.8 feet west of the northwest corner of the NE 1/4 of SE 1/4 of said Section 33, Township 34 South, Range 40 East, run thence West 1204.2 feet to the point of beginning.

C. That parcel conveyed from East Coast Lumber and Supply Company, to G. Bloodworth, J. Logan Bloodworth, G. Ernest Bloodworth, partners, operating and doing business as Cherokee Products Company, said conveyance being recorded in Deed Book 117, page 150, of the Public Records of St. Lucie County, Florida, said land being described as follows:
From a coquina rock at NW corner of NW 1/4 of SE 1/4 run north on 1/4 line for a distance of 1735.9 feet to coquina rock; run thence east for a distance of 588.0 feet to center line of new Dixie Highway for point of beginning; from point of beginning run east 433.3 feet to a monument, run thence 137.95 feet to a coquina rock, run thence east 591.5 feet to a concrete monument, which is 33 feet west of center line of Old Dixie Highway, run thence in a southeasterly direction paralleling the center line of Old Dixie Highway and being 33 feet west of center for a distance of 984.0 feet to a point, thence run north 89 degrees 30 minutes west 950.0 feet to center of New Dixie Highway, run thence in a northwesterly direction with center line of New Dixie Highway for a distance of 1127.8 feet to point of beginning.

Parcel 2:

From the Northwest corner of the NE 1/4 of the SE 1/4 of Section 33, Township 34 South, Range 40 East, run South 91.4 feet to a pipe; run thence South 89 degrees and 30 minutes East for a distance of 901.8 feet to a point in the center of the Old Dixie Highway for the point of beginning. From this point of beginning run North 19 degrees and 38 minutes west following the center of Old Dixie Highway for a distance of 800 feet to a point; run thence South 89 degrees and 30 minutes east for a distance of 96 feet to the west line of the right of way of the Florida East Coast Railway; run thence South 20 degrees and 14 minutes East along the west line of the right of way of the said Florida East Coast Railway 803.5 feet to a point; run thence North 89 degrees and 30 minutes west for a distance of 105.4 feet to the point of beginning; said land lying and being in St. Lucie County, Florida.

LESS AND EXCEPTING from the foregoing Parcel B Parcel 2 description the following 2 parcels, to-wit:

A. That part of the Southeast quarter of the Northeast quarter of Section 33, Township 34 South, Range 40 East, bounded as follows:

On the East by the West right-of-way line of the Florida East Coast Railway Company, on the West by the East right-of-way line of Old Dixie Highway (a 30 foot right-of-way), on the North by a Westerly extension of that line being the north line of that parcel described as Parcel III, as recorded in Official Records Book 638, page 2486, of the Public Records of St. Lucie County, Florida, being more particularly described as follows:
Commencing at the Southeast corner of the Northeast 1/4 of Section 33, Township 34 South, Range 40 East, St. Lucie County, Florida, run thence North along the East section line 500 feet, more or less, to the South line of property formerly owned by Maule Industries; turn thence and run West along said South line 425 feet, more or less, to the East line of the Florida East Coast Railway Company right-of-way; turn thence and run Southerly along said right-of-way line 530 feet, more or less, to the South line of the Northeast 1/4 of said Section 33; thence turn and run East along said South line to the Point of Beginning.
On the South by a line that is 60 feet south of and parallel to the aforementioned North line.

B. That part of the Southeast quarter of the Northeast quarter of Section 33, Township 34 South, Range 40 East, bounded as follows:

On the East by the West right-of-way line of the Florida East Coast Railway Company; on the West by the East right-of-way line of Old Dixie Highway (a 30 foot right-of-way); on the South by a westerly extension of that line being the north line of that parcel described as Parcel III, as recorded in Official Records Book 638, page 2486, of the Public Records of St. Lucie County, Florida, being more particularly described as follows: Commencing at the Southeast corner of the Northeast 1/4 of Section 33, Township 34 South, Range 40 East, Public Records of St. Lucie County, Florida, run thence North along the East section line 500 feet, more or less, to the South line of property formerly owned by Maule Industries; turn thence and run West along said South line 425 feet, more or less, to the East line of the Florida East Coast Railway Company right-of-way; turn thence and run Southerly

ALTA Commitment -1966

along said right-of-way line 530 feet, more or less, to the South line of the Northeast 1/4 of said Section 33; thence turn and run East along said South line to the Point of Beginning.

On the North by a line that is 202.06 feet North (as measured along the West right of way line of the Florida East Coast Railway) of the South line and that is 201.62 feet North (as measured along the East right of way line of Old Dixie Highway) on the South line.

Ft. Pierce, FL

### Schedule B – Part II

2.  Standard Exceptions

    F.  Any claim that any portion of said lands are sovereign lands of the State of Florida, including submerged, filled or artificially exposed lands accreted to such lands.

    G.  Taxes and assessments for the year 2008 and subsequent years.

5.  Reservations in favor of the State of Florida as contained in deed recorded in Deed Book 99, page 275, as modified by Quit Claim Deed recorded in Deed Book 173, page 335.

6.  Easement(s) granted to American Telephone and Telegraph Company, recorded in Deed Book 135, page 347, of the Public Records of St. Lucie County, Florida.  Note:  Per survey, easement does not affect subject property.

7.  Right of way for US1, A1A and Naco Road.

8.  Crossing Transfer Agreement recorded in Official Records Book 551, page 1675.

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Fort Pierce, FL

| | |
|---|---|
| Site Name and Location | 2540 Old Dixie Highway<br>Ft. Pierce, FL |
| Name of Order/Type of Permit | Consent Order under Florida Administrative Code Rule 17-103.110 |
| ID Number | 85-0015 |
| Expiration Date | Not Applicable |
| Regulatory Information | Florida Department of Environmental Protection<br>Southeast District<br>Mr. Hubert Philoctete - Engineer III<br>400 N. Congress Avenue, Suite 200<br>West Palm Beach, FL  33401<br>561-681-6726 |
| Notice Requirements | None |

## EXHIBIT B-4 - Guanica, Puerto Rico

Current Owner of Site:  Guanica-Caribe Land Development Corporation

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:      None

Schedule of Permitted Title Exceptions:    See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:    See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts:    (Subject to discussions with ELT)      None

Access Agreements:  None

Schedule of Orders and Permits:  Attached

Monetary Liens:  None.

