JOPLIN, MO

Issued By:
**Chicago Title Insurance Company**

Schedule A (continued)

Order No: 020072997

5. THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS (continued):

A tract of land in the North half of the fractional Section 2, Township 27 North, Range 32 West, Jasper County, Missouri, being more particularly described as follows:

Commencing at an iron pin found at the NW corner of Section 2, Township 27 North, Range 32 West, Jasper County, Missouri; thence North 88 degrees 52 minutes 43 seconds East, 1309.54 feet along the North line of Section 2; thence South 00 degrees 23 minutes 28 seconds East, 30.00 feet to a 5/8 inch iron pin set on the North right of way line of a county road at the point of beginning; thence South 00 degrees 23 minutes 28 seconds East, 2526.90 feet to a 5/8 inch iron pin set on the East/West half section line of said section 2; thence North 89 degrees 15 minutes 56 seconds East 2639.57 feet to a 1/2 inch iron pin found at the Southeast corner of the Southeast corner of the West half of Lot One in the Northeast Quarter of Fractional Section 2; thence North 00 degrees 18 minutes 37 seconds West; 1114.44 feet along the East line of the West half of Lot One in the Northeast Quarter of Fractional Section 2 to a 1 1/4 rod; thence North 88 degrees 54 minutes 07 seconds East, 208.71 feet to a set 5/8 inch iron pin; thence North 00 degrees 12 minutes 11 seconds West, 208.71 feet to a found 1/2 inch iron pin on the South line of Lot 2 in the Northeast Quarter of Fractional Section 2; thence North 89 degrees 17 minutes 41 seconds East, 416.80 feet along the South line of said Lot 2 to a set 5/8 inch iron pin; thence North 00 degrees 39 minutes 58 seconds West, 626.19 feet to a set 5/8 inch iron pin; thence North 88 degrees 52 minutes 43 seconds East, 652.94 feet to a 5/8 inch iron pin set on the West right of way line of State Highway "AA"; thence 385.73 feet along the West right of way line of State Highway "AA" on a curve to the left with a radius of 1869.86 feet, a central angle of 11 degrees 49 minutes 09 seconds and a long chord distance of 385.04 feet on a bearing of North 04 degrees 13 minutes 21 seconds West to a set 5/8 inch iron pin; thence South 88 degrees 52 minutes 43 seconds West, 115.60 feet to a set 5/8 inch iron pin; thence South 00 degrees 26 minutes 44 seconds East, 9.00 feet to a set 5/8 inch iron pin; thence South 88 degrees 52 minutes 43 seconds West, 348.00 feet to a set 5/8 inch iron pin; thence North 00 degrees 26 minutes 44 seconds West, 9.00 feet to a set 5/8 inch iron pin; thence South 88 degrees 52 minutes 43 seconds West, 143.33 feet to a set 5/8 inch iron pin; thence North 00 degrees 23 minutes 21 seconds West, 214.00 feet to a 5/8 inch iron pin sest on the South right of way line of a county road; thence South 88 degrees 52 minutes 43 seconds West, 438.00 feet along said right of way to a set 5/8 inch iron pin; thence South 00 degrees 23 minutes 21 seconds East, 596.33 feet to a set 5/8 inch iron pin; thence South 89 degrees 01 minutes 12 seconds West, 194.72 feet to a set 5/8 inch iron pin; thence North 00 degrees 19 minutes 40 seconds West, 595.86 feet to a 5/8 inch iron pin set on the South right of way line of a county road; thence South 88 degrees 52 minutes 43 seconds West, 2652.73 feet along said right of way to the point of beginning, EXCEPT the Missouri Pacific Railroad right of way, and EXCEPT commencing at an iron pin found at the Northwest corner of said Section 2, thence North 88 degrees 52 minutes 43 seconds East, 3921.89 feet along the North line of Section 2, thence South 01 degrees 07 minutes 17 seconds East, 30.00 feet to an iron pin set on the South right of way line of a county road and true point of beginning, thence North 88 degrees 52 minutes 43 seconds East, 40.00 feet along said right of way to an iron pin found at the Northeast corner of the tract, thence South 00 degrees 19 minutes 40 seconds East, 595.86 feet to an iron pin found at the Southeast corner of the tract, thence South 89 degrees 01 minutes 12 seconds West, 40.00 feet to an iron pin set at the Southwest corner of the tract, thence North 00 degrees 19 minutes 40 seconds West, 595.76 feet to the point of beginning.

This Commitment is valid only if Schedule B is attached.

06CLC  6/06  KMS          RC          RC          09/25/07    RC

ALTA Commitment - 2006

JOPLIN, MO

| Issued By: | |
|---|---|
| Chicago Title Insurance Company | Schedule B |

Order No: | 020072997

SCHEDULE B

EXCEPTIONS

8. General and special taxes and assessments as hereafter listed, if any (all amounts shown being exclusive of interest, penalties and costs):

9. The lien of city, state, and county taxes for the year 2007, due November 1, 2007, delinquent January 1, 2008.

10. FOR YOUR INFORMATION:

City, State, and County Taxes;
Year:           2006
Amount:       $155.18, Paid.
Tax ID No.:   2-200008-0

11. Agreement with the Empire District Electric Company in Book 369 at Page 498.

12. Agreement with the Empire District Electric Company in Book 369 at Page 499.

13. Agreement with the Empire District Electric Company in Book 369 at Page 500.

14. Agreement with the Empire District Electric Company in Book 369 at Page 501.

15. Agreement with the Empire District Electric Company in Book 369 at Page 503.

16. Agreement with the Empire District Electric Company in Book 369 at Page 552.

JOPLIN, MO

| Issued By: | |
|---|---|
| Chicago Title Insurance Company | Schedule B (continued) |

Order No: | 020072997 |

17. Right of way Deed to the Fort Scott Central Railway Company in Book 107 at Page 451.

18. Right of way grant to Cities Service Gas Company filed as Document No. 21119.

19. Right of way grant to Cities Service Gas Company filed as Document No. 21121.

20. Right of way grant to Cities Service Gas Company filed as Document No. 21123.

21. Right of way grant to Cities Service Gas Company filed as Document No. 863.

22. Right of way to the County of Jasper filed in Book 454 at Page 381.

23. Right of way to the County of Jasper filed as Document No. 12686.

24. Right of way to the County of Jasper filed in Book 770 at Page 617.

25. Right of way to the County of Jasper filed in Book 770 at Page 621.

26. Right of way to the County of Jasper filed in Book 770 at Page 629.

27. Right of way to the County of Jasper filed in Book 770 at Page 633.

28. Right of way to the County of Jasper filed in Book 770 at Page 635.

29. Right of way to the County of Jasper filed in Book 770 at Page 637.

30. Right of way to State of Missouri for the use of The State Highway Commission of Missouri filed in Book 772 at Page 201.

31. Easement to the Empire District Electric Company filed in Book 784 at Page 173.

32. Easement to the Empire District Electric Company filed in Book 784 at Page 389.

33. Easement to the Empire District Electric Company filed in Book 940 at Page 464.

34. Easement to the Empire District Electric Company filed in Book 940 at Page 467.

35. Easement to the Empire District Electric Company filed in Book 940 at Page 468.

36. Easement for Water Pipe to Jasper County Water Supply District #3 filed in Book 1930 at Page 2286.

37. Rights of the public, State of Missouri, County of Jasper and the Municipality in and to that part of the North and East sides of the premises in question taken or used for road purposes.

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Joplin, MO - Gypsum Stacks

| | |
|---|---|
| Site Name and Location | Highway AA and Newman Road<br>Joplin, MO |
| Name of Order/Type of Permit | Settlement Agreement with Missouri Department of Natural Resources |
| ID Number | Not Applicable |
| Expiration Date | Monitoring Plan obligations will cease "upon the request of Grace...and on the approval of (MDNR)" |
| Regulatory Information | Missouri Department of Natural Resources<br>Mr. Paul Dickerson<br>205 Jefferson Street, 9th Floor<br>Jefferson City, MO  65101<br>573-751-7624 |
| Notice Requirements | None |

### EXHIBIT B-6 - Memphis, TN

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
1)  Groundwater Monitoring Wells

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
1)  9/14/92 Wilder Farming Lease; 12/26/95 Amendment
2)  6/24/97 Settlement and Indemnity Agreement - Richard C. and Donna M. Rowe; 6/30/03 Amendment
3)  8/1/05 Global Master Services Agreement - URS Corporation

Access Agreements:
1)  12/1/89 E. I. DuPont Specialty Chemicals
2)  1/17/90 Richard and Donna Rowe
3)  2/6/92 Estate of Dr. and Mrs. Breen Bland
4)  9/14/92 Wilder Farms (access rights under Farm Lease)
5)  8/18/98 Timminco Properties, Inc.

Schedule of Orders and Permits:  Attached

Monetary Liens:  Declining Balance Letter of Credit with Wachovia (value as of 12/31/07 was $340,000; value changes to $300,000 on 7/1/08.)

Right of First Refusal or Option to Purchase:  None

Rent:  Check in the amount of $4,000 (received on 11/28/07) from Wilder Farms was for 2007 rent and for the credit of Grace.  Rent payments are defined in a 1992 Farming Lease between Grace and Wilder Farms.

Violations of Law; Pending or Threatened Litigation or Eminent Domain:  None

Memphis, TN

## Chicago Title Insurance Company
P.O. Box 45023, Jacksonville, Florida 32232-5023
(877)862-9111   FAX (904)564-1602

### Schedule A

File No.:      2108185
Loan No.:                                             Commitment No.: 2108185

1. Effective Date:      October 19, 2007 at 8:00 AM

2. Policy or Policies to be issued:

                                                                                          Amount
                                               $ TO BE DETERMINED

    (a) __X__ Owner's Policy        ( ALTA Own. Policy (6-17-06) )
        Proposed Insured:
        a qualified purchaser, to be determined

    (b) ____ Loan Policy           ( )
        Proposed Insured:

3. The estate or interest in the land described or referred to in this Commitment is Fee Simple.

4. Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:
   W. R. Grace & Co.-Conn, a Connecticut corporation

5. The land referred to in the Commitment is described as follows:

   Land situated in Shelby County, Tennessee.

Being the property described in Warranty Deeds of record under Book No. 5879, Page 358 and Book No. 5879, Page 362, less and except the property described in Warranty Deed under Instrument No. AK 3581.

