**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **W.R. Grace & Co., <u>et al</u>.** | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |

**TWENTY-SEVENTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
<u>FROM OCTOBER 1, 2007 THROUGH DECEMBER 31, 2007</u>**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **October 1, 2007 – December 31, 2007** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$654,871.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$112,822.90** |
| Fees and Expenses of the Asbestos Issues Expert: | **$535,348.99** (for the period September 1, 2007 – December 31, 2007) |

This is an: ☒ interim ☐ final application

This is the twenty-sixth quarterly application filed.

## Attachment A

**Monthly Interim Fee Applications**

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01- 4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01- 7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02- 04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002 D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock) $43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002 D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock) $114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002 D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock) $11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002 D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock) $5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002 D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock) $771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002 D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock) $1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003 D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003 D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003 D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003 D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock) $1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003 D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003 D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock) $2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003 D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock) $3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003 D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock) $61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003 D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock) $14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003<br>D.I. 4512 | 8/1/03 –<br>8/31/03 | $69,927.00 | $1,164.19 (Stroock)<br>$12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003<br>D.I. 4625 | 9/1/03 –<br>9/30/03 | $69,409.50 | $1,076.94 (Stroock)<br>$10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003<br>D.I. 4843 | 10/1/03 –<br>10/31/03 | $96,980.50 | $3,800.45 (Stroock)<br>$42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004<br>D.I. 4976 | 11/1/03 –<br>11/30/03 | $66,428.50 | $1,225.38 (Stroock)<br>$30,463.00 (Navigant<br>f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004<br>D.I. 5056 | 12/1/03 –<br>12/31/03 | $52,321.50 | $924.99 (Stroock)<br>$27,005.00 (Navigant<br>f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004<br>D.I. 5309 | 1/1/04 –<br>1/31/04 | $65,980.50 | $1,917.93 (Stroock)<br>$47,654.57 (Navigant<br>f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004<br>D.I. 5406 | 2/1/04 –<br>2/29/04 | $90,421.50 | $3,636.48 (Stroock)<br>$35,492.50 (Navigant<br>f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004<br>D.I. | 3/1/04 –<br>3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004<br>D.I. 5803 | 4/1/04 –<br>4/30/04 | $99,136.00 | $3,518.96 (Stroock)<br>$1,515.00 (Navigant<br>February)<br>$49,667.00 (Navigant<br>March)<br>$80,307.11 (Navigant<br>April) | $79,308.80 | $135,008.07 |
| July 2, 2004<br>D.I. 5917 | 5/1/04 –<br>5/31/04 | $134,324.50 | $2,409.97 (Stroock)<br>$78,360.05 (Navigant<br>May) | $107,459.60 | $80,770.02 |
| August 2, 2004<br>D.I. 6105 | 6/1/04 –<br>6/31/04 | $120,501.00 | $1,831.49 (Stroock)<br>$62,625.00 (Navigant<br>June) | $96,400.80 | $64,456.49 |
| September 9, 2004<br>D.I. 6341 | 7/1/04 –<br>7/31/04 | $72,394.00 | $3,461.84 (Stroock)<br>$40,427.50 (Navigant<br>July) | $57,915.20 | $43,889.34 |

3

NY 71276504v2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 23, 2004 D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004 D.I 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock) $27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004 D.I. 7086 | 10/1/04 – 10/31/04 | $200,155.50 | $1,368.18 (Stroock) $ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005 D.I. 7481 | 11/1/04 – 11/30/04 | $218,608.50 | $14,019.09 (Stroock) $25,102.80 (Navigant October) $27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005 D.I. 7667 | 12/1/04 – 12/31/04 | $235,503.70 | $10,442.92 (Stroock) $62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005 D.I. 8026 | 1/1/05 – 1/31/05 | $187,168.00 | $4,411.55 (Stroock) $15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005 D.I. 8155 | 2/1/05 – 2/28/05 | $108,180.25 | $8,102.85 (Stroock) $18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005 D.I. 8305 | 3/1/05~ – 3/31/05 | $56,941.25 | $287.23 (Stroock) $6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005 D.I. 8562 | 4/1/05- 4/30/05 | $127,695.00 | $3,531.45 (Stroock) $20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005 D.I. 8704 | 5/1/05- 5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |
| August 3, 2005 D.I. 9135 | 6/1/05- 6/30/05 | $114,903.75 | $4,871.74 (Stroock) $34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005 D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock) $2,211.00 (Navigant) | $94,224.60 | $4,299.44 |

