## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF CAPLIN & DRYSDALE,
### <u>CHARTERED, FOR THE TWENTY-SIXTH INTERIM PERIOD</u>

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Caplin & Drysdale, Chartered, for the Twenty-Sixth Interim Period</u> (the "Application").

### BACKGROUND

1.     Caplin & Drysdale, Chartered ("Caplin & Drysdale"), was retained as national counsel to the Official Committee of Asbestos Personal Injury Claimants.  In the Application, Caplin & Drysdale seeks approval of fees totaling $1,264,562.75 and expenses totaling $632,911.60 for its services from July 1, 2007 through September 30, 2007 (the "Application Period").

2.     In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2006, and the United States Trustee Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330, Issued

January 30, 1996 (the "U.S. Trustee Guidelines"), as well as for consistency with precedent

established in the United States Bankruptcy Court for the District of Delaware, the United States

District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served an

initial report on Caplin & Drysdale, and received a response from Caplin & Drysdale, portions of

which response are quoted herein.

### DISCUSSION

3.      In our initial report, we noted that Timekeeper SAT, billing at an hourly rate of

$185.00, spent 7.90 hours for a total of $1,461.50 in fees on tasks which appeared to be of a clerical

nature.  The time entries are as follows:

| 7/6/2007 | SAT | $185 | 0.2 | $37.00 | Organize pleadings into case files. |
|---|---|---|---|---|---|
| 7/11/2007 | SAT | $185 | 2.5 | $462.50 | Organize pleadings into case files. |
| 7/12/2007 | SAT | $185 | 0.4 | $74.00 | Organize pleadings into case files. |
| 7/24/2007 | SAT | $185 | 0.4 | $74.00 | Organize pleadings into case files. |
| 8/20/2007 | SAT | $185 | 1.50 | $277.50 | Organize pleadings into case files. |
| 8/28/2007 | SAT | $185 | 2.10 | $388.50 | Organize pleadings into case files. |
| 8/29/2007 | SAT | $185 | 0.80 | $148.00 | Organize pleadings into case files. |
| | | | 7.90 | $1,461.50 | |

We have been consistent in recommending that clerical tasks be billed at no more than $80.00 per

hour.  We find persuasive the opinion expressed by the Honorable Judith K. Fitzgerald in *In re USG*

*Corporation*, Case No. 01-2094 (JKF), Transcript of Proceedings, August 29, 2005, pp. 49-52,

wherein the Court opined that $160.00 per hour for file maintenance, even if performed

electronically, was too high, and that $60.00 to $100.00 per hour for this service was more

appropriate.[1]    Thus, we asked Caplin & Drysdale to explain why the foregoing tasks should be compensated at the full hourly rate.  Caplin & Drysdale responded as follows:

> You inquire in paragraph 3 of the Initial Report regarding paralegal services provided by Samira A. Taylor.  The referenced services were not clerical in nature, but rather required that this paralegal review the Court docket for recently-filed documents; index those documents based on the issue, motion or adversary proceeding to which each related and the procedural posture of that matter; and organize the documents into case files for attorney review. These services required legal training and skills and could not have been performed by members of the clerical staff.  Therefore, Caplin & Drysdale maintains that such services should be compensated at the paralegal's normal hourly rate.

We understand Caplin & Drysdale's response but maintain that all filing requires some degree of review, analysis, and organization–otherwise someone with no legal knowledge whatsoever could perform the task.    And we are not contending that this filing should be performed without compensation, particularly in cases as complex as these.[2]  But it appears to us that time spent by a paralegal in these types of activities should not be compensated as highly as, for example, drafting of pleadings, notices, and orders, participating in client meetings, or document production. There is authority in this district for adjusting rates downward for routine tasks.  "Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates.  A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3rd Cir. 1983).  We think the same can be said of routine tasks performed by paralegals. Thus, we recommend that the 7.90 hours billed by Timekeeper Taylor should be billed at $80.00 per

---

[1]Nevertheless, the Court agreed to allow the applicant to present evidence in support of its $160.00 hourly rate at a later date.  *See* Transcript, *supra,* at p. 52.

