THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: April 4, 2008** |
| | ) | **Hearing Date:  April 21, 2008 at 1:00 p.m.** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
SETTLEMENT AGREEMENT RESOLVING THE UNITED STATES' PROOFS OF
CLAIM REGARDING THE LIBBY, MONTANA ASBESTOS SITE AND
AUTHORIZING PAYMENT OF THE CLAIM**

The Debtors have successfully negotiated the settlement of the United States' claims for

environmental remediation costs arising from the Debtors' mining, milling and processing

facilities in the Libby, Montana area. The Debtors have been engaged in costly and protracted

litigation with the United States over the scope and costs of the remediation of the Libby

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Asbestos Site[2] for many years. In the meantime, the United States has expended significant funds conducting remediation in the Libby area and has estimated that it will continue to expend significant funds for years to come. By this Motion, the Debtors seek approval of the Settlement Agreement it has negotiated with the United States that will resolve the United States' Proofs of Claim for the Libby Asbestos Site (the "Settlement Agreement," a copy of which is attached as Exhibit A hereto) and authorizing immediate payment of the settlement amount.

Approval of the Settlement Agreement will conclude a very long and difficult chapter in the Debtors' history of its operations in Libby, as well as conclude long, complicated and expensive litigation. It will also reimburse the United States for significant costs that have been incurred for remediation of the Libby Asbestos Site and assure that funds will be available for the remaining remediation work.

The Settlement Agreement is a fair and equitable resolution of the Debtors' liabilities for the Libby Asbestos Site and is in the best interests of the Debtors, their estates and their creditors and is also in the public interest. For the reasons stated below, the Debtors hereby request entry of an order approving the Settlement Agreement and authorizing the Debtors to consummate the transactions contemplated therein, including the payment to the United States of the settlement amount of $250 million.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

---

[2]     Capitalized terms not defined herein shall have the meaning ascribed to them in the Settlement Agreement.

2.    The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background and Proofs of Claim

3.    On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.    On or about March 28, 2003, the United States, on behalf of the Environmental Protection Agency ("EPA"), the United States Department of Agriculture Forest Services, and the Army Corps of Engineers, filed its proofs of claim numbered 9634 and 9635 (the "Proofs of Claim") relating to the obligations and liabilities of the Debtors relating to environmental remediation at numerous sites around the country, including the unreimbursed environmental response costs the EPA has incurred and will incur in the future at the Libby Asbestos Site located in and around Libby, Montana, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.[3]

5.    Proof of Claim No. 9634 seeks cost recovery from the Debtor W. R. Grace & Co.-Conn. in connection with the EPA's response actions at, among other sites, the Libby Asbestos Site.    Proof of Claim No. 9635 seeks cost recovery from Debtor Kootenai Development Company in connection with the EPA's response actions at the Libby Asbestos Site.

---

[3]    Claim number 9634 also included claims for at least 31 other environmental sites around the country. The claims for those sites have been resolved pursuant to a separate Settlement Agreement executed between the Debtors and the United States in December, 2007 which is the subject of a pending motion for approval (Docket No. 17670) presently scheduled to be heard by the Court on April 21, 2008.

## Settlement

6. To avoid protracted litigation and resolve their liability in connection with the Libby Asbestos Site, the Debtors and the United States have agreed to a settlement as outlined in the attached Settlement Agreement.

7. The Settlement Agreement resolves the Proofs of Claim for Debtors' liabilities for Past and Future Response Costs at the Libby Asbestos Site, with the exception of Operable Unit 3 ("OU3"), for a total of $250 million. As set forth in the Settlement Agreement, "Libby Asbestos Site" means "the Zonolite Mine and all areas (including any structure, soil, air, water, sediment or receptor) in and near Lincoln County, Montana, that have been contaminated by natural or human caused migration of hazardous substances and/or pollutants or contaminants from the Zonolite Mine." OU3 means the "property in or around the Zonolite Mine owned by W. R. Grace or Grace-owned subsidiaries (excluding OU-2) and any area (including any structure, soil, air, water, sediment or receptor) impacted by the release and/or release and subsequent migration of hazardous substances and/or pollutants or contaminants from such property, including, but not limited to, the mine property, the Kootenai River and the sediments therein, Rainey Creek, Rainey Creek Road and areas in which tree bark is contaminated with such hazardous substances and/or pollutants and contaminants."

