IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: :<br><br>W.R. GRACE & CO., et al., :<br><br>  Debtors. : | CIVIL ACTION NO. 07-536 |
| STATE OF NEW JERSEY,<br>DEPARTMENT OF ENVIRONMENTAL<br>PROTECTION, :<br><br>  Appellants, :<br><br>  v. :<br><br>W.R. GRACE & CO., et al., :<br><br>  Appellees. : | BANKRUPTCY CASE NO. 01-1139 (JKF) |

## MEMORANDUM

BUCKWALTER, S. J.                                                                 March 11, 2008

### I. INTRODUCTION

This appeal follows an August 2, 2007, Bankruptcy Court order denying the motion of the State of New Jersey, Department of Environmental Protection, for leave to file a late proof of claim. For the reasons stated below, the Bankruptcy Court's order is affirmed.

## II. BACKGROUND[1]

From 1950 to 1994, W.R. Grace ("Grace") operated a vermiculite processing plant located in Hamilton Township, Mercer County, New Jersey. This plant is an "industrial establishment" as defined under New Jersey's Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6 -13. The ISRA imposes a self-executing duty on owners and operators of industrial sites to disclose hazardous materials at the site upon closing. Id. Grace's 1994 closing of the Hamilton plant triggered the ISRA, prompting Grace to submit an environmental condition report in 1995 to the New Jersey Department of Environmental Protection ("NJDEP").

In this 1995 report, Grace certified that they did not use asbestos-containing materials at the Hamilton Plant, representing that the vermiculite processed at the plant did not have an asbestos content of more than one percent by weight--the regulatory threshold for asbestos-containing materials. Further, Grace declared in the report that any hazardous substances discharged at the plant had been remediated in accordance with the applicable code. The NJDEP relied on this alleged fraud and misrepresentation and issued No Further Action letters to Grace, indicating that there was no need to test the soil and that no further clean up at the plant was necessary.

In October 2000, the United States Environmental Protection Agency ("EPA") began sampling the soil at the plant and discovered high concentrations of asbestos. In the meantime, Grace and its debtor affiliates (collectively, the "Appellees") filed for Chapter 11 bankruptcy in April 2001.

---

[1] The parties are familiar with the facts and thus the Court will summarize only those facts necessary for the subsequent discussion. The factual summary has been compiled from the parties' briefs on appeal.

2

The parties dispute when the NJDEP became aware of the alleged false statements and misrepresentations in the 1995 Grace Report, and thus when it became aware of the penalty claim. Appellees' June 2001 Schedules contained multiple entries for the NJDEP, but they were listed as remediations rather than penalties, and thus NJDEP did not investigate further. The NJDEP was served with copies of the Bar Date Notice in June of 2002, listing the Bar Date of March 31, 2003, but again the NJDEP asserts it was unaware of the potential penalty claim. In November 2002, the NJDEP received a memo from the EPA titled "Request for Time Critical Removal Action at Hamilton Plant" which identified the 1995 Grace report as being inaccurate. The NJDEP purports to have finally discovered the penalty claim in the fall of 2003, six months after the bar date, when the New Jersey Department of Health asked it to comment on a report of testing that was done at the Hamilton site. Appellees counter that the prior correspondence, mainly the Bar Date Notice and the November 2002 memo, put the NJDEP on notice of its penalty claims.

In April 2004, the EPA completed the first phase of remediation at the Hamilton Plant, with the final stage beginning in 2006. Meanwhile, in June 2005, the NJDEP filed a state court action against Grace seeking civil penalties for misrepresentation and false statements in the 1995 Grace report. In September 2005, Grace filed a complaint in the Bankruptcy Court for declaratory and injunctive relief, to which the Court issued a temporary stay on the state court action. The state court action was also removed to Federal District Court at this time, prompting the NJDEP to file a motion to remand arguing that the action fell within its police powers and should remain in state court. That Motion is still pending in the District Court of New Jersey. Anticipating a settlement with Grace, the NJDEP did not immediately file a proof of claim with

the Bankruptcy Court. However, upon discovering that settlement with Grace was unrealistic since the parties could not agree on the appropriate penalty, the NJDEP sought permission to file a late proof of claim in Appellees' bankruptcy proceedings on April 26, 2007. On August 2, 2007, the Bankruptcy Court entered an order denying the NJDEP's motion. This appeal followed.

## III. STANDARD

This Court must accept the Bankruptcy Court's factual determinations unless those determinations are clearly erroneous. See Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . ."). The Court reviews the Bankruptcy Court's legal decisions de novo. In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999). The Bankruptcy Court's decision to permit or deny a creditor to file a late proof of claim is reviewed for abuse of discretion. In re Vertientes, Ltd., 845 F.2d 57, 59 (3d Cir. 1988). The Bankruptcy Court's determination regarding the existence of excusable neglect is also reviewed for abuse of discretion. Jones v. Chemetron Corp., 212 F.3d 199, 205 (3d Cir. 2000) (citing In re Vertientes, 845 F.2d at 59); In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 320 (3d Cir. 2001). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of the facts." In re O'Brien, 188 F.3d at 122.

## IV. DISCUSSION

While the NJDEP presents this appeal in the form of several issues, ultimately this appeal revolves around the sole issue of whether the Bankruptcy Court erred in denying the NJDEP's motion to file a late proof of claim. In accordance with Bankruptcy Rule 9006(b)(1), a

court may, in its discretion, accept a late-filed proof of claim where the claimant's failure to act timely was the result of "excusable neglect." Fed. R. Bankr. P. 9006(b)(1). The burden of proving excusable neglect lies with the movant. Chemetron, 212 F.3d at 205. In Pioneer Inv. Services v. Brunswick Associates, 507 U.S. 380 (1993), the Supreme Court clarified the inquiry to be made in determining whether a movant has established excusable neglect.

> [T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Pioneer, 507 U.S. at 394 (footnote omitted). "[I]gnorance of one's own claim does not constitute excusable neglect." In re Best Prods. Co., Inc., 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992); see Chemetron, 212 F.3d at 205.

In the present matter, after reviewing the entire record and all relevant circumstances, and taking into account the factors outlined in Pioneer, the Court finds that the Bankruptcy Court did not abuse its discretion in denying the NJDEP's motion to file a late claim. Furthermore, the Court agrees with the Bankruptcy Court in finding that the NJDEP failed to establish that its late filing was the result of excusable neglect. In showing that the NJDEP's motion was properly denied, the Court will address the factors outlined in Pioneer, as well as the alternative arguments presented by the NJDEP.

A. **Pioneer Factors:**

   **1. The Danger of Prejudice to the Debtor**

The Third Circuit has enumerated several factors to be considered by bankruptcy courts when examining prejudice:

> [1] the size of the claim with respect to the rest of the estate; [2] whether allowing the late claim would have an adverse impact on the judicial administration of the case; [3] whether the plan was filed or confirmed with knowledge of the existence of the claim; [4] the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and [5] whether allowing the claim open the floodgates to other similar claims.

In re O'Brien, 188 F.3d at 126 (citing In re Keene Corp., 188 B.R. 903, 912-13 (Bankr. S.D.N.Y. 1995)).

The Bankruptcy Court found the danger of prejudice to be the only Pioneer factor that did not clearly favor Appellees, but nevertheless determined that it ultimately weighed against the NJDEP. (Appellants' Br., App. Volume I, 29a:2–29a:7). This Court agrees, and sees no abuse of discretion. The Bankruptcy Court weighed all of the above factors within the prejudice analysis before finding that allowing the NJDEP's late claim would be prejudicial to the estate. Noting that the plan was yet to be confirmed, the Bankruptcy Court discussed in detail the time and energy invested by Appellees in working to resolve claims. (Appellants' Br., App. Volume I, 28a:7–29a:7). The Bankruptcy Court concluded that the claim of $31 million was substantial regardless of how it was classified under the current plan, and determined that it "could indeed throw a monkeywrench" into the distributions provided if it were allowed. (Id.) As the Bankruptcy Court addressed this factor thoroughly, there is no basis for a finding that the Bankruptcy Court abused its discretion.

Furthermore, upon our own review of the facts, this Court agrees with the Bankruptcy Court's reasoning. The size of the claim—approximately $31 million—is indeed significant, even in light of the NJDEP's argument that Appellees spent $17 million in attorneys' fees during a particular three-month time period. (Appellants' Br. 14-15). Furthermore, there is a

plan on file, and while it has yet to be confirmed, considerable bargaining has occurred and progress made towards confirmation. Entering this claim now would likely disrupt the plan and its potential for confirmation. The only factor in the NJDEP's favor is that this penalty claim is unique and thus unlikely to open the floodgates to additional untimely claims. Nevertheless, the other factors in the prejudice analysis weigh against the NJDEP, and allowing the claim at this late date would most certainly adversely impact the judicial administration of the estate.

### 2. The Length of Delay and Its Potential Impact on Judicial Proceedings

The Bankruptcy Court set March 31, 2003, as the Bar Date in this matter; the NJDEP filed its motion for leave to file a late claim on April 26, 2007. Therefore, the length of delay at issue is a period of just over four years. The Third Circuit has instructed courts to consider the length of the delay in absolute terms. In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 130 (3d Cir. 1999). Courts have refused to find excusable neglect in cases with much shorter periods of delay. See, e.g., In re Trump Taj Mahal Assocs., 156 B.R. 928 (Bankr. D. N.J. 1993) (finding that late claimants failed to establish excusable neglect after delay of one year). On the other hand, the delay in cases where late claimants have established excusable neglect are significantly shorter than the delay at issue here. See Pioneer, 507 U.S. at 384 (delay of twenty days between late claimants' filing and passing of the bar date); In re O'Brien, 188 F.3d at 130 (finding excusable neglect where actual delay was approximately two months).

At oral arguments, the Bankruptcy Court found the delay to be substantial, thus weighing heavily against the NJDEP. (Appellants' Brief, App. Volume I, 21a:7--22a:4). Again, the Court agrees and finds no abuse of discretion. Regardless of the reason, a delay of four years is undoubtedly significant. Furthermore, as discussed, the delay's potential impact on the judicial

proceedings is apparent.    The Court therefore agrees with the Bankruptcy Court that this factor favors Appellees as well.

### 3. The Reason for Delay, Including Whether it was Within the Reasonable Control of the Movant

The NJDEP admits that, at best, they became aware of the penalty claim in the Fall of 2003 with the New Jersey Department of Health and Senior Services' request to comment on a draft Health Assessment for the plant. (Appellants' Br. 8; Appellants' Reply Br. 7). The NJDEP attributes its late filing to having not been aware of the claim until after the March 31, 2003 Bar Date. After learning of the claim, the NJDEP filed a complaint against Grace in state court seeking to fix liability. (Appellants' Brief, App. Volume I, 7a:3–7a:7.) The NJDEP's counsel argued to the Bankruptcy Court that it did not file a proof of claim at this time because it thought it would litigate the claim, settle it, or at least have the penalty fixed before the NJDEP filed in the Bankruptcy Court because it had already missed the Bar Date. (Appellants' Br., App. Volume I, 21a:3-21a:6).

As with the previous factors, the Court finds no abuse of discretion in the Bankruptcy Court's finding that this factor also weighed heavily against the NJDEP.  With respect to the first six months of delay attributable to the NJDEP claiming to not having been aware of the claim, the Court recognizes that this was arguably caused by Grace's alleged fraud. However, with respect to the balance of the four year delay, the reason provided by the NJDEP is not compelling and was entirely within its control.  As the Bankruptcy Court stated, the NJDEP could have filed a proof of claim as to an unliquidated amount and continued to conduct negotiations and later amend it to set out a liquidated claim. (Appellants' Brief, App. Volume 1,

28a:2–28a:6). Therefore, the Court concludes that the NJDEP's reason for delay does little towards establishing excusable neglect. More importantly, the Court finds that the Bankruptcy Court did not abuse its discretion in reaching the same conclusion.

### 4. Whether the Movant Acted in Good Faith

The Bankruptcy Court found this factor weighed heavily against the NJDEP but did not discuss it in any further detail. (Appellants' Brief, App. Volume I, 26a:32–26a:25). Appellees claim that the NJDEP's lack of good faith is demonstrated by it attributing its delay to governmental bureaucracy, while at the same time admitting that it consciously delayed in the hopes to reach a settlement in state court. (Appellees' Br. 17). The NJDEP does not address this argument specifically in its Reply, but does expend considerable effort arguing that the circumstances here differ in that the delay in its discovery was caused by Grace having fraudulently concealed the claim. Nevertheless, as discussed above, the Court finds the NJDEP's delay caused by its hopes of settling the state court action to be inexcusable. The Court concludes that there was no abuse of discretion in the Bankruptcy Court's determination that this factor favors Appellees.

### B. Additional Arguments

The NJDEP makes several additional arguments it asks the Court to consider in addressing all relevant circumstances. Mainly, the NJDEP argues that the Bankruptcy Court has "subverted the Industrial Site Recovery Act, which depends on full disclosure, and has reversed the burden of proof found in that statute by placing the burden of proof on the [NJDEP] because the responsible party is in bankruptcy." (Appellants' Reply Br. 1). The NJDEP goes on to contend that in not permitting its claim, the Bankruptcy Court has thwarted the ISRA and

9

imposed on it a burden to verify the veracity of the thousands of certifications submitted to the Department as true. (Appellants' Reply Br. 9-10). The NJDEP suggests that this practice creates an incentive to declare bankruptcy and, in the current situation, effectively rewards Appellees. The NJDEP further argues that Pioneer "does not contemplate a case where the debtor successfully hid its violation from the State and then cried 'too late' when it found out." (Appellants' Reply Br. 9).

The Court is mindful of the effect of not allowing the NJDEP to file a late proof of claim, but considering all relevant circumstances, the NJDEP's alternative arguments have little bearing. First, the NJDEP's arguments are predicated on its delay being caused by lack of knowledge, when it is clear that much of the delay occurred after the NJDEP admits it was aware of its claim. As the Bankruptcy Court stated, had the NJDEP filed a proof claim upon discovering its claim six months after the Bar Date, they would have a much better argument for excusable neglect. (Appellants' Br., App. Volume I, 21a:10–21a:21). However, in light of the NJDEP filing four years after the Bar Date, the excuse of ignorance does not withstand judicial scrutiny. Second, the Pioneer factors all weigh in favor of Appellees, and the circumstances here do not justify reworking this framework. Finally, limiting our review to determining whether there was an abuse of discretion, nothing supports a finding that the Bankruptcy Court did not make a thorough and well reasoned decision in denying the NJDEP's motion.

## V. CONCLUSION

For the reasons stated above, the Court finds no abuse of discretion by the Bankruptcy Court, and that the NJDEP has not established excusable neglect. Therefore, the judgment of the Bankruptcy Court is affirmed. An appropriate order follows.