IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., <u>et al.</u>, | ) | Case No. 01-01139 (JFK) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## SETTLEMENT AGREEMENT

## RESOLVING THE UNITED STATES' PROOF OF CLAIM NO. 9634

## AS IT RELATES TO THE CURTIS BAY FUSRAP MATTER

# SETTLEMENT AGREEMENT
# RESOLVING THE UNITED STATES' PROOF OF CLAIM NO. 9634
# AS IT RELATES TO THE CURTIS BAY FUSRAP MATTER

## Table of Contents

Definitions ............................................................................................................... 3

Jurisdiction ............................................................................................................. 5

Parties Bound; Succession and Assignment ........................................................ 6

Treatment of Claim for Pre-Petition Past Costs .................................................. 6

Treatment of Certain Claim for Post-Petition Past Costs .................................... 6

Remedial Work to be Performed .......................................................................... 6

Procedures for Cooperation ................................................................................. 10

Allocation of Costs .............................................................................................. 11

Treatment of Allowed Claims .............................................................................. 15

Instructions for Distributions to United States .................................................... 15

Right of Entry ....................................................................................................... 15

Dispute Resolution .............................................................................................. 17

Covenant Not to Sue and Reservation of Rights ................................................ 21

Contribution Protection ........................................................................................ 23

Indemnification and Insurance ............................................................................ 24

Notices and Submissions .................................................................................... 26

Lodging and Opportunity for Public Comment .................................................... 27

Amendments/Integration and Counterparts ....................................................... 29

No Third Party Benefits Conferred ...................................................................... 29

Retention of Jurisdiction ...................................................................................... 29

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JFK) |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |

## SETTLEMENT AGREEMENT
## RESOLVING THE UNITED STATES' PROOF OF CLAIM NO. 9634
## AS IT RELATES TO THE CURTIS BAY FUSRAP MATTER

WHEREAS W.R. Grace & Co. and certain of its subsidiaries (collectively the "Debtors")

filed with the United States Bankruptcy Court for the District of Delaware voluntary petitions for

relief under Title 11 of the United States Code on April 2, 2001 which are jointly administered as

Case No. 01-01139 (JFK) (the "Bankruptcy Cases");

WHEREAS the United States, on behalf of the United States Army Corps of Engineers

("USACE"), contends that certain of the Debtors are liable under the Comprehensive

Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.- Conn., A-1 Bit & Tool Co., Inc., Alewife Boston, Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc. Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston, Ltd., G.C. Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G. C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B, Inc., Grace A-B II, Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G, Inc., Grace H-G II, Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, LB Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

seq., for response costs incurred and to be incurred by USACE under the Formerly Utilized Sites

Remedial Action Program ("FUSRAP") in the course of responding to releases or threats of

releases of hazardous substances into the environment at the Curtis Bay, Maryland facility of W.

R. Grace & Co.-Conn. ("Grace");

WHEREAS the United States, on behalf of USACE, has filed an unsecured, non-priority

proof of claim, Claim No. 9634, against the Debtor W.R. Grace & Co.-Conn. in connection with

the Curtis Bay FUSRAP matter in the amount of $102 million ("FUSRAP Matter") (Claim No.

9634 also raised certain other claims, which will be resolved separately);

WHEREAS the portion of Claim No. 9634 that relates solely to the FUSRAP Matter is

resolved by this Settlement Agreement;

WHEREAS the Debtors dispute the United States' contentions and, but for this

Settlement Agreement, would object, in whole or in part, to its proof of claim regarding the

FUSRAP Matter;

WHEREAS the Debtors seek, to the maximum extent permitted by law, to obtain

protection from and against all Claims that have been or may in the future be asserted for

response costs or the performance of work, through the resolution of the FUSRAP Matter and all

CERCLA liability related to materials associated with the work performed at the Curtis Bay

monazite plant in the 1950s under the July 18, 1955 contract between the U.S. Atomic Energy

Commission and Rare Earths, Inc., AT (49-6)-993, pertaining to monazite sand processing at

Grace's Curtis Bay site, and any amendment to that contract entered into by the original

contracting parties or their successors or assigns, including but not limited to the revision dated

2

November 16, 1958 (the original contracts together with amendments are referred to as the "AEC Contract");

WHEREAS the Debtors and USACE wish to resolve their differences with respect to the FUSRAP Matter as provided herein;

WHEREAS in consideration of, and in exchange for, the promises and covenants herein, including, without limitation, the covenants not to sue set forth in Paragraphs 19, 21, 24, and 25 and, subject to the provisions of Paragraphs 32-34, intending to be legally bound hereby, the Debtors and the United States hereby agree to the terms and provisions of this Settlement Agreement;

WHEREAS settlement of the matters governed by this Settlement Agreement is in the public interest and is an appropriate means of resolving these matters;

NOW, THEREFORE, without the admission of liability or any adjudication on any issue of fact or law, and upon the consent and agreement of the parties to this Settlement Agreement by their attorneys and authorized officials, it is hereby agreed as follows:

## DEFINITIONS

1.      In this Agreement, the following terms shall have the following meanings:

A.      "Allowed Administrative Expense Claim" shall mean a claim for an administrative expense as that term is referred to in Section 503(b) of the Bankruptcy Code which is not subject to objection and is allowed in accordance with the provisions of the Bankruptcy Code.

B.      "Allowed General Unsecured Claim" shall mean a non-priority, unsecured Claim that is not subject to objection and is allowed in accordance with the provisions of the Bankruptcy Code.

C.    "ARARs" shall mean "applicable requirements" and "relevant and appropriate requirements" as those terms are defined at 40 C.F.R. § 300.5.

D.    "Building 23" refers to the structure known as Building 23 that is located within Grace Davison's Curtis Bay, Baltimore, Maryland plant.   The southwest quadrant of Building 23 was used in the 1950's for the processing of monazite sand pursuant to the AEC Contract.

E.     "CERCLA" refers to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as now in effect or hereafter amended.

F.    "Claim" has the meaning provided in Section 101(5) of the Bankruptcy Code.

G.    "Curtis Bay FUSRAP Site" shall be construed to include the following areas of the Grace Davison plant located at 5500 Chemical Road, Baltimore MD:  (i) the southwest quadrant of Building 23; (ii) the Radioactive Waste Disposal Area; and (iii) any other areas where FUSRAP Material is located.

H.    "Days" shall mean calendar days unless otherwise stated expressly in this Settlement Agreement, or unless otherwise agreed to by the Parties in writing.

I.    "Debtors" shall mean W.R. Grace & Co. and those of its subsidiaries that filed voluntary petitions for relief on April 2, 2001, as debtors, debtors-in-possession or in a new or reorganized form as a result of the Bankruptcy Cases.

J.    "Effective Date" means the date on which this Settlement Agreement is approved by the Bankruptcy Court.

K.    "Final Status Survey" means the survey performed to verify completion of the work, as further defined in each Record of Decision ("ROD").

-4-

L.     "FUSRAP Material" shall mean wastes, residues or other materials from, or requiring remediation as a result of, monazite sand processing operations performed at the Curtis Bay FUSRAP Site in the 1950s under the AEC Contract.

M.     "FUSRAP Matter" shall mean the portion of the unsecured, non-priority proof of claim, Claim No. 9634, that United States filed against the Debtors that relates to response costs to address FUSRAP Material.

N.     "Past Costs" means costs incurred by the United States, Debtors, or their respective contractors in connection with FUSRAP Materials or the FUSRAP Matter prior to the Effective Date of this Settlement Agreement, including both Pre-petition and Post-petition costs.

O.     "Plan of Reorganization" or "Plan" means any plan of reorganization that is confirmed and becomes effective in the Bankruptcy Cases.

P.     "Post-petition" means the time period from and after April 3, 2001.

Q.     "Pre-petition" means the time period on or prior to April 2, 2001.

R.     "Radioactive Waste Disposal Area" ("RWDA") refers to all areas encompassed in the USACE RWDA Record of Decision for the Curtis Bay FUSRAP site.

S.     "RCRA" refers to the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq., as now in effect or hereafter amended.

T.     "United States" means the United States of America, including its agencies, departments and instrumentalities.

## JURISDICTION

2.     The Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334.

### PARTIES BOUND; SUCCESSION AND ASSIGNMENT

3.      This Settlement Agreement applies to, is binding upon, and shall inure to the

benefit of the United States, and the Debtors, as well as the Debtors' legal successors and

assigns, and any trustee, examiner or receiver appointed in the Bankruptcy Cases.

### TREATMENT OF CLAIM FOR PRE-PETITION PAST COSTS

4.      In settlement and satisfaction of the claim of the United States for all Pre-petition

Past Costs with respect to the FUSRAP Matter, the United States on behalf of USACE shall have

Allowed General Unsecured Claims in the amount of $0.  The USACE shall receive no

distributions from the Debtors and their estates in the Bankruptcy Cases with respect to the

Debtors' liabilities and obligations under CERCLA for the FUSRAP Matter other than as set

forth in this Settlement Agreement.

### TREATMENT OF CLAIM FOR POST-PETITION PAST COSTS

5.      In settlement and satisfaction of the claim of the United States for all Post-petition

Past Costs incurred in connection with the FUSRAP Matter, the United States on behalf of

USACE shall have Allowed Administrative Expense Claims in the amount of $750,000.00.

These Allowed Administrative Expense Claims shall be paid as set forth in Paragraph 14

(Instructions for Distributions to United States).

### REMEDIAL WORK TO BE PERFORMED

6.      Notwithstanding any other provisions of this Settlement Agreement and except as

set forth in Paragraph 7 and Subparagraph 6.E, the parties shall undertake the actions provided

for in this Paragraph.  The roles and responsibilities for specific tasks are set forth in Attachment

1, "Tasks and Responsibilities."  As with other FUSRAP actions for which the USACE has

ultimate responsibility, the 42 U.S.C. § 9621(e)(1) permit exemption extends to the response

actions performed under this Settlement Agreement by Debtors on-site, as defined in 40 C.F.R. § 300.400(e).

A.   Grace's remedial design contractor will prepare remedial design document(s) within 60 days after the later of joint selection of contractor or final issuance of the relevant ROD.  Pursuant to Attachment 1, "Tasks and Responsibilities" the parties have joint responsibility for review and approval of remedial design documents and shall endeavor to complete this process within 90 days of receipt of the design document(s) from the contractor. This process has been completed for Building 23, with the resulting Building 23 Remedial Design Scope (dated April, 2005).

B.   Grace's remedial action contractor will prepare work plans within 60 days after award of a remedial action contract.  Pursuant to Attachment 1, "Tasks and Responsibilities" the parties have joint responsibility for review and approval of work plans and shall endeavor to complete this process within 90 days of receipt of the work plans from the contractor.

C.   Grace or the USACE may seek to modify portions of the remedial design documents or work plans as follows.  By agreement at any time, the representatives from Grace and the USACE may make modifications to these final documents.  This flexibility is intended to enable the parties to adjust to changing conditions or unanticipated circumstances.  The parties must document all modifications in writing, with copies provided promptly to both the USACE and Grace's Project Managers.  The parties will address any disputes regarding proposed modifications as set forth below in Paragraphs 17 and 18 (Dispute Resolution).

D.   Grace shall implement the remedial actions for Building 23 pursuant to the final work plan(s) and Attachment 1, "Tasks and Responsibilities."

E.      Grace shall implement the remedial actions for the RWDA pursuant to the final work plan(s) and Attachment 1, "Tasks and Responsibilities," unless Grace provides written notice to USACE within 30 days after USACE issues the final RWDA ROD, indicating that Grace objects to and declines to perform the selected remedy because: i) the estimated costs, as set forth in the final FS, of the selected remedial alternative exceed $40 Million; ii) the selected remedy requires the application of a remedial technology that Grace believes has not been demonstrated previously on a site of similar scope and characteristics (e.g. soil washing); or iii) Grace believes that the selected remedy or a significant element of the remedy is inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.  If Grace declines to perform the RWDA ROD, then the otherwise applicable obligations and cost allocations set forth in this Settlement Agreement with respect to the RWDA will not be binding upon Debtors and the United States, and each party reserves all of its rights with respect to the prosecution and defense of any claims associated with the RWDA.

F.      If either party identifies FUSRAP Material that is not otherwise being addressed under the provisions set forth above in Subparagraphs 6.A through 6.E, then that party may notify the other party's Project Manager and the parties will work together to determine how to proceed.

G.      In the event Grace becomes aware of any action or occurrence that causes or threatens a release of a FUSRAP Material at or from the Curtis Bay Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Grace shall promptly take necessary action to prevent, abate, or minimize such release or threat of release and shall, in addition to complying with any applicable notification requirements under Section 103 of CERCLA, 42 U.S.C. § 9603, or any other law, promptly notify USACE of such release or threatened release.  Nothing in this Settlement Agreement is

intended to constitute a waiver of the provisions of Sections 107(d), 121(e) or 123 of CERCLA, 42 U.S.C. §§ 9607(d), 9621(e) and 9623.

       H.     Grace shall perform all actions at the Curtis Bay Site required pursuant to this Settlement Agreement in accordance with all applicable local, State of Maryland, and federal laws and regulations, except as provided in Section 121(e) of CERCLA, 42 U.S.C. § 6921(e), and 40 C.F.R. §§ 300.400(e).

       I.     The deadlines set forth in this Section can be modified by written agreement of the parties.

       7.     If at any time, the United States determines any additional response action, other than that set out in the Building 23 Remedial Design Scope and the RWDA ROD, may be needed for the Curtis Bay FUSRAP Site or FUSRAP Material then immediately upon making such a determination, the United States shall provide to Debtors notice and an opportunity to review content and timing of such additional response action.  Thereafter, Debtors shall have the unilateral option of:

       A.     Performing the additional response action through Grace's contractor(s) pursuant to Attachment 1, "Tasks and Responsibilities" and the same procedures and allocation of costs set forth in this Settlement Agreement for Building 23 and the RWDA; or

       B.     Declining to perform the additional response action, in which case the cost allocations set forth in this Settlement Agreement will not be binding upon Debtors and the United States, and each party reserves all of its rights with respect to the prosecution and defense of any claims associated with the performance of such response action.  In such case, the United States' costs associated with performance of response actions shall not be Allocable Costs, as defined below in Paragraph 9.

## PROCEDURES FOR COOPERATION

8.      The parties agree to cooperate through implementation of the terms and conditions of this Settlement Agreement as set forth in this Section.

A.      USACE and Debtors' Project Managers shall make every reasonable effort to communicate on at least a weekly basis throughout implementation of the response actions pursuant to this Settlement Agreement, including project closeout, to promote regular and ongoing cooperation and exchange of information.

B.      The USACE and Debtors have designated one or more Senior Managers, who are organizationally senior to each Project Manager. The Senior Managers shall make every reasonable effort to communicate with one another on at least a monthly basis throughout implementation of the response actions pursuant to this Settlement Agreement, including project closeout, to promote regular and ongoing cooperation and the exchange of information.

C.      At each level of communication, the USACE and Debtors commit to making every effort to share information and to resolve issues in accordance with the following guiding principles: perform, supervise and oversee work in accordance with best available science and engineering practices, in a manner that is protective of human health, safety and the environment, and in a manner that is cost effective while limiting duplication of efforts and interference with business operations to the maximum extent possible.

D.      Designations of Project Manager and Senior Manager(s):

(i)  For the USACE, the current designated Project Manager is Nicki Fatherly and the current designated Senior Managers are Sesh Lal and David Morrow.

(ii)  For Debtors, the current designated Project Manager is Paul Bucens and the current designated Senior Managers are Mitch Obradovic and Jim Hull.

(iii)  Each party shall notify the other party in writing within two business days if the party is changing its Project Manager or Senior Managers designation.

## ALLOCATION OF COSTS

9.     Allocation of Costs.

A.     The United States and Debtors agree to an allocation of all costs incurred in the performance of response actions undertaken pursuant to Paragraphs 6 and 7, unless excluded in Subparagraphs 9.B or 17.F.  Such costs are hereinafter referred to as "Allocable Costs."  In lieu of any other right or claim for cost recovery or contribution associated with FUSRAP Material and subject to Paragraph 7 and Subparagraph 6.E above (describing circumstances under which Debtors may decline to perform response actions), the United States shall pay sixty percent (60%) of all Allocable Costs and Debtors shall pay forty percent (40%) of all Allocable Costs.  In addition, if Debtor is determined to be liable for, or settles a claim for, damages for injury to, destruction of, or loss of natural resources and the reasonable costs of assessing such injuries in connection with FUSRAP Material, and if a claim, counterclaim, or demand has been made against the United States to pay for or otherwise contribute to such liability, then in resolution of such claim, counterclaim or demand the United States' shall pay sixty percent (60%) of all such natural resource damages and Debtors shall pay forty percent (40%) of such natural resource damages.  The parties agree that this allocation contained in this subparagraph reflects the parties' or their predecessor's roles with respect to CERCLA liability associated with the work performed at the Curtis Bay monazite plant in the 1950s under the AEC Contract.

B.     The United States' costs of response actions associated with FUSRAP Material (including but not limited to oversight, overhead, contractor or subcontractor costs, project management, administrative costs, consultation with other divisions within the Corps or

other agencies, all costs associated with USACE contracting for and conducting the Final Status

Survey, and all other costs) shall not be included within Allocable Costs. Debtors'

administrative, oversight, overhead, or other internal costs associated with coordinating with

USACE, and with procuring and overseeing its remedial contractor(s), shall not be included

within Allocable Costs.

   10. Payment of Allocable Costs.

    A. Debtors agree to receive all invoices from its contractors for Allocable

Costs and make appropriate payments to its contractors for such work. The United States shall

pay its share of the Allocable Costs to Grace as set forth in this Paragraph 10.

    B. Within three (3) months of the Effective Date, and at least every three

months thereafter, Debtors shall provide the USACE with a Statement of Accounting of

Allocable Costs ("Statement of Accounting") incurred by Debtors with copies of invoices or

other documents evidencing such costs. The Debtors shall include a statement that such costs

were incurred consistent with this Settlement Agreement. The procedures for payment under this

Subparagraph shall be as follows:

    (i) Within 30 days of receipt of such a Statement of Accounting, the United

    States on behalf of the USACE shall notify Debtors' Project Manager as to whether it

    will challenge any of the costs identified in the Statement pursuant to the dispute

    resolution process in Subparagraph 10.C below. Such challenge may only be made if the

    United States on behalf of the USACE believes that costs identified in the Statement of

    Accounting: (a) are not Allocable Costs under this Settlement Agreement; or (b) reflect

    an accounting error. If the United States on behalf of the USACE challenges only part of

    the claim for Allocable Costs, the remainder shall be processed as described below,

    without delay.

(ii)    The United States on behalf of the USACE shall make payment of any undisputed portion of the costs identified in the Statement of Accounting as soon as reasonably practicable after receipt of the Statement of Accounting. For any portion that is disputed, the United States on behalf of the USACE shall make payment on the disputed amount as soon as reasonably practicable after the dispute is resolved.  In the event that any payment, whether disputed or not, is not made within 90 days after receipt of the Statement of Accounting, then interest on such amounts shall be paid at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), commencing on the 91st day after receipt of the Statement of Accounting and accruing through the date of payment.  Interest for non-payment shall accrue regardless of whether an amount is in dispute, except that USACE will not be required to pay interest on disputed amounts where USACE ultimately prevails in the dispute.  No such interest shall be considered an Allocable Cost.

(iii)    All payments from the United States on behalf of the USACE to Debtors shall be made by electronic funds transfer pursuant to Grace's instructions.  Debtors shall submit these instructions to the representative of the U.S. Department of Justice designated in Paragraph 31 (Notices and Submissions).

(iv)    The parties may agree to alternate mechanisms for payment, including but not limited to lump sum payments for future costs.

C.    The dispute resolution process described in this Subparagraph 10.C shall apply only to all disputes arising under Paragraph 10.  Any dispute between the Debtors and the United States on behalf of USACE regarding payment of costs shall be the subject of informal negotiations for 30 days from the time of issuance of written notice of the existence of the dispute by USACE.  The period for informal negotiations may be extended by written agreement

between the parties.  In the event that the dispute cannot be resolved by informal negotiations,

then USACE agrees to pay the amount set forth in the Statement of Accounting as soon as

practicable after the end of the informal negotiations period, unless USACE submits the dispute

to the Court for resolution by filing a motion with the Court no later than ten (10) days after

termination of the informal negotiation period.  The motion shall include a description of the

matter in dispute, the efforts made by the parties to resolve it, and the relief requested.

      D.     The parties to this Settlement Agreement recognize and acknowledge that

the payment obligations of the United States on behalf of the USACE under this Settlement

Agreement can only be paid from appropriated funds legally available for such purpose.

Nothing in this Settlement Agreement shall be interpreted or construed as a commitment or

requirement that the United States on behalf of the USACE obligate or pay funds in

contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other law.

      E.     Upon completion of the response actions provided for in this Settlement

Agreement and resolution of all claims for allocation of costs, Debtors shall provide USACE

with a final Statement of Accounting of Allocable Costs ("Final Statement of Accounting"),

which shall be reviewed by USACE.  As requested, Debtors shall make all relevant books,

records, invoices, and other relevant documentation available to USACE for its review of the

Final Statement of Accounting.  USACE shall provide its written review and comments on the

Final Statement of Accounting to Debtors within 120 days of receipt of this Statement.  Within

60 days of Debtors' receipt of USACE's review of the Final Statement of Accounting, the parties

shall make any final adjustments to the parties' Allocable Costs (i.e., credits to Debtors, credits

to USACE) that are necessary to ensure that the payments by the parties are consistent with

Paragraph 9 of this Settlement Agreement.  If such adjustments are not agreed to and made

within that 60 day period, then any remaining disputes relating to payment of Allocable Costs shall be resolved using the Dispute Resolution provisions of Subparagraph 10.C.

## TREATMENT OF ALLOWED CLAIMS

11.    [Reserved]

12.    The Claims allowed in this Settlement Agreement do not constitute, nor shall they be construed as, forfeitures, fines or penalties (or payments in lieu thereof), and nothing herein is intended, or shall be construed, as an admission by Debtors of any facts or any violation of law. Notwithstanding the foregoing, Debtors do agree to comply with all terms of this Settlement Agreement upon the Effective Date.

13.    Proof of Claim No. 9634 shall be deemed satisfied in full insofar as it relates to the FUSRAP Matter in accordance with the terms of this Settlement Agreement.  Moreover, the USACE shall be deemed to have filed a proof of claim for all matters addressed in this Settlement Agreement, which proof of claim shall be deemed satisfied in full in accordance with the terms of this Settlement Agreement.

## INSTRUCTIONS FOR DISTRIBUTIONS TO UNITED STATES

14.     Distributions for Post-Petition Past Costs set forth in Paragraph 5 shall be satisfied by applying a credit against payments that the United States is obligated to make to Debtors pursuant to Paragraphs 9 and 10.

15.    Any other distributions by Debtors to USACE pursuant to this Settlement Agreement shall be made in accordance with instructions provided by USACE, which may include directions for applying a credit.

## RIGHT OF ENTRY

16.    Grace grants to the USACE, its agents, employees, representatives, contractors and assigns, a revocable right of entry upon the property located at 5500 Chemical Road,

Baltimore, Maryland ("Curtis Bay Plant") subject to the terms and conditions set forth in this Paragraph ("Right of Entry").

      A.    This Right of Entry is granted for the USACE to perform tasks related to the implementation of the FUSRAP remedial actions performed by Grace pursuant to this Agreement.   When exercising this right, the USACE agrees to coordinate with Grace's point of contact, Robert Errera or any subsequent Grace designee, to ensure that Grace has adequate advance notice that a USACE representative is scheduled to arrive at the Curtis Bay Plant.

      B.    The USACE understands that the Curtis Bay Plant is an active industrial operation and that scheduling or tasks may be impacted by plant operations.  The USACE further understands that certain locations within the Curtis Bay Plant may contain potentially hazardous levels of radioactive material or other potentially hazardous substances, as well as business confidential materials and operations.  The USACE acknowledges that it is familiar with the history, potential contents, and conditions of the Curtis Bay Plant and that each of its agents, employees, representatives, contractors and assigns is responsible for following health and safety practices and exercising due care appropriate to activities at such an industrial location.  USACE further agrees that each such person shall be responsible for maintaining the confidentiality of information regarding site operations and materials handled there, except with regard to any illegal acts or violations of federal, state or local laws or regulations.

      C.    If any action of the USACE in the exercise of the rights granted herein damages the real or personal property of Debtors, USACE will, in its sole discretion, either repair such damage by restoring the property to its condition immediately prior to the damage or make an appropriate settlement with Debtors.  In no event shall the cost of such restoration or settlement exceed the fair market value of the property at the time immediately preceding the occurrence of any damage requiring restoration.  The USACE's liability under this clause is

subject to the availability of appropriations for such payment, and nothing contained in this

Paragraph may be considered as implying that Congress will at a later date appropriate funds

sufficient to meet any deficiencies for such payment. In addition, USACE's contractor(s) shall

name Grace as an additional insured to USACE's full coverage amount with respect to activities

that are the subject of this grant of a right of entry, and shall furnish Debtors with these

certificates of insurance before each contractor commences work, and thereafter upon request.

The provisions of this clause are without prejudice to any rights Debtors may have to make a

claim under applicable laws for any damages other than those provided for herein.

D.      In addition to complying with applicable federal, state and local health and

safety requirements, the USACE shall comply with any relevant site-specific health and safety

requirements that Grace imposes on its employees and other visitors at the Site.  Grace shall

inform USACE in a timely manner of relevant business confidentiality claims and site-specific

health and safety requirements in force at the property.  USACE shall inform each of its agents,

employees, representatives, contractors and assigns that are utilizing this Right of Entry of the

obligations associated with such claims and requirements.

## DISPUTE RESOLUTION

17.      Any disputes regarding the performance of obligations pursuant to this

Agreement, the scope of this Agreement, or any other matters related to this Agreement shall be

resolved pursuant to the following dispute resolution procedures.  These dispute resolution

procedures shall be the exclusive procedures for resolving disputes under this Settlement

Agreement, except as otherwise set forth in Paragraph 10.  Disputes are to be identified and

resolved at the earliest reasonable stage.

A.      If Debtors' and USACE representatives are unable to reach agreement on

any issue in dispute, the representatives shall immediately elevate the issue to the USACE and

Debtors' Project Managers.  These two Project Managers will confer and make an effort to resolve all issues reasonably and promptly.

(i)      If either party identifies the issue as "time sensitive," then the Project Managers shall make every effort to discuss and resolve the dispute as soon as practicable, but in no event later than 72 hours or such other time frame as they may agree upon in writing.  Calculation of the 72 hours does not include weekends or federal holidays.  An issue is "time sensitive" if either party determines that the absence of a timely resolution may impose an unreasonable increased risk to health, safety or the environment, or may cause an otherwise unnecessary increase in expenditures.  Either party may designate an issue as time sensitive at any point in the dispute resolution process, and this designation is not subject to dispute resolution.

(ii)      For every other issue, the Project Managers shall make every effort to discuss and resolve the dispute within one (1) week, or such other time frame as they may agree upon in writing.

B.      If the USACE and Debtors' Project Managers are unable to resolve an issue within the time frames set forth in Subparagraph 17.A, the Project Managers shall elevate the issue to the USACE and Debtors' Senior Managers.  These Senior Managers will confer and make an effort to resolve all issues reasonably and promptly.

(i)      If either party identifies the issue as time sensitive, then the Senior Managers shall make every effort to discuss and resolve the dispute as soon as practicable, but in no event later than 24 hours or such other time frame as they may agree upon in writing.  Calculation of the 24 hours does not include weekends or federal holidays.

-18-

(ii)    For every other issue, the Senior Managers shall make every effort to discuss and resolve the dispute within one (1) week, or such other time frame as they may agree upon in writing.

C.    If the USACE and Debtors' Senior Managers are unable to resolve an issue within the time frames set forth in Subparagraph 17.B, then the following process shall be followed for exchanging position papers and elevating the dispute.

(i)    Within one week after expiration of the relevant timeframe set forth in Subparagraph 17.B, the USACE will submit to Debtors a written statement of dispute ("USACE Statement of Dispute") setting forth the nature of the dispute, the work affected by the dispute, the USACE position and desired resolution with respect to the dispute, and the information the USACE is relying upon to support its position.  Within one week after receipt of the USACE Statement of Dispute, Debtors will submit to the USACE a written statement of dispute ("Grace Statement of Dispute"), which shall include a written response that sets forth the nature of the dispute, the work affected by the dispute, Debtors' position and desired resolution with respect to the dispute, and the information Debtors are relying upon to support their position.  Throughout the exchange of Statements of Dispute and until one week after Debtors submit their responding Statement of Dispute, the USACE and Debtors agree to continue to engage in informal dispute resolution among the Project Managers and the Senior Managers, and agree to meet as many times as are necessary or appropriate to discuss and attempt resolution of the dispute.

(ii)    If agreement cannot be reached on an issue within one week after Debtors submit their responding Statement of Dispute (or within any extended time period agreed upon by the parties), then the Senior Managers shall elevate the issue to the following

-19-

USACE and Debtors' Senior Executives: Commander for US Army Engineer District, Baltimore, and the Debtors' vice president responsible for Public and Regulatory Affairs, including environmental matters ("Grace VP") (collectively the "Senior Executives"). These Senior Executives will confer and make an effort to resolve all issues reasonably and promptly.  If either party identifies the issue as time sensitive, then the Senior Executives shall make every effort to discuss and resolve the dispute within one (1) work week.  For every other issue, the Senior Managers shall make every effort to discuss and resolve the dispute within thirty (30) days, or such other time frame as they may agree upon in writing.

D.      If upon elevation of the dispute the Grace VP determines on a case specific basis that he or she is not sufficiently available to hear and resolve the dispute in a time and manner consistent with this Agreement, then the Grace VP may delegate his or her responsibilities to the Director of Remedium Group Inc.  Additional delegations from a Senior Executive are only authorized under this Agreement upon written agreement of the parties.

E.      Based upon a request by either Debtors or the USACE, the Senior Managers will make a reasonable effort to use a neutral facilitator for assistance.  The use of facilitator Mickey Benson, who previously worked with the parties in relation to Building 23 issues, is acceptable to both Debtors and the USACE.  The costs of a facilitator shall be paid initially by Grace and shall be part of Allocable Costs subject to partial reimbursement pursuant to Subparagraph 9.A.  The use of a facilitator will not extend the time frame for dispute resolution unless there is written agreement by Debtors and the USACE to extend such time for a specified period.

F.      If agreement is reached pursuant to the foregoing dispute resolution procedures, then the resolution of the matter in dispute shall be reduced to writing.  If no

agreement is reached pursuant to the foregoing dispute resolution procedures, then the matter

may be submitted to the Court by either party within 30 days of expiration of the time period for

Senior Executives to resolve the dispute.  The record for the Court's review shall consist of all

the materials exchanged by the parties (or incorporated by reference in those materials) from

when the dispute resolution is elevated to the Senior Managers to the time relief is sought from

the Court.  The Court may assess against the non-prevailing party the costs of dispute resolution

(except attorneys fees) and costs incurred as a result of any work stoppage due to dispute

resolution (e.g. any standby costs, mobilization costs, cancellation fees, costs of work done under

Paragraph 18 to mitigate adverse consequences, and other similar charges or damages).

18.    Either party has the right to perform work pending resolution of the dispute as

appropriate to mitigate any increased costs associated with a dispute resolution time delay, or

otherwise mitigate any adverse consequences of a time sensitive matter.  USACE agrees that it

will perform work under this Paragraph only to address conditions that USACE believes would

pose significant, current environmental and safety risks that Grace is not addressing during the

dispute resolution process.

## COVENANT NOT TO SUE AND RESERVATION OF RIGHTS

19.    In consideration of all of the foregoing, including, without limitation, the

payments and/or distributions that will be made, the work that will be performed, and the

Allowed Administrative Expense Claims authorized pursuant to the terms of this Settlement

Agreement, and except as specifically provided in Paragraphs 22 through 24, the United States

covenants not to file a civil action or to take any administrative or other action against the

Debtors pursuant to Sections 106, 107 or 113 of CERCLA, 42 U.S.C. §§ 9606, 9607 or 9613 and

Section 7003 of RCRA, 42 U.S.C. § 6973, with respect to the FUSRAP Material.  These

covenants not to sue shall take effect on the Effective Date.

20.     This Settlement Agreement in no way impairs the scope and effect of the Debtors'

discharge under Section 1141 of the Bankruptcy Code as to any third parties or as to any Claims

that are not addressed by this Settlement Agreement.

21.     Without in any way limiting the covenant not to sue (and the reservations thereto)

set forth in Paragraph 19 and notwithstanding any other provision of this Settlement Agreement,

such covenant not to sue shall also apply to the Debtors' successors and assigns, officers,

directors, employees, and trustees, but only to the extent that the alleged liability of the successor

or assign, officer, director, employee, or trustee of any Debtor is based solely on its status as and

in its capacity as a successor or assign, officer, director, employee, or trustee of any Debtor.

22.     The covenants not to sue contained in Paragraphs 19 and 21 of this Settlement

Agreement extend only to the Debtors and the persons described in Paragraphs 19 and 21 above

and do not extend to any other person.  Nothing in this Agreement is intended as a covenant not

to sue or a release from liability for any person or entity other than the Debtors, the United States

and the persons described in Paragraph 21.  The United States and the Debtors expressly reserve

all claims, demands and causes of action either judicial or administrative, past, present or future,

in law or equity, which the United States or the Debtors may have against all other persons,

firms, corporations, entities, or predecessors of the Debtors for any matter relating to the

FUSRAP Material addressed herein.

23.     Notwithstanding the foregoing, the covenants not to sue contained in this

Settlement Agreement shall not apply to nor affect any action based on (i) a failure to meet a

requirement of this Settlement Agreement; (ii) criminal liability; (iii) liability for damages for

injury to, destruction of, or loss of natural resources and the reasonable costs of assessing such

injuries; (iv) material that is not FUSRAP Material; or (v) matters reserved in Paragraphs 7, 21

and 22 and Subparagraph 6.E.  The Debtors reserve all rights and defenses they may have in any

such action.

24.     The Debtors hereby covenant not to sue and agree not to assert or pursue any

claims or causes of action against the United States with respect to Allocable Costs for FUSRAP

Material for which the United States has paid its share pursuant to Subparagraph 10.B.  The

claims or causes of action referenced in this Paragraph include, but are not limited to, any direct

or indirect claim for reimbursement from the Hazardous Substances Superfund (established

pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through Sections 106(b)(2), 111, 112,

113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9611, 9612, 9613, or any other provision of law; any

claim arising out of response activities at or in connection with the Site, including claims based

on USACE's oversight of such activities (except as provided for in Paragraph 16 (Right of

Entry)) or approval of plans for such activities, or claims under the U.S. Constitution, the Tucker

Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at

common law; or any claim against the United States under Sections 107 or 113 of CERCLA, 42

U.S.C. §§ 9607 or 9613.  Nothing in this Settlement Agreement shall be deemed to constitute

preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611,

40 C.F.R. § 300.700(d).  Further, nothing in this Settlement Agreement shall preclude Debtors

from seeking legal or equitable relief to enforce the terms of this Settlement Agreement.

25.     With respect to any potential contractual claims under the AEC Contract except

for claims of fraud, the United States and Debtors each covenant not to sue and agree not to

assert or pursue any contractual claims or causes of action against one another.

## CONTRIBUTION PROTECTION

26.     With regard to all existing or future third-party causes of action against the

Debtors or the USACE or the United States Department of Energy with respect to FUSRAP

Material, including claims for contribution, the parties hereto agree that Debtors have resolved

by this Settlement Agreement their liability to the United States under CERCLA with respect to

"matters addressed" in this settlement, and the Debtors, the USACE, and the United States

Department of Energy are entitled upon the Effective Date of this Settlement Agreement to

protection from causes of action or claims as provided by Section 113(f)(2) of CERCLA, 42

U.S.C. § 9613(f)(2), for "matters addressed" in this Settlement Agreement.  The "matters

addressed" in this Settlement Agreement, as that phrase is used in Section 113(f)(2) of CERCLA,

42 U.S.C. § 9613(f)(2), include, without limitation, claims by the United States or potentially

responsible parties for response actions or response costs arising from FUSRAP Material.

27.    The Debtors each agree that with respect to any suit for contribution brought

against any of them after the Effective Date for matters related to this Settlement Agreement,

they will notify the United States within fifteen (15) business days of service of the complaint

upon it.  In addition, in connection with such suit, the Debtors shall notify the United States

within fifteen (15) business days of service or receipt of any Motion for Summary Judgment and

within fifteen business days of receipt of any order from a court setting a case for trial, provided,

however, that the failure to notify the United States pursuant to this Paragraph shall not in any

way affect the protections afforded Debtors under this Settlement Agreement.

## INDEMNIFICATION AND INSURANCE

28.    Debtors shall indemnify, save and hold harmless the United States and its

officials, agents, employees, contractors, subcontractors, or representatives for or from any and

all claims or causes of action arising solely from, or on account of, gross negligence or willful

misconduct (or ordinary negligence for claims alleging personal injury or damage to real

property arising solely from site conditions that do not relate directly to the response action for

FUSRAP Material) of Debtors, their officers, directors, employees, agents, contractors,

subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Settlement Agreement.  Further, the Debtors agree to pay the United States all reasonable costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising solely from, or on account of, claims made against the United States based on gross negligence or willful misconduct (or ordinary negligence for claims alleging personal injury or damage to real property arising solely from site conditions that do not relate directly to the response action for  FUSRAP Material) of Debtors, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Settlement Agreement.  The United States shall not be held out as a party to any contract entered into by or on behalf of Debtors in carrying out activities pursuant to this Settlement Agreement.  Neither the Debtors nor any such contractor shall be considered an agent of the United States.

29.     The United States shall give Debtors prompt notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 28, shall cooperate in the defense of any such claim, and shall obtain Debtors' consent prior to settling such claim. Cooperation shall include, but not be limited to, providing access to employees and documents relevant to the defense of such claim.

30.     No later than 15 business days before commencing any on-site Work, Debtors shall secure, and shall maintain until the first anniversary following completion of the Final Status Survey, comprehensive general liability insurance with limits of 5 million dollars, combined single limit, and automobile liability insurance with limits of 2 million dollars, combined single limit, naming the United States as additional insured.  Prior to commencement of the Work under this Settlement Agreement, Debtors shall provide to USACE certificates of such insurance.  In addition, for the duration of this Settlement Agreement, Debtors shall satisfy,

or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Debtors in furtherance of this Settlement Agreement. Debtors shall resubmit such certificates upon request, but no more frequently than annually. If Debtors demonstrate by evidence satisfactory to USACE that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Debtors need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## NOTICES AND SUBMISSIONS

31.     Whenever, under the terms of Paragraphs 7 and 27 and Subparagraphs 6.E, 10.B, and 10.E of this Settlement Agreement, written notice is required to be given or a report or other document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below via U.S. certified mail, return receipt requested, unless those individuals or their successors give notice of a change of address to the other parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Except as otherwise provided in this Settlement Agreement, written notice as specified herein shall constitute complete satisfaction of any written notice requirement in the Settlement Agreement with respect to the United States and the Debtors, respectively.

As to the United States:

> Baltimore District Counsel
> US Army Corps of Engineers, Baltimore District
> 10 South Howard Street
> Baltimore, MD 21201

> Nicki Fatherly, Project Manager
> US Army Corps of Engineers, Baltimore District
> 10 South Howard Street
> Baltimore, MD 21201

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611

As to the Debtors:

William M. Corcoran
Vice President
Public and Regulatory Affairs
W. R. Grace & Co.
7500 Grace Drive
Columbia, Maryland  21044

W. R. Grace & Co.
7500 Grace Drive
Columbia, Maryland 21044
Attention:  Secretary

Remedium Group Inc.
6401 Poplar Avenue
Memphis, TN 38119-4840
Attention:  Director

The notice recipients identified in this Paragraph may be modified by written notice from one party to the other party's Project Manager.  In addition, all other notices, reports, or communications under this Settlement Agreement shall be directed to the receiving party's Project Manager.

## LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

32.    This Settlement Agreement shall be subject to approval of the Bankruptcy Court. The Debtors shall promptly seek approval of this Settlement Agreement under Bankruptcy Rule 9019 or other applicable provisions of the Bankruptcy Code.  The hearing on Debtors' request for such approval shall not be held until the United States informs the Court (pursuant to Paragraph 33) of any public comments on the Settlement Agreement and the United States' responses to those comments.

-27-

33.    This Settlement Agreement shall be lodged with the Court for public notice and comment for a period not less than thirty days.  After the conclusion of the public comment period, the United States will file with the Court any comments received, as well as the United States' responses to the comments, and at that time, if appropriate, the Court will be requested by motion of the United States to approve the Settlement Agreement.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Settlement Agreement disclose facts or considerations which indicate that the Settlement Agreement is not in the public interest.

34.    If for any reason (i) the Settlement Agreement is withdrawn by the United States as provided in Paragraph 33, (ii) the Settlement Agreement is not approved, or (iii) the Bankruptcy Cases are dismissed or converted to cases under Chapter 7 of the Bankruptcy Code before the effective date of a Plan of Reorganization, then (a) this Settlement Agreement shall be null and void and the parties shall not be bound hereunder or under any documents executed in connection herewith; (b) the parties shall have no liability to one another arising out of or in connection with this Settlement Agreement or under any documents executed in connection herewith; (c) this Settlement Agreement and any documents prepared in connection herewith shall have no residual or probative effect or value, and it shall be as if they had never been executed; and (d) this Settlement Agreement, any statements made in connection with settlement discussions, and any documents prepared in connection herewith may not be used as evidence in any litigation between the parties.

35.    The Debtors shall not propose any Plan of Reorganization or take any other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of this Settlement Agreement.  The United States shall not oppose any term or provision of a Plan of Reorganization filed by the Debtors that is addressed by and consistent with this Settlement

Agreement.  The parties reserve all other rights and defenses they may have with respect to any Plan of Reorganization.

## AMENDMENTS/INTEGRATION AND COUNTERPARTS

36.     This Settlement Agreement and any other documents to be executed in connection herewith shall constitute the sole and complete agreement of the parties hereto with respect to the matters addressed herein.  This Settlement Agreement may not be amended except by a writing signed by all parties to this Settlement Agreement.

37.     This Settlement Agreement may be executed in counterparts each of which shall constitute an original and all of which shall constitute one and the same agreement.

## NO THIRD PARTY BENEFITS CONFERRED

38.     Nothing in this Settlement Agreement is intended, nor may be construed, to create any rights, confer any benefits, or relieve any liability, of any kind whatsoever in any third person not party to this Settlement Agreement, except as expressly provided herein.

## RETENTION OF JURISDICTION

39.     The Court (or, upon withdrawal of the Court's reference, the U.S. District Court of the District of Delaware) shall retain jurisdiction over the subject matter of this Settlement Agreement and the parties hereto for the duration of the performance of the terms and provisions of this Settlement Agreement for the purpose of enabling any of the parties to apply to the Court at any time for such further order, direction and relief as may be necessary or appropriate for the construction or interpretation of this Settlement Agreement or to effectuate or enforce compliance with its terms.


THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:

FOR THE UNITED STATES OF AMERICA:

Date: 3/4/08                    By: _____
                                   RONALD J. TENPAS
                                   Assistant Attorney General
                                   Environment and Natural Resources Division
                                   U.S. Department of Justice
                                   Washington, D.C.  20530


Date: 3/14/08                   By: _____
                                   JAMES D. FREEMAN
                                   CARA M. MROCZEK
                                   Trial Attorneys
                                   Environmental Enforcement Section
                                   Environment and Natural Resources Division
                                   U.S. Department of Justice
                                   1961 Stout Street - 8th Floor
                                   Denver, CO  80294

FOR THE UNITED STATES OF AMERICA:

Date: ___14 MARCH 2008___        By: _____

PETER W. MUELLER
Colonel, Corps of Engineers
District Engineer
Department of the Army
U.S. Army Engineer District, Baltimore
10 South Howard Street
Baltimore, MD  21201

FOR THE DEBTORS:

Date: 3/12/08                By:

WILLIAM M. CORCORAN
Vice President
Public and Regulatory Affairs
W. R. Grace & Co.
7500 Grace Drive
Columbia, Maryland  21044

### Tasks and Responsibilities of
### W.R. Grace and United States Army Corps of Engineers in
### Implementation of Remedial Actions for Curtis Bay FUSRAP Work[2]

| | Task | Responsibility |
|---|---|---|
| 1 | Selection of Contractors (including the evaluation of prospective contractors' proposals) | Grace and USACE by consensus |
| | | |
| 2 | Contracting (preparing and entering into contracts with entities that will implement work) | |
| a | Remedial Action Contractor | Grace |
| b | Transporter | Grace |
| c | Disposal Facility | Grace |
| d | Final Status Survey Contractor | USACE selects, manages, and exclusively pays for associated costs. |
| | | |
| 3 | Review and Approval of Documents Prepared by Contractors (including Planning Documents and Specifications) | Grace and USACE by consensus |
| | | |
| 4 | Review and Approval of Non-urgent Change Orders | Grace and USACE by consensus |
| | | |
| 5 | Issuance of Authorizations and Approvals to Contractors | |
| a | Planning Documents & Specifications (approved as per item 3) | Contracting entity as designated in Item 2, above |
| b | Urgent Change Orders[3] | Contracting entity as designated in Item 2, above[4] |
| c | Non-urgent Change Orders (approved per item 4) | Contracting entity as designated in Item 2, above |
| | | |
| 6 | Determination of Compliance with Plans, Specifications or Contract Requirements | Grace and USACE by consensus |
| | | |
| 7 | Stop Work Authority | |
| a | Health & Safety | Grace and USACE each have unilateral authority to stop work |

---

[2] Parties may have responsibilities that are not associated with particular tasks at the site, and this is not an exclusive list of all responsibilities that each party may have.

[3] A change order may be designated by a party to be urgent if a delay is likely to result in a contractor incurring extra costs or may result in an increased risk to health or safety.

[4] When a dispute is initiated regarding an urgent change order request, the contractor may be directed to perform the issued change order pursuant to the Settlement Agreement, in which case the contractor may be directed to maintain separate accounting that tracks costs associated with the activities.

| | Task | Responsibility |
|---|---|---|
| b | Contractors' Compliance with Plans, Specifications or Contract Requirements (determined as per item 6) | Grace |
| | | |
| 8 | Coordination of Work | |
| a | Site Coordination (including but not limited to coordination with plant and contractors concerning operation, work flow, and worker safety on a daily basis) | Grace |
| b | Coordination with MDE (including general site access and scheduling of verification survey) | Grace |
| | | |
| 9 | Review and Approval of Closure Reports Prepared by Contractors (including but not limited to description of the work performed, as-built records and Final Status Survey report) | Grace and USACE by consensus |
| | | |
| 10 | Communications | |
| a | Communications with Grace Workers | Grace |
| b | Communications with MDE (except scheduling and coordination noted above) | Grace and USACE cooperatively |
| c | Communications with General Public | Grace and USACE cooperatively |
| d | Communications with Contractors (except stop work for Health and Safety as noted above) | Contracting entity as designated in Item 2, above |
| | | |
| 11 | Waste Transport/Disposal | |
| a | Review and Approval of Waste Profile | USACE |
| b | Review and Approve Waste Manifest | USACE |
| c | Sign Waste Manifest | USACE |
| | | |
| 12 | Obtain USACE FUSRAP Program Closure for the Work Performed Pursuant to Each Work Plan | USACE |