THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: April 4, 2008 at 4:00 p.m.** |
| | ) | **Hearing Date: April 21, 2008 at 1:00 p.m.** |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT WITH THE UNITED STATES REGARDING THE CURTIS BAY FUSRAP MATTER

The Debtors respectfully move this Court (the "Motion") for the entry of an Order approving the settlement agreement (the "Settlement Agreement," a copy of which is attached as Exhibit A hereto) resolving the United States' proof of claim No. 9634 as it relates to the Curtis Bay FUSRAP Matter (defined herein). The Settlement Agreement is an exercise of the Debtors' sound business judgment and is in the best interest of the Debtors, their estates, and their creditors. In support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background and Proofs of Claim

3. On or about March 28, 2003, the United States filed an unsecured, non-priority proof of claim numbered 9634 ("Claim No. 9634") seeking cost recovery and injunctive relief in connection with environmental remediation liability at 32 sites and at unspecified future sites. The Debtor-owned sites named in Claim No. 9634 include both closed and operating facilities. The non-Debtor-owned sites named in Claim No. 9634 consist primarily of multi-party Superfund[2] sites to which Grace has varying degrees of involvement. The Debtors ultimately reached an agreement with the United States to resolve their alleged liability in connection with the majority of the sites referenced in Claim No. 9634.[3] The Debtors conducted separate negotiations with the United States, on behalf of the United States Army Corps of Engineers ("USACE"), to resolve their alleged liability in connection with W.R. Grace & Co.-Conn.'s facility located at 5500 Chemical Road, Curtis Bay, Baltimore, Maryland (the "Curtis Bay Facility") which is the subject of the Settlement Agreement referenced herein.

4. At issue is the United States' contention that certain of the Debtors are liable in the amount of $102 million under the Comprehensive Environmental Response, Compensation

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Settlement Agreement.

[3] That agreement is memorialized in the "Settlement Agreement Resolving the United States' Proofs of Claim Regarding Certain Environmental Matters" filed on December 19, 2007, and is the subject of a motion for approval currently set to be heard by the Court on April 21, 2008 [Docket No. 17670].

2

and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., for response costs incurred and to be incurred by the USACE pursuant to the Formerly Utilized Sites Remedial Action Program ("FUSRAP") in the course of responding to releases or threats of releases of hazardous substances into the environment at the Curtis Bay Facility. That portion of Claim No. 9634 as it relates solely to the FUSRAP liabilities associated with the Curtis Bay Facility is herein referenced as the "FUSRAP Matter" and is resolved in its entirety by the Settlement Agreement.

5. The Curtis Bay Facility is an operating Debtor-owned site used for the production of catalysts and silica products. For approximately nine (9) months in 1956 and 1957, the Curtis Bay Facility processed monazite sand to extract thorium pursuant to the July 18, 1955 contract between the United States Atomic Energy Commission and Rare Earths, Inc., as amended (the original contracts together with amendments are referred to as the "AEC Contract").

6. This brief operation resulted in residual contamination of a building and on-site disposal of radioactive waste materials. Specifically, the processing work occurred in the southwest quadrant of an extant building known as Building 23. Residual areas of elevated radiation remain in portions of Building 23 today. Waste material was disposed of on-site in an area known as the Radioactive Waste Disposal Area (the "RWDA").

7. FUSRAP is a program of the United States Department of Energy, implemented since 1997 by the USACE, to remediate sites contaminated with radioactive material by or on-behalf of the activities of the U.S. Department of Energy and its predecessors, including the AEC. Through FUSRAP investigations, the USACE has determined that wastes and other materials resulting from the monazite sand processing operations performed at the Curtis Bay Facility under the AEC Contract (the "FUSRAP Material") require remediation, although the investigative results show that the FUSRAP Material in Building 23 and the RWDA as currently

used present no immediate risk to human health or the environment. The United States' investigations under the FUSRAP program began over twenty-five years ago and continued with the voluntary administrative cooperation and support of the Debtors. The work to date has included remedial investigations completed for Building 23 and the RWDA, feasibility studies completed for Building 23 and in progress for the RWDA, a Record of Decision issued by USACE for Building 23, and a Remedial Design Scope completed for Building 23.

8.  Claim No. 9634 as it relates to the FUSRAP Matter specifically seeks to recover: (a) $6 million in past response costs as of March 2003 (now estimated at roughly $13 million); and (b) $66 to $96 million in future response costs for the RWDA, for an aggregate total of approximately $72 to $102 million to resolve the FUSRAP Matter. The United States has asserted that the Debtors are liable for response costs under CERCLA as an owner and arranger for disposal of the FUSRAP Materials and as the owner and operator of the site. The Debtors have asserted in defense that the United States, and not the Debtors, is liable for such costs under CERCLA as an owner, operator and arranger for disposal of the FUSRAP Materials and under CERCLA war claims arguments.

## Settlement

9.  To avoid protracted litigation and resolve their liability in connection with the FUSRAP Matter, the Debtors and the United States have agreed to a settlement as outlined in the attached Settlement Agreement.

10.  The Settlement Agreement resolves Claim No. 9634 as it relates to the FUSRAP Matter by: (a) allowing the Debtors to undertake the performance of the future remediation work in consultation with the USACE; (b) obligating the United States to reimburse the Debtors for 60% of the response costs incurred after the Effective Date; and (c) resolving the USACE's claim for past costs as of the Effective Date (estimated at approximately $13 million) with an

Allowed Administrative Expense Claim in the amount of $750,000 to be applied as a credit to reduce the USACE's future share of Allocable Costs. The USACE shall receive no distributions from the Debtors and their estates with respect to the Debtors' liabilities and obligations under CERCLA for the FUSRAP Matter other than as set forth in the Settlement Agreement. The parties will be responsible for their own internal costs of project management and supervision, and the Debtors will not owe any share of future administrative costs to the USACE.

11. The parties' specific roles, tasks, and responsibilities for the work to be performed are more fully detailed in Attachment 1 to the Settlement Agreement, "Tasks and Responsibilities." The Debtors estimate that the costs of implementing and performing this work are estimated to range from approximately $ 37 to $ 47 million of which 60% will be reimbursed by the United States and be completed over a period of roughly 5 years. The Debtors note that these costs and timeframes can vary significantly depending on the remedy ultimately selected.

12. While the Settlement Agreement focuses on the work to be done in connection with Building 23 and the RWDA, it also allows for allocation of costs for certain additional response actions or future work that may arise necessary to address the FUSRAP Material. The Agreement also provides that any natural resource damages in connection with FUSRAP Material will be allocated using the same formula, and United States' shall pay sixty percent (60%) of all such natural resource damages and Debtors shall pay forty percent (40%) of such natural resource damages.

13. Any disputes will be resolved by structured negotiation amongst the parties, with the ultimate possibility of submission of a dispute to this Court for review on the administrative record.

**Relief Requested**

14. By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (a) approving the Debtors' execution of the Settlement Agreement; (b) allowing Claim No. 9634 in the sums provided for herein; (c) granting the Debtors authority to consummate the transactions contemplated in the Settlement Agreement, including the use of the Debtors' estate property and resources necessary to undertake the performance of the work set forth in the Settlement Agreement; and (d) granting such other relief as may be appropriate.

**Basis for Relief**

**Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a)**

15. This Court has the statutory authority to authorize and approve the Settlement Agreement, and the incurrence of costs and expenses contemplated therein, pursuant to Bankruptcy Code sections 105(a) and 363(b) and Bankruptcy Rule 9019.

16. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

17. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. §363(b)(1). This Court may authorize the Debtors to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d 513, 515 (7th Cir.

1991) (a debtor's decision must be supported by some "articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

18.    A settlement of claims and causes of action by a debtor in possession constitutes a use of the property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999). If a settlement is outside the ordinary course of business of the debtor, it requires the approval of the bankruptcy court pursuant to Bankruptcy Code section 363(b).

19.    Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citations omitted). Indeed, compromises are favored in bankruptcy since they minimize litigation and expedite the administration of a bankruptcy case. See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., 2006 WL 2842462, at *3 (D. Del. 2006).

20.    Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See Martin, 91 F.3d at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted). To reach this determination, the court must assess the value of

the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

21. The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.; see also In re Nutraquest, Inc., 434 F.3d 639, 644-45 (3d Cir. 2006).

22. It is also well settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 296 (citations omitted); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

**Application of Standards for Approval to the Facts of This Case**

A. **The Settlement Agreement is a Sound Exercise of the Debtors' Business Judgment, Satisfying the Requirements of Section 363(b).**

23. The Debtors and the United States have negotiated in good faith and have used commercially reasonable efforts to arrive at the terms in the Settlement Agreement. The Settlement Agreement prevents the incurrence of significant transaction costs and cost-effectively resolves significant environmental liabilities of the Debtors. Allowing the settlement to proceed efficiently eliminates claims in the amount of approximately $72 to $102 million

8

DOCS_DE:136054.1

against the Debtors' estates. Furthermore, this settlement allows the Debtors to avoid potential additional obligations, such as payment for future USACE administrative costs associated with performance of the work. Thus, granting this Motion and allowing the settlement to proceed will eliminate the risk of increased costs, and resolve these significant liabilities. Therefore, entry into the Settlement Agreement is within the Debtors' sound business judgment.

### B. The Settlement Agreement is Fair, Reasonable, and in the Best Interests of the Debtors' Estates, Satisfying the Requirements of Bankruptcy Rule 9019.

24. The Settlement Agreement described herein was the product of a rigorous negotiation process and falls within the reasonable range of litigation possibilities. The Court's approval of the Settlement Agreement will resolve the United States' Claim No. 9634 as to the FUSRAP Matter without forcing potentially complex litigation that could, among other things, require presentation of significant quantities of evidence concerning activities that occurred fifty years ago. As described above, the Settlement Agreement precludes the incurrence of significant transaction costs, cost-effectively resolves significant environmental liabilities of the Debtors, and will result in the remediation of the FUSRAP Material without future risk to the Debtors of additional or increased claims. It is also fair, reasonable, and consistent with CERCLA's goals. Clearly, the settlement does not fall below the lowest point in the range of reasonableness. Significantly, the Debtors will receive a covenant not to sue from the United States which will also preclude any future claim concerning the Debtors' responsibility for remediation or other liability with respect to the FUSRAP Matter and will constitute a final resolution of the Debtors' liability relating thereto.

25. Approval of the Settlement Agreement also benefits the public interest because the settlement will support and should fully fund the FUSRAP remediation for the Curtis Bay Facility. Such approval benefits the public by allocating costs of performing the work amongst

9

the parties and enabling the work to proceed. Finally, the Settlement Agreement provides assurance to the creditors that environmental liabilities associated with the FUSRAP Matter are fully addressed and permanently resolved.

## Conclusion

26. For the reasons stated above, the proposed Settlement Agreement is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest because it is the best settlement attainable given all the facts and circumstances. In the absence of a resolution by settlement, the Debtors will likely incur substantial legal fees and expenses litigating this matter to final judgment. Accordingly, the Debtors have demonstrated a sound business justification and best interest for the execution and consummation of the Settlement Agreement.

Notice

27. Notice of this Motion has been given to: (i) the office of the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in these Chapter 11 Cases, (v) counsel to the Future Claimants' Representative; (vi) those parties that requested service and notice of papers in accordance with Bankruptcy Rule 2002; and (vii) counsel to the United States. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

28. No prior motion or application for the relief requested herein has been made to this or any other court.

29. The Debtors respectfully request that the hearing on this Motion not be held until the United States informs the Court of any public comment on the Settlement Agreement and of

the United States' responses to these comments, consistent with the applicable provisions of the Settlement Agreement.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit B hereto, (i) approving the Debtors' execution of the Settlement Agreement attached as Exhibit A hereto, (ii) allowing the Proof of Claim in the sums provided for herein; (iii) authorizing the Debtors to consummate the transactions contemplated in the Settlement Agreement, and (iv) granting such other relief as may be just or proper.

Dated: March 14, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

11

DOCS_DE:136054.1