# Exhibit C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No. 01-1139(JKF)
                                    .
                                    .
W.R. GRACE & CO.,                   . 5414 USX Tower Building
                                    . Pittsburgh, PA  15222
                                    .
                     Debtor.        .
                                    . October 25, 2007
. . . . . . . . . . . . . . . . . . 2:07 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:             Kirkland & Ellis, LLP
                            By:  JANET BAER, ESQ.
                                 LISA ESAYIAN, ESQ.
                                  (telephonic appearance)
                                 DAVID M. BERNICK, P.C., ESQ.
                                 AMANDA BASTA, ESQ.
                                 BARBARA HARDING, ESQ.
                                  (telephonic appearance)
                                 ELLEN AHERN, ESQ.
                                  (telephonic appearance)
                            Aon Center
                            200 East Randolph Drive
                            Chicago, IL   60601


For the Debtor:             Reed Smith, LLP
                            By:  JAMES J. RESTIVO, JR., ESQ.
                            435 Sixth Avenue
                            Pittsburgh, PA  15219


Audio Operator:             Janet Heller

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

1  hear about Manville, to hear about Mr. Bernick's tobacco case,

2  to have people from trusts deposed for hours on end about the

3  criteria in their TDPs and whether it would be a breach of

4  their fiduciary duties if they paid claims when the criteria

5  weren't met.  Fascinating.  Absolutely nothing to do with this

6  case.  That's what they've been focusing on.

7          Now they're turning back to this issue of the

8  lawyers, and they've realized we've only got a couple of weeks.

9  We didn't do what we needed to do.  It's too late, Your Honor.

10  They have the data they need to put their case on.  It's in

11  their expert reports.  The theories have been made and

12  presented.  They've been rebutted.  We're ready to do, and this

13  is just, in my view -- and I think what you'll hear next -- is

14  Part 2.  The other shoe that's going to drop here is all these

15  deadlines need to move, and the trial date needs to be

16  continued.

17          THE COURT:  The trial date is not being continued.

18          MR. MULLADY:  Thank you, Your Honor.  That's all I

19  have.

20          MR. BUSBY:  Your Honor, this is Leonard Busby

21  speaking with Natalie Ramsey, and we represent Peter Krause,

22  who is one of the subpoenaed deponents.  May I be heard for a

23  moment on these issues?

24          THE COURT:  Yes, sir.

25          MR. BUSBY:  Thank you so much, Your Honor.  I want to

**J&J COURT TRANSCRIBERS, INC.**

54

1    -- the Court to understand first that Mr. Krause has agreed to

2    be deposed at a mutually convenient time and place.  Mr. Krause

3    is also willing to agree or willing to be deposed at a mutually

4    convenient time and place after October 31st.  Mr. Krause has

5    sought to be reasonable and cooperative.  It is Grace that has

6    created the present problem by demanding documents that are

7    facially and obviously privileged.

8            Your Honor, I apologize for not being there in

9    person, but the document requests that are appended to the

10   subpoena directed to Mr. Krause include all -- any and all

11   documents relating to the process by which potential asbestos

12   personal injury claims against Grace were evaluated by his

13   firm.  And I could go on.  They ask for basically every

14   internal document, work product and attorney-client

15   communications that go to how these cases were settled

16   internally, their evaluation, their strategy.  These are

17   documents that are facially and obviously privileged.

18           Now, whatever statements or arguments were made by

19   Mr. Finch on behalf of the ACC, and whatever decision was made

20   by Grace to provide arguably privileged documents to the ACC,

21   are entirely irrelevant to the privilege status of Mr. Krause's

22   documents.  The privilege at issue here belongs not to Mr.

23   Krause but to his clients.  Mr. Krause does not have the

24   discretion or the authority to waive any privilege.  It is his

25   ethical and legal duty to preserve the privilege.  Mr. Krause

**J&J COURT TRANSCRIBERS, INC.**

55

1 is a proposed non-party witness who has himself not put

2 anything at issue.

3         As I understand Mr. Bernick's argument, the ACC has

4 put Grace's intent at issue, but, as Mr. Finch correctly points

5 out, putting that intent at issue does nothing to put at issue

6 the countervailing intent of any of the asbestos claimants.

7 That is not at issue within the meaning of the doctrine of

8 putting a concept or a principle at issue so as to waive a

9 privilege.  In any event, Mr. Krause hasn't put anything at

10 issue himself.  He's a non-party witness.

11         Now, the last thing I would add is that as regards

12 the proper procedure for addressing this dispute, Grace

13 properly issued a subpoena to Mr. Krause pursuant to Rule 45,

14 and that subpoena is captioned correctly and appropriately

15 under a caption of the United States District Court for Texas.

16 Mr. Krause has timely served his objections to the subpoena

17 pursuant to Rule 45.  For the moment, Mr. Krause has decided to

18 rely on his right under Rule 45 to be protected in his own home

19 court from undue burden, including the undue burden sought to

20 be imposed on him by Grace to create a privilege log of what

21 could be many thousands of pages of privileged documents.

22         Your Honor, it's amazing that at the end of Grace's

23 motion they ask Your Honor to enter an order against Mr.

24 Krause, that he provide a privilege log.  With all due respect,

25 at the moment Mr. Krause is not subject to this Court's

56

1  jurisdiction under Rule 45.  The only court that can hear and

2  rule on that ultimate issue at the moment is a court in Texas.

3        Now, the fact of the matter is that this problem

4  could be solved -- this whole concern debate could be solved if

5  Grace would withdraw its request for facially and obviously

6  privileged documents.  Grace is before the Court, and Grace

7  could certainly agree to, or perhaps with Your Honor's help, be

8  encouraged to withdraw a request for privileged documents.

9        So this is not a problem that has been created by Mr.

10  Krause.  It is not, respectfully, a matter that Your Honor can

11  force on Mr. Krause by ruling that he has to provide a

12  privilege log.  And Mr. Krause is not trying to create problems

13  here.  He's trying to cooperate.  He's willing to show up for

14  deposition, and he's not in a position, nor could he be put in

15  a position, of providing privileged documents with his own firm

16  or his own clients because of conduct of the ACC.  And, as Mr.

17  Finch pointed out, the ACC has not put the intent of any

18  plaintiffs' lawyers at issue in any event.  Thank you, Your

19  Honor.

20        THE COURT:  All right.  Anyone else on the phone wish

21  to speak?

22              (No verbal response)

23        THE COURT:  Mr. Bernick.

24        MR. BERNICK:  Thank you, Your Honor.  I think that

25  there are basically four specific issues that have been

**J&J COURT TRANSCRIBERS, INC.**

1 the settlements and of their costs for different kinds of

2 claims, I won't to be back here asking for any of discovery,

3 because I already know what that is.  And if they want to have

4 witnesses testify, yes, they can.  I already know what that is.

5 But if they're going to say more -- if they're going

6 to talk about criteria and if the proffer is going to be that

7 the criteria are important, because they're different from the

8 standards of liability that Grace now argues, then I need

9 discovery, because the other question is why were those

10 criteria used.  And that very much implicates them, because who

11 developed the criteria.  They developed the criteria just like

12 the plaintiffs' lawyers developed the criteria in the Manville

13 trust.  Do you think the defense lawyers developed the criteria

14 in the Manville trust?  The plaintiffs' lawyers, because they

15 ran the trust, and they developed criteria that they thought

16 they can comfortably meet, so that they didn't have to prove

17 liability and so that they could get all these massive

18 settlements.  Those criteria implicate not just Grace's intent

19 in meeting them, they implicate Mr. Krause's intent and the

20 intent of all the plaintiffs' lawyers for having insisted upon

21 them, and that's why it's so fundamentally unfair.

22 THE COURT:  Well, folks, look, I think the issue is

23 this.  Are you going to call these witnesses to get into the

24 issue of Grace's I guess intent in getting into the criteria?

25 If you tell me no, you're not going to ask questions of intent,

**J&J COURT TRANSCRIBERS, INC.**

1  I'm not going to permit discovery on the issue of intent, but

2  you're not going to ask one single question about Grace's

3  intent.

4          MR. FINCH:  Your Honor, I'm certainly going to ask

5  them what were Grace's criteria.  I'm certainly going to ask

6  them -- criteria is not intent.  Criteria is what evidence

7  Grace required them to submit.  I'm going to ask them what --

8  when evidence was available in the litigation process, when

9  they gave it to Grace.  I might ask them questions about the

10 questionnaires they submitted in this case, but I'm certainly

11 not going to ask them questions about the intent that Grace --

12 that what -- you know, what was Grace's intent.  They don't

13 know what Grace's intent --

14         THE COURT:  Well, you -- they couldn't ask -- answer

15 that question.

16         MR. FINCH:  Right.

17         THE COURT:  But the point --

18         MR. FINCH:  Or what was -- what their intent was.

19 But I mean I'm not going to ask them what was their intent in

20 settling cases.  They probably wouldn't tell me.  I mean they'd

21 say that it's privileged or work product, or what was their

22 internal evaluation of cases.  But what a lawyer does vis-a-vis

23 another lawyer and says to that lawyer or puts on in evidence

24 -- you know, some of these guys started trial with Grace 50 or

25 60 times.  The fact is that, you know, I may ask them -- I will

1  ask them about that, but I'm not -- I mean I don't know what

2  Your Honor means by intent.  I'm certainly going to call the

3  lawyers.  I'm going to ask the lawyers questions that do not

4  invade their clients' privileges.  I'm going to ask them about

5  their dealings with Grace and the evidence they produce to

6  Grace in discovery and what their historical dealings with

7  Grace are.  And beyond that, I can't really, you know -- I

8  can't sit down and put the 50-page proffer at this juncture in

9  the case.  I'm just not ready or prepared to do that, and

10 nothing in the Rules of Federal Civil Procedure require that.

11 And I -- if he wants to take their depositions, he can take

12 their depositions.  He has 50 fact witnesses.  I haven't gotten

13 a narrative description of the testimony that Mr. Centani

14 (phonetic) and Egan, who are historical witnesses who have some

15 knowledge of some of the products that Grace made.  I haven't

16 gotten a narrative description of Mr. Siegel's testimony or Mr.

17 Beeber's testimony or Mr. Hughes' testimony.  That's not how

18 this  discovery works.

19         THE COURT:  All right.  Well, I --

20         MR. BERNICK:  Your Honor, they got all the documents

21 before those people testified.  And again, you know, he says

22 I'm not going to ask intent.  It's the criteria.  It's how the

23 process took place, because it is proper to establish the

24 proposition that our criteria today are different.  There's a

25 bright line between --

1          THE COURT:  But I don't think the debtor denies that

2  the criteria today are different.

3          MR. BERNICK:  We don't.  We actually don't.

4          THE COURT:  Okay.

5          MR. BERNICK:  But the question is the purpose for

6  which that testimony is offered.  If it's offered for the

7  purpose of saying -- of course, the criteria were whatever they

8  were.

9          THE COURT:  Exactly.

10          MR. BERNICK:  There's no question about it.  They

11  don't need to call these witnesses to have them testify about

12  what the criteria were.  Everybody knows what the criteria

13  were.  The question is whether it stands in the service of the

14  proposition that the criteria in a sense replaced the liability

15  standard, and they go to say that our liability standard that

16  we're arguing for today was -- is the wrong liability standard.

17  If that point -- this is all a game about Grace admitting in

18  the course of the prior settlements that these criteria were

19  adequate legally, and that is -- not only is this wrong from

20  Grace's point of view, that's what that implicates their role

21  in the creation of the criteria.

22          THE COURT:  But the problem that I still have --

23          MR. BERNICK:  Yes?

24          THE COURT:  -- don't the settlement agreements say

25  that there is no admission of liability?

1          MR. BERNICK:  Absolutely.

2          THE COURT:  Well, then how is anybody going to argue

3    that there is, in fact, an admission of liability?

4          MR. BERNICK:  I don't know.

5          THE COURT:  Okay.

6          MR. BERNICK:  But if they're going --

7          THE COURT:  Well, neither do I.

8          MR. BERNICK:  I -- well, you know, that is an

9    argument that Your Honor may be able to dispose of --

10          THE COURT:  I think I just did.

11          MR. BERNICK:  -- and dispose of this whole --

12          THE COURT:  I just did dispose of it.  If the

13   settlement agreements say that no one is admitting any

14   liability, nobody's going to tell me that the settlement

15   process is an admission of liability.  That's it.  I'm not

16   going to hear about it if that's the case.

17          Now, with respect to the discovery, I think you've

18   gotten as much from the ACC and the FCR in terms of the fact --

19   the facts that they intend to use the lawyers for as you can

20   possibly get.  This whole discussion for the past hour and a

21   half has been about that.  I think you've got their general

22   parameters about what they intend to call these witnesses for.

23   It is to show what the settlement negotiation process was all

24   about, and that -- whether it's relevant or not, I don't know

25   at this point.  I can't make a determination of relevance now.

**J&J COURT TRANSCRIBERS, INC.**

1    But to the extent that they're going to say what were

2 Grace's criteria -- you know, at what point was evidence

3 introduced, and it's a factual narrative, the lawyers are

4 competent witnesses to discuss that.  You've got that

5 information.  It doesn't appear to be relevant to a specific

6 case, but if it is, the debtor was a party to it.  You've got

7 the settlement documents.

8    MR. BERNICK:  Well, but I need to know -- sure, I've

9 got tens of thousands of files.  I need to know -- and I should

10 have by virtue of the same fact that they're testifying, I

11 should be able to get access to the documents that they have

12 that bear upon that factual testimony, and that's what we've

13 asked for.

14    THE COURT:  So -- and the way to get it is to ask the

15 witnesses that question.  And I --

16    MR. BERNICK:  I subpoenaed --

17    THE COURT:  Well, then you've got the subpoenas

18 outstanding.

19    MR. BERNICK:  That's what I -- that's exactly why

20 we're here is I got the subpoenas outstanding, and rather than

21 having four different motions to compel, I teed the issue up in

22 exactly this fashion to try to get the Court's involvement on

23 the question of, well, what is the scope of this going to be.

24 And I did try to work it out with the other side.  If the scope

25 of their testimony is simply going to be, this is the -- this

1 is how settlements -- in a sense the settlement agreement, I

2 can't quarrel with that.  If they're going to say these were

3 the criteria for the settlement agreement, need to know what

4 that's proffered for, because it's not relevant to anything but

5 liability.  There is no relevance that it has to anything but

6 liability, and then we're back in the same situation.

7         So, Your Honor -- and then they say, well -- well,

8 he's going to say why you didn't answer the questionnaires in a

9 certain way.  How long did I spend asking for testimony on

10 exactly that subject, and it was totally foreclosed, and

11 they're now opening the door to have the same discussion all

12 over again?

13         THE COURT:  I didn't hear anything about --

14         MR. BERNICK:  He said the --

15         THE COURT:  I heard that here.  I am not sure how

16 we're going to get into anything about these questionnaires

17 from anybody.  I have made every ruling on the questionnaires

18 that I'm going to make as far as I know.  And to the extent

19 that somebody wants to supplement answers to questionnaires,

20 they're not going to be doing it in that evidentiary hearing.

21 If they didn't have -- if they couldn't put it in writing on

22 the questionnaires, they certainly are not going to be giving

23 me additional information that they can somehow or other create

24 or -- I don't mean create in the term --

25         MR. BERNICK:  Well, I think what they're suggesting

1 is he's going to explain why he couldn't answer the

2 questionnaire in a certain way.

3      THE COURT:  I'm afraid he's not.  He's not going to

4 be explaining.  It's either in writing in those questionnaires,

5 or it's not there.  I think I made those rulings clear early

6 on.  What's in is available for the fact and expert witnesses,

7 and, otherwise, for purposes of this estimation hearing, it

8 doesn't exist.  And that's the end of it.  We are not getting

9 into those questionnaires again, period.  End of story.

10      MR. BERNICK:  Okay, so we'll pursue the subpoenas,

11 and I -- yes.  You know, maybe we'll be back on a motion to --

12 I would really -- I urge the other side to sit down and see if

13 we could become more specific, because I really believe that if

14 they're going to avoid the inference that there was liability

15 from those criteria, then we're talking about very limited

16 testimony.  And if it's very limited testimony, there's a very

17 limited amount of discovery that I'm going to need, and then I

18 will know what these people are going to say, because it's in

19 our files.

20      THE COURT:  Well, there is not going to be an

21 inference of liability, unless there is something in the

22 settlement agreement in which case somebody's going to have to

23 show me the settlement agreement that indicates that, in fact,

24 there is an admission of liability.  Because, otherwise, people

25 generally settle, so that you don't admit liability.

1          MR. BERNICK:  Right.

2          THE COURT:  So unless there is an admission of

3   liability, you are not going to be arguing to me that the

4   settlements are an admission of liability.  I am not going to

5   accept it for that purpose.  Number one, I don't think I can

6   under the Rules of Evidence, but number two, unless you can

7   show me that the document itself is different from that, the

8   document itself will preclude that use.  So --

9          MR. BERNICK:  Thank you.

10         THE COURT:  That's that.  Now, in terms of going

11  beyond October 31st, today is the 25th.  I don't know if your

12  witnesses can all be available between now and October 31st. I

13  understand that you have a schedule that went beyond that date

14  by consent.  Can you live with that schedule by consent beyond

15  the October 31st date?

16         MR. FINCH:  Your Honor, I'm perfectly happy to --

17  subject to the witnesses' availability, to have them deposed

18  in, you know, November or December, if that's when they're

19  available.  I don't know about anybody's availability other

20  than the dates that they've got.  I tried to get dates from Mr.

21  Cooney, Mr. Krause, and Mr. Goldberg when they were available

22  within the confines of the November 15th discovery cutoff.

23         MR. BERNICK:  I think we can --

24         MR. FINCH:  The 9th for Mr. Cooney and the 15th for

25  Mr. Krause.  I don't know if that will work or not.  I don't