# Exhibit E

```
                  UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF DELAWARE


IN RE:                      .    Case No.  01-1139 (JKF)
                            .
W.R. GRACE & CO.,           .
et al.,                     .    824 North Market Street
                            .    Wilmington, Delaware  19801
            Debtors.        .
                            .    January 28, 2008
. . . . . . . . . . . ..         1:04 p.m.

                       TRANSCRIPT OF HEARING
              BEFORE HONORABLE JUDITH K. FITZGERALD
                UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:         Pachulski, Stang, Ziehl & Jones
                         By:  JAMES O'NEILL, ESQ.
                         919 North Market Street
                         17th Floor
                         Wilmington, DE  19899-8705

For the Debtors:         Kirkland & Ellis, LLP
                         By:  ELLEN THERESE AHERN, ESQ.
                              DAVID BERNICK, ESQ.
                              BARBARA HARDING, ESQ.
                              JANET BAER, ESQ.
                         200 East Randolph Drive
                         Chicago, IL  60601
                         (Telephonic Appearance by Ms. Harding,
                           Ms. Ahern, Mr. Bernick)

For the Debtors:         Kirkland & Ellis, LLP
                         By:  THEODORE FREEDMAN, ESQ.
                         Citigroup Center, 153 East 53rd St.
                         New York, NY  10022
                         (Telephonic Appearance)

Audio Operator:          Al Lugano

Proceedings recorded by electronic sound recording, transcript
           produced by transcription service.
```

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail: jjcourt@optonline.net

(609)586-2311        Fax No. (609) 587-3599

1  that's not what they really want to say.  They really want to
2  say that Grace acknowledged and conceded that those were
3  appropriate criteria.  Well, Mr. Hughes would say, absolutely
4  not, we wanted to have the benefit of a full litigation record,
5  we wanted to have the benefit of being able to litigate these
6  cases one-by-one, and we were coerced into this settlement
7  arrangement.
8      Now, I wonder if we're going to get access to Mr.
9  Cooney's files or Mr. Kraus's files to find out what their own
10 internal files said about whether Grace was over a barrel or
11 not, that is whether Grace was happy to acknowledge its
12 liability in those cases or not, but we're not going to get
13 that discovery.  So, it's specious.  The purpose of this
14 proffer is (a) to make these people into expert witnesses
15 through their own anecdotal testimony about the same matters
16 that are covered by Dr. Peterson, and (b) to do so without
17 divulging the internal information that they have that would
18 bear upon cross examination, and (c) for the explicit purpose
19 of arguing that Grace acceded to all of this and thereby, well,
20 it's hung by its own petard, these were the rules that it
21 agreed should supplant liability.  Not so.  And again, we're
22 not going to get discovery of that either.
23     All these matters can be framed, Your Honor, on
24 paper.  They don't implicate somehow, you know, the same issue
25 that has surfaced in Pittsburgh, that well, you know, should

1  our evidence be admissible to prove our theory or is it -- it's
2  none of that.  It's all plain and simple -- whether we're
3  getting expert testimony masked as the testimony of fact
4  witnesses and whether we'll end up getting stymied and
5  frustrated on the ability to get the underlying information.
6          So, all these things can be said in a brief with the
7  benefit of a record, rather than going through the same thing.
8  We've had the same argument about three or four times before.
9  And we've made a very concrete proposal for how to get a good
10 record created.  If Your Honor feels that this is amenable to
11 resolution without a deposition so that we can then get that
12 determination before we have to proceed with any discovery,
13 we're happy to do it that way.  I made a proffer that I thought
14 was one that the Court would find better from the point of view
15 of helping to frame the issues.  So, again, we would ask that
16 they pick a witness in seven days.  We'll serve the document
17 request within a week after that.  We'd then ask that they
18 respond in 14 days, and then we'll take the deposition, and
19 once the deposition is done we'll file a brief with the Court.
20         THE COURT:  Well, I have some concerns about what the
21 scope of these alleged fact witnesses' testimony is going to
22 be.  I think some of it's going to stray far afield of Rule
23 408.  Whether it's going to violate the Hearsay Rule or not,
24 frankly, at this point I can't tell from the proffer.  I just
25 can't tell from the proffer.  I do think that it's going to run

1  afoul of Rule 408 because it does seem to me that in many
2  instances the whole and sole purpose of attempting to get into
3  some of this information is potentially to prove that the
4  settlement is a criteria of liability, and I don't think you're
5  going to get that far under Rule 408.  The one thing that Rule
6  408 is not going to let you do is prove that a settlement that
7  specifically says that no one is acknowledging liability was
8  used for liability purposes, and when you start asking what
9  criteria that Grace told the plaintiffs they had to meet, what
10 evidence was supplied to meet it, I don't know about when in
11 the discovery or trial preparation it was -- the evidence was
12 available, what that's going to be material to in terms of a --
13 of Grace pre-petition, I'm not sure, but -- so, I don't know
14 about that particular factor right now.  But the first two seem
15 to be clearly intended to get to whether or not there is some
16 criteria that looks to be a liability inducing factor.  Then --
17          MR. BERNICK:  Well, we can go -- if Your Honor wants,
18 I've got a little handy-dandy thing that I had ready to go
19 here.  This is -- we can go through this if you'd like.  I,
20 again, thought that the better way to do this --
21          THE COURT:  Well, I'm only trying to get to this at
22 the moment, Mr. Bernick, to see, you know, how much of an issue
23 this is going to be and where in the process it should come up,
24 whether seven days in advance under the case management order
25 is going to be enough, because if, in fact, a record such as a

1  deposition to see (a) whether a privilege assertion of some
2  type is going to be made, because at the moment I'm not seeing
3  what type of questions are coming up that are going to generate
4  a privilege question.  If, in fact, a document request is made
5  to back up some of this information and there is a privilege
6  assertion, then I agree we're going to have to take a look at
7  whether or not the witness can testify, but, at the moment, I'm
8  not seeing what type of question is going to be asked that
9  generates a privilege question, but the problem I see is that
10 the underlying evidence anyway still appears to get to the
11 question of liability.
12           MR. BERNICK:  Well, Your Honor, I think -- we
13 actually continue on with that same thing.  When in the
14 discovery/trial preparation process this evidence was
15 available, that is the whole question of how these law firms
16 work to get information on exposure, and that is the area where
17 we specifically inquired in connection with the questionnaire
18 process to find out about the intake forms.
19           THE COURT:  Well, but that's a different issue from
20 whether or not Grace used a process of settling to admit its
21 liability --
22           MR. BERNICK:  Well --
23           THE COURT:  -- which is the issue for Rule 408.
24           MR. BERNICK:  Fine.  There's another one that makes
25 it -- I think that's what they're getting at with available,