# Exhibit F

**GRACE**

Jay W. Hughes, Jr.
Senior Litigation Counsel

W. R. Grace & Co.
5400 Broken Sound Boulevard N.W.
Boca Raton, FL 33487

Tel.: (561) 362-1532
Fax: (561) 362-1583

May 23, 2000

Theodore Goldberg, Esq.
Goldberg, Persky, Jennings & White, P.C.
1030 Fifth Avenue, Third Floor
Pittsburgh, PA 15219-6295

    Re:   <u>W. R. Grace & Co.-Conn. Asbestos Litigation</u>

Dear Ted:

    Enclosed is a signed copy of the May 1, 2000 Settlement Agreement between W. R. Grace & Co.-Conn. and Goldberg, Persky, Jennings & White, P.C.

    Since the settlement was concluded, Grace has been served in a handful of cases involving your clients. I assume this was an oversight by your staff.

    Please call me with any questions.

Very truly yours,

Jay W. Hughes, Jr.

JWH:vp
enclosure

ACC/FCR-813

## CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement (the "Agreement") is entered into as of the 1st day of May, 2000, by and between (i) W.R. Grace & Co. -- Conn. and (ii) the Settling Plaintiffs (as defined below) by and through their attorneys, Theodore Goldberg and the law firm of Goldberg, Persky, Jennings & White, P.C.

### RECITALS

WHEREAS, the law firm of Goldberg, Persky, Jennings & White, P.C. ("GPJ&W"), as counsel for Plaintiffs, has filed thousands of asbestos-related bodily-injury and wrongful-death claims against others in various courts located in the States of West Virginia, Pennsylvania, Ohio, Michigan, Indiana and Maryland, but has not sued W.R. Grace & Co. -- Conn. because of a tolling agreement.

WHEREAS, W.R. Grace & Co. -- Conn. desires, without in any way admitting liability, to settle the claims by clients of GPJ&W against W.R. Grace & Co. -- Conn. so as to avoid the delay, inconvenience, expense and uncertainties of litigation.

WHEREAS, GPJ&W has determined that the settlement set forth in this Agreement is fair to, and is in the best interests of, each of the Settling Plaintiffs (as defined below) and has agreed, to the extent consistent with its professional responsibilities to its clients, to recommend strongly this settlement and to use its best efforts to have the settlement accepted by each and every Settling Plaintiff (as defined below).

NOW, THEREFORE, in consideration of the premises and the mutual promises and representations contained herein and other good and valuable consideration, the receipt and

sufficiency of which are hereby acknowledged, and with the intent to be legally bound hereby, it is hereby agreed as follows:

## DEFINITIONS AND ELIGIBILITY TO PARCITIPATE IN SETTLEMENT

1.      For purposes of this Agreement, the term "W.R. Grace" means: (i) W.R. Grace & Co. -- Conn. ( a Connecticut corporation); (ii) W.R. Grace & Co. (a New York corporation); (iii) Western Mineral Products Company; (iv) Southern Zonolite Company; and (v) all other persons or entities (including, without limitation, licensees or distributors) to the extent they are alleged by Settling Plaintiffs to be liable for designing, manufacturing, marketing, distributing or otherwise placing into the stream of commerce asbestos-containing products for which W.R. Grace, Western Mineral Products Company or Southern Zonolite are alleged by Settling Plaintiffs to be responsible.  The term "W.R. Grace" also includes, with respect to the entities listed in clauses (i)-(v) of this Paragraph 1, all of their predecessors; successors; assigns; insurers; present and former parents and subsidiaries; present and former partners, principals, shareholders, employees, officers, directors and agents; and all entities controlling or controlled by them.

2.      For purposes of this Agreement, the terms "GPJ&W" means: (i) the law firm of Goldberg, Persky, Jennings & White, P.C.; (ii) all successor firms to the law firms of Goldberg, Persky, Jennings & White, P.C.; (iii) the individual lawyers who are now or who may hereafter become partners, associates, or otherwise affiliated with the law firm of Goldberg, Persky, Jennings & White, P.C.; and (iv) all lawyers and law firms who have referred to Goldberg, Persky, Jennings & White, P.C. any clients who are Settling Plaintiffs (as defined below) or Shipyard Plaintiffs (as defined below) or who are receiving any portion of the attorneys' fees that are paid as a result of the settlement set forth in this Agreement.  Excluded from this Agreement are cases of Michael Serling, Esquire.

2

3.      The plaintiffs eligible to participate in the settlement set forth in this Agreement are referred to herein collectively as "Settling Plaintiffs" and individually as a "Settling Plaintiff." The term "Settling Plaintiffs" means each and every client of GPJ&W as of May 1, 2000, (i) who was a plaintiff in a pending lawsuit in any court (state or federal) wherein any claim is being asserted for monetary damages for any asbestos-related disease, injury or death or who had retained GPJ&W to file such a suit against W.R. Grace; (ii) who is not already a party to or otherwise subject to a prior settlement agreement with W.R. Grace; and (iii) who is not a Shipyard Plaintiff (as defined below). GPJ&W will identify the Settling Plaintiffs by June 1, 2000. It is estimated by GPJ&W that the number and disease categories of Settling Plaintiffs are as set forth on Exhibit A hereto.

4.      Each client of GPJ&W who, as of May 1, 2000, is a plaintiff in a pending lawsuit in any court (state or federal) and who is asserting a claim based on exposure to asbestos that is alleged to have occurred primarily at shipyards or aboard ships is referred to herein as "Shipyard Plaintiff." Shipyard Plaintiffs are not eligible to participate in the settlement set forth in this Agreement and are not included within the definition of Settling Plaintiffs. GPJ&W believes, based on reasonable investigation and evidence developed in asbestos-related lawsuits pending against W.R. Grace and evidence from W.R. Grace that its asbestos-containing products were not used in ships, and that any Shipyard Plaintiffs would not be able to meet applicable legal standards of exposure to W.R. Grace asbestos products for purposes of pursing a claim. W.R. Grace has consistently resisted settlement of all such claims and has consistently indicated that it will never settle such claims. GPJ&W believes that it does not represent any Shipyard Plaintiffs. GPJ&W agrees that should any Shipyard Plaintiff cases be identified, it will seek the client's consent to dismiss the claim against W.R. Grace with prejudice, each side to bear its own costs.

3

Under no circumstances, however, are dismissal of any Shipyard Plaintiffs' cases linked to settlement of other plaintiffs' cases.

## SETTLEMENT PAYMENTS AND DISBURSEMENTS PROCEDURES

5.      GPJ&W agrees that settlement payments from WR. Grace in the following amounts constitute on average a fair and reasonable basis on which to settle  claims of each Settling Plaintiff against W.R. Grace:

### West Virginia Cases

- (i)      $2,250 for each Settling Plaintiff who alleges a non-malignant asbestos-related disease and whose exposure was not as a construction tradesman;

- (ii)      $4,000 for each Settling Plaintiff who alleges a non-malignant asbestos-related disease and whose exposure was as a construction tradesman;

- (iii)      $7,500 for each Settling Plaintiff who alleges an asbestos-related other than lung cancer or mesothelioma.

- (iv)      $12,500 for each Settling Plaintiff who alleges an asbestos-related lung cancer; and

- (v)      $50,000 for each Settling Plaintiff who alleges an asbestos-related mesothelioma.

### Pennsylvania, Michigan, Ohio, Indiana & Maryland Cases

- (i)      $1,750 for each Settling Plaintiff who alleges a non-malignant asbestos-related disease and whose exposure was not as a construction tradesman;

- (ii)      $4,000 for each Settling Plaintiff who alleges a non-malignant asbestos-elated disease and whose exposure was as a construction tradesman;

- (iii)      $7,500 for each Settling Plaintiff who alleges an asbestos-related other than lung cancer or mesothelioma.

4

(iv)    $12,500 for each Settling Plaintiff who alleges an asbestos-related lung cancer; and

(v)    $50,000 for each Settling Plaintiff who alleges an asbestos-related mesothelioma.

In the case of wrongful-death claims, only one payment shall be made under this Paragraph 5 for each decedent, regardless of the number of Settling Plaintiffs who have made claims with respect to that decedent. The amount each Settling Plaintiff receives will not necessarily be the amount set forth above. W.R. Grace understands that GPJ&W may allocate the payments differently among its clients. However, W.R. Grace will pay those amounts on average, regardless of the GPJ&W allocation. GPJ&W agrees, to the extent consistent with its professional responsibilities to its client, to recommend strongly that all Settling Plaintiffs accept payments in the above amount in full and complete settlement of all of their claims against W.R. Grace. GPJ&W represents and warrants that it will explain the settlement reflected in this Agreement to each Settling Plaintiff and has disclosed to each Settling Plaintiff the existence and nature of all of the claims involved in this settlement and the general nature of the participation of each Settling Plaintiff in this settlement.

6.    <u>Additional Payments</u>:

All Settling Plaintiffs paid for a non-malignant disease shall be entitled to an additional payment should they develop mesothelioma or lung cancer. The amount of the subsequent payment for each such case shall be fifty thousand ($50,000) dollars, if for mesothelioma and twelve thousand five hundred ($12,500) dollars, if for lung cancer, less any previous payments made to that claimant under this Settlement Agreement.

7.    The parties estimate that the sum of **seventeen million two hundred eighteen thousand two hundred fifty dollars ($17,218,250)** (the "Settlement Funds") represents the

amount necessary to provide to each Settling Plaintiff the settlement payment to which he or she would be entitled under Paragraph 5 of this Agreement. The amount of the Settlement Funds has been calculated based on Exhibit A hereto, which represents the best information currently available to the parties concerning the identity and the payment category of each Settling Plaintiff. The parties recognize, however, that Exhibit A may not be completely accurate and will work together to resolve any errors or discrepancies that may exist on Exhibit A and will, if necessary, adjust the amount of the Settlement Funds accordingly.

8.      The settlement will be paid in nearly equal monthly installments of $772,580.65. The payments for 2000 shall equal 12 x $772,580.65 or $9,270,967.80, even if that exceeds the estimated monthly payment rate.

9.      GPJ&W will submit approximately 150 Qualifying Materials and releases per month. It is anticipated that Qualifying Materials and releases will be sent beginning in or about June 2000. For 2000, it is anticipated that approximately 1,800 releases will be submitted. Should GPJ&W be late in submitting releases, W.R. Grace will be given a reasonable period of time to process them, but will also endeavor to maintain the payment schedule.

10.     No Settlement Funds shall be disbursed unless and until GPJ&W has (i) received assurance that at least ninety percent (90%) of the Settlement Plaintiffs who allege an asbestos-related lung cancer and asbestos-related mesothelioma have agreed to accept the settlement payments set forth in Paragraph 5 of this Agreement in full and complete settlement of all claims against W.R. Grace and (ii) accomplished the dismissal with prejudice of the claims of all Shipyard Plaintiffs as required by Paragraph 3 of this Agreement. If the conditions set forth in clauses (i) and (ii) of this Paragraph 10 have not occurred by October 1, 2000, then this Agreement shall become null and void, and GPJ&W shall be given leave to join W.R. Grace as a defendant in the asbestos cases. In that event, W.R. Grace, GPJ&W and the Settling Plaintiffs

6

shall each be restored to the respective positions it held immediately prior to execution of this Agreement, and no party to this Agreement shall have any obligations or liabilities to any other party with respect to this Agreement.

11.     Once GPJ&W has received written assurance that the settlement has been accepted by the requisite percentage of Settling Plaintiffs under Paragraph 10 of this Agreement and has sought permission to dismiss with prejudice of all claims by Shipyard Plaintiffs, if any, against W.R. Grace, Settlement Funds may be disbursed, but only in accordance with the following procedure: (i) as GPJ&W submits to W.R. Grace Qualifying Materials (as defined below) for each Settling Plaintiff; (ii) within 30 business days of the receipt of Qualifying Materials for a particular Settling Plaintiff, W.R. Grace shall advise GPJ&W in writing whether W.R. Grace has accepted the Qualifying Materials for that Settling Plaintiff; (iii) upon written notice that W.R. Grace has accepted the Qualifying Materials for a particular Settling Plaintiff, W.R. Grace will make prompt payment of the Settlement Funds based on the payment averages under Paragraph 5 of this Agreement. If W.R. Grace rejects the Qualifying Materials submitted on behalf of any Settling Plaintiffs, no Settlement Funds may be disbursed to, or on account of, that Settling Plaintiff. GPJ&W shall complete the submission of Qualifying Materials on behalf of all Settling Plaintiffs who have accepted the settlement set forth in this Agreement by January 1, 2002, but this may be extended for cause by GPJ&W.

12.     The materials that GPJ&W must submit to W.R. Grace for each Settling Plaintiff are referred to in this Agreement as the "Qualifying Materials." The Qualifying Materials consist of the following: (i) an affidavit or other evidence demonstrating that the Settling Plaintiff (or, for wrongful-death claims, the Settling Plaintiff's decedent) was exposed to an asbestos-containing product that was manufactured, sold or distributed by W.R. Grace ("Exposure Evidence"); (ii) competent medical evidence that the Settling Plaintiff (or, for

7

wrongful-death claims, the Settling Plaintiff's decedent) has an asbestos-related disease or injury of the type set forth in Paragraph 5 of this Agreement ("Medical Evidence"); and (iii) a standard release in the form attached hereto as Exhibit B and a dismissal with prejudice in the form attached hereto as Exhibit C. The parties agree that Exposure Evidence will be deemed sufficient if it demonstrates to W.R. Grace's satisfaction (which satisfaction will not be unreasonably withheld) that: (i) the Settling Plaintiff (or, for wrongful-death claims, the Settling Plaintiff's decedent) worked at a jobsite where it has been previously demonstrated through other evidence that W.R. Grace's products were used and/or installed and (ii) the Settling Plaintiff (or, for wrongful-death claims, the Settling Plaintiff's decedent) worked at such a jobsite during a time period when it is reasonable to expect that the Settling Plaintiff (or his or her decedent) would have been exposed to W.R. Grace's products. The form of the Exposure Evidence may consist of a statement contained in the standard release as follows: "The undersigned verifies under oath that the plaintiff _____ was exposed to asbestos-containing products manufactured or distributed by W.R. Grace in connection with the plaintiff's employment as _____ during the approximate years _____ at the _____ jobsite." The parties further agree that pulmonary-function or other tests administered by any individual or entity named as a defendant in <u>Owens-Corning v. Pitts, et al.</u>, C.A. No. 96-2095 in the United States District Court for the Eastern District of Louisiana, or any similar lawsuit that may be filed in the future (assuming that the basis of any such subsequent suit is well-founded and reasonably implicates the accuracy of the medical material involving the particular Settling Plaintiffs in question), shall not constitute acceptable Medical Evidence.

The Qualifying Materials for a Settling Plaintiffs' claim for an additional payment pursuant to Section 6 hereof shall consist of (i) medical evidence that the Settling Plaintiff has

(had) the disease mesothelioma, and (ii) a standard release in the form attached hereto as Exhibit D. No exposure evidence shall be required as the Settling Plaintiff will have previously qualified.

13.    W.R. Grace shall identify to GPJ&W with reasonable particularity, the defects in any Exposure Evidence and/or Medical Evidence that W.R. Grace determines to be unacceptable. GPJ&W shall then have the opportunity to cure the defects identified by W.R. Grace. W.R. Grace (through Jay W. Hughes, Jr.) and GPJ&W (through Theodore Goldberg) shall endeavor in good faith to resolve any disputes that may arise with respect to the sufficiency of Exposure Evidence and Medical Evidence. W.R. Grace, however, shall retain at all times the reasonable discretion to accept or reject Exposure Evidence and Medical Evidence. In the event that W.R. Grace and GPJ&W are unable to resolve disputes about the sufficiency of Exposure Evidence and/or Medical Evidence, the rejected Settling Plaintiffs may arbitrate to final and binding decision whether the submitted Exposure Evidence and Medical Evidence is satisfactory, considering similar submissions under this Agreement. Any plaintiff who loses or forgoes arbitration may re-enter the tort system.

## MORATORIUM PERIOD AND TOLLING OF LIMITATIONS

14.    Subject only to the exceptions expressly set forth in this Agreement, GPJ&W agrees that they will not commence, file or otherwise pursue any asbestos-related bodily-injury or wrongful-death actions or claims against W.R. Grace (or assist any other counsel in the commencement, filing or pursuit of any such actions or claims against W.R. Grace) during the period from March 1, 2000 to May 1, 2002 (the "Moratorium Period"); provided, however, that GPJ&W (i) may continue to pursue against W.R. Grace during the Moratorium Period the claims of Settling Plaintiffs whose Qualifying Materials are rejected by W.R. Grace and who fail to pursue or who lose arbitration; and (ii) may present to W.R. Grace during the Moratorium Period

9

claims on behalf of claimants who have been diagnosed with an asbestos-related mesothelioma or lung cancer (the "Extraordinary Claimants"), not to exceed seven mesothelioma cases and 25 lung cancer cases per year. W.R. Grace agrees to treat such Extraordinary Claimants as exceptions to the Moratorium Period and to enter good faith negotiations in an attempt to resolve such claims (upon submission and acceptance by W.R. Grace of Qualifying Materials). If the parties are unable to reach an agreement on any Extraordinary Claimants, GPJ&W may proceed to file formal proceedings on behalf of such Extraordinary Claimants.

15.     It is recognized that GPJ&W may, during the Moratorium Period, commence or pursue asbestos-related bodily-injury or wrongful-death case against defendants other than W.R. Grace on behalf of clients who are not Settling Plaintiffs ("Moratorium Plaintiffs"). If GPJ&W adds W.R. Grace as a defendant to any such case after expiration of the Moratorium Period but prior to September 1, 2002, then W.R. Grace agrees to consent to the amendment adding it as a defendant and to accept service of the Amended Complaint by Notice as provided in Section 20 hereafter. For purposes of the statute of limitations only, the case will be deemed to have been filed against W.R. Grace on the day it was first commenced against any other defendant. However, W.R. Grace retains all other defenses. The actual date on which W.R. Grace is added to any such suit shall control for all purposes other than the statute of limitations.

## NO ADMISSION OF LIABILITY

16.     GPJ&W and the Settling Plaintiffs acknowledge that W.R. Grace has denied and continues to deny any liability or wrongdoing and is willing to enter into this Agreement solely to avoid the delay, expense, inconvenience and uncertainty of further litigation. Neither this Agreement, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, shall be (i) deemed to be or constructed as an admission by any party of any fact,

matter, proposition or merit or lack of merit of any claim or defense or (ii) referred to or used in any manner or for any purpose in any pending or future action or proceeding, except one to enforce this Agreement.

## UNDER AND SUBJECT TO APPLICABLE ETHICS RULES

17.    The parties acknowledge that the terms and conditions of this Agreement are subject to applicable Codes of Professional Responsibility, Ethics Rules and similar provisions. To the extent any provision is held to or becomes inconsistent with such requirements, it will not be enforced, and the parties will endeavor to negotiate a revision that is consistent with such rules.  Should it be impossible to do that, the remaining provisions of the Agreement shall still be enforceable, unless to do so would be to deprive either side of the benefit of the Agreement.  It is the parties belief that the Agreement does comply with all applicable Codes of Professional Responsibility Ethics Rules and the like.

## CONFIDENTIALITY

18.    Except to the extent the Settling Plaintiffs or W.R. Grace (or their respective attorneys) are required to disclose such information in order to comply with applicable law or regulation, the terms of this Agreement, including the amount of any consideration paid, shall be kept strictly confidential and shall not be directly or indirectly disclosed by W.R. Grace or the Settling Plaintiffs or their employees, agents or attorneys except by written agreement of the parties or court order.  In the event that the Settling Plaintiffs or W.R. Grace are required to disclose such information in order to comply with applicable law or regulation, they agree that such disclosure will be limited only to those who have a lawful right to know such information and, at the time of such disclosure, they will exact, to the extent practicable, an additional agreement of confidentiality (that equates with their agreement hereunder) from the person or entity to whom such disclosure is made.

11

## NOTICES

19.    All notices or communications required or permitted to be given under this Agreement to Goldberg, Persky, Jennings & White, P.C. or the Settling Plaintiffs shall be addressed to:  Theodore Goldberg, Goldberg, Persky, Jennings & White, P.C., 1030 Fifth Avenue, Pittsburgh, Pennsylvania 15219.

20.    All notices or communications required or permitted to be given under this Agreement to W.R. Grace shall be addressed to:  Jay W. Hughes, Jr., W.R. Grace & Co.--Conn., 5400 Broken Sound Boulevard N.W., Boca Raton, FL 33487.

## ENTIRE AGREEMENT & JOINT AGREEMENT

21.    This Agreement shall for all purposes include all Exhibits and such Exhibits are incorporated herein.   This Agreement embodies the entire agreement among the parties, supersedes all prior agreements and understandings relating to the subject matter hereof and may be amended only by a written agreement executed jointly by all parties hereto.  In executing this Agreement, each party represents and warrants that he or she is not relying on any representation of any other party with respect to the subject matter hereof, except those explicitly set forth in this Agreement.  Any action to enforce this Agreement with respect to a particular Settling Plaintiff shall be filed in the court where the Settling Plaintiffs' case was pending.

22.    This Agreement has been prepared by joint negotiations of the parties.  Neither party is to be deemed the primary scrivener of this document.

## BANKRUPTCY OR REORGANIZATION

23.    Should W.R. Grace be placed into bankruptcy or reorganization, either voluntarily or involuntarily, the Settling Plaintiffs who were not already paid, and the Moratorium Plaintiffs may, at their individual option, reject this Agreement and assert their claims unrestricted by this Agreement.  However, even if they reject this Agreement, the Settling Plaintiffs and Moratorium

12

Plaintiffs shall continue to have the protection from the statute of limitations in this Agreement and prior agreements.

EXECUTED as of the ___22nd___ day of ___May___, 2000.

W.R. GRACE & CO. -- CONN.

By: _____
Jay W. Hughes, Jr.
Senior Litigation Counsel


GOLDBERG, PERSKY, JENNINGS & WHITE, P.C.

By: _____
Theodore Goldberg

13