THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: April 4, 2008 at 4:00 p.m.** |
| | ) | **Hearing Date: April 21, 2008 at 12:00 p.m.** |

## DEBTORS' MOTION FOR ORDER AUTHORIZING
## PAYMENT OF CERTAIN PREPETITION REAL PROPERTY TAX CLAIMS

The Debtors hereby request entry of an order authorizing them to pay certain prepetition claims of governmental units for real property taxes accrued prior to the Petition Date (the "Prepetition Property Tax Claims"). Payment of these Prepetition Property Tax Claims is in the best interest of the Debtors' estates and a sound exercise of their business judgment. Payment of these claims will stop the accrual of above-market interest rates and allow for the removal of liens from the Debtors' Owned Properties. Such resolution would not give the governmental entities any more than that to which they otherwise would be entitled under a plan of reorganization, and therefore does not adversely affect the Debtors' other creditors. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 363(b) and 507(a)(8) of the Bankruptcy Code, 11 U.S.C. §§ 101-1.330, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Bankruptcy Code").

## Background and Relief Requested

3. The Debtors own real property in a number of U.S. states (collectively, the "Owned Properties"). Under applicable law, state and local governments (collectively, the "Taxing Authorities") in the jurisdictions where the Owned Properties are located are granted the authority to levy taxes against such real property (collectively, the "Property Taxes"). The Debtors typically pay taxes on their Owned Properties in the ordinary course as such taxes are invoiced, which typically covers taxes for the prior year or quarter, depending on how the applicable tax is assessed. Thus, as of the Petition Date, the Debtors owed taxes that accrued with respect to the Owned Properties for some portions of the 2000-2001 calendar years. Exhibit A attached hereto is a schedule of all of the Prepetition Property Tax Claims filed in the Chapter 11 Cases involving outstanding amounts in excess of $1,500 for which relief is being sought in this Motion.

4. For the past 18 months, the Debtors have been actively reconciling their non-asbestos claims. During this period, the Debtors have expunged or resolved approximately 1000 non-asbestos claims. Accordingly, there remains only approximately 275 non-asbestos claims to be resolved in the Chapter 11 Cases. At least eight of these 275 non-asbestos claims are for Prepetition Property Tax Claims. As noted on Exhibit A, the Debtors have reconciled a number

2

of these claims either through court stipulation or court order; however, a number of these claims remain to be reconciled and continue to accrue above-market interest rates and penalties. The length of these Chapter 11 Cases, combined with the high interest rates, have caused the Debtors' prepetition tax obligations to nearly double according to the Debtors' internal calculations. The Debtors wish to stop the continued accumulation of these above-market interest rates by reconciling the remaining claims and then paying the outstanding Prepetition Property Tax Claims to prevent further accumulation of exorbitant interest rates.

5. In addition to the Debtors' concerns over interest, the law in most, if not all, of the jurisdictions in which the Owned Properties are located provides for the creation of a statutory lien on the Owned Properties if the applicable Prepetition Property Tax Claims are not timely paid. Such statutory tax liens typically arise on or relate back to a date prior to the due date of the tax bill (e.g., assessment date or tax status date).

6. The relation back of a tax lien to the assessment or tax status date generally does not affect the enforceability of the tax lien against a debtor or violate the automatic stay imposed by section 362(a) of the Bankruptcy Code. See 11 U.S.C. § 362(b)(3). In fact, under section 362(b)(18) of the Bankruptcy Code, even if the tax lien does not arise under applicable law until the tax bill due date (or thereafter) and such date occurs after the chapter 11 petition date, the creation and perfection of such a tax lien does not violate the automatic stay. See 11 U.S.C. § 362(b)(18) (automatic stay does not apply to "the creation or perfection of a statutory lien for an *ad valorem* property tax, or a special tax or special assessment on real property whether or not *ad valorem*, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition."). See also 3 Collier on Bankruptcy § 362.05[17], at 362-77 (15th ed. rev. 2005) (section 362(b)(18) of the Bankruptcy Code reversed case law that had held that

the creation of a statutory lien for *ad valorem* property taxes violated the automatic stay). As a result, if applicable law provides for the creation of a lien upon the failure to pay property taxes, that tax lien generally will be perfected and enforceable against a debtor regardless of the date on which such lien is created. Moreover, many jurisdictions' statutes grant a tax lien priority over all other liens imposed against the property. See, e.g., Ill. Ann. Stat. ch. 35.

7. Since, in the Debtors' estimation, most Taxing Authorities to whom the Debtors owe prepetition Property Taxes likely hold oversecured claims against the Debtors' estates, such claims, under section 506(b) of the Bankruptcy Code, will accrue interest. See 11 U.S.C. § 506(b). See also, United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241-43 (1989) (nonconsensual lienholders may receive interest on their claims under section 506(b) of the Bankruptcy Code). Although Ron Pair does not specify the rate at which such interest shall accrue, recently amended section 506(b) of the Bankruptcy Code provides that the interest rate dictated by the local tax statute is the appropriate benchmark. Specifically, the amended section 506(b) mandates that the interest and other charges accrued on an oversecured claim are to be determined by "the agreement *or State statute* under which such claim arose." (emphasis added) 11 U.S.C. § 506(b). In most of the jurisdictions where the Debtors operate, such interest rates range from 12-18% per annum. In Cook County, Illinois, for instance, where the Debtors have an Owned Property, the Taxing Authorities are authorized to charge interest at the rate of 18% per annum with respect to unpaid prepetition Property Taxes. See Ill. Compiled Stat. Ch. 35, §§ 200/21-15 (1-1/2% in interest per month or 18% per annum). See also Tenn. Code Ann. § 67-5-2010 (2006) (charging up to 18% per annum including interest and penalties); Wis. Stat. Ann. § 74.47 (same). The range of interest rates substantially exceeds the Debtors' cost of capital at current market rates and, over the course of the Chapter 11 Cases, the Debtors arguably have

accrued interest penalties at an exorbitant rate such that the Debtors seek to now stem any further accruals as part of its non-asbestos claims reconciliation process.

8. Furthermore, if the Debtors continue to be charged these high statutory interest rates against unpaid tax amounts, the relevant Taxing Authorities will in effect receive above-market interest rate payments on their claims, and the amounts ultimately available to fund the Debtors' plan of reorganization may be decreased as a result.

9. Moreover, even if the Prepetition Property Tax Claims are unsecured, those claims most likely constitute priority claims entitled to payment prior to the general unsecured creditors. See 11 U.S.C. § 507(a)(8)(B) (referring to "property tax[es] incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition"). To the extent that the Prepetition Property Tax Claims are entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the governmental units may also attempt to assess penalties. See 11 U.S.C. § 507(a)(8)(G) (granting priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").

10. Consequently, resolution of the Prepetition Property Tax Claims and immediate payment of the undisputed Prepetition Property Tax Claims will give the governmental entities no more than that to which they otherwise would be entitled under a plan of reorganization and will save the Debtors the potential continuing interest expense (and penalties) that otherwise might accrue on the Prepetition Property Tax Claims during the remainder of the Chapter 11 Cases. Accordingly, the Debtors seek authority to pay the undisputed Prepetition Property Tax Claims to avoid any further accrual of interest and penalties with respect to such unpaid taxes.

## Basis for Relief

### Sections 105 and 363(b) of the Bankruptcy Code

11. This Court has the statutory authority to authorize the Debtors to pay the undisputed Prepetition Property Tax Claims pursuant to Bankruptcy Code sections 105(a) and 363(b).

12. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

13. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. §363(b)(1). This Court may authorize the Debtors to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by some "articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

14. The payment of the undisputed Prepetition Property Tax Claims is in the best interest of the Debtors' estates as such payment would stem the accrual of above-market interest rates on claims that are resolved and would allow for the removal of liens from the Debtors'

Owned Properties. Since such payment would not give the governmental entities any more than that to which they otherwise would be entitled under a plan of reorganization, the authorization requested herein does not adversely affect the Debtors' other creditors and indeed avoids additional interest and penalties obligations that continue to accumulate on the Prepetition Property Tax Claims. Therefore, the payment for which the Debtors seek authority is an exercise of their sound business judgment.

### Section 507(a)(8) of the Bankruptcy Code

15. The payment of property taxes incurred before the filing of the Debtor's petition is granted priority status under Section 507(a)(8) of the Bankruptcy Code. Section 507(a)(8)(B) grants eighth priority status to unsecured claims of governmental units that are for "a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of filing of the petition." 11 U.S.C. § 507(a)(8)(B).[2]

16. In order for the property tax claim to be granted priority of payment, it must meet two criteria: (1) it must be incurred prior to the petition date; and (2) it must have been "payable without penalty sometime within the year before the bankruptcy was filed." In re Precision Concepts, Inc., 305 B.R. 438, 446 (Bankr. D.N.C. 2004); see also In re Connolly, 334 B.R. 539, 541 (Bankr. D. Mass. 2005). The tax is deemed to be "incurred" at the time that the debtor becomes obligated and liable for the payment of the tax as provided in the tax statute. See 4 Collier on Bankruptcy ¶ 507.10[3][b]; see also In re Proxim Corp., 369 B.R. 812, 815-817 (Bankr. D. Del. 2007) (discussing the significance of Congress' revision of section 507(a)(8)(B) by the 2005 Amendments to replace "assessed" with "incurred"). For the second requirement,

---

[2] It should be noted that this statue reflects the amendment made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which changed the language to "incurred" from "assessed." This change applies to all petitions filed after the effective date of October 17, 2005. Congress granted priority status to these claims in recognition of the governmental unit's position as an "involuntary creditor of the debtor... [who] cannot choose its debtors, nor can it take security in advance of the time the taxes become due." 4 Collier on Bankruptcy ¶ 507.10 (15th rev. ed. 2007) (quoting H.R. Rep. No. 595 (1977)).

the property tax must have been payable without a penalty at some date after one year prior to the date of the petition's filing. In re Precision Concepts, Inc., 305 B.R. at 446; see In re Grivas, 123 B.R. 876, 880, 881 (Bankr. S.D. Cal. 1991) (discussing conditions necessary to qualify for priority under section 507(a)(7)(B) (later recodified as 507(a)(8)(B))). Section 507(a)(8)(B) does not require, however, that tax be payable without penalty before the petition was filed. See In re Wang Zi Cashmere Prods., 202 B.R. 228, 231 (Bankr. D. Md. 1996) ("The phrase in 11 U.S.C. § 507(a)(8)(B) that a tax be last payable "after one year before the date of the filing of the petition" does not limit itself either to a prepetition or a postpetition period."). If these two prongs are satisfied, then the property tax claim qualifies as an eighth priority claim under section 507(a)(8)(B). City of White Plains v. A & S Galleria Real Estate, Inc. (In re Federated Dep't Stores, Inc.), 270 F.3d 994, 997-8 (6th Cir. 2001).

17. Courts have differed on whether priority claims, especially unsecured claims, may be paid before the confirmation of a plan given that the Bankruptcy Code does not expressly grant courts permission to authorize preconfirmation payment of prepetition claims. 5 Norton Bankr. L. & Prac. 3d § 95:3 (3d 2008). Although the Norton Guide acknowledges the lack of authorities and opinions in this area, the authors note that payment of prepetition claims are generally allowed for "claims related to taxes" among other priority claims. Id. at § 95:8.[3]

18. In an analogous case, a United States Bankruptcy Court in the Northern District of Texas allowed for the payment of priority prepetition age and benefits claims holding that they were allowed under section 507(a)(3)-(4) prior to the confirmation of the reorganization plan so

---

[3] One court in the Northern District of Ohio has held that priority claims could not be paid preconfirmation because the payment would violate the order of priority established by the Bankruptcy Code. In re Revco D.S., 91 B.R. 777, 781 (Bankr. N.D. Ohio 1988). In this case, the Debtors only proposed to pay "pre-petition 'trust fund' taxes and no other taxes or claims within the same level of priority." Id. Thus, the court rejected the Debtors' request on grounds that section 507(a)(7), which granted priority to this claim, also granted equal priority status to other tax claims, including property tax. Id. Although this case addresses a request to make a preconfirmation payment of prepetition taxes, no other cases could be found that extended the holding of this court.

long as "existing holders of claims of higher priority ... consent[ed] or [did] not timely object." In re CEI Roofing, Inc., 315 B.R. 50, 61 (Bankr. N.D. Tex. 2004). Consequently, this court held that "such priority claims may be made during the pendency of the bankruptcy case [and the] treatment and payment of such claims before confirmation does not violence to the Code...." Id.

19. Accordingly, the Debtors assert that payment of the undisputed Prepetition Property Tax Claims at this time can and should be authorized by this Court.

**Precedent from Other Chapter 11 Cases**

20. Bankruptcy courts routinely have authorized the payment of real property taxes in other large chapter 11 cases in this District and elsewhere. See, e.g., In re DURA Auto. Sys., Inc., No. 06-11202 (KJC) (Bankr. D. Del. Dec. 22, 2006) (Docket No. 433, authorizing payment of real and personal property taxes); In re Teleglobe Comm. Corp., No. 02-11518 (MFW) (Bankr. D. Del. May 28, 2002) (Docket No. 30, same); In re USG Corp., No. 01-2094 (RJN) (Bankr. D. Del. Sept. 20, 2001) (Docket No. 16, same); In re Northwest Airlines Corp., No. 05-17930 (ALG) (Bankr. S.D.N.Y. Apr. 12, 2006) (Docket No. 2401, authorizing payment of certain prepetition property and other taxes up to $55 million in the aggregate); In re Calpine Corp., No. 05-60200 (BRL) (Bankr. S.D.N.Y. March 22, 2006) (Docket No. 1103, authorizing payment of prepetition property taxes up to $37 million in the aggregate); In re NRG Energy, Inc., No. 03-13024 (PCB) (Bankr. S.D.N.Y. Sept. 18, 2003) (Docket No. 705, authorizing payment of prepetition property taxes up to $89 million in the aggregate).

21. For all of the foregoing reasons, the Debtors seek authority to pay the undisputed prepetition amounts owed by the Debtors on account of outstanding Prepetition Property Tax Claims in an aggregate amount up to $1.4 million, and to discharge any tax liens asserted against the Debtors' Owned Properties in connection with such claims. The Debtors further seek authority to have the Prepetition Property Tax Claims listed on Exhibit A hereto expunged once

reconciled upon the filing of notice of such payment.

22. Nothing in this Motion should be construed as: (a) an admission as to the validity or priority of any claim against the Debtors; (b) a request for the allowance of any claim against the Debtors; (c) a waiver of the Debtors' rights to dispute any claim; or (d) an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

## Notice

23. The Debtors have provided notice of this Motion to: (i) the office of the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in these Chapter 11 Cases, (v) counsel to the Future Claimants' Representative, (vi) the Taxing Authorities, and (vii) those parties that requested service and notice of papers in accordance with Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

24. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as <u>Exhibit B</u>, (a) granting the relief requested herein and (b) granting such other and further relief as is just and proper.

Dated: March 17, 2008

KIRKLAND & ELLIS LLP
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

*James E. O'Neill w/ permission*
Laura Davis Jones (Bar No. 2436)   *PEN (Bar No. 3753)*
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone (302) 652-4100
Facsimile (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession