**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,<br><br>Debtors. | Chapter 11<br>Case No.: 01-1139 (JKF)<br><br>Jointly Administered<br>**Hearing Date: March 25, 2008 at 8:30 a.m. (Pittsburgh, PA)**<br>**Objection Deadline: March 19, 2008 at 4:00 p.m.**<br>**Related Docket Nos. 18110, 18177** |

# LIMITED OBJECTION OF UNIFIRST CORPORATION TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING LIABILITY TRANSFER AGREEMENT FOR CERTAIN ENVIRONMENTAL LIABILITIES AND PROPERTIES

Interested party UniFirst Corporation ("UniFirst") hereby files its Limited Objection to the Motion of Debtors for Entry of an Order Authorizing Liability Transfer Agreement for Certain Environmental Liabilities and Properties ("Motion"). UniFirst has no objection in principle to the desire on the part of W.R. Grace & Co. – Conn. ("Grace", and together with all other debtors and debtors-in-possession, "Debtors"), to partner with third-party Environmental Liability Transfer Inc. ("ELT") in addressing Debtors' pollution liability and environmental remediation obligations in Woburn, Massachusetts and at the other locations covered by the Motion; however, as explained below, UniFirst has an interest in ensuring that there are adequate financial assurances of performance, particularly as to any work at the Woburn, Massachusetts Superfund site for which UniFirst and Grace are or may be jointly and severally liable. In addition, UniFirst has sought from Debtors' counsel, and files this Limited Objection to obtain, clarification of several matters that are unclear on the face of the Motion.

## THE G & H WELLS SUPERFUND SITE

UniFirst, Grace and a third party, Beatrice Company ("Beatrice") have worked closely together for many years in responding to pollution conditions on and in the vicinity of their industrial properties in Woburn, Massachusetts. The U.S. Environmental Protection Agency

("EPA") pursuant to Section 105 of CERCLA,[1] placed the Wells G & H Superfund Site in Woburn, Massachusetts (the "Woburn Site") on the National Priorities List in 1982. The decision by EPA on the Woburn Site is embodied in a Final Record of Decision ("ROD") executed on September 14, 1989 (copy attached as Exhibit 1). Each of UniFirst, Grace and Beatrice is a party to a 1991 Consent Decree ("Decree")with the United States to implement the remedy that EPA selected and perform related obligations with respect to certain portions of the Woburn Site (copy attached as Exhibit 2).

The Woburn Site has been divided into three "Operable Units": (1) the "Source Area Properties" ("OU-1"); (2) the "Central Area" ("OU-2"): and (3) the Aberjona River and its associated floodplain and wetlands ("OU-3"). Under the terms of the Decree, Grace, UniFirst and Beatrice are Source Area Defendants; each has "Primary Responsibility" for clean-up of its own "Source Area Property." In addition, because the Grace and UniFirst properties are within the same quadrant of the Site, UniFirst has been assigned "Secondary Responsibility" for clean-up of the Grace property:

> Section 2. W.R. Grace & Co. Property
>
> Primary Responsibility
>
> Grace shall perform that portion of the Work to be conducted at the Grace property.
>
> Secondary Responsibility
>
> In the event that EPA determines that Grace is unable to perform the Work at the Grace property, UniFirst shall be liable, after receiving notice from EPA of such inability, for the performance of all remaining requirements of such Work.

Consent Decree, Schedule A, Section I.2.

---

[1] The Comprehensive Environmental Response, Compensation and Liabilities Act, 42 U.S.C. §§ 6901, et. seq.

Except with respect to monitoring, the Decree does not address remediation of any areas other than the Source Area Properties. It does require, however, that the Source Area Defendants complete a Remedial Investigation/Feasibility Study for the Central Area ("Central Area RI/FS"), to be used as the basis for selecting a final remedy for that portion of the Site. The Central Area constitutes the majority of the Woburn Site, and consists of everything but the Source Area Properties and Aberjona River operable units. UniFirst, Beatrice and Grace submitted a report to EPA in the mid-1990s, known as the "Phase IA Report," addressing the Central Area. EPA has deferred formal comments on the Phase IA Report, but it has indicated that additional work will be required to generate up-to-date environmental testing data for the Central Area, and that EPA's goal remains restoration of groundwater there to drinking water quality.

The parties to the Decree, including UniFirst, Grace and Beatrice, are jointly and severally liable for the Central Area RI/FS. Consent Decree, Schedule A, Section 4II. In addition to the costs that UniFirst, Beatrice and Grace must incur to complete the Central Area RI/FS, they face potential joint and several liability for performing the work that EPA ultimately will require to implement the remedy it selects for the Central Area.

UniFirst, Beatrice and Grace have worked cooperatively for two decades in responding to environmental conditions at the Woburn Site. They are parties to a written cost sharing agreement, dated November 26, 1990, with respect to the Central Area RI/FS and associated EPA Oversight Costs (copy attached as Exhibit 3). In addition, Grace and UniFirst have an informal cost-sharing arrangement with respect to annual off-site (i.e., off the Source Area Properties) groundwater sampling conducted for each of them by a common sampling contractor and testing laboratory.

## I. DEBTORS' CONTINUING LIABILITY

Debtors acknowledge in the Motion that they have continuing financial obligations with respect to the Woburn Site. Debtors propose the establishment of a Trust to secure performance by ELT of those obligations, among others. The Debtors' estimate of their Woburn Site liabilities is $1,539,000 and (with a 15% budgeted contingency), Debtors allocate the sum of $1.8 million as necessary to secure performance of the liabilities assumed by ELT for the Woburn Site. UniFirst has concerns regarding the structure, funding and amount of the proposed Trust, as discussed below. A threshold issue, however, is whether Debtors ultimately intend to fulfill all of their Woburn Site liabilities. The proposed order does not provide for Debtors to be released or discharged from any Woburn Site liabilities, but the multiple references in the Motion to "remov[ing]" and "eliminat[ing]" environmental liabilities, to "establish a *clean slate* for moving forward," Motion, ¶¶ 3, 4, 18 (emphasis added), require clarification.

It is not clear from the language of the Motion that Grace will remain answerable for the Woburn Site liabilities, notwithstanding the assumption of Grace's liabilities by ELT, in the event the Trust funding proves inadequate and ELT fails to satisfy such liabilities from its own assets. Likewise, it is not clear that ELT in fact will be answerable for all of those liabilities, particularly if it is Debtors' intention to seek a discharge of all or a portion of those liabilities, and ELT expects to avail itself of such a discharge as a defense to any of the liabilities assumed.

The Decree is explicit that transfer of the subject property, which requires advance notice to EPA, shall not terminate the party's obligations under the Decree:

> In the event of any such conveyance, the Settling Defendants' obligations under this Consent Decree shall continue to be met by the Settling Defendant *and*, subject to approval by the United States, in consultation with the Commonwealth [of Massachusetts], by the grantee.

Consent Decree, Section V, 7.e. (at p. 21) (emphasis added). If the agreement with ELT is

approved, Debtors will retain a right of re-entry if ELT fails to perform remedial work, see Motion ¶8F. and Ex. A, Liability Transfer Agreement ("LTA"), Section 6.4. Rather than preserving access to remedy non-compliance with the Decree, however, the right of re-entry may be motivated by Debtors' interest in preserving their contingent economic interest in realizing the properties' value. Neither the Motion nor the proposed form of order explicitly states that Debtors shall retain ultimate responsibility for Woburn liabilities in the event of ELT's default.

Because the proposed Trust amounts are contingent, speculative, not segregated by property, not adequately supported in the record, and in the case of the Woburn property, which is the only liability estimate UniFirst has a basis to evaluate, either incomplete or inadequate to address all potential pollution and environmental remediation liabilities, Debtors should be required to state unequivocally whether Debtors will also remain obligated for all liabilities transferred to ELT (and for any liabilities not transferred), and whether Debtors will seek, now or hereafter, to be released or discharged from any such liabilities absent their satisfaction by ELT. Nothing less will allow UniFirst to make an informed assessment of the Motion, especially given the failure of the Motion to include any balance sheet or other current financial statements of ELT, a privately held company not subject to public financial reporting. Explicitly encompassed by this inquiry is whether Debtors will seek a discharge in bankruptcy from any obligations they may have for the Central Area portion of the Woburn Site beyond those provided in the Decree.

## II. ADEQUACY OF THE TRUST

The proposed Trust will initially be funded with a $2.5 Million contribution by ELT within 180 days after Closing,[2] mirroring a $2.5 Million initial purchase price payment to the Debtors. Any further deposits into the Trust are contingent on sales of *contaminated* properties.

[2] This commitment by ELT is potentially illusory, as under Section 3.5 of the LTA, ELT has the option to fund the initial contribution from the sale proceeds of Debtors' Charleston, South Carolina property.

The estimated property values are not supported with independent appraisals. Further, the Motion and LTA contemplate that significant portions of the sales proceeds will be distributed to both Debtors and ELT before all of the Debtors' environmental liabilities are discharged or even provided for by adequate Trust deposits.

Specifically, Section 3.4 of the LTA allocates sale proceeds of properties as follows:

> (a) 40% is paid to Grace, until Grace has received a total of $4,359,000, including the initial $2.5 Million payment;
>
> (b) 35% shall be deposited into the Trust until Grace has received the $4,359,000 total, and thereafter 75% shall be deposited into the Trust; and
>
> (c) 25% shall be retained by ELT until the Trust is funded with a total of $11 Million and after that 100% of sale proceeds shall be retained by ELT.[3]

Based on its knowledge of Grace's obligations and operating requirements, after decades of collaboration at the Woburn Site, UniFirst believes that Debtors' $1.8 Million estimate cannot possibly addresses the full scope of Debtors' existing and potential liabilities for the Woburn Site. Even if it did, the proposed Trust structure provides no assurance that sum will be held in trust to pay Debtors' Woburn liabilities. Because both Trust deposits and liabilities are not segregated, but rather spread across ten properties, no amount is assured to be available for Debtors' Woburn Site liabilities. All trust deposits beyond the initial $2.5 Million deposit are contingent on sale of contaminated properties, and the viability of the Trust depends upon the accuracy of liability estimates for all ten sites, none of which are supported in the record by anything more than a two-page, unsworn letter from ELT itself, that provides no indication of ELT's assumptions or methodology for estimating Debtors' pollution and environmental

---

3 There is a similar allocation formula for Debtors' Charleston, South Carolina property under LTA Section 3.5, with the Debtors and ELT sharing equally any sale proceeds in excess of $3 Million with no requirement that any of such excess sale proceeds be Trust.

remediation liabilities. At a minimum, Debtors should be required to furnish adequate evidentiary support to validate and to more fully delineate the scope of ELT's liability estimates.

Specifically with respect to ELT's estimate of Debtors' liability for the Woburn Site, which UniFirst believes it does have some ability to evaluate, it appears to UniFirst that the budgeted $1.8 Million amount must not contemplate anything more than performance of Debtors' ongoing operations and maintenance ("O&M") obligations with regard to the Grace property, together with reimbursement of EPA's Oversight Costs, for some finite period of time under the existing Decree. Notably, there is no apparent end point for those obligations under the Decree. Even if perhaps arguably adequate for that purpose, which Debtors have not established and seems to UniFirst highly doubtful given the scope of the Debtors' continuing O&M obligations, the $1.8 Million estimate would not appear to include any provision for further Central Area RI/FS obligations under the existing Decree, let alone for any potential Central Area pollution liability or environmental remediation costs. Debtors should be required to clarify what liabilities are included in the $1.8 Million Woburn Site liability estimate.

## III. COST SHARING AGREEMENTS

Grace, UniFirst and Beatrice are parties to a written cost sharing agreement relating to Central Area RI/FS obligations and EPA Oversight Costs under the existing Decree. That contract is not identified in LTA Exhibit B-10 as an assignable contract and it may not be transferred to ELT because it may be an excluded liability under LTA Section 2.2(h).

This seems inconsistent with the Motion's premise that ELT will simply step into Debtors' shoes with respect to performance of their environmental obligations. The Central Area RI/FS and EPA Cost Oversight liabilities are a part of the Decree and will remain Debtors'

obligations whether or not assumed by ELT. Grace should clarify its intentions with respect to assignment to ELT of the Beatrice-UniFirst-Grace cost sharing agreement (Exhibit 3).[4]

## IV. GAP PERIOD EPA OVERSIGHT COSTS

Debtors previously reached a settlement with EPA concerning Debtors' liability for EPA Oversights Costs covering the period to September 30, 2005. See Settlement Agreement Resolving the United States' Proofs of Claim Regarding Certain Environmental Matters (copy attached as Exhibit 4). Under the terms of the LTA, ELT will prospectively assume liability for EPA Oversights Costs as of the Effective Date of the LTA.[5]

The result is that there is a gap period from September 30, 2005 until the Effective Date of the LTA ("Gap Period") that has not been settled or paid by Debtors and that is not assumed by ELT. UniFirst recognizes that EPA has not billed for Oversights Costs for the Gap Period, but, whenever billed by EPA, they should remain an obligation of the Debtors. UniFirst requests that Debtors clarify whether they intend to treat the post-September 30, 2005 Gap Period EPA

---

[4] UniFirst and Grace also have an informal cost sharing arrangement covering certain groundwater sampling costs. Counsel for Grace has advised that details of this nature are expected to be addressed in a "transition plan" and that the general intent of Debtors and ELT is to preserve the status quo. Because no transition plan has been shared with UniFirst, it is not known how such future costs will be addressed by Debtors and ELT.

[5] The Effective Date is defined in Section 12 of the LTA as the date of entry of an order approving the LTA.

Oversights Costs as an administrative expense of the Debtors' Estate or, if not, how Debtors propose to treat any Oversight Costs billed by EPA for such Gap Period.

Dated: March 18, 2008
Wilmington, Delaware

Respectfully submitted,

UNIFIRST CORPORATION,

By its attorneys,

/s/ David M. Fournier

David M. Fournier
PEPPER HAMILTON LLP
Hercules Plaza
1313 Market Street, Suite 5100
Wilmington, DE 19899-1709
Tel.: 302.777.6500
Fax: 302.421.8390

and

Michael J. Pappone
Richard A. Oetheimer
Gregory A. Bibler
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02109-2881
Tel.: 617.570.1000
Fax: 617.523.1231