# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>       v.<br><br>Wildwood Conservation<br>Corporation,<br>John J. Riley, Jr.,<br>City of Woburn,<br>UniFirst Corporation,<br>New England Plastics<br>Corporation,<br>Charrette Corporation,<br>Massachusetts Rifle Association,<br>Northern Research and<br>Engineering Corporation,<br>Ingersoll-Rand Company,<br>Beatrice Company,<br>Cummings Properties Management<br>Inc.,<br>and W.R. Grace & Co. - Conn.<br><br>       Defendants. | CIVIL ACTION NO.<br><br>91-11807-MA<br>ENTERED 10/9/91 |

| |
|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>        Plaintiff,<br><br>       v.<br>Wildwood Conservation<br>Corporation,<br>UniFirst Corporation,<br>New England Plastics<br>Corporation,<br>Beatrice Company,<br>and W.R. Grace & Co. - Conn.<br><br>       Defendants. |

CONSENT DECREE

# TABLE OF CONTENTS

Page

I.      BACKGROUND . . . . . . . . . . . . . . . . . . . . 2

II.     JURISDICTION . . . . . . . . . . . . . . . . . . . 5

III.    PARTIES BOUND . . . . . . . . . . . . . . . . . . 6

IV.     DEFINITIONS . . . . . . . . . . . . . . . . . . . 7

V.      GENERAL PROVISIONS . . . . . . . . . . . . . . . 14

VI.     PERFORMANCE OF THE WORK BY

        SOURCE AREA DEFENDANTS . . . . . . . . . . . . . 22

VII.    U.S. EPA PERIODIC REVIEW TO ASSURE

        PROTECTION OF HUMAN HEALTH AND ENVIRONMENT . . . . 28

VIII.   ADDITIONAL WORK . . . . . . . . . . . . . . . . 29

IX.     QUALITY ASSURANCE; SAMPLING . . . . . . . . . . 31

X.      ACCESS TO PROPERTY . . . . . . . . . . . . . . . 33

XI.     REPORTING REQUIREMENTS . . . . . . . . . . . . . 35

XII.    SUBMISSIONS REQUIRING AGENCY APPROVAL . . . . . . 38

XIII.   REMEDIAL PROJECT MANAGER/PROJECT COORDINATORS . . 39

XIV.    ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . 40

XV.     CERTIFICATION OF COMPLETION OF WORK . . . . . . . 42

XVI.    ENDANGERMENT AND FUTURE RESPONSE . . . . . . . . 44

XVII.   REIMBURSEMENT OF RESPONSE COSTS . . . . . . . . . 46

XVIII.  INDEMNIFICATION AND INSURANCE . . . . . . . . . . 50

XIX.    FORCE MAJEURE . . . . . . . . . . . . . . . . . 54

XX.     DISPUTE RESOLUTION . . . . . . . . . . . . . . . 57

XXI.    STIPULATED PENALTIES . . . . . . . . . . . . . . 62

XXII.   COVENANTS NOT TO SUE BY PLAINTIFFS . . . . . . . 66

Page

XXIII.      CONTRIBUTION PROTECTION . . . . . . . . . . . . 75

XXIV      COVENANTS BY DEFENDANTS; NOTIFICATION OF CLAIMS . .77

XXV.      ACCESS TO INFORMATION . . . . . . . . . . . 78

XXVI.      RETENTION OF RECORDS . . . . . . . . . . . . 80

XXVII.      NOTICES AND SUBMISSIONS . . . . . . . . . . 82

XXVIII.      REMOVAL OF LIEN. . . . . . . . . . . . . . . 83

XXIX.      EFFECTIVE DATE . . . . . . . . . . . . . . 84

XXX.      RETENTION OF JURISDICTION . . . . . . . . . . 84

XXXI.      TERMINATION . . . . . . . . . . . . . . 84

XXXII.      MODIFICATION . . . . . . . . . . . . . . 85

XXXIII.      COMMUNITY RELATIONS . . . . . . . . . . . 86

XXXIV.      COMMUNICATION AND COORDINATION AMONG DEFENDANTS . . 87

XXXV.      LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . 88

XXXVI.      SIGNATORIES . . . . . . . . . . . . . . . 89

## LIST OF APPENDICES

I.          RECORD OF DECISION (ROD)

II.          STATEMENT OF WORK

III.          SITE MAP

IV.          SETTLING DEFENDANTS

V.          NOTICES OF OBLIGATION

VI.          EXPLANATION OF SIGNIFICANT DIFFERENCES

VII.          ACCESS AGREEMENT

I.

## BACKGROUND

The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), the National Oceanic and Atmospheric Administration ("NOAA"), and the Department of the Interior ("DOI"), and the Commonwealth of Massachusetts ("Commonwealth") on behalf of the the Massachusetts Department of Environmental Protection ("DEP") filed Complaints in this matter pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq., as amended (hereinafter "CERCLA"), the Solid Waste Disposal Act, 42 U.S.C. §§ 6901 et seq., the Massachusetts Oil and Hazardous Release Prevention and Response Act, M.G.L. c. 21E and the Massachusetts common law;

EPA, pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, placed the Wells G & H Superfund Site in Woburn, Massachusetts (the "Site") in 1982 on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on December 21, 1982;

On January 15, 1987, the Site was placed on DEP's "List of Locations and Disposal Sites" published pursuant to M.G.L. c.21E §3A. DEP has classified the Site as a priority disposal site within the meaning of M.G.L. c. 21E, §2;

In response to a release or a substantial threat of a release of a hazardous substance at or from the Site, EPA

2

commenced Remedial Investigations and a Feasibility Study for the Site pursuant to 40 C.F.R. § 300.68;

EPA completed the Remedial Investigations/Feasibility Study for the Site in 1988;

On February 3, 1989, pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the Feasibility Study and of the proposed plan for remedial action for the first operable unit and provided opportunity for public comment;

Certain persons, including the Commonwealth and the defendants who have entered into this Consent Decree, have provided comments on EPA's proposed plan for remedial action, and to such comments EPA has provided a summary of responses;

The decision by EPA on the selected remedy is embodied in a final Record of Decision ("ROD"), executed on September 14, 1989, to which the Commonwealth of Massachusetts has given its concurrence. The ROD includes a discussion of the reasons EPA selected a plan for the first operable unit of the Site consisting of source control and management of migration from five source areas and an explanation of any significant changes in the selected remedy from that proposed;

Pursuant to Section 117(b) and (d) of CERCLA, 42 U.S.C. § 9617(b) and (d), EPA provided public notice of its adoption of the final remedial action plan for the first operable unit embodied in the form of the ROD, including notice of the ROD's availability to the public;

3

In accordance with Section 121(f) of CERCLA, 42 U.S.C. § 9621(f), EPA notified the Commonwealth of Massachusetts on April 20, 1990, of negotiations with potentially responsible parties for the Site regarding the remedial design, remedial action, and a further remedial investigation/feasibility study for the Site, and EPA has provided the Commonwealth with an opportunity to participate in such negotiations and be a party to any settlement;

In accordance with Section 122(j) of CERCLA, 42 U.S.C. § 9622(j), EPA, on April 20, 1990, notified the Federal and Massachusetts Natural Resource Trustees of negotiations with potentially responsible parties regarding the remedial design, remedial action, and the further remedial investigation/ feasibility study at the Site and has encouraged the participation of the Trustees in such negotiations;

In accordance with 40 C.F.R. § 300.435(c)(2)(i) of the National Contingency Plan ("NCP"), EPA will publish an Explanation of Significant Differences ("ESD") for the first operable unit that addresses changes to the ROD issued on September 14, 1989;

EPA, the Commonwealth, and the Defendants that have entered into this Consent Decree ("the Parties"), agree that the remedy for the First Operable Unit selected in the ROD and, to the extent embodied herein, is protective of the public health and the environment and is consistent with CERCLA, the NCP, Chapter 21E, and the Massachusetts Contingency Plan ("MCP");

4

The United States, the Commonwealth, and certain defendants named in the Complaints who sign this Decree desire to settle this matter;

The Defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the Complaints.  Except in the case of stipulated penalties paid pursuant to Section XXI, statutory penalties, or contempt sanctions, any sums obligated to be paid as damages under this Consent Decree shall not be construed as fines, penalties or sanctions;

The Parties recognize, and the Court by entering this Consent Decree finds, that implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that entry of this Consent Decree is therefore in the public interest;

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.

### JURISDICTION

1.  This Court has jurisdiction over the subject matter of these actions pursuant to: 28 U.S.C. §§ 1331, 1345; 42 U.S.C. §§ 9604(b), 9606, 9607, and 9613(b);   42 U.S.C. § 6973; and pendent jurisdiction over the claims asserted by the Commonwealth arising under the laws of Massachusetts.  This Court also has personal jurisdiction over the Defendants.  Venue in this District is

5

proper under 42 U.S.C. § 9613(b).  For purposes of this Consent

Decree and the underlying Complaints, Defendants waive all

objections and defenses that they may have to personal

jurisdiction and to jurisdiction of the Court or to venue in this

District and all objections and defenses that they may have under

Federal Rule of Civil Procedure 12(b)(6).  Defendants shall not

challenge this Court's jurisdiction to enter and enforce this

Consent Decree.


### III.

### PARTIES BOUND

2.  This Consent Decree applies to and is binding upon the

United States, on behalf of EPA, NOAA, and DOI, the Commonwealth,

and upon the Settling Defendants and, in their official

capacities, their directors, officers, employees, agents and

their successors, assigns, and trustees.  Any change in ownership

or corporate status of a Defendant, including any transfer of

property located within the Site, shall in no way alter such

Defendant's responsibility under this Decree.  The appropriate

Source Area Defendant(s) shall provide a copy of this Consent

Decree to any contractor(s) and subcontractor(s) hired to perform

the Work required by this Consent Decree and shall condition all

contracts and subcontracts entered into hereunder upon

performance of the Work in conformity with the terms of this

Consent Decree.  The appropriate Source Area Defendant(s) shall

nonetheless be responsible for ensuring that their contractors

6

and subcontractors perform the work contemplated herein in accordance with this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be related by contract to the appropriate Source Area Defendant(s) within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3). Thus, as to acts or omissions of contractors, the appropriate Source Area Defendant(s) shall not assert a defense based upon CERCLA Section 107(b)(3), 42 U.S.C. § 9607(b)(3).

IV.

DEFINITIONS

3.  Unless noted to the contrary, the terms of this Consent Decree shall have the meaning assigned to those terms by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 et seq., its implementing regulations and the Solid Waste Disposal Act, as amended, 42 U.S.C. § 6901 et seq. and the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E and its implementing regulations.  Whenever the terms listed below are used in this Consent Decree and the Appendices attached hereto, the following definitions shall apply:

a.   "Additional Work" shall mean all activities required by Section VIII herein.

b.    "Appropriate Source Area Defendant(s)" shall mean, for any Source Area property, the Source Area defendant(s) who is/are

7

responsible for the performance of the Work at that Source Area property pursuant to Schedule A, or for the Central Area RI/FS, the Defendant(s) who is/are responsible for the Central Area RI/FS pursuant to Schedule A.

c.    "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 et seq..

d.    "Chapter 21E" shall mean the Massachusetts Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E.

e.    "Cleanup Standards" shall mean the numerical criteria selected to reflect the degree of cleanup to be achieved in the groundwater and soil at the Site.   These criteria are referenced in Paragraph 15 herein.

f.    "Commonwealth" shall mean the Commonwealth of Massachusetts, including the Department of Environmental Protection.

g.    "Contractor" shall mean the company or companies retained by the appropriate Source Area Defendant(s) to undertake and complete the Work required by this Consent Decree.   Each contractor and subcontractor shall be qualified to do those portions of the Work for which it is retained.

h.    "Day" shall mean a calendar day unless expressly stated to be a working day.   "Working day" shall mean a day other than a Saturday, Sunday, or federal or state legal holiday.   In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state

8

legal holiday, the period shall run until the end of the next working day.

i.    "Defendants" shall mean the Settling Defendants.

j.    "DEP" shall mean the Massachusetts Department of Environmental Protection.

k.    "EPA" shall mean the United States Environmental Protection Agency.

l.    "ESD" shall mean the Explanation of Significant Differences published by EPA pursuant to 40 C.F.R. § 300.435(c)(2)(i), that addresses the First Operable Unit at the Site. After publication, the ESD shall be attached as Appendix VI.

m.    "Facility" shall have the meaning provided in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

n.    "Hazardous Substance" shall have the meaning provided in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) and shall include all hazardous materials pursuant to M.G.L. c.21E, §2.

o.    "Massachusetts Contingency Plan" or "MCP" shall mean the Massachusetts Contingency Plan promulgated pursuant to §§ 3 and 6 of Chapter 21E, codified at 310 C.M.R. 40.000 including any amendments thereto.

p.    "National Contingency Plan" or "NCP" shall mean the National Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, including any amendments thereto.

9

q.   "Operation and Maintenance" or "O & M" shall mean all activities required under the Operation and Maintenance Work Plan pursuant to this Consent Decree and the Statement of Work.

r.   "Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral.

s.   "Parties" shall mean the United States, the Commonwealth, and the Defendants.

t.   "Performance Standards" shall mean the standards and criteria that define the degree and method of cleanup to be achieved at the Site.   These include all location, chemical, and action specific applicable or relevant and appropriate standards, requirements, criteria and limitations identified in the ROD, as modified by the ESD, and the SOW or by EPA prior to Certification of Completion of the Work and all other health or environmentally related numerical standards in the ROD.   Performance Standards include all Cleanup Standards.

u.   "Plaintiffs" shall mean the United States and its agencies and departments, and the Commonwealth and DEP.

v.   "Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the First Operable Unit for the Site signed on September 14, 1989, by the Acting Regional Administrator, EPA Region I, and all attachments thereto.   The ROD is attached as Appendix I.

w.   "Remedial Action" shall mean all activities required by this Consent Decree, including any Additional Work required under

10

Section VIII hereof, except for Operation and Maintenance and the Remedial Investigation/Feasibility Study.

x.     "RCRA" (Resource Conservation and Recovery Act) shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq..

y.    "Remedial Investigation/Feasibility Study", "RI/FS" or "Central Area RI/FS" shall for the purposes of this Consent Decree, mean the remedial investigation/feasibility study for the Central Area, as defined in the SOW, conducted pursuant to 40 C.F.R. § 300 et seq. and any amendments thereto.

z.     "Response Costs" or "Response Action Costs" shall mean any costs incurred by the Plaintiffs with respect to the Site pursuant to 42 U.S.C. §§ 9601 et seq., M.G.L. c. 21E §5, or 310 C.M.R. 40.600 et seq.

aa.    "Non-Source Area Defendants" shall mean the following:

> Charrette Corportation
> 31 Olympia Avenue
> Woburn, MA  01888
>
> Ingersoll-Rand Company
> 39 Olympia Avenue
> Woburn, MA  01801
>
> Cummings Properties Management, Inc.
> 200 West Cummings Park
> Woburn, MA  01801
>
> Massachusetts Rifle Association
> 290 Rear Salem Street
> Woburn, MA  01801
>
> Northern Research and Engineering
> Corporation
> 39  Olympia Avenue
> Woburn, MA  01801

11

City of Woburn
Property surrounding Wells G & H off
Rifle Range Road
Woburn, MA  01801

The Remedial Investigations/Feasibility Study Report in 1988 and the ROD did not identify the properties at the addresses listed above as source areas of contamination at the Site.

bb.    "Section" shall mean a portion of this Consent Decree identified by a roman numeral and including one or more paragraphs.

cc.    "Settling Defendants" shall mean those Source Area Defendants and Non-Source Area Defendants who sign this Consent Decree and, if applicable, make payments required under Section XVII, Paragraphs 46 and 47 of this Consent Decree.

dd.    "Site" shall mean the area located in east Woburn, Massachusetts, bounded by Route 128 to the north, Route 93 to the east, the Boston and Maine Railroad to the west and Salem Street and Cedar Street to the south, and depicted in Appendix III to this Consent Decree, a facility which includes those Source Area Properties where disposal of Waste Material was conducted and/or where Waste Materials have come to be located.   The Site includes, but is not limited to, the following five Source Area properties as identified in Appendix III:

> "UniFirst Property" shall mean that property located at 15 Olympia Avenue in Woburn owned by UniFirst Corporation.

> "W.R. Grace Property" shall mean that property at 369 Washington Street in Woburn owned by W.R. Grace & Co. - Conn.

12

"Wildwood Property" shall mean that property in Woburn between the Aberjona River and the B&M Railroad easement owned by the Wildwood Conservation Corporation.

"New England Plastics Property" shall mean that property located at 310 Salem Street in Woburn owned by New England Plastics Corporation.

"Olympia Property" shall mean that property located at 60 Olympia Avenue in Woburn owned by the Olympia Nominee Trust.

ee.    "Source Area Defendants" shall mean for the purposes of this Consent Decree the following:

UniFirst Corporation ("UniFirst")
W.R. Grace & Co. - Conn. ("Grace")
Beatrice Company ("Beatrice")
New England Plastics Corporation ("New England Plastics")
John J. Riley, Jr. ("John J. Riley, Jr.")
Wildwood Conservation Corporation ("Wildwood")

ff.    "Statement of Work" or "SOW" shall mean the statement of work for implementation of the remedial design, remedial action, and operation and maintenance of the remedial action for the First Operable Unit at the Site, and the Central Area RI/FS as set forth in Appendix II and any modifications thereto in accordance with this Consent Decree.

gg.    "United States" shall mean the United States of America, including the United States Environmental Protection Agency, the National Oceanic and Atmospheric Administration, and the Department of the Interior.

hh.    "Waste Material" shall mean: (1) any substance meeting the definition provided in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any "pollutant or contaminant" under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "hazardous

13

waste" under Section 1004(5) of RCRA, 42 U.S.C. § 6903(5); (4)

any "solid waste" as defined by Section 1004(27) of RCRA, 42

U.S.C. 6903(27); and (5) any "hazardous material" under M.G.L. c.

21E §2.

ii.    "Work" shall mean all work or other activities or

obligations required by this Consent Decree and Statement of

Work, including but not limited to, Remedial Action, Operation

and Maintenance, and closure, for the First Operable Unit at the

Site excluding the Olympia property, the RI/FS, and any

activities required to be undertaken pursuant to Section VIII.

jj.    "Work Plans"  shall mean the work plans for implementation

of the Work required under this Consent Decree and the Statement

of Work and any modifications thereto in accordance with this

Consent Decree and the Statement of Work.

kk.    "First Operable Unit" shall mean the remedial design,

remedial action, Operation and Maintenance and closure at the

five (5) Source Area properties addressed in the ROD, as modified

by the ESD.


V.

GENERAL PROVISIONS

4.    Objectives of the Parties

       The objectives of the Parties in entering into this

Consent Decree are to protect the public health and welfare and

the environment from releases or threatened releases of Waste

Materials at and from the Site by the investigation, development,

14

5.   Commitment of Settling Defendants

     a.   The appropriate Source Area Defendant(s) agree to finance and perform all Work at the Site and/or to reimburse the United States and the Commonwealth for Response Costs and Response Action Costs and to pay civil penalties and stipulated penalties as provided herein and in accordance with Schedule A. The Non-Source Area Defendants agree to perform Work in accordance with Schedule A.  Where Schedule A designates more than one Source Area Defendant liable for performance of the Work at a Source Area property, it is sufficient for purposes of such performance - including without limitation any action required to be taken, any ability required to be demonstrated, any obligation required to be assumed, or any responsibility required to be fulfilled  under this Consent Decree, the ROD, the ESD, or the SOW - if one Source Area Defendant performs the Work with respect to that Source Area property.  Nothing contained herein shall be construed to limit in any way the imposition of liability or joint and several liability as provided in Schedule A.

     b.   In the event of the insolvency or other inability of any one or more of the Source Area Defendant(s) at a Source Area property to implement the requirements of this Consent Decree, the other Source Area Defendant(s) primarily responsible for that Source Area property in accordance with Schedule A agree(s) to complete all such requirements.

     c.   In the event that the appropriate Source Area Defendant(s) designated as having primary responsiblity for the

15

Source Area property in accordance with Schedule A agree(s) to complete all such requirements.

c.   In the event that the appropriate Source Area Defendant(s) designated as having primary responsiblity for the Work in Schedule A is/are unable to implement the requirements of this Consent Decree relating to a Source Area Property, the appropriate Source Area Defendant(s) designated as having secondary responsibilty in Schedule A shall become responsible for the performance of all remaining requirements under this Consent Decree for that Source Area Property as provided in Schedule A.   This responsibility shall commence upon receipt of sixty (60) days notice from EPA following a determination by EPA that the appropriate Source Area Defendant(s) having primary responsibility is/are unable to perform such Work.   In the event that the appropriate Source Area Defendant(s) having secondary responsibility become(s) responsible to perform said Work in accordance with this paragraph, the appropriate Source Area Defendant(s) having secondary responsibility shall complete said Work.   During the 60-day period following notice from EPA that the appropriate Source Area Defendant(s) having primary responsibility is/are unable to perform the Work, EPA and the appropriate Source Area Defendant(s) having secondary responsibility shall promptly meet to establish a mutually agreeable plan and schedule for completion of the requirements under the Consent Decree.   If the parties cannot reach agreement, EPA, in consultation with the Commonwealth, shall specify a plan

and schedule subject to the right of the appropriate Source Area
Defendant(s) to invoke the dispute resolution provisions of
Section XX of this Decree regarding EPA's determination that the
appropriate Source Area Defendant(s) having primary
responsibility is/are unable to perform the Work regarding the
plan and schedule.  Such plan and schedule shall supersede any
other existing plans and schedules established in this Consent
Decree.  The appropriate Source Area Defendant(s) having
secondary responsibility shall not be subject to stipulated
penalties accruing as a result of the failure of the appropriate
Source Area Defendant(s) having primary responsibility to meet
the requirements of this Consent Decree through the end of said
60-day period, but shall be liable for any stipulated penalties
that accrue thereafter in connection with its(their) new plan and
schedule for completing the Work.

d.  The Work set forth in Section VI and in the SOW shall be
completed in accordance with the standards, specifications and
within the time periods as prescribed in Section VI and in the
SOW.

e.  Each Defendant shall assume any and all liability
arising from or relating to its acts or omissions in the
performance of the Work for which it is responsible pursuant to
Schedule A or its failure to perform fully or complete the
requirements of this Consent Decree that apply to it.

f.  The Defendants agree that with respect to any suit or
claim for contribution brought by or against them for matters

17

related to this Consent Decree they will notify the United States and the Commonwealth within ten (10) days after service of process.

g.  In any subsequent administrative or judicial proceeding initiated by the United States or the Commonwealth for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant(s) shall not assert, and may not maintain, any defense or claim based upon the principles of waiver or claim splitting or otherwise based upon any contention that the claims raised by the United States or the Commonwealth in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this paragraph affects the enforceability of the covenants not to sue set forth in Section XXII.

6.  Permits and Approvals

a.  All activities undertaken by the appropriate Source Area Defendant(s) pursuant to this Consent Decree shall be undertaken in accordance with the requirements of all applicable or relevant and appropriate public health and environmental requirements, as required by Section 121(d) of CERCLA and the NCP.  The United States has determined that the obligations and procedures authorized under this Consent Decree are consistent with the NCP.

b.  As provided in Section 121(e) of CERCLA and the NCP, no federal, state or local permit shall be required for any portion of the Work conducted entirely on the Site where such Work is selected and carried out in compliance with Section 121.  Where

18

any portion of the Work requires a federal or state permit or approval under CERCLA and the NCP, the appropriate Source Area Defendant(s) shall timely submit applications and take all other actions necessary to obtain all such permits or approvals. The Non-Source Area Defendant(s) shall, to the extent appropriate, cooperate with the appropriate Source Area Defendants' efforts to obtain necessary permits by performing necessary ministerial functions.

c. The appropriate Source Area Defendant(s) shall include in all contracts or subcontracts entered into for Work required under this Consent Decree provisions stating that, except as provided in subparagraph b of this paragraph, such contractors or subcontractors, including their agents and employees, shall perform all activities required by such contracts or subcontracts in compliance with all applicable laws and regulations.

d. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

7. <u>Notice of Obligations;Easements</u>

a. Within thirty (30) days after the entry of this Consent Decree, EPA or the Commonwealth shall record a certified copy of this Consent Decree, without appendices, except for Schedule A and copies of the Notices of Obligations, with the Registry of Deeds, Middlesex County, Commonwealth of Massachusetts or the Land Court, Commonwealth of Massachusetts. Thereafter, each deed, title, or other instrument of conveyance, except mortgages

19

and other instruments that do not convey fee title, for property included in the Site shall contain a notice stating that the property is subject to this Consent Decree and to any and all liens retained by the United States and the Commonwealth and shall reference the recorded location of the Consent Decree and any restrictions applicable to the property under this Consent Decree. Within thirty-five (35) days after the entry of this Consent Decree, each Settling Defendant who owns any interest in property included in the Site shall record at the Registry of Deeds, or other office where land ownership and transfer records are maintained for the property, a notice of obligation to provide access and related covenants in the form set forth in Appendix V which shall reference the recorded location of the Consent Decree. Each subsequent deed to any such property included in the Site shall reference the recorded location of such notice and covenant applicable to the property.   Each Source Area Defendant shall provide for conveyancing and recording of easements for access to such property to the United States or the Commonwealth for purposes of monitoring and implementation of the activities required under this Consent Decree. The granting of such easements pursuant to this paragraph shall not operate to make the United States or the Commonwealth an owner or operator of the Site for purposes of liability under any environmental statute administered by EPA or DEP.

20

b.  The obligations of each Source Area Defendant who owns any interest in property included in the Site, with respect to the provision of access under Section X, shall run with the land and shall be binding upon any and all such Source Area Defendants and upon any and all persons who subsequently acquire any such interest or portion thereof (hereinafter "Successors-in-Title").

c.  Any Settling Defendant that owns an interest in property included in the Site and any Successor-in-Title shall, within thirty (30) days prior to the conveyance of any such interest, give written notice of this Consent Decree to the grantee and written notice to EPA of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree was given to the grantee.  In the event of any such conveyance, the Settling Defendants' obligations under this Consent Decree shall continue to be met by the Settling Defendant and, subject to approval by the United States, in consultation with the Commonwealth, by the grantee.

d. No Settling Defendant shall use any portion of the Site in any manner which would, as determined by EPA, in consultation with the Commonwealth, adversely affect the integrity of any treatment system or monitoring system installed pursuant to this Consent Decree.

21

VI.

### PERFORMANCE OF WORK
### BY   SOURCE AREA DEFENDANTS

8.   As set forth in Schedule A, the appropriate Source Area

Defendant(s) shall perform Work for the Site as described in this

Decree; in the Record of Decision ("ROD"), attached hereto as

Appendix I; in the Statement of Work ("SOW") attached hereto as

Appendix II; and in any modifications to the Decree, ROD, and

SOW, including the ESD, subject to the rights of dispute

resolution.  The Plaintiffs and the Source Area Defendants agree

that the SOW is consistent with the ROD, as modified by the ESD.

The ROD, the ESD, the SOW, and all modifications to the SOW, are

hereby incorporated by reference and made a part of this Consent

Decree.  Such Work shall be performed in accordance with all the

provisions of this Consent Decree, the SOW, any modifications to

the SOW, and all design specifications, Work Plans or other plans

or schedules attached to or approved pursuant to the SOW.  Any

modifications to the SOW, design specifications, Work Plans or

other plans or schedules that are proposed by the appropriate

Source Area Defendant(s) shall be effective upon approval by EPA.

In the event of any conflict between the Consent Decree and the

SOW, the Consent Decree shall control.  In the event of any

conflict between the ROD, the ESD, and the Consent Decree or the

SOW, the Consent Decree or the SOW shall control.

9.   In order to expedite the design of the remedial action

for the First Operable Unit, excluding the Olympia property, and

initiation of the RI/FS at the Site, in accordance with Schedule

22

A, the appropriate Source Area Defendant(s) agree(s) to commence
and perform the remedial design activities and the RI/FS
activities as described herein and in the SOW as a contractual
obligation effective upon the lodging of this Consent Decree with
the court.  If the court enters an order disapproving the Consent
Decree, the contractual obligation will terminate.  All remedial
design and RI/FS oversight response costs incurred after lodging
of the Consent Decree shall be reimbursed after entry in
accordance with Section XVII.  If the Consent Decree is not
entered by the court, the obligation to reimburse oversight
response costs incurred between lodging of the Decree and its
rejection by the court in accordance with Paragraph 47 shall
continue.

10.  All  remedial design work and RI/FS work to be
performed by the appropriate Source Area Defendants(s) pursuant
to this Consent Decree shall be under the direction and
supervision of qualified contractors.  Within sixty (60) days
after the lodging of this Consent Decree, the appropriate Source
Area Defendant(s) shall submit to EPA and the Commonwealth, in
writing, the name, title, and qualifications of the contractors
from whom the appropriate Source Area Defendant(s) will solicit
bids to perform the remedial design work and RI/FS work pursuant
to this Consent Decree ("short list of bidders").  EPA may
disapprove any or all of the bidders.  EPA will notify the
appropriate Source Area Defendant(s) in writing of its
disapproval within fourteen (14) calendar days after receipt of

23

the short list of bidders. If EPA fails to give such notice to the appropriate Source Area Defendant(s), it shall mean that none of the contractors on the list of bidders has been disapproved. Within thirty (30) days of receipt of EPA's notice of disapproval of any of the bidders, or if no such notice has been received, within forty-four (44) days of submittal of the short list of bidders, the appropriate Source Area Defendant(s) shall select any contractor not disapproved by EPA. If EPA disapproves all proposed bidders, the appropriate Source Area Defendant(s) shall submit a new list of proposed bidders to EPA for approval in accordance with the procedures and timelines in this paragraph. After selection of a contractor, the appropriate Source Area Defendant(s) shall notify EPA in writing of the name of the selected contractor(s) within five (5) days of selection. The appropriate Source Area Defendant(s) shall submit to EPA and the Commonwealth the technical proposal of the contractor chosen along with the name of the selected contractor.

11. All remedial action work to be performed by the Source Area Defendants pursuant to this Consent Decree shall be under the direction and supervision of qualified contractors. Within thirty (30) days after approval or modification of the 100% design specifications, the appropriate Source Area Defendant(s) shall submit to EPA and the Commonwealth, in writing, the name, title and qualifications of the short list of bidders for the remedial action work. EPA will notify the appropriate Source Area Defendant(s) in writing of its disapproval within fourteen

24

(14) calendar days after receipt of the short list of bidders.
If EPA fails to give such notice to the appropriate Source Area
Defendant(s), it shall mean that none of the short list of
bidders has been disapproved.  Within 120 days of receipt of
EPA's notice of disapproval of any of the bidders, or, if no such
notice has been received, within 134 days of submittal of the
short list of bidders, the appropriate Source Area Defendant(s)
shall select any contractor not disapproved by EPA.  If EPA
disapproves of all proposed bidders, the appropriate Source Area
Defendant(s) shall submit a new list of proposed bidders to EPA
for approval in accordance with the procedures and timelines in
this paragraph.  After selection of a contractor, the appropriate
Source Area Defendant(s) shall notify EPA in writing of the name
of the selected contractor(s) within five (5) days of selection.
The appropriate Source Area Defendant(s) shall submit to EPA and
the Commonwealth the technical proposal of the contractor(s)
chosen along with the name of the selected contractor(s).

    12.  Appendix II to this Consent Decree provides a Statement
of Work for the completion of remedial design and remedial action
for the First Operable Unit, excluding the Olympia property, and
the Central Area RI/FS at the Site.  This Statement of Work is
incorporated into and made an enforceable part of this Consent
Decree.

    13.  The following Work shall be performed by the Source
Area Defendants:

25

a. In accordance with Schedule A and the SOW, the appropriate Source Area Defendant(s) shall submit for review, modification and/or approval by EPA, in consultation with the Commonwealth, work plans for the remedial design, remedial action, and RI/FS at the Site ("Work Plans"). The Work Plans shall be developed in conformance with the ROD, the ESD, the Statement of Work, EPA Superfund Remedial Design and Remedial Action Guidance (OSWER Directive 9355.0-4A, June 1986) and/or Superfund RI/FS Guidance (OSWER Directive 9355.3-01, October 1988) and any additional guidance documents provided by EPA. To the extent that EPA guidance conflicts with the NCP, the NCP shall control.

b.    The Work Plans shall include, but not be limited to, the following sections: 1) Initial Remedial Steps Work Plan; 2) Remedial Investigation/Feasibility Study Work Plan; 3) Pre-Design Work Plan; 4) the Remedial Design Work Plan; and 5) Remedial Action Work Plan. The Work Plans shall contain schedules which are consistent with the time limits identified in the SOW.

c.    The appropriate Source Area Defendant(s) shall implement the Work detailed in the Work Plans upon approval or modification of the Work Plans by EPA, in consultation with the Commonwealth, pursuant to the procedures in Section XII. Unless otherwise directed by EPA, no Source Area Defendant shall commence field activities until approval by EPA. Upon approval by EPA, in consultation with the Commonwealth, the Work Plans and

any submissions required by it or this Consent Decree shall be deemed incorporated into and made an enforceable part of this Consent Decree. All Work shall be conducted in accordance with the National Contingency Plan, the EPA Superfund Remedial Design and Remedial Action Guidance identified in Paragraph 13(a), the EPA Superfund RI/FS Guidance identified in Paragraph 13(a), any additional guidance provided by EPA, and the requirements of this Consent Decree, including the standards, specifications and schedule contained in the SOW and the Work Plans. To the extent that EPA guidance conflicts with the NCP, the NCP shall control.

d. Upon entry of this Consent Decree, all obligations under this Decree concerning remedial design and the RI/FS are subject to enforcement pursuant to this Consent Decree, including but not limited to stipulated penalties, retroactive to the date of the lodging of this Consent Decree.

14. The United States, the Commonwealth and the Settling Defendants acknowledge and agree that neither the SOW nor the Work Plan for remedial design and remedial action constitute a warranty or representation of any kind by the United States, the Commonwealth or the Settling Defendants that the SOW or Work Plan for remedial design and remedial action will achieve the Cleanup and Performance Standards set forth in the ROD, the ESD, and in Paragraph 15, below, and shall not foreclose the Plaintiffs from seeking performance of all terms and conditions of this Consent Decree, in accordance with Schedule A, including achieving the applicable Cleanup and Performance Standards.

27

15.  The Work performed by the appropriate Source Area Defendants pursuant to this Consent Decree to implement the remedial action must, along with other Decree obligations, achieve the Cleanup and Performance Standards identified in Sections II.B.1.b, II.B.2.b, III.D. and IV.C. of the SOW as well as any additional standards identified in the ESD.

## VII.

### U.S. EPA PERIODIC REVIEW TO ASSURE
### PROTECTION OF HUMAN HEALTH AND ENVIRONMENT

16.  To the extent required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations, EPA shall review the remedial action at the Site at least every five (5) years after initiation of the remedial action to assure that human health and the environment are being protected by the remedial action being implemented.  Prior to EPA Certification of Completion of the Work, pursuant to Section XV, the appropriate Source Area Defendant(s) shall conduct the requisite studies, investigations, or other response actions as determined necessary by EPA in order to permit EPA to conduct the review of the Site required by Section 121(c) of CERCLA.  If upon such review, EPA determines prior to the Certification of Completion of the Work that further response action is appropriate at the Site in accordance with Section 104 or 106, then the appropriate Source Area Defendant(s) shall implement such action.  Any dispute regarding the necessity for or scope of such further response action shall be based upon the administrative record and shall be

28

subject to judicial review pursuant to the dispute resolution provisions in Section XX hereof to the extent permitted by, and in accordance with, Section 113(j) of CERCLA, 42 U.S.C. § 9613(j);

17. As provided by Sections 113(k) and 117 of CERCLA, 42 U.S.C. §§ 9613(k) and 9617, and the National Contingency Plan, the Settling Defendants will have an opportunity to submit comments for the administrative record on any proposed subsequent response action during the public comment period. The appropriate Source Area Defendant(s) shall be provided with an opportunity to confer with EPA on any additional work proposed by EPA, in consultation with the Commonwealth, during the 5-year review process. Selection of any subsequent response action shall be based on the administrative record.

## VIII.

## ADDITIONAL WORK

18. In the event that EPA, in consultation with the Commonwealth, or the the appropriate Source Area Defendant(s) determine that Additional Work, including Additional Work identified during the CERCLA Section 121(c) review process and during the RI/FS, is necessary to meet the Cleanup and Performance Standards described in Section VI above at the Source Area properties excluding the Olympia property, or is necessary at the Source Area properties excluding the Olympia property or in connection with the RI/FS to protect public health, or

29

welfare, or the environment, or to protect human health or the
environment, notification of such Additional Work will be
provided to the EPA RPM, the DEP RPM, and all Project
Coordinators designated pursuant to this Decree.

19.  Any Additional Work determined to be necessary by the
appropriate Source Area Defendant(s) is subject to approval by
EPA, in consultation with the Commonwealth.

20.  Any Additional Work determined to be necessary by the
appropriate Source Area Defendant(s) and approved by EPA, in
consultation with the Commonwealth, or determined to be necessary
by EPA in consultation with the Commonwealth, to meet the Cleanup
and Performance Standards or to protect public health or welfare,
or the environment shall be completed by the appropriate Source
Area Defendant(s) in accordance with Schedule A and the
standards, requirements, specifications, and schedules approved
or established by EPA.

21.  Unless otherwise stated by EPA, in consultation with
the Commonwealth, within sixty (60) days after receipt of notice
by EPA that Additional Work is necessary or otherwise agreed to
by the Parties, the appropriate Source Area Defendant(s) shall
submit a work plan for the Additional Work for approval by EPA,
in consultation with the Commonwealth.  The plan shall conform to
the requirements of this Consent Decree, the National Contingency
Plan, Superfund Remedial Design and Remedial Action Guidance
identified in Paragraph 13(a) and/or the Superfund RI/FS Guidance
identified in Paragraph 13(a) and any additional guidance

30

documents provided by EPA.  To the extent that EPA guidance conflicts with the NCP, the NCP shall control.  Upon approval of the work plan pursuant to the procedures set forth in Section XII,  the appropriate Source Area Defendant(s) shall implement the plan for Additional Work in accordance with the schedule contained in the approved work plan.  The appropriate Source Area Defendant(s) may dispute EPA's determination regarding Additional Work by invoking the dispute resolution procedures in Section XX herein.


IX.

QUALITY ASSURANCE; SAMPLING

22.    Each appropriate Source Area Defendant shall use quality assurance, quality control, and chain of custody procedures in accordance with EPA's "Interim Guidelines and Specifications For Preparing Quality Assurance Project Plans" (QAM-005/80) and subsequent amendments to such guidelines upon notification to such Source Area Defendant of such amendments by EPA.    The appropriate Source Area Defendant(s) shall submit as part of the Work Plans, Quality Assurance Quality Control Project Plans ("QAPP") that are consistent with the SOW and applicable guidelines, to EPA and the Commonwealth for approval by EPA, in consultation with the Commonwealth, pursuant to Section XII. Each appropriate Source Area Defendant shall assure that EPA or DEP personnel or authorized representatives are allowed access to any laboratory utilized by Source Area defendants in implementing

31

the Consent Decree - for the purpose of determining whether quality assurance, quality control, and chain of custody procedures are utilized by it (them) in implementing this Consent Decree.  The Parties stipulate that all samples that have been analyzed consistent with the QAPP shall be admissible as evidence in any subsequent proceeding, subject to relevancy objections and objections that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

23.  Each appropriate Source Area Defendant shall make available to EPA, the Commonwealth, and to the appropriate Non-Source Area Defendant(s) the results of all sampling and/or tests or other data generated by it with respect to the implementation of this Consent Decree, except as provided in Paragraph 91.

24.  At the request of EPA, or the Commonwealth, each appropriate Source Area Defendant shall allow split or duplicate samples to be taken by EPA, DEP and their authorized representatives, of any samples collected by such Source Area Defendant pursuant to the implementation of this Consent Decree. Each appropriate Source Area Defendant shall notify EPA and the Commonwealth not less than twenty-eight (28) days in advance of any sample collection activity unless otherwise agreed to by EPA. In addition, EPA or the Commonwealth shall have the right to take any samples that EPA or the Commonwealth deems necessary.

25.  Notwithstanding any provision of this Consent Decree, the United States and the Commonwealth shall retain all of their information gathering, inspection and enforcement authorities and

32

rights under CERCLA, RCRA and any other applicable statutes or regulations.

## X.

## ACCESS TO PROPERTY

26. From the date of the lodging of this Consent Decree, until termination of this Consent Decree, the United States, the Commonwealth, and their representatives, including but not limited to EPA, DEP, and their employees, agents, authorized representatives, and contractors, shall have access at all reasonable times to the Site and any property to which access is required for the implementation of this Consent Decree, to the extent access to the property is owned, controlled by or available to Settling Defendants, for the purposes of conducting any activity authorized by or related to this Consent Decree, including, but not limited to:

a.   Monitoring the Work or any other activities taking place on the property;

b.   Verifying any data or information submitted to the United States;

c.   Conducting investigations relating to contamination at or near the Site;

d.   Obtaining samples;

e.   Assessing the need for or planning and implementing additional response actions at or near the Site including, but not limited to, completion of the RI/FS.

33

f. Inspecting and copying records, operating logs, contracts, or other documents directly related to implementation of this Consent Decree that are necessary to assess compliance with this Consent Decree, subject to the provisions of Paragraph 91; and

g. Assessing the appropriate Source Area Defendant(s)' compliance with this Consent Decree.

27. Each Non-Source Area Defendant shall enter into an access agreement with the appropriate Source Area Defendant(s) in the form contained in Appendix VII.

28. Whenever any Source Area Defendant requires access to a Non-Source Area Defendant's property pursuant to this Section, the appropriate Source Area Defendant(s) shall provide written notice to such Non-Source Area Defendant at least five (5) days, if practicable, in advance of such anticipated need of access. In the event that access on any particular date would place an undue burden on such Non-Source Area Defendant, the parties involved shall use all reasonable efforts to determine a mutually convenient time. EPA may, if practicable, provide notice to the Non-Source Area Defendants.

29. To the extent that the Site or any other area where Work or Additional Work is to be performed under this Consent Decree is owned or controlled by persons other than the Settling Defendants, the appropriate Source Area Defendant(s) shall use best efforts to secure from such persons access for such Source Area Defendant(s), the United States, and the Commonwealth,

including EPA, DEP, and their employees, agents and authorized representatives, contractors or consultants as necessary to effectuate implementation of this Consent Decree.  In the event that access is not obtained, Source Area Defendant(s) shall notify the DEP RPM and the Commonwealth shall use its best efforts to assist the Source Area Defendant(s) in obtaining access.  If access is not obtained within forty-five (45) days of the date of the lodging of this Consent Decree, or within forty-five (45) days of the date EPA determines in writing to the appropriate Source Area Defendant(s) that additional access beyond that previously secured is necessary, whichever is later, such Source Area Defendant(s) shall promptly notify the United States in writing.  EPA may thereafter, consistent with its authority, assist such Source Area Defendant(s) in obtaining access.  The appropriate Source Area Defendant(s) shall, in accordance with Section XVII herein, reimburse the United States for all costs incurred by it in obtaining access, including, but not limited to, costs incurred in acquiring all property interests necessary for performance of the Work or Additional Work.

30.  Notwithstanding any provision of this Consent Decree, the United States and the Commonwealth retain all of their access authorities and rights under CERCLA, RCRA, Chapter 21E and any other applicable statutes or regulations.

35

XI.

REPORTING REQUIREMENTS

31.   The appropriate Source Area Defendant(s) shall submit to EPA and the Commonwealth written monthly progress reports regarding Remedial Action and RI/FS activities which: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include all results of sampling and tests and all other data received by  each appropriate Source Area Defendant during the course of the Work in the previous month, except as provided in Paragraph 91; (c) include all plans and procedures completed under the Work Plans and SOW during the previous month; (d) describe all actions, data and plans which are scheduled for the next month and provide any other information relating to the progress of construction that is necessary to assess compliance under this Consent Decree; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Statement of Work or the Work Plans, and a description of efforts made to mitigate those delays or anticipated delays.  These progress reports are to be submitted by the appropriate Source Area Defendant(s) to EPA and the Commonwealth by the tenth day of every month following the date of the lodging of this Consent Decree until EPA certifies Completion of the Work for that Source Area property or for the RI/FS until all field work is completed.  For Operation and

36

Maintenance activities, a schedule for submittal of progress reports will be defined in the Operation and Maintenance Work Plan. In addition, the appropriate Source Area Defendant(s) shall submit each year, within thirty (30) days of the anniversary of the entry of the Consent Decree, a report to the Court and the Parties setting forth the status of response actions at the Site, which shall, at a minimum, include a statement of major milestones accomplished in the preceding year, a statement of tasks remaining to be accomplished, and providing a schedule for implementation of the remaining work. EPA retains discretion to require that any report submitted pursuant to this paragraph be submitted on a less frequent basis.

32. Upon the occurrence of any event during performance of the Work which, pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603 and/or Section 304 of the Emergency Planning and Community Right-To-Know Act (EPCRA), 42 U.S.C. § 11004, requires reporting, the appropriate Source Area Defendant(s) shall promptly orally notify the EPA Remedial Project Manager ("RPM"), or in the event of the unavailability of the EPA RPM and the EPA Geographic Section Chief designated pursuant to Section XIII, the Emergency Response Unit, and the Commonwealth Project Coordinator, in addition to the reporting required by Section 103 and Section 304 of EPCRA. Within twenty (20) days of the onset of such an event, the appropriate Source Area Defendant(s) shall furnish to EPA and the Commonwealth a written report setting forth the events which occurred and the measures taken, and to be taken, in response

thereto.   Within thirty (30) days of the conclusion of such an event, the appropriate Source Area Defendant(s) shall submit a report to EPA and the Commonwealth setting forth all actions taken to respond thereto.   Nothing contained herein shall be construed to limit in any way the obligations of the Non-Source Area Defendants under Section 103 of CERCLA, 42 U.S.C. § 9603 and/or Section 304 of EPCRA, 42 U.S.C. § 11004.

XII.

SUBMISSIONS REQUIRING AGENCY APPROVAL

33.   After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, in consultation with the Commonwealth, shall either: (1) approve the submission; (2) disapprove the submission, in whole or in part, notifying the appropriate Source Area Defendant(s) of deficiencies; (3) modify the submission to cure the deficiencies;  (4) direct that the appropriate Source Area Defendant(s) modify the submission; or (5) approve the submission subject to conditions.

34.   In the event of approval or EPA modification, the appropriate Source Area Defendant(s) shall proceed to take any action required by the plan, report, or other item, as approved or modified, subject to the rights of dispute resolution in Section XX.

35.   Upon receipt of a notice of disapproval, in whole or in part, or a request for a modification, the appropriate Source

38

Area Defendant(s) shall, within thirty-five (35) days thereafter or such additional time as EPA may grant, correct the deficiencies and resubmit the plan, report, or other item for approval.  Notwithstanding a notice of disapproval or request for modification, the appropriate Source Area Defendant(s) shall proceed to take any action required by any non-deficient separable portion of the submission unless otherwise directed by EPA.  Implementation of non-deficient separable portions of the submission shall not relieve the appropriate Source Area Defendant(s) of their liability for stipulated penalties under Section XXI.

36.  If, upon resubmission, the plan, report, or item is disapproved in whole or in part by EPA, EPA may consider the appropriate Source Area Defendant(s) to be in violation of this Consent Decree, subject to the rights of dispute resolution in Section XX.


XIII.

REMEDIAL PROJECT MANAGER/PROJECT COORDINATORS

37.  Within ten (10) days of the date of the lodging of this Consent Decree, the appropriate Source Area Defendant(s) shall notify all other Parties, EPA and the Commonwealth in writing, of the name, address and telephone number of the appropriate Source Area Defendant(s)' Project Coordinator(s) and an Alternate Project Coordinator(s) for the Remedial Action activities and the RI/FS.  The appropriate Source Area

Defendant(s)' Project Coordinator(s) shall have responsibility for coordination and implementation of the Work at the Site by such appropriate Source Area Defendant(s). EPA will designate a Remedial Project Manager (RPM) and a Geographic Section Chief within the same ten (10) day period. The Commonwealth will designate a Remedial Project Manager (RPM) within the same ten (10) day period. If the Plaintiffs or any Source Area Defendant decide to change the designated Project Coordinator or RPM, the name, address, and telephone number of the successor shall be given to all other Parties within five (5) working days before the change is to be effective, unless impracticable, but in no event later than the actual day the change is made.

38.    EPA and the Commonwealth may designate other representatives, including EPA and DEP employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's RPM shall have the authority lawfully vested in a RPM and On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, the EPA RPM shall have authority, consistent with the National Contingency Plan, to halt, conduct, or direct any work required by this Consent Decree, and to take any necessary response action when he or she determines that conditions at the Site may present an endangerment to public health or welfare or the environment.

40

XIV.

ASSURANCE OF ABILITY TO COMPLETE WORK

39.    The appropriate Source Area Defendant(s) shall demonstrate its(their) ability to complete the Work for which it (they) is(are) responsible as set forth in Schedule A and to pay all claims that arise from the performance of such Work by obtaining within thirty (30) days of entry of this Consent Decree one of the following:

a.    A surety bond guaranteeing performance of the Work;

b.    One or more letters of credit equalling the total estimated cost of the Work for which it has responsibility as set forth in Schedule A;

c.    A guarantee to perform the Work by  one or more parent corporation, sibling corporation, subsidiary, or unrelated corporation which has a business or contractual relationship with at least one of the Source Area Defendants;

d.    Internal financial information regarding  the appropriate Source Area Defendant(s)' net worth, cash flow, total liabilities, and current rating for most recent bond issuances sufficient to demonstrate to EPA's satisfaction that one or more Settling Defendants have the financial ability to complete the Work for which it(they) is(are) responsible as set forth in Schedule A; or

e.    Such other security interest which is acceptable to EPA.

40. If any appropriate Source Area Defendant seeks to demonstrate the ability to complete the Work for which it has assumed responsibility as set forth in Schedule A through a guarantee by a third party, they must provide financial information regarding the guarantor's net worth, cash flow, total liabilities, and current rating for its most recent bond issuance sufficient to demonstrate to EPA's satisfaction that the guarantor(s) has(have) the financial ability to finance completion of the Work. If any appropriate Source Area Defendant seeks to demonstrate ability to complete the Work by means of internal financial information, it shall submit sworn statements conveying such information and shall resubmit such statements annually, on the anniversary of the effective date of this Consent Decree.

41. In the event that EPA determines at any time that such financial assurances are inadequate, the appropriate Source Area Defendant(s) shall, within thirty (30) days of receipt of notice of EPA's determination, obtain and present for approval to EPA one of the other forms of financial assurance listed in Paragraph 39. No appropriate Source Area Defendant(s)' inability to demonstrate financial ability to complete the Work shall  excuse performance of any activities required under this Consent Decree pursuant to Schedule A.

XV.

## CERTIFICATION OF COMPLETION OF WORK

42.  a. Source Area Properties - Within ninety (90) days
after the appropriate Source Area Defendant(s) concludes that the
Work has been fully performed at a specific Source Area property,
the appropriate Source Area Defendant(s) shall so notify the
United States, EPA, the Commonwealth and Non-Source Area
Defendant(s), as appropriate, and shall schedule and conduct a
pre-certification inspection to be attended by the appropriate
Source Area Defendant(s), EPA, and the Commonwealth.  Such
inspection shall be followed within thirty (30) days by a written
report signed by the appropriate Source Area Defendant(s)'
project coordinator certifying that all such activities have been
completed in full satisfaction of the pertinent requirements of
this Consent Decree.

b. Central Area RI/FS - Upon EPA's issuance of the Record of
Decision for the Central Area, EPA shall determine if the
appropriate Source Area Defendant(s) have met all of their Work
responsibilities for the Central Area RI/FS under the provisions
of this Consent Decree.

c.  Completion of Work - If EPA, in consultation with the
Commonwealth, determines that the Work or any portion thereof has
not been completed in accordance with this Consent Decree, EPA
will notify the appropriate Source Area Defendant(s) in writing
of the activities that must be done to complete the Work and will
set forth in the notice a schedule for performance of such

43

activities.   Subject to the dispute resolution procedures of
Section XX, the appropriate Source Area Defendant(s) shall
perform all activities described in the notice in accordance with
the specifications and schedules established therein.

43.   If EPA, in consultation with the Commonwealth,
conclude, that the Work for a specific Source Area property or
the RI/FS has been fully performed in accordance with this
Consent Decree, EPA will so certify in writing to the appropriate
Source Area Defendant(s).   This certification shall constitute
the "Certification of Completion of Work" for the Work required
at that specific Source Area property or for the RI/FS for
purposes of this Consent Decree, including Section XXII
(Plaintiffs' Covenants Not to Sue).

## XVI.

### ENDANGERMENT AND FUTURE RESPONSE

44.   In the event of any action or occurrence during the
performance of the Work that causes or threatens a release of
Waste Material or that may present an endangerment to public
health or welfare or the environment, the appropriate Source Area
Defendant(s) shall immediately take all appropriate action to
prevent, abate, or minimize such release or endangerment, and
shall, as appropriate, immediately notify the EPA RPM, the EPA
Emergency Response Unit, Region I, the DEP RPM, and, if
appropriate, Non-Source Area Defendant(s).   The appropriate
Source Area Defendant(s) shall take such action in accordance

with all applicable provisions of the Health and Safety Plan
developed pursuant to the SOW and approved by EPA.  The
appropriate Source Area Defendant(s) shall develop and submit a
response plan to EPA, the Commonwealth, and, if appropriate, Non-
Source Area Defendant(s) within ten (10) days of the action or
occurrence or as soon thereafter as is practicable.  The
provisions of Section XII apply to the submission of such
response plan, except that the time period for resubmission after
disapproval shall be five (5) days rather than the thirty-five
(35) days unless extended by EPA.  In the event the appropriate
Source Area Defendant(s) fail to take appropriate response action
as required by this Section and EPA or the Commonwealth takes
such action instead, the appropriate Source Area Defendant(s)
shall reimburse all costs of the response action not inconsistent
with the NCP or Chapter 21E.  Payment of such response costs
shall be made in the manner described in Paragraph 47 of Section
XVII, within thirty (30) days of the appropriate Source Area
Defendant(s)' receipt of demand for payment.  In the event of any
action or occurrence during the performance of the Work on the
property of a Non-Source Area Defendant that causes or threatens
a release of Waste Material or that may present an endangerment
to public health or welfare or the environment, such Non-Source
Area Defendants shall immediately take all appropriate action and
cooperate with the appropriate Source Area Defendant(s) to
prevent, abate, or minimize such release or endangerment and

45

shall, as appropriate, immediately notify the EPA RPM and the EPA
Emergency Response Unit, Region I and the DEP RPM.

    45.  Nothing in the preceding paragraph shall be deemed to
limit the power and authority of the United States or the
Commonwealth or this Court to take, direct, or order all
appropriate action to protect public health, or welfare or the
environment or to prevent, abate, or minimize an actual or
threatened release of hazardous substances on, at, or from the
Site.


                              XVII.

              REIMBURSEMENT OF RESPONSE COSTS

    46. a.  Within thirty (30) days of lodging of this Consent
Decree, the Source Area Defendants shall establish an escrow
account in any bank or trust company and shall jointly and
severally remit to that escrow account funds in the amount of
$2,666,195.66.  Within the same time frame, the Source Area
Defendants shall send to the United States and the Commonwealth a
copy of the correspondence establishing and funding the escrow
account, together with information containing the identity of the
bank, the bank account under which the escrow account is
established and a bank statement showing the initial balance of
the escrow account.  The correspondence shall also reference the
appropriate DOJ case number.  As provided below, within thirty
(30) days of entry of the Consent Decree by the Court, the
Source Area Defendants shall, through their escrow holder, remit

                               46

the principal of the escrowed monies to the United States and the Commonwealth in the amounts specified below along with each Plaintiff's proportionate share of interest accrued thereon.  If the Court decides not to enter the Consent Decree, the Source Area Defendants shall direct the escrow holder to remit the escrowed monies with accrued interest to the Source Area Defendants.

b.    Within  thirty (30) days of the entry of this Consent Decree, the Source Area Defendants shall, through their escrow holder, jointly and severally, pay to EPA $2,650,000. and all interest accrued thereon in the form of a certified check made payable to "EPA Hazardous Substances Superfund" and referencing the Wells G & H Superfund Site, CERCLA Number 0146 and DOJ Case Number 90-11-3-194, in reimbursement of Response Costs incurred by the United States as accounted for and calulated as of January 1990, and demanded by EPA on April 20, 1990, relating to the Site.   The certified check shall be forwarded to EPA Region I, Attn: Superfund Accounting, P.O. Box 360197M, Pittsburgh, PA 15251.  Copies of the check and any transmittal letter shall be sent to the Regional Hearing Clerk, EPA Region I, J.F.K. Federal Building, Boston, MA  02203.

c.  Within  thirty (30) days of entry of this Consent Decree, the Source Area Defendants shall, through their escrow holder, jointly and severally, pay to the Commonwealth $16,195.66 and all interest accrued thereon in the form of a certified check made payable to the Commonwealth of

47

Massachusetts, Department of Environmental Protection, Site
Number 3-0479, in reimbursement of the Response Action Costs
incurred by the Commonwealth in relation to the Site through
August 6, 1990.   The certified check shall be forwarded to the
Commonwealth of Massachusetts, Department of Environmental
Protection, P.O. Box 4062, Boston, MA  02211.  Copies of the
check and any transmittal letter shall be sent to William
Harkins, Chief, Cost Recovery Section, Bureau of Waste Site
Cleanups, Department of Environmental Protection, One Winter
Street, Boston, MA  02108.  Copies of the check and any
transmittal letters shall be sent to Cindy Amara, Assistant
Attorney General, Environmental Protection Division, Department
of the Attorney General, One Ashburton Place, Boston, MA  02108.

   47.   a.   <u>Reimbursement of Oversight Costs</u> -  The appropriate
Source Area Defendant(s) shall, consistent with their obligations
pursuant to Schedule A, and Paragraphs 47b: and c, below,
reimburse the United States and the Commonwealth for all
oversight response costs incurred by them in connection with: the
review or development of plans, reports, and other items;
overseeing or verifying the Work pursuant to this Consent Decree;
undertaking action to prevent, abate, or minimize a release or
endangerment pursuant to Section XVI; securing access to the Site
or other property to which access is required for the performance
of the Work;  conducting the review of the Site required by
Section 121(c) of CERCLA in accordance with Section VII;
enforcing and monitoring compliance with this Consent Decree; and

developing and implementing a Community Relations Plan for the Site.

b.  Source Area Properties - (i) The United States through EPA, and the Commonwealth through DEP, shall allocate such costs to the extent practicable by Source Area property and shall send to the appropriate Source Area Defendant(s) for each Source Area property a demand for payment of such costs, together with a summary of such costs, on an annual basis, with each demand to be made as soon as practicable after each anniversary date of the entry of this Consent Decree.  Payment shall be made in the manner described in Paragraph 46 above, within thirty (30) days of receipt of the demand for payment.  (ii) The United States through EPA, and the Commonwealth through DEP, shall send to all Source Area Defendants a demand for payment, jointly and severally, for such oversight response costs that are not practicably allocable to specific Source Area properties, together with a summary of such costs, on an annual basis, with each demand to be made as soon as practicable after each anniversary date of the entry of this Consent Decree.   Within thirty (30) days of receipt of the demand for payment of such unallocable costs, the Source Area Defendants shall jointly and severally pay such costs in the manner described in Paragraph 46.

c.  Central Area RI/FS - The United States through EPA, and the Commonwealth through DEP, shall allocate to the appropriate Source Area Defendant(s) such oversight response costs attributed to the Central Area RI/FS and shall send to the appropriate

49

Source Area Defendant(s) a demand for payment of such costs, together with a summary of such costs, on an annual basis, with each demand to be made as soon as practicable after each anniversary date of the entry of this Consent Decree.    Payment shall be made in the manner described in Paragraph 46 above, within thirty (30) days of receipt of the demand for payment.

48.    In the event that the payments required by Paragraphs 46 and 47 are not made timely, the Defendant(s) obligated to make such payments under those paragraphs shall pay interest on the unpaid balance at the rate established by the Department of the Treasury pursuant to 31 U.S.C. § 3717 and 4 C.F.R. 102.13.    Those same Defendant(s) shall further pay to the United States  a handling charge of one (1) percent, to be assessed at the end of each thirty-day late period, to be assessed if the appropriate Source Area Defendant(s) responsible for such payment have not paid in full within ninety (90) days after the payment is due. In the event that the payments to the Commonwealth required by Paragraphs 46 and 47 are not made timely, the Source Area Defendant(s) shall pay interest on the unpaid balance at twelve (12) percent as set forth in Chapter 21E.    Payments made under this paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of  Source Area Defendant(s)' failure to make timely payments under this Section.

50

## XVIII.

### INDEMNIFICATION AND INSURANCE

49. The United States and the Commonwealth do not assume any liability by entering into this Consent Decree or by virtue of any designation of any Source Area Defendant(s) as EPA's authorized representatives, if such occurs, under Section 104(e) of CERCLA.

50. Each Settling Defendant shall indemnify and save and hold harmless the United States and the Commonwealth and their officials, agents, employees, contractors, and representatives from any and all claims or causes of action or other costs incurred by the United States or the Commonwealth including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from or on account of the acts or omissions of said Settling Defendant, and its officers, employees, agents, contractors, subcontractors, and any persons acting on  its behalf or under its control, in carrying out its activities pursuant to this Consent Decree or Schedule A, including any claims arising from any designation of Source Area Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  The United States and the Commonwealth shall not be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree.  Neither Settling Defendants nor any such contractor shall be considered an agent of the United States or the Commonwealth.

51

51. Settling Defendants waive any claims or causes of action against and shall indemnify and hold harmless the United States and the Commonwealth and their officials, agents, employees, contractors, and representatives for damages or reimbursement, or set-off of any payments made or to be made to the United States or the Commonwealth arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of work on or relating to the Site, including claims on account of construction delays.

52. a. Prior to commencing any on-Site work, the appropriate Source Area Defendant(s) shall secure, to the extent commercially available, and shall maintain for the duration of this Consent Decree comprehensive general liability and automobile insurance with limits of $8 million Site-wide, with minimum coverage of at least $2 million combined single limit per Source Area property, excluding the Olympia property, and, to the extent commercially available, naming as additional insured the United States and the Commonwealth. EPA, in consultation with the Commonwealth, may agree to lower limits. In addition, for the duration of this Consent Decree, the appropriate Source Area Defendant(s) shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of workmen's compensation insurance for all persons performing work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to

52

commencement of on-Site Work under this Consent Decree, the appropriate Source Area Defendant(s) shall provide to EPA and the Commonwealth certificates of such insurance and a copy of each insurance policy. If the appropriate Source Area Defendant(s) demonstrate by evidence satisfactory to EPA, in consultation with the Commonwealth, that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then with respect to that contractor or subcontractor the appropriate Source Area Defendant(s) need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

b.   Failure by the appropriate Source Area Defendant(s) to obtain or maintain any insurance required by this Section shall not be deemed a violation of this Consent Decree if the appropriate Source Area Defendant(s) demonstrate that they and their contractor(s) have made best efforts to obtain such insurance and that such insurance is not commercially available.

53.   The appropriate Source Area Defendant(s) shall indemnify and save and hold harmless the Non-Source Area Defendant(s), as appropriate, and its (their) officers, employees, shareholders, agents contractors and representatives from any  and all claims or causes of action or other costs incurred by such Non-Source Area Defendant(s) (including, but not limited to, attorneys' fees and other expenses of litigation and settlement) arising from or on account of all acts or omissions

of such appropriate Source Area Defendants(s), its (their) officers, employees, agents, contractors, subcontractors, and any person acting on its (their) behalf or under its (their) control, in carrying out activities pursuant to this Consent Decree.

54.  The appropriate Source Area Defendant(s) shall assume any and all liability for physical damage to any Non-Source Area Defendant's real property or improvements thereon arising from or relating to its (their) performance of Work on such Non-Source Area Defendant's property.

## XIX.

### FORCE MAJEURE

55.  "Force Majeure" is defined for the purposes of this Consent Decree as an event arising solely from causes beyond the control of the appropriate Source Area Defendants(s) and of any entity controlled by the Source Area Defendant(s), including its(their) contractors andsubcontractors, which delays or prevents the performance of any obligation under this Consent Decree notwithstanding the appropriate Source Area Defendant(s)' best efforts to avoid the delay.  The requirement that the appropriate Source Area Defendant(s) exercise "best efforts to avoid the delay"  includes using best efforts: (i) to anticipate any potential Force Majeure event;  (ii) to address the effects of any potential Force Majeure event;  (iii) to address the event as it is occurring; and  (iv) to address the delay following the

54

event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include unanticipated or increased costs, changed financial circumstances, or non-attainment of the Cleanup or Performance Standards and requirements set forth in Section VI hereof or in the SOW. "Force Majeure" may include delays caused by failure to obtain or maintain access to property not owned by an appropriate Source Area Defendant despite its timely, best efforts to obtain access, including seeking court-ordered access.

56.    When circumstances occur which may delay or prevent the completion of any obligation of the Consent Decree, whether or not caused by a Force Majeure event, the appropriate Source Area Defendant(s) shall notify the EPA RPM and the DEP RPM orally of the circumstances within two working days after the appropriate Source Area Defendant(s) first knew or should have known of such circumstances. If the EPA RPM is unavailable, the appropriate Source Area Defendant(s) shall notify the Director of the Waste Management Division, EPA Region I. Within seven (7) working days after the appropriate Source Area Defendant(s) first become aware of such circumstances, the appropriate Source Area Defendant(s) shall supply to the United States and the Commonwealth in writing an explanation of the cause(s) of any actual or expected delay, the anticipated duration of any delay, the measures taken and to be taken by the appropriate Source Area Defendant(s) to prevent or minimize the delay, and the timetable for implementation of such measures. The appropriate Source Area Defendant(s) shall

55

exercise best efforts to avoid or minimize any delay and any effects of a delay. Failure to give timely oral and written notice to the United States and the Commonwealth in accordance with this Paragraph shall constitute a waiver of any claim of Force Majeure with respect to the circumstances in question.

57. If EPA, in consultation with the Commonwealth, agrees that an event delaying or preventing the completion of an obligation under this Consent Decree is or was caused by a Force Majeure event, then EPA shall notify the appropriate Source Area Defendant(s) in writing of its agreement to provide such additional time as may be necessary to allow the completion of the specific phase of the Work and/or any succeeding phase of the Work directly affected by such delay, which additional time shall be no longer than the total delay resulting from the Force Majeure event or shall allow for the performance of a substitute activity in furtherance of the Work if EPA, in consultation with the Commonwealth, determines that a substitute activity is appropriate. In proceedings on any dispute regarding a delay in or prevention of performance, the appropriate Source Area Defendant(s) shall have the burden of proving by a preponderance of the evidence (1) that the delay is or was caused by a Force Majeure event, and (2) that the amount of additional time requested is necessary to compensate for that event.

58. Delay in achievement of any milestone established by the Work Plans and/or other relevant documents shall not

56

automatically justify or excuse delay in achievement of any
subsequent milestone.

XX.

## DISPUTE RESOLUTION BETWEEN PLAINTIFFS AND SETTLING DEFENDANTS

59.  Any dispute between Plaintiffs and Settling
Defendant(s) which arises under or with respect to this Consent
Decree shall in the first instance be the subject of informal
negotiations between the parties to the dispute.  The period for
informal negotiations begins when the Settling Defendant(s)
notify EPA of the existence of a dispute.  The period for
informal negotiations shall not exceed twenty (20) days from the
time the dispute arises, unless it is extended by agreement
between Plaintiffs and the parties to the dispute.  The period
for informal negotiations shall end when EPA, in consultation
with the Commonwealth, provides its position on the disputed
matter to the disputing Defendant(s) in writing, but not later
than thirty-four (34) days from the time the dispute arises.  At
the same time that it provides its position on the disputed
matter, EPA, in consultation with the Commonwealth, shall i)
notify the disputing Defendant(s) whether the dispute is subject
to administrative resolution and must be resolved on the
administrative record under Paragraph 63 below; and ii) identify
those separable obligations that the disputing Defendant(s) shall
continue to perform pursuant to Paragraph 66 below.  Settling

57

Defendants shall waive any rights to contest EPA's determination that the dispute is subject to administrative resolution.

60.   In the event that the parties cannot resolve a dispute by informal negotiations under the preceding paragraph, then the position advanced by EPA, in consultation with the Commonwealth, shall be considered binding unless, within ten (10) days after receipt of notification, the disputing Defendant(s) serve on the other parties a notice invoking dispute resolution together with a written statement of their position on the matter in dispute ("Statement of Position"), including any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon.   Any Party wishing to contest the disputing Defendant(s) position shall serve a Statement of Position, including supporting documentation, on the parties no later than twelve (12) days after receipt of the disputing Defendant(s)' Statement of Position.   In the event that these periods for exchange of the Statements of Position may delay the Work, they may, if practicable, be shortened by agreement of the parties to the dispute.

61.   Upon review of the administrative record, the Director of the Waste Management Division, EPA Region I, in consultation with the Commonwealth, shall issue a final decision resolving the dispute.   This decision shall be enforceable administratively pursuant to Section 121(e)(2) of CERCLA, subject to the rights of judicial review set forth in Paragraphs 62 and 63.   If EPA has not issued a final decision within thirty (30) days after all

58

Statements of Position have been received by EPA, stipulated penalties directly related to the matter in dispute shall be stayed until the final decision has been issued.

62. Any final decision of EPA, in consultation with the Commonwealth, pursuant to the preceding paragraph, shall be reviewable by this Court, provided that a petition is filed with the Court within ten (10) days of receipt of EPA's decision.

63. Any dispute under this Section which relates to the selection, extent, or adequacy of any aspect of the Work including but not limited to: Additional Work, closure, and achievement of Performance and Cleanup standards, shall be reviewed by the Court on the basis of the administrative record maintained by EPA. In such proceedings, the EPA final decision shall be upheld unless Settling Defendant(s) can demonstrate that the decision is arbitrary and capricious or otherwise not in accordance with the law. For purposes of this paragraph, the adequacy of the Work includes: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA, in consultation with the Commonwealth, under this Consent Decree; and (2) the adequacy of Work performed pursuant to this Consent Decree. The administrative record shall include the written notification of dispute, all Statements of Position, and any other materials submitted by the parties in support of their positions.

64. If EPA, in consultation with the Commonwealth, determines that a dispute is not subject to administrative

59