# EXHIBIT 4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JFK) |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |

SETTLEMENT AGREEMENT
RESOLVING THE UNITED STATES' PROOFS OF CLAIM
REGARDING CERTAIN ENVIRONMENTAL MATTERS

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**SETTLEMENT AGREEMENT RESOLVING THE UNITED STATES'
PROOFS OF CLAIM REGARDING CERTAIN ENVIRONMENTAL MATTERS**

## Table of Contents

Definitions........................................................................................................... 3

Jurisdiction......................................................................................................... 10

Parties Bound; Succession and Assignment .................................................... 10

Treatment of Claims Regarding Liquidated Sites............................................. 10

Treatment of Certain Claims Regarding Libby Asbestos Site.......................... 17

Treatment of Claims and Expenses Regarding Debtor-Owned Sites ............... 18

Summary of Allowed General Unsecured Claims and Administrative Expenses............ 22

Work Consent Decrees and Work Administrative Orders................................. 23

Treatment of Additional Sites.......................................................................... 24

Treatment of Allowed Claims........................................................................... 28

Distribution Instructions .................................................................................. 33

Covenant Not to Sue and Reservation of Rights ............................................. 35

Contribution Protection.................................................................................... 37

Notices and Submissions .................................................................................. 38

Lodging and Opportunity for Public Comment................................................ 39

Amendments/Integration and Counterparts ..................................................... 41

Retention of Jurisdiction ................................................................................... 41

**SETTLEMENT AGREEMENT RESOLVING THE UNITED STATES' PROOFS OF CLAIM REGARDING CERTAIN ENVIRONMENTAL MATTERS**

WHEREAS W.R. Grace & Co. and certain of its subsidiaries (collectively the "Debtors") filed with the United States Bankruptcy Court for the District of Delaware voluntary petitions for relief under Title 11 of the United States Code on April 2, 2001 which are jointly administered as Case No. 01-01139 (JFK);

WHEREAS the United States, on behalf of the United States Environmental Protection Agency ("EPA"), the United States Department of Agriculture ("USDA"), the United States Department of the Interior ("DOI"), the National Oceanic and Atmospheric Administration ("NOAA"), and the United States Army Corps of Engineers ("ACE") (collectively, the "Settling Federal Agencies"), contends that certain of the Debtors are liable under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. 9601 et seq., for response costs and natural resource damages incurred and to be incurred by the Settling Federal Agencies in the course of responding to releases and threats of releases of hazardous substances into the environment for the Liquidated Sites as set forth herein;

WHEREAS the United States, on behalf of EPA, USDA, and ACE has filed a proof of claim, Claim No. 9634, against the Debtor W.R. Grace & Co.-Conn. and on behalf of EPA has filed a proof of claim, Claim No. 9635, against the Debtor Kootenai Development Company.

WHEREAS the Debtors dispute the United States' contentions and, but for this Settlement Agreement, would object, in whole or in part, to its proofs of claim;

WHEREAS the Los Angeles County Metropolitan Transportation Authority, the Central Chemical Site Participation Group, the Green River Site PRP Group Claimants, the OII Steering Committee, the National Railroad Passenger Corporation, American Premier Underwriters, Inc.,

the Casmalia Site Steering Committee, Samson Hydrocarbons, Ferguson Enterprises, Inc., TDY

Holdings, LLC., Kennametal, Inc., Harrington Tools, Inc., and the Burlington Northern and

Santa Fe Railway, are potentially responsible parties who are implementing response actions at

Liquidated Sites set forth herein and have filed unresolved proofs of claims against Debtors that

assert contribution claims under CERCLA regarding Liquidated Sites;

WHEREAS the Debtors seek, to the maximum extent permitted by law, to obtain

protection, through the resolution of environmental liabilities for the Liquidated Sites as set forth

herein, from and against all Claims that have been or may in the future be asserted for response

costs;

WHEREAS the Debtors and the Settling Federal Agencies wish to resolve their

differences with respect to the Liquidated Sites and deal with other issues relating to

environmental matters as provided herein;

WHEREAS in consideration of, and in exchange for, the promises and covenants herein,

including, without limitation, the covenants not to sue set forth in Paragraphs 27, 29, and 33 and,

subject to the provisions of Paragraphs 37-39, intending to be legally bound hereby, the Debtors

and the United States hereby agree to the terms and provisions of this Settlement Agreement;

WHEREAS settlement of the matters governed by this Settlement Agreement is in the

public interest and an appropriate means of resolving these matters;

NOW, THEREFORE, without the admission of liability or any adjudication on any issue

of fact or law, and upon the consent and agreement of the parties to this Settlement Agreement

by their attorneys and authorized officials, it is hereby agreed as follows:

2

### DEFINITIONS

1.    In this Agreement, the following terms shall have the following meanings:

A.    "Access Consent Decree" shall mean the Consent Decree resolving United States v. W.R. Grace & Co., et al., Civ. No. 00-167-M-DWM (D. Mont.), that was approved by the Bankruptcy Court on January 3, 2002 and entered in the United States District Court for the District of Montana on May 3, 2002.

B.    "Additional Sites" means all sites, including, without limitation, all facilities, as that term is defined in CERCLA, other than the Liquidated Sites and Debtor-Owned Sites. An "Additional Site" shall be construed to include (i) for those sites now or hereafter included on the NPL, all areas of a site as defined by EPA for purposes of the NPL, including any later expansion of such site as may be determined by EPA, and any affected natural resources, and (ii) for those sites not included on the NPL, all areas and natural resources affected or potentially affected by a release or threatened release of hazardous substances at or from the site. Without limiting the general application of the foregoing definition, the Parties agree that the non Debtor-Owned portions of the Libby Asbestos Site, located in Libby, Montana, and EPA's claim for reimbursement of response costs incurred pre-petition associated with any or all portions of the Libby Asbestos Site shall be treated as an "Additional Site" as defined herein.

C.    "ATSDR" means the "Agency for Toxic Substances and Disease Registry".

D.    "ATSDR's Nationwide Claim" shall mean shall mean EPA's claim under Section 107(a)(4)(D) of CERCLA, 42 U.S.C. 9607(a)(4)(D), for costs of ATSDR's investigation of asbestos contamination, including any health effects studies, at facilities that processed

3

vermiculite originating from the Libby mine that were incurred on or before December 31, 2004, and were or will be billed to ATSDR's A717 internal billing code or any other non-site specific billing code. This phrase does not include costs of ATSDR investigations of facilities that processed vermiculite originating from the Libby mine that were billed to site-specific billing codes.

E.     "Allowed Administrative Expense Claim" shall mean a claim for an administrative expense as that term is referred to in Section 503(b) of the Bankruptcy Code which is not subject to objection and is allowed in accordance with the provisions of the Bankruptcy Code.

F.     "Allowed General Unsecured Claim" shall mean a non-priority, unsecured Claim that is not subject to objection and is allowed in accordance with the provisions of the Bankruptcy Code.

G.     "Army Corps of Engineers" or "ACE" means the United States Army Corps of Engineers or any legal successor thereto.

H.     "Bankruptcy Cases" shall mean the Chapter 11 bankruptcy cases captioned In re W.R. Grace & Co., et al., Case No. 01-01139 (JFK) (Jointly Administered).

I.     "Bankruptcy Court" or the "Court" refers to the United States Bankruptcy Court for the District of Delaware where the Bankruptcy Cases are currently pending.

J.     "Casmalia Site Steering Committee" shall mean the parties executing the Participation Agreement for RD/RA activities at the Casmalia Superfund Site and parties thereafter executing such agreement, except that the Casmalia Site Steering Committee shall not include signatories who have stated that they have withdrawn from membership in the group or who have filed for bankruptcy and ceased making payments required to be made to the group.

4

K.    "Central Chemical Site Participation Group" or "CCS Group" shall mean the parties executing the Participation Agreement for RD/RA activities at the Central Chemical Site and parties thereafter executing such agreement, except that the Central Chemical Site Participation Group shall not include signatories who have stated that they have withdrawn from membership in the group or who have filed for bankruptcy and ceased making payments required to be made to the group.

L.    "CERCLA" refers to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as now in effect or hereafter amended.

M.    "Claim" has the meaning provided in Section 101(5) of the Bankruptcy Code.

N.    "Debtors" shall mean W.R. Grace & Co. and those of its subsidiaries that filed voluntary petitions for relief on April 2, 2001, as debtors, debtors-in-possession or in a new or reorganized form as a result of the Bankruptcy Cases. These entities are listed in Footnote 1.

O.    "Debtor-Owned Sites" means any properties or sites, or any portions thereof, owned by any of the Debtors on or after April 2, 2001, but not including the Zonolite/Grace Site in New Castle, Pennsylvania.

P.    "Department of Agriculture" or "USDA" means the United States Department of Agriculture or any legal successor thereto.

Q.    "Department of the Interior" or "DOI" means the United States Department of Interior or any legal successor thereto.

R.    "EPA" means the United States Environmental Protection Agency or any legal successor thereto.

5

S.    "Effective Date" means the date on which this Settlement Agreement is approved by the Bankruptcy Court.

T.    "Green River Site PRP Group Claimants" or "GRS Group" shall mean the General Electric Company, National Aluminum Corporation, AII Acquisition, Inc., Commonwealth Aluminum Concast, Inc., Willamette Industries, now known as Weyerhaeuser, and United Distillers Manufacturing, Inc.

U.    "Liquidated Sites" means the following 29 sites:

1)    Amber Oil (Eco-Tech) Site in Milwaukee, Wisconsin

2)    Aqua Tech Site in Greer, South Carolina

3)    Casmalia Resources Site in Santa Barbara, California

4)    Central Chemical Site in Hagerstown, Maryland

5)    Ellwood City Zonolite Site in Ellwood City, Pennsylvania

6)    Galaxy/Spectron Site in Elkton, Maryland

7)    Green River Site in Maceo, Kentucky

8)    Harrington Tools Site in Glendale, California

9)    Intermountain Insulation Site in Salt Lake City, Utah

10)    IWI Site in Summit, Illinois

11)    Li Tungsten Site in Glen Cove, New York

12)    Malone Services Co. Site in Texas County, Texas

13)    N-Forcer Site in Dearborn, Michigan

14)    Operating Industries Site in Monterey Park, California

15)    Prince George's County Zonolite Site in Beltsville, Maryland

16)    R&H Oil/Tropicana Site in San Antonio, Texas

17)    RAMP Industries Site in Denver, Colorado

18)    Reclamation Oil Site in Detroit, Michigan

19)    Robinson Insulation Site in Minot, North Dakota

20)    Solvents Recovery Service of New England Site in Southington,
       Connecticut

21)    Vermiculite Intermountain Site in Salt Lake City, Utah

22)    Vermiculite Northwest Site in Spokane, Washington

23)    Watson Johnson Landfill Site located in Richland Township,
       Pennsylvania

24)    Wauconda Sand and Gravel Site in Wauconda, Illinois

25)    Western Minerals Processing Site in Denver, Colorado

26)    Western Minerals Products Site a/k/a Western Minerals Processing
       Site in Minneapolis, Minnesota

27)    Zonolite/Grace Site in Hamilton Township, New Jersey

28)    Zonolite/Grace Site in New Castle, Pennsylvania

29)    Zonolite/Grace Site in Wilder, Kentucky

A "Liquidated Site" delineated above shall be construed to include (i) for those sites now or

hereafter included on the NPL, all areas of a site as defined by EPA for purposes of the NPL,

including any later expansion of such site as may be determined by EPA, and any affected

natural resources, or (ii) for those sites not included on the NPL, all areas and natural resources

affected or potentially affected by a release or threatened release of hazardous substances at or

from the site.  However "Liquidated Site" shall not be construed to include activities related to

the performance of health effects studies by ATSDR on or after January 1, 2005, because the

parties do not intend to liquidate such costs of performing health effects studies, if any such costs are incurred.

V.    "NOAA" means the National Oceanic and Atmospheric Administration of the United States Department of Commerce of the United States of America or any legal successor thereto.

W.    "NPL" means the National Priorities List, 40 C.F.R. Part 300.

X.    "OII Steering Committee" shall mean the parties executing the Participation Agreement for RD/RA activities at the Operating Industries, Inc. Site and parties thereafter executing such agreement, except that the OII Steering Committee shall not include signatories who have stated that they have withdrawn from membership in the group or who have filed for bankruptcy and ceased making payments required to be made to the group.

Y.    "PRP Group/Entity" means the Los Angeles County Metropolitan Transportation Authority, the Central Chemical Site Participation Group, the Green River Site PRP Group Claimants, the OII Steering Committee, the National Railroad Passenger Corporation, American Premier Underwriters, Inc., the Casmalia Site Steering Committee, Samson Hydrocarbons, Ferguson Enterprises, Inc., TDY Holdings, LLC., Kennametal, Inc., Harrington Tools, Inc., and the Burlington Northern and Santa Fe Railway which are potentially responsible parties who are implementing response actions at Liquidated Sites set forth herein and have filed unresolved proofs of claims against Debtors that assert contribution claims under CERCLA regarding Liquidated Sites.

Z.    "Participating PRP Group/Entity" means those PRP Groups/Entities that have agreed to participate in this Settlement Agreement in accordance with the procedure set forth in Paragraph 4.B.

8

AA.    "Plan of Reorganization" or "Plan" means any plan of reorganization or Chapter 11 liquidation that is confirmed and becomes effective in the Bankruptcy Cases.

BB.    "Postpetition" means the time period from and after April 3, 2001.

CC.    "Prepetition" means the time period on or prior to April 2, 2001.

DD.    "RCRA" refers to the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq., as now in effect or hereafter amended.

EE.    "Settled Debtor-Owned Site Claims" means claims for Prepetition response costs at Debtor-Owned Sites for which Allowed General Unsecured Claims are established in Paragraph 9 and claims for Postpetition response costs for which Allowed Administrative Expense Claims have been established in or pursuant to Paragraph 10.

FF.    "Settling Federal Agencies" means, collectively, EPA, USDA, DOI, NOAA, and ACE.

GG.    "United States" means the United States of America, including its agencies, departments and instrumentalities.

HH.    "Work Consent Decrees" means the following judicial Consent Decrees, as amended: (i) United States v. W.R. Grace & Co., Civil Action No. 80-748-C (October 21, 1980) (D. Mass.); (ii) United States v. Wildwood Conservation Corporation, et al., Civil Action No. 91-11807 MA (October 9, 1991) (D. Mass.); and (iii) United States v. W.R. Grace, (July 6, 1998) Civil Action No. 97-CV-125830NG.

II.    "Work Administrative Orders" means the following administrative orders: (i) Unilateral Administrative Order for Removal Activities at the Libby Asbestos Site Export Plant, Docket No. CERCLA-8-2000-10; and (ii) Administrative Order on Consent for Removal

9

Action issued by US EPA Region 8 and agreed to by W.R. Grace & Co. - Conn., and Kootenai

Development Company under Docket No. CERCLA-08-2003-0011.

## JURISDICTION

2.      The Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C.

§§ 157, 1331, and 1334, and 42 U.S.C. §§ 9607 and 9613(b).

## PARTIES BOUND; SUCCESSION AND ASSIGNMENT

3.      This Settlement Agreement applies to, is binding upon, and shall inure to the

benefit of the United States, Participating PRP Groups/Entities, and the Debtors, as well as the

Debtors' legal successors and assigns, and any trustee, examiner or receiver appointed in the

Bankruptcy Cases.

## TREATMENT OF CLAIMS REGARDING LIQUIDATED SITES

4.      In settlement and satisfaction of the Claims of the Settling Federal Agencies with

respect to the Liquidated Sites, the Settling Federal Agencies shall have Allowed General

Unsecured Claims in the amounts set forth in Paragraph 4.A. below.  In settlement and

satisfaction of the Claims of PRP Groups/Entities with respect to the Liquidated Sites, PRP

Groups/Entities shall have Allowed General Unsecured Claims in the amounts set forth in

Paragraph 4.A. if they agree in writing that the Allowed General Unsecured Claim satisfies their

Claim as provided in Paragraph 4.B.  The Settling Federal Agencies (and the PRP

Groups/Entities to the extent they submit the writing described in Paragraph 4.B.) shall receive

no distributions from the Debtors and their estates in the Bankruptcy Cases with respect to the

Debtors' liabilities and obligations under CERCLA for the Liquidated Sites other than as set

forth in this Settlement Agreement.

A.    Liquidated Claim Amounts

1)  With respect to the Amber Oil (Eco-Tech) Site located in Milwaukee, Wisconsin, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $10,000.

2)  With respect to the Aqua Tech Site located in Greer, South Carolina, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $180,464.

3)  With respect to the Casmalia Resources Site in Santa Barbara, California, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $33,610.

4)  With respect to the Central Chemical Site in Hagerstown, Maryland: (i) the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $384,662; and (ii) the Central Chemical Site PRP Group shall have an Allowed General Unsecured Claim of $36,750.

5)  With respect to the Ellwood City Zonolite Site in Ellwood City, Pennsylvania, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $2,501,075.42

6)  With respect to the Galaxy/Spectron Site in Elkton, Maryland, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $9,381.

7)  With respect to the Green River Site in Maceo, Kentucky:  (i) the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $100,000; and (ii) the Green River Site PRP Group Claimants shall have an Allowed General Unsecured Claim of $419,452.94 to be paid as follows:  $136,562.32 to be paid to The General Electric

11

Company (which filed claim number 12938); $63,921.62 to be paid to National Aluminum Corporation (which filed claim number 13308); $201,694.17 to be paid to AII Acquisition Corp. (which filed claim number 13431); $3,556.00 to be paid to Commonwealth Aluminum Concast, Inc. (which filed claim number 13941); $9,877.62 to be paid to Willamette Industries, now known as Weyerhaeuser (which filed claim number 14776); and $3,841.21 to be paid to United Distillers Manufacturing, Inc. (which filed claim number 14887).

8) With respect to the Harrington Tools Site in Glendale, California: (i) the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $107,326.95; (ii) the Los Angeles County Metropolitan Transportation Authority shall have an Allowed General Unsecured Claim of $893,781.83; and (iii) Harrington Tools, Inc. shall have an Allowed General Unsecured Claim of $112,547.63.

9) With respect to the Intermountain Insulation Site in Salt Lake City, Utah, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $350,000.

10) With respect to the IWI Site located in Summit, Illinois, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $10,000.

11) With respect to the Li Tungsten Site in Glen Cove, New York, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $4,950,000.

12) With respect to the Malone Services Co. Site in Texas County, Texas, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $315,000.

13) With respect to the N-Forcer Site in Dearborn, Michigan, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $1,131,285.15.

12

14) With respect to the Operating Industries Site in Monterey Park, California, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $1,182,783.

15) With respect to the Prince George's County Zonolite Site in Beltsville, Maryland, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $125,574.75.

16) With respect to the R&H Oil/Tropicana Site in San Antonio, Texas, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $114,876.

17) With respect to the RAMP Industries Site in Denver, Colorado, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $7,204.

18) With respect to the Reclamation Oil Site in Detroit, Michigan, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $44,700.

19) With respect to the Robinson Insulation Site in Minot, North Dakota: (i) the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $350,000; and (ii) the Burlington Northern and Santa Fe Railway shall have an Allowed General Unsecured Claim of $17,300.

20) With respect to the Solvents Recovery Service of New England Site in Southington, Connecticut, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $82,520.

21) With respect to the Vermiculite Intermountain Site in Salt Lake City, Utah, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $350,000.

22) With respect to the Vermiculite Northwest Site in Spokane, Washington, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $201,539.29.

23) With respect to the Watson Johnson Landfill Site located in Richland Township, Pennsylvania, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $300,000.

24) With respect to the Wauconda Sand and Gravel Site in Wauconda, Illinois, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $0 in accordance with the Settlement Agreement previously entered into by the Debtors and EPA and approved by the Court on or about July 24, 2006.

25) With respect to the Western Minerals Processing Site in Denver, Colorado:  (i) the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $1,070,048.30; (ii) the Burlington Northern and Santa Fe Railway shall have an Allowed General Unsecured claim of $1,017,106.20.

26) With respect to the Western Minerals Products Site in Minneapolis, Minnesota, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $13,265,090.80.

27) With respect to the Zonolite/Grace Site in Hamilton Township, New Jersey:  (i) the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $931,100.99; (ii) the National Railroad Passenger Corporation ("NRPC") shall have an Allowed Unsecured Claim of $1,528,550.33; and the American Premier Underwriters, Inc. ("APU") shall have an Allowed General Unsecured Claim of $1,763,492.44.  Notwithstanding the forgoing, (a) in the event that NRPC and APU receive a payment or credit from their

14

response action contractor relating to work performed at the Zonolite/Grace Hamilton Township

Site prior to any payment by the Debtors of the Claims allowed herein, the amount of NRPC's

and APU's Allowed General Unsecured Claims shall each be reduced in an amount equal to the

amount of such payment or credit; and (b) in the event that NRPC and/or APU receive a payment

or credit from their response contractor relating to work performed at the Zonolite/Grace

Hamilton Township Site after any payment under the Plan of the Claims allowed herein, NRPC

and/or APU shall turn over such payments by the contractor to the Debtors or pay the Debtors

for any credits either of them may receive from the contractor and NRPC and APU shall keep the

Debtors informed as to their efforts to secure such payments or credits.

        28)     With respect to the Zonolite/Grace Site in New Castle,

Pennsylvania, the United States on behalf of EPA shall have an Allowed General Unsecured

Claim of $7,984.

        29)  With respect to the Zonolite/Grace Site in Wilder, Kentucky, the

United States on behalf of EPA shall have an Allowed General Unsecured Claim of

$4,373,913.49.

        B.     In order for a PRP Group/Entity to receive any payments or distributions

from the Debtors pursuant to this agreement, the PRP Group/Entity must by the effective date of

Debtors' Plan of Reorganization agree in writing that all liabilities and obligations for the site

that have been or ever could be asserted by the PRP Group/Entity (or any of its individual

members where the PRP Group/Entity is a group of potentially responsible parties) against the

Debtors are discharged and satisfied by the Allowed Claim. In the event that the PRP

Group/Entity has not by the effective date of Debtors' Plan of Reorganization agreed in writing

that all liabilities and obligations for the site that have been or ever could be asserted by the PRP

Group/Entity (or any of its individual members where the PRP Group/Entity is a group of potentially responsible parties) against the Debtors are discharged and satisfied by the Allowed Claim, then the Debtors shall make or cause to be made all the payments or distributions that would have been made to such PRP Group/Entity under this Settlement Agreement to the United States on behalf of EPA, and EPA will make credits to that Site's account as provided in Paragraph 5(A). Such payments or distributions will be in addition to the other payments or distributions the United States is to receive under Paragraph 4. Upon entry of the Order by the Bankruptcy Court approving this Settlement Agreement, the Debtors intend to file stipulations and/or claims objections, as appropriate, which will address the proofs of claim filed by all of the PRP Groups/Entities consistent with the terms of this Settlement Agreement.

C.    The amounts of the Allowed General Unsecured Claims established in this Paragraph are summarized in the chart set forth in Paragraph 13.

5.    With respect to the Liquidated Sites:

A.    With respect to the Allowed General Unsecured Claims set forth in Paragraph 4 for EPA, only the amount of cash received by EPA (and net cash received on account of any non-cash distributions) from the Debtors under this Settlement Agreement for the Allowed General Unsecured Claim for a particular site, and not the total amount of the allowed claim against the Debtors, shall be credited by EPA to its account for a particular site, which credit shall reduce the liability of potentially responsible parties other than the Debtors for the particular site by the amount of the credit.

B.    The Claims and payments set forth in Paragraph 4 will be deemed allocated towards all past, present and future Claims with respect to response costs or natural resource damages for the Liquidated Sites, whether to address matters known or unknown, for

16

which a Claim of any kind or nature has been or could be asserted against the Debtors pursuant

to Sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606 or 9607, or Section 7003 of RCRA, 42

U.S.C. § 6973, by the Settling Federal Agencies or by the potentially responsible parties or

potentially responsible party groups which have incurred or may incur such costs.

6.      The parties reserve all rights and defenses they may have with respect to conduct

of the Debtors at any Liquidated Site occurring after the date of lodging of this Settlement

Agreement which would give rise to liability under 42 U.S.C. §§ 9606 and 9607(a)(1)-(4), or

Section 7003 of RCRA, 42 U.S.C. §6973. Nothing in this Settlement Agreement shall affect or

limit such rights and defenses.

### TREATMENT OF CERTAIN CLAIMS REGARDING LIBBY ASBESTOS SITE

7.      The United States' rights and claims against Debtors on behalf of EPA related to

access to certain properties in and near Libby, Montana in United States v. W.R. Grace & Co., et

al., Civ. No. 00-167-M-DWM (D. Mont.), were resolved in the Access Consent Decree that was

approved by the Bankruptcy Court on January 3, 2002 and entered in the District of Montana on

May 3, 2002. Among other relief, Paragraph 7 of the Access Consent Decree granted the United

States on behalf of EPA an Allowed General Unsecured Claim in the amount of $71,000. The

Access Consent Decree resolved all of the United States' rights and claims for access as set forth

in its complaint in United States v. W.R. Grace & Co., et al., Civ. No. 00-167-M-DWM (D.

Mont.).

8.      The following claims shall be treated as follows:

A.      In settlement and satisfaction of ATSDR's Nationwide Claim, the United

States on behalf of EPA shall have an Allowed General Unsecured Claim in the amount of

$622,860.

B.     Subject to the provisions set forth in Paragraph 4(B), in settlement and satisfaction of its claim regarding the Libby Asbestos Site, the Burlington Northern and Santa Fe Railroad shall have an Allowed General Unsecured Claim in the amount of $1,918,355.51.

**TREATMENT OF CLAIMS AND EXPENSES REGARDING DEBTOR-OWNED SITES**

9.     CERCLA Response Costs Incurred Prepetition at Debtor-Owned Sites.

A.     In settlement and satisfaction of the Settling Federal Agencies' claims under Section 107 of CERCLA, 42 U.S.C. § 9607, for response costs and natural resource damages incurred Prepetition at the following Debtor-Owned Sites, the Settling Federal Agencies shall have Allowed General Unsecured Claims in the amounts set forth below:

1)     With respect to the Acton Plant Site in Acton, Massachusetts, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $537,950.04.

2)     With respect to the Cambridge Plant in Cambridge, Massachusetts, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $115,697.

3)     With respect to the Wells G&H Site in Woburn, Massachusetts, the United States on behalf of EPA shall have an Allowed General Unsecured Claim of $228,167.13.

B.     The amounts of the Allowed General Unsecured Claims established in this Paragraph are summarized in the chart set forth in Paragraph 13.

10.     CERCLA Response Costs Incurred Postpetition at Debtor-Owned Sites.

A.     In settlement and satisfaction of the Settling Federal Agencies' claims under Section 107 of CERCLA, 42 U.S.C. § 9607, for Postpetition response costs incurred at the following Debtor-Owned Sites and the Zonolite/Grace Site in New Castle, Pennsylvania,

18

through the dates identified below, the Settling Federal Agencies shall have Allowed

Administrative Expense Claims in the amounts set forth below.

1) With respect to the Cambridge Plant in Cambridge, Massachusetts, the

United States on behalf of EPA shall have an Allowed Administrative Expense Claim of

$13,253, for costs incurred through June 16, 2003.

2) With respect to the Wells G&H Site in Woburn, Massachusetts, the

United States on behalf of EPA shall have an Allowed Administrative Expense Claim of

$521,833.35, for costs incurred through September 30, 2005.

3) With respect to the Zonolite/Grace Site in New Castle, Pennsylvania,

the United States on behalf of EPA shall have an Allowed Administrative Expense Claim of

$137,488.07 for costs incurred through the date of the Debtors' Postpetition sale of such site.

B.     The amounts of the Allowed Administrative Expense Claims established

in Paragraph 10 A. are summarized in the chart set forth in Paragraph 13.

C.     The Allowed Administrative Expense Claims set forth in Paragraphs 10 A.

1-3 above (in the amount of $672,574.42) shall be paid in full within thirty days of approval of

this Settlement Agreement.  Nothing in this Paragraph shall prevent Settling Federal Agencies

from making requests for additional administrative expenses incurred after the cutoff dates

specified in Paragraph 10.A. pursuant to Section 503 of the Bankruptcy Code.

D.     In settlement and satisfaction of the Settling Federal Agencies' claims

under Section 107 of CERCLA, 42 U.S.C. § 9607, for Postpetition response costs at the Acton

Plant Site in Acton, Massachusetts, the United States on behalf of EPA shall have an Allowed

Administrative Expense Claim for the period between April 2, 2001 and September 19, 2006, in

the amount of $1,621,705.44.  The Allowed Administrative Expense Claim set forth in this

19

Paragraph shall accrue interest at the rate of interest specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. §9507 in effect on the date the Plan of Reorganization is confirmed. Such interest shall begin to accrue on October 13, 2006, and continue to accrue until payment is made. Nothing in this Paragraph shall prevent Settling Federal Agencies from making requests for additional administrative expenses for costs incurred after September 19, 2006, pursuant to Section 503 of the Bankruptcy Code.

11.    Debtors' Curtis Bay, Baltimore, Maryland Facility. The Claim of the United States on behalf of ACE under CERCLA for response costs incurred and to be incurred by ACE under the Formerly Utilized Sites Remedial Action Program ("FUSRAP") shall be resolved in accordance with a separate settlement agreement to be filed with the Court contemporaneously with or shortly after the filing of this Settlement Agreement. Notwithstanding anything herein to the contrary, should the separate settlement agreement referenced in this paragraph not be finalized, Debtors reserve their right to object to and the United States on behalf of ACE reserves the right to pursue the United States' claim No. 9634 as it relates to such site within the time frame required by the confirmed Plan of Reorganization. In the event of such objection, the Debtor's Curtis Bay facility shall be excluded from this Settlement Agreement and the Parties reserve all their rights with regard to this facility.

12.    Non-Dischargeability/ Reservation of Rights Regarding Debtor-Owned Sites.

A.    The following claims of or obligations to the Settling Federal Agencies with respect to Debtor-Owned Sites shall not be discharged under Section 1141 of the Bankruptcy Code by the confirmation of a Plan of Reorganization, nor shall such claims or obligations be impaired or affected in any way by the Bankruptcy Cases or confirmation of a Plan of Reorganization:

1)  Claims against the Debtors by the Settling Federal Agencies under Section 107 of CERCLA, 42 U.S.C. § 9607, for recovery of response costs incurred Postpetition with respect to response actions taken at a Debtor-Owned Site, including such response action taken to address hazardous substances that have migrated from a Debtor-Owned Site to a proximate location, but excluding claims resolved under Paragraph 10.A and D;

2)  Claims against the Debtors by the Settling Federal Agencies under Section 107 of CERCLA, 42 U.S.C. § 9607, for recovery of natural resource damages arising as a result of Postpetition releases or ongoing releases of hazardous substances at or which migrate or leach from a Debtor-Owned Site;

3)  Claims against the Debtors by the Settling Federal Agencies for recovery of civil penalties for violations of law resulting from Postpetition conduct of the Debtors.  As used in this Paragraph 12, "Postpetition conduct" shall not include a failure to satisfy or comply with any Prepetition liability or obligations, or to pay a claim (including, without limitation, a penalty claim) except as required by or resulting from the terms of the Plan of Reorganization, Paragraph 14 or any other provision of this Settlement Agreement, or a final order of the Court confirming a Plan of Reorganization; or

4)  Actions against the Debtors by the Settling Federal Agencies under CERCLA or RCRA seeking to compel the performance of a removal action, remedial action, corrective action, closure or any other cleanup action at a Debtor-Owned Site, including actions to address hazardous substances that have migrated to a proximate location from a Debtor-Owned Site.

B.      The Settling Federal Agencies may pursue enforcement actions or proceedings under applicable law with respect to the Claims and obligations of the Debtors to the

21

Settling Federal Agencies under the foregoing Subparagraph A in the manner, and by the administrative or judicial tribunals, in which the Settling Federal Agencies could have pursued enforcement actions or proceedings if the Bankruptcy Cases had never been commenced. The Debtors reserve the right to assert any and all defenses and counterclaims available to them under applicable law with respect to any Claims and obligations of the Debtors to the Settling Federal Agencies under Subparagraph A that are asserted by the Settling Federal Agencies except for any alleged defense of discharge of liabilities provided under the Bankruptcy Code, any Plan of Reorganization or order of confirmation. The Settling Federal Agencies reserve all of their rights with respect to any defenses or counterclaims asserted by the Debtors under this Subparagraph B.

### SUMMARY OF ALLOWED GENERAL UNSECURED CLAIMS AND ADMINISTRATIVE EXPENSES

13.    As itemized in Paragraphs 4, 7, 8, 9, and 10, each of the following parties (with PRP claimants subject to the provisions of Paragraph 4 B) shall have an Allowed General Unsecured Claim or an Allowed Administrative Expense Claim (or both, if so specified) against Debtors in the total amount listed below:

| Claimant | Total Allowed General Unsecured Claims | Total Allowed Administrative Expense Claims |
|---|---|---|
| United States on behalf of EPA | $34,065,813.31 | $2,294,279.86 |
| Central Chemical Site Participation Group | $36,750 | |
| Green River Site PRP Group Claimants | $419,452.94 | |
| Los Angeles County Metropolitan Authority | $893,781.83 | |
| Harrington Tools, Inc. | $112,547.63 | |
| Burlington Northern and Santa Fe Railway | $2,952,761.71 | |
| National Railroad Passenger Corporation | $1,528,550.33 | |
| American Premier Underwriters, Inc. | $1,763,492.44 | |

## WORK CONSENT DECREES AND WORK ADMINISTRATIVE ORDERS

14.     Notwithstanding any other provisions of this Settlement Agreement, including, but not limited to, Paragraphs 4-6 (Liquidated Sites), Paragraphs 15-18 (Additional Sites), and Paragraph 27, the Debtors that are parties to the Work Consent Decrees and Work Administrative Orders shall comply with all obligations of the Debtors under such Work Consent Decrees and Work Administrative Orders and the Debtors' obligations under such Work Consent

23

Decrees and Work Administrative Orders shall not be impaired in any way by the Bankruptcy Cases, confirmation of a Plan of Reorganization, or this Settlement.

## TREATMENT OF ADDITIONAL SITES

15.    Additional Sites shall be treated as follows.

A.    With respect to all Additional Sites, all liabilities and obligations of the Debtors to the Settling Federal Agencies under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, and Section 7003 of RCRA, 42 U.S.C. § 6973, arising from Prepetition acts, omissions or conduct of the Debtors or their predecessors, including without limitation the Prepetition generation, transportation, disposal or release of hazardous wastes or materials or the Prepetition ownership or operation of hazardous waste facilities, shall be discharged under Section 1141 of the Bankruptcy Code by the confirmation of a Plan of Reorganization, and the Settling Federal Agencies shall receive no distributions in the Bankruptcy Cases with respect to such liabilities and obligations, but the applicable reorganized Debtors may be required to pay the Settling Federal Agencies or such other party as they may designate, such amounts as are provided for in this Paragraph and Paragraph 16. Unless otherwise provided in a Settlement Agreement or Consent Decree, such liabilities and obligations shall be treated and liquidated as general unsecured claims on the terms specified herein.

B.    If and when the Settling Federal Agencies undertake enforcement activities in the ordinary course with respect to any Additional Site, the United States may seek a determination of the liability, if any, of the Debtors and may seek to obtain and liquidate a judgment of liability of the Debtors or enter into a settlement with the Debtors with regard to any of the Additional Sites in the manner and before the administrative or judicial tribunal in which the Settling Federal Agencies' claims would have been resolved or adjudicated if the Bankruptcy

24

Cases had never been commenced. However, the Settling Federal Agencies shall not issue or cause to be issued any unilateral order or seek any injunction against the Debtors under Section 106 of CERCLA, 42 U.S.C. § 9606, or Section 7003 of RCRA, 42 U.S.C. § 6973, arising from the Prepetition acts, omissions or conduct of the Debtors or their predecessors with respect to any Additional Sites. The Settling Federal Agencies and the Debtors will attempt to settle each liability or obligation asserted by the Settling Federal Agencies against the Debtors relating to an Additional Site on a basis that is fair and equitable under the circumstances, including consideration of (i) settlement proposals made to other PRPs who are similar to the Debtors in the nature of their involvement with the site, (ii) the fact of the Debtors' bankruptcy, and (iii) the circumstances of this Agreement; but nothing in this sentence shall create an obligation of the Settling Federal Agencies that is subject to judicial review. The aforesaid liquidation of liability may occur notwithstanding the terms of the Plan of Reorganization, the order confirming the Plan of Reorganization, or the terms of any order entered to effectuate the discharge received by the Debtors.

C.      In any action or proceeding with respect to an Additional Site, the Debtors and the Settling Federal Agencies reserve any and all rights, claims, and defenses they would have been entitled to assert had the claim been liquidated in the ordinary course or during the course of the Bankruptcy Cases, including, without limitation, any argument that joint and several liability should or should not be imposed upon the Debtors. Nothing herein shall be construed to limit the Parties' rights to assert any and all rights, claims and defenses they may have in actions or proceedings involving other parties with respect to Additional Sites.

D.     Notwithstanding anything herein to the contrary, with regard to the Blackburn and Union Privileges Site, in Walpole, Massachusetts, which is an Additional Site as defined herein, Debtors reserve their right to object to the United States' claim No. 9634 as it regards such site within the time frame required by the confirmed Plan of Reorganization.  In the event of such objection, the Blackburn and Union Privileges Site shall be excluded from this Settlement Agreement and the Parties reserve all their rights with regard to this Site.

16.     In the event any Claim is liquidated pursuant to Paragraph 15 by settlement or judgment to a determined amount (the "Determined Amount"), the applicable Debtor(s) with which such settlement is made or against which such judgment is entered will satisfy such Claim within 30 days after the later of the effective date of the Plan of Reorganization or the date on which the settlement or judgment is final and effective (the "Settlement/Judgment Date") by providing the holder of the Claim the "Distribution Amount."  The Distribution Amount shall be the value of the consideration which would have been distributed under the Plan of Reorganization to the holder of such Claim if the Determined Amount had been an Allowed General Unsecured Claim in such amount under the Plan of Reorganization.  Except as provided in Paragraph 16, the Distribution Amount shall be paid in the same form (e.g., cash, notes, etc.) as was distributed under the Plan of Reorganization.  Notwithstanding the above, the Debtor(s) and the United States may, with Bankruptcy Court approval, liquidate a Claim prior to confirmation with a cash settlement, in which case the amount and timing of the payment shall be governed by the court-approved settlement agreement.

17.     In the event that the Plan of Reorganization provides that Allowed General Unsecured Claims will receive consideration other than cash, Debtors may, in their sole discretion, provide the non-cash portion of the Distribution Amount to the Settling Federal

Agencies in cash that has an aggregate value as of the Settlement/Judgment Date that is equivalent to the Distribution Amount. For purposes of determining the value of the consideration paid to the holders of Allowed General Unsecured Claims at the time of distribution(s), notes shall have a value equal to their face value and equity securities shall have a value equal to the weighted average of the reported regular way sales prices of all transactions for the security on the New York Stock Exchange on the date(s) of distribution (or the first date thereafter on which the security trades), or if the security is not listed or admitted to trade on such exchange, on the principal national securities exchange on which the security is listed or admitted to trading or, if not listed or admitted to trading on any national securities exchange, the weighted average of the reported bid prices for the security on all transactions on the National Association of Securities Dealers Automated Quotations National Market System or, if the security is not listed or admitted to trading on any national securities exchange or quoted on such National Market System, the weighted average of the reported sales prices for such security on all transactions in the over-the-counter market in the United States as furnished by any New York Stock Exchange member firm selected by the Debtors and the United States for that purpose. For purposes of determining the number of shares of securities that have the value of the Distribution Amount on the Settlement/Judgment Date, the fair market value per share of securities on the Settlement/Judgment Date shall be determined as set forth in the immediately preceding sentence. The terms of Paragraphs 15 and 16 and this Paragraph 17 of this Settlement Agreement shall apply to, be binding on, and inure to the benefit of any successor or assign of the Debtors to the extent that and only to the extent that the alleged liability of the successor or assign for an Additional Site is based solely on its status as and in its capacity of a successor or assign of the Debtors.

18.    Claims of or obligations to the Settling Federal Agencies resulting from the Debtors' Postpetition conduct at Additional Sites that would give rise to liability under Sections 106 and 107(a)(1)-(4) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a)(1)-(4), or Section 7003 of RCRA, 42 U.S.C. §6973, shall not be discharged under Section 1141 of the Bankruptcy Code by the confirmation of a Plan of Reorganization nor shall such claims or obligations be impaired or affected in any way by the Bankruptcy Cases or confirmation of a Plan of Reorganization.

19.    The Settling Federal Agencies may pursue enforcement actions or proceedings under applicable law with respect to the Claims of and obligations to the Settling Federal Agencies under the foregoing Paragraph 18 in the manner, and by the administrative or judicial tribunals, in which the Settling Federal Agencies could have pursued enforcement actions or proceedings if the Bankruptcy Cases had never been commenced.  The Debtors reserve the right to assert any and all defenses and counterclaims available to them under applicable law with respect to any such Claims and obligations except for any alleged defense of discharge of liabilities provided under the Bankruptcy Code, any plan of reorganization or order of confirmation.  The Settling Federal Agencies reserve all of their rights with respect to any defenses or counterclaims asserted by the Debtors under this Paragraph.

## TREATMENT OF ALLOWED CLAIMS

20.    A. All Allowed General Unsecured Claims under or pursuant to the terms of this Settlement Agreement, including without limitation any such Claims as may eventually be allowed pursuant to Paragraph 15 for Additional Sites, regardless of the holder of such Claims (i) will receive the same treatment under the Plan of Reorganization, without discrimination, as other Allowed General Unsecured Claims with all attendant rights provided by the Bankruptcy Code and other applicable law and (ii) will not be entitled to any priority in distribution.  In no

event shall the Allowed General Unsecured Claims allowed or to be allowed pursuant to this

Settlement Agreement be subordinated to any other Allowed General Unsecured Claims

pursuant to any provision of the Bankruptcy Code or other applicable law that authorizes or

provides for subordination of allowed Claims, including without limitation Sections 105, 510 and

726(a)(4) of the Bankruptcy Code.

     B.  In the event that the Plan of Reorganization provides for the payment of

interest to holders of Allowed General Unsecured Claims, with respect to such claims held by the

United States and the Participating PRP Groups/Entities, interest shall be calculated as follows:

     The rate of interest shall be the rate provided for and compounded as provided for the
holders of Allowed General Unsecured Claims under the Plan of Reorganization who do not
have an interest rate defined by contract (this rate is currently proposed to be 4.19% per annum),
which shall begin to accrue on the date specified below for each site, and which shall continue to
accrue, for the same duration as provided for other Allowed General Unsecured Claims in
accordance with the terms of the Plan of Reorganization.

     1)  For Allowed General Unsecured Claims held by the United States or a

Participating PRP Group/Entity and associated with the following sites or claims, interest shall

begin to accrue on April 3, 2001, and continue to accrue for the same duration as provided for

other Allowed General Unsecured Claims in accordance with the Plan of Reorganization:

          a.     Acton Site (Pre-Petition),

          b.     Aqua Tech Site,

          c.     Cambridge Plant, Cambridge Massachusetts (Pre-Petition),

          d.     Casmalia Resources Site,

          e.     Central Chemical Site,

          f.     Galaxy/Spectron Site,

          g.     Operating Industries Site

          h.     R&H Oil/Tropicana Site

29

i.      Ramp Industries Site,

j.      Libby Site Access Consent Decree Claim, and

k.      Wells G&H, Woburn Site (Pre-Petition).

2) For Allowed General Unsecured Claims held by the United States and associated with the following sites or claims, interest shall begin to accrue on July 27, 2005, and continue to accrue for the same duration as provided for other Allowed General Unsecured Claims in accordance with the terms of the Plan of Reorganization:

a.      ATSDR Nationwide Claim,

b.      Harrington Tools Site,

c.      Malone Services Co. Site,

d.      N-Forcer Site,

e.      Prince George's County Zonolite Site,

f.      Vermiculite Northwest Site (Spokane, WA),

g.      Watson Johnson Landfill Site,

h.      Western Minerals Processing Site (Denver),

i.      Western Minerals Products Site (Minneapolis)

j.      Zonolite/Grace Site in New Castle, Pa. (Pre-Petition), and

k.      Zonolite/Grace Site in Wilder, Ky.

3) For Allowed General Unsecured Claims held by the Green River Site PRP Group Claimants and associated with the Green River Site, interest shall begin to accrue on April 1, 2003, and continue to accrue for the same duration as provided for other Allowed General Unsecured Claims in accordance with the terms of the Plan of Reorganization.

4)  For Allowed General Unsecured Claims held by the United States and associated with the Li Tungsten Site, interest shall begin to accrue on February 7, 2005, and continue to accrue for the same duration as provided for other Allowed General Unsecured Claims in accordance with the terms of the Plan of Reorganization.

5)  For Allowed General Unsecured Claims held by the United States and associated with the following sites, interest shall begin to accrue on June 5, 2007, and shall continue to accrue for the same duration as provided for other Allowed General Unsecured Claims in accordance with the terms of the Plan of Reorganization:

   a.  IWI Site in Summit, Illinois,

   b.  Amber Oil (Eco-Tech) Site in Milwaukee, Wisconsin, and

   c.  Solvents Recovery Services of New England Site in Southington, Connecticut

6)  For Allowed General Unsecured Claims held by the United States and associated with the Ellwood City Zonolite Site in Ellwood City, Pennsylvania, interest shall begin to accrue on May 1, 2008, the date completion of the cleanup is anticipated, and shall continue to accrue for the same duration as provided for other Allowed General Unsecured Claims in accordance with the terms of the Plan of Reorganization.

7)  For Allowed General Unsecured Claims held by the Participating PRP Group/Entity as identified below and associated with the following sites, interest shall begin to accrue on August 20, 2007, and shall continue to accrue for the same duration as provided for other Allowed General Unsecured Claims in accordance with the terms of the Plan of Reorganization:

a.    Zonolite/Grace Site in Hamilton Township, New Jersey (held by National Railroad Passenger Corporation, and American Premier Underwriters, Inc.),

b.    Libby Asbestos Site, Libby Montana (held by Burlington Northern and Santa Fe Railway),

8)    For Allowed General Unsecured Claims held by either the United States or a Participating PRP Group/Entity as identified below and associated with all other Liquidated Sites, including the following sites or claims, interest shall begin to accrue on May 9, 2006, and shall continue to accrue for the same duration as provided for other Allowed General Unsecured Claims in accordance with the terms of the Plan of Reorganization:

a.    Green River Site (held by the United States),

b.    Harrington Tools Site (held by the Los Angeles County Metropolitan Transportation Authority and Harrington Tools, Inc.),

c.    Robinson Insulation Site (held by the United States and the Burlington Northern and Santa Fe Railway),

d.    Western Minerals Processing Site in Denver, Colorado (held by Burlington Northern Railroad),

e.    Zonolite/Grace Site in Hamilton Township, New Jersey (held by the United States),

f.    Intermountain Insulation Site, Salt Lake City, Utah (held by the United States),

g.    Reclamation Oil Site (held by the United States), and

32

h.      Vermiculite Intermountain Site, Salt Lake City, Utah (held

by the United States).

21.     The Claims allowed in this Settlement Agreement do not constitute, nor shall they

be construed as, forfeitures, fines or penalties (or payments in lieu thereof), and nothing herein is

intended, or shall be construed, as an admission by Debtors of any facts or any violation of law.

Notwithstanding the foregoing, Debtors do agree to comply with all terms of this Settlement

Agreement upon the Effective Date.

22.     Notwithstanding any other provision of this Settlement Agreement, and except as

provided under applicable law, there shall be no restrictions on the ability and right of the

Settling Federal Agencies to transfer or sell all or a portion of any securities distributed to them

pursuant to the Plan of Reorganization; to sell their right to all or a portion of any distributions

under the Plan to one or more third parties; or to transfer or sell to one or more third parties all or

a portion of any Allowed General Unsecured Claims pursuant to this Settlement Agreement.

23.     Proofs of Claim Nos. 9634 and 9635 shall be deemed satisfied in full in

accordance with the terms of this Settlement Agreement. Moreover, the Settling Federal

Agencies shall be deemed to have filed a proof of claim for matters addressed in this Settlement

Agreement, which proof of claim shall be deemed satisfied in full in accordance with the terms

of this Settlement Agreement.

## DISTRIBUTION INSTRUCTIONS

24.     A. Cash distributions to the United States shall be made by FedWire Electronic

Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance

with current electronic funds transfer procedures. Payment shall be made in accordance with

instructions provided to the Debtor by the Financial Litigation Unit of the United States

33

Attorney's Office for the District of Delaware and shall reference the Civil Action Number Case No. 01-01139 and DOJ File Number 90-11-2-07106/5. The Debtors shall transmit written confirmation of such payments to the Department of Justice and EPA at the addresses specified in Paragraph 35. In the event that the United States sells or transfers its Claims, payment will be made to a transferee only at such time as the Debtors receive written instructions from the United States directing that payments be made to a transferee and instructions as to where such payments should be directed, and, prior to the closing of the Bankruptcy Cases, after an evidence of claim transfer shall have been filed with the Court.

B.     Other distributions with respect to the allowed Claims of the United States pursuant to this Settlement Agreement shall be made as follows. Non-cash Distributions to the United States on behalf of EPA shall be made to:

> U.S. EPA -- Superfund
> P.O. Box 371003M
> Pittsburgh, PA 15251

Copies of all distributions and related correspondence to the United States shall be sent to:

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice (DJ # 90-11-2-07106/5)
> P.O. Box 7611
> Washington, D.C. 20044-7611
>
> Andrea Madigan
> Enforcement Attorney
> U.S. EPA Region 8
> 1595 Wynkoop Street, ENF-L
> Denver, Colorado 80202

The United States must notify the Debtors in writing of any modifications to the foregoing addresses. In the event that one or more of the Settling Federal Agencies sell or transfer their Claims, distributions will be made to a transferee only at such time as the Debtors receive written

34

instructions from the United States directing that payments be made to a transferee and instructions as to where such payments should be made, and, prior to the closing of the Bankruptcy Cases, after an evidence of claim transfer shall have been filed with the Court.

25.    EPA may, in its sole discretion, direct any portion of any cash distribution or the proceeds of any non-cash distribution received hereunder into a site-specific special account established to fund response actions at such site in the event that future work is anticipated at such site.

26.    Distributions to PRP Entities with allowed claims under Paragraph 4 shall be made in accordance with instructions provided by the PRP Entities.

### COVENANT NOT TO SUE AND RESERVATION OF RIGHTS

27.    In consideration of all of the foregoing, including, without limitation, the payments and/or distributions that will be made and the Allowed General Unsecured Claims and Allowed Administrative Expense Claims authorized pursuant to the terms of this Settlement Agreement, and except as specifically provided in Paragraphs 31 through 33, the Settling Federal Agencies covenant not to file a civil action or to take any administrative or other action against the Debtors pursuant to Sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606 or 9607, and Section 7003 of RCRA, 42 U.S.C. § 6973, with respect to each of the Liquidated Sites, ATSDR's Nationwide Claim, and Settled Debtor-Owned Site Claims. These covenants not to sue shall take effect on the Effective Date.

28.    This Settlement Agreement in no way impairs the scope and effect of the Debtors' discharge under Section 1141 of the Bankruptcy Code as to any third parties or as to any Claims that are not addressed by this Settlement Agreement.

35

29.    Without in any way limiting the covenant not to sue (and the reservations thereto) set forth in Paragraph 27 and notwithstanding any other provision of this Settlement Agreement, such covenant not to sue shall also apply to the Debtors' successors and assigns, officers, directors, employees, and trustees, but only to the extent that the alleged liability of the successor or assign, officer, director, employee, or trustee of any Debtor is based solely on its status as and in its capacity as a successor or assign, officer, director, employee, or trustee of any Debtor.

30.    The covenants not to sue contained in Paragraphs 27 and 29 of this Settlement Agreement extend only to the Debtors and the persons described in Paragraphs 27 and 29 above and do not extend to any other person.  Nothing in this Agreement is intended as a covenant not to sue or a release from liability for any person or entity other than the Debtors, the Settling Federal Agencies and the persons described in Paragraph 29.  The Settling Federal Agencies and the Debtors expressly reserve all claims, demands and causes of action either judicial or administrative, past, present or future, in law or equity, which the United States or the Debtors may have against all other persons, firms, corporations, entities, or predecessors of the Debtors for any matter arising at or relating in any manner to the sites or claims addressed herein.

31.    Notwithstanding the foregoing, the covenants not to sue contained in this Settlement Agreement shall not apply to nor affect any action based on (i) a failure to meet a requirement of this Settlement Agreement; (ii) criminal liability; or (iii) matters reserved in Paragraphs 6, 10, 12, and 19.

32.    Nothing in this Settlement Agreement shall be deemed to limit the authority of the United States to take response action under Section 104 of CERCLA, 42 U.S.C. § 9604, or any other applicable law or regulation, or to alter the applicable legal principles governing judicial review of any action taken by the United States pursuant to that authority.  Nothing in this

Settlement Agreement shall be deemed to limit the information gathering authority of the United States under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable federal law or regulation, or to excuse the Debtors from any disclosure or notification requirements imposed by CERCLA, RCRA, or any other applicable federal law or regulation.

33.    The Debtors hereby covenant not to sue and agree not to assert or pursue any claims or causes of action against the United States with respect to the Liquidated Sites, Settled Debtor-Owned Site Claims, and ATSDR's Nationwide Claim including, but not limited to, any direct or indirect claim for reimbursement from the Hazardous Substances Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through Sections 106(b)(2), 111, 112, 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9611, 9612, 9613, or any other provision of law; any claim against the United States, including any department, agency or instrumentality of the United States, under Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613 related to the Liquidated Sites and Settled Debtor-Owned Site Claims, or any claims arising out of response activities at the Liquidated Sites. Nothing in this Settlement Agreement shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, 40 C.F.R. § 300.700(d).

## CONTRIBUTION PROTECTION

34.    With regard to all existing or future third-party Claims against the Debtors with respect to the Liquidated Sites, Settled Debtor-Owned Site Claims, and ATSDR's Nationwide Claim, including claims for contribution, the parties hereto agree that the Debtors are entitled to such protection from actions or Claims as is provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2). For Liquidated Sites, the "matters addressed" in this settlement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), include, without

37

limitation, claims by Settling Federal Agencies or potentially responsible parties for response costs or natural resource damages at each Liquidated Site. For Settled Debtor-Owned Site Claims, "matters addressed" in this settlement include, without limitation, claims by Settling Federal Agencies or potentially responsible parties (i) for response costs or natural resource damages incurred Prepetition at the Debtor Owned Sites identified in Paragraph 9.A. and (ii) for response costs or natural resource damages incurred Postpetition but prior to the cutoff date specified in Paragraph 10.A. at the Debtor Owned Sites identified in Paragraph 10.A. "Matters addressed" in this settlement also include ATSDR's Nationwide Claim.

35.    The Debtors each agree that with respect to any suit for contribution brought against any of them after the Effective Date for matters related to this Settlement Agreement, they will notify the United States within fifteen (15) business days of service of the complaint upon it. In addition, in connection with such suit, the Debtors shall notify the United States within fifteen (15) business days of service or receipt of any Motion for Summary Judgment and within fifteen business days of receipt of any order from a court setting a case for trial (provided, however, that the failure to notify the United States pursuant to this Paragraph shall not in any way affect the protections afforded under Paragraphs 27 through 34).

## NOTICES AND SUBMISSIONS

36.    Whenever, under the terms of this Settlement Agreement, written notice is required to be given, or a report or other document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below via U.S. certified mail, return receipt requested, unless those individuals or their successors give notice of a change of address to the other parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Except as otherwise provided in this Settlement

Agreement, written notice as specified herein shall constitute complete satisfaction of any

written notice requirement in the Settlement Agreement with respect to the United States and the

Debtors, respectively.

> As to the United States:
>
>> Chief, Environmental Enforcement Section
>> Environment and Natural Resources Division
>> U.S. Department of Justice (DJ # 90-11-2-07106/5)
>> P.O. Box 7611
>> Washington, D.C.  20044-7611
>>
>> Andrea Madigan
>> Enforcement Attorney
>> U.S. EPA Region 8
>> 1595 Wynkoop, ENF-L
>> Denver, Colorado 80202
>
> As to the Debtors:
>
>> William M. Corcoran
>> Vice President
>> Public and Regulatory Affairs
>> W. R. Grace & Co.
>> 7500 Grace Drive
>> Columbia, Maryland  21044
>>
>> W. R. Grace & Co.
>> 7500 Grace Drive
>> Columbia, Maryland  21044
>> Attention:  Secretary

## LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

37.    This Settlement Agreement shall be subject to approval of the Bankruptcy Court.

The Debtors shall promptly seek approval of this Settlement Agreement under Bankruptcy Rule

9019 or other applicable provisions of the Bankruptcy Code.  The hearing on Debtors' request

for such approval shall not be held until the United States informs the Court (pursuant to

Paragraph 38) of any public comments on the Settlement Agreement and the United States' responses to those comments.

38.     This Settlement Agreement shall be lodged with the Court for public notice and comment for a period not less than thirty days. After the conclusion of the public comment period, the United States will file a statement informing the Court of any comments received, as well as the United States' responses to the comments. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Settlement Agreement disclose facts or considerations which indicate that the Settlement Agreement is not in the public interest.

39.     If for any reason (i) the Settlement Agreement is withdrawn by the United States as provided in Paragraph 38, or (ii) the Settlement Agreement is not approved, or (iii) the Bankruptcy Cases are dismissed or converted to cases under Chapter 7 of the Bankruptcy Code before the effective date of a Plan of Reorganization: (a) this Settlement Agreement shall be null and void and the parties shall not be bound hereunder or under any documents executed in connection herewith; (b) the parties shall have no liability to one another arising out of or in connection with this Settlement Agreement or under any documents executed in connection herewith; (c) this Settlement Agreement and any documents prepared in connection herewith shall have no residual or probative effect or value, and it shall be as if they had never been executed; and (d) this Settlement Agreement, any statements made in connection with settlement discussions, and any documents prepared in connection herewith may not be used as evidence in any litigation between the parties.

40.     The Debtors shall not propose any Plan of Reorganization or take any other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of this Settlement Agreement. The Settling Federal Agencies shall not oppose any term or provision of a Plan of

Reorganization that is addressed by and consistent with this Settlement Agreement. The parties reserve all other rights and defenses they may have with respect to any Plan of Reorganization.

## AMENDMENTS/INTEGRATION AND COUNTERPARTS

41.    This Settlement Agreement and any other documents to be executed in connection herewith shall constitute the sole and complete agreement of the parties hereto with respect to the matters addressed herein. This Settlement Agreement may not be amended except by a writing signed by all parties to this Settlement Agreement.

42.    This Settlement Agreement may be executed in counterparts each of which shall constitute an original and all of which shall constitute one and the same agreement.

## RETENTION OF JURISDICTION

43.    Except as provided in Paragraphs 12 and 15-19 regarding proceedings in other administrative or judicial tribunals, the Court (or, upon withdrawal of the Court's reference, the United States District Court for the District of Delaware) shall retain jurisdiction over the subject matter of this Settlement Agreement and the parties hereto for the duration of the performance of the terms and provisions of this Settlement Agreement for the purpose of enabling any of the parties to apply to the Court at any time for such further order, direction and relief as may be necessary or appropriate for the construction or interpretation of this Settlement Agreement or to effectuate or enforce compliance with its terms.

41

*In re: W.R. GRACE & CO., et al., Debtors.  Case No. 01-01139 (JFK)*

FOR THE UNITED STATES OF AMERICA

Date: 11/28/07 _____

_____
CATHERINE R. MCCABE
Principal Deputy Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Date: 12/13/07 _____

_____
ANDREA MADIGAN
Enforcement Attorney
U.S. Environmental Protection Agency Region 8
1595 Wynkoop St.
Denver, Colorado  80202

43

FOR THE DEBTORS:

Date: __11/30/07__          By: _____

WILLIAM M. CORCORAN
Vice President
Public and Regulatory Affairs
W. R. Grace & Co.
7500 Grace Drive
Columbia, Maryland  21044

-44-