## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **W.R. Grace & Co., et al.,** | ) | **Case No. 01-01139 (JKF)** |
| | ) | **(Jointly Administered)** |
| | ) | |
| **Debtors.** | ) | **Objection Deadline: April 9, 2008** |
| | ) | **Reply Deadline: April 14, 2008** |
| | ) | **Hearing Date: April 21, 2008 @ 12:00 p.m.** |

## ZAI CLAIMANTS' MOTION FOR DISMISSAL OF AN INDIVIDUAL ZAI CLAIM OR FOR A RULE 54(b) DETERMINATION TO PERMIT APPELLATE REVIEW OF THE ZAI OPINION

### I.    Introduction

The ZAI Claimants respectfully request that the Court dismiss a single ZAI claim,[1] or in the alternative, make a Rule 54(b) determination with respect to a claim affected by the ZAI Opinion to permit immediate appeal to the district court.[2] In light of recent events, the ZAI Claimants believe that appellate review of the ZAI Opinion is critical to achieve an orderly resolution of this bankruptcy.

For all intents and purposes, Grace is treating the ZAI Order as a final, unappealable order, i.e., the last and only word the parties will ever have on ZAI issues. The ZAI Claimants are stuck between not being able to get an interlocutory appeal, and not having a final order to appeal as of right. Grace is using ZAI Claimants' legal limbo as a tactical weapon to denigrate the value of ZAI claims in this bankruptcy. Appellate review of such an important order is critically needed so that the Court and parties can

---

[1] The ZAI Claimants will identify a suitable claim to be dismissed if necessary to afford appellate review of the ZAI Opinion.

[2] Rule 54(b), which permits immediate appeal of final orders adjudicating the rights of less than all the parties or claims involved, is applicable to both adversary proceedings (B.R. 7054(a)) and contested matters (B.R. 9014(c)).

have appellate guidance that will inform them about the realistic merit of ZAI claims.

Until recently, the ZAI Claimants believed that the proceedings outlined as the next steps in the ZAI Opinion would provide normal appellate opportunities. But it has recently become clear that Grace wants to abandon the ZAI roadmap and avoid any appellate review of the ZAI Opinion until after plan confirmation, if ever.

II.    **Recent Events Indicate that Appellate Review of the ZAI Opinion Through Normal Litigation Progression Has Become a Very Remote Possibility**

   A.    **Grace has Backtracked on its Previous Agreement that the Parties Should Follow the ZAI Opinion Roadmap and Consider the Viability of ZAI Legal Claims and Class Certification as the Next Two Steps in the Process**

In its ZAI Opinion, the Court set forth the next two steps the Court anticipated in the ZAI determination process:

> A status conference will be scheduled to discuss the form of an order regarding disposition of the proofs of claim; that is, which are subject to dismissal based upon the findings herein and what claims, if any, may still remain. Further, if any remain, the status conference will address the need, if any, for class treatment of any claims going forward.

ZAI Op. at 53.[3]

This logical order of proceeding by first determining: (1) the viability of the ZAI legal claims, and (2) whether class treatment was appropriate for those claims, not only made eminent sense, but would have presented the parties with normal appellate opportunities following those determinations. Wallace Trucking Co. v. Ins. Co. of N. America, 838 F.2d 698 (3d Cir. 1988) (expunging a claim permits immediate appeal).

At the June 2007 status conference envisioned by the ZAI Order, Grace's Pittsburgh counsel embraced the ZAI roadmap and agreed that the Court should address the legal viability of the claims as the next step:

---

[3] Attach. 5.

We believe that if ZAI does not pose an unreasonable risk or a [sic] unreasonable hazard, or an unreasonable danger, that as a matter of law there can not be a strict product liability claim or a negligence claim, or a warranty claim or consumer protection claim, or misrepresentation of a material fact claim. But that has not been briefed to this Court. What we have briefed and discovered and argued about and eventually got a ruling on was what does science show. And so, our suggestion to the Court is before we go back to arguments on class action or notice or what the notice says, perhaps the Court should give the parties a briefing schedule so that the parties can brief what, if any causes of action could remain given the Court's decision. That would give Mr. Westbrook and his side the ability to argue that they all remain. Give us the ability to research and argue that. (sic)   If you don't have a potential danger, if it's not unreasonably harmful, none of these can remain. And, we can least figure out what causes of action are we dealing with, and once we know that then we can go back and fight among ourselves about bar notices and what it would say and class action.

June 25, 2007 Tr. at 65-66, (emphasis added).[4]

In response, ZAI counsel agreed that getting legal rulings on the ZAI claims was

the next logical step:

So, we find ourselves in a bit of agreement with Mr. Restivo that the next step does need to be to get some definitiveness about what are the legal claims that exist for ZAI claimants in light of the Court's ZAI Science opinion?

June 25, 2007 Tr. at 67.

ZAI counsel suggested a number of potential avenues to get such rulings, with the

ultimate goal of getting appellate guidance.  Among the options ZAI counsel discussed

was lifting the stay to allow representative cases to get legal rulings in state trial and

appellate courts (June 25, 2007 Tr. at 68-69), or getting a final order in a representative

ZAI claim that could be taken through the appellate route up to the Third Circuit.  (June

25, 2007 Tr. at 69-70).  ZAI counsel explained that a major benefit of getting definitive

appellate rulings now was to avoid disruption of the bankruptcy post-confirmation:

---

[4] Attach. 1.

> We'd like to -- I guess from our perspective, Your Honor, we'd like to have some definitive rulings so that there's not a question left open when this Grace bankruptcy eventually moves to some resolution that, "Well, ZAI was dismissed. But, wait, we confirmed a plan. And now, ZAI's got an appeal." It doesn't make sense for anybody, we'd like to try to get some revisions [sic] where we can get some definitive rulings.

June 25, 2007 Tr. at 70.

After ZAI counsel offered a proposal on how the legal issues could be presented (June 25, 2007 Tr. at 73), the Court suggested that rather than addressing the legal issues immediately, the parties should continue their settlement dialogue. (June 25, 2007 Tr. at 74). At the Court's suggestion, both sides agreed to "dialogue a little bit." (June 25, 2007 Tr. at 75).

Following that status conference, the parties had extensive dialogue. The ZAI Claimants believe that significant progress has been made on a framework for resolution. They remain hopeful of a resolution. But after months of discussion, the parties have not reached a resolution. The ZAI Claimants believe that Grace's posture that the ZAI Opinion is the last word on the science issues until post-confirmation is a major impediment to resolution.

After a negotiated resolution proved unattainable, at least for now, the ZAI Claimants anticipated that the parties would pick up where the status conference left off with their agreement to follow the roadmap the Court laid out in the ZAI Opinion. The ZAI Claimants expected the parties would brief their respective positions on the next two issues - how the Court should address the legal claims, and their amenability to class certification. But with a change of counsel speaking for Grace on ZAI matters, Grace recently announced its intention to try to junk the science trial roadmap and jump into a contested bar date proceeding.

**B.    Grace's Recent Abandonment of the ZAI Roadmap Means that the Normal Litigation Progression on the Legal Claims Issue May Never Occur**

At the recent ZAI status conference, Grace's national counsel presented what Grace now thought should happen next in the ZAI process. In doing so, he abandoned Grace's prior position that addressing the legal issues was the next logical step:

> So I believe that Mr. Westbrook from time to time has made proposals of further litigation associated with other issues that may be related to the [ZAI] decision that Your Honor has made with respect to risk. But from the Debtors' point of view, that would not really advance the cause.

Feb. 25, 2008 Tr. at 23.[5]

Grace counsel then proposed that not only should the legal analysis of the claims be shunted aside, but addressing whether a class action was appropriate for the claims should be discarded as well:

> And we would, further, propose that there be a bar date, not in fact a class action process.

Feb. 25, 2008 Tr. at 23-24.

In response, ZAI counsel reiterated its view that the ZAI roadmap should be followed:

> So Your Honor logically said the next step is to see what claims remain. Let's find out which of those claims may be viable. And you also said, and then if claims remain, let's see if they should be treated as a class action. Will a class action assist the bankruptcy process here, or is it some kind of an impediment? So those are the issues outlined by the Court.

Feb. 25, 2008 Tr. at 27-28.

ZAI counsel reminded the Court that at the earlier status conference the parties agreed that before the Court authorized any bar date notice, it was logical to find out what type of legal claims might remain. (Feb. 25, 2008 Tr. at 28).

---

[5] Attach. 2.

After further back and forth, the Court proposed a Solomon-like solution to aid a negotiated resolution - that a non-binding notice be sent out to see how many claims would be filed in response. (Feb. 25, 2008 Tr. at 77). At the hearing, Grace told the Court, "that is a very interesting proposal," it "certainly accomplishes a very important first phase," (Id. at 78) and was "a very fair proposal." (Id.). The ZAI Claimants were glad to explore the idea. (Id. at 79). But Grace subsequently informed the ZAI Claimants that it had decided to reject the Court's suggestion and would attempt to proceed with a bar date notice.

It is unfortunate that Grace did not accept the Court's idea, which the Court viewed as a "first step" in negotiating ZAI treatment in a plan. (Feb. 25, 2008 Tr. at 79). That lost opportunity alone is disappointing. But Grace's rejection of the Court's suggestion and its attempt to discard the ZAI roadmap starkly exposes its strategy of moving the Court away from determining the legal viability of the ZAI claims and the appropriateness of class certification. The inevitable result of Grace's strategy, if successful, is to remove, for the foreseeable future, any hope of appellate review of the ZAI Opinion through usual channels.

**III.    In Light of Grace's Recent About-Face, it is Essential that the ZAI Claimants get Appellate Review of the ZAI Opinion Which Grace is Using to Support a Hard-Line Negotiating Posture**

After the ZAI Opinion was announced, Grace embraced it as a virtual Sword of Damocles in the heart of the ZAI claims. Shortly after the Opinion was issued, Grace's national counsel told the district court during the appeal on extending exclusivity that in the Opinion, "[Judge Fitzgerald]'s saying that they don't even pass a Dalbert [sic]

standard" (Jan. 22, 2006 Tr. at 40),[6] and "Then it turns out, ZAI may not be worth anything at all." (Jan. 22, 2006 Tr. at 44-45).[7]   With Grace believing the ZAI Opinion is insulated from appellate review, it is extremely difficult to dissuade Grace from its view of ZAI as having minimal value.   The effect on realistic settlement negotiations is obvious.

During the argument on the ZAI Claimants' ultimately unsuccessful motion for interlocutory appeal of the ZAI Opinion, the district court recognized the ZAI Claimants' dilemma, but ventured that the case could still be resolved if the parties were realistic about their likely ultimate success:

> The Court:   Well, of course that is true, except that many times you get a decision against you, and a partial summary judgment motion, or something is clearly interlocutory, and then you proceed to attempt to resolve the case in light of that existing opinion.
>
> It still can be resolved because the other side knows they might not necessarily be on firm ground on that point, and it still permits negotiations to go forward.
>
> I do know exactly why piecemeal appeals like this are just not normally a good thing. You start out with that, in my mind, and it is not a good idea to piecemeal this, when you could perhaps continue to negotiate down there, even in the face of a ruling you do not like.

Mar. 5, 2007 Tr. at 10-11.[8]

---

[6] This statement was somewhat misleading and probably an inadvertent slip in the heat of argument.  While the Court did exclude some aspects of the ZAI Claimants' proof on Daubert grounds, the Court rejected Grace's Daubert challenges to the ZAI Claimants' major air testing studies (ZAI Op. at 45-46) and their important evidence of contamination (dust testing) (ZAI Op. at 40, n.103).  On the other hand, the Court did exclude on Daubert grounds the evidence offered by Grace's analytical expert, Dr. Lee, when he attempted to adjust the counting procedures for asbestos based on his unpublished and untested methodology.  (ZAI Op. at 42-43).

[7] Attach. 3.

[8] Attach. 4.

In response, Grace's national counsel told the district court (incorrectly) that the ZAI Claimants had chosen not to negotiate with Grace. (Mar. 5, 2007 Tr. at 54-55). In fact, negotiations had been ongoing.[9]

Unfortunately, when the district court denied interlocutory review (Attach. 4), Grace was further emboldened. The district court was certainly correct to believe that the usual litigant who prevails below "knows they might not necessarily be on firm ground on that point." But Grace's history in asbestos litigation generally, and in these proceedings specifically, demonstrates that Grace does not necessarily operate that way. As we show next, appellate guidance has often been necessary in cases involving Grace to demonstrate to Grace that its firmly held positions are often incorrect.

## IV.    Appellate Review Has Been Essential Throughout Asbestos Litigation to Provide Grace and Lower Courts With Necessary Guidance

Had Grace not filed for bankruptcy in April 2001, it is virtually certain that the parties would already have received extensive appellate guidance on ZAI issues. Throughout the course of asbestos litigation, appellate courts have served a critical role in providing necessary guidance to the parties and lower courts.

The modern era of asbestos litigation began with a landmark appellate opinion that sanctioned using contemporary tort theories in asbestos litigation. Borel v. Fibreboard Paper Prods. Corp., 493 F.2d 1076 (5th Cir. 1973). Another landmark appellate opinion affirmed the right of property damage claimants to recover for building contamination without demonstrating that building occupants were likely to get sick. Grace's contrary position, on which it had relied to refuse any settlement below, was

---

[9] Giving Grace's national counsel the benefit of the doubt, this incorrect statement was possibly due to national counsel's ignorance of the ongoing discussions with others representing Grace, or again, perhaps it was another inadvertent misstatement in the heat of battle.

soundly rejected.  City of Greenville v. W.R. Grace & Co., 827 F.2d 975 (4th Cir. 1987).[10]

Throughout Grace's property damage litigation, appellate courts have provided valuable guidance to lower courts, often rejecting Grace's position below and accepting the building owners' position on numerous issues.  See, e.g.,  State Farm Mut. Auto. Ins. Co. v. W.R. Grace & Co., 24 F.3d 955 (7th Cir. 1994) (rejecting Grace's position on the application of construction statutes of repose to material suppliers); MDU Res. Group v. W.R. Grace & Co., 14 F.3d 1274 (8th Cir. 1994) (rejecting Grace's position on when the statute of limitations begins in contamination claims); Clayton Ctr. Assocs. v. W.R. Grace, 861 S.W.2d 686 (Mo. Ct. App. 1993) (rejecting Grace's position attacking dust samples); T.H.S. Northstar Assocs. v. W.R. Grace & Co., 66 F.3d 173 (8th Cir. 1995) (rejecting Grace's appeal of liability verdict, remanding for recalculation of actual damages); Bunker Hill Towers Condo. Assoc. v. W.R. Grace & Co., App. No. B072642 (Cal. Dist. Ct. App. Mar. 5, 1995) (rejecting Grace's challenge to multi-million dollar verdict, offsetting prior co-defendant settlement); Northridge Co. v. W.R. Grace & Co., 556 N.W.2d 345 (Wis. Ct. App. 1996) (rejecting Grace's challenge to verdict).

In each of these cases, Grace failed to settle pending appellate review.  That was certainly Grace's prerogative.  And those building owners had a chance to correct Grace's erroneous views by prevailing on appeal.  This was part of the natural litigation process.  Early in the traditional property damage cases, Grace contended that plaintiffs' claims were worthless and refused any substantial settlement, just as it has with ZAI.[11]  It

---

[10] ZAI counsel was also a counsel in the City of Greenville case and is familiar with Grace's position on settlement.

[11] Because of the confidentiality of settlement negotiations, the ZAI Claimants do not discuss the parties'

was only after Grace's positions on a variety of legal, scientific, and evidentiary issues
had been rejected by the appellate courts that Grace began to settle these cases on a
widespread basis, ultimately paying hundreds of millions of dollars to asbestos property
damage claimants.[12]

It took several years of appellate defeats before Grace progressed beyond the
"denial" stage in asbestos property damage litigation.  Unfortunately, Grace is firmly in
denial as to ZAI, and the Claimants believe that only an appellate awakening will bring
Grace around.  In somewhat obscure language in its recent 10-K filing, Grace's
management has conceded that ZAI could be an important creditor if the current
appellate limbo develops unfavorably to Grace:

> On December 14, 2006, the Bankruptcy Court issued an opinion and order
> holding that, although ZAI is contaminated with asbestos and can release
> asbestos fibers when disturbed, there is no unreasonable risk of harm from
> ZAI.  The ZAI claimants sought an interlocutory appeal of the opinion and
> order with the District Court in Delaware but that request was denied.  The
> ZAI claimants have indicated they still intend to appeal such opinion and
> order when it becomes a final order.  The Bankruptcy Court has instructed
> the parties to consult with one another regarding how to proceed with
> respect to ZAI in light of the Court's opinion and order.  Grace's recorded
> asbestos-related liability at December 31, 2007 assumes the risk of loss
> from ZAI litigation is not probable.  If Grace's view as to risk of loss is
> not sustained, management believes the cost to resolve the matter would
> be material.

W.R. Grace 10-K at 103-04
(Feb. 29, 2008) (emphasis added).[13]

Grace's bankruptcy has interrupted the normal appellate progression of the ZAI

litigation that could affect "Grace's view as to risk of loss."  In April 2001, the first ZAI

---

numerical positions.  They remain open to having such discussions with a mediator, and invite the Court to
order the parties to mediate where a mediator can determine who may be acting obdurately.

[12] According to Grace's 10-K, it ultimately paid over $600 million to settle 207 asbestos property damage
cases.  (Feb. 29, 2008 Grace 10-K at F-22) (Attach. 6).

[13] Attach. 6.

claims were moving through the pretrial phase, including class certification proceedings, but they never reached trial and the eventual appeals.[14]  For almost seven years, ZAI litigants have been stymied in receiving any appellate guidance on ZAI issues.  Through the bankruptcy stay and the interlocutory nature of the ZAI Opinion, Grace has received the best of both worlds – it has kept ZAI litigants from proceeding in the tort system with its normal appellate review, and it has used the interlocutory status of the ZAI Opinion to block appellate review within the bankruptcy.  This certainly benefits Grace, but it does not advance the administration of justice.

After almost seven years, it is appropriate, indeed highly desirable, for an appellate court to review the ZAI issues before this bankruptcy moves further.  While the ZAI Claimants have the greatest respect for the time and effort this Court invested in the ZAI Opinion, they respectfully believe there are important issues raised by the Opinion that deserve appellate guidance.  Issues that affect potentially thousands of homeowners should not be settled on the basis of a single, trial level opinion without any opportunity for appellate review.

It would indeed be a tragedy for this bankruptcy to proceed to a resolution forced upon the ZAI Claimants, and then to find upon appeal of the plan that the ZAI Opinion is flawed in some respect.  Resolution of this bankruptcy may ultimately be impeded more by denying the ZAI Claimants the appellate review they seek, than by permitting it.  The ZAI Claimants seek nothing more than an opportunity to have an important opinion reviewed when such review can serve a valuable purpose.

The structure of American jurisprudence anticipates that the law will develop

---

[14] Grace appealed virtually every one of its asbestos property damage losses, (almost always unsuccessfully), and the ZAI Claimants are confident Grace would have done the same with the early ZAI trials.

incrementally with appellate review being an invaluable component.  Appellate opinions can help to settle the law and often provide a different perspective on an issue from a trial court.  The history of appellate review in asbestos property damage litigation shows that a trial court's first look at an issue was often in error.  Aware of this history, Grace is understandably wary of appellate review.  Grace's lower court victories in property damage cases were often nullified by appellate courts.  See, e.g., MDU Res. Group v. W.R. Grace & Co., 14 F.3d 1274 (8th Cir. 1994) (reversing summary judgment for Grace); Mt. Lebanon Sch. Dist. v. W.R. Grace & Co., 607 A.2d 756 (Pa. Super. 1992) (approving trial court vacating jury verdict for Grace); San Francisco Unified Sch. Dist. v. W.R. Grace & Co., 44 Cal. Rptr. 2d 306 (Cal. Dist. Ct. App. 1995) (reversing summary judgment for Grace); In re State Pub. Bldg. Asbestos Litig., 454 S.E.2d 413 (W.Va. 1994) (affirming trial court's vacating jury verdict on damages for Grace and awarding new trial).[15]

While the ZAI Opinion may ultimately withstand appellate review, its importance in this litigation requires that it at least receive appellate review.  If not now, when?  If review is prevented and there is error in the ZAI Opinion that goes uncorrected until a post-confirmation appeal, what happens then?  The ZAI Claimants are simply asking for a timely opportunity to receive appellate review.

## V.    The Court Can Provide the ZAI Claimants With an Opportunity for Appellate Review by Either Dismissing a Single Claimant's Claim or by Making a Rule 54(b) Determination as to a Part of a Claim

### A.    Dismissing a Single Claimant's Claim Will Permit Appellate Review

The most straightforward, although somewhat draconian way to enable appellate

---

[15] While Grace did not lose all its appeals, it lost the great majority.  This record is particularly telling since Grace would logically have pursued appeal in its "best" cases, while settling the rest.

review of the ZAI Opinion, is for this Court to expunge a single ZAI Claimant's claim.

Wallace Trucking Co., Inc. v. Ins. Co. of N. Am., 838 F.2d 698 (3d Cir. 1988).  In

Wallace Trucking, the court ruled that expunging a claim permits immediate appellate

review.  In doing so, it highlighted the value of a timely appeal before a plan is

confirmed:

> The rationale for viewing finality under a less rigorous standard in the
> bankruptcy area is clear.  Bankruptcy cases frequently involve protracted
> proceedings with many parties.  To avoid the waste of time and resources
> that might result from reviewing discrete portions of the action only after a
> plan of reorganization is approved, courts have permitted appellate review
> of orders that in other contexts might be considered interlocutory.

Id. at 701.

While the ZAI Claimants do not relish having any claimant's claim expunged, the need

for appellate review of the ZAI Opinion is critical for the very reasons expressed in

Wallace Trucking.  The time and resources that could be wasted by post-confirmation

review warrant this action.  Accord, In re Prof'l Ins. Mgmt. v. Ohio Cas. Group, 285 F.3d

268, 279 (3d Cir. 1990).

## B.    Rule 54(b) Presents an Alternate Avenue for Appellate Review

Federal Rule of Civil Procedure 54(b), made applicable to a contested matter by

Bankruptcy Rule 9014(c), provides in pertinent part:

> When an action presents more than one claim for relief  . . . or when
> multiple parties are involved, the court may direct entry of a final
> judgment as to one or more, but fewer than all, claims or parties only if the
> court expressly determines that there is no just reason for delay.

The rule was designed "to strike a balance between the undesirability of piecemeal

appeals and the need for making review available at a time that best serves the needs of

the parties."  Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 202 (3d Cir. 2006)

(quoting Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 363 (3d Cir. 1975). Under Rule 54(b), the trial court acts as a "dispatcher" with a duty to consider judicial administration interests and the equities in a case. Id.

A decision to make a Rule 54(b) determination involves two separate findings: first, whether the court is dealing with a final judgment in the sense that it disposes of a specific claim in a multi-claim action or a specific party in a multi-party action and, second, whether the matter is ready for appeal, or put another way, whether there is a just reason for delay. Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7-8 (1980); see also, Berckeley Inv. Group, 455 F.3d at 202.

Once finality is established, courts consider the following factors when assessing if there is a "just reason for delay" under Rule 54(b):

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 364 (3d Cir. 1975); Berckeley Inv. Group, 455 F.3d 195 at 203; Metro Transp. Co. v. North Star Reinsurance Co., 912 F.2d 672 (3d Cir. 1990).

The Third Circuit recently upheld a trial court's certification of a partial final judgment as subject to immediate appeal. Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195 (3d Cir. 2006). The Court took several factors into consideration, including the possibility that the court of appeals' determination might moot the remaining claims, the

derivative nature of the remaining claims, the length of the litigation, and the possibility that further delays might impair the ability to execute the judgment. Id. at 204.

Many of the factors that supported a Rule 54(b) determination in Berckeley Investment Group counsel such treatment here. This litigation has gone on for seven years despite the Court's urging to get it resolved. The prospect of additional years of litigation before the ZAI issue can be heard post-confirmation is very real. If Grace is confident in its position, it should welcome an appeal. Should the court of appeals determine that the ZAI Opinion is fatal to the ZAI claims, as this Court suggested it might be (ZAI Op. at 53), the ZAI issues would be mooted. There would be no need for the protracted bar date procedures Grace is promoting.

The length of this litigation and the possibility of upsetting a confirmed plan if appeal is delayed also support review. See Wallace Trucking Co., 838 F.2d 698 at 701. ("We believe that the considerations that led this Court to adopt the more flexible standards of finality in reviewing bankruptcy proceedings are equally applicable in the context of appeals of orders of the bankruptcy court to the district court."). Indeed, if appeal is delayed until post-confirmation, it is not inconceivable that Grace would argue that it is too late to entertain a ZAI appeal that could upset the reorganization. See In re Continental Airlines, 91 F.3d 553 (3d Cir. 1996) (en banc) (post confirmation appeal that would disrupt a complicated reorganization not permitted). It is ironic that in such circumstances the courts advise litigants that "the appealing party should have acted before the plan became extremely difficult to retract." Nordhoff Invs., Inc. v. Zenith Elec. Corp., 258 F.3d 180, 185 (3d Cir. 2001). That is exactly what the ZAI Claimants are attempting to do here.

Finally, where the Court is considering possibly inviting thousands of homeowners to go into their attics on the basis of the ZAI Opinion to get information to respond to a class notice, it may well be wise to get a "second opinion" beforehand. As a practical matter, such inspection activities flowing from the ZAI Opinion would be final as far as the homeowner is concerned, and any exposure resulting therefrom could not be undone.

The ZAI Claimants recognize that Rule 54(b) treatment is not the normal course in litigation. But this is not normal course litigation. The bankruptcy fate of hundreds of thousands or more ZAI Claimants hangs in the balance. The Claimants do not lightly seek appellate review. The ZAI Claimants suggested mediation. Grace rejected it. The Court suggested as a middle ground a non-binding notice to help the parties' negotiations. Grace rejected it. Without some appellate nudge, Grace seems stuck in its ZAI denial.

For the foregoing reasons, the ZAI Claimants respectfully request that the Court dismiss a single ZAI claimant's claim or, in the alternative, make a Rule 54(b) determination concerning one of the ZAI Claimant's claims to permit appellate review.

Dated: March 18, 2008
       Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

William D. Sullivan (2820)
Elihu E. Allinson, III (3476)
4 East 8th Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 428-8191

-- and --

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue
Chronicle Building, Suite 680
Spokane, Washington  99201
Telephone:  (509) 455-3966

-- and --

RCHARDSON, PATRICK, WESTBROOK
& BRICKMAN, LLC
Edward J. Westbrook
Robert M. Turkewitz
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, South Carolina  29464
Telephone:  (843) 727-6500

*Special Counsel for ZAI Claimants*