# ATTACHMENT 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                        .       Case No.  01-1139 (JKF)
                              .
                              .
W.R. GRACE & CO.,             .       USX Tower - 54th Floor
et al.,                       .       600 Grant Street
                              .       Pittsburgh, PA  15219
            Debtors.  .
                              .       June 25, 2007
. . . . . . . . . . . . . ..          1:09 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          Reed Smith LLP
                          By:  JAMES RESTIVO, ESQ.
                               DOUGLAS CAMERON, ESQ.
                          435 Sixth Avenue
                          Pittsburgh, PA  15219

For Anderson Hospital:    Speights & Runyan
                          By:  DANIEL SPEIGHTS, ESQ.
                          200 Jackson Avenue, East
                          Hampton, SC  29924

Audio Operator:           Janet Heller

Proceedings recorded by electronic sound recording, transcript
                  produced by transcription service.

_____

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net
(609)586-2311      Fax No. (609) 587-3599

1 see if I have an order here that I can modify or if I need to
2 get one submitted.  I think it may be better if I get one
3 submitted, because this one sets a discovery schedule.  So Mr.
4 Westbrook, can you work with the debtor and simply submit an
5 order that will deny the motion for the reasons I've expressed?
6 Okay.  Thank you.

7 MR. RESTIVO:  Next, Your Honor, is ZAI status report
8 or really discussion, I think, of what happens next.  We've
9 given this a good bit of thought, Your Honor, and reasonable
10 minds clearly could differ on what happens next.  Hindsight
11 shows that the Court clearly was correct to say let me
12 determine what science says about ZAI before we get bogged down
13 and litigate for another year these issues.  And we now know
14 that science has determined that ZAI does not pose an
15 unreasonable risk in an attic.

16 Where do we go from here?  Obviously one suggestion
17 people have made is to go back where we were.  That is, let's
18 go back now and litigate, maybe litigate our brains out over
19 whether there should be a bar date and a proof of claim form.
20 It would be a lot easier now because now we don't have to say
21 go up and worry about what's in your attic.  But then we'll get
22 into a big litigation about can you do this by way of a class
23 or a class claim form, and we can go back where we were and we
24 certainly have heard the suggestion that maybe that's what
25 happens next.

**J&J COURT TRANSCRIBERS, INC.**

1  I guess another suggestion is to forget about this, worry about
2  it later.  You know, somehow when the plan comes out it'll be
3  handled.  And, there's some merit to that.  Our own view, and
4  again reasonable minds could differ and I don't know how strong
5  we feel about it, there clearly is an issue as to what, if any,
6  causes of action or claims or theories of liability, if any,
7  exist today with respect to ZAI.  The ZAI claims have been
8  stated, and I believe this is in the Court's opinion, either as
9  strict liability, negligence, warranty, consumer protection,
10 misrepresentation -- I'm not trying to list all of them but
11 there are a number of claims and theories that ZAI wears here.
12 We believe that if ZAI does not pose an unreasonable risk or a
13 unreasonable hazard, or an unreasonable danger, that as a
14 matter of law there can not be a strict product liability claim
15 or a negligence claim, or a warranty claim or consumer
16 protection claim, or misrepresentation of a material fact
17 claim.  But that has not been briefed to this Court.  What we
18 have briefed and discovered and argued about and eventually got
19 a ruling on was what does science show.  And so, our suggestion
20 to the Court is before we go back to arguments on class action
21 or notice or what the notice says, perhaps the Court should
22 give the parties a briefing schedule so that the parties can
23 brief what, if any causes of action could remain given the
24 Court's decision.  That would give Mr. Westbrook and his side
25 the ability to argue that they all remain.  Give us the ability

1  to research and argue that.  If you don't have a potential
2  danger, if it's not unreasonably harmful, none of these can
3  remain.  And, we can at least figure out what causes of action
4  are we dealing with, and once we know that then we can go back
5  and fight among ourselves about bar notices and what it would
6  say and class action.  And so, again, while reasonable minds
7  might differ, our leaning is to have a briefing schedule, to
8  have the parties brief what is left of the various causes of
9  action given what science tells us about ZAI.

10            THE COURT:  Mr. Westbrook.

11            MR. WESTBROOK:  Thank you, Your Honor.  Your Honor,
12 we have as well given some thought to the issue and we may have
13 a bit of agreement with Grace, maybe in modified form.  I have
14 here, Your Honor, something that I provided to Grace counsel
15 the last time we were going to take a look at this, a ZAI
16 roadmap.  And, I'm going to give them a nice color copy of it.
17 Your Honor, may I hand one up to the Court, too?

18            THE COURT:  Please.  Thank you.

19            MR. WESTBROOK:  I'm going to bring this up just a
20 little bit, so I can get some more on there.  Is that possible?
21 Okay, that would be better.  That's fine.  Your Honor, we have
22 stepped back as well and given the thought to, how do we get
23 from Page 53 of your ZAI opinion where you said, "The next
24 issues to be decided are what legal claims exist after this
25 ruling, and once those claims have been determined, whether it

1 would be appropriate and helpful to treat those as a class
2 action." Your Honor, ZAI is unique in my experience in the
3 mass tort bankruptcies in that this is the only bankruptcy that
4 I know of where a very large potential group of creditors had
5 not had a trial record or even a motions for summary judgment
6 record out in the legal system before the bankruptcy were
7 filed. In most of the other bankruptcies the cases have been
8 litigated for years and the company comes in and files for
9 bankruptcy because of those case results.

10      Here, what we have what some would call in some
11 respects an immature claim. There has not been that experience
12 out in the State Court system. So, we find ourselves in a bit
13 of agreement with Mr. Restivo that the next step does need to
14 be to get some definitiveness about what are the legal claims
15 that exist for ZAI claimants in light of the Court's <u>ZAI</u>
16 <u>Science</u> opinion?

17      Your Honor, I've been on the phone in a number of
18 these hearings and in person, and know that the Court is very,
19 very busy, not only with this case but a number of other
20 bankruptcies. And, we think it may be wise -- and, I'd like to
21 have the opportunity to first discuss it with Grace and then
22 provide some briefing to the Court, about this Court taking
23 advantage of the resources that are available in other courts
24 that are familiar with their State tort laws, and get some of
25 that percolation of legal views about what claims under State

1 tort law would be appropriate in light of the <u>ZAI Science</u> trial
2 opinion.

3      And, Your Honor, you'll see in the first laying of
4 the roadmap, on the top, "Definitive rulings on substantive
5 issues," and this is a four-lane highway, so to speak, Your
6 Honor, with the most productive lane being the final one, of
7 course, mediation and some kind of resolution that we all hope
8 will come in our lifetime. But, going to what needs to be
9 looked at first, first lane, "Definitive rulings on substantive
10 issues," we would like to brief to the Court the advisability
11 of the Court perhaps lifting the stay to allow a representative
12 ZAI claims in a couple of jurisdictions to go out to those
13 courts and with the Court's <u>Science</u> trial opinion as part of
14 the record, supplemented by whatever we might need, and get
15 some rulings while this Court's busy on all these other things,
16 on what legal claims exist for ZAI. And, we could certainly
17 discuss with Grace the representative claimants to send out
18 there. We have a bunch. As Your Honor knows, we have the
19 <u>Barbanty</u> case in Washington with Judge O'Connor is there.
20 Judge Saris has three or four in the <u>MDL</u> proceeding. But, we'd
21 like to brief to you the advisability of, maybe that's a wise
22 use of judicial resources.

23      Connected with that, Your Honor, is we would look at,
24 maybe when we got to those courts -- instead of going a long
25 way and get through trial courts, and where are they going,

69

1 this and that -- have those Courts certify some of these issues
2 right to the State Appellate Courts. Let's get some definitive
3 rulings so we don't have to come back and say, "Well, we have
4 the interlocutory appeal from Judge Fitzgerald, and we have
5 some trial court rulings. Where are we?" Let's see if we can
6 get this pinned down and try to compress what most mass torts
7 have in the years that they build up to bankruptcy, and use
8 some of this time, I know the Court is busy through January
9 with the PI estimation. Maybe by the time Grace and the PI
10 folks exhaust themselves we will have some rulings that could
11 be very informative about ZAI. So, we'd like the opportunity
12 to brief that to the Court before we jump in and brief these
13 legal issues to the Court, brief whether it isn't more
14 advisable and a better use of this Court's resources, and
15 everybody's resources, to go right into the horse's mouth, so
16 to speak. The Supreme Court told us in March in the recent
17 case specific gas and electric case that the Bankruptcy Courts
18 have got to decide these claims just as the State Courts would
19 that are out there. Well, let's take advantage of that if we
20 can and see if that doesn't make some sense.

21          I have not had an opportunity to discuss it with Mr.
22 Restivo, though he's had my roadmap for a couple of months,
23 he's been busy, understandably, on other things, Your Honor.
24          Another thing we have thought about, Your Honor,
25 right under certified issues, is perhaps -- and, I can discuss

1  this with Grace -- we look at getting a representative case or
2  two, getting a final order in one of those cases and letting it
3  go up to the Third Circuit.  See if we can get some rulings
4  right from the Third Circuit which would inform us.  We'd like
5  to -- I guess from our perspective, Your Honor, we'd like to
6  have some definitive rulings so that there's not a question
7  left open when this Grace bankruptcy eventually moves to some
8  resolution that, "Well, ZAI was dismissed.  But, wait, we
9  confirmed a plan.  And now, ZAI's got an appeal."  It doesn't
10 make sense for anybody, we'd like to try to get some revisions
11 where we can get some definitive rulings.

12        I get down now to the second lane, Your Honor.  Those
13 are sort of the places we think those decisions might usefully
14 go.  My second lane is really Mr. Restivo's lane he discussed.
15 We agree we need to get decisions on issues such as, "I'll
16 strike ATSDR out now," and strict liability, negligence,
17 warranty, because, Your Honor, I think -- I'm not going to
18 argue it now, but I think we will show the Court that in actual
19 real world situations you can lose on a strict liability claim
20 and win on a negligence claim, because I did that against Grace
21 precisely in a Monokote case out in our State Farm case in
22 Illinois.  So, the theories of cause of action are not
23 coincident, but that's briefing, and the question is where do
24 we brief that?

25        Your Honor, we think the next step, the third lane on

1  our four-lane highway is obviously class certification
2  consideration.  The Court has indicated that that should await
3  the ruling on what claims remain.  We agree.  We think that's
4  certainly something that needs to be looked at after that.

5          And then, our fourth lane, Your Honor, is the
6  mediation lane, Your Honor.  Mr. Bernick on occasion once or
7  twice has had occasion to say, "Well, ZAI would never talk to
8  us.  You know, they went and made a deal with the personal
9  injury folks."  And, Your Honor, the first part of that's not
10  exactly accurate.  The second part is accurate.  We do have a
11  deal, as far as I know, in place with the personal injury folks
12  so that if exclusivity ever terminates for Grace and personal
13  injury can propose a plan, I think we're taken care of.  I
14  mean, we may have to have some adjustments, but I think ZAI,
15  subject to everybody approving it, would be taken care of.

16          But, the purpose of Lane 1 and Lane 2, and eventually
17  Lane 3 is to get ZAI in a situation where when this bankruptcy
18  is finally going to wrap up that ZAI will be in a mature
19  situation as opposed to what may be immature right now.

20          THE COURT:  Well, you know, if you've got a
21  settlement with the personal injury folks, does that include
22  the property damage, too?

23          MR. WESTBROOK:  Your Honor, we had a settlement which
24  was split.  We have a ZAI piece of the settlement.  And, I'm
25  not sure the status of the property damage.  But, --

1            THE COURT:  Oh, I see.  You've just got -- assuming
2   that there is a plan and a personal injury distribution, then
3   you've got an agreement that a certain portion of the personal
4   injury would go to ZAI.

5            MR. WESTBROOK:  Correct.  Correct, Your Honor.  And,
6   that's why, you know, I guess it's almost cart before the
7   horse, but that is no way to get the personal injury plan up
8   for consideration until they get all their other problems
9   worked out.  So, I guess it may be that this all proves to be
10  the useless work somewhere down the road, but one way or
11  another we try to move this along so which ever way it goes
12  we're positioned to be resolved as well.

13           THE COURT:  Well, I don't know enough about the
14  settlements because, of course, they've never come up.  But, I
15  guess the question is this, if your settlement is only on the
16  assumption that exclusivity is terminated and the committees
17  propose a plan, then I suppose this doesn't work.  If your
18  agreement is that regardless of who proposes a plan, assuming
19  that a plan's confirmed and the personal injury folks get some
20  distribution, that you get a percentage of whatever that
21  distribution is, then why don't you simply run that flag up the
22  pole and see if it flies?

23           MR. WESTBROOK:  Well, Your Honor, that's not a bad
24  idea.  We have not had discussions along those lines for a
25  number of months but we certainly are willing to engage in

1  discussions along those lines with both of our friends at both
2  of these tables here.  But, Your Honor, for today's purposes
3  what I really would like to do and in a sincere hope to move
4  this thing along is to see if we could get some time to have
5  some discussions with Grace and then a briefing schedule on how
6  should these legal issues be decided.  And, whether it doesn't
7  make sense for the Court to look at lifting the stay -- and,
8  I'm not talking about somebody collecting a verdict out there.
9  I'm talking about getting rulings on these legal issues.  The
10 Court will recall that you conditionally lifted the stay in the
11 Central Wesleyan case simply to let it go back to get some
12 rulings from the Court back there.  And, that worked out very
13 successfully.  So, I'm talking about that, not slipping in with
14 some verdict somewhere, so that we can get some rulings, some
15 definitive rulings, and I'd like to brief to the Court because
16 we've had some of these bright minds that the Court has been
17 talking, has seen in the courtroom, take a preliminary look at
18 some of this and there are some cases that seem to give us some
19 hope that that may be a very wise use of resources to -- or,
20 especially while this Court is busy into the fall and January
21 with these other things, rather than burden this Court with
22 mountains of summary judgment motions or motions to dismiss
23 about these various legal theories in courts, take them out to
24 the courts that are dealing with them every day.  That's our
25 suggestion, Your Honor.

1           THE COURT:  All right.  I like my option the best.
2  If you've got a settlement agreement I'm not sure why we're not
3  starting with whether or not that settlement agreement might
4  not be acceptable to everyone.  Because if it's essentially
5  sharing a pot, then, you know, --

6           MR. WESTBROOK:  Your Honor, without getting into any
7  substance of any discussions, that is something that I believe
8  I can discuss with somebody on the other side and see if we get
9  some bite there on that hook.

10          THE COURT:  All right.  Mr. Restivo.

11          MR. RESTIVO:  One comment and one suggestion.  The
12  comment is, I'm not sure there's any more of a State Court
13  history on ZAI than this Court has.  The only decision I know
14  of is <u>Barbanty</u> which was on a, you know, preliminary
15  injunction.  And so, you know, maybe there's some merit to what
16  Mr. Westbrook's saying, but his roadmap gives me a headache, it
17  looks like an awful lot of stuff.

18          Our suggestion, Your Honor, is, I have had this
19  roadmap for a couple months but I didn't hear the explanation
20  of it.  I don't know whether there's any settlements out there
21  or potential settlements out there, I'm not quite sure what Mr.
22  Westbrook's talking about.  Our suggestion is to set this down
23  for a status conference at the next omnibus, allow us to have
24  some dialogue with Mr. Westbrook and his people.  Let us find
25  out, let me find out what is it he can tell us about whatever

1 settlements he's had on his side.  I don't know whether it's
2 confidential or not -- I don't know whether they exist, don't
3 exist.  But, we really have litigated with each other for a
4 number of years so we know how to talk to each other.  Let us
5 take his ideas, our ideas, the roadmap, his settlement, let us
6 dialogue a little bit and see if we can't come up with more of
7 a joint sort of suggestion at the next omnibus.
8          THE COURT:  Mr. Westbrook?
9          MR. WESTBROOK:  Your Honor, that's acceptable.
10         THE COURT:  All right.  Mr. Baena, the property
11 damage committee have anything you want to add to this mix?
12         MR. BAENA:  Mess or mix?
13         THE COURT:  I said mix, but I'll take the other word.
14         MR. BAENA:  No, Your Honor.
15         MR. BERNICK:  Your Honor, just again by way of a
16 little footnote here, there's another little drive-by here
17 which is that there's a settlement that's out there and this is
18 a question of whether, you know, all the money's there and,
19 gee, won't that fly.  This is not, -- again, the comments made
20 and it tends to have some resonance and people tend to remember
21 it.  This is the same so-called settlement that was announced
22 in principle about a year and a half ago.
23         THE COURT:  Yes, I understand.
24         MR. BERNICK:  And, it's not -- there are, frankly, in
25 the discussions, at least references made to discussions, there

1  are no discussions that I'm aware of that are based upon that
2  agreement.  There are discussions that are taken place, and we
3  would, of course, welcome the continuation of discussions with
4  the ZAI people and with the traditional property damage people
5  and with the PI people.  And, again, Your Honor enjoined me to
6  make sure that we're taking every effort to assure that those
7  discussions are continuing.  And, again, as I've said before,
8  all I can say now is that that's exactly what Grace is trying
9  to do, not necessarily with me involved but with the client
10 involved and different people, this is a very active process.
11 And, to the extent that Mr. Westbrook is suggesting that that
12 continue in particular with the ZAI people, I know there's a
13 lot of desire and willingness to have that happen.  Frankly,
14 the announcement last year of the 85/ 15 split and all the
15 different bells and whistles has been more of a hindrance than
16 it's been a help to the process of moving things along.

17          So, again, I don't want the Court to have a
18 misimpression, not that Mr. Westbrook was attempting to create
19 a misimpression, but a misimpression that there's some easy
20 path here that can be pursued and that's not being pursued.
21 We're trying to do everything we can to keep the discussions
22 going.

23          THE COURT:  No, I don't think Mr. Westbrook gave me
24 or intended to give me any idea that there was an easy path.  I
25 think I was the one who suggested that if, in fact, some groups

1  have gotten together and have agreed that to the extent that
2  there is a pot, whatever the pot is, that at some point in time
3  there's a pot and there is an agreement as to how that pot's
4  going to be divided up among the personal injury folks, that to
5  the extent that that piece can be pinned down, let's get it
6  pinned down.  It wouldn't hurt to start knocking these issues
7  down one at a time.

8          MR. BERNICK:  But, the difficulty, Your Honor, is
9  that we're now have gone substantially down the road -- this
10 was the difficulty that was pointed out last year when this
11 thing first was announced with much fanfare -- is it was used
12 as an opportunity to have no discussions with the debtor, it
13 was reached among the claimants, inter-say, and it purported to
14 give no effect to any ruling that the Court made, and therefore
15 we now have seen as the march has taken place to establish ever
16 since then, well, what PD claims are really there.  We've seen
17 a tremendous amount of progress made and we've seen settlements
18 come out of the process that Mr. Restivo has so ably managed
19 with the cooperation of Mr. Speights, and other folks.  If you
20 go back to the idea that there's a guaranteed split and the
21 people get paid regardless of whether Your Honor has determined
22 that their claims have merit or not, it actually constitutes a
23 substantial impediment to making progress as progress has been
24 made with respect to traditional PD, and we expect that it will
25 be made with respect to -- it has been with respect to ZAI and

1 | others.

2 |        So, the idea of there already being kind of a split-
3 | up that takes care of people, actually is a problem that we
4 | began with, and since a large part has been overcome as we've
5 | started to go down the road in taking chunks of claims, dealing
6 | with chunks of claims without trying to aim, shoot the moon,
7 | and get the whole thing all wrapped up in one nice, neat
8 | package, it doesn't work so simply in reality.

9 |        THE COURT:  Well, I'm assuming that settlement
10 | discussions that divide up a pot divide up a pot -- I'll use a
11 | bankruptcy term as opposed to a trust term --

12 |        MR. BERNICK:  Okay.

13 |        THE COURT:  -- because I don't know what the division
14 | would be, so I'll put it in bankruptcy terms.

15 |        MR. BERNICK:  Sure.

16 |        THE COURT:  Would talk about allowed claims.  To the
17 | extent that there are going to be distributions in the
18 | bankruptcy context to claims, they have to be on allowed
19 | claims.

20 |        MR. BERNICK:  That's --

21 |        THE COURT:  So, if it's a trust distribution process
22 | that's a horse of a different color and then different words
23 | have to apply to different types of claim structures.  But, to
24 | the extent that there is going to be some sort of bankruptcy
25 | true-up process then it would have to be on allowed claims, and

1  certainly this Court's not about to approve now or in the plan
2  process a process that would permit a distribution to claimants
3  who don't have allowed claims in that bankruptcy process.

4         So, if that's part of the settlement, folks, go back
5  to the drawing board because it won't be approved, I can't
6  approve it, it would violate the law. And, the one thing that
7  I can't knowingly do is violate the law. So, --

8         MR. BERNICK: Thank you, Your Honor.

9         MR. MONACO: Your Honor, this is Frank Monaco. Would
10 this be an appropriate time to address the Court on this issue
11 on behalf of Canada?

12         THE COURT: One second, Mr. Monaco. Let me, Mr.
13 Baena was going to say something first, and then I'll get to
14 you.

15         MR. MONACO: All right. Thank you.

16         THE COURT: Mr. Baena.

17         MR. BAENA: May I please the Court, on behalf of the
18 property damage committee, Scott Baena. Your Honor, again, I'm
19 not here to start a debate but I do feel constrained to say
20 that, you know, there are negotiations in the negotiations.
21 And, in the bankruptcy context, in this bankruptcy context,
22 there are negotiations, obviously, that are going on about, you
23 know, one-off negotiations about the allowance or disallowance
24 of claims. That's a very important process. That's the
25 process which has largely contributed to what's happened in