# ATTACHMENT 2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| W. R. GRACE & CO., *et al.*, | . | Case No. 01-01139(JKF) |
| | . | (Jointly Administered) |
| | . | |
| | . | February 25, 2008 |
| | . | 1:00 p.m. |
| Debtors. | . | (Wilmington) |
| | . | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1    Westbrook were employed to litigate that issue on behalf of

2    the ZAI claimants.  And as Your Honor obviously is well

3    familiar, ultimately Your Honor issued an opinion finding

4    that there was not an unreasonable risk associated with the

5    product, and that brings us to where we are here today.  So I

6    believe that Mr. Westbrook from time to time has made

7    proposals of further litigation associated with other issues

8    that may be related to the decision that Your Honor has made

9    with respect to risk.  But from the Debtors' point of view,

10   that would not really advance the cause.  That would continue

11   the litigation process.  Maybe at some point there will have

12   to be that kind of litigation.  But the first order of

13   business really does remain to go back to where we were in

14   '02, and pick up with the scheme of finding out who these

15   claimants actually are, and then involving them in the

16   process either of litigation, or what we hope will take

17   place, which is that there will be a plan process.  So we

18   think that now that Your Honor has ruled with respect to the

19   Science issue, that the process of crafting a notice will no

20   longer, should no longer be that contentious.  And we're

21   prepared to set up a very prompt schedule for our moving for

22   a notice and bar date program with respect to the ZAI claims.

23   We would have the benefit of Your Honor's decision with

24   respect to the content of the notice.  And we would, further,

25   propose that there be a bar date, not in fact a class action

1    process.  The purpose for doing all of that is to, first of

2    all, identify who it is that really is going to pursue a

3    claim.   That is one of the big unknowns in this process.

4    There's been a lot of speculation about that.  But the

5    speculation is really unhelpful with respect to moving the

6    case forward to resolution.  We just ought to find out.  So

7    we would be able to identify, based upon who submits a timely

8    claim, how many claimants there are.  And we would further be

9    able, what we hope is to then be able to give them notice of

10   a consensual plan, if there's a consensual plan, but if

11   there's not a consensual plan, to give them notice of

12   alternative plans that are before the Court so that they can

13   come and participate, and object, if that's what they feel is

14   appropriate.  And that would be our proposal for how to move

15   forward.  I know Your Honor didn't want to take further

16   papers before having an informal discussion, but that's where

17   the Debtor is going.  With respect to class certification,

18   Your Honor also deferred that issue back in the spring of

19   2002.  And in fact, there were numerous discussions that took

20   place at succeeding omnibus hearings thereafter where Your

21   Honor again underscored the priority of the Science issue,

22   and the fact that the class certification may or may not have

23   to be taken up at some point, but it wasn't necessary to take

24   it up now.  The Debtors' views with respect to class

25   certification haven't changed.  Indeed they've been

1    underscored by Your Honor's determination.  But under any set

2    of circumstances, under the rules, Rule 23 doesn't get

3    brought, doesn't, can't be brought to bear until there's a

4    contested matter, and until therefore, there are claims as to

5    which there is an objection.  We're not going to have a

6    contest with respect to which there can be class

7    certification.  And that's very clear under the American

8    Reserve decision, and under the, and under the rules.  So

9    after the bar date passes, and people come forward with their

10   claims, if it is still the determination of the ZAI claimants

11   that they would prefer to proceed by way of class, that can

12   get taken up.  But the, but the prior stage under the rules

13   is to have a notice and bar date program so that the actual

14   claimants can be before the Court.  And that would be, Your

15   Honor, Grace's proposal.  We're prepared to file a motion for

16   setting a notice program and bar date within the next 21

17   days.  I know that Your Honor, we are very busy, and you are

18   very busy, but this is a matter that is not of minor

19   consequence.  We should get it kind of on a track where it

20   can be wrapped in with the rest of the case.

21            THE COURT:  Okay.  Mr. Westbrook.

22            MR. WESTBROOK:  Good afternoon, Your Honor.  Your

23   Honor, I listened with interest to Mr. Bernick.  And I

24   actually agree with something he said today, and I'll get to

25   that in just a minute.  I did want to mention to you that Mr.

 1   Scott has come from Washington state today, Your Honor.  He

 2   may want to add a few comments about some of this, this

 3   status.  We're having a discussion today, an informal

 4   discussion, and it's on the, on the agenda as a status

 5   conference, so I wanted to step back just a second.  I'm

 6   going to engage Mr. Bernick on the process he wants to talk

 7   about.  But it occurred to me that we are in this case now

 8   approaching the 7th year anniversary.  I took a look to see

 9   that when this case was filed, gasoline was $1.60 a gallon,

10   so it's been a long time that we've been at this.  And a

11   bankruptcy that's gone on for about 25 hundred days deserves

12   some rest, and I want the Court to know that we have not been

13   idle in trying to get the ZAI matter into a position to be

14   resolved.  I know Mr. Bernick is aware of that.  Hasn't been

15   directly involved, but he's aware of that.  We recognize,

16   Your Honor, that ZAI is the tail on the dog.  The dog is

17   sitting over here, my friends on the personal injury side.

18   Until personal injury can be resolved, the case can't be

19   resolved.  That doesn't mean that ZAI can't be resolved, and

20   be put in a position where we can get it resolved.  I have

21   settled many cases with Grace.  Worked with Mr. Restivo,

22   who's on the phone, on many cases.  Litigated with Mr.

23   Bernick.  And I want to tell the Court, in general context,

24   that we have made significant progress in getting a framework

25   for resolution.  The devil is in the details, but we have, in

1    our view, made significant progress in getting some

2    resolution.  I'm going to come back to that in just a few

3    minutes, Your Honor, because we made need some assistance

4    from the Court in that respect.  But I believe that if the

5    personal injury issues get resolved that ZAI will not stand

6    in the way of resolving this bankruptcy.  But let me address,

7    for a few minutes, Mr. Bernick's point, Your Honor, that it's

8    now a bar date.  Your Honor, Mr. Bernick was not involved in

9    the ZAI process.  He's been busy with many, many other

10   things.  Mr. Restivo was.  And as the Court knows, in your

11   ZAI opinion, you laid out the next steps.  And you said, Now

12   that we have determined, speaking for the Court - - and you

13   know, Your Honor, I'll preface this by saying we respectfully

14   disagree with the Court's conclusion.  But I'm going to

15   proceed that the Court has ruled, and for the time being that

16   is the law of the land.  The Court said, Now that I've

17   determined that there's not enough reasonable risk of harm,

18   the next thing we need to go on is say, how does that finding

19   translate into what claims may remain.  Because they

20   recognize that the claimants have a number of claims.  So we

21   need to know what claims remain.  Because the Court said in

22   its opinion, my ruling may be fatal.  And if Your Honor is

23   correct, we hope not, but if you're correct, there will be no

24   need for a bar date.  There'd be no claims.  So Your Honor

25   logically said the next step is to see what claims remain.

1    Let's find out which of those claims may be viable.  And you
2    also said, and then if claims remain, let's see if they
3    should be treated as a class action.  Will a class action
4    assist the bankruptcy process here, or is it some kind of an
5    impediment?  So those are the issues outlined by the Court.
6    Now the last time we were here, Your Honor, for a ZAI status
7    conference on where we go next, Mr. Restivo, who was involved
8    in ZAI, spoke for Grace.  And he said that Grace's position
9    was that before we, quote, "litigate our brains out over
10   whether there should be a bar date and a proof of claim form,
11   that we should look at what claims remain."  He suggested a
12   briefing date so that we could brief what claims, under state
13   law, would remain.  We agreed that that would be an
14   appropriate way to proceed, and we, both sides asked for some
15   time to discuss the other matters.  And I will tell Your
16   Honor, without getting specific, that we have been busy on
17   other matters, as well as a lot of other people in this
18   courtroom.  So how do we get an answer, Your Honor, to what
19   the Court said, and what Grace, through Mr. Restivo, said the
20   last time was the next step, and we agreed was the next step.
21   That before you go out with a bar date, you try to tell
22   people to file a claim.  You have to have some idea if there
23   are claims, and if there are, what types of claims might they
24   have.  Your Honor, as we suggested at the last status
25   conference, we believe a way to jump over a lot of that issue

1   to get a definitive answer is to utilize a process that the

2   Federal Courts are utilizing around the country, and that is

3   certify these issues to some state appellate courts.  We

4   could pick a few, Grace could pick a few, and let's get some

5   answers on whether there are ZAI claims under the facts that

6   we've developed in the record.  The Court is busy with the PI

7   estimation.  We wouldn't have to dump this on the Court.  Of

8   course we could ask the Court to figure that out, but I don't

9   think that's the way to go and the time situation we've got

10  with the Court.  So our proposal on that, Your Honor, is that

11  we do exactly what we talked about doing the last status

12  conference, and not this new idea that Grace has had to jump

13  over all of that, forget about the Science trial now, and

14  let's just go back to 2002.  We're moving along, we think we

15  can get those answers.  And Mr. Bernick also says class

16  certification might be appropriate at some time, but we don't

17  think it's appropriate right now.  Your Honor, I was a little

18  surprised to hear Mr. Bernick say that, when we said, well

19  you can file the class action after the bar date, because I

20  read the transcript of his argument in the Anderson case

21  where he was arguing that a class action filed after the bar

22  date was too late, because it would interfere with the bar

23  date process, and the claimants who had come in, and it would

24  be a collateral attack on the bar date, etcetera.  So I don't

25  know how a class motion filed afer the bar date can be too

1    late, but a class motion filed before the bar date would be
2    too early.  I think that's the right time to do it.  And Your
3    Honor, in the Sacred Heart Hospital case, which a number of
4    people have cited in a number of proceedings, Eastern
5    District of Pennsylvania, which is 177 Bankruptcy at 16, the
6    Court said, quote, about class motions in bankruptcy, quote,
7    "Timing is also significant.  The most propitious time for
8    filing a motion for class recognition is before a bar date is
9    established.  Since the bar date is effectively uprooted, in
10   part, by the extension of the bar date for a favored class of
11   creditors."  So we think that our class motion, and Your
12   Honor, in agreeing to the dismissal without prejudice of the
13   Lewis case, we certainly recognize that the Lewis case put us
14   on record very early in this case, Your Honor, as wishing to
15   proceed by class certification.  We're not a johnny come
16   lately, as Your Honor has heard about some of the other class
17   certification motions that have been involved.  So we have
18   been trying, for six years, Your Honor, to get the class
19   issue up.  What will the class decision before the bar date
20   accomplish?  Why don't we just do what Mr. Bernick says?
21   Send out the notice.  Let's see who comes in.  We'll have the
22   universe of people.  Well as the 7th Circuit said in the
23   American Reserve case, the class representative is the agent
24   for the missing.  There are going to be many, many missing
25   claimants.  Your Honor I think that there will be no dispute

1   that the number of ZAI installations is in the thousands.  We

2   believe it's probably close to a million or more.  But

3   there's many thousands and thousands of unknown and unknowing

4   people out there.  If we have class certification beforehand,

5   and if Your Honor decides to address the matter from the

6   class prospect, we have the class representative who has

7   notice.  It greatly affects the scope of the notice, the

8   expense of the notice, the complexity of the notice, and also

9   serves as a due process backstop for challenges to the notice

10  later on.  So we think they're very good practical reasons to

11  have the class certification before the bar date.  We avoid

12  the issues that have come up with the Anderson case, Your

13  Honor, that we're making collateral attacks on the bar date,

14  or that the bar date notice is res judicata when you attack

15  the adequacy of notice.  If you go ahead first, as the Court

16  laid out.  See if we have claims, number one.  Two, let's see

17  if those claims can be taken care of by class certification.

18  If we proceed that way, Your Honor - - and I don't propose

19  that we take a long time to do this.  I propose we get

20  together with Grace, we have a very tight briefing schedule

21  on getting together on some states where we can get

22  certifications to the appellate courts.  Let them choose

23  some, we'll choose some.  Let's get an idea what the Courts

24  are saying.  I don't propose we take a long time to get the

25  class certification motions up.  I know Your Honor is busy.

1   When you can fit that in your schedule, we'll be ready to go.
2   But Your Honor, we think a bar date at this point would be
3   part of the problem, not part of the solution.  A bar date is
4   going to bring into this courtroom not folks represented by
5   Ed Westbrook - - not that we're any great shakes, but at
6   least you have a devil to talk to - - the devil that you
7   don't know are going to be homeowners, the ones who file
8   claims.  And we think a lot of people will just be
9   overwhelmed by getting a notice like this, if they have a 5
10  or $10 thousand claim, which is the average of the ZAI
11  claims.  But they're going to, the Court's going to have a
12  situation where you have to deal with homeowners.  Mr.
13  Bernick and Grace, obviously, they would prefer to do that.
14  They can file omnibus objections and crush those claims as
15  they come in.  But we think the orderly administration of
16  justice deserves that we go back and do what Your Honor said
17  we were going to do, what we asked to be done, and that we're
18  able to move ahead with the class device.  Let me come back
19  to where I started, Your Honor, because I wanted to give you
20  the status.  I said we have made progress.  We have what I
21  believe is a proper framework for resolution.  The devil is
22  in the details.  We believe, Your Honor, and I have seen Your
23  Honor first cajole, and then suggest, and then order parties
24  to mediation.  We believe that if we were to get an
25  independent, knowledgeable third party involved, that that

1    person, he or she, might be able to crack some heads, might
2    be able to say, Westbrook, You're crazy.  What you think is
3    crazy.  These people are not here, etcetera.  Or Mr. Bernick
4    or Mr. Restivo, listen to this.  Or Mr. Grace listen to this.
5    That if we had a short period to attempt some mediation, we
6    think it might, might produce something that could get us
7    somewhere.  I'm not talking about a long time.  Thirty or
8    sixty days to take a look at it.  I know the Court has got
9    the asbestos property damage traditional people moving toward
10   a mediation.  I'm not even opposed to looking at if they get
11   a mediator who's mutually acceptable, on the next day after
12   he or she hears their situation, we go down there, and we
13   talk to the, to the mediator.  But I think, Your Honor,
14   before we launch even into my idea of state certification,
15   class certification, or certainly into Mr. Bernick's idea of
16   bar date notice, with all the issues that that's going to
17   bring up about due process, adequacy, who you notify, and
18   what you notify them about, etcetera, that this deserves, as
19   we approach the 7th anniversary of this case, this deserves a
20   look to see if we can't crack some heads and put this thing
21   to bed.

22         THE COURT:  All right.  Well rumor had it, at some
23   point in this case, that there was some resolution.  But I
24   don't know between whom and what parties, and what the
25   mechanism of the resolution was.  So was there some

1   resolution?

2           MR. WESTBROOK: Yes, Your Honor.  Back in the days,

3   days of yore, we had a resolution where we had a resolution

4   with the PI side that when they got their deal set with

5   Grace, we were going to get a number based on what they got.

6   Mr. Bernick objected.  Vociferously said, you can't base your

7   settlement on what PI got, and that's, that's, that cleared

8   that deal, frankly.  And for good, for good and proper

9   reasons, I'm sure in Mr. Bernick's mind he cleared the deal.

10  But that's, and that's life.  But we're looking now at a, a

11  different framework.  And Your Honor, we had discussions with

12  Grace, discussions with PI, discussions with the futures.

13  They all know what we're about.  It's no secret.  We're not

14  hiding any ball.  And we'd like to try to get some help if

15  the Court's so inclined, to try to see if we can get it

16  resolved.  If not, in a case that's gone 7 years, I don't

17  think 60 days would kill us.

18          THE COURT: Mr. Scott.

19          MR. SCOTT: Good afternoon, Your Honor.

20          THE COURT: Good afternoon.

21          MR. SCOTT: I appreciate the opportunity to address

22  the Court.  I'm mindful of, that it's, the Court's had a long

23  day, and I will be as compact as I can.  This is an important

24  time, though, to reflect on where we are.  I am in full

25  agreement with Grace that this is the time to move the case

1    forward. I'm not sure that a way to do that is by starting
2    over again, or by going in reverse. And a good way for the
3    Court to sense how to move forward is to figure out where,
4    where are we now. I am not a bankruptcy counsel, nor aspire
5    to be one. I'm not an asbestos counsel. My career is, and
6    most of the people who've been prosecuting Zonolite claims
7    are not part of the plaintiffs' asbestos bar at all. My own
8    practice is in the area of deceptive business practices in a
9    class action setting or mass tort, and particularly where
10   equitable and injunctive remedies are the sensible thing to
11   do. And one thought, very briefly, about the Barbanti class
12   action, because it reflects on the three points I want to
13   make. One having to do with the class, one having to do with
14   this issue of who are they, let's have a bar date notice, and
15   then last the Science trial. The Barbanti action, as this
16   Court knows, was filed, and after about nine months,
17   certified as a class action in the state of Washington. I
18   stand before the Court not only as co-counsel with Mr.
19   Westbrook on the Science trial, but as class counsel who had
20   responsibilities for the state of Washington, which I take
21   very seriously. And with two representatives, one of whom,
22   at the request of Grace. Mr. Bush. They were designated as
23   agents to look out for the interests of that class. The
24   class action was an equitable class action. It sought
25   notification, so that people knew the product was

1   contaminated, education, so they didn't senselessly disturb

2   it and cause unnecessary expenses, and remediation.

3   Notification, education, remediation.  Remediation only when

4   necessary, and if necessary.  So that, if I'm not in the

5   business of handing out checks, the Court recognized the

6   importance of certifying that as a class action, both because

7   an equitable remedy was potentially the right solution, and

8   because the community was a community of homeowners.

9   Homeowners who are not simply unknown, they were unknowing.

10  That's why the Court certified it as a 23(b)(2) class action,

11  non-opt out.  Because our scientific surveys at that time

12  proved, people don't know if they have Zonolite, wouldn't

13  recognize it if they ran into it, and they encounter it in

14  unexpected ways, and had been told for half a century it's an

15  innocent, harmless product.  All right.  Now that, that

16  impacts the three issues I want to talk about.  One, class

17  recognition, two, let's have a bar date notice, find out who

18  they are, and lastly the Science trial issue.  Class

19  recognition, there's actually two issues here.  One is a

20  motion for the Court for recognition under Bankruptcy Rule

21  9014, recognition of a class action that has already been

22  certified by a senior judge after many months of work, and

23  with designated class representatives who have actually been

24  engaged in this bankruptcy for the last seven years.

25  Recognition of a pre-existing class.  So Mr. Bernick says,

1    well you can't address class until there's a contested claim

2    process.  I'm sure the Court recalls that it was Grace who

3    filed a proof of claim for my two class representatives, and

4    then contested the claim.  And that triggered the Science

5    trial.  We have, my two class representatives, having spent

6    the last several years defending themselves and not yet a

7    class, because the Court wanted to put that off.  So if were

8    that true, if it would be right for addressing that question

9    of class certification, recognition of a class.  And then

10   there's a separate question as to whether or not this Court

11   ought to be certifying classes.  Which is really a separate

12   issue.  The second question, we ought to have a bar date to

13   find out who these people are.  A bar date notice will

14   certainly play an important role in creating some finality.

15   As it relates to Zonolite.  And I am not trying to draw

16   attention to due process problems.  Because Mr. Bernick

17   characterized this as the content of the notice.  The problem

18   is the content of the notice.  The problem wasn't the content

19   or the adequacy of the notice.  The problem was the

20   effectiveness of the notice.  Meaning will a bar date really

21   do anything to advance the bankruptcy, or would a bar date

22   notice only bring within the bankruptcy people who knew, or

23   should know, that they have a claim and file proofs of claim,

24   and left out 90% of the actual Zonolite claimants.  It, it's

25   through class certification, and appointment of a

1     representative, that unknowing claimants become represented,

2     and become part of the bankruptcy process.  So a, a proof of

3     claim process will certainly generate some claims.  It will

4     not generate claims from unknowing consumers, and that's most

5     people.  And unless those unknowing people, in my view, are

6     represented, which goes back to the class certification

7     issue, then you could have a notice program that's due

8     process bullet-proof, but as a, as a practical bankruptcy

9     matter was an ineffective notice, because it didn't help the

10    Court to get its arms around actual creditors, and resolve

11    this Debtors' problems as between not only Zonolite, but all

12    the other legitimate creditors.  So I look forward to

13    addressing this issue.  But there shouldn't be a pretense

14    that the problem is let's find out who they are, a bar date

15    notice will let us know.  The last thing I'll say on this

16    issue is this.  It is wrong, and wrong headed, to say that it

17    is not possible to, to determine Grace's potential

18    liabilities unless you have a bar date.  Their, we, Grace has

19    produced very fine information with regard to production of

20    Zonolite.  And it is a very simple process to make estimates

21    of the numbers of homes that would have been fitted with

22    Zonolite.  And, and it is also not difficult, because we've

23    had experts do it, look at statistical data on home

24    demolitions, how, the frequency with which homes are taken

25    out of the housing stock, and make, and bracket the number of

1    existing, existing homes, as of 2005, that would contain
2    Zonolite.  Within a, in a reasonable nature.  We don't know
3    the names, we don't know the addresses, but the scope.  It is
4    ascertainable, and isn't ascertainable by a bar date notice.
5    The last thing I want to say has, relates to the Science
6    trial.  I'm not sure that that's over.  I have a, a couple
7    clients, and also some responsibilities as an appointed
8    counsel.  We have a pre-trial order that is a very important
9    one.  It is non-final.  We weren't successful in seeking
10   interlocutory appeal.  It, I think this Court, as Mr.
11   Westbrook said, ought to take, ought to use that as a tool to
12   move this case forward.  It would be procedurally confounding
13   if that was held in limbo, particularly as it relates to the
14   claimants who are in mid-course on their proofs of claim.
15   And, so as this Court thinks about how to move this case
16   forward - -

17             THE COURT: I'm sorry.  It would be confounding the
18   whole what in limbo?

19             MR. SCOTT: The whole Zonolite process.  We have,
20   the individuals they designated as claimants, who's claims
21   they contested, were the representatives in the class.

22             THE COURT: Right.

23             MR. SCOTT: Well, okay.  Now from what we, what is
24   is that we have learned from the Science trial?  What claims
25   - - because the Court was trying to find out not only, was

1   trying to educate itself about Zonolite, and understand

2   legally what it might involve.  Unless this Court tackles

3   that question of what, what claims, given the Court's factual

4   rulings, what claims exist, the Court can't answer the

5   question, is it appropriate to address those claims on a

6   class basis.

7           THE COURT: Right.  That's what I said in my

8   opinion.

9           MR. SCOTT: That's right.  And the representatives

10  who are seeking to be representatives of the class, are the

11  people who's claims are being contested.  Now if we just sort

12  of pretend like the Science trial is at an end, and turn to a

13  proof of claim process, I, I'm not sure how that advances

14  anything.  It, it is, it's a place holder.

15          THE COURT: I thought the Science trial was

16  necessary for a number of reasons, but primarily it had to do

17  with crafting what information was going to go in any kind of

18  a notice.  Whether it was a class action notice, a bar date

19  notice, a plan.  However parties who might have some access

20  to Zonolite where what they were going to be told with

21  respect to the danger that they face.  That was the problem.

22          MR. SCOTT: That was an important part.  Correct.

23          THE COURT: That was an important part.  And that's

24  what I was trying to ascertain.  If it was something where

25  every time they take a step in their house they are at major

1    risk, then that was one issue.  If it's not that level, then

2    there's a different issue.  And that's what I was initially

3    trying to figure out.  I did my best to go through the

4    evidence that was presented, and come to a resolution of that

5    issue.  From that evidence, I concluded that, at least if

6    left in place, Zonolite doesn't provide any risk of harm any

7    different from anybody being out in the general environment,

8    essentially.

9              MR. SCOTT: Um-hum.

10             THE COURT: So to the extent that there is need to

11   provide some notice, and I don't think anybody disagrees that

12   there's need to provide some notice, what I did not want to

13   do was to frighten possibly 150 million people who might be

14   living in these homes, saying that, you know, you're in

15   immediate danger of death, when in fact, they're not.  And

16   that was what I was attempting to find out.  I have satisfied

17   myself that they are not in any imminent danger of death.

18   So, or of serious risk of harm, or whatever other words you

19   want to put on this particular issue.  So that opinion, I

20   think, should set the base for some kind of a notice, however

21   this notice issue is going to go out.

22             MR. SCOTT: Sure.

23             THE COURT: That was my primary, primary goal at

24   that point in time.

25             MR. SCOTT: Um-hum.

1           THE COURT: If there is some benefit to trying to

2    get to a mediation to help determine the number of claims

3    that are out there, because all parties need to know that

4    information, both - - and I think at this point it shouldn't

5    be an issue of future claims, it should be current claims,

6    because Zonolite is no longer in production.  It's in houses.

7    It could be a matter, I suppose, where somebody sells a house

8    and somebody moves into that house.  So maybe there's an

9    issue of, in that sense, of future exposure.  I don't know.

10   But nonetheless, the Zonolite quantity of claims is known,

11   because it's in the number of houses that are, exist.  And

12   it's not going to be put into more houses.  Because it's not

13   being manufactured or distributed anymore.  So there's a

14   finite quantity of homes that ought to be able to be

15   ascertained, somehow.  I mean, actuaries, statisticians, they

16   do this kind of stuff.

17           MR. SCOTT: Um-hum.

18           THE COURT: There ought to be somebody out there who

19   can figure out a reasonable number of claims.  That ought to

20   set a base for figuring out how much it's going to cost this

21   estate to resolve those claims however it's going to be

22   resolved.  Now there are lots of ways that you folks can come

23   up with some way to attempt to resolve the issue at, at a

24   point, but I think the next step is you need to know what the

25   number of claims is that everybody is going to face.

1           MR. SCOTT: Um-hum.

2           THE COURT: And that's what I was trying to say in

3   the opinion.  I think you have to take this in a logical

4   step.  Now how you want to get there, that's what today's

5   status conference is supposed to be about.  If mediation will

6   help, fine.  I'm all for whatever, whatever will help move

7   this case so that Grace can get back in its business and you

8   folks can go about your lives.  It would be wonderful.

9           MR. SCOTT: And all I'm trying to suggest on this

10  last issue is in addition to this educating the Court on the

11  nature of the notice itself, it would be helpful in educating

12  the Court on the nature of the claims that would exist in

13  view of the Court's ruling, and the appropriateness of how it

14  is best appropriate to manage those claims in bankruptcy.

15  And that's what I'm saying.  Look hard at the legal claims

16  that would exist given the Court's rulings, and then ask

17  questions what's the most efficient, sensible way of tackling

18  those claims.

19          THE COURT: For resolution purposes.

20          MR. SCOTT: For - -

21          THE COURT: You mean.

22          MR. SCOTT: Absolutely.  And that, I think, is a

23  prerequisite to, it's certainly wise to do that before you

24  issue a bar date notice.

25          MR. BERNICK: Your Honor, I, I really think that

1    this is very reminiscent of where we were in 2002.  But I
2    think that people aren't really coming to grips with the
3    brass tacks of how it is that, at least as I understand it,
4    the bankruptcy process moves along towards getting to
5    resolution.  They somehow believe that setting a bar date is
6    some big bad thing, and you don't do that until you do an
7    awful lot of other things.  The fact of the matter is that if
8    you don't have a bar date, and you don't know who is a
9    claimant, you can't really take any of these other steps.
10   And I'll just go through all three steps that have been
11   proposed to the Court.  Because none of them are really
12   possible until you find out who it is that's a claimant
13   before the Court.  There's a suggestion of Mr. Westbrook's,
14   and he had, at one point, a very impressive chart that had
15   this mapped out, of going out and finding out answers to all
16   kinds of other litigation questions.  That, that is, and I
17   don't mean to be pejorative here, I think it's literally
18   true.  That's litigation of the air.  You can't go out and
19   simply certify a bunch of issues to a bunch of state courts
20   all over the country.  You have to have a claim and a
21   claimant.  And the claim and the claimant then becomes the
22   predicate for whatever it is that takes place.  In fact, we
23   recognized that, and Your Honor recognized that back in '02
24   by saying, well, why can't you get some claims on file.  So
25   we, that is the Debtor, made claims on behalf of people who

1    already had sued us.  And there was actually a motion to
2    strike those claims that was filed by the other side.  But
3    the fact of the matter is, you couldn't have litigation of
4    anything until you had a claimant.  So who now are the
5    claimants with respect to whose claims we're going to go
6    certify this issue to Supreme Courts all across the country?
7    How's that certification going to take place?  And how long
8    is it going to take place?  Can Your Honor make the
9    certification, or does it have to go to the District Court to
10   make a certification?  So we've got a District Court process,
11   and even have to go to the Court of appeals - -
12              THE COURT: Well - -
13              MR. BERNICK:  - - before it gets sent out - -
14              THE COURT:  - - there's a problem with that anyway
15   in that if the same issue is certified in different courts,
16   you're probably going to get different results, because it's
17   probably based on a state law issue.  And I don't think with
18   the massive claims that are anticipated here, that that's
19   probably the best resolution.  This, this cries out not for
20   class certification in the Rule 23 sense, this cries out for
21   class treatment in the plan confirmation sense.
22              MR. BERNICK: Exactly - -
23              THE COURT: ZAI needs to be a class of creditors.
24   You folks need to negotiate a plan treatment for ZAI.
25              MR. BERNICK: That, that - -

1           THE COURT: That's what you need to do.

2           MR. BERNICK: That is exactly what it is that we

3   want to accomplish.  But in order to be able to accomplish

4   this, and this takes me down through the other two ideas.

5   Let me talk about a mediator and a settlement.  The mediation

6   process with respect to ZAI is a very different kettle of

7   fish from the mediation process with respect to a traditional

8   personal injury case or a traditional property damage claims.

9   There's a tremendous history of resolving those.  They're one

10  by one.  They got individual clients.  Here is it a very,

11  very different kettle of fish.  You have something as to

12  which liability has never been found.  We don't have really

13  specific clients, with the exception of a handful of clients.

14  And there is no metric.  But one thing is for very sure.  And

15  that is that statements that there are tens of millions of

16  households out there, and they know that to some kind of

17  mortal certainty because they have somebody that goes and

18  runs the calculation, that is exactly why you can't mediate

19  anything.  You can't mediate it, because you don't have a

20  known population of claimants.  That population of claimants

21  is totally knowable.  For all the reasons that Your Honor

22  indicated, it's out there.  The only question is knowing it.

23  And the way that you know it, under the rules, and the way

24  that it's been done with respect to traditional property, is

25  no different.  You send out a notice.  So we send out a

1    notice. And it doesn't have to be, the standards for that

2    notice are no different than the standards for notice for any

3    other purpose. Notice is notice is due process is what's

4    required. So you send out a notice, and then people who are

5    living in those homes can go up to their attics, and we had,

6    in our notice you had a little photograph of what the thing

7    looks like, and we had a whole process of here's how you

8    determine how whether you've got it, and those people then

9    come into court. That's how it's done. It's not an

10   imposition. It's not some kind of punishment. It's a way of

11   finding out who the population is. Who are the currents.

12   And with respect to those currents, would we like to settle

13   the case? We'd like to settle the case. Absolutely. As Mr.

14   Westbrook indicates, there have been very active discussions

15   of that process. But appointing a mediator to then listen to

16   the same basic disagreement that's always been there, which

17   is not only whether there's liability, which is still not,

18   which the determination, obviously, that Your Honor has made

19   is not accepted there, and we understand that. But how many

20   people are we talking about? You can't, you can't, it's a

21   pointless exercise. They'll always say, well, it's 10

22   million. We'll always say, no, we don't think it's 10

23   million at all. After this period of time. We can't

24   speculate about that, and we shouldn't speculate about that.

25   Because the rules say the way you find out is you go send the

1    notice out, just like we have in all of the other contexts.

2    It's not punishment.  It's a way of brining people into

3    court.

4              THE COURT: Well even if the class cert, even if a

5    class were certified, we'd still have to do a notice, and

6    people would still have to file claims.

7              MR. BERNICK: That's the, that, that is, that's the

8    - -

9              THE COURT: I mean, whether you do it as a bar date

10   notice or do it as a class certification notice, the format

11   may be a little different, but you're going to get to the

12   same result.

13             MR. BERNICK: Well, but the, this is, let me now

14   talk then about class.  Because class, I think, does not help

15   the process, it impedes the process, but under any

16   circumstances, it just can't be done until you have a notice

17   and bar date.  And this is just basic, basic stuff.  First of

18   all, can you simply, as Mr., as counsel points out, can you

19   simply recognize an existing class under 9014?  I'm sorry.

20   That just doesn't work.  There has to be, for claimants to be

21   before this Court, they have to make a claim.  You can't

22   simply say, well, I recognize that so and so judge has

23   decided that this class is certified out in Washington state,

24   I'm not in any way demeaning or questioning the capability of

25   that Court, but the fact of the matter is, that is a case

1    that's pending in Washington state.  It's not pending here.

2    And the only way that the case can be pending here for

3    purposes of being part of this plan is to actually get a

4    claim filed here so that people are present before the Court.

5    So then the question is can the claim be a class claim?

6    Because that's what it would have to be.  To be a class

7    claim, under Rule 9014, there must be a contested matter.

8    Rule 23 only becomes applicable, and it is still

9    discretionary, under the rules once there is a contested

10   matter.  To get a contested matter, you have to have a claim,

11   and an objection.  The claim objection creates a contested

12   matter.  Rule 23 then becomes available.  Now Mr. Westbrook

13   very ably points out, he says, well, geeze, you know, what

14   happened to poor Mr. Speights and his Anderson Memorial

15   claims.  It's a totally different kettle of fish.  Anderson

16   Memorial was, was way after the bar date had been set.  All

17   kind of water under the dam, and all of a sudden this issue

18   emerges.  And yes, to certify class under those circumstances

19   would have created the due process problem.  Your Honor has

20   this under submission, because it effectively, it would

21   revive claims that had been barred, because they wouldn't be

22   filed by the bar date.  If you take a look at the cases,

23   including _American Reserve_, and including the, the _First_

24   _Equity_ case, what happens in the proper procedure is that you

25   file a claim by the bar date, then you move to have that

1    claim be treated as a class claim. And if the Court then

2    finds that under Rule 23 it should proceed as a class action,

3    it becomes a class claim. That is how it is done. So the

4    idea of doing class first is contrary to the Code, contrary

5    to the rules. You've got to get the claim on file, then 9014

6    applies. So if you want to do a class determination, if you

7    want to, the first step, nonetheless is that, and then Your

8    Honor can determine. Remember what happened in connection

9    with the Anderson Memorial claim. It turns out that once the

10   bar date came about, and the claims were filed, there wasn't

11   anything left of the Anderson Memorial class. I mean, there

12   was one claim that was left in the, that was the Anderson

13   Memorial claim in South Carolina. And then the purported

14   national class was never certified. And I don't want to

15   argue the whole thing all over again, but the information

16   that came out of the bar date process was highly material to

17   the Rule 23 determination. Now Mr. Westbrook says, well,

18   geeze, you know, there's a lot of merit, and he really kind

19   of got into the merits of Rule 23. He, and able counsel also

20   pointed out, oh, well, this, you need to give these people

21   notice, They need to be educated. After all, Barbanti was an

22   injunction class. It was an education class. Well the fact

23   of the matter is that you don't need (b)(2) in the context of

24   bankruptcy. (B)(2) is an non-opt out class, because you

25   don't want to have a defendant who is being sued for

1    injunctive relief subject to conflicting determinations.  You

2    therefore would have to have it non-opt out, everybody's got

3    to be in the same court.  Well here, everybody is in the same

4    court.  So you're not going to have different competing

5    orders.  So the whole idea of a (b)(2) class makes zero sense

6    in the context of bankruptcy.  What about classes providing

7    notice?  Well there's going to be notice either way.

8    Whatever these folks are going to get told about the product

9    that may or may not be in their homes, is going to get told

10   whether it's noticed for purposes of a bar date, or noticed

11   for purposes of class.  So the whole idea of class providing

12   notice to unknowing people, people who don't know what's

13   going on, they're going to get it, and they don't need (b)(2)

14   to get it.  And then there are the negatives.  And there are

15   major negatives.  The fact of the matter is that if you have

16   an opt out class, as Your Honor has properly recognized, if

17   you were to grant that class and say it's certified, you

18   still have to give the people an opportunity to opt out.

19   Well then you're back to the same old thing all over again,

20   which is you've then got to provide notice so that people can

21   make a decision.  But then the effect of the opt out is that

22   if people don't opt out, they're presumed to be still in.

23   And we then get this whole problem of people who are out

24   there, who haven't filed by the bar date, or people who are,

25   are out there that are theorized to be there in the tens of

 1    millions.  And because of the opt out rules, they have to
 2    take no affirmative action to remain in the class.  So if you
 3    have an opt out class that gets certified without the benefit
 4    of a bar date, then you postpone until the date in which they
 5    actually make a claim against some kind of pot the date to
 6    find out who's in and who's out.  Or who is there at all.  So
 7    the whole idea of defining the population can only take place
 8    in an effective fashion if you set the bar date and make
 9    people show up.  Now the other problem, of course, is that
10    then think about the other negatives.  What's it going to
11    advance if the Court were to certify a class, what's the
12    first thing that's going to happen?  There's going to be an
13    interlocutory appeal.  To find out if the certification
14    holds.  Because under the rules, interlocutory appeals are,
15    are, not, are specifically provided for in the rules.  So
16    this thing can go up to the 3rd Circuit.  And then so we're
17    going to have - - now I just want to think about this.  We're
18    sending issues out to different state Supreme Courts all over
19    the country on the basis of what claims to determine what so
20    that we can then have a class action that then has an
21    interlocutory appeal that takes it up to the 3rd Circuit.  So
22    we've got 3rd Circuit interlocutory appeal of class action,
23    we've got issues spinning out all over the country, and what
24    does it all, it doesn't accomplish anything.  We should get
25    the people in court.  Hopefully we will have a plan to

1    present to them.  We will know who they are.  We can give
2    them notice.  If they then want to file for class
3    certification, they can.  I don't think it's going to do any
4    good to the case.  If they then want to have a mediator, they
5    can ask, because we will at least then know who it is that
6    we're talking about.  My own feeling is that by the time we
7    go through this process of setting a bar date and getting the
8    notice out, we will then have, in place, a platform, a
9    foundation to do whatever it is that the Court wants.  And
10   maybe what happens in the process is that we get one piece of
11   information that is so key.  Who are these people.  And on
12   the basis of this, we can then decide where Your Honor should
13   go.  So we would again ask for the opportunity to move for a,
14   a bar date and notice process.

15            THE COURT: Well, let me ask what the Debtors
16   intention at this point is.  If, if a notice process goes out
17   that says something like, if you have ZAI in your home, file
18   a proof of claim.  And here's the claim form.  And it's
19   really simple.  You know, file this piece of paper, that's
20   it.  That's all you need to do.  You don't have to allege
21   damages.  You don't have to allege personal injury.  You
22   don't have to allege anything.  All you have to do is allege
23   ZAI in your home.  And whatever the proof is that is going to
24   be required to show that you do, in fact, have ZAI in your
25   home.

1            MR. BERNICK: Yeah.

2            THE COURT: Okay.  But not, no proof of damage.  No

3    proof of personal injury.  Nothing.  Just, just ZAI and a

4    proof of claim form, and here's my proof that it's ZAI.

5            MR. BERNICK: Yeah.  This is, Your Honor, that's,

6    that's a very good question.  And we actually proposed the

7    proof of claim.  And it is not like the proof of claim that

8    we use for a traditional PD, and not like the proof of claim

9    that we use for PI.  It is a very small amendment to Form 10.

10   So it basically says, do you have it.  There are things that

11   you have to do to get, so we know that you've got ZAI there.

12   I think there are a couple of questions about where it is in

13   your home, or something like that.  But like two or three

14   questions.  But it's all on one piece of paper.  It doesn't

15   get into damages.  It doesn't get into anything.  There's

16   some information there that's sought, but it's very, very

17   minimal.  So that, that's it.  It is, it is - -

18           THE COURT: So you're, are you looking - - and I

19   guess I have to address this to Mr. Westbrook and Mr. Scott,

20   and perhaps the Committee.  I'm not really sure how this is

21   going to play out.  Is the issue, if we're going to be

22   looking at some form of not necessarily a monetary

23   distribution to each person, but something else, like

24   perhaps, you know, a distribution of remediation is

25   necessary, are you going to need to know how much ZAI is

1    there in terms of square footage? You know, how much of your

2    house has ZAI in it? Where is it in your house, and how is

3    it placed, and how many square feet? I mean, what is it that

4    the information is going to need to divulge? Because it

5    seems to me that if we make this process simple, then you're

6    going to develop the universe of people who think they have

7    ZAI in their home, and can come up with something that says,

8    this is why I think I have it. And then, most of these

9    people, in fact, I bet, I'm willing to bet at this point,

10   probably all of these people are not actually suffering any

11   personal injury as a result of it, because if they are,

12   they'd be in the PI class. So to the extent that this is a

13   property damage issue, you're going to deal with it like a

14   property damage claim in some fashion, somewhere.

15             MR. BERNICK: Your Honor - -

16             THE COURT: I don't know how, but some fashion,

17   somewhere. So what do you need to know?

18             MR. BERNICK: Before they speak, and I don't want to

19   get in between the answer to the question, but I suspect, and

20   Mr. Westbrook can correct me if I'm wrong, I think that that

21   really kind of does get into some of the discussions that

22   are, are taking place. So it's going to be difficult for us,

23   I know, to comment on it. I don't know - -

24             THE COURT: Well, I'm asking because it seems to me

25   that this, the answer to this question may inform what type

1    of notice, and whether or not it should be done by some kind

2    of class, or some kind of proof of claim, bar date notice.

3              MR. BERNICK: Well, I'll let Mr. Westbrook talk.  I

4    have an observation about that.

5              THE COURT: And I'm not trying to interfere with

6    your settlement discussions.  I'm trying to get to what's

7    going to make sense to get the universe of claims known, and

8    then once this universe of claims is known, let you try to

9    figure out how to resolve them.  That's what I'm trying to

10   get to.

11             MR. WESTBROOK: Your Honor, we do have, and

12   consistent with what Mr. Bernick has said, we do have some

13   reliable information, I believe, on how much ZAI is sold and

14   the average installation size in a home.  The division tells

15   us about how many homes there were at one time with ZAI.

16   There are then numbers that can be run on demolitions and

17   removals, etcetera, over the years when nobody realized that

18   there was a problem.  Houses have been taken down.  So we, we

19   are, we do have information, and I think there is a

20   difference in opinion about what that information shows, but

21   that's again experts on both sides can differ, and maybe

22   somebody, you know, hearing the matter outside this courtroom

23   can say, well I think this is more reasonable Ed, or David I

24   think this is more reasonable, you need to look at this.  So

25   I think we do have information that can work toward that

1    point.  But Your Honor, I do want to get back to this point,
2    which is Mr. Bernick's statement.  He says, who are these
3    people, and we'll know it when they respond to the proof of
4    claim form.  We believe that's not correct.  The cases that
5    have looked at this issue on class certification say that
6    when you have modest claims where the cost of investigation
7    and prosecution is going to be significant compared to the
8    claims themselves, the chances are that a large number of
9    people who are legitimate claimants will not respond to a
10   proof of claim form, and that is why to effectuate the
11   bankruptcy policy, which is to bring all creditors, people
12   who may be creditors in.  The bankruptcy policy is not to get
13   W. R. Grace, as I understand it, out of this bankruptcy
14   spending as little money as possible.  It is to get the pot,
15   and then to equitably divide the pot.  And I just wanted - -
16              THE COURT: Well it's equitably divide the pot among
17   the creditors who are entitled to get the distributions.
18              MR. WESTBROOK: Correct, Your Honor.
19              THE COURT: And they have to prove that they're
20   entitled to get the distribution.  So they have to do it at
21   one place or another.  And that's the point we keep, keep
22   trying not to focus on.  We either have to do it now, or we
23   have to do it later, but we have to do it sometime.
24              MR. WESTBROOK: Well that's why the courts look at
25   the class action device, because in the case of small claims,

1   and certainly unknown claimants, the courts have said, and

2   class action has become a much more favored device in the

3   bankruptcy, certainly since Judge Easterbrook had his

4   landmark opinion in the <u>American Reserve</u> case, where he said,

5   if, as we think - - speaking for himself, Judge Posner, and a

6   District Judge, so we have three pretty good minds - - if, as

7   we think, the cost of information lead many legitimate

8   claimants not to file on their own, then the class devise is

9   superior.  In either case, the Bankruptcy Court learns who is

10  interested in recovery.  Similarly, Your Honor, the 11th

11  Circuit in the <u>Charter</u> case said this - -

12          THE COURT: I understand that.  My, I have a really

13  simple question.  What information do you need?  That's what

14  I'm trying to figure out.  In order to define the universe,

15  and figure out how to settle the claims, what information do

16  you need?

17          MR. WESTBROOK: In 30 to 60 days, with experts on

18  both sides working on the same data, they could probably

19  reach agreement within a few thousand homes as to how many

20  homes are probably out there with Zonolite

21          THE COURT: So you need to know the number of homes

22  with Zonolite.

23          MR. WESTBROOK: That, and that is the number, yeah.

24  The number of homes that still exist with Zonolite.  Yes,

25  Your Honor.

1            THE COURT: And that's all you need to know.

2            MR. WESTBROOK: Well, we know the - - you know,

3    you're not going to know for a particular home the exact

4    square footage, but you have an average installation done by

5    the number of bags sold, the coverage per bag, and you know

6    the average size.

7            THE COURT: Okay.  So, I'm just not, hypothetically,

8    because I'm just making this out of whole cloth, okay.

9    Hypothetically, there are 10 thousand homes that still exist

10   with ZAI.  Okay?  And now I know that because I've gone

11   through the mediation process, and that's the number

12   everybody's agreed to.  So I've got 10 thousand homes with

13   ZAI.  Now what do I do?

14           MR. WESTBROOK: If you want to resolve the case?

15           THE COURT: Yes.

16           MR. WESTBROOK: You say, well we know the average

17   cost of remediation from data that we've gotten is so much a

18   square foot.

19           THE COURT: Okay.  And what is that average cost?

20           MR. WESTBROOK: It can be - - do you want the

21   number, Your Honor?

22           THE COURT: Yes.

23           MR. WESTBROOK: Let's say for today that it's $5 a

24   square foot.

25           THE COURT: Is that a real number, or - -

1            MR. WESTBROOK: I think that's in the ballpark, Your

2     Honor.   But I haven't looked at that particular number in a

3     while.

4            THE COURT: Okay.

5            MR. WESTBROOK: All right.  So then you apply that

6     to the average installation times the number of

7     installations, and you have a number.  But then you have to

8     discount that number for the pace of expected removals.  And

9     for that, the experts have data on the pace of remodeling and

10    renovation where I think on Your Honor's order, remodeling

11    and renovation is the most likely time that you're going to

12    have extreme fiber release.  There are construction data on

13    the pace of remodeling and renovation.  So you look at that,

14    and you see by the years going down the road how many claims

15    are then likely to, if you want to say ripen, or manifest

16    themselves.  How many of those would be per year.

17           THE COURT: Okay.

18           MR. WESTBROOK: And then from that, you take that

19    and multiply that by the number of homes, and you discount

20    those numbers to present value.  That would tell you, if

21    Grace paid 100¢ on the dollar, what it would pay for those

22    remediations.  And then of course the bargaining begins.  You

23    know, they say they want to pay 2¢ on the dollar, and we want

24    98¢.

25           THE COURT: Okay.  So from your perspective, and

1     from Grace's perspective, apparently - - from Grace's

2     perspective, I don't know that it's the number of homes, it's

3     the number of claimants who are going to file claims.  But

4     I'll assume that for the moment, you're talking the same

5     things, just in different language.  So you both need to know

6     the number of claimants.  That's the first thing.  Who's

7     going to file claims.  Because even though what you're

8     telling me is you need to know the number of homes that are

9     out there, that doesn't mean that everybody who has a home

10    with ZAI is going to file a claim.  Or, at some point, even

11    if there's a class certification, be represented by the

12    class.

13          MR. WESTBROOK: Well if they are within the class

14    definition, that's the big difference, Your Honor.  If

15    they're within the class definition, then they're included in

16    the, quote, "settlement", unquote.  If they're not within

17    the, if there's no class, and they haven't encountered

18    renovation or demolition, so their claims haven't ripened or

19    manifested themselves, then they have no incentive to come in

20    and make a claim, and under Your Honor's order, they may not

21    have a claim right now.  And they can't be barred.

22          THE COURT: But why would they, why would they have

23    no incentive to come in a make claim if the notice is clear

24    that if you don't present a claim then when the Debtor or the

25    Committee, or whoever, files a plan, and it's confirmed, you

1    won't share in whatever distribution goes out to people who
2    have claims.

3         MR. WESTBROOK: Well Your Honor, theoretically the
4    notice, the notice can say that you should file a claim, but
5    if under state law from which the authority derives, if under
6    state law there is no claim until, for instance, it's
7    discovered under the accrual rule, then you don't have a
8    claim that can be discharged in the bankruptcy.

9         THE COURT: No, the issue that's, the issue I
10   thought we just agreed was if we sent out a notice that says,
11   if you own a home that has ZAI in it, file this claim.
12   Because otherwise, you're not, at some point, going to share
13   in this distribution.  The Debtor is trying to estimate what
14   it needs to put aside to resolve your claim.  So we need to
15   know if you have a claim.  So forget accrual rules.  I don't
16   care whether it's done by class certification, by notice, by,
17   I don't care what form, what label you choose to put on it.
18   I want to try to figure out who the universe of people are so
19   that both, everybody who's entitled to be paid can be paid,
20   whether it's now or ten years from now.  And the Debtor knows
21   what the universe is, so the Debtor knows how much money has
22   to come out of its pocket in order to resolve the claims.
23   Which I think is what everybody else is trying to figure out
24   here.  So that's what I'm asking.  You say you need to know
25   the number of homes.  You can estimate the square foot,

63

1    footage, you can estimate the remediation cost, and then the
2    bargaining can start.

3              MR. WESTBROOK: Correct, Your Honor.

4              THE COURT: Mr. Bernick, I think you're saying
5    essentially the same thing.

6              MR. BERNICK: If only.  In a lot of ways, we are.
7    In the sense that we have to get to a claimant population.
8    There's no, there's no, if, whether it's a class litigation,
9    a class settlement, bar date, whatever, nobody gets dollars
10   unless they show up and they say, we are entitled to dollars.
11             THE COURT: Right.

12             MR. BERNICK: So that's what it ultimately turns on.
13   And then the question is, well how do you get there?  And the
14   problem is that first of all, if you embark upon a process
15   where you don't actually have those people come into the
16   door, even if you could calculate their number with
17   certainty, you still have got a problem, because you don't
18   know who is going to vote.  We need the people to give notice
19   so that we know that they can come in and cast a vote.

20             THE COURT: Well the class agent, if it's a class
21   certification, would vote, but that doesn't solve the
22   problem.

23             MR. BERNICK: Well that doesn't solve the problem.
24   And the second thing is that we don't know this information
25   with certainty, and we can't begin to even approximate it,

1     with any degree at all - - all these, this whole idea that

2     we're going to have experts, that's been out there for, ever

3     since this case began.  It was on the basis of that that at

4     the beginning of the case, instead of saying that they were

5     tail, Mr. Lockwood was fond of saying they're the 800 pound

6     gorilla in the room.  And the reason that that was so was not

7     necessarily that their claims really had validity, it was

8     that they could say, oh, well there are 10 million of them.

9              THE COURT: Well - -

10             MR. BERNICK: And if there are 10 million of them,

11    at $5 a - -

12             THE COURT: Can we go back to the basics?  Otherwise

13    we're not going to get - -

14             MR. BERNICK: Well but - -

15             THE COURT:  - - through today, and frankly I'm

16    getting really tired.  I've been listening to arguments since

17    8:30 this morning, and I really need to focus on the basics.

18             MR. BERNICK: Well, I'm sorry, Your Honor.

19             THE COURT: Okay.

20             MR. BERNICK: The, so - -

21             THE COURT: What is it that the Debtor - -

22             MR. BERNICK: We need - -

23             THE COURT:  - - needs to know.

24             MR. BERNICK: We need to know who is a claimant.

25    And we cannot determine that by simply having experts come in

1    and provide estimates of how much got sold, how much per

2    home, how many are still likely out there.  That is totally

3    and utterly based upon speculation.  That's another way of

4    saying if you sold X amount of asbestos, total, well you must

5    have built so many buildings, and you must, therefore, have

6    caused a certain number of injuries.

7                 THE COURT:  I - -

8                 MR. BERNICK: It's a statistical model, Your Honor.

9                 THE COURT: I understand your perspective and the

10   problem.  Let's just focus on the basics.  My question is

11   what do you need to know?  You need to know the number of

12   claimants, who is a claimant.  What else do you need to know?

13                 MR. BERNICK: I think that if we need to know who

14   the claimants are, and I think that. . .(microphone not

15   recording). . .we asked on the form, literally, the address,

16   approximate date it was constructed, ZAI was installed.  Is

17   the building used for residential, commercial, or other

18   purposes?  And then it just says, check, check here if you

19   seek funds to have the ZAI removed.  If you seek

20   reimbursement for already completed removal, compensation for

21   diminution in value, other damages.  They're just checkmarks.

22   The amount of the claim, and then any documents that they

23   actually have in their control.  That's it.  It's all on one

24   piece of paper.  And with this, I mean, really the most

25   important part of this is people actually show up and can

1    demonstrate that they've got ZAI in their homes.  That's,

2    that's the big deal.  This other stuff is important, but the

3    big deal is literally what is on this piece of paper.  That's

4    it.  Which they would have to do, as Your Honor has

5    recognized, if they are going to get a recovery anyhow.  You

6    don't just - - yes.

7            THE COURT: Okay.  So I take it it's important to

8    both sides to know whether if somebody is identifying an

9    address that has ZAI in it, whether it has already been

10   remediated, whether it is to be remediated, because the proof

11   of claim form says, are you claiming that you've already

12   remediated, essentially, because it's saying are you claiming

13   damages for remediation already done or to be done.  So you

14   want to know that information?

15           MR. BERNICK: Yeah.  That's what we need.

16           THE COURT: All right.  And then is there a place

17   for a claim amount to be stated?

18           MR. BERNICK: Yes, just - -

19           THE COURT: Or does - -

20           MR. BERNICK: It just says, literally - - can I just

21   hand this up to the Court?

22           THE COURT: Yes, please.  Thank you.  All right.  It

23   does say total amount of ZAI claim in US currency.  I guess

24   the question is, is that relevant?

25           MR. BERNICK: I, I think that, I think that it, it

1    may be relevant in the sense that if somebody actually has

2    done the remediation, that they're able to supply that

3    information.  If they haven't done the remediation, and it's

4    just a number, it probably isn't very relevant.  It's not

5    very probative of very much.

6           THE COURT: Well, and that's what I'm concerned

7    about.  What I don't want to see happen is information on a

8    proof of claim form that is then going to generate massive

9    numbers of objections because somebody will put here, for

10   example, I claim $10 million as the amount of my ZAI claim,

11   because I have ZAI in my attic and I haven't remediated.  So

12   - -

13          MR. BERNICK: That's fine.

14          THE COURT: So - -

15          MR. BERNICK: I mean, Your Honor, we, we can easily

16   do without that, provided that if they have remediation, they

17   provide us with, you know, whatever bills they have that this

18   - - the purpose of this, Your Honor, to be clear, in

19   connection with the PIQ's, personal injury PIQ's, we are very

20   focused on a lot of very detailed information, and in

21   connection with the property damage PIQ's, we were as well,

22   or PDQ's, we were as well, and we actually used that

23   information to, to seek to disallow claims.  The exercise

24   here, for this purpose, is in fact to give us information on

25   the basis of which we can understand more of the claiming

1    population.  Would I completely dismiss the idea of ever

2    using it for any purpose in litigation?  No.  But it doesn't

3    require nearly the same level of detail as where you're

4    dealing with a commercial property that's got all kinds of

5    remediation costs.

6            THE COURT:  Well, it would seem to me that if, you

7    know, if all parties want some indication of what the actual

8    remediation costs were, that in fact, if somebody's saying,

9    we removed it already, and they want to support what that

10   claim is, they could state what the amount of that claim is

11   and attach the supporting documents if they have them.  But

12   otherwise, if it's something that's to be done in the future,

13   frankly, I think it's going to be irrelevant.

14           MR. BERNICK:  I agree.  I agree.  The purpose of

15   this form is to find out what information they already have.

16   And we're happy, we're happy to, to say that.  This is not

17   the same kind of process that we had to go through with the

18   traditional PD claims.

19           THE COURT:  Mr. Westbrook and Mr. Scott, it seems to

20   me the type of information that you're looking for is

21   essentially the same type of information that's on this form.

22   Now it, this may be a little bit more extensive - - Mona,

23   would you give this back to Mr. Bernick, please?  So I'm not

24   sure what we're really arguing about.  Because it seems to me

25   that you ought to get some kind of notice out.  We ought to

1    get some kind of notice coming back in.  And then I ought to

2    send you to somebody who can lock you in a room with your

3    toothbrushes until you can get the rest of this resolved.

4         MR. WESTBROOK: Your Honor, since we're here on a

5    status conference today, what we would like to do, Your

6    Honor, is if the Court is considering a bar date notice, that

7    we be permitted to brief to the Court the utility and

8    efficiency of entertaining the class action issue before it

9    goes out.  Because once it goes out, you know, you can't

10   unscramble those eggs.  And we'll do it simultaneously with

11   whatever schedule we have on the bar date.  With respect to

12   what information we need, Your Honor, we have provided

13   information to Grace to identify what we believe is the

14   universe of installations, and the information on the

15   remodeling, removal, and on demolitions.  Grace has not

16   retained an expert on that.  That's what I was getting to,

17   Your Honor, and Your Honor was alluding to.  You want to know

18   what the universe of claims is, not who sees a particular

19   notice in a newspaper and responds.  That's all you're going

20   to know when responses come back into that, because these are

21   largely unknown creditors who will not be individually

22   notified, and many of whom, a vast majority of whom, are

23   probably never going to see a newspaper article, a newspaper

24   notice somewhere, and we'd like to brief to the Court that

25   those are the circumstances in which numerous courts have

1    said the court shall take a careful look at the class action

2    device before we get into - -

3        THE COURT: Okay.  But Mr. Westbrook I've already

4    said, I don't, right here, sitting here right now, for

5    purposes of this discussion and status conference only, I'm

6    not making rulings.  I don't care what the format is.  So

7    let's say it goes out as a class certification notice.  The

8    reality is those same people are still not known, they're

9    still only going to get the same publication notice, they're

10   still not going to read the same newspapers that they weren't

11   going to read if the Debtor put the notice in, instead of the

12   class certification notice that went out.  So you've got

13   exactly the same issues.

14       MR. WESTBROOK: Except, Your Honor, under our

15   proposal, which I won't discuss in any more detail, under our

16   proposal, of which I requested mediation, we have a way to

17   protect Grace, so it won't be paying for people who don't

18   have claims, and a way to protect those folks who never see

19   this advertisement in the newspaper, and resolve this problem

20   for Grace and for ZAI.  And that's why I thought it would be

21   of some benefit.  Grace doesn't want to mediate.  Unless the

22   Court orders them to, it can't mediate.  But if Grace doesn't

23   want to mediate, but we thought it would be of some benefit

24   to take a look at that, that avenue.  Because they're sending

25   out a notice to people who have $10 thousand claims in

1    Pocatello, Idaho, and asking them to send back a form.  First
2    of all, they go to a lawyer to answer that, and what's that
3    going to do?  Lawyers aren't going to touch a claim for five
4    or $10 thousand, Your Honor.  These people are going to be
5    cast out there, and we're going to have problems with what
6    does the response mean?

7           THE COURT: But we have exactly the same problem
8    with the class certification.  All right.  Hypothetically I
9    have now certified a nationwide class of ZAI homeowners.
10   Okay?  You represent that class.  And now you come in and
11   say, okay, Judge, here's the notice I want to send out.
12   You're going to do publication, because you don't have a clue
13   who all of these ZAI homeowners are any more than the Debtor
14   does.  So we're going to go out in exactly the same
15   publications.  You know, you're going to use the veterans
16   journals, you're going to use the USA Todays, you're going to
17   use all of the things that the typical homeowner, that you
18   think the typical homeowner, based on your experts, is going
19   to reach.

20          MR. WESTBROOK: Vermiculite Life, magazines like
21   that.

22          THE COURT: Exactly.  They all read those.  Okay.
23   And maybe in the, you know, maybe in certain areas you'll
24   provide actual notice.  You know, maybe you'll stuff
25   mailboxes.  I don't know.  Maybe that will happen.  So there

1    may be some combination of notices that will go out as there

2    is in every case.  But you're going to have exactly the same

3    problem.  And so now, and let's assume for purposes of this

4    discussion that it is a non-opt out class, because I don't

5    really see, for bankruptcy purposes how you can have an opt

6    out class at the moment, so let's just assume it's a non-opt

7    out class.

8              MR. WESTBROOK: Right.

9              THE COURT:  So now you have a class of creditors

10   that you are representing that's basically the equivalent of

11   a class in the plan, that you represent, but it's not a

12   futures class, because it's a current class.  You've got

13   unknown, current creditors that you represent.  You've got

14   all this due process concern, legitimately, that you've got

15   to satisfy.  You go out with your publication notice.  You

16   issue the same type of form, basically, that Mr. Bernick just

17   passed up, that tells people that they've got to file that

18   information with your claims agent, because they do, in order

19   to share in the distribution.  The only difference is now

20   maybe you're going to say, and oh by the way, the Judge has

21   approved a settlement that says that if you file a notice

22   that says your home was built from, you know, 1963 to 1950

23   you're entitled to 25¢ per square foot, and if it was built

24   from 1963 to 1970, you're entitled to 28¢ per square foot.

25   Whatever it's going to say.  And you'll get back your

1   universe of claims, the same as the Debtor would, and they'll

2   be paid their same distribution by the claims agent.  What's

3   different?

4           MR. WESTBROOK: Well Your Honor, what's different

5   is, of course, in the class action if people don't respond to

6   that notice, they're in the class.  They don't get a payment

7   yet.  But the nature of ZAI, Your Honor, is not that all

8   these people will come in en mass looking for their 8¢ on the

9   dollar.  The nature of ZAI is it is discovered by people as

10  they remodel, as they renovate.  A class action settlement,

11  theoretically, could provide for a facility that has people

12  two years, three years, five years down the road, the problem

13  manifests itself, then they contact the claims agent and get,

14  get some payment.  Grace is out of it.

15          THE COURT: But a trust could do the same thing in a

16  plan.  I mean, you know - -

17          MR. WESTBROOK: Your Honor - -

18          THE COURT:  - - you could set up a claims agent and

19  a plan to do the same thing.

20          MR. WESTBROOK: Your Honor, a trust, a trust could

21  do that, except Mr. Bernick's idea is that if people don't

22  send in that form, they're out for good.  They never ever can

23  make a claim.  Under our proposal, in the class, we take on

24  that responsibility.  The class settlement takes care of

25  those people in futuro, as their claims ripen.  Grace still

1    is done, but claimants who may not, in Pocatello, Idaho, see

2    Vermiculite Life, but three years from now the contractor

3    hits into the ceiling, and it comes pouring in his head, and

4    says, you've got that vermiculite stuff there.  What about

5    it?  He says, well contact these people.  There's a remedy

6    for those folks.

7              MR. BERNICK: Your Honor, if I could just - - stay

8    here - -

9              MR. WESTBROOK: No, no.

10             MR. BERNICK: No, no.  Just stay here.  Stay here.

11             MR. WESTBROOK: I'm happy to stay here.

12             MR. BERNICK: We're coming down to the, to the nub.

13   The, the kind of thing that Mr. Westbrook is talking about is

14   that you don't find out who the claimants are, and the

15   immediate benefit of that for the purposes of class

16   settlement leverage is they're able to argue big numbers.  So

17   if we get them the big numbers. . .(microphone not

18   recording), I actually believe that would be totally contrary

19   to the interest of resolution, because Grace is not going to

20   sit there and accept a big number on the basis of a typical

21   extrapolation.  This is just not real.  So that's the

22   immediate impact.  The second impact is you can't do anything

23   that he's talking about using Rule 23.  There's no such thing

24   as a non-opt out class under Rule 23.  Where you're talking

25   about money going out the door.  It just doesn't exist.

1    (B)(2), which is for injunctive relief, is not really

2    available because the whole purpose of that is to avoid

3    inconsistent results.  The idea that you can have a

4    settlement class that can do all this, that also is no good

5    anymore.  In Ampkim (phonetic) & Ortiz, the Supreme Court

6    specifically said, you can't have a settlement class where

7    you don't have a litigation class.  It's the whole idea that

8    you need class action in order to accomplish this, which

9    essentially this is a fluid fund recovery.  Big pot of money.

10   We don't know who's going to come in.  They'll come in, and

11   as they come we'll pay them out.  Is not accomplishable under

12   Rule 23.  It just cannot be done.  Ampkim & Ortiz completely

13   destroyed the idea of settlement classes that are not, that

14   are not certifiable under litigation class rules.  So can you

15   do it in the context of a plan?  Your Honor is absolutely

16   correct.  In the context of a plan, you can accomplish more.

17   You can have fluid recovery in the context of a plan.  But

18   for a plan, you can't pay out the money until you have a

19   claimant.  You can't do it.  You just, you're depriving the

20   estate of funds that are available to other constituencies

21   under the Code.  So while it's nice to think about going back

22   to the pre Ampkim & Ortiz days, where you could do all this

23   imaginative stuff through settlement class actions, and you

24   have fluid recovery, those days are gone.  And not only are

25   they gone for good reason of the law, here they would be

```
1    completely antithetical to resolving the case.  The fastest
2    way to get this case resolved is to eliminate the speculation
3    of how many claimants there are.  Let's just find out.  And
4    while it may be true that some people don't actually get the
5    notice, and their claims are therefore not recognized, that
6    is the unfortunate fact of how the, how the Code works.  If
7    you want to get money from an estate, you have to come
8    forward, and have them come forward now instead of later.
9              THE COURT: But these are all pre-petition claims.
10   I mean, that's the thing.  I recognize that people may not
11   always appreciate that they have a claim, but that's no
12   different in this case from any other case.  That's no
13   different, for example, in - - well, I was going to say in
14   Dow Corning, but that's a little different, because most
15   people in Dow Corning knew that they had a claim.  That was a
16   different circumstance.  It's difficult outside the mass tort
17   context, probably, to figure out something that's equivalent
18   to this.  But, you know, it's, I guess it's like buying a
19   house, and discovery a latent defect later.  I mean, that
20   doesn't mean that you don't have a claim at some point in
21   time, period.  You have the claim.
22             MR. BERNICK: And we effectively adopted their
23   notice program in our proposal for the ZAI notice program.
24   We basically said, okay, you know, we'll go do all those
25   different things.  So the full extent- -
```

1           THE COURT: Well - -

2           MR. BERNICK:  - - of notice under due process is

3    going to be there.

4           THE COURT: All right.  I'm going to, I'm going to

5    hate myself when I raise this word, but I'm going to raise it

6    anyway, because this is a status conference, and I'm, like

7    you, I've beaten this horse to the point where it's almost

8    dead.  But this will make it dead.  What about the

9    possibility of sending out some sort of a notice for - -

10   nobody has any tomatoes, right?  I want to clarify that on

11   this record first.

12          MR. BERNICK: Well, we're not going to tell you - -

13          THE COURT: For purposes of trying to figure out

14   what a cap, and I will use the word cap, for a plan funding

15   ought to be for the ZAI claims, I will view this as the

16   equivalent of estimation, without having to estimate any

17   claims.  But nonetheless, it can serve, if we find out what

18   the universe of filed claims are, as the basis to negotiate

19   whatever this pot will have to be for purposes of the plan.

20   Then to satisfy the ZAI claimants, this notice form will

21   simply be, unless anybody else, I guess, objects, ignored.

22   And the plan distribution procedures will have to be

23   negotiated by the parties, but people can file their claims

24   against this plan distribution procedure like they would

25   under a TDP, essentially.  The Debtor can be basically out of

1    the mix.  Whoever is the designated agent for this class can

2    take over the responsibility for handling those claims.  They

3    can work the way a TDP would work, but when that entity runs

4    out of money, if it does, that's it.

5           MR. BERNICK: Yeah, you know, Your Honor, the,

6    that's a very interesting proposal.  I think we would like to

7    think about it.  I know that Mr. Westbrook would like to

8    think about it.  But that certainly accomplishes a very

9    important first phase.  Obviously, under those circumstances,

10   there is a key thing that we would be giving up.

11          THE COURT: Yes.

12          MR. BERNICK: And that is - -

13          THE COURT: So would they.

14          MR. BERNICK: Well I don't really know.  If they can

15   file their claims at any time against the plan, then what

16   happens if we can't reach resolution, and we then still have

17   the problem of what to do with these claims - -

18          THE COURT: Oh, well the, I mean, this, whatever

19   this negotiated agreement is would be off.  I mean, the

20   purpose for getting this bar date notice out now would be so

21   that all of you can find out what the universe of known

22   claims is.  Who are going to file claims now.

23          MR. BERNICK: Well I think it's a very fair

24   proposal.  I think we'd have to think about that and - - I

25   mean, it certainly, it is right exactly in the sense where

1    the Debtor is.  The Debtor believes that if we can find out

2    this population of claimants, it is a very important step to

3    try and reach a consensual resolution.  We, that's what we

4    want.  So, but we'd have to think about it, and maybe we can

5    have a discussion with Mr. Westbrook and Mr. Scott and see

6    what - -

7              MR. WESTBROOK: Your Honor, I'm glad to do that with

8    Mr. Bernick.  And it may be helpful if the Court is so

9    inclined to do that, that whatever, whatever person is going

10   to review this information, that we also, and I think Grace

11   obviously have a chance to, also give that person the data on

12   the sales and the installation, so there's some indication

13   about how many people are likely out there, but didn't send

14   the notice back in.  So that we can have that data in the mix

15   as well.

16             THE COURT: Well, this is only a first step.  You

17   folks have to negotiate the plan.  I don't do plan

18   negotiations.  I rule on the plans.  All I'm saying is I, we

19   need to get a notice out.  And I'm trying to figure out a way

20   where you folks can get onto the same page for getting out a

21   notice that alerts people that they may have a claim, that

22   they need to file it, but without the prejudicial impact that

23   the ZAI lawyers are concerned about, but getting the Debtor

24   the information it needs, which is really how much money do I

25   have to come up with to fund this plan.  I mean, that's

1    really what the Debtor needs to know.  And if it's a pot

2    plan, then the Debtor doesn't have an interest in who's going

3    to get that pot, once that pot has been negotiated and agreed

4    on.  I don't know what the other constituents are going to

5    say, but nonetheless, I think you all need to talk to see if

6    some notice provision can be worked out, so that you can all

7    know what the ZAI claimant pool is going to be.  This is only

8    a status conference.  I'm not making any rulings.  I'm only

9    throwing something out to see whether or not maybe it can get

10   you past go.

11           MR. WESTBROOK: Your Honor, we will discuss it with

12   Mr. Bernick.  I know it's late, you have other things on the

13   agenda.  I'm going to sit down.

14           THE COURT: All right.  I only heard from those

15   folks.  Mr. Baena, does the Property Damage Committee want to

16   weigh in on - -

17           MR. BAENA: (Microphone not recording.)  Scott Baena

18   on behalf of the Property Damage Committee.  Judge, we're

19   happy to participate in that kind of a dialog.  It is a

20   thorny question.  I appreciate the Court's struggle with a

21   solution.  Somebody's going to be disappointed, I'm sure.

22           THE COURT: Yeah.

23           MR. BAENA: But the conversation is worth having.

24           THE COURT: All right.

25           MR. BAENA: I will say, as a matter of law, though,