UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: W.R. GRACE & CO., et al., ) | Chapter 11 |
| ) | |
| ) | Case NO. 01-01139 (JKF) |
| DEBTORS. ) | (Jointly Administered) |
| ) | |

## ZAI CLAIMANTS' MEMORANDUM IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY EXPERT WITNESS SHOULD NOT BE APPOINTED

### I. INTRODUCTION

The principal function of bankruptcy law is to determine and implement in a single collective proceeding the entitlements of all concerned. *Butner v. United States*, 440 U.S. 48 (1979); *In re American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988). Proofs of claim customarily play a defining role in identifying, collecting, and quantifying a debtor's liabilities. W.R. Grace, in this regard, proposes an individual ZAI proof of claim process and bar date, saying: "The Debtor believes that if we can find out this population of [ZAI] claimants, it is a very important step to try and reach a consensual resolution." February 25, 2008 Transcript at 79.

Such a bar date notice, however, cannot serve its traditional functions where actual or potential creditors (owing to the deceptive practices of the debtor) do not recognize themselves as potential creditors. Issuance of a bar date under such circumstances, indeed, would serve to reward the debtor with additional returns on its original business fraud.

These circumstances, however, do not prevent the Court from achieving the Debtor's ascribed goal of ascertaining the population of ZAI claimants for purposes of promoting a consensual resolution. Court appointment of a neutral expert charged with the responsibilities to examine

-1-

readily available W.R. Grace business records and related governmental data and to conduct appropriate surveys, as necessary, would help bring into focus the scope and character of W.R. Grace's ZAI liabilities and thereby advance the goal of consensual resolution to this aged bankruptcy.

## II. ARGUMENT

### A. A Bar Date Notice Directed at the Unknowing Cannot Correctly Gauge W. R. Grace's ZAI Liabilities or Provide Foundation for Plan Provisions that Accommodate W.R. Grace's ZAI Liabilities.

Zonolite Attic Insulation claims contrast sharply with traditional asbestos property damage claims in that ZAI claims involve a product that has long been viewed as having no connection to asbestos. The disconnect is the result of the Debtors' own doing. W.R. Grace advertised ZAI, throughout its commercial life, as a friendly substance composed of 100% vermiculite. While traditional commercial asbestos-containing products typically disclosed asbestos as a component, W. R. Grace purposefully distanced ZAI from asbestos or the property damage and health related claims that arise out of asbestos exposure.

W.R. Grace made strenuous efforts to maintain this deception for decades. W. R. Grace promoted ZAI as a "do-it-yourself" insulation composed of "100% vermiculite," never disclosing its asbestos contamination. Knowing that its product was contaminated with asbestos and that disturbance of the product involved exposure to high levels of airborne asbestos, W.R. Grace prepared, but then never released, a product label warning the consuming public that ZAI was contaminated with asbestos. Ongoing consumer ignorance was key to W.R. Grace's sales since, in W.R. Grace's words: "It is believed that product labeling would have a serious, adverse, and irreversible effect upon consumer acceptance of our product." *See* Exhibit A attached to the Declaration of Darrell W. Scott ("Scott Declaration") filed in support hereof.

By 1977, W.R. Grace had gone so far as to draft a press release announcing that, "The company was sufficiently concerned about the entire issue of asbestos and associated health hazards to discontinue the product." *See* Exibit B to Scott Declaration. That press release, too, never saw the light of public disclosure.

W.R. Grace's success at fostering public unawareness was so complete that W.R. Grace's own long-engaged asbestos expert, Morton Corn, Ph.D., a former head of OSHA, testified that he had not heard of the asbestos vermiculite issue or of ZAI until he was first contacted by defense counsel in the *Barbanti v. W.R. Grace* class action in June of 2000. See Transcript of Deposition of Morton Corn, Ph.D., taken September 15, 2000, at p. 33 (Exhibit C to Scott Declaration).

Scientifically conducted surveys of homeowners in Washington State evidence the continuing success of W.R. Grace's decades-long cover up, even in the face of recent limited countervailing governmental pronouncements. Roughly nine out of ten homeowners have not received information from any source disclosing to them ZAI's capacity to release airborne asbestos. Most homeowners would not recognize ZAI if they encountered it in their home. *See* GMA Research Corporation, Washington State Survey, Summary Report, October 2000, Exhibit D to Scott Declaration. The majority of homeowners (68%), in fact, are unaware of the type of insulation they have in their attic. *See* Robinson Washington State Awareness Study Executive Summary Report, September 2000, at p. 7, Exhibit E to Scott Declaration.

Some "knowing" ZAI homeowners, certainly, may be expected to see and respond to a published ZAI bar date notice, were one issued. Responses to a bar date notice, however, cannot ascertain the population of individuals having claims against W.R. Grace, or who may be expected to assert their legitimate claims when discovered. For the same reason, such a process cannot meaningfully aid in determining W.R. Grace's ZAI liabilities, and indeed, would likely confound any

genuine effort to gauge those liabilities. Having deceived homeowners for decades, a bar date notice would only serve to reward Grace's conduct by closing the door on the multitude who will not see the notice, not understand its applicability or effect, and who will not encounter ZAI until remodeling sometime in the future. This is why ZAI claimants have urged the Court to follow the ZAI opinion roadmap by addressing class certification, which will protect unknowing absent homeowners, before addressing a bar date. If determination of W. R. Grace's true potential liability is a central objective, then the logical tool to use is a neutral Court-appointed expert to examine W.R. Grace's comprehensive production and sales records and other available data and conduct appropriate home or homeowner surveys, if needed.

**B.    A Neutral Court Appointed Expert Tasked With Estimating W.R. Grace's ZAI Liabilities Would Advance W.R. Grace's Reorganization.**

Substantial and reliable sources of data are available from which the Court and other creditors, may, through a Court-appointed expert, meaningfully gauge W.R. Grace's ZAI liabilities and, thereafter, provide for their treatment.

W.R. Grace's readily available business records, for example, include annual construction division business plans pertaining to ZAI, periodically generated production records regarding ZAI, accumulated ZAI sales records, average sales per home, as well as ZAI distribution records. Such records afford significant insights into the numbers of homes that were fitted with ZAI, the time periods during which ZAI was purchased, the volumes typically installed, and even the geographical distribution of ZAI homes. *See* exemplar records, Exhibit F to Scott Declaration. These records permit a reasonable estimation of the number of existing homes in which ZAI is installed.

Similarly, studies and data compilations prepared by federal and state agencies supply detailed information regarding numbers of existing residential homes, structure ages, typical square

-4-

footages, structure life cycles, and data concerning residential improvements and repair activities. These sources provide data bearing on the number of remaining ZAI homes, the rates at which ZAI homes would be taken out of the housing stock, and the frequency with which such homes would be subject to renovation and repair work involving disturbance of ZAI going forward. *See* exemplar data showing numbers of residences, Exhibit G to Scott Declaration.

As suggested by survey data referenced earlier, surveys of homeowners and of ZAI homes would also potentially yield valuable data bearing on W.R. Grace's ZAI liabilities and on appropriate Plan provisions to deal with those liabilities. Knowing with reasonable certainty the range of ZAI homes remaining and the pace of remodeling/renovation/demolition activities, the parties can meaningfully negotiate funding of a facility to address ZAI homeowner education and removal assistance. A bar date notice at this time would merely close the door on the unwary, while a facility will provide for an orderly resolution of remediation problems that will unfold over the coming decade.

Federal Rule of Evidence 706 governs the appointment and compensation of court-appointed expert witnesses. That rule provides:

> (a) **Appointment.** The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own. . . . A witness so appointed shall be informed of the witness' duties by the court in writing. . . . A witness so appointed shall advise the parties of the witness' findings, if any. . . .

The question of appointment of a court expert, thus, is resolved at a hearing on an order to show cause. Once a court determines that a court-appointed expert is advisable, the next question becomes who to appoint. The Court is given broad discretion to fashion a procedure for selecting experts, including requesting that various constituencies submit nominations. See *In re Philadelphia*

*Mortg. Trust*, 930 F.2d 306 (3d Cir. 1991); 29 Charles Alan Wright & Victor James Gold, FEDERAL PRACTICE AND PROCEDURE EVIDENCE § 6305 (2007).

The designation of a Court-appointed expert under Fed. R. Evid. 706, which contemplates a neutral expert, advances the truth seeking mission of the Court by overcoming problems of shopping for experts, the venality of some experts, and the understandable reluctance of some reputable experts who would be of great service to the Court otherwise involving themselves in litigation. *See* Advisory Committee Notes, Fed. R. Evid. 706. Perhaps for these reasons, the trend is increasingly to provide for the use of court-appointed experts. Advisory Committee Notes, Fed. R. Evid. 706. Such an appointment here would also serve the Court and the bankruptcy estate by avoiding the substantial expenses to the estate involved in retention of multiple warring experts secured by various bankruptcy constituencies and serving only parochial pecuniary interests.

### III. **CONCLUSION**

For the foregoing reasons, the Court should make provisions for the appointment of an appropriate court-appointed expert witness pursuant to Fed. R. Evid. 706, and make provision for appropriate tasking of that expert as to W.R. Grace's ZAI liabilities.

Dated: March 18, 2008
Wilmington, Delaware                           SULLIVAN · HAZELTINE · ALLINSON LLC

/s/ William D. Sullivan
_____
William D. Sullivan (2820)
Elihu E. Allinson, III (3476)
4 East 8th Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 428-8191

-- and --

-6-

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue
Chronicle Building, Suite 583
Spokane, Washington  99201
Telephone:  (509) 455-3966

-- and --

RICHARDSON, PATRICK, WESTBROOK
 & BRICKMAN, LLC
Edward J. Westbrook
Robert M. Turkewitz
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, South Carolina  29464
Telephone:  (843) 727-6500

*Special Counsel for ZAI Claimants*