## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO.,** *et al.*, | ) | **Case No. 01-1139 (JKF)** |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |

**Objection Deadline: April 9, 2008.**
**Hearing Date: April 21, 2008 at 12:00 pm (ET)**

## DEBTORS' MOTION FOR AN ORDER (A) ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ZONOLITE ATTIC INSULATION CLAIMS, AND (B) APPROVING THE RELATED PROOF OF CLAIM FORM, BAR DATE NOTICES, AND NOTICE PROGRAM

### INTRODUCTION

A bar date for ZAI claims is an important tool for effectively and efficiently resolving the ZAI claims pending in these cases, and is superior to the alternative approaches available to the parties and recently addressed with the Court.

As the Court is aware, the Debtors are on track in terms of resolving the other key claims in these cases. For example, the Debtors have resolved a majority (approx. 95%) of the traditional property damage claims filed against them; the estimation trial related to the asbestos personal injury claims is underway; and most of the non-asbestos claims have been resolved. A bar date substantially contributed in all of those matters.

ZAI is no different, and a bar date will facilitate resolution of the ZAI claims. These cases are mature, and the processes for resolving all other claims are coming to a close. A ZAI bar date will allow the Debtors to (a) identify the population of ZAI Claimants, and (b) communicate directly with them, so as to bring the ZAI claims to a close as well.

Alternative proposals for resolving ZAI claims addressed recently with the Court will not help to resolve the ZAI claims, and actually would frustrate, rather than advance, resolution of the ZAI claims. One proposal was to solicit participation in a non-binding

information request of the putative ZAI Claimants.  However, if claimants fail to cooperate in this information request, or if claims adjudication will need to be undertaken prior to plan confirmation, then a binding bar date will be necessary in any event, and the solicitation will need to be repeated, causing substantial delays and additional costs.

The other proposal that has been suggested for dealing with ZAI claims has been to certify a class and permit the filing of a class claim in lieu of engaging in a true bar date where individuals must come forward.  A class action makes no sense here.  First, class actions are very rarely used in bankruptcy cases, and they become even rarer still in situations where a class is not certified prior to a bankruptcy filing.  Pre-petition certification becomes relevant because if a class action notice campaign was undertaken before a bankruptcy filing, that notice campaign may have already brought class members forward, making a bar date notice process potentially redundant.  Here, there was no pre-petition nationwide certified class related to ZAI claims.  There was only one state class certified, including solely Washington state residents, and the notice program was never implemented.

A class action respecting ZAI claims would also spell immediate delay because if a class is certified, interlocutory appeals likely will follow, class notice will have to be given, opt-out rights will be exercised, and the putative ZAI class claims will then be litigated without knowing who the actual litigants are.  The Debtors are hopeful that these Chapter 11 cases are reaching the end point.  Engaging in a ZAI class certification process which will create such delays so late in the game is not in the best interests of any of the constituencies in these cases.  Moreover, understanding the universe of the ZAI claims is critically important to the resolution of the claims -- knowing the population of the claims will inform plan negotiations, any

2

estimation of the value of Grace's ZAI liability that may be necessary for plan purposes, and the ultimate allowance of any individual ZAI claims.

Furthermore, this is not the case where a class action would provide superior notice to putative claimants. Regardless of whether a notice to claimants is labeled a bar date notice under the Bankruptcy Rules or a class action notice under the Fed. R. Civ. P. 23, "notice requirements are mandated by principle of due process which applies equally to bankruptcy cases and non-bankruptcy cases under our system of jurisprudence." *In re Matter of Chapman*, 265 B.R. 796, 809 (Bankr. N.D. Ill. 2001), *aff'd,* 2002 WL 818300 (N.D. Ill. Apr. 30, 2002) (citing *City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 297 (1953)).

The Debtors' proposed ZAI Bar Date notice program is robust and reasonably calculated to apprise interested parties of their rights and their need to file a claim. The program involves:

- broad national published notice through the use of national paid media (television, print publications and the Internet) and earned media vehicles;

- earned media through a press release sent to major national print and electronic outlets; and

- notice by mail to "do-it-yourself" publications whose subscribers may be ZAI Claimants.

A class action notice program would serve no greater purpose in reaching potential holders of ZAI claims.

Accordingly, for the reasons articulated more fully below, the Debtors seek a binding bar date for ZAI claims, which the Debtors believe will be the most efficient and fair way to resolve the ZAI claims.

3

## RELIEF REQUESTED

The Debtors request an order pursuant to Bankruptcy Rule 3003(c)(2) (i) approving the proof of claim form attached hereto as Exhibit A (the "Zonolite Attic Insulation Proof of Claim" or "ZAI Proof of Claim"); (ii) approving the notices and the publication notice program of the ZAI Bar Date attached hereto at Exhibit B and Exhibit C respectively; and (iii) establishing a bar date by which any person or entity who fails to complete and file a ZAI Proof of Claim shall be forever barred from asserting any claim based on ZAI (a "ZAI Claim")[1] against any of the Debtors, notwithstanding that such person or entity may later discover facts in addition to, or different from, those which the person or entity knows or believes to be true as of the ZAI Bar Date, including, without limitation, that there is ZAI present in a building owned or occupied by such person or entity.

The Debtors request that the ZAI Bar Date be 140 days after entry of the ZAI Bar Date Order, which would also require the Debtors to (i) mail the ZAI Bar Date Notice Package to all known holders of ZAI Claims, their counsel, and any other potential holders of ZAI Claims

---

[1] ZAI Claims are defined in the General Instructions for Completing the ZAI Proof of Claim as claims that relate to the cost of removal, diminution of property value or economic loss allegedly caused by Zonolite Attic Insulation manufactured by the Debtors and installed in buildings that are located in the United States of America. Zonolite Attic Insulation Claims are those claims against, or any debt, obligation or liability of, one or more of the Debtors, creating a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and whether such claim, debt, obligation or liability is in the nature of or sounding in tort, contract, warranty or any other theory of law or equity, relating to or arising by reason of, directly or indirectly, property damage, including, but not limited to, diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, directly or indirectly, by the Zonolite Attic Insulation sold, supplied, produced, specified, selected, distributed or in any way marketed by one of the Debtors -- and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages. Zonolite Attic Insulation is a loose-fill, non-roll vermiculite home attic insulation, which may contain naturally occurring asbestos. It was sold from the 1920/1930s to 1984. Zonolite may have a glittery granular appearance. The granules are shaped like a small nugget and expanded like an accordion and may have a silvery, gold translucent or brownish cast. After years in the attic, however, the granules may darken to black or gray. Zonolite may be found underneath subsequently installed insulation of other types such as rolled fiberglass insulation. ZAI Claims do not include claims regarding property located outside of the United States or any claims relating to personal injury.

4

known to counsel who have actively participated in these proceedings[2] and (ii) publish notice of the ZAI Bar Date within 90 days of the ZAI Bar Date Order. Claimants will then have at least 50 days to return completed material by the ZAI Bar Date.

## BACKGROUND

1.      The Debtors first requested a bar date to cover ZAI Claims and other claims as early as June 2001.[3] In February 2002, the Debtors renewed and revised their request for a bar date to include certain claims such as ZAI Claims, but to exclude asbestos personal injury claims.[4] At that time, counsel for certain ZAI Claimants objected to the Debtors' motion,[5] arguing, *inter alia,* (i) that a class claim would be preferable to the bar date and objection process proposed by the Debtors; and (ii) whatever notice the court approves, if a bar date process is to be employed, homeowners/building owners should be warned of the dangers surrounding ZAI.

2.      This Court held a hearing on Grace's renewed ZAI bar date motion on March 18, 2002. At that hearing, the Court ruled that before addressing the issues of a ZAI bar date and notice program or a ZAI class claim, it would conduct a "science trial" to determine whether ZAI

---

[2]    It is the Debtors' understanding that counsel who have actively participated in these proceedings and who have represented certain ZAI Claimants have also compiled lists of individuals who may have ZAI in their homes, but who are not current clients involved in these proceedings. The Debtors believe that if such address information has been compiled, such individuals should receive actual notice of the ZAI Bar Date. Thus, as part of the relief requested herein, the Debtors request the Court to compel counsel to turn over such lists, if they exist, to the Debtors if the Court decides to grant a bar date on account of ZAI Claims.

[3]    *See* Debtors' Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of Proof of Claim Form, and Approval of Notice Program, dated 6/27/01 [Dkt. No. 586].

[4]    *See* Debtors' Revised Motion As to All Non-Asbestos Claims, Asbestos Property Damage and ZAI Claims For Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and the Notice Program, dated 2/12/02 [Dkt. No. 1665].

[5]    ZAI Claimants' Objection to Debtors' CMO/POC/Bar Date, dated 3/8/02 [Dkt. No. 1781].

is harmful. Such determination would also inform the parties as to what type of notice to send to potential claimants:

> THE COURT: . . . in this issue where there has been no test of the scientific side by way of an adjudication before this bankruptcy was filed, the debtor should know whether it is subject to liability on that score, and so should the creditor. And I think that piece ought to be determined before we alarm a lot of potential people who have Zonolite in their attics that there may or may not be some detriment as it turns out.[6]

3.      To implement the Court's ruling, in April 2002, the Debtors filed 10 individual proofs of claim for certain named plaintiffs in pending state court ZAI class actions in order to obtain jurisdiction over such claimants for the purposes of the science trial. The Court conducted the science trial in mid-September 2003.

4.      In December 2004, the Debtors filed a new request for a ZAI bar date in conjunction with the filing of a chapter 11 plan and their estimation motion.[7] At a hearing on January 21, 2005, the Court indicated ". . . that [ZAI bar date] issue ought to wait until at least the science trial is decided and we see A, whether there is some scientific support for the fact that there's property damage, at all and B, if there is, whether it should be adjudicated in a class format."[8]

5.      On December 14, 2006, the Court issued its ZAI Science Trial Opinion.[9] In its Opinion, the Court determined that the scientific evidence did not demonstrate that the presence

---

[6]    3/18/02 Hrg. Tr. at 87 [Dkt. No. 1912

[7]    Debtors' Supplement to Their Estimation Motion and Request For Related Relief, dated 12/20/2004 [Dkt. No. 7250].

[8]    1/21/05 Hrg. Tr. at 146 [Dkt. No. 7680].

[9]    Memorandum Opinion, dated 12/14/06 [Dkt. No. 14014].

of ZAI in the home creates an unreasonable risk of harm.[10]  More specifically, the Court held

that while there was no dispute that ZAI contains asbestos fibers that can be released if ZAI is

disturbed, such disturbance does not give rise to an unreasonable risk of harm from ZAI.[11]  The

Court further indicated that a status conference would be scheduled to "discuss the form of an

order regarding disposition of the proofs of claim; that is, which are subject to dismissal based

upon the findings herein and what claims, if any, may still remain."[12]

      6.     That status conference was ultimately held on February 25, 2008.  At that time,

the Debtors renewed their request for a bar date for ZAI Claims as opposed to a class action

process.[13]  Debtors urged that the bar date is necessary to identify who is really going to pursue

claims so that the Debtors can know how many claimants there are in order to further formulate a

plan and afford such claimants due process.[14]  ZAI Claimants proposed an alternative approach

whereby they would be permitted to file a class claim on behalf of a certified class under

Bankruptcy Rule 7023, and further, they proposed that key issues respecting the Debtors'

putative ZAI liability be certified to various state courts for resolution.[15]  In response to these

positions, the Court expressed the view that "the next step is you need to know what the numbers

of claims is that everybody is going to face."[16]

---

[10]  *Id.* at 1.

[11]  *Id.* at 51.

[12]  *Id.* at 52-53.

[13]  2/25/08 Hrg. Tr. at 23-24 [Dkt. No. 18233].

[14]  *Id.* at 24.

[15]  *Id.* at 31.

[16]  *Id.* at 42.

91100-001\DOCS_DE:136132.1

7.     The Court further suggested to the parties the idea of setting a non-binding ZAI "bar date" or solicitation for the purpose of facilitating an estimation as to the size of the ZAI Claim population, but allowing ZAI Claimants to file claims for allowance at some later date, even if they did not file a claim in connection with this initial solicitation.[17] For the reasons set forth below, the Debtors respectfully suggest that neither the class claim approach advocated by the ZAI Claimants nor the non-binding bar date suggested by the Court will further the critical needs of this case respecting ZAI Claims.  At this stage in the case, it is vital to determine the size of the ZAI population so that a plan can be formulated which properly provides for these claims.  A binding bar date program is the only way to accomplish that objective.

## ARGUMENT

**A.     A Binding ZAI Bar Date is Necessary To Assist The Plan Process and Help Bring the Cases to a Successful Conclusion.**

8.     While this Court ruled in its ZAI Science Trial Opinion that ZAI does not pose an unreasonable risk of harm, the science trial was limited in its binding effect to the individual building owners whose claims were filed in advance of the trial.  It did not determine the claimant population who might hold ZAI Claims or how ZAI Claims as a group should be treated in a plan of reorganization in light of this Court's ruling in the science trial that ZAI poses no risk of harm.

9.     At this stage in the Grace Chapter 11 Cases, the ZAI Claims are ripe for resolution, and there are three alternatives for addressing the ZAI Claims: settlement negotiations, estimation of the claims, or a formal allowance/disallowance process.  Indeed, because ZAI Claims are property damage claims, both the estimation of Grace's liability for ZAI

---

[17]    *Id.* at 77.

Claims and the ultimate allowance or disallowance of those claims are within the Court's core jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B).

10.     A binding ZAI Claim bar date will inform all three of these critical processes. In terms of settlement negotiations, it will allow the Debtors to communicate in a meaningful way directly with the ZAI Claimants. On the other hand, the proposed alternatives -- a non-binding bar date and a ZAI class action -- will not provide the Debtors with such opportunity, and instead may thwart the Debtors' efforts to settle these claims. In addition, knowing the population of the ZAI Claims will give weight to the parties' respective views as to the magnitude of such claims for any negotiations regarding an estimation of the claims in the aggregate. Moreover, a bar date would be necessary if the Debtors need to adjudicate the claims through a formal allowance/disallowance proceeding.

11.     A binding bar date for ZAI Claims simply is the best way at this point in the Chapter 11 Cases to get such claims resolved in a fair and efficient manner.

**B.    A ZAI Class Action Is Inappropriate.**

12.     Contrary to the arguments advanced by counsel to certain ZAI Claimants, certification of a ZAI class under Bankruptcy Rule 7023 at this time would not serve a useful purpose, and would not accomplish the same results as a binding bar date for holders of individual claims.

13.     At the outset, the law is clear that the ZAI Claimants are not permitted to file a class claim as a matter of right. Rather, a two-step process applies. First, the Court has discretion pursuant to Bankruptcy Rule 9014 to consider the application of Bankruptcy Rule

7023.[18]  In other words, to even warrant consideration of class certification, the Court must

determine whether a ZAI class action "makes sense" and will advance the interests of the

bankruptcy.  The inquiry does not stop there.  Even if claimants can demonstrate that a class

might be an acceptable way to proceed in a particular bankruptcy, the Court must engage in the

second step and consider whether the alleged class claimants also satisfy the requirements of

Fed. R. Civ. P. 23 (applied through Bankruptcy Rule 7023), in the same manner as any other

potential class in a federal court.  Notably, this includes the requirement that a class action be the

superior method for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P.

23(b)(3).   Here, the Court need not get beyond step one because the application of Bankruptcy

Rule 7023 does not "make sense" under the facts of these cases and based on the purposes for

class actions in the bankruptcy context.

### 1.    Class Certification Is Rare In the Bankruptcy Context, and Typically Not Granted Where The Class Was Not Certified Pre-Petition.

14.    It is important to note that while a court has discretion to certify a class and then

permit the filing of a class claim in a bankruptcy case, case law is clear that class certification

should be used sparingly in bankruptcy cases.  *In re Sacred Heart Hospital of Norristown,* 177

B.R 16, 22 (Bankr. E.D. Pa. 1995); *In re American Reserve Corp.,* 840 F.2d 487, 493 (7th Cir.

1988) (class certification may be "less desirable in bankruptcy than in ordinary civil litigation.");

*In re Firstplus Financial, Inc.,* 248 B.R. 60, 73 (Bankr. N.D. Tex. 2000) ("In the bankruptcy

context, class actions should be rare."); *In re Woodmoor,* 4 B.R. 186, 189 (Bankr. D. Colo. 1980)

(chapter 11 normally already provides all of the possible benefits that would be afforded by class

---

[18]    Bankruptcy Rule 9014 provides a court with discretion to apply the class action rule -- Bankruptcy Rule 7023 -- to bankruptcy cases. *See In re American Reserve Corp.,* 840 F.2d 487, 488 (7th Cir. 1988) (indicating that Rule 9014 allows a bankruptcy judge to apply Rule 7023 to "any stage" of a contested matter, and concluding that the mere filing of a proof of claim is a "stage.").

10

certification and claims can be conveniently and expeditiously managed by following normal bankruptcy procedures).

15.     Furthermore, certification of a class and allowance of class claims becomes even rarer if the class was not certified pre-petition. *See, e.g., Sacred Heart,* 177 B.R. 16 (class claim rejected --class not certified pre-petition); *In re Jamesway Corp.,* 1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997) (no pre-petition certification); *In re Musicland Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007) (same); *but see In re Zenith Laboratories, Inc.*, 104 B.R. 659 (D.N.J. 1989) (class certified pre-petition; class claim approved); *In re Retirement Builders, Inc.,* 96 B.R. 390 (Bankr. S.D. Fla. 1988) (same).

16.     The *Sacred Heart* court explained that situations where a class has been certified pre-petition by a non-bankruptcy court are among the "best candidates" for class certification in the bankruptcy proceeding.  177 B.R. at 22.  The reason for this is that "it is very likely that certain procedures for notifying the unnamed class members . . . have been devised and followed pre-petition.  In fact, it can be convincingly argued that it would be wasteful for the bankruptcy court, in its claims process, to either replicate any notice procedures already utilized in the nonbankruptcy court class action process." *Id.*  Thus, where prior certification of a class may facilitate the publication of notice in a bankruptcy case, the class is more likely to be certified.  In the absence of such benefit, prior certification is not compelling.

17.     The reasoning of these cases is directly relevant here.  Prior to Grace's petition date, there existed no certified ZAI class as to which notice was given.  Rather, while there were seven proposed class actions pending before the bankruptcy filing in various states -- California, Minnesota, Montana, Illinois, Massachusetts, and Washington -- only *one* of the seven was certified.  That class was not a nationwide class, but rather a class only involving Washington

11

state claimants.  More importantly, the notice program for that class action was *not* approved and no notices were published on account of that class.[19]  Thus, pre-petition certification justification is not present here as a basis to certify the proposed ZAI class in these Chapter 11 Cases.

> **2.     The Primary Benefits of Class Action Do Not Exist Under the Facts of These Cases.**

18.     If class certification fails to advance the progress of the bankruptcy or is otherwise not appropriate in the circumstances of the bankruptcy, the Court need look no further.  In *American Reserve*, the Seventh Circuit remanded the case for the bankruptcy judge to "consider the features . . . that may make class certification less desirable in bankruptcy than in ordinary civil litigation.  The bankruptcy judge also did not consider whether his control of the bankrupt's affairs might make class certification unnecessary."  840 F.2d at 493; *see also Zenith,* 104 B.R. at 664 (although class was certified pre-petition, "there may be other factors in the bankruptcy proceedings that make class certification there less compelling and it may be possible that a different result might be appropriate.").

19.     In such an inquiry, it is particularly important to consider whether a class action approach is useful when a bar date is being sought to address and identify the same universe of claims.  As explained in *Jamesway,* 1997 WL 327105 at *9-10, a bar date serves "the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization."  Permitting a class claim, on the other hand, would undermine these objectives precisely because a class claim does not identify the individual members of the class.

---

[19]     *Barbanti v. W. R. Grace, et al.,* 00-2011756-6 (WA Sup. Ct.)

20.     Moreover, the positive benefits which have been identified by the courts as

militating in favor of certifying a class and allowing a class claim are entirely absent in this case.

The two main reasons for utilizing a class action approach in a bankruptcy case are:

- to protect the interests of claimants who are not aware that their rights may be
  affected by the bankruptcy; and

- to allow representative litigation, which might be more cost effective and
  efficient under certain facts than separate participation from individuals.

*American Reserve,* 840 F.2d at 489.

21.     In terms of notice to unknown claimants, where the bar date notice provides

notice to all known and unknown claimants, there is no added benefit to certifying a class under

Bankruptcy Rule 7023. *See Sacred Heart*, 177 B.R. at 22 ("[I]f the putative unnamed class

members have clearly received actual or constructive notice of the bankruptcy case and the bar

date, denial of the . . . class proof of claim device appears advisable."); *see also Jamesway,* 1997

WL 327105 at *5 (same).

22.     Indeed, the notice is the same to claimants regardless of whether the notice is

labeled a bar date notice and disseminated pursuant to Bankruptcy Rule 2002 or a class action

pursuant to Fed. R. Civ. P. 23.  In any case, the notice must "(1) be reasonably calculated, under

all the circumstances, to apprise interested parties of the pendency of the action; (2) afford

[interested parties] an opportunity to present their objections; (3) be of such a nature as

reasonably to convey the required information; and (4) afford a reasonable time for those

interested to make their appearance." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S.

306, 314 (1950).

23.     In this case, the Debtors' proposed notice program is in keeping with *Mullane*.

*See* Exhibit C (indicating that the reach of the target putative holders of ZAI Claims will be over

13

90%, and the program will involve television ads, print publications, the Internet, and direct notice mailings to known claimants). A class action and use of a class claim will provide no greater notice to potential ZAI Claimants. *Compare Sacred Heart*, 177 B.R. at 22, where the court noted that a class claim may be warranted where there is evidence that a debtor excluded or failed to provide proper notice to putative class members, which is clearly not the case here. Here, the class approach would provide the same notice and target the same audience[20] as what the Debtors already propose for a bar date program that will provide substantially greater benefit in terms of resolving the ZAI Claims.

24.     The policy of providing a mechanism for representative litigation embodied in Bankruptcy Rule 7023 also has no relevance to the facts of the Grace Chapter 11 Cases and the ZAI Claims. Indeed, the facts surrounding ZAI directly militate against any representative litigation argument which the holders of ZAI Claims could make. Given the ZAI Science Trial Opinion indicating that ZAI does not pose an unreasonable risk of harm, the stakes of any individual claimant are less than modest. If anything, the true, sole beneficiaries of class certification would be the class counsel. This is precisely the factual scenario where class certification should be denied. In *American Reserve*, the Seventh Circuit makes clear that the representative litigation argument requires a cost-benefit analysis: where the individual stakes are "modest" and "a high proportion of the total recovery [would be] diverted to the class's lawyers or consumed by the costs of litigation" the value of representative litigation is correspondingly less in a bankruptcy context because creditors are already probably taking less

---

[20]   Prior disputes with ZAI Claimants regarding the notice program did not target the program's reach and the medium used to effectuate the program. Instead, the content of the notices was the target of the criticism because ZAI claimants wanted notices that warned of the risks of ZAI. The ZAI Science Trial Opinion resolves that dispute.

14

than payment in full on their claims. 840 F.2d at 490 ("as the stake goes down, so does the utility of the class device").

> **3.    A Class Action Device At This Point In the Cases Will Unduly Complicate Resolution of ZAI Claims and Cause Delay.**

25.    Given where the parties are at in terms of the age of the cases, all that has been resolved in terms of other claims in the cases, and all that has even been resolved in terms of ZAI Claims based on the science trial, even if the Court were otherwise inclined to consider a class action, it is very late in these Chapter 11 Cases to go down this path.

26.    Discovery and a contested hearing would be required to resolve Rule 23 class issues, such as significant individual issues arising out of the different types of homes in which ZAI is present and the different conditions in which ZAI has been installed or removed. In addition, the Debtors believe and would continue to argue that Rule 23(b)(3), which requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy," cannot be met on the facts of these cases since a bar date would provide more efficient resolution of the ZAI Claims as discussed herein. *See* Fed. Bankr. R. P. 7023 (applying Fed. R. Civ. P. 23(b)(3)).

27.    In addition, if the class were certified, interlocutory appeals would then follow. Only after the appeals concluded could a notice program be implemented. Notices would need to be sent to all class members informing them of their right to opt-out of the class and pursue their claims individually. All of this would cause delay and create an environment which would forestall identification of putative claimants, likely also creating additional litigation and, more importantly, no purpose would be served that will not be more effectively served by a ZAI bar date.

15

28.     Thus, while this Court may have discretion under Bankruptcy Rule 9014 to consider whether a class should be certified under Bankruptcy Rule 7023, it is absolutely clear that under the facts of this case, there is no basis for engaging in that exercise, and a ZAI bar date is a superior method for resolving the ZAI Claims.  Accordingly, Grace urges the Court to deny any motion to consider application of Bankruptcy Rule 7023.  Of course, were the Court to direct that such hearing be set, Grace will vigorously contest any attempt by the ZAI Claimants to demonstrate that a certifiable class of ZAI Claims could be found to exist under the standards of Bankruptcy Rule 7023, and Grace reserves all of its arguments respecting those issues.[21]

**C.     The Non-Binding Bar Date Approach Will Also Fail to Resolve the ZAI Claims.**

29.     As noted above, the Court suggested the possibility of a non-binding bar date in order to allow the Debtors to gather some information now about ZAI Claimants and attempt to use that information to negotiate a cap for plan funding and treatment for the ZAI Claims.[22]  The Debtors have considered this approach and believe that it would not promote settlement, estimation, or claims allowance.

_____

[21]   In addition, under the claimants' proposed approach, class certification may yield inconsistent results.  For example, counsel for ZAI Claimants recently indicated that as part of the class approach, the parties should certify certain legal issues to various state courts instead of simply setting a bar date and having this court adjudicate the claims in the bankruptcy.  2/25/08 Hrg. Tr. at 29.  This Court acknowledged the problems inherent with this approach:

> THE COURT:  there's a problem with that anyway in that if the same issue is certified in different courts, you're probably going to get different results, because it's probably based on a state law issue.  And I don't think with the massive claims that are anticipated here, that that's probably the best resolution.  This, this cries out not for class certification in the Rule 23 sense, this cries out for class treatment in the plan confirmation sense.

_Id._ at 45.  Here, the best way to address "class treatment in the plan confirmation sense," is to determine the universe of individual holders of claims, which can be done by setting a bar date for individual holders to come forward, and by approving a notice program that is expansive and targeted to reasonably reach both known and unknown ZAI Claimants.

[22]   2/25/08 Hrg. Tr. at 77.

16

30.     If non-binding, the Debtors could spend millions of dollars on a notice campaign that provides individuals with no incentive to come forward. The program would simply tell people that the Debtors are asking them to come forward so that the parties can determine a fund for these claims in the future. Without a bar to putative ZAI Claimants' participation in the fund if they do not come forward now, there stands a very high chance that persons holding such claims will not take any action because there is no consequence for failure to take action.

31.     As the Court will recall, the PI Questionnaire process began as a process involving a request for information, but no bar date. It turned out to be a contentious and long process, and after not getting the kind of information and participation that was expected from the claimants, the Court ordered that a bar date was appropriate:

> THE COURT: You have convinced me, Mr. Bernick, that if the debtor is going to do this estimation, you need a bar date. You'll find out what claims are filed. You'll find out who it is whose filed them.[23]

32.     Accordingly, on August 24, 2006, the Court set a bar date for certain of the asbestos personal injury claims.[24] Thereafter, thousands more questionnaires were returned and proofs of claim were submitted.

33.     Here, the Debtors have the same concern -- that unless or until a binding bar date is set, no one will be compelled to come forward. In that event, settlement discussions could not meaningfully take place. The Debtors could not discuss settlement and communicate directly with many of the ZAI Claimants who decide not to participate in the solicitation. And, any

---

[23]    *Id.* at 26.

[24]    Order As to All Pre-Petition Asbestos PI Litigation Claims, Including Settled Claims, (I) Establishing Bar Dates; (II) Approving Proof of Claim Form; and (III) Approving Notice of Pre-Petition Asbestos Personal Injury Claims Bar Date, dated 8/24/06 [Dkt. No. 13061].

global settlement discussions would be impaired because the parties would never agree on the universe of actual claims. Such disagreement would also affect the ability to conduct an estimation of the ZAI Claims in the aggregate. Finally, as noted above, if invalid claims are going to be disallowed pursuant to a claims allowance/disallowance process before this Court, a binding bar date would have to be set at some point in any event, and a second notice campaign would need to be proposed, implemented, and funded by the estates.

34. Doing an expansive notice program for a non-binding bar date now and repeating it later would be inefficient and costly. Accordingly, the Debtors respectfully maintain that a non-binding bar date would not be in the best interests of the parties, and would not further the objective of determining how to properly address ZAI Claims under a plan of reorganization.

**D.    The Court Should Approve the ZAI Proof of Claim and General Instructions for Completing the ZAI Proof of Claim.**

35. The Debtors seek this Court's approval of the ZAI Proof of Claim and General Instructions for Completing the ZAI Proof of Claim (copies of which are included at Exhibit A). The ZAI Proof of Claim and related instructions are modeled after the Official Bankruptcy Form 10 ("Form 10"). It is a one-page form, just like Form 10. However, the ZAI Proof Claim Form has been tailored so that it only requests information relevant to ZAI Claims.

36. Specifically, the ZAI Proof of Claim Form asks the Claimant to provide the following, critical information with respect to the property for which the ZAI Claim is being asserted:

- The address of the building that allegedly contains ZAI;
- The approximate date the building was constructed;
- The approximate date the ZAI was installed in the building, if known;
- The area within the building where the ZAI is located;

18

- The claimant's legal interest in the building; and
- The date of removal of ZAI (if applicable).

37.     The information requested in each of these questions is critical in order to (a) ascertain the general basis of the asserted ZAI Claim and (b) make a meaningful estimate of the Debtors' maximum potential liability to these Claimants for purposes of plan feasibility and capping the Debtors' liability on account of ZAI Claims.

38.     This information should be readily available to every Claimant, who should be able to complete this section (and the entire ZAI Proof of Claim) in a minimal amount of time and with minimal burden.  Similarly, it will not be onerous for Claimants to provide any supporting documentation they may have in their possession or control.  In addition, the Debtors are not asking holders of ZAI Claims to provide any physical sample of ZAI at this time, although the Debtors reserve the right to make such a request of the claimant population or a subset thereof should such samples be necessary to inform subsequent proceedings such as estimation or claims allowance proceedings.

39.     Finally, the ZAI Proof of Claim form is intended to be completed by each individual Claimant, irrespective of whether class claims have been previously filed on individual Claimants' behalf, and irrespective of whether a class will be certified in the future.

**E.     The Court Should Approve the ZAI Bar Date Notice and ZAI Bar Date Notice Program.**

40.     The Debtors also seek the Court's approval of the ZAI Bar Date Notices (*see* Exhibit B), and the ZAI Bar Date Notice Program, including the ZAI Publication Notice Program (*see* Exhibit C).  The ZAI Bar Date Notices have been designed to alert known ZAI Claimants and their counsel as well as unknown ZAI Claimants of (i) the procedures necessary to file a ZAI Proof of Claim by the bar date and (ii) the consequences of failing to properly file.

19

41.     To the fullest extent practicable, the ZAI Bar Date Notices are written in simple, colloquial English, and they are easy to understand.  They will serve to alert potential ZAI Claimants of (i) the ZAI Bar Date, (ii) the procedures necessary to file a ZAI Proof of Claim, (iii) the consequences of failing to file a ZAI Proof of Claim by the ZAI Bar Date, and (iv) how to determine if they have a ZAI Claim.  These notices are similar to the notices previously approved by the Court for the March 2003 Bar Date for Non-Asbestos, Asbestos PD and Medical Monitoring Claims.[25]

42.     In addition, the Debtors also seek this Court's approval of the manner and scope of notice of the ZAI Bar Date (the "ZAI Bar Date Notice Program").  The ZAI Bar Date Notice Program employs three primary methods for providing notice: (a) direct notice by mail to all known holders of ZAI Claims and their counsel of record, (b) broad nationally published notice through the use of U.S. paid media vehicles, and (c) notice through additional media vehicles.

43.     Specifically, the Debtors propose to mail, via first-class mail, a ZAI Bar Date Notice Package to each known ZAI Claimant and his or her counsel of record.  In order to help identify as many "known" ZAI Claimants as possible, the Debtors also seek that counsel for ZAI Claimants who have participated in these proceedings be compelled to turn over to the Debtors their clients' addresses and any address information that they may have compiled of potential ZAI Claimants who are not clients, but who are known to them, so that actual notice be provided to as many potential "known" ZAI Claimants by the Debtors, and that each potential known ZAI Claimant receive a ZAI Bar Date Notice Package.  The ZAI Bar Date Notice Package contains

---

[25]   *See In re W.R. Grace & Co, et al,* Case No. 01-01139 (JKF), Order Establishing March 31, 2003 as the Bar Date for Filing Non-Asbestos Claims, Property Damage Claims and Medical Monitoring Claims (Bankr. D. Del. April 22, 2002) (the "March 2003 Bar Date Order") [Dkt. No. 1963].

20

(i) a ZAI Proof of Claim Form, (ii) General Instructions for Completing the ZAI Proof of Claim Form, and (iii) a Notice of ZAI Bar Date.

44.     The Debtors also propose to implement a comprehensive program of publication notice, which was developed by the Debtors in conjunction with their notice expert, Kinsella/Novak Communications, LLC. The Debtors' proposed publication notice plan targets adults 35 years of age and older ("Adults 35+") and homeowners in the United States. The plan calls for multiple notices: (i) in eight national consumer magazines, (ii) in three national newspaper supplements, and (iii) on network and cable television. In addition, banners will appear across a wide variety of internet sites in order to provide supplemental reach to the print and television activity. Also, a press release would be sent to major national print and electronic outlets, and notice will be sent to several "do-it-yourself" publications whose subscribers may be ZAI Claimants. Information would also be provided on Grace's website. The reach for this program is estimated to be over 90% for all Adults 35+ , which includes, but is not limited to, homeowners in the United States. *See* Exhibit C at 17; *see also* Affidavit of Katherine Kinsella at ¶¶ 10, 13, attached hereto at Exhibit D.

45.     The overall cost of the publication notice program is estimated to be between $3.0 and $3.3 million. The ZAI Bar Date Notice Program is explained in greater detail in Exhibit C.

46.     Courts have developed general guidelines for the content of a bar date notice. Such bar date notice must include notice of (i) the bar date, (ii) any impending hearings affecting claims covered under the bar date, so that the notice recipients can take steps to safeguard their interest, (iii) information on the effects of not filing a proof of claim by the bar date, and (iv) information on who must file a claim. *In re Amdura Corp.,* 170 B.R. 445, 452 (D. Colo. 1994); *In re Keene Corp.*, 188 B.R. 903, 908 (Bankr. S.D.N.Y. 1995).

21

47.     The ZAI Bar Date Notice satisfies each of these guidelines.  In this respect, the

ZAI Bar Date Notice Package clearly (i) identifies the ZAI Bar Date, (ii) states that parties who

wish to assert a ZAI Claim must file a ZAI Proof of Claim before the ZAI Bar Date, or they will

forever be barred from asserting such claim against the Debtors, and (iii) provides detailed

definitions so that parties can ascertain whether their claim is a "ZAI Claim."  *See* Exhibit A.

48.     To determine the adequacy of notice given to a creditor, bankruptcy law

distinguishes between "known" and "unknown" creditors.  *See Chemetron Corp. v. Jones (In re*

*Chemetron Corp.)*, 72 F.3d 341, 345 (3d Cir. 1995).  As the Third Circuit in *Chemetron*

explained, "[k]nown creditors must be provided with actual written notice of a debtor's

bankruptcy filing and bar Claims date.  For unknown Claimants, notification by publication will

generally suffice." *Id.* at 346 (citations omitted).  A "known" creditor is one whose identity is

either known or is "reasonably ascertainable by the debtor." *Id.* (citing *Tulsa Professional*

*Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)).  An "unknown" creditor is one whose

"interests are either conjectural or future or, although they could be discovered upon

investigation, do not in due course of business come to knowledge [of the debtor]." *Chemetron,*

72 F.3d at 346 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)).

49.     In defining the efforts required to identify "known" creditors, the Third Circuit

stated:

> Precedent demonstrates that what is required is not a vast, open-
> ended investigation . . .The requisite search instead focuses on the
> debtor's own books and records.  Efforts beyond a careful
> examination of these documents are generally not required.  Only
> those Claimants who are identifiable through a diligent search are
> 'reasonably ascertainable' and hence 'known' creditors.

*Chemetron*, 72 F.3d at 346-47 (citations omitted).  As for the particular efforts a debtor must

exert to identify known creditors, "[w]hether a creditor received adequate notice of a bar date

'depends upon the facts and circumstances of a given case.'" *In re The Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997) (citing *Bullock v. Oppenheim, Appel, Dixon & Co. (In re Robintech),* 493 U.S. 811 (1989)).

50.     The parties named as plaintiffs in the pre-petition lawsuits that were filed in various jurisdictions on behalf of owners of homes containing ZAI are "known" to the Debtors within the guidelines of *Chemetron.* Parties who filed ZAI POC's already in these Chapter 11 Cases are also known to the Debtors. Accordingly, the Debtors will mail a copy of the ZAI Bar Date Notice Package to each of these parties, as well as their respective attorneys of record. However, there are other parties that the Debtors understand may assert ZAI Claims against the Debtors' estates, and the Debtors do not know who they are. Therefore, the ZAI Bar Date Notice Program contains an extensive procedure for providing publication notice to these "unknown" parties.

51.     In reviewing requests to approve publication-notice programs, some courts require debtors to provide greater specificity than merely identifying the media that the debtors expect to use. For example, in *In re Eagle-Picher*, 137 B.R. 679, 682 (Bankr. S.D. Ohio 1992), the court ordered the debtors to prepare a "specific detailed program of notice by publication," including such elements as: the identification of media to be used; "explanation [of] why such media are to be [used] and why other media are not to be [used]; the frequency of any publication and/or broadcast;" and a program of publication notice "based on real lead times for the particular media involved as to when the program is to begin." *Id.* Accordingly, this information is provided in Exhibit C.

52.     In providing notice in this case to unknown asbestos property damage claimants and other unknown claimants, this Court approved a publication program that was very similar to

23

the ZAI Bar Date Notice Program.  Specifically, on April 22, 2002, the Court entered the March

2003 Bar Date Order, which established March 31, 2003 as the last date for filing proofs of claim

for all pre-petition Claims relating to (1) Asbestos PD Claims (excluding ZAI Claims), (2) non-

Asbestos Claims (including all governmental Claims), and (3) Asbestos Medical Monitoring

Claims.[26]  The proposed ZAI Bar Date Notice Program is substantially similar to the notice

program approved by this Court in the March 2003 Bar Date Order.

53.    The proposed publication notice program for the ZAI Bar Date (i) is designed to

reach a similar percentage of relevant recipients as the March 2003 Bar Date notice program; and

(ii) more than satisfies the standards enumerated in *Eagle-Picher*.  The Debtors have identified

specific publications and the periods during which the ZAI Bar Date Publication Notices will be

run.  The Debtors' notice expert has determined that the proposed publication notice program

will ensure, with high degree of probability, that a vast majority of potential holders of a ZAI

Claim will have a reasonable opportunity to file a ZAI Proof of Claim before the ZAI Bar Date.

## NOTICE

54.    Notice of this Motion has been given to: (i) counsel for each of the plaintiffs in

the pending ZAI lawsuits, (ii) the Office of the United States Trustee, (iii) counsel to the debtor-

in-possession lenders, (iv) counsel to the agent for the Debtors' pre-petition lenders, (v) counsel

to all official committees appointed by the United States Trustee, and (vi) all those parties that

requested service and notice of papers in accordance with Bankruptcy Rule 2002.  In light of the

nature of the relief requested, the Debtors submit that no further notice is required.

---

[26]    The March 2003 Bar Date did not include Asbestos PI Claims or ZAI Claims.

24

## NO PRIOR REQUEST

55.     No prior motion for the relief requested herein has been made to this or any other Court other than as previously described herein.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order that: (i) sets a binding ZAI Bar Date, (ii) approves the Debtor's proposed ZAI Proof of Claim, General Instructions for Completing the ZAI Proof of Claim, and ZAI Bar Date Notices, and (iii) approves the Debtors' proposed ZAI Bar Date Notice Program. A form of proposed order is attached hereto as Exhibit E.

Dated: March 18, 2008                   KIRKLAND & ELLIS LLP
                                        David M. Bernick, P.C.
                                        Theodore L. Freedman
                                        Janet S. Baer
                                        Deanna D. Boll
                                        153 East 53rd Street
                                        New York, NY 10022
                                        Telephone:    (212) 446-4800
                                        Facsimile:    (212) 446-4900

                                                and

                                        PACHULSKI STANG ZIEHL & JONES LLP

                                                /s/ James E. O'Neill
                                        Laura Davis Jones (Bar No. 2436)
                                        James E. O'Neill (Bar No. 4042)
                                        919 North Market Street, 17th Floor
                                        P.O. Box 8705
                                        Wilmington, DE 19899-8705 (Courier 19801)
                                        Telephone:  (302) 652-4100
                                        Facsimile:  (302) 652-4400

                                         Co-Counsel for the Debtors and
                                         Debtors in Possession