IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W.R. GRACE & CO., *et al.*, | ) Case No. 01-1139 (JKF) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Objection Deadline: March 28, 2008 @ 12:00 p.m.** |
| | ) **Hearing Date: April 1, 2008 @ 9:00 a.m. in** |
| | ) **Pittsburgh, Pennsylvania** |
| | ) **Related Docket No.: 18307, 18310** |
| | ) |

# THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS' RESPONSE TO DEBTORS' MOTION IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY OF STEPHEN M. SNYDER

The Official Committee of Asbestos Personal Injury Claimants ("ACC") hereby opposes Debtor's Motion in Limine to Exclude the Expert Testimony of Stephen M. Snyder, filed March 14, 2008 [D.I. Nos.: 18307, 18310].

INTRODUCTION

One of the expert witnesses that the ACC and Future Claimants' Representative ("FCR") intend to call is Stephen M. Snyder, Esq., the subject of Debtors' ("W.R. Grace & Co." or "Grace") present motion. Mr. Snyder is an attorney who has spent a large majority of his professional career defending asbestos companies very similar to Grace. He will testify as an expert on the trial, settlement, and resolution of asbestos personal injury claims, based on his career-long experience in that highly specialized field. Specifically, he will explain, in detail, how litigation between asbestos plaintiffs and defendants like Grace actually works in practice; how plaintiffs proved the factual elements of exposure, disease, and causation (and failure to warn) at trial; what evidence defendants required for settlement; how settlements limited the cost to defendants of resolving their liabilities; and how Grace's new-found-salvational "scientific"

defenses were employed repeatedly in the past by many defendants with generally disappointing results.

Information about the practical workings of asbestos personal injury litigation is of central relevance in this estimation proceeding. In the years before its bankruptcy, Grace settled hundreds of thousands of cases; however, Grace's novel position here is that most of the cases it settled were without legal or medical merit and that it now has "new scientific" defenses that, if presented before a fair tribunal, would have protected it from liability on the great bulk of the cases it settled and will so protect it now and in the future. Indeed, Grace claims that these "new" defenses are such that it would, in most cases, be able to prevent the claims from getting to a jury at all. In effect, Grace is asking this Court to enter summary judgment on the more than one hundred thousand pending cases and on the several hundred-thousand cases likely to be filed in the future. Grace asks this Court to *reject* its experience in trying and settling cases over many years as evidence in estimating the liabilities Grace would have had to pay had it not filed for Chapter 11 protection.

The ACC and FCR maintain that the issue in this case is, *as every District Court in this District to have faced the issue has held*, the estimation of the asbestos tort liability that Grace would have faced had Grace remained in the tort system instead of seeking bankruptcy protection – not what Grace imagines would be the results in some "new" alternative legal universe.[1] In addition, the ACC and FCR maintain that Grace's "new scientific" claims, far from

---

[1]     *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 123 (D. Del. 2006) (Robreno, J.) (citing *In re Owens Corning*, 322 B.R. 719, 722 (D. Del. 2005) (Fullam, J.)); *In re Federal-Mogul Global, Inc.*, 330 B.R. 133, 155 (D. Del. 2005) (Rodriguez, J.); *see also In re Eagle-Picher Indus., Inc.*, 189 B.R. 681, 683 (Bankr. S.D. Ohio 1995). The action of these courts – and the ACC/FCR position here – is consistent with the holdings of other courts that estimated pending non-asbestos litigation claims in bankruptcy proceedings. *See, e.g., In re Farley, Inc.*, 146 B.R. 748, 753 (Bankr. ND Ill. 1992) (valuing tort claim based on probabilities of success at

being unquestionable, are sharply disputed. Grace's "new" defenses were well-known to asbestos attorneys (such as Mr. Snyder) and frequently tried by Grace in the past with distinctly mixed results. In sum, Grace's settlement history (1) reflects the well-demonstrated risks to Grace of proceeding to trial, and (2) is, subject to modifications for foreseeable future changes, the best basis on which to estimate what Grace would have spent to resolve asbestos personal injury claims.

Mr. Snyder's expert testimony, based on practical knowledge, skill, and experience in the field of asbestos legal defense and tort litigation, is a legally proper and highly relevant contribution to the methodology issue before this Court. Grace's effort to exclude Mr. Snyder's evidence misstates both the applicable to law as it relates to experts and the nature of the evidence Mr. Snyder will bring to the court.[2]

---

trial); *In re Federal Press*, 116 B.R. 650, 654 (Bankr. N.D. Ind. 1989) (valuing tort claim by reference to national average jury award for similar claims).

The Court has called the parties' attention to these decisions. Just after the District Court's *Armstrong* opinion was issued, the Court commented, "I also understand what various District Courts have been writing with respect to how the personal injury estimations are to be conducted. I would advise all parties to take a look at it because some of it seems to be a pretty darn good process for trial to me." Aug. 21, 2006 Hr'g Tr. at 214 [D.I. 13077].

[2]   Grace re-iterates in this motion its general objection to any evidence about past settlements. The ACC and FCR have responded to those arguments in other filings to which the Court is respectfully referred with regard to the settlement evidence issues. *See, e.g.*, Motion in Limine of The Official Committee of Asbestos Personal Injury Claimants Relating to Settlement Information Subject to the Debtors' Rule 408 Argument, March 14, 2008 [D.I. 18306]; The Official Committee of Asbestos Personal Injury Claimants' Response to Grace and the Equity Committee's Motions To Exclude or Limit Expert Testimony, Dec. 21, 2007 [D.I. 17694].

In any case, much of Mr. Snyder' testimony as to the resolution of asbestos personal injury claims generally (and whether any defendant has successfully applied Grace's "liability filters") does not implicate Grace's Rule 408 argument all. Even if the Rule were – incorrectly – held to apply to bar testimony about *Grace's* historical settlement criteria and values, it would not bar testimony about the nature of asbestos litigation and the standards and values that asbestos defendants apply generally in resolving claims. For example, discussing the claims resolution actions of defendants such as Owens Corning or Fibreboard while they were still in

Stephen M. Snyder is a lawyer, with long and deep involvement in the asbestos litigation. He has over 35 years of litigation experience. Since the early 1980's he has devoted a very substantial portion of his professional time to the asbestos litigation. He was the national counsel for Fibreboard Corporation – supervising its defense of cases in the tort system and its pursuit of insurance coverage from its insurers. He defended some three dozen defendants, members of the Asbestos Claims Facility, in tens of thousands of cases. Following the dissolution of the Asbestos Claims Facility in 1988, he was active in coordinating the shared defense of three significant asbestos defendants – Fibreboard, Pittsburgh Corning and Owens-Illinois. He was the architect of the Fibreboard "Global" and "insurance" case resolutions and managed the process of resolving the Fibreboard liabilities through and beyond the decision by the United States Supreme Court in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). When Owens Corning Corporation acquired Fibreboard in 1997, and through the time of the Owens Corning bankruptcy, he represented Owens Corning in its asbestos litigation. He has been involved in the resolution of many thousands of asbestos cases and has broad national expertise with the asbestos litigation as it is and has been conducted in the tort system since the early 1980s.

Mr. Snyder is not only one of the preeminent asbestos defense lawyers in the United States. In addition to defense and resolution of cases as an advocate on behalf of defendant companies, he has been involved with case valuation issues from the perspective of a trustee of two section 524(g) trusts. He has addressed asbestos claim value issues as a lawyer seeking insurance coverage for asbestos claims on behalf of Fibreboard, Western MacArthur, Plant Insulation and Thorpe Insulation.

---

the tort system certainly does not implicate a rule, which if it applies at all (which we dispute), would only apply to Grace's settlements.

ARGUMENT

I.  Under Rule 703, expertise does not have to be scientific or technical; it can be based on practical experience and skill as well.

Grace devotes much of its motion to arguing that Mr. Snyder's evidence should be excluded because it is not "based on . . . methods and procedures of science." (Snyder Mot. at 4). But Rule 702, governing expert testimony, explicitly permits expert testimony based on "scientific, technical, *or other specialized knowledge*." In *Kumho Tire Co. v. Carmichael* – a case Grace mysteriously does not cite even though it is the key Supreme Court decision on non-scientist experts – the Supreme Court held that Rule 702

> makes no relevant distinction between "scientific" knowledge and "technical" or "other specialized" knowledge. It makes clear that any such knowledge might become the subject of expert testimony.

526 U.S. 137, 147 (1999).

Consistent with the principle that the basis of specialized knowledge, within the meaning of Rule 702, "can be practical experience as well as academic training and credentials," *Am. Tech. Res. v. United States*, 893 F.2d 651, 656 (3d Cir. 1990), courts routinely permit non-technical experts to testify drawing on their practical knowledge of a very wide range of fields.[3]

---

[3] The Third Circuit has approved the admission of testimony from a broad range of practical-knowledge experts. *See*, *e.g.*, *Linkstrom v. Golden T. Farms*, 883 F.2d 269, 270-71 (3d Cir. 1989) ("farm safety expert"); *United States v. Perez*, 280 F.3d 318, 341-42 (3d Cir. 2002) ("expert in the area of drug-trafficking practices and techniques"); *Buford v. Wilmington Trust Co.*, 841 F.2d 51, 55 (3d Cir. 1988) (expert on brokerage "advertising" expenditures); *First Nat'l State Bank of New Jersey v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) ("expert on the Uniform Commercial Code"); *Dunn v. HOVIC*, 1 F.3d 1362, 1368-69 (3d Cir. 1993) (expert on asbestos company's knowledge of "risks associated with exposure to asbestos").

Other circuits have also consistently upheld qualification of non-technical experts. *See First Tennessee Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 332-35 (6th Cir. 2001) (expert on "prudent banking standards"); *United States v. Whitehead*, 176 F.3d 1030, 1035 (8th Cir. 1999) (expert "on check kiting activity"); *United States v. Yoon*, 128 F.3d 515, 526-27 (7th

Accordingly, attorneys who, like Snyder, bring expertise in a specialized field like asbestos tort litigation are properly admitted as experts to testify, not to the governing law or to legal conclusions, but to relevant facts about the field.  *See Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1997) ("We agree that merely being a lawyer does not disqualify one as an expert witness.  Lawyers may testify as to legal matters when those matters involve questions of fact."). Examples of situations in which courts have approved of attorney-experts at trials include testimony in legal malpractice cases about practices and standards of law practice and litigation;[4] on an insurance company's failure to settle within policy limits;[5] on ethical standards in specialized areas of law;[6] on effectiveness of assistance of counsel;[7] on reasonableness of disputed fees;[8] on class counsel conflicts;[9] on legal ethics;[10] and on the "intricacies of the federal

---

Cir. 1997) ("expert in check-kiting"); *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269-70 (9th Cir. 1994) (expert on "working conditions of experienced longshore personnel"); *United States v. Kelley*, 615 F.2d 378, 380 (5th Cir. 1980) (expert on banking "loan policy").

[4] *See First Union Nat'l Bank v. Benham*, 423 F.3d 855, 863 (8th Cir. 2005) (ruling it was improper to exclude an attorney-expert in a malpractice case whose "opinion refers to an attorney with reasonable diligence and the skill ordinarily used by attorneys").

[5] *See Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) (noting with approval that "defendant presented two well-credentialed experts-attorneys versed in the nuances of insurance law-who offered opinion evidence as to proximate cause.").

[6] *See United States v. Cavin*, 39 F.3d 1299, 1309 (5th Cir. 1994) (approving "testimony of a seasoned commercial lawyer that ostensibly would have supported [the defendant's] interpretation of the [at-issue] transactions").

[7] *See Bell v. Cone*, 535 U.S. 685, 679, 714 (2002) (noting with approval attorney-experts in "prosecuting and defending criminal cases"); *Thompson v. Calderon*, 109 F.3d 1358, 1364 (9th Cir. 1996) (noting, without criticism, the lower court's decision to allow the parties to call "attorney expert witnesses to support their arguments regarding ineffective assistance of counsel").

[8] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[T]he fair and reasonable compensation for the professional services of a lawyer can certainly be ascertained by the opinion of members of the bar who have become familiar through experience and practice with the character of such service").

immigration system."[11] Indeed, attorney-expert testimony has been admitted based on "expertise in the process of handling an insurance defense case," precisely the areas of Mr. Snyder's expertise. *Moses v. Halstead*, 477 F. Supp. 2d 1119, 1124 (D. Kan. 2007).

The reliability requirement for expert testimony in the Federal courts demands, not "scientific" methodology as such, but assurance that "the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). There is no requirement for "academic" training or methods. *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) ("[I]nsistence on a certain kind of degree or background is inconsistent with our jurisprudence in this area."); *see also Circle J Dairy, Inc. v. A.O. Smith Harvestore Prods., Inc.*, 790 F.2d 694, 700 (8th Cir. 1986) ("Rule 702 of the Federal Rules of Evidence does not rank academic training over demonstrated practical experience.").

Mr. Snyder's experience and his explanation of the basis of his opinions in his report make clear that his testimony fully meets that standard. He has extensive experience in a highly specialized field of litigation, and the reliability of his opinions derives from the foundation he

---

[9] *See In re Asbestos Litig.*, 90 F.3d 963, 977-78 (5th Cir. 1996) (noting with approval that an attorney-expert "has previously testified in asbestos cases and has extensive experience as a consultant in this type litigation").

[10] *See United States v. Kellington*, 217 F.3d 1084, 1098 (9th Cir. 2000) (approving "expert testimony on the lawyer's ethical obligations" as "relevant to establish the lawyer's intent and state of mind"); *Miami Int'l Realty Co. v. Paynter*, 841 F.2d 348, 352 (10th Cir. 1988) (attorney-expert was properly allowed "to testify that [the defendant's] conduct was contrary to the [applicable code of conduct]").

[11] *See Lozano v. City of Hazleton*, 241 F.R.D. 252, 255 (M.D. Pa. 2007) (ruling that "we agree with the plaintiffs that testimony about the nature and extent of federal immigration law – a large and complex body of doctrine – would help us to reach our own decision about the constitutionality of the ordinances," and that "any determination that [the attorney-expert's] testimony would offer inappropriate legal conclusions is premature").

provides for those opinions drawn from that experience and a professional lifetime of observation and practice in the field. His testimony will importantly assist the Court in understanding the issues at stake.

Grace repeatedly claims that Mr. Snyder's testimony is somehow lacking because he "relies only upon the thoughts in his head" and "does not . . . provide sufficient data or other reliance materials to support his conclusion" and should be rejected as mere "ipse dixit." (Snyder Mot. at 2-3). Of course, Mr. Snyder, like all experts, draws on "thoughts in his head" and offers opinions drawn on his experience and specialized knowledge – that is precisely what Rule 702 allows. Indeed, in *Kumho Tire*, the Supreme Court observed that "experts of all kinds tie observations to conclusions through what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" 526 U.S. at 148. But far from simply propounding unsupported assertions, Mr. Snyder's testimony will lay out the observations from the real world of litigation that lead to his conclusions, as his reports have done.

II.   <u>Lawyers can testify about practices and standards in litigation without invading the exclusive authority of the Court to decide on the law</u>.

As the cases cited above make clear, this circuit and other circuits have routinely permitted lawyers with specialized knowledge to testify in the areas of their special knowledge and experience without falling afoul of the law-determining prerogative of the court.[12] In any case, contrary to Grace's assertion that Mr. Snyder proposes to testify about "legal conclusions" and thereby "invade the province of this Court" (Snyder Mot. at 14-15), Mr. Snyder's testimony is focused on factual questions – such as how asbestos claims are handled in the actual tort

---

[12] While Mr. Snyder's testimony clearly could be offered even in a jury trial, "courts appear to be more concerned about an expert who presents conclusions to a jury rather than to a judge." *Lozano*, 241 F.R.D. at 256. *See also Moses v. Halstead*, 447 F. Supp. 2d 1119, 1124 (D. Kan. 2007) (in bench trial "the Court is capable of screening factual statements from legal conclusions").

system. Indeed, Grace's claim that Mr. Snyder will offer "opinions concerning the proper value of Grace's asbestos PI claims" (Snyder Mot. at 14) – the estimation of which is the ultimate issue in the case – is simply false.[13] Mr. Snyder does not make any statement in his reports about the dollar value of any of the pending or future claims against Grace, and his trial testimony will be similarly limited. He will, for example, explain how plaintiffs were able to meet their evidentiary burdens of showing exposure and causation, and how juries responded when defendants advanced the defenses that Grace now claims would provide an all-but-perfect shield in the future.

III. <u>Mr. Snyder has qualified as an expert on exactly the subjects on which the ACC and FCR are proffering here</u>.

Mr. Snyder has previously qualified as an expert on asbestos personal injury litigation – in the Owens Corning bankruptcy estimation case, in the Fibreboard class action proceedings, and in the J.T. Thorpe bankruptcy. *See generally Owens Corning v. Credit Suisse First Boston*, 322 B.R. 719 (D. Del. 2005); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999); *In re J.T. Thorpe Co.*, 308 B.R. 782 (Bankr. S.D. Tex. 2003), *aff'd*, 2004 W.L. 720263 (S.D. Tex. 2004). In these cases, Mr. Snyder testified as an expert on precisely the subjects on which he is being proffered now, on: (1) the realities of asbestos and mass tort litigation; (2) what type of evidence these plaintiffs present in trial and settlements; (3) what type of evidence courts and juries accept at

---

[13] Grace's contention (Snyder Mot. at 15) that Mr. Snyder will testify to Grace's and other defendants' "motives for reaching decisions concerning asbestos claims" is without foundation. Mr. Snyder will testify that it is his observation that in most instances defendants faced very great financial risks by taking cases to trial. Therefore, Grace chose to settle when plaintiffs met basic exposure and medical standards, thereby resolving claims at much less cost than they would have incurred by other strategies. That opinion testimony is not testimony as to subjective "motive," but as to observed incentives and behavior, and the effects of that behavior.

trial; (4) what type of evidence defendants accept in settlements; (5) how various defenses have been received in the courts; and (6) the risks that these defendants face in trials.

IV.  Snyder's factual description of aspects of asbestos litigation is not "lay opinion" testimony - he did not have to represent Grace to observe how it and other defendants behaved.

That Mr. Snyder did not personally represent Grace is no bar to his qualification here. An expert in a field need not have been directly involved in the work of a party to be qualified to describe the field. In any case, Mr. Snyder is familiar with many aspects of Grace's management of its asbestos liabilities, both (1) from his observation of Grace's practices while he was representing co-defendants and (2) from his review, informed by his extensive background in the field, of thousands of pages of documents produced by Grace in its personal injury cases.

Experts frequently testify to an overall context or subject, not the particularities of an individual party. Indeed, the Third Circuit has explicitly held that a lawyer need not represent an entire industry to be able to testify to practices in that industry. *See U.S. v. Fallon*, 470 F.3d 542, 547 (3d Cir. 2006).

V.  Mr. Snyder's evidence is not cumulative of Peterson's.

Grace contends that Mr. Snyder's evidence is cumulative of the testimony of a different expert, Dr. Mark Peterson, asserting that both address how the tort system has operated in the past. This contention is misguided.

According to the Third Circuit, "Evidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of trial, with all the potential for confusion, as well as prejudice to other litigants, who must wait longer for their trial, that a long trial creates." *United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002) (citing

Fed. R. Evid. 403). And evidence, such as Mr. Snyder's testimony, that would assist in the judge or jury's ability to evaluate the law or facts, and can offer a different perspective, is not cumulative. *See In re Jacoby Airplane Crash Litig.*, Slip Copy, 2007 WL 2746833, at *13 (D.N.J. 2007). Mr. Snyder can offer the unique perspective of a defense attorney involved in asbestos litigation and settlement negotiations to counter Grace's tort-system-based claims, while Dr. Peterson is an expert with extensive experience in asbestos tort-system claim estimation who will provide an estimate of Grace's liability based on Grace's behavior in the tort system. As such, there is a significant different between Mr. Snyder's and Dr. Peterson's testimony which far surpasses the Third Circuit's standard for non-cumulative evidence.

     Mr. Snyder's and Dr. Peterson's evidence will reinforce each other, but they do so not by repetition, but by bringing different expertise to the subject. Dr. Peterson draws on his study of the litigation environment, but he does so from a different perspective than Mr. Snyder's. Dr. Peterson, though trained as a lawyer, brings the perspective of social science. Mr. Snyder, by contrast, draws on years of practical experience in handling cases as a defense attorney in asbestos litigation.

[*The remainder of this page was left intentionally blank*]

CONCLUSION

For the foregoing reasons, this Court should deny Debtor's Motion to Exclude the Expert Testimony of Stephen M. Snyder.


Dated: March 28, 2008

Respectfully submitted,


CAMPBELL & LEVINE, LLC

*/s/ Mark T. Hurford*
Marla R. Eskin (DE ID No. 2989)
Mark T. Hurford (DE ID No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900

– and –

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10022-4614
Telephone: (212) 319-7125

Peter Van N. Lockwood
Nathan D. Finch
Walter B. Slocombe
James P. Wehner
One Thomas Circle, NW
Washington, DC  20005
Tel: (202) 862–5000

*Counsel to the Official Committee of Asbestos Personal Injury Claimants*