## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Objection Deadline: March 28, 2008 @ 12:00 p.m.** |
| | ) | **Hearing Date: April 1, 2008 @ 9:00 a.m. in** |
| | ) | **Pittsburgh, Pennsylvania** |
| | ) | **Related Docket Nos.: 18309, 18406** |

### THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS' RESPONSE TO DEBTORS' MOTION IN LIMINE TO EXCLUDE TESTIMONY FROM CLAIMANTS' WITNESS PETER KRAUS

The Official Committee of Asbestos Personal Injury Claimants ("ACC") hereby opposes

Debtor's Motion in Limine to Exclude Testimony from Claimants' Witness Peter Kraus [D.I.

No.: 18309], filed March 17, 2008.

### INTRODUCTION

Much like its similar motion to exclude the testimony of expert Stephen M. Snyder,

Debtors' ("W.R. Grace & Co." or "Grace") motion to exclude Peter Kraus, offered as a fact

witness, is a transparent attempt to prevent the Court from fully hearing the ACC and the Future

Claimants' Representative ("FCR") approach, and it lacks legal or factual basis. At bottom,

Grace's motion to preclude Mr. Kraus from testifying boils down to a complaint that it had

insufficient ability to obtain discovery relevant to his testimony, notwithstanding the facts that

Mr. Kraus (1) produced, or offered to produce, well over 100 boxes of materials which underlie

his testimony in response to Grace's last minute "document demand" (an offer which Grace

rejected), (2) has sat for a deposition, and (3) has been disclosed as a testifying witness by the

ACC for over two years.   None of his testimony offered will delve into matters protected by any privilege; Grace's arguments to the contrary are simply wrong.

As the Court has recognized, the two sides have very different methodological approaches to the task before the Court.  As this Court is aware, Grace can attempt to prove its theory of estimation its way and the ACC and FCR can attempt to prove it their way.  And Grace has merely one more witness (and some deposition designations) in the presentation of its case.  Then it will be the ACC and FCR's turn.  The real issue presented by the motion to preclude Peter Kraus' testimony is whether the Court will have an opportunity to consider the ACC and FCR approach.

Grace's methodology asks this Court to reject its experience in trying and settling asbestos personal injury cases over many years and instead rule, on the basis of its experts' presentations, that it has "scientific" defenses that insulate it from liability on the great bulk of the pending and future claims.[1]  In effect, Grace is asking this Court to decide that it could prevail by *Daubert* motions, summary judgment, or directed verdicts, on the overwhelming majority of the more than one hundred-thousand pending cases and on the several hundred-thousand cases likely to be filed in the future.

---

[1]    The evidence of the ACC and FCR, as well as their cross-examination of the Grace experts, will demonstrate that (1) Grace's "science," far from being unchallengeably correct, is sharply disputed, and that (2) these defenses, far from being the salvation of defendants' tort problems, were known and tried in the past with at best very mixed results.

By contrast, the ACC and FCR maintain that the issue in this case is, *as every District Court in this District to have faced the issue has held*[2] and as the applicable non-asbestos cases indicate,[3] the estimation of the asbestos tort liability that Grace would have faced had Grace continued to face claims in the courts of this country instead of seeking bankruptcy protection. This view is counter to what Grace imagines would be the results in some "new" alternative legal universe.  In making this real-world estimate, as in almost any forecast, understanding similar past experience is an essential foundation.  In the years before its bankruptcy, Grace faced hundreds of thousands of asbestos personal injury lawsuits.  In some instances, those actions were resolved by trial leading to a final judgment, but, as with most civil litigation, the great bulk of the claims were resolved without trial, usually by settlement.

Every court that has made an estimate of a debtor's pending and future asbestos personal injury liabilities has heard and considered evidence on how claims were resolved in the past, including by settlement.  In prior asbestos estimation cases, that evidence has included testimony from lawyers with extensive professional and personal experience in the field.[4]

---

[2]      *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 123 (D. Del. 2006) (Robreno, J.) (citing *In re Owens Corning*, 322 B.R. 719, 722 (D. Del. 2005) (Fullam, J.)); *In re Federal-Mogul Global, Inc.*, 330 B.R. 133, 155 (D. Del. 2005) (Rodriguez, J.); *see also In re Eagle-Picher Indus., Inc.*, 189 B.R. 681, 683 (Bankr. S.D. Ohio 1995).

         The Court has called the parties' attention to these decisions.  Just after the District Court's *Armstrong* opinion was issued, the Court commented, "I also understand what various District Courts have been writing with respect to how the personal injury estimations are to be conducted.  I would advise all parties to take a look at it because some of it seems to be a pretty darn good process for trial to me."  Aug. 21, 2006 Hr'g Tr. at 214 [D.I. 13077].

[3]      *See, e.g., In re Farley, Inc.*, 146 B.R. 748, 753 (Bankr. N.D. Ill. 1992) (valuing tort claim based on probabilities of success at trial); *In re Federal Press Co.*, 116 B.R. 650, 654 (Bankr. N.D. Ind. 1989) (valuing tort claim by reference to national average jury award for similar claims).

[4]      *See, e.g., Armstrong*, 348 B.R. at 125; *Federal-Mogul*, 330 B.R. at 140.

Peter Kraus is a founding partner of the Dallas, Texas, law firm Waters and Kraus LLP. His speciality is personal injury tort litigation.  He has represented thousands of individuals in suits against Grace and other defendants, and has tried numerous asbestos cases to verdict in courts across the country.  Thus, Peter Kraus' testimony brings a background of direct, practical experience to the proceedings and is a legally proper and highly relevant contribution to evidence the Court will have to assist it in reaching a decision.

<u>ARGUMENT</u>

I.    <u>Neither Rule 408 nor Grace's denial of tort liability in its standard settlement agreements bars Mr. Kraus' testimony.</u>

Grace's motion repeats familiar arguments that Rule 408 bars all testimony concerning the actual experience of Grace in resolving asbestos personal injury claims. (Kraus Mot. at 7-10). The reasons that such evidence is not barred by Rule 408 and is highly relevant have been thoroughly addressed in earlier submissions by the ACC and FCR[5] and those arguments are not repeated here.[6]

It is, however, appropriate to respond to a point on which Grace has chosen, in its latest brief, to lay special emphasis – that Grace's standard settlement agreements did not admit

---

[5]     *See, e.g.*, Motion in Limine of The Official Committee of Asbestos Personal Injury Claimants Relating to Settlement Information Subject to the Debtors' Rule 408 Argument, March 14, 2008 [D.I. 18306]; The Official Committee of Asbestos Personal Injury Claimants' Response to Grace and the Equity Committee's Motions To Exclude or Limit Expert Testimony, Dec. 21, 2007 [D.I. 17694].

[6]     Much of Mr. Kraus' testimony does not implicate Grace's Rule 408 argument all.  Even if the Rule were – incorrectly – held to apply to bar testimony about *Grace's* historical settlement reasons and criteria, it would not bar testimony about the nature of asbestos trials and the evidence Mr. Kraus presented on behalf of his clients in such trials, or bar testimony concerning the impact of the bankruptcy stay on trial preparation against Grace.

liability.  Grace contends that Mr. Kraus's testimony is an attempt to prove that Grace settled because it acknowledged a tort liability that its agreements denied.  The ACC is not arguing that Grace formally accepted tort liability when it paid a claimant rather than risk trial, but rather that when it did so it converted a potential legal liability arising from a tort into a realized financial obligation.  Those settlement-based payment obligations are liabilities like any other obligation to pay money – no different than bonds or personal fund obligations.  Grace has repeatedly described what it has paid, or expected to have to pay, to resolve asbestos personal injury claims as its "liability."  *See, e.g.*, W.R. Grace 10-K Financial Statement, Dec. 31, 2000, at 12 (excerpt attached as Exhibit 1).

The function of estimation of the value of the pending and future asbestos personal injury claims against Grace is not to determine Grace's legal liability on the tort claims – a task that is both wholly impractical and beyond a bankruptcy court's authority – but rather to approximate the financial costs Grace would likely incur to resolve the claims.  As in the past, some of its financial obligations would be based on judicial judgments founded on a finding of tort liability, but the overwhelming majority of the costs would arise from pre-judgment settlement agreements, under which definitive tort liability would never be admitted or determined (by either party) but a Grace financial obligation would unquestionably be incurred.  Accordingly, evidence of Grace's past settlement history, including that which Mr. Kraus will offer, is relevant, not because it calls into question the effectiveness of Grace's standard denials of tort liability, but because it is highly probative as to the likely price Grace would incur to resolve similar claims in the future.

II.     <u>Mr. Kraus can testify as a fact witness, drawing on his direct experience, and in doing so he will not be offering legal opinions that invade the Court's exclusive authority to declare the applicable law.</u>

Mr. Kraus has direct personal knowledge of matters at the heart of the issues in this estimation proceeding – how Grace resolved its asbestos personal injury liabilities.  There is, as the Third Circuit has held, a "strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact which is embodied in the Federal rules [sic] of Evidence."  *United States v. Velasquez*, 64 F.3d 844, 849 (3d Cir. 1995) (internal quotes and citations omitted).

Mr. Kraus will testify to factual matters of his personal knowledge.  To the extent Mr. Kraus' evidence may include opinions or inferences, it is admissible under Rule 701, which allows non-expert witnesses to give opinions or draw inferences when they are "(a) rationally based on the perception of the witness" and "(b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."  Fed. R. Evid. 701.  As the Third Circuit, applying the Rule, has stated, "the modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination."  *United States v. Leo*, 941 F.2d 181, 193 (3d Cir. 1991) (internal quotations and citations omitted); *see also In re Holocaust Victim Assets Litig.*, 270 F. Supp. 2d 313, 316 (E.D.N.Y. 2002).  The Third Circuit has held explicitly that Rule 701 permits an attorney familiar with the facts relevant to a case both to testify to those facts and to express professional opinions concerning their implications for the case.  *See Eisenberg v. Gagnon*, 766 F.2d 770, 780-81 (3d Cir. 1985).

Grace's contention that Mr. Kraus should be testifying, if at all, as an expert is without merit.  An attorney whose intended testimony and its basis in personal experience are properly disclosed can testify as a fact witness about matters with which he was personally involved.  *Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F. Supp. 2d 529, 551-52 (S.D. Tex. 2006); *Holocaust*

*Litig.*, 270 F. Supp. 2d at 316.  Witnesses can testify from personal experience to matters that they might also have been qualified to address as an expert.  *United States v. Soto-Beniquez*,  356 F.3d 1, 37 (1st Cir. 2004) ("[W]itnesses who testify only about their perceptions of an event, or about lay opinions arising out of those perceptions . . . are not experts under Rule 702 regardless of any specialized training or experience they may possess.")[7]

Mr. Kraus will support his testimony with facts drawn from his personal experience; and regardless, Grace's claim that what he says is inadequately supported goes to weight, not admissibility.

III    <u>Mr. Kraus' testimony will show that the PIQ Responses are not a fair approximation of the evidence claimants would be able to bring to bear if their cases were tried, which is legitimate impeachment of Grace's favored evidence</u>.

Grace makes the genuinely puzzling argument that Mr. Kraus should not be permitted to testify because his evidence will call into question the probative value of an evidentiary centerpiece of Graces case – the claim that the information given in claimants responses to the Personal Injury Questionnaires ("PIQs") represents the sum total of the evidence that they would be able to present to support their claims at trial.

That a witness may question the credibility or significance of an adverse party's evidence is obviously not grounds for exclusion.  It is entirely permissible to introduce testimony describing why information that an adverse party relies on is limited, incomplete, and misleading, even if accurate within its own four corners.

---

[7]    From the ACC's witness disclosure and from Mr. Kraus' deposition, Grace has had full notice of the intended scope of Mr. Kraus' testimony and of his personal involvement with the matters with respect to which he will testify.  The ACC disclosed Mr. Kraus as a testifying witness in February *2006.*

The PIQ does not even ask for critical pieces of information that would presented at trial, notably the identity of all fact witnesses who will testify on product identification and other exposure issues, the expert witnesses who will testify to injury and causation, nor the trial exhibits plaintiffs will introduce in support of their case.  Mr. Kraus will not, as Grace contends, be offering excuses for alleged failures to answer the PIQs fully.  Rather he will explain how and why the responses to Grace's discovery[8] are necessarily based on incomplete information, because, as Mr. Kraus' firm's responses, like many of the other responses, explicitly stated, they reflect only the information available when the responses were submitted, and not the plaintiffs' full proof at trial.[9]  He will describe how the bankruptcy stay blocked claimants from acquiring information by standard discovery procedures, and how the fact that no trials can take place during the pendency of Grace's bankruptcy means that other evidentiary preparation has been suspended.  In short, he will testify as to why the responses, even though detailing all the information available when the discovery PIQs were answered, do not reflect the evidence that

---

[8]     The Court in allowing the PIQs to go forward, explicitly did so as a discovery device. *E.g.,* Order Concerning Debtors Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire, Oct. 12, 2006 [D.I. 13393] at 1 ("as a general matter, the questions contained in the Questionnaire are relevant *for purposes of Grace's discovery*") (emphasis added).  The PIQ itself states that "the Court has ordered that, *as part of the discovery process,* all holders of pre-petition asbestos personal injury claims must complete and return this questionnaire." PIQ at i (emphasis added).  Indeed, Grace's counsel argued for the PIQ process as an exercise of Grace's discovery rights.

[9]     As Waters & Kraus stated on every PIQ response:

> Due to the Bankruptcy Automatic Stay, For The Past Five Years This Claimant Has Been Prevented From Doing Site-Specific And Individual-Specific Discovery Of W.R. Grace And Related Debtors.  Had Such Discovery Been Permitted, It Is Likely That The Claimants Would Have Obtained Evidence (Or Additional Evidence) Of Substantial Exposure To Hazardous Asbestos Fibers Emitted From Products Manufactured, Sold, Or Distributed By W.R. Grace Or Other Debtors, Or To Asbestos Fibers For Which Grace Has Legal Responsibility.

Waters & Kraus PIQ Response, T. Florence Dep. Ex. 14, Oct. 30, 2007, at 15 (excerpt attached as Exhibit 2).

plaintiffs would present at trial.  This factual foundation supports the ACC and FCR argument

that the quality and extent of the evidence supporting the claimants' cases cannot be judged by

the PIQ responses.  Moreover, Due Process and the applicable provisions of the Code and

statutes mean that claimants' claims could not be determined on the basis of the one-sided and

limited PIQ process.

    This position, and the presentation of factual evidence in support of it, is fully consistent

with the Court's orders relating to the PIQs.  Those orders authorized the PIQs as Grace's

discovery devises, and required that the PIQs be answered fully based on the knowledge of

responding claimants and/or their representatives.  Nothing in those orders purported to require

the claimants to prepare their cases fully for trial, nor did they lift the automatic stay, which

would have been necessary to enable claimants to present a fully-trial-ready case in a trial

involving Grace.  Further, the orders did not prevent the ACC and FCR from presenting

witnesses pointing out the limited nature of the information embodied in the responses, as

support for their arguments calling into question the conclusions Grace seeks to have drawn from

its analysis of the responses.

    Discovery responses must (subject to privileges and objections) fully disclose what the

responders know; however, there is no requirement that new information be generated simply

because it would, if known, be responsive.  The Court's orders – insofar as they address evidence

related to the PIQ – only require that claimants reply to the inquiries to the extent of their

knowledge and will not be heard to present excuses for failure to answer the PIQs to the full

extent of what they knew.[10]  The orders do not say that claimants need go beyond providing what

---

[10]    For example, the December 22, 2006 Order Regarding Motions to Compel Claimants to
reposing to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire [D.I. 14149],
provides, "[I]n responding to the information required by Part V of the Questionnaire, Claimants

they and their counsel had, or do things that the stay made impossible, but that would be done before their cases came to trial.  Nor do the orders suggest that the responses will be deemed to automatically constitute the full body of evidence claimants would have to support their claims were they able to proceed to trial.

Even Grace's counsel recognizes the vast difference between what the PIQ responses show and what claimants would, in most cases, present when their cases were fully ready for trial:

> [A]s of this point in time there will be claims that were very mature, lots of information. There will be claims that even were settled.  There will be a lot of claims that were immature . . . . That's just the way that it is, and the estimators will have to deal with each of those claims differently.  You don't take all the claims that were pending as of April 1 [2001] and then attempt to make them all the same by saying, We're now going to give everybody the opportunity to come forward and try to conduct the discovery that maybe they would have liked to conduct to find out whether their claim was good, bad, or indifferent.  *All you have is a snapshot* and you take it as it is.  All the questionnaire did was to ask people what evidence they had to support their claims, and it *deliberately froze them* here.

Aug. 21, 2006 Hr'g Tr. at 200-01 (emphasis added).  Mr. Kraus' testimony will illustrate why that "snapshot" does not show the whole picture.

IV.  <u>Mr. Kraus is not barred from testifying by invocation during pre-trial discovery of attorney-client and work product privileges and Grace has not been denied necessary discovery.</u>

In the Witness Disclosure, the ACC has explicitly limited the scope of the testimony that Mr. Kraus will give to "his firm's public dealings with Grace in settlement negotiations, discovery, and trials" adding that the ACC "will not ask [him] to answer any questions that would invade a privilege or the work product doctrine, or about their internal reasons why they

---

are only required to provide information that is *known to them at this  time*."  Order at ¶ 2. Similarly, "[c]laimants are required to provide information concerning their race *if any such information is available in Counsel's files*."  *Id.* at ¶ 6.

settled cases with Grace."[11]  The subjects of his intended testimony are inherently non-privileged matters, including what evidence was introduced on behalf of his clients in trials in which Grace was a defendant and the form of that evidence, what Grace told him it required before it would pay money to resolve a mesothelioma or lung cancer case prior to judgment, and what impact the bankruptcy had on his clients' ability to take discovery from Grace or take it to trial in the courts in which the cases were pending at the time of the bankruptcy.  Mr. Kraus will not testify either to what clients told him or to the internal policies, judgments, and activities of him or his firms, but rather to matters that are either in the public record or involve statements made by Grace.

The mere fact that some of Mr. Kraus testimony will relate to non-confidential interaction with Grace and other defendants (on matters that may also have been the subject of privileged communication with clients or reflect an attorney's analysis) does not entitle Grace to breach the attorney-client or work-product protections or require that the testimony on the non-confidential matters be excluded.  Presentation of evidence in court, discussions of settlements, and statements made by an attorney on behalf of a client – all of which are often ultimately based on privileged interaction with the client and always reflect attorney work product – does not entail a waiver of privileges.  No more does the offering of evidence related to those matters.

Grace sought at Mr. Kraus' deposition and in its document requests to inquire into matters that went far beyond the intended scope of his testimony.  Most of these matters, Mr. Kraus responded to, but some questions and requests were such that they inevitably produced objections to production and instructions not to answer on privilege grounds.  These subjects

---

[11]    Official Committee of Asbestos Personal Injury Claimants List of the Witnesses that It Intends To Call at the Hearing for the Estimation of Asbestos Personal Injury Liabilities, Dec. 21, 2007 [D.I. 17692] at 11-12.

included, for example, internal procedures at his current and former firms;[12] "exactly what your thought process was in resolving each and every one of those individual cases" – "that you resolved against Grace from 1999 to 2001;"[13] and his former firm's response to accusations of witness coaching.[14]  That Grace chose to raise these issues in Mr. Kraus' deposition and in its document requests (and to elicit the inevitable privilege objections and instructions) in no way calls into question Mr. Kraus' ability of give testimony on different, non-privileged matters. Grace's cross-examination that is within the scope of that direct testimony is extremely unlikely to raise privilege issues.

At the very least, it is grossly premature to suggest that because cross-examination on some topics might produce a claim of privilege, a witness' testimony should be excluded entirely.  When and if such issues arise, they can be resolved then, in a concrete context.

Grace has not been denied discovery needed to inquire into the basis of Mr. Kraus' testimony.  Document production has been withheld *only* in privileged areas – such as his firms' client intake and case preparation processes – that are far removed from the topics on which Mr. Kraus will testify.  His firm has produced all of its non-privileged documents related to Grace. These documents included the depositions, documents, exhibits, and other discovery materials that were produced to Grace or created in the course of litigating and resolving the mesothelioma and lung cancer cases that Mr. Kraus' firm resolved with Grace between 1999 and 2001.

Grace also does not have any legitimate complaint about the form in which the documents were made available.  Initially, the firm produced CDs with Grace-related

---

[12]    *See* Kraus Dep. Tr., March 4, 2008, at 70, 113, 128 (intake process); Kraus Dep. Tr. at 171, 220, 177 (settlement policies and priorities) (excepts attached as Exhibit 3).

[13]    Kraus Dep. Tr. at 221.

[14]    *See* Kraus Dep. Tr. at 189, 209.

depositions, exhibits, and exhibit lists.  In addition, it offered to make available at its offices in Texas some 124 gigabytes of additional documents (estimated to approximately 100 file boxes if printed out) – including all exhibits referred to in the exhibit lists on the CDs that had been produced.  When Grace requested that Mr. Kraus' firm produce this additional information on CD, the firm caused the material to be downloaded onto 40 CDs and prepared for shipment to Grace's counsel, only to be told the next day by Grace that "At this stage of the litigation, there is no utility in producing 100 boxes of materials.  Therefore, we do not wish to receive those materials from Mr. Kraus."  Electronic Mail Letter from Amanda Basta, Counsel for Grace, to Natalie Ramsey, Counsel for Peter Kraus, Feb. 27, 2008 (attached as Exhibit 4).

Those documents that the firm produced are those that relate to the subjects on which Mr. Kraus will testify – what information was requested by, and provided to, Grace in support of claims against it and in connection with settlements and trials.  These materials supply the documentary basis, to the extent it exists, underlying Mr. Kraus' testimony.  Grace has chosen, without making any effort to review them, not to make any use of this discovery – and cannot now be allowed to complain of their supposed limitations.

It is, of course, entirely proper to decline to produce privileged information in response to a discovery request, all the more so when that information is not relevant to the subject matter of a proposed witness's testimony.  Grace suggests that by offering to testify as to what non-privileged information he conveyed to Grace in the course of resolving cases, Mr. Kraus has either waived the privilege regarding all aspects of his and his firm's asbestos litigation practice, or forfeited his ability to testify.  The relevant authority in this Circuit makes clear that a waiver by "putting in issue" arises only when a party explicitly makes an assertion about the content of a

privilege communication.  *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d

Cir. 1994).  Even leaving aside that he is not a party, Mr. Kraus' testimony will do no such thing.

In any event, whether privilege claims should limit the scope of his testimony depends on

what he in fact testifies to and in what respects privileges are invoked, and cannot be decided

wholesale in advance.  As a non-party, Mr. Kraus could not be subject to sanctions under Fed. R.

Civ. P. 37 (made applicable by Bankruptcy Rule 7037) – including, in an extreme case,

preclusion from testifying – even if there were a specific Court order requiring compliance,

which there is not.  The Third Circuit has held, "Rule 37(b)(2) on its face applies only to

sanctions against parties."  *Gen. Ins. Co. v. E. Consol. Utils.*, 126 F.3d 215, 221 (3d Cir. 1997).

Equally clearly, raising legitimate privilege objections to irrelevant discovery provides no

grounds for sanctions for contempt under Rule 45(e), which would in any case require that there

be a violation of a court order.  *See, e.g., Cruz v. Meachum*, 159 F.R.D. 366, 368 (D. Conn.

1994) ("Before sanctions can be imposed under Fed.Rule Civ.P. 45(e), there must be a court

order compelling discovery.").

There has, of course, been no court order rejecting the claims of privilege at issue here,

and so there can be no question of hypothetical sanctions for a hypothetical contempt.

V.    <u>Testimony to how plaintiffs showed Grace's failure to warn of a known hazard should
      not be excluded as prejudicial</u>

Grace understandably prefers to obscure the real reason for its asbestos tort problems –

the fact that knowing of the dangers, it (and acquired companies for whose actions it voluntarily

assumed responsibility) exposed untold numbers of workers, their families, and bystanders to

grave health risks.  Grace's asbestos-related conduct – cover-ups, failure to warn, etc. – is not

some unrelated wrongdoing, but central to the issue of its liability and the ability of claimants to

establish that liability.

In all the controversy about exposure levels and medical criteria, it is easy to lose sight of the fact that the basis of Grace's liability is failure to warn of a danger it knew or should have known about.  In a trial about Grace's potential tort liability, evidence on the ease with which plaintiffs could establish a point central to that liability – Grace's knowledge of the dangers of asbestos and of its exposure of people to grave risks – is highly relevant.

Moreover, in a bench trial, there is not realistic possibility that accurate and relevant evidence will sway the court.


<u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Debtor's Motion in Limine to Exclude Testimony from Claimants' Witness Peter Kraus.


Dated: March 28, 2008

Respectfully submitted,


CAMPBELL & LEVINE, LLC

*/s/ Mark T. Hurford*
Marla R. Eskin (DE ID No. 2989)
Mark T. Hurford (DE ID No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900

– and –

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10022-4614
Telephone: (212) 319-7125

Peter Van N. Lockwood
Nathan D. Finch
Walter B. Slocombe
James P. Wehner
One Thomas Circle, NW
Washington, DC  20005
Tel: (202) 862–5000

*Counsel to the Official Committee of*
*Asbestos Personal Injury Claimants*