# EXHIBIT 1

================================================================================

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

---

FORM 10-K
ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF
THE SECURITIES AND EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2000     Commission file number 1-13953

W. R. GRACE & CO.

Incorporated under the Laws of the          I.R.S. Employer Identification No.
       State of Delaware                                65-0773649

7500 GRACE DRIVE, COLUMBIA, MARYLAND 21044-4098
410/531-4000

SECURITIES REGISTERED PURSUANT TO SECTION 12(b) OF THE ACT:

| TITLE OF EACH CLASS | NAME OF EACH EXCHANGE ON WHICH REGISTERED |
|---|---|
| Common Stock, $.01 par value } Preferred Stock Purchase Rights } | New York Stock Exchange, Inc. |
| 7-3/4% Notes Due 2002 } (issued by W. R. Grace & Co.-Conn., } a wholly owned subsidiary) and } related Guarantees } | New York Stock Exchange, Inc. |

SECURITIES REGISTERED PURSUANT TO SECTION 12(g) OF THE ACT:

None

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months and (2) has been subject to such filing requirements for the past 90 days. Yes [X]  No [ ]

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulations S-K is not contained herein and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. [X]

The aggregate market value of W. R. Grace & Co. voting stock held by nonaffiliates was approximately $135,346,000 at March 12, 2001.

At March 12, 2001, 65,456,505 shares of W. R. Grace & Co. Common Stock, $.01 par value, were outstanding.

DOCUMENTS INCORPORATED BY REFERENCE

None.

================================================================================

Lindholm, and all the purported federal class actions have been transferred to the U.S. District Court for the Eastern District of Massachusetts. Purported class actions in California, Minnesota, Illinois and Washington were pending in state courts at the time of Grace's Chapter 11 filing. While Grace has not completed its investigation of the claims described in these lawsuits, Grace believes that this product was and continues to be safe for its intended purpose and poses little or no threat to human health. At this time Grace is not able to assess the extent of any possible liability related to this matter.

Cumulatively through December 31, 2000, approximately 16,200 bodily injury lawsuits involving approximately 35,500 claims were dismissed without payment of any damages or settlement amounts (primarily on the basis that Grace products were not involved), and approximately 53,400 lawsuits involving approximately 151,800 claims were disposed of for a total of $561.8 million.

Based on Grace's experience and trends in asbestos bodily injury litigation, Grace has endeavored to reasonably forecast the number and ultimate cost of all present and future bodily injury claims expected to be asserted, based on measures governed by generally accepted accounting principles relating to probable and estimable liabilities. Grace has accrued $1,105.9 million at December 31, 2000 as its estimate of liability for all asbestos-related property damage and bodily injury cases and claims then pending (except for the cases and claims related to Grace's attic fill litigation as described above), as well as all bodily injury claims expected to be filed in the future. (However, due to the Chapter 11 filing and the uncertainties of asbestos-related litigation, actual amounts could differ materially from the recorded liability.)

Grace previously purchased insurance policies with respect to its asbestos-related lawsuits and claims. Grace has settled with and has been paid by all of its primary insurance carriers with respect to both property damage and bodily injury cases and claims. Grace has also settled with its excess insurance carriers that wrote policies available for property damage cases; those settlements involve amounts paid and to be paid to Grace. In addition, Grace has settled with excess insurance carriers that wrote policies available for bodily injury claims in layers of insurance that Grace believes may be reached based on its current estimates. Insurance coverage for asbestos-related liabilities has not been commercially available since 1985.

Pursuant to settlements with primary-level and excess-level insurance carriers with respect to asbestos-related claims, Grace received payments totaling $821.4 million prior to 1998, as well as payments totaling $74.0 million in 1998, $73.1 million in 1999, and $85.6 million in 2000. Under certain settlements, Grace expects to receive additional amounts from insurance carriers in the future and has recorded receivables to reflect the amounts expected to be recovered as asbestos-related claims are paid. At December 31, 2000, Grace had recorded a receivable of $369.3 million, as well as notes receivable of $2.7 million from insurance carriers, reflecting the estimated recovery from insurance carriers with respect to pending and projected asbestos cases and claims.

During 2000, the number of bodily injury claims made against Grace increased significantly compared to 1999 and prior year claim levels, with a total of 48,786 bodily injury claims being received in 2000, versus 26,941 claims in 1999. Also, costs to resolve asbestos litigation were higher than expected for bodily injury and certain property damage claims. In addition, five significant codefendant companies in bodily injury litigation have petitioned for reorganization under Chapter 11 of the U.S. Bankruptcy Code. These developments and events