## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>          Debtors. | Chapter 11<br><br>Case No. 01-1139 (JKF)<br>Jointly Administered<br><br>**Objection Deadline: April 4, 2008**<br>**Hearing Date: April 7, 2008 at 9:00 am**<br>**Related Docket No.: 18424** |

### FUTURE CLAIMANTS' REPRESENTATIVE'S OPPOSITION TO DEBTORS' MOTION IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY OF MARSHALL S. SHAPO

David T. Austern, the court-appointed legal representative of future asbestos personal injury claimants ("FCR") hereby opposes the Debtors' Motion in Limine to Exclude the Expert Testimony of Marshall S. Shapo, filed March 28, 2008. Grace's motion represents another attempt to prevent the FCR from fully presenting his case to the Court, ignoring the Court's stated preference to hear expert testimony subject to the parties' *Daubert* motions and to reserve ruling on *Daubert* issues until after the close of all evidence. Grace's motion, like its *Daubert* motion as to Professor Shapo, also lacks merit.

Grace has already requested, in its *Daubert* Motion filed January 4, 2008, the same relief as it requests in its current motion—that Professor Shapo be prevented from testifying as an expert because his opinions are unscientific, unreliable and unhelpful to the trier of fact. By repeating its *Daubert* arguments, Grace is trying to get a second bite at the apple, despite the fact that the Court has reserved on the parties' *Daubert* motions and has repeatedly stated that it intends to hear the expert testimony that is the subject of

the parties' *Daubert* motions in this non-jury Estimation Hearing. Grace's motion should be denied on this basis alone.

The motion also fails on the merits. Professor Shapo's testimony easily meets the requirements of Federal Rule of Evidence 702 and the Supreme Court's *Daubert* criteria. Professor Shapo's expert opinion is based upon years of experience as a tort scholar, as well as innumerable published opinions, scholarly and journalistic publications and other documents. His expert opinion, following his exhaustive review of legislation and changes in judicial case law since 2001, is that such changes "would [not] have significantly affected the amount Grace would have paid in settlements and judgments for asbestos personal injury claims had Grace remained in the tort system." *See* Exhibit A to Motion (Shapo Expert Report), at p. 3. As explained below, this opinion is reliable, there is a proper "fit" between the opinion and a key disputed factual issue in the case, and the opinion will assist the Court in evaluating that issue presented. As a result, Grace's motion should be denied.

## ARGUMENT

### I. The Debtors' Motion in Limine Attempts an End-Run Around *Daubert* that has been Mooted because the Court has Reserved Ruling on the *Daubert* Motions and has Allowed Expert Testimony to be Heard in Court and Made Part of the Record

Grace has already had the opportunity to present its arguments about Professor Shapo in its *Daubert* motion. *See* Grace Mem. in Support of Mot. to Exclude Expert Opinions, dkt no. 17587, at 57-58. In its motion *in limine* to exclude Shapo's testimony, Grace merely repeats its *Daubert* arguments, asserting again that he does not use a reliable methodology and that his opinions are not helpful to the Court. *See id.* Repeating these arguments has not made them any more compelling than when the Court

2

heard them before the Estimation Hearing began and made the decision to reserve ruling. Grace's current motion attempts to circumvent the fact that the Court has reserved ruling on the parties' *Daubert* motions and should be denied on this basis alone.

## II. The Debtors' Motion in Limine Fails on the Merits – Professor Shapo's Testimony Meets the Requirements of *Daubert* and Federal Rule of Evidence 702

Professor Shapo's expert opinion is relevant and reliable. Moreover, his opinion fits the requirements of expert testimony and will assist the Court in evaluating the legal issues in this case. Therefore, his testimony is admissible under Rule 702.

### A. Professor Shapo's expert opinion is relevant and reliable

For non-scientific expert testimony such as his to be admissible, district courts *may* consider the factors set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). However, it is not necessary that they do so. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("the relevant reliability concerns may focus on personal knowledge or experience.").[1]

Grace's argument that Professor Shapo's testimony is not based upon a scientifically reliable methodology is thus incorrect, as it mischaracterizes the Supreme Court's application of Rule 702 in *Kumho*. Because Professor Shapo's expert opinion is not *scientific* testimony, it does not have to comply with *Daubert* in such a rigid fashion. Under *Kumho*, his vast experience and personal knowledge deserve consideration. Professor Shapo has more than 40 years of legal scholarship regarding torts and products

---

[1] Additionally, the Advisory Committee's Note to the 2000 Amendment of Federal Rule of Evidence 702 states that "[n]othing in this amendment is intended to suggest that experience alone – or experience in conjunction with other knowledge, skill, training or education – may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."

3

liability law. He holds a position on the Law Faculty at the University of Texas, the University of Virginia and Northwestern University. He has also published many scholarly works. Moreover, his opinions are based on his extensive study of the tort system, including his evaluation of the impact of historical reforms to procedure or damages calculations on post-reform liabilities. He cites more than 175 documents, published opinions, scholarly and journalistic publications, medical and scientific journals, deposition transcripts, court filings, and expert reports as the basis of his opinions provided in his expert report.

In addition to mischaracterizing the correct application of Rule 702, Grace also mischaracterizes the exclusion of Peter C. Coleman's testimony in *In re Federal-Mogul Global, Inc.*. In *Federal-Mogul*, this Court properly excluded the testimony of Mr. Coleman, an outside attorney of CNA, on *Daubert* reliability grounds. Mr. Coleman proposed to testify that, *in his opinion*, the insurance companies would suffer an economic loss based on the implementation of the Plan A tort settlement compared to the practice in the tort system. *In re Federal-Mogul Global, Inc.*, No. 01-10578, June 20, 2007 Hr'g Tr. at 115 (Bankr. D. Del.). The Court properly excluded Mr. Coleman's testimony because (1) he had no experience with trusts (the subject on which he was opining); (2) he had not used any comparison to other trust procedures to objectively demonstrate how he reached his conclusion; and, most importantly (3) the Court did not even know what data, if any, Mr. Coleman looked at when forming his conclusion that the loss to insurers would range between tens and hundreds of millions of dollars. *Id.* at 115-16. Furthermore, Mr. Coleman's calculations of economic loss *could have been objectively performed* in a scientific, reliable way. *Id.*

4

Grace also failed to mention that the same Court properly *allowed* the expert testimony of Mark A. Behrens, an experienced attorney who provided expert testimony to a bankruptcy judge regarding trends in case law and state legislation related to discovery under tort law, generally, and asbestos claims, particularly. *See id.*, Aug. 28, 2007 Order Denying Mot. to Strike Trial Testimony of Mark A. Behrens.

The testimony that Professor Shapo intends to give is much more akin to the testimony of Mr. Behrens than that of Mr. Coleman. First, the Court excluded Mr. Coleman's testimony for problems that are not present here. Unlike Mr. Coleman, Professor Shapo has years of experience with the subject on which he opines. Moreover, Professor Shapo's opinions are not merely his "subjective beliefs" that are all contained "in his mind." *Federal Mogul*, 6/20/07 Trial Tr. At 106:25 – 107:16, 117:3-8). The Court has knowledge of, and access to, all of the data – over 175 documents – on which Professor Shapo bases his opinion. Second, the testimony that Mr. Behrens was permitted to give is very similar to the testimony that Professor Shapo wishes to give. The opinions of both experts center on legal analysis and explanation of tort law dealing with asbestos.

### B. Professor Shapo's expert report fits the requirements of expert testimony

Professor Shapo's expert report provides a proper "fit" between the scholarly research and analysis he has performed and a disputed issue in the case—the extent to which legislation (e.g., medical criteria statutes) and changes in judicial case law would have significantly reduced Grace's asbestos personal injury liability had it remained in the tort system beyond April 2, 2001. Grace's own expert, Dr. Frederic C. Dunbar, offers the conclusion that a "simple extrapolation of [Grace's] experience in the tort system"

would "necessarily overestimate its actual liability" due to the "dramatic changes" in the litigation environment that have occurred since Grace filed for bankruptcy. Report of Frederic C. Dunbar, at 1 (June 18, 2007). Whether recent changes in judicial case law and statutory requirements would significantly affect the valuation of Grace's asbestos liabilities if it were still in the tort system is a key fact in issue in this case.

Grace's reliance on *Laverdi v. Jenkins Tp.*, No. 01-3286, 2002 WL 31108910, at *365 (3d Cir. Sept. 19, 2002),[2] for the arguments that Shapo's testimony constitutes an impermissible "legal conclusion" and that Shapo acts as a mere "mouthpiece" for the FCR's legal arguments, is erroneous. First, *Laverdi* is not on point. There, Mr. Laverdi appealed from a judgment excluding the expert testimony of Ms. Cook, the Chairperson of the Board of Supervisors of Exeter Township, who proposed to testify as to her views on "how public meetings . . . should be run." *Id.* The Third Circuit held that Ms. Cook's testimony amounted to personal observations about what she has done or would do in similar situations. *Id.* They further noted that she "did not reference a single rule or regulation as informing her views." *Id.* Because her opinion would not be helpful to the jury, she did not constitute an expert witness and could not testify. *Id.* Professor Shapo's qualifications and proposed testimony are thus distinguished from Ms. Cook's. Professor Shapo is not opining on what he "believes" the law and the changes to the tort system *should* be. He is using his years of study and experience to opine as to the actual developments and changes in the tort law, and how those real changes would affect Grace's liability had it remained in the tort system. Moreover, unlike the testimony of Ms. Cook, Professor Shapo references numerous sources that he consulted, including

---

[2] This case was not selected for publication in the Federal Reporter and is therefore not precedential.

6

legal opinions, publications, and other documents. Thus, Grace's reliance on *Laverdi* is misplaced.

Second, Professor Shapo's expert opinion does not constitute mere legal conclusions. Professor Shapo's opinion does not go to a matter of law to be decided in this estimation proceeding. Rather, his opinion on the impact of various reforms on state law asbestos liability, *generally*, aids the Court both in understanding the tort system environment and in understanding the context in which Grace presents its argument that historical settlement and verdict values are inapplicable to an estimation of pending and future liabilities.

Professor Shapo's expertise and knowledge will also assist the Court[3] in understanding the current state of the tort system with respect to asbestos personal injury liability and the corresponding implications for Grace's estimation methodology. He will demonstrate that changes to the tort system since 2001 would have had little or no impact on the most serious, and costly, asbestos liabilities paid by defendants like Grace had they remained in the tort system. By way of example, he notes in his expert report at page 19 that medical criteria statutes enacted since 2001 would predominantly affect *non-malignant* disease claims and opines that "with respect to cancers . . . the incremental impact of even the more rigorous of these laws would not be strong." As to venue statutes, he observes that "recent commentary has pointed out that a highly rationalized plaintiff's trial bar has employed the decentralized nature of the American judicial system to push the search for new jurisdictions that would allow large numbers of suits." *See* Exhibit A to Mot. at 20, *citing* Patrick Hanlon & Anne Smetak, *Asbestos Changes*, 62

7

N.Y.U. Ann. Surv. Am. L. 525, 550-52 (2007)(citing Congressional testimony). These opinions by Professor Shapo do not depend upon or require, as Grace suggests, that he be able to "*quantify* the impact that medical criteria statutes and venue statutes have on the number of claims being filed in states that have enacted such statutes." Mot. at 7 (emphasis added).[4] Rather, such testimony will help the Court evaluate Grace's contention that using Grace's pre-petition settlement history to estimate Grace's post-petition liability for the most serious cases—i.e., malignant mesothelioma and lung cancer claims—would overstate Grace's liability because "tort reform" measures such as medical criteria and venue statutes would have reduced the amount of Grace's liability. If Professor Shapo's testimony is not allowed, the Court will need to read these various statutes itself or require the parties to submit lengthy briefs analyzing the legislative and judicial case law changes that have occurred since April 2, 2001. This work has already been done by Professor Shapo—there is no reason for the parties and the Court to re-do it.

The fact that Professor Shapo's expert opinion involves the law and legal issues is also no bar to presenting his opinion. Courts routinely permit the testimony of legal experts where their testimony would aid the trier of fact in assessing the legal issues in a case. *See Berckeley Inv. Group v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) (permitting an experienced securities litigator to offer expert testimony on the historical development of law and industry trends, as context for the issue at hand); *United States v. Leo*, 941 F.2d 181, 195-97 (3d Cir. 1991) (permitting a government contracts expert to testify as to the

---

[3] The Advisory Committee's Note to the 2000 Amendment to Federal Rule of Evidence 702 states that it might, in some cases, be important "for an expert to educate the factfinder about general principles." Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendment.

custom and practices of the defense industry, which went to the ultimate issue to be decided in the case); *First Nat'l State Bank of New Jersey v. Reliance Elec. Co.*, 668 F.2d 725 (3d. Cir. 1981) (per curiam) (permitting an expert on the Uniform Commercial Code to testify as to the established custom in the banking industry and to provide background information to help the jury determine an issue in the case). In fact, non-scientific expert testimony is often used to educate the fact-finder on issues of background, context, or industry customs which may be unfamiliar to the Court but are of crucial interest to a case. *See, e.g., Federal-Mogul*, Order Denying Mot. to Strike Trial Test. of Mark Behrens, Aug. 28, 2007, Dkt. No. 13201 (expert testimony of practicing attorney permitted to educate a bankruptcy court on trends in law and legislation relating to tort law and asbestos litigation).

Like the cases discussed above, Professor Shapo's expert opinion would assist the trier of fact in evaluating the relevant issues. This is a bankruptcy case, presided over by a bankruptcy judge, and yet it presents an unusual situation where a crucial factual issue of the case is how changes in tort law—an entirely different legal discipline—may affect the valuation of a liability of the Debtor. While the Court is certainly capable of reading and understanding legal opinions as well as Professor Shapo, his specialized tort law knowledge and expertise is helpful to understand the complex factors currently affecting the tort system, and will greatly streamline the Court's grasp of the issues. The Court also will benefit from the opportunity to ask questions of a preeminent torts expert at trial, rather than rely on the parties' briefings on the issue of how tort law changes affect

---

[4] Professor Shapo freely admits that he is not an "estimator" and has not attempted to *quantify* the amount of Grace's liability. *See* Exhibit B to Motion (Shapo Depo. Tr.), at p. 121.

9

Grace's liabilities. Thus, Professor Shapo's expertise and knowledge will aid the Court in evaluating the legal issues in this case.

## CONCLUSION

For the foregoing reasons, this Court should deny Debtors' Motion in Limine to Exclude the Expert Testimony of Marshall S. Shapo.

Dated: April 4, 2008

Respectfully submitted,

PHILLIPS, GOLDMAN & SPENCE, P.A.

/s/John C. Phillips, Jr.
John C. Phillips, Jr. (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200

- and -

Roger Frankel
Richard Wyron
Raymond G. Mullady, Jr.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
(202) 339-8400

John Ansbro
666 Fifth Avenue
New York, NY
(212) 506-5000

*Co-Counsel to David T. Austern,
Future Claimants' Representative*