*Law Offices of*
## McGarvey, Heberling, Sullivan & McGarvey, P.C.

Dale L. McGarvey
Jon L. Heberling
Roger M. Sullivan, Jr.
Allan M. McGarvey
John F. Lacey

745 South Main
Kalispell, Montana
59901-5399

Telephones:
(406) 752-5566
1-800-345-1763
Fax: (406) 752-7124
Email: jheberling@mcgarveylaw.com

July 30, 2003

Edward Perley
158 Highwood Drive
Libby, MT 59923

Dear Edward:

This is a status report on the law cases and the politics of the Libby asbestos situation. This letter at last brings some **good news** on the litigation front and on the political front.

This report will provide an up-date on all matters, and may generate more questions. For the questions, we are holding a client meeting at the Asa Woods School on Wednesday, August 6, 2003 at 6:30 PM. The format will be much like last year. Jon Heberling will make a presentation covering subjects in a bit more detail than in this letter. Then we will open it up for questions from the clients. We will emphasize as we always do that the questions must be general. We cannot discuss individual cases, since they are truly all different. Everyone's exposure history is a bit different. Everyone's symptoms and health problems are a bit different. This means that all the law cases are different. We warn that what applies to one person may not apply to another. Even husbands and wives have different exposure histories.

### 1. Politics

This year there is once again pending in Congress legislation that would regulate all personal injury claims arising out of exposure to asbestos. It recently passed through the Senate Judiciary Committee, and might get to the Senate floor some time in September. The bill would wipe out all of the Libby asbestos cases, including those against W.R. Grace in the bankruptcy proceeding, as well as claims against the State of Montana, Burlington Northern, and Maryland Casualty. Occupational disease claims would be allowed to proceed as they do presently.

July 30, 2003
Page Two

Under the national legislation, instead of proceeding with the asbestos cases as we presently do, each person would have to submit their claim to a new federal bureaucracy in the Court of Federal Claims. There will be medical criteria to qualify for benefits. It is in these medical criteria that problems develop for those with Libby tremolite asbestos disease. Most Libby asbestos disease is in the pleura (which is the lining of the lung). Libby pleural disease is, unfortunately, progressive and many have died of it. This is not the case in other parts of the country where people were exposed to chrysotile asbestos. The general medical criteria do not recognize pleural disease as all that serious. Under their criteria, many people would not qualify for compensation or would receive a minimum amount of compensation. While the most recent version of the bill would hold out some possibility of higher compensation for victims of pleural disease, the criteria would be extremely difficult for many to meet.

Roger Sullivan reports that Senator Max Baucus and his staff have been vigilantly involved in the process of trying to ensure that Libby victims are protected in the bill. You may have read in the newspapers of a "Libby exception" to the legislation's criteria. This is something that we have been working on with Senator Baucus since the bill first appeared. As reported in the papers, such an exception has been agreed to in principle by Senator Baucus and Senator Hatch, who is the sponsor of the asbestos legislation. However, while portions of a "Libby exception" are in the bill that was recently reported out of the Senate Judiciary Committee, there are important components that are not yet in the current version of the bill. We remain hopeful that the complete package, which is essential to protect the interests of Libby victims, will become an amendment to the bill if it gets to the Senate floor. So, at present, the "Libby exception" remains on shaky ground.

At this point, it is unclear whether the asbestos bill can pass. Even if the legislation passes, it may be challenged as unconstitutional. It could be tied up in the courts for years. Awards would be funded by forced contributions from asbestos companies and insurance companies. Insurance companies now oppose the bill because they contend that the cost is too high (wrong). Many democrats and organized labor say the amount is too low, and they also oppose it. So things remain unsettled on the legislative front. We can guarantee that if the bill has anything less than the full "Libby exception", we will need to launch an all out effort to oppose it. As you may recall, the last asbestos bill in 2000 went down to

July 30, 2003
Page Three

defeat, largely because of the bill's negative affect on Libby asbestos victims and others.

### 2. The cases against Maryland Casualty

Maryland Casualty was Grace's Worker's Compensation carrier from 1962-1973. We contend that Maryland Casualty designed the dust control system and did so negligently. Clients with significant exposure in these years may have claims against Maryland Casualty. Back in June 2002, the bankruptcy court issued an injunction against us proceeding against Maryland Casualty. Jon Heberling went to Delaware to oppose the injunction. We appealed the injunction to a higher court and won on all issues. This means we can proceed. However, W.R. Grace & Co. and Maryland Casualty may appeal to the Third Circuit Court of Appeals. We will see. It is refreshing to taste victory after two years of largely bad news.

### 3. The cases against the State of Montana

The State of Montana was in on the asbestos secret from 1956 forward. The State inspected, recognized the danger and received death certificates. Yet it never warned the workers, their families or the community. The issue is whether the State had a legal duty to warn the workers. The District Court Judge in Helena ruled in August 2002 that the State had no duty to warn or help the workers. On June 26, 2003, Jon Heberling argued the case to the Montana Supreme Court on appeal. The hearing went extremely well, and we believe we will win the appeal. We expect a ruling by Christmas. In the cases against the State of Montana and against Maryland Casualty, certain individual cases are pioneering the road for others. The rulings obtained will apply to all other similar claims.

### 4. Bankruptcy Court

In the last status report, we informed that Bankruptcy Judge Wolin entered rulings favorable to the fraudulent conveyance case against Grace, and that the case settled for $1 billion. Before bankruptcy, Grace spun off subsidiaries worth over $2 billion. Grace did this in sophisticated ways over many years. It was a difficult case to prove. We are extremely pleased that $1 billion came into the bankruptcy as a result of the settlement. The fraudulent conveyance case is based

July 30, 2003
Page Four

upon original work done by Allan McGarvey, here in Montana.

No date has been set as yet for filing Proofs of Claim in the Grace bankruptcy. We expected that the filing date would be some time in 2003. We appreciate that most of you have been diligent in filling out forms and supplying us with the necessary information. We will be sending follow-up letters to those who have not. We need to get all the information collected ahead of time, since it will not be feasible to do it at the last minute for over 500 clients. In particular, **obtaining medical records takes time.** It seems that the bankruptcy judge is currently focusing on issues in the Zonolite Attic Insulation case. This case involves claims that Grace must pay for removal of tremolite asbestos contaminated attic insulation from millions of houses. A trial in that case is scheduled for the fall.

If the National Asbestos Legislation passes, all personal injury claims would be moved from the Grace bankruptcy to the Asbestos Court under the National Trust. Grace's contribution to the National Trust has been estimated at under $1 billion, meaning that Grace would get to keep $2 billion or more. This is not fair. Grace should have to place all its assets into the National Trust for the asbestos victims.

5. Montana Vermiculite Co. claims

Grace purchased the Zonolite Co. in 1963. It then created an empty shell corporation called Montana Vermiculite Company, which was dissolved in 1964. We suspected the shell was not empty, and have found policies of insurance which appear to allow for claims to be made. We took Montana Vermiculite's default. Then, in July 2003, Grace made a motion in bankruptcy court to include Montana Vermiculite in the bankruptcy court's injunction against proceeding with claims against the debtor W.R. Grace. This indicates that indeed there is money up the Montana Vermiculite tree after all. We are opposing Grace's motion in bankruptcy court. Claims against Montana Vermiculite would apparently be available to some persons exposed before 1963. The policies may exclude workers (since occupational disease insurance is another matter). The policies are not all that legible. We may not have all policies. We will report as developments occur in this litigation.

July 30, 2003
Page Five

### 6. Cases against the railroad

The entire production of the W.R. Grace mine and mill was shipped out of Libby on railroad cars. The railroad yard is still covered in sparkly vermiculite. 100 car trains coming through Libby at 50 miles per hour or more cycled huge amounts of dust into the community. We have filed cases against the railroad for some community members whose exposure was through dust in the air, and who did not work at the mine or have a family member who worked at the mine. These cases are in the discovery and motion stages. We have also filed cases for railroad workers with tremolite asbestos disease, who were exposed in the Libby railroad yard and along the route to the river loading site.

### 7. Occupational disease cases

We have filed occupational disease claims for Grace workers who worked after 1979. We have also filed occupational disease claims for lumber mill workers who worked after 1979, and who were exposed to tremolite asbestos dust at the lumber mill.

The first case for a W.R. Grace worker went to trial on July 14. Many issues specific to asbestos disease under the Occupational Disease law will be decided in that case. Grace's insurance company might appeal. Also, the Worker's Compensation Judge stated that he would not reverse an old case (which limits recovery), leaving it to the Montana Supreme Court to do so. This means we will have to file an appeal in that case as well. The chances of prevailing on the appeal will be excellent.

The first case for a lumber mill worker is set for trial on August 25. It will be an important case to establish asbestos exposure at the lumber mill as having caused asbestos disease.

More Grace cases are pending, and some depend upon obtaining impairment awards under 1987 and 1989 law. In a non-Libby case, the Worker's Compensation Judge issued a bad ruling on this issue, and we will join in the appeal of that one too.

## 8. Timing

How long will all this take? This is a frequently asked question. As you can see from the above, the stakes are high for any defendant in a Libby asbestos case. For, if the first cases win, it could mean that Maryland Casualty, the State of Montana, the railroad or other defendants will have to defend many more cases. Accordingly, we can expect vigorous defenses, and appeals to the Montana Supreme Court if we do prevail. The whole process can take a number of years. Against W.R. Grace we litigated from 1995-2001. There were jury verdicts in 1997, 1998 and 1999. There were three appeals to the Montana Supreme Court. As of 2001, Grace was still defending cases, though it had settled quite a few with us. Eventually issues get decided, a pattern develops, and cases settle. We expect it to be the same way with the cases against Maryland Casualty, the State of Montana, the railroad and the occupational disease cases.

The severe cases get highest priority, and have the greatest need. Those of you with mild cases will benefit from the path pioneered in litigation of the severe cases.

So, the cases against Maryland Casualty, the State of Montana, the railroad and others will take several more years before issues are decided, patterns develop, and group settlements become possible. All the defendants are well funded, and can extend the battle for a long time. The occupational disease cases should move a bit faster than that, depending on how many appeals to the Montana Supreme Court are necessary.

The Grace bankruptcy will take several more years. After the proofs of claim are filed, we will see what kind of challenge Grace may make to the Libby tremolite asbestos disease claims. Maryland Casualty will likely seek relief from claims against it through the Grace bankruptcy. That will likely be a major battle, also involving appeals.

If the National Asbestos Legislation becomes law, and if the "Libby exception" is in it, one would imagine it would take a couple of years at least to set up the federal bureaucracy necessary to process the claims. Nevertheless, this would probably be the quickest route to payment.

July 30, 2003
Page Seven

### 9. Local politics

The matters of local politics are also of great importance. It is important to attend Citizens Advisory Group meetings. There are notices in the Western News. Show your support. Ask questions. Every time the EPA, the State, or other organization calls a meeting, it is important to attend. It shows that they are being watched, that people care, and that people are involved. The degree of involvement to date has made a great difference in how Libby issues have been handled. We encourage you to continue to show up and be involved.

Dr. Brad Black and the Center for Asbestos Related Disease (CARD) have done a great job, and deserve your support every chance you get. Dr. Alan Whitehouse of Spokane has spent many hours without pay on asbestos disease issues. He is the nationally recognized expert on Libby tremolite asbestos disease. He too deserves all the support you can give. There have been efforts by Grace and HNA to undermine and discredit Dr. Black and Dr. Whitehouse. They have never been able to accomplish this in court. Instead they use more indirect ways. In fact, in court on July 14 Dr. Whitehouse's testimony was unimpeachable. There was nothing Grace's insurance company could do to attack it. Slowly but surely the severe nature of pleural disease in Libby is being acknowledged. In fact, the current version of the National Asbestos Legislation recognizes this.

Please present any questions you have on the above to us at the meeting on August 6, 2003. If you are not in Libby, then any questions should be directed to Jennie Jacobson at our office. As to your individual claims situation, we send a claims review letter when deadlines come up.

Yours sincerely,

McGARVEY, HEBERLING, SULLIVAN
& McGARVEY

*Jon L. Heberling*

JON L. HEBERLING

JLH:joh

EDITORIAL DESK 523-5241

# Opinion

MISSOULIAN EDITORIAL

Missoulian April 4, 2001 (B4)

EDITORIAL POLICY

The Missoulian strives to present ideas from a diverse array of writers. Missoulian editorials express the views of the newspaper's editorial board. Signed commentary, columns, letters and editorial cartoons represent the independent views of the authors.

EDITORIAL BOARD

Publisher David Fuselier, Editor Mike McInally, Editorial Page Editor Steve Woodruff, Associate Editor Mea Andrews, News Editor Carol Simmons

## Forget accountability; it's only business

**SUMMARY:** People in Libby and elsewhere suffering from asbestos-related diseases will be victimized again.

W. R. Grace & Co. has filed bankruptcy in the face of hundreds of thousands of lawsuits from victims of asbestos-related diseases. In this case, U.S. Bankruptcy Court is a safe haven to which the company has fled in sidestep full accountability for its actions.

Bankruptcy is a perfectly legal escape hatch through which the company can expect to emerge only somewhat scathed, while people sick and dying because they breathed asbestos produced or used by Grace will have insult heaped upon their injuries.

It's nothing personal. It's only business.

In announcing its bankruptcy filing, Grace declared it would "continue to operate its businesses in the usual manner." Its executives expressed confidence that the company will emerge on track for "long-term growth and profitability." In a written statement Monday, Grace's CEO Paul Norris said, "We are confident that ... the company can leverage its inherent value and strong cash flow to emerge from reorganization as a strong, financially sound enterprise."

Bankruptcy allows the company to effectively lump together all the lawsuits and claims for compensation from people alleging health effects from asbestos. Some 200 of those claims stem from illnesses related to Grace's now-defunct vermiculite mine near Libby. The bankruptcy filing automatically freezes all lawsuits and collection of compensation. Then, under the supervision of a federal judge, the company will negotiate with its creditors — including representatives of people suing over asbestos exposure — to come up with a plan to resolve all the claims once and for all.

Grace will strike a deal. The infinite harm suffered by people exposed to its asbestos will be transformed into a finite and affordable amount of money. Grace will resume business as usual, on track for long-term profitability.

In the end, asbestos victims will receive a share of a settlement tailored to allow the company to emerge from bankruptcy. People's lives and families will be reduced to a hard number. That number will be considerably smaller than the amount of compensation juries would have been expected to come up with. Otherwise, Grace wouldn't have chosen this route.

Don't look for justice or even fairness to victims in this process. Don't hold Grace to your standards of honor and responsibility. This has nothing to do with all that. This is purely business.