**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: April 10, 2008 at 4:00 p.m.** |
| | ) | **Hearing Date: April 22, 2008 at 11:30 a.m.** |
| | ) | |
| | ) | **Re: D.I. 13828** |

**ZAI CLAIMANTS' OPPOSITION TO GRACE'S
MOTION FOR AN IMMEDIATE BAR DATE**

## I.    INTRODUCTION

Grace's attempt to jettison the ZAI Science Trial process and jump to an immediate bar date because it now suits Grace's strategy should be rejected. This Court and the parties have spent significant time developing the ZAI record – a record that now permits the parties to move to the next logical steps as outlined in the ZAI Opinion: (1) what theories of relief, if any, may be available to ZAI Claimants? and (2) will a class action assist with the fair resolution of ZAI claims? (ZAI Op. at 52). These next foundational steps will help determine whether there is any need for a bar date (if there are no viable theories, there are no claims to be barred), and the scope, content and effectiveness of a bar date notice (fundamentally different if a class representative appears in the bankruptcy on behalf of all ZAI Claimants). In light of Grace's recently announced settlement with the PI Claimants, it is especially important that the pending ZAI legal and class issues be addressed before a bar date to avoid appeals that could delay plan confirmation.[1]

---

[1] The ZAI Claimants have proposed as an alternative to protracted ZAI bankruptcy proceedings that the stay on ZAI litigation be lifted. If that occurs, litigation on the bar date and all other ZAI issues will be ended here and Grace can proceed to focus on its reorganization. See Expedited Motion of the ZAI Claimants to Lift Stay and Return ZAI to the Tort System. Dkt. No. 18462. If this motion is granted, Grace's Bar Date motion and this response are moot.

Grace has known since the early days of this bankruptcy when the first ZAI class action adversary was filed, that class certification was a fundamental ZAI issue.[2]  Grace cannot argue surprise, nor that it is now too late or disruptive to consider class certification. Grace has tried to recast the controlling law in an effort to avoid having class issues determined before bar date issues. But as the ZAI Claimants show below, respected judicial authority has recognized that in a situation like this - where class certification has been raised early, the claims are mostly small, and the claimants are largely unknown - class certification will assist, not impede a fair bankruptcy resolution. Grace's head-in-the-sand approach of "Let's send out a bar date notice, see who files a form, and just deal with those claimants," ignores the nature of the ZAI claims. If accepted, it will result in appeals and a bankruptcy resolution that does not solve Grace's ZAI problem in the decades to come.

The Court should follow its ZAI Science Trial plan, as set forth in the ZAI Opinion, and address the legal theories and class certification before sending out any bar date notice.[3]  Class certification, coupled with a bankruptcy estimation of ZAI claims, can move ZAI to a prompt resolution and avoid post-confirmation appeals. Contrary to Grace's argument, the ZAI Claimants do not seek some type of impermissible "fluid recovery" through a class action.[4] Rather, a class action is a recognized litigation tool that prevents the rights of unknown class members from being lost because they cannot practically litigate a small claim in a foreign forum. Through the class representative, the rights of these unknown and unknowing class members are given meaning and representation. Once the class is certified, its value for plan purposes can be estimated using Grace's sales records and accepted construction data, assisted

---

[2] See Notice of Motion For Class Certification of Zonolite Claims. (Nov. 19, 2001) (Attach. 1).

[3] As the Court is aware, the ZAI Claimants respectfully disagree with the formulation of the ZAI Science Trial issue and its summary resolution by the Court. But they recognize that until an appeal is permitted, this is the current state of the record.

[4] See Feb. 28, 2008 Tr. at 75. (Attach. 2).

2

by court-appointed experts and/or a mediator (as the ZAI Claimants have suggested). A fund set up under bankruptcy law can provide for an educational campaign to avoid unnecessary exposures, and permit reasonable payment to qualifying ZAI Claimants as their claims accrue. The fund can have appropriate safeguards to ensure that Grace pays only qualifying claimants and that unused funds are returned to Grace.

The critical difference between the parties is that Grace would shut the door on any small claimant who does not file a claim by the bar date (whether the claim has accrued or not), while the ZAI class action claim would keep the door open for a bankruptcy estimation and orderly claims processing as claims accrue under state law. The ZAI Claimants believe the Court is searching for a solution that identifies the true universe of claimants, as it expressed at the last Omnibus Hearing:

> I don't care whether it's done by class certification, by notice, by, I don't care what form, what label you choose to put on it. I want to try to figure out who the universe of people are so that both, everybody who's entitled to be paid can be paid, whether it's now or ten years from now.

Feb. 25, 2008 Tr. at 62. (Attach. 2).

The way to accomplish this is not to close the door with a bar date, but to estimate the universe of claims from the available sales and construction data, and to order negotiation of a trust fund amount (or determine its value if negotiation fails), that will pay legitimate claims as presented "whether it's now or ten years from now." The Court has previously told Grace that estimation is the correct method to define a universe of claims:

> [T]he estimation purpose is not to allow the claim itself, it's to figure out for distribution and confirmation, I should say, issues what the likely universe of claims will be and what the value is. It's a different purpose from the analysis of the claim itself.

Nov. 14, 2005 Tr. at 127. (Attach. 3).

3

A bar date and proof of claim, as Grace proposes, will not accomplish this goal. As the Court reminded Grace:

> You don't need a Proof of Claim to estimate. The whole process of a Proof of Claim is for the Debtor or some other Party-In-Interest to substantiate that that specific claim is either allowed or disallowed in the bankruptcy process. For estimation, if you're looking at an aggregate, you don't need a Proof of Claim for that function.

Nov. 14, 2005 Tr. at 140. (Attach. 3).

The Court's statement on the issue over two years ago is just as true today. A ZAI estimation is not only the best way to determine the universe of ZAI claims; it is also consistent with, though not identical to, ZAI's treatment in Grace's recently announced settlement:

> **ZAI Claims**: Unless the Plan Proponents agree otherwise as to the treatment of the ZAI Claims, the court shall estimate, for purposes of allowance and distribution, any liability on account of ZAI Claims prior to or in connection with the confirmation of the Plan. ZAI Claims shall be paid 100% of their allowed amount up to the amount of the court's estimate.

W.R. Grace Form 8-K (Apr. 7, 2008). (Attach. 9).[5]

## II.    CLASS CERTIFICATION CONSIDERATION BEFORE A BAR DATE IS THE LOGICAL AND PREFERRED ORDER OF PROCEEDING

Throughout this bankruptcy, Grace has pressed three propositions as fundamental to its argument that ZAI class certification should be deferred:

1.    A bar date must precede a class certification motion;

2.    Class certification cannot be considered until Grace objects to a claim, thereby creating a "contested matter;"

3.    Class certification is a rarely used, disfavored tool in bankruptcy.

Each of these propositions is wrong.

---

[5] While the Claimants disagree that ZAI claims could be allowed in the aggregate, estimation, as described herein, can identify the universe of claims.

A.    **Contrary to Grace's Position, Class Certification Before a Bar Date Notice is Entirely Appropriate.**

Since the early days of this bankruptcy, Grace has attempted to convince this Court that ZAI class certification cannot be heard until after a bar date is set. On March 13, 2002, Grace's national counsel wrote this Court stating that the proper sequence for proceeding with ZAI issues was "bar date is set, claims are filed, bar date passes and class certification is then heard last of all."[6] Grace assured the Court, "[t]hat sequence has the further virtue of being correct under the law."[7] Almost six years later, on February 25, 2008, Grace's national counsel was still repeating its mantra that a bar date must precede class certification:

> [W]hat happens in the proper procedure is that you file a claim by the bar date, then you move to have that claim be treated as a class claim. And if the Court then finds that under Rule 23 it should proceed as a class action, it becomes a class action. That is how it is done. So the idea of doing class first is contrary to the Code, contrary to the rules.[8]

Grace is simply incorrect. Consideration of class certification <u>before</u> the bar date is preferable. It avoids the problem of potentially disrupting the bar date process with class motions after the bar date had been set. As one court recognized:

> The most propitious time for filing a motion for class recognition is <u>before</u> a bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors.

<u>In re Sacred Heart Hospital</u>, 177 B.R. 16, 23 (Bankr. E.D. Pa. 1995) (emphasis added).

Recent cases agree that while a class certification motion filed after a bar date is not necessarily defective, the preferable procedure is to address class certification <u>first</u> to avoid

---

[6] Mar. 13, 2002 letter from David M. Bernick to Honorable Judith K. Fitzgerald, p. 1. (Attach. 4).

[7] <u>Id.</u> at 2.

[8] Feb. 25, 2008 Tr. at 49-50. (Attach. 2).

complicating the bar date process.    In In re Computer Learning Centers, Inc., 344 B.R. 79

(Bankr. E.D. Va. 2006), for instance, the court noted that class certification motions should be

decided as early as possible, "Logically, the Rule 7023 motions should be granted before a class

proof of claim is filed."  Id. at 88.  As the court noted, "[t]he better practice is to resolve the Rule

7023 motion first then file the class proof of claim.  If an extension of the bar date is necessary to

achieve this, a motion to extend the bar date should be made."  Id. at 87, n.11; see also  In re

First Alliance Mortgage Co., 269 B.R. 428, 446 (C.D. Cal. 2001) ["[T]he relevant time for the

Court's review is when Class Claimants first filed for certification, and not after the notices had

been sent out."]; In re Northwest Airlines Corp., No. 05-17930 (ALG), 2007 WL 2815917, at *4

(Bankr. S.D.N.Y. Sept. 26, 2007) [time to seek certification is before the bar date] (Attachment

11).

        The ZAI Claimants have been attempting to have class certification heard for over six

years.  Amazingly, Grace has the temerity to suggest that entertaining ZAI class certification

now "will create such delays so late in the game."[9]  It goes without saying that if the ZAI

Claimants had waited until after the bar date to seek class certification, Grace would be arguing

that class certification came too late in the process, would disrupt the bar date, and would impede

Grace's reorganization.[10]  Indeed, this is the very tact Grace took against Anderson Hospital

when it filed its class motion after the bar date.  As Grace well knows, failure to seek

certification as early as practicable in bankruptcy can be detrimental to class certification.  See In

re Northwest Airlines Corp., 2007 WL 2815917, at *4 [motion for certification after bar date

---

[9] See Defendants' Motion for an Order (A)Establishing a Proof of Claim Bar Date for Zonolite Attic Insulation Claims, and (B) Approving the Related Proof of Claim Form, Bar Date Notices and Notice Provisions, ["Grace Bar Date Motion"], at 2.

[10] It is hard to fathom how Grace can claim that ZAI Claimants' efforts to move to the next steps in the ZAI process will foster an undue "delay" in light of Grace's seven years of bankruptcy maneuvering before finally settling the PI claims for an amount far closer to PI's view of their claims' value than Grace had contended.  Had Grace settled the PI claims years ago, ZAI could be wrapped up by now.

denied as untimely]; In re Woodward & Lothrop Holdings, Inc., 205 B.R. 365, 371 (Bankr.

S.D.N.Y. 1997) [class claimants' failure to seek certification until after bar date detrimental to

class certification]; In re Jamesway Corp., Nos. 95 B 44821 (JLG), 96/8389A, 1997 WL 327105,

at *10 (Bankr. S.D.N.Y. June 12, 1997) [motion for certification denied when filed after bar

date] (Attachment 12); In re Musicland Holding Corp., 362 B.R. 644, 652 (Bankr. S.D.N.Y.

2007) [failure to move for certification until after bar date factor weighing against court's

application of Rule 23]; In re Ephedra Prods. Liab. Litig., 329 B.R. 1, 5 (S.D.N.Y. 2005)

[certification denied where motion for application of Rule 23 came well after bar date].[11]  No

such delay allegation can be made against the ZAI Claimants who moved for class certification

at the dawn of this bankruptcy.

It makes eminent sense to address class certification before the bar date issue.  If class

certification is granted, the class representative will be "present" before the Court representing

the interests of all class members.  Class members' rights will be preserved if they take no action

to opt out of the case.  The claims can be estimated using Grace's sales figures, average

installation size, and known rate of home demolitions.  Each of these data points is based on

Grace's own documents or data accepted by experts in the field.  Without a class, Grace will

argue that ZAI homeowners who fail to respond to a bar date notice (which they may never see)

are forever barred from pursuing a ZAI claim against Grace.  It has already promised to do

exactly that.[12]  This will lead to appeals and/or post-confirmation litigation over how claimants

---

[11] See also In re Craft, 321 B.R. 189 (Bankr. N.D. Tex. 2005) [certification denied where class representative waited too long to move for application of Rule 23]; In re DDI Corp., 304 B.R. 626 (Bankr. S.D.N.Y. 2004) [court noted that had class sought certification prior to bar date they may have been permitted to file eleventh hour class claim]; In re Thomson McKinnon Secs., Inc., 141 B.R. 31 (S.D.N.Y. 1992) [affirming denial of class claim where class failed to seek certification and resulting delay would prejudice debtor]; In re Bicoastal Corp., 133 B.R. 252 (Bankr. M.D. Fla. 1991) [failure to seek class certification before bar date weighs against application of Rule 23]; In re Zenith Labs., Inc., 104 B.R. 659 (D.N.J. 1989) [failure to seek class certification in conjunction with class proof of claim is grounds for affirming bankruptcy court's issuance of stay].

[12] Feb. 25, 2008 Tr. at 76.  ["And while it may be true that some people don't actually get the notice, and their claims are therefore not recognized, that is the unfortunate fact of how the, how the Code works."].  (Attach. 2).

can be barred when they never knew they had to file a claim, when a class representative was willing to represent them but was turned down, and when their claims may not have accrued under state law.

From its inception, the ZAI litigation has been class-based litigation. Every ZAI case filed before bankruptcy was brought as a class action. The first such class action was certified after extensive discovery and briefing. Barbanti v. W.R. Grace & Co. – Conn., No. 00201756-6 (Wash. Super. Nov. 28, 2000) (Attachment 13). The federal ZAI putative class actions were consolidated by the MDL Panel and set for class certification argument that was only prevented by Grace's bankruptcy filing. In re Zonolite Attic Insulation Prods. Liab. Litig., MDL Dist. No. 1376 (D. Mass.). Having come to the brink of a class certification hearing in the MDL, the ZAI Claimants have waited seven more years to get it. And Grace now wants to delay it further. The reality of ZAI claims is that because they are too small to prosecute individually, "it is class action or nothing" for the vast majority. In re American Reserve Corp., 840 F.2d 487, 489 (7th Cir. 1988).

When a court is dealing with large numbers of relatively small claimants, as it is here, the class action is a valuable device that promotes the ends of justice and the bankruptcy code. Judge Easterbrook addressed arguments against class certification similar to those Grace has made here, and soundly rejected the view that numerous small claimants should be required to fend for themselves without the possibility of a class action:

> Outside of bankruptcy, class actions aggregate claims and permit both compensation and deterrence that are otherwise impossible. The same debts should be pursued inside bankruptcy – for other creditors have no right to the higher share of the debtor's assets they can achieve by excluding rival creditors at the threshold. The class proof of claim may be essential to discover what the bankrupt's entire debts are, and therefore who should be paid what.

In re American Reserve Corp., 840 F.2d at 489-90.

The ZAI situation is tailor-made for class consideration. Even Grace does not dispute that it sold sufficient ZAI to be installed in many thousands of homes.[13] Each individual claim is relatively small – approximately $5,000. In the aggregate, however, the ZAI claims reach the multiple millions. Properly understood, the bankruptcy code should facilitate class treatment here. Numerous courts have noted the desirability of aiding smaller bankruptcy claimants through the class device. See, e.g., In re Charter Co., 876 F.2d 866, 871 (11th Cir. 1989) ["Persons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the Code than someone with a large, easily filed claim."]. As explained by the district court in In re Zenith Labs., Inc., 104 B.R. 659 (D.N.J. 1989), hostility to class actions in bankruptcy is misplaced:

> Class actions, moreover, are consistent with the broader goals of bankruptcy in facilitating creditor compensation and ensuring equitable distribution of the debtor's assets.
>
> The unarticulated premise of the opinions in the cases where class proofs of claims were disallowed seems to be that the policies underlying class actions are hostile to the policies the Bankruptcy Code advances. According to this view, rather than being provided the opportunity to "opt out" of a class, small claimants should, in the words of appellee's counsel, be required to demonstrate that their claims are "worth the candle" by filing individual proofs of claim. This procedure effectively requires the small claimant to "opt in." Perhaps this perspective reflects the view that the Debtor's assets are to be conserved for larger creditors. This policy, however, is utterly without support in the Code or its legislative history.

Id. at 664. Likewise, in In re CommonPoint Mortgage Co., 283 B.R. 469 (Bankr. W.D. Mich. 2002) the court found the class device superior in a case involving a large number of creditors whose average claim was $2,000:

---

[13] ZAI Claimants believe the number is much higher.

> The burden of conducting this type of individual investigation
> would be onerous for the claimants to bear, especially considering
> the small amount of each potential claim, the even smaller amount
> of any potential recovery, and the apparent lack of business
> sophistication of many of the consumer claimants. If the class
> [device] is not utilized, justice may be denied.

Id. at 480. Similarly, the class device will be a valuable aid to assist in resolving ZAI claims.
The most appropriate time to decide its applicability is before a bar date is set.

**B.    Contrary to Grace's Position, it is Not Necessary for a Class Claim to be
Filed and For Grace to Object to Create a "Contested Matter" for
Application of Rule 23**

Linked to Grace's misunderstanding of the proper sequence for applying Rule 23 in

bankruptcy is its contention that there can be no consideration of Rule 23 unless Grace first

objects to a claim to create a "contested matter."[14]  Grace has propounded this incorrect position

early and often.  In opposing the ZAI Claimants' motion in 2002 to file a class proof of claim,

Grace incorrectly stated, "Rule 23 is not even applicable until claims are filed and objected to."[15]

Grace has held fast to this incorrect view.  Most recently, Grace's national counsel reiterated its

error at the February 2008 Omnibus Hearing:

> But under any set of circumstances, under the rules, Rule 23
> doesn't get brought, doesn't, can't be brought to bear until there's
> a contested matter, and until therefore, there are claims as to which
> there is an objection.[16]

Grace emphasized the same incorrect position throughout the hearing:

> To be a class claim, under Rule 9014, there must be a contested
> matter.  Rule 23 only becomes applicable, and it is still
> discretionary, under the rules once there is a contested matter.  To
> get a contested matter, you have to have a claim, and an objection.

---

[14] The ZAI Claimants' motion to certify was on file for six years in the Lewis adversary proceeding.  It was
originally set for hearing on January 3, 2002.  (Attach. 1). The Claimants agreed to dismiss it without prejudice to
preserve their right to have the issue heard as a "contested matter."  They are amenable to having the previously
filed motion be considered as the basis for a Court decision on the issue, to refile a motion, to file a class proof of
claim, or to proceed by whatever method the Court desires to get the class certification issue decided.

[15] Mar. 13, 2002 letter from David M. Bernick to Honorable Judith K. Fitzgerald, p. 2.  (Attach. 4).

[16] Feb. 25, 2008 Tr. at 25.  (Attach. 2)

> The claim objection creates a contested matter. Rule 23 then becomes available.[17]

While some early cases suggested that a claimant could defeat an argument that its class motion was untimely by claiming its first opportunity to file a class motion was after an objection had been made to a claim,[18] the overwhelming weight of authority is that no objection to a class proof of claim is necessary to entertain a motion for class certification. See, e.g., In re Ephedra Prods. Liab. Litig., 329 B.R. 1, 6-7 (S.D.N.Y. 2005); In re Musicland Holding Corp., 362 B.R. 644, 651 (Bankr. S.D.N.Y. 2007) [noting the "[m]ore practical view [is] that the class representative can move at any time for a declaration that it may file a class proof of claim"]. In re Computer Learning Ctrs., Inc., 344 B.R. 79, 88-89 (Bankr. E.D. Va. 2006) [filing the claim creates the contested matter]. The court in In re Charter Co., 876 F.2d 866 (11th Cir. 1989) strongly rejected the notion Grace advances that a bar date and claims filing must precede class determination:

> The position adopted by some courts that bankruptcy litigation can proceed under Rule 23, but only after each potential class member files an individual proof of claim, is illogical and contrary to important class action policy considerations.

Id. at 871. After seven years, the class action issue is ripe for consideration without any need for claimants to file individually or for Grace to object to the claims.

### C.   Contrary to Grace's Position, Class Actions in Bankruptcy Are Not Disfavored

Attempting to blunt the growing acceptance by bankruptcy courts of class certification, Grace has argued that class actions should be disfavored in bankruptcy courts.[19] This is simply incorrect. Grace has painted class actions as the enemy of the bankruptcy code that would

---

[17] Id. at 49. Grace's counsel apparently now concedes its error and has recognized the authority that filing a claim allows application of Rule 23. See Grace's Bar Date Motion at 10, n.18.

[18] See, e.g., In re Charter Co., 876 F.2d 866, 874-75 (11th Cir. 1989).

[19] Grace's Bar Date Motion at 10.

enable large numbers of undeserving and disinterested claimants to get a windfall. But this is

precisely the wrong view of Rule 23 in bankruptcy. In In re First Alliance Mortgage Co., 269

B.R. 428 (C.D. Cal. 2001) the district court reversed the bankruptcy court's denial of class

certification as an abuse of discretion:

> [I]t is clear class action devices are not disfavored, but are
> actually 'particularly appropriate,' in bankruptcy proceedings.

Id. at 445.

Courts have accepted class certifications in a wide variety of matters. See, e.g., In re

Fleet, 76 B.R. 1001 (Bankr. E.D. Pa. 1987) [certifying class of claimants in fraud action]; In re

Whittaker, 882 F.2d 791 (3d Cir. 1989) [certifying class of debtors in action against public

utility]; In re The Appliance Store, Inc., 158 B.R. 384 (Bankr. W.D. Pa. 1993) [certifying class

of Chapter 7 debtor's former employees in adversary action against debtor's secured creditors];

In re Talbert, 347 B.R. 804 (Bankr. E.D. La. 2005) [certifying class of debtor's former

employees in action to recover under employee benefit plan]; In re Trebol Motors Distrib. Corp.,

220 B.R. 500 (1st Cir. BAP 1998) [allowing class claim where class certified pre-petition in

RICO action against Chapter 11 debtor]; In re United Cos. Fin. Corp., 276 B.R. 368 (Bankr. D.

Del. 2002) [class certified in action to recover illegal mortgage broker's fees]; In re Harris, 280

B.R. 876 (Bankr. S.D. Ala. 2001) [certifying nationwide class of debtors in adversary proceeding

involving fee dispute that arose during debtor-mortgage company's bankruptcy proceeding]; In

re Noletto, 281 B.R. 36 (Bankr. S.D. Ala. 2000) (same); In re Madison Assoc., 183 B.R. 206

(Bankr. C.D. Cal. 1995) [creditor class certified in action against accounting firm debtor]; In re

Skinner Group, Inc., 206 B.R. 252 (Bankr. N.D. Ga. 1997) [consumer class certified for

settlement purposes in action against debtor-furniture retailer]; In re Coggin, 155 B.R. 934

(Bankr. E.D.N.C. 1993) [class of Chapter 7 debtors certified in adversary proceeding against

defendant retailer in state court action].

Grace's view that Rule 23 is a bankruptcy impediment is not shared by the courts. Class certification here will aid the thousands of small claimants who cannot get a lawyer to handle a $5,000 claim, who will be extremely disadvantaged dealing individually with Grace, and many of whom may simply give up or never try to pursue their claim due to the complexity of the bankruptcy process.

### D.   Class Certification Can Solve Serious Due Process Problems Inherent in Grace's Bar Date Proposal

Recognizing that the ZAI Claimants are largely unknown, Grace proposes a nationwide publication notice campaign. Grace concedes that many claimants may miss the notice or not understand it. But in Grace's view, that is their tough luck.[20] Again, Grace's view is contrary to the aim of the bankruptcy code to marshal legitimate creditors and allow them to participate in a bankrupt's estate. The nature of ZAI commends the class action as a valuable device to protect the rights of ZAI Claimants while giving Grace the "peace" it presumably seeks through this bankruptcy. Without class certification and its due process protections, Grace cannot assure itself of an end to its ZAI litigation post-bankruptcy.

The situation where claimants are largely unknown presents a strong case for class treatment. In In re First Interregional Equity Corp., 227 B.R. 358 (Bankr. D.N.J. 1998), Judge Gambardella took note that if a group of claimants "are in large part unknown creditors, then the class device may provide the only form of notice to such parties and be advisable to utilize." Id. at 371. This is precisely the ZAI situation. With class certification, the unnotified have their due process rights protected by notice to the class representative. Without a class, the unnotified receive no due process protection, and may well not be barred from bringing claims post-confirmation when their claims accrue under state law. In re Frenville Co., Inc., 744 F.2d 332

---

[20] Feb. 25, 2008 Tr. at 76. (Attach. 2).  ["[T]hat is the unfortunate fact of how the, how the Code works."]

(3d Cir. 1984), cert. denied, 469 U.S. 1160 (1985) [bankruptcy injunction does not bar claims accruing post-confirmation].

A class action avoids due process problems and brings small claimants into the process when they might otherwise miss out. See In re Craft, 321 B.R. 189, 195 (Bankr. N.D. Tex. 2005) ["[C]lass claims foster broader creditor participation in distributions and equal treatment of class members. Thus allowing class proofs of claim improves a debtor's fresh start and fosters equality of treatment of creditors, both major goals of Congress."]. In In re Zenith Laboratories, Inc., 104 B.R. 659 (D.N.J. 1989), the court reiterated that the class action serves an important bankruptcy function for small claims:

> But the class action serves purposes other than judicial economy. One of its most important functions is to make possible the maintenance of many small claims "that would otherwise lie dormant" . . . Since there are significant opportunity costs associated with identifying and investigating claims and since many potential litigants with small claims are unaware of the full scope of their rights in bankruptcy, the class action may be the only practical means of permitting small claims to be brought. As the American Reserve court observed, "for many small claims, it is class actions or nothing." To deny the use of a class claim would frustrate this policy and, as a practical matter, leave the majority of small claims in bankruptcy proceedings without a remedy.

Id. at 662-63 (internal citations omitted). Bankruptcy courts in this district have recognized the value of the class device. In In re United Companies Financial Corp., 276 B.R. 368 (Bankr. D. Del. 2002), the court addressed class certification involving small claimants who were victimized by mortgage brokers. In concluding that the class action was a superior method to requiring small claimants to prosecute their own claims, the court stated:

> Here, the claimants allege that there is no better method to adjudicate the claims aside from a class action. We agree. First, it is probable that most members of the proposed class are unaware of their rights under West Virginia law; thus, it is unlikely that individuals will file separate claims to protect their rights. Second,

14

> the amount of damages to be recovered by each class member is
> relatively small, especially in light of the likely recovery for
> creditors under the confirmed bankruptcy plan, thereby rendering
> prosecution of an individual claim cost prohibitive.

Id. at 376. Likewise, in In re Livaditis, 122 B.R. 330 (Bankr. N.D. Ill. 1990), the court

considered a proposed class by over one thousand former students of a cosmetology school. The

court rejected the debtor's argument that because it could notify one thousand students

individually, and they could file individual claims, a class was undesirable:

> First, as a practical matter, the preparation, filing, and processing
> of one proof of claim clearly is more efficient than the compilation
> and sending of more than 1,000 informational packages, and the
> filing and processing of 1,000 proofs of claim.   Second, if the
> experience of this Court is any guide, hundreds of the claimants
> will likely not return their claim forms due to lack of
> understanding, thus enabling Debtor to escape a major part of his
> liability due to the inexperience of those who the District Court
> and jury found to be his victims.

Id. at 339.

Clearly, the debtor's desire in Livaditis that small claimants would be discouraged

through ignorance, cost, and unavailability of counsel from pursuing a claim, is an equal

consideration here.  Grace undoubtedly hopes that ZAI homeowners will not see the published

notice, and if they do, will neither understand nor respond to it.  While this is an understandable

economic view by Grace – fewer ZAI claimants means less in the ZAI pot – it is not the purpose

of the bankruptcy code.

While the inclusion of the ZAI claimants in the creditor pool may be a burden to Grace,

these claimants "are no less creditors under the Code than someone with a large, easily filed

claim."  In re Charter, 876 F.2d at 871.  Grace contends that addressing the issue of class

certification before the bar date will delay these proceedings indefinitely because of possible

15

appeals and the difficulty in valuing contingent claims.[21]  Any argument based on protecting

Grace's lower court position from appeal should be rejected as contrary to American

jurisprudence where appellate rights are essential.  And while valuing ZAI claims may entail

difficulty, all asbestos claims face this issue.  As one court answered a similar debtor, "any

potential marginal increase in delay or in difficulty of valuation of claims would be justified in

order to protect the right of small claimants to be represented."  In re Chateaugay Corp., 104

B.R. 626, 633 (S.D.N.Y. 1989).

## III.   AS PRESCRIBED BY THE ZAI OPINION, THIS COURT SHOULD DETERMINE WHAT ZAI CLAIMS EXIST BEFORE SENDING A BAR DATE NOTICE

The ZAI Opinion resolved by summary judgment a single, threshold issue concerning

risk of harm.  The Court recognized that the Opinion did not address the legal claims that might

be affected by that determination and ordered that the next step in the ZAI Science Trial process

would be to address which legal claims, if any, might remain in light of the ZAI summary

judgment.  (ZAI Op. at 53).  It makes eminent sense to address those claims before sending a bar

date notice.  If the Court's statement that its Science Trial summary judgment "may be fatal" to

the ZAI claims (ZAI Op. at 53), proves correct, there will be no need for a bar date, a notice, or a

contested bar date procedure because there will be no claims to bar.[22]  Grace has already argued

that the ZAI Opinion means that no ZAI claims are viable:

> We believe that if ZAI does not pose an unreasonable risk or a
> [sic] unreasonable hazard, or an unreasonable danger, that as a
> matter of law there can not be a strict product liability claim or a
> negligence claim, or a warranty claim or consumer protection
> claim, or misrepresentation of a material fact claim.[23]

---

[21] Grace's Bar Date Motion at 2.  ["If a class is certified, interlocutory appeals likely will follow."]  Grace does not admit the obvious – such an appeal (and delay) following certification would be caused by Grace.

[22] As noted previously, while the ZAI Claimants respectfully disagree with the Court's determinations, they recognize that they are dealing with this matter as it currently exists.

[23] Jun. 25, 2007 Tr. at 65.  (Attach. 5).

If Grace is confident in its position, it should direct its energies to supporting its position on the legal claims rather than spending over $3 million to send out an unnecessary notice. A determination that there are no viable ZAI claims would be a far more definitive victory for Grace, if achievable, than dealing with amorphous bar date issues such as scope, effectiveness, etc.

Even if litigation over the existing legal claims does not produce a knockout punch for Grace, it will surely inform the parties as to the scope of the claims that a notice should address. Grace may be able to convince the Court that there are no claims in some states, so notice need not be directed there. Or Grace may convince the Court that only claims under a few theories are viable. Depending on the Court's ruling on the theories, it may become important to the viability of claims to know if the material has been disturbed in the past, or is reasonably anticipated to be disturbed in the future. The notice could be framed to address such issues. Some theories of relief may be applicable only to original purchasers, while others may inure to anyone in possession of the home. The claim form could be adjusted to ask questions that the applicable theories deem important. Until these and other aspects of the legal elements of the claims are fleshed out, sending a bar date notice may be a useless or at least wasteful exercise.

While Grace may argue that no such prior determination of the legal theories was necessary before sending the bar date notice for traditional property damage claims, the situation here is fundamentally different. The traditional asbestos property damage claims had the benefit of twenty years of litigation development where the theories for relief were analyzed and tested in the crucible of state tort litigation. Here, because of Grace's bankruptcy, there was no time for the state tort systems to analyze ZAI. And while the ZAI Claimants urged the Court to adopt the state law analyses of traditional asbestos property damage claims for ZAI claims, the Court has

so far rejected importing traditional asbestos property damage precedent into the ZAI claims process.[24]

Because the Court has embarked on a course different from that mapped out in the state tort law cases for asbestos property damage recovery, it is advisable, indeed necessary, that this course be followed to its logical conclusion and the contours of a ZAI property claim be established before a bar date notice goes out telling homeowners they have some type of claim.

## IV.   PRUDENCE DICTATES POSTPONING A BAR DATE NOTICE UNTIL THE  COURT HAS CONSIDERED WHETHER TO PERMIT APPELLATE REVIEW OF THE ZAI OPINION

One of the reasons the Court ordered the ZAI Science Trial process was to determine the danger that homeowners could face from inspection for ZAI in their attics. The Court has made a determination on summary judgment that there is no unreasonable risk of harm. But before thousands of homeowners are sent into their attics to look for ZAI (which may entail lifting up covering insulation or floorboards, moving boxes, etc.), it is prudent to have appellate review of the Court's determination. The ZAI Claimants sought to get that appellate review immediately after the ZAI Opinion was issued, but Grace successfully opposed it on the ground that the ZAI Opinion was interlocutory. The ZAI Claimants have now asked the Court to either dismiss a single ZAI claim or make a Rule 54 determination concerning one of the theories that the Court believes are controlled by the ZAI Opinion, to permit appellate review.[25]

While the ZAI Claimants have the greatest respect for the time and effort the Court put into its ZAI Summary Judgment Opinion, they respectfully believe that a matter of this

---

[24] Contrary to the ZAI Claimants' urging, the Court has adopted Grace's views that air testing results (presumably occupational levels), and epidemiological evidence showing a "doubling dose" of risk, are essential pre-requisites for at least some aspects of ZAI claims. ZAI Op. at 16-17, 33-34, 38-41.

[25] See ZAI Claimants' Motion for Dismissal of an Individual ZAI Claim for a Rule 54(b) Determination to Permit Appellate Review of the ZAI Opinion. (Mar. 18, 2008) DKT No. 18325. ("ZAI Claimants' Motion for Dismissal")

importance deserves appellate review. As pointed out in the ZAI Claimant's motion to permit

appellate review, the history of asbestos property damage litigation reflects numerous appellate

reversals of lower courts that had adopted Grace's positions.[26]

The ZAI Claimants had no opportunity to test Grace's positions on ZAI in the appellate

courts before Grace's bankruptcy. But Grace has already suffered appellate setbacks in its

contaminated vermiculite litigation with the EPA. See, e.g., U.S. v. W.R. Grace, 429 F.3d 1224

(9th Cir. 2005) [rejecting Grace's interpretation of federal regulations governing vermiculite

remediation]. In that opinion the appellate court cited the following passage relevant to ZAI as

an example of the evidence supporting EPA's decision to move swiftly to remove asbestos-

contaminated vermiculite from homes:

> "[i]n some Libby homes, vermiculite insulation is literally falling
> out into the living space from gaps around light fixtures and
> electrical switches." That these particles were present in people's
> homes and schools is especially troubling because, in contrast to
> standards set by OSHA for workers who are exposed to particles
> during an eight-hour workday, home and school contamination
> could result in exposure for twenty-four hours per day. In short,
> the carcinogenic fibers were widespread and, contrary to Grace's
> assertions, were not contained such that they would not be inhaled.
> As ominously observed by the EPA, "Of course once airborne, the
> fibers will migrate whichever way the wind blows."[27]

Id. at 1242.

While the court was not dealing with individual homeowner litigation, its recognition that

the OSHA standards (which this Court cited (ZAI Op. at 46)) are not controlling in residential

---

[26] See ZAI Claimants' Motion for Dismissal at 8-12.

[27] The situation described by the appellate court of ZAI falling into living spaces was mirrored in the ZAI homes inspected for the Science Trial: "As shown by our home inspections, Libby vermiculite has an affinity for seeping through cracks and crevices and entering living space." See Zonolite Attic Insulation Report (Mar. 19, 2003) at 8. Att. 28 to ZAI Claimants' Motion for Summary Judgment (Jul. 2, 2003). (Attach. 6).

situations, and that loose asbestos fibers in homes are "especially troubling," supports the wisdom of seeking a "second look" at the ZAI issues by an appellate court.[28]

Grace has also fared poorly on asbestos contamination issues at the appellate level in its Libby criminal case. See U.S. v. W.R. Grace, 504 F.3d 745 (9th Cir. 2007). Among other rulings, the court rejected Grace's position that its historic asbestos vermiculite testing should be excluded as evidence of the propensity of its vermiculite to release asbestos. Id. at 762-63. Compare ZAI Opinion at 43-45 (excluding Grace's historic vermiculite testing).

Grace's appellate losses in its vermiculite litigation do not necessarily mean it would lose a ZAI appeal. But Grace's poor record for getting appellate courts to accept its positions on contaminated vermiculite issues, coupled with its abysmal appellate record in traditional asbestos property damage litigation, demonstrates at a minimum that the ZAI Claimants have a reasonable hope of appellate reversal of Grace's positions on ZAI. The Claimants should be afforded such review when it can make a meaningful impact on the proceedings.

The evidence produced during the ZAI Science Trial discovery at least warrants pause before sending Claimants into their attics. While granting summary judgment against the ZAI Claimants, the Court also found that ZAI is contaminated with asbestos and releases asbestos fibers upon disturbance. ZAI Opinion at 15-17. The ZAI Claimants' evidence showed that some attic surfaces where ZAI homeowners would be inspecting for ZAI contained hundreds of millions of loose asbestos fibers per square foot.[29]  In addition, disturbance of these asbestos-laden surfaces produced airborne asbestos fibers greatly exceeding the EPA clearance level for

---

[28] The appellate court noted that EPA's "concrete steps taken to combat this threat" from asbestos-contaminated vermiculite included "cleaning the interiors of affected homes." Id. at 1246. This is the same type of remediation ZAI homeowners would undertake.

[29] Zonolite Attic Insulation Report (Mar. 19, 2003), (Att. 28 to ZAI Claimants' Motion for Summary Judgment (Jul. 7, 2003)). (Attach. 6).

20

building occupancy after asbestos disturbance.[30]  Much higher numbers exceeding the OSHA

ceiling limit were observed when the ZAI itself was disturbed.  ZAI Opinion at 46.  While the

ZAI Claimants understand that the Court has ruled these exposures would not cause an

"unreasonable risk of harm," it is prudent to get an appellate view on these issues before setting

in motion an irrevocable series of asbestos exposures, exposures that would also be unnecessary

if class certification were granted.[31]

## V.    AN INDIVIDUAL ZAI PROOF OF CLAIM PROCESS CANNOT ACHIEVE ITS STATED PURPOSE OF IDENTIFYING THE UNIVERSE OF ZAI CLAIMS OR PROVIDE FOR THEIR TREATMENT

W.R. Grace did not come to bankruptcy court with a history of litigation in respect to

Zonolite Attic Insulation, and for good reason.  The first public disclosure of potential asbestos

contamination of ZAI was made in approximately November of 1999, less than 17 months prior

to W.R. Grace's bankruptcy petition.[32]  Such isolated newspaper reports of potential asbestos

contamination of ZAI, principally published in the Pacific Northwest, could not and did not erase

from the public's mind decades of marketing and sales efforts by W.R. Grace misadvising

homeowners that ZAI is "100% vermiculite," "contains no harmful substance," and is a friendly

material suitable for handling by children.[33]

---

[30] This level is .01 f/cc measured by "aggressive testing" methods, i.e., by stirring up the air to entrain any asbestos fibers on surfaces.  See Guidelines for Controlling Asbestos-Containing Materials in Buildings. (June 1985), at 6-6-6-8; [.01 f/cc PLM by aggressive testing]; 52 Fed. Reg. 41850-41851 (1987). (Attach. 7). ZAI levels ranged from 10x the clearance level for clearing boxes in an attic, to over 1,000x the clearance level when ZAI itself was disturbed. (Attach. 6).

[31] If the ZAI Class is certified, it will not be necessary for individual claimants to come forward now to inspect their attics.  Their rights will be protected by class certification and when it is necessary for ZAI to be disturbed for home activity or normal construction processes, such as renovation, remodeling, or demolition, ZAI can be identified by individuals wearing proper protective gear. Indeed, the EPA has cautioned homeowners not to disturb ZAI, not to store boxes in an attic if moving them will disturb ZAI, to leave an attic immediately if any ZAI is disturbed, never to remove ZAI without professionals, and not to rely on a dust mask as protection against ZAI. See Current Best Practices For Vermiculite Attic Insulation (May 2003). (Attach. 8).

[32] See Exhibit A attached to the Declaration of Darrell W. Scott ("Scott Dec.") filed in support hereof. (Attach. 10).

[33] See Exhibit B to Scott Dec. (Attach. 10)

Surveys of homeowners in Washington State conducted in the months preceding Grace's bankruptcy petition indicate that most homeowners remained unaware that ZAI is contaminated with asbestos. Most would not recognize the product if they were to encounter it in their home. Most, indeed, do not know what type of insulation they have in their home.[34] These circumstances doom any effort to capture the universe of ZAI claims or gauge W.R. Grace's potential ZAI liability through implementation of an individualized ZAI proof of claim process directed at an unknowing and indeed misled community.[35]

The deficiencies of an individual ZAI proof of claim process are not merely logistical or understood by calculating "notice reach," or by examining the form of the notice itself. The conditions that give rise to a ZAI claim, the determination as to whether and when that claim accrues, and the elements of proof establishing that claim are all governed by substantive state law, not bankruptcy rules, bankruptcy process, or exercise of bankruptcy court discretion. Jones v. Chemetron Corp., 212 F.3d 199 (3d Cir. 2000); In re Frenville Co., Inc., 744 F.2d 332 (3d Cir. 1984); Fogel v. Zell, 221 F.3d 955 (7th Cir. 2000). Balkanization of W.R. Grace's ZAI liabilities into individual at-law chooses in action and issuance of a bar date notice to a community of unknown, unknowing, and deceived individuals, would frustrate the parties' and the court's ability to bring ZAI claims to closure. See, e.g., Pickett v. Holland Am. Line-Westours, Inc., 35 P.3d 351 (Wash. 2001) [Cause of action is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the consumer protection violation].

Closure is achievable, by contrast, through collective treatment of Grace's potential liabilities, as advanced by "knowing" representatives having standing to assert existing equitable

---

[34] See Exhibit D to the Declaration of Darrell W. Scott in Support of ZAI Claimants' Motion for Order to Show Cause Why Expert Witnesses Should Not be Appointed, filed with this Court on March 18, 2008.

[35] See also Preliminary Informational Brief of Zonolite Attic Insulation Class Action Plaintiffs (MDL 1376) in Response to W.R. Grace & Company's Informational Brief D.I.6 (and its accompanying exhibits), Bankr. Docket No. 165.

claims, and for purposes of securing programmatic remedies that forestall, provide for, or essentially render moot all individual ZAI claims, latent or otherwise.[36]

---

[36] Class representation remedies the ZAI notice problem by supplying an agent for the missing through whom notice may be given and through whom claims may be asserted. (In re First Interregional Equity Corp., 227 B.R. 358, 371 (Bankr. D.N.J. 1998) [Where creditors are composed of individuals who are in large measure unknown creditors, "then the class device may provide the only form of notice to such parties and be advisable to utilize."]

"Knowing" and designated representatives have both the capacity and standing to advance equitable claims for unified (and indeed indivisible) programmatic relief. Notification of product contamination and education as to management of the product in place provides meaningful redress for all ZAI claimants, including the presently unknowing. The programmatic remedy of homeowner assistance when and where ZAI removal becomes appropriate, gives assurance that homeowners' needs are met over time, while minimizing the debtor's potential financial exposure to ZAI claims. As explained previously, class certification preserves the claimants' rights. Bankruptcy estimation creates the vehicle to resolve the claims as they manifest over time, while ensuring both that Grace pays only for legitimate claims and that legitimate claimants do not lose their rights for failure to return a claim form by a bar date.

## CONCLUSION

A bar date will not solve the ZAI problem. It will only serve to encourage more litigation and deprive many claimants of any realistic opportunity to assert a claim. ZAI can be resolved consistent with due process by the Court proceeding in one of two ways: (1) lift the stay and allow ZAI to resume its litigation in the tort system; or, if the Court is unwilling to do that, (2) allow a ZAI appeal, address the class certification issue and state law theories before any bar date, certify a class, estimate the claims, and either order the parties to a mediated resolution or create a trust to provide for equitable bankruptcy treatment of the ZAI claims.

Dated: April 10, 2008
Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

William D. Sullivan (2820)
Elihu E. Allinson, III (3476)
4 East 8th Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 428-8191

-- and --

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue
Chronicle Building, Suite 583
Spokane, Washington 99201
Telephone: (509) 455-3966

-- and --

RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC
Edward J. Westbrook
Robert M. Turkewitz
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, South Carolina 29464
Telephone: (843) 727-6500

*Special Counsel for ZAI Claimants*