# ATTACHMENT 12

Westlaw.

Not Reported in B.R. Page 1
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

H

In re Jamesway Corp.
Bkrtcy.S.D.N.Y.,1997.

United States Bankruptcy Court, S.D. New York.
In re JAMESWAY CORPORATION, et al., Debtors.
Patricia BAILEY, et al., on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,
v.
JAMESWAY CORPORATION, Defendant.
**Nos. 95 B 44821(JLG), 96/8389A.**

June 12, 1997.

LANKENAU KOVNER KURTZ & OUTTEN, LLP 1740 Broadway New York, New York 10019 Attorneys for Plaintiffs
KAYE, SCHOLER, FIERMAN, RAYS & HANDLER, LLP 425 Park Avenue New York, New York 10022 Attorneys for Jamesway Corporation

DECISION ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DEBTOR'S

JAMES L. GARRITY, JR., United States Bankruptcy Judge.

*CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT*

*1 Certain former employees (as defined below, the "plaintiffs") of Jamesway Corporation ("debtor" or "Jamesway") seek class certification in this adversary proceeding alleging violations of the Workers Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101*et seq.* Jamesway opposes the motion and cross-moves for summary judgment dismissing certain plaintiffs from the proceeding because they allegedly are not entitled to assert WARN Act claims against it. We deny plaintiffs' motion. We grant Jamesway's motion in part and deny it in part.

*Facts*

In connection with debtor's cross-motion for summary judgment and as required by Local Bankruptcy Rule 7056-1, Jamesway and plaintiffs submitted statements of undisputed material facts. Unless noted otherwise, the relevant facts are not in dispute. Jamesway and its debtor-affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on October 18, 1995 (the "Filing Date"). Their cases are being jointly administered pursuant to Fed. R. Bankr.P. 1015. On or about October 25, 1995, the United States Trustee appointed an official committee of unsecured creditors pursuant to § 1102 of the Bankruptcy Code.

Prior to the Filing Date, Jamesway operated 90 discount department stores located throughout New York, Pennsylvania, New Jersey, Virginia, Maryland, Delaware and West Virginia. Until one week prior to the Filing Date, debtor employed approximately 461 managers (plaintiffs dispute the accuracy of this figure based upon their lack of sufficient information), including regional and district managers, loss prevention managers, store managers, assistant store managers, operations managers and managers-in-training (collectively, the "Store Employees"). Jamesway contends that it employed less than 50 persons at each store. Plaintiffs dispute this assertion, claiming that at least one store had more than 50 employees. Jamesway also employed approximately 350 persons at its corporate headquarters in Secaucus, New Jersey (the "Corporate Headquarters"), and approximately 32 non-union and 300 union employees at its Cranbury, New Jersey distribution center (the "Distribution Center"). The unionized employees are neither named-plaintiffs nor prospective class members herein.

Beginning approximately one week prior to the Filing Date, Jamesway began to terminate its Corporate Headquarters and Distribution Center employees. Jamesway contends that these terminations occurred primarily on October 12, 13 and 17, 1995

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 2
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

and that a total of 147 plaintiffs were terminated prior to the Filing Date. It also claims that post-petition terminations of Corporate Headquarters and Distribution Center employees occurred primarily between November 10 and November 22, 1995 and that a total of 35 plaintiffs were terminated after the Filing Date. Plaintiffs dispute these facts only insofar as they claim that they do not have sufficient information to assess the accuracy of the number of plaintiffs terminated on the dates in question.

*2 By order dated November 3, 1995, we authorized debtor to sell its store inventory to Gordon Brothers Partners, Inc. ("Gordon Brothers") for a guaranteed payment of 53% of its retail value, and to employ Gordon Brothers as its agent to conduct going-out-of-business sales ("GOB Sales") at all Jamesway stores. By order dated November 9, 1995, we authorized debtor to retain Consolidated Auctioneers & Liquidators, Inc. to liquidate store fixtures and equipment (the "Fixture Liquidations") at the conclusion of each GOB Sale. Jamesway employed a substantial number of its Store Employees until the conclusion of the GOB Sales. Between November 10 and November 22, 1995, Jamesway terminated several Corporate Headquarters and Distribution Center employees. Gordon Brothers completed the majority of the GOB Sales on or about December 31, 1995, and the rest by January 31, 1996.

By order dated February 27, 1996 (the "Bar Date Order"), we fixed April 16, 1996 (the "Bar Date") as the last date for any creditor asserting a pre-petition claim against Jamesway to file a proof of claim. On or about March 1, 1996, Poorman-Douglas Corp. ("Poorman"), which we approved as debtor's official claims agent, mailed to Jamesway's creditors a package ("Claim Package") containing (i) notice of the § 341 meeting of creditors, (ii) notice of the Bar Date, (iii) an individualized proof of claim form, and (iv) instructions for completing and filing a proof of claim. In accordance with the terms of the Bar Date Order, debtor published notice of the Bar Date in *The New York Times* and *The Wall Street Journal*. Plaintiffs contend that Poorman failed to send Claim Packages to at least three plaintiffs. They also assert that many prospective class members failed to submit proofs of claim out of ignorance of bankruptcy court procedures.

One hundred thirty-nine (139) former Jamesway employees (the "Original Named Plaintiffs") commenced this adversary proceeding one day prior to the Bar Date on or about April 15, 1996. They amended their complaint on or about October 4, 1996 (as amended, the "Complaint") to eliminate one Original Named Plaintiff and add 44 plaintiffs (the "Added Plaintiffs", and together with the Original Named Plaintiffs, "plaintiffs").

Plaintiffs seek a money judgment pursuant to 29 U.S.C. § 2104 [FN1] for alleged violations of 29 U.S.C. § 2102 [FN2] in an amount equal to the sum of (a) unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay and pension and 401(k) contributions for 60 working days, (b) the cost of health and medical insurance and other fringe benefits under ERISA for 60 calendar days, (c) any medical or other expenses incurred during the 60 calendar days since their respective terminations that would have been covered and paid under Jamesway's employee benefit plans had that coverage continued during that period, (d) interest on the above amounts and (e) reasonable attorneys' fees. On or about May 15, 1996, debtor answered the Complaint.

> FN1. 29 U.S.C. § 2104 provides in relevant part as follows:
>
> (a) Civil actions against employers
>
> (1) Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 3
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

(A) back pay for each day of violation at a rate of compensation not less than the higher of-

(i) the average regular rate received by such employee during the last 3 years of the employee's employment; or

(ii) the final regular rate received by such employee; and

(B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.

Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer....

29 U.S.C. § 2104(a).

FN2. Section 2102 is entitled "Notice required before plant closing and mass layoffs". In part, it states:

An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order-

(1) to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee; and

(2) to the State dislocated worker unit (designated or created under title III of the Job Training Partnership Act (29 U.S.C.A. § 1651 et seq.)) and the chief elected official of the unit of local government within which such closing or layoff is to occur....

29 U.S.C. § 2102.

\*3 Plaintiffs seek to certify a proposed class (the "Proposed Class") of employee plaintiffs consisting of three sub-classes. Sub-Class A consists of former employees at Corporate Headquarters and includes 141 plaintiffs and approximately 199 Proposed Class members. Sub-Class B consists of former non-union employees at the Distribution Center, including 11 plaintiffs and approximately 21 Proposed Class members. Jamesway contends that Sub-Class C is comprised solely of former managers employed at each of Jamesway's 90 stores, and includes approximately 431 Proposed Class members. By contrast, plaintiffs maintain that this sub-class also includes assistant store managers and trainees, and does not include a Store Manager from each of the 90 stores. Moreover, they claim that they do not have sufficient information to assess whether 431 is an accurate number because Jamesway has refused to disclose this information to them.

Jamesway opposes this motion and cross-moves for summary judgment dismissing 72 plaintiffs from this proceeding, including (i) 17 of the 44 Added Plaintiffs, who did not timely file individual proofs of claim, (ii) 35 plaintiffs who were terminated post-petition, (iii) 19 Store Employees, and (iv) Michael Palmer, a former Corporate Headquarters employee who filed a proof of claim for $108,440.00 representing 60 days wages and benefits under the WARN Act.

*Discussion*

We base our subject matter jurisdiction of this adversary proceeding on 28 U.S.C. §§ 1334(b) and 157(a) and the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A), (B)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 4
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

and (O); *see also Oil, Chemical & Atomic Workers Union AFL-CIO-CLC v. Hanlin Group, Inc. (In re Hanlin Group, Inc.),* 185 B.R. 703, 704-05 (Bankr.D.N.J.1995).

*Plaintiffs' Motion for Class Certification*

Many courts permit class proofs of claim when the claimant(s) satisfy Fed.R.Civ.P. 23's requirements for maintaining class actions in federal courts. *See, e.g., Birting Fisheries, Inc. v. Lane (In re Birting Fisheries, Inc.),* 92 F.3d 939, 940 (9th Cir.1996); *Reid v. White Motor Corp.,* 886 F.2d 1462, 1470 (6th Cir.1989), *cert. denied,*494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Certified Class in Charter Sec. Litig. v. Charter Co. (In re Charter Co.),* 876 F.2d 866 (11th Cir.1989), *cert. dismissed,*496 U.S. 944, 110 S.Ct. 3232, 110 L.Ed.2d 678 (1990); *In re American Reserve Corp.,* 840 F.2d 487, 493 (7th Cir.1988); *see also In re Thompson McKinnon Securities, Inc.,* 141 B.R. 31, 32 (S.D.N.Y.1992); *In re Chateaugay Corp.,* 104 B.R. 626, 634 (S.D.N.Y.1989), *appeal dismissed,*930 F.2d 245 (2d Cir.1991); *In re Woodward & Lothrop Holdings, Inc.,* 205 B.R. 365, 369 (Bankr.S.D.N.Y.1997).

In part, the WARN Act states that "[a] person seeking to enforce [WARN Act] liability, including a representative of employees ... may sue either for such person or for other persons similarly situated, or both, in any district court of the United States". 29 U.S.C. § 2104(a)(5). Plaintiffs contend, and debtor denies, that the Complaint constitutes a class claim which plaintiffs can pursue under § 2104(a)(5) without regard to Fed.R.Civ.P. 23.

*4 However, § 2104(a)(5) does not state that an aggrieved employee can maintain a class action under the WARN Act. By using the language "a representative of employees ... may sue for other persons similarly situated" in § 2104(a)(5), Congress conferred associational standing upon unions to assert WARN Act claims on behalf of their aggrieved constituents. *See United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 116 S.Ct. 1529, 1532, 134 L.Ed.2d 758 (1996); *United Mine Workers of America, Dist. 2 v. Florence Mining Co.,* 855 F.Supp. 1466, 1469-70 (W.D.Pa.1994). Moreover, the WARN Act provides no standards ensuring the adequacy, or governing the conduct, of a "representative" under § 2104(a)(5), nor does it provide for notice to class members or give them a means for opting out of the proposed class. Thus, plaintiffs' reading of the statute raises significant procedural due process issues. *Compare Doe v. Guardian Life Ins. Co. of America,* 145 F.R.D. 466, 475 (N.D.Ill.1992) ( " '[Rule 23](b)(3) addresses the issue of whether Rule 23 certification will have practical utility in the suit, considering the facts, substantive law, procedural due process and fundamental fairness' ") (quoting *Brown v. Cameron-Brown Co.,* 92 F.R.D. 32, 41-42 (E.D.Va.1981)); *see also Fuller v. Fruehauf Trailer Corp.,* 168 F.R.D. 588, 605 (E.D.Mich.1996) ("there may be serious due process issues raised if a class certified under Rule 23(b)(2) is not given notice and the opportunity to opt out" or if the class certified under Rule 23(b)(2), because of a common action or inaction by the defendant, is framed overly broadly). Courts certifying class actions involving WARN Act issues do so pursuant to Fed.R.Civ.P. 23. *See, e.g., New Orleans Clerks and Checkers Union Local No. 1497 v. Ryan-Walsh, Inc.,* No. 93-3592, 1994 WL 72101 (E.D.La. Mar.2, 1994) (granting Rule 23 motion to certify class of WARN Act claim plaintiffs consisting of all individuals laid off or terminated due to employer's cessation of terminal and stevedore operations at the Port of New Orleans); *United Paperworkers Intern. Union v. Specialty Paperboard, Inc.,* 829 F.Supp. 671 (D.Vt.1992), *aff'd,*999 F.2d 51 (2d Cir.1993) (class of WARN Act plaintiffs certified pursuant to Fed.R.Civ.P. 23(b)(3)); *Finnan v. L.F. Rothschild & Co., Inc.,* 726 F.Supp. 460, 465 (S.D.N.Y.1989) (class of WARN Act plaintiffs certified under Rule 23). We hold that the WARN Act provides no basis independent of Fed.R.Civ.P. 23 [FN3] for certifying the Proposed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 5
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

FN3. As relevant herein, Fed.R.Civ.P. 23 provides, as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The matters pertinent to the findings include:

(A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23.

Class herein. Plaintiffs next contend that we should certify the Proposed Class under Fed.R.Civ.P. 23(b)(1) or (b)(3).

Debtor acknowledges that Bankruptcy Rule 7023 makes Fed.R.Civ.P. 23 applicable herein. It concedes that the Complaint may be viewed as an informal proof of claim for the Original Named Plaintiffs pursuant to Fed.R.Bank.P. 3001. It denies that the Complaint constitutes a class claim or that plaintiffs are entitled to relief under Rule 23. Jamesway contends that there are approximately 840 employees in the Proposed Class and that only 243 of them either timely filed individual proofs of claim or are deemed to have filed claims pursuant to the Complaint.[FN4] It argues that if we certify the Proposed Class, we effectively will extend the Bar Date to putative class members who failed timely to file claims, or to seek additional time within which to do so, without regard to Bankruptcy Rule 9006(b)(1) [FN5]. For debtor, that is unfair and unwarranted as to creditors who timely filed their claims and may impinge upon their due process rights. Thus, separate and apart from whether plaintiffs can satisfy Rules 23(a) and (b), debtor contends that we must deny the motion because the putative class members have not timely filed claims and because plaintiffs failed to seek class certification prior to the Bar Date.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 6
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

FN4. Except for the 17 Added Plaintiffs who did not timely file individual proofs of claim, Jamesway has not moved for summary judgment dismissing or expunging claims held by Proposed Class members who did not file individual proofs of claim on or prior to the Bar Date.

FN5. In relevant part, Rule 9006(b)(1) states that:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed.R.Bankr.P. 9006(b)(1).

*5 As support for the latter contentions, debtor principally relies on *In re Sacred Heart Hospital of Norristown,* 177 B.R. 16 (Bankr.E.D.Pa.1995). In that case the court denied a motion to certify a class of employees who allegedly were terminated by the debtor in violation of the WARN Act, without regard to whether the proposed class satisfied Rule 23. There, the debtor failed to give notice required under the WARN Act to full and part-time hospital employees when it ceased operating approximately one week before filing for bankruptcy. An attorney filed individual proofs of claim on behalf of approximately 120 former employees. Thereafter, he moved for an order allowing him to file a class proof of claim on behalf of 870 former employees. *Id.* at 17. The court denied his motion, finding that a purported class representative must meet the requirements of Rule 23 to file a class proof of claim, and that the attorney failed to show that the claims or defenses of the class representative were typical of the claims or defenses of the class (Rule 23(a)(3)) or that the representative parties would fairly and adequately represent the interests of the class (Rule 23(a)(4)). *Id.* at 19. Counsel moved to reargue the motion but later withdrew that motion. Thereafter the debtor mailed all former employees notice of the bar date and published notice of it in regional newspapers. *Id.* at 20. Eleven days before the bar date, the original attorney and new co-counsel filed another motion seeking permission to file a class proof of claim, and seeking class certification and an extension of the bar date. In considering the motion, the court reviewed much of the case law relied upon by plaintiffs herein and found that there are two instances in which courts grant class certification motions. The first is when the class has been certified pre-petition. *Id.* at 21-22 (citing *Reid,* 886 F.2d at 1463; *Charter Co.,* 876 F.2d at 868; *American Reserve,* 840 F.2d at 488; *Zenith Laboratories. Inc. v. Sinay (In re Zenith Laboratories, Inc.),* 104 B.R. 659, 660 (D.N.J.1989); *Chateaugay Corp.,* 104 B.R. at 627-28; *In re Retirement Builders, Inc.,* 96 B.R. 390 (Bankr.S.D.Fla.1988)). The second is when notice of the case or bar date is inadequate or where unnamed class members are in large part "unknown creditors". *Id.* at 22 (citing *In re West Coast Video Enterprises, Inc.,* 174 B.R. 906, 909-10 (Bankr.E.D.Pa.1994); J. Wolfson, *Class Actions in Bankruptcy: A Clash of Policies Reconciled,* 5 BANKR.DEV.L.J. 391 (1988) (discussing *American Reserve)).* Central to the court's analysis was its concern regarding "the impact of the timing of the filing of a class claim or motion on any bar dates established in the bankruptcy case". *Id.* The court found that:

Known claimants of all kinds who have received actual notice of the bar date must proceed through the claims process on a level playing field. Tinkering with an established bar date may raise due process claims of parties who have timely filed claims by originally-established bar dates, since it gives

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 7
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

late filers a second bite at an apple which is likely to be less than fully satisfying, and thus effect unfair diminution of the timely filer's share of a distribution. On the other hand, bar dates are generally not binding on known creditors who have not received appropriate notice of bar dates, and they may not be binding on unnotified unknown creditors. Therefore, a class claim and motion which has the effect of expanding the bar date for unnotified creditors is often appropriate to comport with due process of law and expand the scope of a debtor's bankruptcy discharge. On the other hand, an action which expands the bar date for notified creditors may itself violate due process.

*6 Timing is also significant. The most propitious time for filing a motion for class recognition is before a bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors. It is clearly disruptive to the formulation of a plan to frustrate a debtor's logical assumptions regarding the amounts of total claims by compelling the debtor to alter or extend an established bar date. It is regretful enough if this disruption occurs as a result of a debtor's belated enlightenment regarding a previously unknowable or unknown claim, or an error by the debtor in providing notice. Thus, clearly, a mere dispensation requested by a creditor or group of creditors is not a basis to justify such disruption.

*Id.* at 22-23. Although the court noted that the putative class had not been certified by a non-bankruptcy court pre-petition, the decisive factor for the court in denying the motion was in "weighing the effect of extending the bar date for the former employees who have not filed proofs of claim by rendering them unnamed members of the putative class". *Id.* at 23. On that score it found that all known class members were provided with actual notice of the bar date and due to the circumstances surrounding their loss of employment they otherwise had "unusually stark, clear and hence effective" notice of the case. *Id.* It concluded that given the adequacy of the bar date notice, coupled with the timing of the motion, it would be "unwarranted, unfair, and possibly violate the due process rights of other creditors" effectively to extend the bar date to benefit both putative class members who failed to exercise vigilance and the pocketbooks of their lawyers, who would obviously seek a contingency fee from all putative class members who failed to opt out of the class. *Id.* at 24.

Plaintiffs urge us to reject *Sacred Heart* as contrary to the vast majority of cases authorizing the filing of class claims and maintenance of class actions.FN6 They also contend that debtor's assertion that all creditors must timely file claims was explicitly rejected in *Charter Co.,* 876 F.2d at 871,*American Reserve* 840 F.2d at 489 n. 3,*In re Wang Laboratories, Inc.,* 164 B.R. 404 (Bankr.D.Mass.1994) and *In re Livaditis,* 122 B.R. 330, 339 (Bankr.N.D.Ill.1990). Likewise, they maintain that the Bar Date is irrelevant for class certification, citing *Charter Co.,* 876 F.2d at 879,*Wilson v. Valley Elec. Membership Corp.,* 141 B.R. 309 (E.D.La.1992), *In re Mortgage & Realty Trust,* 125 B.R. 575, 579 (Bankr.C.D.Cal.1991), and *Livaditis,* 122 B.R. at 341. However, each of those cases is distinguishable.

> FN6. Plaintiffs suggest that *Sacred Heart* is a "curious decision" in light of the bankruptcy judge's certification in other cases of classes that did not fit into the categories he identified in *Sacred Heart* as being suitable for class actions. These cases, however, addressed certification of either a putative class of debtors or a class of defendants in an adversary proceeding commenced by the debtor. *See Whittaker v. Philadelphia Electric Co. (In re Whittaker),* 84 B.R. 934 (Bankr.E.D.Pa.) (granting chapter 7 debtor's motion to certify of class of similarly situated debtors seeking declaratory and injunctive relief against utility that had violated Bankruptcy Code by refusing to restore service for non-payment of pre-petition debt), *aff'd,*92

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 8
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

B.R. 110 (E.D.Pa.1988), *aff'd,* 882 F.2d 791 (3d Cir.1989); *In re MJC Holding Corp. v. Fitzmaurice (In re Broadhollow Funding Corp.),* 66 B.R. 1005 (Bankr.E.D.N.Y.1986) (granting debtor's motion to certify class of defendant investors in adversary proceeding seeking declaratory judgment resolving equitable ownership of mortgages, where court concluded that it would avoid costly multiple litigation and the danger of inconsistent results and would enable debtor to move forward with plan of reorganization); *see also Smith v. New York State Higher Education Services Corp. (In re Smith),* 95 B.R. 286 (Bankr.N.D.N.Y.1988) (denying chapter 7 debtor's motion to certify class of debtors whose federal income tax refunds had been garnished by student loan agency for failure to pay student loans where debtor had failed to show that numerosity requirement satisfied).

In *Charter Co.,* class action securities litigation had been commenced prior to the bankruptcy filing in federal district court, but was stayed before certification of class as a consequence of the filing. The class representative filed a purported class proof of claim before the bar date established by the bankruptcy court. 876 F.2d at 867. The district court thereafter certified the class. After the debtor objected to the class proof of claim, the class representative moved for certification of the class under Fed.R.Civ.P. 23. The court found that class proofs of claim are not prohibited, but remanded the case to the bankruptcy court to determine whether class certification was appropriate. *Id.* at 876. In large part, the court based its determination that a class proof of claim should be permitted, even though not expressly contemplated by the Bankruptcy Code, upon its findings that (i) the purported class claim was timely filed, (ii) it "seem[ed] backwards" to require individual class members to file separate proofs of claim after the class had already been certified by the district court, and (iii) it would have been unfair to deny class claim status because, in the absence of an adversary proceeding, the earliest opportunity for the purported representative to seek class certification under Fed.R.Civ.P. 23 was after the debtor objected to the class claim, which he did promptly, although the debtor waited nearly two years to file its objection. *Id.* at 870-74. Those considerations are not present here. *Wang Laboratories,* involved a putative class of mass tort claimants whose members could not be determined without significant effort and which was not "subject to precise identification in the first instance." 164 B.R. at 404. That is not the case here where, as we discuss below, Jamesway complied with the terms of the Bar Date Order by, among other things, mailing a Claim Package well in advance of the Bar Date to over 11,700 individual former employees and publishing notice of the Bar Date in two nationally circulated newspapers. *American Reserve* is distinguishable because the trustee did not provide putative class members with notice of the case and a proof of claim form. 840 F.2d at 494. Under those circumstances, the court found that if it struck the class proof of claim, it would frustrate the important bankruptcy goals of martialing and addressing all claims against the debtor in a single centralized proceeding. *Id.* at 489. In so doing, the Seventh Circuit stated as follows:

*7 The district court's observation that "[c]lass proofs of claim would ... permit creditors who have not made the minimal effort to file a proof of claim to participate in the distribution of the estate, perhaps at the expense of unsecured creditors who properly filed a proof of claim but whose claims were subordinate to those of the class members"... is an argument in favor of the class device. The members of the class may be entitled to compensation, and if this can be achieved without surplus paperwork so much the better.

*Id.* at 489 n. 3. Under the circumstances present in *American Reserve (i.e.* failure to give notice to putative class members), we find the Seventh Circuit's reasoning on this point to be compelling. In this

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73  
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

Page 9

case, however, where there is no evidence to suggest that all putative class members were not notified of these proceedings and the Bar Date,[FN7] it fails because it is outweighed by the countervailing bankruptcy considerations embodied in the Bar Date and the function it serves in any bankruptcy case (discussed below).

> FN7. As discussed below, the three Named Plaintiffs who claim not to have received a Claim Package were given actual notice of Jamesway's chapter 11 case and the Bar Date.

Lack of adequate and effective notice and the due process considerations it raises was also a determining factor in *Mortgage & Realty Trust,* 125 B.R. at 581. In *Wilson v. Valley Elec. Membership Corp.,* 141 B.R. at 312, the class representatives timely filed a class proof of claim. The class in *Livaditis* had been certified by a federal district court before the debtor filed for bankruptcy, and the district court actually entered judgment in favor of the class but had not awarded damages when the bankruptcy case intervened. In rejecting the debtor's assertion that mailing a claim package to each claimant with instructions to complete and file a proof of claim would be just as efficient as a class action, the court noted that "Class Plaintiffs have already become accustomed to proceeding as a class through their representatives in the District Court proceeding; as a result they have come to rely upon class representatives to assert their interests with respect to Debtor." 122 B.R. at 339.

The remaining cases relied upon by plaintiffs are equally unavailing. *Reid* involved a class action pending in a non-bankruptcy court which had certified the class before the bankruptcy case. Moreover, the Sixth Circuit affirmed a denial of class certification, holding that the proposed representative was ill-chosen and had proceeded in violation of Rule 23, among other rules. 886 F.2d at 1470-71. Pre-bankruptcy certification was also present in *Zenith Laboratories,* 104 B.R. at 660,*Lerch v. Iomazzo (In re Iomazzo),* 149 B.R. 767 (Bankr.D.N.J.1993), and *Retirement Builders,* 96 B.R. at 391. Other cases cited by plaintiffs, including *Chateaugay,* 104 B.R. at 629, involved the debtor's failure to provide putative class members with notice of the case and the bar date. Similarly, in *Lebron v. Mechem Financial, Inc. (In re Mechem Financial, Inc.),* 125 B.R. 151, 153 (Bankr.W.D.Pa.1991), the court denied class claim status where the trustee possessed the debtor's books and records and could readily identify the proposed class members and the nature and amount of their claims. In *In re REA Express, Inc.,* 10 B.R. 812, 814 (Bankr.S.D.N.Y.1981), the court certified a very limited class consisting solely of employees whose individual claims were the subject of an omnibus objection by the trustee, noting that all class members had already filed individual proofs of claim and thereby clearly defined the extent of the class. *Shaw v. Whirlpool Financial Corp. (In re The Appliance Store, Inc.),* 158 B.R. 384, 387 (Bankr.W.D.Pa.1993), involved certification of a class of creditors to assert their unpaid wage claims against the secured creditors, and the court specifically noted that the class was not pursuing the debtor or estate assets. *Truax & Hovey, Ltd. v. Grosso (In re Grosso),* 9 B.R. 815 (Bankr.N.D.N.Y.1981), *Kelley v. Sclater (In re Sclater),* 40 B.R. 594 (Bankr.E.D.Mich.1984), and *Hill v. I.I. Czar (In re Wholesale Furniture Mart, Inc.),* 24 B.R. 240 (Bankr.W.D.Mo.1982), involved certification of classes of creditors in nondischargeability proceedings. In *Grosso,* after noting that the plaintiffs' failure to bring an action seeking to impose a constructive trust was procedurally defective because it was not commenced as a class action, and would require a continuance to determine whether there were other trust beneficiaries, the court dismissed the complaint on other grounds. 9 B.R. at 823, 827. The court in *Wholesale Furniture Mart* certified a class of customer creditors, specifically noting that a nondischargeability judgment represents a form of equitable relief akin to a declaratory judgment rather than an award of monetary damages. 24 B.R. at 241 n. 1. The nondischargeability proceeding commenced in *Sclater* by the state attorney general

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 10
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

on behalf of all former members of the debtor health spa whose unused membership fees had not been refunded was not commenced as a class action even though the parties treated it as such at the time of the trial and the court concluded that post-trial class certification "in no way prejudices the [debtors] because there can be no expansion of their potential liability". 40 B.R. at 600. *First Federal of Michigan v. Barrow,* 878 F.2d 912, 919 (6th Cir.1989), is also distinguishable because it involved certification of a class of non-debtor defendants in an adversary proceeding commenced by the trustee seeking avoidance of alleged preferential transfers. Likewise with *In re W.T. Grant Co.,* 24 B.R. 421, 426 (Bankr.S.D.N.Y.1982), where the court denied class certification because the proposed class did not satisfy the numerosity requirement of Fed.R.Civ.P. 23(a).

**\*8** Plaintiffs dispute whether Jamesway mailed a Claim Package to all Proposed Class members, and contend that they have been denied discovery from Jamesway regarding the service of proofs of claim. Shortly before the hearing on these motions, Jamesway submitted in opposition to plaintiffs' motion the February 20, 1997 affidavit of Helen Kebbe, the senior claims analyst at Poorman and a co-worker of Patricia Corbin, who was responsible for serving Claim Packages in accordance with the terms of the Bar Date Order. Exhibit "A" to Ms. Kebbe's affidavit is Ms. Corbin's March 7, 1996 declaration of service attesting to the fact that Claim Packages were duly served in accordance with the terms of the Bar Date Order. Exhibit "B" is a schedule listing former Jamesway employees who were served with a Claim Package. Exhibit "C" to Ms. Kebbe's affidavit are certificates of publication attesting to the fact that notice of the Bar Date was published on March 15, 1996 in The New York Times and The Wall Street Journal. Ms. Kebbe states in her affidavit that included among the 30,000 creditors served with Claim Packages are over 11,700 former Jamesway employees.

The basis for plaintiffs' contention that former employees did not receive a proof of claim is that three Original Named Plaintiffs claim they never received a Claim Package, *see* Declaration of Larry Barber dated February 12, 1997 (the "Barber Declaration") ¶ 1; Declaration of Tricia Grimaldi dated February 11, 1997 ¶ 1; Declaration of Barbara Burnett dated February 11, 1997 ¶ 1, and that because these former employees only assert WARN Act claims, their failure to receive a Claim Package suggests that Jamesway did not even mail packages to holders of nondisputed claims.

We reject plaintiffs' challenge to the sufficiency of service on this basis. Jamesway mailed Claim Packages to over 11,700 former employees. Larry Barber, Tricia Grimaldi and Barbara Burnett, all of whom assert disputed claims, appear on the list of those individuals to whom Claim Packages were mailed. The fact that they may not have actually received the mailing is irrelevant for two reasons. First, Barber, Grimaldi and Burnett obviously received notice of these proceedings and their claims since they are among the Original Named Plaintiffs. Second, the fact that these plaintiffs or other Proposed Class members may not have received a Claim Package that was mailed to them or read published notice of the Bar Date is irrelevant as a matter of due process.

When litigation threatens to deprive individuals of their property, "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" satisfies due process requirements. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *see also Mennonite Board of Missions v. Adams,* 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983). The proper inquiry is whether Jamesway acted reasonably in selecting means likely to inform persons affected by the Bar Date and these chapter 11 proceedings, not whether each claimant actually received notice. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988), *cert. denied,*488 U.S.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

Page 11

1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989). As to those plaintiffs who might not have received actual notice of the Bar Date, we find that by complying with the terms of the Bar Date Order, mailing a Claim Package to every known creditor and publishing notice of the Bar Date, Jamesway's actions satisfy due process.

**\*9** Jamesway served the Bar Date Motion upon all entities entitled to notice under Fed.R.Bankr.P.2002(a)(7), as well as all entities who filed notices of appearances herein. Among those was the law firm of Parker, Chapin, Flattau & Klimpl, LLP, which then represented approximately 156 former Jamesway employees asserting WARN Act claims. Jamesway scheduled the hearing on that motion on regular notice. No one either filed objections to the Bar Date Motion or appeared at the hearing in opposition to the motion.

The Bar Date Notice is entitled "Notice of Deadline For The Filing Of Proofs Of Claims Against The Debtors And Of Procedure To File Proofs Of Claim". In relevant part, it defines the term "claim" to mean a

(a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

Bar Date Notice ¶ 1. Further, it unambiguously states that
NOTICE IS FURTHER GIVEN THAT IF YOU ARE REQUIRED TO FILE A PROOF OF CLAIM AND FAIL TO DO SO IN THE MANNER PRESCRIBED, YOU WILL BE FOREVER BARRED FROM VOTING UPON, OR RECEIVING DISTRIBUTIONS UNDER, ANY PLAN OR PLANS OF REORGANIZATION FOR ANY OF THE JAMESWAY ENTITIES, AND WILL BE FOREVER BARRED FROM ASSERTING ANY SUCH CLAIM AGAINST ANY OF THE JAMESWAY ENTITIES OR THEIR SUCCESSORS OR ASSIGNS.

(Emphasis in original).

Nonetheless, plaintiffs contend that the Bar Date Notice is inadequate because it does not specifically advise former employees that they might need to file WARN Act claims. Of course, Jamesway disputes that it has WARN Act liability. In any event it was not bound to advise the employees of the exact nature of their claims. *See Gayl v. Amdura Corp, (In re Amdura Corp.),* 170 B.R. 445, 452 (D.Colo.1994) (bar date notice that advised interest holders that they were not required to file proof of their interests but did not advise those interest holders who were also members of a class of plaintiffs in securities litigation of the need to file proofs of claim held to be adequate). Rather, "the purpose of the notice requirement is to advise individuals who will be affected by the outcome of any proceeding of the impending hearing so that they can take steps to safeguard their interests ... [not] to advise them of the nature of those interests". *In re Penn, Central Transp. Co.,* 771 F.2d 762, 768 (3d Cir.) (citation omitted), *cert. denied,* 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 576 (1985). The Bar Date Notice plainly satisfies that standard.

The Bar Date Order is critically important to the administration of this chapter 11 case, and the reorganization process. It

**\*10** serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization.... Thus, a bar order does not "function merely as a procedural gauntlet,"... but as an integral part of the reorganization process.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73  
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

Page 12

*First Fidelity Bank, N.A. v. Hooker Investments, Inc. (In re Hooker Investments, Inc.),* 937 F.2d 833, 840 (2d Cir.1991) (citing *United States v. Kolstad (In re Kolstad ),* 928 F.2d 171, 173 (5th Cir.1991), *reh'g denied,*936 F.2d 571 (5th Cir.), *cert. denied,*502 U.S. 458, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991)); *accord In re Keene Corp.,* 188 B.R. 903, 907 (Bankr.S.D.N.Y.1995); *Maxwell Macmillan Realization Liquidating Trust & MCC GAO, Inc. v. Aboff (In re Macmillan),* 186 B.R. 35, 48-49 (Bankr.S.D.N.Y.1995). The bar date is akin to a statute of limitations, and must be strictly observed. *Id.* at 49; *In re The Drexel Burnham Lambert Group Inc.,* 129 B.R. 22, 24 (Bankr.S.D.N.Y.1991). A creditor may, however, file a late claim if it demonstrates that its failure to file a timely claim was due to "excusable neglect". Fed.R.Bankr.P. 9006(b)(1); *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 389, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993). The creditor has the burden of proving "excusable neglect." *In re R.H. Macy & Co., Inc.,* 161 B.R. 355, 360 (Bankr.S.D.N.Y.1993).

Debtor complied with the terms of the Bar Date Order by mailing a Claim Package to 11,700 former employees. If we certify the class, we will effectively extend the bar date to those employees who have not timely filed WARN Act claims herein, or moved to extend their time to file them, without a showing of excusable neglect. As in *Sacred Heart,* we must "weigh[ ] the effect of extending the bar date for the former employees who have not filed proofs of claim by rendering them unnamed members of the putative class". 177 B.R. at 23. In this case, the balance tips decidedly in favor of denying class claim status to the Complaint. Jamesway gave adequate notice of these chapter 11 proceedings and the Bar Date. No class was pre-certified such that purported class members who did not chose to file a proof of claim should or could have had any reasonable expectation that they need not comply with the Bar Date Order. As such, this is not a case justifying an exception to the enforcement of the Bar Date Order in accordance with its express and unequivocal terms. To do so would be "unwarranted, unfair, and possibly violate the due process rights of other creditors". *Sacred Heart.* 170 B.R. at 24. Under the facts of this case, we find that the Proposed Class should not be certified and we deny the motion. We need not and do not consider whether the plaintiffs can satisfy Rule 23(a) and (b)(1) or (b)(3) herein.

*Jamesway's Cross-Motion for Summary Judgment*

**\*11** Bankruptcy Rule 7056 makes Fed.R.Civ.P. 56 applicable herein. Fed.R.Civ.P. 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

As movant, Jamesway must demonstrate the absence of any genuine issues of material fact. *See*Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). "A party moving for summary judgment is not required to 'support its motion with affidavits or other similar materials negating the opponent's claim.' " *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 713 (2d Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552). Jamesway need only show that "there is an absence of evidence to support [plaintiffs'] case." *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. at 2554; *see also Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995); *Turtur v. Rothschild Registry Int'l, Inc.,* 26 F.3d 304, 309 (2d Cir.1994). As the party opposing summary judgment, plaintiffs may not rest upon mere allegations or denials in the Complaint, but must, by means of af-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73  
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

Page 13

fidavits or as otherwise provided in Rule 56, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

Jamesway maintains that the claims of the 17 Added Plaintiffs who did not file individual proofs of claim on or prior to the Bar Date must be dismissed. According to Jamesway, although the Complaint as originally filed may be deemed an informal proof of claim as to the Original Named Plaintiffs, the amended Complaint does not qualify as an informal proof of claim with respect to the 17 Added Plaintiffs who failed to file timely their claims. Plaintiffs do not dispute that 17 of the 44 Added Plaintiffs did not file individual proofs of claim. Rather, they contend that the amended Complaint should be deemed an informal proof of claim as to those plaintiffs. We disagree.

To qualify as an informal proof of claim, a document purporting to evidence such a claim must (1) have been timely filed with the bankruptcy court and have become part of the judicial record, (2) state the existence and nature of the debt, (3) state the amount of the claim against the estate, and (4) evidence the creditor's intent to hold the debtor liable for the debt. *See In re Houbigant, Inc.,* 190 B.R. 185, 187 (Bankr.S.D.N.Y.1995) (citing *In re L.F. Rothschild Holdings, Inc.,* 143 B.R. 335, 336 (S.D.N.Y.1992); *In re Cole,* 189 B.R. 40, 46-47 (Bankr.S.D.N.Y.1995); *Hatzel & Buehler, Inc. v. Station Plaza Assoc., L.P.,* 150 B.R. 560, 561 (Bankr.D.Del.1993); *In re Carmelo Bambace, Inc.,* 134 B.R. 125, 128 (Bankr.S.D.N.Y.1991); *In re Thomson McKinnon, Inc.,* 130 B.R. 721, 723 (Bankr.S.D.N.Y.1991); *In re The Drexel Burnham Lambert Group. Inc.,* 129 B.R. at 26)). A document filed after the bar date cannot serve as an informal proof of claim. *Id.* (citing *U.S. v. International Horizon, Inc. (In re International Horizons, Inc.),* 751 F.2d 1213, 1217 (11th Cir.1985); *In re Rainbow Trust,* 179 B.R. 51, 54 (Bankr.D.Vt.1995). As such, having failed to file individual proofs of claim prior to the Bar Date, the 17 Added Plaintiffs claims' must be dismissed.

\*12 Jamesway next argues that it is entitled to summary judgment dismissing the Complaint as to the 35 plaintiffs terminated postpetition because, as a liquidating debtor, it is not an "employer" subject to the WARN Act. For these purposes, an "employer" is "any business enterprise that employs 100 or more employees, excluding part-time employees", or "100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." 29 U.S.C. § 2101(a)(1); 20 C.F.R. § 639.3(a).

The commentary to 20 C.F.R. § 639.3(a) states that

DOL agrees that a fiduciary whose sole function in the bankruptcy process is to liquidate a failed business for the benefit of creditors does not succeed to the notice obligations of the former employer because the fiduciary is not operating a "business enterprise" in the normal commercial sense. In other situations, where the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation.

54 Fed.Reg. 16,045 (1989). Thus, liquidating fiduciaries need not provide notice to terminated employees under the WARN Act. *See Chauffeurs, Sales Drivers, Warehousemen & Helpers Union Local 572, International Brotherhood of Teamsters, AFL-CIO v. Weslock Corp.,* 66 F.3d 241, 244 (9th Cir.1995) ("WARN's obligations ... can apply ... only where the [secured] creditor operates the debtor's asset as a 'business enterprise' in the 'normal commercial sense' ...; [W]here the creditor does no more than exercise that degree of control over the debtor's collateral necessary to protect the security interest, and acts only to preserve the business asset for liquidation or sale, the notice requirement of WARN will not apply"); *Finkler v. Elsinore Shore Assocs.,* 725 F.Supp. 828, 832 (Bankr.D.N.J.1989) (casino commission appointed conservator who did not actually exercise broad statutory powers giving him ability act as employer and operate casino/hotel business and merely fulfilled regulatory function in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

Page 14

connection with liquidation of hotel casino did not succeed to defendant's WARN Act obligations). *But see In re United Healthcare System, Inc.,* No. 97-21785, *slip op.* (Bankr.D.N.J. Mar. 26, 1997) (debtor-in-possession which within 48 hours of chapter 11 filing either urged all patients to go home or arranged for their transfer to other facilities, and issued furlough notice to its 1,300 employees 16 days after filing advising them not to report to work with the exception of small contingent of approximately 100 who continued to work securing debtor's plant and maintaining necessary equipment, was nevertheless required to provide WARN Act notice to employees in anticipation of shut down); *Oil, Chemical & Atomic Workers, AFL-CIO-CFC v. Hanlin Group, Inc. (In re Hanlin Group, Inc.),* 176 B.R. 329, 332 (Bankr.D.N.J.1995) (chapter 11 trustee that operated plant for at least one month postpetition was employer under WARN Act). Jamesway argues that it did not succeed to the notice obligations of the pre-bankruptcy entity because its sole purpose is to liquidate a failed business. Plaintiffs do not dispute that a fiduciary liquidating a failed business does not succeed to the notice obligations of the former employer. Instead, they contend that Jamesway was operating a business enterprise in the normal commercial sense until November 3, 1995, when we entered an order, among other things, authorizing debtor to conduct the GOB Sales and to sell its inventory. Plaintiffs accordingly argue that employees terminated on or before November 3, 1995 were entitled to WARN Act notice.

*13 The Bankruptcy Code expressly contemplates a liquidating chapter 11 plan of reorganization. *See* 11 U.S.C. §§ 1123(b)(4). Even in a liquidating chapter 11, the debtor continues to manage its properties and operate its business as a debtor-in-possession. *See* 11 U.S.C. §§ 1107, 1108. Jamesway contends that it ceased its commercial operations prepetition in contemplation of its liquidation. For Jamesway, from the outset of these cases, it manifested its intention to liquidate in various pleadings filed in, and/or orders entered by this court, such as

(i) an October 17, 1995 application for an order authorizing emergency use of cash collateral (the "Cash Collateral Application"),

(ii) an October 18, 1995 order, among other things, scheduling a hearing to consider debtors' application for authority to obtain post-petition credit (the "Post-petition Credit Order"),

(iii) a stipulation and order authorizing emergency use of cash collateral and granting adequate protection in connection therewith (the "Cash Collateral Stipulation"), and

(iv) an October 17, 1995 application for an order authorizing the payment of pre-petition wages, salaries and other employee related amounts (the "Wage Order").

In those documents, Jamesway held itself out as a liquidating debtor. *See* Cash Collateral Application ¶ 27 ("it is.. critical that the Debtors be able to meet their obligations and continue to conduct their businesses, namely conduct the GOB Sales to conclusion"); Post-petition Credit Order p. 2 ("the Debtors will be unable to effectively operate their businesses, [and] the Debtors' ability to effectuate an orderly liquidation of their affairs ... will be immediately and irreversibly jeopardized"); Cash Collateral Stipulation p. 3 ("in order to obtain the funds needed to pay expenses associated with conducting an orderly liquidation of the Debtors' businesses and assets and the management and preservation of the Debtors' assets and properties"); Wage Order ¶ 4 ("Jamesway and the other Debtors are in the process of permanently discontinuing their retail operations ... Jamesway shall shortly seek this Court's authorization to ... commence an aggressive campaign designed to market and sell each of its store leaseholds for as many of their locations as is possible"). However, Jamesway submitted no evidence to support its contention on this point, and the materials discussed above were submitted by Jamesway on the day before the hearing on these motions. Plaintiffs have not had an opportunity to obtain any discovery on this issue. We find that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

Page 15

extent to which Jamesway operated its business prior to the time that its employees were discharged is a material issue of fact precluding summary judgment as to the 35 employees terminated post-petition.

Plaintiffs contend that the Store Employees were entitled to WARN Act notice because they are "affected employees" who were terminated as a reasonably foreseeable consequence of the mass layoffs at the Distribution Center and Corporate Headquarters. Jamesway does not dispute that the terminations at the Corporate Headquarters and Distribution Center are "mass layoffs" under the WARN Act, but contends that the Store Employees cannot assert WARN Act claims because each store was a "single site of employment" which terminated fewer than 50 employees. See 29 U.S.C. § 2101(a)(2). Alternatively, Jamesway argues that in most instances it did not close its stores for at least 60 days after the Filing Date while the GOB Sales and the Fixture Liquidations were conducted, and that it gave WARN Act notice of the shutdown to all Store Employees on or about October 20, 1995.

*14 Plaintiffs dispute Jamesway's contention that none of its 90 stores employed 50 or more persons, contending that at least one store-Jamesway's Timberville, Virginia location-had more than 50 employees for WARN Act purposes. See Barber Declaration ¶ 4. However, they do not argue that this factual dispute precludes summary judgment in favor of Jamesway dismissing the claims of the Store Employees, nor do they maintain that Jamesway failed to provide them with discovery regarding this issue such that summary judgment would be inappropriate under Fed.R.Civ.P. 56(f). Rather, as we discuss below, plaintiffs contend that the Store Employees are "affected employees" holding WARN Act claims.

Jamesway discounts the relevance of the factual dispute regarding the number of employees at any of its stores, contending, in effect, that it was not required to give WARN Act notice irrespective of whether any store employed more than 50 persons because each store qualified as a "single site", none of the stores was closed until the end of December 1995 at the earliest and no "mass layoff" occurred at any store. 29 U.S.C. § 2102 requires 60 days' notice to affected employees of any anticipated "plant closing" or "mass layoff". "Plant closing" means permanent or temporary shutdown of a single site of employment during any 30-day period for 50 or more full-time employees. 29 U.S.C. § 2101(a)(2). "Mass layoff" means a reduction in the workforce which is not the result of a "plant closing" and which results in an employment loss at a single site of employment during any 30-day period for (i) at least 33% of the total number of full-time employees, and not less than 50 full-time employees, or (ii) at least 500 full-time employees. 29 U.S.C. § 2101(a)(3). Jamesway does not explain the basis for what amounts to a legal conclusion on this point. Based upon our reading of the statute, however, the only conceivable basis for Jamesway's contention that whether or not any store had more than 50 employees is irrelevant is that at no time during Jamesway's conduct of GOB Sales, store closures and termination of Store Employees was there a period of 30 days or more during which 50 or more full-time employees at any single store were terminated. However, this argument, like Jamesway's contention that no store had more than 50 qualifying employees, suffers from the basic infirmity that no evidentiary record exists to support it.

We find that whether or not Jamesway's Timberville, Virginia store had 50 or more qualifying employees is a disputed material issue of fact precluding summary judgment in favor of Jamesway as to the WARN Act claims asserted by Named Plaintiffs who were employed at that store. We reject Jamesway's alternative argument that it is entitled to summary judgment because it gave proper WARN Act notice to all Store Employees on or about October 20, 1995 by sending a notice to "Jamesway Associates" at all of its store locations. To satisfy the WARN Act, the notified plaintiffs could not have been terminated prior to December 19, 1995 (60 days after October 20, 1995). Whether

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 16
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

or not any Store Employees were terminated prior to that date is disputed. In fact, plaintiffs state that they lack sufficient information to assess the accuracy of Jamesway's factual allegation regarding the number of plaintiffs terminated on various dates because Jamesway has not provided that information in response to their discovery requests.

**\*15** We grant summary judgment in favor of Jamesway dismissing WARN Act claims asserted by Store Employees who were employed at stores other than the Timberville, Virginia store. As noted previously, in the event of a "mass layoff" or "plant closing", the WARN Act requires the employer to provide written notice to each "affected employee" at least 60 days prior to the closing or layoff. 29 U.S.C. § 2102. "Affected employees" are "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer". 29 U.S.C. § 2101(a)(5).

Relying upon the WARN Act's legislative history and relevant Federal Regulations, plaintiffs maintain that "affected employees" include employees at employment sites other than where the plant closing or mass layoff occurred. In part, the Federal Regulations implementing the WARN Act state that

Notice is required to be given to employees who may reasonably be expected to experience employment loss. This includes employees who will likely lose their jobs because of bumping rights or other factors, to the extent that such workers can be identified at the time notice is required to be given.

20 C.F.R. § 639.6. Plaintiffs urge us to construe the phrase "bumping rights or other factors" to require that notice have been given to the Store Employees, who they assert lost their jobs as a consequence of mass employee layoffs at Jamesway's Corporate Headquarters and Distribution Center, which did qualify under the WARN Act.

In *Williams v. Phillips Petroleum Co.,* 23 F.3d 930 (5th Cir.1994), an employer laid off over 500 employees at a site in Oklahoma after giving WARN Act notice and also terminated 27 employees in Texas without giving notice. *Id.* at 932-33. The Texas employees brought WARN Act claims. The district court granted the employer's cross-motion for summary judgment, finding that no mass layoff occurred at the site of employment where the Texas employees worked. *Id.* at 933. The Court of Appeals agreed, finding that the Texas and Oklahoma facilities did not constitute a single site, and that "[t]he [Oklahoma] layoffs, accordingly, are irrelevant to the issue of whether the [Texas] employees were entitled to notice under WARN."*Id.* at 934. The Court also rejected the plaintiffs contention that, in accordance with applicable DOL commentary, the mass layoff in Oklahoma triggered an obligation under the WARN Act to notify the Texas employees:

Even if we assume that these comments have legal effect, they apply only if the employees at the single site suffering the mass layoff are relocated to other sites, thereby "bumping" employees at those sites. Moreover, those likely to be bumped must be individually and reasonably identifiable at least sixty-five days before the bumping occurs. A WARN event at the first site will trigger a WARN event at the second site only if a sufficient number of workers are bumped at the second site to trigger WARN independently.

**\*16** *Id.*

The legislative history of the WARN Act is similarly unavailing to plaintiffs. They cite to a portion of the congressional record, which states as fol- lows:

Two changes have been made regarding the number of workers who must suffer an employment loss in order for an employer's action to constitute a "plant closing" or "mass layoff" within the meaning of the bill. First, for both closings and layoffs, part-time workers ... and seasonal workers. are not to be taken into account in determining whether the requisite number of employees have been affected. If

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

...

Not Reported in B.R.
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

Page 17

enough employees have been affected to trigger the provisions of this bill, however, all affected employees are entitled to the advance notice provided for herein....

133 CONG.REC. § 9485-01 (daily ed. July 9, 1987) (statement of Sen. Metzenbaum). The statement has no bearing on whether terminated employees at a site other than the single site of the mass layoff are "affected employees."

Other excerpts from the legislative history support the opposite conclusion. Several legislators emphasized that one of the WARN Act's purposes is to provide local communities with some warning when a large group of workers suddenly becomes unemployed within a short period of time. *See, e.g.,* 134 CONG.REC. 15,514 (June 22, 1988) (statement of Sen. Byrd); 134 CONG.REC. H5500-01 (June 22, 1988) (statement of Sen. Murphy). Local communities are not as adversely affected by the sudden unemployment of a large number of workers at a geographically separate site. For this reason the regulations listing the factors relevant for purposes of determining whether there has been a WARN Act "plant closing" or "mass layoff" deal with ambiguities arising from sites in the same geographic area. *See Wiltz v. M/G Transport Svcs., Inc.,* 925 F.Supp. 500, 503 (E.D.Ky.1996); *see also* 20 C.F.R. § 639.3(i) (1993). The numerical requirements for triggering WARN Act applicability and the requirement that the terminations occur at a "single site of employment" would be meaningless if WARN Act notice had to be given to employees located at other sites who were terminated as a consequence of the same economic conditions which caused the "mass layoff" or "plant closing ".

We find that the statute contemplates that notice be given to employees at the site of the mass layoff, and not to employees of other facilities who were not "bumped" and who are not the object of a "mass layoff" even though they were terminated as a consequence of the same conditions that caused the "mass layoff" or "plant closing". We accordingly grant Jamesway's cross-motion for partial summary judgment as it pertains to Store Employees employed outside of the Timberville, Virginia store.

Jamesway asserts that Michael Palmer did not suffer an "employment loss" under the WARN Act because he voluntarily terminated his employment with Jamesway on October 12, 1996. The statute defines "employment loss" as "an employment termination, other than a discharge for cause, voluntary departure, or retirement." 29 U.S.C. § 2101(a)(6). In support of its position, Jamesway relies on Palmer's deposition testimony, which provides in relevant part as follows:

*17 Q: Did you volunteer to have your employment terminated on October 12th?

A: Did I volunteer?

Q: In other words, did you volunteer or did you suggest to anyone at Jamesway that you personally should be put on the list of the first group of employees to be terminated?

A: It's possible.

Q: Who did you make that suggestion to?

A: To Mr. Douglas.

Q: What led you to make that suggestion to Mr. Douglas?

A: The fact that both Mr. Kiley and Mr. Williams were both being terminated at that time and that they were forming a team to work with Mr. Sherman.

In other words, Mr. Williams had more of a reason to be retained than I did, and there were adequate financial people to run the company through the bankruptcy.

Q: So, in essence, if I understand you correctly, you suggested to Mr. Douglas that you did not see the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 18
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73
**(Cite as: Not Reported in B.R., 1997 WL 327105)**

need from a business perspective or an organizational perspective, for the company to continue to retain you as chief financial officer once the company was going into the liquidation mode?

A: That's correct.

Q: Your best recollection, then, is that you made that suggestion to Douglas either on the 9th or 10th of October?

A: I don't know whether I made the suggestion to Douglas, or Douglas made it to me, but it came up in that period of time.

This testimony is equivocal and we decline to rely on it as a basis for granting summary judgment dismissing Mr. Palmer's claim.

*Conclusion*

We deny plaintiffs' motion for class certification. We grant Jamesway's cross-motion for summary judgment dismissing the claims of the 17 Added Plaintiffs who failed to file individual proofs of claim prior to the Bar Date and the claims of Named Plaintiffs who were Store Employees at stores other than the Jamesway store in Timberville, Virginia. We deny Jamesway's cross-motion in all other respects.

SETTLE JUDGMENT AND ORDER.

Bkrtcy.S.D.N.Y.,1997.
In re Jamesway Corp.
Not Reported in B.R., 1997 WL 327105 (Bkrtcy.S.D.N.Y.), 13 IER Cases 73

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.