# Exhibit B

**RECEIVED**

No. 19881-2-III

FEB 2 0 2001

CLERK OF COURT OF APPEALS
STATE OF WASHINGTON III

## COURT OF APPEALS, DIVISION III
## STATE OF WASHINGTON

---

### MOTION FOR
### DISCRETIONARY REVIEW

---

**W.R. GRACE & COMPANY-CONN, (A CONNECTICUT CORPORATION); W.R. GRACE & COMPANY (A DELAWARE CORPORATION); W.R. GRACE & CO., A/K/A GRACE, AN ASSOCIATION OF BUSINESS ENTITIES; SEALED AIR CORPORATION (A DELAWARE CORPORATION); AND WILLIAM V. CULVER, RESIDENT OF THE STATE OF WASHINGTON,**

Petitioners,

v.

**MARCO BARBANTI, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL OTHERS SIMILARLY SITUATED,**

Respondents.

---

PERKINS COIE LLP
V. L. Woolston, Jr., WSBA #9453
Rocco N. Treppiedi, WSBA # 9137
Gretchen F. Baumgardner, WSBA #17966
Attorneys for Petitioners
W.R. Grace & Company-Conn,
W.R. Grace & Company, and
William V. Culver

# CONTENTS

I.     INTRODUCTION................................................................1

II.     IDENTITY OF PETITIONERS ................................................1

III.     DECISION.......................................................................1

IV.     ISSUES PRESENTED FOR REVIEW ....................................2

V.     STATEMENT OF THE CASE...............................................2

      A.     Nature of the Claims Asserted Below ............................2

      B.     Procedural History .........................................................5

VI.     ARGUMENT ........................................................................7

      A.     Standard for Discretionary Review ................................7

      B.     The Court Erred in Its Unprecedented
            Application of CR 23(b)(2) to This Case,
            Where the Relief Sought Is
            Predominantly Monetary in Nature.................................7

            1.     Certification of a CR 23(b)(2)
                   class under the circumstances
                   presented here is unprecedented
                   under Washington law. ......................................10

            2.     The refusal of Washington courts
                   to apply CR 23(b)(2) to class
                   actions for monetary relief is
                   supported by analogous decisions
                   in the federal courts. .........................................11

            3.     Even if the "funds" the class
                   representative is seeking could be
                   deemed to be a form of equitable
                   relief, money damages are still the
                   predominant form of relief sought
                   in this action. ....................................................16

4.    The certification of claims for monetary relief under CR 23(b)(2) implicates due process concerns for absent class members and for the class action defendants. ....................................................20

C.    Certification of the Class Substantially Alters the Status Quo ...................................................23

D.    This Case Presents Important Issues Regarding the Limits of Appropriate Certification Under CR 23(b)(2) that Have Not Been Addressed by Washington's Appellate Courts Since the Washington Supreme Court decided *Eriks v. Denver* ..........................................................26

VII.    CONCLUSION .......................................................................27

CERTIFICATE OF SERVICE ..........................................................29

# TABLE OF AUTHORITIES

### Cases

*Allison* v. *Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) ................................................................19, 20, 21

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)......................... 9

*Arch v. American Tobacco Co.*, 175 F.R.D. 469 (E.D. Pa. 1997) ....................................................................9, 13, 18

*Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998), *cert. denied* 526 U.S. 1114 (1999) ......................... 21

*Barnes v. American Tobacco Co.*, 176 F.R.D. 479 (E.D. Pa. 1997), *aff'd* 161 F.3d 127 (3d Cir. 1998), *cert. denied* 526 U.S. 1114 (1999)........................................................ 20

*Brown v. Brown*, 6 Wn. App. 249 (1971) ............................................ 8, 24

*Brown v. Ticor Title Ins. Co.*, 982 F.2d 386 (9th Cir. 1992), *cert. dismissed* 511 U.S. 117 (1994).................................... 23

*Castano v. American Tobacco Co.*, 160 F.R.D. 544 (E.D. La. 1995), *rev'd on other grounds*, 84 F.3d 734 (5th Cir. 1996) ............................................................................ 17, 18

*Copley Pharm., Inc.*, 158 F.R.D. 485 (D. Wyo. 1994)........................... 18

*Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520 (N.D. Ill. 1998) ........................................................... 12, 13

*Day v. NLO*, 851 F. Supp. 869 (S.D. Ohio 1994) ................................. 17

*Dore v. Kinear*, 79 Wn.2d 755 (1971)..................................................... 10

*Eriks v. Denver*, 118 Wn.2d 451 (1992) .......................................... passim

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996)............. 12, 13

*Hanson v. Hutt*, 83 Wn.2d 195 (1973).................................................. 10

*Harding v. Tambrands, Inc.*, 165 F.R.D. 623 (D. Kan.
  1996) ............................................................................................ 18

*In re Asbestos Sch. Litig*, 104 F.R.D. 422 (E.D. Pa. 1984),
  *modified sub nom. In re School Asbestos Litig.*, 789 F.2d
  996 (3d Cir.), *cert. denied*, 479 U.S. 852 (1986) .................... 12, 13, 14

*In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir.),
  *cert. denied* 516 U.S. 867 (1995) ...................................................... 25

*Jaffee v. United States*, 592 F.2d 712 (3d Cir. 1979) .............................. 12

*Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894 (7th Cir.
  1999) ............................................................................................ 22

*Johnson v. Moore*, 80 Wn.2d 531 (1972) ............................................. 8

*King v. Riveland*, 125 Wn.2d 500 (1994) ......................................... 8, 10

*Lemon v. International Union of Operating Engineers,
  Local 139*, 216 F.3d 577 (7th Cir. 2000) ............................................ 22

*Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364
  (Iowa, 1989) ................................................................................. 26

*Nelsen v. King County*, 895 F.2d 1248 (9th Cir. 1990) ........................... 8

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ............................. 21, 22

*Sarafin v. Sears, Roebuck & Co.*, 446 F. Supp. 611 (N.D.
  Ill. 1978) ...................................................................................... 14

*Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705 (D. Ariz.
  1993) ............................................................................................ 18

*Zimmer v. City of Seattle*, 19 Wn. App. 864 (1978) ............................... 10

**Statutes**

Washington Consumer Protection Act, RCW § 19.86.010,
  *et seq.* ........................................................................................... 3

Washington Product Liability Act, RCW § 7.72.030, *et seq.*
(2000) ............................................................................................. 3

**Other Authorities**

CR 23(b)(1) .......................................................................... 21

CR 23(b)(2) ................................................................... passim

CR 23(b)(3) ................................................................... passim

CR 23(c)(3) .......................................................................... 21

CR 23(d)(2) ............................................................................ 5

RAP 2.3(b) ...................................................................... 2, 7

**Articles**

Geoffery Crooks, *Washington Survey: Discretionary
Review of Trial Court Decisions Under the Washington
Rules of Appellate Jurisdiction*, 61 Wash. L. Rev. 1541
(1986) ............................................................................. 25

## I.    INTRODUCTION

Petitioners seek review of the trial court's unprecedented decision to certify pursuant to CR 23(b)(2) a class that seeks primarily monetary damages. This order evades the procedural protections and safeguards required in actions for damages by CR 23(b)(3), and is contrary to the single Washington case addressing similar requests for relief. The court's error is significant, and it dramatically affects the rights of defendants and absent class members, and the future of this action, in ways that cannot be adequately remedied by an appeal after trial.

## II.    IDENTITY OF PETITIONERS

Petitioners are W.R. Grace & Company-Conn, W.R. Grace & Company and William V. Culver (collectively, "Grace"), all of whom are defendants below.[1]

## III.    DECISION

Petitioners seek discretionary review of Spokane County Superior Court Judge Kathleen M. O'Connor's Order Granting Plaintiff's Motion for Class Certification Pursuant to CR 23(b)(2), dated December 19, 2000 (the "Certification Order"). A conformed copy of this Order is included in the accompanying Appendix.

---

[1] Defendant Sealed Air Corporation has also filed a separate Notice for Discretionary Review.

## IV.    ISSUES PRESENTED FOR REVIEW

1.    Can a plaintiff seeking to certify a class action under CR 23 avoid the stringent requirements of CR 23(b)(3) by characterizing his request for monetary relief as a request for an "injunction" requiring the defendants to pay the cost of rectifying damage allegedly caused by the defendants' product?

2.    Did the trial court err in granting Plaintiff's motion for class certification pursuant to CR 23(b)(2), where the primary relief sought by the plaintiff class is monetary in nature?

3.    Do these errors, individually or collectively, warrant review under RAP 2.3(b)?

## V.    STATEMENT OF THE CASE

### A.    Nature of the Claims Asserted Below

Plaintiff Marco Barbanti seeks relief from defendants Grace and Sealed Air Corporation to compensate him, and the class he seeks to represent, for damages allegedly caused by a product called Zonolite Attic Insulation ("ZAI"). ZAI was manufactured and sold by Grace prior to 1985. It is composed of vermiculite—a mineral that, when milled and thermally expanded, serves as a form of insulation that can easily be installed in attic spaces by pouring the popcorn-like pieces between attic joists or over other forms of previously installed attic insulation.

Plaintiff Barbanti alleges that ZAI "is not reasonably safe in its design and not reasonably safe in its manufacture in that it contains readily-loftable asbestos" and that ZAI "was not accompanied by appropriate or

adequate warnings." Appendix ("App.") p. 16-17 (Complaint, ¶ 7.1 and

¶ 7.3). These allegations purport to state a claim arising under the

Washington Product Liability Act ("WPLA"), RCW § 7.72.030, *et seq.*

(2000). Plaintiff further alleges that defendants issued "material

misrepresentations of fact regarding the safety of [ZAI]" which "had a

tendency to mislead, or capacity to mislead, a substantial portion of the

purchasing public." App. p. 18-19 (Complaint, ¶ 8.1 and ¶ 8.7). These

allegations purport to state a claim under the Washington Consumer

Protection Act ("CPA"), RCW § 19.86.010, *et seq.*

To remedy the harm allegedly caused by ZAI, Plaintiff seeks:

- **compensatory damages** (App. p. 2 (Complaint, ¶ 1.2) ("compensatory relief. . . to compensate property owners for harm suffered"); App. pp 16-17; 19 (Complaint, ¶¶ 7.1, 7.2, 7.3, 7.6, 8.10) ("costs of testing, costs of property remediation, costs of asbestos containment, costs of asbestos abatement, costs and hardship resulting from reasonable effort to avert harm . . ."; and App. p 22 (Complaint, PRAYER FOR RELIEF, ¶ 6) ("judgment in favor of the Class . . . in an amount to be determined at the time of trial to compensate Class members for damages suffered."));

- **punitive damages** (App. p. 22 (Complaint, PRAYER FOR RELIEF, ¶ 7) ("an award of punitive damages . . . to punish and deter like conduct by others")); and

- **attorneys' fees and costs** (App. p. 22 (Complaint, PRAYER FOR RELIEF, ¶ 8)).

- **equitable relief** in the form of four defendant-paid "funds" to provide monetary compensation to class members (App. p. 2 (Complaint ¶ 1.2), ("preliminary and final injunctive and equitable relief"); App. p. 21-22 (Complaint, PRAYER FOR RELIEF 4-5) (describing "funds"));

Plaintiff's purported equitable relief seeks to compel Grace to pay (a) the cost of identifying ZAI in buildings owned by class members, (b) the cost of issuing warnings and information to the class, (c) the cost of developing safety procedures and remediation techniques, and (d) the cost associated with reimbursing class members for sums expended to contain and control asbestos hazards allegedly associated with ZAI.  App. p. 21-22 (Complaint, PRAYER FOR RELIEF, ¶¶ 4-5).

Plaintiff is a commercial landlord.  He explained at his deposition that his claims in this case were motivated by his desire to recover the costs of abating the ZAI in his buildings.  App. p. 129-132 (Barbanti Dep. pp. 21:23-23:32; 56:3-15).  The amount of money required to pay for the abatement or removal of ZAI from the attics of all Washington homeowners would be monumental, considering the large number of homes believed to contain ZAI and the high cost of remediating even one structure.  *See* App. p. 144-145 (EPA Q&A sheet at 2, 3) (estimating approximately 940,000 homes nationwide contain ZAI, and stating that remediation of a single home "probably costs thousands of dollars.").  All told, the money the Plaintiff seeks to recover from defendants for the benefit of the class would be measured in the tens or even the hundreds of millions of dollars.

It is apparent from the preliminary discovery completed to date that the class members Mr. Barbanti seeks to represent expect monetary relief to cover the costs of abating, remediating, or removing ZAI present in their buildings.  For example:

- Class member Rand Hatch was renovating his property when he learned of this lawsuit from the media. He contracted to have ZAI removed and is looking to this lawsuit for reimbursement of the costs he has incurred. App. p. 134 (Hatch Dep. p. 91:14-19).

- Class members Rosemarie Thurman and Ernest Matthews (unlike class member Hatch) have undertaken no renovations or remodeling in their attics, and have no plans to do so. App. p. 142-144 (Thurman Dep. pp. 51:23-53:9); App. p. 138 (Matthews Dep. p. 48:9-16). If the lawsuit will not pay for the removal of ZAI from Mr. Matthews' walls, he will leave it alone. App. p. 136-137 (Matthews Dep. pp. 19:25-20:16). Ms. Thurman wants ZAI removed from her property and hopes that the litigation will result in Grace paying for such removal and related damage. App. p. 140-141 (Thurman Dep. pp. 10:18-11:9).

## B.    Procedural History

Shortly after serving the complaint, Plaintiff filed motions for class certification and for a preliminary injunction to mandate the immediate publication of an emergency warning notice regarding the alleged hazards of ZAI.[2]

---

[2] The trial court denied Plaintiff's motion for a preliminary injunction, finding that Plaintiff had not established the existence of an emergency or the need for a warning notice. App. p. 185-194 (Order for Dissemination of Class Notice Under CR 23(d)(2) and Denying Motion for Preliminary Injunction, entered January 29, 2001 ("Order Denying

While seeking certification of a class under both CR 23(b)(2) and CR 23(b)(3), Plaintiff acknowledged that:

> The complaint in this action and the classwide relief requested by plaintiffs include claims that can be characterized as *damages to property, consisting of the costs of property remediation.*

App. p. 57 (Plaintiff's Supplemental Submission in Support of Class Certification, p. 4) (emphasis added). He went on to argue, however, that a judgment ordering the defendants to pay such costs should not be viewed as an award of monetary damages. Rather, he argued, such a judgment should be viewed as an "equitable" remedy because the monies class members would recover would not be paid to them directly, but rather would pass to them through a "fund" that the Court would "supervise."

The trial court accepted this reasoning and certified the class under CR 23(b)(2), declining to analyze or to comment on whether Plaintiff could satisfy the strict standards for class certification under CR 23(b)(3). In declining to apply the standards of CR 23(b)(3), the trial court expressly stated that it "accept[ed] the plaintiffs' assertion that equitable relief is the primary purpose *although monetary damage claims would not be unexpected if plaintiffs prevail.*" App. p. 179-184 (Memorandum Decision (Motion #1), p. 5) (Emphasis added). The court expressed no reservation or concern about the probability that the mechanism of CR 23(b)(2) would be used in this case as a "stepping stone" to money damages.

---

Injunction")). The court granted Plaintiff's request that a class action notice be issued. *Id.*

Grace timely filed its Notice for Discretionary Review on January 17, 2001, seeking review of the Court's Order certifying this case as a class action for "injunctive relief" under CR 23(b)(2).

## VI.    ARGUMENT

### A.    Standard for Discretionary Review

Pursuant to RAP 2.3(b)(2), discretionary review is appropriate:

> If the superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act[.]

The trial court's unprecedented application of CR 23(b)(2) to certify a class action that plainly seeks to recover monetary relief constitutes probable error. This error substantially alters the status quo, depriving individual members of the class of their due process right to opt out of a class action that will control their individual right to recover monetary compensation. Moreover, the issuance of a class action notice that references the plaintiff's unproven allegations about ZAI will damage defendants *today* in ways that this Court could never remedy in a future appeal. Meaningful appellate review of this error would be utterly frustrated if it must await final disposition of the merits of this case at the conclusion of years of class action litigation.

### B.    The Court Erred in Its Unprecedented Application of CR 23(b)(2) to This Case, Where the Relief Sought Is Predominantly Monetary in Nature

Pursuant to CR 23, a class representative must, in addition to satisfying the criteria set forth in CR 23(a), satisfy at least one of the

subdivisions of CR 23(b). Plaintiff in this case invoked subdivision (b)(2) and subdivision (b)(3), which provide in pertinent part as follows:

> (2)    The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

> (3)    The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods . . .

Certification under CR 23(b)(2) "is limited to injunctive or declaratory relief." *Eriks v. Denver*, 118 Wn.2d 451, 466 (1992). Similarly, under the Rule's identical federal counterpart, subsection (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Nelsen v. King County*, 895 F.2d 1248, 1255 (9th Cir. 1990) (quoting Advisory Committee Notes to Fed. R. Civ. P. 23).[3]

Plaintiff's Complaint, his testimony and the testimony of absent class members offered by Plaintiff in support of class certification all confirm that the overriding goal of this litigation is to recover an extremely large sum of money to pay for the remediation and/or removal of ZAI from

---

[3] Washington's CR 23 is an exact counterpart of Fed. R. Civ. P. 23. *Johnson v. Moore*, 80 Wn.2d 531, 532 (1972). Because there are few Washington cases construing CR 23 and the federal rule is identical, reported Washington decisions frequently base their analysis in whole or in part on federal cases. *Brown v. Brown*, 6 Wn. App. 249, 251 (1971).

the buildings of Plaintiff and tens of thousands of class members. Indeed, the testimony of absent class member Mr. Hatch—who has already removed ZAI from his home—demonstrates that some class members require *only* monetary compensation. In order to avoid the more stringent requirements for certifying a class seeking monetary relief under CR 23(b)(3),[4] Plaintiff simply re-labeled his claim for millions of dollars in remediation costs as a request for an "equitable" remedy. Under the theory the Plaintiff advanced below, an award of money damages could be transformed into an award of "equitable" relief simply by providing that the defendants are to pay the damages awarded into a "fund" that will be "supervised" by the Court, rather than having that same sum paid directly to class members by the defendants. The trial court's acceptance of this theory elevates form over substance. The Plaintiff's choice of nomenclature does not change the nature of the remedy sought; it merely inserts the trial judge as a nominal "middle man" in the damages payment process. This, Petitioners respectfully submit, is a gross abuse of the CR 23(b)(2) certification mechanism that demands swift and decisive appellate review. *Arch v. American Tobacco Co.*, 175 F.R.D. 469, 484 (E.D. Pa. 1997) ("Plaintiffs cannot transform a legal claim into an equitable one merely by using a fund as a repository for money damages").

---

[4] Courts, including the United States Supreme Court, have long recognized that the predominance of individual issues in products liability litigation like this case generally renders such cases unsuitable for class treatment under Rule 23(b)(3). *See, e.g., Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997).

As explained below, use of CR 23(b)(2) to certify a class action for monetary relief is (1) unprecedented under Washington law, (2) contrary to federal court decisions interpreting the scope and application of Rule 23(b)(2) of the Federal Rules of Civil Procedure, and (3) violative of due process.

1.    **Certification of a CR 23(b)(2) class under the circumstances presented here is unprecedented under Washington law.**

No reported Washington decision has ever permitted claims seeking relief that is, in every meaningful sense, monetary in nature to be certified for classwide adjudication under CR 23(b)(2). Indeed, all published Washington decisions upholding the certification of class actions under CR 23(b)(2) have involved classic injunctive or declaratory relief, such as declaring statutes unconstitutional, enjoining conduct breaching a contract, and reversing improper assessments.[5]

In contrast, the sole reported Washington appellate decision involving requests for relief similar to that which the plaintiff is seeking here expressly holds that certification under CR 23(b)(2) is *not* appropriate. *Eriks v. Denver*, 118 Wn.2d at 466. In *Eriks*, the Washington Supreme

_____

[5] *See, e.g., Hanson v. Hutt*, 83 Wn.2d 195 (1973) ((b)(2) class sought declaration of unconstitutionality of statute); *Dore v. Kinear*, 79 Wn.2d 755 (1971) ("classic class action" sought to restrain implementation of improper assessments); *King v. Riveland*, 125 Wn.2d 500 (1994) ((b)(2) class action to enjoin release of confidential information in breach of contract); *Zimmer v. City of Seattle*, 19 Wn. App. 864 (1978) ((b)(2) class certified only after named plaintiff restricted claim to injunctive and declaratory relief challenging statute as unconstitutionally vague).

Court rejected plaintiffs' assertion that their CR 23(b)(3) class action against an attorney for conflict of interest should have been recertified under CR 23(b)(2) because it sought "disgorgement," which is an equitable remedy. The Court rejected the plaintiff's claim that the mere assertion of a claim for declaratory remedies could transform the case into one suitable for certification under CR 23(b)(2):

> The [trial] court did grant declaratory relief, in the sense that it declared [defendant's] actions violated the [Code of Professional Responsibility]. However, the court's order of disgorgement is monetary relief. *Where the declaration merely forms the basis for monetary relief, a CR 23(b)(2) action is not appropriate.*

118 Wn.2d at 466 (emphasis added).

Notably, the trial court's decision to certify this case as a class action does not discuss, distinguish or even mention the Washington Supreme Court's decision in *Eriks*—the only published decision in the State speaking directly to the question of whether class actions for monetary relief can be properly certified under CR 23(b)(2).

> **2.    The refusal of Washington courts to apply CR 23(b)(2) to class actions for monetary relief is supported by analogous decisions in the federal courts.**

The holding of the Washington Supreme Court in *Eriks* is consistent with the results reached in numerous federal district courts and circuit courts of appeal which have faced similar questions. In the most widely cited such case, *In re Asbestos Sch. Litig*, 104 F.R.D. 422, 438 (E.D. Pa. 1984), *modified sub nom. In re School Asbestos Litig.*, 789 F.2d

996 (3d Cir.), *cert. denied*, 479 U.S. 852 (1986), the plaintiffs attempted to characterize as "equitable" their request that the defendant be ordered to fund the cost of a variety of expensive asbestos abatement programs. In that case, the plaintiffs sought: (1) a direct abatement program, to include testing, inspection, containment, and removal of asbestos; (2) monitoring and maintenance for structures where removal had already been undertaken; and (3) medical monitoring for individuals potentially exposed to asbestos. 104 F.R.D. at 438. The district court easily recognized these demands as an "attempt to sidestep" the rule that Rule 23(b)(2) certification should *not* be granted where the relief sought is primarily pecuniary, "by casting their prayer for relief as restitution rather than money damages." *Id.* The district court denied (b)(2) class certification, stating that "despite the ingenuity of plaintiffs' claims for equitable remedies, this case remains at bottom, one for legal damages." *Id. See also Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir. 1979) ("A plaintiff cannot transform a claim for damages into an equitable action simply by asking for an injunction that orders the payment of money"), *cert. denied*, 441 U.S. 961 (1979); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 657 (C.D. Cal. 1996) (denying (b)(2) certification in action seeking medical monitoring because "plaintiffs' main concern is not to discover whether [defendant's products] are defective . . . but to recover from defendant for selling these defective [products]"); *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 529 (N.D. Ill. 1998) (rejecting (b)(2) certification because plaintiffs' request for funding of treatment "alters the nature of the relief

requested making plaintiff's claims no different than traditional money damages claims").

Plaintiff in this case makes a similarly transparent attempt to sidestep the requirements of CR 23(b)(2), asking for relief that is strikingly akin to that sought in *School Asbestos*, including: (1) a "remediation and containment program and fund," including training and funding for removal of ZAI; (2) "development of specialized operations and maintenance," including testing and monitoring of ZAI; and (3) a "notification program" for those potentially exposed to ZAI. App. pp. 21-22 (Complaint, PRAYER FOR RELIEF, ¶¶ 3-5). As in *School Asbestos*, a thorough examination of Plaintiff's demands demonstrates that *money*, not equity, is the focus of the action and that *money* is the only remedy that will make class members "whole" for their alleged damages. Certification under CR 23(b)(2) is therefore inappropriate.

The *Arch, Haley* and *Dhamer* courts all emphasized that an action seeking to impose on the defendant the obligation to pay for medical treatment must be seen as a claim for monetary damages. In this case, the Plaintiff's demand that the defendants bear the cost of inspecting, remediating, and/or removing ZAI present in their attics must likewise be recognized as a claim for money damages. Not only would Plaintiff require that defendants pay for warnings about ZAI, but also that they pay for any "assistance necessary to ensure a safe environment" in structures insulated with ZAI and any "assistance necessary to contain and control asbestos" in ZAI. App. p. 22 (Complaint, PRAYER FOR RELIEF, ¶ 5). Just as the funding of medical treatment in *Arch, Haley* and *Dhamer* is akin to

personal injury damages, the funding of household remediation efforts, such as that in *School Asbestos*, is akin to property damages. Plaintiff is not requesting funding merely to investigate whether a potential hazard exists. He is seeking money to pay for the *repair* of property damage that is already alleged to have occurred. This is plainly a claim for legal damages in every meaningful sense. Under such circumstances, certification of this case as a class action under CR 23(b)(2) was plainly erroneous.

Attempting to shoehorn a request for class certification into subdivision (b)(2), by characterizing the relief sought as "equitable," has been tried unsuccessfully in numerous federal court cases. *Sarafin v. Sears, Roebuck & Co.*, 446 F. Supp. 611 (N.D. Ill. 1978), is directly on point. After examining the policies and purposes underlying subdivision (b)(2), the court in *Sarafin* denied class certification for reasons which apply equally in this case. In *Sarafin*, a consumer brought an action against Sears alleging that Sears had violated the Truth in Lending Act by failing to disclose the annual percentage rate of finance charges on its monthly billing statements. The plaintiff's original complaint sought monetary damages, as well as class certification under Fed. R. Civ. P. 23(b)(3), for Illinois residents who had obtained credit under Sears' financing plan. *Id.* at 613. In order to avoid the burdens of subdivision (b)(3), the plaintiff eliminated her claim for monetary damages and recast her request for class certification under subdivision (b)(2). *Id.* Her amended complaint requested relief in the form of a declaratory judgment that Sears' past billing practices had resulted in repeated statutory

violations, *id.* at 614, as well as injunctive relief requiring Sears to notify

class members of their right to present individual damages claims under the

Act, and restraining Sears from future violations of the Act. *Id.* at 613.

The court recognized the advantages which inure solely to the benefit of

class plaintiffs in a subdivision (b)(2) class action and the reasons why class

representatives may attempt to disguise an action for money damages as an

action for declaratory or injunctive relief.

> It settles the substantive liability issue in one judicial
> proceeding.  It shifts the enormous costs of
> notification of class members from plaintiff to
> [defendant].  And it leaves the vagaries of individual
> damage claims to separate tribunals.  In short, it
> gives [the plaintiff] the benefits of a class action
> without the bother.

*Id.* at 614.  However, the court held that under the circumstances

presented, class certification under subdivision (b)(2) would be

inappropriate.  The court reasoned as follows:

> The use of a declaratory judgment in a class action
> where the real goal is a damage award undermines
> the purpose of Rule 23(b)(2).  This subsection was
> not intended to "extend to cases in which the
> appropriate final relief relates exclusively or
> predominantly to money damages." 1966 Advisory
> Committee Note to Rule 23.  28 U.S.C.A. Rule 23
> at 298.  Rather, the Rule by its terms speaks to cases
> where, on behalf of the class as a whole, "final
> injunctive relief or *corresponding* declaratory relief"
> is appropriate.  According to the Committee,
> "declaratory relief corresponds to injunctive relief
> when as a practical matter it affords injunctive relief
> or serves as a basis for later injunctive relief." *Id.* at
> 298.  In other words, the declaratory judgment
> should perform the same function as an injunction.

> *It should not lay the basis for a later damage*
> *award.*

*Id.* at 615 (second emphasis supplied).

The request for "equitable relief" in the form of *money* in this case was a transparent attempt to avoid the stringent criteria of subdivision (b)(3). The trial court plainly erred by certifying this case as a class action without assessing whether the plaintiff's claims for large sums of money satisfy the subdivision (b)(3) requirements.

> 3. **Even if the "funds" the class representative is**
> **seeking could be deemed to be a form of**
> **equitable relief, money damages are still the**
> **predominant form of relief sought in this action.**

Plaintiff also argued below that public policy concerns justify the creation of Court-supervised funds because such funds force plaintiffs to spend money only where it will bring health and safety benefits. Plaintiff's Reply in Support of Motion for Class Certification; App. p. 166-167. But even if one assumes that Court supervision is a favored means of distributing monetary relief to members of a class, it does not transform the requested monetary payments into equitable relief. Moreover, in this case Plaintiff asks not only for Court-supervised funds to pay for repairs, but also for additional individual compensatory and punitive damages. App. p. 22 (Complaint, PRAYER FOR RELIEF ¶ 6-7).

In the trial court, plaintiff relied heavily upon cases addressing medical monitoring remedies to argue that the relief sought is purely equitable. This reliance was misplaced. This case is vastly different from a medical monitoring case, which seeks a court-supervised fund from which

class members would draw on an ongoing basis to monitor their health, which has not yet been adversely affected, into the unknown future.  In such cases, the medical tests that are to be performed are universally recognized as the appropriate tests for determining whether an individual is developing the illness attributable to the hazardous substance or drug (e.g., chest x-ray and pulmonary function test for asbestos exposure and echocardiogram for diet drug users).  Here, plaintiffs complain of alleged property damage that they contend occurred in the past (the Complaint repeatedly alleges "contamination" of real property with asbestos), and they seek compensation to remedy that alleged property damage.  The appropriate response to the presence of the ZAI will vary depending on its installation and plaintiff's use of the attic.  However, even if the Court were persuaded that some of the relief plaintiff seeks (e.g., notification or identification) could be analogous to the medical monitoring claims which some courts have held to be equitable in nature, plaintiff's request for compensatory and punitive damages, together with the "remediation and containment program and fund" out of which property owners would receive the costs of removal and containment, far exceeds a request for medical monitoring alone.  *See Castano v. American Tobacco Co.*, 160 F.R.D. 544, 551-52 (E.D. La. 1995), (distinguishing *Day v. NLO*, 851 F. Supp. 869, 885 (S.D. Ohio 1994), cited by plaintiff in support of (b)(2) certification, on the grounds that in *Day* plaintiffs sought only court-supervised medical monitoring program, whereas the *Castano* plaintiffs sought far more than mere medical monitoring), *rev'd on other grounds*, 84 F.3d 734 (5th Cir. 1996); cf. *Yslava v. Hughes Aircraft Co.*, 845 F.

Supp. 705 (D. Ariz. 1993) (sole remedy sought was medical monitoring). Thus, even if some portion of plaintiff's requested relief could be deemed equitable, this suit is nonetheless one predominantly for money damages.

Indeed, where monetary relief has been demanded in conjunction with medical monitoring funds, federal courts have held that money damages predominate and render certification under Rule 23(b)(2) inappropriate. *See, e.g., Harding v. Tambrands, Inc.*, 165 F.R.D. 623 (D. Kan. 1996) (denying (b)(2) certification where defendant requested a medical monitoring fund along with actual and punitive damages); *Castano*, 160 F.R.D. at 552 (denying (b)(2) certification "because the medical-monitoring program sought by plaintiffs is but one type of relief sought among many" including restitution for funds paid and punitive damages as well as admissions of fault); *Arch*, 175 F.R.D. at 481-82 (denying (b)(2) certification where, in addition to medical monitoring, plaintiffs sought treatment for nicotine addiction, research on addiction causes and treatment, educational campaigns and smoking cessation programs); *In re Copley Pharm., Inc.*, 158 F.R.D. 485, 490 (D. Wyo. 1994) (denying (b)(2) certification where plaintiffs sought to compel defendant to perform medical monitoring and epidemiological studies). Merely asking for a Court-supervised fund does not justify (b)(2) certification. Here, as in *Castano*, any equity-based relief is "but one type of relief sought among many," and thus cannot predominate over the demands for money damages. 160 F.R.D. at 552.

Furthermore, a recent tide of federal decisions holds that where both equitable relief and damages are sought, certification under

Rule 23(b)(2) is improper unless the monetary relief is merely "incidental" to the injunctive or declaratory remedies. *See, e.g. Allison* v. *Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998). Damages are "incidental" only if they "flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." 151 F.3d at 115. Three factors further define "incidental" damages: (1) class members must be automatically entitled to them by virtue of the injunctive or declaratory relief; (2) damages must be computable by "objective standards," and not dependent upon "the intangible, subjective differences of each class member's circumstances"; and (3) no additional hearings must be necessary to ascertain damages. *Id.*

Here, the class members' compensatory damages and their monetary recoveries from the requested "funds" are far from "incidental." Each individual homeowner's recovery would depend upon specific findings of fact in individual cases, requiring individual examination of a wide variety of building-by-building issues that, at a minimum, include: (a) whether ZAI (rather than another brand) has been installed; (b) whether the areas containing ZAI are accessible, and if so, how they are utilized, if at all; (c) whether there is outside ventilation of those areas; (d) whether the areas containing ZAI may be sealed off; and (e) how much the remediation or removal of ZAI from the home will cost. *See* App. p. 132 (Barbanti dep., p. 56) (plaintiff's testimony regarding individual determinations, including expert analysis, that would be required to recover remediation costs); App. pp. 148-149 (Price Aff. pp. 14, 21) (discussing EPA's conclusion that asbestos management must be determined on a site-

specific basis); App. pp. 151-152 (Corn Aff. ¶¶ 14, 22 (listing factors

required to determine whether a hazard exists, and widely varying presence

of such factors noted during inspection of 7 different Spokane-area

homes). Such prerequisites inherently "depend on . . . subjective

differences of each class member's circumstances" and "require additional

hearings to resolve the disparate merits of each individual's case." *Allison*,

151 F.3d at 415. Far from being "incidental" under *Allison*, money

damages sought in this case overwhelm any nominal equitable remedies.[6]

> **4.    The certification of claims for monetary relief
> under CR 23(b)(2) implicates due process
> concerns for absent class members and for the
> class action defendants.**

The decisions in *Allison* and the many cases following it are based

upon fundamental differences between equitable relief, which is generally

cohesive and uniform, and damages, for which due process normally

requires individualized determinations.

> The (b)(2) class action . . . was intended to focus on
> cases where broad, class-wide injunctive or
> declaratory relief is necessary. Finally, the (b)(3)
> class action was intended to dispose of all other
> cases in which a class action would be "convenient

---

[6] Indeed, even in a case seeking solely medical monitoring relief, the predominance of individual issues can destroy class cohesiveness such that (b)(2) certification is inappropriate. For example, in *Barnes v. American Tobacco Co.*, 176 F.R.D. 479, 498 (E.D. Pa. 1997), *aff'd* 161 F.3d 127 (3d Cir. 1998), *cert. denied* 526 U.S. 1114 (1999), the court decertified a (b)(2) class of smokers seeking solely medical monitoring, because the action implicated "far too many individual issues to proceed on a class-wide basis."

and desirable," including those involving large-scale, complex litigation for money damages.

151 F.3d at 412-13 (citations omitted).  The presence of claims for individual damages undermines the cohesiveness that must exist to make a (b)(2) class appropriate:

> as claims for individually based money damages begin to predominate, the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect individual rights of class members increases, thereby making class certification under (b)(2) less appropriate.

151 F.3d at 413.

Among the "enhanced procedural safeguards" necessary to protect individual rights in damages cases are notice and the right to opt out, which are required only for (b)(3) classes.  *See* CR 23(c)(3).  *See also Barnes v. American Tobacco Co.*, 161 F.3d 127, 142-43 (3d Cir. 1998), *cert. denied* 526 U.S. 1114 (1999) (explaining that (b)(2) classes may require even more cohesiveness than (b)(3) classes "because in a (b)(2) action, unnamed members are bound by the action without the opportunity to opt out."). These rights, and particularly the right to opt out, are essential to preserve due process and the right to jury trial in damages cases.[7]  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).  In *Ortiz*, the Supreme Court vacated a mandatory settlement class under Rule 23(b)(1) in a mass tort case, suggesting that the lack of any opportunity to opt out of the class

_____

[7] A notice alone, without a corresponding right to opt out, would not cure the defect in a CR 23(b)(2) class where the class seeks to recover money.

would implicate absent class members' Fifth Amendment due process rights and Seventh Amendment rights to jury trial. 527 U.S. at 846-47. *See also Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894 (7th Cir. 1999) (vacating class certification under Rule 23(b)(2), in part because *Ortiz* requires notice and opt-out to comply with due process "in actions for money damages"); *Lemon v. International Union of Operating Engineers, Local 139*, 216 F.3d 577, 580 (7th Cir. 2000) (vacating (b)(2) certification of single-state class due to predominance of damages issues, in part because *Ortiz* requires notice and opt-out "as a matter of due process").

The denial of opt-out rights through improper certification of damages cases under CR 23(b)(2) prejudices not only absent class members, but also defendants. As the court observed in *Jefferson*,

> Although class members who want control of their own litigation are vitally concerned about the choice, so too are defendants—for the final resolution of a suit that proceeds to judgment (or settlement) under Rule 23(b)(2) may be collaterally attacked by class members who contend that they should have been notified and allowed to proceed independently.

195 F.3d at 896-87. Thus, even if Grace successfully defends this action, and is found not liable for the costs of remediation the class is seeking, Grace faces the prospect of individual class members coming forward to re-litigate their damage claims individually. There is a risk that Grace could not bar such actions by individuals who were denied the opportunity to opt-out of the plaintiff class because it was improperly certified under CR 23(b)(2) in violation of their due process rights. In *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386 (9th Cir. 1992), *cert. dismissed*, 511 U.S. 117

(1994), defendânt faced a similar problem. Notwithstanding the settlement of a prior Rule 23(b)(2) class action, the *Brown* plaintiffs sought to bring claims for injunctive relief and damages. The court held that while plaintiff's injunctive claims could be barred by res judicata, their damages claims could *not* be precluded because plaintiffs had been denied the right to opt out of the prior class action:

> According to [Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985)], minimal due process requires that "an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." Because Brown had no opportunity to opt out of the [prior] litigation, we hold there would be a violation of due process if Brown's damage claims were held barred by res judicata.

982 F.2d at 392. Accordingly, the trial court's certification of this case as a mandatory class action under CR 23(b)(2) exposes Grace to the potential that final judgment in this case will not conclusively resolve the issues in dispute, but will instead spawn a plethora of individual actions for damages by absent class members who were improperly denied the opportunity to opt out. This is precisely the kind of outcome CR 23 was intended to prevent.

## C.    Certification of the Class Substantially Alters the Status Quo

Not only was the trial court's class certification order in error, but this error significantly alters the status quo. Certification of a class has long been recognized as posing a "unique situation," where immediate

review is "an appropriate remedy." *Brown v. Brown*, 6 Wn. App. 249, 252-54.[8]  Such review is especially important here.

First, the Certification Order altered the status quo by depriving class members of the ability to control their own claims for monetary relief for any damage to their property caused by ZAI.  Such class members cannot opt out of the class or proceed with their claims, if any, independent of the class representative and class counsel.  Their prerogative to proceed with claims for monetary relief independent of the class, which the terms of CR 23(b)(3) were intended to safeguard, has been summarily taken away— without their knowledge or their consent.  This has serious implications not only for the class members themselves, but for the defendants who may someday wish to bar future damage claims brought by absent class members who are unsatisfied with the outcome of the class representative's claim for monetary relief.  As explained above, at pp 20-23, defendants may not be able estop such absent class members from collaterally attacking the final judgment in this class action if they were improperly deprived of their due process right to opt out.

---

[8] *Brown* was decided prior to the enactment of the RAP, and found mandamus to be proper in the absence of existing rights to interlocutory appeal.  As the discretionary review system under RAP 2.3 has now superceded the writ process, discretionary review would be the modern-day counterpart to the mandamus granted in *Brown*.  It is also noteworthy that, in recognition of the significant effect that class certification decisions may have on a case, the Federal Rules of Civil Procedure were recently amended to provide specifically for discretionary interlocutory review of class certification decisions.  Fed. R. Civ. P. 23(f).

Second, in connection with the certification of a class under CR 23(b)(2), the trial court has ordered that a class action notice be published in newspapers and magazines throughout the State.[9]  The practical effect of widely disseminating Plaintiff's unproven allegations about "health hazards" associated with trace levels of asbestos found in some samples of ZAI would be devastating to Grace.  This bell cannot be "unrung" if, after the lengthy process of discovery and trial, a subsequent appeal determines that certification was in error.  *See* Geoffery Crooks, *Washington Survey: Discretionary Review of Trial Court Decisions Under the Washington Rules of Appellate Jurisdiction*, 61 Wash. L. Rev. 1541, 1551 (1986) ("Another potentially critical consideration may be the adequacy of an appeal to remedy the effects of the claimed pretrial error").[10]

Finally, certification of the class will substantially increase the complexity of trial, in light of the multiple individual issues requiring

---

[9] A motion to stay the issuance of the notice until this Court has had an opportunity to rule is currently pending in the trial court.  However, this short stay would be effective only until this Court's disposition of this discretionary review.

[10] Another effect of an erroneous class certification order, which cannot be remedied by a later appeal, is the coercive impact noted by Judge Posner in *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1298-1300 (7th Cir.), *cert. denied*, 516 U.S. 867 (1995).  The court found that creation of "a small probability of an immense judgment" that resulted from an improper certification could induce unfair "blackmail settlements" that would evade appellate review.  51 F.3d at 1298.  Based in part upon this factor, the court granted mandamus to review, and to reverse, class certification.

resolution. Certification of the class renders trial exponentially more

complicated and lengthy--all to no avail if the certification decision is

ultimately reversed after trial. As the Iowa Supreme Court has noted:

> It would be financially burdensome for the plaintiff
> and a waste of judicial resources to allow a class
> action to proceed without a review of the parties
> and then, at the end of the litigation, find that the
> certification ruling was in error.
>
> . . . The certification ruling generally will have little
> relationship to the merits of the lawsuit. Logically,
> it would make better sense to allow an immediate
> appeal of this ruling, which affects the number of
> parties involved, rather than the merits of the
> lawsuit.

*Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364, 366-67 (Iowa,

1989) (citations omitted). These policy considerations apply with great

force here, where the magnitude of the trial court's error renders it likely

that a post-trial appeal would result in reversal of the class certification

order.

D.    **This Case Presents Important Issues Regarding the
      Limits of Appropriate Certification Under CR 23(b)(2)
      that Have Not Been Addressed by Washington's
      Appellate Courts Since the Washington Supreme Court
      decided *Eriks v. Denver***

Finally, the unprecedented nature of the trial courts' expansion of

CR 23(b)(2) renders immediate interlocutory review necessary in order to

clarify an important issue of Washington class action law.

As discussed above, the application of CR 23(b)(2) in an action for

predominantly monetary relief is unprecedented under Washington law.

No reported Washington decision has extended a CR 23(b)(2) class so far

into the realm of monetary recovery. To the contrary, the only case to address this issue holds that a CR 23(b)(2) class action is "not appropriate" where, as here, declaratory or injunctive relief "merely forms the basis for monetary relief." *Eriks v. Denver*, 118 Wn.2d at 466. The Certification Order below represents a significant departure from the Washington Supreme Court's holding in *Eriks*. Such a dramatic departure from existing class action jurisprudence in this State demands immediate appellate scrutiny.

## VII.    CONCLUSION

The certification of a class action under CR 23(b)(2), where the plaintiff class seeks to recover monetary relief measured in the tens or even hundreds of millions of dollars, is unprecedented in this State. The Class Certification Order below sidesteps the strict requirements that are intended to apply to *all* class actions for monetary relief under CR 23(b)(3). These requirements are necessary to safeguard the due process rights of absent class members and to ensure that class action judgments are not vulnerable to collateral attack by absent class members who have been improperly denied the opportunity to "opt-out." This error is profound, and it dramatically and irrevocably harms the rights of Grace as well as absent class members. This Court should accept review to correct this error and to confirm the continuing vitality of the Washington Supreme Court's holding in *Eriks v. Denver*.

DATED: February 20, 2001.

PERKINS COIE LLP

By _____
Rocco N. Treppiedi, WSBA #9137
V. L. Woolston, Jr., WSBA #9453
Gretchen F. Baumgardner, WSBA #17966
Attorneys for Petitioners W.R. Grace &
Company-Conn, W.R. Grace & Company and
William V. Culver

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on February 20, 2001, a true and correct copy of the foregoing MOTION FOR DISCRETIONARY REVIEW was delivered to the following counsel:

Darrell Scott
Lukins & Annis LLP
1600 Washington Trust Financial Ctr.
717 West Sprague Avenue
Spokane, WA 99204

Donald Stone
Paine, Hamblen, Coffin, Brooke
 & Miller, LLP
1200 Washington Trust Financial Ctr.
717 West Sprague Avenue
Spokane, WA 99204

Renee R. Stewart