IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | | Re: Docket Nos. 18326 and 18327 |
| | | Hearing Date: April 22, 2008 at 11:30 a.m. |

# DEBTORS' BRIEF IN OPPOSITION TO ZAI CLAIMANTS' MOTION FOR AN ORDER TO SHOW CAUSE WHY COURT-APPOINTED EXPERT WITNESS SHOULD NOT BE DESIGNATED

No useful purpose will be served by appointing an expert as requested by the ZAI Claimants.[1] Indeed, what the ZAI Claimants' expert motion does, along with their related motions to certify a class, to re-litigate the appealability of the ZAI Science Opinion, and to lift the automatic stay and return to the tort system, is make transparent that the ZAI Claimants want to take steps backward in these cases as opposed to taking steps forward that will provide efficient and effective resolution of the ZAI claims.

Appointing an expert will only prolong an irrelevant controversy -- how many homes may still have ZAI. The controversy is irrelevant because the only material issue is the very different one of how many people will actually assert ZAI claims. The irrelevant controversy will be prolonged because any expert analysis will be based upon indirect evidence and will be inherently speculative.

None of this is necessary. A direct answer to the right question is readily at hand: Find out how many claimants there are by requiring that they come forward. No need for experts,

---

[1] ZAI Claimants' Motion For Order to Show Cause Why Court Appointed Expert Witness Should Not Be Designated ("ZAI Motion") [Dkt. No. 18326] and ZAI Claimants' Memorandum in Support of Motion for Order to Show Cause Why Expert Witness Should Not Be Appointed ("ZAI Brief") [Dkt. No. 18327].

analyses, samples, and extrapolation. No need for new experts and the associated expense and delay.

## Argument

A. **An Expert On The Number of Homes With ZAI Will Not Move The ZAI Matter Forward.**

While it is within the Court's discretion to appoint an expert pursuant to Federal Rule of Evidence 706, the "enlistment of court-appointed expert assistance under Rule 706 is not commonplace." *In re Joint Eastern and Southern Districts Asbestos Litig.*, 830 F. Supp. 686, 693 (E.D.N.Y. & S.D.N.Y. 1993) (citing Fed. R. Evid. 706, Advisory Comm. Note -- "experience indicates that actual appointment is a relatively infrequent occurrence."); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 308 (3d Cir. 2005) (appointment of expert is within the trial court's discretion). In addition, the appointment of a "neutral" or "independent" expert pursuant to Rule 706 is solely intended to aid the trial court under unique circumstances and "[r]easonably construed, it does not contemplate the appointment of, and compensation for, an expert to aid one of the parties." *See Trimble v. City of Phoenix Police Dept.*, No. 04-0745, 2006 WL 778697 at *2 (D. Ariz. March 23, 2006) (citing 4 *Weinstein's Federal Evidence* § 706 App. (2nd Ed. 2006)).

Here, the appointment of an expert as requested by the ZAI Claimants makes no sense, and will not aid this Court in moving the ZAI matters forward. ZAI Claimants argue that an expert is needed to go through the Debtors' records to analyze the number of homes that "were fitted with ZAI, the time periods during which ZAI was purchased, the volumes typically installed, and even the geographical distribution of ZAI homes." ZAI Brief at 1. However, information regarding the number of homes and geographical distribution of ZAI is irrelevant.

What is relevant is the number of *claims* that exist on account of ZAI, which figure may vary greatly from the number of *homes* containing ZAI, particularly given the Court's conclusions in the ZAI Science Trial that the scientific evidence did not demonstrate that the presence of ZAI in the home creates an unreasonable risk of harm.[2]

The Court need only look to the traditional PD claims in this case to know that it is not the number of buildings that are relevant, rather it is the number of claims. In April 2002, the Court set a bar date for PD claims.[3] Pursuant to the bar date, over 4,000 PD claims were filed. Of those claims, approximately 3000 were filed by one law firm, Speights & Runyan ("S & R"). A review of those claims revealed that they were filed primarily for buildings, not claimants. Grace objected to all of the PD claims filed and over half of the S & R claims were expunged or withdrawn for lack of authority to file such claims. Thereafter, hundreds more claims were expunged for various substantive and procedural reasons. In addition, more claims were removed by stipulation.

Today, S & R has approximately 160 claims remaining, all of which are subject to pending dispositive motions. Likewise, only 33 non S & R claims remain to be resolved, most of which are also subject to pending dispositive motions. Only a PD bar date, not an expert on the number of buildings with Grace asbestos-containing product, served the useful purpose of bringing the alleged PD claims before the Court and having them adjudicated and resolved. S & R's attempt to proceed with claims for buildings failed as they did not constitute claimants. Only a small fraction of the buildings allegedly identified by S & R resulted in claimants who in fact sought to pursue claims. In addition, S & R's attempt to pursue claims for buildings did

---

[2] Memorandum Opinion, dated 12/14/06 [Dkt. No. 14014] at 1.

[3] 4/22/02 Order [Dkt. No. 1963].

nothing but slow down the PD claims process and clog the Court with unnecessary and unsubstantiated claims.

In the ZAI context, focusing on the number of homes with ZAI as opposed to the actual ZAI claims made against the estate will have the same practical effect as what occurred with S & R. In addition, reviewing the Debtors' sales records relating to ZAI may provide as little value as that for the traditional PD claims. And this Court already indicated its skepticism regarding the value of sales records in the S & R context: "... I'm not going to [ ] admit the wholes group of exhibits [of shipping invoices and billing records] and try to figure out whether just because Grace sent a shipment of product to a distributor, that means that it ended up in a particular building, because I think that's a leap of faith."[4] The same is true here -- employing experts to review sales records would have little bearing on where ZAI is currently located, and less bearing on who may hold a claim.

**B.     The Bar Date Notice Program and Bar Date Notices Will Provide Potential ZAI Claimants With Due Process.**

The ZAI Claimants argue that an expert is needed to review records concerning where ZAI is located and conduct homeowner surveys because "[m]ost homeowners would not recognize ZAI if they encountered it in their home." ZAI Brief at 3. ZAI Claimants rely on a survey conducted in Washington State in 2000 to support this proposition. *Id.* However, this assertion simply is not true. First, that survey was conducted over 8 years ago in the context of whether emergency notice needed to be sent out regarding the dangers of ZAI. It was not conducted to determine the potential number of claims against the Debtors on account of ZAI. The number of claims is the *only* relevant issue in a bankruptcy proceeding.

---

[4] 7/5/07 Hrg. Tr. at 81 [Dkt. No. 16422]

Furthermore, the Debtors have developed a comprehensive notice program that is designed to put putative holders of ZAI claims on notice of whether they have claims and will be implemented in connection with the bar date if the Court grants the relief requested by the Debtors in their bar date motion (the "Bar Date Motion").[5] In fact, the bar date notices contain pictures of ZAI,[6] and the definition of ZAI Claim in the Bar Date Motion and accompanying materials gives a physical description of ZAI:

> Zonolite Attic Insulation is a loose-fill, non-roll vermiculite home attic insulation, which may contain naturally occurring asbestos. It was sold from the 1920/19340s to 1984. Zonolite may have a glittery granular appearance. The granules are shaped like a small nugget and expanded like an accordion and may have a silvery, gold translucent or brownish case. After years in the attic, however, the granules may darken to black or gray.[7]

All a homeowner needs to do is see if they have something that fits the pictures and description and then file a claim. Furthermore, as described in the Debtors' Bar Date Motion, the proposed notice program is a national program with a reach of over 90%, involving television ads, print publications, the Internet, and direct mail to known claimants.[8] The notice program is reasonably calculated to reach putative ZAI claimants,[9] and the description of ZAI and pictures of ZAI should readily permit a putative claimant to identify ZAI.

---

[5] Debtors' Motion For an Order (A) Establishing a Proof of Claim Bar Date For Zonolite Attic Insulation Claims, and (B) Approving the Related Proof of Claim Form, Bar Date Notices, and Notice Program, dated March 18, 2008 [Dkt. No. 18328].

[6] *Id.* at Exhibit B.

[7] *Id.* at 4, n. 1.

[8] *Id.* at 14; *see also* Bar Date Motion Exhibit C at 17 and Exhibit D at ¶¶ 10, 13.

[9] *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice must be "reasonably calculated . . . to apprise interested parties of the pendency of the action.").

6

**C.    ZAI Claimants Should Be Subject To The Same Standards As All Other Claimants In These Cases.**

Bar dates were set for most other significant claim types in these cases, and that process has proven to be an effective and efficient tool for identifying the key claims in these cases so that they could be resolved. There simply is no reason to treat the ZAI Claimants any differently. If the Court agrees that a bar date is appropriate for ZAI claims, the only expert necessary is the Debtors' notice expert who has designed the Debtors' Bar Date Notice Program, not an expert to conduct surveys and analyze business records. Such an expert will not aid in resolving the potential claims against the Debtors.

In addition, if the ZAI Claimants want to hire experts to analyze sales records and other data regarding ZAI, they can do so; however, the Debtors should not be expected to fund such a process. The ZAI Claimants are not a committee for whose professionals the estate must pay, and a class has not been authorized by the Court. Accordingly, the Debtors should not be ordered to fund the appointment of an expert as described in the ZAI Claimants' Motion.

## Conclusion

For the foregoing reasons, the appointment of an expert pursuant to Fed. R. Evid. 706 as articulated in the ZAI Claimants' Motion and Brief in Support should be denied.

Dated: April 10, 2008

Respectfully submitted,
KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore Freedman
Janet S. Baer
Deanna D. Boll
Citigroup Center
153 East 53rd Street
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

REED SMITH LLP
James J. Restivo, Jr.
Douglas E. Cameron
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-3131
Facsimile: (412) 288-3063

and

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession