**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| In re: | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| W. R. GRACE & CO., et al., | ) | |
| | ) | **Re:  Docket No. 18328** |
| Debtors. | ) | |
| | ) | Hearing Date: April 22, 2008 at 11:30 a.m. |
| | ) | Objection Deadline: April 10, 2008 |
| _____ | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS TO MOTION OF THE DEBTORS FOR AN ORDER (A)
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ZONOLITE ATTIC
INSULATION CLAIMS, AND (B) APPROVING THE RELATED PROOF OF
CLAIM FORM, BAR DATE NOTICES, AND NOTICE PROGRAM**

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"), through its undersigned counsel, hereby files this Objection (the "Objection") to the Motion of the Debtors for an Order (A) Establishing a Proof of Claim Bar Date for Zonolite Attic Insulation ("ZAI") Claims, and (B) Approving the Related Proof of Claim Form, Bar Date Notices, and Notice Program (the "Motion").  In support of its Objection, the PD Committee respectfully submits as follows.

<u>Preliminary Statement</u>

The Motion should be denied as it is materially deficient.  It simply fails to explain how the establishment of a bar date advances the process of estimating ZAI claims, likely because there is no basis for the contention.  Moreover, even if a bar date could be rationalized the notice program that is proposed is also materially defective.

Worse yet, the Motion fails to explicate the estimation process which the Debtors propose to implement nor does it provide any authority whatsoever for the proposition

that ZAI claims can be estimated in the aggregate for purposes of allowance of such claims – as opposed to feasibility – likely because there is none.

Most importantly, while the Motion fails to share the Debtors' vision for the final resolution of ZAI claims, it is safe to assume that the Court's ZAI Science Trial Opinion will serve as the prism through which the Debtors will urge that ZAI claims be viewed for purposes of estimation and then again, for purposes of disallowance of individual ZAI claims despite the fact that the Opinion is merely interlocutory and could not be appealed.

There is simply too much at stake, on many levels, to fashion estimation and individual claims allowance processes or companion notice programs in respect of ZAI claims without the benefit of a final ZAI Science Trial Opinion.  Thus, the PD Committee respectfully urges that an appeal of the ZAI Science Trial Opinion should be the first order of business.

<u>Discussion</u>

1.    With the resolution of asbestos personal injury claims apparently at hand, the Debtors propose to next tackle the extent of their liabilities for ZAI.   Needless to say, that process must conform to the rigors of the Bankruptcy Code and traditional notions of due process and should not be marginalized in the Debtors' predictable rush to emerge from chapter 11 now that the personal injury estimation is behind it.

2.    The Motion – which was filed before the personal injury settlement was announced – offered three alternatives for resolving ZAI claims: settlement negotiations, estimation of claims *or* a formal allowance/disallowance process.  However, with the personal injury settlement in hand, it now appears that the Debtors intend to embark upon yet another unprecedented romp in the surreal – a hodgepodge aggregate estimation of

ZAI claims *for* allowance/disallowance purposes.  To this end, the publicly filed term sheet for resolution of asbestos personal injury claims cryptically reveals the following in respect of ZAI claims:

> ZAI Claims: Unless the Plan Proponents agree otherwise as to the treatment of ZAI Claims, the court shall estimate, for purposes of allowance and distribution, any liability on account of ZAI Claims prior to or in connection with the confirmation of the Plan.  ZAI Claims shall be paid 100% of their allowed amount up to the amount of the court's estimate.

3.      From the foregoing settlement provision we discern that, in addition to the Debtors' novel estimation model, it would also intend to use the result of such estimation as a cap on the aggregate value it must distribute in respect of allowed ZAI claims even if the aggregate of the allowed amounts of such claims exceeds the estimation amount. While the PD Committee is gratified that the Debtors have finally realized the wisdom of estimating ZAI claims – as the Committee has urged since as early as 2001 – neither the Motion nor the personal injury settlement term sheet provide any supporting authority for the notion of an aggregate estimation for allowance purposes, or a roadmap for such an aggregate estimation.  Once again, the PD Committee and its constituency are left guessing about process in an ever-familiar informational abyss.

4.      Nor do the Debtors explicate why a bar date is even necessary to inform an aggregate estimation of ZAI claims, as opposed to expert testimony as to the extent and value of ZAI claims consistent with the methodology employed for the estimation of asbestos liabilities in virtually every asbestos bankruptcy case (including this one).    In fact, the Debtors advance the notion of a bar date based on the whimsical supposition that it would promote a settlement or "negotiations regarding an estimation," as opposed to the necessity for a bar date to complete an estimation of ZAI claims:

A binding ZAI Claim bar date will inform all three of these critical processes. In terms of settlement negotiations, it will allow the Debtors to communicate in a meaningful way directly with the ZAI Claimants.  On the other hand, the proposed alternatives – a non-binding bar date and a ZAI class action – will not provide the Debtors with such opportunity, and instead may thwart the Debtors' efforts to settle these claims.  **In addition, knowing the population of the ZAI Claims will give weight to the parties' respective views as to the magnitude of such claims for any negotiations regarding an estimation of the claims in the aggregate.**  Moreover, a bar date would be necessary if the Debtors need to adjudicate the claims through a formal allowance/disallowance proceeding.

Motion at ¶ 10 (emphasis added).

5.      The Court has previously rejected the logic of the Debtors' entreaties to establish a bar date as part of an estimation, let alone as a means of facilitating settlement negotiations:

> THE COURT: You don't need a Proof of Claim to estimate.  The whole process of a Proof of Claim is for the Debtor or some other Party-In-Interest to substantiate that that specific claim is either allowed or disallowed in the bankruptcy process.  **For estimation, if you're looking at an aggregate, you don't need a Proof of Claim for that function.**

Tr., Nov. 14, 2005 Hr'g at 139 (emphasis added).

6.      A bar date designed to facilitate an estimation process especially cannot be approved when the estimation itself is fundamentally flawed and fraught with so many unknowns.  Again, the Debtors altogether fail to provide any meaningful information about the estimation, including such basics as the intended counterparties to the estimation, the procedure to estimate claims or even whether an aggregate estimation for purposes of allowance and distribution is permissible under the Bankruptcy Code.[1] Needless to say, with absolutely no prior experience with the estimation of asbestos property damage claims generally, or ZAI claims specifically, in this or any other bankruptcy case, it is especially important that the contours of the estimation process be

fully and clearly defined before we launch a more than $3 million notice program to facilitate a ZAI bar date that has only undefined relevance to "negotiations regarding the estimation."  We ought not to sacrifice basic bankruptcy principles simply because the personal injury settlement encourages us to believe that the goal line is finally in sight and the Debtors hold out the unilateral view that settlement of ZAI may in some cosmic way be advanced by a ZAI bar date.[2]

7.      While the details of the Debtors' ZAI estimation program have yet to be shared, the Motion and recent statements made by the Debtors reveal the apparent overarching scheme to value ZAI claims *en masse* at or near zero, rendering the actual allowance or disallowance of individual ZAI claims of only academic importance.[3]  To accomplish that, the Debtors propose to cap distributions in respect of all ZAI claims, in the aggregate, at the estimated value of such claims.  Of course, the only ZAI claims which will be subject of the aggregate estimation will be those in respect of which proofs of claim were filed by the requested bar date.[4]  In the estimation, the Debtors will argue that each of the filed ZAI claims (no matter what idiosyncrasies pertain to the individual

---

[1] The Debtors likewise fail to discuss what they intend in respect of Canadian ZAI claims as they expressly exclude such claims from the estimation/bar date scheme contemplated by the Motion.

[2] Ironically, the Debtors argued that the prospect of a ZAI settlement was not a sufficient reason to permit an interlocutory appeal of the ZAI Science Trial Opinion.  *Response of the Debtors to the Motion of Zonolite Attic Insulation Property Damage Claimants for Leave to Appeal* at 15 (Dkt. No. 14279).

[3] For instance, on an investors call held on April 7, 2008 to discuss the personal injury settlement and the Debtors' vision of how it will exit bankruptcy perhaps as early as December 2008, the Debtors' management highlighted the ZAI Science Trial Opinion's importance in the estimation of ZAI claims.

[4] The number of proofs of claim filed ordinarily depends on the effectiveness of a debtor's notice program. In this case, there is no reason to be optimistic given the Debtors' inability to demonstrate that their notice program is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of a ZAI bar date and afford them an opportunity to educate the unwary and unknowing and to motivate holders of ZAI claims to file proofs of claim.  The proposed notice program is fraught with deficiencies, including, without limitation, that it likely underestimates the actual cost to implement the program; the notice itself carries the ZAI Science Trial Opinion to the extreme by depicting ZAI as harmless; the notice is largely written in legalese and not likely to clearly inform or motivate ZAI claimants; and, the notice fails to even allude to the fact that an estimation process is intended by the Debtors to precede the determination of objections to any filed proofs of claim and that ZAI claimants' recoveries will be limited by the outcome of the estimation.

claims) should be estimated through the prism of the ZAI Science Trial Opinion. Thusly, by the combination of the "cap" and the use of the ZAI Science Trial Opinion, the Debtors enhance the prospect that ZAI claims will be estimated at or near zero and that their liability for ZAI claims under a plan will likewise be at or near zero regardless of whether individual ZAI claims are subsequently allowed in a greater aggregate amount.[5] Indeed, in that construct, the Debtors become wholly indifferent to whether ZAI claims are allowed.

8.    While the Third Circuit Court of Appeals has stated that bankruptcy courts should use "whatever method [of estimation] is best suited to the particular contingencies at issue," the estimation process is not without limitation. Bittner v. Borne Chem. Co., 691 F.2d 134, 135 (3d Cir. 1982). Estimation must (a) conform with the underlying purposes of the Bankruptcy Code; (b) apply the relevant legal rules which govern the value of the claim; and (c) not run counter to the efficient administration of the estate. Id. at 135; Accord In re Windsor Plumbing Supply Co., Inc., 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994). Specifically, this Court is "bound by the legal rules which may govern the ultimate value of the claim[s] ... [and] those general principles which should inform all decisions made pursuant to the Code." Bittner, 691 F.2d at 135-36; see also In re Combustion Eng'g, Inc., 391 F.3d 190, 245 n.64 (3d Cir. 2004) (minimal due process requirements extend to bankruptcy proceedings); In re Amoroso, 123 Fed. Appx. 43, 49-50 (3d Cir. 2004) (analyzing due process requirements in a bankruptcy proceeding); Jones v. Chemetron Corp., 212 F.3d 199, 209 (3d Cir. 2000) (applying due process

---

[5] In the ZAI Science Trial Opinion, the Court observed that "the determination made herein may prove fatal to the [ZAI] claims..." *Order Resolving Motion for Partial Summary Judgment, Cross Motions for Summary Judgment and Scheduling a Status Conference and Memorandum Opinion*, dated December 14, 2006 (Dkt. Nos. 14014 and 14015).

considerations to bankruptcy proceeding).  The Debtors' estimation proposal – to the extent it has been revealed – does not survive application of the foregoing standards.

9.      Clearly, the centerpiece of the Debtors' ZAI strategy is the ZAI Science Trial Opinion.  Yet, that Opinion is interlocutory and has never been subjected to the scrutiny of an appeal.  Indeed, the holders of ZAI claims were denied the opportunity to appeal the Opinion by the District Court.  That, of course, plainly suits the Debtors' agenda especially if they manage to confirm a plan at or near the conclusion of the proposed ZAI claims estimation and they are thus able to avail themselves of principles of equitable mootness.[6]  Even if such principles do not apply, the prospect of multiple appeals by every adversely affected ZAI claimant looms large and threatens that the Court may be required on remand to reconsider those claims yet again, delaying closure of this chapter 11.

10.      The Debtors' efforts to thwart an interlocutory appeal of the ZAI Science Trial Opinion can no longer be legitimized.  The Debtors can no longer hide behind the personal injury estimation as a "distraction" preventing the appeal.[7]  Since asbestos personal injury claims are now resolved, the right of ZAI claimants to take an immediate appeal is critical to ensure both that the use of the ZAI Science Trial Opinion in the estimation of ZAI claims – the last critical piece of this chapter 11 precedent to the confirmation of a plan – is appropriate and to avoid any risk of equitable mootness.  The PD Committee submits that until the vitality of the ZAI Science Trial Opinion is known,

---

[6] In its opposition to the motion of the ZAI claimants to take an interlocutory appeal of the ZAI Science Trial Opinion, the Debtors argued that "appeal should await the conclusion of the [personal injury] estimation process and plan confirmation...."  *Response of the Debtors to the Motion of Zonolite Attic Insulation Property Damage Claimants for Leave to Appeal* at 16. (Dkt. No. 14279).
[7] *Id.* at 15.

7

a bar date scheme and the development of an estimation process for ZAI claims are nonsensical and wasteful.

WHEREFORE, the PD Committee respectfully requests that the Court deny the Motion; facilitate an appeal of the ZAI Science Trial Opinion; and, provide the PD Committee with such other and further relief as the Court deems just and appropriate.

Dated: April 10, 2008

Respectfully submitted,

BILZIN SUMBERG BAENA
PRICE & AXELROD LLP
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-2336
Telephone:  (305) 374-7580

Scott L. Baena (Admitted <u>Pro</u> <u>Hac</u> <u>Vice</u>)
Jay M. Sakalo (Admitted <u>Pro</u> <u>Hac</u> <u>Vice</u>)
Matthew I. Kramer (Admitted <u>Pro</u> <u>Hac</u> <u>Vice</u>)

-and-

FERRY, JOSEPH & PEARCE, P.A.

<u>/s/ Theodore J. Tacconelli</u>
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
Telephone:  (302) 575-1555

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS