## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | **Objection Deadline: May 2, 2008 at 4:00 p.m.** |
| | ) | **Hearing Date: May 19, 2008 at 1:00 p.m.** |

### MOTION OF MIAN REALTY, LLC FOR ENTRY OF ORDER DECLARING THAT (i) THE AUTOMATIC STAY DOES NOT APPLY TO FILING OF ITS PROPOSED THIRD PARTY COMPLAINT AGAINST DEBTOR; AND (ii) DEBTOR'S OBLIGATION TO CLEANUP CERTAIN REAL PROPERTY DOES NOT CONSTITUTE A CLAIM UNDER THE BANKRUPTCY CODE

Mian Realty, LLC ("Mian"), by and through its attorneys, submits this Motion For Entry of Order Declaring that (i) the Automatic Stay Does Not Apply to the Filing of Its Proposed Third Party Complaint Against Debtor; and (ii) Debtor's Obligation to Cleanup Certain Real Property Does Not Constitute a Claim Under the Bankruptcy Code (the "Motion"). In support of this Motion, Mian respectfully represents as follows:

### BACKGROUND

1.      On July 29, 1987, Bilal Mian, MD ("Bilal") and his wife, Shakila M. Mian ("Shakila," and collectively with Bilal, the "Mians"), purchased from W.R. Grace & Co. ("Debtor") the real property located at 6 Kirby Avenue, Somerville, New Jersey and identified on local tax maps as Block 1, Lot. 4.02 (the "Property"). Declaration of Bilal Mian, MD ("Mian Decl.") ¶ 2 (attached hereto).

2.      The Mians were not advised, either prior to or at the time of purchase, of the previous use of the Property as a landfill or of any environmental concern relating to the Property. Id. ¶ 3. Moreover, the Purchase and Sale Agreement governing the transaction failed to disclose the existence of a landfill or any environmental concern. Id.

3.  On or about December 29, 1988, the Mians transferred their interest in the Property to Mian Realty Partners, LP ("Mian Realty"). Id. ¶ 4.

4.  On March 19, 1997, Mian Realty transferred its interest in the Property to Mian. Mian's members consist of Bilal, Shakila, and their four (4) children. Id. ¶ 5.

5.  A medical office, at which Bilal practices neurology, is located two (2) blocks from the Property. Id. ¶ 6. Also, Mian currently leases space in the office building located on the Property to Somerset Medical Center. Id.

6.  Since the purchase of the Property in 1987, neither Mian, Mian Realty, nor the Mians have created, disrupted, or aggravated any contamination of the Property. Id. ¶ 7.

**Litgo Asserts Claims Against Mian**

7.  Litgo New Jersey, Inc. ("Litgo") owns the tract of real property located at 40 Haynes Street, Somerville, New Jersey and identified on local tax maps as Block 50, Lots 3, 13, and 14 (the "Litgo Property"). Id. ¶ 8. The Litgo Property adjoins the Property. Id.

8.  On September 5, 2007, Litgo and Sheldon Goldstein (collectively, "Litgo") filed in the United States District Court for the District of New Jersey (the "District Court") an Amended Complaint against Mian, among others. Id. ¶ 9. Mian was not named in the original Complaint, apparently filed in 2006. Id.

9.  Mian was served with a copy of the Amended Complaint on or about October 2, 2007. Id. ¶ 10. It was not until this date that the Mians first learned of the existence of an alleged landfill on or any environmental concern relating to the Property. Id. Thus, Mian did not incur any response costs as a result of such landfill or any environmental concern until after this date. Id.

10.     On December 17, 2007, Litgo filed in the District Court a Second Amended Complaint against Mian, among others (the "District Court Action"). Id. ¶ 11; Ex. A.

11.     Litgo alleges that the Property was formerly the site of a landfill and asserts claims arising from the alleged disposal of hazardous substances on and adjacent to the Litgo Property. Id. ¶ 12; Ex. A. It asserts the following claims against Mian: (i) for contribution under the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J.S.A. 58:10-23.11 *et seq.*; and (ii) for recovery of costs under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* Id. ¶ 12; Ex. A at 28-33.

12.     Mian disputes any allegation that the Property is the source of contamination on the Litgo Property. Mian Decl. ¶ 13. Nevertheless, to the extent that it is somehow liable to Litgo, Mian possesses the following causes of action against Debtor: (i) for recovery of the amount of Mian's liability for Litgo's "response costs" under CERCLA section 113(f); (ii) for recovery of Mian's liability for Litgo's costs under the Spill Act; and (iii) for relief pursuant to various statutory and common law causes of action. Id.; Ex. B at 5-12. Also, to the extent that any contamination on the Property exists, regardless of its liability to Litgo, Mian possesses the following direct causes of action against Debtor: (i) for recovery of Mian's "response costs" under CERCLA section 107(a); (ii) for recovery of Mian's costs under the Spill Act; and (iii) for injunctive relief under the New Jersey Environmental Rights Act (the "ERA"), N.J.S.A. 2A:35A-1 *et seq.* Id.; Ex. B at 4-5; 11-13.

## RELIEF REQUESTED

13.     Mian seeks authority to file a Third Party Complaint against Debtor in the District Court Action. Id. ¶ 14; Ex. B. Accordingly, Mian respectfully requests that this Court declare

45788/0001-2603374v1

that (i) the automatic stay does not apply to the filing of Mian's proposed Third Party Complaint

against Debtor; and (ii) Debtor's obligation under New Jersey law to cleanup the Property does

not constitute a claim under the Bankruptcy Code.

**I.      The Automatic Stay Does Not Apply to the Proposed Third Party Complaint**

      14.     Bankruptcy Code section 362(a)(1) provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).

      15.     The United States Court of Appeals for the Third Circuit has interpreted section

362(a)(1) to mean that the automatic stay applies only to pre-petition proceedings and claims.

Avellino v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332, 335 (3d Cir. 1985).  In the

present case, Mian seeks to assert against Debtor various environmental claims, including,

principally, CERCLA claims.  Therefore, the applicability of the automatic stay to the CERCLA

and other claims depends on whether the claims arose pre-petition.  Erman v. Lox Equip. Co.,

142 B.R. 905, 907 (N.D. Cal. 1992).  If the claims arose post-petition, the automatic stay does

not apply to such claims.  Id. (holding that creditor's CERCLA claim arose post-petition and thus

automatic stay did not apply).

      16.     The Third Circuit has held that, to determine when a CERCLA or other mass tort

claim has accrued, a court must examine the substantive area of law governing the claim.  In re

Reading Co., 115 F.3d 1111, 1123 (3d Cir. 1997).  See also Schweitzer v. Consolidated Rail

4

Corp., 758 F.2d 936, 942 (3d Cir. 1985) (noting that tort claim does not accrue until the plaintiff's injury is "manifest").

17.    In the present case, Mian seeks to assert the following CERCLA claims against Debtor: (i) a direct claim for recovery of Mian's "response costs" under CERCLA section 107(a); and (ii) a contribution claim for recovery of the amount of Mian's liability, if any, for Litgo's "response costs" under CERCLA section 113(f).  Mian Decl. Ex. B at 4-5, 8-9.

18.    The Third Circuit has held that satisfaction of the following elements results in accrual of a CERCLA section 107(a) claim: (i) the defendant qualifies as a "responsible party"; (ii) hazardous substances were disposed of at a "facility"; (iii) a "release" or "threatened release" of hazardous substances from the facility into the environment occurred; and (iv) the release causes the incurrence of "response costs."  Reading, 115 F.3d at 1117-18, 1125 (citing 42 U.S.C. § 9607).

19.    Other courts have applied the same or a similar analysis in bankruptcy cases.  See, e.g., Acme Printing Ink Co. v. Menard, Inc., 870 F. Supp. 1465, 1491 (E.D. Wis. 1994) (holding that, because no response costs had been incurred until after the petition filing, plaintiff's CERCLA section 107(a) claim did not arise pre-petition); AL Tech Specialty Steel Corp. v. Allegheny Int'l, Inc., 126 B.R. 919, 925-26 (W.D. Pa. 1991) (holding that, because CERCLA section 107(a)(4)(B) provides that a private party has no cause of action under CERCLA until the "necessary costs of response" are incurred, a bankruptcy claim does not arise until that time), aff'd, 950 F.2d 721 (3d Cir. 1991).  See also Sylvester Bros. Dev. Co. v. Burlington Northern R.R., 133 B.R. 648, 653 (D. Minn. 1991) (holding that potential CERCLA liability escaped discharge because the debtor had not disclosed its potential liability and because the government lacked actual knowledge of the potential claim in sufficient time to file a claim in the

proceeding); <u>United States v. Union Scrap Iron & Metal</u>, 123 B.R. 831, 838-39 (D. Minn. 1990) (holding that occurrence of discharge of hazardous substance at facility owned by debtor's agent prior to debtor's chapter 11 case was not sufficient to give federal government a "claim" against the debtor, when the government had not incurred any response costs as of the date of the confirmation of the debtor's plan and when the government did not even know of relationship between debtor and agent).

20.     In the present case, assuming *arguendo* that the first three (3) elements of section 107(a) are satisfied, Mian did not learn of the existence of an alleged landfill on or any environmental concern relating to the Property until the service of Litgo's Amended Complaint in October 2007.  Mian Decl. ¶ 10.  Thus, Mian did not incur any response costs as a result of such landfill or any environmental concern until after such date.  <u>Id.</u>  It follows that Mian's CERCLA section 107(a) claim did not accrue until after such date.  Accordingly, because Mian's claim arose well after Debtor's petition filing in 2001, the automatic stay does not apply to such claim.

21.     In assessing the accrual of a CERCLA section 113(f) contribution claim, a court must apply a two (2) step analysis.  <u>Reading</u>, 115 F.3d at 1123.  First, the court must ascertain when the section 113(f) claim itself accrued.  <u>Id.</u>  Second, because the section 113(f) claim depends on the liability of the contribution claimant and the defendant to a third party, the court must ascertain when the third party's claim accrued.  <u>Id.</u>

22.     In the present case, application of these elements results in the conclusion that Mian's CERCLA section 113(f) claim did not accrue until 2006 at the earliest.  First, a CERCLA section 113(f) claim does not arise until an enforcement action has been initiated.  <u>In re Hillsborough Holdings Corp.</u>, 325 B.R. 334, 337 (Bankr. M.D. Fla. 2005) (citing <u>Cooper Indus.,</u>

Inc. v. Aviall Servs., Inc., 543 U.S. 157 (2004)).  In this case, Litgo apparently did not initiate the District Court Action until 2006.  Mian Decl. ¶ 9.  Second, Litgo, the "third party" to which Mian and Debtor may be liable, asserts a CERCLA section 107(a) claim against Mian in the District Court Action.  Id. ¶¶ 11-12; Ex. A at 28-33.  As set forth above, such a claim does not accrue until the plaintiff has incurred "response costs."  In this case, because it did not initiate its action until 2006, Litgo presumably did not incur response costs as a result of an alleged landfill on or any environmental concern relating to the Property until that time.  Therefore, Mian's CERCLA section 113(f) claim likewise arose post-petition and the automatic stay does not apply to such claim.

23.      Mian seeks to assert various other statutory and common law causes of action against Debtor.  These claims, like Mian's CERCLA claims, did not accrue until long after Debtor's petition filing.  For instance, Mian seeks to assert a claim for (i) recovery of Mian's liability for Litgo's costs under the Spill Act; and (ii) for recovery of Mian's costs under the Spill Act.  Mian Decl. Ex. B at 11.  Under the Spill Act, a contribution plaintiff may seek contribution only if the contribution defendant or defendants "are liable" for the cost of the cleanup and removal of the discharge of a hazardous substance.  Bowen Eng'g v. Estate of Reeve, 799 F. Supp. 467, 480 (D.N.J. 1992) (citing N.J.S.A. 58:10-23.11f), aff'd, 19 F.3d 642 (3d Cir. 1994). In Bowen, the court found a Spill Act claim "premature" where the New Jersey Department of Environmental Protection (the "DEP") had been limited to investigation into the extent of contamination.  Id.  Likewise, here, as set forth above, Litgo did not initiate its action until 2006. Thus, Litgo presumably did not incur response costs as a result of an alleged landfill on or any environmental concern relating to the Property until that time.  Further, the District Court has yet to find any parties liable under the Spill Act.  Finally, Mian itself likewise had not, prior to

Debtor's petition filing, incurred costs under the Spill Act. Mian Decl. ¶ 10. Accordingly, Mian's Spill Act claim had not accrued as of Debtor's petition filing in 2001.

24.    Next, Mian seeks to assert common law indemnity and contribution claims against Debtor. Mian Decl. Ex. B at 9-12. In <u>Frenville</u>, the Third Circuit addressed the issue of whether the automatic stay applied to the filing of a creditor's third party complaint seeking to obtain under New York law indemnity or contribution from a debtor. <u>Frenville</u>, 744 F.2d at 333-34. The Third Circuit noted that, under New York law, common law indemnity and contribution claims do not accrue at the time of the underlying act, but rather, at the earliest, upon the entry of judgment flowing from the act. <u>Id.</u> In <u>Frenville</u>, the original plaintiff had not brought suit against the creditor until fourteen (14) months after the debtor's petition filing. <u>Id.</u> Therefore, the Third Circuit concluded that, because the creditor's third party's indemnity and contribution claims did not accrue until after the petition filing, the automatic stay did not apply to the filing of such suit. <u>Id.</u> <u>See also</u> <u>In re Penn Centr. Transp. Co.</u>, 71 F.3d 1113, 1115 (3d Cir. 1995) (holding that common law claims for contribution and indemnity did not accrue until filing of complaints after bankruptcy filing), <u>cert. denied</u>, <u>American Premier Underwriters, Inc. v. USX Corp.</u>, 517 U.S. 1221 (1996).

25.    Under New Jersey law, like New York law as cited in <u>Frenville</u>, a claim for common law contribution or indemnification does not accrue until the entry of judgment in favor of the plaintiff. <u>See</u>, <u>e.g.</u>, <u>Adler's Quality Bakery, Inc. v. Gaseteria, Inc.</u>, 32 N.J. 55, 81 (1960) ("[A defendant] has no right of indemnity (if any) at least until a judgment for damages has been entered in favor of the injured plaintiffs."); <u>Bendar v. Rosen</u>, 247 N.J. Super. 219, 237 (App. Div. 1991) ("While technically a right of contribution does not arise until a tortfeasor has paid more than his pro rata share, the entire-controversy doctrine and judicial economy militate for

45788/0001-2603374v1

the claim being asserted in the underlying tort action." (citation omitted)).  See also United States

v. Compaction Sys. Corp., 88 F. Supp.2d 339, 351 (D.N.J. 1999) ("[I]t is well-settled that a PRP

need not wait to seek contribution under CERCLA § 113, because such an action can be brought

during a pending Section 107 action.").  In the present case, judgment has not even been entered

in the District Court action.  Thus, Mian's common law contribution and indemnity claims have

yet to even accrue.

      26.     Finally, Mian seeks to assert against Debtor claims for recovery or avoidance of

the Purchase and Sale Agreement with Debtor based on Debtor's failure to disclose a material

defect in the Property.  Mian Decl. Ex. B at 5-8.  Under New Jersey law, "[a]t least in an

environmental contamination case, a cause of action accrues in New Jersey when a plaintiff

knows or reasonably should know of his cause of action . . . ."  Bowen, 799 F. Supp. at 481.  In

Bowen, the court held that the plaintiff's claim for fraudulent nondisclosure concerning a

material defect in property accrued not upon mere investigation and testing of the property, but

rather, after the preparation of a formal report by the DEP.  Id.  Likewise, here, Mian did not

learn of the existence of an alleged landfill on or any environmental concern relating to the

Property until the service of Litgo's First Amended Complaint in October 2007.  Id.  Thus,

Mian's claims arising from Debtor's failure to disclose a material defect in the Property did not

arise until that time.

      27.     Accordingly, because Mian's claims against Debtor did not accrue until long after

Debtor's petition filing,[1] the automatic stay does not apply to the filing of Mian's proposed Third

Party Complaint.

---

[1]     In Reading, the Third Circuit, in addressing claim accrual in the context of a
Bankruptcy Act section 77 discharge analysis, held that if a claim had not accrued, then a court
must determine also whether the claimant possessed a contingent claim by virtue of a legal
relationship between the claimant and the debtor.  Reading, 115 F.3d at 1121-23, 1125.  In the

## II.    Debtor's Obligation to Cleanup the Property Does Not Constitute a Claim

28.    A debtor's obligation to cleanup waste posing an ongoing hazard on a property does not constitute a claim dischargeable in bankruptcy.  Torwico Elecs., Inc. v. State of New Jersey, Dep't of Envtl. Protection, 8 F.3d 146, 150-51 (3d Cir. 1993).

29.    In this case, Mian seeks to assert against Debtor a direct claim for injunctive relief under the ERA.  Mian Decl. Ex. B at 12-13.  "Although the Spill Act does not have a provision for enforcement by private parties, citizens may bring an action through the ERA for injunctive relief under the Spill Act."  Bowen, 799 F. Supp. at 479.  "An action brought under the ERA 'may be for injunctive or other equitable relief to compel compliance with a statute, regulation or ordinance . . . .'"  Id. (quoting N.J.S.A. 2A:35A-4(a)).  Here, insofar as an ongoing environmental hazard exists on the Property, Debtor has an obligation to investigate and cleanup the waste posing such hazard.  Such obligation is not a claim dischargeable in Debtor's bankruptcy.

---

present case, in contrast, this Court must address whether a claim has accrued in the context of a Bankruptcy Code section 362 automatic stay analysis.  Thus, a "contingency" determination is not necessary here.  In any event, even assuming that such a determination is necessary here, "[m]ere knowledge of the existence of hazardous waste coupled with knowledge of the identities of potentially responsible parties, in the absence of an abatement order pursuant to 42 U.S.C. § 9606(a) or a cost recovery action pursuant to 42 U.S.C. § 9607(a) or 42 U.S.C. § 9613, does not suffice as a legal relationship adequate to justify inclusion of the claim in the bankruptcy prior to the claim's development as a cause of action."  Allegheny, 126 B.R. at 925 n.5.  In this case, as set forth above, no action, such as a cost recovery action under CERCLA, occurred pre-petition. Thus, Mian did not possess a pre-petition contingent CERCLA claim.  Further, in Schweitzer, the Third Circuit noted that "[t]here is no legal relationship . . . between a tortfeasor and a tort victim until a tort actually has occurred."  Schweitzer, 758 F.2d at 943.  Until injury manifests itself, no legal relationship, and concomitantly no contingent claim, arises.  Id. Here, as set forth above, Mian's injury did not manifest itself, and hence no legal relationship arose, until well after Debtor's petition filing.  Mian Decl. ¶ 10.  Accordingly, Mian's remaining claims, sounding in tort, likewise did not qualify as "contingent" as of Debtor's petition filing.

## CONCLUSION

**WHEREFORE**, Mian respectfully requests that this Court enter an order declaring that (i) the automatic stay does not apply to Mian's proposed Third Party Complaint against Debtor; and (ii) Debtor's obligation under New Jersey law to cleanup the Property does not constitute a claim under the Bankruptcy Code.

Dated:  April 11, 2008

<div style="margin-left:40%">

**TRENK, DiPASQUALE, WEBSTER,
DELLA FERA & SODONO, P.C.**
Richard D. Trenk
Henry M. Karwowski
347 Mt. Pleasant Avenue, Suite 300
West Orange, NJ 07052
(973) 243-8600
Fax: (973) 243-8677

-and-

**COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, PA**

By:  _____
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
(302) 295-4888
Fax: (302) 652-3117

Co-Counsel for Mian Realty, LLC

</div>

F:\WPDOCS\A-M\Mian Realty, LLC\Motion3.doc

45788/0001-2603374v1