**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

**DECLARATION OF BILAL MIAN, MD IN SUPPORT OF MOTION OF MIAN REALTY, LLC FOR ENTRY OF ORDER DECLARING THAT (i) THE AUTOMATIC STAY DOES NOT APPLY TO FILING OF ITS PROPOSED THIRD PARTY COMPLAINT AGAINST DEBTOR; AND (ii) DEBTOR'S OBLIGATION TO CLEANUP CERTAIN REAL PROPERTY DOES NOT CONSTITUTE A CLAIM UNDER THE BANKRUPTCY CODE**

**BILAL MIAN**, **MD** makes the following declaration:

1.      I am the managing member of Mian Realty, LLC ("Mian"), a limited liability company duly registered with the State of New Jersey.  As such, I am fully familiar with the facts and circumstances set forth herein.  I submit this Declaration in support of Mian's Motion For Entry of Order Declaring That (i) the Automatic Stay Does Not Apply to the Filing of Its Proposed Third Party Complaint Against Debtor; and (ii) Debtor's Obligation to Cleanup Certain Real Property Does Not Constitute a Claim Under the Bankruptcy Code.

**Mian Purchases the Property**

2.      On July 29, 1987, my wife, Shakila M. Mian, and I purchased from W.R. Grace & Co. ("Debtor") the real property located at 6 Kirby Avenue, Somerville, New Jersey and identified on local tax maps as Block 1, Lot. 4.02 (the "Property").

3.      My wife and I were not advised, either prior to or at the time of purchase, of the previous use of the Property as a landfill or of any environmental concern relating to the

Property.    Moreover, the Purchase and Sale Agreement governing the transaction failed to disclose the existence of a landfill or any environmental concern.

4.    On or about December 29, 1988, my wife and I transferred our interest in the Property to Mian Realty Partners, LP ("Mian Realty").

5.    On March 19, 1997, Mian Realty transferred its interest in the Property to Mian. Mian's members consist of my wife, myself, and our four (4) children.

6.    A medical office, at which I practice neurology, is located two (2) blocks from the Property.    Also, Mian currently leases space in the office building located on the Property to Somerset Medical Center.

7.    Since the purchase of the Property in 1987, neither my wife, myself, Mian, nor Mian Realty have created, disrupted, or aggravated any contamination of the Property.

**Litgo Asserts Claims Against Mian**

8.    Litgo New Jersey, Inc. ("Litgo") owns the tract of real property located at 40 Haynes Street, Somerville, New Jersey and identified on local tax maps as Block 50, Lots 3, 13, and 14 (the "Litgo Property").    The Litgo Property adjoins the Property.

9.    On September 5, 2007, Litgo and Sheldon Goldstein (collectively, "Litgo") filed in the United States District Court for the District of New Jersey (the "District Court") an Amended Complaint against Mian, among others.    Mian was not named in the original Complaint, apparently filed in 2006.

10.    Mian was served with a copy of the Amended Complaint on or about October 2, 2007. It was not until this date that my wife or I first learned of the existence of an alleged landfill on or any environmental concern relating to the Property.  Thus, Mian did not incur any response costs as a result of such landfill or any environmental concern until after this date.

2

11.     On December 17, 2007, Litgo filed in the District Court a Second Amended Complaint against Mian, among others (the "District Court Action").  A copy of the Second Amended Complaint is annexed hereto as Exhibit A.

12.     Litgo alleges that the Property was formerly the site of a landfill and asserts claims arising from the alleged disposal of hazardous substances on and adjacent to the Litgo Property.  Ex. A.  It asserts the following claims against Mian: (i) for contribution under the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J.S.A. 58:10-23.11 *et seq.*; and (ii) for recovery of costs under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*  Ex. A at 28-33.

13.     Mian disputes any allegation that the Property is the source of contamination on the Litgo Property.  Nevertheless, to the extent that it is somehow liable to Litgo, Mian possesses the following causes of action against Debtor: (i) for recovery of the amount of Mian's liability for Litgo's "response costs" under CERCLA section 113(f); (ii) for recovery of Mian's liability for Litgo's costs under the Spill Act; and (iii) for relief pursuant to various statutory and common law causes of action.  Also, to the extent that any contamination on the Property exists, regardless of its liability to Litgo, Mian possesses the following direct causes of action against Debtor: (i) for recovery of Mian's "response costs" under CERCLA section 107(a); (ii) for recovery of Mian's costs under the Spill Act; and (iii) for injunctive relief under the New Jersey Environmental Rights Act (the "ERA"), N.J.S.A. 2A:35A-1 *et seq.*

14.     Mian should be permitted to assert these causes of action against Debtor. Annexed hereto as Exhibit B is a copy of Mian's proposed Third Party Complaint against Debtor in the District Court Action.

I declare under penalty of perjury under the law of the United States that the foregoing is
true and correct and that this Declaration was executed on this 10th day of April 2008.

BILAL MIAN, MD

F:\WPDOCS\A-M\Mian Realty, LLC\MianAfft.doc

4

**EXHIBIT "A"**

John McGahren (JM 3568)
PATTON BOGGS LLP
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
Telephone: (973) 848-5600
Facsimile: (973) 848-5601

Attorneys for Plaintiffs Litgo New Jersey, Inc. and
Sheldon Goldstein

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LITGO NEW JERSEY, INC. and SHELDON GOLDSTEIN, | |
| Plaintiffs, | Civ. Case No. 06-2891 (AET) (TB) |
| v. | |
| LISA JACKSON, in her official capacity as the Commissioner of the New Jersey Department of Environmental Protection, STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF THE ARMY, UNITED STATES DEPARTMENT OF THE AIR FORCE, UNITED STATES DEPARTMENT OF THE NAVY, ALFRED SANZARI ENTERPRISES, MIAN REALTY, L.L.C and KIRBY AVENUE REALTY HOLDINGS, L.L.C., | SECOND AMENDED COMPLAINT |
| Defendants. | |

Plaintiffs, Litgo New Jersey, Inc. ("Litgo"), a New Jersey Corporation, and Sheldon

Goldstein, by way of their Second Amended Complaint against defendants Lisa Jackson, in her

official capacity as the Commissioner of the New Jersey Department of Environmental

50417

Protection ("NJDEP"), the State of New Jersey, NJDEP, the United States of America, the

United States Department of the Army, the United States Department of the Air Force, and the

United States Department of the Navy, (together, with the United States of America, the United

States Department of the Army and the United States Department of the Air Force, the "United

States Defendants"), Alfred Sanzari Enterprises ("Sanzari Enterprises"), Mian Realty, L.L.C.

("Mian Realty") and Kirby Avenue Realty Holdings, L.L.C. ("Kirby Realty"), state as follows:

## NATURE OF THE ACTION

1.      This is an action for: (a) injunctive relief under Section 7002(a)(1)(B) of
the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of
1976, as further amended by the Hazardous and Solid Waste Amendments of 1984 ("RCRA"),
42 U.S.C. § 6972(a)(1)(B); (b) for recovery of costs under Section 58:10-23.11f(a)(2) of the New
Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. § 58:10-23.11f(a)(2); (c) for
cost recovery under section 107(a) of the Comprehensive Environmental Response,
Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §9601 et seq. ("CERCLA");
and (d) for rescission of the Agreement of Sale for property located at 40 Haynes Avenue,
Somerville, New Jersey (the "F Sharp Screw Parcel") between Goldstein and Alfred Sanzari and
Sanzari Enterprises pursuant to New Jersey Sanitary Landfill Facility Closure and Contingency
Fund Act, N.J.S.A. 13:1E-100 et seq. (the "Closure Act"), as well as consequential damages.

2.      Plaintiffs seek an order compelling Defendant Lisa Jackson, in her official
capacity as Commissioner of NJDEP ("Jackson"), to investigate, abate and remediate hazardous
substances on and adjacent to the Somerville Iron Works Site in Somerville, New Jersey (the
"Somerville Iron Works Site"), which may present an imminent and substantial endangerment to
health or the environment. Plaintiffs also seek a declaratory judgment on Jackson's liability for
her contribution to the past or present handling, storage, treatment, transportation, or disposal of
solid or hazardous waste at the Somerville Iron Works Site in accordance with 28 U.S.C. § 2201,

which will be binding on any subsequent action or actions by the Plaintiffs against Jackson to
recover further costs associated with the release or threatened release of hazardous substances.

       3.    Plaintiffs have satisfied the Notice of Endangerment requirements set forth
in Section 7002(b)(2)(A) of RCRA, 42 U.S.C. § 6972(b)(2)(A), and 40 C.F.R. Part 254.  Over
ninety days ago, by letter dated October 14, 2005, delivered via certified mail (the "RCRA
Notice Letter"), Plaintiffs notified Bradley Campbell, then Commissioner of NJDEP, the
Attorney General of the State of New Jersey, the Administrator of the Environmental Protection
Agency, and the Attorney General of the United States that the conditions at the Somerville Iron
Works Site may present an imminent and substantial endangerment to health or the environment.
Jackson assumed Commissioner Campbell's official duties as Commissioner of NJDEP on
February 28, 2006.  Jackson has not agreed to investigate, abate and remediate the hazardous
substances, which may present an imminent and substantial endangerment to health or the
environment at the Somerville Iron Works Site, as demanded by the RCRA Notice Letter.

       4.    The State of New Jersey and NJDEP operated all or portions of the
Somerville Iron Works Site from 1983 through 1986 during two NJDEP removal actions, which
resulted in the release of hazardous substances and waste at the Somerville Iron Works Site.  The
State of New Jersey and NJDEP's operations on the Somerville Iron Works Site resulted, within
the meaning of RCRA, 42 U.S.C. § 6972(a)(1)(B), in the State of New Jersey's and NJDEP's
contribution to the past or present handling, storage, treatment, transportation, or disposal of
solid or hazardous waste at the Somerville Iron Works Site.

       5.    Plaintiffs have standing to sue under the citizen suit provision of RCRA §
7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) whereby, "any person may commence a civil action on
his own behalf ... against any person, including the United States and any other governmental
instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution,
and including any past or present generator, past or present transporter, or past or present owner
or operator of a treatment, storage, or disposal facility, who has contributed or who is
contributing to the past or present handling, storage, treatment, transportation, or disposal of any

50417

3

solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment," provided that the requisite notice of at least ninety days is given pursuant to RCRA, 42 U.S.C. § 6972(b)(2)(A).

6.    Plaintiffs therefore are entitled to injunctive relief under RCRA and to obtain an order compelling Jackson, in her official capacity as Commissioner of NJDEP, to take such actions as may be necessary to investigate, abate and remediate any imminent and substantial endangerment posed to health and the environment at the Somerville Iron Works Site. Plaintiffs are further entitled, pursuant to 42 U.S.C. § 6972(e), to seek an award of the costs of this litigation, including but not limited to reasonable attorney and expert witness fees, and including but not limited to similar fees to monitor Jackson's compliance with any orders or judgments issued by any regulatory agency or this Court.

7.    Plaintiffs seek recovery in contribution from the State of New Jersey, NJDEP, Sanzari Enterprises, Mian Realty and Kirby Realty pursuant to Section 58:10-23.11f(a)(2) of the Spill Act, N.J.S.A. § 58:10-23.11f(a)(2) and consequential damages.

8.    Plaintiffs seek to recover from the United States Defendants, Sanzari Enterprises, the State of New Jersey, NJDEP, Mian Realty and Kirby Realty the necessary costs of response Plaintiffs have incurred consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300 et seq., caused by the release or threatened release of hazardous substances at the Somerville Iron Works Site in accordance with Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), and a declaratory judgment on liability for response costs, in accordance with Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2)(B), that will be binding on any subsequent action or actions by Plaintiffs against the United States Defendants, Sanzari Enterprises, the State of New Jersey, NJDEP, Mian Realty and Kirby Realty to recover further response costs.

9.    From approximately 1940 until approximately 1948, Columbia Aircraft Products, Inc. ("Columbia Aircraft"), working under the direction and control of the United States Defendants, manufactured war material and conducted operations at the Somerville Iron

Works Site under circumstances in which, within the meaning of CERCLA, the United States Defendants owned or operated the Somerville Iron Works Site or facilities at the Somerville Iron Works Site at the time of disposal of hazardous substances, and in which the United States Defendants, by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at the Somerville Iron Works Site.

10.    From approximately 1976 until 1990, Sanzari Enterprises owned or operated facilities at the Somerville Iron Works Site, during which time hazardous substances were disposed of at the Somerville Iron Works Site. Upon information and belief, Sanzari Enterprises, by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at the Somerville Iron Works Site.

11.    From approximately 1983 through 1986, Clean Ventures, Inc. and other entities working under the direction and control of the State of New Jersey and NJDEP transported, treated and disposed of hazardous wastes and otherwise conducted operations at the Somerville Iron Works Site under circumstances in which, within the meaning of CERCLA, the State of New Jersey and NJDEP owned or operated facilities of the Somerville Iron Works Site at the time of disposal of hazardous substances, and in which the State of New Jersey and NJDEP, by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at the Somerville Iron Works Site.

12.    Mian Realty is the current owner of a facility at the Somerville Iron Works Sites, within the meaning of CERCLA.

13.    Kirby Realty is the current owner of a facility at the Somerville Iron Works Sites, within the meaning of CERCLA.

14.    Plaintiffs have been required to expend response costs, and will continue to be required to expend response costs, at the Site discussed herein. Plaintiffs are entitled to

50417                                           5

recover from the State of New Jersey, NJDEP, Sanzari Enterprises, Mian Realty, Kirby Avenue and the United States Defendants those response costs that relate to the period during which the United States Defendants, Sanzari Enterprises, the State of New Jersey, NJDEP, Mian Realty and Kirby Realty owned or operated the Somerville Iron Work Site or facilities at the Somerville Iron Works Site and/or arranged for disposal or treatment of hazardous substances at the Somerville Iron Works Site. Through this suit, Plaintiffs seek to recover those response costs from the State of New Jersey, NJDEP, Sanzari Enterprises, Mian Realty, Kirby Realty and the United States Defendants.

       15.    Plaintiffs seek rescission of the Agreement of Sale between Goldstein and Alfred Sanzari and Sanzari Enterprises pursuant to Section 13:1E-116 of the Closure Act because Alfred Sanzari and Sanzari Enterprises failed to disclose the existence of a sanitary landfill facility at and beneath the Somerville Iron Works Site to Goldstein within the Agreement of Sale. Through this suit, Plaintiffs seek rescission of the Agreement of Sale, an order voiding the Deed granting title to the F Sharp Screw Parcel to Goldstein, dated February 14, 1990 (the "Deed"), restitution of the purchase price plus interest, and consequential damages arising from Alfred Sanzari's and Sanzari Enterprises' failure to disclose the presence of a sanitary landfill facility at and beneath the F Sharp Screw Parcel.

## JURISDICTION AND VENUE

       16.    This Court has jurisdiction over this action under Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B); Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b); and 28 U.S.C. § 1331. In addition, the Declaratory Judgments Act, 28 U.S.C. § 2201 and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), authorize this Court to grant Plaintiffs declaratory relief.

       17.    This Court has supplemental jurisdiction over Plaintiffs' state law claim for relief pursuant to 28 U.S.C. §§ 1338 and 1367(a) for the additional reason that those claims

are joined with substantially related claims and arise out of the same common nucleus of operative facts as Plaintiffs' federal law claims.

18.     Venue in this Court is proper pursuant to Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because Jackson, the State of New Jersey, NJDEP, Sanzari Enterprises, Mian Realty, Kirby Realty and the United States Defendants may be found in the District of New Jersey, because the alleged endangerment may occur in the District of New Jersey, and because releases occurred in the District of New Jersey.

## PARTIES

19.     Plaintiff Litgo New Jersey, Inc. ("Litgo") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Suffern, New York, and, at all times material hereto, was doing business in the District of New Jersey.

20.     Plaintiff Sheldon Goldstein ("Goldstein") is a citizen of the State of Florida.

21.     Defendant Lisa Jackson is the Commissioner of the NJDEP.

22.     Defendant New Jersey Department of Environmental Protection ("NJDEP") is a principal department within the Executive Branch of the government of Defendant State of New Jersey, and vested with the authority by Defendant State of New Jersey as trustee to protect the State's natural resources.

23.     The State of New Jersey, NJDEP, Jackson and/or Jackson's predecessors in office operated the Somerville Iron Works Site or facilities at the Somerville Iron Works Site identified herein and/or by contract, agreement or otherwise, contributed to the past or present handling, storage, treatment, transportation, or disposal of hazardous waste, as that term is defined in Section 1004(5) of RCRA, 42 U.S.C. § 6903(5), or solid waste, as that term is defined in Section 1004(27) of RCRA, 42 U.S.C. § 6903(27), at the Somerville Iron Works Site, which may present an imminent and substantial endangerment to health or the environment.

24.    Defendants United States of America, United States Department of the Army, United States Department of the Air Force, and United States Department of the Navy, acting through various departments, agencies, and instrumentalities, owned or operated the Site or facilities at the Somerville Iron Works Site identified herein and/or, by contract, agreement or otherwise, arranged for the disposal or treatment, or arranged with a transporter for the transport for disposal or treatment, of hazardous substances owned or possessed by the United States Defendants at the Somerville Iron Works Site.

25.    Sanzari Enterprises is a company organized under the laws of the State of New Jersey with it principal place of business in Hackensack, New Jersey.

26.    Upon information and belief, Mian Realty is a limited liability corporation organized under the laws of the State of New Jersey whose post office address is 452 Steeplechase Lane, Bridgewater, New Jersey.

27.    Upon information and belief, Kirby Realty is a is a limited liability corporation organized under the laws of the State of New Jersey whose post office address is 237 South Street, P.O. Box 2049, Morristown, New Jersey.

28.    Jackson, the State of New Jersey, NJDEP, Mian Realty, Kirby Realty, the United States Defendants and Sanzari Enterprises may be found, conduct their affairs, and render services within the District of New Jersey.

## FACTUAL BACKGROUND

### A.    The Somerville Iron Works Site

29.    The Somerville Iron Works Site consists of land in the Borough of Somerville in Somerset County, New Jersey, that includes, at least, three distinctive parcels:

(1)    the F Sharp Screw Parcel, which is approximately seven acres of vacant land situated at 40 Haynes Street, referred to on local tax maps at Block 50, Lots 3, 13 and 14, and which is bordered to the south by a New Jersey Transit rail line, to the west

by a parcel owned by Truckform, Inc., to the north by several residential buildings, and to the east by a 2.5 acre parcel, which currently is occupied by an office building and a parking lot;

(2)    a parcel of approximately 2.5 acres situated at 6 Kirby Avenue, referred to on local tax maps as Block 1, Lot 4.02 (the "6 Kirby Avenue Parcel"), and which is bordered to the south by a New Jersey Transit rail line, to the west by the F Sharp Screw Parcel, to the north by Kirby Avenue, and to the east by an 11.25 acre parcel; and

(3)    a parcel of approximately 11.25 acres situated at 50 Kirby Avenue, referred to on local tax maps as Block 1, Lot 4.02 (the "50 Kirby Avenue Parcel"), and which is bordered to the south by a New Jersey Transit rail line, to the west by the 6 Kirby Avenue Parcel, to the north by Kirby Avenue, and to the east by several residential parcels.

30.    The Somerville Iron Works Site was previously the location of several commercial and industrial buildings, situated on the F Sharp Screw Parcel, and a sanitary landfill facility, situated on the F Sharp Screw Parcel, 6 Kirby Avenue Parcel and 50 Kirby Avenue Parcel.

31.    Upon information and belief, the Somerville Iron Works purchased the F Sharp Screw Parcel in the early 1900s, and purchased the 6 Kirby Avenue Parcel and 50 Kirby Avenue Parcel in 1920.

32.    Upon information and belief, from on or about 1916 until its purchase of the 6 Kirby Avenue Parcel and the 50 Kirby Avenue Parcel in 1920, the Somerville Iron Works used the 6 Kirby Avenue Parcel and 50 Kirby Avenue Parcel as a sanitary landfill facility pursuant to a license with owner of the owner of the parcels.

33.    Upon information and belief, Somerville Iron Works and/or its lessees and/or other third parties operated a sanitary landfill facility at the Somerville Iron Works Site from on or about 1916 until on or about 1952.

34.    Upon information and belief, a portion or portions of the sanitary landfill

50417                                           9

facility at the Somerville Iron Works were situated on the F Sharp Screw Parcel.

35.    Upon information and belief, Columbia Aircraft Products, Inc. ("Columbia Aircraft") leased and operated the Somerville Iron Works Site from the 1940s through the early 1950s.

36.    Upon information and belief, the Somerville Iron Works sold the Somerville Iron Works Site to the Johnson Bronze Company on November 26, 1952.

37.    Upon information and belief, Alfred Sanzari, founder, chairman and sole shareholder of Sanzari Enterprises, purchased the F Sharp Screw Parcel on June 15, 1976 from Edwin Schwartz and the Estate of Raymond Schwartz, doing business as Bonnie Realty Corp.

38.    Upon information and belief, at various times from 1976 through 1990, Sanzari Enterprises held itself out as the owner of the F Sharp Screw Parcel and enjoyed the benefits of ownership.

39.    At various times from 1976 until 1990, Sanzari Enterprises leased portions of the F Sharp Screw Parcel to several commercial and industrial tenants, including tenants who operated within the two primary buildings at the F Sharp Screw Parcel.  The eastern building contained tenants including Dande Plastics and F Sharp Screw (the "Dande Plastics Warehouse"); tenants including JANR Transport occupied the western building (the "JANR Warehouse").  NJDEP has also referred to the JANR Warehouse as "Signo II."

40.    On July 30, 1984, Sanzari Enterprises filed a Verified Complaint in the New Jersey Superior Court, Chancery Division, Somerset County against various individuals and corporations who owned hazardous and other materials stored in the JANR warehouse, seeking an order compelling the owners to remove all such materials from the JANR Warehouse.

41.    Upon information and belief, Bilal A. Mian and Shakila Mian purchased the 6 Kirby Avenue Parcel on July 29, 1987.  Upon information and belief, on December 29, 1986, Bilal A. Mian and Shakila Mian transferred the 6 Kirby Avenue Parcel to Mian Realty Partners, L.P., who, in turn, transferred the property to Mian Realty on March 19, 1997.  Upon information and belief, Mian Realty is the present owner of the 6 Kirby Avenue Parcel.

50417                                        10

42.    Upon information and belief, Kirby Realty purchased the 50 Kirby Avenue parcel on December 3, 1999, and is the present owner of the 50 Kirby Avenue Parcel.

**B.    The United States Defendants' Control of Wartime Economy**

43.    At various times during and after World War II, the United States Defendants owned and/or operated the Somerville Iron Works Site or facilities at the Somerville Iron Works Site, and/or managed, directed or conducted operations at the Somerville Iron Works Site, including operations specifically related to the leakage or disposal of "hazardous substances" as defined in CERCLA.

44.    Prior to the entry by the United States into World War II, and during and after World War II, Congress enacted broad statutes, which the United States implemented through the issuance of regulations and executive orders designed to mobilize the United States government and economy in the interests of national defense, to build and operate plants and facilities for the manufacture of war material, and to buy or otherwise control facilities, material, equipment, and supplies deemed by the United States to be strategic and critical.  Collectively, these statutes, regulations, and executive orders provided the United States with extraordinary powers to control the economy and individual plants and facilities in the interests of national defense and to compel the production of products critical to the war effort.

45.    At various times before, during and after World War II, Congress enacted statutes which the United States Defendants implemented through the issuance of regulations and executive orders designed to mobilize the United States government and economy in the interests of national defense, to build and operate plants and facilities for the manufacture of war material, and to buy, commandeer or otherwise control the industrial facilities, material, equipment, and supplies deemed by the Defendants to be strategic and critical for the war effort.  By virtue of these statutes, regulations, and executive orders, the United States Defendants were provided with, and in fact did exercise, the power to control the economy and individual plants, including the Somerville Iron Works Site or facilities at the Somerville Iron Works Site, in the interests of

50417                                11

national defense.

46.    At various times before, during and after World War II, in order to satisfy

their military needs, the United States Defendants required private corporations to install

machinery and equipment owned by the United States Defendants at various plants, and required

such corporations to operate such equipment to manufacture various products for the United

States Defendants' use in the national defense.

47.    At various times before, during and after World War II, in order to satisfy

their military needs, the United States Defendants supplied raw materials that they owned, and

which contained hazardous substances, for the manufacture of various products for United States

Defendants' use in the national defense.

48.    At various times before, during and after World War II, in order to satisfy

their military needs, the United States Defendants required private corporations to expand

existing facilities and construct new facilities for the manufacture of various products for the

United States Defendants' use in the national defense.

49.    The requirements imposed by the United States Defendants on private

industry were memorialized in various agreements prepared by the United States Defendants,

which private corporations were required to execute under threat of seizure by the United States

Defendants of their plants and businesses.

C.    **United States' Activities at the Somerville Iron Works Site**

50.    In or about 1941, the United States Defendants deemed aircraft production

a priority for national defense.

51.    In or about 1942, the United States Defendants declared that the expansion

of Columbia Aircraft's existing capacity at the Somerville Iron Works Site for the production of

precision parts for military aircraft required by the United States Defendants for national defense

was essential to the national war effort.

52.    In or about 1942, the United States Defendants required that Columbia

Aircrafts acquire additional machinery and equipment for use at is facilities located at the

Somerville Iron Works in order to expedite the manufacture and delivery of precision parts for

military aircraft to the United States Defendants and/or the United States Defendants' contractors

and suppliers.

53.    Beginning in or about 1942 and throughout World War II, Columbia

Aircraft entered into a contract or contracts with the United States Defendants or with suppliers

or contractors of the United States Defendants for the manufacture and furnishing of precision

aircraft parts in order to enable such suppliers or contractors perform contracts with the United

States Defendants.

54.    On or about February 28, 1942, the United States Defendants and

Columbia Aircraft entered into an Agreement of Lease covering the lease of machinery and

equipment by the United States Defendants to Columbia Aircraft for the purpose of enabling

Columbia Aircraft to increase its capacity for the production of precision parts for military

aircraft for use by the United States Defendants and/or the United States Defendants' contractors

and suppliers.

55.    Machinery and equipment provided to Columbia Aircraft by the United

States Defendants pursuant to the Agreement of Lease, amendments thereto and/or other

contracts between Columbia Aircraft and the United States Defendants included boring mills,

grinding machines, lathers, milling machines and shapers.

56.    At various times before, during and after World War II, pursuant to the

Agreement of Lease, amendments thereto and/or other contracts between Columbia Aircraft and

the United States Defendants, Columbia Aircraft operated the Somerville Iron Works Site to

produce war material for the United States Defendants and/or the United States Defendants'

contractors including aircraft piston pins, crankshafts, bearing covers, flanges, connections and

bolts, and to modify 75 mm shells.

57.    Upon information and belief, the United States Defendants, through the

Reconstruction Finance Corporation and Defense Plant Corporation and successor agencies

thereto, and through its suppliers and contractors, supplied machinery, equipment, and raw materials that contained hazardous substances for production of war material, and contracted with Columbia Aircraft to operate said facilities on behalf of the United States Defendants throughout World War II.

58.    Upon information and belief, the United States Defendants and/or the United States Defendants' contractors and suppliers mandated the specific nature and volume of the products manufactured at the Somerville Iron Works Site, as well as controlled the production processes utilized at the Somerville Iron Works Site.

59.    Upon information and belief, the United States retained and exercised the authority to direct the disposal, including the means and methods of disposal, of waste, scrap, defective or unused property at the Site.

60.    Upon information and belief, Columbia Aircraft's and the United States Defendants' operations at Somerville Iron Works Site included the hardening, heat treating, cleaning, degreasing and testing of materials used to manufacture precision aircraft parts.

61.    Upon information and belief, the hardening, heat treating, cleaning, degreasing and testing of materials used to manufacture precision aircraft parts by the United States Defendants and Columbia Aircraft at the Somerville Site required the use of trichloroethylene (TCE) as a cleaning and degreasing solvent.

62.    Upon information and belief, the United States Defendants and Columbia Aircraft utilized the sanitary landfill facility present at the Somerville Iron Works for the disposal of solid and hazardous waste, including, but not limited to, spent solvents and sludge from cleaning and degreasing operations at the Somerville Site.

63.    Upon information and belief, the disposal of spent solvents and sludge from cleaning and degreasing operations at the Somerville Site resulted in the release of TCE at the Somerville Site.

64.    Through its control of the wartime economy in general, and through specific agreements with Columbia Aircraft, the United States exercised actual, substantial, and

pervasive control over Columbia Aircraft and the Somerville Iron Works Site during and after

World War II, including managing, directing and conducting operations specifically related to

the leakage or disposal of hazardous waste, and decisions about compliance with environmental

regulations.

       65.     As a result of the United States Defendants' operations at the Somerville

Iron Works Site, the United States Defendants have released and continue to release hazardous

substances into groundwater that has migrated to and continues to migrate underneath the

Somerville Iron Works Site, causing Plaintiffs to incur response costs.

**D.**    **NJDEP Activities at the Somerville Iron Works Site**

    *1. The NJDEP Removal at Signo I*

       66.     On or about April 11, 1983, NJDEP responded to a chemical fire at a

warehouse located at 140 Thomas Street in Newark, New Jersey, which was owned by Signo

Trading International ("Signo I").

       67.     NJDEP found approximately 20,000 containers and 6,500 metal drums of

hazardous substances illegally stored at Signo I.

       68.     On or about July 15, 1983, the Superior Court of New Jersey ordered that

all hazardous materials be removed from Signo I.  The court order placed supervisory authority

on NJDEP to ensure that hazardous materials were transferred to a properly licensed storage

facility capable of storing hazardous materials.

       69.     Beginning on or about October 13, 1983, more than 12,000 containers

were transported from Signo I to the Somerville Iron Works Site, and stored in, at least, the

JANR Warehouse.  These containers held numerous hazardous substances, including corrosive,

toxic, flammable and potentially explosive compounds.

       70.     The containers transported from Signo I to the Somerville Iron Works Site

also included "off spec" materials and waste owned by the United States Defendants.

       71.     The JANR Warehouse did not have proper permits for storage of

hazardous materials.

72.    The containers and drums transported to the Somerville Iron Works Site were improperly and haphazardly stored, and many containers were deteriorating and leaking due to corrosion and/or other chemical reactions.

73.    In or about October 1984, a report commissioned by NJDEP to chronicle conditions at the Somerville Iron Works Site concluded that the conditions at the Somerville Iron Works Site "constitute[d] an immediate danger to life, and public health."

*2.  NJDEP Activities at the Somerville Iron Works Site*

74.    In or about March 1985, NJDEP requested proposals for work for staging, sampling and removing the hazardous substances stored and discharged at the Somerville Iron Works Site.

75.    NJDEP awarded the sampling and removal work to Clean Ventures.

76.    NJDEP mandated that Clean Ventures implement security measures at the Somerville Iron Works Site, including the selecting and deploying of private security guard services; mandating the use of protective fencing and lighting; and controlling access to the Somerville Iron Works Site in a manner that limited access to persons approved by NJDEP.

77.    NJDEP retained and exercised the authority to direct the disposal, including the means and methods of disposal of hazardous substances located at the Somerville Iron Works Site.

78.    NJDEP retained and exercised the authority to provide consultation and to control the means, methods, and locations for the treatment or disposal of wastes generated during the course of operations at the Site.

79.    Numerous spills of hazardous substances occurred inside and outside of the warehouses during the NJDEP's operation of the Somerville Iron Works Site.

80.    For example, under NJDEP oversight, Clean Ventures created two bulk

solid waste piles, which included leachate collection trenches. Clean Ventures dumped bulked

hazardous substances onto the waste piles and in the leachate trenches prior to final removal.

81.    Clean Ventures also constructed a liquid pool on the ground, into which it

dumped water-soluble hazardous substances.

82.    On or about April 25, 1986, 300 to 500 gallons of bulk hydrochloric acid

spilled to the ground from a stainless steel tanker maintained at the Somerville Iron Works Site.

83.    Despite Clean Ventures' negligent response actions, NJDEP failed to

intervene and require that Clean Ventures conduct the removal action at the Somerville Iron

Works Site in accordance with NJDEP regulations.

84.    Contrary to NJDEP's established regulations and protocols, NJDEP failed

to conduct or require any sampling upon completion of the removal action to confirm that any

contamination caused by these spills and discharges had been properly remediated.

### 3. The Dande Plastics Fire

85.    On December 29, 1985, during the NJDEP's removal work at the

Somerville Iron Works Site, a fire destroyed the Dande Plastics Warehouse, which was located

adjacent to the JANR Warehouse.

86.    Upon information and belief, the fire at the Dande Plastics Warehouse was

caused by arson, and by the presence of flammable liquids inside the building.

### 4. Post-Removal Action Sampling and Remediation

87.    Prior to and during NJDEP's removal action at the Somerville Iron Works

Site, NJDEP repeatedly indicated that it would perform environmental sampling after the

completion of the removal action to ensure that no further environmental contamination had

occurred during NJDEP's removal action.

88.    Despite NJDEP's initial determination that such post-removal action

sampling would occur, and despite NDJEP's knowledge of Clean Ventures' negligent response

actions at the Somerville Iron Works Site, NJDEP elected not to conduct confirmatory sampling

at the conclusion of the removal action.

89.    In September 1987, NJDEP stated, "all post cleanup sampling planned by the Division of Hazardous Site Mitigation has been waived."

90.    Through its control of removal activities at the Somerville Iron Works Site, and through its contracts with Clean Ventures in particular, the State of New Jersey, NJDEP, Jackson and/or Jackson's predecessors-in-title exercised actual, substantial, and pervasive control over Clean Ventures and the Somerville Iron Works Site during and after the removal activities from on or about 1983 through 1987, including managing, directing and conducting operations specifically related to the leakage or disposal of hazardous waste, and decisions about compliance with environmental regulations.

**F.    Sale of the F Sharp Screw Parcel to Sheldon Goldstein**

91.    On October 12, 1984, NJDEP issued a Directive Letter ("Directive") to Sanzari Enterprises, in which NJDEP determined that conditions at the F Sharp Screw Parcel "constitute a danger to the environment and to the public health, safety and welfare and are violative of the laws of the State of New Jersey," and, pursuant to the Spill Act, directed Sanzari Enterprises to initiate remedial measures at the F Sharp Screw Parcel.

92.    On October 26, 1984, attorneys for Sanzari Enterprises replied to the Directive.  In Sanzari Enterprises' reply, it acknowledged that Sanzari Enterprises was "owner of the warehouse premises on Haynes Avenue in Somerville."

93.    Since 1985, the F Sharp Screw Parcel has been and continues to be investigated under the New Jersey Environmental Cleanup Responsibility Act ("ECRA"), now known as the Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6 *et seq.*, under three ISRA/ECRA cases numbers (Nos. 85647, 85648 and 85649) assigned by NJDEP (each related to one of the three former tenants of Alfred Sanzari and/or Sanzari Enterprises).

94.    In or about 1985, Sheldon Goldstein entered into negotiations with Alfred Sanzari and Sanzari Enterprises to purchase the property.

50417                                              18

95.    During these negotiations, Sanzari Enterprises disclosed that a small amount of toxic waste had been stored at the F Sharp Screw Parcel, and that it was remediating the property pursuant to ECRA.

96.    On August 6, 1985, the parties entered into an Agreement of Sale, which gave Goldstein the option to purchase the F Sharp Screw Parcel, so long as Alfred Sanzari's and Sanzari Enterprises' ECRA-related costs were less than $100,000.

97.    Pursuant to the Agreement of Sale, Alfred Sanzari agreed to assign to Goldstein eleven (11) leases relating to the F Sharp Screw Parcel between Sanzari Enterprises, as landlord, and various tenants.

98.    The Agreement of Sale did not disclose the existence of a sanitary landfill facility on the F Sharp Screw Parcel.

99.    Eventually, negotiations for the sale of the property broke off, Alfred Sanzari and Sanzari Enterprises refused to sell the F Sharp Screw Parcel, and Goldstein brought suit against Alfred Sanzari in Superior Court, Morris County, for specific performance of the Agreement of Sale.

100.    Upon information and belief, on January 27, 1989, Sanzari Enterprises received a Partial Cleanup Plan Approval for the F Sharp Screw Parcel from NJDEP.

101.    On April 10, 1989, Goldstein and Alfred Sanzari agreed to settle the lawsuit. The parties agreed that Goldstein would purchase the F Sharp Screw Parcel, and pay all ECRA costs in excess of $100,000, subject to Goldstein's receipt of groundwater testing results.

102.    On or about April 28, 1989, Goldstein elected to proceed with the transaction and purchase the F Sharp Screw Parcel.

103.    Almost immediately, Alfred Sanzari demanded that closing of the sale of the Somerville Iron Works Site occur prior to Sanzari Enterprises' completion of the ECRA cleanup at the F Sharp Screw Parcel.

104.    Upon cross-motions by both parties, on June 12, 1989, the Superior Court held that the closing take place either upon Sanzari Enterprises' receipt of a "Negative

Declaration" under ECRA or upon NJDEP's approval of Sanzari Enterprises' Clean Up Plan.

105.    In June 1989, Sanzari Enterprises' consultant issued additional groundwater sampling results. The results revealed significant concentrations of TCE at the F Sharp Screw Parcel.

106.    On October 31, 1989, NJDEP approved the Clean Up Plan submitted by Sanzari Enterprises for the F Sharp Screw Parcel.

107.    As part of its Clean Up Plan approval, NJDEP noted that recent "groundwater data indicated that operations on [the F Sharp Screw Parcel] may have contributed to offsite contamination." Accordingly, NJDEP required additional groundwater remedial activity that was not contemplated by the parties as part of Sanzari Enterprises' Clean Up Plan for the F Sharp Screw Parcel.

108.    On November 17, 1989, Alfred Sanzari moved the Superior Court to enforce the Settlement Agreement and order Goldstein to close on the F Sharp Screw Parcel, despite the fact that the June 1989 testing results revealed significant contamination that was not contemplated by the parties, and despite the fact that NJDEP had found that hazardous substances were emanating from the F Sharp Screw Parcel.

109.    In a decision dated December 15, 1989, the Superior Court ordered Goldstein to purchase the F Sharp Screw Parcel according to the Agreement of Sale and the April 10, 1989 settlement, despite the existence of TCE groundwater contamination at the F Sharp Screw Parcel that had not been contemplated by the parties at the time of the Agreement of Sale or Settlement Agreement.

110.    On January 18, 1990, Alfred Sanzari filed a Motion to Enforce Litigant's Rights or, in the Alternative, to Establish Contempt, requesting that the Court find Goldstein in contempt unless he purchased the F Sharp Screw Parcel pursuant to the Agreement of Sale and the April 10, 1989 settlement.

111.    On February 14, 1990, Goldstein involuntarily accepted title to the F Sharp Screw Parcel.

20

112.    The Deed transferring ownership the F Sharp Screw Parcel to Goldstein purports to transfer all of Sanzari Enterprises' liability under ECRA to Goldstein.

113.    The Deed did not disclose the existence of a sanitary landfill facility on the F Sharp Screw Parcel.

114.    Goldstein transferred title to the F Sharp Screw Parcel to Litgo on April 18, 1990.

115.    Plaintiffs have never conducted any activities whatsoever on the F Sharp Screw Parcel or the Somerville Iron Works Site other than remedial activities described below, nor have Plaintiffs ever leased the F Sharp Screw Parcel to any company or person conducting industrial, chemical or manufacturing activities at the F Sharp Screw Parcel.

### G.    Hazardous Waste at the Somerville Iron Works Site

116.    In February and March 2000, Plaintiffs excavated approximately 5,600 tons of soil and/or historic fill from the southeastern portion of the F Sharp Screw Parcel.

117.    On September 4, 2001, NJDEP indicated that no further action for soils was required at the F Sharp Screw Parcel.

118.    Groundwater sampling conducted by Plaintiffs at the Somerville Iron Works Site, including from the 6 Kirby Avenue Parcel, from the late 1980s to the present demonstrates that Columbia Aircraft's World War II production of precision aircraft parts at the Somerville Iron Works Site and disposal of waste at the Somerville Iron Works Site, conducted under the direction and control of the United States, is the cause of significant contamination at or emanating from the Somerville Iron Works Site.

119.    Groundwater sampling conducted by Plaintiffs at the Somerville Iron Works Site, including the 6 Kirby Avenue Parcel, from the late 1980s to the present demonstrates that NJDEP's removal action at the F Sharp Screw Parcel, which occurred while Sanzari Enterprises owned or operated facilities the Somerville Iron Works Site, is the cause of significant contamination at or emanating from the property.

50417                                    21

120.    Hazardous substances, including but not limited to TCE, iron, polynuclear aromatic hydrocarbons, manganese, methylene chloride, 1,1-dichloroethene, 1,1-dichloroethane, 1,1,1-trichloroethane, 1,1,2-trichloroethane, cis-1,2-dichloroethene, trans-1,2-dichloroethane, and carbon tetrachloride, are present in groundwater beneath or flowing from the Somerville Iron Works Site, as indicated in the Remedial Investigation Report/Remedial Action Workplan ("RIR/RAW"), prepared by JM Sorge, Inc., on behalf of Litgo.

121.    The RIR/RAW identifies two Areas of Concern ("AOCs") at the Somerville Iron Works Site, which present an imminent and substantial endangerment to health or the environment: the Western and Eastern Groundwater Plumes.

122.    The Western Groundwater Plume comprises the western portion of the Somerville Iron Works Site, and concentrations of TCE and cis-1,2-dichloroethene have been detected in this area since monitoring wells were installed in 1989.

123.    The Eastern Groundwater Plume is located in the southeastern portion of the F Sharp Screw Parcel, the 6 Kirby Avenue Parcel, and along the railroad tracks, and groundwater sampling from this area shows elevated concentrations of volatile organic compounds (VOCs), including TCE and cis-1,2-dichloroethene.

124.    The RIR/RAW concludes that a high vacuum soil vapor extraction system may be the best appropriate technology for remediation of any potential remaining source material contributing to the Eastern Groundwater Plume.

125.    Upon information and belief, the Eastern Groundwater Plume is migrating off the Somerville Iron Works Site in a southeasterly direction toward the Manville Borough municipal drinking water wells, located approximately 0.5 miles southeast of the Somerville Iron Works Site.

126.    Plaintiffs have notified NJDEP of the presence of hazardous substances at the Somerville Iron Works Site and the threats posed by the groundwater AOCs to the Manville Borough municipal wells, and have requested that these conditions be addressed. Neither Jackson nor her predecessor in office has taken such actions as may be necessary to address the

50417                                        22

threats to health or the environment.

127.    The State of New Jersey, NJDEP and Jackson's predecessors in office have contributed to the past or present handling, storage, treatment, transportation, or disposal of hazardous waste and/or solid waste at the Somerville Iron Works Site, which may present an imminent and substantial endangerment to the environment.

128.    Pursuant to RCRA, 42 U.S.C. § 6972(a)(1)(B), any person may commence a civil action on his own behalf "against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment," provided that  the requisite notice of at least ninety days is given pursuant to RCRA, 42 U.S.C. § 6972(b)(2)(A).

129.    The State of New Jersey, NJDEP, Jackson and/or Jackson's predecessors in office are in violation of RCRA, as they have contributed or are contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste, which may present an imminent and substantial endangerment to health or the environment.

## H.    Defendants' Ownership of the Somerville Iron Works Site

130.    The State of New Jersey, NJDEP, the United States Defendants and Sanzari Enterprises were the owners of the Somerville Iron Works Site or facilities at the Somerville Iron Works Site, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), during times when hazardous substances were disposed of at the Somerville Iron Works Site.

131.    Mian Realty is the current owner of the 6 Kirby Avenue Parcel within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

132.    Kirby Realty is the current owner of the 50 Kirby Avenue Parcel within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

**I.    Defendants' Operation of the Somerville Iron Works Site**

133.    During and after World War II, the United States Defendants were the operators of the Somerville Iron Works Site or facilities at the Somerville Iron Work Site, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), during times when hazardous substances were disposed of, because the United States Defendants managed, directed or otherwise conducted operations, including operations specifically related to the acquisition, storage, use and disposal (including leakage) of hazardous substances.

134.    From 1976 until 1990, Sanzari Enterprises was the operator of the Somerville Iron Works Site or facilities at the Somerville Iron Works Site, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), during times when hazardous substances were disposed of, because Sanzari Enterprises managed, directed or otherwise conducted operations, including operations specifically related to the acquisition, storage, use and disposal (including leakage) of hazardous substances.

135.    During and after the removal of hazardous substances from Signo I to the Somerville Iron Works Site, and during and after the removal of hazardous substances from the Somerville Iron Works Site,  the State of New Jersey and NJDEP were the operators of the Somerville Iron Works Site or facilities at the Somerville Iron Works Site, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), during times when hazardous substances were disposed of, because the State of New Jersey and NDJEP managed, directed or otherwise conducted operations, including operations specifically related to the acquisition, storage, use and disposal (including leakage) of hazardous substances.

**J.    Defendants' Arrangement for Disposal of Hazardous Substances**

50417                                      24

136.    During or after World War II, the United States Defendants arranged for the disposal or treatment of hazardous substances at the Somerville Iron Works Site, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), because the United States Defendants, by contract, agreement or otherwise, arranged for disposal or treatment of hazardous substances owned or possessed by the United States at the Somerville Iron Works Site; and/or the United States Defendants owned and supplied raw materials containing hazardous substances for use in production at the Somerville Iron Works Site.  At the time hazardous substances were released, the United States Defendants controlled the work done at the Somerville Iron Works Site that resulted in the generation and release of hazardous substances at the Somerville Iron Works Site, were aware that the generation, treatment and disposal of hazardous substances were inherent in the production process conducted at the Somerville Iron Works Site, and were aware of the release of hazardous substances at the Somerville Iron Works Site.

137.    Prior to and during the NJDEP-supervised removal action at Signo I, the State of New Jersey and NJDEP arranged for the disposal or treatment of hazardous substances at the Somerville Iron Works Site, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), because the State of New Jersey and NJDEP, by contract, agreement or otherwise, arranged for disposal or treatment, and/or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by NJDEP or other parties or entities from Signo I to the Somerville Iron Works Site.  At the time hazardous substances were released, the State of New Jersey and NJDEP controlled the removal of hazardous substances from Signo I to the Somerville Iron Works Site that resulted in the disposal and release of hazardous substances at the Somerville Iron Works Site, were aware that the release of hazardous substances was inherent in the removal process, and were aware of the release of hazardous substances at the Somerville Iron Works Site.

138.    During and after the NJDEP-supervised removal action at the Somerville Iron Works Site, the State of New Jersey and NJDEP arranged for the disposal or treatment of hazardous substances at the Somerville Iron Works Site, within the meaning of Section 107(a) of

25

CERCLA, 42 U.S.C. § 9607(a), because the State of New Jersey and NJDEP, by contract, agreement or otherwise, arranged for disposal or treatment, and/or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by the State of New Jersey, NJDEP or by other parties or entities at the Somerville Iron Works Site.  At the time hazardous substances were released, the State of New Jersey and NJDEP controlled the removal of hazardous substances from Somerville Iron Works Site that resulted in the disposal and release of hazardous substances at the Somerville Iron Works Site, were aware that the release of hazardous substances was inherent in the removal process, and were aware of the release of hazardous substances at the Somerville Iron Works Site.

## FIRST CAUSE OF ACTION

### INJUNCTIVE RELIEF UNDER RCRA § 7002(A)(1)(B) AGAINT JACKSON

139.    Plaintiffs incorporate by reference Paragraphs 1 to 138 above, inclusive, as though set forth fully herein.

140.    Jackson and/or Jackson's predecessors in office are each a "person" as defined in 42 U.S.C. § 6903(15).

141.    Hazardous substances were disposed of at the Somerville Iron Works Site during the time NJDEP and Jackson's predecessors in office managed, directed or otherwise conducted operations at the Somerville Iron Works Site.  The presence of hazardous substances at the Somerville Iron Works Site, which pose an imminent and substantial endangerment, is a direct and proximate result of the actions of NJDEP at the Somerville Iron Works Site.  Jackson and/or Jackson's predecessors in office are or were an "operator" of the Somerville Iron Works Site, and a "generator" and "transporter" of hazardous and solid wastes disposed of at the Somerville Iron Works Site within the meaning of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).  As such, Jackson and/or Jackson's predecessors in office are persons who have contributed or are contributing to the past or present handling, storage, treatment, transportation,

or disposal of solid or hazardous waste at the Somerville Iron Works Site.

142.    The past or present handling, storage, treatment, transportation, or disposal
of solid waste, as that term is defined in Section 1004(27) of RCRA, 42 U.S.C. § 6903(27),
and/or hazardous waste, as that term is defined in Section 1004(5) of RCRA, 42 U.S.C. §
6903(5), by Jackson and/or by Jackson's predecessors in office at the Somerville Iron Works Site
have resulted in actual or threatened releases of hazardous substances at the Somerville Iron
Works Site, which may present an imminent and substantial endangerment to the environment.

143.    The RIR/RAW indicates that hazardous substances, including but not
limited to trichloroethylene (TCE), iron, polynuclear aromatic hydrocarbons, manganese,
methylene chloride, 1,1-dichloroethene, 1,1-dichloroethane, 1,1,1-trichloroethane, 1,1,2-
trichloroethane, cis-1,2-dichloroethene, trans-1,2-dichloroethane, and carbon tetrachloride, which
may present an imminent and substantial endangerment to the environment, are present at the
Somerville Iron Works Site.

144.    Over ninety days ago, by letter dated October 14, 2005, Plaintiffs gave
NJDEP and Jackson, through her predecessor in office, the requisite Notice of Endangerment in
accordance with Section 7002(b)(2)(A) of RCRA, 42 U.S.C. § 6972(b)(2)(A) and 40 C.F.R. Part
240, § 254.1 ("RCRA Notice Letter") by mailing, via certified mail, the RCRA Notice Letter to
the Commissioner of NJDEP, the Attorney General of the State of New Jersey, the Administrator
of the Environmental Protection Agency, and the Attorney General of the United States. Neither
Jackson nor Jackson's predecessor in office has agreed to investigate the hazardous substances
and hazardous and/or solid waste at the Somerville Iron Works Site and conduct remediation as
demanded by the RCRA Notice Letter.

145.    Plaintiffs has standing to sue under the citizen suit provision of RCRA §
7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) whereby, "any person may commence a civil action on
his own behalf ... against any person, including the United States and any other governmental
instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution,
and including any past or present generator, past or present transporter, or past or present owner

or operator of a treatment, storage, or disposal facility, who has contributed or who is

contributing to the past or present handling, storage, treatment, transportation, or disposal of any

solid or hazardous waste which may present an imminent and substantial endangerment to health

or the environment," provided that the requisite notice of at least ninety days is given pursuant to

RCRA, 42 U.S.C. § 6972(b)(2)(A).

146.    Plaintiffs seek injunctive relief under RCRA ordering Jackson, in her

official capacity as Commissioner of NJDEP, to take such actions as may be necessary to

investigate, abate and remediate any imminent and substantial endangerment posed to health and

the environment at the Somerville Iron Works Site.

147.    Pursuant to 42 U.S.C. § 6972(e), Plaintiffs seek an award of the costs of

this litigation including but not limited to reasonable attorney and expert witness fees, and

including but not limited to similar fees to monitor Jackson's compliance with any orders or

judgments issued by any regulatory agency or this Court.


## SECOND CAUSE OF ACTION

**CONTRIBUTION UNDER THE SPILL ACT AGAINST THE STATE OF NEW JERSEY,
NJDEP, MIAN REALTY, KIRBY REALTY AND SANZARI ENTERPRISES**

148.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 147 of this Complaint as if fully set forth herein.

149.    Spill Act Section 58:10-23.11f(a)(2), N.J.S.A. § 58:10-23.11f(a)(2)

provides, in pertinent part, that "[w]henever one or more dischargers or persons cleans up and

removes a discharge of a hazardous substance, those dischargers and persons shall have a right of

contribution against all other dischargers and persons in any way responsible for a discharged

hazardous substance who are liable for the cost of the cleanup."

150.    Defendants State of New Jersey, NJDEP, Mian Realty, Kirby Realty and

Sanzari Enterprises are "persons" within the meaning of Spill Act Section 58:10-23.11b(o),

N.J.S.A. § 58:10-23.11b(o).

50417                                28

151.    "Discharges" within the meaning of Spill Act Section 58:10-23.11b(h), N.J.S.A. § 58:10-23.11b(h) have occurred at the Somerville Iron Works Site.

152.    "Hazardous Substances" within the meaning of Spill Act Section 58:10-23.11b(k), N.J.S.A. § 58:10-23.11b(k) have been discharged at the Somerville Iron Works Site.

153.    Defendants State of New Jersey, NJDEP, Mian Realty, Kirby Realty and Sanzari Enterprises are "dischargers" or "persons in any way responsible for a discharged hazardous substance" within the meaning of Spill Act Section 58:10-23.11f(a)(2), N.J.S.A. § 58:10-23.11f(a)(2).

154.    Plaintiffs have cleaned up and removed a discharge of a hazardous substance and have incurred and are incurring investigation and remediation costs.

155.    Pursuant to Spill Act Section 58:10-23.11f(a)(2), N.J.S.A. § 58:10-23.11f(a)(2), Plaintiffs are entitled to contribution from Defendants State of New Jersey, NJDEP, Mian Realty, Kirby Realty and Sanzari Enterprises and all investigation and remediation costs which Plaintiffs have or will occur, or for which Plaintiffs are deemed liable should be allocated among Defendants State of New Jersey, NJDEP, Mian Realty, Kirby Realty and Sanzari Enterprises and Plaintiffs, using such equitable factors as the Court deems appropriate, and consequential damages.

## THIRD CLAIM FOR RELIEF

### COST RECOVERY BASED UNDER SECTION 107(A) OF CERCLA AGAINST THE UNITED STATES DEFENDANTS, STATE OF NEW JERSEY, NJDEP, MIAN REALTY, KIRBY REALTY AND SANZARI ENTERPRISES

156.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 155 of this Complaint as if fully set forth herein.

157.    The Somerville Iron Works Site (including any buildings, materials and equipment thereon), the F Sharp Screw Parcel, the 6 Kirby Avenue Parcel and the 50 Kirby Avenue Parcel are "facilities" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. §

9601(9).

158.    Releases or threatened releases of hazardous substances into the
environment have occurred at the Somerville Iron Works Site and facilities at the Somerville
Iron Works Site, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

159.    The past handling, storage, treatment, transportation, or disposal of solid
or hazardous waste at the Somerville Iron Works Site and facilities at the Somerville Iron Works
Site by the State of New Jersey, NJDEP, and the United States Defendants has resulted in an
actual or threatened release of hazardous substances at the Somerville Iron Works Site.  NJDEP
has concluded that there is, or has been, a potential for a release of contaminants at or from the
Somerville Iron Works Site, which may present an unacceptable risk to the public health, safety,
welfare or the environment, and which is subject to corrective action.

160.    Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), provides
that any "covered person . . . shall be liable for  . . . any other necessary costs of response
incurred by any other person consistent with the national contingency plan."

161.    The United States Defendants, Sanzari Enterprises, the State of New
Jersey, NJDEP, Mian Realty and Kirby Realty are "persons" within the meaning of Section
101(21) of CERCLA, 42 U.S.C. § 9601(21).

162.    At various times during and after World War II, hazardous substances
were disposed of at the Somerville Iron Works Site at the time the United States Defendants
owned the Somerville Iron Works Site or facilities at the Somerville Iron Works Site.  The
United States Defendants thus are "owners" of the Somerville Iron Works Site or facilities at the
Somerville Iron Works Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. §
9607(a)(2), and are "covered persons" under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

163.    At various times during and after World War II, hazardous substances
were disposed of at the Somerville Iron Works Site at the time the United States Defendants
managed, directed or otherwise conducted operations at the Somerville Iron Works Site or
facilities at the Somerville Iron Works Site, including operations specifically related to the

acquisition, storage, use and disposal (including leakage) of hazardous substances. Thus, the United States Defendants are "operators" of the Somerville Iron Works Site or facilities at the Somerville Iron Works Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), and are "covered persons" under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

164.    The United States Defendants are persons who by contract, agreement, or otherwise arranged for the disposal or treatment of hazardous substances at the Somerville Iron Works Site, and thus are persons who by contract, agreement, or otherwise arranged for the disposal or treatment of hazardous substances at the Somerville Iron Works Site within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), and are "covered persons" under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

165.    At various times during and after between 1976 and 1990, hazardous substances were disposed of at the Somerville Iron Works Site, during which time Sanzari Enterprises owned the Somerville Iron Works Site or facilities at Somerville Iron Works Site. Thus, Sanzari Enterprises is an "owner" of the Somerville Iron Works Site or facilities at the Somerville Iron Works Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), and is a "covered person" under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

166.    At various times between 1976 until 1990, hazardous substances were disposed of at the Somerville Iron Works Site, during which time Sanzari Enterprises managed, directed or otherwise conducted operations at the Somerville Iron Works Site or facilities at the Somerville Iron Works Site, including operations specifically related to the acquisition, storage, use and disposal (including leakage) of hazardous substances. Thus, Sanzari Enterprises is an "operator" of the Somerville Iron Works Site or facilities at the Somerville Iron Works Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), and is a "covered person" under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

167.    Sanzari Enterprises is a person who by contract, agreement, or otherwise arranged for the disposal or treatment of hazardous substances at the Somerville Iron Works Site, and thus is a person who by contract, agreement, or otherwise arranged for the disposal or

treatment of hazardous substances at the Somerville Iron Works Site within the meaning of

Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), and is a "covered person" under Section

107(a) of CERCLA, 42 U.S.C. § 9607(a).

168.    At various times during and after the NJDEP-supervised removal action at

the Somerville Iron Works Site, hazardous substances were disposed of at the Somerville Iron

Works Site, during which time the State of New Jersey and NJDEP managed, directed or

otherwise conducted operations at the Somerville Iron Works Site or at facilities at the

Somerville Iron Works Site, including operations specifically related to the acquisition, storage,

use and disposal (including leakage) of hazardous substances.  Thus, the State of New Jersey and

NJDEP are "operators" of the Somerville Iron Works Site or facilities at the Somerville Iron

Works Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), and

are "covered persons" under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

169.    The State of New Jersey and NJDEP are persons who by contract,

agreement, or otherwise arranged for the disposal or treatment of hazardous substances at the

Somerville Iron Works Site, and thus are persons who by contract, agreement, or otherwise

arranged for the disposal or treatment of hazardous substances at the Somerville Iron Works Site

within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3) and are "covered

persons" under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

170.    The State of New Jersey and NJDEP's conduct with respect to the Signo I

removal action and subsequent removal activities at the Somerville Iron Works Site constitute

gross misconduct and/or intentional misconduct.

171.    The conduct of Clean Ventures with respect to removal activities at the

Somerville Iron Works Site was negligent, grossly negligent and constitutes intentional

misconduct.

172.    Mian Realty is the current owner of the 6 Kirby Avenue Parcel, and

therefore is a person who owns the Somerville Iron Works Site or facilities at the Somerville Iron

Work Site within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), and is a

"covered person" under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

173.    Kirby Realty is the current owner of the 50 Kirby Avenue Parcel, and therefore is a person who owns the Somerville Iron Works Site or facilities at the Somerville Iron Works Site within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), and is a "covered person" under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

174.    Plaintiffs have undertaken, and continue to undertake, response actions at the Somerville Iron Works Site in response to releases or threatened releases of hazardous substances, and have incurred and are incurring necessary costs of response consistent with the NCP.

175.    Pursuant to Section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), Plaintiffs are entitled to recover from the United States Defendants, Sanzari Enterprises, the State of New Jersey, NJDEP, Mian Realty and Kirby Realty response costs incurred in connection with the Somerville Iron Works Site, and all response costs incurred by Plaintiffs or for which Plaintiffs are deemed liable should be allocated between defendants using such equitable factors as the Court determines are appropriate.

## FOURTH CLAIM FOR RELIEF

### RECISSION UNDER SECTION 13:1E-116 OF THE CLOSURE ACT AGAINST SANZARI ENTERPRISES

176.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 175 of this Complaint as if fully set forth herein.

177.    Section 13:1E-116(a) of the Closure Act provides that "[n]o person shall contract to sell any land which has been utilized as a sanitary landfill facility at any time prior to the effective date of this supplementary act unless the contract of sale for the land shall state the fact and the period of time that the land was so utilized."

178.    Section 13:1E-116(b) of the Closure Act provides that "[a]ny contract

made in violation of this section is voidable."

179.    The F Sharp Screw Parcel constitutes "land which has been utilized as a sanitary landfill facility" pursuant to Section 13:1E-116(a) of the Closure Act.

180.    Alfred Sanzari and Sanzari Enterprises did not disclose in the Agreement of Sale or Deed that the F Sharp Screw Parcel had been utilized as a sanitary landfill facility in accordance with Section 13:1E-116(a) of the Closure Act.

181.    The Agreement of Sale and Deed are voidable pursuant to Section 13:1E-116(b) of the Closure Act.

182.    Pursuant to Section 13:1E-116(b) of the Closure Act, the Agreement of Sale and Deed should be rescinded and voided, and Plaintiffs are entitled to restitution of the purchase price plus interest and consequential damages from Sanzari Enterprises.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment in their favor and against Defendants as follows:

(1)    Ordering Defendant Jackson, in her official capacity as Commissioner of NJDEP, to take such actions as may be necessary to investigate, abate and remediate any imminent and substantial endangerment posed to health and the environment at the Somerville Iron Works Site;

(2)    Awarding Plaintiffs interest, attorney and expert witness fees, fees to monitor Jackson's compliance with any orders or judgments issued by any regulatory agency or this Court, and costs of suit;

(3)    Entering a declaratory judgment pursuant to 28 U.S.C. § 2201 against Jackson and in favor of Plaintiffs declaring, adjudging, and decreeing that Jackson has or is contributing

to the past or present handling, storage, treatment, transportation, or disposal of solid or

hazardous waste at the Somerville Iron Works Site, such judgment to be binding on any

subsequent action or actions by the Plaintiffs against Jackson to recover further costs associated

with the release or threatened release of hazardous substances at the Somerville Iron Works Site;

(4)    Allocating among Plaintiffs and the State of New Jersey, NJDEP, Mian Realty,

Kirby Realty and Sanzari Enterprises and any other persons found to be liable all response costs

incurred at or with respect to the Somerville Iron Works Site described herein, pursuant to

Section 58:10-23.11f(a)(2) of the Spill Act, N.J.S.A. § 58:10-23.11f(a)(2);

(5)    Entering a declaratory judgment pursuant to the Spill Act against the State of New

Jersey, NJDEP, Mian Realty, Kirby Realty and Sanzari Enterprises and in favor of Plaintiffs

declaring, adjudging, and decreeing that State of New Jersey, NJDEP, Mian Realty, Kirby Realty

and Sanzari Enterprises are liable to Plaintiffs for response costs or damages at the Somerville

Iron Works Site pursuant to Section 58:10-23.11f(a)(2) of the Spill Act, N.J.S.A. § 58:10-

23.11f(a)(2), such judgment to be binding on any subsequent action or actions to recover further

response costs or damages.

(6)    Awarding Plaintiffs cost recovery from the United States Defendants, the State of

New Jersey, NJDEP, Mian Realty, Kirby Realty and Sanzari Enterprises for all response costs

incurred at or with respect to the Somerville Iron Works Site pursuant to Section 107(a)(4)(B) of

CERCLA, 42 U.S.C. § 9607(a)(4)(B), and issuing an Order requiring the United States

Defendants, the State of New Jersey, NJDEP, Mian Realty, Kirby Realty and Sanzari Enterprises

to pay such amounts to Plaintiffs; and

(7)    Entering a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42

U.S.C. § 9613(g)(2), against the United States Defendants, the State of New Jersey, NJDEP,

Mian Realty, Kirby Realty and Sanzari Enterprises and in favor of Plaintiffs declaring,

adjudging, and decreeing that the United States Defendants, the State of New Jersey, NJDEP,

Mian Realty, Kirby Realty and Sanzari Enterprises are liable to Plaintiffs for response costs at

the Somerville Iron Works Site, such judgment to be binding on any subsequent action or actions

to recover further response costs;

   (8)  Rescission of the Agreement of Sale and Deed pursuant to Section 13:1E-116(b)

of the Closure Act, an order voiding the Deed granting title to the F Sharp Screw Parcel to

Goldstein, restitution of the purchase price plus interest from Sanzari Enterprises, and awarding

Plaintiffs consequential damages; and

   (9)  Awarding Plaintiffs any other such relief as the Court may deem just and proper.

Dated: December 17, 2007

           PATTON BOGGS LLP

           By: s/ John McGahren
           John McGahren (JM 3568)
           PATTON BOGGS LLP
           One Riverfront Plaza, 6th Floor
           Newark, New Jersey 07102
           Telephone: (973) 848-5600
           Facsimile: (973) 848-5601

           *Attorneys for Plaintiffs Litgo New Jersey, Inc.*
           *and Sheldon Goldstein*

50417              36

**EXHIBIT "B"**

GOLDSHORE, CASH & KALAC, P.C.
Crossroads Corporate Center
3150 Brunswick Pike, Suite 150
Lawrenceville, New Jersey 08648
Telephone: (609) 647-9840
Fax: (609) 637-9846
Attorneys for Defendant/
 Third Party Plaintiff, Mian Realty, L.L.C.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LITGO NEW JERSEY, INC., and
SHELDON GOLDSTEIN,

   Plaintiffs,

    v.

LISA JACKSON, in her official capacity
as the Commissioner of the New Jersey
Department of Environmental Protection, et al.,

   Defendants.

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

MIAN REALTY, L.L.C.,

   Defendant/Third Party Plaintiff,

v.

W.R. GRACE & CO.,

   Third Party Defendant.

:
:
:
:
:
:
:
:
:
:

Hon. Anne E. Thompson

Civil Action No. 06-2891(AET)(TB)

**THIRD PARTY COMPLAINT**

Defendant/Third Party Plaintiff, Mian Realty, L.L.C., successor to the interests of Mian

Realty Partners, L.P., and its partners, Bilal A. Mian and Shakila M. Mian, ("Mian"), through its

counsel, Goldshore, Cash & Kalac, P.C., by way of third party complaint hereby alleges, as follows:

## NATURE OF THE ACTION

1. The underlying action filed by Plaintiffs, Litgo New Jersey, Inc., and Sheldon Goldstein,

is an action for:  (a) for cost recovery under sections 107(a) and 113(f) of the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. sec.

9601 et seq. ("CERCLA");  (b) for recovery of costs under Section 58:10-23.11f(a)(2) of the New

Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11f(a)(2); (c) injunctive

relief under the Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq.; and (d) relief under various

common law causes of action.   A copy of the Second  Amended Complaint and Defendant/Third

Party Plaintiff's responsive pleading are attached hereto.

2. The underlying action pertains to the alleged disposal of hazardous substances on and

adjacent to the Somerville Iron Works Site in Somerville, New Jersey (the "Somerville Iron Works

Site").

3. In the underlying action, the Plaintiffs allege, among other things, that real property that

Mian purchased from W.R. Grace & Co. ("W.R.Grace"), in 1987 for $900,000, referred to therein

as the 6 Kirby Avenue Parcel, was at one time part of the Somerville Iron Works Site and that it was

used as a sanitary landfill facility.

4. Upon information and belief, Parents' Magazine Enterprises Inc., (PMEI), acquired the

property now known as the 6 Kirby Avenue Parcel in or about February 1966 from a related entity,

Somerville Industries, Inc., which acquired the site in January 1966.

5. Upon information and belief, at sometime prior to 1987, W.R. Grace acquired an ownership interest in the site as a result of a merger involving PMEI.

6. Upon information and belief, PMEI and/or W.R.Grace had a 2 story office building and associated parking area constructed on site in or about 1972, during the course of which construction activities hazardous substances present on the site were spread and otherwise disposed of.

7. Upon information and belief, W.R. Grace was or should have been aware of the fact that the 6 Kirby Avenue Parcel was used as a landfill by the Somerville Iron Works. Nevertheless, W. R. Grace failed to so advise Mian and failed to comply with the provision of the New Jersey Sanitary Landfill Closure and Contingency Fund Act, N.J.S.A. 13:1E-100 et. seq., requiring that the existence of such a landfill be disclosed in any contract of sale.

8. Upon information and belief, during the time of its ownership of the 6 Kirby Avenue Parcel, W.R. Grace, and/or its predecessor in title, PMEI, undertook activities on the property which resulted in the "disposal" of hazardous substances at that site.


## JURISDICTION AND VENUE

9. This Third Party Complaint arises out of the same transactions and occurrences which are set forth in the Second Amended Complaint filed by Plaintiffs, Litgo New Jersey, Inc., and Sheldon Goldstein, against, among others, Defendant/Third Party Plaintiff, Mian Realty, L.L.C. Assuming jurisdiction and venue are proper with respect to the Second Amended Complaint, they are proper with respect to the third party claims set forth herein.

3

## COUNT I

### CERCLA 107(a)

10.  Mian incorporates the allegations of Paragraphs 1 to 9 above, as if they were set forth herein.

11.  Section 107 of CERCLA, provides, among other things, that any person who owned or operated a facility at the time of the disposal of any hazardous substances is liable for the necessary costs of response incurred by any other person consistent with the NCP.

12.  Upon information and belief, the 6 Kirby Avenue Parcel is a former landfill site at which hazardous substances have been released, disposed of or otherwise come to be located and is therefore a "facility" within the meaning of Section 101(9) of CERCLA.

14.  Upon information and belief, Third Party Defendant, W.R. Grace, is a "covered person" under §107(a) of CERCLA, either directly or as the successor by merger of PMEI, as an "owner", due to the disposal of hazardous substances at the 6 Kirby Avenue Parcel during the course of development thereon between February 1966 and July 1987, when the property was sold to the Third Party Plaintiff.

15.  Mian has undertaken, and will continue to undertake, response actions at the 6 Kirby Avenue Parcel in response to releases or threatened releases of hazardous substances, and has incurred and will continue to incur necessary costs of response consistent with the NCP.

16.  Pursuant to Section 107(a)(4)(B) of CERCLA, Mian is entitled to recover from W.R. Grace response costs incurred in connection with the 6 Kirby Avenue Parcel.

**WHEREFORE,** Mian demands judgment against W.R. Grace for the following relief:

(A)    Awarding Mian cost recovery from W.R. Grace for all response costs incurred at or

4

with respect to the 6 Kirby Avenue Parcel pursuant to Section 107(a)(4)(B) of CERCLA, and issuing an Order requiring W.R. Grace to pay such amounts to Mian;

(B)    Declaratory Judgment that W.R. Grace is liable to Mian for all future response costs associated with the Site; and

(C)    Such other relief as the Court may deem equitable and just.


## COUNT II

### SANITARY LANDFILL CLOSURE AND CONTINGENCY FUND ACT

17.  Mian incorporates the allegations of Paragraphs 1 to16 above, as if they were set forth herein.

18.  Section 116 of the New Jersey Sanitary Landfill Closure and Contingency Fund Act (SLCCFA), N.J.S.A. 13:1E-100 et seq., requires that all contracts for the sale of property, upon which a landfill was operated, include a disclosure regarding the prior landfill operations.  Section 116 further provides that any contract not including such disclosures is "voidable" at the discretion of the purchaser.

19.  In the underlying action, the Plaintiffs allege, among other things, that real property that the Third Party Plaintiff purchased from W.R. Grace, in 1987 for $900,000, referred to therein as the 6 Kirby Avenue Parcel, was at one time part of the Somerville Iron Works Site and that it was used as a sanitary landfill.

20.  The contract of sale between Mian and Third Party Defendant, W.R. Grace, did not include the statutorily required notice.

**WHEREFORE**, Mian demands judgment against W.R. Grace for the following relief:

(A)    Judgment that the Third Party Defendant is liable for any and all damages suffered

by Mian as a result of W.R. Grace's failure to comply with the requirements of the

SLCCFA;

(B)    Interest, costs of suit and attorneys fees incurred in connection with prosecuting this

action; and

(C)    Such other relief as the Court may deem equitable and just, including, but not limited

to voiding the contract of sale between W.R. Grace and Mian.

## COUNT III

### FRAUDULENT FAILURE TO DISCLOSE

21. Mian incorporates the allegations of Paragraphs 1 to 20 above, as if they were set forth

herein.

22. Upon information and belief, prior to conveyance of the 6 Kirby Avenue Parcel to Mian,

W.R. Grace knew, or should have known, that the said property had been formerly used as a sanitary

landfill.

23. Despite owing Mian a duty to disclose its knowledge concerning the historic use of the

6 Kirby Avenue Parcel as a landfill prior to closing in July 1987; W.R. Grace intentionally withheld

such knowledge from Mian.

24. In reliance upon W.R. Grace's intentional failure to disclose its knowledge concerning

the historic use of the 6 Kirby Avenue Parcel as a landfill, Mian agreed to, and did, pay W.R. Grace

$900,000 for title to said real property.

25. By reason of W.R. Grace's failure to disclose its knowledge concerning the historic use

6

of the 6 Kirby Avenue Parcel as a landfill, Mian has suffered, and will continue to suffer, damages, including, but not limited to, the diminution in value of the said real property.

**WHEREFORE**, Mian demands judgment against W.R. Grace for the following relief:

(A)    An injunction compelling W.R. Grace to undertake the investigation and remediation of the landfill on the 6 Kirby Avenue Parcel in an expeditious manner;

(B)    Declaratory Judgment that W.R. Grace is liable for any past response costs and all future response costs associated with the said landfill;

(C)    Awarding Mian compensatory and punitive damages;

(D)    Awarding Mian the costs of this action and reasonable attorneys fees; and

(E)    Such other relief as the Court may deem equitable and just.

## COUNT IV

### NEGLIGENT FAILURE TO DISCLOSE

26.  Mian incorporates the allegations of Paragraphs 1 to 25 above, as if they were set forth herein.

27.  Upon information and belief, prior to conveyance of the 6 Kirby Avenue Parcel to Mian, W.R. Grace knew, or should have known, that the said property had been formerly used as a sanitary landfill.

28.  W.R. Grace owed Mian a duty to disclose its knowledge concerning the historic use of the 6 Kirby Avenue Parcel as a landfill prior to closing in July 1987.

29.  In reliance upon W.R. Grace's negligent failure to disclose its knowledge concerning the historic use of the 6 Kirby Avenue Parcel as a landfill, Mian agreed to, and did, pay W.R. Grace

7

$900,000 for title to said real property.

30. By reason of W.R. Grace's negligent failure to disclose its knowledge concerning the historic use of the 6 Kirby Avenue Parcel as a landfill, Mian has suffered, and will continue to suffer, damages, including, but not limited to, the diminution in value of the said real property.

**WHEREFORE**, Mian demands judgment against W.R. Grace for the following relief:

(A)     An injunction compelling W.R. Grace to undertake the investigation and remediation of the landfill on the 6 Kirby Avenue Parcel in an expeditious manner;

(B)     Declaratory Judgment that W.R. Grace is liable for any past response costs and all future response costs associated with the said landfill;

(C)     Awarding Mian compensatory damages;

(D)     Awarding Mian the costs of this action and reasonable attorneys fees; and

(E)     Such other relief as the Court may deem equitable and just.


## COUNT V

### CERCLA 113(f) - Contribution

31. Mian incorporates the allegations of Paragraphs 1 to 30 above, as if they were set forth herein.

32. Inasmuch as Plaintiffs' Second Amended Complaint asserts that Mian is liable under 107(a) of CERCLA, pursuant to 113(f) of CERCLA, Mian is entitled to contribution from Third Party Defendant, W.R. Grace, for all response costs incurred or to be incurred by Mian as a result of the release or disposal of hazardous substances at the 6 Kirby Avenue Parcel prior to Mian's acquisition of same in July 1987.

8

**WHEREFORE**, Mian demands judgment against W.R. Grace for the following relief:

(A)    Judgment that the Third Party Defendant is jointly and severally liable under §113(f) of CERCLA for necessary costs of response incurred and to be incurred by Mian;

(B)    Declaratory Judgment that the Third Party Defendant is liable to Mian for all future response costs associated with the Site;

(C)    Declaratory Judgment declaring the pro rata share of liability for all past and future response costs incurred and to be incurred by Mian with respect to the Site;

(D)    Such other relief as the Court may deem equitable and just.

## COUNT VI

### INDEMNIFICATION

33. Mian incorporates the allegations of paragraphs 1 through 32 above, as if they were set forth herein.

34. If it should be determined that Mian is liable in whole or part for the damages and losses alleged in the Second Amended Complaint, which allegations are specifically denied, then Mian's liability for the acts and omissions causing the alleged damages and losses is secondary and passive only. Primary and active responsibility for the alleged damages and losses is the result of the acts and omissions of W.R. Grace, and/or its predecessor in interest, PMEI.

**WHEREFORE**, Mian demands judgment against W.R. Grace for the following relief:

(A)    Judgment for indemnification from all Defendants for all costs and damages incurred and to be incurred by Mian in connection with the Site;

(B)    Interests, cost of suit and attorneys fees incurred in connection with prosecuting this

9

action; and

(C)     Such other relief as the Court deems equitable and just.

## COUNT VII

## CONTRIBUTION (STATUTORY)

35. Mian incorporates the allegations of paragraphs 1 through 34 above, as if they were set forth herein.

36. If it should be determined that Mian is liable to Plaintiffs for all or part of the damages or losses alleged in the Second Amended Complaint, which allegations are specifically denied, then Mian is entitled to contribution from W.R. Grace, and other parties to this action, including any parties joined in the future, pursuant to the terms and provisions of the Joint Tortfeasors Act, N.J.S.A. 2A:53-1 et seq., and the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq.

**WHEREFORE**, Mian demands judgment against W.R. Grace for the following relief:

(A)     Contribution from the Defendants pursuant to the provisions of the Joint Tortfeasors Contribution Act and the Comparative Negligence Act for any monies, paid or to be paid by Mian, determined to be above the allocable share of Mian;

(B)     Interests, cost of suit and attorneys fees incurred in connection with prosecuting this action; and

(C)     Such other relief as the Court deems equitable and just.

10

## COUNT VIII

### NEW JERSEY SPILL COMPENSATION AND CONTROL ACT

37.  Mian incorporates the allegations of paragraphs 1 through 36 above, as if they were set forth herein.

38.  If it should be determined that Mian must cleanup and remove hazardous substances from the 6 Kirby Avenue Parcel, then Mian is entitled to contribution from W.R. Grace, pursuant to the terms and provisions of the New Jersey Spill Compensation and Control Act, as amended, N.J.S.A. 58:23.11(f)(a)(2).

WHEREFORE, Mian demands judgment against W.R. Grace for the following relief:

(A)    Contribution in this action pursuant to the provisions of the Spill Compensation and Control Act for any monies, paid or to be paid by Mian, determined to be above the allocable share of Mian;

(B)    Interests, cost of suit and attorneys fees incurred in connection with prosecuting this action; and

(C)    Such other relief as the Court deems equitable and just.

## COUNT IX

### COMMON LAW CLAIM FOR CONTRIBUTION

39.  Mian incorporates the allegations of paragraphs 1 through 38 above, as if they were set forth herein.

40.  Without admitting any liability, if Mian is found liable in any respect, which Mian denies, such liability was caused, in whole or in part, by the acts or omissions of W.R. Grace and/or

its predecessor in interest, PMEI, which parties are liable at common law for contribution, in whole or in part, for such damages.

**WHEREFORE,** Mian demands judgment for contribution against all of the other Defendants in this action under the principles of common law contribution.

## COUNT X

### NEW JERSEY ENVIRONMENTAL RIGHTS ACT

41. Mian incorporates by reference its allegations in paragraphs 1 to 40 above, as if they were set forth herein.

42. As the past owner of the 6 Kirby Avenue Parcel, which had, or should have had, knowledge of the fact that the site was formerly used as a landfill, WR Grace is a person "in anyway responsible" for any hazardous substances discharged at that property.

43. The Spill Act provides, among other things, that a person "in any way responsible" for discharged hazardous substances, shall be, among other things, responsible for the cleanup and remove such contamination. N.J.S.A. 58:10-23.11(f).

44. Upon information and belief, WR Grace has taken no actions to cleanup and remove any hazardous substances discharged at the 6 Kirby Avenue Parcel.

45. Pursuant to the Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq., Mian may:

> maintain an action . . . for declaratory and equitable relief . . . for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction. [N.J.S.A. 2A:35A-4(b)].

46. Pursuant to the Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq., Mian may:

> maintain an action . . . to enforce, or to restrain the violation of, any

12

statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment. [N.J.S.A. 2A:35A-4(a)].

47.  The activities and omissions of Plaintiffs, which involve, among other things, the failure to cleanup and remove hazardous substance contamination at, and migrating from, the 6 Kirby Avenue Parcel, are in violation of the Spill Act and regulations promulgated pursuant thereto and otherwise constitute pollution, impairment or destruction of the environment.

48.  Mian is empowered pursuant to the Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq., to bring an action to prevent environmental degradation and ensure the enforcement of anti-pollution laws within the State of New Jersey.

WHEREFORE, Mian prays that judgment be entered in its favor and against WR Grace, as follows:

(A)     preliminary and permanent injunctive relief restraining Defendant from continuing or allowing to continue any unlawful discharge, leaching or migration of any hazardous substance or pollutant, which is threatening, causing or contributing to environmental degradation of the 6 Kirby Avenue Parcel;

(B)     a mandatory injunction requiring Defendant to remediate and otherwise prevent any contamination that has migrated from the 6 Kirby Avenue Parcel.

(C)     awarding the costs and disbursements of this action and reasonable attorneys' fees;

(D)     such other relief as the Court may deem equitable and just.

Respectfully submitted,
GOLDSHORE, CASH & KALAC, P.C.
Crossroads Corporate Center
3150 Brunswick Pike, Suite 150
Lawrenceville, New Jersey 08648
Telephone: (609) 647-9840
Fax: (609) 637-9846
Attorneys for Defendant/Third Party Plaintiff
Mian Realty, L.L.C.

By: _____
    LEWIS GOLDSHORE

Dated: _____, 2008

14