# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| **IN RE:** | ) |
| | ) **Chapter 11** |
| **W.R. GRACE & CO., *et al.*,** | ) |
| | ) **Case No. 01-01139 (JKF)** |
| | ) **Jointly Administered** |
| | ) **Re: Docket Nos. 18325, 18421, and 18484** |
| **Debtors.** | ) |
| | ) **Hearing Date: April 22, 2008 @ 11:30 a.m.** |
| | ) |

**OBJECTION OF CANADIAN ZAI CLAIMANTS' TO ZAI CLAIMANTS' MOTION
FOR DISMISSAL OF AN INDIVIDUAL ZAI CLAIM OR FOR A RULE 54(B)
DETERMINATION TO PERMIT APPELLATE REVIEW OF THE ZAI OPINION**

COMES NOW, Canadian Zonolite Attic Insulation Claimants ("Canadian ZAI Claimants"),

by and through its undersigned counsel, and hereby files this Objection to ZAI Claimants' motion

for Dismissal of an Individual ZAI Claim or for a Rule 54(B) Determination to permit Appellate

Review of the ZAI Opinion ("ZAI Dismissal Motion"), and in support of this Objection states as

follows:

**BACKGROUND**

1.      On March 18, 2008, American ZAI Claimants filed with the Court the ZAI Dismissal

Motion in which the ZAI Claimants requested dismissal of an individual ZAI Claim or for a

determination pursuant to Bankruptcy Rule 54(b) to permit appellate review of the ZAI Opinion

[Docket No. 18325].

2.      On April 9, 2008, Her Majesty the Queen in Right of Canada as represented by the

Attorney General of Canada (the "Crown"), filed an Objection to ZAI Claimants Motion for

Dismissal of an Individual ZAI Claim or for a Rule 54(b) Determination to Permit Appellate Review

of the ZAI Opinion on the grounds that it did not include Canadian ZAI Claims [Docket No. 18484].

## HISTORY OF CANADIAN ZAI

3.      Zonolite attic insulation was extensively utilized in Canadian home building during the period of time from approximately 1940 to the 1970s.

4.      W.R. Grace and Co. and several of its affiliates (the "U.S. Debtors") created and distributed zonolite for use in Canadian homes.  The Crown's alleged wrongdoings include 1) that it promoted the distribution and sale of Zonolite in Canada; 2) that it failed in its duty to warn Canadian citizens of the dangers of Zonolite; and 3) that it failed to remediate the Zonolite once it learned of the dangers caused by exposure to Zonolite.

5.      On April 2, 2001, U.S. Debtors filed voluntary petitions for protection under Chapter 11 of the United States Bankruptcy Code (The "U.S. Proceedings") and have been granted a temporary restraining order by this Court providing for certain injunctive relief in favor of the U.S. Debtors as well as certain other third parties (the "Affiliated Entities").

6.      Two days later Grace Canada, Inc. ("Grace Canada"), a Canadian affiliated entity of U.S. Debtors, was granted an order (the "Initial CCAA order") pursuant to Section 18.6(4) of the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice (the "CCAA Court") which, among other things, provided for a stay of proceedings against the commence-ment or continuation of any asbestos-related suits against Grace Canada. See copy of Order attached as **Exhibit 1**.

7.      On November 14, 2005 as the result of a number of proposed class action proceedings (the "Proposed Class Actions") commenced in Canada against certain U.S. Debtors, Grace Canada, Affiliated Entities and other parties including the Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown"), the CCAA Court granted an order recognizing the injunctive relief provided for by this Court and giving effect to it in Canada and

2

implementing a limited stay of proceedings with respect to the Crown. See copy of Order attached as **Exhibit 2**.

8.      On November 14, 2005, the CCAA Court also considered a request for an extension of the stay contained in the initial order in light of the Proposed Class Actions. The Honorable Justice Farley indicated that cooperation and coordination between the CCAA Court and the Court was needed, that there had been recognition in the U.S. Bankruptcy Court that Canadian proceedings would be governed by Canadian substantive law, that the insolvency adjudicative proceedings presented an efficient process, but that the extension of the stay not affect the ability of the Plaintiffs in the Proposed Class Actions from returning to the CCAA Court if they felt there was "foot dragging or other elements of prejudice".  *See Footnote No. 13 to Exhibit 2.*

9.      In January 2006, Grace Canada made application with the CCAA Court for the appointment of two law firms, Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP, as representative counsel ("Representative Counsel"), in the CCAA Court proceedings on behalf of all Canadian ZAI Claimants.[1]

10.      On February 9, 2006, the CCAA Court entered an order on Grace Canada's application for the appointment of Representative Counsel. As part of that order, Representative Counsel was empowered to, among other things, appear before the U.S. Court in the context of the Chapter 11 cases and to negotiate on behalf of Canadian Claimants with Grace Canada, the Crown, the U.S. Debtors, the Affiliated Entities and any other person or entity. See copy of Order attached as **Exhibit 3.**

---

[1] Representative Counsel was appointed to represent the interest of all Canadian ZAI Claimants (both personal injury and property damage).

11.     Representative Counsel has actively monitored these proceedings since their appointment by the CCAA Court in an effort to advance the interests of Canadian ZAI Claimants.

12.     On December 14, 2006 this Court issued a Memorandum Opinion on this issue of whether or not the presence of ZAI in the home creates an unreasonable risk of harm. Canadian ZAI claimants were not represented or heard at the Science Trial which led to the Memorandum Opinion.

## ARGUMENT

13.     The ZAI Dismissal Motion does not address the right of Canadian ZAI Claimants. The Crown objected on the grounds that the present motion "excludes similarly situated claims arising in Canada."

14.     Grace has intended to and has in fact treated Canadian ZAI Claimants as a separate class of claimants.  The Amended Joint Plan of Reorganization filed by the U.S. Debtors dated January 15, 2005, expressly provided that Canadian Claims would be adjudicated in Canada, under a Canadian Litigation Procedure by a Canadian Court.

15.     Until it received the objection of the Crown, Canadian ZAI Claimants were operating under the assumption that the ZAI Dismissal Motion was intended only to apply to American claimants since the materials are clear on their face in that regard.  The Crown now takes the position throughout its objection that Canadian claimants should be included.

16.     Contrary to the Crown's assertions, counsel for the American ZAI Claimants, Mr. Edward Westbrook, does not represent Canadian ZAI Claimants

17.     Since its appointment by the CCAA Court in 2006, Representative Counsel has engaged in extensive negotiations with Grace Canada, representatives of the U.S. Debtors, and the Crown, in an attempt to fashion a Canadian Litigation Procedure to be presided over by a Canadian Court for the determination of Canadian ZAI claims.[2]

18.     Representative Counsel has actively monitored these proceedings since their appointment by the CCAA Court in an effort to advance the interests of Canadian ZAI Claimants.

19.     Canadian ZAI Claimants were not represented at the Science Trial, fully completed by this court on October 18, 2004, which led to Judge Fitzgerald's Memorandum Opinion of December 14, 2006.  In fact, Representative Counsel for Canadian ZAI Claimants had not been appointed as such by the CCAA Court until February 8, 2006. Furthermore, Representative Counsel were appointed as representatives of all Canadian ZAI Claimants (both property damage and personal injury), thus creating an inherent conflict between this class of claimants and American ZAI PD Claimants, American ZAI PI Claimants, American Asbestos PI Claims and American ZAI PD Claims.

20.     The CCAA Court should be consulted by this Court as it appointed Representative Counsel in Canada at the suggestion and instance of the Debtor.

21.     There are special known groups in Canada, the interests of whom need to be considered, including Aboriginal claimants and claimants who resided in homes built and/or owned by the Canadian Federal Government. These include Department of National Defense

---

[2] Representative Counsel sought to structure a litigation procedure consistent with the proposed Amended Joint Plan of Reorganization filed by Debtors on January 15, 2005 [Docket No.7560].

employees.  The Canadian Federal Government has remediated many of the homes through removal of ZAI and/or sealing of the ZAI so as to avoid risk of harm to occupants and others. Some of the Canadian ZAI claimants live in remote areas, in particular certain groups of Aboriginal persons, and any notice program must be fashioned to recognize Canada's unique geography and demographic structure to ensure that notice be effective.  This is best determined by the CCAA Court which has extensive experience in dealing with these issues.

22.     There are specific personal injury claimants in Canada in the form of, at a minimum, the Bruce and Thundersky families who have suffered a terrible tragedy as a result of their exposure to ZAI.  Groups such as these claimants have distinct and separate claims against the Canadian Federal Government and it would therefore be very dangerous, and highly prejudicial to such claimants, to lump Canadian claimants in with American claimants to be treated in the same fashion without recognizing the separate and distinct claims. See Affidavit of Raven Thundersky attached as **Exhibit 4**.

**WHEREFORE**, for the reasons set forth in the Objection, the Canadian ZAI Claimants respectfully request that this Court deny the relief sought by the ZAI Claimants, and grant such other and further relief to which this Court deems appropriate.

[Remainder of Page Intentionally Left Blank]

Dated: April 15, 2008

*/s/Daniel K. Hogan*
Daniel K. Hogan (DE Bar No. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656.7540
Facsimile: (302) 656.7599
E-Mail: dkhogan@dkhogan.com

-and-

**LAUZON BÉLANGER, INC**.
Yves Lauzon
Michel Bélanger
286, rue St-Paul Quest, Bureau 100
Montreal Quebec
Telephone: (514) 844-7403
ylauzon@lauzonbelanger.qc.ca
mbelanger@lauzonbelanger.qc.ca

**SCARFONE HAWKINS LLP**
Matthew G. Moloci
David Thompson
One James Street South, 14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
Canada L8N 3P9
Telephone: (905) 523-1333
moloci@shlaw.ca
thompson@shlaw.ca

## SUMMARY OF EXHIBITS

**Exhibit 1**        CCAA Court Order pursuant to Section 18.6(4) of the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice which provided for a stay of asbestos-related suits against Grace Canada, dated April 4, 2001.

**Exhibit 2**        CCAA Court Order recognizing injunctive relief provided by the U.S. Bankruptcy Court for the District of Delaware and giving effect to it in Canada and implementing a limited stay of proceedings with respect to Her Majesty the Queen in Right of Canada, dated November 15, 2005.

**Exhibit 3**        CCAA Court Order for the appointment of Representative Counsel, dated February 9, 2006.

**Exhibit 4**        Affidavit of Raven Thundersky, sworn March 29, 2005.

# EXHIBIT 1

Court File No. 01-CL-4081

# SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE | ) | WEDNESDAY, THE 4TH DAY OF |
| | ) | |
| MR. JUSTICE FARLEY | ) | APRIL, 2001. |



IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

## INITIAL ORDER

**THIS MOTION** made by the Applicant Grace Canada, Inc. for an Order substantially in the form attached to the Application Record herein was heard this day, at 393 University Avenue, Toronto, Ontario.

**ON READING** the Notice of Application, the Affidavit of Pierre Le Bourdais sworn April 3, 2001 (the "Le Bourdais Affidavit") and upon being advised that no other person who might be interested in these proceedings was served with the Notice of Application herein.

### SERVICE

1.    **THIS COURT ORDERS** that the time for service of the Notice of Application and the Affidavit in support of this Application be and it is hereby abridged such that the Application is properly returnable today, and, further, that any

requirement for service of the Notice of Application and of the Application Record upon any interested party is hereby dispensed with.

## RECOGNITION OF THE U.S. PROCEEDINGS

2.         **THIS COURT ORDERS AND DECLARES** that the proceedings commenced by the Applicant's United States corporate parent and certain other related corporations in the United States for protection under Chapter 11 of the United States Bankruptcy Code in connection with asbestos claims (the "U.S. Proceedings") be and hereby is recognized as a "foreign proceeding" for purposes of Section 18.6 of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c.C-36, as amended, (the "CCAA").

## APPLICATION

3.         **THIS COURT ORDERS AND DECLARES** that the Applicant is a company which is entitled to relief pursuant to s. 18.6 of the CCAA.

## PROTECTION FROM ASBESTOS PROCEEDINGS

4.         **THIS COURT ORDERS** that until and including October 1, 2001, or such later date as the Court may order (the "Stay Period"), no suit, action, enforcement process, extra-judicial proceeding or other proceeding relating to, arising out of or in any way connected to damages or loss suffered, directly or indirectly, from asbestos, asbestos contamination or asbestos related diseases ("Asbestos Proceedings") against or in respect of the Applicant, its directors, officers or employees or any property of the Applicant, wheresoever located, and whether held by the Applicant in whole or in part, directly or indirectly, as principal or nominee, beneficially or otherwise shall be

commenced, and any Asbestos Proceedings against or in respect of the Applicant, its directors, officers or employees or the Applicant's Property already commenced be and are hereby stayed and suspended.

5.        **THIS COURT ORDERS** that during the Stay Period, the right of any person, firm, corporation, governmental authority or other entity to assert, enforce or exercise any right, option or remedy arising by law, by virtue of any agreement or by any other means, as a result of the making or filing of these proceedings, the U.S. Proceedings or any allegation made in these proceedings or the U.S. Proceedings be and is hereby restrained.

## REPORT AND EXTENSION OF STAY

6.        As part of any application by the Applicant for an extension of the Stay Period:

(a)    the Applicant shall appoint Pierre Le Bourdais, or such other senior officer as it deems appropriate from time to time, as an information officer (the "Information Officer");

(b)    the Information Officer shall deliver to the Court a report at least once every three (3) months outlining the status of the U.S. Proceedings, the development of any process for dealing with asbestos claims and such other information as the Information Officer believes to be material (the "Information Reports"); and

(c)    the Applicant and the Information Officer shall incur no liability or obligation as a result of the appointment of the Information Officer or the

fulfilment of the duties of the Information Officer in carrying out the provisions of this Order and no action or other proceedings shall be commenced against the Applicant or Information Officer as an result of or relating in any way to the appointment of the Information Officer or the fulfilment of the duties of the Information Officer, except with prior leave of this Court and upon further order securing the solicitor and his own client costs of the Information Officer and the Applicant in connection with any such action or proceeding.

## SERVICE AND NOTICE

7.        **THIS COURT ORDERS** that the Applicant shall, within fifteen (15) business days of the date of entry of this Order, publish a notice of this Order in substantially the form attached as Schedule "A" hereto on two separate days in the Globe & Mail (National Edition) and the National Post.

8.        **THIS COURT ORDERS** that the Applicant be at liberty to serve this Order, any other orders in these proceedings, all other proceedings, notices and documents by prepaid ordinary mail, courier, personal delivery or electronic transmission to any interested party at their addresses as last shown on the records of the Applicant and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

## MISCELLANEOUS

9.        **THIS COURT ORDERS** that notwithstanding anything else contained herein, the Applicant may, by written consent of its counsel of record herein, agree to waive any of the protections provided to it herein.

10.       **THIS COURT ORDERS** that the Applicant may, from time to time, apply to this Court for directions in the discharge of its powers and duties hereunder or in respect of the proper execution of this Order.

11.       **THIS COURT ORDERS** that, notwithstanding any other provision of this Order, any interested person may apply to this Court to vary or rescind this order or seek other relief upon ten (10) days' notice to the Applicant and to any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

12.       **THIS COURT ORDERS AND REQUESTS** the aid and recognition of any court or any judicial, regulatory or administrative body in any province or territory of Canada (including the assistance of any court in Canada pursuant to Section 17 of the CCAA) and the Federal Court of Canada and any judicial, regulatory or administrative tribunal or other court constituted pursuant to the Parliament of Canada or the legislature of any province and any court or any judicial, regulatory or administrative body of the United States and the states or other subdivisions of the United States and of any other nation or state to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

S:\Client\4226\11\application record\initial.order.apr4.01.sef.wpd

APR 0 4 2001

**J. PERSAUD**
REGISTRAR, ONTARIO COURT (GEN. DIV.)
GREFFIER ADJOINT, COUR DE L'ONTARIO (DIV. GEN.)

SCHEDULE "A"

## NOTICE

RE:    IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED (the "CCAA")

**AND IN THE MATTER OF GRACE CANADA, INC.**

**PLEASE TAKE NOTICE** that this notice is being published pursuant to an Order of the Superior Court of Justice of Ontario made April 4, 2001. The corporate parent of Grace Canada, Inc. and certain other affiliated corporations in the United States have filed for protection in the United States under Chapter 11 of the Bankruptcy Code to seek, as the result of recent, sharp increases in the number of asbestos claims which have seriously threatened the Grace Enterprise's long term health, protection from mass asbestos claims to which they are or may become subject. Grace Canada, Inc. itself has not filed under Chapter 11 but has sought and obtained an interim order under Section 18.6 of the CCAA affording it a stay against asbestos claims in Canada. Further application may be made to the Court by Grace Canada, Inc. to ensure fair and equal access for Canadians with asbestos claims against Grace Canada, Inc. to the process established in the United States. Representations may also be made by parties who would prefer to purse their remedies in Canada.

Persons who wish to be a party to the Canadian proceedings or to receive a copy of the order or any further information should contact counsel for Grace Canada, Inc., Derrick C. Tay at Meighen Demers LLP (Telephone 416.340.6032 and Fax 416.977.5239).

DATED this                    day of                    , 2001 at Toronto, Canada

S:\Client\4226\1\application record\sched.a.notice.apr.01.sef.wpd

7.

Court File No. 01-CL-4081

THE MATTER OF S. 18.6 of THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST
PROCEEDINGS COMMENCED AT TORONTO

INITIAL ORDER

MEIGHEN DEMERS LLP
Barristers & Solicitors
Suite 1100, Box 11
Merrill Lynch Canada Tower
Sun Life Centre
200 King Street West
Toronto, Ontario M5H 3T4

DERRICK C. TAY
LSUC No. 21152A
Tel: 416.340.6032
Fax: 416.340.5900

Solicitors for the Applicant

# EXHIBIT 2

# AIKINS

Court File No. 01-CL-4081

## SUPERIOR COURT OF JUSTICE

### COMMERCIAL LIST

THE HONOURABLE   )  MONDAY, THE 14th DAY OF

          )

MR. JUSTICE FARLEY   )  NOVEMBER, 2005

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED



AND IN THE MATTER OF GRACE CANADA, INC.

## ORDER

**THIS MOTION** made by Grace Canada, Inc. (hereinafter referred to as the "Applicant"), for an Order:

(a)  abridging the time for service of this motion;

(b)  recognizing an order (as amended, the "Modified Preliminary Injunction") granted on January 22, 2002 by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") providing injunctive relief to W.R. Grace Inc. and all of its subsidiaries (the "U.S Debtors") as well as certain other Affiliated Entities (as defined in the Modified Preliminary Injunction) and declaring that such order be effective in Canada in accordance with its terms;

(c)  an order staying as against The Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown"), until such time as the Stay Period (as defined in the order of this Honourable Court made on April 1, 2001 (the "Initial

DOCSTOR: 1037288\1

- 2 -

Order")) expires, all suits, actions, enforcement processes, extra-judicial proceedings or other proceedings relating to, arising out of or in any connected to damages or loss suffered, directly or in directly, from asbestos, asbestos contamination or asbestos related diseases arising out of the exposure to or use of products in Canada that may contain asbestos and were manufactured, sold or distributed by any of the Applicant, the U.S. Debtors or the Affiliated Entities; and

(d)    an order extending the Stay Period referred to in paragraphs 4 and 5 of the Initial Order to April 1, 2006,

was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING,**

(a)    the Applicant's Notice of Motion, the affidavit of Richard Finke sworn September 6, 2005 (the "Finke Affidavit"), the 16th Report of Pierre Le Bourdais, Information Officer, the Affidavit of George Triantis sworn September 28, 2005, the supplemental affidavit of Richard Finke sworn October 19, 2005,

(b)    the Notice of Appearance of Raven Thundersky ("Thundersky") dated September 13, 2005, the affidavit of Thundersky sworn September 14, 2005, the Notice of Motion and Motion Record of counsel to Thundersky dated September 19, 2005, the affidavit of Sander Esserman sworn October 11, 2005, the supplemental affidavit of Thundersky sworn October 7, 2005;

(c)    the Notice of Motion and affidavit of Yves Lauzon sworn September 16, 2005;

and on hearing the submissions of counsel for: (a) the Applicant; (b) Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras, Viviane Brosseau and Léotine Roberge-Turgeon (collectively, the "Québec Plaintiffs"), who consent to the Order; (c) the Crown, who also consents to the Order; (d) Thundersky; and (e) Merv Nordick and Ernest Spencer et. al., and upon being advised that no other person has appeared on this date or served and filed responding materials on this motion:

- 3 -

1.    **THIS COURT ORDERS** that the time for service of the Applicant's Notice of Motion and Motion Record in support of this Motion be and it is hereby abridged such that the Motion is properly returnable today, and, further, that any requirement for service of the Notice of Motion and of the Motion Record upon any interested party, other than the parties herein mentioned, is hereby dispensed with.

2.    **THIS COURT ORDERS** that the Modified Preliminary Injunction, as amended, be and is hereby recognized and shall be effective in Canada in accordance with its terms.

3.    **THIS COURT ORDERS** that until and including such time as the Stay Period expires, no suit, action, enforcement process, extra-judicial proceeding or other proceeding relating to, arising out of or in any connected to damages or loss suffered, directly or in directly, from asbestos, asbestos contamination or asbestos related diseases arising out of the exposure to or use of asbestos products in Canada manufactured, sold or distributed by any of the Applicant, the U.S. Debtors or the Affiliated Entities, shall be commenced against the Crown and any such suits, actions, enforcement processes, extra-judicial proceedings or other proceedings already commenced against the Crown be and are hereby stayed and suspended.

4.    **THIS COURT ORDERS** that the Stay Period referred to at paragraphs 4 and 5 of the Initial Order be and is hereby extended and continued to April 1, 2006.

JOSEPH P. VAN TASSEL
REGISTRAR

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

NOV 1 7 2005

PER/PAR

81

Court File No: 01-CL-4081

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED) AND IN THE MATTER OF GRACE CANADA, INC.

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

**ORDER**

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower

200 Bay Street
Toronto, Ontario  M5J 2Z4

**DERRICK C. TAY**
LSUC #21152A
Tel:     416.216.4832
Fax:     416.216.3930

**ORESTES PASPARAKIS**
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

COURT FILE NO.: 01-CL-4081
DATE: 20051114

## SUPERIOR COURT OF JUSTICE - ONTARIO
(COMMERCIAL LIST)

**RE:**   IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

**BEFORE:**   Farley J.

**COUNSEL:**   *D. Tay, O. Pasparakis, J. Stam*, for the Plaintiffs, Grace Canada Inc.

*E. Merchant*, for Merv Nordick and Ernest Spencer, et al.

*K. Ferbers*, for Raven Thundersky

*Ian Dick*, for the Attorney General of Canada

*Michel Bélanger, Jean-Philippe Lincourt* and *Matt Moloci*, for the Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras, Viviane Brosseau and Léotine Roberge-Turgeon

**HEARD:**   November 14, 2005

### E N D O R S E M E N T

[1]   This endorsement applies to the 3 motions of Grace, the Quebec class proceeding and the Manitoba class proceeding.

[2]   The Quebec plaintiffs in their putative class proceedings have worked out an arrangement with the Federal Government. As a result they are not proceeding with their request to lift the stay and other ancillary relief, but without prejudice to it or similar relief being sought if the insolvency/CCAA recognition proceedings get bogged down. The Grace relief was then supported by the Quebec plaintiffs.

[3]   The "Sask" plaintiffs (represented by the Merchant firm were not opposed to the Grace relief.

[4]   The Manitoba plaintiffs represented by the Atkins firm took the position that the Grace relief was all right so long as it did not apply to their proceedings except that judgment would not be enforced without leave of this court.

Page:2

[5]    It would seem to me that the various class proceedings would benefit from cooperation and coordination – using the 3Cs of the Commercial List (communication, cooperation and common sense). Otherwise they will be faced with the practical problem of fighting amongst themselves as to a turf war and running the risk of being divided and therefore susceptible to being conquered.

[6]    The stay is extended to April 1, 2006 and includes proceedings against the Federal Crown related to the Grace proceedings in these class actions.  As well the Modified Preliminary Injunction granted on January 22, 2002 by the US Bankruptcy Court is recognized pending further order of this Court.

[7]    The foregoing does not prevent any of the parties entering into consensual resolutions with the Federal Crown.

[8]    I note that the Grace interests represented before me today indicated that it was their goal to emerge from their insolvency proceedings as soon as reasonably possible but under the guidelines that there be justice for all affected persons.

[9]    I also note that there has been recognition in the US Bankruptcy Court that Canadian proceedings will be governed by Canadian substantive law.

[10]    The foregoing relief granted is pursuant to the principles set out in *Babcock & Wilcox Canada Ltd.* (2000), 18 C.B.R. (4th) 157 (Ont. S.C.J.) and is in furtherance of the long standing respect for comity extended by the courts of this country for the courts of the US and vice versa.

[11]    It would seem to me that the insolvency adjudicative proceedings would, at least under presently anticipated circumstances, result in a more effective efficient process than would a full-blown class action proceeding.

[12]    I concur with the views of the US court in *Maryland Casualty* re respect to the necessity/desirability of a stay against the Federal Crown as a "3rd party" given the interrelated aspects of the claims against the Crown and Grace.  There would in my mind be a considerable risk of record taint if the action against the Crown were allowed to proceed on its own without direct Grace evidence and counsel.  See also *Campeau v. Olympia & York* (1992), 14 C.B.R. (3d) 303 (Ont. Gen. Div.); *Canada Systems Group (EST) Ltd. v. Allendale Mutual Insurance Co.* (1982), 137 D.L.R. (3d) 287 (Ont. H.C.J.), aff'd (1983), 145 D.L.R. (3d) 266 (Ont. Div. Ct.); *Re Noma Co.*, [2004] O.J. No. 4914 (S.C.J.); *Re Lehndorff General Partner Ltd.* (1993), 17 C.B.R. (3d) 24 (Ont. Gen. Div).

[13]    The stay does not affect the ability of the plaintiffs from coming back to court if they feel that there is foot dragging or other elements of prejudice.

[14]    I note that the Federal Crown may accept service of the Sask claim without that being an infringement of the stay now imposed (and previously requested). This is without prejudice to the Crown moving for relief on, say, a limitations point.

Page:3

[15]    What the Manitoba plaintiffs are in essence requesting is that they obtain a leg up on all other Canadian plaintiffs (and US plaintiffs) and that there be by this court somewhat of a quasi-certification, although indicating that the actual certification would be dealt with by the Manitoba court.

[16]    This would result in a lack of single control in insolvency proceedings which was cautioned against in *Sam Levy & Associes v. Azco Mining Inc.*, [2001] 3 S.C.R. 978. It would also fragment and possibly destabilize the other proceedings by other affected persons (including those claiming for personal injury including serious personal injury). In saying that I in no way wish to or intend to be taken as minimizing the terrible tragedy which has befallen the Thundersky/Bruce family.

[17]    I look forward to seeing that continued timely progress is being made with respect to this insolvency proceeding including the effective efficient way of dealing with personal injury and property damage claims. The information officer should ensure that this court and affected parties including these class action plaintiffs are kept abreast of proposed material developments and their outcome. That is the report on the regular time period basis should be the minimum.

[18]    The motion of the Manitoba plaintiffs is dismissed, but without prejudice to similar or other relief being sought in the future based on a change in circumstances.

J.M. Farley

**DATE:** November 14, 2005

# EXHIBIT 3

**Court File No. 01-CL-4081**

## SUPERIOR COURT OF JUSTICE

## COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE | ) | WEDNESDAY, THE 8TH DAY OF |
| | ) | |
| MR. JUSTICE FARLEY | ) | FEBRUARY, 2006 |

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

### ORDER

**THIS MOTION** made by Grace Canada, Inc. (hereinafter referred to as the "Applicant"), for an Order:

(a)     abridging the time for service of this motion;

(b)     appointing Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP (the "Representative Counsel") to act as representative counsel in these proceedings on behalf of all persons who have, or at any time in the future may have a claim, arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of Zonolite attic insulation products in Canada ("Canadian Claimants") by the Applicant or any of W.R. Grace & Co. and all of its subsidiaries (the "U.S. Debtors") as well as certain other Affiliated Entities (as defined in the order of the United States Bankruptcy Court (the "U.S. Court") made on January 22, 2002, as amended);

DOCSTOR: 1052578\4

- 2 -

(c)     declaring that the Representative Counsel's powers shall include but not be limited to:

    (i)     representing the interests of Canadian Claimants in these proceedings;

    (ii)     appearing before this Honourable Court in these proceedings and applying to this Honourable Court for advice and directions from time to time;

    (iii)     seeking to appear or have an agent seek to appear before the U.S. Court in the context of the U.S. Debtors' Chapter 11 cases (the "Chapter 11 Cases"); and

    (iv)     negotiating on behalf of the Canadian Claimants with the Applicant, The Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown"), the U.S. Debtors, the Affiliated Entities and any other person or entity;

(d)     declaring that Canadian Claimants shall be responsible for the fees and disbursements of the Representative Counsel subject to further order of this Honourable Court;

(e)     that any person affected by this Order (an "Affected Person") shall be entitled to apply to this Honourable Court for relief from time to time;

(f)     discharging Pierre Le Bourdais as information officer in these proceedings and appointing Richard C. Finke as information officer in these procedures; and

(g)     such further relief as this Honourable Court deems appropriate,

was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING,** the Applicant's Notice of Motion, the affidavit of Richard Finke sworn January 31, 2006, the affidavit of Raven Thundersky ("Thundersky") sworn February 1, 2006, the affidavit of Yves Lauzon sworn February 3, 2006 and the affidavit of Merv Nordick sworn February 6, 2006, and on hearing the submissions of counsel for: (a) the Applicant; (b) Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras, Viviane Brosseau and Léotine Roberge-Turgeon; (c) the Crown; (d) Thundersky et. al.; and (e) Merv Nordick and Ernest Spencer et. al., and upon being advised that no other person has appeared on this date or served and filed responding materials on this motion although duly served and on reading the affidavit of service of Monique Massabki sworn February 2, 2006:

1.     **THIS COURT ORDERS** that the time for service of the Applicant's Notice of Motion and Motion Record in support of this Motion be and it is hereby abridged such that the Motion is properly returnable today, and, further, that any requirement for service of the Notice of Motion and of the Motion Record upon any interested party, other than the parties herein mentioned, is hereby dispensed with.

2.     **THIS COURT ORDERS** that Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP be appointed as representative counsel, in these proceedings on behalf of all Canadian Claimants.

3.     **THIS COURT ORDERS** that the Representative Counsel's power shall include but not be limited to:

(a)     representing the interests of Canadian Claimants in these proceedings;

- 4 -

(b)     appearing before this Honourable Court in these proceedings and applying to this Honourable Court for advice and directions from time to time;

(c)     seeking to appear or have an agent seek to appear before the U.S. Court in the context of the Chapter 11 Cases; and

(d)     negotiating on behalf of the Canadian Claimants with the Applicant, the Crown, the U.S. Debtors, the Affiliated Entities and any other person or entity.

4.     **THIS COURT ORDERS** that Canadian Claimants shall be responsible for the fees and disbursements of the Representative Counsel subject to further order of this Honourable Court.

5.     **THIS COURT ORDERS** that any Affected Person shall be entitled to apply to this Honourable Court for relief from time to time.

6.     **THIS COURT ORDERS** that Pierre Le Bourdais be and is hereby discharged as information officer in these proceedings and Richard C. Finke is hereby appointed information officer in these proceedings.

JOSEPH P VAN TASSEL
REGISTRAR
ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.

FEB 0 9 2006

PERIPAH

Court File No: 01-CL-4081

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Toronto

**ORDER**

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower

200 Bay Street
Toronto, Ontario  M5J 2Z4

**DERRICK C. TAY**
LSUC #21152A
Tel:      416.216.4832
Fax:     416.216.3930

**ORESTES PASPARAKIS**
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

Feb 8/06

Court File No: 01-CL-4081

**IN THE MATTER OF S. 18.6 OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C.1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC**

ONTARIO

**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Toronto

**MOTION RECORD**

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4

**DERRICK C. TAY**
LSUC #21152A
Tel:    416.216.4832
Fax:    416.216.3930

**ORESTES PASPARAKIS**
LSUC # 36851T
Tel:  416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

*[handwritten notations]*

# EXHIBIT 4

File No.  CI04-01-39818

## THE QUEEN'S BENCH
### Winnipeg Centre

BETWEEN:

### RAVEN THUNDERSKY and REBECCA BRUCE

plaintiffs

- and -

**THE ATTORNEY GENERAL OF CANADA (Her Majesty the Queen in Right of Canada), W.R. GRACE & CO, W.R. GRACE & CO.-CONN., CRYOVAC INC., SEALED AIR CORP., W.R. GRACE & CO. CANADA LTD., GRACE CONSTRUCTION MATERIALS LTD. CRYOVAC CANADA INC., 3079931 NOVA SCOTIA CO., SEALED AIR (CANADA) CO., GRANT INDUSTRIES LTD., ABC Cos and XYZ Cos.**

defendants

---

### AFFIDAVIT OF
### RAVEN THUNDERSKY
### SWORN THE 30th DAY OF MARCH, 2005

---

### AIKINS, MacAULAY & THORVALDSON LLP
Barristers & Solicitors
30th Floor, 360 Main Street
Winnipeg, Manitoba
R3C 4G1

Keith J. Ferbers/Tyler J. Kochanski
Telephone No.:  957-4691/957-4633
Fax No.:  957-4269/957-4252

File No.: 0405627

(BOX 3)

THE QUEEN'S BENCH
WINNIPEG CENTRE

B E T W E E N:

RAVEN THUNDERSKY and REBECCA BRUCE

plaintiffs

- and -

THE ATTORNEY GENERAL OF CANADA (Her Majesty the Queen in Right of Canada),
W.R. GRACE & CO, W.R. GRACE & CO.-CONN., CRYOVAC INC., SEALED AIR
CORP., W.R. GRACE & CO. CANADA LTD., GRACE CONSTRUCTION MATERIALS
LTD. CRYOVAC CANADA INC., 3079931 NOVA SCOTIA CO., SEALED AIR
(CANADA) CO., GRANT INDUSTRIES LTD., ABC Cos and XYZ Cos.

defendants

AFFIDAVIT OF
RAVEN THUNDERSKY

I, Raven Thundersky, of the City of Winnipeg, in the Province of Manitoba,

MAKE OATH AND SAY THAT:

1.        I am one of the named plaintiffs in the legal action herein and, as such, have personal knowledge of the matters hereinafter deposed to by me, save where stated to be based upon information and belief and, where so stated, I do believe such statements to be true.

2.        I was born on May 21, 1965. Prior to 1964, my father, Victor Bruce, and my mother, Nora Bruce, resided in a log house located on Reserve Lands of the Poplar River First Nation in Manitoba.

3.        In or about 1964, the Department of Citizenship and Immigration - Indian Affairs Branch ("Indian Affairs") determined that it would construct a new 520 square foot home for my

- 2 -

family (the "Family Home").   I am advised by my father that the home was constructed by three Band Members according to a plan and using materials supplied by Indian Affairs.

4.        My family moved into the Family Home in about 1964 with the following family members residing there between about 1964 and 1975:

      (a)    Victor Bruce (father), date of birth October 23, 1932;

      (b)    Nora Bruce (mother), date of birth April 26, 1932;

      (c)    Melvina Mitchell (sister), date of birth October 19, 1954 (now deceased);

      (d)    Mardina Mitchell (sister), date of birth August 25, 1956 (now deceased);

      (e)    Barbara Bruce (sister), date of birth September, 1960 (now deceased);

      (f)    Rebecca Bruce (sister), date of birth February 9,1958;

      (g)    Deborah Favell (sister), date of birth March 31, 1963;

      (h)    Nancy Bruce (myself), date of birth May 21, 1965;

      (i)    Delbert Bruce (brother), date of birth April 1, 1968; and

      (j)    Dennis Bruce (brother) date of birth December 17, 1969.

5.        When I was born, I was known as Nancy Bruce.  I have subsequently changed my name to Raven Cree Thundersky.  As indicated above, the other named plaintiff in the legal action herein, Rebecca Bruce, is my sister.

6.        I am advised by my mother, father and other family members that in about 1976 the Bruce family moved into a new home also on the Poplar River Reserve.  My sister, Mardina, her husband, and their two children, moved into the Family Home built in 1964 and continued to reside there until about 1980 or 1981.

7.        The Family Home was extremely cramped in terms of living space.  There were times when we, as children, would go into the area of the attic.  Both myself and other family members recall it being "dusty" in the attic and the "dust" from the attic would be carried into the living space of the house.

- 3 -

8.          I am advised by my mother and father that they believe that the attic insulation may also have seeped through the ceiling due to the poor construction of the home such that the Zonolite insulation was exposed in living areas.  The ceiling was plywood with seams between the boards. Sometimes the nails holding the boards would come loose.  I also recall this to be the case.  I am advised by my family members that no one ever advised our family to be careful about disturbing or inhaling the "dust" from the attic insulation.  I also recall workers in the house to install electricity in about 1969 which involved installing wiring in the ceiling and attic.

9.          In about 1996, Mardina became ill and was diagnosed with "lung cancer".  Mardina was a non-smoker and was 38 years old when she passed away in 1996.  She died within 3 months of her diagnosis not having received any treatment and there being no autopsy undertaken.

10.          My sister Melvina was initially diagnosed with lung cancer in 1997.  Melvina underwent treatment and testing which ultimately led to a diagnosis of mesothelioma.  Melvina died on April 6, 1999 after being in severe pain and undergoing radiation treatment.  Melvina's diagnosis of mesothelioma was confirmed at autopsy.  Melvina was 44 years old when she died.

11.          Mesothelioma is a rare form of cancer which is known to be caused by breathing in or ingesting asbestos fibers.  I have learned that the latency period between inhaling or ingesting the asbestos fibers and developing mesothelioma or other symptoms may vary depending upon a variety of factors including the duration and extent of exposure.

12.          Around the time that Melvina was diagnosed with mesothelioma, both myself and my husband, Allan Aitken, began asking questions and communicating with various departments and representatives of the federal government including the Department of Indian and Northern Affairs ("DIAND") and Health Canada (collectively referred to as the "Federal Government").  We were concerned that both Melvina and Mardina had died of lung related cancers.  We began attempting to determine whether there were any housing records available relating to the Family

- 4 -

Home and also wanted to know what would be done by the Federal Government to investigate the potential cause of my sisters' illnesses and to investigate and identify other aboriginal persons who may have been exposed to asbestos fibers on Reserve. We were suspicious at this point and in the following years that the common link was in residing in the Family Home.    We also wondered about a common link through school.

13.        In early to mid 2003, my sister Rebecca and my mother both began feeling ill. Both Rebecca and my mother were later diagnosed with mesothelioma which further increased our suspicions that the source of the asbestos fibers was the Family Home.

14.        We have continued to request that the Federal Government take steps to investigate the potential exposure of other aboriginal persons to asbestos fibers and set up a program to initiate appropriate monitoring and testing of those individuals potentially exposed to the Zonolite insulation In early 2004 and onward, we did what we could to draw this issue to the attention of the media and I have done numerous interviews with the Aboriginal People's Television Network ("APTN"), the Winnipeg Free Press, CBC Television and other media outlets.

15.        In 2004, we also continued our efforts to learn more about what information was available relating to the construction of the Family Home and other such homes on Reserve. It was not until about March 16, 2004 that we were provided with a copy of my father's application for housing assistance dated January 24, 1964, a copy of which, together with the covering letter from the Federal Government, is attached hereto and marked as Exhibit "A" to this my affidavit. This document indicates that the plan for construction of the house is to follow Canadian Indian Homes Plan Type "C". The materials for the house were as specified by Indian Affairs. At the bottom of page 2 of Exhibit "A" there is reference to the use of 46 bags of "Zonolite Insulation" in constructing the house.

16.        It was only upon receipt of Exhibit "A" that my husband and I were able to confirm that the attic insulation used in the Family Home was Zonolite insulation.

- 5 -

17.        Allan and I have subsequently conducted extensive research on Zonolite attic insulation ("Zonolite") in conjunction with various investigations undertaken by our legal counsel, Keith Ferbers, and others working in conjunction with him.  We have learned that Zonolite is the trade name for attic insulation made from vermiculite which was mined by the W. R. Grace Co. in Libby, Montana.  It is known that this vermiculite contained tremolite fibers which, if ingested or inhaled, poses a serious safety and health hazzard.

18.        The following is a summary of the current medical status of each of my immediate family members:

> (a)    Myself - I have undergone testing and monitoring in the past year including a PET Scan which was undertaken in Edmonton in June, 2004.  This investigation was negative.  CAT Scans in 2004 have detected asbestosis although there is no present indication of mesothelioma.  Asbestosis is scarring of the lungs.  The symptoms often begin with shortness of breath. Asbestosis is known to be progressive as more and more lung tissue is affected;
>
> (b)    Rebecca Bruce (sister) - As indicated above, Rebecca was diagnosed with mesothelioma in 2003.  Rebecca has undergone extensive surgery under the care of a specialist in Detroit, Dr. Harvey Pass.  Dr. Pass is associated with the Barbara Anne Karmanos Cancer Clinic in Detroit. The surgery was undertaken in December, 2004 and involved removal of her left lung, replacement of the lining around her heart and, the removal of several cancerous lymph nodes and the reconstruction of her diaphragm.  Rebecca has since returned to Detroit for radiation therapy in February, 2005 and only returned on March 15, 2005;
>
> (c)    Nora Bruce (mother) - My mother was diagnosed with peritoneal mesothelioma in late 2003.  She has undergone chemotherapy treatment and

- 6 -

has ongoing symptoms including fatigue, shortness of breath and pain. Notwithstanding, my mother's doctors are relatively pleased with the fact that her treatment has seemed to have slowed down the progression of the disease in that mesothelioma is normally fatal within one year of the diagnosis;

(d)     Victor Bruce (father) - Testing on CT Scan in 2004 has indicated asbestosis;

(e)     Deborah Favell (sister) - Deborah has undergone x-rays in 2004 but no other specific testing to this point;

(f)     Dennis Bruce (brother) - Dennis has also undergone x-rays in 2004 but no further specific testing to this point; and

(g)     Delbert Bruce (brother) - Delbert has undergone testing in the past few months and has been diagnosed with asbestosis.   Asbestosis may be the precursor to developing mesothelioma.   Testing of Delbert including a PET Scan in 2004 has ultimately determined that, in addition to asbestosis in the lungs, there is one operable cancer site suspected to be mesothelioma.

19.        In addition, one of Mardina's children, who lived in the house for about 3 years, has shown abnormalities on a CAT Scan in 2004 with the diagnosis being asbestosis.

20.        In total, eight members of the Bruce family have either died from or have been diagnosed with diseases known to be caused by exposure to asbestos fibers.   All of my family members, including myself, live in constant fear of developing or worsening of the disease.

21.        I have learned and also been advised by various doctors that early monitoring and detection of the disease process is crucial to initiating timely treatment.

22.        Due to our ongoing communications with and requests for information from the Federal Government, we have learned that its analysis suggests that 593 aboriginal homes were insulated with Zonolite between 1960 and 1990.   I believe that this number underestimates the number of aboriginal homes constructed with Zonolite.

- 7 -

23.        As Allan and I have become known in the community for our efforts to have additional action taken by the Federal Government and others, numerous individuals have approached us to advise that either they or other family members believe that they have been exposed to asbestos fibers on Reserves. We have been making note of the names of such individuals and advising them to seek proper treatment.

**The Government/CMHC**

24.        As is evident from Exhibit "A", my father's application for housing dated January 24, 1964, it has always been known to the Federal Government and the Canada Mortgage and Housing Corporation ("CMHC") that Zonolite was used in the construction of the Family Home and other aboriginal homes. The danger of exposure to asbestos has been known for many years yet it is my belief that the Federal Government has failed to act on this knowledge and continues to take inadequate steps to investigate and monitor aboriginal persons who have been exposed to Zonolite insulation on Reserves. We have retained an expert on the scientific knowledge relating to the harmful effects of asbestos over the years, Barry Casteleman, who will be swearing a separate affidavit. Attached hereto and marked as Exhibit "B" to this my affidavit are excerpts from "Asbestos-Medical and Legal Aspects", fifth edition, (the "Casteleman Book") relating to various positions advanced by the Federal Government on the use and safety of asbestos. In addition to its inaction, the Federal Government has taken an active role in opposing measures that were taken by the Environmental Protection Agency ("EPA") in the United States to limit the dangers of exposure to asbestos. The Federal Government has also promoted the use and alleged safety of asbestos containing products.

25.        Attached hereto and marked as Exhibit "C" to this my affidavit is a letter from DIAND dated May 11, 2004 indicating that it was only then undertaking a review of its internal records to identify the extent of the use of vermiculite insulation on Reserves. Also attached hereto and marked as Exhibits "D" to "F" to this my affidavit are printouts of various documents contained on the websites referred to in Exhibit "C" including the following:

- 8 -

(a)     Exhibit "D" - Health Canada Information Sheet on vermiculite insulation which outlines the review efforts of DIAND and confirms its knowledge that, if ingested or inhaled these fibers, posed a health risk. This document confirms the Federal Government's knowledge that the vermiculite ore produced by the mine in Libby, Montana was dangerous. This sheet also contains a list of various precautionary steps including not allowing children to play in an attic, not using an attic for storage, and ensuring that all cracks and holes in ceilings are sealed to prevent insulation from sifting through;

(b)     Exhibit "E" - Health Canada Information Circular dated April, 2004 further confirming the Federal Government's knowledge of the potential health risk if vermiculite insulation that contains asbestos is exposed to one's living space and also containing a list of precautionary steps; and

(c)     Exhibit "F" - CMHC Information Sheet relating to asbestos including a statement that the concern for the health of asbestos workers was expressed as long ago as the late 1800's with the risks becoming more evident in the late 1960's. There are again recommendations as to how to minimize asbestos risks in the home.

26.         In addition, attached hereto and marked as Exhibit "G" to this my affidavit is a copy of a letter that we received from DIAND on or about July 27 or 28, 2004 together with the spreadsheet referred to in the letter. The letter, which is addressed to the Chief and Council of the Poplar River First Nation, indicates that DIAND's record search revealed Zonolite insulation may have been used in the construction of 5 homes on the Poplar River First Nation including the Bruce Family Home. This letter urges precautionary steps as outlined in the information package sent on May 11, 2004 (Exhibits " C" to "F"). Exhibit "G" is further confirmation that the Federal Government has had and continues to have in its possession documentation confirming its knowledge that aboriginal homes were built with the use of Zonolite insulation. We have been advised by the Federal Government that the review undertaken by DIAND has identified at least 565

- 9 -

homes built on Reserves likely containing Zonolite insulation including 28 in Quebec, 234 in Manitoba, 276 in Saskatchewan, 25 in Alberta, 28 in British Columbia and 2 in the Yukon.

27.        Attached hereto and marked as Exhibit "H" to this my affidavit is a copy of an article from the Seattle Post Intelligencer website dated February 11, 2000. The article makes reference to the fact that Canada continues to fight a worldwide ban on asbestos in order to protect the Canadian Asbestos Industry even though many European countries have determined that asbestos should be banned on the basis that there is no safe exposure level to the cancer causing fiber. The article indicates that Canada continues to maintain this position notwithstanding the report of a scientific committee which found that there is sufficient evidence that all forms of asbestos, including chrysotile, are carcinogenic.

**W.R. Grace & Company**

28.        Documents that I have reviewed indicate that the W.R. Grace & Company is incorporated in the State of Delaware and which, in 1963, purchased the Zonolite Company which operated the world's largest vermiculite mine in Libby, Montana. Attached hereto and marked as Exhibit "I" to this my Affidavit are pages 574 to 581 of the Castleman Book. These pages set out some of the corporate history of W.R. Grace & Co.    Reference is also made to various documentation that has been produced in legal actions in the United States demonstrating the knowledge that W.R. Grace & Co. had of the dangers and health hazzards associated with its products which, to its knowledge, contained tremolite asbestos.

29.        Our legal counsel has set out in a separate affidavit the various corporate searches undertaken relating to our efforts to properly identify the various U.S. and Canadian companies operating over the course of time in conjunction with W.R. Grace & Co. All of the corporate defendants presently named in the legal action, with the exception of Grant Industries Ltd., are believed to, at one time or another, have operated in enterprise with W.R. Grace & Co. (referred to collected hereafter as the "Grace Defendants").

- 10 -

30.         Subsequent to the commencement of legal proceedings on October 25 and 26, 2004, we learned through our legal counsel that another corporate entity, which was not named as a defendant, Grace Canada Inc., had filed for protection pursuant to section 18.6 of *The Company's Creditors Arrangement Act*, R.S.C. 1985, C.c-36, (the "CCAA"). Neither in any of our own research nor in the corporate searches undertaken by our legal counsel, did we identify the corporate entity known as Grace Canada Inc.  We were also unaware of its Application or the Order that it obtained pursuant to the CCAA on April 4, 2001.  Attached hereto and marked as Exhibits are the following documents:

(a)    Exhibit "J" - Notice of Application filed by Grace Canada Inc. in the Ontario Superior Court of Justice on April 4, 2001;

(b)    Exhibit "K" - Body of the affidavit of Pierre Le Bourdais (i.e. without exhibits) sworn on April 3, 2001 with Mr. Le Bourdais identifying himself as treasurer of Grace Canada Inc.; and

(c)    Exhibit "L" - Initial Order of Mr. Justice Farley dated April 4, 2001 (this copy of the Initial Order is unsigned but our legal counsel has been advised by counsel for the Grace Defendants that the Order was granted and entered); and

(d)    Exhibit "M" - a cover page from a document filed in the United States Bankruptcy Court for the District of Delaware which sets out the names of the 62 entities related to W.R. Grace & Co. and on whose behalf the Chapter 11 proceedings were commenced.

31.         I am advised by our legal counsel that counsel for the Grace Defendants has also provided him with copies of various reports filed in the CCAA proceedings by Mr. Le Bourdais who is referred to as the "Information Officer" in the Initial Order.  These reports and other material indicate that W.R. Grace & Co. voluntarily filed for reorganization on April 2, 2001 pursuant to a special provision of Chapter 11 of the United States Bankruptcy Code with the filing taking place in the U.S. Bankruptcy Court in Delaware.  I am advised by my legal counsel that he has been advised by legal counsel in the United States that these special provisions of Chapter 11 permit a

- 11 -

company facing asbestos claims to file for protection from legal actions even if the company is not insolvent or bankrupt. I am advised by my legal counsel that the reports filed by Mr. Le Bourdais in the CCAA proceedings indicate that, in the almost 4 years since the filing under Chapter 11, essentially nothing has happened to allow for timely resolution of personal injury claims arising from exposure to Zonolite attic insulation. Based upon the report provided to our legal counsel dated October 29, 2004, it is indicated that the Ontario Court has granted an Order extending the stay of proceeding against Grace Canada Inc. to April 1, 2005 and that the U.S. Court continues to defer a hearing on proposals for case management of the personal injury claims and that numerous case management motions remain unresolved. I am advised by Mr. Ferbers that, by way of letter dated March 17, 2005, counsel for the Grace Defendants provided Mr. Ferbers with the fourteenth report of Mr. Le Bourdais dated February 28, 2005. This report attaches an "Amended Joint Plan of Reorganization" which is not yet approved. Mr. Ferbers advises that he has not yet had an opportunity to fully consider the proposed plan.

32.        The Olgivy Renault law firm, as legal counsel to the Grace Defendants and Grace Canada Inc., alleges that our legal counsel, Mr. Ferbers, is in a conflict of interest. I am advised by Mr. Ferbers that counsel for the Grace Defendants has also advised that it is the intention of the Grace Defendants to apply in the CCAA proceedings to seek similar protection for the Grace Defendants as has been ordered for Grace Canada Inc. Upon resolution of the allegations of conflict of interest, if it is determined that we may continue to be represented by Mr. Ferbers, we intend to immediately proceed with the motion to have Rebecca and I named representative plaintiffs and obtaining an Order approving certification of the legal proceedings as class proceeding.

33.        I have read the affidavit sworn by Mr. Le Bourdais on April 3, 2001, including paragraphs 23 and 24 where Mr. Le Bourdais claims that the company's processing eliminates "virtually all of the tremolite" and that the company believes that Zonolite attic insulation poses no significant health risks. I was shocked to read this. I believe that Mr. Le Bourdais' affidavit is misleading and does not provide full and frank disclosure to the Ontario Court of the knowledge, past conduct and culpability of Grace Canada Inc. and the Grace Defendants.

- 12 -

34.        Mr. Le Bourdais ignores the scientific evidence that has been generated worldwide and which confirms the danger of the products of the Grace Defendants.

35.        Subsequent to the commencement of the legal proceedings in Manitoba, I have learned that, on or about February 7, 2005, the W.R. Grace Company and seven of its current or former executives have been charged pursuant to a Federal Grand Jury indictment for conspiring to endanger the residents of Libby, Montana and concealing the health risks from asbestos contaminated vermiculite. Attached hereto and marked as Exhibits "N" and "O" are copies of articles from the Associated Press and Reuters news services dated February 7 and 8, 2005. These articles indicate that the Indictment suggests that the conspiracy began in 1976 and continued until 2002. In view of this new information, we will be seeking to amend the claim against the Grace Defendants (and ultimately Grace Canada Inc.) to include allegations of fraudulent concealment, fraudulent misrepresentation and other such deliberate conduct.

36.        In addition, I have learned that legal actions have been commenced in the United States alleging that W. R. Grace & Co. and a number of the Grace Defendants have engaged in fraudulent transactions to spinoff and shield key assets from lawsuits by asbestos victims. Attached hereto and marked as Exhibit "P" to this my affidavit is a copy of a newspaper article which I believe appeared in either 2000 or 2001 relating to the accusations of fraudulent dealings by some of the Grace Defendants. The legal actions are described as challenging the validity of various asset sales involving subsidiaries of W.R. Grace & Co. and the Speciality Packing Division dating back at least to 1996 in order to evade asbestos liabilities. I am advised by my legal counsel that Mr. Le Bourdais states in his Reports filed in the CCAA proceedings that the fraudulent transfer and conveyance claims have been resolved by way of a settlement agreement that still needs approval and that does not involve W.R. Grace & Co. or its 61 subsidiaries.

37.        Attached hereto and marked as Exhibit "Q" to this my affidavit is a copy of an article from the Seattle Post Intelligencer dated December 22, 1999. The article refers to the fact that W.R.

- 13 -

Grace & Co. ignored for many years the signs of asbestos contamination that doctors and health officials were saying would be killing people. There is reference to a coverup perpetrated by the company and the fact that there are hundreds of company documents showing it knew that workers were at risk but that the company continued to represent, as does Mr. Le Bourdais, that there is no danger. There is also reference to evidence advanced in U.S. legal actions indicating that the company decided not to warn the public about a potential health hazzard because it would be bad for business. There is also reference in this article to the correspondence attached as Exhibit "V" to this my affidavit.

38.        I am advised by our legal counsel, Mr. Ferbers, that attached hereto and marked as Exhibits " R" to "T" are examples of judicial decisions which refute any contention by Mr. Le Bourdais in his affidavit that judicial decisions have generally been rendered in favor of W.R. Grace & Co.:

     (a)        Exhibit "R" - an excerpt from a U.S. publication known as Mealey's Litigation Reports dated November 17, 1989 which references a case in Illinois wherein W.R. Grace & Co. acknowledged being aware of a report referred to as Zonolite Vermiculite Ore Review dated July 24, 1969 which report is attached hereto and marked as Exhibit "S" to this my affidavit. The report concluded that the vermiculate from W.R. Grace's mines in Libby, Montana contained tremolite asbestos dust which was difficult to separate in the mill and which was a definite health hazzard;

     (b)        Exhibit "T" - a two page decision of the South Central Judicial District Court of the State of North Dakota wherein the court concluded that the evidence raised a reasonable inference that both the raw material of W.R. Grace & Co. and its finished products may contain sufficient tremolite asbestos to be harmful; and

     (c)        Exhibit "U" - a decision from the Missouri Court of Appeals, Eastern District, Division Three dated February 2, 1993 finding that there was

- 14 -

sufficient evidence to establish causation between W.R. Grace & Company's asbestos containing tremolite and the development of a tumor in the plaintiff.

**Grant Industries/Eddy Match Company Limited**

39.         During the course of investigating the distribution chain of Zonolite in Canada, particularly Western Canada, searches undertaken both by ourselves and by our legal counsel suggested that a company, or a group of companies, known as Grant Industries Ltd. was involved in the importing, processing, distribution and sale of Zonolite in Canada.   Our legal counsel undertook various Corporations Branch searches of Grant Industries and identified a number of companies seemingly operating in enterprise with Grant Industries Ltd.

40.         Based upon documents that I have reviewed, it is my belief that Grant Industries Ltd. was the primary processor and distributor of Zonolite in Western Canada.   In that the corporate searches undertaken by our legal counsel suggested that there were no active companies associated with the Grant Industries Ltd. involved in the distribution of Zonolite, we do not have any specific address to serve the Notice of Application or Statement of Claim on Grant Industries Ltd.

41.         Attached hereto and marked collectively as Exhibit "V" to this my affidavit are copies of various memos and letters dated between September 16, 1964 and February 9, 1965 relating to Grant Industries Ltd. operating in Western Canada. These letters refer to concerns about the danger of the asbestos being supplied by the W.R. Grace Company.  This documentation includes the following comments:

     (a)      In reference to the use of vermiculite from W.R. Grace & Co. - "Asbestos is well known as the cause of lung fibrosis";

     (b)      In reference to testing of workers at the Zonolite plant of Grant Industries Ltd. in Calgary - "this number of men with breathing abnormalities in a group of 9 is most unusual and puzzling ... since vermiculite is a micaceous material

- 15 -

this leaves us somewhat uneasy.  We are of the opinion that a more detailed study of these men by a chest specialist would be desirable ....”; and

(c)     In reference to dealing with the Alberta Department of Public Health - “I am attaching a few articles that presents the picture in the U.S. very clearly. There are very tight laws in the some States like New York and California where some States have none.  Each area should be investigated for City, County and State laws.  The U.S. federal government is now getting into the act.  I am sure that it will not be long until there will be very strict laws in almost all areas.  It is much better to stay ahead of them and act before they do.  Frankly, we will have no other choice before long.  It is my opinion that trying to save a few dollars on installation of the initial dust collection equipment will be a poor investment.”

42.          Further, attached hereto and marked collectively as Exhibit “W” to this my affidavit is a letter dated December 10, 1968 and an Attending Physician’s Statement dated December 4, 1968 referencing an employee at the Winnipeg plant of Grant Industries Ltd. by the name of Paul Annen. The letter from Grant Industries Ltd. to W.R. Grace & Co. dated December 10, 1968 points out that Mr. Annen was suffering from asbestosis and makes reference to an article on the effects of asbestos which was not being circulated to employees within the company.  This letter also references knowledge that the exposure of employees to asbestos is an unnecessary health hazzard which in turn may lead to large claims.  Also attached hereto and marked as Exhibit “X” to this my affidavit is a Memorandum dated June 1, 1970 which again speaks about asbestos and staying unscrupulous, unethical and mean in selling its asbestos containing product, Mono-Kote.

43.          The documentation referred to in paragraphs 41  and 42 above was obtained on or about October 27, 2004.  It is around this time that we (Allan and I) learned that Grant Industries Ltd. operated as a division of the Eddy Match Company Limited.  We have also only recently learned (on about March 8, 2005) that there were 9 plants exfoliating asbestos in Canada with there being five plants in Western Canada including one each in Winnipeg, Regina, Edmonton, Calgary and

- 16 -

Vancouver with all of the Western Plants operating under the name of Grant Industries Ltd.. While Grant Industries Ltd. listed its head office as Vancouver and seems to have been out of operation for many years, it is my understanding that the Eddy Match Company continues to operate with its head office located at 100 Crandall Street in Pembrooke, Ontario. It is for this reason that we wish to add the Eddy Match Company as a respondent/defendant to the legal proceedings. We are also requesting an extension of time for service of the legal proceedings on Grant Industries Ltd. and that service may be effected by serving the documents on the Eddy Match Company.

44.        I am advised by our legal counsel, Mr. Ferbers that attached hereto and marked as Exhibit " Y " to this my affidavit is a printout from a data base that he obtained through inquiries that were made of the U.S. Environmental Protection Agency ("EPA") relating to facilities that received crude ore from the W.R. Grace & Co. vermiculate mine in Libby, Montana. The two page printout attached as Exhibit " Y" relates to search criteria limited to Manitoba, Canada. I am advised by Mr. Ferbers that he received the database on about October 22, 2004. This printout also refers to Grant Industries Ltd. as a division of the Eddy Match Company. I am also advised by Mr. Ferbers that he was cautioned by the representative from the EPA that the database is not a complete listing of shipments made by the W.R. Grace Co.

**Representative Plaintiffs**

45.        I believe that both Rebecca and I would be appropriate representative plaintiffs if our legal proceedings are permitted to proceed as class proceedings. It is our present intention to proceed only with certification of the class set out at paragraph 4(c) of the statement of claim, that is, limiting the class of persons proceeding at this time to individuals exposed on Reserves (or designated lands) including those eligible as a result of their relationship to any deceased persons pursuant to *The Fatal Accidents Act.* Our proposed class would include those persons who have been exposed in Manitoba or elsewhere in Canada to asbestos or asbestos containing products, particularly Zonolite attic insulation, while living on Reserves or designated lands, and who have or may suffer in the future personal injury as a result of the action or inaction of one or more of the defendants.

- 17 -

46.　　　Rebecca is still recovering from her therapy and so has not yet sworn an affidavit.

47.　　　Attached hereto and marked collectively as Exhibit "Z" are numerous newspaper articles, transcripts of interviews and other such documentation relating to my efforts to publicize the dangers of exposure to Zonolite and other asbestos containing products, and to seek action from the Federal Government. Both Allan and I also recently attended before a Senate Committee to do a presentation on these issues.

48.　　　With respect to the possibility of Mr. Ferbers being removed as our legal counsel, my family and I request that the court not do so. We have been working with Mr. Ferbers for many months and want him to continue to be our lawyer. I am aware that Mr. Ferbers' law firm was the registered agent for service for one or more of the Grace Defendants. I am also aware that his law firm may have done other work for more than one of the Grace Defendants. In our eyes, this does not create a conflict of interest and we ask the court to honour our choice of legal counsel.

49.　　　I make this affidavit *bona fide*.

SWORN before me at the City of　　　)
Winnipeg, in the Province of　　　　)
Manitoba, the _____ day of　　　　)　　　RAVEN THUNDERSKY
March, 2005　　　　　　　　　　　　)

A Barrister-at-Law in and for the
Province of Manitoba