UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: W.R. GRACE & CO., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>(Jointly Administered)<br><br>Hearing Date: April 22, 2008 @ 11:30 a.m.<br><br>**Re: D.I. 18326 and 18327** |

### REPLY TO GRACE'S OPPOSITION TO ZAI CLAIMANTS' MOTION FOR ORDER TO SHOW CAUSE WHY EXPERT WITNESSES SHOULD NOT BE APPOINTED

Grace objects to the appointment of a Court expert on essentially two grounds. First, Grace claims that the purposes for which ZAI claimants seek the engagement are irrelevant to Grace's bankruptcy proceedings. Second, Grace claims that its experience with traditional property damage claims provides a suitable model for tackling ZAI claims. Grace is wrong on both counts.

**I.   Grace's ZAI Liabilities Can be Understood and Estimated Without Identifying Individual ZAI Claimants; Effort to Identify Individual ZAI Claimants, By Contrast, Cannot Possibly Result in an Accurate Determination of Grace's ZAI Liabilities.**

Grace's opposition to the appointment of a Court expert essentially reflects its false view that a bar date notice is capable of ascertaining (and disposing of) the universe of ZAI claims. There are insurmountable barriers to success in such an enterprise, which underscores the value of Court appointment of an expert to estimate ZAI claims. While the prospect of personal injury and property damage from Grace's commercial asbestos product have been long known, asbestos contamination of ZAI became a matter of limited public disclosure only months before Grace's filing of its bankruptcy petition. Grace, thus, arrived in bankruptcy with a mature community of

personal injury claimants, a community of traditional property damage claims so aged that very few yet remained unresolved, but with no track record as to its ZAI liabilities. The identities of ZAI homeowners are, for all practical purposes, unknown. More problematic still, ZAI homeowners are largely incapable of self-identification. They remain essentially unaware that ZAI is contaminated with asbestos, unaware of whether their homes contain ZAI, and unadvised as to whether they have an existing claim against Grace. These insurmountable barriers to ascertaining of Grace's liabilities through an individual proof of claim process point the way toward a readily available means of gauging and estimating Grace's ZAI liabilities.

Court appointment of an expert would aid the Court in understanding and estimating Grace's ZAI liabilities. Expertise can bring into focus the numbers of remaining homes fitted with Zonolite Attic Insulation, both retrospectively and prospectively. This information is important to understanding the potential aggregate size, maturation, and longevity of ZAI claims. Expertise can provide important information as to geographical and jurisdictional distribution of ZAI, matters potentially affecting the existence, nature, and value of ZAI claims. Expertise can afford valuable information concerning the likelihood of and frequency of disturbance activities that would involve asbestos containment or abatement activities, matters relevant to potential plan provisions that provide for ZAI claims over time. Grace sees the number of remaining ZAI homes as an "irrelevancy." Viewed in the proper context of such important matters as state accrual laws, state substantive laws governing claims and remedies, and basic due process considerations, the number of remaining ZAI homes is among the most central considerations important to Grace's reorganization.

## II. Grace's Comparison to the Traditional Property Damage Cases Shows Precisely Why Estimation and Not a Bar Date is the Proper Way to Evaluate the Universe of ZAI Claims.

To support its position that estimation is unhelpful, Grace recounts that over 4,000 property damage claims were filed in response to the bar date and many were subsequently dismissed or abandoned. Grace Opp. at 3. From this, Grace reasons that only a bar date can identify the "real" claimants, as opposed to those who may have ZAI but never file a claim. Far from making Grace's point, Grace's comparison to the traditional property damage cases shows just the opposite. Grace posits that because a significant number of the 4,000 traditional property damage claimants elected not to pursue their claims, it is likely that a similarly large percentage of ZAI homeowners would never pursue bankruptcy claims. In Grace's view, therefore, estimation of the number of ZAI homes would greatly overestimate the universe of claimants, as opposed to homeowners. Grace Opp. at 4.

Traditional asbestos property damage litigation had been ongoing for twenty years when Grace filed for bankruptcy. The vast majority of property damage claimants who wished to pursue claims had already filed suits by that time. Grace had already paid over $696 million to resolve their cases.[1] Many of those lawsuits involved multiple claimants.[2] Conservatively estimated, Grace had already resolved the claims of well over 40,000 claimants when it filed for bankruptcy.[3] Thus, the 4,000 claims Grace touts as its "universe" of traditional property damage claims were actually the tail end of that litigation.

Rather than standing for the proposition that any estimation of property damage claims

---

[1] See Grace Form 10-K (Feb. 29, 2008), Attachment A hereto.

[2] For instance, the National Schools Class Action involved over 36,000 claimants. *In re School Asbestos Litigation*, 789 F.2d 996 (3rd Cir.), *cert denied* 479 U.S. 56 (1986). The National College and Universities Class Action involved over 3,000 claimants. *Central Wesleyan College, et al v. W.R. Grace*, 6 F.3d 177 (4th Cir. 1993). Texas and Michigan class actions involved hundreds more claimants.

-3-

would be grossly misleading, Grace's argument simply shows that when most of the existing claims in a "universe" had already been resolved by the payment of over $696 million, there was very little left of the original "universe." But Grace's statistics, as imperfect as they are, do reveal some important facts. First, asbestos property damage claimants have been a significant liability for Grace. A company does not pay $696 million where it has no liability. Indeed, Grace has already agreed to pay $82 million more in this bankruptcy to resolve the "tail end" of the traditional asbestos property damage litigation – litigation that Grace claimed was essentially over before it filed for bankruptcy.[4] The ZAI litigation, brought under the same theories as the traditional asbestos property damage litigation, is likewise a real litigation issue for Grace, despite Grace's attempt to deride it. Obviously, not every claimant will pursue a claim. But the traditional asbestos property damage litigation history, far from supporting Grace's position, shows that the vast majority of traditional asbestos property damage claimants did pursue claims and Grace paid heavily for them.

Estimation of the universe of ZAI claims through a court-appointed expert is not the end of the story. Other data points will be needed, such as the propensity of claimants to bring claims. This estimate can be informed by the traditional asbestos property damage experience, including the pre-bankruptcy experience. The ZAI Claimants offer the appointment of this expert as an aid in reaching an understanding of the parameters of the ZAI issue, not as the total solution. It is also important that determination of Grace's liability for ZAI move ahead through an appeal of the ZAI Opinion and/or determination of the legal theories controlled by the ZAI Opinion. In the alternative, the best test of Grace's liability in the tort system is to test Grace's

---

3 Grace admits that the resolved property damage cases "involved thousands of buildings". Attachment A.

4 Attachment A.

liability in the tort system. This can be done by lifting the litigation stay and allowing ZAI to return to the tort system.

In contrast, Grace wants nothing to occur on ZAI other than a bar date. Grace believes it is in the best position it will ever be on ZAI right now. It does not want the Claimants to get a hearing in the tort system on the validity of their claims. It does not want this Court to facilitate an appeal of the ZAI Opinion that could undermine Grace's dominant negotiating position. It does not want class certification that could permit the small claimants to stand on equal footing with Grace. And it does not want a mediator who might bring an impassioned viewpoint to the issues. The ZAI Claimants have proposed each of these as a way to move the bankruptcy to a just resolution for ZAI and Grace.

## II.     The Traditional Property Damage Experience Illustrates the Unfairness of Grace's Bar Date Plans.

Grace proposes to give the ZAI Claimants, virtually none of whom have ever heard anything about ZAI, fifty days to submit a proof of claim or be forever barred from asserting a ZAI claim. In contrast, traditional asbestos property damage claimants had over twenty years to file their claims as they learned of their problem. During that time, Congress passed two national laws concerning asbestos in school buildings[5], EPA published numerous guidance books concerning asbestos in public and commercial buildings[6], and publicity was rampant about asbestos in schools and public buildings. Even after all of this publicity and hundreds of lawsuits, there were still numerous building owners left to file claims against Grace in the bankruptcy – claims for which Grace has already agreed to pay over $82 million.[7] In contrast,

---

5 Asbestos School Hazard Detection and Control Act, 20 USC §3601 (1980); Asbestos Hazard Emergency Response Act, 15 USC §2651 (1986).
6 Examples of the many EPA publications from the 1970s to 1990s are attached. Attachment B.
7 Attachment A.

homeowners facing a ZAI problem have not had the benefit of congressional acts, numerous EPA guidance documents, or the extensive publicity that accompanied the asbestos in public and commercial buildings experience.[8] Yet Grace proposes to cut off all rights of these homeowners if they fail to send in a form fifty days after Grace's publicity campaign.

Even if this Court were to accept Grace's proposal, Grace will not end its ZAI problem. All Grace will do is shift the argument over ZAI into the appellate courts and, eventually, into the state courts post-confirmation. A bankruptcy notice cannot cause a claim to accrue when it has not yet accrued under state law. A bar date cannot cut off claims that accrue after the bankruptcy. *In re Frenville Co., Inc.,* 744 F.2d 332, (3rd Cir. 1984). Under the controlling law in the vast majority of states, asbestos property damage claims do not accrue until the building suffers contamination and the owner becomes aware or should have become aware of the contamination. *See e.g. MDU Resources Group v. W.R. Grace & Co.*, 14 F.3d 1274 (8th Cir. 1994). This is why traditional asbestos property damage claims were not all cut off within one or two years after the first asbestos property damage suits in the early 1980s. Until an owner became aware or should have become aware of the contamination, the claim did not accrue and limitations periods did not begin to run. *See San Francisco Unified School Dist. v. W.R. Grace & Co.*, 37 Cal.App. 4th 1318, 44 Cal. Rptr. 2d 306 (Cal. Dist. Ct. App. 1995). In its landmark decision last term, the Supreme Court cautioned that bankruptcy courts must follow state rules concerning the elements of claims. *Travelers Cas. & Surety Co. v. Pac. Gas & Elec. Co.*, 127 S.Ct. 1199, ___ U.S. ___ (2007). *Travelers* confirms the wisdom of the Third Circuit in *In re Frenville Co.* and its progeny in consistently refusing to allow bankruptcy exigency to trump state law. In contrast to Grace's "rush to bar date" philosophy, the ZAI Claimants have long promoted a rational

---

8 As the Court is aware, EPA distributed a "Best Practices" document for ZAI in 2003, which has never been

discussion of ZAI with the hope of convincing Grace that long-term programmatic remedies coordinated by a bankruptcy-created facility serve both the needs of ZAI homeowners and Grace's reorganization. To date, this approach has fallen on deaf ears.

Dated: April 15, 2008
      Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

*/s/ William D. Sullivan*

William D. Sullivan (No. 2820)
Elihu E. Allinson, III (No. 3476)
4 East 8th Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 428-8191

-- and --

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue
Chronicle Building, Suite 680
Spokane, Washington 99201
Telephone: (509) 455-3966

-- and --

RICHARDSON, PATRICK, WESTBROOK
& BRICKMAN, LLC
Edward J. Westbrook
Robert M. Turkewitz
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, South Carolina 29464
Telephone: (843) 727-6500

*Special Counsel for ZAI Claimants*

followed up with anything more extensive.