IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| W.R. GRACE & CO., et al., | ) Case No. 01-01139 (JFK) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) Re: Docket Number 18271 |

**UNITED STATES' JOINDER IN DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING SETTLEMENT AGREEMENT REGARDING THE LIBBY ASBESTOS SITE (DOCKET NO. 18271)**

The United States submits this Joinder in Debtors' Motion for Entry of an Order Authorizing Settlement Agreement Resolving the United States' Proofs of Claim Regarding the Libby, Montana Asbestos Site.  See Docket No. 18271.  In support of this Joinder, the United states avers as follows:

1.  On March 11, 2008, the United States on behalf of United States Environmental Protection Agency ("EPA"), lodged a Settlement Agreement with W.R. Grace & Co. and certain of its affiliates (collectively "Debtors" or "Grace"), that will resolve, as provided in the Settlement Agreement, EPA's claims for the cleanup of environmental contamination at the Libby Asbestos Site under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq.

2.  In its Notice of Lodging, the United States informed the Court that it would seek public comment on the proposed Settlement Agreement.  The United States subsequently sought such public comment.  See 73 Fed. Reg. 14,270 (March 17, 2008).

3.  The United States received a comment on the Settlement Agreement signed by a group of 401 Libby residents.  This comment, which is attached as Exhibit 1, supports entry of

the settlement agreement "contingent on certain assurances" to the Libby community. The comment lists the following three concerns: 1) that the settlement funds and interest "be used exclusively for the Libby Superfund Site and exclusively for future costs beginning on the date of execution of the Settlement Agreement"; 2) that a portion of the settlement funds be used to complete a "conclusive and reliable risk assessment"; and 3) that EPA begin to establish operation and maintenance criteria for the remedial action and that adequate funding be available for operations and maintenance. The comment also requested that the Court acknowledge that Grace is responsible for medical costs associated with asbestos-related disease in Libby and that Grace is a substantial contributor to the failure of the local economy and for the socio-economic suffering of the Libby community.[1] The United States received a separate comment on the Settlement Agreement from Mel and Lerah Parker, two residents of Libby. This comment, which is attached as Exhibit 2, seeks assurances that the definition of "response costs" in the Settlement Agreement includes costs related to the performance of a risk assessment.

4. With regard to the concern regarding the use of the settlement proceeds, the Settlement Agreement provides that the proceeds be placed in the Libby Asbestos Site Special Account within the Hazardous Substance Superfund. See Settlement Agreement ¶ 8. The settlement proceeds include any interest paid pursuant to Paragraph 5 of the Settlement Agreement. Id. Under EPA policy, funds in a special account for a specific site are used at the site until: 1) all work (including operation and maintenance), as defined by the Record of Decision, is complete; 2) an evaluation by delegated officials determines that funds in the

---

[1] Grace's purported responsibility for medical costs associated with asbestos-related disease in Libby and for the region's economic woes are beyond the scope of this settlement agreement, which addresses Grace's liability to the United States for CERCLA response costs.

account far exceed future response costs at the site; or 3) the Record of Decision determines that no further action is necessary.  The policy gives EPA flexibility to transfer funds from a special account to the general Hazardous Substance Superfund in the event of exigent circumstances.  However, EPA expects that the settlement proceeds (including interest) will be spent on future costs at the Libby Asbestos Site (excluding Operable Unit #3, which is a priority administrative expense pursuant to Sections 503(b)(1) and 507 of the Bankruptcy Code, 11 U.S.C. §§ 503(b)(1) and 507, and is not covered by the Settlement Agreement, see Settlement Agreement ¶ 13).

5. With regard to the comments regarding the risk assessment, EPA is required by Section 300.430(d)(4) of the National Contingency Plan, 40 C.F.R. § 300.430(d)(4), to perform a baseline risk assessment to characterize current and future threats to human health and the environment.  EPA is currently undertaking a baseline risk assessment and will continue to do so whether the funding is obtained from this Settlement Agreement or from the EPA Hazardous Substance Superfund.  As noted above, EPA intends to use the settlement proceeds to pay for future response actions, which would include completion of the baseline risk assessment and other related studies.  EPA will follow its policies in drafting the risk assessment.  Whether it proves to be "conclusive and reliable" will be a matter of opinion.

6. The third comment in the community letter relates to the sufficiency of funds specifically obligated to Operations and Maintenance ("O&M") activities at the site.  The Settlement Agreement provides that EPA will retain a portion of the settlement proceeds – $11 million – in a special account specifically dedicated to paying for O&M expenditures.  The types of activities that will constitute O&M activities will be determined in the Record of Decision for Operable Unit #4 of the Libby Asbestos Site, which is not expected to be completed until

approximately 2012. In the absence of a Record of Decision, EPA estimated the potential cost of operation and maintenance based on information currently known about the Site. If more than $11 million is needed to fund O&M activities, EPA will consider moving funds from the general Libby Asbestos Site Special Account into the O&M special account. It is important to note that the State of Montana Department of Environmental Quality has filed a proof of claim against Debtors that is currently pending. That proof of claim includes a claim for state O&M expenditures. Resolution of that claim may provide an additional source of funding for O&M expenses, a factor that EPA considered when allocating $11 million of the settlement proceeds to O&M expenses.

7.   The well settled standard applied to review of the United States' proposed settlements under environmental laws is whether the settlement is fair, reasonable and consistent with the environmental laws. In re Tutu Water Wells CERCLA Litig., 326 F.3d 201, 207 (3d Cir. 2003); United States v. Southeastern Pa. Transp. Auth., 235 F.3d 817, 823 (3d Cir. 2000); United States v. Akzo Coatings of Am., Inc., 949 F.2d 1409, 1424, 1426 (6th Cir. 1991); United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990). Review of such settlements is committed to the discretion of the reviewing court, see United States v. Hooker Chem. & Plastics Corp., 776 F.2d 410, 411 (2d Cir. 1985), which is to exercise this discretion in a limited and deferential manner, Akzo Coatings, 949 F.2d at 1424; Cannons Eng'g, 899 F.2d at 84. A reviewing court "must generally be at its most deferential" in reviewing settlements of agencies charged with primary responsibility for enforcing the environmental laws because the "federal courts have neither the time nor the expertise [to make] scientific decisions regarding toxic

substance cleanup." <u>Akzo Coatings</u>, 949 F.2d at 1424 (quoting <u>Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.</u>, 462 U.S. 87 (1983)).

8.  The proposed Settlement Agreement represents a reasonable and fair compromise of Debtors' liability for cleanup of the Libby Asbestos Site. The Settlement Agreement, which was the result of several years of arm's length negotiations by experienced counsel, requires Debtors reimburse EPA for a significant portion of its past and expected future cleanup expenditures. The settlement avoids the need for protracted and expensive litigation and adjudication of the factual and legal issues that would otherwise further deplete the limited funds of the Debtors. It also benefits the public by ensuring that funding is available to enable EPA to clean up contaminated properties in and near Libby in an expeditious matter. For these reasons, the proposed Settlement Agreement is fair, reasonable and consistent with the environmental laws.

9.  Accordingly, the United States requests entry of an Order (<u>see</u> Docket No. 18271, Ex. B) approving the Settlement Agreement related to the Libby Asbestos Site.

    Respectfully submitted,

    RONALD J. TENPAS
    Assistant Attorney General
    Environment and Natural Resources
     Division

    <u>  s/ James D. Freeman           </u>
    JAMES D. FREEMAN
    Trial Attorney
    Environmental Enforcement Section
    United States Department of Justice
    1961 Stout Street, Eighth Floor
    Denver, CO 80294-1961
    (303) 844-1489