IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) Case No. 01-1139 (JKF) |
| W.R. GRACE & CO., <u>et al</u>. | ) (Jointly Administered) |
|  | ) |
|  | ) Related Dkt. Nos. 11919, 12378 |
| Debtors. | ) Objection Deadline: May 12, 2008 |
|  | ) Hearing Date: June 2, 2008 at 1pm |
|  | Pittsburgh, PA |

**APPLICATION OF DAVID T. AUSTERN, FUTURE CLAIMANTS'
REPRESENTATIVE, FOR AUTHORIZATION TO MODIFY THE
EMPLOYMENT OF PIPER JAFFRAY & CO. AS FINANCIAL
ADVISOR TO THE FUTURE CLAIMANTS' REPRESENTATIVE**

David T. Austern, the Court-appointed legal representative for future asbestos personal injury claimants (the "Future Claimants' Representative" or "FCR"), hereby submits this application (the "Application") for the entry of an Order, pursuant to sections 328 and 1103(a) of Title 11 of the United States Code (the "Bankruptcy Code"), authorizing and approving modification of the retention and employment of Piper Jaffray & Co. ("PJC") as financial advisor to the Future Claimants' Representative, and further respectfully represents as follows:

**Jurisdiction and Venue**

1.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory basis for the relief requested herein is section 1103(a) of the Bankruptcy Code.

**Background**

2.  On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. and 61 affiliated entities (collectively, the "Debtors") each filed a petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are

continuing in the management of their respective businesses and possession of their respective properties as debtors in possession.

3. By Order dated May 24, 2004, the Court appointed the FCR for these jointly administered cases (Bankr. Dkt. No. 5645).

4. On March 1, 2006, the FCR filed an application for authorization to employ PJC as his financial advisor in these cases, effective as of February 13, 2006 (the "Retention Application") (Bankr. Dkt. No. 11919). The terms of PJC's employment were mutually agreed upon by letter dated February 16, 2006 (the "Retention Agreement"), a copy of which was filed with the Retention Application.

5. By Order entered on May 8, 2006, the Court authorized the FCR to retain and employ PJC pursuant to the terms set forth in the Retention Agreement (Bankr. Dkt. No. 12378).

6. Pursuant to the Retention Agreement, Joseph J. Radecki, Jr. ("Mr. Radecki") and other professionals at PJC had primary responsibility for providing financial advisory services to the FCR. The Retention Agreement also provides that if Mr. Radecki ceases to be employed by PJC, PJC shall give prompt notice to the FCR and the FCR has the right to terminate the Retention Agreement immediately by giving notice to PJC.

7. The FCR has been advised that Mr. Radecki ceased to be employed by PJC, effective as of March 2, 2008. The FCR has also been advised that, as of March 28, 2008, effective as of March 2, 2008 and continuing until August 29, 2008, PJC engaged Tre Angeli LLC ("Tre Angeli"), an entity of which Mr. Radecki is the sole member, as an independent contractor to assist PJC's investment banking team for several engagements, including these cases, pursuant to the terms and conditions set forth in the Agreement for Services of

Independent Contractor ("Independent Contractor Agreement"), a copy of which is attached hereto as Exhibit A.[1]

8.  Subject to approval of the Court, PJC and Mr. Radecki (through Tre Angeli) will continue to provide financial advice to the FCR pursuant to the modified retention letter dated April 1, 2008 between the FCR and PJC (the "Modified Retention Agreement"), a copy of which is attached hereto as Exhibit B. The FCR has agreed that, subject to approval of the Modified Retention Agreement and this Application, the FCR will not terminate PJC's engagement upon the ground that Mr. Radecki has ceased to be a PJC employee, for so long as Mr. Radecki is available to provide advisory services to the FCR through the Independent Contractor Agreement. The terms of the engagement with PJC are substantially the same in all material respects as the original engagement, except as set forth in more detail below.

## Relief Requested

9.  By this Application, the FCR seeks to modify the retention and employment of PJC as his financial advisor in these cases in order to continue to receive the services provided by PJC and Mr. Radecki.

10. Mr. Radecki has provided financial advice to the Future Claimants' Representative in these cases since 2004 when he was Managing Director at CIBC World Markets Corp. As a result of his numerous years of experience in these cases as well as in other asbestos bankruptcy cases, particularly as financial advisor to future claimants' representatives in such cases, he is most familiar with these cases, and with the concerns and issues important to the Future Claimants' Representative and to asbestos personal injury claimants who may assert claims or demands in the future. The core team of other professionals who have worked with

---

[1] The payment terms in the Independent Contractor Agreement relating to Tre Angeli's services in the VICORP bankruptcy case have been redacted.

3

Mr. Radecki on this engagement since 2004 remain with PJC.  Accordingly, the Future Claimants' Representative desires to continue the engagement of PJC and Mr. Radecki, and believes that the continued services of PJC, with Mr. Radecki as an independent contractor to PJC with respect to the matters described below, are essential to the Future Claimants' Representative's role in these cases.

### Services to be Rendered

11. Subject to the approval of this Court, as set forth in the Retention Agreement, as extended by the Modified Retention Agreement, PJC and Mr. Radecki will continue to render the same services as set forth in the original Retention Application as follows:

   a) assist the FCR in analyzing and reviewing the acts, conduct, assets, liabilities and financial condition of the Debtors;

   b) advise the FCR with respect to a proposed restructuring of the Debtors and implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code including analyzing, negotiating and effecting a plan of reorganization or recapitalization for the Debtors, and, to the extent necessary, performing valuation analyses on the Debtors and their assets;

   c) evaluate the financial effect of the implementation of any plan of reorganization upon the assets or securities of the Debtors; and

   d) any other tasks as mutually agreed upon by PJC and the FCR.

12. The continuation of these listed services are necessary and essential to the FCR given the complicated financial issues presented in these cases.  Accordingly, it is necessary that the FCR continue with a financial advisor that is both qualified and familiar with the Debtors and these cases.

13. Both PJC and Mr. Radecki have indicated a willingness to act on behalf of, and render such services to, the FCR, upon the terms set forth herein.

**Disclosure Concerning Connections Between
PJC, Tre Angeli, Mr. Radecki and Parties in Interest**

14. To the best of the FCR's knowledge, except as otherwise set forth herein and in the accompanying declaration of Jonathan Brownstein (the "Brownstein Declaration"), attached hereto as Exhibit C, and the declaration of Mr. Radecki (the "Radecki Declaration"), attached hereto as Exhibit D, PJC, Tre Angeli and Mr. Radecki do not have any connection with the FCR, the Debtors, their affiliates, creditors or any other party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee.  Based upon the information provided to him, the FCR believes PJC, Tre Angeli and Mr. Radecki do not represent any other entity having an adverse interest in connection with these cases, are disinterested, and do not represent or hold an interest adverse to the interests of the FCR with respect to the matters on which PJC is to continue to be engaged.

**Professional Compensation**

15. PJC and the FCR entered in to a Modified Retention Agreement, pursuant to which PJC will continue to act as the FCR's financial advisor, if authorized by this Court, for a monthly fee of $100,000.00 payable monthly in arrears, which monthly fee was previously authorized by this Court as part of the original Retention Agreement.  Subject to Court approval, the monthly fee will continue until the effective date of a plan of reorganization or termination of the Retention Agreement, whichever occurs first.  The monthly fee is subject to further modification by mutual agreement, subject to Court approval, if a material change occurs in the anticipated level of effort required of PJC prior to the effective date of a plan of reorganization.

16. Pursuant to the Order appointing the FCR, compensation, including professional fees and reimbursement of expenses, shall be payable to the FCR and his professionals from the

Debtors' estates subject to approval by the Court and subject to the Administrative Compensation Order.[2]

17. PJC intends to continue to apply for compensation for professional services rendered in connection with these cases, and for reimbursement of actual and necessary expenses incurred, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court, including the Administrative Compensation Order. PJC has agreed to accept as compensation such sums as may be allowed by the Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses.

18. In addition to the specified compensation, the Retention Agreement, as modified by the Modified Retention Agreement, provides for reimbursement of reasonable out-of-pocket expenses incurred in connection with the provision of services thereunder, including expenses of Tre Angeli and Mr. Radecki as described in the Independent Contractor Agreement. Such expenses include, but are not limited to, reasonable fees and expenses of PJC's legal counsel, travel and lodging expenses, word processing charges, messenger and duplicating services, facsimile expenses and other customary expenditures.

19. PJC has agreed to continue to invoice for these expenses in a manner and at rates consistent with charges made generally to PJC's other clients. Both PJC and the FCR recognize and acknowledge that the compensation proposed has been accepted by all parties based on their understanding of the proposed transaction. The fees to be paid to PJC pursuant to the terms of the Retention Agreement, as modified by the Modified Retention Agreement, are subject to the

---

[2] "Administrative Compensation Order" refers to the Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, entered April 17, 2002 (Bankr. Dkt. No. 1949), as may be further amended by the Court.

standard of review provided in section 328(a) of the Bankruptcy Code and are not subject to any other standard of review under section 330 of the Bankruptcy Code or otherwise, provided, however, that the FCR may, on a monthly basis, confer with PJC whether any adjustment shall be made in the monthly fee based on PJC's activity level for such month.  The FCR would then submit any agreement reached with PJC with respect to any adjustment to this Court for approval.

20.    Other than as set forth herein and in the Independent Contractor Agreement, no other arrangement or additional fees are proposed between the FCR and PJC for compensation to be paid in these cases.

21.    Other than as set forth herein, the FCR has been advised by PJC that it has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.  The FCR understands that PJC has agreed to compensate Tre Angeli for Mr. Radecki's services as set out in the Independent Contractor Agreement; neither the FCR nor the Debtors' estates will be obligated to pay any amounts to Tre Angeli or Mr. Radecki.

22.    The Modified Retention Agreement is substantially the same in all material respects as the original Retention Agreement that existed between the FCR and PJC.  Pursuant to the Retention Agreement, as modified by the Modified Retention Agreement, PJC requires that the Debtors agree to indemnify and hold harmless PJC and the "Indemnified Parties" as defined in Annex A to the Retention Agreement.  The indemnification provisions of the Modified Retention Agreement are identical to the provisions of the original Retention Agreement between the FCR and PJC previously approved by the Court and are in substantially the same form as the

indemnification provision approved by the United States Court of Appeals for the Third Circuit in <u>In re United Artists Company, et al.</u>, 315 F.3d 217, 233 (3d Cir. 2003).

## No Prior Request

23.No prior application for the relief requested herein has been made to this or any other Court.

## Notice

24.Notice of the Application and the requested relief has been provided to (i) counsel and co-counsel for the Debtors, (ii) the Office of the United States Trustee, (iii) counsel for the Official Committees appointed in these cases, as follows: Unsecured Creditors, Asbestos Property Damage Claimants, Asbestos Personal Injury Claimants, and Equity Holders, (iv) the Fee Auditor, and (v) any party who has entered its appearance in these cases pursuant to Bankruptcy Rule 2002. Accordingly, the Future Claimants' Representative believes that such notice of the Application is appropriate and sufficient.

## Conclusion

**WHEREFORE**, the Future Claimants' Representative respectfully requests that the Court enter an order substantially in the form attached hereto (1) granting this Application, (2) authorizing the Future Claimants' Representative to modify the retention and employment of PJC as his financial advisor in these chapter 11 cases pursuant to sections 328 and 1103(a) of the Bankruptcy Code, in accordance with the terms set forth in this Application, and (3) granting such other and further relief as is appropriate.

DAVID T. AUSTERN,
FUTURE CLAIMANTS' REPRESENTATIVE

_____
David T. Austern, in his capacity as the Court-appointed
Future Claimants' Representative
c/o Claims Resolution Management Corporation
3110 Fairview Park Drive, Suite 200
Falls Church, VA 22042-0683
(703) 205-0835

Dated: April 18, 2008