# Exhibit A

## AGREEMENT FOR SERVICES OF INDEPENDENT CONTRACTOR

THIS SERVICES AGREEMENT (this "Agreement") is made and entered into as of March 28, 2008, by and between Piper Jaffray & Co. (the "Company"), a registered broker-dealer and NASD and NYSE member firm, and Tre Angeli LLC (the "Contractor").

IT IS AGREED:

1.  Independent Contractor Relationship. In accordance with the mutual intentions of the Company and the Contractor, including Joseph J. Radecki, signator to this Agreement and hereinafter referred to as "Managing Member") is hereby engaged as an independent contractor to the Company. Contractor's primary point of contact at the Company will be Jon Salveson. All of the terms and conditions of this Agreement shall be interpreted in light of such independent contractor relationship. There is no intention of the parties to create by this Agreement an employer-employee relationship and no such relationship is created hereby. The Contractor shall not act as an executive officer or director of the Company.

2.  Term. The term of this Agreement shall commence on March 2, 2008 and continue for 180 days, until August 29, 2008 (the "Termination Date"). Notwithstanding the foregoing, the Agreement may be terminated at any time by the Company pursuant to paragraphs 14 and 16 of this Agreement.

3.  Non-Exclusivity of Services. It is understood by the parties that the Company does not have the exclusive right to the Contractor's services. However, during the term of this Agreement, Contractor agrees that it will not provide any investment banking or financial advisory services with regard to VICORP, WR Grace and Congoleum ("Clients") on behalf of any entity other than Company. The Company shall have the right to utilize the Contractor's services, and the Contractor shall provide such services, at mutually agreeable times and places that (i) do not interfere unreasonably with other services or employment of the

Page 1 of 10

Contractor and (ii) are reasonably sufficient for the Contractor to conduct the services contemplated hereby in a manner consistent with customary standards in the investment banking industry.

4. <u>Conflict of Interest Prohibited</u>. The Contractor warrants and represents that currently there is no conflict of interest between any of the Contractor's other services or employment and the services to be provided pursuant to this Agreement. The Contractor, by and through its Managing Member, covenants and agrees it shall use its best efforts to ensure that no such conflict shall arise during the term of this Agreement, but in the event of such a conflict, Contractor, by and through its Managing Member, further covenants and agrees that it will notify the Company of any conflict or potential conflict of interest as soon as reasonably practicable and, in any event, within five business days of becoming aware of the conflict or potential conflict.

5. <u>Services</u>. The Contractor shall be responsible for working in the best interest of each client by actively managing the relationships (inclusive of the execution of transactions associated with the Clients) as well as generally assisting as a supporting member of the Company's investment banking team for the following engagement of the Company: (1) VICORP –Company will act as financial advisor to VICORP as Debtor-in-Possession; (2) WR Grace –Company will act as financial advisor to the Future Claimants Representative; and (3) Congoleum –Company will act as financial advisor to Future Claimants Representative. Contractor agrees that, wherever practicable, any and all communications with the Clients will be conducted jointly with Company. Where a joint communication is not practicable, Contractor agrees to provide a timely update to Piper Jaffray regarding any communication.

6.  **Cooperation**. You agree to cooperate with Piper Jaffray and any of its affiliates in any legal or regulatory matters (including regulatory inquiries that are not formal investigations) brought by or against them or any officers, directors, employees, agents, assigns, insurers, representatives, counsel, administrators, predecessors, successors and shareholders before any court, arbitrator, mediator, regulator government agency or self-regulatory agency. By agreeing to cooperate with Piper Jaffray and any of its affiliates in any such matters, you agree, among other things, to make yourself available at mutually agreeable dates and times, provide any documents within your possession or control, and provide testimony if you are called to provide it at a deposition, trial or arbitration.

7.  **Facilities**. During the term of this Agreement, the Company shall provide the Contractor with access to meeting rooms, office services, administrative support, computer and Blackberry and other equipment in its office(s) necessary to perform the Contractor's obligations to the Company under this Agreement. The Contractor and the Company agree that the Contractor will pay $1,000 per month for the services and equipment exclusively in connection with performance of services for the Company. The Contractor agrees to conduct any and all Company business on the Company's network so that the Company can meet its regulatory requirements.

8.  **Payment**. In consideration of providing the services described herein, Contractor and Piper Jaffray will continued to be paid by the respective debtors in possession in a manner consistent with the court approved employment applications approving Piper Jaffray in those cases—and in a similar manner described below, in the case of VICORP. Both Contractor and Piper will continue to provide the same services as they had previously provided in those cases. Notwithstanding the foregoing, the parties feel it would be beneficial to describe more fully their continuing rights vis a vis each other: Contractor will be paid as follows:

(a) A gross amount of $96,250 for the month of March 2008.

(b) A gross amount of $105,000 each month for the months of April through August 2008 so long as Contractor continues to discharge his services under this Agreement and the existing engagements with the Clients are not terminated or adjusted during this time period. If there is a termination or adjustment of either Client engagement then both parties are obligated to renegotiate the payment structure in good faith.

REDACTED

These payments will be reported on a form 1099. Contractor, and its Managing Member, understand that it/he must pay any applicable state or federal income, self-employment, FICA or other taxes that may be attributable to the fees described in this Agreement. Contractor agrees to submit an invoice to Company on a quarterly period.

The Company shall periodically reimburse Contractor upon receipt of an invoice from Contractor for reasonably out-of-pocket expenses including, without limitation, travel and lodging expenses (so long as they are consistent with the Company's travel reimbursement policies), word processing charges, messenger and duplication services, database, courier and communication costs and other customary expenditures in connection with the performance of the Contractor's services, subject to payment as allowed by the respective bankruptcy court. The

Contractor shall obtain the Company's prior written consent for the reimbursement of any reasonable and customary expenses greater than $1,500.00 incurred in connection with the Contractor's services.

9. <u>Contractor Responsible for Own Agents and Employees</u>. All services under this Agreement shall be personally provided by the Managing Member, and the Contractor may not utilize any agents, employees or subcontractors (other than agents, employees or subcontractors of or authorized by the Company), without the express written consent of the Company with such express written consent not to be unreasonably withheld when requested by the Contractor. None of said agents, employees or subcontractors shall be, or shall be deemed to be, the agent, employee or subcontractor of the Company for any purpose whatsoever. The Company shall have no duty, liability or responsibility, of any kind, to or for the acts or omissions of the Contractor or such agents, employees or subcontractors with respect to any matter other than the services of the Contractor on behalf of the Company.

10. <u>Contractor Responsible for Taxes and Related Indemnification</u>. Without limiting any of the foregoing, the Contractor agrees to accept exclusive liability for the payment of taxes or contributions for unemployment insurance or old age pensions or annuities or social security payments which are measured by the wages, salaries or other remuneration paid to the Contractor or the employees of the Contractor, if any, and to reimburse and indemnify the Company for such taxes or contributions or penalties which the Company may be compelled to pay. The Contractor also agrees to comply with all valid administrative regulations respecting the assumption of liability for such taxes and contributions.

11. <u>Contractor Work Product Owned by Company</u>. All information developed under this Agreement of whatever type relating to the services performed by or on

behalf of the Contractor under this Agreement shall be the sole and exclusive property of the Company.

12. <u>Confidential Information.</u> The Contractor acknowledges that solely as a result of the Contractor's relationship with the Company and the performance of the Contractor's duties, as meted out by the Managing Member, under this Agreement the Contractor and Managing Member will have access to and become acquainted with information of a confidential, proprietary and trade secret nature relating to the business, clients and customers of the Company. As such, the Contractor and Managing Member agree that they shall not use or disclose such confidential, proprietary and trade secret information for any purpose other than in the performance of the Contractor/Managing Member's duties. This obligation continues even after the termination of the Contractor/Managing Member's relationship with the Company.

13. <u>Compliance with Company Policies and Procedures</u>. Contractor agrees to comply with the Company's Code of Ethics and Business Conduct, as well as all the Company's applicable Compliance policies.

14. <u>Termination by Death or Disability</u>. This Agreement shall automatically terminate upon the termination of the Contractor's employment as a result of his death or his disability. In such event, the Company shall be obligated to pay the Contractor or Contractor's estate or beneficiaries the accrued but unpaid fees and expenses.

15. <u>No Assignments by Contractor</u>. The Contractor shall not assign or transfer any rights under this Agreement without the Company's prior written consent, and any attempt of assignment or transfer without such consent shall be void. The Company may, however, assign the Agreement without the Contractor's prior written consent.

16. <u>Termination by Notice</u>. This Agreement is terminable by the Company or the Contractor upon 30 days' written notice for any reason. During this 30 day period, both

Company and Contractor agree to give the other party an opportunity to cure any issue that may be a factor in its decision to terminate the Agreement. If a party exercises its right to terminate the Agreement, any obligation it may otherwise have under this Agreement shall cease immediately; provided that the Company shall be obligated to pay the accrued and unpaid fees and approved expenses of the Contractor through the time of termination

Also, during the 30 day termination notice period, the Company and the Contractor agree to negotiate in good faith on a transaction by transaction basis for each of the Clients referenced above as to what the respective roles of the Company and Contractor, if any, shall be on each outstanding project after the Contractor's termination.

17.    Provisions Surviving Termination of Contract

The Contractor's obligations pursuant to paragraphs 11 and 12 of this Agreement shall survive the termination of this Agreement and shall remain operative in perpetuity.

18.    NASD and NYSE Registration. To perform the services under this Agreement, Contractor is required to be licensed with the NASD and NYSE by maintaining the active status of his Series 7 and Series 63 licenses throughout the period of this Agreement.

19.    Minnesota Law Governs. This Agreement shall be deemed to have been executed and delivered within the State of Minnesota, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the state of California without regard to principles of conflict of laws.

20.    Severability. If any provision of this Agreement or the application thereof is held invalid, the invalidity shall not affect other provisions or applications of the Agreement which can be given effect without the invalid provisions or applications and, to this end, the provisions of this Agreement are declared to be severable.

21.     Waiver of Breach. No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party waiving the breach.

22.     Notice. Any notice required to be given pursuant to this Agreement shall be deemed to have been sufficiently given either when served personally or when served by first-class mail addressed to either party. Notices to the Company shall be effective only when addressed to Christine Esckilsen, Piper Jaffray & Co., 800 Nicollet Mall J09N02, Minneapolis, MN 55402 (or another address designated by proper notice under this Agreement). Notice to the Contractor shall be effective only when addressed to Joseph J. Radecki, for Tre Angeli LLC 91 Sunset Hill Road New Canaan, CT 06840.

23.     Written Reports. The Contractor, when directed by the Company, shall provide written reports with respect to the services rendered hereunder.

24.     Compliance with Law. The Contractor shall comply with any and all applicable laws and regulations including but not limited to health, safety and security rules and regulations which are now in effect or which may become applicable. In addition to the foregoing, the parties agree that this Agreement is subject to approval of the bankruptcy court of each bankruptcy debtor for which services are provided. The intent of the parties hereto is to follow the strictures of the Bankruptcy Code and to avoid any improper fee-sharing arrangement. If any court determines that this agreement does not comply fully with the provisions of the Bankruptcy Code, then Piper Jaffray will withdraw its amended application dealing with the Agreement.

25. <u>Mutual Drafters</u>. Each party has cooperated in the drafting and preparation of this Agreement. Hence, this Agreement shall not be construed against any party on the basis that the party prepared the same.

26. <u>Advice of Counsel</u>. In entering this Agreement, the Contractor and the Company represent that they have had the opportunity to engage attorneys of their own choice to advise and explain the terms of this Agreement, and that those terms are fully understood and voluntarily accepted by both parties.

27. <u>Arbitration of Disputes</u>. Any controversy or claim arising out of or relating to this Agreement, its enforcement or interpretation, or because of an alleged breach, default, or misrepresentation in connection with any of its provisions, may be submitted to final and binding arbitration before the NASD at the request of either Contractor or Company.

28. <u>Entire Agreement</u>. This Agreement constitutes and contains the entire agreement and final understanding between the parties concerning the subject matter hereof, is intended by the parties as a complete and exclusive statement of the terms of their agreement and supersedes all prior negotiations and agreements, proposed or otherwise, whether written or oral, between the parties concerning the subject matter hereof. Any representation, promise or agreement not specifically included in this Agreement shall not be binding upon or enforceable against either party. This Agreement may be modified only by a written instrument duly executed by each of the parties. No person has any authority to make any representation or promise on behalf of any of the parties not set forth herein and this Agreement has not been executed in reliance upon any representations or promises except those contained herein.

29. <u>Headings not Controlling</u>. Headings of the provisions of this Agreement are included herein for ease of reference only and shall have no effect in the interpretation or construction hereof.

**PIPER JAFFRAY & CO.**

Dated: April 11, 2008.    By: _/s/ Christine Esckilsen_
Christine Esckilsen
Piper Jaffray & Co.
Managing Director


**TRE ANGELI LLC**

Dated: _____, 2008.    By: _____
Joseph Radecki
Tre Angeli LLC

29. <u>Headings not Controlling</u>. Headings of the provisions of this Agreement are included herein for ease of reference only and shall have no effect in the interpretation or construction hereof.

**PIPER JAFFRAY & CO.**

Dated: _____, 2008.    By: _____
Christine Esckilsen
Piper Jaffray & Co.
Managing Director

**TRE ANGELI LLC**

Dated: *March 31*, 2008.    By: _____
Joseph Radecki
Tre Angeli LLC