# Exhibit C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) **Chapter 11** |
| W.R. GRACE & CO., et al. | ) **Case No. 01-01139 (JKF)** |
| | ) **(Jointly Administered)** |
| Debtors. | ) |

### DECLARATION OF JONATHAN BROWNSTEIN UNDER FED. R. BANKR. P. 2014, 2016 AND 5002 IN SUPPORT OF THE APPLICATION OF DAVID T. AUSTERN, FUTURE CLAIMANTS' REPRESENTATIVE, FOR AUTHORIZATION TO MODIFY THE EMPLOYMENT OF PIPER JAFFRAY & CO. AS FINANCIAL ADVISOR TO THE FUTURE CLAIMANTS REPRESENTATIVE

I, Jonathan Brownstein, state:

1.  I am a principal in the Financial Restructuring Group of Piper Jaffray & Co. ("PJC"), which maintains offices at 150 East 42nd Street, 35th Floor, New York, NY 10017. This declaration is submitted pursuant to Fed. R. Bankr. P. 2014, 2016 and 5002, in support of the Application of David T. Austern, Future Claimants' Representative, for Authorization to Modify the Employment of Piper Jaffray & Co. as Financial Advisor to the Future Claimants' Representative (the "Application"), filed by David T. Austern, the Court-appointed legal representative for future asbestos personal injury claimants in the above-captioned cases (the "FCR" or "Mr. Austern").[1]

2.  Except as otherwise provided below, the facts set forth in this declaration are based upon my personal knowledge, upon records maintained by PJC in the ordinary course of

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Application.

its business, which have been reviewed by me and/or by other employees of PJC at my direction, or upon information known by other employees of PJC and conveyed to me.

### PJC's Qualifications and the Scope of PJC's Retention

3. PJC is a full service investment bank, which offers a comprehensive set of products and services for its corporate and institutional clients. PJC provides investment banking and financial advisory services from offices located throughout the United States and Europe.

4. On March 1, 2006, the FCR filed an application for authorization to employ PJC as his financial advisor in these cases, effective as of February 13, 2006 (the "Retention Application"). The terms of PJC's employment were mutually agreed upon by letter dated February 16, 2006 (the "Retention Agreement"), a copy of which was filed with the Retention Application.

5. By Order entered on May 8, 2006, the Court authorized the FCR to employ PJC pursuant to the terms set forth in the Retention Agreement.

6. Pursuant to the Retention Agreement, Joseph J. Radecki, Jr. ("Mr. Radecki") and other professionals at PJC had primary responsibility for providing financial advisory services to the FCR. The Retention Agreement also provides that if Mr. Radecki ceases to be employed by PJC, PJC shall give prompt notice to the FCR and the FCR has the right to terminate the Retention Agreement immediately by giving notice to PJC.

7. Effective as of March 2, 2008, Mr. Radecki ceased to be employed by PJC. The core team of other professionals who have worked with Mr. Radecki on this engagement since 2004 remain with PJC.

8. The FCR and PJC desire to continue with Mr. Radecki's services in these cases as an independent contractor. Accordingly, on March 28, 2008, effective as of March 2, 2008 and

continuing until August 29, 2008, PJC engaged Tre Angeli LLC ("Tre Angeli") as an independent contractor to provide services to assist PJC's investment banking team for several engagements, including the above-captioned cases, pursuant to the terms and conditions set forth in the Agreement for Services of Independent Contractor ("Independent Contractor Agreement"), a copy of which is attached to the Application as Exhibit A.

9. I understand that the FCR has agreed that, subject to approval of the Modified Retention Agreement and this Application, he will not terminate PJC's engagement upon the ground that Mr. Radecki has ceased to be a PJC employee, for so long as Mr. Radecki is available to provide advisory services to the FCR through the Independent Contractor Agreement.

10. As a result of PJC's and Mr. Radecki's experience in these cases and in other asbestos bankruptcy cases, particularly as financial advisor to future claimants' representatives in such cases, PJC and Mr. Radecki are familiar with these cases, and with the concerns and issues important to the Future Claimants' Representative and to asbestos personal injury claimants who may assert claims or demands in the future.

11. The FCR has requested that PJC and Mr. Radecki continue to render the following services in connection with these cases:

    a. assist the FCR in analyzing and reviewing the acts, conduct, assets, liabilities and financial condition of the Debtors;

    b. advise the FCR with respect to a proposed restructuring of the Debtors and implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code including analyzing, negotiating and effecting a plan of reorganization or recapitalization for the Debtors, and, to the extent necessary, performing valuation analyses on the Debtors and their assets;

    c. evaluate the financial effect of the implementation of any plan of reorganization upon the assets or securities of the Debtors; and

  d. any other tasks as mutually agreed upon by PJC and the FCR.

Subject to the Court's approval of the Application, PJC is willing to continue to serve as financial advisor to the FCR and to perform the services described above, and to engage Tre Angeli as an independent contractor to assist in this engagement.

  12. The terms of the engagement with PJC are substantially the same in all material respects as the original engagement, except as set forth in more detail below.

### Disinterestedness of PJC

  13. As previously set forth in the declaration of Mr. Radecki, attached to the original Retention Application, PJC does not have any connection with the FCR, the Debtors, their affiliates, creditors or any other party in interest or their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee. PJC does not represent any other entity having an adverse interest in connection with these cases, is disinterested, and does not represent or hold an interest adverse to the interests of the FCR with respect to matters on which PJC is to continue to be engaged.

### Professional Compensation

  14. PJC and the FCR entered in to a revised engagement agreement (the "Modified Retention Agreement"), pursuant to which PJC will continue to act as the FCR's financial advisor if authorized by this Court. Pursuant to the May 24, 2004 Order appointing the FCR, compensation, including professional fees and reimbursement of expenses, shall be payable to the FCR and his professionals from the Debtors' estates, in accordance with the terms and conditions negotiated by the FCR and the Debtors, subject to approval by the Court and subject to the Administrative Compensation Order. The terms and conditions of PJC's retention are set

forth in the Modified Retention Agreement attached hereto, and in the original Retention Agreement.

15. PJC intends to apply for compensation for professional services rendered in connection with this case, and for reimbursement of actual and necessary expenses incurred, in accordance with section 328(a) of the Bankruptcy Code, and the applicable provisions of the Bankruptcy Rules, the Local Rules and orders of this Court, including the Administrative Compensation Order. PJC has agreed to accept as compensation such sums as may be allowed by the Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses.

16. Pursuant to the Modified Retention Agreement, PJC has agreed to continue to perform the requested services, if authorized by this Court, for a monthly fee of $100,000.00 payable monthly in arrears, which monthly fee was previously authorized by this Court as part of the original Retention Agreement. Subject to Court approval, the monthly fee will continue until the effective date of a plan of reorganization or termination of the Retention Agreement, whichever occurs first. The monthly fee is subject to further modification by mutual agreement, subject to Court approval, if a material change occurs in the anticipated level of effort required of PJC prior to the effective date of a plan of reorganization.

17. Other than as set forth in the Application and in the Independent Contractor Agreement, no other arrangement or additional fees are proposed between the FCR and PJC for compensation to be paid in these cases.

18. Other than as set forth in the Application, PJC has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code. Neither the FCR nor the Debtors' estates will be

obligated to pay any amounts to Tre Angeli or Mr. Radecki. PJC is solely responsible for compensating Tre Angeli for its and Mr. Radecki's services as set out in the Independent Contractor Agreement.

19. In addition, the Retention Agreement, as modified by the Modified Retention Agreement, provides for reimbursement of reasonable out-of-pocket expenses incurred in connection with the provision of services thereunder, including expenses of Tre Angeli and Mr. Radecki as described in the Independent Contractor Agreement. Such expenses include, but are not limited to, reasonable fees and expenses of its legal counsel, travel and lodging expenses, word processing charges, messenger and duplicating services, facsimile expenses and other customary expenditures.

20. PJC has agreed to continue to invoice for these expenses in a manner and at rates consistent with charges made generally to PJC's other clients. Both PJC and the FCR recognize and acknowledge that the compensation proposed has been accepted by all parties based on their understanding of the proposed transaction. The fees to be paid to PJC pursuant to the terms of the Retention Agreement, as modified by the Modified Retention Agreement, are subject to the standard of review provided in section 328(a) of the Bankruptcy Code and are not subject to any other standard of review under section 330 of the Bankruptcy Code or otherwise, provided, however, that the FCR may, on a monthly basis, confer with PJC whether any adjustment shall be made in the monthly fee based on PJC's activity level for such month. The FCR would then submit any agreement reached with PJC with respect to any adjustment to this Court for approval.

21. The Modified Retention Agreement is substantially the same in all material respects as the original Retention Agreement that existed between the FCR and PJC.

Furthermore, the provisions that relate to the indemnification (Annex A to the Retention Agreement) are identical to the provisions of the original Retention Agreement between the FCR and PJC previously approved by the Court.

22. To the best of my knowledge, other than as set forth in the Retention Agreement, as modified by the Modified Retention Agreement, and the Independent Contractor Arrangement, no promises have been received by PJC nor any officer, director or employee thereof as to payment or compensation in connection with the above-captioned cases other than in accordance with applicable provisions of the Bankruptcy Code.

* * * * * *

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 2⁄, 2008

_____
Jonathan Brownstein