IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Objection Deadline: May 16, 2008 |
| | ) | Hearing Date: June 2, 2008 at 1:00 p.m. |

**MOTION OF THE DEBTORS FOR AN ORDER ALLOWING
ERNST & YOUNG LLP TO RETAIN FEES EARNED AND PAID IN THESE
CHAPTER 11 CASES IN EXCESS OF THE OCP TOTAL EXPENDITURE CAP**

The Debtors hereby submit this motion (the "Motion") for an order allowing Ernst &

Young LLP ("E&Y") to retain its fees earned and paid in excess of the Total Expenditure Cap

(defined below) for its services to the Debtors as an ordinary course professional in these chapter

11 cases.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]    +The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.      This Court has jurisdiction to entertain this application pursuant to 28 U.S.C. §§ 157 and 1334.

2.      The statutory bases for the relief requested herein are Sections 105(a), 327, 1107(a) and 1108 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016.

## Background

3.      On April 2, 2001 (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      On April 2, 2001, the Debtors filed their *Application of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 1107(a) and 1108 Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business* [Docket No. 29] (the "OCP Application"). On May 3, 2001, this Court entered the *Order Pursuant to 11 U.S.C. §§ 1107(a) and 1108 Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business* [Docket No. 197] (the "Original Order"), authorizing the Debtors to continue to utilize certain professionals, including attorneys, accountants, actuaries and consultants, in their day-to-day business operations (collectively, the "OCPs"). The Original Order authorized the Debtors to pay OCPs up to $50,000 per month (the "Monthly Cap") and up to a total $300,000 per professional during the pendency of these Chapter 11 Cases (the "Total Expenditure Cap"). The Debtors are not authorized to pay more than the Monthly Cap and the Total Expenditure Cap for services

rendered by an OCP without an order of this Court authorizing such higher amount. Original Order at p.2.

5.    The Total Expenditure Cap was subsequently increased to $600,000 by the Court's December 10, 2002 Order [Docket No. 3126], to $800,000 by the Court's July 24, 2006 Order Docket No. 12855], and increased to $1,200,000 by the Court's September 24, 2007 Order [Docket No. 16913] (the Original Order, as amended, collectively, the "OCP Orders").

6.    The Original Order also required that commencing on July 10, 2001, and on each October 10, January 10, April 10 and July 10 of every year thereafter in which the Chapter 11 Cases are pending, the Debtors shall file with the Court, and serve on the Office of the United States Trustee and counsel to any official committee(s) appointed by the United States Trustee , a statement with respect to the immediately preceding three-month period (each, a "Quarter") that includes the following information for each OCP:  (a) the name of the OCP; (b) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by such OCP during the previous Quarter; and (c) a general description of the services rendered by each OCP (the "Quarterly OCP Report").  The Debtors also list on the Quarterly OCP Reports the cumulative amounts that the Debtors have paid to each OCP for services rendered and reimbursement of expenses incurred for each OCP from the Petition Date through the ending date of each Quarter.

7.    The Original Order further required an OCP to file an affidavit of disinterestedness with the Court with service on the Debtors, the United States Trustee, and counsel to any official committee(s) appointed by the United States Trustee prior to or contemporaneous with the submission to the Debtors of invoices accompanying a request for

compensation. The Debtors are not allowed to make any payment to any OCP who has failed to file such affidavit of disinterestedness.

8.      Since well prior to the Petition Date, E&Y provided special tax compliance, tax advisory services (including expatriate tax services) and employee global assignment services outsourcing to various non-debtor foreign affiliates of the Debtors.  E&Y continued to provide those services to the Debtors' non-debtor foreign affiliates after the Petition Date.  Early in these cases, the Debtors sought to retain E&Y as an OCP and listed E&Y on Exhibit A to the OCP Application.  However, the Debtors made an internal decision after filing the OCP Application that E&Y was not an OCP in these Chapter 11 Cases because (a) the services performed by E&Y were not performed for the Debtors but were performed for their non-debtor foreign affiliates; and (b) E&Y would not be paid by the Debtors' estate.  Initially, E&Y directly invoiced the Debtors' non-debtor foreign affiliates for such services.  In some instances, the Debtors would pay the billed amounts to E&Y and then seek and obtain reimbursement from the non-debtor foreign affiliates for whom E&Y had actually performed the work such that no fees would have been incurred by the Debtors.  Therefore, the Debtors did not report these payments to E&Y on their Quarterly OCP Reports because they did not consider E&Y to be an OCP of the Debtors.

9.      Sometime thereafter, the Debtors requested that E&Y extend its services and provide tax compliance, tax advisory services (including expatriate tax services) and employee global assignment services outsourcing to the Debtors and not just the Debtors' non-debtor foreign affiliates.  On March 5, 2003, E & Y filed its affidavit of disinterestedness to support its retention as an OCP [Docket No. 3519].  E&Y disclosed that in the period from the Petition Date to filing of its affidavit of disinterestedness, E&Y provided approximately $75,000 of tax compliance and advisory services to various non-debtor foreign affiliates of the Debtors, and

invoiced those non-debtor foreign affiliates of the Debtors for such services. E&Y subsequently discovered that approximately $50,000 of such invoices were paid by the Debtors. The Debtors' books and records indicate that no further payments were made to E&Y from May 2002 until April 2003, after the filing of E&Y's March 5, 2003 affidavit of disinterestedness. On February 7, 2007, E&Y filed a supplemental affidavit of disinterestedness disclosing E&Y's representation of a third party that was interested in potentially purchasing certain assets from the Debtors [Docket No. 14548].

10.    Since the filing of its March 5, 2003 affidavit of disinterestedness, E&Y believed that it was and continued to be employed, as an OCP in these Chapter 11 Cases, and thus, did not keep detailed billing statements or file monthly or quarterly fee applications pursuant to sections 330 and 331 of the Bankruptcy Code or the Interim Compensation Orders entered in these cases.[2] No objections were filed to E&Y's retention as an OCP.

11.    Only just recently, the Debtors and E&Y discovered that payments to E&Y were not being properly reported in the Debtors' Quarterly OCP Reports.[3]    Once the Debtors discovered this discrepancy, the Debtors immediately initiated an internal investigation, consulted with E&Y, and concluded that omission of payments to E&Y as an OCP was simply an inadvertent oversight.    The oversight resulted from a continued assumption by certain employees of the Debtors that the fees paid to E&Y were being reimbursed by non-debtor

---

[2]    *See Administrative Order Under 11 U.S.C. § § 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Professionals and Official Committee Members* [Docket No. 198] and *Amended Administrative Order Under 11 U.S.C. § § 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Professionals and Official Committee Members* [Docket No. 1949] (the "Interim Compensation Orders").

[3]    The Debtors' disclosed the amount of fees paid by the Debtors to E&Y as an OCP in *Debtors' Statement Of Amounts Paid To Ordinary Course Professionals From January 1, 2008 Through March 31, 2008*, [Docket No. 18500] filed on April 11, 2008.

foreign subsidiaries such that no fees were being incurred by the Debtors. That assum‚otion has turned out to be inaccurate, prompting the filing of this Motion to address the issue.

12.    Since the Debtors did not consider E&Y to be an OCP at the start of these Chapter 11 Cases, the Debtors did not internally account for the payments they made to E&Y in its capacity as an OCP. This continued to be the case even after E&Y filed its March 5, 2003 affidavit of disinterestedness. The Debtors' records reflect that they never recorded the transition of E&Y from a non-debtor professional to an OCP who was being paid pursuant to the OCP Order. Accordingly, the payments made to E&Y in their capacity as an OCP were not properly reported or captured in the Quarterly OCP Reports that have been filed throughout the course of these Chapter 11 Cases. Without this cumulative record, both the Debtors and E&Y were completely unaware that E&Y had reached and then exceeded the Total Expenditure Cap.

13.    While certain of E&Y's fees may have continued to be ultimately paid by the Debtors' non-debtor foreign subsidiaries, unfortunately neither the Debtors nor E&Y can determine what amount of the total amount billed by E&Y was paid or reimbursed by the non-debtor foreign subsidiaries. The Debtors and E&Y can only determine that approximately $1,889,848 has been paid by the Debtors to E&Y for the period beginning on the Petition Date and ending on March 31, 2008.[4] Although the $1,889,848 is clearly over the Total Expenditure Cap of $1,200,000, without accounting for any of the payments made to E&Y in their capacity as an OCP, the Debtors were not aware in the first instance that E&Y was approaching the Total Expenditure Cap - much less exceeding this cap – to timely seek the appropriate relief.

---

[4]    Applied over this extended period of time, the payment of $1,889,848 in fees to E&Y amounts to an average monthly expenditure of approximately $27,000, which is well below the Monthly Cap.

## Relief Requested

14.     Due to the fact that E&Y now appears to have exceeded the Total Expenditure
Cap with respect to services performed and paid for by the Debtors (even if a portion of the
amounts paid have been reimbursed by non-debtor foreign subsidiaries), the Debtors respectfully
request the entry of an order allowing E&Y to retain its fees earned and paid in excess of the
Total Expenditure Cap (the "Excess Fees") for its services provided to the Debtors as an ordinary
course professional in these Chapter 11 Cases.   The Debtors also request that E&Y not be
required to file a fee application to retain payment of the Excess Fees for services performed by
E&Y as an OCP.   The Debtors are not seeking to continue E&Y's retention in its capacity as an
OCP indefinitely.   The Debtors are in the process of preparing the appropriate applications to
retain E&Y as a retained professional pursuant to sections 327 and 330 of the Bankruptcy Code
to provide the same special tax compliance, tax advisory services and employee global
assignment services outsourcing to the Debtors.[5]   Going forward in these Chapter 11 Cases,
effective upon E&Y's retention as a professional under Section 327(a) of the Bankruptcy Code,
E&Y will submit interim and final applications for compensation in accordance with Sections
330 and 331 of the Bankruptcy Code, Rules 2014 and 2016 of the Federal Rules of Bankruptcy
Procedures, the Local Rules of this Court and such other and further orders of the Court.

15.     Pursuant to this Motion, the Debtors seek only to alter the OCP Orders to adjust
the permissible Total Expenditure Cap that can be paid to E&Y such that E&Y can retain
payments for work performed prior to E&Y's retention as a professional under Section 327(a) of

---

[5]     The Debtors may also seek to expand E&Y's scope of service to include certain new tax consultation services with respect
to the Chapter 11 Cases.

the Bankruptcy Code.  None of the other procedures or requirements in the OCP Orders will be modified.

16.      The Debtors have previously obtained authorization to employ and retain Price Waterhouse Coopers and Deloitte Tax LLP to provide certain accounting, tax and consulting services to the Debtors.  E&Y will not provide and be paid for any services that duplicate those being provided by the other accounting firms retained by the Debtors.

**Basis For Relief Requested**

17.      E&Y is an approved OCP.  The OCP Orders provide for the payments to be capped, absent Court approval to the contrary, at a monthly amount of $50,000 in fees and an aggregate case cap of $1,200,000 per professional.  The OCP Orders specifically contemplated further Court approval for OCP fees which exceed the Monthly Fee Cap and the Total Expenditure Cap in these cases.  Had the Debtors and E&Y known that E&Y's fees were approaching the Monthly Fee Cap or Total Expenditure Cap, the Debtors would have sought appropriate relief from the Court prior to exceeding the approved amounts.

18.      Since E&Y has already been paid by the Debtors for work performed through March 31, 2008, and since the Debtors will promptly file a motion seeking to retain E&Y as an professional pursuant to Section 327(a) of the Bankruptcy Code, this Motion requests approval for E&Y to retain the Excess Fees without having to submit a formal fee application in accordance with the Court's Interim Compensation Orders, which includes review by the committees and audit by the fee auditor appointed in these Chapter 11 Cases, and other applicable rules and orders of the Court (the "Interim Compensation Procedures").  E&Y represents that while it has submitted monthly fee bills to Grace as an OCP, it did not bill and submit its time in a format that would comply with the requirements of the Interim Compensation Procedures.  Thus, E&Y does not have adequate information to reconstruct a fee

application for the Excess Fees in the appropriate detail required by the Interim Compensation Procedures.

19.     It is important to note that applied over the entire period of these cases from the Petition Date to March 31, 2008, the ending date for the most recent Quarterly OCP Report, the total payment of $1,889,848 in fees to E&Y amounts to an average monthly expenditure of approximately $27,000, which is well below the Monthly Cap.  Neither the Debtors nor E&Y ever contemplated that E&Y would reach the Total Expenditure Cap.  However, the need for multiple increases of the Total Expenditure Cap in these Chapter 11 Cases for all OCPs, not just E&Y, has been necessitated by the sheer unexpected length of these Chapter 11 Cases.  As discussed above, due to the facts and circumstances that transpired early in this case, the Debtors and E&Y were completely unaware that the Debtors were not properly recording and accounting for the payments to E&Y even after E&Y sought to be retained as an OCP, and thus had no knowledge that E&Y met and then subsequently exceeded the Total Expenditure Cap.

20.     Numerous courts, including courts in this district, have allowed the Debtors, the OCP and the United States Trustee to enter into stipulations and agreed orders to allow an OCP to continue as an OCP in instances where an OCP exceeds the applicable cap.  See, e.g., In re: Kaiser Aluminum Corp., Case No. 02-10429 (JKF) (Bankr. D.Del. March 24, 2006) (Court entered stipulation and order allowing OCP to exceed the limit imposed by the OCP order and retain its status as an OCP without seeking further approval under 327); In re Delphi, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. January 30, 2008) (same).  Here, the Debtors will consulted with the United States Trustee prior to the hearing on this Motion, and seek the agreement of the United States Trustee that allowing E&Y to retain the Excess Fees is the best course of action given (a) the nature of the services E&Y provided to the Debtors and non-debtor foreign

affiliates as an OCP; (b) the facts and circumstances that led to this inadvertent oversight; and (c) that the Debtors will promptly seek Court approval to retain E&Y as a professional under section 327(a) of the Bankruptcy Code, and not as an OCP, going forward.

21.     Given the valuable services that E&Y has provided and the on-going need for these services, the Debtors submit that this Motion is appropriate under the circumstances and will not prejudice their respective estates and creditors.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, permitting E&Y to retain any and all Excess Fees paid to E&Y for E&Y's services to the Debtors as an OCP without requiring E&Y to file a fee application for the Excess Fees and granting such other and further relief as is just and proper.

Dated: April 28, 2008

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*And*

PACHULSKI, STANG, ZIEHL, & JONES LLP

*James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession