**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| | ) |
| IN RE: | ) Chapter 11 |
| | ) |
| **W.R. GRACE & CO.,** *et al.,* | ) **Case No. 01-01139 (JKF)** |
| | ) **Jointly Administered** |
| | ) Re: Docket Nos. 18328, 18421, 18485, 18495, |
| **Debtors.** | )                18519, and 18595 |
| | ) Hearing Date:  June 2, 2008 @ 1:00 p.m. Eastern |
| | )                        In Pittsburgh, PA |

**CANADIAN ZAI CLAIMANTS' OBJECTION TO DEBTORS' AMENDMENT**
**TO MOTION FOR AN ORDER (A) ESTABLISHING A PROOF OF CLAIM**
**BAR DATE FOR ZONOLITE ATTIC INSULATION CLAIMS AND**
**(B) APPROVING THE RELATED PROOF OF CLAIM FORM,**
**BAR DATE NOTICES, AND NOTICE PROGRAM**

COMES NOW, Canadian Zonolite Attic Insulation Claimants ("Canadian ZAI

Claimants"), by and through their undersigned counsel, and hereby files this Objection to

Debtors' Amendment to Motion for an Order (A) Establishing a Proof of Claim Bar Date for

Zonolite Attic Insulation Claims, and (B) Approving the Related Proof of Claim Form, Bar Date

Notices, and Notice Program ("ZAI Claims Bar Date Motion"), and in support of this Objection

states as follows:

I.        <u>INTRODUCTION</u>

1.        The relief sought by Debtors' in the ZAI Claims Bar Date Motion is premature

and ill-suited as it relates to Zonolite Attic Insulation ("ZAI") claims arising in Canada.  Until

there is a determination of the nature and scope of a claim, any proposed notice program cannot

satisfy the adequacy requirements of Canadian procedural law.  Furthermore, the proposed

Canadian proof of claim form, bar date notice and notice program are substantively inadequate

in terms of form, substance and breadth of dissemination.  Finally, the proposed notice program

does not afford Canadian ZAI Claimants adequate notice as required by Canadian jurisprudence. For these reasons we respectfully request that the Court deny the Debtors' motion.

## II.    BAR DATE MOTION BACKGROUND

2.    On March 18, 2008, Debtors filed with the Court the ZAI Claims Bar Date Motion in which the Debtors requested an Order pursuant to Bankruptcy Rule 3003(c)(2) approving a binding bar date and notice program for American ZAI claims. [Docket No. 18328].

3.    On April 9, 2008, Her Majesty the Queen in Right of Canada as represented by the Attorney General of Canada (the "Crown"), filed an Objection to Debtors' Motion for an Order (A) Establishing a Proof of Claim Bar Date for Zonolite Attic Insulation Claims and (B) Approving the Related Proof of Claim Form, Bar Date Notes, and Notice Program. [Docket No. 18485]. The basis of the Crown's objection was that Canadian ZAI claims should have been included in the request sought in the ZAI Claims Bar Date Motion.

4.    On April 10, 2008, Debtors filed Debtors' Amendment to Motion for an Order (A) Establishing a Proof of Claim Bar Date for Zonolite Attic Insulation Claims, and (B) Approving the Related Proof of Claim Form, Bar Date Notices, and Notice Program ("Amended ZAI Bar Date Motion") [Docket No. 18495].

5.    The principal purpose of the Debtors' Amended ZAI Bar Date Motion was to amend the bar date notice and notice program to include, and address for the first time, the Canadian ZAI claims. Prior to the amendment, the proposed  ZAI Claims Bar Date Motion specifically excluded claims outside the United States.

6.    The Debtors now seek to substantively address the claims of the Canadian ZAI Claimants after initially excluding these claims.

2

7.      Until they received the objection of the Crown to the ZAI Claims Bar Date Motion, Canadian ZAI Claimants were operating under the assumption that the Motion was intended only to apply to American claimants since the materials are clear on their face in that regard. The Crown, through its objection, takes the position that Canadian ZAI claims should be included in the bar date and notice programs.

8.      On April 15, 2008, the Canadian ZAI Claimants filed a Motion for Leave to File an Objection to Debtors' Amendment to Motion for Order (A) Establishing a Proof of Claim Bar Date for Zonolite Attic Insulation Claims and (B) Approving the Related Proof of Claim Form, Bar Date Notices, and Notice Program ("Motion for Leave") [Docket No. 18519].

9.      On April 23, 2008, this Court signed a modified order granting leave to the Canadian ZAI Claimants' to file a late objection to Debtors' Amendment to Motion for Order (A) Establishing a Proof of Claim Bar Date for Zonolite Attic Insulation Claims and (B) Approving the Related Proof of Claim Form, Bar Date Notices, and Notice Program. [Docket No. 18595].

## III.    CCAA COURT PROCEDURAL HISTORY

10.     On April 2, 2001, U.S. Debtors filed voluntary petitions for protection under Chapter 11 of the United States Bankruptcy Code (The "U.S. Proceedings") and have been granted a temporary restraining order by this Court providing for certain injunctive relief in favor of the U.S. Debtors as well as certain other third parties (the "Affiliated Entities").

11.     Two days later Grace Canada, Inc. ("Grace Canada"), a Canadian affiliated entity of U.S. Debtors, was granted an order (the "Initial CCAA order") pursuant to Section 18.6(4) of the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice (the "CCAA Court") which, among other things, provided for a stay of proceedings against the

3

commencement or continuation of any asbestos-related suits against Grace Canada.  See copy of Order attached as **Exhibit A**.

12.    On November 14, 2005 as the result of a number of proposed class action proceedings (the "Proposed Class Actions") commenced in Canada against certain of the U.S. Debtors, Grace Canada, Affiliated Entities and other parties including the Crown, the CCAA Court granted an order recognizing the injunctive relief provided for by this Court and giving effect to it in Canada and implementing a limited stay of proceedings with respect to the Crown. See copy of Order attached as **Exhibit B**.

13.    On November 14, 2005, the CCAA Court also considered a request for an extension of the stay contained in the initial order in light of the Proposed Class Actions.  The Honorable Justice Farley indicated that cooperation and coordination between the CCAA Court and the Court was needed, that there had been recognition in the U.S. Bankruptcy Court that Canadian proceedings would be governed by Canadian substantive law, and that the insolvency adjudicative proceedings presented an efficient process, but that the extension of the stay not affect the ability of the Plaintiffs in the Proposed Class Actions from returning to the CCAA Court if they felt there was "foot dragging or other elements of prejudice."  *See Footnote No. 13 to* Exhibit No. B.

14.    In January 2006, Grace Canada made application with the CCAA Court for the appointment of two law firms, Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP, as representative counsel ("Representative Counsel"), in the CCAA Court proceedings on behalf of all Canadian ZAI Claimants.[1]

---

[1] Representative Counsel was appointed to represent the interest of all Canadian ZAI Claimants (both personal injury and property damage).

4

15.     On February 8, 2006, the CCAA Court entered an order on Grace Canada's application for the appointment of Representative Counsel. As part of that order, Representative Counsel was empowered to, among other things, appear before the U.S. Court in the context of the Chapter 11 cases and to negotiate on behalf of Canadian Claimants with Grace Canada, the Crown, the U.S. Debtors, the Affiliated Entities and any other person or entity.   See copy of Order attached as **Exhibit C**.

16.     Since its appointment by the CCAA Court in 2006, Representative Counsel has engaged in extensive negotiations with Grace Canada, representatives of the U.S. Debtors, and the Crown, in an attempt to fashion a Canadian Litigation Procedure to be presided over by a Canadian Court for the determination of Canadian ZAI claims.[2]

17.     Representative Counsel has actively monitored these proceedings since their appointment by the CCAA Court in an effort to advance the interests of Canadian ZAI Claimants.

18.     Representative Counsel has recently filed a motion with the CCAA seeking instruction from that Court on the issues of development of a Canadian Litigation Procedure to deal with claims advanced by Canadian ZAI claimants.  The motion also seeks directions from the CCAA as to the effect of the Science Trial memorandum opinion on Canadian ZAI Claimants.  The motion raises notice issues with the CCAA and affirmatively seeks oral and documentary discovery of records and information in the possession and control of the Crown for the purpose of aiding and enhancing a direct notice program.  See copy of motion attached as **Exhibit D.**

---

[2] Representative Counsel sought to structure a litigation procedure consistent with the proposed Amended Joint Plan of Reorganization filed by Debtors on January 15, 2005 [Docket No.7560].

IV.    **HISTORY OF CANADIAN ZAI CLAIMS**

19.    ZAI was extensively utilized in Canadian home building and renovations during the approximate period of time between 1940 and the late 1980s.

20.    W.R. Grace and Co. and several of its affiliates (the "U.S. Debtors") created and distributed Zonolite for use in Canadian homes.

21.    Canadian ZAI homeowners suffer a range of injuries. These include diminution in property values, the costs of asbestos abatement, the financial burden of removing asbestos-contaminated ZAI and refitting homes, and loss of use and enjoyment of their homes due to limitations on remodeling and restrictions on use of areas contaminated with ZAI.

22.    The Proposed Class Actions commenced in Canada are against certain of the U.S. Debtors, Grace Canada, Affiliated Entities and other parties including the Crown.  These actions assert claims for damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of Zonolite attic insulation products in Canada.

23.    The Crown's inclusion as a defendant in the Proposed Class Actions is premised upon alleged wrongdoings including, but not limited to, the facts that it promoted the distribution and sale of Zonolite in Canada; that it failed in its duty to warn Canadian citizens of the dangers of Zonolite; and that it failed to remediate the Zonolite once it learned of the dangers caused by exposure to Zonolite.

24.    The claims that have been advanced against the Crown are particularized in the Statements of Claim filed in both Manitoba and Saskatchewan.  As to Aboriginal peoples residing in the Reserve housing and as to Department of National Defense ("DND") employees residing in DND housing, the claim is that the Crown has a legal responsibility to those individuals living in housing with ZAI in terms of identification of the individuals, medical

monitoring and treatment as needed.  See Statements of Claim filed in both Manitoba and

Saskatchewan attached as **Exhibit E**.

V.      **ARGUMENT**

A.      **Establishment of a Bar Date for Canadian ZAI Claimants is premature**.

25.     The Motion for the establishment of a bar date for Canadian ZAI Claimants is

premature.   Until there is a determination of the nature and scope of a claim, the proposed notice

program cannot satisfy the adequacy requirements of Canadian procedural law.

26.      Canadian ZAI Claimants were not represented at the Science Trial which led to

 Judge Fitzgerald's Memorandum Opinion of December 14, 2006.  In fact, Representative

Counsel for Canadian ZAI Claimants had not been appointed as such by the CCAA Court until

February 8, 2006.   The Science Trial was fully completed by this court on October 18, 2004.

27.     Grace has intended to and has in fact treated Canadian ZAI Claimants as a

separate class of claimants.  The Amended Joint Plan of Reorganization filed by the U.S.

Debtors dated January 15, 2005, expressly provided that Canadian Claims would be adjudicated

in Canada, under a Canadian Litigation Procedure by a Canadian Court.

28.      The Canadian Federal Government is in the process of finalizing the Health

Canada report which is scheduled to be released shortly. The report, depending on its

conclusions, will have an impact upon the type of notice program that should be instituted in

Canada.  The release of the Health Canada report will also have an impact upon timing of a

claims bar date and timing of a notice program in Canada.

29.     The Canadian Federal Government is in possession of records which identify

approximately 242,000 homes in which ZAI was installed in Canada.  These records allegedly

include the identity of installation contractors, include bills of sale for the ZAI product and the

quantity utilized in each home.[3]

**B.  The terms of the proposed Canadian Bar Date Motion are substantively inadequate.**

30.    The Debtors' proposed Canadian proof of claim form, bar date notice and notice

program, as well as Debtors' proposed Order, contain inconsistencies and errors that will create

confusion at best and, at worst, are likely to prejudice Canadian ZAI Claimants.

31.    Some examples of the deficiencies include the following:

**Bar Date**

a.    Personal delivery locations are only available in the US which decreases the time Canadian claimants have to file because they must allow for sufficient mailing time (postmark prior to the bar date is not considered).

b.    The toll free number provided does not state that they will be properly equipped to communicate with non-English speaking claimants

c.    The website provided, www.graceclaims.com, is only available in English.

d.    English, French and various Aboriginal languages are required for properly targeting this population demographic efficiently.

**Claim Forms**

a.    ZAI claims must be written in English. This discriminates against many French-speaking and Aboriginal people and is not appropriate when dealing with residents of a bilingual country.

b.    Court approved claim forms (including information packages), only available in English, also discriminate against non-English speaking or English as a second language potential claimants.

---

[3] See Report of Michel Camus, Ph.D., and Claude Montmarquette, Ph.D., "Zonolite® in Canadian Homes: Where Do We Stand?", dated 6/30/06 attached as **Exhibit F**.

**Kinsella / Novak proposed notice plan**

a.      Targets of the proposed notice plan are homeowners 35 and older.
However, considering that the Crown is the true homeowner of native
lands, the age demographic may be lowered to account for realistic heads
of households.

b.      Effort should also be taken to consider the period during which Zonolite
was sold, when and where most of the homes were built, and the possible
delay of ZAI contamination when constructing the demographics.

c       Kinsella relied solely on Print Measurement Bureau's (PMB) data for
developing its profile of the demographics' most used mediums for
communication.  Hilsoft suggested combining the opinions of multiple
data analysts, including Mediamark Research, Inc., Audit Bureau of
Canada and BBM Canada.

d.      In the proposed notice plan, under the heading DEMOGRAPHICS,
Kinsella has estimated that 87.2% of claimants are white, leaving only
1.7% to compose the "other" category, which will include Aboriginals.
This information is the basis for Kinsella choosing the best methods for
reach and frequency of contacting potential claimants.

e.      The proposed notice plan states that they are relying on research
previously conducted for other asbestos litigations. This doesn't take into
account the marginalized group presently being dealt with (Aboriginals
and DND employees).  Consideration must be taken that many
Aboriginals reside and socialize on the Reserve or within their own
segregated communities. These areas often do not receive or give equal
attention to nationalized media communications considered to be widely
publicized among the general public.

f.      Without Representative Counsel having access to all government records
of homes with ZAI (collected through home inspections by (non) federally
licensed home inspectors or through other means) direct notice as a sole
initial step is likely not the most efficient method, given the time
restrictions sent out in the order regarding potential bar dates.

g.      Hilsoft, the company who has proven their skill for specifically targeting
Aboriginals in the *Residential School* case, suggests combining stage one
direct notice with mailings, emailing, faxes to Aboriginal organizations,
holding hearings and community announcements within Aboriginal

communities and advertising summary notices on the radio and in print and electronic form in Aboriginal media.[4]

h.      The proposed Kinsella plan also fails to send out individual mailings during the second half of their plan, as was suggested by Hilsoft (weeks 1, 7 and 9).

I.      Utilizing organizations and community outreach programs within Aboriginal communities throughout all phases of the notice program was one of Hilsoft's most valuable tools. This technique fails to be mentioned in Kinsella's plan.[5]

j.      An essential component of efficiently contacting and informing this targeted demographic is including English, French and various Aboriginal languages known to be spoken in the area in all forms of communication.

k.      Kinsella has advertising in national magazines as the core of its notice plan. Specifically, they believe that their target audience reads newspapers at an above average rate.  Hilsoft specifically stated that funding is better allocated to Aboriginal media when attempting to reach this group. They found that newspaper within CMAs shown through a census to have the highest number of Aboriginal residents was one of the most effective methods.

l.      Kinsella proposes a full page add in *Chatelaine* (English and French), *L'Actualite*, *Maclean's, Reader's Digest* and *Selection Reader's Digest*, to be spaced out during the first 7 weeks of the plan. None of these are native publications and there is no mention of utilizing the census bureau information to locate highly populated Aboriginal areas.

m.      Kinsella estimates to reach 90% of adults 35+ with a frequency of 3.7 times.

n.      When targeting Aboriginal populations Hilsoft claimed reaching 91.1% of adults 25+ with a frequency of 1.7 times. They also suggested repeat publications during the second half of the program. Kinsella limited their print notice to the first 7 weeks.

---

[4] See In re Residential Schools Class Action Litigation Settlement Notice Plan dated February 26, 2007 prepared by Hilsoft Notifications attached as **Exhibit G.**

[5] On March 13, 2002, Todd B. Hilsee filed his Supplemental Affidavit on Debtors' Bar Date Notice Proposal and Alternative Notice Plan [Docket No. 1794].

32.    Importantly, a notification program can be fashioned for homeowners identified through the databases of the Crown so as to warn them of potential health risks, and the signs and symptoms to watch for if they believe they have had exposure to ZAI.  Such a program should seek to reach each and every individual that can be traced through the Crown's records as having resided in a home which contains ZAI.

33.    It is not a question of whether the Crown has such documents. The Crown definitely has documents which reveal the identity of homes insulated with ZAI under the Crown's historical CHiP program. The Crown has not formally advised Representative Counsel of the extent of the documents, what it would take to review those documents and provide direct notice, or the costs and the time frame such an undertaking would require.  The Crown has not yet agreed to grant access to Representative Counsel to review these documents to ascertain the foregoing for themselves.

34.    The Crown undertook an audit and sampling of homes insulated with ZAI during a two-year project from Spring 2004 through Spring 2006. A "database" of approximately 6,000 homes was compiled through that process. The Crown's expert used that database to conclude that there are, conservatively, 242,000 homes in Canada insulated with ZAI.  It is unknown to us whether the Crown's collection of database information was continued beyond Spring 2006. Our prior inquiry in that regard remains unanswered.[6]

35.    We believe that there are third parties who possibly have databases containing information of homeowners and homes insulated with ZAI which might be available for use as part of a direct notice program. For example, we know that Pinchin Environmental, one of Canada's experts in this area, provides testing, identification, and consulting advice to

_____

[6] See Footnote No 3.

11

homeowners concerning Zonolite/Vermiculite insulation (See:http://www.pinchin.com/home-owners/home-owners-vermiculite.htm).

36.    The Crown retained Pinchin Environmental to effectuate the remediation of certain DND homes contaminated with ZAI.  Independent of this retention, Pinchin Environmental provides testing and consulting services to individual Canadian homeowners seeking to address ZAI contamination.  The Crown has prevented Representative Counsel from utilizing this expertise and the related class members' database to advance a determination on the number of contaminated homes in Canada.  See Pinchin Environmental Advice to Homeowners attached as **Exhibit H**.

37.    As appointed Representative Counsel for Canadian ZAI Claimants we seek to assure that all reasonable means are utilized to fully advise Canadian homeowners of the asbestos content of ZAI.  To that end, and consistent with the representations made by the Debtors, we seek to utilize direct notice mechanisms to fully advise our constituency.

38.    There are special ZAI constituencies in Canada, the interests of whom need to be considered, including Aboriginal claimants and claimants who resided in homes built and/or owned by the Canadian Federal Government. These claimants include Department of National Defense employees.  The Canadian Federal Government has remediated many of the homes through removal of ZAI and/or sealing of the ZAI so as to avoid risk of harm to occupants and others.  Some of the Canadian claimants live in remote areas, in particular certain groups of Aboriginal persons, and any notice program must be fashioned to recognize Canada's unique geography and demographic structure in order to ensure that such notice is effective.

39.     There are significant demographic distinctions to be made between American

populations and Canadian populations that are not adequately addressed by the proposed

Canadian notice program.  For example, there are significant French and Inuit speaking minority

populations in Canada but the proposed Canadian notice program provides that claims be made

and submitted in English.

40.     Currently, the Crown has various programs in place to educate the Canadian

population on the dangers of asbestos in the home.  Specifically, the Canadian Government has

an Energuide Program wherein it licenses auditors to inspect residences and inform homeowners

of the dangers of asbestos.   Those auditors who identified asbestos contamination in homes

provided homeowners with copies of the "It's Your Health" (Health Canada) brochure. While

that brochure does specifically identify and reference Zonolite, it could be enhanced to give

notice and reference to these proceedings, settlement, claims process, website links, etc.   See

Health Canada Report - Vermiculite Insulation Containing Amphibole Asbestos (August 2005) attached

as  **Exhibit I.**

41.     Simply put, we seek to utilize the appropriate mechanisms to advise Canadian

homeowners of the precautions and measures they should take if they have ZAI in their home.  It

is our position that the Debtors and the Crown should be responsible to adequately inform all

Canadians of the dangers of ZAI.

**C.      Proposed notice program does not afford adequate notice as required by Canadian
         jurisprudence.**

42.     The proposed notice program does not afford Canadian ZAI Claimants adequate

notice as required by Canadian jurisprudence.   In Currie v. McDonald's Restaurants of Canada

Ltd., 74 O.R. (3d) 321 (2005), the Court of Appeal for Ontario declined to recognize and enforce

an Illinois class action judgment against Canadian class action members on the basis of that

inadequate notice was given to Canadian class members.  See copy of opinion attached as

**Exhibit J.**

43.    In <u>Currie</u>,  the Court noted that where unnamed Canadian plaintiffs were not

afforded adequate notice of the Illinois proceeding, the Ontario courts should not recognize and

enforce the Illinois judgment.  <u>Id</u>. Page 11, Note 31.

44.    To the extent that the Debtors' notice program does not satisfy the "elements of

natural justice" as required in <u>Currie</u>, "traditional conflicts of law doctrine treats adequacy of

notice as an element of natural justice that can be raised as a defence to enforcement, once the

jurisdiction of the foreign court has been established." <u>Id</u> at 11, Note 31.

45.    Given the shortcomings outlined throughout this objection, Representative

Counsel asserts that the proposed Bar Date Motion and related notice program fail to satisfy the

requirements of Canadian jurisprudence.

**WHEREFORE**, for the reasons set forth in the Objection, the Canadian ZAI Claimants

respectfully request that this Court deny the relief sought by the Debtors, and grant such other

and further relief to which this Court deems appropriate.


[Remainder of Page Intentionally Left Blank]

Dated: May 16, 2008                    */s/Daniel K. Hogan*
                                       Daniel K. Hogan (DE Bar No. 2814)
                                       **THE HOGAN FIRM**
                                       1311 Delaware Avenue
                                       Wilmington, Delaware 19806
                                       Telephone: (302) 656.7540
                                       Facsimile: (302) 656.7599
                                       E-Mail: dkhogan@dkhogan.com

                         -and-

                                       **LAUZON BÉLANGER, INC**.
                                       Yves Lauzon
                                       Michel Bélanger
                                       286, rue St-Paul Quest, Bureau 100
                                       Montreal Quebec
                                       Telephone: (514) 844-7403

                         -and-

                                       **SCARFONE HAWKINS LLP**
                                       Matthew G. Moloci
                                       David Thompson
                                       One James Street South, 14th Floor
                                       P.O. Box 926, Depot 1
                                       Hamilton, Ontario
                                       Canada L8N 3P9
                                       Telephone: (905) 523-1333

# SUMMARY OF EXHIBITS

**Exhibit A**   CCAA Court Order pursuant to Section 18.6(4) of the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice which provided for a stay of asbestos-related suits against Grace Canada, dated April 4, 2001.

**Exhibit B**   CCAA Court Order recognizing injunctive relief provided by the U.S. Bankruptcy Court for the District of Delaware and giving effect to it in Canada and implementing a limited stay of proceedings with respect to Her Majesty the Queen in Right of Canada, dated November 14, 2005.

**Exhibit C**   CCAA Court Order for the appointment of Representative Counsel, dated February 8, 2006.

**Exhibit D**   Canadian ZAI Claimants motion seeking instruction from CCAA on the issues of development of a Canadian Litigation Procedure to deal with claims advanced by the Canadian ZAI Claimants.  The motion also seeks directions from the CCAA as to the effect of the Science Trial memorandum opinion on Canadian ZAI Claimants.

**Exhibit E**   a.   Statement of Claim Between Merv Nordick, et. al., Plaintiffs, and The Attorney General of Canada, W.R. Grace & Co., et. al., Defendants; The Federal Court of Canada, Filed September 1, 2005; Court File No. T-1503-05

   b.   Statement of Claim Between Ernest Spencer, et. al., Plaintiffs, and Department of National Defence and Canadian Forces, et. al., Defendants; Court of Queen's Bench of Manitoba, filed October 17, 2005; Suit No. C1-05-01-44628.

**Exhibit F**   Report of Michel Camus, Ph.D., and Claude Montmarquette, Ph.D., "Zonolite® in Canadian Homes: Where Do We Stand?", dated 6/30/06

**Exhibit G**   Residential Schools Class Action Litigation Settlement Notice Plan dated February 26, 2007, prepared by Hilsoft Notification

**Exhibit H**   Pinchin Environmental - Advice to Homeowners

**Exhibit I**   Health Canada Report - Vermiculite Insulation Containing Amphibole Asbestos (August 2005)

**Exhibit J**   Currie v. McDonald's Restaurants of Canada Ltd., 74 O.R. (3d) 321 (2005), the Court of Appeal for Ontario .