IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Hearing Date: June 2, 2008, at 1:00 p.m.** |
| | ) | **(Agenda Item No. 8)** |
| | ) | **Related to Docket No. 18501** |

## DEBTORS' RESPONSE AND OBJECTION TO MOTION OF MIAN REALTY REGARDING APPLICABILITY OF THE AUTOMATIC STAY

The Debtors oppose Mian's Motion and assert that: (i) the automatic stay applies to bar

the filing of a third-party complaint by Mian against the Debtors and (ii) grounds do not exist for

modification of the automatic stay.  Based upon the information currently available to the

Debtors, it is evident that Mian's contingent claim arose prior to the Bar Date, such claim should

have been filed several years earlier, and Mian is barred by the automatic stay from pursuing any

action against the Debtors at this time.

If the Motion is not denied at this time, however, the Debtors request a continuance so

that the Debtors can conduct adequate discovery into the matters asserted by Mian.  A more

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

complete objection to the Motion requires, among other things, an analysis of the third-party complaint and related pending action in conjunction with underlying factual information to determine whether or not Mian's assertions against the Debtors constitute a claim under bankruptcy law.  Accordingly, the Debtors have prepared the discovery requests, attached hereto as Exhibit A (the "Discovery Requests"), which they have served on Mian concurrently with the filing of this Objection.

Once Mian responds to the Discovery Requests, the Debtors should be able to demonstrate more specifically why the automatic stay applies, and that Mian's claims against the Debtors constitute a "claim" under the Bankruptcy Code which the Debtors believe should be barred because of the failure of Mian to assert such a claim until this late date.

Therefore, the Debtors request that either (1) the Motion be denied or (2) the Motion be continued until the August 25, 2008 omnibus hearing to provide adequate time for Mian to respond to the Discovery Requests, for the Debtors to analyze such responses, and for the Debtors to prepare a more detailed objection or response to the Motion.

## FACTS

1.      The Debtors or predecessor entities are believed to have owned 6 Kirby Avenue (the "Mian Property") from the mid-1960s or early 1970s through 1987.  Based upon currently available information, throughout the Debtors' ownership, the Mian Property was used for commercial purposes, with no known industrial or waste disposal activity.

2.      Mian purchased the Mian Property from the Debtors in July 1987.

3.      On December 30, 1994, the New Jersey Department of Environmental Protection ("NJDEP") issued a letter addressing assertions that property adjacent to the Mian Property was impacted by off-site sources of contamination (the "1994 NJDEP Letter").  That letter is a matter of public record.

2

4.     On August 7, 1997, Mian received a letter from counsel for the owner of the adjacent parcel (the "1997 Letter").[2]  The 1997 Letter confirms that Mian "consented to [the] request to install an additional monitoring well at the rear of [the Mian Property]…"  The 1997 Letter further states that the adjacent property owners "have been working extensively with the NJDEP to conclude the investigation and remediation of the property."

5.     The Debtors filed their Chapter 11 Cases on April 2, 2001.

6.     Pursuant to this Court's order, the bar date for filing non-asbestos, asbestos property damage, and medical monitoring claims was set for March 31, 2003 (at Docket No. 1963).

7.     On February 28, 2005, Mian received a letter from JM Sorge, Inc., Environmental Consultants, regarding "perform[ing] additional investigation work in the rear and central portions of the [Mian Property]" (the "2005 Letter").[3]

8.     Mian alleges in its Motion that it first learned of the existence of a landfill on the Mian Property or any environmental concerns related to the Mian Property on October 2, 2007 when an amended complaint was filed and served against it in the New Jersey District Court.

9.     On April 11, 2008, counsel for Mian filed a "Certificate of Lewis Goldshore" in the New Jersey District Court case (the "Goldshore Certificate" attached hereto as <u>Exhibit B</u>).  Paragraph 8 of the Goldshore Certificate references the 1994 NJDEP Letter.  Paragraph 9 of the Goldshore Certificate references the 1997 Letter and 2005 Letter seeking access to the Mian Property for purposes of investigation and potentially remediating groundwater contamination associated with the Mian Property.

---

[2]    The 1997 Letter is Exhibit F to the Goldshore Certificate described below in ¶ 9.
[3]    The 2005 Letter is Exhibit G to the Goldshore Certificate described below in ¶ 9.

## ARGUMENT

**A.    The Debtors believe the automatic stay applies to Mian's draft third-party complaint.**

10.     Bankruptcy Code section 362(a)(1) provides, in relevant part, that the filing of a Chapter 11 case operates as a stay of any attempt "to recover a claim against the debtor that arose before the commencement of the case…"

11.     Mian argues that the automatic stay does not apply to the filing of its proposed third-party complaint against the Debtors because its claim did not arise before the commencement of the Debtors' Chapter 11 cases. Mian asserts that it had no knowledge of "the existence of an alleged landfill on or any environmental concern relating to the [Mian] Property" before October 2, 2007, well after the Petition Date. Motion at ¶ 9. Mian hinges its argument that the stay does not apply on its lack of knowledge of any potential claim against the Debtors until October 2007. Motion at ¶ 20.

12.     Even the sparse facts presently available to the Debtors suggest that Mian had adequate notice of potential or actual environmental contamination on the Mian Property well before October 2007 and that, accordingly, the automatic stay does apply to the current situation. For instance, the August 1997 Letter confirms that Mian had consented to a request for the installation of an "additional" monitoring well on the Mian Property. See 1997 Letter attached as Exhibit F to Goldshore Certificate. One can surmise that sampling occurred on the Mian Property before and after that correspondence, and that Mian could have obtained the data generated from that investigation. Apparently that investigatory activity was ongoing, as the 2005 Letter indicates that "additional investigation work" should be performed on the Mian Property. See 2005 Letter attached as Exhibit G to Goldshore Certificate.

4

13.     In addition to this direct notice to Mian, by 1997 Mian would have been on notice to explore the public records available at the NJDEP, including the 1994 NJDEP Letter. At a minimum, this public record demonstrates that Mian's neighboring property owner was seeking to blame contamination on sources located outside of its own site, presenting the possibility of a claim against Mian. See 1994 NJDEP Letter attached as Exhibit E to Goldshore Certificate.

14.     Thus, even based on the records available to Debtors at this point, it is already evident that Mian's potential contingent claim against the Debtors arose prior to the Bar Date, because the parties suing Mian (from which some or all of Mian's claims are derivative) had contingent claims that arose prior to the Bar Date, and because Mian had actual or constructive notice of its claims long before it pursued its Motion.

15.     In the event that this Court does not deny the Motion, however, the Debtors need to gather additional facts. For example, the Debtors do not know any specific details regarding the environmental condition of the Mian Property as the Debtors sold the Mian Property to Mian over 20 years ago. The Debtors also do not know of any additional facts and circumstances that would either support or refute Mian's assertion that its claim arose post-petition. Accordingly, the Debtors have prepared the Discovery Requests which are being served simultaneously with this Objection. Once the Debtors receive Mian's responses to the Discovery Requests, they will be in a position to address the issue in more detail on the merits if that proves necessary.

**B.      The Debtors believe that Mian has failed to allege grounds for relief from the automatic stay.**

16.     Pursuant to section 362(d) of the Bankruptcy Code, a movant must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the movant."

DOCS_DE:137555.1

In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993).  In particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

(a)     whether any great prejudice to either bankrupt estate or the debtors will result from continuation of the civil suit;

(b)     whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

(c)     the probability of the creditor prevailing on the merits.

In re W. R. Grace & Co., 2007 WL 1129170, *2 (Bankr. D. Del. 2007); Continental, 152 B.R. at 424.  Mian has not demonstrated sufficient cause in the Motion to warrant the lifting or modification of the automatic stay.  Indeed, Mian neither mentions the above three-factor test in its Motion, nor argues any of the relevant elements which, based on the facts available to the Debtors, weigh in the Debtors' favor.

          a.     *The Debtors would suffer substantial prejudice if the automatic stay were modified.*

17.     The most important factor in determining whether to grant relief from the automatic stay to allow litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate.  See, e.g.,  Grace, 2007 WL 1129170 at n7 citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984); see also In re Penn-Dixie Indus., Inc., 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980).  If the automatic stay is lifted to allow Mian to proceed with the filing of its third-party complaint, the Debtors' ability to administer their estates and these chapter 11 cases will be adversely impacted.

18.     This Court has repeatedly recognized that granting litigation claimants relief from the automatic stay would be detrimental to the administration of the estates because it would undermine the goal of resolving all the Debtors' claims through a comprehensive plan of

reorganization. See Grace, 2007 WL 1129170 at 3 ("Granting [relief from the automatic stay] would also be a distraction from the reorganization process."); see also *Order Denying David Slaughter's Motion to Lift Automatic Stay* dated November 11, 2004 [Case No. 01-1139, Docket No. 6852] (denying a similar motion to lift the automatic stay).

19.     On April 7, 2008 the Debtors announced that they have reached agreement in principal with the Asbestos Personal Injury Committee, the Future Claimants Representative and the Official Committee of Equity Security Holders with respect to a structure for a consensual chapter 11 Plan. This Plan will address and provide for the payment in full of all allowed claims against the Debtors, including allowed environmental claims. The Debtors are poised to move forward promptly with such a chapter 11 Plan. Permitting Mian to proceed with its third-party complaint at this critical time in these Chapter 11 cases would potentially entangle Debtors' management and personnel at a time when their efforts are vital to completion of these cases and would be in conflict with the purpose of Chapter 11 as all allowed claims against the Debtors will be addressed as part of the plan process.

20.     Further, this Court has held that the defense costs associated with collateral litigation are detrimental to the Debtors' estates. Grace, 2007 WL 1129170 at 3 (noting that lifting the automatic stay would "force the Debtors to duplicate defense efforts outside the chapter 11 cases and unnecessarily deplete estate resources.")

21.     Finally, it would be inequitable to allow Mian, who has not participated in the bankruptcy process thus far, to liquidate and potentially have its claim paid when thousands of other claimants are unable to do the same. This would reward Mian, while at the same time penalizing other similarly situated claimants.

7

b.    *Their appears to be no hardship to Mian in maintaining the stay*.

22.    The above-described burdens forced upon the Debtors far outweigh any inconvenience encountered by Mian.  Mian alleges that it possesses a number of causes of action against the Debtors.  Motion at ¶ 12.  But none of these causes of action amount to anything more than a monetary damage claim and if the claim is not barred, it may be adjudicated in the Bankruptcy claims process or litigated once the Debtors emerge from bankruptcy.  Allowing Mian to proceed now would be to allow Mian to circumvent the bankruptcy process and gain an advantage over thousands of other claimants who have stood by patiently through this bankruptcy process.  Any contention that Mian will be harmed if the Motion is denied boils down to Mian's desire to have its claims adjudicated immediately.  This is exactly the result that the automatic stay was intended to avoid.  See Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3rd Cir. 1991) ("The automatic stay was designed 'to prevent certain creditors from gaining a preference for their claims against the debtors[.]'"); see also Mann v. Chase Manhattan Mortgage Corp., 316 F.3d 1, 3 (1st Cir. 2003) ("Generally speaking, the automatic stay prescribed in Bankruptcy Code § 362(a) serves the salutary purpose of deterring creditors from jockeying for advantage[.]").  Granting the Motion would violate these principals.

23.    The burden to show harm is on Mian.  It is Mian that "bear[s] the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the debtor in denying relief."  In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990).  Since Mian utterly fails in carrying its burden to demonstrate sufficient harm worthy of modifying the automatic stay, the Motion should be denied.

c.      *Mian is unlikely to prevail on the merits*.

24.     Finally, the Motion should be denied because Mian has not demonstrated any likelihood of success on the merits.  In the Motion, Mian merely attach its third-party complaint alleging various causes of action.  A mere assertion or restatement of their causes of action does not demonstrate a likelihood of success on the merits.  Cf. In re Daly & Sinnott Law Center PLLC, 292 B.R. 796, 801-802 (Bankr. D. Vt. 2003) (sufficient evidence, as opposed to allegations, required to show likelihood of success on the merits).  Nor do the Debtors concede that Mian has a valid claim against them.

**C.      The Debtors believe that the allegations asserted by Mian against them constitute a claim under the Bankruptcy Code which claim should be barred.**

25.     Mian cites to a single case, In re Torwico Electronics, Inc., 8 F.3d 146 (3d Cir. 1993), for the proposition that the Debtors' obligation to cleanup waste posing an ongoing hazard on a property does not constitute a claim dischargeable in bankruptcy.  Motion at ¶ 28.

26.     Mian's reliance on Torwico is misplaced and should not be considered.  First and foremost, the issue in Torwico was whether a claim was "dischargeable" in bankruptcy, not whether something constituted a claim in the first instance.  Furthermore, in determining nondischargeability of a claim, the Torwico court focused on the fact that the NJDEP sought not just monetary relief, but rather that the debtors take action to ameliorate an ongoing hazard. Torwico at 150.  Here, Mian -- not a state regulatory agency -- is simply seeking to collect monetary damages from the Debtors.

27.     The relevant question in this instance is not dischargeability, but whether or not Mian has a claim against the Debtors under the Bankruptcy Code.  The Debtors assert that Mian had an obligation to file a claim (at least a contingent claim) before the Bar Date.  Mian's claims arise out of alleged events that, at a minimum, happened prior to Mian's purchase of the Mian

9

Property from the Debtors in 1987, long before the Debtors filed for bankruptcy protection. Indeed, it appears that a significant portion of the allegations asserted against Mian arise out of activities that allegedly occurred from approximately 1940 through 1948. See Second Amended Complaint, ¶9, Litgo v. Jackson case, filed as Exhibit A to the [Mian Declaration].  In the complaint filed against Mian, it is alleged that the environmental investigation and remedial action occurred as early as the 1980's. See Id. at ¶11.  Based upon the time period of the underlying allegations, if Mian has a claim against the Debtors, it is a contingent claim which arose when Mian purchased the Mian Property. See Matter of Reading Co., 115 F.3d 1111, 1123 (3rd Cir. 1997) (viewing a contribution action (after date of statutory enactment) in an environmental cost recovery case as a contingent claim).  Due to the Debtors' extensive Bar Date notice program, Mian had constructive notice of the Bar Date and should have filed a contingent claim prior to the Bar Date.  Any attempt to file a claim now, over five years after the Bar Date, does not meet the requisite excusable neglect standard.  Accordingly, the Debtors believe any claim filed by Mian should be barred under the Bankruptcy Code.

## CONCLUSION

The Debtors assert that the automatic stay applies to bar Mian from filing a third-party complaint against the Debtors and that grounds do not exist for modification of the automatic stay.  Accordingly the Debtors request that the Motion be denied.  In the alternative, the Debtors request that the Motion be continued until the August 25, 2008 omnibus hearing so that the Debtors may obtain discovery from Mian with respect to Mian's alleged claim and the allegations asserted by Mian in the Motion and the draft third-party complaint.  The Debtors have served Mian with the Discovery Requests concurrently with the filing of this Objection.

DOCS_DE:137555.1

Dated: May 16, 2008

KIRKLAND & ELLIS
David M. Bernick, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for Debtors and Debtors in Possession