# EXHIBIT B

GOLDSHORE, CASH & KALAC, P.C.
Crossroads Corporate Center
3150 Brunswick Pike, Suite 150
Lawrenceville, New Jersey 08648
Telephone: (609) 647-9840
Fax: (609) 637-9846
Attorneys for Defendant, Mian Realty, L.L.C.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LITGO NEW JERSEY, INC., and<br>SHELDON GOLDSTEIN,     : | Hon. Anne E. Thompson |
|           : | |
|     Plaintiffs,     : | Civil Action No. 06-2891(AET)(TB) |
|           : | |
| v.           | |
|           : | **CERTIFICATION OF** |
| LISA JACKSON, in her official capacity | **LEWIS GOLDSHORE** |
| as the Commissioner of the New Jersey     : | |
| Department of Environmental Protection, et al., | |
|           : | |
|     Defendants.     : | |

I, Lewis Goldshore, of full age, certifies as follows:

1. I am a member of the law firm, Goldshore, Cash & Kalac, P.C., counsel for Defendant, Mian Realty, L.L.C., the owner of the real property situated at 6 Kirby Avenue, Somerville, New Jersey and identified as Block 1, Lot 4.02 ("6 Kirby Avenue Parcel")

2. On January 16, 2008, we filed a motion for leave to file a Third Party Complaint in this matter against W.R. Grace, the predecessor-in-interest respecting the 6 Kirby Avenue Parcel.

3. Following an exchange of correspondence with counsel for W.R. Grace regarding its assertion of protection from claims under the automatic stay provision of the Bankruptcy Code, by

letter to the Court dated February 26, 2008, I withdrew the aforesaid motion without prejudice. Thereafter, Mian retained Richard Trenk, Esq., to provide assistance with respect to the Bankruptcy issues attending Mian's potential claims against its predecessor-in-title.

4.    Mr. Trenk's firm is in the process of preparing and filing a motion with the U.S. Bankruptcy Court in Delaware handling the W.R. Grace proceeding, seeking relief from the automatic stay and for an acknowledgment that certain of Mian's claims against its predecessor-in-title are not dischargable in the pending Bankruptcy proceeding.

5.    On March 25, 2008, I faxed a letter, with supporting documentation to Plaintiffs' counsel, seeking their consent to filing an Amendment to our Answer in this matter to include two more specific CERCLA defenses. See copy attached hereto as Exhibit A.

6.    Plaintiffs' counsel responded by fax of April 1, 2008, advising that he would not consent unless we provided an explanation why our proposed defenses were not "futile". See copy attached as Exhibit B.

7.    Despite the inappropriateness of Plaintiffs' response, by letter dated April 2, 2008, we provided a further explanation of the defenses sought to be added by the proposed Amendment. See copy attached as Exhibit C. **To date we have received no response from Plaintiffs' counsel.**

8.    Attached hereto as Exhibits D and E, are two letters from the New Jersey Department of Environmental Protection (NJDEP), dated October 31, 1989 and December 30, 1994, respectively, regarding the Plaintiffs' site and groundwater contamination associated therewith, and the migration of same off-site.   These documents were received as part of Plaintiffs' supplemental initial disclosures.

9.    Attached hereto as Exhibits F and G, are two letters from an attorney and environmental

2

consultant on behalf of Plaintiffs, dated August 7, 1997 and February 28, 2005, respectively, seeking access to the Mian site for purposes of investigation and supposedly remediating groundwater contamination associated with the Plaintiffs' site and migrating therefrom off-site.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

By: _____
LEWIS GOLDSHORE

Dated:   April 10, 2008

3

# GOLDSHORE, CASH & KALAC, P.C.

### ATTORNEYS AT LAW

CROSSROADS CORPORATE CENTER
3150 BRUNSWICK PIKE, SUITE 150
LAWRENCEVILLE, NEW JERSEY 08648

LEWIS GOLDSHORE*
ROBERT J. CASH**
AMIE C. KALAC
——
*NJ, NY & PA BARS
**NJ & PA BARS

TELEPHONE: (609) 637-9840
FAX: (609) 637-9846
E-MAIL: www.gckenvlaw.com

March 25, 2008

<u>VIA FAX</u>

John McGahren, Esq. - (973) 848-5601
PATTON BOGGS LLP
One Riverfront Plaza, 6th Floor
Newark, NJ  07102

      RE:    Litgo, et al. v. Jackson, et al.
              Civ. Action No. 06-2891

Dear Mr. McGahren:

      As you are aware, our firm represents Defendant Mian Realty, LLC (Mian) in this matter.

      I am writing at this time, pursuant to FRCP 15, to seek your consent to Mian's proposed amendment to its Answer in this matter to more specifically assert Separate Defenses to your clients' CERCLA claims.

      I am enclosing herewith a stipulation allowing the amendment with a copy of the proposed amendment attached thereto. Please let me hear from you, at your earliest convenience, as to whether you will consent to the proposed amendment, so we can avoid filing an unnecessary motion.

      Should you have any questions regarding the foregoing, please feel free to contact me.

                          Very truly yours,
                          GOLDSHORE, CASH & KALAC, P.C.

                          LEWIS GOLDSHORE

encl.
cc:    Counsel of Record (w/encl.) - VIA FAX ONLY

EXHIBIT
A
ALL-STATE LEGAL SUPPLY CO.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LITGO NEW JERSEY, INC., and SHELDON GOLDSTEIN, | : |
| Plaintiffs, | : |
| | : Civil Action No. 06-2891(AET)(TB) |
| v. | : |
| LISA JACKSON, in her official capacity as the Commissioner of the New Jersey Department of Environmental Protection, STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF THE ARMY, UNITED STATE DEPARTMENT OF THE AIR FORCE, UNITED STATES DEPARTMENT OF THE NAVY, ALFRED SANZARI ENTERPRISES, MIAN REALTY, L.L.C., and KIRBY AVENUE REALTY HOLDINGS, L.L.C., | : |
| Defendants. | : |

**STIPULATION ALLOWING AMENDMENT OF ANSWER**

Defendant, Mian Realty, LLC, ( Mian), and Plaintiffs, Litgo New Jersey, Inc., and Sheldon Goldstein, stipulate and consent, in writing, within the meaning of Rule 15(a) of the Federal Rules of Civil Procedure, that Mian may file an Amendment to its Answer to the Second Amended Complaint filed against it in this matter by the aforesaid Plaintiffs, in the form as shown in Exhibit

147917.1

"A" attached to this Stipulation.

Dated:                                         For Litgo New Jersey, Inc., and
                                               Sheldon Goldstein


                                               _____
                                               John McGahren, Esq.
                                               PATTON BOGGS LLP


Dated:                                         For Mian Realty LLC


                                               _____
                                               Lewis Goldshore, Esq.
                                               GOLDSHORE, CASH & KALAC, P.C.

147917.1                                       2

GOLDSHORE, CASH & KALAC, P.C.
Crossroads Corporate Center
3150 Brunswick Pike, Suite 150
Lawrenceville, New Jersey 08648
Telephone: (609) 647-9840
Fax: (609) 637-9846
Attorneys for Defendant, Mian Realty, L.L.C.

## UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LITGO NEW JERSEY, INC., and SHELDON GOLDSTEIN, | : | |
| Plaintiffs, | : | Civil Action No. 06-2891(AET)(TB) |
| v. | : | |
| LISA JACKSON, in her official capacity as the Commissioner of the New Jersey Department of Environmental Protection, STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF THE ARMY, UNITED STATE DEPARTMENT OF THE AIR FORCE, UNITED STATES DEPARTMENT OF THE NAVY, ALFRED SANZARI ENTERPRISES, MIAN REALTY, L.L.C., and KIRBY AVENUE REALTY HOLDINGS, L.L.C., | : : : : : : : | **AMENDMENT TO ANSWER OF DEFENDANT MIAN REALTY LLC TO SECOND AMENDED COMPLAINT** |
| Defendants. | : | |

Defendant Mian Realty, LLC ("Mian"), through its counsel, Goldshore, Cash, & Kalac, P.C.,

hereby amends its answers to the Second Amended Complaints of Plaintiffs, Sheldon Goldstein and

Litgo, New Jersey Inc., as follows:

## SEPARATE DEFENSES

### TWENTY-THIRD SEPARATE DEFENSE

Mian is not liable for any "response costs", as that term is defined in Section 101(25) of CERCLA, associated with the Somerville Iron Works  site, because it is entitled to the Contiguous Properties defense provided in Section 107(q).

### TWENTY-FOURTH SEPARATE DEFENSE

Mian is not liable for any "response costs", as that term is defined in Section 101(25) of CERCLA, associated with the Somerville Iron Works  site, because it is entitled to the defense provided in Section 107(b)(3).

### TWENTY-FIFTH SEPARATE DEFENSE

Mian  hereby reserves the right to assert additional defenses that may be pertinent to the Plaintiffs' claims when the precise nature of said claims are ascertained through discovery and based upon the facts developed as this matter progresses.

**WHEREFORE,** Mian respectfully demands the following relief from the Court:

(A) Dismissal of the Second Amended Complaint with prejudice;

(B) The entry of judgement in favor of it and against Plaintiffs as to all claims;

(C) Attorneys' fees, interest and costs of suit; and

(D) Such other relief as the Court deems equitable and just.

> Respectfully submitted,
> GOLDSHORE, CASH & KALAC, P.C.
> Crossroads Corporate Center - Suite 150
> 3150 Brunswick Pike
> Lawrenceville, NJ 08648
> Telephone:    (609) 637-9840
> Fax:         (609) 637-9846
> Attorneys for Defendant, Mian Realty, LLC

> By:_____
> Lewis Goldshore

Dated: March    , 2008

3

```
x x x  Communication Result Report ( Mar. 25. 2008  4:52PM ) x x x

                                                              1)
                                                              2)

Date/Time: Mar. 25. 2008  4:40PM

File                                                                        Page
No. Mode            Destination              Pg(s)      Result         Not Sent
--------------------------------------------------------------------------------
1449 Memory TX      19738485601              P.  6   -  OK

--------------------------------------------------------------------------------
Reason for error
  E. 1) Hang up or line fail              E. 2) Busy
  E. 3) No answer                         E. 4) No facsimile connection
  E. 5) Exceeded max. E-mail size
```

GOLDSHORE, CASH & KALAC, P.C.
ATTORNEYS AT LAW
CROSSROADS CORPORATE CENTER
3150 BRUNSWICK PIKE, SUITE 130
LAWRENCEVILLE, NEW JERSEY 04648

LEWIS GOLDSHORE*                              TELEPHONE: (609) 637-9940
ROBERT J. CASH**                             FAX: (609) 637-9044
AMIE C. KALAC                                E-MAIL: www.gcknewview.com
*NJ, NY & PA BARS
**NJ & PA BARS

March 25, 2008

VIA FAX

John McGahren, Esq. - (973) 848-5601
PATTON BOGGS LLP
One Riverfront Plaza, 6th Floor
Newark, NJ 07102

RE:    Lligo, et al. v. Jackson, et al.
       Civ. Action No. 06-2891

Dear Mr. McGahren:

As you are aware, our firm represents Defendant Mian Realty, LLC (Mian) in this matter.

I am writing at this time, pursuant to FRCP 15, to seek your consent to Mian's proposed amendment to its Answer in this matter to more specifically assert Separate Defenses to your clients' CERCLA claims.

I am enclosing herewith a stipulation allowing the amendment with a copy of the proposed amendment attached thereto. Please let me hear from you, at your earliest convenience, as to whether you will consent to the proposed amendment, so we can avoid filing an unnecessary motion.

Should you have any questions regarding the foregoing, please feel free to contact me.

Very truly yours,
GOLDSHORE, CASH & KALAC, P.C.

LEWIS GOLDSHORE

encl.
cc:    Counsel of Record (w/encl.) - VIA FAX ONLY

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
973-848-5600

Facsimile 973-848-5601
www.pattonboggs.com

April 1, 2008

John McGahren
973-848-5610
jmcgahren@pattonboggs.com

**VIA FACSIMILE**

Lewis Goldshore, Esq.
GOLDSHORE, CASH & KALAC, P.C.
3150 Brunswick Pike, Suite 150
Lawrenceville, New Jersey 08648

Re:  *Lingo New Jersey, Inc. et al. v Jackson, et al.*
     Civ. Action No.: 06-2891

Dear Mr. Goldshore:

We are in receipt of your letter dated March 25, 2008 requesting our consent to a proposed amendment to Mian Realty LLC's Answer in the above-referenced matter. We share your desire to avoid unnecessary motion practice in this case.

As you know, amendments to pleadings are permitted provided they are not futile. *See, e.g., Foman v Davis*, 371 U.S. 178, 182 (1962). Accordingly, we ask that you set forth in a letter why your proposed Twenty-Third and Twenty-Fourth Separate Defenses, as set forth in your proposed amended Answer, are not futile. If you provide us with such a letter in a timely manner, we will stipulate to your proposed amendment.

Please feel free to call to me should you wish to discuss this matter further. Thank you.

Very truly yours,

John McGahren
of PATTON BOGGS LLP

JM:ajm

EXHIBIT
*B*
ALL-STATE LEGAL SUPPLY CO.

# GOLDSHORE, CASH & KALAC, P.C.

### ATTORNEYS AT LAW

CROSSROADS CORPORATE CENTER
3150 BRUNSWICK PIKE, SUITE 150
LAWRENCEVILLE, NEW JERSEY 08648

LEWIS GOLDSHORE*
ROBERT J. CASH**
AMIE C. KALAC

*NJ, NY & PA BARS
**NJ & PA BARS

TELEPHONE: (609) 637-9840
FAX: (609) 637-9846
E-MAIL: www.gckenvlaw.com

April 2, 2008

**VIA EMAIL & FAX** - (973) 848-5601

John McGahren, Esq.
PATTON BOGGS LLP
One Riverfront Plaza, 6th Floor
Newark, NJ  07102

RE:    Litgo, et al. v. Jackson, et al., Civ. Action No. 06-2891

Dear Mr. McGahren:

I am now in receipt of your April 1, 2008 letter responding to my letter of March 25, 2008, seeking your consent to an amendment to the Answer filed on behalf of my client (Mian) in the referenced matter.

I do not read Forman v. Davis, cited in your letter, to impose a requirement that an amendment to a pleading be proven to be meritorious in order to be allowed. Rather, that decision clearly states that leave to amend should be freely given, so that parties will be afforded an opportunity to test the merits of their claims [or defenses]. In any event, the burden of establishing futility is on the opposing party.

That said, with respect to the amendment at hand, under the current circumstances we believe that we will be able to establish the factual predicate for either or both of the affirmative defenses we seek to more specifically assert, i.e., CERCLA Section 107(q) and 107(b)(3) defenses.

Initially, there are no allegations (or basis for any) that there has been any release of hazardous substances at the 6 Kirby Avenue property since it was purchased by our client in 1987. Rather, your claims against Mian are solely based upon the present ownership of what is claimed [but disputed] to be a contaminated site. The Section 107(b)(3) defense is available in such circumstances - assuming the underlying predicate can be established (which we believe will be the case).

Of course, we also deny Plaintiffs' assertion that 6 Kirby Avenue is part of the Somerville Iron Works "facility" - this is a factual issue that will be decided at trial. Assuming we are correct,

EXHIBIT
C
ALL-STATE LEGAL SUPPLY CO.

Mian will also have available to it the CERCLA 107(q) defense for contiguous property owners. Again, the factual predicate to this defense will be the subject of discovery and trial.

Finally, I would note that it is also our position that our present pleadings already allow us to assert these defenses - nevertheless, we are seeking this amendment so that we can avoid any unnecessary disputes as to such issues in the future.

Under the circumstances, I would again urge you to consent to our proposed amendment so that we can avoid the expense of bringing this before the Court.

Your prompt response to this request is greatly appreciated.

Very truly yours,
GOLDSHORE, CASH & KALAC, P.C.

LEWIS GOLDSHORE

2

P. 1

✼ ✼ ✼ Communication Result Report ( Apr. 2. 2008  9:37AM ) ✼ ✼ ✼

1)
2)

Date/Time: Apr. 2. 2008  9:36AM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 1482 | Memory TX | 19738485601 | P. 3 | OK | |

```
Reason for error
  E. 1) Hang up or line fail          E. 2) Busy
  E. 3) No answer                     E. 4) No facsimile connection
  E. 5) Exceeded max. E-mail size
```

### Goldshore, Cash & Kalac, P.C.

Crossroads Corporate Center
3150 Brunswick Pike
Suite 150
Lawrenceville, NJ 08648
(609) 637-9840
Fax: (609) 637-9846

Lewis Goldshore
Robert J. Cash
Anda C. Kalac

**Areas of Practice**
■ Environmental Law
■ Land Use Law
■ Municipal Law

Date:    **April 2, 2008**

Name:    John McClahron, Esq.

Company:

Fax: 973-848-5601          Total Pages:  3

From:    Lewis Goldshore

Client #:

Matter #:

Re:      Litgo, et al. V. Jackson, et al., Civ.
         Action No. 06-2891

Comments:

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

REPORT ANY TRANSMITTAL PROBLEMS TO (609) 637 - 9840



CN C23
Trenton, N.J.  08625-0028

(609)633-7141

### State of New Jersey
#### DEPARTMENT OF ENVIRONMENTAL PROTECTION
DIVISION OF HAZARDOUS WASTE MANAGEMENT

Michele M. Putnam
Deputy Director
Hazardous Waste Operations

John J. Trela, Ph.D., Director

Lance R. Miller
Deputy Director
Responsible Party Remedial Action

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
George Tyler, Esq.
Giordan, Halleran & Ciesla
270 State Highway 35,
P.O. Box 190
Middletown, NJ 07748

OCT 31 1989

Dear Mr. Tyler:

RE:  Industrial Establishment: F Sharp Screw Machine Products,
        Morgan Chemicals, Inc. and JANR Transport
        Location: 40 Haynes Street, Somerville Boro., Somerset County
        Block: 30    Lot: 3
        Transaction: Sale of Property
        Addendum to Sampling Plan Dated: June, 1989
        ECRA Case #85647,85649,85648

Sanzari Enterprises owns the property that F sharp Screw Machines Products,
Morgan Chemicals, Inc. and JANR Transport occupy.  Sanzari Enterprises has
received a Partial Cleanup Plan Approval on January 27, 1989 which is
currently being implemented.  The above referenced Sampling Plan has been
amended to a Cleanup Plan.

Pursuant to the authority vested in the Commissioner of the New Jersey
Department of Environmental Protection ("NJDEP") by the Environmental
Cleanup Responsibility Act, N.J.S.A. 13:1K-6 et seq. (ECRA), and duly
delegated to the Assistant Director of the Industrial Site Evaluation
Element pursuant to N.J.S.A. 13:1D-4, the above referenced Cleanup Plan
submitted on behalf of Sanzari Enterprises is hereby approved by NJDEP with
post-approval conditions set forth below:

#### Soils

I.    Verification sampling is required at the three transformers on the west
      wall of Crisc Moving and Storage.  Sanzari Enterprises shall undertake
      the following:

      a.    Take two soil samples at the edge of the base of the transformer
            pad in the 0-6 inch increment with analysis for polychlorinated
            biphenyls (PCBs) and petroleum hydrocarbons (PHCs).  These samples
            shall be biased towards surface runoff and stained soils.

*New Jersey is an Equal Opportunity Employer*



EXHIBIT

D

ALL-STATE LEGAL SUPPLY CO.

LITGO-RCRA0000776

    b.   If these samples exceed the ECRA action levels, the soils shall be excavated with post-excavation samples taken. The area will be considered remediated when all post-excavation samples are below current ECRA action levels.

2.   Sanzari Enterprises shall remove all contaminated sediment and soil in the 8" diameter circular hole in the floor of Quality Tube. Remediation of this area shall be deemed complete when post-excavation samples are below ECRA action levels.

### Hydrogeology

3.   The groundwater data indicates that operations on Sanzari Enterprises property may have contributed to offsite contamination. The Department has concluded that remediation for this contamination is not warranted at this time due to the concentrations of the contaminants found in the ground water and the expected extent of the problem. However, before final Department sign-off on this issue and the issuance of a letter of full compliance, Sanzari Enterprises shall undertake the additional investigative requirements outlined below, as a condition of this Cleanup Plan approval in order to resolve any questions regarding the impact of Sanzari Enterprises' activities on ground water. In the event that remediation is necessary Sanzari Enterprises financial assurance and cost estimate shall be adjusted and maintained to meet that contingency. The NJDEP will accept any required instrument(s) of financial assurance, in proper form from Sheldon Goldstein, contract purchaser of the site.

4.   Three additional monitoring wells (MWs) shall be installed 50-100 feet downgradient (southwest, south, southeast) of the southern property boundary. This will require off-site access.

5.   These MWs shall be constructed to monitor the same interval as the existing MWs, on the Sanzari Enterprises property.

6.   All wells shall be sampled for VO+15.

7.   A contour map shall be provided for each sampling episode incorporating measurements from all new and existing MWs.

8.   All potable wells downgradient of Sanzari Enterprises, within a 1/2 mile, shall be identified and accurately located on a site map. Sanzari Enterprises shall utilize the results of sampling by Bridgewater Township of potable wells in this area.

9.   Due to the presence of VO contamination in the on-site MWs, Sanzari Enterprises shall seal the production well according to N.J.A.C. 7:9-9.1 during installation of proposed MWs. This requires that all obstructions be cleared prior to sealing.

10.  Sanzari Enterprises shall conduct the above requested sampling and submit the results along with the additional requirements within 120 days of receipt of this document.

11.  Sanzari Enterprises shall notify the Department in writing two weeks prior to drilling.

LITGO-RCRA0000777

12. Sanzari Enterprises shall comply with all federal, state and local laws, regulations and ordinances in implementing the approved Cleanup Plan.

13. Sanzari Enterprises shall obtain all federal, state and local permits prior to implementation of the approved Cleanup Plan. Should any conditions or limitation of said permits be more stringent that those in the approved Cleanup Plan, then said permit requirements shall supersede the terms of this approval.

14. Upon the written request of NJDEP Sanzari Enterprises shall submit for NJDEP review and approval any additional sampling plans deemed necessary by NJDEP during the implementation of a Cleanup Plan to fully delineate the nature and extent of environmental contamination on or from Sanzari Enterprises. Sanzari Enterprises shall implement and complete any such additional Sampling Plans, and submit the results thereof, in accordance with the timeframe set forth in the approved additional Sampling Plan. Furthermore, Sanzari Enterprises shall prepare and submit to NJDEP for approval, any revisions to the Cleanup Plan necessary to remediate any additional environmental contamination on or from Sanzari Enterprises as identified during the cleanup plan implementation; by any additional sampling, or from any other source. Sanzari Enterprises shall revise and submit the required information within a reasonable time not to exceed 30 calendar days from receipt of written notification from NJDEP.

15. The ECRA requirement for remediation of all environmental contamination on or from Sanzari Enterprises and the terms and conditions of the approved Cleanup Plan shall be binding upon Sanzari Enterprises, and its officers, management officials, successors in interest, assigns, tenants and any trustee in bankruptcy or receiver appointed pursuant to a proceeding in law or equity.

16. Sanzari Enterprises shall provide, within 14 days of receipt of this Cleanup Plan approval, financial assurance in the amount of $335,000.00, as specified in the Cleanup Plan, in accordance with the regulatory requirements of N.J.A.C. 7:26B-6. Furthermore, Sanzari Enterprises shall maintain the required financial assurance until NJDEP conducts a final inspection pursuant to N.J.A.C. 7:26B-5.7 and NJDEP issues Sanzari Enterprises a written notification that the Cleanup Plan has been fully implemented to NJDEP's satisfaction. The NJDEP will accept any required instrument(s) of financial assurance, in proper form, from Sheldon Goldstein, contract purchaser of the site.

17. Sanzari Enterprises shall provide written notification of the completion of the Transaction which subjected the Industrial Establishment to ECRA within seven days of its occurrence.

18. Sanzari Enterprises shall prepare and submit to NJDEP monthly written progress reports detailing the implementation of the Cleanup Plan.

19. Sanzari Enterprises shall prepare and submit a final written report detailing the actual cleanup actions performed and final cleanup costs including overhead, compared to the cleanup actions, schedule and costs

LITGO-RCRA0000778

approved in the Cleanup Plan. The report should also include dates of cleanup activities, additional sampling results and other pertinent information.

20. Sanzari Enterprises shall provide, within 14 calendar days of receipt of this Cleanup Plan approval, oversight fees in the amount of $7,000.00, based on the cost of the cleanup, in accordance with the regulatory requirements of N.J.A.C. 7:26B-1.10. The NJDEP will accept payment of any required fees from Sheldon Goldstein, contract purchaser.

21. Sanzari Enterprises shall initiate the Cleanup Plan as conditioned in this letter within two weeks of receipt of this letter, and in accordance with N.J.A.C. 7:26B-5.5(c), begin implementation of this Cleanup Plan according to the proposed time schedule. If any delay or anticipated delay had been or will be caused by events beyond the control of Sanzari Enterprises, then Sanzari Enterprises shall notify NJDEP in writing within ten days of the delay, describing the delay in precise cause or causes and requesting an extension. Increases in the costs or expenses incurred in fulfilling the requirements contained in this letter shall not be a basis for an extension and such extension requests will not be granted. If Sanzari Enterprises fails to implement the Cleanup Plan in accordance with the proposed schedule, the NJDEP reserves the right to implement full enforcement measures and assess penalties pursuant to N.J.A.C. 7:26B-9.

NJDEP's approval, as conditioned above, is limited to the above referenced Cleanup Plan only. This Cleanup Plan approval shall not limit, restrict or prohibit NJDEP from directing on-site or off-site cleanup, if deemed necessary by NJDEP, under any other statute, rule or regulation. Sanzari Enterprises is hereby required to fully implement the referenced Cleanup Plan, as conditioned above, in accordance with the time schedule as set forth therein.

Sincerely,

Karl J. Delaney, Assistant Director
Industrial Site Evaluation Element

CSN/csa
c:  Tina O'Brien, 3EAC
    Paul Devlin, 3GWDC
    Brian Sogorka, 3EERA
    Alfred Sanzari, Property Owner

LITGO-RCRA0000779



## State of New Jersey
### Department of Environmental Protection

Christine Todd Whitman
Governor

Robert C. Shin... Jr
Commiss...ner

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

DEC 30 1994

Mr. David Zervas
Environmental Waste Management Associates
1 Wall Street
Research Park
Princeton N.J. 08540-1513

RE: F. Sharp Screw Machine Products, Janr Transport, and Morgan Chemical Co.
(F. Sharp)
Somerville Boro., Somerset County
ISRA Case #85647, 85648, 85649

Dear Mr. Zervas:

Please be advised that the New Jersey Department of Environmental Protection
(NJDEP) has completed a review of the Remedial Action Work Plan Addendum dated
August 15, 1994 and the information submitted December 8, 1994. Based upon
the review the proposal for no further action with regard to Area 5 can not be
approved at this time. Although the two additional upgradient samples
detected elevated concentrations of arsenic (As), cadmium (Cd), copper (Cu),
and lead (Pb) entering the drainage ditch, these concentrations detected do
not support the absence of on-site contributions to the current levels found
within the portion of the drainage ditch adjacent to and downgradient of the
site. NJDEP does concur that the arsenic contamination in the drainage ditch
originates solely from an off-site source, and therefore no further action for
arsenic in the drainage ditch is acceptable. The remainder of the metals are
either from a combination of off-site and on-site sources or are solely from
an on-site source. These metals are Cd, Pb, Cu, and Zn. In addition, the
off-site sampling previously conducted does not indicate that the petroleum
hydrocarbon (TPHC), polychlorinated biphenyls (PBCs) and base neutral organic
compounds (BN+15) are a results of off-site discharges.

In addition, the proposal for no further action for ground water is also
unacceptable. This action has been taken since NJDEP does not concur with F.
Sharp's contention that the source of ground water contamination is from
off-site based upon the lack of surrounding area usage and ground water flow
direction. Specifically, the NJDEP has evaluated the ground water elevation
data and interprets the ground water flow direction to be generally north west
and towards monitoring well 6 (MW-6). Ground water elevation data suggests
that due to the directional and anisotropic flow of ground water through
fractured media, flow patterns are highly localized and contaminants could
proceed in other directions before joining the regional flow pattern towards
the Raritan River on the south.

In addition, NJDEP disagrees with F. Sharp claim that monitor wells MW-4 and
MW-5 are completed at different depths than the other wells and that well
depth differences in a confined aquifer lead to potentiometric variations
between wells. F. Sharp states that this allows these wells to be left out of
the interpretation of ground water flow direction. NJDEP believes that
variations will not occur with depth since the sum of pressure head and
elevation head remains the same. Furthermore, if F. Sharp's assumption was
correct, this would not explain the approximately thirteen foot water level
difference between these two wells.

New Jersey is an Equal Opportunity Employer
Recycled Paper

LITGO-RCRA0000772

EXHIBIT

E

ALL-STATE LEGAL SUPPLY CO.

NJDEP believes that a ground water mound exists. The source of this mound is unknown. This mound is modifying the local ground water flow regime to allow contaminant travel to the "up-gradient" wells. This mound is persistent over time since the anomolous water levels are recorded for every sampling event completed over several years.

Therefore, F. Sharp shall implement the following actions and submit the required information within thirty calendar days of the receipt of this letter, along with a revised Remedial Action Schedule, pursuant to N.J.A.C. 7:26E-6.5, which includes all tasks associated with the remediation of the site.

I.  Soil Comments:

A.  Drainage ditch (Area 5):

1.  F. Sharp shall submit a proposal addressing the TPHC, PCBs, BN+15 and priority pollutant metal contamination, which includes remedial actions to prevent exposure to the concentrations remaining through either removal, reduction, and/or capping with institutional controls, due to adjacent residential properties. With regard to access for remediation, pursuant to P.L. 1993 c.139 any person who undertakes the remediation of suspected or actual contamination and who requires access to conduct such remediation on property that is not owned by that person, may enter upon the property to conduct the necessary remediation if there is an agreement with the property owner. If after good faith efforts the person undertaking the remediation and the property owner fail to reach an agreement regarding access, the person undertaking the remediation shall seek an order from the Superior Court directing the property owner to grant reasonable access to the property. Whether or not the area will become recontaminated due to active railroad lines does not negate F. Sharp's responsibility to address contamination associated with their operations.

2.  F. Sharp may propose to determine the ecological status of this ditch and surrounding area in order to assess whether the concentration of Zn is a concern.

B.  Loading Dock (Area 13):

1.  F. Sharp shall clarify why samples FS-33 and FS-34 were used as sampling identification points for both Area 13 and Area 5.

2.  F. Sharp shall submit a scaled site map in which depicts all samples collected to date, including those samples used for compliance averaging purposes. NJDEP can not approve compliance averaging at this time since it could not be deciphered from the information submitted.

3.  F. Sharp shall document the depth of the building foundation in relation to the contaminants remaining. This information is required since F. Sharp has not conducted delineation under the building and the potential for contaminant migration is unknown.

II. Ground Water Comments:

1.  F. Sharp shall submit a proposal to vertically and horizontally delineate the extent of the ground water contamination. The proposal shall include the formerly required soil gas survey.

LITGO-RCRA0000773

2.  F. Sharp shall properly abandoned monitoring well 3 (MW-3) pursuant to N.J.A.C. 7:9-9.  Please be advised as per NJDEP letter dated July 20, 1992, F. Sharp shall reinstall monitoring well 3.  In addition, due to the unstableness of the ground MW-3C shall also be properly abandoned and be reinstalled.

3.  F. Sharp shall contact the Bureau of Water Allocation for the as built diagrams of monitoring well 7 (MW-7) to determine the location of (MW-7)

### III.  Meeting Request:

F. Sharp has requested a meeting to discuss the requirements of the case. NJDEP does not believe a meeting is warranted at this time since the submittal does not meet minimum requirements of the N.J.A.C. 7:26E.  However, should F. Sharp still desire a meeting upon review of this letter, F. Sharp shall submit an agenda, meeting dates, times and attendees required.

### IV.  Cost Difference Analysis:

Any proposal to leave contaminant concentrations on-site exceeding the NJDEP's current residential cleanup criteria, shall be in accordance with P.L. 1993, c. 139, section 4i, including whether the cost difference between implementing the residential cleanup criteria and the nonresidential criteria exceeds ten percent of the cost to implement the non-residential cleanup criteria, and proof of acceptance of the non-residential cleanup criteria by the current property owner.

### V.  ISRA Fee Rule:

On February 22, 1994, the New Jersey Department of Environmental Protection (NJDEP) promulgated the ISRA Fee Rule amendments at 26 N.J.R. 1142, which were proposed on April 5, 1993 at 25 N.J.R. 1375.  Pursuant to the fee rule amendments, the NJDEP will bill an owner or operator according to the direct billing formula at N.J.A.C. 7:26B-1.10(f)2. At this time, the NJDEP intends to process bills on a semi-annual basis.  The NJDEP encourages responsible parties to use the "Technical Requirements for Site Remediation" (N.J.A.C. 7:26E) as well as any other current NJDEP guidance documents to assist in remediation activities and thereby minimize NJDEP review time.  The complexity of the environmental contamination at the site and the quality of the workplans and reports submitted to the NJDEP will dictate the oversight costs to the regulated community.

### VI.  Remediation Funding Source:

Pursuant to P.L. 1993 c.139, a remediation funding source is to be established in an amount equal or greater than the cost estimate of the implementation of the remediation and shall be in effect for a term not less than the actual time necessary to perform the remediation at the site.  P.L. 1993 c.139, section 25 allows for a change of the amount in the remediation funding source as the cost estimate changes.  Please provide the current estimated cost of the remaining remediation required at the site.  Any increases in the estimated cost estimate will require an increase in the amount in the Remediation Funding Source to an amount at least equal to the new estimate. Any requests to decrease the amount in the remediation funding source will be reviewed and approved by the NJDEP upon a finding that the current remediation cost estimate will be sufficient to fund all necessary remediation.

LITGO-RCRA0000774

**VII. Hazardous Discharge Site Remediation Fund:**

Recent legislation, Public Law 1993, chapter 139, establishes a fund to provide financial assistance for parties conducting site remediation. This Hazardous Discharge Site Remediation Fund is being administered by the New Jersey Economic Development Authority. Enclosed are procedures for requesting financial assistance and grants from this fund.

If you have any questions, please contact the Case Manager, Kenneth J. Kalora, at (609) 777-0899.

Sincerely,

Douglas Stuart, Chief
Bureau of Environmental Evaluation
and Cleanup Responsibility Assessment

enclosure

c: Sheldon Goldstein, Property Owner
George Blyskun, BGWPA
Chris Lacy, BEERA
Steve Krajewski, Health Department

LITGO-RCRA0000775

Aug. 7. 1997    5:41PM    BEACH EICHLER                          No. 1400    P. 2/2

# BEACH, EICHLER, ROSENBERG, SILVER, BERNSTEIN, HAMMER & GLADSTONE

## A PROFESSIONAL CORPORATION

### COUNSELLORS AT LAW

101 EISENHOWER PARKWAY

ROSELAND, N.J. 07068-1067

(973) 228-5700

FAX (973) 228-7052

26 EAST 64th STREET
NEW YORK, N. Y. 10021
(212) 935-0012

PLEASE RESPOND TO ROSELAND OFFICE

ALAN M. WERNSTEIN
WILLIAM L. BEACH
TODD C. BROWER
RICHARD J. DAVER
BURTON L. EICHLER*
JOHN D. FANBURG*
WILLIAM J. FRIEDMAN**
STUART M. GLADSTONE*
CHARLES M. GORMALLY**
JOSEPH M. GORRELL*

OF COUNSEL
LANCE A. POSNER
GEORGE Y. GODWICK
HENRY N. PORTNER*

ALAN R. HAMMER*
BRUCE KLEINMAN**
BRIAN R. LENKER
STUART L. PACHMAN
ALAN S. PRALGEVER*
DAVID J. RITTER
PAUL F. ROSENBERG
MICHAEL L. SCHNECK
HARRIS R. SILVER
ALEXANDER J. TAFRO

ALAN M. KUNGER
(1897-1921)
DOROTHY G. BLACK
(1970-1941)

ANN D. STEVENS
ALOIS V. HADJAN*
DAVID J. KLEIN**
STEVEN M. BOSACKI
DAVID S. BERNSTEIN
GEORGETTE J. SIEGEL
ROBERT C. MIGNELLA
HOWARD D. ROSING
JOSEPH M. DAVIS
SUSAN V. LEONARD
BRIAN HALVEY*
KATHLEEN M. ABBOTT
JOHN P. INGLESINO
DANIEL L. SCHMUTTER*
JILL BATCH ROSENBERG*
TRACEY S. BAUER*
VICKI SUE HULL**
JOHN P. WYCISKALA

MICHAEL G. ZICHERMAN*
CARL J. SORANNO
JAMES L. PETRACHE*
SIMONE HANDLER HUTCHINSON*
HELEN A. KAU*
MICHAEL P. MARTINAND
DAVID M. NEUENHAUS*
SHARON L. WEINER*
DEBRA K. BAMPTON
KATHERINE M. WENSTOCK
GARY M. ALBRECHT*
CHRISTOPHER A. CRD*
ROBERT P. COYNE
KRISTINE L. BOGARDUS
SUSAN A. ROMBACH*
JONATHAN E. LEVITT*
PAUL E. DELLORUSSO
M. CHRISTINA ALMANZOR*

ALSO ADMITTED TO PRACTICE IN
◆ NY   ◉ PA   ◊ DC   ⊃ OTHER DISTRICTS
^ CERTIFIED CIVIL TRIAL ATTORNEY*
✦ FL   *ON LEAVE

August 7, 1997

Dr. Bilal Mian
Kirby Associates
P.O. Box 6848
Bridgewater, N.J.  08807

RE:  Monitoring Well at 36 Kirby Ave.

Dear Dr. Mian:

As you are aware, this law firm represents Sheldon Goldstein, the owner of the property adjacent to your property at 36 Kirby Ave.  The purpose of this letter is to confirm my telephone conversation with Rebecca of your office on Thursday, August 7, 1997.  Rebecca called me back to advise us that you have consented to our request to install an additional monitoring well at the rear of your property, near the railroad tracks.  As set forth in Andrew Waring's July 23, 1997 letter to you, the well drilling will take approximately two days, and groundwater sampling will take several hours.  The well will be flush mounted and unobtrusive.  As you are aware, we have been working extensively with the NJDEP to conclude the investigation and remediation of the property.  We are hopeful that the NJDEP will grant us a sign-off in the near future, so that we may finally develop the site, which will benefit you, the municipality and our client.

If you have any questions or comments, please do not hesitate to contact me.  Thank you for your courtesies in this regard.

Very truly yours,

JOHN P. WYCISKALA

JPW:mt
    cc:  Andrew Waring
         Sheldon Goldstein

EXHIBIT
F
ALL-STATE LEGAL SUPPLY CO.

000068



**JM Sorge, Inc.**
Environmental Consultants

50 County Line Road, Somerville, NJ 08876-3467 • (908) 218-0066
Fax (908) 218-9185 • www.jmsorge.com

February 28, 2005

*Via First Class Mail*

Dr. Bilal A. Mian
Mian Realty Associates
310 East Main Street
Somerville, New Jersey 08867

Re:   Access to Install Monitoring Wells
      6 Kirby Avenue        →   *Block 1   Lot 4.02*
      Somerville, New Jersey

Dear Dr. Mian:

JM Sorge, Inc. is the environmental consultant for the adjacent property owner, Litgo NJ (Sheldon Goldstein). In response to a letter recently issued by the New Jersey Department of Environmental Protection (NJDEP), Litgo NJ has proposed to perform additional investigation work in the rear and central portions of the property at 6 Kirby Avenue. This corresponds to areas north and east of existing monitoring well MW-11. We have planned to perform the work from March 7 to March 11, 2005 .

The work will consist of the installation of four (4) vapor monitoring wells and three (3) groundwater monitoring wells. Each well will be approximately 4 inches in diameter, and will be installed through the asphalt to a depth where groundwater or bedrock are encountered. The installation of the wells will require the use of a air rotary drill rig and associated equipment at each of the proposed locations, as a result some of the parking area may have to be temporarily cordoned off. Following completion of the drilling, the well will be finished with a flush mount well cover, similar to the wells that have previously been installed in the parking lot. Drill cuttings will be drummed and stored on an on-site location prior to proper characterization and disposal. Following characterization the drummed materials will be promptly removed. It is anticipated that this event will be completed in approximately 3 or 4 days. The activities will be conducted such that any inconvenience for building occupants is minimized. If we don't hear from you by the end of the end of next week, Friday March 4, we will assume that the well installation can proceed as scheduled.

We would like to assure you that we are working diligently with the NJDEP to resolve the environmental matters at the adjacent property. Should you have any additional questions regarding this project please do not hesitate to call me at 908-218-0066 ext. 43. Thank you for your cooperation in this matter.

Yours truly,

Matthew Hammerstone
Environmental Scientist

cc.   Dave Thompson, JM Sorge, Inc.

**EXHIBIT**
**G**
ALL-STATE LEGAL SUPPLY CO.

000069