IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., <u>et al.</u>, | ) | Case No. 01-01139 (JFK) |
|  | ) | (Jointly Administered) |
| Debtors. | ) | Re: Docket No. 17670 |
|  | ) | 6/2/08 Agenda Item 5 |

**UNITED STATES' JOINDER IN DEBTORS' MOTION TO APPROVE SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

The United States submits this Joinder in Debtors' Motion To Approve Settlement Agreement and Memorandum of Law In Support Thereof. The Settlement Agreement between the United States on behalf of U.S. EPA ("EPA"), and Debtor W.R. Grace & Co. and certain of its affiliates ("Debtors" or "Grace"), <u>see</u> Docket No. 18783, resolves certain liabilities under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675. The proposed Settlement Agreement would resolve EPA's CERCLA claims for all past, present, and future response costs at twenty-nine (29) hazardous waste sites identified as "Liquidated Sites" by providing the United States with an allowed general unsecured claim in the total amount of $34,065,813.31. The proposed Settlement Agreement also: (1) would resolve EPA's CERCLA claims for all response costs incurred pre-petition at three Debtor-Owned hazardous waste sites by providing the United States with an allowed general unsecured claim in the total amount of $881,814.17; (2) provide the United States with an administrative expense claim in the amount of $2,294,279.86 for CERCLA response costs incurred at four Debtor-Owned Sites; (3) provide the United States an allowed general unsecured claim in the amount of $71,000 for penalties assessed against Grace in connection with an access

dispute involving the Libby Mine and $622,860 for costs incurred by the Agency for Toxic Substances and Disease Registry in its nationwide investigation of asbestos contamination at facilities that processed vermiculite originating from the Libby Mine that were not attributable to a specific site.  The proposed Settlement Agreement also addresses those sites where there is insufficient information regarding site costs or the Debtor's liability.  At these "Additional Sites" the parties reserve their respective rights and agree that the sites shall be liquidated in the ordinary course avoiding the need for estimation proceedings.  The parties further agree that claims for such sites will be paid on the same basis as other general unsecured claims under the confirmed plan of reorganization.  With respect to Debtor-Owned Sites (i.e, sites owned by Debtors as of the petition date), the Debtors acknowledge that they remain responsible for compliance with applicable environmental laws and regulations as well as all outstanding environmental consent decrees and work orders.

The proposed Settlement Agreement requires the Court's approval under two different sets of laws.  First, pursuant to Federal Bankruptcy Rule of Procedure 9019, the Court must approve the Settlement Agreement as in the best interest of the bankruptcy estate and as being consistent with applicable bankruptcy law.  On December 19, 2007, Debtors filed a motion for approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019 (Docket No. 17670).  On May 23, 2008, Debtors filed a certificate of counsel regarding the Settlement Agreement (Docket No. 18763).

Second, the Court must approve the fairness of the Settlement Agreement and its consistency with environmental law.  This Joinder in the Debtors' Motion for approval of the Settlement Agreement thus seeks approval of the Settlement Agreement under environmental

dispute involving the Libby Mine and $622,860 for costs incurred by the Agency for Toxic Substances and Disease Registry in its nationwide investigation of asbestos contamination at facilities that processed vermiculite originating from the Libby Mine that were not attributable to a specific site.  The proposed Settlement Agreement also addresses those sites where there is insufficient information regarding site costs or the Debtor's liability.  At these "Additional Sites" the parties reserve their respective rights and agree that the sites shall be liquidated in the ordinary course avoiding the need for estimation proceedings.  The parties further agree that claims for such sites will be paid on the same basis as other general unsecured claims under the confirmed plan of reorganization.  With respect to Debtor-Owned Sites (i.e, sites owned by Debtors as of the petition date), the Debtors acknowledge that they remain responsible for compliance with applicable environmental laws and regulations as well as all outstanding environmental consent decrees and work orders.

The proposed Settlement Agreement requires the Court's approval under two different sets of laws.  First, pursuant to Federal Bankruptcy Rule of Procedure 9019, the Court must approve the Settlement Agreement as in the best interest of the bankruptcy estate and as being consistent with applicable bankruptcy law.  On December 19, 2007, Debtors filed a motion for approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019 (Docket No. 17670).  On May 23, 2008, Debtors filed a certificate of counsel regarding the Settlement Agreement (Docket No. 18763).

Second, the Court must approve the fairness of the Settlement Agreement and its consistency with environmental law.  This Joinder in the Debtors' Motion for approval of the Settlement Agreement thus seeks approval of the Settlement Agreement under environmental

law.  Approvals of settlements under the environmental laws include a procedure for obtaining public comment.  Cf. 28 C.F.R. § 50.7.

On January 11, 2008, the United States published notice of the proposed Settlement Agreement in the Federal Register at 73 Fed. Reg. 2,067 (Jan. 11, 2008).  The United States received three public comments during the thirty day public comment period.  After careful consideration of the public comments, the United States has concluded that the proposed Settlement Agreement is a fair, reasonable and lawful compromise, and requests that it be approved.

**I.      PROPOSED SETTLEMENT AGREEMENT**

Under the Settlement Agreement, the Debtors have agreed to an allowed general unsecured claim in the amount of $34,065,813.31 for past, present and future CERCLA response costs at twenty-nine hazardous waste sites identified as "Liquidated Sites," an allowed general unsecured claim in the amount of $881,814.17 for past CERCLA response costs at three hazardous waste sites identified as "Debtor-Owned Sites," and an administrative expense claim in the amount of $2,294,279.86 for CERCLA response costs incurred post-petition at four Debtor-Owned Sites.  The amounts of the allowed claims for each site were arrived at on a site-by-site basis taking into account (1) the estimated total past and future response costs and natural resource damages (if any) for a site; and (2) the Debtors' estimated percentage allocation or fair share of liability for a site.

Under the Settlement Agreement, only the amount or value that EPA receives from Grace pursuant to its Plan of Reorganization, and not the total amount of the allowed claim, will be credited by EPA to its account for a particular site, which credit will reduce the liability of non-

settling potentially responsible parties for the particular site by the amount of the credit. Settlement Agreement ¶ 5(A).[1] EPA's claim against the other potentially responsible parties ("PRPs") that are co-liable with Debtors for a site will thus be reduced by the amount or value received by EPA under the Settlement Agreement. Settlement Agreement ¶ 5(A).

Under Paragraph 18 of the Settlement Agreement, EPA covenants not to bring any civil action under sections 106 or 107 of CERCLA or Section 7003 of RCRA[2] with respect to each of the Liquidated Sites (except as otherwise provided in the Settlement Agreement). Paragraph 34 provides that with respect to the Liquidated Sites, the Debtors are entitled to such protection from actions or claims by other responsible parties to the maximum extent provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2).

## II.   DESCRIPTION OF PUBLIC COMMENTS RECEIVED

Three public comments were received on the Settlement Agreement. First, the City of Cambridge (the "City") submitted a comment (and a contemporaneously filed objection, see Docket No. 17804) asserting that it has claims against Grace for environmental contamination at a property adjacent to the "Cambridge Plant," a Debtor-Owned Site regarding which the Settlement Agreement provides EPA with an allowed unsecured claim of $115,697 and an administrative expense claim of $13,253. The City asserts that it has an environmental claim at the adjacent "Russell Field Property" and that the Settlement Agreement is "unclear" as to its impact on the City's claim. The City withdrew its objection when Grace confirmed that the

---

[1] With respect to any non-cash distributions, the actual value, i.e., the net proceeds received through the sale thereof, shall be the amount credited.

[2] The Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-6992k.

"Cambridge Plant" site referenced in the Settlement Agreement was not intended to include the "Russell Field Property." The proposed Order regarding this Settlement Agreement will include clarifying language to this effect. Second, Big Tex San Antonio, L.P., ("Big Tex") submitted a comment asserting that the Settlement Agreement impacted its rights against Grace at the Big Tex Grain Company Superfund Site in San Antonio, Texas ("Big Tex Site" or "Site"). The Big Tex Site is not explicitly addressed in the Settlement Agreement, and thus would be addressed under the agreement's "Additional Site" provisions. Big Tex has also withdrawn its comment. Third, B. Sachau submitted a comment asserting that the amounts recovered in the settlement were too small. B. Sachau's comment (which is attached as Exhibit 1) is addressed in more detail below.

## III.    STANDARD OF REVIEW

The well settled standard applied to review of the United States' proposed settlements under environmental laws is whether a settlement is fair, reasonable and consistent with the environmental laws. In re Tutu Water Wells CERCLA Litig., 326 F.3d 201, 207 (3d Cir. 2003); United States v. Southeastern Pa. Transp. Auth., 235 F.3d 817, 823 (3d Cir. 2000); United States v. Akzo Coatings of Am., Inc., 949 F.2d 1409, 1424, 1426 (6th Cir. 1991); United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990); United States v. Hercules, Inc., 961 F.2d 796, 800 (8th Cir. 1992). Review of such settlements is committed to the discretion of the reviewing court, see United States v. Hooker Chem. & Plastics Corp., 776 F.2d 410, 411 (2d Cir. 1985), which is to exercise this discretion in a limited and deferential manner, Akzo Coatings, 949 F.2d at 1424; Cannons Eng'g, 899 F.2d at 84; In re Cuyahoga Equip. Corp., 980 F.2d 110, 118 (2d Cir. 1992). A reviewing court "must generally be at its most deferential" in reviewing

settlements of agencies charged with primary responsibility for enforcing the environmental laws because the "federal courts have neither the time nor the expertise [to make] scientific decisions regarding toxic substance cleanup." Akzo Coatings, 949 F.2d at 1424 (quoting Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc., 462 U.S. 87 (1983)).

The judicial deference to settlements reached by the parties to litigation is "particularly strong" when that settlement "has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field." Akzo Coatings, 949 F.2d at 1436; In re Tutu Water Wells CERCLA Litig., 326 F.3d 201, 207 (3d Cir. 2003) (requiring "deference to the administrative agencies' input during consent decree negotiations"); United States v. Charles George Trucking, Inc., 34 F.3d 1081, 1085 (1st Cir. 1994). The balance of competing interests affected by a settlement with the federal government "must be left, in the first instance, to the discretion of the Attorney General," Kelley v. Thomas Solvent Co., 717 F. Supp. 507, 515 (W.D. Mich. 1989); United States v. Atlas Minerals & Chems., Inc., 851 F. Supp. 639, 648 (E.D. Pa. 1994), since the Attorney General retains "considerable discretion in controlling government litigation and in determining what is in the public interest." United States v. Associated Milk Producers, Inc., 534 F.2d 113, 117 (8th Cir.). "Indeed, where a settlement is the product of informed, arms-length bargaining by the EPA, an agency with the technical expertise and the statutory mandate to enforce the nation's environmental protection laws, in conjunction with the Department of Justice, one court has indicated that a presumption of validity attaches to that agreement." United States v. Rohm & Haas Co., 721 F. Supp. 666, 681 (D.N.J. 1989) (citing City of New York v. Exxon Corp., 697 F.

Supp. 677, 692 (S.D.N.Y. 1988)); United States v. Kramer, 19 F. Supp. 2d 273, 285 (D.N.J. 1998).

The terms of an environmental settlement are substantively fair if they are "based on comparative fault and if liability is apportioned according to rational estimates of the harm each party has caused." In re Tutu Water Wells CERCLA Litig., 326 F.3d 201, 207 (3d Cir. 2003); United States v. Southeastern Pa. Transp. Auth., 235 F.3d 817, 823 (3d Cir. 2000); Cannons Eng'g, 899 F.2d at 87 (settlement should be "roughly correlated with some acceptable measure of comparative fault, apportioning liability . . . according to rational (if necessarily imprecise) estimates" of fair shares of liability for a facility; "[w]hatever formula or scheme EPA advances for measuring comparative fault and allocating liability should be upheld so long as the agency supplies a plausible explanation for it, welding some reasonable linkage between the factors it includes in its formula or scheme and the proportionate shares of the settling PRPs"). Accord In re Energy Coop., Inc., 173 B.R. 363, 367 (N.D. Ill. 1994); In re Eagle-Picher Indus., Inc., 197 B.R. 260 (Bankr. S.D. Ohio 1996).

## IV. STATUTORY FRAMEWORK

Congress enacted CERCLA in response to widespread concern over the severe environmental and public health effects resulting from improper disposal of hazardous wastes and other hazardous substances. See generally United States v. Alcan Aluminum Corp., 964 F.2d 252, 257-58 (3d Cir. 1992); Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 675 (3d Cir. 2003); In re Tutu Water Wells CERCLA Litig., 326 F.3d at 206. CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (Oct. 17, 1986), grants broad authority to the United States in connection with the cleanup

of waste sites. CERCLA provides EPA with several options when EPA determines that response action is needed at a particular hazardous waste site. For example, EPA may undertake the response action on its own, utilizing funds from the Superfund, and then sue the responsible parties for reimbursement of the Superfund. 42 U.S.C. §§ 9604, 9607. EPA may also issue administrative orders under CERCLA Section 106 directing responsible parties to implement response actions. 42 U.S.C. § 9606. Responsible parties include the owners and operators of hazardous waste facilities as well as those who arranged for the disposal or treatment of or transported the hazardous wastes. 42 U.S.C. § 9607. Liability is strict and joint and several unless a responsible party can demonstrate divisibility of harm. United States v. Alcan Aluminum Corp., 964 F.2d 252, 268-69 (3d Cir. 1992); New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1121 (3d Cir. 1997). Liable parties may bring actions for contribution against other non-settling responsible parties. 42 U.S.C. § 9613(f)(1). See Morton Int'l Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 675 (3d Cir. 2003); New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1122 (3d Cir. 1997).

Having created the liability system and enforcement tools to allow EPA to pursue responsible parties for Superfund cleanups, Congress expressed a strong preference that the United States settle with responsible parties in order to avoid spending resources on litigation rather than on cleanup. 42 U.S.C. § 9622(a).[3] CERCLA encourages settlements, inter alia, by

---

[3] See also In re Tutu Water Wells CERCLA Litig., 326 F.3d at 207-09; United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1184 (3d Cir. 1994); United States v. Akzo Coatings of Am., Inc., 949 F.2d 1409, 1436 (6th Cir. 1991); In re Cuyahoga Equipment Corp., 980 F.2d 110 (2d Cir. 1992) (citing City of New York v. Exxon Corp., 697 F. Supp. 677, 693 (S.D.N.Y. 1988)); Cannons Eng'g, 899 F.2d at 92; United States v. DiBiase, 45 F.3d 541, 545-46 (1st Cir. 1995); H.R. Rep. No. 253, pt. 1, 99th Cong., 1st Sess. 80 (1985), reprinted in 1986 U.S.C.A.N. 2862.

providing protection from contribution claims for matters addressed to parties who settle with the United States. 42 U.S.C. § 9613(f)(2). This provision provides settling parties with a measure of finality in return for their willingness to settle. See Cannons Eng'g, 899 F.2d at 92; O'Neil v. Picillo, 883 F.2d 176, 178-79 (1st Cir. 1989); United Techs. Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 103 (1st Cir. 1994); H.R. Rep. No. 99-253, pt. 1, at 80 (1985), reprinted in 1986 U.S.C.A.N. 2835, 2862.

## V.     THE PROPOSED SETTLEMENT AGREEMENT IS FAIR, REASONABLE AND LAWFUL

The proposed Settlement Agreement is a fair resolution of the United States' claims. From a procedural standpoint, it is the result of a lengthy period of arm's length negotiations by experienced counsel. Numerous drafts were exchanged and all of the provisions were seriously negotiated. From a substantive standpoint it recovers EPA's best estimate of the Debtors' fair share of liability for contamination at the various liquidated sites. As a result, the Settlement Agreement is a fair compromise of the Debtors' liabilities and clearly is "roughly correlated" with a "rational, plausible" measure of acceptable fault. See In re Tutu Water Wells CERCLA Litig., 326 F.3d at 207; United States v. Southeastern Pa. Transp. Auth., 235 F.3d 817, 823 (3d Cir. 2000).[4]

The Settlement Agreement is reasonable because it obtains an appropriate recovery and avoids the cost and risks of litigation with the Debtors that would otherwise deplete the estate's limited assets. See United States v. BP Exploration & Oil Co., 167 F. Supp. 2d 1045, 1053

---

[4]     Although in litigation the United States could assert joint and several liability against Debtors, see In re National Gypsum Co., 139 B.R. 397, 466-67 (N.D. Tex. 1992); Penn Central v. United States, 862 F. Supp. 437 (Sp. Ct. R.R.R.A. 1994), in the context of settlements the United States often looks to the debtor's fair share of contribution to contamination at a site.

(N.D. Ind. 2001); <u>United States v. Kramer</u>, 19 F. Supp. 2d 273, 286-87 (D.N.J. 1998).  The allowed general unsecured claim (totaling approximately $35 million) will recoup a substantial portion of the funds EPA has expended at the Liquidated Sites.  As Superfund recoveries are spent cleaning up other contaminated sites, the settlement should provide a substantial environmental benefit.  <u>See</u> <u>also</u> <u>In re Eagle-Picher Indus., Inc.</u>, 197 B.R. 260, 272 (Bankr. S.D. Ohio 1996) (noting that bankruptcy settlements are beneficial to all concerned because they make recoveries and thereby reduce liability in a manner that might not otherwise be achieved).

## VI.　THE COMMENT FROM B. SACHAU DOES NOT PROVIDE A COMPELLING REASON FOR DISAPPROVAL OF THE SETTLEMENT AGREEMENT

Ms. Sachau submitted a comment contending that the Settlement Agreement does not recover a sufficient amount of cleanup costs at the sites.  Specifically, Ms. Sachau contends that:

> the taxpayers are getting screwed by this little amount in settlement. go after the shareholders and the executives, who did the dirty work in pollution. it is time that taxpayers are protected from these rapacious people who will kill us all for profits in their wallets.

The United States respectfully disagrees with this comment.  The purpose of this settlement (with respect to the Liquidated Sites) is to recover the funds EPA spent to clean up Liquidated Sites pursuant to CERCLA.  This settlement accomplishes that goal.  With respect to the vast majority of the Liquidated Sites, Grace is providing EPA with an allowed claim that reflects the estimated cost of cleaning up the sites (or, for sites at which Grace is one of several potentially responsible parties, the allowed claim amount reflects Grace's estimated share of cleanup costs).  The United States only compromised its claims at a handful of sites, due primarily to litigation risk associated with proving Grace liable for contamination at those sites.  As a result, the United

States believes that the allowed claim amounts are appropriate, and that Ms. Sachau's comments do not provide a basis for withholding approval of the Settlement Agreement.

## VII.  CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court to approve the Settlement Agreement related to certain environmental matters, which was submitted to the Court by Debtors as Exhibit A to the Certificate of Counsel Regarding Settlement Agreement, filed May 23, 2008 (Docket 18783).

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources
 Division


 /s/ James D. Freeman
JAMES D. FREEMAN
Trial Attorney
Environmental Enforcement Section
United States Department of Justice
1961 Stout Street, Eighth Floor
Denver, CO 80294-1961
(303) 844-1489