## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                          Chapter 11

**W.R. Grace & Co., et al.**                    Case No. 01-01139 (JKF)

        Debtors.                        Jointly Administered

**TWENTY-EIGHTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM JANUARY 1, 2008 THROUGH MARCH 31, 2008**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **January 1, 2008 – March 31, 2008** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$672,622.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$20,422.22** |
| Fees and Expenses of the Asbestos Issues Expert: | **$229,195.95** (for the period January 1, 2008 – March 31, 2008) |

This is an: ☒ interim ☐ final application

This is the twenty-eighth quarterly application filed.

**Attachment A**

**Monthly Interim Fee Applications**

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01- 4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01- 7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02- 04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002<br>D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock)<br>$43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002<br>D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock)<br>$114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002<br>D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock)<br>$11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002<br>D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock)<br>$5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002<br>D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock)<br>$771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002<br>D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock)<br>$1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003<br>D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003<br>D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003<br>D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003<br>D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock)<br>$1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003<br>D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003<br>D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock)<br>$2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003<br>D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock)<br>$3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003<br>D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock)<br>$61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003<br>D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock)<br>$14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

NY 71458300v1

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003<br>D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock)<br>$12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003<br>D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock)<br>$10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003<br>D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock)<br>$42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004<br>D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock)<br>$30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004<br>D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock)<br>$27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004<br>D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock)<br>$47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004<br>D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock)<br>$35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004<br>D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004<br>D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock)<br>$1,515.00 (Navigant February)<br>$49,667.00 (Navigant March)<br>$80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004<br>D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock)<br>$78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |
| August 2, 2004<br>D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock)<br>$62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |
| September 9, 2004<br>D.I. 6341 | 7/1/04 – 7/31/04 | $72,394.00 | $3,461.84 (Stroock)<br>$40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |

3

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 23, 2004<br>D.I. 6444 | 8/1/04 –<br>8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004<br>D.I 6625 | 9/1/04 –<br>9/30/04 | $83,903.50 | $1,535.61 (Stroock)<br>$27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004<br>D.I. 7086 | 10/1/04 –<br>10/31/04 | $200,155.50 | $1,368.18 (Stroock)<br>$ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005<br>D.I. 7481 | 11/1/04 –<br>11/30/04 | $218,608.50 | $14,019.09 (Stroock)<br>$25,102.80 (Navigant October)<br>$27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005<br>D.I. 7667 | 12/1/04 –<br>12/31/04 | $235,503.70 | $10,442.92 (Stroock)<br>$62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005<br>D.I. 8026 | 1/1/05 –<br>1/31/05 | $187,168.00 | $4,411.55 (Stroock)<br>$15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005<br>D.I. 8155 | 2/1/05 –<br>2/28/05 | $108,180.25 | $8,102.85 (Stroock)<br>$18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005<br>D.I. 8305 | 3/1/05~ –<br>3/31/05 | $56,941.25 | $287.23 (Stroock)<br>$6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005<br>D.I. 8562 | 4/1/05-<br>4/30/05 | $127,695.00 | $3,531.45 (Stroock)<br>$20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005<br>D.I. 8704 | 5/1/05-<br>5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |
| August 3, 2005<br>D.I. 9135 | 6/1/05-<br>6/30/05 | $114,903.75 | $4,871.74 (Stroock)<br>$34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005<br>D.I. 9356 | 7/1/05 –<br>7/31/05 | $117,780.75 | $2,088.44 (Stroock)<br>$2,211.00 (Navigant) | $94,224.60 | $4,299.44 |

4

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| October 4, 2005 D.I. 9565 | 8/1/05 – 8/31/05 | $106,796.25 | $5,046.99 (Stroock) $18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005 D.I. 10951 | 9/1/05 – 9/30/05 | $67,697.50 | $1,399.68 (Stroock) $11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005 D.I. 11202 | 10/1/05 – 10/31/05 | $98,216.75 | $1,611.30 (Stroock) $11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006 D.I. 11507 | 11/1/05 – 11/30/05 | $104,348.00 | $2,847.45 (Stroock) $71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006 D.I. 11655 | 12/1/05 – 12/31/05 | $96,855.00 | $1,379.53 (Stroock) $20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006 D.I. 11921 | 1/1/06 – 1/31/06 | $73.383.00 | $1,810.85 (Stroock) $14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006 D.I. 12134 | 2/1/06 – 2/28/06 | $105,083.75 | $1,434.62 (Stroock) $25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006 D.I. 12354 | 3/1/06 – 3/31/06 | $145,189.50 | $2,512.81 (Stroock) $25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006    DI. 12558 | 4/1/2006 – 4/30/2006 | $116,817.00 | $2,141.42 (Stroock) $7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006 D.I. 12748 | 5/1/2006 – 5/31/2006 | $121,304.50 | $1,838.71 (Stroock) $17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006 D.I. 12899 | 6/1/2006 – 6/30/2006 | $94,856.50 | $1,869.66 (Stroock) $38,548.75 (Navigant) | $75,885.20 | $40,418.41 |
| August 30, 2006 D.I. 13117 | 7/1/2006 – 7/31/2006 | $97,397.25 | $496.76 (Stroock) $30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006 D.I. 13336 | 8/1/2006 – 8/31/2006 | $131,856.25 | $98.34 (Stroock) $98,317.50 (Navigant) | $105,485.00 | $98,415.84 |
| November 2, 2006 D.I. 13559 | 9/1/2006 – 9/30/2006 | $150,960.00 | $4,147.01 (Stroock) $91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006 D.I. 13838 | 10/1/06 – 10/31/06 | $196,223.50 | $915.14 (Stroock) $147,374.20 (Navigant) | $156,978.89 | $148,289.34 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| January 12, 2007<br>D.I. 14292 | 11/1/06 –<br>11/30/06 | $188,638.00 | $3,370.16 (Stroock)<br>$133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007<br>D.I. 14415 | 12/1/06 –<br>12/31/06 | $99,832.00 | $5,752.89 (Stroock)<br>$55,245.22 (Navigant) | $79,865.60 | $60,998.11 |
| March 8, 2007<br>D.I. 14810 | 1/1/07 –<br>1/31/07 | $77,582.00 | $962.06 (Stroock)<br>$90,474.74 (Navigant) | $62,065.60 | $91,436.80 |
| April 10, 2007<br>D.I. 15132 | 2/1/07 –<br>2/28/07 | $119,140.50 | $3,092.88 (Stroock)<br>$77,301.25 (Navigant) | $95,312.40 | $80,394.13 |
| May 1, 2007<br>D.I. 15457 | 3/1/07 –<br>3/31/07 | $135,228.00 | $6,635.25 (Stroock)<br>$104,674.53 (Navigant) | $108,182.40 | $111,309.78 |
| June 22, 2007<br>D.I. 16136 | 4/1/07 –<br>4/30/07 | $177,646.00 | $815.81 (Stroock)<br>$173,437.45 (Navigant) | $142,116.80 | $174,253.26 |
| July 17, 2007<br>D.I. 16309 | 5/1/07 –<br>5/31/07 | $205,937.25 | $6,405.01 (Stroock)<br>$162,431.03 (Navigant) | $164,749.80 | $168,836.04 |
| August 10, 2007<br>D.I. 16528 | 6/1/07 –<br>6/30/07 | $225,650.50 | $5,929.97 (Stroock)<br>$200,294.81 (Navigant) | $180,520.40 | $206,224.78 |
| September 14, 2007<br>D.I. 16822 | 7/1/07 –<br>7/31/07 | $157,268.50 | $4,021.65 (Stroock)<br>$208,116.54 (Navigant) | $125,814.80 | $212,138.19 |
| October 1, 2007<br>D.I. 16959 | 8/1/07 –<br>8/31/07 | $145,866.50 | $3,354.61 (Stroock)<br>$210,152.54 (Navigant) | $116,693.20 | $213,507.15 |
| November 16, 2007<br>D.I. 17394 | 9/1/07 –<br>9/30/07 | $206,908.50 | $3,056.89 (Stroock) | $165,526.80 | $3,056.89 |
| December 5, 2007<br>D.I. 17548 | 10/1/07 –<br>10/31/07 | $288,976.50 | $22,324.58 (Stroock)<br>$325,509.63 (Navigant) | $231,181.20 | $303,185.05 |
| January 11, 2008<br>D.I. 17803 | 11/1/07 –<br>11/30/07 | $249,372.50 | $32,780.40 (Stroock)<br>$162,394.93 (Navigant) | $199,498.00 | $195,175.33 |
| February 1, 2008<br>D.I. 17957 | 12/1/07 –<br>12/31/07 | $116,522.50 | $57,717.92 (Stroock)<br>$47,444.43 (Navigant) | $93,218.00 | $105,162.35 |
| March 4, 2008<br>D.I. 18202 | 1/1/08 –<br>1/31/08 | $201,472.50 | $3,282.80 (Stroock)<br>$86,070.26 (Navigant) | $161,178.00 | $89,353.06 |

NY 71458300v1

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| April 5, 2008<br>D.I. 18450 | 2/1/08 –<br>2/29/08 | $195,491.00 | $5,922.25 (Stroock)<br>$73,924.16 (Navigant) | $156,392.80 | $79,846.41 |
| April 29, 2008<br>D.I. 18639 | 3/1/08 –<br>3/31/08 | $275,659.00 | $11,217.17 (Stroock)<br>$69,201.53 (Navigant) | $220,527.20 | $80,418.70 |

NY 71458300v1

**Quarterly Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43* | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

\*   These amounts relate to the Committee's Asbestos Issues Expert.

[1]   Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]   Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003 D.I. 3815 (Eighth) | 1/1/03 – 3/31/03 | $224,358.50 | $9,424.04 $1,077.80* | $224,615.50[3] | $9,424.04 (Stroock)[3] $1,077.80 (Chambers)[3] |
| August 29, 2003 D.I. 4357 (Ninth) | 4/1/03 – 6/30/03 | $215,903.50 | $2,726.28 $67,628.50* | $215,903.50[4] | $2,726.28 (Stroock)[4] $67,628.50 (Chambers)[4] |
| December 5, 2003 D.I. 4778 (Tenth) | 7/1/03 – 9/30/03 | $218,222.00 | $4,339.46 $36,865.19* | $218,222.00[5] | $4,339.46 (Stroock)[5] $36,865.19 (Chambers)[5] |
| March 2, 2004 D.I. 5212 (Eleventh) | 10/1/03 – 12/31/03 | $215,718.50 | $5,950.82 $100,349.50* | $215,718.50[6] | $5,922.67 (Stroock)[6] $100,349.50 (Chambers)[6] |
| May 18, 2004 D.I. 5597 (Twelfth) | 1/1/04 – 3/31/04 | $254,857.00 | $9,965.36 $83,147.07* | $254,857.00[7] | $9,965.36 (Stroock)[7] $83,147.07 (Navigant)[7] |
| August 26, 2004 D.I. 6269 (Thirteenth) | 4/1/04 – 6/30/04 | $353,629.50 | $7,760.42 $272,474.16* | $353,629.50[8] | $7,760.42 (Stroock)[8] $272,474.16 (Navigant)[8] |

---

[3]    Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[4]    Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]    Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]    Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7]    Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[8]    Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | $226,702.50[9] | $6,705.08 (Stroock)[9] $67,569.50 (Navigant)[9] |
| February 22, 2005 D.I. 7851 (Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19 $140,422.11* | $648,355.70[10] | $25,830.19 (Stroock)[10] $140,422.11 (Navigant)[10] |
| May 16, 2005 D.I. 8468 (Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23 $40,104.23* | $349,644.00 | $12,746.23 (Stroock)[11] $40,104.23 (Navigant) |
| August 19, 2005 D.I. 9225 (Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40 $54,204.34* | $340,096.25[12] | $9,261.40 (Stroock) $54,204.34 (Navigant) |
| November 18, 2005 D.I. 11118 (Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71 $31,958.50* | $291,843.50[13] | $8,534.71 (Stroock) $31,958.50 (Navigant) |
| February 15, 2006 D.I. 11798 (Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28 $103,498.49* | $299,419.75[14] | $5,838.69 (Stroock $103,498.49 (Navigant) |

[9]   Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[10]   Court Order dated June 29, 2005 approved fees in the amount of  $648,335.70 and expenses in the amount of $166,252.30.

[11]   Court  Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[12]   Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[13]   Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[14]   Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

NY 71458300v1

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 26, 2006 D.I. 12533 (Twentieth) | 1/1/2006 – 3/31/2006 | $323,566.25 | $5,758.28 $65,934.98* | $323,451.25[15] | $5,758.28 (Stroock) $64,810.58 (Navigant) |
| August 17, 2006 D.I. 13006 (Twenty-First) | 4/1/2006 – 6/30/2006 | $332,978.00 | $5,849.79 $63,467.50* | $332,978.00[16] | $5,849.70 (Stroock) $63,467.50 (Navigant) |
| November 29, 2006 D.I. 13835 (Twenty-Second) | 7/1/2006 – 9/30/2006 | $380,213.50 | $4,742.11 $219,776.61* | $380,213.50[17] | $4,742.11 (Stroock) $219,776.61 (Navigant) |
| March 1, 2007 D.I. 14717 (Twenty-Third) | 10/1/2007 – 12/31/07 | $484,693.50 | $10,038.19 $336,058.12* | $484,693.50[18] | $10,038.19 (Stroock) $336,058.12 (Navigant) |
| June 4, 2007 D.I. 15949 (Twenty-Fourth) | 1/1/07 - 3/31/07 | $331,950.50 | $10,690.15 $272,450.52* | $331,950.50[19] | $10,690.15 (Stroock) $272,450.52 (Navigant) |
| August 30, 2007 D.I. 16710 (Twenty-Fifth) | 4/1/2007 - 6/30/2007 | $609,233.75 | $13,150.79 $536,163.29* | $609,233.75[20] | $13,150.79 (Stroock) $536,163.29 (Navigant) |

---

[15]   Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the amount of $71,130.16.

[16]   Court Order dated December 18, 2006 approved fees in the amount of $332,978.00 and expenses in the amount of $69,317.29.

[17]   Court Order dated May 3, 2007 approved fees in the amount of $380,213.50 and expenses in the amount of $224,518.72.

[18]   Court Order dated June 20, 2007 approved fees in the amount of $484,693.50 and expenses in the amount of $346,096.31.

[19]   Court Order dated September 24, 2007 approved fees in the amount of $331,950.50 and expenses in the amount of $283,140.67.

[20]   Court order dated December 13, 2007 approved fees in the amount of $609,233.75 and expenses in the amount of $549,314.08.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| December 12, 2007 D.I. 17625 (Twenty-Sixth) | 7/1/2007 – 9/30/2007 | $510,043.50 | $10,433.15 $418.269.08* | $508,758.50[21] | $10,433.15 (Stroock) $418,269.08 (Navigant) |
| March 5, 2008 D.I. 18222 (Twenty-Seventh) | 10/1/07 – 12/31/07 | $654,871.50 | $112,822.90 $535,348.99* | | |

---

[21]  Court order dated March 12, 2008 approved fees in the amount of $508,758.50 and expenses in the amount of $428,702.23.

**WR GRACE & CO**
**ATTACHMENT B**
**JANUARY 1, 2008 - MARCH 31, 2008**

|  | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** |  |  |  |  |
| DiBernardo, Ian G. | 10.7 | $ 720 | $    7,704.00 | 4 |
| Greenberg, Mayer | 1.6 | 825 | 1,320.00 | 10 |
| Kruger, Lewis | 62.9 | 945 | 59,440.50 | 39 |
| Pasquale, Kenneth | 92.0 | 775 | 71,300.00 | 9 |
| Speiser, Mark A. | 17.4 | 875 | 15,225.00 | 21 |
|  |  |  |  |  |
| **Associates** |  |  |  |  |
| Beal, Abigail M. | 173.1 | 440 | 76,164.00 | 1 |
| Berg, Madelaine | 19.0 | 650 | 12,350.00 | 27 |
| Diamond, Patrick G. | 6.0 | 360 | 2,160.00 | 2 |
| Eichler, Mark | 12.3 | 635 | 7,810.50 | 10 |
| Gutierrez, James S. | 2.4 | 490 | 1,176.00 | 5 |
| Krieger, Arlene G. | 599.9 | 650 | 389,935.00 | 22 |
| Wildes, Denise K. | 0.3 | 650 | 195.00 | 5 |
|  |  |  |  |  |
| **Paraprofessionals** |  |  |  |  |
| Dhanraj, Judy N. | 0.2 | 200 | 40.00 | N/A |
| Holzberg, Ethel H. | 70.2 | 270 | 18,954.00 | 36 |
| Magzamen, Michael S. | 1.2 | 270 | 324.00 | 3 |
| Mohamed, David | 132.9 | 175 | 23,257.50 | 18 |
| Palacios, Gino D. | 8.7 | 235 | 2,044.50 | 3 |
|  |  |  |  |  |
| **Sub Total** | **1,210.8** |  | **$ 689,400.00** |  |
| **Less 50% Travel** | **(23.7)** |  | **(16,777.50)** |  |
| **Total** | **1,187.1** |  | **$ 672,622.50** |  |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |

### TWENTY-EIGHTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED <ins>DURING THE PERIOD FROM JANUARY 1, 2008 THROUGH MARCH 31, 2008</ins>

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc.,  Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA  Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection

therewith, respectfully represents as follows:

## INTRODUCTION

1.      By this application (the "Application"), Stroock seeks (i) an interim allowance of

compensation for the professional services rendered by Stroock as counsel for the Committee for

the period from January 1, 2008 through March 31, 2008 (the "Compensation Period") in the

aggregate amount of $672,622.50 representing 1010.1 hours of professional services and 311.5

hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses

incurred by Stroock during the Compensation Period in connection with the rendition of such

professional services and paraprofessional services in the aggregate amount of $20,422.22, as

well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant

to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues

Expert") in respect of services rendered in the months of January, February and March of 2008

in the aggregate amount of $229,195.95.


2.      Venue of this proceeding and this Application is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C.

§§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.


## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary

petitions for reorganization under chapter 11 of the Bankruptcy Code and has continued in the

management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

2

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.      The Debtors operate a worldwide specialty chemicals and materials business and employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues.  The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee.  During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  On December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee. On July 10, 2006, a third amended notice of appointment of the Committee was filed by the United States Trustee.

6.      The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims (the "ACC") and asbestos-related property damage claims (the "PD Committee") against the Debtors (collectively, the "Asbestos Claim Committees").  On June 18, 2001, the United States Trustee

---

[2]     The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

NY 71458300v1

appointed an official committee to represent the interests of equity security holders of the

Debtors (the "Equity Committee").

7.      By order dated May 24, 2004, the Court authorized the appointment of a legal

representative for future asbestos claimants (the "Futures Representative").

8.      By application dated May 1, 2001, Stroock sought Court approval for its retention

as counsel to the Committee nunc pro tunc to April 12, 2001.  The Court signed an order

approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.      This is the twenty-eighth quarterly interim application Stroock has filed with the

Court for an allowance of compensation and reimbursement of expenses for services rendered to

the Committee.  This Application is submitted pursuant to the terms of the Administrative Order

Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement

of Expenses for Professionals and Official Committee Members, approved by the Court on

May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee

Order").

10.      In accordance with the procedures established by the Administrative Fee Order,

Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of

the fees and 100% of Stroock's expenses requested, and not objected to, in the January 2008 fee

statement encompassed within this Compensation Period.  Stroock has not yet received payment

for the fees and expenses requested in the February 2008 and March 2008 fee statements for

which certificates of no objection have been filed.  In addition, Stroock has received payment

from the Debtors representing the fees and expenses of Navigant Consulting, Inc. ("Navigant"),

formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the

4

months of January 2008 in the aggregate amount of $86,070.26.  Applicant has received no other payments and no promises for payment from any source for services rendered in connection with these cases for the months encompassing this Compensation Period other than as immediately set forth above.  There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

11.    As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.    Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates.  The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13.    Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee.  Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006.  A compilation

5

showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B".  In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

14.    Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection.  A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

15.    Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

16.    The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B".  Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

**Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003**

17.     As reflected in prior compensation applications, in mid-November 2004, the Debtors filed a reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for carrying out the estimations (the "Estimation Motion"), and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims.

18.     During prior compensation periods, the Court approved a form of case management order to govern the pre-confirmation estimation of asbestos personal injury claims (the "PI CMO") and several amendments thereto (the "Amended PI CMOs") and the related form of questionnaire (the "Questionnaire") to be used by asbestos personal injury claimants who had commenced pre-petition litigation against the Debtors (the "PI Pre-Petition Litigation Claimants"), and two case management orders for property damage claims (as amended, the "PD CMOs"); one to govern the Debtors' claims objection process and the other to govern the pre-confirmation estimation of property damage claims ("PD Claims").  July 12, 2006 was the deadline set for PI Pre-Petition Litigation Claimants to return completed Questionnaires. November 15, 2006 was the deadline set for PI-Pre-Petition Litigation Claimants to file proofs of claim.  The Amended PI CMOs established pre-trial dates and deadlines and trial dates to govern the estimation of asbestos personal injury claims (the "PI Estimation").  Pursuant to the pre-trial schedule established by the Amended PI CMOs at least 35 expert and fact witness depositions were held during the prior compensation period.

19.     During this Compensation Period, the PI Estimation trial commenced.  The Court first heard a day of argument on the parties' respective Daubert motions and opening statements

and then heard seven days of testimony.  Stroock prepared for and attended each day of the PI

Estimation trial.  In connection therewith, Stroock reviewed all trial-related pleadings, including

motions in limine and responses thereto, attended to trial issues and PI expert testimony and

issues, participated in a number of trial-related conference calls and meet and confers with other

parties-in-interest, and with Navigant, the Committee's Asbestos Issues Expert.  Also, during this

Compensation Period, Stroock prepared for and attended the depositions of two witnesses for the

ACC and Futures Representative.  Stroock has expended 155.0 hours on this category for a fee of

$104,681.50.

### Sales/Uses and Leases (Section 363) – Category 0009

20.     During this Compensation Period, Stroock communicated with Capstone

regarding the status of several acquisitions under consideration.  During this Compensation

Period, the Debtors filed a motion seeking authorization to make an initial several million dollar

equity investment in CeraTech, a Maryland company, pursuant to which the Debtors would

obtain certain sales, marketing, distribution and intellectual property rights for their concrete

admixtures business, with the possibility of making an additional future investment (the

"CeraTech Transaction").  Stroock reviewed the motion, and the various drafts of the agreements

obtained from Debtors' counsel comprising the transaction, including the stock purchase

agreement, the distribution agreement, the stockholders' agreement and the amended certificate

of incorporation, among others, exchanged memoranda and had conference calls with Debtors'

counsel on the terms of the Transaction during which Stroock raised questions and issues of

concern to the Committee and provided constructive comments, and engaged in on-going

communications with Capstone on this Transaction.  Stroock also reviewed and provided

comment on Capstone's proposed memorandum to the Committee on this matter.  Certain of the

services rendered by Stroock in connection with the CeraTech Transaction are reflected in Category 0013 – Business Operations.  Stroock has expended 22.2 hours on this category for a fee of $15,179.00.

### Business Operations -- Category 0013

21.    During this Compensation Period, the Debtors filed a motion seeking authorization to extend and modify their debtor-in-possession financing facility (the "DIP Motion") and a motion seeking authorization to extend their Credit Agreement with an unrelated entity in connection with the parties' joint venture, Advanced Refining Technologies (the "ART Joint Venture").  Stroock reviewed the DIP Motion and amendment, and the ART Joint Venture Motion.  Stroock also attended to the subsequent correspondence from Debtors' financial advisor and counsel addressing further modifications to the DIP and the proposed form of order reflecting the reduced firm commitment level able to be obtained by the Debtors.  Stroock communicated with Debtors' counsel and Capstone on these matters and with Capstone with respect to memoranda advising the Committee thereon.  In addition, as already reflected in this Application, certain of the services rendered by Stroock relating to the CeraTech Transaction are found in this category.  Stroock has expended 22.1 hours on this category for a fee of $14,453.50.

### Case Administration -- Category 0014

22.    As reported in prior monthly compensation applications, these chapter 11 cases were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L. Buckwalter following Judge Wolin's recusal from these cases.

23.     During this Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the pending adversary proceedings and appeals, to ensure that the Committee was fully informed about all pending motions, adversary proceedings and appeals and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable.  Stroock continued to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests.

24.     As reported in prior compensation applications, the US Trustee for Region 3 moved for the appointment of an examiner in these cases, as well as other asbestos cases pending in Region 3, to investigate the billing practices of L. Tersigni Consulting ("Tersigni"). Following Tersigni's filing of its own chapter 11 case in Region 2,the US Trustees for Regions 2 and 3 determined not to pursue the appointment of an examiner on behalf of the asbestos debtor cases, but conversion of the Tersigni chapter 11 case to a chapter 7 case and appointment of a chapter 7 trustee.  Stroock participated in multiple conference calls with Grace and other parties to discuss these events and their position with respect to the US Trustees' position, prepared memoranda for the Committee and communicated the Committee's position to Grace and other parties.

25.     During this Compensation Period, Stroock reviewed Grace's joinder  to objections filed to the US Trustees' motions, attended Judge Fitzgerald's hearing on the appointment motions in Grace and the other asbestos cases and attended to subsequent memoranda regarding the hearings before the Tersigni court and the orders issued directing the appointment of an examiner.  Stroock also attended to the Fee Auditor's initial objection to

Stroock's 26th quarterly fee application, reviewed relevant case law and backup documentation and prepared a reply.  Stroock has expended 177.1 hours on this category for a fee of $46,094.50.

## Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

26.     As reported in prior compensation applications, the New Jersey Department of Environmental Protection ("NJDEP") filed a motion for leave to file a late proof of claim in an amount in excess of $30.0 million, and Stroock reviewed applicable case law, discussed this matter with Debtors' counsel, and ultimately filed a joinder by the Committee to the Debtors' objection to the motion.  After the Court entered an order denying NJDEP's motion, Stroock attended to NJDEP's appeal of the order and its related statement of issues and designation of items to be included in the appellate record, its appellant's brief and reply brief on appeal and attended to the Debtors' drafts of their appellees' brief, joined by the Committee.

27.     During this Compensation Period, Stroock attended to District Court Judge Buckwalter's decision affirming the Court's ruling denying NJDEP's motion.  In addition, during this Compensation Period, the Debtors filed a motion seeking approval for a stipulation entered into with the City of Cambridge (Cambridge), pursuant to which Cambridge will be allowed a secured claim, plus post-petition interest at a compromised rate.  Stroock reviewed the Debtors' pleadings and relevant case law and statutory authority, requested additional information as necessary, and discussed this matter with Debtors' counsel.  Further, the Debtors also filed a motion during this period seeking authorization to currently pay a dozen real property tax claims, which Stroock reviewed and sought further information on.  Stroock has expended 11.4 hours on this category for a fee of $7,410.00.

**<u>Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017</u>**

28.    During this Compensation Period, Stroock communicated with the members of
the full Committee through numerous memoranda, telephone and conference calls.  In order to
keep the Committee fully informed of all of the pending matters in these cases, and thus enable
the Committee to take informed positions on those issues, Stroock reviewed and summarized the
motions, other pleadings and notices filed by the Debtors and other parties in interest in these
cases and the objections and responses filed, raised issues the Committee should be aware of,
made recommendations to the Committee concerning appropriate actions to be taken with regard
to the pleadings and communicated with members of the Committee regarding the positions to be
taken.  In addition, Stroock engaged counsel and other representatives for the Debtors, and other
parties and movants, as applicable, with the Committee's questions, concerns and comments,
negotiated whenever and to the extent possible consensual resolutions of outstanding issues and
acceptable forms of proposed orders, stipulations and settlement agreements.

29.    In addition, during this Compensation Period, Stroock prepared memoranda to the
Committee discussing the hearings held before Judge Fitzgerald and the rulings issued by the
Court and addressing the many pleadings and other materials considered by the Court, including
(i) the three separate motions filed by the Debtors seeking approval of settlements of
environmental claims held by the United States and certain agencies thereof; one involving the
settlement of claims relating to 35 contaminated sites throughout the United States that also
settled claims held by certain private parties at those sites (the "Multi-Site Settlement"), another
involving the settlement of the United States' claims with respect to the clean-up of the area
surrounding the Debtors' former Libby, Montana mine site (the "Libby Site Settlement") and the
third involving the settlement of the United States' claims for remediation at the Debtors' Curtis

12

Bay Facility (the "Curtis Bay FUSRAP Settlement"), (ii) the Debtors' motion seeking approval to transfer 10 environmentally contaminated properties to an unrelated third party (the "ELT Transaction"), and (iii) the motion by the City of Charleston seeking relief from the stay to proceed with eminent domain proceedings against the Debtors' property in the City (the "Charleston Stay Relief Motion") and the impact of such relief on the ELT Transaction.

30.     Also during this Compensation Period, Stroock prepared extensive memoranda to the Committee discussing the testimony given, arguments of counsel, and the comments made by the Court, during the PI Estimation trial.  In addition during this Period, Stroock rendered services on behalf of the Committee in connection with analyzing a number of issues relating to the treatment of unsecured creditors of a sovent debtor, including the payment of post-petition interest.  Certain of these services are reflected in the Application in Category  0036 (Plan and Disclosure Statement).  Further during this Compensation Period, Stroock and the Debtors' representatives engaged in a number of conference calls during which pending motions, Court hearings, PI Estimation-related issues and upcoming matters were discussed.

31.     Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases, to support the establishment of appropriate processes for the estimation or adjudication, as applicable, of the Debtors' asbestos liabilities, and to participate in the estimation proceedings and in the confirmation of a plan providing appropriate treatment for the creditors represented by the Committee.  Stroock has expended 290.1 hours on this category for a fee of $162,850.00.

### Fee Application, Applicant -- Category 0018

32.     During this Compensation Period, Stroock prepared its fee statements for the months of November 2007, December 2007, January 2008 and February 2008 and related notices, affidavits of service and certifications of no objection where applicable.  Stroock also prepared its Twenty-Seventh Quarterly Fee Application covering the period from October 1, 2007 through December 31, 2007 (the "prior compensation application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court.  Stroock has expended 62.7 hours on this category for a fee of $24,709.00.

### Creditor Inquiries -- Category 0019

33.     During this Compensation Period, Stroock responded to inquiries from unsecured creditors with respect to the status of these cases, the PI Estimation trial testimony and issues, the status of the ZAI litigation, plan and post-petition interest issues and the pending settlement with the United States Environmental Protection Agency (the "EPA") of the Government's Libby response cost claims.  Stroock has expended 10.9 hours on this category for a fee of $8,179.50 .

### Fee Application, Others -- Category 0020

34.     During this Compensation Period, Stroock prepared notices, affidavits of service and certifications with respect to Capstone's monthly fee statements for the months of October 2007, November 2007, December 2007 and January 2008 and with respect to Capstone's Sixteenth Quarterly Fee Application.  Stroock also attended to fee applications of other professionals retained in these cases and to final reports issued by the Fee Auditor.  Stroock has expended 21.4 hours on this category for a fee of $9,920.00.

### Employee Benefits, Pension – Category 0021

35.     During this Compensation Period, the Debtors filed a motion seeking authorization to make the the first quarterly minimum contribution payment to their pension plans for the 2008 plan year in an approximate amount of $18.0 million on or about April 15, 2008.  Stroock reviewed the motion and Capstone's memorandum to the Committee discussing it.  Stroock has expended 0.7 hours on this category for a fee of $455.00.

### Environmental Matters/Regulations/Litigation -- Category 0022

36.     As reflected in the prior compensation applications, the Debtors previously held an environmental matters meeting with the Committee's professionals where the terms of the Debtors' proposed settlement with the EPA, other governmental agencies and with private parties of such parties' environmental claims against the Debtors relating to 35 sites throughout the United States (the "Multi-Site Agreement") was discussed, as were the terms of other potential environmental-based claims agreements.  Prior to the end of the prior compensation period, the Debtors filed a motion seeking approval for the final form of the Multi-Site Agreement.

37.     During this Compensation Period, Stroock reviewed the motion and proposed form of order with respect to the Multi-Site Agreement, the responses filed in opposition to the Agreement, the further revised forms of the Agreement and Order circulated by counsel, attended to the public comment received to the Agreement and exchanged memoranda with counsel for the Debtors and other parties in interest, providing comments where applicable and prepared an extensive memorandum to the Committee on this proposed Settlement.

NY 71458300v1

38.     Also during this Compensation period, the Debtors filed several additional motions seeking approval for settlements of claims asserted by agencies of the United States for costs incurred and to be incurred by them in cleaning up environmentally contaminated property. As reflected elsewhere in this Application, the Debtors filed their motions seeking approval for the ELT Transaction, the Curtis Bay FUSRAP Settlement and for the Libby Site Settlement.  In each case, Stroock reviewed the motion and related settlement agreement, exchanged multiple memoranda with other professionals for the Committee and with such professionals prepared information requests seeking additional information and documentation from Debtors' representatives explaining and supporting the settlements, attended to relevant case law and objections filed to the motions, exchanged multiple memoranda with Debtors' counsel raising questions and comments of concern to the Committee and actively participated in conference calls with Debtors' representatives and, as applicable, with other parties in interest, and prepared extensive memoranda on these settlements for the Committee.  Stroock has expended 124.7 hours on this category for a fee of $75,619.50.

## Insurance – Category 0028

39.     During this Compensation Period, Stroock attended to a memorandum prepared by Capstone on the Debtors' insurance coverage.  Stroock has expended 0.3 hours on this category for a fee of $195.00.

## Travel – Non Working -- Category 0035

40.     Stroock's fees in this category during this Compensation Period relate to Stroock attorneys traveling (i) to and from Wilmington, DE for the omnibus hearings before Judge Fitzgerald on January 28, 2008 and February 25, 2008, (ii) to and from Pittsburgh, PA for the eight days of PI Estimation hearings held during January and March 2008 and (iii) to and from

16

Washington, D.C. to attend two expert and fact witness depositions in February 2008.  Stroock

has expended 47.5 hours on this category for a fee of $33,555.00 for which Stroock is seeking

payment in the amount of $16,777.50.

### Plan and Disclosure Statement -- Category 0036

41.     As reported in prior compensation applications, Judge Fitzgerald issued an order

in July 2007 terminating the Debtors' exclusive period to file a plan and solicit acceptances

thereto, and in October 2007 the ACC and FCR circulated a term sheet for a plan of

reorganization and subsequently filed with the Court their ACC/FCR Plan.  During this

Compensation Period, Stroock continued to discuss the financial aspects of the ACC/FCR Plan

with Capstone and reviewed additional analyses prepared by Capstone.  Further during this

Compensation Period, as reflected elsewhere in the Application, Stroock attended to plan

treatment issues for unsecured creditors and reviewed case law and other materials in connection

therewith.  Stroock expended 88.1 hours on this category for a fee of $57,834.00.

### Hearings -- Category 0037

42.     During this Compensation Period, Judge Fitzgerald held three omnibus hearings;

two in Wilmington, DE and one in Pittsburgh, PA, which hearings addressed, among other

matters, PI Estimation discovery and admissibility issues and PD Claims related matters and

issues, and eight days of PI Estimation hearings during which the parties' Daubert arguments and

motions in limine were argued and the Debtors' presented a number of their expert witnesses.  In

addition, the Court held a telephone hearing regarding the US Trustee's motion to appoint an

examiner to investigate Tersigni's billing practices for the benefit of the Debtors and other

asbestos debtor cases, and the changes in the US Trustee's position brought about by Tersigni

filing its own chapter 11 case in Connecticut.  Stroock reviewed each of the agenda notices and

17

all relevant pleadings, orders, stipulations, depositions, pre-trial motions and briefs and other documentation in advance of these hearings and participated in a number of conference calls discussing these matters, as applicable.  Stroock prepared for and attended the hearings, and advocated the Committee's positions, as appropriate.  After the hearings, Stroock, as reflected elsewhere in this Application, prepared memoranda informing the Committee of the arguments made and testimony given at the hearings and, where applicable, the Court's rulings.  Stroock expended 145.3 hours on this category for a fee of $107,914.00.

### Employment Applications, Others – Category 0040

43.    During this Compensation Period, the Furtures Representative filed an application seeking authorizaton nunc pro tunc to employ special asbestos property damage counsel to assist him with formulating and implementing settlements of PD Claims, among other services.  Stroock reviewed the motion and related documentation, discussed this matter with Debtors' counsel and prepared on behalf of the Committee a joinder to the Debtors' objection to the motion.  Stroock expended 5.8 hours on this category for a fee of $3,770.00.

### Relief From Stay Proceedings – Category 0041

44.    During this Compensation Period, Stroock reviewed Charleston's Stay Relief Motion described elsewhere in this Application and discussed the impact of that motion on the proposed ELT Transaction with Debtors' counsel.  Stroock expended 1.6 hours on this category for a fee of $1,040.00.

### Tax Issues – Category 0047

45.    During this Compensation Period, the Debtors filed two separate motions; one seeking approval for a closing agreement with the Internal Revenue Service that would resolve a

dispute over the IRS' disallowance of a substantial capital loss previously claimed by the

Debtors and the other seeking authority for a stipulation resolving a dispute over the amount of

post-petition interest to be paid to the City of Cambridge on its secured claim for real property

taxes.  In addition, the Debtors filed notice of a settlement with the State of Michigan over taxes

assessed against the Debtors and refunds the Debtors believed were owing to them.  Stroock

reviewed these motions and the settlement notice, reviewed relevant case law and statutory

authority supporting these settlements, participated in a number conference calls with the

Debtors' counsel and/or in-house tax personnel and other representatives, and reviewed all

documentation and materials provided to it.  Stroock also prepared memoranda for the

Committee discussing these matters.  Stroock expended 23.9 hours on this category for a fee of

$15,540.50.

### FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

46.    The factors to be considered in awarding attorneys fees have been enumerated in

In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547

F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts.  Stroock

respectfully submits that a consideration of these factors should result in this Court's allowance

of the full compensation sought.

> The Time and Labor Required.  The professional services rendered by
> Stroock on behalf of the Committee have required the expenditure of
> substantial time and effort, as well as a high degree of professional
> competence and expertise, in order to deal with the complex issues
> encountered by the Committee with skill and dispatch.  Occasionally,
> Stroock has been required to perform these services under significant time

constraints requiring work late into the evening and on weekends.  The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions.  Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered.  In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly.  Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case.  Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients.  However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

NY 71458300v1

The Customary Fee.  The fee sought herein is based upon Stroock's normal hourly rates for services of this kind.  Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

Whether the Fee is Fixed or Contingent.  Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already indicated, Stroock has attended to the various issues arising in these cases.  Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

21

The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings. Stroock's experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation, ERISA, tax, environmental and intellectual property law areas to perform the wide ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

<u>Nature and Length of Professional Relationship</u>.  As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

47.      The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

48.      With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person.  11 U.S.C. § 330.  Section 330 further states that the court should take into consideration, <u>inter alia</u>, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title.  <u>Id</u>. The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

49.      The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 1,210.8 hours.  Such services have a

23

fair market value of $672,622.50.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

50.    As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time.  Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

51.    In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $20,422.22 for which Stroock respectfully requests reimbursement in full.  The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters.  Approximately $3,900 of the total amount for which reimbursement is sought are costs incurred by Stroock for deposition transcripts.  Virtually all of the costs incurred by Stroock for Travel Expenses – Lodging, Travel Expenses – Transportation, and Travel Expenses – Meals, in the aggregate approximate amount of $4,200 were costs incurred by Stroock attorneys in connection with attending the omnibus and PI Estimation hearings before the Court and the two depositions that occurred during this Compensation Period.  Stroock has endeavored to minimize to the fullest extent possible those expenses incurred to enable Stroock to devote time beyond normal office hours to matters that imposed extraordinary time demands.  Attached hereto as Exhibit "D" is a summary chart reflecting each category of disbursement for which Stroock seeks reimbursement.

52.    Stroock's billing rates do not include charges for photocopying, telephone and telecopy toll charges, computerized research, travel expenses, "working meals", secretarial

24

overtime, postage and certain other office services, because the needs of each client for such services differ.  Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

53.    Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions.  Stroock does not charge for incoming facsimiles.

54.    Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment in the aggregate amount of $229,195.95, for the fees and expenses of Navigant for the asbestos issues-related services rendered on behalf of the Committee in the months of January, February and March 2008.

55.    No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

56.    Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

57.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

the allowance of compensation for professional services rendered to the Committee during the period from January 1, 2008 through and including March 31, 2008 in the amount of $672,622.50;

the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from January 1, 2008 through and including March 31, 2008 in the amount of $20,422.22;

the payment of the fees and expenses of the Asbestos Issues Expert employed by the Committee for the months of January, February and March 2008 in the aggregate amount of $229,195.95;

authorizing and directing the Debtors to pay to Stroock each of the amounts set forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
May 27, 2008

STROOCK & STROOCK & LAVAN LLP

Lewis Kruger
Kenneth Pasquale
Members of the Firm
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

Co-Counsel for the Official Committee of
Unsecured Creditors of W. R. Grace & Co., et al.

26

NY 71458300v1