## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF KIRKLAND & ELLIS LLP
## FOR THE TWENTY-SEVENTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Kirkland & Ellis LLP for the Twenty-Seventh Interim Period.

## BACKGROUND

1.      Kirkland & Ellis LLP ("K&E") was retained as counsel to the Debtors.  In the Application, K&E seeks approval of fees totaling $7,183,739.50 and expenses totaling $4,071,771.01 for its services from October 1, 2007 through December 31, 2007 (the "Application Period").

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under

11 U.S.C. § 330, Issued January 30, 1996 (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served an initial report on K&E, and received a response from K&E, portions of which response are quoted herein.

## DISCUSSION

3.       In our initial report, we noted that during the Application Period, Paralegal Bianca Portillo, billing at an hourly rate of $145.00, spent 67.40 hours for total fees of $9,773.00 on what appeared to be filing.  The time entries are listed on Exhibit "A."  On the issue of adjusting rates downward, we find persuasive the opinion expressed by the Honorable Judith K. Fitzgerald in *In re USG Corporation*, Case No. 01-2094 (JKF), Transcript of Proceedings, August 29, 2005, pp. 49-52, wherein the Court opined that $160.00 per hour for file maintenance, even if performed electronically, was too high, and that $60.00 to $100.00 per hour for this service was more appropriate.   We have been consistent in recommending that filing be billed at no more than $80.00 per hour. Thus, we asked K&E to explain why this time should not be compensated at a reduced hourly rate.  K&E provided a response which we have included as Response Exhibit "A."  We understand K&E's response and have reviewed the supplemented time entries which they have provided.   As with the previous application period, we took no issue with most of the time billed by Ms. Portillo in reviewing, analyzing and organizing documents.  It was only when it appeared from the time entry that Ms. Portillo filed documents or entered documents into the electronic file database, did we take issue with charging her full hourly rate for this service.  We appreciate the

supplemented time descriptions provided by K&E, as well as its explanation of the Concordance database.  We note from the supplemented time entries the wide variety of issues addressed in the correspondence Ms. Portillo was required to analyze in the performance of this task.  But all filing requires some degree of review, analysis, and organization–otherwise someone with no legal knowledge whatsoever could perform the task.  And we are not contending that this filing should be performed without compensation, particularly in cases as complex as these.[1]  However, it appears to us that time spent by a paralegal in these types of activities should not be compensated as highly as, for example, drafting of pleadings, notices, and orders, participating in client meetings, or document production. There is authority in this district for adjusting rates downward for routine tasks.  "Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates.  A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3rd Cir. 1983).  We think the same can be said of routine tasks performed by paralegals.  It appears to us that the filing of correspondence, electronically or otherwise, is still a routine task despite the fact that the correspondence covers a wide range of issues with varying degrees of complexity.   Thus, for the 67.40 hours of Ms. Portillo's time that we have noted on Exhibit "A," we recommend compensation at $80 per hour, and a corresponding reduction of $4,381.00 in fees.

4.      In our initial report, we noted three instances in which multiple K&E professionals attended

---

[1]As stated by the court in *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 855 n.34 (3rd Cir. 1994):  "The statute [11 U.S.C. § 330] plainly specifies that the type of service performed by a paralegal (including whether it is clerical) affects the rate of compensation, not compensability vel non."

the same hearing or conference.    The pertinent time entries are listed on Exhibit "B." Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Thus, for each hearing and conference listed, we asked K&E to explain why it was necessary for each K&E professional and paraprofessional to be in attendance.  K&E provided a response which we have included as Response Exhibit "B." We accept K&E's response and have no objection to these fees.

5.      In our initial report, we noted the following ground transportation charges which, in the absence of additional information, seemed high:

| | | |
|---|---|---|
| 8/12/2007 | 293.34 | Metropolitan Limousine - Transportation to/from airport, Emily Malloy, 08/12/2007 |
| 8/13/2007 | 415.19 | Metropolitan Limousine - Transportation to/from airport, Emily Malloy, 08/13/2007 |
| 9/30/2007 | 415.79 | Red Top Cab Company - Transportation to/from airport, B. Stansbury, 9/09/07 |
| 11/19/2007 | 935.71 | Theodore Freedman, Cabfare, New York, NY, 11/19/07 (Client Conference), Boston Coach fare from Columbia, MD to Manhattan, NY |
| 11/29/2007 | 385.59 | Janet Baer, Transportation To/From Airport, Philadelphia, PA, 11/29/07 (Hearing) |

In response to our inquiry, K&E provided additional information concerning these charges, which information we have included as Response Exhibit "C."  We accept K&E's response with respect to the charges for $935.71 and $385.59, as it appears these car charges were necessitated by unexpected circumstances which arose during the trip.  However, it does not appear to us that the response has established the necessity of utilizing a car service for the remaining trips.  Although a

car service is undoubtedly the most convenient mode of transportation, it is unclear from the response why the attorneys in question could not have driven themselves.  For the 136-mile round trip from Valparaiso, Indiana, to O'Hare Airport for which $708.53 was billed, the mileage[2] reimbursement would have computed to $68.68, and the parking at O'Hare Airport for two nights would have cost $60.00, for a total of $128.68.  If an additional $40.00[3] for tolls is included, that brings the total to $168.68.  We therefore recommend that reimbursement of this charge be reduced by $539.85.  For the 210-mile round trip from Arlington, Virginia, to Richmond, Virginia for which $415.79 was charged, the round trip business class train fare would have been less than $120.00.  That plus $100.00 for any incidental taxi charges would compute to $220.00.[4]  We therefore recommend that reimbursement of this charge be reduced by $195.79.  Thus, for all items in this paragraph, we recommend a reduction of $735.64 in expenses.

## CONCLUSION

6.      Thus, we recommend approval of $7,179,358.50 in fees ($7,183,739.50 minus $4,381.00) and $4,071,035.37 in expenses ($4,071,771.01 minus $735.64) for K&E's services for the Application Period.

---

[2]The mileage is calculated using the IRS' 2008 business rate of 50.5¢ per mile.

[3]We were unable to obtain the exact amount of tolls, but feel that an estimate of $40 is probably ample.

[4]If Mr. Stansbury had driven himself, the mileage reimbursement would have been $106.00.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____

Warren H. Smith
Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 26th  day of May, 2008.


_____

Warren H. Smith

# SERVICE LIST
## Notice Parties

**The Applicant**
Janet S. Baer
David M. Bernick, P.C.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

William Sparks
william.sparks@grace.com

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Lockbox 35, Room 2207
Wilmington, DE 19801

**EXHIBIT "A"**

| | | | |
|---|---|---|---|
| 10/1/2007 | Bianca Portillo | 0.90 | Review, analyze, organize and enter correspondence into central files database and update central files. |
| 10/4/2007 | Bianca Portillo | 1.10 | Review, analyze, organize and enter correspondence into central files database and update central files (1.1);......... |
| 10/5/2007 | Bianca Portillo | 0.80 | .........; review, analyze, organize and enter correspondence into central files database and update central files (.8). |
| 10/6/2007 | Bianca Portillo | 1.30 | .......; review, analyze, organize and enter correspondence for central files database and update central files (1.3). |
| 10/8/2007 | Bianca Portillo | 0.90 | Review, analyze, organize and enter correspondence into central files database and update central files. |
| 10/10/2007 | Bianca Portillo | 2.40 | Review, analyze, organize and enter correspondence into central files database and update central files (2.4);...... |
| 10/13/2007 | Bianca Portillo | 0.50 | Review, analyze, organize and enter correspondence into central files database and update central files. |
| 10/16/2007 | Bianca Portillo | 3.10 | Review, analyze, organize and enter correspondence into central files database and update central files. |
| 10/17/2007 | Bianca Portillo | 2.10 | Review, analyze, organize and enter correspondence into central files database and update central files (2.1);........ |
| 10/19/2007 | Bianca Portillo | 1.20 | ..........;   review,   analyze,   organize and enter correspondence into central files database (1.2);.............. |
| 10/23/2007 | Bianca Portillo | 3.60 | Review, analyze, organize and enter correspondence into central files database and update central files (3.6);............ |
| 10/24/2007 | Bianca Portillo | 2.20 | Review, analyze, organize and enter correspondence into central files database and update central files (2.2);............ |
| 10/29/2007 | Bianca Portillo | 1.60 | Review, analyze, organize and enter correspondence into central files database and update central files (1.6);........ |
| 11/1/2007 | Bianca Portillo | 3.30 | ..........;   review,   analyze, organize and enter correspondence into concordance database and update |

central files (3.3).

| 11/7/2007 | Bianca Portillo | 1.40 | Review, analyze, organize and enter correspondence into concordance database and update central files (1.4);....... |
| 11/8/2007 | Bianca Portillo | 2.30 | Review, analyze, organize and enter correspondence into concordance database and update central files (2.3);........ |
| 11/9/2007 | Bianca Portillo | 1.10 | ...........;   review,   analyze,   organize and enter correspondence into concordance database and update central files (1.1). |
| 11/12/2007 | Bianca Portillo | 3.30 | Review, analyze, organize and enter correspondence into concordance database and update central files (3.3);...... |
| 11/14/2007 | Bianca Portillo | 0.20 | Update order binders and index with recently filed orders. |
| 11/16/2007 | Bianca Portillo | 2.20 | Review, analyze, organize and enter correspondence into concordance database and update central files. |
| 11/19/2007 | Bianca Portillo | 1.40 | ...........;   review,   analyze,   organize and enter correspondence into concordance database and update central files (1.4). |
| 11/20/2007 | Bianca Portillo | 1.70 | Review, analyze, organize and enter correspondence into concordance database and update central files. |
| 11/27/2007 | Bianca Portillo | 4.30 | Review, analyze and update order binders and index with recently filed orders (1.4);.............; review, analyze, organize and enter correspondence into concordance database and update central files (2.9);........ |
| 11/28/2007 | Bianca Portillo | 2.50 | ..........;   review,   analyze,   organize and enter correspondence into concordance database and update central files (2.1); update order binders and index with recently filed orders (.4). |
| 11/29/2007 | Bianca Portillo | 0.60 | .............; review, analyze and update order binders and index (.2); review, analyze and organize pleadings for central files (.4). |
| 11/30/2007 | Bianca Portillo | 1.20 | Review, analyze, organize and enter correspondence into concordance database and update central files (1.2);.......... |

| | | | |
|---|---|---|---|
| 12/3/2007 | Bianca Portillo | 1.30 | Review, analyze, organize and enter correspondence into concordance database and update central files (1.3);......... |
| 12/4/2007 | Bianca Portillo | 2.30 | ........; review, analyze, organize and enter correspondence into concordance database and update central files (2.3);... |
| 12/5/2007 | Bianca Portillo | 2.20 | Review, analyze, organize and enter correspondence into concordance database and update central files (2.2);....... |
| 12/11/2007 | Bianca Portillo | 1.90 | .........; review, analyze, organize and enter correspondence into concordance database and update central files (1.9);............ |
| 12/17/2007 | Bianca Portillo | 2.90 | Review, analyze, organize and enter correspondence into concordance database and update central files (2.9);....... |
| 12/18/2007 | Bianca Portillo | 1.60 | ............;    review,    analyze,    organize and enter correspondence into concordance database and update central files (1.6);............ |
| 12/19/2007 | Bianca Portillo | 2.90 | Review, analyze, organize and enter correspondence into concordance database and update central files (2.9);....... |
| 12/20/2007 | Bianca Portillo | 2.10 | Review, analyze, organize and enter correspondence into concordance database and update central files. |
| 12/27/2007 | Bianca Portillo | 2.10 | Review, analyze, organize and enter correspondence into concordance database and update central files (2.1);..... |
| 12/28/2007 | Bianca Portillo | 0.90 | .......; review, analyze, organize and enter correspondence into concordance database and update central files (.9). |

67.40

**EXHIBIT "B"**

a.       We note that on October 25, 2007, Timekeepers Basta ($465), Bernick ($870), Baer ($755),

Langenkamp ($245), Sinanyan ($560), and Esayian ($570) attended an omnibus hearing.

The total time spent, including preparation and non-working travel, was 47.10 hours, for total

fees of $23,758.75.  The time entries are as follows:

| | | | | |
|---|---|---|---|---|
| 10/23/2007 | Travis J Langenkamp | 1.00 | 245.00 | ..........; prepare for omnibus hearing (1.0). |
| 10/24/2007 | Amanda C Basta | 3.00 | 1,395.00 | Prepare for omnibus hearing (3.0);............. |
| 10/24/2007 | David M Bernick, P.C. | 2.00 | 1,740.00 | .........; prepare for omnibus hearing (2.0). |
| 10/24/2007 | Travis J Langenkamp | 2.00 | 490.00 | .........; prepare for omnibus hearing (2.0). |
| 10/25/2007 | David M Bernick, P.C. | 6.00 | 5,220.00 | Prepare for and attend omnibus hearing. |
| 10/25/2007 | Lisa G Esayian | 0.80 | 456.00 | Participate in portion of Grace omnibus hearing re PD settlements and PD status report (.8);........... |
| 10/25/2007 | Travis J Langenkamp | 9.00 | 2,205.00 | Prepare for and attend omnibus hearing. |
| 10/25/2007 | Amanda C Basta | 6.50 | 3,022.50 | Prepare for omnibus hearing (4.0); attend hearing (2.5). |
| 10/9/2007 | Janet S Baer | 0.70 | 528.50 | Review 10/25 agenda and provide comments re same (.4); confer re 10/25 hearing issues (.3). |
| 10/22/2007 | Janet S Baer | 1.50 | 1,132.50 | Confer re 10/25 hearing issues (.3); confer re materials needed for same (.2); review and organize materials for 10/25 hearing (1.0). |
| 10/25/2007 | Janet S Baer | 6.00 | 4,530.00 | Prepare  for October omnibus hearing (3.5); attend October omnibus hearing (2.5);........ |

| | | | | |
|---|---|---|---|---|
| 10/25/2007 | Lori Sinanyan | 0.70 | 392.00 | Telephonically attend claims portion of omnibus hearing. |
| 10/24/2007 | Janet S Baer | 2.20 | 830.50 | Travel from New York, NY to Pittsburgh, PA for omnibus hearing (billed at half time). |
| 10/25/2007 | Janet S Baer | 1.70 | 641.75 | Travel from Pittsburgh, PA back to Chicago, IL after omnibus hearing (billed at half time). |
| 10/25/2007 | Amanda C Basta | 4.00 | 930.00 | Travel to and from Pittsburgh, PA for hearing (billed at half time). |
| | | 47.10 | $23,758.75 | |

b.        We note that on November 6, 2007, 10 K&E attorneys[5] attended a joint defense conference.  The total time spent, including preparation, was 74.80 hours, for total fees of $36,331.00.  The time entries are as follows:

| | | | | |
|---|---|---|---|---|
| 11/6/2007 | John P Gonsoulin | 7.50 | 3,637.50 | Participate in joint defense conference (7.5);......... |
| 11/6/2007 | Tyler D Mace | 11.00 | 4,785.00 | Attend and coordinate joint defense conference. |
| 11/6/2007 | F Wade Ackerman | 8.70 | 3,523.50 | Attend joint defense conference re trial strategy and confer with co-counsel. |
| 11/6/2007 | Rebecca A Koch | 2.00 | 710.00 | Confer with L. Urgenson, T. Mace, P. King, P. Farrell and joint-defense team re case status and developments. |
| 11/6/2007 | Peter A Farrell | 10.00 | 3,150.00 | Review and prepare materials re joint |

[5]The hourly rates of these professionals are as follows: John P Gonsoulin - $485; Tyler D. Mace - $435; F Wade Ackerman - $405; Rebecca A Koch - $355; Peter A Farrell - $315; Patrick J King - $275; Walter R Lancaster - $675; Barbara M Harding - $550; Scott A McMillin - $550; and Laurence A Urgenson - $795.

| | | | | |
|---|---|---|---|---|
| | | | | defense presentation of case themes (.8); participate in joint defense conference re case themes and strategy (9.2);............. |
| 11/6/2007 | Patrick J King | 8.00 | 2,200.00 | Attend joint defense conference (8.0);......... |
| 11/6/2007 | Walter R Lancaster | 8.50 | 5,737.50 | Prepare for and attend joint defense conference. |
| 11/6/2007 | Barbara M Harding | 3.40 | 1,870.00 | Prepare for conference with joint defense criminal team (.7); attend criminal joint defense strategy conference (2.7). |
| 11/6/2007 | Scott A McMillin | 7.20 | 3,960.00 | Prepare for and participate in joint defense meeting re trial preparation. |
| 11/6/2007 | Laurence A Urgenson | 8.50 | 6,757.50 | Review Grace focus group presentation (.5); confer with JDA group re focus group presentations, case status and strategy (8.0);........... |
| | | 74.80 | $36,331.00 | |

c.      We note that on December 17, 2007, eight K&E professionals[6] attended a strategy conference.  The total time spent, including preparation, was 31.10 hours for total fees of $18,117.00.  The time entries are as follows:

| | | | | |
|---|---|---|---|---|
| 12/17/2007 | Alex L Karan | 3.20 | 1,552.00 | Prepare for and participate in Grace conference re expert work product (3.2);............ |
| 12/17/2007 | Tyler D Mace | 3.50 | 1,522.50 | ............; conference with defense counsel re science defense and expert preparation (3.5);........... |

[6]The hourly rates of these professionals are as follows: Alex L Karan - $485; Tyler D Mace - $435; Brian T Stansbury - $465; Ellen T Ahern - $545; Walter R Lancaster - $675; Barbara M Harding - $550; Scott A McMillin - $550; and Laurence A Urgenson - $795.

| | | | | |
|---|---|---|---|---|
| 12/17/2007 | Brian T Stansbury | 2.00 | 930.00 | Prepare for and confer with science team re work plan and on-going analysis. |
| 12/17/2007 | Ellen T Ahern | 3.20 | 1,744.00 | Participate in case status and strategy conference re science issues. |
| 12/17/2007 | Walter R Lancaster | 8.00 | 5,400.00 | Prepare for conference with HRO representatives (5.0); review and analyze materials re same (3.0). |
| 12/17/2007 | Barbara M Harding | 4.70 | 2,585.00 | Review documents re preparation for meeting with joint defense team re experts (1.7); attend joint defense conference re experts (3.0). |
| 12/17/2007 | Scott A McMillin | 3.20 | 1,760.00 | Prepare for and participate in joint defense conference re science case. |
| 12/17/2007 | Laurence A Urgenson | 3.30 | 2,623.50 | ..............; conference re science issues with R. Finke, D. Cameron, T. Mace, B. Harding, S. McMillin, A. Klapper and R. Sentfleben (3.3). |
| | | 31.10 | $18,117.00 | |

## RESPONSE EXHIBIT "A"

Project Assistant Bianca Portillo's Time Entries (¶ 3)

You have raised an issue about thirty-six time entries of Bianca Portillo, a K&E professional who was a Restructuring Department project assistant assigned to the Cases during the time period covered by the Initial Report. As in previous initial reports you have filed, here too you have categorized Bianca's time entries as clerical in nature and therefore not meriting of her assigned hourly billable rate. However, we do not believe any of her questioned time was actually clerical in nature, and K&E maintains, for the reasons set forth below, that her billed hourly rate was appropriate.

Our previous explanations of the ways in which K&E uses paraprofessionals, including project assistants, apply with equal force here, and, rather than reiterate the general explanation, please refer to, for example, our discussion of this issue contained in the 26th Response. For a detailed description of Bianca's role in the Cases and general assigned Case duties, I refer you to, specifically, the second full paragraph on page 3 of the 26th Response.

That being said, since all of the questioned time here relates to tasks described as review of correspondence, I note that the volume of correspondence and related materials (hardcopy and electronic, incoming and outgoing) that K&E must maintain on a case the size of the Debtors' mandates that we implement a useable system for organizing, cross-referencing and providing for immediate retrieval of any given item of correspondence and related materials. Without such a system, frankly, our management of the Cases would grind to a halt. Many of Bianca's time entries relate to reviewing and categorizing correspondence and related materials for purposes of updating and maintaining the "Concordance" database, which is a third party-created, Case-tailored database developed specifically in order to effectively manage the volume of correspondence and related materials generated in the Cases and used in large part by K&E litigators preparing for trial. Since Concordance allows for detailed, syntactic-based text searches using logical operators, it is critical that items being entered into the database are properly "tagged" with the correct key words that will enable such items to be located in a relevant search. For example, when entering a letter from an expert witness containing a summary of expected trial testimony, and including multiple appendices, the paraprofessional entering that material must identify and understand the relevant scientific terminology in order to properly index and "tag" it for Concordance search purposes. There is no way that a secretary or file clerk would have the Case knowledge or training required to perform this case management function. To date, Concordance holds close to 5,000 linked and cross-referenced items of Case correspondence and related material entries. Those of Bianca's time entries relating to central files maintenance and updating represent the analogous function for hard copy correspondence and related material.

The above description notwithstanding, I realize that it may be difficult for you to assess the true importance of Bianca's time entries given the general descriptions provided. Therefore, on Exhibit A hereto, please find each of the questioned time entries revised in order to indicate the

substance of the particular correspondence and related materials Bianca was working with. Going forward, K&E will ensure that paraprofessionals adhere to this more detailed style of time entry.

For the reasons set forth above, K&E respectfully disagrees with the Initial Report's categorization of Bianca's time entries noted therein as "clerical" or "administrative" and requests approval of the time billed at the rate requested.

<u>Bianca Portillo's Time Entries</u>

| 10/1/2007 | Bianca Portillo | 0.90 | Review, organize and categorize case correspondence and materials, including correspondence and materials re: (a) Ferry, Joseph 8-07 fee application, (b) depositions and subpoenas of Celotex Asbestos Trust and P. Houser, and (c) Debtors' response and supplemental brief re Speights response re opinion expunging 71 PD claims. |
| --- | --- | --- | --- |
| 10/4/2007 | Bianca Portillo | 1.10 | Review, organize and categorize case correspondence and materials, including correspondence and materials re: (a) depositions and subpoenas of W. Nurre and S. Kazan, (b) order re motion to compel Celotex Asbestos Trust discovery, (c) Legal Analysis Systems fee application, and (d) Debtors' monthly operating report. |
| 10/5/2007 | Bianca Portillo | 0.80 | Review, organize and categorize case correspondence and materials, including correspondence and materials re depositions and subpoenas of P. Kraus and UNR Claims Trust. |
| 10/6/2007 | Bianca Portillo | 1.30 | Review, organize and categorize case correspondence and materials, including correspondence and materials re objections to: (a) Prete's motion to lift stay and (b) FCR's objection re settlement of certain Dies & Hile and Prudential PD claims. |
| 10/8/2007 | Bianca Portillo | 0.90 | Review, organize and categorize case correspondence and materials, including correspondence and materials re: (a) fee applications of Casner & Edwards and financial advisors to creditors' committee and (b) depositions of Keene Creditors Trust and P. Houser. |

| 10/10/2007 | Bianca Portillo | 2.40 | Review, organize and categorize case correspondence and materials, including correspondence and materials re: (a) motion to compel re DII Industries Asbestos Trust, (b) motion for order authorizing optimization plan, (c) Casner & Edwards fee application, and (d) depositions of Celotex Settlement Trust and T. Goldberg. |
|---|---|---|---|
| 10/13/2007 | Bianca Portillo | 0.50 | Review, organize and categorize case correspondence and materials, including correspondence and materials re: (a) Beveridge & Diamond fee application, (b) depositions and subpoenas of UNR Claims Trust, Keene Creditors Trust, Celotex Settlement Trust and Eagle Picher Settlement Trust, and (c) Anderson Memorial Hospital brief re Canadian statute of limitations issue. |
| 10/16/2007 | Bianca Portillo | 3.10 | Review, organize and categorize case correspondence and materials, including correspondence and materials re H. Thompson *pro hac vice* motion, Ogilvy & Renault fee application, Nelson Mullins fee application, and State of California motion re T. Vander Wood expert report. |
| 10/17/2007 | Bianca Portillo | 2.10 | Continue to review  and categorize case correspondence and materials, including correspondence and materials re fee applications and California motion re T. Vander Wood expert report. |
| 10/19/2007 | Bianca Portillo | 1.20 | Review and categorize case correspondence and materials, including correspondence and materials re: (a) order expunging PD claim 12430 and (b) Pachulski Stang fee application. |
| 10/23/2007 | Bianca Portillo | 3.60 | Review and categorize case correspondence and materials, including correspondence and materials re: (a) order re discovery materials from Keene Creditors Trust and (b) FCR memorandum of law re Debtors' motion for relief from discovery cutoff date re lawyer witnesses and related objection. |
| 10/24/2007 | Bianca Portillo | 2.20 | Review, organize and categorize correspondence and materials including materials re Debtors' fee applications and related fee auditor reports. |

| 10/29/2007 | Bianca Portillo | 1.60 | Review and categorize case correspondence and materials, including correspondence and materials re Debtors' reply to Anderson Memorial Hospital's memorandum on Canadian statute of limitations issue and order re settlement of Oklahoma Dies & Hile PD claims. |
|---|---|---|---|
| 11/1/2007 | Bianca Portillo | 3.30 | Review and categorize case correspondence and materials, including correspondence and materials re settlement of Dies & Hile Oklahoma PD claims and order re withdrawal of Prete's motion for relief from automatic stay. |
| 11/7/2007 | Bianca Portillo | 1.40 | Review and categorize case correspondence and materials, including correspondence and materials re plan of reorganization filed by PI Committee and FCR. |
| 11/8/2007 | Bianca Portillo | 2.30 | Continue to review and categorize correspondence and materials re plan of reorganization (1.7); review and categorize other case correspondence and materials, including materials re Capstone Advisory fee application (.6). |
| 11/9/2007 | Bianca Portillo | 1.10 | Review and categorize case correspondence and materials, including correspondence and materials re: (a) response to CA Dept of General Services motion to file R. Vander Wood expert report and (b) motion to expunge Allegheny Center duplicate claims. |
| 11/12/2007 | Bianca Portillo | 3.30 | Review and categorize case correspondence and materials, including correspondence and materials re: (a) Deloitte Financial Advisory Services retention and (b) motion to approve Del Taco settlement agreement. |
| 11/14/2007 | Bianca Portillo | 0.20 | Update order binders and index with order re withdrawal of Prete's motion for relief from automatic stay. |
| 11/16/2007 | Bianca Portillo | 2.20 | Review, organize and categorize case correspondence and materials, including correspondence and materials re: (a) Woodcock Washburn fee application, (b) notice of errata filed by H.A. and V. Jew, and (c) motion of Debtors re settlement of Barnesville, GA PD claim. |

| 11/19/2007 | Bianca Portillo | 1.40 | Review, organize and categorize case correspondence and materials, including correspondence and materials re fee applications of Stroock & Stroock, Ogilvy Renault, and Foley Hoag. |
|---|---|---|---|
| 11/27/2007 | Bianca Portillo | 4.30 | Review, analyze and update order binders and index re orders re: (a) settlement of Oklahoma Dies & Hile PD claims, (b) discovery materials from Keene Creditors Trust, and (c) expunging PD claim 12430 (1.4); review and categorize case correspondence and materials, including correspondence and materials re: (a) stipulation re W. and P. Pellet claims and (b) order authorizing PI Committee to file under seal unredacted versions of M. Peterson and S. Snyder expert rebuttal reports. |
| 11/28/2007 | Bianca Portillo | 2.50 | Review, organize and categorize case correspondence and materials, including correspondence and materials re fee applications of Day Pitney and Anderson, Kill |
| 11/29/2007 | Bianca Portillo | 0.60 | Review and categorize case correspondence and materials, including correspondence and materials re Ogilvy Renault fee application and A. Volovsek letter re reconsideration. |
| 11/30/2007 | Bianca Portillo | 1.20 | Review and categorize case correspondence and materials, including correspondence and materials re (a) memorandum in opposition to Debtor's motion to expunge Allegheny Center claims and related motion, and (b) Charter Oak fee application. |
| 12/3/2007 | Bianca Portillo | 1.30 | Review and categorize case correspondence and materials, including correspondence and materials re Debtor's monthly operating reports. |
| 12/4/2007 | Bianca Portillo | 2.30 | Review and categorize case correspondence and materials, including correspondence and materials re: (a) order denying reconsideration requested by A. Volovsek and (b) Woodcock Washburn fee application . |
| 12/5/2007 | Bianca Portillo | 2.20 | Review and categorize case correspondence and materials, including correspondence and materials re revised order re PI estimation liabilities and Debtors' objection to Richmond County, GA property tax claim. |

| 12/11/2007 | Bianca Portillo | 1.90 | Review and categorize case correspondence and materials, including correspondence and materials re: (a) Legal Analysis Systems fee application and (b) Debtor's updated exhibits to memorandum re expert opinions re PI estimation. |
|---|---|---|---|
| 12/17/2007 | Bianca Portillo | 2.90 | Review and categorize case correspondence and materials, including correspondence and materials re: (a) order re Debtors' objection to MS Dept of Revenue claim and (b) order authorizing settlement of City of Barnesville PD claim. |
| 12/18/2007 | Bianca Portillo | 1.60 | Review and categorize case correspondence and materials, including correspondence and materials re Debtors' motion to strike untimely expert materials and related hearing agenda. |
| 12/19/2007 | Bianca Portillo | 2.90 | Review and categorize case correspondence and materials, including correspondence and materials re: (a) K&E fee application and (b) motion to approve settlement re U.S.' environmental claims and related hearing agenda. |
| 12/20/2007 | Bianca Portillo | 2.10 | Review and categorize case correspondence and materials, including correspondence and materials re Debtors' withdrawal of motion to strike untimely expert materials and related agreement. |
| 12/27/2007 | Bianca Portillo | 2.10 | Review and categorize case correspondence and materials, including correspondence and materials re BMC fee applications. |
| 12/28/2007 | Bianca Portillo | 0.90 | Review, organize and categorize case correspondence and materials, including correspondence and materials re fee applications of BMC, Day Pitney and K&E. |

**RESPONSE EXHIBIT "B"**

Attendance at Conferences and Hearings (¶ 4)

The Initial Report requests greater explanation concerning multiple professionals' attendance at, and preparation for, two conferences and one hearing. The following lettered paragraphs explain the topic(s) of each conference or hearing and the need for each professional's participation therein. As has been explained before, it is not K&E's routine practice to have multiple K&E attorneys at conferences and hearings. When multiple professionals participated in a conference or hearing, they did so because: (a) K&E made the conscious decision that it was more advantageous to have multiple professionals participate, rather than relying on information to "flow down" after the conference or hearing had concluded, (b) a particular professional's input was required for certain portions of the conference and, when possible, the professional only attended the relevant portions of the conference or hearing at issue, and/or (c) those individuals brought particular expertise and issue preparation to the conference or hearing, and so their presence was critical. With regard to hearings in particular, since almost all hearings address more than one aspect of the Cases, it is more advantageous to the Debtors and more efficient for preparation purposes if the professional presenting certain matters at the hearing has been intimately involved in those matters.

This reasoning will be further explained below, in the context of each individual questioned conference and hearing.

(a)      October 25, 2007 hearing (Interim Report, Exhibit B, Item (a))

Basta, Bernick, Baer, Esayian, Langenkamp, Sinanyan

The October 25, 2007 hearing was a monthly omnibus hearing. The questioned time entries represent the preparation and hearing attendance time of three K&E attorneys and one legal assistant who attended the hearing in person and two attorneys who attended a portion telephonically. The major topics set for discussion at the hearing were a PI estimation issues status conference and argument on the Debtors' motion for relief from the 10/31/07 discovery cutoff date for deposing certain PI lawyers as fact witnesses. Also up at this hearing were the Tersigni Consulting matter, the Scotts Company matter, a status update on the resolved and unresolved PD claims, and the New Jersey Department of Environmental Protection matter.

Lead Case attorney David Bernick argued the Debtors' motion for relief from the 10/31/07 discovery cutoff date for deposing certain lawyers as fact witnesses. He also conducted the PI status conference portion of the hearing. PI Litigation team attorney Amanda Basta assisted David in preparing for argument relating to attorney discovery. Ms. Basta is the associate responsible for PI attorney discovery, which has been extensive in this case. Lisa Esayian is the litigation partner in charge of PD claims. Because an issue had been raised several days before the hearing regarding certain PD claims, Lisa attended (telephonically) only the portion of the hearing related to: (a) those specific PD claims, and (b) the status of the remaining PD claims. Restructuring Partner Lori Sinanyan is in charge of the non-asbestos claims process in the Cases, and telephonically attended

the portion of the hearing related to the 18th omnibus non-asbestos claims objection.  In addition, she assisted with preparing the Debtors' objection to Prete's motion to lift the automatic stay, and listened to that portion of the hearing as well.  PI team legal assistant Travis Langenkamp prepared exhibits for both the PI estimation status conference and the law firm discovery argument.  He was available prior to and during the hearing to provide David with additional information and materials needed.  Finally, as Restructuring Partner in charge of the Bankruptcy aspects of the case, I attended the hearing in order to conduct the non-PI and non-PD portions of the hearing.  In terms of preparation time, I assisted with creating the hearing agenda, and oversaw the preparation of needed hearing materials.

> (b)    November 6, 2007 conference (Interim Report, Exhibit B, Item (b))

> Gonsoulin/Mace/Ackerman/Koch/Farrell/King/Lancaster/Harding/McMillin/
> Urgenson

Since the criminal case was stayed, pending appeal, the full joint defense has drastically limited the frequency of its conferences.  However, the full team has continued to schedule one or two in-person meetings a year in order to remain coordinated and efficient in its preparation for trial.  The November 6th date was one of those meetings, and was held to educate all of the necessary parties about key defense themes and evidence.  Each participating K&E attorney attended only those portions most relevant to his or her particular assignments at trial.  The specific roles of each participating K&E attorney are as follows:  Laurence Urgenson: senior partner with overall responsibility for the criminal defense case; Barbara Harding, lead partner with overall responsibility for the science defense; Scott McMillin, partner responsible, under Barbara Harding, for development of the science defense; Walter Lancaster, partner responsible for defense of the obstruction of justice counts; Tyler Mace, lead associate on the criminal defense case; John Gonsoulin, senior associate responsible for development of internal client witness testimony at trial; Wade Ackerman, mid-level associate responsible, under Walter Lancaster, for defense of the obstruction of justice counts; Rebecca Koch, mid-level associate responsible for expert witness testimony; Peter Farrell, junior associate on the team, with particular responsibility for assisting in development of the opening statement; and first-year associate Patrick King, the most junior associate on the team responsible for legal research on various case issues.

> (c)    December 17, 2007 conference (Interim Report, Exhibit B, Item (c))

> Urgenson/McMillin/Harding/Karan/Mace/Stansbury/Ahern

These December 17th time entries represent two separate conferences.  The first was a joint defense telephone conference held in order to coordinate the expert work being conducted during the stay of proceedings in the criminal case and to assess the current status of the expert reports.  Each K&E team member participating in the joint defense call participated in his or her criminal defense team capacity described under Paragraph 2(b) above.  In addition, Alex Karan attended in his role as litigation partner charged with reviewing the legal issues still pending after the appeal.  Ellen Ahern attended in her role as litigation partner charged with developing expert testimony issues

in the science case.  Also, in addition to their ongoing respective criminal defense team roles, each conference attendee had primary responsibility for one or more of the criminal experts' work being discussed at this conference.

Walter Lancaster's December 17th time entry was not for the joint defense call, but instead for a witness interview session he was conducting in Denver, Colorado on that date.

**RESPONSE EXHIBIT "C"**

Car service Expenses (¶ 5)

In the Initial Report, you identify five car service expenses with respect to which you request more information.  Each expense is set forth below, followed by the requested information.

For each trip, please indicate the departure and destination points, the approximate length of the trip, and whether the trip was one-way or round trip.

| (1) | 8/12/2007 | 293.34 | Metropolitan Limousine - Transportation to/from airport, Emily Malloy, 08/12/2007 |
|-----|-----------|--------|------------------------------------------------------------------------------------|
| (2) | 8/13/2007 | 415.19 | Metropolitan Limousine - Transportation to/from airport, Emily Malloy, 08/13/2007 |

The first two questioned car service expenses together constitute a round trip ride between O'Hare Airport and legal assistant Emily Malloy's Valparaiso, Indiana home.  Emily is a Chicago-based PI litigation team legal assistant who traveled to Washington, D.C. on August 12th, 2007 to attend meetings on expert reports on personal injury matters.  Her charges each way include the car service's per mile rate for both the 68 miles between Valparaiso and O'Hare, and the miles from and to the car service garage before and after the trip (as well as taxes, tolls and tip which are standard charges for trips of this length).  It is the significant distance from Valparaiso to O'Hare that accounts for the large charges.  However, using a car service is standard approved procedure at K & E for travel of this sort by its professionals and one of the only feasible and efficient ways for Ms. Malloy to get to/from O'Hare.

| (3) | 9/30/2007 | 415.79 | Red Top Cab Company - Transportation to/from airport, B. Stansbury, 9/09/07 |
|-----|-----------|--------|-----------------------------------------------------------------------------|

This expense was erroneously categorized in the Fee Application as an airport roundtrip car service charge for Brian Stansbury, when in fact it was the charge for a car from Brian's Arlington, VA home to Richmond, VA for a meeting with a PI expert witness.  It is 105 miles between Arlington and Richmond.  Using a car service for this trip permitted Mr. Stansbury to work during the trip in preparation for and as follow up to the meeting.

| (4) | 11/19/2007 | 935.71 | Theodore Freedman, Cabfare, New York, NY, 11/19/07 (Client Conference), Boston Coach fare from Columbia, MD to Manhattan, NY |
|-----|------------|--------|------------------------------------------------------------------------------------------------------------------------------|

This is a car service charge for a ride for two people from Columbia, Maryland to New York, New

York.  It is 209 miles between the two cities.  After a meeting at the Debtors' Columbia headquarters, Ted shared the car with fellow meeting attendee Pamela Zilly, of The Blackstone Group.  The meeting lasted several hours longer than expected and ended after the time the last Amtrak train left from Baltimore to New York.  Ted and Pam determined that the car service charge would be less costly than paying for a cab ride to a hotel, 2 hotel rooms, a cab ride the next morning to the train station, and 2 Baltimore - NY train tickets the next day.

| (5) | 11/29/2007 | 385.59 | Janet Baer, Transportation To/From Airport, Philadelphia, PA, 11/29/07 (Hearing) |
|-----|------------|--------|--------------------------------------------------------|

This expense was not for car service from Philadelphia as mistakenly indicated.  It was for car service from the Debtors' Columbia, Maryland headquarters to Dulles Airport, a 49-mile trip.  It was in conjunction with the same November 19, 2007 Columbia, MD meeting Ted and Pam attended as outlined above.  I had made arrangements for a car to pick me up at Grace's headquarters in Columbia and return me to the Baltimore Airport after the meeting.  However, as outlined above, the meeting lasted several hours later than expected.  By that time, the last flight from Baltimore to Chicago had left and my only alternative was to have a car take me to Dulles airport in Washington, D.C.  Because the meeting lasted several hours longer than expected and it was unknown which airport I would be returning to, I had to have the car wait for me at Grace's headquarters, which are somewhat remote, and I then incurred significant waiting time charges.