## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF CAPLIN & DRYSDALE,
### CHARTERED, FOR THE TWENTY-SEVENTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Caplin & Drysdale, Chartered, for the Twenty-Seventh Interim Period</u> (the "Application").

### BACKGROUND

1.      Caplin & Drysdale, Chartered ("Caplin & Drysdale"), was retained as national counsel to the Official Committee of Asbestos Personal Injury Claimants.  In the Application, Caplin & Drysdale seeks approval of fees totaling $1,873,452.50 and expenses totaling $430,540.03 for its services from October 1, 2007 through December 31, 2007 (the "Application Period").

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2006, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330, Issued

January 30, 1996 (the "U.S. Trustee Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served an initial report on Caplin & Drysdale, and received a response from Caplin & Drysdale, portions of which response are quoted herein.

## DISCUSSION

3.      In our initial report, we noted the following time entries which appeared to include non-working travel:

| | | | | | |
|---|---|---|---|---|---|
| 10/8/07 | BSB | $630.00 | 6.8 | $4,284.00 | …….; travel to/from Raleigh, NC (6.8). |
| 10/9/07 | JPW | $475.00 | 3.5 | $1,662.50 | …….; travel to DC (3.5). |
| 10/22/07 | BSB | $630.00 | 4.5 | $2,835.00 | …….; travel to Atlanta, GA (4.5). |
| 10/23/07 | JPW | $475.00 | 4.7 | $2,232.50 | …….; travel to Chicago (4.7). |
| 11/6/07 | JPW | $475.00 | 3.0 | $1,425.00 | …….; travel to Washington, D.C. (3.0). |
| 11/19/07 | JPW | $475.00 | 1.9 | $902.50 | Travel to Trenton, NJ (1.9); …… |
| 11/20/07 | JPW | $475.00 | 4.0 | $1,900.00 | …….; travel to Washington, D.C. (4.0). |
| | | | 28.4 | $15,241.50 | |

Pursuant to Local Rule 2016-2(d)(viii): "Travel time during which no work is performed shall be separately described and may be billed at no more than 50% of regular hourly rates."  Thus, we asked Caplin & Drysdale whether the required 50% discount had been applied to these time entries.  Caplin & Drysdale responded as follows:

> You inquire in paragraph 3 of the Initial Report regarding non-working travel time entries.  These services should have been billed at one-half of each attorney's respective hourly rate.  Therefore, Caplin & Drysdale will accept a voluntary reduction regarding these time entries.

We appreciate Caplin & Drysdale's response and recommend a reduction of $7,620.75 in fees.

4.      In our initial report, we noted the following meal charges for which more information was needed:

| | | |
|---|---|---|
| ALV; Travel expenses to Philadelphia for deposition of Arthur Frank on 9/28 for meals | 10/2/07 | $62.82* |
| BSB; Travel expenses to Seattle for attendance at deposition for meals | 10/3/07 | $63.59* |
| High Noon; Luncheon on 10/4 for David Smith deposition | 10/9/07 | $175.58 |
| JPW; Travel expenses to NYC for Rust deposition on 10/8-9 for meals | 10/10/07 | $99.83* |
| Columbia Catering; WBS client luncheon on 10/9 | 10/10/07 | $157.45 |
| Lawsons Gourmet; EI client luncheon on 10/9 | 10/10/07 | $163.14 |
| Conference meals - Lunch w/Reps of ACC, PD Comm & Futures Rep and Counsel on Oct 4 | 10/10/07 | $408.72 |
| High Noon; PVNL client luncheon on 10/12 | 10/16/07 | $126.08 |
| Lawsons Gourmet; JPW client luncheon on 10/16 | 10/18/07 | $101.68 |
| High Noon; WBS deposition luncheon on 10/29 | 10/29/07 | $340.58 |
| Columbia Catering; BSB deposition lunch on 10/26/07 | 10/29/07 | $168.45 |
| Lawsons Gourmet; NDF client deposition luncheon on 10/30 | 10/30/07 | $446.86 |
| Petty Cash Meal expenses for PVN on travel to San Francisco on 10/28-30 | 11/5/07 | $94.68* |
| High Noon; Deposition luncheon on 11/2 | 11/5/07 | $287.78 |
| Columbia Catering; BSB deposition luncheon on 11/5 | 11/7/07 | $168.45 |
| High Noon NDF client luncheon on 11/14 | 11/15/07 | $208.58 |
| NDF; Travel expenses to NY for Dunbar deposition on 11/4-6 for snack and dinners (one with JPW, DBS, WBS) | 11/9/07 | $323.97 |

In response to our inquiry, Caplin & Drysdale provided additional information concerning these charges, which information we have included as Response Exhibit "A."  It appears to us the one can dine satisfactorily for $15 for breakfast, $25 for lunch, and $50 for dinner.  Based upon the foregoing guidelines, we accept Caplin & Drysdale's response, except with respect to the following charges:

| | |
|---|---|
| $19.14 for breakfast for one | Reduce by $4.14 |
| $157.45 for lunch for six | Reduce by $7.45 |
| $408.72 for lunch for 14 | Reduce by $58.72 |
| $101.68 for lunch for four | Reduce by $1.68 |
| $94.68 for lunch for two | Reduce by $44.68 |
| $255.50 for dinner for four | Reduce by $55.50 |

$54.52 for dinner for one                    Reduce by $4.52

Thus, for all items in this paragraph, we recommend a reduction of $176.69 in expenses.

     5.      In our initial report, we noted the following meal expenses which appeared excessive:

| | | | |
|---|---|---|---|
| 2164483 | Meals Related to Travel - JPW Dinner with NDF at Giambelli 50th Restaurant | 11/27/07 | $180.64 |
| 2160262 | NDF; Travel expenses to California to defend Mark Peterson deposition on 11/1 for meals (DNF dinner on 10/31 135.17, DNF and M. Peterson dinner $504.86 on 11/1) | 11/7/07 | $710.37 |
| 2172352 | ALV; Late night dinner on 12/5, 12/6, 12/7 ($217.19) plus printing PDF files | 12/11/07 | $217.19 |

In response to our inquiry, Caplin & Drysdale provided the following information concerning these

charges:

| Date of Entry | Item Billed | Total | Explanation/ Additional Information |
|---|---|---|---|
| 11/27/07 | James P. Wehner dinner with Nathan D. Finch | $180.64 | Total charge should be $100.00 |
| 11/07/07 | Nathan D. Finch dinner on 10/31/07 ($135.17);  Nathan D. Finch dinner with Mark Peterson on 11/01/07 ($504.86) | $710.37 | Total charge should be $75.00 for Mr. Finch's dinner on 10/31/07 and $150.00 for dinner on 11/01/07 |
| 12/05/07- 12/07/07 | Adam Van Grack dinners (3) | $217.19 | 12/05/07: $94.30 (3 people) 12/06/07: $59.29 (5 people) 12/07/07: $63.60 (4 people) |

We accept Caplin & Drysdale's response with respect to the dinner charge of $217.19.  However,

based upon the guidelines cited in the foregoing paragraph, we recommend the remaining charges

be reduced as follows:

| | |
|---|---|
| $180.64 for dinner for two | Reduce by $80.64 |
| $135.17 for dinner for one | Reduce by $85.17 |
| $504.86 for dinner for two | Reduce by $404.86 |

Thus, for all items in this paragraph, we recommend a reduction of $570.67 in expenses.

      6.     In our initial report, we noted the following hotel charges for which more information

was needed:

| 2147636 | BSB; Travel expenses to Seattle for attendance at deposition for Renaissance Seattle hotel | 10/3/07 | $791.86 |
|---|---|---|---|
| 2149145 | JPW; Travel expenses to NYC for Rust deposition on 10/8-9 for Omni Berkshire Place hotel | 10/10/07 | $637.37 |
| 2161127 | DBS; Travel expenses to NY for Dunbar deposition on 11/6 for Hotel Elysee | 11/9/07 | $544.03 |
| 2161129 | WBS; Travel expenses to NY for Dunbar deposition on 11/6 for Hotel Elysee | 11/9/07 | $546.03 |
| 2161161 | JPW; Travel expenses to NYC for depositions on 11/5-6 for The Waldorf hotel | 11/12/07 | $830.00 |
| 2163022 | WBS; Travel expenses to Chicago for Heckman deposition on 11/12 for Fairmont Hotel | 11/15/07 | $420.06 |
| 2164485 | Travel Expenses - Hotel Charges - JPW Hotel Elysee re NJ Deposition on 11/19 | 11/27/07 | $394.64 |

In response to our inquiry, Caplin & Drysdale provided the following information concerning these

charges:

| Timekeeper | Date | No. Nights | Total | Room charge | Taxes |
|---|---|---|---|---|---|
| Bernard S. Bailor | 10/03/07 | 2 | $791.86 | $395.00 | $61.62 |
| | | | | $290.00 | $45.24 |
| James P. Wehner | 10/08/07 | 1 | $637.37 | $559.00 | $78.27 |
| David B. Smith | 11/06/07 | 1 | $544.03 | $475.00 | $69.03 |

| | | | | | |
|---|---|---|---|---|---|
| Walter B. Slocombe | 11/06/07 | 1 | $546.03 | $475.00 | $71.03 |
| James P. Wehner | 11/06/07 | 1 | $830.00 | $729.00 | $101.00 |
| Walter B. Slocombe | 11/12/07 | 1 | $420.06 | $364.00 | $56.06 |
| James P. Wehner | 11/19/07 | 1 | $394.64 | $345.00 | $49.64 |

It appears to us that one can ordinarily obtain satisfactory lodging in New York for $350 per night, plus taxes, and in most other locales, for $250.00 per night, plus taxes. Based upon the foregoing guidelines, we accept Caplin & Drysdale's response with respect to Mr. Wehner's charge of $345.00 for one night in New York, NY. However, with respect to the remaining charges, we recommend the following reductions:

| | |
|---|---|
| $395.00 for one night in Seattle | Reduce by $145.00 |
| $290.00 for one night in Seattle | Reduce by $40.00 |
| $559.00 for one night in New York, NY | Reduce by $209.00 |
| $475.00 for one night in New York, NY | Reduce by $125.00 |
| $475.00 for one night in New York, NY | Reduce by $125.00 |
| $729.00 for one night in New York, NY | Reduce by $379.00 |
| $364.00 for one night in Chicago | Reduce by $114.00 |

Thus, for all items in this paragraph, we recommend a reduction of $1,137.00 in expenses.

      7.      In our initial report, we noted the following hotel charges which appeared excessive:

| | | |
|---|---|---|
| 11/7/07 | 369.50 | NDF; Travel expenses to California to defend Mark Peterson deposition on 11/1 for Four Seasons hotel (room $340.00, Tax $29.50) |
| 11/9/07 | 546.03 | NDF; Travel expenses to NY for Dunbar deposition on 11/4-6 for Hotel Elysee (room $475.00, taxes $71.03) |

In light of the hotel guidelines cited in the foregoing paragraph, we asked Caplin & Drysdale to

explain why reimbursement for the foregoing charges should not be reduced.  Caplin & Drysdale

responded as follows:

> You inquire in paragraph 7 of the Initial Report regarding certain additional hotel expenses.  Mr. Finch traveled to California and stayed at the Four Seasons Hotel in California on November 1, 2007, to defend Mark Peterson's deposition, which took place in a conference room at that hotel.  We believe that time billed by Mr. Finch in traveling to and from the Four Seasons for the deposition, even at one-half of his usual hourly rates, plus transportation expenses, would have far exceeded what the Fee Auditor indicates is the $100.00 excessive cost of Mr. Finch's hotel room . . .
>
> In addition, the $475.00 cost of Mr. Finch's hotel room in New York City on November 5, 2007 was that determined by the Hotel Elysee, the hotel at which Caplin & Drysdale attorneys generally stay, at corporate rates, when traveling overnight to Caplin & Drysdale's New York offices.  Hotel rates vary seasonally and the amount charged on this occasion was typical of those charged by full-service business hotels located within walking distance of Caplin & Drysdale's New York office.
>
> Further, the amounts charged to the Debtors' estates for attorney travel time and, when applicable, transportation costs, would far exceed the additional costs incurred by Mr. Finch and other Caplin & Drysdale attorneys who choose hotels close to Caplin & Drysdale's New York City offices.  For example, were Mr. Finch to have spent a mere 30 minutes traveling each way to and from the Penn Station area, where hotels are less costly, to Caplin & Drysdale's offices at 375 Park Avenue, the cost to the Debtors' estates at one-half of Mr. Finch's usual hourly rate of $610.00 would have been $305.00.  In contrast, the room charge (less taxes) for Mr. Finch's room at the Hotel Elysee on the night at issue was $475.00, or $125.00 over the Fee Auditor's requested cap.  Thus, the cost to the Debtors was reduced by $180.00 due to Mr. Finch's having stayed at the Elysee, which is located within five minutes of Caplin & Drysdale's offices.  Clearly, when the cost of travel time is considered, the hotel costs charged by Mr. Finch and other Caplin & Drysdale attorneys for rooms at the Elysee are reasonable and should be recompensed.

Despite the convenient location of these hotels, we do not believe the response satisfies Caplin &

Drysdale's burden of proving that these were the least expensive hotels within walking distance of

the meetings and deposition in question.  Nor do we believe the response carries Caplin &

Drysdale's burden of proving that staying at one of these hotels would have been less expensive than

staying at a nearby hotel and taking a taxi or hotel shuttle to the meeting or deposition location. Thus, we are not persuaded that we should deviate from our hotel guidelines, and we recommend the following reductions:

$340.00 for one night in Westlake Village, CA     Reduce by $90.00

$475.00 for one night in New York, NY     Reduce by $125.00

Thus, for all items in this paragraph, we recommend a reduction of $215.00 in expenses.

       8.      In our initial report, we noted the following ground transportation charges for which more information was needed:

| | | | |
|---|---|---|---|
| 2154687 | BostonCoach car service for NDF to 50 Massachusetts Avenue on 9/19 | 10/30/07 | $107.64 |
| 2154688 | BostonCoach car service for NDF from home to the office on 9/26 | 10/30/07 | $107.64 |
| 2154689 | BostonCoach car service for ALV in Philadelphia on 9/28 | 10/30/07 | $101.01 |
| 2154690 | BostonCoach car service for NDF from home to 655 15th Street on 10/3 | 10/30/07 | $134.62 |
| 2171733 | BostonCoach car service for NDF to LaGuardia airport in NYC on 10/22 | 12/6/07 | $264.80 |
| 2171734 | BostonCoach car service for NDF to Pittsburgh, PA on 10/25 | 12/6/07 | $1,175.77 |
| 2171735 | BostonCoach car service from NDF from home to office on 10/30 | 12/6/07 | $107.64 |
| 2171736 | BostonCoach car service for NDF in Los Angeles on 10/31 | 12/6/07 | $530.66 |
| 2171737 | BostonCoach car service for NDF in Charleston, SC on 11/2 | 12/6/07 | $176.31 |
| 2171738 | BostonCoach car service for NDF in NYC on 11/5 | 12/6/07 | $337.73 |
| 2171739 | BostonCoach car service for NDF to office on 11/14 | 12/6/07 | $107.64 |

In response to our inquiry, Caplin & Drysdale provided additional information concerning these charges, which information is included as Response Exhibit "B." We appreciate Caplin & Drysdale's willingness to reduce many of these charges, and in conjunction with Caplin & Drysdale's response, we recommend a reduction of $842.50. However, we feel the following charges also warrant reductions:

| | | | |
|---|---|---|---|
| 10/22/07 (Mr. Finch) | $264.80 | 5314 Carvel Rd., Bethesda, MD to DCA, 10.2 miles; LaGuardia to 375 Park Ave., NYC 8.6 miles (both round trip) | Mr. Finch was transporting boxes of documents for use at depositions. He did not have a car at his disposal. Car service was more reliable than a taxi to arrive at airports on time. |
| 10/25/07 (Mr. Finch) | $1,175.77 | One Thomas Circle N.W., Washington, DC, to 600 Grant St., Pittsburgh, 245 miles | Car service comparable to airfare between Pittsburgh and DCA and more reliable. |
| 11/05/07 (Mr. Finch) | $337.73 | Orrick office in D.C. to train; expense greater than usual because deposition ran over and car had to wait. | Car service more reliable than taxi to arrive at meeting and train station on time. |
| 10/31/07 (Mr. Finch) | $530.66 | LAX to office of Dr. Mark Peterson and back to hotel (50 miles)[1] | Car service more reliable than taxi to travel in Los Angeles. |

**Charges for Washington, DC, New York, and Pittsburgh:**  While a car service is undoubtedly the most convenient mode of transportation, the response does not establish the necessity of using a car service for the first three trips listed above. With respect to the charges of $264.80 and $337.73, Caplin & Drysdale has stated that a car service was more reliable than a taxi and that Mr. Finch needed assistance with the boxes he was transporting. We are unaware of any problem in obtaining reliable taxi service to and from airports in Washington, DC, and New York City, and know of no reason why Mr. Finch would have been unable to obtain assistance from the cab driver in loading and unloading the boxes. With respect to the $264.80 charge, it appears to us

---

[1]In response to a follow-up inquiry, Caplin & Drysdale advised that the $530.66 charge is comprised of the following:

> $112.00 for trip from Bethesda to Washington/National Airport on 10/31/07;
> $226.00 from LAX to Thousand Oaks, CA; and
> $192.66 from Westlake Village, CA to LAX.

that a round trip taxi ride from Mr. Finch's home in Bethesda, Maryland, to Reagan International would have cost less than $70.00, and that a round trip taxi ride from LaGuardia to Caplin & Drysdale's New York offices would have cost less than $70.00. This includes extra fees and/or tips for loading boxes. Thus, we recommend a reduction of $124.80. With respect to the $337.73 charge, it appears to us that a round trip taxi ride from Orrick's offices to Union Station would have cost less than $40.00, including tip.[2] Thus, we recommend a reduction of $297.73. Finally, with respect to the $1,175.77 charge for car service from Caplin & Drysdale's offices to Pittsburgh,[3] Caplin & Drysdale has responded that the charge is comparable to what it would cost to fly from Washington, DC, to Pittsburgh.[4] Assuming *arguendo* that was the case, the response still fails to establish that taking a car service for this trip was the most economical alternative for the estate. Since Mr. Finch chose to travel by car, he could have rented a car and driven to Pittsburgh for a fraction of what it cost to take a car service. There are three rental car agencies within a mile of Caplin & Drysdale's offices from which a mid-size car can be rented for three days for $150.00 or less. Assuming the trip would require $200.00 of gas, the cost increases to $350.00. Thus, for the charge of $1,175.77, we recommend a reduction of $825.77.

**Charge for Los Angeles trip:** We note that of the $530.66 charge, $112.00 was for car

---

[2]We would have given consideration to the wait time cited by Caplin & Drysdale if Orrick's offices were located in a remote area. However, since they are in Washington, DC, approximately two miles from Union Station, the response did not establishe why Mr. Finch could not have had the waiting cab dismissed and another cab called at the conclusion of the deposition.

[3]Caplin & Drysdale subsequently advised that this was a round trip fare.

[4]Though that may be the case now since air fares have risen dramatically in the last few months, it is unclear if that would have been the case in October 2007 when this trip was taken.

service from Mr. Finch's home in Bethesda to Washington (Reagan).  This trip would have cost less than $35.00 by cab, and thus we recommend a reduction of $77.00.  We do not dispute that a shuttle service or car service is typically more economical than a taxi for the trip from LAX to the Thousand Oaks and Westlake Village areas.  However, a charge of $418.66 appears excessive, even for a private shuttle.  It appears to us that one can travel by airport shuttle from LAX to Thousand Oaks and from neighboring Westlake Village back to LAX for less than $300.00, including tip.  Thus, for the $418.66 portion of the charge, we recommend a reduction of $118.66.

Thus, for all items in this paragraph, we recommend a reduction of $2,286.46 in expenses.

9.      In our initial report, we noted the following library-related expenses:

| 2153486 | Amazon Credit Plan; Book "Calculated Risks" ordered for ALV | 10/26/07 | $79.98 |
|---------|-------------------------------------------------------------|----------|--------|
| 2161173 | Business Card; Health Effects Institute; REI Science by JWR | 11/12/07 | $228.76 |
| 2161174 | Business Card; Oriental Trading | 11/12/07 | $146.50 |
| 2172354 | Business Card; Materials and books: Amazon-Asbestos Risk Assessment, Blackwell, ordered by the Library | 12/11/07 | $495.37 |
| 2173348 | The Globe Group; Investigating Education Credentials of a doctor | 12/13/07 | $1,081.70 |

These appeared to be library or publication charges which are classified as noncompensable overhead under Paragraph II.E.7. of the U.S. Trustee Guidelines.  Moreover, it appeared to us that all of these books are of the type that could be used by Caplin & Drysdale for other clients.  Thus, we asked Caplin & Drysdale to explain why these charges should be reimbursed by the W.R. Grace estate.  Caplin & Drysdale responded as follows:

We have reviewed our records and, in response to your query in paragraph 9 of the Initial Report regarding certain library-related expenses, Caplin & Drysdale provides the following additional information:

| **Description** | **Date** | **Amount** | **Additional Information** |
|---|---|---|---|
| "Calculated Risks" | 10/26/07 | $79.98 | Ordered specifically for use in Grace bankruptcy matter |
| "Health Effects Institute: REI Science" | 11/12/07 | $228.76 | Ordered specifically for use in the Grace bankruptcy matter |
| National Technical Information Service ("NTIS") reports (3):<br><br>(1) "Asbestos Contamination of the Air in Public Buildings" (EPA Publication); (2) "Assessing Asbestos Exposure in Public Buildings" (Final Report, EPA); (3) "Assessing Asbestos Exposure in Public Buildings (EPA Publication) | 10/03/07 | $146.50 | This charge was described and dated inaccurately in Caplin & Drysdale's fee application. The purchased items are described herein and were ordered specifically for use in the Grace bankruptcy matter. |
| "Asbestos Risk Assessment," Blackwell | 12/11/07 | $495.37 | $344.63 (2/3) of the cost should have been charged to Grace, 1/3 to another bankruptcy matter. Caplin & Drysdale will therefore accept a $146.50 reduction regarding this charge. |
| "Investigating Education Credentials of a Doctor" | 12/13/07 | $1,081.70 | A credit in this amount will be issued to the Grace estates in the May 2008 monthly fee application. |

We understand Caplin & Drysdale's response and appreciate its willingness to reduce two of these charges. But while Caplin & Drysdale may have been prompted to purchase the remaining publications by a need arising in the W.R. Grace case, the subject matter of these publications clearly indicates they could be used by Caplin & Drysdale for its other asbestos-related cases, and there is no indication that these publications will be used exclusively on the W.R. Grace matter. Thus, it appears to us that all of these publications are noncompensable overhead, as contemplated by

Paragraph II.E.7 of the Guidelines, and we recommend disallowance of same, for a reduction of $2,032.31 in expenses.

<b>CONCLUSION</b>

10.    Thus, we recommend approval of $1,865,831.75 in fees ($1,873,452.50 minus $7,620.75) and $424,121.90 in expenses ($430,540.03 minus $6,418.13) for Caplin & Drysdale's services for the Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
          Warren H. Smith
          Texas State Bar No. 18757050

325 N. St. Paul, Suite 1250
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

<b>CERTIFICATE OF SERVICE</b>

I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 16th day of June, 2008.

_____
          Warren H. Smith

# SERVICE LIST
## Notice Parties

**The Applicant**
Elihu Inselbuch
Rita Tobin
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
David M. Bernick
Janet S. Baer
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
James E. O'Neill
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801

**Counsel to the Official Committee of Personal Injury Claimants**
Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Lockbox 35, Room 2207
Wilmington, DE 19801

## RESPONSE EXHIBIT "A"

| Date of Time Entry | Timekeeper | Amount Charged | No. Att. | Breakdown of Charges By Meal |
|---|---|---|---|---|
| 10/02/07 | Adam Van Grack | $62.82 | 1 | 09/27/07: Dinner: $56.00<br><br>09/28/07: Breakfast: $6.82 |
| 10/03/07 | Bernard S. Bailor | $63.59 | 1 | 09/26/07: Dinner $18.32<br><br>09/27/07: Breakfast $19.14 Lunch $5.80 Dinner $15.68<br><br>09/28/07: Breakfast $4.65 |
| 10/09/07 | David Smith | $175.58 | 9 | Luncheon on 10/04/07 |
| 10/10/07 | James P. Wehner | $99.83 | 1 | 10/08/07 - Dinner $51.40 10/09/07 - Dinner $48.43 |
| 10/10/07 | Walter B. Slocombe | $157.45 | 6 | Luncheon on 10/09/07 (D.C.O.) |
| 10/10/07 | Elihu Inselbuch | $163.14 | 8 | Luncheon on 10/09/07 (N.Y.O.) |
| 10/10/07 | Elihu Inselbuch | $408.72 | 14 | Luncheon on 10/04/07 |
| 10/16/07 | Peter Van N. Lockwood | $126.08 | 6 | Luncheon on 10/12/07 |
| 10/18/07 | James P. Wehner | $101.68 | 4 | Luncheon on 10/16/07 |
| 10/29/07 | Walter B. Slocombe | $340.58 | 20 | Luncheon on 10/29/07 |
| 10/29/07 | Bernard S. Bailor | $168.45 | 10 | Luncheon on 10/26/07 |

| | | | | |
|---|---|---|---|---|
| 10/30/07 | Nathan D. Finch | $446.86 | 18 | Luncheon on 10/30/07 |
| 11/05/07 | Peter Van N. Lockwood | $94.68 | 2 | Luncheon on 10/29/07 |
| 11/05/07 | Deposition Luncheon | $287.78 | 12 | Luncheon 11/02/07 |
| 11/07/07 | Bernard S. Bailor | $168.45 | 10 | Luncheon on 11/05/07 |
| 11/15/07 | Nathan D. Finch | $208.58 | 12 | Luncheon on 11/14/07 |
| 11/09/07 | Nathan D. Finch | $323.97 | 1 | 11/04/07<br>Lunch, $10.95 |
| | | | 4<br>1 | 11/05/07:<br>Dinner:  $255.50<br>Snack:   $3.00 |
| | | | 1 | 11/06/07:<br>Dinner: $54.52 |

**RESPONSE EXHIBIT "B"**

Caplin & Drysdale provides the following information in response to your inquiry in paragraph 8 of the Initial Report regarding certain ground transportation charges for cars taken by Caplin & Drysdale attorneys Nathan D. Finch and Adam VanGrack:

| Date | Departure/Destination | Cost | Explanation |
|---|---|---|---|
| 09/19/2007 (Mr. Finch) | 5314 Carvel Road, Bethesda, MD to Union Station: 5.5 miles | $107.64 | Caplin & Drysdale will provide a credit to the Debtors regarding this charge. |
| 09/26/2007 (Mr. Finch) | 5314 Carvel Road, Bethesda, MD to One Thomas Circle, 5.5 miles (Posner deposition) | $107.64 | Caplin & Drysdale will provide a credit to the Debtors regarding this charge. |
| 09/28/2007 (Mr. VanGrack) | 30th St. Station Philadelphia to 400 Market Street, 2.8 miles (Frank deposition) | $101.01 | Caplin & Drysdale will provide a credit to the Debtors regarding this charge. |
| 10/03/07 (Mr. Finch) | 5314 Carvel Road, Bethesda, MD to Kirkland & Ellis, 655 15th St, NW, 6 miles (Welch deposition) | $134.62 | Caplin & Drysdale will provide a credit to the Debtors regarding this charge. |
| 10/22/07 (Mr. Finch) | 5314 Carvel Rd., Bethesda, MD to DCA, 10.2 miles; LaGuardia to 375 Park Avenue, NYC 8.6 Miles (both round trip) | $264.80 | Mr. Finch was transporting boxes of documents for use at depositions.  He did not have a car at his disposal.  Car service was more reliable than a taxi to arrive at airports on time. |
| 10/25/07 (Mr. Finch) | One Thomas Circle N.W., Washington D.C. to 600 Grant Street, Pittsburgh, 245 miles. | $1,175.77 | Car service comparable to airfare between Pittsburgh and DCA and more reliable. |
| 10/30/07 (Mr. Finch) | 5314 Carvel Road, Bethesda MD to One Thomas Circle, NW D.C. 5.5 miles (Florence Deposition) | $107.64 | Caplin & Drysdale will provide a credit to the Debtors regarding this charge. |
| 10/31/07 (Mr. Finch) | LAX to office of Dr. Mark Peterson and back to hotel (50 miles). | $530.66 | Car service more reliable than taxi to travel in Los Angeles. |

| | | | |
|---|---|---|---|
| 11/02/07 (Mr. Finch) | ERROR: CHARGE WILL BE TRANSFERRED | $176.31 | Credit will be given to Grace estates. |
| 11/05/07 (Mr. Finch) | Orrick office in D.C. to train; expense greater than usual because deposition ran over and car had to wait. | $337.73 | Car service more reliable than taxi to arrive at meeting and train station on time. |
| 11/14/07 (Mr. Finch) | 5314 Carvel Road, Bethesda MD to One Thomas Circle, NW D.C. 5.5 miles (Chambers Deposition) | $107.64 | Caplin & Drysdale will provide a credit to the Debtors regarding this charge. |

In general, Caplin & Drysdale has determined that it is more time-effective, and therefore more economical, to hire car services to transport its lawyers, rather than rely on taxis or public transportation. Caplin & Drysdale attorneys do not rent cars and drive themselves to and from depositions, airports and train terminals so as to save rental and parking fees and so that they may work while in transit. If attorneys did not work while in transit, nonworking time would be billed to the Debtors' estates at one-half the attorney's usual rate. Such costs would constitute additional charges to the estates, since the work that would have been performed while in transit will be performed later, at the attorney's full hourly rate. We have found that, due to the time saved and costs avoided, hiring a car service is usually more cost-effective than either renting cars or taking taxis or public transit.