**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **IN RE:** | ) |
| | ) **Chapter 11** |
| **W.R. GRACE & CO.,** *et al.*, | ) |
| | ) **Case No. 01-01139 (JKF)** |
| **Debtors.** | ) **Jointly Administered** |
| | ) |
| | ) **Objection Deadline: July 3, 2008** |
| | ) **Hearing Date:  July 21, 2008 @ 2:00 p.m. ET** |
| | ) |

**MOTION OF CANADIAN ZONOLITE ATTIC INSULATION CLAIMANTS FOR AN
ORDER TO ESTABLISH A PROTOCOL FOR CROSS-BORDER COMMUNICATION
BETWEEN THE UNITED STATES BANKRUPTCY COURT AND THE CCAA**

COMES NOW, Canadian Zonolite Attic Insulation Claimants ("Canadian ZAI Claimants"), by and through their undersigned counsel, and hereby submit this Motion for An Order to Establish a Protocol for Cross-Border Communications Between the United States Bankruptcy Court, District of Delaware, ("U.S. Court") and the Ontario Superior Court of Justice ("CCAA Court"), (the "Motion").   The Canadian ZAI Claimants request that this Court enter an order establishing a protocol for communication and cooperation between the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, and The Honourable Mr. Justice Geoffrey B. Morawetz, CCAA Court.  In support of this motion, it is asserted as follows:

1.        There is considerable need for the establishment of a protocol (the "Protocol") for direct judge-to-judge communication in this matter.  Specifically, the Canadian ZAI Claimants through appointed Representative Counsel seek disclosure from the Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown") of certain governmental documents and databases within the possession and control of the Crown.  Informal requests to the Crown for the disclosure of these documents and databases have been met with the assertion of Canadian privacy laws by the Crown.  These documents and databases purportedly contain the addresses of those Canadian homes that have been insulated with ZAI ("Canadian ZAI

Databases"). The information contained in the Canadian ZAI Databases is needed to effectuate either the terms of the settlement in principle ("Settlement in Principle") or the terms of a bar date notice program should the settlement not be consummated. In response to numerous requests made by Representative Counsel, the Crown has responded that it needs a court order to release the documents and databases. Furthermore, to the extent that settlement in principle is consummated, the involvement of the CCAA Court will be necessary to implement certain terms of the Settlement in Principle.[1]

2.      The Canadian ZAI Claimants seek the creation of a framework for cross-border communications between the US Court and the CCAA Court. The Protocol will allow for creation of a mechanism that would enable the two proceedings to coordinate and resolve issues affecting both proceedings. Initially, Canadian ZAI Claimants seek the creation of a Protocol for the purpose of creating a framework for the delegation by the U.S. Court to the CCAA Court of certain discovery issues that are distinctly Canadian. Specifically, Representative Counsel seeks the delegation of the aforementioned discovery dispute to the CCAA Court for a determination of the necessity of the disclosure of the Canadian ZAI Databases by the Crown to facilitate either the Settlement in Principle or the terms of a bar date notice program. The Crown has informed Representative Counsel that it will not release the documents or databases unless it is ordered by a Court seized with jurisdiction over the issue. The primary justification for the Crown's recalcitrant position is that Canadian privacy laws prohibit the disclosure of the Canadian ZAI Databases. There has been some informal indication from the Crown that disclosure would be made subject to the entry of an order by the CCAA Court for the production of the documents

---

[1] The Canadian ZAI Claimants have reached a tentative Settlement in Principle with the Debtors concerning the treatment of Canadian ZAI property damage claims. The Crown is also a party to the Settlement in Principle but has not yet garnered the requisite approval of various of its' agencies that must approve the terms. The terms of the Settlement in Principle are confidential.

and databases.  In this instance, communication between the courts regarding delegation of this

discovery dispute is essential.  Purportedly, the Canadian ZAI Databases list the Canadian homes

which have been insulated with vermiculite attic insulation or ZAI.  The need for the disclosure

of the Crown's database and corresponding documents is significant in that the content of the

databases and documents will have a profound impact on the nature and extent of direct notice to

Canadian ZAI claimants.  A framework for communications between this Court and the CCAA

Court is vital to assist both Courts in determining that due process has been afforded the parties

under their respective laws.  Furthermore, the CCAA Court is likely best suited to rule on the

interplay between the need for disclosure of the  Canadian ZAI Databases and Canadian privacy

laws.  Finally, to the extent that the Settlement in Principle fails to be effectuated, the

information contained on the Canadian ZAI Databases will significantly inform the direct notice

provisions of a bar date notice program.

### Background

3.      On April 2, 2001, U.S. Debtors filed voluntary petitions for protection under

Chapter 11 of the United States Bankruptcy Code (The "U.S. Proceedings") and have been

granted a temporary restraining order by this Court providing for certain injunctive relief in

favor of the U.S. Debtors as well as certain other third parties (the "Affiliated Entities").

4.      Two days later Grace Canada, Inc. ("Grace Canada"), a Canadian affiliated entity

of U.S. Debtors, was granted an order (the "Initial CCAA order") pursuant to Section 18.6(4) of

the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice (the "CCAA

Court") which, among other things, provided for a stay of proceedings against the

commencement or continuation of any asbestos-related suits against Grace Canada. ("CCAA

Proceeding") See copy of Order attached as **Exhibit 1**.

5.      On November 14, 2005 as the result of a number of proposed class action proceedings (the "Proposed Class Actions") commenced in Canada against certain of the U.S. Debtors, Grace Canada, Affiliated Entities and other parties including the Crown, the CCAA Court granted an order recognizing the injunctive relief provided for by this Court and giving effect to it in Canada and implementing a limited stay of proceedings with respect to the Crown. See copy of Order attached as **Exhibit 2**.

6.      On November 14, 2005, the CCAA Court also considered a request for an extension of the stay contained in the initial order in light of the Proposed Class Actions. The Honorable Justice Farley indicated that cooperation and coordination between the CCAA Court and the Court was needed, that there had been recognition in the U.S. Bankruptcy Court that Canadian proceedings would be governed by Canadian substantive law, that the insolvency adjudicative proceedings presented an efficient process, but that the extension of the stay not affect the ability of the Plaintiffs in the Proposed Class Actions from returning to the CCAA Court if they felt there was "foot dragging or other elements of prejudice". *See Footnote No. 13 to Exhibit 2.*

7.      In January 2006, Grace Canada made application with the CCAA Court for the appointment of two law firms, Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP, as representative counsel ("Representative Counsel"), in the CCAA Court proceedings on behalf of all Canadian ZAI Claimants.

8.      On February 8, 2006, the CCAA Court entered an order on Grace Canada's application for the appointment of Representative Counsel. As part of that order, Representative Counsel was empowered to, among other things, appear before the U.S. Court in the context of the Chapter 11 cases and to negotiate on behalf of Canadian Claimants with Grace Canada, the

Crown, the U.S. Debtors, the Affiliated Entities and any other person or entity. See copy of

Order attached as **Exhibit 3**.


### Relief Requested

9.      By this motion, the Canadian ZAI Claimants respectfully request entry of an

order approving a framework for Cross-Border Communications, subject to the approval of the

framework by the CCAA Court, in order to ensure the efficient administration of the US Cases

and the CCAA Proceeding.  The Application requests that this Court enter an order establishing

communications protocol between the Honorable Judith K. Fitzgerald, United States Bankruptcy

Judge, and The Honourable Mr. Justice Geoffrey B. Morawetz, CCAA Court.  Canadian ZAI

Claimants seek the creation of a Protocol for the purpose of creating a framework for the

delegation by the U.S. Court to the CCAA Court of certain discovery issues that are distinctly

Canadian.  Specifically, Representative Counsel seeks the delegation of the aforementioned

discovery dispute to the CCAA Court for a determination of the necessity of the disclosure of the

Canadian ZAI Databases by the Crown to facilitate either the Settlement in Principle or the terms

of a bar date notice program

### Basis For Relief

10.      Section 105(a) of the Bankruptcy Code provides that the court may issue any

order, process or judgment that is necessary or appropriate to carry out the provisions of title 11. 11

U.S.C. § 105(a). Other courts, both in this district and in others have authorized programs for the

purpose of establishing a protocol for dealing with cross-border insolvency proceedings. See,

e.g., In re Philip Services(Delaware), Inc., et al., 99-B-02385 (MFW) (Bankr. Del. 1999); In re

Loewen Group International, Inc., 99-1244 (PJW) (Bankr. Del. 1999); In re Livent (U.S.) Inc., et

5

al., 98 B 48312 (AJG) (Bankr. S.D.N.Y. 1998); In re Everfresh Beverages, Inc., 95 B 45405

(BRL) (Bankr. S.D.N.Y. 1995); In re AIOC Corp., 96 B 41895 (TLB) (Bankr. S.D.N.Y. 1996);

In re Solvex Canada Limited, 11-97-14361-MA (Bankr. N.M. 1997).

11.    In addition, the establishment of a Protocol is consistent with the policies of

cooperation and coordination in transnational insolvency proceedings expressed in the

Committee J Cross-Border Insolvency Concordat, as approved by the International Bar

Association's Section on Business Law on September 17, 1995 (the "Concordat") and reprinted

in Anne Nielsen, Mike Sigal and Karen Wagner, The Cross-Border Insolvency Concordat:

Principles to Facilitate the Resolution of International Insolvencies, 70 Am. Bankr. L.J. 533

(Fall, 1996). For example, in support of the Concordat's express goal of "harmonizing cross-

border insolvency proceedings," Principle 4(A) of the Concordat provides that, where there is

more than one plenary forum, "[e]ach forum should coordinate with each other, subject in

appropriate cases to a governance protocol." Id. at 548. Accordingly, the policies and provisions

of the Concordat directly support the approval of a Protocol as an appropriate mechanism to

coordinate the activities in the insolvency proceedings.

12.    Given the complex, transnational nature of the insolvency proceedings, a protocol

is required for the efficient administration of these cases. Such a protocol would govern the

resolution of many of the administrative issues anticipated to arise in coordinating the

proceedings and is necessary to protect the rights of the thousands of creditors and other

interested parties in the United States, Canada and other jurisdictions, as well as the rights of the

Debtors.

13.    In particular, the Protocol is proposed to achieve four core goals: (a) to promote

the orderly and efficient administration of the insolvency proceedings, (b) to harmonize and co-

ordinate activities undertaken in the insolvency proceedings, (c) to implement a framework of general principles to address certain business, administrative and management issues, and (d) to facilitate the fair, open and efficient administration of the insolvency proceedings for the benefit of all of the Debtors, their creditors and other interested parties wherever located.

14.    No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Canadian ZAI Claimants' respectfully request that this Court Establish a Protocol for Cross-Border Communications Between the United States Bankruptcy Court, District of Delaware and the Ontario Superior Court of Justice for the purposes outlined in the motion.

Dated:  June 16, 2008

*/s/Daniel K. Hogan*
Daniel K. Hogan (DE Bar No. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656.7540
Facsimile: (302) 656.7599
E-Mail: dkhogan@dkhogan.com

-and-

**LAUZON BÉLANGER, INC**.
Yves Lauzon
Michel Bélanger
286, rue St-Paul Quest, Bureau 100
Montreal Quebec
Telephone: (514) 844-7403
ylauzon@lauzonbelanger.qc.ca
mbelanger@lauzonbelanger.qc.ca

**SCARFONE HAWKINS LLP**
Matthew G. Moloci
David Thompson
One James Street South, 14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
Canada L8N 3P9
Telephone: (905) 523-1333
moloci@shlaw.ca
thompson@shlaw.ca