THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: July 3, 2008** |
| | ) | **Hearing Date:  July 21, 2008 at 1:00 p.m.** |
| | ) | |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING STIPULATION RESOLVING CLAIMS OF MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY

The Debtors respectfully move this Court (the "Motion") for the entry of an Order

approving the Stipulation attached as <u>Exhibit A</u> hereto resolving the Montana Department of

Environmental Quality's proof of claim nos. 18496 and 15296 for environmental remediation

and operation and maintenance costs of the MDEQ at the Debtors' Libby Asbestos Site[2].  The

Stipulation is an exercise of the Debtors' sound business judgment and is in the best interest of

---

[1]  The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Stipulation.

the Debtors, their estates, and their creditors.  In support of the Motion, the Debtors respectfully
state as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and
1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this
Court under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for this Motion are sections 105 and 363(b) of the
Bankruptcy Code and Bankruptcy Rule 9019.

### Background and Proofs of Claim

3.      On March 26, 2003, MDEQ filed Proof of Claim No. 6100 against the Debtors
with respect to the Libby Site.

4.      On May 20, 2003, MDEQ filed three virtually identical amended Proofs of Claim
against the Debtors with respect to the Libby Site, described as follows:

| Claim No. | Amount | Priority | Basis |
|-----------|--------|----------|-------|
| 15296 | $8,510,022.16 | Unsecured, Non-Priority | Clean-Up Costs |
| 15297 | $8,510,022.16 | Unsecured, Non-Priority | Clean-Up Costs |
| 15298 | $8,510,022.16 | Unsecured, Non-Priority | Clean-Up Costs |

5.      Pursuant to an Order entered on May 24, 2004 [Docket No.5646] this Court
expunged Proof of Claim No. 6100 as duplicated and superseded by Proofs of Claim Nos. 15296,
15297, and 15298.

6.      Pursuant to an Order entered on April 17, 2007 [Docket No. 15218] this Court
approved a stipulation between Debtors and MDEQ resolving certain claims. Specifically, claim
numbers 15297 and 15298 were disallowed and expunged and claim number 15296 remained in
the claims register as outlined in the stipulation attached to the order as Exhibit 1.

2

7.     On November 14, 2007, MDEQ filed an amended Proof of Claim ("MDEQ's Claim") against the Debtors with respect to the Libby Site, described as follows:

| Claim No. | Amount | Priority | Basis |
|-----------|--------|----------|-------|
| 18496 | $55,010,022.16 | Unsecured, Non-Priority | Clean-Up Costs |

## Settlement

8.     To avoid protracted litigation and resolve their liability in connection with MDEQ's Claim at the Libby Site, (which term as used in the Stipulation and in this Motion does not include Operable Unit 3 as defined in the Stipulation), the Debtors and MDEQ have agreed to a settlement of MDEQ's Claim as outlined in the attached Stipulation.

9.     Pursuant to the Stipulation, MDEQ's Claim shall be allowed as a general unsecured, pre-petition, non-priority claim against the chapter 11 estates of the Debtors in the amount of $5,167,000.  Except as to claims relating to Operable Unit 3, which are specifically reserved in the Stipulation, the remaining portions of MDEQ's Claim are resolved.  In addition, MDEQ's Claim No. 15296 shall be disallowed and expunged.

10.     MDEQ shall not be entitled to pre-petition or post-petition interest on MDEQ's Claim allowed by the Stipulation with respect to any period prior to the effective date of a confirmed chapter 11 plan or plans with respect to the Debtors (the "Plan").  MDEQ's Claim shall be paid in the same manner as all other similarly situated general unsecured claims pursuant to the Plan except with respect to the payment of interest as described herein.

3

11.    MDEQ will place and maintain any distributions received by MDEQ on account

of its allowed claim set forth in the Stipulation in a State special revenue fund, as provided for in

§ 17-2-102(1)(b)(i), MCA, to be known as the "Libby Asbestos Site State Cost Account."

MDEQ shall use the funds in this account, together with all interest and earnings thereon, only

for the State's CERCLA cost share requirements including operation and maintenance expenses

or other costs related to asbestos at the Site.

12.    MDEQ agrees that it is forever barred, estopped, and enjoined from asserting any

additional pre-petition or post-petition claims against the Debtors for past, present and future

costs of investigation, remediation, monitoring, and maintenance at the Libby Site (other than

Operable Unit 3) under the Montana Comprehensive Environmental Cleanup and Responsibility

Act, §§ 75-10-701 et seq., MCA, (CECRA) and the Comprehensive Environmental Response,

Compensation and Liability Act, as amended, 42 USC §9601 et seq. (CERCLA).

13.    MDEQ and the State of Montana reserve and the Stipulation is without prejudice

to all rights, claims, and causes of action they have or may in the future have with respect to all

matters not expressly included in the foregoing paragraph 12.

14.    Debtors release and agree not to assert any claims or causes of action against the

State of Montana, including any of its departments, agencies, instrumentalities, contractors or

employees, with respect to the Libby Site, including but not limited to any claims for

reimbursement, contribution, cost recovery or damages under CECRA, CERCLA, or any other

provision of law.  This release does not cover and Debtors expressly reserve all claims relating to

Operable Unit 3.

4

15.     In the event that the Stipulation becomes null and void for any reason, then MDEQ's Claim shall be deemed fully reinstated, subject, however, to Debtor's defenses, counterclaims and offsets, if any, and credits for payments MDEQ has received, if any.  Neither the Stipulation nor its nullification pursuant to its terms shall create a right that does not presently exist for MDEQ or any other party to file additional claims with respect to these matters, nor waive any defense that the Debtors may have against such claims.

16.     The Stipulation shall be subject to a thirty (30) day public comment period, which is taking place concurrent with the filing of this Motion.  MDEQ reserves the right to withdraw or withhold its consent to this Stipulation if the public comments received disclose facts or considerations that indicate that this Stipulation is inappropriate, improper, or inadequate.  The parties request the Court not enter the Order approving the Stipulation until the conclusion of the public comment period and after the State provides the Court with copies of any public comments and its responses thereto.

**Relief Requested**

17.     By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (a) approving the Debtors' execution of the Stipulation; (b) allowing MDEQ Claim No. 18496 as provided in the Stipulation; (c) disallowing and expunging MDEQ Claim No. 15296; (d) granting the Debtors authority to consummate the transactions contemplated in the Stipulation; and (e) granting such other relief as may be appropriate.

**Basis for Relief**

**Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a)**

18.    This Court has the statutory authority to authorize and approve the Stipulation pursuant to Bankruptcy Code sections 105(a) and 363(b) and Bankruptcy Rule 9019.

19.    Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).

20.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...."  11 U.S.C. §363(b)(1).  This Court may authorize the Debtors to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith.  In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by some "articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

21.    A settlement of claims and causes of action by a debtor in possession constitutes a use of the property of the estate.  See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999).  If a settlement is outside the ordinary course of business of the debtor, it requires the approval of the bankruptcy court pursuant to Bankruptcy Code section 363(b).

6

22.      Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citations omitted). Indeed, compromises are favored in bankruptcy since they minimize litigation and expedite the administration of a bankruptcy case. See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., 2006 WL 2842462, at *3 (D. Del. 2006).

23.      Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See Martin, 91 F.3d at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

24.      The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.; see also In re Nutraquest, Inc., 434 F.3d 639, 644-45 (3d Cir. 2006).

7

25.    It is also well settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 296 (citations omitted); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

**Application of Standards for Approval to the Facts of This Case**

**A.    The Settlement Agreement is a Sound Exercise of the Debtors' Business Judgment, Satisfying the Requirements of Section 363(b).**

26.    The Debtors and MDEQ have negotiated in good faith and have used commercially reasonable efforts to arrive at the terms in the Stipulation. The Stipulation prevents the incurrence of significant transaction costs and cost-effectively resolves significant liabilities of the Debtors. Allowing the settlement to proceed efficiently eliminates claims in the amount of over $55 million against the Debtors' estates for the sum of slightly in excess of $5 million. Furthermore, this settlement allows the Debtors to avoid potential additional obligations, such as payment for further future MDEQ administrative costs associated with the Libby Site. Thus, granting this Motion and allowing the settlement to proceed will eliminate the risk of increased costs, and resolve these significant liabilities. Therefore, entry into the Settlement Agreement is within the Debtors' sound business judgment.

8

**B.      The Settlement Agreement is Fair, Reasonable, and in the Best Interests of the Debtors' Estates, Satisfying the Requirements of Bankruptcy Rule 9019.**

27.      The Stipulation described herein was the product of a rigorous negotiation process and falls within the reasonable range of litigation possibilities. The Court's approval of the Stipulation will resolve the MDEQ's claim for current and future remediation and operation and maintenance costs at the Libby Site without forcing potentially complex litigation that could, among other things, require presentation of significant quantities of evidence concerning the Libby Site and projected costs for the past number of years as well as for at least thirty years in the future.

28.      Approval of the Stipulation also benefits the public interest because the settlement will support and will substantially fund the MDEQ's costs associated with the Libby Site. Finally, the Stipulation in conjunction with the Libby Settlement Agreement approved by this Court on June 2, 2008 [Docket No. 18848], provides assurance to the creditors that Debtor's liabilities for response costs associated with the Libby Site are fully addressed and permanently resolved.

## Conclusion

29.      For the reasons stated above, the proposed Stipulation is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest because it is the best settlement attainable given all the facts and circumstances. In the absence of a resolution by settlement, the Debtors will likely incur substantial legal fees and expenses litigating this matter to final judgment. Accordingly, the Debtors have demonstrated a sound business justification and best interest for the execution and consummation of the Stipulation.

9

## Notice

30.     Notice of this Motion has been given to: (i) the office of the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in these Chapter 11 Cases, (v) counsel to the Future Claimants' Representative; (vi) those parties that requested service and notice of papers in accordance with Bankruptcy Rule 2002; and (vii) counsel to the United States and the MDEQ.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

31.     No prior motion or application for the relief requested herein has been made to this or any other court.

32.     The Debtors respectfully request that the hearing on this Motion not be held until the MDEQ informs the Court of any public comment on the Stipulation and of MDEQ's responses to these comments, consistent with the applicable provisions of the Stipulation.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit B hereto, (i) approving the Debtors' execution of the Stipulation attached as Exhibit A hereto, (ii) allowing MDEQ Proof of Claim 18496 in the sums provided for herein and disallowing and expunging MDEQ proof of claim no. 15296;

10

(iii) authorizing the Debtors to consummate the transactions contemplated in the Stipulation, and

(iv) granting such other relief as may be just or proper.

Dated: June 16, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

*James E O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in
Possession

11