IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: July 3, 2008, at 4:00 p.m.**
**Hearing Date: July 21, 2008, at 1:00 p.m.**

# DEBTORS' MOTION FOR AN ORDER AUTHORIZING A SETTLEMENT WITH THE INTERNAL REVENUE SERVICE RELATING TO RESEARCH CREDITS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully move this Court (the "Motion") for entry of an order authorizing the Debtors to (1) settle a federal income tax controversy with the Internal Revenue Service ("IRS") relating to research credits and research and experimentation expenditures claimed for the 1993-1996 taxable years (the "R&E Settlement", attached hereto as Exhibit A); and (2) take such further action as is necessary to complete the R&E Settlement. The Court should grant this Motion because the R&E Settlement gives Grace a significant portion of the research credits in

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

dispute and would result in a refund of tax in the amount of approximately $6.3 million plus interest.

In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157@)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion are sections 105 and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Background

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. On September 3, 2002, Grace filed a Protest (the "2002 Protest", attached hereto as Exhibit B) to the various Forms 5701 -Notice of Proposed Adjustments identified in a Revenue Agent's Report ("RAR") dated August 2, 2002, and in a corrected RAR dated August 30, 2002. These RARs were issued to Grace with respect to taxable years ending December 31, 1993 through December 31, 1996.

5. On February 14, 2005, the Debtors filed a motion with this Court, which is attached hereto as Exhibit C, for an order: (i) authorizing the Debtors to enter into a settlement agreement with the IRS with respect to certain issues relating to the taxable years ending December 31, 1993 through December 31, 1996 (the "1993-1996 Settlement Agreement"), and (ii) directing the Debtors to pay to the IRS no later than April 15, 2005 the Indemnified Taxes owing under the 1993-1996 Settlement Agreement. The 1993-1996 Settlement Agreement resolved all IRS audit issues for that tax period except for issues relating to research credits and research and experimentation expenditures. On April 12, 2005, this Court issued the requested order, attached as Exhibit D.

6. On April 14, 2005, Grace made a tax payment in the amount of $90,000,000 (ninety million dollars) under the 1993-1996 Settlement Agreement. The transmittal letter and acknowledged receipt of the payment is attached as Exhibit E.

7. On May 19, 2005, the Debtors received a corrected Revenue Agent's Report the ("1993-1996 CRAR") with respect to the 1993-96 taxable years incorporating all agreed issues, attached hereto as Exhibit F.

8. In a protest dated June 17, 2005 (the "2005 Protest"), the Debtors agreed with all changes as set forth in the 1993-1996 CRAR except with respect to a matter relating to research credits and research and experimentation expenditures. The 2005 Protest is attached hereto as Exhibit G.

## Research Credit And Research
## Expenditures Controversy

9. Internal Revenue Code ("IRC") section 41 provides for a credit for increasing research activities. The credit is calculated as the excess of qualifying research expenses (as defined by the section) over a computed base amount.

10. The tax controversy involved the 1993-95 tax years and concerned the determination of Grace's base amount used in the calculation of the credit. The components of the base amount specifically at issue were the calculation of Grace's base period research expenses, historical gross receipts and how those items should be adjusted for dispositions and acquisitions that occurred before or during the current credit year (the "Acquisition and Divestments Issue").

11. The IRS asserted in its Notice of Proposed Adjustment 114 ("NOPA 114", attached hereto as Exhibit H), that Grace should have adjusted its fixed base percentage for the numerous acquisitions and dispositions that were made by the company during the period 1984 through 1995. With respect to divested businesses, a taxpayer who furnishes an acquiring company with all of the information necessary to apply IRC section 41 research credits must make adjustments to its historical base period used in calculating the current R&E credit. However, if this information is not provided to an acquiring company (generally the acquiring company makes requests for this information), then the taxpayer is not required to adjust its historical base period calculation for the R&E calculation. Grace stated in its 2002 Protest that it did not provide (and had no requests for) such information to the buyers of its divested businesses (approximately 60 or more businesses prior to and in the 1995 tax year), and, as a

result, Grace did not adjust its base period calculations for its research credits and research and experimentation expenditures.

12. There was no tax controversy concerning research expenditures and credits for the 1996 tax year.

13. For the three tax years at issue, Grace originally claimed a total research credit of $10,796,275 on its tax returns. For the same period time, the IRS Examiner asserted that Grace was entitled to research credits totaling $3,781,332.

14. As a result of further negotiations, Grace and the IRS reached the R&E Settlement.

### The R&E Settlement

15. Under the terms of the R&E Settlement, Grace conceded the following issues: (a) as it relates to the base year research expenses, Grace agreed with the IRS adjustment disallowing certain research expenses in the 1984-86 audit cycle and the 1987-89 audit cycle (see page ten of Exhibit H); (b) as it relates to base year gross receipts, Grace agreed with the IRS adjustments for the 1988 acquisition of National Medical Care & Subsidiaries (see page 16 of Exhibit H); and (c) Grace agreed with the IRS that with respect to the Davison businesses there would be a 10% increase in base period expenses.

16. Under the terms of the R&E Settlement, the IRS conceded 75% of the Acquisition and Divestment Issue.

17.  The net effect of this R&E Settlement is that Grace has an unfavorable adjustment of approximately $730,000 for all affected tax years, thereby reducing Grace's refund from approximately $7 million to $6.285 million.

| Tax Year (Amounts in 000s) | 1993 | 1994 | 1995 | Total |
|---|---|---|---|---|
| Research Credits per 1120 | 4,480 | 3,489 | 2,827 | 10,796 |
| Research Credits per IRS Examiner | 1,955 | 613 | 1,214 | 3,781 |
| Proposed Adjustment | (2,525) | (2,876) | (1,614) | (7,015) |
| | | | | |
| Research Credits per 1120 | 4,480 | 3,489 | 2,827 | 10,796 |
| R&E Allowed per R&E Settlement | 4,100 | 3,139 | 2,827 | 10,066 |
| R&E Settlement | (380) | (350) | (0) | (730) |
| Total Refund | | | | 6,285 |

18.  After this Court authorizes Grace to enter into the R&E Settlement, the IRS will then forward the R&E Settlement to the Joint Committee on Taxation of the U. S. Congress ("Joint Committee") for final review and approval. The Settlement Agreement will take effect on the date the Joint Committee completes its review without objection.

19.  The R&E Settlement was reached because the parties recognized that the Acquisition and Divestment Issue would be difficult to litigate. Twelve or more years have passed since these divestments occurred and locating former employees of Grace and the acquiring companies with knowledge of the transaction would be very difficult. The R&E Settlement results in Grace retaining a majority of the disputed credits.

20.  If the R&E Settlement is not approved and the Debtors are forced to litigate this matter, the proceedings likely will be protracted, the cost of defending the Debtors' position will be expensive, and a favorable outcome cannot be assured.

### The Refund

21.     As stated above, on April 14, 2005, Grace made a tax payment in the amount of $90,000,000 (ninety million dollars) for the 1993-1996 Settlement Agreement. The amount of the payment was an estimation of amounts due under the 1993-1996 R&E Settlement Agreement for tax and interest due. Based on the R&E Settlement and prior tax payments, Grace would be now entitled to a refund of $6,284,714 plus interest.

### Relief Requested

22.     By this Motion, the Debtors seek an order authorizing the Debtors to (i) execute the R&E Settlement, (ii) implement the R&E Settlement upon its approval by the Joint Committee as long as such settlement is substantially similar to the R&E Settlement and, (iii) perform any and all other acts that are necessary or useful to implement the R&E Settlement.

### Statutory Authority

23.     The R&E Settlement is in the best interests of the Debtors and their creditors and should be approved by the Bankruptcy Court pursuant to Fed. R. Bankr. P. 9019, which authorizes this Court to approve a settlement entered into by a debtor. The decision whether to accept or reject a compromise lies within the sound business judgment of the Debtors. In re Neshaminy Office Bldn. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986). Approval of a compromise R&E Settlement is appropriate if it is in the "best interests of the estate." Id.

24.     The settlement need not be the best that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979). In making its determination, a court should not substitute its own judgment for that of the debtor. Neshaminy Office, 62 B.R. at 803. Moreover,

it is not necessary to conduct a "mini trial" of the facts or the merits underlying the dispute. In re Grant Broadcasting, 71 B.R. 390, 396 (E.D. Pa. 1987); see also In re A & C Properties, 784 F.2d 1377, 1384 (9th Cir.). Rather, the court need only consider those facts that are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement. Penn Central, 596 F.2d at 1114; see also In re Energy Cooperative, Inc., 886 F.2d 921, 924-25 (7th Cir. 1989).

25.     The Debtors submit that the R&E Settlement is in the best interests of the Debtors' estates and their creditors because the Debtors are permitted to claim the vast majority of the disputed tax credits and because it is the best settlement attainable given all the facts and circumstances. The Debtors and the IRS have been negotiating the terms of the settlement for at least six years. As previously stated, there are hazards of litigation and, therefore, a favorable outcome cannot be assured. In addition, in the absence of a resolution by the R&E Settlement, the Debtors will likely incur substantial legal fees and expenses litigating this case to final judgment. In light of the foregoing, it is in the best interests of the Debtors' estate to accept the R&E Settlement, thereby avoiding a lengthy and costly litigation whose outcome is uncertain.

## Notice

26.     Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) the Department of Justice, (iii) the Internal Revenue Service, (iv) counsel to the debtor in possession lenders, (v) counsel to each official committee appointed by the United States Trustee and the Future Claimant's Representative, and (vi) those parties that requested

papers under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to (a) execute the R&E Settlement, (b) implement the R&E Settlement upon its approval by the Joint Committee as long as such settlement is substantially similar to the R&E Settlement, (c) perform any and all other acts that are necessary or useful to implement the R&E Settlement, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: June 16, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Todd F. Maynes, P.C.
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000
    and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for Debtors and Debtors in Possession