**Exhibit C**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

Objection Deadline: March 4, 2005
Hearing Date: March 21, 2005 at 12:00 p.m.

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS
TO ENTER INTO A SETTLEMENT AGREEMENT WITH THE INTERNAL
REVENUE SERVICE WITH RESPECT TO CERTAIN TAX CLAIMS ARISING
IN THE DEBTORS' 1993-1996 TAXABLE YEARS AND DIRECTING
THE DEBTORS TO PAY: (1) ALL INDEMNIFIED TAXES DUE PURSUANT
TO SUCH AGREEMENT AND (2) ALL STATE INDEMNIFIED TAXES DUE
FOR THE DEBTORS' 1990-1992 TAXABLE YEARS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by their undersigned counsel, respectfully move this Court (the "Motion") for the entry of an order: (i) authorizing the Debtors to enter into a settlement agreement with the Internal Revenue Service ("IRS") with respect to certain issues relating to the Debtors' taxable years ending December 31, 1993 through December 31, 1996 (the "1993-1996 Settlement Agreement"), and

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

91100-001\DOCS_DE:105716.1

(ii) directing the Debtors to pay to the IRS no later than April 15, 2005, and to pay to applicable state tax authorities no later than six months after the Debtors have received revised revenue agent reports from the IRS (i) all "Indemnified Taxes" (as defined herein) owing under the 1993-1996 Settlement Agreement (the "1993-1996 Settlement Agreement Indemnified Taxes") and (ii) all Indemnified Taxes relating to state adjustments reflecting the resolution of the Federal audit for the January 1, 1990 through December 31, 1992 (the "1990-1992 State Indemnified Taxes").

The reasons that this Motion should be granted are compelling. First, the 1993-1996 Settlement Agreement is a favorable one for the Debtors and brings to an end a number of significant unresolved tax issues. Second, entering into the 1993-1996 Settlement Agreement and paying the resulting tax liability will cut off the running of interest at the IRS's high interest rates and thereby save the Debtors several million dollars per year. And third, payment of these taxes when due is required under a prior settlement agreement that was approved by this Court.

In support of this Motion, the Debtors respectfully submit as follows:

### Jurisdiction

3.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.5. The statutory bases for the relief requested herein are sections 363 and 507 of title 11 of the United States Bankruptcy Code (as amended from time to time, the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules").

2

## Background

4. On April 2, 2001, the Debtors filed their voluntary petitions for relief (collectively, the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for administrative purposes only, and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

## Summary of Argument

5. Since 1997 the IRS has been conducting an examination of the consolidated Federal tax returns that included the Debtors for the 1993-1996 tax periods. Pursuant first to pre-bankruptcy tax sharing agreements, and more recently pursuant to a Court order implementing the settlement of the Fresenius Medical Care Holdings, Inc. ("Fresenius") fraudulent conveyance litigation (the "Fresenius Agreement," defined herein), the Debtors have had sole authority to act for the consolidated group of taxpayers with respect to the IRS examination as well as comparable state taxes.[2] Under the Fresenius Agreement, the Debtors are obligated to pay "Indemnified Taxes as such taxes become due and payable." Similarly, under the aforementioned Court order implementing the Fresenius Agreement, to the extent the Debtors have agreed to settle any tax liability for the 1993-1996 tax periods, the Debtors are authorized "to pay promptly and in full" any such taxes.

6. The Debtors and the IRS are now concluding the examination of the 1993-1996 tax periods (the "Tax Audit"). The Debtors have determined that it is in the best interests of the Estates and their creditors to settle numerous issues that are a part of the examination. Because

---

[2] During the period beginning with April 2, 2001 through the date of the aforementioned Court order, Fresenius Medical Care Holdings, Inc. and Sealed Air Corporation had extensive participation rights in such tax examinations.

3

the Debtors are required to pay such taxes when due under the prior Court order, and because the Debtors can avoid incurring additional obligations of the Estates if they pay such taxes, the Debtors now seek an order that both authorizes settlement and directs the Debtors to pay such Federal and related state taxes. As is explained more fully below, such an order not only conforms to the requirements of the Fresenius Agreement, but it also will save the Debtors' between $3.68 million and $6.25 million annually and will resolve all IRS audit issues for the 1993-1996 Tax Audit except for a single issue with respect to which the Debtors have filed a protest requesting IRS administrative review.

## Estimated Settlement Amounts

7. The chart below sets forth Debtors' estimates of the 1993-1996 Settlement Agreement Indemnified Taxes due upon entering into the 1993-1996 Settlement Agreement and the 1990-1992 State Indemnified Taxes due upon resolution of the 1990-1992 Federal audit as explained herein:

| Estimate of 1993-1996 Settlement Agreement Indemnified Taxes and 1990-1992 State Indemnified Taxes | |
|---|---:|
| **1993-1996 Settlement Agreement Indemnified Taxes** | |
| Federal Income Tax | 73.2 |
| Interest | 74.0 |
| Total | 147.2 |
| | |
| Tax Payments | (43.2) |
| Estimated Federal Income Tax and Interest Owed | 104.0 |
| Estimated State Income Tax and Interest Owed | 5.5 |
| Total 1993-1996 Settlement Agreement Indemnified Taxes and Interest | 109.5 |
| | |
| **1990-1992 State Indemnified Taxes and Interest** | |
| Total State Indemnified Taxes and Interest | 13.0 |
| | |
| Estimated Total Indemnified Tax and Interest | 122.5 |
| In addition, the COLI settlement resulted in preservation of approximately $198.5 million in net operating losses for the Debtors. Interest for Federal taxes has been calculated through March 31, 2005 and Interest for State taxes has been calculated through December 31, 2005. | |

*(a)   Corporate Owned Life Insurance Policies ("<u>COLI</u>")*

8.   On January 10, 2005, the Debtors received the corrected Revenue Agent's Reports (the "<u>CRARs</u>") from the IRS for Debtors' taxable years ending December 31, 1993 through December 31, 1996. The CRARs are attached as <u>Exhibit A</u>. The most significant contested issue in the CRARs concerns COLI policies. Specifically, COLI represents approximately $31 million of the approximately $73 million of estimated Federal taxes plus interest payable for the 1993-1996 tax period and approximately $8.5 million out of the approximately $18.5 million of the estimated state taxes payable for the 1990-1996 tax periods. On October 13, 2004, this Court entered an order (attached as <u>Exhibit B</u>) authorizing the Debtors to enter into a settlement agreement with the IRS in connection with interest deductions claimed with respect to COLI policies (the "<u>COLI Settlement</u>") and to pay any related taxes when due in accordance with the "<u>Fresenius Agreement</u>" (defined below). Accordingly, on January 20, 2005, the Debtors, Fresenius Medical Care Holdings, Inc. ("<u>Fresenius</u>"), Sealed Air Corporation ("<u>Sealed Air</u>") and the IRS entered into a COLI Closing Agreement on Final Determination (the "<u>COLI Closing Agreement</u>") consistent with the COLI Settlement. The COLI Closing Agreement is attached as <u>Exhibit C</u> and the two previously filed Motions concerning the COLI policies, (the "<u>2002 COLI Motion</u>" and the "<u>2004 COLI Motion</u>") are attached as <u>Exhibits D</u> and <u>E</u>, respectively. As Debtors have explained previously to this Court, the Debtors believe that the COLI Closing Agreement is a favorable resolution of a complex tax issue.

9.   The CRARs were issued prior to the execution of the COLI Closing Agreement and, therefore, propose 100% disallowance of COLI related interest deductions. The COLI Closing Agreement is a final determination of tax liabilities with respect to the COLI interest deductions and supercedes the CRARs. The IRS will amend the CRARs to reflect the terms of the COLI Closing Agreement, which are incorporated into Debtors estimate of 1993-1996

5

Settlement Agreement Indemnified Taxes set forth above. The Debtors reserve the right to contest any discrepancies or issues that may arise when the amended CRARs are received.

10. As of the date of the filing of this Motion, the IRS has not assessed the Debtors for any taxes due as a consequence of the COLI Closing Agreement or other issues that are included in the CRARs. However, as further explained herein, the Debtors are requesting that this Court direct the Debtors to pay all 1993-1996 Settlement Agreement Indemnified Taxes and all 1990-1992 State Indemnified Taxes.

*(b)    Other Issues*

11. The Debtors have come to agreement with the IRS on many issues raised in the Tax Audit. As is common in large corporate IRS audits, the Debtors agreed to numerous tax adjustments proposed by the IRS that reflected conformity with agreed IRS adjustments for tax years prior to the Tax Audit (the "Rollover Adjustments"). Debtors also agreed to certain IRS proposed adjustments based on inadvertent errors made by Debtors in the preparation of the tax returns subject to the Tax Audit. As previously stated, the COLI tax liability constitutes approximately $31 million of the approximately $73 million in total estimated Federal taxes due assuming the settlement of all but one issue (described below) relating to the 1993-1996 Federal audit. Subject to this Court's approval, the Debtors are in agreement with the remaining $42 million of proposed tax assessments, which, for the most part, represent (i) Rollover Adjustments from the 1990-1992 taxable years totaling approximately $28 million in Federal tax, plus interest, and (ii) inadvertent errors totaling approximately $12 million in tax, plus interest. The remainder totaling approximately $2 million in tax, plus interest, constitutes miscellaneous negotiated issues with respect to which the Debtors believe they have obtained the best settlement attainable.

12. As previously stated, there is one substantive audit issue that Debtors and the IRS could not reach agreement on and with respect to which the Debtors filed a protest with the IRS on February 9, 2005 (the "2005 Protest"). The 2005 Protest is attached as Exhibit F. The matter under contest concerns the IRS proposed disallowance of certain research credits and research and experimentation expenditures claimed by Debtors on their tax returns for the 1993 through 1996 taxable years representing an amount in controversy of approximately $7 million in Federal tax plus interest. The Debtors filed a Protest with respect to this issue on September 3, 2002 ("2002 Protest"), a copy of which is attached as Exhibit G. The 2005 Protest incorporated the 2002 Protest and constitutes a protest to the proposed disallowance of these items. The Debtors have requested that this matter be referred for review by IRS Appeals and have requested a conference with said Appeals Office.

13. With the exception of the matter referenced above that is the subject of the 2005 Protest, the Debtors are seeking approval from this Court to enter into the 1993-1996 Settlement Agreement to settle all Federal tax issues for the 1993-1996 tax years. The Debtors believe that this settlement is in the best interests of the Debtors' Estates and represents the most favorable terms available. Outside of COLI which represents approximately $31 million in tax plus accrued interest, $40 million of the remaining estimated approximately $42 million in Federal tax owing under the 1993-1996 Settlement Agreement (or approximately 95%) consist of Rollover Adjustments or inadvertent errors that the Debtors do not have a reasonable basis to contest. With respect to the remaining $2 million in tax plus interest attributable to miscellaneous issues, the Debtors believe they have negotiated the best settlement attainable. Accordingly, entering into the 1993-1996 Settlement Agreement resolves the vast majority of tax

7

issues arising in the 1993-1996 tax years and closes those years with respect to all but the substantive matter that is the subject of the 2005 Protest.

### 1990-1992 State Taxes

14. The COLI Closing Agreement resolved the only remaining Federal tax issue in controversy with respect to the Debtors' 1990-1992 Federal tax audit. With the resolution of the Federal 1990-1992 Federal tax audit, Debtors have determined that approximately $13 million of state taxes and interest due constitute Indemnified Taxes, as defined below, and Debtors seek this Court's approval to make payment of the approximately $13 million in 1990-1992 State Indemnified Taxes.

### Direction to Pay 1993-1996 Settlement Agreement Taxes

*(a)    Fresenius and Sealer Air Several Liability*

15. Treasury regulations permit the IRS to seek payment of Federal income tax and interest owed by a consolidated group from any entity that joined in the filing of a consolidated return for the taxable year at issue. See Treas. Reg. § 1.1502-6(a). Pursuant to this Treasury Regulation, the IRS may seek payment of a substantial portion of such taxes from Fresenius and Sealed Air which are currently unrelated entities, but were members of the Debtors' consolidated group for Federal income tax purposes during the taxable years at issue. Similar rules may apply in many states. Fresenius was a member for the 1993 taxable year through September 28, 1996. Sealed Air was a member for the 1993 taxable year through December 31, 1996. This issue is discussed in substantial detail in the 2002 COLI Motion (paragraphs 18-24 of Exhibit D).

16. As a result of a corporate reorganization, the Debtors and Fresenius entered into a Tax Sharing and Indemnification Agreement (the "TSIA") on September 27, 1996, pursuant to which, among other things, the Debtors are obligated to indemnify Fresenius for certain Debtor-

8

related Federal and state tax claims relating to the tax years ending on or before September 28, 1996 (e.g., the Federal consolidated tax return of Fresenius for the tax year ending December 31, 1996).

*(b)      Fresenius Agreement and Indemnified Taxes*

17.     On February 6, 2003, the Debtors entered into a Settlement Agreement and Release of Claims (the "Fresenius Agreement"), which is attached at Exhibit H. For the most part, the Fresenius Agreement supercedes the TSIA as set forth in Section 3.01 of the Fresenius Agreement.

18.     Under the Fresenius Agreement and subject to certain preconditions, Fresenius agreed to pay, within five business days after the Settlement Effective Date (defined below) $115 million as directed by this Court for the benefit of the Debtors' Estates (the "Fresenius Payment"). The "Settlement Effective Date" is the later of (a) the effective date of the Debtors' plan of reorganization or (b) the satisfaction or waiver of all preconditions to the Fresenius Payment. One precondition to the Fresenius Payment is that the Fresenius Group be released from all Grace-Related Claims (as defined in the Fresenius Agreement), including all Indemnified Taxes. "Indemnified Taxes" include all taxes (including accrued interest and penalties thereon) of the Debtors with respect to any tax period ending on or before December 31, 1996.

19.     All of the Federal and state taxes (including interest) owing pursuant to the 1993-1996 Settlement Agreement qualify as Indemnified Taxes under the Fresenius Agreement. Because the taxes owing under the 1993-1996 Settlement Agreement include taxes relating to the carryback of certain tax attributes arising in the short taxable period beginning September 29, 1996 through December 31, 1996 (the "1996 Short Year") and carried back to the 1993 through

9

September 28, 1996 taxable periods, the taxes attributable to the 1996 Short Year are also 1993-1996 Settlement Agreement Indemnified Taxes. In addition, approximately $13 million of estimated state taxes (including interest) for the 1990-1992-tax period would be included in Indemnified Taxes (defined above as 1990-1992 State Indemnified Taxes).

20. The Fresenius Agreement gives W. R. Grace & Co.-Conn. ("Grace-Conn.") the sole authority to act with respect to Indemnified Taxes. However, under Section 3.03(B) of the Fresenius Agreement, none of the Debtors may voluntarily agree to the payment, assessment or other resolution of any Indemnified Taxes prior to the Settlement Effective Date, unless (a) the Debtors have obtained authorization from this Court to pay in full any such Indemnified Taxes pursuant to a Final Determination or (b) Fresenius has consented in writing to such agreement by the Debtors. Further, pursuant to Paragraph 2(iii) of the Order of District Judge Wolin approving the Fresenius Agreement (attached as Exhibit I), the Debtors are authorized to make any payment of Indemnified Taxes in connection with any settlement of taxes.

21. Therefore, in accordance with the Fresenius Agreement, Debtors request this Court to direct them to pay to the IRS and applicable state tax authorities all 1993-1996 Settlement Agreement Indemnified Taxes and all 1990-1992 State Indemnified Taxes. Debtors submit that directing them to pay such Indemnified Taxes is in the best interests of their Estates and their creditors for several reasons. First, payment of such Indemnified Taxes complies with the Fresenius Agreement and COLI Closing Agreement that were approved by this Court. Second, such payment will reduce interest expense with respect to such Indemnified Taxes. Currently, interest is accruing at the Federal penalty large corporate underpayment rate (the "Hot Interest Rate") of 7%. Whereas the interest rate charged under the Debtor-in-Possession ("DIP") facility of the Debtors is 2% over the London Interbank Offered Rate ("LIBOR") or

10

approximately 4% from July 1, 2004 through December 31, 2004. In addition, the Debtors earned approximately 1.9% on cash deposits during that same period. Nonpayment of such Indemnified Taxes results in approximately a 3% point increase in interest expense comparing the Hot Interest Rate with the DIP rate and approximately a 5.1% increase in expense when comparing the Hot Interest Rate to the percentage earned on cash deposits. Eliminating the Hot Interest Rate would, therefore, save the Debtors' Estates at least $3.68 million annually and as much as $6.25 million annually in interest expense. Third, entering into the 1993-1996 Settlement Agreement resolves all but one substantive matter that is the subject of the 2005 Protest and closes the 1993-1996 tax years for all other issues (excluding the review of carryback refund claims).

22. If the Debtors are not directed to pay the Indemnified Taxes and the Federal government seeks payment from Fresenius resulting in Fresenius' payment of the Indemnified Taxes, the Debtors are unconditionally obligated to repay such amount to Fresenius, with interest calculated from the date of payment at the Hot Interest Rate. If not repaid prior to the Settlement Effective Date, the Indemnified Taxes, plus accrued interest, will either be an Allowed Administrative Claim or will be subject to setoff against the Fresenius Payment (see Settlement Agreement, Section 3.07 and 3.08). As stated above, over the same accrual period, the DIP rate has averaged approximately 4% and the amount earned by the Debtors on cash deposits has been approximately 1.9%. This yields an approximate 3% point increase in interest expense comparing the Hot Interest Rate to the DIP rate and a 5.1% increase in interest expense comparing the Hot Interest Rate to the percentage earned on cash deposits. In the alternative, if Fresenius were to decide not to settle the case but to continue to contest the tax claims that are the subject of the 1993-1996 Settlement Agreement, the result would likely be increased interest,

legal and other expenses the payment of which would ultimately be the responsibility of the Debtors even though the vast majority of the tax issues were either resolved by the COLI Closing Agreement or are nondiscretionary items that the Debtors do not have a reasonable basis to contest. Accordingly, the Debtors believe that the 1993-1996 Settlement Agreement currently before this Court is the best settlement attainable.

### Relief Requested

23.  By this Motion, the Debtors seek authority pursuant to sections 363(b) and 507 of the Bankruptcy Code and Bankruptcy Rule 9019(a) to enter into the 1993-1996 Settlement Agreement and request that this Court direct the Debtors to pay to the IRS no later than April 15, 2005, and to pay to applicable state tax authorities no later than six months after the Debtors have received revised revenue agent reports all 1993-1996 Settlement Agreement Indemnified Taxes and all 1990-1992 State Indemnified Taxes.

### Basis for Relief

24.  The Debtors respectfully submit that entering into the 1993-1996 Settlement Agreement is in the best interests of their Estates and their creditors and should be approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019, which authorizes this Court to approve a compromise settlement entered into by a debtor. Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy. See Fogel v. Zell, 221 F.3d 955, 960 (7th Cir. 2000); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy case, '[c]ompromises are favored in bankruptcy.'") (quoting 9 Collier on Bankruptcy 9019.03[1] (15th Ed. 1993)). Various courts have endorsed the use of Bankruptcy Rule 9019 to resolve disputes. See, e.g., In re Miller, 148 B.R. 510, 516 (Bankr. N.D. Ill. 1992); In re Patel, 43 B.R. 500, 504 (N.D. Ill. 1982); see also Bartel v. Bar Harbour Airways, Inc., 196 B.R. 268 (S.D.N.Y. 1996); In re

12

Foundation for New Era Philanthropy, Case No. 95-13729B, 1996 Bankr. LEXIS 1892 (Bankr. E.D. Pa. Aug. 21, 1996); In re Check Reporting Service, Inc., 137 B.R. 653 (Bankr. W.D. Mich. 1992).

25. Whether to accept or reject a compromise lies within the sound discretion of the Bankruptcy Court. In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986). Approval of a compromise settlement is appropriate if it is in the "best interests of the estate." Id.; see also In re Griffin Trading Company, 270 B.R. 883, 903 (Bankr. N.D. Ill. 2001), aff'd, 270 B.R. 905 (N.D. Ill. 2001) (citing In re American Reserve Corp., 841 F.2d 159, 161 (7th Cir. 1987)). More specifically, "[t]his determination requires a comparison of the settlement's terms with the litigation's probable costs and probable benefits." In re Miller, 148 B.R. 510, 516 (Bankr. N.D. Ill. 1992) (internal citation omitted).

26. In determining whether a compromise settlement is in the best interests of a debtor's estate, courts in the Third Circuit have considered the following four factors:

   the probability of success in the litigation;

   the difficulties, if any, to be encountered in the matter of collection;

   the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

   the paramount interest of the creditors.

Neshaminy Office, 62 B.R. at 803; see also In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd, 8 F.3d 812 (3d Cir. 1993); In re Grant Broadcasting of Philadelphia, Inc., 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987).

27. The settlement need not be the best that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." In re Penn Central Transp. Co.,

596 F.2d 1102, 1114 (3d Cir. 1979). In making its determination, a court should not substitute its own judgment for that of the debtor. Neshaminy Office, 62 B.R. at 803. Moreover, it is not necessary for the court to conduct a "mini trial" of the facts or the merits underlying the dispute. Grant Broadcasting, 71 B.R. at 396; see also In re A & C Properties, 784 F.2d 1377, 1384 (9th Cir.), cert. denied, 479 U.S. 854 (1986). Rather, the court need only consider those facts that are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement. Penn Central, 596 F.2d at 1114; see also In re Energy Cooperative, Inc., 886 F.2d 921, 924-25 (7th Cir. 1989).

28. The Debtors have reviewed the various tax claims giving rise to the 1993-1996 Settlement Agreement and have determined that litigating these claims would not be an efficient use of the Debtors' monetary resources and personnel. The Debtors submit that the 1993-1996 Settlement Agreement is in the best interest of the Debtors' Estates and their creditors because the Debtors believe it is the best settlement attainable for the 1993-1996 Federal Tax Audit covering all but the one substantive issue currently being contested in the 2005 Protest.

29. The Debtors respectfully submit that directing them to pay to the IRS no later than April 15, 2005 and to pay to applicable state tax authorities no later than six months after the Debtors have received revised revenue agent reports from the IRS the 1993-1996 Settlement Agreement Indemnified Taxes and the 1990-1992 State Indemnified Taxes is in the best interests of their Estates and their creditors and should be approved by the Bankruptcy Court pursuant to section 363(b) of the Bankruptcy Code for the reasons set forth above. The Debtors submit that such payment complies with the Fresenius Agreement that was approved by this Court and that such payment will reduce interest expense with respect to such Indemnified Taxes. In addition, payment of such Indemnified Taxes also brings resolution to the vast majority of the tax claims

14

currently in controversy for the 1993-1996 Federal Tax Audit and closes those tax periods with respect to all tax claims other than those claims related to the substantive issue that is the subject of the 2005 Protest (excluding the review of carryback refund claims).

### Notice

30. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor-in-possession lenders, (iii) counsel to each official committee appointed by the United States Trustee and (iv) those parties that requested papers under Bankruptcy Rule 2002.

### No Prior Request

31. No prior motion for the relief requested herein has been made to this or any other Court. The Debtors submit that no further notice or a hearing is necessary for this Court to enter an order granting the relief requested by this Motion.

WHEREFORE, the Debtors respectfully request that the Court (i) authorize the Debtors to enter into the 1993-1996 Settlement Agreement, as defined above, with the IRS, (ii) direct the Debtors to pay to the IRS no later than April 15, 2005 and to pay to applicable state tax authorities no later than six months after the Debtors have received revised revenue agent reports the 1993-1996 Settlement Agreement Indemnified Taxes and the 1990-1992 State Indemnified Taxes, and (iii) grant such other and further relief as the Court deems just and proper.

Dated: February 14, 2005

       KIRKLAND & ELLIS LLP
       James H.M. Sprayregen, P.C.
       Janet S. Baer
       Todd F. Maynes
       James W. Kapp III
       Samuel L. Blatnick
       200 East Randolph Drive
       Chicago, Illinois 60601
       Telephone: (312) 861-2000
       Facsimile: (312) 861-2200

       and

       PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

       _____
       Laura Davis Jones (Bar No. 2436)
       David W. Carickhoff, Jr. (Bar No. 3715)
       919 North Market Street, 16th Floor
       P.O. Box 8705
       Wilmington, DE 19899-8705 (Courier 19801)
       Telephone: (302) 652-4100
       Facsimile: (302) 652-4400

       Co-Counsel for the Debtors and Debtors in Possession