**Exhibit F**

| | |
|---|---|
| **Internal Revenue Service** | **Department of the Treasury** |

Date: May 19, 2005

Taxpayer Identification Number:
13-3461988
Form:
1120
Tax Period(s) Ended and Deficiency Amount(s):
12/31/93  10,634,625
12/31/94  37,498,668
12/31/95  15,454,053
12/31/96  13,722,408

Fresenius Medical Care Holdings, Inc.
c/o Ms. Elyse Filon, POA
W. R. Grace & Co.
5400 Broken Sound Blvd., NW
Boca Raton, FL  33487

Person to Contact:
Fritz Vilma, Team Manager
James Fierle, Team Coordinator
Contact Telephone Number:
954-423-7030 (Vilma); 954-423-7055 (Fierle)
Employee Identification Number:
65-02898 (Vilma); 65-02115 (Fierle)
Last Date to Respond to this Letter:
June 20, 2005

Dear Ms. Filon:

We have enclosed an examination report showing proposed changes to your tax for the period(s) shown above. Please read the report, and tell us whether you agree or disagree with the changes by the date shown above. (This report may not reflect the results of later examinations of partnerships, "S" Corporations, trusts, etc., in which you may have an interest. Changes to those accounts could also affect your tax.)

**If you agree with the proposed changes...**

1. Sign and date the enclosed agreement form. If you filed a joint return, both taxpayers must sign the form.

2. Return the signed agreement form to us.

3. Enclose payment for tax, interest and any penalties due. Make your check or money order payable to the **United States Treasury**. You can call the person identified above to determine the total amount due as of the date you intend to make payment.

4. After we receive your signed agreement form, we will close your case.

If you pay the full amount due now, you will limit the amount of interest and penalties charged to your account. If you agree with our findings, but can only pay part of the bill, please call the person identified above to discuss different payment options. We may ask you to complete a collection information statement to determine your payment options, such as paying in installments. You can also write to us or visit your nearest IRS office to explain your circumstances. If you don't enclose payment for the additional tax, interest, and any penalties, we will bill you for the unpaid amounts.

Letter 950 (DO) (Rev. 9-2000)
Catalog Number 40390D

If you are a "C" Corporation, Section 6621 (c) of the Internal Revenue Code provides that an interest rate 2% higher than the standard rate of interest will be charged on deficiencies of $100,000 or more.

**If you don't agree with the proposed changes...**

1. You may request a meeting or telephone conference with the supervisor of the person identified in the heading of this letter. If you still don't agree after the meeting or telephone conference, you can:

2. Request a conference with our Appeals Office. If the total proposed change to your tax is:

   - $25,000 or less for *each* referenced tax period, send us a letter requesting consideration by Appeals. Indicate the issues you don't agree with and the reasons why you don't agree. If you don't want to write a separate letter, you can complete the Statement of Disputed Issues at the end of this letter and return it to us.

   - More than $25,000 for *any* referenced tax period; you must submit a formal protest.

The requirements for filing a formal protest are explained in the enclosed Publication 3498, *The Examination Process*. Publication 3498 also includes information on your *Rights as a Taxpayer* and the *IRS Collection Process*.

If you request a conference with our Appeals Office, an Appeals Officer will call you (if necessary) for an appointment to take a fresh look at your case. The Appeals Office is an independent office and most disputes considered by the Appeals Office are resolved informally and promptly. By requesting a conference with our Appeals Office you may avoid court costs (such as the Tax Court $60 filing fee), resolve the matter sooner, and/or prevent interest and any penalties from increasing on your account.

If you decide to bypass the Appeals Office and petition the Tax Court directly, your case will usually be sent to an Appeals Office first to try to resolve the issue. Certain procedures and rights in court (for example, the burden of proof and potential recovery of litigation costs) depend on you fully participating in the administrative consideration of your case, including consideration by the IRS Appeals Office.

If you don't reach an agreement with our Appeals Office or if you don't respond to this letter, we will send you another letter that will tell you how to obtain Tax Court Review of your case.

You must mail your signed agreement form, completed Statement of Disputed Issues, or a formal protest to us by the response date shown in the heading of this letter. If you decide to request a conference with the examiner's supervisor, your request should also be made by the response date indicated.

MAIL RESPONSES TO:     **Internal Revenue Service**
Attn: Fritz Vilma
   IRS, Stop 4714, Rm. 343
   7850 SW 6th Court
   Plantation, FL  33324

**Letter 950 (DO) (Rev. 9-2000)**
Catalog Number 40390D

If you have any questions, please contact the person identified in the heading of this letter. We will be glad to discuss your options with you.

Sincerely yours,

Larry L. Barnes
Director of Field Operations, LMSB:HMT

Enclosures:
~~Copy of this letter~~
Examination Report
Agreement Form
Publication 3498  (REV. 11-2004)
~~Envelope~~

**Letter 950 (DO) (Rev. 9-2000)**
Catalog Number 40390D

## STATEMENT OF DISPUTED ISSUES

☐ THE PROPOSED CHANGE IS $25,000 or less for each of the REFERENCED TAX PERIOD(S).

Issue(s) I Disagree With:                              Reasons for Disagreement:

_____                    _____
_____                    _____
_____                    _____
_____                    _____
_____                    _____
_____                    _____
_____                    _____
_____                    _____
_____                    _____

(if more space is needed, attach a separate sheet)


_____                    _____
Signature                                      Date

Letter 950 (DO) (Rev. 9-2000)
Catalog Number 40390D

| Substitute for Form 4549-A | Department of the Treasury - Internal Revenue Service INCOME TAX EXAMINATION CHANGES | | Return Form No. 1120 |
|---|---|---|---|

| Name and Address of Taxpayer<br>FRESENIUS NATIONAL MEDICAL CARE<br>HOLDINGS, INC. AFFILIATED GROUP<br>C/O ELYSE FILON, POA,W.R.GRACE & CO.<br>5400 BROKEN SOUND BLVD., NW<br>BOCA RATON      FL 33487 | S.S. or E.I. Number     13-3461988 | | Filing Status   Corporate |
|---|---|---|---|
| | Person With Whom Examination Changes Were Discussed | Name and Title<br>ELYSE NAPOLI FILON | |

| 1. Adjustments to Income | Year: 199312 | Year: 199412 | Year: 199512 |
|---|---|---|---|
| A. Total Adjustments (See FORM 4549-B)<br>B.<br>C.<br>D.<br>E.<br>F.<br>G. | (56,417,842.00) | (65,309,383.00) | 67,685,740.00 |
| 2. Total Adjustments | (56,417,842.00) | (65,309,383.00) | 67,685,740.00 |
| 3. ~~Adjusted Gross or~~ Taxable Income Shown on Return ~~or as Previously Adjusted~~ | 495,697,035.00 | 411,692,503.00 | 176,237,166.00 |
| 4. Corrected ~~Adjusted Gross or~~ Taxable Income | 439,279,193.00 | 346,383,120.00 | 243,922,906.00 |
| 5. Tax | 153,747,718.00 | 121,234,092.00 | 85,373,017.00 |
| 6. Alternative Tax, If Applicable | 0.00 | 0.00 | 0.00 |
| 7. Corrected Tax Liability (Lesser of line 5 or 6) | 153,747,718.00 | 121,234,092.00 | 85,373,017.00 |
| 8. Less         a. | | | |
| Credits    b. Total Credits (See attached schedule) | 125,494,775.00 | 42,614,836.00 | 51,926,429.00 |
| (Specify)  c. | | | |
| 9. Balance (Line 7 less total of lines 8a through 8c) | 28,252,943.00 | 78,619,256.00 | 33,446,588.00 |
| 10.           a. | | | |
|            b. Other Taxes (See attached schedule) | 585,388.00 | 548,356.00 | 360,418.00 |
| Plus       c. | | | |
| 11. Total Corrected Income Tax Liability (Line 9 plus total of lines 10a through 10c) | 28,838,331.00 | 79,167,612.00 | 33,807,006.00 |
| 12. Total Tax ~~Shown on Return or as~~ Previously Adjusted | 18,203,706.00 | 41,582,196.00 | 17,859,740.00 |
| 13. Adjustment to:<br>    A.<br>    B. | | | |
| 14. Deficiency-Increase in Tax or (Overassessment-Decrease in Tax) (Line 11 adjusted by Line 12) | 10,634,625.00 | 37,585,416 [handwritten]<br>37,585,416.00 | 15,947,266.00 |
| 15. Adjustments to Prepayment Credits | 0.00 | (86,748.00) | (493,213.00) |
| 16. Balance Due or (Overpayment) (Line 13 adjusted by Line 14)  Not Including Interest | 10,634,625.00 | 37,498,668.00 | 15,454,053.00 |
| 17. Penalties, If Any (See explanation) | 0.00 | 0.00 | 0.00 |

Other Information:

SEE ATTACHMENT FOR NOTICES AND OTHER INFORMATION RE ADVANCE PAYMENTS, JOINT COMMITTEE ON TAXATION, CLAIMS FOR REFUND, ETC.

THIS REPORT SUPERCEDES REPORT DATED 1-10-2005

| Examiner: *James F. Fierle*<br>James F. Fierle 65-02115 | District: LMSB 1714 | Date: 5-19-2005 |
|---|---|---|

Form CG-4549-A

| Substitute for Form 4549-A | Department of the Treasury - Internal Revenue Service INCOME TAX EXAMINATION CHANGES | Return Form No. 1120 |
|---|---|---|

| Name and Address of Taxpayer | S.S. or E.I. Number | 13-3461988 | Filing Status | Corporate |
|---|---|---|---|---|

FRESENIUS NATIONAL MEDICAL CARE
HOLDINGS, INC. AFFILIATED GROUP
C/O ELYSE FILON,POA,W.R.GRACE & CO.
5400 BROKEN SOUND BLVD., NW
BOCA RATON       FL   33487

Person With Whom Examination Changes Were Discussed | Name and Title
ELYSE NAPOLI FILON

| 1. Adjustments to Income | Year: 199612 | Year: | Year: |
|---|---|---|---|
| A. Total Adjustments (See FORM 4549-B) | 24,773,167.00 | | |
| B. | | | |
| C. | | | |
| D. | | | |
| E. | | | |
| F. | | | |
| G. | | | |
| 2. Total Adjustments | 24,773,167.00 | | |
| 3. Adjusted Gross or Taxable Income Shown on Return or as Previously Adjusted | 402,923,595.00 | | |
| 4. Corrected Adjusted Gross or Taxable Income | 427,696,762.00 | | |
| 5. Tax | 149,693,867.00 | | |
| 6. Alternative Tax, If Applicable | 0.00 | | |
| 7. Corrected Tax Liability (Lesser of line 5 or 6) | 149,693,867.00 | | |
| 8. Less    a. | | | |
| Credits   b. Total Credits (See attached schedule) | 101,742,819.00 | | |
| (Specify) c. | | | |
| 9. Balance (Line 7 less total of lines 8a through 8c) | 47,951,048.00 | | |
| 10.    a. | | | |
| b. Other Taxes (See attached schedule) | 0.00 | | |
| Plus   c. Modification(s) to Total Tax | 1,173,667.00 | | |
| 11. Total Corrected Income Tax Liability (Line 9 plus total of lines 10a through 10c) | 49,124,715.00 | | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 35,221,281.00 | | |
| 13. Adjustment to: A. B. | | | |
| 14. Deficiency-Increase in Tax or (Overassessment-Decrease in Tax) (Line 11 adjusted by Line 12) | 13,903,434.00 | | |
| 15. Adjustments to Prepayment Credits | (181,026.00) | | |
| 16. Balance Due or (Overpayment) (Line 13 adjusted by Line 14)  Not Including Interest | 13,722,408.00 | | |
| 17. Penalties, If Any (See explanation) | 0.00 | | |

Other Information:

SEE ATTACHMENT FOR NOTICES AND OTHER INFORMATION

Examiner: *James F. Fierle*
James F. Fierle 65-02115

District: LMSB 1714

Date: 5-19-2005

Form CG-4549-A

| Form 886-A (Rev. January 1994) | EXPLANATION OF ITEMS | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer<br>Fresenius National Medical Care Holdings, Inc. Affiliated Group | Tax Identification Number<br>13-3461988 | Year/Period ended<br>1993 - 1996 |

| Arrangement of Report | Pages |
|---|---|
| Form 4549-A | 1 - 2 |
| Other information | 4 - 10 |
| Forms 4549-B, by issue number | 11 - 15 |
| Forms 4549-B, entity totals | 16 - 17 |
| Forms 4549-B, by entity | 18 - 33 |
| Other schedules/computations (Schedule D, Form 4797, Credits, Other taxes | 34 - 90 |
| Issues: Forms 5701 and explanations | Arranged numerically |

| Form 886-A (Rev. January 1994) | EXPLANATION OF ITEMS | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer<br>Fresenius National Medical Care Holdings, Inc. Affiliated Group | | Tax Identification Number<br>13-3461988 | Year/Period ended<br>1993 - 1996 |

## OTHER INFORMATION

### Advance Payments

In April 1999, taxpayer made corporate income tax payments in advance of the final IRS audit adjustments. The advance payments are not included in any of the amounts shown on page 1 of this report.

The advance payments are shown as credits due taxpayer in IRS transcripts of accounts for taxpayer. The amounts of the advance payments and the years to which they apply are shown below.

|  |  |  |
|---|---|---|
| 1994 |  | $12,000,000 |
| 1995 |  | 9,000,000 |
| 1996 |  | 15,000,000 |
|  | Total | $36,000,000 |

### Line 12, Tax as Previously Adjusted

The amounts shown on Page 1, Line 12, Total Tax Shown on Return or as Previously Adjusted, are computed as follows:

|  | 1993 | 1994 | 1995 | 1995 |
|---|---|---|---|---|
| Tax, per return | 25,407,336 | 67,488,305 | 17,859,740 | 48,828,532 |
| Refund, per F1139 [1996] |  | (25,247,731) |  |  |
| Subtotal | 25,407,336 | 42,240,574 | 17,859,740 | 48,828,532 |
| Refund, per F1139 [1997] |  |  |  | (13,607,251) |
| Refund, per F1139 [2001] | (7,203,630) |  |  |  |
| Refund, per F1139 [2002] |  | (658,378) |  |  |
|  | 18,203,706 | 41,582,196 | 17,859,740 | 35,221,281 |

### Joint Committee on Taxation

As shown in the detail for Page 1, Line 12, above, taxpayer has received several refunds as a result of filing Forms 1139, Corporate Application for Tentative Refund. IRC §6405(b) provides that if any credit or refund made under IRC §6411, relating to tentative carryback and refund adjustments, reduced by any deficiency in such tax thereafter, is in excess of $2,000,000, shall be reported to the Joint Committee on Taxation.

This examination may be subject to review by the Joint Committee upon completion of the examination of the returns from which the tentative allowances originated. A Joint Committee review may require additional information and may require additional information and may result in additional assessments or refunds.

Form 886-A (1-1994)    Catalog Number 20810W    publish.no.irs.gov    Department of the Treasury-Internal Revenue Service

Page 4

| Form **886-A** (Rev. January 1994) | EXPLANATION OF ITEMS | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer<br>Fresenius National Medical Care Holdings, Inc. Affiliated Group | Tax Identification Number<br>13-3461988 | Year/Period ended<br>1993 - 1996 |

Claims for Refund

During the span of the IRS examination of taxpayer's 1993 – 1996 returns, in response to certain Information Documents Requests (IDRs) or otherwise, taxpayer raised affirmative issues, claiming entitlement to reductions in taxable income for items not shown on its returns as filed. These are commented on below:

1.  In June 1998, in response to IDR #116, taxpayer indicated that the gain on the sale of its partnership interest in Colowyo Coal Co., L.P. was overstated by $604,434 on the 1994 tax return. This claim has been found to be unallowable. See issue #146 for additional information.

2.  In April 1999, in response to IDR #209, taxpayer claimed that foreign tax credits should be increased by $7,373,594 in 1993 and by $2,706,507 in 1995. These credits have been found to be allowable, as acknowledged in issue #109. The allowance of these credits is included in the computation of the foreign tax credits in this report.

3.  In May 2000, in a revised response to IDR #233, taxpayer claimed entitlement to an additional net deduction of $539,913 in 1994 relating to severance payments that should have been currently deducted, as incurred, instead of being amortized over 15 years, as reported on the return. From information furnished in response to IDR #312, the amount paid in 1994 was shown to be $510,672. This amount, less the amortization deduction of $38,565 that was already claimed on the return, a net amount of $472,107, has been allowed. See issue #117 for additional information.

4.  In September 1999, in response to IDR #234, taxpayer claimed entitlement to an additional deduction of $434,581 for required contributions to an employee plan in 1993 that was not claimed on the return, and entitlement to an additional deduction $1,417,189 for SERP payments for 1994 that were not claimed on the return. In response to IDR #303, taxpayer reduced the amount of the claimed additional deduction to $406,470, which has been allowed in issue #122. Taxpayer withdrew its claim for the 1994 item in its response to IDR #304.

5.  In September 1999, in response to IDR #235, taxpayer claimed entitlement to an additional deduction of $880,000 (total for the two returns) for 1996 for a FAS #87 amount that was not deducted to an error made in computing certain Schedule M-1 amounts on the tax returns. This additional deduction has been allowed. See issue #122 for additional information.

6.  In June 2000, in response to IDR #244, taxpayer claimed entitlement to an additional deduction of $1,722,747 (total for the two returns) to correct an error made in computing the amount of "accrued extra compensation" on its 1996 returns. This claim has been found to be unallowable. See issue #150 for more information.

Form **886-A** (1-1994)   Catalog Number 20810W   publish.no.irs.gov   Department of the Treasury-Internal Revenue Service

Page 5

| Form **886-A** (Rev. January 1994) | **EXPLANATION OF ITEMS** | Schedule number or exhibit |
|---|---|---|

| Name of taxpayer<br>Fresenius National Medical Care Holdings, Inc. Affiliated Group | Tax Identification Number<br>13-3461988 | Year/Period ended<br>1993 - 1996 |
|---|---|---|

7.  In June 1999, in response to IDR #262, taxpayer claimed entitlement to a reduction to taxable income for of $147,208 (total for the two returns), because it had overstated the amount of income flowing from Tarpon Investors L.P. In March 2000, in response to IDR #302, taxpayer claimed entitlement to a reduction in taxable income for 1996 of $276,457 (total for the two returns) relating to amount of income flowing from Tarpon Investor's L.P. In December 2000, in response to IDR #319, taxpayer clarified the conflict in the positions taken in its previous responses when it stated that the response to IDR #262 should be disregarded, and that the amount of overstated income, as claimed in its response to IDR #302, is $276,457. This claim, however, has been found to be unallowable. See issue #116 for additional information.

8.  In December 1999, in response to IDR #284, taxpayer claimed entitlement to an additional deduction of $789,888 (total for the two returns) for 1996. At December 31, 1995, taxpayer had a balance of "accrued" legal fees of approximately $7.5 million. From the IRS examination of this item, it was held that this amount was not properly deductible for tax purposes. The $789,888 amount now claimed by taxpayer represents payments and/or reversals, made in 1996, of a portion of the original $7.5 million amount disallowed for 1995. Under these circumstances, the additional deduction claimed for 1996 has been allowed. See issue #145 for more information.

9.  In March 2001, in response to IDR #289, taxpayer claimed entitlement to an additional deduction of $84,872 (total for the two returns) for 1996 re D/V reserves. At meetings in April 2002, taxpayer personnel stated to the IRS examining agent/team coordinator and team manager that they did not intend this IDR response to be considered to be a claim for refund. Accordingly, this "claim" is treated as having been withdrawn. A review of this item by an IRS examining agent/team member indicated that the amount "claimed" would not be allowable.

10.  In March 2001, in response to IDR #291, taxpayer claimed entitlement to an additional deduction of $103,338 for 1996 re environmental reserves. At meetings in April 2002, taxpayer personnel stated to the IRS examining agent/team coordinator and team manager that they did not intend this IDR response to be considered to be a claim for refund. Accordingly, this "claim" is treated as having been withdrawn. A review of this item by an IRS examining agent/team member indicated that the amount "claimed" would not be allowable.

11.  In March 2000, in response to IDR #293, taxpayer claimed entitlement to an additional deduction of $375,670 for 1995 relating to D/V reserves. Taxpayer later withdrew its claim for this item in January 2001, in its response IDR #315.

12.  In February 2001, in response to IDR #301, taxpayer claimed entitlement to additional deductions in 1995 of $3,253,277 relating to restructuring reserves of its Cryovac and Construction Products divisions. Taxpayer also claimed entitlement to an additional deduction in 1995 of $8,347,850 relating to environmental reserves. These claims have not been found to be allowable. See issues ##142 and 144 for more information.

13.  In a June 2002 memorandum, taxpayer claimed entitlement to a reduction of $11,761,307 in 1996 relating to a section 78 gross-up on a section 1248 dividend resulting from the sale of its Dearborn Canada unit.

| Form 886-A (Rev. January 1994) | EXPLANATION OF ITEMS | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer<br>Fresenius National Medical Care Holdings, Inc. Affiliated Group | | Tax Identification Number<br>13-3461988 | Year/Period ended<br>1993 - 1996 |

Taxpayer stated that this amount was reported twice on its tax returns. This claim has been found to be allowable. See issue #151 for more information.

14. On August 15, 2002, in response to proposed issue #138, taxpayer submitted a memorandum to the IRS, dated July 18, 2002, claiming entitlement to a reduction in taxable income of $3.4 million in 1995 relating to the tax accounting for discounts on notes received from insurance companies for asbestos-related settlements. It was later discovered that the claimed amount had already been taken into account on the tax return, as filed. Consequently, on August 21, 2002, in a memorandum dated August 19, 2002, taxpayer withdrew its claim.

15. A revenue agent's report (RAR) relating to the examination of taxpayer's returns for the 1993-1996 was prepared in August 2002. While these years were under the jurisdiction of the IRS Appeals office, taxpayer submitted information to protest some of the issues that had been raised in the RAR. Taxpayer also raised some affirmative claims. The case was returned to the IRS examiners in November 2003. While under the jurisdiction of the IRS examiners, taxpayer raised several more affirmative claims. In one such claim, identified as Exhibit 4 by taxpayer is its submission to Appeals, taxpayer raised several issues pertaining foreign tax credit matters. This claim will be discussed separately under next numbered item. All of the other claims, whether raised to Appeals, or to the IRS examiners after the case was returned from Appeals, are discussed in the explanations for issue #138 and issues #165-169.

16. An affirmative claim, identified as Exhibit 4, relating to various foreign tax credit matters, was raised by taxpayer in its submission to the IRS Appeals office (see the discussion in the previous numbered item). The claim raises issues relating to the apportionment of certain expenses and to the impact of disallowed deductions relating to the exercise of stock option by foreign employees on the determination of section 78 gross-up dividends and deemed paid foreign taxes. These matters are discussed in issues #161 and #170.

In Exhibit 4, taxpayer also indicates that the IRS incorrectly applied separate return limitation year (SRLY) restrictions in determining the amount of foreign tax credit carrybacks from the 1996 return of the Sealed Air affiliated group, EIN 65-0654331, to the 1995 and 1996 returns of the Fresenius Medical Care Holdings affiliated group, EIN 13-3461988.

Some entities that were members of taxpayer's affiliated group from January 1 through September 28, 1996, were spun off and became members of another affiliated group for the period from September 29 through December 31, 1996. For the period included in the separate return, these entities paid or accrued foreign taxes of approximately $29 million, which were not deducted or used as credits on the separate return. Taxpayer included a carryback of approximately $14 million of these unused SRLY foreign taxes in the foreign tax credit computation on its 1996 return. The IRS examiners originally held that the SRLY limitations provided for in Reg. §1.1502-4(f) prevented the use of these credits. In July/August 2002, in its oral and computational responses, taxpayer claimed that the proper application of the SRLY provisions allows the carryback of the unused SRLY foreign taxes, not only to 1996, but to 1995 as well. The IRS examiners agree. The carryback of the unused taxes from the 1996 separate return have been allowed as credits totaling approximately $25,000,000 for taxpayer's 1995 and 1996 years, per issue #161.

| Form 886-A (Rev. January 1994) | EXPLANATION OF ITEMS | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer: Fresenius National Medical Care Holdings, Inc. Affiliated Group | Tax Identification Number: 13-3461988 | Year/Period ended: 1993 - 1996 |

Taxpayer's current assertion that the IRS incorrectly applied SRLY restrictions comes after taxpayer, itself, applied such restrictions in its July/August 2002 presentations to the IRS examiners and in several Forms 1139, Corporate Application for Tentative Refund, that it prepared as recently as October 2003. In this report, we continue to hold, as taxpayer consistently did, that the SRLY principles do apply to amounts carried back from returns of the Sealed Air affiliated group, EIN 66-0654331, or the W. R. Grace affiliated group, EIN 65-0773649, to the Fresenius Medical Care Holding Affiliated group, EIN 13-3461988. For a further discussion of this matter, see the explanation for issue #159.

Environmental Tax

Taxpayer made some minor computational errors in determining the amounts of the environmental taxes on its 1994 and 1995 returns. As a result, the amounts of the environmental taxes were overstated by $1,745 and $2,400 for 1994 and 1995, respectively. Additionally, based upon the amounts reported in the 1993-1995 tax returns, the allowable deductions for the environmental taxes were incorrectly reported. In 1993, taxpayer did not claim any deduction for that year's $584,599 environmental tax. In 1994 and 1995, the deductions claimed were overstated by $28,565 and $258,964, respectively. See the schedule on the next page for calculations of these amounts.

The above-described items have been taken into account in determining the corrected amounts for the environmental taxes and the deductions for environmental taxes included in this report. See adjustment "AV ZZZ-9997 Environmental Tax Ded" on Form 4549-B. Also see Alternative Minimum Tax computations in this report for the calculation of the environmental tax.

Fresenius/W. R. Grace
Environmental Taxes & Deductions for Environmental Taxes
1993 - 1995

**Data entered into IRS tax computation program:**

| | 1993 | 1994 | 1995 |
|---|---|---|---|
| Environmental tax, per return | 584,599 | 518,759 | 262,436 |
| Environmental tax deduction, per return | 0 | 545,599 | 519,000 |

**Computation of "variances" due to errors in reporting environmental taxes per returns:**

| | 1993 | | | 1994 | | | 1995 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Per return | As "corrected" | Variance | Per return | As "corrected" | Variance | Per return | As "corrected" | Variance |
| AMTI before AMT NOLD | 489,166,167 | 489,166,167 | | 432,299,201 | 432,299,201 | | 218,177,790 | 218,177,790 | |
| Add back environmental tax deduction | 0 | 0 | | 0 | 545,599 | | 0 | 519,000 | |
| Modified AMTI | 489,166,167 | 489,166,167 | | 432,299,201 | 432,844,800 | | 218,177,790 | 218,696,790 | |
| Less exemption | (2,000,000) | (2,000,000) | | 0 | (2,000,000) | | 0 | (2,000,000) | |
| Amount subject to environmental tax | 487,166,167 | 487,166,167 | | 432,299,201 | 430,844,800 | | 218,696,790 | 216,696,790 | |
| Environmental tax rate | 0.0012 | 0.0012 | | 0.0012 | 0.0012 | | 0.0012 | 0.0012 | |
| Environmental tax | 584,599 | 584,599 | 0 | 518,759 | 517,014 | (1,745) | 262,436 | 260,036 | (2,400) |

**Computation of adjustments to taxable Income due to errors in reporting deductions for environmental taxes per returns:**

| | 1993 | | Adjustment, increase (decrease) taxable Income | 1994 | | Adjustment, increase (decrease) taxable Income | 1995 | | Adjustment, increase (decrease) taxable Income |
|---|---|---|---|---|---|---|---|---|---|
| | Per return | As corrected | | Per return | As corrected | | Per return | As corrected | |
| AMTI before AMT NOLD | 489,166,167 | 489,166,167 | | 432,299,201 | 432,299,201 | | 218,177,790 | 218,177,790 | |
| Corrections: | | | | | | | | | |
| Allow deduction for correct environmental tax | | (584,599) | | | (517,014) | | | (260,036) | |
| Eliminate deduction claimed per return for environmental tax | | 0 | | | 545,599 | | | 519,000 | |
| AMTI before AMT NOLD, as corrected | 489,166,167 | 488,581,568 | (584,599) | 432,299,201 | 432,327,786 | 28,585 | 218,177,790 | 218,436,754 | 258,964 |
| Add back environmental tax deduction | 0 | 584,599 | | 0 | 517,014 | | 0 | 260,036 | |
| Modified AMTI | 489,166,167 | 489,166,167 | | 432,299,201 | 432,844,800 | | 218,177,790 | 218,696,790 | |
| Less exemption | (2,000,000) | (2,000,000) | | 0 | (2,000,000) | | 0 | (2,000,000) | |
| Amount subject to environmental tax | 487,166,167 | 487,166,167 | | 432,299,201 | 430,844,800 | | 218,696,790 | 216,696,790 | |
| Environmental tax rate | 0.0012 | 0.0012 | | 0.0012 | 0.0012 | | 0.0012 | 0.0012 | |
| Environmental tax | 584,599 | 584,599 | | 518,759 | 517,014 | | 262,436 | 260,036 | |

p. 9