IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 JKF |
|  | ) | Jointly Administered |
| Debtors. | ) |  |

Objection Deadline: July 3, 2008, at 4:00 p.m.
Hearing Date: July 21, 2008, at 1:00 p.m.

## APPLICATION OF THE DEBTORS FOR THE ENTRY OF AN ORDER EXPANDING THE SCOPE OF RETENTION AND EMPLOYMENT OF REED SMITH LLP AS COUNSEL TO THE DEBTORS

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this application (the "Application") for the entry of an order pursuant to section 327(e) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure, authorizing and approving the expansion of the scope of Reed Smith LLP's ("Reed Smith") retention as counsel for the Debtors, nunc pro tunc to the petition date of the above-captioned proceedings (the "Petition Date"). In support thereof, the Debtors respectfully represent as follows:

---

[1] The Debtors consist of the following 62 entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey & Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II, Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.   This Court has jurisdiction to entertain this application pursuant to 28 U.S.C. §§ 157 and 1334.

## Relief Requested

2.   The Debtors respectfully request the entry of an order pursuant to section 327(e) of the Bankruptcy Code expanding the scope of Reed Smith's retention and employment as counsel to the Debtors, so that, pursuant to the wishes of the Debtors, Reed Smith can provide legal services to the Debtors beyond the scope of their work as Special Asbestos Products Liability Counsel, for which Reed Smith has already been approved by this Court.

## Basis for Relief Requested

3.   The Debtors originally selected Reed Smith as special counsel to defend them in asbestos products liability actions because of Reed Smith's longstanding representation of the Debtors in such actions and the firm's attendant intimate knowledge regarding the Debtors' involvement and defense of asbestos-related lawsuits. This knowledge was gained largely through Reed Smith's representation of the Debtors in connection with various asbestos property damage cases, asbestos personal injury cases and class actions involving products alleged to contain asbestos, which representation began in 1989 and continued until the Debtors' bankruptcy filing in 2001.

4.   By an Order signed by Judge Farnan dated July 19, 2001, Reed Smith was approved to continue serving the Debtors in this bankruptcy case as Special Asbestos Products Liability Defense Counsel. The scope of the approved retention included defense of:

> (a) class actions and putative class actions brought on behalf of owners or occupants of homes containing an attic insulation product alleged to contain asbestos known as Zonolite Attic Insulation ("ZAI");

(b) individual cases brought by homeowners whose homes contain ZAI;

(c) cases alleging property damage caused by asbestos-containing products formerly manufactured and sold by the Debtors including, without limitation, Monokote fireproofing, ZAI and acoustical plaster; and

(d) personal injury actions brought individually or as class actions relating to asbestos-containing products sold by the Debtors.

See Application of the Debtors for the Entry of an Order Authorizing the Retention and Employment of Reed Smith LLP as Special Asbestos Products Liability Defense Counsel for the Debtors [Doc. No. 564], at 7; see also Order Authorizing the Retention and Employment of Reed Smith LLP as Special Asbestos Products Liability Defense Counsel for the Debtors [Doc No. 707] (approving application and incorporating scope of retention described in application).

5.  Recently, the Debtors have developed a desire to retain Reed Smith for representation and counsel regarding certain of the Debtors' ongoing business issues, including the evaluation of the Debtors' rights and obligations under certain contracts relating to their business. The matters on which the Debtors now seek Reed Smith's counsel are not related to any asbestos-related claims, demands or lawsuits against the Debtors. Reed Smith wishes to accommodate the Debtors' requests and perform this work, which is beyond the scope of the retention currently approved by the Court.

6.  The Debtors submit that Reed Smith is well-qualified to perform the legal work the Debtors now seek. As one of the largest law firms in the world, Reed Smith's diverse practice includes extensive representation of other commercial clients (including Chapter 11 debtors and non-debtors) in matters similar to the one which the Debtors currently seek Reed Smith's counsel. The Debtors believe that Reed Smith's intimate familiarity with the Debtors' line of business and commercial affairs, gained through its long-standing representation of the

Debtors in asbestos-related litigation, uniquely positions Reed Smith to provide effective representation on commercial (normal-course-of-business) matters in an especially efficient manner.

### Scope of Proposed Expanded Retention

7. The Debtors currently seek to expand their authorized retention of Reed Smith, subject to the oversight and orders of this Court, so that Reed Smith may provide counsel to and/or otherwise represent the Debtors with respect to the following matters:

   a. The evaluation of the Debtors' rights and obligations under certain contracts relating to their business, and counseling relating to those rights and obligations; and

   b. Any other matters arising in relation to the Debtors' normal course of business, for which the Debtors desire Reed Smith's counsel and/or representation.

8. Reed Smith has indicated its willingness to render the professional services described above, in addition to its service as Special Asbestos Products Liability Defense Counsel to the Debtors. Reed Smith will not serve as general bankruptcy counsel or reorganization counsel to the Debtors. The Debtors believe that the additional services Reed Smith will provide will be complementary to, rather than duplicative of, the services to be performed by such bankruptcy and reorganization counsel. The Debtors are very mindful of the need to avoid duplication of services, and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Reed Smith's expanded role as counsel to the Debtors.

### No Adverse Interest

9. To the best of the Debtors' knowledge, and based upon an Affidavit of James J. Restivo, Jr. filed in support of the initial Application to Authorize the Retention of Reed Smith (the "Restivo Affidavit") [attached to Doc. No. 564], Reed Smith does not represent or hold any

interest adverse to the Debtors or their estates with respect to the matters on which Reed Smith is to be employed. Further, to the best of the Debtors' knowledge and based on the Restivo Affidavit, Reed Smith does not have any connection with any creditors or other parties in interest or their respective attorneys or accountants, or the United States Trustee or any of its employees, except as set forth in the Restivo Affidavit.

### Compensation

10. In accordance with Section 330(a) of the Bankruptcy Code, and consistent with the manner of compensation approved in the Debtors' initial Application to Approve the Retention of Reed Smith, the Debtors propose to compensate Reed Smith on an hourly basis at its customary hourly rates for services rendered, plus reimbursement of actual, necessary expenses incurred by Reed Smith. The primary members of Reed Smith who will be handling the above matters and their current hourly rates are:

| | Attorney | Hourly Rate |
|---|---|---|
| (a) | Michael E. Lowenstein | $620 per hour |
| (b) | Mark L. Weyman | $615 per hour |

The Debtors also reserve the right to use the services of additional Reed Smith professionals in the course of matters falling within Reed Smith's expanded retention. The Debtors believe that the hourly rates set forth above are reasonable and should be approved.

11. As set forth in the Restivo Affidavit, the hourly rates described above are subject to periodic adjustments to reflect economic and other conditions. Other of Reed Smith's attorneys or paralegals may from time to time serve the Debtors in the matters for which Reed Smith's expanded retention is sought. Reed Smith's rates are set at a level designed to compensate Reed Smith fairly for the work of its attorneys and paralegals and to cover fixed and

routine overhead expenses. It is Reed Smith's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telecopier, toll and other charges, mail and express mail charges, special or hand-delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, messengers, couriers, postage, witness fees and other fees relating to trials and hearings, transcription costs, and non-ordinary overhead expenses such as secretarial overtime. Reed Smith believes that it is fairer to charge these expenses to the client who incurs them that it would be to increase its hourly rates and spread the expenses among all clients. Reed Smith has charged the Debtors for these types of expenses throughout its representation of the Debtors in this bankruptcy case, and it will continue to do so under the expanded scope of their representation to the extent this Application is approved by the Court.

12. As it has done throughout its representation of the Debtors in this bankruptcy case, Reed Smith will continue to submit monthly, interim and final applications for compensation in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court and such other and further Orders as the Court may direct.

## Conclusion

13. For the reasons set forth above and in the Restivo Affidavit, the Debtors believe that the attorneys at Reed Smith are well-qualified to act on the Debtors' behalf in an expanded role relating to legal issues arising in the Debtors' normal course of business. The Debtors further believe that the expanded engagement of Reed Smith is essential to maintaining the Debtors' business during the bankruptcy and to the Debtors' ultimate successful reorganization.

The Debtors further believe that the retention of Reed Smith is necessary and in the best interest of the Debtors and their estates.

### Notice

14. Notice of this Motion has been given to: (i) the office of the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in these Chapter 11 Cases, (v) counsel to the Future Claimants' Representative; and (vi) those parties that requested service and notice of papers in accordance with Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

15. No prior application for the relief requested herein has been made to this or any other Court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, authorizing the expanded scope of employment of Reed Smith as counsel to the Debtors, nunc pro tunc to the Petition Date, and grant them such other and further relief as is just and proper.

Dated: June 16, 2008

    KIRKLAND & ELLIS LLP

    David M. Bernick, P.C.
    Janet S. Baer
    200 East Randolph Drive
    Chicago, Illinois 60601
    (312) 861-2000

    and

    PACHULSKI STANG ZIEHL & JONES LLP

    */s/ James E. O'Neill*
    Laura Davis Jones (Bar No. 2436)
    James E. O'Neill (Bar No. 4042)
    Kathleen P. Makowski (Bar No. 3648)
    Timothy P. Cairns (Bar No. 4228)
    919 North Market Street, 17th Floor
    P.O. Box 8705
    Wilmington, Delaware 19899-8705
    (302) 652-4100

    Co-Counsel for the Debtors and Debtors in Possession