THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: July 11, 2008
Hearing Date: July 21, 2008 at 1 p.m.

## DEBTORS' MOTION FOR AN ORDER AUTHORIZING LOANS AGAINST DEBTORS' COMPANY OWNED LIFE INSURANCE POLICIES

The Debtors respectfully move this Court (the "Motion") for entry of an order authorizing them to borrow against the value of certain company owned life insurance ("COLI") policies. The Debtors seek authority to borrow a maximum of approximately $59 million in order to provide an additional source of liquidity for the Debtors' business operations and their emergence from chapter 11. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

2. The statutory predicate for this Motion is section 364 of the Bankruptcy Code.

## Background

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. For a number of years, the Debtors have held as a financial product, COLI policies insuring the lives of a number of their past and present employees.

5. By order of this Court entered on October 30, 2007 (Dkt. 17216), the Debtors, among other things, were authorized to surrender the COLI policies for their cash surrender value to support liquidity requirements for operations and for emergence from chapter 11. Debtors subsequently determined that it was more tax efficient to dispose of the policies in 2008.

6. As of March 31, 2008, the Debtors had COLI policies (excluding split-dollar policies) with an aggregate cash surrender value of approximately $73.7 million. The

Debtors are in the process of surrendering policies with a cash surrender value of approximately $8.1 million.

7. As regards the approximately $65.6 million of COLI policies remaining, the Debtors are reviewing a potential opportunity to sell the policies on terms more favorable than surrender. This review will likely take several months.

8. In order to be able to meet possible liquidity needs, while retaining the option of a possible favorable sale transaction, the Debtors have determined it would be in their best interest to seek permission to borrow against the COLI policies, with an eye to eventual sale or surrender of the policies, depending on which alternative is more financially favorable.

### THE COLI BORROWING PROCESS

9. The COLI policies, like many life insurance products, permit the owner of the policies to borrow against their cash surrender value. The COLI borrowing terms, which include credit of part of the interest to the value of the policies, are generally more favorable than those available under the Debtors' debtor-in-possession revolving credit facility (the "DIP Facility"), and thus could be used either in lieu of DIP Facility debt, or to replace DIP Facility debt if liquidity requirements necessitate borrowing under the DIP Facility before this Court's approval of borrowing under the COLI policies.

10. The Debtors propose to make COLI loans in amounts not greater than 90% of the policies' values, because loans for higher percentages of the cash surrender value tend to erode the value of the policies. This would give the Debtors additional liquidity availability of approximately $59 million.

11. The documentation for loans under COLI policies generally require that the borrowers grant security interests in the policies to secure the loans. The COLI policies are not pledged as security for any other obligations of the Debtors and a recent amendment of the DIP Facility documents permits the borrowings under the COLI policies requested herein.

## RELIEF REQUESTED

12. By this Motion, the Debtors seek authority pursuant to section 364 of the Bankruptcy Code to borrow under the COLI policies amounts of up to 90% of the value of the COLI policies, or a maximum of approximately $59 million, and to grant security interests in the policies to secure the Debtors' obligations under such loans.

## BASIS FOR RELIEF

13. Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code:

(i) The debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, i.e., by allowing a lender only an administrative claim;

(ii) The credit transaction is necessary to preserve the assets of the estate; and

(iii) The terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.

In re Ames Dep't Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990).

14. As indicated herein, in order to provide an additional source of liquidity for the Debtors' business operations and their emergence from chapter 11, the Debtors may need to borrow against the value of the COLI policies. The decision to utilize COLI loans as an additional means of meeting the Debtors' liquidity requirements is the result of careful analysis by the Debtors, which have determined, in good faith, that the transaction is in the best interests

of the Debtors. COLI loans provide a significant additional source of liquidity on terms that generally are more favorable than loans under the Debtors' DIP Facility. In addition, the availability of COLI loans enables the Debtors to retain the option of a possible sale of the COLI policies for a higher return than their cash surrender value. If the sale option proves not to be favorable, the Debtors can terminate the policies for their net cash surrender value. Thus, the potential borrowing requested herein is fair and reasonable.

## Notice

Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Future Claimants' Representative, and (v) those parties that requested papers under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to borrow against their COLI policies amounts of up to 90% of the value of the COLI policies, and to grant security interests in the policies to secure the Debtors' obligations under such loans, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: June 27, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession