## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,<br><br>              Debtors. | Chapter 11<br><br>Case No. 01-1139 (JKF)<br><br>Jointly Administered<br>**Docket No. 18930**<br><br>**Hearing Date:  July 21, 2003 at 2:00 p.m.**<br>**Objection Deadline:  July 3, 2008 at 4:00 p.m.** |

**RESPONSE OF HER MAJESTY THE QUEEN IN RIGHT OF
CANADA AS REPRESENTED BY THE ATTORNEY GENERAL OF CANADA
TO CANDIAN ZAI CLAIMANTS MOTION FOR AN ORDER TO ESTABLISH A
PROTOCOL FOR CROSS-BORDER COMMUNICATION BETWEEN THE UNITED
STATES BANKRUPTCY COURT AND THE CCAA COURT**

Her Majesty the Queen in Right of Canada as represented by the Attorney General of Canada (the "Crown"), by and through her undersigned counsel, hereby files this Response to Canadian ZAI Claimants Motion for an Order to Establish a Protocol for Cross-Border Communication Between the United States Bankruptcy Court and the CCAA Court (the "Motion") and in support of this response states as follows:

### Background and Introduction

1.      On June 16, 2008, the ZAI Claimants filed with the Court the ZAI Claimants' motion for an order to establish a protocol for cross-border communication between the United States Bankruptcy Court and the Canadian CCAA court.

2.      The Crown is agreeable and consents to an immediate order from this Court requesting the aid of the Canadian CCAA court to make an order under section 8(2)(c) of the federal *Privacy Act,* R.S.C. 1985, c. P-21 in respect of whether to compel the release certain

documents relevant to the identification of Canadian homes containing ZAI and vermiculite attic

insulation generally ("VAI") in these bankruptcy proceedings despite the fact that the documents

contain personal information, the release of which is not permitted except pursuant to a court

order made under the *Privacy Act*.   A copy of the relevant provisions of the *Privacy Act* is

attached hereto as Exhibit A.


3.          Unless or until this Court determines that the Canadian claims can only be

decided by the Canadian CCAA court, and in light of the Crown's consent to an order requesting

the CCAA court determine the *Privacy Act* issues, the request for a communication protocol is at

best premature and at worst, unnecessary.  The Crown suggests that such a protocol will not be

necessary unless this Court determines that there is something unique about the PD and PI claims

being asserted by the Canadian claimants that necessitates that they be heard by the Canadian

CCAA court.


## PART I – CANADIAN ZAI CLAIMS


4.          There are currently ten class actions which have been filed across Canada

concerning ZAI in which the Crown has been sued.  W.R. Grace and or its affiliated companies

are co-defendants with the Crown in all but the first of these class actions which are as follows:

- Viviane Brosseau et al v. Attorney General of Canada, Superior Court of Quebec, District of Montréal, 500-06-000286-050;

- Dextras et al v. Attorney General of Canada, W.R. Grace & Co. et al, Superior Court of Quebec, District of Montréal, 500-06-000258-042;

- Raven Thundersky et Rebecca Bruce v. Attorney General of Canada, W.R. Grace & Co., Court of Queen's Bench of Manitoba;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Federal Court, Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Alberta;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Supreme Court of British Colombia;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Province of Quebec, District of Hull;

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Manitoba; and

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Ontario Superior Court of Justice.

5.        In the aforementioned class actions, the petitioners seek to represent all Canadians who have suffered past or will suffer future property damage and personal injury due to exposure to Zonolite Attic Insulation.

6.        An action has also been instituted by the Province of Manitoba, *Her Majesty The Queen in the Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co. et al*, Court of Queen's Bench of Manitoba. The Province of Manitoba has sued the Crown and the manufacturer of Zonolite for the cost of insured health services paid or to be paid to the named plaintiffs in Thundersky and all other persons determined to be class members in the Thundersky case.

7.          The basic allegation in the various class actions pending in Canada is that the manufacturer (W.R. Grace) created and distributed an insulation product named Zonolite which contained asbestos and was therefore inherently dangerous.  The Crown's alleged wrongdoing is said to be that it permitted the distribution and sale of Zonolite.  Nevertheless, the Crown denies owing any duty of care whatsoever toward any one who had purchased Zonolite.

8.          On November 14, 2005 as a result of the commencement of the class action proceedings in Canada, Grace sought from and was granted an order pursuant to s. 18.6(4) of the *Companies' Creditors Arrangement Act* (the "CCAA") *In the Matter of S. 18.6 of the Companies' Creditors Arrangement Act, R.S.C. 1984, c. C-36, As Amended and In the Matter of Grace Canada, Inc.,* Court File 01-CL-4081, (the "CCAA proceeding") by the Ontario Superior Court of Justice (Commercial List), acting as an ancillary court, giving effect in Canada to the stay of proceedings granted by the US Court, staying proceedings and prohibiting the commencement or continuation of any asbestos related suits against Grace and Canada without further order of the CCAA court.

9.          On or about February 9, 2006, the Canadian CCAA court, appointed Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins, LLP to act as representative counsel on behalf of all persons who have, or at any time in the future may have, a claim arising out of or in any way connected to damages of loss suffered, directly or indirectly, from the manufacture, sale or distribution of ZAI products in Canada (the "Canadian ZAI Claimants").

10.         The Canadian ZAI Claimants have filed claims, retained US counsel, and otherwise participated in the bankruptcy proceedings pending in this Court.

## PART II – THE CROWN'S OBJECTION

**Order Requesting Aid of the CCAA court to Determine Privacy Issues**

11.        The Crown agrees that that it is appropriate, and under the circumstances necessary, to have the Canadian superior court of justice exercising jurisdiction pursuant to the CCAA hear and determine the issues relating to the release of personal information protected under the *Privacy Act*.

12.        Essentially, section 8(1) of the *Privacy Act* prohibits the release of personal information contained in government records without the consent of the individual whose information is sought to be disclosed or without an order from a properly authorized court.   It is not practical nor expedient to attempt to obtain the consent of the individuals whose personal information, in the form of municipal addresses, is sought to be disclosed.  Accordingly, the Crown submits that the only effective way this information can be disclosed is pursuant to an Order the CCAA court, a court that has jurisdiction to compel disclosure in the context of the class action proceedings, under section 8(2)(c) of the *Privacy Act*.

13.        Accordingly, the Crown agrees that it is necessary and appropriate under the circumstances to seek the aid of the Canadian CCAA court to determine the issue of what personal information, if any can be disclosed pursuant the *Privacy Act*  and to make and such disclosure order as required.

**Communication Protocol**

14.        With respect to the creation of a communication protocol between the two courts, the Crown is of the view that such a protocol is not necessary in order to seek the aid of the

CCAA court, which court has already recognized this foreign proceeding and agreed to act in aid of these US proceedings.

15.         Attached hereto as Exhibit B is a copy of paper presented at the International Insolvency institute's sixth Annual International Insolvency conference titled "Cooperation and Coordination in Cross-Border Insolvency Cases" by Mr. Justice J.M. Farley of the Ontario Superior court of Justice (as he then was) and Bruce Leonard and John N. Birch of Cassels, Brock and Blackwell LLP dated June 12 to 13, 2006. This article affirms the desirability of fostering effective cross-border communication protocols especially where there are two courts actively engaged in the determination of the substantive issues underlying a successful restructuring. It references various Model Laws and Guidelines that may be followed by Canadian courts and notes that the CCAA has, for better or worse, expressly adopted its own procedures in relation to the recognition and co-operation with foreign courts in relation to foreign insolvencies in section 18.6 of the CCAA. What seems clear is that the creation of such a protocol could potentially require a great deal of negotiation over the specific terms and thus potentially delay a speedy exit from court protection in these insolvency proceedings. In this regard, the ZAI Claimants give the Court and interested parties no insight or direction as to the breadth or procedural details of such a protocol.

16.         Moreover, with respect to the request for the establishment of a Communication Protocol between the US and Canadian courts, the Crown submits that until this Court determines whether to give up jurisdiction over the substantive determination of the Canadian claims, that the time and effort expended to develop such a protocol will not be well spent. This

Court, in the Speights and Runyan claims, was asked to create a separate Canadian litigation

procedure to deal with the claims relating to commercial buildings located in Canada.


17.         This Court rejected the request and proceeded to hear expert evidence on

Canadian law and apply Canadian law to determine certain of the issues raised in those claims.

The Crown submits that there is no material difference between the Canadian ZAI claims and the

Speights claims that would necessitate dividing up the substantive issues in this case.

Accordingly, the Crown submits that the motion seeking the establishment of a communication

protocol be dismissed or adjourned until such time as this Court has determined whether it is

necessary to delegated to the CCAA court the jurisdiction to determine these Canadian claims as

against the Debtor.

WHEREFORE, the Crown respectfully requests that this Court deny the ZAI Claimants'

Motion for an Order to Establish a Protocol for Cross-border Communication Between the

United States Bankruptcy Court and the CCAA court be dismissed but that this Court grant an

order seeking the assistance of the Canadian CCAA court to hear and determine issues relating

the release of Crown documents pursuant to the *Privacy Act*.

Dated: July 3, 2008                          Respectfully submitted,

                                             **Womble Carlyle Sandridge & Rice, PLLC**


                                             By:_____
                                                Francis A. Monaco, Jr. (#2078)
                                                Kevin J. Mangan (#3810)
                                                222 Delaware Avenue, Suite 1501
                                                Wilmington, DE 19801
                                                Ph: (302) 252-4340
                                                Fax: (302) 661-7728