- 52-

*Core-Mark* (2003), unreported, (British Columbia Supreme Court, Justice David Tysoe).

*Laidlaw Inc.,* (2003) Ontario Superior Court of Justice, Court File No. 01-CL-4178 (February 28, 2003).

*Owens Corning* (2002), Ontario Superior Court of Justice, Court File No. 02-CL-4447 (March 12, 2002).

*Matlack Inc.* (2001), Ontario Superior Court of Justice, Court File No. 01-CL-4109 (April 19, 2001).

*Loewen Group Inc.* (2001), Ontario Superior Court of Justice, Court File No. 99-CL-3384 (December 7, 2001).

*Grace Canada Inc.* (2001), Ontario Superior Court of Justice, Court File No. 01-CL-4081 (April 4, 2001).

*Babcock & Wilcox Canada Ltd.* (2000), Ontario Superior Court of Justice, Court File No. 00-CL-3667 (February 25, 2000).

*GST Telecommunications* (2000), Ontario Superior Court of Justice, Court File No. 00-CL-3752 (May 18, 2000).

*Philip Services Corp.* (1999), Ontario Superior Court of Justice, Court File No. 99-B-02385 (June 28, 1999).

APPENDIX 4

<u>Recent Cross-Border Insolvency Protocols</u>

**Cross-Border Court-to-Court Communication Protocol in Federal-Mogul Global Incorporated** and its Affiliates between United States Bankruptcy Court for Delaware (Hon. Raymond T. Lyons), Case No. 01-10578 (RTL), (November 23, 2004)  and the English Court (Justice David Richards.), Case No. 5798 (and others), (November 19, 2004).  A court-to-court communications protocol based on the *Guidelines* was approved.

**Cross-Border Insolvency Protocol in Re Archibald Candy Corp.** and its Affiliates between the Ontario Superior Court of Justice, Toronto (Mr. Justice J.M. Farley ), Court File No. 04-CL-5308 and 04-CL-5461, (June 28, 2004) and the United States Bankruptcy Court for the Northern District of Illinois (Hon. Pamela S. Hollis), Case No. 04-B-03200, (June 24, 2004), including approval and adoption of the *Guidelines*.

**Cross-Border Insolvency Protocol in Re Systech Retail Systems Corp.** and its Affiliates between the Ontario Court of Justice, Toronto (Mr. Justice Ground), Court File No. 03-CL-4836, (January 20, 2003) and the United States Bankruptcy Court for the Eastern District of North Carolina, Raleigh Division (Hon. A. Thomas Small), Case No. 03-00142-5-ATS, (January 30, 2003) including approval and adoption of the *Guidelines*.

**Cross-Border Insolvency Protocol in Re Mosaic Group Inc.** and its Affiliates between the Ontario Superior Court of Justice, Toronto (Mr. Justice J.M. Farley), Court File No. 02-CL-4816, (December 7, 2002) and the United States Bankruptcy Court for the Northern District of Texas (Hon. Harlin DeWayne Hale), Case No. 02-81440, (January 8, 2003), including approval and adoption of the *Guidelines*.

**Cross-Border Insolvency Protocol in Federal-Mogul Global Incorporated** and its Affiliates between United States Bankruptcy Court for Delaware (Hon. Randall J. Newsome), Case No. 01-10578 (AMW), (February 7, 2002)  and the English Court (Justice David Richards.), Case No. 5798 (and others), (October 1, 2001).

**Cross-Border Insolvency Protocol in Re 360networks Inc.** between British Columbia Supreme Court, Vancouver (Mr. Justice D.F. Tysoe), Case No. L011792, (June 28, 2001) and United States Bankruptcy Court for the Southern District of New York (Hon. Allan L. Gropper), Case No. 01-13721-ALG, (August 29, 2001).

**Cross-Border Insolvency Protocol in Re Laidlaw Inc.** between Ontario Superior Court of Justice, Toronto (Mr. Justice J.M. Farley), Case No. 01-CL-4178, (August 10, 2001) and United States Bankruptcy Court for the Western District of New York (Hon. Michael J. Kaplan), Case No. 01-14099, (August 20, 2001).

**Cross-Border Insolvency Protocol in Re PSINet Inc. et al.** between Ontario Superior Court of Justice, Toronto (Mr. Justice J.M. Farley), Case No. 01-CL-4155, (July 10, 2001) and United States Bankruptcy Court for the Southern District of New York (Hon. Robert E. Gerber), Case No. 01-13213, (July 10, 2001) including approval and adoption of the *Guidelines*.

**Cross-Border Insolvency Protocol in Re Matlack Inc.** between Ontario Superior Court of Justice, Toronto (Mr. Justice J.M. Farley), Case No. 01-CL-4109, (April 19, 2001) and United States Bankruptcy Court for the District of Delaware (Hon. Mary F. Walrath), Case No. 01-01114 (MFW), (May 24, 2001) including approval and adoption of the *Guidelines*.

**Cross-Border Insolvency Protocol in Re American Eco Corporation** between United States District Court for the District of Delaware (Hon. Susan L. Robinson), Case No. 00-3253 (SLR), (August 4, 2000) and Ontario Superior Court of Justice, Toronto (Madam Justice Swinton), Case No. 00-CL-3841, (August 4, 2000).

**Cross-Border Insolvency Protocol in Re AgriBioTech Inc.** between Ontario Superior Court of Justice, Toronto (Mr. Justice J.M. Farley), Case No. 31-OR-371448, (June 16, 2000) and United States Bankruptcy Court for the District of Nevada (Hon. Linda B. Riegle), Case No. 500-10534 LBR, (June 28, 2000) - Unofficial Version.

**Cross-Border Insolvency Protocol in Re Manhattan Investment Fund Limited** between United States Bankruptcy Court for the Southern District of New York (Hon. Burton R. Lifland), Case No. 00-10922BRL, (April 2000) and High Court of Justice of the British Virgin Islands (Chief Justice Austin Ward), Case No. 19 of 2000, (April, 2000) and Supreme Court of Bermuda (Mr. Justice Kenneth A. Benjamin), Case No. 2000/37, (April 2000).

**Cross-Border Insolvency Protocol in Re Inverworld Inc.** between United States District Court for the Western District of Texas (Hon. Frederick Biery), Case No. SA99-C0822FB, (October 22, 1999) and U.K. High Court of Justice, Chancery Division, (1999) and the Grand Court of the Cayman Island, (1999).

- 55 -

**Cross-Border Insolvency Protocol in Re Philip Services Corporation** between United States Bankruptcy Court for the District of Delaware (Hon. Mary Walrath), Case No. 99-B-02385, (June 28, 1999) and Ontario Superior Court of Justice, Toronto (Mr. Justice Robert A. Blair), Case No. 99-CL-3442, (June 25, 1999).

**Cross-Border Insolvency Protocol in Re Livent Inc.** between United States Bankruptcy Court for the Southern District of New York (Hon. Arthur Gonzales), Case No. 98-B-48312, and Ontario Superior Court of Justice, Toronto (Mr. Justice J.D. Ground), Case No. 98-CL-3162, (June 11, 1999).

**Cross-Border Insolvency Protocol in Re Loewen Group** between United States Bankruptcy Court for the District of Delaware (Chief Judge Peter J. Walsh) Case No. 99-1244 (June 30, 1999) and Ontario Superior Court of Justice, Toronto (Mr. Justice J.M. Farley) Case No. 99-CL-3384 (June 1, 1999).

**Cross-Border Liquidation Protocol in Re AIOC Corporation and AIOC Resources AG** between United States and Switzerland: United States Bankruptcy Court for Southern District Court of New York (Chief Judge Tina L. Brozman), Case Nos. 96 B 41895 and 96 B 41896, (April 3, 1998).

**Cross-Border Insolvency Protocol in Re Solv-Ex Canada Limited and Re Solv-Ex Corporation** between Alberta Court of Queen's Bench (Mr. Justice G.R. Forsyth), Case No. 9701-10022, (January 28, 1998) and United States Bankruptcy Court for the District of New Mexico (Hon. Mark McFeely), Case No. 11-97-14362-MA, (January 28, 1998).

**Draft Cross-Border Liquidation Protocol in Re Tee-Comm Electronics Inc.** between Ontario Superior Court of Justice and United States Bankruptcy Court for the District of Delaware (June 27, 1997).

**Cross-Border Insolvency Protocol between the United States and Israel in Re Nakash:** United States Bankruptcy Court for the Southern District of New York, Case No. 94 B 44840, (May 23, 1996) and District Court of Jerusalem, Case No. 1595/87, (May 23, 1996).

**Order Co-ordinating Canadian and United States Reorganizational Plans in Re Everfresh Beverages Inc.** Ontario Court of Justice, Toronto (Mr. Justice J.M. Farley), (May 15, 1996).

**Orders Approving Cross-Border Insolvency Protocol between Canada and the United States in Re Everfresh Beverages Inc.:** Ontario Court of Justice, Toronto (Mr. Justice J.M. Farley), Case No. 32-077978, (December 20, 1995) and United States Bankruptcy Court for the Southern District of New York. (Hon. Burton R. Lifland), Case No. 95 B 45405, (December 20, 1995).

**Cross-Border Insolvency Protocol in Re Commodore Electronics Limited and Commodore International Limited,** between the United States Bankruptcy Court for the Southern District of New York and the Supreme Court of the Commonwealth of the Bahamas (December 8, 1994).

**Cross-Border Protocol in Re Olympia & York Developments Limited** between Ontario Court of Justice (General Division), Toronto (Mr. Justice R.A. Blair) and United States Bankruptcy Court for the Southern District of New York (Hon. James L. Garrity, Jr.) (Reasons for Decision of the Ontario Court of Justice (General Division): (1993), 20 C.B.R. (3d) 165).

**Cross-Border Insolvency Protocol and Order Approving Protocol in Re Maxwell Communication plc** between the United States and the United Kingdom. United States Bankruptcy Court for the Southern District of New York (Hon. Tina L. Brozman), Case No. 91 B 15741, (January 15, 1992) and the High Court of Justice, Chancery Division, Companies Court, Case No. 0014001 of 1991, (December 31, 1991).

APPENDIX 5

ANNOUNCEMENT OF APPROVAL OF ADOPTION OF ALI GUIDELINES BY
ONTARIO SUPERIOR COURT OF JUSTICE [COMMERCIAL LIST]

**Superior Court of Justice**
**Commercial List**

**Protocol Concerning Court-to-Court Communications in Cross-Border Cases**

The Commercial List has approved the adoption of the Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases ("Guidelines"), prepared by the American Law Institute, for matters on the Commercial List. The Guidelines have already been applied to international insolvency cases on the Commercial List. It is expected that these Guidelines will facilitate cooperative procedures for insolvency proceedings and other types of commercial disputes involving cross-border proceedings, where court-to-court communications might facilitate in harmonizing proceedings to help ensure consistent results and increase efficiency.

The Guidelines will only be applied in specific cases, following adequate notice to the parties.

Although the Guidelines were prepared for court-to-court communications as between Canada and the United States, the Commercial List endorses their application in court-to-court communications between Canada and other countries, and as between Ontario and the other provinces and territories.

Counsel and/or the parties should ensure that any issues concerning the confidentiality of materials to be transmitted by the Commercial List to another jurisdiction, including the deemed undertaking rule, Rule 30.1 of the Rules of Civil Procedure, be addressed when consideration is given by the court to the transmittal of evidentiary or written materials from the Commercial List to another court. The Guidelines are to apply only in a manner that is consistent with the Rules of Civil Procedure and the practice in this jurisdiction.

The Commercial List confirms, as noted in the Guidelines, that the Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases, and to change and evolve as experience is gained from working with them.

- 58 -

To view or print a copy of the guidelines follow the link below:
Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

- 59 -

## APPENDIX 6

ANNOUNCEMENT OF APPROVAL OF ADOPTION OF ALI GUIDELINES BY
BRITISH COLUMBIA SUPREME COURT

# NOTICE TO THE PROFESSION

### Re: Guidelines Applicable to Court-to-Court
### Communications in Cross-Border Cases

In 2000, the American Law Institute developed *Guidelines Applicable to Court-to-Court
Communications in Cross-Border Cases* (the *Guidelines*) as part of its Transnational
Insolvency Project. The *Guidelines* are intended to enhance coordination and
harmonization of insolvency proceedings which involve more than one jurisdiction by
providing direction for communications between the courts in the jurisdictions
involved. The International Insolvency Institute approved the *Guidelines* in 2001 and
recommended that insolvency professionals and courts adopt the *Guidelines* to facilitate
court-to-court communication in cross-border matters.

Following this recommendation, Supreme Court reviewed and adopted the *Guidelines*
on November 10, 2004. The *Guidelines* have been posted on the Supreme Court website
at www.courts.gov.bc.ca. The *Guidelines* are also available on the International
Insolvency Institute website at www.iiiglobal.org.

It is important to emphasize that the *Guidelines* require that all the rules and procedures
governing proceedings in British Columbia be complied with. Nor do the *Guidelines*
alter or affect the substantive rights of the parties or give any advantage to any party
over any other party.

November 22, 2004

Donald I. Brenner
Chief Justice

- 60 -

APPENDIX 7

ALI Guidelines

Applicable to Court-to-Court Communications

(English and French)

THE AMERICAN LAW INSTITUTE

———

TRANSNATIONAL INSOLVENCY:
COOPERATION AMONG
THE NAFTA COUNTRIES

PRINCIPLES OF
COOPERATION AMONG
THE
NAFTA COUNTRIES

**Guidelines Applicable to Court-to-Court Communications in
Cross-Border Cases**

*As Adopted and Promulgated*
BY
THE AMERICAN LAW INSTITUTE
AT WASHINGTON, D.C.
May 16, 2000



The Executive Office The American Law Institute

4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099

Telephone: (215) 243-1600 • Telecopier: (215) 243-1636

E-mail: ali@ali.org • Website: http://www.ali.org

- 62 -

### Guidelines
### Applicable to Court-to-Court Communications
### in Cross-Border Cases

*Introduction:*

One of the most essential elements of cooperation in cross-border cases is communication among the administrating authorities of the countries involved. Because of the importance of the courts in insolvency and reorganization proceedings, it is even more essential that the supervising courts be able to coordinate their activities to assure the maximum available benefit for the stakeholders of financially troubled enterprises.

These Guidelines are intended to enhance coordination and harmonization of insolvency proceedings that involve more than one country through communications among the jurisdictions involved. Communications by judges directly with judges or administrators in a foreign country, however, raise issues of credibility and proper procedures. The context alone is likely to create concern in litigants unless the process is transparent and clearly fair. Thus, communication among courts in cross-border cases is both more important and more sensitive than in domestic cases. These Guidelines encourage such communications while channeling them through transparent procedures. The Guidelines are meant to permit rapid cooperation in a developing insolvency case while ensuring due process to all concerned.

A Court intending to employ the Guidelines — in whole or part, with or without modifications — should adopt them formally before applying them. A Court may wish to make its adoption of the Guidelines contingent upon, or temporary until, their adoption by other courts concerned in the matter. The adopting Court may want to make adoption or continuance conditional upon adoption of the Guidelines by the other Court in a substantially similar form, to ensure that judges, counsel, and parties are not subject to different standards of conduct.

The Guidelines should be adopted following such notice to the parties and counsel as would be given under local procedures with regard to any important procedural decision under similar circumstances. If communication with other courts is urgently needed, the local procedures, including notice requirements,

that are used in urgent or emergency situations should be employed, including, if appropriate, an initial period of effectiveness, followed by further consideration of the Guidelines at a later time. Questions about the parties entitled to such notice (for example, all parties or representative parties or representative counsel) and the nature of the court's consideration of any objections (for example, with or without a hearing) are governed by the Rules of Procedure in each jurisdiction and are not addressed in the Guidelines.

The Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases and to change and evolve as the international insolvency community gains experience from working with them. They are to apply only in a manner that is consistent with local procedures and local ethical requirements. They do not address the details of notice and procedure that depend upon the law and practice in each jurisdiction. However, the Guidelines represent approaches that are likely to be highly useful in achieving efficient and just resolutions of cross-border insolvency issues. Their use, with such modifications and under such circumstances as may be appropriate in a particular case, is therefore recommended.

## Guideline 1

Except in circumstances of urgency, prior to a communication with another Court, the Court should be satisfied that such a communication is consistent with all applicable Rules of Procedure in its country. Where a Court intends to apply these Guidelines (in whole or in part and with or without modifications), the Guidelines to be employed should, wherever possible, be formally adopted before they are applied. Coordination of Guidelines between courts is desirable and officials of both courts may communicate in accordance with Guideline 8(d) with regard to the application and implementation of the Guidelines.

## Guideline 2

A Court may communicate with another Court in connection with matters relating to proceedings before it for the purposes of coordinating and harmonizing proceedings before it with those in the other jurisdiction.

## Guideline 3

A Court may communicate with an Insolvency Administrator in another jurisdiction or an authorized Representative of the Court in that jurisdiction in

- 64 -

connection with the coordination and harmonization of the proceedings before it with the proceedings in the other jurisdiction.

## Guideline 4

A Court may permit a duly authorized Insolvency Administrator to communicate with a foreign Court directly, subject to the approval of the foreign Court, or through an Insolvency Administrator in the other jurisdiction or through an authorized Representative of the foreign Court on such terms as the Court considers appropriate.

## Guideline 5

A Court may receive communications from a foreign Court or from an authorized Representative of the foreign Court or from a foreign Insolvency Administrator and should respond directly if the communication is from a foreign Court (subject to Guideline 7 in the case of two-way communications) and may respond directly or through an authorized Representative of the Court or through a duly authorized Insolvency Administrator if the communication is from a foreign Insolvency Administrator, subject to local rules concerning ex parte communications.

## Guideline 6

Communications from a Court to another Court may take place by or through the Court:

(a) Sending or transmitting copies of formal orders, judgments, opinions, reasons for decision, endorsements, transcripts of proceedings, or other documents directly to the other Court and providing advance notice to counsel for affected parties in such manner as the Court considers appropriate;

(b) Directing counsel or a foreign or domestic Insolvency Administrator to transmit or deliver copies of documents, pleadings, affidavits, factums, briefs, or other documents that are filed or to be filed with the Court to the other Court in such fashion as may be appropriate and providing advance notice to counsel for affected parties in such manner as the Court considers appropriate;

- 65 -

(c)    Participating in two-way communications with the other Court by telephone or video conference call or other electronic means, in which case Guideline 7 should apply.

## Guideline 7

In the event of communications between the Courts in accordance with Guidelines 2 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by either of the two Courts:

(a)    Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b)    The communication between the Courts should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of both Courts, should be treated as an official transcript of the communication;

(c)    Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of either Court, and of any official transcript prepared from a recording should be filed as part of the record in the proceedings and made available to counsel for all parties in both Courts subject to such Directions as to confidentiality as the Courts may consider appropriate; and

(d)    The time and place for communications between the Courts should be to the satisfaction of both Courts. Personnel other than Judges in each Court may communicate fully with each other to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by either of the Courts.

## Guideline 8

In the event of communications between the Court and an authorized Representative of the foreign Court or a foreign Insolvency Administrator in accordance with

- 66 -

Guidelines 3 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by the Court:

(a)    Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b)    The communication should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of the Court, can be treated as an official transcript of the communication;

(c)    Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of the Court, and of any official transcript prepared from a recording should be filed as part of the record in the proceedings and made available to the other Court and to counsel for all parties in both Courts subject to such Directions as to confidentiality as the Court may consider appropriate; and

(d)    The time and place for the communication should be to the satisfaction of the Court. Personnel of the Court other than Judges may communicate fully with the authorized Representative of the foreign Court or the foreign Insolvency Administrator to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by the Court.

### Guideline 9

A Court may conduct a joint hearing with another Court. In connection with any such joint hearing, the following should apply, unless otherwise ordered or unless otherwise provided in any previously approved Protocol applicable to such joint hearing:

(a)    Each Court should be able to simultaneously hear the proceedings in the other Court.

(b)    Evidentiary or written materials filed or to be filed in one Court should, in accordance with the Directions of that Court, be transmitted to the other Court or made available electronically in a

- 67 -

publicly accessible system in advance of the hearing. Transmittal of such material to the other Court or its public availability in an electronic system should not subject the party filing the material in one Court to the jurisdiction of the other Court.

(c) Submissions or applications by the representative of any party should be made only to the Court in which the representative making the submissions is appearing unless the representative is specifically given permission by the other Court to make submissions to it.

(d) Subject to Guideline 7(b), the Court should be entitled to communicate with the other Court in advance of a joint hearing, with or without counsel being present, to establish Guidelines for the orderly making of submissions and rendering of decisions by the Courts, and to coordinate and resolve any procedural, administrative, or preliminary matters relating to the joint hearing.

(e) Subject to Guideline 7(b), the Court, subsequent to the joint hearing, should be entitled to communicate with the other Court, with or without counsel present, for the purpose of determining whether coordinated orders could be made by both Courts and to coordinate and resolve any procedural or nonsubstantive matters relating to the joint hearing.

### Guideline 10

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in the other jurisdiction without the need for further proof or exemplification thereof.

### Guideline 11

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, accept that Orders made in the proceedings in the other jurisdiction were duly and properly made or entered on or about their respective dates and accept that such Orders require no further proof or exemplification for purposes of the proceedings before it, subject to all such proper reservations as in the opinion of the Court are appropriate regarding

- 68 -

proceedings by way of appeal or review that are actually pending in respect of any such Orders.

## Guideline 12

The Court may coordinate proceedings before it with proceedings in another jurisdiction by establishing a Service List that may include parties that are entitled to receive notice of proceedings before the Court in the other jurisdiction ("Non-Resident Parties"). All notices, applications, motions, and other materials served for purposes of the proceedings before the Court may be ordered to also be provided to or served on the Non-Resident Parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the Court in accordance with the procedures applicable in the Court.

## Guideline 13

The Court may issue an Order or issue Directions permitting the foreign Insolvency Administrator or a representative of creditors in the proceedings in the other jurisdiction or an authorized Representative of the Court in the other jurisdiction to appear and be heard by the Court without thereby becoming subject to the jurisdiction of the Court.

## Guideline 14

The Court may direct that any stay of proceedings affecting the parties before it shall, subject to further order of the Court, not apply to applications or motions brought by such parties before the other Court or that relief be granted to permit such parties to bring such applications or motions before the other Court on such terms and conditions as it considers appropriate. Court-to-Court communications in accordance with Guidelines 6 and 7 hereof may take place if an application or motion brought before the Court affects or might affect issues or proceedings in the Court in the other jurisdiction.

## Guideline 15

A Court may communicate with a Court in another jurisdiction or with an authorized Representative of such Court in the manner prescribed by these Guidelines for purposes of coordinating and harmonizing proceedings before it with proceedings in the other jurisdiction regardless of the form of the proceedings before it or before the other Court wherever there is commonality

- 69 -

among the issues and/or the parties in the proceedings. The Court should, absent compelling reasons to the contrary, so communicate with the Court in the other jurisdiction where the interests of justice so require.

## Guideline 16

Directions issued by the Court under these Guidelines are subject to such amendments, modifications, and extensions as may be considered appropriate by the Court for the purposes described above and to reflect the changes and developments from time to time in the proceedings before it and before the other Court. Any Directions may be supplemented, modified, and restated from time to time and such modifications, amendments, and restatements should become effective upon being accepted by both Courts. If either Court intends to supplement, change, or abrogate Directions issued under these Guidelines in the absence of joint approval by both Courts, the Court should give the other Courts involved reasonable notice of its intention to do so.

## Guideline 17

Arrangements contemplated under these Guidelines do not constitute a compromise or waiver by the Court of any powers, responsibilities, or authority and do not constitute a substantive determination of any matter in controversy before the Court or before the other Court nor a waiver by any of the parties of any of their substantive rights and claims or a diminution of the effect of any of the Orders made by the Court or the other Court.

- 70 -

*The American Law Institute*

---

L'INSOLVABILITÉ TRANSFRONTALIÈRE

---

Directives applicables aux communications de tribunal à tribunal

dans des cas transfrontaliers

---

Telles qu'adoptées et promulguées
par
*THE AMERICAN LAW INSTITUTE*
À WASHINGTON, D.C.

Le 16 mai 2000

---

Le Bureau Exécutif

The American Law Institute
4025 Chestnut Street

Philadelphie, Pennsylvanie.19104-3099

Téléphone: (215) 243-1600 · Télécopieur: (215) 243-1636

Courriel: ali@ali.org · Site Web: Http://www.ali.org

- 71 -

## NOTES DU TRADUCTEUR

L'introduction aux Directives applicables aux communications de tribunal à tribunal dans les cas transfrontaliers situe bien ces Directives dans leur contexte général. Ces Directives se rapportent à la nécessité moderne de communication et de coordination entre les autorités judiciaires de juridictions différentes pour l'application de standards de conduite similaires avec un souci de souplesse et d'adaptation et dans le respect de l'autonomie et des règles locales de chaque juridiction. Les praticiens de l'insolvabilité salueront l'accomplissement que constituent la diffusion et l'application volontaire et réciproque de ces Directives dans les cas transfrontaliers.

Il est à noter qu'assez tôt après leur adoption en mai 2000, les Directives ont trouvé application au Canada, une première fois dans l'affaire *Re : Matlack Inc.* où le juge Farley de la Cour supérieure de l'Ontario, le 19 avril 2001, accordait un sursis des procédures visant les créanciers canadiens de Matlack Inc. apportant ainsi l'assistance des tribunaux canadiens à une réorganisation suivant le *Chapter 11* américain. Le juge désignait également un cabinet de gestionnaires professionnels comme « officier d'information » ayant pour mandat, notamment, d'informer les tribunaux canadiens de l'évolution des procédures aux États-Unis. Dans cette affaire, le tribunal canadien a donné effet à un protocole relatif aux communications entre les instances judiciaires internationales suivant les Directives élaborées par *The American Law Institute*, dans la mesure où un protocole semblable recevait effet du côté américain.

Au Québec, la juge Danièle Mayrand, en date du 1er août 2001 , rendait une ordonnance reconnaissant les procédures américaines comme des « *procédures intentées à l'étranger* »au sens et aux fins de l'article 18.6 de la *Loi sur les arrangements avec les créanciers des compagnies* et approuvait un protocole intégrant les Directives, ordonnant que les parties aux procédures et toutes personnes impliquées soient régies par ce protocole et s'y conforment après l'approbation du protocole par le tribunal américain.

Ces décisions ont ouvert la voie à l'application pratique des Directives et il est à souhaiter que la diffusion et la connaissance de ces Directives par les praticiens de l'insolvabilité en favorisent l'utilisation fréquente au bénéfice de la bonne gestion et de la solution des dossiers transfrontaliers.

- 72 -

**ROBERT TESSIER, avocat**

*POULIOT MERCURE, s.e.n.c.*

1155, boul. René-Lévesque Ouest, 31$^{ième}$ étage

Montréal (Québec) H3B 3S6

tél :(514)871-5474

fax : (514) 875-4308

Courriel : rtessier@pouliotmercure.com

- 73 -

*Directives applicables*

*aux communications de tribunal à tribunal*

*dans des cas transfrontaliers*

*Introduction:*

L'un des éléments cruciaux de la coopération dans des cas d'insolvabilité transfrontalière consiste en la communication entre les autorités administratives des pays impliqués. À cause du rôle important que jouent les tribunaux en matière d'insolvabilité et de procédures de réorganisation, il est capital que les tribunaux qui les supervisent puissent être en mesure de coordonner leurs activités pour garantir le maximum d'effets positifs possibles aux parties impliquées dans une situation d'insolvabilité ou de réorganisation.

Les présentes Directives sont destinées à accroître la coordination et l'harmonisation des procédures d'insolvabilité qui impliquent plus d'un pays, par des communications entre les juridictions concernées. Les communications faites directement par des juges à d'autres juges ou à des administrateurs d'un pays étranger soulèvent, cependant, des questions de crédibilité et de pertinence des procédures utilisées. Le contexte lui-même peut susciter des inquiétudes chez les protagonistes à moins que la façon de procéder soit transparente et non seulement foncièrement équitable mais aussi en toute apparence équitable. Ainsi, la communication entre les tribunaux dans des cas transfrontaliers se révèle à la fois plus importante et plus délicate que dans des cas nationaux. Ces Directives encouragent de telles communications tout en suggérant des véhicules procéduraux transparents. Les Directives visent à permettre une coopération rapide dans un cas d'insolvabilité en évolution tout en assurant un processus adéquat à toutes les parties concernées.

Pour le moment, les Directives sont susceptibles d'application seulement entre le Canada et les États-Unis en raison des règles très différentes qui gouvernent les communications avec et entre les tribunaux du Mexique. Néanmoins, un

- 74 -

tribunal mexicain pourrait choisir d'adopter certaines ou toutes les Directives pour des communications entreprises par un « sindico » avec des administrateurs ou des tribunaux étrangers.

Un tribunal qui entend employer les Directives, en tout ou en partie, avec ou sans modifications, devrait les adopter formellement avant de les appliquer. Un tribunal peut souhaiter adopter les Directives de façon provisoire ou conditionnellement à leur adoption par d'autres tribunaux impliqués en la matière. Le tribunal qui les adopte peut le faire ou en continuer l'application conditionnellement à l'adoption des Directives par un autre tribunal dans une forme substantiellement semblable, pour s'assurer que les juges, les procureurs et les parties ne soient pas soumis à des standards de conduite différents.

Les Directives devraient être adoptées après un avis aux parties et aux procureurs en conformité avec les procédures locales ayant trait à toute décision procédurale importante en circonstances similaires. Si la communication avec d'autres tribunaux est urgente, les procédures locales, y compris les exigences en matière d'avis, qui sont employées en circonstances urgentes ou extrêmes devraient être appliquées, y compris, s'il y a lieu, une période d'exécution provisoire suivie d'une analyse subséquente de l'opportunité d'adoption des Directives. Les questions relatives aux parties ayant droit à tel avis (par exemple, toutes les parties ou certains représentants, ou les procureurs) ainsi que la nature des considérations du tribunal en ce qui concerne toutes objections (par exemple, avec ou sans audition) sont soumises aux règles de procédure de chaque juridiction et ne sont pas considérées dans les Directives.

Les Directives ne sont pas destinées à être statiques, mais plutôt à être adaptées et modifiées suivant les circonstances des cas précis et à changer et à se développer à mesure que la communauté internationale oeuvrant en matière d'insolvabilité acquiert de l'expérience en les employant. Elles doivent s'appliquer uniquement d'une façon qui est compatible avec les procédures locales et avec les exigences locales en matière d'éthique. Elles ne visent pas à régir les détails d'avis et procéduraux relevant de la loi et de la pratique dans chaque juridiction. Cependant, les Directives représentent des approches qui se veulent d'une grande utilité pour accomplir des résolutions efficaces et justes de situations d'insolvabilité transfrontalière. Il est donc recommandé que les

- 75 -

Directives soient utilisées avec les modifications pertinentes selon les circonstances qui peuvent être appropriées au cas particulier considéré.


*Directive 1*


Sauf dans des circonstances d'urgence, avant une communication avec un autre tribunal, le tribunal devrait être convaincu qu'une telle communication est compatible avec toutes les règles de procédure applicables de son pays. Advenant qu'un tribunal ait l'intention d'appliquer ces Directives (en tout ou en partie et avec ou sans modifications), les Directives qui sont employées devraient, dans la mesure du possible, être formellement adoptées avant leur application. La coordination des Directives entre les tribunaux est désirable et les officiers des deux tribunaux peuvent communiquer conformément à la Directive 8 (d) en ce qui concerne l'application et la mise en œuvre des Directives.

- 76 -

*Directive 2*

Un tribunal peut communiquer avec un autre tribunal quant à des procédures dont il est saisi, dans le but de coordonner et d'harmoniser les procédures dont il est saisi avec celles dont un tribunal d'une autre juridiction est saisi.

*Directive 3*

Un tribunal peut communiquer avec un administrateur en matière d'insolvabilité d'une autre juridiction ou avec un représentant autorisé du tribunal de cette juridiction relativement à la coordination et l'harmonisation des procédures dont il est saisi avec les procédures dont une autre juridiction est saisie.

*Directive 4*

Un tribunal peut permettre à un administrateur en matière d'insolvabilité dûment autorisé de communiquer directement avec un tribunal étranger, sujet à l'approbation du tribunal étranger, ou par l'intermédiaire d'un administrateur en matière d'insolvabilité de l'autre juridiction ou par l'intermédiaire d'un représentant autorisé du tribunal étranger suivant des conditions que le tribunal juge appropriées.

*Directive 5*

Un tribunal peut recevoir des communications d'un tribunal étranger ou d'un représentant autorisé du tribunal étranger ou d'un administrateur en matière d'insolvabilité étranger et il devrait répondre directement si la communication provient d'un tribunal étranger (sujet à la Directive 7 dans le cas de communications bilatérales) et peut répondre directement ou par un représentant autorisé du tribunal ou par un administrateur en matière d'insolvabilité dûment autorisé si la communication provient d'un

administrateur en matière d'insolvabilité étranger, sujet aux règles locales relatives aux communications ex parte.

*Directive 6*

Les communications d'un tribunal à un autre tribunal peuvent avoir lieu directement par le tribunal ou par son intermédiaire :

(a)     par l'envoi ou la transmission de copies d'ordonnances formelles, de jugements, d'opinions, de motifs de décision, de ratifications, de transcriptions des procédures ou autres documents directement à l'autre tribunal et par l'envoi de préavis aux procureurs des parties intéressées de la manière jugée appropriée par le tribunal;

(b)     par la demande à un procureur ou à un administrateur en matière d'insolvabilité étranger ou national de transmettre ou livrer à l'autre tribunal des copies de documents, de plaidoyers, d'affidavits, de factums, de résumés ou autres documents qui sont déposés ou à être déposés auprès du tribunal, de la façon qui peut être appropriée et par l'envoi d'un préavis aux procureurs de chacune des parties intéressées de la manière jugée appropriée par le tribunal;

(c)     par la participation à des communications bilatérales avec l'autre tribunal par téléphone ou par appel vidéoconférence ou par d'autres moyens électroniques, auquel cas la Directive 7 devrait s'appliquer.

*Directive 7*

Dans l'éventualité de communications entre les tribunaux conformément aux Directives 2 et 5 au moyen de téléphone, d'appel par vidéoconférence ou autre moyen électronique, à moins qu'il en soit décidé autrement par l'un ou l'autre des deux tribunaux :

- 78 -

(a)     le procureur de chaque partie intéressée devrait être autorisé à participer en personne à cette communication et un préavis de la communication devrait être donné à toutes les parties conformément aux règles de procédure applicables auprès de chaque tribunal;

(b)     la communication entre les tribunaux devrait être enregistrée et peut être transcrite.  Une transcription écrite peut être réalisée à partir d'un enregistrement de la communication et cette transcription, avec l'approbation des deux tribunaux, devrait être traitée comme une transcription officielle de la communication;

(c)     copies de tout enregistrement de la communication, de toute transcription de la communication préparée conformément aux directives de l'un ou l'autre des tribunaux, et de toute transcription officielle préparée à partir d'un enregistrement devraient être déposées comme faisant partie du dossier des procédures concernées et devraient être disponibles aux procureurs de toutes parties auprès des deux tribunaux, sujet aux directives relatives à la confidentialité que les tribunaux peuvent considérer appropriées; et

(d)     le moment et l'endroit des communications entre les tribunaux devraient être à la satisfaction des deux tribunaux.  Le personnel autre que les juges de chacun des tribunaux peut librement échanger pour établir les modalités appropriées de communication sans que la participation de procureurs ne soit nécessaire, à moins qu'il en soit décidé autrement par l'un ou l'autre des tribunaux.

*Directive 8*

Dans l'éventualité de communications entre le tribunal et un représentant autorisé d'un tribunal étranger ou un administrateur en matière d'insolvabilité étranger conformément aux Directives 3 et 5 au moyen de téléphone ou d'appel

- 79 -

par vidéoconférence ou autre moyen électronique, à moins qu'il en soit décidé autrement par le tribunal :

(a)     le procureur de chaque partie intéressée devrait être autorisé à participer en personne à la communication et un avis préalable de cette communication devrait être donné à chaque partie conformément aux règles de procédure applicables auprès de chaque tribunal;

(b)     la communication devrait être enregistrée et peut être transcrite. Une transcription écrite peut être réalisée à partir d'un enregistrement de la communication qui, avec l'autorisation du tribunal, peut être considérée comme une transcription officielle de la communication;

(c)     copies de tout enregistrement de la communication, de toute transcription de la communication préparée conformément à toute directive du tribunal, et toute transcription officielle préparée à partir d'un enregistrement devraient être déposées comme faisant partie du dossier des procédures et devraient être disponibles pour l'autre tribunal et pour les procureurs de toutes parties auprès des deux tribunaux, sujet aux directives relatives à la confidentialité que le tribunal peut considérer appropriées; et

(d)     le moment et l'endroit de la communication devraient être à la satisfaction du tribunal.   Le personnel du tribunal autre que les juges peut communiquer librement avec le représentant autorisé du tribunal étranger ou avec l'administrateur en matière d'insolvabilité étranger pour établir les modalités appropriées de la communication sans que la participation de procureurs ne soit nécessaire, à moins que le tribunal en décide autrement.

- 80 -

*Directive 9*

Un tribunal peut tenir une audition conjointe avec un autre tribunal. En ce qui concerne toute telle audition conjointe, les dispositions suivantes devraient s'appliquer, à moins qu'il en soit décidé autrement ou à moins qu'il en soit pourvu autrement dans tout protocole préalablement approuvé s'appliquant à telle audition conjointe :

(a)  Chaque tribunal devrait être en mesure d'entendre simultanément les procédures se déroulant auprès de l'autre tribunal.

(b)  Les éléments de preuve et pièces produits ou qui doivent être produits auprès d'un tribunal devraient, conformément aux directives de ce tribunal, être transmis à l'autre tribunal ou devraient être disponibles électroniquement au moyen d'un véhicule publiquement accessible avant l'audition. La transmission de tel matériel à l'autre tribunal ou sa disponibilité publique par un système électronique ne devrait pas assujettir la partie qui produit la pièce ou l'élément de preuve auprès d'un tribunal à la juridiction de l'autre tribunal.

(c)  Les représentations ou demandes par un représentant de quelque partie devraient être faites uniquement au tribunal auprès duquel le représentant comparaît à moins que le représentant ne soit spécifiquement autorisé par l'autre tribunal à lui faire des représentations.

(d)  Sujet à la Directive 7 (b), le tribunal devrait être autorisé à communiquer avec l'autre tribunal avant une audition conjointe, avec ou sans la présence de procureurs, pour établir des directives relatives au déroulement ordonné des représentations et de la délivrance des décisions par les tribunaux, et pour coordonner et résoudre toute question procédurale, administrative ou préliminaire relative à cette audition conjointe.

- 81 -

(e)     Sujet à la Directive 7 (b), un tribunal, suite à l'audition conjointe, devrait être autorisé à communiquer avec l'autre tribunal, avec ou sans la présence de procureurs, dans le but de déterminer s'il y a lieu que les ordonnances soient coordonnées par les deux tribunaux et pour coordonner et résoudre toute question procédurale non substantive se rapportant à l'audition conjointe.

*Directive 10*

Le tribunal devrait, sauf s'il y a objection fondée, et, en tel cas, dans une mesure qui tient compte de cette objection, reconnaître et accepter comme authentiques les dispositions des lois, les règlements statutaires ou administratifs et les règles de pratique d'application générale qui régissent les procédures dans l'autre juridiction sans besoin de preuve spécifique ou d'ampliation.

*Directive 11*

Le tribunal devrait, sauf s'il y a objection fondée et, en tel cas, dans une mesure qui tient compte de cette objection, accepter que les ordonnances émises en ce qui concerne les procédures dans l'autre juridiction ont été dûment et correctement émises ou rendues aux dates qu'elles portent et accepter que telles ordonnances ne nécessitent pas de preuve spécifique ou d'ampliation pour les fins des procédures devant lui, sujet à toutes réserves pertinentes qui de l'avis du tribunal sont appropriées en ce qui concerne les procédures en appel ou en révision qui peuvent être pendantes relativement à telles ordonnances.

*Directive 12*

Le tribunal peut coordonner les procédures devant lui avec les procédures se déroulant dans une autre juridiction en établissant une liste des significations ou notifications qui peut inclure les parties qui ont droit de recevoir avis ou signification des procédures se déroulant devant le tribunal de l'autre juridiction (*parties non-résidentes*).    Tous les avis, les demandes, les requêtes et autres éléments signifiés en ce qui concerne les procédures devant le tribunal peuvent faire l'objet d'une ordonnance de délivrance ou de signification aux parties non-résidentes en rendant ces documents ou éléments disponibles électroniquement

- 82 -

dans un système publiquement accessible ou par télécopie, par envoi postal certifié ou recommandé ou par livraison par courrier, ou de toute autre façon qui peut être ordonnée par le tribunal conformément aux procédures applicables auprès de ce tribunal.

*Directive 13*

Le tribunal peut émettre une ordonnance ou des directives permettant à un administrateur en matière d'insolvabilité étranger ou à un représentant de créanciers dans les procédures de l'autre juridiction ou à un représentant autorisé par le tribunal de l'autre juridiction de comparaître et d'être entendu par le tribunal sans pour autant que cette personne ne devienne sujette à la juridiction du tribunal.

*Directive 14*

Le tribunal peut ordonner que toute suspension des procédures s'appliquant aux parties devant lui, sujet à toutes autres ordonnances subséquentes du tribunal, ne s'appliquera pas à des demandes ou requêtes introduites par telle partie auprès de l'autre tribunal ou que permission soit accordée à telle partie d'introduire telle demande ou requête auprès de l'autre tribunal suivant les termes et conditions qu'il peut juger appropriés.   Les communications de tribunal à tribunal conformément aux Directives 6 et 7 peuvent être appropriées si une demande ou requête introduite auprès du tribunal affecte ou peut affecter la détermination des procédures auprès du tribunal de l'autre juridiction.

*Directive 15*

Un tribunal peut communiquer avec un tribunal d'une autre juridiction ou avec un représentant autorisé de tel tribunal de la manière indiquée aux présentes Directives dans le but de coordonner et d'harmoniser les procédures devant lui avec les procédures de l'autre juridiction sans égard à la forme des procédures devant lui ou devant l'autre tribunal dans la mesure où il y a communauté d'enjeux et/ou de parties quant à ces procédures.   Le tribunal devrait, en l'absence de raisons sérieuses empêchant de le faire, communiquer ainsi avec le tribunal de l'autre juridiction quand les intérêts de la justice le requièrent.

- 83 -

*Directive 16*

Les directives émises par le tribunal aux termes des présentes Directives sont sujettes aux amendements, modifications et prorogations qui peuvent être considérés appropriés par le tribunal suivant les objectifs décrits ci-haut et pour refléter les changements et les développements qui peuvent survenir de temps à autre dans les procédures devant lui et devant l'autre tribunal. Toute directive susceptible d'être complétée, modifiée ou reformulée de temps à autre et les modifications, amendements ou reformulations devraient prendre effet lorsque acceptés par les deux tribunaux. Si l'un ou l'autre des tribunaux entrevoit de compléter, changer ou abroger les directives émises suivant les présentes Directives en l'absence d'une approbation conjointe par les deux tribunaux, le tribunal devrait donner avis raisonnable à l'autre tribunal de son intention d'agir ainsi.

*Directive 17*

Les modalités et façons de procéder considérées par les présentes Directives ne constituent pas compromis ou renonciation par le tribunal de quelque responsabilité ou autorité et ne constituent pas une détermination substantive de quelque matière controversée devant le tribunal ou devant l'autre tribunal, ni une renonciation par quelque partie impliquée à quelque droit substantif qu'elle peut avoir ou à quelque réclamation ni ne constituent une réduction de l'effet de quelque ordonnance émise par le tribunal ou par l'autre tribunal.

- 84 -

Appendix 8

INTERNATIONAL BAR ASSOCIATION

SECTION ON BUSINESS LAW

COMMITTEE J - INSOLVENCY AND CREDITORS' RIGHTS

*Committee J*
*Cross-Border Insolvency Concordat*

Adopted by the Council of the Section on Business Law
of the International Bar Association

Paris, France
September 17, 1995

Adopted by the Council
of the International
Bar Association

Madrid, Spain
May 31, 1996

E. Bruce Leonard
Cassels Brock & Blackwell LLP
Toronto, Canada

Hans Lüer
Lüer & Görg
Cologne, Germany

Co-Chairs, Committee J

M.O. (Mike) Sigal
Simpson, Thatcher & Bartlett
New York, USA

Christoph Stäubli
Walder Wyss & Partners
Zurich, Switzerland

Co-Chairs, Subcommittee  J1
Cross-Border Insolvency Concordat

- 85 -

## INTRODUCTION TO THE CROSS-BORDER
## INSOLVENCY CONCORDAT

Committee J of the International Bar Association is pleased and proud to have sponsored the development of the Cross-Border Insolvency Concordat. The Concordat is one of the most significant initiatives in international insolvency and reorganizations in many years.

Our Committee is highly appreciative of the work that so many Members of our Committee have put into the analysis and development of the concepts that form the basis of the Concordat. Under the Co-Chairs of our Subcommittee on the Cross-Border Insolvency Concordat, Mike Sigal of New York and Christoph Staubli of Zurich, Country Teams were organized in over twenty countries from all around the world. Through presentations at Committee J Conferences and Meetings, several hundred members of our Committee have been able to participate in the deliberations on the Concordat. The Committee also acknowledges a deep debt of gratitude to several distinguished international jurists who participated in the development and, more latterly, in the actual application of the Concordat to an existing cross-border reorganization between two of Committee J's member countries.

The Concordat is intended to an evolving work that will be altered and modified to reflect the experiences that members of the international insolvency community gain from working with its concepts and applying it in practice. We are aware of the benefits to be derived from the application of the principles of the Concordat within the work of the United Nations Commission on International Trade Law (UNCITRAL) prospective Model Law on Cross-Border Insolvency. We are also considering provisions based on the Concordat model that would be suitable for application in the case of cross-border insolvencies involving financial institutions and the potential development and use of the Concordat for model provisions in commercial documentation in international transactions.

Committee J welcomes comments and suggestions on the provisions of the Cross-Border Insolvency Concordat and on measures that could be used to increase the effectiveness of the Concordat in meeting our Committee's goals of achieving increased levels of co-ordination and harmonization among Committee J's member countries in cross-border and multinational insolvencies and reorganizations.

- 86 -

Madrid, Spain
May 31, 1996

E. Bruce Leonard
Cassels Brock & Blackwell
Toronto, Canada

Chairman, Committee J

# INTRODUCTION TO THE COMMITTEE J
# CROSS-BORDER INSOLVENCY CONCORDAT

*Flexibility in the rules appears to be indispensable in international bankruptcy. The situations which arise are so varied that any one rigid rule cannot solve all of them satisfactorily. ... Neither the theory of territoriality nor the theory of ubiquity can cope adequately with the divergent situations.*

Professor Kurt H. Nadelmann

The Cross-Border Insolvency Concordat is a framework for harmonizing cross-border insolvency proceedings. There exists today no uniform statute or treaty adopted by commercial nations dealing with the policy and commercial problems that arise in cross-border insolvencies. Yet cross-border insolvencies are increasing both in number and size, as well as in complexity. The Concordat attempts to aid in filling this gap in international law.

International commerce will be encouraged if the insolvency bench and bar develop a set of general guidelines, a "concordat", which may be used in developing solutions to individual cross-border insolvencies. The purpose of the Concordat is to suggest generalized principles, which the participants or courts could tailor to fit the particular circumstances and then adopt as a practical approach toward dealing with the process.

To be supportive of international commerce, any insolvency regime must be reasonably predictable, fair and convenient. Supporting international commerce is a worthy goal, because, as some have noted, countries which trade together rarely make war upon one another. International commerce will be furthered by an understanding in the international business community that general principles exist which, in the event of business crisis, are recognized as an underpinning to harmonize insolvency proceedings.

These principles should reflect respect for the legitimate private expectations of the parties transacting business with the debtor, including their reasonable reliance upon laws of particular jurisdictions. However, legislation reflecting a particular jurisdiction's policies regarding such matters as priorities among claims must be given due weight where jurisdictionally appropriate, as should regulatory laws governing businesses such as banking or insurance.

- 88 -

The Concordat has been prepared to provide a framework of general principles for addressing cross-border insolvencies. The Concordat deals with some of the important conceptual issues that arise in cross-border insolvencies. Some principles have been framed in the alternative, reflecting among other things extensive comment from many countries.

It is important to note what the Concordat is not. The Concordat is not intended to be used as, or as a substitute for, a treaty or statute. The Concordat is not a rigid set of rules; indeed, it is expected to change as it is used. Rather, the Concordat is an interim measure until treaties and/or statutes are adopted by commercial nations. It is intended, in the absence of an applicable treaty or statute, to guide practitioners in harmonizing cross-border insolvencies. The Concordat, as modified by counsel to fit the circumstances of any particular cross-border insolvency, could be implemented by court orders or formal agreements between official representatives or informal arrangements, depending upon the rules and practices of the particular forum involved.

## COMMITTEE J CROSS-BORDER INSOLVENCY CONCORDAT
## PRINCIPLE 1

IF AN ENTITY OR INDIVIDUAL WITH CROSS-BORDER CONNECTIONS IS THE SUBJECT OF AN INSOLVENCY PROCEEDING, A SINGLE ADMINISTRATIVE FORUM SHOULD HAVE PRIMARY RESPONSIBILITY FOR COORDINATING ALL INSOLVENCY PROCEEDINGS RELATING TO SUCH ENTITY OR INDIVIDUAL.

---

*Commentary:* In most cases, an enterprise will have its nerve center and many of its assets in one country. In the usual circumstance that country is the most appropriate forum for the administrative center of its insolvency. Having a primary administrative forum presents the possibility of many benefits enhancing control of assets, increasing business values, and ensuring fair treatment of creditors. Predictability of the "natural" administrative forum will also be most supportive of international commerce.

The Concordat is designed to provide principles useful where any of several procedural situations occurs. While in most cases the establishment of a single main proceeding will be the best way to achieve the common goals of most national insolvency regimes, there may well be circumstances in which

more than one plenary case is maintained.  For example, plenary proceedings might proceed in two jurisdictions, with or without an administrative protocol, and with or without limited proceedings in yet other jurisdictions.  In all of these circumstances the Concordat provides principles intended to assist in coordination.  The Concordat also provides principles applicable in any forum whether one, or several, plenary or limited proceedings are pending.  These include the analysis of appropriate choice of law in litigated matters such as claim resolution and voiding rules.

## PRINCIPLE 2

WHERE THERE IS ONE MAIN FORUM:

(A)    ADMINISTRATION AND COLLECTION OF ASSETS SHOULD BE COORDINATED BY THE MAIN FORUM.

(B)    AFTER PAYMENT OF SECURED CLAIMS AND PRIVILEGED CLAIMS, AS DETERMINED BY LOCAL LAW, ASSETS IN ANY FORUM OTHER THAN IN THE MAIN FORUM SHALL BE TURNED OVER TO THE MAIN FORUM FOR DISTRIBUTION.

(C)    COMMON CLAIMS ARE FILED IN AND DISTRIBUTIONS ARE MADE BY THE MAIN FORUM.  COMMON CREDITORS NOT IN THE MAIN FORUM MUST FILE CLAIMS IN THE MAIN FORUM BUT (TO THE EXTENT ALLOWABLE UNDER THE PROCEDURAL RULES OF THE MAIN FORUM) MAY FILE BY MAIL, IN THEIR LOCAL LANGUAGE AND WITH NO FORMALITIES OTHER THAN REQUIRED UNDER THEIR LOCAL INSOLVENCY LAW.

(D)    THE MAIN FORUM MAY NOT DISCRIMINATE AGAINST NON-LOCAL CREDITORS.

(E)    FILING A CLAIM IN THE MAIN FORUM DOES NOT SUBJECT A CREDITOR TO JURISDICTION FOR ANY PURPOSE, EXCEPT FOR CLAIMS ADMINISTRATION SUBJECT TO THE LIMITATIONS OF PRINCIPLE 8 AND EXCEPT FOR ANY OFFSET (UNDER VOIDING RULES OR OTHERWISE) UP TO THE AMOUNT OF THE CREDITOR'S CLAIM).

- 90 -

(F)  A DISCHARGE GRANTED BY THE MAIN FORUM SHOULD BE
RECOGNIZED IN ANY FORUM.

---

*Commentary:*    International commerce is encouraged to the extent that
participants may rely upon the expectation that if they engage in transactions
with a multinational enterprise, and an insolvency proceeding is commenced in
any nation with which the enterprise has a connection, that participant will not
suffer discriminatory treatment based solely upon nationality or domicile.  While
a creditor may be subject to the inconvenience of an insolvency proceeding in
another country, that risk is part of engaging in business with a multinational
enterprise.  But the risk of discriminatory treatment should not be a business.
Nor should the risk that the creditor's pre-insolvency claim will be unanticipated
jurisdiction, unilaterally chosen by the entity or individual commencing
insolvency proceedings, be a risk of doing such business.

To promote economy, and in light of modern communications
technology, the main forum should have the ability to serve process worldwide,
but a defendant should be permitted to object to jurisdiction of the main forum
without submitting to jurisdiction, and to raise other objections to the forum.
Similarly, the filing of a claim in a particular jurisdiction subjects the creditor to
insolvency jurisdiction, but only as exercised by the court ultimately found
appropriate to hear a matter, which may not be the main forum, and only with
respect to its claim and offsets.

PRINCIPLE 3

A.    IF THERE IS MORE THAN ONE FORUM, THE OFFICIAL
REPRESENTATIVES APPOINTED BY EACH FORUM SHALL RECEIVE
NOTICE, AND HAVE THE RIGHT TO APPEAR IN, ALL
PROCEEDINGS IN ANY FORA.  IF REQUIRED IN A PARTICULAR
FORUM, AN EXEQUATUR OR SIMILAR PROCEEDING MAY BE
UTILIZED TO IMPLEMENT RECOGNITION OF THE OFFICIAL
REPRESENTATIVE.  AN OFFICIAL REPRESENTATIVE SHALL BE
SUBJECT TO JURISDICTION IN ALL FORA FOR ANY MATTER
RELATED TO THE INSOLVENCY PROCEEDINGS, BUT APPEARING
IN A FORUM SHALL NOT SUBJECT HIM/HER TO JURISDICTION FOR
ANY OTHER PURPOSE IN THE FORUM STATE.

B.  TO THE EXTENT PERMITTED BY THE PROCEDURAL RULES OF A FORUM, EX PARTE AND INTERIM ORDERS SHALL PERMIT CREDITORS OF ANOTHER JURISDICTION AND OFFICIAL REPRESENTATIVES APPOINTED BY ANOTHER JURISDICTION THE RIGHT, FOR A REASONABLE PERIOD OF TIME, TO REQUEST THE COURT TO RECONSIDER THE ISSUES COVERED BY SUCH ORDERS.

C.  ALL CREDITORS SHOULD HAVE THE RIGHT TO APPEAR IN ANY FORUM TO THE SAME EXTENT AS CREDITORS OF THE FORUM STATE, REGARDLESS OF WHETHER THEY HAVE FILED CLAIMS IN THAT PARTICULAR FORUM, WITHOUT SUBJECTING THEMSELVES TO JURISDICTION IN THAT FORUM (INCLUDING WITH RESPECT TO RECOVERY AGAINST A CREDITOR UNDER VOIDING RULES OR OTHERWISE IN EXCESS OF A CREDITOR'S CLAIM).

D.  INFORMATION PUBLICLY AVAILABLE IN ANY FORUM SHALL BE PUBLICLY AVAILABLE IN ALL FORA. TO THE EXTENT PERMITTED, NON-PUBLIC INFORMATION AVAILABLE TO AN OFFICIAL REPRESENTATIVE SHALL BE SHARED WITH OTHER OFFICIAL REPRESENTATIVES.

---

*Commentary:* If more than one plenary forum is presiding over insolvency proceedings of a multinational entity or individual, coordination of both the administration and claims processing is essential. The goals of Principle 1 are still important, and they can be achieved only if the Official Representatives are in constant communication, work together to coordinate the process, and have the respect of all relevant jurisdictions. All should be aware of proceedings in all courts, and where necessary should be heard if judicial resolution of a matter is required.

Where more than one plenary forum exists, it appears to be an equitable corollary that any Official Representatives should be subject to plenary jurisdiction in every such forum. If creditors must respond in that forum, the Official Representatives must surely be required to respond in that forum. However, the Official Representatives should not be subject to jurisdiction for any purpose unrelated to representation of the estate.

Interim orders must often be made on short notice, especially in the first stages of insolvency proceedings. Because of the greater complexity of cross-border proceedings, such orders should be made subject to "come-back" procedures, so that any affected party may request the court to reconsider the matter when the situation has stabilized and the facts are clearer. In that way, courts will be given sufficient time and sufficient input to consider carefully the consequences of orders having cross-border ramifications. In addition, parties who are uncertain of the court's intentions regarding the cross-border reach of their orders, and who are not otherwise subject to the jurisdiction of the court, should be free to obtain clarification of such issues without being subjected to jurisdiction for other purposes.

Because the guiding principle of this Concordat is that all common creditors should be treated as creditors of a single world-wide estate, even though the estate is administered by more than one forum, as a matter of fairness all creditors should have a right to be heard (where a forum permits creditors to speak) on administrative matters in which they have an interest without submission to jurisdiction of the administrative forum for any purpose other than administrative matters and claims administration. No creditor not otherwise found in the administrative forum state, or whose claim is not connected to the forum state, should, as a result of administrative participation, lose its rights to jurisdictional and other international law arguments with respect to an adversary proceeding against the creditor.


PRINCIPLE 4

WHERE THERE IS MORE THAN ONE PLENARY FORUM AND THERE IS NO MAIN FORUM:

(A)    EACH FORUM SHOULD COORDINATE WITH EACH OTHER, SUBJECT IN APPROPRIATE CASES TO A GOVERNANCE PROTOCOL.

(B)    EACH FORUM SHOULD ADMINISTER THE ASSETS WITHIN ITS JURISDICTION, SUBJECT TO PRINCIPLE 4(F).

(C)    A CLAIM SHOULD BE FILED IN ONE, AND ONLY ONE, PLENARY FORUM, AT THE ELECTION OF THE HOLDER OF THE CLAIM. IF A CLAIM IS FILED IN MORE THAN ONE PLENARY FORUM,

DISTRIBUTION MUST BE ADJUSTED SO THAT RECOVERY IS NOT GREATER THAN IF THE CLAIM WERE FILED IN ONLY ONE FORUM.

(D) EACH PLENARY FORUM SHOULD APPLY ITS OWN RANKING RULES FOR CLASSIFICATION OF AND DISTRIBUTION TO SECURED AND PRIVILEGED CLAIMS.

(E) CLASSIFICATION OF COMMON CLAIMS SHOULD BE COORDINATED AMONG PLENARY FORA. DISTRIBUTIONS TO COMMON CLAIMS SHOULD BE PRO-RATA REGARDLESS OF THE FORUM FROM WHICH A CLAIM RECEIVES A DISTRIBUTION.

(F) ESTATE PROPERTY SHOULD BE ALLOCATED (AFTER PAYMENT OF SECURED AND PRIVILEGED CLAIMS) AMONG, OR DISTRIBUTIONS SHOULD BE MADE BY, PLENARY FORA BASED UPON A PRO - RATA WEIGHING OF CLAIMS FILED IN EACH FORUM. PROCEEDS OF VOIDING RULES NOT AVAILABLE IN EVERY PLENARY FORUM SHOULD BE:

ALTERNATIVE A:  ALLOCATED PRO - RATA AMONG ALL PLENARY FORA FOR DISTRIBUTION.

ALTERNATIVE B:  ALLOCATED FOR DISTRIBUTION BY THE FORUM WHICH ORDERED VOIDING.

(G) IF THE ESTATE IS SUBJECT TO LOCAL REGULATION THAT INVOLVES AN IMPORTANT PUBLIC POLICY (SUCH AS A BANKING OR INSURANCE BUSINESS), LOCAL ASSETS SHOULD BE USED FIRST TO SATISFY LOCAL CREDITORS THAT ARE PROTECTED BY THAT REGULATORY SCHEME (SUCH AS BANK DEPOSITORS AND INSURANCE POLICY HOLDERS) TO THE EXTENT PROVIDED BY THAT REGULATORY SCHEME.

---

*Commentary:*  As suggested with respect to Principle 1, estate assets and business values are more likely to be preserved and enhanced if administration is centered in a single forum.  If there are multiple insolvency proceedings and no main forum and if assets are located in several plenary forums or outside of any plenary forum, the same objectives may be met if the relevant forums agree upon a governance protocol.

Where more than one plenary proceeding exists, creditors should have the ability to choose the forum most advantageous or convenient for the creditor. If all creditors have the choice, all are provided equal treatment. Therefore, the holder of a claim should be permitted to file it in any plenary forum.

The choice of law applicable to the underlying validity of the claim is not affected by the choice of where it is filed -- under this Concordat the same choice of law rules will apply in every forum. However, the creditor may feel that one forum is more hospitable than another, and a privileged creditor may fare better under one distribution system rather than another.

Privileged claims, which reflect national policy choices, should be recognized by permitting distributions to those claims in each forum to be made according to its rules. Where a particular country has no assets for distribution and allocated a portion of estate assets for distribution to privileged creditors, the country may distribute such assets to privileged creditors first.

Certain industries, such as banking and insurance, involve regulation that implements important public policies. Under the Concordat, these are respected.

To promote fairness, which in turn promotes commerce, distribution of estate assets, domestic or multinational, should generally be made pro-rata among creditors of the same class, wherever located. However, where more than one plenary forum has been found appropriate, each should be permitted to make distributions pursuant to its own procedural law. Therefore, each must be allocated an appropriate portion of estate property.

Estate property should be allocated (after satisfaction of secured claims and payment of privileged claims in any jurisdiction in which estate property is located) such that it is distributed on a pro-rata basis among plenary fore based upon claims filed. Claims in comparable classes in each jurisdiction should be valued on a comparative basis, and then the assets, or their proceeds, should be allocated among each jurisdiction based upon claims filed.


## PRINCIPLE 5

A LIMITED PROCEEDING SHALL, AFTER PAYING SECURED AND PRIVILEGED CLAIMS, AS DETERMINED BY LOCAL LAW, TRANSFER ANY

SURPLUS TO THE MAIN FORUM OR ANOTHER APPROPRIATE PLENARY
FORUM.

---

*Commentary:* In many situations, it may be useful, where a plenary insolvency
proceeding is pending on one jurisdiction, to commence a proceeding in another
jurisdiction to serve limited objectives, such as collection of assets, where there is
no need for a second comprehensive proceeding. In some countries there exist
defined statutory vehicles for limited proceedings, such as "secondary
proceedings" recognized in the Council of Europe Convention and the draft EU
Convention and "ancillary proceedings" in the United States. In many countries,
the only available vehicle is a plenary proceeding. However, it appears that in
most countries a plenary proceeding may be tailored by the presiding judge to
effect limited objectives. The Concordat favors the exercise of discretion, where
available, to limit proceedings. This will avoid conflict with plenary proceedings
in other jurisdictions and will reduce the coat of cross-border cases.

In any limited proceeding, the court should make every effort to
coordinate with courts presiding over plenary proceedings. However, the court
in a limited proceeding has authority to collect assets in its jurisdiction, and
distribute such assets to secured and privileged creditors. To effect the equality
goal of the Concordat and most insolvency regimes, the Concordat provides that
surplus assets or proceeds should then be transferred to an appropriate plenary
proceeding which handles distribution to common claims.

### PRINCIPLE 6

SUBJECT TO PRINCIPLE 8, THE OFFICIAL REPRESENTATIVES MAY
EMPLOY THE ADMINISTRATIVE RULES OF ANY PLENARY FORUM IN
WHICH AN INSOLVENCY PROCEEDING IS PENDING, EVEN THOUGH
SIMILAR RULES ARE NOT AVAILABLE IN THE FORUM APPOINTING THE
OFFICIAL REPRESENTATIVE.

---

*Commentary:* Where it is found appropriate that administrative supervision of a
cross-border insolvency be exercised in more than one country, it should also be
appropriate that administrative rules applicable in a particular forum be

available for use by the Official Representative to enhance the assets of the estate. For example, if the entity in insolvency proceedings is a party to executory contracts in a nation whose insolvency law permits rejection of executory contracts that are burdensome, the Official Representative should be enabled to use such procedures for the benefit of all creditors. Thus, an Official Representative appointed in Country A could, subject to Principle 8, use a rejection power available in Country B (the main forum) even if Country A's laws provide no such power. Where appropriate, an exequatur or similar proceeding would be used in Country B.

However, the Official Representative is not permitted to use such rules in an unexpected manner. If the pre-insolvency entity was a party to executory contracts to be performed in a country in which rejection is not permissible, the rejection procedure of another country may not be used. Again, international commerce is hindered if parties entering into contracts with multinational entities are concerned that unexpected unilateral use by such entities of favorable law will occur in the event of insolvency. Application of principles of international law may determine whether use of administrative procedures is appropriate.

## PRINCIPLE 7

SUBJECT TO PRINCIPLE 8, THE OFFICIAL REPRESENTATIVES MAY EXERCISE VOIDING RULES OF ANY FORUM.

---

*Commentary:* Many nations provide rules for negating transactions which occur within a defined period before the onset of insolvency proceedings. The purpose of these laws is usually to prevent the preference by the pre-insolvency entity of some creditors over others, or to prevent the overpayment of some creditors caused by exchanges for unequal value, so creditors not so preferred are treated equally by having all claims considered based on facts existing at the filing date (or as they should have existed a. of that date had the voidable transactions not occurred).

The Official Representative should be permitted to use any provisions available to it to maximize recoveries, provided the use of such remedy is consistent with principles of international law.

## PRINCIPLE 8

A.     EACH FORUM SHOULD DECIDE THE VALUE AND ALLOWABILITY OF CLAIMS FILED BEFORE IT USING A CHOICE OF LAW ANALYSIS BASED UPON PRINCIPLES OF INTERNATIONAL LAW. A CREDITOR'S RIGHTS TO COLLATERAL AND SET-OFF SHOULD ALSO BE DETERMINED UNDER PRINCIPLES OF INTERNATIONAL LAW.

B.     PARTIES ARE NOT SUBJECT TO A FORUM'S SUBSTANTIVE RULES UNLESS UNDER APPLICABLE PRINCIPLES OF INTERNATIONAL LAW SUCH PARTIES WOULD BE SUBJECT TO THE FORUM'S SUBSTANTIVE LAWS IN A LAWSUIT ON THE SAME TRANSACTION IN A NON-INSOLVENCY PROCEEDING. THE SUBSTANTIVE AND VOIDING LAWS OF THE FORUM HAVE NO GREATER APPLICABILITY THAN THE LAWS OF ANY OTHER NATION.

C.     EVEN IF THE PARTIES ARE SUBJECT TO THE JURISDICTION OF THE PLENARY FORUM, THE PLENARY FORUM'S VOIDING RULES DO NOT APPLY TO TRANSACTIONS THAT HAVE NO SIGNIFICANT RELATIONSHIP WITH THE PLENARY FORUM.

---

*Commentary:* A multinational corporation or corporate group may have transactions in many countries with citizens or domiciliaries of many other countries, involving assets or debt in many countries. The parties to these transactions will have reasonable expectations with respect to the law applicable to such transactions.

When such an enterprise fails, the established rules of international law should apply to claims, collateral, set-off rights, and lawsuits among the participants in the insolvency proceeding. Thus, substantive laws applicable to claims resolution and to lawsuits must be decided based upon on the relevant facts. So should issues of jurisdiction and venue. While the interests of creditors are relevant, those interests are served by the application of laws providing for procedural fairness, not by the application of substantive laws or voiding rules on an unexpected basis.

If there is a main forum, it will usually be an appropriate forum for litigation if it applies international law principles, particularly choice of law

principles, to any adversarial litigation pending before it. The issue could be by more complex where there are multiple administrative fore. In each case, an evaluation must be made based upon the applicable principles of international law, including giving due consideration to relevant insolvency law, as to what law should apply.

Voiding rules raise special issues. Such laws invalidate an otherwise legal transaction. Thus, a forum should have a clear interest in order for its voiding rules to apply. This is consistent with the overall principle that international commerce will be supported if otherwise valid commercial transactions are not disturbed unless a jurisdiction has a clear interest in doing so.

## PRINCIPLE 9

A COMPOSITION IS NOT BARRED BECAUSE NOT ALL PLENARY FORA HAVE LAWS WHICH PROVIDE FOR A COMPOSITION AS OPPOSED TO A LIQUIDATION, OR A COMPOSITION CANNOT BE ACCOMPLISHED IN ALL PLENARY FORA, AS LONG AS THE COMPOSITION CAN BE EFFECTED IN A NON-DISCRIMINATORY MANNER.

---

*Commentary:*    Not all nations have insolvency laws which provide for a composition. The policy decision whether to permit a composition is based upon a socio-economic view as to whether society benefits from maintaining the debtor as an on-going enterprise rather than liquidating it. The rules that govern the requirements to be satisfied in order to achieve a composition will differ from nation to nation and, thus, it is possible that a composition would be achievable in some, but not all, administrative fora.

In such an instance, if it appears that a composition is in the interests of the creditors, or other constituencies, such as employees or regulatory authorities, of countries which permit a composition, it is essential that the Official Representatives and courts coordinate their actions so that the objectives of all relevant nations may, to the extent possible, be realized. There appears to be no bar to a composition where creditors in any forum in which a vote is permitted in fact vote by the requisite majority of that forum in favor of the composition.

## PRINCIPLE 10

TO THE EXTENT PERMITTED BY THE SUBSTANTIVE LAW OF A FORUM, COURTS OF THAT FORUM WILL NOT GIVE EFFECT TO ACTS OF STATE OF ANOTHER JURISDICTION USED TO INVALIDATE OTHERWISE VALID PRE-INSOLVENCY TRANSACTIONS.

---

*Commentary:* Insolvency laws are designed to protect the integrity of commerce. They do so by allocating the assets of a failed enterprise in a manner which attempts to weight claims arising from different-non-insolvency law bases in an equitable manner.   While preferences and priorities reflecting a particular nation's political decisions are also part of many insolvency statutes, these are usually quite limited and are known in advance to the participants in commercial activity relating to that nation.

The reasonable commercial expectation of the parties should not be upset by <u>ad hoc</u> intervention, post-insolvency, of the executive of a nation by use of any act of state.  For example, the pre-insolvency obligations of a private entity should not be invalidated by sovereign cuts after the onset of insolvency proceedings.

\*     \*     \*     \*     \*

## GLOSSARY OF TERMS

This Glossary of Terms is included for convenience and does not have independent significance. These terms may be tailored to conform to the applicable terms of chose jurisdictions involved in any particular cross-border insolvency in which the Concordat is utilized.

*Administrative Rules.*  The rules of insolvency law, excluding voiding rules, governing the conduct of a plenary proceeding.

*Common Claim.*  A claim which is neither a secured claim nor a privileged claim.

*Composition.*  A proceeding with the goal of rehabilitating the business of the entity or individual that is involved in insolvency proceedings, possibly with

new owners, including arrangement, suspension of payment, reconstruction, reorganization, or similar processes, with distributions to creditors and/or shareholders or other equity holders of cash, property and/or obligations of, or interests in, the rehabilitated business.

*Discharge.* A court order or provision of an instrument effecting a composition releasing a debtor from all liabilities that were, or could have been, addressed in the insolvency proceeding, including contracts that were modified as part of a composition.

*Distribution.* Allocation of estate property among creditors and/or shareholders or other equity interests.

*Insolvency Proceeding/Forum.* Any proceeding over which a court or other official forum presides with respect to the insolvency of an entity or individual, which may be a plenary or limited proceeding.

*International Law.* The laws governing relations among parties of diverse nationalities.

*Limited Proceeding.* An insolvency proceeding that is not a plenary proceeding. Limited proceedings include secondary and ancillary proceedings.

*Liquidation.* A proceeding with the goal of selling the debtor's business, either as a going concern or otherwise, with distribution of proceeds to creditors.

*Main Forum/Proceeding.* The exclusive or primary plenary forum/proceeding.

*Non-Local Creditors.* Creditors who are neither nationals nor domiciliaries of the forum in question.

*Official Representative.* A representative of the entity or individual that has commenced insolvency proceedings, or the estate created thereby, or its or his/her creditors, which may include an administrator, liquidator, trustee, supervisor or debtor-in-possession.

*Plenary Forum/Proceeding.* A forum or insolvency proceeding which addresses, on a plenary basis, administrative matters, including, on the one hand, operation or liquidation of the debtor's business or assets, and, on the

other hand, the filing, processing and allowance of claims and distribution to creditors.

*Privileged Claim.*   A claim that, pursuant to statutory or other law, or pursuant to ranking rules, is given a preference or priority over common claims, including a public law claim arising from the public law of a nation.

*Ranking Rules.*   The rules by which claims and equity interests are ranked.

*Secured Claim.*   A claim that is a valid charge upon or interest in collateral to the extent of the value of the collateral.

*Voiding Rules.*   Rules relating to voidness, voidability or enforceability of claims or pre-insolvency transactions.