IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-1139 (JKF) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: September 15, 2008 at 10:30 a.m. |

THE OFFICIAL COMMITTEE OF EQUITY HOLDERS'
JOINDER TO DEBTORS' OBJECTION TO THE
UNSECURED CLAIMS ASSERTED UNDER THE DEBTORS'
CREDIT AGREEMENTS DATED AS OF MAY 14, 1998 AND MAY 5, 1999

The Official Committee of Equity Holders (the "Equity Committee") of the above-captioned Debtors,[1] by and through their undersigned counsel, hereby submits this joinder (the "Joinder") to the Debtors' objection (the "Objection") to the claims of their prepetition bank lenders (the "Lenders"), Claim Nos. 9159 and 9168 (together, the "Proofs of Claim"), filed by JP Morgan Chase in its capacity as agent for the Lenders under (i) the 1998 Credit Agreement and (ii) the 1999 Credit Agreement.  In support of this Joinder, the Equity Committee respectfully states:

## BACKGROUND

1.      On April 2, 2001, (the "Petition Date") the Debtors sought bankruptcy protection for the primary purpose of efficiently resolving their significant asbestos related liabilities.

2.      After years of intense litigation, the Debtors, the Equity Committee, the Asbestos Claimants' Committee (the "ACC"), and the Future Claimants' Representative (the

---

[1] Capitalized terms used but not defined herein shall take the meaning ascribed thereto in the Objection.

KL2 2564239.4

Case 01-01139-AMC    Doc 19051    Filed 07/03/08    Page 2 of 7

"FCR") have reached an agreement in principle to consensually resolve all asbestos personal injury claims (the "Settlement").

3.    The Equity Committee firmly believes that a consensual resolution of the asbestos personal injury disputes is in the best interest of all parties, and it agreed to the Settlement for that reason. Nevertheless, the concessions made by the Equity Committee in the Settlement are at the outer limit of what the Equity Committee is prepared to support. Any further concessions would make the Settlement uneconomic and contrary to the interests of equity holders.

4.    An important condition to the Equity Committee's agreement to support the Settlement is that the Lenders receive post-petition interest at a rate not to exceed 6.09% per annum from the Petition Date to December 31, 2005 (the "Initial Rate"), and at a floating prime rate thereafter (the "Subsequent Rate," and together with the Initial Rate, the "Negotiated Bank Debt Interest Rate").

5.    The Negotiated Bank Debt Interest Rate was not pulled out of the air. To the contrary, it is the rate negotiated and agreed to by the Debtors and the Official Committee of Unsecured Creditors, as set forth in the Creditors' Committee's February 27, 2006 letter to the Debtors. In that letter, the Creditors' Committee reaffirmed its status as a co-proponent of the plan of reorganization filed by the Debtors on January 13, 2005 and agreed to accept a floating prime rate of post-petition interest after December 31, 2005.

6.    Despite the Creditors' Committee's agreement to this specified post-petition rate of interest, and despite the centrality of this agreement to the Settlement, the agreed post-petition interest rate apparently is not high enough to satisfy the current holders of the Debtors' pre-petition bank debt. By letter dated April 21, 2008, a group of ad hoc bank debt

2

KL2 2564239.4

holders, purporting to hold approximately 88% of the principal due under the 1998 and 1999

Credit Agreements, stated that they would no longer accept the Negotiated Bank Debt Interest

Rate and demanded post-petition interest at the higher default rate.

       7.     In response to this letter, which threatens to derail the Settlement, the

Debtors filed the Objection.

## JOINDER

       8.     The Equity Committee joins the Objection and fully endorses the

arguments set forth therein.  We file this Joinder to elaborate on a few of the Debtors' arguments

that are of particular importance to equity holders.

A.    **An Award of Default Rate Interest to the Lenders**
       **Would Cause the Settlement to Fail**

       9.     By agreeing to the terms of the Settlement, the Equity Committee has

made significant concessions – the price of any settlement – despite its continued belief that

equity holders would receive  significantly greater distributions if the asbestos claim estimation

process were litigated to conclusion.

       10.    The Equity Committee is not prepared to agree to provide the Lenders a

higher rate of post-petition interest than the Negotiated Bank Default Interest Rate.  Any further

dilution of equity's proposed distribution would make the economics of the Settlement

disadvantageous to equity holders.  Moreover, as described below, there is no requirement in law

or equity that the Lenders receive post-petition interest at *any* rate, much less the default rate.

The provision of the Negotiated Bank Debt Interest Rate in the Settlement was generously

conceded by the Debtors and the Equity Committee solely for the purpose of avoiding litigation

over this issue.

KL2 2564239.4

11.      The Equity Committee therefore objects to any modification to the Settlement that would increase the rate of post-petition interest to the Lenders above the Negotiated Bank Debt Interest Rate.   If any such modifications were made, the Equity Committee would have no choice but to withdraw its support for the Settlement, causing the Settlement to fail.  A failure of the Settlement would lead to the resumption of the Asbestos PI Claims estimation trial, a contingency that would be potentially disastrous for all parties-in-interest, including the Lenders.

**B.      The Debtors' Solvency Has Not Been Established**

12.      Seeking to reap the Settlement's benefits while bearing none of its costs, the Lenders contend that the Debtors are solvent and the Lenders are therefore entitled to the highest possible rate of post-petition interest.  The Lenders' argument overlooks two key points: (i) absent the Settlement, the solvency of the Debtors is uncertain; and (ii) the Settlement would fail if the Lenders received a greater recovery than the Negotiated Bank Debt Interest Rate.

13.      As discussed in the Objection, absent the Settlement, it is unclear whether the Debtors would be deemed solvent.  It is only after estimation of all unliquidated claims, including the resumption of the Asbestos PI Claims estimation trial, that the Debtors could ultimately be deemed solvent.  However, such an estimation could also result in a finding that the Debtors are insolvent, a finding that would bar the grant of any post-petition interest to the Lenders.

14.      The Lenders argue that the Settlement itself causes the Debtor to be solvent, thus entitling the Lenders to default rate post-petition interest.  This argument is flawed, however, because a condition precedent of the Settlement is that the Lenders' recovery not exceed the Negotiated Bank Debt Interest Rate.  If default rate interest were to be awarded to the

4

Lenders, that condition would fail, eliminating any purported "solvency" the Lenders argue is created by the Settlement.

**C.    An Award of Default Rate Interest to the Lenders
        Would be Highly Inequitable**

15.    Even if the Debtors were shown to be solvent, a fact not established, equitable principles would require that this Court reject any demands for payment of post-petition interest at the default rate.

16.    In determining whether to award post-petition interest at a default rate, the courts weigh equitable factors on a case-by-case basis. *See In re Coram Healthcare Corp.*, 315 B.R. 321, 346 (Bankr. D. Del. 2004) ("the specific facts of each case will determine what rate of interest is 'fair and equitable'"); *In re Adelphia Comm'ns*, Bench Ruling, No. 02-41729, tr. at 20 (Bankr. S.D.N.Y. April 27, 2006) (bankruptcy courts have "wide discretion" in setting the rate of post-petition interest based upon the equities of the case); *In re Loral Space & Commc'ns*, Bench Ruling, No. 03-41710, tr. at 39-40 (Bankr. S.D.N.Y. July 25, 2005) ("the court has a large amount of discretion in deciding what the appropriate rate of interest should be under a chapter 11 plan for a solvent debtor").[2] While the Sixth Circuit in *In re Dow Corning Corp.* has held that there is a presumption in favor of the grant of default rate interest when the debtor is solvent – a position not shared by other courts that have addressed the issue – even the Sixth Circuit held that this presumption must be tempered by equitable principles. *See In re Dow Corning Corp.*, 456 F.3d 668, 680 (6th Cir. 2006).

17.    As the Debtors have argued, the equities weigh strongly against an award of post-petition interest to the Lenders at the default rate. Most important from the Equity

---

[2] A copy of Judge Gerber's bench ruling in *Adelphia* is attached to the Objection as Exhibit D, and a copy of Judge Drain's bench ruling in *Loral* is attached as Exhibit E.

KL2 2564239.4

Committee's perspective, it would be grossly inequitable for the Lenders to obtain the full benefits of the Settlement without bearing any of its burdens. The Lenders are among the principal beneficiaries of the Settlement, which ensures full payment of their claims by eliminating the risk of a worst-case litigation outcome that might leave the Debtors insolvent. As noted above, the equity holders have made significant sacrifices to ensure certainty of payment to all creditors, including the Lenders. As a result, not only will the claims of the Lenders be paid in cash at 100% of their prepetition amount; such claims will also receive post-petition interest at the Negotiated Bank Debt Interest Rate. Equity requires that the Lenders, who share in the Settlement's benefits, share also in its costs, at least to a modest degree.

18. Moreover, the overriding objective of obtaining a consensual resolution of this case – an objective this Court has pursued tirelessly for years – has been put in jeopardy by the Lenders' extreme position. A ruling rewarding that intransigent position and granting post-petition interest at the default rate would cause the Settlement to fail, with potentially disastrous consequences for all parties. Notably, this circumstance – which powerfully supports the payment of interest at a non-default rate – was *not* present in *Dow Corning*. There, the Debtor and its shareholders were prepared to, and did, consummate their settlement with the tort claimants without regard to the rate at which post-petition interest was awarded. Instead of being contingent on a specified rate of post-petition interest – as is the Settlement in this case – Dow Corning's plan of reorganization left the rate of interest to be determined through post-confirmation appellate litigation.

KL2 2564239.4

## **Conclusion**

For the reasons set forth above and in the Objection, the Equity Committee respectfully requests that the Court enter an order (i) disallowing the Proofs of Claim to the extent they seek post-petition interest at the default rate under the 1998 and 1999 Credit Agreements and (ii) granting such other relief as the Court deems just and proper.

Dated: Wilmington, Delaware
     July 3, 2008

                KRAMER LEVIN NAFTALIS & FRANKEL LLP

                By: _____
                    Philip Bentley
                    Douglas H. Mannal
                    Keith Martorana
                1177 Avenue of the Americas
                New York, New York 10036
                (212) 715-9100

                Counsel to the Official Committee of
                Equity Holders[3]

---

[3] Buchanan Ingersoll & Rooney PC, Delaware counsel to the Equity Committee, has not signed or joined this pleading due to its prior representation of the claimant, JP Morgan Chase, in unrelated matters.

KL2 2564239.4