THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Hearing Date: July 21, 2008 at 1:00 p.m.** |
| | ) | **Re: Docket Number 18931** |

**MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY'S RESPONSE TO AND JOINDER IN MOTION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING STIPULATION RESOLVING CLAIMS OF MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY (DOCKET NO. 18931)**

The Montana Department of Environmental Quality ("MDEQ") submits this Response to and Joinder (the "Response") in the Motion of the Debtors' for Entry of an Order Approving Stipulation Resolving Claims of Montana Department of Environmental Quality for environmental response costs, including operation and maintenance costs, at the Debtors' Libby Asbestos Site (the "Motion"). *See* Docket No. 18931. In support of this Response, the MDEQ states as follows:

1. On May 20, 2008, MDEQ and W.R. Grace & Co. and certain of its affiliates (collectively "Debtors" or "Grace") entered into a Stipulation Resolving Claims of MDEQ ("the Stipulation"), in order to settle, as set forth in the Stipulation, MDEQ's claims for its response costs related to the Libby Asbestos Superfund Site under the Montana Comprehensive Environmental Cleanup and Responsibility Act, §§ 75-10-701, MCA, et seq (herein "CECRA"), and the Comprehensive Environmental Response, Compensation and Liability Act, 42 USC § 9601 et seq (herein "CERCLA"). See Exhibit A to Debtors' Motion (Docket No. 18931). Under the Stipulation, MDEQ will be allowed an unsecured, prepetition, non-priority claim in the amount of $5,167,000, with certain claims being reserved as provided in the Stipulation.

WCSR 3935263v1

2. MDEQ submitted the proposed Stipulation to a thirty (30) day public comment period, which ended on July 7, 2008. Notice of the public comment period was published in *The Western News*, a newspaper published in Libby, Montana, and was mailed directly to local government officials. Copies of the Stipulation were available at several locations in the Libby area and were available through MDEQ's website.

3. Pursuant to Paragraph 11 of the Stipulation, MDEQ hereby provides the Court with copies of all public comments received and the State's responses thereto. A copy of the public comments received is attached hereto as Exhibit 1.

4. The one set of comments received was from the Libby Community Advisory Group. The Libby Community Advisory Group (CAG) provides a public forum for members of the community to review activities related to the Libby Asbestos Superfund Site, to advise state and federal government representatives as to concerns of the community, and to convey information to the community. The Libby CAG is made up of community members representing interests of the local schools, local government, medical and health officials, fire officials, former employees of Grace, and public interest groups.

5. The Libby CAG comments generally support the Stipulation, but raise additional points to be considered in the management and use of the funds to be received on the allowed claim. The specific comments received and MDEQ's responses are as follows:

**Comment No. 1:** Healthcare Costs:

> The CAG agrees that it is appropriate that W.R. Grace provide dollars for operations and maintenance costs. In addition, we urge the State of Montana and all federal agencies involved in this clean-up effort not to lose site of the need to provide funding for day-to-day healthcare needs of those affected by asbestos exposure. It is our recommendation that a trust fund be established for this purpose. We encourage

>Governor Schweitzer and our state agencies to take a leadership role in making this trust fund a reality!

**Response to Comment No. 1:** The settlement set forth in the Stipulation relates only to DEQ's claim in the bankruptcy for specific response costs under the state and federal Superfund laws. Accordingly, the scope of the proposed settlement is limited to recovery of certain cleanup costs such as operation and maintenance costs. Since the comment notes that it is appropriate that Grace provide dollars for operation and maintenance costs, we understand this comment as providing general support for the settlement.

The comment also focuses on additional funding for day-to-day health care needs of those affected by asbestos exposure. However, any such costs are outside the limited scope of this particular settlement.

**Comment No. 2:** Money should only be used for O&M costs:

>We believe that it is imperative that these settlement dollars, and all accrued interest, be used for ongoing operations and maintenance costs at the Libby Asbestos Site. Reallocation of these funds to another use or to another community must not be allowed to happen.

**Response to Comment No. 2:** The primary purpose of the Stipulation is to ensure that the funds necessary to properly conduct operation and maintenance of the remedy at the Libby Site will be available. If the funds recently obtained by EPA in its settlement with W.R. Grace for the Libby Site are exhausted, the State could also be responsible for providing 10% of the remaining costs of implementing the remedy. The terms of the Settlement Agreement would allow the State to use these funds to provide its 10% cost share for remedy implementation expenses, as well as O&M expenses.

DEQ agrees with the Community Advisory Group that reallocation of the settlement funds to another use or another community must not be allowed. The language in Paragraph 5 of the Settlement Agreement provides that the funds shall be used "only for the State's CERCLA cost share requirements, including operation and maintenance expenses, or other costs related to asbestos at the Site." This language is specifically intended to ensure that the money will only be used at the Libby Asbestos Site and will only be used for needs related to asbestos at the Site.

**Comment No. 3:** If not needed for O&M, this money should be given to the Libby community:

> While not likely, it is possible that all O&M needs will be adequately funded by the EPA settlement with W.R. Grace. In that case, the CAG believes that the funds from this settlement should be transferred to the Libby community. The community would then determine the best use of the money (i.e., economic development, seed money for a healthcare trust fund, etc.).

**Response to Comment No. 3:** As provided in Paragraph 5 of the Stipulation, if the settlement funds and interest are not needed for operation and maintenance expenses or costs of implementing additional remedial actions at the Libby Site, the funds may be used for "other costs related to asbestos at the Site."

The availability, if any, of funds for anything other than the State's share of remedial action costs and O&M will not be known for several years. It is difficult to predict what the greatest needs will be at that time. DEQ will certainly look to the community for input on identifying the greatest needs and the most appropriate uses should such funds become available.

6. The Stipulation provides that MDEQ may "withdraw or withhold its consent to this Stipulation if the public comments received disclose facts or considerations that indicate that this stipulation is inappropriate, improper, or inadequate." (Stipulation at Paragraph 11). MDEQ has determined that nothing in the comments indicates that the settlement is inappropriate, improper, or inadequate, and, after consideration of the comments, MDEQ supports the Stipulation as proposed.

7. "The relevant inquiry in reviewing environmental settlements is whether the settlement is fair, reasonable and faithful to the objectives of the governing statute". In Re: Energy Cooperative, Inc., Debtor, 173 B.R. 363, 367 (No. Dist. Ill. 1994) (citing U.S. v. Cannons Engineering, 899 F.2d 79, 84 (1st Cir. 1990); and U.S. v. Akzo Coatings of America, Inc., 949 F.2d 1409, 1424 (6th Cir. 1991)).

8. The Stipulation is a fair and reasonable settlement of MDEQ's claims related to the Libby Asbestos Superfund Site. Under the terms of the Stipulation, DEQ will receive an allowed, unsecured claim in the Grace bankruptcy in the amount of $5,167,000. The funds received by DEQ are to be used for the State's CERCLA cost share requirements, including operation and maintenance costs, or other costs related to asbestos at the Site. Claims that are not appropriately settled at this time are reserved as provided in the Stipulation.

9. The Court is afforded discretion in reviewing environmental settlements. This discretion is to be exercised in a deferential manner in favor of the general policy of encouraging settlement. The underlying policy of encouraging settlement has particular force where the government has worked on the construction of the proposed settlement. In Re: Energy Cooperative, Inc., 173 B.R. at 367.

10. The Stipulation is the result of arm's length negotiations between MDEQ and Grace and represents a reasonable and fair compromise of MDEQ's claim. The settlement will

provide some certainty to the State in providing funds so that cleanup of the Site may properly be completed.

11. The government's technical and legal assessments underlying environmental settlements are entitled to deference by the Court so long as the government agency charged with the primary responsibility for enforcing environmental laws supplies a reasonable good faith basis for the settlement such as achievement of prompt settlement in order to initiate response activities. See Cannons Engineering, 899 F.2d at 87-88.

12. The Stipulation will ensure the availability of funding for the State to meet its cost share obligations for cleanup of the Libby Asbestos Superfund Site, and will avoid the uncertainty and expense of further litigation.

13. For the above-stated reasons, MDEQ requests entry of an Order (See Docket No. 18931, Exhibit B) approving the Stipulation Resolving Claims of MDEQ related to the Libby Asbestos Superfund Site.

Dated: July 9, 2008.

**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Professional Limited Liability Company*

    /s/ Kevin J. Mangan
Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
222 Delaware Avenue, 15th Floor
Wilmington, DE 19801
(302) 252-4320
Counsel for the Montana Department of Environmental Quality