IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., et al.,[1] | Case No. 01-01139 (JKF)<br>(Jointly Administered) |
| Debtors. | Hearing Date: Sept. 15, 2008 at 10:30 a.m. |

### DECLARATION OF LEWIS KRUGER IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' RESPONSE TO DEBTORS' OBJECTION TO THE UNSECURED CLAIMS ASSERTED UNDER THE DEBTORS' CREDIT AGREEMENTS DATED AS OF MAY 14, 1998 AND MAY 5, 1999

1. I am an attorney duly licensed to practice before the courts of the State of New York, and have been admitted *pro hac vice* to appear before this Court in these cases. I am a member of Stroock & Stroock & Lavan LLP, counsel for the Official Committee of Unsecured Creditors (the "Creditors' Committee"). I submit this declaration in support of the Creditors'

---

[1] The Debtors consist of the following 62 entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W.R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., B&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Committee's Response to the Debtors' Objection to the Unsecured Claims Asserted Under the Debtors' Credit Agreements dated as of May 14, 1998 and May 5, 1999. I have personal knowledge of the facts set forth herein

2. By letter agreement dated January 12, 2005 (the "2005 co-proponency agreement"), a true and correct copy of which is annexed hereto as Exhibit A, the Creditors' Committee, for itself as the fiduciary for all non-asbestos unsecured creditors, agreed "to be a Plan Proponent with the Debtors and Equity Committee of the Amended Joint Plan of Reorganization to be filed with the bankruptcy Court on or about January 13, 2005 as such plan may be amended from time to time with the consent of the Creditors' Committee ...." Ex. A at 1. Although the letter agreement did not so provide, the "Joint Plan" filed with the Court dated January 13, 2005 specified that the bank debt claims would be paid post-petition interest at a rate of 6.09% fixed, compounded quarterly. This rate was negotiated between the Debtors and Creditors' Committee, in consultation with certain of the largest holders at that time of the bank debt claims. Although the disclosure statement filed with the Joint Plan stated that "certain substantial Claimants" had agreed to support the Joint Plan (see disclosure statement, p. 59, n. 18), the Creditors' Committee is not aware that any of the then largest holders of the bank debt had executed agreements with the Debtors concerning the payment rate. Indeed, the Creditors' Committee does not believe that these entities hold much if any of the bank debt claims at the present time.

3. Under the 2005 co-proponency agreement, the Creditors' Committee could withdraw as a plan proponent in a variety of circumstances, including if the disclosure statement incorporating the Joint Plan was not approved by the Court by November 30, 2005, if there was a termination of the Debtors' exclusive period in which to file the Joint Plan, and if the Joint Plan

2

failed to become effective on or before January 1, 2007. See Ex. A at 1-2. The disclosure statement embodying the Joint Plan was not approved by November 30, 2005 (or ever), the Joint Plan never became effective, and the Debtors' exclusive period was terminated by this Court's order dated July 26, 2007.

4. By letter agreement dated February 27, 2006, a true and correct copy of which is annexed hereto as Exhibit B, the Debtors and Creditors' Committee (but none of the bank debt holders themselves) agreed to amend the Joint Plan to "modify the treatment of the Class of General Unsecured Creditors to provide that commencing January 1, 2006 the current 6.09% fixed, compounded quarterly, post-petition interest rate accruing for the Holders of the Debtors' pre-petition bank credit facilities shall change to a floating Adjusted Base Rate, compounded quarterly ...." Ex. B at 1. Like the agreement of a year earlier, the Creditors' Committee could withdraw as a plan proponent in a variety of circumstances, including if the disclosure statement incorporating the Joint Plan was not approved by the Court by December 31, 2006, if there was a termination of the Debtors' exclusive period in which to file the Joint Plan, and if the Joint Plan failed to become effective on or before February 28, 2007. Ex. B at 1-2. The disclosure statement was not approved by December 31, 2006 (or ever), the Joint Plan never became effective, and, as stated above, the Debtors' exclusive period was terminated by this Court's order dated July 26, 2007.[2]

5. The Debtors and the Creditors' Committee, including respective counsel, have worked closely and cooperatively together since the beginning of these bankruptcy cases. Shortly after Mark Shelnitz became the Debtors' General Counsel in April 2005, the Debtors' in-house legal staff and outside counsel at Kirkland & Ellis LLP, and the Creditors' Committee's

---

[2] Although counsel to the Creditors' Committee signed a letter agreement dated February 27, 2006, neither the Debtors nor their counsel ever executed the February 27 letter agreement.

3

counsel at Stroock & Stroock & Lavan LLP, began to have regularly scheduled conference calls, approximately twice a month, to hear from the Debtors as to the status of the cases, to discuss pending and upcoming motions and events and settlement discussions with the asbestos personal injury claimants, if any. During many of these and other discussions, Stroock advised the Debtors and their counsel that the bank debt was trading in the market at a value reflecting recovery of the default rate and that the Creditors' Committee's professionals were being told by holders of the bank debt that the holders expected to receive post-petition interest at the default rate. Stroock advised the Debtors that, notwithstanding any position the Creditors' Committee itself might determine to take, any consensual plan should provide for post-petition interest payable at the default rate were the Debtors to hope for bank debt holders to vote in favor of such a plan. Although the Debtors apprised Stroock that there were plan-related discussions occurring that ultimately resulted in the Proposed Asbestos Settlement, the Creditors' Committee was never invited to participate in those discussions, notwithstanding – and perhaps because of – Stroock's repeated warnings to the Debtors that post-petition interest payable at the default rate was expected by bank debt holders as part of any resolution.

6.  On or about April 7, 2008, the Term Sheet documenting the Proposed Asbestos Settlement was publicly disclosed. See Objection, Ex. C. The Proposed Asbestos Settlement does not pay bank debt holders post-petition interest at the default rate. By letter dated April 21, 2008, a true and correct copy of which is attached hereto as Exhibit C, an ad hoc group of bank debt holders, by their counsel Paul Weiss, Rifkind, Wharton & Garrison LLP, wrote to Debtors' counsel and set forth their position that the failure of the Proposed Asbestos Settlement to provide for the payment of default interest on their claims, and other treatment issues, rendered any plan based on the Term Sheet unconfirmable. See Ex. C.

4

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 10, 2008, at New York, New York.

_____
Lewis Kruger