# ATTACHMENT



E.D.Mich. 2004.

Only the Westlaw citation is currently available.

United States District Court, E.D. Michigan, Southern
Division.

In Re: DOW CORNING CORPORATION, Debtor.

**Case No. 01-CV-71843-DT**

March 31, 2004.

MEMORANDUM OPINION AND ORDER

HON. DENISE PAGE HOOD

## I. BACKGROUND

*1 The Official Committee of Unsecured Creditors
("Unsecured" or "Commercial" Committee or "Class 4"
Claimants/Creditors), originally filed an objection to the
Amended Joint Plan of Reorganization ("Amended Joint
Plan") filed by the Debtor, Dow Corning, Corporation and
the Official Committee of Tort Claimants under §
1129(a)(7) because of the Case Interest Rate issue. The
Amended Joint Plan provided that Class 4 Creditors
would be paid pendency interest at the federal judgment
rate pursuant to 28 U.S.C. § 1961 in effect on the Petition
Date (6.28%), compounded annually on each anniversary
of the Petition Date. (Amended Plan, § 1.24) The Plan
also proposed to pay "such fees, costs and expenses
(including prepayment penalties or liquidated damages),
but only to the extent ... [a]llowable under applicable
law."(Amended Plan, § 5.1)

Prior to the confirmation of the Amended Joint Plan, the
Bankruptcy Court and this Court heard arguments on the
Class 4 Objections on April 15, 1999. On July 30, 1999,
the Bankruptcy Court issued an amended opinion denying
the Class 4 Objections. *In re Dow Corning Corp.*, 237
B.R. 380 (Bankr. E.D. Mich. 1999). The Bankruptcy
Court overruled the Class 4 Objections and held that the
Case Interest Rate should not be a variable rate but a fixed
Case Interest Rate, in this case, the federal judgment rate,
and that the fixed Case Interest Rate satisfied the
confirmation requirements of § 1129(a)(7).*Id. at 412.*No
appeal was taken to the July 30, 1999 Opinion.

During the Confirmation process, the Class 4 Creditors, a

rejecting class, filed confirmation objections to the Plan
claiming that the Case Interest Rate was inadequate,
basing their arguments on the "fair and equitable"
standard applicable to rejecting classes under 11 U.S.C. §
1129(a). In its July 30, 1999 Opinion, the Bankruptcy
Court had decided that the Case Interest Rate could be a
fixed rate. The Bankruptcy Court in the Confirmation
process was called upon to determine which fixed rate
would be fair and equitable under 11 U.S.C. § 1129(a) to
Class 4 Creditors, the federal judgment rate or a contract
rate. A Confirmation Hearing was held on the matter.

On December 1, 2000, the Bankruptcy Court issued an
opinion regarding the Class 4 Confirmation Objections. *In
re Dow Corning Corp.*, 244 B.R. 678 (Bankr. E.D. Mich.
1999). The Bankruptcy Court concluded that "the Plan
provision [i.e., the Case Interest Rate as defined in the
Plan] fixing the pendency interest at that which applies to
federal judgments was not 'fair and equitable.' "*Id. at
696.*During the Confirmation hearing, the Bankruptcy
Court noted that the Debtor's counsel stated that the Plan
"proponents have agreed that the Plan will pay whatever
we have to pay once the courts have determined" the
interest rate that a solvent debtor must pay to unsecured
creditors during the pendency of the bankruptcy case.
(June 28, 1999 Hrg. Tr. at 31) The Bankruptcy Court
thereafter confirmed the Plan and determined that, based
on the remarks of the Debtor's counsel, the Plan had been
amended "to provide that pendency interest will be paid
to Class 4 creditors in accordance with the terms of their
contracts."*In re Dow Corning Corporation*, 244 B.R. at
696. No one appealed this ruling.

*2 The Class 4 Claimants and the Debtor thereafter
agreed to a procedure by which the Bankruptcy Court's
two Opinions and the modified Plan would be applied to
Class 4 Claims. (*See* Stipulation Establishing Procedures
for Certain Common issue Objections to Class 4 Claims;
Docket No. 24765). The Debtor filed Objections to all
Class 4 Claims to the extent they asserted entitlement to
pendency interest at a contractual default rate, post
petition fees, costs, and expenses. The Debtor objected to
any pendency interest rate, other than the base, non-
default rate, if any, stated in the contract.[FN1]The
Appellants filed motions for summary judgment in
opposition to the Debtor's Objections claiming that they
were entitled to recover default rates that varied from the
base contract rate. A hearing was held on the matter on

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.))

Page 3

April 19, 2001. The Bankruptcy Court ruled on the record denying the Appellants' motions. The Bankruptcy Court issued its Order denying the Motions on May 3, 2001.

> FN1. There is no dispute that if there is no interest rate expressly stated in a contract, the federal judgment rate applies, pursuant to Section 1.24 of the Amended Plan.

The Appellants filed two appeals regarding the matter. The first appeal was filed after the oral ruling on April 19, 2001 but before the May 3, 2001 Order denying the Motions. The second appeal was filed after the May 3, 2001 Order was issued. The Debtor filed a Motion to Dismiss the appeals and oral arguments were held on the Motion to Dismiss on August 7, 2001. The Court dismissed the first appeal as premature but denied the Motion to Dismiss as to the second appeal and set the matter for hearing. (See March 29, 2002 Memorandum Opinion and Order)

It is noted that at the hearing on the Motion to Dismiss, the parties agreed that briefing on the merits of the case would proceed pending the Court's decision on the Motion to Dismiss pursuant to a July 11, 2001 Stipulated Order regarding the briefing schedule entered by the Court. The Appellants' brief was filed on July 31, 2001, the Appellee's response brief was filed on August 28, 2001 and the Appellants' reply brief was filed on September 17, 2001. The Appellants appear to be under the impression that the merits of the case have not been fully briefed, whereas the Debtor has indicated that it believes the merits have been fully briefed. Based on the briefs submitted by the parties, the Court finds the merits of this appeal have been fully addressed.

There is no dispute that in a *solvent* debtor case, a debtor is required to pay unsecured creditors post petition interest. There is no dispute that the Debtor is solvent with the estimated equity value in the range of $1.2 to $1.9 billion.

The Appellants essentially make two arguments on appeal. The first is that the Debtor must pay Class 4 Creditors the full amount of pendency interest called for by their pre petition contracts. Specifically, the Appellants claim that the Debtor must pay the default interest and compound the amounts in accordance with their contracts. The Appellants claim that the Bankruptcy Court's April 19, 2001 oral ruling, incorporated by reference in its May 3, 2001 Order, is in error because it violates the fair and

equitable standard codified in Section 1129(b)(1) of the Code and is in contravention of the Bankruptcy Court's previous opinion on whether the rate was fair and equitable. The Appellants' second argument is that they are entitled to recover attorney fees, costs and expenses pursuant to the terms of the pre petition contracts with the Debtor. They argue that the Bankruptcy Court's ruling denying Class 4 Creditors their fees, costs and expenses conflicts with applicable authorities.

*3 In response, the Debtor argues that the Bankruptcy Court's May 3, 2001 Order is not contrary to its previous Opinions and that the Bankruptcy Court did not err in denying the Appellants' fees and costs.

## II. *STANDARD OF REVIEW*

Generally, a bankruptcy court's grant of summary judgment is reviewed de novo. *Bauer v. Montgomery*, 215 F.3d 656, 659 (6th Cir. 2000); *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994); *Deaton v. Montgomery County*, 989 F.2d 885 (6th Cir. 1993). The district court has jurisdiction over appeals from final orders of the bankruptcy court in core proceedings. 28 U.S.C. §§ 157(b)(1) and 158(a)(1). The confirmation of a plan is a core proceeding. 28 U.S.C. § 157(b)(2)(L). A bankruptcy court's findings of fact are reviewed under a clearly erroneous standard, while its conclusions of law are reviewed de novo. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 476-77 (6th Cir. 1996); Bankr. R. 8013. Where a bankruptcy court's determination involves a mixed question of fact and law, the district court "must break it down into its constituent parts and apply the appropriate standard of review for each part."*Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997)(quoting *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993)).

The Debtor claims that the standard of review to be applied in this appeal is abuse of discretion because the Bankruptcy Court's denial of the Appellants' Motions with respect to the pendency interest was an interpretation of the provisions of the Amended Joint Plan, citing *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993). The *In re Terex* case stands for the proposition that the standard of review depends on the actions taken by the bankruptcy court. The Sixth Circuit stated, "[w]e conclude that although the bankruptcy court referred to explicit provisions of the Bankruptcy Code, it did not rely on or interpret the Bankruptcy Code. Its ruling, therefore,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.))

cannot be said to constitute a legal conclusion subject to *de novo* review. Rather, we believe that the bankruptcy court interpreted the Plan, and then exercised its equitable powers to breathe life into the provisions of the Plan. Accordingly, we review the interpretation of the Plan with full deference."*Id.* (citations omitted) If the bankruptcy court did not rely on the Bankruptcy Code language in interpreting the provisions of a plan, then the more deferential abuse of discretion standard applies. *Id.* A review of the Bankruptcy Court's oral ruling on April 19, 2001 shows that its decision was not based on the Bankruptcy Code language, therefore, the abuse of discretion standard applies in this case.

### III. *ANALYSIS*

#### A. *Pendency Interest Rate*

#### 1. *Bankruptcy Court Opinion*

**\*4** The Amended Joint Plan provided for payment of post petition interest to the commercial creditors at the "Federal judgment rate provided in 28 U.S.C. § 1961 in effect on the Petition Date" which was at 6.28%. The Bankruptcy Court in its December 1, 2000 Opinion concluded that the Plan provision fixing the pendency interest rate at the federal judgment rate was *not* "fair and equitable".*In re Dow Corning Corp.*, 244 B.R. at 696. No party disputes that at the confirmation hearing, the Debtor's counsel stated that the "proponents have agreed that the Plan will pay whatever we have to pay once the courts have determined" the interest rate to be paid by a solvent debtor to unsecured creditors as pendency interest. (June 28, 1999, Tr. at 31) The Bankruptcy Court, based on these remarks considered the Plan verbally amended "to provide that pendency interest will be paid to Class 4 creditors in accordance with the terms of their contracts."*Id.* Pendency interest was specifically defined as interest that accrues "for the time frame beginning with the commencement of this case and ending on the effective date of the Plan."*Id.* at 680.In an oral opinion on April 19, 2001, the Bankruptcy Court determined that the Plan limited the recovery of pendency interest to rates in effect as of May 15, 1995, the date of the Debtor's Petition, compounded annually. (Apr. 19, 2001 Tr., at 78-85). The issue of the contract pendency interest rate arose again.

After reviewing the briefs and hearing oral arguments, the Bankruptcy Court rendered its oral opinion in April 2001 and noting the verbal amendment to the Plan opined that

in determining the applicable contract rate under the terms of the Plan, "it would presumably be the rate in effect on May 15, 1995, the date Dow Corning's bankruptcy case commenced."(Apr. 19, 2001 Tr., at 81) The Bankruptcy Court also noted that the Debtor was not in default with respect to any of the loans at issue before the court on that date. The Bankruptcy Court went on to state that "a straightforward application of the plan terms would mean that the creditors are entitled only to the base contract rate of interest" and were precluded from seeking a higher rate by Section 1141(a) of the Code, *citing Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000). (Apr. 19, 2001 Tr., at 81) Citing *In re Terex*, the Bankruptcy Court stated that "interest on a claim which is allowed post-confirmation can be awarded only if doing so is not inconsistent with the terms of the plan."(Apr. 19, 2001 Tr., at 83) The Bankruptcy Court concluded that the Appellants were seeking to modify the plan and as such were required to show: the award of default interest was consistent with the Plan; or if inconsistent, that the default interest requested was appropriate "because the requirements for post confirmation plan modification set forth in Section 1127 of the Code have been met or are for some reason inapplicable."(Apr. 19, 2001 Tr. at 85) The Bankruptcy Court then ruled that the motion for summary judgment was denied "insofar as creditors ask for some kind of generic declaration that they are entitled to default interest" because the creditors had not shown that default interest was not a modification of the Plan or that the requirements for modification of the Plan had been met. (Apr. 19, 2001 Tr., at 85)

**\*5** The Bankruptcy Court then addressed the issue of compound interest, indicating that the Appellants' argument was that their contracts should be fully enforced and that the Debtor had argued that compounding of interest under the individual contracts would be unfair. Without addressing these arguments, the Bankruptcy Court noted that the Appellants based their right to compound interest under their contracts "solely on the Debtor's failure to make timely post petition payments."(Apr. 19, 2001 Tr, at 86) The Bankruptcy Court reasoned this would mean that the creditors' allowed claims would include interest that accrued post petition, interest not yet due and payable on the date of the petition. The Bankruptcy Court indicated that Section 502(b) of the Code does not permit an allowed claim for unmatured interest, which includes interest accruing post petition, citing *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 373 (1988), *In re Terex*, 894, F.2d at 173, 4 Collier on Bankruptcy at 502-27 Note 30, 15th Edition Revised 2000, and Senate

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.))

Reports No. 989, 95th Congress, 2d Session Page 62, 1978. The Bankruptcy Court further reiterated there was no tension between Section 502(b) and the rule that a solvent debtor must pay creditors post petition interest, citing its own prior opinion, *In re Dow Corning*, 244 BR at 685, and stating, "pendency interest whether based on Section 726(a)(5) or 1129(b)'s requirement that the plan be "fair and equitable" does not constitute an allowed claim. Thus, the proposition that such interest must be paid is compatible with Section 502(b)(2)." (Apr. 19, 2001 Tr., at 86)

Addressing the "general fairness" issue, the Bankruptcy Court stated that a compound interest provision already existed in the Plan at Section 1.24 allowing interest to be compounded annually on the anniversary date of the petition, which the Bankruptcy Court found precluded compounding at some "other interval." (Apr. 19, 2001 Tr. at 87) In its December 1999 Opinion on the pendency interest, the Bankruptcy Court did not address the compounding of interest issue.

## 2. *Commercial Committee's Arguments*

On appeal, the Appellants assert that the Bankruptcy Court rewrote the Plan by its April 2001 decision, and that such rewriting is not fair and equitable. The Committee argues that under Section 1129(b) the Debtor is obligated to pay creditors in accordance with their contracts. The Committee, citing the Bankruptcy Court's decision, 244 B.R. at 689-690, maintains that the "fair and equitable" standard requires that the Debtor recognize the creditor's right to interest at contractual rates before retaining any equity. The Committee noted that the Debtor is solvent by a margin nearing $2 billion and is certainly able to pay its debts.

*6 The Committee cites a number of cases requiring payment of default rates of pendency interest including: *In re Southland*, 160 F.3d 1054, 1059-60 (6th Cir. 1998); *Ruskin v. Griffiths*, 269 F.3d 827, 831-32 (2d Cir. 1959); *In re Dixon*, 228 B.R. 166, 171-76 (W.D. Va. 1998); *In re Route One W. Windsor Ltd. P'ship*, 225 B.R. 76, 89-90 (Bankr. D.N.J. 1998); *In re Sugarcreek Window & Door Corp.*, No. 95-60810, 1996 WL 374116, at *3 (N.D. Ohio June 13, 1996); *Invex Holdings, N.V. v. Equitable Life Ins.*, 179 B.R. 111, 115 (N.D. Ind. 1993), aff'd sub no., *In re Terry Ltd. P'ship*, 27 F.3d 241 (7th Cir. 1994); and, *In re Scarborough*, No. 91-41032-COL, 1992 WL 672983, at *4 (Bankr. M.D. Ga. Dec. 31, 1992). The Committee argues that even cases cited by the Debtor favor

enforcement of default interest rates where the debtor is solvent. *In re Maywood, Inc.*, 210 B.R. 91, 93 (Bankr. N.D. Texas 1997); *In re Kalian*, 178 B.R. 308, 314 nn15-16 (Bankr. D.R.I. 1995).

With respect to the issue of compounding of interest the Commercial Committee cites two cases in support of its position that creditors are entitled to such interest under the terms of their contracts in cases where the debtor is reorganizing. *Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Continental Inv. Corp.*, 679 F.2d 264, 269-70;*In re Marfin Ready Mix Corp.*, 220 B.R. 148, 158-65 (Bankr. E.D.N.Y. 1998).

The Commercial Committee also addressed the "ipso facto" caveat of the Bankruptcy Court's 1999 Fair and Equitable Opinion. Directing that the Debtor pay pendency interest in accordance with the creditors' contracts, the Bankruptcy Court wrote that in determining the applicable rate, "no effect is to be given to contractual provisions which purport to define as a default the filing of a voluntary petition for bankruptcy relief."*In re Dow Corning*, 244 B.R. at 696. The Committee argues that the Bankruptcy Code does not shield a debtor from defaulting on its contractual obligations, citing *AM-Haul Caring, Inc. v. Contractors Cas. & Sur. Co.*, 33 F.Supp.2d 235, 241-43 (S.D.N.Y. 1998) and *In re Manville Forest Prods. Corp.*, 60 B.R. 403, 404 (S.D.N.Y. 1986). The Committee claims that "ipso facto" clauses are provisions of a contract that trigger default based solely on the "borrower's invocation of the benefits and burdens of protection under the Bankruptcy Code by the filing of a petition for relief," citing *In re Chateaugay Corp.*, No.92 CIV. 7054, 1993 WL 159969 at *5 (S.D.N.Y. May 10, 1993) and *In re Nemko, Inc.*, 163 B.R. 927, 938 n. 5 (Bankr. E.D.N.Y. 1994)(an "ipso facto" clause is an option to terminate a contract based solely on bankruptcy, insolvency or other financial condition of the debtor). The Commercial Committee argues that such clauses, sometimes called bankruptcy clauses, permit a party to terminate a contract or lease in the event of bankruptcy. *In re Nemko*, 163 B.R. at 938 n. 5. The Committee argues that the Debtor's argument in this regard is a "red herring" as clauses triggering defaults or increased rates of interest as a result of non payment for reasons other than a debtor's bankruptcy are not considered "ipso facto" clauses. The Committee claims that the default and compounded interest clauses are triggered by non payment, not because of any "ipso facto" contract provisions.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.))

### 3. *Debtor's Arguments*

*7 The Debtor essentially adopts the April 2001 oral opinion of the Bankruptcy Court, arguing that the prior opinions of the Court on the issue of interest can and should be harmonized. The Debtor characterizes the ruling as a "practical interpretation of the Plan" and not an abuse of discretion. As such, the May 2001 Order of the Bankruptcy Court should be affirmed.

The Debtor then turns to alternative grounds for affirmance. The Debtor asserts that the Appellants presented no evidence to support summary judgment on their position that their claim for pendency interest at the default rates is "fair and equitable" under 11 U.S.C. §1129(b)(1). The Debtor claims that application of the "fair and equitable" standard is fact specific and requires balancing "equitable factors and considerations, defying resolution as a matter of law."*In re D&F Const., Inc.,* 865 F.2d 673, 675 (5th Cir. 1989). When determining if a default interest rate should apply to creditors' claims, the specific facts of each case must be examined for the court to decide whether the circumstances warrant application of the higher rate. *In re Casa Blanca Project Lenders, L.P.,* 196 B.R. 140, 143 (B.A.P. 9th Cir. 1996); *In re TMA Assocs. Ltd.,* 160 B.R. 172, 175 (D. Colo. 1993).

The Debtor cites numerous cases where courts have denied the application of default interest rates and argues that no case cited by the Appellants holds that creditors in a bankruptcy have an absolute or automatic right to the default rate because their contract so provides. *In re Bohling,* 222 B.R. 340, 343 (Bankr. D. Neb. 1998); *In re Maywood, Inc.,* 210 B.R. 91, 93 (Bankr. N.D. Tex. 1997); *In re Kalian,* 178 B.R. at 316-17;*In re Boardwalk Partners,* 171 B.R. 87, 92-93 (Bankr. D. Ariz. 1994); *In re Consol. Prop. Ltd. P'ship,* 152 B.R. 452, 457-58 (Bankr. N.D. Ohio 1993); *In re Timberline Prop. Dev., Inc.,* 136 B.R. 382, 386-87 (Bankr. D. N.J. 1992); *In re Hollstrom,* 133 B.R. 535, 539-41 (Bankr. D. Colo. 1991); *In re DWS Inv., Inc.,* 121 B.R. 845, 850 (Bankr. C.D. Cal. 1990); *In re White,* 88 B.R. 498, 511 (Bankr. D. Mass. 1988).

The Debtor argues that instead, the courts have carefully balanced the equities to determine whether default interest rates are fair and equitable, citing *In re Southland,* 160 F.3d 1054, 1059-60 (5th Cir. 1998); *Ruskin v. Griffiths,* 269 F.3d 827, 831-32 (2d Cir. 1959); *In re Dixon,* 228 B.R. 166, 171-76 (W.D. Va. 1998); *In re Sugarcreek,* 1996 WL 374116 at *3;*Invex Holdings,* 179 B.R. at 115;*In re Route One West Windsor Ltd. P'ship,* 225 B.R. 76, 89-90 (Bankr. D. N.J.); *Bohling,* 222 B.R. at 343;*Maywood, Inc.,* 210 B.R. at 93;*Kalian,* 178 B.R. at 313;*Boardwalk Partners,* 171 B.R. at 92-93;*Consol. Prop.,* 152 B.R. at 457-58;*Timberline,* 136 B.R. at 386-87;*Hollstrom,* 133 B.R. at 539-41;*DWS,* 121 B.R. at 850;*White,* 88 B.R. at 511;*In re Sheppley & Co.,* 61 B.R. 271, 278-79 (Bankr. N.D. Iowa 1986).

*8 The Debtor lists six factors to be considered when making this determination: 1) whether the debtor was in default when the bankruptcy began; 2) whether there was a realistic risk of nonpayment either before or during the bankruptcy case; 3) whether the increased default rate of interest is related to a creditor's actual losses or market rates of interest; 4) whether there was an increased risk to the creditor following default; 5) whether default interest would confer a windfall upon the creditor; and, 6) the difference between the non-default rate and the default rate. (Appellee's Br., p. 13)

The Debtor goes on to say that the Appellants have presented no evidence, as is their burden, to support summary judgment on this issue. In addition the Debtor argues that many of the cases cited by Appellants involve a default by the debtor before or immediately after the filing of the bankruptcy petition. *E.g., Southland,* 160 F.3d at 1056;*Dixon,* 228 B.R. at 169;*Sugarcreek,* 1996 WL 374116 at *1;*Invex,* 179 B.R. at 112;*Route One,* 225 B.R. at 78-79. Here, the Debtor argues there has been no pre petition default nor any risk of non payment, supporting the claim for default interest rates which are often agreed to for the purpose of compensating for enhanced risks.

The Debtor also claims that Appellants have failed to demonstrate that the default interest rates compensate the creditors for actual loses as required by some of the case law. *In re DWS,* 121 B.R. at 850. The Debtor asserts that some of the default interest rates are excessive and fairness and equity prevent the application of these rates absent a showing justifying such heightened rates. The Debtor claims that recovery of pendency interest at default rates is not "inherently" "fair and equitable" as a matter of law, but that courts have required evidence of the need for interest at the default rate to cover actual losses. *In re Hassen Imports P'ship,* 256 B.R. 916, 924 (B.A.P. 9th Cir. 2000); *Casa Blanca,* 196 B.R. at 146;*In re Dixon,* 228 B.R. at 175-76;*Hollstrom,* 133 B.R. 539-40;*Kalian,* 178 B.R. at 312.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.))

Page 7

Finally, the Debtor claims that courts often compare the contract rate with the default rate to decide whether the default rate is fair and equitable. In cases where the difference between the two rates is significant the default rate has not been found to be "fair and equitable." *Boardwalk Partners*, 171 B.R. at 92;*In re Boulders on the River, Inc.*, 169 B.R. 969, 975 (Bankr. D. Or. 1994); *Timberline*, 136 B.R. at 386;*DWS*, 121 B.R. at 849. The Debtor claims that in at least one of the Appellants' claims (the subject of Objection No. 100), the default rate is almost three times that of the Case Interest Rate.

*9 At the hearing, the Debtor cited *In re Cardelucci*, 2002 U.S. App. LEXIS 6770 (9th Cir. Apr. 12, 2002)(No. 00-56541), to support its position that equity applies in the court's determination of whether to allow post petition interest and that using one rate promotes uniformity within federal law.

### 4. *Findings*

This Court finds that the decision of the Bankruptcy Court is affirmed. There is no dispute that the Bankruptcy Court in its December 1999 opinion ruled that the Amended Joint Plan was further amended to provide that the Class 4 commercial creditors would be paid pendency interest "in accordance with the terms of the parties' contracts."*In re Dow Corning*, 244 B.R. at 696. There is no dispute that the Bankruptcy Court ruled this way after finding that the Plan provision which fixed the pendency interest rate at the federal judgment rate was not "fair and equitable." *Id.* The Bankruptcy Court had also defined "pendency interest" as interest accruing "for the time frame beginning with the commencement of this case and ending on the effective of the Plan."*Id.* at 680.Compounding of interest was not addressed by the Bankruptcy Court in that opinion. Compounding of interest is addressed in Section 1.24 of the Plan. There is no dispute that no party appealed this ruling or the basis on which the Bankruptcy Court made its ruling. All then that was left was for the court to determine the appropriate rate, which the parties agreed could be accomplished by motions before the Bankruptcy Court.

The Court finds that the Bankruptcy Court did not abuse its discretion in determining that the verbal amendment to the Plan presumed that the contract rate to be applied was the base contract rate (in accordance with the terms of the parties' contracts) applicable on the day the Petition for bankruptcy was filed by the Debtor. The Court's definition of pendency interest supports that conclusion.

Pendency interest begins with the commencement of the case. At that time all parties appear to agree that the Debtor was not in default and therefore the default rate was not in effect. If however, the parties are inaccurate and any contract was in default pre petition, then of course, the default rate would apply since it was the rate in effect on the day the bankruptcy was commenced.

The parties cite numerous cases in support of their respective arguments that the default rate does or does not apply. These cases generally apply §506(b) of the Bankruptcy Code. 11 U.S.C. §506(b).Section 506(b) expressly allows post petition interest to oversecured creditors. In the Bankruptcy Court's December 1999 decision the court noted that §506(b) carves out an exception to the general rule disallowing of post petition interest in §502(b)(2). However, the Bankruptcy Court did not find that pendency interest was available to the Appellants in this case under §506(b), but under the provisions of §1129(b), the payment of pendency interest at the federal judgment rate, which the Bankruptcy Court found was *not* "fair and equitable." There is no need in this appeal to revisit that analysis (since there was no appeal) except to indicate that §506(b) was viewed as allowing post petition interest as an "allowed claim." Some of the considerations of a court reviewing creditors' requests for default interest rates under §506(b) are just not applicable here, such as concerns that unsecured creditors would suffer if default interest rates were allowed to oversecured creditors. *In re Bohling*, 222 B.R. at 343;*In re Maywood*, 210 B.R. at 93. While it is true that some courts favor the application of default interest where the debtor is solvent, that is only one of the considerations taken into account by the courts. It must also be noted that many of these cases also involve the award of default interest in circumstances where there was pre petition default.

*10 In addition, these cases do not involve a blanket decision that a default rate is available to all creditors in a given bankruptcy. Even if the court were to apply the §506(b) balancing of equities to determine if default rates should apply it would have to be done on a case by case basis. The Motion for Summary Judgment filed by the Appellants presented no such evidence to the Bankruptcy Court on which it could rely as a matter of law. The Bankruptcy Court did not abuse its discretion in denying the Appellants' summary judgment motions.

The pendency interest rate to be applied to the Class 4 Creditor's individual claims is the base contract rate in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 8
Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.))

effect between the parties at the time the Petition was filed, and not the default rate, unless the individual claimant can show that the Debtor defaulted pre petition. The interest is to be compounded annually according to Section 1.24 of the Plan.

## B. *Attorney Fees, Costs and Expenses*

Appellants argue that they are entitled to recover attorney fees, costs and expenses pursuant to the terms of their pre petition contracts with the Debtor. In response, the Debtor argues that the creditors are not entitled to post petition attorney fees, costs and expenses.

The Plan provides that Class 4 claims shall include fees, costs and expenses to the extent they are allowable under applicable law. (Plan, § 5.1) In its April 19, 2001 ruling on the record, the Bankruptcy Court denied the Appellant's various summary judgment motions on the issues of fees and costs finding that the unsecured creditors held no pre petition claim for costs because the breach giving rise to a right of reimbursement occurred post petition, citing *CPT Holdings, Inc. v. Industrial & Allied Employees Union Pension Plan, Local 73*, 162 F.3d 405 (6th Cir. 1999). (4/19/01 Tr. at 95) The Court affirms the Bankruptcy Court's ultimate decision denying the Appellants' summary judgment motions on this issue, but does not agree with the basis for the Bankruptcy Court's reliance on *CPT Holdings*. *CPT Holdings* is inapplicable because it did not involve the issue of attorney fees. For the reasons set forth below, the Court holds that *In re Martin*, 761 F.2d 1163 (6th Cir. 1985) applies but not to the extent the Appellants argue.

In *In re Martin*, in the context of analyzing whether a debtor is entitled to attorney fees under 11 U.S.C. § 523(d), the Sixth Circuit noted that, "creditors are entitled to recover attorney's fees in bankruptcy claims if they have a contractual right to them valid under state law ..."*Id.* at 1168.The Sixth Circuit found that the creditor was entitled to costs and attorney fees necessary to collect the note if the note so provides. *Id.* Because the applicable state law enforced such a contractual obligation for reasonable attorney fees, the Sixth Circuit found that the creditor was entitled to reasonable attorney fees for the collection of the note. *Id.*

**\*11** Based on *In re Martin*, this Court finds that if a contract term provides for attorney fees, a creditor in bankruptcy is entitled to recover such fees and costs, if the applicable state law enforces such a provision. The

Sixth Circuit specifically noted that the note itself provided that the debtor would reimburse the creditor for the attorney fees "necessary to collect the note." *Id.* The Sixth Circuit did not expressly hold that in *all* cases where the contractual provision provides for attorney fees the creditor is automatically entitled to post petition attorney fees. The Sixth Circuit only held that the creditor was entitled to attorney fees if such fees were incurred in the enforcement of a contract. Attorney fees are not independently recoverable under the Bankruptcy Code, but they may be recovered in bankruptcy proceedings under state law if the parties' contractual arrangement so provides. *See, In re Sokolowski*, 205 F.3d 532, 535 (2d Cir. 2000).

The note at issue in *In re Martin*, was unsecured and would have been discharged in the course of the chapter 7 personal bankruptcy proceedings.*In re Martin*, 761 F.2d at 1165. The creditor filed an adversary proceeding to have its debt determined to be excepted from discharge under 11 U.S.C. § 523(a)(2)(B).*Id.* The bankruptcy court granted the exception from discharge, which meant that the debt was not dischargeable and the debtor in bankruptcy was obligated on the note. 11 U.S.C. § 523(a); *In re Martin*, 761 F.2d at 1167. The Sixth Circuit's ruling in *In re Martin* allowed the claim for attorney fees because the creditor incurred expenses in litigating the issue of the dischargeability of the note. The prevailing creditor incurred expenses in litigating the issue and in its attempt to collect on the note. *Id.; see Agassi v. Planet Hollywood Int'l, Inc.*, 269 B.R. 543, 552 (D. Del. 2001) (Even if a contract provides for attorney fees, where the litigated issues involve no basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney fees will not be awarded).

Cases interpreting attorney fees under 11 U.S.C. § 365 have relied on the "American Rule" that unless otherwise specified in a contract or statute, parties to the litigation must bear their own attorney fees. *See In re Westside Print Works, Inc.*, 180 B.R. 557, 564 (1995). However, entitlement to attorney fees is dependent on the terms of a lease and on state law because § 365(b)(1)(B) does not create an independent right to an award of attorney fees. *See In re Mid American Oil, Inc.*, 255 B.R. 839, 841 (M.D. Tenn. 2000). The issue of whether a party is in default to trigger the attorney fee provision in a contract requires interpretation of a particular contract since the cardinal rule for interpretation of a contract is to ascertain the intention of the parties from the contract. *Id.;In re Shangra-La, Inc.*, 167 F.3d 843, 852 (4th Cir. 1999)(The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 9
Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.))

bankruptcy court erred to the extent it applied a bright-line test precluding award of fees for actions primarily involving issues of bankruptcy law without analyzing the terms of the lease between the parties and the effect of state law.). Clauses in an executory contract that result in a breach of the contract solely due to the bankruptcy filing of a party are considered "ipso facto" clauses which are unenforceable under the Bankruptcy Code. _Agassi, 269 B.R. at 553 n. 3_ (The court declined to consider an initial bankruptcy filing as a breach such that attorney fees incurred in connection with an assumption motion should not be considered fees incurred to address breach.).

*12 Attorney fees may be awarded to an unsecured creditor in a bankruptcy proceeding only to the extent that state law governs the substantive issues and authorizes the court to award fees. _Renfrow v. Draper, 232 F.3d 688, 694 (9th Cir. 2000)_. In _Renfrow_, the creditor successfully litigated the validity and amount of debt owed to her in a divorce decree. The bankruptcy court had to analyze state law substantive issues in order to determine whether the debt was dischargeable or not. _Id._ at 694.Although the ultimate issue in _Renfrow_ was one of bankruptcy law, the bankruptcy court had to first determine whether the debt was dischargeable or not under state law. The mere presence of an attorney fee provision in a contract does not entitle a prevailing party to attorney fees. _See In re Hashemi, 104 F.3d 1122, 1127 (9th Cir. 1996)_. The applicability of bankruptcy laws to particular contracts is not a question of the enforceability of a contract but rather involves a unique and separate area of federal law. _Id._ A § 502(b) objection is purely an issue of federal bankruptcy law and does not involve the issue of the enforceability or the validity of a contract. _See Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 163 (1946)_. Therefore, litigating an issue under § 502(b) and how it applies to specific contracts would not result in the award of attorney fees to a prevailing party, absent a bankruptcy statute providing for attorney fees to such a prevailing party because § 502(b) is exclusively governed by federal law.

In this instance, the validity of the individual contracts is not at issue. The Appellants do not seek attorney fees incurred in litigating the validity of the contracts. The Appellants seek a blanket ruling that if attorney fee

provisions are included in the contracts, such fees are allowed as claims under 11 U.S.C. § 502(b). The issue before the Court is the interpretation of the Plan language that fees, costs, and expenses are allowable under the applicable law and whether the attorney fee provisions are allowed "claims" under 11 U.S.C. § 502(b). (See Appellant's Br., p. 23) This determination does not involve the validity of the contracts. As noted above, any determination under § 502(b) is purely a question of federal law. The Class 4 creditors are not entitled to attorney fees and expenses unless they incur expenses in enforcing the validity of the contract. Litigating the interpretation of the Plan and whether claims are allowed under § 502(b) does not involve a determination of whether under a substantive state law, the contract is valid. Without determining whether each of the contracts at issue contains attorney fee provisions since the individual contracts are not before the Court, the Court makes the following general ruling: if a contract contains an attorney fee provision and the creditor is required to litigate the _validity_ of the contract, then the prevailing creditor is entitled to attorney fees and expenses incurred in litigating the validity of the contract. Inasmuch as the Class 4 creditors have not shown that they have incurred attorney fees in litigating the validity of their contracts, the Bankruptcy Court did not abuse its discretion in denying their summary judgment motion.

**IV. CONCLUSION**

*13 For the reasons set forth above,

IT IS ORDERED that the Court AFFIRMS the Bankruptcy Court's May 3, 2001 Order, incorporating its April 19, 2001 oral ruling and DISMISSES this appeal.

DATED: March 31, 2004

s/ _Denise Page Hood_, DENISE PAGE HOOD, United States District Judge

UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF MICHIGAN NORTHERN DIVISION

IN RE:                                         CASE NO. 95-20512

DOW CORNING CORPORATION                        (Chapter 11)

                                               Judge Denise Page Hood

DEBTOR

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 764654 (E.D.Mich.))**

*ORDER ESTABLISHING EFFECTIVE DATE FOR
AMENDED JOINT PLAN OF REORGANIZATION*

The Court having received the March 24, 2004 order of
the United States Court of Appeals for the Sixth Circuit
dismissing the appeal of the Nevada Claimants, and it
appearing that the dismissal of this appeal eliminates the
last remaining impediment to establishing the Effective
Date under the Amended Joint Plan of Reorganization of
Dow Corning Corporation,

IT IS HEREBY ORDERED THAT:

1. The Plan Proponents and the Claims Administrator are
authorized and directed to take all steps necessary to
cause the Effective Date for the Amended Joint Plan of
Reorganization to occur on June 1, 2004.

2. The rights and objections of the Debtor and the
Commercial Committee with respect to the issues relating
to the Effective Date as it relates to Class 4 are preserved,
including whether or not there should be a separate
Effective Date as to Class 4 and such issues shall be heard
on April 29, 2004.

Dated: *April 02, 2004*

*s/ Denise Page Hood*, Denise Page Hood, United States
District Judge

E.D.Mich. 2004.
In Re: DOW CORNING CORPORATION, Debtor.
Not Reported in F.Supp.2d, 2004 WL 764654
(E.D.Mich.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                          Page 2
Slip Copy, 2008 WL 73318 (Bkrtcy.W.D.Ky.)
**(Cite as: 2008 WL 73318 (Bkrtcy.W.D.Ky.))**

■In re Smith
Bkrtcy.W.D.Ky.,2008.
Only the Westlaw citation is currently available.
United States Bankruptcy Court,W.D. Kentucky.
In re W.J. SMITH, Betty B. Smith, Debtor(s).
**No. 03-10666(1)11.**

Jan. 7, 2008.

W.J. Smith, Jr., Bowling Green, KY, pro se.
Betty B. Smith, Bowling Green, KY, pro se.

### MEMORANDUM-OPINION

JOAN A. LLOYD, United States Bankruptcy Judge.
**\*1** This matter is before the Court for a determination of the appropriate rate of interest on the claim of Hart County Bank ("the Bank") in the Second Amended Plan of Reorganization ("the Plan") of Debtors W.J. Smith and Betty B. Smith ("the Debtors"). In the Plan, Debtors proposed to pay interest at the rate of 1.32% per annum on the unsecured claim of $232,207.05 as of February 6, 2004. In other words, Debtors proposed to pay the claim at the federal legal rate in effect on the date of the filing of the Petition. The Bank, however, contends it is entitled to receive interest at the rate of 7%. The 7% rate was awarded to the Bank by the Warren Circuit Court in its Judgment determining the amount of the deficiency, attorney's fees and costs on its claim against the Debtors. The 7% figure is the contract rate of interest provided in the debt instruments entered into between the Debtors and the Bank.

This Court addressed the issue of post-petition interest in _In re Best,_ 365 B.R. 725 (Bankr.W.D.Ky.2007). In that case, this Court determined that the "legal rate of interest" for post-petition interest under 11 U.S.C. § 726(a)(5) was limited to the federal rate of interest under 28 U.S.C. § 1961(a) as of the date of the filing of the petition. The holding in _Best_ was limited to the facts of that case, a Chapter 7 case with funds in excess of allowable claims. In _Best_ this Court specifically acknowledged that a mechanical application of the federal rate could result in a windfall for solvent debtors and therefore limited the ruling to the facts

specific to that case.

This case presents a different factual scenario than was present in _Best._ Here, there is but one creditor. Therefore, there is no need to balance the equities between competing creditors. Next, application of the federal interest rate would indeed create a windfall for the Debtors.

The Warren Circuit Court awarded the Bank 7% interest in accordance with the terms of the loan documents between the parties. The Sixth Circuit acknowledged in _In re Dow Corning Corp.,_ 456 F.3d 668, 679 (6th Cir.2006), that in most cases where a debtor is solvent, courts generally confine themselves to determining and enforcing whatever pre-petition rights a creditor has against the debtor. Solvent debtors should not receive a windfall simply because they sought bankruptcy protection.

The reasoning of the _Best_ case is not applicable to the matter at bar. The Court finds no basis for disturbing the Warren Circuit Court Judgment. Accordingly, the appropriate rate of interest on the Bank's post-petition claim is 7%.

### CONCLUSION

For all of the above reasons, the Court awards Hart County Bank 7% interest on its post-petition claim.

### ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Hart County Bank is awarded post-petition interest at the rate of 7% on its unsecured claim.

Bkrtcy.W.D.Ky.,2008.
In re Smith
Slip Copy, 2008 WL 73318 (Bkrtcy.W.D.Ky.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 73318 (Bkrtcy.W.D.Ky.)
**(Cite as: 2008 WL 73318 (Bkrtcy.W.D.Ky.))**

.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.