IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: August 15, 2008 at 4:00 p.m.
Hearing Date: September 2, 2008 at 1:00 p.m.

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
AUTHORIZING THE IMPLEMENTATION OF THE 2008-2010
<u>LONG-TERM INCENTIVE PLAN FOR KEY EMPLOYEES</u>**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an order authorizing the implementation of the Grace 2008-2010 Long-Term Incentive Plan (the "2008-2010 LTIP") for certain key employees, as part of the Debtors' ongoing long-term incentive compensation program. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

## Background

3. On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"), which have been consolidated for administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

4. On the dates noted in the following Schedule, the Court entered an order authorizing the implementation of the respective long-term incentive plans (the "Chapter 11 LTIPs") for management and other key employees of the Debtor selected to participate in the LTIPs (the "Key Employees"), as part of the Debtors' ongoing long-term incentive program[2]:

---

[2] Under each Chapter 11 LTIP, payouts were based on business performance during a three-calendar year performance period. Those LTIPs provided only cash-based incentives to Key Employees, and did not include any incentives based on the performance of the common stock of W. R. Grace & Co. (the Debtors' parent corporation). In the judgment of the Debtors, stock performance was not an appropriate incentive for the Key Employees managing and operating the Debtors' businesses during the performance periods covered by the Chapter 11 LTIPs.

| **Date of Order** | **Period of LTIP** |
|---|---|
| August 26, 2002 | 2002-2004 LTIP |
| March 26, 2003 | 2003-2005 LTIP |
| June 9, 2004 | 2004-2006 LTIP |
| July 13, 2005 | 2005-2007 LTIP |
| July 24, 2006 | 2006-2008 LTIP |
| August 29, 2007 | 2007-2009 LTIP |

5.  The Debtors' long-standing, ongoing strategy for its long-term incentive program necessitates that a renewed LTIP be implemented each calendar year, with no more than three LTIPs in effect in any year. Thus, upon approval of this Motion by the Court, the 2006-2008 LTIP, the 2007-2009 LTIP and the 2008-2010 LTIP will each be active in 2008.

6.  That strategy also contemplates that the Debtors provide Key Employees with long-term incentive opportunities at or about the 60th percentile of their industry peer group.[3] The 2008-2010 LTIP is consistent with that strategy.

7.  The aggregate targeted long-term incentive award value applicable to the Chapter 11 LTIPs has remained unchanged since the Debtors implemented the initial Chapter 11 LTIP in 2002 (i.e., the 2002-2004 LTIP), with an aggregate targeted award of $11.8 million, excluding the Chief Executive Officer of the Debtors (the "CEO").

---

[3] The industry peer group data to determine appropriate long-term incentive opportunities for the Debtors' Key Employees is derived from a group of specialty chemicals companies, in the case of top executives; and from broader market data for other Key Employees. See the "Long-Term Incentive Compensation" section of the Debtors' executive compensation disclosures in its 2007 Form 10-K for a listing of the specialty chemicals companies used for these purposes, as well as for more background regarding the Debtors' long-term incentive compensation strategy.

8.      The targeted long-term incentive award for the current CEO under the 2005-2007 LTIP was approximately $1.7 million. That amount has remained unchanged under each subsequent Chapter 11 LTIP.[4]

9.      Therefore, the aggregate targeted long-term incentive award limit under the 2005-2007 LTIP and each subsequent Chapter 11 LTIP has been $13.5 million (including the CEO). This includes the two currently active Chapter 11 LTIPs: the 2006-2008 LTIP and the 2007-2009 LTIP.

10.     The Debtors propose to continue their long-term incentive program strategy by implementing the 2008-2010 LTIP, which will be similar to the Chapter 11 LTIPs, except in two respects: (1) the total targeted value of awards under the 2008-2010 LTIP (comprised of potential cash payouts plus stock option awards) will be increased to $15.8 million excluding the CEO, in order to reflect the recommendations of the Compensation Committee's compensation consultant as necessary to provide long-term incentive opportunities at or about the 60th percentile of such opportunities provided by the Debtors' industry peer group, and (2) the 2008-2010 LTIP will include awards of stock options for shares of the Debtors' parent, W. R. Grace & Co. ("Grace Stock").

11.     The total targeted value of the award under the 2008-2010 LTIP for the CEO will remain unchanged from the prior Chapter 11 LTIP's, at approximately $1.7 million.[5] This

---

[4] The total targeted award value awarded to the CEO under the Chapter 11 LTIPs generally has been established by the applicable written employment agreement between the CEO and the Debtors, each of which were approved by the Court. The current CEO's long-term incentive opportunities under the 2005-2007 LTIP were set forth in his employment agreement, approved by this Court on April 24, 2005. That agreement does not specifically establish the CEO's incentive opportunities under subsequent LTIPs.

targeted value will be comprised of potential cash payouts plus a stock option award, determined under the same provisions as applicable to 2008-2010 LTIP awards to other Key Employees.

### Basic Design of the 2008-2010 LTIP

12. The 2008-2010 LTIP is designed so that the amount of the cash component of the target awards to Key Employees (including the CEO) will equal 50% of the total targeted award that the Key Employee received (or would have received) under the 2007-2009 LTIP.

13. Cash awards to Key Employees (if earned) will be made in 1/3 and 2/3 installments in 2010 and 2011, respectively (which continues the cash payout practice applicable to the prior Chapter 11 LTIPs). The total aggregate cash awards (if earned) under the 2008-2010 LTIP (including the CEO) would be as follows[6]:

| Year | Targeted Cash Payout | Maximum Cash Payout |
|---|---|---|
| 2010 | $2.25 million | $2.25 million |
| 2011 | $4.50 million | $11.25 million |
| Total | $6.75 million | $13.50 million |

14. The Debtors anticipate granting options covering approximately 1.7 million to 2.2 million shares of Grace Stock, under the 2008-2010 LTIP (depending on the market price of a

---

[5] The amount of that targeted award does not exceed (and is actually less than) the amount that would be appropriate for the CEO at the 60th percentile of the Debtor's industry peer group. (See Declaration of Nick Bubnovich, Senior Consultant, Watson Wyatt, which is attached hereto as Exhibit A.)

[6] See paragraph 15 below for an explanation regarding the calculation of the cash award payouts under the 2008-2010 LTIP.

share of Grace Stock at the time of grant).[7] The "strike price" of the stock options awarded under the 2008-2010 LTIP will be the market price of Grace Stock as of the award date. One half of the awarded stock options would vest in March 2010, and the remaining half would vest in March 2011. The stock options would generally be exercisable for a period of 5 years after grant.[8]

## Relief Requested

15. By this Motion, the Debtors request that the Court authorize the continuation of the Debtors' ongoing long-term incentive program by authorizing the implementation of the 2008-2010 LTIP, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

## Similarity Of The 2008-2010 LTIP With Previous Chapter 11 LTIPs

16. The performance criteria for the cash awards portion of the 2008-2010 LTIP are essentially the same as the provisions of the previous Chapter 11 LTIPs. Specifically[9]:

(a) Business performance for cash awards is measured on a three-year performance period, commencing with 2008.[10]

(b) The applicable compounded annual 3-year growth rate in core earnings before interest and taxes ("EBIT") to achieve a cash payment of 100% of the 2008-2010 LTIP target award (the "Base Target Cash Award") will be 6% per annum. Core

---

[7] This approximation reflects an assumed price of a share of Grace Stock on the date of grant that is within a range of $20.00 to $25.00 per share. The total number of Grace Shares covered by the options granted will be determined by first calculating the theoretical number of restricted shares that would be awarded, based on the price of Grace Shares on the date of grant, then multiplying that number by 4, which is the average multiple used for these purposes by the specialty chemicals industry.

[8] The options will be issued under the Grace 2000 Stock Incentive Plan, which was authorized and approved by the Court, in 2001, in conjunction with the Debtors petition for relief under Chapter 11. Currently under that Plan, the Debtors have approximately 4.7 million shares available for stock options or restricted stock grants.

[9] As with prior LTIPs, the Debtors reserve the right to determine whether a particular employee is a Key Employee with respect to the 2008-2010 LTIP; and the right to vary the selection, and the degree of participation, of Key Employees under the 2008-2010 LTIP from the Key Employees identified under prior LTIPs.

[10] For each of the five previous Chapter 11 LTIPs, the three-year performance period commenced with the calendar year in which the LTIP was implemented.

EBIT for the 3-year period is adjusted for changes in pension expense and LTIP expense ("Core EBIT").

(c) Partial payouts for EBIT growth rates between 0% and 6% will be implemented on a straight-line basis.

(d) The amount of the 2008-2010 LTIP cash payments will be increased at EBIT compounded annual growth rates in excess of the 6%, up to a maximum of 200% of the Base Target Cash Award at an annual compounded EBIT growth rate of 25%.

(e) Cash payouts (if earned) will occur in 1/3 and 2/3 installments, respectively, in early March following years 2 and 3 of the LTIP (i.e., in 2010 and 2011.) The 1/3 installment following year 2 is limited to 1/3 of the Base Targeted Cash Award.

(f) Cash payout adjustments for a "significant acquisition" and a "significant divestiture" applicable to the calculation of cash awards under the 2007-2009 LTIP will also apply to cash awards under the 2008-2010 LTIP.

### Increasing The Total Value Of Targeted Awards Under The 2008-2010 LTIP

17. The Debtors' believe that increasing the total targeted value of awards under the 2008-2010 LTIP from the levels of the prior Chapter 11 LTIPs is necessary to maintain a competitive and meaningful incentive program to continue to motivate Key Employees to perform at a high level.

18. The value of the total targeted awards under the LTIPs has not increased since the Debtors filed for Chapter 11 protection more than 7 years ago, on April 2, 2001.

19. An analysis conducted by the compensation consultant of the Debtors' Compensation Committee, Watson Wyatt Worldwide ("Watson Wyatt"), has concluded that the Debtors' long-term incentive award opportunities have fallen behind those implemented by their industry peer group.

20. As a result, the Watson Wyatt analysis recommends that the Debtors' increase the total value of targeted awards under the 2008-2010 LTIP to $15.8 million (excluding the CEO),

in order to achieve a market competitive long-term incentive program at or about the 60th percentile of the Debtors' industry peer group. (See Declaration of Nick Bubnovich, Senior Consultant, Watson Wyatt, which is attached hereto as Exhibit A.)

21. As stated above, the CEO's targeted award of approximately $1.7 million under the 2008-2010 LTIP is the same as the targeted award to the CEO under each prior Chapter 11 LTIP, since the 2005-2007 LTIP.

### Stock Option Awards Under The 2008-2010 LTIP

22. None of the Chapter 11 LTIPs included any award of stock options or other equity-based incentives. The Debtors have not issued any equity-based incentives to Key Employees since filing for Chapter 11 protection on April 2, 2001.[11]

23. The Debtors' believe that, at this point in the Debtors' Chapter 11 Cases, it is appropriate to reintroduce stock option awards as part of their long-term incentive plans.

24. The Debtors recently announced an agreement in principle to settle all present and future asbestos-related personal injury claims against the Debtors. The Debtors believe that this agreement provides a path to emerge from Chapter 11 in the foreseeable future, and would resolve the largest contingency affecting the trading value of Grace Stock.

25. Thus, the Debtors' believe that the value of the Grace Stock will more closely reflect the performance of the Debtors' businesses. Including stock options as an element of the 2008-2010 LTIP provides long-term incentive compensation linked to the performance of the

---

[11] Prior to filing for protection under Chapter 11 on April 2, 2001, the Debtors' LTIPs generally included awards of stock options for Grace Stock. The last time the Debtors issued stock options was pursuant to the awards under the 2001-2003 LTIP in March 2001. The targeted value of each award to Key Employees under that LTIP was comprised of 50% in stock options and 50% in targeted cash payouts.

businesses as reflected in the price of Grace Stock. The Debtors believe this is a proper alignment of interests and consistent with competitive practice in the Debtors' industry.

26. In addition, following emergence, the Debtors expect to have significant cash requirements to service its exit financing and the needs of the businesses. By distributing a portion of the 2008-2010 LTIP award in the form of stock options, the Debtors will increase their cash flow and enhance their ability to meet these obligations.

**Basis for Relief**

27. Section 105(a) of the Bankruptcy Code permits the court to "issue any order... that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This Court has recognized that the broad reach of its equitable powers under section 105(a) of the Bankruptcy Code authorizes, among other things, implementation of key employee retention programs, including long-term incentive plans.

28. Section 363(b)(1) provides in relevant part that "[T]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate..." A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); see also Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by an "articulated business justification"); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed

pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Ernst Home Ctr., Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

29. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See In re Montgomery Ward Holding Corp., 242 B.R. at 153; see also In re Delaware & Hudson Ry. Co., 124 B.R. at 175-76; In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983). Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992).

30. Generally, courts authorize debtors to implement key employee incentive programs because key employees are essential to a debtor's continued operations. See In re Montgomery Ward Holding Corp., 242 B.R. at 153 (sound business purpose justified the Debtor's employee incentive programs); see also In re America West Airlines, Inc., 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (approving success bonuses to certain officers and employees as within Debtor's sound business judgment); In re Interco Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991) (authorizing the debtor to assume prepetition severance contracts and approving performance based retention program to ensure critical employees remained with the debtor).

31. Permitting the Debtors to continue the Debtors' ongoing long-term incentive program by implementing the 2008-2010 LTIP will accomplish the sound business purpose of maximizing of the value of the Debtors' estates and furthering the Debtors' efforts to successfully reorganize during the remaining period of the Chapter 11 process, by promoting the motivation and retention of Key Employees.

32. It continues to be the case that the unanticipated loss of Key Employees likely would adversely affect the Debtors' operations by lowering the morale of the remaining employees because of the appearance of disarray and disruption generated by such departures. It would also burden the Debtors' remaining employees with additional responsibilities. Such a scenario would negatively impact the Debtors' operations. The Debtors therefore must protect a critical mass of their high-performing employees in sufficient numbers to profitably operate their businesses during the remaining pendency of these Chapter 11 Cases, thus maximizing the likelihood of a successful restructuring.

33. In light of the foregoing, the Debtors believe that the incentives provided by the 2008-2010 LTIP are reasonable and appropriate and will enhance the prospect of retaining Key Employees and, ultimately, attaining a successful result in these Chapter 11 Cases. For all of these reasons, the 2008-2010 LTIP should be approved.

### Notice

34. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to the official committees and (v) all those parties that requested service and notice of papers in accordance with Fed.R.Bankr.P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

35. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing, but not requiring, the Debtors to continue the Debtors' ongoing long-term incentive program by authorizing the implementation of the 2008-2010 Long-Term Incentive Plan, (ii) authorizing the Debtors to take such other action as may be necessary or appropriate to effect the intent of this Motion, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: July 21, 2008

KIRKLAND & ELLIS LLP

David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession