# **<u>EXHIBIT A</u>**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**DECLARATION AND EXPERT REPORT OF NICK BUBNOVICH, SENIOR CONSULTANT AT WATSON WYATT WORLDWIDE, IN SUPPORT OF THE DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE IMPLEMENTATION OF THE 2008-2010 LONG-TERM INCENTIVE PROGRAM FOR KEY EMPLOYEES**

The undersigned, Nick Bubnovich, hereby declares, under penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of his knowledge and belief:

1. I am a senior consultant at Watson Wyatt Worldwide ("Watson Wyatt"), which maintains an office at 191 North Wacker Drive, Chicago, Illinois, and in other cities. I submit this declaration and expert report in support of the Debtors' Motion for Entry of an Order Authorizing the implementation of the Debtors' 2008-2010 Long-Term Incentive Plan for Key Employees (the "2008-2010 LTIP").

2. I have personal knowledge of, or am otherwise competent to testify as to, the matters set forth herein.

3. Watson Wyatt is a global consulting firm focused on human capital and financial management. Watson Wyatt specializes in four areas: employee benefits, human capital strategies, technology solutions, and insurance and financial services. Watson Wyatt combines human capital and financial expertise to deliver business solutions that drive shareholder value. Watson Wyatt employs approximately 6,000 associates in 30 countries. Watson Wyatt's human

capital group of 170 associates helps clients achieve competitive advantage by aligning their workforce with their business strategy, and it assists clients in developing and implementing strategies for attracting, retaining, and motivating their employees.

4. I have worked in executive compensation consulting for approximately 20 years. I consult and advise companies on a variety of compensation and benefit issues. I work with companies on salary administration and incentive compensation design, annual incentive plans, and long-term incentive plans. I also assist clients in developing severance programs, negotiating employment agreements, and designing bankruptcy compensation programs.

5. I have held the position of senior consultant at Watson Wyatt since January 2005. Before then, I was a partner at Deloitte & Touche LLP ("Deloitte & Touche") for approximately two and one-half years. Before joining Deloitte & Touche, I was a partner in the Human Capital Group at Arthur Andersen LLP. I have served as the compensation consultant on numerous large and complex restructurings and have provided services for numerous large multinational companies in and outside of Chapter 11, including, without limitation, Delphi Corporation, Bethlehem Steel Co., Delta Air Lines, Inc., Dura Automotive, Federal Mogul Corp., Frontier Airlines, Fibermark, Inc., Hayes Lemmerz International, Inc., NRG Energy, Inc., and Winn-Dixie, Inc. Attached to this declaration and expert report, as <u>Exhibit 1</u> is a list of cases in which I have testified as an expert at trial or by deposition within the preceding four years.

6. I have published a number of articles on executive compensation issues, the most recent being "Compensation Apples and Option Pricing Oranges," <u>World at Work Journal</u> (December 2005), and I have co-authored three of the seven chapters in the National Center for Employee Ownership's 2003 book, <u>Beyond Stock Options</u>.[1] In addition, I was a member of the

---

[1] A list of the other publications I have authored within the preceding ten years is set forth on <u>Exhibit 2</u>.

Executive Compensation Committee of the American College of Bankruptcy, which prepared in 2007 the "Best Practices Report for Debtor Employee Retention and Incentive Compensation Programs in Light of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005." I have also been a featured speaker on executive compensation for the American Bar Association, ALI-ABA, National Center for Employee Ownership, Executive Enterprise, Inc., Corporate Counsel Center, American Society of Corporate Secretaries (Chicago Chapter), Chicago Compensation Association, National Association of Stock Plan Professionals (Chicago Chapter), and Chicago-Kent College of Law.

7. I have provided compensation-consulting services for Debtors for approximately 8 years. In the course of that work I have developed an understanding of the Debtors' business and compensation programs.

8. Watson Wyatt is being compensated by the Debtors based on time incurred with respect to the hourly billing rates of each individual working on a particular project. Watson Wyatt charges the Debtors $750 per hour for the time that I spend on matters related to the 2008-2010 LTIP and this declaration and expert report. In connection with Watson Wyatt's work related to compensation consulting, Watson Wyatt has not entered into any agreements or understandings with the Debtors regarding other services that Watson Wyatt is either currently providing or may potentially provide in the future.

## BACKGROUND

9. Debtors' long-time strategy (pre-dating its Chapter 11 filing) has been to provide long-term incentive opportunities at or about the 60th percentile of their specialty chemicals industry peer group for top executives and the broader market for other Key Employees. It was this level of opportunities in the aggregate that comprised the Debtors' original Chapter 11 LTIP,

approved by this Court on August 26, 2002. At that time, the Court also set an aggregate targeted award cap of $11.8 million (excluding the Debtors' CEO).

10. The CEO's long-term incentive award opportunity (whether the current or prior CEO) has always been in addition to the $11.8 million cap. At present, the CEO's targeted long-term incentive opportunity is $1.7 million, as originally set forth in his employment agreement, approved by this Court on April 24, 2005.

11. No changes have been made to the aggregate targeted award cap since 2002 or to the current CEO's opportunity since his contract was signed and approved.

12. In general, long-term incentive opportunities have risen since 2002, largely attributable to most companies' efforts to increase variable and performance-based pay. CEO long-term opportunities have also increased since the execution and approval of the current CEO's employment agreement.

## **BENCHMARKING**

13. At the request of the Compensation Committee, Watson Wyatt updated a study of the competitive long-term incentive compensation opportunities for the CEO and Key Employees. The Compensation Committee, as well as management, was aware that opportunities were lagging the market, for the reasons stated above. In the specific case of the CEO, prior Watson Wyatt benchmarking studies had indicated a shortfall to the market.

14. For the CEO, Watson Wyatt analyzed in April 2008 the most recent CEO proxy pay data (2008) from the Debtors' specialty chemicals industry peer group. (This is the same group referred to in the Debtors' executive compensation disclosure in its 2007 Form 10-K,

4

and has been historically used to benchmark each element of the CEO's pay. This group is comprised of Albemarle, Cabot, Eastman Chemical, EcoLab, Fuller H.B., Hercules, International Flavors & Fragrances, PP&G, Rohm & Haas, and Sigma Aldrich. ) The findings were that the median CEO long-term incentive opportunity at the median was approximately $3.4 million each year. The 60th percentile opportunity was approximately $4.0 million. This data represented about a 10% increase from the 2007 proxy data, which reported a median long-term CEO opportunity of $3 million and a 60th percentile opportunity of $3.6 million.

15.  For purposes of benchmarking the peer companies' CEO pay, we valued all equity-based awards using the values reported by each peer group company in its proxy or 10-K. Thus, we valued time-vested restricted stock awards at face value and stock options or SARs at their "Black-Scholes" or other option-pricing model value. Cash awards were valued using the target value, as reported in the proxy.

16.  For approximately 225 other employees, Watson Wyatt computed their long term incentive opportunities in January 2008 by reference to its 2007/2008 Report on Long-Term Incentives, Policies, and Practices. Using long-term incentive survey data from the manufacturing industry, Watson Wyatt calculated the 50th and 60th percentile opportunities for each Key Employee. These calculations were regressed, using $2.8 billion as the Debtors' revenue. (Regression is a statistical technique, which analyzes the relationship between two variables. In compensation analysis, it is used to measure the relationship between compensation and company revenue, the latter being a factor that strongly suggests the scope of a position.) The aggregate 50th percentile awards for this group were approximately $21 million and at the 60th percentile, $24 million.

17. Debtors' management subsequently made adjustments to this group, reducing the number of participants (the "Key Employees") and making other adjustments in award size based on such factors as individual performance, tenure, and contribution, resulting in an aggregate total (at the 60th percentile) of approximately $15.8 million.

## CONCLUSION

18. Accordingly, I consider an increase in the CEO's long-term incentive opportunity to $3.6 million to be consistent with the Debtors' strategy of providing an opportunity at or about the 60th percentile. Importantly, too, I consider such an opportunity to be well within the range of competitive practice. In addition, I believe that increasing the aggregate long-term incentive opportunities for the other Key Employees to an aggregate of approximately $15.8 million is consistent with the Debtors' philosophy of providing opportunities at or about the 60th percentile of its industry peer group. I also consider opportunities at the 60th percentile to be within the range of competitive practice.

*Nick Bubnovich*
Name: Nick Bubnovich
Title:  Senior Consultant
        Watson Wyatt Worldwide

# EXHIBIT 1

Rule 26(a) (2)
Disclosure of Expert Witness Testimony
for
<u>Nick Bubnovich</u>

| <u>Date</u> | <u>Case</u> | <u>Jurisdiction</u> | <u>Citation</u> |
|---|---|---|---|
| 2008 | In re Dura Automotive Systems, Inc et al | U.S. Bankruptcy Court District of Delaware | Case No. 06-11202 (KJC) |
| 2008, 2006 | In re: Delphi Corp., et al | U.S. Bankruptcy Court Southern District of New York | Case No. 05-44481 (RDD) |
| 2005 | In re: Winn Dixie Stores, Inc. et al | U.S. Bankruptcy Court Middle District of FL | Case No. 05-03817-3F1 |
| 2004 | In re: FiberMark, Inc. | U.S. Bankruptcy Court District of Vermont | Case No. 04-10463-CAB |
| 2004 | Robert L. Thomason vs. Photon Dynamics, Inc. (deposition only) | Superior Court of the State of California for the County of Orange | Case No. 02CC3568 |
| 2004 | In re: Atlas Air Worldwide Holdings, Inc. | U.S. Bankruptcy Court Southern District of Florida | Case No. 04-10792-BKC-RAM |
| 2003 | Bruce Howard vs. Covansys, Inc. (deposition only) | U.S. District Court Northern District of IL – Eastern Division | Case No. 03-C-0068 |