IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: August 8, 2008 at 4:00 p.m.**
**Hearing Date:  September 2, 2008 at 1:00 p.m.**

## DEBTORS' MOTION FOR AN ORDER AUTHORIZING APPROVAL OF ITS ENTRY INTO SETTLEMENT AGREEMENTS RESOLVING CLAIMS AGAINST WEJA, INC. ET AL.

The Debtors request entry of an order approving the Debtors' entry into certain settlement agreements[2] (each a "Settlement Agreement" and, collectively, the "Settlement Agreements") by and between debtors W. R. Grace & Co. and Ecarg, Inc. and (i) Weja, Inc., and

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] The Settlement Agreements are confidential and will be provided upon request to each of the Official Committees and the Future Claimants' Representative or with the appropriate confidentiality restrictions and to the Court *in camera.*

Wallace Teich (collectively, "Weja/Teich"), (ii) Daniel V. Richards t/a Sunrich Enterprises, Inc. ("Sunrich") and G.E. 440, Inc. ("GE 440" and, together with Sunrich, "Sunrich/GE 440"), (iii) Shell Oil Company ("Shell"), and (iv) Sunoco, Inc. (R&M) ("Sunoco" and together with Weja/Teich, Sunrich/GE 440 and Shell, the "Defendants"). The Settlement Agreements resolve years of litigation among the parties with respect to the cleanup of real property to address petroleum hydrocarbon contamination and leasehold damages. By the Settlement Agreements, the Debtors will be paid significant compensation by the Defendants in order to recover response costs pursuant to claims asserted under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. (the "Spill Act") and common law and for leasehold damages. In support of this motion, the Debtors respectfully state as follows:

**JURISDICTION**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for this motion are § 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

3.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

2

4.      From 1981 until September, 2004, the Debtors were the owners of real property located in Jersey City, New Jersey, identified as Block 1290A, Lot 1411 of the Jersey City tax map (the "Site"). From the early 1970s until 1995, the Site contained a gasoline station and car wash. GE 440 was the owner and operator of the gasoline station until 1981. From 1981 to 1982, Sunrich, having purchased the stock of GE 440 and acquired the gasoline station from GE 440's former shareholders, owned and operated the gasoline station. From 1982 to 1995, Weja/Teich owned and operated the gasoline station. In 1995, the Debtors performed a cleanup of the Site as required by the New Jersey Department of Environmental Protection ("NJDEP") to address petroleum hydrocarbon contamination related to the Site and removed petroleum contaminated soils. The Debtors incurred cleanup and removal costs in excess of $800,000 and other leasehold damages, attorneys' fees and related costs in excess of $1,000,000.

5.      In October, 1995, the Debtors initiated the action captioned <u>W.R. Grace & Co. et al v. Weja, Inc. et al.</u>, Docket No. HUD-L-7908-95, in the Superior Court of New Jersey, Hudson County (as amended, the "Action") against Weja/Teich, the tenant and operator of the gasoline station on the Site. The Debtors sought to recover response costs pursuant to claims asserted under the Spill Act, common law and for leasehold damages. In September, 1997, the Debtors filed a Second Amended Complaint in the Action to name defendant Sunoco, as an oil company that had supplied gasoline to the gas station, and Sunrich/GE 440, as the former tenant and operator of the gasoline station on the Site. In December, 1997, the Debtors filed a Third Amended Complaint to name defendant Shell, as an oil company that had formerly supplied gasoline to the gas station.

6.      Between 2000 and 2007, different portions of the Action were dismissed on summary judgment at different times, tried to judgment, reversed and remanded on appeal, denied review

3

by the Supreme Court of New Jersey and remanded to the trial court for a new trial. The Debtors and the Defendants have now agreed to settle the various claims among them that have been asserted under the Spill Act and common law with respect to the cleanup of the Site (the "Claims") and to resolve leasehold damages on the terms and conditions contained in the Settlement Agreements and summarized in this motion.

## TERMS AND CONDITIONS OF THE SETTLEMENT AGREEMENTS

7.      The material provisions of the Settlement Agreements are as follows:[3]

(a)      <u>Settlement Amount.</u> Pursuant to four separate Settlement Agreements, the various Defendants will pay the Debtors the total amount of $1,130,000 for the Debtors' Claims (the "Settlement Amount").[4] The Settlement Amounts due from Weja/Teich and Sunrich/GE 440 were paid by a deposit of their shares of the Settlement Amount into escrow held by the Debtors' Attorneys at Day Pitney LLP pending approval of the settlement by this Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Order"). The Settlement Amount due from Shell will be paid within ten calendar days after written notification by the Debtors of the entry of the 9019 Order, and the Settlement Amount due from Sunoco will be paid within twenty calendar days of the entry of the 9019 Order and the expiration of the time to appeal the 9019 Order, by depositing their respective shares of the Settlement Amount with Day Pitney LLP.

---

[3] This summary and the terms and conditions of the Settlement Agreements described in this motion are qualified in their entirety by the terms and conditions of each respective Settlement Agreement.

[4] In 2005, W.R. Grace & Co. and Ecarg, Inc. collected $350,915.65 from Wallace Teich in a partial judgment for certain leasehold damages in the action, which monies are not included in the Settlement Amount listed above.

4

(b)     Covenant. The Defendants covenant that all work and legal obligations related to or arising out of the investigation, remediation, cleanup and/or closure of the Site required by the NJDEP or any other governmental entity have been or will be performed.

(c)     Release of Defendants. Debtors release, surrender, acquit and discharge the Defendants and their predecessors, successors and assigns, holding companies, parent companies, subsidiaries and affiliates (previously or now existing), and any shareholder, director, officer, partner, employee and agent of any of the above, from any and all claims for remediation costs, leasehold damages and attorneys' fees and costs related to the Site against each of the Defendants.

(d)     Release by Defendants. The Defendants and their predecessors, successors and assigns, holding companies, parent companies, subsidiaries and affiliates (previously or now existing), and any shareholder, director, officer, partner, employee and agent of any of the above, release, surrender, acquit and discharge the Debtors and their predecessors, successors and assigns, holding companies, parent companies, subsidiaries and affiliates (previously or now existing), and any shareholder, director, officer, partner, employee and agent of any of the above, from any Claims.

(e)     Dismissal of Action. On March 3, 2008, Weja/Teich and Sunrich/GE 440 entered with the Debtors into an oral settlement in open court on the record following which the court entered an Order of Dismissal of the Action with Prejudice; the Order and settlement are contingent upon and subject to receipt of Bankruptcy Court approval. Sunoco and the Debtors agree, upon approval of this motion, to execute a stipulation of

5

dismissal with prejudice, with each party to bear its own attorneys' fees and costs incurred in connection with the Action.

(f)    Denial of Liability. The Debtors and the Defendants have entered into the Settlement Agreements in the interests of avoiding costs and risks of litigation and by the Settlement Agreements intend to resolve in good faith the Claims. The Debtors and the Defendants make no admission of jurisdiction, liability or responsibility and expressly deny any and all liability or responsibility in connection with the allegations, claims and counterclaims in the Action and nothing done in contemplation of or pursuant to the Settlement Agreements, including payment of any of the Settlement Amount, shall be construed against either the Debtors or the Defendants as an admission of any fact, liability, responsibility or fault.

(g)    No Third-Party Beneficiaries. The Settlement Agreements shall not inure to the benefit of any party other than the Debtors and the Defendants and their respective predecessors, successors and assigns, holding companies, parent companies, subsidiaries and affiliates (previously or now existing), and any shareholder, director, officer, partner, employee and agent of any of the above, and there shall be no third-party beneficiaries thereunder. Except as set forth in the Settlement Agreements, the Debtors and the Defendants reserve all rights against parties other than each other relating to the Site and nothing in the Settlement Agreements shall be deemed to be a waiver or release of any such claims.

6

(h)     No Effect on Insurance. The Debtors and the Defendants agree that they will not

be entitled to a share of any proceeds or other recovery obtained by the other under any

insurance policies.

(i)     Binding Agreement; Successors and Assigns. The Settlement Agreements shall

inure to the benefit of and be binding upon the Debtors and the Defendants and their

respective successors , representatives, purchasers and assigns.

(j)     Confidentiality and Use of Information. The Debtors and the Defendants agree

that (i) the Settlement Agreements shall not be discoverable or admissible in any

subsequent proceedings or actions except as may be necessary to enforce its terms,

pursue insurance coverage related to the Action, or as required by law; (b) the terms of

the Settlement Agreements and the settlement shall not be disclosed to any person or firm

whatsoever, unless otherwise required by law, and that all aspects of same are

confidential except as may be necessary to enforce its terms, pursue insurance coverage

related to the Action, or as required by law. If disclosure is required, the party obligated

to make the disclosure shall give written notice to the other party to the Settlement

Agreement of such requirement no less than five business days prior to providing such

disclosure to enable the other party to take whatever action it may deem appropriate.  The

Debtors and the Defendants agree that this is a material provision of the Settlement

Agreements and that a breach of the above-referenced Settlement Agreement provision

shall be deemed a breach of the entire Settlement Agreement.

(k)     Compromise. The Settlement Agreements pertain to disputed claims and are the

result of compromise. As such, they do not constitute and shall not be deemed as an

7

admission of liability by any of the parties thereto except to enforce the terms of the

Settlement Agreements or as otherwise stated, the Settlement Agreements shall not be

admissible in any court proceeding or hearing.

**RELIEF REQUESTED**

8.      By this motion, the Debtors respectfully seek the entry of an order, pursuant to § 105 of

the Bankruptcy Code and Bankruptcy Rule 9019(a), (i) approving the Debtors' execution of the

Settlement Agreements; (ii) granting the Debtors authority to consummate the transactions

contemplated in the Settlement Agreements; (iii) allowing the releases and payments in the sum

provided for herein and in the Settlement Agreements, and (iv) granting such other relief as may

be appropriate.

**BASIS FOR RELIEF**

A.      <u>Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a)</u>

9.      Section 105(a) of the Bankruptcy Code provides in pertinent part that "[the court may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions"

of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides in pertinent part

that "[on motion by the trustee and after notice and a hearing, the court may approve a

compromise or settlement." Fed. R. Bankr. Pro. 9019(a). Courts generally favor minimizing

litigation and expediting the administration of a bankruptcy case. See <u>Myers v. Martin (In re</u>

<u>Martin)</u>, 91 F.3d 389, 393 (3d Cir. 1996); see also <u>In re Key3Media Group, Inc.</u>, 2006 WL

2842462, at *3 (D. Del. 2006).

10.      Before approving a settlement under Bankruptcy Rule 9019, however, a court must

determine that the proposed settlement is in the best interests of the debtor's estate. See <u>Martin,</u>

8

91 F.3d at 394; In re Marvel Entrn't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

11.   The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. at 393; see also In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006).

12.   It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, Inc., 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 11 14 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, Inc., 344 B.R. at 1114 (citations omitted); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

9

**B.     Application of Standards for Approval of a Settlement to the Facts of This Case**

13.     The Debtors have determined that entry into the Settlement Agreements is in the best interests of the Debtors and their estates. The Settlement Agreements described herein are the product of rigorous negotiations and fall within the reasonable range of litigation possibilities, constituting reasonable settlements of the Claims. The Debtors and the Defendants desire to resolve all differences between them with respect to the Action without admission of liability by any party and agree that the releases by the Defendants constitute material inducements to enter into the Settlement Agreements.

14.     The Court's approval of the Settlement Agreements will resolve the Debtors' claims to recover cleanup and removal costs, leasehold damages, attorneys' fees and related costs without forcing further protracted litigation. The Settlement Agreements provide assurance to creditors that the Debtors' liabilities for response costs associated with the Site are fully addressed and permanently resolved.

15.     For the reasons stated above, the Settlement Agreements are fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest because they are the best settlements available given the facts and circumstances. In the absence of the Settlement Agreements, the Debtors will likely incur substantial legal fees and expenses litigating these matters to final judgment. Accordingly, this Court should approve the Settlement Agreements and authorize the Debtors to perform in accordance therewith.

10

## NOTICE

16.     Notice of this motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Future Claimants' Representative, (v) those parties that requested papers under Bankruptcy Rule 2002 and (vi) counsel to each of the Defendants. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (i) authorizing the Debtors to enter into and perform under the Settlement Agreements, (ii) allowing the releases and the final payments in the sum provided for in the Settlement Agreements, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: July 21, 2008                     KIRKLAND & ELLIS LLP

                                         David M. Bernick, P.C.
                                         Janet S. Baer
                                         200 East Randolph Drive
                                         Chicago, Illinois 60601
                                         (312) 861-2000

                                         and

PACHULSKI STANG ZIEHL & JONES LLP

_James E O'Neill_

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

12