# EXHIBIT B
# PART 2 of 2

Lending Offices; Address For Notices
------------------------------------

THE CHASE MANHATTAN BANK
------------------------

    Domestic Lending Office:

                                   The Chase Manhattan Bank
                                   270 Park Avenue, 38th Floor
                                   New York, New York  10017

    Eurodollar Lending Office:

                                   The Chase Manhattan Bank
                                   270 Park Avenue, 38th Floor
                                   New York, New York  10017

    Address for Notices

        (Administrative Agent):      The Chase Manhattan Bank
                                   270 Park Avenue, 38th Floor
                                   New York, New York  10017
                                   Attention:  Peter Dedousis
                                   Telephone:  (212) 270-4062
                                   Telecopy:   (212) 270-7935
    With a copy to:

                                   Loan and Agency Services Group
                                   One Chase Manhattan Plaza, 8th Floor
                                   New York, New York  10081
                                   Attention: Margaret Swales
                                   Telecopy:  (212) 622-0122
                                   Telephone: (212) 622-8433

    Address for Bid Loan Notices:

                                   The Chase Manhattan Bank
                                   270 Park Avenue, 8th Floor
                                   New York, New York  10017
                                   Attention:  Albert Reynolds
                                   Telephone:  (212) 834-4435
                                   Telecopy:   (212) 834-6160

    With a copy to:

                                   Loan and Agency Services Group
                                   One Chase Manhattan Plaza, 8th Floor
                                   New York, New York  10081
                                   Attention:  Margaret Swales
                                   Telecopy:  (212) 622-0122
                                   Telephone: (212) 622-8433

SCHEDULE II
-----------

## PRINCIPAL SUBSIDIARIES

W.R. Grace & Co.-Conn.

Grace International Holdings, Inc.

EAP Akustic Gmbh

Grace GmbH

EXHIBIT A

## FORM OF REVOLVING CREDIT NOTE

### PROMISSORY NOTE
---------------

$_____                                    New York, New York
                                                    _____, _____

      FOR VALUE RECEIVED, the undersigned, , a corporation (the "Borrower"),
hereby unconditionally promises to pay on the Termination Date to the order of
(the "Bank") at the office of The Chase Manhattan Bank, c/o Loan and Agency
Services Group (Clearing Account No. 144810547) located at One Chase Manhattan
Plaza, New York, New York 10081, in lawful money of the United States of America
and in immediately available funds, the principal amount of (a) _____
DOLLARS ($_____), or, if less, (b) the aggregate unpaid principal amount of all
Revolving Credit Loans made by the Bank to the Borrower pursuant to subsection
2.1 of the Credit Agreement (as defined below). The Borrower further agrees to
pay interest in like money at such office on the unpaid principal amount hereof
from time to time from the date hereof at the rates and on the dates specified
in subsection 5.1 of the Credit Agreement.

      The holder of this Note is authorized to endorse on the schedule
annexed hereto and made a part hereof or on a continuation thereof which shall
be attached hereto and made a part hereof (the "Grid") the date, Type and amount
of each Revolving Credit Loan made pursuant to subsection 2.1 of the Credit
Agreement, each continuation thereof, each conversion of all or a portion
thereof to another Type, the date and amount of each payment or prepayment of
principal thereof and, in the case of Eurodollar Loans, the length of each
Interest Period with respect thereto, which endorsement shall constitute prima
facie evidence of the accuracy of the information endorsed; provided, however,
that the failure to make any such endorsement shall not affect the obligations
of the Borrower in respect of such Revolving Credit Loan.

      This Note is one of the Revolving Credit Notes referred to in the
364-Day Credit Agreement dated as of May 5, 1999 (as the same may be amended,
supplemented or otherwise modified from time to time, the "Credit Agreement"),
among the Borrower, W. R. Grace & Co.- Conn., a Connecticut corporation
("Grace-Conn."), W. R. Grace & Co. (formerly named Grace Specialty Chemicals,
Inc.), a Delaware corporation, any [other] subsidiary of [Grace-Conn.][the
Borrower] which has previously delivered a Notice of Additional Borrower, the
Bank, the other banks parties thereto, Bank of America National Trust and
Savings Association, as Documentation Agent, The Chase Manhattan Bank, as
Administrative Agent, and Chase Securities Inc., as Book Manager, and is
entitled to the benefits thereof and is subject to optional and mandatory
prepayment as set forth therein.

Upon the occurrence of any one or more of the Events of Default specified in the Credit Agreement, all amounts then remaining unpaid on this Note shall become, or may be declared to be, immediately due and payable, all as provided therein.

All parties now and hereafter liable with respect to this Note, whether maker, principal, surety, guarantor, endorser or otherwise, hereby waive presentment, demand, protest and, except as otherwise provided in the Credit Agreement, all other notices of any kind.

Terms defined in the Credit Agreement are used herein with their defined meanings unless otherwise defined herein. This Note shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York.

[NAME OF BORROWER]

By _____
Name:
Title:

Schedule 1 to
Revolving Credit Note
---------------------

LOANS, CONVERSIONS AND PAYMENTS OF ABR LOANS
--------------------------------------------

| DATE | AMOUNT OF LOANS | AMOUNT OF PRINCIPAL REPAID | AMOUNT OF ABR LOANS CONVERTED INTO EURODOLLAR LOANS | AMOUNT OF EURODOLLAR LOANS CONVERTED INTO ABR LOANS | NOTATION MADE BY |
|------|------|------|------|------|------|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Schedule 2 to
Revolving Credit Note
---------------------

LOANS, CONVERSIONS AND PAYMENTS OF EURODOLLAR LOANS
--------------------------------------------------

| DATE | AMOUNT OF LOANS | AMOUNT OF PRINCIPAL REPAID | AMOUNT OF EURODOLLAR LOANS CONVERTED INTO ABR LOANS | AMOUNT OF ABR LOANS CONVERTED INTO EURODOLLAR LOANS | NOTATION MADE BY |
|------|-----------------|----------------------------|-----------------------------------------------------|-----------------------------------------------------|------------------|
|      |                 |                            |                                                     |                                                     |                  |

EXHIBIT B
---------

FORM OF BID LOAN NOTE

PROMISSORY NOTE
---------------

$_____

New York, New York

_____, _____

        FOR VALUE RECEIVED, the undersigned,_____, a
_____ corporation (the "Borrower"), hereby unconditionally promises to pay to
the order of _____(the "Bank") at the office of The Chase Manhattan
Bank, c/o Loan and Agency Services Group (Clearing Account No. 144810547)
located at One Chase Manhattan Plaza, New York, New York 10081, in lawful money
of the United States of America and in immediately available funds, the
principal amount of (a) _____ DOLLARS ($ ), or, if less, (b) the
aggregate unpaid principal amount of each Bid Loan which is made by the Bank to
the Borrower pursuant to Section 4 of the Credit Agreement (as defined below).
The principal amount of each Bid Loan evidenced hereby shall be payable on the
maturity date therefor set forth on the schedule annexed hereto and made a part
hereof or on a continuation thereof which shall be attached hereto and made a
part hereof (the "Grid"). The Borrower further agrees to pay interest in like
money at such office on the unpaid principal amount of each Bid Loan evidenced
hereby, at the rate per annum set forth in respect of such Bid Loan on the Grid,
calculated on the basis of a year of 360 days and actual days elapsed from the
date of such Bid Loan until the due date thereof (whether at the stated
maturity, by acceleration or otherwise) and thereafter at the rates determined
in accordance with subsection 4.4 of the Credit Agreement. Interest on each Bid
Loan evidenced hereby shall be payable on the date or dates set forth in respect
of such Bid Loan on the Grid. Bid Loans evidenced by this Note may not be
prepaid without the consent of the Bank.

        The holder of this Note is authorized to endorse on the Grid the date,
amount, interest rate, interest payment dates and maturity date in respect of
each Bid Loan made pursuant to subsection 4.2 of the Credit Agreement, each
payment of principal with respect thereto, which endorsement shall constitute
prima facie evidence of the accuracy of the information endorsed; provided,
however, that the failure to make any such endorsement shall not affect the
obligations of the Borrower in respect of such Bid Loan.

        This Note is one of the Bid Loan Notes referred to in the 364-Day
Credit Agreement dated as of May 5, 1999 (as the same may be amended,
supplemented or otherwise modified from time to time, the "Credit Agreement"),
among the Borrower, W. R. Grace & Co.-Conn., a Connecticut corporation
("Grace-Conn."), W. R. Grace & Co. (formerly named Grace Specialty Chemicals,
Inc.), a Delaware corporation, any [other] subsidiary of [Grace-Conn.][the
Borrower] which has previously delivered a Notice of Additional Borrower, the
Bank, the other banks

2

parties thereto, Bank of America National Trust and Savings Association, as Documentation Agent, The Chase Manhattan Bank, as Administrative Agent and Chase Securities Inc., as Book Manager and is entitled to the benefits thereof.

Upon the occurrence of any one or more of the Events of Default specified in the Credit Agreement, all amounts then remaining unpaid on this Note shall become, or may be declared to be, immediately due and payable, all as provided therein.

All parties now and hereafter liable with respect to this Note, whether maker, principal, surety, guarantor, endorser or otherwise, hereby waive presentment, demand, protest and, except as otherwise provided in the Credit Agreement, all other notices of any kind.

Terms defined in the Credit Agreement are used herein with their defined meanings unless otherwise defined herein. This Note shall be governed by, and construed and interpreted in accordance with, the law of the State of New York.

[NAME OF BORROWER]

By:_____
Name:
Title:

## SCHEDULE OF BID LOANS
----------------------

| Date of Loan | Amount of Loans | Interest Rate | Interest Payment Dates | Maturity Date | Payment Date | Authorization |
|---|---|---|---|---|---|---|

EXHIBIT C
---------

FORM OF BID LOAN CONFIRMATION

_____,  _____

The Chase Manhattan Bank, as Administrative Agent
270 Park Avenue
New York, New York  10017

Dear Sirs:

        Reference is made to the 364-Day Credit Agreement, dated as of May 5,
1999 (as the same may be amended, supplemented or otherwise modified, the
"Credit Agreement"), among the undersigned, W. R. Grace & Co.-Conn., the other
Borrowers from time to time parties thereto, W. R. Grace & Co. (formerly named
Grace Specialty Chemicals, Inc.), the Banks named therein, Bank of America
National Trust and Savings Association, as Documentation Agent, The Chase
Manhattan Bank, as Administrative Agent and Chase Securities Inc., as Book
Manager. Terms defined in the Credit Agreement are used herein as therein
defined.

        In accordance with subsection 4.2 of the Credit Agreement, the
undersigned accepts the offers by Bid Loan Bank(s) to make Bid Loans to the
undersigned on , [Bid Loan Date] under said subsection 4.2 in the (respective)
amount(s) set forth on the attached list of Bid Loans offered.

                                Very truly yours,

                                [NAME OF BORROWER]

                                By:_____
                                    Name:
                                    Title:

[Borrower to attach Bid Loan offer list prepared by Administrative Agent with
accepted amount entered by the Borrower to right of each Bid Loan offer.]

509207-0161-02872-994MDPT8-CRA

EXHIBIT D
---------

FORM OF BID LOAN OFFER

_____, _____

The Chase Manhattan Bank, as Administrative Agent
270 Park Avenue
New York, New York  10017

Dear Sirs:

      Reference is made to the 364-Day Credit Agreement, dated as of May 5, 1999 (as the same may be amended, supplemented or otherwise modified, the "Credit Agreement"), among W. R. Grace & Co.-Conn., W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.), the Banks named therein, Bank of America National Trust and Savings Association, as Documentation Agent, The Chase Manhattan Bank, as Administrative Agent and Chase Securities Inc., as Book Manager. Terms defined in the Credit Agreement are used herein as therein defined.

      In accordance with subsection 4.2 of the Credit Agreement, the undersigned Bank offers to make Bid Loans thereunder in the following amounts with the following maturity dates:

Bid Loan Date: _____, _____

Aggregate Maximum Amount:  $_____

| Maturity Date 1    : | Maturity Date 2    : | Maturity Date 3    : |
| --------------- --- | --------------- --- | --------------- --- |
| Maximum Amount $_____ | Maximum Amount $_____ | Maximum Amount $_____ |
| Rate        ___% | Rate ___% | Rate ___% |

Very truly yours,

[NAME OF BIDDING BANK]

By:_____
     Name:
     Title:
     Telephone No.:
     Fax No.:

EXHIBIT E
---------

FORM OF BID LOAN REQUEST

_____, _____

The Chase Manhattan Bank, as Administrative Agent
270 Park Avenue
New York, New York  10017

Dear Sirs:

      Reference is made to the 364-Day Credit Agreement, dated as of May 5, 1999 (as the same may be amended, supplemented or otherwise modified, the "Credit Agreement"), among the undersigned, W. R. Grace & Co.-Conn., W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.), the Banks named therein, Bank of America National Trust and Savings Association, as Documentation Agent, The Chase Manhattan Bank, as Administrative Agent and Chase Securities Inc., as Book Manager. Terms defined in the Credit Agreement are used herein as therein defined.

      This is a Bid Loan Request made pursuant to subsection 4.2 of the Credit Agreement requesting quotes for the following Bid Loans(1):

| | | | |
|---|---|---|---|
| Aggregate Principal Amount | $ ____ | $ ____ | $ ____ |
| Bid Loan Date | | ____ ____ | ____ |
| Interest Period | | ____ ____ | ____ |
| Maturity Date | | ____ ____ | ____ |
| Interest Payment Dates | | ____ ____ | ____ |

      Very truly yours,

      [NAME OF BIDDING BANK]

      By:_____
          Name:
          Title:

--------
1. Pursuant to the Credit Agreement, a Bid Loan Request may be transmitted in writing, by facsimile transmission, or by telephone, immediately confirmed by facsimile transmission. In any case, a Bid Loan Request shall contain the information specified in the second paragraph of this form.

EXHIBIT F-1
-----------

FORM OF OPINION OF COUNSEL TO THE COMPANY,
AND THE PARENT

May 5, 1999

To each Bank from time to time
 party to the 364-Day Credit Agreement,
 dated as of May 5, 1999,
 among W. R. Grace & Co.-Conn.,
 W. R. Grace & Co., the other Borrowers
 from time to time party thereto,
 the Banks named therein,
 Bank of America National Trust and Savings Association and
 Bank of America National Trust and Savings Association, as
 Co-Documentation Agents,
 The Chase Manhattan Bank, as Administrative Agent and
 Chase Securities Inc., as Book Manager

Ladies and Gentlemen:

        As General Counsel of W. R. Grace & Co. (formerly named Grace Specialty
Chemicals, Inc.), a Delaware corporation (the "Parent"), and W. R. Grace &
Co.-Conn., a Connecticut corporation (the "Company"), I have been requested to
render my opinion in connection with the 364-Day Credit Agreement dated as of
May 5, 1999 (the "Credit Agreement"), among you, the Company, the other
Borrowers from time to time party thereto, Bank of America National Trust and
Savings Association, as Documentation Agent, The Chase Manhattan Bank, as
Administrative Agent, Chase Securities Inc., as Book Manager and the Parent. I
am rendering this opinion pursuant to subsection 7.1(c)(i) of the Credit
Agreement. All terms used in this opinion that are defined in the Credit
Agreement have the respective meanings assigned to them therein.

        I have examined or caused to be examined the Restated Certificate of
Incorporation and the By-laws of the Company, each as amended to date, the
Certificate of Incorporation and the By-laws of the Parent, each as amended to
date, the records of the meetings and other corporate proceedings of the Company
and of the Parent, the Credit Agreement, any Notes being delivered to you this
day, and such other corporate records, agreements, certificates and documents as
I deem necessary for the purposes of the opinion hereinafter expressed. For
purposes of this opinion I have assumed that all Notes issued from time to time
hereafter will be issued in accordance with the terms of the Credit Agreement.

Based upon the foregoing, and subject to the qualifications stated below, I am of the following opinion:

1. The Company is a corporation duly organized and validly existing in good standing under the laws of Connecticut, and has the corporate power and authority under such laws, and is duly qualified and in good standing in each jurisdiction in which, in the opinion of the Company, such qualification is required, to own and operate its properties, to carry on its business and to execute, deliver and perform its obligations under the Credit Agreement and the Notes.

2. The Parent is a corporation duly organized and validly existing in good standing under the laws of Delaware and has the corporate power and authority under such laws, and is duly qualified and in good standing in each jurisdiction in which, in the opinion of the Parent, such qualification is required, to own and operate its properties, to carry on its business and to execute, deliver and perform its obligations under the Credit Agreement.

3. The execution, delivery and performance by the Company of the Credit Agreement and any Notes made by the Company, the borrowings by the Company thereunder and the consummation of the other transactions contemplated thereby have been duly and validly authorized by all necessary corporate action of the Company.

4. The execution, delivery and performance by the Parent of the Credit Agreement and the consummation of the transactions contemplated thereby, including, without limitation, the guaranty by the Parent of the Company's Obligations, have been duly and validly authorized by all necessary corporate action of the Parent.

5. The Credit Agreement has been duly executed and delivered by duly authorized officers of the Company and the Parent and each of the Notes, if any, of the Company being delivered to you today has been duly executed and delivered by a duly authorized officer of the Company.

6. The Credit Agreement and any Notes made by the Company constitute, and each other Note executed and delivered to you from time to time by the Company hereafter will constitute, legal, valid and binding obligations of the Company and the Parent, as the case may be, enforceable in accordance with their respective terms.

7. No consent of any other party (including, without limitation, stockholders of the Company or of the Parent), and no authorization, license, consent or approval from any regulatory, administrative or other governmental or public body or authority, arbitrator or court of the United States or any state or other jurisdiction thereof, is required in connection with the execution, delivery and performance by the Company, and the Parent, as the case may be, or the validity or enforceability, of the Credit Agreement or any Notes.

8. The execution, delivery and the performance by the Company and the Parent of the Credit Agreement and any Notes made by the Company, as the case may be, will not (A) to

the best of my knowledge, violate any law or regulation applicable to the Company or the Parent, (B) conflict with, or result in a breach or violation of, the Restated Certificate of Incorporation or By-Laws, each as amended, of the Company, the Certificate of Incorporation or By-laws, each as amended, of the Parent or, to the best of my knowledge, any material indenture, loan agreement or other agreement or instrument to which the Company or the Parent is a party or under which the Company or the Parent or any of their respective properties are or may be bound, or (C) to the best of my knowledge, violate any order, award, judgment, determination, writ, injunction or decree applicable to the Company or the Parent of any regulatory, administrative or other governmental or public body or authority, arbitrator or court of the United States or any state or other jurisdiction thereof.

9. To the best of my knowledge, no litigation, proceeding, investigation or inquiry is pending or threatened with respect to the transactions contemplated by the Credit Agreement.

10. Neither the Parent nor the Company is an "investment company", or a company "controlled" by an "investment company", within the meaning of the Investment Company Act of 1940, as amended.

My opinion is subject to the following qualifications:

(a) My opinion set forth in paragraph 6 above is subject to the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, by general equitable principles (whether considered in a proceeding in equity or at law) and an implied covenant of good faith and fair dealing.

(b) I express no opinion as to the enforceability of the provisions of the Credit Agreement that purport to establish evidentiary standards or to make determinations conclusive.

(c) I express no opinion as to the enforceability of the provisions of the Credit Agreement insofar as they relate to post-judgment interest rates.

(d) I express no opinion as to the enforceability of subsection 3.3 of the Credit Agreement. I note that (i) a New York statute provides that with respect to a foreign currency obligation a New York State court shall render a judgment or decree in such foreign currency and such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of such judgment or decree and (ii) with respect to a foreign currency obligation a federal court of the United States sitting in New York may award judgment in U.S. dollars, provided that I express no opinion as to the rate of exchange that such court would apply.

(e) I express no opinion as to the validity, binding effect or enforceability of any waiver under the Credit Agreement, or any consent or authorization thereunder, relating to the rights of the Company or the Parent, or duties owing to any of them, existing or arising as a matter of law.

(f) I express no opinion as to the effect of any provision of the Credit Agreement insofar as it provides that any Person purchasing a participation from a Bank or other Person may exercise set-off or similar rights with respect to such participation or that any Bank or other Person may exercise set-off or similar rights other than in accordance with applicable law.

(g) I express no opinion as to subsection 13.12 of the Credit Agreement insofar as it relates to the waiver of any objection by the Company and the Parent to the venue of any legal action or proceeding brought in a United States District Court for the Southern District of New York (and note that such matters may be raised by such court).

(h) I express no opinion as to the effect of any provision of the Credit Agreement which is intended to permit modification thereof only by means of an agreement in writing by the parties thereto.

(i) I express no opinion as to the effect of any provision of the Credit Agreement imposing penalties or forfeitures.

(j) I express no opinion as to the enforceability of any provision of the Credit Agreement to the extent that such provision constitutes a waiver of illegality as a defense to performance of contract obligations.

(k) I express no opinion as to the effect of any provision of the Credit Agreement relating to indemnification or exculpation in connection with violations of any securities laws or relating to indemnification, contribution or exculpation in connection with willful, reckless or criminal acts or gross negligence of the indemnified or exculpated Person or the Person receiving contribution.

(l) I express no opinion as to any laws other than those of the states of Connecticut, Delaware and New York and the federal laws of the United States.

(m) As used in paragraph 1 above, the term "good standing" means only those matters evidenced by the issuance of a certificate of existence pursuant to Section 33.615(b) of the Connecticut Business Corporation Act, the absence of any steps taken by the Company toward its dissolution and the filing by the Company of all business and capital tax returns required to be filed, and the payment of all taxes shown as payable on such returns that have become due, as of the date hereof.

This opinion is limited to the specific issues addressed herein and is limited in all respects to laws and interpretations thereof and other matters existing on the date hereof. I do not undertake to update this opinion for changes in such laws, interpretations or matters. This opinion is furnished solely for your benefit in connection with the transactions contemplated by the Credit Agreement, is not to be relied upon for any other purpose and may not be made available to any other person, firm or entity (other than a Transferee or a prospective Transferee referred to in subsection 13.6(f) of the Credit Agreement) without my express prior written

5

consent, except as may be required by law or in response to any judicial or
regulatory requirement, order or decree.

Very truly yours,

EXHIBIT F-2
-----------

FORM OF OPINION OF SIMPSON THACHER & BARTLETT

May 5, 1999

To the banks listed on Schedule I hereto

Ladies and Gentlemen:

We have acted as special New York counsel to The Chase Manhattan Bank, as administrative agent, in connection with the preparation, execution and delivery of the 364-Day Credit Agreement, dated as of May 5, 1999 (the "Credit Agreement"), among W. R. Grace & Co.-Conn., W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.), the banks from time to time party thereto, Bank of America National Trust and Savings Association, as documentation agent, The Chase Manhattan Bank, as administrative agent for said banks and Chase Securities Inc., as book manager.

This opinion is delivered to you pursuant to Section 7.1(c)(iii) of the Credit Agreement. Terms used herein which are defined in the Credit Agreement shall have the respective meanings set forth in the Credit Agreement, unless otherwise defined herein.

We have examined the following documents:

(1) a copy of the Credit Agreement; and

(2) a copy of the opinion of the General Counsel of the Company and the Parent, addressed to you and dated the date hereof, in respect of the Credit Agreement.

In such examination we have assumed the genuineness of all signatures, the legal capacity of natural persons, the authenticity of all documents submitted to us as originals, the conformity to original documents of all documents submitted to us as certified or photostatic copies, and the authenticity of the originals of such latter documents.

In rendering the opinion set forth below we have assumed that (2) the Credit Agreement is a valid and legally binding obligation of each of the Banks parties thereto, (3)(a) each of the Loan Parties is validly existing and in good standing under the laws of the jurisdiction in which it is organized and has duly authorized, executed and delivered the Credit Agreement in accordance with its organizational documents, (b) execution, delivery and performance by each Loan Party of the Credit Agreement do not violate the laws of the jurisdiction in which it is organized or any other applicable laws (excepting the laws of the State of New York and the Federal laws of the United States) and (c) execution, delivery and performance by each Loan Party of the Credit Agreement do not constitute a breach or violation of any agreement or instrument which is binding upon such Loan Party and (4) no Loan Party is an "investment

company" within the meaning of and subject to regulation under the Investment Company Act of 1940.

To the extent that our opinion expressed below relates to matters not expressly covered hereby that are set forth in the above-mentioned opinion of the General Counsel of the Company and the Parent, we have assumed without independent investigation the correctness of the matters set forth in such opinion, our opinion being subject to the assumptions, qualifications and limitations set forth in such opinion with respect thereto.

Based upon the foregoing, and subject to the qualifications and limitations stated herein, we hereby advise you that in our opinion, the Credit Agreement constitutes a valid and legally binding obligation of each of the Company and the Parent, enforceable against each of them in accordance with its terms.

Our opinion is subject to the following qualifications:

(a) Our opinion set forth above is subject to the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, general equitable principles (whether considered in a proceeding in equity or at law), and an implied covenant of good faith and fair dealing.

(b) We express no opinion as to the enforceability of the provisions of the Credit Agreement that purport to establish evidentiary standards or to make determinations conclusive.

(c) We express no opinion as to the enforceability of the provisions of the Credit Agreement insofar as they relate to post-judgment interest rates.

(d) We express no opinion as to the enforceability of subsection 3.3 of the Credit Agreement. We note that (i) a New York statute provides that with respect to a foreign currency obligation a New York State court shall render a judgment or decree in such foreign currency and such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of such judgment or decree and (ii) with respect to a foreign currency obligation a U.S. Federal court sitting in New York may award judgment in U.S. dollars, provided that we express no opinion as to the rate of exchange that such court would apply.

(e) We express no opinion as to the validity, binding effect or enforceability of any waiver under the Credit Agreement, or any consent or authorization thereunder, relating to the rights of the Company or the Parent, or duties owing to any of them, existing or arising as a matter of law.

(f) We express no opinion as to the effect of any provision of the Credit Agreement insofar as it provides that any Person purchasing a participation from a Bank or other Person may exercise set-off or similar rights with respect to such participation or that any Bank

or other Person may exercise set-off or similar rights other than in accordance with applicable law.

(g) We express no opinion as to subsection 13.12 of the Credit Agreement insofar as it relates to the waiver of any objection by the Company and the Parent, to the venue of any legal action or proceeding brought in a United States District Court for the Southern District of New York (and note that such matters may be raised by such court).

(h) We express no opinion as to the effect of any provision of the Credit Agreement which is intended to permit modification thereof only by means of an agreement in writing by the parties thereto.

(i) We express no opinion as to the effect of any provision of the Credit Agreement imposing penalties or forfeitures.

(j) We express no opinion as to the enforceability of any provision of the Credit Agreement to the extent that such provision constitutes a waiver of illegality as a defense to performance of contract obligations.

(k) We express no opinion as to the effect of any provision of the Credit Agreement relating to indemnification or exculpation in connection with violations of any securities laws or relating to indemnification, contribution or exculpation in connection with willful, reckless or criminal acts or gross negligence of the indemnified or exculpated Person or the Person receiving contribution.

In connection with the provisions of the Credit Agreement whereby the Loan Parties submit to the jurisdiction of the United States District Court for the Southern District of New York, we note the limitations of 28 U.S.C. ss. 1332 on Federal court jurisdiction where diversity of citizenship is lacking, and we also note that such submissions cannot supersede such court's discretion in determining whether to transfer an action from one Federal court to another under 28 U.S.C. ss. 1404(a).

We are members of the Bar of the State of New York and we do not express any opinion herein concerning any law other than the law of the State of New York and the federal law of the United States.

This opinion is rendered to you in connection with the above-described transactions. This opinion may not be relied upon by you for any other purpose, or relied upon by any other person, firm or corporation without our prior written consent.

Very truly yours,

SIMPSON THACHER & BARTLETT

EXHIBIT G
---------

W. R. GRACE & CO.-CONN.

W. R. GRACE & CO.

(formerly named Grace Specialty Chemicals, Inc.)

OFFICER'S CERTIFICATE

In accordance with subsection 7.1(d) of that certain 364-Day Credit Agreement, dated as of May 5, 1999 (the "Credit Agreement"), among W. R. Grace & Co.-Conn. (the "Company"), W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.) (the "Parent"), the Banks named therein (the "Banks"), Bank of America National Trust and Savings Association, as Documentation Agent, The Chase Manhattan Bank, as Administrative Agent and Chase Securities Inc., as Book Manager, each of the undersigned Company and the Parent hereby certifies to the Banks that:

1. Each of the representations and warranties contained in the Credit Agreement and the other Loan Documents are true and correct on and as of the date hereof as if made on and as of such date.

2. Since December 31, 1998, there has been no development or event which has had or would reasonably be expected to have a Material Adverse Effect.

3. No Default or Event of Default has occurred and is continuing on the date hereof or shall have occurred and be continuing after giving effect to the Loans to be made on the date hereof.

Capitalized terms used in this Certificate and not defined herein shall have the meanings ascribed thereto in the Credit Agreement.

IN WITNESS WHEREOF, each of the undersigned has caused this Certificate to be executed by its officer thereunto duly authorized as of the ___ day of May, 1999.

W. R. GRACE & CO.-CONN.

By: _____
         [Name and Title]

W. R. GRACE & CO.

By: _____
         [Name and Title]

EXHIBIT H
---------

FORM OF COMMITMENT TRANSFER SUPPLEMENT

COMMITMENT TRANSFER SUPPLEMENT, dated as of the date set forth in Item 1 of Schedule I hereto, between the Transferor Bank set forth in Item 2 of Schedule I hereto (the "Transferor Bank"), each Purchasing Bank set forth in Item 3 of Schedule I hereto (each, a "Purchasing Bank"), **[THE CHASE MANHATTAN BANK, as administrative agent for the Banks under the Credit Agreement described below (in such capacity, the "Administrative Agent") and the other Banks parties hereto].

W I T N E S S E T H :
- - - - - - - - -

WHEREAS, this Commitment Transfer Supplement is being executed and delivered in accordance with subsection 13.6(c) of the 364-Day Credit Agreement dated as of May 5, 1999 (as from time to time amended, supplemented or otherwise modified in accordance with the terms thereof, the "Credit Agreement"; terms defined therein being used herein as therein defined), among W. R. Grace & Co.-Conn., a Connecticut corporation (the "Company"), W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.), a Delaware corporation (the "Parent"), any subsidiary of the Company which has previously delivered a Notice of Additional Borrower, the Transferor Bank and the other Banks parties thereto, Bank of America National Trust and Savings Association, as Documentation Agent, [The Chase Manhattan Bank, as administrative agent for the Banks under the Credit Agreement (in such capacity, the "Administrative Agent")] [the Administrative Agent] and Chase Securities Inc., as Book Manager;

WHEREAS, each Purchasing Bank (if it is not already a Bank party to the Credit Agreement) wishes to become a Bank party to the Credit Agreement; and

WHEREAS, the Transferor Bank is selling and assigning to each Purchasing Bank, rights, obligations and commitments under the Credit Agreement;

NOW, THEREFORE, the parties hereto hereby agree as follows:

1. Upon receipt by the Administrative Agent of five counterparts of this Commitment Transfer Supplement, to each of which is attached a fully completed Schedule I and Schedule II, and each of which has been executed by the Transferor Bank and each Purchasing Bank (and any other person required by the Credit Agreement to execute this Commitment

--------
**/    A replacement of a Bank pursuant to subsection 13.1(b) of the Credit Agreement requires the consent of the Majority Banks (but not the Replaced Bank, in any case) if any Revolving Credit Loans are then outstanding. All other transfers of Commitments do not require such consent.

2

Transfer Supplement), the Administrative Agent will transmit to the Company, the Transferor Bank and each Purchasing Bank a Transfer Effective Notice, substantially in the form of Schedule III to this Commitment Transfer Supplement (a "Transfer Effective Notice"). Such Transfer Effective Notice shall set forth, inter alia, the date on which the transfer effected by this Commitment Transfer Supplement shall become effective (the "Transfer Effective Date"). From and after the Transfer Effective Date each Purchasing Bank shall be a Bank party to the Credit Agreement for all purposes thereof.

2. At or before 12:00 Noon, local time of the Transferor Bank, on the Transfer Effective Date, each Purchasing Bank shall pay to the Transferor Bank, in immediately available funds, an amount equal to the purchase price, as agreed between the Transferor Bank and such Purchasing Bank (the "Purchase Price"), of the portion being purchased by such Purchasing Bank (such Purchasing Bank's "Purchased Percentage") of the outstanding [Revolving Credit] Loans and other amounts owing to the Transferor Bank under the Credit Agreement. Effective upon receipt by the Transferor Bank of the Purchase Price from a Purchasing Bank, the Transferor Bank hereby irrevocably sells, assigns and transfers to such Purchasing Bank, without recourse, representation or warranty, and each Purchasing Bank hereby irrevocably purchases, takes and assumes from the Transferor Bank, such Purchasing Bank's Purchased Percentage of the Commitments and the presently outstanding [Revolving Credit] Loans and other amounts owing to the Transferor Bank under the Credit Agreement together with all instruments, documents and collateral security pertaining thereto.

3. The Transferor Bank has made arrangements with each Purchasing Bank with respect to (i) the portion, if any, to be paid, and the date or dates for payment, by the Transferor Bank to such Purchasing Bank of any fees heretofore received by the Transferor Bank pursuant to the Credit Agreement prior to the Transfer Effective Date and (ii) the portion, if any, to be paid, and the date or dates for payment, by such Purchasing Bank to the Transferor Bank of fees or interest received by such Purchasing Bank pursuant to the Credit Agreement from and after the Transfer Effective Date.

4. (a) All principal payments that would otherwise be payable from and after the Transfer Effective Date to or for the account of the Transferor Bank pursuant to the Credit Agreement and the Notes, if any, shall, instead, be payable to or for the account of the Transferor Bank and the Purchasing Banks, as the case may be, in accordance with their respective interests as reflected in this Commitment Transfer Supplement.

(b) All interest, fees and other amounts that would otherwise accrue for the account of the Transferor Bank from and after the Transfer Effective Date pursuant to the Credit Agreement and the Notes, if any, shall, instead, accrue for the account of, and be payable to, the Transferor Bank and the Purchasing Banks, as the case may be, in accordance with their respective interests as reflected in this Commitment Transfer Supplement. In the event that any amount of interest, fees or other amounts accruing prior to the Transfer Effective Date was included in the Purchase Price paid by any Purchasing Bank, the Transferor Bank and each Purchasing Bank will make appropriate arrangements for payment by the Transferor Bank to such Purchasing Bank of such amount upon receipt thereof from the Borrower.

5. On or prior to the Transfer Effective Date, the Transferor Bank will deliver to the Administrative Agent its Notes, if any. If requested to do so by any Purchasing Bank pursuant to subsections 2.2(c) and 4.5(c), on or prior to the Transfer Effective Date, the Borrowers will deliver to the Administrative Agent Revolving Credit Notes and Bid Loan Notes for such Purchasing Bank and the Transferor Bank, in each case in principal amounts reflecting, in accordance with the Credit Agreement, their Commitments (as adjusted pursuant to this Commitment Transfer Supplement). As provided in subsection 13.6(c) of the Credit Agreement, each such new Note shall be dated the Closing Date. Promptly after the Transfer Effective Date, the Administrative Agent will send to each of the Transferor Bank and the Purchasing Banks its new Note, if any, and will send to the Borrower the superseded Note, if any, of the Transferor Bank, marked "Cancelled".

6. Concurrently with the execution and delivery hereof, the Transferor Bank will provide to each Purchasing Bank (if it is not already a Bank party to the Credit Agreement) copies of all documents delivered to such Transferor Bank on the Effective Date in satisfaction of the conditions precedent set forth in the Credit Agreement.

7. Each of the parties to this Commitment Transfer Supplement agrees that at any time and from time to time upon the written request of any other party, it will execute and deliver such further documents and do such further acts and things as such other party may reasonably request in order to effect the purposes of this Commitment Transfer Supplement.

8. By executing and delivering this Commitment Transfer Supplement, the Transferor Bank and each Purchasing Bank confirm to and agree with each other and the Administrative Agent and the Banks as follows: (i) other than the representation and warranty that it is the legal and beneficial owner of the interest being assigned hereby free and clear of any adverse claim, the Transferor Bank makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with the Credit Agreement or the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement, the Notes or any other Loan Document or other instrument or document furnished pursuant thereto; (ii) the Transferor Bank makes no representation or warranty and assumes no responsibility with respect to the financial condition or creditworthiness of any Loan Party or the performance or observance by any Loan Party of any of their respective obligations under the Credit Agreement, the Notes or any other Loan Document or other instrument or document furnished pursuant thereto; (iii) each Purchasing Bank confirms that it has received a copy of the Credit Agreement, together with copies of the financial statements referred to in subsection 6.6 of the Credit Agreement, the financial statements delivered pursuant to subsection 8.1 of the Credit Agreement, if any, and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Commitment Transfer Supplement; (iv) each Purchasing Bank will, independently and without reliance upon the Administrative Agent, the Transferor Bank or any other Bank and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Credit Agreement; (v) each Purchasing Bank appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such powers

4

under the Agreement as are delegated to the Administrative Agent by the terms thereof, together with such powers as are reasonably incidental thereto, all in accordance with Section 11 of the Credit Agreement; and (vi) each Purchasing Bank agrees that it will perform in accordance with their terms all of the obligations which by the terms of the Credit Agreement are required to be performed by it as a Bank.

9. Each party hereto represents and warrants to and agrees with the Administrative Agent that it is aware of and will comply with the provision of subsection 13.6(g) of the Credit Agreement.

10. Schedule II hereto sets forth the revised Commitments of the Transferor Bank and each Purchasing Bank as well as administrative information with respect to each Purchasing Bank.

11. This Commitment Transfer Supplement shall be governed by, and construed in accordance with, the laws of the State of New York.

IN WITNESS WHEREOF, the parties hereto have caused this Commitment Transfer Supplement to be executed by their respective duly authorized officers on Schedule I hereto as of the date set forth in item 1 of Schedule I hereto.

```
                                                    SCHEDULE I
                                                 TO COMMITMENT
                                              TRANSFER SUPPLEMENT
                                              -------------------
```

                    COMPLETION OF INFORMATION AND
                     SIGNATURES FOR COMMITMENT
                        TRANSFER SUPPLEMENT
                     -------------------------

Re:    364-Day Credit Agreement, dated as of May 5, 1999 (as amended,
       supplemented or otherwise modified from time to time), among W. R. Grace &
       Co.-Conn. (the "Company"), W. R. Grace & Co. (formerly named Grace
       Specialty Chemicals, Inc.), any subsidiary of the Company which has
       previously delivered a Notice of Additional Borrower, the Transferor Bank
       and the other Banks parties thereto, Bank of America National Trust and
       Savings Association, as Documentation Agent, The Chase Manhattan Bank, as
       Administrative Agent and Chase Securities Inc., as Book Manager.


Item 1      (Date of Commitment Transfer Supplement):

Item 2      (Transferor Bank):

Item 3      (Purchasing Bank):

Item 4      (Signatures of Parties to Commitment Transfer Supplement):


                                        _____,
                                        as Transferor Bank

                                        By:_____
                                              Name:
                                              Title:

                                        _____,
                                        as a Purchasing
                                        Bank

                                        By:_____
                                              Name:
                                              Title:

2

CONSENTED TO AND
ACKNOWLEDGED:

W. R. GRACE & CO.-CONN.

By:_____
        Name:
        Title:


W. R. GRACE & CO.

By:_____
        Name:
        Title:

*[THE CHASE MANHATTAN BANK,
as Administrative Agent

By:_____
        Name:
        Title:]

*[MAJORITY BANKS]

ACCEPTED FOR RECORDATION
  IN REGISTER:

THE CHASE MANHATTAN BANK,
as Administrative Agent

By:_____
        Name:
        Title:

SCHEDULE II
TO COMMITMENT
TRANSFER SUPPLEMENT
-------------------

LIST OF LENDING OFFICES, ADDRESSES
FOR NOTICES AND COMMITMENT AMOUNTS
----------------------------------

Revised Commitment Amounts:
---------------------------

Revised Commitment Percentage:
------------------------------

New Commitment Amounts:
-----------------------

New Commitment Percentage:
--------------------------

Address for Notices:
--------------------

Address for Bid Loan Notices:
-----------------------------

Eurodollar Lending Office:
--------------------------

_____

_____

_____

Domestic Lending Office:
------------------------

_____

_____

_____

[Form of Transfer Effective Notice]

To: W. R. Grace & Co.-Conn.
    W. R. Grace & Co.
    [Transferor Bank]
    [each Purchasing Bank]

         The undersigned, as Administrative Agent [delegate of the
Administrative Agent performing administrative functions of the Administrative
Agent] under the 364-Day Credit Agreement, dated as of May 5, 1999 (as amended,
supplemented or otherwise modified from time to time, the "Credit Agreement"),
among W. R. Grace & Co.-Conn., a Connecticut corporation, W. R. Grace & Co.
(formerly named Grace Specialty Chemicals, Inc.), a Delaware corporation, any
subsidiary of the Company which has previously delivered a Notice of Additional
Borrower, the Transferor Bank and the other Banks parties thereto, Bank of
America National Trust and Savings Association, as Documentation Agent, The
Chase Manhattan Bank, as administrative agent for the Banks under the Credit
Agreement (in such capacity, the "Administrative Agent") and Chase Securities
Inc., as Book Manager, acknowledges receipt of five executed counterparts of a
completed Commitment Transfer Supplement, dated the date and between the parties
described in Schedule I hereto. [Note: Attach copy of Schedule I from Commitment
Transfer Supplement.] Terms defined in such Commitment Transfer Supplement are
used herein as therein defined.

         1. Pursuant to such Commitment Transfer Supplement, you are advised
that the Transfer Effective Date will be _____.

         2. Pursuant to such Commitment Transfer Supplement, the Transferor Bank
is required to deliver to the Administrative Agent on or before the Transfer
Effective Date its [Revolving Credit] Note[s], if any.

         [3. Pursuant to such Commitment Transfer Supplement, the Borrower is
[are] required to deliver to the Administrative Agent on or before the Transfer
Effective Date the following Note, each dated _____.]

         [Describe each new Note, if any, for Transferor Bank and Purchasing
Bank as to principal amount, payee and type of Note.]

2

    4. Pursuant to such Commitment Transfer Supplement each Purchasing Bank
is required to pay its purchase price to the Transferor Bank at or before 12:00
Noon on the Transfer Effective Date in immediately available funds.

                                        Very truly yours,

                                        THE CHASE MANHATTAN BANK,
                                          as Administrative Agent

                                        By:_____
                                            Name:
                                            Title:

EXHIBIT I
---------

NOTICE OF ADDITIONAL BORROWER

[Dated _____, _____ ]

The undersigned, _____, a _____ corporation and a subsidiary of the Company (as defined below) (the "Subsidiary"), hereby:

1. Confirms that this Notice of Additional Borrower is being delivered pursuant to subsection 13.15(a) of that certain 364-Day Credit Agreement, dated as of May 5, 1999 (the "Agreement"; terms defined therein being used herein as therein defined), among W. R. Grace & Co.-Conn., a Connecticut corporation (the "Company"), W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.), a Delaware corporation (the "Parent"), any other subsidiary of the Company which has previously delivered a notice of additional borrower substantially similar to this Notice of Additional Borrower, the several banks from time to time parties thereto (the "Banks"), Bank of America National Trust and Savings Association, as Documentation Agent, The Chase Manhattan Bank, a New York banking corporation, as administrative agent for the Banks thereunder (in such capacity, the "Administrative Agent") and Chase Securities Inc., as Book Manager.

2. States that it desires to become a "Borrower" under the Agreement and agrees to be bound by each of the terms and provisions of the Agreement as a "Borrower" thereunder and that, subject to the satisfaction of the conditions to the effectiveness set forth in paragraph 4 hereof, upon delivery of this Notice of Additional Borrower to the Administrative Agent such Subsidiary shall be a party to the Agreement.

3. Represents and warrants as follows as of the date hereof:

(a) The representations and warranties contained in subsections 6.1, 6.2, 6.3, 6.4, 6.5, 6.9, 6.10, 6.11, 6.12, 6.13 and 6.16 of the Agreement, the provisions of said subsections of the Agreement and all terms defined in the Agreement and appearing in said subsections shall by this reference be deemed incorporated in the Notice of Additional Borrower. For purposes of this paragraph (a) reference to the Parent, the Company and the Subsidiaries in said subsections and definitions shall be deemed, mutatis mutandis, to be references to such Subsidiary.

(b) *There are no Taxes imposed by [insert country where Subsidiary is organized] or any political subdivision thereof or taxing authority therein due or payable either on or by virtue of the execution and delivery by such Subsidiary, the Administrative Agent or the Banks of any Loan Document to which such

------------
*/   To be made by Foreign Subsidiaries.

Subsidiary is a party or on any payment to be made by such Subsidiary pursuant thereto, except for _____.

(c) The aggregate value of all of the assets of such Subsidiary, at a fair valuation, exceeds the total liabilities of such Subsidiary (including contingent, subordinated, unmatured and unliquidated liabilities). Such Subsidiary has the ability to pay its debts as they mature and does not have unreasonably small capital with which to conduct its business. For purposes of this paragraph (c), the "fair valuation" of such assets shall be determined on the basis of that amount which may be realized within a reasonable time, in any manner through realization of the value of or dispositions of such assets at the regular market value, conceiving the latter as the amount which could be obtained for the property in question within such period by a capable and diligent business person from an interested buyer who is willing to purchase under ordinary selling conditions.

4.    Agrees that the effectiveness of this Notice of Additional Borrower, such Subsidiary becoming a party to the Agreement and the ability of such Subsidiary to borrow thereunder are subject to the satisfaction of the following conditions precedent:

(a) The Administrative Agent has received (i) an opinion from counsel to the Company and the Parent, who may be the General Counsel of the Company, substantially in the form of the opinion attached hereto as Exhibit I-1, and (ii) if such Subsidiary is a Foreign Subsidiary, and if reasonably requested by the Majority Banks, an opinion of counsel for such Subsidiary to the effect that neither the Administrative Agent nor any Bank is or will be deemed to be resident, domiciled, carrying on business or subject to taxation in the jurisdiction where Subsidiary is organized by reason only of the execution, performance or enforcement of the Notice, the Agreement or the Notes made by the Subsidiary, and that the performance by the Administrative Agent or any Bank of any action required or permitted under the Agreement or the Notes made by the Subsidiary will not violate any law or regulation of the jurisdiction where Subsidiary is organized.

(b) The Administrative Agent has received for the account of each Bank who so requests, Notes made by such Subsidiary conforming to the requirements of the Agreement and executed by a duly authorized officer of such Subsidiary.

(c) The Administrative Agent has received, with an executed counterpart for each Bank, an incumbency certificate of such Subsidiary dated the date hereof, satisfactory in form and substance to the Administrative Agent, executed by the officers of such Subsidiary executing any Loan Document to which such Subsidiary is a party and the Secretary or Assistant Secretary of such Subsidiary.

(d) The Administrative Agent has received, with a counterpart for each Bank, a copy of the resolutions, in form and substance satisfactory to the Administrative Agent, of the Board of Directors of such Subsidiary authorizing (i) the execution, delivery and performance of the Agreement, this Notice of Additional Borrower, any Notes and the other Loan Documents to which it is a party, and (ii) the borrowings contemplated under the Agreement, certified by the Secretary or an Assistant Secretary of such Subsidiary as of the date hereof, which certificate states that the resolutions thereby certified have not been amended, modified, revoked or rescinded and shall be in form and substance satisfactory to the Administrative Agent.

(e) The Administrative Agent has received, with a counterpart for each Bank, true and complete copies of the certificate of incorporation and by-laws of such Subsidiary, certified as of the date hereof as complete and correct copies thereof by the Secretary or an Assistant Secretary of the Subsidiary.

(f) The performance by the Administrative Agent or the Banks of the Agreement, this Notice of Additional Borrower, the Notes and the other Loan Documents to which such Subsidiary is a party not cause any Bank to be in violation of any law, rule, regulation, treaty or order.

(g) All corporate and other proceedings, and all documents, instruments and other legal matters in connection with this Notice of Additional Borrower and such Subsidiary as a Borrower shall be satisfactory in form and substance to the Administrative Agent.

5. Agrees that all notices, requests and demands to or upon such Subsidiary in connection with the Agreement and the other Loan Documents shall be effective if made in the manner provided in subsection 13.2 of the Agreement to such Subsidiary at the following address or to such other address as may be hereinafter notified by such Subsidiary to the Administrative Agent:

[Subsidiary]

_____

Attention:_____
Telecopy:_____

[Name of Subsidiary]

By:_____
     Name:
     Title:

4

        The undersigned hereby confirm and agree to the foregoing Notice of
Additional Borrower delivered pursuant to subsection 13.15(a) of the Agreement.


                          W. R. GRACE & CO.-CONN.

                          By:_____
                             Name:
                             Title:


                          W. R. GRACE & CO.

                          By:_____
                             Name:
                             Title:

EXHIBIT I-1 to Notice
of Additional Borrower
----------------------

FORM OF OPINION OF COUNSEL TO THE COMPANY
AND THE PARENT

_____, _____

To each Bank from time to time
     party to the 364-Day Credit Agreement
     dated as of May 14, 1998,
     among W. R. Grace & Co.-Conn.,
     W. R. Grace & Co., the other Borrowers
     from time to time party thereto,
     the Banks named therein,
     Bank of America National Trust and Savings Association,
     as Documentation Agent,
     The Chase Manhattan Bank, as Administrative Agent and
     Chase Securities Inc., as Book Manager

Ladies and Gentlemen:

        As General Counsel of W. R. Grace & Co. (formerly named Grace Specialty
Chemicals, Inc.), a Delaware corporation (the "Parent"), and W. R. Grace &
Co.-Conn., a Connecticut corporation ("Company"), I have been requested to
render my opinion in connection with the Notice of Additional Borrower dated ,
("Notice") relating to [NAME OF SUBSIDIARY] ("Subsidiary") delivered pursuant to
the 364-Day Credit Agreement dated as of May 5 1999 (as modified by the Notice
and as otherwise amended, supplemented or otherwise modified prior to the date
hereof, the "Credit Agreement"), among you, the Company, the other Borrowers
from time to time party thereto, the Parent, Bank of America National Trust and
Savings Association, as Documentation Agent, The Chase Manhattan Bank, as
Administrative Agent and Chase Securities Inc., as Book Manager. I am rendering
this opinion pursuant to subsection 13.15(a) of the Credit Agreement and
subsection 4(a)(i) of the Notice. All terms used in this opinion that are
defined in the Credit Agreement have the respective meanings assigned to them
therein.

        I have examined or caused to be examined the Restated Certificate of
Incorporation and the By-laws of the Company, each as amended to date, the
Certificate of Incorporation and the By-laws of the Parent, each as amended to
date, the records of the meetings and other corporate proceedings of the Company
and of the Parent, the Credit Agreement, the Notice, and such other corporate
records, agreements, certificates and documents as I deem necessary for the
purposes of the opinion hereinafter expressed. For purposes of this opinion I

have assumed that all Notes issued from time to time hereafter will be issued in accordance with the terms of the Credit Agreement.

Based upon the foregoing, and subject to the qualifications stated below, I am of the following opinion:

1. The Company is a corporation duly organized and validly existing in good standing under the laws of Connecticut, and has the corporate power and authority under such laws, and is duly qualified and in good standing in each jurisdiction in which, in the opinion of the Company, such qualification is required, to own and operate its properties, to carry on its business and to perform its obligations under the Credit Agreement.

2. The Parent is a corporation duly organized and validly existing in good standing under the laws of Delaware and has the corporate power and authority under such laws, and is duly qualified and in good standing in each jurisdiction in which, in the opinion of the Parent, such qualification is required, to own and operate its properties, to carry on its business and to perform its obligations under the Credit Agreement.

3. The performance by the Company of the Credit Agreement and the consummation of the transactions contemplated thereby, including, without limitation, the guaranty by the Company of the Subsidiary's Obligations, have been duly and validly authorized by all necessary corporate action of the Company.

4. The performance by the Parent of the Credit Agreement and the consummation of the transactions contemplated thereby, including, without limitation, the guaranty by the Parent of the Company's and the Subsidiary's respective Obligations, have been duly and validly authorized by all necessary corporate action of the Parent.

5. The Credit Agreement constitutes the legal, valid and binding obligation of the Company and the Parent, as the case may be, enforceable in accordance with its terms.

6. No consent of any other party (including, without limitation, stockholders of the Company or the Parent), and no authorization, license, consent or approval from any regulatory, administrative or other governmental or public body or authority, arbitrator or court of the United States or any state or other jurisdiction thereof, is required in connection with the performance by the Company and the Parent, as the case may be, or the validity or enforceability, of the Credit Agreement or any Notes.

7. The performance by the Company and the Parent, of the Credit Agreement will not (A) to the best of my knowledge, violate any law or regulation applicable to the Company or the Parent, (B) conflict with, or result in a breach or violation of, the Restated Certificate of Incorporation or By-Laws, each as amended, of the Company, the Certificate of Incorporation or By-laws, each as amended, of the Parent or, to the best of my knowledge, any material indenture, loan agreement or other agreement or instrument to which the Company or the Parent is a party or under which the Company or the Parent or any of their respective properties are or may be

3

bound, or (C) to the best of my knowledge, violate any order, award, judgment, determination, writ, injunction or decree applicable to the Company or the Parent of any regulatory, administrative or other governmental or public body or authority, arbitrator or court of the United States or any state or other jurisdiction thereof.

8. To the best of my knowledge, no litigation, proceeding, investigation or inquiry is pending or threatened with respect to the transactions contemplated by the Credit Agreement.

9. Neither the Parent nor the Company is an "investment company", or a company "controlled" by an "investment company", within the meaning of the Investment Company Act of 1940, as amended.

My opinion is subject to the following qualifications:

(a) My opinion set forth in paragraph 5 above is subject to the effects of ankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, by general equitable principles (whether considered in a proceeding in equity or at law) and an implied covenant of good faith and fair dealing.

(b) I express no opinion as to the enforceability of the provisions of the Credit Agreement that purport to establish evidentiary standards or to make determinations conclusive.

(c) I express no opinion as to the enforceability of the provisions of the Credit Agreement insofar as they relate to post-judgment interest rates.

(d) I express no opinion as to the enforceability of subsection 3.3 of the Credit Agreement. I note that (i) a New York statute provides that with respect to a foreign currency obligation a New York State court shall render a judgment or decree in such foreign currency and such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of such judgment or decree and (ii) with respect to a foreign currency obligation a federal court of the United States sitting in New York may award judgment in U.S. dollars, provided that I express no opinion as to the rate of exchange that such court would apply.

(e) I express no opinion as to the validity, binding effect or enforceability of any waiver under the Credit Agreement, or any consent or authorization thereunder, relating to the rights of the Company or the Parent, or duties owing to any of them, existing or arising as a matter of law.

(f) I express no opinion as to the effect of any provision of the Credit Agreement insofar as it provides that any Person purchasing a participation from a Bank or other Person may exercise set-off or similar rights with respect to such participation or that any Bank or other Person may exercise set-off or similar rights other than in accordance with applicable law.

4

     (g) I express no opinion as to subsection 13.12 of the Credit Agreement insofar as it relates to the waiver of any objection by the Company and the Parent, to the venue of any legal action or proceeding brought in a United States District Court for the Southern District of New York (and note that such matters may be raised by such court).

     (h) I express no opinion as to the effect of any provision of the Credit Agreement which is intended to permit modification thereof only by means of an agreement in writing by the parties thereto.

     (i) I express no opinion as to the effect of any provision of the Credit Agreement imposing penalties or forfeitures.

     (j) I express no opinion as to the enforceability of any provision of the Credit Agreement to the extent that such provision constitutes a waiver of illegality as a defense to performance of contract obligations.

     (k) I express no opinion as to the effect of any provision of the Credit Agreement relating to indemnification or exculpation in connection with violations of any securities laws or relating to indemnification, contribution or exculpation in connection with willful, reckless or criminal acts or gross negligence of the indemnified or exculpated Person or the Person receiving contribution.

     (l) I express no opinion as to any laws other than those of the states of Connecticut, Delaware and New York and the federal laws of the United States.

     (m) As used in paragraph 1 above, the term "good standing" means only those matters evidenced by the issuance of a certificate of existence pursuant to Section 33.615(b) of the Connecticut Business Corporation Act, the absence of any steps taken by the Company toward dissolution and the filing by the Company of all business and capital tax returns required to be filed, and the payment of all taxes shown as payable on such returns that have become due, as of the date hereof.

     This opinion is limited to the specific issues addressed herein and is limited in all respects to laws and interpretations thereof and other matters existing on the date hereof. I do not undertake to update this opinion for changes in such laws, interpretations or matters. This opinion is furnished solely for your benefit in connection with the transactions contemplated by the Credit Agreement and the Notice, is not to be relied upon for any other purpose and may not be made available to any other person, firm or entity (other than a Transferee or a prospective Transferee referred to in subsection 13.6(f) of the Credit Agreement) without my express prior written consent, except as may be required by law or in response to any judicial or regulatory requirement, order or decree.

Very truly yours,

===============================================================================

## 364-DAY CREDIT AGREEMENT

dated as of
May 5, 1999

among

W. R. GRACE & CO.-CONN.,
W. R. GRACE & CO.,

The Banks Party Hereto,

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION,
as Documentation Agent,

THE CHASE MANHATTAN BANK
as Administrative Agent,

and

CHASE SECURITIES INC.,
as Book Manager

===============================================================================

TABLE OF CONTENTS
-----------------

Page

SECTION 1.  DEFINITIONS...................................................................1
            1.1  Defined Terms...............................................................1
            1.2  Other Definitional Provisions.........................................13

SECTION 2.  AMOUNT AND TERMS OF COMMITMENTS............................................13
            2.1  Commitments.............................................................13
            2.2  Obligations of Borrowers; Revolving Credit Notes....................14
            2.3  Procedure for Revolving Credit Borrowing............................15
            2.4  Extension of Termination Date.......................................15

SECTION 3.  BILATERAL OPTION LOANS.......................................................17
            3.1  Requests for Offers ....................................................17
            3.2  Reports to Administrative Agent; Determination of Dollar Equivalents.........17
            3.3  Judgment Currency.......................................................18
            3.4  Repayments..............................................................18

SECTION 4.  BID LOANS....................................................................19
            4.1  The Bid Loans...........................................................19
            4.2  Procedure for Bid Loans.................................................19
            4.3  Repayments..............................................................20
            4.4  Interest on Bid Loans...................................................20
            4.5  Obligations of Borrowers; Bid Loan Notes................................21

SECTION 5.  LOAN FACILITY COMMON PROVISIONS.............................................22
            5.1  Interest Rates and Payment Dates.......................................22
            5.2  Facility Fee, etc......................................................22
            5.3  Termination or Reduction of Commitments; Change of Control Date.......23
            5.4  Prepayments.............................................................24
            5.5  Conversion and Continuation Options....................................25
            5.6  Minimum Amounts of Eurodollar Tranches.................................25
            5.7  Computation of Interest and Fees.......................................25
            5.8  Inability to Determine Interest Rate...................................26
            5.9  Pro Rata Treatment and Payments........................................26
            5.10 Illegality..............................................................28
            5.11 Requirements of Law.....................................................28
            5.12 Taxes...................................................................29
            5.13 Indemnity...............................................................30

SECTION 6.  REPRESENTATIONS AND WARRANTIES.............................................31
            6.1  Corporate Existence; Compliance with Law..............................31
            6.2  Corporate Power, Authorization; Enforceable Obligations...............31

Page

6.3   No Legal Bar..................................................................32
6.4   No Material Litigation........................................................32
6.5   Ownership of Properties.......................................................32
6.6   Financial Condition ..........................................................32
6.7   Disclosure of Contingent Liabilities..........................................32
6.8   ERISA.........................................................................33
6.9   Certain Federal Regulations...................................................33
6.10  No Default....................................................................33
6.11  Taxes.........................................................................33
6.12  Investment Company Act; Other Regulations.....................................33
6.13  Purpose of Loans..............................................................33
6.14  Environmental Matters.........................................................33
6.15  Principal Subsidiaries........................................................34
6.16  Year 2000.....................................................................34

SECTION 7.   CONDITIONS PRECEDENT...................................................34
7.1   Conditions to Effectiveness...................................................34
7.2   Conditions to Each Loan.......................................................35

SECTION 8.   AFFIRMATIVE COVENANTS..................................................36
8.1   Financial Statements..........................................................36
8.2   Certificates; Other Information...............................................37
8.3   Payment of Obligations........................................................37
8.4   Conduct of Business and Maintenance of Existence..............................38
8.5   Insurance.....................................................................38
8.6   Inspection of Property, Books and Records; Discussions........................38
8.7   Notices.......................................................................38
8.8   Environmental Laws............................................................39
8.9   Year 2000 Compliance..........................................................39

SECTION 9.   NEGATIVE COVENANTS.....................................................40
9.1   Financial Condition Covenants.................................................40
9.2   Limitation on Liens...........................................................40
9.3   Limitation on Fundamental Changes.............................................42
9.4   Limitation on Asset Transfers to Foreign Subsidiaries.........................42
9.5   Limitation on Subordinated Debt...............................................42

SECTION 10.  EVENTS OF DEFAULT......................................................42

SECTION 11.  THE ADMINISTRATIVE AGENT...............................................45
11.1  Appointment...................................................................45
11.2  Delegation of Duties..........................................................45
11.3  Exculpatory Provisions........................................................45
11.4  Reliance by Administrative Agent..............................................46
11.5  Notice of Default.............................................................46
11.6  Non-Reliance on Administrative Agent and Other Banks..........................46

ii

Page

11.7    Indemnification.........................................................47
11.8    Administrative Agent in Its Individual Capacity.........................47
11.9    Successor Administrative Agent.........................................47
11.10   Others................................................................48

SECTION 12.  GUARANTEES......................................................48
12.1    Parent Guarantee......................................................48
12.2    Company Guarantee.....................................................48
12.3    No Subrogation, Contribution, Reimbursement or Indemnity..............49
12.4    Amendments, etc., with respect to the Obligations.....................49
12.5    Guarantee Absolute and Unconditional..................................50
12.6    Reinstatement.........................................................50
12.7    Payments..............................................................51

SECTION 13.  MISCELLANEOUS...................................................51
13.1    Amendments and Waivers; Replacement of Banks..........................51
13.2    Notices...............................................................52
13.3    No Waiver; Cumulative Remedies........................................53
13.4    Survival of Representations and Warranties............................53
13.5    Payment of Expenses and Taxes.........................................53
13.6    Successors and Assigns; Participations; Purchasing Banks..............54
13.7    Adjustments; Set-off..................................................57
13.8    Counterparts..........................................................58
13.9    Severability..........................................................58
13.10   Integration...........................................................58
13.11   GOVERNING LAW.........................................................58
13.12   Submission to Jurisdiction; Waivers...................................58
13.13   Acknowledgments.......................................................59
13.14   WAIVERS OF JURY TRIAL.................................................60
13.15   Additional Borrowers..................................................60

iii

SCHEDULES

Schedule I          Commitments; Lending Offices and Addresses for Notices
Schedule II         Principal Subsidiaries

EXHIBITS

Exhibit A           Form of Revolving Credit Note
Exhibit B           Form of Bid Loan Note
Exhibit C           Form of Bid Loan Confirmation
Exhibit D           Form of Bid Loan Offer
Exhibit E           Form of Bid Loan Request
Exhibit F-1         Form of Opinion of Counsel to the Company and the Parent
Exhibit F-2         Form of Opinion of Simpson Thacher & Bartlett
Exhibit G           Form of Officer's Certificate
Exhibit H           Form of Commitment Transfer Supplement
Exhibit I           Form of Notice of Additional Borrower

iv

# GRACE W R GRACE & CO (GRA)

7500 GRACE DRIVE
COLUMBIA, MD 21044
410 531 4000
http://www.grace.com/

# EX-4

**FIRST AMENDMENT TO 264-DAY CREDIT AGREEMENT**
**10-Q Filed on 08/14/2000 - Period: 06/30/2000**
File Number 001-13953

GSI

LIVEDGAR Information Provided by Global Securities Information, Inc.
800 669 1154
www.gsionline.com

EXHIBIT 4

## FIRST AMENDMENT

FIRST AMENDMENT, dated as of May 3, 2000 (this "Amendment"), to the 364-Day Credit Agreement, dated as of May 5, 1999 (as amended, supplemented or otherwise modified from time to time, the "Agreement"), among W. R. Grace & Co.-Conn., a Connecticut corporation (the "Company"), W. R. Grace & Co., a Delaware corporation (the "Parent"), the several banks from time to time parties thereto (the "Banks"), Bank of America, N.A. (formerly known as Bank of America National Trust and Savings Association), a national bank, as syndication agent (in such capacity, the "Syndication Agent"), The Chase Manhattan Bank, a New York banking corporation, as administrative agent for the Banks thereunder (in such capacity, the "Administrative Agent"), Chase Securities Inc., as book manager (in such capacity, the "Book Manager") and First Union National Bank, as documentation agent (in such capacity, the "Documentation Agent").

## W I T N E S S E T H :

WHEREAS, pursuant to the Agreement, the Banks have agreed to make, and have made, certain loans and other extensions of credit to the Borrowers; and

WHEREAS, the Borrowers have requested, and, upon this Amendment becoming effective, the Banks have agreed, that certain provisions of the Agreement be amended in the manner provided for in this Amendment.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the premises and mutual agreements contained herein, the parties hereto hereby agree as follows:

## SECTION I. AMENDMENTS

1.1 Defined Terms. Unless otherwise defined herein, capitalized terms which are defined in the Agreement are used herein as defined therein.

1.2 Amendment to subsection 1.1. Subsection 1.1 of the Agreement is hereby amended:

(a) by deleting therefrom the existing definition of "Applicable Margin" and by substituting therefor the following:

"Applicable Margin": for any day on which the long term senior unenhanced, unsecured debt of the Company is rated by both S&P and Moody's, the rate per annum under the caption "Margin" (a "Margin Rate") set forth below opposite the S&P and Moody's ratings applicable to such debt on such day (or, if such ratings are set opposite two different Margin Rates, then the Applicable Margin shall be the lower of said two Margin Rates):

| Margin | S&P | Moody's |
| ------ | --- | ------- |
| 1.00% | BB or lower | Ba2 or lower |
| .800% | BB+ | Ba1 |
| .575% | BBB- | Baa3 |
| .475% | BBB or higher | Baa2 or higher |

provided that if on any day (i) the long term senior unenhanced, unsecured debt of the Company is rated by only one of either S&P or Moody's, the Applicable Margin will be determined based on the rating by such rating agency, (ii) the long term senior unenhanced, unsecured debt of the Company is rated by neither S&P nor Moody's, the Applicable Margin will be determined based on the rating of such debt by Duff & Phelps, Fitch or another nationally recognized statistical rating organization agreed to by and among the Company, the Administrative Agent and the Majority Banks (each, a "Substitute Rating Agency") and will be the Margin Rate set forth above opposite the S&P and Moody's ratings comparable to such Substitute Rating Agency's rating of such debt on such date and (iii) the long term senior unenhanced, unsecured debt of the Company is rated by none of S&P, Moody's or any Substitute Rating Agency, the Company, the Administrative Agent and the Banks will negotiate in good faith to determine an alternative basis for calculating the Applicable Margin consistent with the table set forth above and, if agreement on such alternative basis is not reached within 30 days, the Applicable Margin will be calculated on an alternative basis determined by the Administrative Agent and the Banks in their reasonable discretion consistent with the table above, and until such alternative basis is determined the Applicable Margin will be the Applicable Margin last determined as provided in the table above; and provided, further, that (a) if on any day the aggregate Loan Outstandings of all of the Banks plus the Aggregate Outstanding Bilateral Option Loans is greater than 25% of the Commitments but less than or equal to 50% of the Commitments, the Applicable Margin in effect on each such day shall be increased by .125% or (b) if on any day the aggregate Loan Outstandings of all of the Banks plus the Aggregate Outstanding Bilateral Option Loans is greater than 50% of all of the Commitments, the Applicable Margin in effect on each such day shall be increased by .25%.

(b) by deleting therefrom the existing definition of "Termination Date" and by substituting therefor the following

"Termination Date": May 2, 2001 or such later date to which the Termination Date may be extended pursuant to subsection 2.4.

1.3 Amendment to subsection 6.6. Subsection 6.6 of the Agreement is hereby amended:

(a) by deleting therefrom the following: "December 31, 1998" where it appears therein and

(b) by inserting in lieu thereof "December 31, 1999".

1.4 Amendment to subsection 6.16. Subsection 6.16 of the Agreement and any reference to such subsection contained in the Agreement (including, without limitation, in Exhibit I to the Agreement) are hereby deleted in their entireties.

1.5 Amendment to subsection 8.2. Subsection 8.2(b) of the Agreement is hereby amended:

(a) by deleting therefrom the following: ", (ii) to the best of such Officer's knowledge, the representation and warranty contained in subsection 6.16 is true and correct as of the date of delivery of such financial statements and certificate and (iii)" and

(b) by inserting in lieu thereof "and (ii)".

1.6 Amendment to subsection 8.9. Subsection 8.9 of the Agreement is hereby deleted in its entirety.

1.7 Amendment to Schedule 1. Schedule 1 to the Agreement is hereby deleted in its entirety and replaced with the new Schedule 1 attached to this Amendment.

### SECTION II. MISCELLANEOUS

2.1 Conditions to Effectiveness of Amendment. This Amendment shall become effective as of the date first set forth above upon:

(a) the Administrative Agent having received counterparts of this Amendment duly executed and delivered by the Company, the Parent, the Administrative Agent and the each of the Banks; and

(b) the Administrative Agent having received, on behalf of itself, the Banks and the Book Manager, the fees specified in Section 2.2 of this Amendment.

2.2 Fees. The Company shall pay to the Administrative Agent, for the account of the Administrative Agent, the Banks and the Book Manager, the fees in the amounts and on the terms previously agreed to in writing by the Parent, the Administrative Agent and the Book Manager.

2.3 Representations and Warranties. Each of the Loan Parties, as of the date hereof and after giving effect to the amendments contained herein, hereby confirms, reaffirms and restates the representations and warranties made by it in Section 6 of the Agreement and in any other Loan Document to which it is a party; provided that each reference to the Agreement therein shall be deemed to be a reference to the Agreement after giving effect to this Amendment.

2.4 Limited Effect. The execution, delivery and effectiveness of this Amendment shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of any Bank or the Administrative Agent under the Agreement, nor constitute a waiver or amendment of any provisions of the Agreement. Except as expressly modified herein, all of the provisions and covenants of the Agreement are and shall continue to remain in full force and effect in accordance with the terms thereof and are hereby in all respects ratified and confirmed.

2.5 Counterparts. This Amendment may be executed by one or more of the parties hereto in any number of separate counterparts (which may include counterparts delivered by facsimile transmission) and all of said counterparts taken together shall be deemed to constitute one and the same instrument. Any executed counterpart delivered by facsimile transmission shall be effective as for all purposes hereof.

2.6 GOVERNING LAW. THIS AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

(End of Page)

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed and delivered by their respective proper and duly authorized officers as of the day and year first above written.

W. R. GRACE & CO.-CONN.

By:
-----------------------------------
   Title:

W. R. GRACE & CO.

By:
-----------------------------------
   Title:

THE CHASE MANHATTAN BANK,
as Administrative Agent and as a Bank

By:
-----------------------------------
   Title:

BANK OF AMERICA, N.A.,
as Syndication Agent and as a Bank

By:
-----------------------------------
   Title:

FIRST UNION NATIONAL BANK,
as Documentation Agent and as a Bank

By:
-----------------------------------
   Title:

ABN AMRO BANK N.V.

By:
-----------------------------------
   Title:

By:
-----------------------------------
   Title:

BANK HAPOALIM B.M.

By:
----------------------------------
    Title:

CREDIT SUISSE FIRST BOSTON

By:
----------------------------------
    Title:

By:
----------------------------------
    Title:

DRESDNER BANK AG, NEW YORK AND GRAND
CAYMAN BRANCHES

By:
----------------------------------
    Title:

By:
----------------------------------
    Title:

THE BANK OF NEW YORK

By:
----------------------------------
    Title:

THE BANK OF NOVA SCOTIA

By:
----------------------------------
    Title:

THE NORTHERN TRUST COMPANY

By:
----------------------------------
    Title:

WACHOVIA BANK, N.A.

By:
    ------------------------------------
    Title:

SCHEDULE I
----------

Commitments
-----------

| BANK | COMMITMENT |
|------|-----------|
| The Chase Manhattan Bank | $28,000,000 |
| Bank of America, N.A. | $28,000,000 |
| First Union National Bank | $28,000,000 |
| Credit Suisse First Boston | $25,000,000 |
| Dresdner Bank AG, New York and Grand Cayman Branches | $24,000,000 |
| The Bank of Nova Scotia | $24,000,000 |
| ABN AMRO Bank N.V. | $19,500,000 |
| The Bank of New York | $19,500,000 |
| The Northern Trust Company | $19,500,000 |
| Wachovia Bank, N.A. | $19,500,000 |
| Bank Hapoalim | $15,000,000 |
| TOTAL: | $250,000,000 |