**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.,**[1] | ) | **Case No. 01-01139 (JFK)** |
| | ) | **(Jointly Administered)** |
| | ) | |
| Debtors. | ) | |

**SUPPLEMENTAL DISCLOSURE AFFIDAVIT UNDER 11 U.S.C. § 327(e)**
**IN SUPPORT OF CONTINUED RETENTION OF ERNST & YOUNG LLP**
**AS ORDINARY COURSE PROFESSIONAL TO THE DEBTORS**

Joseph A. Coll, being duly sworn, deposes and says:

1.      I am an executive director of Ernst & Young LLP ("E&Y LLP"). I provide this

Affidavit on behalf of E&Y LLP as contemplated by paragraph 6 of the Order Lifting OCP Total

Expenditure Cap for Ernst & Young LLP and Permitting Retention of Fees Paid entered by this

Court on July 10, 2008 [Docket # 19063] and to supplement the affidavits previously filed on

behalf of E&Y LLP in these cases on March 18, 2003 [Docket # 3519] and on February 12, 2007

[Docket # 14548] in support of the continued retention of E&Y LLP as an ordinary course

---

[1]      The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals,
Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation,
Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc.,
Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a
Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa
Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management
Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B
Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company,
Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc.,
Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.),
Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors,
Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land
Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square
Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management,
Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated,
Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a
Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc.
(f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil,
Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

CH\1039616.2

professional ("OCP") of the Debtors for the provision of tax compliance, tax advisory services (including expatriate tax services) and employee global assignment services.

2.     The facts set forth in my affidavit are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other employees of E&Y LLP under my supervision and direction. The procedures pursuant to which E&Y LLP determined whether there were any connections between E&Y LLP and interested parties in these cases is described below.  The results of that investigation are set forth herein and in Exhibit B appended hereto.

3.     As authorized by this Court's Order Pursuant to 11 U.S.C. §§ 1107(a) and 1108 Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business, dated May 3, 2001 [Docket # 197], E&Y LLP has been providing, and continues to provide, tax compliance, tax advisory services (including expatriate tax services) and employee global assignment services (the "Services") to the Debtors as an ordinary course professional during these chapter 11 cases, pursuant to two engagement letters each dated as of December 21, 2006, attached hereto as Exhibit A-1 and Exhibit A-2 (each, and "Engagement Letter" and, collectively, the "Engagement Letters").

4.     Pursuant to the Engagement Letter dated attached hereto as Exhibit A-1 (the "Tax Services Agreement"), E&Y LLP agreed to provide tax services to the Debtors pursuant to be set forth in detail in separate Statements of Work, or "SOW's."  Pursuant to the Engagement Letter attached hereto as Exhibit A-2 (the "Expatriate Tax Services SOW"), E&Y LLP provides expatriate tax and relocation support services to the Debtors, including those described on Exhibits 1 and 1A to the Expatriate Tax Services SOW. The Services provided under the Expatriate Tax Services SOW extend to authorized participants in the Debtors' expatriate tax

2

program, including, when so determined by the Debtors, employees of the Debtors' subsidiaries and affiliates, who (1) have been identified to E&Y LLP by the Debtors as participants and (2) have elected to use E&Y's services and have executed an agreement in form similar to Attachment 2 to the Expatriate Tax Services SOW.

5.      In order to provide the Expatriate Tax Services, E&Y LLP currently does or in the future expects to subcontract with certain EYGL (defined below) foreign member firms (the "E&Y Entities") to assist with the provision of services under the Expatriate Tax Services SOW, as follows:  E&Y (Argentina), E&Y (Belgium), E&Y (China), E&Y (France), E&Y (Germany), E&Y (India), E&Y (Ireland), E&Y (Italy), E&Y (Japan), E&Y (Malaysia), E&Y (Mexico), E&Y (Philippines), E&Y (Singapore), E&Y (Turkey), E&Y (United Arab Emirates), E&Y (United Kingdom) and E&Y (Venezuela).

6.      The E&Y Entities assist or will assist E&Y LLP in the provision of Services under the Expatriate Tax Services SOW, an arrangement that is requested by and beneficial to the Debtors' estates for the following reasons:  (a) through an integrated approach to the provision of professional services, E&Y LLP and the E&Y Entities are able to efficiently provide a cohesive network of quality services to the Debtors; and (b) having E&Y LLP act as the clearinghouse for invoices submitted by the E&Y Entities is more convenient to the Debtors by allowing billing to be centralized through a single invoice that settles budgeting and foreign currency issues.

7.      In connection with E&Y LLP's proposed retention by the Debtors, E&Y LLP has requested and obtained from counsel to the Debtors or the record in these cases, the names of the following entities:

        (a)     Debtor;

3

CH\1039616.2

(b)    Debtor's Attorneys (general counsel and special bankruptcy counsel);

(c)    Debtor's Other Professionals retained in connection with the chapter 11 proceeding;

(d)    Non-Debtor Affiliates;

(e)    Non-Debtor Affiliates Attorneys;

(f)    Non-Debtor Affiliates Other Professionals retained in connection with the Chapter 11 proceedings;

(g)    Debtor's Officers;

(h)    Debtor's Officers Attorneys retained in connection with the Chapter 11 proceeding

(i)    Debtor's Officers Other Business Affiliations

(j)    Debtor's Directors

(k)    Debtor's Directors Attorneys retained in connection with the Chapter 11 proceeding;

(l)    Debtor's Directors Other Business Affiliations

(m)    Debtor's Major Shareholders (5% or more);

(n)    Debtor's Major Shareholders Attorneys retained in connection with the Chapter 11 proceeding;

(o)    All Secured Lenders, including DIP lenders;

(p)    All Secured Lenders Attorneys retained in connection with the Chapter 11 proceeding;

(q)    All Substantial Unsecured Bondholders or Lenders;

(r)    All Substantial Unsecured Bondholders or Lenders Attorneys retained in connection with the Chapter 11 proceeding;

(s)    All Indenture Trustees;

(t)    All Indenture Trustees Attorneys retained in connection with the Chapter 11 proceeding;

(u)    Official Statutory Committees Members (All Committees);

(v)    Official Statutory Committees Attorneys (for each Official Committee)

(w)    Official Statutory Committees Other Professionals retained by each Official Committee;

(x)    Official Statutory Committees Members Attorneys retained in connection with the Chapter 11 proceeding;

(y)    Twenty Largest Unsecured Creditors (as of the date of filing);

(z)    Twenty Largest Unsecured Creditors Attorneys retained in connection with the Chapter 11 proceeding;

(aa)    Parties to the Debtor's Significant Executory Contracts and Leases;

(ab)    Parties to the Debtor's Significant Executory Contracts and Leases Attorneys retained in connection with the Chapter 11 proceeding;

(ac)    Other Significant Parties-in-Interest including parties in material litigation against the Debtor; and/or parties to potential significant transactions with the Debtor; and

(ad)    Other Significant Parties-in-Interest Attorneys retained in connection with the Chapter 11 proceeding.

The identities of these interested parties are set forth on Exhibit B to this Affidavit.

CH\1039616.2

8.    E&Y LLP has not received from counsel to the Debtors, or does not know of, any persons or entities that would fall into categories (e), (f), (h), (i), (k), (l), (n), (p), (r), (t), (z), (ab) and (ad) set forth above.  As to those persons or entities identified in the remaining categories set forth above, E&Y LLP searched or caused to be searched certain databases to determine whether E&Y LLP has provided in the recent past or is currently providing services to the parties-in-interest listed in Exhibit B attached hereto.  E&Y LLP also searched or caused to be searched certain databases to determine whether E&Y LLP has utilized in the recent past, or is currently utilizing, such parties-in-interest as significant vendors in the course of E&Y LLP's business.  To the extent that E&Y LLP's research of relationships with parties-in-interest in these cases indicated that E&Y LLP has in the recent past, or currently has, a client or vendor relationship with such parties-in-interest in matters unrelated to these chapter 11 cases, E&Y LLP has so indicated in the attached Exhibit B to the Affidavit.  Should additional significant relationships with parties-in-interest become known to E&Y LLP, a supplemental affidavit will be filed by E&Y LLP with the Court.

9.    E&Y LLP, a Delaware limited liability partnership, and Ernst & Young LLP, an Ontario limited liability partnership ("E&Y (Canada)"), are separate legal entities.  While they have, through various agreements, a close operational relationship, that, *inter alia*, provides for certain shared costs and services and mutual financial support, the two firms do not share their profits or their fees on professional engagements.

10.    The Ernst & Young global network encompasses independent professional services practices conducted by separate legal entities throughout the world.  Such legal entities are members of Ernst & Young Global Limited ("EYGL"), a company incorporated under the laws of England and Wales and limited by guarantee, with no shareholders and no capital. The

5

CH\1039616.2

member firms of EYGL have agreed to operate certain of their professional practices in accordance with agreed standards, but remain separate legal entities. E&Y LLP and E&Y (Canada) are members of EYGL.

11.    E&Y has conducted research with respect to services provided by E&Y (Canada) in the recent past to the parties listed in Exhibit B attached hereto. To the extent that E&Y's research of relationships with the interested parties indicated that E&Y (Canada) has provided in the recent past or is currently providing services to any of these entities in matters unrelated to these chapter 11 cases, E&Y has so indicated in the attached Exhibit B to this Affidavit. Should additional relationships with parties in interest become known to E&Y, a supplemental affidavit will be filed by E&Y with the Court.

12.    On November 30, 2004, Ernst & Young U.S. LLP (an affiliate of E&Y LLP) transferred all of its equity ownership in Ernst & Young Corporate Finance LLC ("EYCF") to Giuliani Partners LLC (the "Transaction"). As a result, EYCF became a subsidiary of Giuliani Partners LLC ("GP") and changed its name to Giuliani Capital Advisors LLC ("GCA"). As a consequence of the Transaction, Ernst & Young U.S. LLP no longer has any direct or indirect ownership interest in EYCF, nor in GCA. Given the absence of an ownership relationship, E&Y LLP believes that it is not necessary, in performing connections checks for work performed by E&Y LLP on and after December 1, 2004, to review connections that either EYCF or GCA may have or have had, nor to search either of those entities' databases for like information, and E&Y LLP has in fact not undertaken such research.

13.    As part of its practice, E&Y LLP appears in cases, proceedings and transactions involving many different attorneys, financial advisors and creditors, some of which may represent or be claimants and/or parties in interest in these cases. E&Y LLP will have no

6

CHI\0396162

relationship with any such entity, attorney or financial advisor that would be materially adverse

to the Debtors with respect to the matters on which E&Y LLP has been retained by the Debtors.

The following professionals whom E&Y LLP believes to be closely associated with the Debtors'

chapter 11 cases have provided in the past and/or are currently providing services to E&Y LLP:

A. William Roberts, Jr., & Assoc.; Akerman Senterfitt & Edison; Allen & Overy; Altheimer &

Gray; American Appraisal Associates, Inc.; Arent, Fox, Kintner, Plotkin, Kahn; Arthur

Andersen; Ashby & Geddes, P.A.; Baker & McKenzie; Baker Botts, LLP; Barnes & Thornburg;

Baron & Budd; Bradley, Arant Rose & White LLC; Bryan Cave; Cahill Gordon & Reindel;

Cambridge Environmental; Covington & Burling; Cummings & Lockwood; Davis, Graham &

Stubbs; Debandt, Van Hecke, Lacke & Loesch; Dechert Price & Rhoads; Deloitte & Touche

LLP; Dickinson, Wright, Moon, Van Dusen; Dickstein, Shapiro & Morin; Dorsey & Whitney

LLP; Duane Morris LLP; Finnegan, Henderson, Farabow, Garrett & Dunner; Foley Hoag &

Eliot; Foley Hoag LLP; Fragomen Del Rey Bernsen & Loewy LLP; Frost Brown Todd LLC;

Gibbon, Del Deo, Dolan, Griffinger & Vecchione; Grant Thornton; Gunster, Yoakley & Stewart;

Heller, Ehrmann White & McAuliffe LLP; Holland & Knight; Honigman, Miller, Schwartz and

Cohan; Katten Muchin Rosenman LLP; Keefer Wood Allen & Rahal; Kirkland & Ellis;

Kirkpatrick & Lockhart LLP; KPMG LLP; Latham & Watkins LLP; Lavery DeBilly; Mayor,

Day, Caldwell & Keeton; McConnell Valdes; McDermott, Will & Emery; Mintz, Levin, Cohn,

Ferris; Morrison & Foerster; Moses & Singer LLP; Nelson Mullins Riley & Scarborough LLP;

Orrick, Herrington & Sutcliffe LLP; Patton Boggs LLP; Pepper Hamilton LLP; Perkins Coie;

Phillips Lytle LLP; Phillips Lytle, Hitchcock, Blaine & Huber; Piper Marbury Rudnick & Wolfe;

Piper Rudnick LLP; Pitney Hardin Kipp & Szuch LLP; PriceWaterhouseCoopers LLP;

Proskauer Rose LLP; R.R. Donnelley & Sons Company; Reed Smith LLP; Reed Smith Shaw &

McClay; Saul Ewing LLP; Seyfarth Shaw; Shea & Gardner; Sidley Austin LLP; Sidley Austin Brown & Wood LLP; Simpson Thatcher Bartlett; Skadden, Arps, Slate, Meagher & Flom LLP; Smith Gambrell & Russell; Steptoe & Johnson LLP; Stroock & Stroock & Lavan LLP; Swidler Berlin Shereff Friedman LLP; Thomson & Thomson; Venable Baetjer & Howard; Vinson & Elkins; Weil, Gotshal & Manges; White & Case; Wyatt, Tarrant & Combs.

14.    Certain entities that are parties in interest herein (Bank of America, Barclays Bank, JPMorgan Chase, Citibank, NA, HSBC, the Prudential Insurance Company of America and Wachovia Bank & Trust Company) are lenders which participate in E&Y LLP's Revolving Credit Program. In addition, certain other parties in interest herein (American United Life Insurance and Metropolitan Life Insurance Company) are long term debt lenders to E&Y LLP.

15.    E&Y LLP is currently a party or participant in certain litigation matters involving parties-in-interest in these cases. Case information and the parties-in-interest involved in these matters are provided in Exhibit C to this Affidavit.

16.    E&Y LLP has thousands of professional employees. It is possible that certain employees of E&Y LLP may have business associations with parties in interest in these cases or hold securities of the Debtors or interests in mutual funds or other investment vehicles that may own securities of the Debtors.

17.    To the best of my knowledge, information and belief, formed after reasonable inquiry, none of the services rendered by E&Y LLP to the entities set forth in Exhibit B hereto have been in connection with the Debtors or these chapter 11 cases. E&Y LLP believes that these relationships will not impair E&Y LLP's ability to objectively perform professional services on behalf of the Debtors. E&Y LLP will not accept any engagement that would require

8

E&Y LLP to represent an interest materially adverse to the Debtors with respect to the matters on which E&Y LLP is employed by the Debtors in the Debtors' chapter 11 cases.

18.    To the best of my knowledge, information and belief, neither the undersigned nor the E&Y LLP professionals expected to assist the Debtors in these matters are connected to the Judge, U.S. Trustee or Assistant U.S. Trustee assigned to this matter.

19.    Despite the efforts described above to identify and disclose connections with parties-in-interest in these cases, because the Debtors are a large enterprise with numerous creditors and other relationships, E&Y LLP is unable to state with certainty that every client representation or other connection of E&Y LLP with parties-in-interest in these cases has been disclosed herein. In this regard, if E&Y LLP discovers additional information that requires disclosure, E&Y LLP will file supplemental disclosures with the Court.

20.    As noted on Exhibit B hereto, E&Y LLP has in the past provided and currently provides various services to Sealed Air Corporation and certain of its affiliates. The services provided by E&Y LLP to Sealed Air Corporation are not and have not been related to the services provided by E&Y LLP to the Debtors in the Debtors' chapter 11 cases, and therefore do not render E&Y LLP adverse to the Debtors or their estates with respect to the matters on which E&Y LLP is employed by the Debtors, *i.e.*, the OCP Services. E&Y LLP will not provide services to Sealed Air Corporation or its affiliates during the pendency of these chapter 11 cases that are adverse to the Debtors or their estates with respect to the matters on which E&Y LLP is employed by the Debtors in the Debtors' chapter 11 cases.

21.    As previously disclosed in the affidavit filed on behalf of E&Y LLP in these cases on February 12, 2007 [Docket # 14548], E&Y LLP has previously been retained to provide buy-

9

side due diligence services to assist a third party (the "New Client")[2] that is interested in
potentially purchasing certain assets from the Debtors (the "Due Diligence Services"). The Due
Diligence Services are complete and are no longer continuing as of the date hereof. There has
been and will be no overlap between the Firm's professionals that are providing the OCP
Services to the Debtors and the Firm's professionals that provided the Due Diligence Services to
the New Client. In addition, both the Debtors and the New Client have executed a waiver and
consent (the "Consent Letter"), agreeing to allow E&Y LLP to provide the OCP Services to the
Debtors and the Due Diligence Services to the New Client. The Consent Letter further provides
that, except as otherwise agreed in writing by the Debtors and the New Client, confidential or
privileged information in possession of the Firm's respective engagement teams for the Debtors
and the New Client will remain confidential to the client served by that engagement team in
accordance with applicable professional standards. The Due Diligence Services are not related
to the OCP Services, and therefore rendering the Due Diligence Services did not cause E&Y
LLP represent or hold any interest adverse to the Debtors or their estates with respect to the
matters on which E&Y LLP is employed by the Debtors, *i.e.*, the OCP Services. As a result,
E&Y LLP remains qualified to continue to provide the OCP Services to the Debtors despite
having provided the Due Diligence Services to the New Client

22.      Latham & Watkins LLP, which is an ordinary course professional to the Debtors
on matters unrelated to E&Y LLP and E&Y LLP's retentions, represents E&Y LLP on matters
related to E&Y LLP's retention in these cases.

23.      To the best of my knowledge, information and belief formed after reasonable
inquiry, E&Y LLP does not hold nor represent any interest materially adverse to the Debtors

---

[2]      The identity of the New Client, and the New Client's interest in potentially purchasing assets from the
Debtors, is not public at this time, and therefore the Firm is not able to disclose the name of the New Client at this
time. The Debtors, however, are aware of the identity of the New Client.

with respect to the OCP Services on which E&Y LLP is employed by the Debtors in the Debtors' chapter 11 cases. Accordingly, I believe that E&Y LLP is eligible for continued retention by the Debtors as an OCP under Title 11 of the United States Code (the "Bankruptcy Code").

24.    To the best of my knowledge, information and belief, prior to the Petition Date, E&Y LLP performed certain professional services for the Debtors, including various tax services including expatriate tax services. At the Debtors' request, E&Y LLP has provided the Services, including the expatriate tax services consistent with those set forth in the Expatriate Tax Services SOW, for the Debtors and the Debtors' non-debtor foreign affiliates since the Petition Date as an OCP to the Debtors.

25.    As of the Petition Date, E&Y LLP was owed $29,912 by the Debtors in respect of services provided by E&Y LLP prior to the Petition Date, all of which has since been paid by the Debtors during E&Y LLP's employment as an OCP.

26.    During the ninety days immediately preceding the Petition Date, the Debtors paid to E&Y LLP fees totaling approximately $119,570.

27.    E&Y LLP and the professionals that it employs are qualified to continue to provide the Services to the Debtors as an OCP.

28.    Except as otherwise set forth herein, including in paragraphs 5 and 6 hereof, E&Y LLP has not shared or agreed to share any of its compensation in connection with this matter with any other person.

Joseph A. Coll

11

CH\1039616.2

Dated:  *08-15-08*

Sworn to and subscribed before me this *15* day of August, 2008.



Notary Public

My Commission Expires:  *2-9-09*

KELLY A. HEADMAN
NOTARY PUBLIC - NEW JERSEY
COMMISSION #2311137
BURLINGTON COUNTY
My Commission Expires February 9, 2009

CH\1039616.2