IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | Re: Docket No. 18501, 18735, 19313 |
| | ) | Hearing Date: September 2, 2008 at 9:00 AM |

**REPLY OF MIAN REALTY, LLC TO DEBTORS' SUPPLEMENTAL RESPONSE AND OBJECTION TO MOTION REGARDING APPLICABILITY OF AUTOMATIC STAY**

Mian Realty, LLC ("Mian") submits this Reply to Debtors' Supplemental Response and Objection to Mian's Motion regarding the applicability of the automatic stay. For the reasons set forth herein and in its original Motion,[1] Mian respectfully requests that this Court grant the relief sought in the Motion.

**The Automatic Stay Does Not Bar Mian's Claims**

1. For the following reasons, Debtors' arguments regarding the application of the automatic stay fail. First, the Third Circuit has held that "the threshold requirement of a claim [is] there must be a 'right to payment.'" Avellino v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332, 335 (3d Cir. 1985) (quoting predecessor of 11 U.S.C. § 101(5)). "The threshold question of when a right to payment arises, absent overriding federal law, 'is to be determined by reference to state law.'" Id. (quoting cases). See also Official Comm. of Asbestos Personal Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.), 281 B.R. 852, 860 (Bankr. D. Del. 2002) (noting that courts in this Circuit apply accrual test for bankruptcy claims). Therefore, contrary to Debtors' argument, mere contingent claims are not "claims" subject to the automatic stay.

---

[1] Mian incorporates herein the defined terms set forth in its Motion.

99999/0091-2618482v1

2. Second, as noted in the Motion, a number of courts have held that a contingent CERCLA claim, in particular, does not qualify as a claim under the Bankruptcy Code. See AL Tech Specialty Steel Corp. v. Allegheny Int'l, Inc., 126 B.R. 919, 925 n.5 (W.D. Pa.), aff'd, 950 F.2d 721 (3d Cir. 1991); In re Hillsborough Holdings Corp., 325 B.R. 334, 337 (Bankr. M.D. Fla. 2005); United States v. Union Scrap Iron & Metal, 123 B.R. 831, 838-39 (D. Minn. 1990). Thus, here, insofar as Mian possessed contingent CERCLA claims before Debtors' petition filings, such claims do not qualify as "claims" under the Bankruptcy Code.

3. Third, in light of the holding in Frenville, the mere applicability of a statute is not sufficient to give rise to a claim. Indeed, Debtors fail to cite a single case in which a court held that a party possessed a claim on such a basis. Likewise, the mere existence of a contractual relationship – in the absence of a right to payment – is insufficient to give rise to a claim. Indeed, in the relevant cases cited by Debtors on this point, a right to payment had arisen before the petition filings.

4. Fourth, in light of Frenville, the cases in other jurisdictions cited by Debtors are inapposite. Further, even assuming these cases are relevant to this matter, not one of the exhibits submitted by Debtors actually establishes that Mian's property is the source of TCE contamination or that the DEP was investigating any party other than Litgo. Indeed, Debtors themselves can speak of only the "possibility" of contamination on Mian's property. Response at 4. In fact, Debtors' own documents reveal that TCE contaminants originated on Litgo's property.[2] Additional records omitted from Debtors' Exhibit Book further reveal the absence of

---

[2] Exhibit Book Exh. N (asserting that "prevailing groundwater flow direction is toward the southeast [rather than from the northwest from Mian's property]"); Exh. O (asserting that "suspected off-site source of TCE contamination exists to the northwest [rather than to Mian's property to the east]"); Exh. Q at 5 (asserting that contamination "appears to originate in the vicinity of the MW-4 monitoring well cluster [on Litgo's property"); Exh. R at 2 (asserting that "source may be present [on Litgo's property]").

any TCE contamination on Mian's property.[3] Likewise, none of Debtors' exhibits could have provided notice of a landfill on Mian's property.[4] Accordingly, Mian had no reason, until recently, to "fairly contemplate" the assertion of a claim against Debtors.

5.  Next, CERCLA section 113(f) no longer preempts other similar claims. United States v. Atlantic Research Corp., 127 S.Ct. 2331, 2339 (2007). Alternatively, CERCLA preempts common law claims only insofar as such claims are based on CERCLA liability. Rhodia Inc. v. Bayer Cropscience Inc., 2007 WL 3349453 at *10-11 (D.N.J. Nov. 7, 2007); Caldwell Trucking PRP Group v. Caldwell Trucking Co., 154 F.Supp. 870, 875 (D.N.J. 2001). Thus, here, Mian's common law claims are not preempted, or alternatively, not completely preempted.

6.  Finally, the ERA grants private plaintiffs standing to enforce other New Jersey environmental statutes. Mayor and Council of Borough of Rockaway v. Klockner & Klockner, 811 F.Supp. 1039, 1054 (D.N.J. 1993). Here, unlike the DEP in this case, W.R. Grace & Co. v. Campbell (In re W.R. Grace & Co.), 384 B.R. 678, 680 (D. Del. 2008), Mian does not seek only monetary relief. Rather, Mian seeks also to ameliorate an ongoing environmental hazard. Motion ¶¶ 28-29. Thus, Mian has standing to invoke Torwico Elecs., Inc. v. State of New Jersey, Dep't of Envtl. Protection, 8 F.3d 146, 150-51 (3d Cir. 1993).

---

[3] See annexed hereto Exh. A at 2 ¶ 5 (asserting that contamination does not originate from off-site sources); Exh. B; Exh. C at 4 (asserting that "[Mian's property is] not considered to be potential source"); Exh. D; Exh. E (asserting that contamination "appears to originate in the vicinity of [Litgo's property]"); Exh. F. Indeed, it stands to reason that had evidence of TCE contamination of Mian's property existed, Mian would have been successfully prosecuted long ago.
[4] For instance, Debtors' Exhibit U cites only an "extensive soil disturbance"; such a description could have been interpreted to refer to, for example, mere roadwork activity, and not a landfill. Also, Debtors' Exhibit Q was not even issued until after Debtors' petition filings.

**Mian Does Not Require Relief From the Automatic Stay**

7.      Because its claims arose post-petition, Mian does not require relief from the automatic stay. Indeed, it has not even sought such relief. Nevertheless, even assuming that they are somehow relevant to this Court's determination, Debtors' arguments regarding relief from the automatic stay lack merit.

8.      First, the Third Circuit has noted that under CERCLA, disposal includes not only the initial introduction of contaminants, but also the mere spreading of contaminants due to subsequent activity. United States v. CDMG Realty Co., 96 F.3d 706, 719 (3d Cir. 2006). In fact, general allegations that a defendant "moved some dirt around" suffice. Id. (citing Portsmouth Redev. and Housing Auth. v. BMI Apartments Assocs., 827 F.Supp. 354, 357-58 (E.D. Va. 1993)). Here, Debtors constructed a 17,000 square foot building on the property at issue. Exhibit Book Exh. C. Such construction was more than enough to cause disposal. Moreover, a defendant may not invoke the "interim" or "innocent" owner defense if it knew or had reason to know that hazardous substances had been disposed at its former property. Acme Printing Ink Co. v. Travelers Cos., 870 F.Supp. 1465, 1480 (E.D. Wis. 1994). Here, based on a review of their own documents, it strains credulity to suggest that Debtors either did not know or had no reason to know of contamination. For instance, in a pre-sale letter, Grace's own counsel expressly referred to a concern about "what, if any, environmental problems may have been caused with [Debtors'] property by the 'dumping' that may have taken place on [a] neighbor's property."[5] Exhibit Book Exh. G. Therefore, Debtors are a potentially responsible party.

---

[5] Other documents demonstrated, before the sale, the extent of the contamination on the neighboring property. For instance, a DEP Memo reveals that, during the period of the sale to Mian, the cleanup process had been "hampered," that attempts to complete the project had been "frustrating," that there had been a major spill in the previous year, and that 30% of the material still awaited removal. Exhibit Book Exh. H. Also, in a December 8, 1986 letter, the Health Officer indicated that he was unable to even estimate the completion date of the cleanup. Id. Further, the record demonstrates that Debtors investigated only the contamination on the neighboring property. They apparently never investigated whether contamination existed on their *own* property. Indeed, had they conducted an

4

9. Second, as noted in the Motion, Litgo did not initiate the District Court Action until 2006; hence, Mian's CERCLA section 113(f) claim could not have arisen pre-petition. Motion ¶ 22.

10. Third, the Landfill Act expressly provides that no person shall contract to sell any land which has been used as a landfill. N.J.S.A. § 13:1E-116(a). The Act contains no time limitation. Id. Also, the Act does not require that the vendor have operated or benefited from the landfill. Id. Under the Act, a vendor's failure to disclose a landfill on subject property renders the real estate contract voidable. Nat'l Standard Co. v. Clifton Avenue Corp., 775 F.Supp. 151, 157 (D.N.J. 1991). In the present matter, Debtors failed to disclose the existence of a landfill to Mian. Exhibit Book Exh. I; Exh. F annexed hereto. Accordingly, Mian may seek avoidance of the purchase.

11. Finally, Mian possesses a post-petition claim; hence, it was not required to file a proof of claim in this case.

**WHEREFORE**, Mian respectfully requests that this Court grant the relief requested.

Dated: August 22, 2008

| | |
|---|---|
| **TRENK, DiPASQUALE, WEBSTER, DELLA FERA & SODONO, P.C.** | **COLE, SCHOTZ, MEISEL FORMAN & LEONARD, PA** |
| Richard D. Trenk | |
| Henry M. Karwowski | _/s/ Patrick J. Reilley_ |
| 347 Mt. Pleasant Avenue, Suite 300 | Patrick J. Reilley (Bar No. 4451) |
| West Orange, NJ 07052 | 1000 N. West Street |
| (973) 243-8600 | Suite 1200 |
| Fax: (973) 243-8677 | Wilmington, DE 19801 |
| Co-Counsel for Mian Realty, LLC | (302) 295-4888 |
| -and- | Fax: (302) 652-3117 |

---

investigation, Debtors themselves would have uncovered the property photographs dating back to the 1930s. Response at 4 n.3