THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: September 12, 2008 at 4:00 p.m.** |
| | ) | **Hearing Date:  September 29, 2008 at 10:00 a.m.** |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT WITH THE TOWN OF ACTON RESOLVING TAX ABATEMENT PETITIONS AND ADDRESSING SEWER BETTERMENT ASSESSMENTS

The Debtors request entry of an order authorizing their entry into a settlement agreement

(the "Settlement Agreement," a copy of which is attached hereto as Exhibit A) with the Town of

Acton, Massachusetts (the "Town of Acton").  The Settlement Agreement resolves real estate tax

abatement petitions (the "Tax Abatement Petitions") and creates a process by which the parties

will proceed to resolve the dispute between them regarding the amount owed by the Debtors with

respect to sewer betterment assessments (the "Sewer Betterment Assessments").  This motion

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

relates to real property owned by the Debtors in the Town of Acton, containing approximately 183.5 acres and consisting of thirteen separately assessed parcels (collectively, "Grace's Acton Property"). In support of this motion, the Debtors respectfully state the following:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Background

3.      The Debtors own Grace's Acton Property, which consists of thirteen parcels of real property located in Acton, Middlesex County, Massachusetts, off Parker Street and Independence Road.   Grace's Acton Property, which was formerly used for multiple manufacturing operations of the Debtors, is currently unused by the Debtors (all of the buildings have been demolished) and has been undergoing environmental remediation for years.

4.      On April 5, 1988, the Town of Acton adopted a Sewer Assessment By-Law (the "By-Law") and amended that By-Law on November 30, 1999.   The By-Law established procedures for assessment of properties to be served by the new Middle Fort Pond Brook Sewer Project (the "Sewer District"). The Sewer District was designed to establish and provide sewer service to portions of the Town of Acton not previously served by a public sewer.

5.      On January 25, 2001, the Town of Acton Board of Selectmen, acting as the sewer commissioners, issued an order for construction (the "Order"), laying out the sewer system, and defining the parcels to be assessed betterments (*i.e.*, the parcels to be included in the sewer district). The Order listed the properties and estimated betterments to be assessed (the "Estimated Assessments"). Six of the Debtors' parcels were included in the sewer district, with the Debtors' portion of the expected cost of the sewer project projected to be $4,499,083.30.

6.      In March 2001, the Town of Acton offered all owners of property which were assigned Estimated Assessments, including the Debtors, the opportunity to pay the Estimated Assessments over 30 years. The Debtors accepted this option and, in so doing, expressly acknowledged that a lien would exist against the property for the unpaid portion of the total Estimated Assessments. At the same time, however, Debtors preserved their right to appeal the Final Assessments that accrued.

7.      On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

8.      On March 20, 2003, the Town of Acton filed two proofs of claim, against Grace and Grace-Conn., respectively, on account of the Estimated Assessments.[2] Because of the lien on the property for the unpaid portion of the total Estimated Assessments, the Proof of Claim was filed as a secured claim.

---

[2]    The Town of Acton filed its proofs of claim numbered 4384 and 4385 relating to the obligations and liabilities of the Debtors arising from the Sewer Betterment Assessments in connection with Grace's Acton Property. Pursuant to an Order Approving Stipulation Concerning Consolidation of Certain Claims (Dkt. No. 16393), claim no. 4385 was expunged as duplicative of claim no. 4384. Claim no. 4384 (the "Proof of

9. On September 13, 2004, the Town of Acton Board of Selectmen issued an order determining final assessments (the "Final Assessments"). The Final Assessments superseded the Estimated Assessments, with the Debtors' portion of the expected cost of the sewer project under the Final Assessments currently projected to be $3,662,677.19. The Debtors accepted the Town of Acton's offer to pay the Final Assessments over 25 years, in quarterly installments commencing on November 1, 2005.

10. On October 6, 2004, the Town of Acton filed a Motion for Relief from the Automatic Stay and For Related Determinations (Dkt. No. 6557). The Town of Acton primarily sought two forms of relief in their motion: 1) permission to issue bills to the Debtors for the Sewer Betterment Assessments and 2) a determination that their claims arose post-petition and, thus, were not subject to the automatic stay.

11. On November 15, 2004, this Court held a hearing on the Town of Acton's motion and heard arguments from both the Town of Acton and the Debtors.

12. On December 13, 2004, this Court signed an Order with Respect to the Town of Acton's Motion for Relief from Automatic Stay and Related Determinations (Dkt. No. 6557) (the "Order"). The Order lifted the stay to allow the Town of Acton to issue bills to the Debtors, but prevented the Town of Acton from taking any action to collect the Sewer Betterment Assessments without further order of the Court. In addition, the Order authorized, but did not direct, the Debtors to make any payments which the Debtors believe may be necessary or desirable under state law to participate in the abatement process. Finally, the Order reserved for future determination the issue of whether the Town of Acton's claim was a pre-petition claim or a post-petition claim.

---

Claim") remains an active open claim for unliquidated damages of "at least $2.1 million." *See* Proof of Claim No. 4384, pg. 2. The Settlement Agreement does not resolve the Proof of Claim but it does establish a procedure for its resolution.

13.    The Debtors have disputed the amount of the Sewer Betterment Assessments since they were originally assessed.  The dispute relates primarily to the parties differing views on the potential use of Grace's Acton Property.  Based on the number of sewer units allocated by the Town of Acton to the Debtors, the Town of Acton assumed that the Debtors parcels could be developed for 1,190,000 square feet of office space.  The Debtors believe that the land's development potential is significantly more limited because (i) a portion of the property has been designated as a Superfund site by the United States Environmental Protection Agency, (ii) access to the property is severely limited, (iii) physical site constraints, such as steep slopes, surface water, and an active railroad commuter line, constrain the Debtors' ability to develop the property, and (iv) the land has been zoned as a "Technology Park" which limits the uses of the site.  Because of these reasons, the Debtors filed with the Town of Acton Board of Selectmen a timely petition for an abatement of the Sewer Betterment Assessments of Grace's Acton Property.

14.    The Town of Acton Board of Selectmen constructively denied the petition of an abatement of the Sewer Betterment Assessments by not taking any action with respect to the petition.  The Debtors appealed this denial to the Middlesex Superior Court (the "Superior Court Action"), and the appeal was stayed on May 17, 2006, pursuant to a joint stipulation of the Debtors and the Town of Acton to stay the appeal while the parties conducted settlement negotiations.

15.    The Sewer Betterment Assessments are due to be paid in quarterly installments, commencing on November 1, 2005, over a 25 year period.  The Debtors had been making quarterly payments of the Estimated Assessments since 2001 as the parties attempted to negotiate a settlement of the dispute.  As a result of a lack of progress in settlement negotiations, the Debtors ceased making payments on the quarterly installments, with the installments accruing on account of the Final Assessments commencing on November 1, 2005.  As of June 30, 2008, for the time period from November 1, 2005 until June 30, 2008, the Debtors have not paid the Town of Acton a total of $537,925.12, inclusive of assessments and interest.

16.    In addition to the Sewer Betterment Assessments, the Debtors have also disputed the amount of the real estate taxes assessed against Grace's Acton Property for the fiscal years 2004, 2005, 2006, 2007 and 2008.  The Debtors have filed with the Massachusetts Appellate Tax Board certain Tax Abatement Petitions for those same years.  The Debtors have paid the real estate taxes on a current basis (as required by Massachusetts law as a prerequisite to seeking an abatement).

17.    The Debtors and the Town of Acton now desire, without any admission of fact, law or liability, to settle their differences with respect to the Tax Abatement Petitions, to cure the outstanding and unpaid Sewer Betterment Assessments accruing up until June 30, 2008 and to agree upon a procedure going forward to resolve the Sewer Betterment Assessments on the terms set forth in the Settlement Agreement and described in more detail below.

**Settlement**

18.     The Settlement Agreement accomplishes four objectives, each of which is described in more detail below.  The Settlement Agreement 1) resolves the Tax Abatement Petitions, 2) involves an agreement by the Debtors not to petition for future tax abatements during the next five years if certain conditions are met, 3) reduces the amount hereafter owed with respect to the Sewer Betterment Assessments by bringing the Debtors current on the assessments, and 4) creates an agreed upon procedure going forward to resolve the Sewer Betterment Assessments on the terms set forth in the Settlement Agreement.

19.     First, the Town of Acton agrees that the tax assessed value of Grace's Acton Property is reduced from its current value of $6,622,200 to $4,000,000.  The reduced value will be applicable retroactively to years 2004, 2005, 2006, 2007 and 2008.  Because of that reduction, the Debtors will be entitled to a refund in the amount of $216,631 (which includes both the principal tax reduction and an interest component).  The Debtors will withdraw their Tax Abatement Petitions, and the Town of Acton will pay the Debtors the refund within 30 days of the effective date of the Settlement Agreement.

20.     Second, the Debtors agree that for a period of five years from the effective date of the Settlement Agreement, not to petition for any tax abatement concerning Grace's Acton Property so long as the dollar amount of the "Annual Tax" on Grace's Acton Property does not exceed the previous fiscal year's assessment by more than three percent (3%).  In the event the Annual Tax on Grace's Acton Property exceeds that amount, the Debtors reserve the right to petition for an abatement of that reassessment of Grace's Acton Property (including both the amount up to 3% and the amount in excess of 3%).

21.     Third, the Debtors agree to "come current" on the Sewer Betterment Assessments. This agreement to pay the past due assessments was required by the Town of Acton as a condition to resolution of the Tax Abatement Petition.    As noted in paragraph 9 above, Massachusetts law provided the Debtors with the ability to extend payment of the Sewer Betterment Assessments over a period of 25 years (payable with interest over 101 quarterly installments). The Debtors accepted this extended payment option, but ceased making payments because of a lack of progress in settlement negotiations.   Since that time, the Debtors have not remained current on the quarterly installments as they have come due.   On December 13, 2004, this Court authorized, but did not direct, the Debtors to make any payments which the Debtors believe may be necessary or desirable under state law to participate in the abatement process. *See* Dkt. No. 6557. Pursuant to that Order, and in order to resolve the Tax Abatement Petitions, the Debtors now agree to pay the Town of Acton a total of $537,925.12 (the "Payment") together with per diem interest in the amount of $172.26 from 6/30/08 to the time of payment.   The Payment represents the past due quarterly installments of the Sewer Betterment Assessments for the time period from November 1, 2005 until June 30, 2008.  Further pursuant to the Order, the Debtors agree to pay in a timely manner (on or before August 1, November 1, February 1 and May 1 of each year) the apportioned quarterly sewer betterment payments on the bettered parcels of Grace's Acton Property as they come due going forward (the "Future Payments" and together with the Payment, the "Payments").

22. Fourth, the Debtors and the Town of Acton agree on certain procedures going forward with respect to the Sewer Betterment Assessments. The Town of Acton agrees that the Payments with respect to the Sewer Betterment Assessments will be without prejudice, limitation or effect to the Superior Court Action. Both parties agree that the Settlement Agreement shall not in any way limit the Debtors' rights to seek abatement of the Sewer Betterment Assessments in the Superior Court Action. In other words, the Payments authorized herein, as provided in paragraph 21 above, are subject to return in the event that the Debtors successfully obtain abatement of the Sewer Betterment Assessments in the Superior Court Action. In order to finally resolve the ongoing sewer betterment issue, within thirty days of the effective date of the Settlement Agreement, the parties shall jointly move the Middlesex Superior Court to lift the stay of the Superior Court Action and remand the petition to the Town of Acton Board of Selectmen, which shall within sixty days of remand open a hearing on the petition and render a decision. This decision will then be the subject of the Superior Court Action.

## Relief Requested

23. By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Debtors' execution of the Settlement Agreement and authorizing the Debtors' performance of its obligations under the Settlement Agreement; including (i) reducing the tax assessed valuation of Grace's Acton Property; (ii) agreeing to forego petitioning for any tax abatement concerning Grace's Acton Property for a period of five years so long as the dollar amount of the "Annual Tax" on Grace's Acton Property does not exceed the previous fiscal year's assessment by more than three percent (3%); (iii) agreeing to "come current" on the Sewer Betterment Assessments by making the Payments described herein; (iv) agreeing on certain procedures with respect to the Sewer Betterment Assessments, and (v) granting such other relief as may be appropriate.

**Basis for Relief**

**Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a)**

24.     This Court has the statutory authority to authorize and approve the Settlement Agreement, and the payment contemplated therein, pursuant to Bankruptcy Code sections 105(a) and 363(b) and Bankruptcy Rule 9019.

25.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...."  11 U.S.C. §363(b)(1).

26.     This Court may authorize the Debtors to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith.  In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by some "articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

27.     A settlement of claims and causes of action by a debtor in possession constitutes a use of the property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999). If a settlement is outside the ordinary course of business of the debtor, it requires the approval of the bankruptcy court pursuant to Bankruptcy Code section 363(b).

28.     Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).     Settlements and compromises are "a normal part of the process of reorganization."     Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citations omitted). Indeed, compromises are favored in bankruptcy since they minimize litigation and expedite the administration of a bankruptcy case. See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., 2006 WL 2842462, at *3 (D. Del. 2006).

29.     Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See Martin, 91 F.3d at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

30.     The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established.  This standard includes consideration of the following four factors:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  Id.; see also In re Nutraquest, Inc., 434 F.3d 639, 644-45 (3d Cir. 2006).

31.     It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities."  Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)).  Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness."  World Health Alternatives, 344 B.R. at 296 (citations omitted); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

**Application of Standards for Approval of a Settlement to the Facts of This Case**

32.     The Debtors have determined that entry into the Settlement Agreement is in the best interests of the Debtors and their estates.  The Settlement Agreement was the product of a rigorous negotiation process, is fair and reasonable, and is within the reasonable range of litigation possibilities.

33.     The Settlement Agreement is in the best interests of the estate for a number of reasons.  First, the Settlement Agreement resolves a dispute over the Tax Abatement Petitions which results in a refund in the amount of $216,631 to the Debtors and prevents the Debtors from having to dedicate additional resources to the resolution of that dispute.

34.     Second, the Settlement Agreement moves both parties closer to a final resolution on the issue of the Sewer Betterment Assessments by bringing the Debtors current on its quarterly Sewer Betterment Assessments and establishing a procedure for the resolution of the Sewer Betterment Assessments.

35.     Third, because the Town of Acton's claim for the Sewer Betterment Assessments is secured by a lien against the property, payment of the Assessments now does not give the Town of Acton preferential treatment as the secured claim must ultimately be paid in full in order for Grace to retain its interest in the Grace Acton Property. By making the payments now, Grace can resolve the litigation over the real estate tax assessments in a favorable manner and reach agreement on a procedure to move forward to resolve the Sewer Betterment Assessments. Further, the Payments that the Debtors will make hereunder will be credited toward the ultimate amount that Grace is found to owe, if any, on the Sewer Betterment Assessments. And, if the Debtors are successful in their appeal, they could obtain return of some or all of the funds they are authorized to pay hereunder.

36.     The dispute with the Town of Acton over the Sewer Betterment Assessments has been ongoing for over seven years and has cost the Debtors a significant amount of money. Grace's Acton Property has been a substantial drain on the Debtors' legal and technical resources which have been tied up for years responding to regulatory actions relating to the Property. Substantial outside legal and consultancy fees have been and will continue to be incurred if this Settlement Agreement is not approved by the Bankruptcy Court. With the approval of this Settlement Agreement, the above-described drain on the Debtors' financial, professional, technical and corporate resources would be significantly reduced.

37.    The Bankruptcy Court's approval of the Settlement Agreement will resolve the Tax Abatement Petitions and put the Sewer Betterment Assessments dispute back on track for final resolution.   The Debtors believe it is of greater benefit to their estates to resolve the uncertainty of the Tax Abatement Petitions than to expend resources litigating them.   Further, the procedures established by the Settlement Agreement for resolution of the Sewer Betterment Assessments will result in a faster and less costly resolution of that issue.   And, to the extent that the Debtors are successful with respect to the Sewer Betterment Assessment issue, the Debtors will be entitled to request a refund of the amounts paid in excess of what will be authorized and paid hereunder.

38.    For the above reasons, the Debtors believe that the Settlement Agreement represents a reasonable settlement of the Tax Abatement Petitions and provides a good procedure for resolution of the outstanding issues regarding the Sewer Betterment Assessments.   Thus, the Bankruptcy Court should approve the Settlement Agreement.

### Conclusion

39.    The proposed Settlement Agreement is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest because it is the best settlement attainable given all the facts and circumstances.   The relief requested in this Motion will resolve a complicated and costly tax issue and provide a reasonable framework for resolving the even more thorny Sewer Betterment Assessment.   Thus, the Settlement Agreement will aid in the expeditious resolution of these chapter 11 cases.   Finally, in the absence of a resolution by settlement, the Debtors will likely incur substantial legal fees and expenses litigating this matter to final judgment.   Accordingly, the Debtors have demonstrated a sound business justification and public interest for the execution and consummation of the Settlement Agreement.

## Notice

40.    Notice of this Motion has been given to:  (i) the office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each of the official committees appointed by the United States Trustee, (iv) counsel to the Future Claimants' Representative; (v) those parties that requested service and notice of papers in accordance with Bankruptcy Rule 2002; and (vi) counsel to the Town of Acton.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

41.    No prior motion or application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit B hereto, (i) approving the Debtors' execution of the Settlement Agreement attached as Exhibit A hereto, (ii) allowing the Debtors to make payments in the sum provided for in the Settlement Agreement, and (iii) granting such other relief as may be just or proper.

Dated: August 25, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession