IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: September 12, 2008, at 4:00 p.m.** |
| | ) | **Hearing Date: September 29, 2008 at 10:00 a.m.** |

## MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO ACQUIRE LIMITED LIABILITY COMPANY INTEREST IN GR 2008 LLC

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby request authority to acquire from a limited liability company expected to be named GR 2008 LLC ("Newco") a limited liability interest in Newco for an aggregate purchase price of up to $2,000,000, pursuant to the Organization Agreement attached hereto as <u>Exhibit A</u> (the "Organization Agreement")[2] and the ancillary agreements attached as exhibits to the Organization Agreement (the "Ancillary Agreements" and collectively with the Organization

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] The Organization Agreement attached hereto is substantially in final form although redacted as explained below. The fully executed final agreement will be filed upon its receipt.

K&E 13280907.2

Agreement the "Organization Documents"). Newco will be formed by Grace and a small start-up technology company (the "Technology Company")[3] to exploit the Technology Company's technology and develop and market products for the concrete industry.

In support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper under 28 U.S.C. § 1408 and 1409.

2.    The statutory predicates for this Motion are §§ 105(a) and 363(b) of Title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rule 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background and Description of the Proposed Transaction

3.    On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

A.    *The Technology*

4.    The Technology Company has technology that Grace believes can be used to develop equipment and software applications of significant value for the concrete industry.

---

[3] Grace has withheld the name of the Technology Partner in order to protect confidentiality of the proposed transaction. The Technology Partner is identified as XYZ in the Organization Agreement attached hereto. The Technology Company's name and related information will be provided to the Official Committees and FCR under the appropriate confidentiality protections and to the Court in camera upon request.

Grace is a major supplier of chemical admixtures to the concrete industry. The equipment and software applications will facilitate automated monitoring and control of the concrete mix in concrete mixing devices.

5.  Grace believes that the developed equipment and associated software applications will generate significant revenues for Newco and will also expand the market for admixture chemicals thereby generating significant new revenues and margin for Grace. Under the contemplated agreement, admixture revenues and profits will be solely Grace's and are specifically excluded from the field of operation contemplated by Newco.

6.  Grace believes that the equipment and software will enable concrete producers to make more efficient use of raw materials in producing more consistent, high value, differentiated, admixture intensive concrete mix designs.

7.  The Technology Company has filed for a number of patents on certain portions of its technology. However, it will not disclose the complete details of its technology to Grace until Grace makes its initial investment in Newco.

8.  The Technology Company needs additional capital to develop its technology and the resulting products. It seeks a strategic partner that can help it develop a second generation of the technology and products by providing knowledge about concrete and the effects of chemical admixtures on the quality of concrete. This expertise will help drive the technology into the target market, thereby growing sales faster than the Technology Company can do alone.

B.  *Grace's Strategic Intent*

9.  Grace and the Technology Company will form Newco as a Delaware limited liability company and will enter into a limited liability company agreement for Newco, in substantially the form attached as Exhibit A to the Organization Agreement, under which they will become the "members" or owners of Newco with equal voting rights. The Technology

Company will provide the basic technology, and Grace will provide the funds for development of the technology and various products, as well as its own technology, expertise and laboratory facilities related to admixtures and management of the physical properties of concrete.

10. As part of the transaction, Grace, the Technology Company and Newco will enter into a joint development agreement (the "Joint Development Agreement"), under which each of the two owners will provide technology and product development services to Newco, and a services agreement (the "Services Agreement"), under which each of the two owners will supply administrative and other services to Newco.[4]

11. As a major supplier of admixtures to the concrete industry, Grace can leverage its channels of distribution, its worldwide customer relationships, its brand, and its technical service and R&D capabilities to generate accelerated market penetration and sales growth for Newco's products. In addition, Grace expects that the Newco products will expand the overall market for concrete admixtures, and thereby expand Grace's admixtures business.

C.  *Summary of the Terms of Investment*

12. Grace will make a capital contribution to Newco consisting of $2,000,000 and a non-exclusive license to Newco for the use of Grace's related technology. Grace will make a $1,000,000 contribution at a first closing expected to occur shortly after this Court's authorization of the transaction and an additional $1,000,000 at a second closing one year later, subject to certain conditions. The Technology Company's contribution will be made at the first

---

[4] Forms of the Joint Development Agreement and the Services Agreement will be attached as exhibits to the final Organization Agreement. Due to the competitively sensitive nature of the information, these exhibits are omitted from the Organization Agreement attached hereto as Exhibit A, but will be provided to the Official Committees and FCR under the appropriate confidentiality protections and to the Court in camera upon request.

closing and will consist of the sole license of its technology to Newco for the purposes of Newco's business, plus $10,000.

13. Newco will pay the Technology Company for the development services that it provides under the Joint Development Agreement and the Services Agreement. Payment for Grace's services will be deferred until the earlier of the second anniversary of the first closing date or the accrual of $2.4 million of deferred payment for Grace's services; thereafter the accrued service payments will be paid to Grace with interest over three years. Newco's obligations to Grace for these payments will be evidenced by a promissory note that will be secured by the assets of Newco.[5]

14. Day-to-day management of Newco will be vested in two managers, one of which will be appointed by each of the two owners. All management decisions will require the consent of both managers. Certain other matters will require the approval of a four-member board of directors, two of which are appointed by each of the owners. The quorum for a directors' meeting is at least one designee of each owner, and all actions require a unanimous vote.

15. The technology developed by Newco and by its owners under the Joint Development Agreement will be the property of Newco.

### Relief Requested

16. By this Motion, the Debtors seek authority to invest in Newco on substantially the terms set forth in the Organization Agreement.

---

[5] Forms of the note and related security agreement will be attached as exhibits to the final Organization Agreement. These exhibits are omitted from the Organization Agreement attached hereto as Exhibit A, but will be made available to the Court, the Official Committees and the FCR upon request.

## Basis for Relief

17. Section 105(a) of the Bankruptcy Code authorizes the court to issue any order "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Additionally, section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

18. A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); see also Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by an articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

19. Under section 363(b) of the Bankruptcy Code, a debtor must establish that it has a valid business purpose for using the estate's property outside the ordinary course of business. See In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); see also Delaware & Hudson Ry. Co., 124 B.R. at 178-79, In re Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656

(S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

20. Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. See Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of the Lionel standard and adding the "good faith" requirement); Delaware & Hudson Ry. Co., 124 B.R. at 176 (adopting Lionel in this district). The proposed transaction meets each of these requirements.

21. *Sound Business Reasons*. Newco's products will enable concrete producers to create more consistent, high value and differentiated admixture intensive concrete, while more efficiently using raw materials than currently available equipment. The cost of raw materials to the concrete producer is expected to rise significantly in the near future making management of materials and efficient production processes more critical to the success of the concrete industry. Grace believes that the new delivery system, by permitting automated control and monitoring of the effect of such admixtures on the concrete mixes as they are being delivered to the construction site, will expand the overall market for concrete admixtures, and thereby expand Grace's admixtures business.

22. *Fair and Reasonable Consideration*. The proposed purchase price and other terms of the transaction are economically attractive to the Debtors. The potential value creation

for the technology in the concrete market is substantial, and Grace has great experience, expertise and ability in developing products for that market.

23. *Good Faith*. The Debtors and Newco have negotiated the terms of the proposed transaction at arm's-length and in good faith. As outlined above, the Debtors believe that the terms of the proposed transaction are fair to the Debtors, their creditors, and their estates.

24. *Adequate and Sufficient Notice*. In satisfaction of the requirements of Rule 2002 of the Bankruptcy Rules, the Debtors intend to serve copies of this Motion in accordance with the process described in the "Notice" section below.

## Conclusion

25. In light of the foregoing, the Debtors have determined in their business judgment that the investment in Newco is fair and reasonable. The Debtors believe that the proposed transaction is in the best interest of their estates, grounded in sound business reasoning and satisfies the "sound business judgment" test for the use of assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code.

## Notice

26. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP lenders, (iii) counsel to all official committees appointed by the United States Trustee, (iv) counsel for the Future Claimants' Representation, (v) counsel for the Technology Company and Newco, and (vi) all those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002. In light of the nature of the requested relief, the Debtors submit that no further notice is required. The Debtors respectfully request that the Court enter an Order authorizing the Debtors to invest in Newco on substantially the terms and conditions described in this Motion.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, (i) authorizing the Debtors to invest in Newco on substantially the terms and conditions described in this Motion and the Organization Agreement and (ii) granting such other and further relief as the Court deems just and proper.

Dated: August 25, 2008

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

*[signature]*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession