# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **W.R. Grace & Co., et al.** | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |

**TWENTY-NINTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM APRIL 1, 2008 THROUGH JUNE 30, 2008**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **April 1, 2008 – June 30, 2008** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$653,130.50[1]** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$26,151.33** |
| Fees and Expenses of the Asbestos Issues Expert: | **$38,896.84** |

This is an: ☒ interim  ☐ final application

This is the twenty-eighth quarterly application filed.

---

[1]  Due to an inadvertent error, described more fully in paragraph 10 herein, Stroock failed to identify $140,683.50 as the amount sought in its May 2008 Fee Statement.  The Amount of Compensation reflects this correct amount.

## Attachment A

## Monthly Interim Fee Applications

| Date Filed | Period Covered | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01- 4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01- 7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02- 04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

|  |  |  | Payment Requested |  | Payment Approved |  |
|---|---|---|---|---|---|---|
| July 2, 2002 D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock) | $43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002 D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock) | $114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002 D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock) | $11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002 D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock) | $5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002 D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock) | $771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002 D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock) | $1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003 D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) |  | $60,276.40 | $8,712.16 |
| February 7, 2003 D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) |  | $22,146.80 | $13,332.14 |
| March 26, 2003 D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) |  | $70,511.20 | $1,210.11 |
| April 7, 2003 D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock) | $1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003 D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) |  | $48,130.80 | $6,191.15 |
| June 2, 2003 D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock) | $2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003 D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock) | $3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003 D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock) | $61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003 D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock) | $14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003<br>D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock)<br>$12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003<br>D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock)<br>$10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003<br>D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock)<br>$42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004<br>D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock)<br>$30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004<br>D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock)<br>$27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004<br>D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock)<br>$47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004<br>D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock)<br>$35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004<br>D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004<br>D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock)<br>$1,515.00 (Navigant February)<br>$49,667.00 (Navigant March)<br>$80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004<br>D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock)<br>$78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |
| August 2, 2004<br>D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock)<br>$62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |
| September 9, 2004<br>D.I. 6341 | 7/1/04 – 7/31/04 | $72,394.00 | $3,461.84 (Stroock)<br>$40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |

NY 71685042v1

|  | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 23, 2004 D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004 D.I 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock) $27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004 D.I. 7086 | 10/1/04 – 10/31/04 | $200,155.50 | $1,368.18 (Stroock) $ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005 D.I. 7481 | 11/1/04 – 11/30/04 | $218,608.50 | $14,019.09 (Stroock) $25,102.80 (Navigant October) $27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005 D.I. 7667 | 12/1/04 – 12/31/04 | $235,503.70 | $10,442.92 (Stroock) $62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005 D.I. 8026 | 1/1/05 – 1/31/05 | $187,168.00 | $4,411.55 (Stroock) $15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005 D.I. 8155 | 2/1/05 – 2/28/05 | $108,180.25 | $8,102.85 (Stroock) $18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005 D.I. 8305 | 3/1/05~ – 3/31/05 | $56,941.25 | $287.23 (Stroock) $6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005 D.I. 8562 | 4/1/05- 4/30/05 | $127,695.00 | $3,531.45 (Stroock) $20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005 D.I. 8704 | 5/1/05- 5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |
| August 3, 2005 D.I. 9135 | 6/1/05- 6/30/05 | $114,903.75 | $4,871.74 (Stroock) $34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005 D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock) $2,211.00 (Navigant) | $94,224.60 | $4,299.44 |

NY 71685042v1

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| October 4, 2005 D.I. 9565 | 8/1/05 – 8/31/05 | $106,796.25 | $5,046.99 (Stroock) $18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005 D.I. 10951 | 9/1/05 – 9/30/05 | $67,697.50 | $1,399.68 (Stroock) $11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005 D.I. 11202 | 10/1/05 – 10/31/05 | $98,216.75 | $1,611.30 (Stroock) $11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006 D.I. 11507 | 11/1/05 – 11/30/05 | $104,348.00 | $2,847.45 (Stroock) $71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006 D.I. 11655 | 12/1/05 – 12/31/05 | $96,855.00 | $1,379.53 (Stroock) $20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006 D.I. 11921 | 1/1/06 – 1/31/06 | $73.383.00 | $1,810.85 (Stroock) $14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006 D.I. 12134 | 2/1/06 – 2/28/06 | $105,083.75 | $1,434.62 (Stroock) $25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006 D.I. 12354 | 3/1/06 – 3/31/06 | $145,189.50 | $2,512.81 (Stroock) $25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006    DI. 12558 | 4/1/2006 – 4/30/2006 | $116,817.00 | $2,141.42 (Stroock) $7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006 D.I. 12748 | 5/1/2006 – 5/31/2006 | $121,304.50 | $1,838.71 (Stroock) $17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006 D.I. 12899 | 6/1/2006 – 6/30/2006 | $94,856.50 | $1,869.66 (Stroock) $38,548.75 (Navigant) | $75,885.20 | $40,418.41 |
| August 30, 2006 D.I. 13117 | 7/1/2006 – 7/31/2006 | $97,397.25 | $496.76 (Stroock) $30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006 D.I. 13336 | 8/1/2006 – 8/31/2006 | $131,856.25 | $98.34 (Stroock) $98,317.50 (Navigant) | $105,485.00 | $98,415.84 |
| November 2, 2006 D.I. 13559 | 9/1/2006 – 9/30/2006 | $150,960.00 | $4,147.01 (Stroock) $91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006 D.I. 13838 | 10/1/06 – 10/31/06 | $196,223.50 | $915.14 (Stroock) $147,374.20 (Navigant) | $156,978.89 | $148,289.34 |

NY 71685042v1

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| January 12, 2007<br>D.I. 14292 | 11/1/06 –<br>11/30/06 | $188,638.00 | $3,370.16 (Stroock)<br>$133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007<br>D.I. 14415 | 12/1/06 –<br>12/31/06 | $99,832.00 | $5,752.89 (Stroock)<br>$55,245.22 (Navigant) | $79,865.60 | $60,998.11 |
| March 8, 2007<br>D.I. 14810 | 1/1/07 –<br>1/31/07 | $77,582.00 | $962.06 (Stroock)<br>$90,474.74 (Navigant) | $62,065.60 | $91,436.80 |
| April 10, 2007<br>D.I. 15132 | 2/1/07 –<br>2/28/07 | $119,140.50 | $3,092.88 (Stroock)<br>$77,301.25 (Navigant) | $95,312.40 | $80,394.13 |
| May 1, 2007<br>D.I. 15457 | 3/1/07 –<br>3/31/07 | $135,228.00 | $6,635.25 (Stroock)<br>$104,674.53 (Navigant) | $108,182.40 | $111,309.78 |
| June 22, 2007<br>D.I. 16136 | 4/1/07 –<br>4/30/07 | $177,646.00 | $815.81 (Stroock)<br>$173,437.45 (Navigant) | $142,116.80 | $174,253.26 |
| July 17, 2007<br>D.I. 16309 | 5/1/07 –<br>5/31/07 | $205,937.25 | $6,405.01 (Stroock)<br>$162,431.03 (Navigant) | $164,749.80 | $168,836.04 |
| August 10, 2007<br>D.I. 16528 | 6/1/07 –<br>6/30/07 | $225,650.50 | $5,929.97 (Stroock)<br>$200,294.81 (Navigant) | $180,520.40 | $206,224.78 |
| September 14, 2007<br>D.I. 16822 | 7/1/07 –<br>7/31/07 | $157,268.50 | $4,021.65 (Stroock)<br>$208,116.54 (Navigant) | $125,814.80 | $212,138.19 |
| October 1, 2007<br>D.I. 16959 | 8/1/07 –<br>8/31/07 | $145,866.50 | $3,354.61 (Stroock)<br>$210,152.54 (Navigant) | $116,693.20 | $213,507.15 |
| November 16, 2007<br>D.I. 17394 | 9/1/07 –<br>9/30/07 | $206,908.50 | $3,056.89 (Stroock) | $165,526.80 | $3,056.89 |
| December 5, 2007<br>D.I. 17548 | 10/1/07 –<br>10/31/07 | $288,976.50 | $22,324.58 (Stroock)<br>$325,509.63 (Navigant) | $231,181.20 | $303,185.05 |
| January 11, 2008<br>D.I. 17803 | 11/1/07 –<br>11/30/07 | $249,372.50 | $32,780.40 (Stroock)<br>$162,394.93 (Navigant) | $199,498.00 | $195,175.33 |
| February 1, 2008<br>D.I. 17957 | 12/1/07 –<br>12/31/07 | $116,522.50 | $57,717.92 (Stroock)<br>$47,444.43 (Navigant) | $93,218.00 | $105,162.35 |
| March 4, 2008<br>D.I. 18202 | 1/1/08 –<br>1/31/08 | $201,472.50 | $3,282.80 (Stroock)<br>$86,070.26 (Navigant) | $161,178.00 | $89,353.06 |

NY 71685042v1

|  |  | Payment Requested |  | Payment Approved |  |
|---|---|---|---|---|---|
| April 5, 2008 D.I. 18450 | 2/1/08 – 2/29/08 | $195,491.00 | $5,922.25 (Stroock) $73,924.16 (Navigant) | $156,392.80 | $79,846.41 |
| April 29, 2008 D.I. 18639 | 3/1/08 – 3/31/08 | $275,659.00 | $11,217.17 (Stroock) $69,201.53 (Navigant) | $220,527.20 | $80,418.70 |
| June 4, 2008 D.I. 18862 | 4/1/08 4/30/08 | $298,888.00 | $10,143.60 (Stroock) $38,800.00 (Navigant) | $239,110.40 | $48,943.60 |
| July 1, 2008 D.I. 19032 | 5/1/08 5/31/08 | $138,683.50 [1] | $3,649.95 (Stroock) | $110,946.80[2] | $3,649.95 |
| August 4, 2008 D.I. 19224 | 6/1/08 6/30/08 | $213,559.00 | $12,357.78 (Stroock) $96.84 (Navigant) |  |  |

---

[1]  See paragraph 10 herein.

[2]  See paragraph 10 herein.

7

**Quarterly Fee Applications**

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01– 6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43[*] | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[3] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[4] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]  These amounts relate to the Committee's Asbestos Issues Expert.

[3]  Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[4]  Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003<br>D.I. 3815<br>(Eighth) | 1/1/03 –<br>3/31/03 | $224,358.50 | $9,424.04<br>$1,077.80* | $224,615.50[5] | $9,424.04<br>(Stroock)[3]<br>$1,077.80<br>(Chambers)[3] |
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 –<br>6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[6] | $2,726.28<br>(Stroock)[4]<br>$67,628.50<br>(Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 –<br>9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[7] | $4,339.46<br>(Stroock)[5]<br>$36,865.19<br>(Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 –<br>12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[8] | $5,922.67<br>(Stroock)[6]<br>$100,349.50<br>(Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 –<br>3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[9] | $9,965.36<br>(Stroock)[7]<br>$83,147.07<br>(Navigant)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 –<br>6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | $353,629.50[10] | $7,760.42<br>(Stroock)[8]<br>$272,474.16<br>(Navigant)[8] |

---

[5]   Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[6]   Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[7]   Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[8]   Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[9]   Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[10]   Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

NY 71685042v1

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | $226,702.50[11] | $6,705.08 (Stroock)[9] $67,569.50 (Navigant)[9] |
| February 22, 2005 D.I. 7851 (Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19 $140,422.11* | $648,355.70[12] | $25,830.19 (Stroock)[10] $140,422.11 (Navigant)[10] |
| May 16, 2005 D.I. 8468 (Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23 $40,104.23* | $349,644.00 | $12,746.23 (Stroock)[13] $40,104.23 (Navigant) |
| August 19, 2005 D.I. 9225 (Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40 $54,204.34* | $340,096.25[14] | $9,261.40 (Stroock) $54,204.34 (Navigant) |
| November 18, 2005 D.I. 11118 (Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71 $31,958.50* | $291,843.50[15] | $8,534.71 (Stroock) $31,958.50 (Navigant) |
| February 15, 2006 D.I. 11798 (Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28 $103,498.49* | $299,419.75[16] | $5,838.69 (Stroock $103,498.49 (Navigant) |

---

[11]   Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[12]   Court Order dated June 29, 2005 approved fees in the amount of $648,335.70 and expenses in the amount of $166,252.30.

[13]   Court Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[14]   Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[15]   Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[16]   Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 26, 2006<br>D.I. 12533<br>(Twentieth) | 1/1/2006 –<br>3/31/2006 | $323,566.25 | $5,758.28<br>$65,934.98* | $323,451.25[17] | $5,758.28<br>(Stroock)<br>$64,810.58<br>(Navigant) |
| August 17, 2006<br>D.I. 13006<br>(Twenty-First) | 4/1/2006 –<br>6/30/2006 | $332,978.00 | $5,849.79<br>$63,467.50* | $332,978.00[18] | $5,849.70<br>(Stroock)<br>$63,467.50<br>(Navigant) |
| November 29,<br>2006<br>D.I. 13835<br>(Twenty-Second) | 7/1/2006 –<br>9/30/2006 | $380,213.50 | $4,742.11<br>$219,776.61* | $380,213.50[19] | $4,742.11<br>(Stroock)<br>$219,776.61<br>(Navigant) |
| March 1, 2007<br>D.I. 14717<br>(Twenty-Third) | 10/1/2007 –<br>12/31/07 | $484,693.50 | $10,038.19<br>$336,058.12* | $484,693.50[20] | $10,038.19<br>(Stroock)<br>$336,058.12<br>(Navigant) |
| June 4, 2007<br>D.I. 15949<br>(Twenty-Fourth) | 1/1/07 -<br>3/31/07 | $331,950.50 | $10,690.15<br>$272,450.52* | $331,950.50[21] | $10,690.15<br>(Stroock)<br>$272,450.52<br>(Navigant) |
| August 30, 2007<br>D.I. 16710<br>(Twenty-Fifth) | 4/1/2007 -<br>6/30/2007 | $609,233.75 | $13,150.79<br>$536,163.29* | $609,233.75[22] | $13,150.79<br>(Stroock)<br>$536,163.29<br>(Navigant) |

[17] Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the amount of $71,130.16.

[18] Court Order dated December 18, 2006 approved fees in the amount of $332,978.00 and expenses in the amount of $69,317.29.

[19] Court Order dated May 3, 2007 approved fees in the amount of $380,213.50 and expenses in the amount of $224,518.72.

[20] Court Order dated June 20, 2007 approved fees in the amount of $484,693.50 and expenses in the amount of $346,096.31.

[21] Court Order dated September 24, 2007 approved fees in the amount of $331,950.50 and expenses in the amount of $283,140.67.

[22] Court order dated December 13, 2007 approved fees in the amount of $609,233.75 and expenses in the amount of $549,314.08.

NY 71685042v1

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| December 12, 2007<br>D.I. 17625<br>(Twenty-Sixth) | 7/1/2007 –<br>9/30/2007 | $510,043.50 | $10,433.15<br>$418.269.08* | $508,758.50[23] | $10,433.15<br>(Stroock)<br>$418,269.08<br>(Navigant) |
| March 5, 2008<br>D.I. 18222<br>(Twenty-Seventh) | 10/1/07 –<br>12/31/07 | $654,871.50 | $112,822.90<br>$535,348.99* | $654,871.50[24] | $112,650.85<br>(Stroock)<br>$535,348.99<br>(Navigant) |
| May 27, 2008<br>D.I. 18789<br>(Twenty-Eighth) | 1/1/08<br>3/31/08 | $672,622.50 | $20,422.22<br>$229,195.95* | | |

---

[23]  Court order dated March 12, 2008 approved fees in the amount of $508,758.50 and expenses in the amount of $428,702.23.

[24]  Court order dated June 23, 2008 approved fees in the amount of $654,871.50 and expenses in the amount of $647,999.84.

NY 71685042v1

WR GRACE & CO
ATTACHMENT B
APRIL 1, 2008 - JUNE 30, 2008

| | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Greenberg, Mayer | 0.7 | $ 825 | $       577.50 | 10 |
| Kruger, Lewis | 59.9 | 945 | 56,605.50 | 39 |
| Pasquale, Kenneth | 81.7 | 775 | 63,317.50 | 9 |
| Speiser, Mark A. | 13.3 | 875 | 11,637.50 | 21 |
| | | | | |
| | | | | |
| **Associates** | | | | |
| Beal, Abigail M. | 83.1 | 440 | 36,564.00 | 1 |
| Berg, Madelaine | 17.0 | 650 | 11,050.00 | 27 |
| Eichler, Mark | 6.8 | 635 | 4,318.00 | 10 |
| Gutierrez, James S. | 63.3 | 490 | 31,017.00 | 5 |
| Krieger, Arlene G. | 546.0 | 650 | 354,900.00 | 24 |
| Lieberman, Nina E. A. | 1.0 | 620 | 620.00 | 5 |
| Millman, Sherry M. | 1.8 | 650 | 1,170.00 | 24 |
| Strauss, Joseph E. | 73.9 | 595 | 43,970.50 | 7 |
| | | | | |
| | | | | |
| **Paraprofessionals** | | | | |
| Holzberg, Ethel H. | 79.6 | 270 | 21,492.00 | 36 |
| McHugh, Steven R. | 7.9 | 210 | 1,659.00 | N/A |
| Mohamed, David | 118.3 | 175 | 20,702.50 | 18 |
| Sasson, Gabriel | 16.7 | 210 | 3,507.00 | N/A |
| Williams Herman, Onika A. | 24.9 | 210 | 5,229.00 | N/A |
| | | | | |
| | | | | |
| **Sub Total** | **1,195.9** | | **668,337.00** | |
| **Less 50% Travel** | **(21.0)** | | **(15,206.50)** | |
| | | | | |
| | | | | |
| **Total** | **1,174.9** | | **$ 653,130.50** | |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |

## TWENTY-NINTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED <u>DURING THE PERIOD FROM APRIL 1, 2008 THROUGH JUNE 30, 2008</u>

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1] The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA  Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.      By this application (the "Application"), Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from April 1, 2008 through June 30, 2008 (the "Compensation Period") in the aggregate amount of $653,130.50 representing 948.5 hours of professional services and 247.4 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $26,151.33, as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in the aggregate amount of $38,896.84 in respect of services rendered primarily in the months of March and April, 2008.

2.      Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and has continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

2

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.    The Debtors operate a worldwide specialty chemicals and materials business and employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues.  The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.    On April 12, 2001, the United States Trustee formed the Committee.  During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  On December 3, 2003, the United States Trustee filed a second amended notice of appointment of the Committee.  On July 10, 2006, the United States Trustee filed a third amended notice of appointment of the Committee.

6.    The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims (the "ACC") and asbestos-related property damage claims (the "PD Committee") against the Debtors (collectively, the "Asbestos Claim Committees").  On June 18, 2001, the United States Trustee

---

[2]    The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.      By order dated May 24, 2004, the Court authorized the appointment of a legal representative for future asbestos claimants (the "Futures Representative").

8.      By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001.  The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.      This is the twenty-ninth quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee.  This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

10.     In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the April 2008 fee statement.  At the time of the filing of this Application, Stroock had also received payment for 80% of the amount of fees of $138,683.50 identified in the May 2008 fee statement and 100% of Stroock's expenses requested, and not objected to, in the May 2008.  However, the May 2008 fee statement inadvertently stated the amount of fees sought as $138,683.50, rather than the amount of $140,683.50, an amount fully supported in the fee statement.  The error resulted from

4

incorrectly applying a $2,000 overpayment credit for the Debtors to the $140,683.50 total fee amount. Accordingly, Stroock has not yet received full payment for 80% of the total amount of compensation supported by the May 2008 fee statement. Stroock seeks to correct this error in this quarterly application and reflects the total amount of compensation sought in this Application as $653,130.50. Stroock has not received payment for the fees and expenses requested in the June 2008 fee statement for which a certificate of no objection has not yet been filed. In addition, Stroock has received payment from the Debtors representing the fees and expenses of Navigant Consulting, Inc. ("Navigant"), formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, sought in the April 2008 fee statement in the aggregate amount of $38,880.00. Applicant has received no other payments and no promises for payment from any source for services rendered in connection with these cases for the months encompassing this Compensation Period other than as immediately set forth above. There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

11.     As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.     Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal

5

disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13.     Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee. Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

14.     Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

15.     Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

16.     The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services

6

and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is

merely an attempt to highlight certain of these areas in which services were rendered to the

Committee, as well as to identify some of the problems and issues to which Stroock was required

to direct its attention.

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17.     As reflected in prior compensation applications, in mid-November 2004, the

Debtors filed a reorganization plan and numerous related pleadings including their motion

seeking the estimation of asbestos claims and the establishment of a schedule and procedures for

carrying out the estimations (the "Estimation Motion"), and their motion to establish post-

confirmation litigation protocols for liquidating asbestos claims.

18.     The Court subsequently approved a form of case management order to govern the

pre-confirmation estimation of asbestos personal injury claims (the "PI CMO") and several

amendments thereto (the "Amended PI CMOs") and the related form of questionnaire (the

"Questionnaire") to be used by asbestos personal injury claimants who had commenced pre-

petition litigation against the Debtors (the "PI Pre-Petition Litigation Claimants"), and two case

management orders for property damage claims (as amended, the "PD CMOs"); one to govern

the Debtors' claims objection process and the other to govern the pre-confirmation estimation of

property damage claims ("PD Claims"). July 12, 2006 was the deadline set for PI Pre-Petition

Litigation Claimants to return completed Questionnaires. November 15, 2006 was the deadline

set for PI-Pre-Petition Litigation Claimants to file proofs of claim. The Amended PI CMOs

established pre-trial dates and deadlines and trial dates to govern the estimation of asbestos

personal injury claims (the "PI Estimation"). Pursuant to the pre-trial schedule established by

7

the Amended PI CMOs at least 35 expert and fact witness depositions were held prior to the

commencement of the PI Estimation trial in the prior compensation period.

19.     Although a dozen days of the PI Estimation trial were scheduled to take place

during this Compensation Period, only one day of trial took place.  On April 7, 2008, informed

the Court that they had reached an agreement with the ACC, the FCR and the Equity Committee

on a resolution of the Debtors' asbestos liabilities (the "Proposed PI Resolution") and made

public a term sheet (the "Term Sheet") setting forth terms of such parties' proposed treatment of

classes of claims and equity holders under a plan of reorganization to be filed embodying the

Proposed PI Resolution.

20.     Duing this Compensation Period Stroock prepared for the first several days of the

PI Estimation trial scheduled to take place during the beginning of this Compensation Period and

attended the trial date that did take place, as well as the April 7, 2008 hearing.  In connection

therewith, Stroock reviewed all trial-related documents, pleadings, issues and PI expert

testimony and discussed the trial with Navigant, the Committee's Asbestos Issues Expert.  As a

result of the Proposed PI Resolution of the Debtors' asbestos personal injury liabilities (the

"Proposed Asbestos Resolution"), the PI Estimation trial was suspended, subject to being

restarted if the Proposed PI Resolution fell apart or a plan embodying the Term Sheet was not

confirmed.

21.     In addition during this Compensation Period, Stroock attended to the several U.S.

and Canadian ZAI claims-related motions scheduled to be heard by the Court during the period,

including the U.S. ZAI Claimants' brief for authority to file a class proof of claim, and the

8

Debtors' motion seeking to establish a proof of claim bar date for ZAI Claims, and the various responses and replies filed thereto.

22.    Further during this Compensation Period, Stroock attended to the memorandum opinions and orders issued by the Court addressing whether to expand the existing preliminary injunction motion in these cases to encompass actions against the State of Montana and separate actions against BNSF, the motions for leave to appeal same and the responses thereto. Stroock also attended to the Court's memorandum decision denying Anderson Memorial Hospital's pleadings seeking certification of two property damage classes, and subsequent responsive pleadings. Stroock has expended 34.2 hours on this category for a fee of $23,298.50.

### Business Operations -- Category 0013

23.    During this Compensation Period, the Debtors filed a motion seeking authorization to borrow against certain company owned life insurance policies ("COLI") and forwarded a draft motion seeking authorization to establish a long term incentive program ("LTIP") for key employees for the 2008 – 2010 period containing terms that differed from those in the several prior LTIPs approved by the Court. Stroock reviewed the LTIP and COLI motions and communicated with Capstone with respect to additional information to be requested from the Debtors and their financial advisors. Stroock also attended to Capstone's draft report to the Committee on the Debtors' 2008 Business Plan and first quarter 2008 operations and discussed the same with Capstone. Stroock has expended 4.4 hours on this category for a fee of $2,860.00.

### Case Administration -- Category 0014

24.    As reported in prior monthly compensation applications, these chapter 11 cases were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to

9

Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L. Buckwalter following Judge Wolin's recusal from these cases.

25.     During this Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the increasing number of pending adversary proceedings and appeals, to ensure that the Committee was fully informed about all pending motions, adversary proceedings and appeals and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable. Stroock continued to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests.

26.     During this Compensation Period, Stroock also attended to the Fee Auditor's initial report on Stroock's 27th quarterly fee application, and the Fee Auditor's supplemental information request and prepared responses to each. Stroock has expended 146.1 hours on this category for a fee of $33,012.00.

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

27.     During this Compensation Period, the Debtors filed an objection to the proofs of claim filed by the agent bank on behalf of holders of bank debt under the Debtors' two $250 million pre-petition Credit Agreements, focusing on the bank debt holders' unsecured claims for post-petition interest at the default rate. As reflected in the services rendered by Stroock in other categories in the Application, the Committee, which includes in its constituency the holders of bank debt, discussed the Debtors' Objection and determined to file a response in opposition to it. Some of the services relating to Stroock's preparation of that response, including research-related services, and communications with counsel for an ad hoc committee of certain bank debt

10

holders are in this category and some are elsewhere in the Application. Stroock has expended 84.4 hours on this category for a fee of $51,945.50.

### Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017

28.     During this Compensation Period, Stroock communicated with the members of the full Committee through numerous memoranda, telephone and conference calls. In order to keep the Committee fully informed of all of the pending matters in these cases, and thus enable the Committee to take informed positions on those issues, Stroock reviewed and summarized the motions, other pleadings and notices filed by the Debtors and other parties in interest in these cases and the objections and responses filed, raised issues the Committee should be aware of, made recommendations to the Committee concerning appropriate actions to be taken with regard to the pleadings and communicated with members of the Committee regarding the positions to be taken. In addition, Stroock engaged counsel and other representatives for the Debtors, and other parties and movants, as applicable, with the Committee's questions, concerns and comments, negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders, stipulations and settlement agreements.

29.     As previously reported in this Application, at the very beginning of this Compensation Period, the Debtors informed the Committee of the Proposed PI Resolution and the Term Sheet embodying it and the treatment of classes of creditors and interest holders in a new plan to be prepared by the Debtors and the other parties to the Term Sheet. Stroock discussed the Proposed PI Resolution and the Term Sheet with the Committee and the Committee's financial advisors, met with the Debtors' representatives to discuss the treatment of unsecured creditors pursuant to the Term Sheet, discussed the treatment with representatives for an ad hoc group of bank debt holders that formed and with holders of trade debt, and rendered

11

services, including case law review, on behalf of the Committee analyzing post-petition interest and other plan-related issues relating to the treatment of unsecured creditors.

30.    In addition, as already reported in this Application, during this Compensation Period, Stroock reviewed the Debtors' Objection to the bank debt holders' claims for post-petition interest, discussed the Objection with the Committee and rendered services in this category in connection with preparing the Committee's response in opposition to the Objection.

31.    Also during this Compensation Period, Stroock prepared memoranda to the Committee discussing the hearings held before Judge Fitzgerald and the rulings issued by the Court and addressing the many pleadings and other materials filed with the Court, and the results of the various settlement conferences and mediations that took place with respect to ZAI and other PD claims.  In addition to the Term Sheet and the Debtors' Objection, the matters addressed in these memoranda included (i) the various ZAI claim-related motions filed including, the motion filed by the Debtors seeking to establish a bar date and related notice program for ZAI claims, the motion filed by the ZAI Claimants seeking to have the Court recognize the representatives of a putative class and authorizing the representatives to file a class proof of claim, and the responses and replies filed thereto, (ii) the Debtors' motion involving the settlement of the United States' claims with respect to the clean-up of the area surrounding the Debtors' former Libby, Montana mine site (the "Libby Site Settlement") and the Government's response to the public comments received to the settlement, (iii) the Debtors' motion seeking approval for the settlement with the State of Montana of the Libby Site related environmental claims filed by Montana's Department of Environmental Quality and (iv) the Memorandum Decision issued by the Court denying with prejudice Anderson Memorial Hospital's motion

12

seeking to have the Court certify two classes of property owners, and the appeal taken from that order.

32.    Further during this Compensation Period, Stroock and the Committee had a conference call and a meeting with Debtors' representatives to discuss the Libby Site Settlement, and Stroock and the Debtors' representatives engaged in a number of conference calls during which pending motions, Court hearings, and the resolution of outstanding claims and upcoming matters were discussed.

33.    Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases, to participate in the estimation proceedings and in the confirmation of a plan providing appropriate treatment for the creditors represented by the Committee.  Stroock has expended 485.5 hours on this category for a fee of $288,981.50.

## Fee Application, Applicant -- Category 0018

34.    During this Compensation Period, Stroock prepared its fee statements for the months of February 2008, March 2008, April 2008 and May 2008 and related notices, affidavits of service and certifications of no objection where applicable.  Stroock also prepared its Twenty-Eighth Quarterly Fee Application covering the period from January 1, 2008 through March 31, 2008 (the "prior compensation application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court.  Stroock has expended 86.8 hours on this category for a fee of $34,570.00.

13

## Creditor Inquiries -- Category 0019

35.    During this Compensation Period, Stroock responded to inquiries from unsecured creditors with respect to the status of these cases, the Proposed PI Resolution and Term Sheet, and the Debtors' Objection, among other matters.  Stroock has expended 17.3 hours on this category for a fee of $13,275.00.

## Fee Application, Others -- Category 0020

36.    During this Compensation Period, Stroock prepared notices, affidavits of service and certifications with respect to Capstone's monthly fee statements for the months of February 2008 and March 2008 and with respect to Capstone's Seventeenth Quarterly Fee Application. Stroock also attended to fee applications of other professionals retained in these cases and to final reports issued by the Fee Auditor.  Stroock has expended 13.7 hours on this category for a fee of $6,292.50.

## Employee Benefits, Pension – Category 0021

37.    During this Compensation Period, the Debtors filed a motion seeking authorization to make minimum contribution payments to their defined benefit retirement plans in an approximate amount of $24 million during the period from July 15, 2008 to January 15, 2009 (the "Pension Motion").  Stroock reviewed the Pension Motion and discussed with Capstone the preparation of an information request to the Debtors' and their financial advisors. Also, as reflected elsewhere in this Application, the Debtors filed a motion seeking to implement a revised form of LTIP for the 2008-2010 period.  Stroock rendered some services in connection with this motion in this category in the Application.  Stroock has expended 3.4 hours on this category for a fee of $2,210.00.

14

## Environmental Matters/Regulations/Litigation -- Category 0022

38.     As reflected in prior compensation applications, the Debtors had pending before

the Court at the beginning of this Compensation Period a number of motions seeking approval

for proposed settlements of environmental claims asserted against the Debtors.  These included

the settlement of the United States' claims with respect to the cleanup of the area surrounding the

Debtors' former Libby, Montana mine site (the "Libby Site Settlement") and the settlement of

the United States' claims for remediation at the Debtors' Curtis Bay Facility.  In addition the

Debtors had filed a motion seeking to transfer 10 environmentally contaminated properties to an

unrelated third party (the "ELT Transaction").

39.     During this Compensation Period, Stroock continued to seek additional

information and documentation from Debtors' representatives explaining and supporting these

settlements and transactions, including changes made to the settlements and the ELT

Transaction, participated in a number of conference calls with Debtors' representatives,

including several conference calls with the Committee, and as applicable with representatives for

the United States discussing one of these matters.  In addition, Stroock attended to additional

relevant case law and pleadings in respect of these matters.

40.     In addition, during this Compensation Period, Stroock attended to the Debtors'

motion seeking approval for their proposed settlement of the claims asserted by the Montana

Department of Environmental Quality related to the Libby, Montana mine site (the "Montana

Settlement"), and the motion filed by Mian Realty seeking to serve a third party complaint

against the Debtors with respect to litigation involving possibly environmental contaminated

property acquired by Mian from a successor in interest to the Debtors.  Stroock has reviewed

these motions and related documentation, communicated with the Debtors regarding these

15

matters and prepared memoranda on these matters for the Committee. Stroock has expended 149.1 hours on this category for a fee of $87,427.50.

### Travel – Non Working -- Category 0035

41.    Stroock's fees in this category during this Compensation Period relate to Stroock attorneys traveling (i) from Pittsburgh, PA after the PI Estimation trial held on April 1, 2008, (ii) to and from Wilmington, DE for the omnibus hearings before Judge Fitzgerald on April 21, 2008, April 22, 2008 and June 23, 2008 and (iii) to and from Pittsburgh, PA for the hearing on April 7, 2008 and for the omnibus hearing on June 2, 2008. Stroock has expended 42.1 hours on this category for a fee of $30,413.00 for which Stroock is seeking payment in the amount of $15,206.50.

### Plan and Disclosure Statement -- Category 0036

42.    As reported elsewhere in the Application, at the very beginning of this Compensation Period, the Debtors informed the Court of the Proposed PI Resolution and the Term Sheet to be embodied in a plan of reorganization to be filed. Stroock rendered services in this category attending to the Term Sheet, discussing it and relevant plan issues with the Committee, with counsel to an ad hoc group of certain bank debt holders, with holders of trade debt and with Capstone. Further during this Compensation Period, Stroock attended to certain plan treatment issues relevant for unsecured creditors, reviewing case law and other materials in connection therewith, and reviewed additional analyses prepared by Capstone. Stroock expended 64.7 hours on this category for a fee of $48,606.00.

16

### Hearings -- Category 0037

43.    During this Compensation Period, Judge Fitzgerald held (i) three omnibus hearings; two in Wilmington, DE and one in Pittsburgh, PA, (ii) a separate hearing in Wilmington, DE addressing solely ZAI claim-related motions, (iii) one PI Estimation trial day, and the April 7, 2008 hearing and related chambers' conference, both in Pittsburgh, PA. Stroock reviewed each of the agenda notices and all relevant pleadings, orders, stipulations, depositions, pre-trial motions and briefs and other documentation in advance of these hearings and participated in a number of conference calls discussing these matters, as applicable. Stroock prepared for and attended the hearings, and advocated the Committee's positions, as appropriate. After the hearings, Stroock, as reflected elsewhere in this Application, prepared memoranda informing the Committee of the arguments made and testimony given at the hearings and, where applicable, the Court's rulings. Stroock expended 48.0 hours on this category for a fee of $34,887.50.

### Employment Applications, Others -- Category 0040

44.    During this Compensation Period, the FCR filed an application seeking authorization to modify his employment of his financial advisor, Piper Jaffrey. Stroock reviewed the motion and the US Trustee's objection, and the subsequent motion by the FCR seeking to retain another financial entity as co financial advisor with Piper Jaffrey to address the US Trustee's objection. Stroock also reviewed the Debtors' motion to expand the scope of the services to be rendered by Reed Smith. Stroock expended 2.4 hours on this category for a fee of $1,560.00.

17

**Tax Issues – Category 0047**

45.      During this Compensation Period, the Debtors filed a motion seeking authority to

settle a dispute with the Internal Revenue Service relating to approximately $11 million of

credits.  Stroock reviewed the motion and related documentation, engaged in a conference call

with Debtors' representatives and prepared a memorandum on this matter for the Committee.  In

addition, Stroock obtained additional information from Debtors' counsel and attended to

Capstone's draft memorandum for the Committee discussing the motion filed by the Debtors

during the prior compensation period seeking authorization to currently pay a dozen real

property tax claims.  Stroock also prepared memoranda for the Committee discussing these

matters.  Stroock expended 13.8 hours on this category for a fee of $8,998.00.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

46.      The factors to be considered in awarding attorneys fees have been enumerated in

In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547

F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts.  Stroock

respectfully submits that a consideration of these factors should result in this Court's allowance

of the full compensation sought.

> The Time and Labor Required.  The professional services rendered by
> Stroock on behalf of the Committee have required the expenditure of
> substantial time and effort, as well as a high degree of professional
> competence and expertise, in order to deal with the complex issues
> encountered by the Committee with skill and dispatch.  Occasionally,
> Stroock has been required to perform these services under significant time
> constraints requiring work late into the evening and on weekends.  The

18

services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions.  Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered.  In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly.  Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case.  Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients.  However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

The Customary Fee.  The fee sought herein is based upon Stroock's normal hourly rates for services of this kind.  Stroock respectfully submits

19

that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

Whether the Fee is Fixed or Contingent.  Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and

NY 71685042v1

has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings. Stroock's experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation, ERISA, tax, environmental and intellectual property law areas to perform the wide ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

Nature and Length of Professional Relationship. As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

47.    The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

48.    With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the court should take into consideration, inter alia, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title. Id. The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

49.    The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 1,195.9 hours. Such services have a

22

fair market value of $653,130.50. After crediting an overpayment of $2,000 previously made by the Debtors, Stoock seeks payment in the amount of $651,130.50. The work involved, and thus the time expended, was carefully assigned in light of the experience, expertise and familiarity with the issues in these cases required for a particular task.

50.    As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

51.    In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $26,151.33 for which Stroock respectfully requests reimbursement in full. The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters. Approximately $6,200 of the total amount for which reimbursement is sought are costs incurred by Stroock for Travel Expenses – Lodging, Travel Expenses – Transportation, and Travel Expenses – Meals of Stroock attorneys in connection with attending the omnibus and PI Estimation hearings before the Court during this Compensation Period. Stroock has endeavored to minimize to the fullest extent possible those expenses incurred to enable Stroock to devote time beyond normal office hours to matters that imposed extraordinary time demands. Attached hereto as Exhibit "D" is a summary chart reflecting each category of disbursement for which Stroock seeks reimbursement.

52.    Stroock's billing rates do not include charges for photocopying, telephone and telecopy toll charges, computerized research, travel expenses, "working meals", secretarial

23

overtime, postage and certain other office services, because the needs of each client for such services differ. Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

53.      Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

54.      Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment in the aggregate amount of $38,896.84, for the fees and expenses of Navigant for the asbestos issues-related services rendered on behalf of the Committee and invoiced during this Compensation Period.

55.      No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

56.      Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

57.      No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

NY 71685042v1

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

the allowance of compensation for professional services rendered to the Committee during the period from April 1, 2008 through and including June 30, 2008 in the amount of $653,130.50, for which Stroock seeks payment in the amount of $651,130.50;

the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from April 1, 2008 through and including June 30, 2008 in the amount of $26,151.33;

the payment of the fees and expenses of the Asbestos Issues Expert employed by the Committee primarily incurred in the months of March and April 2008 in the aggregate amount of $38,896.84;

authorizing and directing the Debtors to pay to Stroock each of the amounts set forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
August 26, 2008

STROOCK & STROOCK & LAVAN LLP

_____
Lewis Kruger
Kenneth Pasquale
Members of the Firm
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

25

NY 71685042v1

Co-Counsel for the Official Committee of
Unsecured Creditors of W. R. Grace & Co., <u>et</u> <u>al</u>.

26