# EXHIBIT 1

# PART 3 OF 3

EXHIBIT C
---------

FORM OF BID LOAN CONFIRMATION

_____, _____

The Chase Manhattan Bank, as Administrative Agent
270 Park Avenue
New York, New York  10017

Dear Sirs:

Reference is made to the 364-Day Credit Agreement, dated as of May 5, 1999 (as the same may be amended, supplemented or otherwise modified, the "Credit Agreement"), among the undersigned, W. R. Grace & Co.-Conn., the other Borrowers from time to time parties thereto, W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.), the Banks named therein, Bank of America National Trust and Savings Association, as Documentation Agent, The Chase Manhattan Bank, as Administrative Agent and Chase Securities Inc., as Book Manager. Terms defined in the Credit Agreement are used herein as therein defined.

In accordance with subsection 4.2 of the Credit Agreement, the undersigned accepts the offers by Bid Loan Bank(s) to make Bid Loans to the undersigned on , [Bid Loan Date] under said subsection 4.2 in the (respective) amount(s) set forth on the attached list of Bid Loans offered.

Very truly yours,

[NAME OF BORROWER]

By:_____
    Name:
    Title:

[Borrower to attach Bid Loan offer list prepared by Administrative Agent with accepted amount entered by the Borrower to right of each Bid Loan offer.]

509207-0161-02872-994MDPT8-CRA

EXHIBIT D
---------

FORM OF BID LOAN OFFER

_____, _____

The Chase Manhattan Bank, as Administrative Agent
270 Park Avenue
New York, New York  10017

Dear Sirs:

       Reference is made to the 364-Day Credit Agreement, dated as of May 5,
1999 (as the same may be amended, supplemented or otherwise modified, the
"Credit Agreement"), among W. R. Grace & Co.-Conn., W. R. Grace & Co. (formerly
named Grace Specialty Chemicals, Inc.), the Banks named therein, Bank of America
National Trust and Savings Association, as Documentation Agent, The Chase
Manhattan Bank, as Administrative Agent and Chase Securities Inc., as Book
Manager. Terms defined in the Credit Agreement are used herein as therein
defined.

       In accordance with subsection 4.2 of the Credit Agreement, the
undersigned Bank offers to make Bid Loans thereunder in the following amounts
with the following maturity dates:

Bid Loan Date:  _____, _____

Aggregate Maximum Amount:  $_____

| Maturity Date 1    : | Maturity Date 2    : | Maturity Date 3    : |
| --------------- --- | --------------- --- | --------------- --- |
| Maximum Amount $_____ | Maximum Amount $_____ | Maximum Amount $_____ |
| Rate          ___% | Rate ___% | Rate ___% |

                                     Very truly yours,

                                     [NAME OF BIDDING BANK]

                                     By:_____
                                            Name:
                                            Title:
                                            Telephone No.:
                                            Fax No.:

EXHIBIT E
---------

FORM OF BID LOAN REQUEST

_____, _____

The Chase Manhattan Bank, as Administrative Agent
270 Park Avenue
New York, New York  10017

Dear Sirs:

      Reference is made to the 364-Day Credit Agreement, dated as of May 5, 1999 (as the same may be amended, supplemented or otherwise modified, the "Credit Agreement"), among the undersigned, W. R. Grace & Co.-Conn., W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.), the Banks named therein, Bank of America National Trust and Savings Association, as Documentation Agent, The Chase Manhattan Bank, as Administrative Agent and Chase Securities Inc., as Book Manager. Terms defined in the Credit Agreement are used herein as therein defined.

      This is a Bid Loan Request made pursuant to subsection 4.2 of the Credit Agreement requesting quotes for the following Bid Loans(1):

| | | | | |
|---|---|---|---|---|
| Aggregate Principal Amount | $ ___ | $ ___ | | $ ___ |
| Bid Loan Date | | ___ | ___ | ___ |
| Interest Period | | ___ | ___ | ___ |
| Maturity Date | | ___ | ___ | ___ |
| Interest Payment Dates | | ___ | ___ | ___ |

Very truly yours,

[NAME OF BIDDING BANK]

By:_____
    Name:
    Title:

--------
1. Pursuant to the Credit Agreement, a Bid Loan Request may be transmitted in writing, by facsimile transmission, or by telephone, immediately confirmed by facsimile transmission. In any case, a Bid Loan Request shall contain the information specified in the second paragraph of this form.

EXHIBIT F-1
-----------

FORM OF OPINION OF COUNSEL TO THE COMPANY,
AND THE PARENT

May 5, 1999

To each Bank from time to time
 party to the 364-Day Credit Agreement,
 dated as of May 5, 1999,
 among W. R. Grace & Co.-Conn.,
 W. R. Grace & Co., the other Borrowers
 from time to time party thereto,
 the Banks named therein,
 Bank of America National Trust and Savings Association and
 Bank of America National Trust and Savings Association, as
 Co-Documentation Agents,
 The Chase Manhattan Bank, as Administrative Agent and
 Chase Securities Inc., as Book Manager

Ladies and Gentlemen:

        As General Counsel of W. R. Grace & Co. (formerly named Grace Specialty
Chemicals, Inc.), a Delaware corporation (the "Parent"), and W. R. Grace &
Co.-Conn., a Connecticut corporation (the "Company"), I have been requested to
render my opinion in connection with the 364-Day Credit Agreement dated as of
May 5, 1999 (the "Credit Agreement"), among you, the Company, the other
Borrowers from time to time party thereto, Bank of America National Trust and
Savings Association, as Documentation Agent, The Chase Manhattan Bank, as
Administrative Agent, Chase Securities Inc., as Book Manager and the Parent. I
am rendering this opinion pursuant to subsection 7.1(c)(i) of the Credit
Agreement. All terms used in this opinion that are defined in the Credit
Agreement have the respective meanings assigned to them therein.

        I have examined or caused to be examined the Restated Certificate of
Incorporation and the By-laws of the Company, each as amended to date, the
Certificate of Incorporation and the By-laws of the Parent, each as amended to
date, the records of the meetings and other corporate proceedings of the Company
and of the Parent, the Credit Agreement, any Notes being delivered to you this
day, and such other corporate records, agreements, certificates and documents as
I deem necessary for the purposes of the opinion hereinafter expressed. For
purposes of this opinion I have assumed that all Notes issued from time to time
hereafter will be issued in accordance with the terms of the Credit Agreement.

Based upon the foregoing, and subject to the qualifications stated below, I am of the following opinion:

1. The Company is a corporation duly organized and validly existing in good standing under the laws of Connecticut, and has the corporate power and authority under such laws, and is duly qualified and in good standing in each jurisdiction in which, in the opinion of the Company, such qualification is required, to own and operate its properties, to carry on its business and to execute, deliver and perform its obligations under the Credit Agreement and the Notes.

2. The Parent is a corporation duly organized and validly existing in good standing under the laws of Delaware and has the corporate power and authority under such laws, and is duly qualified and in good standing in each jurisdiction in which, in the opinion of the Parent, such qualification is required, to own and operate its properties, to carry on its business and to execute, deliver and perform its obligations under the Credit Agreement.

3. The execution, delivery and performance by the Company of the Credit Agreement and any Notes made by the Company, the borrowings by the Company thereunder and the consummation of the other transactions contemplated thereby have been duly and validly authorized by all necessary corporate action of the Company.

4. The execution, delivery and performance by the Parent of the Credit Agreement and the consummation of the transactions contemplated thereby, including, without limitation, the guaranty by the Parent of the Company's Obligations, have been duly and validly authorized by all necessary corporate action of the Parent.

5. The Credit Agreement has been duly executed and delivered by duly authorized officers of the Company and the Parent and each of the Notes, if any, of the Company being delivered to you today has been duly executed and delivered by a duly authorized officer of the Company.

6. The Credit Agreement and any Notes made by the Company constitute, and each other Note executed and delivered to you from time to time by the Company hereafter will constitute, legal, valid and binding obligations of the Company and the Parent, as the case may be, enforceable in accordance with their respective terms.

7. No consent of any other party (including, without limitation, stockholders of the Company or of the Parent), and no authorization, license, consent or approval from any regulatory, administrative or other governmental or public body or authority, arbitrator or court of the United States or any state or other jurisdiction thereof, is required in connection with the execution, delivery and performance by the Company, and the Parent, as the case may be, or the validity or enforceability, of the Credit Agreement or any Notes.

8. The execution, delivery and the performance by the Company and the Parent of the Credit Agreement and any Notes made by the Company, as the case may be, will not (A) to

the best of my knowledge, violate any law or regulation applicable to the Company or the Parent, (B) conflict with, or result in a breach or violation of, the Restated Certificate of Incorporation or By-Laws, each as amended, of the Company, the Certificate of Incorporation or By-laws, each as amended, of the Parent or, to the best of my knowledge, any material indenture, loan agreement or other agreement or instrument to which the Company or the Parent is a party or under which the Company or the Parent or any of their respective properties are or may be bound, or (C) to the best of my knowledge, violate any order, award, judgment, determination, writ, injunction or decree applicable to the Company or the Parent of any regulatory, administrative or other governmental or public body or authority, arbitrator or court of the United States or any state or other jurisdiction thereof.

9. To the best of my knowledge, no litigation, proceeding, investigation or inquiry is pending or threatened with respect to the transactions contemplated by the Credit Agreement.

10. Neither the Parent nor the Company is an "investment company", or a company "controlled" by an "investment company", within the meaning of the Investment Company Act of 1940, as amended.

My opinion is subject to the following qualifications:

(a) My opinion set forth in paragraph 6 above is subject to the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, by general equitable principles (whether considered in a proceeding in equity or at law) and an implied covenant of good faith and fair dealing.

(b) I express no opinion as to the enforceability of the provisions of the Credit Agreement that purport to establish evidentiary standards or to make determinations conclusive.

(c) I express no opinion as to the enforceability of the provisions of the Credit Agreement insofar as they relate to post-judgment interest rates.

(d) I express no opinion as to the enforceability of subsection 3.3 of the Credit Agreement. I note that (i) a New York statute provides that with respect to a foreign currency obligation a New York State court shall render a judgment or decree in such foreign currency and such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of such judgment or decree and (ii) with respect to a foreign currency obligation a federal court of the United States sitting in New York may award judgment in U.S. dollars, provided that I express no opinion as to the rate of exchange that such court would apply.

(e) I express no opinion as to the validity, binding effect or enforceability of any waiver under the Credit Agreement, or any consent or authorization thereunder, relating to the rights of the Company or the Parent, or duties owing to any of them, existing or arising as a matter of law.

4

(f) I express no opinion as to the effect of any provision of the Credit Agreement insofar as it provides that any Person purchasing a participation from a Bank or other Person may exercise set-off or similar rights with respect to such participation or that any Bank or other Person may exercise set-off or similar rights other than in accordance with applicable law.

(g) I express no opinion as to subsection 13.12 of the Credit Agreement insofar as it relates to the waiver of any objection by the Company and the Parent to the venue of any legal action or proceeding brought in a United States District Court for the Southern District of New York (and note that such matters may be raised by such court).

(h) I express no opinion as to the effect of any provision of the Credit Agreement which is intended to permit modification thereof only by means of an agreement in writing by the parties thereto.

(i) I express no opinion as to the effect of any provision of the Credit Agreement imposing penalties or forfeitures.

(j) I express no opinion as to the enforceability of any provision of the Credit Agreement to the extent that such provision constitutes a waiver of illegality as a defense to performance of contract obligations.

(k) I express no opinion as to the effect of any provision of the Credit Agreement relating to indemnification or exculpation in connection with violations of any securities laws or relating to indemnification, contribution or exculpation in connection with willful, reckless or criminal acts or gross negligence of the indemnified or exculpated Person or the Person receiving contribution.

(l) I express no opinion as to any laws other than those of the states of Connecticut, Delaware and New York and the federal laws of the United States.

(m) As used in paragraph 1 above, the term "good standing" means only those matters evidenced by the issuance of a certificate of existence pursuant to Section 33.615(b) of the Connecticut Business Corporation Act, the absence of any steps taken by the Company toward its dissolution and the filing by the Company of all business and capital tax returns required to be filed, and the payment of all taxes shown as payable on such returns that have become due, as of the date hereof.

This opinion is limited to the specific issues addressed herein and is limited in all respects to laws and interpretations thereof and other matters existing on the date hereof. I do not undertake to update this opinion for changes in such laws, interpretations or matters. This opinion is furnished solely for your benefit in connection with the transactions contemplated by the Credit Agreement, is not to be relied upon for any other purpose and may not be made available to any other person, firm or entity (other than a Transferee or a prospective Transferee referred to in subsection 13.6(f) of the Credit Agreement) without my express prior written

5

consent, except as may be required by law or in response to any judicial or
regulatory requirement, order or decree.

Very truly yours,

EXHIBIT F-2
-----------

FORM OF OPINION OF SIMPSON THACHER & BARTLETT

May 5, 1999

To the banks listed on Schedule I hereto

Ladies and Gentlemen:

We have acted as special New York counsel to The Chase Manhattan Bank, as administrative agent, in connection with the preparation, execution and delivery of the 364-Day Credit Agreement, dated as of May 5, 1999 (the "Credit Agreement"), among W. R. Grace & Co.-Conn., W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.), the banks from time to time party thereto, Bank of America National Trust and Savings Association, as documentation agent, The Chase Manhattan Bank, as administrative agent for said banks and Chase Securities Inc., as book manager.

This opinion is delivered to you pursuant to Section 7.1(c)(iii) of the Credit Agreement. Terms used herein which are defined in the Credit Agreement shall have the respective meanings set forth in the Credit Agreement, unless otherwise defined herein.

We have examined the following documents:

(1) a copy of the Credit Agreement; and

(2) a copy of the opinion of the General Counsel of the Company and the Parent, addressed to you and dated the date hereof, in respect of the Credit Agreement.

In such examination we have assumed the genuineness of all signatures, the legal capacity of natural persons, the authenticity of all documents submitted to us as originals, the conformity to original documents of all documents submitted to us as certified or photostatic copies, and the authenticity of the originals of such latter documents.

In rendering the opinion set forth below we have assumed that (2) the Credit Agreement is a valid and legally binding obligation of each of the Banks parties thereto, (3)(a) each of the Loan Parties is validly existing and in good standing under the laws of the jurisdiction in which it is organized and has duly authorized, executed and delivered the Credit Agreement in accordance with its organizational documents, (b) execution, delivery and performance by each Loan Party of the Credit Agreement do not violate the laws of the jurisdiction in which it is organized or any other applicable laws (excepting the laws of the State of New York and the Federal laws of the United States) and (c) execution, delivery and performance by each Loan Party of the Credit Agreement do not constitute a breach or violation of any agreement or instrument which is binding upon such Loan Party and (4) no Loan Party is an "investment

2

company" within the meaning of and subject to regulation under the Investment Company Act of 1940.

To the extent that our opinion expressed below relates to matters not expressly covered hereby that are set forth in the above-mentioned opinion of the General Counsel of the Company and the Parent, we have assumed without independent investigation the correctness of the matters set forth in such opinion, our opinion being subject to the assumptions, qualifications and limitations set forth in such opinion with respect thereto.

Based upon the foregoing, and subject to the qualifications and limitations stated herein, we hereby advise you that in our opinion, the Credit Agreement constitutes a valid and legally binding obligation of each of the Company and the Parent, enforceable against each of them in accordance with its terms.

Our opinion is subject to the following qualifications:

(a) Our opinion set forth above is subject to the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, general equitable principles (whether considered in a proceeding in equity or at law), and an implied covenant of good faith and fair dealing.

(b) We express no opinion as to the enforceability of the provisions of the Credit Agreement that purport to establish evidentiary standards or to make determinations conclusive.

(c) We express no opinion as to the enforceability of the provisions of the Credit Agreement insofar as they relate to post-judgment interest rates.

(d) We express no opinion as to the enforceability of subsection 3.3 of the Credit Agreement. We note that (i) a New York statute provides that with respect to a foreign currency obligation a New York State court shall render a judgment or decree in such foreign currency and such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of such judgment or decree and (ii) with respect to a foreign currency obligation a U.S. Federal court sitting in New York may award judgment in U.S. dollars, provided that we express no opinion as to the rate of exchange that such court would apply.

(e) We express no opinion as to the validity, binding effect or enforceability of any waiver under the Credit Agreement, or any consent or authorization thereunder, relating to the rights of the Company or the Parent, or duties owing to any of them, existing or arising as a matter of law.

(f) We express no opinion as to the effect of any provision of the Credit Agreement insofar as it provides that any Person purchasing a participation from a Bank or other Person may exercise set-off or similar rights with respect to such participation or that any Bank

or other Person may exercise set-off or similar rights other than in accordance with applicable law.

(g) We express no opinion as to subsection 13.12 of the Credit Agreement insofar as it relates to the waiver of any objection by the Company and the Parent, to the venue of any legal action or proceeding brought in a United States District Court for the Southern District of New York (and note that such matters may be raised by such court).

(h) We express no opinion as to the effect of any provision of the Credit Agreement which is intended to permit modification thereof only by means of an agreement in writing by the parties thereto.

(i) We express no opinion as to the effect of any provision of the Credit Agreement imposing penalties or forfeitures.

(j) We express no opinion as to the enforceability of any provision of the Credit Agreement to the extent that such provision constitutes a waiver of illegality as a defense to performance of contract obligations.

(k) We express no opinion as to the effect of any provision of the Credit Agreement relating to indemnification or exculpation in connection with violations of any securities laws or relating to indemnification, contribution or exculpation in connection with willful, reckless or criminal acts or gross negligence of the indemnified or exculpated Person or the Person receiving contribution.

In connection with the provisions of the Credit Agreement whereby the Loan Parties submit to the jurisdiction of the United States District Court for the Southern District of New York, we note the limitations of 28 U.S.C. ss. 1332 on Federal court jurisdiction where diversity of citizenship is lacking, and we also note that such submissions cannot supersede such court's discretion in determining whether to transfer an action from one Federal court to another under 28 U.S.C. ss. 1404(a).

We are members of the Bar of the State of New York and we do not express any opinion herein concerning any law other than the law of the State of New York and the federal law of the United States.

This opinion is rendered to you in connection with the above-described transactions. This opinion may not be relied upon by you for any other purpose, or relied upon by any other person, firm or corporation without our prior written consent.

Very truly yours,

SIMPSON THACHER & BARTLETT

EXHIBIT G
---------

W. R. GRACE & CO.-CONN.

W. R. GRACE & CO.

(formerly named Grace Specialty Chemicals, Inc.)

OFFICER'S CERTIFICATE

In accordance with subsection 7.1(d) of that certain 364-Day Credit Agreement, dated as of May 5, 1999 (the "Credit Agreement"), among W. R. Grace & Co.-Conn. (the "Company"), W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.) (the "Parent"), the Banks named therein (the "Banks"), Bank of America National Trust and Savings Association, as Documentation Agent, The Chase Manhattan Bank, as Administrative Agent and Chase Securities Inc., as Book Manager, each of the undersigned Company and the Parent hereby certifies to the Banks that:

1. Each of the representations and warranties contained in the Credit Agreement and the other Loan Documents are true and correct on and as of the date hereof as if made on and as of such date.

2. Since December 31, 1998, there has been no development or event which has had or would reasonably be expected to have a Material Adverse Effect.

3. No Default or Event of Default has occurred and is continuing on the date hereof or shall have occurred and be continuing after giving effect to the Loans to be made on the date hereof.

Capitalized terms used in this Certificate and not defined herein shall have the meanings ascribed thereto in the Credit Agreement.

IN WITNESS WHEREOF, each of the undersigned has caused this Certificate to be executed by its officer thereunto duly authorized as of the ___ day of May, 1999.

W. R. GRACE & CO.-CONN.

By: _____
          [Name and Title]

W. R. GRACE & CO.

By: _____
          [Name and Title]

EXHIBIT H
---------

### FORM OF COMMITMENT TRANSFER SUPPLEMENT

COMMITMENT TRANSFER SUPPLEMENT, dated as of the date set forth in Item 1 of Schedule I hereto, between the Transferor Bank set forth in Item 2 of Schedule I hereto (the "Transferor Bank"), each Purchasing Bank set forth in Item 3 of Schedule I hereto (each, a "Purchasing Bank"), **[THE CHASE MANHATTAN BANK, as administrative agent for the Banks under the Credit Agreement described below (in such capacity, the "Administrative Agent") and the other Banks parties hereto].

W I T N E S S E T H :
- - - - - - - - - -

WHEREAS, this Commitment Transfer Supplement is being executed and delivered in accordance with subsection 13.6(c) of the 364-Day Credit Agreement dated as of May 5, 1999 (as from time to time amended, supplemented or otherwise modified in accordance with the terms thereof, the "Credit Agreement"; terms defined therein being used herein as therein defined), among W. R. Grace & Co.-Conn., a Connecticut corporation (the "Company"), W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.), a Delaware corporation (the "Parent"), any subsidiary of the Company which has previously delivered a Notice of Additional Borrower, the Transferor Bank and the other Banks parties thereto, Bank of America National Trust and Savings Association, as Documentation Agent, [The Chase Manhattan Bank, as administrative agent for the Banks under the Credit Agreement (in such capacity, the "Administrative Agent")] [the Administrative Agent] and Chase Securities Inc., as Book Manager;

WHEREAS, each Purchasing Bank (if it is not already a Bank party to the Credit Agreement) wishes to become a Bank party to the Credit Agreement; and

WHEREAS, the Transferor Bank is selling and assigning to each Purchasing Bank, rights, obligations and commitments under the Credit Agreement;

NOW, THEREFORE, the parties hereto hereby agree as follows:

1. Upon receipt by the Administrative Agent of five counterparts of this Commitment Transfer Supplement, to each of which is attached a fully completed Schedule I and Schedule II, and each of which has been executed by the Transferor Bank and each Purchasing Bank (and any other person required by the Credit Agreement to execute this Commitment

--------
**/ A replacement of a Bank pursuant to subsection 13.1(b) of the Credit Agreement requires the consent of the Majority Banks (but not the Replaced Bank, in any case) if any Revolving Credit Loans are then outstanding. All other transfers of Commitments do not require such consent.

Transfer Supplement), the Administrative Agent will transmit to the Company, the Transferor Bank and each Purchasing Bank a Transfer Effective Notice, substantially in the form of Schedule III to this Commitment Transfer Supplement (a "Transfer Effective Notice"). Such Transfer Effective Notice shall set forth, inter alia, the date on which the transfer effected by this Commitment Transfer Supplement shall become effective (the "Transfer Effective Date"). From and after the Transfer Effective Date each Purchasing Bank shall be a Bank party to the Credit Agreement for all purposes thereof.

2. At or before 12:00 Noon, local time of the Transferor Bank, on the Transfer Effective Date, each Purchasing Bank shall pay to the Transferor Bank, in immediately available funds, an amount equal to the purchase price, as agreed between the Transferor Bank and such Purchasing Bank (the "Purchase Price"), of the portion being purchased by such Purchasing Bank (such Purchasing Bank's "Purchased Percentage") of the outstanding [Revolving Credit] Loans and other amounts owing to the Transferor Bank under the Credit Agreement. Effective upon receipt by the Transferor Bank of the Purchase Price from a Purchasing Bank, the Transferor Bank hereby irrevocably sells, assigns and transfers to such Purchasing Bank, without recourse, representation or warranty, and each Purchasing Bank hereby irrevocably purchases, takes and assumes from the Transferor Bank, such Purchasing Bank's Purchased Percentage of the Commitments and the presently outstanding [Revolving Credit] Loans and other amounts owing to the Transferor Bank under the Credit Agreement together with all instruments, documents and collateral security pertaining thereto.

3. The Transferor Bank has made arrangements with each Purchasing Bank with respect to (i) the portion, if any, to be paid, and the date or dates for payment, by the Transferor Bank to such Purchasing Bank of any fees heretofore received by the Transferor Bank pursuant to the Credit Agreement prior to the Transfer Effective Date and (ii) the portion, if any, to be paid, and the date or dates for payment, by such Purchasing Bank to the Transferor Bank of fees or interest received by such Purchasing Bank pursuant to the Credit Agreement from and after the Transfer Effective Date.

4. (a) All principal payments that would otherwise be payable from and after the Transfer Effective Date to or for the account of the Transferor Bank pursuant to the Credit Agreement and the Notes, if any, shall, instead, be payable to or for the account of the Transferor Bank and the Purchasing Banks, as the case may be, in accordance with their respective interests as reflected in this Commitment Transfer Supplement.

(b) All interest, fees and other amounts that would otherwise accrue for the account of the Transferor Bank from and after the Transfer Effective Date pursuant to the Credit Agreement and the Notes, if any, shall, instead, accrue for the account of, and be payable to, the Transferor Bank and the Purchasing Banks, as the case may be, in accordance with their respective interests as reflected in this Commitment Transfer Supplement. In the event that any amount of interest, fees or other amounts accruing prior to the Transfer Effective Date was included in the Purchase Price paid by any Purchasing Bank, the Transferor Bank and each Purchasing Bank will make appropriate arrangements for payment by the Transferor Bank to such Purchasing Bank of such amount upon receipt thereof from the Borrower.

5. On or prior to the Transfer Effective Date, the Transferor Bank will deliver to the Administrative Agent its Notes, if any. If requested to do so by any Purchasing Bank pursuant to subsections 2.2(c) and 4.5(c), on or prior to the Transfer Effective Date, the Borrowers will deliver to the Administrative Agent Revolving Credit Notes and Bid Loan Notes for such Purchasing Bank and the Transferor Bank, in each case in principal amounts reflecting, in accordance with the Credit Agreement, their Commitments (as adjusted pursuant to this Commitment Transfer Supplement). As provided in subsection 13.6(c) of the Credit Agreement, each such new Note shall be dated the Closing Date. Promptly after the Transfer Effective Date, the Administrative Agent will send to each of the Transferor Bank and the Purchasing Banks its new Note, if any, and will send to the Borrower the superseded Note, if any, of the Transferor Bank, marked "Cancelled".

6. Concurrently with the execution and delivery hereof, the Transferor Bank will provide to each Purchasing Bank (if it is not already a Bank party to the Credit Agreement) copies of all documents delivered to such Transferor Bank on the Effective Date in satisfaction of the conditions precedent set forth in the Credit Agreement.

7. Each of the parties to this Commitment Transfer Supplement agrees that at any time and from time to time upon the written request of any other party, it will execute and deliver such further documents and do such further acts and things as such other party may reasonably request in order to effect the purposes of this Commitment Transfer Supplement.

8. By executing and delivering this Commitment Transfer Supplement, the Transferor Bank and each Purchasing Bank confirm to and agree with each other and the Administrative Agent and the Banks as follows: (i) other than the representation and warranty that it is the legal and beneficial owner of the interest being assigned hereby free and clear of any adverse claim, the Transferor Bank makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with the Credit Agreement or the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement, the Notes or any other Loan Document or other instrument or document furnished pursuant thereto; (ii) the Transferor Bank makes no representation or warranty and assumes no responsibility with respect to the financial condition or creditworthiness of any Loan Party or the performance or observance by any Loan Party of any of their respective obligations under the Credit Agreement, the Notes or any other Loan Document or other instrument or document furnished pursuant thereto; (iii) each Purchasing Bank confirms that it has received a copy of the Credit Agreement, together with copies of the financial statements referred to in subsection 6.6 of the Credit Agreement, the financial statements delivered pursuant to subsection 8.1 of the Credit Agreement, if any, and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Commitment Transfer Supplement; (iv) each Purchasing Bank will, independently and without reliance upon the Administrative Agent, the Transferor Bank or any other Bank and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Credit Agreement; (v) each Purchasing Bank appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such powers

4

under the Agreement as are delegated to the Administrative Agent by the terms thereof, together with such powers as are reasonably incidental thereto, all in accordance with Section 11 of the Credit Agreement; and (vi) each Purchasing Bank agrees that it will perform in accordance with their terms all of the obligations which by the terms of the Credit Agreement are required to be performed by it as a Bank.

       9. Each party hereto represents and warrants to and agrees with the Administrative Agent that it is aware of and will comply with the provision of subsection 13.6(g) of the Credit Agreement.

       10. Schedule II hereto sets forth the revised Commitments of the Transferor Bank and each Purchasing Bank as well as administrative information with respect to each Purchasing Bank.

       11. This Commitment Transfer Supplement shall be governed by, and construed in accordance with, the laws of the State of New York.

       IN WITNESS WHEREOF, the parties hereto have caused this Commitment Transfer Supplement to be executed by their respective duly authorized officers on Schedule I hereto as of the date set forth in item 1 of Schedule I hereto.

SCHEDULE I
TO COMMITMENT
TRANSFER SUPPLEMENT
--------------------

COMPLETION OF INFORMATION AND
SIGNATURES FOR COMMITMENT
TRANSFER SUPPLEMENT
-------------------------

Re:   364-Day Credit Agreement, dated as of May 5, 1999 (as amended,
      supplemented or otherwise modified from time to time), among W. R. Grace &
      Co.-Conn. (the "Company"), W. R. Grace & Co. (formerly named Grace
      Specialty Chemicals, Inc.), any subsidiary of the Company which has
      previously delivered a Notice of Additional Borrower, the Transferor Bank
      and the other Banks parties thereto, Bank of America National Trust and
      Savings Association, as Documentation Agent, The Chase Manhattan Bank, as
      Administrative Agent and Chase Securities Inc., as Book Manager.

Item 1     (Date of Commitment Transfer Supplement):

Item 2     (Transferor Bank):

Item 3     (Purchasing Bank):

Item 4     (Signatures of Parties to Commitment Transfer Supplement):

_____,
as Transferor Bank

By:_____
      Name:
      Title:


_____,
as a Purchasing
Bank

By:_____
      Name:
      Title:

2

CONSENTED TO AND
ACKNOWLEDGED:

W. R. GRACE & CO.-CONN.

By:_____
        Name:
        Title:


W. R. GRACE & CO.

By:_____
        Name:
        Title:

*[THE CHASE MANHATTAN BANK,
as Administrative Agent

By:_____
        Name:
        Title:]

*[MAJORITY BANKS]

ACCEPTED FOR RECORDATION
   IN REGISTER:

THE CHASE MANHATTAN BANK,
as Administrative Agent

By:_____
        Name:
        Title:

SCHEDULE II
TO COMMITMENT
TRANSFER SUPPLEMENT
-------------------

LIST OF LENDING OFFICES, ADDRESSES
FOR NOTICES AND COMMITMENT AMOUNTS
----------------------------------

Revised Commitment Amounts:
---------------------------

Revised Commitment Percentage:
------------------------------

New Commitment Amounts:
-----------------------

New Commitment Percentage:
--------------------------

Address for Notices:
--------------------

Address for Bid Loan Notices:
-----------------------------

Eurodollar Lending Office:
--------------------------

_____

_____

_____

Domestic Lending Office:
------------------------

_____

_____

_____

[Form of Transfer Effective Notice]

To:  W. R. Grace & Co.-Conn.
     W. R. Grace & Co.
     [Transferor Bank]
     [each Purchasing Bank]

          The undersigned, as Administrative Agent [delegate of the
Administrative Agent performing administrative functions of the Administrative
Agent] under the 364-Day Credit Agreement, dated as of May 5, 1999 (as amended,
supplemented or otherwise modified from time to time, the "Credit Agreement"),
among W. R. Grace & Co.-Conn., a Connecticut corporation, W. R. Grace & Co.
(formerly named Grace Specialty Chemicals, Inc.), a Delaware corporation, any
subsidiary of the Company which has previously delivered a Notice of Additional
Borrower, the Transferor Bank and the other Banks parties thereto, Bank of
America National Trust and Savings Association, as Documentation Agent, The
Chase Manhattan Bank, as administrative agent for the Banks under the Credit
Agreement (in such capacity, the "Administrative Agent") and Chase Securities
Inc., as Book Manager, acknowledges receipt of five executed counterparts of a
completed Commitment Transfer Supplement, dated the date and between the parties
described in Schedule I hereto. [Note: Attach copy of Schedule I from Commitment
Transfer Supplement.] Terms defined in such Commitment Transfer Supplement are
used herein as therein defined.

          1. Pursuant to such Commitment Transfer Supplement, you are advised
that the Transfer Effective Date will be _____.

          2. Pursuant to such Commitment Transfer Supplement, the Transferor Bank
is required to deliver to the Administrative Agent on or before the Transfer
Effective Date its [Revolving Credit] Note[s], if any.

          [3. Pursuant to such Commitment Transfer Supplement, the Borrower is
[are] required to deliver to the Administrative Agent on or before the Transfer
Effective Date the following Note, each dated _____.]

          [Describe each new Note, if any, for Transferor Bank and Purchasing
Bank as to principal amount, payee and type of Note.]

2

       4. Pursuant to such Commitment Transfer Supplement each Purchasing Bank is required to pay its purchase price to the Transferor Bank at or before 12:00 Noon on the Transfer Effective Date in immediately available funds.

Very truly yours,

THE CHASE MANHATTAN BANK,
  as Administrative Agent

By:_____
   Name:
   Title:

EXHIBIT I
---------

NOTICE OF ADDITIONAL BORROWER

[Dated _____, _____ ]

The undersigned, _____, a _____ corporation and a subsidiary of the Company (as defined below) (the "Subsidiary"), hereby:

1. Confirms that this Notice of Additional Borrower is being delivered pursuant to subsection 13.15(a) of that certain 364-Day Credit Agreement, dated as of May 5, 1999 (the "Agreement"; terms defined therein being used herein as therein defined), among W. R. Grace & Co.-Conn., a Connecticut corporation (the "Company"), W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.), a Delaware corporation (the "Parent"), any other subsidiary of the Company which has previously delivered a notice of additional borrower substantially similar to this Notice of Additional Borrower, the several banks from time to time parties thereto (the "Banks"), Bank of America National Trust and Savings Association, as Documentation Agent, The Chase Manhattan Bank, a New York banking corporation, as administrative agent for the Banks thereunder (in such capacity, the "Administrative Agent") and Chase Securities Inc., as Book Manager.

2. States that it desires to become a "Borrower" under the Agreement and agrees to be bound by each of the terms and provisions of the Agreement as a "Borrower" thereunder and that, subject to the satisfaction of the conditions to the effectiveness set forth in paragraph 4 hereof, upon delivery of this Notice of Additional Borrower to the Administrative Agent such Subsidiary shall be a party to the Agreement.

3. Represents and warrants as follows as of the date hereof:

(a) The representations and warranties contained in subsections 6.1, 6.2, 6.3, 6.4, 6.5, 6.9, 6.10, 6.11, 6.12, 6.13 and 6.16 of the Agreement, the provisions of said subsections of the Agreement and all terms defined in the Agreement and appearing in said subsections shall by this reference be deemed incorporated in the Notice of Additional Borrower. For purposes of this paragraph (a) reference to the Parent, the Company and the Subsidiaries in said subsections and definitions shall be deemed, mutatis mutandis, to be references to such Subsidiary.

(b) *There are no Taxes imposed by [insert country where Subsidiary is organized] or any political subdivision thereof or taxing authority therein due or payable either on or by virtue of the execution and delivery by such Subsidiary, the Administrative Agent or the Banks of any Loan Document to which such

------------
*/  To be made by Foreign Subsidiaries.

Subsidiary is a party or on any payment to be made by such Subsidiary pursuant thereto, except for _____.

(c) The aggregate value of all of the assets of such Subsidiary, at a fair valuation, exceeds the total liabilities of such Subsidiary (including contingent, subordinated, unmatured and unliquidated liabilities). Such Subsidiary has the ability to pay its debts as they mature and does not have unreasonably small capital with which to conduct its business. For purposes of this paragraph (c), the "fair valuation" of such assets shall be determined on the basis of that amount which may be realized within a reasonable time, in any manner through realization of the value of or dispositions of such assets at the regular market value, conceiving the latter as the amount which could be obtained for the property in question within such period by a capable and diligent business person from an interested buyer who is willing to purchase under ordinary selling conditions.

4. Agrees that the effectiveness of this Notice of Additional Borrower, such Subsidiary becoming a party to the Agreement and the ability of such Subsidiary to borrow thereunder are subject to the satisfaction of the following conditions precedent:

(a) The Administrative Agent has received (i) an opinion from counsel to the Company and the Parent, who may be the General Counsel of the Company, substantially in the form of the opinion attached hereto as Exhibit I-1, and (ii) if such Subsidiary is a Foreign Subsidiary, and if reasonably requested by the Majority Banks, an opinion of counsel for such Subsidiary to the effect that neither the Administrative Agent nor any Bank is or will be deemed to be resident, domiciled, carrying on business or subject to taxation in the jurisdiction where Subsidiary is organized by reason only of the execution, performance or enforcement of the Notice, the Agreement or the Notes made by the Subsidiary, and that the performance by the Administrative Agent or any Bank of any action required or permitted under the Agreement or the Notes made by the Subsidiary will not violate any law or regulation of the jurisdiction where Subsidiary is organized.

(b) The Administrative Agent has received for the account of each Bank who so requests, Notes made by such Subsidiary conforming to the requirements of the Agreement and executed by a duly authorized officer of such Subsidiary.

(c) The Administrative Agent has received, with an executed counterpart for each Bank, an incumbency certificate of such Subsidiary dated the date hereof, satisfactory in form and substance to the Administrative Agent, executed by the officers of such Subsidiary executing any Loan Document to which such Subsidiary is a party and the Secretary or Assistant Secretary of such Subsidiary.

3

(d) The Administrative Agent has received, with a counterpart for each Bank, a copy of the resolutions, in form and substance satisfactory to the Administrative Agent, of the Board of Directors of such Subsidiary authorizing (i) the execution, delivery and performance of the Agreement, this Notice of Additional Borrower, any Notes and the other Loan Documents to which it is a party, and (ii) the borrowings contemplated under the Agreement, certified by the Secretary or an Assistant Secretary of such Subsidiary as of the date hereof, which certificate states that the resolutions thereby certified have not been amended, modified, revoked or rescinded and shall be in form and substance satisfactory to the Administrative Agent.

(e) The Administrative Agent has received, with a counterpart for each Bank, true and complete copies of the certificate of incorporation and by-laws of such Subsidiary, certified as of the date hereof as complete and correct copies thereof by the Secretary or an Assistant Secretary of the Subsidiary.

(f) The performance by the Administrative Agent or the Banks of the Agreement, this Notice of Additional Borrower, the Notes and the other Loan Documents to which such Subsidiary is a party not cause any Bank to be in violation of any law, rule, regulation, treaty or order.

(g) All corporate and other proceedings, and all documents, instruments and other legal matters in connection with this Notice of Additional Borrower and such Subsidiary as a Borrower shall be satisfactory in form and substance to the Administrative Agent.

5. Agrees that all notices, requests and demands to or upon such Subsidiary in connection with the Agreement and the other Loan Documents shall be effective if made in the manner provided in subsection 13.2 of the Agreement to such Subsidiary at the following address or to such other address as may be hereinafter notified by such Subsidiary to the Administrative Agent:

[Subsidiary]

_____

Attention:_____
Telecopy:_____

[Name of Subsidiary]

By:_____
      Name:
      Title:

4

The undersigned hereby confirm and agree to the foregoing Notice of Additional Borrower delivered pursuant to subsection 13.15(a) of the Agreement.

W. R. GRACE & CO.-CONN.

By:_____
   Name:
   Title:


W. R. GRACE & CO.

By:_____
   Name:
   Title:

EXHIBIT I-1 to Notice
of Additional Borrower
----------------------

FORM OF OPINION OF COUNSEL TO THE COMPANY
AND THE PARENT

_____,_____

To each Bank from time to time
    party to the 364-Day Credit Agreement
    dated as of May 14, 1998,
    among W. R. Grace & Co.-Conn.,
    W. R. Grace & Co., the other Borrowers
    from time to time party thereto,
    the Banks named therein,
    Bank of America National Trust and Savings Association,
    as Documentation Agent,
    The Chase Manhattan Bank, as Administrative Agent and
    Chase Securities Inc., as Book Manager

Ladies and Gentlemen:

        As General Counsel of W. R. Grace & Co. (formerly named Grace Specialty Chemicals, Inc.), a Delaware corporation (the "Parent"), and W. R. Grace & Co.-Conn., a Connecticut corporation ("Company"), I have been requested to render my opinion in connection with the Notice of Additional Borrower dated , ("Notice") relating to [NAME OF SUBSIDIARY] ("Subsidiary") delivered pursuant to the 364-Day Credit Agreement dated as of May 5 1999 (as modified by the Notice and as otherwise amended, supplemented or otherwise modified prior to the date hereof, the "Credit Agreement"), among you, the Company, the other Borrowers from time to time party thereto, the Parent, Bank of America National Trust and Savings Association, as Documentation Agent, The Chase Manhattan Bank, as Administrative Agent and Chase Securities Inc., as Book Manager. I am rendering this opinion pursuant to subsection 13.15(a) of the Credit Agreement and subsection 4(a)(i) of the Notice. All terms used in this opinion that are defined in the Credit Agreement have the respective meanings assigned to them therein.

        I have examined or caused to be examined the Restated Certificate of Incorporation and the By-laws of the Company, each as amended to date, the Certificate of Incorporation and the By-laws of the Parent, each as amended to date, the records of the meetings and other corporate proceedings of the Company and of the Parent, the Credit Agreement, the Notice, and such other corporate records, agreements, certificates and documents as I deem necessary for the purposes of the opinion hereinafter expressed. For purposes of this opinion I

have assumed that all Notes issued from time to time hereafter will be issued in accordance with the terms of the Credit Agreement.

Based upon the foregoing, and subject to the qualifications stated below, I am of the following opinion:

1. The Company is a corporation duly organized and validly existing in good standing under the laws of Connecticut, and has the corporate power and authority under such laws, and is duly qualified and in good standing in each jurisdiction in which, in the opinion of the Company, such qualification is required, to own and operate its properties, to carry on its business and to perform its obligations under the Credit Agreement.

2. The Parent is a corporation duly organized and validly existing in good standing under the laws of Delaware and has the corporate power and authority under such laws, and is duly qualified and in good standing in each jurisdiction in which, in the opinion of the Parent, such qualification is required, to own and operate its properties, to carry on its business and to perform its obligations under the Credit Agreement.

3. The performance by the Company of the Credit Agreement and the consummation of the transactions contemplated thereby, including, without limitation, the guaranty by the Company of the Subsidiary's Obligations, have been duly and validly authorized by all necessary corporate action of the Company.

4. The performance by the Parent of the Credit Agreement and the consummation of the transactions contemplated thereby, including, without limitation, the guaranty by the Parent of the Company's and the Subsidiary's respective Obligations, have been duly and validly authorized by all necessary corporate action of the Parent.

5. The Credit Agreement constitutes the legal, valid and binding obligation of the Company and the Parent, as the case may be, enforceable in accordance with its terms.

6. No consent of any other party (including, without limitation, stockholders of the Company or the Parent), and no authorization, license, consent or approval from any regulatory, administrative or other governmental or public body or authority, arbitrator or court of the United States or any state or other jurisdiction thereof, is required in connection with the performance by the Company and the Parent, as the case may be, or the validity or enforceability, of the Credit Agreement or any Notes.

7. The performance by the Company and the Parent, of the Credit Agreement will not (A) to the best of my knowledge, violate any law or regulation applicable to the Company or the Parent, (B) conflict with, or result in a breach or violation of, the Restated Certificate of Incorporation or By-Laws, each as amended, of the Company, the Certificate of Incorporation or By-laws, each as amended, of the Parent or, to the best of my knowledge, any material indenture, loan agreement or other agreement or instrument to which the Company or the Parent is a party or under which the Company or the Parent or any of their respective properties are or may be

bound, or (C) to the best of my knowledge, violate any order, award, judgment, determination, writ, injunction or decree applicable to the Company or the Parent of any regulatory, administrative or other governmental or public body or authority, arbitrator or court of the United States or any state or other jurisdiction thereof.

8. To the best of my knowledge, no litigation, proceeding, investigation or inquiry is pending or threatened with respect to the transactions contemplated by the Credit Agreement.

9. Neither the Parent nor the Company is an "investment company", or a company "controlled" by an "investment company", within the meaning of the Investment Company Act of 1940, as amended.

My opinion is subject to the following qualifications:

(a) My opinion set forth in paragraph 5 above is subject to the effects of ankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, by general equitable principles (whether considered in a proceeding in equity or at law) and an implied covenant of good faith and fair dealing.

(b) I express no opinion as to the enforceability of the provisions of the Credit Agreement that purport to establish evidentiary standards or to make determinations conclusive.

(c) I express no opinion as to the enforceability of the provisions of the Credit Agreement insofar as they relate to post-judgment interest rates.

(d) I express no opinion as to the enforceability of subsection 3.3 of the Credit Agreement. I note that (i) a New York statute provides that with respect to a foreign currency obligation a New York State court shall render a judgment or decree in such foreign currency and such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of such judgment or decree and (ii) with respect to a foreign currency obligation a federal court of the United States sitting in New York may award judgment in U.S. dollars, provided that I express no opinion as to the rate of exchange that such court would apply.

(e) I express no opinion as to the validity, binding effect or enforceability of any waiver under the Credit Agreement, or any consent or authorization thereunder, relating to the rights of the Company or the Parent, or duties owing to any of them, existing or arising as a matter of law.

(f) I express no opinion as to the effect of any provision of the Credit Agreement insofar as it provides that any Person purchasing a participation from a Bank or other Person may exercise set-off or similar rights with respect to such participation or that any Bank or other Person may exercise set-off or similar rights other than in accordance with applicable law.

4

(g) I express no opinion as to subsection 13.12 of the Credit Agreement insofar as it relates to the waiver of any objection by the Company and the Parent, to the venue of any legal action or proceeding brought in a United States District Court for the Southern District of New York (and note that such matters may be raised by such court).

(h) I express no opinion as to the effect of any provision of the Credit Agreement which is intended to permit modification thereof only by means of an agreement in writing by the parties thereto.

(i) I express no opinion as to the effect of any provision of the Credit Agreement imposing penalties or forfeitures.

(j) I express no opinion as to the enforceability of any provision of the Credit Agreement to the extent that such provision constitutes a waiver of illegality as a defense to performance of contract obligations.

(k) I express no opinion as to the effect of any provision of the Credit Agreement relating to indemnification or exculpation in connection with violations of any securities laws or relating to indemnification, contribution or exculpation in connection with willful, reckless or criminal acts or gross negligence of the indemnified or exculpated Person or the Person receiving contribution.

(l) I express no opinion as to any laws other than those of the states of Connecticut, Delaware and New York and the federal laws of the United States.

(m) As used in paragraph 1 above, the term "good standing" means only those matters evidenced by the issuance of a certificate of existence pursuant to Section 33.615(b) of the Connecticut Business Corporation Act, the absence of any steps taken by the Company toward dissolution and the filing by the Company of all business and capital tax returns required to be filed, and the payment of all taxes shown as payable on such returns that have become due, as of the date hereof.

This opinion is limited to the specific issues addressed herein and is limited in all respects to laws and interpretations thereof and other matters existing on the date hereof. I do not undertake to update this opinion for changes in such laws, interpretations or matters. This opinion is furnished solely for your benefit in connection with the transactions contemplated by the Credit Agreement and the Notice, is not to be relied upon for any other purpose and may not be made available to any other person, firm or entity (other than a Transferee or a prospective Transferee referred to in subsection 13.6(f) of the Credit Agreement) without my express prior written consent, except as may be required by law or in response to any judicial or regulatory requirement, order or decree.

Very truly yours,

==================================================================================

### 364-DAY CREDIT AGREEMENT

dated as of
May 5, 1999

among

W. R. GRACE & CO.-CONN.,
W. R. GRACE & CO.,

The Banks Party Hereto,

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION,
as Documentation Agent,

THE CHASE MANHATTAN BANK
as Administrative Agent,

and

CHASE SECURITIES INC.,
as Book Manager

==================================================================================

TABLE OF CONTENTS
-----------------

                                                                                        Page

SECTION 1.  DEFINITIONS.......................................................................1
            1.1  Defined Terms...................................................................1
            1.2  Other Definitional Provisions...............................................13

SECTION 2.  AMOUNT AND TERMS OF COMMITMENTS.................................................13
            2.1  Commitments....................................................................13
            2.2  Obligations of Borrowers; Revolving Credit Notes..........................14
            2.3  Procedure for Revolving Credit Borrowing...................................15
            2.4  Extension of Termination Date...............................................15

SECTION 3.  BILATERAL OPTION LOANS...........................................................17
            3.1  Requests for Offers ...........................................................17
            3.2  Reports to Administrative Agent; Determination of Dollar Equivalents.....17
            3.3  Judgment Currency..............................................................18
            3.4  Repayments.....................................................................18

SECTION 4.  BID LOANS........................................................................19
            4.1  The Bid Loans..................................................................19
            4.2  Procedure for Bid Loans.......................................................19
            4.3  Repayments.....................................................................20
            4.4  Interest on Bid Loans.........................................................20
            4.5  Obligations of Borrowers; Bid Loan Notes....................................21

SECTION 5.  LOAN FACILITY COMMON PROVISIONS.................................................22
            5.1  Interest Rates and Payment Dates............................................22
            5.2  Facility Fee, etc..............................................................22
            5.3  Termination or Reduction of Commitments; Change of Control Date..........23
            5.4  Prepayments....................................................................24
            5.5  Conversion and Continuation Options.........................................25
            5.6  Minimum Amounts of Eurodollar Tranches.....................................25
            5.7  Computation of Interest and Fees............................................25
            5.8  Inability to Determine Interest Rate........................................26
            5.9  Pro Rata Treatment and Payments.............................................26
            5.10 Illegality.....................................................................28
            5.11 Requirements of Law............................................................28
            5.12 Taxes..........................................................................29
            5.13 Indemnity......................................................................30

SECTION 6.  REPRESENTATIONS AND WARRANTIES..................................................31
            6.1  Corporate Existence; Compliance with Law....................................31
            6.2  Corporate Power, Authorization; Enforceable Obligations....................31

i

Page

6.3   No Legal Bar.............................................................................32
6.4   No Material Litigation...................................................................32
6.5   Ownership of Properties.................................................................32
6.6   Financial Condition ....................................................................32
6.7   Disclosure of Contingent Liabilities....................................................32
6.8   ERISA...................................................................................33
6.9   Certain Federal Regulations.............................................................33
6.10  No Default..............................................................................33
6.11  Taxes...................................................................................33
6.12  Investment Company Act; Other Regulations...............................................33
6.13  Purpose of Loans........................................................................33
6.14  Environmental Matters...................................................................33
6.15  Principal Subsidiaries..................................................................34
6.16  Year 2000...............................................................................34

SECTION 7.   CONDITIONS PRECEDENT.....................................................................34
7.1   Conditions to Effectiveness.............................................................34
7.2   Conditions to Each Loan.................................................................35

SECTION 8.   AFFIRMATIVE COVENANTS....................................................................36
8.1   Financial Statements....................................................................36
8.2   Certificates; Other Information.........................................................37
8.3   Payment of Obligations..................................................................37
8.4   Conduct of Business and Maintenance of Existence........................................38
8.5   Insurance...............................................................................38
8.6   Inspection of Property, Books and Records; Discussions..................................38
8.7   Notices.................................................................................38
8.8   Environmental Laws......................................................................39
8.9   Year 2000 Compliance....................................................................39

SECTION 9.   NEGATIVE COVENANTS.......................................................................40
9.1   Financial Condition Covenants...........................................................40
9.2   Limitation on Liens ....................................................................40
9.3   Limitation on Fundamental Changes.......................................................42
9.4   Limitation on Asset Transfers to Foreign Subsidiaries...................................42
9.5   Limitation on Subordinated Debt.........................................................42

SECTION 10.  EVENTS OF DEFAULT........................................................................42

SECTION 11.  THE ADMINISTRATIVE AGENT.................................................................45
11.1  Appointment.............................................................................45
11.2  Delegation of Duties....................................................................45
11.3  Exculpatory Provisions..................................................................45
11.4  Reliance by Administrative Agent........................................................46
11.5  Notice of Default.......................................................................46
11.6  Non-Reliance on Administrative Agent and Other Banks....................................46

Page

11.7   Indemnification.................................................................47
11.8   Administrative Agent in Its Individual Capacity................................47
11.9   Successor Administrative Agent.................................................47
11.10  Others........................................................................48

SECTION 12.   GUARANTEES............................................................48
12.1   Parent Guarantee..............................................................48
12.2   Company Guarantee.............................................................48
12.3   No Subrogation, Contribution, Reimbursement or Indemnity......................49
12.4   Amendments, etc., with respect to the Obligations.............................49
12.5   Guarantee Absolute and Unconditional..........................................50
12.6   Reinstatement.................................................................50
12.7   Payments......................................................................51

SECTION 13.   MISCELLANEOUS.........................................................51
13.1   Amendments and Waivers; Replacement of Banks..................................51
13.2   Notices.......................................................................52
13.3   No Waiver; Cumulative Remedies................................................53
13.4   Survival of Representations and Warranties....................................53
13.5   Payment of Expenses and Taxes.................................................53
13.6   Successors and Assigns; Participations; Purchasing Banks......................54
13.7   Adjustments; Set-off..........................................................57
13.8   Counterparts..................................................................58
13.9   Severability..................................................................58
13.10  Integration...................................................................58
13.11  GOVERNING LAW.................................................................58
13.12  Submission to Jurisdiction; Waivers...........................................58
13.13  Acknowledgments...............................................................59
13.14  WAIVERS OF JURY TRIAL.........................................................60
13.15  Additional Borrowers..........................................................60

iii

**SCHEDULES**

Schedule I            Commitments; Lending Offices and Addresses for Notices
Schedule II           Principal Subsidiaries

**EXHIBITS**

Exhibit A             Form of Revolving Credit Note
Exhibit B             Form of Bid Loan Note
Exhibit C             Form of Bid Loan Confirmation
Exhibit D             Form of Bid Loan Offer
Exhibit E             Form of Bid Loan Request
Exhibit F-1           Form of Opinion of Counsel to the Company and the Parent
Exhibit F-2           Form of Opinion of Simpson Thacher & Bartlett
Exhibit G             Form of Officer's Certificate
Exhibit H             Form of Commitment Transfer Supplement
Exhibit I             Form of Notice of Additional Borrower

iv

# GRACE W R GRACE & CO (GRA)

7500 GRACE DRIVE
COLUMBIA, MD 21044
410 531 4000
http://www.grace.com/

## EX-4

**FIRST AMENDMENT TO 264-DAY CREDIT AGREEMENT**
10-Q Filed on 08/14/2000 – Period: 06/30/2000
File Number 001-13953

GSI

EXHIBIT 4

## FIRST AMENDMENT

FIRST AMENDMENT, dated as of May 3, 2000 (this "Amendment"), to the 364-Day Credit Agreement, dated as of May 5, 1999 (as amended, supplemented or otherwise modified from time to time, the "Agreement"), among W. R. Grace & Co.-Conn., a Connecticut corporation (the "Company"), W. R. Grace & Co., a Delaware corporation (the "Parent"), the several banks from time to time parties thereto (the "Banks"), Bank of America, N.A. (formerly known as Bank of America National Trust and Savings Association), a national bank, as syndication agent (in such capacity, the "Syndication Agent"), The Chase Manhattan Bank, a New York banking corporation, as administrative agent for the Banks thereunder (in such capacity, the "Administrative Agent"), Chase Securities Inc., as book manager (in such capacity, the "Book Manager") and First Union National Bank, as documentation agent (in such capacity, the "Documentation Agent").

## W I T N E S S E T H :

WHEREAS, pursuant to the Agreement, the Banks have agreed to make, and have made, certain loans and other extensions of credit to the Borrowers; and

WHEREAS, the Borrowers have requested, and, upon this Amendment becoming effective, the Banks have agreed, that certain provisions of the Agreement be amended in the manner provided for in this Amendment.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the premises and mutual agreements contained herein, the parties hereto hereby agree as follows:

### SECTION I. AMENDMENTS

1.1 Defined Terms. Unless otherwise defined herein, capitalized terms which are defined in the Agreement are used herein as defined therein.

1.2 Amendment to subsection 1.1. Subsection 1.1 of the Agreement is hereby amended:

(a) by deleting therefrom the existing definition of "Applicable Margin" and by substituting therefor the following:

"Applicable Margin": for any day on which the long term senior unenhanced, unsecured debt of the Company is rated by both S&P and Moody's, the rate per annum under the caption "Margin" (a "Margin Rate") set forth below opposite the S&P and Moody's ratings applicable to such debt on such day (or, if such ratings are set opposite two different Margin Rates, then the Applicable Margin shall be the lower of said two Margin Rates):

| Margin | S&P | Moody's |
|--------|-----|---------|
| 1.00% | BB or lower | Ba2 or lower |
| .800% | BB+ | Ba1 |
| .575% | BBB- | Baa3 |
| .475% | BBB or higher | Baa2 or higher |

provided that if on any day (i) the long term senior unenhanced, unsecured debt of the Company is rated by only one of either S&P or Moody's, the Applicable Margin will be determined based on the rating by such rating agency, (ii) the long term senior unenhanced, unsecured debt of the Company is rated by neither S&P nor Moody's, the Applicable Margin will be determined based on the rating of such debt by Duff & Phelps, Fitch or another nationally recognized statistical rating organization agreed to by and among the Company, the Administrative Agent and the Majority Banks (each, a "Substitute Rating Agency") and will be the Margin Rate set forth above opposite the S&P and Moody's ratings comparable to such Substitute Rating Agency's rating of such debt on such date and (iii) the long term senior unenhanced, unsecured debt of the Company is rated by none of S&P, Moody's or any Substitute Rating Agency, the Company, the Administrative Agent and the Banks will negotiate in good faith to determine an alternative basis for calculating the Applicable Margin consistent with the table set forth above and, if agreement on such alternative basis is not reached within 30 days, the Applicable Margin will be calculated on an alternative basis determined by the Administrative Agent and the Banks in their reasonable discretion consistent with the table above, and until such alternative basis is determined the Applicable Margin will be the Applicable Margin last determined as provided in the table above; and provided, further, that (a) if on any day the aggregate Loan Outstandings of all of the Banks plus the Aggregate Outstanding Bilateral Option Loans is greater than 25% of the Commitments but less than or equal to 50% of the Commitments, the Applicable Margin in effect on each such day shall be increased by .125% or (b) if on any day the aggregate Loan Outstandings of all of the Banks plus the Aggregate Outstanding Bilateral Option Loans is greater than 50% of all of the Commitments, the Applicable Margin in effect on each such day shall be increased by .25%.

(b) by deleting therefrom the existing definition of "Termination Date" and by substituting therefor the following

"Termination Date": May 2, 2001 or such later date to which the Termination Date may be extended pursuant to subsection 2.4.

1.3 Amendment to subsection 6.6. Subsection 6.6 of the Agreement is hereby amended:

(a) by deleting therefrom the following: "December 31, 1998" where it appears therein and

(b) by inserting in lieu thereof "December 31, 1999".

1.4 Amendment to subsection 6.15. Subsection 6.16 of the Agreement and any reference to such subsection contained in the Agreement (including, without limitation, in Exhibit I to the Agreement) are hereby deleted in their entireties.

1.5 Amendment to subsection 8.2. Subsection 8.2(b) of the Agreement is hereby amended:

(a) by deleting therefrom the following: ", (ii) to the best of such Officer's knowledge, the representation and warranty contained in subsection 6.16 is true and correct as of the date of delivery of such financial statements and certificate and (iii)" and

(b) by inserting in lieu thereof "and (ii)".

1.6 Amendment to subsection 8.9. Subsection 8.9 of the Agreement is hereby deleted in its entirety.

1.7 Amendment to Schedule 1. Schedule 1 to the Agreement is hereby deleted in its entirety and replaced with the new Schedule 1 attached to this Amendment.

### SECTION II. MISCELLANEOUS

2.1 Conditions to Effectiveness of Amendment. This Amendment shall become effective as of the date first set forth above upon:

(a) the Administrative Agent having received counterparts of this Amendment duly executed and delivered by the Company, the Parent, the Administrative Agent and the each of the Banks; and

(b) the Administrative Agent having received, on behalf of itself, the Banks and the Book Manager, the fees specified in Section 2.2 of this Amendment.

2.2 Fees. The Company shall pay to the Administrative Agent, for the account of the Administrative Agent, the Banks and the Book Manager, the fees in the amounts and on the terms previously agreed to in writing by the Parent, the Administrative Agent and the Book Manager.

2.3 Representations and Warranties. Each of the Loan Parties, as of the date hereof and after giving effect to the amendments contained herein, hereby confirms, reaffirms and restates the representations and warranties made by it in Section 6 of the Agreement and in any other Loan Document to which it is a party; provided that each reference to the Agreement therein shall be deemed to be a reference to the Agreement after giving effect to this Amendment.

2.4 Limited Effect. The execution, delivery and effectiveness of this Amendment shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of any Bank or the Administrative Agent under the Agreement, nor constitute a waiver or amendment of any provisions of the Agreement. Except as expressly modified herein, all of the provisions and covenants of the Agreement are and shall continue to remain in full force and effect in accordance with the terms thereof and are hereby in all respects ratified and confirmed.

2.5 Counterparts. This Amendment may be executed by one or more of the parties hereto in any number of separate counterparts (which may include counterparts delivered by facsimile transmission) and all of said counterparts taken together shall be deemed to constitute one and the same instrument. Any executed counterpart delivered by facsimile transmission shall be effective as for all purposes hereof.

2.6 GOVERNING LAW. THIS AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

(End of Page)

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed and delivered by their respective proper and duly authorized officers as of the day and year first above written.

W. R. GRACE & CO.-CONN.

By:
---------------------------------
   Title:

W. R. GRACE & CO.

By:
---------------------------------
   Title:

THE CHASE MANHATTAN BANK,
as Administrative Agent and as a Bank

By:
---------------------------------
   Title:

BANK OF AMERICA, N.A.,
as Syndication Agent and as a Bank

By:
---------------------------------
   Title:

FIRST UNION NATIONAL BANK,
as Documentation Agent and as a Bank

By:
---------------------------------
   Title:

ABN AMRO BANK N.V.

By:
---------------------------------
   Title:

By:
---------------------------------
   Title:

BANK HAPOALIM B.M.

By:
    ------------------------------------
    Title:

CREDIT SUISSE FIRST BOSTON

By:
    ------------------------------------
    Title:

By:
    ------------------------------------
    Title:

DRESDNER BANK AG, NEW YORK AND GRAND
CAYMAN BRANCHES

By:
    ------------------------------------
    Title:

By:
    ------------------------------------
    Title:


THE BANK OF NEW YORK

By:
    ------------------------------------
    Title:

THE BANK OF NOVA SCOTIA

By:
    ------------------------------------
    Title:

THE NORTHERN TRUST COMPANY

By:
    ------------------------------------
    Title:

WACHOVIA BANK, N.A.

By:

    ------------------------------------
    Title:

SCHEDULE I
----------

Commitments
-----------

| BANK | COMMITMENT |
|------|-----------|
| The Chase Manhattan Bank | $28,000,000 |
| Bank of America, N.A. | $28,000,000 |
| First Union National Bank | $28,000,000 |
| Credit Suisse First Boston | $25,000,000 |
| Dresdner Bank AG, New York and Grand Cayman Branches | $24,000,000 |
| The Bank of Nova Scotia | $24,000,000 |
| ABN AMRO Bank N.V. | $19,500,000 |
| The Bank of New York | $19,500,000 |
| The Northern Trust Company | $19,500,000 |
| Wachovia Bank, N.A. | $19,500,000 |
| Bank Hapoalim | $15,000,000 |
| TOTAL: | $250,000,000 |

# EXHIBIT C

# WR Grace

SR00000559 ■

### Bankruptcy Form 10

### Index Sheet

Claim Number:    00009168                        Receive Date:    03/28/2003

---

**Multiple Claim Reference**

Claim Number    _____    ☐ MMPOC    Medical Monitoring Claim Form

☐ PDPOC    Property Damage

☐ NAPO    Non-Asbestos Claim Form

☐    Amended

Claim Number    _____    ☐ MMPOC    Medical Monitoring Claim Form

☐ PDPOC    Property Damage

☐ NAPO    Non-Asbestos Claim Form

☐    Amended

---

**Attorney Information**

Firm Number:                        Firm Name:

Attorney Number:                    Attorney Name:

Zip Code:

Cover Letter Location Number:

---

| Attachments Medical Monitoring | Attachments Property Damage | Non-Asbestos |
|---|---|---|
| ☐ TBD | ☐ TBD | ☒ Other Attachments |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| | ☐ Other Attachments | |

| Other | ☐ Non-Standard Form | |
|---|---|---|
| | ☐ Amended | |
| | ☐ Post-Deadline Postmark Date | |

■ Box/Batch: WRBF0037/WRBF0146                        Document Number: WRBF007396 ■

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | | **GRACE NON-ASBESTOS PROOF OF CLAIM FORM** |
|---|---|---|
| Name of Debtor.[1] W.R. Grace & Co.-CONN. and each of the Guarantors and additional borrowers listed on the attached Schedule I | Case Number 01-01139 (JKF) (Jointly Administered) | |
| **NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. These claims will be subject to a separate claim submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.** | | |
| Name of Creditor (The person or other entity to whom the Debtor owes money or property): JPMorgan Chase Bank As Administrative Agent for the Credit Agreement dated as of May 14, 1998 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. ☐ Check box if you have never received any notices from the bankruptcy court in this case. ☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
| Name and address where notices should be sent: 270 Park Avenue New York, New York 10017 Attention: Thomas F. Maher | | |
| Account or other number by which creditor identifies Debtor: Not Applicable | Check here ☐ replaces If this claim ☐ amends a previously filed claim, dated:_____ | |
| Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted: W.R. Grace & Co.-CONN. and each of the Guarantors and additional borrowers listed on Schedule I to the attached | | |

| 1.  Basis for Claim | | |
|---|---|---|
| ☐ Goods sold ☐ Services performed ☐ Environmental liability ☒ Money loaned ☐ Non-asbestos personal injury/wrongful death ☐ Taxes ☐ Other_____ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) ☐ Wages, salaries, and compensation (fill out below) Your SS #:_____ Unpaid compensation for services performed from _____ to _____ (date) | |

| 2.  Date debt was incurred: Various, including March 15, 2001. | 3.  If court judgment, date obtained: |
|---|---|
| 4.  **Total Amount of Claim at Time Case Filed:** | $ See attached |

If all or part of your claim is secured or entitled to priority, also complete Item 5 below.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of all interest or additional charges.

5.  **Classification of Claim.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)

Brief Description of Collateral:
☐ Real Estate    ☐ Other (Describe briefly)

Amount of arrearage and other charges at time case filed included in secured claim above, if any: $_____
Attach evidence of perfection of security interest

☒ UNSECURED NONPRIORITY CLAIM
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.
☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

| 6.  Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. 7.  Supporting Documents: *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. 8.  Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | This Space is for Court Use Only |
|---|---|
| Date March 27, 2003 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT Thomas F. Maher, Managing Director | WR Grace    BF.37.148.7396 00009168 SR=559 |

REC'D MAR 2 8 2003

---

[1]    See General Instructions and Claims Bar Date Notice and its exhibits for names of all Debtors and other names used by the Debtors.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.; | ) | Case No. 01-01139 (JFK) |
| | ) | Jointly Administered |
| Debtors | ) | |
| | ) | |
| | ) | |

**MASTER PROOF OF CLAIM OF JPMORGAN CHASE BANK, IN ITS
CAPACITY AS AGENT FOR THE CLAIMANTS UNDER THE CREDIT
AGREEMENT DATED AS OF MAY 14, 1998, IDENTIFIED HEREIN**

1.   The undersigned, Thomas F. Maher, whose business and mailing address is

270 Park Avenue, New York, New York 10017, is a Managing Director of JPMorgan Chase

Bank (formerly known as The Chase Manhattan Bank; "JPMorgan Chase"), a banking

corporation formed and existing under the laws of the State of New York, with offices at 270

Park Avenue, New York, New York 10017.  JPMorgan Chase is the administrative agent (in

such capacity, the "Agent") for itself and the other banks and financial institutions (collectively,

the "Lenders"; together with the Agent, the "Claimants") from time to time parties to the Credit

Agreement, dated as of May 14, 1998 (as amended, supplemented or otherwise modified prior to

the Petition Date referenced below, the "Credit Agreement"), among W.R. Grace & Co. (f/k/a

Grace Specialty Chemicals, Inc.), ("W.R. Grace"), W.R. Grace & Co.–CONN., the Lenders

party to the Credit Agreement, the Agent and Chase Securities, Inc., as Arranger.  Pursuant to the

"Claims Bar Date Notice Order" entered by the Bankruptcy Court on April 25, 2002 and the

"Order as to all Non-Asbestos Claims, Asbestos Property Damage Claims, and Medical

Monitoring Claims: (I) Establishing Bar Dates, (II) Approving Proof of Claim Forms, and (III)

Approving Notice Program" entered by the Bankruptcy Court on April 25, 2002, the Agent has

been authorized to file this master proof of claim (this "Master Proof of Claim") on behalf of all

of the Claimants.

2.  The Agent is filing this Master Proof of Claim in order to set forth the aggregate claims of each Claimant as of April 2, 2001 (the "Petition Date") against (a) W.R. Grace & Co.-CONN., (b) W.R. Grace and W.R. Grace & Co.-CONN. as guarantors (together, the "Guarantors"), and (c) to the extent that any of them are Additional Borrowers under the Credit Agreement, each entity set forth on Schedule I hereto (collectively with W.R. Grace & Co.-CONN. and the Guarantors, the "Debtors"), arising under or in connection with the loans, extensions of credit and other financial accommodations made by the Claimants to the Debtors under or pursuant to the Credit Agreement. All such loans, extensions of credit and other financial accommodations, and all fees and other amounts owing under, or in connection with, the Credit Agreement are hereinafter referred to as the "Pre-Petition Obligations".

3.  (a) The Debtors were, as of the Petition Date, and still are indebted (or liable) (i) to the Claimants as set forth on Schedule II hereto in respect of loans made by the Claimants to the Debtors under the Credit Agreement in the aggregate principal amount as of February 11, 2003 of not less than $250,000,000 (the "Total Principal Amount") and (ii) to each Lender in an amount not less than the sum of the amounts set forth opposite such Lender's name on Schedule II hereto under the heading "Principal Outstanding", plus in each case (A) interest thereon (in amounts determined at the rates set forth in the Credit Agreement) accrued and unpaid as of the Petition Date and accrued and accruing subsequent to the Petition Date and (B) facility and other fees (in amounts determined at the rates set forth in the Credit Agreement) accrued and unpaid as of the Petition Date and accrued and accruing subsequent to the Petition Date, and for such additional amounts as described in paragraphs 3(c), 3(d) and 6 below.

(b) The amount of the Claimants' claims against the Debtors on account of interest accrued as of the Petition Date and accruing subsequent to the Petition Date on the Total

Principal Amount (including interest accrued and accruing in respect of any drawing under the letters of credit), and any fees payable under the Credit Agreement, shall be reduced by the amount, if any, of such interest and fees paid to the Claimants after the Petition Date.

(c) The Debtors are also indebted (or liable) to the Claimants for fees and costs and expenses, including attorneys' fees, incurred before or after the Petition Date to the extent provided in the Credit Agreement.

(d) The Guarantors were, as of the Petition Date, and still are, liable to the Claimants for the repayment of the Pre-Petition Obligations, including without limitation the amounts set forth in paragraphs 3(a) through 3(c) above and paragraph 6 below.

4. The consideration for the indebtedness owing to the Claimants (or ground of liability) described in this Master Proof of Claim is the loans, extensions of credit and other financial accommodations made by the Claimants pursuant to, or in connection with, the Credit Agreement.

5. By reason of the foregoing, the Debtors are indebted (a) to the Claimants as set forth on Schedule II hereto in the aggregate principal amount as of February 11, 2003 of not less than $250,000,000 in respect of loans made under the Credit Agreement plus (i) interest thereon (in amounts determined at the rates set forth in the Credit Agreement) accrued and unpaid as of the Petition Date and accrued and accruing subsequent to the Petition Date and (ii) facility and other fees (in amounts to be determined at the rates set forth in the Credit Agreement and the other Loan Documents) accrued and unpaid as of the Petition Date and accrued and accruing subsequent to the Petition Date and (b) to each Lender in an amount not less than the sum of the amounts set forth opposite such Lender's name on Schedule II hereto under the headings entitled "Principal Amount", plus in each case (i) interest thereon (in amounts

determined at the rates set forth in the Credit Agreement) accrued and unpaid as of the Petition
Date and accrued and accruing subsequent to the Petition Date and (ii) facility and other fees (in
amounts determined at the rates set forth in the Credit Agreement) accrued and unpaid as of the
Petition Date and accrued and accruing subsequent to the Petition Date. Estimated pre-petition
interest and facility fees are shown as amounts not less than those set forth under columns
bearing those titles on Schedule II hereto.

      6.  In addition to the amounts claimed above, the Debtors are also liable to the
Claimants and for such fees, indemnities, and costs and expenses as have accrued or have been
incurred before or after the Petition Date and thereafter accrue or are incurred to the extent set
forth in the Credit Agreement. In this regard, the Debtors are obligated pursuant to the Credit
Agreement to reimburse each Claimant for all of its costs and expenses, including attorneys' fees
and disbursements, incurred in connection with, among other things, any Debtor's defaults under
the Credit Agreement. This Master Proof of Claim is without prejudice to the right of the
Claimants to claim such fees and other expenses as administrative expenses of these cases
pursuant to Section 503(b) of Title 11 of the United States Code (the "Bankruptcy Code").

      7.  Annexed hereto as Exhibit A is an index of the principal documents upon
which this Master Proof of Claim is based. Because of their voluminous nature, the Agent has
not annexed hereto as separate exhibits copies of such documents. Rather, the Agent will
provide copies upon the reasonable written request delivered to counsel for the Agent made by
any party in interest in these cases.

      8.  The claims set forth in this Master Proof of Claim are not subject to any valid
set-off or counterclaim, except to the extent of any rights of set-off in favor of any Claimant
which existed as at the petition date.

9.  No judgment has been rendered on the claims set forth in this Master Proof of Claim.

10. The amount of all payments on the claims set forth in this Master Proof of Claim has been credited and deducted for the purpose of making this Master Proof of Claim.

11. The Agent reserves the right to amend and/ or supplement this Master Proof of Claim and each of the Schedules and Exhibits hereto at any time and in any manner, including without limitation, to reflect a change in the holders or the allocation of the claims of the Claimants set forth on Schedule II hereto resulting from any transfer of such claims. Each Claimant reserves the right to file additional proofs of claim for additional claims which may be based on the same or additional documents. Each Claimant further reserves the right to file proofs of claim for administrative expenses or other claims entitled to priority.

12. The Agent also files this Master Proof of Claim on behalf of any creditor or class of creditors whose claims are subordinate to the claims of the Claimants (collectively, the "Subordinated Claims") and the Agent, on behalf of the Claimants, hereby asserts additional claims against the Debtors in the amount of any such Subordinated Claims. The Claimants hereby assert their right to enforce, and claim all benefits accorded by, any and all subordination provisions which exist in respect of the Subordinated Claims. The Agent also reserves the right to amend or supplement this Master Proof of Claim as may be necessary or appropriate to preserve the benefits of such Subordinated Claims or to further protect the rights and remedies of the Claimants with respect to any such Subordinated Claims.

13. This Master Proof of Claim is filed to protect the Claimants from potential forfeiture of their claims. The filing of this Master Proof of Claim shall not constitute: (a) a consent by the Claimants to the jurisdiction of this Court with respect to the subject matter of the

6

claims set forth in this Master Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in these cases against or otherwise involving any Claimant, (b) a waiver of the right of the Claimants to trial by jury in any proceedings so triable in these cases or any controversy or proceedings related to these cases or (c) an election of remedies.

7

14. All notices concerning this Master Proof of Claim shall be sent to:

JPMORGAN CHASE BANK,
as Administrative Agent
270 Park Avenue
New York, New York 10017
Attn: Thomas F. Maher

with a copy to:

SIMPSON THACHER & BARTLETT
Attorneys for JPMorgan Chase Bank
425 Lexington Avenue
New York, New York 10017
Attn: Peter Pantaleo, Esq.
        Richard W. Douglas, Esq.

SCHEDULE I

**Guarantors**

W.R. Grace & Co.
W.R. Grace & Co.-CONN.

**Additional Borrowers**

A-1 Bit & Tool Co., Inc.
Alewife Boston Ltd.
Alewife Land Corporation
Amicon, Inc.
CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.)
CCHP, Inc.
Coalgrace, Inc.
Coalgrace II, Inc.
Creative Food 'N Fun Company
Darex Puerto Rico, Inc.
Del Taco Restaurants, Inc.
Dewey and Almy, LLC (f/k/a Dewey and Almy Company)
Ecarg, Inc.
Five Alewife Boston Ltd.,
GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.)
GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.)
GEC Management Corporation
GN Holdings, Inc.
GPC Thomasville Corp.
Gloucester New Communities Company, Inc.
Grace A-B Inc.
Grace A-B II Inc.
Grace Chemical Company of Cuba
Grace Culinary Systems, Inc.
Grace Drilling Company
Grace Energy Corporation
Grace Environmental, Inc.
Grace Europe, Inc.
Grace H-G Inc.
Grace H-G II Inc.
Grace Hotel Services Corporation
Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.)
Grace Offshore Company
Grace PAR Corporation
Grace Petroleum Libya Incorporated
Grace Tarpon Investors, Inc.
Grace Ventures Corp.
Grace Washington, Inc.

W.R. Grace Capital Corporation
W.R. Grace Land Corporation
Gracoal, Inc.
Gracoal II, Inc.
Guanica-Caribe Land Development Corporation
Hanover Square Corporation
Homco International, Inc.
Kootenai Development Company
LB Realty, Inc.
Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos
    Management, Inc.)
Monolith Enterprises, Incorporated
Monroe Street, Inc.
MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation)
MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.)
MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.)
Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating
    Corp., Emerson & Cuming, Inc.)
Southern Oil, Resin & Fiberglass, Inc.
Water Street Corporation
Axial Basin Ranch Company
CC Partners (f/k/a Cross Country Staffing)
Hayden-Gulch West Coal Company
H-G Coal Company

CLAIMANTS

| Credit Agreement dated as of May 14, 1988, Holdings as of March 11, 2003 | | | | |
|---|---|---|---|---|
| Claimant | Principal Amount ($) | Estimated Pre-petition Interest ($) | Estimated Pre-petition Facility Fees ($) | Pre-Petition Total |
| Bank of Nova Scotia | 14,705,882.35 | 86,219.77 | 1,531.00 | 14,793,633.12 |
| Bear Stearns & Co. Inc. | 31,342,502.62 | 183,759.35 | 3,263.01 | 31,529,524.98 |
| Cypress Management Partnership | 2,000,000.00 | 11,725.89 | 208.22 | 2,011,934.10 |
| D.K. Acquisition Partners, L.P. | 81,835,674.50 | 479,798.02 | 8,519.75 | 82,323,992.26 |
| Deutsche Bank Trust Company Americas | 21,705,882.44 | 127,260.38 | 2,259.76 | 21,835,402.58 |
| Dresdner Bank AG | 14,705,882.35 | 86,219.77 | 1,531.00 | 14,793,633.12 |
| Goldman Sachs Credit Partners L.P. | 5,294,118.23 | 31,039.12 | 551.16 | 5,325,708.51 |
| JPMorgan Chase | 34,705,882.36 | 203,478.66 | 3,613.16 | 34,912,974.18 |
| King Street Capital, L.P. | 38,998,292.80 | 228,644.83 | 4,060.03 | 39,230,997.66 |
| Morgan Stanley Emerging Markets, Inc. | 4,705,882.35 | 27,590.33 | 489.92 | 4,733,962.60 |
| **Total** | **250,000,000.00** | **1,465,736.12** | **26,027.00** | **251,491,763.12** |

EXHIBIT A

Principal Documents

CREDIT AGREEMENT

1.      The Credit Agreement dated as of May 14, 1998, among W.R. Grace, W.R. Grace & Co.-
        CONN., the Lenders party thereto, the Agent and Chase Securities, Inc, as Arranger.

OTHER

2.      "Claims Bar Date Notice Order" entered by the Bankruptcy Court on April 25, 2002.

3.      "Order as to all Non-Asbestos Claims, Asbestos Property Damage Claims, and Medical
        Monitoring Claims: (I) Establishing Bar Dates, (II) Approving Proof of Claim Forms, and
        (III) Approving Notice Program" entered by the Bankruptcy Court on April 25, 2002.

# EXHIBIT D

# WR Grace

Bankruptcy Form 10

Index Sheet

SR00000559

| Claim Number: | 00009159 | | Receive Date: | 03/28/2003 |
|---|---|---|---|---|

## Multiple Claim Reference

Claim Number _____

- [ ] MMPOC — Medical Monitoring Claim Form
- [ ] PDPOC — Property Damage
- [ ] NAPO — Non-Asbestos Claim Form
- [ ] Amended

Claim Number _____

- [ ] MMPOC — Medical Monitoring Claim Form
- [ ] PDPOC — Property Damage
- [ ] NAPO — Non-Asbestos Claim Form
- [ ] Amended

## Attorney Information

Firm Number:

Firm Name:

Attorney Number:

Attorney Name:

Zip Code:

Cover Letter Location Number:

| Attachments<br>Medical Monitoring | Attachments<br>Property Damage | Non-Asbestos |
|---|---|---|
| [ ] TBD | [ ] TBD | [x] Other Attachments |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| | [ ] Other Attachments | |
| **Other** | [ ] Non-Standard Form | |
| | [ ] Amended | |
| | [ ] Post-Deadline Postmark Date | |

Box/Batch: WRBF0037/WRBF0148

Document Number: WRBF007387

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | | GRACE NON-ASBESTOS PROOF OF CLAIM FORM |
|---|---|---|
| Name of Debtor:[1] W.R. Grace & Co.-CONN. and each of the Guarantors and additional borrowers listed on the attached Schedule I | Case Number 01-01139 (JKF) (Jointly Administered) | |
| NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. Those claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed. | | |
| Name of Creditor (The person or other entity to whom the Debtor owes money or property):<br><br>JPMorgan Chase Bank<br>As Administrative Agent for the 364-Day Credit Agreement dated as of May 5, 1999. | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case. | THIS SPACE IS FOR COURT USE ONLY |
| Name and address where notices should be sent:<br><br>270 Park Avenue<br>New York, New York 10017<br>Attention: Thomas F. Maher | ☐ Check box if the address differs from the address on the envelope sent to you by the court. | |
| Account or other number by which creditor identifies Debtor:<br>Not Applicable | Check here ☐ replaces<br>If this claim ☐ amends a previously filed claim, dated: | |
| Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:<br>W.R. Grace & Co.-CONN. and each of the Guarantors and additional borrowers listed on Schedule I to the attached | | |

| 1. Basis for Claim | 3. | If court judgment, date obtained: |
|---|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Environmental liability
- ☒ Money loaned
- ☐ Non-asbestos personal injury/wrongful death
- ☐ Taxes
- ☐ Other

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Your SS #: _____
Unpaid compensation for services performed
from _____ to _____ (date)

**2.** Date debt was incurred: Various, including March 6, 2001.

**3.** If court judgment, date obtained:

**4.** Total Amount of Claim at Time Case Filed: $ See attached

If all or part of your claim is secured or entitled to priority, also complete Item 5 below.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5.** Classification of Claim. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)
Brief Description of Collateral:
☐ Real Estate    ☐ Other (Describe briefly)

Amount of arrearage and other charges at time claim filed included in secured claim above, if any: $_____
Attach evidence of perfection of security interest
☒ UNSECURED NONPRIORITY CLAIM
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.
☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**6.** Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7.** Supporting Documents: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8.** Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space is for Court Use Only

| Date<br>March 27, 2003 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>JPMORGAN CHASE BANK,<br>AS ADMINISTRATIVE AGENT<br>Thomas F. Maher, Managing Director | WR Grace    BF.37.148.7387<br>00009159<br>SR=559 |
|---|---|---|

RECD MAR 2 8 2003

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:                                    )    Chapter 11
                                          )
W.R. GRACE & CO., et al.;                 )    Case No. 01-01139 (JFK)
                                          )    Jointly Administered
                 Debtors                  )
                                          )
                                          )

## MASTER PROOF OF CLAIM OF JPMORGAN CHASE BANK, IN ITS CAPACITY AS AGENT FOR THE CLAIMANTS UNDER THE CREDIT AGREEMENT DATED AS OF MAY 5, 1999, IDENTIFIED HEREIN

1.  The undersigned, Thomas F. Maher, whose business and mailing address is

270 Park Avenue, New York, New York 10017, is a Managing Director of JPMorgan Chase

Bank (formerly known as The Chase Manhattan Bank; "JPMorgan Chase"), a banking

corporation formed and existing under the laws of the State of New York, with offices at 270

Park Avenue, New York, New York 10017. JPMorgan Chase is the administrative agent (in

such capacity, the "Agent") for itself and the other banks and financial institutions (collectively,

the "Lenders"; together with the Agent, the "Claimants") from time to time parties to the 364-

Day Credit Agreement dated as of May 5, 1999 (as amended, supplemented or otherwise

modified prior to the Petition Date referenced below, the "Credit Agreement"), among W.R.

Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), ("W.R. Grace"), W.R. Grace & Co.–

CONN., the Lenders party to the Credit Agreement, Bank of America National Trust and

Savings Association, as Documentation Agent, the Agent and Chase Securities, Inc., as Book

Manager. Pursuant to the "Claims Bar Date Notice Order" entered by the Bankruptcy Court on

April 25, 2002 and the "Order as to all Non-Asbestos Claims, Asbestos Property Damage

Claims, and Medical Monitoring Claims: (I) Establishing Bar Dates, (II) Approving Proof of

Claim Forms, and (III) Approving Notice Program", entered by the Bankruptcy Court on April

25, 2002, the Agent has been authorized to file this master proof of claim (this "Master Proof of Claim") on behalf of all of the Claimants.

2. The Agent is filing this Master Proof of Claim in order to set forth the aggregate claims of each Claimant as of April 2, 2001 (the "Petition Date") against (a) W.R. Grace & Co.-CONN., (b) W.R. Grace and W.R. Grace & Co.-CONN. as guarantors (together, the "Guarantors") and, (c) to the extent that any of them are Additional Borrowers under the Credit Agreement, each entity set forth on Schedule I hereto (collectively with W.R. Grace & Co.-CONN. and the Guarantors, the "Debtors"), arising under or in connection with the loans, extensions of credit and other financial accommodations made by the Claimants to the Debtors under or pursuant to the Credit Agreement. All such loans, extensions of credit and other financial accommodations, and all fees and other amounts owing under, or in connection with, the Credit Agreement are hereinafter referred to as the "Pre-Petition Obligations".

3. (a) The Debtors were, as of the Petition Date, and still are indebted (or liable) (i) to the Claimants as set forth on Schedule II hereto in respect of loans made by the Claimants to the Debtors under the Credit Agreement in the aggregate principal amount as of February 11, 2003 of not less than $250,000,000 (the "Total Principal Amount") and (ii) to each Lender in an amount not less than the sum of the amounts set forth opposite such Lender's name on Schedule II hereto under the heading "Principal Outstanding", plus in each case (A) interest thereon (in amounts determined at the rates set forth in the Credit Agreement) accrued and unpaid as of the Petition Date and accrued and accruing subsequent to the Petition Date and (B) facility and other fees (in amounts determined at the rates set forth in the Credit Agreement) accrued and unpaid as of the Petition Date and accrued and accruing subsequent to the Petition Date, and for such additional amounts as described in paragraphs 3(c), 3(d) and 6 below.

3

(b)    The amount of the Claimants' claims against the Debtors on account of interest accrued as of the Petition Date and accruing subsequent to the Petition Date on the Total Principal Amount (including interest accrued and accruing in respect of any drawing under the letters of credit), and any fees payable under the Credit Agreement, shall be reduced by the amount, if any, of such interest and fees paid to the Claimants after the Petition Date.

(c)    The Debtors are also indebted (or liable) to the Claimants for fees and costs and expenses, including attorneys' fees, incurred before or after the Petition Date to the extent provided in the Credit Agreement.

(d)    The Guarantors were, as of the Petition Date, and still are, liable to the Claimants for the repayment of the Pre-Petition Obligations, including without limitation the amounts set forth in paragraphs 3(a) through 3(c) above and paragraph 6 below.

4.  The consideration for the indebtedness owing to the Claimants (or ground of liability) described in this Master Proof of Claim is the loans, extensions of credit and other financial accommodations made by the Claimants pursuant to, or in connection with, the Credit Agreement.

5.  By reason of the foregoing, the Debtors are indebted (a) to the Claimants as set forth on Schedule II hereto in the aggregate principal amount as of February 11, 2003 of not less than $250,000,000 in respect of loans made under the Credit Agreement plus (i) interest thereon (in amounts determined at the rates set forth in the Credit Agreement) accrued and unpaid as of the Petition Date and accrued and accruing subsequent to the Petition Date and (ii) facility and other fees (in amounts to be determined at the rates set forth in the Credit Agreement and the other Loan Documents) accrued and unpaid as of the Petition Date and accrued and accruing subsequent to the Petition Date and (b) to each Lender in an amount not less than the

sum of the amounts set forth opposite such Lender's name on Schedule II hereto under the
headings entitled "Principal Amount", plus in each case (i) interest thereon (in amounts
determined at the rates set forth in the Credit Agreement) accrued and unpaid as of the Petition
Date and accrued and accruing subsequent to the Petition Date and (ii) facility and other fees (in
amounts determined at the rates set forth in the Credit Agreement) accrued and unpaid as of the
Petition Date and accrued and accruing subsequent to the Petition Date. Estimated pre-petition
interest and facility fees are shown as amounts not less than those set forth under columns
bearing those titles on Schedule II hereto.

6.    In addition to the amounts claimed above, the Debtors are also liable to the
Claimants for such fees, indemnities, and costs and expenses as have accrued or have been
incurred before or after the Petition Date and thereafter accrue or are incurred to the extent set
forth in the Credit Agreement. In this regard, the Debtors are obligated pursuant to the Credit
Agreement to reimburse each Claimant for all of its costs and expenses, including attorneys' fees
and disbursements, incurred in connection with, among other things, any Debtor's defaults under
the Credit Agreement. This Master Proof of Claim is without prejudice to the right of the
Claimants to claim such fees and other expenses as administrative expenses of these cases
pursuant to Section 503(b) of Title 11 of the United States Code (the "Bankruptcy Code").

7.    Annexed hereto as Exhibit A is an index of the principal documents upon
which this Master Proof of Claim is based. Because of their voluminous nature, the Agent has
not annexed hereto as separate exhibits copies of such documents. Rather, the Agent will
provide copies upon the reasonable written request delivered to counsel for the Agent made by
any party in interest in these cases.

8. The claims set forth in this Master Proof of Claim are not subject to any valid set-off or counterclaim, except to the extent of any rights of set-off in favor of any Claimant which existed as at the petition date.

9. No judgment has been rendered on the claims set forth in this Master Proof of Claim.

10. The amount of all payments on the claims set forth in this Master Proof of Claim has been credited and deducted for the purpose of making this Master Proof of Claim.

11. The Agent reserves the right to amend and/ or supplement this Master Proof of Claim and each of the Schedules and Exhibits hereto at any time and in any manner, including without limitation, to reflect a change in the holders or the allocation of the claims of the Claimants set forth on Schedule II hereto resulting from any transfer of such claims. Each Claimant reserves the right to file additional proofs of claim for additional claims which may be based on the same or additional documents. Each Claimant further reserves the right to file proofs of claim for administrative expenses or other claims entitled to priority.

12. The Agent also files this Master Proof of Claim on behalf of any creditor or class of creditors whose claims are subordinate to the claims of the Claimants (collectively, the "Subordinated Claims") and the Agent, on behalf of the Claimants, hereby asserts additional claims against the Debtors in the amount of any such Subordinated Claims. The Claimants hereby assert their right to enforce, and claim all benefits accorded by, any and all subordination provisions which exist in respect of the Subordinated Claims. The Agent also reserves the right to amend or supplement this Master Proof of Claim as may be necessary or appropriate to preserve the benefits of such Subordinated Claims or to further protect the rights and remedies of the Claimants with respect to any such Subordinated Claims.

13. This Master Proof of Claim is filed to protect the Claimants from potential forfeiture of their claims. The filing of this Master Proof of Claim shall not constitute: (a) a consent by the Claimants to the jurisdiction of this Court with respect to the subject matter of the claims set forth in this Master Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in these cases against or otherwise involving any Claimant, (b) a waiver of the right of the Claimants to trial by jury in any proceedings so triable in these cases or any controversy or proceedings related to these cases or (c) an election of remedies.

7

14. All notices concerning this Master Proof of Claim shall be sent to:

> JPMORGAN CHASE BANK,
> as Administrative Agent
> 270 Park Avenue
> New York, New York 10017
> Attn: Thomas F. Maher
>
> with a copy to:
>
> SIMPSON THACHER & BARTLETT
> Attorneys for JPMorgan Chase Bank
> 425 Lexington Avenue
> New York, New York 10017
> Attn: Peter Pantaleo, Esq.
>         Richard W. Douglas, Esq.

SCHEDULE I

**Guarantors**

W.R. Grace & Co.
W.R. Grace & Co.-CONN.

**Additional Borrowers**

A-1 Bit & Tool Co., Inc.
Alewife Boston Ltd.
Alewife Land Corporation
Amicon, Inc.
CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.)
CCHP, Inc.
Coalgrace, Inc.
Coalgrace II, Inc.
Creative Food 'N Fun Company
Darex Puerto Rico, Inc.
Del Taco Restaurants, Inc.
Dewey and Almy, LLC (f/k/a Dewey and Almy Company)
Ecarg, Inc.
Five Alewife Boston Ltd.,
GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.)
GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.)
GEC Management Corporation
GN Holdings, Inc.
GPC Thomasville Corp.
Gloucester New Communities Company, Inc.
Grace A-B Inc.
Grace A-B II Inc.
Grace Chemical Company of Cuba
Grace Culinary Systems, Inc.
Grace Drilling Company
Grace Energy Corporation
Grace Environmental, Inc.
Grace Europe, Inc.
Grace H-G Inc.
Grace H-G II Inc.
Grace Hotel Services Corporation
Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.)
Grace Offshore Company
Grace PAR Corporation
Grace Petroleum Libya Incorporated
Grace Tarpon Investors, Inc.
Grace Ventures Corp.
Grace Washington, Inc.

W.R. Grace Capital Corporation
W.R. Grace Land Corporation
Gracoal, Inc.
Gracoal II, Inc.
Guanica-Caribe Land Development Corporation
Hanover Square Corporation
Homco International, Inc.
Kootenai Development Company
LB Realty, Inc.
Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos
    Management, Inc.)
Monolith Enterprises, Incorporated
Monroe Street, Inc.
MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation)
MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.)
MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.)
Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating
    Corp., Emerson & Cuming, Inc.)
Southern Oil, Resin & Fiberglass, Inc.
Water Street Corporation
Axial Basin Ranch Company
CC Partners (f/k/a Cross Country Staffing)
Hayden-Gulch West Coal Company
H-G Coal Company

SCHEDULE II

CLAIMANTS

| 364 Day Revolving Credit Agreement dated as of May 5, 1999, Holdings as of March 11, 2003 | | | |
|---|---|---|---|
| Claimant | Principal Amount ($) | Estimated Pre-petition Interest ($) | Estimated Pre-petition Facility Fees($) | Pre-Petition Total |
| Bank Hapoalim, B.M. | 15,000,000.00 | 93,986.46 | 1,561.62 | 15,095,548.08 |
| Bank of Nova Scotia | 24,000,000.00 | 150,378.33 | 2,498.59 | 24,152,876.93 |
| Bear Stearns & Co. Inc. | 39,300,624.98 | 246,248.44 | 4,091.51 | 39,550,964.93 |
| Credit Suisse First Boston | 5,000,000.00 | 31,328.82 | 520.54 | 5,031,849.36 |
| D.K. Acquisition Partners, L.P. | 30,070,207.85 | 188,412.82 | 3,130.55 | 30,261,751.22 |
| Deutsche Bank Trust Company Americas | 24,500,000.02 | 153,511.22 | 2,550.65 | 24,656,061.88 |
| Dresdner Bank AG | 24,000,000.00 | 150,378.33 | 2,498.59 | 24,152,876.93 |
| JPMorgan Chase | 28,000,000.00 | 175,441.39 | 2,915.02 | 28,178,356.41 |
| King Street Capital, L.P. | 44,276,225.97 | 277,424.38 | 4,609.51 | 44,558,259.86 |
| Northern Trust Company | 15,852,941.18 | 99,330.79 | 1,650.42 | 15,953,922.38 |
| **Total** | **250,000,000.00** | **1,566,440.97** | **26,027.00** | **251,592,467.97** |

## EXHIBIT A

### Principal Documents

CREDIT AGREEMENT

1.   The 364-Day Credit Agreement dated as of May 5, 1999, among W.R. Grace, W.R. Grace & Co.-CONN., the Lenders party thereto, Bank of America National Trust and Savings Association, as Documentation Agent, the Agent and Chase Securities, Inc., as Book Manager.

OTHER

2.   "Claims Bar Date Notice Order" entered by the Bankruptcy Court on April 25, 2002.

3.   "Order as to all Non-Asbestos Claims, Asbestos Property Damage Claims, and Medical Monitoring Claims: (I) Establishing Bar Dates, (II) Approving Proof of Claim Forms, and (III) Approving Notice Program" entered by the Bankruptcy Court on April 25, 2002.