**<u>EXHIBIT 4</u>**

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | ) Chapter 11 |
| | ) |
| **W.R. GRACE & CO.,** *et al.,*[1] | ) Case No.:      01-01139 (JFK) |
| | ) Jointly Administered |
| **Debtors.** | ) |
| | ) |

**RESPONSES AND OBJECTIONS OF DEBTORS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W.R. GRACE & CO. AND BANK LENDER GROUP'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, FIRST SET OF INTERROGATORIES, AND FIRST REQUEST FOR ADMISSIONS**

In accordance with Federal Rules of Civil Procedure 26, 33, 34 and 36, applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026, 7033, 7034, and 7036, the Debtors respond and object to the Official Committee Of Unsecured Creditors Of W.R. Grace & Co. And Bank Lender Group's First Request For Production Of Documents, First Set Of Interrogatories, And First Request For Admissions (collectively, the "Request") as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## GENERAL RESPONSES AND OBJECTIONS

1.  These responses are made without waiving, or intending to waive, the right to object on the grounds of competency, privilege, relevance or materiality, or any other proper grounds, to the use of any information produced pursuant to the Request, in any subsequent hearing or proceeding in this action or any other action.

2.  Debtors expressly reserve the right, at any time, to revise, correct, supplement or clarify any of the responses propounded herein.

3.  Debtors object to the Request in its entirety to the extent that it seeks information that is protected from disclosure by the attorney-client privilege or the attorney work product doctrine and will not produce such information.  The inadvertent production of any privileged or protected information shall not be deemed a waiver of any applicable privilege or protection with respect to such information.

4.  Debtors object to the Request in its entirety to the extent it is unreasonably burdensome and overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

5.  Debtors object to the Request in its entirety to the extent it purports to impose on Debtors obligations beyond those imposed by Federal Rules of Civil Procedure 26, 33, 34 and 36, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026, 7033, 7034, and 7036.

6.  Debtors object to the Request in its entirety to the extent it seeks information that is readily available to the Official Committee of Unsecured Creditors from its own records.

7.  Debtors object to the Request in its entirety to the extent it purports to require Debtors to produce information prior to the dates set forth in the Stipulated Scheduling Order Relating To The Debtors' Objection To The Unsecured Claims Asserted Under The Debtors' Credit Agreements Dated As Of May 14, 1998 And May 5, 1999 (the "Scheduling Order").  Debtors specifically reserve the right to supplement their responses to this Request in their trial affidavits and reply brief, which will be served in accordance with the Scheduling Order.

2

## SPECIFIC RESPONSES AND OBJECTIONS

### I.    DOCUMENT REQUESTS

**REQUEST NO. 1:**

All documents referred to or identified or which should have been referred to or identified in (i) your responses to the Interrogatories; or (ii) any denial made to the Request for Admissions.

**RESPONSE TO REQUEST NO. 1:**

Debtors specifically incorporate by reference the General Objections.  Subject to those Objections, Debtors will produce documents, if any, responsive to this request.

**REQUEST NO. 2:**

All documents relating to the Debtors' projected or expected liquidation value under chapter 7 of the Bankruptcy Code as of the Effective Date.

**RESPONSE TO REQUEST NO. 2:**

Debtors specifically incorporate by reference the General Objections.  Subject to those Objections, Debtors state that the disclosure statement that Debtors expect to file with the Bankruptcy Court will contain a hypothetical Chapter 7 liquidation analysis.  The plan of reorganization and disclosure statement will be produced as soon as they are finalized.  To the extent this request seeks additional documents, Debtors object to this request as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 3:**

All documents relating to or reflecting the Debtors' communications and/or negotiations with the Equity committee in connection with the Proposed Asbestos Settlement which are in any way related to the issues described in the Objection.

**RESPONSE TO REQUEST NO. 3:**

Debtors specifically incorporate by reference the General Objections.  Subject to those Objections, Debtors will produce documents, if any, responsive to this request.

**REQUEST NO. 4:**

All documents relating to or reflecting communications with the Creditors Committee regarding the fact that any proposed settlement should provide for default rate interest to the Lenders.

**RESPONSE TO REQUEST NO. 4:**

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors state that they presently are not aware of any documents responsive to this request. However, Debtors' search is ongoing, and if Debtors find any documents responsive to this request, they will promptly be produced.

**REQUEST NO. 5:**

All documents relating to or reflecting any communications between the Debtors and any of the Official Committees regarding the exclusion of, or potential participation by, the Creditors Committee and/or those represented by the Creditors Committee in negotiations or discussions with regard to the Proposed Asbestos Settlement.

**RESPONSE TO REQUEST NO. 5:**

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors state that they presently are not aware of any documents responsive to this request. However, Debtors' search is ongoing, and if Debtors find any documents responsive to this request, they will promptly be produced.

**REQUEST NO. 6:**

All documents reflecting or relating to the Debtors' communications and/or negotiations with any of the Bank Agent or Lenders in connection with the Proposed 2005 Agreement and the February Letter Agreement.

**RESPONSE TO REQUEST NO. 6:**

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors will produce documents, if any, responsive to this request.

**REQUEST NO. 7:**

All documents reflecting or relating to the Debtors' communications and/or negotiations with any of the Bank Agent or Lenders in connection with the Proposed Asbestos Settlement.

**RESPONSE TO REQUEST NO. 7:**

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors state that they presently are not aware of any documents responsive to this request. However, Debtors' search is ongoing, and if Debtors find any documents responsive to this request, they will promptly be produced.

4

**REQUEST NO. 8:**

All documents relating to any agreement whereby any of the Bank Agent or Lenders would accept any interest rate other than that set forth in the 1998 and 1999 Credit Agreements.

**RESPONSE TO REQUEST NO. 8:**

Debtors specifically incorporate by reference the General Objections.  Subject to those Objections, Debtors will produce documents, if any, responsive to this request.

**REQUEST NO. 9:**

All documents relating to or reflecting the Debtors' satisfaction of their nonpayment obligations under the 1998 and 1999 Credit Agreements.

**RESPONSE TO REQUEST NO. 9:**

Debtors specifically incorporate by reference the General Objections.  Debtors further object to this request on the ground that the phrase "satisfaction of their nonpayment obligations" is vague and ambiguous.

**REQUEST NO. 10:**

The most recent version of the disclosure statement and plan of reorganization for the Debtors.

**RESPONSE TO REQUEST NO. 10:**

Debtors state that they expect to file with the Bankruptcy Court a plan of reorganization and related disclosure statement by the end of the month.  Debtors will produce copies of those documents at the time of filing.  Debtors' prior proposed plans of reorganization and related disclosure statements are already on file with the Bankruptcy Court.

**REQUEST NO. 11:**

All documents relating to or reflecting communications between the Debtors and the Creditors Committee whereby the Creditors Committee represented that any of the Bank Agent or Lenders would accept post-petition interest at any rate other than the interest rate set forth in the 1998 and 1999 Credit Agreements.

**RESPONSE TO REQUEST NO. 11:**

Debtors specifically incorporate by reference the General Objections.  Subject to those Objections, Debtors will produce documents, if any, responsive to this request.

**REQUEST NO. 12:**

All documents relating to or reflecting the agreement between the Creditors Committee and the Debtors regarding the Proposed 2005 Agreement.

**RESPONSE TO REQUEST NO. 12:**

Debtors specifically incorporate by reference the General Objections.  Subject to those Objections, Debtors will produce documents, if any, responsive to this request.

**REQUEST NO. 13:**

All documents relating to or reflecting any of the Bank Agent or Lender's agreement to accept post-petition interest at a floating prime rate (compounded quarterly) in conjunction with an overall settlement under a chapter 11 plan.

**RESPONSE TO REQUEST NO. 13:**

Debtors specifically incorporate by reference the General Objections.  Subject to those Objections, Debtors will produce documents, if any, responsive to this request.

**REQUEST NO. 14:**

All documents that relate to or reflect actions or positions taken by the Debtors in reliance on the Proposed 2005 Agreement and the February Letter Agreement.

**RESPONSE TO REQUEST NO. 14:**

Debtors specifically incorporate by reference the General Objections.  Debtors further object to this request as overbroad, unduly burdensome and not reasonably calculated to lead the discovery of admissible evidence.  As set forth in Debtors' response to Interrogatory No. 6, below, since Debtors entered into the Proposed 2005 Agreement and the February Letter Agreement, almost all of the actions and positions that Debtors have taken in connection with these bankruptcy cases have been in reliance on those Agreements.  Such actions and positions include, but are not limited to:  revising the original Plan of Reorganization, dated November 13, 2004, and filing an Amended Joint Plan of Reorganization, dated January 13, 2005; amending their securities filings with the Securities and Exchange Commission; increasing their asbestos-related reserve; taking an accrual and charge to increase Debtors' estimate of interest to which general unsecured creditors would be entitled under the plan of reorganization; preparing Debtors' actual and forecasted financial results; communicating with the Creditors' Committee and the Lenders; seeking multiple extensions of the exclusivity period in which to file a plan of

6

reorganization; negotiating and agreeing to the February Letter Agreement (in reliance on the Proposed 2005 Agreement); negotiating and agreeing to the Proposed Asbestos Settlement; and developing the plan of reorganization that Debtors and various co-proponents expect to file.

## REQUEST NO. 15:

All documents that relate to or reflect actions or positions taken by the Equity Committee in reliance on the Proposed 2005 Agreement and the February Letter Agreement.

## RESPONSE TO REQUEST NO. 15:

Debtors specifically incorporate by reference the General Objections. Debtors further object to this request on the ground that it seeks information that belongs solely to a third party that is neither the alter ego nor the agent of Debtors.

## REQUEST NO. 16:

All documents identified, used in the preparation of, or referred to in your responses to the Discovery Requests.

## RESPONSE TO REQUEST NO. 16:

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors will produce documents, if any, responsive to this request.

## REQUEST NO. 17:

All reports or other documents of the Debtors' experts or consultants reflecting, relating, or referring to the subject matters in and concerning the 1998 and 1999 Credit Agreements.

## RESPONSE TO REQUEST NO. 17:

Debtors specifically incorporate by reference the General Objections. Debtors further object to on the ground that the phrase "Debtors' experts or consultants" is vague and ambiguous. To the extent that this request is directed to documents in the possession, custody or control of the financial advisor retained by Debtors in these bankruptcy cases, Debtors further object to this request on the ground that it seeks information that belongs solely to a third party that is neither the alter ego nor the agent of Debtors, and on the ground that this request is not reasonably calculated to lead to the discovery of admissible evidence. In the event that Debtors choose to submit a trial affidavit from their financial advisor, that affidavit will be produced in accordance with the deadlines set forth in the Scheduling Order.

**REQUEST NO. 18:**

All documents that you expect to use as exhibits, evidence, or for any other purpose at the Hearing.

**RESPONSE TO REQUEST NO. 18:**

Debtors specifically incorporate by reference the General Objections. Debtors further object to this request on the ground that it purports to require Debtors to produce information prior to the dates set forth in the Scheduling Order. Debtors specifically reserve the right to produce information responsive to this request in their trial affidavits and reply brief, which will be served in accordance with the Scheduling Order.

## II.    INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify the person or persons answering these Discovery Requests on behalf of the Debtors.

**RESPONSE TO INTERROGATORY NO. 1:**

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors state that the persons furnishing the information for these Interrogatory answers include, but are not limited to, the following:

- Paul Norris -- Former President and Chief Executive Officer
  W.R. Grace & Co.
  7500 Grace Drive
  Columbia, MD 21044
  (410) 531-4404

- David Siegel -- Former Senior Vice President and General Counsel
  W.R. Grace & Co.
  7500 Grace Drive
  Columbia, MD 21044
  (410) 531-4170

- Robert Tarola -- Senior Vice President - Corporate Strategy and Former Chief Financial Officer
  W.R. Grace & Co.
  7500 Grace Drive
  Columbia, MD 21044
  (410) 531-4185

- Mark Shelnitz -- Vice President, General Counsel and Secretary
  W.R. Grace & Co.
  7500 Grace Drive

8

Columbia, MD 21044
(410) 531-4212

- David Bernick
  Theodore Freedman
  Eric Leon

  Kirkland & Ellis LLP
  153 East 53rd Street
  New York, NY 10022
  (212) 446-4800

- Janet Baer
  Kirkland & Ellis LLP
  200 East Randolph Drive
  Chicago, IL 60601
  (212) 861-2000

## INTERROGATORY NO. 2:

Identify all persons who have knowledge of the facts which relate to the allegations of the Objection, the Response, the Creditors Committee's Response, and the Equity Committee's Joinder.

## RESPONSE TO INTERROGATORY NO. 2:

Debtors specifically incorporate by reference the General Objections.  Subject to those

Objections, Debtors state that the individuals who have knowledge of some or all of the facts

relating to the allegations of the Objection include, but are not limited to, Paul Norris, David

Siegel, Robert Tarola, Mark Shelnitz, Tom Maher, Lewis Kruger and Ken Pasquale.  Debtors

object to the remainder of this Interrogatory on the ground that it seeks information that belongs

solely to third parties, none of which is the alter ego or the agent of Debtors, and on the ground

that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of

admissible evidence.

## INTERROGATORY NO. 3:

If it is your contention that any of the Bank Agent or Lenders have committed any inequitable act or wrongdoing, or engaged in inequitable conduct, during the process of formulating a plan of reorganization or during the pendency of the Debtors' Bankruptcy Case, identify all facts (and persons with knowledge of such facts) supporting each such alleged inequitable act or wrongdoing, or inequitable conduct, by the Bank Agent or Lenders.

9

**RESPONSE TO INTERROGATORY NO. 3:**

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors state that it is their position that, to the extent that the Lenders are entitled to any post-petition interest, all of the equitable factors relevant to the analysis as to the appropriate rate of interest tip decidedly against an award of post-petition interest at the contract rate of default. Those equitable factors were already described in David Bernick's letter to Andrew Rosenberg, dated May 5, 2008, and in the Debtors' Objection, and Debtors specifically incorporate the contents of those documents into this Interrogatory response. The persons with knowledge of these equitable factors include, but are not limited to, Paul Norris, David Siegel, Robert Tarola, Mark Shelnitz, Tom Maher, Lewis Kruger and Ken Pasquale. Debtors expressly reserve the right to cite to additional equitable factors in support of their Objection to the Creditor's Committee's and the Lender's demand for post-petition interest at the contract default rate in their trial affidavits, their reply brief or at any other appropriate time.

**INTERROGATORY NO. 4:**

Identify and describe all facts (and persons with knowledge of such facts) referenced by your phrase "relevant equitable considerations" referenced in numbered paragraph 5 of the Objection.

**RESPONSE TO INTERROGATORY NO. 4:**

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors state that the "relevant equitable considerations" referenced in numbered paragraph 5 of the Objection are described in detail in numbered paragraphs 36-43 of the Objection, and in David Bernick's letter to Andrew Rosenberg, dated May 5, 2008.

**INTERROGATORY NO. 5:**

If it is your contention that any of the Bank Agent or Lenders did not comply with the terms of the 1998 and 1999 Credit Agreements, identify all facts (and persons with knowledge of such facts) supporting such contention.

**RESPONSE TO INTERROGATORY NO. 5:**

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors state that, solely for purposes of Debtors' Objection to the Bank Lenders' claim for post-petition interest under the 1998 and 1999 Credit Agreements, Debtors do not

contend that the Bank Agent or Lenders failed to comply with the terms of the 1998 and 1999 Credit Agreements.

## INTERROGATORY NO. 6:

Identify and describe the actions or positions (and persons with knowledge of such actions or positions) the Debtors took in reliance on the Proposed 2005 Agreement and the February Letter Agreement.

## RESPONSE TO INTERROGATORY NO. 6:

Debtors specifically incorporate by reference the General Objections.  Subject to those Objections, Debtors state that after entering into the Proposed 2005 Agreement and the February Letter Agreement, almost all of the actions and positions that Debtors have taken in connection with these bankruptcy cases have been in reliance on those Agreements.  Such actions and positions include, but are not limited to:  revising the original Plan of Reorganization, dated November 13, 2004, and filing an Amended Joint Plan of Reorganization, dated January 13, 2005; amending their securities filings with the Securities and Exchange Commission; increasing their asbestos-related reserve; taking an accrual and charge to increase Debtors' estimate of interest to which general unsecured creditors would be entitled under the plan of reorganization; preparing Debtors' actual and forecasted financial results; communicating with the Creditors' Committee and the Lenders; seeking multiple extensions of the exclusivity period in which to file a plan of reorganization; negotiating and agreeing to the February Letter Agreement (in reliance on the Proposed 2005 Agreement); negotiating and agreeing to the Proposed Asbestos Settlement; and developing the plan of reorganization that Debtors and various co-proponents will soon file.

## INTERROGATORY NO. 7:

Identify and describe the actions or positions (and persons with knowledge of such actions or positions) the Equity Committee, the Future Claimants Representative, and/or the Asbestos Claimants Committee took in reliance on the Proposed 2005 Agreement and the February Letter Agreement.

**RESPONSE TO INTERROGATORY NO. 7:**

Debtors specifically incorporate by reference the General Objections. Debtors further object to this Interrogatory on the ground that it seeks information that belongs solely to third parties, none of which is the alter ego or the agent of Debtors.

**INTERROGATORY NO. 8:**

Identify and describe the actions or positions (and persons with knowledge of such actions or positions) taken by any of the Bank Agent or Lenders on which the Debtors relied in reaching the Proposed Asbestos Settlement and the February Letter Agreement.

**RESPONSE TO INTERROGATORY NO. 8:**

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors state that the actions or positions taken by the Lenders on which Debtors relied in reaching the Proposed Asbestos Settlement and the February Letter Agreement were already described in David Bernick's letter to Andrew Rosenberg, dated May 5, 2008, and in the Debtors' Objection, and Debtors specifically incorporate the contents of those documents into this Interrogatory response. The persons with knowledge of these actions or positions include, but are not limited to, Paul Norris, David Siegel, Robert Tarola, Mark Shelnitz, Tom Maher, Lewis Kruger and Ken Pasquale. Debtors further state, by way of summary, that on November 13, 2004, Debtors filed their Plan of Reorganization (the "Plan"), which provided that the holders of general unsecured claims would receive post-petition interest equal to the interest they would have received in a non-default situation. Critically, the Plan also contemplated that equity would retain significant value in the reorganized Debtors. Shortly after the filing of the Plan, the Grace management team began negotiating with the Creditors' Committee, which represents the interests of the Lenders (and others), in an effort to enlist the Creditors' Committee support for the Debtors' plan of reorganization. The point person for the Creditors' Committee during these negotiations was Tom Maher of J.P. Morgan Chase & Co. Mr. Maher indicated that the Creditors' Committee would agree to be co-proponents of the Debtors' plan of reorganization if the Debtors would agree to pay a negotiated rate of post-petition interest to the Lenders under the Credit Agreements. In late 2004, the Debtors and the Creditors' Committee agreed that the Lenders would receive post-petition interest at the rate of 6.09% per annum, compounded

quarterly, which was higher than the rate of interest contemplated by the Credit Agreements absent a default prior to maturity, but lower than the rate of interest contemplated by the Credit Agreements subsequent to a default or maturity. In return for this post-petition interest, the Creditors' Committee agreed to join as a co-proponent of the Debtors' plan of reorganization. This agreement was memorialized in the Proposed 2005 Agreement. No representative from the Creditors' Committee ever suggested that the Proposed 2005 Agreement would terminate or that the agreed-upon interest rate would increase if it turned out that equity did in fact retain value in the reorganized Debtors. Nor did any representative from the Creditors' Committee ever indicate that the Proposed 2005 Agreement applied only to the Creditors' Committee, but not to the Lenders. On January 13, 2005, the Debtors filed an Amended Joint Plan of Reorganization (the "Joint Plan") reflecting the agreement on post-petition interest. Just like the original Plan, the Joint Plan also contemplated that equity would retain significant value in the reorganized Debtors. Toward the end of 2005, Mr. Maher indicated that if the Debtors wanted the Committee's continued support for the Joint Plan, there would have to be an adjustment to the rate of post-petition interest. This led to another round of negotiations between the Grace management team and the Creditors' Committee. In late 2005, the Debtors agreed to adjust the post-petition interest rate for the Lenders such that, commencing January 1, 2006, the previously agreed-upon 6.09% fixed interest rate would change to a floating adjusted interest rate tied to the "prime" rate of interest (the "February 27, 2006 Letter Agreement"). In return, the Creditors' Committee agreed to continue to be a co-proponent of the Debtors' Joint Plan. This agreement was memorialized in the February Letter Agreement. No representative from the Creditors' Committee ever suggested that the February Letter Agreement applied only to the Creditors' Committee, but not to the Lenders. Nor did any representative from the Creditor's Committee ever indicate that the February Letter Agreement would terminate or that the agreed-upon interest rate would increase if it turned out that equity did in fact retain value in the reorganized Debtors. Indeed, as of the time the Debtors negotiated and agreed to the Proposed Asbestos

Settlement, the Creditor's Committee had not, and still has not, terminated the February Letter Agreement.

### INTERROGATORY NO. 9:

Identify and describe the facts (and persons with knowledge of such facts) supporting your contention in numbered paragraph 37 of the Objection that "these same Lenders previously agreed to accept post-petition interest at the rate of 6.09% under a proposed plan of reorganization that just as plainly left value for equity."

### RESPONSE TO INTERROGATORY NO. 9:

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors state that the facts demonstrating that these Lenders previously agreed to accept post-petition interest at the rate of 6.09% under a proposed plan of reorganization that just as plainly left value for equity were already described in David Bernick's letter to Andrew Rosenberg, dated May 5, 2008, and in the Debtors' Objection, and Debtors specifically incorporate the contents of those documents into this Interrogatory response. The persons with knowledge of these actions or positions include, but are not limited to, Paul Norris, David Siegel, Robert Tarola, Mark Shelnitz, Tom Maher, Lewis Kruger and Ken Pasquale. Debtors further state, by way of summary, that on November 13, 2004, Debtors filed their Plan of Reorganization (the "Plan"), which provided that the holders of general unsecured claims would receive post-petition interest equal to the interest they would have received in a non-default situation. Critically, the Plan also contemplated that equity would retain significant value in the reorganized Debtors. Shortly after the filing of the Plan, the Grace management team began negotiating with the Creditors' Committee, which represents the interests of the Lenders (and others), in an effort to enlist the Creditors' Committee support for the Debtors' plan of reorganization. The point person for the Creditors' Committee during these negotiations was Tom Maher of J.P. Morgan Chase & Co. Mr. Maher indicated that the Creditors' Committee would agree to be co-proponents of the Debtors' plan of reorganization if the Debtors would agree to pay a negotiated rate of post-petition interest to the Lenders under the Credit Agreements. In late 2004, the Debtors and the Creditors' Committee agreed that the Lenders would receive post-petition interest at the rate of 6.09% per annum, compounded quarterly,

which was higher than the rate of interest contemplated by the Credit Agreements absent a default prior to maturity, but lower than the rate of interest contemplated by the Credit Agreements subsequent to a default or maturity.   In return for this post-petition interest, the Creditors' Committee agreed to join as a co-proponent of the Debtors' plan of reorganization. This agreement was memorialized in the Proposed 2005 Agreement.   No representative from the Creditors' Committee ever suggested that the Proposed 2005 Agreement would terminate or that the agreed-upon interest rate would increase if it turned out that equity did in fact retain value in the reorganized Debtors.   Nor did any representative from the Creditors' Committee ever indicate that the Proposed 2005 Agreement applied only to the Creditors' Committee, but not to the Lenders.  On January 13, 2005, the Debtors filed an Amended Joint Plan of Reorganization (the "Joint Plan") reflecting the agreement on post-petition interest.  Just like the original Plan, the Joint Plan also contemplated that equity would retain significant value in the reorganized Debtors.

**INTERROGATORY NO. 10:**

Identify and describe the actions or positions (and persons with knowledge of such actions or positions) taken by any of the Bank Agent or Lenders on which the Equity Committee, the Future Claimants Representative, and/or the Asbestos Claimants Committee relied in reaching the Proposed Asbestos Settlement.

**RESPONSE TO INTERROGATORY NO. 10:**

Debtors specifically incorporate by reference the General Objections.  Debtors further object to this Interrogatory on the ground that it seeks information that belongs solely to third parties, none of which is the alter ego or the agent of Debtors.

**INTERROGATORY NO. 11:**

Identify and describe the "prior course of dealing between the Debtors and all stakeholders, including the Lenders" referenced in numbered paragraph 16 of the Objection.

**RESPONSE TO INTERROGATORY NO. 11:**

Debtors specifically incorporate by reference the General Objections.  Subject to those Objections, Debtors state that the "prior course of dealing" referred to in paragraph 16 of the Objection was already described in David Bernick's letter to Andrew Rosenberg, dated May 5,

15

2008, and in the Debtors' Objection, and Debtors specifically incorporate the contents of those documents into this Interrogatory response. Debtors further state that this "prior course of dealing" was described in response to Interrogatory No. 8, and Debtors specifically incorporate by reference the content of that response.

## INTERROGATORY NO. 12:

Identify and describe the distribution or recovery the Debtors intend to provide the Debtors' equity security holders under the current proposed plan of reorganization.

## RESPONSE TO INTERROGATORY NO. 12:

Debtors specifically incorporate by reference the General Objections. Subject to those objections, Debtors state that the Debtors, the Future Claimants Representative ("FCR"), the Official Committee of Asbestos Personal Injury Claimants ("ACC") and the Equity Committee are currently negotiating the terms of a plan, consistent with the Term Sheet, which settles the amount that will be funded into a Trust under Section 524(g) of the Bankruptcy Code to satisfy the claims and demands of asbestos personal injury claimants against the Debtors. The Debtors expect the plan they are negotiating with the FCR, ACC and Equity Committee to treat Equity Holders in a manner consistent with the Joint Plan.

## INTERROGATORY NO. 13:

Identify all facts that show that the Company and all Borrowers (as such terms are used and defined in the 1998 and 1999 Credit Agreements) satisfied all obligations under sections 8, 9, and 12 of the 1998 and 1999 Credit Agreements from the date of the agreements through the date of your answer to this Interrogatory.

## RESPONSE TO INTERROGATORY NO. 13:

Debtors specifically incorporate by reference the General Objections. Debtors further object to this Interrogatory on the ground that it calls for a legal conclusion. Subject to those Objections, Debtors state that, prior to the filing of Debtors' Chapter 11 petitions, the Debtors never failed to make the requisite payments under the 1998 and 1999 Credit Agreements. After the filing of Debtors' bankruptcy petitions, the Debtors were prohibited from satisfying certain obligations under the 1998 and 1999 Credit Agreements by Section 362 of the Bankruptcy Code.

It is Debtors' position that, as a matter of law, the foregoing is not a valid basis on which the Lenders can declare a default under the Credit Agreements.

**INTERROGATORY NO. 14:**

Identify all facts that show that an Event of Default (as such term is defined in the 1998 and 1999 Credit Agreements) under section 10 of the 1998 and 1999 Credit Agreements has not occurred from the date of the Credit Agreements through the date of your answer to this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 14:**

Debtors specifically incorporate by reference the General Objections. Debtors further object to this Interrogatory on the ground that it calls for a legal conclusion. Subject to those Objections, Debtors state that, prior to the filing of Debtors' Chapter 11 petitions, the Debtors never failed to make the requisite payments under the 1998 and 1999 Credit Agreements. After the filing of Debtors' bankruptcy petitions, the Debtors were prohibited from satisfying certain obligations under the 1998 and 1999 Credit Agreements by Section 362 of the Bankruptcy Code. It is Debtors' position that, as a matter of law, the foregoing is not a valid basis on which the Lenders can declare a default under the Credit Agreements.

**INTERROGATORY NO. 15:**

Identify the "certain substantial claimants" that had agreed to support the Joint Plan, as stated in the disclosure statement that was filed with the Joint Plan. See the disclosure statement, page 59 n.18.

**RESPONSE TO INTERROGATORY NO. 15:**

Debtors specifically incorporate by reference the General Objections. Subject to those Objections, Debtors state that the reference to "certain substantial claimants" on page 59, n.18 of the Disclosure Statement for the Joint Plan refers to the Creditors' Committee and all of its members, including the Lenders.

**INTERROGATORY NO. 16:**

Identify all persons you expect to call as a witness at the Hearing, and state all facts to which such persons have knowledge relating to the Objection and the facts to which such persons are expected to testify.

**RESPONSE TO INTERROGATORY NO. 16:**

Debtors specifically incorporate by reference the General Objections. Debtors further object to this Interrogatory on the ground that it purports to require Debtors to produce information prior to the dates set forth in the Scheduling Order. Debtors will produce information responsive to this request in accordance with the Scheduling Order.

**INTERROGATORY NO. 17:**

Identify each person who has been consulted as an expert in anticipation of litigation or preparation for the Hearing, whether or not that person is expected to be called as a witness by you at the Hearing or trial and, as to each person, identify and describe all disclosures required by Federal Rule 26.

**RESPONSE TO INTERROGATORY NO. 17:**

Debtors specifically incorporate by reference the General Objections. Debtors further object to this Interrogatory on the ground that it purports to require Debtors to produce information prior to the dates set forth in the Scheduling Order. Debtors will produce information responsive to this request in accordance with the Scheduling Order.

### III.    REQUEST FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:**

Admit that the documents attached to the Response and identified as the 1998 and 1999 Credit Agreements are true and correct copies of the 1998 and 1999 Credit Agreements.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Admitted.

**REQUEST FOR ADMISSION NO. 2:**

Admit that under the plan of reorganization to be filed embodying the Proposed Asbestos Settlement, the Debtors' equity security holders will receive or retain property reflecting ownership interests in the Debtors.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Debtors admit that under the Proposed Asbestos Settlement, which was premised upon the Creditors' Committee's agreement to accept post-petition interest in accordance with the February Letter Agreement, the Debtors' equity security holders would have received or retained value.

**REQUEST FOR ADMISSION NO. 3:**

Admit that under the 1998 and 1999 Credit Agreements, the rate of nondefault interest is defined in the Credit Agreements.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Debtors are unable to either admit or deny this Request because Debtors lack information and belief regarding the meaning of the term "nondefault interest." However, Debtors admit that the 1998 and 1999 Credit Agreements each sets forth the methodology for calculating interest in a non-default situation.

**REQUEST FOR ADMISSION NO. 4:**

Admit that under the 1998 and 1999 Credit Agreements, the default rate of interest is the rate that is otherwise applicable under the 1998 and 1999 Credit Agreements plus 2%.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Denied. However, Debtors admit that the 1998 Credit Agreement states in pertinent part: "If all or a portion of the principal amount of any Bid Loan shall not be paid when due (whether at the stated maturity, by acceleration or otherwise), such overdue principal amount shall, without limiting any rights of any Bank under this Agreement, bear interest from the date on which such payment was due at a rate per annum which is 2% above the rate which would otherwise be applicable to such Bid Loan until the scheduled maturity date with respect thereto, and for each day thereafter at a rate per annum which is 2% above the Alternate Base Rate until paid in full (as well after as before judgment)." Debtors further admit that the 1999 Credit Agreement states in pertinent part: "If all or a portion of the principal amount of any Bid Loan shall not be paid when due (whether at the stated maturity, by acceleration or otherwise), such overdue principal amount shall, without limiting any rights of any Bank under this Agreement, bear interest from the date on which such payment was due at a rate per annum which is 2% above the rate which would otherwise be applicable to such Bid Loan until the scheduled maturity date with respect thereto, and for each day thereafter at a rate per annum which is 2% above the Alternate Base Rate until paid in full (as well after as before judgment)."

## REQUEST FOR ADMISSION NO. 5:

Admit that the Debtors have not made any payments of principal to any of the Bank Agent or Lenders since the Petition Date.

## RESPONSE TO REQUEST FOR ADMISSION NO. 5:

Admitted.

## REQUEST FOR ADMISSION NO. 6:

Admit that the Debtors did not pay interest on the 1998 Credit Agreement within five (5) business days after such interest became due.

## RESPONSE TO REQUEST FOR ADMISSION NO. 6:

Denied.

## REQUEST FOR ADMISSION NO. 7:

Admit that the Debtors did not pay interest on the 1999 Credit Agreement within five (5) business days after such interest became due.

## RESPONSE TO REQUEST FOR ADMISSION NO. 7:

Denied.

## REQUEST FOR ADMISSION NO. 8:

Admit that the Bank Agent and Lenders complied with the terms of the 1998 and 1999 Credit Agreements, including, but not limited to, all notice provisions.

## RESPONSE TO REQUEST FOR ADMISSION NO. 8:

Debtors are unable to either admit or deny this Request because Debtors lack information

and belief as to the conduct of the Bank Agent and Lenders. However, Debtors admit that, solely

for purposes of Debtors' Objection to the Bank Lenders' claim for post-petition interest under

the 1998 and 1999 Credit Agreements, Debtors do not contend that the Bank Agent or Lenders

failed to comply with the terms of the 1998 and 1999 Credit Agreements.

## REQUEST FOR ADMISSION NO. 9:

Admit that one or more attorneys from Stroock & Stroock & Lavan LLP advised you beginning in or about January 2007 that any plan of reorganization should provide for default rate interest to the Bank Lenders if it was to be acceptable to the Bank Lenders.

## RESPONSE TO REQUEST FOR ADMISSION NO. 9:

Denied. However, Debtors admit that beginning in or about January 2007, one or more

attorneys from Stroock & Stroock & Lavan LLP ("Stroock") advised Debtors, in substance, that

the market price of the unsecured debt under the Credit Agreements suggested that some of the Lenders were now expecting default interest. Significantly, no attorney from Stroock ever indicated that all, or even most, of the Lenders were expecting default interest; only that some of the Lenders had this expectation. Moreover, no attorney from Stroock ever said or did anything to suggest that the Committee, the Lenders or counsel for the Committee would terminate the February Letter Agreement if the Lenders did not receive default interest. And no attorney from Stroock ever said or did anything to suggest that the Creditors' Committee or the Lenders would vote against a plan of reorganization because it failed to provide for a default rate of interest.

**REQUEST FOR ADMISSION NO. 10:**

Admit that the Creditors Committee did not have the authority to bind any of the individual Lenders to the Proposed 2005 Agreement or to the February Letter Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Denied.

**REQUEST FOR ADMISSION NO. 11:**

Admit that under the Proposed 2005 Agreement, the Creditors Committee could withdraw as a plan proponent if the disclosure statement incorporating the Joint Plan (as defined in the Proposed 2005 Agreement) was not approved by the Bankruptcy Court by November 30, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Admitted.

**REQUEST FOR ADMISSION NO. 12:**

Admit that under the Proposed 2005 Agreement, the Creditors Committee could withdraw as a plan proponent if the disclosure statement incorporating the Joint Plan (as defined in the Proposed 2005 Agreement) was not approved by the Bankruptcy Court by November 30, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Admitted.

**REQUEST FOR ADMISSION NO. 13:**

Admit that under the Proposed 2005 Agreement, the Creditors Committee could withdraw as a plan proponent if there was a termination of the Debtors' exclusive period in which to file the Joint Plan (as defined in the Proposed 2005 Agreement).

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Denied. However, Debtors admit that under the Proposed 2005 Agreement, the Creditors Committee could withdraw as a plan proponent of the Joint Plan upon the termination of the Debtors' exclusive period.

**REQUEST FOR ADMISSION NO. 14:**

Admit that under the Proposed 2005 Agreement, the Creditors Committee could withdraw as a plan proponent if the Joint Plan (as defined in the Proposed 2005 Agreement) failed to become effective on or before January 1, 2007.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Admitted.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the disclosure statement incorporating the Joint Plan (as defined in the Proposed 2005 Agreement) was not approved by the Bankruptcy Court by November 30, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Admitted.

**REQUEST FOR ADMISSION NO. 16:**

Admit that there was a termination of the Debtors' exclusive period in which to file the Joint Plan (as defined in the Proposed 2005 Agreement).

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Denied. However, Debtors admit that the Debtors' exclusive period in which to file a plan of reorganization was terminated by the Bankruptcy Court's order dated July 26, 2007.

**REQUEST FOR ADMISSION NO. 17:**

Admit that the Joint Plan (as defined in the Proposed 2005 Agreement) failed to become effective on or before January 1, 2007.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Admitted.

**REQUEST FOR ADMISSION NO. 18:**

Admit that under the February Letter Agreement, the Creditors Committee could withdraw as a plan proponent if the disclosure statement incorporating the Joint Plan (as defined in the Proposed 2005 Agreement) was not approved by the Bankruptcy Court by December 31, 2006.

22

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Admitted.

**REQUEST FOR ADMISSION NO. 19:**

Admit that under the February Letter Agreement, the Creditors Committee could withdraw as a plan proponent if the disclosure statement incorporating the Joint Plan (as defined in the Proposed 2005 Agreement) was not approved by the Bankruptcy Court by February 28, 2007.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Denied.    However, Debtors admit that under the February Letter Agreement, the

Creditors' Committee could withdraw as a plan proponent if the Joint Plan failed to become

effective by February 28, 2007.

**REQUEST FOR ADMISSION NO. 20:**

Admit that under the February Letter Agreement, the Creditors Committee could withdraw as a plan proponent if there was a termination of the Debtors' exclusive period in which to file the Joint Plan (as defined in the Proposed 2005 Agreement).

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Denied.    However, Debtors admit that under the February Letter Agreement, the

Creditors Committee could withdraw as a plan proponent of the Joint Plan upon the termination

of the Debtors' exclusive period.

**REQUEST FOR ADMISSION NO. 21:**

Admit that the Joint Plan (as defined in the Proposed 2005 Agreement) never became effective.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Admitted.

**REQUEST FOR ADMISSION NO. 22:**

Admit that the disclosure statement incorporating the Joint Plan (as defined in the Proposed 2005 Agreement) was not approved by the Bankruptcy Court by December 31, 2006.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Admitted.

**REQUEST FOR ADMISSION NO. 23:**

Admit that the Debtors' exclusive period in which to file a plan of reorganization was terminated by the Bankruptcy Court's order dated July 26, 2007.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Admitted.

**REQUEST FOR ADMISSION NO. 24:**

Admit that counsel for the Creditors' Committee, Stroock & Stroock & Lavan LLP, advised the Debtors and their counsel beginning in or about January 2007 that (i) the bank debt was trading in the market at a value reflecting recovery of the default rate under the Credit Agreements and (ii) that the Creditors Committee's professionals were being told by certain holders of the bank debt under the Credit Agreements that the holders expected to receive postpetition interest at the default rate.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Denied. However, Debtors admit that beginning in 2007, counsel for the Creditor's Committee stated, in substance, that the market price of the unsecured debt under the Credit Agreements suggested that some of the Lenders were now expecting default interest. Significantly, counsel for the Creditors' Committee never indicated that all, or even most, of the Lenders were expecting default interest; only that some of the Lenders had this expectation. Counsel for the Committee never said or did anything to suggest that the Committee, the Lenders or counsel for the Committee would terminate the February Letter Agreement if the Lenders did not receive default interest. And counsel for the Committee never said or did anything to suggest that the Creditors' Committee or the Lenders would vote against a plan of reorganization because it failed to provide for a default rate of interest.

**REQUEST FOR ADMISSION NO. 25:**

Admit that counsel for the Creditors' Committee, Stroock & Stroock & Lavan LLP, advised the Debtors beginning in or about January 2007 that, notwithstanding any position the Creditors Committee itself might determine to take, any consensual plan should provide for postpetition interest payable at the default rate under the Credit Agreements were the Debtors to hope for the bank debt holders under the Credit Agreements to vote in favor of such a plan.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Denied.

**REQUEST FOR ADMISSION NO. 26:**

Admit that the Proofs of Claim, nos. 9159 and 9168 dated March 27, 2003, were timely submitted.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Admitted.

**REQUEST FOR ADMISSION NO. 27:**

Admit that the Proofs of Claim, nos. 9159 and 9168, included a claim for default interest at the contract rate.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Denied.

**REQUEST FOR ADMISSION NO. 28:**

Admit that no objection had been filed to the Proofs of Claim, nos. 9159 and 9168, prior to the Debtors' Objection, dated June 13,2008 [Docket No. 8922].

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Admitted.

**REQUEST FOR ADMISSION NO. 29:**

Admit that to date, no motion has been filed and no order has been granted approving the agreement set forth in the Term Sheet.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Admitted.

Dated:  August 14, 2008

Respectfully submitted,

KIRKLAND & ELLIS LLP

David M. Bernick, P.C.
Eric F. Leon
153 East 53rd Street
New York, NY 10022
(212) 446-48000

and

PACHULSKI, STANG, ZIEHL, & JONES LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for Debtors and Debtors in Possession