**EXHIBIT 6**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W.R. GRACE & CO., et al.,[1] ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | Hearing Date: Sept. 15, 2008 at 10:30 a.m. |

### DECLARATION OF LEWIS KRUGER IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' RESPONSE TO DEBTORS' OBJECTION TO THE UNSECURED CLAIMS ASSERTED UNDER THE DEBTORS' CREDIT AGREEMENTS DATED AS OF MAY 14, 1998 AND MAY 5, 1999

1.  I am an attorney duly licensed to practice before the courts of the State of New York, and have been admitted *pro hac vice* to appear before this Court in these cases. I am a member of Stroock & Stroock & Lavan LLP, counsel for the Official Committee of Unsecured Creditors (the "Creditors' Committee"). I submit this declaration in support of the Creditors'

---

[1] The Debtors consist of the following 62 entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W.R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., B&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Committee's Response to the Debtors' Objection to the Unsecured Claims Asserted Under the Debtors' Credit Agreements dated as of May 14, 1998 and May 5, 1999. I have personal knowledge of the facts set forth herein

2. By letter agreement dated January 12, 2005 (the "2005 co-proponency agreement"), a true and correct copy of which is annexed hereto as Exhibit A, the Creditors' Committee, for itself as the fiduciary for all non-asbestos unsecured creditors, agreed "to be a Plan Proponent with the Debtors and Equity Committee of the Amended Joint Plan of Reorganization to be filed with the bankruptcy Court on or about January 13, 2005 as such plan may be amended from time to time with the consent of the Creditors' Committee ...." Ex. A at 1. Although the letter agreement did not so provide, the "Joint Plan" filed with the Court dated January 13, 2005 specified that the bank debt claims would be paid post-petition interest at a rate of 6.09% fixed, compounded quarterly. This rate was negotiated between the Debtors and Creditors' Committee, in consultation with certain of the largest holders at that time of the bank debt claims. Although the disclosure statement filed with the Joint Plan stated that "certain substantial Claimants" had agreed to support the Joint Plan (see disclosure statement, p. 59, n. 18), the Creditors' Committee is not aware that any of the then largest holders of the bank debt had executed agreements with the Debtors concerning the payment rate. Indeed, the Creditors' Committee does not believe that these entities hold much if any of the bank debt claims at the present time.

3. Under the 2005 co-proponency agreement, the Creditors' Committee could withdraw as a plan proponent in a variety of circumstances, including if the disclosure statement incorporating the Joint Plan was not approved by the Court by November 30, 2005, if there was a termination of the Debtors' exclusive period in which to file the Joint Plan, and if the Joint Plan

2

failed to become effective on or before January 1, 2007. See Ex. A at 1-2. The disclosure statement embodying the Joint Plan was not approved by November 30, 2005 (or ever), the Joint Plan never became effective, and the Debtors' exclusive period was terminated by this Court's order dated July 26, 2007.

4. By letter agreement dated February 27, 2006, a true and correct copy of which is annexed hereto as Exhibit B, the Debtors and Creditors' Committee (but none of the bank debt holders themselves) agreed to amend the Joint Plan to "modify the treatment of the Class of General Unsecured Creditors to provide that commencing January 1, 2006 the current 6.09% fixed, compounded quarterly, post-petition interest rate accruing for the Holders of the Debtors' pre-petition bank credit facilities shall change to a floating Adjusted Base Rate, compounded quarterly ...." Ex. B at 1. Like the agreement of a year earlier, the Creditors' Committee could withdraw as a plan proponent in a variety of circumstances, including if the disclosure statement incorporating the Joint Plan was not approved by the Court by December 31, 2006, if there was a termination of the Debtors' exclusive period in which to file the Joint Plan, and if the Joint Plan failed to become effective on or before February 28, 2007. Ex. B at 1-2. The disclosure statement was not approved by December 31, 2006 (or ever), the Joint Plan never became effective, and, as stated above, the Debtors' exclusive period was terminated by this Court's order dated July 26, 2007.[2]

5. The Debtors and the Creditors' Committee, including respective counsel, have worked closely and cooperatively together since the beginning of these bankruptcy cases. Shortly after Mark Shelnitz became the Debtors' General Counsel in April 2005, the Debtors' in-house legal staff and outside counsel at Kirkland & Ellis LLP, and the Creditors' Committee's

---

[2] Although counsel to the Creditors' Committee signed a letter agreement dated February 27, 2006, neither the Debtors nor their counsel ever executed the February 27 letter agreement.

3

counsel at Stroock & Stroock & Lavan LLP, began to have regularly scheduled conference calls, approximately twice a month, to hear from the Debtors as to the status of the cases, to discuss pending and upcoming motions and events and settlement discussions with the asbestos personal injury claimants, if any. During many of these and other discussions, Stroock advised the Debtors and their counsel that the bank debt was trading in the market at a value reflecting recovery of the default rate and that the Creditors' Committee's professionals were being told by holders of the bank debt that the holders expected to receive post-petition interest at the default rate. Stroock advised the Debtors that, notwithstanding any position the Creditors' Committee itself might determine to take, any consensual plan should provide for post-petition interest payable at the default rate were the Debtors to hope for bank debt holders to vote in favor of such a plan. Although the Debtors apprised Stroock that there were plan-related discussions occurring that ultimately resulted in the Proposed Asbestos Settlement, the Creditors' Committee was never invited to participate in those discussions, notwithstanding – and perhaps because of – Stroock's repeated warnings to the Debtors that post-petition interest payable at the default rate was expected by bank debt holders as part of any resolution.

6. On or about April 7, 2008, the Term Sheet documenting the Proposed Asbestos Settlement was publicly disclosed. See Objection, Ex. C. The Proposed Asbestos Settlement does not pay bank debt holders post-petition interest at the default rate. By letter dated April 21, 2008, a true and correct copy of which is attached hereto as Exhibit C, an ad hoc group of bank debt holders, by their counsel Paul Weiss, Rifkind, Wharton & Garrison LLP, wrote to Debtors' counsel and set forth their position that the failure of the Proposed Asbestos Settlement to provide for the payment of default interest on their claims, and other treatment issues, rendered any plan based on the Term Sheet unconfirmable. See Ex. C.

4

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 10, 2008, at New York, New York.

*Lewis Kruger*
Lewis Kruger

# EXHIBIT A

# STROOCK

January 12, 2005

By E-Mail and Mail

Lewis Kruger
Direct Dial 212-806-5430
Direct Fax 212-806-6006
LKruger@stroock.com

Janet S. Baer, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Re: W. R. Grace & Co., et al.

Dear Jan:

This letter confirms that in connection with the agreement of the Official Committee of Unsecured Creditors (the "Creditors' Committee") to be a Plan Proponent with the Debtors and the Equity Committee of the Amended Joint Plan of Reorganization to be filed with the Bankruptcy Court on or about January 13, 2005 as such Plan may be amended from time to time with the consent of the Creditors' Committee (the "Joint Plan"), the Debtors and the Creditors' Committee agree that the Creditors' Committee has the right to withdraw as a Plan Proponent of the Joint Plan on the occurrence of any of the following circumstances:

1. Failure of the Court to approve the Disclosure Statement incorporating the Joint Plan no later than November 30, 2005;

2. Determination by the Court (Bankruptcy or District) that the Joint Plan is not confirmable and the failure to file an amended Joint Plan within 60 days;

3. Determination by the Court (Bankruptcy or District) that the Debtors are insolvent;

4. Termination of the Debtors' exclusive period;

5. Withdrawal of the Joint Plan by the Plan Proponents and the failure of the Plan Proponents to file a new Joint Plan within 60 days; and

SSL-DOCS1 1532520v3

STROOCK & STROOCK & LAVAN LLP · NEW YORK · LOS ANGELES · MIAMI
180 MAIDEN LANE, NEW YORK, NY 10038-4982 TEL 212.806.5400 FAX 212.806.6006 WWW.STROOCK.COM

Janet S. Baer, Esq.
January 12, 2005
Page 2

6. Failure of the Joint Plan to become effective on or before January 1, 2007.

It is also understood that in the event that the Creditors' Committee withdraws as a Plan Proponent, the Debtors will no longer be bound by the agreement previously reached with the Creditors' Committee with respect to interest rates or any of the other provisions of the Joint Plan agreed to among the parties.

If this letter accurately states the parties' agreement in this regard, please sign this letter on the signature block provided below and forward the letter back to me.

Please inform us promptly if this letter does not accurately reflect the parties' agreement.

Sincerely,

*Lewis Kruger*

Lewis Kruger


Agreed To:

By: *Janet S. Baer*

Janet S. Baer, Esq.
Kirkland & Ellis
Counsel to the Debtors
W.R. Grace & Co., et al.

SSL-DOCS1 1532520v3

# EXHIBIT B

# STROOCK

By E-Mail and Mail

February 27, 2006

Lewis Kruger
Direct Dial 212-806-5430
Direct Fax 212-806-6006
LKruger@stroock.com

Janet S. Baer, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Re: W. R. Grace & Co., et al.

Dear Jan:

This letter confirms that in connection with the agreement of the Official Committee of Unsecured Creditors (the "Creditors' Committee") to continue to be a Plan Proponent with the Debtors and the Equity Committee of the Amended Joint Plan of Reorganization filed with the Bankruptcy Court and dated January 13, 2005, as such Plan may be amended from time to time with the prior written consent of the Creditors' Committee (the "Joint Plan"), the Debtors agree to further amend the Joint Plan to modify the treatment of the Class of General Unsecured Creditors to provide that commencing January 1, 2006 the current 6.09% fixed, compounded quarterly, post-petition interest rate accruing for the Holders of the Debtors' pre-petition bank credit facilities shall change to a floating Adjusted Base Rate, compounded quarterly, and the Debtors and the Creditors' Committee agree that the Creditors' Committee has the right to withdraw as a Plan Proponent of the Joint Plan on the occurrence of any of the following circumstances:

1. Failure of the Court to approve the Disclosure Statement incorporating the Joint Plan on or before December 31, 2006;

2. Determination by the Court (Bankruptcy or District) that the Joint Plan is not confirmable together with the failure to file an amended Joint Plan within 60 days;

3. Determination by the Court (Bankruptcy or District) that W. R. Grace & Co, W. R. Grace-Conn., or the Debtors are insolvent;

SSL-DOCS1 1659750v3

Janet S. Baer, Esq.
February 27, 2006
Page 2

4. Termination of the Debtors' exclusive period;

5. Withdrawal of the Joint Plan by the Plan Proponents and together with the failure of the Plan Proponents to file a new Joint Plan within 60 days thereafter; and

6. Failure of the Joint Plan to become effective on or before February 28, 2007.

It is understood that the term "Adjusted Base Rate" ("ABR") shall be the greater from time to time of (1) the Prime Rate as published by JPMorgan Chase, or (2) the Federal Funds Effective Rate plus 0.5% points, compounded quarterly on the first of April, July, October and January.

It is also understood that in the event that the Creditors' Committee withdraws as a Plan Proponent, the Debtors will no longer be bound by the agreements reached as of the date hereof with the Creditors' Committee with respect to interest rates or any of the other provisions of the Joint Plan agreed to among the parties.

If this letter accurately states the parties' agreement in this regard, please sign this letter on the signature block provided below and forward the letter back to me.

Please inform us promptly if this letter does not accurately reflect the parties' agreement.

Sincerely,

Lewis Kruger

Agreed To:

By:_____
       Janet S. Baer, Esq.
       Kirkland & Ellis

SSL-DOCS1 1659750v3

STROOCK & STROOCK & LAVAN LLP · NEW YORK · LOS ANGELES · MIAMI
180 MAIDEN LANE, NEW YORK, NY 10038-4982 TEL 212.806.5400 FAX 212.806.6006 WWW.STROOCK.COM

Janet S. Baer, Esq.
February 27, 2006
Page 3

    Counsel to the Debtors
    W.R. Grace & Co., et al.

SSL-DOCS1 1659750v3

# EXHIBIT C

## PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000
FACSIMILE (212) 757-3990

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212-373-3158

WRITER'S DIRECT FACSIMILE

212-492-0158

WRITER'S DIRECT E-MAIL ADDRESS

arosenberg@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

MATTHEW W. ABBOTT
MARK H. ALCOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
RICHARD S. BORISOFF
HENK BRANDS
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JEANETTE K. CHAN
YVONNE Y.F. CHAN
DOUGLAS A. CIFU
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
JAMES M. DUBIN
LESLIE GORDON FAGEN
MARC FALCONE
PETER L. FELCHER
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
KENNETH A. GALLO
MICHAEL E. GERTZMAN
PAUL D. GINSBERG
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
JOYCE S. HUANG
JEH CHARLES JOHNSON
MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
JOHN C. KENNEDY
ALAN W. KORNBERG

DANIEL J. KRAMER
DAVID K. LAKHDHIR
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
JULIA TARVER MASON
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
TOBY S. MYERSON
JOHN E. NATHAN
CATHERINE NYARADY
ALEX YOUNG K. OH
JOHN J. O'NEIL
KELLEY D. PARKER
ROBERT P. PARKER*
MARC E. PERLMUTTER
MARK F. POMERANTZ
VALERIE E. RADWANER
CAREY R. RAMOS
CARL L. REISNER
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
STEVEN B. ROSENFELD
PETER J. ROTHENBERG
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
JUDITH R. THOYER
DANIEL J. TOAL
MARK A. UNDERBERG
LIZA M. VELAZQUEZ
MARIA T. VULLO
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
JORDAN E. YARETT
KAYE N. YOSHINO
ALFRED D. YOUNGWOOD
TONG YU
TRACEY A. ZACCONE
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

April 21, 2008

### VIA FACSIMILE AND OVERNIGHT MAIL

W.R. Grace & Co.
7500 Grace Drive
Columbia, Maryland 21044
Attn: Mark A. Shelnitz, General Counsel

David M. Bernick, Esq.
Janet S. Baer, Esq.
Kirkland and Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

*In re W.R. Grace & Co., et al (the "Company" or the "Debtors"), Chapter 11 Cases (Bankr. Del. Case No. 01-1139)*

Dear Madam and Gentlemen:

This firm represents an ad hoc group of claimants (the "Ad Hoc Group") who together hold approximately $440 million of $500 million in outstanding principal or 88%, of the loans and advances (the "Bank Loans") made under the Debtors' Pre-Petition Bank Credit Facilities.[1]

---

[1] The Pre-Petition Bank Credit Facilities include (i) that certain Credit Agreement, dated May 14, 1998, among the Company, The Chase Manhattan Bank, as Administrative Agent, Chase Securities Inc., as arranger, and certain Banks party thereto (the "1998 Credit Agreement"),

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

I am writing to express the Ad Hoc Group's objection to and extreme displeasure concerning the treatment of the Bank Loans described in the Debtors' proposed term sheet for their chapter 11 plan of reorganization announced on April 7, 2008 (the "April Term Sheet"). (A term sheet which we understand was not vetted with the agent for the Pre-Petition Bank Credit Facilities or the holders of claims of the Pre-Petition Bank Credit Facilities ("Bank Facility Claimants") or the Official Creditors Committee.)

The treatment of the Bank Loans under the April Term Sheet renders any chapter 11 plan based thereon unconfirmable. The April Term Sheet violates the absolute priority rule and section 1129 of the Bankruptcy Code because it provides that current equity will retain their interests but the more senior priority Bank Facility Claimants will not receive full payment of all amounts due under the Pre-Petition Bank Credit Facilities. Put simply, these are solvent debtors, and if equity proposes to retain ownership, the Company must pay the Bank Facility Claimants the contractual default interest rate of prime plus 2% compounding quarterly, plus facility fees and other fees due thereunder and attorney fees and costs, in accordance with the terms set forth in the Pre-Petition Bank Credit Facilities ("Contract Default Rate").

We note that the April Term Sheet is at odds with the clear trend with respect to these issues. Both of the Debtors' two sister-asbestos cases In re USG Corp. (Bankr. Del. Case No. 01-02094 (JKF) and In re Owens Corning, (Bankr. Del. Case No. 00-03837 (JKF)—in which equity retained all or a portion of their ownership of the reorganized debtors—confirmed chapter 11 plans that provided payment to creditors in accordance with their contractual default interest rate. There is no reason that the W.R. Grace Bank Facility Claimants should receive lesser treatment.

In the most recent circuit level case on this issue, In re Dow Corning, the Sixth Circuit concluded that where a debtor is solvent, as is the Company, the presumption is that unsecured creditors are entitled to payment at the contractually provided default interest rate. In re Dow Corning, 456 F.3d 668, 679-680 (6th Cir. 2006). No equitable factors or considerations exist in these chapter 11 cases to warrant a denial of payment to the Bank Facility Claimants in accordance with their contracts. In fact, the equities strongly favor payment of the full amounts due under the Pre-Petition Bank Credit Facilities. There is no justification for equity—merely through the occurrence of a bankruptcy—to retain ownership of a company without being required to fully satisfy the obligations that the company entered into prior to the bankruptcy.

The treatment set forth in the April Term Sheet has in no way been "agreed to" based on negotiations with respect to the earlier proposed plan of reorganization, dated January 13, 2005. Any contingent "agreement" that may have existed was made years ago with the Official Creditors Committee, under different circumstances, has long since expired, and in any event was neither made with nor is it

---

and (ii) that certain 364-Day Credit Agreement, dated May 5, 1999, among the Company, Bank of America National Trust Savings Assoc., as documentation agent, The Chase Manhattan Bank, as administrative agent, Chase Securities Inc., as book manager, and certain Banks party thereto (as amended, the "1999 Credit Agreement").

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

binding upon, this group. We also note that no such plan was ever confirmed or such agreement ever approved by the Bankruptcy Court.

We would be willing to meet with the Company to draft language providing for appropriate treatment of the Bank Facility Claimants that would provide the basis to support a chapter 11 plan.

The Ad Hoc Group reserves all rights and remedies in connection with the April Term Sheet.

Very truly yours,

Andrew N. Rosenberg

cc:  Members of the Ad Hoc Group
     Lewis Kruger, Esq.
     Kenneth Ziman, Esq.