**EXHIBIT 10**

# GRACE W R GRACE & CO (GRA)

7500 GRACE DRIVE
COLUMBIA, MD 21044
410 531 4000
http://www.grace.com/

# 10–K

**FORM 10–K**
**Filed on 03/07/2005 – Period: 12/31/2004**
File Number 001–13953



LIVEDGAR® Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

===============================================================================

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

----------

FORM 10-K

ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(D) OF
THE SECURITIES AND EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2004        Commission file number 1-13953

W. R. GRACE &CO.

Incorporated under the Laws of the          I.R.S. Employer Identification No.
        State of Delaware                              65-0773649

7500 GRACE DRIVE, COLUMBIA, MARYLAND 21044-4098
410/531-4000

SECURITIES REGISTERED PURSUANT TO SECTION 12(B) OF THE ACT:

| TITLE OF EACH CLASS | | NAME OF EACH EXCHANGE ON WHICH REGISTERED |
|---|---|---|
| Common Stock, $.01 par value | } | New York Stock Exchange, Inc. |
| Preferred Stock Purchase Rights | } | |

SECURITIES REGISTERED PURSUANT TO SECTION 12(G) OF THE ACT:

None

Indicate by check mark whether the registrant (1) has filed all reports required
to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during
the preceding 12 months and (2) has been subject to such filing requirements for
the past 90 days. Yes [X] No [_]

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405
of Regulations S-K is not contained herein and will not be contained, to the
best of registrant's knowledge, in definitive proxy or information statements
incorporated by reference in Part III of this Form 10-K or any amendment to this
Form 10-K. [X]

Indicate by check mark whether the registrant is an accelerated filer (as
defined in Rule 12b-2 of the Exchange Act). Yes [X] No [_]

The aggregate market value of W. R. Grace &Co. voting and non-voting common
equity held by non-affiliates as of June 30, 2004 (the last business day of the
registrant's most recently completed second fiscal quarter) was $298,002,498.

At February 18, 2005, 66,663,392 shares of W. R. Grace &Co. Common Stock, $.01
par value, were outstanding.

DOCUMENTS INCORPORATED BY REFERENCE

None.

===============================================================================

TABLE OF CONTENTS

PART I...........................................................................1

    Item 1.     Business............................................................1
                AVAILABILITY OF REPORTS AND OTHER DOCUMENTS.........................1
                PROJECTIONS AND OTHER FORWARD-LOOKING INFORMATION...................1
                CHAPTER 11 FILING...................................................2
                BUSINESS OVERVIEW...................................................3
                PRODUCTS AND MARKETS................................................4
                INTELLECTUAL PROPERTY; RESEARCH ACTIVITIES..........................9
                ENVIRONMENTAL, HEALTH AND SAFETY MATTERS...........................10
    Item 2.     Properties.........................................................10
    Item 3.     Legal Proceedings..................................................11
    Item 4.     Submission of Matters to a Vote of Security Holders.................22

PART II..........................................................................22

    Item 5.     Market for Registrant's Common Equity and Related
                    Shareholder Matters............................................22
    Item 6.     Selected Financial Data............................................23
    Item 7.     Management's Discussion and Analysis of Results of Operations

amount, on a net present value basis, that must be funded (the "Funding Amount") into an asbestos trust (established under Section 524(g) of the Bankruptcy Code) to pay all allowed pending and future asbestos-related personal injury and property damage claims and related trust administration costs and expenses on the effective date of the Plan. It is a condition to confirmation that the Bankruptcy Court shall conclude that the Funding Amount is not greater than $1,613 million (excluding pre-petition asbestos-related contractual settlements and judgements of $87 million – treated as general unsecured claims), which would result in total asbestos-related liability of $1,700 million. This amount may not be consistent with what the Bankruptcy Court may conclude would be a sufficient Funding Amount.

o    An asset and credit of $238.2 million to increase Grace's estimate of insurance proceeds to which it would be entitled to an aggregate of $500.0 million – Under Grace's available insurance coverage, the payment of asbestos-related claims and costs will entitle Grace to partial insurance recovery. The amounts will vary with the type of expenditure and the relevant time period of the covered loss. Grace estimates that, at an ultimate payout of asbestos-related claims of $1,700 million, it would be entitled to approximately $500 million, on a net present value basis, of insurance recovery.

o    An accrual and charge of $94.1 million to increase Grace's estimate of interest to which general unsecured creditors would be entitled under the Plan – The Plan states that each holder of an allowed general unsecured claim shall be paid in full, plus post-petition interest, such payment to be 85% in cash and 15% in Grace stock. Post-petition interest shall accrue through the date of payment and shall be (i) for the holders of the Debtors' pre-petition bank credit facilities, at a rate of 6.09% per annum, compounded quarterly, (ii) for the holders of claims who, but for the Filing of the Chapter 11 Cases, would be entitled under a contract or otherwise to accrue or be paid interest on such claim in a non-default (or non-overdue payment) situation under applicable non-bankruptcy law, the rate provided in the contract between a Debtor(s) and the claimant or such rate as may otherwise apply under applicable non-bankruptcy law, or (iii) for all other holders of allowed general unsecured claims, at a rate of 4.19% per annum, compounded annually, or

o    An asset and credit of $151.7 million for net income tax benefits related to the items described above – The net pre-tax effect of the above items on Grace's 2004 Consolidated Statement of Operations was a $570.7 million charge to reflect the net pre-tax liability aspects of the Plan. The deferred tax benefit on this net liability is $199.7 million at a statutory rate of 35%. Of this amount, $48.0 million exceeds Grace's analysis of the tax assets that may be more likely than not realized under reasonable scenarios of future taxable income (exclusive of the tax effects under the litigation settlements with Sealed Air and Fresenius). Accordingly, Grace has recorded a deferred tax valuation allowance of $48.0 million.

Grace has not recorded any assets available to fund asbestos-related and other liabilities under the litigation settlements with Sealed Air and Fresenius, as such agreements are subject to conditions which, although expected to be met, have not been satisfied and approved by the Bankruptcy Court. The value available under these litigation settlement agreements as measured at December 31, 2004, was $1,165.7 million comprised of $115.0 million in cash from Fresenius and $1,050.7 million in cash and stock from Sealed Air.

Grace's Consolidated Balance Sheets separately identify the liabilities that are "subject to compromise" as a result of the Chapter 11 proceedings. In Grace's case, "liabilities subject to compromise" represent pre-petition liabilities as determined under U.S. generally accepted accounting principles. Changes to the recorded amount of such liabilities will be based on developments in the Chapter 11 Cases and management's assessment of the claim amounts that will ultimately be allowed by the Bankruptcy Court. Changes to pre-petition liabilities subsequent to the Filing Date reflect: 1) cash payments under approved court orders; 2) the terms of Grace's proposed plan of reorganization, as discussed above, including the accrual of interest on pre-petition debt and the adjustment to Grace's recorded asbestos-related liability; 3) accruals for employee-related programs; and 4) changes in estimates related to other pre-petition contingent liabilities.

There are numerous other indirect costs to manage Grace's Chapter 11 proceedings such as: management time devoted to Chapter 11 matters; added cost of debt capital; added costs of general business insurance, including DOliability insurance premiums; and lost business and acquisition opportunities due to the complexities of operating under Chapter 11.

INTEREST EXPENSE - In the fourth quarter of 2004, Grace accrued $94.1 million of interest, which increases Grace's estimate of interest to which general unsecured creditors would be entitled under the Plan to $155.3 million as of December 31, 2004. The Plan states that each holder of an allowed general unsecured claim shall be paid in full, plus post-petition interest. Post-petition interest shall accrue through the date of payment and shall be (i) for the holders of the Debtors' pre-petition bank credit facilities, at a rate of 6.09% per annum, compounded quarterly, (ii) for the holders of claims who, but for the Filing of the Chapter 11 Cases would be entitled under a contract or otherwise to accrue or be paid interest on such claim in a non-default (or non-overdue payment) situation under applicable non-bankruptcy law, the rate provided in the contract between a Debtor(s) and the claimant or such rate as may otherwise apply under applicable non-bankruptcy law, or (iii) for all other holders of allowed general unsecured claims, at a rate of 4.19% per annum, compounded annually. Under the Plan, such interest, which is payable 85% in cash and 15% in Grace common stock, will not be paid until the Plan is confirmed and funded.

The decrease in net interest expense in 2003 compared with 2002 was primarily attributable to a lower contractual interest rate on pre-petition debt subject to compromise. The payment of interest accrued on pre-petition debt is subject to the outcome of Grace's Chapter 11 proceedings.

INCOME TAXES - Grace's benefit from (provision for) income taxes at the federal corporate rate of 35% for the years ended December 31, 2004, 2003 and 2002 was $141.3 million, $23.6 million, and $(21.0) million, respectively. Grace's recorded tax benefit of $1.5 million for 2004 reflects a reduction from the statutory tax benefit for (1) an accrual of tax on undistributed earnings of non-U.S. subsidiaries, and (2) a net increase in the valuation allowance on the realization of overall net tax assets. In 2003 and 2002, the primary differences between the income tax liability at the federal corporate rate of 35% and the recorded income tax liability were the current period interest on tax contingencies and the non-deductibility of certain Chapter 11 expenses.

As part of Grace's evaluation and planning for the funding requirements of the Plan, Grace concluded in the fourth quarter of 2004 that the financing of the Plan will likely involve cash and financing from non-U.S. subsidiaries. Grace anticipates that approximately $500 million will be sourced in this manner. Approximately $267 million can be repatriated by way of intercompany debt repayments and the remaining $233 million by way of taxable dividends. Accordingly, in the fourth quarter of 2004, Grace recorded a tax liability of $82 million to recognize the expected taxable elements of financing its plan of reorganization. Grace has not provided for U.S. federal, state, local and foreign deferred income taxes on approximately $248 million of undistributed earnings of foreign subsidiaries that are expected to be retained indefinitely by such subsidiaries for reinvestment.

Also in the fourth quarter of 2004, Grace recorded an increase in deductible asbestos-related liability and interest expenses under the Plan. Such net deductions exceeded Grace's analysis of the federal tax assets that can be realized under reasonable scenarios of future taxable income by approximately $48 million (exclusive of the tax effects under the litigation settlements with Sealed Air and Fresenius). Such analysis included scenarios of future taxable income under various operating income growth rates, tax planning options, and asset sales. Although several scenarios supported full recovery of recorded tax assets, other ones indicated that a partial impairment may exist. Accordingly, Grace's 2004 tax provision reflects an addition to its federal deferred tax valuation allowance of $48.0 million to recognize the added impairment risk.

In addition, because of the additional fourth quarter deductions for asbestos and interest, Grace increased its valuation allowance for deferred state tax assets by $14.4 million and reduced its valuation allowance by $3.0 million relating primarily to foreign tax credit carryforwards that expired unused.

This additional valuation allowance brings Grace's total valuation allowance to $227.7 million on net tax assets of $846.1 million. The total valuation allowance covers (1) state tax deductions with a tax value of approximately $140.5 million, which are not expected to be realized in reduced taxes due to income projections and timing limitations, (2) foreign loss carryforwards with a tax value of $17.8 million, which are not expected to be usable during the relevant carryforward periods, and (3) net federal deferred tax assets, including currently available net operating loss carryforwards, with a tax value of $69.4 million, which do not meet Grace's test for realization. The net recorded deferred tax asset of $618.4 million is considered to be realizable over time. A large proportion of such balance (primarily associated with asbestos- and environmental- related liabilities) is not yet

# GRACE **W R GRACE & CO** (GRA)

7500 GRACE DRIVE
COLUMBIA, MD 21044
410 531 4000
http://www.grace.com/

# EX–99.1

**GRACE DISCLOSURE STATEMENT**
**10–K Filed on 03/07/2005 – Period: 12/31/2004**
File Number 001–13953



EXHIBIT 99.1

THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE COURT

THIS PROPOSED DISCLOSURE STATEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE COURT HAS APPROVED THIS DISCLOSURE STATEMENT UNDER BANKRUPTCY CODE SECTION 1125. THIS PROPOSED DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL ONLY, AND IT HAS NOT YET BEEN APPROVED BY THE COURT.

FURTHER, THE PLAN PROPONENTS PROVIDE NO ASSURANCE THAT THE DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS TO THE DISCLOSURE STATEMENT, THAT IS ULTIMATELY APPROVED IN THE CHAPTER 11 CASES (1) WILL CONTAIN ANY OF THE TERMS IN THE CURRENT DOCUMENT OR (2) WILL NOT CONTAIN DIFFERENT, ADDITIONAL, MATERIAL TERMS THAT DO NOT APPEAR IN THE CURRENT DOCUMENT. THEREFORE, MAKING INVESTMENT DECISIONS BASED UPON THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, THE PLAN AND THE EXHIBITS IN THE EXHIBIT BOOK IS HIGHLY SPECULATIVE, AND THE DOCUMENTS SHOULD NOT BE RELIED UPON IN MAKING SUCH INVESTMENT DECISIONS WITH RESPECT TO (1) THE DEBTORS OR (2) ANY OTHER PARTIES THAT MAY BE AFFECTED BY THE CHAPTER 11 CASES.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| W. R. GRACE &CO., ET AL.,(1) | ) | CASE NO. 01-1139 (JKF) |
| | ) | (JOINTLY ADMINISTERED) |
| DEBTORS. | ) | |

-----------------------------------------

AMENDED DISCLOSURE STATEMENT FOR THE AMENDED JOINT PLAN OF REORGANIZATION
PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

IMPORTANT DATES

o    Date by which Ballots must be received: [_____], 2005

o    Date by which objections to the Plan must be filed and served: [_____], 2005

o    Hearing on Confirmation of the Plan: [_____], 2005

KIRKLAND &ELLIS LLP            PACHULSKI, STANG, ZIEHL, YOUNG, JONES
David M. Bernick, P.C.         &WEINTRAUB P.C.
Janet S. Baer                 Laura Davis Jones (Bar No. 2436)
Jonathan P. Friedland         David W. Carickhoff, Jr. (Bar No. 3715)
Samuel L. Blatnick            919 North Market Street, 16th Floor
200 East Randolph Drive       P.O. Box 8705
Chicago, Illinois 60601       Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (312) 861-2000     Telephone: (302) 652-4100

and

Bennett L. Spiegel
Lori Sinanyan
777 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 680-8400

- Co-Counsel for the Debtors and Debtors in Possession -

Dated: January 13, 2005

THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE COURT

----------
(1) The "Debtors," and all capitalized terms not defined in this Disclosure Statement, are defined in the Glossary. The Glossary is included as Exhibit 2 to the Exhibit Book. The Exhibit Book (and each Exhibit thereto) is incorporated by reference into this Disclosure Statement.

# GRACE W R GRACE & CO (GRA)

7500 GRACE DRIVE
COLUMBIA, MD 21044
410 531 4000
http://www.grace.com/

## 10-K

**ANNUAL REPORT**
**Filed on 03/13/2006 – Period: 12/31/2005**
File Number 001-13953

GSI

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

# FORM 10-K

### ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF
### THE SECURITIES AND EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2005                    Commission file number 1-13953

# W. R. GRACE & CO.

Incorporated under the Laws of the                    I.R.S. Employer Identification No.
State of Delaware                                                        65-0773649

7500 Grace Drive, Columbia, Maryland 21044-4098
410/531-4000
Securities registered pursuant to Section 12(b) of the Exchange Act:

| Title of each class | Name of each exchange on which registered |
| --- | --- |
| Common Stock, $.01 par value | New York Stock Exchange, Inc. |
| Preferred Stock Purchase Rights | |

Securities registered pursuant to Section 12(g) of the Exchange Act:
None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.
Yes ☐   No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Exchange Act.
Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months and (2) has been subject to such filing requirements for the past 90 days.
Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulations S-K is not contained herein and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of ''accelerated filer and large accelerated filer'' in Rule 12b-2 of the Exchange Act. (Check one):
Large accelerated filer ☐            Accelerated filer ☒          Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).
Yes ☐   No ☒

The aggregate market value of W. R. Grace & Co. voting and non-voting common equity held by non-affiliates as of June 30, 2005 (the last business day of the registrant's most recently completed second fiscal quarter) based on the closing sale price of $7.79 as reported on the New York Stock Exchange was $433,873,772.*

At February 17, 2006, 67,051,200 shares of W. R. Grace & Co. Common Stock, $.01 par value, were outstanding.

## DOCUMENTS INCORPORATED BY REFERENCE

None.

* Excludes 11,219,148 shares of outstanding W. R. Grace & Co. (''Grace'') Common Stock held by directors and executive officers and stockholders, whose beneficial ownership exceeds 10% of the outstanding shares of Grace Common Stock, as of June 30, 2005. Exclusion of shares held by any person should not be construed to indicate that such person possesses the power, direct or indirect, to direct or cause the direction of the management or policies of Grace, or that such person is controlled by or under common control with Grace.

litigation under an agreement with Honeywell International, Inc. related to environmental contamination of a non-operating parcel of land.

In March 2004, we began accounting for currency fluctuations on a €293 million intercompany loan between our subsidiaries in the United States and Germany as a component of operating results instead of as a component of other comprehensive income. This change was prompted by our analysis of new tax laws in Germany and our cash flow planning in connection with our Chapter 11 reorganization, which together indicated that we should no longer consider this loan as part of our permanent capital structure in Germany. In May 2004, we entered into a series of foreign currency forward contracts to mitigate future currency fluctuations on the remaining loan balance. Contract amounts of €200.7 million were extended in June 2005 and have varying rates that coincide with loan repayments due periodically through December 2008. No loan repayments were made in 2005. For the year ended December 31, 2005, a $35.7 million contract gain was recognized, offset by a $35.9 million foreign currency loss, and was reported in other (income) expense. These forward contracts are derivative instruments that we use as risk management tools. We do not use them for trading or speculative purposes.

The 2003 pre-tax loss from noncore activities was attributable primarily to pre-tax charges to adjust our estimated liabilities for pre-Chapter 11 contingencies. We increased our estimated liability for environmental clean-up related to previously operated vermiculite mining and processing sites by $122.5 million to a total of $181.0 million at December 31, 2003. We also recorded a $20.0 million increase in our estimated liability for non-vermiculite related environmental risks identified and measured as part of the Chapter 11 claims review process. In addition, we recorded a $30.0 million increase in our estimated liability for asbestos-related litigation to account for the estimated cost of resolving new asbestos-related property damage claims received through the Chapter 11 claims solicitation process.

Chapter 11 Expenses – Although we are unable to measure precisely the impact of the Chapter 11 proceedings on our overall financial performance, we incur certain added costs that are directly attributable to operating in Chapter 11. Net Chapter 11 expenses consist primarily of legal, financial and consulting fees that we, and the three creditors' committees, incur. They fluctuate with the activity in our Chapter 11 proceedings.

Our pre-tax income from core operations included expenses for Chapter 11-related compensation charges of $17.5 million, $28.9 million, and $15.4 million for the years ended December 31, 2005, 2004, and 2003, respectively. Poor Grace common stock price performance in the period leading up to and after the Chapter 11 filing diminished the value of our stock option program as an incentive compensation tool for current and prospective employees, which caused us to change our long-term incentive compensation from an equity-based to a cash-based program.

We incur numerous other indirect costs to manage the Chapter 11 proceedings such as: management time devoted to Chapter 11 matters; added cost of debt capital; added costs of general business insurance, including D&O liability insurance premiums; and lost business and acquisition opportunities due to the complexities and restrictions of operating under Chapter 11.

Interest Expense – In 2004, net interest expense was $108.0 million which reflected in part the retroactive application of the higher interest rate provided for in the plan of reorganization. As a result of this additional charge in 2004, interest expense was lower in 2005. The plan of reorganization states that each holder of an allowed general unsecured claim shall be paid in full, plus post-petition interest. Post-petition interest shall accrue through the date of payment as follows:

- for the holders of pre-petition bank credit facilities, at a rate of 6.09% per annum, compounded quarterly through December 31, 2005 (effective for periods after January 1, 2006 we have agreed to pay interest on prepetition bank debt at the prime rate reset and compounded quarterly. That rate is 7.25% for the first quarter of 2006);
- for the holders of claims who, but for the Chapter 11 filing, would be entitled under a contract or otherwise to accrue or be paid interest on such claim in a non-default (or non-overdue payment) situation under applicable non-bankruptcy law, the rate provided in the contract between the Grace entity and the claimant or such rate as may otherwise apply under applicable non-bankruptcy law; or
- for all other holders of allowed general unsecured claims, at a rate of 4.19% per annum, compounded annually.

Such interest, which under the plan of reorganization is payable 85% in cash and 15% in Grace common stock, will not be paid until the plan of reorganization is confirmed and funded.

Income Taxes – Income tax benefit (provision) at the federal corporate rate of 35% for the years ended December 31, 2005, 2004 and 2003 was $(31.0) million, $141.3 million, and $23.6 million, respectively. Our recorded tax provision of $(21.3) million for 2005 reflects a reduction from the statutory tax benefit for (1) a favorable reassessment of certain tax contingencies, and (2) a release of the valuation allowance in a non-U.S. subsidiary prompted by a favorable law change. In 2004, the primary differences between the income tax benefit at the federal corporate rate of 35% and the recorded income tax benefit were due to an accrual of tax on undistributed earnings of non-U.S. subsidiaries and a net increase in the valuation allowance on the realization of U.S.

# GRACE W R GRACE & CO (GRA)

7500 GRACE DRIVE
COLUMBIA, MD 21044
410 531 4000
http://www.grace.com/

# 10–K

**10–K**
**Filed on 03/02/2007 – Period: 12/31/2006**
File Number 001–13953

GSI

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

---

## FORM 10-K

### ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF
### THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2006

Commission file number 1-13953

# W. R. GRACE & CO.

Incorporated under the Laws of the
**State of Delaware**

I.R.S. Employer Identification No.
65-0773649

**7500 Grace Drive, Columbia, Maryland 21044-4098**
**410/531-4000**
Securities registered pursuant to Section 12(b) of the Exchange Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, $.01 par value | New York Stock Exchange, Inc. |
| Preferred Stock Purchase Rights | |

Securities registered pursuant to Section 12(g) of the Exchange Act:
**None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.
Yes ☐  No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Exchange Act.
Yes ☐  No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months and (2) has been subject to such filing requirements for the past 90 days.
Yes ☒  No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulations S-K is not contained herein and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):
Large accelerated filer ☐      Accelerated filer ☒      Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).
Yes ☐  No ☒

The aggregate market value of W. R. Grace & Co. voting and non-voting common equity held by non-affiliates as of June 30, 2006 (the last business day of the registrant's most recently completed second fiscal quarter) based on the closing sale price of $11.70 as reported on the New York Stock Exchange was $667,355,329. *

At January 31, 2007, 69,206,435 shares of W. R. Grace & Co. Common Stock, $.01 par value, were outstanding.

DOCUMENTS INCORPORATED BY REFERENCE

None.
* *Excludes 11,219,148 shares of outstanding W. R. Grace & Co. ("Grace") Common Stock held by directors and executive officers and stockholders, whose beneficial ownership exceeds 10% of the outstanding shares of Grace Common Stock. Exclusion of shares held by any person should not be construed to indicate that such person possesses the power, direct or indirect, to direct or cause the direction of the management or policies of Grace, or that such person is controlled by or under common control with Grace.*

Grace's Consolidated Balance Sheets separately identify the liabilities that are "subject to compromise" as a result of the Chapter 11 proceedings. In Grace's case, "liabilities subject to compromise" represent both pre-petition and future liabilities as determined under U.S. generally accepted accounting principles. The bases for the asbestos-related liability component of "liabilities subject to compromise" are described in Note 3. Changes to the recorded amount of such liabilities will be based on developments in the Chapter 11 Cases and management's assessment of the claim amounts that will ultimately be allowed by the Bankruptcy Court. Changes to pre-petition liabilities subsequent to the Filing Date reflect: 1) cash payments under approved court orders; 2) the terms of Grace's proposed plan of reorganization, as discussed above, including the accrual of interest on pre-petition debt and other fixed obligations; 3) accruals for employee-related programs; and 4) changes in estimates related to other pre-petition contingent liabilities.
Components of liabilities subject to compromise are as follows:

| (In millions) | December 31, 2006 | December 31, 2005 | Filing Date (Unaudited) |
|---|---|---|---|
| Debt, pre-petition plus accrued interest | $ 739.5 | $ 684.7 | $ 511.5 |
| Asbestos-related liability | 1,700.0 | 1,700.0 | 1,002.8 |
| Income taxes | 141.2 | 136.5 | 242.1 |
| Environmental remediation | 361.1 | 342.0 | 164.8 |
| Postretirement benefits other than pension | 72.7 | 101.3 | 185.4 |
| Unfunded special pension arrangements | 95.6 | 86.4 | 70.8 |
| Retained obligations of divested businesses | 18.0 | 18.1 | 43.5 |
| Accounts payable | 31.7 | 31.5 | 43.0 |
| Other accrued liabilities | 71.2 | 54.6 | 102.1 |
| Reclassification to current liabilities (1) | (9.4) | — | — |
| **Total Liabilities Subject to Compromise (1)** | $ 3,221.6 | $ 3,155.1 | $ 2,366.0 |

(1)  *As of December 31, 2006, $9.4 million of certain pension and postretirement benefit obligations subject to compromise have been presented in other current liabilities in the Consolidated Balance Sheet in accordance with SFAS No. 158.*

Note that the unfunded special pension arrangements reflected above exclude non-U.S. plans and U.S. qualified plans that became underfunded subsequent to the Filing. Contributions to U.S. qualified plans are subject to Bankruptcy Court approval.
*Change in Liabilities Subject to Compromise*
The following table is a reconciliation of the changes in pre-filing date liability balances for the period from the Filing Date through December 31, 2006.

| (In millions) (Unaudited) | Cumulative Since Filing |
|---|---|
| Balance, Filing Date April 2, 2001 | $ 2,366.0 |
| Cash disbursements and/or reclassifications under Bankruptcy Court orders: | |
| Freight and distribution order | (5.7) |
| Trade accounts payable order | (9.1) |
| Resolution of contingencies subject to Chapter 11 | (119.7) |
| Other court orders including employee wages and benefits, sales and use tax, and customer programs | (329.5) |
| Expense/(income) items: | |
| Interest on pre-petition liabilities | 274.9 |
| Employee-related accruals | 34.0 |
| Provision for asbestos-related contingencies | 744.8 |
| Provision for environmental contingencies | 295.6 |
| Provision for income tax contingencies | 5.4 |
| Balance sheet reclassifications | (35.1) |
| Balance, end of period | $ 3,221.6 |

Additional liabilities subject to compromise may arise due to the rejection of executory contracts or unexpired leases, or as a result of the Bankruptcy Court's allowance of contingent or disputed claims.
Beginning January 1, 2006, Grace agreed to pay interest on pre-petition bank debt at the prime rate, adjusted for periodic changes, and compounded quarterly. The effective rate for 2006 was 7.96%. From the Filing Date through December 31, 2005, Grace accrued interest on pre-petition bank debt at a negotiated fixed annual rate of 6.09%, compounded quarterly.
*Chapter 11 expenses*

| (In millions) | 2006 | 2005 | 2004 |
|---|---|---|---|
| Legal and financial advisory fees | $ 57.9 | $ 38.4 | $ 20.3 |
| Interest income | (8.0) | (7.5) | (2.3) |
| Chapter 11 expenses, net | $ 49.9 | $ 30.9 | $ 18.0 |

Pursuant to SOP 90-7, interest income earned on the Debtors' cash balances must be offset against Chapter 11 expenses.

F-18

million at interest rates based upon the prevailing prime, federal funds and/or Eurodollar rates. Of that amount, $250 million was available under short–term facilities expiring in May 2001, and $250 million was available under a long–term facility expiring in May 2003. As a result of the Filing, Grace was in default under the bank revolving credit agreements, and accordingly, the balance as of the Filing Date was reclassified to debt subject to compromise in the Consolidated Balance Sheet.

(4)  Miscellaneous borrowings primarily consisting of U.S. mortgages.

(5)  In the fourth quarter of 2004, Grace accrued $69.5 million to increase its estimate of interest to which holders of the Debtor's pre–petition bank credit facilities and letters of credit would be entitled under the Plan to 6.09%. Grace continued to accrue interest at this rate throughout 2005.

(6)  Beginning January 1, 2006, Grace agreed to pay interest on pre–petition bank debt at the prime rate, adjusted for periodic changes and compounded quarterly; such rate averaged 7.96% over 2006.

Interest payments on pre–petition obligations amounted to $3.1 million in 2006, $2.3 million in 2005, and $2.1 million in 2004.

**13.      Financial Instruments and Risk**

*Debt and Interest Rate Swap Agreements*—Grace was not a party to any debt or interest rate swaps at December 31, 2006 and December 31, 2005.

*Commodity Risk*—Certain raw materials and energy are commodities subject to price fluctuation. Grace hedges against volatility in certain raw material and energy purchases, using financial instruments as appropriate. Grace also enters into long term supply agreements and/or forward commitments to secure materials at stable prices and in quantities fully expected to be used in production. During 2006 and 2005, Grace entered into forward contracts with natural gas suppliers in the U.S. to manage the cost of a portion of quantities required for use at certain U.S. plants. In 2006, Grace entered into option agreements with natural gas suppliers to hedge purchases of natural gas, and also entered into fixed–price swaps with a financial institution to hedge its purchases of natural gas from suppliers.

*Currency Risk*—Because Grace does business in over 40 countries, results are exposed to fluctuations in foreign exchange rates. Grace seeks to minimize exposure to these fluctuations by matching revenue streams in volatile currencies with expenditures in the same currencies, but it is not always possible to do so. From time to time Grace will use financial instruments such as foreign currency forward contracts, options, or combinations of the two to reduce the risk of certain specific transactions. However, Grace does not have a policy of hedging all exposures, because management does not believe that such a level of hedging would be cost–effective, particularly translation exposures that are not expected to affect cash flows in the near term. In 2004, Grace purchased forward contracts to minimize currency risk related to euro denominated intercompany loans due to a U.S. subsidiary of Grace. In 2005, Grace extended the remaining portion of these forward currency contracts.

In February 2006, Grace adopted a currency risk management program. Pursuant to this program, Grace has entered into derivative instruments such as foreign currency forward contracts and options to hedge its exposure to foreign currency fluctuations in various currencies.

*Fair Value of Debt and Other Financial Instruments*—At December 31, 2006, the fair value of Grace's debt payable within one year not subject to compromise approximated the recorded value of $3.3 million. Fair value is determined based on expected future cash flows (discounted at market interest rates), quotes from financial institutions and other appropriate valuation methodologies. At December 31, 2006, the recorded values of other financial instruments such as cash, short–term investments, trade receivables and payables and short–term debt approximated their fair values, based on the short–term maturities and floating rate characteristics of these instruments. At December 31, 2006, the carrying value of Grace's bank debt subject to compromise was $739.5 million. The estimated fair value of the bank debt is higher than the carrying value; however, because such debt is subject to compromise in Grace's Chapter 11 proceeding, neither carrying values or market values may reflect ultimate liquidation amounts.

*Credit Risk*—Trade receivables potentially subject Grace to credit risk. Concentrations of credit to customers in the petroleum and construction industries represent the greatest exposure. Grace's credit evaluation policies, relatively short collection terms and history of minimal credit losses mitigate credit risk exposures. Grace does not generally require collateral for its trade accounts receivable, but may require a bank letter

F–30

The change in the pre–tax loss from noncore activities from 2004 to 2005 is attributable primarily to:

- A pre–tax charge of $714.8 million ($476.6 million net of estimated insurance proceeds) in 2004 to increase our recorded asbestos–related liability (see Note 3 to the Consolidated Financial Statements for more information), and

- A net gain of $51.2 million in 2004 from the settlement of litigation under an agreement with Honeywell International, Inc. related to environmental contamination of a non–operating parcel of land.

In March 2004, we began accounting for currency fluctuations on a €293 million intercompany loan between our subsidiaries in the United States and Germany as a component of operating results instead of as a component of other comprehensive income. This change was prompted by an analysis of new tax laws in Germany and our cash flow planning in connection with our Chapter 11 reorganization, which together indicated that we should no longer consider this loan as part of our permanent capital structure in Germany. In May 2004, we entered into a series of foreign currency forward contracts with a U.S. bank to mitigate future currency fluctuations on the remaining loan balance. Contract amounts of €200.7 million were extended in June 2005 at varying rates and have terms that coincide with loan repayments due periodically through December 2008. As part of the contract extension, we were required to pay a settlement premium of $9.3 million to the bank. We expect to recover this settlement premium over time as the contracts are settled at rates greater than the initial rates in the May 2004 foreign currency forward contracts. We repaid €65.9 million of loan principal in 2006. We made no loan repayments in 2005. We recognized a $21.5 million contract loss and a $35.7 million contract gain in 2006 and 2005, respectively, offset by a foreign currency gain of $23.1 million in 2006 and a foreign currency loss of $35.9 million in 2005.

*Chapter 11 Expenses*—Although we are unable to measure precisely the impact of the Chapter 11 proceedings on our overall financial performance, we incur significant added costs that are directly attributable to operating in Chapter 11. Net Chapter 11 expenses consist primarily of legal, financial and consulting fees that we, the three creditors' committees, the equity committee and the representative of future asbestos claimants, incur, reduced by interest income earned on cash and cash equivalents held by our entities subject to Chapter 11. We pay for the costs of all committees, and the committees' advisors. These costs fluctuate with the activity in our Chapter 11 proceedings.

Our pre–tax income from core operations included expenses for Chapter 11–related compensation charges of $21.9 million, $17.5 million, and $28.9 million for the years ended December 31, 2006, 2005, and 2004, respectively. Because of the uncertain outcome of the Chapter 11 proceeding and the volatility and speculative nature of Grace common stock, we changed our long–term incentive compensation from an equity–based to a cash–based program.

We incur numerous other indirect costs to manage the Chapter 11 proceedings such as: management time devoted to Chapter 11 matters; added cost of debt capital; added costs of general business insurance, including D&O liability insurance premiums; and lost business and acquisition opportunities due to the complexities and restrictions of operating under Chapter 11.

*Interest Expense*—Interest expense increased in 2006 compared to 2005 due to a change in the rate of interest on prepetition bank debt as noted below. The plan of reorganization states that each holder of an allowed general unsecured claim shall be paid in full, plus post–petition interest. Post–petition interest shall accrue through the date of payment as follows:

- For the holders of pre–petition bank credit facilities, beginning January 1, 2006, we agreed to pay interest on pre–petition bank debt at the prime rate, adjusted for periodic changes, and compounded quarterly. The effective rate for 2006 was 7.96%. From April 2, 2001, the voluntary bankruptcy filing date, through December 31, 2005, we accrued interest on pre–petition bank debt at a negotiated fixed annual rate of 6.09%, compounded quarterly.

- For the holders of claims who, but for the Chapter 11 filing, would be entitled under a contract or otherwise to accrue or be paid interest on such claim in a non–default (or non–overdue payment) situation under applicable non–bankruptcy law, the rate provided in the contract between the Grace entity and the claimant or such rate as may otherwise apply under applicable non–bankruptcy law.

- For all other holders of allowed general unsecured claims, at a rate of 4.19% per annum, compounded annually.

The effective interest rates for 2006, 2005 and 2004 were 6.7%, 5.2% and 5.0%, respectively. Such interest, which under the plan of reorganization is payable 85% in cash and 15% in Grace common stock, will not be paid until the plan of reorganization is confirmed and funded.

*Income Taxes*—Income tax benefit (provision) at the federal corporate rate of 35% for the years ended December 31, 2006, 2005, and 2004 was $(9.2) million, $(31.0) million, and $141.3 million, respectively. Our recorded tax provision of $(8.1) million for 2006 reflects a net reduction from the statutory tax benefit due to (1) recognition of tax benefits by a non–U.S. subsidiary prompted by published final guidance on the deductibility of certain expenses, (2) a final settlement offer issued by the IRS, (3) a favorable reassessment regarding the recoverability of recorded tax assets and (4) an increase in the tax provision related to future repatriation of earnings from foreign subsidiaries. In 2005, our recorded tax provision of $(21.3) million reflected a reduction from the statutory tax benefit due to (1) a favorable reassessment of certain tax contingencies, and (2) a release of the valuation allowance in a non–U.S. subsidiary prompted by a favorable law change.

As part of our evaluation and planning for the funding requirements of the plan of reorganization, we have concluded that the financing of the plan of reorganization will likely involve cash and financing from non–U.S. subsidiaries. We anticipate that approximately $680 million will be sourced in this manner. Approximately $190 million can be repatriated by way of intercompany debt repayments and the remaining $490 million by way of taxable dividends and return of capital. Accordingly, we recorded a deferred tax liability to recognize the expected taxable elements of financing our plan of reorganization, $42 million of which was provided in 2006. We have not provided for U.S. federal, state, local and foreign deferred income taxes on approximately $220 million of undistributed earnings of foreign subsidiaries that we expect will be retained indefinitely by such subsidiaries for reinvestment.

We also have significant deferred tax assets primarily associated with asbestos and environmental liabilities that would reduce taxable income in future periods as such liabilities are funded, and net operating loss and tax credit carryforwards. In addition, we have deferred tax liabilities resulting primarily from deferred income, plant and equipment, and pension assets that may result in taxable amounts in future periods. Valuation allowances have been established and are maintained for certain deferred tax assets that exceeded our analysis of the amounts reasonably expected to be realized in the future. We reduced our valuation allowance related to future U.S. Federal income tax deductions in its entirety ($48 million) as a result of our current forecasts of future U.S. taxable income.

Because of our current and future state tax profile and more restrictive laws governing utilization of tax loss carryforwards, we maintain a full valuation allowance against the benefit of future state income tax deductions and loss carryforwards. The valuation allowances relating to foreign loss carryfowards decreased by $5.7 million in 2006 as a result of utilization or expiration.

The net decrease in the valuation allowance brings our total valuation allowance to $185.2 million on net tax assets of $885.9 million. The total valuation allowance covers (1) state tax deductions with a tax value of approximately $146.9 million, which we do not expect to realize in reduced taxes due to timing limitations, (2) foreign loss carryforwards with a tax value of $16.6 million, which we do not expect to be able to use during the relevant carryforward periods, and (3) $21.7 million related to federal deferred tax assets related to foreign tax credit, general business credits and alternative minimum tax credit carryforwards. Based upon future anticipated results, we have concluded that it is more likely than not that we will realize the remaining net recorded deferred tax asset of $700.7 million over time. A large proportion of such balance (primarily associated with asbestos– and environmental–related liabilities) is not yet time–limited as it pertains to liabilities not yet funded. Our recovery of such net tax assets could be materially affected by developments in our Chapter 11 proceeding.

F–57

# GRACE W R GRACE & CO (GRA)

7500 GRACE DRIVE
COLUMBIA, MD 21044
410 531 4000
http://www.grace.com/

# 10-K

**10-K**
**Filed on 02/29/2008 − Period: 12/31/2007**
File Number 001−13953

GSI

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

# FORM 10-K

### ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF
### THE SECURITIES EXCHANGE ACT OF 1934

**For the fiscal year ended December 31, 2007**          **Commission file number 1-13953**

# W. R. GRACE & CO.

Incorporated under the Laws of the
**State of Delaware**

I.R.S. Employer Identification No.
**65-0773649**

**7500 Grace Drive, Columbia, Maryland 21044-4098**
**410/531-4000**
Securities registered pursuant to Section 12(b) of the Exchange Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, $.01 par value | New York Stock Exchange, Inc. |
| Preferred Stock Purchase Rights | |

Securities registered pursuant to Section 12(g) of the Exchange Act:

None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.

Yes ☐     No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Exchange Act.

Yes ☐     No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months and (2) has been subject to such filing requirements for the past 90 days.

Yes ☒     No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulations S-K is not contained herein and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☒                              Accelerated filer ☐
Non-accelerated filer ☐                               Smaller Reporting Company ☐
(Do not check if a smaller reporting company)

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

Yes ☐     No ☒

The aggregate market value of W. R. Grace & Co. voting and non-voting common equity held by non-affiliates as of June 29, 2007 (the last business day of the registrant's most recently completed second fiscal quarter) based on the closing sale price of $24.49 as reported on the New York Stock Exchange was $1,479,598,934*

At January 31, 2008, 71,635,601 shares of W. R. Grace & Co. Common Stock, $.01 par value, were outstanding.

### DOCUMENTS INCORPORATED BY REFERENCE

None.

*Excludes 11,219,148 shares of outstanding W. R. Grace & Co. ("Grace") Common Stock held by directors and executive officers and stockholders, whose beneficial ownership exceeds 10% of the outstanding shares of Grace Common Stock. Exclusion of shares held by any person should not be construed to indicate that such person possesses the power, direct or indirect, to direct or cause the direction of the management or policies of Grace, or that such person is controlled by or under common control with Grace.*

| (In millions) (Unaudited) | Cumulative Since Filing |
|---|---|
| Balance, Filing Date April 2, 2001 | $    2,366.0 |
| **Cash disbursements and/or reclassifications under Bankruptcy Court orders:** | |
| Freight and distribution order | (5.7) |
| Trade accounts payable order | (9.1) |
| Resolution of contingencies subject to Chapter 11 | (130.0) |
| Other court orders including employee wages and benefits, sales and use tax, and customer programs | (352.9) |
| **Expense/(income) items:** | |
| Interest on pre–petition liabilities | 345.8 |
| Employee–related accruals | 60.6 |
| Provision for asbestos–related contingencies | 744.8 |
| Provision for environmental contingencies | 312.6 |
| Provision for income tax contingencies | (16.8) |
| Balance sheet reclassifications | (37.8) |
| **Balance, end of period** | $    3,277.5 |

Additional liabilities subject to compromise may arise due to the rejection of executory contracts or unexpired leases, or as a result of the Bankruptcy Court's allowance of contingent or disputed claims.

For the holders of pre–petition bank credit facilities, beginning January 1, 2006, Grace agreed to pay interest on pre–petition bank debt at the prime rate, adjusted for periodic changes, and compounded quarterly. The effective rates for the twelve months ended December 31, 2007 and 2006 were 8.05% and 7.96%, respectively. From the Filing Date through December 31, 2005, Grace accrued interest on pre–petition bank debt at a negotiated fixed annual rate of 6.09%, compounded quarterly.

For the holders of claims who, but for the Chapter 11 filing, would be entitled under a contract or otherwise to accrue or be paid interest on such claim in a non–default (or non–overdue payment) situation under applicable non–bankruptcy law, Grace accrues interest at the rate provided in the contract between the Grace entity and the claimant or such rate as may otherwise apply under applicable non–bankruptcy law.

For all other holders of allowed general unsecured claims, Grace accrues interest at a rate of 4.19% per annum, compounded annually, unless otherwise negotiated during the claim settlement process.

*Chapter 11 expenses*

| (In millions) | 2007 | 2006 | 2005 |
|---|---|---|---|
| Legal and financial advisory fees | $    95.1 | $    57.9 | $    38.4 |
| Interest income | (8.7) | (8.0) | (7.5) |
| Chapter 11 expenses, net | $    86.4 | $    49.9 | $    30.9 |

Pursuant to SOP 90–7, interest income earned on the Debtors' cash balances must be offset against Chapter 11 expenses.

*Condensed financial information of the Debtors*

**W. R. Grace & Co.—Chapter 11 Filing Entities**
**Debtor–in–Possession Statements of Operations**

| (In millions) (Unaudited) | Year Ended December 31, | | |
|---|---|---|---|
| | 2007 | 2006 | 2005 |
| Net sales, including intercompany | $   1,497.9 | $   1,425.0 | $   1,267.2 |
| Cost of goods sold, including intercompany, exclusive of depreciation and amortization shown separately below | 1,063.2 | 1,036.6 | 896.0 |
| Selling, general and administrative expenses, exclusive of defined benefit pension expense shown separately below | 314.0 | 340.2 | 276.1 |
| Research and development expenses | 43.9 | 38.3 | 38.4 |
| Depreciation and amortization | 55.5 | 58.6 | 65.2 |
| Defined benefit pension expense | 38.8 | 46.3 | 51.9 |
| Interest expense and related financing costs | 71.1 | 72.7 | 54.7 |
| Other (income) expense, net | (72.9) | (83.4) | (107.3) |
| Provision for environmental remediation | 17.0 | 30.0 | 25.0 |
| Chapter 11 expenses, net of interest income | 86.5 | 49.8 | 30.7 |
| | 1,617.1 | 1,589.1 | 1,330.7 |
| Income (loss) before income taxes and equity in net income of non–filing entities | (119.2) | (164.1) | (63.5) |
| Benefit from (provision for) income taxes | 61.8 | 33.0 | 15.0 |
| Income (loss) before equity in net income of non–filing entities | (57.4) | (131.1) | (48.5) |
| Equity in net income of non–filing entities | 137.7 | 149.4 | 115.8 |
| **Net income** | $    80.3 | $    18.3 | $    67.3 |

(2)   In April 2001, the Debtors entered into a debtor–in–possession post–petition loan and security agreement with Bank of America, N.A. (the "DIP facility") in the aggregate amount of $250 million. The DIP facility is secured by priority liens on substantially all assets of the Debtors, and bears interest based on LIBOR plus 2 to 2.25 percentage points. The term of the DIP facility expires April 1, 2008. As of December 31, 2007 and 2006, the Debtors had no outstanding borrowings under the DIP facility. However, $56.3 million and $55.4 million of standby letters of credit were issued and outstanding under the facility as of December 31, 2007 and 2006, respectively, which were issued mainly for trade–related matters such as performance bonds, as well as certain insurance and environmental matters. The outstanding amount of standby letters of credit, as well as other holdback provisions issued under the DIP facility reduces the borrowing availability to $178.5 million at December 31, 2007. Under the DIP facility, the Debtors are required to maintain $50 million of liquidity, in a combination of cash, cash equivalents and the net cash value of life insurance policies.

(3)   Under bank revolving credit agreements in effect prior to the Filing, Grace could borrow up to $500 million at interest rates based upon the prevailing prime, federal funds and/or Eurodollar rates. Of that amount, $250 million was available under short–term facilities expiring in May 2001, and $250 million was available under a long–term facility expiring in May 2003. As a result of the Filing, Grace was in default under the bank revolving credit agreements, and accordingly, the balance as of the Filing Date was reclassified to debt subject to compromise in the Consolidated Balance Sheet.

(4)   In the fourth quarter of 2004, Grace accrued $69.5 million to increase its estimate of interest to which holders of the Debtor's pre–petition bank credit facilities and letters of credit would be entitled under the Debtors Plan to 6.09%. Grace continued to accrue interest at this rate throughout 2005. Beginning January 1, 2006, Grace agreed to pay interest on pre–petition bank debt at the prime rate, adjusted for periodic changes and compounded quarterly; such rate averaged 8.1% over 2007.

(5)   Amounts drawn on letters of credit pursuant to settled but unpaid claims.

## 14.   Financial Instruments and Risk

*Debt and Interest Rate Swap Agreements*—Grace was not a party to any debt or interest rate swaps at December 31, 2007 and December 31, 2006.

*Commodity Risk*—Certain raw materials and energy sources are subject to price fluctuation. Grace hedges against volatility in certain raw material and energy purchases, using financial instruments as appropriate. Grace also enters into long term supply agreements and/or forward commitments to secure materials at stable prices and in quantities fully expected to be used in production. During 2007 and 2006, Grace entered into fixed–price swaps with financial institutions, forward contracts with natural gas suppliers, and options agreements with natural gas suppliers to manage the cost of a portion of quantities required for use at certain production plants.

*Currency Risk*—Because Grace does business in over 40 countries, results are exposed to fluctuations in foreign exchange rates. Grace seeks to minimize exposure to these fluctuations by matching revenue streams in volatile currencies with expenditures in the same currencies, but it is not always possible to do so. From time to time Grace will use financial instruments such as foreign currency forward contracts, options, or combinations of the two to reduce the risk of certain specific transactions. However, Grace does not have a policy of hedging all exposures, because management does not believe that such a level of hedging would be cost–effective, particularly translation exposures that are not expected to affect cash flows in the near term.

In 2004, Grace purchased forward contracts to minimize currency risk related to euro denominated intercompany loans due to a U.S. subsidiary of Grace. In 2005, Grace extended the remaining portion of these forward foreign currency contracts. The intercompany loans and the forward foreign currency contracts mature in 2008. In November 2007, Grace purchased additional forward foreign currency contracts to mitigate the effect of foreign currency translation with respect to new intercompany loans between its principal U.S. subsidiary and a German subsidiary.

In February 2006, Grace adopted a currency risk management program. Pursuant to this program, Grace has entered into derivative instruments such as foreign currency forward contracts and options to hedge its exposure to foreign currency fluctuations in various currencies.

*Fair Value of Debt and Other Financial Instruments*—At December 31, 2007, the fair value of Grace's debt payable within one year not subject to compromise approximated the recorded value of $4.7 million. Fair value is determined based on expected future cash flows (discounted at market interest rates), quotes from financial institutions and other appropriate valuation methodologies. At December 31, 2007, the recorded values of other financial instruments such as cash equivalents, short–term investments, trade receivables and payables and short–term debt approximated their fair values, based on the short–term maturities and floating rate characteristics of these instruments. At December 31, 2007, the carrying value of Grace's bank debt subject to compromise plus interest was $783.0 million. The estimated fair value of the bank debt is higher than the carrying value; however, because such debt is subject to compromise in Grace's Chapter 11

We incur numerous other indirect costs to manage the Chapter 11 proceedings such as: management time devoted to Chapter 11 matters; added cost of debt capital; added costs of general business insurance, including D&O liability insurance premiums; and lost business and acquisition opportunities due to the complexities and restrictions of operating under Chapter 11.

*Interest Expense*—Interest expense decreased in 2007 as compared to 2006. The change in interest expense is attributable to reductions in the prime rate and reduced interest accruals in the second half of 2007 for certain pre–petition obligations, partially offset by the effects of compounding interest on certain liabilities subject to compromise over the course of the Chapter 11 proceeding. Interest expense increased in 2006 as compared to 2005 due to a change in the rate of interest on pre–petition bank debt (from a fixed rate to a prime rate) and the effects of compounding interest. Our plan of reorganization states that each holder of an allowed general unsecured claim shall be paid in full, plus post–petition interest. Post–petition interest shall accrue through the date of payment as follows:

- For the holders of pre–petition bank credit facilities, beginning January 1, 2006, we agreed to pay interest on pre–petition bank debt at the prime rate, adjusted for periodic changes, and compounded quarterly. The effective rates on pre–petition bank debt for the twelve months ended December 31, 2007, 2006, and 2005 were 8.1%, 8.0%, and 6.1%, respectively.

- For the holders of claims who, but for the Chapter 11 filing, would be entitled under a contract or otherwise to accrue or be paid interest on such claim in a non–default (or non–overdue payment) situation under applicable non–bankruptcy law, the rate provided in the contract between the Grace entity and the claimant or such rate as may otherwise apply under applicable non–bankruptcy law.

- For all other holders of allowed general unsecured claims, at a rate of 4.19% per annum, compounded annually, unless otherwise negotiated during the claim settlement process.

The average effective interest rates on pre–petition obligations for 2007, 2006, and 2005 were 6.3%, 6.7%, and 5.2%, respectively. Such interest, which under the plan of reorganization is payable 85% in cash and 15% in Grace common stock, will not be paid until the plan of reorganization is confirmed and funded.

*Income Taxes*—Income tax provision at the federal corporate rate of 35% for the years ended December 31, 2007, 2006, and 2005 was $26.1 million, $9.2 million, and $31.0 million, respectively. Our recorded tax benefit of $5.8 million for 2007 reflects a net reduction from the statutory tax benefit due to (1) tax expense of $20.1 million related to the deferred tax liability associated with the cash value of corporate owned life insurance policies in recognition of the fact that the policies would likely be surrendered as part of Grace's Chapter 11 financing plan, (2) a tax benefit in the amount of $44.8 million resulting from the reassessment of the deferred tax liability balance in relation to future repatriations of foreign earnings, (3) a tax benefit of $11.2 million related to the settlement of a 1999 tax issue involving the deduction of capital losses (see Note 4 to the Consolidated Financial Statements), (4) recognition of the favorable impact of tax rate changes in certain foreign jurisdictions on deferred tax balances, and (5) a favorable reassessment regarding the recoverability of recorded tax assets and other changes to the accrual for uncertain tax positions (see Note 4 to the Consolidated Financial Statements). In 2006, our recorded tax provision of $8.1 million reflected a net reduction from the statutory tax provision due to (1) recognition of tax benefits by a non–U.S. subsidiary prompted by published final guidance on the deductibility of certain expenses, (2) a final settlement offer issued by the United States Internal Revenue Service, (3) a favorable reassessment regarding the recoverability of recorded tax assets, and (4) an increase in the tax provision related to future repatriation of earnings from foreign subsidiaries.

As part of our evaluation and planning for the funding requirements of our plan of reorganization, we recognize that the financing of our plan of reorganization will involve cash and financing from non–U.S. subsidiaries. Accordingly, we implemented a repatriation plan in the fourth quarter of 2007 resulting in the U.S. parent company receiving payments of $442 million of which $382 million is represented by intercompany loans receivable at year–end. We maintain a deferred liability for U.S. federal, state, local and foreign income taxes related to future repatriations of approximately $10 million and have not provided for U.S. federal, state, local and foreign deferred income taxes on approximately $675 million of undistributed earnings of foreign subsidiaries that, based upon our current outlook and assumptions with respect to the amount of

F–59