# EXHIBIT A

Court File No. 01-CL-4081

### ONTARIO

### SUPERIOR COURT OF JUSTICE

### COMMERCIAL LIST

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-
36, AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

## CDN ZAI MINUTES OF SETTLEMENT

**OVERVIEW**

1.     The Parties to these Minutes of Settlement (**"Minutes"**) agree to be bound by the
following terms.

2.     Capitalized terms used herein and not otherwise defined have the meaning
ascribed to them in Appendix A.

**BACKGROUND AND PURPOSE**

3.     Certain of the Grace Parties have been named as defendants in the actions
listed in Appendix B (the **"Actions"**) in which the plaintiffs therein seek damages
for, *inter alia*, CDN ZAI Claims.

4.     Pursuant to an Order of the CCAA Court dated November 15, 2005, the Modified
Preliminary Injunction of the U.S. Court was recognized in Canada and the
Actions were stayed.

- 2 -

5.   Pursuant to an Order of the CCAA Court made on February 8, 2006, Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP were appointed as CCAA Representative Counsel to represent the interests of, *inter alia*, CDN ZAI Claimants in Canada and, as such, have the authority to enter into the Minutes on behalf of CDN ZAI Claimants.

6.   The purpose of the Minutes is to achieve and conclude a full and final resolution of all CDN ZAI Claims against the Grace Parties.

**NO ADMISSION OF LIABILITY**

7.   Grace and Grace Canada in agreeing to the Minutes, do not admit liability of any kind in relation to CDN ZAI Claims.  The Parties acknowledge that Grace and Grace Canada are entering into these Minutes for settlement purposes only and that nothing in the Minutes constitutes an admission by the Grace Parties that they have any liability under Canadian or US law on account of the presence of or exposure to ZAI or that any person with ZAI in a home in Canada has any valid claim against the Grace Parties under Canadian or US law.  By entering into the Settlement, Grace and Grace Canada are not waiving any of their defences to liability.  The Parties further acknowledge that none of the Grace Parties who are not signatories hereto have waived any of their defences to liability.

8.   The CCAA Representative Counsel, on behalf of the CDN ZAI Claimants, agrees that it will not publicly disparage, impugn or malign the acts or omissions of any

- 3 -

of the other Parties or the Grace Parties who are not signatories hereto with respect to CDN ZAI Claims.

## TERMS OF SETTLEMENT WITH GRACE PARTIES

9. On the Effective Date (as that term shall be defined in the Plan), Grace shall contribute the amount of six million five hundred thousand Canadian dollars (CDN$6,500,000) less any amounts that have been paid by Grace pursuant to the Fee Order (the "**Grace Funds**") to the CDN ZAI PD Claims Fund.

10. Grace shall provide in its Plan for the creation of a separate class of CDN ZAI PD Claims and for the establishment of the CDN ZAI PD Claims Fund, which shall administer and make payments in respect of CDN ZAI PD Claims in accordance with the terms of this Settlement.

11. Grace shall provide in its Plan that any CDN ZAI PI Claimant shall be entitled to file his or her claim against the Asbestos Trust to be created for asbestos personal injury claims pursuant to the Plan, the Trust Agreement and the TDP and shall be entitled to payments as provided thereunder. CDN ZAI PI Claimants shall be entitled to the same rights to recover legal fees and expenses as part of their claims against the Asbestos Trust established for payment of Asbestos PI Claims (as defined in the Plan) pursuant to the Plan as all other Asbestos PI Claimants.

12. Pursuant to the Canadian Settlement Approval, CCAA Representative Counsel shall vote, on behalf of CDN ZAI Claimants, in favour of Grace's Plan incorporating this Settlement.

- 4 -

**CANADIAN SETTLEMENT APPROVAL**

13.    Upon execution of the Minutes, Grace shall as soon as reasonably practicable:

    (a)    advise the U.S. Court of this Settlement; and

    (b)    bring a motion in the CCAA Court for the Canadian Settlement Approval which shall,

        (i)    approve the Settlement;

        (ii)    authorize CCAA Representative Counsel to vote as proxy and power of attorney for CDN ZAI Claimants on the Plan;

        (iii)    order, on the Effective Date (as such term shall be defined in the Plan), (A) releases in favour of the Grace Parties from the CDN ZAI Claimants of all claims and causes of action of any kind whatsoever relating to CDN ZAI Claims including, without limitation, any claims or causes of actions asserted against the Grace Parties as a result of the CDN ZAI Claims advanced by CCAA Representative Counsel against the Crown as a result of which the Crown is or may become entitled to contribution or indemnity from the Grace Parties; (B) the discharge and extinguishment of all CDN ZAI Claims against the Grace Parties (collectively, the **"Releases"**); and (C) a stay of the Actions until the Actions are amended to remove the Grace Parties as named defendants as provided for herein;

- 5 -

(iv)    order that all CDN ZAI Claims, whether present or future, suffered directly or indirectly, from the manufacture, sale, or distribution of ZAI products in Canada, against the Crown are not released or in any way affected by the terms of this Settlement, except to the extent released in Section 13(b)(iii) above. For greater certainty, nothing contained in these Minutes shall serve to discharge, extinguish or release CDN ZAI Claims asserted against the Crown and which claims seek to establish and apportion independent and/or several liability against the Crown; and

(v)    address other matters required in order to implement the Settlement.

14.    Provided that the Canadian Settlement Approval is obtained, Grace agrees that it will support, to the fullest extent permitted by law, a one time fee application by U.S. counsel to CCAA Representative Counsel to the U.S. Court for the approval and payment of its reasonable attorney's fees and expenses incurred up to the date of these Minutes in connection with the Chapter 11 cases provided that no request shall exceed the amount of US$350,000. In the event that the U.S. Court grants an Order (the "**Fee Order**") approving such application, any amounts paid by Grace to U.S. counsel to CCAA Representative Counsel shall be deducted from the amount payable pursuant to paragraph 20(a) herein.

15.    In the event that either the Canadian Settlement Approval or the U.S. Confirmation Order is not obtained, this Settlement will be considered to be null and void.

- 6 -

## CONDITIONS OF FUNDING

*Grace Conditions to Funding*

16.    The Grace Parties' obligation to contribute the Grace Funds is subject to the following conditions (the "**Grace Funding Conditions**"):

(a)    The Canadian Settlement Approval shall have been obtained;

(b)    The U.S. Court shall have granted an Order approving the CDN ZAI PD Claims Notice Program on the terms set out herein, which shall, *inter alia,* provide for the CDN ZAI PD Claims Bar Date, which Order shall have been recognized by the CCAA Court;

(c)    The Plan shall incorporate the terms of this Settlement and such other matters required to implement the Settlement and shall include, in particular, the discharge and extinguishment of all CDN ZAI Claims against the Grace Parties;

(d)    CCAA Representative Counsel shall have voted in favour of the Plan; and

(e)    all conditions of Plan implementation being satisfied, including the issuance of: (i) a Final Order (as such term shall be defined in the Plan) approving confirmation of the Plan (the "**U.S. Confirmation Order**"); and (ii) an Order of the CCAA Court (and the time for any appeal with respect to such Order shall have expired and no appeal shall be pending or outstanding) recognizing and implementing the U.S. Confirmation Order in Canada.

- 7 -

17.    Upon payment of the Grace Funds:

    (a)    All CDN ZAI Claims against the Grace Parties shall be forever disallowed and expunged;

    (b)    CCAA Representative Counsel shall cause the Actions to be amended such that no CDN ZAI Claims are asserted against the Grace Parties as named defendants; and

    (c)    CDN ZAI Claimants shall no longer have recourse in respect of CDN ZAI PD Claims against the Grace Parties, but shall have recourse only to the CDN ZAI PD Claims Fund.  Thereafter none of the Grace Parties shall have any liability for the CDN ZAI Claims whatsoever, and, for greater certainty, no CDN ZAI Claimant shall have any further recourse against any of the Grace Parties.

18.    In the event that (a) the U.S. Confirmation Order is not granted prior October 31, 2009; or (b) the Plan, as confirmed, does not reflect the terms of this Settlement, then this Settlement shall be considered null and void.

**PRESERVATION OF CDN ZAI CLAIMS AGAINST THE CROWN**

19.    All CDN ZAI Claims, whether present or future, suffered directly or indirectly, from the manufacture, sale, or distribution of ZAI products in Canada, against the Crown are not released or in any way affected by the terms of this Settlement, except to the extent released in Section 13(b)(iii) above.  For greater certainty, nothing contained in these Minutes shall serve to discharge, extinguish or

- 8 -

release CDN ZAI Claims asserted against the Crown and which claims seek to establish and apportion independent and/or several liability against the Crown.

**USE OF FUNDS IN THE CDN ZAI PD CLAIMS FUND**

20.    The CDN ZAI PD Claims Fund shall be used for the following purposes and the funds shall be distributed as follows:

(a)    On the Effective Date, two million Canadian dollars (CDN$2,000,000) less any amounts paid by Grace pursuant to a Fee Order, shall be paid to CCAA Representative Counsel in respect of legal fees and disbursements;

(b)    On the Effective Date, two hundred fifty thousand Canadian dollars (CDN$250,000) shall be set aside by the Fund to pay CCAA Representative Counsel in respect of future legal fees and disbursements incurred for the purposes of carrying out their duties in respect of the CDN ZAI PD Claims Notice Program and the CDN ZAI PD Claims Procedure, which legal fees and disbursements shall be paid upon application to and approval by the CCAA Court;

(c)    The Fund shall be authorized to pay a Claims Administrator up to eight hundred fifty thousand Canadian dollars (CDN$850,000) for fees and disbursements incurred for the purposes of administering the CDN ZAI PD Claims Procedure and the Fund;

(d)    The Fund shall be authorized to pay up to one hundred fifty thousand Canadian dollars (CDN$150,000) to a qualified expert to be jointly

- 9 -

selected by CCAA Representative Counsel and the Claims Administrator to provide expert and consulting services to assist in establishing procedures for the identification of ZAI, remedial measures that might be undertaken by a CDN ZAI PD Claimant and the development of the CDN ZAI PD Claims Procedure (the **"Qualified Expert"**);  and

(e)    The remainder of the monies in the Fund plus interest earned therein and any monies not used for the purposes outlined in sections (b)-(d) above, shall be available to be distributed to the holders of Allowed CDN ZAI PD Claims in full and complete satisfaction and payment of their CDN ZAI PD Claims.

## CDN ZAI PD CLAIMS NOTICE AND BAR DATE PROGRAM

21.    As an integral part of this Settlement, CCAA Representative Counsel shall agree to the broad-based media CDN ZAI PD Claims Notice Program, with certain further modifications to be made as agreed to by the Parties to outline the terms of this Settlement.  Grace shall bear the costs of the CDN ZAI PD Claims Notice Program.

22.    Under the CDN ZAI PD Claims Notice Program, all CDN ZAI PD Claimants seeking to preserve or pursue CDN ZAI PD Claims will be required to file a proof of claim on or before a CDN ZAI PD Claims Bar Date.

23.    Only those CDN ZAI PD Claimants who file a proof of claim by the CDN ZAI PD Claims Bar Date (the **"Timely CDN ZAI PD Claims"**) shall be entitled to seek

- 10 -

compensation from the Fund, which entitlement shall be determined in accordance with the CDN ZAI PD Claims Procedure.

24.    Any CDN ZAI PD Claim that is not a Timely CDN ZAI PD Claim shall be forever barred and expunged.

25.    The Parties agree that the order of the U.S. Court approving the CDN ZAI PD Claims Notice Program will provide for a CDN ZAI PD Bar Date that is not earlier than 180 days following substantial completion of the CDN ZAI PD Claims Notice Program.

26.    The Parties shall cooperate in their efforts to finalize the form and content of the CDN ZAI PD Claims Notice Program, in accordance with the terms of the Settlement, to allow Grace to submit a motion for the approval of the Notice Program to the U.S. Court within 30 days of the execution of these Minutes by all Parties.  CCAA Representative Counsel shall support this motion as well as any motion before the CCAA Court to recognize and implement the CDN ZAI PD Claims Notice Program in Canada.

27.    CCAA Representative Counsel shall be entitled to seek the Information Orders in accordance with the *Privacy Act* and if such Orders are granted and the Crown provides the Information, Grace shall use the Information to provide actual and direct notice to the extent possible as a result of the disclosure of the Information as well as any other Canadian homes known or believed to contain ZAI in the possession of CCAA Representative Counsel.

- 11 -

28.    Grace shall not oppose any motions for the Information Orders or related relief sought by CCAA Representative Counsel against the Crown.

**CDN ZAI PD CLAIMS PROCEDURE**

29.    CCAA Representative Counsel and the Claims Administrator shall develop and implement the CDN ZAI PD Claims Procedure.    The CDN ZAI PD Claims Procedure shall include the following:

(a)    CDN ZAI PD Claims shall be submitted initially through the proof of claim form that is part of the CDN ZAI PD Claims Notice Program.  The Fund may then require CDN ZAI PD Claimants with Timely CDN ZAI PD Claims to submit a further questionnaire, a sample of the insulation that forms the basis of the claim or other necessary information in order to determine whether such claim should be allowed and paid by the Fund.

(b)    In order to qualify as an Allowed CDN ZAI PD Claim, a CDN ZAI PD Claimant must prove on a summary basis that:

(i)    the dwelling unit for which the CDN ZAI PD Claimant is making a Claim was or is insulated with ZAI;

(ii)    the CDN ZAI PD Claimant undertook measures and incurred or assumed costs to identify and prove the existence of ZAI, and to remediate the dwelling unit to avoid possible adverse effects to occupants and others of exposure to ZAI;

- 12 -

(iii)    the CDN ZAI PD Claimant incurred or assumed the costs of identifying ZAI and/or the costs of other measures undertaken to remediate the dwelling unit to avoid possible adverse effects of exposure to ZAI; and

(iv)    any other criteria as agreed upon by the CCAA Representative Counsel and the Claims Administrator, with the benefit of advice and consultation from the Qualified Expert as necessary, have been met.

(c)    Each CDN ZAI PD Claim shall be categorized, administered, quantified and paid, if applicable, through the CDN ZAI PD Claims Procedure as follows:

(i)    Category I – NO ZAI AND/OR NO REMEDIAL MEASURES -- NO COMPENSATION – the CDN ZAI PD Claimant fails to prove the existence of ZAI and/or fails to prove that costs were incurred or assumed to identify and/or fails to prove that costs were incurred or assumed to remediate the dwelling unit to avoid possible adverse effects to occupants and others of exposure to ZAI. All Category I claims will be disallowed by the Claims Administrator. Category I claims shall be disallowed in full;

(ii)    Category II – ZAI IDENTIFICATION AND MINOR REMEDIAL MEASURES – 50% OF THE COSTS OF REMEDIAL MEASURES UP TO CDN $300.00 – the CDN ZAI PD Claimant proves the

- 13 -

existence of ZAI, proves that costs were incurred or assumed to identify and prove the existence of ZAI, and proves that costs were incurred or assumed for minor remedial measures undertaken to the dwelling unit to avoid possible risks of exposure to ZAI to occupants and others;

(iii)    Category III – ZAI IDENTIFICATION AND MAJOR REMEDIAL MEASURES – 50% OF THE COSTS OF REMEDIAL MEASURES UP TO CDN$600.00 – the CDN ZAI PD Claimant proves the existence of ZAI, proves that costs were incurred or assumed to identify and prove the existence of ZAI, and proves that costs were incurred or assumed for major remedial measures undertaken to remediate the dwelling unit to avoid possible adverse effects of exposure to ZAI to occupants and others;

(d)    The CCAA Representative Counsel and the Claims Administrator shall act reasonably, in consultation with the Qualified Expert as necessary, to establish and agree upon such other criteria to determine what is necessary to satisfy and establish an Allowed CDN ZAI PD Claim, including, but not limited to establishing specific criteria to determine what constitutes minor or major remedial measures.

- 14 -

30.   Payments on Allowed CDN ZAI PD Claims shall be as provided for in paragraph 29 above.  However:

    (a)   in the event the Fund does not have enough monies to pay the maximum amount recoverable for Allowed CDN ZAI PD Claims, each CDN ZAI PD Claim shall be paid based upon a pro-rated distribution of each claim in relation to all Allowed CDN ZAI PD Claims made against the CDN ZAI PD Claims Fund. For greater certainty, aside from the Grace Funds, under no circumstances shall the Grace Parties have an obligation to contribute further monies to the Fund; and

    (b)   if the Fund is not exhausted after the administration of the CDN ZAI PD Claims Procedure is complete, such funds shall be used:

        (i)   first, to make a further allowance to holders of Allowed CDN ZAI PD Claims on a pro rata basis up to the maximum amount of the Allowed ZAI PD Claim; and

        (ii)   thereafter, if the Fund has not been exhausted as a result of the further allowance in 29(b)(i), for such charitable or education purposes as the Claims Administrator, in consultation with CCAA Representative Counsel, deems appropriate.

31.   Each of the Parties acknowledges and agrees that this Settlement is subject only to the conditions outlined herein and is not subject to or conditional upon a settlement of any claims related to ZAI outside of Canada being reached by the Grace Parties nor shall the terms of it be affected by any such settlement.

- 15 -

**W. R. GRACE & CO. on its own behalf and on behalf of the other debtors in possession in the Chapter 11 cases**

Per: _Mark A. Shelnitz_
      Name:  Mark A. Shelnitz
      Title:  VP, Gen. Counsel & Secretary

Per: _____
      Name:
      Title:


**GRACE CANADA, INC.**

Per: _W B mc Gowan_
      Name: W. Brian McGowan
      Title:  President

Per: _____
      Name:
      Title:


**SCARFONE HAWKINS LLP on its own behalf and, in its capacity as representative counsel, on behalf all holders of CDN ZAI Claims**

Per: _____
      Name:
      Title:

Per: _____
      Name:
      Title:

- 16 -

**LAUZON BELANGER S.E.N.C.R.L. on its own behalf and, in its capacity as representative counsel, on behalf all holders of CDN ZAI Claims**

Per: _____

                Name:

                Title:

Per: _____

                Name:

                Title:

- 17 -

# APPENDIX A

## DEFINED TERMS

"**Actions**" has the meaning ascribed to it in paragraph 3;

"**Allowed CDN ZAI PD Claims**" means a Timely CDN ZAI PD Claims allowed by the Claims Administrator pursuant to the CDN ZAI PD Claims Procedure;

"**Canadian Settlement Approval**" means the Order of the CCAA Court as described in paragraph 13(b) and all appeal periods of such Order shall have expired and no appeal shall be pending or outstanding;

"**CCAA Court**" means the Ontario Superior Court of Justice;

"**CCAA Representative Counsel**" means Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP in their capacity as representative counsel to the Canadian ZAI Claimants pursuant to an Order of the CCAA Court made on February 8, 2006;

"**CCAA Representative Counsel's Claims**" means the Chapter 11 claims of the CCAA Representative Counsel, identified as claims nos. 17754, 17753 and 17764 filed on April 7, 2006 against the Chapter 11 estates of Grace;

"**CDN ZAI Claimants**" means CDN ZAI PD Claimants and CDN ZAI PI Claimants.

"**CDN ZAI Claims**" means Canadian ZAI PI Claims and Canadian ZAI PD Claims.

"**CDN ZAI PD Claimants**" means a holder of a CDN ZAI PD Claim;

"**CDN ZAI PD Claims**" means claims arising out of or in any way connected to property damages arising, directly or indirectly, from the manufacture, sale or distribution of ZAI in Canada as more particularly defined in the Plan and includes, without limitation all past, present and future claims against the Grace Parties described in or arising from the Actions, including any ZAI PD Claims asserted or to be asserted by the Crown;

"**CDN ZAI PD Claims Bar Date**" means the date set out in the CDN ZAI PD Claims Notice Program by which CDN ZAI PD Claims must be filed in order to qualify as Timely CDN PD Claims or else be forever barred and extinguished;

"**CDN ZAI PD Claims Fund**" or the "**Fund**" means the fund to be established for the administration, adjudication and distribution of funds with respect to CDN ZAI PD Claims;

"**CDN ZAI PD Claims Notice Program**" means the broad-based media program for CDN ZAI PD Claims currently contained within the Bar Date and Notice program Grace filed with the Bankruptcy Court on March 18, 2008 [Docket No. 18328] as amended on April 10, 2008 [Docket No. 18495] and May 23, 2008 [Docket No. 18784];

- 18 -

"**CDN ZAI PD Claims Procedure**" means procedures established by the Claims Administrator and the CCAA Representative Counsel for the Fund to review, administer, adjudicate and pay Allowed CDN ZAI PD Claims as appropriate;

"**CDN ZAI PI Claimants**" means holders of CDN ZAI PI Claims;

"**CDN ZAI PI Claims**" means claims arising out of or in any way connected to personal injuries arising, directly or indirectly, from the manufacture, sale or distribution of ZAI in Canada and as more particularly defined in the Plan and includes, without limitation, all past, present and future claims against the Grace Parties described in or arising from the Actions set out in Appendix B;

"**Claimant**" means a holder of a CDN ZAI PD Claim or a CDN ZAI PI Claim as the case may be;

"**Claims Administrator**" means a person appointed by CCAA Representative Counsel and approved by the U.S. Court to administer the Fund in accordance with this Settlement and any subsequent Fund administration agreement or other related document;

"**Crown**" means the Attorney General of Canada (Her Majesty the Queen in Right of Canada);

"**Crown's ZAI PD Claims**" means the Chapter 11 claims of the Crown, identified as claim nos. 17613 and 17656 filed by the Crown against the Chapter 11 estates of Grace on January 30 and 31, 2006;

"**Fee Order**" shall have the meaning ascribed to it in paragraph 14;

"**Grace Canada**" means Grace Canada, Inc.

"**Grace Funding Conditions**" has the meaning ascribed to it in paragraph 16;

"**Grace Funds**" has the meaning ascribed to it in paragraph 9;

"**Grace Parties**" means Grace, Sealed Air (Canada) Co./CIE, Sealed Air Corporation, Cryovac, Inc. and Grace Canada and each of their parent corporations, subsidiary corporations, joint ventures, affiliates, sister corporations, and any and all of their past, present, and future agents, servants, officers, directors, employees, predecessors, successors, assigns, heirs, executors, administrators, legal representatives, beneficiaries and insurers;

"**Grace**" means W. R. Grace & Co. and its 61 U.S. subsidiaries filed under the Chapter 11 cases;

"**Information Orders**" means one or more orders of the CCAA Court, the U.S. Court or another court of competent jurisdiction enabling or directing the Crown to disclose the Information;

- 19 -

"**Information**" means:

(a)     the addresses from the EnerGuide Program or EnerGuide for Houses Retrofit Incentive Program database whose dwellings are listed as containing vermiculite attic insulation;

(b)     the addresses of the fourteen (14) parties who have been identified as participants in the Canadian Home Insulation Program that indicated that ZAI was installed in their dwelling; and

(c)     the names and addresses of Band Officials which are used as points of contact for providing notice of Canada's First Nations peoples; and

(d)     other relevant information about the location of ZAI in homes in Canada.

"**Modified Preliminary Injunction**" means the Order granted to Grace on January 22, 2002, that provided injunctive relief to affiliated entities;

"**Parties**" means CCAA Representative Counsel, Grace and Grace Canada;

"**Plan**" means Grace's plan of reorganization under Chapter 11 of the Bankruptcy Code to be prepared and filed in Grace's Chapter 11 cases;

"**Qualified Expert**" has the meaning ascribed to it in paragraph 20(d);

"**Releases**" has the meaning ascribed to it in paragraph 13(b)(iii)

"**Settlement**" means the terms of settlement set out in the Minutes;

"**Timely CDN ZAI PD Claims**" has the meaning ascribed to it in paragraph 23;

"**U.S. Confirmation Order**" has the meaning ascribed to in paragraph 16(e);

"**U.S. Court**" means the United States Bankruptcy Court for the District of Delaware;

"**ZAI**" means Zonolite Attic Insulation, which is loose-fill, non-roll vermiculite home attic insulation, which may contain naturally occurring asbestos manufactured and sold by the Grace Parties and installed in homes and buildings that are located in Canada.

## APPENDIX B

## LIST OF ACTIONS IN CANADA

1. Association des Consommateurs pour la Qualité dans la Construction,

   Viviane BROSSEAU & Léontine ROBERGE-TURGEON v. Attorney General of Canada; Superior Court of Québec; court no. 500-06-000286-050

2. NORDICK, Merv et al v. Attorney General of Canada, W.R. Grace & Co. et al.; Federal Court of Canada; court no. T-1503-05

3. THUNDERSKY, Raven and BRUCE, Rebecca v. the Attorney General of Canada, W.R. Grace & Co. et al.; Manitoba Queen's Bench; court no. CI04-01-39818

4. Association des Consommateurs pour la Qualité dans la Construction etJean-Charles DEXTRAS v. Grace Canada Inc. and Attorney General of Canada; Superior Court of Québec; court no. 500-06-000258-042

5. NORDICK, Merv et al v. Attorney General of Canada, W.R. Grace & Co. et al.; Superior Court of Québec; court no. 550-06-000020-058

6. NORDICK, Merv et al v. Attorney General of Canada, W.R. Grace & Co. et al.;Saskatchewan Queen's Bench; court no. 696-2005

7. NORDICK, Merv et al v. Attorney General of Canada, W.R. Grace & Co et al.; Alberta Queen's Bench; court no. 0501-07100

8. NORDICK, Merv et al v. Attorney General of Canada, W.R. Grace & Co et al.; B.C. Queen's Bench; court no. L-052352

9. SPENCER, Ernest et al. v. Attorney General of Canada, W.R. Grace & Co et al.; Ontario Superior Court of Justice; court no. 5-CV-32367

10. SPENCER, Ernest et al. v. Attorney General of Canada, W.R. Grace & Co et al.; Manitoba Queen's Bench; court no. C1-05-01-44628

11. Her Majesty in Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co et al.; Manitoba Queen's Bench; court no. C1-05-01-41069

# EXHIBIT B

Court File No. 01-CL-4081

# SUPERIOR COURT OF JUSTICE

## COMMERCIAL LIST

**IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF GRACE CANADA, INC.**

### NOTICE OF MOTION
(Returnable September 30, 2008)

**THE APPLICANT** will bring a motion before a Judge of the Commercial List on Tuesday, September 30, 2008 at 10:00 a.m. or as soon after that time as the motion can be heard at 330 University Avenue, Toronto, Ontario.

**PROPOSED METHOD OF HEARING:** The motion is to be heard orally.

**THE MOTION IS FOR:**

1.    an order:

    (a)    abridging the time for service of this motion;

    (b)    directing that terms not otherwise defined in this Order shall have the meanings attributed to those terms in the minutes of settlement dated September 2, 2008 (the "Minutes") among Grace Canada, Inc. ("Grace Canada" or the "Applicant") and W. R. Grace & Co. ("Grace") and its 61 U.S. subsidiaries filed under the Chapter 11 cases (the "U.S. Debtors") on the one hand, and CDN ZAI Claimants by their representative counsel Lauzon Bélanger S.E.N.C.R.L. ("Lauzon") and

- 2 -

Scarfone Hawkins LLP ("Scarfone" and together with Lauzon, collectively, the "CCAA Representative Counsel") on the other;

(c)     approving the Minutes and the settlement contained therein;

(d)     ordering that the parties to the Minutes are in all respects bound by the Minutes, including the releases therein;

(e)     ordering that any disputes arising with respect to the performance or effect of, or any other aspect of, the Minutes shall be determined by this Court, and that, except with leave of this Court first obtained, no person (including without limitation the Applicant, CCAA Representative Counsel, Grace, the Crown, CDN ZAI Claimants, or otherwise) shall commence or continue any proceeding or enforcement process in any other court or tribunal, with respect to the performance or effect of, or any other aspect of, the Minutes;

(f)     authorizing CCAA Representative Counsel to vote as proxy and power of attorney for CDN ZAI Claimants on a Grace plan of reorganization under Chapter 11 of the Bankruptcy Code that incorporates the terms of the Minutes (the "Plan");

(g)     that on the Effective Date (as such term shall be defined in the Plan),

(i)     Grace, Sealed Air (Canada) Co./CIE, Sealed Air Corporation, Cryovac, Inc. and Grace Canada and each of their parent corporations, subsidiary corporations, joint ventures, affiliates, sister corporations, and any and all of their past, present, and future agents, servants, officers, directors,

- 3 -

employees, predecessors, successors, assigns, heirs, executors, administrators, legal representatives, beneficiaries and insurers (collectively, the "Grace Parties") be automatically released from all claims and causes of action of any kind whatsoever relating to CDN ZAI Claims including, without limitation, any claims or causes of actions asserted against the Grace Parties as a result of the CDN ZAI Claims advanced by CCAA Representative Counsel against the Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown") as a result of which the Crown is or may become entitled to contribution or indemnity from the Grace Parties;

(ii)     all CDN ZAI Claims against the Grace Parties be automatically discharged and extinguished;

(iii)    the Actions be permanently stayed until the Actions are amended to remove the Grace Parties as named defendants as provided for in the Minutes;

(h)    that all CDN ZAI Claims, whether present or future, suffered directly or indirectly, from the manufacture, sale, or distribution of ZAI products in Canada, against the Crown are not released or in any way affected by the terms of this Settlement, except to the extent released in (g(i)) above;

(i)    extending the Stay Period referred to in paragraphs 4 and 5 of the Initial Order (as defined below) to April 1, 2009; and

- 4 -

2.      such further and other relief as this Honourable Court deems just.

**THE GROUNDS FOR THE MOTION ARE:**

1.      Capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Minutes;

*Background*

2.      On April 2, 2001, Grace filed voluntary petitions for protection under Chapter 11 of the United States Bankruptcy Code (the "U.S. Proceedings") and was granted a temporary restraining order by the U.S. Court providing certain injunctive relief to Grace as well as certain other third parties (the "Affiliated Entities");

3.      Two days later, the Applicant was granted an order (the "Initial Order") pursuant to Section 18.6(4) of the *Companies' Creditors Arrangement Act* in the Ontario Superior Court of Justice (the "Court") which, among other things, provided for a stay of proceedings prohibiting the commencement or continuation of any asbestos related suits against the Applicant (the "Canadian Proceedings");

4.      At the time of filing, Grace faced four types of asbestos-related claims:

    (a)     personal injury claims alleging health effects from manufacture of, or exposure to, the U.S. Debtors' asbestos-containing products;

    (b)     asbestos-related claims in connection with the mining and processing of vermiculite at the Libby Mine;

- 5 -

(c)    property damage claims ostensibly seeking payment for the cost of removing or remediating asbestos-containing products used in commercial and institutional buildings such as schools and hospitals; and

(d)    ZAI Claims;

5.    At the time of the commencement of the Canadian Proceedings there were no known claims in Canada;

6.    In late 2004 and through 2005, despite the Initial Order, 10 asbestos-related proposed class actions (collectively, the "Proposed Class Actions") were commenced across Canada in relation to the manufacture, distribution and sale of ZAI;

7.    Grace Canada and certain of the Grace Parties and the Crown were named as defendants in the Actions;

8.    In response to the Proposed Class Actions, Grace Canada moved to extend the protection provided by a Modified Preliminary Injunction across the border into Canada, effectively staying, in Canada, claims against the Grace Parties;

9.    On November 14, 2005, the Canadian Court recognized the Modified Preliminary Injunction in Canada in accordance with its terms, thereby extending the stay of proceedings contained in the Modified Preliminary Injunction from the U.S. into Canada, which, in turn, enjoined the Proposed Class Actions;

10.    A stay of proceedings was also granted in favour of the Crown;

- 6 -

11.    Pursuant to an Order made on February 8, 2006, Lauzon and Scarfone were appointed as Representative Counsel on behalf of CDN ZAI Claimants subject to certain terms that were negotiated by all parties prior to the hearing of the motion;

*ZAI Claims*

12.    From the outset of the U.S. Proceedings, the U.S. Debtors had maintained that they had no liability with respect to ZAI;

13.    In considering various submissions and proposals regarding the treatment of ZAI Claims, the U.S. Court determined that it would be premature to address class certification, notice, proof of claim or claims bar issues until first determining the threshold issue of whether, based on the scientific evidence, ZAI posed a significant risk of injury to humans such that liability should attach;

14.    The U.S. Court ordered an involved science hearing (the "ZAI Science Hearing") to determine whether scientific evidence demonstrated that ZAI posed a significant health risk;

15.    After the filing of multiple volumes of evidence and briefs from both sides, the ZAI Science Hearing was held in October 2004;

16.    The U.S. Court did not release its opinion (the "ZAI Opinion") on the ZAI Science Hearing for over two (2) years after the ZAI Science Hearing;

17.    The ZAI Opinion, when released, concluded that ZAI posed no unreasonable risk of harm;

- 7 -

18.    Both before and after the release of the ZAI Opinion, CCAA Representative Counsel sought direction from the U.S. Court on proceeding with their claims, but no progress was made;

19.    Subsequent to the issuance of the ZAI Opinion, the U.S. Court ordered the parties to a mediation, which was held in May 2008 and did not result in success;

20.    Settlement discussions continued in Canada among CCAA Representative Counsel, the Crown and Grace;

21.    Negotiations involving the Crown continued throughout June, July and August, 2008;

22.    Ultimately, in late August 2008, the Crown indicated that it would be unable to commit to terms of settlement before the U.S. omnibus hearing scheduled for September 2, 2008;

23.    Over the long weekend at the end of August 2008, CCAA Representative Counsel, Grace and Grace Canada reached the settlement contained in the Minutes;

*The Settlement*

24.    The Minutes contemplate a settlement of all CDN ZAI Claims, both personal injury and property damage, on the following terms:

(a)    Grace shall provide in its Plan for the creation of a separate class of CDN ZAI PD Claims and for the establishment of the CDN ZAI PD Claims Fund, which shall administer and make payments in respect of CDN ZAI PD Claims in accordance with the terms of this Settlement;

- 8 -

(b)     On the Effective Date of Grace's Plan, Grace will contribute $6,500,000 (the "Grace Funds") to the CDN ZAI PD Claims Fund;

(c)     Grace shall provide in its Plan that any CDN ZAI PI Claimant shall be entitled to file his or her claim in the asbestos personal injury trust to be created for CDN ZAI PI Claims and funded pursuant to the Plan;

(d)     CCAA Representative Counsel shall vote, on behalf of CDN ZAI Claimants, in favour of Grace's Plan incorporating the Settlement;

(e)     CCAA Representative Counsel shall be entitled to bring a fee application (the "Fee Application") within the U.S. Proceedings for approval of up to US$350,000 fees and expenses incurred by CCAA Representative Counsel's U.S. counsel and Grace will agree to support such application to the extent permitted by law;

25.     The obligation of Grace to pay the Grace Funds to the CDN ZAI PD Claims Fund is subject to a number of conditions, including the obtaining of the Canadian Settlement Approval Order on the terms and conditions outlined in the Minutes;

26.     The ZAI Opinion makes it clear that ZAI poses no unreasonable risk of harm and as such, it is Grace's view that these claims have little or no value;

27.     The Actions were commenced several years ago and this settlement will provide CDN ZAI PD Claimants with clear recourse to a fund and ZAI PI Claimants with recourse to the asbestos personal injury trust estimated to be funded with at least $1.5 billion;

28.     The Minutes represent the product of lengthy and difficult negotiations between CCAA Representative Counsel and Grace;

29.     They provide a resolution for all ZAI Claims in Canada and a clear venue through which CDN ZAI PI Claims may be filed in the U.S. procedure;

30.     It is not in the interest of any party for there to be ongoing uncertainty and delay as to the resolution of these claims, nor the escalating costs which likely accompany further delays; and

31.     Such further and other grounds as this Honourable Court may permit.

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the motion:

1.      the 27th Report of the Information Officer dated September 3, 2008;

2.      the affidavit of Richard C. Finke sworn September 15, 2008; and

3.      such further and other documents as this Honourable Court may permit.

**September 15, 2008**                    **OGILVY RENAULT LLP**
                                          Barristers & Solicitors
                                          Suite 3800, PO Box 84
                                          Royal Bank Plaza, South Tower
                                          200 Bay Street
                                          Toronto, Ontario  M5J 2Z4

                                          **DERRICK C. TAY**
                                          LSUC #21152A
                                          Tel:      416.216.4832
                                          Fax:      416.216.3930

                                          **ORESTES PASPARAKIS**
                                          LSUC # 36851T

- 10 -

Tel:  416.216.4815
Fax:  416.216.3930

Solicitors for the Applicant

**TO THE ATTACHED SERVICE LIST**

**Court File No. 01-CL-4081**

# SUPERIOR COURT OF JUSTICE

## COMMERCIAL LIST

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

## SERVICE LIST

| | |
|---|---|
| **Ernst & Young Inc.**<br>Ernst & Young Tower, 16th Floor<br>P.O. Box 251<br>Toronto-Dominion Centre<br>Toronto, ON  M5K 1J7<br><br>Murray A. McDonald<br>(murray.a.mcdonald@ca.ey.com)<br>Tel: 416.943.3016<br>Fax: 416.943.3300<br><br>**Ernst & Young Inc.**<br>1 Place Ville Marie<br>Bureau 2400<br>H3B 3M9<br><br>Jean Daniel Breton<br>(Jean-Daniel.Breton@ca.ey.com)<br>Tel: 514-875-6060<br>Fax: 514-871-8713<br><br>Financial Advisor to The Attorney General of<br>Canada (Her Majesty the Queen in Right of<br>Canada) | **Aikins, MacAulay & Thorvaldson LLP**<br>Barristers & Solicitors<br>30th Floor, 360 Main Street<br>Winnipeg, Manitoba  R3C 4G1<br><br>Keith J. Ferbers<br>(KJF@aikins.com)<br>Tel: 204.957.4691<br>Fax: 204.957.4269<br><br>Solicitors for Raven Thundersky and Rebecca<br>Bruce |

| | |
|---|---|
| **Lauzon Bélanger S.E.N.C.**<br>511 Place d'Armes<br>Montréal, Québec<br>H2Y 2W7<br><br>Michel Bélanger<br>(mbelanger@lauzonbelanger.qc.ca)<br>Tel: 514.844.3037<br><br>Careen Hannouche<br>(careen.hannouche@lauzonbelanger.qc.ca)<br>Tel: 514.844.7612<br><br>Co-Solicitors for Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras | **Scarfone Hawkins LLP**<br>1 James Street South, 14th Floor<br>PO BOX 926 Depot 1<br>Hamilton, Ontario<br>L8N 3P9<br><br>Phone: (905) 523-1333<br>Fax: (905) 523-5878<br><br>David Thompson<br>(thompson@shlaw.ca)<br><br>Jeffrey C. Teal<br>(jteal@shlaw.ca)<br><br>Matthew G. Moloci<br>(moloci@shlaw.ca)<br><br>Co-Solicitors for Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras |
| **Department of Justice Canada**<br>Ontario Regional Office<br>Counsel, Business Section<br>The Exchange Tower<br>130 King St. West, Suite 3400, Box 36<br>Toronto, Ontario M5X 1K6<br><br>Jacqueline Dais-Visca<br>(jacqueline.dais-visca@justice.gc.ca)<br>Tel:  416.952.6010<br>Fax: 416.973.0809<br>Solicitors for Health Canada | **Merchant Law Group**<br>c/o Eau Claire Place II<br>#340 - 521 Third Ave S.W.<br>Calgary, Alberta T2P 3T3<br><br>Evatt Merchant<br>(emerchant@merchantlaw.com)<br><br>Tel:  403.237.9777<br>Fax: 403.237.9775 |

**Error! Unknown document property name.**

Court File No: 01-CL-4081

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Toronto

**NOTICE OF MOTION
(RETURNABLE SEPTEMBER 30, 2008)**

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4

**DERRICK C. TAY**
LSUC #21152A
Tel:     41C6.216.4832
Fax:     416.216.3930

**ORESTES PASPARAKIS**
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

Error! Unknown document property name.

# EXHIBIT C

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | W. R. GRACE & CO. CDN ZAI PD PROOF OF CLAIM FORM |
|---|---|

| W. R. Grace & Co., et al. | Case No. 01-1139 | |
|---|---|---|

**NOTE:** Use this form only if you have a  Canadian ("CDN") ZAI Claim related to property damage "PD" against any of the Debtors (a "CDN ZAI PD Claim").  The CDN ZAI PD Bar Date only involves claims affecting property located in Canada, and it does not include claims relating to personal injury.  **THE LAST DAY TO FILE A CDN ZAI PD Proof of Claim is August 31, 2009.**

Name of Creditor (The injured person or other entity to whom the Debtor(s) owe money or property):

THIS SPACE IS FOR COURT USE ONLY

Name and address where notices should be sent:

Telephone Number:

1. **Building Information:**

a. **Address of the building that contains ZAI:**

_____

b. **Approximate date the building was constructed:**

_____

c. **Approximate date ZAI was installed in the building:**

_____

d. **Location within building where ZAI is located:**

_____

e. **What is your legal interest in the building (i.e., own or lease)?**

_____

f. **Date of removal of ZAI (if applicable):**

_____

g. **Date of containment of ZAI (remediation to contain, but not remove, the ZAI) (if applicable):**

_____

**\*\*\*Attach any backup documents to this form that are related to these questions.**

THIS SPACE INTENTIONALLY LEFT BLANK

2. **Date-Stamped Copy:**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space is for Court Use Only

Date:

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): _____

K&E 13364082.2

# GENERAL INSTRUCTIONS FOR COMPLETING THE W. R. GRACE & CO.
## CDN ZAI PD PROOF OF CLAIM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, there may be exceptions to these general rules.*

**THE LAST DAY ON WHICH TO FILE CDN ZAI PD CLAIMS IS AUGUST 31, 2009.**

**The CDN ZAI PD Bar Date applies only to CDN ZAI PD Claims. CDN ZAI PD Claims are defined below and involve property-related claims attributable to ZAI for property located in Canada. The CDN ZAI PD Bar Date does not involve personal injury claims that may be attributable to ZAI.**

## – GENERAL DEFINITIONS –

"ZAI" is a loose-fill, non-roll vermiculite home attic insulation, which may contain naturally occurring asbestos. It was sold from the 1920/1930s to 1984. Zonolite may have a glittery granular appearance. The granules are shaped like a small nugget and expanded like an accordion and may have a silvery, gold translucent or brownish cast. After years in the attic, the granules may darken to black or gray. Zonolite may be found underneath subsequently installed insulation of other types such as rolled fiberglass insulation.

"CDN" is an abbreviation for "Canadian."

*"CDN ZAI PD Bar Date"* is **August 31, 2009**, the date set by the Court as the date by which all persons and entities who have CDN ZAI PD Claims against the Debtors must file proofs of claim or be forever barred from asserting any such claims against the Debtors.

*"Debtors"* are the persons, corporations, or other entities listed below that have filed voluntary petitions for bankruptcy, and *"Debtor"* is any one of them, individually.

*"Creditor"* is any person, corporation, or other entity to whom the debtor owed a debt on the date the bankruptcy case was filed.

*"Petition Date"* is April 2, 2001, the date on which the Debtors each filed voluntary petitions for bankruptcy under Chapter 11 of Title 11 of the United States Code.

*"CDN ZAI PD Proof of Claim"* is the W. R. Grace & Co. Canadian ZAI PD Proof of Claim which must be submitted by you on or before the CDN ZAI PD Bar Date. It is the form that tells the bankruptcy court about your CDN ZAI PD Claim. This form must be filed with the Claims Processing Agent as described below.

*"CCAA Representative Counsel"* means Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP in their capacity as representative counsel to Canadian ZAI PD Claimants and Canadian ZAI PI Claimants.

*"Canadian ZAI PD Claimants"* means a holder of a CDN ZAI PD Claim, and someone who is subject to this CDN ZAI PD Bar Date.

*"Canadian ZAI PI Claimant"* means a holder of a CDN ZAI PI or "personal injury" Claim, and someone who is NOT subject to this CDN ZAI PD Bar Date.

*"CDN ZAI Minutes of Settlement"* is a summary of a settlement reached between the Debtors and Grace Canada, Inc. ("Grace Canada"), on the one hand and the CCAA Representative Counsel on the other hand, in which the Debtors and Grace Canada agree to fund the CDN ZAI PD Claims Fund in full satisfaction of CDN ZAI PD Claims. The settlement also settles CDN ZAI PI Claims by channeling such claims to a trust to be established in the United States pursuant to the Debtors' plan of reorganization.

*"CDN ZAI PD Claims Fund"* means a fund to be established in Canada for the administration, adjudication, and distribution of funds with respect to CDN ZAI PD Claims.

## – THE DEBTORS –

The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2

## – DEFINITION OF CANADIAN ZONOLITE ATTIC INSULATION PROPERTY CLAIMS  OR "CDN ZAI PD" CLAIMS –

The Debtors have created a CDN PD ZAI Proof of Claim form for CDN ZAI PD Claims.  Such claims are defined as follows:

*"CDN ZAI PD Claims"* are claims as defined under section 101(5) of the Bankruptcy Code and include claims that relate to the cost of abatement or removal, diminution of property value or other economic loss allegedly caused by Zonolite Attic Insulation manufactured by the Debtors and *installed in homes and buildings that are located in Canada*.  CDN ZAI PD Claims are those past, present, and future claims cognizable under Canadian law against, or any debt, obligation or liability of, one or more of the Debtors, creating a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and whether such claim, debt, obligation or liability is in the nature of or sounding in tort, contract, warranty or any other theory of law or equity, relating to or arising by reason of, directly or indirectly, property damage, including, but not limited to, diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, directly or indirectly, by the Zonolite Attic Insulation sold, supplied, produced, specified, selected, distributed or in any way marketed by one of the Debtors or their predecessors or former subsidiaries and affiliates -- and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors or their predecessors or former subsidiaries and affiliates, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages.  **CDN ZAI PD Claims relate only to property located in Canada, and do not include any claims relating to personal injury.**

**The CDN ZAI PD Bar Date for filing CDN ZAI PD Claims is August 31, 2009 at <u>5:00 P.M. Eastern Time</u>.**

*Be sure to date the claim and place the original signature of claimant or person making claim for creditor where indicated at the bottom of the claim form.  Please type or print name of individual under the signature.  Be sure all items are answered on the claim form.  If not applicable, insert "Not Applicable".*

**RETURN CDN ZAI PD PROOF OF CLAIM (WITH ATTACHMENTS, IF ANY) TO THE FOLLOWING CLAIMS AGENT FOR THE DEBTORS:**

|  | **By Mail:** |  | **By Hand Delivery:** |
|---|---|---|---|
|  | Rust Consulting, Inc. |  | Rust Consulting, Inc. |
|  | Claims Processing Agent | Or | Claims Processing Agent |
|  | Re:  W. R. Grace & Co. Bankruptcy |  | Re:  W. R. Grace & Co. Bankruptcy |
|  | P.O. Box 1620 |  | 201 S. Lyndale Ave. |
|  | Faribault, MN  55021-1620 |  | Faribault, MN 55021 |

3

**– SPECIFIC INSTRUCTIONS FOR COMPLETING THE CDN ZAI PD PROOF OF CLAIM –**

1. The CDN ZAI PD Proof of Claim must be completed by individual holders of CDN ZAI PD Claims. If you assert claims against more than one Debtor, you do not need to file a separate CDN ZAI PD Proof of Claim against each applicable Debtor. The Debtors' Chapter 11 Plan currently contemplates a consolidation of the Debtors for Plan purposes whereby claims will be paid by the consolidated Debtors' estates. If consolidation for Plan purposes is not ultimately allowed by the Court, you will have the opportunity to assert your claim against the applicable Debtor or Debtors.

2. Please read the CDN ZAI PD Proof of Claim carefully and fill it in completely and accurately.

3. Print legibly. Your claim may be disallowed if it cannot be read and understood.

4. The CDN ZAI PD Proof of Claim must be completed in English or French.

5. Attach additional pages if more space is required to complete the CDN ZAI PD Proof of Claim.

6. To obtain verification that your proof of claim was received by the claims agent, include a copy of the completed form and a self-addressed, postage prepaid return envelope when you file the CDN ZAI PD Proof of Claim with Rust Consulting, Inc.

7. The claimant *must* attach copies of any and all available supporting documents.

8. To be considered timely filed, the CDN ZAI PD Proof of Claim must be actually received by Rust Consulting, Inc. by August 31, 2009, at 5:00 p.m. prevailing Eastern Time.

**– EFFECT OF FAILING TO PROPERLY FILE A CDN ZAI PD PROOF OF CLAIM –**

**Pursuant to Bankruptcy Rule 3003(c)(2), any person or entity who fails to complete and file a CDN ZAI PD Proof of Claim by the CDN ZAI PD Bar Date on account of such CDN ZAI PD Claim <u>shall be forever barred, estopped and enjoined</u> from (a) asserting the CDN ZAI PD Claim against (a) any of the Debtors, (b) the CDN PD Claims Fund, or (c) receiving distributions in these chapter 11 cases from the CDN PD Claims Fund in respect of the CDN ZAI PD Claim.**

4

# EXHIBIT D

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO.,** *et al.*,[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |
| | ) | |
| | ) | |

## NOTICE OF LAST DAY TO FILE A CANADIAN ZONOLITE ATTIC INSULATION ("ZAI") PD CLAIM[2]

**This is a notice of the last day to file proofs of claim in the chapter 11 case of W. R. Grace & Co. and its related debtors for Zonolite Attic Insulation ("ZAI") property damage ("PD") claims for property located in Canada. ZAI is a loose-fill, non-roll vermiculite home attic insulation, which may contain naturally occurring asbestos. It was sold from the 1920/1930s to 1984, and it was sold or manufactured by Grace under the brand name of "Zonolite Attic Insulation" and by others under various other names including: Attic Fill, House Fill, Home Insulation, Zonolite Insulating Fill, Econofil, Quiselle Insulating Fill, Sears Micro Fill, Ward's Mineral Fill, Wickes Attic Insulation, Cashway Attic Insulation, Attic Plus, Unifil, and Mica Pellets Attic Insulation. ZAI may have a glittery granular appearance. The granules are shaped like a small nugget and expanded like an accordion and may have a silvery, gold translucent or brownish cast. After years in the attic, the granules may darken to black or grey. ZAI may be found underneath subsequently installed insulation of other types such as rolled fiberglass insulation. ZAI generally looks like this:**

---

1    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2    Capitalized terms not defined herein are described in the General Instructions for Completing the W. R. Grace & Co. ZAI PD Proof of Claim Form.

 

PLEASE TAKE NOTICE THAT on October 20, 2008 the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware (the "Court"), having jurisdiction over the chapter 11 cases of W. R. Grace & Co. and certain of its affiliates (collectively, the "Debtors" or "Grace"), entered a Canadian ("CDN") ZAI PD Bar Date Order in the above-referenced bankruptcy cases.

The Court has established August 31, 2009 at 5:00 P.M. Eastern Time (the "CDN ZAI PD Bar Date") as the last date and time for all persons and entities including without limitation, each individual, partnership, joint venture, corporation, estate, trust and governmental unit who have **CDN ZAI PD Claims  (as defined herein)** against any of the Debtors or their predecessors-in-interest, to file a CDN ZAI PD Proof of Claim.

1.      WHO MUST FILE A CDN ZAI PD PROOF OF CLAIM:

        **You MUST file a CDN ZAI PD Proof of Claim if you have a CDN ZAI PD Claim. CDN ZAI PD Claims are defined as follows:**

        CDN ZAI PD Claims are claims as defined under section 101(5) of the Bankruptcy Code and include past, present, and future claims cognizable under Canadian law that relate to the cost of abatement or removal, diminution of property value or other economic loss allegedly caused by Zonolite Attic Insulation manufactured by the Debtors and installed in buildings that are located in Canada.  CDN ZAI PD Claims are those past, present, and future claims cognizable under Canadian law against, or any debt, obligation or liability of, one or more of the Debtors, creating a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and whether such claim, debt, obligation or liability is in the nature of or sounding in tort, contract, warranty or any other theory of law or equity, relating to or arising by reason of, directly or indirectly, property damage, including, but not limited to, diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, directly or indirectly, by the Zonolite Attic Insulation sold, supplied, produced, specified, selected, distributed or in any way marketed by one of the Debtors or their predecessors or former subsidiaries and affiliates-- and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors or their predecessors or former subsidiaries and affiliates, including, but not limited to, all claims, debts, obligations or liabilities for

2

compensatory and punitive damages. **CDN ZAI PD Claims related only to property located in Canada, and do not include any claims relating to personal injury.**

A settlement has been approved that creates a fund to pay valid CDN ZAI PD Claims. In order to have your CDN ZAI PD Claim considered for payment by the Canadian fund (the "CDN ZAI PD Claims Fund"), you MUST file your CDN ZAI PD Proof of Claim, on or before the CDN ZAI PD Bar Date of **August 31, 2009.**

**IN THE EVENT THAT PRIOR TO THE CDN ZAI PD BAR DATE, YOU FILED A PROOF OF CLAIM FOR A CDN ZAI PD CLAIM USING OFFICIAL FORM 10 OR ANY OTHER PROOF OF CLAIM FORM, YOU MUST REFILE YOUR CLAIM ON THE SPECIALIZED, COURT-APPROVED CDN ZAI PD PROOF OF CLAIM FORM ON, OR BEFORE, THE CDN ZAI PD BAR DATE OR YOUR CLAIM SHALL BE BARRED AND DISALLOWED.**

In the event that prior to the CDN ZAI PD Bar Date you filed a proof of claim for any claim in these cases that you may have **other than** your CDN ZAI PD Claim, you do **not** need to refile those other claims.

Under Section 101(5) of the Bankruptcy Code and as used in this notice, the word "claim" means, among other things, (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.      WHO DOES <u>NOT</u> NEED TO FILE A PROOF OF CLAIM

    (a)    The CDN ZAI PD Bar Date, and the need to file a CDN ZAI PD Proof of Claim, applies only to holders of CDN ZAI PD Claims. You should only file this claim if it relates to property located in Canada. Another bar date was set for property located in the United States, and those ZAI claims were required to be filed by October 31, 2008.

**THE FACT THAT YOU HAVE RECEIVED THIS NOTICE DOES NOT NECESSARILY MEAN THAT YOU HAVE A CDN ZAI PD CLAIM OR THAT THE DEBTORS OR THE COURT BELIEVE YOU HAVE SUCH A CLAIM.**

3.      WHEN AND WHERE TO FILE

    To file a claim, do the following:

    (a)    File your claim by completing a CDN ZAI PD Proof of Claim, a copy of which is attached hereto.

    (b)    For additional copies of the CDN ZAI PD Proof of Claim:

- Contact Rust Consulting, Inc., the Claims Processing Agent, toll-free at 1-877-465-4817, 9:00 a.m. - 5:00 p.m., Eastern Time, Monday through Friday. Claimants will not be charged for this call.

- Visit the Grace chapter 11 website at www.graceclaims.com to obtain a CDN ZAI PD Proof of Claim and/or General Instructions for Completing the W. R. Grace & Co. CDN ZAI PD Proof of Claim.

(c)     CDN ZAI PD Proofs of Claim must be mailed or hand-delivered so as to be received on or before the CDN ZAI PD Bar Date at the following address:

If mailed, to:

        Rust Consulting, Inc.
        Claims Processing Agent
        Re:  W. R. Grace & Co. Bankruptcy
        P.O. Box 1620
        Faribault, MN  55021-1620

If hand delivered, to:

        Rust Consulting, Inc.
        Claims Processing Agent
        Re:  W. R. Grace & Co. Bankruptcy
        201 S. Lyndale Ave.
        Faribault, MN  55021

(between the hours of 9:00 a.m. and 5:00 p.m., Eastern Time, on business days).

CDN ZAI PD Proofs of Claim will be deemed filed only when they have been actually received by the Claims Processing Agent.  CDN ZAI PD Proofs of Claim that are submitted by facsimile, telecopy or other electronic transmission will **not** be accepted and will **not** be deemed filed.  If you are returning your CDN ZAI PD Proof of Claim by mail, allow sufficient mailing time so that the document is received on or before the CDN ZAI PD Bar Date.  CDN ZAI PD Proofs of Claim that are postmarked before that date, but are received thereafter, will be considered late.

(d)     CDN ZAI PD Proofs of Claim must be signed by the claimant or the party submitting the document on behalf of the claimant.

(e)     Do not file or send copies of the CDN ZAI PD Proof of Claim to the Debtors, counsel for the Debtors, the CCAA Representative Counsel, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel.

(f)    Upon receipt of your claim, the Claims Processing Agent will send an acknowledgment card with the appropriate claim number noted thereon.

4.    WHAT TO FILE

(a)    To file a CDN ZAI PD Claim, you must use the court-ordered CDN ZAI PD Proof of Claim, which is supplied with this notice. Attach any supporting or backup documents that relate to the questions asked on the CDN ZAI PD Proof of Claim.

(b)    Your CDN ZAI PD Proof of Claim must be written in English or French. If you need a CDN ZAI PD Proof of Claim form and directions for filling out the form that are translated into French, please contact the Claims Processing Agent or visit the website as directed above.

5.    CLAIMS AGAINST MULTIPLE DEBTORS/OTHER NAMES

If you assert claims against more than one Debtor, you do not need to file a separate CDN ZAI PD Proof of Claim against each applicable Debtor. The Debtors' Chapter 11 Plan currently contemplates a consolidation of the Debtors for Plan purposes whereby claims will be paid by the consolidated Debtors' estates. If consolidation for Plan purposes is not ultimately allowed by the Court, you will have the opportunity to assert your claim against the applicable Debtor or Debtors.

6.    EFFECT OF NOT PROPERLY FILING A CDN ZAI PD PROOF OF CLAIM

ANY HOLDER OF A CDN ZAI PD CLAIM IS REQUIRED TO FILE A PROOF OF CLAIM ON THE COURT-APPROVED PROOF OF CLAIM FORM. ANY SUCH HOLDER WHO FAILS TO FILE HIS OR HER PROOF OF CLAIM ON OR BEFORE THE CDN ZAI PD BAR DATE, **SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED** FROM ASSERTING ANY SUCH CLAIMS (OR FILING A PROOF OF CLAIM WITH RESPECT TO SUCH CLAIMS) AGAINST ANY OF THE DEBTORS OR THEIR PREDECESSORS-IN-INTEREST, THE CDN ZAI PD CLAIMS FUND, INSURANCE CARRIERS OR THEIR PROPERTY OR ESTATES. IF ANY SUCH CLAIMS ARE SO BARRED, EACH OF THE DEBTORS AND ITS PROPERTY SHALL BE FOREVER DISCHARGED FROM ALL INDEBTEDNESS AND LIABILITIES WITH RESPECT TO SUCH CLAIMS AND THE HOLDERS OF SUCH CLAIMS SHALL NOT BE ENTITLED TO RECEIVE ANY DISTRIBUTION IN THESE CHAPTER 11 CASES ON ACCOUNT OF SUCH CLAIMS FROM THE CDN ZAI PD CLAIMS FUND, OR TO RECEIVE FURTHER NOTICES REGARDING SUCH CLAIMS OR REGARDING THESE CHAPTER 11 CASES.

7.      QUESTIONS REGARDING COMPLETION OF PROOF OF CLAIM FORM

If you have any questions concerning whether or not you need to file a CDN ZAI PD Proof of Claim, then you should consult your attorney.  In addition, Representative Counsel has been appointed to represent the interests of holders of CDN ZAI Claims, and you can contact them if you have questions.  These counsel are:  Michel Bélanger at Lauzon Bélanger S.E.N.C.L., at 514-844-3037 and David Thompson or Matthew Moloci at Scarfone Hawkins LLP, at 905 523-1333.  For additional information regarding this notice or to obtain a CDN ZAI PD Proof of Claim, contact the Claims Processing Agent toll-free at 1-877-465-4817 between 9:00 a.m. and 5:00 p.m. (Eastern Time), Monday through Friday, or write to the Claims Processing Agent at the address outlined herein.  You may also request a CDN ZAI PD Proof of Claim via Grace's chapter 11 website, at www.graceclaims.com.

                                        BY ORDER OF THE COURT


                                        _____
                                        The Honorable Judith K. Fitzgerald
                                        United States Bankruptcy Judge

6

Legal Notice

# If You Have a Home Located in Canada with Vermiculite Loose-Fill Attic Insulation

## Your Rights May Be Affected by the W. R. Grace Bankruptcy

### Your Claim Must Be Filed By Month Date Year

W. R. Grace and its related entities ("Grace") have filed for protection under Chapter 11 of the U.S. Bankruptcy Code. If your home is located in Canada and has vermiculite loose-fill attic insulation, you may have a property claim against Grace.

**What Is Vermiculite Loose-Fill Attic Insulation?**
Vermiculite was used by Grace in certain non-roll home attic insulation that was sold from the 1920/1930s to 1984. Some of Grace's vermiculite attic insulation contains naturally-occurring asbestos and was sold under the name of "Zonolite Attic Insulation" ("ZAI") and under other brand names, including:  Attic Fill, House Fill, Home Insulation, Zonolite Insulating Fill, Econofil, Quiselle Insulating Fill, Sears Micro Fill, Ward's Mineral Fill, Wickes Attic Insulation, Attic Plus, Mica Pellets Attic Insulation, Unifil and Cashway Attic Insulation.

**What Does It Look Like And Where Is It Located?**
ZAI is an insulation product typically used in home attics and sometimes in walls.  The granules are small, accordion-shaped nuggets and may have a silvery, gold translucent or brownish cast that may also appear black or gray over time. ZAI may be found underneath other insulation installed at a later date.

**What Are ZAI claims?**
ZAI claims could include, among others, the cost of abatement or removal, the diminution of property value, economic loss, or other property-related claims caused by ZAI manufactured by Grace.


Loose vermiculite


Vermiculite nugget size

A settlement has been reached, and a Fund has been established to pay Canadian ZAI property claims against Grace.  To preserve your claim against Grace, you must file the Bankruptcy Court approved claim form by Month Date Year.  You may obtain the appropriate claim form and more information on how to file a claim by writing:

**Claims Processing Agent, W. R. Grace & Co. Bankruptcy,**
**P. O. Box 1620, Faribault, MN 55021-1620 or**

**Call: 1-877-465-4817 or visit: www.graceclaims.com**

## 30-SECOND W. R. GRACE BAR DATE SPOT*

**W. R. Grace Bankruptcy**
**Last Day to File All Canadian
ZAI Property Claims**
**Month Date Year**
**1-877-465-4817**

W.R. Grace Bankruptcy



**1-877-465-4817**

W.R. Grace Bankruptcy



**1-877-465-4817**

W.R. Grace Bankruptcy
Last Day to File All Canadian ZAI Property Claims
**Month Date Year**
**1-877-465-4817**
**www.graceclaims.com**
Furnished by Defendants in Case No. 01-01139, by Order
of the U.S. Bankruptcy Court for the District of Delaware

If your home has loose-fill, non-roll vermiculite attic insulation you may have a claim against W. R. Grace. A settlement fund will pay valid Canadian Property Claims involving Zonolite Attic Insulation. Claims must be filed by Month Date Year.

Zonolite was also sold under different names. It consists of expanded nuggets that appear silver, brown, gold, black or grey. It may be under other insulation.

Please call 877-465-4817 or go to graceclaims.com.

**\*Visual treatment is in draft form and will not be finalized until a later date.**

# EXHIBIT E



# BAR DATE NOTICE PLAN FOR CANADIAN ZONOLITE ATTIC INSULATION PROPERTY CLAIMS

*IN RE W.R. GRACE & CO.,* CHAPTER 11

CASE NO. 01-01139 (BANKR. D.DEL.)

KINSELLA/NOVAK COMMUNICATIONS, LLC

2120 L STREET, NW | SUITE 205 | WASHINGTON, DC 20037
PHONE: 202.686.4111 | FAX: 202.293.6961 | EMAIL: INFO@KINSELLA-NOVAK.COM | HTTP://WWW.KINSELLA-NOVAK.COM

THE ART & SCIENCE OF LEGAL NOTIFICATION

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Firm Overview | 1 |
| Case Experience | 2 |
| Technical Approach | 3 |
| Relevant Manufacturing History | 5 |
| Situation Analysis | 6 |
| Proposed Notice Plan Overview | 7 |
| Direct Mail Notice | 8 |
| Paid Media Methodology | 9 |
| Target Audience | 10 |
| Demographics | 11 |
| Paid Advertising | 12 |
| Media Delivery | 16 |
| Aboriginal Situation Analysis | 17 |
| Aboriginal Media | 18 |
| Aboriginal Media Delivery | 19 |
| Earned Media | 20 |
| Informational Web site | 21 |
| Toll-Free Telephone Support | 22 |

Exhibit 1 – ZAI PD Published Bar Date Notice

Exhibit 2 – TV Spot Layout

Exhibit 3 – Proposed Budget

# FIRM OVERVIEW

Kinsella/Novak Communications, LLC ("KNC") is a nationally-recognized advertising and legal notification consulting firm specializing in the design and implementation of class action and bankruptcy notification programs to reach unidentified class members and claimants.

KNC has developed and directed some of the largest and most complex national notification programs in the country, primarily in antitrust, bankruptcy, consumer fraud, mass tort and product liability litigation.   Specific cases have involved, among others, asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco and Holocaust claims.   The firm has developed or consulted on over 250 notification programs and has placed over $160 million in media notice.

KNC develops advertisements, press materials, Websites and other notice materials that bridge the gap between litigation complexities and the need for a clear and simple explanation of legal rights. The firm designs and produces notices in "plain language." KNC employs industry-recognized tools of media measurement to quantify the adequacy of the notice for the court.

<u>*In re W. R. Grace & Co.*, Chapter 11</u>

# CASE EXPERIENCE

KNC has significant notification experience including designing and implementing notice programs in numerous asbestos-related bankruptcy cases.

## *SELECTED CASES*

- ➢ *In re USG Corporation*, Chapter 11,
  Nos. 01-2094 (RJN) through 01-2104 (RJN) (Bankr. D. Del)

- ➢ *In re Swan Transportation Company,* Chapter 11,
  No. 01-11690 (Bankr. D. Del.)

- ➢ *In re Owens Corning,* Chapter 11,
  No. 00-03837 (MFW) (Bankr. D. Del.)

- ➢ *In re Armstrong World Industries, Inc.,* Chapter 11,
  No. 00-4471 (JJF) (Bankr. D. Del.)

- ➢ *In re The Babcock & Wilcox Company,*
  No. 00-10992 Section "B" (Bankr. E.D. LA.)

- ➢ *In re Raytech Corp.,*
  No. 5-89-00293 (Bankr. D. Conn.)

- ➢ *In re The Celotex Corporation,* Chapter 11,
  Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.)

*In re W. R.  Grace & Co.,* Chapter 11

# TECHNICAL APPROACH

KNC's technical approach is based on its expertise as a leading provider of notice in class actions, knowledge of court-approved notice programs at the state and federal levels and years of experience in designing and implementing legal notification programs both nationally and internationally.

KNC begins by conducting detailed research on the claims that are the subject of the class action and how they relate to the affected population.  This analysis yields the demographic characteristics of claimants — such as age, gender, income, and education level — and the geographic distribution of claimants. This research provides the parameters for identifying and locating claimants and shapes the scope of the notice program.

Specifically, KNC:

> ➢ Reviews demographic and product information provided by the client, performs independent research and establishes a demographic profile of the target audience. All media selections are based on this profile to ensure the optimum reach of potential claimants and frequency of message exposure.

> ➢ Examines the geographic distribution of potential claimants to determine effective geographic coverage.

> ➢ Evaluates and compares the relative effectiveness of media vehicles – consumer magazines, newspapers, specialty publications, broadcast television, radio and the Internet – in reaching the target audience.

> ➢ Analyzes publications using syndicated data sources and tools, such as the Audit Bureau of Circulation statements, which certify how many readers buy or obtain copies of publications, and MediaMark Research, Inc., which measures how many people open or read publications.

> ➢ Analyzes syndicated data from comScore and/or Nielsen//NetRatings for demographic composition of Internet Website visitors.  Relies on Internet Advertising Bureau ("IAB") guidelines to account for gross impressions and unique users.

> ➢ Relies upon syndicated data from A.C. Nielsen for estimating television viewership Other syndicated data and tools are used when appropriate.

> ➢ Selects media available during the established notice period ensuring timely notice to claimants.

> ➢ Creates and implements all appropriate notice communications, including published notice, press releases, television spots, Internet advertising and Websites.

➢ Ensures that published notices and long form notices are written in "plain language."

➢ Uses established advertising relationships to negotiate with advertisers to secure optimum placement with respect to the media habits of the target audience.

➢ Designs and maintains a Website to enable claimants to access all relevant information including long form notices, claim forms and court documents. Provides registration and email capabilities on the site.

➢ Integrates all aspects of the notification program with designated claims administrators.

➢ Provides advice, affidavits, depositions and court testimony with respect to the design and implementation of the notification program.

# RELEVANT MANUFACTURING HISTORY

W. R. Grace ("Grace") entered into the vermiculite business through its 1963 acquisition of the assets of the Zonolite Company. The Zonolite Company's assets included the world's largest vermiculite mine and mill in Libby, Montana, another mine and mill in South Carolina and various manufacturing plants. Vermiculite is a mica-like mineral that expands after heating. Vermiculite ore from the Libby Mine may contain naturally occurring asbestos.

ZAI is a loose-fill vermiculite used as insulation in attics and was one of the commercial products made from Grace's processed vermiculite. This product was sold from the 1920s or 1930s to 1984 and may have been marketed by other companies under private labels.[1]

---

[1] Loose-fill vermiculite attic insulation produced by Grace was also provided to companies primarily in the New England area, believed to be Wickes Inc., Lumbermen's Mercantile Buyers Corporation, and Carter, which may have marketed the insulation under their private labels.

# SITUATION ANALYSIS

This Bar Date notice plan ("Notice Plan") is submitted in connection with *In re W. R. Grace & Co., et al.,* Chapter 11, Case No. 01-01139 in the United States Bankruptcy Court, District of Delaware. This Notice Plan targets holders and potential holders of Property-related Zonolite Attic Insulation Claims ("Canadian ZAI Claimants") in Canada. ZAI claims include, among others, the cost of removal, the diminution of property value or economic loss, or other claims caused by ZAI manufactured by Grace.

The purpose of the Notice Plan is to outline procedures to provide fair and adequate notice to Canadian ZAI Claimants of the Bar Date. The plan is consistent with notice programs KNC designed and implemented in other asbestos bankruptcies and class actions, as well as consumer class actions, all of which have met court approval. To develop the Notice Plan, KNC relied on information provided by Grace and its experts, on research previously conducted in other asbestos litigation and on its experience in designing and executing similar plans.

# PROPOSED NOTICE PLAN OVERVIEW

The following four-part Notice Plan is recommended:

➢ Direct notice by mail to all known Canadian ZAI Claimants and their counsel;

➢ Broad national notice in Canada through the use of paid media - television, magazines, newspapers and Internet banner ads;

➢ Targeted notice to the Canadian Aboriginal population through the use of magazines, newspapers and television; and

➢ Earned media through a press release sent to major national print and electronic outlets.

The proposed Notice Plan carefully considers information provided by Grace and research conducted by KNC, including:

➢ The demographics of Homeowners, which would include Canadian ZAI Claimants – age, gender and other characteristics; and

➢ The media vehicles through which Homeowners normally receive information.

© 2008 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

*In re W. R. Grace & Co.,* Chapter 11

# DIRECT MAIL NOTICE

The "Canadian ZAI Claims Property Damage ("PD") Bar Date Notice Package," consisting of the Canadian ZAI PD Claims Bar Date Notice, the Canadian ZAI PD Proof of Claim Form and the General Instructions for completing the Canadian ZAI PD Proof of Claim Form, will be mailed to:

> ➢ Known Canadian ZAI Claimants;

> ➢ Counsel of record for all readily identifiable Canadian ZAI Claimants with pending Canadian ("CDN") ZAI PD claims;

> ➢ Potential Canadian ZAI Claimants on lists maintained by Counsel participating in the proceedings; and

> ➢ All individuals who call the toll-free telephone number or write and request a copy of the Canadian ZAI PD Claims Bar Date Notice Package from the Official Claims Agent.

The Canadian ZAI PD Claims Bar Date Notice Package will also be available directly from the Grace Chapter 11 website.

*In re W. R. Grace & Co.,* Chapter 11

# Paid Media Methodology

KNC notice programs directed to claimants: (1) identify the demographics of claimants and establish a target audience; (2) outline the methodology for selecting the media and other program elements and how they relate to product usage or exposure; and (3) provide results that quantify for the court the adequacy of the notice based upon recognized tools of media measurement.

In the wake of the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993) and *Kumho Tire Company v. Carmichael,* 526 U.S. 137 (1999), the reliability of a notice expert's testimony should be tested against the standards developed within the media industry for determining to what degree and at what frequency a target audience has been reached. In assessing the expert's reliability, the court must determine whether the testifying expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." (526 U.S. at 152). That showing would likely require evidence that the expert's data and methodology are similar to that used by professionals in the relevant field.

In keeping with the *Daubert* and *Kumho* rulings, KNC employs the methodology and measurement tools used in the media planning and advertising industry for designing and measuring the adequacy of a paid media program to reach a particular audience.

Choosing a target audience encompassing the characteristics of ZAI Claimants is the first step in designing the paid media program. Media vehicles are chosen based on their ability to provide effective and cost-efficient penetration of the target audience. The selected media vehicles are then measured against the target audience to quantify the *reach* of the media program and the *frequency* of exposure to the media vehicles. *Reach* and *frequency* estimates are two of the primary measurements used to quantify the media penetration of a target audience.

> ➢ *Reach* is the estimated percentage of a target audience that is exposed one or more times through a specific media vehicle or combination of media vehicles within a given period.

> ➢ *Frequency* is the estimated average number of times an audience is exposed to a vehicle carrying the message within a given period of time.

The measured delivery of media to the target audience will be representative of delivery to Canadian ZAI Claimants.

# Target Audience

KNC used information provided by Grace relating to their asbestos business and asbestos claims history to develop the Notice Plan. This information was provided in the form of:

> ➢ An extensive briefing by counsel to the Debtors and by Grace counsel and staff regarding the asbestos history of Grace; and

> ➢ Information on Grace's vermiculite and asbestos-containing products including Zonolite Attic Insulation.

To develop a profile of the demographics and media habits of Homeowners, including potential Canadian ZAI Claimants, KNC analyzed syndicated data available from the *2007 2 Year Study* from the Print Measurement Bureau ("PMB") in Canada.

PMB is Canada's leading data provider of audience size, composition and other relevant factors pertaining to major media vehicles. The service provides data on audience size, composition and other relevant factors pertaining to major media vehicles. PMB presents a single-source measurement of major media, products, services and in-depth consumer demographic and lifestyle characteristics.

In selecting the target audiences for purposes of purchasing media, KNC examined the demographics of Homeowners using PMB data. Print media can be measured against the precise audience of Homeowners. However, electronic media cannot be measured against Homeowners but rather can be measured against audiences based on age and/or gender. Because 75.6% of Canadian Homeowners are adults 35 years of age and older, the following broader target audience was selected:

> ➢ Adults 35 years of age and older ("Adults 35+")

# DEMOGRAPHICS

Since all media is purchased based on demographics, it is critical to determine the age, gender and other demographic characteristics of the target audience in order to design a media-based notice program to adequately reach Canadian ZAI Claimants.

ZAI was marketed from the 1920s or 1930s to 1984. While original installations of the product were primarily undertaken by DIY homeowners, there are likely to be many individuals who did not install ZAI themselves but who own homes with the insulation.

Using PMB data, KNC examined the demographics of Canadian Homeowners, which encompasses Canadian ZAI Claimants as indicated in the table below:

| DEMOGRAPHICS | HOMEOWNERS |
|---|---|
| **Gender** | |
| Male | 49.9% |
| Female | 50.1% |
| | |
| **Age:** | |
| 35+ | 75.6% |
| | |
| **Education** | |
| Did Not Graduate High School | 16.7% |
| Graduated High School | 27.7% |
| Graduated/Attended College | 55.6% |
| | |
| **Household Income** | |
| Under $19,999 | 6.2% |
| $20,000 - $39,999 | 15.1% |
| $40,000 –$74,999 | 33.4% |
| $75,000+ | 45.2% |
| | |
| **Race/Ethnicity** | |
| White | 87.2% |
| Black | 1.4% |
| Asian | 9.2% |
| Hispanic | 0.8% |
| Other | 1.7% |

# PAID ADVERTISING

The core of the Notice Plan is paid media placements in national consumer magazines, supplemented by television and Internet activity.

An analysis of the media habits of Adults 35+ indicates that they are above average newspaper readers and average consumers of all other media. Print publications and television programming targeted to Adults 35+ will reach a high percentage of Canadian ZAI Claimants nationally. Internet activity will provide an opportunity to reach Canadian ZAI Claimants who may be lighter print and television consumers.

For the purpose of evaluating the strength and efficiency of the media, television, print publications and Internet were measured against Adults 35+ to establish the *reach* of the media program and the *frequency* of exposure to the media vehicles.

## PRINT ADVERTISING DESIGN AND PLACEMENT

The published form of notice ("Canadian ZAI PD Published Bar Date Notice") is designed as an advertisement to capture and hold the attention of Canadian ZAI Claimants. The ZAI PD Published Bar Date Notice is attached hereto as Exhibit 1.

The black and white advertisement's headline clearly targets and addresses the Canadian ZAI Claimants. The text uses subheads, product description and simple language to inform clearly rather than confuse. To facilitate identification of vermiculite, pictures are included. The website address and toll-free number are boldly displayed to allow Canadian ZAI Claimants to obtain complete information and a claim form.

### CONSUMER MAGAZINES

Magazines were analyzed for their composition[2] and coverage[3] of Adults 35+. The Canadian ZAI PD Published Bar Date Notice will be placed in the following publications:

➤ A full-page ad (7-7/8" x 10-1/2") will be placed once in *Chatelaine* (English) with an estimated circulation of 596,887. The readership among Adults 35+ is 2,864,000.

➤ A full-page ad (7-7/8" x 10-1/2") will be placed once in *Chatelaine* (French) with an estimated circulation of 200,106. The readership among Adults 35+ is 792,000.

➤ A full-page ad (7-7/8" x 10-1/2") will be placed once in *L'Actualite* with an estimated circulation of 185,395. The readership among Adults 35+ is 691,000.

---

[2] Composition is the percentage of target audience in readership.
[3] Coverage is the percentage of target audience reached.

*In re W. R. Grace & Co.,* Chapter 11

The following table provides readership for the target audience:

| PUBLICATION | ADS | CIRCULATION | ADULTS 35+ |
|---|---|---|---|
| *Chatelaine* (English) | 1 | 596,887 | 2,864,000 |
| *Chatelaine* (French) | 1 | 200,106 | 792,000 |
| *L'Actualite* | 1 | 185,395 | 691,000 |

## NEWSPAPERS

To provide broad national coverage, newspaper advertising will include ads in two national newspapers as well as 22 of the largest-circulating newspapers in the 10 Provinces. These newspapers also include the four largest French language newspapers in Canada where approximately 20% of adults are French speaking. The ads placed in the following newspapers will be equivalent in size to a standard quarter-page U.S. ad (measuring approximately 6" x 11") and will appear on the highest circulating day:

| PROVINCE | CITY | NEWSPAPER | CIRCULATION |
|---|---|---|---|
| National | | *Globe & Mail* | 416,584 |
| | | *National Post* | 243,126 |
| Alberta | Calgary | *Herald* | 117,513 |
| | Calgary | *Sun* | 98,000 |
| | Edmonton | *Journal* | 133,144 |
| British Columbia | Vancouver | *Province* | 143,300 |
| | Vancouver | *Sun* | 178,508 |
| | Victoria | *Times Colonist* | 76,987 |
| Manitoba | Winnipeg | *Free Press* | 120,502 |
| New Brunswick | Thunder Bay | *Chronicle Journal* | 29,098 |
| Newfoundland | St. John's | *Telegram* | 55,000 |
| Nova Scotia | Halifax | *Chronicle Herald* | 108,596 |
| Ontario | Hamilton | *Spectator* | 115,303 |
| | London | *Free Press* | 110,000 |
| | Ottawa | *Citizen* | 135,258 |
| | Toronto | *Star* | 643,489 |
| | Toronto | *Sun* | 188,102 |
| Prince Edward Island | Charlottetown | *The Guardian* | 24,874 |
| Quebec | Montreal | *Gazette* | 149,702 |
| | Montreal | *La Presse  (French)* | 300,000 |
| | Montreal | *Le Journal (French)* | 319,736 |
| | Quebec (city) | *Le Soliel (French)* | 230,000 |
| | Quebec (city) | *Le Journal  (French)* | 145,000 |
| Saskatchewan | Saskatoon | *Star Phoenix* | 60,000 |
| | **TOTAL** | | **4,141,822** |

## TV ADVERTISING DESIGN AND PLACEMENT

The television buy will consist of English and French language network broadcast and national cable television.   Thirty-second spots will be aired over a one to two week time period.

Television is an intrusive medium that generates rapid awareness and provides effective reach of the audience.  The television spot is designed to provide both audio and visual information to alert individuals that they may be Canadian ZAI Claimants in the bankruptcy and that they should seek further information through the toll-free number or website to determine their status as a claimant and procedures to file a claim. The tone of the spot is similar to the print executions, alerting the potential Canadian ZAI Claimants to the nature of the litigation and stressing the importance of the information to follow.  A layout of the TV spot is attached hereto as Exhibit 2.

The planned daypart mix or times of day selected for airing the spots is as follows:

| DAYPART | ADULTS 35+ TRPs |
|---|---|
| Early Morning News<br>5:00 AM – 9:00 AM (M-F)<br>6:00 AM – 11:00 AM (Sa-Su) | 50.0 |
| Daytime<br>9:00 AM – 3:00 PM (M-F) | 14.0 |
| Fringe<br>3:00 PM – 5:00 PM (M-F) | 25.0 |
| Prime<br>7:00 PM – 10:00 PM (M-Sa)<br>6:00 PM – 10:00 PM (Su) | 36.0 |
| Cable<br>6:00 AM – 12:00 M (M-Su) | 31.0 |

## INTERNET ADVERTISING DESIGN AND PLACEMENT

According to PMB, over 25% of Homeowners and over 22% of Adults 35+ have access to the Internet whether at home, work, a library, school or other location.  Over 50.0% of both target audiences accessed the Internet in the past 30 days. Internet advertising delivers an immediate message and allows the viewer of an advertisement to instantly link to a website for further information.

The banner advertisements will be designed to alert Internet users that they may be Canadian ZAI Claimants in the bankruptcy through the use of a bold headline.  The short, simple headline will enable Canadian ZAI Claimants to quickly determine if they are potentially affected.   When visitors click on the banner advertisement, they will be connected automatically to the informational website, www.graceclaims.com.

KNC recommends using Internet advertising to provide additional notice opportunities beyond the broad-reaching print and television program to Canadian ZAI Claimants. Internet advertising will appear across a wide range of websites enabling maximum exposure opportunities to reach the broad audience of Adults 35+.

The Internet buy will consist of:



    ➢ 24/7 Real Media (Canada Network) is a network that represents over 900 websites including sites related to health, fitness and news and information, some of which are proprietary and confidential.

    ➢ Banner advertisements of various measurements will appear, on a rotating basis, on websites that are part of the 24/7 Real Media Network delivering an estimated 16,666,667 gross impressions.

    ➢ The banner advertisements will appear for a 30 day period, or until the gross impressions are delivered.

*In re W. R. Grace & Co.,* Chapter 11

# MEDIA DELIVERY

Using national consumer magazines, national and local newspapers, broadcast television and Internet advertising, the media program delivers the following reach and frequency of exposure measurements:

> ➤ The estimated reach of Adults 35+ is 85.5% with an estimated average frequency of 3.5 times.

The plan delivers 54,575,000 gross impressions for Adults 35+. It is estimated that Adults 35+ will see the media vehicles carrying the notice over 54 million times.

# ABORIGINAL SITUATION ANALYSIS

When examining the Aboriginal population in Canada, data from the 2006 Canadian Census indicate that:

- Aboriginal people in Canada are members of at least one Aboriginal group: North American Indian (or First Nations), Métis, or Inuit.
- A total of 1,172,790 people identified themselves as an Aboriginal person.
- Aboriginal people account for 3.8% of the total population of Canada.
- The Aboriginal population is becoming increasingly urban.
- In 2006, 54% lived in an urban center.
- Over 90% of the Aboriginal population speaks English, with approximately 7% speaking only their Native language.
- Over 81% of the Aboriginal population resides in the following five Canadian Provinces:
    - Ontario (19.3%)
    - British Columbia (17.4%)
    - Alberta (16.0%)
    - Manitoba (15.4%)
    - Saskatchewan (13.3%)
- Additionally, Inuit peoples make up over 85% of the Nunavut Territory's total population.

*In re W. R. Grace & Co.,* Chapter 11

# ABORIGINAL MEDIA

The Notice Program outlined above already includes national television, three national magazines, two national newspapers, and 13 daily newspapers in the five provinces where over 81% of the Aboriginal population is concentrated. In order to further reach the Aboriginal peoples in Canada, KNC will utilize national Aboriginal magazines, local (regional) newspapers, and national television on the Aboriginal Peoples Television Network ("APTN").

## MAGAZINES

KNC will run one full-page ad in each of the following national Aboriginal magazines in order to reach Aboriginal peoples nationally (all ads will be in English):

- *Aboriginal Times* with an estimated circulation of 100,000.
- *First Perspective* with an estimated circulation of 15,000.
- *Native Journal* with an estimated circulation of 15,000.
- *Windspeaker* with an estimated circulation of 25,000.

## NEWSPAPERS

Due to the large proportion of Inuit peoples living in the Nunavut Territory, KNC also suggests running ads in three local, regional newspapers in the Nunavut Territory. Because approximately 65% of the Inuit population speaks the native Inuktitut language in their homes, KNC recommends running one-sixth page ads once in each of the following publications in the Inuktitut language:

- *Kivalliq News* with an estimated circulation of 1,600.
- *Nunatsiaq News* with an estimated circulation of 6,000.
- *Nunavut News/North* with an estimated circulation of 6,200.

## TELEVISION

APTN is a national Aboriginal network that broadcasts throughout Canada. The network is available in nearly 100% of Aboriginal households on reserves and 85% of Aboriginal households in the far North. Independent Aboriginal producers create the programming, and over 50% of the programming is exclusive to the network. The network features a variety of content including youth programming, drama, movies, entertainment and news. 60% of programming is in English, 15% in French and 25% in a variety of Aboriginal languages.

KNC proposes running 30 and 60-second spots on APTN in English, French and Inuktitut.

*In re W. R. Grace & Co.,* Chapter 11

## ABORIGINAL MEDIA DELIVERY

Reach and frequency estimates are not available for the media outlined above, as aboriginal readership and viewership are not measured. However, the Notice Program outlined above will already reach 85.5% of Canadian Adults 35+ with an estimated average frequency of 3.5 times. This addition of the outlined Aboriginal media will only serve to increase the existing reach and frequency estimates.

# EARNED MEDIA

The thrust of the earned media program is to amplify the notice to Canadian ZAI Claimants through the use of free media.  The earned media portion of this Notice Plan will augment the paid media plan developed.  The third-party endorsement from reliable sources such as the news media can add immeasurable value to outreach efforts.

Outreach to print and electronic media will focus primarily on major radio and television outlets, key daily newspapers, wire services and newspaper bureaus in Canada.  A press release highlighting the toll-free telephone number and website address that Canadian ZAI Claimants can call or visit for complete information will be distributed as follows;

> ➢ On the Canadian Newswire reaching approximately 350 English and French media outlets.

*In re W. R. Grace & Co., Chapter 11*

# INFORMATIONAL WEBSITE

The Canadian ZAI PD Claims Bar Date Notice Package will be posted on the Grace Chapter 11 website, as a PDF file, enabling all Canadian ZAI Claimants to view the Canadian ZAI PD Claims Bar Date Notice Package. The site will be listed with search engines and indexes.

The website, established at www.graceclaims.com, is designed for ease of use and comprehension. Web pages on the site are simple, containing words, icons, documents and images. A directory, located at the top of the page, provides links to the information available on the website. These links to the homepage and subsections remain fixed on top as users navigate around the website.



© 2008 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

# TOLL-FREE TELEPHONE SUPPORT

All print and television advertising will give the reader/viewer the option of calling a toll-free telephone number in order to receive the Canadian ZAI PD Claims Bar Date Notice Package and obtain information and instructions regarding filing proofs of claim.  The toll-free telephone number will be accessible to Canadian ZAI Claimants, and it will include an option for French speakers.  In addition to the toll-free number, the print and television advertising will provide the website address, and the print advertising will also include the address of the Claims Agent as alternative contact mechanisms.

# EXHIBIT 1

Legal Notice

# If You Have a Home Located in Canada with Vermiculite Loose-Fill Attic Insulation

## Your Rights May Be Affected by the W. R. Grace Bankruptcy

| Your Claim Must Be Filed By Month Date Year |
| --- |

W. R. Grace and its related entities ("Grace") have filed for protection under Chapter 11 of the U.S. Bankruptcy Code. If your home is located in Canada and has vermiculite loose-fill attic insulation, you may have a property claim against Grace.

**What Is Vermiculite Loose-Fill Attic Insulation?**
Vermiculite was used by Grace in certain non-roll home attic insulation that was sold from the 1920/1930s to 1984. Some of Grace's vermiculite attic insulation contains naturally-occurring asbestos and was sold under the name of "Zonolite Attic Insulation" ("ZAI") and under other brand names, including: Attic Fill, House Fill, Home Insulation, Zonolite Insulating Fill, Econofil, Quiselle Insulating Fill, Sears Micro Fill, Ward's Mineral Fill, Wickes Attic Insulation, Attic Plus, Mica Pellets Attic Insulation, Unifil and Cashway Attic Insulation.

**What Does It Look Like And Where Is It Located?**
ZAI is an insulation product typically used in home attics and sometimes in walls. The granules are small, accordion-shaped nuggets and may have a silvery, gold translucent or brownish cast that may also appear black or gray over time. ZAI may be found underneath other insulation installed at a later date.

**What Are ZAI claims?**
ZAI claims could include, among others, the cost of abatement or removal, the diminution of property value, economic loss, or other property-related claims caused by ZAI manufactured by Grace.



Loose vermiculite



Vermiculite nugget size

A settlement has been reached, and a Fund has been established to pay Canadian ZAI property claims against Grace. To preserve your claim against Grace, you must file the Bankruptcy Court approved claim form by Month Date Year. You may obtain the appropriate claim form and more information on how to file a claim by writing:

**Claims Processing Agent, W. R. Grace & Co. Bankruptcy,
P. O. Box 1620, Faribault, MN 55021-1620 or**

## Call: 1-877-465-4817 or visit: www.graceclaims.com

# EXHIBIT 2

**30-SECOND W. R. GRACE BAR DATE SPOT\***

**W. R. Grace Bankruptcy**
**Last Day to File All Canadian**
**ZAI Property Claims**
**Month Date Year**
**1-877-465-4817**

**W.R. Grace Bankruptcy**



**1-877-465-4817**

**W.R. Grace Bankruptcy**



**1-877-465-4817**

**W.R. Grace Bankruptcy**
**Last Day to File All Canadian ZAI Property Claims**
**Month Date Year**
**1-877-465-4817**
**www.graceclaims.com**
Furnished by Defendants in Case No. 01-01139, by Order
of the U.S. Bankruptcy Court for the District of Delaware

If your home has loose-fill, non-roll vermiculite attic insulation you may have a claim against W. R. Grace. A settlement fund will pay valid Canadian Property Claims involving Zonolite Attic Insulation. Claims must be filed by Month Date Year.

Zonolite was also sold under different names. It consists of expanded nuggets that appear silver, brown, gold, black or grey. It may be under other insulation.

Please call 877-465-4817 or go to graceclaims.com.

**\*Visual treatment is in draft form and will not be finalized until a later date.**

# EXHIBIT 3

# Estimated Budget

| | | |
|---|---|---|
| **I.** | **PAID MEDIA** | |
| | A. Canadian Media[1] | $720,500.00 |
| | B. Aboriginal Media - TV, Magazines and Newspapers | $34,500.00 |
| | **TOTAL ESTIMATED PAID MEDIA EXPENSES** | **$755,000.00**[2] |
| | | |
| **II.** | **PRODUCTION AND DISTRIBUTION** | |
| | A. Print and Internet Ad Production and Distribution | $2,000.00 |
| | B. Television Spot(s) Production and Distribution | $25,000.00 |
| | C. Press Release Production, Distribution and Tracking | $2,000.00 |
| | D. Website updates and hosting (6 months @ $250/month) | $2,500.00 |
| | **TOTAL ESTIMATED PRODUCTION EXPENSES** | **$31,500.00** |
| | | |
| **III.** | **MISCELLANEOUS EXPENSES** | |
| | A. Courier, Duplicating, Overnight, Delivery, Postage, Telefax, Telephone, Travel, Etc. | $5,000.00 |
| | B. Translations | $1,000.00 |
| | **TOTAL ESTIMATED MISCELLANEOUS EXPENSES** | **$6,000.00** |
| | | |
| **IV.** | **ESTIMATED TOTAL BUDGET** | **$792,500.00**[3] |

1. Television cost estimates are subject to change based upon availabilities at the time of actual placement.

2. Upon receiving final approval, KNC will negotiate final advertising rates. Advertising rates are set by the individual publications and are subject to change without notice. While the rates we have quoted are current, they are subject to change prior to the time an ad actually appears. We will make every effort to update any changes in the advertising rates we have quoted and to negotiate the best rates possible.

3. Canadian budget is expressed in US dollars using an estimated exchange rate of 1.024 of Canadian dollars. Actual US dollars could change based on exchange rate at time of placement.

# EXHIBIT F

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JJF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

### Declaration of Katherine Kinsella

I, Katherine Kinsella, declare as follows:

1.      I am an adult and competent to submit this declaration.   I make this declaration based on my own personal knowledge and belief.

2.      I am the President of Kinsella/Novak Communications, LLC ("KNC") a nationally recognized advertising and communications firm specializing in the design, preparation and implementation of legal notification programs in class action and bankruptcy cases.    I have developed and consulted on some of the largest and most complex national notification programs in the country including media-based notification programs in cases involving consumer fraud, asbestos, breast implants, tobacco, infant formula, polybutylene plumbing, home siding products, antitrust, securities, and Holocaust restitution claims.

3.      On July 19, 2001, the Court entered an Order authorizing the employment and retention of KNC as Notice Consultants for the Debtors.   Since that time, I have drafted and submitted various materials to the Debtors and the Court with respect to the Debtors' July 27, 2001 *Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Claim Forms and Approval of the Notice Program* and corresponding Reply dated November 9, 2001.  Among the materials I submitted to the Court in connection with these matters was (i) an Affidavit dated October 29, 2001 in support of the Debtors' Reply, which I prepared for the Debtors, (ii) an Affidavit dated February 11, 2002 in support of the *Debtors' Revised Motion as to All Non-Asbestos Claims, Asbestos Property Damage and ZAI Claims for Entry of Case Management Order, Establishment of a Bar Date, Approval of Proof of the Claim Forms and of the*

*Notice Program*, (iii) an Affidavit dated December 20, 2004 in support of the *Debtors'*
*Supplement to their Estimation Motion and Request for Related Relief* and (iv) an
Affidavit dated March 17, 2008 in support of the *Debtors' Motion for an Order (A)*
*Establishing a Proof of Claim Bar Date for Zonolite Attic Insulation Claims, and (B)*
*Approving the Related Proof of Claim Form, Bar Date Notices, and Notice Program.*

     4.     I submit this declaration in support of the *Debtors' Motion for an Order*
*(A) Establishing a Proof of Claim Bar Date for Canadian Zonolite Attic Insulation*
*Property Damage Claims, and (B) Approving the Related Proof of Claim Form, Bar Date*
*Notices, and Notice Program* ("the Motion").  This declaration addresses the merits of
the notice plan targeted to holders and potential holders of Property-related Zonolite Attic
Insulation Claims in Canada ("Canadian ZAI Claimants") set forth in the Bar Date Notice
Plan for Canadian Zonolite Attic Insulation Property Claims ("Notice Plan"), which is
attached to the Motion at Exhibit E.

     5.     The Notice Plan outlines procedures to provide fair and adequate notice,
consistent with due process requirements, to Canadian ZAI Claimants.

     6.     The Notice Plan is consistent with notice programs KNC designed and
implemented in other asbestos bankruptcies and class actions, as well as consumer class
actions, all of which have met with court approval.  It is my opinion that the Notice Plan
provides cost-effective, adequate and thorough notice to all Canadian ZAI Claimants.

     7.     The Notice Plan, both in terms of the media selected and the creative
execution of the notice itself, accomplishes the objective of providing adequate and
effective notice to all Canadian ZAI Claimants.

     8.     Although notice through direct mail to claimants for whom names and
addresses are available in this matter is possible, a large percentage of claimants are not
readily identifiable, requiring a media-based notice program to reach them.  Media-based
notice programs designed by KNC and directed to unidentified claimants:  (i) identify the
demographics of claimants and establish a target audience or audiences; (ii) outline the

methodology for selecting the media and other plan elements and how they relate to product usage or exposure, or the claims at hand, and (iii) provide results that quantify for the court the percentage of the target audience(s) reached and the frequency of opportunity to see the media notice. This approach to designing media-based notice programs has been repeatedly validated and approved by courts.

9.    For purposes of developing profiles of the demographics and media habits of Canadian ZAI Claimants, KNC analyzed syndicated data available from the *2007 2 Year Study* from the Print Measurement Bureau ("PMB") in Canada. PMB is Canada's leading data provider of audience size, composition and other relevant factors pertaining to major media vehicles. PMB presents a single-source measurement of major media, products, services and in-depth consumer demographic and lifestyle characteristics.

10.    The demographic target measured by PMB selected for Canadian ZAI Claimants is Adults 35 years of age and older ("Adults 35+"). 75.6% of this demographic group are Homeowners.

11.    The Notice Plan calls for multiple notices: (i) in three national consumer magazines, (ii) in two national newspapers, (iii) in 22 of the largest-circulating newspapers in the 10 Provinces, (iv) on broadcast and national cable television, (v) on the Internet, (vi) in four Aboriginal magazines, (vii) in three local, regional newspapers in the Nunavut Territory and (viii) on television on the Aboriginal Peoples Television Network. In addition, a press release will be distributed nationally. Information will also be provided on the W. R. Grace Bankruptcy website, established at www.graceclaims.com.

12.    With respect to the notices themselves, the print and television advertising, attached as Exhibit D to the Motion, clearly and adequately provide the notice message with a single creative execution in each type of media. The notices target and address the claimants, calling their attention to the importance of the notice, and they have clear visuals assisting the claimant to self-identify as an individual who may need to file a

claim. Both print and television executions describe ZAI, including visuals of Zonolite. The notices will be translated into French Canadian and Inuktitut when necessary.

13.    The Notice Plan delivers an estimated reach of Adults 35+ of 85.5% with an estimated average frequency of 3.5 times.

14.    The estimated cost for the Notice Plan if it is executed in 4th quarter 2008 is $792,500.

15.    If the Notice Plan is approved on October 20, 2008, KNC will begin reserving advertising space soon thereafter. In this case, I believe that the readership and viewership of the media vehicles outlined above will be substantially accrued by February 28, 2009. Therefore, the Bar Date should be set for 180 days after February 28, 2009.

September 15, 2008

_Katherine Kinsella_
Katherine Kinsella

# EXHIBIT G

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER (A) ESTABLISHING AUGUST 31, 2009 AS THE PROOF OF CLAIM BAR DATE FOR CANADIAN ZONOLITE ATTIC INSULATION PROPERTY DAMAGE CLAIMS AND (B) APPROVING THE RELATED PROOF OF CLAIM FORM, BAR DATE NOTICES, AND NOTICE PROGRAM

Upon the Debtors' motion seeking entry of an order (a) establishing a proof of claim bar date for Canadian Zonolite Attic Insulation Property Damage Claims ("CDN ZAI PD Claims")[2] and (b) approving the related proof of claim form, bar date notices, and notice program (the "Motion"); and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]  Terms not defined herein shall have the meaning ascribed to them in the Motion.

pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion

is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of the

Motion having been given; and it appearing that no other notice need be given; and after due

deliberation, consideration of all objections to the Motion and arguments from counsel, and

sufficient cause appearing therefore, it is hereby

ORDERED that the relief requested in the Motion is granted to the extent set forth

herein, and it is further

ORDERED that August 31, 2009 at 5:00 p.m. (prevailing Eastern Time), shall be

the CDN ZAI PD Claims Bar Date, which shall be the last date and time by which the CDN ZAI

PD Proof of Claim Form on account of a CDN ZAI PD Claim must be filed or the holder of such

CDN ZAI PD Claim shall be forever barred from asserting such CDN ZAI PD Claim against the

Debtors; and it is further

ORDERED that the term "CDN ZAI PD Claim" shall be defined as set forth in

the bar date documents attached hereto at Exhibit A and Exhibit B; and it is further

ORDERED that the Debtors shall:

(1)    mail via first-class United States mail, within thirty (30) days of entry of
this Order, a copy of the CDN ZAI PD Bar Date Notice Package,[3] to (i) all
known Holders of CDN ZAI PD Claims and their counsel of record, (ii) the
Office of the United States Trustee; (iii) counsel to the official committees
appointed in these Chapter 11 Cases; and (iv) all those parties that have requested
service and notice of papers in accordance with Bankruptcy Rule 2002;

(2)    mail via first-class United States mail, within thirty (30) days of receipt of
names and addresses of potential other known putative claimants provided by the
Crown, a copy of the CDN ZAI PD Bar Date Notice Package to all such
claimants; and

---

[3]    The CDM ZAI PD Bar Date Notice Package consists of the CDN ZAI PD Proof of Claim Form, the General
Instructions for Completing the CDN ZAI PD Proof of Claim, and the Notice of the Last Day to File a Claim
Concerning CDN ZAI PD Claims.

K&E 13373657.1

(3)    complete the publication notice and third-party mailings that are outlined in the CDN ZAI PD Bar Date Notice Program by February 28, 2009; and it is further

ORDERED that the form and use of the CDN ZAI PD Proof of Claim Form and the General Instructions for Completing the CDN ZAI PD Proof of Claim Form, annexed hereto at Exhibit A, are approved; and it is further

ORDERED that the CDN ZAI PD Bar Date Notices, annexed hereto at Exhibit B, are approved; and it is further

ORDERED that the CDN ZAI PD Bar Date Notice Program, annexed hereto at Exhibit C, is approved and shall constitute adequate notice of the CDN ZAI PD Bar Date to all known and unknown CDN ZAI PD Claimants in Canada; and it is further

ORDERED that the CDN ZAI PD Proof of Claim must be completed and signed by individual holders of CDN ZAI PD Claims or their authorized agents; and it is further

ORDERED that notwithstanding any term, provision, or notice to the contrary, if a person or entity holds a CDN ZAI PD Claim against more than one of the Debtors, such person or entity need not file a separate CDN ZAI PD Proof of Claim against each of the applicable Debtors in order to comply with the requirements of this Order and to preserve such person's or entity's CDN ZAI PD Claim, the timely filing of only one CDN ZAI PD Proof of Claim being sufficient and proper for purposes of this Order; and it is further

ORDERED that holders of CDN ZAI PD Claims are not required to submit any physical samples of ZAI with the CDN ZAI PD Proof of Claim, however, nothing in this Order prohibits any other person or entity from seeking samples in the future as part of the submission of a CDN ZAI PD Claim to the CDN ZAI PD Claims Fund established in Canada; and it is further

K&E 13373657.1

ORDERED that the Debtors are authorized and empowered to take all actions and execute such other documents as may be necessary to implement the relief granted herein; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Pittsburgh, Pennsylvania
Dated:_____, 2008

_____
Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

4