## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W.R. GRACE & CO., et al., ) | Case No. 01-01139(JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | Docket No. 19369 |
| ) | |
| ) | DECLARATION OF GLORIA MUNOZ IN SUPPORT OF CLAIMAINT'S RESPONSE TO DEBTORS' TWENTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (SUBSTANTIVE AND NON-SUBSTANTIVE) |
| ) | |
| ) | Case No. 01-01140 |
| ) | Claim No. 1595 |
| GLORIA MUNOZ, ) | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF ALAMEDA |
| Plaintiff/Claimant, ) | |
| vs. ) | CASE NO. 810748-2 |
| W.R. GRACE & CO, - CONN., a corporation, C.C. FRIAL, PEDRO GONZALES "PETE," J.C. GONZALES "JOE," and DOES I through XX, inclusive, ) | |
| Defendants ) | |

**Hearing Date: September 29, 2008 at 10:00 a.m.**

I, Gloria Munoz Santos, declare:

1.      I am the Plaintiff in the above-entitled action and I have personal knowledge of the matters set forth herein and can testify thereto if called upon to do so.

2.      In 1993 I was initially hired by W.R. Grace & Company as a production/warehouse employee. On or about January 1995, following a discrimination grievance settlement, I was reinstated to full time employment at W.R. Grace and worked there

1

until 1998. W.R. Grace's San Leandro facility where I worked is located at 2140 Davis Street, in Alameda County, in the State of California.

   3.  Throughout my employment at the San Leandro plant, I was subjected to sexual harassment by certain employees at the plant, with management's knowledge. I was forced to work in a hostile environment. The sexual harassment consisted of repeated graphic sexual comments and propositions, fondling, unwanted touchings and threats made in a sexual context by co-workers Pete Gonzales and Joe Gonzales (they are not related). On at least one occasion, Office Supervisor C. C. Frial joined them in one of their offensive sexual conversations about penises, in front of me. Frial knew that his and the co-workers' conduct was inappropriate.

   4.  On or about September 1997, I opened my locker at work and saw that someone had taken three of my adhesive Kotex napkins and stuck them onto the inside of my locker door into the shape of a cross. Above the Kotex cross was a note which stated that someone wanted to kill me. Personal notes which I kept in my locker, were torn and strewn on the ground. That same day, I reported the incident to Plant Manager Andrew Aberdale.

   5.  The Kotex incident was brought to the attention of W.R. Grace's Human Resources Department ("HR"). When W.R. Grace's HR employees contacted me, they did not interview me at a private location where I could feel free to speak about the continued sexual discrimination and harassment. Instead, W.R. Grace's employees ignored my complaint about the lack of privacy where they had chosen to interview me. Consequently, I could not completely and candidly talk about all the discrimination and harassment that I was experiencing because I heard other employees who were in the next room beyond a thin partition wall.

   6.  My interview with W.R. Grace, on or about June 1998, occurred well over nine months after the September 1997 Kotex incident; W.R. Grace sent its written findings to me on August 13, 1998, almost a year later. W.R. Grace's findings were based, for the most part, on an incomplete conducted interview with me. I did not see W.R. Grace's written anti-Sexual

until 1998. W.R. Grace's San Leandro facility where I worked is located at 2140 Davis Street, in Alameda County, in the State of California.

3.    Throughout my employment at the San Leandro plant, I was subjected to sexual harassment by certain employees at the plant, with management's knowledge. I was forced to work in a hostile environment. The sexual harassment consisted of repeated graphic sexual comments and propositions, fondling, unwanted touchings and threats made in a sexual context by co-workers Pete Gonzales and Joe Gonzales (they are not related). On at least one occasion, Office Supervisor C. C. Frial joined them in one of their offensive sexual conversations about penises, in front of me. Frial knew that his and the co-workers' conduct was inappropriate.

4.    On or about September 1997, I opened my locker at work and saw that someone had taken three of my adhesive Kotex napkins and stuck them onto the inside of my locker door into the shape of a cross. Above the Kotex cross was a note which stated that someone wanted to kill me. Personal notes which I kept in my locker, were torn and strewn on the ground. That same day, I reported the incident to Plant Manager Andrew Aberdale.

5.    The Kotex incident was brought to the attention of W.R. Grace's Human Resources Department ("HR"). When W.R. Grace's HR employees contacted me, they did not interview me at a private location where I could feel free to speak about the continued sexual discrimination and harassment. Instead, W.R. Grace's employees ignored my complaint about the lack of privacy where they had chosen to interview me. Consequently, I could not completely and candidly talk about all the discrimination and harassment that I was experiencing because I heard other employees who were in the next room beyond a thin partition wall.

6.    My interview with W.R. Grace, on or about June 1998, occurred well over nine months after the September 1997 Kotex incident; W.R. Grace sent its written findings to me on August 13, 1998, almost a year later. W.R. Grace's findings were based, for the most part, on an incomplete conducted interview with me. I did not see W.R. Grace's written anti-Sexual

2

Harassment policy posted at the work place until after its Human Resources Department personnel visited the San Leandro plant in June 1998. Even then, I did not see W.R. Grace follow up and determine whether its sexual harassment policy was protecting me from further harassment. After HR's visit at the plant, I continued to be harassed by W.R. Grace's male employees.

7.      Some time between February and May 1998, a co-worker, Pete Gonzalez and another male employee were talking about penises and other sexual matters in front of me while they were cleaning a big tote. The Office Manager, C. C. Frial "Tino," walked by and heard them. Frial told the male employees they should not be talking in front of a lady in such a manner. Pete Gonzalez responded that if I worked at the W.R. Grace plant, I had to be one of them. Frial laughed, joined in their conversation and made sexual comments of his own. I was forced to walk away to avoid hearing their offensive conversation. At the time, Frial was the highest ranking management employee present at W.R. Grace's San Leandro facility.

8.      During the course of my employment at W.R. Grace, and between August 1997 and August 1998, Pete Gonzalez subjected me to a pattern of offensive and unwanted sexual behavior at the work place, which included: often rubbing his hands and/or arms against my breasts and buttocks, and grabbing my legs; standing immediately behind me, and calling me so that I would turn around and bump into him; making sexual remarks to me about showing him how to use a vibrator in a sexual way; telling me that he would try to satisfy me since I could not get sex from anybody else; describing his sexual dreams and/or fantasies about women who went to his home to have their hair cut by his wife; telling me to go up to the pallets so that he could put me in the mood for sex; offering to take me to a hotel for dinner; telling me that if my husband could not please me, he could do it; going to the entrance of the women's shower room while I was taking a shower and threatening me that he would come in, and telling me that we could both fit in one shower stall—consequently, I feared taking showers at work and often refrained from showering even though I needed to wash after my shift; following me into the

3

women's bathroom, opening the door and yelling at me; remarking how good I looked after I lost weight and that my breasts stood out more; that if I wore make-up I would look better.

9.      During the course of my employment at W.R. Grace, and between August 1997 and August 1998, defendant Joe Gonzales, in the course and scope of my employment with defendant W.R. GRACE, subjected me to a pattern of offensive and unwanted sexual behavior and remarks at work including, but not limited to: touching my legs and thighs near my crotch when I was on the forklift; running his hands along my back and touching my buttocks and breasts; pretending to console me by hugging me in order to feel my buttocks; remarking to me that I looked good when I lost weight; and telling me about his wife not wanting sex.

10.     The above-described sexual harassment by Pete Gonzalez and Joe Gonzales occurred virtually every day at work, before and between the months of August 1997 and August 1998.

11.     I repeatedly told Pete Gonzalez and Joe Gonzales that I did not want to listen to their sexual remarks or comments. I continuously attempted to discourage their unwanted touching and fondling by pushing them away and telling each of them I did not welcome or want their touch. Pete Gonzalez and Joe Gonzales ignored me, laughed at my complaints and continued their harassment.

12.     I complained to W.R. Grace's Production Supervisor Waseem Sufi about the sexual comments and assaults by defendants Pete Gonzalez and Joe Gonzales. Although Sufi told me that he would talk to them, the sexual harassment continued and became so intolerable that I had to take a disability leave.

13.     I complained several times to the Shop Steward Brian Freeman and Assistant Shop Steward Steven Lewis about the above-described sexual harassment. As shop stewards, Freeman and Lewis were required to report such complaints to plant management, and I believe they did so. Despite my reported complaints, the sexual harassment continued.

14.     At least between January 1993 and September 1998, I was the only female

4

employee in the production/warehouse department at defendant's San Leandro facility. As the

sole female production/warehouse employee, before and between August 1997 and August 1998,

I was subjected to employment discrimination through disparate treatment and harassment on

account of my sex, which included but was not limited to: less vacation time than male

employees who received additional vacation time over the amount determined by their seniority

date; I discovered a male worker received holiday pay after taking sick leave when I was not

allowed to do the same; I was not immediately notified about my ailing father when my family

called the plant, while a male employee was immediately notified or paged whenever he received

calls about his sick mother; on at least one occasion, I received no assistance with the handling

of heavy equipment even after requesting it from Sufi, the Plant Supervisor; I did not receive the

same rate of pay as male employees with similar or later seniority dates; I was assigned more

difficult and less desirable jobs, and for longer periods, than other male employees; I was also

denied training in the more desirable jobs; I was written up for absences despite having received

prior permission for time off.

15.    I was given no privacy in the women's bath and locker rooms. Such areas

were not protected from the intrusion of male employees, often while I was using the facilities.

Prior to May 1998, male employees entered the women's locker room and rummaged through

my locker and, on one occasion, made a cross from three of my Kotex napkins and tore up my

personal notes. Male employees were not similarly denied privacy in the men's bath and locker

rooms. Routinely, at least three times a week, I had my food stolen from either my locker or the

lunchroom refrigerator, while male employees were not subjected to such constant thefts.

16.    I reported and complained several times of the above-cited disparate

treatment to Sufi, and/or Andrew Aberdale, Plant Manager. They dismissed my complaints and

allowed the disparate treatment to continue, often in retaliation for the times that I complained

and reported the disparate treatment and the sexual harassment.

17.    Because of the sexual harassment at W.R. Grace, I had to take a medical

5

leave of absence in 1998. For the next four years, I received counseling and could not return to work. At the time I took the medical leave, I was earning approximately $34,000 per year, with benefits.

18.     The sexual harassment at the W.R. Grace plant caused me to suffer migraine headaches; I had never experienced migraines before. Since the sexual harassment at W.R. Grace, I continue to suffer migraine headaches—approximately 4 times per month. I take Maxalt when I have a migraine, and Nortripoline and Tropomax everyday. My healthcare provider requires that I attend pain management classes.

19.     I am currently employed as a full-time comprehensive prenatal health worker at a Tri City Health Center in Fremont, California. I have been employed by Tri City since 2002.

I declare under penalty of perjury pursuant to the laws of the State of California and the United States that the foregoing is true and correct.

DATED this ___17___ day of September 2008, at Fremont, California.

GLORIA MUNOZ SANTOS

6

**PROOF OF SERVICE**
*In re: W.R. Grace & Co., et al. (Debtors)*
*U.S. Bankruptcy Court, District of Delaware, Case No. 01-01139 (JKF)*

I, TULOA SANCHEZ, hereby declare that I am a citizen of the United States and am over the age of eighteen (18) and am not a party to the above-entitled action. I am employed in the County of Alameda, California and my business address is Hildebrand, McLeod & Nelson, LLP, 350 Frank H. Ogawa Plaza, 4th Floor, Oakland, CA 94612-2006.

On **September 17, 2008**, I served the foregoing document(s) entitled:

**DECLARATION OF GLORIA MUNOZ IN SUPPORT OF CLAIMAINT'S RESPONSE TO DEBTORS' TWENTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (SUBSTANTIVE AND NON-SUBSTANTIVE)**

by placing ___ the original, _X_ a true copy thereof, enclosed in a sealed envelope addressed as follows:

*(SEE PROOF OF SERVICE LIST ATTACHED)*

_X_   **BY MAIL:** I caused such envelope(s) or package(s) to be deposited in the mail at Oakland, California with postage thereon fully prepaid. I am readily familiar with our firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day, in the ordinary course of business. The above sealed envelope(s) or package(s) was placed for collection and mailing on the above date following ordinary business practice.

____   **BY PERSONAL SERVICE:** I caused such envelope(s) containing a true copy thereof to be hand delivered to the parties listed.

____   **BY OVERNIGHT DELIVERY:** I caused such envelope(s) or package(s) designated by **Federal Express** with delivery fees paid or provided and;

____ deposited such envelope(s) or package(s) in a facility regularly maintained by the **Federal Express** courier;

____ delivered such envelope(s) or packages to an authorized courier or driver authorized by **Federal Express** carrier to receive documents.

____   **BY FACSIMILE:** On _____ at _____a.m./p.m., by use of facsimile machine telephone number 510-465-7023, I served a true copy of the above-entitled document(s) on the parties in said action by transmitting by facsimile machine to the numbers as set forth above. I caused the machine to print a transmission record of the transmission, a copy of which is attached to this Declaration.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on **September 17, 2008**, at Oakland, California.

_____
TULOA SANCHEZ

HILDEBRAND, MCLEOD & NELSON, INC.
ATTORNEYS AT LAW
WESTLAKE BUILDING
350 FRANK H. OGAWA PLAZA, FOURTH FLOOR
OAKLAND CALIFORNIA 94612-2006
(510) 451-9762

**PROOF OF SERVICE LIST**
*In re: W.R. Grace & Co., et al. (Debtors)*
*U.S. Bankruptcy Court, District of Delaware, Case No. 01-01139 (JKF)*

| | |
|---|---|
| Kari E. Levine, Esq.<br>SEYFARTH SHAW<br>560 Mission Street, Suite 3100<br>San Francisco, California 94105-2930<br>(Fax: 1-415-397-8549) | *Representing:    Debtor, W.R. Grace re Munoz vs. W.R. Grace, California Superior, Alameda County, Case No. 810748-2* |
| Christopher T. Greco, Esq.<br>KIRKLAND & ELLIS LLP<br>Citigroup Center<br>153 East 53rd Street, Suite 39<br>New York, NY 10022<br>(Fax: 1 212-446-4900) | *Co-counsel Representing:  Debtors W.R. GRACE & CO, et al.* |
| James E. O'Neill, Esq.<br>PACHULSKI, STANG, ZIEHL & JONES, LLP<br>919 N. Market Street, Suite 17<br>P. O. Box 8705<br>Wilmington, DE 19899-8705 (courier 19801)<br>(Fax: 1-302-652-4400) | *Co-counsel Representing:  Debtors W.R. GRACE & CO, et al.* |
| Scott L Baena, Esq.<br>BILZIN-SUMBERG<br>First Union Financial Center<br>200 South Biscayne Boulevard, Suite 2500<br>Miami, FL 33131<br>(Fax: 1-305-374-7593) | *Representing:    Official Committee of Property Damage Claimants* |
| Michael B. Joseph, Esq.<br>FERRY & JOSEPH,P.A.<br>824 Market Street, Suite 904<br>P. O. Box 1351<br>Wilmington, DE 19899<br>(Fax: 1-302-575-1714) | *Representing:    Official Committee of Property Damage Claimants* |
| Peter Van N. Lockwood, Esq.<br>CAPLIN & DRYSDALE, CHARTERED<br>One Thomas Circle, N.W.<br>Washington, DC 20005<br>(Fax: 1-202-429-3301) | *Representing:    Official Committee of Personal Injury Claimants* |
| Mart T. Huford, Esq.<br>CAMPBELL & LEVINE, LLC<br>800 N. King Street, Suite 300<br>Wilmington, DE 19801<br>(Fax: 1-302-426-9947) | *Representing:    Official Committee of Personal Injury Claimants* |

HILDEBRAND, McLEOD & NELSON, INC.
ATTORNEYS AT LAW
WESTLAKE BUILDING
350 FRANK H. OGAWA PLAZA, FOURTH FLOOR
OAKLAND CALIFORNIA 94612-2006
(510) 451-6732

**PROOF OF SERVICE LIST** (cont'd)

*In re: W.R. Grace & Co., et al. (Debtors)*

*U.S. Bankruptcy Court, District of Delaware, Case No. 01-01139 (JKF)*

| | |
|---|---|
| Lewis Kruger, Esq.<br>STROOCK & STROOCK & LAVAN<br>180 Maiden Lane<br>New York, NY 10038-4982<br>(Fax: 1-212-806-5430) | *Representing: Official Committee of Unsecured Creditors* |
| Michael R. Lastowski, Esq.<br>DUANE, MORRIS & HECKSCHER, LLP<br>1100 N. Market Street, Suite 1200<br>Wilmington, DE 19801-1246<br>(1-302-657-4901) | *Representing: Official Committee of Unsecured Creditors* |
| Teresa K.D. Currier, Esq.<br>BUCHANAN, INGERSOLL & ROONEY, P.C.<br>1000 West Street, Suite 1410<br>P.O. Box 1397<br>Wilmington, DE 19899-1397<br>(Fax: 1-302-552-4295) | *Representing: Official Committee of Equity Holders* |
| Gary Becker, Esq.<br>KRAMER, LEVINE, NAFTALIS & FRANKEL LLP<br>919 Third Avenue<br>New York, NY 10022 | *Representing: Official Committee of Equity Holders* |
| Richard H. Wyron, Esq.<br>ORRICK, HERRINGTON & SUTCLIFFE, LLP<br>Columbia Center<br>1152 15th Street, N.W.<br>Washington, D.C. 20005-1706<br>(Fax: 1-202-339-8500) | *Representing: Future Claimants' Representative* |
| John C. Phillips, Jr., Esq.<br>PHILLIPS, GOLDMAN & SPENCE, P.A.<br>1200 N. Broom Street<br>Wilmington, DE 19806<br>(Fax: 1-302-655-4210) | *Representing: Future Claimants' Representative* |
| David Klauder, Esq.<br>Office of the United States Trustee<br>J. Caleb Boggs Federal Building<br>Suite 2207, Lockbox 35<br>844 N. King Street<br>Wilmington, DE 19801<br>1-302-573-6491<br>1-302-573-6497 (fax) | *Representing: Office of the United States Trustee* |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HILDEBRAND, MCLEOD & NELSON, INC.
ATTORNEYS AT LAW
WESTLAKE BUILDING
350 FRANK H. OGAWA PLAZA, FOURTH FLOOR
OAKLAND CALIFORNIA 94612-2006
(510) 451-6732