IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF ORRICK, HERRINGTON & SUTCLIFFE LLP
### FOR THE TWENTY-EIGHTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Orrick, Herrington & Sutcliffe LLP for the Twenty-Eighth Interim Period (the "Application").

## BACKGROUND

1.      Orrick, Herrington & Sutcliffe LLP ("Orrick") was retained as bankruptcy counsel to David T. Austern, future claimants' representative.  In the Application, Orrick seeks approval of fees totaling $2,834,348.75 and expenses totaling $436,062.97 for its services from January 1, 2008 through March 31, 2008 (the "Application Period").

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2008, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under

11 U.S.C. §330, Issued January 30, 1996 (the "U.S. Trustee Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served an initial report on Orrick, and received a response from Orrick, portions of which response are quoted herein.

## DISCUSSION

3.      In our initial report, we noted that during the estimation trial in January and March 2008, Orrick had in attendance anywhere from five to 12 professionals and paraprofessionals.  The total time spent at the trial, including non-working travel, was 544.90 hours for total fees of $309,160.50.   The time entries are listed on Exhibit "A."  Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  We understand the importance of this trial, however, not all of the attendees' roles were clear from the time entries.  Thus, we asked Orrick to explain why it was necessary for each attorney and paralegal to attend the trial, including their respective roles at the hearing.  Orrick provided a response which we have included as Response Exhibit "A."  We accept Orrick's response, except with respect to the time billed by attorneys, Annie Weiss and Catharine Zurbrugg.  Although both attorneys contributed significantly to preparation for the trial, the response does not establish the necessity of either attorney's attendance at the trial.  The response indicates Ms. Weiss assisted in preparation for the cross-examination of witnesses Rodricks, Lees, and Anderson, and attended the trial to provide real-time assistance during the testimony of those witnesses.  The response indicates Ms. Zurbrugg

assisted John Ansbro in connection with the cross-examination of witness Ory.  However,
the response also indicates attorneys Garret Rasmussen, John Pitts, Christopher O'Connell,
Antony Kim, and Joshua Cutler provided assistance and support at trial with respect to those
same witnesses.  Thus, we do not see the necessity of Ms. Weiss' or Ms. Zurbrugg's
attendance at the trial, and we recommend disallowance of both attorneys' time at trial, for
a reduction of $18,711.50 in fees.

4.      In our initial report, we noted the following time entry which appeared to include non-
working travel:

| | | | | |
|---|---|---|---|---|
| 1/20/08 | J. Cangialosi | 7.00 | 1,820.00 | Travel to Pittsburgh (2.0); organize war room (3.5); prepare work sets of materials to prepare for upcoming trial dates (1.5). |

Pursuant to Local Rule 2016-2(d)(viii): "Travel time during which no work is performed shall be
separately described and may be billed at no more than 50% of regular hourly rates."  Thus, we asked
Orrick whether the required 50% discount was applied to this time.  Orrick responded as follows:

>       The 2.0 hours billed by J. Cangialosi for travel time was non-working related travel
>       and should be reduced to 1.0 hour.  Mr. Cangialosi's hourly billing rate is $260 and
>       Orrick agrees to a fee reduction of $260.00.

We appreciate Orrick's response and recommend a reduction of $260.00 in fees.

5.      In our initial report, we noted the following time entry in which there is a discrepancy
between the total time billed and the time recorded in parentheses:

| | | | | |
|---|---|---|---|---|
| 02/26/08 | D. Fullem | 1.50 | 367.50 | Continue to work on response to fee auditor initial report with regarding to itemizing outside services (.5); confer with R. Wyron regarding certain outside service expense issue (.2); prepare e-mail to fee auditor regarding outside services (.2); review response (.1). |

The time recorded in parentheses totals only 1.0 hour for $245.00 in fees.  Thus, we asked Orrick

whether or not it agreed that a fee adjustment was warranted in this instance.  Orrick responded as

follows:

> The 1.50 hours billed by D. Fullem was incorrectly calculated in total hours and
> hours in parentheses and should be reduced to 1.0 hour.  Ms. Fullem's hourly billing
> rate is $245 and Orrick agrees to a fee reduction of $122.50.

We appreciate Orrick's response and recommend a reduction of $122.50 in expenses.

6.      In our initial report, we noted that included in Orrick's itemization of hotel expenses was a

charge of $56,251.33 which represented payment for a block of guest and conference rooms

for the estimation trial.  Thus, we asked Orrick for a copy of the itemized invoice for this

charge, which invoice we reviewed.  In addition, Orrick responded as follows:

> Omni Hotel banquet charges –  Attached hereto are copies of the detail to support
> each banquet charge listed...   We have become aware that the banquet charge dated
> January 16 in the amount of $4,930.15 is incorrect, and had been revised to reflect
> the correct total of $885.20, which was to account for a discrepancy in the number
> if DID phone/fax/computer lines for the war-rooms and conference rooms.  A credit
> was issued in the amount of $4,045, however it has not yet appeared on Orrick/ W.R.
> Grace invoices.  Orrick agrees to reduce its total expenses by $4,045.

We appreciate Orrick's response and recommend a reduction of $4,045.00 in expenses.

## CONCLUSION

7.      Thus, we recommend approval of $2,815,254.75 in fees ($2,834,348.75 minus $19,094.00)

and $432,017.97 in expenses ($436,062.97 minus $4,045.00) for Orrick's services for the

Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**


By:_____
    Warren H. Smith
    Texas State Bar No. 18757050

325 N. St. Paul, Suite 1250
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 18th day of September, 2008.


_____
    Warren H. Smith

## SERVICE LIST
### Notice Parties

**The Applicant**
Roger Frankel
Richard H. Wyron
ORRICK, HERRINGTON & SUTCLIFFE
LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
James R. O'Neill
Pachulski, Stang, Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

## RESPONSE EXHIBIT "A"

Orrick has reviewed Exhibit A attached to the Report and responds below with the requested information regarding the role of each professional who attended the estimation trial and the necessity for attendance:

a.      John Ansbro, a litigation partner, has worked closely with Mr. Mullady in the estimation litigation.  Mr. Ansbro handled motion arguments and cross-examined certain expert witnesses, and has assisted Mr. Mullady with strategy and preparation for Mr. Mullady's arguments and witness examinations.  Mr. Ansbro worked directly with many of the FCR's expert witnesses and was responsible for supervising the associate members of the trial team in their work preparing demonstrative exhibits, motion papers and other pleadings, and witness examination outlines.  Mr. Ansbro led various negotiations with Debtors' counsel with respect to stipulations on demonstrative exhibits, deposition testimony and objections thereto submitted to the Court, and the Debtors' evidence summaries.  Given his leading role in the litigation, Mr. Ansbro attended the trial as issues in which he was involved arose in every trial session.

b.      James Cangialosi is a senior litigation paralegal and was the only Orrick paralegal who attended the estimation hearings.  Mr. Cangialosi was responsible for supervising the organization and maintenance of the "war room" and for courtroom logistics.  He kept track of all exhibits utilized by the parties, assisted the FCR litigation team in preparation of demonstratives, exhibit binders, witness preparation materials, research and updated hearing materials, and assisted the litigation team generally with other needs throughout the hearings.

c.      Joshua Cutler is an associate in the litigation group.  He participated in pre-hearing depositions of expert and fact witnesses who would later be called at the PI estimation hearing.  Mr. Cutler was also responsible for pre-hearing research and preparation for cross-examination concerning several of the expert witnesses presented by W.R. Grace.  Mr. Cutler attended trial on January 16 and 22 to assist with the cross-examinations of Dr. Rodricks, Dr. Henry and Dr. Weill, providing real-time feedback to the trial team on their direct examinations based on his pre-hearing research.  On March 24 through 26, Mr. Cutler attended the portion of the hearing pertaining to Dr. Lees' and Dr. Moolgavkar's analyses and their synthesis in Dr. Anderson's opinions.  Mr. Cutler had primary responsibility for pre-trial research and analyses concerning Dr. Moolgavkar's report and opinions, and was one of the researchers and drafters of the pre-hearing Daubert motion concerning Dr. Moolgavkar's and Dr. Anderson's analyses and opinions.  At the hearing, Mr. Cutler was responsible for providing real-time feedback to the trial team on the testimony of Dr. Lees, Dr. Moolgavkar and Dr. Anderson based on his prior research and analyses, and his familiarity with issues relating to the pending Daubert motion, and assisting in cross-examination of those witnesses.

d.      Debra Felder is the senior bankruptcy associate involved in representing

the FCR in these cases generally and the only bankruptcy associate involved in the PI estimation hearing. Ms. Felder participated telephonically in the PI estimation hearings from her office in Washington, DC in order to, among other things, provide support to Roger Frankel on bankruptcy issues and provide bankruptcy support to the litigation team during the trial. Ms. Felder also reported any significant events during the hearings to the FCR and to the other attorneys in Washington, DC involved in these cases. In connection with the hearings on March 24, 25 and 26, Ms. Felder participated telephonically during portions of the testimony of the Debtors' key medical and risk assessment experts, in light of her direct involvement in working with the FCR's experts on these issues. That testimony is disputed by the FCR's key medical expert, Victor Roggli, M.D. Ms. Felder, along with members of the litigation team, was responsible for preparing Dr. Roggli for his testimony, which included responding to the testimony provided by the Debtors' medical and risk assessment experts.

e.      Roger Frankel is the senior bankruptcy partner representing the FCR in these cases; he attended the estimation hearings in January and March 2008 to coordinate the strategic issues involved in the estimation litigation, particularly in light of the impact those issues have upon the plan of reorganization process and the overall resolution of these cases.

f.      Antony Kim is a senior associate in the litigation group and is the only Orrick associate to have attended all estimation hearings in person. Mr. Kim's work on behalf of the FCR included assisting in the preparation of, and directly supporting, the FCR's opening statements, Daubert arguments, and other motions practice; assisting in the preparation for the FCR's cross-examinations of the Debtors' experts on epidemiology (Dr. Howard Ory), risk assessment (Dr. Joseph Rodricks and Dr. Elizabeth Anderson), industrial hygiene (Dr. Peter Lees), and claims estimation (Dr. Thomas Florence); assisting in the identification and preparation of cross-examination, evidentiary exhibits and materials for these witnesses; and identifying and tracking key areas in the testimony of the Debtors' experts for rebuttal by the FCR's expert witnesses.

g.      Raymond Mullady is the lead litigation partner in charge of the estimation trial, and handled all matters at the estimation hearing relating to presentation of the FCR's opening statement and the FCR's arguments in opposition to the Debtors' motion to exclude the FCR's expert witnesses under Daubert. Mr. Mullady examined and cross-examined numerous witnesses, coordinated all other aspects of the litigation, and briefed and argued motions in limine as well as other motions.

h.      Christopher O'Connell is an associate in the litigation group who worked extensively with Ray Mullady, John Ansbro, and the FCR's trial consultants to develop graphic exhibits for use at the PI estimation hearing. Mr. O'Connell also participated telephonically in the PI estimation hearing from his office in Washington, DC to assist in preparing cross-examination questions for the Debtors' key medical and risk assessment experts, Peter Lees, Suresh Moolgavkar and Elizabeth Anderson, and to coordinate preparation and modification of the trial graphics as appropriate.

i.      Garret Rasmussen is an experienced litigation partner who was responsible for cross examining Dr. Lees and Dr. Rodricks, and preparing the testimony of two of the FCR's expert witnesses, Professor Stallard and Dr. Roggli.  He also deposed Elizabeth Anderson and prepared much of her cross-examination.  He was present in court for the direct testimony of Dr. Lees, Dr. Rodricks and Ms. Anderson, and attended trial when Dr. Moolgavkar and Dr. Ory were testifying, as he was working with Professor Stallard and Dr. Roggli as they prepared testimony to rebut the testimony of those witnesses and other Grace experts.

j.      John Pitts is an associate in the litigation group and was involved in the estimation hearings for the purpose of preparing the cross-examination of W.R Grace's industrial hygiene expert, Dr. Peter Lees.  Mr. Pitts also assisted in preparation of cross-examination questions for the Debtors' experts Dr. Moolgavkar and Dr. Anderson.  Mr. Pitts attended the estimation hearing on March 24, 25, and 26 to assist Mr. Rasmussen with the cross-examination of Dr. Lees, and to assist the trial team with the cross-examination of Dr. Moolgavkar and Dr. Anderson based on Dr. Lees' testimony.

k.      Emily Somers is a litigation associate who participated telephonically in portions of the estimation hearing from her office in Washington, DC in order to provide research and support to the litigation team, in part because of her work in gathering, submitting, and managing the FCR exhibits and in preparing material for the Daubert briefs and arguments.  With regard to the January 15 hearing date, Ms. Somers was a member of the working group that was responsible for preparing for Dr. Anderson's cross-examination, and Ms. Somers attended (telephonically) the examinations of Drs. Ory and Rodricks as their reports and testimony were directly relevant to the testimony and methodology of Dr. Anderson.  Further, Ms. Somers assisted Garret Rasmussen in preparation for the cross-examination of Dr. Rodricks.  With regard to the March 24 hearing date, Ms. Somers was a member of the team preparing for the cross-examination of Peter Lees and attended (telephonically) the portion of the hearing in which he testified in order to provide factual and documentary assistance during the examination, as necessary.