# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF CAPLIN & DRYSDALE,
## CHARTERED, FOR THE TWENTY-EIGHTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Caplin & Drysdale, Chartered, for the Twenty-Eighth Interim Period (the "Application").

## BACKGROUND

1. Caplin & Drysdale, Chartered ("Caplin & Drysdale"), was retained as national counsel to the Official Committee of Asbestos Personal Injury Claimants. In the Application, Caplin & Drysdale seeks approval of fees totaling $2,189,908.50 and expenses totaling $363,729.65 for its services from January 1, 2008 through March 31, 2008 (the "Application Period").

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2008, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330, Issued

January 30, 1996 (the "U.S. Trustee Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served an initial report on Caplin & Drysdale, and received a response from Caplin & Drysdale, portions of which response are quoted herein.

## DISCUSSION

3. In our initial report, we noted the following time entries which appeared to include non-working travel:

| 01/13/08 | JPW | 475.00 | 3.00 | 1,425.00 | ...; travel to Pittsburgh, PA (3.0); ... |
|---|---|---|---|---|---|
| 03/23/08 | JPW | 475.00 | 2.00 | 950.00 | ...; travel to Pittsburgh, PA (2.0) |
| 03/26/08 | JPW | 475.00 | 3.50 | 1,662.50 | ...; travel to Washington, DC (3.5) |
| 03/30/08 | BSB | 630.00 | 4.50 | 2,835.00 | Travel to Pittsburgh (4.5); ... |
|   |   |   | 13.00 | 6,872.50 |   |

Pursuant to Local Rule 2016-2(d)(viii): "Travel time during which no work is performed shall be separately described and may be billed at no more than 50% of regular hourly rates." Thus, we asked Caplin & Drysdale whether the required 50% discount had been applied to these time entries. Caplin & Drysdale responded as follows:

> You inquire in paragraph 3 of the Initial Report regarding non-working travel time entries. These services should have been billed at one-half of each attorney's respective hourly rate. Therefore, Caplin & Drysdale will accept a voluntary reduction regarding these time entries.

We appreciate Caplin & Drysdale's response and recommend a reduction of $3,436.25 in fees.

4. In our initial report, we noted that on a number of occasions, Paralegal SZE, billing at an hourly rate of $195.00, appeared to perform tasks of a clerical nature. The total time spent was

39.90 hours, and total fees billed were $7,780.50. The time entries are as follows:

| 01/02/08 | SZE | 195.00 | 1.00 | 195.00 | Assist D. Smith in updating opposing counsel's trial exhibit spreadsheet with D&D attorney comments |
|---|---|---|---|---|---|
| 01/07/08 | SZE | 195.00 | 0.40 | 78.00 | Assist D. Smith in creating exhibit cover pages and converting to PDF format |
| 01/09/08 | SZE | 195.00 | 7.50 | 1,462.50 | Flag exhibits, create new exhibit list for cross-examination, index, assign new numbers, create labels and tab documents; create boxes for four witnesses obtaining cross-examination materials, pull originals, copy and quality check; copy and quality check exhibits for attorney opening statement; organize original exhibits and labeling all boxes; create box for D. Smith's trial materials and war room supplies for D. Smith |
| 01/10/08 | SZE | 195.00 | 5.00 | 975.00 | Create labels for exhibits; organize witness cross-examination materials into redwells, label each redwell, pull original exhibits and copy per original, and quality check for D. Smith |
| 01/11/08 | SZE | 195.00 | 6.50 | 1,267.50 | Pull original exhibits for witness cross-examinations, copy 11 times, organize into redwells, create labels for each redwell, and quality check; organize trial boxes with supplies, create labels for each box and quality check all boxes in order to ensure all supplies are shipped to trial for D. Smith |
| 01/18/08 | SZE | 195.00 | 18.50 | 3,607.50 | Assist S. Taylor in inserting data regarding Claimants Radiograph forms into Excel spreadsheet and quality check each document |
| 02/01/08 | SZE | 195.00 | 1.00 | 195.00 | (1/23/08) Assist S. Taylor in making labels for pretrial conference exhibits |
| | | | 39.90 | 7,780.50 | |

We have been consistent in recommending that clerical tasks be billed at no more than $80.00 per

hour. In *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 855 n.34 (3rd Cir. 1994), the court stated that "the statute [11 U.S.C. § 330] plainly specifies that the type of service performed by a paralegal (including whether it is clerical) affects the rate of compensation, not compensability vel non." Thus, we asked Caplin & Drysdale to explain why this work should be compensated at the paralegal's full hourly rate. Caplin & Drysdale responded as follows:

> You inquire in paragraph 4 of the initial report regarding paralegal services provided by Caplin & Drysdale paralegal Sarah Emamjomeh. The referenced services were not clerical in nature, but rather required that Ms. Emamjomeh review exhibits to prepare spreadsheets and witness files for witness-cross examination. This task required an understanding of each exhibit, the ability to cross-reference exhibits with witness sheets, and other tasks requiring legal training and skills. The services rendered by Ms. Emamjomeh could therefore not have been performed by members of the clerical staff and should be compensated at the paralegal's normal hourly rate.

We understand Caplin & Drysdale's response and acknowledge that a portion of this work required legal skill. Nevertheless, some of the time entries include tasks such as making photocopies and labels and organizing supplies, which are clearly clerical. These time entries are listed below:

| 01/09/08 | SZE | 195.00 | 7.50 | 1,462.50 | Flag exhibits, create new exhibit list for cross-examination, index, assign new numbers, create labels and tab documents; create boxes for four witnesses obtaining cross-examination materials, pull originals, copy and quality check; copy and quality check exhibits for attorney opening statement; organize original exhibits and labeling all boxes; create box for D. Smith's trial materials and war room supplies for D. Smith |
| --- | --- | --- | --- | --- | --- |
| 01/10/08 | SZE | 195.00 | 5.00 | 975.00 | Create labels for exhibits; organize witness cross-examination materials into redwells, label each redwell, pull original exhibits and copy per original, and quality check for D. Smith |

| 01/11/08 | SZE | 195.00 | 6.50 | 1,267.50 | Pull original exhibits for witness cross-examinations, copy 11 times, organize into redwells, create labels for each redwell, and quality check; organize trial boxes with supplies, create labels for each box and quality check all boxes in order to ensure all supplies are shipped to trial for D. Smith |
| --- | --- | --- | --- | --- | --- |
| 02/01/08 | SZE | 195.00 | 1.00 | 195.00 | (1/23/08) Assist S. Taylor in making labels for pretrial conference exhibits |
|  |  |  | 20.0 | $3,900.00 |  |

Because these time entries fail to delineate the amount of time spent on clerical tasks as opposed to exhibit preparation, we must assume in this instance that at least 50% of the time was spent on clerical work. Thus, we recommend that the hourly rate for one-half of this time be reduced to $80.00, for a reduction of $1,150.00 in fees.

     5.       In our initial report, we noted that nine Caplin & Drysdale professionals were in attendance on one or more days of the estimation hearing. The total time spent, including non-working travel, was 609.90 hours, for a total of $244,346.40 in fees. The time entries are listed on Exhibit "A." Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Thus, we asked Caplin & Drysdale to explain why it was necessary for each Caplin & Drysdale professional to be in attendance, as well as each professional's role at the hearing. Caplin & Drysdale provided the following response:

> You inquire in paragraph 5 of the Initial Report regarding the staffing of the Grace Estimation Hearing ("Estimation Hearing"). The Estimation Hearing required that the Court determine the extent of the Debtors multi-billion dollar asbestos liabilities. A multitude of issues were addressed at that Hearing, requiring the expertise and participation of a team that consisted of nine Caplin & Drysdale attorneys and paralegals. The services provided by the members of this team are as

follows:

Elihu Inselbuch is the Committee's lead counsel, primary negotiator and the overall supervisor of these bankruptcy cases, and attended the Estimation Hearing in that capacity.

Nathan D. Finch was the Committee's lead attorney at the Estimation Hearing. Therefore, Mr. Finch had ultimate responsibility for organizing the presentation of the Committee's case including overall trial strategy, the selection, preparation, and examination and cross-examination of witnesses and the selection and entry of the Committee's evidence. Mr. Finch also was responsible for the Committee's response to the Debtor's witnesses and evidence. For these reasons, Mr. Finch was present and participating on each day of the Estimation Hearing.

Peter Van N. Lockwood is a bankruptcy expert, and the Committee's lead bankruptcy counsel. He appeared during the first two days of the Estimation Hearing to argue bankruptcy issues during the Committee's opening arguments.

Walter B. Slocombe was the Caplin & Drysdale attorney responsible for the preparation and editing of all legal briefs prepared regarding and during the Estimation Hearing. Mr. Slocombe is also an estimation and risk assessment expert and took the lead in analyzing and preparing evidence regarding such issues. In addition, Mr. Slocombe worked with Mr. Wehner (see below) regarding expert reports and other materials relating to "Daubert" issues.

Bernard S. Bailor is the Caplin & Drysdale attorney principally responsible for the testimony of medical experts. He appeared to present such witnesses and their reports and to cross-examine the Debtors' experts.

James P. Wehner had primary responsibility for preparation of pre-trial "Daubert" briefs and, at the Estimation Hearing, was responsible along with Mr. Finch for the presentation of the Committees' expert testimony regarding industrial hygiene testimony and cross-examination of the Debtors' experts.

Adam Van Grack, a Caplin & Drysdale associate, assisted the senior lawyers named above in all aspects of the Estimation Hearing. We note that only one associate, Mr. Van Grack, was assigned to this extremely complicated trial, to assist no fewer than four senior attorneys, and believe that this decision evidences Caplin & Drysdale's intention to staff the Estimation Hearing in a manner that both protected the Committee's interests and was mindful of the costs to the Debtors' estates.

David Smith is Caplin & Drysdale's lead trial paralegal. As such, Mr. Smith

follows:

Elihu Inselbuch is the Committee's lead counsel, primary negotiator and the overall supervisor of these bankruptcy cases, and attended the Estimation Hearing in that capacity.

Nathan D. Finch was the Committee's lead attorney at the Estimation Hearing. Therefore, Mr. Finch had ultimate responsibility for organizing the presentation of the Committee's case including overall trial strategy, the selection, preparation, and examination and cross-examination of witnesses and the selection and entry of the Committee's evidence. Mr. Finch also was responsible for the Committee's response to the Debtor's witnesses and evidence. For these reasons, Mr. Finch was present and participating on each day of the Estimation Hearing.

Peter Van N. Lockwood is a bankruptcy expert, and the Committee's lead bankruptcy counsel. He appeared during the first two days of the Estimation Hearing to argue bankruptcy issues during the Committee's opening arguments.

Walter B. Slocombe was the Caplin & Drysdale attorney responsible for the preparation and editing of all legal briefs prepared regarding and during the Estimation Hearing. Mr. Slocombe is also an estimation and risk assessment expert and took the lead in analyzing and preparing evidence regarding such issues. In addition, Mr. Slocombe worked with Mr. Wehner (see below) regarding expert reports and other materials relating to "Daubert" issues.

Bernard S. Bailor is the Caplin & Drysdale attorney principally responsible for the testimony of medical experts. He appeared to present such witnesses and their reports and to cross-examine the Debtors' experts.

James P. Wehner had primary responsibility for preparation of pre-trial "Daubert" briefs and, at the Estimation Hearing, was responsible along with Mr. Finch for the presentation of the Committees' expert testimony regarding industrial hygiene testimony and cross-examination of the Debtors' experts.

Adam Van Grack, a Caplin & Drysdale associate, assisted the senior lawyers named above in all aspects of the Estimation Hearing. We note that only one associate, Mr. Van Grack, was assigned to this extremely complicated trial, to assist no fewer than four senior attorneys, and believe that this decision evidences Caplin & Drysdale's intention to staff the Estimation Hearing in a manner that both protected the Committee's interests and was mindful of the costs to the Debtors' estates.

David Smith is Caplin & Drysdale's lead trial paralegal. As such, Mr. Smith

> was responsible for assisting attorneys in preparing for arguments and examinations of witnesses; attending the hearing to assist with trial exhibits and keep track of admitted exhibits; compiling and preparing the specific trial exhibits to be used with each witness; coordinating the logistics for the war room and trial materials. Mr. Smith's duties required legal training and experience and could not have been performed by Caplin & Drysdale's clerical staff.
>
> Marissa Fanone assisted David Smith and Caplin & Drysdale attorneys in all aspects of trial and witness preparation (see description of David Smith's services, above). Caplin & Drysdale assigned only two paralegals to assist in the Estimation Hearing in an effort to conserve estate assets to the greatest possible extent.

We accept Caplin & Drysdale's response and have no objection to these fees.

6. In our initial report, we noted that on February 12, 2008, Timekeeper AJS, spent one hour for $255.00 in fees on work described as "Asbestos Lunch." Thus, we asked Caplin & Drysdale to explain why the estate should compensate these fees. Caplin & Drysdale responded as follows:

> You inquire in paragraph 6 of the Initial Report regarding a charge by Caplin & Drysdale attorney Andrew Sackett for attendance at what was described in the time entry as an "Asbestos Lunch." Mr. Sackett was referring to a luncheon meeting, the subject of which was the Estimation Hearing. Caplin & Drysdale apologizes for the ambiguous time entry.

We accept Caplin & Drysdale's response and have no objection to these fees.

7. In our initial report, we noted the following meal charges for which more information was needed:

|    |    |    |    |
|----|----|----|----|
| a. | ALV; Travel expenses to Pittsburgh for estimation hearing on 1/13-23 for meals | 01/30/2008 | $274.07 |
| b. | EI; Travel expenses to Pittsburgh for estimation hearing on 1/14-16 and 22-23 for meals | 01/30/2008 | $229.52 |
| c. | JPW; Meals for JPW, EI, NDF, WBS, PVNL, ALV, M. Hurford while in Pittsburgh for trial on 1/11-15 (meals also charged as a firm expense) | 02/07/2008 | $594.21 |

| d. | High Noon; NDF and EI client luncheon on 2/22 | 02/25/2008 | $159.08 |
|---|---|---|---|
| e. | Lawsons Gourmet; NDF and EI breakfast meeting on 2/22 | 02/25/2008 | $57.13 |
| f. | Lawsons Gourmet; EI and JPW breakfast meeting on 2/21 | 02/25/2008 | $79.09 |
| g. | Whole Foods; EI/JPW luncheon on 2/20 | 03/17/2008 | $470.24 |
| h. | ALV; Travel expenses to Pittsburgh for estimation hearing on 3/22-27 for meals w/ DBS, SKL, JPW, MH, WBS | 03/31/2008 | $465.83 |
| i. | NDF; Preparation and participation in strategy meetings w/EI on 2/20-21 for dinner on 2/20 w/ EI and on 2/21 w/ EI and PVNL | 02/27/2008 | $589.53 |
| j. | EI; Conference meal re negotiations on 2/28 w/ Mark Peterson on 2/28 | 03/05/2008 | $100.00 |
| k. | High Noon; NDF luncheon on 3/3 | 03/06/2008 | $87.58 |
| l. | High Noon; NDF client luncheon on 1/31 | 02/05/2008 | $89.69 |
| m. | Dinner expense for MAF while on travel to Pittsburgh for trial on 1/12-16 | 02/07/2008 | $60.16 |

It appears to us that one can dine satisfactorily in most locales for $25 for breakfast, $35 for lunch, and $55 for dinner.[1] In response to our inquiry, Caplin & Drysdale provided additional information concerning these charges, which information we have included as Response Exhibit "A." We accept Caplin & Drysdale's response, except with respect to the following charges:

$229.52 for dinner for four    Reduce by $4.52

$300.00 for lunch for five    Reduce by $125.00

$470.20 for lunch for five    Reduce by $295.20

$257.33 for dinner for two    Reduce by $147.33

$332.20 for dinner for three    Reduce by $167.20

---

[1]Or in New York and London for $35 for breakfast, $45 for lunch, and $65 for dinner.

In addition, we note that the charges comprising item h. total only $314.64, rather than the $465.83 which was billed on the Application. We, therefore, recommend an additional reduction of $151.19 to correct this error. Thus, for all items in this paragraph, we recommend a reduction of $890.44 in expenses.

  8.  In our initial report, we noted the following ground transportation charges for which more information was needed:

| | |
|---|---|
| BostonCoach car service for NDF t/f Bethesda on 11/19 and 11/26 | $215.28 |
| BostonCoach car service for late night cabs to Baltimore, MD for Suzanne Lurie on 12/6, 12/7, 12/20 | $808.15 |
| BostonCoach car service for NDF round trip Pittsburgh 121-23 | $3,026.54 |
| BostonCoach car service for NDF from Bethesda, MD to Old Ebbitt Grill in DC on 3/4 | $108.60 |
| BostonCoach car service for NDF to train station on 1/28 | $108.60 |
| BostonCoach car service for NDF round trip Pittsburgh on 1/16-17 | $2,138.20 |
| BostonCoach Cab home for Denise Tolbert on 1/6 | $217.50 |
| BostonCoach car service for NDF round trip to Pittsburgh, PA on 1/13 | $1,699.50 |

In response to our inquiry, Caplin & Drysdale provided additional information concerning these charges, which information we have included as Response Exhibit "B." We accept Caplin & Drysdale's response with respect to the charges for $3,026.54, $2,138.20, and $1,699.50. These charges are each comprised of multiple car service charges in which two to four Caplin & Drysdale professionals shared cars from Washington, DC, to Pittsburgh and back. Based upon our research, it appears to us that the cost of refundable coach air fares for these professionals would have exceeded the cost of the car service in these instances. With respect to the remaining charges, it does not appear to us that Caplin & Drysdale has carried its burden of demonstrating the necessity or

economy of a car service. Timekeeper NDF had two charges of $107.64, both for seven-mile trips from home to the train station. In addition, he had two charges of $108.60, both of which were for trips just under six miles, one to the train station and one to the site of a deposition. In each instance, Caplin & Drysdale responded that a taxi was not reliable for timely arrival. However, it does not appear to us that Caplin & Drysdale has demonstrated that Washington, DC, taxis are inherently unreliable or that car services are inherently more reliable than taxis, particularly if one arranges for taxi pick-up ahead of time. Nor does the response explain why Timekeeper NDF could not have taken the train or his usual method of commuting for these short trips. Taxi fares for each of these four trips would have cost less than $30.00, including tip, for a total of $120.00. Thus, for the four trips in question, we recommend a reduction of $312.48. SL, a secretary, had three overtime car service charges from Caplin & Drysdale's Washington, DC, offices to her home in the Baltimore area, at a cost of $182.30, $389.10, and $236.75. DAT had one overtime car service charge from Caplin & Drysdale's Washington, DC, offices to her home in Kettering, Maryland, at a cost of $217.50. With respect to each of these late night car service charges, Caplin & Drysdale has stated either that cabs would not make the trip or were unavailable at that hour of the night. There are dozens of cab companies in Washington, DC, operating 24/7, so it seems that with some effort a cab company could have been found to provide transportation for these trips. It does not appear to us that Caplin & Drysdale has adequately demonstrated that it had no alternative but to use a car service in these instances. In any case, it does not appear to us that the added cost or difficulties in arranging overtime transportation for support staff who live an hour or more away from the office should be borne by the estate. The cab fares for SL's 33-mile trip would have cost less than $75.00, including tip, while her two 48-mile trips, if taken by taxi, would have cost less than $105.00 each, including

wrg FR Caplin 28Q 1-3.08.wpd

tip. DAT's 22-mile trip would have cost less than $50.00. Thus, we recommend that reimbursement for SL's trips be reduced by $523.15, and that reimbursement for DAT's trip be reduced by $167.50. Thus, for all items in this paragraph, we recommend a reduction of $1,003.13 in expenses.

## CONCLUSION

9.   Thus, we recommend approval of $2,185,322.25 in fees ($2,189,908.50 minus $4,586.25) and $361,836.08 in expenses ($363,729.65 minus $1,893.57) for Caplin & Drysdale's services for the Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
　　　Warren H. Smith
　　　Texas State Bar No. 18757050

325 N. St. Paul, Suite 1250
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 19th day of September, 2008.

_____
Warren H. Smith

# SERVICE LIST
<u>Notice Parties</u>

**The Applicant**
Elihu Inselbuch
Rita Tobin
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
David M. Bernick
Janet S. Baer
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
James E. O'Neill
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801

**Counsel to the Official Committee of Personal Injury Claimants**
Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Lockbox 35, Room 2207
Wilmington, DE 19801