IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | | Hearing Date: September 29, 2008 at 10:00 a.m. |

**DEBTORS' MOTION TO STRIKE THE BANK LENDER GROUP'S SUR-REPLY OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE A SUR-REPLY IN SUPPORT OF DEBTORS' OBJECTION TO THE UNSECURED CLAIMS ASSERTED UNDER THE CREDIT AGREEMENTS DATED AS OF MAY 14, 1998 AND MAY 5, 1999**

The above-captioned debtors (the "Debtors") hereby move to strike the Lenders'

sur-reply or, in the alternative, to file a sur-reply in support of the Debtors' Objection to the

Lenders' Claims and respectfully submit as follows:

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Debtors' Motion To Strike The Lenders' Sur-Reply Or, In The Alternative, Motion For Leave To File A Sur-Reply

1.      The Lenders' filing of a sur-reply is yet another example of the Lenders' willingness to simply disregard their prior agreements.   The Lenders first reneged on their agreement to support the Debtors' plan of reorganization, and now they have reneged on their agreement to abide by the Stipulated Scheduling Order.  In that Scheduling Order, the Lenders expressly agreed that "any reply, sur-reply or Response relating to the Objection shall be filed no later than September 5, 2008 by 4:00 p.m."  In plain violation of this agreement, and without even consulting the Debtors, on September 15, 2008, the Lenders filed a sur-reply in support of their demand for postpetition interest at the contract default rate.

2.      There is no good reason why the Lenders had to file a sur-reply.  Their sur-reply does not point to any newly discovered facts or brand new case law.  Instead, the sur-reply simply consists of legal arguments concerning a five-year old decision from the Third Circuit.  These arguments easily could have been, and should have been, raised at the hearing on September 29, 2008.  Accordingly, Debtors respectfully submit that the Court should strike the Lenders' sur-reply pursuant to the parties' Stipulated Scheduling Order.

3.      In the event that the Court is inclined to accept the Lenders' sur-reply, Debtors respectfully seek leave to file their own short sur-reply.  That sur-reply is set forth in the paragraphs that follow:

**Debtors' Sur-Reply**

4.    The Lenders accuse the Debtors of "misstate[ing] the holding of the Third Circuit Court of Appeals in <u>Solow v. PPI Enter. (U.S.), Inc. (In re PPI Enter. (U.S.), Inc.)</u>, 324 F.3d 197 (3d Cir. 2003).[2]  Nothing could be further from the truth.  In their Trial Brief, the Debtors cited <u>In re PPI Enter. (U.S.), Inc.</u> for the proposition that "a claim is only impaired under section 1124 of the Bankruptcy Code if a plan of reorganization itself, not some provision of the Bankruptcy Code, alters the alleged rights of a claimant." (Debtors' Tr. Br. ¶ 49)  The Lenders cannot seriously contend that this is a misstatement of the holding in <u>In re PPI Enters. (U.S.), Inc.</u>  The express holding of <u>In re PPI Enters. (U.S.), Inc.</u> is that "where § 502(b)(6) alters a creditor's nonbankruptcy claim, there is no alteration of the claimant's legal, equitable, and contractual rights for the purposes of impairment under § 1124(1)." <u>Id</u>. at 204.  To emphasize the point, the Third Circuit also stated: "A creditor's claim outside of bankruptcy is not the relevant barometer for impairment; [the court] must examine whether the plan itself is a source of limitation on a creditor's legal, equitable, or contractual rights." <u>Id</u>. at 204.  Thus, the holding of <u>In re PPI Enters. (U.S.), Inc.</u> is exactly what the Debtors stated in their Trial Brief -- "a claim is only impaired under section 1124 of the Bankruptcy Code if a plan of reorganization itself, not some provision of the Bankruptcy Code, alters the alleged rights of a claimant."

5.    The Lenders' real complaint is not that the Debtors misstated the holding of <u>In re PPI Enters. (U.S.), Inc.</u>, but rather that this holding should be limited by dicta elsewhere

---

[2]    The Lenders purport to make much of the fact that the Debtors cited <u>In re PPI Enter., Inc.</u> "for the first time" in their Trial Brief. (Lenders' Sur-Reply ¶ 1)  What the Lenders neglect to mention is that the Debtors cited <u>In re PPI Enter., Inc.</u> in response to the Lenders' contention that they were "impaired" under <u>In re Ace-Texas, Inc.</u>, 217 B.R. 719, 727 (Bankr. D. Del. 1998).  As the Debtors demonstrated, and as the Lenders implicitly concede, <u>Ace-Texas</u> is no longer the governing standard for determining whether a claim is impaired under section 1124 of the Bankruptcy Code.  Instead, that analysis is now governed by the <u>In re PPI Enter., Inc.</u>

DOCS_DE:140684.1

in the Third Circuit's decision. In dicta, the Third Circuit seems to concur with the Bankruptcy Court's finding that, in a solvent debtor case, a claim will not qualify as unimpaired under section 1124(1) unless the claim is also paid postpetition interest. Id. at 207. There are two problems with the Lenders' position. First, this dicta is inconsistent with the express holding of In re PPI Enters. (U.S.), Inc. And second, even if this dicta is considered part of the Court's holding, it is not in any way inconsistent with the Debtors' position in this case.

6.    There is no question that, under the express holding of In re PPI Enters. (U.S.), Inc., the Lenders are not impaired under section 1124(1). The Lenders claim that they will be impaired if they do not receive postpetition interest at the contract default rate. But just as in In re PPI Enters. (U.S.), Inc., this alleged impairment derives solely from operation of section 502(b) of the Bankruptcy Code. The only difference between this case and In re PPI Enters. (U.S.), Inc. is the applicable subsection of section 502(b). In In re PPI Enters. (U.S.), Inc., the impairment resulted from operation of section 502(b)(6), and in this case the alleged impairment results from operation of section 502(b)(2), which prohibits the payment of "unmatured interest." The Lenders do not, and credibly cannot, argue that In re PPI Enters. (U.S.), Inc. applies only to impairment by one subsection of section 502(b) but not to other subsections. Other courts certainly have not parsed so finely the Third Circuit's holding. See, e.g., In re Mirant Corp., No. 03-46590-DML-11, 2005 Bankr. LEXIS 909, at *15 (Bankr. N.D. Tex. May 24, 2005) ("If the 'impairment' asserted is a consequence of the proper operation of the statute, it is not an impairment entitling the affected class to a vote.").

7.    In In re Coram Healthcare Corp. 315 B.R. 321 (Bankr. D. Del. 2004), this Court specifically relied upon In re PPI Enters. (U.S.), Inc. in concluding that a proposed plan erroneously classified unsecured creditors' claims as impaired when the plan provided for

4

payment in full to such creditors plus post-petition interest at the federal judgment rate or such other rate determined by the court. Id. at 351. The court, after citing to In re PPI Enters. (U.S.), Inc., stated that "[i]t is not the Equity Committee's Plan which limits the rights of the class CHC 3 and C 3 creditors. Instead, if their rights are altered at all, it is because of the Code and decisional law under the Code." Id.

8.    The dicta cited by the Lenders -- suggesting that the failure to pay post-petition interest would leave a claim impaired -- would seem to be at odds with the Third Circuit's distinction between plan impairment and statutory impairment. As noted above, the prohibition on postpetition interest derives from the express language of section 502(b)(2) of the Bankruptcy Code. This is a classic example of statutory impairment which, under a strict reading of In re PPI Enters. (U.S.), Inc., is no impairment at all. Id. at 204 ("A plan which leaves a claimant subject to other applicable provisions of the Bankruptcy Code does no more to alter a claimant's legal rights than does a plan which leaves a claimant vulnerable to a given state's usury laws or to federal environmental laws."). The Lenders do not even address, let alone attempt to explain, the tension between the dicta they cite and the Third Circuit's express holding. Needless to say, if they cannot be reconciled, the express holding controls. [CITE]

9.    But even assuming that the dicta cited by the Lenders somehow limits the holding of In re PPI Enters. (U.S.), Inc., the fact remains that the Third Circuit's decision still does not support the Lenders' contention that they are impaired by virtue of the fact that they will not receive contractual default interest. The language on which the Lenders rely states only that a cash payment equal to the allowed amount of a claim, but without postpetition interest, "could not qualify for nonimpairment under § 1124(1) because the failure to pay postpetition interest does not leave unaltered the contractual or legal rights of the claim." Id. at 207. Thus, at

5

most, In re PPI Enters. (U.S.), Inc. stands for the proposition that a claim must receive postpetition interest to qualify as unimpaired. Nothing in that opinion even remotely suggests that the postpetition interest must be paid at the contractual default rate.

10. To the contrary, the decision in In re PPI Enters. (U.S.), Inc. seems to undermine the Lenders' contention that they are somehow impaired by the nonpayment of contractual default interest. It is undisputed that the Lenders' only basis for demanding contractual default interest is that such interest arguably would be owed under the two Credit Agreements outside the bankruptcy context. But as the Third Circuit made clear, "a creditor's claim outside of bankruptcy is not the relevant barometer for impairment." Id. at 204. Instead, "a creditor's rights must be ascertained with regard to applicable statutes ..." Id. Here, there is nothing in the Bankruptcy Code or any other statute that entitles the Lenders to contractual default interest. Thus, far from compelling the payment of postpetition interest at the contractual default rate, In re PPI Enters. (U.S.), Inc. would seem to suggest that such interest is not required to render a claim unimpaired.

11. Here, the plan of reorganization contemplated by the Proposed Asbestos Settlement will, consistent with the dicta in In re PPI Enters. (U.S.), Inc., pay the Lenders postpetition interest. In fact, it will pay them postpetition interest at a rate higher than the federal judgment rate and higher than the contract rate. If the Lenders want to argue that they nevertheless will still be impaired, they will not find any support for their argument in In re PPI Enters. (U.S.), Inc.

6

Dated: September 19, 2008

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore L. Freedman
Eric F. Leon
153 East 53rd Street
New York, New York 10022
(212) 446-4800

and

PACHULSKI, STANG, ZIEHL, & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for Debtors and Debtors in Possession

7