## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re** | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.,** *et al.*[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | **Hearing Date: October 27, 2008 at 9:00 a.m. (EDT)** |
| | ) | **Objections Due: October 17, 2008 at 4:00 p.m. (EDT)** |

## MOTION OF THE DEBTORS FOR AN ORDER APPROVING DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES, CONFIRMATION SCHEDULE AND RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this Motion for entry of an order, substantially in the form annexed hereto as Exhibit A (the

"Confirmation Procedures Order"), (i) approving the Debtors' Disclosure Statement (as it may

be amended or supplemented and including all exhibits and supplements thereto, the "Disclosure

Statement") for the Joint Plan of Reorganization filed by the Debtors, the Official Committee of

Asbestos Personal Injury Claimants (the "ACC"), the Asbestos PI Future Claimants'

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace 11, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B I1 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G I1 Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal 11, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Representative (the "Asbestos PI FCR") and the Official Committee of Equity Security Holders (the "Equity Committee") dated as of September 19, 2008 (as it may be amended and including all exhibits and supplements thereto, the "Plan") and notice of the hearing to approve the Disclosure Statement (the "Disclosure Statement Hearing");[2] (ii) establishing procedures for the solicitation and tabulation of votes on the Plan, (iii) approving the forms of ballots and master ballots to be used by claimants and interest holders that are entitled to vote on the Plan (the "Ballots" and "Master Ballots," respectively), (iv) approving the form of notice to be sent to non-voting classes; (v) approving the form and scope of mailed and publication notice of the hearing to confirm the Plan (the "Confirmation Hearing"); and (vi) establishing certain dates and deadlines in relation to confirmation of the Plan. In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105, 502, 1125, 1126 and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 1007(i), 2002, 3003, 3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules.") and Rule 3017-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2

## Background

### A.    Commencement of Chapter 11 Cases

3.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

### B.    Retention of BMC Group, Inc. as Voting Agent

4.      Pursuant to an order of this Court dated May 8, 2002 (Docket No. 1933), the Debtors have retained BMC Group, Inc. ("BMC") to act as their voting agent (the "Voting Agent") in these chapter 11 cases. In this regard, BMC has been retained to, among other things, (i) distribute solicitation materials to those holders of claims or interests who are entitled to vote to accept or reject the Plan, (ii) receive all Ballots and Master Ballots in connection with the solicitation of votes on the Plan, (iii) tabulate the results of the balloting process and submit such results to the Court for purposes of determining acceptance or rejection by creditors and interest holders of the Plan, and (iv) act as the initial contact point to which the holders of claims against and interests in the Debtors can address questions regarding the Plan and the balloting process.

### C.    Bar Dates for Filing Certain Claims Against the Debtors

5.      On or about April 22, 2002, the Court entered an order (Docket No. 1963) establishing March 31, 2003 (the "March 2003 Bar Date") as the bar date for filing certain claims against the Debtors, including asbestos-related property damage claims, non-asbestos related claims, derivative asbestos claims and Asbestos Medical Monitoring Claims. In addition, by order dated June 17, 2008 (Docket No. 18934), the Court established October 31, 2008 (the "ZAI Bar Date") as the last day for filing US ZAI PD Claims against the Debtors. Neither the

3

March 2003 Bar Date nor the ZAI Bar Date applies to Asbestos PI Claims, nor has any other bar date been set with respect to such claims.

**D.**      **Settlement of Asbestos PI Claims and Filing of the Plan and Disclosure Statement**

6.      As of the Petition Date, the Debtors were defendants in over 65,000 asbestos-related lawsuits, 17 involving claims for property damage and the remainder involving 129,191 claims for personal injury.  Since the inception of these chapter 11 cases, the amount of the Debtors' present and future asbestos liabilities has been the subject of significant dispute.  This dispute has led to a protracted chapter 11 case, involving litigation in both this Court and the District Court.  The issues in such litigation have included the estimation of the amount of the Debtors' asbestos personal injury liability and the determination of whether the Debtors' ZAI product created an unreasonable risk of harm.

7.      Earlier this year, on April 6, 2008, in the midst of litigation concerning the estimation of the Debtors' liability for asbestos personal injury claims ("Asbestos PI Claims"), the Debtors, the ACC, the Asbestos PI FCR and the Equity Committee reached an agreement in principle (the "PI Settlement") to resolve all Asbestos PI Claims against the Debtors and to cooperate in the confirmation of a plan of reorganization.

8.      Since entering into the PI Settlement, the Debtors have worked diligently with the ACC, the Asbestos PI FCR and the Equity Committee to draft and formulate the plan of reorganization contemplated by the Settlement.  These efforts have led to the filing of the Plan and the Disclosure Statement along with an Exhibit Book relating thereto on September 19, 2008.  In general, the Plan contemplates the following:[3]

---

[3]      The following summary of the Plan is intended to be a summary only and is qualified in its entirety by the actual terms and conditions of the Plan.

4

- Priority Claims: All Priority Claims will be paid the Allowed Amount with interest at 4.19% from the Petition Date, compounded annually, or if pursuant to an existing contract, interest at the non-default contract rate in full, in Cash, or such lesser amount as may be agreed by the Holder of an Allowed Priority Claim.

- Secured Claims: All Secured Claims will be paid the Allowed Amount with interest at 4.19% from the Petition Date, compounded annually, or if pursuant to an existing contract, interest at the non-default contract rate in full, in Cash, or such lesser amount as may be agreed by the Holder of an Allowed Secured Claim.

- Employee Benefit Claims: Employee Benefit Claims will be reinstated and paid pursuant to written benefit plans or plans that the Debtors intend to continue, subject to the terms and conditions of such plans.

- Workers' Compensation Claims: The Plan leaves unaltered the legal, equitable and contractual rights to which each Workers' Compensation Claim entitles the Holder of such Workers' Compensation Claim.

- Intercompany Claims: The Plan leaves unaltered the legal, equitable and contractual rights to which each Intercompany Claim entitles the Holder of such Intercompany Claim.

- Asbestos PI Claims. All Asbestos PI Claims will be channeled to the Asbestos PI Trust for payment pursuant certain Trust Distribution Procedures. The Asbestos PI Trust will be funded from sources including:

  - $250 million in Cash plus certain interest from the Debtors,

  - a Warrant to acquire 10 million shares of W. R. Grace & Co. common stock at an exercise price of $17.00 per share, expiring one year from the effective date of the Plan,

  - deferred payments at $110 million per year for five years, beginning in 2019, and $100 million per year for ten years beginning in 2024; the deferred payments will be obligations of the Reorganized Debtors backed by 50.1% of the Parent's common stock to meet the requirements of section 524(g) of the Bankruptcy Code,

  - insurance proceeds,

  - a payment on account of the settlement of certain claims against Cryovac, Inc.,

  - a payment on account of the settlement of certain claims against Fresenius Medical Care Holdings, Inc., and

  - certain other consideration contemplated by the Plan;

- Asbestos PD Claims: All Asbestos PD Claims will be channeled to the Asbestos PD Trust, which will provide for the payment in full, in Cash, of Allowed Asbestos PD Claims. Certain Asbestos PD Claims, including all US

5

ZAI PD Claims are identified as Unresolved Asbestos PD Claims, whose allowance will be determined pursuant to a case management order to be entered by the Court. Allowed Unresolved Asbestos PD Claims will be paid in full, in Cash, by the Asbestos PD Trust. The Asbestos PD Trust will be funded by an initial payment by the Debtors and a note by the Reorganized Debtors secured by the Parent's obligation to issue 50.1% of the Parent's common stock to meet the requirements of section 524(g) of the Bankruptcy Code.

- Canadian ZAI PD Claims:  Will be resolved in accordance with the terms, provisions and procedures outlined in the CDN ZAI Minutes of Settlement;

- General Unsecured Claims:  All General Unsecured Claims will be paid the Allowed Amount of such Allowed General Unsecured Claim plus post-petition interest in Cash in full on the Effective Date or on such other less favorable terms as may be agreed upon by the Holder of an Allowed General Unsecured Claim.  Post-petition interest on Allowed General Unsecured Claims shall be determined and paid as follows:  either (i) (a) for Holders of pre-petition credit facilities, post-petition interest shall be calculated at the rate of 6.09% from the Petition Date through December 31, 2005 and thereafter at floating prime, in each case compounded quarterly; and (b) for all other General Unsecured Claims, interest at 4.19%, from the Petition Date, compounded annually, or if pursuant to an existing contract, interest at the non-default contract rate, or such less favorable terms as those that may be agreed upon by the Holder of an Allowed General Unsecured Claim.

- Equity Interests in the Parent:  Equity Interests in the Parent shall be retained, subject to the issuance of the Warrant to the Asbestos PI Trust and the terms of the Share Issuance Agreement to be entered into with the Asbestos PI Trust.

- Equity Interests in Debtors Other than the Parent:  The Plan leaves unaltered the legal, equitable, and contractual rights to which each Equity Interest in the Debtors other than the Parent entitles the Holder of such Equity Interest.

9.      The only impaired classes of claims or interests under the Plan are:  Class 6 (Asbestos PI Claims), Class 8 (Canadian ZAI PD Claims) and Class 10 (Equity Interests in the Parent).  In addition, the Debtors have agreed to solicit votes from Class 7 (Asbestos PD Claims) solely to the extent required by section 524(g) of the Bankruptcy Code.

10.     As noted in the Exhibit Book and the Disclosure Statement, certain exhibits to the Plan and Disclosure Statement have not yet been filed with the Court. The Debtors and the Plan Proponents expect to finalize those documents before the Disclosure Statement Hearing and will

6

supplement the Exhibit Book and Disclosure Statement at that time. In addition, the Plan

provides that certain other exhibits, including the By-Laws of the Parent and the identity and

affiliations of any person proposed to serve on the initial board of directors or be an officer of

each of the Reorganized Debtors, may be set forth in a Plan Supplement, which may be filed

with the Bankruptcy Court at least 10 days before the Confirmation Hearing. The Debtors

submit that parties in interest will have sufficient information to decide whether to accept or

reject the Plan without the documents that will be filed as part of the Plan Supplement.

**D.     Notice of the Disclosure Statement Hearing**

11.     Pursuant to Bankruptcy Rule 2002, as further described in Section I.C below, the

Debtors, through their noticing agent, have served on all Creditors, Holders of Equity Interests

and other known interested parties notice in the form attached hereto as Exhibit B (the

"Disclosure Statement Hearing Notice") of the Disclosure Statement Hearing and the deadline

for filing objections, if any, to the adequacy of the Disclosure Statement.[4]

<strong>Relief Requested</strong>

12.     By this Motion, the Debtors seek an order approving (i) the Disclosure Statement

and the Disclosure Statement Hearing Notice, (ii) solicitation and tabulation procedures with

respect to voting on the Plan as set forth in Exhibit C annexed hereto (the "Voting Procedures");

(iii) the forms of Ballots and Master Ballots to be used for soliciting votes to accept or reject the

Plan, which forms are annexed hereto collectively as Exhibit D, (iv) the form of notice of non-

voting class status (the "Notice of Non-Voting Class Status") annexed hereto as Exhibit E; (v)

the form and scope of mailed and published notice of the Confirmation Hearing, which form is

---

[4]     The Disclosure Statement Hearing Notice that was served and that is annexed as Exhibit B inadvertently
contained an outdated address for counsel to the Equity Committee. The Debtors have since corrected the
notice and do not believe that the outdated address affects the adequacy of the notice that was served. Copies of
the Disclosure Statement and Plan also have been posted to the Debtors' website at www.grace.com and the
website of the Debtors' noticing and voting agent at www.bmcgroup.com/wrgrace.

7

annexed hereto as Exhibit F (the "Confirmation Hearing Notice"); and (vi) the establishment of

(a) a record date  (the "Voting Record Date") for the holders of claims and interests entitled to

vote on the Plan, (b) a deadline for submitting votes to accept or reject the Plan (the "Voting

Deadline"), (c) a date for the Confirmation Hearing and (d) a deadline for objections, if any, to

confirmation of the Plan to be filed with the Court (the "Plan Objection Deadline").

**I.**
**APPROVAL OF THE DISCLOSURE STATEMENT AND**
**NOTICE OF THE DISCLOSURE STATEMENT HEARING**

**A.    The Court Must Determine Whether the Disclosure Statement**
**Contains "Adequate Information" Based on the Facts and Circumstances.**

13.    Section 1125(b) of the Bankruptcy Code requires that a plan proponent provide

"adequate information" regarding a debtor's proposed plan of reorganization.  In particular,

section 1125(a)(l) of the Bankruptcy Code states as follows:

> '[A]dequate information' means information of a kind, and in sufficient detail, as
> far as is reasonably practicable in light of the nature and history of the debtor and
> the condition of the debtor's books and records, that would enable a hypothetical
> reasonable investor typical of holders of claims or interests of the relevant class to
> make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).  The primary purpose of a disclosure statement is to provide all material

information which creditors and interest holders affected by a proposed plan need in order to

make an informed decision whether to vote for or against the plan.  *See Century Glove. Inc. v.*

*First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) (stating that section 1125 of the

Bankruptcy Code "seeks to guarantee a minimum amount of information to the creditor asked for

its vote."); *see also In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985); *In re Phoenix*

*Petroleum. Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001); *In re Unichem Corp.*, 72 B.R. 95, 97

(Bankr. N.D. Ill. 1987).  Congress anticipated that such informed judgments would be needed to

negotiate the terms of and vote on a plan of reorganization.  *Century Glove*, 860 F.2d at 100.

8

14.     The Court has broad discretion in determining the adequacy of the information

contained in a disclosure statement and should make such determination on a case-by-case basis.

*See Oneida Motor Freight. Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3rd Cir. 1988); *In re*

*Cajun Elec. Power Co-op, Inc.*, 230 B.R. 715, 731 (Bankr. M.D. La 1999) (*citing In re Texas*

*Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988)) ("The determination of what is adequate

information is subjective and made on a case by case basis. This determination is largely within

the discretion of the bankruptcy court."). This discretion provides flexibility and facilitates the

effective reorganization of the different types of chapter 11 debtors by accommodating the

varying circumstances accompanying their individual chapter 11 cases. *See* H.R. Rep. No. 595,

95th Cong., 1st Sess. 408-09 (1977). The determination should take account of expertise and

resources, including outside advisors and relevant information already possessed or publicly

available, and of the hypothetical investor of each class of claims or interests in the chapter 11

cases from which classes the acceptance or rejection of the plan is solicited. *See In re Zenith*

*Elecs. Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999).

**B.     Based on the Facts and Circumstances of the Debtors' Chapter 11**
        **Cases, the Disclosure Statement Contains Adequate Information.**

15.     The Disclosure Statement is the product of the Debtors' and their advisors'

extensive review and analysis of the circumstances leading to these chapter 11 cases, the chapter

11 cases themselves, and a thorough analysis of the Plan. In drafting the Disclosure Statement,

the Debtors sought the assistance and input of their financial and legal advisors.

16.     The Disclosure Statement contains the pertinent information necessary for holders

of claims or equity interests who are eligible to vote to make an informed decision about whether

to accept or reject the Plan, including information regarding:

- The Plan, including a straightforward summary of the treatment of all classes of
  creditors and equity interests;

9

- The history of the Debtors, including certain events leading to the commencement of the Debtors' chapter 11 cases;

- The operation of the Debtors' businesses and significant events during the Debtors' chapter 11 cases;

- The Debtors' prepetition capital structure and indebtedness;

- The Debtors' corporate structure;

- Claims asserted against the Debtors' estates and the procedures for the resolution of disputed, contingent and unliquidated claims;

- A description and summary of the injunction and releases provided for by the Plan;

- The purpose, use and effect of the Plan's contemplated limited substantive consolidation;

- Certain risk factors to consider that may affect the Plan;

- The restructuring transactions contemplated by the Plan, including the funding of the Asbestos PI Trust and the Asbestos PD Trust;

- A liquidation analysis and other financial information, including the Debtors' financial projections;

- Certain securities law and federal income tax law consequences of the Plan;

- The provisions governing distributions under the Plan;

- The means for implementation of the Plan; and

- A disclaimer indicating that no statements or information concerning the Debtors and their assets and securities are authorized other than those set forth in the Disclosure Statement.

17.    The Debtors submit that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code.  The Debtors further submit that the Disclosure Statement addresses the information set forth above in a manner that provides holders of impaired claims or equity interests who are entitled to vote to accept or reject the Plan with adequate information within the meaning of section 1125 of the Bankruptcy Code and should, therefore, be approved.

10

**C.**    **Adequate Notice of the Disclosure Statement Hearing Has Been Given.**

18.    Bankruptcy Rule 3017(a) provides:

> [A]fter a disclosure statement is filed in accordance with [Bankruptcy] Rule 3016(b), the court shall hold a hearing on at least 25 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in [Bankruptcy] Rule 2002 to consider the disclosure statement and any objections or modifications thereto. The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the [Bankruptcy] Code, the Securities and Exchange Commission, and any party in interest who requests in writing a copy of the statement or plan.

Fed R. Bankr. P. 3017(a).

19.    In addition, Bankruptcy Rule 2002(b) requires notice by mail to all creditors of the time set forth for filing objections to, and the hearing to consider approval of, a disclosure statement. Bankruptcy Rule 2002(d) requires that the equity security holders be given notice of the foregoing in the manner and the form directed by the Court.

20.    In accordance with these requirements, the Debtors, through their voting agent, have mailed copies of the Disclosure Statement Hearing Notice by first-class mail to the following parties: (i) all persons or entities who had filed proofs of claim or interest in the Debtors' cases that were not subsequently withdrawn or disallowed by order of this Court;[5] (ii) all creditors listed on the Debtors' Schedules of Liabilities as holding liquidated, non-contingent and undisputed claims; (iii) all holders of Equity Interests as of August 22, 2008;[6] (iv) any other

---

[5]    The fact that the Debtors may have mailed the Disclosure Statement Hearing Notice to entities that may have filed late proofs of claim in these cases is not an admission that such parties have standing in these cases or that their proofs of claim should be deemed timely filed. In addition, to the extent that any proof of claim filed in these cases identifies an attorney for the claimant, the Debtors have mailed the Disclosure Statement Hearing Notice only to the attorney and not to the represented claimant, unless the claimant's mailing information also was provided, in which case both the claimant and the attorney were served.

[6]    Given the duration of these chapter 11 cases, the Debtors submit that providing notice of the Disclosure Statement Hearing to holders of Equity Interests as of August 22, 2008 will provide more adequate notice of the Disclosure Statement Hearing to current holders of Equity Interests than sending notice to the holders of Equity Interests on the list of such holders previously filed with the Court following the Petition Date.

11

known holders, or counsel to holders, of claims against, or interests in, the Debtors; and (v) all

parties currently included on the general service list maintained by the Debtors pursuant to

Bankruptcy Rule 2002. Among other things, the Disclosure Statement Hearing Notice identifies

the date, time and place of the Disclosure Statement Hearing and procedures for asserting

objections, if any, to the approval of the Disclosure Statement.[7]

21.     The Debtors also have served a copy of the Disclosure Statement Hearing Notice,

together with the Disclosure Statement and the Plan, on counsel to the ACC, counsel to the

Equity Committee, counsel to the Asbestos PI FCR, counsel to the Official Committee of

Unsecured Creditors, counsel to the Official Committee of Asbestos Property Damage

Claimants, counsel to the U.S. Trustee, the Securities and Exchange Commission, CCAA

Representative Counsel and all other parties on the general service list maintained by the Debtors

pursuant to Bankruptcy Rule 2002.

22.     In addition, the Debtors will provide copies of the Disclosure Statement and the

Plan to any additional party in interest that makes a request for such documents in the manner

specified in the Disclosure Statement Hearing Notice and Bankruptcy Rule 3017(a). The

Debtors also have made these documents available at on their website at www.grace.com and on

the website of the Debtors' noticing and voting agent, BMC Group, Inc., at www.bmcgroup.com.

---

[7]     In particular, the Disclosure Statement Hearing Notice provides that objections or proposed modifications to the
Disclosure Statement, if any, must (i) be in writing; (ii) state the name and address of the objecting party and
the nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection
or proposed modification and provide the specific language of any proposed modification; (iv) be filed with the
Court and served on (a) counsel to the Debtors, (b) counsel to the ACC, (c) counsel to the Equity Committee,
(d) counsel to the Asbestos PI FCR and (e) counsel to the U.S. Trustee, so that the objection or proposed
modification is received no later than 4 p.m., Eastern Time, on October 17, 2008. This deadline will afford the
Court and the Plan Proponents sufficient time to consider the objections and proposed modifications before the
Disclosure Statement Hearing.

23.     The Debtors submit that the foregoing procedures provide adequate notice of the
Disclosure Statement Hearing and, accordingly, the Debtors request that the Court approve such
notice as appropriate and in compliance with the requirements of the Bankruptcy Code, the
Bankruptcy Rules and the Local Rules.

**II.**
**APPROVAL OF THE VOTING PROCEDURES**

**A.     Proposed Voting Procedures[8]**

24.     Under the Plan, only Holders of Asbestos PI Claims (Class 6), Canadian ZAI PD
Claims (Class 8) and Equity Interests in the Parent (Class 10) are within impaired classes and,
thus, are entitled to vote on the Plan.  In addition, while the Holders of Asbestos PD Claims
(Class 7) are unimpaired because their Claims will be paid in full, the Debtors have agreed to
solicit the acceptances of that class solely to the extent required by section 524(g) of the
Bankruptcy Code.  With regard to solicitation and tabulation of votes with respect to the above-
mentioned classes, the Voting Procedures generally provide for the following:

**(i)     Solicitation Packages**

25.     As set forth in detail herein, the Debtors, acting through the Voting Agent, will
solicit acceptances of the Plan by mailing solicitation materials (the "Solicitation Package") to
Holders of Equity Interests, Holders of Asbestos PI Claims (or their attorneys), Holders of
Asbestos PD Claims (or their attorneys) and to CCAA Representative Counsel as more
specifically described below.  The Solicitation Package will include:

(a)     the Confirmation Hearing Notice, which clearly sets forth the Voting
Deadline and the Plan Objection Deadline;

---

[8]     The description of the Voting Procedures in this Motion is intended only as a summary.  Reference should be
made to the Voting Procedures for the precise terms thereof, which shall control in the event of any
inconsistency between the summary in this Motion and the actual Voting Procedures.

13

(b)     the order approving the Disclosure Statement (the "Disclosure Statement Order") without exhibits;

(c)     the Disclosure Statement;

(d)     the Exhibit Book (with the Plan attached as an Exhibit therein);

(e)     the Voting Procedures;

(f)     one or more applicable Ballots and/or Master Ballots, together with voting instructions and information relative to the return of the Ballots or Master Ballots;

(g)     pre-addressed return envelopes(s); and

(h)     any other materials ordered by the Court to be included.

26.     Holders of claims in unimpaired classes are deemed to accept the Plan and are thus not entitled to vote on the Plan (except as to Holders of Asbestos PD Claims to the extent required by section 524(g) of the Bankruptcy Code). 11 U.S.C. § 1126(f). As a result, the Debtors will send a Notice of Non-Voting Class Status to such claimants (except Class 7 Claimants) in lieu of a Solicitation Package. The Notice of Non-Voting Class Status will contain instructions on to how to obtain copies of the Plan and Disclosure Statement from the Voting Agent if claimants so desire.

**(ii)     Distribution of Solicitation Packages**

27.     The proposed Voting Procedures include the following key elements with respect to the distribution of Solicitation Packages to voting classes of claims and equity interests under the Plan:

14

(a)    Asbestos PI Claims (Class 6).

***Notice to and Voting by Attorneys for Asbestos PI Claims and Individual Holders of Asbestos PI Claims.***  The Debtors do not have mailing addresses for many known individual holders of Asbestos PI Claims. In order to address this issue, and consistent with the practice in other large asbestos-related bankruptcy proceedings, the Debtors propose to provide Solicitation Packages to attorneys for Holders of Asbestos PI Claims rather than providing Solicitation Packages to the claimants themselves. Such attorneys will also vote on the Plan with respect to such Asbestos PI Claims using a Master Ballot to the extent such attorneys have the authority to do so and execute the required certifications under the Master Ballot. Solicitation Packages will not be served upon individual Holders of Asbestos PI Claims, except (i) where an individual Holder of an Asbestos PI Claim requests a Solicitation Package in accordance with the Voting Procedures, (ii) where a proof of claim with respect to an Asbestos PI Claim is signed and filed by an individual Holder of an Asbestos PI Claim prior to the Voting Record Date or (iii) where an attorney timely advises the Voting Agent under the Voting Procedures of the names and addresses of individuals who hold or may assert Asbestos PI Claims who should receive their own Solicitation Packages.

***Notice to and Voting by Holders of Indirect PI Trust Claims:***  The Voting Agent will cause a Solicitation Package to be served upon each Holder of an Indirect PI Trust Claim as identified by the Debtors based on their records and review of the proofs of Claim filed on or before the March 2003 Bar Date and the Debtors' Schedules of Assets and Liabilities filed with the Court (as amended or supplemented, the "Schedules") provided that the Indirect PI Trust Claim has not yet been withdrawn, disallowed or expunged by an order of the Bankruptcy Court entered on or before the Voting Record Date.

(b)    Asbestos PD Claims (Class 7):

***Filed Claims:***  Except as otherwise provided in the Voting Procedures, the Voting Agent will cause a Solicitation Package to be served upon each Holder of an Asbestos PD Claim (including Indirect PD Trust Claims) that (I) is represented by a proof of claim filed against the Debtors (A) on or before the March 2003 Bar Date with respect to Asbestos PD Claims other than US ZAI PD Claims and (B) on or before October 31, 2008 with respect to US ZAI PD Claims, and (II) has not been disallowed or expunged by order of the Bankruptcy Court entered on or before the Voting Record Date.

***Master Ballots***:  The Debtors will solicit votes on the Plan from attorneys who represent numerous Holders of Asbestos PD Claims who are entitled to vote using a Master Ballot to the extent that such attorneys have the

15

authority to vote on behalf of the Holders and execute the required certifications under the Master Ballot.

(c)    CDN ZAI PD Claims (Class 8):

Under applicable Canadian law, once appropriate authority is given in Ontario Superior Court of Justice, Ontario Court of Appeal or the Supreme Court of Canada (the "Canadian Court"), the CCAA Representative Counsel[9] will be empowered and authorized to vote to accept or reject the Plan on behalf of the Class 8 CDN ZAI PD Claims in accordance with the Minutes of Settlement of Canadian ZAI Claims. Accordingly, the Debtors contemplate that the CCAA Representative Counsel will be the only party whose vote is solicited with respect to the Class 8 CDN ZAI PD Claims.

(d)    Equity Interests in the Parent (Class 10):

Pursuant to Bankruptcy Rules 1007(i) and 3017(e), within three (3) business days after the Voting Record Date, the Transfer Agent shall provide to the Voting Agent a list of the names, addresses and holdings of the Holders of Parent Stock as of the Voting Record Date. Holders of Parent Common Stock as of the Voting Record Date will receive a Solicitation Package. Parent Common Stock may not be held directly by the beneficial owner, but instead may be held in "street name" by various financial institutions that hold the Parent Common Stock on behalf of beneficial owners (the "Nominees"). The Voting Procedures contain customary procedures for the distribution of Solicitation Packages to Nominees and provide for either the "prevalidation" of individual Ballots or the compilation of Master Ballots by such Nominees. "Prevalidated" Ballots shall be returned directly to the Voting Agent. If "prevalidated" Ballots are not used, individual Ballots shall be summarized on a Master Ballot and then returned to the Voting Agent.

(iii)    **Tabulation of Votes**

28.    The proposed Voting Procedures include the following key elements with respect to the tabulation of votes with respect to the voting classes of claims under the Plan:

(A)    Assignment of Values to Asbestos PI Claims for Voting Purposes.

(I)    Individual Asbestos PI Claims asserted against the Debtors have not, for the most part, been assigned values in the Debtors' chapter 11 cases. Accordingly, the Debtors propose that individual

---

[9]    The Plan defines CCAA Representative Counsel as "Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP in their capacity as representative counsel to the Canadian ZAI PD Claimants and the CDN ZAI PI Claimants pursuant to an Order of the Canadian Court made on February 8, 2006."

16

Asbestos PI Claims (other than Indirect PI Trust Claims) be assigned values according to the TDP filed with the Plan.[10] The instructions accompanying the Ballots and Master Ballots to be used in voting on the Plan will clearly set forth the values to be ascribed to Asbestos PI Claims based on these criteria. All values assigned to Asbestos PI Claims by the Voting Procedures are to be used solely for voting purposes.

(II)    Each Holder of an Indirect PI Trust Claim will have a single vote in the amount, for voting purposes only, of $1.00, which is solely for voting purposes and does not constitute an allowance of such Claims for purposes of distribution and is without prejudice to the rights of the Holders of such claims or the Asbestos PI Trust in any other context.

(B)    Asbestos PD Claims.

The Voting Procedures only provide for the solicitation of votes of Holders of Asbestos PD Claims solely to the extent required by section 524(g) of the Bankruptcy Code. The tabulation of such votes shall be determined pursuant to a future order of the Bankruptcy Court.

(C)    CDN ZAI PD Claims (Class 8).

The aggregate value of Class 8 CDN ZAI PD Claims for voting purposes will be $6,500,000, which represents the payment to the Canadian ZAI PD claims fund pursuant to the CDN ZAI Minutes of Settlement.

(iv)    **Additional Provisions**

29.    In addition to the foregoing, the proposed Voting Procedures include detailed provisions concerning the certification of Ballots and Master Ballots by Holders of Claims or Equity Interests, the exclusion of Ballots by the Voting Agent, and general voting procedures and

---

[10]    Substantially all recent asbestos-related chapter 11 cases have relied upon TDP values for voting purposes. *See, e.g., In re USG Corp.*, Case No. 01-2094(JFK) (Bankr. D. Del. April 7, 2006); *In re Federal-Mogul Global Inc.*, Case No. 01-10578 (RTL) (Bankr. D. Del. June 14, 2004); *In re Armstrong World Indus., Inc.*, Case No. 00-4471 (RJN) (Bank. D. Del. Feb. 24, 2003). To do otherwise would impose severe delays on the Debtors' reorganization while placing an unrealistic burden upon available financial and judicial resources. *See In re Armstrong World Indus.*, Case No. 00-4471 (RJN), Transcript of Feb. 28, 2003 hearing at 58 (individual evaluation of asbestos claims values for voting purposes would throw debtor's case "into utter chaos"); *In re Johns-Manville Corp.*, 843 F.2d 636, 646 (2d Cir. 1988) (observing that valuing disputed claims for voting purposes would delay reorganization proceedings for years). *Cf. In re USG Corp.*, 290 B.R. 223, 226 (Bankr. D. Del. 2003) (Wolin, J.) (observing that litigating only 1% of debtor's asbestos-related liabilities for purposes of extrapolating results would require "unmanageable" litigation of 1,900 individual claims).

17

standard assumptions relating to solicitation and tabulation of votes to accept or reject the Plan.

**B.      The Voting Procedures Should Be Approved**

30.      The Debtors believe that the proposed Voting Procedures afford Claimants and

Holders of Equity Interests with a full and fair opportunity to accept or reject the Plan.  The

Debtors submit that the means proposed for voting on the Plan by holders of Equity Interests

adequately recognize the complex structure of the securities industry, enable the Debtors to

transmit materials to the holders of Equity Interests in a timely and cost-effective manner and

afford beneficial owners of the Equity Interests a fair and reasonable opportunity to vote on the

Plan.  In this regard, the Voting Procedures propose a means of voting comparable to other large

chapter 11 reorganizations.

31.      In addition, the Voting Procedures proposed for Asbestos PI Claims are

comparable to those established in substantially all asbestos-related chapter 11 reorganizations,

including numerous such reorganizations in this District.  *See, e.g., In re USG Corp.*, Case No.

01-2094(JFK) (Bankr. D. Del. April 7, 2006); *In re Federal-Mogul Global Inc.*, Case No. 01-

10578 (RTL) (Bankr. D. Del. June 14, 2004); *In re Owens Corning*, Case No. 00-3837 (JKF)

(Bankr. D. Del. Dec. 2, 2003); *In re Armstrong World Indus., Inc.*, Case No. 00-4471 (RJN)

(Bankr. D. Del. Apr. 21, 2003).  The Voting Procedures proposed for Asbestos PI Claims

embody an efficient and well-established process for allowing the holders of Asbestos PI Claims

the opportunity to vote on the Plan, and should be approved.

32.      Moreover, the special Voting Procedures proposed with respect to Asbestos PI

Claims, in particular, the provision of Solicitation Packages to and voting by attorneys for

Holders of Asbestos PI Claims, not only will reduce the cost of solicitation significantly, but also

accurately reflect the reality of how most asbestos personal injury claims are managed.  Often, an

attorney for the holder of an asbestos personal injury claim will have authority under applicable

18

bankruptcy or non-bankruptcy law to make decisions such as voting on a chapter 11 plan. As set

forth in the Voting Procedures, attorneys who vote on the Plan on behalf of their clients must

certify that they have such authority, which certification is under penalty of perjury for attorneys

in the United States. If the attorney is unable to so certify, that attorney must promptly advise

the Debtors so that the individual claimant's vote on the Plan may be solicited directly. The

Debtors believe that this feature and the other mechanisms contained in the Voting Procedures

adequately protect the interests of holders of Asbestos PI Claims, and are comparable in material

respects to procedures approved by this Court and others in connection with the voting of

asbestos personal injury claims in chapter 11 cases. *See, e.g., In re USG Corp.*, Case No. 01-

2094(JFK) (Bankr. D. Del. April 7, 2006); *In re Federal-Mogul Global Inc.*, Case No. 01-10578

(RTL) (Bankr. D. Del. June 14, 2004); *In re Owens Corning*, Case No. 00-3837 (JKF) (Bankr. D.

Del. Dec. 2, 2003); *In re Armstrong World Indus., Inc.*, Case No. 00-4471 (RJN) (Bankr. D. Del.

Apr. 21, 2003).

33.    Lastly, the Debtors believe that the solicitation procedures for Asbestos PD

Claims, including the use of a Master Ballot for attorneys representing numerous Holders of

Asbestos PD Claims, are reasonable and should be approved. The Debtors note that the Voting

Procedures only address the solicitation of votes from Holders of Asbestos PD Claims and that

the procedures contemplate that the tabulation of such votes shall be subject to further order of

the Court.

34.    With respect to the procedures set forth in the Voting Procedures relating to the

tabulation of votes (other than with respect to Asbestos PD Claims), section 1126(c) of the

Bankruptcy Code provides as follows:

> A class of claims has accepted a plan if such plan has been accepted by
> creditors . . . that hold at least two-thirds in amount and more than one-

19

> half in number of the allowed claims of such class held by
> creditors . . . that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

35.     Furthermore, section 524(g) of the Bankruptcy Code provides that one of the

requirements for an injunction to be issued pursuant to section 524(g) is that "a separate class or

classes of the claimants whose claims are to be addressed by a trust described in clause (i) is

established and votes, by at least 75 percent of those voting, in favor of the plan." 11 U.S.C.

§ 524(g)(2)(B)(ii)(IV)(bb).

36.     The Voting Procedures set forth in detail the procedures for the tabulation of

votes to accept or reject the Plan.  If any creditor seeks to challenge the allowed amount of, its

Claim for voting purposes in accordance with the Voting Procedures, the Voting Procedures

provide that such creditor may file a Voting Motion.  The Debtors further propose, in accordance

with Bankruptcy Rule 3018, that as to any creditor filing such a motion, such creditor's Ballot

should not be counted other than as already provided under the Voting Procedures unless

temporarily allowed by the Court for voting purposes, after notice and a hearing.

37.     In addition, the Plan provides for the limited substantive consolidation of the

Debtors and their estates for Plan purposes, including for voting on the Plan.  As a result, the

Voting Procedures provide that a claimant who holds claims in impaired classes against multiple

Debtors shall cast a single vote to accept or reject the Plan as it applies to all of the Debtors

against whom that claimant has claims.

38.     The Debtors believe the proposed Voting Procedures embody an orderly and

logical method for soliciting and tabulating the Ballots of those entities entitled to vote on the

Plan, and accordingly request that the Court approve the Voting Procedures.

## III.
## APPROVAL OF THE FORMS OF BALLOTS

39.     Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which

substantially conforms to Official Form No. 14, to "creditors and equity security holders entitled

to vote on the plan." Fed. R. Bankr. P. 3017(d).

40.     In recognition of the complexities of the Debtors' reorganization, the Debtors

have fashioned a number of specialized forms of Ballots and Master Ballots to be used in voting

on the Plan, which are attached to this Motion collectively as Exhibit C.  In general, the forms of

Ballot and Master Ballot are tailored to address the particular aspects of the Debtors'

reorganization and, in certain instances, to include specific information that the Debtors believe

to be relevant and appropriate for the Holders of Claims or Equity Interests entitled to vote on

the Plan.  For example, the Asbestos PI Claims Ballots request information from Holders of

Asbestos PI Claims sufficient to allow the Debtors to classify such claims properly, such as the

claimant's disease level.

41.     The Debtors submit that the forms of Ballots and Master Ballots attached hereto

collectively as Exhibit C comport sufficiently with Official Form No. 14 that such Ballots and

Master Ballots should be approved for soliciting votes to accept or reject the Plan.

## IV.
## APPROVAL OF THE FORM OF
## NOTICE OF NON-VOTING CLASS STATUS

42.     The Plan provides that Classes 1, 2, 3, 4, 5, 7, 9 and 11 are unimpaired and,

except for Class 7 to the extent required by section 524(g) of the Bankruptcy Code, are deemed

to accept the Plan. As result, Holders of Claims in these classes, except for Class 7 Asbestos PD

Claims to the extent required by section 524(g) of the Bankruptcy Code, are not entitled to vote

on the Plan.  11 U.S.C. § 1126(f).

21

43.     The Debtors intend to send a Notice of Non-Voting Class Status with respect to each Claimant (except for Class 7 Claimants) in these unimpaired classes, substantially in the form attached hereto as Exhibit E, in lieu of a Solicitation Package. The Notice of Non-Voting Class Status will explain to such Holders their non-voting status and that such Holder may obtain certain materials in the Solicitation Package from the Voting Agent. The Debtors respectfully submit that the Notice of Non-Voting Class Status complies with the Bankruptcy Code and, therefore, should be approved.

## V.
## APPROVAL OF FORM AND SCOPE OF
## NOTICE OF THE CONFIRMATION HEARING

44.     Bankruptcy Rules 2002(b) and (d) require not less than 25 days notice to all creditors and interest holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtors have developed a comprehensive notice program intended to provide notice of the Plan and Confirmation Hearing to both known and unknown claimants and holders of interests. The notice program has three discrete components:

45.     The first is direct mailing of Confirmation Hearing Notice, a form of which is annexed hereto as Exhibit F, to all known holders of Claims or Equity Interests, or their authorized attorneys, simultaneously with the distribution of the Solicitation Packages.

46.     The second component of the notice program will be publication of the Confirmation Hearing Notice (as may be reasonably modified to accommodate publication size limitations), consistent with Bankruptcy Rule 2002(l), not less than 25 days before the Voting Deadline in (a) the weekday edition of the national editions of *USA Today, The Wall Street Journal* and *The New York Times*, (b) Andrews's Asbestos Litigation Reporter and Mealey's Litigation Report: Asbestos, (c) the Sunday newspaper supplements *Parade* magazine and *USA*

22

*Weekend* magazine, (d) *Newsweek*, *TV Guide*, *Sports Illustrated* and *U.S. News and World Report* and (e) appropriate Canadian publications consistent with the Debtors' previous noticing programs in Canada (or comparable publications, as determined by the Debtors' notice consultant).

47.     The third component of the notice program consists of additional means of outreach, such as a press release and posting of the Confirmation Hearing Notice electronically on the Debtors' website www.grace.com and the website of the Voting Agent at www.bmcgroup.com/wrgrace.

48.     These means for providing notice of the Confirmation Hearing will be supported by other mechanisms intended to further the effectiveness of the notices, such as telephone help lines, which will be prominently featured in the mailed and publication notices.  Such help lines will enable creditors or interest holders to obtain copies of documents, obtain updated status information on the Plan, and address a number of other potential inquiries concerning the Debtors' chapter 11 cases and voting process with regard to the Plan.

49.     The Debtors submit that the foregoing notice program will provide adequate notice of the Confirmation Hearing and request that the Court deem such notice adequate.

## VI.
## ESTABLISHMENT OF DATES AND
## DEADLINES RELATING TO CONFIRMATION

### A.     Voting Record Date

50.     Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule

23

3018(a) contains a similar provision regarding determination of the record date for voting purposes. *See* Fed. R. Bankr. P. 3018(a).

51.     In accordance with these rules, the record date is typically the date an order approving the disclosure statement is entered. Nevertheless, in order to set a record date, the Debtors have determined to provide the registrars of the Parent Common Stock advance notice of approximately two (2) business days to enable those responsible for assembling ownership lists of the Parent Common Stock to compile a list of holders as of a date certain. Moreover, although the Debtors may be able to give entities advance notice of the date of the hearing on the proposed Disclosure Statement, such hearing could be continued by the Court (necessitating new notice of a potential record date), or the Disclosure Statement Order might not be entered on the date of such hearing (rendering information obtained as of the hearing date useless). Accordingly, the Debtors request that this Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) and section 105(a) of the Bankruptcy Code to set the date that is two (2) business days after the date of entry of an order approving the Disclosure Statement as the Voting Record Date for purposes of determining creditors and interest holders entitled to vote on the Plan.

52.     With respect to transfers of Claims governed by Bankruptcy Rule 3001(e), the Voting Procedures specify that the deadline for any objection to the proposed transfer of a Claim must have passed as of the Voting Record Date in order for the transferee to be considered the holder of the Claim entitled to vote such Claim or otherwise receive a Solicitation Package.

**B.      Voting Deadline and Confirmation Hearing Date**

53.     Bankruptcy Rule 3017(c) provides:

On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

Fed R. Bankr. P. 3017(c).

24

54.     The Debtors respectfully request that the Court exercise its authority under Bankruptcy Rule 3017(a) to establish 4:00 p.m. prevailing Eastern Time on the date that is four weeks before the Confirmation Hearing as the Voting Deadline. The Debtors propose that for votes to be counted, all Ballots and Master Ballots must be properly executed, completed and received by the Voting Agent as specified in the Voting Procedures by the Voting Deadline. The Confirmation Hearing Notice will state prominently the Voting Deadline.

55.     In addition, in accordance with Bankruptcy Rule 3017(c) and section 1128 of the Bankruptcy Code (requiring a confirmation hearing with respect to any chapter 11 plan), the Debtors request that the Court schedule the Confirmation Hearing, subject to the Court's availability and calendar, to begin during the last week of January, 2009. The proposed timing for the Confirmation Hearing complies with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and will enable the Debtors to pursue confirmation of the Plan in a timely manner.

C.     **The Plan Objection Deadline and Related Procedures**

56.     Pursuant to Bankruptcy Rule 3020(b)(l), objections to confirmation of a plan must be filed and served "within a time fixed by the court." The Debtors request that the Court direct that objections to confirmation of the Plan or proposed modifications to the Plan, if any, must:

(i)     be in writing;

(ii)    state the name and address of the objecting party and the amount and nature of the claim or interest of such party;

(iii)   state with particularity the basis and nature of any objection to the Plan and, if practicable, proposed modification to the Plan that would resolve such objection;

(iv)    conform to the Bankruptcy Rules and the Local Rules; and

(v)     be filed, together with proof of service, with the Court and served so that they are received by the Notice Parties identified in the Confirmation Hearing Notice, no later than the Plan Objection Deadline of 4:00 p.m.

25

(prevailing Eastern Time) on the date that is four weeks before the Confirmation Hearing.

57.     The proposed procedures and timing for filing and service of objections and proposed modifications, if any, to the Plan will afford the Court, and the Plan Proponents and other parties in interest sufficient time to consider the objections and proposed modifications prior to the Confirmation Hearing while providing more than 25 days notice of the Plan Objection Deadline given that the Debtors intend to provide notice of such deadline in connection with solicitation of the Plan, which the Debtors anticipate will be completed well in advance of the date that is 25 days before the Plan Objection Deadline.  Further, the Debtors request that the Plan Proponents be allowed to file replies to any objections filed on or before the Plan Objection Deadline by no later than 12:00 p.m. Eastern Time on the date that is one week before the Confirmation Hearing.

## Notice

58.     Notice of this Motion has been provided to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Asbestos PI FCR and (v) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested in this Motion, the Debtors submit that no other or further notice is required.

## No Prior Request

59.     No prior request for the relief sought herein has been made to this or to any other Court.[11]

---

[11] On November 13, 2004 the Debtors filed the Debtors' Plan of Reorganization (Docket No.6895 ), Disclosure Statement for the Debtors Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (Docket No. 6896) and various related documents, including a Motion for Entry of An Order Approving Solicitation and Confirmation Procedures and Schedule (Docket No. 6900) (the "Previous Confirmation Procedures Motion").  On January 13, 2005 the Debtors filed their Amended Joint Plan of Reorganization (Docket No. 7560) and Amended Disclosure Statement for the Amended Joint Plan of Reorganization Pursuant

26

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit A, approving (i) the Disclosure Statement and the Disclosure Statement Hearing Notice, (ii) the Voting Procedures, (iii) the forms of Ballots and Master Ballots, (iv) the form of Notice of Non-Voting Class Status, (v) the form of the Confirmation Hearing Notice and the method and scope of notice of the Confirmation Hearing, and (vi) the proposed confirmation schedule, and grant the Debtors such other and further relief as is just.

Dated: September 25, 2008
Wilmington, Delaware

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore L. Freedman
Janet S. Baer
Citigroup Center
153 East 53rd Street
New York, NY  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

PACHULSKI, STANG, ZIEHL & JONES LLP
James E. O'Neill (Bar No. 4042)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

---

to Chapter 11 of the United States Bankruptcy Code ( Docket No. 7559). On November 5, 2007, the ACC and Asbestos PI FCR filed their Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of the Official Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative for W. R. Grace & Co. et al., Dated as of November 5, 2007 (Docket No. 17306) (collectively the "Previous Plans"). The current Plan, Disclosure Statement and related documents referred to in this Motion supersede all of the Previous Plans and the Previous Confirmation Procedures Motion.

27