## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:

W.R. GRACE & CO., *et al*,

        Debtors.

Bankruptcy No. 01-1139 – JKF
Jointly Administered

Chapter 11

Related to Doc. No. **9315**, Debtors' Fifteenth Omnibus Objections (Substantive) to Asbestos Property Damage Claims; Doc. No. **14594**, Debtors' Motion and Memorandum for an Order Disallowing and Expunging One Hundred Nine (109) California Asbestos Property Damage Claims Barred by Statute of Limitations; Doc. No. **14919**, Claimant State of California Department of General Services, Opposition to Motion for Summary Judgment and Doc. No. **14966**, Debtors' Reply in Further Support of Their Motion for an Order for Summary Judgment Disallowing and Expunging One Hundred Nine (109) Time Barred California Asbestos Property Damage Claims.

### MEMORANDUM OPINION[1]

The matter before the court is Debtors' Motion and Memorandum for an Order

Disallowing and Expunging One Hundred Nine (109) California Asbestos Property Damage

Claims Barred by Statute of Limitations.[2]  Debtors contend that the claims of the California

---

[1]The court's jurisdiction was not at issue.  This Memorandum Opinion constitutes our findings of fact and conclusions of law.

[2]The motion is titled as stated in the text, *supra*, but filed as "Motion for Summary Judgment Debtors' Motion and Memorandum for an Order Disallowing and Expunging One Hundred Nine (109) California Asbestos Property Damage Claims Barred by Statute of Limitations."  Summary Judgment is appropriate when there is no genuine issue as to any material fact and the moving part is entitled to judgment as a matter of law.  Fed.R.Bankr.P. 7056.

Department of General Services ("DGS") are barred under California law and by the statute of limitations.

On September 1, 2005, Debtors filed their Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims. Doc. No. 9315. Included were the objections to the DGS claims now at issue.[3] On February 16, 2007, Debtors filed a motion to disallow and expunge these and other claims as barred by the statute of limitations. Doc. No. 14594. On March 20, 2007, DGS filed its response. Doc. No. 14919. Debtors filed a reply brief on March 20, 2007, Doc. No. 14966, and a hearing was held on April 9, 2007.

Debtors contend that the claims are identical to those raised with respect to a Motion for Leave to File Complaint filed by 29 States, including California, in the United States Supreme Court in 1989. *See* Debtors' Appendix to Rule 1066 Summaries With Information Attached, Doc. No. 14600, at Tab B-part 1, Motion for Leave to File Complaint and brief in support thereof in *Alabama, et al v. W.R. Grace & Co., et al* ("the *Alabama* complaint"). The Supreme Court entered an order denying the motion in 1990. *See Alabama v. W.R. Grace & Co.*, 495 U.S. 928 (1990).[4] The State of California also filed claims in the Johns-Manville bankruptcy.

_____

[3]The motion addressed other claims which are the subject matter of separate orders and settlements.

[4]The parties refer to "1990" as the operative time period regarding the *Alabama* complaint. In Debtors' Appendix to Rule 1066 Summaries With Information Attached, Doc. No. 14600, at Tab B-part 1, the Motion for Leave to File Complaint and brief in support thereof in *Alabama, et al v. W.R. Grace & Co., et al*, are dated 1989. The Supreme Court's order denying the motion was entered on May 14, 1990. *See Alabama v. W.R. Grace & Co.*, 495 U.S. 928 (1990) (denying motion of New Jersey for leave to intervene as a party plaintiff and denying the motion for leave to file complaint), cited in DGS's Opposition to Debtors' Motion for an Order . . . Disallowing . . . 109 California Asbestos Property Damage Claims, Doc. No. 14919. Because
(continued...)

2

Accordingly, Debtors assert that DGS knew of its claims at least a decade before this bankruptcy case was filed in 2001 and, therefore, the claims are barred by the statute of limitations. DGS asserts that the claims filed here concern different buildings than those involved in the *Alabama* complaint.

DGS[5] argues as follows:

(1)      a cause of action accrues under California law when the last element essential to the cause of action occurs;

(2)      notwithstanding occurrence of an immediate, permanent injury, the statute of limitations may commence after that event under the "discovery rule." That is, a cause of action accrues when the plaintiff discovers or should have discovered the injury and its cause through the exercise of reasonable diligence;

(3)      under California law the date when the asbestos "created appreciable physical harm" must be determined and the mere presence of asbestos constitutes only a risk of future harm. Claimant State of California, [DGS], Opposition to Debtors' Motion, Doc. No. 14919, ¶¶18-20, at 7-8.

DGS contends that, because the *Alabama* complaint sought an "equitable remedy to address the national crisis presented by" asbestos and did not seek damages and because courts

---

[4](...continued)
the parties refer to 1990, we shall do so also.

[5]On June 13, 2007, this court entered an order allowing certain DGS claims. *See* Doc. No. 16039. The claims under consideration in this Memorandum Opinion were not addressed at that time. The parties have attempted to settle these claims. At a hearing on this case held June 23, 2008, the parties were again encouraged to settle this matter. Since then, counsel for Debtors has informed the court that a settlement was not reached.

may entertain restitution claims for asbestos abatement costs, the *Alabama* complaint and the claims filed by DGS here do not allege identical injuries and, therefore, the claims filed in this bankruptcy case are not barred by the statute of limitations, the accrual rule, or application of the doctrine of judicial estoppel. We disagree as explained below. We find that DGS's claims are barred by the statute of limitations, and the fact that the claims here may concern different buildings does not change the result.

## Applicable Law

This court must apply the limitations law of the state in which it sits which, in this case, is Delaware. *See In re Circle Y of Yoakum, Texas*, 354 B.R. 349, 359 (Bankr.D.Del. 2006), *citing In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 843 (3d Cir. 2005). *See also Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), *cert. denied* 316 U.S. 685 (1942); *In re Global Indus. Technologies, Inc.*, 333 B.R. 251, 256-57 (Bankr.W.D.Pa. 2005), *motion to set aside judgment denied* 375 B.R. 155 (Bankr.W.D.Pa. 2007); *In re Goldstein*, 66 B.R. 909 (Bankr.W.D.Pa. 1986). As to its state's residents, Delaware law requires application of the limitations period where the claim arose, unless Delaware's period is shorter. 10 Del.C. §8121.[6] W.R. Grace is a Delaware corporation. *See, e.g.*, Adv. 01-771, Doc. No. 1, at 6, ¶ 15. Under

---

[6]Section 8121 of the Delaware Code provides:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply.

Delaware law, the statute of limitations for damage to real property is three years. *Mullen v. Alarmguard of Delmarva, Inc.*, 1992 WL 114040 at *5 (Del.Super., May 20, 1992) ("the statute of limitations for the claims for damages to real property is 10 Del. C. §8106, a three-year statute of limitations"),[7] *reversed on other grounds,* 625 A.2d 258 (Del. 1993). California's statute of limitations for damage to real property is also three years. Cal. Code. Civ. Pro. §338(b).[8] Thus, we examine both California and Delaware law. The primary issue is when the statute begins to run. We find that under either statute of limitations, the claims of DGS are barred.

## Background

In 1989, the State of California and 28 other States, as *parens patriae*, filed in the United States Supreme Court a Motion for Leave to File Complaint and a brief in support thereof

---

[7]Section 8106 provides:

> No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title.

Section 8127 provides a six-year period based on deficiencies in construction and has been labeled a statute of repose, not limitations. *See, e.g. Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*, 489 A.2d 413, 421 (Del. 1984). Because claims were known to exist more than a decade before this bankruptcy case was filed, DGS's claims are barred under either the three-year statute of limitations or the six-year statute of repose.

[8]Chapter 3 of the California Code of Civil Procedure is titled "The Time of commencing Actions Other Than for the Recovery of Real Property." Section 338 is titled "Three years" and provides, in relevant part:

> Within three years: . . . (b) An action for trespass upon or injury to real property [must be commenced].

5

against Debtors and several other defendants "to protect the public health and as owners of public buildings contaminated by asbestos-containing products." *See* Appendix to Rule 1066 Summaries With Information Attached, Doc. No. 14600, at Tab B-part 1, *Alabama, et al v. W.R. Grace & Co., et al*, Brief in Support of Motion for Leave to File Complaint, at 11. The Supreme Court denied the motion for leave to file a complaint on May 14, 1990. 495 U.S. 928 (1990). *See* Doc. 14594 at 9.

The brief filed by the States involved in the *Alabama* complaint mentions specifically that "[t]he States seek equitable relief designed to *reimburse* them for the costs incurred in abating the asbestos contamination present in state-owned buildings and facilities," Doc. No. 14600, at Tab B-part 1 at 11-12 (emphasis added), and "the States are now required to act at great expense to remedy the *asbestos contamination found* in public buildings. . . . . The States seek *restitution for the costs* of asbestos abatement activities. . . . ." *Id.* at 12 (emphasis added).

## Discussion

We first note that, despite the characterization of the relief sought as "equitable," the States alleged that contamination had been found, and they wanted reimbursement for costs incurred in conducting abatement. The States and, therefore, DGS as part of the executive department of the State of California[9] alleged more than the presence of asbestos. They alleged

---

[9]The California Government Code, 2 Cal. Gov. Code, Div. 3, Part 5.5, at §14600 is titled "Legislative findings and declaration" and provides that

The Legislature declares that a centralization of business management functions and services of state government is necessary to take advantage of specialized techniques and skills, provide uniform management practices, and to insure a continuing high level of efficiency and economy. A Department of General Services is created to provide centralized services, including, but not limited to, planning, acquisition, construction, and maintenance of state buildings

(continued...)

---

[9](...continued)

and property; purchasing; printing; architectural services'; administrative
hearings' and accounting services.  The Department of General Services shall
develop and enforce policy and procedures and shall institute or cause the
institution of those investigations and proceedings as it deems proper to assure
effective operation of all functions performed by the department and to conserve
the rights and interests of the state.

2 Cal. Gov. Code §14600.  *See also* 2 Cal. Gov. Code §14601 titled "Existence of department"
which provides:

> There is in the state government, in the State and Consumer Services
> Agency, the Department of General Services.

Section 14603 of the California Code is entitled "Director; appointment; tenure; confirmation;
compensation" and states, in part: "The Director of General Services is appointed by and holds
office at the pleasure of the Governor.  The appointment of the director is subject to confirmation
by the Senate."  DGS has "possession and control of all records, books, papers , offices,
equipment, supplies, money, funds, appropriations, land and other property, real or personal,
held for the benefit or use of state agencies within the department."  *Id.* at §14621.

It is State policy to vest civil administration of State law in the Governor and the State
has divided the executive and administrative work into departments, including the executive
department, of which DGS is a part.  *Id.* at §11150.  Furthermore, pursuant to §14650, the
Director "or the Department of General Services" has authorization and is directed to

> exercise, with respect only to the construction, alteration, repair, or improvement
> of state buildings, the functions and powers vested in the Director of
> Transportation, the Department of Transportation, the Division of Architecture or
> the State Architect. . . .  Except to the extent only that the functions and powers
> under the statutes enumerated below in this section are vested in the Director of
> General Services or the Department of General Services by this section, the
> functions and powers under the statutes enumerated below remain with, and may
> continue to be exercised by, the Director of Transportation or the Department of
> Transportation.

*Id.* at 14650.  Section 14652 provides:

> The Department of General Services succeeds to and is vested with all of the
> duties, powers, purposes, responsibilities, and jurisdiction vested in the Division of architecture,
> the State Architect, or the Department of Transportation under Chapter 2 (commencing with
> Section 39100) of Part 23 of Division 3 of Title 2 of the Education Code, and Sections 15543,
> 16008 and 90106 of the Education Code.

(continued...)

that asbestos contamination existed in state-owned buildings and facilities at the time of the

*Alabama* complaint. Thus, they had actual knowledge of certain contamination and were, at the

very least, on inquiry notice of any other asbestos contamination in their buildings in 1990 at the

latest.[10] Inasmuch as the putative defendants in the *Alabama* action included W.R. Grace, it is

beyond dispute that California, and, therefore, DGS, *see* note 9, *supra*, knew that asbestos

contamination was caused by Grace because the State sought to recover against Grace in the

1990 Supreme Court *Alabama* action. Under California law, as discussed below, the statute of

limitations began to run at that time.

DGS attempts to distinguish its claims in this bankruptcy case from those presented in

*Alabama* asserting that the claims here

> seek to recover damages from Debtors as the result of friable
> asbestos contamination in sixteen buildings that was not
> discovered by Claimants until 2003. In short, Debtors' argument
> that the Proposed Alabama Complaint could have only been filed
> if the sixteen buildings [which are] the subject of Claimant's
> proofs of claim were contaminated with asbestos fibers is belied by

---

[9](...continued)

Section 14654 provides that [a]ll public property, real or personal, of the Department of Finance or the Department of Transportation used principally or primarily in carrying out of any function, or acquired in connection with the exercise of any function, which function is transferred to the Department of General Services is transferred to the Department of General Services."

[10]We also note that in the mid-1980s the State of California filed claims in the Johns-Manville bankruptcy. Although Johns-Manville's and W.R. Grace's products may not have been identical, the California Supreme Court in *Jolly v. Eli Lilly & Co.*, 751 P.2d 923 (Cal. 1988), held that the statute of limitations begins to run ran even though a plaintiff is unaware of specific facts establishing wrongful conduct on the part of any particular defendant, in that case a drug manufacturer. We need not delve into this aspect of the matter, however, inasmuch as California in 1990 participated in the *Alabama* action which alleged asbestos contamination and injury and named W.R. Grace as a putative defendant.

the fact that the states were seeking equitable relief in the Proposed
Alabama Complaint based only on the presence of asbestos-
containing products in buildings.

Doc. No. 14919 at 11, ¶ 26.  DGS's recitation of the substance of the *Alabama* complaint, i.e.,

that it sought only equitable relief, is either inaccurate or irrelevant, as evidenced by the

quotations above which speak of seeking restitution in the form of reimbursement for their costs

of abating existing contamination.  In this sense, "restitution" was the form of the money

damages they sought to recover; that is, the "restitutionary measure of recovery" to repay costs

they had expended.  The States in the *Alabama* complaint were asking for money damages on the

equitable ground that the State would not be responsible for bearing the clean-up cost of the

asbestos contamination.  This was not seeking equitable relief.  It was stating an equitable theory

as the basis for its claim to money damages.

In its opposition to Debtors' motion, DGS raises the Public Assistance Doctrine and

asserts that the doctrine applies to reimburse DGS for costs of asbestos abatement that an entity

has incurred and will have to bear in the future.  Doc. No. 14919.  DGS attempts to distinguish

money damages intended to compensate for property damage caused by contamination.  First,

we find this concept to be arguing a difference without a distinction.  The "clean-up costs" are

damages and the money expended to put the property into a condition without the asbestos is the

reimbursement sought.  In bankruptcy terms, this is nothing more than a right to payment; i.e., a

"claim" as defined in 11 U.S.C. §101(5).  Next, we found no federal cases referring to such a

doctrine and only two Courts of Appeals decisions referring to the Emergency Assistance

Doctrine.  One, *U.S. v. Beaudoin*, 362 F.3d 60 (1st Cir. 2004),  *cert. granted and judgment*

*vacated sub nom. Champagne v. U.S.*, 543 U.S. 1102 (2005), was a criminal case and the other,

*U.S. v. Consolidated Edison Co. of New York, Inc.*, 580 F.2d 1122 (2nd Cir. 1978), applied the

Emergency Assistance Doctrine in terms of recovery of costs incurred on a quasi-contractual

basis.  There are eleven district court cases citing the doctrine, but we found none from

California or Delaware.  *Independent School Dist. No. 197 v. W.R. Grace & Co.*, 752 F.Supp.

286 (D.Minn. 1990),  cites the Restatement of Restitution §115 (1937):

> A person who has performed the duty of another by supplying things or
> services, although acting without the other's knowledge or consent, is entitled to
> restitution from the other if:
> (a) he acted unofficiously and with intent to charge therefor; and
> (b) the things or services supplied were immediately necessary to satisfy
> the requirements of public decency, health, or safety.

To the extent the doctrine applies outside the personal injury context at all, and we note that the

matter at bench does not involve personal injury, here DGS attempts to distinguish a claim for

money damages by arguing that the mere presence of asbestos may be enough to support a

restitution claim under the doctrine while a cause of action for asbestos property damage requires

release of fibers.  DGS therefore asserts that the claims raised in the *Alabama* complaint sought

only equitable relief based merely on the presence of asbestos contamination and, therefore, its

claims in this bankruptcy case have to be allowed.  This argument is without merit.  In the

*Alabama* complaint the States sought to "protect the public health and as owners of public

buildings contaminated by asbestos-containing products" and sought reimbursement "for the

costs incurred in abating the asbestos contamination present in state-owned buildings" sought "to

protect their people and property from further serious harm."  *Alabama, supra*, at 11-12, 21.

Money damages are money damages and DGS cannot recast its claim as one that did not seek

money damages when, in fact, that  is exactly what it sought, whether on a legal or equitable

theory of recovery.

In *City of San Diego v. U.S. Gypsum Co.*, 30 Cal.App.4th 575 (Cal.App. 2 Dist., 1994), the court noted that the statute of limitations begins to run when the "last element essential to a cause of action" occurs. *Id.* at 582. Once "actual and appreciable harm" has occurred, the statute begins to run regardless of the extent of the harm, as long as it is more than nominal. *Id.* at 583.

The City of San Diego presented arguments similar to those propounded here by DGS. In the *Alabama* complaint, the State sought "restitution for the costs of asbestos abatement activities," *Alabama* complaint, Doc. 14600, at Tab B-part 1, at 12, and reimbursement for costs incurred in abating contamination. *Id.* at 11. The court in *City of San Diego* held that because, within the statute of limitations, the City had knowledge of the substantial risk caused by inhalation of asbestos fibers, it was required to inspect its property and deal with the asbestos materials. The court found that the City was bound by its pleadings, which asserted damages, and the defendants were entitled to rely on the City's pleadings. The record in that case established that some, although not all, of the pleaded damages had been suffered more than three years before the City brought its action and, therefore, the statute of limitations commenced when those damages occurred. *City of San Diego, supra*, 30 Cal. App. 4th at 583.

Furthermore, in *City of San Diego*, the court rejected the City's argument with respect to its causes of action on a building-by-building basis. Thus, DGS's argument that, regarding the 16 buildings subject to the proofs of claim at issue, it did not discover its claims until 2003 does not affect the running of the statute of limitations. DGS argued that the statute of limitations had not lapsed when it filed its proofs of claim because Debtors had not proven that contamination occurred in each of the buildings in question. First, that is not the standard. Even if that were

11

the standard, the burden is on DGS "to plead *facts* to show *inability* to have made earlier discovery." *Camsi IV v. Hunter Technology Corp.*, 230 Cal.App.3d 1525, 1538 (Cal.App. 6 Dist., 1991) (emphasis in original). DGS has not asserted an inability to have made earlier discovery and, based upon its knowledge in 1990, cannot make such an assertion now.

DGS's knowledge, as evidenced in the *Alabama* complaint, was sufficient as a matter of law to establish the elements of its cause of action under California law and to commence the running of the statute of limitations. As of 1990, DGS knew that its properties were contaminated by asbestos-containing materials, even if it did not then know every particular building that was so contaminated, and it was clearly on notice to follow through. *See Jolly v. Eli Lilly & Co.*, 751 P.2d 923 (Cal. 1988) (statute of limitations ran even though plaintiff was unaware of specific facts that established wrongful conduct on the part of any particular drug manufacturer). Indeed, contamination was asserted as a fact in support of the request to the Supreme Court in the *Alabama* complaint. The 29 States, including the State of California, brought the motion directly to the Supreme Court because they sought to "remedy the asbestos contamination found in public buildings." Further, W.R. Grace was named in the *Alabama* complaint as a putative defendant in the event that the motion for leave to file the complaint was granted. *See Alabama* complaint, Doc. No. 14600, at Tab B-part 1, at 12.

Although there is case law in California supporting the principle that a tort cause of action for negligence or strict liability with respect to asbestos contamination does not accrue until asbestos fibers are released into the air, *San Francisco Unified School Dist. v. W.R. Grace & Co.*, 37 Cal.App.4th 1318, 1334 (Cal.App. 1 Dist., 1995), the discovery rule applies nonetheless. In *San Francisco Unified School Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318,

1332 (Cal. App. 1 Dist. 1995), with respect to asbestos particularly, the California court stated as

follows:

> Neither uncertainty as to the amount of damages nor difficulty in proving
> damages tolls the limitations period. . . . The extent of damage is not an element
> of a cause of action in tort. . . . However, in an asbestos-in-building case, the
> *extent* of damage is not at issue – it is the *existence* of injury that is uncertain.
> Last year, the California Supreme Court stated that ignorance of the existence of
> an injury may delay the running of the statute of limitations until the date of
> discovery. . . . While an aggrieved party generally need not know the exact
> manner in which its injuries were effected, the plaintiff must know of the
> existence of injury. (Ibid.) The discovery rule is based on the notion that statutes
> of limitation are intended to run against those who fail to exercise reasonable care
> in the protection and enforcement of their rights.

37 Cal. App. 4th at 1332 (emphasis in original) (citations omitted).

     In *Kisaka v. Banco Popular North America, Inc.*, 2007 WL 4347017 (Cal.App. 2 Dist.,

Dec. 13, 2007), the California Court of Appeals stated that "[o]nce the plaintiff has a suspicion

of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on

her rights." *Kisaka*, at \*3, quoting *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 928 (Cal. 1988). *See*

*also Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 917 (Cal. 2005) ("under the delayed

discovery rule, a cause of action accrues and the statute of limitations begins to run when the

plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and

proves that a reasonable investigation at that time would not have revealed a factual basis for that

particular cause of action.")

     Moreover, under California law, a plaintiff's ignorance of the legal significance of known

facts or the identity of the defendant will not delay the running of the statute. *Fox v. Ethicon*

*Endo-Surgery, Inc.* 110 P.3d 914, 920 (Cal. 2005), citing *Norgart v. Upjohn Co.*, 981 P.2d 79

(Cal. 1999). "A plaintiff has reason to discover a cause of action when he or she 'has reason at

least to suspect a factual basis for its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d at 920, quoting *Norgart v. Upjohn Co.*, 981 P.2d at 83. The limitations period will begin once the plaintiff "has notice of circumstances to put a reasonable person on inquiry." *Jolly*, 751 P.2d at 927-28, quoting *Gutierrez v. Mofid*, 705 P.2d 886, 888 (Cal. 1985) (rehearing denied). Plaintiff's awareness of specific facts is not necessary to establish the claim and, once a plaintiff has suspicion of wrongdoing, as long as that suspicion exists, plaintiff has "a duty to reasonably investigate," *Jolly, supra*, 751 P.2d at 928. "[A] suspicion of wrongdoing, coupled with a knowledge of the harm and its cause, will commence the limitations period." *Id.* Thus, under California law, the statute of limitations has run.

Delaware law regarding the inception of the statute of limitations is in accord. *See Whittington v. Dragon Group, L.L.C.*, 2008 WL 4419075 *7 (Del.Ch., June 6, 2008)(statute of limitations is tolled only when the injury is discovered or should have been discovered; "[i]nquiry notice is sufficient to prove that the statute of limitations was not tolled for purposes of summary judgment, or that the doctrine of laches is applicable" and "exists when the plaintiff is 'objectively aware of the facts giving rise to the wrong'" ). The Delaware statute of limitations begins to run when a claimant has actual knowledge of physical damage to property or when it is put on inquiry notice. *See, e.g., Fike v. Ruger*, 754 A.2d 254 (Del.Ch. 1999), *aff'd* 752 A.2d 112 (Del. 2000); *Rudginski v. Pullella*, 378 A.2d 646 (Del.Super. 1977).

Further, in *Whittington v. Dragon Group, L.L.C.*, 2008 WL 2316305 at *5 (Del. Ch., June 6, 2008), *superseded on other grounds, Whittington v. Dragon Group, L.L.C.*, 2008 WL 4419075 *7 (Del.Ch., June 6, 2008), the court stated the general rule in Delaware to be that the cause of action accrues and the statute of limitations begins to run when the alleged wrongful act

14

occurs, even if the plaintiff is "ignorant of the cause of action" and when the plaintiff is put on inquiry notice of the claim. In the matter before us, as stated in the *Alabama* complaint, DGS was at least on inquiry notice by 1990 at the latest. Its claims are barred under Delaware law as well.

For the foregoing reasons, we conclude Debtors' objection to DGS's claims must be sustained and Debtors' motion for summary judgment will be granted.

An appropriate Order will be entered.

Dated: October 10, 2008

*Judith K. Fitzgerald*

Judith K. Fitzgerald
United States Bankruptcy Judge

jmd

The Case Administrator shall send a copy of this Memorandum Opinion to all parties in interest who do not receive electronic notice.

15