IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | x | Chapter 11 |
| | : | |
| W. R. GRACE & CO., et al., | : | Case No. 01-1139 (JKF) |
| | : | (Jointly Administered) |
| Debtors. | : | Related Dkt. 19581 |
| | x | Hearing Date: 10/27/08 @ 9:00 |

KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND
SUPPORT TERMINAL SERVICES, INC. OBJECTION TO DISCLOSURE
STATEMENT FOR JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF
THE BANKRUPTCY CODE OF W.R. GRACE & CO., ET AL., THE OFFICIAL
COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI
FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS DATED AS OF SEPTEMBER 19, 2008

Now come Kaneb Pipe Line Operating Partnership, L.P. ("Kaneb")[1] and Support Terminal Services, Inc. ("STS")[2] [collectively, "Movants"] and file this their objection to the Disclosure Statement for Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Dated as of September 19, 2008 filed by W.R. Grace & Co., et al.,[3] the Official Committee of

---

[1] Effective March 31, 2008, Kaneb changed its name to Nustar Pipeline Operating Partnership, L.P.

[2] Effective March 31, 2008, STS changed its name to Nustar Terminal Services, Inc.

[3] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders ("**Disclosure Statement**")[4] and state as follows:

### I. Objections

#### A. The Standard

1. Section 1125 of the bankruptcy code requires that a disclosure statement contain "adequate information;" that is, information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan. 11 U.S.C. § 1125.

#### B. Objection Concerning Section 2.8.3.1

2. In 1992-93, pursuant to the STS Agreement and Plan of Merger ("**Merger Agreement**"),[5] Kaneb purchased from future debtor Grace Energy Corporation ("**GEC**"), several entities. In 1997, it filed the action styled *Grace Energy Corporation v. Kaneb Pipe Line Operating Partnership, L.P., et al.*, in the 191st District Court in Dallas County, Texas, cause No. 97-05135-J ("**Kaneb State Court Action**"). The action concerned the Cape Cod Pipeline (known in the Kaneb State Court Action as the "**Otis Pipeline**") described below, and each parties' respective indemnity rights under the Merger Agreement. In the Kaneb State Court

---

[4] The Disclosure Statement was filed on September 19, 2008 at 01-01139 Dkt. 19581. Accompanying the Disclosure Statement was the separately filed Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Dated as of September 19, 2008 filed by W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders ("Plan") filed on September 19, 2008 at 01-01139 Dkt. 19579. Also accompanying the Disclosure Statement was an Exhibit Book filed on September 19, 2008 at 01-01139 Dkt. 19580, referencing 24 Disclosure Statement Exhibits. However, not all of these Disclosure Statement Exhibits have been prepared. The Debtors also filed Motion Of The Debtors For An Order Approving Disclosure Statement, Solicitation And Confirmation Procedures, Confirmation Schedule And Related Relief on September 25, 2008 at 01-01139 Dkt. 19621.

[5] The Merger Agreement is an executory contract because both the debtor and the nondebtor parties have material indemnity rights under its Article 13. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984) (an executory contract is one on which performance remains due to some extent on both sides).

Action, GEC sought declaratory and contractual monetary relief, and the Defendants filed affirmative defenses and counterclaims. After a jury trial, on August 30, 2000, the trial court in the Kaneb State Court Action rendered an Amended Final Judgment. Both Movants and GEC have filed notices of appeal of the Amended Final Judgment from the State Court Action, initiating the appeal styled *Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc., Appellants and Cross-Appellees v. Grace Energy Corporation, Appellee and Cross-Appellant* in the Fifth Court of Appeals District, Dallas, Appeal No. 05-00-01592-CV ("Kaneb Appeal"). Due to the bankruptcy filing, the appeals have been suspended by Texas Rules of Appellate Procedure 8.2 and 8.3. *American Rice v. Tenzer*, 1998 Tex. App. LEXIS 7319 (Tex. App. Houston 1st Dist. Nov. 17, 1998)(not designated for publication).

3. The Disclosure Statement provides the following at page 2.8.3.1 at pp. 34-35:

### 2.8.3.1 Cape Cod Pipeline [6] Remediation

> Certain of the Debtors are involved in disputes over the remediation of an abandoned jet fuel pipeline on Cape Cod, Massachusetts. In 1993, Grace Energy Corporation ("Grace Energy"), a Debtor, sold certain of its subsidiaries, one of which then owned the Cape Cod pipeline, to Kaneb Pipe Line Operating Partnership L.P. ("Kaneb"). In 1995 and 1997, respectively, the Massachusetts Department of Environmental Protection and the U.S. Department of Justice (the "DOJ") made cleanup demands related to alleged pipeline leaks. The federal government is engaged in extensive cleanup of the pipeline site. Federal officials have estimated that the remediation may cost as much as $75 million.
>
> In 1997, Grace Energy brought an action in Texas state court against Kaneb to: (a) determine the ownership of, and responsibility for, the pipeline, and (b) seek indemnification for cleanup costs. The Texas state court held that the pipeline had been transferred to the defendants and that Grace Energy does not owe indemnity to Kaneb for the pipeline cleanup costs. The Texas state court awarded Grace Energy approximately $1.8 million in attorneys' fees, but also found that Grace Energy was not entitled to indemnification of out-of-pocket remediation costs. Both sides appealed shortly before the action was stayed by the Chapter 11 Cases and the modified preliminary injunction that was subsequently entered by the Bankruptcy Court.

---

[6] This has also been called the Otis Pipeline, so it will be called herein the Cape Cod/Otis Pipeline.

4. Movants make the following Objections:

- Section 2.8.3.1 does not adequately identify the "modified preliminary injunction" affecting this litigation.

- Neither the Plan nor the Disclosure Statement are clear about how Plan confirmation will affect the automatic stay and the modified preliminary injunction with respect to the Kaneb State Court Action or the Kaneb Appeal. Movants would like to pursue their appeal and any subsequent litigation.[7] Movants filed numerous affirmative defenses and counterclaims in this litigation. In the Kaneb Appeal, Movants reserve the right to contest any and all issues supporting or granted in the judgment in the Kaneb State Court Action, including, but not limited to any declaratory judgment regarding liability for the Cape Cod/Otis Pipeline, and any judgment that GEC does not owe indemnity to Movants and any award of attorneys fees. Movants object that neither the Plan nor the Disclosure Statement are clear as to whether that Movants will be allowed to pursue this litigation upon Plan confirmation.

- Neither the Plan nor the Disclosure Statement states whether the Debtors intend to prosecute the Kaneb Appeal or any subsequent litigation in connection with the Cape Cod/Otis Pipeline.

- Movants object to the statement that GEC brought its action in the Kaneb State Court Action to determine "responsibility for" the Cape Cod/Otis Pipeline. The issue of responsibility for the Cape Cod/Otis Pipeline was not before the trial court and is not determined in the judgment.

- Movants object to the statement that GEC "sold certain of its subsidiaries, one of which then owned the Cape Cod pipeline, to Kaneb." Whether any Grace subsidiary that was sold to Kaneb owned the Cape Cod/Otis Pipeline is a matter to be litigated. Movants object that this statement is not an accurate statement of fact.

- Movants object that the Section 2.8.3.1 does not state that Support Terminal Services, Inc. was also a defendant in the Kaneb State Court Action and may be bound by some or all of the relief awarded or denied in the judgment.

- Exhibit 19 in the Exhibit Book is described as a list of currently pending claims or causes of action brought by or anticipated to be brought shortly by one or more of the Debtors. Disclosure Statement Section 2.10.3 (p. 45), 2.10.3.2 (p.46); Plan Section I.161 (p. 29); 01-01139 Dkt. 19580. However, as of October 13, 2008, no Exhibit 19 has been provided. 01-01139 Dkt. 19580. Movants object to the lack of adequate notice of such litigation.

---

[7] *See In re Wilson*, 116 F.3d 87, 90 (3rd Cir. 1997) (Rooker/Feldman doctrine prevents bankruptcy court from deciding a state court appeal, so stay must lift to allow prosecution of state court appeal).

{08008}                                    4

C.   **Objection Concerning Section 2.8.3.4.**

5. The Disclosure Statement provides the following at page 2.8.3.4 at pp. 35:

On the basis of indemnification agreements entered into by certain of the Debtors, Samson Hydrocarbons, a buyer of one of the Debtor's former businesses, has filed two proofs of Claim for approximately $8 million for past and future remediation expenses related to the Otis pipeline[8] in Massachusetts and six other remediation sites. The Debtors may incur material liability in connection with these claims.

6. Movants make the following objections:

- Section 2.8.3.4 does not adequately identify what "former business" was bought by Samson Hydrocarbons, and by what transactions Debtors acquired an indemnity obligation to Samson Hydrocarbons. To the extent that the "former business" is an entity formerly known as Grace Petroleum Corporation, or any other entity that may hold past or future liability for the Cape Cod/Otis Pipeline as described in Section 2.8.3.1, Movants object to the omission of this fact from the Disclosure Statement and object that neither the Disclosure Statement nor the Plan address the injunctive or other effect of the Plan on the indemnity obligation identified in 2.8.3.4.

- Section 2.8.3.4 does not adequately identify the calculation of the $8 million of liability under the indemnity agreement, what portion of that liability is based on past and future damages for remediation expenses arising from the Cape Cod/Otis Pipeline, or any of the six other remediation sites, which also are not adequately identified.

D.   **Objection Concerning Section 4.8**

7. Section 4.8 of the Disclosure Statement and 8.1 of the Plan concern the Debtors' discharge. Movants make the following Objections:

- Movants object that the Disclosure Statement Section 4.8 and Plan Section 8.1 provide for a broader discharge than allowed by 11 U.S.C. § 1141 and 524. For example, the discharge purports to discharge assets, properties, or interests in properties of the Debtors or Debtors in Possession. Movants object to the language that the Reorganized Debtors "shall not be responsible for any obligations of the Debtors or the Debtors in Possession except those expressly assumed by the Reorganized Debtors in the Plan."[9] Movants object to the

---

[8] If Debtors here reference the same pipeline as the "Otis Pipeline" as they reference as the "Cape Cod" pipeline in 2.8.3.1, then in the interest of clarity Movants request that Debtors standardize their language in the Disclosure Statement to call the pipeline and related litigation by consistent terms.

[9] Is this language intended to effect a rejection of executory contracts? It is not clear, but if it does, the requirements of 11 U.S.C. § 365 are not met.

language that "All Entities shall be precluded and forever barred from asserting against the Debtors and Reorganized Debtors, or their assets, properties, or interests in property" as being broader than that allowed by 11 U.S.C. § 1141 and 524. The debtor is entitled only to a discharge of "debt" as a "personal liability." 11 U.S.C. §§ 1141(d); 524(a)(1), 524(a)(2); *see also* 11 U.S.C. § 101(5) and (12)("debt" means liability on claim, and "claim" is a right to payment); *Brown v. General Motors Corp.*, 152 B.R. 935, 939 (W.D. Wis. 1993)(only debts are discharged).

- Movants object that the Disclosure Statement Section 4.8 and Plan Section 8.1 do not adequately describe what aspects of the litigation described in Disclosure Statement Section 2.8.3.1 the Debtors contend will be barred by the discharge.

- Movants contend that defensive matters in the Kaneb State Court Action (including defending any declaratory judgment regarding the ownership of Cape Cod/Otis Pipeline assets and liability for the Cape Cod/Otis Pipeline, and defending GEC's claims for indemnity, and setoff and recoupment rights under the Merger Agreement) will not be barred by the discharge injunction.[10] Movants' contend that its indemnity claims under the executory Merger Agreement for costs of remediation regarding the Cape Cod/Otis Pipeline, and any other issues that may be raised in the Kaneb Appeal related to the Merger Agreement[11] will not be barred by the discharge injunction. To the extent that the Plan purports to discharge these rights, Movants object.

- Movants contend that matters related to insurance coverage formerly or currently held by Grace entities, including insurance coverage in connection with the Cape Cod/Otis Pipeline and the Macon, Georgia site,[12] will not be barred by the discharge injunction. To the extent that the Plan purports to discharge these rights, Movants object.

---

[10] *In re Black*, 280 B.R. 680, 685-86 (Bankr. N.D. Ala. 2001)(neither setoff nor recoupment barred by discharge); *Brown v. General Motors Corp.*, 152 B.R. 935, 939 (W.D. Wis. 1993)(defense of recoupment not barred by discharge order); *see also Megafoods Stores v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1036 (3d Cir. 1995)(citing cases where creditor permitted to recoup or setoff despite failure to object to plan confirmation or appeal from the confirmation order).

[11] *Century Indem. Co. v. NGC Settlement Trust (In re National Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000)(if an executory contract is neither assumed nor rejected, it will ride through the proceedings and be binding on the debtor even after a discharge is granted, thus allowing the non-debtor's claim to survive the bankruptcy).

[12] A discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt. *In re Conston Inc.*, 181 B.R. 769, 773 (D. Del. 1995). This would include any insurers of the debtor. *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 53-54 (5th Cir. 1993); *see also Ranger Ins. Co. v. Wolcott (In re TLI, Inc.)*, 1998 U.S. Dist. LEXIS 15488 (N.D. Tex. 1998) (the discharge was not an impediment to proceeding against the insurance policy); *Frazier v. McInnis*, 1996 Tex. App. LEXIS 4226 (Tex. App. San Antonio Sept. 25, 1996) (unpublished) (bankruptcy only acts as an injunction against seeking personal liability against him on the debt, but it does not extinguish the debt nor does it prevent the Fraziers from establishing McInnis' liability in a state proceeding in order to recover from McInnis' insurer); *Am. College of Dentists v. Dorris Mktg. Group*, 2005 Bankr. LEXIS 282 * 5 (stay relief is appropriate when the debtor is a nominal defendant and recovery is only being sought against third parties or insurance policies).

E.  **Objection Concerning Use of Insurance**

8. The Plan proposes the use of an Asbestos PI Trust and an Asbestos PD Trust, funded in part by insurance coverage, to pay asbestos related claims. Disclosure Statement, p. 11, Section 2.10.2 (pp. 42-44); Plan at pages 4-14 and 52-69. The Plan refers to Exhibit 5 in the Exhibit Book as a list of Asbestos Insurance Policies actually or potentially providing coverage for any Asbestos Claim. Plan Section 1.1.11 (p. 4). Exhibit 6 in the Exhibit Book is supposed to be the "Asbestos Insurance Transfer Agreement." 01-01139 Dkt. 19580. However, as of October 13, 2008, no Exhibits 5 or 6 have been provided. 01-01139 Dkt. 19580. There may be insurance policies that provide coverage or payment for the claims of the Movants, including those in connection with the Cape Cod/Otis Pipeline and the Macon, Georgia site, that the Debtors propose to use for asbestos claimants. However without Exhibits 5 and 6 and further information on those policies, the Movants cannot tell whether their insurance rights are proposed to be affected. Accordingly, the Movants object to the lack of information about the insurance policies.

## II.  Prayer

WHEREFORE, PREMISES CONSIDERED, Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. request that the Court deny approval of the Disclosure Statement, and for all other relief to which Movants shows themselves justly entitled.

Dated: October 16, 2008

Respectfully submitted,

SMITH, KATZENSTEIN & FURLOW LLP

_____
Kathleen M. Miller (I.D. No. 2898)
Etta R. Wolfe (I.D. No. 4164)
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410 (Courier 19801)
Wilmington, De 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
Email: kmiller@skfdelaware.com

FULBRIGHT & JAWORSKI L.L.P.
Steve A. Peirce, Bar No. 15731200
300 Convent Street, Suite 2200
San Antonio, TX 78205-3792
Telephone: (210) 224-5575
Facsimile: (210) 270-7205
Email: speirce@fulbright.com

**ATTORNEYS FOR KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND SUPPORT TERMINAL SERVICES, INC.**