IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re                                Chapter 11

                                  :

W. R. GRACE & CO., et al.,          Case No. 01-01139 (JKF)
                                Jointly Administered

                                  :

                 Debtors.         **Re: Docket No. 19620**
                                 **Hearing Date: October 27, 2008 at 9:00 a.m. (EDT)**

                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**OBJECTION OF THE SCOTTS COMPANY LLC AND CERTAIN OF ITS RELATED
ENTITIES TO THE MOTION OF THE DEBTORS FOR AN ORDER APPROVING
DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION
PROCEDURES, CONFIRMATION SCHEDULE AND RELATED RELIEF
[Docket Number 19620]**

        The Scotts Company LLC, successor by merger to The Scotts Company, and

certain of its related entities ("Scotts"), by their undersigned counsel, hereby object to the

adequacy of the Debtors' Disclosure Statement for the Joint Plan of Reorganization under

Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al. ("WR Grace" or "Debtors"), the

Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants'

Representative, and the Official Committee of Equity Security Holders ("Joint Plan Proponents")

Dated as of September 19, 2008 (the "Disclosure Statement"), as follows:

<u>**Background and Procedural History**</u>

        1.       Beginning in approximately 1960, Scotts purchased vermiculite ore from

WR Grace. Up until 1980 when Scotts changed its vermiculite sourcing, some of that ore came

from WR Grace's mine in Libby, Montana ("Libby").

        2.       Scotts is currently defending claims based on the allegation that the WR

Grace vermiculite that Scotts incorporated into certain of its products for re-sale was

contaminated with asbestos ("State Actions").  As such, the State Actions necessarily implicate WR Grace's vermiculite as an alleged cause of the alleged damages to these individuals.  Indeed, Debtors have acknowledged that the State Actions are "a classic case of a situation where the debtor is being put on trial without being there."  See, e.g., December 20, 2004 Tr. at p. 31, D.I. 7679.

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      Contemporaneously with the filings of their Chapter 11 petitions, the Debtors filed the adversary proceeding entitled W. R. Grace & Co., et al. v. Margaret Chakarian, et al. and John Does 1-1000, Adversary No. 01-AP-0071.  A temporary restraining order was initially entered on April 2, 2001 and on May 3, 2001, the Court issued a preliminary injunction. See Adversary No. 01-AP-0071, D.I. 31.

5.      On January 22, 2002, the Court entered an "Order Granting Modified Preliminary Injunction" (the "Modified Preliminary Injunction") (Adversary No. 01-AP-0071, D.I. 87), which, among other things, enjoined the commencement or continuation of certain actions against non-debtor third-parties, including actions: (1) that arise from alleged exposure to asbestos, indirectly or directly, allegedly caused by the Debtors, against (a) Fresenius, (b) Sealed Air, (c) Merrill Lynch, (d) Credit Suisse First Boston, (e) certain of the Debtors' insurance carriers, (f) Affiliates of the Debtors that are not filing entities for purposes of the Chapter 11 Cases, and (g) present and former officers, directors and employees of the Debtors; (2) for which there may be coverage under certain of the Debtors' insurance policies; (3) brought against

certain of the Debtors' insurance carriers, which allege coverage for asbestos-related liabilities; or (4) against current and former officers, directors or employees of the Debtors that arise out of such officer's, director's or employee's employment or relationship with the Debtors.

6.      On June 24, 2004, Scotts filed its expedited motion ("Expedited Motion") for a stay of the State Actions on the ground that the State Actions were actions for which there may be insurance coverage under certain of Debtors' insurance policies and that their prosecution was thus enjoined by the Modified Preliminary Injunction. See Adversary No. 01-AP-0071, D.I. 208.  Many of the insurance policies addressed by the Modified Preliminary Injunction extend coverage to vendors of W. R. Grace's products, including Scotts.  Because the allegations against Scotts in the State Actions are premised on the purported asbestos found in the W. R. Grace vermiculite sold by Scotts, Scotts maintains that it has a right to coverage under such insurance policies.

7.      On July 6, 2004, the Court conducted a hearing on the Expedited Motion. Among other things, Debtors conveyed their support for the motion, adding, "We believe that [Scotts has] set forth a plausible claim for coverage." See July 6, 2004 Tr. at p. 14, D.I. 6012.

8.      On July 22, 2004, the Court entered an order denying Scotts' Expedited Motion (the "July 22, 2004 Order"). Id. at D.I. 253.  The Expedited Motion was denied with the following condition, among others:  "*the Insurance Carriers* [as that term is defined in the Modified Preliminary Injunction] as to which Scotts makes a claim on shared insurance *are prohibited from paying those claims until the issue of coverage is litigated in an appropriate forum.*" Id. at p. 2, ¶2 (emphasis added).

9.      On September 2, 2004, Scotts filed its Complaint for Declaratory and Other Relief against American Employers Insurance, Boston Old Colony Insurance Company,

Continental Casualty Company, Employers Commercial Union n/k/a OneBeacon America Insurance Company, Maryland Casualty Company, Unigard Insurance Company, and Debtors (the "Declaratory Judgment Action").  See Adversary No. 04-AP-55083, D.I. 1.

10.    On September 10, 2004 and October 14, 2004, Scotts filed motions for the temporary stay of certain other State Actions.  See Adversary No. 01-AP-0071, D.I. 271, 303. Thereafter, certain plaintiffs in the State Actions approached Scotts about continuing the pending State Court trials and adjourning the bankruptcy hearing on Scotts' motions for temporary stay, and certain other plaintiffs informed Scotts that Scotts would be nonsuited, thereby effectively resolving Scotts' pending motions in this Court.

11.    On November 15, 2004, Debtors and Scotts filed a Joint Motion to Approve a Temporary Stay to Enjoin the Prosecution of All Claims Against Scotts in the State Actions ("Joint Motion").  See Adversary No. 01-AP-0071, D.I. 322.  This Court subsequently denied the Joint Motion.  Id. at 353.

12.    Also on November 15, 2004, Scotts filed a Motion Pursuant To Federal Rule Of Civil Procedure 60(b) And Federal Rule Of Bankruptcy Procedure 9024 For Relief To The Extent Necessary From The Modified Preliminary Injunction Order Dated January 22, 2002 And/Or The Automatic Stay ("Relief from Stay Motion").  See Adversary No. 01-AP-0071, D.I. 323.

13.    On January 13, 2005, Debtors filed an Amended Plan of Reorganization, which plan did not include Insurance policies or their proceeds as a source of funding for an asbestos litigation trust.  See Case No. 01-01139, D.I. 7560.

14.    For almost four years, the Relief from Stay Motion has been continued for status hearings and the Declaratory Judgment Action has remained stayed.  Debtors had

maintained that it was "premature and unnecessary to go forward with the [insurance] litigation" on the basis that under the then-filed plan of reorganization, the insurance was to "stay[] with the reorganized debtor." See, e.g., April 25, 2005 Tr. at p. 52, Case No. 01-01139, D.I. 8364. This Court agreed that the matter should remain stayed, provided that the status quo with respect to Debtors' insurance was maintained. See, e.g., October 25, 2007 Tr. at pp. 22-23, Case No. 01-01139, D.I. 17280 ("I do still agree with the debtor. Until this case gets further along than it is, I'm just not sure that it makes much sense to get into this kind of complex litigation, so it seems to me that it should be continued."); see also id. at pp. 23-24 ("I think if there is some change with respect to the insurance, then the debtor should definitely put this on to an earlier agenda and should update both the insurance companies that are involved, the committees, and Scotts. . . .").

15.     This Court has acknowledged that Scotts should have the opportunity to litigate the insurance issues raised in its Declaratory Judgment Action. See, e.g., Tr. July 6, 2004 at p. 27-28, Case No. 01-01139, D.I. 6012.

16.     On November 15, 2006, Scotts served on the Debtors' claims agent a protective, personal injury proof of claim, in compliance with the August 24, 2006 Order as to All Pre-Petition Asbestos PI Litigation Claims, Including Settled Claims, (I) Establishing Bar Dates; (II) Approving Proof of Claim Form; and (III) Approving Notice of Pre-Petition Asbestos Personal-Injury Claims Bar Date. See Case No. 01-01139, D.I. 13061. As noted therein, Scotts maintains that it may have post-confirmation, common law indemnification, contribution or other state-law claims (collectively, "Scotts Claims") against one or more of the Debtors that are post-confirmation claims under the Third Circuit rationale expressed in Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.), 744 F.2d 332 (3d Cir. 1984) ("Frenville").

However, because the Debtors or others have taken or may take the position that the Scotts Claims are "asbestos claims" as that term may be broadly defined by the Debtors or otherwise, out of an abundance of caution, Scotts filed its protective claim in advance of the bar date set by the Court for "asbestos claims." Scotts also timely submitted the W.R. Grace Personal Injury Asbestos Questionnaire, similarly stating its position as to the Scotts Claims.

17.    During the June 23, 2008 status hearing on Relief from Stay Motion, Scotts noted the fact that the Debtors' reported settlement and anticipated filing of a joint plan of reorganization would implicate the Insurance policies at issue in the Declaratory Judgment Action, materially changing what had been the preserved status quo with respect to the rights of Scotts to coverage under the Debtors' Insurance policies. In light of this change, the Court ordered that the parties engage in informal discovery and that the matter be continued "for a status report and to determine whether to set a formal hearing schedule on the matter of lifting the stay (of the Declaratory Judgment Action) imposed." See June 23, 2008 Tr. at pp. 37-48, Case No. 01-01139, D.I. 19036..

18.    On September 19, 2008, Debtors filed their Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of WR Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008 (the "Joint Plan"). See Case No. 01-01139, D.I. 19579.

19.    As of the filing of this Objection, the Relief from Stay Motion is currently scheduled for a status hearing on October 20, 2008.

## **Argument**

20.     This Court may only approve a disclosure statement if it includes "adequate information." 11 U.S.C. § 1125(b). Adequate information is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . And in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information." Id.

21.     The Third Circuit has emphasized that "[t]hese disclosure requirements are crucial to the effective functioning of the federal bankruptcy system. Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996).

22.     Additionally, "a disclosure statement should be disapproved where the plan it describes is patently unconfirmable." In re Curtis Ltd. P'ship, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996) (and disapproving disclosure statement for that reason).

23.    Here, there is "inadequate information" in the Disclosure Statement to enable Scotts to make an informed judgment about the Joint Plan.  Accordingly, this Court should not approve the Disclosure Statement absent further disclosure by WR Grace.

24.    As noted by the Third Circuit in <u>Ryan</u>, the importance of full and honest disclosure cannot be overstated.  Here, the Disclosure Statement is vague and fails to provide a "full and honest" disclosure as to how Scotts Claims or the Declaratory Judgment Action is affected in the Joint Plan.

25.    For example, "Asbestos PI Claim" is broadly defined in the Disclosure Statement and accompanying Joint Plan and includes "Indirect PI Trust Claims," which are also broadly defined.  Given these broad definitions, it may be that the Joint Plan Proponents intend to include the Scotts Claims as Indirect PI Trust Claims.  However, the Disclosure Statement does not clearly explain this point.  If the Plan Proponents intend to treat all or any portion of Scotts Claims as Indirect PI Trust Claims under the Joint Plan, then the Disclosure Statement should so state.

26.    Proposed language to be inserted in the Disclosure Statement to resolve this issue is as follows: *Notwithstanding anything in the Plan or Disclosure Statement to the contrary, Scotts shall have an allowed claim in Class 6 for any and all losses incurred by Scotts from and after the Petition Date for damages caused by or attributable to Libby vermiculite.*

27.    Moreover, if the Joint Plan Proponents intend to treat Scotts Claims as Indirect PI Trust Claims, then they must further provide full disclosure as to why the Scotts Claims are not state common law claims that accrue post-confirmation and are therefore deemed post-confirmation claims against the reorganized debtor, not subject to compromise or discharge in a plan. <u>Frenville</u>, 744 F.2d 332 at 337-338.

8

28.     Proposed language to be inserted in the Disclosure Statement in accordance with <u>Frenville</u> is as follows:  *Notwithstanding anything in the Plan or Disclosure Statement to the contrary, Scotts Claims that are common law indemnification, contribution or other state-law claims arising post-confirmation survive as post-confirmation claims against the reorganized debtor that are not discharged, released or otherwise adversely affected by any provision of the Plan.*

29.     There is also inadequate information concerning the effect that certain injunction and release provisions may have on the Declaratory Judgment Action and the Scotts Claims.  The Disclosure Statement describes an Asbestos PI Channeling Injunction, an Asbestos Insurance Entity Injunction, and a Successor Claims Injunction.   Further, the Disclosure Statement describes the transfer of assets, including Asbestos Insurance Rights, to the Asbestos PI Trust as free and clear of all claims and causes of action.  The Disclosure Statement fails to provide adequate information for Scotts to ascertain whether the Debtors intend for these injunctions and releases to affect the Declaratory Judgment Action and the Scotts Claims, and if so, what affect such provisions may have.

30.     Attached as Exhibit 4 to the Disclosure Statement is a Trust Distribution Procedure ("TDP").  The TDP describes the procedure proposed by the Debtors, under which the Asbestos PI Trust shall make distributions to Holders of Asbestos PI Trust Claims.   The Disclosure Statement does not describe whether and/or how the TDP may affect the Declaratory Judgment Action and the Scotts Claims.

31.     Further, there is inadequate information with respect to how the Declaratory Judgment Action is affected by the Joint Plan.  The Debtors and this Court have consistently acknowledged that Scotts is entitled to have its Declaratory Judgment Action and

the issues raised therein litigated, especially if, as is currently proposed, the WR Grace Insurance policies are utilized to fund the PI Trust. Yet, under the Joint Plan as drafted, the Debtors are silent as to how Scotts' rights to coverage under the WR Grace insurance policies are protected. The Debtors must, therefore, revise their Disclosure Statement to explicitly address the treatment of the Declaratory Judgment Action, and Scotts' rights under the WR Grace insurance policies.

32.    Proposed language to be inserted in the Disclosure Statement to address Scotts' claim under the insurance policies is as follows: *Notwithstanding anything in the Plan or Disclosure Statement to the contrary, Scotts' existing rights to a coverage claim under the insurance policies, by declaratory relief or otherwise, will not be discharged, released or otherwise adversely affected by any provision of the Plan.*

### Conclusion

33.    The Debtors' Disclosure Statement contains inadequate information in that the Debtors have not included full disclosures as to the treatment of Scotts Claims or the Declaratory Judgment Action. As currently drafted, Scotts cannot make an informed judgment about the Joint Plan. Accordingly, this Court should not approve the Disclosure Statement.

WHEREFORE, for the foregoing reasons Scotts respectfully requests that the Court disapprove the Disclosure Statement and that the Court grant such further relief as is just and proper.

Dated: October 16, 2008

Robert J. Stearn, Jr. (No. 2915)
Cory D. Kandestin (No. 5025)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Phone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Robert J. Sidman (Ohio Bar #0017390)
(admitted *pro hac vice*)
Tiffany Strelow Cobb (Ohio Bar #0067516)
(*admitted pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE
LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43215
Phone:  (614) 464-6400
Facsimile:  (614) 719-4663

Attorneys for The Scotts Company LLC, and
certain of its related entities