IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JJF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Related to Docket No. 19620 |

Hearing Date: October 27, 2008 at 9:00 a.m

**OBJECTIONS AND RESERVATION OF RIGHTS OF CNA COMPANIES TO (A) MOTION OF THE DEBTORS FOR AN ORDER APPROVING DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES, CONFIRMATION SCHEDULE AND RELATED RELIEF AND (B) DEBTORS' DISCLOSURE STATEMENT FOR THE JOINT PLAN OF REORGANIZATION DATED AS OF SEPTEMBER 19, 2008 (RE: DOCKET NO. 19620)**

Parties in interest Continental Casualty Company, Transportation Insurance Company and their American insurance affiliates (individually or collectively "CNA" or the "CNA Companies"), in their individual capacity as Asbestos Insurance Entities[2] and Creditors of W.R

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

Grace & Co. (together with its debtor affiliates and subsidiaries, the "Debtors"), make this objection and reservation of rights (the "Objection") to (A) Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief (the "Disclosure Statement Motion") and (B) Debtors' Disclosure Statement for the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code Dated as of September 19, 2008, and respectfully state as follows:

## BACKGROUND

1. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

2. On September 19, 2008, the Debtors filed the Disclosure Statement Motion accompanied by (i) Debtors' Disclosure Statement for the Joint Plan of Reorganization Dated as of September 19, 2008 (the "Disclosure Statement") and (ii) the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code Dated as of September 19, 2008 (the "Plan").

3. Also on September 19, 2008, the Debtors filed the Exhibit Book, which included, *inter alia*, the Trust Distribution Procedures ("TDP") setting forth the procedures and method of resolving Asbestos PI Claims. The Exhibit Book table of contents indicated that several documents were "to come," including, as is relevant to this Objection, the Asbestos Insurance Policy Schedule, the Asbestos Insurance Transfer Agreement, and the Cooperation Agreement. As of the date of this Objection, these documents have not been filed with the Court or otherwise furnished to CNA.

2

4. CNA is a creditor of the Debtors by way of contingent claims for reimbursement, contribution and indemnity and possible premium adjustments related to those claims. CNA is also a creditor by virtue of its claims for retrospective premium, deductible reimbursement and related charges owing under various loss-sensitive programs of insurance issued to one or more of the Debtors. CNA filed an unliquidated claim for these amounts, and amended that claim several years ago to state an estimated liquidated balance of approximately $18,000,000. CNA is currently updating its actuarial projections to provide an updated estimate of its claim, and reserves the right to amend the claim accordingly. CNA's contingent claims are ostensibly within Class 6, while CNA's premium claims are ostensibly within Class 9.

5. CNA is also an Asbestos Insurance Entity that issued (a) primary insurance policies to certain of the Debtors for policy periods beginning in 1973 and ending in 1985 that are the subject of the coverage dispute described at Section 2.10.2.2 of the Disclosure Statement and (b) high level excess policies to certain of the Debtors for policy periods beginning in 1973 and ending in 1985. The Plan contemplates transferring Debtors' rights (but not all of Debtor's obligations) under those insurance policies to the Asbestos PI Trust, and would give the Asbestos PI Trust the sole right to pursue CNA under those policies to obtain coverage for any payments made by the Asbestos PI Trust on account of Asbestos PI Claims. *See* Plan § 7.2.2(d).

6. The Plan purports to preserve, with certain enumerated exceptions, the defenses that CNA has under its policies and under the law in connection with any coverage claims that may be made against it by the Asbestos PI Trust. However, as discussed below, due to those exceptions, the Plan cannot be considered "insurance neutral" as to CNA.

## ARGUMENT

### I. The Disclosure Statement Fails to Provide Adequate Information

7. Section 1125 of the Bankruptcy Code requires that, prior to voting on a plan, each holder of a claim against or interest in a debtor receive a written disclosure statement that is approved by the Bankruptcy Court as containing "adequate information." 11 U.S.C. § 1125.

8. Section 1125(a) of the Bankruptcy Code defines "adequate information" as:

> information of a kind, *and in sufficient detail*, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical investor typical of the holders of clams of interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

11 U.S.C. § 1125(a) (emphasis added).

9. The Third Circuit has noted that "the disclosure statement is a critical step in [a debtor's] * * * reorganization...." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988). "Creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, therefore the importance of full and honest disclosure cannot be overstated." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 323 (3d Cir. 2003). Accordingly, unless a disclosure statement contains sufficient and comprehensible information, the Court must deny approval of the disclosure statement.

#### A. *The Disclosure Statement Contains Inadequate Information Concerning the Asbestos Insurance Policy Schedule, the Asbestos Insurance Transfer Agreement, and the Cooperation Agreement*

10. The Plan states that, on the Effective Date, certain of the Debtors and non-Debtor affiliates identified in the Asbestos Insurance Transfer Agreement (the "Insurance Contributors")

4

"shall execute and deliver the Asbestos Insurance Transfer Agreement to the Asbestos PI Trust." Plan § 7.2.2(d). Additionally, the Plan states:

> [A]ll Asbestos Insurance Rights, and all claims and causes of action asserted or to be asserted in furtherance of or connection therewith, shall be preserved for the benefit of the Asbestos PI Trust, for prosecution either by the applicable Insurance Contributor or the Asbestos PI Trust in accordance with the Asbestos Insurance Transfer Agreement. Upon execution and delivery of the Asbestos Insurance Transfer Agreement, all Asbestos Insurance Rights shall be irrevocably transferred to and vested in the Asbestos PI Trust, without any further action by the Debtors, the other Insurance Contributors, the Asbestos PI Trust, or the Bankruptcy Court.

*Id.* Asbestos Insurance Rights include, *inter alia,* all rights, titles, privileges, interests, etc. with respect to any Asbestos Insurance Policy, which is defined as a policy under which any Insurance Contributor has or had insurance coverage with a policy period incepting prior to June 30, 1985. Plan § 1.1. This would include, among other things, all rights that Debtors have under non-settled insurance policies issued by CNA. The Plan also states that the Reorganized Debtors and the Asbestos PI Trust will enter into a Cooperation Agreement, although it does not indicate what such agreement will provide. Plan § 7.2.7.

11. The manner and terms of any transfer of insurance rights under CNA policies from the Debtors to the Asbestos PI Trust is a matter of great importance to CNA. The Plan contemplates that the Asbestos PI Trust will pay Asbestos PI Claims according to the TDP contained in an Exhibit to the Plan, and that the Asbestos PI Trust will have the sole right to seek to recover from CNA and other non-settled Asbestos Insurance Entities some or all such payments pursuant to the policies issued by the Asbestos Insurance Entities to the Debtors. Particularly since the Plan purports (with certain exceptions to be discussed below) to be "insurance neutral," in order for CNA to have a meaningful opportunity to determine whether it

should object to the Plan, it needs to be able to review all relevant documents relating to the transfer of insurance rights to the Asbestos PI Trust.

12. However, although the Plan states that the Asbestos Insurance Policy Schedule (listing the Asbestos Insurance Policies to be transferred to the Asbestos PI Trust), the Asbestos Insurance Transfer Agreement and the Cooperation Agreement are included as exhibits to the Plan, the Exhibit Book states that these exhibits are "to come." The Disclosure Statement fails to provide a date upon which the Debtors will make these exhibits available to the public. Moreover, the Disclosure Statement does not describe any of the material terms of these agreements.

13. Without further disclosure concerning the Asbestos Insurance Policy Schedule, and the terms of the Asbestos Insurance Transfer Agreement and the Cooperation Agreement, CNA cannot make an informed judgment concerning the Plan. These agreements and the Schedule have the potential to greatly affect CNA's rights, including the extent (if any) to which the Plan will lessen CNA's defenses under its policies and the law to provide coverage for Asbestos PI Claims, and in addition, potentially adversely affect its claims for audited and retroactive premiums. In the absence of these documents, CNA cannot determine how they might affect its rights and cannot make an informed judgment concerning the Plan. Accordingly, without disclosure of these documents, the Disclosure Statement cannot be approved.

### B. *The Disclosure Statement Contains Inadequate Information Concerning the Application of Sections 502(e) and 509(c) to Certain Claims in Class 6*

14. The Plan's provisions for the treatment of certain claims in Class 6 are vague and possibly contradictory, and accordingly the Disclosure Statement must be revised to definitively explain the treatment of such claims. Class 6 is comprised of all Asbestos PI Claims, which include Indirect PI Trust Claims. Plan § 3.1.6. The definition of Indirect PI Trust Claims

includes, *inter alia*, Claims and Demands for reimbursement, indemnity, contribution and subrogation. Plan § 1.1 (123). As noted, CNA possesses contingent claims for contribution and indemnity against the Debtors.

15.     The Plan provides that the Asbestos PI Claims shall not be deemed Allowed or Disallowed but, rather, "shall be resolved in accordance with the terms, provisions, and procedures of the Asbestos PI Trust Agreement and the TDP." Plan § 3.1.6. In turn, the TDP provides that Indirect PI Trust Claims based on theories of contribution or indemnity shall be treated as presumptively valid if "such claim . . . is not otherwise disallowed by Section 502(e) of the Bankruptcy Code or subordinated under Section 509(c) of the Bankruptcy Code." TDP § 5.6. Without further disclosure and clarification concerning this latter provision, the Disclosure Statement, for the reasons below, inadequately describes the treatment of Indirect PI Trust Claims for contribution or indemnity.

16.     First, Section 5.6 of the TDP implies that certain claims within Class 6 will be disallowed under section 502(e) or subordinated to other claims under section 509(c). The TDP therefore directly conflicts with the Plan's direction that all claims within Class 6 will be neither Allowed nor Disallowed. If the TDP is intended to vest the Asbestos PI Trust with the power to apply provisions of the Bankruptcy Code that are only relevant to claims adjudicated by bankruptcy court and permit the Trust to apply section 502(e) and section 509(c) to Indirect PI Trust Claims of contribution or indemnity, the Disclosure Statement should make this clear so that CNA can timely challenge the impropriety of such a provision. If, on any theory, the TDP is intended to permit the trustees of the Asbestos PI Trust to reject all contingent claims for reimbursement or contribution whenever filed, the Disclosure Statement should so state such that CNA could prepare to oppose this diminution of its state law rights and the contravention of the

Plan's alleged insurance neutrality. The Disclosure Statement cannot be approved unless it makes these issues clear.

17. Additionally, although section 502(e) contemplates the disallowance of contingent Claims based on contribution or indemnity, section 524(g) of the Bankruptcy Code provides a mechanism for chapter 11 to deal with potential asbestos-related liabilities that have not matured to the point of being a Claim as defined in section 101(5) of the Bankruptcy Code. Section 524(g) adds the concept of "future demands," which by definition can only be contingent. Section 524(g) allows for the channeling to a trust of such future claims or Demands that were not claims prior to confirmation and that arise out of the same or similar conduct or events that gave rise to Claims. *See generally* 11 U.S.C. § 524(g)(5). Section 524(g) requires that the Plan treat Demands in substantially the same manner as similar Claims and provides no basis to discriminate among types of Demands. If Section 5.6 of the TDP contemplates the rejection or subordination of certain types of demands, such as contingent claims for contribution and subrogation arising in the future, by applying section 502(e) or 509(b), it would directly conflict with section 524(g) of the Bankruptcy Code, destroy insurance neutrality, and materially affect the state law rights of CNA and other insurers. Further, there is no logical basis to apply section 502(e) or 509(b) to a Demand, which is itself contingent and cannot possibly be dealt with in the Claim consideration process contemplated by those sections.

18. Because the Disclosure Statement does not indicate whether any of the aforementioned outcomes are contemplated under the Plan or Section 5.6 of the TDP, the Disclosure Statement does not provide CNA with sufficient information to make an informed judgment concerning the Plan. Accordingly, the Disclosure Statement cannot be approved.

### C. *The Disclosure Statement Provides Inadequate Information Concerning Insurance Neutrality*

19. The Disclosure Statement cannot be approved unless it provides further information concerning insurance neutrality. True insurance neutrality is achieved only when a plan does not diminish the property, increase the burdens, or impair the rights of an insurer. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 218 (3d Cir. 2004). While the Plan purports to be "insurance neutral" (except for assignment of policy rights from the Debtors to the Asbestos PI Trust), various provisions in the plan are ambiguous as to whether other rights of Asbestos Insurance Entities under the policies or the law would be adversely affected by the Plan. The Disclosure Statement cannot be approved until further information concerning insurer neutrality is provided to CNA, so that CNA can make an informed judgment concerning the Plan.

20. First, the injunction provided under section 524(g) of the Bankruptcy Code and Section 8.2 of the Plan bars any Asbestos PI Claimant from, *inter alia*, "commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party." Plan § 8.2.1(a). The Disclosure Statement is unclear whether this injunction would prevent insurers who submit Indirect PI Trust Claims for contribution or indemnity to the Trust, or who become involved in coverage litigation with the Trust, from exercising their rights under state law to take discovery of the Debtors concerning matters that would affect their coverage and defenses, including claimant information (including all materials used in connection with the estimation proceedings) and information held or obtained by the Trust. The Disclosure Statement should be clarified to assure the insurers that notwithstanding the broad scope of the injunction, all such Asbestos Claim information affecting their coverage and defenses is adequately preserved by the Plan Proponents and other parties.

9

21. Additionally, the insurance neutrality provision of the Plan is not as broad or neutral as what this Court has previously approved in this case, as set forth in the Order Denying Insurers' Motion for Access to Exhibits to 2019 Statements and Clarifying Scope of the Personal Injury Claims Estimation Proceeding (the "2019 Order"). Unlike the 2019 Order, the Plan would eliminate any coverage defenses that Asbestos Insurance Entities might otherwise have under the law and their policies that (i) the Plan or any of the Plan Documents do not comply with the Bankruptcy Code, or (ii) the transfer of the asbestos insurance policies and rights to the Asbestos PI Trust are in violation of the policies or the law. *See* Plan § 1.1(15). The Plan further provides that "otherwise applicable principles of res judicata or collateral estoppel" will be applied against Asbestos Insurance Entities with respect to any issue that is actually litigated by Asbestos Insurance Entities as part of objections to confirmation of the Plan. *See* Plan § 7.15(e).

22. It is unclear whether the provision of the Plan precluding insurers from asserting that the Plan or Plan Documents do not comply with the Bankruptcy Code is intended to preclude insurers, in any coverage litigation with the Asbestos PI Trust, from challenging the legitimacy or appropriateness of the TDP to establish the insurers' coverage liability (including the medical, causation, or exposure criteria and disease values contained in the TDP), the manner in which these TDP are being administered by the Trust to establish coverage liability, or the failure to the Trust to comply with all policy conditions dealing with notice, cooperation, and insurer approval of settlements. The Disclosure Statement must clarify that the Plan is intended to permit insurers to raise these and any other valid defenses that would be applicable. If the Plan is not so intended, then that should be clearly disclosed so that CNA can act to protect against the impairment of its rights. As to the provision in the Plan relating to res judicata or collateral estoppel, it is uncertain whether the Plan would be engrafting some new claims

preclusion principles over and above those that might otherwise be applied by a court adjudicating a coverage dispute. Moreover, since it is the court in a subsequent action that properly considers and decides whether and to what extent to apply such preclusive doctrines, it is not clear whether the Plan envisions that this Court would attempt to dictate the rulings of the court in the later action (which CNA contends would exceed the scope of this Court's subject matter jurisdiction, authority, and discretion). Again, if the Plan is so intended, then that should be clearly disclosed so that CNA can act to protect against the impairment of its rights.

23. In *In re Congoleum*, the Bankruptcy Court for the District of New Jersey struck language very similar to that provided in this Plan. There, the plan provided, in relevant part, that the insurance neutrality provision "would not . . . nor shall it be construed to, preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against any Asbestos Insurance Company with respect to any issue that is actually litigated by such Asbestos Insurance Company as part of its objections, if any, to confirmation of the Plan." Congoleum Plan at § 11.11(b), *In re Congoleum*, No. 03-51524 (Bankr. D. N.J. Feb. 5, 2008). In finding that such language did not provide true insurance neutrality, the Bankruptcy Court stated that the provision "at best muddies the waters and at worst could possibly be used to gain procedural advantage in the coverage action." Oral Decision, *In re Congoleum*, No. 03-51524 (Bankr. D. N.J. March 26, 2008). The Court was particularly concerned that language would be construed as one-sided in that collateral estoppel principles were only to be applied against the insurers. *Id.* As the language contained in the present Plan is similarly one-sided, the Disclosure Statement cannot be approved until it clarifies that the Plan is truly insurance neutral.

24. Section 1.1(15) of the Plan could also be construed to preclude insurer defenses in any subsequent coverage litigation based on consequences of the insurance transfer from Debtors

11

to the Trust (as opposed to the transfer itself), such as defenses based on the Debtors' or the Trust's failure to cooperate or the failure to permit insurers to participate in the defense of claims or to approve settlements or failure of the Debtor or the Trust to provide notice required under the policies. The Plan and Disclosure Statement must be modified to disclose the full intent of the exceptions to the preservation of Asbestos Insurance Coverage Defenses so that CNA can act to protect against any impairment of its rights.

25.     Finally, the Disclosure Statement is deficient as a matter of law because it fails to adequately disclose that amounts recoverable by the Asbestos PI Trust or on account of Asbestos PI Claims against CNA or other insurers may be lessened as a result of the insurance neutrality provisions and the insurers' preservation and assertion of Asbestos Insurance Coverage Defenses as provided in the Plan.

26.     Accordingly, unless the Disclosure Statement is modified to clarify its deficiencies as to insurance neutrality and related matters, including but not limited to the aforementioned issues, it cannot be approved as a matter of law.

## II.     The Disclosure Statement Cannot be Approved Because it Describes a Patently Unconfirmable Plan

27.     Where a disclosure statement accompanies a plan that is unable to be confirmed under the applicable provisions of the bankruptcy code, such disclosure statement should not be approved by a bankruptcy court. *See, e.g., John Hancock Mut. Life Ins. Co. v. Rte. 37 Business Parks Assocs.*, 987 F.2d 154, 157 (3d Cir. 1993); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr.), *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992). Thus, even if a disclosure statement properly summarizes and provides adequate information about a proposed plan, it should not be approved if the court is convinced that the plan could not be confirmed. *See In re Curtis Center LP*, 195 B.R. 631, 638

(Bankr. E.D. Pa. 1996); *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987). Denying approval of a disclosure statement concerning a plan that cannot be confirmed prevents the diminution in the value of the estate that would result from soliciting votes and seeking confirmation. *See In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986).

28. Under Section 1129(a)(1), in order for a Bankruptcy Court to confirm a Plan, the Plan must comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. §1129(a)(i). Included in this mandate are, *inter alia*, sections 1123(a)(4) and (5). Section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4). Section 1123(a)(5) requires that a Plan provide adequate means for its implementation. 11 U.S.C. § 1123(a)(5). The Plan violates both of these provisions including, but not limited to, in the ways described below and therefore the Disclosure Statement should not be approved.

### *A. The Plan Described by the Disclosure Statement Violates 11 U.S.C. § 1123(a)(4)*

29. "The Bankruptcy Code furthers the policy of equality of distribution among creditors by requiring that a plan of reorganization provide similar treatment to similarly situated claims." *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 240 (3d Cir. 2004). Specifically, as noted above, section 1123(a)(4) requires that claims classified within the same class are treated the same. "'Even though neither the Code nor the legislative history precisely defines the standards of equal treatment, the most conspicuous inequality that § 1123(a)(4) prohibits is payment of different percentage [recoveries].'" *In re Monroe Well Serv.*, 80 B.R. 324, 335 (Bankr. E.D. Pa. 1987) (quoting *In re AOV Indus.*, 792 F.2d 1140, 1152 (D.C. Cir. 1986)). Because the claims that are classified together in Class 6 are likely to receive different recoveries under the Plan, the Disclosure Statement cannot be approved.

13

30. Class 6 is comprised of all Asbestos PI Claims, including direct and indirect claims, all of which are neither Allowed nor Disallowed but instead are to be resolved under the terms of the TDP. Plan § 3.1.6. Nevertheless, the TDP appears to treat Indirect PI Trust Claims based on theories of contribution or indemnity differently than direct claims. First, as indicated in Part I.B. of this Objection, the meaning behind the TDP's language regarding the application of section 502(e) and 509(c) of the Bankruptcy Code is unclear and potentially in conflict with Section 3.1.6. of the Plan, which provides that Asbestos PI Claims shall not be deemed Allowed or Disallowed. Since direct claims are not subject to the same possible treatment, the Plan violates section 1123(a)(4) of the Bankruptcy Code as it would, at the very least, appear to exclude certain indirect claims from receiving a recovery. Second, the TDP requires indirect claims to have been filed by the Bar Date, but does not apply the same limitation to direct claims. *See* TDP § 5.6. This provision could affect the rights of insurers to assert contribution or indemnity claims arising in the future even if those claims derive from Demands which, by definition, can only arise in the future. Both direct and indirect claims are placed in Class 6, but indirect claims may be denied a recovery and thus not receive the "same treatment" as required by section 1123(a)(4). Accordingly, unless the TDP is stripped of the provisions treating indirect claims differently than direct claims, the Plan cannot be confirmed and the Disclosure Statement should not be approved.

### *B. The Plan Described by the Disclosure Statement Violates 11 U.S.C. § 1123(a)(5)*

31. Section 1123(a)(5) of the Bankruptcy Code requires that a Plan contain adequate means for its implementation. 11 U.S.C. § 1123(a)(5). While the Bankruptcy Code provides a list of types of "adequate means" for plan implementation, the list is not exhaustive. *In re Lisanti Foods, Inc.*, 329 B.R. 491, 506 (D. N.J. 2005). Indeed, where a Debtor has significant

asbestos-related liabilities, the injunction allowed under section 524(g) of the Bankruptcy Code is considered a primary means for adequately implementing a plan of reorganization. *See In re Armstrong World Indus.*, 348 B.R. 136, 156 (Bankr. D. Del. 2006).

32. Here, although one of the most significant aspects of the Plan is its provision for a channeling injunction under section 524(g) of the Bankruptcy Code, the Plan and Disclosure Statement are silent as to whether a non-settling insurance company who enters into a post-confirmation settlement agreement may obtain the benefits of the section 524(g) injunction. Since the transfer of Asbestos Insurance Rights to the Trust is designed to partially fund the Trust's ability to pay Asbestos PI Claims, including Demands, it should be structured to permit the maximum potential recovery from Asbestos Insurance Entities. If the Plan does not permit a an insurance company who has not settled by the Confirmation Date to obtain the protection of the channeling injunction permitted by section 524(g)(4)(A)(ii)(III), the likelihood of future settlements with insurance companies will be diminished, and in addition, insurance companies that do settle will not be willing to pay as much as they would if they were able to obtain the benefit of the Section 524(g) injunction. In this respect, therefore, the Plan's failure to allow for post-Confirmation settling insurance companies to gain the benefit of the channeling injunction results in the Plan lacking sufficient means for implementation. The Plan should both contain a mechanism for a non-settling insurance company that enters into a post confirmation settlement agreement with Debtors or the Asbestos PI Trust to obtain the protection of the section 524(g) injunction and should provide that the Court will retain jurisdiction for this purpose. Unless the Plan is so modified, it is not capable of implementation and cannot be confirmed and the Disclosure Statement should so state.

## LIMITED JOINDER

33. CNA joins in the request for Plan confirmation-related discovery as set forth in the Objections and Reservation of Rights of Fireman's Fund Insurance Company and Riunione Adriatica di Sicurta to Debtors' Motion for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief.

## RESERVATION OF RIGHTS

34. CNA expressly reserves, and does not waive, all of its rights, defenses, limitations and/or exclusions in connection with its contractual rights, contractual obligations, applicable law or otherwise. Nothing contained in this Objection shall be deemed to expand any alleged coverage that may otherwise be available under any insurance policies or any alleged rights to payment under any settlements. CNA reserves its right to amend, modify or supplement this Objection in response to any modification of the Plan or the Disclosure Statement and in response to the submission of any other party in interest and to adopt any other objections to approval of the Disclosure Statement filed by any other party.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

## CONCLUSION

WHEREFORE, for the reasons set forth above, CNA respectfully requests that this Court deny the Disclosure Statement Motion, and enter an order granting such other relief as may be just and proper.

Dated October 17, 2008

ROSENTHAL, MONHAIT, & GODDESS, P.A.

_____
Edward B. Rosenthal, Esq. (DE Bar No. 3131)
919 North Market Street, Suite 1401
Wilmington, DE 19801
Telephone: (302) 656-4433
FACSIMILE: (302) 658-7567

GOODWIN PROCTER LLP
Daniel M. Glosband (*pro hac vice*)
Brian H. Mukherjee (*pro hac vice*)
Goodwin Procter LLP
Exchange Place
Boston, Massachusetts 02109
Telephone: (617) 570-1000
FACSIMILE: (617) 523-1231

FORD MARRIN ESPOSITO WITMEYER & GLESER, L.L.P.
Elizabeth DeCristofaro (*pro hac vice*)
Wall Street Plaza, 23rd Floor
New York, New York 10005-1875
Telephone: (212) 269-4900
FACSIMILE: (212) 344-4294

*Counsel for Continental Casualty Company, Transportation Insurance Company and their American insurance affiliates*

LIBNY/4755773.6