UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al*.<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br><br>(Jointly Administered)<br><br>Hearing Date:  October 27, 2008 at 9:00 a.m.<br>Objection Deadline:  October 17, 2008 at 4:00 p.m.<br>**Re:  Docket Nos. 19581 and 19620** |

**ERISA PLAINTIFFS' OBJECTION TO THE DEBTORS' DISCLOSURE
STATEMENT FOR THE JOINT PLAN OF REORGANIZATION UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO.,
INC., ET AL, THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL
INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS'
REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS DATED AS OF SEPTEMBER 19, 2008**

Keri Evans, Timothy Whips and Mark Siamis (the "ERISA Plaintiffs"), participants in the W. R. Grace & Co. Savings & Investment Plan (the "S&I Plan"), on behalf of themselves, the S&I Plan, and a class of all others similarly situated, by and through their undersigned counsel, hereby submit their objection (the "Objection") to the adequacy of the Debtors' Disclosure Statement for the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., Inc., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008, as may be amended (the "Disclosure Statement")[1] and states the following:

---

[1] Capitalized terms shall have the meanings ascribed to them on the Plan and Disclosure Statement unless otherwise defined herein.

17175/2
10/17/2008 10029100.1

## BACKGROUND

1. On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. ("Grace" or the "Debtor") and its affiliated entities (together with Grace, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code with this Court.

2. On December 19, 2005, Evans and Whips filed the First Amended Complaint[2] for Violations of the Employee Retirement Income Security Act of 1974, in the United States District Court for the District of Massachusetts (the "District Court"), Civil Action No. 04-11380 (WGY) (the "ERISA Litigation"), alleging on behalf of themselves, the S&I Plan, and all persons who were participants in or beneficiaries of the S&I Plan at any time between July 1, 1999 and April 19, 2004 (the "Class Period")[3] and whose accounts included investments in Grace stock (the "Class"), breach of fiduciary duties under ERISA by certain non-debtors (the "Non-Debtor Defendants"), including, *inter alia*, Grace's directors, Grace's Investment and Benefit Committee and its members, Grace's Administrative Committee and its members, and Grace's Investment Manager, in connection with the S&I Plan.

3. On December 6, 2006, the District Court dismissed the *Evans* action on the ground that the plaintiffs in *Evans* lacked standing.

4. On July 18, 2008, the United States Court of Appeals for the First Circuit vacated the District Court's order dismissing the *Evans* action and remanded the matter to the District Court where it is presently proceeding against the Non-Debtor Defendants.

5. In February 2008, a similar action, the *Siamis* action, was filed in the District Court asserting the same claims as the *Evans* action. A motion to dismiss the *Siamis* action is pending in the District Court. The *Siamis* action and the *Evans* action were consolidated on August 20, 2008.

6. On September 19, 2008, the Debtors filed the Plan and Disclosure Statement in support of the Debtors' reorganization. A hearing on the adequacy of the Disclosure Statement is scheduled for October 27, 2008 and objections are due no later than October 17, 2008.

---

[2] An initial complaint was filed in June 2004.
[3] The ERISA Plaintiffs reserved the right to amend the Class Period subject to discovery.

7.  The Disclosure Statement provides that to the extent the ERISA Plaintiffs have valid claims against the Debtors, their pre-petition claims will be treated as Class 9 General Unsecured Claims and their post-petition Claims will be treated as Administrative Expense Claims under the Plan.  *See* Disclosure Statement ("D.S."), at 60.

### OBJECTION

8.  *To the extent any objection, in whole or in part, contained herein is deemed to be an objection to confirmation of the Plan rather than, or in addition to, an objection to the adequacy of the Disclosure Statement, the ERISA Plaintiffs reserve their right to assert such objection, as well as any other objections, to confirmation of the Plan.  Furthermore, to the extent the ERISA Plaintiffs or any member of the putative Class is impacted in any way by the contents of any supplements or amendments to the Disclosure Statement or the Plan, which may be filed after any Disclosure Statement objection or Plan confirmation objection deadlines, the ERISA Plaintiffs reserve their right to supplement any object previously filed.*

9.  A disclosure statement may be approved as adequate only if it contains "information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan."  11 U.S.C. § 1125(a); *see also In re Zenith Electronics Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999) (the disclosure statement must contain information that is "reasonably practicable [to permit an] informed judgment" by holders of claims or interests to vote on the plan).  Courts have ample discretion to determine what constitutes adequate information.  *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 29 (S.D.N.Y. 1995), *appeal dismissed by, in part, affirmed by, in part*, 184 B.R. 648 (S.D. N.Y. 1995), citing, *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988).  Although adequacy is determined on a case-by-case basis under a fact-specific flexible standard, *id.*, a disclosure statement must contain "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy] Code alternatives so that

[creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). A disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

10. The ERISA Plaintiffs believe that in certain material respects, the Disclosure Statement does not contain sufficient information to enable a reasonable person to make an "informed judgment about the Plan." Indeed, the Disclosure Statement and the Plan contain broad and ambiguous provisions and/or omit material facts that should be available to holders of claims or interests in the interest of complete and adequate disclosure.

11. In order to bring the Disclosure Statement into compliance with 11 U.S.C. § 1125(a), the Disclosure Statement (and Plan) must be modified as follows:

    a. The description of the ERISA litigation is not accurate.

    b. The Plan provides improper releases and injunctions that may impact the ERISA Plaintiffs' claims against the Non-Debtor Defendants.

The ERISA Plaintiffs also object to the Plan Confirmation procedures for which approval is sought.

A.     **The Description of the ERISA Litigation is not Accurate.**

12.    Although the Disclosure Statement appears to provide an accurate description of the ERISA Litigation, some revisions are necessary. The reference to the Debtors having filed a motion to dismiss the *Siamis* action is inaccurate. D.S., § 3.2.8.1. The motion to dismiss was brought by the Non-Debtor Defendants, not the Debtors. The Disclosure Statement should be amended accordingly.

13.    Furthermore, the Disclosure Statement should provide that on or about August 20, 2008, the *Evans* action and the *Siamis* action were consolidated by the District Court.

14.    The reference to "Section 8.6.6" of the Plan, at D.S., 60, is not correct as there does not appear to be a "Section 8.6.6" in the Plan.

B.     **The Disclosure Statement Describes and the Plan Provides Improper Releases and Injunctions That May Impact The ERISA Plaintiffs' Claims Against The Non-Debtor Defendants.**

15.    Because of the broad and ambiguous language contained in the Plan's release provisions, these releases may impact the claims of the ERISA Plaintiffs as against the Non-Debtor Defendants. *See* Plan, §§ 8.8.7 and 8.8.8; D.S. § 4.8.8.7 and 4.8.8.8.

16.    With respect to releases by Holders of Claims or Interests (Plan § 8.8.7), the Plan provides that a Claim Holder "who votes in favor of the Plan or *receives or retains any property under the Plan*" unconditionally releases the Asbestos Protected Parties and their Representatives from any and all Claims, obligations, damages, causes of action, or the like, based upon any pre-Effective Date occurrence related in any way to the Debtors. Plan, § 8.8.7; D.S., § 4.8.8.7 (emphasis added).

17.    An "Asbestos Protected Party" includes, *inter alia*, the Debtors and their Representatives. Plan, § 1.1.42(a) and (e).

18.    "Representatives" includes past and present directors, officers, accountants, advisors, consultants, other agents or any other representative of the entity or its Representatives. Plan, § 1.1.160.

19. By virtue of Plan § 8.8.7, as described in the Disclosure Statement, § 4.8.8.7, to the extent plaintiffs in the ERISA Litigation receive a distribution under the Plan, or otherwise vote in favor of the Plan, the Claims of the ERISA Plaintiffs as against the Non-Debtor Defendants (who fall within the scope of the definition of Asbestos Protected Party) will be released. As a result, the Plan provides an improper release of viable claims against the Non-Debtor Defendants.

20. Similarly, the provision for the "Release by Debtors and Third Parties" may also release the ERISA Plaintiffs' claims against the Non-Debtor Defendants. Plan, § 8.8.8; D.S., § 4.8.8.8. In addition to releases by the Debtors, their successors and other related entities, the Plan states that:

> *any* third parties are hereby deemed to release and waive conclusively, absolutely, unconditionally, irrevocably . . . all of the Debtors' . . . Representatives . . . from any and all claims . . . relating to . . . the Debtors . . . the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim . . . that is treated in the Plan.

Plan, § 8.8.8; D.S., § 4.8.8.8 (emphasis added).

21. The term "third party" is not defined, but indeed may include the ERISA Plaintiffs. Hence, by virtue of the foregoing Plan provision (and the accompanying Disclosure Statement provision), the Plan again provides for the improper release of third-party claims against non-Debtors, including the Non-Debtor Defendants.

22. These provisions (as described in ¶¶ 15-21, *supra)*, are so broad and ambiguous that one may interpret them to release the claims of the ERISA Plaintiffs against the Non-Debtor Defendants, thereby enjoining and/or prohibiting the ERISA Plaintiffs from asserting claims in the ERISA Litigation against such non-Debtors. Indeed, to that extent, the releases (and any related injunction) are improper and must not be allowed.

23. As a result of the broad language contained in the aforesaid Plan provisions, non-debtors, including the Non-Debtor Defendants, who, in the absence of unusual circumstances, are not entitled to the protections of the Bankruptcy Code, may very well benefit from such

protections. Therefore, if any of the ERISA Plaintiffs' claims against the Non-Debtor Defendants are subject to the Plan releases or injunctions, such release and injunctions are improper. *See Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000) (holding that a debtor must satisfy its burden of proof and establish through specific factual findings that non-debtor third-party releases are fair and necessary). No such factual basis for such broad releases as they relate to the Non-Debtor Defendants in the ERISA Litigation is provided in the Disclosure Statement.

24. Indeed, the Plan proponents appear to have recognized the broad scope of the release in the Plan, § 8.8.8, as they expressly carved out the enforcement of governmental police and regulatory power from the broad release. Plan, § 8.8.8; D.S., § 4.8.8.8.

25. For the reasons stated above, the ERISA Plaintiffs are entitled to the same or a substantially similar carve out, which may be afforded by the inclusion of the following language in the Disclosure Statement and the Plan:

> Nothing in the Plan or in any order confirming the Plan shall affect, release, enjoin or impact in any way the prosecution of the claims asserted, or to be asserted, against any non-Debtor, including the Non-Debtor Defendants, in the ERISA Litigation.

Otherwise, language should appear in the Disclosure Statement setting forth the basis for such extraordinary relief in connection with the ERISA Litigation and that the ERISA Plaintiffs oppose such releases and injunctions.

**C.    Objection to Confirmation Procedures.**

26. In addition to approval of the adequacy of the Disclosure Statement, the Debtors also moved for approval of certain confirmation procedures, including the establishment of objection deadlines (the "Approval Motion").

27.     The Debtors propose that objections to confirmation be filed and served four (4) weeks prior to the Confirmation Hearing (the "Objection Deadline").  *See* Approval Motion, ¶ 56(v).

28.     The Plan Supplement, which contains certain exhibits and schedules to the Plan, need not be filed until at least ten (10) days before the Confirmation Hearing.  Plan, § 1.1.151.

29.     However, the Plan Supplement may contain documents relevant to objections to confirmation.

30.     It is extremely likely then that the Plan Supplement will not be available prior to the Objection Deadline and parties in interest will not have a sufficient opportunity to review the Plan Supplement prior to the deadline for filing an objection.

31.     The Plan Supplement must be made available prior to the Objection Deadline. The availability of the Plan supplement after the Objection Deadline is prejudicial to creditors and other parties in interest.

## CONCLUSION

32.     Based on the foregoing, the ERISA Plaintiffs respectfully request that the Disclosure Statement be modified as set forth herein and that an Order be entered granting such other and further relief as the Court deems just and proper.

**STATEMENT THAT NO BRIEF IS NECESSARY**

33. As no novel issue of law is raised by the within Objection and the relevant authorities relied upon by the ERISA Plaintiffs are set forth herein, the ERISA Plaintiffs respectfully request that the Court waive the requirements of D. Del. LR 7.1.2, incorporated in these proceedings by Local Rule 1001-1(b), of filing a separate brief in support of the Objection. However, if the Court determines otherwise, the ERISA Plaintiffs respectfully request the opportunity to submit an appropriate brief or memorandum.

Dated:  October 17, 2008

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

__/s/ **Ira M. Levee**_____
Michael S. Etkin (ME-0570)
Ira M. Levee (IL-9958)
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel for the ERISA Plaintiffs*

-and-

**GILMAN & PASTOR, LLP**
David Pastor, Esq.
999 Broadway, Suite 500
Sagur, Massachusetts 01906
(791) 231-7850 (Telephone)
(781) 231-7840 (Facsimile)

**SCHIFFRIN BARROWAY TOPAZ & KESSLER LLP**
Joseph H. Meltzer, Esq.
Katherine Bornstein, Esq.
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706 (Telephone)
(610) 667-7056 (Facsimile)

*Co- Counsel for the ERISA Plaintiffs*