IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | Chapter 11 |
| In re | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W.R. Grace & Co., *et. al.*, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Related to Docket Nos. 19620 and 19581** |

**OBJECTIONS AND RESERVATION OF RIGHTS OF FIREMAN'S
FUND INSURANCE COMPANY, RIUNIONE ADRIATICA DI SICURTA,
AND POSSIBLY OTHER RELATED INSURANCE COMPANIES TO
DEBTORS' MOTION FOR AN ORDER APPROVING  DISCLOSURE
STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES,
<u>CONFIRMATION SCHEDULE AND RELATED RELIEF</u>**

Fireman's Fund Insurance Company, Riunione Adriatica di Sicurta, and possibly

other related insurance companies (collectively, "FFIC"), by their attorneys, object to approval

of (i) *Debtors' Motion For An Order Approving Disclosure Statement, Solicitation and*

*Confirmation Procedures, Confirmation Schedule and Related Relief* [Docket No. 19620] (the

"Motion"), and (ii) *Debtors' Disclosure Statement for the Joint Plan Of Reorganization Under*

*Chapter 11 Of The Bankruptcy Code Of W.R.  Grace & Co., Et Al., The Official Committee Of*

*Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, And*

*The Official Committee Of Equity Security Holders Dated As Of September 19, 2008* [Docket

No. 19581] (the "Disclosure Statement"), with respect to the *Joint Plan Of Reorganization*

*Under Chapter 11 Of The Bankruptcy Code Of W.R.  Grace & Co., Et Al., The Official*

*Committee Of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants'*

*Representative, And The Official Committee Of Equity Security Holders Dated As Of*

*September 19, 2008* [Docket No. 19579] (the "Plan").

**<u>Introduction</u>**[1]

1. The Plan contemplates that Asbestos PI Claims will be paid, in part, with the proceeds of insurance policies issued to the Debtors by FFIC that the Debtors (and post-Effective Date, the Asbestos PI Trust) intend to seek to recover from FFIC. However, the Disclosure Statement fails to provide adequate information about the mechanics – and risks – in so doing. Significantly, the Disclosure Statement fails to disclose to holders of Asbestos PI Claims that any insurance coverage that otherwise might be available to pay such Asbestos PI Claims may be vitiated, and such claimants' recoveries diminished, by the Plan's violation of FFIC's contractual rights ("Contractual Rights") and releases of Debtors' reciprocal contractual obligations ("Contractual Obligations") with respect to the Policies (as defined below).

2. In particular, the Disclosure Statement:

- First, fails to provide adequate information regarding the proposed procedures that will be employed by the Asbestos PI Trust to liquidate and pay Asbestos PI Claims. Specifically, FFIC is deprived of meaningful information regarding (i) its involvement, if any in the Asbestos Claims liquidation process; and (ii) the process by which the Asbestos PI Trust will seek to recover insurance proceeds from FFIC and other Asbestos Insurance Entities that have not previously entered into Asbestos Insurance Settlement Agreements.

- Second, fails to adequately disclose that the Plan is not "insurance neutral" with respect to FFIC.

- Third, fails to provide adequate information regarding material risks that any otherwise available insurance coverage may be vitiated by the Plan's violation of FFIC's Contractual Rights and releases of Debtors' Contractual Obligations.

3. In addition, the Plan on its face is not confirmable as to FFIC and for this additional reason the Court should not approve the Disclosure Statement.

---

[1]    Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan.

SL1 873233v2/021630.00003

**The Policies**

4.  FFIC issued certain insurance policies for various policy periods (collectively, the "Policies") that allegedly provide certain excess insurance coverage to Debtors.  FFIC may hold contingent and unliquidated Claims based upon its rights to receive performance of any and all of Debtors' (and any other possible named insureds') duties and obligations under the terms of the Policies.

**Objections To Approval Of Disclosure Statement**

5.  Section 1125 of the Bankruptcy Code requires that the Disclosure Statement contain "adequate information," defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

11 U.S.C. § 1125(a)(1).  As set forth more fully below, the Disclosure Statement fails to meet this standard as it lacks basic information necessary for creditors and parties-in-interest to determine if confirmation of the Plan is in their respective best interests.

**A.  The Disclosure Statement Should Not Be Approved Because Debtors Have Failed To Provide Crucial Information Regarding The Involvement Of Asbestos Insurance Entities In The Asbestos PI Claims Liquidation Procedures**

**1.  The Missing Asbestos Insurance-Related Agreements and Details**

6.  Debtors did not include the Asbestos Insurance Transfer Agreement, the Asbestos Insurance Policy Schedule or the Cooperation Agreement in the Exhibit Book filed with the Plan and Disclosure Statement.  According to the Plan, on the Effective Date, the Insurance Contributors shall execute and deliver the Asbestos Insurance Transfer Agreement to

3

the Asbestos PI Trust.[2]  The Plan also provides that all Asbestos Insurance Rights will be

irrevocably transferred to and vested in the Asbestos PI Trust.  Plan § 7.2.2.

      7.  In addition, although Debtors included the proposed Asbestos PI Trust

Agreement and TDP, they still do not provide adequate information.  The TDP is silent as to how

the Asbestos PI Trust will obtain the insurance proceeds that purportedly are being assigned by

Debtors and the Insurance Contributors to the Asbestos PI Trust.  The TDP also is silent as to

how -- or if -- the Asbestos PI Trust will involve the applicable Asbestos Insurance Entity in the

Asbestos PI Claims liquidation process.  Finally, the Plan and Asbestos PI Trust Agreement are

silent as to how (or if) a presently non-settling Asbestos Insurance Entity can become an

Asbestos Protected Party such that the insurance company would come within the protections of

the Asbestos PI Channeling Injunction.

      8.  Without the Asbestos Insurance Transfer Agreement, the Asbestos Insurance

Policy Schedule, and the Cooperation Agreement, and more detail with respect to insurance

specific provisions in the Asbestos PI Trust Agreement and TDP, the Plan is substantially

incomplete with regard to insurance funding for the Asbestos PI Trust and Asbestos PI Claim

liquidation and, accordingly, the Disclosure Statement is facially inadequate.  Without these

missing documents and other information referenced herein, FFIC (and other creditors) are

placed in the impossible position of having to evaluate the Disclosure Statement before a

substantially complete Plan has been circulated.

---

[2]    FFIC will not speculate on the terms of the missing Asbestos Insurance Transfer Agreement and Cooperation Agreement and reserves all its rights with respect to them, including, without limitation, the right to amend and supplement these Objections after they are eventually filed.  To the extent that the terms of the Asbestos Insurance Transfer Agreement and/or the Cooperation Agreement violate FFIC's Contractual Rights and (consistent with the Plan) purport to discharge Debtors from their Contractual Obligations, a substantial risk is created that any possible otherwise available insurance coverage under the Policies will be vitiated and no insurance coverage from FFIC would become available to the Asbestos PI Trust.

9.  Without the missing Asbestos Insurance Transfer Agreement and Cooperation Agreement, it is also impossible to understand how the Asbestos PI Trust proposes to obtain the Asbestos Insurance Policies and rights thereunder.  Accordingly, whether the Plan is capable of satisfying the requirements of section 524(g) of the Bankruptcy Code for issuance of the Asbestos PI Channeling Injunction -- which is a condition precedent to confirmation of the Plan -- is still unclear.  *See* Disclosure Statement at 92.  The absence of the Asbestos Insurance Transfer Agreement and the Cooperation Agreement renders the Plan substantially incomplete and, as such, the Disclosure Statement does not provide the adequate and meaningful disclosure necessary to make an informed judgment about the Plan.

**2.  The Disclosure Statement Fails To Describe How Non-Settled Asbestos Insurance Entities Will Be Affected**

10.  The Disclosure Statement lacks sufficient information as to how non-settled insurance companies will be affected under the Plan and Plan-related documents.  Non-settling insurance companies are left to speculate as to what rights the Plan attempts to assign to the Asbestos PI Trust, as well as what Contractual Rights and Contractual Obligations will be voided, enjoined, or suspended.

11.  Significantly, while the Asbestos PI Trust is to be granted the exclusive right to process and pay Asbestos PI Claims, *see* Plan § 7.2.3, Asbestos PI Trust Agreement, § 1.2, and TDP § 2.2, the Disclosure Statement (along with the Asbestos PI Trust Agreement and TDP) fails to describe what role, if any, non settled insurance companies will play in the Asbestos PI Claims liquidation process.  Assuming that Debtors intend to completely exclude non settled insurance companies from the claims liquidation process, the Disclosure Statement fails to provide material information about the potential impact that such purposeful exclusion will have on any insurance coverage that may otherwise be available to satisfy Asbestos PI Claims and

SL1 873233v2/021630.00003

fails to adequately advise holders of Asbestos PI Claims that such exclusion of non-settled insurance companies may diminish their recoveries from the Asbestos PI Trust.

12.  As contemplated by the Plan, the Asbestos PI Trust will obtain the right to seek coverage from FFIC (Plan § 7.2), but FFIC will be enjoined from enforcing performance of Debtors' reciprocal Contractual Obligations (Plan § 7.15(h)).  The Plan also enjoins FFIC from pursuing its right to Contribution Claims against a Settled Asbestos Insurance Company.  Plan §§ 7.15(i) and 8.2.1.  Despite the title of section 7.15 of the Plan ("Section 7.15"), the Plan, Asbestos PI Trust Agreement, and TDP are not "insurance neutral," and the Disclosure Statement fails to describe how the substitution of the remedy for otherwise enforceable Contribution Claims leaves a non-settling Asbestos Insurance Entity with the same set of rights. *See* Disclosure Statement at 95.  Accordingly, without such information (as well as for the reasons discussed in section B, *infra*.), it is misleading for the Disclosure Statement to characterize the Plan as insurance neutral.

13.  The Disclosure Statement also fails to disclose what procedures will be employed by the Asbestos PI Trust to recover proceeds from those insurance companies that have not entered into Asbestos Insurance Settlement Agreements.

14.  Although the Plan is characterized as insurance neutral, Debtors hedge their bets by (i) remaining silent in the TDP and Asbestos PI Trust Agreement as to the involvement of non-settled Asbestos Insurance Entities with respect to processing and payment of Asbestos PI Claims, and (ii) limiting the effectiveness of Section 7.15 by (x) binding Asbestos Insurance Entities to the transfer of  Insurance Rights under the Asbestos Insurance Transfer Agreement notwithstanding any anti-assignment provision in or incorporated into any Asbestos Insurance Policy or otherwise applicable non-bankruptcy law and (u) subjecting all Asbestos Insurance

6

Entities to the releases and injunctions set forth in Article XIII of the Plan.  *See* Plan

§ 7.15(g) and (h).

15.  In light of this material defect, the Disclosure Statement fails to include

adequate information about the means under the Plan for processing and paying any Asbestos PI

Claims that allegedly may be entitled to coverage under the Policies.[3]  The Disclosure Statement

fails to disclose to creditors, especially to holders of Asbestos PI Claims that, unless the

procedures are consistent with FFIC's Contractual Rights, effectuation of the Plan may vitiate

any coverage otherwise allegedly available under the Policies with respect to Asbestos PI

Claims, thereby diminishing such claimants' recoveries from the Asbestos PI Trust.

### (a)  The Disclosure Statement Fails To Disclose Whether Proceeds From Prior Settlements Will Be Applied Before Claims Are Made Under Non-Settled Insurance Policies.

16.  The Disclosure Statement fails to disclose whether the Asbestos PI Trust will

apply proceeds from Asbestos Insurance Settlement Agreements, or from other settlements, prior

to seeking insurance proceeds from non-settled insurance companies.

17.  Thus, the Disclosure Statement must, at a minimum, include:  (a) disclosure

that the procedures for liquidation and payment of Asbestos PI Claims may be inconsistent with,

or violate, FFIC's Contractual Rights; and (b) a disclosure that any violation of FFIC's

Contractual Rights, or release of Debtors' reciprocal Contractual Obligations, may vitiate any

coverage otherwise allegedly available under the Policies, thereby diminishing such claimants'

recoveries from the Asbestos PI Trust.  Without such disclosures, the Disclosure Statement is

incomplete and does not contain adequate information as required by section 1125.

---

[3]    Nothing in these Objections shall be construed as an acknowledgement that the Policies provide any coverage or otherwise apply to any Asbestos PI Claims or that any Asbestos PI Claims are eligible for coverage under the Policies.  FFIC reserves all of its rights, claims and/or defenses as to what coverage may be available.

**B. The Disclosure Statement Fails To Adequately Disclose That The Plan Is Not "Insurance Neutral" Because It Impairs FFIC's Contractual Rights And Releases Debtors' Reciprocal Contractual Obligations While Purporting To Grant Rights To The Asbestos PI Trust's To Seek Insurance Coverage**

18.   As recently as April, 2008, Debtors represented that their aggregate liability for present and future Asbestos PI Claims was between $385 million and $1.314 billion, with a median value of $712 million.  *See* Debtors' Expert Report by B. Thomas Florence, Ph.D., dated June 18, 2007, at p. 3 [Docket No. 16116].  Yet, the Disclosure Statement fails to explain why Debtors did an about-face, agreeing to spend $420 million in Cash and Warrants now and $1.55 billion later to settle the dispute with the ACC and FCR.  *See* Plan  §§ 1.1.40 and 7.2.2.  Neither FFIC nor, FFIC believes, any other non-settling insurers, were included in the Debtors' negotiations with the ACC and FCR.  Debtors' voluntary acceptance of such substantial asbestos liability has a direct and adverse impact on FFIC Contractual Rights, which is belied by characterizing the Plan as "insurance neutral."

**1. The Disclosure Statement Fails To Disclose The Basis For Allowance of Asbestos PI Claims That Debtors Previously Had Opposed as Non-Meritorious, or Even Fraudulent.**

19.   In Debtors' original disclosure statement filed on November 13, 2004 [Docket No. 6896] (the "First Disclosure Statement"), Debtors stated:

> Asbestos PI Claims allege adverse health effects from exposure to Grace's asbestos-containing products.  On the Petition Date, the Debtors were defendants in lawsuits asserting approximately 118,000 Asbestos PI Claims.  **In the Debtors' view, only a small portion of the Asbestos PI Claims allege even a prima facie case of any functional impairment attributable to exposure to the Debtors' products.  The Debtors, therefore, intend to vigorously contest all or most of the Asbestos PI Claims** through a number of defenses, as outlined in more detail in their Case Management Motion (which was filed simultaneously with the Plan and Disclosure Statement).  Although the Asbestos PI Committee has asserted that the value of the current asbestos personal injury claims, alone, exceed the Debtors' consolidated

8

> enterprise value, the Debtors believe that the Asbestos Trust
> Assets, when administered in a manner consistent with the TDPs,
> will be sufficient to satisfy all legitimate Asbestos PI Claims.

First Disclosure Statement § 2.4.1 (emphasis added).

20.  As part of Debtors strategy to vigorously contest unmeritorious Asbestos PI Claims, contemporaneously with the filing of the First Disclosure Statement, Debtors filed their motion to estimate the asbestos personal injury claims in an aggregate amount needed to fund an asbestos personal injury trust [Docket No. 6899] (the "Estimation Motion").  After pursuing the Estimation Motion for over four years, on April 6, 2008, the Plan Proponents entered into the Asbestos PI Settlement.  According to the Disclosure Statement, the Plan embodies the terms and conditions of the Asbestos PI Settlement.  *See* Disclosure Statement at 63.

21.  As a result of the Asbestos PI Settlement, Debtors have abandoned their view that "most of the Asbestos Claims have no value because they fail to establish any material property damage, health impairment or significant occupational exposure to asbestos from the Debtors' operations or products."  Disclosure Statement at 62.

22.  The Disclosure Statement is silent as to why Debtors came to accept this radically different valuation of the Asbestos PI Claims.  If the decision on valuation is for any reason other than credible medical evidence of disease and causal connection to Debtors' products, the reasoning may vitiate any alleged coverage that the Policies may otherwise provide as a result of impairments to FFIC's Contractual Rights.  Further, the Disclosure Statement fails to advise holders of valid Asbestos PI Claims that their recoveries from the Asbestos PI Trust are likely to be substantially diluted by the allowance and payment by the Asbestos PI Trust of such non-meritorious claims.

9

**2. The Disclosure Statement Fails To Disclose That Artificial Confidentiality Of TDP Settlements Will Adversely Affect Non-Settled Insurers And Promote The Payment Of Nonmeritorious Claims To The Detriment Of Legitimate Claimants**

23. Section 6.5 of the TDP purports to require that the Asbestos PI Trust hold all materials submitted by an Asbestos PI Claimant as confidential, and only allows the Asbestos PI Trust, in specific limited circumstances (which are not identified), to disclose the contents of the materials to the applicable insurance company after obtaining the consent of the TAC and the FCR. *See* TDP § 6.5. Thus, if an Asbestos PI Claim is tendered to FFIC after processing and payment, FFIC might not even be able to discover the basis on which such Asbestos PI Claim was allowed and paid by the Asbestos PI Trust.

24. Thus, the Plan improperly impairs FFIC's rights by declaring an entire category of documents to be "privileged" and entitled to "confidential" treatment and, as such, beyond the reach of any insurer that is contractually entitled to that information. The Plan thus would impair FFIC's Contractual Rights because the preemptive declaration in the TDP that Asbestos PI Claim submissions are "privileged" and/or "confidential," means that an additional hurdle, not otherwise present in the tort system, in which FFIC would have access to its insured's information about a claim, would be presented. If such provision stands, FFIC may very well have to meet a heavy burden of proving entitlement to such artificially "privileged" and/or "confidential" information. Absent Section 6.5 of the TDP, FFIC would not be denied access to such crucial information that is routinely available in the tort system.

25. In addition, this denial of information violates Debtors' Contractual Obligations under the Policies and vitiates any coverage that may otherwise be available. FFIC has a Contractual Right to participate in the defense and settlement of claims made against its policies. By not explaining this extraordinary denial of transparency in the claim liquidation process in the

Disclosure Statement, the Disclosure Statement is incomplete and does not contain adequate information as required by section 1125 and further fails to advise holders of Asbestos PI Claims against Debtors that their recoveries from the Asbestos PI Trust may be substantially diminished.

### 3. The Plan Subjects Non-Settling Insurers to Possible Obligations From the TDP's Unreasonable Claim Allowance Criteria

26.  The TDP's lax medical and exposure standards will ensure compensation of meritless claims that Debtors illuminated in the Estimation Motion.  Through the very general and non-specific language of the TDP, combined with the absolute and unfettered discretion that can be exercised by the Trustees -- as directed by the TAC and FCR -- the TDP effectively relieves claimants from their legal obligation to demonstrate negligence and causation, and would simply require claimants to submit a claim form providing generic information regarding the nature of the alleged claim.

27.  Indeed, the TDP contains provisions that would allow claimants that received adverse results in the tort system for the same asbestos-related claim against other defendants to recover from the Asbestos PI Trust.  *See* TDP § 5.7(a)(2)("In addition, claimants who otherwise meet the requirements of this TDP for payment of a PI Trust Claim shall be paid irrespective of the results in any litigation at anytime between the claimant and any other defendant in the tort system.").  If such adverse result was due to a circumstance that would be equally applicable to Debtors (*i.e.*, that the claimant has no impairment, or that such impairment was not due to exposure to asbestos) then the TDP's similarly should bar such claimants from obtaining compensation from the Asbestos PI Trust.  Failure of the TDP to so provide demonstrates the lack of good faith in this arrangement and how meritless claims will be "processed and paid" by the Asbestos PI Trust.

SL1 873233v2/021630.00003

28.   Additionally, the TDP procedures require a claimant to provide a statement from a physician; however, there are no safeguards in place to ensure that those statements are credible, *see In re Silica Products Liability Litig.*, 398 F.Supp. 2d 563 (S.D. Tex. 2005) (highlighting potential abuses in the medical screening/diagnosis process for mass tort claims), or whether the physician providing such statements must be board-certified as a specialist in radiology, pathology or other specialties.  The disclosure statement fails to advise holders of Asbestos PI Claims that these inadequate TDP requirements may vitiate insurance coverage and further fails to advise them that their compensation may be materially reduced due to the dilution caused by the allowance of unmeritorious claims.

**4.   The Disclosure Statement Fails To Disclose The Effect Of Substantive Consolidation on Claims That May Be Made Under Non-Settled Insurance Policies**

29.   The Plan provides for the substantive consolidation of each of Debtors' estates. *See* Disclosure Statement at 115-117.  The Disclosure Statement, however, fails to adequately disclose the effect of any such substantive consolidation on claims made under the non-settled insurers' policies.  To the extent that such substantive consolidation expands any coverage obligations by forcing non-settled insurers to assume exposures for tort liability on behalf of now-consolidated debtors that they did not originally contract for, such non-settled insurers' policies would be unilaterally -- and impermissibly -- modified to their detriment.  Accordingly, unless the Disclosure Statement adequately describes the effect of such substantive consolidation, it fails to provide adequate information as required by section 1125.

SL1 873233v2/021630.00003

**C. The Disclosure Statement Should Not Be Approved Because It Fails To Disclose The Material Risks That Alleged Insurance Coverage May Not Be Available For Asbestos PI Claims Because Of The Plan's Violations Of FFIC's Contractual Rights And/Or Releases Of Debtors' Reciprocal Contractual Obligations**

30.  The Disclosure Statement fails to adequately disclose the material risks that any alleged insurance coverage from FFIC that might otherwise allegedly be available to pay Asbestos PI Claims may not be available because the Plan violates FFIC's Contractual Rights and/or purports to release Debtors' reciprocal Contractual Obligations.  For any alleged coverage from FFIC to even potentially be available, Debtors must honor FFIC's Contractual Rights, as well as their own reciprocal Contractual Obligations.  Because the Plan contemplates violating FFIC's Contractual Rights and releasing Debtors' reciprocal Contractual Obligations, the Disclosure Statement must clearly disclose the material risks that, as a result, no coverage will be available to satisfy Asbestos PI Claims.  The Disclosure Statement, however, fails to provide adequate information about the material risks that the Plan may vitiate any alleged insurance coverage that may otherwise allegedly be available to satisfy Asbestos PI Claims (or other Claims) that may allegedly be entitled to coverage under the Policies.

31.  The impairment of FFIC's Contractual Rights and release of Debtors' reciprocal Contractual Obligations are in stark contrast to the Asbestos PI Trust's continuing reservation of rights to seek coverage from FFIC.  *See* Plan § 7.2.2(d)(iii).  Accordingly, the Disclosure Statement fails to adequately disclose that the reciprocal contractual relationship may, by virtue of the Plan, become unacceptably and unlawfully one sided.  As a result, the Disclosure Statement fails to adequately disclose that the Plan is not "insurance neutral" as to FFIC.

13

    **1.  The Disclosure Statement Fails To Disclose That The Plan
May Vitiate Coverage By Violating FFIC's Right To Associate In
The Defense, Investigation And Settlement Of Asbestos PI Claims
And Other Claims**

32.  FFIC has the right to associate in the defense, investigation, and settlement of

Asbestos PI Claims (and any other Claims) that may be covered by the Policies.  An insurer's

right to associate in the defense of covered claims is among the rights that are fundamental to the

structural and economic relationships that form the basis of an insurance policy.  *See* 43

Am.Jur.2d Insurance § 1384; 7C *J. Appleman, Insurance Law and Practice* § 4681 (Berdal rev.

1979).  It is so fundamental that depriving an insurer of this valuable policy right will vitiate an

insurer's further obligations to provide coverage under a policy.  *See* 43 Am.Jur.2d Insurance

§ 1384.

33.  The Disclosure Statement, however, fails to adequately disclose that the Plan

contemplates violating FFIC's Contractual Rights by excluding FFIC from any aspect of the

liquidation process with respect to Asbestos PI Claims.  *See* Plan § 7.2, Asbestos PI Trust

Agreement § 1.2, and TDP § 2.2, (providing, collectively, that only the Asbestos PI Trust will

have the right to evaluate, process and pay Asbestos PI Claims).

34.  Furthermore, Debtors have failed to disclose how (i) the Asbestos Insurance

Rights will be transferred to the Asbestos PI Trust, and (ii) how the Asbestos Insurance Entities

will be part of the process by which Asbestos PI Claims will be evaluated, liquidated and

satisfied.  Without this material information, FFIC has no way of evaluating how the transfer of

the Asbestos Insurance Rights or claims resolution procedures will impact FFIC's Contractual

Right and Debtors' continuing Contractual Obligations.  From what little information the

Disclosure Statement does provide in this regard, it is clear that the procedures to process and

pay Asbestos PI Claims will exclude FFIC and were created without any participation by FFIC

(or, presumably, by any other insurance company).  Additionally, if implemented, the TDP will violate FFIC's Contractual Rights to, *inter alia*, ensure that appropriately rigorous standards are utilized for evaluation and allowance of Asbestos PI Claims.

35.  The Disclosure Statement fails to disclose the material risk that the Plan's violation of these fundamental Contractual Rights will vitiate any alleged coverage from FFIC that might otherwise be available for Asbestos PI Claims thereby reducing payments to holders of Asbestos PI Claims.

36.  Moreover, and similarly crucial to any alleged availability of insurance coverage, the Disclosure Statement fails to disclose that FFIC may have no opportunity to exercise its statutory rights under Section 502(a) of the Bankruptcy Code to prosecute objections to the allowance of unmeritorious Asbestos PI Claims, which are independent of its Contractual Rights.  *See* 11 U.S.C. § 502(a); *In re Keck, Mahin & Cate*, 241 B.R. 583, 596 (Bankr. N.D. Ill. 1999)(finding that professional liability insurer is a party in interest with standing to object to plan provisions affecting its interests); *In re Standard Insulations, Inc.*, 138 B.R. 947 (Bankr. W.D. Mo. 1992) (holding that insurers were parties in interest under sections 1109(b) and 502(a) due to their possible responsibility to cover claims arising from exposure to debtor's products during the covered periods).  To the extent that the Plan purports to limit FFIC's ability to prosecute objections to unmeritorious Asbestos PI Claims (especially if FFIC is willing to assume the responsibility for prosecuting such objections itself), Debtors (and the Asbestos PI Trust) would be vitiating coverage by violating FFIC's Contractual Rights.  The Disclosure Statement must disclose that the Plan threatens recoveries by holders of Asbestos PI Claims by failing to respect FFIC's contractual and statutory rights by proscribing FFIC's ability to prosecute objections to unmeritorious Asbestos PI Claims.

15

37.   Although Section 7.15 purports to allow Asbestos Insurance Entities to maintain Asbestos Insurer Coverage Defenses, such provision is inadequate without allowing an insurer the rights it has outside of bankruptcy to participate in the investigation of Asbestos PI Claims and to defend against unmeritorious Asbestos PI Claims.  Notwithstanding the "Insurance Neutrality" language of Section 7.15, the TDP does not even contemplate that the Asbestos PI Trust will disclose any information to an Asbestos Insurance Entity except in "specific limited circumstances."  *See* TDP at § 6.5.  Only a full exchange of information about Asbestos PI Claims that the Asbestos PI Trust seeks coverage under the Policies would comply with Debtors' reciprocal Contract Obligations.

38.   In *In re The Wallace & Gale Co.*, No. 85-4-0092 (Chapter 11) (Bankr. D. MD. July 22, 1998), Transcript Of Oral Ruling, the bankruptcy court was asked to confirm a proposed plan of reorganization that – like the Plan – purported to eliminate insurers' rights regarding the defense, investigation, and settlement of asbestos-related bodily injury claims for which coverage was sought.  In a ruling from the bench, the *Wallace & Gale* court denied confirmation of the plan and acknowledged the importance of the insurers' contractual rights, holding that a plan that violates such rights cannot be confirmed:

> If it is to be liable for any judgment rendered against the insured, [an insurer] has a right to make certain that a proper defense is made to the claim and that unwarranted or overstated and conclusive claims are exposed and defeated. . . .
>
> I find that the cornerstone of the Plan is the wrenching away of these controls bargained for by the [insurance] carriers.  And in placing these same controls in the hands of the persons suing the Debtor.

Trans. at 119-21 (citing *Sherwood Brands, Inc. v. Hartford Acc. & Indem.*, 347 Md. 32, 698 A.2d 1078 (1997)).  Debtors cannot unilaterally abrogate FFIC's Contractual Rights and/or the statutory rights to participate in the defense of unmeritorious Asbestos PI Claims, or other

16

Claims that may allegedly be subject to coverage from FFIC, without jeopardizing alleged insurance coverage that might otherwise be available.  As such, the Disclosure Statement must disclose the material risk that the Plan's attempts to violate these rights will diminish the recoveries of holders of Asbestos PI Claims.

**2. The Disclosure Statement Fails To Disclose That The Plan May Vitiate Alleged Coverage By Violating Debtors' Continuing Duty To Cooperate With FFIC In The Defense And Investigation Of Asbestos PI Claims**

39.    Debtors have an affirmative, continuing duty to cooperate with FFIC in the investigation, defense and settlement of all Asbestos PI Claims that may be covered by Policies. This is a fundamental policy right.  It ensures the necessary alignment of economic interests between the insurer and its policyholder in defeating and/or minimizing the policyholder's liability for any unmeritorious claim.  *See* 43 Am.Jur.2d Insurance §1420.  A policyholder's breach of its duty to cooperate will relieve the insurer from its obligation, if any, to provide coverage under the policy.  *Id*.

40.    The Disclosure Statement, however, fails to disclose that the Plan contemplates violating this Contractual Obligation by allowing the Asbestos PI Trust, with the consent of the TAC and FCR, to process and pay all Asbestos PI Claims without any involvement by, or consultation from, the Reorganized Debtors and that such a violation of policy rights could vitiate any alleged insurance coverage for otherwise covered Asbestos PI Claims.  *See* 14 Couch on Ins. § 199:13 (2003) ("As a general rule, an insured's breach of a cooperation clause precludes coverage and releases the insurer from its responsibilities…"); N.Y. JURISPRUDENCE, 2d. ed. (2008) Insurance § 1954; *Davis v. Allstate Ins. Co.*, 204 A.D. 2d 592, 594 (N.Y. App. Div. 1994).

41.  Providing the Asbestos PI Trust with the exclusive ability to process and pay Asbestos PI Claims, without allowing for the participation of FFIC in the process, violates Debtors' (or any other purported rights holder under the Policies) ongoing duty of cooperation under the Policies.  Further, FFIC may demand that Debtors, Reorganized Debtors, or the Asbestos PI Trust comply with their Contractual Obligations by objecting to, and seeking the disallowance of, unmeritorious Asbestos PI Claims.  Their failure to do so, including the release of such obligations by the Plan, would constitute a further violation of the duty of cooperation. The Disclosure Statement must disclose the material risks that the Plan's attempts to violate these rights will diminish the recoveries of holders of Asbestos PI Claims.

42.  In addition, the Disclosure Statement fails to explain how Debtors, Reorganized Debtors, or the Asbestos PI Trust will satisfy this continuing Contractual Obligation following the Effective Date.  Debtors intend to assign their rights under insurance policies to the Asbestos PI Trust; *see* Plan § 7.2; however, there is no provision in the Plan that ensures, nor is there any provision in the Disclosure Statement that describes how, the Asbestos PI Trust will perform any of the Contractual Obligations.  Any repudiation of Debtors' continuing Contractual Obligations will result in the loss of alleged insurance coverage that might otherwise be available under the Policies.

43.  Finally, the Disclosure Statement fails to provide any information how Debtors, Reorganized Debtors, the Asbestos PI Trust, or any other entity claiming a post-Effective Date interest in the Policies, will satisfy the continuing Contractual Obligations.  As the protracted, and undoubtedly litigious, task of processing disputed Asbestos PI Claims falls to the Asbestos PI Trust, there is no disclosure as to how the Debtors, or Reorganized Debtors' necessary

cooperation will be forthcoming.  Indeed, they will be contractually obligated to do just the

opposite.

44.  Because the Plan disregards the insured's post-Effective Date duties of

cooperation and other continuing Contractual Obligations, there is a substantial, yet undisclosed,

risk that any otherwise allegedly available insurance coverage may be vitiated.  The failure of the

Disclosure Statement to adequately disclose the material risks that alleged insurance coverage

may be vitiated as a result makes it materially misleading and inadequate under Section 1125.

### 3.   The Disclosure Statement Fails To Disclose That The Plan May Vitiate Alleged Coverage By Violating Any Anti-Assignment Restrictions In The Policies

45.  Any insurance coverage allegedly provided by the Policies is subject to the

prohibition against assignment of the Policies.  Enforcement of anti-assignment clauses in

insurance policies is crucial to maintaining the fundamental bargain between the insurer and

policyholder.  *See* 43 Am.Jur.2d Insurance § 785; *Caldwell Trucking PRP Group v. Spalding

Composites Co.*, 890 F.  Supp. 1247, 1260-61 (D.N.J. 1995) (holding that assignment of

insurance rights would violate "essence of the contract" because, *inter alia*, it would create an

economic incentive for policyholders to maximize insurance pay-out, which is inconsistent with

policyholder's obligation to cooperate in its own defense).  Moreover, breach of the anti-

assignment clause will vitiate an insurer's further obligations to provide coverage under the

policy.  *See* 43 Am.Jur.2d Insurance § 785.  The Plan, however, contemplates that Debtors and

other Insurance Contributors will assign the Policies to the Asbestos PI Trust in spite of any anti

assignment provisions in the Policies.  *See* Plan § 7.2.2.

46.  The Policies are not subject to assignment without FFIC's consent.  11 U.S.C.

§ 365(c)(1)(A) (debtor can not assume or assign a contract if applicable law excuses non-debtor

from accepting performance from entity other than debtor); *Allied Corp. v. Frola*, 1992 WL

281114 (D. N.J. 1992) (Wolin, J.) (finding that policies were not assignable and discussing authority); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 3d Cir. 1989) ("[S]ince insurance is a personal contract between the insurer and the named insured and on behalf of others specifically provided for, coverage terminates when contract is assigned or transferred without the consent, permission, and approval of both contracting parties.") (citations omitted); *but see Hartford Accident and Indemnity Company v. Global Industrial Technologies, Inc.*, C.A. No. 07-1749 (W.D. Pa., July 25, 2008), slip. op. at 12-14. (on appeal).

      47.  Moreover, a debtor cannot assign the benefits of a contract without assuming its corresponding burdens.  Because the Plan purports to assign the Policies without requiring the Asbestos PI Trust to assume Debtors' reciprocal Contractual Obligations, the Plan does not comply with the Bankruptcy Code with respect to FFIC.  The Policies' terms "ride through" and remain binding on a reorganized debtor after confirmation of a plan.  *See, e.g., In re Stewart Foods, Inc.*, 64 F.3d 141, 145 (4th Cir. 1995) (terms of contract binding); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 119, 1153 (3d Cir. 1989) (debtors bound by arbitration clause in contract); *Texas Pacific Indemn. Co. v. Atlantic Richfield Co.*, 846 S.@.2d 580, 585 (Tex. app. 1993) (enforcing anti-assignment provision in bond despite bankruptcy trustee's attempt to assign).  Because the Policies' anti-assignment provisions "ride through" any reorganization, Debtors cannot assign their rights under the Policies without the prior express consent of FFIC.  Even if, *arguendo*, the Policies can be assigned, the Asbestos PI Trust would then bound to perform Debtors' Contractual Obligations, but for the terms of the Plan that release such obligations.  As such, the Plan's purported assignment of the Policies would vitiate any coverage otherwise available thereunder.

48.   The Disclosure Statement must disclose the material risk that any attempted assignment of Debtors' rights under the Policies may be unenforceable under applicable bankruptcy and non-bankruptcy law, and will vitiate any otherwise allegedly available insurance coverage.  Because the Disclosure Statement makes no such disclosure, it should not be approved.

### 4.   The Disclosure Statement Fails to Disclose That The Plan May Vitiate Alleged Coverage Because It Constitutes A Voluntary Settlement to Which FFIC Did Not Consent

49.   In the face of the evidence that Debtors presented in support of the Estimation Motion, the entire Asbestos Settlement Agreement, as implemented by the TDP provisions that allow the Asbestos PI Trust to settle Asbestos PI Claims without the involvement of FFIC and then present that unauthorized claim to FFIC for payment, is a voluntary payment in violation of the consent to settle clause in the Policies.  This attempt to bind FFIC is in violation of FFIC's Contractual Rights and will vitiate any otherwise allegedly available insurance coverage. Because the Disclosure Statement fails to disclose the material risk that recoveries by holders of Asbestos PI claims will thereby be reduced, it should not be approved.

### 5.   The Disclosure Statement Fails To Disclose That The Plan May Vitiate Alleged Coverage By Violating FFIC's Rights To Performance Of Debtors' Other Contractual Obligations

50.   Finally, the release and injunction contained in the Plan may materially impair FFIC's Contractual Rights including, without limitation, any (i) rights of subrogation, contribution, recoupment and setoff; (ii) rights to require the insured to pay any retrospective premiums, deductibles and self-insured retentions; and (iii) rights to enforce performance of Debtors' other continuing Contractual Obligations.  *See* Plan § 7.15(h) and Article VIII.

51.   The Plan's injunction and discharge provisions purport to make FFIC potentially liable to provide the full amount of alleged insurance coverage while extinguishing its

21

ability to enforce its reciprocal Contractual Rights.  *See* Plan, Article XIII.  A bankruptcy court

cannot alter or enlarge an insurer's contractual obligations.  *See Coupon Clearing Serv.*, 113 F.3d

at 1099 ("[T]he estate ha[s] no greater rights in property than those held by the debtor prior to

bankruptcy."); *Moody v. Amoco*, 734 F.2d at 1213 (the Bankruptcy Code is not intended to

expand debtor's rights against others more than they exist at the commencement of the case).

Moreover, as a matter of applicable non-bankruptcy law, the abrogation of FFIC's Contractual

Rights may excuse FFIC from any obligations to provide otherwise allegedly applicable

coverage for Asbestos PI Claims.  *See* 14 Couch on Ins. § 199:13 (2003).  The Disclosure

Statement, however, fails to acknowledge this risk.  In this respect also, the Disclosure Statement

is materially misleading.

### D.  The Disclosure Statement Should Not Be Approved Because It Describes An Unconfirmable Plan As To FFIC

52.  Approval of a disclosure statement should be denied if it describes a plan of

reorganization that is so flawed that confirmation is impossible.  *See In re Cardinal*

*Congregate I,* 121 B.R 760, 764 (Bankr. S.D. Ohio 1990); *In re Market Square Inn, Inc.*, 163

B.R. 64, 68 (Bankr. W.D. Pa. 1994); *In re Eastern Maine Electric Coop, Inc.*, 125 B.R. 329, 333

(Bankr. D. Me. 1991); *In re Allied Gaming Mgmt., Inc.*, 209 B.R. 201, 202 (Bankr. W.D. La.

1997) ("[A] disclosure statement should not be approved if the proposed plan, as a matter of law,

cannot be confirmed."); *In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999)

("It is now well accepted that a court may disapprove of a disclosure statement, even if it

provides adequate information about a debtor's plan, if the plan could not possibly be

confirmed."); *In re Curtis Center Ltd. Partnership*, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996); *In*

*re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992); *In re Bjolmes Realty*

*Trust*, 134 B.R. 1000, 1002 (Bankr. D. Mass. 1991); *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D.

Va. 1986).

      53.  By rejecting a disclosure statement for a plan that is not confirmable, the court

preserves the resources of the estate and the resources of the judicial system by avoiding the

time-consuming and expensive solicitation and confirmation litigation process.

      **1.  The Plan Cannot Be Confirmed Because It Is Not Fair And Equitable As To FFIC**

      54.  FFIC is entitled to fair and equitable treatment of its rights under, interests in,

and potential Claims arising out of, the Policies.  Because of its failure to provide such fair and

equitable treatment, the Plan does not satisfy Section 1129(b) of the Bankruptcy Code with

respect to FFIC.

      55.  Specifically, the discharges and injunctions contained in the Plan impermissibly

impair FFIC's post-Effective Date rights to enforce satisfaction of Debtors', Reorganized

Debtors' and/or or the Asbestos PI Trust's continuing duties and obligations under the Policies,

as well as any possible rights of set-off, recoupment, contribution and subrogation.  *See* Plan,

Section 7.15(h), Article XIII.  In this respect, the Plan is not fair and equitable to, and unfairly

discriminates against, FFIC because it makes FFIC potentially liable to provide insurance

coverage and other performance while depriving FFIC of its corresponding ability to exercise its

rights, and enforce its remedies, thereunder.  *Id.*

      56.  As a matter of applicable non-bankruptcy law, the Plan's treatment of the

Policies would excuse FFIC from any otherwise applicable further obligations to provide

coverage or other performance to Debtors, Reorganized Debtors, the Asbestos PI Trust, or any

other entity, under the Policies.  As such, the Plan does not satisfy Section 1129(b) of the

Bankruptcy Code with respect to FFIC and cannot be confirmed.

**2. The Plan Lacks Proper Means For Its Implementation With Respect To Possible Post-Confirmation Settlements As It Is Silent As To The Ability Of Non-Settling Insurers To Become Protected Parties Under Section 524(g)**

57. Section 524(g) of the Bankruptcy Code does not prohibit parties, post-confirmation, to become protected parties in connection with the channeling injunction issued pursuant to Section 524(g). To the contrary, Section 524(g) contemplates the addition of protected parties post-confirmation so long as they are adequately described in the Plan. Inclusion of insurers that settle post confirmation, as protected parties, serves a valid and worthy bankruptcy goal.

58. However, the Disclosure Statement is silent as to whether and/or how a non-settling insurance company may obtain the benefits of the Asbestos PI Channeling Injunction and/or the Insurance Company Injunction as a Protected Asbestos Party. The Disclosure Statement should contain clear and specific language detailing whether, and if so, how, a non-settling insurance company that enters into a post confirmation settlement agreement with Debtors or the Asbestos PI Trust will obtain the protection of the Asbestos PI Channeling Injunction and the Insurance Company Injunction otherwise available to pre-confirmation Settled Asbestos Insurance Companies. The Disclosure Statement fails to advise holders of Asbestos PI Claims that the absence of provisions authorizing the provision of channeling injunction protection to insurers entering into settlements post-confirmation may materially diminish their recoveries from the Asbestos PI Trust.

**3. The Plan Is Otherwise Unconfirmable**

59. The Plan improperly proposes to re-write the terms of the Policies. A debtor "cannot unilaterally impose coverage terms on [the insurers] …" *Certain Underwriters at Lloyd's, London v. McDermott Int'l Inc.*, 2002 U.S. Dist. Lexis 874* 32 (E.D. La. 2002); *In re*

24

*Ames Dept. Stores, Inc.*, 1995 WL 311764 (S.D.N.Y. May 18, 1995) (bankruptcy court does not

have the authority to rewrite the terms of an insurance policy and impose requirements upon the

insurer which were not part of the parties' bargains). To the extent that the Plan purports to

assign any of the Policies without the prior express consent of FFIC and without expressly

requiring Debtors, Reorganized Debtors and/or or the Asbestos PI Trust, as the case may be, to

assume all of the duties and obligations of the insured thereunder, it impermissibly attempts to

unilaterally modify the terms of the Policies.

      60. The Plan also violates the jurisdictional limitations of 28 U.S.C. § 157 because

it improperly attempts to confer jurisdiction upon the Bankruptcy Court for non-core matters that

may involve adjudication of FFIC's rights and obligations under the Policies. *See* Plan § 7.15(e).

This includes, without limitation, any possible adjudication of FFIC's rights against any affiliate,

released party, or any other non-debtor third party. To the extent that the Plan contemplates that

proceeds of the Policies will be a source for payment of Asbestos PI Claims, neither the Plan nor

the Confirmation Order may adjudicate the existence or extent of alleged coverage under the

Policies or alleged coverage for any particular Asbestos PI Claim.

      61. Based upon the foregoing, the Plan cannot be confirmed. Because it describes

an unconfirmable Plan, the Disclosure Statement should not be approved.

**E. Request For Adequate Discovery In Support of Objections to Confirmation**

**1. Adequate Time For Discovery Must Be Permitted For Non Settled Insurers To Prepare For Confirmation Hearing**

      62. Pursuant to the Motion, Debtors request that the confirmation hearing be set,

subject to the Court's availability, to begin the last week of January 2009. Debtors also request

that the Court set a deadline for objections to the Plan to be filed and served on required parties

no later than the date that is four (4) weeks before the confirmation hearing, or sometime during

SL1 873233v2/021630.00003

the week of December 29, 2008.  Motion ¶ 56.  Debtors' proposed schedule only provides for approximately 60 days between the hearing on the Motion and the deadline for filing objections to confirmation of the Plan.

63.  FFIC intends to conduct confirmation related discovery in support of its objections to the Plan including, without limitation, discovery of Debtors' information in support of the Estimation Motion.  However, Debtors' proposed schedule regarding confirmation does not provide sufficient time to conduct this discovery.  Given the lack of information provided by Debtors regarding the Plan, the complexity of the issues, and the number of parties involved, the schedule proposed by Debtors for the confirmation hearing provides an unrealistically compressed time frame within which to prepare meaningful objections to confirmation.

64.  FFIC, at the very least, will need to request the production of documents, requests for admissions, and conduct depositions relating to both factual and expert discovery.  Approximately 60 days to conduct such discovery in any case would be insufficient, but in a case as complex as this, is grossly inadequate and denies FFIC due process of law.  Indeed, any party seeking adequate discovery to support their Plan objections will be significantly and adversely affected by this extremely accelerated schedule.

65.  Given the differing interests involved in this case, the complexity and size of the case, the amounts at issue, and the lack of information provided, FFIC objects to Debtors' accelerated confirmation schedule and requests that the confirmation hearing and deadline for filing objections to confirmation be scheduled so as to provide sufficient time for adequate discovery in support of objections to confirmation.

## Reservation Of Rights

66.  FFIC expressly reserves, and does not waive, all of its rights, defenses, limitations and/or exclusions in connection with the Contractual Rights, Contractual Obligations,

26

applicable law or otherwise.  FFIC further reserves all rights to assert any and all such rights, defenses, limitations and/or exclusions in any appropriate manner or forum whatsoever (including, without limitation, any of its rights to have any non-core matter relating to the interpretation of its Contractual Rights and Debtors' Contractual Obligations adjudicated by the United States District Court).  Nothing contained in these Objections shall be deemed to expand any alleged coverage that may otherwise be available under any insurance policies or any alleged rights to payment under any settlements.

67.  FFIC further reserves all of its rights to raise the issues contained in these Objections and any other related issues in any procedurally-appropriate contested matter and/or adversary proceeding including, without limitation, objections to confirmation of the Plan and a separate adversary proceeding requesting any appropriate declaratory and/or injunctive relief with respect to any Contractual Rights that may be adversely affected by Confirmation of the Plan.

68.  FFIC further reserves all of its rights to object to any claim for coverage under any of the Policies and/or any claim for payment under any settlement agreements, and/or to seek declaratory and/or injunctive relief to the extent that treatment of the Contractual Rights, Contractual Obligations and/or confirmation of the Plan violates any terms or conditions of any of the Policies and/or settlements or gives rise to any defenses on behalf of FFIC.

69.  Nothing in these Objections shall be construed as an acknowledgment that any of the Policies, or pre-petition settlement agreements, cover or otherwise apply to any Claims, losses or damages on account of any Claims or otherwise, or that any such Claims or causes of action are eligible for payment.  FFIC reserves the right to seek an adjudication that Debtors have waived or forfeited any allegedly available coverage under the Policies.

70.  FFIC reserves the right to object to confirmation of the Plan on the basis that votes solicited from Asbestos PI Claimants who have not filed proofs of claim (i) do not result in acceptance of the Plan by creditors holding at least two-thirds in amount and one-half in number of the allowed claims of each impaired class; (ii) do not result in acceptance of the Plan by at least seventy-five (75%) percent of the voting class members holding allowed claims in Class 6 (Asbestos PI Claims); and/or (iii) should not be counted if they are contained on master ballots cast by counsel who have not complied with Bankruptcy Rule 2019.

71.  Finally, FFIC reserves its right to amend, modify or supplement these Objections in response to, or as a result of any discovery being conducted in connection with confirmation of the Plan and/or any submission in connection with the Plan or this case filed by any party-in-interest.  FFIC also reserves the right to adopt any other objections to approval of the Disclosure Statement filed by any other party.

[*Remainder of Page Intentionally Left Blank*]

SL1 873233v2/021630.00003

## Conclusion

72.  For the reasons set forth above, the Disclosure Statement fails to provide

adequate information regarding material aspects of the Plan that affect FFIC (and other non-

settling insurers) and fails to disclose material risks associated with the Plan.  Without such

fundamental information, the Disclosure Statement cannot satisfy the minimum standards

required by Section 1125 of the Bankruptcy Code and is materially misleading.  In addition, the

Disclosure Statement describes a Plan that is unconfirmable.  Accordingly, the Disclosure

Statement should not be approved.

Dated:  October 17, 2008                    STEVENS & LEE, P.C.


                                            /s/ *John D. Demmy*
                                            John D. Demmy (DE Bar No. 2802)
                                            1105 North Market Street, 7th Floor
                                            Wilmington, DE 19801
                                            Telephone: (302) 425-3308
                                            Telecopier: (610) 371-8515
                                            Email: jdd@stevenslee.com

                                            -and-

                                            Leonard P. Goldberger
                                            Marnie E. Simon
                                            (Members PA Bar)
                                            1818 Market Street, 29th Floor
                                            Philadelphia, PA 19103-1702
                                            Telephone:  (215) 751-2864/2885
                                            Telecopier:  (610) 371-7376/8505
                                            Email: lpg@stevenslee.com
                                            Email: mes@stevenslee.com

                                            ATTORNEYS FOR FIREMAN'S FUND
                                            INSURANCE COMPANY AND RIUNIONE
                                            ADRIATICA DI SICURTA

SL1 873233v2/021630.00003