# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 01-1139 (JKF)<br><br>Jointly Administered<br><br>Re: Docket Nos. 19581, 19582, 19620, and 19695<br><br>Hearing Date: 10/27/08 at 9:00 a.m. (Eastern)<br>Objection Deadline: 10/17/08 at 4:00 p.m. (Eastern) |

**OBJECTION OF THE STATE OF MONTANA TO (I) THE DEBTORS' DISCLOSURE STATEMENT FOR THE JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS AND (II) THE MOTION OF THE DEBTORS FOR AN ORDER APPROVING DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES, CONFIRMATION SCHEDULE AND RELATED RELIEF**

---

[1] The Debtors are the following entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), ECARG, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, LB Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc. E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

1

The State of Montana ("Montana"), by and through its undersigned counsel, hereby objects (the "Objection") to the Debtors' Disclosure Statement for the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008 (Docket No. 19581) (the "Disclosure Statement") and to the Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief (Docket No. 19620) (the "Solicitation Motion"). In support of this Objection, Montana states as follows:

## BACKGROUND AND INTRODUCTION

1.  On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession.

2.  As set forth in the Disclosure Statement, on April 6, 2008, in the midst of litigation concerning the estimation of the Debtors' liability for asbestos personal injury claims, the Debtors, the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders reached an agreement in principle (the "Asbestos PI Settlement") to resolve all Asbestos PI Claims against the Debtors and to cooperate in the confirmation of a plan of reorganization. See Disclosure Statement at p. 11. Montana, which has filed indemnity and contribution claims relating to the Debtors' operations in Lincoln County, Montana, disagrees with the Asbestos PI

Settlement and was not included in the negotiations leading to that "settlement", yet the Asbestos PI Settlement is "the foundation for the Plan." Disclosure Statement at p. 11.[2]

3.  On September 19, 2008, the Debtors filed the Disclosure Statement. In connection with the Disclosure Statement, the Debtors also have provided a copy of the accompanying (yet incomplete) Exhibit Book, which identifies twenty-four exhibits to the Disclosure Statement, one of which is the Debtors' proposed plan of reorganization (the "Plan"). As set forth below, the Exhibit Book fails to include all of the exhibits referenced in the Plan and Disclosure Statement. See infra Part I.B.

4.  On September 25, 2008, the Debtors then filed the Solicitation Motion, seeking approval of the Disclosure Statement. On the same day, the Debtors also filed a motion to shorten notice with respect to the Solicitation Motion (Docket No. 19621) (the "Motion to Shorten"). The Court entered an order granting the Motion to Shorten on October 1, 2008 (Docket No. 19662).

## **MONTANA'S CLAIMS**

5.  Montana has been named as defendant in at least one hundred and twenty-three (123) cases in various Montana state courts (the "State Court Actions"). However, Montana was not named as a defendant in any of the State Court Actions until after the Petition Date.

6.  Plaintiffs in the State Court Actions (the "Plaintiffs") allege periods of employment with or exposure from W.R. Grace and/or its predecessors' operations ranging from

---

[2] For that matter, the claimants that were allegedly injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants") also disagree with the Asbestos PI Settlement. See Libby Claimants' Second Motion (A) for Reconsideration of Order Granting Debtors leave from Scheduling Order and Shorting Notice of Solicitation Motion and (B) to Set a Reasonable Deadline for Objections to and Date for hearing on Approval of Disclosure Statement (Docket No. 19709), at ¶ 3 (stating that "[t]he Plan and related documents do not reflect an agreement with the Libby Claimants on how their claims should be treated. Although nominally represented by the PI Committee, the Libby Claimants' interests and concerns have not been fairly addressed in the Plan . . . . The Libby Claimants intend to oppose the Plan.").

1947 through 1993. The various State Court Actions relate to claims arising from the mining and processing of vermiculite containing asbestos within Montana. The various Plaintiffs in the State Court Actions include former employees of W.R. Grace and/or its predecessors, subcontractor employees, individuals that lived near the Debtors' operations, as well as their family members.

7.  Pursuant to the Agreement and Plan of Reorganization between W.R. Grace & Co. and Zonolite Company, dated January 17, 1963, W.R. Grace acquired substantially all of the properties and assets of Zonolite, including mining properties in Montana, and assumed all debts and liabilities of Zonolite. W.R. Grace & Co. is liable for the conduct of the predecessor and subsidiary companies, including W.R. Grace & Co. – Conn. and Zonolite Company, with respect to the claims as set forth in the State Court Actions. Indeed, approximately 52 of the State Court Actions themselves recognize this, asserting that Montana "aided and abetted" W.R. Grace.

8.  The State of Montana denies that it is in any manner responsible for the events giving rise to the various Plaintiffs' claims for relief set forth in the State Court Actions, or for injuries and damages allegedly sustained by those Plaintiffs.[3] If, however, liability is imposed on Montana as a result of the matters alleged in the various State Court Actions, such liability was caused by the Debtors because the Debtors had a duty to:

> (a) furnish a place of employment that was safe for employees, including the Plaintiffs in the State Court Actions;

---

[3] The Disclosure Statement states with respect to the action captioned Orr v. State of Mont. that "[t]he Montana federal district court dismissed the lawsuit but, on December 14, 2004, the Montana Supreme Court reversed the Montana federal district court ruling . . . ." Disclosure Statement § 2.8.1.3. This disclosure is not accurate. The Montana state, not federal, district court dismissed the lawsuit.

    (b)    furnish and require the use of safety devices and safeguards, such as respiratory protective devices, by employees, including the Plaintiffs in the State Court Actions; and

    (c)    adopt and use such methods, processes, practices, means, and operations as reasonably adequate to render the place of employment safe, and to do every other thing reasonably necessary to protect the life and safety of employees, including the Plaintiffs in the State Court Actions.

9. W.R. Grace breached the aforementioned duties, and that breach was the proximate, intervening, and superseding cause of the alleged injuries and damages of the Plaintiffs in the State Court Actions.

10. As the Debtors have previously acknowledged, the actions against Montana are wholly and completely derivative of the Debtors' operations. See December 19, 2005 Tr., 153:6-11. Consequently, on or about March 25, 2003, Montana filed contribution and indemnification claims against the Debtors, seeking contribution and indemnification from the Debtors in the pending State Court Actions against Montana.

## OBJECTION

### I. THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED.

11. Bankruptcy Code section 1125(b) provides that during the confirmation process, a plan proponent must present "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1125(a) defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a). Montana maintains that in several

5

respects, the Disclosure Statement does not provide a hypothetical investor with information that is sufficient in detail to allow it to make an informed judgment about the plan.

**A.    The Disclosure Statement Should Disclose That The Plan Blatantly Disregards The Absolute Priority Rule And Prohibition Against Unfair Discrimination In The Event That Class 6 Rejects The Plan.**

12.    As a preliminary matter, Montana objects to the Disclosure Statement because it fails to disclose that the Plan blatantly disregards the absolute priority rule and prohibition against unfair discrimination, as set forth in Bankruptcy Code section 1129(b). Specifically, the Bankruptcy Code provides that a plan normally may be confirmed if it meets certain requirements, including that each and every class either accepts the plan or does not suffer any impairment under the plan. See 11 U.S.C. § 1129(a)(i) ("The court shall confirm a plan only if all of the following requirements are met: (i) With respect to each class of claims or interests— (A) such class has accepted the plan; or (B) such class is not impaired under the plan."). The Bankruptcy Code, however, provides an alternative regime for confirmation, commonly referred to as "cram down." Specifically, a debtor may confirm a plan even if one of the impaired classes does not accept the plan, so long as the plan is (among other things) fair and equitable and does not discriminate unfairly. See id. § 1129(b)(1) (stating that "if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met[, the court] shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan").

13.    The Bankruptcy Code provides that in order to meet the "fair and equitable" requirement of this cram down regime, it must comply with what is known as the "absolute priority rule." Specifically, it must be the case that each creditor in the dissenting class either receives the full value of the allowed amount of its claim, or alternatively that the creditors in

junior classes do not receive any distribution. See 11 U.S.C. § 1129(b)(2)(B)(ii) (requiring that for "a plan [to] be fair and equitable with respect to a class" for purposes of cram down, it must be the case that "the plan provides that each holder of a claim of such class receive . . . the allowed amount of such claim" or, alternatively, "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property . . . ."); see also In re Armstrong World Indus., Inc., 432 F.3d 507, 508 (3d Cir. 2005) (affirming denial of confirmation because plan violated absolute priority rule).

14. The Disclosure Statement and Plan directly contravene the requirements of the absolute priority rule in the event that Class 6 rejects the Plan. Specifically, Montana's claims have been classified within Class 6 Asbestos PI Claims. See infra Part I.C (discussing, and disputing, classification of Montana's claims). Class 6 Asbestos PI Claims are impaired under the Plan. See Disclosure Statement § 1.2.1 (stating that Class 6 Asbestos PI Claims will be resolved pursuant to the Asbestos PI Trust Agreement, and that holders of such claims will receive an "[u]nknown" amount); see also Plan § 3.1.[4]

15. Notwithstanding that Class 6 is impaired under the Plan, classes that are the same in priority to Class 6 are unimpaired under the Plan. Specifically, in violation of the prohibition on unfair discrimination, the Disclosure Statement provides that each holder of allowed Class 7 Asbestos PD Claims "shall be paid the Allowed Amount of its Allowed Asbestos PD Claim in Cash in full . . ." Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 7 as "100%"). Likewise, the Disclosure Statement provides that each holder of allowed Class 9 General Unsecured Claims "shall be paid the Allowed Amount of its Allowed General

---

[4] Class 8 CDN ZAI PD Claims and Class 10 Equity Interests in the Parent also are impaired under the Plan. See Disclosure Statement § 1.2.1; Plan § 3.1.

Unsecured Claim with postpetition interest . . . in Cash in full . . ." Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 9 as "100%"). Finally, classes that are junior in priority to Class 6 are unimpaired under the Plan. Specifically, in violation of the absolute priority rule, the Disclosure Statement provides, with respect to Class 11 Equity interests in Debtors Other than the Parent, that "[t]he Plan leaves unaltered the legal, equitable, and contractual rights to which each Equity Interest in the Debtors other than the Parent entitles the Holder of such Equity Interest." Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 11 as "100%").

16. The Debtors have thus disregarded Bankruptcy Code section 1129(b). Specifically, they have stated that even if a class does not accept the Plan, the Debtors nonetheless are seeking confirmation of the Plan pursuant to the cram-down regime. See Disclosure Statement § 4.6 ("Section 6.5.1 of the Plan deals with confirmation in the event an impaired Class rejects the Plan. Impaired Equity Interests in the Parent and/or impaired Classes of Plan claims that fail to accept the Plan may be "crammed down" in accordance with Bankruptcy Code § 1129(b)."); id. § 8.2.1 (summarizing cram-down regime and stating that "[i]n the event one or more Classes of impaired Claims or Equity Interests rejects the Plan, the Debtors reserve the right to proceed with confirmation pursuant to Bankruptcy Code § 1129(b), and the Bankruptcy Court will determine, at the Confirmation Hearing, whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired Class of Claims or Equity Interests"); see also Plan § 6.5.1 ("With respect to impaired Equity Interests in the Parent, and subject to Section 6.of this Plan [addressing acceptance by Classes 6 and 7 pursuant to Bankruptcy Code section 524(g)], with respect to any impaired Class of Plan claims that fail to accept this Plan in accordance with Bankruptcy Code §§ 1126 and 1129(a), the Plan

8

Proponents request, to the extent consistent with applicable law, that the Court confirm this Plan in accordance with Bankruptcy Code § 1129(b) with respect to such non-accepting Class of Equity Interests and such non-accepting Class of Plan Claims (if any), and this Plan constitutes a motion for such relief."). This is so despite the fact that the Plan, in the event of a cram down, would violate the absolute priority rule and prohibition on unfair discrimination, in direct contravention of Bankruptcy Code section 1129(b).

17. The Disclosure Statement does not disclose that the Plan violates the absolute priority rule. To the contrary, the Disclosure Statements states in the section identifying risk factors that "[a]lthough the Debtors believe that the Plan will satisfy all requirements necessary for confirmation, there can be no assurance that the Bankruptcy Court will reach the same conclusion." Disclosure Statement § 9.2.3.

18. Montana requests the Court to require the Debtors to amend the Disclosure Statement to expressly disclose the Plan's potential violation of section 1129(b), or alternatively, require the Debtors to amend the Disclosure Statement and Plan in order to bring them into compliance with the requirements of that statutory provision. Specifically, the Debtors should not be allowed to maintain, in sections 4.6 and 8.2.1 of the Disclosure Statement or section 6.5.1 of the Plan, that they are seeking confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) when, in fact, the Disclosure Statement and Plan in their current form directly violate the requirements of that section.

**B.     The Disclosure Statement Fails To Provide Critical Exhibits.**

19. The Disclosure Statement and the Exhibit Book also omit certain critical exhibits that a hypothetical investor would find necessary to evaluate its options. Specifically, the Plan provides that "Each Holder of an Asbestos PD Claim that is Allowed . . . shall be paid . . . in Cash in full . . . by the Asbestos PD Trust pursuant to the terms of the Asbestos PD Trust

9

Agreement." Plan § 3.1.7(b)(i). However, the Debtors have not provided a copy of the Asbestos PD Trust Agreement. Nor have the Debtors provided a copy of the Asbestos PD Note, which constitutes the majority of the Asbestos PD Trust Assets. See Plan § 1.1(28).[5] Because the Disclosure Statement and accompanying Exhibit Book do not include these critical documents that a hypothetical investor in the class holding Asbestos PD Claims would need to consider, the Disclosure Statement should not be approved until those exhibits have been disseminated. This missing data affects the ability to evaluate what holders of Class 6 claims will receive.

20. Additionally, the Trust Distribution Procedures (or "TDP"), although included in the Exhibit Book, omit to disclose the Initial Payment Percentage, as defined therein. See TDP § 2.3 ("The Initial Payment Percentage has been set at __% . . . ."); id. § 4.2 ("As provided in Section 2.3 above, the Initial Payment Percentage shall be __% . . . ."). A hypothetical investor is unable to make an informed judgment without this percentage.

C.  **The Disclosure Statement Should Disclose The Existence Of A Dispute Regarding The Proposed Classification Of Montana's Claims.**

21. The Disclosure Statement should be revised to disclose that Montana disputes the classification of its claims.[6] Specifically, the Disclosure Statement states that under the Plan, Montana's indemnification and contribution claims would be treated as an Indirect PI Trust Claim. See Disclosure Statement § 2.8.1.3 ("To the extent that the State of Montana's claim is Allowed, it will be treated as an Indirect PI Trust Claim."). The Indirect PI Trust Claims are a subset of the Class 6 Asbestos PI Claims. See Plan § 1.1(32) (defining "Asbestos PI Claim" to include an "Indirect PI Trust Claim"). The Disclosure Statement further provides that those

---

[5] The Exhibit Book contains copies of only approximately half of the exhibits to the Disclosure Statement. Montana maintains that complete copies of all of the omitted exhibits must be provided before the Disclosure Statement is approved.

[6] Here again, Montana concedes that its substantive arguments regarding the propriety of the classification of its claims will be presented in connection with the hearing on the confirmation of the Plan. However, Montana does maintain that a hypothetical investor would be unable to make a knowledgeable decision with respect to the Plan without knowing, at a minimum, that such a dispute exists.

Asbestos PI Claims (including Montana's claim, to the extent that it is allowed to be treated as an Indirect PI Trust Claim, as contemplated by the Plan) are channeled to the Asbestos PI Trust. See Disclosure Statement § 1.2.3. ("The Asbestos PI Trust will, among other things, (1) assume liability for all Asbestos PI Claims (whether now existing or arising at any time in the future) . . . . The Asbestos PI Trust will be the only Entity that a Holder of an Asbestos PI Claim may look to for recovery on account of such a Claim." (emphasis in original)). The Debtors' purported basis for channeling the Asbestos PI Claims to the Asbestos PI Trust is Bankruptcy Code section 524(g). See Disclosure Statement § 4.7.2.1 ("[T]he Asbestos PI Trust shall be created pursuant to section 524(g) of the Bankruptcy Code . . . . The purpose of the Asbestos PI Trust shall be to, among other things: (i) assume the liabilities of the Debtors with respect to all Asbestos PI Claims . . . .").

22. Montana maintains that its claims for indemnification and contribution are not of the type that are subject to Bankruptcy Code section 524(g). Specifically, the injunction that is implemented by that section addresses only the liabilities of a debtor that, as of the petition date, was named as a defendant in personal injury, wrongful death, or property damage actions. See 11 U.S.C. § 524(g)(2)(B)(i)(I) (requiring that "the injunction is to be implemented in connection with a trust that . . . is to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions"). Montana believes that its claims, which are in the nature of indemnification and contribution, not personal injury, wrongful death, or property damage, fall outside the scope of this section.

23. Montana further believes that its claims may not even be claims that are subject to the automatic stay or that are capable of being discharged by the Plan. The Bankruptcy Code

11

defines a "claim" as a "right to payment."  11 U.S.C. § 101(5).  Therefore, because Montana may not have a "claim" as defined in the Bankruptcy Code until its right to payment arises, Montana's claims may be treated as post-confirmation claims against the reorganized debtor, not subject to the automatic stay and not subject to compromise or discharge by the Plan.  See Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332, 335-36 (3d Cir. 1984) (reversing district court, and concluding that the automatic stay did not apply to indemnification and contribution claims that relate to a debtor's prepetition acts but for which the claimant did not have a right to payment until after the petition date).

24. Therefore, Montana requests the Court to require the Disclosure Statement to be amended to disclose the existence of the dispute regarding whether Montana's claims are property channeled to the section 524(g) injunction and whether they are subject to the automatic stay and to being discharged.

**D.  The Disclosure Statement Should Disclose Montana's Belief That The Plan Was Not Proposed In Good Faith.**

25. Montana further objects to the Disclosure Statement because it fails to disclose that the Plan was not proposed in good faith.[7]  The Bankruptcy Code provides that a plan normally may be confirmed only if, among other things, it was proposed "proposed in good faith."  11 U.S.C. § 1129(a)(3).

26. Montana maintains that the Plan has not been proposed in good faith because, as set forth above, Montana was not involved in any of the negotiations leading up to the Asbestos PI Settlement that "is the foundation for the Plan."  Disclosure Statement at p. 11.  Montana understands that certain other creditors, including the Libby Claimants, also are not in agreement

---

[7] Montana fully concedes that it is premature for the Court to consider whether the Plan was proposed in good faith, and that Montana's substantive arguments regarding that issue will be presented in connection with the hearing on the confirmation of the Plan.  However, Montana does maintain that a hypothetical investor would be unable to make a knowledgeable decision with respect to the Plan without knowing, at a minimum, that such a dispute exists.

with the Asbestos PI Settlement.  <u>See, e.g.</u>, Libby Claimants' Second Motion (A) for Reconsideration of Order Granting Debtors leave from Scheduling Order and Shorting Notice of Solicitation Motion and (B) to Set a Reasonable Deadline for Objections to and Date for hearing on Approval of Disclosure Statement (Docket No. 19709), at ¶¶ 3-4 (stating that "counsel to the Libby Claimants was not permitted to review advance drafts of the Plan or the Disclosure Statement" and that "the Plan and related documents do not reflect an agreement with the Libby Claimants on how their claims should be treated . . . .  The Libby Claimants intend to oppose the Plan.").

27. The Plan's effectuation of the Asbestos PI Settlement does not reflect an agreement with Montana on how its claims should be treated, and instead constitutes a concerted action among the Debtors, the Official Committee of Asbestos Personal Injury Claimants, and the Asbestos PI Future Claimants' Representative to satisfy asbestos personal injury claimants while leaving Montana with no assurance of a fair distribution.  Montana requests that the Court require the Disclosure Statement to be revised to disclose the existence of this dispute.

**E.  The Disclosure Statement Should Disclose The Existence Of A Dispute Regarding The Propriety Of Trust Distribution Procedures' Medical Criteria.**

28. Finally, Montana believes that the medical criteria set forth in the Trust Distribution Procedures (as defined in the Plan) are inappropriate.  Although here again Montana concedes that the substance of its position should await a determination in connection with Plan confirmation, Montana maintains that a hypothetical investor would need to know that a dispute exists regarding such criteria in order to make an informed decision in determining how to vote with respect to the Plan.

## II. THE CLAIMS ESTIMATION IN THE SOLICITATION MOTION SHOULD BE EXPLAINED.

29.     The Solicitation Motion provides that indemnification claims will be estimated, for purposes of voting on the plan, at $1.00 each.  See Solicitation Motion ¶ 28(A)(II) ("Each Holder of an Indirect PI Trust Claim will have a single vote in the amount, for voting purposes only, of $1.00, which is solely for voting purposes and does not constitute an allowance of such Claims for purposes of distribution").  The Debtors have provided no basis for such an estimation, even for voting purposes, at such a nominal amount, and Montana requests that the Debtors be required to provide such an explanation.

## RESERVATION OF RIGHTS

30.     Montana reserves all rights to raise additional arguments to the Disclosure Statement and/or the Solicitation Motion either at or prior to any hearing with respect to such matters.  Montana further reserves all rights to raise arguments regarding the confirmation of the Plan, or any amended plan, at or prior to any hearing with respect to such matters.

WHEREFORE, Montana respectfully requests that this Court sustain the Objection and limit any relief granted with respect to the Disclosure Statement and Solicitation Motion as set forth herein; and that the Court grant such other and further relief as it deems just and proper.

Dated:  October 17, 2008                              Respectfully submitted,

**Womble Carlyle Sandridge & Rice, PLLC**


By:     /s/ Matthew P. Ward
      Francis A. Monaco, Jr. (#2078)
      Kevin J. Mangan (#3810)
      Matthew P. Ward (#4471)
      222 Delaware Avenue, Suite 1501
      Wilmington, DE  19801
      Ph: (302) 252-4320
      Fax: (302) 252-4330

      Counsel for the State of Montana