# EXHIBIT B --CLEAN VERSIONS OF BAR DATE DOCUMENTS

**Clean Proposed Form of Order**

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Related Docket No. 19540 |

## ORDER (A) ESTABLISHING AUGUST 31, 2009 AS THE PROOF OF CLAIM BAR DATE FOR CANADIAN ZONOLITE ATTIC INSULATION PROPERTY DAMAGE CLAIMS AND (B) APPROVING THE RELATED PROOF OF CLAIM FORM, BAR DATE NOTICES, AND NOTICE PROGRAM

Upon the Debtors' motion seeking entry of an order (a) establishing a proof of claim bar date for Canadian Zonolite Attic Insulation Property Damage Claims ("CDN ZAI PD Claims")[2] and (b) approving the related proof of claim form, bar date notices, and notice program (the "Motion"); and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Terms not defined herein shall have the meaning ascribed to them in the Motion.

pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of the Motion having been given; and it appearing that no other notice need be given; and after due deliberation, consideration of all objections to the Motion and arguments from counsel, and sufficient cause appearing therefore, it is hereby

ORDERED that the relief requested in the Motion is granted to the extent set forth herein, and it is further

ORDERED that August 31, 2009 at 5:00 p.m. (prevailing Eastern Time), shall be the CDN ZAI PD Claims Bar Date, which shall be the last date and time by which the CDN ZAI PD Proof of Claim Form on account of a CDN ZAI PD Claim must be filed or the holder of such CDN ZAI PD Claim shall be forever barred from asserting such CDN ZAI PD Claim against the Debtors; and it is further

ORDERED that the term "CDN ZAI PD Claim" shall be defined as set forth in the bar date documents attached hereto at Exhibit A and Exhibit B; and it is further

ORDERED that the Debtors shall:

(1)    mail via first-class United States mail, within thirty (30) days of entry of this Order, a copy of the CDN ZAI PD Bar Date Notice Package,[3] to (i) all known Holders of CDN ZAI PD Claims and their counsel of record, (ii) the Office of the United States Trustee; (iii) counsel to the official committees appointed in these Chapter 11 Cases; and (iv) all those parties that have requested service and notice of papers in accordance with Bankruptcy Rule 2002;

(2)    mail via first-class United States mail, within thirty (30) days of receipt of names and addresses of potential other known putative claimants provided by the Crown, a copy of the CDN ZAI PD Bar Date Notice Package to all such claimants; and

---

[3]    The CDM ZAI PD Bar Date Notice Package consists of the Cover Letter to Potential Known CDN ZAI PD Claimants, CDN ZAI PD Proof of Claim Form, the General Instructions for Completing the CDN ZAI PD Proof of Claim, and the Notice of the Last Day to File a Claim Concerning CDN ZAI PD Claims.

K&E 13373657.1

(3)    complete the publication notice and third-party mailings that are outlined in the CDN ZAI PD Bar Date Notice Program by February 28, 2009; and it is further

ORDERED that the form and use of the CDN ZAI PD Proof of Claim Form and the General Instructions for Completing the CDN ZAI PD Proof of Claim Form, annexed hereto at Exhibit A, are approved; and it is further

ORDERED that the CDN ZAI PD Bar Date Notices, annexed hereto at Exhibit B, are approved; and it is further

ORDERED that inclusion of the Cover Letter in the Bar Date Notice Package, in the form annexed hereto at Exhibit C, is approved; and it is further

ORDERED that the CDN ZAI PD Bar Date Notice Program, annexed hereto at Exhibit D, is approved and shall constitute adequate notice of the CDN ZAI PD Bar Date to all known and unknown CDN ZAI PD Claimants in Canada; and it is further

ORDERED that the CDN ZAI PD Proof of Claim must be completed and signed by individual holders of CDN ZAI PD Claims or their authorized agents; and it is further

ORDERED that notwithstanding any term, provision, or notice to the contrary, if a person or entity holds a CDN ZAI PD Claim against more than one of the Debtors, such person or entity need not file a separate CDN ZAI PD Proof of Claim against each of the applicable Debtors in order to comply with the requirements of this Order and to preserve such person's or entity's CDN ZAI PD Claim, the timely filing of only one CDN ZAI PD Proof of Claim being sufficient and proper for purposes of this Order; and it is further

ORDERED that holders of CDN ZAI PD Claims are not required to submit any physical samples of ZAI with the CDN ZAI PD Proof of Claim, however, nothing in this Order prohibits any other person or entity from seeking samples in the future as part of the submission

3

of a CDN ZAI PD Claim to the CDN ZAI PD Claims Fund established in Canada; and it is

further

      ORDERED that the Debtors are authorized and empowered to take all actions and

execute such other documents as may be necessary to implement the relief granted herein; and it

is further

      ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order.


Pittsburgh, Pennsylvania
Dated:_____, 2008



                                        _____
                                        Honorable Judith K. Fitzgerald
                                        United States Bankruptcy Judge

4

**Clean Exhibit A to Proposed Form of Order -- Proof of Claim Form and Instructions**

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | | W. R. GRACE & CO. CDN ZAI PD PROOF OF CLAIM FORM |
|---|---|---|
| W. R. Grace & Co., et al. | Case No. 01-1139 | |
| NOTE: Use this form <u>only</u> if you have a Canadian ("CDN") <u>ZAI Claim</u> related to property damage "PD" against any of the Debtors (a "CDN ZAI PD Claim"). The CDN ZAI PD Bar Date only involves claims affecting property located in Canada, and it does not include claims relating to personal injury. **THE LAST DAY TO FILE A CDN ZAI PD Proof of Claim is August 31, 2009.** | | |
| Name of Creditor (The injured person or other entity to whom the Debtor(s) owe money or property): | | THIS SPACE IS FOR COURT USE ONLY |
| Name and address where notices should be sent: | | |
| Telephone Number: | | |
| **1. Building Information:**<br><br>**a. Address of the building that contains ZAI:**<br>_____<br><br>**b. Approximate date the building was constructed:**<br>_____<br><br>**c. Approximate date ZAI was installed in the building:**<br>_____<br><br>**d. Location within building where ZAI is located:**<br>_____<br><br>**e. What is your legal interest in the building (i.e., own or lease)?**<br>_____<br><br>**f. Date of removal of ZAI (if applicable):**<br>_____<br><br>**g. Date of containment of ZAI (remediation to contain, but not remove, the ZAI) (if applicable):**<br>_____<br><br>**\*\*\*Attach any backup documents to this form that are related to these questions.** | THIS SPACE INTENTIONALLY LEFT BLANK | |
| **2. <u>Date-Stamped Copy:</u>** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | | This Space is for Court Use Only |
| Date: | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): _____<br>_____ | |

# GENERAL INSTRUCTIONS FOR COMPLETING THE W. R. GRACE & CO.
## CDN ZAI PD PROOF OF CLAIM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, there may be exceptions to these general rules.*

### THE LAST DAY ON WHICH TO FILE CDN ZAI PD CLAIMS IS AUGUST 31, 2009.

**The CDN ZAI PD Bar Date applies only to CDN ZAI PD Claims. CDN ZAI PD Claims are defined below and involve property-related claims attributable to ZAI for property located in Canada. The CDN ZAI PD Bar Date does not involve personal injury claims that may be attributable to ZAI. Do not use this form for CDN ZAI PI Claims. CDN ZAI PI Claims will be channeled to the U.S. asbestos personal injury trust to be established pursuant to section 524(g) of the U.S. Bankruptcy Code as part of the Debtors' joint plan of reorganization.**

### – GENERAL DEFINITIONS –

"ZAI" is a loose-fill, non-roll vermiculite home attic insulation, which may contain naturally occurring asbestos. It was sold from the 1920/1930s to 1984. Zonolite may have a glittery granular appearance. The granules are shaped like a small nugget and expanded like an accordion and may have a silvery, gold translucent or brownish cast. After years in the attic, the granules may darken to black or gray. Zonolite may be found underneath subsequently installed insulation of other types such as rolled fiberglass insulation.

"CDN" is an abbreviation for "Canadian."

*"CDN ZAI PD Bar Date"* is **August 31, 2009,** the date set by the Court as the date by which all persons and entities who have CDN ZAI PD Claims against the Debtors must file proofs of claim or be forever barred from asserting any such claims against the Debtors.

*"Debtors"* are the persons, corporations, or other entities listed below that have filed voluntary petitions for bankruptcy, and *"Debtor"* is any one of them, individually.

*"Creditor"* is any person, corporation, or other entity to whom the debtor owed a debt on the date the bankruptcy case was filed.

*"Petition Date"* is April 2, 2001, the date on which the Debtors each filed voluntary petitions for bankruptcy under Chapter 11 of Title 11 of the United States Code.

*"CDN ZAI PD Proof of Claim"* is the W. R. Grace & Co. Canadian ZAI PD Proof of Claim which must be submitted by you on or before the CDN ZAI PD Bar Date. It is the form that tells the bankruptcy court about your CDN ZAI PD Claim. This form must be filed with the Claims Processing Agent as described below.

*"CCAA Representative Counsel"* means Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP in their capacity as representative counsel to Canadian ZAI PD Claimants and Canadian ZAI PI Claimants.

*"Canadian ZAI PD Claimants"* means a holder of a CDN ZAI PD Claim, and someone who is subject to this CDN ZAI PD Bar Date.

*"Canadian ZAI PI Claimant"* means a holder of a CDN ZAI PI or "personal injury" Claim, and someone who is NOT subject to this CDN ZAI PD Bar Date.

*"CDN ZAI Minutes of Settlement"* is a summary of a settlement reached between the Debtors and Grace Canada, Inc. ("Grace Canada"), on the one hand and the CCAA Representative Counsel on the other hand, in which the Debtors and Grace Canada agree to fund the CDN ZAI PD Claims Fund in full satisfaction of CDN ZAI PD Claims. The settlement also settles CDN ZAI PI Claims by channeling such claims to a trust to be established in the United States pursuant to the Debtors' plan of reorganization.

*"CDN ZAI PD Claims Fund"* means a fund to be established in Canada for the administration, adjudication, and distribution of funds with respect to CDN ZAI PD Claims.

## – THE DEBTORS –

The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2

## –DEFINITION OF CANADIAN ZONOLITE ATTIC INSULATION PROPERTY CLAIMS OR "CDN ZAI PD" CLAIMS –

The Debtors have created a CDN PD ZAI Proof of Claim form for CDN ZAI PD Claims. Such claims are defined as follows:

*"CDN ZAI PD Claims"* are claims as defined under section 101(5) of the Bankruptcy Code and include claims that relate to the cost of abatement or removal, diminution of property value or other economic loss allegedly caused by Zonolite Attic Insulation manufactured by the Debtors and *installed in homes and buildings that are located in Canada*. CDN ZAI PD Claims are those past, present, and future claims cognizable under Canadian law against, or any debt, obligation or liability of, one or more of the Debtors, creating a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and whether such claim, debt, obligation or liability is in the nature of or sounding in tort, contract, warranty or any other theory of law or equity, relating to or arising by reason of, directly or indirectly, property damage, including, but not limited to, diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, directly or indirectly, by the Zonolite Attic Insulation sold, supplied, produced, specified, selected, distributed or in any way marketed by one of the Debtors or their predecessors or former subsidiaries and affiliates -- and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors or their predecessors or former subsidiaries and affiliates, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages. **CDN ZAI PD Claims relate only to property located in Canada, and do not include any claims relating to personal injury.**

**The CDN ZAI PD Bar Date for filing CDN ZAI PD Claims is August 31, 2009 at <u>5:00 P.M. Eastern Time</u>.**

*Be sure to date the claim and place the original signature of claimant or person making claim for creditor where indicated at the bottom of the claim form. Please type or print name of individual under the signature. Be sure all items are answered on the claim form. If not applicable, insert "Not Applicable".*

**RETURN CDN ZAI PD PROOF OF CLAIM (WITH ATTACHMENTS, IF ANY) TO THE FOLLOWING CLAIMS AGENT FOR THE DEBTORS:**

| **By Mail:** | | **By Hand Delivery:** |
|---|---|---|
| Rust Consulting, Inc. | | Rust Consulting, Inc. |
| Claims Processing Agent | Or | Claims Processing Agent |
| Re: W. R. Grace & Co. Bankruptcy | | Re: W. R. Grace & Co. Bankruptcy |
| P.O. Box 1620 | | 201 S. Lyndale Ave. |
| Faribault, MN 55021-1620 | | Faribault, MN 55021 |

3

**– SPECIFIC INSTRUCTIONS FOR COMPLETING THE CDN ZAI PD PROOF OF CLAIM –**

1. The CDN ZAI PD Proof of Claim must be completed by individual holders of CDN ZAI PD Claims. If you assert claims against more than one Debtor, you do not need to file a separate CDN ZAI PD Proof of Claim against each applicable Debtor. The Debtors' Chapter 11 Plan currently contemplates a consolidation of the Debtors for Plan purposes whereby claims will be paid by the consolidated Debtors' estates. If consolidation for Plan purposes is not ultimately allowed by the Court, you will have the opportunity to assert your claim against the applicable Debtor or Debtors.

2. Please read the CDN ZAI PD Proof of Claim carefully and fill it in completely and accurately.

3. Print legibly. Your claim may be disallowed if it cannot be read and understood.

4. The CDN ZAI PD Proof of Claim must be completed in English or French.

5. Attach additional pages if more space is required to complete the CDN ZAI PD Proof of Claim.

6. To obtain verification that your proof of claim was received by the claims agent, include a copy of the completed form and a self-addressed, postage prepaid return envelope when you file the CDN ZAI PD Proof of Claim with Rust Consulting, Inc.

7. The claimant *must* attach copies of any and all available supporting documents.

8. To be considered timely filed, the CDN ZAI PD Proof of Claim must be actually received by Rust Consulting, Inc. by August 31, 2009, at 5:00 p.m. prevailing Eastern Time.

**– EFFECT OF FAILING TO PROPERLY FILE A CDN ZAI PD PROOF OF CLAIM –**

Pursuant to Bankruptcy Rule 3003(c)(2), any person or entity who fails to complete and file a CDN ZAI PD Proof of Claim by the CDN ZAI PD Bar Date on account of such CDN ZAI PD Claim <u>shall be forever barred, estopped and enjoined</u> from (a) asserting the CDN ZAI PD Claim against (a) any of the Debtors, (b) the CDN PD Claims Fund, or (c) receiving distributions in these chapter 11 cases from the CDN PD Claims Fund in respect of the CDN ZAI PD Claim.

K&E 13364299.3

**Clean Exhibit B to Proposed Form of Order -- Notices of Bar Date**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.**, *et al.*,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| | ) | |

## <u>NOTICE OF LAST DAY TO FILE A CANADIAN  ZONOLITE ATTIC INSULATION ("ZAI") PD CLAIM[2]</u>

This is a notice of the last day to file proofs of claim in the chapter 11 case of W. R. Grace & Co. and its related debtors for Zonolite Attic Insulation ("ZAI") property damage ("PD") claims for property located in Canada. ZAI is a loose-fill, non-roll vermiculite home attic insulation, which may contain naturally occurring asbestos. It was sold from the 1920/1930s to 1984, and it was sold or manufactured by Grace under the brand name of "Zonolite Attic Insulation" and by others under various other names including: Attic Fill, House Fill, Home Insulation, Zonolite Insulating Fill, Econofil, Quiselle Insulating Fill, Sears Micro Fill, Ward's Mineral Fill, Wickes Attic Insulation, Cashway Attic Insulation, Attic Plus, Unifil, and Mica Pellets Attic Insulation. ZAI may have a glittery granular appearance. The granules are shaped like a small nugget and expanded like an accordion and may have a silvery, gold translucent or brownish cast. After years in the attic, the granules may darken to black or grey. ZAI may be found underneath subsequently installed insulation of other types such as rolled fiberglass insulation. ZAI generally looks like this:

 

PLEASE TAKE NOTICE THAT on October 20, 2008 the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware (the "Court"), having jurisdiction over the chapter 11 cases of W. R. Grace & Co. and certain of its affiliates (collectively, the "Debtors" or "Grace"), entered a Canadian ("CDN") ZAI PD Bar Date Order in the above-referenced bankruptcy cases.

The Court has established August 31, 2009 at 5:00 P.M. Eastern Time (the "CDN ZAI PD Bar Date") as the last date and time for all persons and entities including without limitation, each individual, partnership, joint venture, corporation, estate, trust and governmental unit who have **CDN ZAI PD Claims  (as defined herein)** against any of the Debtors or their predecessors-in-interest, to file a CDN ZAI PD Proof of Claim.  Do not use this form for CDN

ZAI PI Claims. CDN ZAI PI Claims will be channeled to the U.S. asbestos personal injury trust to be established pursuant to section 524(g) of the U.S. Bankruptcy Code as part of the Debtors' joint plan of reorganization.

1.    WHO MUST FILE A CDN ZAI PD PROOF OF CLAIM:

**You MUST file a CDN ZAI PD Proof of Claim if you have a CDN ZAI PD Claim. CDN ZAI PD Claims are defined as follows:**

CDN ZAI PD Claims are claims as defined under section 101(5) of the Bankruptcy Code and include past, present, and future claims cognizable under Canadian law that relate to the cost of abatement or removal, diminution of property value or other economic loss allegedly caused by Zonolite Attic Insulation manufactured by the Debtors and installed in buildings that are located in Canada. CDN ZAI PD Claims are those past, present, and future claims cognizable under Canadian law against, or any debt, obligation or liability of, one or more of the Debtors, creating a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and whether such claim, debt, obligation or liability is in the nature of or sounding in tort, contract, warranty or any other theory of law or equity, relating to or arising by reason of, directly or indirectly, property damage, including, but not limited to, diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, directly or indirectly, by the Zonolite Attic Insulation sold, supplied, produced, specified, selected, distributed or in any way marketed by one of the Debtors or their predecessors or former subsidiaries and affiliates-- and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors or their predecessors or former subsidiaries and affiliates, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages. **CDN ZAI PD Claims related only to property located in Canada, and do not include any claims relating to personal injury.**

A settlement has been approved that creates a fund to pay valid CDN ZAI PD Claims. In order to have your CDN ZAI PD Claim considered for payment by the Canadian fund (the "CDN ZAI PD Claims Fund"), you MUST file your CDN ZAI PD Proof of Claim, on or before the CDN ZAI PD Bar Date of **August 31, 2009.**

**IN THE EVENT THAT PRIOR TO THE CDN ZAI PD BAR DATE, YOU FILED A PROOF OF CLAIM FOR A CDN ZAI PD CLAIM USING OFFICIAL FORM 10 OR ANY OTHER PROOF OF CLAIM FORM, YOU MUST REFILE YOUR CLAIM ON THE SPECIALIZED, COURT-APPROVED CDN ZAI PD PROOF OF CLAIM FORM ON, OR BEFORE, THE CDN ZAI PD BAR DATE OR YOUR CLAIM SHALL BE BARRED AND DISALLOWED.**

In the event that prior to the CDN ZAI PD Bar Date you filed a proof of claim for any claim in these cases that you may have **other than** your CDN ZAI PD Claim, you do **not** need to refile those other claims.

Under Section 101(5) of the Bankruptcy Code and as used in this notice, the word "claim" means, among other things, (a) a right to payment, whether or not such right is reduced

to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.    WHO DOES <u>NOT</u> NEED TO FILE A PROOF OF CLAIM

    (a)    The CDN ZAI PD Bar Date, and the need to file a CDN ZAI PD Proof of Claim, applies only to holders of CDN ZAI PD Claims. You should only file this claim if it relates to property located in Canada. Another bar date was set for property located in the United States, and those ZAI claims were required to be filed by October 31, 2008.

**THE FACT THAT YOU HAVE RECEIVED THIS NOTICE DOES NOT NECESSARILY MEAN THAT YOU HAVE A CDN ZAI PD CLAIM OR THAT THE DEBTORS OR THE COURT BELIEVE YOU HAVE SUCH A CLAIM.**

3.    WHEN AND WHERE TO FILE

    To file a claim, do the following:

    (a)    File your claim by completing a CDN ZAI PD Proof of Claim, a copy of which is attached hereto.

    (b)    For additional copies of the CDN ZAI PD Proof of Claim:

        •    Contact Rust Consulting, Inc., the Claims Processing Agent, toll-free at 1-877-465-4817, 9:00 a.m. - 5:00 p.m., Eastern Time, Monday through Friday. Claimants will not be charged for this call.

        •    Visit the Grace chapter 11 website at www.graceclaims.com to obtain a CDN ZAI PD Proof of Claim and/or General Instructions for Completing the W. R. Grace & Co. CDN ZAI PD Proof of Claim.

    (c)    CDN ZAI PD Proofs of Claim must be mailed or hand-delivered so as to be received on or before the CDN ZAI PD Bar Date at the following address:

If mailed, to:

    Rust Consulting, Inc.
    Claims Processing Agent
    Re:  W. R. Grace & Co. Bankruptcy
    P.O. Box 1620
    Faribault, MN  55021-1620

If hand delivered, to:

Rust Consulting, Inc.
Claims Processing Agent
Re: W. R. Grace & Co. Bankruptcy
201 S. Lyndale Ave.
Faribault, MN 55021

(between the hours of 9:00 a.m. and 5:00 p.m., Eastern Time, on business days).

CDN ZAI PD Proofs of Claim will be deemed filed only when they have been actually received by the Claims Processing Agent. CDN ZAI PD Proofs of Claim that are submitted by facsimile, telecopy or other electronic transmission will **not** be accepted and will **not** be deemed filed. If you are returning your CDN ZAI PD Proof of Claim by mail, allow sufficient mailing time so that the document is received on or before the CDN ZAI PD Bar Date. CDN ZAI PD Proofs of Claim that are postmarked before that date, but are received thereafter, will be considered late.

(d)     CDN ZAI PD Proofs of Claim must be signed by the claimant or the party submitting the document on behalf of the claimant.

(e)     Do not file or send copies of the CDN ZAI PD Proof of Claim to the Debtors, counsel for the Debtors, the CCAA Representative Counsel, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel.

(f)     Upon receipt of your claim, the Claims Processing Agent will send an acknowledgment card with the appropriate claim number noted thereon.

4.     WHAT TO FILE

(a)     To file a CDN ZAI PD Claim, you must use the court-ordered CDN ZAI PD Proof of Claim, which is supplied with this notice. Attach any supporting or backup documents that relate to the questions asked on the CDN ZAI PD Proof of Claim.

(b)     Your CDN ZAI PD Proof of Claim must be written in English or French. If you need a CDN ZAI PD Proof of Claim form and directions for filling out the form that are translated into French, please contact the Claims Processing Agent or visit the website as directed above. The directions for filling out the form are also available in Inuktitut from the Claims Processing Agent or available on the website, but the claim form itself must be answered in French or English.

5.     CLAIMS AGAINST MULTIPLE DEBTORS/OTHER NAMES

If you assert claims against more than one Debtor, you do not need to file a separate CDN ZAI PD Proof of Claim against each applicable Debtor. The Debtors' Chapter 11 Plan currently contemplates a consolidation of the Debtors for Plan purposes whereby claims will be paid by

4

the consolidated Debtors' estates. If consolidation for Plan purposes is not ultimately allowed by the Court, you will have the opportunity to assert your claim against the applicable Debtor or Debtors.

6.    EFFECT OF NOT PROPERLY FILING A CDN ZAI PD PROOF OF CLAIM

ANY HOLDER OF A CDN ZAI PD CLAIM IS REQUIRED TO FILE A PROOF OF CLAIM ON THE COURT-APPROVED PROOF OF CLAIM FORM. ANY SUCH HOLDER WHO FAILS TO FILE HIS OR HER PROOF OF CLAIM ON OR BEFORE THE CDN ZAI PD BAR DATE, **SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED** FROM ASSERTING ANY SUCH CLAIMS (OR FILING A PROOF OF CLAIM WITH RESPECT TO SUCH CLAIMS) AGAINST ANY OF THE DEBTORS OR THEIR PREDECESSORS-IN-INTEREST, THE CDN ZAI PD CLAIMS FUND, INSURANCE CARRIERS OR THEIR PROPERTY OR ESTATES. IF ANY SUCH CLAIMS ARE SO BARRED, EACH OF THE DEBTORS AND ITS PROPERTY SHALL BE FOREVER DISCHARGED FROM ALL INDEBTEDNESS AND LIABILITIES WITH RESPECT TO SUCH CLAIMS AND THE HOLDERS OF SUCH CLAIMS SHALL NOT BE ENTITLED TO RECEIVE ANY DISTRIBUTION IN THESE CHAPTER 11 CASES ON ACCOUNT OF SUCH CLAIMS FROM THE CDN ZAI PD CLAIMS FUND, OR TO RECEIVE FURTHER NOTICES REGARDING SUCH CLAIMS OR REGARDING THESE CHAPTER 11 CASES.

7.    **QUESTIONS REGARDING COMPLETION OF PROOF OF CLAIM FORM**

If you have any questions concerning whether or not you need to file a CDN ZAI PD Proof of Claim, then you should consult your attorney if you have one.

In addition, Representative Counsel has been appointed by the Canadian Court to represent the interests of holders of CDN ZAI Claims, and you can contact them or visit their websites if you have questions.  These counsel are:

>           Michel Bélanger
>           Lauzon Belanger, Inc.
>           286 Saint-Paul West
>           Montreal (Quebec) H2Y 2A3
>           Telephone:  (514) 844-3037
>           Facsimile:  (514) 844-7009
>           Website:  www.lauzonbelanger.qc.ca
>           mbelanger@lauzonbelanger.com
>
>                   and
>
>           David Thompson
>           Matthew Moloci
>           Scarfone Hawkins LLP
>           One James Street South, 14th Floor
>           P.O. Box 926, Depot 1
>           Hamilton Ontario, Canada L8N 3P9
>           Telephone:  (905) 523-1333
>           Facsimile: (905) 523-5878
>           Websites: www.shlaw.ca or www.classactionlaw.ca
>           thompson@shlaw.ca
>           moloci@shlaw.ca

You can also contact U.S. counsel for the Representative Counsel if you have questions:

>           Daniel K. Hogan
>           The Hogan Firm
>           1311 Delaware Avenue
>           Wilmington, DE 19806
>           Telephone: (302) 656-7540
>           Facsimile: (302) 656-7599
>           Website: www.thehoganfirm.com
>           dkhogan@dkhogan.com

For additional information regarding this notice or to obtain a CDN ZAI PD Proof of Claim, contact the Claims Processing Agent toll-free at **1-877-465-4817** between 9:00 a.m. and 5:00 p.m. (Eastern Time), Monday through Friday, or write to the Claims Processing Agent at the address outlined herein. You may also request a CDN ZAI PD Proof of Claim via Grace's chapter 11 website, at www.graceclaims.com.

BY ORDER OF THE COURT

_____

The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

---

1   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2   Capitalized terms not defined herein are described in the General Instructions for Completing the W. R. Grace & Co. ZAI PD Proof of Claim Form.

7

Legal Notice

# If You Have a Home Located in Canada with Vermiculite/Zonolite Loose-Fill Attic Insulation

## Your Rights May Be Affected by the W. R. Grace Bankruptcy

A settlement has been reached, and a Fund has been established to pay valid Canadian ZAI Claims against Grace.  To preserve your claim against Grace, you must file the Bankruptcy Court approved claim form.

### Your Claim Must Be Filed By Month Date Year

If your home is located in Canada and has vermiculite/zonolite loose-fill attic insulation, you may have a property claim against W.R. Grace and its related entities ("Grace").   Grace has filed for protection under Chapter 11 of the U.S. Bankruptcy Code.

**What Is Vermiculite Loose-Fill Attic Insulation?**
Vermiculite was used by Grace in certain non-roll home attic insulation that was sold from the 1920/1930s to 1984. Some of Grace's vermiculite attic insulation contains naturally-occurring asbestos and was sold under the name of "Zonolite Attic Insulation" ("ZAI") and under other brand names, including:  Attic Fill, House Fill, Home Insulation, Zonolite Insulating Fill, Econofil, Quiselle Insulating Fill, Sears Micro Fill, Ward's Mineral Fill, Wickes Attic Insulation, Attic Plus, Mica Pellets Attic Insulation, Unifil and

Cashway Attic Insulation.

**What Does It Look Like And Where Is It Located?**
ZAI is an insulation product typically used in home attics and sometimes in walls.  The granules are small, accordion-shaped nuggets and may have a silvery, gold translucent or brownish cast that may also appear black or gray over time. ZAI may be found underneath other insulation installed at a later date.

**What Are ZAI Property Claims?**
ZAI claims could include, among others, the cost of abatement or removal, the diminution of property value, economic loss, or other property-related claims caused by ZAI manufactured by Grace.   Personal Injury Claims involving ZAI will be handled separately by a U.S. Asbestos Personal Injury Trust.



Loose vermiculite



Vermiculite nugget size

**You may obtain the appropriate claim form and more information on how to file a claim by writing:**

**Claims Processing Agent, W. R. Grace & Co. Bankruptcy,**
**P. O. Box 1620, Faribault, MN 55021-1620 or**

## Call: 1-877-465-4817 or visit: www.graceclaims.com

**30-SECOND W. R. GRACE BAR DATE SPOT\***





**Zonolite Attic Insulation Property Claims**

**You must file a claim by**
**Month Date Year**

**1-877-465-48147**
**www.graceclaims.com**

If your home has loose-fill, non-roll vermiculite attic insulation, you may have a claim against W. R. Grace. A settlement fund will pay valid Canadian Property Claims involving Zonolite Attic Insulation. Claims must be filed by Month Date Year.

Zonolite was also sold under different names. It consists of expanded nuggets that appear silver, brown, gold, black or grey. It may be under other insulation.

Please call 877-465-4817 or go to graceclaims.com.

**\*Visual treatment is in draft form and will not be finalized until a later date.**

**Zonolite Attic Insulation Property Claims**



**1-877-465-4817**
www.graceclaims.com
Claims deadline: Month Date Year

---

**Zonolite Attic Insulation Property Claims**

**For Information**
**1-877-465-4817**
www.graceclaims.com

**Claims deadline: Month Date Year**

Furnished by Debtors in Case No. 01-01139, by
Order of the U.S. Bankruptcy Court for the
District of Delaware

**Clean Exhibit C to Proposed Form of Order --Draft Cover Letter to Potential Known CDN ZAI PD Claimants**

**Draft Cover Letter to Potential Known CDN ZAI PD Claimants**


[named owner/occupant]
[address of identified home]


Dear [named owner/occupant]

Re    IMPORTANT INFORMATION AND NOTICE - ZONOLITE ATTIC INSULATION
      Notice of Possible Existence and Property Damage Claim Process

The home at the above-noted municipal address has been identified from information and documents as potentially having been insulated with Zonolite Attic Insulation.

The enclosed notice and claim information package contains important information concerning the claims process for identification and remediation of Zonolite Attic Insulation.

Yours truly,


[TBD]

**Clean Exhibit D to Proposed Form of Order --Publication Notice Program**



# BAR DATE NOTICE PLAN FOR CANADIAN ZONOLITE ATTIC INSULATION PROPERTY CLAIMS

*IN RE W.R. GRACE & CO.,*
CHAPTER 11

CASE NO. 01-01139
(BANKR. D.DEL.)

KINSELLA/NOVAK
COMMUNICATIONS, LLC

2120 L Street, NW | Suite 205 | Washington, DC 20037
Phone: 202.686.4111 | Fax: 202.293.6961 | Email: info@kinsella-novak.com | http://www.kinsella-novak.com

THE ART & SCIENCE OF LEGAL NOTIFICATION

# TABLE OF CONTENTS

|                                    | Page |
|------------------------------------|------|
| Firm Overview                      | 1    |
| Case Experience                    | 2    |
| Technical Approach                 | 3    |
| Relevant Manufacturing History     | 5    |
| Situation Analysis                 | 6    |
| Proposed Notice Plan Overview      | 7    |
| Direct Mail Notice                 | 8    |
| Paid Media Methodology             | 9    |
| Target Audience                    | 10   |
| Demographics                       | 11   |
| Paid Advertising                   | 12   |
| Media Delivery                     | 16   |
| Aboriginal Situation Analysis      | 17   |
| Aboriginal Media                   | 18   |
| Aboriginal Media Delivery          | 19   |
| Earned Media                       | 20   |
| Informational Web site             | 21   |
| Toll-Free Telephone Support        | 22   |

Exhibit 1 – ZAI PD Published Bar Date Notice

Exhibit 2 – TV Spot Layout

Exhibit 3 – Proposed Budget

# FIRM OVERVIEW

Kinsella/Novak Communications, LLC ("KNC") is a nationally-recognized advertising and legal notification consulting firm specializing in the design and implementation of class action and bankruptcy notification programs to reach unidentified class members and claimants.

KNC has developed and directed some of the largest and most complex national notification programs in the country, primarily in antitrust, bankruptcy, consumer fraud, mass tort and product liability litigation. Specific cases have involved, among others, asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco and Holocaust claims. The firm has developed or consulted on over 250 notification programs and has placed over $160 million in media notice.

KNC develops advertisements, press materials, Websites and other notice materials that bridge the gap between litigation complexities and the need for a clear and simple explanation of legal rights. The firm designs and produces notices in "plain language." KNC employs industry-recognized tools of media measurement to quantify the adequacy of the notice for the court.

# CASE EXPERIENCE

KNC has significant notification experience including designing and implementing notice programs in numerous asbestos-related bankruptcy cases.

*SELECTED CASES*

- *In re USG Corporation,* Chapter 11,
  Nos. 01-2094 (RJN) through 01-2104 (RJN) (Bankr. D. Del)

- *In re Swan Transportation Company,* Chapter 11,
  No. 01-11690 (Bankr. D. Del.)

- *In re Owens Corning,* Chapter 11,
  No. 00-03837 (MFW) (Bankr. D. Del.)

- *In re Armstrong World Industries, Inc.,* Chapter 11,
  No. 00-4471 (JJF) (Bankr. D. Del.)

- *In re The Babcock & Wilcox Company,*
  No. 00-10992 Section "B" (Bankr. E.D. LA.)

- *In re Raytech Corp.,*
  No. 5-89-00293 (Bankr. D. Conn.)

- *In re The Celotex Corporation,* Chapter 11,
  Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.)

*In re W. R. Grace & Co.*, Chapter 11

# TECHNICAL APPROACH

KNC's technical approach is based on its expertise as a leading provider of notice in class actions, knowledge of court-approved notice programs at the state and federal levels and years of experience in designing and implementing legal notification programs both nationally and internationally.

KNC begins by conducting detailed research on the claims that are the subject of the class action and how they relate to the affected population. This analysis yields the demographic characteristics of claimants – such as age, gender, income, and education level – and the geographic distribution of claimants. This research provides the parameters for identifying and locating claimants and shapes the scope of the notice program.

Specifically, KNC:

- ➢ Reviews demographic and product information provided by the client, performs independent research and establishes a demographic profile of the target audience. All media selections are based on this profile to ensure the optimum reach of potential claimants and frequency of message exposure.

- ➢ Examines the geographic distribution of potential claimants to determine effective geographic coverage.

- ➢ Evaluates and compares the relative effectiveness of media vehicles – consumer magazines, newspapers, specialty publications, broadcast television, radio and the Internet – in reaching the target audience.

- ➢ Analyzes publications using syndicated data sources and tools, such as the Audit Bureau of Circulation statements, which certify how many readers buy or obtain copies of publications, and MediaMark Research, Inc., which measures how many people open or read publications.

- ➢ Analyzes syndicated data from comScore and/or Nielsen//NetRatings for demographic composition of Internet Website visitors. Relies on Internet Advertising Bureau ("IAB") guidelines to account for gross impressions and unique users.

- ➢ Relies upon syndicated data from A.C. Nielsen for estimating television viewership Other syndicated data and tools are used when appropriate.

- ➢ Selects media available during the established notice period ensuring timely notice to claimants.

- ➢ Creates and implements all appropriate notice communications, including published notice, press releases, television spots, Internet advertising and Websites.

© 2008 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

- ➤ Ensures that published notices and long form notices are written in "plain language."

- ➤ Uses established advertising relationships to negotiate with advertisers to secure optimum placement with respect to the media habits of the target audience.

- ➤ Designs and maintains a Website to enable claimants to access all relevant information including long form notices, claim forms and court documents. Provides registration and email capabilities on the site.

- ➤ Integrates all aspects of the notification program with designated claims administrators.

- ➤ Provides advice, affidavits, depositions and court testimony with respect to the design and implementation of the notification program.

# RELEVANT MANUFACTURING HISTORY

W. R. Grace ("Grace") entered into the vermiculite business through its 1963 acquisition of the assets of the Zonolite Company. The Zonolite Company's assets included the world's largest vermiculite mine and mill in Libby, Montana, another mine and mill in South Carolina and various manufacturing plants. Vermiculite is a mica-like mineral that expands after heating. Vermiculite ore from the Libby Mine may contain naturally occurring asbestos.

ZAI is a loose-fill vermiculite used as insulation in attics and was one of the commercial products made from Grace's processed vermiculite. This product was sold from the 1920s or 1930s to 1984 and may have been marketed by other companies under private labels.[1]

---

[1] Loose-fill vermiculite attic insulation produced by Grace was also provided to companies primarily in the New England area, believed to be Wickes Inc., Lumbermen's Mercantile Buyers Corporation, and Carter, which may have marketed the insulation under their private labels.

## SITUATION ANALYSIS

This Bar Date notice plan ("Notice Plan") is submitted in connection with *In re W. R. Grace & Co., et al.,* Chapter 11, Case No. 01-01139 in the United States Bankruptcy Court, District of Delaware. This Notice Plan targets holders and potential holders of Property-related Zonolite Attic Insulation Claims ("Canadian ZAI Claimants") in Canada. ZAI claims include, among others, the cost of removal, the diminution of property value or economic loss, or other claims caused by ZAI manufactured by Grace.

The purpose of the Notice Plan is to outline procedures to provide fair and adequate notice to Canadian ZAI Claimants of the Bar Date. The plan is consistent with notice programs KNC designed and implemented in other asbestos bankruptcies and class actions, as well as consumer class actions, all of which have met court approval. To develop the Notice Plan, KNC relied on information provided by Grace and its experts, on research previously conducted in other asbestos litigation and on its experience in designing and executing similar plans.

*In re W. R. Grace & Co.,* Chapter 11

# Proposed Notice Plan Overview

The following four-part Notice Plan is recommended:

➢ Direct notice by mail to all known Canadian ZAI Claimants and their counsel;

➢ Broad national notice in Canada through the use of paid media - television, magazines, newspapers and Internet banner ads;

➢ Targeted notice to the Canadian Aboriginal population through the use of magazines, newspapers and television; and

➢ Earned media through a press release sent to major national print and electronic outlets.

The proposed Notice Plan carefully considers information provided by Grace and research conducted by KNC, including:

➢ The demographics of Homeowners, which would include Canadian ZAI Claimants – age, gender and other characteristics; and

➢ The media vehicles through which Homeowners normally receive information.

© 2008 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

*In re W. R. Grace & Co., Chapter 11*

# DIRECT MAIL NOTICE

The "Canadian ZAI Claims Property Damage ("PD") Bar Date Notice Package," consisting of the Canadian ZAI PD Claims Bar Date Notice, the Canadian ZAI PD Proof of Claim Form and the General Instructions for completing the Canadian ZAI PD Proof of Claim Form, will be mailed to:

> ➢ Known Canadian ZAI Claimants;

> ➢ Counsel of record for all readily identifiable Canadian ZAI Claimants with pending Canadian ("CDN") ZAI PD claims;

> ➢ Potential Canadian ZAI Claimants on lists maintained by Counsel participating in the proceedings; and

> ➢ All individuals who call the toll-free telephone number or write and request a copy of the Canadian ZAI PD Claims Bar Date Notice Package from the Official Claims Agent.

The Canadian ZAI PD Claims Bar Date Notice Package will also be available directly from the Grace Chapter 11 website.

# PAID MEDIA METHODOLOGY

KNC notice programs directed to claimants: (1) identify the demographics of claimants and establish a target audience; (2) outline the methodology for selecting the media and other program elements and how they relate to product usage or exposure; and (3) provide results that quantify for the court the adequacy of the notice based upon recognized tools of media measurement.

In the wake of the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993) and *Kumho Tire Company v. Carmichael,* 526 U.S. 137 (1999), the reliability of a notice expert's testimony should be tested against the standards developed within the media industry for determining to what degree and at what frequency a target audience has been reached. In assessing the expert's reliability, the court must determine whether the testifying expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." (526 U.S. at 152). That showing would likely require evidence that the expert's data and methodology are similar to that used by professionals in the relevant field.

In keeping with the *Daubert* and *Kumho* rulings, KNC employs the methodology and measurement tools used in the media planning and advertising industry for designing and measuring the adequacy of a paid media program to reach a particular audience.

Choosing a target audience encompassing the characteristics of ZAI Claimants is the first step in designing the paid media program. Media vehicles are chosen based on their ability to provide effective and cost-efficient penetration of the target audience. The selected media vehicles are then measured against the target audience to quantify the *reach* of the media program and the *frequency* of exposure to the media vehicles. *Reach* and *frequency* estimates are two of the primary measurements used to quantify the media penetration of a target audience.

> *Reach* is the estimated percentage of a target audience that is exposed one or more times through a specific media vehicle or combination of media vehicles within a given period.

> *Frequency* is the estimated average number of times an audience is exposed to a vehicle carrying the message within a given period of time.

The measured delivery of media to the target audience will be representative of delivery to Canadian ZAI Claimants.

© 2008 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

# TARGET AUDIENCE

KNC used information provided by Grace relating to their asbestos business and asbestos claims history to develop the Notice Plan. This information was provided in the form of:

> ➢ An extensive briefing by counsel to the Debtors and by Grace counsel and staff regarding the asbestos history of Grace; and

> ➢ Information on Grace's vermiculite and asbestos-containing products including Zonolite Attic Insulation.

To develop a profile of the demographics and media habits of Homeowners, including potential Canadian ZAI Claimants, KNC analyzed syndicated data available from the *2007 2 Year Study* from the Print Measurement Bureau ("PMB") in Canada.

PMB is Canada's leading data provider of audience size, composition and other relevant factors pertaining to major media vehicles. The service provides data on audience size, composition and other relevant factors pertaining to major media vehicles. PMB presents a single-source measurement of major media, products, services and in-depth consumer demographic and lifestyle characteristics.

In selecting the target audiences for purposes of purchasing media, KNC examined the demographics of Homeowners using PMB data. Print media can be measured against the precise audience of Homeowners. However, electronic media cannot be measured against Homeowners but rather can be measured against audiences based on age and/or gender. Because 75.6% of Canadian Homeowners are adults 35 years of age and older, the following broader target audience was selected:

> ➢ Adults 35 years of age and older ("Adults 35+")

© 2008 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

*In re W. R. Grace & Co.*, Chapter 11

# DEMOGRAPHICS

Since all media is purchased based on demographics, it is critical to determine the age, gender and other demographic characteristics of the target audience in order to design a media-based notice program to adequately reach Canadian ZAI Claimants.

ZAI was marketed from the 1920s or 1930s to 1984. While original installations of the product were primarily undertaken by DIY homeowners, there are likely to be many individuals who did not install ZAI themselves but who own homes with the insulation.

Using PMB data, KNC examined the demographics of Canadian Homeowners, which encompasses Canadian ZAI Claimants as indicated in the table below:

| DEMOGRAPHICS | HOMEOWNERS |
|---|---|
| **Gender** | |
| Male | 49.9% |
| Female | 50.1% |
| | |
| **Age:** | |
| 35+ | 75.6% |
| | |
| **Education** | |
| Did Not Graduate High School | 16.7% |
| Graduated High School | 27.7% |
| Graduated/Attended College | 55.6% |
| | |
| **Household Income** | |
| Under $19,999 | 6.2% |
| $20,000 - $39,999 | 15.1% |
| $40,000 – $74,999 | 33.4% |
| $75,000+ | 45.2% |
| | |
| **Race/Ethnicity** | |
| White | 87.2% |
| Black | 1.4% |
| Asian | 9.2% |
| Hispanic | 0.8% |
| Other | 1.7% |

# PAID ADVERTISING

The core of the Notice Plan is paid media placements in national consumer magazines, supplemented by television and Internet activity.

An analysis of the media habits of Adults 35+ indicates that they are above average newspaper readers and average consumers of all other media. Print publications and television programming targeted to Adults 35+ will reach a high percentage of Canadian ZAI Claimants nationally. Internet activity will provide an opportunity to reach Canadian ZAI Claimants who may be lighter print and television consumers.

For the purpose of evaluating the strength and efficiency of the media, television, print publications and Internet were measured against Adults 35+ to establish the *reach* of the media program and the *frequency* of exposure to the media vehicles.

## *PRINT ADVERTISING DESIGN AND PLACEMENT*

The published form of notice ("Canadian ZAI PD Published Bar Date Notice") is designed as an advertisement to capture and hold the attention of Canadian ZAI Claimants. The ZAI PD Published Bar Date Notice is attached hereto as Exhibit 1.

The black and white advertisement's headline clearly targets and addresses the Canadian ZAI Claimants. The text uses subheads, product description and simple language to inform clearly rather than confuse. To facilitate identification of vermiculite, pictures are included. The website address and toll-free number are boldly displayed to allow Canadian ZAI Claimants to obtain complete information and a claim form.

### CONSUMER MAGAZINES

Magazines were analyzed for their composition[2] and coverage[3] of Adults 35+. The Canadian ZAI PD Published Bar Date Notice will be placed in the following publications:

- ➢ A full-page ad (7-7/8" x 10-1/2") will be placed once in *Chatelaine* (English) with an estimated circulation of 596,887. The readership among Adults 35+ is 2,864,000.

- ➢ A full-page ad (7-7/8" x 10-1/2") will be placed once in *Chatelaine* (French) with an estimated circulation of 200,106. The readership among Adults 35+ is 792,000.

- ➢ A full-page ad (7-7/8" x 10-1/2") will be placed once in *L'Actualite* with an estimated circulation of 185,395. The readership among Adults 35+ is 691,000.

---

[2] Composition is the percentage of target audience in readership.
[3] Coverage is the percentage of target audience reached.

*In re W. R. Grace & Co., Chapter 11*

The following table provides readership for the target audience:

| PUBLICATION | ADS | CIRCULATION | ADULTS 35+ |
|---|---|---|---|
| *Chatelaine* (English) | 1 | 596,887 | 2,864,000 |
| *Chatelaine* (French) | 1 | 200,106 | 792,000 |
| *L'Actualite* | 1 | 185,395 | 691,000 |

## NEWSPAPERS

To provide broad national coverage, newspaper advertising will include ads in two national newspapers as well as 22 of the largest-circulating newspapers in the 10 Provinces. These newspapers also include the four largest French language newspapers in Canada where approximately 20% of adults are French speaking. The ads placed in the following newspapers will be equivalent in size to a standard quarter-page U.S. ad (measuring approximately 6" x 11") and will appear on the highest circulating day:

| PROVINCE | CITY | NEWSPAPER | CIRCULATION |
|---|---|---|---|
| National | | Globe & Mail | 416,584 |
| | | National Post | 243,126 |
| Alberta | Calgary | Herald | 117,513 |
| | Calgary | Sun | 98,000 |
| | Edmonton | Journal | 133,144 |
| British Columbia | Vancouver | Province | 143,300 |
| | Vancouver | Sun | 178,508 |
| | Victoria | Times Colonist | 76,987 |
| Manitoba | Winnipeg | Free Press | 120,502 |
| New Brunswick | Thunder Bay | Chronicle Journal | 29,098 |
| Newfoundland | St. John's | Telegram | 55,000 |
| Nova Scotia | Halifax | Chronicle Herald | 108,596 |
| Ontario | Hamilton | Spectator | 115,303 |
| | London | Free Press | 110,000 |
| | Ottawa | Citizen | 135,258 |
| | Toronto | Star | 643,489 |
| | Toronto | Sun | 188,102 |
| Prince Edward Island | Charlottetown | The Guardian | 24,874 |
| Quebec | Montreal | Gazette | 149,702 |
| | Montreal | La Presse  (French) | 300,000 |
| | Montreal | Le Journal (French) | 319,736 |
| | Quebec (city) | Le Soliel  (French) | 230,000 |
| | Quebec (city) | Le Journal  (French) | 145,000 |
| Saskatchewan | Saskatoon | Star Phoenix | 60,000 |
| **TOTAL** | | | **4,141,822** |

*In re W. R. Grace & Co.,* Chapter 11

## TV ADVERTISING DESIGN AND PLACEMENT

The television buy will consist of English and French language network broadcast and national cable television.   Thirty-second spots will be aired over a one to two week time period.

Television is an intrusive medium that generates rapid awareness and provides effective reach of the audience.  The television spot is designed to provide both audio and visual information to alert individuals that they may be Canadian ZAI Claimants in the bankruptcy and that they should seek further information through the toll-free number or website to determine their status as a claimant and procedures to file a claim. The tone of the spot is similar to the print executions, alerting the potential Canadian ZAI Claimants to the nature of the litigation and stressing the importance of the information to follow.  A layout of the TV spot is attached hereto as Exhibit 2.

The planned daypart mix or times of day selected for airing the spots is as follows:

| DAYPART | ADULTS 35+ TRPs |
|---|---|
| Early Morning News<br>5:00 AM – 9:00 AM (M-F)<br>6:00 AM – 11:00 AM (Sa-Su) | 50.0 |
| Daytime<br>9:00 AM – 3:00 PM (M-F) | 14.0 |
| Fringe<br>3:00 PM – 5:00 PM (M-F) | 25.0 |
| Prime<br>7:00 PM – 10:00 PM (M-Sa)<br>6:00 PM – 10:00 PM (Su) | 36.0 |
| Cable<br>6:00 AM – 12:00 M (M-Su) | 31.0 |

## INTERNET ADVERTISING DESIGN AND PLACEMENT

According to PMB, over 25% of Homeowners and over 22% of Adults 35+ have access to the Internet whether at home, work, a library, school or other location.  Over 50.0% of both target audiences accessed the Internet in the past 30 days. Internet advertising delivers an immediate message and allows the viewer of an advertisement to instantly link to a website for further information.

The banner advertisements will be designed to alert Internet users that they may be Canadian ZAI Claimants in the bankruptcy through the use of a bold headline.  The short, simple headline will enable Canadian ZAI Claimants to quickly determine if they are potentially affected.   When visitors click on the banner advertisement, they will be connected automatically to the informational website, www.graceclaims.com.

*In re W. R. Grace & Co.*, Chapter 11

KNC recommends using Internet advertising to provide additional notice opportunities beyond the broad-reaching print and television program to Canadian ZAI Claimants. Internet advertising will appear across a wide range of websites enabling maximum exposure opportunities to reach the broad audience of Adults 35+.

The Internet buy will consist of:



- ➤ 24/7 Real Media (Canada Network) is a network that represents over 900 websites including sites related to health, fitness and news and information, some of which are proprietary and confidential.

- ➤ Banner advertisements of various measurements will appear, on a rotating basis, on websites that are part of the 24/7 Real Media Network delivering an estimated 16,666,667 gross impressions.

- ➤ The banner advertisements will appear for a 30 day period, or until the gross impressions are delivered.

# MEDIA DELIVERY

Using national consumer magazines, national and local newspapers, broadcast television and Internet advertising, the media program delivers the following reach and frequency of exposure measurements:

> ➣ The estimated reach of Adults 35+ is 85.5% with an estimated average frequency of 3.5 times.

The plan delivers 54,575,000 gross impressions for Adults 35+. It is estimated that Adults 35+ will see the media vehicles carrying the notice over 54 million times.

*In re W. R. Grace & Co.*, Chapter 11

# ABORIGINAL SITUATION ANALYSIS

When examining the Aboriginal population in Canada, data from the 2006 Canadian Census indicate that:

- Aboriginal people in Canada are members of at least one Aboriginal group: North American Indian (or First Nations), Métis, or Inuit.
- A total of 1,172,790 people identified themselves as an Aboriginal person.
- Aboriginal people account for 3.8% of the total population of Canada.
- The Aboriginal population is becoming increasingly urban.
- In 2006, 54% lived in an urban center.
- Over 90% of the Aboriginal population speaks English, with approximately 7% speaking only their Native language.
- Over 81% of the Aboriginal population resides in the following five Canadian Provinces:
    - Ontario (19.3%)
    - British Columbia (17.4%)
    - Alberta (16.0%)
    - Manitoba (15.4%)
    - Saskatchewan (13.3%)
- Additionally, Inuit peoples make up over 85% of the Nunavut Territory's total population.

# ABORIGINAL MEDIA

The Notice Program outlined above already includes national television, three national magazines, two national newspapers, and 13 daily newspapers in the five provinces where over 81% of the Aboriginal population is concentrated. In order to further reach the Aboriginal peoples in Canada, KNC will utilize national Aboriginal magazines, local (regional) newspapers, and national television on the Aboriginal Peoples Television Network ("APTN").

## MAGAZINES

KNC will run one full-page ad in each of the following national Aboriginal magazines in order to reach Aboriginal peoples nationally (all ads will be in English):

- *Aboriginal Times* with an estimated circulation of 100,000.
- *First Perspective* with an estimated circulation of 15,000.
- *Native Journal* with an estimated circulation of 15,000.
- *Windspeaker* with an estimated circulation of 25,000.

## NEWSPAPERS

Due to the large proportion of Inuit peoples living in the Nunavut Territory, KNC also suggests running ads in three local, regional newspapers in the Nunavut Territory. Because approximately 65% of the Inuit population speaks the native Inuktitut language in their homes, KNC recommends running one-sixth page ads once in each of the following publications in the Inuktitut language:

- *Kivalliq News* with an estimated circulation of 1,600.
- *Nunatsiaq News* with an estimated circulation of 6,000.
- *Nunavut News/North* with an estimated circulation of 6,200.

## TELEVISION

APTN is a national Aboriginal network that broadcasts throughout Canada. The network is available in nearly 100% of Aboriginal households on reserves and 85% of Aboriginal households in the far North. Independent Aboriginal producers create the programming, and over 50% of the programming is exclusive to the network. The network features a variety of content including youth programming, drama, movies, entertainment and news. 60% of programming is in English, 15% in French and 25% in a variety of Aboriginal languages.

KNC proposes running 30 and 60-second spots on APTN in English, French and Inuktitut.

*In re W. R. Grace & Co., Chapter 11*

## ABORIGINAL MEDIA DELIVERY

Reach and frequency estimates are not available for the media outlined above, as aboriginal readership and viewership are not measured. However, the Notice Program outlined above will already reach 85.5% of Canadian Adults 35+ with an estimated average frequency of 3.5 times. This addition of the outlined Aboriginal media will only serve to increase the existing reach and frequency estimates.

*In re W. R. Grace & Co.*, Chapter 11

## EARNED MEDIA

The thrust of the earned media program is to amplify the notice to Canadian ZAI Claimants through the use of free media. The earned media portion of this Notice Plan will augment the paid media plan developed. The third-party endorsement from reliable sources such as the news media can add immeasurable value to outreach efforts.

Outreach to print and electronic media will focus primarily on major radio and television outlets, key daily newspapers, wire services and newspaper bureaus in Canada. A press release highlighting the toll-free telephone number and website address that Canadian ZAI Claimants can call or visit for complete information will be distributed as follows;

> ➢ On the Canadian Newswire reaching approximately 350 English and French media outlets.

© 2008 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

*In re W. R. Grace & Co.,* Chapter 11

## INFORMATIONAL WEBSITE

The Canadian ZAI PD Claims Bar Date Notice Package will be posted on the Grace Chapter 11 website, as a PDF file, enabling all Canadian ZAI Claimants to view the Canadian ZAI PD Claims Bar Date Notice Package. The site will be listed with search engines and indexes.

The website, established at www.graceclaims.com, is designed for ease of use and comprehension. Web pages on the site are simple, containing words, icons, documents and images. A directory, located at the top of the page, provides links to the information available on the website. These links to the homepage and subsections remain fixed on top as users navigate around the website.



© 2008 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

*In re W. R. Grace & Co., Chapter 11*

## TOLL-FREE TELEPHONE SUPPORT

All print and television advertising will give the reader/viewer the option of calling a toll-free telephone number in order to receive the Canadian ZAI PD Claims Bar Date Notice Package and obtain information and instructions regarding filing proofs of claim. The toll-free telephone number will be accessible to Canadian ZAI Claimants, and it will include an option for French speakers. In addition to the toll-free number, the print and television advertising will provide the website address, and the print advertising will also include the address of the Claims Agent as alternative contact mechanisms.

© 2008 Kinsella/Novak Communications, LLC
Proprietary and Confidential.
Page 22 of 22

# Estimated Budget

| | | |
|---|---|---|
| **I.** | **PAID MEDIA** | |
| | A. Canadian Media[1] | $720,500.00 |
| | B. Aboriginal Media - TV, Magazines and Newspapers | $34,500.00 |
| | **TOTAL ESTIMATED PAID MEDIA EXPENSES** | **$755,000.00[2]** |
| | | |
| **II.** | **PRODUCTION AND DISTRIBUTION** | |
| | A. Print and Internet Ad Production and Distribution | $2,000.00 |
| | B. Television Spot(s) Production and Distribution | $25,000.00 |
| | C. Press Release Production, Distribution and Tracking | $2,000.00 |
| | D. Website updates and hosting (6 months @ $250/month) | $2,500.00 |
| | **TOTAL ESTIMATED PRODUCTION EXPENSES** | **$31,500.00** |
| | | |
| **III.** | **MISCELLANEOUS EXPENSES** | |
| | A. Courier, Duplicating, Overnight, Delivery, Postage, Telefax, Telephone, Travel, Etc. | $5,000.00 |
| | B. Translations | $1,000.00 |
| | **TOTAL ESTIMATED MISCELLANEOUS EXPENSES** | **$6,000.00** |
| | | |
| **IV.** | **ESTIMATED TOTAL BUDGET** | **$792,500.00[3]** |

1. Television cost estimates are subject to change based upon availabilities at the time of actual placement.

2. Upon receiving final approval, KNC will negotiate final advertising rates. Advertising rates are set by the individual publications and are subject to change without notice. While the rates we have quoted are current, they are subject to change prior to the time an ad actually appears. We will make every effort to update any changes in the advertising rates we have quoted and to negotiate the best rates possible.

3. Canadian budget is expressed in US dollars using an estimated exchange rate of 1.024 of Canadian dollars. Actual US dollars could change based on exchange rate at time of placement.