## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re** ) | Chapter 11 |
| ) | |
| **W. R. GRACE & CO.,** *et al.*[1] ) | Case No. 01-1139 (JKF) |
| ) | Jointly Administered |
| **Debtors.** ) | |
| ) | **Hearing Date: October 27, 2008 at 9:00 a.m. (EDT)** |
| ) | **Re: Docket Nos. 19579, 19580, 19581, 19620, 19761, 19770,** |
| ) | **19772, 19777, 19779, 19780, 19781, 19783, 19784, 19785, 19786,** |
| ) | **19787, 19788, 19789, 19790, 19791, 19792, 19793, 19795, 19800,** |
| ) | **19801, 19803** |
| ) | **Agenda Nos. 1 and 2** |

## DEBTORS' CONSOLIDATED RESPONSE TO OBJECTIONS TO DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES, CONFIRMATION SCHEDULE AND RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

submit this Brief in further support of the *Motion of the Debtors for an Order Approving*

*Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and*

*Related Relief* (Docket No. 19620) (the "Solicitation Procedures Motion") and in response to

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace 11, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B I1 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G I1 Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal 11, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

objections to the Motion and the *Debtors' Disclosure Statement for the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008* (Docket No. 19581) (as it may be or has been amended, the "Disclosure Statement").[2]

## BACKGROUND

### Filing of the Plan, Disclosure Statement and Confirmation Procedures Motion

1.     On September 19, 2008, the Debtors filed the Disclosure Statement, the Plan and the Exhibit Book relating thereto.  As indicated in the Exhibit Book, certain of the Exhibits to the Plan and Disclosure Statement were not completed at that time.

2.     On September 20, 2008, the Debtors served a *Notice of Disclosure Statement Hearing* (Docket No. 19582) by first-class mail to those parties identified in the Motion.  *See Affidavit/Declaration of Service of the BMC Group Regarding Debtors' Disclosure Statement; Exhibit Book to Disclosure Statement; and Notice of Hearing to Consider Approval of Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code* (Docket No. 19699).

3.     On September 25, 2008, the Debtors filed the Solicitation Procedures Motion, which seeks approval of solicitation and voting procedures in relation to the Plan.  The Solicitation Procedures Motion also contains a discussion of the legal rules and standards applicable to approval of the Disclosure Statement and why the Disclosure Statement contains adequate information.  In connection therewith, the Debtors also filed the *Debtors' Motion for*

---

2    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the *Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008* (Docket No. 19579) (the "Plan") and the Disclosure Statement.

2

*Leave from this Court's Scheduling Order to Shorten the Notice Period* with respect to the

Solicitation Procedures Motion (the "Motion to Shorten Notice") (Docket No. 19621).[3]  The

Court granted the Motion to Shorten Notice by order dated October 1, 2008 (Docket No. 19662).

4.    The deadline to object to both the Disclosure Statement and the Solicitation

Procedures Motion was October 17, 2008.

***The Objections***

5.    Objections to the Disclosure Statement and/or the Solicitation Procedures Motion

(collectively, the "Objections") have been filed with the Court by the parties listed on Exhibit A

attached hereto.

***Recent Developments***

6.    On October 20, 2008, the Court approved the appointment of Alexander M.

Sanders, Jr. as the legal representative for future asbestos-related property damage claimants in

these chapter 11 cases.  (Docket No. 19818).

7.    Concurrently with the filing of this Response, the Debtors are filing Exhibit 5

(Asbestos Insurance Policy Schedule) to the Exhibit Book.  The Debtors intend to file the

remaining Exhibits to the Exhibit Book before the conclusion of the Disclosure Statement

hearing.

---

[3]    The Debtors did not seek to shorten the time period prescribed by the Bankruptcy Rules, the Delaware Local Rules or this Court's Scheduling Order for the hearing on approval of the Disclosure Statement and the related objection deadline.  The Debtors fully complied with Bankruptcy Rule 2002(b) and Delaware Local Rule 2002-1 when they filed and served the *Notice of Disclosure Statement Hearing* on September 19 and 20, 2008.  The purpose of the Motion to Shorten Notice was simply to have the Solicitation Procedures Motion heard at the Disclosure Statement hearing rather than a separate omnibus hearing.  Neither the Bankruptcy Rules nor the Delaware Local Rules provide specific time frames in which objections to solicitation materials must be filed. As a result, absent the request to hear the Solicitation Procedures Motion at the Disclosure Statement hearing, the Court's scheduling order would have required that motion be heard at an omnibus hearing.

K&E LEGAL:13519001.12

## RESPONSE TO OBJECTIONS

8.      The Objections generally fall into four categories:  (a) objections concerning the adequacy of disclosure in the Disclosure Statement, (b) objections raising substantive confirmation issues, (c) insurance-related objections covering both disclosure and confirmation issues, and (d) objections to the Debtors' proposed Voting Procedures.  Attached hereto as Exhibit B is a chart setting forth and summarizing the Objections.  In addition, two Objections assert that inadequate notice of the Disclosure Statement Hearing was given.  These Objections are addressed in Section A below.

9.      To the extent that an Objection raises a disclosure issue, Exhibit B reflects the Debtors' response to such Objection, including any changes that will be made to the Disclosure Statement.  Exhibit B also identifies the Objections that raise confirmation issues.  As set forth below, the Court need not address these confirmation issues now.  Nonetheless, the Debtors have indicated on Exhibit B changes to the Plan that the Plan Proponents are considering making to address certain of the confirmation issues now.  Included in such considerations are amendments to address the objections to the treatment of Class 9 General Unsecured Claims as unimpaired under the Plan and for solicitation purposes as further discussed in Section C.1 below.  With respect to the remaining confirmation issues, the Debtors have summarized their position below and will further brief each of these issues in connection with confirmation of the Plan.

## A.      **Adequate Notice of the Disclosure Statement Hearing Has Been Given.**

10.      The Debtors received two Objections (from the Libby Claimants and from Maryland Casualty Company) asserting that inadequate notice of the Disclosure Statement Hearing was given.  Interestingly, the Libby Claimants were able to file a 97-page Objection to the Disclosure Statement, making their claim of inadequate notice ring hollow.  Moreover, the Disclosure Statement was filed on September 19, 2008, notice of the Disclosure Statement

4

Hearing was provided by first-class mail to creditors and equity interest holders on September 20, 2008, and objections to the Disclosure Statement were due by October 17, 2008. Thus, the Debtors provided at least 25 days notice of the objection deadline to the Disclosure Statement in accordance with Federal Rule of Bankruptcy Procedure 2002. Nothing requires the Debtors to provide additional notice.[4] Any attempt by an objecting party to reserve their rights to object to the Disclosure Statement in the future on the grounds of inadequate notice should be denied.

**B.      Only Objections Regarding the Adequacy of Disclosure Should Be Considered.**

11.      In the Solicitation Procedures Motion, the Debtors set forth the legal standard for approval of the Disclosure Statement, which requires that the Court determine that the Disclosure Statement contains "adequate information" pursuant to section 1125 of the Bankruptcy Code. As noted above, several of the Objections, however, raise confirmation issues of a substantive nature that are more appropriately heard in connection with the confirmation hearing.

12.      A disclosure statement hearing is *not* the forum in which to consider objections that do not concern the adequacy of the information contained in the Disclosure Statement. Although a court may focus upon issues of confirmability in connection with a disclosure statement hearing, that authority "is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing." *In re Monroe Well Service, Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987). Only in instances where a plan is so inherently flawed and clearly unconfirmable that it can be considered a "clearly fruitless venture," should a court look beyond disclosure issues and address plan confirmation issues at the disclosure statement

---

[4]      As noted in footnote 3, while the Debtors did file a Motion to Shorten Time, the Motion to Shorten Time did not seek to shorten the time period prescribed by the Bankruptcy Rules, the Delaware Local Rules or this Court's Scheduling Order for the hearing on approval of the Disclosure Statement or the objection deadline. The purpose of the Motion to Shorten Time was simply to have the Solicitation Procedures Motion heard at the Disclosure Statement hearing rather than a separate Omnibus hearing.

5

hearing. *In re Valrico Square Ltd. P'ship*, 113 B.R. 794, 796 (Bankr. S.D. Fla. 1990).

Therefore, objections that challenge the confirmability of the Plan, even when couched in terms

of inadequate disclosure, should not be considered at the Disclosure Statement hearing. *In re*

*Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("[C]are must be

taken to ensure that the hearing on the disclosure statement does not turn into a confirmation

hearing...") (citations omitted).

13.     The Court is presently considering only the adequacy of the Disclosure Statement

and will set a separate hearing and objection deadline in relation to confirmation of the Plan. As

set forth below, all Objections to the Disclosure Statement raising confirmation issues should be

overruled.

## C.     None of the Confirmation Issues Raised in the Objections Renders the Plan "Patently Unconfirmable."

14.     The non-insurance confirmation issues raised in the Objections primarily relate to

the following subjects: (i) impairment, (ii) the absolute priority rule, (iii) third-party releases, (iv)

classification and treatment of certain Asbestos PI Claims, (v) good faith, and (vi) the mechanics

of the TDP. As set forth below, none of these issues renders the Plan "patently unconfirmable"

as some parties have alleged, and thus all of these issues should be addressed at confirmation.

To the extent appropriate, the Debtors will modify or supplement the Disclosure Statement as

indicated on Exhibit B.

### 1.     Impairment

15.     Several of the Objections relate to the Plan's treatment of Class 9 General

Unsecured Creditors and assert that such creditors are impaired under section 1124 of the

6

Bankruptcy Code because the Plan does not provide for the payment of default interest under any contracts that creditors may have with the Debtors.[5]

16.     As the Debtors have previously demonstrated in briefing related to the *Debtors' Objection to the Unsecured Claims Asserted under the Debtors' Credit Agreements Dated as of May 14, 1998 and May 5, 1999* (Docket No. 18922),[6] a claim is only impaired under section 1124 of the Bankruptcy Code if a plan of reorganization itself, not some provision of the Bankruptcy Code, alters the alleged rights of a claimant. *See Solow v. PPI Enter. (U.S.), Inc. (In re PPI Enter. (U.S.), Inc.)*, 324 F.3d 197 (3d Cir. 2003).

17.     The express holding of *PPI* is that "where § 502(b)(6) alters a creditor's nonbankruptcy claim, there is no alteration of the claimant's legal, equitable, and contractual rights for the purposes of impairment under § 1124(1)." *Id.* at 204. To emphasize this holding, the Third Circuit stated: "A creditor's claim outside of bankruptcy is not the relevant barometer for impairment; [the court] must examine whether the plan itself is a source of limitation on a creditor's legal, equitable, or contractual rights." *Id.* at 204. The only difference between this case and *PPI* is the applicable subsection of section 502(b). In *PPI*, the alleged impairment resulted from operation of section 502(b)(6), and in this case the alleged impairment would result from operation of section 502(b)(2), which prohibits the payment of "unmatured interest" with

---

[5]     These Objections include the Objections filed by the Creditors' Committee, Longacre, the Bank Lender Group and JPMorgan Chase.

[6]     *See Debtors' Trial Brief in Support of Objection to the Unsecured Claims Asserted under the Debtors' Credit Agreements Dated as of May 14, 1998 and May 5, 1999* (Docket No. 19476); *Debtors' Motion to Strike the Bank Lender Group's Sur-Reply or, in the Alternative, Motion for Leave to File a Sur-Reply in Support of Debtors' Objection to the Unsecured Claims Asserted under the Debtors' Credit Agreements Dated as of May 14, 1998 and May 5, 1999* (Docket No. 19609).

respect to unsecured claims.  There is no credible argument that PPI applies only to alleged impairment by one subsection of section 502(b) but not to the other subsections.[7]

18.    Ironically, certain of the Objections cite to *In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004) in support of their arguments.  However, in *Coram Healthcare*, this Court (Judge Walrath) specifically relied upon *PPI* in concluding that a proposed plan erroneously classified unsecured creditors' claims as impaired when the plan provided for payment in full to such creditors plus postpetition interest at the federal judgment rate or such other rate determined by the court.  *See id.* at 351 ("[i]t is not the Equity Committee's Plan which limits the rights of the class CHC 3 and C 3 creditors.  Instead, if their rights are altered at all, it is because of the Code and decisional law under the Code.").

19.    Based upon the above, the Debtors believe that the Class 9 General Unsecured Claims are properly treated under the Plan as unimpaired claims.  Nevertheless, however, the Plan Proponents are considering modifying the Plan to add procedures similar to those suggested by the Creditors' Committee (and approved by the Court in *In re USG Corporation*) pursuant to which General Unsecured Creditors (other than the Lenders, whose claims are subject to pending objection before the Court) may seek a different amount of postpetition interest than that which is provided for in the Plan, *provided, however*, that the Plan shall explicitly permit the Court to award no postpetition interest or postpetition interest in an amount less than already provided in

---

[7]    Some of the Objections assert that the express holding in *PPI* should be limited by dicta elsewhere in the Third Circuit's decision.  In dicta, the Third Circuit seemed to concur with the bankruptcy court's finding that, in a solvent debtor case (which is not this case, because there has been no determination of the extent of the Debtors' asbestos liabilities), a claim will not qualify as unimpaired under section 1124(1) unless the claim is also paid postpetition interest.  *Id.* at 207.  This dicta, however, is inconsistent with the express holding of *PPI* and thus deserve no weight.  *See United States Nat. Bank of Ore. v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 463 n.11 (1993) (emphasizing "the need to distinguish an opinion's holding from its dicta").  And, even if this dicta was part of the Third Circuit's holding, it would not be inconsistent with the Debtors' position that Class 9 General Unsecured Claims are unimpaired under the Plan, because the Plan provides for the payment of postpetition interest on such claims.

8

the Plan to any creditor who seeks to request additional postpetition interest. In addition, the

procedures for requesting additional postpetition interest would provide that any litigation to

determine the merits of a particular creditor's claim for a different interest rate that occurs after

the Effective Date will be conducted as claim allowance litigation in this Court, subject to the

same bankruptcy rules and procedures that would have applied had the litigation been conducted

before the Effective Date.

20.     As a result of the foregoing modifications that are being considered with respect

to the Plan, as well as the Third Circuit's binding ruling in *PPI*, the Debtors submit that no Class

9 General Unsecured Creditor is impaired by the Plan under section 1124 of the Bankruptcy

Code and that all Objections on this subject should be overruled. In any event, this issue is a

confirmation issue and should be fully briefed and argued at that time rather than now in

connection with approval of the Disclosure Statement. To the extent that the impairment issue

relates to the Voting Procedures and the solicitation of votes from Class 9 General Unsecured

Creditors, the Debtors have agreed to provisionally solicit the votes of Class 9 General

Unsecured Creditors as further discussed in Section E below.

## 2.     Absolute Priority Rule

21.     Several creditors have objected to the Disclosure Statement claiming that the Plan

violates the absolute priority rule with respect to Class 9 Claims (because such claimants will not

receive postpetition default interest under contracts with the Debtors) and Class 6 Claims

(because such claimants are not being paid in full and equity is retaining their interests).[8]

22.     Clearly, these objections should properly be addressed, to the extent necessary, at

the time of the confirmation hearing, because the absolute priority rule only applies at

---

[8]     These Objections include the Objections filed by the Creditors' Committee, Longacre, the Bank Lender Group, JPMorgan Chase, the State of Montana and Her Majesty the Queen in Right of Canada.

K&E LEGAL:13519001.12

confirmation if an impaired class votes to reject the Plan. *See In re United Marine, Inc.*, 197

B.R. 942, 948 (Bankr. S.D. Fla. 1996) ("The absolute priority rule is a component of the 'fair and

equitable' requirement of § 1129(b), which only comes into play if there is a rejecting *class.*").

### 3.    Third-Party Releases / Exculpation

(a)    Scope of Plan Releases

23.    The U.S. Trustee, along with certain other parties, have objected to the Disclosure

Statement on the grounds that the third-party releases in the Plan are overly broad and not

permissible under Third Circuit law.[9]  Most of the Objections claim that the release in Section

8.8.7 of the Plan is inappropriate because it applies to each holder of a claim or equity interest

that "votes in favor of this Plan or receives or retains any property under this Plan."[10]  The

Objections claim that this provision is contrary to the Third Circuit's decision in *In re*

*Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000) and this Court's (Judge Walrath) decision

in *In re Zenith Electronics*, 241 B.R. 92, 111 (Bankr. D. Del. 1999).

24.    The Debtors disagree with these Objections and believe that the Plan release

provisions are permissible.  Although the *Zenith* court held that a plan's third-party release

requires the "affirmative agreement of the creditor affected," that decision is not binding on this

Court and is distinguishable.  *Zenith* did not involve a restructuring of mass tort liability and did

not involve a plan that provided for the payment in full of the affected creditors.[11]  More

---

[9]    Objections to the third-party releases were filed by the U.S. Trustee, Kaneb Pipe Line, the Creditors' Committee, the ERISA Plaintiffs and the Libby Claimants.

[10]    Some Objections relate to Section 8.8.8 of the Plan, which deals with the Debtors' release of its own and derivative claims, and the inclusion of the phrase "and any third parties" within that Section. The Debtors will amend the Plan to remove the reference to "and any third parties" in Section 8.8.8.

[11]    Notably, in its decision, the *Zenith* court relied upon the factors cited by the bankruptcy court in *In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994), one of which is considering whether a "provision in the plan [provides] for payment of all or substantially all of the claims of the class or classes affected by the injunction."

importantly, in *Continental*, the Third Circuit explicitly declined to follow *Zenith* and adopt a blanket rule prohibiting nonconsensual third-party releases, but rather held open the prospect that there may be "circumstances under which [it] might validate a non consensual release that is both necessary and given in exchange for fair consideration." *In re Continental Airlines*, 203 F.3d at 214 n. 11. As contemplated by *Continental*, the Debtors will be prepared to present evidence at the confirmation hearing to establish that the hallmarks of permissible nonconsensual releases have been met with respect to the Plan.

(b)    Scope of Section 524(g) Channeling Injunction

25.    The Libby Claimants contend that the Asbestos Channeling Injunction "goes far beyond enjoining third-party claims" that fall within the four categories set forth in section 524(g)(4)(A)(ii) of the Bankruptcy Code.[12] Libby Claimants' Objection at ¶82. The simple response to this Objection is that the Plan is written to fully comply with the Third Circuit's decision in *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004) and that independent (i.e., non-derivative) third-party liability to creditors is not being enjoined by the Asbestos Channeling Injunction. The Debtors will address issues concerning the scope of the Asbestos Channeling Injunction appropriate in connection with the confirmation hearing.

(c)    Exculpation

26.    The Libby Claimants have objected to the exculpation clause in Section 11.8 of the Plan and its application to the Official Committee of Personal Injury Claimants and the Asbestos Personal Injury Future Claimants Representative, among others. There is no basis for this objection, because the exculpation clause complies with applicable Third Circuit law. *See In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (upholding exculpation clause with

---

[12]    Kaneb Pipe Line also has objected to the scope of the Asbestos Channeling Injunction.

respect to debtor, creditor's committee and professionals when those parties remained liable for gross negligence and willful misconduct).[13]  Further, objections to a plan's exculpation clause are generally reserved for confirmation and should be considered at that time.

**4.    Classification / Treatment of Claims**

27.    Several Objections relate to the purported inadequate disclosure concerning the Plan's classification of Asbestos PI Claims, specifically in relation to (a) the Plan's classification of Indirect PI Trust Claims within Class 6 Asbestos PI Claims and (b) the Plan's classification of Asbestos PI Claims of the Libby Claimants within Class 6 Asbestos PI Claims.[14]  In reality, these Objections are confirmation objections and not objections to the Disclosure Statement. *See In re Federal Mogul Global, Inc.*, Case No. 01-10578 (RTL) (Bankr. D. Del.) (May 11, 2004 Hr'g Tr. at 112) (stating that objections asserting that the plan improperly classified Indirect Asbestos Personal Injury Claims and Asbestos Personal Injury Claims together were confirmation objections); *In re Northgate Terrace Apartments, Ltd.*, 126 B.R. 520, 525 (Bankr. S.D. Ohio 1991) (holding that issues regarding classification were more appropriately decided at a confirmation hearing).

28.    It is well-settled that bankruptcy courts and debtors have significant discretion and latitude to classify claims. *See, e.g., In re Dow Corning Corp.*, 280 F.3d 648, 661 (6th Cir. 2002) ("We have observed that 'Congress incorporated into section 1122...broad discretion to determine proper classification....").  Under section 1122(a) of the Bankruptcy Code, claims within a class only have to be "substantially similar," not identical.  11 U.S.C. § 1122(a);

---

[13]  To the extent that the exculpation clause is considered a third-party release with respect to any party, the Debtors believe that it is permissible for the reasons cited above in Section C.3(a).

[14]  Objections on this subject were filed by the State of Montana, Bank of America, Tempo Master Fund, Morgan Stanley Senior Funding, the Scotts Company and BNSF Railway Company.

12

COLLIER ON BANKRUPTCY ¶ 1122.03[3][a] ) (15th ed. rev. 2004) ("The Code and judicial

interpretation of section 1122 stop short of requiring absolute homogeneity of all claims or

interests classified together."). As set forth below, and as the Debtors will further demonstrate in

connection with confirmation, the Plan's classification of Indirect PI Trust Claims and Asbestos

PI Trust Claims is reasonable and complies with section 1122 of the Bankruptcy Code.

> (a)    Indirect PI Trust Claims

29.    Creditors objecting to the Plan's classification of Indirect PI Trust Claims as

Class 6 Asbestos PI Claims assert that their claims, which are for indemnification,

reimbursement or contribution with respect to asbestos-related claims, should be classified as

Class 9 General Unsecured Claims. The Plan's classification and treatment of Indirect PI Trust

Claims, however, is consistent with sections 524(g) and 1122 of the Bankruptcy Code, as well as

established precedent.

30.    Section 524(g) of the Bankruptcy Code authorizes this Court to "enjoin entities

from taking legal action for the purpose of directly or *indirectly* collecting, recovering, or

receiving payment or recovery with respect to any claim" that is to be paid by a section 524(g)

trust. 11 U.S.C. § 524(g)(1)(B) (emphasis added). Section 524(g) further provides that "the

injunction is to be implemented in connection with a trust that, pursuant to a plan of

reorganization -- (I) is to assume the *liabilities of a debtor* which at the time of entry of the order

of relief has been named as a defendant in personal injury, wrongful death, or property damages

actions seeking recovery for damages allegedly caused by the presence of, or exposure to,

asbestos or asbestos containing products." 11 U.S.C. § 524(g)(2)(B)(i)(I) (emphasis added). In

accordance with section 524(g), the Plan provides for the assumption by the Asbestos PI Trust of

13

all asbestos personal injury liabilities of the Debtors, including indemnification, reimbursement

and contribution claims for asbestos personal injury liabilities.

31.    In addition, because the Indirect PI Trust Claims relate to the Debtors' asbestos

liability, the Plan's classification of such claims as Class 6 Asbestos PI Claims complies with

section 1122(a) of the Bankruptcy Code.  As explained by the Court in *In re Armstrong World

Indus., Inc.*, 348 B.R. 136, 159-60 (D. Del. 2006):

> Because all Asbestos Personal Injury Claims in Class 7 (including Indirect PI
> Trust Claims) relate, directly or indirectly, to AWI's liability for asbestos-related
> personal injury or wrongful death claims, whether arising under tort law (as is the
> case with direct Asbestos Personal Injury Claims and may be the case with
> Indirect PI Trust Claims) or under contract (as may be the case with certain direct
> Asbestos Personal Injury Claims and certain Indirect PI Trust Claims), a
> reasonable basis exists for classification of the Asbestos Personal Injury Claims
> together in a single class.

32.    Indeed, the Plan's treatment of Indirect PI Trust Claims is far from unique and, in

fact, is similar to the treatment of such claims that this Court has approved in other asbestos

chapter 11 plans.  *See, e.g., In re Armstrong World Indus., Inc.*, Case No. 00-4471 (JKF) (Bankr.

D. Del. Aug. 18, 2006) (Docket No. 9755) (order confirming Fourth Amended Plan of

Reorganization of Armstrong World Indus., Inc.); *In re USG Corp.*, Case No. 01-2094 (JKF)

(Bankr. D. Del. June 15, 2006) (Docket No. 11688) (order confirming First Amended Joint Plan

of Reorganization of USG Corporation and Its Debtor Subsidiaries).

33.    The Debtors will be fully prepared to address objections regarding the

classification of Indirect PI Trust Claims at the confirmation hearing.[15]

---

[15]  As noted on Exhibit B, though, the Debtors intend to provide additional disclosure in the Disclosure Statement
concerning the general treatment of Indirect PI Trust Claims in response to certain disclosure Objections.

14

(b)    Libby Asbestos PI Claims

34.    The Libby Claimants assert that the Plan is unconfirmable because it classifies the

Libby Claimants together with other asbestos personal injury claims. This objection is without

merit because the Libby Claimants and all other claimants in Class 6 have the same legal rights

against the Debtors' estate; they are unsecured claims against the Debtors relating to exposure to

asbestos. *See In re Quigley Co., Inc.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007) ("All of the PI

Claimants have the same legal rights against Quigley's estate; they are unsecured creditors."); *In*

*re Armstrong World Indus., Inc.*, 348 B.R. 136, 159-60 (D. Del. 2006) ("Because all Asbestos

Personal Injury Claims in Class 7 . . . relate, directly or indirectly, to AWI's liability for

asbestos-related personal injury or wrongful death claims, whether arising under tort law . . . or

under contract . . . a reasonable basis exists for classification of the Asbestos Personal Injury

Claims together in a single class."). There is nothing about the nature of Libby Claimants'

claims against the Debtors that differentiate such claims from any other Asbestos PI Claims.

35.    Like the classification objection relating to the Indirect PI Trust Claims, the

Debtors will be prepared to address objections concerning the classification of the Libby

Claimants' Claims at the confirmation hearing.

5.    **Good Faith**[16]

36.    As this Court is well aware, the Plan has resulted from extensive negotiations

throughout the entire case. The settlement with the Official Committee of Asbestos Personal

Injury Claimants and the Asbestos PI Future Claimants' Representative, which forms the nucleus

of the Plan, was reached in the midst of the hotly contested estimation proceedings concerning

---

[16]  The State of Montana has raised the issue of the Plan being proposed in good faith, but conceded that it is a
confirmation issue. State of Montana Objection at 12 n.7. In addition, the Creditors' Committee questioned
whether the Plan was being proposed in good faith with respect to the timing of distributions. Creditors'
Committee Objection at 33.

15

the value of the Debtors' asbestos personal injury liabilities. There is absolutely no basis for any conclusion other than that the settlement made under such circumstances was reached in good faith and that the Plan incorporating it has been proposed in good faith. The Debtors will be fully prepared to demonstrate that the Plan was proposed in good faith in accordance with section 1129(a)(3) of the Bankruptcy Code at the confirmation hearing.

**6.      Objections to the TDP**

37.      Lastly, certain of the Objections relate to the mechanics of the TDP. The Debtors believe that all of such Objections are confirmation objections. The Debtors are discussing such Objections with the Plan Proponents and, to the extent necessary, will consider amending the Plan and Disclosure Statement as reflected on <u>Exhibit B</u>, but otherwise intend to address these Objections at confirmation.

**D.      The Insurance-Related Objections Should Be Overruled.**

38.      As to the insurance-related objections, the Debtors have identified two categories of objections: (a) confirmation issues raised by insurers and (b) disclosure issues raised by insurers as to which the Debtors either have determined to add language to the Disclosure Statement or believe that no additional disclosure is required. These categories are addressed below, and the second category is also further addressed in <u>Exhibit B</u>.

**1.      Insurance-Related Confirmation Objections**

(a)      <u>Insurance Neutrality</u>

39.      Several insurers assert that the Disclosure Statement provides inadequate information concerning insurance neutrality.[17] Certain of these objections are disguised Plan

---

[17] These insurers include CNA, joined by Federal, Arrowood and Zurich.

16

objections, not Disclosure Statement objections, and need not be dealt with in connection with approval of the Disclosure Statement. These include objections that:

> (i)    "The insurance neutrality provision of the Plan is not as broad or neutral as what this Court has previously approved in this case." CNA Objection at 10; and

> (ii)    "Debtors' voluntary acceptance of such substantial asbestos liability has a direct and adverse impact on FFIC Contractual Rights, which is belied by characterizing the Plan as 'insurance neutral.'" Fireman's Fund Objection at 8.

40.    The disclosure-related objections to insurance neutrality are addressed in section D.2(b) below.

> (b)    Effect of Substantive Consolidation on
> Claims under Non-Settled Insurance Policies

41.    Fireman's Fund objects to the Disclosure Statement claiming that it fails to disclose the effect of substantive consolidation of Claims that may be made under non-settled insurance policies. Fireman's Fund Objection at 12. As set forth in the Disclosure Statement, the Plan effects a limited substantive consolidation for Plan purposes only, and "[e]ach and every Claim Filed or to be Filed against any of the Debtors shall be deemed Filed against the deemed consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors." Disclosure Statement § 4.7.14. Thus, the concern expressed by the insurers -- that "substantive consolidation expands any coverage obligations by forcing non-settled insurers to assume exposures for tort liability on behalf of now-consolidated debtors that they did not originally contract for" (*see, e.g.*, Fireman's Fund objection at 12) -- is not true.

> 2.    **Insurance-Related Disclosure Objections**

> (a)    Missing Exhibits 5 and 6

42.    Several insurers object that the Disclosure Statement and Plan do not provide Exhibit 5 (Asbestos Insurance Policy Schedule) or Exhibit 6 (Asbestos Insurance Transfer

17

Agreement).[18]  The Plan Proponents are filing Exhibit 5 concurrently with this Response and
intend to file Exhibit 6 prior to the conclusion of the Disclosure Statement Hearing, thus mooting
several of such objections.  Once the Debtors file the Asbestos Insurance Transfer Agreement,
certain insurers' objections (*see, e.g.*, Fireman's Fund Objection at 5) that the Disclosure
Statement does not explain what rights with respect to non-settled insurance policies are assigned
by the Plan to the Asbestos PI Trust will be mooted.

> (b)    Insurance Neutrality

43.    As to the Objections relating to insurance neutrality that are Disclosure Statement
objections, most of the insurers' expressed concerns are not well-taken.[19]  First, there is no need
to state in the Disclosure Statement that insurers' rights to take discovery of the Debtors
concerning matters that affect the insurers' coverage and defenses in subsequent coverage
litigation are preserved, because (i) nothing in the Plan or Disclosure Statement restricts such
rights; and (ii) it is clear from the Disclosure Statement's description of the insurance neutrality
provision, and from the provision itself in Section 7.15 of the Plan (particularly 7.15(a) and (iii)),
that insurers' rights are not impaired and shall be determined under the applicable insurance
policies and settlement agreements.

44.    Second, insurers assert that the Disclosure Statement is deficient because it does
not "adequately disclose that amounts recoverable by the Asbestos PI Trust or on account of
Asbestos PI claims against CNA or other insurers may be lessened as a result of the insurance
neutrality provisions and the insurers' preservation and assertion of Asbestos Insurance

---

[18]    These insurers include CNA (on behalf of Continental Casualty, Transportation and American), Century
Indemnity, Arrowood Indemnity f/k/a Royal Indemnity, Federal, Fireman's Fund, Maryland Casualty, and
Zurich.

[19]    The Debtors will add language to the Disclosure Statement to address certain of the insurers' concerns as
described on Exhibit B.

18

Coverage Defenses as provided in the Plan." *See, e.g., CNA Objection at 12 ¶ 25. In a similar vein, Fireman's Fund objects that because the Plan contemplates violating Fireman's Fund rights under its policies, "the Disclosure Statement must clearly disclose the material risks that, as a result, no coverage will be available to satisfy Asbestos PI Claims." Fireman's Fund Objection at 13. The Debtors believe that the Disclosure Statement does adequately state that "the amount of insurance recovered on such Claims will depend on a number of factors that will only be determined at the time the claims are paid including: the relevant exposure years, the timing of payment and the solvency of insurers." Disclosure Statement § 2.10.2.4. However, the Debtors will add language to Section 2.10.2.4 of the Disclosure Statement stating that the insurers have raised various contentions regarding the Plan's impact on the recoverability of insurance proceeds and regarding the insurers' defenses to their coverage obligations, and the Plan Proponents dispute such contentions.

> (c)    524(g) Protection for Post-Confirmation Insurance Settlements

45.    CNA, Zurich and Fireman's Fund object that the Disclosure Statement does not disclose whether and how a non-settled insurance company who enters into a post-confirmation settlement agreement may obtain the benefits of a 524(g) objection. CNA Objection at 15; Zurich Objection at 2; Fireman's Fund Objection at 24. The Plan Proponents agree that this issue should be clarified in the Plan and Disclosure Statement. The Plan Proponents intend to revise the definition of Settling Asbestos Insurance Company to clarify the time period during which insurers will be eligible for section 524(g) treatment.

> (d)    Libby Claimants' Insurance-Related Objections

46.    The Debtors' responses to the Libby Claimants' insurance-related disclosure objections are:

19

(i)    The Debtors agree with the Libby Claimants that, for insurance issues by Royal Indemnity for 1954-1963, only products coverage was settled, and premises coverage remains outstanding.  This distinction is reflected on page 8 of Exhibit 5 to the Plan Exhibit Book, the Asbestos Insurance Policy Schedule filed concurrently herewith.  Because the Plan Proponents' position on this issue is made clear in Exhibit 5, there is no need to revise the Disclosure Statement.

(ii)    The Debtors do not agree with the Libby Claimants that Grace's settlement with Maryland Casualty does not preclude claims for premises coverage under the settled policies.  Therefore, the Disclosure Statement should not be revised on this issue.

(iii)    The Debtors do not believe that the information requested in the three bullet points on page 46 of the Libby Claimants' objections, regarding the "projected value" of certain specific components of the Debtors' non-settled insurance coverage, should be added to the Disclosure Statement.  These bullet points constitute an attempt to obtain discovery in support of a confirmation objection and such a request is not appropriate in connection with approval of the Disclosure Statement.

E.    **The Objections to the Solicitation and Voting Procedures Should be Overruled.**

47.    The Debtors received Objections to the proposed Voting Procedures with respect to the following issues: (i) impairment, (ii) opt-in releases, (iii) Rule 3018 motions, (iv) Class 8 voting by Representative Counsel and (v) tabulation amount for Indirect PI Trust Claims.[20]  As set forth below, each of the Objections to the Voting Procedures should be overruled.

---

[20]    To the extent that the Objections raise issues concerning classification of claims, the Debtors view such issues as confirmation issues, as previously discussed in Section C, and not issues concerning solicitation.

### 1. Impairment

48.     As discussed earlier, numerous creditors objected to the Plan's classification of
Class 9 General Unsecured Claims as unimpaired and asserted that Class 9 claimants are
impaired and entitled to vote on the Plan.  Based upon Section 1.C. above, the Debtors believe
that Class 9 General Unsecured Claims are unimpaired and thus are not entitled to vote on the
Plan.  Notwithstanding this belief, the Debtors have agreed to provisionally solicit the votes of
all Class 9 General Unsecured Claims.  If the Court determines that the Class 9 General
Unsecured Claims are unimpaired as the Debtors have asserted, the provisional ballots will be
discarded.  If the Court determines that the Class 9 General Unsecured Claims are impaired, the
provisional ballots will be counted in relation to the tabulation of votes on the Plan.  The
Debtors' agreement to provisionally solicit the votes on the Plan, however, is subject to all
objections relating to the impairment of Class 9 General Unsecured Claims being deferred to the
confirmation hearing and the Debtors' right to seek confirmation of the Plan notwithstanding any
vote by Class 9 not to accept the Plan.

### 2. Opt-in Third-Party Releases

49.     The U.S. Trustee has objected to the form of the proposed ballots because they do
not include an "opt in" election with respect to the Plan's third-party releases.  This objection
dovetails with the U.S. Trustee's objection to the Plan's third-party releases discussed in Section
C.3 above.  Although the U.S. Trustee cites to *Continental* for the proposition that the Debtors
are required to provide an "opt in" election to creditors voting on a plan with respect to third-
party releases in the plan, *Continental* is silent on this point.  In fact, the Debtors are aware of no
binding authority in this Circuit that requires an "opt-in" election on ballots used to solicit votes
on a chapter 11 plan containing a third-party release.  As stated earlier, in *Continental*, the Third

21

Circuit declined to establish a "blanket rule" to prevent or permit third-party releases. Instead, the court determined that the releases in that case could not satisfy even the most flexible approach that some courts have adopted in evaluating third-party releases. *In re Continental Airlines*, 203 F.3d at 213. In doing so, the Third Circuit explicitly held open the prospect that there may be "circumstances under which [it] might validate non consensual releases that is both necessary and given in exchange for fair consideration." *Id.* at 214 n.11. The U.S. Trustee also cites to *Zenith Electronics*, in support of its Objection. *Zenith* is not binding on this Court, and is nevertheless distinguishable for the reasons set forth earlier in this Response.

50.    In addition, the Debtors believe that substantively the "opt-in" election is not necessary because of the unique facts and circumstances relating to the Plan. There are primarily two types of creditors -- asbestos-related claimants and general unsecured non-asbestos claimants (provisional vote only) -- and one class of equity interests who will be solicited in connection with the Plan. As to the asbestos-related claimants (Classes 6, 7 and 8 under the Plan), their claims are already subject to section 524(g) of the Bankruptcy Code, which will preclude them from asserting such claims against the Asbestos Protected Parties. An "opt-in" release on any Plan ballot would thus be misleading. As to General Unsecured Creditors (whose vote is only being provisionally solicited) and Equity Interest Holders, they are either being paid in full or permitted to retain their Equity Interests, respectively. In either case, the facts and circumstances of this Plan are different from those in which an opt-in election may have been appropriate.

51.    In any case, the Debtors believe that the "opt-in" election is a confirmation issue as to the Plan's third-party releases, rather than a solicitation issue, and should be properly addressed at the confirmation hearing. Accordingly, the Debtors request that the Court overrule

the U.S. Trustee's objection concerning the proposed ballots and request that the Court approve

such ballots without an "opt-in" provision with regard to the Plan's third-party releases.

### 3.    Timing of Rule 3018 Motions

52.    The U.S. Trustee has asserted that the Voting Procedures should provide enough

time for a claimant to file a Rule 3018(a) motion before the Voting Deadline. The Debtors

intend to work with the U.S. Trustee and modify the Voting Procedures in response to this

Objection.

### 4.    Authority of CCAA Representative Counsel to Vote for All Class 8 CDN ZAI PD Claims

53.    Her Majesty the Queen in Right of Canada (the "Crown") did not file a separate

objection to the Solicitation Procedures Motion, but argued in its Objection to the Disclosure

Statement that the Crown's contribution and indemnity claims should be included in Class 9 and

that the Crown should be the party solicited to vote such claims, not the CCAA Representative

Counsel. The Crown also asserted that, in any event, it should be able to vote its claims even if

they are classified in Class 8 (CDN ZAI PD Claims). The Voting Procedures, though, provide

with respect to Class 8 Claims that "The CCAA Representative Counsel shall be entitled to vote

to accept or reject the Plan on behalf of all Holders of Canadian ZAI PD Claims in the manner

and to the extent provided in the Minutes of Settlement of Canadian ZAI Claims and the

Canadian Settlement Approval [Order]."

54.    On October 17, 2008, the Debtors obtained the Canadian Settlement Approval

Order when the Canadian Court approved the Canadian Minutes of Settlement as evidenced by

Exhibit C attached hereto.[21] Section 13(b)(ii) of the Canadian Minutes of Settlement (a copy of

---

[21]    Exhibit C contains (a) a handwritten Endorsement from the Canadian Court, dated October 17, 2008, stating
that the Canadian Court has signed the form of order presented for approval of the Canadian Minutes of
Settlement and (b) the ensuing Endorsement with Reasons released by the Canadian Court on October 23, 2008.

23

which is annexed hereto as Exhibit D) provides that Canadian Settlement Approval shall "authorize CCAA Representative Counsel to vote as proxy and power of attorney for CDN ZAI Claimants on the Plan."[22] In addition, Section 13(b)(iii) of the Canadian Minutes of Settlement provides that Canadian Settlement Approval shall (on the Effective Date) release all "Grace Parties" from, among other things, the CDN ZAI Claimants of all claims and causes of action asserted against them, including, any claims or causes of action asserted against the Grace Parties as a result of the CDN ZAI Claims advanced by the CCAA Representative Counsel against the Crown as a result of which the Crown is or may become entitled to contribution or indemnity from the Grace Parties.

55.      In connection with the Debtors' efforts to obtain the Canadian Settlement Approval in the Canadian Court, the Crown objected stating that Canadian Court lacked jurisdiction to settle the Crown's contribution and indemnification claims, but the Canadian Court approved the Canadian Minutes of Settlement over the Crown's objection. Thus, the Debtors submit that this Court should similarly overrule the Crown's objection to the Voting Procedures so that those procedures may remain consistent with the authority granted to the CCAA Representative Counsel pursuant to Canadian Minutes of Settlement as approved by the Canadian Court.[23]

### 5.      Basis for $1.00 Estimation for Indirect PI Trust Claims

56.      A few creditors have objected to the Voting Procedures based upon the designation of the value of Indirect Asbestos PI Claims at $1.00. The Debtors believe that this aspect of the Voting Procedures is consistent with what this Court has approved previously in

---

[22]   The Canadian Minutes of Settlement also is Exhibit 9 of the Exhibit Book.

[23]   The Debtors note that the Canadian Court's approval of the Minutes of Settlement also confirms the authority of the CCAA Representative Counsel to vote any claim of the Crown that is a CDN ZAI PI Claim.

other asbestos-related chapter 11 cases. *See, e.g.*, *In re USG Corp.*, Case No. 01-2094 (JKF) (Bankr. D. Del. April 7, 2006) (Docket No. 10847) (order approving disclosure statement, solicitation and voting procedures). In addition, the nominal valuation ascribed to Indirect Asbestos PI Claims for voting purposes is appropriate and is consistent with the typical treatment of such claims under the Bankruptcy Code in non-asbestos cases. Lastly, the Debtors are aware of no other reliable method of valuing these claims. Of course, to the extent that a Class 6 Indirect PI Claimant disagrees with the $1.00 valuation of its claim for voting purposes only, that Claimant may file a Rule 3018 motion in accordance with the Voting Procedures.

25

## CONCLUSION

WHEREFORE, for the reasons stated herein, the Debtors respectfully request that

the Court overrule the Objections to the Disclosure Statement as set forth herein.

Dated: October 23, 2008
Wilmington, Delaware

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore L. Freedman
Janet S. Baer
Craig A. Bruens
Citigroup Center
153 East 53rd Street
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

_____Kathleen P. Makowski /s/___
PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

26