UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
IN RE:                        )  Case No. 01-01139(JKF)
                              )  (Jointly Administered)
W.R. GRACE & CO., et al.,     )
                              )  Multipurpose Room
                              )  824 Market Street
                  Debtors.    )  Wilmington, Delaware 19801
                              )
                              )
                              )  October 20, 2008
                              )  10:05 A.M.
```

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtors: | Pachulski Stang Ziehl & Jones<br>By:  KATHLEEN MAKOWSKI, ESQ.<br>919 North Market Street, 16th Floor<br>Post Office Box 8705<br>Wilmington, Delaware 19899-8705 |
| | Kirkland & Ellis,<br>By:  DAVID BERNICK, ESQ.<br>     JANET BAER, ESQ.<br>200 East Randolph Drive<br>Chicago, Illinois 60601 |
| For Official Committee | Stroock & Stroock & Lavan LLP<br>By:  LEWIS KRUGER, ESQ.<br>180 Maiden Lane<br>New York, New York 10038-4982 |
| ECRO: | Brandon McCarthy |
| TRANSCRIPTION SERVICE: | TRANSCRIPTS PLUS<br>435 Riverview Circle<br>New Hope, Pennsylvania 18938<br>Telephone:  215-862-1115<br>Facsimile: 215-862-6639<br>e-mail CourtTranscripts@aol.com |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

Appearances:
(Continued)

Proposed Counsel for        ALAN B. RICH, ESQ.
P.D. FCR:

For the PD Committee:       Ferry Joseph & Pearce, PA
                            By:  THEODORE TACCONELLI, ESQ.
                            824 North Market Street, No. 904
                            Wilmington, Delaware 19899

                            Bilzin Sumberg Baena Price
                            & Axelrod LLP
                            By:  MATT KRAMER, ESQ.
                            Wachovia Building
                            200 South Biscayne Boulevard
                            Suite 2500
                            Miami, Florida 33131-5340

For the ACC:                Campbell & Levine
                            By:  MARK HURFORD, ESQ.
                            1201 Market Street, 15th Floor
                            Wilmington, Delaware 19801

For Future Claims           Orrick Herrington & Sutcliffe
Representative:             By:  ROGER FRANKEL, ESQ.
                            Columbia Center
                            1152 15th Street, N.W.
                            Washington, D.C. 20005-1706

For the Equity              Kramer Levin Naftalis & Frankel LLP
Committee:                  By:  KEITH R. MARTORANA, ESQ.
                            1177 Avenue of the Americas
                            New York, New York 10036

For Bank Lenders:           Landis Rath & Cobb
                            By:  RICHARD COBB, ESQ.
                            The Brandywine Building
                            1000 West Street, Suite 1410
                            Wilmington, Delaware 19801

                            Paul Weiss Rifkind Wharton & Garrison
                            By:  ANDREW ROSENBERG, ESQ.
                            1285 Avenue of the Americas
                            New York, NY 10019-6064

APPEARANCES:
(Continued)

For Sealed Air:            Skadden Arps Slate Meagher & Flom
                           By:  DAVID TURETSKY, ESQ.
                           One Rodney Square, P.O. Box 636
                           Wilmington, Delaware 19899-0636


For Travelers:             Simpson Thatcher
                           By:  SAM RUBIN, ESQ.
                           425 Lexington Avenue
                           New York, New York 10017


For P.D. Claimants:        DANIEL SPEIGHTS, ESQ.

Appearing:                 Richards, Layton & Finger, PA
                           By:  CORY D. KANDESTIN, ESQ.
                           One Rodney Square, P.O. Box 551
                           Wilmington, Delaware 19899


For Maryland Casualty:     Connolly Bove Lodge & Hutz, LLP
                           By:  JEFF WISLER, ESQ
                           The Nemours Building
                           1007 North Orange Street
                           P.O. Box 2207
                           Wilmington, Delaware 19899


TELEPHONIC APPEARANCES:

Tiffany Cobb, Andrew Craig, Christina Kang, Anne Marie
Aaronson, Shayne Spencer, Margaret Phillips, Melanie Dritz,
Lauren Garner, Tara Nauful, David Siegel, Susette Smith, Oliver
Butt, Alan Runyan, Craig Bruens, Andrew Rosenberg, Curtis
Plaza, Sophie Kim, Francine Rabinovitz, Sander Esserman,
Chelsea Clinton, Elizabeth Devine, Daniel Speights, Brian
Mukherjee, Dale Cockrell, Jaqueline Dais-Visca, Theodore
Freedman, Gentry Klein, Brian Kasprzak, Paul Norris, Mark
Shelnitz, Van Hooker, John Phillips, Joseph Schwartz, Deanna
Boll, Matthew Cantor, Christopher Creco, Scott Baena, Andrew
Chan, Darrell Scott, Elizabeth Cabraser, Douglas Mannal, Robert
Guttmann, Michael Davis, David Parsons, Jonathan Lewisohn,
Martie Dies, Joseph Radecki, Barbara Harding, Jacob Cohn, Mark
Plevin, Brian Bresnahan, Leslie Davis, Richard Weschler,
Matthew Kramer, Terese McCarthy, Carl Pernicone, Arlene
Krieger, Robert Horkovich, Ari Berman, Bryan Shapiro, Jason
Solganick, Lisa Esayian, Terence Edwards, Christopher Candon,
Marti Murray, John Mately -- I'm sorry, Mattey, I apologize,
Mattey, Edward Westbrook, Alex Mueller, Janet Baer, Jay Sakalo,
Jennifer Whitener, Debra Felder, Traci Rae, Richard Levy,
Marion Fairey, David Bernick, Peg Brickley, James Restivo, and
Richard Wyron.

1        THE COURT:  This is the matter of W.R. Grace, 01-

2   11139.

3        The participants I have listed by phone:  Tiffany

4   Cobb, Andrew Craig, Christina Kang, Anne Marie Aaronson, Shayne

5   Spencer, Margaret Phillips, Melanie Dritz, Lauren Garner, Tara

6   Nauful, David Siegel, Susette Smith, Oliver Butt, Alan Runyan,

7   Craig Bruens, Andrew Rosenberg, Curtis Plaza, Sophie Kim,

8   Francine Rabinovitz, Sander Esserman, Chelsea Clinton,

9   Elizabeth Devine, Daniel Speights, Brian Mukherjee, Dale

10  Cockrell, Jaqueline Dais-Visca, Theodore Freedman, Gentry

11  Klein, Brian Kasprzak, Paul Norris, Mark Shelnitz, Van Hooker,

12  John Phillips, Joseph Schwartz, Deanna Boll, Matthew Cantor,

13  Christopher Creco, Scott Baena, Andrew Chan, Darrell Scott,

14  Elizabeth Cabraser, Douglas Mannal, Robert Guttmann, Michael

15  Davis, David Parsons, Jonathan Lewisohn, Martie Dies, Joseph

16  Radecki, Barbara Harding, Jacob Cohn, Mark Plevin, Brian

17  Bresnahan, Leslie Davis, Richard Weschler, Matthew Kramer,

18  Terese McCarthy, Carl Pernicone, Arlene Krieger, Robert

19  Horkovich, Ari Berman, Bryan Shapiro, Jason Solganick, Lisa

20  Esayian, Terence Edwards, Christopher Candon, Marti Murray,

21  John Mately -- I'm sorry, Mattey, I apologize, Mattey, Edward

22  Westbrook, Alex Mueller, Janet Baer, Jay Sakalo, Jennifer

23  Whitener, Debra Felder, Traci Rae, Richard Levy, Marion Fairey,

24  David Bernick, Peg Brickley, James Restivo, and Richard Wyron.

25        And I'll take entries in court, please.  Good

1  morning.

2       MR. BERNICK:  Good morning.  David Bernick for Grace.

3       MS. BAER:  Good morning, Your Honor.  Janet Baer for

4  Grace.

5       MS. MAKOWSKI:  Good morning, Your Honor.  Kathleen

6  Makowski from Pachulski for the debtor.

7       MR. KRUGER:  Good morning, Your Honor.  Lewis Kruger,

8  Stroock and Stroock and Lavan for the unsecured creditors'

9  committee.

10       MR. HURFORD:  Mark Hurford, Campbell Levine, for the

11  ACC.

12       MR. FRANKEL:  Good morning, Your Honor.  Roger

13  Frankel for the asbestos P.I. future claims representative.

14       MR. KRAMER:  Good morning, Your Honor.  Matt Kramer,

15  Bilzin Sumberg on behalf of the P.D. committee.

16       MR. SPEIGHTS:  Good morning, Your Honor.  Dan

17  Speights on behalf of Anderson Memorial Hospital.

18       MR. TURETSKY:  Good morning, Your Honor.  David

19  Turetsky of Skadden Arps on behalf of Sealed Air Corporation.

20       MR. ROSENBERG:  Good morning, Your Honor.  Andrew

21  Rosenberg, Paul Weiss Rifkin Wharton and Garrison on behalf of

22  the bank lenders.

23       MR. MARTORANA:  Good morning, Your Honor.  Keith

24  Martorana of Kramer Levin on behalf of the equity committee.

25       MR. HOGAN:  Good morning, Your Honor.  Daniel Hogan

1  on behalf of Canadian Zonolite Claimants.

2          MR. COBB:  Good morning, Your Honor.  Richard Cobb on

3  behalf the bank lenders.

4          THE COURT:  Ms. Baer?

5          MS. BAER:  Good morning, Your Honor.

6          Your Honor, Agenda Item Number 1 is being continued

7  to the November 24th hearing, that's the Massachusetts tax

8  matter.

9          THE COURT:  Ms. Baer, before you continue, so I don't

10  forget, because my staff asked me about this for a couple of

11  months, and I keep forgetting, and this time they've put it in

12  bright pink on my proceeding memo so that I don't forget. There

13  was an entry back in April at Docket Number 18535 about

14  Allegheny Center.  And there was apparently a discovery order

15  that was supposed to be agreed upon and submitted, but nothing

16  was ever filed.  And I thought somehow or other it was settled.

17  My staff tells me they don't think it was.

18          There was an issue about duplicate claims, and I know

19  I struck one, and then there was a motion for reconsideration,

20  I remember denying that.  And then, frankly, I lost track of

21  it.

22          But I think my staff thinks that we need to do

23  something about it, that discovery was open, never closed, we

24  were waiting for an order.  I thought it was done and gone,

25  they think it's not.  So, I'm hoping it's done and gone.

1          MR. RESTIVO:  Your Honor, Jim Restivo.  Good morning,
2 Your Honor.

3          THE COURT:  Good morning.

4          MR. RESTIVO:  That case is in the settlements that
5 the debtor reached with Speights and Runyan.  That was in the
6 group of the United States cases where we are writing up the
7 papers.  The settlement has not yet been filed yet.

8          But your recollection is correct.  That has been
9 settled, Your Honor.

10          THE COURT:  Okay.  So, I don't need to worry about
11 it, and I will be getting something?

12          MR. RESTIVO:  You will be getting orders on the
13 remaining U.S. settlements as soon as we get them signed up,
14 Your Honor, which will include Allegheny Center.

15          THE COURT:  All right.  Ryans.  And Mr. Speights is
16 in the courtroom, and he -- Mr. Speights, you agree with that?

17          MR. SPEIGHTS:  Yes, Your Honor.

18          THE COURT:  Okay.  Thank you.  Okay, Ms. Baer, thank
19 you.

20          MS. BAER:  Your Honor, Agenda Item Number 2 is the
21 remaining claims objections in the debtors' 25th omnibus
22 objection.  These are all the ones where there were responses
23 or requests for additional time.  And we'd ask that this matter
24 be continued to the November 24th hearing so we can try to work
25 through those issues.

1            THE COURT:  All right.

2            MS. BAER:  Your Honor, Agenda Item Number 3 is the

3  continued status of the Scotts adversary proceeding.

4            Your Honor, since the last hearing, the debtors, the

5  future claimants' representative, and the ACC have had a

6  discussion with respect to Scotts.  And Scotts has filed

7  objections to the debtors' disclosure statement, some of which

8  also really are plan objections.

9            We have had a good conversation in terms of talking

10  about what to do.  We do need to do some things to probably

11  more appropriately explain how the plan affects Scotts, and the

12  mechanisms for doing so.

13            What we'd like to do is have this matter continued so

14  we can work through the disclosure statement and plan

15  objections, talk further with the ACC and the FCR, and address

16  those issues with respect to the disclosure statement

17  objections.

18            THE COURT:  And is Scotts in agreement with that?

19            MS. BAER:  We --

20            MS. COBB:  Your Honor, Tiffany Cobb of the Vorys law

21  firm on behalf of the Scotts Company.

22            I was not aware of the update that Jan provided.  But

23  the Scotts Company would have no objection, provided that

24  Scotts' rights are not prejudiced in any way.  At the risk of

25  sounding repetitive, the declaratory judgment action at issue

1  was filed over four years ago.  And, of course, time and time

2  again, Grace told this Court, told the Scotts Company, no

3  worries, the insurance policies are staying with the

4  reorganized debtor.  And, of course, we've had a 180 recently,

5  and now those insurance policies are at the center of this

6  currently proposed plan.

7        So, now, of course, there is a concern.  And we've

8  expressed that in the objection to the disclosure statement.

9        So, as I said, we were not aware of the recent

10 developments between Grace and the other players here, but

11 would have no objection.

12       THE COURT:  All right.  It's continued then, til --

13 when, the hearing on the disclosure statement?

14       MS. BAER:  Your Honor, it probably makes sense to

15 take the adversary and continue it to the next omnibus so it

16 doesn't get mixed up in and forgotten about at the disclosure

17 statement hearing.  But we will, of course, address the

18 disclosure statement objections at the disclosure statement

19 hearing, and that may then affect the adversary proceeding.

20       THE COURT:  Okay.  So, we'll talk about it as

21 relevant at the disclosure statement hearing.  But the

22 adversary status conference itself is continued til the next

23 omnibus.

24       MS. COBB:  Thank you, Your Honor.

25       THE COURT:  Okay.

1          MS. BAER:  Your Honor, Agenda Item Number 4 is the

2   motion of the City of Charleston, South Carolina to lift the

3   automatic stay.  This is a situation where the debtor continues

4   to negotiate with Charleston over the sale of personal -- a

5   piece of real property there with environmental issues.  And

6   the parties are continuing to work through those issues, and

7   we'd ask that this also just be continued again til November

8   24th.

9          THE COURT:  And is Charleston in agreement?

10         MS. NAUFUL:  Your Honor, Nara Nauful on behalf of the

11  City of Charleston.  We are.

12         THE COURT:  All right.  It's continued, thank you.

13         MS. BAER:  Your Honor, Agenda Items 5, 6 and 7 are

14  settled asbestos property damage claim matters where you have

15  already entered the orders.

16         THE COURT:  Yes.

17         MS. BAER:  That then takes us to Agenda Item Number

18  8, which is a status report from Mr. Restivo on the asbestos

19  property damage claims that remain.

20         THE COURT:  Mr. Restivo?

21         MR. RESTIVO:  Jim Restivo speaking, Your Honor.  With

22  respect to a status report on property damage claims, the Court

23  may recall that the debtor and Mr. Speights indicated to Your

24  Honor that we want to re-argue what is known as the ultimate

25  Statute of Limitations' motions as they relate to Canada.  And

1  that relates to, I believe, 35 of the remaining Canadian

2  claims.

3          I understand that your scheduling clerk has set that

4  argument for November 24, either as part of the omnibus hearing

5  on that date, or following the omnibus hearing on that date.

6          Since the last omnibus, Mr. Speights and I have

7  spoken further.  And we also wish to re-argue the, I believe

8  it's 17 other Canadian claims which are subject to the regular

9  Statute of Limitations, as are the 35 that are also subject to

10 ultimate.  And we, therefore, would like Your Honor to re-argue

11 both motions, and the debtor will put in a bench book for Your

12 Honor the briefs that were filed on both motions.  I believe

13 they total six briefs.  And the two transcripts of argument,

14 one was very short, and one was a full argument.  And we will

15 give the Court a bench book so that the Court has everything

16 that's been filed and said before.  And we will simply re-argue

17 what we argued before.

18         THE COURT:  Will the November 24th time frame be

19 sufficient to do both arguments?  Or do you need separate days,

20 Mr. Restivo?

21         MR. RESTIVO:  I believe it will be more than

22 sufficient, Your Honor.

23         THE COURT:  Mr. Speights, do you agree with that?

24         MR. SPEIGHTS:  I'm not sure how much time you had set

25 aside?

1        THE COURT:  It's news to me, Mr. Speights.  I don't

2   know either.  Mr. Restivo, do you know?

3        MR. RESTIVO:  I do not know, Your Honor.  My

4   recollection -- and I'm going by memory -- is that the original

5   arguments on both those motions took about an hour and a half,

6   give or take.

7        MR. SPEIGHTS: Let me say this, Your Honor, just to --

8   since I'm now up here.  I was going to wait until Mr. Restivo

9   finished everything on Canada.

10        Mr. Restivo is correct.  We agreed to argue the

11   ultimate Statute of Limitations.  Mr. Restivo wants to argue

12   the regular Statute of Limitations, as well, on that day, which

13   I have no objection to if we don't resolve them.

14        We have not reach an impasse on that half, as well.

15   So, I am still hopeful that we will resolve that half of the

16   equation.

17        But if we don't, we certainly can argue both on that

18   day.  I would think we might need an hour each, and divide it

19   as Your Honor feels appropriate as far as reply, rebuttal, et

20   cetera.

21        THE COURT:  Okay.  Excuse me one second.

22                        (Pause)

23        THE COURT:  What Ms. Baker is saying is that we're

24   going to be -- that day is a Pittsburgh hearing day, November

25   24th.  And Grace is the last thing on the list.  And if this

1 schedule falls apart, like it did today, we may actually be

2 able to start earlier that day.  I don't know yet because I

3 don't generally know until the week before the hearings what's

4 coming off and what's staying on.  And as far as I know now,

5 it's possible that the following day might not have very much

6 on it either because that day seems to be falling apart pretty

7 regularly, too.

8          So, if we can just defer this for a few minutes, I

9 might be able -- once she gets into the Pittsburgh calendar, to

10 give you a better estimate of time.

11          MR. SPEIGHTS:  Thank you, Your Honor.

12          THE COURT:  Okay.  Mr. Restivo, if we can get back to

13 this Canadian argument in a few minutes after Ms. Baker gets

14 into our calendar, I can perhaps give you a better time

15 estimate and argument, and we can address this issue in a few

16 minutes.  If you want to continue with your status report, we

17 can return to this at the end.

18          MR. RESTIVO:  That will be fine, Your Honor.  I

19 believe the only other thing on the agenda is a status report

20 on asbestos property damage claims as it relates to the

21 California Department of General Services.  I believe Item

22 Number 8, Your Honor, has been rendered moot by the Court's

23 decision granting our motion for summary judgment.  And so I

24 believe Number 8 can simply be taken off the agenda because

25 it's been mooted out by the Court's opinion and order.  And

1  that's my status report on property damage, Your Honor.

2        THE COURT:  All right.  Mr. Speights?

3        MR. SPEIGHTS:  I came to Wilmington today to respond

4 to Mr. Restivo's status report.  The last time he listed those

5 claims which were still outstanding, he actually didn't list

6 them individually today.  But he did not list last time, and I

7 brought it to his attention, two of the three Anderson claims.

8 Anderson filed three proofs of claim, the individual claim for

9 its own building, the so-call Worldwide class claim, and the

10 South Carolina class claim.

11        And in the debtors' plan of reorganization --

12 proposed plan of reorganization, Exhibit 21, the debtor says

13 that all three claims are still active claims.  And Mr. Restivo

14 has previously addressed the Anderson individual hospital

15 claim, and I have nothing to say about that.  I'm sure that we

16 will discuss that matter.  But I would like to inquire as to

17 the status of the two class claims.  Your Honor has denied

18 certification, and we are attempting to appeal that to Judge

19 Buckwalter, but they are still listed as active claims here.

20 And as I understand it, the debtor has taken the position in

21 its proposed plan that those claims have not been dismissed or

22 expunged.

23        So, at this status report, I'd like to know what the

24 debtors' belief is as to the status of those two class claims.

25        THE COURT:  Okay.  Mr. Restivo?

1          MR. RESTIVO:  Your Honor, Mr. Speights is correct

2    that in my last report when I was talking about remaining

3    claims that the debtor and the Bankruptcy Court had to deal

4    with, I did say only the Anderson individual claim because

5    class action had been denied on the South Carolina class claim.

6    And the other -- the intergalactic class claim.  I believe

7    that, for purposes of the Bankruptcy Court, I'm not sure there

8    is anything else we need to do with those claims with respect

9    to resolving them.  I assume at an appropriate time, Mr.

10   Speights will attempt to exercise whatever appellate rights he

11   has.  But certainly the debtor at this point, I don't believe,

12   is doing anything else with those two classes, having gotten an

13   order denying class action status.

14         MR. BERNICK:  Your Honor, this is David Bernick for

15   the debtor.

16         Now that Mr. Speights has pointed out this point in

17   the plan, we'll be sure to circle back to the plan and make

18   sure the description of the status of those claims is

19   completely accurate.

20         But from our point of view, I think Your Honor has

21   ruled on class.  Mr. Speights is attempting to prosecute an

22   appeal with respect to those determinations.  And that is the

23   status.

24         What the treatment is or statement about those

25   claims, and I'm not really sure that they are separate claims.

1  They are the same entity pursuing an individual claim, and then

2  seeking class status.  But whatever it is, we'll make sure that

3  the plan appropriately describes the status of that litigation.

4  But I think Your Honor already knows the status for our

5  purposes today, the administration of the case itself.  I don't

6  know if that answers Mr. Speights's question, but that is what

7  our position is.

8           MR. SPEIGHTS:  I'm more confused than ever, Your

9  Honor.  I mean either the claims should be expunged, or we

10 ought to have a trial.  There is no motion for summary judgment

11 pending.  I moved for class certification, Your Honor denied

12 it.

13          If the debtor takes the position that denial of the

14 class certification is ipso facto, an expungement of the claims

15 and an order should be entered.  And if the debtor does not

16 take the position that the claims have been dismissed or

17 expunged, then we ought to set it down for trial.  I don't like

18 this no-man's land.  Mr. Restivo wants to put me somewhere

19 between Pluto and Jupiter, and I want to get it resolved one

20 way or the other.

21          MR. BERNICK:  Your Honor, I think this really is --

22 this is -- this is a question that -- the reason Mr. Speights

23 might be confused is the question's a confusing question

24 because it doesn't have any place, given the rules of procedure

25 that govern in this case.  This is a purported class action,

1  it's handled under Rule 23.  Rule 23 governs in these

2  proceedings.

3        If class certification is denied, that is the end of

4  the request for class certification.

5        The request for class certification does not

6  constitute under the Federal Rules of Civil Procedure an

7  independent cause of action.  Class status is a status that is

8  enjoyed if an individual who has filed a complaint is

9  successful in petitioning the Court to act as a representative

10  of a broader group.  There is no separate complaint that is

11  filed.  The class action is filed, it's filed as an individual,

12  and of one who is also seeking to act as a representative.

13  There's no separate action.

14        Now, Mr. Speights may have chosen to file separate

15  proofs of claim, we can't stop him from filing separate proofs

16  of claim.  But the fact that he has filed a separate proof of

17  claim to denominate his request that an individual claimant

18  seek class status doesn't mean that all of a sudden now we have

19  to move for summary judgment with respect to a status that's

20  been denied.

21        So, Mr. Speights's proofs of claim don't make sense

22  under the Federal Rules of Civil Procedure.  If Mr. Speights

23  wishes to pursue them as separate actions, I suppose he can try

24  to file a complaint, a separate complaint for each one of those

25  different things, and then we'll take up the question of

1  whether that's appropriate, which obviously it is not.

2          But the mere fact that he has sought to file those

3  proofs of claim doesn't give him any status whatsoever under

4  Rule 23.

5          THE COURT:  Well, I don't think that's what he's

6  arguing.  I think what he's suggesting is that at the moment,

7  there are basically, even from the debtors' theory, duplicative

8  proofs of claim out there because at the moment, there are

9  three proofs of claim.  Even under the debtors' theory, that

10  would stand to represent an individual claim.  Because there

11  are -- if they're denying class status, there is still three

12  proofs of claim.

13          MR. BERNICK:  Well, that may be, but that's not the

14  debtors' doing.  That's Mr. Speights's doing from having filed

15  them.  We will --

16          THE COURT:  Yes.

17          MR. BERNICK:  We will take a look at the question of

18  whether, as a matter of bankruptcy practice, it makes sense to

19  clean up the docket with respect to those matters.  But this is

20  not some substantial litigation matter.  And Mr. Speights

21  obviously made a separate trip here to take this matter up, and

22  we appreciate his interest in it.  But I don't know that we're

23  going to resolve this here today.  It's really a docketing

24  matter more than anything else.

25          MR. SPEIGHTS:  Your Honor, what they have said --

1  first of all, I filed three proofs of claim.  They filed

2  objections to each of the proofs of claim.  Contested

3  proceedings were created as to all three proofs of claim.  They

4  have filed a proposed plan in which they have listed the

5  remaining P.D. claims, and they have listed each proof of

6  claim.

7         So, I understand the individual claim is over here.

8  All I'm saying is these other two claims either need to be

9  expunged, which I certainly am not advocating the expungement

10  of my own claims, or we need to proceed to resolve those two

11  claims.  It ain't complicated.  And I don't know -- I don't

12  understand the difficulty the debtor has.

13         MR. BERNICK:  There is no difficulty.  And I can't

14  help but think this is -- Mr. Speights wants to get yet another

15  order from the Court that he can then seek to appeal.  I don't

16  know --

17         THE COURT:  Well --

18         MR. BERNICK:  I don't know --

19         THE COURT:  That may or may not be the case.  But I

20  think from a matter of bankruptcy practice, there are three

21  proofs of claim out there that apparently stand for one claim.

22  And as a matter of bankruptcy practice, the docket should be

23  cleaned up.  I mean if they're not class certified, then the

24  order probably should have expunged the claims, not just denied

25  class certification.  If, in fact, they stand -- if, in fact,

1 they stand for anything more than just the Anderson individual

2 claim, then they should have been stricken at the time class

3 certification was denied.

4       If they don't stand for anything more than that

5 Anderson claim, then one claim will do it.

6       MR. BERNICK:  Right.  Yes, but in any event, I -- you

7 know, Mr. Speights is free to make whatever arguments he wants

8 to this morning, it doesn't really advance any cause.  I mean

9 we'll take --

10       THE COURT:  Well --

11       MR. BERNICK:  We'll take --

12       THE COURT:  No, I think the issue is what's the plan

13 going to do with the claims?  His -- he needs to know, in terms

14 of both voting and objecting to the disclosure statement and

15 plan, what the debtors' intent is.  If it's listing three live

16 claims, then does he get three votes?  He has a legitimate

17 issue.

18       MR. BERNICK:  I didn't say that he didn't have a

19 legitimate issue.  I said it's not going to be something that

20 I'm going to sit here and resolve this morning.

21       THE COURT:  Okay.

22       MR. BERNICK:  We'll take a look at the plan, it

23 relates to the plan.  And we'll respond accordingly.

24       THE COURT:  All right.  Can't clear it up today, Mr.

25 Speights.  But I think you and Mr. Bernick or Mr. Restivo --

1 you and somebody on behalf of the debtor need to talk.  There

2 does need to be some clarifying language between now and the

3 disclosure statement hearing, and some action to clean up the

4 docket if the debtor is going to take that action to clean up

5 the docket.

6 　　　　　And if not, then there will be three proofs of claim

7 out there.

8 　　　　　MR. SPEIGHTS:  Thank you, Your Honor.  I will

9 certainly come to the disclosure statement and present this

10 again if we have not resolved it by then.

11 　　　　　But I want to point out there is no piece of paper

12 yet to trigger something.  It would be the debtors' piece of

13 paper, I believe.  However, if Your Honor believes that, and

14 we're not deciding it today, I understand.  But if Your Honor's

15 belief is they should have been dismissed at the same time, or

16 as a part of your denial of class certification, then I think

17 somebody may ask you to clarify that with a one-line order.

18 　　　　　Thank you, Your Honor.

19 　　　　　THE COURT:  Okay.  Okay.  I've been given a note by

20 my clerk that indicates that on Monday, November 24th, there's

21 nothing scheduled after the Grace hearing.  And on Tuesday, the

22 25th, the only thing that's scheduled that morning is Owens.

23 As far as I know, Owens is going to have one matter.  I'm not

24 aware at the moment of anything else.  There could be something

25 else that will pop up, but I don't think Owens will take more

1  than, from what I know right now, probably 9 to 10 o'clock.

2  We're still carrying Combustion, it's listed, but is Combustion

3  going to have anything?  It hasn't had anything listed for

4  months.

5          (The Court conferring off the record with staff)

6          THE COURT:  Oh, okay.  Combustion asked to cancel the

7  rest of the year anyway.  So, I guess the choice would be -- do

8  you know how much you're going to have on for Grace on the

9  24th?

10         MS. BAER:  Your Honor, today is the filing deadline.

11 The debtor anticipates filing one business related motion to

12 sell a small piece of property.  Other than that, it will be

13 the carryover from this hearing.  So, I don't anticipate very

14 much.

15         THE COURT:  All right.  So, then why don't we -- if

16 it's convenient, Mr. Speights, and Mr. Restivo, let's just

17 schedule the argument on the 24th at the close of the omnibus

18 hearing.  And --

19         MR. RESTIVO:  That will be fine, Your Honor.

20         THE COURT:  Mr. Speights?

21         MR. SPEIGHTS:  That will be fine with me, Your Honor.

22         THE COURT:  All right.  So, I'll reserve.  I'll say

23 at least two hours, one for each side.  And that should be

24 sufficient, I think, to do both motions.

25         MR. RESTIVO:  Yes, Your Honor.

1        THE COURT:  If you -- assuming you haven't settled

2  the one.

3        MR. SPEIGHTS:  yes, Your Honor.

4        THE COURT:  Okay.  Let me make a note then.

5                    (Pause)

6        THE COURT:  Okay.  Thank you.

7        MS. BAER:  Thank you, Your Honor.

8        THE COURT:  Anything else, Mr. Restivo?

9        MR. RESTIVO:  No, Your Honor.  Thank you.

10       THE COURT:  All right.  Ms. Baer?

11       MS. BAER:  Your Honor, Agenda Item Number 9 is the

12 debtors' application to appoint Alexander Sanders, Junior as

13 the person -- property damage future claimants' representative

14 to represent both traditional, as well as ZAI property damage

15 claims and demands to the extent that they exist.

16       Your Honor, no objections were filed to the motion.

17 The debtor did, last Thursday, file a supplemental affidavit

18 from Mr. Sanders.  Judge Sanders, at one time during the course

19 of the South Carolina Anderson litigation, testified on behalf

20 of Mr. Speights, and disclosed that in a supplemental

21 affidavit.  The debtor did not believe that that created any

22 kind of issues with respect to disinterestedness here.  And,

23 again, we've heard no objections from anybody.

24       As a result, Your Honor, we'd ask for entry of an

25 order appointing Judge Sanders as the P.D. future claimants

1 representative.

2         THE COURT:  All right.  I did not have that stamped

3 yet because of his supplemental affidavit.  I wanted to make

4 sure everybody had seen it.  I didn't see that it caused a

5 conflict either, but it came kind of close to the hearing.  So,

6 I simply wanted to make sure that there was no one who saw that

7 there posed -- this posed a conflict as a result.

8         Is there any objection?

9               (No audible response heard)

10        THE COURT:  All right.  I'll have that order entered.

11        MS. BAER:  Thank you, Your Honor.  Do you need

12 another copy, or do you have that?

13        THE COURT:  I'll take it if you have it.

14        MS. BAER:  I do.

15        THE COURT:  All right.  I'll enter it now then.

16 Thank you.

17               (Pause)

18        THE COURT:  All right.  That order is signed.

19        MS. BAER:  Thank you.  Your Honor, Agenda Item Number

20 10 is the debtors' application to set a Canadian bar date for

21 Canadian ZIA P.D. claims, and to approve the debtors' bar date

22 and notice program, including proof of claim notice and

23 publication program.

24        Your Honor, once again, no objections were filed to

25 the debtors' motion.  However, the Canadian representative did

1  ask us to make various changes to some of the notice material.

2  We apologize that we were not able to file those until Friday

3  where there was a lot of back and forth, especially because we

4  had been asked to add a lot of things in three languages:

5  English, French and Inuktatuk.  And we had to, frankly, look

6  into what we could do in that rather rare language.

7          And as a result, Your Honor, we did, on Friday, file

8  a certification of counsel, which reflected black lines of the

9  changes we had made to the bar date materials.  The changes

10  basically were some slight wording changes to the notice to

11  more prominently display certain words that rep counsel felt

12  would be more appropriately displayed a different way.

13          It clarified that this is not a bar date for personal

14  injury ZAI claims to the extent they exist.  That will be

15  handled through the plan, through the regular personal injury

16  524(g) trust.

17          It indicates that everything will be translated into

18  French and Inuktatuk, except for the proof of claim form, Your

19  Honor, which needs to be filed in English or French.  But all

20  of the information on our web site and the like will be

21  available in both -- in three languages.

22          Your Honor, in addition to that, we added some

23  contact information for representative counsel, both in the

24  U.S. and in Canada.

25          And finally, rep counsel asked that we add a cover

1 letter to known claimants who will be getting the proof of

2 claim form and notice package, just indicating to them a little

3 more plainly why they are getting it.

4      With all of that, Your Honor, we did, in fact, submit

5 on Friday the certification of counsel with the revised order

6 and the revised bar date materials, and would ask that Your

7 Honor enter that order.

8      THE COURT:  All right.  I have one question.  I did

9 not see the revision, so I apologize.  What I was looking at

10 was the original information.  So, maybe this has been changed.

11 But the notice information says that the proof of claim forms

12 can be personally delivered to the debtors' representative at

13 the business headquarters of the debtors' notice agent in

14 Minnesota.  But then it says between business hours, which are

15 defined at 9 to 5 -- 9 A.M. to 5 P.M. eastern time.  Is that

16 correct?

17      MS. BAER:  Your Honor, generally speaking, because

18 this case pends in Delaware, we define everything in eastern

19 time because most of the people are filing from eastern time.

20      THE COURT:  Well, that's fine, except is, in fact,

21 the business hour going to be one at 5 P.M. eastern time in

22 Minnesota?  Because if it is, that's okay.  But if isn't, then

23 that has to be changed so that, in fact, if somebody really

24 does show up and try to hand-deliver something, the business

25 office is, in fact, going to be open.  That's all.  I just want

1  to make sure -- I'm not sure anybody's going to try to cross

2  the border and try to actually hand-deliver anything anyway.

3  But if they do, I want to make sure that the notice program

4  really says that if the business hours are going to be open,

5  there's going to be somebody there to take it.

6          MS. BAER:  Your Honor, not only would it be open, it

7  will actually be open for another hour because Minnesota is on

8  central time.

9          THE COURT:  Well, all right.  Then what about the 9

10 A.M. in the morning time?

11         MS. BAER:  Your Honor, and that's no problem.  9 A.M.

12 eastern is 8 A.M. central, and that's when it will be open.

13         THE COURT:  Okay. So, it really will be open in those

14 hours?

15         MS. BAER:  Yes, Your Honor.

16         THE COURT:  Okay.  I think that's the only thing I

17 saw that was -- looked a little strange, since it was defined

18 in eastern time.

19         MR. BERNICK:  We have our own time zone in this

20 litigation.  There's something kind of -- you know, I don't

21 know if -- I guess it's the opposite of heliotropic.  It's the

22 old Copernican version or whatever.

23         THE COURT:  Everything -- we'll use the asymptotic.

24 Everything in this case is asymptotic.

25         MR. BERNICK:  Asymptotic.

1          THE COURT:  Okay.  Mr. Hogan, did you have something
2   you wanted to --

3          MR. HOGAN:  Please, Your Honor.  Daniel Hogan on
4   behalf of the Canadian Zonolite claimants.

5          We appreciate the debtors' efforts in regard to the
6   changes that they made to the Canadian bar date notice program,
7   and the materials that went along with it.

8          The only reason I stand up now, Your Honor, is to
9   inform the Court that on Friday, we received an order from the
10  CCAA approving the settlement, as you're aware.

11         THE COURT:  Oh, good.

12         MR. HOGAN:  And I wanted you to be aware of that.
13  And so I make sure.  I don't yet have a copy of the signed
14  order, I'm sure we'll effectuate that once we get it.  But I
15  wanted you to be aware of that, Your Honor .

16         THE COURT:  Oh, that's great news.  Thank you.

17         MR. HOGAN  You're welcome.

18         MS. BAER:  Thank you, Mr. Hogan.  I should have
19  mentioned that, Your Honor.

20         I have, Your Honor, the order which attaches to it
21  the various bar date materials, and the bar date notice.  And I
22  would ask, if Your Honor would, to sign both the order and the
23  notice.  And I have an extra copy if I could take one back with
24  me.

25         THE COURT:  All right.

1                           (Pause)

2              THE COURT:  There's no place for a date on the second

3  one, Ms. Baer, on the exhibit -- the notice.

4              MS. BAER:  Your Honor, if you just want to write the

5  date next to your name, that's fine.

6              THE COURT:  You don't --

7              Ms. Baer:  I apologize for that.

8              THE COURT:  All right, that's fine.  I just wanted to

9  be sure you didn't --

10                          (Pause)

11             THE COURT:  Okay.  That order is signed.

12             MS. BAER:  Thank you, Your Honor.  Agenda Item Number

13 11, Your Honor, is the status on the litigation with respect to

14 the lenders' credit agreements, and Mr. Bernick will address

15 that for the debtor.

16             THE COURT:  Mr. Bernick?

17             MR. BERNICK:  Yes.  We just have a brief status

18 report, Your Honor.  Pursuant to the Court's instructions, we

19 did have a meeting between both sides, very thorough discussion

20 of the matter in an effort to see if we could resolve it.  And

21 we've concluded that, at least at this point in time, it is not

22 going to get resolved.

23             And as a consequence, we would like to move forward

24 and ask that Your Honor then consider the matters that have

25 been briefed and decide the matter.  There are some exhibits

1  that will be submitted, I think, sometime in the next couple of

2  days.  Your Honor will recall that that was a housekeeping item

3  that was leftover from last time.  So, that will be done, and

4  then we can proceed.  And if it looks at some point down the

5  road like the discussions could resume, of course the debtor is

6  obliged and willing, and certainly determined to settle this

7  matter if it can be settled.  But right now, it does not appear

8  that it will be.  So, we think the best idea is to move forward

9  with Your Honor's getting a decision out on the matter.

10         THE COURT:  All right.  When are the exhibits going

11  to come in?

12         MR. BERNICK:  I think probably -- Rick's here, as

13  well.  Sometime -- it will be sometime in the next couple of

14  days.  So, there's just a finite number of exhibits.

15         What we've done is to list them together with whether

16  there are any objections.  And then if there are objections,

17  just a very short statement of what the objection is.  We

18  understand from what Your Honor said last time that you're

19  going to be inclined to receive these matters.  But we do want

20  to make sure that the record is clear on what our position is

21  with respect to the objection.

22         So, it will be submitted as a joint package with, I

23  think, a cover sheet indicating the exhibits and what their

24  status is.

25         MR. COBB:  Good morning, Your Honor.  We agree with

1  the debtors.  The bank lenders -- we were hopeful that more

2  could be accomplished through negotiations.  Unfortunately,

3  they were not.  And we think it would be best at this point

4  just to obtain a ruling from the Court.

5          THE COURT:  All right.  Once I get the exhibits, then

6  I'll take the matter under advisement.

7          MR. COBB:  Thank you.

8          THE COURT:  Any -- can you give me an estimate of

9  when this is coming in?  And has a transcript been prepared yet

10  of the argument?

11          MR. BERNICK:  I don't know.  The exhibits, again,

12  will be coming in the next couple of days.  As to the

13  transcript of the argument -- Jan, when do we generally get

14  them?

15          MS. BAER:  Generally we get them in a week.  So, I'm

16  sure we have it, although I haven't physically seen it.

17          MR. BERNICK:  We'll get that to Your Honor promptly.

18          THE COURT:  All right.  Is there any possibility that

19  you can just either let me know that it's in, or put a copy of

20  it in with the exhibits?

21          MR. BERNICK:  Sure.

22          THE COURT:  Okay.  That will be helpful actually, if

23  you could just stick a copy of it in?

24      (The Court conferring off the record with staff)

25          MS. BAER:  Your Honor, it is in actually.

1          THE COURT:  It is.

2          MS. BAER:  Oh, sure.

3          THE COURT:  Okay.

4                      (Pause)

5          THE COURT:  Okay.  Ms. Baer, thank you.

6          MS. BAER:  Your Honor, Agenda Item Number 12 is being

7    continued to the November 24th hearing.

8          THE COURT:  All right.

9          MS. BAER:  And that leaves us with the last matter,

10   Your Honor, with was a last minute addition, Agenda Item Number

11   13.

12          Your Honor, on -- at the last omnibus hearing, you

13   entered an order approving a sale of a piece of the debtors'

14   property -- I'm sorry.  Approving a sale with the Town of Acton

15   with respect to a debtors' piece of property and Sewer

16   Betterment and real estate tax issues.

17          At that time, I had indicated to the Court that we

18   had been just contacted by the Town wanting some changes to the

19   order.  I did talk with the Town, they did ask for changes.

20   And I submitted a black line, as well as a clean, to Your

21   Honor.  The changes are really to more specifically address

22   certain things that are in the settlement agreement, and to

23   also address what would happen in the event that a plan of

24   reorganization was confirmed, contrary to what's in the

25   settlement agreement.  Those are the changes that are made

1  there.  The debtor is in agreement with those changes, we don't

2  have any problem with them.  We circulated a copy of the draft

3  order to all of the committees in the case.  And a couple of

4  the committees got back to us and said they had no objections,

5  they found a few typos, which was helpful.  And the other

6  committees did not get back to us, and the time has past.

7          So, as far as I know, nobody has any objection to

8  entry of the amended and restated order.

9          THE COURT:  Do you have a copy here?

10         MS. BAER:  I do.

11         THE COURT:  Does anyone have a position you want to

12  take with respect to the changes to the order that's being

13  proposed?

14              (No audible response heard)

15         THE COURT:  Okay.  That order's entered, too.

16         MS. BAER:  Your Honor, that concludes the agenda.

17  And the debtor -- does the debtor have anything to say?

18         MR. BERNICK:  Yes.

19         MS. BAER:  Ah-ha.

20         THE COURT:  Mr. Bernick?

21         MR. BERNICK:  Is Mr. Freedman on the phone, as well?

22         THE COURT:  Mr. Freedman?

23              (No audible response heard)

24         MR. BERNICK:  Guess not.

25         THE COURT:  I'm not sure if he was -- is the

1  CourtCall operator on the phone?

2          OPERATOR:  I am here, Your Honor.  One moment, I do

3  have Mr. Theodore Freedman on the line.  I'll open his line.

4          THE COURT:  Thank you.

5          OPERATOR:  Mr. Freedman, your line is now open.

6          MR. FREEDMAN:  What's the question?

7                      (Laughter)

8          MR. BERNICK:  It's not a question, it's a point.

9  Which is that your partner caught you off-guard.  But I did

10  think it was appropriate, in light of the fact that we have a

11  disclosure statement hearing coming up next week, to at least

12  talk a little bit about the scheduling.

13          We have, I think, two days that are set aside.  One

14  is Monday the 27th, and also Tuesday the 28th.  I think that

15  there have been approximately 20 different objectors who have

16  filed objections.  They kind of fall into a series of

17  categories.  We're studying that now with the view to trying to

18  produce a sequence or ordering to the disclosure statement

19  hearing so that we resolve matters that can be fairly easily

20  resolved on Monday.  And perhaps, as I understand it, November

21  the 14th may be a date that's available on your schedule.  And

22  our thinking is that perhaps we would have a second or

23  continuation of the disclosure statement hearing on that date,

24  given the fact that there are some objections that will take

25  more time to resolve.

1          So, that's something that we're studying at this

2    point.  And I don't know if I got that right, Ted.  Did I get

3    that right?

4          MR. FREEDMAN:  Yes, you did.

5          MR. BERNICK:  Yeah.  So, that's our current -- that's

6    our current plan.  Now, you're looking at me skeptically.

7          THE COURT:  I thought I had a hearing on November

8    14th.

9          (The Court conferring off the record with staff)

10          THE COURT:  All right.  That's fine.

11          MR. BERNICK:  That's the plan.  And then with respect

12    to -- with respect to the ultimate confirmation hearing, which

13    I know is looking down the road, we understood that Your Honor

14    took -- I think it was either the 8th or 9th, or the 9th and

15    10th, of February, which were originally set aside.  Those had

16    been resorbed into the Court's calendar.  But Your Honor has

17    time available in early March, I think it's the 9th through the

18    12th.  And if all goes well, we will, in fact, be wanting to

19    press forward to confirmation as soon as we can.  And those are

20    the dates that I think at the present time we're shooting for.

21          So, the basic sequence would be disclosure statement

22    hearing on Monday, a continuation on the 14th, and then

23    ultimately if we're successful in getting approval the

24    disclosure statement, send it out to vote with the view of

25    having the ultimate confirmation hearing at some point in early

1  March.

2      THE COURT:  Okay.  You don't want the January dates

3  then?

4      MR. BERNICK:  I don't think we're going to be --

5  well, I think we should hold -- it's conceivable that we should

6  hold the January -- which dates do we have in January?

7      THE COURT:  Somewhere around the 25th.

8      (The Court conferring off the record with staff)

9      COURTROOM DEPUTY:  In January, we now have the 12th,

10  13th and 14th.

11      MR. BERNICK:  Okay.

12      THE COURT:  Oh.

13      MR. BERNICK:  I think that we should still hold those

14  dates because it may even be possible to take some matters up

15  at that point in time.  I just don't know.  I'm very reluctant

16  to give up dates that we have on the Court's docket.  But I

17  think if Your Honor has things to fill in those dates, as I

18  know you reach out to -- reach out to Jan and suggest that

19  there are other things that could be gainfully done on those

20  dates, and we'll see if we really need them.

21      THE COURT:  Okay.  You know, if you have -- I'm

22  concerned about giving up all of the dates.  Because if you

23  have something, you know, discovery issues, something that

24  comes up, and then I don't have any dates available, I think it

25  will be problematic.  You may not need three days, but you may

1    need some day.  If you're not actually moving forward with the

2    plan confirmation, you may not need three days --

3             MR. BERNICK:  Right.

4             THE COURT:  -- at that time, but you may need some.

5             MR. BERNICK:  Right.

6             THE COURT:  So, at the moment, I don't -- I have only

7    one matter that I know will be begging me for time that they

8    would like three days in a row, and I'm not going to commit

9    those days at this point anyway.

10             MR. BERNICK:  Okay.

11             THE COURT:  So, if I'm really pressed, then I'll get

12    in touch with Ms. Baer.  But I don't think at the moment that I

13    need to take these off the calendar.

14             MR. BERNICK:  Okay.

15             THE COURT:  So, we'll just keep them for now.

16             MR. BERNICK:  So, that's pretty much where we are.

17    If we can figure out in sufficiently -- you know, in a timely

18    fashion what makes -- really makes sense as an ordering for

19    going through the disclosure statement objections, we'll

20    obviously apprise the Court and apprise the objectors, as well,

21    so that this thing can be, you know, efficient.

22             THE COURT:  Well, what has been helpful in the past,

23    Mr. Bernick -- you probably do this in all the cases.  But what

24    really has been helpful is if you can group the objections in

25    some form of -- chart form.

1          MR. BERNICK:  Yes.

2          THE COURT:  So, that you can show me where the

3    objection rises, and where the response has come up, or not

4    come up, as you -- as is appropriate.  That really is helpful

5    because it can at least pinpoint the search through the variety

6    of documents.

7          MR. BERNICK:  Mr. Freedman told me over the weekend

8    that that is something that's already in process.

9          THE COURT:  Okay.

10          MR. BERNICK:  So, we'll be getting that done.

11          THE COURT:  I actually have one question.  And I know

12    this is not the disclosure statement hearing either, or the

13    solicitation issue, but maybe I ought to raise it now anyway

14    since that's coming up next week, without getting into any

15    discussion.  If I just simply state the issues --

16          MR. BERNICK:  Sure.

17          THE COURT:  -- perhaps that might help so that if

18    there is, in fact -- there may not even be an issue there.  But

19    it's just something in reading through these documents that

20    I've -- and I'm not finished reading.  So, it's possible that

21    there's an answer later that I haven't come up with yet.

22          MR. BERNICK:  Right.

23          THE COURT:  What I'm not clear about, I take it that

24    all the ZAI claims, not the Canadian ZAI claims, but the

25    American ZAI claims, are they going into the property damage

1  class?

2       MR. BERNICK:   The ZAI claims are going into the

3  property damage class, that's correct.

4       THE COURT:   Okay.  All right.

5       UNIDENTIFIED ATTORNEY:   All ZAI property damages

6  claims are going --

7       THE COURT:   Yes, I'm sorry, yes.  That's what I was

8  talking about.

9       MR. BERNICK:   That is, of course, the current status,

10  as I think Your Honor has been apprizes.  There are ongoing

11  discussions with respect to ZAI, and we now have a futures

12  representative with respect to P.D.

13       THE COURT:   Yes.  Okay.   The master ballot issue, it

14  appears that attorneys for both P.I. and P.D. claims are going

15  to be able to vote by master ballot, is that correct?  Okay.

16                         (Pause)

17       THE COURT:   Well, this might have been for Mr. Hogan,

18  but I think he left.  So, I'll raise this issue.  This is

19  purely a voting issue, and this may be because I have not seen

20  in the settlement document because it -- that was now approved.

21  So, it may be a moot issue.  The Canadian ZAI P.D. class is

22  voting the $6,500,000 in Canadian dollars that is its payout.

23  And is that because it is being voted by the settlement class

24  holder, not by each individual claimant?  Yes?

25       MS. BAER:   That's correct.

1            THE COURT:  Ms. Baer is saying yes.  Okay.

2            MS. BAER:  It's the representative counsel.  There is

3 no certified class.

4            THE COURT:  Class itself.  Yes, I'm sorry, counsel.

5 Okay.  Well, I think structurally, those -- the other issues

6 that I had were different issues that are related to specific

7 things.  But those were the structural issues that I was not

8 able to put my arms around.  But I think I understand the

9 minute issues based on those structural issues.  So, that's

10 really the clarification I needed.  Okay.  Thank you.

11            MR. BERNICK:  And I think with that, the debtor does

12 not have any other matters to raise today.

13            THE COURT:  All right.  Good morning.

14            MR. WISLER:  Good morning, Your Honor.  Jeff Wisler

15 on behalf of Maryland Casualty Company.

16            Your Honor, I'm sorry, I didn't quite follow what Mr.

17 Bernick was saying.  Are we scheduled to have anything on the

18 28th in any event, or is that completely off?

19            MR. BERNICK:  I think that our anticipation is that

20 we'll be able to finish whatever we can take up next week on

21 the 27th.  But we -- you're correct in noting the lack of

22 clarity there because there is some chance that it will spill

23 over to the 28th.  So, we don't know that we're going to take

24 the 28th.  We don't know that we're not going to take the 28th.

25 But we do know that we're going to need another day in

1  November, which is really the essence of what I wanted to

2  accomplish.

3          THE COURT:  Okay.  So --

4          MR. BERNICK:  The idea is to take the categories and

5  address next week those things that we really think can be

6  readily addressed and resolved.  There are other matters that

7  pertain to certain objections, particularly with respect to

8  P.D., that we think are going to take more time to resolve.

9  And, of course, with respect to P.D., we have to now have the

10  opportunity for the new FCR to be able to weigh in.

11          So, it's inevitable.  But that's going to take more

12  time than we have between now and the 27th and 28th.  And it's

13  for that reason that we want to make sure that we create in

14  Your Honor's mind the anticipation of there being a subsequent

15  proceeding on the 14th of November.

16          THE COURT:  Well, that's fine.  What I guess I'm

17  trying to get to is does it make sense to go forward on the

18  27th?  Do you want to --

19          MR. BERNICK:  Yes.

20          THE COURT:  Yes.

21          MR. BERNICK:  Yes, because, you know, it's a -- it

22  just takes time to go through all this stuff.  And we don't

23  want to be in a position where it turns out on the 14th of

24  November that we're not done.

25          THE COURT:  All right.  And then the second question

1    is I had said that we would not do this by either video or

2    CourtCall proceedings.

3            MR. BERNICK:  Right.

4            THE COURT:  But if you think you're going to be done

5    on the 27th, but you're not sure, then that's going to put

6    people in a position, since this is going to be in Pittsburgh

7    where they may not get home, but they may try.  So, I guess the

8    question is should I try to set up a CourtCall proceeding for

9    the 28th?

10            MR. BERNICK:  That would probably make a lot of

11    sense, yes.

12            THE COURT:  To let people try to get home on the

13    27th?

14            MR. BERNICK:  Sure.  That means we have the

15    flexibility in any event, right.

16            THE COURT:  CourtCall Operator, is it too late for me

17    to try to get a CourtCall proceeding set up for the 28th?

18            OPERATOR:  I seriously doubt it, Your Honor.  I think

19    that would be fine.

20            THE COURT:  All right.  If that's possible, that may

21    work best for everyone so that they could make arrangements to

22    leave town on the 27th.  And then that would mean we'd be

23    calling in on the 28th.  But that might make scheduling a lot

24    easier for everyone if Mr. Bernick's pretty sure we're going to

25    be done on the 27th, rather than getting stuck in town.

1          And Ms. Baker is saying she'll send an e-mail to set

2    this up.  Okay.  So, I'll open it up for CourtCall on the 28th

3    only, not the 27th, just the 28th.

4          MR. BERNICK:  Great.  Thank you.

5          THE COURT:  As a carryover day then, okay.  So, why

6    don't we say what time you're going to be absolutely finished

7    on the 27th so that everybody knows what time they can make

8    flight arrangements out?

9          MR. BERNICK:  Well, I think it probably --

10         THE COURT:  I would have to hold you to it so that --

11         MR. BERNICK:  Yeah, yeah.  Well, I suppose -- I mean

12   the temptation will be if we're close at 4 o'clock --

13         THE COURT:  I know.

14         MR. BERNICK:  -- it's the big push to 6.  But I would

15   think that because Pittsburgh has got a, you know, pretty good

16   flight schedule -- well, it really is possible to obviate the

17   need to have a second hearing -- a second day of hearing, even

18   if it's, in some instances, by telephone.  I think that

19   probably makes sense.

20         What I would say to Your Honor, of course, is that

21   any second or moment past 5 o'clock will be totally and

22   completely with the Court's indulgence, and we appreciate in

23   advance the Court's indulgence if it's necessary, and the

24   accommodation by court staff, in particular.  They've been

25   imposed on many times.

1          THE COURT:  All right.  There won't be any.

2          MR. BERNICK:  Okay, right.  Yes.  We understand.

3          THE COURT:  All right.  So, we'll say absolutely, not

4  a second past 5 o'clock.  So, you'll need to make reservations

5  to get to an airplane leaving court by 5.  That will be a rush

6  hour date on Monday.  Traffic can be pretty bad out on Fridays

7  -- on Mondays and Fridays to the airport.  I don't know, I

8  haven't tried to get out on a late night flight, I don't even

9  know if they run out of Pittsburgh.  The schedules have been

10 cut back so drastically.  So, Mona, you -- promise me you won't

11 quit when I do this.  I think this is what I will need you to

12 do.  I think you're going to have to check flights and let me

13 know whether you can get flights out by 6:30 or 7 because

14 you'll need that time.  And if the answer is no, then this is

15 the choice:  We either have to stop at 4, so that you can get

16 flights out.  Or you have to plan to stay overnight.  That

17 would be the choice.

18         So, maybe what I should just say is we'll have to

19 stop -- maybe I should just say we'll stop at 4, and eliminate

20 the calls.  Because I'm not sure you'll get flights out at 7 or

21 later.  I'm just not certain that you will.

22         So, Mr. Bernick, we'll say you'll stop at 4.  And if

23 it turns out that I'm wrong, then next time we'll stop at 5, if

24 that's the case.  So, 4 o'clock.  I'm willing to start earlier,

25 it's a Monday, you're going to have to come in the night

45

1  before.  If you want to start early to accommodate that, I'll

2  do that.

3         MR. BERNICK:  Yeah, I -- speaking as one who does a

4  lot of traveling, Sunday nights are really kind of the pits.

5         THE COURT:  They are.

6         MR. BERNICK:  I think we should just start at 9,

7  and --

8         THE COURT:  End at 4.

9         MR. BERNICK:  -- end at 4, yeah.

10        THE COURT:  All right.  Then bring your lunches.

11        MR. BERNICK:  Yeah.

12        THE COURT:  Make arrangements somehow, somewhere so

13 that we can do a 45-minute lunch, as opposed to an hour and a

14 half lunch, and we'll make the time up that way.

15        MR. BERNICK:  Right.

16        THE COURT:  So, okay.

17        MR. BERNICK:  Great.

18        THE COURT:  All right.  Then, see you next week.

19        MR. BERNICK:  Thank you.

20        THE COURT:  We're adjourned.

21     (Whereupon, at 11:02 A.M. the hearing was adjourned.)

22

23

24

25

1

2                              <u>CERTIFICATE</u>

3

4      I certify that the foregoing is a correct transcript from

5 the electronic sound recording of the proceedings in the

6 above-entitled matter.

7

8  /s/  *Karen Hartmann*                    Date:  October 24, 2008

9 TRANSCRIPTS PLUS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**
**$6,500,000-** 39:22

**/**
**/S/-** 46:9

**0**
**01-** 4:1

**1**
**1-** 6:6
**10-** 22:1 24:20
**10TH-** 35:15
**11-** 29:13
**11139-** 4:2
**11:02-** 45:21
**12-** 32:6
**12TH-** 35:18 36:9
**13-** 32:11
**13TH-** 36:10
**14TH-** 34:21
35:8,22 36:10
41:15,23
**17-** 11:8
**180-** 9:4
**18535-** 6:13

**2**
**2-** 7:20
**20-** 34:15
**2008-** 46:9
**21-** 14:12
**23-** 17:1 18:4
**24-** 11:4 46:9
**24TH-** 6:7 7:24
10:8 11:18 12:25
21:20 22:9,17
32:7
**25TH-** 7:21 21:22
36:7
**27TH-** 34:14 40:21
41:12,18
42:5,13,22,25
43:3,7
**28TH-** 34:14
40:18,23,24 41:12
42:9,17,23 43:2,3

**3**
**3-** 8:2
**35-** 11:1,9

**4**
**4-** 10:1 43:12
44:15,19,22,24
45:8,9
**45MINUTE-** 45:13

**5**
**5-** 10:13 26:15,21
43:21 44:4,5,23
**524G-** 25:16

**6**
**6-** 10:13 43:14
**6:30-** 44:13

**7**
**7-** 10:13 44:13,20

**8**
**8-** 10:18 13:22,24
27:12
**8TH-** 35:14

**9**
**9-** 22:1 23:11
26:15 27:9,11
45:6
**9TH-** 35:14,17

**A**
**AARONSON-** 4:4
**ABLE-** 13:2,9 25:2
39:15 40:8,20
41:10
**ABSOLUTELY-** 43:6
44:3
**ACC-** 5:11 8:5,15
**ACCOMMODATE-** 45:1
**ACCOMMODATION-**
43:24
**ACCOMPLISH-** 41:2
**ACCOMPLISHED-**
31:2
**ACCORDINGLY-**
20:23
**ACCURATE-** 15:19
**ACT-** 17:9,12
**ACTION-** 8:25
15:5,13 16:25
17:7,11,13 21:3,4
**ACTIONS-** 17:23
**ACTIVE-** 14:13,19
**ACTON-** 32:14
**ADD-** 25:4,25
**ADDED-** 25:22
**ADDITION-** 25:22
32:10
**ADDITIONAL-** 7:23
**ADDRESS-** 8:15
9:17 13:15 29:14
32:21,23 41:5
**ADDRESSED-** 14:14
41:6
**ADJOURNED-**
45:20,21
**ADMINISTRATION-**
16:5
**ADVANCE-** 20:8
43:23
**ADVERSARY-** 8:3
9:15,19,22
**ADVISEMENT-** 31:6
**ADVOCATING-** 19:9
**AFFECT-** 9:19
**AFFECTS-** 8:11
**AFFIDAVIT-**
23:17,21 24:3
**AFTER-** 13:13
21:21
**AGENDA-** 6:6 7:20
8:2 10:1,13,17
13:19,24 23:11
24:19 29:12

**32:6,10** 33:16
**AGENT-** 26:13
**AGREE-** 7:16 11:23
30:25
**AGREED-** 6:15
12:10
**AGREEMENT-** 8:18
10:9 32:22,25
33:1
**AGREEMENTS-** 29:14
**AHHA-** 33:19
**AIN'T-** 19:11
**AIR-** 5:19
**AIRPLANE-** 44:5
**AIRPORT-** 44:7
**ALAN-** 4:6
**ALEX-** 4:22
**ALEXANDER-** 23:12
**ALLEGHENY-** 6:14
7:14
**AMENDED-** 33:8
**AMERICAN-** 25:24
**ANDERSON-** 5:17
14:7,8,14 15:4
20:1,5 23:19
**ANDREW-** 4:4,7,13
5:20
**ANNE-** 4:4
**ANSWER-** 38:21
44:14
**ANSWERS-** 16:6
**ANTICIPATE-** 22:13
**ANTICIPATES-**
22:11
**ANTICIPATION-**
40:19 41:14
**ANYBODY'S-** 27:1
**ANYWAY-** 22:7 27:2
37:9 38:13
**APOLOGIZE-** 4:21
25:2 26:9 29:7
**APPARENTLY-** 6:14
19:21
**APPEAL-** 14:18
15:22 19:15
**APPEAR-** 30:7
**APPEARS-** 39:14
**APPELLATE-** 15:10
**APPLICATION-**
23:12 24:20
**APPOINT-** 23:12
**APPOINTING-** 23:25
**APPRECIATE-** 18:22
28:5 43:22
**APPRISE-** 37:20
**APPRIZES-** 39:10
**APPROPRIATE-**
12:19 15:9 18:1
34:10 38:4
**APPROPRIATELY-**
8:11 16:3 25:12
**APPROVAL-** 35:23
**APPROVE-** 24:21
**APPROVED-** 39:20
**APPROVING-** 28:10
32:13,14
**APPROXIMATELY-**
34:15
**APRIL-** 6:13

**ARGUE-**
12:10,11,17
**ARGUED-** 11:17
**ARGUING-** 18:6
**ARGUMENT-**
11:4,13,14
13:13,15 22:17
31:10,13
**ARGUMENTS-** 11:19
12:5 20:7
**ARI-** 4:19
**ARLENE-** 4:18
**ARMS-** 40:8
**ARPS-** 5:19
**ARRANGEMENTS-**
42:21 43:8 45:12
**ASBESTOS-** 5:13
10:14,18 13:20
**ASSUME-** 15:9
**ASSUMING-** 23:1
**ASYMPTOTIC-**
27:23,24,25
**ATTACHES-** 28:20
**ATTEMPT-** 15:10
**ATTEMPTING-** 14:18
15:21
**ATTENTION-** 14:7
**ATTORNEY-** 39:5
**ATTORNEYS-** 39:14
**AUTOMATIC-** 10:3
**AVAILABLE-** 25:21
34:21 35:17 36:24
**AWARE-** 8:22 9:9
21:24 28:10,12,15

**B**
**BACK-** 6:13 13:12
15:17 25:3 28:23
33:4,6 44:10
**BAENA-** 4:13
**BAKER-** 12:23
13:13 43:1
**BALLOT-** 39:13,15
**BANK-** 5:22 6:3
31:1
**BANKRUPTCY-**
15:3,7 18:18
19:20,22
**BAR-** 24:20,21
25:9,13 26:6
28:6,21
**BARBARA-** 4:16
**BASED-** 40:9
**BASIC-** 35:21
**BASICALLY-** 18:7
25:10
**BEGGING-** 37:7
**BELIEF-** 14:24
21:15
**BELIEVES-** 21:13
**BENCH-** 11:11,15
**BERMAN-** 4:19
**BERNICK'S-** 42:24
**BETTERMENT-** 32:16
**BETWEEN-** 9:10
16:19 21:2 26:14
29:19 41:12
**BIG-** 43:14
**BILZIN-** 5:15

**BIT-** 34:12
**BLACK-** 25:8 32:20
**BOLL-** 4:12
**BOOK-** 11:11,15
**BORDER-** 27:2
**BOTH-** 11:11,12,19
12:5,17 20:14
22:24 23:14
25:21,23 28:22
29:19 39:14
**BRESNAHAN-** 4:17
**BRIAN-** 4:9,11,16
**BRICKLEY-** 4:24
**BRIEF-** 29:17
**BRIEFED-** 29:25
**BRIEFS-** 11:12,13
**BRIGHT-** 6:12
**BROADER-** 17:10
**BROUGHT-** 14:7
**BRUENS-** 4:7
**BRYAN-** 4:19
**BUCKWALTER-** 14:19
**BUILDING-** 14:9
**BUSINESS-** 22:11
26:13,14,21,24
27:4
**BUTT-** 4:6

**C**
**CABRASER-** 4:14
**CALENDAR-** 13:9,14
35:16 37:13
**CALIFORNIA-** 13:21
**CALLING-** 42:23
**CALLS-** 44:20
**CAMPBELL-** 5:13
**CAN'T-** 17:15
19:13 20:24
**CANADA-** 10:25
12:9 25:24
**CANADIAN-** 6:1
11:1,8 13:13
24:20,21,25
28:4,6 38:24
39:21,22
**CANCEL-** 22:6
**CANDON-** 4:20
**CANTOR-** 4:12
**CARL-** 4:18
**CAROLINA-** 10:2
14:10 15:5 23:19
**CARRYING-** 22:2
**CARRYOVER-** 22:13
43:5
**CASE-** 7:4 16:5,25
19:19 26:18 27:24
33:3 44:24
**CASES-** 7:6 37:23
**CASUALTY-** 40:15
**CATEGORIES-** 34:17
41:4
**CAUGHT-** 34:9
**CAUSE-** 17:7 20:8
**CAUSED-** 24:4
**CCAA-** 28:10
**CENTER-** 6:14 7:14
9:5
**CENTRAL-** 27:8,12
**CERTAIN-** 25:11

32:22 41:7 44:21
CERTAINLY- 12:17
15:11 19:9 21:9
30:6
CERTIFICATE- 46:3
CERTIFICATION-
14:18 16:11,14
17:3,4,5 19:25
20:3 21:16 25:8
26:5
CERTIFIED- 19:23
40:3
CERTIFY- 46:5
CETERA- 12:21
CHAN- 4:13
CHANCE- 40:22
CHANGED- 26:10,23
CHANGES-
25:1,9,10 28:6
32:18,19,21,25
33:1,12
CHARLESTON-
10:2,4,9,11
CHART- 37:25
CHECK- 44:12
CHELSEA- 4:8
CHOICE- 22:7
44:15,17
CHOSEN- 17:14
CHRISTINA- 4:4
CHRISTOPHER-
4:13,20
CIRCLE- 15:17
CIRCULATED- 33:2
CITY- 10:2,11
CIVIL- 17:6,22
CLAIMANT- 17:17
39:24
CLAIMANTS- 6:1
23:25 26:1 28:4
CLAIMANTS'- 8:5
23:13
CLARIFICATION-
40:10
CLARIFIED- 25:12
CLARIFY- 21:17
CLARIFYING- 21:2
CLARITY- 40:22
CLASSES- 15:12
CLEAN- 18:19
21:3,4 32:20
CLEANED- 19:23
CLEAR- 20:24
30:20 38:23
CLERK- 11:3 21:20
CLINTON- 4:8
CLOSE- 22:17 24:5
43:12
CLOSED- 6:23
COBB- 4:4 6:2
8:20 9:24 30:25
31:7
COCKRELL- 4:10
COHN- 4:16
COMBUSTION-
22:2,6
COME- 21:9 30:11
38:3,4,21 44:25
COMES- 36:24

COMING- 13:4
31:9,12 34:11
38:14
COMMIT- 37:8
COMMITTEE-
5:9,15,24
COMMITTEES-
33:3,4,6
COMPANY- 8:21,23
9:2 40:15
COMPLAINT-
17:8,10,24
COMPLETELY- 15:19
40:18 43:22
COMPLICATED-
19:11
CONCEIVABLE- 36:5
CONCERN- 9:7
CONCERNED- 36:22
CONCLUDED- 29:21
CONCLUDES- 33:16
CONFERENCE- 9:22
CONFERRING- 22:5
31:24 35:9 36:8
CONFIRMATION-
35:12,19,25 37:2
CONFIRMED- 32:24
CONFLICT- 24:5,7
CONFUSED- 16:8,23
CONFUSING- 16:23
CONSEQUENCE-
29:23
CONSIDER- 29:24
CONSTITUTE- 17:6
CONTACT- 25:23
CONTACTED- 32:18
CONTESTED- 19:2
CONTINUATION-
34:23 35:22
CONTINUE- 6:9
9:15 13:16
CONTINUED- 6:6
7:24 8:3,13
9:12,22 10:7,12
32:7
CONTINUES- 10:3
CONTINUING- 10:6
CONTRARY- 32:24
CONVENIENT- 22:16
CONVERSATION- 8:9
COPERNICAN- 27:22
COPY- 24:12
28:13,23 31:19,23
33:2,9
CORPORATION- 5:19
CORRECT- 7:8
22:16 26:16
39:3,15,25 40:21
46:5
COUNSEL-
25:8,11,23,25
26:5 40:2,4
COUPLE- 6:10
30:1,13 31:12
33:3
COURSE-
9:1,4,7,17 23:18
30:5 39:9 41:9
43:20

COURT'S- 13:22,25
29:18 35:16 36:16
43:22,23
COURTCALL- 34:1
42:2,8,16,17 43:2
COURTROOM- 7:16
36:9
COVER- 25:25
30:23
CRAIG- 4:4,7
CREATE- 41:13
CREATED- 19:3
23:21
CRECO- 4:13
CREDIT- 29:14
CREDITORS'- 5:8
CROSS- 27:1
CURRENT- 35:5,6
39:9
CURRENTLY- 9:6
CURTIS- 4:7
CUT- 44:10

  D
DAIS-VISCA- 4:10
DALE- 4:9
DAMAGE-
10:14,19,22 13:20
14:1 23:13,14
38:25 39:3
DAMAGES- 39:5
DAN- 5:16
DANIEL- 4:9 5:25
28:3
DARRELL- 4:13
DATE- 11:5
24:20,21 25:9,13
26:6 28:6,21
29:2,5 34:21,23
44:6 46:9
36:2,6,14,16,17,2
0,22,24
DAVID- 4:6,15,24
5:2,18 15:14
DAVIS- 4:15,17
DAY- 12:12,18,24
13:2,5,6 37:1
40:25 43:5,17
DAYS- 11:19
30:2,14 31:12
34:13 36:25
37:2,8,9
DEADLINE- 22:10
DEAL- 15:3
DEANNA- 4:12
DEBRA- 4:23
DEBTORS- 8:4 31:1
DEBTORS'- 7:21
8:7 14:11,24
18:7,9,14 20:15
21:12 23:12
24:20,21,25
26:12,13 28:5
32:13,15
DECIDE- 29:25
DECIDING- 21:14
DECISION- 13:23
30:9
DECLARATORY- 8:25

DEFER- 13:8
DEFINE- 26:18
DEFINED- 26:15
27:17
DELAWARE- 26:18
DELIVERED- 26:12
DEMANDS- 23:15
DENIAL- 16:13
21:16
DENIED- 14:17
15:5 16:11
17:3,20 19:24
20:3
DENOMINATE- 17:17
DENYING- 6:20
15:13 18:11
DEPARTMENT- 13:21
DEPUTY- 36:9
DESCRIBES- 16:3
DESCRIPTION-
15:18
DETERMINATIONS-
15:22
DETERMINED- 30:6
DEVELOPMENTS-
9:10
DEVINE- 4:9
DIDN'T- 14:5
20:18 24:4 29:9
40:16
DIES- 4:15
DIFFERENT- 17:25
25:12 34:15 40:6
DIFFICULTY-
19:12,13
DISCLOSED- 23:20
DISCLOSURE-
8:7,14,16
9:8,13,16,18,21
20:14 21:3,9
34:11,18,23
35:21,24 37:19
38:12
DISCOVERY-
6:14,23 36:23
DISCUSS- 14:16
DISCUSSION- 8:6
29:19 38:15
DISCUSSIONS- 30:5
39:11
DISINTERESTEDNESS

  _
23:22

  D
DISMISSED- 14:21
16:16 21:15
DISPLAY- 25:11
DISPLAYED- 25:12
DIVIDE- 12:18
DOCKET- 6:13
18:19 19:22
21:4,5 36:16
DOCKETING- 18:23
DOCUMENT- 39:20
DOCUMENTS-
38:6,19

DOESN'T- 9:16
16:24 17:14 17:18 18:3
20:8
DOLLARS- 39:22
DOUBT- 42:18
DOUGLAS- 4:14
DRAFT- 33:2
DRASTICALLY-
44:10
DRITZ- 4:5
DUPLICATE- 6:18
DUPLICATIVE- 18:7

  E
EACH- 12:18 17:24
19:2,5 22:23
39:24
EARLIER- 13:2
44:24
EARLY- 35:17,25
45:1
EASIER- 42:24
EASILY- 34:19
EASTERN-
26:15,18,19,21
27:12,18
EDWARD- 4:21
EDWARDS- 4:20
EFFECTUATE- 28:14
EFFICIENT- 37:21
EFFORT- 29:20
EFFORTS- 28:5
ELECTRONIC- 46:6
ELIMINATE- 44:19
ELIZABETH- 4:9,14
EMAIL- 43:1
ENGLISH- 25:5,19
ENJOYED- 17:8
ENTER- 24:15 26:7
ENTERED- 10:15
16:15 24:10 32:13
33:15
ENTITY- 16:1
ENTRIES- 4:25
ENTRY- 6:13 23:24
33:8
ENVIRONMENTAL-
10:5
EQUATION- 12:16
EQUITY- 5:24
ESAYIAN- 4:20
ESPECIALLY- 25:3
ESSENCE- 41:1
ESSERMAN- 4:8
ESTATE- 32:16
ESTIMATE-
13:10,15 31:8
ET- 12:19
EVERYBODY- 24:4
43:7
EVERYONE-
42:21,24
EVERYTHING- 11:15
12:9 25:17 26:18
27:23,24
EXCEPT- 25:18
26:20
EXCUSE- 12:21

EXERCISE- 15:10
EXHIBIT- 14:12
29:3
EXHIBITS- 29:25
30:10,14,23
31:5,11,20
EXPLAIN- 8:11
EXPRESSED- 9:8
EXPUNGED- 14:22
16:9,17 19:9,24
EXPUNGEMENT-
16:14 19:9
EXTENT- 23:15
25:14
EXTRA- 28:23

F
FACTO- 16:14
FAIREY- 4:23
FAIRLY- 34:19
FALL- 34:16
FALLING- 13:6
FALLS- 13:1
FAR- 12:19 13:4
21:23 33:7
FASHION- 37:18
FCR- 8:15 41:10
FEBRUARY- 35:15
FEDERAL- 17:6,22
FEELS- 12:19
FELDER- 4:23
FELT- 25:11
FIGURE- 37:17
FILE- 17:14,24
18:2 23:17 25:2,7
FILED- 6:16 7:7
8:6 9:1 11:12,16
14:8 17:8,11,16
18:14 19:1,4
23:16 24:24 25:19
34:16
FILING- 17:15
22:10,11 26:19
FILL- 36:17
FINALLY- 25:25
FINE- 13:18
22:19,21 26:20
29:5,8 35:10
41:16 42:19
FINITE- 30:14
FIRM- 8:21
FIRST- 19:1
FLEXIBILITY-
42:15
FLIGHT- 43:8,16
44:8
FLIGHTS-
44:12,13,16,20
FOLLOW- 40:16
FOLLOWING- 11:5
13:5
FOREGOING- 46:5
FORGET- 6:10,12
FORGETTING- 6:11
FORGOTTEN- 9:16
FORM- 25:18 26:2
37:25
FORMS- 26:11
FORTH- 25:3

FORWARD- 29:23
30:8 35:19 37:1
41:17
FOUND- 33:5
FOUR- 9:1
FRAME- 11:18
FRANCINE- 4:8
FRANKEL- 5:12,13
FRANKLY- 6:20
25:5
FREE- 20:7
FREEDMAN- 4:10
33:21,22 34:3,5,6
35:4 38:7
FRENCH-
25:5,18,19
FRIDAY- 25:2,7
26:5 28:9
FRIDAYS- 44:6,7
FULL- 11:14
FURTHER- 8:15
11:7
FUTURE- 5:13 8:5
23:13,25
FUTURES- 39:11

G
GAINFULLY- 36:19
GARNER- 4:5
GARRISON- 5:21
GENERAL- 13:21
GENERALLY- 13:3
26:17 31:13,15
GENTRY- 4:10
GET- 7:13 9:16
13:12 16:19 19:14
20:16 28:14 29:22
31:5,13,15,17
33:6 35:2 37:11
41:17 42:7,12,17
44:5,8,13,15,20
GETS- 13:9,13
GIVE- 11:15 12:6
13:10,14 18:3
31:8 36:16
GIVEN- 16:24
21:19 34:24
GO- 41:17,22
GONE- 6:24,25
5:2,3,5,7,12,14,1
6,18,20,23,25
GOOD- 4:25 6:2,5
7:1,3 8:9 28:11
30:25 40:13,14
43:15
GOT- 33:4 35:2
43:15
GOVERN- 16:25
GOVERNS- 17:1
GRACE- 4:1 5:2,4
9:2,10 12:25
21:21 22:8
GRANTING- 13:23
37:24
GROUP- 7:6 17:10
GUESS- 22:7 27:21
33:24 41:16 42:7
GUTTMANN- 4:14

H
HALF- 12:5,14,15
45:14
HAND-DELIVER-
26:24 27:2
HANDLED- 17:1
25:15
HAPPEN- 32:23
HARDING- 4:16
HASN'T- 22:3
HAVEN'T- 23:1
31:16 38:21 44:8
HE'S- 18:5,6
HEADQUARTERS-
26:13
HEARD- 23:23 24:9
33:14,23
HEARINGS- 13:3
HELIOTROPIC-
27:21
HELP- 19:14 38:17
HELPFUL- 31:22
 HAS- 5 37:22,24
38:4
HOGAN- 5:25
28:1,3,12,17,18
39:17
HOLD- 36:5,6,13
43:10
HOLDER- 39:24
HOME- 42:7,12
HONOR'S- 21:14
30:9 41:14
HOOKER- 4:11
HOPEFUL- 12:15
31:1
HOPING- 6:25
HORKOVICH- 4:19
HOSPITAL- 5:17
14:14
HOUR- 12:5,18
26:21 27:7 44:6
45:13
HOURS- 22:3
26:14 27:4,14
HOUSEKEEPING-
30:2
HURFORD- 5:10

I
IDEA- 30:8 41:4
IMPASSE- 12:14
IMPOSED- 43:25
INCLINED- 30:19
INDEPENDENT- 17:7
INDICATED- 10:23
32:17
INDICATES- 21:20
25:17
INDICATING- 26:2
30:23
INDIVIDUAL-
14:8,14 15:4 16:1
17:8,11,17 18:10
19:7 20:1 39:24
INDIVIDUALLY-
14:6
INDULGENCE-

43:22,23
INEVITABLE- 41:11
INFORM- 28:9
INFORMATION-
25:20,23 26:10,11
INJURY- 25:14,15
INQUIRE- 14:16
INSTANCES- 43:18
INSTRUCTIONS-
29:18
INSURANCE- 9:3,5
INTENT- 20:15
INTEREST- 18:22
INTERGALACTIC-
15:6
INUKTATUK-
25:5,18
IPSO- 16:14
ISN'T- 26:22
ISSUE- 6:18 8:25
13:15 20:12,17,19
38:13,18
39:13,18,19,21
ISSUES- 7:25 8:16
10:5,6 23:22
32:16 36:23 38:15
40:5,6,7,9
ITEM- 6:6 7:20
8:2 10:1,17 13:21
23:11 24:19 29:12
30:2 32:6,10
ITEMS- 10:13

J
JACOB- 4:16
JAMES- 4:24
JAN- 8:22 31:13
36:18
JANET- 4:22 5:3
JANUARY- 36:2,6,9
JAQUELINE- 4:10
JASON- 4:19
JAY- 4:22
JEFF- 40:14
JENNIFER- 4:22
JIM- 7:1 10:21
JOHN- 4:12,21
JOINT- 30:22
JONATHAN- 4:15
JOSEPH- 4:12,15
JUDGE- 14:18
23:18,25
JUDGMENT- 8:25
13:23 16:10 17:19
JUNIOR- 23:12
JUPITER- 16:19

K
KANG- 4:4
KASPRZAK- 4:11
KATHLEEN- 5:5
KEITH- 5:23
KIM- 4:7
KLEIN- 4:11
KNOWN- 10:24 26:1
KNOWS- 16:4 43:7
KRAMER- 4:17
5:14,24
KRIEGER- 4:18

KRUGER- 5:7

L
LACK- 40:21
LAND- 16:18
LANGUAGE- 21:2
25:6
LANGUAGES-
25:4,21
LATE- 42:16 44:8
LATER- 38:21
44:21
LAUGHTER- 34:7
LAUREN- 4:5
LAVAN- 5:8
LEAVE- 42:22
LEAVES- 32:9
LEAVING- 44:5
LEFT- 39:18
LEFTOVER- 30:3
LEGITIMATE-
20:16,19
LENDERS- 5:22 6:3
31:1
LENDERS'- 29:14
LESLIE- 4:17
LET'S- 22:16
LETTER- 26:1
LEVIN- 5:24
LEVINE- 5:10
LEVY- 4:23
LEWIS- 5:7
LEWISOHN- 4:15
LIFT- 10:2
LIGHT- 34:10
LIMITATIONS- 11:9
12:11,12
LIMITATIONS'-
10:25
LINE- 32:20
34:3,5
LINES- 25:8
LISA- 4:19
LIST- 12:25
14:5,6 30:15
LISTED- 4:3
14:4,19 19:4,5
22:2,3
LISTING- 20:15
LITIGATION- 16:3
18:20 23:19 27:20
29:13
LOOK- 18:17 20:22
25:5
LOOKED- 27:17
LOOKING- 26:9
35:6,13
LOST- 6:20
LOT- 25:3,4
42:10,23 45:4
LUNCH- 45:13,14
LUNCHES- 45:10

M
MAKOWSKI- 5:5,6
MANNAL- 4:14
MANY- 43:25
MARCH- 35:17 36:1
MARGARET- 4:5

MARIE- 4:4
MARION- 4:23
MARK- 4:11,16
5:10
MARTI- 4:20
MARTIE- 4:15
MARTORANA-
5:23,24
MARYLAND- 40:15
MASSACHUSETTS-
6:7
MASTER- 39:13,15
MATELY- 4:21
MATERIAL- 25:1
MATERIALS- 25:9
26:6 28:7,21
MATT- 5:14
MATTER- 4:1 6:8
7:23 8:13 14:16
18:18,20,21,24
19:20,22 21:23
29:20,25 30:7,9
31:6 32:9 37:7
46:7
MATTERS- 10:14
18:19 29:24 30:19
34:19 36:14 40:12
41:6
MATTEY- 4:21
MATTHEW- 4:12,17
MCCARTHY- 4:18
MEANS- 42:14
MECHANISMS- 8:12
MEETING- 29:19
MELANIE- 4:5
MEMO- 6:12
MEMORIAL- 5:17
MEMORY- 12:4
MERE- 18:2
MICHAEL- 4:14
MINNESOTA-
26:14,22 27:7
MIXED- 9:16
MONA- 44:10
MONDAY- 21:20
34:14,20 35:22
44:6,25
MONDAYS- 44:7
MONTHS- 6:11 22:4
MOOT- 13:22 39:21
MOOTED- 13:25
5:1,2,3,5,7,12,14
,16,18,20,23,25
MORNING- 6:2,5
7:1,3 20:8,20
21:22 27:10 30:25
40:13,14
MOTION- 6:19 10:2
13:23 16:10 22:11
23:16 24:25
MOTIONS- 10:25
11:11,12 12:5
22:24
MOVE- 17:19 29:23
30:8
MOVED- 16:11
MOVING- 37:1
MUCH- 11:24 13:5
22:8,14 37:16

MUELLER- 4:22
MUKHERJEE- 4:9
MURRAY- 4:20

— N —

NARA- 10:10
NAUFUL- 4:6 10:10
NECESSARY- 43:23
NEEDED- 40:10
NEGOTIATE- 10:4
NEGOTIATIONS-
31:2
NEVER- 6:23
NEW- 41:10
NEWS- 12:1 28:16
NIGHT- 44:8,25
NIGHTS- 45:4
NOBODY- 33:7
NOMAN'S- 16:18
NORRIS- 4:11
NOTE- 21:19 23:4
NOTICE- 24:22
25:1,10
26:2,11,13 27:3
28:6,21,23 29:3
NOTING- 40:21
NOVEMBER- 6:7
7:24 10:7 11:4,18
12:24 21:20 32:7
34:20 35:7
41:1,15,24

— O —

OBJECTING- 20:14
OBJECTION- 7:22
8:23 9:8,11 12:13
24:8 30:17,21
33:7 38:3
OBJECTIONS- 7:21
8:7,8,15,17 9:18
19:2 23:16,23
24:24 30:16 33:4
34:16,24 37:19,24
41:7
OBJECTORS- 34:15
37:20
OBLIGED- 30:6
OBTAIN- 31:4
OBVIATE- 43:16
OBVIOUSLY-
18:1,21 37:20
OCTOBER- 46:9
OFF-GUARD- 34:9
OFFICE- 26:25
OLD- 27:22
OLIVER- 4:6
OMNIBUS- 7:21
9:15,23 11:4,5,6
22:17 32:12
ONE- 6:19 11:14
12:21 16:19
17:12,24 19:21
20:5 21:23
22:11,23 23:2,18
24:6 26:8,21
28:23 29:3
34:2,13 37:7
38:11 45:3
ONE-LINE- 21:17

ONES- 7:22
ONGOING- 39:10
OPEN- 6:23 26:25
27:4,6,7,12,13
34:3,5 43:2
OPERATOR-
34:1,2,5 42:16,18
OPINION- 13:25
OPPORTUNITY-
41:10
OPPOSED- 45:13
OPPOSITE- 27:21
ORDER- 6:14,24
13:25 15:13 16:15
19:15,24 21:17
23:25 24:10,18
26:5,7
28:9,14,20,22
29:11 32:13,19
33:3,8,12
ORDER'S- 33:15
ORDERING- 34:18
37:18
ORDERS- 7:12
10:15
ORIGINAL- 12:4
26:10
ORIGINALLY- 35:15
OUTSTANDING- 14:5
OVERNIGHT- 44:16
OWENS-
21:22,23,25
OWN- 14:9 19:10
27:19

— P —

PACHULSKI- 5:6
PACKAGE- 26:2
30:22
PAPERS- 7:7
PARSONS- 4:15
PARTICIPANTS- 4:3
PARTICULAR- 43:24
PARTICULARLY-
41:7
PARTIES- 10:6
PARTNER- 34:9
PAST- 33:6 37:22
43:21 44:4
PAUL- 4:11 5:21
PAUSE- 12:22 23:5
24:17 29:1,10
32:4 39:16
PAYOUT- 39:22
PD- 5:15 19:5
23:25 24:21
39:12,14,21
41:8,9
PEG- 4:21
PENDING- 16:11
PENDS- 26:18
PEOPLE- 26:19
42:6,12
PERHAPS- 13:14
34:20,22 38:17
PERNICONE- 4:18
PERSON- 23:13
PERSONAL- 10:4
25:13,15

PERSONALLY- 26:12
PETITIONING- 17:9
PHILLIPS- 4:5,12
PHONE- 4:3 33:21
34:1
PHYSICALLY- 31:16
PI- 5:13 39:14
PIECE- 10:5
21:11,12 22:12
32:13,15
PINK- 6:12
PINPOINT- 38:5
PITS- 45:4
PITTSBURGH- 12:24
13:9 42:6 43:15
44:9
PLACE- 16:24 29:2
PLAINLY- 26:3
PLAN- 8:8,11,14
9:6 14:11,12,21
15:17 16:3 19:4
20:12,15,22,23
25:15 32:23
35:6,11 37:2
44:16
PLAYERS- 9:10
PLAZA- 4:7
PLEVIN- 4:16
PLUTO- 16:19
PM- 26:15,21
POINTED- 15:16
POLICIES- 9:3,5
POP- 21:25
POSED- 24:7
POSITION- 14:20
16:7,13,16 30:20
33:11 41:23 42:6
POSSIBILITY-
31:18
PRACTICE- 18:18
19:20,22
PREJUDICED- 8:24
PREPARED- 31:9
PRESENT- 21:9
35:20
PRESS- 35:19
PRESSED- 37:11
PREVIOUSLY- 14:14
PROBABLY- 8:10
9:14 19:24 22:1
30:12 37:23 42:10
43:9,19
PROBLEM- 27:11
33:2
PROBLEMATIC-
36:25
PROCEDURE- 16:24
17:6,22
PROCEED- 19:10
30:4
PROCEEDINGS- 17:2
19:3 42:2 46:6
PROCESS- 38:8
PRODUCE- 34:18
PROGRAM- 24:22,23
27:3 28:6
PROMINENTLY-
25:11
PROMISE- 44:10

PROMPTLY- 31:17
PROOF- 17:16 19:5
24:22 25:18
26:1,11
PROOFS- 14:8
17:15,21
18:3,8,9,12
19:1,2,3,21 21:6
PROPERTY-
10:5,14,19,22
13:20 14:1 22:12
23:13,14 32:14,15
38:25 39:3,5
PROPOSED- 9:6
14:12,21 19:4
33:13
PROSECUTE- 15:21
PROVIDED- 8:22,23
PUBLICATION-
24:23
PURELY- 39:19
PURPORTED- 16:25
PURPOSES- 15:7
16:5
PURSUANT- 29:18
PURSUE- 17:23
PURSUING- 16:1
PUSH- 43:14

— Q —

QUESTION'S- 16:23
QUIT- 44:11

— R —

RABINOVITZ- 4:8
RADECKI- 4:16
RAE- 4:23
RAISE- 38:13
39:18 40:12
RARE- 25:6
RATHER- 25:6
42:25
REACH- 12:14
36:18
REACHED- 7:5
READILY- 41:6
READING- 38:19,20
REARGUE- 10:24
11:7,10,16
REASON- 16:22
28:8 41:13
REBUTTAL- 12:19
RECEIVE- 30:19
RECEIVED- 28:9
RECENT- 9:9
RECENTLY- 9:4
RECOLLECTION- 7:8
12:4
RECONSIDERATION-
6:19
RECORDING- 46:6
REFLECTED- 25:8
REGULAR- 11:8
12:12 25:15
REGULARLY- 13:7
RELATE- 10:25
RELUCTANT- 36:15
REMAIN- 10:19
REMAINING-

7:13,21 11:1 15:2
19:5
RENDERED- 13:22
REORGANIZATION-
14:11,12 32:24
REORGANIZED- 9:4
REP- 25:11,25
REPETITIVE- 8:25
REPLY- 12:19
REPORT- 10:18,22
13:16,19
14:1,4,23 15:2
29:18
REPRESENTATIVE-
5:13 8:5 17:9,12
23:13 24:1,25
25:23 26:12 39:12
40:2
REQUEST-
17:4,5,17
REQUESTS- 7:23
RESERVATIONS-
44:4
RESERVE- 22:22
RESOLVE- 12:13,15
18:23 19:10 20:20
29:20 34:19,25
41:8
RESOLVED- 16:19
21:10 29:22 34:20
41:6
RESOLVING- 15:9
RESORBED- 35:16
RESPECT- 8:6,16
10:22 15:8,22
17:19 18:19 23:22
29:13 30:21 32:15
33:12 35:11,12
39:11,12 41:7,9
RESPOND- 14:3
20:23
RESPONSE- 24:9
33:14,23 38:3
RESPONSES- 7:22
RESTATED- 33:8
RESTIVO'S- 14:4
RESULT- 23:24
24:7 25:7
RESUME- 30:5
RETURN- 13:17
REVISED- 26:5,6
REVISION- 26:9
RICHARD-
4:17,23,24 6:2
RICK'S- 30:12
RIFKIN- 5:21
RIGHTS- 8:24
15:10
RISES- 38:3
RISK- 8:24
ROAD- 30:5 35:13
ROBERT- 4:14,18
ROGER- 5:12
ROSENBERG- 4:7
5:20,21
ROW- 37:8
RULE- 17:1 18:4
RULED- 15:21
RULES- 16:24

17:6,22
RULING- 31:4
RUN- 44:9
RUNYAN- 4:6 7:5
RUSH- 44:5
RYANS- 7:15

S

SAKALO- 4:22
SALE- 10:4
32:13,14
SANDER- 4:8
SANDERS-
23:12,18,25
SAW- 24:6 27:17
SCHEDULE- 13:1
22:17 34:21 43:16
SCHEDULED-
21:21,22 40:17
SCHEDULES- 44:9
SCHEDULING- 11:3
34:12 42:23
SCHWARTZ- 4:12
SCOTT- 4:13
SCOTTS-
8:3,6,11,18,21,23
9:2
SCOTTS'- 8:24
SEALED- 5:19
SEARCH- 38:5
SECOND- 12:21
29:2 34:22 41:25
43:17,21 44:4
SEE- 24:4 26:9
29:20 36:20 45:18
SEEK- 17:18 19:15
SEEKING- 16:2
17:12
SEEN- 24:4 31:16
39:19
SELL- 22:12
SEPARATE- 11:19
17:10,13,14,15,16
,23,24
15:25 18:21
SEQUENCE- 34:18
35:21
SERIES- 34:16
SERIOUSLY- 42:18
SERVICES- 13:21
SET- 11:3,24
16:17 24:20 34:13
35:15 42:8,17
43:1
SETTLE- 30:6
SETTLED- 6:16 7:9
10:14 23:1 30:7
SETTLEMENT- 7:7
28:10 32:22,25
39:20,23
SETTLEMENTS-
7:4,13
SEWER- 32:15
SHAPIRO- 4:19
SHAYNE- 4:4
SHE'LL- 43:1
SHEET- 30:23
SHELNITZ- 4:11
SHOOTING- 35:20

SHOW- 26:24 38:2
SIDE- 22:23
SIDES- 29:19
SIEGEL- 4:6
SIGN- 28:22
SIGNED- 7:13
24:18 28:13 29:11
SIMPLY- 11:16
13:24 24:6 38:15
SIT- 20:20
SITE- 25:20
SITUATION- 10:3
SIX- 11:13
SKADDEN- 5:19
SKEPTICALLY- 35:6
SLIGHT- 25:10
SMALL- 22:12
SMITH- 4:6
SO-CALL- 14:9
SOLGANICK- 4:19
SOLICITATION-
38:13
SOPHIE- 4:7
SOUGHT- 18:2
SOUND- 46:6
SOUNDING- 8:25
SOUTH- 10:2 14:10
15:5 23:19
SPECIFIC- 40:6
SPECIFICALLY-
32:21
SPEIGHTS'S- 16:6
17:21 18:14
SPENCER- 4:5
SPILL- 40:22
SPOKEN- 11:7
STAFF- 6:10,17,22
22:5 31:24 35:9
36:8 43:24
STAMPED- 24:2
STAND- 18:10
19:21,25 20:1,4
28:8
START- 13:2 44:24
45:1,6
STATE- 38:15
STATEMENT-
8:7,14,16
9:8,13,17,18,21
15:24 20:14
21:3,9 30:17
34:11,18,23
35:21,24 37:19
38:12
STATUTE- 10:25
11:9 12:11,12
STAY- 10:3 44:16
STAYING- 9:3 13:4
STICK- 31:23
STOP- 17:15
44:15,19,22,23
STRANGE- 27:17
STRICKEN- 20:2
STROOCK- 5:8
STRUCK- 6:19
STRUCTURAL-
40:7,9
STRUCTURALLY-
40:5

STUCK- 42:25
STUDYING- 34:17
35:1
SUBMITTED- 6:15
30:1,22 32:20
SUBSEQUENT- 41:14
SUBSTANTIAL-
18:20
SUCCESSFUL- 17:9
35:23
SUDDEN- 17:18
SUFFICIENT-
11:19,22 22:24
SUFFICIENTLY-
37:17
SUMBERG- 5:15
SUMMARY- 13:23
16:10 17:19
SUNDAY- 45:4
SUPPLEMENTAL-
23:17,20 24:3
SUPPOSE- 17:23
43:11
SUPPOSED- 6:15
SUSETTE- 4:6

T

TARA- 4:5
TAX- 6:7 32:16
TED- 35:2
TELEPHONE- 43:18
TELLS- 6:17
TEMPTATION- 43:12
TERENCE- 4:20
TERESE- 4:18
TERMS- 8:9 20:13
THEODORE- 4:10
34:3
THEORY- 18:7,9
THEREFORE- 11:10
THOROUGH- 29:19
THREE- 14:7,8,13
18:9,11 19:1,3,20
20:15,16 21:6
25:4,21 36:25
37:2,8
THURSDAY- 23:17
TIFFANY- 4:3 8:20
TIL- 9:12,22 10:7
TIMELY- 37:17
TIMES- 43:25
TODAY- 13:1
14:3,6 16:5 18:23
20:24 21:14 22:10
40:12
TOGETHER- 30:15
TOOK- 12:5 35:14
TOTAL- 11:13
TOUCH- 37:12
TOWN- 32:14,18,19
42:22,25
TRACI- 4:23
TRACK- 6:20
TRADITIONAL-
23:14
TRAFFIC- 44:6
TRANSCRIPT-
31:9,13 46:5
TRANSCRIPTS-

11:13 46:10
TRANSLATED- 25:17
TRAVELING- 45:4
TREATMENT- 15:24
TRIAL- 16:10,17
TRIED- 44:8
TRIGGER- 21:12
TRIP- 18:21
TRUST- 25:16
TUESDAY- 21:21
34:14
TURETSKY- 5:18,19
TURNS- 41:23
44:23
TWO- 11:13
14:7,17,24 15:12
19:8,10 22:23
34:13
TYPOS- 33:5

U

ULTIMATE- 10:24
11:10 12:11
35:12,25
ULTIMATELY- 35:23
UNDERSTOOD- 35:13
UNFORTUNATELY-
31:2
UNIDENTIFIED-
39:5
UNITED- 7:6
UNSECURED- 5:8
UPDATE- 8:22

V

VAN- 4:11
VARIETY- 38:5
VARIOUS- 25:1
28:21
VERSION- 27:22
VIDEO- 42:1
VIEW- 15:20 34:17
35:24
VORYS- 8:20
VOTE- 35:24 39:15
VOTED- 39:23
VOTES- 20:16
VOTING- 20:14
39:19,22

W

WAIT- 12:8
WAITING- 6:24
WANTING- 32:18
35:18
WANTS- 12:11
16:18 19:14 20:7
WE'RE- 12:23
18:22 21:14 22:2
34:17 35:1,20,23
36:4 40:23,24,25
41:24 42:24 43:12
45:20
WEB- 25:20
WEEK- 13:3 31:15
34:11 38:14 40:20
41:5 45:18
WEEKEND- 38:7
WEIGH- 41:10

**WEISS-** 5:21
**WELCOME-** 28:17
**WESCHLER-** 4:17
**WESTBROOK-** 4:22
**WHARTON-** 5:21
**WHATSOEVER-** 18:3
**WHITENER-** 4:23
**WILLING-** 30:6
44:24
**WILMINGTON-** 14:3
**WISH-** 11:7
**WISHES-** 17:23
**WISLER-** 40:14
**WON'T-** 44:1,10
**WORDING-** 25:10
**WORDS-** 25:11
**WORK-** 7:24 8:14
10:6 42:21
**WORLDWIDE-** 14:9
**WORRIES-** 9:3
**WORRY-** 7:10
**WR-** 4:1
**WRITE-** 29:4
**WRITING-** 7:6
**WYRON-** 4:24

Y

**YEAR-** 22:7
**YEARS-** 9:1
**YOU'LL-**
44:4,14,20,22
**YOU'RE-** 22:8
28:10,17 30:18
35:6 37:1 40:21
42:4,5 43:6
44:12,25

Z

**ZAI-** 23:14 25:14
38:24,25
39:2,5,11,21
**ZIA-** 24:21
**ZONE-** 27:19