W. R. Grace & Co. et al.
District of Delaware, Bankruptcy Case No. 01-01139
**<u>Exhibit A</u>**

Compromise and Settlement Agreement Between
W.R. Grace & Co. and the Tersigni Parties

## COMPROMISE AND SETTLEMENT AGREEMENT

**THIS COMPROMISE AND SETTLEMENT AGREEMENT**, dated as of October___, 2008 (the "Agreement"), is made and entered into by and between W.R. Grace & Co. ("Creditor"), Nancy Tersigni, in both her individual capacity and in her capacity as Executrix of the Estate of Loreto T. Tersigni (the "Tersigni Probate Estate"), pending in the State of Connecticut Court of Probate, District of Stamford, District No. 135 (the "Probate Court"), Elizabeth Tersigni, in her individual capacity, and L. Tersigni Consulting CPA, P.C. ("LTC"), the debtor in Case No. 07-50702 (AHWS), currently pending in the U.S. Bankruptcy Court for the District of Connecticut, Bridgeport Division (the "LTC Bankruptcy Estate").  For purposes of this Agreement, Creditor, Nancy Tersigni, Elizabeth Tersigni, the Tersigni Probate Estate and the LTC Bankruptcy Estate shall each be referred to as a "Party" and shall collectively be referred to as the "Parties."  Nancy Tersigni, the Tersigni Probate Estate and Elizabeth Tersigni shall be collectively referred to as the "Tersigni Parties."

## RECITALS:

**WHEREAS**, Creditor commenced a voluntary case (the "Creditor Bankruptcy Case") in the Bankruptcy Court for the District Delaware (the "Creditor Bankruptcy Court") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code");

**WHEREAS**, the United States Trustee appointed an Official Committee of Asbestos Claimants (the "Committee") in the Creditor Bankruptcy Case;

**WHEREAS**, the Creditor Bankruptcy Court approved the Committee's retention of LTC as the Committee's financial advisor in the Creditor Bankruptcy Case;

**WHEREAS**, LTC submitted fee applications for fees and expenses for services it claimed to have provided in its role as the Committee's financial advisor in the Creditor Bankruptcy Case, and pursuant to orders of the Creditor Bankruptcy Court, Creditor has paid LTC $4,855,994.41 on account of such claimed fees and expenses;

**WHEREAS**, Loreto Tersigni, the President and sole shareholder of LTC, died on May 30, 2007.

**WHEREAS**, subsequent to Loreto Tersigni's death, Creditor became aware that investigations were pending regarding possible improprieties in LTC's billing practices in the Creditor Bankruptcy Case;

**WHEREAS**, a report issued by a law firm engaged by LTC to investigate its billing practices (the "Heller Ehrman Report"), suggested that LTC may have engaged in a pattern of increasing the amount of time actually reported by LTC's employees for the purpose of increasing the amount of fees LTC requested in fee applications in the Creditor Bankruptcy Case (the "Alleged Overcharges");

**WHEREAS**, on November 14, 2007, LTC filed a voluntary petition under chapter 11 of title 11 of the Bankruptcy Code (the "LTC Bankruptcy Case"), in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division (the "LTC Bankruptcy Court");

**WHEREAS**, Hugh Ray (the "Examiner") was appointed by the LTC Bankruptcy Court as an examiner to further investigate and report on the Alleged Overcharges in the LTC Bankruptcy Case;

**WHEREAS**, on March 26, 2008, the Examiner filed the First Report of Hugh M. Ray, Court-Appointed Examiner (the "Examiner's Report"), regarding the Alleged Overcharges;

**WHEREAS**, the LTC Bankruptcy Estate currently asserts a claim against Creditor for unpaid fees and expenses in the amount of $195,144.90, in connection with professional services claimed to have been rendered by LTC in the Creditor Bankruptcy Case (the "LTC Claim");

**WHEREAS**, Creditor has filed a proof of claim, or has asserted a claim, in the LTC Bankruptcy Case in the unliquidated amount of up to $4,855,994.41, based upon the Alleged Overcharges (the "Creditor Bankruptcy Claim");

**WHEREAS**, Creditor has filed a proof of claim, or has asserted a claim, against the Tersigni Probate Estate in an unliquidated amount of up to $4,855,994.41 in connection with the Alleged Overcharges (the "Creditor Probate Claim").

**WHEREAS**, the Parties desire to settle the various claims described above upon the terms and conditions of this Compromise and Settlement Agreement; and

**WHEREAS**, the Parties agree this Settlement Agreement does not constitute an admission of wrongdoing by any Party;

**NOW THEREFORE**, in consideration of the mutual promises and agreements contained herein, the Parties hereby contract, covenant and agree, subject to approval by the LTC Bankruptcy Court and, if required, the Creditor Bankruptcy Court, of this Settlement Agreement, as follows:

1.  Settlement Amount. Within seven business days of the date on which this Settlement Agreement is effective as set forth in paragraph 3 below, the Tersigni Probate Estate, will pay to Creditor the sum of $365,531.56 (the "Settlement Payment"), in full settlement of any and all claims of Creditor against LTC and the Tersigni Parties. The Settlement Payment shall be delivered to counsel for Creditor in certified funds payable to Creditor. All deadlines with respect to taking action against the Tersigni Probate Estate shall be tolled from the date of this Agreement until the Settlement Payment is made to Creditor.

2.  Waiver of LTC Claim. The LTC Bankruptcy Estate waives payment on the LTC Claim.

3.  Court Approval. Notwithstanding anything to the contrary herein, this Agreement shall not become effective until (1) the LTC Bankruptcy Court and, if required,

the Creditor Bankruptcy Court, have entered orders approving this Agreement and (2) the LTC Bankruptcy Court has entered an order approving and authorizing an agreement among the LTC Bankruptcy Estate, the Probate Estate and Nancy Tersigni providing for (i) the payment in full by the Tersigni Probate Estate of all Administrative Claims against the LTC Bankruptcy Estate (as set forth in said agreement), incurred up to the date of a determination of the application for dismissal of the LTC Bankruptcy Case referred to in (iii) below, to the extent that the LTC Bankruptcy Estate shall have insufficient immediately available funds to satisfy such claims, (ii) a commitment by the Tersigni Probate Estate to resolve or otherwise provide for the unsecured claims against the LTC Bankruptcy Estate listed in said agreement, (iii) a commitment by LTC to make application for dismissal of the LTC Bankruptcy Case after payment of the Settlement Payment and in accordance with the terms of the agreement among the LTC Bankruptcy Estate, the Probate Estate and Nancy Tersigni and   (iv) a release of the LTC Bankruptcy Estate by the Tersigni Parties. In that the LTC Bankruptcy Estate is being administered in the LTC Bankruptcy Court, this Agreement shall, in the first instance, be submitted for approval to the LTC Bankruptcy Court. Thereafter, if approved by the LTC Bankruptcy Court, it will be submitted, if required, to the Creditor Bankruptcy Court. Such submission for approval by the Creditor Bankruptcy Court, if required, shall be promptly made and prosecuted by Creditor after approval by the LTC Bankruptcy Court.

4.    <u>Mutual Releases.</u>

A.    Upon Creditor's Counsel's receipt of the Settlement Payment, Nancy Tersigni, Elizabeth Tersigni, the Tersigni Probate Estate and LTC, for the consideration described in this Agreement, the sufficiency of which they hereby acknowledge, each hereby forever discharge and release, for themselves and their heirs, executors, administrators, successors and assigns (the "Tersigni Releasors"), Creditor and the bankruptcy estate in the Creditor Bankruptcy Case, and all of their present and former members, officers, trustees, directors, shareholders, managers, affiliates, employees, attorneys, agents, representatives, insurers, and all of their respective successors and assigns (the "Creditor Releasees"), of and from any and all claims, causes of action, debts, accounts, liens, controversies, covenants, promises, judgments, lawsuits, rights, charges, obligations, and demands whatsoever, and in whatever capacity, whether sounding in contract or tort or by statute, in law or in equity, that any of the Tersigni Releasors have, had, or may have against any of the Creditor Releasees, in whatever capacity, whether now known or unknown, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time until the date of execution of the Agreement, including without limitation, any claims of indemnity which may be asserted by third parties, arising out of or related to LTC's services as the Committee's financial advisor in the Creditor Bankruptcy Case; <u>provided, however,</u> that the discharges and releases contained in this Agreement shall not affect, discharge or release any rights or obligations that the Parties have with respect to this Agreement, and further <u>provided, however,</u> that the terms

3

"attorneys," "agents," or "representatives," as used herein, shall not be construed, in any way, to include the Committee or its counsel.

B.    Upon Creditor's Counsel's receipt of the Settlement Payment, Creditor and the bankruptcy estate in the Creditor Bankruptcy Case, for the consideration described in this Agreement, the sufficiency of which they hereby acknowledge, each hereby forever discharge and release, for themselves and their heirs, executors, administrators, successors and assigns (the "Creditor Releasors"), Nancy Tersigni, Elizabeth Tersigni, the Tersigni Probate Estate and LTC, and all of their present and former members, officers, trustees, directors, shareholders, managers, affiliates, employees, attorneys, agents, beneficiaries, representatives, insurers, and all of their respective successors and assigns (the "Tersigni Releasees"), and the LTC Bankruptcy Estate, of and from any and all claims, causes of action, debts, accounts, liens, controversies, covenants, promises, judgments, lawsuits, rights, charges, obligations, and demands whatsoever and in whatever capacity, whether sounding in contract or tort or by statute, in law or in equity, that any of the Creditor Releasors have, had, or may have against any of the Tersigni Releasees, in whatever capacity, and the LTC Bankruptcy Estate, whether now known or unknown, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time until the date of execution of the Agreement, including without limitation, the Creditor Bankruptcy Claim and the Creditor Probate Claim, arising out of or related to LTC's services as the Committee's financial advisor in the Creditor Bankruptcy Case; provided, however, that the discharges and releases contained in this Agreement shall not affect, discharge or release any rights or obligations that the Parties have with respect to this Agreement, and further provided, however, that the terms "attorneys," "agents," or "representatives," as used herein, shall not be construed, in any way, to include the Committee or its counsel.

C.    Upon Creditor counsel's receipt of the Settlement Payment, the LTC Bankruptcy Estate, for the consideration described in this Agreement, the sufficiency of which it hereby acknowledges, hereby releases the Tersigni Releasees and the Creditor Releasees of and from any and all claims, causes of actions, debts, accounts, liens, controversies, covenants, promises, judgments, lawsuits, rights, charges, obligations and demands whatsoever and in whatever capacity, whether surrounding in contract or tort or by statute, in law or in equity, that the LTC Bankruptcy Estate has, had or may have had against any of the Tersigni Releasees, in whatever capacity, or the Creditor Releasees, whether now known or unknown, for, upon or by reason of any matter, cause or thing whatsoever from the beginning of time until the date of execution of the Agreement, arising out of, connected with or relating to the Creditor Bankruptcy Claim and the Creditor Probate Claim to the extent of the amount of the Creditor Bankruptcy Claim and the Creditor Probate Claim, arising out of or related to LTC's services as the Committee's financial advisor in the Creditor Bankruptcy Case; provided, however, that the discharges and releases contained in this Agreement shall not affect, discharge or release any rights or obligations that the Parties may have with respect to this Agreement.

4

D. The discharges and releases contained in this Agreement are self-effectuating and no further documentation is necessary for them to become effective.

5. Dissolution of Settlement Agreement. If in the LTC Bankruptcy Case the Tersigni Parties and the LTC Bankruptcy Estate enter into a settlement with any other entity holding claims similar to that of Creditor on terms that are more favorable than the terms provided to Creditor in this Agreement, the Tersigni Parties will notify Creditor within two (2) business days of the date of the execution of such Settlement Agreement, and Creditor, in its sole discretion, may opt to dissolve the Agreement. In the event the Agreement is dissolved, the Parties agree to take whatever steps necessary to return the Parties to the position that they would be in had no settlement been affected, and Creditor will be free to take whatever actions that are necessary and appropriate to recover on the full amount of the Creditor Bankruptcy Claim and the Creditor Probate Claim.

6. No Waiver. No waiver of rights under this Agreement will be effective unless in writing and signed by the Party to be charged. Failure to enforce any right with respect to a specific act or failure to act shall not constitute a waiver of that or any other right hereunder. Waiver of a breach of this Agreement shall not constitute a waiver of any other prior or subsequent breach.

7. Advice of Counsel. The Parties further acknowledge that they have been fully advised with respect to their rights and obligations under this Agreement by counsel of their own choosing retained by each Party. The Parties have each consulted with counsel of their choosing and have had adequate opportunity to make whatever investigation or inquiry each deems necessary or desirable with respect to the subject matter and terms of this Agreement.

8. Third Parties. No third parties are intended beneficiaries of this Agreement or entitled to enforce its provisions, except (i) the persons and entities specifically included in the term "Parties" in the paragraph of this Agreement relating to exchanging Mutual Releases and (ii) the Tersigni Releasees and Creditor Releasees specified in this Agreement. This Agreement shall be binding upon the Parties and their respective heirs, successors and assigns. Creditor is specifically reserving all of its rights against all parties not named, or released by Creditor, in this Agreement.

9. No Prior Transfers. Each Party warrants that it has not made any assignment or other transfer of any of the actions and causes of action, damages, promises, expenses, claims and/or demands that are released and discharged forever pursuant to the Agreement.

10. Due Authorization. Subject to obtaining the Court approvals referenced in paragraph 5 hereof, each Party to the Agreement represents and warrants that its execution, delivery, and performance of the Agreement have been duly and validly authorized by all necessary corporate action.

11. <u>The Governing Law.</u>  The Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Connecticut without regard to conflicts of law principles.  The Parties submit to the jurisdiction of the state or federal courts located within the State of Connecticut for the resolution of any dispute that arises under or is related to the Agreement.  In any action to enforce the terms and provisions of the Agreement, the non-prevailing party shall pay the reasonable fees and expenses of the prevailing party, including reasonable attorneys' fees.

12. <u>Entire Agreement.</u>  The terms and conditions set forth in this Agreement constitute the complete statement of the agreement between the Parties relating to this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties mutually intend that this Agreement constitutes the complete statement of the terms as between the Parties hereto, and that no extrinsic evidence whatsoever involving this Agreement may be introduced in any judicial proceeding between the Parties.  The terms of this Agreement are contractual and not a mere recital.  The Agreement may not be altered, amended, modified, superceded, cancelled, or terminated except by express written agreement duly executed by the Parties.

13. <u>Further Assurances.</u>  The Parties hereto shall execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Agreement.

14. <u>Counterparts.</u>  This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which together shall constitute one and the same document.  Facsimile and scanned signatures are effective hereunder.

15. <u>Captions.</u>  The titles or captions of the paragraphs or sections contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, extend, or describe the scope of this Agreement or the intent or meaning of any provision hereof.

16. <u>Notices.</u>  All notices to be sent in connection with this Agreement must be made in writing, and must be made in person or sent by certified or registered mail, or national overnight courier to:

If to Creditor, to:

Ilan Markus, Esq.
LeClairRyan, A Professional Corporation
555 Long Wharf Drive, 8th Floor
New Haven, CT 06511

with a copy to:

Janet S. Baer, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL 60601

If to Tersigni Parties, to:

Nancy Tersigni
125 South Brook Drive
Stamford, CT 06903

with a copy to:

Meyers Tersigni Feldman & Gray LLP
14 Wall Street, 19th Floor
New York, NY 10005
Attn: Anthony L. Tersigni

If to the LTC Bankruptcy Estate, to:

Nancy Tersigni
125 South Brook Drive
Stamford, CT 06903

With copy to:

M. Stuart Goldberg, LLC
81 Main Street, Suite 205
White Plains, NY 10601
Attn: Marc Stuart Goldberg


**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the dates indicated below.

**W.R. Grace & Co., Creditor**

By: RICHARD C. FINKE
Its: ASSISTANT GENERAL COUNSEL
Dated: 10/16/08

7

**Nancy Tersigni as an Individual**

_____

By:
Dated:

**Nancy Tersigni as Executrix**

_____

By:
Dated:

**Elizabeth Tersigni as an Individual**

_____

By:
Dated:

**L. Tersigni Consulting CPA, P.C. (the Debtor-in-Possession)**

_____

By:
Dated:

8