THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: November 26, 2008 at 4:00 p.m.**
**Hearing Date:  December 15, 2008 at 1:00 p.m.**
**(in Pittsburgh, PA)**

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING STIPULATION RESOLVING PROOF OF CLAIM #12789

The Debtors respectfully request entry of an order authorizing their entry into a

stipulation (the "Stipulation," a copy of which is attached hereto as Exhibit A) with Tyco

Healthcare Group LP d/b/a Covidien (the "Claimant") resolving Claim No. 12789.  In support of

the Motion, the Debtors respectfully state as follows:

---

[1]  The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.      On or about March 27, 2003, the Claimant filed two identical unsecured, non-priority proofs of claim (the "Proofs of Claim") against two of the Debtors. The Proofs of Claim relate to the Blackburn and Privileges Superfund Site (the "Site"), located at South Street in Walpole, Massachusetts. The Proofs of Claim were numbered 12787 and 12789 by the claims agent in these chapter 11 cases.

4.      Claim No. 12787 was expunged by an order expunging certain claims in connection with the Debtors' Twenty-First Omnibus Objection to Claims.

5.      Claim No. 12789 alleges damages in an amount of not less than $2,833,655.18 under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., for response costs incurred and to be incurred by Claimant at the Site.

6.      The Site is designated as a Superfund Site by the United States Environmental Protection Agency ("U.S. EPA"), and the Debtors and Claimant are each former owners and operators of manufacturing operations at the Site, dating back to the early 20th century.

7.      The U.S. EPA has also asserted a claim against the Debtors with respect to the Site (the "U.S. EPA Claim"). This claim has been designated Claim No. 9634 by the claims

2

agent in these chapter 11 cases. The U.S. EPA Claim alleges future oversight costs and cleanup obligations in a range of $12.6 million to $22.6 million with respect to the Site.

8.      On June 2, 2008, the Court approved a *Settlement Agreement Resolving the United States' Proof of Claim Regarding Certain Environmental Matters* (the "EPA Multi-Site Agreement"). While the EPA Multi-Site Agreement resolved most of Claim No. 9634, it provides the Debtors with certain limited rights to object to the U.S. EPA Claim in connection with the Site.

9.      On or about September 30, 2008, the U.S. EPA completed a remedial investigation and feasibility study with respect to the Site and issued a Record of Decision (the "ROD") selecting remedial alternatives to be performed at the Site.

10.      The Debtors and the Claimant anticipate that the U.S. EPA will issue an order under CERCLA to the Debtors or the Claimant, or enter into negotiations with the Debtors and the Claimant seeking agreement to enter into a consent decree with respect to the Site. Either of these alternatives would require the Debtors and the Claimant to implement, or pay the cost of implementing, the response actions identified in U.S. EPA's ROD for the Site and likely would require reimbursement of all or a portion of U.S. EPA's additional past costs (collectively, the "Response Costs").

11.      In addition, the Debtors and the Claimant anticipate that they could incur additional costs associated with the Site from claims for natural resources damages under CERCLA or Massachusetts state law (the "Other Costs").

12.      The Debtors and the Claimant now desire, without any admission of fact, law or liability, to resolve Claim No. 12789 on the terms set forth in the Stipulation and described in more detail below.

3

**Settlement**

13.     The Stipulation resolves Claim No. 12789 by allowing Claim No.12789 as a
general unsecured claim and providing for the same treatment of Claim No. 12789 as other
similarly situated general unsecured claims under any confirmed plan of reorganization, except
with respect to interest, which shall begin to accrue on December 27, 2007, as provided in the
Stipulation.

14.     The Stipulation allocates responsibility for past and future response costs under
CERCLA at the Site on a 50:50 basis between Claimant and Debtors.  The exact terms of the
Stipulation are described in more detail below.

15.     On or before December 31, 2007, the Claimant had incurred outstanding past
costs for the Site in the amount of $5,358,103.07.  Under the terms of the Stipulation, the
Debtors have agreed that Claimants shall have an Allowed General Unsecured Claim in the
amount of $2,679,051.54 which constitutes 50 percent of the outstanding past costs.  The
Allowed Claim in this amount will be paid by the Debtors on the effective date of Debtors'
confirmed plan of reorganization (the "Plan Effective Date").

16.     The Debtors or Claimant may also have incurred or may incur additional costs for
the Site for the time period from January 1, 2008 until the effective date of the Stipulation.
These costs are currently unknown.  If either the Debtors or the Claimants have incurred
additional costs for this time period, the party claiming such additional costs shall identify them
in writing to the other party within thirty (30) days following the effective date of the Stipulation.
Once the additional costs are identified and the additional costs are approved as provided for in
the Stipulation, the Debtors and the Claimant will allocate such additional costs on a 50:50 basis
and to the extent the Debtors owe Claimant for any such costs, they will also be paid as Allowed
General Unsecured Claims on the Plan Effective Date.

4

17.     Debtors and the Claimant may also owe additional costs to the U.S. EPA for past or present remediation between the effective date of the Stipulation and the Plan Effective Date with respect to the Site pursuant to a consent decree or order entered into with the U.S. EPA.  If the U.S. EPA seeks any additional costs, the Debtors and the Claimant agree to work cooperatively to negotiate with the U.S. EPA to reach an agreement to undertake the response actions identified by the U.S. EPA.  Any additional costs owed to the U.S. EPA between the effective date of the Stipulation and the Plan Effective Date will also be split on a 50:50 basis between the Debtors and the Claimant and Debtors shall pay its portion to the U.S. EPA as a General Unsecured Claim on the Plan Effective Date.

18.     Finally, the Debtors and the Claimant may incur ongoing costs after the effective date of the Stipulation with respect to the Site.  The amount of any ongoing costs, if any, is unknown at the present time.  The Debtors and the Claimant agree to split any ongoing costs on a 50:50 basis.  Any ongoing costs with respect to the Site constitute administrative claims and will be paid immediately (*i.e.*, before or after the Plan Effective Date) upon receipt of appropriate documentation by either party as provided in the Stipulation.

### Relief Requested

19.     By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (a) approving the Debtors' execution of the Stipulation; (b) allowing Claim No. 12789 in the sums provided for in the Stipulation; (c) granting the Debtors authority to consummate the transactions contemplated in the Stipulation, including the use of the Debtors' estate property and resources necessary to undertake the performance of the work set forth in the Stipulation; and (d) granting such other relief as may be appropriate.

5

## Basis for Relief

## Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a)

20.     This Court has the statutory authority to authorize and approve the Stipulation,
and the incurrence of costs and expenses contemplated therein, pursuant to Bankruptcy Code
sections 105(a) and 363(b) and Bankruptcy Rule 9019.

21.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court
may issue any order, process, or judgment that is necessary or appropriate to carry out the
provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

22.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he
trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of
business, property of the estate...." 11 U.S.C. §363(b)(1). This Court may authorize the Debtors
to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such
use is an exercise of the debtor's sound business judgment and when the use of the property is
proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In
re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Lionel
Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d 513, 515 (7th Cir.
1991) (a debtor's decision must be supported by some "articulated business justification");
Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound
business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery
Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc.,
209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

23.     A settlement of claims and causes of action by a debtor in possession constitutes a
use of the property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d

346, 350 (3d Cir. 1999). If a settlement is outside the ordinary course of business of the debtor,

it requires the approval of the bankruptcy court pursuant to Bankruptcy Code section 363(b).

24.    Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the

trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed.

R. Bankr. P. 9019(a).   Settlements and compromises are "a normal part of the process of

reorganization."   Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.

Anderson, 390 U.S. 414, 424 (1968) (citations omitted). Indeed, compromises are favored in

bankruptcy since they minimize litigation and expedite the administration of a bankruptcy case.

See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., 2006

WL 2842462, at *3 (D. Del. 2006).

25.    Before approving a settlement under Bankruptcy Rule 9019, however, a court

must determine that the proposed settlement is in the best interests of the debtor's estate. See

Martin, 91 F.3d at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998)

("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of

the estate.'") (citation omitted). To reach this determination, the court must assess the value of

the claim that is being settled and balance it against the value to the estate of the approval of the

settlement. See Martin, 91 F.3d at 393.

26.    The standard by which courts should evaluate the reasonableness of a proposed

compromise and settlement is well established. This standard includes consideration of the

following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in

collection; (3) the complexity of the litigation involved, and the expense, inconvenience and

delay necessarily attending it; and (4) the paramount interest of the creditors." Id.; see also In re

Nutraquest, Inc., 434 F.3d 639, 644-45 (3d Cir. 2006).

7

27.    It is also well settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)).    Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 296 (citations omitted); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

### Application of Standards for Approval of a Settlement to the Facts of This Case

28.    The Debtors have determined that entry into the Stipulation is in the best interests of the Debtors and their estates.    The Stipulation was the process of a rigorous negotiation process, is fair and reasonable, and is within the reasonable range of litigation possibilities.

29.    The Stipulation is in the best interests of the estate for a number of reasons.  First, the Stipulation prevents the incurrence of significant transaction and litigation costs and cost-effectively allocates the responsibility for  and resolves significant environmental liabilities of the Debtors.    Approving the Stipulation will resolve claims for over $2.8 million against the Debtors' estates and provide assurance to the creditors that environmental liabilities associated with the Site are fully addressed and permanently resolved.    The Debtors' shared responsibility for the Site has been a responsibility of the Debtors since before the commencement of these chapter 11 cases.    The Stipulation essentially renews the Debtors' prepetition agreement with the Claimant.

30.    Second, the Stipulation is consistent with CERCLA's goals and benefits the public interest because the Stipulation will support and should fully fund the response action at

8

the Site. Such approval benefits the public by allocating costs of performing the work amongst the parties and enabling the work to proceed.

31.    Third, the Stipulation is consistent with the Bankruptcy Code as it treats all prepetition past costs as General Unsecured Claims against the Debtors' estates to be paid on the Plan Effective Date in the same manner as all other General Unsecured Claims. In addition, the Stipulation benefits the estates as it treats certain pre-Plan Effective Date (*i.e.*, postpetition) costs incurred before the effective date of the Stipulation as General Unsecured Claims as opposed to Administrative Claims. The Stipulation does not provide for the payment of any General Unsecured Claims of the Claimant prior to the Plan Effective Date.

32.    Fourth, the Stipulation allocates the costs with respect to the Site in essentially the same manner by which the Debtors and the Claimant have agreed to allocate the costs prior to the commencement of these chapter 11 cases. The Debtors and the Claimant have historically split costs on a 50:50 basis with respect to the Site and the Stipulation carries this cost-splitting agreement forward.

33.    Fifth, the Site represents an "Additional Site" under the EPA Multi-Site Agreement. This means that the Site has remained a potential liability for the Debtors and their estates. Under the Stipulation, the treatment of past costs is consistent with the treatment for Additional Sites outlined in the EPA Multi-Site Agreement.

34.    For all of these reasons, entry into the Stipulation is within the Debtors' sound business judgment and represents a fair and equitable result for the Debtors and their estates. Thus, the Bankruptcy Court should approve the Debtors' entry into the Stipulation with the Claimant.

## Conclusion

35.    For the reasons stated above, the proposed Stipulation is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest because it is the best settlement attainable given all the facts and circumstances.  In the absence of a resolution by settlement, the Debtors will likely incur substantial legal fees and expenses litigating this matter to final judgment.  Accordingly, the Debtors have demonstrated a sound business justification and best interest for the execution and consummation of the Stipulation.

*[Remainder of Page Intentionally Left Blank]*

10

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit B hereto, (i) approving the Debtors' execution of the Stipulation attached as Exhibit A hereto, (ii) allowing Claim No. 12789 as a general unsecured claim in the amounts provided for herein; (iii) authorizing the Debtors to consummate the transactions contemplated in the Stipulation,  and (iv) granting such other relief as may be just or proper.

Dated: November 10, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
 200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar. No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in
Possession

DOCS_DE:142130.1