# EXHIBIT A

STIPULATION RESOLVING CLAIM #12789

DOCS_DE:142130.1

## IN THE UNITED STATES BANKRUPTCY
## COURT FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| _____Debtors._____ | ) | |

### STIPULATION RESOLVING CLAIM #12789

This stipulation ("Stipulation") is entered into this _____ day of _____, 2008, between W. R. Grace & Co. and its affiliates (collectively, the "Debtors") and Tyco Healthcare Group LP d/b/a Covidien ("Claimant") (the Debtors and Claimant collectively being referred to as the "Parties").

**WHEREAS,** on April 2, 2001 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

**WHEREAS,** this Court issued its Bar Date Order on April 22, 2002, which established March 31, 2003 as the Bar Date for the filing of certain pre-petition (a) non-asbestos, (b) asbestos property damage and (c) medical monitoring claims.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co: Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food ON Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**WHEREAS,** on March 27, 2003, Claimant filed two identical proofs of claim against two of the Debtors with respect to the Blackburn and Union Privileges Superfund Site (the "Site"), located at South Street in Walpole, Massachusetts. Claim No. 12787 was expunged by Omnibus 21; surviving is Claim No. 12789 described as follows:

| Claim No. | Filed on | Asserted Amount | Asserted Priority[2] | Asserted Basis for Claim |
|---|---|---|---|---|
| 12789 | March 27, 2003 | Not less than $2,833,655.18 | General Unsecured Claim | Environmental Liability |

**WHEREAS,** Tyco Healthcare Group LP is the corporate successor to The Kendall Company ("Kendall") and is currently d/b/a Covidien.

**WHEREAS,** in 1994, the United States Environmental Protection Agency ("EPA") listed the Blackburn and Union Privileges Superfund Site on the National Priorities List ("NPL") pursuant to the relevant provisions of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA").

**WHEREAS,** in 1987, EPA named W. R. Grace & Co.-Conn. (W.R. Grace & Co. and W.R. Grace & Co.-Conn. being referred to hereafter collectively as "Grace") and Kendall as potentially responsible parties ("PRPs") with respect to the Site.

**WHEREAS,** commencing in 1992, Grace implemented an administrative order issued by EPA for a removal action related to asbestos at the Site.

**WHEREAS,** in May 1999, Grace and Kendall entered into the Blackburn and Union Privileges Site PRP Cooperation Agreement (the "Cooperation Agreement"), whereby Grace and Kendall agreed that any costs for performance of a Remedial Investigation/Feasibility Study

---

[2] Claimant asserted priority status for an unliquidated portion of Claim No. 12789 in such claim; this assertion of a priority claim shall be (a) waived upon this Stipulation's becoming effective pursuant to paragraph 15 below, but (b) reinstated pursuant to paragraph 20 below should this Stipulation become null and void for any reason.

("RI/FS") for the Site would be allocated evenly between Grace and Kendall, such that each party would pay a fifty percent share of such costs.

**WHEREAS**, in the Cooperation Agreement, Grace and Kendall further agreed that any of the United States' past costs relating to the Site would also be paid on a 50:50 basis.

**WHEREAS**, in September 1999, EPA, Grace and Kendall reached an agreement regarding the payment of the United States' past costs, providing that past costs were to be paid by Grace and Kendall on a 50-50 basis consistent with the Cooperation Agreement.

**WHEREAS**, in October 1999, EPA issued an Administrative Order on Consent to Grace and Kendall which required performance of a RI/FS.

**WHEREAS**, Grace posted an $800,000 Letter of Credit for costs associated with performance of the RI/FS. After the Debtors commenced their reorganization cases, EPA drew the Letter of Credit in its entirety in July 2002 and established the "W. R. Grace Trust Account" (the "Trust") with JP Morgan Chase Bank in New York, NY. EPA requested periodic disbursements from the Trust and received periodic payments for Grace's fifty percent (50%) share of EPA's oversight costs for performance of the RI/FS until the Trust account was exhausted in the fall of 2007.

**WHEREAS**, EPA has periodically invoiced Covidien for certain past costs representing 50% of such past costs incurred by EPA, and Covidien has paid all such past cost invoices that it has received.

**WHEREAS**, the obligations of Grace, Kendall and Claimant, as corporate successor to Kendall, have been met with respect to the performance of the RI/FS for the Site.

**WHEREAS**, on September 30, 2008, EPA issued a Record of Decision ("ROD") identifying remedial actions to be performed at the Site.

**WHEREAS**, the Parties anticipate that EPA will issue an order under CERCLA to Grace and Claimant, or enter into negotiations with Grace and Claimant seeking agreement by Grace and

Claimant to enter into a consent decree, either of which would require Grace and Claimant to implement, or pay the cost of implementing, the response actions identified in EPA's ROD for the Site and likely would require reimbursement of all or a portion of EPA's additional past costs (collectively, "Response Costs");

**WHEREAS**, the Parties anticipate that they could incur additional costs associated with the Site arising from claims for natural resources damages under CERCLA or Massachusetts state law ("Other Costs").

**WHEREAS**, EPA also asserted a claim against the Debtors with respect to the Site (Proof of Claim No. 9634) for future oversight costs and cleanup obligations in a range of $12.6 million to $22.6 million;

**WHEREAS**, EPA and the Debtors entered into a <u>Settlement Agreement Resolving the United States' Proof of Claim Regarding Certain Environmental Matters,</u> dated December 7, 2007, filed with the Bankruptcy Court at docket number 17670, and approved by the Bankruptcy Court on or about June 2, 2008 (referred to herein as the "EPA Multi-Site Agreement"). The EPA Multi-Site Agreement provides Grace with certain limited rights to object to the United States' proof of claim No. 9634 in connection with the Site.

**WHEREAS**, the Debtors and Claimant have agreed to settle Claim No. 12789 on the terms and conditions set forth herein.

**NOW, THEREFORE,** for good and valuable consideration, the parties hereby stipulate and agree as follows:

Claim No. 12789 shall be allowed as a general unsecured claim against the chapter 11 estates of the Debtors as follows:

1. Grace and Covidien shall each pay fifty percent (50%) of the aggregate of any invoices that EPA issues to either Party in the future with respect to past costs incurred by EPA for the Site.

2. Grace and Claimant agree to work cooperatively to implement response actions required to be performed pursuant to any consent decree entered into by the United States, the Debtors, and Claimant or pursuant to any order issued by EPA. Subject to paragraph 18 hereof, Grace and Claimant further agree to work cooperatively to negotiate with EPA to reach an agreement to undertake the response actions identified in EPA's ROD for the Site.

3. Response Costs and Other Costs incurred by either Party shall be allocated on an equal basis to Grace and Claimant and paid on an equal basis by Grace and Claimant pursuant to the terms hereof.

4. An Authorized Representative for Claimant and an Authorized Representative for Grace may agree, in writing, to pay for the performance of technical, legal, investigatory, remedial, or other services on their behalf concerning implementation of the remedy selected by EPA. If such an agreement is reached, Claimant and Grace shall pay the provider of such services (the "Service Provider") on an equal basis, with Grace and Claimant billed separately by the Service Provider for each Party's fifty percent share of the service cost. Such payment shall be made notwithstanding the terms of a confirmed Plan of Reorganization, the order confirming the Plan of Reorganization, or the terms of any order entered to effectuate the discharge received by the Debtors. The remedial actions will be conducted by a consultant, engineer, or other provider of services mutually agreed upon by Claimant and Grace.

5. Either Party may, effective 30 days after receipt of notice by the other Party, terminate a particular agreement for performance of services by notifying the other Party and the Service Provider. Such notification shall be effective upon the expiration of 30 days following receipt of the notice by the other Party and the Service Provider. The Parties remain obligated to pay all expenses incurred prior to receipt of such notice, as well as all reasonable expenses that are incurred within the 30-day period following receipt of notification by the Service Provider. Such expenses would relate to completion of ongoing work, or of reports regarding the work carried out to date, that is the subject of

the notification.

6. All outstanding past costs incurred by Claimant on or before December 31, 2007, are identified on Exhibit A ("Outstanding Past Costs") and shall be allocated and paid for as provided herein, i.e., on a 50-50 basis. Claimant's claim with respect to Outstanding Past Costs shall be an allowed general unsecured claim ("Claimant's Allowed General Unsecured Claim") and will receive the same treatment under any confirmed plan of reorganization (the "Plan of Reorganization"), without discrimination, as other allowed general unsecured claims. In the event that the Plan of Reorganization provides for the payment of interest to holders of allowed general unsecured claims, such interest (currently 4.19% per annum, compounded annually) shall begin to accrue on Claimant's Allowed General Unsecured Claim on December 27, 2007, despite what the Plan may otherwise provide and shall continue to accrue for the same duration as provided for other allowed general unsecured claims in the Plan of Reorganization.

7. If either Party claims that any costs have been incurred between January 1, 2008, and the effective date of this Stipulation, inclusive, the Party claiming to have incurred such costs shall identify them in writing to the other Party within thirty (30) days following the effective date of this Stipulation. The Party identifying such costs shall provide detail concerning such costs sufficient to allow the other Party to make a reasoned judgment that such costs are recoverable under this Stipulation. Such costs shall be allocated on an equal basis to Grace and Claimant and paid on a 50-50 basis. Neither Party shall be entitled to interest on such costs. Such payment shall be made notwithstanding the terms of a confirmed Plan of Reorganization, the order confirming the Plan of Reorganization, or the terms of any order entered to effectuate the discharge received by the Debtors.

8. In the event that additional PRPs are identified in relation to the Site, Grace and Claimant agree to work cooperatively to pursue claims that they together determine are appropriate to pursue for contribution and/or cost recovery against such additional PRPs. The costs of pursuing

such claims shall be allocated to, and paid for by, Grace and Claimant on an equal basis, and the proceeds from any successful claim shall be shared on an equal basis by Grace and Claimant.

9. The following individuals shall be Authorized Representatives and have authority to commit their respective company or client to one or more of the financial obligations set forth herein, in accordance with the procedures set forth therein. The Authorized Representatives are:

| For Grace: | For Claimant: |
| --- | --- |
| Maryellen Johns | Patricia H. Duft |
| Mitch Obradovic | Kathryn Zeigler |

10. Any disputes regarding the performance of obligations pursuant to this Stipulation, the scope of this Stipulation, or any other matters related to this Stipulation shall be resolved pursuant to the following dispute resolution procedures.

    A. If Claimant's and Grace's Project Managers are unable to reach agreement themselves on any issue in dispute, they shall elevate the issue to their respective Senior Managers, who will confer and make an effort to resolve all issues reasonably within two (2) weeks, or such other time frame as they may agree upon in writing.

    B. If the Senior Managers are unable to resolve an issue within the time frames set forth in subparagraph A, they shall elevate the issue to the Senior Executives. These Senior Executives will confer and make an effort to resolve all issues reasonably and within two (2) weeks, or such other time frame as they may agree upon in writing.

    C. If the Senior Executives are unable to resolve an issue within the time frame set forth in Subparagraph B, then the following process shall be followed. Within two (2) weeks after expiration of the timeframe set forth in Subparagraph B, each party will submit to the other party a written statement of dispute ("Statement of Dispute") setting forth the nature of

the dispute, the work affected by the dispute, the party's position and desired resolution with respect to the dispute, and the information relied upon to support its position. Within two (2) weeks after receipt of the Statements of Dispute, each party will submit to the other party a written response to the other party's statement of dispute ("Response to Statement of Dispute").

D.  If agreement cannot be reached on an issue within two (2) weeks after parties submit their Statements of Dispute (or within any extended time period agreed upon by the parties), then each Party shall identify an individual to settle the dispute in concert with a third such individual to be agreed upon by the first two. A dispute shall be settled upon the agreement of at least two of the three individuals. Both Parties agree that any such decision should be reached promptly, and that they will not create any unreasonable delays in the selection of the individuals or in the review and decision-making process.

E.  The Party whose representative dissents from any such non-unanimous agreement may, within twenty (20) days after such non-unanimous agreement, ask the Bankruptcy Court to review it for reasonableness. If the Parties representatives are unable to agree on a third individual within thirty (30) days, then each Party may ask the Bankruptcy Court on motion to resolve the matter by appointing such Party's nominee or by granting such other relief as may be requested by such Party and be reasonable under the circumstances; the Parties hereby acknowledging and agreeing that the Bankruptcy Court shall have the authority to resolve the matter by appointing a third individual of the Court's own choosing who shall be willing to serve.

F.  These dispute resolution procedures shall be the exclusive procedures for resolving disputes under this Stipulation. Reasonable decisions made pursuant hereto shall take into account cost effectiveness, environmental protectiveness, and regulatory obligations. Representatives of the Parties shall be as follows and may be changed upon ten (10) days written notice to the other Party.

| Position | For Grace | For Claimant |
|---|---|---|
| *Project Manager* | Maryellen Johns | Kathy Zeigler |
| *Senior Manager* | Mitch Obradovic | Pat Duft |
| *Senior Executive* | William Corcoran | John Griffin |

11. Nothing herein shall be deemed to create a partnership, joint venture, or principal and agent relationship between or among Claimant and the Debtors.

12. Neither Party nor its representatives shall be liable to the other Party for any claim, demand, liability, cost, expense, legal fee, penalty, loss, or judgment incurred or arising as a result of any acts or omissions taken or made hereunder.

13. This Stipulation shall be binding upon the successors and assigns of Claimant and the Debtors. No assignment or delegation of the obligation to take any action or to make any payment or reimbursement hereunder will release the assigning Party without the prior written consent of the other Party.

14. This Stipulation shall be interpreted under the laws of the Commonwealth of Massachusetts.

15. All notices, bills, invoices, reports, and other communications to Claimant or the Debtors shall be sent to the "representative" designated by Claimant or Grace. Each Party shall have the right to change its representative upon ten (10) days written notice to the other Party.

16. This Stipulation shall be subject to approval of the Bankruptcy Court and be effective upon the docketing of an order of approval. The Debtors shall promptly seek approval of this Stipulation under Bankruptcy Rule 9019 or other applicable provisions of the bankruptcy code. The parties shall take whatever additional action, if any, is necessary to make sure that Claim No. 12789 is allowed as outlined herein.

17. Upon approval of this Stipulation by the Bankruptcy Court, the Debtors shall direct their claims agent, Rust Consulting, Inc., to mark the Debtors' claims register to reflect that Claim No.

12789 shall be allowed as outlined herein.

18. Claimant agrees that it is forever barred, estopped, and enjoined from asserting any additional pre-petition or post-petition claims against the Debtors with respect to any costs relating to the Site other than enforcement of the obligations of the Debtors set forth in this Stipulation.

19. Notwithstanding anything herein to the contrary, the Parties agree that in the event the Debtors exercise their right to object to the United States claim No. 9634 as it regards the Site, (a) the Site shall be excluded from the EPA Multi-Site Agreement, (b) the Debtors, Claimant, and the United States reserve all their rights with regard to this Site, and (c) this Stipulation shall be null and void unless otherwise mutually agreed to in writing by the Debtors and Claimant.

20. In the event this Stipulation does not become effective as outlined in paragraph 15 above prior to December 31, 2009, this Stipulation shall be null and void unless otherwise mutually agreed to in writing by the parties.

21. In the event that this Stipulation becomes null and void for any reason, then Claim No. 12789 shall be deemed fully reinstated, subject, however, to the Debtors' defenses, counterclaims and offsets, if any, and credits for payments the Claimant or EPA has received from the Debtors, if any. Neither this Stipulation nor its nullification pursuant to its terms shall create a right that does not currently exist for Claimant or any other party to file additional claims with respect to these matters, nor waive any defense that the Debtors may have against such claim.

22. Each Party executing this Stipulation represents that such Party has the full authority and legal power to do so. This Stipulation may be executed in counterparts and each such counterpart together with the others shall constitute one and the same instrument. The Parties further agree that facsimile signatures hereon shall be deemed to be original signatures. This Stipulation shall be binding upon and inure to the benefit of each of the Parties, and upon their respective assignees,

- 11 -

successors and/or partners, including, but not limited to any trustee(s) appointed in the Bankruptcy Cases.

23. The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and all matters relating thereto.

| CLAIMANT: | THE DEBTORS: |
|---|---|
| TYCO HEALTHCARE GROUP LP | W. R. GRACE & CO. ET AL. |
| By: _____ | By: *[signature]* |
| Name: _____ | Name: W. M. Corcoran |
| Title: _____ | Title: Vice President<br>Public and Regulatory Affairs |
| Date: _____ | Date: 11/10/08 |

successors and/or partners, including, but not limited to any trustee(s) appointed in the Bankruptcy Cases.

23. The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and all matters relating thereto.

| CLAIMANT: | THE DEBTORS: |
|---|---|
| TYCO HEALTHCARE GROUP LP | W. R. GRACE & CO. ET AL. |
| By: *[signature]* | By: _____ |
| Name: Matthew Nicholls | Name: W. M. Corcoran |
| Title: Vice President | Title: Vice President<br>Public and Regulatory Affairs |
| Date: November 10, 2008 | Date: _____ |

- 11 -

**Blackburn & Union Superfund Site**
**Cost Recovery from Grace**
**Summary**

|  | 100% Paid by Covidien | Grace 50% Share |
|---|---|---|
| Craig Campbell | $ 199,287.46 | $ 99,643.73 |
| Sanborn, Head and Associates | 5,158,815.61 | 2,579,407.81 |
| Total | $ 5,358,103.07 | $ 2,679,051.54 |

# EXHIBIT A

**Invoices Paid by Covidien from 10/11/01 - 12/31/07**
**Craig Campbell**

| Date | Inv # | Total | Comment |
| --- | --- | --- | --- |
| 10/1/2002 | 382 | $ 240.00 | redacted amounts |
| 11/3/2001 | 395 | $ 1,104.00 | redacted amounts |
| 12/9/2001 | 405 | $ 4,176.00 | redacted amounts |
| 1/3/2002 | 416 | $ 1,250.00 | redacted amounts |
| 2/4/2002 | 427 | $ 225.00 | redacted amounts |
| 3/10/2002 | 435 | $ 1,200.00 | redacted amounts |
| 4/8/2002 | 446 | $ 75.00 | redacted amounts |
| 5/9/2002 | 457 | $ 400.00 | redacted amounts |
| 6/5/2002 | 466 | $ 600.00 | redacted amounts |
| 7/3/2002 | 474 | $ 925.00 | redacted amounts |
| 8/9/2002 | 485 | $ 3,100.00 | redacted amounts |
| 9/11/2002 | 492 | $ 25.00 | redacted amounts |
| 10/5/2002 | 504 | $ 125.00 | redacted amounts |
| 11/13/2002 | 516 | $ 875.00 | redacted amounts |
| 12/3/2002 | 529 | $ 350.00 | redacted amounts |
| 2/3/2003 | 549 | $ 104.00 | redacted amounts |
| 3/7/2003 | 556 | $ 572.00 | redacted amounts |
| 4/9/2003 | 563 | $ 1,118.00 | redacted amounts |
| 5/9/2003 | 570 | $ 4,602.00 | redacted amounts |
| 6/10/2003 | 580 | $ 2,522.00 | redacted amounts |
| 8/1/2003 | 588 | $ 6,006.00 | redacted amounts |
| 9/4/2003 | 597 | $ 2,938.00 | redacted amounts |
| 9/30/2003 | 608 | $ 416.00 | redacted amounts |
| 11/10/2003 | 619 | $ 2,704.00 | redacted amounts |
| 12/4/2003 | 631 | $ 598.00 | redacted amounts |
| 1/6/2004 | 641 | $ 522.50 | redacted amounts |
| 2/9/2004 | 650 | $ 1,540.00 | redacted amounts |
| 3/4/2004 | 658 | $ 577.50 | redacted amounts |
| 4/2/2004 | 666 | $ 2,986.26 | redacted amounts |
| 5/13/2004 | 673 | $ 1,402.50 | redacted amounts |
| 6/6/2004 | 680 | $ 1,595.00 | redacted amounts |
| 7/2/2004 | 687 | $ 3,850.00 | redacted amounts |
| 8/10/2004 | 692 | $ 192.50 | redacted amounts |
| 9/10/2004 | 699 | $ 4,372.50 | redacted amounts |
| 11/8/2004 | 714 | $ 165.00 | redacted amounts |
| 12/15/2004 | 721 | $ 3,520.00 | redacted amounts |
| 1/11/2005 | 727 | $ 2,842.00 | redacted amounts |
| 2/7/2005 | 733 | $ 203.00 | redacted amounts |
| 3/7/2005 | 738 | $ 957.00 | redacted amounts |
| 4/4/2005 | 746 | $ 6,243.64 | redacted amounts |
| 5/13/2005 | 755 | $ 330.00 | redacted amounts |
| 6/14/2005 | 762 | $ 2,610.00 | redacted amounts |
| 7/13/2005 | 772 | $ 2,784.00 | redacted amounts |
| 8/11/2005 | 779 | $ 1,015.00 | redacted amounts |
| 11/2/2005 | 806 | $ 754.00 | redacted amounts |
| 12/2/2005 | 815 | $ 2,233.00 | redacted amounts |
| 1/9/2006 | 824 | $ 1,664.00 | redacted amounts |

**Invoices Paid by Covidien from 10/11/01 - 12/31/07**
**Craig Campbell**

| Date | Inv # | Total | Comment |
|---|---|---|---|
| 2/7/2006 | 833 | $ 3,708.00 | redacted amounts |
| 3/1/2006 | 843 | $ 2,432.00 | redacted amounts |
| 4/4/2006 | 852 | $ 736.00 | redacted amounts |
| 5/9/2006 | 859 | $ 4,544.00 | redacted amounts |
| 6/3/2006 | 868 | $ 7,200.00 | redacted amounts |
| 7/3/2006 | 873 | $ 1,664.00 | redacted amounts |
| 8/8/2006 | 879 | $ 384.00 | redacted amounts |
| 9/12/2006 | 885 | $ 288.00 | redacted amounts |
| 10/12/2006 | 894 | $ 928.00 | redacted amounts |
| 11/8/2006 | 901 | $ 5,568.00 | redacted amounts |
| 12/1/2006 | 907 | $ 2,912.00 | redacted amounts |
| 1/17/2007 | 909 | $ 2,112.00 | redacted amounts |
| 2/7/2007 | 915 | $ 25,856.00 | redacted amounts |
| 3/9/2007 | 921 | $ 3,232.00 | redacted amounts |
| 4/3/2007 | 927 | $ 10,528.00 | |
| 5/5/2007 | 934 | $ 3,328.00 | |
| 6/2/2007 | 940 | $ 11,445.81 | |
| 7/5/2007 | 946 | $ 4,096.00 | |
| 8/14/2007 | 952 | $ 2,848.00 | |
| 9/7/2007 | 958 | $ 3,060.25 | |
| 10/2/2007 | 964 | $ 7,520.00 | |
| 11/1/2007 | 971 | $ 16,096.00 | |
| 12/10/2007 | 977 | $ 192.00 | |
| **Total** | | **$199,287.46** | |

Grace 50% Share    $ 99,643.73

# EXHIBIT A

**Invoices Paid by Covidien from 10/11/01 - 12/31/07**
**Sanborn, Head & Associates**

| Date | Inv # | Total |
|---|---|---|
| 11/7/2001 | 12818 | $ 42,625.87 |
| 12/4/2001 | 12912 | $ 59,766.77 |
| 1/2/2002 | 13055 | $ 114,128.01 |
| 2/13/2002 | 13259 | $ 152,961.14 |
| 3/27/2002 | 13437 | $ 127,540.59 |
| 4/23/2002 | 13557 | $ 75,976.20 |
| 6/6/2002 | 13798 | $ 131,191.42 |
| 7/15/2002 | 13946 | $ 213,920.40 |
| 8/20/2002 | 14104 | $ 124,161.30 |
| 9/23/2002 | 14246 | $ 92,916.18 |
| 10/21/2002 | 14364 | $ 93,535.78 |
| 11/18/2002 | 14480 | $ 41,790.75 |
| 12/30/2002 | 14675 | $ 55,584.23 |
| 2/10/2003 | 14864 | $ 56,153.68 |
| 3/17/2003 | 15045 | $ 60,374.79 |
| 4/22/2003 | 15187 | $ 37,981.60 |
| 5/20/2003 | 15304 | $ 16,021.36 |
| 7/1/2003 | 15537 | $ 31,645.50 |
| 8/13/2003 | 15689 | $ 56,196.23 |
| 10/15/2003 | 15938 | $ 177,726.64 |
| 11/3/2003 | 15990 | $ 173,124.20 |
| 12/1/2003 | 16131 | $ 151,917.79 |
| 1/5/2004 | 16284 | $ 63,075.94 |
| 2/10/2004 | 16431 | $ 138,488.25 |
| 4/23/2004 | 16729 | $ 190,373.80 |
| 6/15/2004 | 16921 | $ 196,668.31 |
| 8/11/2004 | 17160 | $ 115,343.86 |
| 10/6/2004 | 17351 | $ 158,085.02 |
| 12/6/2004 | 17639 | $ 166,741.26 |
| 2/9/2005 | 17981 | $ 28,356.31 |
| 3/7/2005 | 18099 | $ 18,994.97 |
| 5/3/2005 | 18363 | $ 40,766.82 |
| 6/28/2005 | 18703 | $ 95,814.22 |
| 7/27/2005 | 18875 | $ 93,117.21 |
| 9/7/2005 | 19101 | $ 61,569.65 |
| 10/4/2005 | 19204 | $ 25,881.15 |
| 12/2/2005 | 19532 | $ 51,955.57 |
| 1/10/2006 | 19756 | $ 36,033.35 |
| 2/10/2006 | 19936 | $ 47,343.06 |
| 3/24/2006 | 20149 | $ 20,055.54 |
| 5/3/2006 | 20381 | $ 88,997.85 |
| 6/2/2006 | 20543 | $ 57,122.06 |
| 7/13/2006 | 20782 | $ 66,522.02 |
| 10/3/2006 | 21215 | $ 158,019.52 |
| 11/29/2006 | 21520 | $ 214,912.35 |
| 1/24/2007 | 21819 | $ 132,998.61 |

**Invoices Paid by Covidien from 10/11/01 - 12/31/07**
**Sanborn, Head & Associates**

| Date | Inv # | Total |
|---|---|---|
| 2/19/2007 | 21972 | $ 105,577.08 |
| 4/5/2007 | 22223 | $ 168,586.42 |
| 5/29/2007 | 22458 | $ 133,416.53 |
| 6/25/2007 | 22601 | $ 50,261.90 |
| 9/7/2007 | 23007 | $ 108,595.26 |
| 10/2/2007 | 23115 | $ 100,290.87 |
| 10/30/2007 | 23271 | $ 100,712.86 |
| 12/11/2007 | 23555 | $ 36,897.56 |
| **Total** | | **$ 5,158,815.61** |

Grace 50% Share     $ 2,579,407.81