THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: November 26, 2008 at 4:00 p.m.**
**Hearing Date: December 15, 2008 at 1:00 p.m.**
**(in Pittsburgh, PA)**

## MOTION OF DEBTORS FOR ENTRY OF ORDER
## AUTHORIZING THE SALE OF CERTAIN REAL PROPERTY
## TO THE CITY OF CHARLESTON, SOUTH CAROLINA

The Debtors hereby request entry of an order (i) approving their execution of a Contract of Purchase and Sale (the "Agreement") between W. R. Grace & Co. – Conn. (the "Debtor") and the City of Charleston, South Carolina (the "City") and (ii) authorizing the sale of certain real property of the Debtor to the City in accordance with the terms and conditions set forth in the Agreement, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 (the "Motion"). In support of this Motion, the Debtors state as follows:

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

3.      The Debtor owns certain real property located at 1820 Harmon Street, within the city limits of Charleston, South Carolina (the "Property"). The Property consists of approximately 16.464 acres on which the Debtor formerly operated a mixed-fertilizer manufacturing and pesticide formulation facility for over 50 years. The Debtor ceased operations in late-1987 and the property has since remained dormant.

4.      Pursuant to a consent agreement dated November 13, 1989 (amended June 19, 2003) (the "Consent Agreement") between the Debtors and the South Carolina Department of Health and Environmental Control, the Debtors have been investigating and remediating environmental contamination at the Property. The Debtors have almost completed remediation on the Property pursuant to the Consent Agreement. Virtually all improvements have been removed from the Property with only monitoring wells, perimeter fencing, and several concrete floor slabs remaining.

5.      In 2000, the City Council of the City of Charleston (the "City Council") adopted an economic development plan seeking to relocate its city's existing public works and fire training facility (the "Milford Street Facility"). After extensive studies and due diligence which

2

took place over the next seven years to find a suitable site, the City Council determined that the Property fulfilled all of the requirements and was the optimal site for relocation of the Milford Street Facility. Identifying the Property as "necessary" for its public use pursuant to the South Carolina Eminent Domain Procedures Act (the "Act"), the City was prepared to condemn the Property in accordance with the procedures set forth in the Act.

6.    On November 27, 2007, the City Council passed a resolution authorizing the City's legal counsel to attempt an acquisition of the Property either by a negotiated purchase or by eminent domain for the future site of the Milford Street Facility. On or about December 21, 2007, the City filed a motion in this Court seeking relief from the automatic stay (the "Lift Stay Motion") to acquire the property by eminent domain [Docket No. 17685]. The Debtors filed an objection to the Lift Stay Motion [Docket No. 17807] because the Debtors were in the final stages of negotiating a transfer of the Property as part of an ongoing complex multi-site transfer that has since terminated.

7.    The parties agreed to continue the hearing on the Lift Stay Motion and amicably negotiate a resolution with respect to the sale of the Property to the City without the City bringing an action for condemnation, thus, avoiding a potential dispute and costly litigation over the amount of just compensation. Since May 2008, the parties have conducted negotiations in a manner consistent with the Act and have concluded that it is in their best interests to enter into the Agreement in lieu of the City bringing an action for condemnation. After several months of negotiations, the parties have reached an agreement on a fair sale price that is acceptable to both parties. Additionally, the parties have also agreed on a procedure to resolve the remaining environmental issues on the Property pursuant to the Consent Agreement.

3

8.    The Debtors consider the City's offer to be a favorable offer for the Property in light of the recently depressed real estate market generally, as well as the fact that the Property carries certain remedial obligations and liabilities arising from environmental contamination. Both the Debtors and the City are anxious to complete the sale of the Property as soon as possible. The Debtors will be able to liquidate a current non-productive asset of their estate and yield an infusion of cash to benefit their reorganization. The City is in immediate need of the Property and the acquisition of the Property will enable the City to come closer to fulfilling its goals as set forth in its economic development plans initiated in 2000.

9.    Due to (i) the parties desire to complete the sale of the Property as expeditiously as possible and    (ii) the uncertainty in the real property marketplace, the Debtors have determined, in their sound business judgment, to proceed with a private sale to the City. Continuing to market the Property and conducting a traditional Bankruptcy auction sale process would not benefit the Debtors in any way, especially since the City has the power to acquire the Property through eminent domain if it so desired. Additionally, both parties will avoid paying any third-party brokerage costs of commissions by avoiding the need to further market the Property. Finally, the Debtors believe that an auction sale process would subject the Debtors' estates to significant market risk with a low probability of identifying a higher and better offer, because the Debtors would contemporaneously be required to defend the Property against condemnation proceedings by the City that any alternate purchaser would also need to address.

10.    As a result, on November 7, 2008, the Debtors entered into the Agreement to sell the Property to the City and now seek the Court's approval to consummate the sales transaction outlined in the Agreement.

4

## The Agreement

11.    The significant terms of the Agreement are as follows:[2]

a.    <u>Description of the Property to be Sold</u>:  A full description of the Property is described in <u>Exhibit A</u> attached to the Agreement.  The Property shall also include all fixtures, equipment and improvements of any kind which are now attached to or planted on the premises.  The Property shall also include all easements, appurtenances, licenses and transferable permits in connection with, used or useful by or benefiting the land described in <u>Exhibit A</u>.  Purchaser and Seller agree that Seller may reserve for itself in the deed a right, upon 72 hours' notice to the Purchaser, of access to the Property for sampling groundwater wells on the Property and such other access as is required to implement activities required by the South Carolina Department of Health and Environmental Control.

b.    <u>Purchase Price</u>: $3,800,000.00

c.    <u>Deposit</u>:  Within ten (10) days after the Contract Date the Purchaser will deliver an earnest money deposit of Fifty Thousand and No/100 ($50,000.00) Dollars ("Earnest Money") to be held and disposed of in accordance with the Agreement.

d.    <u>Closing</u>:  The closing ("Closing") shall take place on or before December 30, 2008, or at such other time, date or place as the parties may mutually agree in writing.  The Sale shall be free from all liens, restrictions, leases and encumbrances, except current property taxes and except as set forth in the

---

[2]    The summary of the terms of the Agreement set forth herein is provided solely for the convenience of the Court and parties in interest.  Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Agreement, and to the extent of any conflict or inconsistency between the summary set forth herein and the Agreement, the Agreement shall govern.  Nothing in this Motion is intended to modify or otherwise alter the terms of the Agreement.  A copy of the Agreement is also included as <u>Exhibit 1</u> to the proposed form of order attached.

Agreement, with all recording charges which are based on value pursuant to <u>S.C. Code Ann</u>. 12-24-10 <u>et. Seq</u>. paid by Seller.

e.    <u>Approval by the City Council</u>:  The Agreement shall not become effective unless approved by City Council.  If the Agreement is not approved by City Council on or before December 10, 2008, it shall be null and void.

f.    <u>Post Closing Environmental Obligations</u>:    The parties have agreed that after the closing, each shall have certain obligations to resolve the handling of environmental liabilities on the Property pursuant to the Consent Agreement as more fully described in the Agreement.

g.    <u>Brokerage Fees</u>:  None

### Relief Requested

12.  By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Debtors' execution of the Agreement; and (ii) granting the Debtors' authority to consummate the transactions contemplated in the Agreement.

### Basis for Relief

### Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004

13.  This Court has the statutory authority to authorize and approve the Agreement, pursuant to Bankruptcy Code sections 105(a) and 363(b) and Bankruptcy Rule 9019.

14.  Section 105(a) of the Bankruptcy Code provides in pertinent part that "[the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

6

15.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.. .." 11 U.S.C. § 363(b)(1). This Court may authorize the Debtors to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by some "articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

16.     In accordance with Bankruptcy Rule 6004, sales of property rights outside the ordinary course of business may be conducted by private sale or public auction.

### Application of Standards for Approval of a Sale to the Facts of This Case

17.     The Debtors have determined that the disposition of the Property by private sale to the City will produce the highest and best offer for the Property, thereby maximizing the value to the estates, and is in the best interests of the Debtors, their estates and creditors, and the public interest.  The Agreement was the product of a rigorous negotiation process and represents a fair and reasonable exchange for the highest and best consideration available.

7

18.    The Debtors believe that, in their business judgment, the Agreement will provide a larger recovery for the Debtors' estates than would be provided by any other viable alternative. The Debtors believe that the amount of the consideration received for the Property is fair and reasonable based upon their investigation and knowledge of the marketplace.

19.    As discussed above, the parties have conducted negotiations during the past several months and concluded that it was in their best interests to enter into the Agreement in lieu of the City bringing an action for condemnation. Approving this sale will avoid additional costs incurred by defending a condemnation proceeding and litigating potential disputes over the amount of just compensation related to such proceeding.

20.    Finally, approval of the Agreement benefits the public. As part of the sales process and pursuant to the Agreement, the parties will work cooperatively to complete the environmental remediation required pursuant to the Consent Agreement. Completion of this remediation is in the public interest as it eliminates the risks associated with the current environmental contamination which may be on the Property. Furthermore, the acquisition of the property will enable the City to come closer to fulfilling its goals of relocating the Milford Street Facility as set forth in its economic development plans initiated in 2000 for the benefit of its constituents.

21.    For the above reasons, the Debtors believe that the Agreement represents a fair and reasonable price for the sale of a piece of Property that the Debtors no longer need in their operations.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (i) approving the Debtors' execution of the Agreement

8

attached as <u>Exhibit 1</u> to the proposed form of order and (ii) authorizing the Debtors to consummate the transaction contemplated thereby.

Dated: November 10, 2008                              KIRKLAND & ELLIS LLP
                                                      David M. Bernick, P.C.
                                                      Janet S. Baer
                                                      200 East Randolph Drive
                                                      Chicago, Illinois 60601
                                                      (312) 861-2000

                                                      and

                                                      PACHULSKI STANG ZIEHL & JONES LLP

                                                      _____
                                                      Laura Davis Jones (Bar No. 2636)
                                                      James E. O'Neill (Bar No. 4042)
                                                      Kathleen P. Makowski (Bar No. 3648)
                                                      Timothy P. Cairns (Bar No. 4228)
                                                      91 9 North Market Street, 17th Floor
                                                      P.O. Box 8705
                                                      Wilmington, Delaware 1 9899-8705
                                                      Telephone: (302) 652-4100
                                                      Facsimile : (302) 652-4400

                                                      Co-Counsel for the Debtors and Debtors in
                                                      Possession

9