THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Re: Docket No. _____
12/15/08 Agenda Item No. _____

## ORDER AUTHORIZING THE SALE OF CERTAIN REAL PROPERTY TO THE CITY OF CHARLESTON, SOUTH CAROLINA

This matter coming on to be heard on the Debtors' Motion[2] for entry of an order (a) approving the agreement by and between W.R. Grace & Co.-Conn. and the City of Charleston, South Carolina (the "Agreement") attached hereto as Exhibit 1; and (b) authorizing the sale of certain real property of W.R. Grace & Co. -Conn. (the "Property") to the City of Charleston, South Carolina; all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and it appearing that the Court has jurisdiction

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]  Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Agreement (as defined below) and the Motion, and to the extent of any inconsistency, the Agreement shall govern.

over this matter; the Court having reviewed and considered (i) the Motion, (ii) the objections thereto, if any, and (iii) the arguments of counsel made, and the evidence proffered and; it appearing that the relief requested in the Motion and approval of the Agreement and the transactions contemplated thereby is in the best interests of the Debtors, their estates, creditors and other parties in interest; and based on the Motion and the record in these cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby

ORDERED that the Motion is granted and the Debtors execution of the Agreement is hereby approved; and it is further

ORDERED that the Debtors are authorized to take whatever other actions may be necessary to consummate the transactions contemplated by the Agreement; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order; and it is further

ORDERED that this Order is effective immediately upon its entry.

Dated:  December ___, 2008

_____
Honorable Judith K. Fitzgerald
U. S. Bankruptcy Judge

# **EXHIBIT 1**

# **AGREEMENT**

STATE OF SOUTH CAROLINA    )

                                )    **CONTRACT OF PURCHASE AND SALE**

COUNTY OF CHARLESTON        )

THIS CONTRACT OF PURCHASE AND SALE ("*Agreement*"), made and entered into by and between **W. R. GRACE AND CO.-CONN.**, as "*Seller*," and **CITY OF CHARLESTON, SOUTH CAROLINA**, a municipal corporation as "*Purchaser*" (the terms "Seller" and "Purchaser" including all genders, singular and plural), to be effective as of the Contract Date as hereinafter defined.

### WITNESSETH

*WHEREAS*, the Purchaser, a "public body" as defined in The South Carolina Eminent Domain Procedure Act, SC Code Ann.§ 28-2-10, et seq. (the "Act"), has identified the Property defined hereinbelow as necessary for its public use and is prepared to condemn said Property in accordance with the procedures set forth in the Act if allowed by the Bankruptcy Court; and

*WHEREAS*, the Purchaser and the Seller have negotiated in a manner consistent with the Act and have determined to enter into this Agreement in lieu of the Purchaser potentially bringing an action for Condemnation under the Act.

NOW, THEREFORE, for and in consideration of the below described premises, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and Seller hereby agree as follows:

### 1.    PROPERTY

1.01   **Realty:**    The Seller agrees to sell and the Purchaser agrees to buy the real property described in Exhibit A attached hereto and incorporated herein by reference upon the terms and conditions set forth below. All property described on Exhibit A is hereinafter

referred to as the *"Property"*. The Property shall also include all fixtures, equipment and improvements of any kind which are now attached to or planted on the premises. The Property shall also include all easements, appurtenances, licenses and transferable permits in connection with, used or useful by or benefiting the land described in <u>Exhibit A</u>. Purchaser and Seller agree that Seller may reserve for itself in the deed a right, upon 72 hours' notice to the Purchaser, of access to the Property for groundwater sampling wells on the Property and such other access as is required by the South Carolina Department of Health and Environmental Control.

1.02   <u>Personalty:</u>   This Agreement includes all personal property of Seller located at the Property, including but not limited to any personal property more fully described on Exhibit B attached hereto and incorporated herein by reference.

## 2. TERMS

2.01   <u>Price:</u> The purchase price (the *"Purchase Price"*) to be paid by Purchaser to Seller for the Property shall be **Three Million Eight Hundred Thousand and No/100 Dollars ($3,800,000.00).**

2.02   <u>Deposit:</u>      Within ten (10) days after the Contract Date (hereafter defined) the Purchaser will deliver an earnest money deposit of **Fifty Thousand and No/100 ($50,000.00) Dollars** (*"Earnest Money"*) to be held and disposed of in accordance with the terms hereof.   Purchaser and Seller authorize Haynsworth Sinkler Boyd, PA (*"Escrow Agent"*) to hold earnest money in trust and in a non-interest bearing escrow account, and to disburse same in accordance with the terms of this instrument and hereby release and agree to jointly defend Escrow Agent from and against any and all liability, cost, expense and claims whatsoever (including, but not limited to, reasonable attorney

fees and costs) for executing such duties. The Earnest Money may be paid by check. At Closing, the Earnest Money shall be credited to the Purchaser. If any contingency of this Agreement is not satisfied by no fault of the Purchaser, or if Purchaser shall terminate this Agreement pursuant to Paragraph 4.01, or upon a default by Seller, the Earnest Money shall be refunded to Purchaser. Seller acknowledges and agrees that Escrow Agent may act as attorney for Purchaser in connection with closing this transaction. Seller agrees that the Escrow Agent is not disqualified from acting as attorney for Purchaser under any circumstances based on said attorney also acting as Escrow Agent.

2.03   **Agreement Results From Negotiation:**   The parties acknowledge and agree that the terms of this Agreement are the result of a compromised settlement between the parties.

### 3. CLOSING

3.01   **Closing:**   The closing hereunder ("*Closing*") shall take place on or before December 30, 2008 at the offices of Haynsworth Sinkler Boyd, PA, in Charleston, South Carolina, or at such other time, date or place as the parties may mutually agree in writing, at which time possession will be given and at which time Seller will deliver a general warranty deed sufficient under the laws of the State of South Carolina to convey good, marketable and insurable fee simple title (both in fact and of record) to the above described Property to the Purchaser, free from all liens, restrictions, leases and encumbrances, except current property taxes and except as herein set forth, and with all recording charges which are based on value pursuant to S.C. Code Ann. 12-24-10 et. Seq. paid by Seller.

3.02   **Adjustments:**   The parties hereto agree that all taxes upon the subject Property levied or to be levied in the calendar year in which the deed is delivered and all rents,

income and expenses of the Property will be pro-rated to date of Closing, and this provision shall survive Closing. The entire amount of all other annual assessments levied on or with respect to the Property prior to the date of Closing (whether payable in installments or not) shall be paid by Seller at or prior to Closing.

3.04    **Disbursement:**        At Closing, Seller shall execute all appropriate documents and deliver such documents to Purchaser's closing attorney. Recording of the deed and other appropriate Seller documents and disbursement of closing proceeds shall be made by the closing attorney on the day of Closing.

3.05    **Reserved.**

## 4. CONTINGENCIES, CONDITIONS, INSPECTION PERIOD

4.01    **Inspection Period:**   Purchaser shall have until 10:00 a.m., EST, on November 10, 2008 (the *"Inspection Period"*) within which to examine the Property pursuant to this Agreement and during which time Purchaser and Purchaser's representatives may enter the Property pursuant to the same relevant terms of that certain Access Agreement between Purchaser and Seller dated July 3, 2008 for the purpose of inspection and conducting surveys as may be deemed necessary or desirable by Purchaser and for other proper purposes pursuant to this Agreement. Purchaser may cancel this Agreement by written notice to Seller given within the Inspection Period if Purchaser shall find in Purchaser's sole judgment that the premises are not suitable for Purchaser's intended use or that Purchaser's intended use of the premises is not feasible. If Purchaser shall so terminate this Agreement, the Earnest Money shall be paid to Purchaser and thereupon all rights, duties and obligations under this Agreement shall terminate and be of no further

force nor effect, except those, if any, which are expressly stated to survive termination of this Agreement.

4.02    **Purchaser Contingencies:**   Purchaser's obligation to perform hereunder is contingent upon accomplishment, if not already accomplished, of all of the following prior to Closing, but Purchaser may waive any of the following contingencies at Purchaser's sole discretion:

(a)    Purchaser acknowledges it has received an environmental report satisfactory to Purchaser in Purchaser's sole discretion.

(b)    Purchaser acknowledges it has received a physical survey of the Property and improvements satisfactory to Purchaser in Purchaser's sole discretion.

(c)    Purchaser shall have received a commitment for owner and lender title insurance policies to be obtained at Purchaser's expense at a premium and on terms and conditions satisfactory to Purchaser in Purchaser's sole judgment and without exception such as may be acceptable to Purchaser and the title company shall be prepared to issue at Closing owner and, if applicable, lender title insurance policies in accordance with said commitment.

(d)    Seller shall have performed all of the Seller's pre-Closing obligations pursuant to this Agreement.

(e)    Approval by the City Council of the City of Charleston (*"City Council"*) of this Agreement. This Agreement shall not become effective unless approved by City Council.   If this Agreement is not approved by City Council on or before December 10, 2008, it shall be null and void.

4.03    **Seller Documents:**    At or prior to Closing, Seller shall provide to Purchaser the following:

(a)    Seller shall deliver at Closing an affidavit and agreement satisfactory to attorney for Purchaser and to Purchaser's title insurance company, in their reasonable judgment, evidencing that the Property is free and clear of non-record matters affecting title, including without limit assurances as to absence of mechanics lien claims, and evidencing Seller's responsibility for any such defects.

(b)    Seller shall deliver at Closing a deed, bill of sale, assignment of leases and such other documents as may be necessary to satisfy Seller's obligations pursuant to this Agreement, including but not limited to evidence satisfactory to Purchaser's title insurance company, lender (if applicable) and counsel, each in their reasonable discretion, that Seller has been duly organized and exists in good standing in its state of incorporation and in South Carolina and that Seller has duly authorized, executed and delivered this Agreement and all documents required of Seller pursuant to this Agreement.    Seller may satisfy such requirements by delivery of a Secretary's Certificate and the Certificates required by the further provisions hereof; it being agreed that Seller shall not be obligated to deliver an opinion of counsel.    Seller shall deliver at Closing a current Certificate of Existence from the South Carolina Secretary of State and a Certificate of Tax Compliance from the South Carolina Department of Revenue.

(c)    At Closing Seller shall deliver such documents and take such actions as Purchaser's title insurance company shall customarily and reasonably require of sellers in similar circumstances in order to issue Purchaser's title insurance

policies without exception, other than those shown on the title commitment received and determined to be acceptable to Seller during the Inspection Period.

(d)     Within ten (10) days from the Contract Date, Seller shall deliver to Purchaser copies of evidences of title (including but not limited to deeds, surveys, title insurance policies and attorney title opinion letters), leases, contracts, warranties, plans, specifications, engineering reports, environmental reports as listed in Exhibit C and notices pertaining to the Property and reasonably available to Seller. When available, originals of all such items shall be delivered to Purchaser on or before Closing.

(e)     Seller shall provide to Purchaser within ten (10) days after the Contract Date of this Agreement copies of any and all documents relating to the environmental condition of the Property that are in the possession, custody or control of any of the Seller, Seller's agents, Seller's contractors and representatives as listed in Exhibit C.

4.04    **Critical Dates:**

(a)     The term *"Contract Date"* shall mean the date on which this Agreement has been fully executed by both the Purchaser and the Seller. Purchaser shall deliver a fully executed (by Purchaser) copy via facsimile or as a PDF attached to email of this Agreement to Seller on or before November 7, 2008, or this Agreement is canceled and of no force or effect. Seller shall deliver a fully executed (by Seller) copy via facsimile or as a PDF attached to email of this Agreement to Purchaser on or before November 10, 2008, or this Agreement is canceled and of no force or effect. Three originals of this Agreement, signed by Seller, shall be presented to

Purchaser on or before November 17, 2008. Three originals of this Agreement, signed by Purchaser, shall be presented to Seller on or before November 17, 2008.

(b)    Seller filed a voluntary petition for reorganization relief pursuant to Title 11 of the United States Code, 11 U.S.C. Sections 101 et seq., in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*") on April 2, 2001, and operates its business as a debtor-in-possession (as defined in Section 1101 of the Bankruptcy Code). This Agreement shall not become effective unless approved by the Bankruptcy Court, and the term "*Effective Date*" shall be the date on which the Bankruptcy Court enters an order approving this Agreement. If this Agreement is not approved by the Bankruptcy Court on or before December 18, 2008, it shall be null and void unless otherwise mutually agreed to in writing by the parties hereto.

## 5. ADDITIONAL PROVISIONS

5.01    **Risk of Loss:**         During the term of this Agreement, the Seller agrees to maintain the Property in its present or similar undeveloped condition subject to normal wear and tear. Risk of loss or damage by fire or other casualty until recordation of the deed shall be the responsibility of the Purchaser.

5.02    **Withholding:**         Seller acknowledges that withholding from the sales proceeds may be required pursuant to South Carolina law if Seller is not a South Carolina resident or pursuant to federal law if Seller is a non-resident of the United States of America. Seller shall deliver at Closing affidavits in form prescribed by the South Carolina Department of Revenue and the Internal Revenue Service evidencing the residency status of Seller and withholding, if any, shall be computed based on the information provided in said affidavit

as provided by South Carolina and federal law. Seller's taxpayer identification number is 13-5114230.

5.03    **Purchaser Remedies:**        In the event of default by Seller, the Purchaser shall be entitled to (a) the remedy of specific performance whereby the Seller shall be required to perform, or (b) an action for damages resulting from the breach of contract by Seller, provided, however, that the amount of such damages that are recoverable shall not exceed $50,000.00, together with a return of the Earnest Money and recovery of attorney's fees and court costs recoverable under Section 5.05 below, or (c) return of the Earnest Money paid hereunder and cancellation of this Agreement. If any condition to Seller's obligation to perform is not satisfied by the scheduled Closing date, Purchaser may cancel this Agreement and have a refund of the Earnest Money, in addition to any other remedy available to Purchaser at law or in equity. In the event Purchaser shall require specific performance, the Earnest Money shall apply to the purchase price.

5.04    **Seller Remedies:**      In the event of default by Purchaser, the Seller shall be entitled (a) retain the Earnest Money paid hereunder as liquidated damages or (b) the remedy of specific performance of this Agreement. If the remedy of retaining the Earnest Money is chosen by Seller and upon payment to Seller of the Earnest Money as provided in this paragraph, all rights and obligations pursuant to this Agreement shall terminate except those, if any, which are expressly stated to survive termination of this Agreement.

5.05    **Attorney Fees:**      In the event of a suit for specific performance or damages hereunder, the prevailing party shall be entitled to reasonable attorneys' fees and court costs, provided, however, that this Paragraph 5.05 shall not be applicable to (nor shall it

limit) the recovery of costs or attorneys' fees in any condemnation action between the parties.

5.06  **Brokerage:**      Purchaser and Seller represent and warrant to one another that neither has dealt with a broker or agent in connection with this transaction, and to the extent either party has so dealt, such party shall be solely responsible for any commissions claimed by such broker or agent.

5.07  **Notice:**      Any notice required or permitted to be given pursuant to this Agreement shall be in writing and shall be deemed to have been given (1) on the day of the transmittal by electronic means of such notice, or (2) on the day of timely depositing the same with a nationally recognized overnight delivery service for next day delivery, or (3) when delivered personally to the following, or in conjunction with one of the above, 4) on the day of deposit in the United States Mail, postage prepaid, certified mail, return receipt requested, and addressed (depending on the method of delivery) as follows:

IF TO SELLER:          Paul Bucens, PE
                       Project Manager
                       Remedium Group, Inc.
                       62 Whittemore Avenue
                       Cambridge, MA 02140
                       E-mail: Paul.G.Bucens@grace.com
                       Facsimile: (617) 498-2677

                       With a copy to:

                       Lydia B. Duff, Esquire
                       Senior Environmental Counsel
                       W.R. Grace & Co.
                       7500 Grace Drive
                       Columbia, MD 21044
                       E-mail: lydia.duff@grace.com
                       Facsimile: (410) 531-4783

IF TO PURCHASER: Colleen Carducci
                       Director of Real Estate Management

City of Charleston
823 Meeting Street (29403)
P.O. Box 304
Charleston, SC  29402
E-mail:  carduccic@ci.charleston.sc.us

With a copy to:

David C. Humphreys III, Esq.
Haynsworth Sinkler Boyd, P.A.
134 Meeting Street, 3rd Floor
Charleston, SC  29402
E-mail: dhumphreys@hsblawfirm.com

5.08   **Representations:**    Seller represents and warrants that to Seller's knowledge (1) Seller

is now the sole and only owner of the Property and has full legal right and power, subject

to the approval by the Bankruptcy Court as described in paragraph 4.04, to execute this

Agreement and to perform hereunder without need for joinder of any third person; (2)

except to the extent made by Purchaser, that there is no pending or threatened

condemnation or similar action for the taking of all or any portion of the Property by any

public or quasi-public body of which the Seller has received any notice nor is there any

adverse claim to the Property by any third party of which the Seller has received any

notice; and (3) that the Property does not (and at Closing will not) constitute a majority of

Seller's assets.

5.09   **Post Closing Obligations:**    Purchaser and Seller acknowledge that the Property is the

subject of that certain Administrative Consent Agreement 89-34-SW,S between Seller

and  the  South  Carolina  Department  of  Health  and  Environmental  Control

(*"Department"*) and to the Department's 2002 Record of Decision amending said

Administrative Consent Agreement ("Consent Agreement").  Purchaser and Seller also

acknowledge that Purchaser has requested and expects to receive a Voluntary Cleanup

Contract ("VCC") from the Department for the Property.   After closing, Seller and Purchaser shall have certain obligations to the Department for the Property.

(a)   Purchaser is responsible for 1) any requirements in the VCC, 2) any requirements required of Purchaser by the Department, and 3) any results of any activities of Purchaser on the site, including its development, management of the soil and/or groundwater, and for any sampling, excavation, testing, and disposal of any and all material from the Property related to the Purchaser's development of the Property.

(b)   Seller acknowledges that it is responsible after closing for those matters required by the Department under the Consent Agreement, including the need to access the Property for sampling of groundwater wells.

(c)   Pursuant to the reservation of a right of access for Seller in the deed to the Property, Seller may enter the Property, with notice and in cooperation with the Purchaser, to perform its obligations under the Consent Agreement. Seller agrees to abandon the reserved right of access to the Property upon notice from the Department that no further action under the Consent Agreement is required of Seller.   It is acknowledged that Seller shall only be responsible for those activities required of it on the Property by the Department under the Consent Agreement, at the completion of which Seller will abandon the groundwater monitoring wells and request a determination from the Department that no further action is required of Seller under the Consent Agreement.

(d)   Purchaser acknowledges that upon taking possession of the Property at Closing it is responsible for compliance with the terms of the recorded restrictive covenants

on the Property, including but not limited to the annual reporting requirement, and for excavating and performing activities on the Property only as may be authorized by the Department pursuant to the proposed VCC or otherwise. Purchaser acknowledges that it is responsible for the safety of workers, employees and others that may enter the Property for any purpose, for handling soil or groundwater on the site consistent with the Department's requirements, including any testing, sampling, or disposal.

(e)    To the extent that Seller or Purchaser need to use an EPA generator identification number in regard to material originating on the Property, that each will use their own number provided by the Department or EPA, and that neither will use the generator identification number of the other for any purpose in the handling, transport, or disposal of any material.

(f)    Purchaser and Seller agree to work cooperatively to minimize the effect of any Department requirements on either party to the Purchaser's proposed operation or use of the Property and to minimize the cost to Seller, and acknowledge that implementing Department requirements on the Property is not an interference with the use of the Property.

(g)    Purchaser acknowledges that the Property has been the subject of a clean up by Seller under the direction of the Department. Purchaser acknowledges it has a duty of care to take reasonable steps regarding any contamination remaining on the Property pursuant to the Department's approval of work under the Consent Agreement. Purchaser acknowledges that any work required by the Department

to be performed by Purchaser on the Property is solely Purchaser's responsibility, and that no costs incurred thereby are recoverable against Seller.

(h)   Purchaser warrants that it will not perform environmental investigations of any sort of the Property except if the same is reasonably related to its plans for development and use of the Property.

(i)   The provisions of this paragraph 5.09 shall survive Closing.

### 6. FORMAL AGREEMENTS

6.01   **Miscellaneous:**   The parties further covenant and agree, that this written instrument expresses the entire agreement between the said parties, and there is no other agreement oral or otherwise varying or modifying the terms of this Agreement. This Agreement may be modified only by an instrument in writing signed by both Purchaser and Seller. This Agreement is and shall be binding on both parties, their successors, heirs, executors, administrators and assigns. Section headings are for convenience only and do not constitute a substantive part of this Agreement. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement shall be governed by, interpreted and enforced in accordance with the laws of the State of South Carolina. Time is of the essence with respect to all terms and provisions contained in this Agreement. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same Agreement.

Witness our Hands and Seals, as of the _____ day of _____, 2008.

IN THE PRESENCE OF:                     AS SELLER:

                                        W. R. Grace and Co.-Conn.   (SEAL)


_____               By: _____


_____               Its:_____
As to Seller
                                        Date of Signature:_____



                                        AS PURCHASER:

                                        CITY OF CHARLESTON, SOUTH CAROLINA

                                        (SEAL)


_____               By: _____


_____               Its:__Mayor_____
As to Purchaser
                                        Date of Signature:__11/7/08_____



Charleston: 413588 v.9                      15

## EXHIBIT A

*(Description of Real Estate)*

(Attached to Contract of Sale between W. R. Grace and Co.-Conn., Seller, and City of

Charleston, South Carolina, Purchaser)

All that certain piece, parcel or tract of land, situate, lying and being in the City of Charleston, County of Charleston, State of South Carolina, shown and designated as TMS 464-02-00-051, WR Grace and Co, 16.464 Acres, on a plat entitled, "PLAT SHOWING THE BOUNDARY SURVEY OF A 16.464 ACRE PARCEL OWNED BY WR GRACE AND COMPANY LOCATED IN THE CITY OF CHARLESTON, CHARLESTON COUNTY, SOUTH CAROLINA," by Engineering, Surveying, & Planning, Inc. dated February 5, 1991, revised February 13, 1992 and recorded in Plat Book CG at Page 177 in the RMC Office for Charleston County.  Said tract having such size, shape, dimensions, buttings and boundings as will by reference to said plat more fully appear.

It being the intention to describe all of the real property of W. R. Grace and Co.-Conn. At the

above location, however acquired.

For copy of the tax map showing the Property, see Schedule A-1 attached and incorporated by

reference.

## SCHEDULE A-1

*(Tax Map)*

(Attached to Contract of Sale between W. R. Grace and Co.-Conn., Seller, and City of Charleston, South Carolina, Purchaser)

## EXHIBIT B

*(Schedule of Personal Property)*

NONE.

(Attached to Contract of Sale between W. R. Grace and Co.-Conn., Seller, and City of Charleston, South Carolina, Purchaser)

Exhibit C
*(Reports)*

| Document - Abbreviated Title | Author | Date |
|---|---|---|
| Letter to DHEC - Clarification of Deed Restrictions | Remedium | 9-Sep-08 |
| Groundwater and Surface Water Data, Second Round Sampling Event (July 2008) | Remedium | 7-Sep-08 |
| Letter to Remedium - Clarification of Deed Restrictions | DHEC | 20-Aug-08 |
| Groundwater and Surface Water Data, First Round Sampling Event (April 2008) | Remedium | 2-Jun-08 |
| Declaration of Covenants and Restrictions | W.R. Grace | 26-Feb-08 |
| Long-Term Groundwater Monitoring Workplan, 9-2007, Revised 2-12-2008 | RMT | 12-Feb-08 |
| Certification of Remedial Action Construction Documentation | RMT | 6-Feb-08 |
| Remedial Action (RA) Construction Documentation, 2-2008 | RMT | 5-Feb-08 |
| ALTA/ACSM Land Title Survey | Island Surveying | 21-Sep-07 |
| Letter to DHEC - Status Report, Remedial Action (Wetland Area) | Remedium | 1-Jun-07 |
| Letter to DHEC - On-Site As-Built Composite Sample Report, Remedial Action (Wetland Area) | Remedium | 9-Mar-07 |
| Technical Memorandum: Revised Off-site Groundwater and Surface Water Data | RMT | 25-Jul-06 |
| Letter to DHEC - As-Built Sample Report, Remedial Action (Upland Area) | Remedium | 8-Mar-06 |
| Letter to DHEC - As-Built Sample Report, Remedial Action (Upland Area) | Remedium | 16-Feb-06 |
| 2002 SCDHEC Record of Decision | DHEC | 12-Nov-02 |
| Feasibility Study Technical Memorandum | RMT | November 2001 |
| Second Quarter Groundwater and Supplemental Surface Water Investigation Findings | RMT | 31-Mar-00 |
| Baseline Risk Assessment Technical Memorandum | RMT | May 1999 |

19

Charleston: 413588 v.9