SA-1850

5-13-85

X-C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

MARYLAND CASUALTY COMPANY,                    :

                          Plaintiff,          :

          -against-                           :

W.R. GRACE & CO., CONTINENTAL                 :
CASUALTY COMPANY, ROYAL INDEMNITY
COMPANY, AETNA CASUALTY & SURETY              :
COMPANY, and GENERAL INSURANCE COMPANY
OF AMERICAN                                   :

                          Defendants.         :

- - - - - - - - - - - - - - - - - - -x

ANSWER, CROSS-
CLAIMS AND COUNTER-
CLAIMS OF DEFENDANT
W.R. GRACE & CO.

83 Civ. 7451 (SWK)

          Defendant W.R. Grace & Co. ("Grace"), by its

attorneys, for its answer, counterclaims and cross-claims

states as follows:

### First Defense

          1.    Admits, on information and belief, the allega-

tions contained in paragraph 1 of the Amended Complaint.

          2.    Admits the allegations contained in paragraph 2

of the Amended Complaint.

          3.    Denies knowledge and information sufficient to

form a belief as to the truth of the allegations contained in

paragraph 3 of the Amended Complaint, except admits that Con-

tinental Casualty Company ("CNA") has sold liability insurance

coverage to Grace since at least June 30, 1973.

-1-

4.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the Amended Complaint except affirmatively alleges that Royal Indemnity Company ("Royal") sold liability insurance coverage to Grace, or various predecessor companies of Grace, for at least all or part of the periods April 1, 1950 to April 1, 1963 and from May 26, 1967 to March 26, 1968.

5.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Amended Complaint except affirmatively alleges that Aetna Casualty and Surety Company ("Aetna") sold liability insurance coverage to Grace, or various predecessor companies of Grace, for at least the period from December 30, 1965 to December 30, 1966.

6.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Amended Complaint except affirmatively alleges that General Insurance Company of America ("General") sold liability insurance coverage to Grace, or various predecessor companies of Grace, for at least the period from June 1, 1966 to June 1, 1967.

7.   Paragraph 7 of the Amended Complaint contains conclusions of law and not allegations of fact requiring an answer; but if an answer is deemed required, admits that the Amended Complaint characterizes jurisdiction of this action as

SA-1852

arising under 28 U.S.C. § 1332, and venue as arising under 28 U.S.C. § 1391 (a) and (c), but denies that, when the parties are properly realigned, there is diversity of citizenship.

8.   Paragraph 8 of the Amended Complaint contains conclusions of law and not allegations of fact requiring an answer; but if an answer is deemed required, admits that the Amended Complaint characterizes this action as one "for declaratory judgment pursuant to Title 28, United States Code, § 2201 and 2202."

9.   Admits the allegations contained in paragraph 9 of the Amended Complaint, and affirmatively alleges that a) over 1100 lawsuits have been filed against Grace alleging bodily injury as a result of exposure to asbestos products manufactured or sold by Grace, and b) approximately 47 of those lawsuits have been settled or otherwise disposed of, as a consequence of which Grace has made payments to plaintiffs therein exceeding $500,000.

10.   Admits the allegations contained in paragraph 10 of the Amended Complaint.

11.   The first four sentences of paragraph 11 of the Amended Complaint are incomprehensible and incapable of response since they refer to bodily injury and property damage claims alleged in paragraphs "6 and 7 of this Complaint" and in fact no such claims are alleged in paragraphs 6 and 7 of the Amended Complaint.  Grace otherwise denies the allegations

-3-

SA-1853

contained in paragraph 11 of the Amended Complaint and affirma-
tively alleges that Maryland Casualty Company ("Maryland
Casualty"), CNA, Aetna, Royal and General are each obligated to
defend fully all asbestos-related claims and lawsuits against
Grace and to pay in full Grace's asbestos-related legal
liability.

12.    Admits the allegations contained in paragraph 12
of the Amended Complaint that Maryland Casualty sold liability
insurance policies to Grace during the period from at least
1955 to at least June 30, 1973, and refers to policy number
31R-911051 for its full terms and conditions, but denies the
allegation that coverage sold by Maryland Casualty during this
period was not continuous.

13.    Denies the allegations contained in paragraph 13
of the Amended Complaint as stated, but admits that Maryland
Casualty has generated a purported dispute between Grace and
Maryland Casualty concerning Maryland Casualty's obligations
under the liability insurance policies sold to Grace.

14.    The first two sentences of paragraph 14 of the
Amended Complaint are incomprehensible and incapable of
response since they refer to asbestos claims such as those
described in paragraph 7, and no such claims are described in
paragraph 7 of the Amended Complaint.  Grace otherwise denies
the allegations contained in paragraph 14 of the Amended Com-
plaint as stated, but admits that Maryland Casualty has gen-

-4-

erated a purported dispute between Grace and Maryland Casualty concerning Maryland Casualty's obligations under the liability insurance policies sold to Grace.

15.   The first sentence of paragraph 15 of the Amended Complaint is incomprehensible and incapable of response since it refers to the asbestos lawsuits described in paragraphs 6 and 7, and no such lawsuits are described in paragraphs 6 and 7 of the Amended Complaint.  Grace otherwise denies the allegations contained in paragraph 15 of the Amended Complaint as stated, and denies knowledge and information sufficient to form a belief as to CNA's coverage position.

16.   Except to the extent admitted by Grace in its response to allegations 1 through 6 of the Amended Complaint, Grace denies the allegations contained in paragraph 16 of the Amended Complaint, except admits that Royal, Aetna and General have disclaimed liability for asbestos-related bodily injury and property damage claims made against Grace.

17.   Denies each and every allegation contained in paragraph 17 of the Amended Complaint as stated, except denies knowledge or information sufficient to form a belief as to whether Maryland Casualty has a claim against any other insurance carrier.

18.   Denies the allegations contained in paragraph 18 of the Amended Complaint as stated, admits that Maryland Casualty has generated a purported actual and justiciable con-

troversy between Grace and Maryland Casualty, and denies knowledge and information sufficient to form a belief as to the truth of the allegation that there exists an actual and justiciable controversy between Maryland Casualty and the other insurance carriers who are parties to this action.

19.   Paragraph 19 of the Amended Complaint contains conclusions of law and not allegations of fact requiring an answer; but if an answer is deemed to be required, admits that paragraph 19 characterizes the relief sought by the Amended Complaint as "a declaration by the Court in connection with all disputes regarding the contractual insurance relationships between plaintiff and defendant Grace, of all rights and legal obligations between plaintiff and defendant Grace, between plaintiff and each of the defendant insurers, and between defendant Grace and each of the defendant insurers to the extent that those contractual obligations effect Maryland Casualty's obligations to Grace."

20.   Admits the allegations contained in paragraph 20 of the Amended Complaint except denies knowledge or information sufficient to form a belief as to the existence of any action commenced by Maryland Casualty or CNA to which Grace is not a party.

21.   All allegations in the Amended Complaint not specifically admitted herein are denied.

SA-1856

## Second Defense

22.    Plaintiff has failed to state a claim against Grace upon which relief can be granted.

## Third Defense

23.    Plaintiff's claims are barred and precluded by the provisions, terms, and conditions of the liability insurance policies that Maryland Casualty sold to Grace.

## Fourth Defense

24.    This Court lacks subject matter jurisdiction, in that, when Royal, Aetna and General are properly realigned as plaintiffs, there is not complete diversity of citizenship between the parties.

## COUNTERCLAIM AGAINST PLAINTIFF MARYLAND CASUALTY AND CROSS-CLAIMS AGAINST DEFENDANTS ROYAL, AETNA AND GENERAL

Although Grace contends that this action should be dismissed on the grounds, _inter alia_, of lack of subject matter jurisdiction, to preserve its rights against its insurance carriers, Grace asserts the following counterclaims and cross-claims against plaintiff Maryland Casualty, and defendant Royal, Aetna, and General.

1.    Upon information and belief, Maryland Casualty is incorporated under the laws of the State of Maryland and has

-7-

SA-1857

its principal place of business at 3910 Keswick Road, Baltimore, Maryland 21203.

2. Upon information and belief, defendant Royal is incorporated under the laws of the State of Delaware, with its principal place of business at 150 William Street, New York, New York 10038.

3. Upon information and belief, defendant Aetna is incorporated under the laws of the State of Connecticut, with its principal place of business at 151 Farmington Avenue, Hartford, Connecticut 06156. Aetna is licensed to do business, and is doing and transacting business in New York.

4. Upon information and belief, defendant General is incorporated under the laws of the State of Washington, with its principal place of business at Safeco Plaza, Seattle, Washington 98185. General is licensed to do business, and is doing and transacting business in New York.

5. Grace is incorporated under the laws of the State of Connecticut and has its principal place of business at 1114 Avenue of the Americas, New York, New York 10036.

6. Each of the counterclaims and cross-claims herein arises out of the same transactions or occurrences that are the subject matter of plaintiff's Amended Complaint.

## The Insurance Policies Sold To Grace

7.   Maryland Casualty, Royal, Aetna and General are and, at all relevant times mentioned herein, were engaged in the business of writing comprehensive general or general liability insurance.

8.   From at least 1955 to 1973, Maryland Casualty sold the following comprehensive general liability insurance policies to Grace:

| POLICY NUMBER | POLICY PERIOD |
|---|---|
| 96-192700 | at least 1955-6/30/61 |
| 96-205800 | 6/30/61 - 6/30/62 |
| 96-224900 | 6/30/62 - 6/30/63 |
| 96-243400 | 6/30/63 - 6/30/64 |
| 96-257400 | 6/30/64 - 6/30/65 |
| 96-269500 | 6/30/65 - 6/30/66 |
| 31-278301 | 6/30/66 - 6/30/67 |
| 31R-911051 | 6/30/67 - 6/30/70 |
|  | 6/30/70 - 6/30/73 |

9.   Royal sold at least the following comprehensive general or general liability insurance policies to Grace or to various predecessors of Grace:

| POLICY NUMBER | POLICY PERIOD |
|---|---|
| RLG 12735 | 4/1/50-4/1/53 |
| RLG 27635 | 4/1/53-4/1/54 |
| RLG 31840 | 4/1/54-4/1/55 |
| RLG 035805 | 4/1/55-4/1/56 |
| RLG 045762 | 4/1/56-4/1/57 |
| RLG 045836 | 4/1/57-4/1/58 |
| RLG 053959 | 4/1/58-4/1/59 |
| RLG 021629 | 4/1/59-4/1/60 |
| RLG 021620 | 4/1/60-4/1/61 |
| RLG 021621 | 4/1/61-4/1/62 |
| Unknown | 4/1/62-4/1/63 |

SA-1859

10.    Aetna sold at least the following comprehensive general or general liability insurance policies to Grace or to various predecessors of Grace:

| POLICY NUMBER | POLICY PERIOD |
|---|---|
| 37-AL-011243 | at least 1966 |
| 33-A1-051406CC | 12/30/65-12/30/66 |

11.    General sold at least the following comprehensive general or general liability insurance policy to Grace or to a predecessor of Grace:

| POLICY NUMBER | POLICY PERIOD |
|---|---|
| BLP 270815 | 6/1/66-6/1/67 |

12.    Grace expended substantial premiums to purchase these comprehensive general or general liability insurance policies and has complied with all applicable conditions precedent under these policies.

### Allegations Relating to Grace

13.    At all times relevant hereto, Grace was, and is, an international chemical corporation with interests in natural resources and selected consumer services.

14.    These Counterclaims and Cross-claims concern insurance coverage originally sold by plaintiff and defendant insurance carriers to Grace and to various predecessors of Grace, including The Zonolite Company, or its subsidiaries, divisions, and affiliates.

15.    The Zonolite company was a corporation organized in 1922, under the laws of the State of Montana, as the Mineral

-10-

SA-1860

Carbon and Insulation Company. On April 23, 1923, the company changed its name to The Zonolite Company.

16. On March 20, 1939, The Zonolite Company merged with the Universal Insulation Company. As a result of the merger, the Universal Zonolite Insulation Company ("Universal Zonolite") was formed.

17. In July 1943, Universal Zonolite acquired an interest in Western Mineral Products Company.

18. On December 18, 1947, Universal Zonolite changed its name back to The Zonolite Company ("Zonolite").

19. Zonolite also owned interests in, _inter alia_, California Zonolite Company, incorporated in 1949; Vermiculite-Northwest, Inc., incorporated in 1944; Ari-Zonolite Company, incorporated in 1951; and Tennessee Zonolite Company, incorporated in 1961. These companies were partially-owned subsidiaries of Zonolite.

20. In June 1962, The Zonolite Company (Montana) merged with the Zonolite Company of Delaware. The surviving corporation acquired all of the assets, and assumed all of the liabilities, of the Zonolite Company (Montana).

21. On April 16, 1963, Grace acquired all of the assets of Zonolite. The corporate name was changed to the Montana Vermiculite Company, and this company was dissolved in September 1964.

SA-1861

22.   In 1966, Grace acquired the remaining interest
in Zonolite's partially-owned subsidiaries, including, but not
limited to, California Zonolite Company, Vermiculite-Northwest,
Inc., Ari-Zonolite Company, and Western Mineral Products
Company.   Grace acquired Tennessee Zonolite Company in 1967.

23.   Grace is entitled to coverage under any policies
sold by Royal, Aetna or General to Grace's predecessors,
including Zonolite.

### Background of Grace's Asbestos-
### Related Bodily Injury Litigation

24.   Over 1100 asbestos-related claims and lawsuits
have been filed against Grace and co-defendants nationally, in
which claimants have alleged bodily injury, wrongful death, or
loss of consortium arising out of alleged exposure to asbestos
or asbestos-containing products allegedly sold by Grace, or its
predecessors, and other defendants (the "asbestos-related
bodily injury cases").

25.   Of the hundreds of asbestos-related bodily
injury cases that have been filed against Grace, more than 1000
cases currently are pending against Grace.

26.   Approximately 47 asbestos-related bodily injury
cases have been settled, or otherwise resolved by Grace.

27.   Payments in excess of $500,000 have been made on
behalf of Grace to claimants in the asbestos-related bodily
injury cases.

-12-

SA-1862

28.    Grace faces mounting liability in the asbestos-related bodily injury cases that continue to be filed at the rate of approximately 38 per month.

29.    Grace has given Maryland Casualty, Aetna, Royal and General formal notice of the asbestos-related bodily injury lawsuits against Grace.

### Background of Grace's Asbestos-Related Property Damage Litigation

30.    Commencing in 1982, Grace has been named as a defendant or co-defendant in another series of asbestos litigation -- the "school district property damage cases."

31.    The claimants in the school district property damage cases allege that Grace or its predecessors manufactured and sold asbestos-containing products that were installed in various school buildings throughout the country.

32.    The claimants in the school district property damage cases seek damages caused by property damage and also allege that they were, and are, required to inspect such school buildings and to encapsulate or remove asbestos and asbestos-containing products from these buildings.

33.    Approximately 40 school district property damage cases have been filed and served upon Grace to date including:

(a)    School District of Philadelphia v. Johns-Manville Corp., No. 146 (Pa. Ct. C.P. filed May 3, 1982) ("School District of Philadelphia");

-13-

SA-1863

(b)    School District of Lancaster, Manheim Town-
ship School District, Lampeter -- Strasburg School District,
and Northeastern School District v. Lake Asbestos of Quebec,
No. 83-0268 (E.D. Pa. filed Feb. 10, 1983) ("Lancaster");

(c)    Los Angeles Unified School District v.
Owens-Corning Fiberglas Corp., (Superior Court filed Mar. 11,
1983) ("Los Angeles Unified School District");

(d)    Barnwell School District No. 45 v. united
States Gypsum, No. 83-1395 (E.D. Pa. filed Mar. 23, 1983)
("Barnwell");

(e)    Town of Hooksett School District v. W.R.
Grace & Co., No. C 83761D (D.N.H. filed Dec. 15, 1983)
("Hooksett");

34.    The Barnwell and Lancaster cases purport to be
class actions suits brought on behalf of all public and private
educational institutions throughout the United States similarly
situated to the plaintiffs in such school district property
damage cases.

35.    Grace has given Maryland Casualty, Aetna, Royal
and General formal notice of the asbestos-related school
district cases against Grace.

SA-1864

### First Counterclaim and Cross-claim against Maryland Casualty, Aetna, Royal and General

36. Grace repeats and realleges paragraphs 1 through 35 of its counterclaims and cross-claims as if set forth herein at length.

37. The claimants in the asbestos-related bodily injury cases against Grace seek damages for bodily injury, wrongful death, or loss of consortium allegedly caused by exposure to asbestos or asbestos-containing products which is alleged to have occurred, or could have occurred, during the times that the liability insurance policies sold to Grace, or to predecessors of Grace, by Maryland Casualty, Aetna, Royal and General were in full force and effect.

38. Maryland Casualty, Aetna, Royal and General are each obligated under their liability insurance policies to defend Grace fully, without any reservations of rights, and to pay for the full costs of such defense in each asbestos-related bodily injury case in which any portion of the alleged asbestos-related injury or disease process, from first inhalation of asbestos fibers, through the period of progressive injury or disease, until manifestation, is alleged to have occurred, or could have occurred, during their policy periods.

39. Maryland Casualty, Aetna, Royal and General are obligated to defend Grace fully, at no cost to Grace, and such obligation is not altered or diminished by the fact that an

-15-

SA-1865

insurance company may be defending Grace under a reservation of rights.

40.    Maryland Casualty, Aetna, Royal and General have breached the obligations set forth in the liability insurance policies that they sold to Grace, or to predecessors of Grace, by their failure and refusal to fulfill their complete duty to defend, without any reservations of rights, and to pay in full the costs of defense in the asbestos-related bodily injury cases, as set forth above.

41.    As a direct and proximate result of their breaches of contract, which are continuing to at least the date of these counterclaims and cross-claims, Maryland Casualty, Aetna, Royal and General have deprived Grace of the benefit of the full defense for which Grace has paid substantial premiums.

42.    An actual and justiciable controversy presently exists between Grace and Maryland Casualty, Aetna, Royal and General concerning the insurers' complete obligations to defend Grace, without any reservations of rights, and to pay in full, at no cost to Grace, for the costs of such defense in the asbestos-related bodily injury cases against Grace.

**Second Counterclaim and Cross-claim
against Maryland Casualty, Aetna,
Royal and General**

43. Grace repeats and realleges paragraphs 1 through 35 of its counterclaims and cross-claims as if set forth herein at length.

44. The claimants in the school district property damage cases seek to recover from Grace, and many other defendants, damages as a result of allegations of indivisible continuous property damage, the costs of inspection, and encapsulation or removal of asbestos and asbestos-containing products and to hold Grace and such other defendants liable for the costs of future inspection, encapsulation, or removal.

45. The school district property damage cases are based upon, _inter alia_, the allegation that Grace caused indivisible continuous property damage, which is alleged to have occurred, or could have occurred, in whole or in part, during the times that the liability insurance policies sold to Grace by defendants were in full force and effect.

46. The claimants in the school district cases against Grace essentially contend that indivisible continuous property damage occurred as a result of installation of asbestos and various asbestos-containing products in school buildings and that such school buildings were, and remain, at risk for such property damage by reason of installation of asbestos or asbestos-containing products.

-17-

47.    By way of example, the claimants in the school district property damage cases specifically have alleged the following indivisible continuous property damage against Grace:

(a)    In the School District of Philadelphia case, the complaint alleges that school buildings were constructed or renovated between 1948 and 1972 with asbestos-containing products which allegedly caused continuous property damage;

(b)    In the Lancaster case, the amended complaint specifically alleges at paragraph 19:

Substantial amounts of asbestos have been used in school buildings, particularly during the period 1946 through 1972.

The Lancaster case also alleges at paragraph 45:

Plaintiffs, as foreseeable and intended users of defendants' products, relied upon defendants' representations, skill, expertise and judgment in assuming that asbestos and hence friable asbestos-containing materials would not only perform as warranted, but were safe and would not cause plaintiffs to suffer property damage nor endanger the health of those entrusted to their care;

(c)    In the Los Angeles Unified School District case, the complaint alleges at paragraph 20:

As a direct and proximate result of the above-referenced conduct of the defendants, and each of them, asbestos and asbestos-containing products caused severe and permanent damage to plaintiff's personal and real property, all to the general damage of a sum in excess of Ten Million Dollars ($10,000,000);

(d)    In the Hooksett case, the complaint alleges at paragraph 7:

SA-1868

Defendant's asbestos products in the Underwood
School released and threatened to release asbestos
fibers contaminating its air, walls, floors, car-
peting and upholstery and invading the bodies of
students and school personnel.

The <u>Hooksett</u> case also alleges at paragraph 21:

As a reasonably foreseeable result of the aforesaid
breach of said implied warranties, which caused
defendant's dangerous asbestos products to be
placed in, contaminate and damage the Underwood
School, the plaintiff was forced to remove said
asbestos products from said school, and said
removal process has been expensive and time-consum-
ing and has caused various consequential damages,
including serious disruptions in the operation of
said school;

(e)    In the <u>Barnwell</u> case, the amended complaint
alleges at paragraph 15:

Asbestos fibers are extremely durable and their
size and shape permit them to remain airborne for
long periods of time.  A disturbance and/or deteri-
oration of friable asbestos-containing products
causes the release of asbestos fibers into the air
where they may be inhaled by school children and
school employees.  Thus, the presence of friable
asbestos in school buildings results in the contam-
ination of and harm to such property as well as
posing serious risk of harm to persons, threatening
physical injury and rendering plaintiff's property
unsafe and unreasonably dangerous.

48.    The alleged indivisible continuous property
damage referred to herein allegedly has resulted from breaches
of various duties claimed to have been owed to the claimants by
Grace and Grace's co-defendants in such cases.

49.    As a result of installation of asbestos or
asbestos-containing products, indivisible continuous property
damage is alleged to have occurred, or could have occurred, in

-19-

SA-1869

whole or in part, during the times that Maryland Casualty,
Aetna, Royal and General sold comprehensive general or general
liability insurance to Grace, or to predecessors of Grace.

50.   Maryland Casualty, Aetna, Royal and General are
obligated under their liability insurance policies to defend
Grace fully, without any reservations of rights, and to pay for
the costs of such defense in each asbestos-related school dis-
trict property damage case against Grace in which any portion
of the alleged indivisible continuous property damage, from
first installation of asbestos or asbestos-containing products,
and continuing thereafter, is alleged to have occurred, or
could have occurred, during their policy periods.

51.   Maryland Casualty, Aetna, Royal and General are
each obligated to defend Grace fully, at no cost to Grace, and
such obligation is not altered or diminished by the fact that
another insurance company may be defending Grace under a reser-
vation of rights.

52.   Maryland Casualty, Aetna, Royal and General have
breached their obligations set forth in the liability insurance
policies that they sold to Grace, or to predecessors of Grace,
by their failure and refusal to fulfill their complete duty to
defend, without any reservations of rights, and to pay in full
the costs of defense in the school district property damage
cases against Grace.

SA-1870

53.    As a direct and proximate result of their breaches of contract, which are continuing to at least the date of these counterclaims and cross-claims, Maryland Casualty, Aetna, Royal and General have deprived Grace of the benefit of the full defense for which Grace has paid substantial premiums.

54.    An actual and justiciable controversy presently exists between Grace and Maryland Casualty, Aetna, Royal and General concerning the insurance carriers' complete obligations to defend Grace, without any reservations of rights, and to pay in full, at no cost to Grace, for the costs of such defense in the asbestos-related school district property damage cases against Grace.

Third Counterclaim and Cross-claim
against Maryland Casualty, Aetna,
Royal and General

55.    Grace repeats and realleges paragraphs 1 through 35, and 37 through 42 of its counterclaims and cross-claims as if set forth herein at length.

56.    The liability insurance policies sold to Grace or to predecessors of Grace, by Maryland Casualty, Aetna, Royal and General provide insurance coverage against loss and liability arising from bodily injury cases, including the asbestos-related bodily injury cases against Grace.

57.    Maryland Casualty, Aetna, Royal and General have failed and refused to accept their complete obligations to pay

-21-

SA-1871

in full, without any reservations of rights, Grace's legal
liability in the asbestos-related bodily injury cases.

58.    Maryland Casualty, Aetna, Royal and General are
obligated under their liability insurance policies to pay in
full, without any reservations of rights, Grace's legal lia-
bility for all asbestos-related bodily injury cases, if any
portion of the alleged asbestos-related injury or disease pro-
cess, from first inhalation of asbestos fibers, through the
period of progressive injury or disease, until manifestation,
occurred during their policy periods, or if they cannot prove
that such injuries did not occur during their respective policy
periods.   The obligations of Maryland Casualty, Aetna, Royal
and General to Grace encompass all theories of legal liability
that may impose damages upon Grace.

59.    An actual and justiciable controversy presently
exists between Grace and Maryland Casualty, Aetna, Royal and
General concerning their obligations to pay in full, without
any reservations of rights, for the asbestos-related bodily
injury cases against Grace.

### Fourth Counterclaim and Cross-claim against Maryland Casualty, Aetna, Royal and General

60.    Grace repeats and realleges paragraphs 1 through
35 and 44 through 54 of its counterclaims and cross-claims as
if set forth herein at length.

SA-1872

61.    The liability insurance policies sold by
Maryland Casualty, Aetna, Royal and General to Grace, or to
predecessors of Grace, provide for insurance coverage against
loss and liability arising from property damage cases, includ-
ing the school district property damage cases against Grace.

62.    Maryland Casualty, Aetna, Royal and General have
failed and refused to accept their complete obligations to pay
in full, without any reservations of rights, Grace's legal
liability in the school district property damage cases against
Grace.

63.    Maryland Casualty, Aetna, Royal and General are
obligated under their liability insurance policies to pay in
full, without any reservations of rights, Grace's legal lia-
bility for all school district property damage cases against
Grace if any portion of the alleged indivisible continuous
property damage process, from first installation of asbestos or
asbestos-containing products, and continuing thereafter,
occurred during their policy periods, or if they cannot prove
that such property damage did not occur during their policy
periods.   The insurance carriers' obligations to Grace encom-
pass all theories of legal liability that may impose damages
upon Grace.

64.    An actual and justiciable controversy presently
exists between Grace and Maryland Casualty, Aetna, Royal and
General concerning their obligations to pay in full, without

-23-

any reservations of rights, for the asbestos-related school
district property damage cases against Grace.

### Fifth Counterclaim Against
### Maryland Casualty

65.    Grace repeats and realleges paragraphs 1 through
35, 37 through 42, and 56 through 59 of its counterclaims and
cross-claims as if set forth herein at length.

66.    The comprehensive general liability insurance
policies sold to Grace by Maryland Casualty provide that, in
addition to the obligation to pay all sums which Grace becomes
liable to pay to the individual claimants against Grace,
Maryland Casualty will defend any suit against Grace alleging
bodily injury, sickness or disease, and seeking damages on
account thereof.  Grace contends that such duty to defend is
separate and distinct from Maryland Casualty's duty to pay
damages, judgments and settlements and continues after the
exhaustion of Maryland Casualty's aggregate policy limits.

67.    The comprehensive general liability insurance
policies sold to Grace by Maryland Casualty provide that, in
addition to the obligation to pay all sums which Grace becomes
liable to pay to the individual claimants against Grace,
Maryland Casualty will defend any suit against Grace alleging
property damage and seeking damages on account thereof.  Grace
contends that such duty to defend is separate and distinct from
Maryland Casualty's duty to pay damages, judgments and settle-

-24-

ments and continues after the exhaustion of Maryland Casualty's aggregate policy limits.

68.    Maryland Casualty erroneously contends, or will contend, that notwithstanding the express obligations under-taken by it in its comprehensive general liability insurance policies as set forth above, it has no obligation to defend such asbestos-related bodily injury or property damage suits after the aggregate policy limits of its respective liability insurance policies are exhausted.

69.    An actual and justiciable controversy presently exists between Grace and Maryland Casualty concerning Maryland Casualty's continuing duty to defend all of the present and future asbestos-related lawsuits that allege bodily injury or property damage, or both, brought by all claimants against Grace, even after the aggregate policy limits of the comprehen-sive general liability insurance policies sold by Maryland Casualty to Grace have been exhausted.

### Sixth Counterclaim Against
### Maryland Casualty

70.    Grace repeats and realleges paragraphs 1 through 68 of its counterclaims and cross-claims as if set forth herein at length.

71.    The repeated failures and refusals of defendant Maryland Casualty to properly investigate the facts concerning the asbestos-related bodily injury and property damage claims

and lawsuits as set forth above and to timely defend Grace
against such claims were and are reckless, in bad faith, and in
willful breach of the obligations of defendant Maryland
Casualty to Grace under the Maryland Casualty comprehensive
general liability insurance policies sold to Grace for many
years.

72.    Grace repeatedly urged defendant Maryland
Casualty both orally and in writing, to negotiate and settle
the asbestos-related bodily injury and property damage lawsuits
covered by the Maryland Casualty liability policies, but
defendant Maryland Casualty has willfully, recklessly, inten-
tionally, and in bad faith refused to negotiate and settle such
claims. As a result, Grace has incurred, and continues to
incur, significant expenses in the negotiation and settlement
of such asbestos-related bodily injury and property damage
lawsuits.

73.    Among other things, Grace believes that Maryland
Casualty is a proponent of the manifestation theory of insur-
ance coverage which Maryland Casualty knows does not apply to
its comprehensive general liability insurance policies at issue
in this case.

74.    In failing and refusing to properly investigate
and defend Grace against the asbestos-related bodily injury and
property damage lawsuits as set forth above, defendant Maryland
Casualty has acted in a manner which has conflicted with the

-26-

interest of Grace. Maryland Casualty is guilty of bad faith, and willful misconduct since it consciously and recklessly has considered its own interests exclusively and wholly disregarded the interests of Grace. As a result of said conduct on the part of defendant Maryland Casualty, Grace was and continues to be forced to incur significant expenses, including substantial legal fees, in investigating and defending such asbestos-related bodily injury and property damage lawsuits. Grace has suffered, and will continue to suffer, damages as a result of Maryland Casualty's willful misconduct.

75.    Since Maryland Casualty sold comprehensive general liability insurance to Grace for at least the years 1955 to 1973, Maryland Casualty's repeated refusal to provide coverage to Grace is willful, reckless, intentional, and unfair conduct and is in violation of its contractual convenant of good faith and fair dealing toward Grace and its legal obliga-tions to Grace.

Seventh Counterclaim Against Maryland
Casualty and Fifth Cross-claim
Against Aetna, Royal and General

76.    Grace repeats and realleges paragraphs 1 through 74 of its counterclaims and cross-claims as if set forth herein at length.

77.    Pursuant to 28 U.S.C. § 2202, Grace claims that it is entitled to ancillary relief, including monetary damages.

-27-

SA-1877

WHEREFORE, Grace requests judgment on its Affirmative Defenses dismissing the Amended Complaint, and on its Counterclaims and Cross-claims as follows:

I.    On the First Counterclaim and Cross-claim against Maryland Casualty, Aetna, Royal and General, that this Court determine and declare:

(a)    That Maryland Casualty, Aetna, Royal and General are jointly and severally obligated under the liability insurance policies that they sold to Grace, or to predecessors of Grace, to defend Grace fully, without any reservations of rights, and to pay in full, at no cost to Grace, for the costs of such defense in each asbestos-related bodily injury case in which any portion of the alleged asbestos-related injury or disease process, from first inhalation of asbestos fibers, through the period of progressive injury or disease, until manifestation, is alleged to have occurred, or could have occurred, during their policy periods;

(b)    That Grace is entitled to designate the policy period that shall be called upon to provide such defense and to pay for the costs of such defense in the first instance; and

(c)    That Grace is entitled to compensatory damages according to proof at trial.

SA-1878

II.    On the Second Counterclaim and Cross-claim
against Maryland Casualty, Aetna, Royal and General, that this
Court determine and declare:

(a)    That Maryland Casualty, Aetna, Royal and
General are jointly and severally obligated under the liability
insurance policies that they sold to Grace, or to predecessors
of Grace, to defend Grace fully, without any reservations of
rights, and to pay in full, at no cost to Grace, for the costs
of such defense in each asbestos-related school district pro-
perty damage case in which any portion of the alleged indivis-
ible continuous property damage process, from first installa-
tion of asbestos or asbestos-containing products, and continu-
ing thereafter, is alleged to have occurred, or could have
occurred, during their policy periods;

(b)    That Grace is entitled to designate the
policy period that shall be called upon to provide such defense
and to pay for the costs of such defense in the first instance;
and

(c)    That Grace is entitled to compensatory
damages according to proof at trial.

III.    On the Third Counterclaim and Cross-claim
against Maryland Casualty, Aetna, Royal and General, that this
Court determine and declare:

(a)    That Maryland Casualty, Aetna, Royal and
General are jointly and severally obligated under the liability

insurance policies that they sold to Grace, or to predecessors of Grace, to pay in full, without any reservations of rights, Grace's legal liability for each asbestos-related bodily injury case if any portion of the alleged injury or disease process, from first inhalation of asbestos fibers, through the period of progressive injury or disease, until manifestation, occurred during their policy periods, or if they cannot prove that such injuries did not occur during their policy periods; and

(b)   That Grace is entitled to designate the policy period that shall be called upon to provide such payment in the first instance.

IV.   On the Fourth Counterclaim and Cross-claim against Maryland Casualty, Aetna, Royal and General, that this Court determine and declare:

(a)   That Maryland Casualty, Aetna, Royal and General are jointly and severally obligated under the liability insurance policies that they sold to Grace, or to predecessors of Grace, to pay in full, without any reservations of rights, Grace's legal liability for each asbestos-related school district property damage case if any portion of the alleged indivisible continuous property damage process, from first installation of asbestos or asbestos-containing products, and continuing thereafter, occurred during their policy periods, or if they cannot prove that such property damage did not occur during their policy periods; and

-30-

SA-1880

   (b) That Grace is entitled to designate the policy period that shall be called upon to provide such payment in the first instance.

   V. On the Fifth Counterclaim against Maryland Casualty, that this Court determine and declare that Maryland Casualty is obligated under each of its comprehensive general liability insurance policies to defend all of the present and future asbestos-related lawsuits that allege bodily injury or property damage, or both, brought by all claimants against Grace, even after the aggregate policy limits of the comprehensive general liability insurance policies sold by Maryland Casualty to Grace have been exhausted.

   VI. On the Sixth Counterclaim against Maryland Casualty:

   (a) For compensatory damages according to proof at trial; and

   (b) For punitive damages in the amount of ten thousand dollars for each asbestos-related bodily injury or property damage claim or lawsuit in which defendant Maryland Casualty wrongfully has refused to defend and indemnify Grace.

   VII. On the Seventh Counterclaim against Maryland Casualty and Fifth Cross-claim against Aetna, Royal and General:

   (a) For interest according to law;

SA-1881

    (b) For Grace's reasonable attorneys' fees and the costs and expenses of this suit; and

    (c) For such other and further relief as this Court deems just and proper.

Dated: New York, New York
    May 13, 1985

       ANDERSON RUSSELL KILL & OLICK, P.C.

      By _Jerold Oshinsky_
        Jerold Oshinsky, Esq.
        666 Third Avenue
        New York, New York  10017
        (212) 850-0700

      Attorneys for Defendant
       W.R. Grace & Co.

Of Counsel:

   Kevin T. O'Reilly, Esq.
   W.R. Grace & Co.
   1114 Avenue of the Americas
   New York, New York  10036

     and

   Eugene R. Anderson, Esq.
   Randy Paar, Esq.