MONTANA NINETEENTH JUDICIAL DISTRICT COURT, LINCOLN COUNTY

IN THE MATTER OF                )
                                )   CAUSE NO. DV-64-3987
MONTANA VERMICULITE COMPANY,    )
A dissolved Montana             )   JUDGE MICHAEL C. PREZEAU
corporation.                    )
                                )

Taken in the Lincoln County Courthouse
512 California Avenue, Libby, Montana 59923
Friday, March 22, 2002

TELEPHONIC APPEARANCES

JOHN LACEY, Esq.
JON HEBERLING, Esq.
745 South Main
Kalispell, MT  59901

Attorneys for the Petitioners

CARL PERNICONE, Esq.
Wilson, Elser, Moskowitz, Edelman
    & Dicker LLP
150 East 42nd Street
New York, New York  10017-5639

Attorney for Royal Indemnity

JANET BAER, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois  60601

Attorney for Chapter 11 to W.R. Grace

LAWRENCE SVERDRUP, Esq.
503 California Avenue
Libby, MT  59923

Potential Trustee

TRANSCRIPT OF TELEPHONIC HEARING
PETITION FOR APPOINTMENT OF TRUSTEE

DEBRA S. KAMBEL-COURT REPORTER
512 California Avenue
Libby, MT  59923
(406)293-8120

1    THE COURT: Good morning, this is Judge Prezeau.

2    JUDY: Hi, Judge Prezeau, this is Judy. I'm going to
3    try and hook us all in together here. Okay?

4    THE COURT: Thank you, Judy.

5    JUDY: I have a few more numbers here to call so hang
6    in there.

7    THE COURT: I'll do it.

8    JUDY: Okay. Do we have--Judge Prezeau, are you there?

9    THE COURT: Yes, I am.

10   JUDY: Larry, are you there?

11   MR. SVERDRUP: I'm here.

12   JUDY: Carl and Janet?

13   MR. PERNICONE: Carl is here.

14   MS. BAER: Jan is here.

15   THE COURT: Okay. Is it John Lacey from McGarvey?

16   MR. LACEY: I'm here along with Jon Heberling.

17   THE COURT: Okay.

18   MR. HEBERLING: Hey, Judge.

19   THE COURT: Good morning. In Lincoln County Cause
20   3987, *In the Matter of Montana Vermiculite Company*, this is
21   the time scheduled, on short notice, for a hearing on a
22   Petition for Appointment of Trustee. Participating in this
23   hearing are John Lacey and Jon Heberling, who represent four
24   Plaintiffs in lawsuits against W.R. Grace and its
25   predecessor in interest, Montana Vermiculite Company. And

1

1  then there were some other names, Larry, Carl and Jan, whose
2  full names I don't have, and I'm not exactly sure on whose
3  behalf you are participating.
4      Larry, are you there?
5      MR. SVERDRUP: Yes, I'm Lawrence Sverdrup, and I was
6  asked to be here.
7      THE COURT: I know--okay. Lawrence Sverdrup. Mr.
8  Sverdrup was identified as a potential trustee in the
9  Petition, and I don't know his position on that, if he even
10 has one. Let's see, there was Carl. Carl, are you there?
11     MR. PERNICONE: I am here, sir. Carl Pernicone from
12 Wilson Elser in New York, Your Honor. I represent Royal
13 Indemnity Company.
14     THE COURT: Carl, how do you spell that last name?
15     MR. PERNICONE: Carl with a C, and the last name is P
16 as in Peter, E-R-N as in Nancy, I-C-O-N-E.
17     MR. LACEY: Excuse me, Judge.
18     THE COURT: Yes.
19     MR. LACEY: This is John Lacey. Are we on the record?
20     THE COURT: Yes, we are.
21     MR. LACEY: Thank you.
22     THE COURT: You bet. Okay. And Jan, are you there?
23     MS. BAER: I am, Your Honor. Good morning. This Janet
24 Baer. I am at Kirkland and Ellis in Chicago. We are
25 Chapter Eleven counsel to Grace.

2

1       THE COURT: Thank you. I'm writing this down. I guess
2  what I was thinking in terms of kind of ground rules were
3  perhaps we'd hear from Plaintiffs' counsel in support of
4  their Petition. Hear from Mr. Pernicone and Ms. Baer, their
5  positions. And then give Plaintiffs' counsel a final
6  rebuttal. Does anybody have any problem with that process?
7  Plaintiffs' lawyers?
8       MR. LACEY: Sounds fine.
9       THE COURT: And how about you, Mr. Pernicone?
10      MR. PERNICONE: Fine with me, Judge.
11      THE COURT: And, Ms. Baer?
12      MS. BAER: That's just fine, thank you.
13      THE COURT: Okay. Fire away then, one of the Johns.
14      MR. LACEY: This is John Lacey. I think the Petition
15 pretty well speaks for itself. As you know, actions have
16 been filed against Montana Vermiculite. Service needs to be
17 effected. We cannot locate the trustees for the dissolved
18 corporation. And as the Notice of Dissolution states, the
19 Court has the power to appoint trustees when those trustees
20 are no longer able or willing to serve in their capacity as
21 trustees.
22      The issue ultimately probably comes back to the Grace
23 bankruptcy. Montana Vermiculite is not named as a debtor.
24 They cannot--there is no stay against any action against
25 them, although service is by no means a violation of the

3

1  stay in terms of an action against them or initiating an
2  action. Similarly, Royal Indemnity is not being served
3  here, or an action initiated against them through notice--or
4  through appointment of trustees against Montana Vermiculite,
5  to the extent coverage may exist and Royal Indemnity may
6  have the right, through the bankruptcy stay, to delay or
7  withhold any proceeding against Montana Vermiculite. That
8  is not an issue yet, until service has been accomplished
9  against Montana Vermiculite. So all we are really seeking
10 is to have an appointment of--pursuant to the Court's
11 authority in 1964, continuation of Montana Vermiculite
12 trustees.
13     THE COURT: Just out of curiosity, I know you refer to
14 the three year time limit for accomplishing service. Since
15 these four cases were removed to Federal Court, does that
16 switch us over to the Federal Rules of Civil Procedure on
17 that?
18     MR. LACEY: As far as three years...
19     THE COURT: Right.
20     MR. LACEY: ...applies, or...
21     THE COURT: I think there is a different rule. Just
22 looking at it quickly, it looks like there is a 120 day rule
23 in Federal Court, but I may be mistaken. I didn't have a
24 lot of time to research that. But that was more a point of
25 curiosity. So you think there is still some--some pressure

4

1  from the three year requirement for service?

2  MR. LACEY: At the very least we owe it to our clients
3  to proceed and have the defense be made by the Defendant.

4  THE COURT: All right. Okay. Mr. Pernicone? I'm
5  sorry, do I pronounce that E on the end?

6  MR. PERNICONE: You don't. You pronounced it
7  absolutely correctly.

8  THE COURT: Okay.

9  MR. PERNICONE: Hopefully I can short cut this because
10 I don't think Royal has got a dog in this fight at all. Let
11 me tell you why.

12 First of all, we're not affiliate of Grace, as Mr.
13 Lacey represented in paragraph 7 of his Petition. We've
14 never had any corporate relationship with Grace in the past,
15 nor do we now.

16 Here's the deal with Royal, Judge. We sold
17 comprehensive general liability coverage, CGL coverage for
18 short, between 1953 and 1963. The insureds, under those
19 policies, were the following three companies. Zonolite
20 Company, Zonolite Contractors, Incorporated, and a company
21 called Carolina Vermiculite. Royal has never heard of
22 Montana Vermiculite. They are not an insured under any of
23 the policies that I mentioned. We have no evidence that
24 Royal ever insured that particular company. Therefore, we
25 don't have any interest, let alone the interest that Mr.

Lacey talks about as being sufficiently synonymous with Montana Vermiculite to warrant appointing us as the trustee.

Beyond that, the coverage that I just mentioned, Judge, was actually the subject of a settlement with Grace back in 1995. We, in the settlement agreement, were declared to have fully satisfied whatever coverage obligation we may have owed Grace, or any of its predecessors, with respect to (phone cuts out--unintelligible) related claims. We actually have a release and a hold harmless with respect to Grace. So I repeat, you know, we don't have a dog in the fight, and I don't know why we are here.

THE COURT: I appreciate that you are here on such short...

MR. PERNICONE: And I would be happy, if it would help Mr. Lacey, to provide him with record copies from the Second Circuit Appeal of the policies that I referred to, so that he could look at them himself, and satisfy himself, that the entity that he is describing is not listed as an insured. If that would help, I'd certainly be happy to do that.

THE COURT: I doubt that it would hurt. Mr. Lacey, do you have any objection to that?

MR. LACEY: No, we'd love to see a copy of that.

MR. PERNICONE: I'll go ahead and do that, Your Honor.

THE COURT: I appreciate that. Ms. Baer, do you have a dog in this fight?

1      MS. BAER: Well, Your Honor, I think I might be the
2 only dog in the fight and I don't know why we're before you.
3 Your Honor, just to clear up. When Grace bought the
4 Zonolite Company back in the 60's, it was an asset purchase.
5 They purchased all of the assets of the company. They
6 purchased everything. And they got the insurance coverage.
7 What happened then, as I understand it, in the purchase, is
8 to preserve the name Zonolite as one of the assets they were
9 purchasing, the understanding was, that at the end of the
10 day, after Grace purchased all the assets, assumed all of
11 the liabilities, the corporate entity that was left over
12 because Grace did not assume, did not purchase the stock of
13 Zonolite Company, changed its name to Montana Vermiculite
14 Company, and then dissolved. That is nothing. Montana
15 Vermiculite Company has no assets, has no liabilities, has
16 no owners. It's been long gone and dissolved years, and
17 years and years ago.
18      To the extent that Mr. Heberling and Mr. Lacey and
19 their clients have claims for the Vermiculite Mine and
20 asbestos, unfortunately, for W.R. Grace, they are all of our
21 claims, because when we purchased, that was one of the
22 things we purchased. So Royal Indemnity, or the Royal
23 Insurance Company policies were the subject of extensive
24 litigation, and as Mr. Pernicone indicated, that matter was
25 all settled in 1994 and 1995. Royal received a release and

7

an indemnity from Grace. To the extent that the Plaintiffs have causes of actions, unfortunately, those causes of actions are against Grace. They are enjoined by the Grace bankruptcy automatic stay. And, in addition to that, we also have a preliminary injunction in the Grace bankruptcy case that prohibits (cough), excuse me, Your Honor, actions against our insurance carriers related to asbestos coverage. So several different ways you walk right up to and hit right against our bankruptcy case.

I don't understand why the Plaintiffs are pursuing in trying to get trustees appointed for an entity that has nothing, serves no useful purpose, and the most that could happen is at the end of the day you are back to Grace again. It seems to me kind of a callosal waste of time to be even before Your Honor on this matter.

THE COURT: Thank you. Mr. Sverdrup, do you have any interest in speaking up, or are you just monitoring this?

MR. SVERDRUP: I'm primarily just monitoring. I have no interest.

THE COURT: Thank you. Mr. Lacey, would you like to respond to Mr. Pernicone and Ms. Baer?

MR. LACEY: Well, first and foremost, based upon Mr. Pernicone's representations, we would be better off having Mr. Sverdrup and Mr. Barnes appointed as trustees. The point of naming Royal Indemnity here was to make sure that

8

1  to the extent its interest might be implicated in any
2  involvement of (unintelligible) with Montana Vermiculite
3  that it was able to represent those. But obviously, we have
4  a purely objective interest now without Royal Indemnity. So
5  we would go back to that element of the Petition that
6  requests, as an alternative, Mr. Sverdrup and Mr. Barnes be
7  appointed as trustee.
8      Second, as far as Ms. Baer's comments about this being
9  a callosal waste of time and not understanding our motives,
10 we're fully aware that at some point, this may be brought
11 within the bankruptcy. Until there is service effected
12 though, and we're better able to establish officially what
13 Montana Vermiculite's interest is here, we can't ever have
14 that resolved. And so, having a trustee appointed is simply
15 that. It's a matter of making sure that Montana
16 Vermiculite, to the extent that it has any responsibility
17 here, that that interest is fully accounted for. And
18 without trustees appointed, this corporation is no longer.
19 And, obviously, that wasn't the intent of the 1964
20 dissolution that allowed the Court to appoint future
21 trustees.
22     MR. HEBERLING: If I might add something, this is Jon
23 Heberling.
24     THE COURT: Yes.
25     MR. HEBERLING: ...to Mr. Pernicone's point. First of

1  all, Montana Vermiculite is a corporate name for Zonolite.
2  They sold insurance to Zonolite and Montana Vermiculite is
3  the successor registered with the Secretary of State.  We
4  have Plaintiffs who never worked for Grace, whose only claim
5  would be against Zonolite, and we want to make sure that
6  that claim is included within the bankruptcy and that the
7  insurance company's coverage is triggered.  As to any
8  settlement in 1995 between Grace and Royal Indemnity, that
9  of course, our Plaintiffs did not sign on to that, it
10 doesn't absolve Royal Indemnity from any liability they may
11 have to our Plaintiffs.
12      And as to Ms. Baer's point, the causes of action are
13 against Grace, well, no, technically they are against
14 Zonolite.  And we would be happy to present them against
15 Grace, if only Montana Vermiculite would become a debtor
16 within the Grace bankruptcy.  But until that time, there is
17 no tolling statute of limitations on our claims against
18 Zonolite and Montana Vermiculite, and so we must proceed and
19 get this trustee appointed.
20      MR. PERNICONE:  Your Honor, this is Carl Pernicone.
21 I'm not sure whether Mr. Heberling is overruling Mr. Lacey's
22 representation on the record that he was going to move to
23 the alternative trustee option.  Is he doing that?  Am I
24 back in this sight again?
25      THE COURT:  You don't have a dog, but you might be.

1  Was, Mr. Heberling, was your last comment contrary to what
2  Mr. Lacey had previously represented?
3      MR. HEBERLING:  No.  We're quite happy with Mr.
4  Sverdrup as trustee.
5      MR. PERNICONE:  And look, I'm not interested in
6  prolonging this.  I'll give you copies of the policies.  I'm
7  telling you that we've never heard of this entity.  So, I
8  don't know what more I can really do or say on behalf of
9  Royal.  But I'll send you the policies, and if you have any
10 questions, you know, you can certainly call me.
11     THE COURT:  And Mr. Sverdrup, he comes up in this--I
12 saw him referred to as an attorney and escrow agent.  Is
13 that--did you just pick his name out of the yellow pages or
14 how did that come about?
15     MR. HEBERLING:  I know Larry.  This is Jon Heberling.
16 And I know that they do escrow work.  I thought he'd be a
17 fine and neutral trustee.
18     THE COURT:  Okay.  Doesn't--I mean, doesn't the
19 appointment of a trustee trigger certain fiduciary duties,
20 and potential liabilities, and things like--Well, how would-
21 -how would you propose that Mr. Sverdrup's services would be
22 reimbursed?
23     MR. HEBERLING:  I'm afraid that we would have to cover
24 that.  And I think that we should establish him as a trustee
25 solely for purposes of service of process.

                                                           11

1   THE COURT: And, Mr. Heberling, do you think that since
2   the four Plaintiffs' cases have been--have been removed to
3   Federal Court, are we somehow bumping up against some sort
4   of federal process or procedure that's different than what
5   we might have if these cases were still here in State Court?
6   MR. LACEY: Judge, if I might answer that one. I think
7   the key point here is, while we represent those four claims
8   of which were removed to Federal Court, this is
9   fundamentally an action in the 1964 case, number 3987. This
10  is a Montana Vermiculite action. This is not those Federal
11  claims for which we represented those individuals.
12  THE COURT: Who is the Petitioner? The law firm?
13  MR. LACEY: Yes, I'm--personally I was the...
14  THE COURT: Okay. I guess what I would like to do,
15  just to give me time to think about this. I'd like to take
16  this under advisement and invite the parties to submit
17  proposed Orders that might do more than just say the motion
18  is denied, if you want to put a little bit of reasoning in
19  there. It doesn't have to be longer than a page or two.
20  But I would appreciate it if you could fax something to the
21  Court at 293-9816, area code 406, of course.
22  MR. PERNICONE: What's the area code, Judge?
23  THE COURT: 406.
24  MR. PERNICONE: Thank you.
25  THE COURT: And I'm scheduled to be out of the office

```
 1  next week, leaving this afternoon, probably late this
 2  afternoon.  But if--it would be nice if you could get
 3  something faxed to the Court yet today, but if not, I'll
 4  have to take a look at it that first week of April.
 5      MS. BAER:  Your Honor, this is Janet Baer.  Since the
 6  motion is being denied, I suppose that really puts the
 7  burden on myself and Mr. Pernicone to put this together.
 8  And, I too, am going to be out of town next week.  So I'd
 9  like to put it together right now if you're going to be
10  there for a little bit.
11      MR. LACEY:  I'm sorry.  I didn't understand that the
12  motion was being denied.
13      THE COURT:  I thought I said I took the motion under
14  advisement.  Did I...
15      MS. BAER:  I'm sorry, Your Honor.  The next thing I
16  thought you said was you were taking it under advisement and
17  to submit proposed Orders denying the motion.  I'm very
18  sorry if I misunderstood...
19      THE COURT:  I meant to say granting or denying.  If I
20  didn't say that, I'm sorry.  I may have misspoke.
21      MS. BAER:  Okay.
22      THE COURT:  But I invited a proposed Order from
23  Petitioner's as well.
24      MS. BAER:  I see.
25      THE COURT:  When you say you'd like to get it done
```

13

1  today, you don't mean on the telephone here, do you?

2  MS. BAER: No, Your Honor, I could draft something and
3  submit it to you this afternoon. Otherwise it will be a
4  week before we would submit something also.

5  THE COURT: Okay. Well, we have the Petitioner's
6  concern about the three years running here. So, the quicker
7  the better. I would--let's see--this is the 22nd. Mr.
8  Lacey, did you say in your Petition, something like 20 days
9  is the amount of time that you had, at the outside, to get
10 an Order in this case?

11 MR. LACEY: I believe it was April 7th that our statute
12 runs. I think that is a Sunday, so we'd want to serve--
13 well, Mr. Sverdrup can be amenable to that. But if we can
14 get it done the week before that would be great.

15 THE COURT: Okay. I would like to have your proposed
16 Orders no later than April 2nd, if you can't get them faxed
17 yet this afternoon.

18 MR. SVERDRUP: Your Honor, this is Larry Sverdrup.
19 THE COURT: Yes.
20 MR. SVERDRUP: Could I say something?
21 THE COURT: Yes, certainly.
22 MR. SVERDRUP: I guess I'm a little bit concerned about
23 the duties of the trustee and the fiduciary obligations of
24 the trustee. If we were appointed trustee, I would like the
25 Court to set out what our duties and responsibilities are.

14

1   THE COURT: I think if I did that, Mr. Sverdrup, I
2   mean, I have to consider this, but I would probably specify
3   that it was a limited appointment solely for the purpose of
4   receiving service of process. So I would try not to hang
5   you out too far there. But I would be mindful of your
6   concerns in that regard.
7   MR. SVERDRUP: Thank you, Your Honor.
8   THE COURT: Very well. Is there anything further from
9   any participant here?
10  MR. LACEY: Nothing here.
11  MR. PERNICONE: Judge, if we want a copy of the
12  transcript can we just touch base with your chambers to
13  answer that?
14  THE COURT: Yes, you could. My secretary actually does
15  the transcribing and you could reach her. Her name is
16  Debbie. Her number is 406-293-8120. That's right.
17  MR. PERNICONE: 8120. Thank you.
18  THE COURT: Thank you. If there is nothing further
19  then, Court will be in recess. Thank you ladies and
20  gentlemen.
21  MR. PERNICONE: Thank you, Your Honor. Have a good
22  weekend.
23  MR. LACEY: Thank you, Your Honor.
24  **Whereupon, the proceedings concluded.**
25                      * * * * *

PAGE 16    FAX:4062934559    LINCOLN CO ATTORNEY    MAR-25-02 MON 17:26 PM

```
STATE OF MONTANA    )
                    )  ss:   CERTIFICATE OF REPORTER
County of Lincoln   )
```

I, DEBRA S. KAMBEL, Official Court Reporter of the District Court of the Nineteenth Judicial District, State of Montana, after having been duly sworn,

**DO HEREBY CERTIFY:**

That the foregoing proceedings were electronically recorded using a Sony 246 Recording System.

That the tape recording has been in the custody of the Court.

That the recording has not been changed or altered in any way.

That the recording is a full, true and accurate record of these proceedings.

That the undersigned arranged to have the recording transcribed to writing.

That the undersigned has compared the tape recording with the written transcription and the foregoing 15 pages constitutes a full, true and accurate transcription of the above entitled proceedings had and taken in the above-entitled matter at the time and place hereinbefore mentioned.

Dated at Libby, Montana this 25th day of March, 2002.

*[signature]*

DEBRA S. KAMBEL
Official Court Reporter

```
 1        Subscribed and sworn to before me this 25th day of
 2   25th, 2002.
 3
 4                                    _____Carmen Stewart_____
 5                                    Notary Public for the State
 6                                    of Montana, Residing at Libby
 7                                    My Commission Expires 10/31/02
 8
 9
10
...
25
```

MAR-25-02 MON 12:26 PM    LINCOLN CO ATTORNEY    FAX:4062934559    PAGE 18