## Attachment 1

### ROYAL OBJECTIONS AND COMMENTS TO
### WR GRACE DISCLOSURE STATEMENT[1]

|  | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| **1.** | **Statement of Position:** The opening statement of the Disclosure Statement contains a statement of exculpation that is far broader than any permitted in the Third Circuit.  In relevant part, the Debtors assert that the professionals employed by the Plan Proponents "Shall have no liability for any inaccurate, untrue or incomplete information contained in this disclosure statement or any of the planned documents."  The breath of this exculpation is impermissibly broad and it is false and misleading to suggest that professionals will receive an unlimited and unqualified exculpation.  On its most basic level, the assertion that Royal challenges is contrary to Rule 11 which imposes duties and obligations on what is said in court filings.  Royal proposes that the offending text be stricken.<br><br>**Objection:** 11 U.S.C. §1125(a)(1); *see, e.g., In re Continental Airlines*, 203 F.3d 203, 213-14 (3d Cir. 2000) (rejecting nonconsensual third-party releases); *In re Coram Healthcare Corp.*, 315 B.R. 321, 336 (Bankr. D. Del. 2004) ("to the extent the Trustee's Plan seeks approval of a release by third | **NOTICE TO HOLDERS OF CLAIMS AND/OR EQUITY INTERESTS AND GENERAL DISCLAIMERS WITH RESPECT TO THIS DISCLOSURE STATEMENT**<br><br>……The attorneys, accountants, advisors, and other Professionals retained and/or employed by the Plan Proponents do not provide any warranty, representation or guaranty regarding the accuracy of any information contained in this Disclosure Statement or any of the Plan Documents ~~and shall have no liability for any inaccurate, untrue or incomplete information contained in this Disclosure Statement or any of the Plan Documents~~. |

---

[1]    These objections and comments relate only to issues arising from Royal's recent change of position on the treatment of the Royal Settlement Agreement and do not address Royal's other previously stated objections deal with other issues.

| Royal Objections | Revisions Sought By Royal |
|---|---|
| parties of claims they may have against the Noteholders (other than derivative claims which the Trustee has waived), it cannot be approved."); *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 222 (Bankr. D.N.J. 2000) (citing *Continental Airlines* and finding that the "proponents have failed to establish any basis to support the fairness or necessity of the non-debtor releases.  The exculpation clauses are legally insupportable, and must be stricken."); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (releases of non-derivative third party claims against non-debtor "cannot be accomplished without the affirmative agreement of the creditor affected"); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 506 (Bankr. D.N.J. 1997) (rejecting nonconsensual third party releases); *In re West Coast Video Enterprises Inc.*, 174 B.R. 906, 911 (Bankr. E.D. Pa. 1994) (each creditor bound by release must affirm it*); In re Elsinore Shore Assocs.*, 91 B.R. 238, 252 (Bankr. D.N.J. 1988) (plan provisions deeming non-debtor proponents and their principals to be discharged and released from any and all claims prohibited by the Code and relevant case law); *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 334 (Bankr. E.D. Pa. 1987) (debtors could not obtain confirmation of a plan which would attempt, over the objection of creditors, to discharge the obligations of non-debtors). See *In re Mkt. Square Inn, Inc.*, 163 B.R. 64, 68 (Bankr. W.D. Pa.. 1994) ("Where it is clear that a plan of reorganization is not capable of confirmation, it is appropriate to refuse | |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | the approval of the disclosure statement."). | |
| 2. | **Statement of Position:** The Debtors have an affirmative duty to provide full disclosure and duty cannot be reduced, watered down or eliminated by disclaimers and it is misleading and contrary to law to purport to do so.  Royal proposes the following revision.<br><br>**Objection:** 11 U.S.C. §1125(a)(1). *See Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) ("The Code imposes on debtors an affirmative duty of full disclosure"). | Further, there has been no independent audit of the pro forma or prospective financial information contained in this Disclosure Statement, and no fairness opinion has been obtained regarding the value of the Debtors' assets and the amount of their liabilities.  The factual information regarding the Debtors and their assets and liabilities has been provided by the Debtors or otherwise derived from the Debtors' schedules, available public records, pleadings, reports on file with the Court, the Debtors' internal documents and related documents specifically identified herein.  ~~While the~~The Debtors endeavored to provide accurate information herein~~, the Debtors cannot, and do not, warrant or represent that the information contained in this Disclosure Statement does not contain any material inaccuracy~~. |
| 3. | **Statement of Position:** The chart presented in Section 1.2.1 of the Disclosure Statement and the related text does not provide any disclosure or indication as to how the claims held by Royal will be classified.  Nor is there any discussion whatsoever of the Royal claims. Royal proposes that the following text be added.<br><br>**Objection:** 11 U.S.C. §1125(a)(1). *See Reading Co. v. Brown*, 391 U.S. 471 (1968) (holding that  claims based on post-petition actions of debtor-in-possession have first priority); 1-10 Collier on Bankruptcy-15th Edition Rev. P 10.01 | **Section 1.2.1 What Claims and Equity Interests Are Affected by the Plan?**<br><br>[Footnote 10] Includes amounts to be paid on the Effective Date or as soon as practicable thereafter but in no event later than 10 days after the Effective Date ($666.6 million) and amounts paid after the Effective Date in accordance with their terms ($157.7 million). Royal contends to have at least two types of claims against the Debtors and Representatives of the Debtors: (1) insurance related claims and (2) claims arising from the post-petition breach of its contract. To the extent that Royal has contract, conversion and other claims arising from the breach of its contract and the |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | ("As a general proposition, a non-debtor party is not required to obtain 'leave of the bankruptcy court' before filing suit against an operating trustee or a debtor in possession, provided that the lawsuit is based on an act or conduct by the trustee or the debtor in possession in carrying out business in connection with the debtor's property."). | representations make in connection therewith, it contends that such claims should be classified separately or be classified along with other contract claims against the estate under Class 9 General Unsecured Claims and receive treatment at least equal to that being afforded to Class 9 General Unsecured Claims. |
| 4. | **Statement of Position:** Section 1.2.6 of the Disclosure Statement provides no disclosure concerning the treatment of Royal's post petition contract and other claims. Royal proposes that the following text be added.<br><br>**Objection:** 11 U.S.C. §1125(a)(1). *See Reading Co. v. Brown*, 391 U.S. 471 (1968) (holding that claims based on post-petition actions of debtor-in-possession have first priority); 1-10 Collier on Bankruptcy-15th Edition Rev. P 10.01 ("As a general proposition, a non-debtor party is not required to obtain 'leave of the bankruptcy court' before filing suit against an operating trustee or a debtor in possession, provided that the lawsuit is based on an act or conduct by the trustee or the debtor in possession in carrying out business in connection with the debtor's property."). | **Section 1.2.6 How Will Non-Asbestos Claims be Treated Under the Plan?**<br><br>The Plan provides that all Holders of General Unsecured Claims will be paid the value of their Allowed Claims in Cash in full. Unless previously agreed to by a Holder of a General Unsecured Claim, such Holder will be entitled to payment of interest on such General Unsecured Claim at the applicable rate specified in the Plan. There is a dispute between the Debtors and the Unsecured Creditors' Committee regarding whether all General Unsecured Claims are receiving under the Plan Cash in the full amount of their respective Claims with post-petition interest. *See* the more detailed discussion in Section herein.<br><br>To the extent that Royal has contract, conversion and other claims arising from the breach of its contract and the representations made in connection therewith, it contends that such claims should be classified separately or be classified along with other contract claims against the estate under Class 9 General Unsecured Claims and receive treatment at least equal to that being afforded to Class 9 General Unsecured Claims. |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | The Debtors will satisfy certain other of their non-asbestos related liabilities, including tax, workers' compensation, employee-related benefits, pension and retirement medical obligations, and Intercompany Claims, as they become due and payable over time.  In essence, these claims against the Debtors will "pass through" confirmation and be paid by the Reorganized Debtors in the ordinary course of their business unless any of such claims are expunged. |
| 5. | **Statement of Position:** Section 2.6.2 of the Disclosure Statement was modified by Grace based on comments by the Claimant Lawyers to improperly change the factual content of this text.  The revised text asserts disputed factual contentions rather then representations of fact.  It is also simply nonsensical to say that something "contained 1-3 on average but was generally less then 1 percent."  Royal proposes that this text be revised.<br><br>**Objection:** 11 U.S.C. §1125(a)(1). *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (sustaining objection that the "debtor has asserted erroneous information" in its disclosure statement"). | **Section 2.6.2  Asbestos-Added Products**<br><br>The principal asbestos-added products produced by Grace were spray-on fireproofing, acoustical plasters and textured ceiling finishes.  They consisted of binders, insulating materials (e.g. gypsum, cement, clay, vermiculite), and added asbestos purchased from asbestos producers.  The fireproofing product, Monokote-3 ("MK-3"), was sprayed on steel structural-components of buildings to prevent or delay the steel from collapsing in the event of a fire.<br><br>**Libby Vermiculite**<br><br>From 1963 to 1990, Grace owned and operated a mining and processing facility in Libby, Montana at which it mined vermiculite and processed vermiculite products. Vermiculite is a mineral that expands into popcorn-like, low-density pieces when heated. This exfoliated or expanded vermiculite is lightweight and fire-resistant, and thus can be used for insulation, fireproofing, potting soil and |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | other applications. Vermiculite is itself an inert mineral that is not a form of asbestos and has no known toxic properties. Vermiculite ore from the Libby mine, however, allegedly contained numerous secondary minerals, including a form of asbestos consisting of asbestiform amphiboles. Claimants injured by exposure to asbestos from Grace's operations in Lincoln County, Montana (the "Libby Claimants") assert that amphibole asbestos is far more deadly than the more common chrysotile asbestos.  The Libby Claimants assert that the long, needle-like amphibole asbestos fibers can easily become embedded in the lungs and cause a highly progressive form of asbestos pleural disease, which they contend is often fatal.<br><br>The Libby facility milled the mined ore into a concentrate through a crushing, screening, washing and flotation separation process that Grace alleges removed most impurities, including the amphibole.  The asbestos content of the vermiculite concentrate after milling trended downward during the 1970's and, by the 1980's, the vermiculite concentrate contained 1-3% on average and generally less than 1% asbestos.  At Grace's "expansion plants" throughout the country, the concentrate was passed through furnaces at temperatures approaching 2,000 degrees Fahrenheit, which resulted in the further reduction of asbestos content.  The expanded vermiculite was bagged and sold under the Zonolite trademark. |
| 6. | **Statement of Position:** Section 2.8 of the Disclosure Statement fails to provide any disclosure whatsoever of the Royal claims and the litigation | **[New] Section 2.8.4. Royal's Claims**<br><br>Royal contends that the Debtors and the Debtors |

| Royal Objections | Revisions Sought By Royal |
|---|---|
| that would follow from such claims.  A new sub-section should be added prior to the current Section 2.8.4 that describes the Royal claims.<br><br>**Objection:** 11 U.S.C. §1125(a)(1); *see also Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) ("The Code imposes on debtors an affirmative duty of full disclosure"); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("Relevant factors for evaluating the adequacy of a disclosure statement may include . . . information relevant to the risks posed to creditors under the plan"). | Representatives have breached various provisions of the Royal Settlement Agreement by, among other things, making statements and taking actions that are contrary to that agreement's terms and inconsistent with what the Debtors and the Debtors' Representatives have represented and done with respect to the Settlement Agreement in the past. Moreover, Royal contends that the Debtors have an obligation of good faith to abide by and cooperate with the enforcement of the Royal Settlement Agreement that has also been breached.  By failing to now ratify or affirm the Royal Settlement Agreement, Royal contends that the Debtors and the Debtors' Representatives have mislead Royal and the Court for years. These actions, Royal contends, give rise to post-petition claims not just against the Debtors but also against those who made, contributed to, or aided in, the actions and representations at issue.  The Debtors' conduct, Royal contends, constitutes a breach of its agreement committed post-petition.  Moreover, Royal contends that the post-petition actions may also gives rise to conversion claims.  According to Royal, the series of post-petition statements concerning the parties' rights which were relied upon, including in the Debtors' securities filings, give rise to negligent misrepresentation, tortious interference and/or fraud claims and are also post-petition claims.  Royal further contends that the Debtors have a common law obligation to indemnify and hold Royal harmless and have referred the Debtors to various representations made by the Debtors and the Debtors' Representatives in this regard.  In addition, the representations made concerning the Royal Settlement Agreement in the Debtors' SEC filings and disclosures may give rise to separate claims and SEC violations by other parties.  These claims, Royal contends, give rise to |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | substantial damages. |
| | | Any funds held by the Debtors from the settlement, Royal contends, should be sequestered and held outside of the proposed trust pending resolution of Royal's claims. Royal contends that such funds should be held in trust (constructive or resulting) for Royal to the extent that the Debtors have failed to honor the provisions of the settlement that resulted in the payments to them to satisfy the type of obligations covered by the settlement. |
| | | To the extent that Royal has contract, conversion and other claims arising from the post-petition breach of its contract and the representations make in connection therewith, it contends that such claims should be classified separately or be classified along with other contract claims against the estate under Class 9 General Unsecured Claims and receive treatment at least equal to that being afforded to Class 9 General Unsecured Claims. |
| 7. | **Statement of Position:** Section 2.10.2.1 of the Disclosure Statement contains disputed factual contentions rather then representations of fact. The text of this subsection should be modified.  In addition, Section 2.10.2.1 states that the Debtor obtained all rights of insurance policies purchased by Zonolita.  However, there's no disclosure that Grace thereafter settled in full all of the pre-1962 coverage leaving no rights left to assign.  Royal proposes that this subsection be clarified.  The clarification restates the ruling made by the Bankruptcy Court at the hearing on October 7, 2002. | **Section 2.10.2.1 Overview**<br><br>Certain of the Debtors previously purchased liability insurance policies that provide coverage for the 1962 – 1985 period with respect to asbestos-related lawsuits and Claims. For the most part, coverage for years 1962 through 1972 has been exhausted, leaving coverage for years 1973 through 1985 available for pending and future asbestos claims. ~~Since~~The Debtors contend that since 1985, insurance coverage for asbestos-related liabilities has not been commercially available to the Debtors. Insurance policies that were purchased by the Debtors prior to 1962 previously were determined by the courts to be inapplicable because they were purchased prior to the year in which the Debtors |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | **Objection:** 11 U.S.C. §1125(a)(1). *See In re Unichem*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("the disclosure statement does not adequately inform the creditors how conditional that payment is or of the strings . . . attached to it."); *see also In re Crowder*, 374 B.R. 861, 873 (Bankr. D.N.M. 2007) ("As a matter of public policy, courts presume that when parties have settled a dispute they intended a complete accord and satisfaction of their respective claims against each other arising out of the facts underlying the explicitly settled dispute.) (citations and quotations omitted); *cf. Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 223 (3d Cir. 2000) ("a party should not be left guessing about the finality and hence efficacy of the settlement."). | acquired the Zonolite Company, through which the Debtors began producing asbestos-containing products.  However, as part of the Zonolite acquisition, the Debtors obtained all rights under the insurance policies purchased by Zonolite, including certain policies allegedly issued by Royal. Thereafter, a settlement between Grace and Royal resolved all of Royal's obligation under the pre-sale Zonolite policies and provided that Debtors would indemnify and hold Royal harmless against any asbestos-related claims made against those policies. *See* 10/7/04 Hg. Tr. 4. |
| 8. | **Statement of Position:** Section 2.10.2.2 of the Disclosure Statement is ambiguous to the extent that it is unclear what policies are being referred to. Moreover, the text in this subsection has been changed from the text contained in the identical subsection of the Disclosure Statements that Grace filed in 2004 and 2005 in a way that makes this description of Royal's coverage in subsection materially misleading. In November 2004, Grace filed its first Disclosure Statement, where it stated in §2.7.2.2 that:<br><br>[w]ith one exception, <u>coverage disputes regarding the Grace and Zonolite primary policies that have been settled, and the</u> | **Section 2.10.2.2 Primary Insurance Coverage**<br><br>The Debtors' primary insurance coverage for 1962 – 1985 is in the amount of $1 million per occurrence with annual aggregate product-liability limits ranging from $1 to $2 million.  With one exception, coverage ~~disputes~~ regarding the Grace and Zonolite primary policies ~~for this time period~~ have been <u>fully</u> settled, and the settlement amounts paid in full.  The only unsettled primary coverage is that of Continental Casualty Company ("CNA") for 1973 – 1985. In a pending declaratory judgment action in the Southern District of New York federal district court entitled *Continental Casualty Company v. W. R. Grace & Co., et al.*, 00 CIV 4524, the Debtors assert that this <u>CNA</u> coverage still is available to pay certain asbestos-related Claims, |

| Royal Objections | Revisions Sought By Royal |
|---|---|
| settlement amounts paid in full.  The only unsettled primary coverage is that of CNA . . . .  Grace asserts that this [CNA] coverage is available to pay asbestos-related Claims that are not based on product liability, such as Claims made by certain Libby residents. | specifically, bodily injury claims that fall within the premises coverage of other policies.  Although portions of the *Continental Casualty* action were settled in 2004, the settlement agreement did not resolve assertions of coverage for premises personal injury claims as against CNA.  The *Continental Casualty* action has been stayed; once the stay is lifted, the parties may reopen the case or take other action. *See* Section **Error! Reference source not found.** *supra* for a detailed discussion. |
| (emphasis added).  Grace filed an Amended Disclosure Statement in January 2005.  The description of the Royal Policies in §2.7.2.2 of this amended statement mirrored the text in the 2004 Disclosure Statement.  In addition, Exhibit 10 to the Amended 2005 Disclosure Statement, entitled "Primary & Excess Insurance Policies That Were or Are Applicable to Asbestos-Related Claims," categorized the Royal Policies as "Resolved" on p. 16 of 21.  Royal proposes the following revisions. | |
| **Objection:** 11 U.S.C. §1125(a)(1); *see also In re Unichem*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("the disclosure statement does not adequately inform the creditors how conditional that payment is or of the strings . . . attached to it."). | |
| 9. | **Statement of Position:** Section 3.2.5.1 of the Disclosure Statement omits material information about the expansion of the injunction that occurred in October 7, 2004 that makes the Disclosure Statement misleading.  Royal proposes the following insert.<br><br>**Objection:** 11 U.S.C. §1125(a)(1); *see also In re Unichem*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) | **Section 3.2.5.1 Stay of Asbestos-Related Litigation Against Various Affiliates**<br><br>Contemporaneously with the filings of their chapter 11 petitions, the Debtors filed the adversary proceeding entitled *W. R. Grace & Co., et al. v. Margaret Chakarian, et al. and John Does 1-1000* (Adv. Pro. No. 01-771).  A temporary restraining order restraining certain actions against non-debtor third parties was initially entered on |

| Royal Objections | Revisions Sought By Royal |
|---|---|
| ("the disclosure statement does not adequately inform the creditors how conditional that payment is or of the strings . . . attached to it."). | April 2, 2001 and on May 3, 2001, the Bankruptcy Court issued a preliminary injunction.  On January 22, 2002, the Bankruptcy Court entered an "Order Granting Modified Preliminary Injunction" (Adv. Pro. No. 01-771, Docket No. 87) which, among other things, enjoined the commencement or continuation of certain actions against non-debtor third-parties, including actions:  (a) that arise from alleged exposure to asbestos, indirectly or directly, allegedly caused by the Debtors, against (1) Fresenius, (2) Sealed Air, (3) Merrill Lynch, (4) Credit Suisse First Boston Corporation, (5) Robinson Insulation, Co., (6) certain of the Debtors' insurance carriers, including Maryland Casualty Company, Continental Casualty Company and their affiliates, (7) Affiliates of the Debtors that are not filing entities for purposes of the Chapter 11 Cases, and (8) present and former officers, directors and employees of the Debtors; (b) for which there may be coverage under certain of the Debtors' insurance policies; (c) brought against certain of the Debtors' insurance carriers, which allege coverage for asbestos-related liabilities; and (d) against current and former officers, directors or employees of the Debtors that arise out of such officers', directors' and employees' employment or relationship with the Debtors (the "Preliminary Injunction").<br><br>On February 4 In March 2002, certain claimants who have identified themselves as claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"), made a motion in Montana state court to have Royal appointed "trustee" for Montana Vermiculite Corporation.  During argument on that motion, Grace's outside counsel Janet Baer stated in |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | open court that "[Claims for coverage under the Royal Policies] was all settled in 1994 and 1995.  Royal received a release and an indemnity from Grace.  To the extent the Plaintiffs have causes of action, unfortunately, those causes of action are against Grace. March 22, 2002 Tr. at 7-8 .  Ms. Baer then submitted to the court a proposed order jointly with Royal's counsel that provided in part that "any coverage obligation for asbestos claims that Royal may have owed under that coverage was fully satisfied and released pursuant to the 1995 Settlement Agreement between Royal and W. R. Grace & Co." <br><br> A month later, on February 4, 2002, the Libby Claimants, filed a motion to clarify the scope of the Preliminary Injunction or to modify the Preliminary Injunction (Adv. Pro. No. 01-771, Docket No. 86). Specifically, the Libby Claimants sought entry of an order stating that, to the extent their asserted causes of action against Maryland Casualty Company ("MCC"), one of the Debtors' insurers, were based upon MCC's own, independent tortious conduct, the Preliminary Injunction did not stay such litigation.  On June 20, 2002, the Bankruptcy Court denied the motion for clarification (Adv. Pro. No. 01-771, Docket No. 109).  The Libby Claimants appealed the Bankruptcy Court's June 20, 2002 order and also appealed the Bankruptcy Court's September 12, 2002 order denying the Libby Claimants' motion to reconsider the June 20, 2002 order. <br><br> In 2003, in a brief supporting its motion to expand the preliminary injunction to include Montana Vermiculite Corporation, Grace stated that "in full and final settlement of Royal's obligations under the Pre-Sale Policies.  In the |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | Royal Settlement, the Debtors agreed to indemnify and hold harmless Royal against any asbestos-related claims made against the Pre-Sale Policies. Grace's Motion to Expand Preliminary Injunction to Include Montana Vermiculite Corporation at ¶3.  Grace further submitted that under the Settlement Agreement that the: "Royal Policies were cancelled.  Royal settled its obligations under the Royal Policies with Grace.  Grace indemnified Royal for future claims that may arise under such policies."  Grace's Reply Brief in Support of Motion to Expand Preliminary Injunction to Include Montana Vermiculite Corporation at ¶8.  Grace added that in: "In the Royal Settlement, the Debtors agreed to indemnify and hold harmless Royal against any asbestos-related claims made against the Royal Policies issued by Royal to Zonolite." Id. at 10. |
| | | Moreover, Grace stated that "[a]ny attempt by Plaintiffs to pursue Royal and collect from Royal under the Royal Policies will immediately and directly affect Grace."  Id. at 8.  And "[t]o the extent that a judgment for damages is entered against Montana Vermiculite, which could trigger coverage under the Pre-Sale Policies, Grace may have indemnity obligations to Royal**." Grace's Motion to Expand Preliminary Injunction to Include Montana Vermiculite Corporation at ¶15.** |
| | | On July 16, 2003, the District Court vacated the Bankruptcy Court's June 20, 2002 order and remanded the matter to the Bankruptcy Court for further proceedings (Delaware District Court Case No. 02-1549).  MCC appealed the District Court's decision, and, on October 28, 2004, the Third Circuit Court of Appeals vacated the |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | District Court's order and affirmed the Bankruptcy Court's decision that the Preliminary Injunction stayed the litigation with respect to MCC (Third Circuit Case No. 03-3453).<br><br>As a result, the Libby Claimants' lawsuits against MCC are presently stayed pursuant to the Preliminary Injunction. ~~On~~Moreover, Grace ultimately persuaded the Bankruptcy Court, at least as to the Royal Settlement Agreement's implication.  Accordingly, on October 7, 2004, the Bankruptcy Court ~~expanded the scope of the Preliminary Injunction to also~~granted Grace's motion to expand the bankruptcy injunction to enjoin actions being brought by the Libby Claimants against Montana Vermiculite Company and, in doing so, stated:<br><br>[t]he settlement [between Grace and Royal] resolved Royal's obligation under the Pre-Sale [Zonolite] Policies and provided that Debtors would indemnify and hold Royal harmless against any asbestos-related claims made against those policies.<br><br>10/7/04 Hg. Tr. 4 (emphasis added). |
| 10. | **Statement of Position:** The description in Section 3.2.5.1 of the Disclosure Statement of the Burlington Northern Santa Fe Railroad matter and the subsequent motion for clarification of the scope of the preliminary injunction omits material information which makes discussion of this matter misleading. Royal proposes the inclusion of the following text.<br><br>**Objection:** 11 U.S.C. §1125(a)(1). *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. | **Section 3.2.5.1 Stay of Asbestos-Related Litigation Against Various Affiliates**<br><br>………The Debtors were also notified by Burlington Northern Santa Fe Railroad ("BNSF"), MCC, Royal Insurance Company ("Royal") and Continental Casualty Company ("Continental") that hundreds of Libby Claimants were pursuing numerous complaints against BNSF with respect to alleged asbestos-related injuries they sustained while working for BNSF or as a result of their residing in |

| Royal Objections | Revisions Sought By Royal |
|---|---|
| 2001) (sustaining objection that the "debtor has asserted erroneous information" in its disclosure statement"))<del>.</del><ins>;</ins> | and around the Libby, Montana area.  BNSF notified the Debtors that they believe that the Debtors are liable to BNSF for both common law and contractual indemnities arising from these lawsuits on the grounds that they relate to exposure to the Debtors' vermiculite and vermiculite-containing products that may have been transported by BNSF or placed on BNSF property by the Debtors.  The Debtors' insurance carriers notified the Debtors that they believe the Debtors are liable to them under contractual indemnities for any claims that the plaintiffs or BNSF may assert against them relating to these lawsuits.<br><br>After receiving BNSF's April 12, 2006, request for coverage under the Royal Policies in connection with the Libby Claims, both Royal and Grace agreed that there was no coverage for BNSF because the 1995 Settlement Agreement had a release that barred any further claims for coverage for any and all asbestos-related claims.  It was further agreed that Grace and Royal would send a "joint" letter so advising BNSF.<br><br>Accordingly, Royal's outside counsel and Grace's Senior Litigation Counsel Jay Hughes cosigned a May 5, 2006 letter sent to BNSF stating:<br><br>[Based on] the 1995 Settlement Agreement between Grace and Royal[,] . . . Royal has fully discharged and satisfied any obligations it may have owed Grace for asbestos related claims under the Zonolite policies. |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | (emphasis supplied). |

In this joint letter, both Royal and Grace stated unequivocally that

[The] Agreement reflects that, in consideration of paying Grace the sum of $100 Million, Grace fully and finally released Royal from any further liability for asbestos related claims under the Zonolite policies.

(emphasis supplied).

On February 15, 2007, BNSF filed a motion for clarification of the scope of the Preliminary Injunction.  As a result, on March 26, 2007 the Debtors filed a motion to expand the Preliminary Injunction to enjoin the Libby Claimants from proceeding with their suits against BNSF. The Debtors also filed a motion seeking leave to amend their Adversary Complaint (Adv. Pro. No. 01-771) to include BNSF in the definition of Affiliated Entities protected by the Preliminary Injunction and to expand the defendants named in the Complaint to include additional Libby Claimants.  The Bankruptcy Court entered a temporary stay as to the State Court Actions against BNSF and on April 14, 2008 entered an order expanding the scope of the Preliminary Injunction to also enjoin actions being brought against BNSF.  The Preliminary Injunction has no expiration date.  On April 24, 2008, the Libby Plaintiffs filed a notice of appeal to the District Court and motion for leave to appeal . The motion for leave is fully briefed and remains pending.  The appeal has not been briefed.

| Royal Objections | Revisions Sought By Royal |
|---|---|
| 11. | **Statement of Position:** The inclusion of Royal's claims in Section 3.2.5.2 of the Disclosure Statement is misleading and should be deleted. Similarly, the discussion of the claims that third parties may have against the Debtors or Reorganized Debtors arising out of the state court actions brought by the Libby Claimant Lawyers that is included in Section 3.2.5.2 is wrong and misleading with respect to Royal and should be stricken. A new section should be added where the existing Section 3.2.5.4 appears that describes the Royal's claims.<br><br>**Objection:** 11 U.S.C. §1125(a)(1). *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (sustaining objection that the "debtor has asserted erroneous information" in its disclosure statement"). | **Section 3.2.5.2 Indirect PI Trust Claims**<br><br>Pursuant to the Plan, certain Claims defined as Indirect PI Trust Claims are included in the definition of Asbestos PI Claims and consequently receive the same treatment as Asbestos PI Claims, including being discharged with respect to the Debtors, channeled to the Asbestos PI Trust and subject to the Asbestos PI Channeling Injunction (which, among other things, enjoins the assertion of Asbestos PI Claims, including Indirect PI Trust Claims, against any of the Asbestos Protected Parties) effective as of the Effective Date.  Indirect PI Trust Claims include claims for (a) reimbursement, indemnification, subrogation or contribution on account of damages a Claimant has paid or may pay to plaintiffs in cases against such Claimant on account of claims that would constitute Asbestos PI Claims against the Debtors; and (b) Claims asserted against the Debtors by Claimants seeking reimbursement, indemnification, subrogation, or contribution from the Debtors with respect to any surety bond, letter of credit or other financial assurance issued by any Entity on account of or with respect to an Asbestos PI Claim.  Claims in the first category include claims asserted against the Debtors by Claimants such as MCC, Montana, ~~Royal,~~ Continental and other ~~similarly situated~~ parties as well as any claims that may be asserted against the Debtors or the Reorganized Debtors by BNSF and Scotts Company ("Scotts") (as discussed below) for reimbursement, indemnification, subrogation or contribution on account of damages such Claimants have paid or may pay to the plaintiffs such as the Libby Claimants (discussed above), for death, bodily injury, sickness, disease, or other personal injuries to the extent |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | caused or allegedly caused by exposure to asbestos or asbestos-containing products for which the Debtors have liability.  Claims in the second category include Claims asserted against the Debtors by (a) Tempo Master Fund L.P. and Morgan Stanley Senior Funding, as successor to the Bank of America, N.A. (collectively "Tempo"), relating to letters of credit which have been drawn to reimburse National Union Fire Insurance Company and its affiliates ("National Union") for payments made on an Asbestos PI Settlement and (b) the contingent claims of Fireman's Fund and Wachovia Bank, NA related to the *Edwards* judgment currently stayed on appeal (*see* footnote herein).<br><br>        Pursuant to the Trust Distribution Procedures, Indirect PI Trust Claims shall be treated as presumptively valid and paid by the Asbestos PI Trust, subject to the applicable Payment Percentage, if the following conditions are met: (a) the claim has not been disallowed; and (b) the holder of such Claim (the "Indirect Claimant") establishes that (i) the Indirect Claimant has paid in full the liability and obligation of the Asbestos PI Trust to the individual claimant to whom the Asbestos PI Trust would otherwise have had a liability or obligation under the TDP (the "Direct Claimant"), (ii) the Direct Claimant and the Indirect Claimant have forever and fully released the Asbestos PI Trust from all liability to the Direct Claimant, and (iii) the claim is not otherwise barred by a statute of limitation or repose or by other applicable law.<br><br>        To establish a presumptively valid Indirect PI Trust Claim, the Indirect Claimant's aggregate liability for the Direct Claimant's claim must have been fixed, liquidated |

| Royal Objections | Revisions Sought By Royal |
|---|---|
| | and paid fully by the Indirect Claimant by settlement (with an appropriate full release in favor of the Asbestos PI Trust) or a Final Order provided that such claim is valid under the applicable state law.<br><br>If an Indirect Claimant cannot meet the presumptive requirements set forth above, including the requirement that the Indirect Claimant provide the Asbestos PI Trust with a full release of the Direct Claimant's claim, the Indirect Claimant may request that the Asbestos PI Trust review the Indirect PI Trust Claim individually to determine whether the Indirect Claimant can establish that the Indirect Claimant has paid all or a portion of a liability or obligation that the Asbestos PI Trust had to the Direct Claimant as of the Effective Date.  If the Indirect Clamant can show that it has paid all or a portion of such a liability or obligation, the Asbestos PI Trust shall reimburse the Indirect Claimant the amount of the liability or obligation so paid, times the then applicable Payment Percentage.  However, in no event shall such reimbursement to the Indirect Claimant be greater than the amount to which the Direct Claimant would have otherwise been entitled.  Further, the liquidated value of any Indirect PI Trust Claim paid by the Asbestos PI Trust to an Indirect Claimant shall be treated as an offset to or reduction of the full liquidated value of any Asbestos PI Trust Claim that might be subsequently asserted by the Direct Claimant against the Asbestos PI Trust.<br><br>Any dispute between the Asbestos PI Trust and an Indirect Claimant over whether the Indirect Claimant has a right to reimbursement for any amount paid to a Direct Claimant shall be subject to the ADR Procedures provided |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | in Section 5.10 of the Trust Distribution Procedures. If such dispute is not resolved by said ADR Procedures, the Indirect Claimant may litigate the dispute in the tort system pursuant to Sections 5.11 and 7.6 of the Trust Distribution Procedures. |
| | | The Asbestos PI Trust Trustees may develop and approve a separate proof of claim form for Indirect PI Trust Claims. Indirect PI Trust Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Bankruptcy Court shall be processed in accordance with procedures to be developed and implemented by the Trustees consistent with the provisions of Section 5.6 of the Trust Distribution Procedures, which procedures (a) shall determine the validity, and enforceability of such claims; and (b) shall otherwise provide the same liquidation and payment procedures and rights to the Holders of such claims as the Asbestos PI Trust would have afforded the Holders of the underlying valid Asbestos PI Trust Claims. |
| | | On the Effective Date, all ~~Claims against the Debtors shall be discharged and all~~ Asbestos PI Claims, including Indirect PI Trust Claims, will be channeled to the Asbestos PI Trust. The Preliminary Injunction outlined above will be dissolved but it shall be replaced by a permanent injunction under sections 524(a) and 1141 of the Bankruptcy Code against the commencement or continuation of an action, the employment of process or an act to collect, recover or offset any such debt as a personal liability of the Debtors (*see* Section 8.1.1 of the Plan). Likewise, pursuant to the Asbestos PI Channeling Injunction, the sole recourse of the Holder of an Asbestos PI Claim for its Asbestos PI Claim |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | shall be to the Asbestos PI Trust and such Holder shall have no right whatsoever to assert its Asbestos PI Claim against the Debtors, Reorganized Debtors or any other Asbestos Protected Party or any property interest of the Debtors, the Reorganized Debtors or any other Asbestos Protected Party (*see* Section 8.2.1 of the Plan).  Thus, the Libby Claimants will be prohibited from pursuing their State Court Actions against the Debtors, the Reorganized Debtors and the defendants therein who are Asbestos Protected Parties such as the Settled Asbestos Insurance Companies.  The Plan will not prohibit the Libby Claimants from proceeding with their State Court Actions against certain third parties who are not Asbestos Protected Parties such as Montana, BNSF, and Scotts.  ~~However, any claims that those third parties may have against the Debtors or Reorganized Debtors arising out of the State Court Actions will constitute Indirect PI Trust Claims as outlined above.~~<br><br>Certain potential Holders of Indirect PI Trust Claims such as BNSF, Scotts and Tempo have asserted that they believe their Claims against the Debtors for contribution and indemnification are not properly classified as Indirect PI Trust Claims and such Claims should be treated as Class 9 General Unsecured Claims or, in the case of Scotts and BNSF, as either post-petition or post-confirmation claims.  Royal also contends that its claims are subject to separate classification.  In the event that such Holders file the appropriate Voting Motion or as otherwise ordered by the Bankruptcy Court, the Debtors shall report to the Bankruptcy Court in connection with the Confirmation Hearing the tabulation of votes for all Claims using both (a) the classification of these Claims as Class 6 Asbestos PI |

21

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | Claims as outlined in the Plan and (b) the classification of these Claims as requested in the Voting Motions.<br><br>Further, under the Plan, the Debtors are transferring their insurance rights to the Asbestos PI Trust. ~~However, the Debtors are not transferring any alleged rights of other parties, such as BNSF which has claimed that the Debtors obtained separate insurance for BNSF and/or named BNSF as an additional insured under the Debtors' policies which may provide BNSF coverage for the Claims being asserted against BNSF by the Libby Claimants as outlined above. Under the Plan, the Debtors are transferring their insurance rights to the Asbestos PI Trust. However, the Debtors are not transferring any alleged rights BNSF may have.~~<br><br>As discussed above in Section 2.10, Grace and Royal resolved all of Royal's obligation under the Royal pre-sale Zonolite policies and provided that Debtors would indemnify and hold Royal harmless against any asbestos-related claims made against those policies. *See* 10/7/04 Hg. Tr. 4. No insurance rights remain to be assigned under these fully settled Royal policies and none are being assigned. |
| 12. | **Statement of Position:** The text added to subparagraph (iv) of Section 4.7.2.2 of the Disclosure Statement by the Libby Claimant Lawyers has no place in this section of the Disclosure Statement which deals with the "Funding of the Asbestos PI Trust." The text of subsection (iv) should be stricken in its entirety. Alternatively, if this subparagraph is to remain in Section 4.7.2.2. it needs to be substantially revised as the current text is | **Section 4.7.2.2 Funding of the Asbestos PI Trust**<br><br>~~(iv) The Libby Claimants assert that there is premises insurance coverage available for their claims against the Debtors from Royal for the period 1954-1963. The Libby Claimants also assert that the Debtors' 1991 settlement with MCC may be able to be set aside and that premises coverage may be available under MCC's policies for the years 1962-1973. The Libby Claimants assert that~~ |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | materially false and misleading. Royal contends that this section should be stricken in its entirety.<br><br>**Objection:** 11 U.S.C. §1125(a)(1). *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (sustaining objection that the "debtor has asserted erroneous information" in its disclosure statement~~.~~<br><br>~~;~~ | ~~there is premises coverage available from Continental for the years 1973-1985. The Plan Proponents would note that Royal, MCC, and Continental will likely dispute these contentions. The Libby Claimants further assert that they, and not the Asbestos PI Trust, should be entitled to pursue the premises coverage available or potentially available under primary policies written for the Debtors or its predecessors by Royal, MCC, and Continental. The Plan Proponents disagree with these assertions, and note that any premises coverage available to pay Claims against the Debtors is in no way limited to Claims arising solely from exposures in Libby Montana.~~ |
| 13. | **Statement of Position:** Section 4.8.8.8 of the Disclosure Statement is overly broad. Among other things, the Debtors' releases cannot include non-debtor third parties. Section 524(e) limits the discharge to debtors. 11 U.S.C. § 524(e) ("discharge of a debt of a debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt"). To the extent that the Plan's discharge provisions extend to third parties, they must be modified to conform with § 524(e). In describing the releases, the text of the Disclosure Statement exceeds the permitted scope of third-party releases that may be granted in the Third Circuit and should be stricken.<br><br>**Objection:** 11 U.S.C. §1125(a)(1); *see, e.g., Coram Healthcare*, 315 B.R. at 337 ("No release of the Debtors is appropriate, since the Debtors are entitled | **Section 4.8.8.8 Release by Debtors and Estate Parties**<br><br>Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its estate and its Affiliates, and the Reorganized Debtors on their own behalf and as representatives of their respective estates and their Affiliates, and their respective successors, assigns and any and all Entities who may purport to claim by, through, for or because of them, are hereby deemed to release and waive conclusively, absolutely, unconditionally, irrevocably, and forever each and all of the Debtors' and their Non-Debtor Affiliates' Representatives and their respective properties (the "Released Parties"), from any and all Claims, obligations, rights, suits, damages, remedies, liabilities, or causes of action in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | only to the discharge provided in section 1141(d).")." | Debtors' property, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and this Disclosure Statement, or related agreements, instruments, or other documents, involving any act, omission, transaction, agreement, occurrence, or event taking place on or before the Effective Date other than any act or omission of a Released Party that constitutes willful misconduct. ~~Any act,~~ gross negligence, fraud or ~~omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct.~~ intentional misrepresentation |
| 14. | **Statement of Position:** Section 4.8.8.10 of the Disclosure Statement discusses an indemnity that the Trust proposes to grant to the Reorganized Debtors and their Representatives but the disclosure of the treatment and priority of this indemnity claim is ambiguous, incomplete and misleading. For instance, it is entirely unclear whether any indemnity claim will be given priority over funds set aside to pay Asbestos PI Trust Claims or will indemnity claims be paid pari passu with Asbestos PI Trust Claims or will indemnity claims be junior to Asbestos PI Trust Claims. Likewise, there is a suggestion in the present text that the Trust is taking on a n affirmative obligation to set aside a reserve for indemnity claims and to delay or reduce payments to Asbestos PI Trust Claims on the basis | **Section 4.8.8.10 Indemnification of Reorganized Debtors and Their Representatives by the Asbestos PI Trust**<br><br>From and after the Effective Date, the Asbestos PI Trust shall protect, defend, indemnify and hold harmless, to the fullest extent permitted by applicable law each of the Reorganized Debtors and their Representatives from and against: (a) any and all Asbestos PI Claims or Successor Claims ~~arising out of or based on any Asbestos PI Claim~~ to the extent they are subject to the Asbestos PI Channeling Injunction, together with any and all related Damages, (b) any and all Damages relating to Asbestos PI Claims or Successor Claims purported to be covered by the Asbestos PI Channeling Injunction, to the extent that such Asbestos PI Claims or Successor Claims are brought in jurisdictions outside of the United States of America or are not otherwise, for any reason, subject to the Asbestos PI Channeling |

| Royal Objections | Revisions Sought By Royal |
|---|---|
| of projected indemnity claims. *See* ("If there shall be pending any Claim against the Asbestos PI Trust for indemnification under Section 8.8.10 of the Plan, the Asbestos PI Trust shall maintain sufficient assets (as determined in good faith by the Asbestos PI Trustees of the Asbestos PI Trust) to fund any payments in respect of that Claim for indemnification. ") Nor is there any disclosure of whether notice has been given of any indemnity claims and, if so, the projected value of such claims.  On top of this, there is no disclosure of the scope of the indemnity and whether it covers claims excluded in this Circuit from exculpation such as gross negligence, willful misconduct and misrepresentation. Royal proposes the following revisions.<br><br>**Objection:** 11 U.S.C. §1125(a)(1). First, the same analysis applies the permissible scope of exculpation provisions applies to indemnity provisions, which cannot cover claims for willful misconduct or gross negligence.  *In re PWS Holding Corp.*, 228 F.3d at 246-47, citing *Pan Am Corp. v. Delta Airlines, Inc.*, 175 B.R. at 514 ("committee members and those professionals who provide services to the debtor with respect to reorganization, or to the committee members in their capacity as committee members, however, do remain liable for willful misconduct or ultra vires acts."); *see also Pan Am Corp. v. Delta Airlines, Inc*., 175 B.R. 438, 514 (S.D.N.Y. 1994); *In re L.F. Rothschild Holdings, Inc.*, 163 B.R. 45, 49 (S.D.N.Y. 1994); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. | Injunction, (c) any and all Claims or Damages arising out of, resulting from, or attributable to, directly or indirectly, the assignment, transfer or other provision of the Asbestos PI Trust of the Asbestos Insurance Rights, and (d) any and all Claims or Damages arising out of Asbestos PI Claims, to the extent such Claims or damages are based upon Claims brought by, on behalf of or in the name of the Asbestos PI Trust on account of or derived from the Asbestos PI Trust Assets;  *provided  however*, that notwithstanding the foregoing, none of the Reorganized Debtors nor any of their Representatives shall be entitled to be protected, defended, indemnified or held harmless from any criminal proceeding or any Claims or Damages arising out of, resulting from, or attributable to, directly or indirectly, the criminal proceeding styled *United States v. W. R. Grace & Co., et al.*, Case No. CR-05-07-M-DWM (D. Mont), or any similar or related proceeding or any settlement thereof, or for claims arising from willful misconduct, fraud, gross negligence or intentional misrepresentation..  If there shall be pending any Claim against the Asbestos PI Trust for indemnification under Section 8.8.10 of the Plan, the Asbestos PI Trust shall maintain sufficient assets (as determined in good faith by the Asbestos PI Trustees of the Asbestos PI Trust) to fund any payments in respect of that Claim for indemnification. [Additional disclosure is necessary clarifying what priority is to be given to indemnity claims.] |

| Royal Objections | Revisions Sought By Royal |
|---|---|
| 717, 722 (Bankr. S.D.N.Y. 1992), *aff'd*, 140 B.R. 347 (S.D.N.Y. 1992); *In re Tucker Freight Lines, Inc.*, 62 B.R. 213, 218 (Bankr. W.D. Mich. 1986). Second, the indemnification provision violates basic rules governing attorneys conduct.  Indemnification of attorneys for any conduct is not "reasonable" pursuant to Bankruptcy Code §328 and may not be included in the Plan.  *In re United Artists Theatre Company*, 315 F.3d 217, 229-30 (3d Cir. 2003); *In re Mortgage & Realty Trust*, 123 B.R. 626, 629-30 (Bankr. C.D. Cal. 1991) ("ethics rules prohibit an attorney from obtaining an indemnity from a client in connection with professional services.").  The legal profession has long established that it is inappropriate for an attorney to accept any form of indemnification from his or her client of potential liability to that client.  *Id.*  Under the Model Code of Professional Responsibility DR 6-102, a lawyer is prohibited from even attempting "to exonerate himself from or limit his liability to his client for his personal malpractice."  *Id.*  . | |
| 15. | **Statement of Position:** The discussion in Section 4.11 of the Disclosure Statement of Section 11.8 of the Plan -- Exculpation -- describes the exculpation to be granted in terms that are overly broad and exceed the scope of that which is permitted in the Third Circuit.  Moreover, there needs to be a carve-out for the Royal claim.<br><br>**Objection:** *See* Objection 14. | **Section 4.11 MISCELLANEOUS PROVISIONS**<br><br>Section 11.8 of the Plan - Exculpation:  None of the Reorganized Debtors, the Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, the Fresenius Indemnified Parties, the Asbestos PI Trustees of the Asbestos PI Trust, the Trust Advisory Committee, the Asbestos PD Trustees of the Asbestos PD Trust, the Asbestos PI Committee, the Asbestos PD Committee, the Unsecured Creditors' Committee, the Equity Committee, |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | | the Asbestos PI FCR, the Asbestos PD FCR, or any of their respective Representatives are to have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Cases, including the negotiation of the Plan or the settlements provided in the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, the pursuit of confirmation of the Plan, the consummation of the Plan or the settlement provided in the Sealed Air Settlement Agreement or Fresenius Settlement Agreement, or the administration of the Plan or the property to be distributed under the Plan so long as, in each case such action, or failure to act, did not constitute gross negligence ~~or willful misconduct.  In all respects, they will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence or willful misconduct~~, willful misconduct, intentional misrepresentation or fraud.  Section 11.8 of the Plan is not intended to preclude a governmental entity from enforcing its police and regulatory powers. <br><br> Nor is Section 11.8 intended to limit or release any claim of misrepresentation or fraud that Royal may hold or impair any equitable or other defense available to it including judicial estoppel, equitable estoppel, wavier and laches. |
| 16. | **Statement of Position:** A new subsection should be added in the present subsection after "Insurance Related Risk Factors" describing risks related to Royal claims. <br><br> **Objection:** 11 U.S.C. §1125(a)(1); *see also In re* | **[New] Section 9.5 Risk Factors Arising from the Actions of the Debtors and Debtors' Representatives Concerning Royal** <br><br> The settlement between Grace and Royal resolved in full all of Royal's obligations under the pre-sale Zonolite |

| | Royal Objections | Revisions Sought By Royal |
|---|---|---|
| | *Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("Relevant factors for evaluating the adequacy of a disclosure statement may include . . . information relevant to the risks posed to creditors under the plan"). | policies, and that the settlement amount of $100 million was paid in full. No insurance rights, interests or proceeds remained after the settlement so none can be assigned under the settled Royal policies. As a result, Royal contends that the Plan's assignment of any proceeds or other rights related to the settled Royal policies will be a nullity and unenforceable under applicable bankruptcy and non-bankruptcy law.<br><br>Royal further contends that the Debtors and the Debtors Representatives have breached various provisions of the Royal Settlement Agreement by, among other things, making statements and taking actions that are contrary to that agreement's terms and inconsistent with what the Debtors and the Debtors' Representatives have represented and done with respect to the Settlement Agreement in the past.  As a result, Royal contends that the Debtors and Debtors' Representatives are liable for various claims and that these claims are likely to give rise to substantial damages. To the extent that the Trust indemnifies the Debtors and Debtors' Representatives for these claims in whole, or in part, the recovery available to Class 6 Claimants and others may be diminished.<br><br>Royal further contends that the Debtors have a common law obligation to indemnify and hold Royal harmless and have referred the Debtors to various representations made by the Debtors and the Debtors' Representatives in this regard.  These claims could give rise to substantial damages.  This would demininish the recovery available to Class 6 Claimants and others. |

| | | Royal Objections | Revisions Sought By Royal |
|---|---|---|---|
| | | | Royal further contends that even assuming arguendo that the Royal Settlement Agreement did not fully and unconditionally discharge and release Royal from any coverage for any and all asbestos-related claims under the Royal Policies, no coverage is available. There are several separate and independent grounds for Royal's position. |
| | | | First, Royal contends that under New York law there would be no coverage for the Libby Claims because the Debtors did not comply with the condition precedent that it give immediate written notice of the Libby Claimants' class-action complaint.  Likewise, the Debtors provided no notice to Royal of the Libby Claimants' other suits.  In fact, eight years after the first Libby complaint was filed, the Debtors have still not tendered any of those complaints to Royal.  So under New York law, the Debtors failed to satisfy a condition precedent for notice of suit. |
| | | | Second, Royal contends that any claim for coverage would be time-barred.  In December 1999, after Grace purported to give notice to certain insurers of claims that the Libby Claimants might pursue, by letter dated January 12, 2000, Royal denied any coverage for these claims on the ground that the Settlement Agreement barred any coverage. Any contention that there is coverage now, more than eight and a half years later, is time-barred under even a six-year statute of limitations that applies to contract claims in New York. |
| | | | Third, Royal contends that the same facts that now bar any claim on statute of limitations grounds would also bar such claims under various equitable doctrines, including |

| Royal Objections | Revisions Sought By Royal |
|---|---|
| | laches, estoppel and waiver.  Laches requires a showing of unreasonable delay and prejudice.  Both of these factors are established by the more than eight and a half years that have passed since Royal denied coverage for these claims on grounds that the Settlement Agreement barred any coverage.  The facts supporting equitable and judicial estoppel are equally compelling and many of the specific factual bases for these defenses are set out in the paragraphs above.<br><br>    For these and other reasons, Royal contends that no one, including the Debtors, should be pursuing coverage under the settled Royal policies for any asbestos-related claim.<br><br>    If Grace does not promptly correct the record and reaffirm its obligations under the Settlement Agreement, Royal has advised the Debtors that it will amend its proof of claim to affirmatively assert its rights.  In addition, Royal has advised the Debtors that it will prosecute objections to those aspects to the Plan that impair its rights. |

cument comparison by Workshare Professional on Monday, November 10, 2008 3:37:00 PM

| ut: | |
|---|---|
| cument 1 ID | pcdocs://ny1/1760446/1 |
| scription | #1760446 v1 - tape |
| cument 2 ID | pcdocs://ny1/1760446/2 |
| scription | #1760446 v2 - tape |
| ndering set | standard |

| gend: | |
|---|---|
| ertion | |
| etion | |
| ved from | |
| ved to | |
| e change | |
| mat change | |
| ved deletion | |
| erted cell | |
| eted cell | |
| ved cell | |
| it/Merged cell | |
| dding cell | |

| tistics: | |
|---|---|
| | Count |
| ertions | 64 |
| etions | 25 |
| ved from | 0 |
| ved to | 0 |
| le change | 0 |
| mat changed | 0 |

| al changes | 89 |