## SETTLEMENT AGREEMENT

This Agreement ("Agreement") is made and entered into by and between W.R. GRACE & CO.-CONN. ("Grace") and ROYAL INDEMNITY COMPANY ("Royal").

### RECITALS

WHEREAS, Royal issued certain comprehensive general liability insurance policies to the Zonolite Company ("Zonolite") covering ten consecutive one-year periods from March 31, 1953 through April 1, 1963; and

WHEREAS, Grace acquired Zonolite in 1963 and, in connection with certain products sold by Zonolite, Grace, as successor to Zonolite, has been, is and expects to be in the future, a defendant in numerous asbestos-related claims and lawsuits asserted by or on behalf of persons alleging (1) bodily injury, sickness, disease and/or death as a result of an exposure to asbestos or asbestos-containing materials, and (2) damages for injury or damage to buildings and property allegedly caused by asbestos or asbestos-containing materials, all such claims and lawsuits being hereafter referred to as "Asbestos-Related Claims"; and

WHEREAS, Royal is a party to an action pending in the United States District Court for the Southern District of New York entitled <u>Maryland Casualty Company v. W.R. Grace & Co.</u>, No. 83 Civ. 7451 (the "New York Primary Action") in which Grace, Maryland Casualty Company ("Maryland") and Continental Casualty Company ("CNA") contend that they have certain rights under the insurance

polices issued by Royal relating to insurance coverage for Asbestos-Related Claims; and

WHEREAS, in connection with the New York Primary Action, pursuant to a Settlement Agreement dated May 2, 1994 (the "May 1994 Agreement"), Royal, Grace, Maryland and CNA agreed upon the existence and content of the "Primary Policies" (as hereinafter defined) but did not resolve the disputes and differences as to their respective rights and obligations under the Primary Policies relative to Asbestos-Related Claims; and

WHEREAS, Grace has demanded that Royal must defend and indemnify Grace under the Primary Policies with respect to past, pending and future Asbestos-Related Claims except for amounts previously paid on behalf of Grace or reimbursed to Grace by Other Insurers (as hereinafter defined);

WHEREAS, Royal disputes the existence and extent of any obligation to defend or indemnify Grace under the Primary Policies with respect to past, pending and future Asbestos-Related Claims;

WHEREAS, Grace and Royal have entered into this Agreement to resolve and compromise their disputes concerning coverage for Asbestos-Related Claims and Products Claims (as hereinafter defined) and to avoid the uncertainty and expense attendant to such disputes and the related litigation, but, in doing so, neither Grace nor Royal admit in any way the validity of any positions or arguments advanced by the other or by any third party.

NOW, THEREFORE, in consideration of the mutual covenants and subject to the terms and conditions herein contained, Grace and Royal hereby agree as follows:

I.   DEFINITIONS:

As used in this Agreement, the following terms shall have the meanings set forth in this Article 1.

1.0  Aggregate Products Limits of Liability means Royal's total aggregate limits of liability for all bodily injury claims and property damage claims included within the term "Products Hazard" under the Primary Policies.

1.1  Primary Policies means the following comprehensive general liability insurance policies sold by Royal to Zonolite:

```
RLG27635 (3/31/53 - 3/31/54)
RLG31840 (3/31/54 - 4/1/55)
RLG035805 (4/1/55 - 4/1/56)
RLG045762 (4/1/56 - 4/1/57)
RLG045836 (4/1/57 - 4/1/58)
RLG053959 (4/1/58 - 4/1/59)
RLG021629 (4/1/59 - 4/1/60)
RLG021620 (4/1/60 - 4/1/61)
RLG021621 (4/1/61 - 4/1/62)
RLG021622 (4/1/62 - 4/1/63)
```

1.2  "Products Claims" shall mean any Asbestos-Related Claim and any other claim, demand, or lawsuit for bodily injury or property damage falling within the "Products Hazard" definition of the Primary Policies, regardless of the cause of action or theory of recovery or coverage employed by the person asserting such claims (including claims based upon a failure to warn) or the cause

- 3 -

of action or theory of coverage employed by Grace or any other Person with respect to such claims.

1.3  "Person" means any individual, administrator, executor or legal representative, corporation, partnership, association, trust, government unit at any level of government, agency, or other entity.  Whenever the context so requires, the singular use of the term Person shall include the plural and vice versa.

1.4  "Defense Expenses" shall mean all reasonable and necessary counsel fees which have been or will be incurred by Grace to defend Products Claims, and other reasonable and necessary expenses (such as court costs, witness fees, transcript costs, and expert fees) which have been or will be incurred by Grace and are directly attributable to the defense of Products Claims.  Defense Expenses shall not include any fees or expenses incurred by Grace in connection with its efforts to document or establish insurance coverage (through litigation or otherwise), to investigate insurance issues or negotiate this Agreement or any other Agreement or arrangement with any Other Insurer, nor shall Defense Expenses include any sums within the definition of Loss.

1.5  "Loss" shall mean all sums Grace has paid or will pay in the future in settlement of Products Claims, or in satisfaction of judgments entered with respect to such Claims, including, without limitation, any interest Grace may be required to pay thereon.  For purposes of this Agreement only, Loss shall not include any sums within the definition of Defense Expenses.

- 4 -

1.6   "Other Claims" means any actual, potential or threatened claim of which Grace has knowledge or otherwise has been put on notice which involves, or is alleged to involve, Zonolite or a Zonolite product, but "Other Claims" does not include Asbestos-Related Claims, Products Claims or claims falling within the Aggregate Products Limits of Liability.

1.7   "Other Insureds" shall mean any person who has claimed, is claiming and/or claims in the future to be insured or covered under the Primary Policies, and any Person identified in any of the Primary Policies as a named insured, additional named insured or additional insured, including any former or current directors, officers or employees of any such insured.

1.8   "Other Insurer" shall mean any insurer other than Royal which at any time issues or issued (or is at any time alleged to have issued) an insurance policy of any kind whatsoever to Grace, Zonolite, any Zonolite subsidiary or any licensee of Zonolite or its subsidiaries or any Other Insureds.


II.   SETTLEMENT PAYMENT:

2.0   Royal agrees to pay Grace the sum of $100,000,000 in full satisfaction of Royal's alleged obligation to indemnify Grace, Zonolite, and any Other Insureds for Loss arising out of Products Claims under the Primary Policies and in full satisfaction of Royal's alleged obligation to defend Grace, Zonolite or any Other Insureds or to pay Defense Expenses arising out of Products Claims

under the Primary Policies.   Such payment shall be made within three (3) days of the Effective Date by means of a wire transfer to the account of Grace at Chemical Bank - New York (ABA #021-000-128; Account Name - W.R. Grace & Co.; Account # 016-001257) or to such other account as may be specified by Grace in a written notice to Royal in accordance with Section XX.

III. <u>CANCELLATION OF COVERAGE</u>

3.0   Grace hereby agrees to the cancellation of all insurance coverage for Products Claims under the Primary Policies, effective as of the Effective Date, in exchange for a payment by Royal to Grace in the amount of $100,000,000 as provided in Section 2.0. The cancellation of insurance coverage for Product Claims under the Primary Policies shall not affect the rights and obligations of Grace and Royal under the Primary Policies with respect to insurance coverage for claims that are not Product Claims.

3.1   If Royal fails to make all or any portion of the payment to Grace provided for in Section 2.0 on or before the due date thereof, Royal shall pay interest to Grace on the unpaid amount thereof for the period commencing on the date such amount was due and ending on the actual date of payment at a rate of interest equal to five percentage points over the rate of interest announced from time to time by the main office of Citibank N.A. in New York, NY as its "prime rate".

- 6 -

IV.  SPECIFIC RELEASE BY GRACE

4.0  Except for the obligations set forth in this Agreement, Grace hereby releases and forever discharges Royal of and from any and all actions, causes of action in law or in equity, suits, debts, liens, contracts, indemnity and defense obligations, agreements, promises, liabilities, claims, demands, losses, costs or expenses of any kind or nature, known or unknown, fixed or contingent, direct or indirect, which Grace now has or may have against Royal in any way relating to the New York Primary Action and/or payment or handling of Asbestos-Related Claims and other Product Claims under the Primary Policies, including, but not limited to, any alleged or potential claim for breach of the covenant of good faith and fair dealing, unfair claims practices or punitive damages.

4.1  Grace hereby withdraws all requests, demands and tenders for indemnity, Loss, Defense Expenses, reimbursement costs of any nature, payments, benefits or obligations heretofore submitted to Royal for Products Claims under the Primary Policies and does hereby covenant and agree to forever relinquish and abandon any and all rights, whether actual or alleged, known or unknown, accrued or unaccrued, for any coverage of Products Claims under the Primary Policies.  It is the express intent of the Parties that this Agreement shall operate to release and forever discharge Royal to the fullest extent possible under law from any and all obligations (past, present, existing or future, actual or alleged, known or unknown, accrued or unaccrued) to Grace, Zonolite, Other Insureds

- 7 -

on whose behalf Grace is authorized to act and any Person (except for any Other Insurer) making a claim by, through or derived from Grace, for Products Claims under the Primary Policies.

4.2  Nothing in this Agreement shall release or impair any claim Maryland or General Insurance Company of America may have for the recovery of Defense Expenses those insurers paid or incurred to or on behalf of Grace.

V.   SPECIFIC RELEASE BY ROYAL

5.0  Except as to the obligations set forth in this Agreement, Royal hereby releases and forever discharges Grace of and from any and all actions, causes of action in law or in equity, suits, debts, liens, contracts, indemnity and defense obligations, agreements, promises, liabilities, claims, demands, losses, costs or expenses of any kind or nature, known or unknown, fixed or contingent, direct or indirect, which Royal now has or may have against Grace in any way relating to the New York Primary Action or otherwise relating to claims by Grace under the Primary Policies for coverage with respect to Asbestos-Related Claims or other Products Claims.

VI.  RIGHT OF RECOVERY AGAINST OTHER INSURERS

6.0  Royal shall not have the right to seek recovery from any Other Insurer (as defined herein) for the settlement payment made by Royal to Grace under Section 2.0.

VII. <u>EXHAUSTION</u>

7.0   Grace acknowledges that the payment made by Royal under Section 2.0 of this Agreement represents and shall be conclusively deemed for all purposes to be a full and final payment and complete exhaustion of the Aggregate Products Limits of Liability under the Primary Policies.

VIII. <u>COMPLETE FULFILLMENT OF OBLIGATIONS</u>

8.0   Grace further acknowledges that this Agreement represents the fulfillment of Royal's entire obligation to Grace for Products Claims under the Primary Policies.

IX.   <u>INDEMNIFICATION BY GRACE</u>

9.0   In the event that any Other Insured or any Person (except any Other Insurer including, without limitation, Maryland, CNA and General Insurance Company of America) makes Products Claims under the Primary Policies (including without limitation claims pursuant to a direct-action statute, garnishment proceeding, third-party suit, or otherwise) against Royal, Grace will indemnify and hold harmless Royal from any and all liability imposed upon, or costs or expenses incurred by, Royal in connection with such claims, provided, however, that if such claimant is not an Other Insured, such total aggregate indemnification for any liability imposed for all such claims will be limited to $6,000,000.

- 9 -

9.1  In the event a claim is made against Royal for which Royal is to be indemnified for liability, costs and expenses as provided in paragraph 9.0 above, Royal shall give written notice of such claim to Grace as soon as is practical.  Grace at its own expense shall assume the defense of Royal for such claims, including the hiring of counsel for such defense.  In the event Grace fails or refuses to retain counsel within a reasonable time to defend Royal, Royal may retain counsel and Grace will be required to pay promptly all reasonable attorneys' fees and other costs and expenses incurred in connection with Royal's defense.

9.2  In the event a claim is made against Royal for which Royal is to be indemnified for costs and expenses only, as provided in paragraph 9.0 above, Royal shall give written notice of such claim to Grace as soon as practical.  Royal may retain counsel for such claims and Grace will be required to pay promptly   all reasonable attorneys fees and other costs and expenses incurred in connection with Royal's defense.

X.    NO ADMISSION; RESERVATION OF RIGHTS

10.0 This Agreement is the product of informed negotiations between the parties assisted by counsel and involves compromises of previously stated legal positions.  This Agreement does not necessarily reflect the view of either of the parties as to its rights and obligations with regard to matters outside of this Agreement.  For all other purposes and in all other matters, each

- 10 -

party reserves all previously held positions and all other rights and privileges.

10.1 All actions taken and statements made by the parties hereto or their representatives relating to their participation in this Agreement, including its development and implementation, are taken and made in the context of privileged settlement negotiations, shall be without prejudice or value as precedent and shall not be taken as the standard by which other matters may be judged or against which other matters may be compared. This Agreement is the product of arm's length negotiations. It is the compromise of disputed claims, and it is not intended to be, nor shall it be construed as, an admission of coverage or as a policy interpretation. Neither this Agreement nor any statement made by a party in negotiating this Agreement shall be used in court, or formal or informal dispute resolution proceedings, or otherwise, to create or interpret any obligation by a party under the Primary Policies or any other insurance policy. Royal does not admit coverage by entering into this Agreement and enters into it for business reasons and in the spirit of compromise.

10.2 Royal and Grace request all courts to take notice of the underlying purpose of this Agreement as described in Section 10.1, and to accord the parties and their representatives full privilege and protection with respect to the disclosure of their actions, statements, documents, papers and other materials relating to this Agreement, including its development and implementation.

XI.  NO THIRD PARTY RIGHTS; NO ASSIGNMENT

11.0 No persons other than Grace and Royal shall have any rights under this Agreement. No party may assign this Agreement nor any of its rights, benefits or obligations hereunder without the prior written consent of the other party hereto, which consent shall not be unreasonably withheld.

XII. ENTIRE AGREEMENT

12.0 This Agreement between Grace and Royal together with the May 2, 1994 Agreement constitute the entire agreement among Grace and Royal relating to coverage for Product Claims under the Primary Policies.    All    antecedent    or    contemporaneous    extrinsic representations, warranties or collateral provisions concerning the negotiation and preparation of this Agreement are intended to be discharged and nullified.

XIII. INTERPRETATION OF AGREEMENT

13.0 This Agreement is not a contract of insurance and the parties agree that it shall not be interpreted according to the rules of construction applicable to insurance contracts.    In particular, with respect to interpretation of this Agreement, each of the parties has been represented by counsel and no part of this Agreement shall be construed against any party on the basis of the

party's identity as an insurance company or as drafter of any part of this Agreement.

XIV. REPRESENTATIONS AND WARRANTIES

14.0 Grace hereby represents and warrants to Royal as follows:

(a) Grace is a corporation, duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation with full corporate power and authority to enter into this Agreement and perform its obligations hereunder.

(b) The execution and delivery of this Agreement by Grace and the performance by Grace of its obligations hereunder have been duly authorized by all necessary corporate action on the part of Grace.

(c) This Agreement has been duly executed and validly delivered by Grace and constitutes a valid and binding obligation of Grace enforceable against Grace in accordance with its terms.

(d) The execution and delivery of this Agreement by Grace and the performance by Grace of its obligations hereunder will not violate any provision of its charter or by-laws or any consent or order of any governmental authority by which it may be bound.

- 13 -

(e)  Grace hereby represents and warrants that it has no knowledge of Other Claims which have been tendered, filed, asserted, are pending, or have been threatened against Grace, Zonolite or any Other Insured which would implicate any of the Primary Policies.  Nothing in this Settlement Agreement shall preclude Grace from submitting any Other Claims to Royal for payment under the Primary Policies and nothing in this Settlement Agreement shall limit or preclude any defenses which Royal might otherwise have to such Other Claims.

14.1  Royal hereby represents and warrants to Grace as follows:

(a)  Royal is a corporation, duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation with full corporate power and authority to enter into this Agreement and perform its obligations hereunder.

(b)  The execution and delivery of this Agreement by Royal and the performance by Royal of its obligations hereunder have been duly authorized by all necessary corporate action on the part of Royal.

(c)  This Agreement has been duly executed and validly delivered by Royal and constitutes a valid and binding obligation of Royal, enforceable against Royal in accordance with its terms.

- 14 -

(d) The execution and delivery of this Agreement by Royal and the performance by Royal of its obligations hereunder will not violate any provision of the charter or by-laws of Royal or any consent or order of any governmental authority by which Royal may be bound.

14.2 Each party agrees as to its own breach of any warranty expressly stated in this Agreement to indemnify and hold harmless the other party.

## XV. DISMISSALS

15.0 Within fifteen days following receipt by Grace of the settlement payment provided for in Section 2.0, Grace shall deliver to Royal an executed Dismissal with Prejudice of all claims brought by Grace against Royal in the New York Primary Action. Royal will file and serve said Dismissal with Prejudice. Said Dismissal with Prejudice shall indicate that each party will bear its own attorneys' fees and costs in connection with the New York Primary Action.

15.1 Within fifteen days following receipt by Grace of the settlement payment provided for in Section 2.0, Royal shall deliver to Grace an executed Dismissal with Prejudice of all claims brought by Royal against Grace in the New York Primary Action. Grace will file and serve said Dismissal with Prejudice. Said Dismissal with Prejudice shall indicate that each party will bear its own

- 15 -

attorneys' fees and costs in connection with the New York Primary Action.


XVI. COOPERATION

16.0 In the event any proceedings are commenced to invalidate all or any part of this Agreement, the Parties do mutually agree to cooperate fully in the opposition to such proceedings. The Parties further agree to cooperate fully, if necessary, to prove exhaustion of the Aggregate Products Limits of Liability of the Primary Policies. In the event that, as a result of such proceedings, all or any part of this Agreement is invalidated and a claim is made against the Parties to this Agreement, all defenses ever available to the Parties under the Primary Policies are neither waived nor impaired, but are fully preserved.

16.1 Grace agrees that it will not take a position in the New York Action, or in any other litigation involving Asbestos-Related Claims under the Primary Policies, with respect to (a) whether Royal had an obligation to defend or indemnify Grace, Zonolite or any Other Insured for Asbestos-Related Claims, and (b) whether Royal has any obligation to CNA, Maryland or General Insurance Company of America or any Other Insurers for contribution, indemnity or subrogation by reason of the Primary Policies. Nothing herein shall prohibit Grace, or its employees or agents, from responding fully and truthfully to properly served and noticed discovery or from giving full and truthful testimony pursuant to

proper service of a subpoena before a court or tribunal or by court order or direction.

16.2 Grace acknowledges that Royal may require information concerning Asbestos-Related Claims and other Product Claims for purposes of establishing its rights against its reinsurers. Grace shall cooperate reasonably with Royal for such purposes by providing, when requested by Royal, non-privileged information about the progress of the litigation of such claims and access to non-privileged documentation with respect thereto.

XVII. EFFECTIVE DATE

17.0 This Agreement shall become effective as to each party from and after the date (the "Effective Date") the last party shall have executed this Agreement.

XVIII. PUBLIC DISCLOSURE AND CONFIDENTIALITY

18.0 Each party may make public disclosure of the existence of this Agreement by means of a press release or otherwise. Such disclosure may describe this Agreement in general terms including the amount of the settlement payment, but any such disclosure by Grace shall omit the identity of Royal. Royal and Grace shall hold the detailed terms of this Agreement in confidence and shall not reveal any of the same to any person or entity whatsoever except that either party may disclose the terms of this Agreement in

- 17 -

accordance with the following provisions if it deems such disclosure necessary or advisable:

(a) The terms of this Agreement may be disclosed by a party with the consent of the other party hereto.

(b) The terms of this Agreement may be disclosed to the extent required in connection with any disputes, claims or actions between Royal and Grace concerning their respective rights and obligations under this Agreement or in any action to enforce the terms of this Agreement.

(c) The terms of this Agreement may be disclosed to the extent required by court order issued by a judge or magistrate.

(d) The terms of this Agreement may be disclosed by Royal to its reinsurers, including said reinsurers' attorneys, employees, auditors, agents and retrocessionaires, and any persons, arbitrators and judges, federal or state, which may be involved in the reinsurance collection process or issues relating to the collection of reinsurance, subject to appropriate assurances of confidentiality.

(e) The terms of this Agreement may be disclosed by Grace to the extent necessary to obtain insurance coverage from an entity other than Royal, subject to appropriate assurances of confidentiality.

- 18 -

(f)   The parties may make copies of this Agreement available to their respective accountants, counsel, lenders or underwriters, and to counsel for such lenders or underwriters, subject to appropriate assurances of confidentiality.

(g)   The parties to this Agreement may make reference to or describe this Agreement in its filings with the Securities and Exchange Commission and to the extent that such disclosure is required to comply with any other government, regulatory or accounting/auditing requirement applicable to such party, but shall not make available a copy of this Agreement nor identify the other party to this Agreement unless compelled to do so by a court or governmental agency or similar regulatory body.

(h)   Each party may make copies of this Agreement available to its key officers, directors and employees and to the key officers, directors and employees of its affiliates.

(i)   The parties may make copies of this Agreement available to their respective attorneys, auditors and consultants, subject to appropriate assurances of confidentiality.

(j)   Each party may make copies of this Agreement available to any federal or state authorities or

other entities to which it may have an obligation to report or disclose.

The parties shall cooperate and take such steps as are advisable or necessary to protect the confidentiality of the terms of this Agreement. Each party shall notify the other promptly after a request for disclosure not covered by the above-recited exceptions has been made, so that protective action may be taken.

### XIX. NO FURTHER TENDER OF ASBESTOS-RELATED CLAIMS OR PRODUCTS CLAIMS

19.0 Grace agrees that no further Asbestos-Related Claims or Products Claims will be presented or tendered by Grace to Royal under the Primary Policies for any reason or purpose regardless of the theory of coverage.

### XX. NOTICE

20.0 All notices, bills, demands, payments or other communications which either party desires or is required to give, shall be given in writing and shall be deemed to have been given if hand delivered, sent by Certified U.S. Mail or by courier service, addressed to the other party at the address set forth below or such other address as such other party may designate in writing from time to time by notice in accordance with this Section:

If to Grace:

W.R. Grace & Co.
One Town Center Road
Boca Raton, Florida 33486-1010
Attn:  Secretary

If to Royal:

Royal Insurance
9300 Arrowpoint Boulevard
Charlotte, North Carolina 28270
Attention:  Vice President Liability Claims

## XXI.  AMENDMENTS; WAIVER

21.0 This Agreement may be amended, modified, superseded or cancelled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes or cancels this Agreement, executed by each of the parties or, in the case of a waiver, by or on behalf of the party waiving compliance. The failure of any party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same. No waiver by any party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant or warranty.

## XXII. CAPTIONS

22.0 The captions contained in this Agreement are for convenient reference only and shall not in any way affect the meaning or interpretation of this Agreement.


## XXIII. COUNTERPARTS

23.0 This Agreement may be executed in two or more counterparts, each of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, this Agreement has been read and signed by the duly authorized officers of the parties, effective as of the Effective Date.

W.R. GRACE & CO-CONN.

By _____
Title _____
Date _____

ROYAL INDEMNITY COMPANY

By _____
Title _____
Date _____

- 22 -