IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-01139 (JKF) |
| Debtors. | ) | Jointly Administered |
| | ) | |
| W. R. GRACE & CO., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | |
| | ) | Adversary No. A-01-771 |
| MARGARET CHAKARIAN, et al., | ) | |
| And John Does 1-1000, | ) | |
| | ) | |
| Defendants. | ) | |

Hearing Date: August 25, 2003 at 12:00 p.m.
Objection Deadline: Augusts 8, 2003

## DEBTORS' MOTION TO EXPAND THE PRELIMINARY INJUNCTION TO INCLUDE ACTIONS AGAINST MONTANA VERMICULITE COMPANY

On day one of these chapter 11 cases, the Court entered an order enjoining parties from pursuing non-debtor affiliates with respect to actions arising out of the Debtors asbestos related businesses. The purpose of this Motion is to stop yet another attempt to pursue asbestos related personal injury actions that may ultimately become enforceable against the Debtors. The Preliminary Injunction was entered to provide the Debtors with the breathing room necessary to effectively deal with their massive number of asbestos-related cases and successfully reorganize under chapter 11. Since the petition date, several parties have unsuccessfully attempted to get around the Preliminary Injunction. This Motion relates to a suit against Montana Vermiculite Company, the shell corporation left over after the Debtors purchased the Zonolite Company in 1963. For the very reasons the Court initially entered the Preliminary Injunction, the protection

DOCS_DE:75520.1
ODMA:PCDOCS\DOCS_DE\75520\1

of the Preliminary Injunction should be expanded to include actions alleging asbestos related liability against Montana Vermiculite Company. In support of this Motion, the Debtors respectfully represent as follows:

## BACKGROUND

1. Pursuant to the Agreement and Plan of Reorganization between W. R. Grace & Co. ("GraceCo") and Zonolite Company ("Zonolite") dated January 17, 1963 (the "Zonolite Purchase Agreement"), GraceCo purchased substantially all of the assets of Zonolite, a corporation formed pursuant to Montana law. Subsequent to the GraceCo's purchase of Zonolite's assets, a shell corporation remained. The shell corporation changed its name to Montana Vermiculite Company ("Montana Vermiculite"). GraceCo did not purchase Montana Vermiculite. The Debtors understand that, on or about September 18, 1964, Montana Vermiculite was dissolved under Montana state law pursuant to a Decree of Dissolution.[1] Pursuant to the current version of the Montana Code Annotated, sections 35-1-935 and –937, a dissolved Montana corporation remains subject to suit for "any claim or right, whether or not the claim or right existed or accrued prior to dissolution." MCA § 35-1-937.[2]

2. Pursuant to the Zonolite Purchase Agreement, GraceCo specifically did not assume any "liabilities against which Zonolite is insured or otherwise indemnified, to the extent

---

[1] On the face of the Decree of Dissolution, it appears that the stock of Montana Vermiculite was exchanged for stock in GraceCo. However, the Debtors believe that Montana Vermiculite was never merged with GraceCo or any of the Debtors. If, however, Montana Vermiculite was in fact merged into GraceCo, there should not be a separate dissolved entity named as a separate defendant and the actions against Montana Vermiculite should be covered by the automatic stay.

[2] The version of Montana law in effect at the time of Montana Vermiculite's dissolution had much more strict limitations on bringing actions against dissolved corporations. See R.C.M. § 15-1107 (1955). Under the old version of the law, an action had to be commenced within ten years of the entry of the decree of dissolution.

of such insurance or indemnification." These liabilities, if any, remained with Montana Vermiculite. Prior to 1963, Zonolite had maintained one or more insurance policies (the "Pre-Sale Policies") through Royal Indemnity Company ("Royal"). As part of the purchase of Zonolite's assets, GraceCo purchased rights to the Pre-Sale Policies.

3.  Pursuant to a settlement agreement between W. R. Grace & Co.—Conn. ("GraceConn")[3] and Royal dated as of January 5, 1995 (the "Royal Settlement"), Royal paid the Debtors a confidential sum of money in full and final settlement of Royal's obligations under the Pre-Sale Policies. In the Royal Settlement, the Debtors agreed to indemnify and hold harmless Royal against any asbestos-related claims made against the Pre-Sale Policies (the "Royal Indemnity").

4.  On or about July 20, 1999, several individual plaintiffs (the "Montana Plaintiffs") filed complaints alleging personal injury related to asbestos exposure (the "Montana Actions") against GraceDel, GraceConn. (together, "Grace"), Montana Vermiculite, the Estate of Earl D. Lovick and Does 1 through 4 (collectively, the "Montana Defendants") in the Montana District Court for Lincoln County (the "State Court"). Earl D. Lovick and Does 1 through 4 (the "Individual Montana Defendants") are allegedly former employees of the Debtors.

5.  At some time after the filing of the Montana Actions, Earl D. Lovick died and his estate settled its liability with the Montana Plaintiffs. Subsequently, Grace sought to remove the

---

[3] In 1988, the Debtors restructured by reincorporating in New York through the formation of a new holding company, named W. R. Grace & Co. ("Grace-NY"). GraceCo was renamed GraceConn and continued to exist as a subsidiary of Grace-NY. Subsequently, a new holding company was formed in Delaware ("GraceDel"). GraceConn and GraceDel are two of the Debtors.

Montana Actions to United States District Court for the District of Montana (the "Federal Court").

6. On April 2, 2001, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), which have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession (collectively, the "Chapter 11 Cases").

7. On or about April 27, 2001, the Court entered a preliminary injunction staying actions against non-debtor affiliates of the Debtors asserting primarily asbestos-related and fraudulent transfer claims (the "Original Injunction"). On June 1, 2001, the Debtors filed a motion seeking to modify the Original Injunction (the "Modification Motion"). Among other things, the Modification Motion sought to extend the Original Injunction to stay actions against entities affiliated with the Debtors related to alleged exposure to asbestos related to the Debtors.

8. On January 22, 2002, the Court entered an order granting a modified preliminary injunction (the "Preliminary Injunction"). Among other things, the Preliminary Injunction stayed "the commencement and/or prosecution of all Actions" pending further order of the Court. The Preliminary Injunction defines Actions to include pending and future actions "against Affiliated Entities that arise from alleged exposure to asbestos indirectly or directly caused by Debtors." The Preliminary Injunction defines Affiliated Entities to include the Debtors' insurance carriers, non-debtor affiliates and current and former employees. A copy of the Preliminary Injunction is attached as Exhibit A.

9. The Preliminary Injunction barred the continuation of the Montana Actions against the Debtors and the Individual Montana Defendants, but not against Montana Vermiculite as it is not a "non-debtor affiliate" as defined in the Preliminary Injunction.

10. The Montana Plaintiffs have asserted that Montana Vermiculite was named as a defendant in the Montana Actions to trigger any insurance coverage that might be available from Royal for pre-1963 claims.

11. In early 2002, the Montana Plaintiffs filed a motion seeking to appoint a successor trustee for Montana Vermiculite for the purpose of receiving process on behalf of Montana Vermiculite. By order dated April 18, 2002, the State Court appointed Lawrence H. Sverdrup as the limited trustee for Montana Vermiculite (the "Trustee") for the sole purpose of receiving process for Montana Vermiculite. On or about February 12, 2003, the Montana Plaintiffs lodged affidavits and requests for entry of default against Montana Vermiculite with the State Court and the Federal Court. On or about March 17, 2003, the Federal Court and the State Court entered default judgments against Montana Vermiculite.

### Relief Requested

12. By this Motion, the Debtors request the entry of an order expanding the injunctive relief granted by the Preliminary Injunction to include actions against Montana Vermiculite relating to allegations of asbestos-related liability related to the Debtors.

### Basis For Relief

13. The purpose of the Preliminary Injunction is to bar the prosecution of asbestos-related actions against the Debtors' affiliates, employees, insurance carriers and other parties with an identity of interest with the Debtors in order to provide the Debtors with the breathing

room necessary to effectively deal with the massive number of asbestos-related cases and to successfully reorganize. The Montana Actions are exactly the type of actions the Preliminary Injunction was intended to stop from proceeding. Given that Montana Vermiculite was dissolved almost 40 years ago, the Debtors did not believe it would be necessary to take any extraordinary action to prevent the Montana Actions from proceeding. However, the quirks of Montana state law regarding dissolved corporations create a situation where the Montana Plaintiffs believe it is appropriate to proceed against Montana Vermiculite.

14. The continuation of the Montana Actions against Montana Vermiculite has the potential to impact the Debtors' estates in two ways, both of which are contrary to the purpose of the Preliminary Injunction. First, as a result of the Royal Indemnity, if the Montana Plaintiffs seek recovery against Royal for a judgment against Montana Vermiculite, Royal may argue that such judgment triggers the Royal Indemnity, thus making such a judgment a *de facto* judgment against the Debtors. Second, allowing any asbestos-related litigation to proceed in which the Debtors are the remaining sole real party in interest creates a distraction that prevents the Debtors from focusing on their reorganization plans.

15. To the extent that a judgment for damages is entered against Montana Vermiculite, which could trigger coverage under the Pre-Sale Policies, Grace may have indemnity obligations to Royal. Although both Royal and the Debtors dispute any obligation for the liabilities of Montana Vermiculite, the entry of a judgment against Montana Vermiculite which could be covered by the Pre-Sale Policies may impact the Debtors' estates through the Royal Indemnity. Because of the possible indemnity obligations, actions against Montana Vermiculite are, in effect, actions against Grace, and should be subject to the Preliminary Injunction.

16. The Montana Actions are asbestos-based litigation potentially impugning the Debtors. That the vagaries of Montana corporate law may provide the Montana Plaintiffs with an empty shell to pursue does not change the fact that any recovery could ultimately be at the expense of the Debtors' estates. Thus, to protect the Debtors' interests and the interests of the Debtors' creditors, the Preliminary Injunction should be expanded to include actions against Montana Vermiculite.

WHEREFORE, Debtors respectfully request that their motion to expand the Preliminary Injunction to cover actions against Montana Vermiculite Company be granted.

Dated: July 21, 2003

> KIRKLAND & ELLIS
> David M. Bernick, P.C.
> Janet S. Baer
> James W. Kapp III
> Christian J. Lane
> 200 East Randolph Drive
> Chicago, Illinois 60601
> (312) 861-2000
>
> and
>
> PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.
>
> *[signature]*
>
> Laura Davis Jones (Bar #2436)
> Scotta McFarland (Bar #4184)
> Paula Galbraith (Bar #4258)
> 919 North Market Street, 16th Floor
> P.O. Box 8705
> Wilmington, Delaware 19899-8705 (Courier 19801)
> (302) 652-4100
>
> Co-Counsel for the Debtors and Debtors in Possession

# EXHIBIT A

## Preliminary Injunction

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | |
| W. R. GRACE & CO., et al., ) | Chapter 11 |
| ) | |
| ) | Case No. 01-01139 (JKF) |
| Debtors. ) | (Jointly Administered) |
| ) | |
| W.R. GRACE & CO., ) | |
| et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| -against- ) | |
| ) | Adversary No. A-01-771 |
| MARGARET CHAKARIAN, et al. ) | |
| and JOHN DOES 1-1000, ) | |
| ) | |
| Defendants. ) | |

### ORDER GRANTING MODIFIED PRELIMINARY INJUNCTION

This matter came on for hearing on January 3, 2002 on the motion of W.R. Grace & Co. and certain of its subsidiaries (collectively, the "Debtors"), to modify the Preliminary Injunction staying all asbestos-related and fraudulent transfer claims against Affiliated Entities. On June 21, 2001, the Debtors, as plaintiffs in this adversary proceeding, filed a Amended Verified Complaint seeking entry of a preliminary injunction pursuant to Section 105(a) of the Bankruptcy Code and 28 U.S.C. § 1651 enjoining the commencement and/or further prosecution of the Actions against Affiliated Entities, as defined below.

A temporary restraining order ("TRO") was entered on April 2, 2001 enjoining the commencement or prosecution of Asbestos Actions against the Affiliated Entities. On April 12, 2001, the Court extended the TRO until April 24, 2001. On April 18, 2001, the Court set this

A0875

87

matter for a preliminary injunction hearing on May 3, 2001, and entered a preliminary injunction barring the commencement or prosecution of Asbestos Actions against the Affiliated Entities until that time. On May 3, 2001, the Court granted Debtors' motion for a preliminary injunction, as modified in their reply brief, and issued a preliminary injunction barring the prosecution of currently pending asbestos-related actions and fraudulent transfer actions against certain affiliates of Debtors. Debtors have now moved to modify that preliminary injunction to add several additional claims and parties and to reinstate the bar against the commencement of new Actions against Affiliated Entities.

The following terms are defined for purposes of this Order:

1. "Fresenius" means National Medical Care, Inc.; Fresenius A.G.; Fresenius, U.S.A., Inc.; Fresenius Medical Care A.G.; and Fresenius National Medical Care Holdings, Inc.

2. "Sealed Air" means Sealed Air Corporation, Sealed Air Corporation (US), Cryovac, Inc., and Sealed Air (Canada) Inc.

3. "Merrill Lynch" means Merrill, Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch").

4. "CSFB" means Credit Suisse First Boston Corporation.

5. "Non-Debtor Affiliates" means affiliates of the Debtors that are not filing entities for purposes of these chapter 11 cases, as well as present and former officers, directors and employees of Debtors. The Non-Debtor Affiliates are listed in Exhibit A hereto.

6. "Insurance Carriers" means Maryland Casualty Company, Continental Casualty Company, their affiliates and any other insurer of the Debtors under the Insurance Policies as

outlined on Exhibit B hereto who has been named as a defendant in actions pending in direct action states.

7. "Robinson" means Robinson Insulation, Co.

8. "Affiliated Entities" means Fresenius, Sealed Air, Merrill Lynch, CSFB, Insurance Carriers, Robinson and the Non-Debtor Affiliates. The Affiliated Entities are listed in Exhibit A.

9. The "Insurance Policies" are those insurance policies that may provide coverage for asbestos-related claims asserted against the Debtors. The Insurance Policies include those listed in Exhibit B.

10. The "Actions" means pending actions and actions that have not been filed or are not pending as of the date of entry of this Order as follows:

    a) against Affiliated Entities that arise from alleged exposure to asbestos indirectly or directly allegedly caused by Debtors; or

    b) for which there may be coverage under the Insurance Policies; or

    c) against Affiliated Entities alleging fraudulent transfer or fraudulent conveyance claims;

    d) against Insurance Carriers alleging coverage for asbestos-related liabilities; or

    e) against current or former officers, directors or employees of Debtors that arise out of such officer's, employee's or director's employment or relationship with Debtors except the action entitled <u>Robert Locke v. W. R. Grace and Robert Bettacchi</u>, No.

99-2530 (Mass. Sup. Ct., Middlesex Cty) wherein the Debtors request for an injunction is continued to January 29, 2002 at 1:00 p.m. for further hearing.

The definition of "Actions" does not include the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's police or regulatory power, as outlined in section 362(b)(4) of the Bankruptcy Code.

In support of this Order, the Court finds that:

1. Without the injunctive relief sought, the Debtors would suffer the risk of irreparable harm, including potential diminution of estate property; and

2. The injunctive relief requested is in the best interests of the Debtors and their estates, creditors and other parties in interest;

3. This proceeding is a core proceeding pursuant to 28 U.S.C. § 158(a); and

4. This Order is without prejudice to the Debtors' or others' rights to seek relief pursuant to the automatic stay under 11 U.S.C. § 362.

After due deliberation and cause appearing therefore, accordingly:

IT IS HEREBY ORDERED that the prosecution of all of the following actions are stayed and enjoined pending a final judgment in this adversary proceeding or further order of this Court:

a. all Actions as defined above. Any additional Actions that are filed and served upon Affiliated Entities are, upon completion of service, stayed and enjoined pending a final judgment in this adversary proceeding or further order of this Court;

-4-

A0878

b.  the action entitled <u>TIG Ins. Co. v. Smolker</u>, No. BC 173952 (Los Angeles County Superior Court) and all related appeals pending in the California Court of Appeals, Second Appellate District, consolidated as No. B 138229, in their entirety;

c.  the State of Michigan, Dept. of Corrections' (the "State") third party action against Grace Dearborn Company and Betzdearborn, Inc. in the case entitled <u>Ruppel K. Perry v. State of Michigan, Dept. of Corrections v. Grace Dearborn Company, predecessor company of Betzdearborn, Inc.</u>, No. 95 15855 CM (Mich. Ct. Claims), but the Plaintiff, Ruppel K. Perry is not stayed and enjoined from proceeding with his Complaint against the State;

d.  the action entitled <u>Ellison v. FPC Disposal, Inc.</u>, No. CJ-99-151-01, (Okla. Dist. Ct., Canadian Cty.) as to Samson Investment Company, Samson Hydrocarbons Co. and their subsidiaries and affiliates (the "Samson entities") unless plaintiff Ellison identifies in writing to counsel for the Debtors any Samson affiliate not entitled to indemnification by the Debtors and counsel for the Debtors, within 20 days of such notification does not disagree with Ellison. In the event the Debtors disagree with Ellison's identification of a Samson affiliate that is not entitled to indemnification by the Debtors, Ellison shall only proceed against such Samson affiliate by further order of this Court after notice and a hearing;

e.  the action entitled <u>Exxon Corp. v. Samson Hydrocarbons Co.</u>, No. CJ-99-390, (Okla. Dist. Ct., Creek Cty.) as to the Samson entities and plaintiff Exxon's Motion for Summary Judgment in this adversary proceeding (Docket No. 72) shall be continued for hearing to January 29, 2002 at 1:00 p.m; and

  f. the action entitled <u>Youpee v. Samson Hydrocarbons Co.</u>, No. CV-98-108-BLD-JDS (D. Mont.) which has been conditionally settled in the Montana District Court and is thus stayed and enjoined herein as to the Samson entities only in the event that the conditions to the settlement are not met and the action is not dismissed by the Montana District Court as to the Samson entities.

Dated: January 22, 2002

            _____
            THE HONORABLE JUDITH K. FITZGERALD
            UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-01139 (JKF) |
| Debtors. | ) | Jointly Administered |
| | ) | |
| W. R. GRACE & CO., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | |
| | ) | Adversary No. A-01-771 |
| MARGARET CHAKARIAN, et al., | ) | |
| And John Does 1-1000, | ) | |
| | ) | |
| Defendants. | ) | |
| | | Re: Docket No. _____ |

**ORDER EXPANDING THE PRELIMINARY INJUNCTION
TO INCLUDE ACTIONS AGAINST MONTANA VERMICULITE COMPANY**

Upon consideration of the Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against Montana Vermiculite Company (the "Motion"); and due and proper notice of the Motion having been given; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED, that the Preliminary Injunction,[1] dated January 22, 2002, is hereby expanded to include Montana Vermiculite Company as a Non-Debtor Affiliate; and it is further

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

DOCS_DE:75520.1

::ODMA\PCDOCS\DOCS_DE\75520\1

ORDERED, that all actions against Montana Vermiculite Company shall be stayed by the Preliminary Injunction until further order of the Court.

_____, 2003

                                                      Honorable Judith K. Fitzgerald
                                                      United States Bankruptcy Judge