IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |
| W. R. GRACE & CO., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. A-01-771 |
| | ) | |
| MARGARET CHAKARIAN, et al., | ) | |
| And John Does 1-1000, | ) | |
| | ) | |
| Defendants. | ) | |

Hearing Date: September 22, 2003 at 12:00 noon

## DEBTORS' REPLY IN SUPPORT OF ITS MOTION TO EXPAND THE PRELIMINARY INJUNCTION TO INCLUDE ACTIONS AGAINST MONTANA VERMICULITE COMPANY

The Debtors' Motion[1] seeks to stop the pursuit of asbestos related personal injury actions

against Montana Vermiculite Company ("MVC") because those actions will directly affect the

Debtors. This it not the same situation that faced the Court and District Judge Wolin in the Carol

Gerard matter now on appeal to the 3rd Circuit. Using Carol Gerard's name and attaching Judge

Wolin's opinion does not make it so. In fact, the parties to the Gerard matter have no standing to

oppose this Motion as none of their cases name MVC as a defendant. For the very reasons the

Court initially entered the Preliminary Injunction, to protect the Debtors estates from asbestos

---

[1] All capitalized terms not defined herein have the same meaning as defined in Grace's Motion filed on July 21, 2003.

related claims, the protection of the Preliminary Injunction should be expanded to include actions alleging asbestos related liability against MVC.

## Argument

### The Gerard Parties Have No Standing to Object to Grace's Motion

1.      In March, 2002, certain former Libby mine works and residents who are plaintiffs in asbestos related actions filed against the Debtors and MVC (the "Plaintiffs") obtained an Order appointing a Trustee for purposes of accepting service for MVC, which had been dissolved in 1964.[2] Plaintiffs did not include Carol Gerard, Alfred Pennock, Billie Schull or any of the other plaintiffs in the Gerard matter now pending before the 3rd Circuit (the "Gerard parties"). In fact, none of the Complaints filed against Grace and Maryland Casualty Company by the Gerard parties name MVC or Royal Insurance Company ("Royal"), the insurer to MCV, as defendants.

2.      As a result, the Gerard parties, who have filed the Opposition to the Grace Motion and requested discovery from Grace, do not have standing to either oppose the Grace Motion or request discovery from Grace. The Gerard parties have filed no claims against MVP and thus are not "parties in interest" pursuant to Bankruptcy Rules 7017 and 7019.

### Plaintiffs Claims Against Grace and MVP Are Inextricably Intertwined

3.      Since the time the Trustee for MVC was appointed, Grace has received numerous notices of service, complaints and requests for default judgments which Plaintiffs seek to have entered against MVC. A review of the complaints reveals that most of the Plaintiffs are former

---

[2] MVC is the successor to the Zonolite Company, the assets of which Grace purchased in 1963. MVC and the Zonolite Company are both referred to herein as "MVC".

2

Libby mine workers or residents who worked at the mine and/or lived in Libby, or both, during the time that both MVC and Grace owned the Libby mine.

4.    In none of the Complaints do Plaintiffs suggest their injuries arise only from exposure to asbestos during the years prior to Grace's ownership of the Libby mine.  Likewise, in none of the Complaints do Plaintiffs name Royal or suggest that Plaintiffs have any independent causes of action against Royal, unlike the Gerard parties who sued Maryland Casualty Company.

5.    The allegations brought against Grace and MVC are inextricably intertwined. The allegations relate to asbestos exposure that was allegedly caused by *both* Grace and MVC. It would be impossible to separate out the causes of action against each party.  As such, the claims against MVC "relate to" the Grace chapter 11 cases, establishing jurisdiction under 28 U.S.C. § 1334(b)  The outcome of the proceedings against MVC "could conceivably have [an] effect on the estate being administered in bankruptcy."  In re Federal-Mogul Global, Inc., 282 B.R. 301, 305 (D. Del 2002) quoting Pacor vs. Higgins, 743 F. 2d 984 (3rd Cir. 1984).

6.    Due to the fact that (1) both MVC and Grace owned the Libby mine during the time that essentially all Plaintiffs were allegedly exposed to asbestos that caused their injuries, and (2) Grace indemnified Royal for claims against the Royal Policies with respect to the Libby mine, there can be no doubt that the "outcome could alter the debtor's rights, liabilities, options and freedom of action (either positively or negatively) and which impacts upon the handling and administration of the bankruptcy estate."  Pacor at 994.

### Grace Has a Duty to Defend and Indemnity MVC's Insurer for Covered Claims

7.    In the Opposition filed by the Gerard Parties, they state: "Upon obtaining judgments in any existing and future Montana Vermiculite Litigation, the [Libby Victims] intend to collect from Royal under the [Royal Policies] to the extent of available coverage."

8.    Plaintiffs' intention to seek recovery from Royal for their claims is precisely the reason why Grace has filed this Motion at this time. While an action against MVC, related *solely* to MVC's conduct that would ultimately be defended and paid for by MVC would not be a concern to Grace, that scenario does not reflect reality. MVC does not exist. The Royal Policies were cancelled. Royal settled its obligations under the Royal Policies with Grace. Grace indemnified Royal for future claims that may arise under such polices. Any attempt by Plaintiffs to pursue Royal and collect from Royal under the Royal Policies will immediately and directly affect Grace. And, Plaintiffs do not allege they have any grounds to collect from Royal other than as insureds under the Royal Polices.

9.    Pursuant to a settlement agreement between Grace and Royal dated as of January 5, 1995 (the "Royal Settlement"), Royal paid the Debtors a confidential sum of money in full and final settlement of Royal's obligations under the Royal Policies. Pursuant to the Settlement Agreement, the Royal Policies were cancelled.

10.    In the Royal Settlement, the Debtors agreed to indemnify and hold harmless Royal against any asbestos-related claims made against the Royal Policies issued by Royal to Zonolite (the "Royal Indemnity"). This is not the Gerard situation. Independent causes of action are not alleged against Royal for its own negligence. Plaintiffs claims are asbestos personal injury claims against MVC which, if valid, appear to fall within the definition of claims covered

by the Royal Policies. This insurance coverage was cancelled in the Settlement Agreement and Grace indemnified Royal for claims arising under the Royal Policies.

11.     As outlined by Judge Wolin in Gerard, citing Federal Mogal, "an indemnification by the debtor of an otherwise unrelated party may bring a common claimants' suit against the indemnitee within the jurisdiction of the Bankruptcy Code." 282 B.R. at 311-12. Grace has a contractual indemnity obligation to Royal for claims arising out of the Royal Policies. Unlike Gerard, no further analysis is necessary. If Plaintiffs have valid claims under the Royal Policies, the Royal Indemnity is triggered. Thus, Plaintiff's intention "to collect from Royal under the [Royal] Policies" will result in an action against Grace. There are no independent claims asserted against Royal in which Grace may take refuge.

## Grace Should Not Be Precluded From Referring To the Royal Indemnity

12.     The Gerard Parties argue that Grace should be precluded from arguing the effects of the Royal Indemnity because Grace has not provided them with a copy of the entire Settlement Agreement or the underlying policies.

13.     Plaintiffs seek to precluded Grace from referring to the Royal Indemnity because its existence means the Court must grant Grace's Motion. Thus, the Gerard Parties have conveniently refused to consent to appropriate confidentiality restrictions so that they may obtain the Settlement Agreement. Grace has no objection to producing the Settlement Agreement or the underlying policies to the Plaintiffs and believes that it is vital to discuss the Royal Indemnity in the context of its Motion as it directly implicates Grace. However, the Settlement Agreement contains a broad Confidentiality restriction. A copy of the Royal Indemnity has been provided to the Gerard Parties with the agreement of Royal under a confidentiality restriction. Grace has

91100-001\DOCS_DE:78826.1                   5

requested that Royal consent to Grace providing the entire Settlement Agreement to the Plaintiffs. Royal has refused to consent to unrestricted access to the Royal Indemnity or the Settlement Agreement. However, Royal has offered to permit Grace to produce the Settlement Agreement to the Plaintiffs under either an "attorneys eyes only" confidentiality restriction or with the agreement that the document would be filed under seal with the Court. To date, the Gerard parties' counsel has refused to agree to such restrictions.

14.     The Settlement Agreement provides that the terms of the Agreement may be disclosed to the extent required by a court order. Thus, in the event that the Plaintiffs will not agree to the Confidentiality restrictions suggested by Royal, Grace requests entry of an Order of this Court directing the Plaintiffs to accept the production of the Settlement Agreement under the Confidentiality restriction requested by Royal or set the matter for hearing so that Royal and the Plaintiffs can make appropriate arguments to the Court with respect to the disclosure of the Royal Indemnity and Settlement Agreement.

## Conclusion

The purpose of the Preliminary Injunction is to bar the prosecution of asbestos-related actions against the Debtors' affiliates, employees, insurance carriers and other parties with an identity of interest with the Debtors in order to provide the Debtors with the breathing room necessary to effectively deal with the massive number of asbestos-related cases and to successfully reorganize. Plaintiffs actions against MVP are exactly the type of actions the Preliminary Injunction was intended to stop from proceeding.

WHEREFORE, Debtors respectfully request that their motion to expand the

Preliminary Injunction to cover actions against Montana Vermiculite Company be granted.

Dated: September 12, 2003

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Scotta McFarland (Bar No. 4184)
Paula Galbraith (Bar No. 4258)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession