# ORIGINAL

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
* * * * * * * * * * * * * * * * * * * * * *
                                          *
In re                                     *     Chapter 11
                                          *
W.R. GRACE & CO., et al.,                 *     Case No. 01-01139 (JKF)
                                          *     Jointly Administered
          Debtor.                         *
* * * * * * * * * * * * * * * * * * * * * *
W.R. GRACE & CO., et al.,                 *
                                          *     Adversary No. A-01-771
                                          *
          Plaintiffs,                     *
                                          *
v.                                        *
                                          *
MARGARET CHAKARIAN, et al.,               *
And John Does 1-1000,                     *     Hearing Date: September 22 at 12:00 p.m.
                                          *     Objection Deadline:  September 9, 2003
          Defendants.                     *
* * * * * * * * * * * * * * * * * * * * * *
```

## OPPOSITION OF CAROL GERARD, ET AL. TO DEBTORS' MOTION TO EXPAND THE PRELIMINARY INJUNCTION TO INCLUDE ACTIONS AGAINST MONTANA VERMICULITE COMPANY

Carol Gerard, Alfred Pennock, Billie Schull, *et al.* (the "Libby Victims"), by and through

their counsel, McGarvey, Heberling, Sullivan & McGarvey, P.C.; Cohn Khoury Madoff &

Whitesell LLP; and Klehr, Harrison, Harvey, Brazenburg & Ellers LLP, hereby oppose the

Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against Montana

Vermiculite Company dated July 21, 2003 [Docket No. 153] (the "Expansion Motion"). As set

forth more fully below, this Court lacks subject matter jurisdiction to expand the preliminary

injunction to the Libby Victims' independent tort claims against Montana Vermiculite Company

("Montana Vermiculite") because pending and future litigation between Libby Victims and

Montana Vermiculite ("Montana Vermiculite Litigation") is not related to the Grace bankruptcy

within the meaning of 28 U.S.C. § 1334(b).  In support of this Opposition, the Libby Victims state:

## Introduction

Grace's attempt to extend the Preliminary Injunction to the Montana Vermiculite Litigation goes far beyond the original purpose of the Preliminary Injunction, and far beyond the typical case where a debtor seeks to enjoin suits against its insurer to protect the bankruptcy estate.  Rather, in direct contradiction to the recent teachings by the District Court in this case in Gerard v. W.R. Grace & Co., Inc. (In re W.R. Grace & Co.), CA No. 02-1549 (D. Del. July 16, 2003) (Exhibit "A" hereto), Grace again seeks to shield a non-debtor party from on-going litigation, even though such litigation has no significant effect on the bankruptcy case, by relying on an allegation of an indemnity obligation which has not been and cannot be established as applicable to the cases Grace seeks to enjoin.  Here, Grace advances two grounds for enjoining the Montana Vermiculite Litigation: (1) the **potential** triggering of an indemnity obligation; and (2) the creation of a distraction to the reorganization process.  Both grounds were expressly rejected by Judge Wolin in Gerard under nearly identical circumstances, and must be rejected here.

## Relevant Facts

Libby, Montana – a town of approximately 2,600 residents – has been ravaged like no other community in America by the effects of asbestos disease.  A vermiculite mine (the "Libby Mine") ten miles north of Libby was operated by the Zonolite Company ("Zonolite"), a Montana corporation, until its assets were purchased by W.R. Grace & Co., Inc. ("Grace") in 1963.  The Libby Mine yielded ore that was used to create zonolite, an insulating material.  But the vermiculite ore also contained tremolite asbestos,[1] which is ten times more carcinogenic and

---

[1] Although Grace manufactures products that contain asbestos as a working ingredient, the asbestos in the Libby

DEL1 53259-1

fibrogenic as chrysotile asbestos, and hundreds of times more productive of mesothelioma, the type of lung cancer specific to asbestos. Hundreds of Libby residents – workers at the Libby Mine, their families, and townspeople who had the misfortune to breathe the dust-laden air – have been diagnosed with Libby tremolite asbestos disease. A person so diagnosed has approximately a 76 percent likelihood of progressing from mild to moderate to severe disease – three times the rate for chrysotile asbestos disease.

Grace asserts that pursuant to an agreement between Grace and Zonolite dated January 17, 1963 (the "Zonolite Purchase Agreement"), Grace purchased substantially all of the assets of Zonolite. Zonolite then changed its name to Montana Vermiculite Company. Grace did not purchase and does not own the stock of Montana Vermiculite, which survived as a shell corporation until dissolved on September 18, 1964.

Grace acknowledges that under the Zonolite Purchase Agreement, Grace specifically did not assume any "'liabilities against which Zonolite is insured or otherwise indemnified, to the extent of such insurance or indemnification.'" (Expansion Motion at ¶ 2.) These liabilities, if any, remained with Montana Vermiculite. (Id.) Prior to 1963, Zonolite had maintained one or more insurance policies (the "Pre-Sale Policies") through Royal Indemnity Company ("Royal"). Grace claims that as part of the purchase of Zonolite's assets, Grace "purchased rights to the Pre-Sale Policies." (Id.)

According to Grace, on January 5, 1995, Grace and Royal entered into a Settlement Agreement. (Expansion Motion at ¶ 3.) Grace alleges that Royal paid Grace a confidential sum of money in full and final settlement of Royal's obligations under the Pre-Sale Policies. (Id.) Thus, whatever "rights" in the Pre-Sale Policies were purchased by Grace in 1963 are gone.[2]

---

Mine was essentially a waste product.

[2] The Pre-Sale Policies themselves continue as an obligation of Royal to pay covered claims against Montana

3

Grace further alleges that pursuant to the Settlement Agreement, Grace agreed to indemnify and hold harmless Royal against any asbestos-related claims made against the Pre-Sale Policies. (Id.)

On or about July 20, 1999, the Libby Victims commenced actions in the Montana District Court for Lincoln County (the "State Court") against Grace, Montana Vermiculite, the Estate of Earl D. Lovick and Does 1 through 5.[3]  In early 2002, the Libby Victims filed a motion in State Court seeking to appoint a successor trustee for Montana Vermiculite for the purpose of receiving process on behalf of Montana Vermiculite.[4]  By order dated April 18, 2002, Lawrence H. Sverdrup was so appointed.  In re Montana Vermiculite Co., Cause No. 3987 (19th Judicial Dist. Crt., Lincoln County, MT April 18, 2002).  On or about February 12, 2003, the Libby Victims lodged affidavits and requests for entry of default against Montana Vermiculite with the State Court and the Federal Court.  On or about March 17, 2003, the State Court and the Federal Court entered defaults against Montana Vermiculite.  Upon obtaining judgments in any existing and future Montana Vermiculite Litigation, the Libby Victims intend to collect from Royal under the Pre-Sale Policies to the extent of available coverage.[5]  In the meantime, Grace on April 2, 2001, filed its Chapter 11 petition in this Court.  Grace sought and obtained a preliminary injunction (the "Preliminary Injunction") of asbestos-related claims against itself and a defined set of affiliates and co-insured non-debtor affiliates.

---

Vermiculite.

[3] At some time after the filing of these cases, Earl D. Lovick died and his estate settled its liability with the Libby Victims.  Subsequently, Grace sought to remove the litigation to United States District Court for the District of Montana (the "Federal Court").

[4] Pursuant to Montana Code Annotated, Sections 35-1-935 and 35-1-937, a dissolved Montana corporation remains subject to suit for "any claim or right, whether or not the claim or right existed or accrued prior to dissolution." MCA § 35-1-937.

[5] The Libby Victims interpret the Pre-Sale Policies to provide full coverage for their claims.

4

The effect of the Preliminary Injunction, dated May 3, 2001, was to stay the Libby Victims'

claims against Grace (which, of course, were already stayed by the automatic stay), but not

claims made against Montana Vermiculite. The Libby Victims' claims against Montana

Vermiculite are independent tort causes of action. These claims arise from Montana

Vermiculite's conduct, in operating the Libby Mine before it was purchased by Grace in 1963.

Grace has offered no suggestion that it had anything to do with operating the Libby Mine before

the 1963 purchase.

**Argument**

It is the law of the Third Circuit, now firmly established in this proceeding, that the

bankruptcy court does not have jurisdiction to enjoin a suit against non-debtor third parties,

based on an alleged indemnification right by such non-debtor against the debtor, where the

indemnification is not automatic. Gerard _et al._ v. W.R. Grace & Co., Inc., _et al._ (In re W.R.

Grace & Co., _et al._), CA No. 02-1549, slip op. at 11-12, (D. Del. July 16, 2003);[6] see also In re

Federal-Mogul Global, Inc., 282 B.R. 301 (D. Del.), mandamus denied, 300 F.3d 368 (3d Cir.

2002), cert. denied, 71 U.S.L.W. 3339 (2003). Further, even if there were a clear obligation of

the debtor to indemnify the non-debtor, "without more a bare indemnification agreement may not

suffice to find related-to jurisdiction." Gerard, slip op. at 11-12; see also Federal-Mogul, 282

B.R. at 310-311. The "more" that would be required to confer jurisdiction cannot consist of the

alleged distraction to Grace resulting from litigation by the Libby Victims. Gerard, slip op. at

15-16. Here, Royal has no right of indemnification against Grace for liability of Royal arising

from the Montana Vermiculite Litigation. And, even if there were an applicable indemnification

agreement, it could not, standing alone or in combination with the minimal burden that Montana

---

[6] A copy is attached for this Court's convenience.

5

Vermiculite Litigation might represent for the Grace estate, merit the expansion of the

Preliminary Injunction to include the Montana Vermiculite Litigation.

I.      **Grace Has No Obligation to Indemnify Royal for the
        Liability of Montana Vermiculite**

Grace's primary basis for expanding the Preliminary Injunction is that "Royal **may** argue"

that a judgment against Montana Vermiculite would trigger an obligation of Grace to indemnify

Royal.  (Expansion Motion at ¶ 13 (emphasis added).)  Because of the "**possible** indemnity

obligations" (Expansion Motion at ¶ 15 (emphasis added)), Grace equates actions against

Montana Vermiculite with direct actions against Grace.  Grace's reluctance to state affirmatively

that an indemnification right exists is understandable.  The indemnification provisions of the

Settlement Agreement, which Grace has not shared with this Court, do not by their terms apply

to claims such as those raised by the Libby Victims.[7]  In that regard, the indemnification

provisions are similar to those that were specifically rejected by Judge Wolin as creating a basis

for jurisdiction.  Gerard, slip op. at 12-15.

At most, the Settlement Agreement is ambiguous and its applicability not easily resolved.

In Federal-Mogul, the court stated that "the question whether this purported indemnity agreement

would be determined to bind the [debtors] is open and one not easily resolved.  The court is

---

[7] This statement, which is based on the excerpts from the Settlement Agreement supplied by Grace to the undersigned counsel, should not be misconstrued as an admission by the Libby Victims concerning the existence, validity, terms, continued effect or any other aspect of the Settlement Agreement—all matters as to which Grace has the burden of proof.  Grace supplied the excerpts in response to a document request, on condition that they be kept confidential.  This was not an adequate response to the document request, which required production of the complete document without any restriction on use (unless, of course, Grace obtained a protective order concerning confidentiality, but there has been no suggestion that the Settlement Agreement contains any "trade secret or other confidential research, development, or commercial information" or any "scandalous or defamatory matter"; see Fed. R. Bankr. P. 9018).  The Libby Victims do not waive any rights in respect of Grace's failure to produce the Settlement Agreement on a timely and unconditional basis.  In particular, at the hearing on the Expansion Motion, Grace should be barred from introducing the Settlement Agreement or any portion thereof unless counsel to the Libby Victims has had an adequate opportunity to review the entire agreement, and to obtain further discovery related to the agreement, if desired.

6

unwilling again to rest subject matter jurisdiction on this tenuous support." Federal-Mogul, 282

B.R. at 311 (quoting In re Asbestos Litig., 271 B.R. 118, 124 (S.D. W. Va. 2001)).   Judge Wolin

concluded: "To the extent that the validity of an indemnity agreement is in doubt, the directness

between the third-party action and a judicial ruling that will affect the estate is attenuated."

Federal-Mogul, 282 B.R. at 311-12; see also Steel Workers Pension Trust v. Citigroup, Inc., et

al., 295 B.R. 747 (E.D. Pa. 2003) ("Where the right to indemnification is contingent on a factual

finding in the action not involving the bankruptcy debtor and requires the commencement of

another lawsuit to establish that right, there is no effect on the bankruptcy estate."). By Grace's

own admission, the applicability of the indemnification provisions is unresolved. (Expansion

Motion at ¶¶ 14 -16.) Accordingly, the court has no jurisdiction to grant the Expansion Motion.

**II.     Even if Grace Had an Obligation to Indemnify Royal, the Montana
         Vermiculite Litigation Would Not Be Related to this Proceeding**

        Even if the existence of an indemnity obligation were to be established against Grace,

recent jurisprudence establishes (a) that such an obligation, without more, does not confer

related-to jurisdiction, and (b) that the "more" alleged by Grace in the Expansion Motion is

insufficient. See Gerard, slip op. at 11-12; Federal-Mogul, 282 B.R. at 310-311.

        **A.     Grace Cannot be Adversely Affected by the Montana Vermiculite Litigation**

        The jurisdiction of bankruptcy courts is grounded in and limited by statute. 28 U.S.C.

§1334(b); 28 U.S.C. § 157(a). Section 1334(b) provides that "the district courts shall have

original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in

or related to cases under title 11." In turn, Section 157(a) permits the district court to refer "any

or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the

bankruptcy judges for the district." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). In the

present case, since the claims against Montana Vermiculite arose neither under the Bankruptcy

7

Code nor in Grace's Chapter 11 case, the sole issue is whether the Libby Victims' claims against
Montana Vermiculite are "related to" the Chapter 11 case.

In the Third Circuit and elsewhere, courts have adopted the test first articulated in <u>Pacor,
Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984), for determining whether related-to jurisdiction
exists:

> [a] matter is related to the bankruptcy case for §1334 purposes if the outcome of
> that proceeding could conceivably have any effect on the estate being
> administered in bankruptcy . . . . Moreover, an action is related to bankruptcy if
> the outcome could alter the debtor's rights, liabilities, options or freedom of action
> (either positively or negatively) and in any way impacts upon the handling and
> administration of the bankruptcy estate.

Applying this standard, the Third Circuit held that related-to jurisdiction did not extend to
personal injury litigation between non-debtor parties, neither of them related to the Chapter 11
debtor, stating: "At best, [the personal injury lawsuit] is a mere precursor to the potential third
party claim for indemnification by [the defendant] against [the debtor]." <u>Id</u>. at 995. The Chapter
11 debtor could not be bound by the litigation, so its estate could not be affected in any way. <u>Id</u>.
<u>Pacor</u> has been expressly approved by the United States Supreme Court. <u>Celotex</u>, 514 U.S. at
308. And it has recently been applied and refined in <u>Gerard v. W.R. Grace & Co., Inc., (In re
W.R. Grace & Co., et al.</u>), CA No. 02-1549 (D. Del. July 16, 2003) and <u>In re Federal-Mogul
Global, Inc.</u>, 282 B.R. 301 (D. Del.), <u>mandamus denied</u>, 300 F.3d 368 (3d Cir. 2002), <u>cert.
denied</u>, 71 U.S.L.W. 3339 (2003).

In determining in <u>Gerard</u> and <u>Federal-Mogul</u> that the courts lacked jurisdiction over the
non-debtor litigation, Judge Wolin rejected the notion that an indemnity obligation of the debtor
may confer jurisdiction over litigation by third parties against the indemnitee because issues
determined in such litigation might bind the debtor. He recognized the no such determination
can bind the debtor as a putative indemnitor where the debtor is not a party to the litigation.

8

Gerard, slip op. at 18; Federal-Mogul, 282 B.R. at 306. Judge Wolin reasoned that an indemnitor can be bound by an underlying judgment only if given an opportunity to be heard and defend. Since the automatic stay prevents a debtor from being required to defend, the debtor cannot be bound:

> Implicit in Pacor's rationale is that a debtor may not be prejudiced by its failure to defend a lawsuit against a third-party common-law indemnitee without *de facto* depriving the debtor of the benefit of the automatic stay of litigation against it.

Federal-Mogul, 282 B.R. at 306 n.3.

This case fits squarely within the bounds of Gerard and Federal-Mogul. Just as Grace in Gerard and the debtors in Federal-Mogul would not be bound by the outcomes of the underlying state court actions in those cases, the outcome of the Montana Vermiculite Litigation will in no way bind Grace. See Gerard, slip op. at 18; Federal-Mogul, 282 B.R. at 306. In Federal-Mogul, the Court stated:

> The Court sees no justification to take the situation of these movants [the non-debtor defendants in litigation of Friction Product Claims] outside of the rule of Pacor. A judgment against them will not bind the debtors. No asset of the estate is threatened nor is any re-ordering of creditors in the offing. It is true that recovery by asbestos claimants against the movants may give rise to claims, indeed very substantial claims, against the debtors in the future. It is at that time, when the movants appear as creditors of the estate and the facts underlying the liability are adjudicated in the context of the bankruptcy, that the Friction Product Claims will affect the estate.

Id. at 311. The Court of Appeals agreed with this reasoning since "any indemnification claims that the [non-debtor defendants] might have against the Debtors have not yet accrued and would require another lawsuit before they could have an impact on Federal-Mogul's bankruptcy proceeding." Id. at 382.

The Montana Vermiculite Litigation will have no effect on the Grace bankruptcy estate. Grace is not a party to the suits. The Libby Victims seek no relief from Grace in the Montana Vermiculite Litigation. If they obtain judgment against Montana Vermiculite and collect from

9

Royal under the Pre-Sale Policies, then Royal may only recover under the alleged indemnity from Grace by successfully proving a claim in Grace's Chapter 11 case. In that proceeding, Grace will not be bound by any determination or order in the Montana Vermiculite Litigation. For these reasons, the Montana Vermiculite Litigation will have no effect on the administration of Grace's bankruptcy estate. Accordingly, this Court lacks jurisdiction to grant the Expansion Motion.

**B.     The Montana Vermiculite Litigation Creates No Meaningful Distraction from the Reorganization Process**

Perhaps recognizing that the indemnity provisions of the Settlement Agreement may not, standing alone, confer jurisdiction, Grace asserts that jurisdiction exists because of "distraction that prevents the Debtors from focusing on their reorganization plans." (Expansion Motion at ¶ 14.) But Judge Wolin in <u>Gerard</u>, under almost identical circumstances, has already concluded that "[t]he burden on Grace is insignificant while the burden of waiting upon the plaintiffs is substantial." <u>Gerard</u>, slip op. at 15.

In determining that there was no substantial burden upon Grace, the court's reasoning in <u>Gerard</u> is equally applicable here. <u>See</u> <u>Gerard</u>, slip op. at 11-12.

- First, any discovery from Grace will consist solely of requests for documents. All Grace documents relevant to the Montana Vermiculite Litigation are housed at a repository in Boston, Massachusetts, set up to handle with ease all document requests against Grace. <u>Id.</u> at 15. The documents are all on a database, and have in the past been made readily available for litigation parties including the Libby Victims. <u>Id.</u>

- Second, Grace would have little involvement, if any, in the Montana Vermiculite Litigation. The wrongful acts of Montana Vermiculite that form the basis for the Montana Vermiculite Litigation occurred prior to January 17, 1963, the date Grace purchased the Libby Mine.

- Third, Grace has not alleged, and certainly did not offer any evidence in the Expansion Motion, that any of Grace's current managers were involved in the events that have led to the Montana Vermiculite Litigation. The Libby Victims believe that none were and, accordingly, do not intend to depose any current

10

Grace employee except for, perhaps, a keeper of the record deposition to obtain authentication for documents.

Clearly, the litigation efforts of the Libby Victims will have no impact on the Grace bankruptcy.

Whenever a litigant proposes to stay litigation, the proponent bears the burden of establishing its need. Clinton v. Jones, 520 U.S. 681, 708 (1997). This rule is no less applicable when seeking an injunction to protect the reorganization process. See, e.g., Robbins v. Chase Manhattan Bank, N.A., 1994 WL 149597, *2 (W.D. Va. 1994)(Exhibit "B" hereto) (party seeking Section 105 injunction must clearly establish entitlement to the relief sought). Mere speculation about harm to the reorganization process does not constitute the type of proof required to entitle debtors to an injunction against third party actions. Phar-Mor, Inc. Sec. Litig. v. Gen. Elec. Capital Corp. (In re Phar-Mor, Inc. Sec. Litig.), 166 B.R. 57, 62-63 (W.D. Pa. 1994) (Ziegler, J.); Dore & Assocs. Contracting, Inc. v. Am. Druggists' Ins. Co., 54 B.R. 353, 358 (Bankr. W.D. Wis. 1985) ("when it is alleged that irreparable harm to the debtor's reorganization will result it is necessary to present strict proof of the facts and circumstances proving the likelihood of irreparable harm. Speculative and conclusory allegations are clearly insufficient."). Although it was Grace's burden to do so, Grace proffered no specifics about potential burden on its officers, because there will be none.

If the Preliminary Injunction is expanded to include the Montana Vermiculite Litigation, many of the Libby Victims will die before it is lifted. See Clinton, 520 U.S. at 708 (recognizing that the potential death of a party is a factor in determining prejudice caused by a stay of litigation). It is simply not fair for them to have to wait, in pain and without medical coverage, to assert their independent claims against Montana Vermiculite. Since the effect of the Montana Vermiculite Litigation on Grace's reorganization is insignificant, this Court lacks jurisdiction to grant the Expansion Motion.

11

## Conclusion

Based on the foregoing, Grace's motion seeking to expand the Preliminary Injunction to include actions against Montana Vermiculite should be denied.

Respectfully submitted this 9th day of September, 2003.

CAROL GERARD, ALFRED PENNOCK, BILLIE SCHULL, *et al.*

By their attorneys,

Steven K. Kortanek (#3106)
KLEHR, HARRISON, HARVEY, BRANZBURG
   & ELLERS, LLP
929 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189 Telephone
(302) 426-9193 Facsimile
skortane@klehr.com

and

Daniel C. Cohn
David B. Madoff
COHN KHOURY MADOFF & WHITESELL LLP
101 Arch Street
Boston, MA 02110
(617) 951-2505

and

Jon L. Heberling
MCGARVEY, HEBERLING, SULLIVAN &
   MCGARVEY, P.C.
745 South Main
Kalispell, MT 59904
(406) 752-5566

12