## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ( |
| | ( |
| W.R. GRACE & CO., *et al.* | ( Bankruptcy No. 01-1139-JKF |
| | ( Jointly Administered |
| | ( |
| Debtor(s) | ( Chapter 11 |
| | ( |
| W.R. GRACE & CO., *et al.* | ( |
| | ( |
| Plaintiff(s) | ( |
| | ( |
| v. | ( Adversary No. 01-771 |
| | ( |
| MARGARET CHAKARIAN, | ( **Related to Dkt. No. 153, Debtors' Motion to** |
| *et al.*, and John Does 1-1000 | ( **Expand the Preliminary Injunction to Include** |
| | ( **Actions Against Montana Vermiculite Company,** |
| Defendant(s) | ( **12/15/03 Agenda Item 9** |
| | ( |

Appearances:

Janet S. Baer, Esquire, for Debtor
Daniel C. Cohn, Esquire, for Carol Gerard, *et al.*
Mark G. Ledwin, Esquire, for Royal Indemnity Company

### MEMORANDUM OPINION[1]

The matter before the court is Debtors' Motion to Expand Preliminary Injunction to

Include Actions Against Montana Vermiculite Company. An order was entered in this adversary

on April 25, 2001, granting a preliminary injunction pending hearing. On May 3, 2001, a hearing

was held and the preliminary injunction was entered. Thereafter, upon certification of counsel

with respect to a motion to modify the preliminary injunction and after hearing, an order was

---

[1]This Memorandum Opinion constitutes our findings of fact and conclusions of law.

1

298
10-12-04

entered modifying the preliminary injunction on January 22, 2002. Adv. Dkt. No. 87. In the motion to expand the preliminary injunction to include actions against Montana Vermiculite Company now before the court, Debtors aver that the purpose of the injunction that was entered previously is to bar prosecution of asbestos-related actions against Debtors' affiliates, employees, insurance carriers, and others with an identity of interest with Debtors. The orders that have been entered barred the continuation of the Montana Actions against the Debtors and certain individual Montana defendants but not against Montana Vermiculite because it is not a "Non-Debtor Affiliate" as defined in the preliminary injunction.[2] Our rendition of the facts is taken largely from Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against Montana Vermiculite Company.

Pursuant to what Debtors refer to as an "Agreement and Plan of Reorganization"[3] between W.R. Grace & Co. ("GraceCo") and Zonolite Company dated January 17, 1963, ("Zonolite Purchase Agreement"), GraceCo purchased substantially all of the assets of Zonolite, a Montana corporation. Thereafter, a shell corporation remained which changed its name to Montana Vermiculite Company ("MVC"). MVC was dissolved under Montana law on or about September 18, 1964. Montana Code Annotated §35-1-937 provides that a dissolved corporation remains subject to suit for any claim or right, whether or not the claim or right existed before

_____

[2]The Order Granting Modified Preliminary Injunction signed on January 22, 2002, defines "Non-Debtor Affiliates" as "affiliates of the Debtors that are not filing entities for purposes of these chapter 11 cases, as well as present and former officers, directors and employees of Debtors." Adv. No. 01-771, Dkt. No. 87. The Non-Debtor Affiliates were listed in Exhibit A to the Order.

[3]*See* Debtors' Motion to Expand Preliminary Injunction to Include Actions Against Montana Vermiculite Company at 2, ¶ 1, Dkt. No. 153.

dissolution.[4]   Under the Zonolite Purchase Agreement GraceCo specifically did not assume

[4]Section 35-1-937 provides:

(1) Subject to 35-1-936, the dissolution of a corporation, including by the expiration of its term, does not take away or impair any remedy available to or against the corporation or its officers, directors, or shareholders for any claim or right, whether or not the claim or right existed or accrued prior to dissolution. A proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors, and officers have power to take corporate or other action as appropriate to protect the remedy, right, or claim.

(2) A claim may be enforced under 35-1-936 or this section:

(a) against the dissolved corporation, to the extent of the undistributed assets; or

(b) if the assets have been distributed in liquidation, against a shareholder of the dissolved corporation to the extent of the shareholder's pro rata share of the claim or the corporate assets distributed to the shareholder in liquidation, whichever is less, but a shareholder's total liability for all claims under this section may not exceed the total amount of assets distributed to the shareholder.

Section 35-1-936, entitled "Known claims against dissolved corporation", provides:

(1) A dissolved corporation may dispose of the known claims against it by following the procedure described in this section.

(2) The dissolved corporation shall notify its known claimants in writing of the dissolution at any time after the effective date of the dissolution.

Subsection (2) proceeds to describe what information the notice must contain. Subsection (3) provides that

A claim against the dissolved corporation is barred:

(a) if a claimant who was given written notice under subsection (1) does not deliver the claim to the dissolved corporation by the deadline; or

(continued...)

3

liabilities against which Zonolite was insured or indemnified, to the extent of such insurance or indemnification. However, GraceCo purchased rights to certain insurance policies Zonolite had maintained through Royal Indemnity Company (the "Pre-Sale Policies"). This purchase was made pursuant to a settlement Agreement between W.R. Grace & Co. – Conn. ("GraceConn")[5] and Royal dated January 5, 1995. The settlement resolved Royal's obligations under the Pre-Sale Policies and provided that Debtors would indemnify and hold Royal harmless against any asbestos-related claims made against those policies.

In 1999 individuals denominated herein as the Montana Plaintiffs filed complaints in Montana state court against various Debtors, MVC, and former employees of Debtors. The

---

[4](...continued)

> (b)  if a claimant whose claim was rejected by the
> dissolved corporation does not commence a proceeding to
> enforce the claim within 90 days from the effective date of the
> rejection notice.

MCA §35-1-936. Subsection (4) of §35-1-936 states that a "'claim' does not include a contingent liability or a claim based on an event occurring after the effective date of the dissolution." Section 35-1-935 provides, *inter alia*, that dissolution does not transfer corporate property, prevent transfer of its shares or securities, prevent commencement of a proceeding by or against the corporation in its corporate name, or abate or suspend a proceeding by or against the corporation that is pending on the date of dissolution. It appears, therefore, that the claims sought to be pursued against MVC at this time are of the kind that may still be viable under Montana law.

Under §35-1-937 Debtors would have no liability. However, because Debtors are obligated to indemnify Royal Insurance Company, see text, pursuant to a purchase of rights to insurance policies held by Zonolite before the GraceCo purchase, Debtors may face liability if damages are awarded to the Montana Plaintiffs against MVC.

[5]Debtors assert that through a 1988 restructuring GraceCo was renamed GraceConn and continued to exist as a subsidiary of Grace-NY. Thereafter, a new holding company called GraceDel was formed. GraceConn and GraceDel are two of the Debtors herein. Motion to Expand Preliminary Injunction at 3, n.3.

4

complaints alleged personal injury related to asbestos exposure. The action was removed to the District Court for the District of Montana.[6] The bankruptcy was filed on April 2, 2001.

The Montana Plaintiffs named MVC as a defendant to trigger insurance coverage that might be available from Royal for pre-1963 claims. In March of 2003 the Montana Plaintiffs obtained default judgments against MVC in state and federal court.

Regarding the present motion, Debtors assert that they failed to seek to extend the preliminary injunction to MVC earlier because they did not believe that it would be necessary, inasmuch as MVC was dissolved over 40 years ago. However, the actions against MVC now have "the potential to impact the Debtors' estates". Motion to Expand Preliminary Injunction at 6, ¶ 14. Debtors identify two ways in which this may occur: (1) the Montana Plaintiffs may seek recovery against Royal under the insurance policies and Royal may then assert the indemnity; and (2) Debtors are the sole remaining real parties in interest and the litigation therefore creates a distraction that "prevents the Debtors from focusing on their reorganization plans." In Debtors' view, the actions are, in effect, actions against Debtors for these reasons.

We first address the question of whether individuals who denominate themselves "the Libby Victims" and whom Debtors refer to as "the Gerard Parties" have standing to oppose the Debtors' motion to expand the preliminary injunction. *See* Debtors' Reply in Support of Motion, Dkt. No. 160, at 2; Further Opposition of Carol [Gerard], *et al.*, Dkt. No. 162 at 3-4. Certain of the "Gerard parties" are individuals who sued Maryland Casualty Company. Debtors sought and obtained extension of the preliminary injunction with respect to that suit. The District Court

---

[6] The Motion to Expand Preliminary Injunction does not expressly state that the removal occurred prepetition but in context it appears that the bankruptcy was filed after the removal. *See* Dkt. No. 153 at 3-4, ¶¶ 4-6.

reversed, finding that the suit against Maryland Casualty Company concerned its independent tort

liability and was not related to the bankruptcy case. That decision is on appeal to the Court of

Appeals for the Third Circuit. Debtors assert that the Gerard Parties have no standing to oppose

their motion to expand the preliminary injunction with respect to MVC because MVC was not

named in the Gerard Parties' action against Maryland Casualty. Debtors' Reply, Dkt. No. 160, at

1. According to Debtors, those who sued MVC did not include any of the parties in the

Maryland Casualty matter. *Id.* at 2, ¶ 1. However, the Libby Victims, a/k/a the Gerard Parties,

contend that separate actions against MVC have been filed as follows:

> Identifying the Libby Victims as "Carol Gerard, Alfred Pennock,
> Billie Schull *et al.*" is a convenient way of denominating the
> hundreds of workers, family members and residents of Libby,
> Montana[,] represented by the undersigned counsel. Since the
> origin of "Carol Gerard, Alfred Pennock, Billie Schull *et al.*" is
> that these were the first-listed plaintiffs in complaints against
> Maryland Casualty, even the most narrow interpretation of "*et al.*"
> would include the other plaintiffs in those complaints. The Billie
> Schull complaint against Maryland Casualty Company also lists
> Mildred Johnson, Ivan Troyer, Norita Skramstad, among others ...,
> who also have brought suit against MVC . . . .

Further Opposition of Carol [Gerard], *et al.*, to Debtors Motion, Dkt. No. 162 at 3-4. Copies of

the first page of complaints filed by Mildred Johnson, Ivan Troyer, and Norita Skramstad against

MVC in state court were submitted to establish their standing. Further Opposition of Carol

Gerard, *et al.*, Dkt. No. 162, at Exhibit C. To the extent those opposing Debtors' motion include

persons or entities who have in fact filed suit against MVC, they have standing to appear and be

heard with respect to Debtors' motion. We engage in our analysis of the motion and responses

on the assumption that standing exists as to Johnson, Troyer and Skramstad. However, standing

must be shown as to each party. Therefore, counsel will be directed to file, within ten days of the

6

date of the order entered with respect to this Memorandum Opinion, an affidavit stating which of the Montana Plaintiffs he represents who (1) sued MVC and (2) authorized the filing of the opposition to the Debtors' motion. Otherwise, there is no standing to oppose Debtors' motion. The suits against MVC are not class actions or actions brought by representatives. They are actions brought by individuals.

The Montana Plantiffs argue that this court lacks subject matter jurisdiction because their claims against MVC are based on MVC's independent liability which is not related to this bankruptcy. The Montana Plaintiffs rely on the opinion of the District Court dated July 16, 2003, in which the District Court reversed the bankruptcy court's order extending the preliminary injunction to Maryland Casualty Company because it concluded that the allegations against Maryland Casualty were solely regarding its independent tort liability. Adv. 01-771, Dkt. No. 154. Maryland Casualty was Debtors' primary general liability insurer through June 30, 1973, and also provided workman's compensation policies covering Debtors' vermiculite facility in Libby, Montana.

The Montana Plaintiffs argue that the preliminary injunction cannot issue with respect to MVC on the basis of the District Court's July 16, 2003, opinion, but they identify no bases upon which MVC would be independently liable. The Montana Plaintiffs acknowledge that they will look to the insurance policies provided by Royal as the source of payment on any judgment. Inasmuch as Debtors assumed the obligation to indemnify Royal for any amounts Royal may have to pay with respect to MVC, Debtors will be affected by the outcome of the lawsuit. The Montana Plaintiffs assert that in the Maryland Casualty decision the District Court "expressly rejected" potential triggering of indemnity obligations and distraction to the reorganization

7

process as bases for an injunction. However, the referenced opinion does not so provide. The District Court noted only that "[t]he indemnification provision in the [settlement] Agreement [between Debtors and Maryland Casualty regarding insurance polices] clearly relates solely to claims against Maryland Casualty based on the liability of Grace, or claims made under the policies." Memorandum Opinion and Order of District Court signed July 16, 2003, at 12, Dkt. No. 154. The District Court further noted that it was "clear that [the asbestos claimants] are seeking leave to pursue their state remedies against Maryland Casualty solely with respect to Maryland Casualty's independent tort liability." *Id.* at 9.

We find that the Maryland Casualty decision is inapplicable to the current matter. In the Maryland Casualty situation, the District Court found that Maryland Casualty undertook a duty to the Debtors' workers by designing an industrial hygiene program to control and prevent asbestos dust. The District Court found that the claimants "disavow[ed] any intention to press claims based upon Grace's Maryland Casualty's [sic] policies or for the insurer's vicarious liability for Grace's torts." July 16, 2003, Memorandum Opinion at 8, 9. In addition, the asbestos claimants in the Maryland Casualty action "specifically eschew[ed] any collateral estoppel impact in any later action." *Id.* at 9. The circumstances at bench have none of the characteristics present in the Maryland Casualty matter. In the matter currently before us, the Montana Plaintiffs admit that they will look to the insurance policies to fund any damages they may be awarded against MVC. Inasmuch as Debtors are obligated to indemnify Royal, their estates will be affected.

The Bankruptcy Court has jurisdiction over causes of action arising under or in a case under title 11 as well as actions related to such a case. 28 U.S.C. §1334(b). We find that there is "related to" jurisdiction with respect to the action against MVC. *Pacor, Inc. v. Higgins,* 743 F.2d

984, 994 (3d Cir. 1984), stated the test of "related to" jurisdiction to be whether the outcome of the proceeding "could conceivably have any effect on the estate". Further, a proceeding is related to a bankruptcy case "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and in any way impacts upon the handling and administration of the bankruptcy estate." Memorandum Opinion of July 16, 2003, *supra*, at 10, quoting *Pacor, supra*, 743 F.2d at 994.

The Montana Plaintiffs assert that Royal has no right of indemnification against Debtors for any liability of Royal arising from the Montana Litigation and, even if it did, that would not be enough to merit expansion of the injunction. The Montana Plaintiffs argue that the settlement Agreement between Royal and Debtors which allegedly gives rise to the potential indemnity obligation is ambiguous. They assert that to the extent the validity of the indemnity Agreement is in doubt or contingent on a factual finding in an action not involving the Debtors and requires commencement of another lawsuit to establish the right, there is no effect on the bankruptcy estate. Therefore, the Montana Plaintiffs conclude that this Court has no jurisdiction to grant the motion. We reject these arguments as having no relevance to the instant matters. The validity or ambiguity of the settlement between Royal and Debtors is not at issue. The only issue is whether there is "related to" jurisdiction with respect to the Montana Plaintiffs' action against MVC and we find that there is.

In *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), the Court of Appeals for the Third Circuit enunciated the test for "related to" jurisdiction:

> whether the outcome of that proceeding could conceivably have
> any effect on the estate being administered in bankruptcy.... Thus,
> the proceeding need not necessarily be against the debtor or against

9

> the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.
>
> On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b)....

743 F.2d at 994-95 (citations omitted; emphasis omitted).[7] The Court of Appeals held that the action in *Pacor* was "[a]t best, ... a mere precursor to the potential third party claim for indemnification...." 743 F.2d at 995. The Court of Appeals concluded that the outcome of the suit between the nonparties would not affect the bankruptcy case inasmuch as any judgment rendered therein "could not itself result in even a contingent claim" against the debtor because a separate action would be required for indemnification to be applicable. *Id.*

The facts in *Pacor* differ from those of the matter before us. Pacor appealed from a district court order remanding a products liability action brought by the Higginses against Pacor. The suit initially was filed in a Pennsylvania Court of Common Pleas seeking damages caused by Higgins' work-related exposure to asbestos supplied by Pacor. In response, Pacor filed a third party complaint impleading Johns-Manville Corporation, which it alleged was the manufacturer of the asbestos. Thereafter Johns-Manville filed its chapter 11 in New York. One month later the Court of Common Pleas severed Pacor's action against Johns-Manville from the Higgins-Pacor matter. Pacor sought to remove the matter to the Bankruptcy Court for the Eastern District of Pennsylvania and asked the bankruptcy court to transfer the matter to the District Court for the

---

[7]*In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1181, n.4 (3d Cir. 1996)(rehearing denied)("28 U.S.C. §1471 is the precursor of 28 U.S.C. §1334. The same analysis applies"), citing *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 264 n. 4 (3d Cir. 1991).

10

Southern District of New York for administration with Manville's bankruptcy. The bankruptcy court in Pennsylvania determined that because the removal petition was filed out of time, the case had to be remanded to the Court of Common Pleas. Pacor appealed. The district court held that Pacor was not time-barred. It also ruled that Higgins' suit against Pacor was not related to the Manville bankruptcy but that the Pacor-Manville third party claim was related to the bankruptcy. The district court remanded that portion of the action to the bankruptcy court. Pacor appealed.

The Court of Appeals for the Third Circuit first examined its jurisdiction to hear the appeal. Upon concluding that it had jurisdiction, it considered whether the Higgins-Pacor action was sufficiently related to the Manville bankruptcy case to confer jurisdiction in the federal court and determined that it was not. If Higgins was successful in his suit against Pacor there would be no automatic creation of liability against Manville. Pacor was not a guarantor of Manville and Manville had no indemnification obligation to Pacor. Any liability that might be imposed on Manville would have to be determined in a third party action where it would have to be established that Manville was the manufacturer of the asbestos that allegedly caused the Higginses' harm.

In this case, if there is a judgment against MVC which resulted in damages for asbestos-related injuries, the Montana Plaintiffs would look to Royal with respect to the insurance policies and Debtors' indemnity obligations under their settlement with Royal would be triggered. The indemnity between Debtors and Royal is contractual; in *Pacor* a common law indemnity claim existed and was held to be an insufficient basis for "related to" jurisdiction. We find this case to be similar to *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), *cert. denied* 479

11

U.S. 876 (1986). In *A.H. Robins v. Piccinin*, the Court of Appeals for the Fourth Circuit found

that claims against co-defendants were related to the bankruptcy and an injunction was proper

because the indemnification rights were absolute. Thus, a judgment against the co-defendant

indemnitee would effectively bind the debtor. The court in *A.H. Robins v. Piccinin* opined that,

for purposes of 11 U.S.C. §362(a)(1), in order for a stay to issue against nondebtors, there must

be "unusual circumstances" which arise when

> there is such identity between the debtor and the third-party
> defendant that the debtor may be said to be the real party defendant
> and that a judgment against the third-party defendant will in effect
> be a judgment or finding against the debtor. An illustration of such
> a situation would be a suit against a third-party who is entitled to
> absolute indemnity by the debtor on account of any judgment that
> might result against them in the case. To refuse the application of
> the statutory stay in that case would defeat the very purpose and
> intent of the statute.

788 F.2d at 999. Although not specified, the prior injunctions issued in this adversary

proceeding were issued pursuant to 11 U.S.C. §105(a). However, the principles enunciated in

*A.H. Robins v. Piccinin* are equally applicable.

In *In re Federal-Mogul Global, Inc.*, 282 B.R. 301 (Bankr.D.Del.), *mandamus denied*

300 F.3d 368 (3d Cir. 2002), *cert. denied sub nom. DaimlerChrysler Corp. v. Official Committee

of Asbestos Claimants*, 537 U.S. 1148 (2003), a motion to transfer to the bankruptcy court

asbestos-related personal injury litigation was denied by the District Court on the basis that there

was no "related to" jurisdiction. The court in *Federal-Mogul* recognized that "related to"

jurisdiction "covers 'more than simple proceedings involving the property of the debtor or the

estate' .... The broader principle is that in each case the potential impact on the debtor's estate

would have been direct with no intervening adjudication or joinder of issue necessary for

12

judgment against the nondebtor to affect assets, reprioritize creditors and thwart the bankruptcy court's administration of the estate." 282 B.R. at 307, quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).[8] A liability determination against MVC in the matter before us would unquestionably affect Debtors inasmuch as under the Grace-Royal settlement Debtors are obligated to indemnify Royal with respect to such claims.

As noted earlier, Debtors acquired the assets of the Zonolite Company in 1963. The Company changed its name to Montana Vermiculite Company and dissolved in 1964. The Montana Plaintiffs' actions against MVC pertain to the time periods before and after Debtors acquired the assets. The liability between MVC and Debtor cannot be allocated inasmuch as Debtors ultimately will be liable for the payment of damages.[9] At this juncture in its bankruptcy case it can ill afford the time and resources required to protect its interests with respect to the MVC litigation. The Montana Plaintiffs' claims arise from alleged asbestos exposure. The Royal insurance is products claim-based. The Debtor will be directly affected by any action

___

[8] The court in *Federal-Mogul* noted that *Celotex, A.H. Robins*, and *Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999), could be "explained at least in part by the recognition that they each involved property or rights belonging to the estate." 282 B.R. at 307. *Celotex* involved the debtor's cash collateral, *A.H. Robins* concerned insurance proceeds, and *Halper* addressed a guarantee which was available as a creditor's alternative source of recovery. 282 B.R. at 307.

[9] Although Debtors' motion avers that GraceCo purchased only assets of MVC's predecessor, the face of the MVC dissolution decree reportedly indicates that MVC stock was exchanged for stock in GraceCo. Motion to Expand Preliminary Injunction, Dkt. No. 153, at 2, n.1. Debtors aver that if this was the case, the automatic stay applies to bar actions against MVC. There is no evidence that MVC was "merged" into GraceCo. Furthermore, there is no motion to enforce the stay before the court. If a stock exchange in fact occurred, Debtors may face allegations of successor liability as well. Although this issue is not before the court, we mention it to further illustrate the relation between Debtors' estates and the Montana Plaintiffs' actions against MVC.

13

against MVC based on asbestos-related product liabilities. The Montana Plaintiffs point out in

their response to the motion that Debtors acknowledge that GraceCo "specifically did not assume

any 'liabilities against which Zonolite is insured or otherwise indemnified, to the extent of such

insurance or indemnification.'" Opposition of Carol Gerard, et al., to Debtors' Motion to

Expand, Dkt. No. 156, at 3. This statement ignores, however, the fact that Debtors, in effect,

assumed Royal's obligations under the Pre-Sale Policies. Thus, to the extent MVC is found

liable for asbestos-related injuries which are covered by the Royal policies, Debtors'

indemnification obligation will be triggered.

We find that the MVC actions should be preliminarily enjoined. An appropriate order

will be entered.

DATE: 10/7/08

Judith K. Fitzgerald
Judith K. Fitzgerald
United States Bankruptcy Judge

cc:    David M. Bernick, Esquire
       Janet S. Baer, Esquire
       Kirkland & Ellis
       200 East Randolph Drive
       Chicago, IL 60601

       David Carickhoff, Esquire
       Scotta McFarland, Esquire
       Pachulski, Stang, Ziehl, Young,
          Jones & Weintraub, P.C.
       919 North Market Street, 16th Floor
       P.O. Box 8705
       Wilmington, DE 19899-8705

14

Steven K. Kortanek, Esquire
Klehr, Harrison, Harvey, Branzburg
   & Ellers, LLP
929 Market Street, Suite 1000
Wilmington, DE 19801

David C. Cohn, Esquire
Cohn Khoury Madoff & Whitesell LLP
101 Arch Street
Boston, MA 02110

Jon L. Heberling, Esquire
McGarvey, Heberling, Sullivan
   & McGarvey, P.C.
745 South Main
Kalispell, MT 59904

U.S. Trustee
844 King Street, Suite 2313
Wilmington, DE 19801