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:  None

**GUANICA, PUERTO RICO**



CHICAGO TITLE INSURANCE COMPANY
ALTA COMMITMENT
Commitment Number 72106-6162

**Schedule A**

1.  Date of Commitment:    July 19, 2007

2.  Policy to be issued:    Owners Policy (ALTA Policy (10/17/92))
    Proposed Insured:       TBD
    Policy Amount:          TBD

3.  The estate or interest in the land described herein and which will be covered by the policy or policies is fee simple, and title thereto is at the effective date hereof vested in Guánica-Caribe Land Development Corporation, acquired by means of deed number 1 dated April 23, 1999 before Notary Vanessa Aymerich Conde.

4.  The land referred to in the Commitment is located at the Carenero Ward of the Municipality of Guánica, Puerto Rico, identified for purposes of recordation as Parcel Number 428, recorded at folio 207, volume 15 of Guánica, Registry of Property of Puerto Rico, Section of San Germán.

**GUANICA, PUERTO RICO**

4.    The land referred to in the Commitment is located at the Carenero Ward of the Municipality of Guánica, Puerto Rico, identified for purposes of recordation as Parcel Number 428, recorded at folio 207, volume 15 of Guánica, Registry of Property of Puerto Rico, Section of San Germán.

# LEGAL DESCRIPTION PARCEL NO. 428

BEGINNING AT POINT 1 LOCATED AT THE CORNER OF THE PROPERTY; THENCE N49°56'23"E, IN A DISTANCE OF 91.87M TO POINT 2, IN BOUNDARY WITH P.R.I.D.C.O.; THENCE S71°03'06"E, IN A DISTANCE OF 548.53M TO POINT 3, IN BOUNDARY WITH INSULAR FOREST RESERVATION OF THE COMMONWEALTH OF PUERTO RICO; THENCE S03°35'39"W, IN A DISTANCE OF 197.24M TO POINT 4, IN BOUNDARY WITH INSULAR FOREST RESERVATION OF THE COMMONWEALTH OF PUERTO RICO; THENCE N86°24'21"W, IN A DISTANCE OF 67.68M TO POINT 5, IN BOUNDARY WITH P.R.E.P.A.; THENCE S03°35'39"W, IN A DISTANCE OF 62.20M TO POINT 6, IN BOUNDARY WITH P.R.E.P.A.; THENCE S86°24'21"E, IN A DISTANCE OF 67.68M TO POINT 7, IN BOUNDARY WITH P.R.E.P.A.; THENCE S03°35'39"W, IN A DISTANCE OF 258.73M TO POINT 8,IN BOUNDARY WITH INSULAR FOREST RESERVATION OF THE COMMONWEALTH OF PUERTO RICO; THENCE S83°17'19"W, IN A DISTANCE OF 649.10M TO POINT 9,IN BOUNDARY WITH INSULAR FOREST RESERVATION OF THE COMMONWEALTH OF PUERTO RICO; THENCE N13°20'07"E, IN A DISTANCE OF 102.27M TO POINT 10,IN BOUNDARY WITH GUANICA CARIBE LAND DEVELOPMENT CORP.; THENCE S82°40'36"W, IN A DISTANCE OF 99.23M TO POINT 11, IN BOUNDARY WITH GUANICA CARIBE LAND DEVELOPMENT CORP.; THENCE N13°04'32"E, IN A DISTANCE OF 20.61M TO POINT 12, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N14°17'36"E, IN A DISTANCE OF 16.65M TO POINT 13, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N15°46'05"E, IN A DISTANCE OF 20.03M TO POINT 14, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N14°56'19"E, IN A DISTANCE OF 19.33M TO POINT 15, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N14°25'40"E, IN A DISTANCE OF 42.02M TO POINT 16, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N16°44'37"E, IN A DISTANCE OF 29.95M TO POINT 17, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N16°23'39"E, IN A DISTANCE OF 33.09M TO POINT 18, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N16°11'09"E, IN A DISTANCE OF 34.23M TO POINT 19,IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N17°59'50"E, IN A DISTANCE OF 15.24M TO POINT 20, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N17°57'54"E, IN A DISTANCE OF 22.77M TO POINT 21, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N16°50'56"E, IN A DISTANCE OF 42.36M TO POINT 22, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N17°08'55"E, IN A DISTANCE OF 11.55M TO POINT 23, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N17°48'13"E, IN A DISTANCE OF 35.11M TO POINT 24, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N17°48'08"E, IN A DISTANCE OF 44.92M TO POINT 25, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N17°33'45"E, IN A DISTANCE OF 39.61M TO POINT 26, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N17°58'28"E, IN A DISTANCE OF 31.63M TO POINT 27, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N17°27'28"E, IN A DISTANCE OF 39.03M TO POINT 28, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N17°31'19"E, IN A DISTANCE OF 33.35M TO POINT 29, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N14°49'04"E, IN A DISTANCE OF 26.27M TO POINT 30, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N10°22'19"E, IN A DISTANCE OF 20.95M TO POINT 31, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N03°55'08"E, IN A DISTANCE OF 34.59M TO POINT 32,IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N02°25'47"W, IN A DISTANCE OF 20.56M TO POINT 33, IN BOUNDARY WITH STATE ROAD P.R. NO. 333; THENCE N06°17'03"W, IN A DISTANCE OF 15.21M TO POINT 1,IN BOUNDARY WITH STATE ROAD P.R. NO. 333; WICH IS THE POINT OF BEGINNING, HAVING AN AREA OF 418348.5403 SQ. MTS. 106.4393 CUERDAS

FOLIO CIENTO TREINTA Y CINCO                    (135)

------------*NUMBER TWENTY FOUR (24)*--------------

-----------*DEED OF RECTIFICATION,*-----------
-------*SEGREGATION, PURCHASE AND SALE*-------
--------*AND CONSTITUTION OF EASEMENTS*------

----In the municipality of San Juan, Commonwealth of Puerto Rico, this twenty (20th) day of November, two thousand three (2003). ----------------------

--------------------*BEFORE ME* -------------------

----ROBERTO JOSE TORRES ANTOMMATTEI, Attorney-at-Law and Notary Public in and for the Commonwealth of Puerto Rico, with residence in Yauco, Puerto Rico, and an office at fifty two (52) Mattei Lluberas Street in the Municipality of Yauco, Puerto Rico. --------------------------------------

-------------------- *APPEAR* --------------------

----AS PARTY OF THE FIRST PART: *GUANICA-CARIBE LAND DEVELOPMENT CORPORATION* (hereinafter "Seller"), whose employer identification number is 65-0504444, a corporation organized under the laws of the State of Delaware, represented herein by its attorney in fact, JOSE LUIS NIETO MINGO, of legal age, married to Gloria I. Colón, attorney at law and resident of Guaynabo, Puerto Rico, who states that he is duly authorized to execute this deed on behalf and in representation of Seller pursuant to Deed number Thirty-One (31) of Protocolization of Power of Attorney, executed in San Juan, Puerto Rico on November nineteenth (19th), two thousand three (2003) before Attorney and Notary Public Doira Díaz Rivera.--------------

---AS PARTY OF THE SECOND PART: *OCHOA FERTILIZER CO., INC.,* (hereinafter "Purchaser"), employer identification number 66-0268804, a corporation organized under the laws of the Commonwealth of



ROBERTO J. TORRES ANTOMMATTEI

ABOGADO-NOTARIO

FOLIO CIENTO TREINTA Y SEIS                    (136)

2

Puerto Rico, represented herein by its President, AUGUSTO RAFAEL PALMER ARRACHE, who is of legal age, married to Ivonne Ferrer Picart, executive and resident of Yauco, Puerto Rico, and who states that he is duly authorized to execute this deed on behalf and in representation of Purchaser pursuant to Certificate of Corporate Resolution subscribed by its Secretary Gilberto Lozada Ramírez, before the undersigned Notary. ------------------------

---I, the Notary, certify that I personally know the appearing persons, and through their statements, I certify as to their age, status, profession and residence, and they assure me that they have, and in my judgment they do have, the necessary legal capacity to execute this instrument, wherefore, the appearing parties, freely and of their own will and accord ----------

----------------------STATE ---------------------

---FIRST: <u>The Property.</u>  Seller is the owner in fee simple (pleno dominio) of a parcel of land (hereinafter the "Main Parcel"), described in the San Germán Section of the Registry of Property of Puerto Rico (hereinafter the "Registry"), as follows: ------------------------------------------

-----"RUSTIC:  Parcel of land located in the Carenero Ward of Guánica, Puerto Rico, consisting of one hundred eight point zero seven two four (108.0724) cuerdas, equivalent to four hundred twenty-four thousand seven hundred sixty point six four six three (424,760.6463) square meters; composed of three (3) parcels physically separated from each other, except that number one (#1) and number two (#2) are connected by an aqueduct servitude and these parcels shall be utilized for the development of an industry with a common administration center and interdependent of each other, and they are described separately as follows: ---------------------------------------

---ONE: RUSTIC: Parcel of land located in the Carenero Ward of the Municipality of Guánica, Puerto Rico, consisting of one hundred six point



ROBERTO A. TORRES ANTOMMATTEI

ABOGADO-NOTARIO

FOLIO CIENTO TREINTA Y SIETE                          (137)

3

two one eight eight (106.2188) cuerdas, equivalent to four hundred seventeen thousand four hundred eighty-five point two seven six three (417,485.2763) square meters. Bounded on the North, by the main parcel from which it is segregated belonging to the Land Authority of Puerto Rico and in part by that portion of the main parcel which is the parcel of two (2) cuerdas three hundred eighty-eight (388) hundredths of a cuerda, to be sold by the Land Authority to the Puerto Rico Industrial Development Company; on the South and East, with land of the Insular Forest Reservation of the Commonwealth of Puerto Rico, Puerto Rico Electric Power Authority and a parcel segregated from this parcel owned by Guanica-Caribe Land Development Corporation; and on the West, with State Highway number three hundred thirty-three (#333). ----------------------------

---TWO: RUSTIC: Parcel of land located in the Carenero ward of the Municipality of Guánica, Puerto Rico, with a surface area of one (1) cuerda, equivalent to thirty-nine (39) miliareas, bounded on the North, South, East and West, by land of the main parcel from which it is segregated belonging to the Land Authority of Puerto Rico. The main irrigation canal which forms part of the irrigation system of the main parcel from which this parcel is segregated crosses this parcel. The geometric description of this parcel of land is as follows: Starting from Point number one (#1), a market on the Northeast corner of the parcel, South forty-five (45) degrees, nineteen (19) minutes East, sixty-two point sixty-nine (62.69) meters bounded by land of the Land Authority of Puerto Rico to Point number two (#2); a marker on the Southeast corner of the parcel; from here South forty-four (44) degrees forty-one (41) minutes East sixty-two (62) meters sixty-nine (69) centimeters bounded by land of the Land Authority of Puerto Rico to point number three (#3), marker on the Southwest corner of the parcel; from here North forty-five (45) degrees, nineteen (19) minutes West sixty-two point sixty-nine (62.69) meters bounded by land of the Land Authority of Puerto Rico to Point number four (#4), a marker on the Northwest corner of the parcel, from here North forty-four (44) degrees, forty-one (41) minutes East sixty-two point sixty-nine (62.69) meters bounded by the twelve point zero zero (12.00) meters wide road belonging to the Central Guánica to Point number one (#1) which was the starting point of this description. -----

---THREE: RUSTIC: Parcel of land located in the Carenero ward of the Municipality of Guánica, Puerto Rico, with an area of eight thousand five hundred thirty-six (8,536) ten thousandths of a cuerda, equivalent to thirty-three (33) areas, forty-four (44) centiareas, ninety-eight (98) hundredths miliares, and bounded on the North by a road leading to State Highway number three hundred thirty-three (#333), on the South by lands of Puerto Rico Ports Authority, on the East by State Highway number three hundred thirty-three (#333), kilometer one (1), hectometer nine (9), and on the



ROBERTO J. TORRES ANTOMMATTE.

ABOGADO-NOTARIO

FOLIO CIENTO TREINTA Y OCHO                    (138)

4

West by lands segregated from this parcel. The geometrical description is as follows: Starting from Point number one (#1), which is a point of fencing on the Southeast corner of the parcel, South eighty-eight (88) degrees ten (10) minutes eight (8) seconds West, nineteen point eight hundred nine (19.809) meters, bounded by land of Puerto Rico Ports Authority to Point number two (#2), from this point North fifty-six (56) degrees eighteen (18) minutes fourteen (14) seconds West following the same boundary line to Point B, from this point North nineteen (19) degrees forty-seven (47) minutes fifty-five (55) seconds East and a distance of one point forty-seven (1.470) meters to Point number sixty-two (62), from this point North, nineteen (19) degrees, thirty (30) minutes thirty-two (32) seconds East and a distance of thirty-three point five hundred thirty-seven (33.537) meters to Point number sixty-one (61), form this point North, nineteen (19) degrees, thirty-six (36) minutes, fifty-eight (58) seconds East and a distance of ninety-one point five hundred thirty-five (91.535) meters to Point sixty (60), from this point North five (5) degrees forty-six (46) minutes fourteen (14) seconds East and a distance of nine point fifty-once (9.51) meters to Point fifty-nine (59), from this point North twenty-five (25) degrees, forty-seven (47) minutes fifty (50) seconds West and a distance of three point two hundred three (3.203) meters to Point number fifty-eight (58), from this point South sixty-six (66) degrees, thirty-eight (38) minutes five (5) seconds East and a distance of twenty-one point seventy-six (21.76) meters to Point number fifty-six (56), form this point, South thirteen (13) degrees, eighteen (18) minutes thirty-six (36) seconds West and a distance of one hundred thirty point seventy-seven (133.77) meters to Point number one (#1), which was the starting point of this description." ----------------------



ROBERTO J. TORRES ANTOM...

ABOGADO-NOTARIO

-----The aforementioned is the description after effecting a segregation pursuant to Deed of Protocolization of Deed of Segregation, Number One (1) executed on April twenty-three (23), nineteen hundred ninety-nine (1999) before Notary Vanessa Aymerich Conde. The Main Parcel is recorded in the Registry at page sixty-six (66) of volume twenty-nine (29) of Guánica, property number four hundred twenty-eight (428), first inscription. ------The Main Parcel was acquired by Seller pursuant to Deed Number eighteen (18) executed on July twenty-three (23), nineteen hundred ninety-

FOLIO CIENTO TREINTA Y NUEVE                    (139)

5

four (1994) before Notary Salvador Casellas Toro, a certified copy of which is pending recordation in the Registry at entry 363 of volume 486 of the Book of Daily Entries of Guánica. ------------------

---SECOND:   Liens and Encumbrances.   The Main Parcel is subject to the following liens and encumbrances of record. -------------------------

-----(a)   The parcel from which parcels One (1) and Two (2) above described were segregated is encumbered with right-of-way easements, an aqueduct easement and another right-of-way easement for a railroad in favor of a parcel of two hundred and forty-seven cuerdas and sixty-two hundredths of a cuerda (247.62), but according to the Deed of Sale, these easements do not in fact physically encumber, nor affect the Main Parcel.

-----(b)   By its origin, the parcel identified above with number Two (2) is encumbered by an easement constituted by deed number twenty-four (24) executed on the twenty-second (22nd) day of July, nineteen hundred and fifty-five (1955) before Notary Public Antonio Riera, for the maintenance and conservation in perpetuity of an irrigation canal. ------------------------------

-----(c) By itself, the Main Parcel is subject to an easement in favor of the Puerto Rico Water Resources Authority, now the Puerto Rico Electric Power Authority, recorded in the Registry at page sixty-five (65) of volume twenty-nine (29) of Guánica. ----------------------------------------

-----(d) By itself, the Main Parcel is subject to a right-of-way easement in favor of property number four thousand seven hundred eight (4,708)


ROBERTO J. TORRES ANTOMMATTEI
ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA                                        (149)

6

constituted pursuant to deed number five (5) executed on the eighth (8th) day of May, nineteen hundred and eighty-nine (1989) before Notary Public Julio V. Rodríguez Vilá, recorded in the Registry at page twenty-two (22) of volume seventy-eight (78) of Guánica. ------------------

-----(e) By itself, the Main Parcel is subject to a right of way easement in favor of the Puerto Rico Electric Power Authority, constituted pursuant to Constitution of Easement Document which is pending recordation in the Registry at entry 293 of volume 620 of the Book of Daily Entries of Guánica. ----------------------------

-------------RECTIFICATION OF AREA ------------
---THIRD: That the Main Parcel was subject to a survey by the Land surveyor, Hector A. Cruz Sánchez, license number seven one eight two (7182) and with the previous notice to all adjacent owners, the parcel identified above as Rustic number Three turn out with a measure of one point one thousand four hundred ninety-six (1.1496) cuerdas. Attached to the first certified copy of this Deed is a Survey Certificate ("Certificación de Mensura") from the land surveyor Hector A. Cruz Sánchez, dated April 10th, 2003 subscribed under affidavit number 3905 before the undersigned attorney. -------------------------------------
---FOURTH: Pursuant to the Survey Prepared by such land surveyor, the correct measurement of the area such parcel is as follows: ------------------
---THREE: RUSTIC: Parcel of land located in the Carenero Ward of the Municipality of Guánica,



ROBERTO J. TORRES ANTOMMATTEI

ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA Y UNO                    (141)

7

Puerto Rico, with an area of one point one thousand four hundred ninety-six (1.1496) cuerda, equivalent to four thousand five hundred twenty three point one eight zero eight (4,523.1808) square meters, and bounded on the North by a road leading to State Highway number three hundred thirty-three (#333), on the South by lands of Puerto Rico Ports Authority, on the East by State Highway number three hundred thirty-three (#333), kilometer one (1), hectometer nine (9), and on the West by lands segregated from this parcel.    The geometrical description is as follows:  Starting from Point number one (#1), which is a point of fencing on the Southeast corner of the parcel, South eighty-eight (88) degrees ten (10) minutes eight (8) seconds West, nineteen point eight hundred nine (19.809) meters, bounded by land of Puerto Rico Ports Authority to Point number two (#2), from this point North fifty-six (56) degrees eighteen (18) minutes fourteen (14) seconds West thirteen point eight hundred three (13.803) meters following the same boundary line to Point B, from this point North nineteen (19) degrees forty-seven (47) minutes fifty-five (55) seconds East and a distance of one point forty-seven (1.470) meters to Point number sixty-two (62), from this point North, nineteen (19) degrees, thirty (30) minutes thirty-two (32) seconds East and a distance of thirty-three point five hundred thirty-seven (33.537) meters to Point number sixty-one (61), form this point North, nineteen (19) degrees, thirty-six (36) minutes, fifty-eight (58) seconds East and a distance of ninety-one point five hundred thirty-five (91.535) meters to Point sixty (60), from this point North five (5) degrees forty-six (46) minutes fourteen (14) seconds East and a distance of nine point fifty-once (9.51) meters to Point fifty-nine (59), from this point North twenty-five (25) degrees, forty-seven (47) minutes fifty (50) seconds West and a distance of three point two hundred three (3.203) meters to Point number fifty-eight (58), from this point South sixty-six (66) degrees, thirty-eight (38) minutes five (5) seconds East and a distance of twenty-one point seventy-six (21.76) meters to Point number fifty-six (56), from this point, South thirteen (13) degrees, eighteen (18) minutes thirty-six (36) seconds West and a distance of one hundred thirty point seventy-seven (133.77) meters to Point number one (#1), which was the starting point of this description." ----------------------

---FIFTH:  The explanation for such difference in measure is the lack of precision of the instruments used in the original survey and measure of the parcel. --------------------------

---SIXTH:  The description of the Main Parcel after the rectification of area of the parcel identified above as Rustic number Three shall be

ROBERTO J. TORRES ANTOMMATTEI
ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA Y DOS                    (142)

8

as follows: ------------------------------------

----"RUSTIC: Parcel of land located in the Carenero Ward of Guánica, Puerto Rico, consisting of one hundred and eight point three six eight four (108.3684) cuerdas, equivalent to four hundred twenty-five thousand nine hundred and thirty point six eight five two (425,930.6852) square meters; composed of three (3) parcels physically separated from each other, except that number one (#1) and number two (#2) are connected by an aqueduct servitude and these parcels shall be utilized for the development of an industry with a common administration center and interdependent of each other, and they are described separately as follows: ------------------------------------

---ONE: RUSTIC: Parcel of land located in the Carenero ward of the municipality of Guánica, Puerto Rico, consisting of one hundred six point two one eight eight (106.2188) cuerdas, equivalent to four hundred seventeen thousand four hundred eighty-five point two seven six three (417,485.2763) square meters.  Bounded on the North, by the main parcel from which it is segregated belonging to the Land Authority of Puerto Rico and in part by that portion of the main parcel which is the parcel of two (2) cuerdas three hundred eighty-eight (388) hundredths of a cuerda, to be sold by the Land Authority to the Puerto Rico Industrial Development company; on the South and East, with land of the Insular Forest Reservation of the Commonwealth of Puerto Rico, Puerto Rico Electric Power Authority and a parcel segregated from this parcel owned by Guánica-Caribe Land Development Corporation; and on the West, with state Highway number three hundred thirty-three (#333). ------------------------------



ROBERTO J. TORRES ANTOMMATTEI

ABOGADO-NOTARIO

---TWO: RUSTIC: Parcel of land located in the Carenero ward of the municipality of Guánica, Puerto Rico, with a surface area of one (1) cuerda, equivalent to thirty-nine (39) miliareas, bounded on the North, South, East and west, by land of the main parcel from which it is segregated belonging to the Land Authority of Puerto Rico.  The main irrigation canal which forms part of the irrigation system of the main parcel from which this parcel is segregated crosses this parcel.  The geometric description of this parcel of land is as follows: starting from Point number one (#1), a market on the Northeast corner of the parcel, South forty-five (45) degrees, nineteen (19) minutes East, sixty-two point sixty-nine (62.69) meters bounded by land of the Land Authority of Puerto Rico to Point number two (#2); a marker on the Southeast corner of the parcel; from here South forty-four (44) degrees forty-one (41) minutes East sixty-two (62) meters sixty-nine (69) centimeters bounded by land of the Land Authority of Puerto Rico to point number three (#3), marker on the Southwest corner of the parcel; from here North forty-five (45) degrees, nineteen (19) minutes west sixty-two point sixty-nine (62.69) meters bounded by land of the Land Authority of Puerto Rico to Point number four

FOLIO CIENTO CUARENTA Y TRES                    (143)

9

(#4), a marker on the Northwest corner of the parcel, from here North forty-four (44) degrees, forty-one (41) minutes East sixty-two point sixty-nine (62.69) meters bounded by the twelve point zero zero (12.00) meters wide road belonging to the Central Guánica to Point number one (#1) which was the starting point of this description. -----

---THREE: RUSTIC: Parcel of land located in the Carenero ward of the municipality of Guánica, Puerto Rico, with an area of one point one thousand four hundred ninety-six (1.1496) cuerda, equivalent to four thousand five hundred twenty three point one eight zero eight (4,523.1808) square meters, and bounded on the North by a road leading to state Highway number three hundred thirty-three (#333), on the South by lands of Puerto Rico Ports Authority, on the East by State Highway number three hundred thirty-three (#333), kilometer one (1), hectometer nine (9), and on the west by lands segregated from this parcel. The geometrical description is as follows: starting from Point number one (#1) , which is a point of fencing on the Southeast corner of the parcel, South eighty-eight (88) degrees ten (10) minutes eight (8) seconds west, nineteen point eight hundred nine (19.809) meters, bounded by land of Puerto Rico Ports Authority to Point number two (#2), from this point North fifty-six (56) degrees eighteen (18) minutes fourteen (14) seconds West thirteen point eight hundred three (13.803) meters following the same boundary line to Point B, from this point North nineteen (19) degrees forty-seven (47) minutes fifty-five (55) seconds East and a distance of one point forty-seven (1.470) meters to Point number sixty-two (62), from this point North, nineteen (19) degrees, thirty (30) minutes thirty-two (32) seconds East and a distance of thirty-three point five hundred thirty-seven (33.537) meters to Point number sixty-one (61), from this point North, nineteen (19) degrees, thirty-six (36) minutes, fifty-eight (58) seconds East and a distance of ninety-one point five hundred thirty-five (91.535) meters to Point sixty (60), from this point North five (5) degrees forty-six (46) minutes fourteen (14) seconds East and a distance of nine point fifty-one (9.51) meters to Point fifty-nine (59), from this point North twenty-five (25) degrees, forty-seven (47) minutes fifty (50) seconds west and a distance of three point two hundred three (3.203) meters to Point number fifty-eight (58), from this point South sixty-six (66) degrees, thirty-eight (38) minutes five (5) seconds East and a distance of twenty-one point seventy-six (21.76) meters to Point number fifty-six (56), from this point, South thirteen (13) degrees, eighteen (18) minutes thirty-six (36) seconds west and a distance of one hundred thirty point seventy-seven (133.77) meters to Point number one (#1), which was the starting point of this description. ----------------------


ROBERTO J. TORRES ANTOMMATTEI

ABOGADO-NOTARIO

----------------SEGREGATION----------------

---SEVENTH: Segregation. In accordance with (i)

FOLIO CIENTO CUARENTA Y CUATRO          (144)

10

the segregation permits (hereinafter the
"Permits") issued by the Regulations and Permits
Administration (hereinafter "ARPE") on July fist
(1st), two thousand two (2002), and July tenth
(10th), two thousand two (2002), in Cases Numbers
Zero Two LS Seven dash Zero Zero Zero Zero Zero
dash Zero One Eight Two Nine (02LS7-00000-01829),
and Zero Two LS Seven dash Zero Zero Zero Zero
Zero dash Zero Two Seven One Seven (02LS7-00000-
02717), respectively, certified copies of which
will be attached to the first certified copy of
this Deed, and (ii) the Inscription Plans prepared
and certified by Hector A. Cruz Sánchez (the
"Inscription Plans") and approved by ARPE on July
first (1st), two thousand two (2002) and July tenth
(10th), two thousand two (2002), which will be
attached to the first certified copy of this Deed,
Seller hereby segregates from the Main Parcel the
following parcels of land (hereinafter
collectively referred to as the "Property")
described as follows: ---------------------------



---PARCEL A: RUSTIC: Parcel of land located in
the Carenero Ward of the Municipality of Guánica,
Puerto Rico, with a surface area of 3,930.3956
square meters equivalent to one (1) cuerda,
bounded on the North, South, East and West, by
land of the main parcel from which it is
segregated belonging to the Land Authority of
Puerto Rico. ------------------------------------

---Parcel One (1): RUSTIC: Parcel of land
located in the Carenero Ward of the Municipality
of Guánica, Puerto Rico, with an area of 3374.2398
square meters equivalent to eight thousand five
hundred eighty five (8,585) ten thousandths of a
cuerda, and bounded on the North by Parcel for
Public Use "B", on the South by lands of Ochoa
Fertilizer, on the East by Parcel for Public Use
"A", and on the West by a street leading to lands
of Ochoa Fertilizer. ----------------------------

---Parcel For Public Use "A": RUSTIC: Parcel of
land to be dedicated by Purchase for public use
located in the Carenero Ward of the Municipality

FOLIO CIENTO CUARENTA Y CINCO          (145)

11

of Guánica, Puerto Rico, with an area of 1145.4280 square meters equivalent to two thousand nine hundred (2,900) ten thousandths of a cuerda, and bounded on the North by a road leading to state Highway number three hundred thirty three (333), on the South by lands of the Puerto Rico Ports Authority on the East by State Highway number three hundred thirty three (#333) and on the West by the Parcel One (1) segregated from the Main Parcel. ------------------------------------

---Parcel for Public Use "B": RUSTIC: Parcel of land to be dedicated by Purchaser for public use located in the Carenero Ward of the Municipality of Guánica, Puerto Rico, with an area of 3.513 square meters equivalent to one (1) ten thousandths of a cuerda, bounded on the North by a road leading to State Highway three hundred thirty three (333), on the South by Parcel of land One (1) segregated from the Main Parcel; on the East by state Highway number three hundred thirty three (333), and on the West by a street and lands segregated from the Main Parcel. ----------------

---A true and correct geometric description of the Property appears on the Inscription Plans. --------

---The remnant of the Main Parcel after the segregation of the Property (hereinafter the "Remnant Parcel") is described as follows: -------

----RUSTIC: Parcel of land located in the Carenero Ward of the municipality of Guánica, Puerto Rico, consisting of one hundred six point two one eight eight (106.2188) cuerdas, equivalent to four hundred seventeen thousand four hundred eighty-five point two seven six three (417,485.2763) square meters. Bounded on the North, by the main parcel from which it is segregated belonging to the Land Authority of Puerto Rico and in part by that portion of the main parcel which is the parcel of two (2) cuerdas three hundred eighty-eight (388) hundredths of a cuerda, to be sold by the Land Authority to the Puerto Rico Industrial Development company; on the South and East, with land of the Insular Forest Reservation of the Commonwealth of Puerto Rico, Puerto Rico Electric Power Authority and a parcel segregated from this parcel owned by Guánica-Caribe Land Development Corporation; and on the West, with state Highway number three hundred thirty-three (#333). ----------------------------

---------------PURCHASE AND SALE----------------

---EIGHTH: Sale of the Property. ----------------

-----The Seller hereby sells to the Purchaser, and

the Purchaser hereby purchases from the Seller,

the Property, together with all of its rights,


ROBERTO J. TORRES ANTOMMATTEI
ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA Y SEIS
(146)

12

easements, improvements, structures, buildings and appurtenances without any limitation whatsoever, for the purchase price of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) (the "Purchase Price") which has been paid by the Purchaser to the Seller prior to the date hereof and receipt of which is hereby acknowledged by the Seller. The Purchase Price is apportioned among the Property as follows: Parcel A, the amount of Twelve Thousand Five Hundred ($12,500.00), and Parcel One (1), the amount of Twelve Thousand Three Hundred ($12,300.00). Parcel for Public Use "A" and Parcel for Public use "B", one hundred (100) each. ---------------------------
---NINTH; <u>Condition of the Property</u>. Prior to the execution of this Deed, the Purchaser has had the opportunity to conduct the inspections in connection with the Property that Purchaser has deemed necessary or convenient. Therefore, the Purchaser hereby takes and accepts the Property "as-is", without reliance on any representations, warranties or guarantees, either express or implied, of Seller or its employees or agents, in connection with the Property, including, without limitation, as to the condition (including environmental condition), area zoning, state of repair, fitness, suitability or adequacy for a particular use or compliance with laws, regulations and ordinances.-----------------------
---Purchaser knowingly waives any and all rights it may have with respect to apparent, hidden, or latent defects related to the Property and releases Seller from any and all obligations and liabilities that Seller may have with respect to



ROBERTO J. TORRES ANTOMMATTEI
ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA Y SIETE                          (147)

13

all such apparent, hidden or latent defects. ----
----------DEDICATION TO PUBLIC USE-------------
---TENTH: Dedication to Public Use. As required
under the Permit, Purchaser hereby dedicates
Parcel for Public Use "A" and Parcel for Public
Use "B" to public use. Purchaser agrees to
execute any and all documents necessary or
appropriate to effect such dedication, including,
without limitation, if required by the Registry of
Property, deeds of conveyance with the appropriate
governmental authority having jurisdiction over
such parcels.------------------------------------
----------CONSTITUTION OF EASEMENTS-------------
---ELEVENTH: The Ochoa Easement. In
consideration for the purchase Price, Seller
hereby constitutes a real easement ("servidumbre
predial") upon the Remnant Parcel, as servient
tenement (predio sirviente), in favor of Parcel A
and Parcel One (1) ("collectively the Ochoa
Property"), as dominant tenement ("predio
dominante"), such easement to run with and
constitute a lien on the Remnant Parcel for the
following uses and in accordance with the
following terms and conditions: ------------------
-----One. The easement (the "Ochoa Easement")
shall give the owner or owners of the Ochoa
Property for itself (themselves) and its (their)
respective employees, agents, guests, invitees,
successors, assignees and transferees the right to
keep the Water Tank (as hereinafter defined) and
the part of the Water Pipelines (as hereinafter
defined) which are located on the Remnant Parcel
at their present location on the Remnant Parcel



ROBERTO J. TORRES ANTON
ABOGADO-NOTARIO

14

and to have access through the PREPA Easement
Parcel (as hereinafter defined) to provide for the
maintenance and repair of the Water Pipelines and
the Water Tank. --------------------------------
-----Two.  The Water Tank as used herein, shall
mean that certain water tank owned by Purchaser
located on the Remnant Parcel.  The portion of the
Remnant Parcel where the Water Tank is located is
more particularly identified in the Plan for Right
of Way Easement, Access Road and Water Pipeline
prepared by Rafael Olivencia Llanova (the "Water
Tank Easement Plans") a copy of which is attached
hereto. -----------------------------------------
-----Three.  The Water Pipelines as used herein,
shall mean those certain water pipelines
identified in the Water Tank Easement Plans
attached hereto, which are owned by Purchaser and
are located on the Ochoa Property, the Remnant
Parcel and other properties. The portion of the
Remnant Parcel where the Water Pipelines are
located is the tract of land having an area of six
thousand nine hundred and sixty-four point eight
two (6,964.882) square meters, which is more
particularly described in the Water Tank Easement
Plans. ------------------------------------------
-----Four.  The PREPA Easement Parcel as used
herein, shall mean that certain road located on
the Remnant Parcel, covering a portion of the
Remnant Parcel consisting of a tract of land
having an area of one thousand eight hundred
ninety-four point five three one (1,894.531)
square meters, which is more particulary described
in the Water Tank Easement Plans. ---------------



ROBERTO J. TORRES ANTOMMATTE.

ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA Y NUEVE                    (149)

15

-----Five.  The owner of the Remnant Parcel may,
at its sole cost and expense, make connections to
the Water Pipelines and/or the Water Tank and use
water therefrom for any lawful purpose, subject to
the availability of said water after the Purchaser
has met its reasonable water requirements in
connection with its business.  The owner of the
Ochoa Property shall not be liable to the owner of
the Remnant Parcel in the event there is
insufficient water, after meeting the former's
reasonable water requirements in connection with
its business, to meet the water requirements of
the owner of the Remnant Parcel.  Before the owner
of the Remnant Parcel commences using water
pursuant to the GCL Easement, as hereinafter
defined, the owners of the Ochoa Property and of
the Remnant Parcel shall each install at their own
expense, and thereafter maintain and monitor at
their own expense, water meters that will measure
the amount of water used by each that was
extracted from the wells located on Parcel A.  The
owner of the Remnant Parcel shall reimburse the
owner of the Ochoa Property for such water
consumption at the same rate per gallon, if any,
that the owner of the Ochoa Property is required
to pay to the Natural Resources Department for the
extraction of water from the wells located at the
Ochoa Property.  The owner of the Ochoa Property
shall be responsible for maintaining the Water
Pumps (as hereinafter defined), the Water
Pipelines and the Water Tank at its own cost and
expense, except that the owner of the Remnant
Parcel shall reimburse the owner of the Ochoa


ROBERTO J. TORRES ANTOLINA

ABOGADO-NOTARIO

FOLIO CIENTO CINCUENTA                              (150)

16

Property within thirty (30) days after receipt of written request, for the increased cost ("incremental cost") of maintaining the Water Pumps, Water Pipelines and Water Tank resulting from the use by the owner of the Remnant Parcel of same. The incremental cost shall be determined by reference to a baseline, consisting of the total cost of maintaining the Water Pumps, Water Pipelines and Water Tank for the Twelve (12) month period immediately preceding the use of water for the first time by the owner of the Remnant Parcel pursuant hereto and the GCL Easement. ------------ -----Six. For the sole purpose of recordation in the Registry, the parties hereto attribute a value of ONE THOUSAND DOLLARS ($1,000.00) to the Ochoa Easement. ----------------------------------------- ---TWELVETH: _The GCL Easement_. In consideration for the transfer of the Parcel "A" described above, Purchaser hereby constitutes a real easement ("_servidumbre predial_") upon the Parcel "A", as servient tenement (_predio sirviente_), in favor of the Remnant Parcel, as dominant tenement ("_predio dominante_"), such easement to run with and constitute a lien on Parcel "A" for the following uses and in accordance with the following terms and conditions: ------------------- -----One. The easement (the "GCL Easement") shall give the owner or owners of the Remnant Parcel for itself (themselves) and its (their) respective employees, agents, guests, invitees, successors, assignees and transferees the right to have access across the Parcel "A" to the Water Pumps (as hereinafter defined) and the Water Pipelines



ROBERTO J. TORRES ANTONA...

ABOGADO-NOTARIO

FOLIO CIENTO CINCUENTA Y UNO                    (151)

17

located on Parcel "A" to operate the Water Pumps
located on Parcel "A" and to provide water to the
Remnant Parcel, all subject to the provisions set
forth in Section Five of Article Eleven hereof. -
-----Two.  The Water Pumps as used herein, shall
mean those certain water pumps owned by Purchaser
located on Parcel "A" and any replacements
thereto. --------------------------------------
-----Three.  The portion of the property where the
Water Pumps and Water Pipelines are located is
described and particularly identified in the Plans
prepared and certified by Hector A. Cruz Sánchez
and approved by ARPE on April Seventh (7th), 2003,
a copy of which is attached to the first certified
copy of this Deed. -----------------------------
-----Four.  For the sole purpose of recordation in
the Registry the parties hereto attribute a value
of one thousand ($1,000.00) dollars to the GCL
Easement. --------------------------------------



ROBERTO J. TORRES ANTONMATTE

ABOGADO-NOTARIO

---THIRTEENTH:  _Taxes_.  On and after the date
hereof, as long as the Municipal Revenue
Collection Center ("CRIM") continues to send only
one tax bill covering both the Property and the
Remnant Parcel, Purchaser shall pay to Seller,
within ten (10) days after receipt of Seller's
demand therefore, twelve percent (12%) of the
property taxes and other taxed and assessments
levied against the Main Parcel. After CRIM starts
sending a separate tax bill for the Ochoa
Property, Purchaser shall be responsible for the
direct payment of property taxes and all other
taxes and assessments levied against the Ochoa
Property. --------------------------------------

FOLIO CIENTO CINCUENTA Y DOS                    (152)

18

--------------------MISCELLANEOUS-----------------

---FOURTEENTH: _Expenses_. The Notarial Tariff for
this deed and the cost of all internal revenue
stamps required to be canceled on the original and
the first certified copy of this Deed and all fees
for its recordation in the Registry shall be
shared equally between Seller and Purchaser. -----

---FIFTEENTH: _Successors_. The provisions of this
Deed shall be binding upon and inure to the
benefit of the parties and their legal
representatives, heirs, administrators, executors,
successors and assigns. -------------------------

---SIXTEENTH: _Further Assurances_. The parties
hereto agree to execute and deliver any and all
other instruments and documents and do any and all
other acts and things as may be necessary or
expedient to more fully effectuate the agreements
contained in this Deed and carry on the business
contemplated hereunder and to record the
transactions effected herein in the Registry. ----

---SEVENTEENTH: _Parties' Consent_. The parties
hereto, for themselves and their successors and
assigns, hereby accept and consent to the
constitution and recordation of the Ochoa Easement
and the GCL Easement to the fullest extent
required or permitted by law. -------------------

---EIGHTENTH: _Petition to the Registrar_. The
parties to this Deed respectfully request that the
Honorable Registrar of Property (i) take notice
of the rectification of measurement, (ii) record
the segregation of the Property in the Registry as
four separate and independent parcels, (iii)
record the transfer of the Property by Seller to



ROBERTO J. TORRES ANTONMATTI.

ABOGADO-NOTARIO

FOLIO CIENTO CINCUENTA Y TRES                          (153)

19

Purchaser, (iv) record the dedication to public use of Parçel for Public Use "A" and Parcel for Public Use "B", (v) record the Ochoa Easement as a real easement ("servidumbre predial") upon the Remnant Parcel in favor of the Ochoa Property, (vi) place a marginal notation on the page where the Ochoa Property is recorded indicating the existence of the Ochoa Easement, (vii) record the GCL Easement as a real easement ("servidumbre predial") upon the Ochoa Property in favor of the Remnant Parcel and (vii) place a marginal notation on the page where the Remnant Parcel is recorded indicating the existence of the GCL Easement. --------------ACCEPTANCE, WARNINGS AND EXECUTION-----------The appearing parties fully ratify and confirm the statements contained herein, and find this Deed drafted to their entire satisfaction, having I, the Notary, made to the appearing parties the necessary legal warnings concerning the execution of this Deed. ----------------------------------I, the Notary, hereby certify that this Deed was read by the persons appearing herein; that I advised them of their right to have witnesses present at the execution hereof, which right they waived; that I advised them of the legal effect of this Deed; that they acknowledged that they understood the contents of this Deed and such legal effect; and that thereupon they signed this Deed before me and affixed their initials to each and every page hereof. ---------------------------
-----------------------------------------------
-----------------------------------------------
-----------------------------------------------



ROBERTO J. TORRES ANTOMMATTEI

ABOGADO-NOTARIO

FOLIO CIENTO CINCUENTA Y CUATRO                    (154)

20

---I, the Notary, do hereby certify as to
everything stated or contained in this instrument.
I, the Notary, ATTEST AND GIVE FAITH. -----------

----FIRMADO:    JOSE    LUIS    NIETO    MINGO,    en
representación de GUANICA CARIBE LAND DEVELOPMENT
CORPORATION;  y  RAFAEL  PALMER  ARRACHE,  en
representación de OCHOA FERTILIZER CO., INC. ----

----FIRMADO, RUBRICADO, SIGNADO Y SELLADO: ------
ROBERTO JOSE TORRES ANTOMMATTEI. ----------------

----Hay cancelado en su original los correspon-
dientes sellos de Rentas Internas y el Impuesto
Notarial. ---------------------------------------

----CERTIFICO que es copia fiel y exacta de su
original obrante en mi Protocolo de Instrumentos
Públicos del corriente año al que me remito. Y a
petición de Don José Luis Nieto Mingo, expido
primera copia de la presente escritura, la cual
consta de veinte (20) folios, dejando anotada
dicha expedición en San Juan, Puerto Rico, en el
día de hoy, veinte (20) de noviembre de dos mil
tres (2003). -----------------------------------





A01560826



**GUANICA, PUERTO RICO**

**Schedule B – Section 2**

2.    Standard Exceptions:

    a.    The lien of all taxes, assessments and governmental charges and levies, including all taxes, liens and assessments not yet assessed.

    e.    Utility easements, including easements in favor of the Commonwealth of Puerto Rico, the Puerto Rico Electric Power Authority, the Puerto Rico Aqueduct Authority, and the Municipality of Guayama.

3.    Other exceptions:

    a.    Easement in favor of the Commonwealth of Puerto Rico, assigned to the Puerto Rico Electric Power Authority, as per Resolution dated July 22, 1970 issued in Condemnation Proceedings in Case No. E-61-1081 and E-61-1084, recorded at folio 65, volume 29 of Guánica.

    b.    Right of way easement in favor of Parcel number 4708, constituted pursuant to deed number 5 dated May 8, 1989 before Notary Julio V. Rodríguez Vilá.

    c.    Easement, constituted pursuant to deed number 24 dated November 20, 2003 before Notary Roberto José Torres Antonmattei.

    d.    Discrepancy in area of approximately 4.3412 cuerdas for purposes of property taxes.

**Liability Transfer Project**

**List of Orders and Permits for Transfer to ELT**

## Guanica, Puerto Rico

| | |
|---|---|
| Site Name and Location | State Road 333<br>Guanica, PR |
| Name of Order/Type of Permit | None |
| ID Number | |
| Expiration Date | |
| Regulatory Information | |
| Notice Requirements | |

## EXHIBIT B-5 - Joplin, MO

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
    1)  Groundwater Monitoring Wells

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
    1)  Feb 2003 Master Services Agreement - The Forrester Group

Access Agreements:
    1)  7/29/03 Missouri & Northern Arkansas Railroad Company, Inc.

Schedule of Orders and Permits:  Attached

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:  None

Encroachments and Other Survey Matters:
    1)  Boundary overlap noted on survey (approximately one acre) between Grace
       and adjacent property owner (Expert Management, Inc.) has existed since
       before 1918.  Chicago Title unable to insure overlapping area.

**JOPLIN, MO**

Issued By:

**Chicago Title Insurance Company**

Schedule A

1. Effective Date: July 9, 2007 at 8:00 am
2. Policy or Policies to be issued:
   a. OWNER'S POLICY 1: ALTA OWNER'S POLICY (6/17/06)
      Proposed Insured:
      TO BE DETERMINED

   OWNER'S POLICY 2:
   Proposed Insured:

   b. LOAN POLICY 1: ALTA LOAN POLICY (6/17/06)
      Proposed Insured:
      TO BE DETERMINED

   LOAN POLICY 2:
   Proposed Insured:

Order No: 020072997

to be determined
Charge:

Charge:

to be determined
Charge:

Charge:

3. The estate or interest in the land described or referred to in this Commitment is:
   Fee Simple

4. Title to the above estate or interest in the land is at the Effective Date vested in:
   W. R. Grace & Co. - Conn.

5. The land referred to in this Commitment is described as follows:
   SEE ATTACHED

This Commitment is valid only if Schedule B is attached.

06CA  6/06  KMS        RC        RC        09/25/07   RC                                ALTA Commitment - 2006