Alta Commitment – 2006                               (2108185.PFD/2108185/10)

PROPERTY DESCRIPTION

BEING A SURVEY OF PART OF THE W.R. GRACE & CO. — CONN. PROPERTY
AS RECORDED IN BOOK 5879, PAGE 362 AT THE SHELBY COUNTY
REGISTER'S OFFICE, LOCATED IN SHELBY COUNTY, TENNESSEE AND BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF THE ARCADIAN FERTILIZER,
L.P. PROPERTY (INSTRUMENT CV—2812), SAID POINT ALSO LIES ON THE
EAST LINE OF OLD MILLINGTON ROAD (60.00 FOOT WIDE PUBLIC RIGHT—OF—
WAY), SAID POINT BEING S19°51'16"W A DISTANCE OF 113.13 FEET
FROM A FOUND IRON PIN AT AN ANGLE POINT ON THE WEST LINE OF THE
SAID ARCADIAN FERTILIZER, L.P. PROPERTY, SAID POINT OF BEGINNING
HAVING A TENNESSEE STATE PLANE COORDINATE OF (N 368278.4240 — E
784168.7474); THENCE S80°11'43"E ALONG A SOUTH LINE OF THE SAID
ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 634.47 FEET TO A
FOUND ION PIN; THENCE N57°00'54"E AND CONTINUING ALONG A SOUTH
LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF
1004.02 FEET TO A POINT; THENCE S80°44'39"E AND CONTINUING
ALONG A SOUTH LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY
A DISTANCE OF 121.09 FEET TO A POINT; THENCE S9°37'18"W AND
CONTINUING ALONG A SOUTH LINE OF THE SAID ARCADIAN FERTILIZER,
L.P. PROPERTY A DISTANCE OF 642.67 FEET TO A POINT; THENCE
S78°55'12"E AND CONTINUING ALONG A SOUTH LINE OF THE SAID
ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 113.25 FEET TO A
POINT FOUND IRON PIN; THENCE N10°53'01"E AND CONTINUING ALONG A
SOUTH LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A
DISTANCE OF 51.53 FEET TO A FOUND IRON PIN; THENCE S80°12'56"E
AND CONTINUING ALONG A SOUTH LINE OF THE SAID ARCADIAN
FERTILIZER, L.P. PROPERTY A DISTANCE OF 834.69 FEET TO A FOUND
IRON PIN AT THE SOUTHEAST CORNER OF THE SAID ARCADIAN FERTILIZER,
L.P. PROPERTY; THENCE N8°10'34"E ALONG A EAST LINE OF THE SAID
ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 869.06 FEET TO A
FOUND IRON PIN; THENCE S80°53'50"E ALONG A EAST LINE OF THE
SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 114.47 FEET
TO A POINT; THENCE N6°54'31"E ALONG A EAST LINE OF THE SAID
ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 1069.08 FEET TO
THE NORTHEAST CORNER OF THE SAID ARCADIAN FERTILIZER, L.P.
PROPERTY (N 369854.3035 — E 786958.8820), SAID POINT LIES ON THE
SOUTH LINE OF THE ANNA E. HAYES PROPERTY (PROBATE COURT BOOK 212,
PAGE 330); THENCE S81°16'39"E ALONG THE SOUTH LINE OF THE SAID
HAYES PROPERTY AND ALONG THE SOUTH LINE OF THE MEMPHIS
INTERNATIONAL MOTORSPORTS PARK, INC. PROPERTY (INSTRUMENT Y8—
5194) A DISTANCE OF 2610.19 FEET TO FOUND CONCRETE MONUMENT (N
369458.4672 — E 789536.8870); THENCE S10°22'47"W A DISTANCE OF
165.50 FEET TO A FOUND IRON PIN ON THE NORTHWEST RIGHT—OF—WAY
LINE OF THE ILLINOIS CENTRAL RAILROAD (100.00 FEET NORTHWEST OF
THE CENTERLINE OF THE EASTERN MOST TRACK); THENCE S49°34'00"W
ALONG THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL
RAILROAD A DISTANCE OF 1499.12 FEET TO A FOUND IRON PIN; THENCE
N40°26'00"W A DISTANCE OF 50.00 FEET TO A POINT ON THE
NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL RAILROAD
(150.00 FEET NORTHWEST OF SAID CENTERLINE); THENCE S49°34'00"W
ALONG THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL
RAILROAD A DISTANCE OF 975.41 FEET TO A POINT; THENCE
S79°56'02"E A DISTANCE OF 64.80 FEET TO A POINT ON THE
NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL RAILROAD
(100.00 FEET NORTHWEST OF SAID CENTERLINE); THENCE S49°34'00"W
ALONG THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL
RAILROAD A DISTANCE OF 1548.26 FEET TO A FOUND IRON PIN; THENCE
S40°26'00"E A DISTANCE OF 17.50 FEET TO A POINT ON THE
NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL RAILROAD
(82.50 FEET NORTHWEST OF SAID CENTERLINE); THENCE S49°34'00"W
ALONG THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL
RAILROAD A DISTANCE OF 60.00 FEET TO A POINT (N 366661.1447 — E
786442.1264), SAID POINT BEING THE NORTHEAST CORNER OF THE
RICHARD C. ROWE AND DONNA M. ROWE PROPERTY (INSTRUMENT AZ—6686);
THENCE N79°57'40"W ALONG THE NORTH LINE OF THE SAID ROWE
PROPERTY A DISTANCE OF 2598.79 FEET TO THE NORTHWEST CORNER OF
THE SAID ROWE PROPERTY, SAID POINT ALSO LIES ON THE EAST LINE OF
SAID OLD MILLINGTON ROAD (N 367114.1513 — E 783883.1253); THENCE
N1°02'16"E ALONG THE EAST LINE OF OLD MILLINGTON ROAD A
DISTANCE OF 265.47 FEET TO A FOUND IRON PIN AT A POINT OF
CURVATURE; THENCE CONTINUING ALONG THE EAST LINE OF OLD
MILLINGTON ROAD ALONG A 770.00 FOOT RADIUS CURVE TO THE RIGHT AN
ARC DISTANCE OF 252.88 FEET (CHORD N10°26'46"E 251.74 FEET) TO
A FOUND IRON PIN AT THE POINT OF TANGENCY; THENCE N19°51'16"E
AND CONTINUING ALONG THE EAST LINE OF OLD MILLINGTON ROAD A
DISTANCE OF 692.43 FEET TO THE POINT OF BEGINNING AND CONTAINING
7,917,431 SQUARE FEET, OR 181.759 ACRES.

MEMPHIS, TN

**SCHEDULE B - SECTION II**
**EXCEPTIONS**

File No.: 2108185                                    Commitment No.: 2108185 REVISION 2

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the company:

6.  Taxes based on a change in the classification of the insured Land (Roll Back Taxes) pursuant to T.C.A. Section 67-5-1001 et seq., as evidenced by Application for Approval of Land as Agricultural Land of record under Instrument No. CW 8658, in the Register's Office of Shelby County, Tennessee.

7.  Notice of Hazardous Substance Site of record under Instrument No. BB 7190, being amended by Supplemental Notice of Hazardous Substance Site of record at Instrument No. BK 2720, both recordings in the aforesaid Register's Office.

9.  150 foot transmission line easement granted to MLG&W, dated April 11, 1951, recorded in Book 2774, Page 347, in the aforesaid Register's Office, located across the central portion of the property as shown on survey by The Reaves Firm Incorporated, dated October 8, 2007, Job No. 07-0436 (said survey).

10. 150 foot electric transmission line easement granted to MLG&W, dated April 11, 1951, recorded in Book 2774, Page 349, in the aforesaid Register's Office, located across the central portion of the property, as shown on said survey.

11. 150 foot transmission line easement granted to MLG&W, dated May 7, 1951, recorded in Book 2786, Page 198, in the aforesaid Register's Office, located as shown on said survey.

12. Four foot easement granted to MLG&W, dated December 29, 1951, recorded in Book 2877, Page 165, in the aforesaid Register's Office, located on the southeast property line as shown on said survey.

13. Five foot utility easement granted to MLG&W, dated November 9, 1954, recorded in Book 3391, Page 82, in the aforesaid Register's Office, located along part of the north property line as shown on said survey.

14. 50 foot easement granted to MLG&W, dated July 14, 1960, recorded in Book 4391, Page 240, in the aforesaid Register's Office, located across the central portion of the property as shown on said survey.

15. Three anchor guy easements granted to MLG&W, dated December 26, 1961, recorded in Book 4633, Page 287, in the aforesaid Register's Office, located on the southeast property line as shown on said survey.

18. Utility easement granted to MLG&W, dated June 8, 1964, recorded in Book 5412, Page 175, in the aforesaid Register's Office, located along the south property line as shown on said survey.

MEMPHIS, TN

**SCHEDULE B – SECTION II**
**EXCEPTIONS**
(Continued)

File No.: 2108185                                Commitment No.: 2108185 REVISION 2

19.   39 foot easement granted to Illinois Central Railroad Company, dated October 5, 1965, recorded in Book 5931, Page 365, in the aforesaid Register's Office, located across the northerly portion of the property as shown on said survey.

21.   Fifteen foot utility easement granted to MLG&W, dated April 2, 1979, recorded at Instrument No. P3 8459, in the aforesaid Register's Office, on the southeast corner of the property as shown on said survey.

22.   Ten foot easement granted to MLG&W, dated April 18, 1979, recorded at Instrument No. P7 1363, in the aforesaid Register's Office, located across the central portion of the property as shown on said survey.

23.   Easements granted to Western Branch Holding Co., dated April 28, 1988, recorded at Instrument No. AK 3582, in the aforesaid Register's Office, shown on said survey as follows:

   a)  Twenty foot private sewer and utility easement along part of the southeast property line and across the southwesterly portion of the property;
   b)  Ten foot private gas line easement across the southwesterly portion of the property;
   c)  Thirty foot private access easement across the least northerly portion of the property;
   d)  Ten foot private sewer easement cross the least northerly portion of the property;
   e)  250 foot private railroad easement across the most northerly portion of the property; and
   f)  Forty foot private railroad easement across the most northwesterly portion of the property.

24.   Forty foot private railroad easement granted to Western Branch Holdoing Co., dated April 28, 1988, recorded at Instrument No. AK 3581, in the aforesaid Register's Office, located across the most northwesterly portion of the property as shown on said survey.

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Memphis, TN

| Site Name and Location | 5750 Old Millington Road<br>Memphis, TN |
|---|---|
| Name of Order/Type of Permit | Consent Order and Agreement under Tennessee Voluntary Cleanup, Oversight, and Assistance Program |
| ID Number | 79-536 |
| Expiration Date | Not Applicable |
| Regulatory Information | Tennessee Department of Environment and Conservation<br>Division of Superfund<br>Voluntary Cleanup, Oversight, and Assistance Program<br>Mr. Andy Shivas<br>401 Church Street, 4th Floor<br>Nashville, TN 37243-1538<br>615-532-0912 |
| Notice Requirements | None |

## EXHIBIT B-7 - Owensboro, KY

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
1) Groundwater Monitoring Wells
2) Wastewater Treatment Ponds and Fire Reservoirs
3) Aerators in Wastewater Treatment Lagoon

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
1) 8/1/05 Global Master Services Agreement - URS Corporation
2) Owensboro Specialty Polymers - 99-year lease beginning September 14, 2005 (Lessee purchased all equipment; Grace retained ownership of land.)

Access Agreements:
1) 4/21/97 Daramic
2) 4/12/95 Fibermark (fka Endura)
3) 9/14/05 Owensboro Specialty Polymers (access rights under ground lease)

Schedule of Orders and Permits:  Attached

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  Owensboro Specialty Polymers (OSP) has the right to purchase leased premises; Landlord must notify OSP in writing of any bona fide offer to purchase leased premises; Tenant has 30 days to notify Landlord if Tenant desires to purchase leased premises (page 24, paragraph 41).  Per Grace Real Estate, OSP has no interest in purchasing the property.  Letter of understanding between Grace and OSP pending as of 2/21/08.

Rent:  Grace received pre-paid rent of $4,000.00 from OSP for the entire 99-year lease term in September 2005.

Violations of Law; Pending or Threatened Litigation or Eminent Domain:  None

OWENSBORO, KY

# CHICAGO TITLE INSURANCE COMPANY
9510 Ormsby Station Road, Suite 103, Louisville, KY 40223
(502)585-5135  FAX (502)584-3619

## SCHEDULE A

File No.:     510495
Loan No.:

Commitment No.: 510495

1. Effective Date:   July 25, 2007 at 08:00 AM

2. Policy or Policies to be issued:

Amount

    (a) __X___ Owner's Policy      ( ALTA 2006 Owners Policy )
       Proposed Insured:
       TO BE DETERMINED

    (b) _____ Loan Policy      ( ALTA 2006 Loan Policy )
       Proposed Insured:

3. The estate or interest in the land described or referred to in this Commitment is Fee Simple.

4. Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:
Lot 2 and Lot 5:  W. R. Grace & Co., a Connecticut corporation (now known as W.R. Grace & Co.-Conn.)
Lot 1:  W.R. Grace & Co.-Conn., a Connecticut corporation

5. The land referred to in the Commitment is described as follows:
Located in Daviess County, Kentucky and being more particularly described of Exhbiit A attached hereto.

ALTA Commitment - 2006

(510495.PFD/510495/8)

OWENSBORO, KY

# EXHIBIT A

Located in Daviess County, Kentucky:

Being all of Lot 1, Lot 2 and Lot 5 as shown on Minor Subdivision Plat for W.R. Grace recorded November 28, 1994 in Plat Book 23, pages 335 and 336 in the office of the Clerk of Daviess County, Kentucky;

TOGETHER WITH non-exclusive easements appurtenant to the above described land as more particularly described and set forth in the following instruments:

1. Reciprocal Easement Agreement between W.R. Grace & Co.-Conn. and Specialty Paperboard/Endura, Inc. recorded in Deed Book 638, page 277, said records;
2. Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 304, re-recorded in Deed Book 641, page 257, said records;
3. Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 323, re-recorded in Deed Book 641, page 277, said records;
4. Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 224, said records; and
5. Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 239, said records.

Lot 2 and Lot 5:  Being the remainder of property conveyed to W.R. Grace & Co., by Deed dated April 18, 1958, recorded in Deed Book 274, page 203, LESS AND EXCEPT conveyances in Deed Book 281, page 640; Deed Book 340, page 191; Deed Book 413, page 301; Deed Book 619, page 528; Deed Book 623, page 860; Deed Book 638, page 273; and Deed Book 643, page 219, in the office of the Clerk of Daviess County, Kentucky;

Lot 1: Being the same parcel of land conveyed to W.R. Grace & Co.-Conn., by Deed dated July 20, 2000, recorded in Deed Book 722, page 745, said records.

OWENSBORO, KY

# EXHIBIT A

Located in Daviess County, Kentucky:

Being all of Lot 1, Lot 2 and Lot 5 as shown on Minor Subdivision Plat for W.R. Grace recorded November 28, 1994 in Plat Book 23, pages 335 and 336 in the office of the Clerk of Daviess County, Kentucky;

TOGETHER WITH non-exclusive easements appurtenant to the above described land as more particularly described and set forth in the following instruments:

1. Reciprocal Easement Agreement between W.R. Grace & Co.-Conn. and Specialty Paperboard/Endura, Inc. recorded in Deed Book 638, page 277, said records;
2. Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 304, re-recorded in Deed Book 641, page 257, said records;
3. Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 323, re-recorded in Deed Book 641, page 277, said records;
4. Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 224, said records; and
5. Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 239, said records.

Lot 2 and Lot 5:  Being the remainder of property conveyed to W.R. Grace & Co., by Deed dated April 18, 1958, recorded in Deed Book 274, page 203, LESS AND EXCEPT conveyances in Deed Book 281, page 640; Deed Book 340, page 191; Deed Book 413, page 301; Deed Book 619, page 528; Deed Book 623, page 860; Deed Book 638, page 273; and Deed Book 643, page 219, in the office of the Clerk of Daviess County, Kentucky;

Lot 1: Being the same parcel of land conveyed to W.R. Grace & Co.-Conn., by Deed dated July 20, 2000, recorded in Deed Book 722, page 745, said records.

OWENSBORO, KY

RECORD BOUNDARY DESCRIPTION
PER D.B. 722, PG. 745;
P.B. 21, PG. 307 AND 308

TRACT 1 - 9.109 ACRES MORE OR LESS

Being a 9.109 acre, more or less, tract located within the bounds of a 142.94 acre, more or less, tract conveyed to WR Grace & Company, a Connecticut corporation, by Owensboro-Daviess County Industrial Foundation, Inc., a Kentucky corporation, by deed dated April 18, 1958, and of record in Deed Book 274, Page 203 and said tract recorded in Plat Book 21, Page 307 and 308 all in the Office of the County Court Clerk of Daviess County, Kentucky and more particularly described as follows:

BEGINNING at a 5/8-inch rebar with LS Cap 2566 being North 24 degrees 15 minutes East along the North right-of-way line of US Highway 60 a distance of 1764.41 feet and North 66 degrees 01 minutes 23 seconds West a distance of 1388.3 feet from the SE corner of the WR Grace 142.94ñ acre tract as recorded in Deed Book 274, Page 203 (at the North right-of-way line of US Highway 60) on the common line of WR Grace and Owensboro Sand and Gravel Company as recorded in Deed Book 467, Page 254-259; thence North 66 degrees 01 minutes 23 seconds West a distance of 494.33 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence South 25 degrees 29 minutes 26 seconds West a distance of 139.68 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, North 64 degrees 25 minutes 06 seconds West a distance of 261.80 feet (measured) to a 5/8-inch rebar with LS Cap 2566 at the top of the bank of the Ohio River; thence, continuing North 64 degrees 25 minutes 06 seconds West a distance of 155.00 feet(calculated) to the low water mark of the Ohio River as referenced in Deed Book 274, Page 203; thence, North 24 degrees 30 minutes 00 seconds East along the low water mark of the Ohio River as referenced in Deed Book 274, Page 203 a distance of 485.73 feet; thence, South 63 degrees 15 minutes 44 seconds East a distance of 106.00 feet (calculated) to a 5/8-inch rebar with LS Cap 2566 being at the top of the bank of the Ohio River; thence, continuing South 63 degrees 15 minutes 44 seconds East a distance of 356.73 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, North 25 degrees 17 minutes 05 seconds East a distance of 188.91 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 61 degrees 51 minutes 18 seconds East a distance of 10.92 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 26 degrees 19 minutes 22 seconds West a distance of 187.62 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 64 degrees 18 minutes 51 seconds East a distance of 210.14 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, North 26 degrees 40 minutes 14 seconds East a distance of 106.68 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 64 degrees 50 minutes 44 seconds East a distance of 185.92 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 01 degrees 14 minutes 52 seconds West a distance of 96.93 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 25 degrees 22 minutes 14 seconds West a distance of 353.03 feet (measured) to THE PLACE OF BEGINNING containing 9.109 acres more or less.

OWENSBORO, KY

RECORD BOUNDARY DESCRIPTION
PER P.B. 23, PG. 335 AND 336

LOT 2 - 8.72 ACRES

More or less located within the bounds of a 142.92 acre tract, more or less, conveyed to WR
Grace & Company, a Connecticut Corporation, by Owensboro-Daviess County Industrial
Foundation, Inc., a Kentucky Corp., by deed dated April 18, 1958 and/or recorded in Deed Book
274, Page 203 as recorded in the Office of the County Court Clerk of Daviess County, Kentucky
and being more particularly described as follows:

Beginning at a 5/8-inch rebar with LS Cap 2566 being North 24 degrees 15 minutes 00 seconds
East along the north right-of-way line of US Highway 60 as conveyed in Deed Book 340, Page
191 a distance of 1,067.91 feet and North 64 degrees 12 minutes 15 seconds West a distance of
411.14 feet from the SE corner of the WR Grace's 142.94ñ acre tract as recorded in Deed Book
274, Page 203 (at the north right-of-way line of US Highway 60 on the common line of WR
Grace and Owensboro Sand and Gravel Company as recorded in Deed Book 467, Pages 254-
259) being common to the SW corner of Tract 3 as recorded in minor subdivision Plat Book 23,
Page 170-171; thence, North 27 degrees 57 minutes 06 seconds East and along the common line
of said Tract 3 a distance of 1,071.87 feet to a point in Parcel 10D as recorded in Deed Book
623, Page 860 and at a point of a temporary right-of-way as recorded in Deed Book 276, Page 6;
thence, South 64 degrees 10 minutes 56 seconds East along said right-of-way and easement a
distance of 298.90 feet to a point on the north Kentucky DOT right-of-way line as recorded in
Deed Book 623, Page 860; thence, South 25 degrees 46 minutes 26 seconds West (measured)
and South 28 degrees 27 minutes 53 seconds West (record) a distance of 10.90 feet along said
Kentucky DOT right-of-way line; thence, South 64 degrees 13 minutes 34 seconds East
(measured) a distance of 15.00 feet along said Kentucky DOT right-of-way line; thence, South
23 degrees 17 minutes 04 seconds West (measured) and South 25 degrees 58 minutes 31 seconds
West (record) a distance of 230.22 feet (record and measured) along Kentucky DOT right-of-
way line; thence, South 23 degrees 19 minutes 12 seconds West (measured) and South 26
degrees 00 minutes 39 seconds West (record) a distance of 350.32 feet (record and measured)
along said Kentucky DOT right-of-way line; thence, South 25 degrees 46 minutes 26 seconds
West (measured) and South 28 degrees 27 minutes 53 seconds West (record) a distance of
100.00 feet (record and measured) along said Kentucky DOT right-of-way line; thence, South 23
degrees 29 minutes 00 seconds West (measured) and South 26 degrees 10 minutes 27 seconds
West (record) a distance of 250.20 feet (record and measured) along said Kentucky DOT right-
of-way line; thence, South 25 degrees 46 minutes 26 seconds West (measured) and South 28
degrees 27 minutes 53 seconds West (record) a distance of 130.01 feet along said Kentucky DOT
right-of-way line to a point at the NE corner of a 51.49 acre tract; thence, North 64 degrees
12 minutes 15 seconds West a distance of 389.74 feet along the north line of a 51.49 acre
tract to the PLACE OF BEGINNING containing 8.72 acres more or less.

RECORD BOUNDARY DESCRIPTION
PER P.B. 23, PG. 335 AND 336

**OWENSBORO, KY**

LOT 5 - 54.33 ACRES

Being a 54.33 acre tract more or less located within the bounds of a 142.92 acre tract, more or less, conveyed to WR Grace & Company, a Connecticut corporation, by Owensboro-Daviess County Industrial Foundation, Inc., a Kentucky corp., by Deed dated April 18, 1958 and/or recorded in Deed Book 274, Page 203 as recorded in the office of the County Court Clerk of Daviess County, Kentucky and being more particularly described as follows:

Commencing at a 5/8-inch rebar with LS Cap 2566 being North 24 degrees 15 minutes 00 seconds East along the north right-of-way line of US Highway 60 as conveyed in Deed Book 340, Page 191 a distance of 1,067.91 feet and North 64 degrees 12 minutes 15 seconds West a distance of 411.14 feet from the SE corner of the WR Grace's 142.94ñ acre tract as recorded in Deed Book 274, Page 203 (at the north right-of-way line of US Highway 60 on the common line of WR Grace and Owensboro Sand and Gravel Company as recorded in Deed Book 467, Pages 254-259) being common to the SE corner of Tract 3 as recorded in Minor Subdivision Plat Book 23, Page 170-171; thence, North 27 degrees 57 minutes 06 seconds East along the easterly line of said Lot Number 3 a distance of 1,071.87 feet; thence, South 64 degrees 10 minutes 55 seconds East a distance of 298.90 feet to a point on the northeasterly right-of-way line of Kentucky DOT right-of-way take as recorded in Deed Book 623, Page 860; thence, North 25 degrees 46 minutes 26 seconds East continuing along said Kentucky DOT right-of-way line a distance of 82.00 feet to the PLACE OF BEGINNING; thence, North 71 degrees 08 minutes 14 seconds West and along the common line of Lot 4 a distance of 181.63 feet; thence, North 64 degrees 29 minutes 59 seconds West a distance of 630.06 feet along the common line of said Lot 4 to a point on a curve being concave to the southwest through a central angle of 94 degrees 31 minutes 02 seconds with a radius of 58.49 feet through a chord bearing of North 72 degrees 37 minutes 57 seconds West with a chord distance of 85.91 feet with a arc length of 96.49 feet along the common line of said Lot 4; thence, North 64 degrees 58 minutes 58 seconds West a distance of 349.63 feet along the common line of said Lot 4 to a curve being concave to the southwest with a central angle of 45 degrees 07 minutes 26 seconds with a radius of 78.11 feet through a chord bearing of North 87 degrees 32 minutes 41 seconds West with a chord distance of 59.94 feet along the common line of said Lot 4; thence, South 65 degrees 44 minutes 51 seconds West a distance of 70.41 feet to a point on the common line of Lot 1 as recorded in Plat Book 21, Page 307-308; thence, North 01 degrees 14 minutes 52 seconds East a distance of 68.97 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, North 64 degrees 50 minutes 44 seconds West a distance of 185.92 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, South 26 degrees 40 minutes 14 seconds West a distance of 106.68 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, North 64 degrees 18 minutes 51 seconds West a distance of 210.14 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, North 26 degrees 19 minutes 22 seconds East a distance of 187.62 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, North 61 degrees 51 minutes 18 seconds West a distance of 10.92 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, South 25 degrees 17 minutes 05 seconds West a distance of 188.91 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, North 63 degrees 15 minutes 44 seconds West a distance of 386.73 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, continuing North 63 degrees 15 minutes 44 seconds West a distance of 106.00 feet more or less along the common line of said Lot 1 to the low water mark on the Ohio River; thence, leaving said common line of Lot 1, North 25 degrees 49 minutes 18 seconds East along the low water mark of the Ohio River a distance of 415.62 feet; thence, North 20 degrees 05 minutes 00 seconds East along the low water mark of the Ohio River a distance of 753.00 feet; thence, North 21 degrees 45 minutes 00 seconds East along the low water mark of the Ohio River a distance of 272.74 feet to its point of intersection with the extended centerline of Yellow Creek; thence, North 85 degrees 46 minutes 28 seconds East a distance of 325.94 feet along the meanderings of Yellow Creek; thence, South 70 degrees 03 minutes 14 seconds East a distance of 114.10 feet along the meanderings of Yellow Creek; thence, South 35 degrees 24 minutes 35 seconds East a distance of 80.47 feet along the meanderings of Yellow Creek; thence, South 02 degrees 55 minutes 40 seconds West a distance of 242.83 feet along the meanderings of Yellow Creek; thence, South 24 degrees 57 minutes 05 seconds East a distance of 198.02 feet along the meanderings of Yellow creek; thence, South 53 degrees 07 minutes 13 seconds East a distance of 161.62 feet along the meanderings of Yellow Creek; thence, South 72 degrees 22 minutes 17 seconds East a distance of 389.77 feet along the meanderings of Yellow Creek; thence, South 00 degrees 28 minutes 49 seconds West a distance of 97.73 feet along the meanderings of Yellow Creek; thence, South 40 degrees 30 minutes 00 seconds East a distance of 110.00 feet; thence South 78 degrees 10 minutes 54 seconds East a distance of 269.53 feet along the meanderings of Yellow Creek; thence, South 35 degrees 17 minutes 41 seconds East a distance of 77.14 feet along the meanderings of Yellow Creek; thence, South 16 degrees 27 minutes 00 seconds East a distance of 189.27 feet along the meanderings of Yellow Creek; thence, South 30 degrees 00 minutes 00 seconds West a distance of 98.00 feet along the meanderings of Yellow Creek; thence, South 50 degrees 27 minutes 00 seconds West a distance of 187.31 feet along the meanderings of Yellow Creek; thence, South 23 degrees 39 minutes 44 seconds West a distance of 66.62 feet along the meanderings of Yellow Creek; thence, South 33 degrees 50 minutes 32 seconds East a distance of 150.39 feet along the meanderings of Yellow Creek; thence, South 22 degrees 50 minutes 35 seconds East a distance of 92.18 feet; thence, South 08 degrees 45 minutes 06 seconds East a distance of 72.08 feet along the meanderings of Yellow Creek; thence, South 66 degrees 27 minutes 37 seconds East a distance of 162.44 feet along the meanderings of Yellow Creek; thence North 67 degrees 50 minutes 28 seconds East a distance of 244.36 feet along the meanderings of Yellow Creek to a point on the northeasterly right-of-way of Kentucky DOT right-of-way line; thence, South 25 degrees 24 minutes 13 seconds West (measured) and South 28 degrees 05 minutes 44 seconds West (record) a distance of 175.63 feet (measured); thence, South 25 degrees 40 minutes 55 seconds West (measured) and South 28 degrees 22 minutes 29 seconds West (record) along said Kentucky DOT right-of-way line a distance of 72.33 feet; thence, South 25 degrees 46 minutes 26 seconds West (measured) and South 28 degrees 27 minutes 53 seconds West (record) a distance of 254.28 feet (measured) to the PLACE OF BEGINNING containing 54.33 acres more or less.

OWENSBORO, KY

**SCHEDULE B - SECTION II**
**EXCEPTIONS**

File No.: 510495

Commitment No.: 510495

3.   Subject to the rights of the United States of America, State of Kentucky, the municipality and the Public, in and to any portion of the Land lying within the bed of the Ohio River.

4.   Exception of sand and gravel lying between the low water mark and the thread (middle) of the Ohio River adjacent to the insured Land, as contained in deeds recorded in Deed Book 274, pages 200 and 203, said records.

5.   Right of way and easement for public road to Daviess County, Kentucky recorded in Deed Book 276, page 6, said records.

6.   Easement to Kentucky Utilities Company recorded in Deed Book 278, page 1, said records.

7.   Easement to Louisville, Henderson and St. Louis Railway Company for spur track right of way recorded in Deed Book 278, page 271, said records.

8.   Easements and/or control of access contained in deeds to the Commonwealth of Kentucky for the use and benefit of the Department of Highways recorded in Deed Book 281, page 640; Deed Book 340, page 191; and Deed Book 623, page 860, said records.

9.   Warranty Deeds of Flowage Easements to The United States of America recorded in Deed Book 379, pages 449 and 454, said records.

10.  Right of way to East Daviess County Water Association, Inc. recorded in Deed Book 413, page 305, said records.

11.  Conditions, stipulations, restrictions, easements or other matters shown on:
     (a) approved Minor Subdivision Plat recorded December 11, 1992 in Plat Book 21, pages 307 and 308;
     (b) approved Minor Subdivision Plat recorded June 13, 1994 in Plat Book 23, pages 170 and 171;
     (c) approved minor Subdivision Plat recorded November 28, 1994 in Plat Book 23, pages 335 and 336.

12.  Pipe Rack Line Easement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 560, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

(510495.PFD/510495/7)

OWENSBORO, KY

**SCHEDULE B - SECTION II**
**EXCEPTIONS**
(Continued)

File No.: 510495

Commitment No.: 510495

13. Fire Water Line Easement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 573, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

14. Electric Line Easement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 586, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

15. Storm Sewer Line Easement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 598, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

16. Water Line Easement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 610, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

17. Reciprocal Easement Agreement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 533, said records.

18. Right of way to Western Kentucky Gas Company recorded in Deed Book 637, page 68, said records.

19. Easement Agreement to Big Rivers Electric Corporation recorded in Deed Book 637, page 402, said records.

20. Reciprocal Easement Agreement between W.R. Grace & Co.-Conn. and Specialty Paperboard/Endura, Inc. recorded in Deed Book 638, page 277, said records, and terms and conditions and rights of others in and to appurtenant easements described therein.

21. Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 304, re-recorded in Deed Book 641, page 257, said records, and terms and conditions and rights of others in and to appurtenant easements described therein.

22. Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 323, re-recorded in Deed Book 641, page 277, said records, and terms and conditions and rights of others in and to appurtenant easements described therein.

23. Multiple Easement Agreement between W. R. Grace & Co.-Conn. and Specialty Paperboard/Endura, Inc. recorded in Deed Book 638, page 356, re-recorded in Deed Book 641, page 303, said records.

24. Multiple Easement Agreement between W. R. Grace & Co.-Conn. and Specialty Paperboard/Endura, Inc. recorded in Deed Book 638, page 383, re-recorded in Deed Book 641, page 334, said records.

25. Easement Agreement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 643, page 201, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

26. Non-Exclusive Easements to Bellsouth Telecommunications recorded in Deed Book 643, pages 336 and 344, said records.

27. Non-Exclusive Right of way Permit to Western Kentucky Gas Company recorded in Deed Book 643, page 352, said records.

continued

ALTA Commitment - 2006

(510495.PFD/510495/10)

OWENSBORO, KY

**SCHEDULE B - SECTION II**
**EXCEPTIONS**
(Continued)

File No.: 510495

Commitment No.: 510495

28. Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 224, said records, and terms and conditions and rights of others in and to appurtenant easements described therein.

29. Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 239, said records, and terms and conditions and rights of others in and to appurtenant easements described therein.

30. Multiple Easement Agreement between W. R. Grace & Co.-Conn. and Polypore Group, Inc. recorded in Deed Book 643, page 259, said records.

31. Multiple Easement Agreement between W. R. Grace & Co.-Conn. and Polypore Group, Inc. recorded in Deed Book 643, page 303, said records.

32. Certificate of Land Use Restriction recorded in Misc. Book 152, page 930, said records.

33. Declaration of Restrictions recorded in Deed Book 800, page 800, said records.

34. Rights of riparian owners in and to the free and unobstructed flow of the water of Yellow Creek.

35. State, County, and School taxes for the year 2007 and subsequent years, not yet due and payable.

NOTE:
SHOWN FOR INFORMATION ONLY:
TAX INFORMATION

Lot 5 and Lot 2 (combined): Tax parcel 72-61
2006 State, County and School taxes, amount due $1,648.20, PAID.
Assessed Value: $184,300

Lot 1: Tax parcel #72-64
2006 State, County and School taxes, amount due $11,570.87, PAID
Assessed value: $1,260,300

** 2001 taxes delinquent; face amount $2,640.33, now due in the total amount of $6,299.83

NOTE: 2002 Tangible taxes also delinquent in the total amount of $4,150.l44

**END OF SCHEDULE B - SECTION II**

ALTA Commitment - 2006

(510495.PFD/510495/10)

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Owensboro, KY

| Site Name and Location | 5513 US Highway 60 East Owensboro, KY | 5513 US Highway 60 East Owensboro, KY |
|---|---|---|
| Name of Order/Type of Permit | Declaration of Restrictions, Book 800, Page 800 | Operations and Maintenance (O&M) Plan (Chapter 3 of Corrective Action Plan Implementation Report as approved by KEPPC August 14, 2006) |
| ID Number | Not Applicable | Not Applicable |
| Expiration Date | Not Applicable | Not Applicable |
| Regulatory Information | Kentucky Environmental and Public Protection Cabinet Manager Superfund Branch 14 Reilly Road Frankfort, KY 40601 502-564-6716 | Kentucky Environmental and Public Protection Cabinet Manager Superfund Branch 14 Reilly Road Frankfort, KY 40601 502-564-6716 |
| Notice Requirements | The Owner shall provide written notice to the Cabinet at least fifteen (15) calendar days prior to sale, assignment, or lease of the Property or any portion thereof, setting forth the name, address, and telephone number of the anticipated new owner, assignee, or lessee. | The Owner shall provide written notice to the Cabinet at least fifteen (15) calendar days prior to sale, assignment, or lease of the Property or any portion thereof, setting forth the name, address, and telephone number of the anticipated new owner, assignee, or lessee. |

## EXHIBIT B-8 - Travelers Rest, SC

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
1) Groundwater Monitoring Wells
2) Miscellaneous scrap office furniture
3) Miscellaneous scrap manufacturing equipment

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts:   (Subject to discussions with ELT)      None

Access Agreements:     None

Schedule of Orders and Permits:  Attached

Tenancy:    Grace will occupy a portion of the Travelers Rest facility through 3/31/08.

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:  None

TRAVELERS REST, SC

**A.L.T.A. COMMITMENT**
**CHICAGO TITLE INSURANCE COMPANY**
3700 Forest Drive, Suite 201, Columbia, SC  29204
Issued by: Babb & Brown, 505 West Butler Road, Greenville, SC 29607
**SCHEDULE A**

Office File Number 07-1131

Commitment Number

07-1131

1.    Effective Date:  07/17/07 at 08:00 AM

2.    Policy or Policies to be issued:

           Amount

    a.  ALTA OWNER'S POLICY, Form ALTA Own. Policy (10/17/92)    $TBD
        Proposed Insured:

        W.R. Grace & Co. - Conn.

    b.  ALTA LOAN POLICY, Form (6-17-06)    $TBD
        Proposed Insured:

        TBD

3.    The estate or interest in the land described or referred to in this Commitment is fee simple.

4.    Title to the fee simple estate or interest in the land is at the Effective Date vested in:

    W.R. Grace & Co. - Conn.

5.    The Land referred to in this Commitment is described as follows:

Parcel 1 -
All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 5.46 acres, more or less, and being the identical tract of land conveyed to Universal Zonolite Insulation Company by deed of Edgar B. League dated August 3, 1946, said deed having been recorded on 08/07/1946 in the ROD Office for Greenville County in Deed Book 297 at Page 59.

Parcel 2 -
All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 1.46 acres, more or less, and being the identical tract of land conveyed to Zonolite Company by deed of Edgar B. League dated 03/18/1949, said deed having been recorded on 03/18/1949 in the ROD Office for Greenville County in Deed Book 376 at Page 1.

Parcel 3 -
All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 5.65 acres, more or less, and being the identical tract of land conveyed to Zonolite Company by deed of Edgar B. League dated 01/04/1950, said deed having been recorded on 01/28/1950 in the ROD Office for Greenville County in Deed Book 401 at Page 257.

F. 1895

**TRAVELERS REST, SC**

Parcel 4 -

All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 36.05 acres, more or less, and being the identical tract of land conveyed to Zonolite Company by deed of Edgar B. League dated 12/31/1951, said deed having been recorded on 12/31/1951 in the ROD Office for Greenville County in Deed Book 448 at Page 180.

Parcel 5 -

All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 3.70 acres, more or less, and being the identical tract of land conveyed to Zonolite Company by deed of WG Addis dated 06/19/1950, and having been recorded on 06/27/1950 in the ROD Office for Greenville County in Deed Book 412 at Page 318.

Parcel 6 -

All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 0.30 acres, more or less, and being the identical tract of land conveyed to Universal Zonolite Insulation Company by deed of FS Moody dated 08/1946 and having been recorded on 09/16/1946 in the ROD Office for Greenville County in Deed Book 299 at Page 93.

Tax Map # 0474000100200

Less however,

All that certain piece, parcel or tract of land, situate, lying and being in the State of South Carolina, County of Greenville, lying along the southerly edge of the Roe Ford Road - S.C. Highway S-88, containing 9.112 acres, according to plat of survey entitled "Survey for Furman University", prepared by C.O. Riddle Surveying Co., Inc. dated 5/26/00 and recorded in the Office of the Register of Deeds for Greenville County in Plat Book 48-M at Page 34. Reference is hereby made to said plat for a metes and bounds description thereof.

Portion of Tax Map #0474000100200

F. 1895

**TRAVELERS REST, SC**

PROPERTY DESCRIPTION
TRACT A

All that certain piece, parcel or tract of land lying and being situate in the State of South Carolina, County of Greenville, near Travelers Rest and being described more particularly below to wit:

Beginning at a nail (found) being located approximately 179' from the intersection with Roe Ford Road, said nail also being located on the southernmost right of way of White Horse Road (a.k.a. U.S. Highway 25), thence along said right—of—way N 34 17 58 E for 992.60 feet to a 1/2" rebar (set), thence N 55 41 47 W for 5.00 feet to a 1/2" rebar (set), thence N 34 18 13 E for 280.00 feet to a 1/2" rebar (set), thence S 55 41 47 E for 5.00 feet to a 1/2" rebar (set), thence N 34 18 13 E for 264.37 feet to a 1/2" rebar (set), thence leaving said right—of—way and continuing along a joint property line with Randolph R. Mathena S 09 56 41 E for 534.83 feet to a 1/2" rebar (set), thence N 81 33 19 E for 324.54 feet to a 2" open top iron pin (found), thence N 43 16 03 E for 218.80 feet to a 1/2" rebar (set), thence leaving said joint property line and continuing along a joint property line with Lyla Addis Haggard, Et Al S 52 39 07 E for 514.98 feet to a 2" open top iron pin (found), thence leaving said joint property line and continuing along a joint property line with Howard B. Addis, Et Al S 18 33 45 W for 357.98 feet to a 2" open top iron pin (found), thence S 48 29 23 E for 361.59 feet to a 3/4" crimp top iron pin (found) being located on the northernmost right—of—way of Roe Ford Road, thence along said right—of—way S 80 47 35 W for 908.81 feet to a 1/2" rebar (set), thence S 80 45 44 W for 789.10 feet to a 1/2" rebar (set), thence along a curve to the right having a length of 65.11 feet, a radius of 750.96 feet and a chord bearing and distance of S 81 57 02 W for 65.09 feet to a 1/2" rebar (set), thence leaving said right—of—way and continuing along a joint property line with Furman University N 39 54 57 W for 71.18 feet to a concrete monument (found), thence N 51 34 35 W for 270.07 feet to a nail (found) being the point of beginning.  Said tract contains 34.686 acres.

PROPERTY DESCRIPTION
TRACT B

All that certain piece, parcel or tract of land lying and being situate in the State of South Carolina, County of Greenville, near Travelers Rest and being described more particularly below to wit:

Beginning at a 5/8" rebar (found) being located approximately 1278 feet from the intersection with White Horse Road (a.k.a. U.S. Highway 25) said rebar also being located on the southernmost right—of—way of Roe Ford Road, thence along said right—of—way N 80 47 35 E for 984.94 feet to a 5/8" rebar (set), thence leaving said right—of—way and continuing along a joint property line with Furman University Foundation I S 66 22 15 E for 23.04 feet to a concrete monument (found), thence leaving said joint property line and continuing along a joint property line with Edgefield Subdivision S 43 13 58 W for 495.77 feet to a 5/8" rebar (set), thence S 36 03 35 W for 363.69 feet to a 5/8" rebar (set), thence leaving said joint property line and continuing along a joint property line with Furman University S 84 00 00 W for 436.38 feet (passing through a 2" open top iron pin (found) at 414.13 feet) to a 5/8" rebar (set), thence leaving said joint property line and continuing along a joint property line with Furman University Foundation I N 03 36 32 E for 171.24 feet to a 5/8" rebar (set), thence N 02 19 42 E for 100.27 feet to a 5/8" rebar (bent) (found), thence N 04 10 42 W for 282.14 feet to a 5/8" rebar (found) being the point of beginning. Said tract contains 9.050 acres.

**TRAVELERS REST, SC**

**A.L.T.A. COMMITMENT**
**CHICAGO TITLE INSURANCE COMPANY**
**SCHEDULE B - Section 2**

Commitment Number 07-1131

Exceptions

7. Taxes and assessments for the year 2007, and subsequent years, which are a lien but are not yet due and payable.

8. Affidavit of Name Change dated 2/21/89 recorded in the ROD Office for Greenville County in Book 1353 at Page 548.

10. General Warranty Deed from W.R. Grace & Co. - Conn. to The Furman University Foundation, Inc. dated 05/18/04 recorded in the ROD Office for Greenville County in Deed Book 2089 at Page 1065 and re-recorded 08/16/04 in the ROD Office for Greenville County in Deed Book 2093 at Page 1044.

11. Right of Way for Roads located on property as shown on plat.

12. Right of Way for G&N Railroad as shown on plat.

14. Riparian rights incident to the premises.

15. Rights of upper and lower riparian owners in and to the waters of creeks or branches crossing or adjoining the property, and the natural flow thereof, free from diminution or pollution.

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Travelers Rest, SC

| Site Name and Location | 830 SC Highway 25 Bypass<br>Travelers Rest, SC |
|---|---|
| Name of Order/Type of Permit | Land Application Permit |
| ID Number | ND0082309 |
| Expiration Date | September 30, 2012 |
| Regulatory Information | SC Department of Health and Environmental Control<br>Southeast District<br>Industrial, Agricultural, and Storm Water Permitting Division<br>Bureau of Water<br>2600 Bull Street<br>Columbia, SC 29201<br>803-898-4300 |
| Notice Requirements | Part II.L.3: Permit is not transferable except after written notice to SCDHEC/Bureau of Water/NPDES Administration. The current permittee must notify SCDHEC at least 30 days in advance of the proposed transfer date.<br><br>The notice must include a written agreement between the existing and new permittees containing a specific date for transfer of permit responsibility, coverage, and liability between them.<br><br>Permits are non-transferable except with prior consent of SCDHEC. This is considered a minor modification and does not require public notice. |

**EXHIBIT B-9 - Waterloo, NY (Brewer Road Landfill)**

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
    1)  20,000 gallon leachate storage tank
    2)  leachate collection system (pump station and associated piping)
    3)  groundwater monitoring wells

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
    1)  9/14/93 Engineering Services Agreement - O'Brien & Gere

Access Agreements:     None

Schedule of Orders and Permits:  Attached

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:
    1)  Cost recovery litigation related to W. R. Grace & Co. - Conn. v. Zotos International, Inc.

WATERLOO, NY

---

*Issued By:*
**TICOR TITLE INSURANCE COMPANY**                                Schedule A

---

REV1                                                      No: | 5507-25077 |

    Effective Date:    August 1, 2007    *REV1*

1.   Policy or Policies to be Issued:

    OWNER'S POLICY:    ALTA OWNER'S POLICY (6/17/06)       *$  (TO BE DETERMINED)*
    Proposed Insured:
    TBA


    LOAN POLICY:
    Proposed Insured:
    N/A


2.   The estate or interest in the land described or referred to herein and which is covered by this Commitment is a
    FEE SIMPLE

    and at the Effective Date of this Commitment is vested in:
                      (SEE NEXT PAGE)


3.   The land referred to in this Commitment is described as follows:

    Address:     Brewer Road
    Town:       Waterloo
    County:     Seneca
    State:      NY

    Tax Account No.: 18-1-72

    *(Legal Description Continued on Attached Page)*

WATERLOO, NY

Issued By:
TICOR TITLE INSURANCE COMPANY

Schedule A  (cont'd)

No:  5507-25077

2.  The estate or interest in the land described in this Commitment is, at the Effective Date, vested in (cont'd):

W.R. Grace & Co. - Conn

- by -

1)  Warranty Deed made by Evans Chemetics, Inc. to W.R. Grace & Co. dated December 28, 1978 and recorded in the Seneca County Clerk's Office January 8, 1979 in Liber 381 of Deeds at page 255.

2)  Note:  W.R. Grace & Co. was merged into W.R. Grace & Co. - Conn by plan of merger dated May 25, 1988 and filed in the State of Connecticut on May 25, 1988.

WATERLOO, NY

---

*Issued By:*
**TICOR TITLE INSURANCE COMPANY**                    Schedule A   (cont'd)

---

No: | 5507-25077

The land referred to in this Commitment is described as follows:

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Waterloo, County of Seneca, State of New York, being part of Lot 81 of the old Township of Junius, described as follows:

Beginning at a point in the apparent centerline of Brewer Road at the southwest corner of lands owned by Julius and Emilie Jahns and running thence South 82 degrees 51 minutes East along the fence line a distance of 631.3 feet to an iron pipe; thence North 6 degrees 33 minutes East a distance of 272.2 feet to an iron pipe; thence North 83 degrees 31 minutes 15 seconds West a distance of 759.2 feet to a point in the apparent centerline of Brewer Road; thence South 21 degrees 53 minutes 30 seconds West along the apparent centerline of Brewer Road a distance of 272.2 feet to the point of beginning and containing 4.888 acres of land.

WATERLOO, NY

Issued By:
TICOR TITLE INSURANCE COMPANY                                    Schedule B, Section 2

No:    5507-25077

## EXCEPTIONS

H   1.   Any facts that would be disclosed by an accurate survey or inspection of the land.

I   2.   The exact acreage of the premises is not insured.

J   3.   Subject to Declaration of Covenants and Restrictions recorded November 3, 1988 in Liber 447 of Deeds at page 48.

K   4.   The Easement granted to Empire Gas & Electric Company and recorded in Liber 162 of Deeds at page 161 on September 17, 1930.

L   5.   The Easement granted to New York State Electric & Gas Corporation and recorded in Liber 508 of Deeds at page 259 on September 10, 1993.

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

| Waterloo, NY - Brewer Road Landfill | | |
|---|---|---|
| Site Name and Location | Brewer Road<br>Waterloo, NY | Brewer Road<br>Waterloo, NY |
| Name of Order/Type of Permit | New York State Order on Consent | City of Auburn Wastewater Discharge Permit |
| ID Number | #B8-0033-8407 | 2006-07 |
| Expiration Date | Not Applicable | June 5, 2009 |
| Regulatory Information | New York State Department of Environmental Conservation<br>Region 8<br>Charlotte Theobald<br>6274 East Avon-Lima Road<br>Avon, NY 14414<br>585-226-5354 | Department of Municipal Utilities<br>Bruce Ross<br>Memorial City Hall<br>24 South Street<br>Auburn, NY 13021-3832<br>315-255-4180 |
| Notice Requirements | XXXII. If Respondent proposes to convey the whole or any part of its ownership in the Site, Respondent shall, not less than 30 days prior to consummation of such proposed conveyance, notify the Department in writing of the identity of the transferee and of the nature and date of the proposed conveyance.<br><br>In advance of such proposed conveyance, Respondent shall notify the transferee in writing, with a copy to the Department, of the applicability of this Order. | 10. Limitation on Permit Transfer - Wastewater discharge permits are issued to a specific User for a specific operation and are not assignable to another User or transferable to any other location without the prior written approval of the City.<br><br>Sale by a User shall obligate the purchaser to seek prior written approval of the City for continued discharge to the POTW. |

## EXHIBIT B-10 - Woburn, MA

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
1) Groundwater recovery and monitoring wells and small building which houses the groundwater pump-and-treat system

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
1) 5/31/05 Master Services Agreement - GeoTrans, Inc.
2) 7/14/06 Master Services Agreement - Groundwater and Environmental Services, Inc.

Access Agreements:  None

Schedule of Orders and Permits:   Attached

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:
1) Lawsuit captioned W. R. Grace & Co. - Conn. v. Cummings Properties, LLC, Civil Action No. MISC 317002, regarding Cummings claim that it has acquired portion of Grace-owned property by adverse possession. Lawsuit dismissed without prejudice in October 2007. Tolling Agreement signed 10/17/07 provides that either Grace or Cummings may re-institute lawsuit in future.

WOBURN, MA

Issued By:
CHICAGO TITLE INSURANCE COMPANY | Schedule A

COMMITMENT FOR TITLE INSURANCE    No: [ 2751-25235 ]

Effective Date:    July 23, 2007

1.  Policy or Policies to be issued:

OWNER'S POLICY:    ALTA OWNER'S (10-17-92)    $ (TO BE DETERMINED)
Proposed Insured:

LOAN POLICY:
Proposed Insured:
N/A

2.  'The estate or interest in the land described or referred to herein and which is covered by this Commitment is a
FEE SIMPLE

and at the Effective Date of this Commitment is vested in:
W.R. Grace & Co.- Conn., a Connecticut Corporation

3.  The land referred to in this Commitment is known as:
Address:        369 Washington Street
City/Town:      Woburn
County:         Middlesex
State:          MA
Lot No.:        ~
Subdivision:    ~

*(Legal Description Continued on Attached Page)*

Page A - 1

**WOBURN, MA**

Issued By:

**CHICAGO TITLE INSURANCE COMPANY**                          Schedule A   (cont'd)

**COMMITMENT FOR TITLE INSURANCE**                    No:   | 2751-25235 |
ALTA Standard Form (1966)

The land referred to in this Commitment is described as follows:

A certain parcel of land with the buildings and partially completed buildings thereon situated in Woburn, in said County of Middlesex, being shown on plan entitled "Plan of Land, Woburn, Mass." dated May 11, 1957, by Harry R. Feldman, Inc., engineers, recorded withtheh Middlesex South District Registry of Deeds, Book 8957, Page 65, and being further bounded and describing as shown on said planas follows:

WESTERLY                  by said Washington Street, by three bounds totaling five hun dred sixty-eight and 36/100 (568.36) feet;

NORTHERLY                 by land now or formerly of Carlson, one thousand forty-six and 75/100 (1046.74) feet;

NORTHEASTERLY             by land of owners unknown, two hundred thirty-two (232) feet;

SOUTHEASTERLY             by land of owners unknown, two hundred eighty-six and 97/100 (286.97) feet;

NORTHEASTERLY             by land of owners unknown, one hundred two (102) feet, said line being through the center line of a brook; and

SOUTHERLY                 by land now or formerly of Anderson, by two bounds totaling nine hundred and eighty-three and 10/100 (983.10) feet.

EXCEPTING from the foregoing, the following parcel as conveyed to William S. Cummings by Deed recorded with said Registry of Deeds in Book 12113, Page 232:

Traingular parcel of land in Woburn, Middlesex County, Massachusetts, bounded and described as follows:

EASTERLY                  by land of William S. Cummings and Joyce M. Cummings one hundred two (102.00) feet, N 23° 35' 33" W;

SOUTHWESTERLY             one hundred twenty-eight and 32/100 (128.32) feet, S 87° 37' 58" E;

SOUTHWESTERLY             eight and 24/100 (8.24) feet S 87° 59' 29" E; and

NORTHWESTERLY             one hundred twenty-nine and 88/100 (129.88) feet, by land of W. R. Grace & Co.

the foregoing parcel is a portion of land of Grantor in Woburn, Middlesex south, Massachusetts shown on an

ACA3 8/86          SMS                                    SAS   08/10/07    10:09:09

WOBURN, MA

Issued By:

CHICAGO TITLE INSURANCE COMPANY                    Schedule A   (cont'd)

COMMITMENT FOR TITLE INSURANCE
ALTA Standard Form (1966)                    No:    2751-25235

The land referred to in this Commitment is described as follows:

unrecorded plan of land on Washington St. in Woburn, Mass., dated August 24, 1971, surveyed for William S. Cummings, Dana F. Perkins & Sons, Inc., Civil Engineers and Surveyors, Reading, Mass. and marked on said plan "parcel to be acquired from W. R. Grace & Co."

NOTE: As hereinafter used "recorded" shall mean "recorded with the Middlesex South District Registry of Deeds."

ACA3 6/86              SNS                           SAS    08/10/07    10:09:09

WOBURN, MA

Issued By:

**CHICAGO TITLE INSURANCE COMPANY**                    Schedule B, Section 2

COMMITMENT FOR TITLE INSURANCE                    No:    2751-25235

## EXCEPTIONS

9. Taking of the Massachusetts Dpeartment of Public Works dated December 126, 1986 and recorded in Bopok 17762, Page 391.

10. Taking by the Massachusetts Department of Public Works dated December 16, 1986 and recorded in Book 17762, Page 401.

11. Taking by the Massachusetts Department of Public Works dated May 24, 2989 and recorded in Book 19879, Page 356.

12. Terms and provisions of a Joint Easement Agreement between Anderson Estates, Inc. and W.R. Grace company and New England Telephone and Telegraph Company, dated June 4, 1992 and recorded in Book 22105, Page 493.

13. Rights of others in and to the uninterrupted flow of the brook as referred to in the description sheet annexed.

NOTE: While specifically excluded from coverage hereunder, the records at the Middlesex South District Registry of Deeds reveal the following matters:

a. Order of Conditions under Massachsuetts Wetlands Protection Act issued to Cannonie Environmental Services, Corp., (DEP File No. 348-261) and recorded in Book 21966, Page 509, as affected by a Certifiate of Compliance recorded in Book 29411, Page 190.

b. Order of Conditions under Massachusetts Department of Environmental Protection , (DEP File No. 348-590) and recorded in Book 46339, Page 82.

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

**Woburn, MA**

| Site Name and Location | 369 Washington Street Woburn, MA | 369 Washington Street Woburn, MA |
|---|---|---|
| Name of Order/Type of Permit | Consent Decree | Consent Decree |
| ID Number | 91-11807MA | I-90-1035 |
| Expiration Date | Not Applicable | Not Applicable. Order applied to pilot test work already completed. However, Grace is required to provide a copy of the order to any subsequent owners or successors before ownership rights are transferred. |
| Regulatory Information | USEPA Region 1<br>Joseph Lemay<br>Remedial Project Manager<br>10 Congress Street<br>Mail Code HBO<br>Boston, MA 02203-0001<br>617-918-1323<br><br>Massachusetts Department of Environmental Protection**<br>Jennifer McWeeney<br>Project Manager<br>One Winter Street, 7th Floor<br>Boston, MA 02108<br>617-292-5530<br><br>**Note: Site is considered adequately regulated under MCP; however, any correspondence with USEPA regarding the Consent Decree should be copied to MassDEP. | USEPA Region 1<br>Joseph Lemay<br>Remedial Project Manager<br>10 Congress Street<br>Mail Code HBO<br>Boston, MA 02203-0001<br>617-918-1323<br><br>Massachusetts Department of Environmental Protection**<br>Jennifer McWeeney<br>Project Manager<br>One Winter Street, 7th Floor<br>Boston, MA 02108<br>617-292-5530<br><br>**Note: Site is considered adequately regulated under MCP; however, any correspondence with USEPA regarding the Consent Decree should be copied to MassDEP. |
| Notice Requirements | V. General Provisions 6c: Any Settling Defendant that owns an interest in property included in the Site and any Successor-in-Title shall within thirty (30) days prior to conveyance of such interest, give written notice of this Consent Decree to the grantee and written notice of the proposed conveyance, including name and address of the grantee, and the date on which notice of the Consent Decree was given to the grantee. In the event of any such conveyance, the Settling Defendant's obligations under this Consent Decree shall continue to be met by the Settling Defendant and, subject to approval by the United States, in consultation with the Commonwealth, by the grantee. | V. General Provisions 6c: Any Settling Defendant that owns an interest in property included in the Site and any Successor-in-Title shall within thirty (30) days prior to conveyance of such interest, give written notice of this Consent Decree to the grantee and written notice of the proposed conveyance, including name and address of the grantee, and the date on which notice of the Consent Decree was given to the grantee. In the event of any such conveyance, the Settling Defendant's obligations under this Consent Decree shall continue to be met by the Settling Defendant and, subject to approval by the United States, in consultation with the Commonwealth, by the grantee. |

**EXHIBIT C**

LIABILITY TRANSFER QUALIFIED SETTLEMENT FUND TRUST AGREEMENT

**Exhibit C**

## LIABILITY TRANSFER QUALIFIED SETTLEMENT FUND TRUST AGREEMENT

**THIS TRUST AGREEMENT** is made and entered into as of _____, 2008, by and between W. R. Grace & Co. - Conn. ("Grace"), Environmental Liability Transfer, Inc. ("ELT") and de maximis, inc. ("Trustee"). Grace, ELT and the Trustee are hereinafter collectively referred to as the "Parties."

### RECITALS

WHEREAS, Grace, and certain of its subsidiaries, and ELT and certain of its Affiliates, have entered into a Liability Transfer Agreement (the "LTA") dated February ___, 2008; and

WHEREAS, pursuant to the terms of the LTA, ELT has agreed to establish the LTA Qualified Settlement Fund Trust (the "Trust"); and

WHEREAS, ELT has agreed to fund the Trust; and

WHEREAS, the Parties to this Trust Agreement acknowledge and agree that the funds in the Trust and all earnings thereon (the "Trust Funds") are to be held, administered, and distributed solely in accordance with the provisions of this Trust Agreement; and

WHEREAS, the Trust is intended to qualify as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder; and

WHEREAS, on April 2, 2001, Grace filed for Chapter 11 Bankruptcy relief with the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, this Trust shall not be effective until the Bankruptcy Court has entered an order approving and authorizing Grace and ELT to enter into the LTA and this Trust Agreement, which order has become final and unappealable.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency which is hereby acknowledged by the Parties, it is agreed as follows:

1.    DEFINITIONS.

"Affiliate" means, with respect to any specified person or other entity, a person or other entity that directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, the person or other entity specified.

"Control" of a specified entity means the direct or indirect possession of the power to direct or cause the direction of the management and policies of such person or other entity.

"Premium" means the sum paid to an insurance company for a pollution legal liability insurance policy (if desired by ELT) providing coverage related to ELT's indemnity obligations as provided in Section 5.3 of the LTA.

"Properties" means the real property identified on Attachment A hereto.

"Qualifying Expenditures" means Premium and Clean-up Costs.

"Required Documentation" means a certificate signed by ELT's project manager for the remediation of Property, certifying that the Qualifying Expenditures have been incurred, together with copies of any relevant contracts, invoices or other materials evidencing the nature and description of the Qualifying Expenditure.

All capitalized terms used but not defined in this Trust Agreement shall have the same respective meanings as set forth in the LTA.

2.    NAME AND PURPOSE OF THE TRUST.

This Trust shall be known as the LTA Qualified Settlement Fund Trust (the "Trust"). The purpose of the Trust is to provide funds which may be used solely to pay or reimburse ELT or its designated payee for Qualified Expenditures or to reimburse Premiums. To fulfill these purposes, the Trustee shall thoroughly familiarize itself with the nature of the claims asserted against Grace by the United States Environmental Protection Agency and/or state regulatory agencies (the "Environmental Authorities") relating to the alleged releases or threatened releases of hazardous substances at or from the Properties, the nature and scope of the alleged releases or threatened releases, the location and description of the Properties and any actual or proposed investigation and remedial activity undertaken, or to be undertaken, by ELT and its Affiliates to remediate the actual releases or threatened releases, to ensure that any cost or expense submitted by ELT to the Trustee for payment is a Qualified Expenditure. Each of Grace and ELT shall, upon request of the Trustee, provide the Trustee with any and all information or materials that the Trustee may reasonably request to familiarize itself with its obligations under this Trust Agreement.

The purpose of the Trust is limited to the matters set forth herein, and this Trust Agreement shall not be construed to confer upon the Trustee any authority not expressly set forth herein.

The Trust Funds shall not be the property of ELT. The establishment of the Trust and the transfer of funds into the Trust is intended to place such funds beyond ELT's possession and control, subject to the satisfaction of the terms and conditions of this Trust Agreement.

Upon funding of the Trust, ELT shall have a contingent reversionary right (the "Contingent Right") in the Trust giving ELT the right to return of a portion or all of the Trust Funds only in accordance with the terms and conditions of this Trust Agreement.

It is intended that this Trust be a qualified settlement fund under Internal Revenue Code Section 468B and the regulations promulgated thereunder and taxable as a so-called complex trust to which Internal Revenue Code Sections 661, 662 and 663 apply and not as a partnership, corporation or grantor trust, that is, a trust whose property is deemed to be owned by one or more grantors or other persons pursuant to one or more of Internal Revenue Code Sections 671 through 678. ELT and/or the Trustee, as designated herein, shall file all income tax returns and required statements, make any elections with respect to and for the Trust on the assumption that it is a qualified settlement fund pursuant to Internal Revenue Code Section 468B, and comply in all other respects with the requirements of Internal Revenue Code Section 468B and the regulations promulgated thereunder, unless and until it is determined or Trustee otherwise has reason to believe the Trust is other than a qualified settlement fund. In the event this Trust is determined, or is, in the sole judgment of Trustee, at risk of being determined to be other than a trust which is taxable as such a complex trust and it is prudent to reorganize the Trust so that it shall be such a complex trust, then Trustee is authorized to execute such amendment to this Trust, restatements of this Trust, a new trust declaration, instruments of assignment, plans of reorganization and other documents as are appropriate to enable the Trust or a successor to the assets of the Trust to be a trust which is taxable as such a complex trust; provided always, that in no event shall any such reorganization change the purposes hereof, divert the assets of this Trust to purposes other than the original purposes set forth herein or enlarge the powers or responsibilities of Trustee. Payment of all taxes relating to the Trust Funds, if any, shall be made with the assets of the Trust.

3.      CONTRIBUTION TO THE TRUST.

        (a)    The Trust shall be solely funded by ELT. All funds paid into the Trust shall be held and distributed from the Trust as provided in this Trust Agreement. Other than earnings on funds in the Trust, no Party shall deposit any other funds into the Trust, or cause any other funds to be deposited into the Trust. The Trust Funds shall not be commingled with any other funds. The Trust shall be funded as follows:

        (i)    Initial Payment into Trust. Within one hundred and eighty (180) days of the Effective Date of the LTA, ELT shall transfer into the Trust the sum of Two Million Five Hundred Thousand Dollars ($2,500,000).

        (ii)   Deposit of Sale Proceeds.  Upon sale of any Property, that portion of sale proceeds as determined pursuant to Paragraph 3 of the LTA shall be deposited into the Trust. Deposits to the Trust shall cease when the sum of Trust deposits totals Eleven Million Dollars ($11 Million).

4.    SECURITY INTEREST.

ELT and the Trustee hereby grant to Grace a continuing security interest in and lien upon the Trust, and all the Trust Funds, for the purpose of securing ELT's and its Affiliates' indemnity obligations as provided at Section 5.1 of the LTA.    The LTA describes the events of default and remedies available to Grace in the event of a default by ELT or its Affiliates of such obligations, and such provisions are incorporated herein by reference. The Parties shall cooperate to make all filings and take all other actions that Grace may reasonably request in order to confirm, verify and perfect the security interest granted hereunder.  In the event that prior to the termination of this trust, Grace becomes a debtor in a Chapter 7 bankruptcy case, then any remaining funds in the Trust shall remain in the Trust subject to distributions under Paragraph 5 and Termination under paragraph 6(i) or 6(ii), and Trustee shall have the authority to and will release the lien.

5.    PAYMENT FROM THE TRUST.

During the term of this Trust, the Trustee shall make distributions from the Trust Funds only in one of the following ways:

(a)    ELT may from time to time submit to the Trustee a request for funds from the Trust for payment or reimbursement of Qualifying Expenditures.  The Trustee shall make distributions to ELT, or ELT's designated payee, with respect to Qualifying Expenditures only as follows:

   (i)    Prior to making any such distribution, ELT shall have presented Required Documentation to the Trustee to substantiate that Qualifying Expenditures have been paid or incurred by ELT.

   (ii)    Upon receipt of the Required Documentation, the Trustee shall, within five (5) business days, review the documentation to verify that Qualifying Expenditures were paid or incurred by ELT.  The Trustee may request further information from ELT regarding the claimed expenditure in order to verify such expenditure as is reasonable.  Distributions to ELT or its designated payee shall be made with ten (10) days of receipt of verified Required Documents.

   (iii)    Receipt and approval of the Required Documentation shall constitute conclusive proof that Qualified Expenditures have been paid or incurred by ELT.

(b)    If the Trustee receives from Grace and ELT their joint written instruction as to the distribution of the Trust Funds, or a portion thereof, the Trustee shall distribute from the Trust Funds the amount or amounts specified in such joint written instruction as specified therein.

(c)     If ELT establishes to the reasonable satisfaction of the Trustee that the Trust contains funds disproportionate to the amounts needed to complete the Clean Up, then the Trustee shall distribute to ELT from the Trust Funds the difference between the Trust Fund balance and an amount equal to 150% of the estimated cost to complete the Clean Up.

(d)     If the Trustee receives from ELT certified copies of notifications of completion of remediation issued by the appropriate Environmental Authorities indicating that ELT has fulfilled all of Grace's legal, statutory and regulatory obligations in respect of each of the Properties, excluding Guanica PR, the Trustee shall promptly liquidate any assets of the Trust and distribute to ELT any Trust Funds remaining to ELT, and Grace, ELT and the Trustee shall cooperate to close the Trust and terminate the Trust Agreement.

6.      TERMINATION OF THE TRUST.

The Trust shall remain in existence until the first to occur of the following:  (i) the Trust Funds are exhausted; (ii) the Trustee has received from ELT certified copies of notifications of completion of remediation issued by the appropriate Environmental Authorities indicating that ELT has fulfilled all of Grace's legal, statutory and regulatory obligations in respect of each of the Properties, excluding Guanica PR; or (iii) Grace and ELT give joint instructions to the Trustee that it be terminated.  On such occurrence, the Trustee shall promptly liquidate any assets of the Trust, and distribute to ELT any funds remaining in the Trust, and the Parties shall cooperate to close the Trust and terminate this Trust Agreement.

7.      ALTERATIONS, AMENDMENTS, AND RENOVATION.

This Trust Agreement may be altered, amended, or revoked from time to time by an instrument in writing executed by all of the Parties and approved by the Bankruptcy Court.

8.      TRUST FUNDS MANAGEMENT.

The Trustee shall deposit the principal and income of the Trust and keep the Trust Funds invested in one or more of the following money market or other short-term investment funds:    (i) AAA-rated funds whose underlying securities consist solely of direct US Treasury obligations; (ii) AAA-rated funds having both direct US Treasury obligations and repurchase agreements whose underlying securities consist of US Treasury obligations; (iii) AAA-rated funds consisting of direct US Treasury obligations, repurchase agreements secured by US Treasury obligations; and direct and indirect US Government Agency obligations and (iv) AAA-rated fund consisting of direct and indirect US Government Agency obligations.  Such investments shall be made in accordance with reasonable guidelines and directions provided to the Trustee by Grace and ELT.  All investments shall be made so as to at all times provide sufficient liquidity to meet the anticipated cash needs of the Trust.  In investing, reinvesting, exchanging and selling

the assets of the Trust Funds, the Trustee shall discharge its duty with respect to the Trust Funds in the primary interest of the accomplishment of the purposes and objectives of this Trust Agreement. The Trustee, upon the request of ELT and Grace, and at their sole expense, may engage the services of an investment advisor or manager. The Trustee shall not be personally liable for any action or inaction taken in good faith reliance on the advice of such advisor or manager, nor for delegation in good faith of investment decision-making authority to such advisor or manager. The Trustee shall keep or arrange to be kept an accounting of all contributions to and disbursements from the Trust Funds. The Trustee is not responsible for any loss of income or principal with respect to any investments made in accordance with this Trust Agreement except for its negligence or willful misconduct.

9.    EXPRESS POWERS OF TRUSTEE.

Without limiting the powers and discretion conferred upon the Trustee by any other provisions of this Trust Agreement or by law, the Trustee is expressly authorized and empowered as follows, subject to the limitations provided for herein:

(a)    Payment of Expenses of Administration.  To incur and pay any and all fees and expenses upon or connected with the administration of the Trust.  No such payments shall be made using assets of the Trust.  ELT shall reimburse the Trustee for all such fees and expenses.  Notwithstanding the foregoing, payment of all taxes relating to the Trust shall be made with assets of the Trust.

(b)    Preservation of Principal.  Notwithstanding any other provision in this Trust Agreement, at all times during the term of this Trust Agreement, to hold, invest and reinvest the assets of the Trust Funds, in accordance with Section 8 hereof, in a manner designed to preserve the accrued income and principal of the Trust Funds for the purposes of the Trust.

(c)    Execution of Documents or Transfer.  At the direction of ELT, and, as required by this Trust Agreement, Grace, to make, execute, acknowledge and deliver any and all documents of transfer and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

(d)    Litigation.  To institute and defend litigation on behalf of and in the name of the Trust if requested to do so by Grace and ELT and upon mutual agreement regarding reimbursement of the expenses thereof with Grace and ELT.

(e)    Authority of Trustee.  To do any and all other acts which Grace and ELT shall deem proper to effectuate the purpose of this Trust Agreement and to exercise the powers specifically conferred upon them by this Trust Agreement.

(f)    Discretion in Exercise of Powers.  To do any and all other acts which it shall deem proper to effectuate the purpose hereof and to exercise the powers specifically conferred upon it by this Trust Agreement.

10.    ADVICE OF COUNSEL.

The Trustee may from time to time consult with its own counsel with respect to any question arising as to this Trust Agreement. The Trustee shall be fully protected, to the extent permitted by law, except for its gross negligence or willful misconduct resulting in non-compliance with laws, regulations and/or this Trust Agreement, in acting in reliance upon the advice of counsel and shall be reimbursed for its reasonable legal fees.

11.    TRUSTEE COMPENSATION.

Trustee shall be entitled to reasonable compensation for its services as a Trustee under this Trust Agreement, including reimbursement for expenses reasonably incurred by it in the performance of its duties as Trustee.  Fees of the Trustee shall be in accordance with a schedule of such fees attached as Attachment B.  No payments of such fees shall be made using assets of the Trust.  ELT shall have full responsibility for payment of such fees.

12.    RESIGNATIONS AND APPOINTMENT OF TRUSTEE.

(a)    The Trustee may resign at any time by delivering its resignation, in writing, to Grace and ELT, such resignation to take effect ten days after receipt by those parties.

(b)    Grace and ELT may remove the Trustee at any time, by delivering joint notice of such removal in writing to Trustee, such removal to take effect ten days thereafter.

(c)    In the event of the bankruptcy, insolvency, death, disability, resignation or removal, as provided above, of the then Trustee, a successor Trustee: (1) shall become Trustee, (2) shall have all of the rights, powers, duties, authority, and privileges as if initially named as a Trustee hereunder; and (3) shall thereupon be vested with title to the Trust without the necessity of any conveyance or instrument.

(d)    Any new successor Trustee shall be designated by Grace and ELT.

(e)    Acceptance of appointment as a new successor Trustee shall be in writing and shall be effective upon delivery to Grace and ELT.

13.    INSTRUCTIONS TO THE TRUSTEE.

Notwithstanding any provision herein to the contrary, the Trustee is hereby directed to do the following in addition to other duties set forth in other provisions in this Trust Agreement:

(a)    Quarterly Reports.  Have prepared quarterly financial reports describing the manner in which all of the assets of the Trust Funds are then invested and the current market value of such assets, as well as the obligations, income, and expenses related to the Trust Funds.  Copies of such reports shall be transmitted in writing to

Grace and ELT.

(b)     Annual Statements.     Have prepared annual financial statements describing the manner in which all of the assets of the Trust Funds are then invested and the current market value of such assets, as well as the obligations, income, and expenses related to the Trust Funds and annual IRS and similar state forms for the Trust Funds. All financial statements shall be prepared on an annual accrual basis, and shall be in accordance with Generally Accepted Accounting Principles, applied on a consistent basis. Copies of such statements shall be transmitted in writing to Grace and ELT.

(c)     Counsel. Advise, consult and confer with and otherwise inform Grace and ELT with respect to matters arising out of this Trust Agreement, administration of the Trust Funds, or any other matter which the Trustee, in its discretion, deems appropriate to bring to the attention of Grace and ELT or about which Grace or ELT inquire.

(d)     Records. Maintain records of all actions taken by the Trustee with respect to matters arising out of this Trust Agreement or administration of the Trust. Copies of said records shall be provided to Grace and ELT upon request and upon termination of this Trust said records shall be transmitted, together with all other records of the Trustee, to ELT.

14.     INDEMNIFICATION.

(a)     Indemnity. The Trustee acts as Trustee only and not personally. For any contract, obligation of liability made or incurred by the Trustee in good faith, all persons shall look solely to the Trust and not the Trustee personally. The Trustee shall not incur any liability personal or corporate, of any nature in connection with any act or omission, made in good faith, of the Trustee or Grace or ELT in the administration of the Trust or otherwise pursuant to this Trust Agreement. The Trustee shall be indemnified and held harmless by the Trust and jointly and severally by Grace and ELT. This indemnification and hold harmless provision shall cover all expenses reasonably incurred by the Trustee in defense of the aforementioned acts or omissions of the Trustee or Grace or ELT. Except for the payment of all expenses reasonably incurred, this indemnification shall not apply to any liability arising from a criminal proceeding where the Trustee had reasonable cause to believe that the conduct in question was unlawful.

(b)     Survival. This section shall survive the termination of the Trust.

15.     INTERESTS NOT ASSIGNABLE OR SUBJECT TO CLAIMS OR CREDITORS.

Any interest of Grace in the Trust shall not be subject to anticipation or assignment or subject to the claims of any creditor of Grace, and any interest reserved to Grace or ELT shall be made available to Grace and ELT only upon termination of this Trust pursuant to Section 6 herein.

16.    <u>CHOICE OF LAW</u>.

This Trust Agreement shall be administered, construed, and enforced according to the laws of the State of Delaware.

17.    <u>INTERPRETATION</u>.

As used in this Trust Agreement, words in the singular include the plural and words in the plural include the singular. The descriptive heading for each Section and Subsection of this Trust Agreement shall not affect the interpretation or the legal efficacy of this Trust Agreement.

18.    <u>SEPARATE DOCUMENTS</u>.

This Trust Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

19.    <u>NOTICE</u>.

In the event any party hereto shall desire or is required to give notice to any other party hereto, then such notice shall be in writing addressed to the party who is to receive such notice, and sent to the following addresses:

| <u>W. R. Grace & Co. - Conn.</u> | <u>de maximis, inc.</u> |
|---|---|
| Corporate Secretary | Trust Administrator |
| W. R. Grace & Co. | de maximis, inc. |
| 7500 Grace Drive | 450 Montbrook Lane |
| Columbia, Maryland  21044 | Knoxville, TN  37919 |
| Tel:  410.531.4000 | Tel: (865) 691-5052 |
| Fax:  410.531.4367 | Fax: (865) 691-6485 |

Environmental Liability Transfer, Inc.
1650 Des Peres Road, Suite 306
Saint Louis, MO  63131
Tel: (314) 775-0500
Fax: (314) 775-0503

20.    PERFORMANCE BY REMEDIUM GROUP, INC.

Any rights or obligations of Grace hereunder may be exercised, performed or fulfilled by Remedium Group, Inc., a subsidiary of Grace and one of the parties to the LTA.

21.    CONTINUING JURISDICTION OF BANKRUPTCY COURT.

Any other provision of this Trust Agreement to the contrary notwithstanding, this Trust Agreement shall be subject to the continuing jurisdiction of the Bankruptcy Court, or upon withdrawal of the court's reference, the U.S. District Court of the District of Delaware.

IN WITNESS WHEREOF, this Trust Agreement has been read and signed in duplicate originals by the duly authorized representatives of the Parties as of the date first set forth above.

W. R. GRACE & CO. - CONN.                de maximis, inc., Trustee

By: _____        By: _____
     Name:                                      Name:
     Title:                                        Title:

ENVIRONMENTAL LIABILITY
TRANSFER, INC.

By: _____
     Name:
     Title:

Attachment A
Property Descriptions

Atlanta, GA
Charleston, SC
Fort Pierce, FL
Guanica, PR
Joplin, MO
Memphis, TN
Owensboro, KY
Travelers Rest, SC
Waterloo, NY
Woburn, MA

**ATLANTA, GA**

## LEGAL DESCRIPTION

TRACT 1

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 86 AND 87 OF THE 14TH FF DISTRICT, FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF THE ATLANTIC COAST LINE RAILROAD ('100' RIGHT-OF-WAY) AND THE NORTHWESTERLY RIGHT-OF-WAY OF PHILLIP LEE DRIVE ('100' RIGHT-OF-WAY); THENCE ALONG THE SAID SOUTHEASTERLY RIGHT-OF-WAY LINE OF THE ATLANTIC COAST LINE RAILROAD 90.49 FEET LONG A CURVE TO THE RIGHT HAVING A RADIUS OF 669.25 FEET AND A CHORD BEARING NORTH 42 DEGREES 43 MINUTES 29 SECONDS EAST, 90.42 FEET;
THENCE CONTINUING NORTH 46 DEGREES 35 MINUTES 54 SECONDS EAST, 623.26 FEET TO THE SOUTHWESTERLY RIGHT-OF-WAY LINE OF THE ATLANTIC COAST LINE RAILROAD;
THENCE 788.00 FEET ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 763.80 FEET AND A CHORD BEARING SOUTH 10 DEGREES 46 MINUTES 46 SECONDS EAST, 753.52 FEET;
THENCE CONTINUING SOUTH 40 DEGREES 20 MINUTES 06 SECONDS EAST, 246.80 FEET TO A #4 REBAR, FOUND;
THENCE DEPARTING THE SAID SOUTHWESTERLY RIGHT-OF-WAY SOUTH 52 DEGREES 55 MINUTES 28 SECONDS WEST, 388.56 FEET TO A ½" IRON PIPE, FOUND;
THENCE ALONG THE NORTHEASTERLY RIGHT-OF-WAY OF PHILLIP LEE ROAD NORTH 37 DEGREES 05 MINUTES 00 SECONDS WEST, 837.25 FEET TO THE POINT OF BEGINNING.
CONTAINING 8.75 ACRES OF LAND, MORE OR LESS.

TRACT 2

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 86 OF THE 14TH FF DISTRICT, FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING FROM THE INTERSECTION OF THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF THE ATLANTIC COAST LINE RAILROAD ('100' RIGHT-OF-WAY) AND THE NORTHWESTERLY RIGHT-OF-WAY LINE OF PHILLIP LEE DRIVE ('100' RIGHT-OF-WAY); THENCE ALONG THE SAID SOUTHEASTERLY RIGHT-OF-WAY LINE OF THE ATLANTIC COAST LINE RAILROAD 90.49 FEET LONG A CURVE TO THE RIGHT HAVING A RADIUS OF 669.25 FEET AND A CHORD BEARING NORTH 42 DEGREES 43 MINUTES 29 SECONDS EAST, 90.42 FEET;
THENCE DEPARTING SAID SOUTHEASTERLY RIGHT-OF-WAY NORTH 43 DEGREES 24 MINUTES 06 SECONDS WEST, 100.00 FEET TO THE NORTHWESTERLY ATLANTIC COAST LINE RAILROAD RIGHT-OF-WAY, ALSO BEING THE POINT OF BEGINNING;

FROM SAID POINT OF BEGINNING, THENCE 4.71 FEET ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 769.25 FEET AND A CHORD BEARING SOUTH 46 DEGREES 25 MINUTES 23 SECONDS WEST, 4.71 FEET TO THE POINT OF BEGINNING;
THENCE DEPARTING THE SAID NORTHWESTERLY RIGHT-OF-WAY LINE OF THE ATLANTIC COAST LINE RAILROAD NORTH 36 DEGREES 51 MINUTES 17 W, 522.01 FEET TO THE TOP OF BANK OF THE CHATTAHOOCHEE RIVER;
THENCE CONTINUING ALONG THE TOP OF BANK OF THE CHATTAHOOCHEE RIVER 336.21 FEET HAVING A CHORD NORTH 49 DEGREES 52 MINUTES 37 SECONDS EAST, 333.40 FEET;
THENCE SOUTH 38 DEGREES 51 MINUTES 17 SECONDS EAST, 502.80 FEET TO A #4 REBAR, FOUND IN THE SAID NORTHWESTERLY RIGHT-OF-WAY LINE OF THE ATLANTIC COAST LINE RAILROAD;
THENCE ALONG THE SAID NORTHWESTERLY RIGHT-OF-WAY LINE OF THE ATLANTIC COAST LINE RAILROAD SOUTH 46 DEGREES 35 MINUTES 54 SECONDS WEST, 330.34 FEET TO THE POINT OF BEGINNING.
CONTAINING 3.92 ACRES OF LAND, MORE OR LESS.