NY 71276504v2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| October 4, 2005<br>D.I. 9565 | 8/1/05 –<br>8/31/05 | $106,796.25 | $5,046.99 (Stroock)<br>$18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005<br>D.I. 10951 | 9/1/05 –<br>9/30/05 | $67,697.50 | $1,399.68 (Stroock)<br>$11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005<br>D.I. 11202 | 10/1/05 –<br>10/31/05 | $98,216.75 | $1,611.30 (Stroock)<br>$11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006<br>D.I. 11507 | 11/1/05 –<br>11/30/05 | $104,348.00 | $2,847.45 (Stroock)<br>$71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006<br>D.I. 11655 | 12/1/05 –<br>12/31/05 | $96,855.00 | $1,379.53 (Stroock)<br>$20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006<br>D.I. 11921 | 1/1/06 –<br>1/31/06 | $73.383.00 | $1,810.85 (Stroock)<br>$14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006<br>D.I. 12134 | 2/1/06 –<br>2/28/06 | $105,083.75 | $1,434.62 (Stroock)<br>$25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006<br>D.I. 12354 | 3/1/06 –<br>3/31/06 | $145,189.50 | $2,512.81 (Stroock)<br>$25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006    DI.<br>12558 | 4/1/2006 –<br>4/30/2006 | $116,817.00 | $2,141.42 (Stroock)<br>$7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006<br>D.I. 12748 | 5/1/2006 –<br>5/31/2006 | $121,304.50 | $1,838.71 (Stroock)<br>$17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006<br>D.I. 12899 | 6/1/2006 –<br>6/30/2006 | $94,856.50 | $1,869.66 (Stroock)<br>$38,548.75 (Navigant) | $75,885.20 | $40,418.41 |
| August 30, 2006<br>D.I. 13117 | 7/1/2006 –<br>7/31/2006 | $97,397.25 | $496.76 (Stroock)<br>$30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006<br>D.I. 13336 | 8/1/2006 –<br>8/31/2006 | $131,856.25 | $98.34 (Stroock)<br>$98,317.50 (Navigant) | $105,485.00 | $98,415.84 |
| November 2, 2006<br>D.I. 13559 | 9/1/2006 –<br>9/30/2006 | $150,960.00 | $4,147.01 (Stroock)<br>$91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006<br>D.I. 13838 | 10/1/06 –<br>10/31/06 | $196,223.50 | $915.14 (Stroock)<br>$147,374.20 (Navigant) | $156,978.89 | $148,289.34 |

5

NY 71276504v2

| | | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|---|
| January 12, 2007 D.I. 14292 | 11/1/06 – 11/30/06 | $188,638.00 | $3,370.16 (Stroock) | $133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007 D.I. 14415 | 12/1/06 – 12/31/06 | $99,832.00 | $5,752.89 (Stroock) | $55,245.22 (Navigant) | $79,865.60 | $60,998.11 |
| March 8, 2007 D.I. 14810 | 1/1/07 – 1/31/07 | $77,582.00 | $962.06 (Stroock) | $90,474.74 (Navigant) | $62,065.60 | $91,436.80 |
| April 10, 2007 D.I. 15132 | 2/1/07 – 2/28/07 | $119,140.50 | $3,092.88 (Stroock) | $77,301.25 (Navigant) | $95,312.40 | $80,394.13 |
| May 1, 2007 D.I. 15457 | 3/1/07 – 3/31/07 | $135,228.00 | $6,635.25 (Stroock) | $104,674.53 (Navigant) | $108,182.40 | $111,309.78 |
| June 22, 2007 D.I. 16136 | 4/1/07 – 4/30/07 | $177,646.00 | $815.81 (Stroock) | $173,437.45 (Navigant) | $142,116.80 | $174,253.26 |
| July 17, 2007 D.I. 16309 | 5/1/07 – 5/31/07 | $205,937.25 | $6,405.01 (Stroock) | $162,431.03 (Navigant) | $164,749.80 | $168,836.04 |
| August 10, 2007 D.I. 16528 | 6/1/07 – 6/30/07 | $225,650.50 | $5,929.97 (Stroock) | $200,294.81 (Navigant) | $180,520.40 | $206,224.78 |
| September 14, 2007 D.I. 16822 | 7/1/07 – 7/31/07 | $157,268.50 | $4,021.65 (Stroock) | $208,116.54 (Navigant) | $125,814.80 | $212,138.19 |
| October 1, 2007 D.I. 16959 | 8/1/07 – 8/31/07 | $145,866.50 | $3,354.61 (Stroock) | $210,152.54 (Navigant) | $116,693.20 | $213,507.15 |
| November 16, 2007 D.I. 17394 | 9/1/07 – 9/30/07 | $206,908.50 | $3,056.89 (Stroock) | | $165,526.80 | $3,056.89 |
| December 5, 2007 D.I. 17548 | 10/1/07 – 10/31/07 | $288,976.50 | $22,324.58 (Stroock) | $325,509.63 (Navigant) | $231,181.20 | $303,185.05 |
| January 11, 2008 D.I. 17803 | 11/1/07 – 11/30/07 | $249,372.50 | $32,780.40 (Stroock) | $162,394.93 (Navigant) | $199,498.00 | $195,175.33 |
| February 1, 2008 D.I. 17957 | 12/1/07 – 12/31/07 | $116,522.50 | $57,717.92 (Stroock) | $47,444.43 (Navigant) | $93,218.00 | $105,162.35 |

NY 71276504v2

**Quarterly Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43[*] | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]  These amounts relate to the Committee's Asbestos Issues Expert.

[1]  Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]  Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

NY 71276504v2

|  |  | Payment Requested |  | Order Approving Amount of: |  |
|---|---|---|---|---|---|
| May 20, 2003<br>D.I. 3815<br>(Eighth) | 1/1/03 –<br>3/31/03 | $224,358.50 | $9,424.04<br>$1,077.80* | $224,615.50[3] | $9,424.04<br>(Stroock)[3]<br>$1,077.80<br>(Chambers)[3] |
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 –<br>6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[4] | $2,726.28<br>(Stroock)[4]<br>$67,628.50<br>(Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 –<br>9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[5] | $4,339.46<br>(Stroock)[5]<br>$36,865.19<br>(Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 –<br>12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[6] | $5,922.67<br>(Stroock)[6]<br>$100,349.50<br>(Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 –<br>3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[7] | $9,965.36<br>(Stroock)[7]<br>$83,147.07<br>(Navigant)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 –<br>6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | $353,629.50[8] | $7,760.42<br>(Stroock)[8]<br>$272,474.16<br>(Navigant)[8] |

---

[3]   Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[4]   Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]   Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]   Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7]   Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[8]   Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | $226,702.50[9] | $6,705.08 (Stroock)[9] $67,569.50 (Navigant)[9] |
| February 22, 2005 D.I. 7851 (Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19 $140,422.11* | $648,355.70[10] | $25,830.19 (Stroock)[10] $140,422.11 (Navigant)[10] |
| May 16, 2005 D.I. 8468 (Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23 $40,104.23* | $349,644.00 | $12,746.23 (Stroock)[11] $40,104.23 (Navigant) |
| August 19, 2005 D.I. 9225 (Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40 $54,204.34* | $340,096.25[12] | $9,261.40 (Stroock) $54,204.34 (Navigant) |
| November 18, 2005 D.I. 11118 (Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71 $31,958.50* | $291,843.50[13] | $8,534.71 (Stroock) $31,958.50 (Navigant) |
| February 15, 2006 D.I. 11798 (Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28 $103,498.49* | $299,419.75[14] | $5,838.69 (Stroock $103,498.49 (Navigant) |

---

[9]   Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[10]   Court Order dated June 29, 2005 approved fees in the amount of  $648,335.70 and expenses in the amount of $166,252.30.

[11]   Court  Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[12]   Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[13]   Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[14]   Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

NY 71276504v2

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 26, 2006<br>D.I. 12533<br>(Twentieth) | 1/1/2006 –<br>3/31/2006 | $323,566.25 | $5,758.28<br>$65,934.98* | $323,451.25[15] | $5,758.28<br>(Stroock)<br>$64,810.58<br>(Navigant) |
| August 17, 2006<br>D.I. 13006<br>(Twenty-First) | 4/1/2006 –<br>6/30/2006 | $332,978.00 | $5,849.79<br>$63,467.50* | $332,978.00[16] | $5,849.70<br>(Stroock)<br>$63,467.50<br>(Navigant) |
| November 29,<br>2006<br>D.I. 13835<br>(Twenty-Second) | 7/1/2006 –<br>9/30/2006 | $380,213.50 | $4,742.11<br>$219,776.61* | $380,213.50[17] | $4,742.11<br>(Stroock)<br>$219,776.61<br>(Navigant) |
| March 1, 2007<br>D.I. 14717<br>(Twenty-Third) | 10/1/2007 –<br>12/31/07 | $484,693.50 | $10,038.19<br>$336,058.12* | $484,693.50[18] | $10,038.19<br>(Stroock)<br>$336,058.12<br>(Navigant) |
| June 4, 2007<br>D.I. 15949<br>(Twenty-Fourth) | 1/1/07 -<br>3/31/07 | $331,950.50 | $10,690.15<br>$272,450.52* | $331,950.50[19] | $10,690.15<br>(Stroock)<br>$272,450.52<br>(Navigant) |
| August 30, 2007<br>D.I. 16710<br>(Twenty-Fifth) | 4/1/2007 -<br>6/30/2007 | $609,233.75 | $13,150.79<br>$536,163.29* | $609,233.75[20] | $13,150.79<br>(Stroock)<br>$536,163.29<br>(Navigant) |

---

[15] Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the amount of $71,130.16.

[16] Court Order dated December 18, 2006 approved fees in the amount of $332,978.00 and expenses in the amount of $69,317.29.

[17] Court Order dated May 3, 2007 approved fees in the amount of $380,213.50 and expenses in the amount of $224,518.72.

[18] Court Order dated June 20, 2007 approved fees in the amount of $484,693.50 and expenses in the amount of $346,096.31.

[19] Court Order dated September 24, 2007 approved fees in the amount of $331,950.50 and expenses in the amount of $283,140.67.

[20] Court order dated December 13, 2007 approved fees in the amount of $609,233.75 and expenses in the amount of $549,314.08.

10

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| December 12, 2007 D.I. 17625 (Twenty-Sixth) | 7/1/2007 – 9/30/2007 | $510,043.50 | $10,433.15 $418.269.08* | | |

**WR GRACE & CO**
**ATTACHMENT B**
**OCTOBER 1, 2007 - DECEMBER 31, 2007**

| | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Kruger, Lewis | 32.1 | $ 860 | $    27,606.00 | 37 |
| Pasquale, Kenneth | 267.8 | 720 | 192,816.00 | 8 |
| Speiser, Mark A. | 8.5 | 815 | 6,927.50 | 20 |
| | | | | |
| **Associates** | | | | |
| Ambroise, Serge | 18.5 | 335 | 6,197.50 | 1 |
| Arnett, Jennifer | 42.7 | 465 | 19,855.50 | 1 |
| Balk, Heidi | 19.1 | 555 | 10,600.50 | 1 |
| Berg, Madelaine | 9.0 | 605 | 5,445.00 | 27 |
| Cutler, Ilana | 27.0 | 335 | 9,045.00 | 1 |
| Eichler, Mark | 0.5 | 605 | 302.50 | 9 |
| Krieger, Arlene G. | 540.3 | 605 | 326,881.50 | 21 |
| Melendres, Linda M. | 44.6 | 260 | 11,596.00 | N/A |
| | | | | |
| **Paraprofessionals** | | | | |
| Green, Carol P. | 1.5 | 175 | 262.50 | 1 |
| Holzberg, Ethel H. | 51.3 | 255 | 13,081.50 | 35 |
| Kaufman, Eric M. | 0.5 | 210 | 105.00 | 1 |
| Mohamed, David | 173.8 | 165 | 28,677.00 | 17 |
| Palacios, Gino D. | 71.9 | 225 | 16,177.50 | 2 |
| Rodriguez, Peter J. | 12.0 | 105 | 1,260.00 | 2 |
| Sperber, Doug | 0.5 | 165 | 82.50 | 2 |
| | | | | |
| **Sub Total** | **1,321.6** | | **$ 676,919.00** | |
| **Less 50% Travel** | **(32.4)** | | **(22,047.50)** | |
| **Total** | **1,289.2** | | **$ 654,871.50** | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

**TWENTY-SEVENTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND
FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED
DURING THE PERIOD FROM OCTOBER 1, 2007 THROUGH DECEMBER 31, 2007**

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1]  The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA  Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.      By this application (the "Application"), Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from October 1, 2007 through December 31, 2007 (the "Compensation Period") in the aggregate amount of $654,871.50 representing 1010.1 hours of professional services and 311.5[2] hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $112,822.90, as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in respect of services rendered in the months of September, October, November and December of 2007 in the aggregate amount of $535,348.99.

2.      Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and has continued in the

---

[2]  Attachment B and the Summary of Fees Schedule to the Amended Seventy-Ninth Monthly Fee Application of Stroock & Stroock & Lavan LLP for the period from October 1, 2007 through October 31, 2007 improperly identified Madelaine Berg as a paraprofessional.  Ms. Berg is an attorney with __ years of experience with Stroock.  This error has been corrected in this Application.

2

management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.　　　The Debtors operate a worldwide specialty chemicals and materials business and employ approximately 3860 full and part-time employees. On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[3] from $1.59 billion in net revenues. The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.　　　On April 12, 2001, the United States Trustee formed the Committee. During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases. The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel. On December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee. On July 10, 2006, a third amended notice of appointment of the Committee was filed by the United States Trustee.

6.　　　The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims (the "ACC") and asbestos-related property damage claims (the "PD Committee") against the Debtors (collectively, the "Asbestos Claim Committees"). On June 18, 2001, the United States Trustee

---

[3]　　The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

3

appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.      By order dated May 24, 2004, the Court authorized the appointment of a legal representative for future asbestos claimants (the "Futures Representative").

8.      By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001.  The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.      This is the twenty-seventh quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee.  This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

10.     In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the October 2007and November 2007 fee statements encompassed within this Compensation Period.  Stroock has not yet received payment for the fees and expenses requested in the December 2007 fee statement for which a certificate of no objection has been filed.  In addition, Stroock has received payment from the Debtors representing the fees and expenses of Navigant Consulting, Inc. ("Navigant"), formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the

4

months of September 2007, October 2007 and November 2007 in the aggregate amount of

$487,904.56. Applicant has received no other payments and no promises for payment from any

source for services rendered in connection with these cases for the months encompassing this

Compensation Period other than as immediately set forth above. There is no agreement or

understanding between the Applicant and any other person (other than members of Stroock) for

the sharing of compensation to be received for the services rendered in these cases.

11.    As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit

"A," all of the services for which interim compensation is sought herein were rendered for and

on behalf of the Committee solely in connection with these cases.

### SUMMARY OF SERVICES RENDERED

12.    Since being retained by the Committee, Stroock has rendered professional

services to the Committee as requested and as necessary and appropriate in furtherance of the

interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these

cases and the need to act or respond on an expedited basis in furtherance of the Committee's

needs have required the expenditure of substantial time by personnel from several legal

disciplines, on an as-needed basis, including in certain instances, working into the evening and

on weekends.

13.    Stroock maintains written records of the time expended by attorneys and

paraprofessionals in the rendition of their professional services to the Committee. Such time

records were made contemporaneously with the rendition of services by the person rendering

such services and in the ordinary course of Stroock's practice, and are presented in compliance

with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006. A compilation

5

showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B".  In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

14.    Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection.  A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

15.    Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

16.    The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B".  Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

6

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17.    As reflected in prior compensation applications, in mid-November 2004, the Debtors filed a reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for carrying out the estimations (the "Estimation Motion"), and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims (the "Case Management Motion").

18.    During prior compensation periods, the Court approved a form of case management order to govern the pre-confirmation estimation of asbestos personal injury claims (the "PI CMO") and several amendments thereto (the "Amended PI CMOs") and the related form of questionnaire (the "Questionnaire") to be used by asbestos personal injury claimants who had commenced pre-petition litigation against the Debtors (the "PI Pre-Petition Litigation Claimants"), and two case management orders for property damage claims the as amended ("PD CMOs"); one to govern the Debtors' claims objection process and the other to govern the pre-confirmation estimation of property damage claims ("PD Claims").  July 12, 2006 was the deadline set for PI Pre-Petition Litigation Claimants to return completed Questionnaires. November 15, 2006 was the deadline set for PI-Pre-Petition Litigation Claimants to file proofs of claim.  The Amended PI CMOs established pre-trial dates and deadlines and trial dates to govern the estimation of asbestos personal injury claims (the "PI Estimation").

19.    Given the pre-trial schedule established by the Amended PI CMOs, substantial services were rendered in this category in this Compensation Period.  Stroock prepared for and attended at least 35 expert and fact witness depositions, attended to PI Estimation issues and PI

expert issues, participated in a number of estimation-related discussions with Navigant, the

Committee's Asbestos Issues Expert, and in a number of conference calls and meet and confers

with representatives for various parties addressing discovery, witness and expert-related issues,

and attended to expert rebuttal reports and testimony from recent expert and fact witness

depositions. Stroock also met with the Committee's expert in preparation for her deposition. In

addition, Stroock attended to numerous PI Estimation and related discovery matters including (i)

the Daubert motions, the oppositions filed thereto, and (ii) the trial witness disclosures and

exhibits.

20.     Also during this Compensation Period, Stroock attended to the Debtors' proposed

settlements of the PD Claims asserted by (a) the claimants represented by the Dies & Hile firm,

(b) Prudential Insurance, and (c) the claimants represented by Motley Rice, discussed these

matters with Debtors' counsel and prepared memorandum thereon for the Committee. In

addition, during this Compensation Period, the Court was scheduled to hear argument on

National Union's obligation to pay prejudgment interest on amounts to be paid under certain pre-

petition asbestos claim inventory settlements represented by two plaintiffs' law firms. At the

hearing, the Debtors, National Union and plaintiffs' counsel advised the Court that they had

reached an agreement in principle to resolve the entirety of the adversary proceeding that had

been pending before the Court since 2002. Stroock thereafter reviewed the Debtors' motion

seeking Court approval of the proposed settlement, discussed the settlement with Debtors' and

National Union's counsel, reviewed relevant underlying documentation and prepared an

extensive memorandum for the Committee addressing the settlement.

21.     Further, during this Compensation Period, as reflected in this category and in

other categories in this Application, the ACC and FCR circulated a term sheet for their proposed

8

competing joint plan of reorganization, which was followed by their filing their proposed joint

plan of reorganization and a related glossary of terms (collectively the "ACC/FCR Plan") with

the Court. Stroock reviewed the ACC/FCR Plan, discussed it with Capstone, attended to

Capstone's financial analysis thereof and discussed the ACC/FCR Plan with the Committee.

Stroock has expended 780.9 hours on this category for a fee of $433,141.00.

### Sales/Uses and Leases (Section 363) – Category 0009

22.     During this Compensation Period, Stroock communicated with Capstone

regarding the status of certain acquisitions under consideration. Stroock has expended 0.3 hours

on this category for a fee of $181.50.

### Business Operations -- Category 0013

23.     During this Compensation Period, Stroock attended to Capstone's report on the

Debtors' third quarter 2007 operations and discussed that report and other matters with Capstone.

Stroock has expended 2.8 hours on this category for a fee of $1,694.00.

### Case Administration -- Category 0014

24.     As reported in prior monthly compensation applications, these chapter 11 cases

were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to

Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L.

Buckwalter following Judge Wolin's recusal from these cases.

25.     During this Compensation Period, Stroock continued to closely monitor the items

on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each

of the pending adversary proceedings and appeals, to ensure that the Committee was fully

9

informed about all pending motions, adversary proceedings and appeals and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable. Stroock continued to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests. Also, as reported in the prior compensation application, Stroock discussed with Debtors' counsel and then attended to the US Trustee's motion to appoint an examiner in this and other asbestos debtor cases pending in Region 3 to investigate the billing practices of L. Tersigni Consulting ("Tersigni").

26.     During this Compensation Period, Stroock attended to the US Trustee's proposed form of order appointing an examiner and provided comments thereon, that was subsequently entered by the Court, and attended the weekly calls the Court directed the US Trustee's office to hold for all interested parties to discuss the scope of the examiner appointment, the selection of the examiner and other related matters. In the middle of this Compensation Period, Tersigni filed its own chapter 11 case, in Region 2 in Connecticut. The US Trustee covering Grace and the US Trustee covering the Tersigni case determined not to pursue the appointment of an examiner on behalf of the asbestos debtor cases, but conversion of the Tersigni chapter 11 case to a chapter 7 case and appointment of a chapter 7 trustee. Stroock participated in multiple subsequent conference calls with Grace, representatives for the ACC and other parties to discuss these events and their position with respect to the US Trustees' position. Stroock prepared memoranda to the Committee on the status of this matter and on the position to be taken by the Committee. Stroock has expended 189.8 hours on this category for a fee of $42,563.00.

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

27.     As reported in prior compensation applications, the New Jersey Department of Environmental Protection ("NJDEP") filed a motion for leave to file a late proof of claim in an

10

amount in excess of $30.0 million, and Stroock reviewed applicable case law, discussed this

matter with Debtors' counsel, and ultimately filed a joinder by the Committee to the Debtors'

objection to the motion.  After the Court entered an order denying NJDEP's motion, Stroock

attended to NJDEP's appeal of the order and its related statement of issues and designation of

items to be included in the appellate record.

28.    During this Compensation Period, Stroock attended to NJDEP's filings before the

District Court, including its appellant's brief and reply brief on appeal, attended to the Debtors'

drafts of their appellees' brief, joined by the Committee, and provided comments thereon.

29.    In addition, during this Compensation Period, the Debtors filed a motion seeking

approval for a settlement reached with Del Taco, LLC, which would resolve substantial claims

filed against several of the Debtors that have been the subject of complex pending litigation for

years.  Stroock attended to the settlement agreement and all relevant related documentation,

requested additional information as necessary, discussed this matter with Debtors' counsel, and

prepared an extensive memorandum to the Committee addressing the proposed settlement.

Stroock has expended 48.5 hours on this category for a fee of $29,597.50.

**Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017**

30.    During this Compensation Period, Stroock communicated with the members of

the full Committee through numerous memoranda, telephone and conference calls.  In order to

keep the Committee fully informed of all of the pending matters in these cases, and thus enable

the Committee to take informed positions on those issues, Stroock reviewed and summarized the

motions, other pleadings and notices filed by the Debtors and other parties in interest in these

cases and the objections and responses filed, raised issues the Committee should be aware of,

11

made recommendations to the Committee concerning appropriate actions to be taken with regard to the pleadings and communicated with members of the Committee regarding the positions to be taken. In addition, Stroock engaged counsel and other representatives for the Debtors, and other parties and movants, as applicable, with the Committee's questions, concerns and comments, negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders, stipulations and settlement agreements.

31.     In addition, during this Compensation Period, Stroock prepared memoranda to the Committee discussing the hearings held before Judge Fitzgerald and the rulings issued by the Court and addressing the many pleadings and other materials considered by the Court, including (i) the Debtors' motion for approval of the settlement agreement with National Union and certain plaintiffs' law firms, (ii) the Debtors' proposed settlements of numerous PD Claims represented by Dies & Hile or Motley Rice and the PD Claims asserted by Prudential Insurance Company, (iii) the Debtors' pleadings seeking approval for their settlement with Del Taco, LLC, (iv) the status of the appeal taken by the NJDEP from the Court's denial of NJDEP's motion for leave to file a substantial late claim and the Committee's position thereon, and (v) the status of the billing investigation of Tersigni. Further during this Compensation Period, Stroock continued to discuss with the Committee, Navigant and Capstone, as applicable, various PI Estimation and plan-related matters, including the ACC/FCR Plan.. Further during this Compensation Period, Stroock and the Debtors' representatives engaged in a number of conference calls during which pending motions, Court hearings and upcoming matters were discussed, as were various PI Estimation-related issues.

32.     Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express

12

the Committee's views regarding the issues which arise in these cases, to support the

establishment of appropriate processes for the estimation or adjudication, as applicable, of the

Debtors' asbestos liabilities, and participate in the estimation proceedings and in the preparation

of a plan providing appropriate treatment for the creditors represented by the Committee.

Stroock has expended 30.7 hours on this category for a fee of $19,418.00.

### Fee Application, Applicant -- Category 0018

33.    During this Compensation Period, Stroock prepared its fee statements for the

months of August 2007, September 2007, October 2007, and November 2007 and related

notices, affidavits of service and certifications of no objection where applicable.  Stroock also

prepared its Twenty-Sixth Quarterly Fee Application covering the period from July 1, 2007

through October 31, 2007 (the "prior compensation application"), including a narrative section

summarizing the services rendered during that period by Stroock and numerous fee and expense

schedules, as required by the Administrative Fee Order entered by the Court.  Stroock has

expended 70.9 hours on this category for a fee of $25,773.50.

### Creditor Inquiries -- Category 0019

34.    During this Compensation Period, Stroock responded to inquiries from unsecured

creditors with respect to the status of these cases, the Ninth Circuit Court of Appeals ruling in the

Libby, MO criminal case, the PI Estimation and related plan issues, including the ACC/FCR

Plan filed, and the pending settlement of claims with the United States Environmental Protection

Agency (the "EPA").  Stroock has expended 2.6 hours on this category for a fee of $1,795.00 .

### Fee Application, Others -- Category 0020

35.    During this Compensation Period, Stroock prepared notices, affidavits of service

and certifications with respect to Capstone's monthly fee statements for the months of July 2007,

August 2007 and September 2007 and with respect to Capstone's Fourteenth Quarterly Fee

Application and Fifteenth Quarterly Fee Application.  Stroock also attended to fee applications

of other professionals retained in these cases and to final reports issued by the Fee Auditor.

Stroock has expended 26.2 hours on this category for a fee of $11,891.00.

### Environmental Matters/Regulations/Litigation -- Category 0022

36.    As reflected in the prior compensation application, the Debtors began to discuss

with the Committee certain settlements of environmental claims and transactions involving sites

with environmental issues that were under discussion.  During this Compensation Period,

Debtors held an environmental matters meeting with the Committee's professionals where the

terms of their proposed settlement with the EPA, other governmental agencies and with private

parties of such parties' environmental claims against the Debtors relating to 35 sites throughout

the United States (the "multi-site agreement") was discussed, as were the terms of other potential

environmental-based claims agreements.  In connection with the meeting and evaluating the

settlement, Stroock exchanged multiple memoranda with Debtors' counsel and other

professionals for the Committee, reviewed the documentation and materials provided by the

Debtors' representatives, prepared information requests to the Debtors and reviewed all

additional documentation obtained in response to these requests, reviewed each of the iterations

of the multi-site agreement received during the period and provided comments thereon to

counsel for the Debtors and the EPA, as applicable, and attended to relevant case law.  Prior to

the end of this Compensation Period, the Debtors filed a motion seeking approval for the final

14

form of the agreement.  Stroock has expended 67.4 hours on this category for a fee of $42,715.00.

### Insurance – Category 0028

37.    During this Compensation Period, Stroock attended to an analysis of the Debtors' insurance coverage.  Stroock has expended 0.6 hours on this category for a fee of $409.00.

### Travel – Non Working -- Category 0035

38.    Stroock's fees in this category during this Compensation Period relate to Stroock attorneys traveling (i) to and from Pittsburgh, PA and Wilmington, DE for the omnibus hearings before Judge Fitzgerald on October 25, 2007 and November 11, 2007, (ii) to and from Washington, D.C. to prepare the Committee's expert for her deposition in connection with the PI Estimation, and to attend Dr. Chambers' deposition, and (iii) to and from multiple locations throughout the Untied States to attend expert and fact witness depositions.  Stroock has expended 64.8 hours on this category for a fee of $44,095.00 for which Stroock is seeking payment in the amount of $22,047.50.

### Plan and Disclosure Statement -- Category 0036

39.    As reported in the prior compensation application, Judge Fitzgerald issued an order in July 2007 terminating the Debtors' exclusive period to file a plan and solicit acceptances thereto.

40.    As reported elsewhere in this Application, during this Compensation Period, the ACC and FCR circulated a term sheet for a plan of reorganization and subsequently filed with the Court their ACC/FCR Plan.  Stroock reviewed the term sheet and then the ACC/FCR Plan and discussed the financial aspects thereof with Capstone.  Further during this Compensation

15

Period, Stroock continued to attend to plan-related materials and issues, and analyses prepared by Capstone. Stroock expended 13.0 hours on this category for a fee of $8,715.50.

### Hearings -- Category 0037

41.     During this Compensation Period, Judge Fitzgerald held three omnibus hearings; one in Wilmington, DE and two in Pittsburgh, PA, which hearings addressed, among other matters, numerous PI Estimation and PD Claims litigation-related matters and issues, and PD Claims settlement related matters. In addition, the Court held a telephone hearing in respect of the National Union adversary proceeding and a hearing regarding the US Trustee's motion to appoint an examiner to investigate Tersigni's billing practices for the benefit of the Debtors and other asbestos debtor cases. Stroock reviewed each of the agenda notices and all relevant pleadings, orders, stipulations, pre-trial motions and briefs and other documentation in advance of these hearings and participated in a number of conference calls discussing these matters, as applicable. Stroock prepared for and attended the hearings, and advocated the Committee's positions, as appropriate. After the hearings, Stroock, as reflected here and elsewhere in this Application, prepared memoranda informing the Committee of the arguments made at, and the results of, the hearings. Stroock expended 21.3 hours on this category for a fee of $13,841.00.

### Relief From Stay Proceedings – Category 0041

42.     During this Compensation Period, Stroock reviewed the Debtors' objection to the motion filed by Prete seeking stay relief and a preliminary injunction. Stroock expended 0.4 hours on this category for a fee of $242.00.

16

### Tax Issues – Category 0047

43.     During the prior compensation period, the Debtors filed a motion seeking authorization to undertake certain transactions, including ones involving certain of the Debtors' foreign subsidiaries, in order to preserve the value of the Debtors' NOLs and establish a structure for tax efficient chapter 11 emergence financing (the "Tax Optimization Plan"). Stroock reviewed the motion, participated in several conference calls with the Debtors' in-house tax personnel and other representatives on this proposed program, reviewed all documentation and materials provided to it, and worked with Capstone to prepare a memorandum for the Committee discussing this matter. During this Compensation Period, Stroock reviewed further materials on the Tax Optimization Plan and communicated with Debtors' counsel regarding another tax matter. Stroock expended 1.4 hours on this category for a fee of $847.00.

### FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

44.     The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

> The Time and Labor Required. The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch. Occasionally, Stroock has been required to perform these services under significant time

17

constraints requiring work late into the evening and on weekends.  The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions.  Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered.  In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly.  Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case.  Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients.  However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

18

The Customary Fee.  The fee sought herein is based upon Stroock's normal hourly rates for services of this kind.  Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

Whether the Fee is Fixed or Contingent.  Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

19

The Experience, Reputation and Ability of the Attorneys. Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings. Stroock's experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation, ERISA, tax, environmental and intellectual property law areas to perform the wide ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

20

Nature and Length of Professional Relationship. As described above,
Stroock has been actively rendering services on behalf of the Committee
as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

45.     The professional services rendered by Stroock required a high degree of
professional competence and expertise so that the numerous issues requiring evaluation and
determination by the Committee could be addressed with skill and dispatch and have, therefore,
required the expenditure of substantial time and effort. It is respectfully submitted that the
services rendered to the Committee were performed efficiently, effectively and economically,
and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole
and the Debtors' estates.

46.     With respect to the level of compensation, § 330 of the Bankruptcy Code
provides, in pertinent part, that the Court may award to a professional person (including
attorneys for a creditors' committee): "Reasonable compensation for actual necessary services
rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the
court should take into consideration, inter alia, the nature, extent, and value of services
performed, as well as the cost of comparable services other than in a case under this title. Id.
The clear Congressional intent and policy expressed in this statute is to provide for adequate
compensation in order to continue to attract qualified and competent bankruptcy practitioners to
bankruptcy cases.

47.     The total time spent by Stroock attorneys and paraprofessionals during the
Compensation Period for which Stroock seeks payment was 1,321.60 hours. Such services have

21

a fair market value of $654,871.50. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

48.     As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

49.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $112,822.90 for which Stroock respectfully requests reimbursement in full. The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters. Approximately $93,000 of the total amount for which reimbursement is sought are costs incurred by Stroock for deposition transcripts. Similarly, substantially all of the costs incurred by Stroock for Travel Expenses – Lodging, Travel Expenses – Transportation, and Travel Expenses – Meals, in the aggregate approximate amount of $13,500 were costs incurred by Stroock attorneys in connection with attending numerous depositions in locations throughout the United States. Stroock has endeavored to minimize to the fullest extent possible those expenses incurred to enable Stroock to devote time beyond normal office hours to matters that imposed extraordinary time demands. Attached hereto as Exhibit "D" is a summary chart reflecting each category of disbursement for which Stroock seeks reimbursement.

50.     Stroock's billing rates do not include charges for photocopying, telephone and telecopy toll charges, computerized research, travel expenses, "working meals", secretarial

22

overtime, postage and certain other office services, because the needs of each client for such services differ.  Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

51.    Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions.  Stroock does not charge for incoming facsimiles.

52.    Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment in the aggregate amount of $535,348.99, for the fees and expenses of Navigant for the extensive PI Estimation-related services rendered on behalf of the Committee in the months of September, October, November and December 2007.

53.    No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

54.    Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

55.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

23

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

the allowance of compensation for professional services rendered to the Committee during the period from October 1, 2007 through and including December 31, 2007 in the amount of $654,871.50;

the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from October 1, 2007 through and including December 31, 2007 in the amount of $112,822.90;

the payment of the fees and expenses of the Asbestos Issues Expert employed by the Committee for the months of September, October, November and December 2007 in the aggregate amount of $535,348.99;

authorizing and directing the Debtors to pay to Stroock each of the amounts set forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       March 3, 2008

STROOCK & STROOCK & LAVAN LLP

_____
Lewis Kruger
Kenneth Pasquale
Members of the Firm
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

Co-Counsel for the Official Committee of
Unsecured Creditors of W. R. Grace & Co., et al.

24