[2]As stated by the court in *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 855 n.34 (3rd Cir. 1994):  "The statute [11 U.S.C. § 330] plainly specifies that the type of service performed by a paralegal (including whether it is clerical) affects the rate of compensation, not compensability vel non."

hour, for a reduction of $829.50 in fees.

4.      In our initial report, we noted the following time entry in which there is a discrepancy

between the total time billed and the time recorded in parentheses:

8/10/2007    BSB    600.00    7.30    4,380.00    Deposition scheduling matters (.7); deposition
                                                  preparation and research (6.4).

The time recorded in parentheses totals 7.10 hours for total fees of $4,260.00, resulting in an

overcharge of $120.00.  Thus, we asked Caplin & Drysdale whether it agreed that a fee reduction

was warranted in this instance.  Caplin & Drysdale responded as follows:

> We agree that there is such a discrepancy and that a fee reduction of $120.00 is
> warranted in this instance.

We appreciate Caplin & Drysdale's response and recommend a reduction of $120.00 in fees.

5.      In our initial report, we noted the following similar time entries:

8/10/2007    EGB    225.00    8.00    1,800.00    Review and add document entries into WR
                                                  Grace database for B. Baylor.

8/10/2007    EGB    225.00    7.00    1,575.00    Review and add document entries into WR
                                                  Grace database for B. Baylor.

Thus, we asked Caplin & Drysdale whether one of these time entries was a duplicate.  Caplin &

Drysdale responded as follows:

> We have confirmed with Mr. Butts that the correct entry is for 8.00 hours.  The
> additional entry is duplicative.

We appreciate Caplin & Drysdale's response and recommend a reduction of $1,575.00 in fees.

6.      In our initial report, we noted the following time entries which appeared to include

non-working travel:

9/17/2007    JMR    235.00    7.80    Organize documents for deposition of Mr. Cintani and
                                     Mr. Egan; review memo regarding prior testimony to

prepare (5.4).  **Travel to Philadelphia (2.4)**

| 9/18/2007 | BSB | 600.00 | 11.30 | Final preparation for Bragg deposition (5.4); preparation for Garabrandt (2.7); **travel to Toronto (3.2)** |
| 9/19/2007 | JMR | 235.00 | 11.60 | Attend deposition of Mr. Egan (9.1); **travel to Washington, DC (2.5)** |
| 9/19/2007 | BSB | 600.00 | 10.30 | Bragg deposition in Toronto (6.2); **return to DC (4.1)** |

Pursuant to Local Rule 2016-2(d)(viii): "Travel time during which no work is performed shall be separately described and may be billed at no more than 50% of regular hourly rates."  Thus, we asked Caplin & Drysdale whether the required 50% discount had been applied to these time entries.  Caplin & Drysdale responded as follows:

> The travel time referenced in paragraph 6 of the Initial Report is non-working travel time and should have been billed at half of each of the respective timekeeper's hourly rate.  Caplin & Drysdale apologizes for the error and will accept a 50% fee reduction regarding these services.

We appreciate Caplin & Drysdale's response and recommend a reduction of $2,765.75 in fees.

7.      In our initial report, we noted the following meal charges for which more information was needed:

| 158.58 | NDF; Travel expenses to Pittsburgh for Court hearing on 6/26 for meals |
| 133.81 | JMR; Travel expenses to Philadelphia for depositions on 9/17-19 for meals |
| 248.58 | JPW; Travel expenses to Philadelphia for depositions on 9/17-19 for meals |
| 208.58 | High Noon; NDF client luncheon on 9/26 |

In response to our inquiry, Caplin & Drysdale provided the following information concerning this charge:

A.    **Nathan D. Finch:   June 26, 1007**
    Dinner (2 people):      128.10
    Breakfast (1):        20.48
    Snack (1)             10.00
                         $158.58

B.    **Jeanna M. Rickards:  September 17-19, 2007**
    Dinner (1)       38.28
    Lunch (1)        8.97
    Dinner (1)       63.70
    Breakfast (1)    11.37
    Lunch (1)       11.49
                         $133.81

C.    **James P. Wehner:  September 17-19, 2007**
    Dinner (1)      $ 67.21
    Breakfast (1)    43.21
    Dinner (2)      98.43
    Breakfast (1)    39.73
                        $248.58

D.    **Nathan D. Finch:  Client luncheon on September 26, 2007**
    Twelve persons attended this in-house luncheon, at a total charge of $208.58.

It appears to us that one can dine satisfactorily for $50 for dinner, $25 for lunch, and $15 for breakfast.  Accordingly, we accept Caplin & Drysdale's response with respect to all of the charges except for the following:

| | |
|---|---|
| $128.10 for dinner for two | Reduce by $28.10 |
| $20.48 for breakfast for one | Reduce by $5.48 |
| $63.70 for dinner for one | Reduce by $13.70 |
| $67.21 for dinner for one | Reduce by $17.21 |
| $43.21 for breakfast for one | Reduce by $28.21 |
| $39.73 for breakfast for one | Reduce by $24.73 |

Thus, for all items under this paragraph, we recommend a reduction of $117.43 in expenses.

8.    In our initial report, we noted the following hotel charges for which more information was needed:

Case 01-01139-AMC    Doc 18234    Filed 03/06/08    Page 7 of 14


| | |
|---|---|
| 706.10 | JPW; Travel expenses to NYC for deposition of BMC on 7/24-25 for The Pierre Hotel |
| 1,219.80 | JMR; Travel expenses to Philadelphia for depositions on 9/17-19 for Four Seasons Hotel |
| 466.26 | BSB; Travel expenses to Toronto for Gordon Bragg deposition on 9/18-20 for Sheraton Hotel |
| 1,219.80 | JPW; Travel expenses to Philadelphia for depositions on 9/17-19 for Four Seasons Hotel |

In response to our inquiry, Sidley provided the following information:

   A.   **James P. Wehner, September 24-25, 2007 (NYC)**
        One night at $605.00 room charge, plus $101.00 in taxes.
        <u>Total</u>:  $706.10

   B.   **Jeanna M. Rickards, September 17-19, 2007 (Philadelphia)**
        Two nights at $535.00 per night room charge, plus $74.90 per night in taxes.
        <u>Total</u>: $1,219.80

   C.   **Bernard S. Bailor, September 18-20, 2007 (Toronto)**
        One night at $409.00 room charge, plus $57.25 in taxes.
        <u>Total</u>:  $466.25

   D.   **James P. Wehner, September 17-19, 2007 (Philadelphia)**
        Two nights at $535.00 per night room charge, plus $74.90 per night in taxes.
        <u>Total</u>: $1,219.80

It appears to us that one can obtain satisfactory lodging for $350.00 per night in New York City and

for $250.00 per night in most other locales.[3]  Based upon these guidelines, we recommend the

following reductions:

| | |
|---|---|
| $605.00 for one night in New York, NY | Reduce by $255.00 |
| $1,070.00 for two nights in Philadelphia | Reduce by $570.00 |
| $409.00 for one night in Toronto | Reduce by $159.00 |
| $1,070.00 for two nights in Philadelphia | Reduce by $570.00 |

---

[3]These rate guidelines are exclusive of taxes.

**FEE AUDITOR'S FINAL REPORT** - Page 7
 wrg FR Caplin 26th 7-9.07.wpd

Thus, for all items under this paragraph, we recommend a reduction of $1,554.00 in expenses.

      9.     In our initial report, we noted the following hotel charges which appeared somewhat excessive:

| 416.10 | NDF; Travel expenses to Pittsburgh for Court hearing on 6/26 for Omni William Penn Hotel (room 365.00; co. occ. tax 25.55; state rad tax 3.65; state sales tax 21.90) |
| --- | --- |
| 416.10 | NDF; Travel expenses to Pittsburgh for hearing on 7/31-8/1 for Omni Hotel (room 365.00, taxes 51.10) |

Based upon the hotel guideline set forth in the preceding paragraph, we asked Caplin & Drysdale to explain why reimbursement for this charge should not be reduced.  Caplin & Drysdale responded as follows:

     You inquire in paragraph 9 of the Initial Report regarding why Caplin & Drysdale attorney Nathan D. Finch did not stay at a less expensive hotel during this trip to Pittsburgh on June 26, 2007 and July 31- August 1, 2007, respectively.  Mr. Finch stays at the Omni William Penn Hotel when he travels to Pittsburgh for court hearings because that hotel provides full business services and is relatively close to the courthouse.  Hotels in the courthouse area are more costly precisely because they afford these conveniences.

     Had Mr. Finch stayed at a cheaper hotel, outside the area of the courthouse, he would have been forced to hire a car service to transport court documents and business equipment to court, and would have billed the Debtors' estates for additional travel time to and from the courthouse.  The cost of the car service, and of Mr. Finch's additional travel time (at 50% of Mr. Finch's then hourly rate $580.00 per hour) would have far exceeded any potential savings on hotel costs.   Therefore, Caplin & Drysdale requests full reimbursement for the hotel charge, which includes two nights at the Omni William Penn, room charge $365.00 per night, plus $51.10 in taxes, or $416.10 per night, for a total charge of $832.20.

We understand Caplin & Drysdale's response, but we do not believe that this information carries Caplin & Drysdale's burden of showing that incurring this expense was reasonable and necessary.

There is no indication that Caplin & Drysdale attempted to secure less expensive accommodations.

Furthermore, we have seen cheaper room rates at the Omni than $365.00 per night.  Thus, we

recommend a reduction of $230.00 in expenses.

10.    In our initial report, we noted the following ground transportation charges which

appeared excessive:

| | | |
|---|---|---|
| 815.96 | NDF | BostonCoach car service for NDF from Bethesda, MD to Pittsburgh, PA on 6/21 |
| 1,168.80 | NDF | BostonCoach car service for NDF t/f Pittsburgh, PA 6/25-26 |
| 1,518.00 | NDF | BostonCoach car service for NDF t/f Pittsburgh, PA on 7/31-8/1 |
| 911.71 | NDF | BostonCoach car service for NDF round trip to Pittsburgh on 8/29 |
| 261.80 | NDF | BostonCoach car service for NDF on 9/7 to airport for travel to NYC |

Thus, we asked Caplin & Drysdale to explain why Timekeeper NDF was unable to use a less

expensive form of transportation.  Caplin & Drysdale responded as follows:

> You inquire in paragraph 10 of the Initial Report regarding certain ground
> transportation charges from the Washington D.C. area to and from Pittsburgh,
> Pennsylvania and, on September 7, 2007, to the airport for travel to New York City,
> incurred by Caplin & Drysdale attorney Nathan D. Finch.  In each case, Mr. Finch
> was transporting numerous files and documents to be employed in depositions
> regarding the Grace estimation trial. Those documents were in many cases privileged
> and confidential and could not be transported via any other method with the
> assurance of document security.
>
> The $815.96 charge incurred on June 21, 2007 was indeed a round-trip charge, as
> was the $261.80 charge to the airport for travel to New York City incurred on
> September 7, 2007.

With respect to the 450-mile round trips from Bethesda, MD, to Pittsburgh, we inquired of Caplin

& Drysdale as to why Timekeeper Finch could not have rented a car and in so doing, kept physical

custody of the documents.  Caplin & Drysdale provided the following additional information:

> Nate Finch was transporting boxes of documents, including exhibits, expert reports, privileged documents and work product. Our attorneys make choices based on our awareness of our ethical responsibilities and of the risks inevitably involved in transporting large numbers of documents. Our choice after exploring and weighing our options was to transport the documents by car in the company of an attorney.

> . . . (A)ll issues relating to the transportation of the documents were considered before the vehicle was engaged. Mr. Finch is not a professional driver.  After all issues had been considered by the Committee's counsel, the decision was made to hire the service rather than ask Mr. Finch or any other lawyer to transport the documents out-of-town by himself. The specific issues discussed are protected pursuant to the work product privilege.

Upon further review, it appears that the charge of $815.96 for Timekeeper Finch's June 21, 2008 trip from Bethesda to Pittsburgh was billed to the W.R. Grace estate by mistake.[4]  Thus, we recommend disallowance of this charge, for a reduction of $815.96.  As to the other three trips from Bethesda to Pittsburgh on June 25-26, 2008, July 31-August 1, 2008, August 29, 2008, it appears to us that Timekeeper Finch could have rented a car for these trips at much less cost to the estate.  While we acknowledge that Timekeeper Finch is not a "professional driver," we note that these were 450-mile round trips on the Interstate, and thus it does not appear to us that the skills of a professional driver were required.  We checked the cost of renting a large car or minivan for these trips and found that an SUV or minivan can be rented for $170.00 per day, inclusive of taxes and fees.  Thus, the cost for a three-day trip (two days plus an extra day for pickup/drop-off) would be $510.00, and the cost of a two-day trip (one day plus an extra day for pickup/drop-off) would be $340.00.  Accordingly, for the three round trips to Pittsburgh, we recommend the following reductions:

---

[4]There was no indication from the Application that Timekeeper Finch traveled to Pittsburgh on W.R. Grace business on June 21, 2008.  However, it appears that he was in Pittsburgh for the Federal-Mogul confirmation hearing on that date.

1,168.80    Round trip from Bethesda, MD to Pittsburgh (three days):  Reduce by $658.80

1,518.00    Round trip from Bethesda, MD to Pittsburgh (three days): Reduce by $1,008.00

911.71    Round trip from Bethesda, MD to Pittsburgh (two days): Reduce by $571.71

In addition, we do not believe the response establishes the necessity of Timekeeper Finch's use of a car service from his home to the airport for a trip to New York.  The cost of the car service in this instance was at least twice the cost of taking a cab.  We therefore recommend a reduction of one-half of the $261.80 car service charge, for a reduction of $131.00 in expenses.  Thus, for all items under this paragraph, we recommend a reduction of $3,185.47 in expenses.

11.    In our initial report, we noted the following library-related expenses:

1,656.95    For publication material order on firm credit card by Nalini

6,148.97    Reprints desk; Article supply services for month of June

1,852.12    Publication ordered by the Library for BSB for science articles

7,095.77    Reprints desk; Article supply services for July

447.00    Charges on firm VISA charge account; Reference materials ordered through the Library for BSB

14,723.52  Reprints Desk Article supply services requested by BSB


These appeared to be library or publication charges which are classified as noncompensable overhead under Paragraph II.E. 7 of the U.S. Trustee Guidelines.  Thus, we asked Caplin & Drysdale to explain why these charges should be reimbursed by the estate.  We also asked Caplin & Drysdale

whether the Reprints Desk charges were for in-house services or were paid to outside vendors.

Caplin & Drysdale responded as follows:

> While the tasks described in the time entries cited in paragraph 11 of the Initial Report were performed by Caplin & Drysdale's library staff, those tasks were neither incidental nor routine.  Instead, the library staff created a Microsoft Access database that contained all of the medical references cited by Grace experts in their initial expert reports, supplemental reports and rebuttal reports.  The articles contained in that database are not normal law firm administrative documents, but are highly specialized and deal only with asbestos-related medical issues.  The high cost of the preparation of the database was the result of the fact that most of the articles are published in various medical journals and accessible only for a fee.  Caplin & Drysdale has used this database extensively in deposing and cross examining Grace witnesses, and it has been used exclusively in the Grace case.  Moreover, it appears that the Debtors have a similar database, because the Debtors' attorneys have employed many of the same articles in examining ACC witnesses.  The Debtors' estates have not been charged for the services rendered by the Caplin & Drysdale library staff in preparing the database.

Caplin & Drysdale subsequently provided the following additional explanation:

> The "library" expenses cited in the Initial Report were actually expenses related to the database compilation. The database was put together using materials that could only be accessed via the library portals. That's why the charges appear to be library charges.

We accept Caplin & Drysdale's response and have no objection to these expenses.

## CONCLUSION

In summary, we recommend approval of $1,259,272.50 in fees ($1,264,562.75 minus $5,290.25) and $627,824.70 in expenses ($632,911.60 minus $5,086.90) for Caplin & Drysdale's services during the Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
            Warren H. Smith
            Texas State Bar No. 18757050

325 N. St. Paul, Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 6th day of March, 2008.


_____
            Warren H. Smith

# SERVICE LIST
## Notice Parties

**The Applicant**
Elihu Inselbuch
Peter Van N. Lockwood
Rita Tobin
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
David M. Bernick
Janet S. Baer
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801

**Counsel to the Official Committee of Personal Injury Claimants**
Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Lockbox 35, Room 2207
Wilmington, DE 19801