8. The Settlement Agreement calls for the entire settlement amount (including interest) to be paid by the Debtors within 30 days of the Bankruptcy Court's entry of a final order approving the Settlement Agreement.

9.    Interest begins to accrue as specified in the Settlement Agreement, from the date the United States submits a response to comments or notification that no comments were received in accordance with Paragraph 35 of the Settlement Agreement (provided that the United States does not withdraw its consent to the Settlement Agreement as not being in the public interest based on the comments received) through the date of payment.

## Relief Requested

10.    By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Debtors' execution of the Settlement Agreement; (ii) allowing the Proofs of Claim in the sums provided for herein; (iii) granting the Debtors authority to consummate the transactions contemplated in the Settlement Agreement, including making the payment to the United States of $250 million and accrued interest, if any, as set forth in the Settlement Agreement; and (iv) granting such other relief as may be appropriate.

## Basis for Relief

## Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a)

11.    This Court has the statutory authority to authorize and approve the Settlement Agreement, and the payment contemplated therein, pursuant to Bankruptcy Code sections 105(a) and 363(b) and Bankruptcy Rule 9019.

12.    Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...."  11 U.S.C. §363(b)(1).

13.     This Court may authorize the Debtors to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by some "articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

14.     A settlement of claims and causes of action by a debtor in possession constitutes a use of the property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999). If a settlement is outside the ordinary course of business of the debtor, it requires the approval of the bankruptcy court pursuant to Bankruptcy Code section 363(b).

15.     Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citations omitted). Indeed, compromises are favored in bankruptcy since they minimize litigation and expedite the administration of a bankruptcy case. See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., 2006 WL 2842462, at *3 (D. Del. 2006).

16.    Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See Martin, 91 F.3d at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

17.    The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established.  This standard includes consideration of the following four factors:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  Id.; see also In re Nutraquest, Inc., 434 F.3d 639, 644-45 (3d Cir. 2006).

18.    It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities."  Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)).  Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness."  World Health Alternatives, 344 B.R. at 296 (citations omitted); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

**Application of Standards for Approval of a Settlement to the Facts of This Case**

19.     The Debtors have determined that entry into the Settlement Agreement is in the best interests of the Debtors and their estates and serves a public interest.  The Settlement Agreement was the product of a rigorous negotiation process, is fair and reasonable, and is within the reasonable range of litigation possibilities.  Therefore, entry into the Settlement Agreement is within the Debtors' sound business judgment.

20.     The Settlement Agreement prevents the incurrence of significant transaction costs and cost-effectively resolves significant environmental liabilities of the Debtors.  The Bankruptcy Court's approval of the Settlement Agreement will resolve the United States' Proofs of Claim without forcing any additional litigation.  For an amount of $250 million to be paid upon the entry of a final order approving the Settlement Agreement, the settlement will eliminate current claims, plus unquantified potential future claims against the Debtors' estates, which claims have been estimated to approach $350 million (present value).

21.     The settlement will preclude any claims concerning the Debtors' responsibility regarding remediation or other liability with respect to the Libby Asbestos Site superfund proceedings with the exception of OU3 (as defined in the Settlement Agreement), and will constitute a final resolution of the Debtors' liability relating thereto.  Under the Settlement Agreement, the United States will provide the Debtors with a legal shield from third party claims related to the Libby Site superfund proceedings, known as contribution protection, and a covenant not to sue.

22.    The Libby Asbestos Site is the single largest and most costly of the Debtors' environmental remediation sites and presents a high degree of risk to the Debtors. As is the case with any superfund site, included in the additional remediation risk is the potential discovery of new or enlarged areas of contamination.   There is also the possibility that areas already remediated will have to be revisited after site specific cleanup goals have been established. The probability or magnitude of the cleanup and restoration costs of any additional locations cannot be determined. The Settlement Agreement eliminates all unknown and unquantifiable future risk to the Debtors.

23.    Taking into account the large geographic area covered by the Settlement Agreement, the resolution of potentially unknown future liabilities, and that the settlement amount of $250 million is considerably less than the $350 million (present value) sought by EPA, this settlement is well within the potential recovery EPA would likely seek in a litigated resolution of these claims.  Litigating the issues raised in the Proofs of Claim  would be lengthy, complex, and expensive for the Debtors. The settlement benefits the Debtors' estate because of the greatly reduced amount of the compromise settlement in comparison to the amount claimed, in addition to saving millions of dollars in potential litigation costs.

24.    In prior litigation involving the EPA's remediation activities at the Libby Asbestos Site, the Debtors raised legal issues regarding the need for, effectiveness of, and magnitude of the EPA's remediation.  The U.S. District Court for Montana rejected the Debtors' objections and awarded the EPA the full amount of its remediation claims, for both past and future costs.  The U.S. Court of Appeals for the Ninth Circuit affirmed the District Court's decision, and the Supreme Court denied the Debtors' petition for certiorari.[4]  While Debtors would intend to challenge the reasonableness of EPA's remediation costs incurred since 2001, given its prior lack of success in challenging the propriety of the EPA's Response Costs, there would be significant risk the Debtors would not be successful.

25.    The Libby Asbestos Site has been a substantial drain on the Debtors' legal and technical resources which have been tied up for years responding to regulatory actions relating to the Libby Asbestos Site.  Substantial outside legal and consultancy fees have been and will continue to be incurred if this Settlement Agreement is not approved by the Bankruptcy Court. With the approval of this Settlement Agreement, the above-described drain on the Debtors' financial, professional, technical and corporate resources essentially would terminate with respect to remediation responsibilities.

26.    The Debtors believe it is of greater benefit to resolve the uncertainty of the liabilities of the Libby Asbestos Site than to expend resources litigating them.  The Debtors' resources should be directed to resolving their environmental liabilities rather than to avoidable and protracted litigation.

---

[4]    United States of America v. W.R. Grace & Co., 429 F.3d 1224 (9th Cir. 2005) (cert. denied W.R. Grace & Co. v. U.S., 127 S.Ct. 379 (2006)).

27.    Finally, approval of the Settlement Agreement benefits the public.  Such approval will support and should fully fund remediation of the Libby Asbestos Site.  The Settlement Agreement provides assurance to the creditors that environmental liabilities associated with the Libby Asbestos Site are fully addressed and permanently resolved.  Clearly, the resolution of environmental claims at the Libby Asbestos Site serves the public interest.

28.    For the above reasons, the Debtors believe that the Settlement Agreement represents a reasonable settlement of the United States' Proofs of Claim and that the Bankruptcy Court should approve the Settlement Agreement.

## Conclusion

29.    The proposed Settlement Agreement is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest because it is the best settlement attainable given all the facts and circumstances.  In addition, the Debtors reasonably believe that the relief requested in this Motion will aid in the expeditious resolution of these Chapter 11 Cases.  Finally, in the absence of a resolution by settlement, the Debtors will likely incur substantial legal fees and expenses litigating this matter to final judgment. Accordingly, the Debtors have demonstrated a sound business justification for, and public interest in, the execution and approval of the Settlement Agreement.

### Notice

30.     Notice of this Motion has been given to:  (i) the office of the United States

Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for

the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in

these Chapter 11 Cases, (v) counsel to the Future Claimants' Representative; (vi) those parties

that requested service and notice of papers in accordance with Bankruptcy Rule 2002; and

(vii) counsel to the United States and the State of Montana.  In light of the nature of the relief

requested, the Debtors submit that no further notice is required.

### No Prior Request

31.     No prior motion or application for the relief requested herein has been made to

this or any other court.

32.     The Debtors respectfully request that the hearing on this Motion not be held until

the United States informs the Court of any public comment on the Settlement Agreement and of

the United States' responses to these comments, consistent with Section XVIII of the Settlement

Agreement.

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form attached as Exhibit B hereto, (i) approving the Debtors' execution of the

Settlement Agreement attached as Exhibit A hereto, (ii) allowing the Proofs of Claim in the sums

provided for herein; (iii) authorizing the Debtors to consummate the transactions contemplated in

the Settlement Agreement, including making the payment to the United States of $250 million

and accrued interest, if any, and (iv) granting such other relief as may be just or proper.

Dated: March 12, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession