# Exhibit B

## Matter 88 - Acton Site OU3

During this Thirteenth Application Period, the Firm assisted the Debtor in matters related to the federal Superfund site known as the Grace Acton Site. On September 30, 2005, the federal Environmental Protection Agency issued the Record of Decision, or ROD, for the cleanup of the so-called Operable Unit 3 (OU-3) at the Site. The ROD identified a remedy for the Site, which EPA will expect the Debtor to implement pursuant to the terms of a consent decree entered into between the Debtor and the United States in 1980.

Although the ROD states the general outline of the remedy, substantial work is required to determine what flexibility the Debtor may have in implementing the remedy. The next step in this process was the issuance by EPA of a scope of work (SOW), to be performed by the Debtor, to implement the remedy described in the ROD. Following issuance of the SOW, and during the Thirteenth Application Period, the Firm worked with the Debtor on issues related to the Debtor's rights and obligations regarding water withdrawals at the Site. We also reviewed reports prepared by the government concerning potential risks posed by the Site.

This work is complex and requires an in-depth knowledge of the history of the Debtor's cleanup of the Grace Acton Site, the terms of the 1980 Consent Decree, and the relevant provisions of federal and state Superfund laws. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to cost-effective compliance with the Debtor's obligations under the federal Superfund law and the 1980 Consent Decree.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $565.00 | 1.8 | $ 1,017.00 |
|  |  |  |  |  |  |
| TOTAL |  |  |  | 1.8 | $ 1,017.00 |

## Matter 101 - Bankruptcy Matters

This matter covers preparation of monthly and interim fee applications, as well as the Firm's efforts to obtain Court cost authorization for the Firm to serve as special environmental counsel to Debtor. Foley Hoag's ordinary practice is to exercise billing discretion prior to submitting invoices, and it has done so with respect to each of the invoices it submitted during the Interim Period. To date, none of the interested parties objected to payment on account of any portion of any of those invoices, although they were entitled to do so.

The Firm's application-preparation fee is reasonable in light of the nature and magnitude of the effort involved. For each of those matters, as required by the Local Rules, the Firm submitted detailed billing summaries, and its attorneys prepared narrative descriptions of the work performed.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $565.00 | 1.1 | $ 621.50 |
| Adam P. Kahn | Partner | Environmental | $565.00 | 0.5 | $ 282.50 |
| Elizabeth A. Rice | Paralegal | Bankruptcy | $225.00 | 1.0 | $ 225.00 |
| | | | | | |
| TOTAL | | | | 2.6 | $ 1,129.00 |

**Matter 102 - Blackburn and Union Privileges Superfund Site, Walpole, Mass**

During this Thirteenth Application Period, the Firm assisted the Debtor in matters related to the federal Superfund site known as the Blackburn and Union Privileges Superfund Site, in Walpole, Massachusetts. The site has been in industrial use for several hundred years. From approximately 1915 to 1935, it was operated by Multibestos Company, which manufactured products containing asbestos. The stock of Multibestos was purchased by Dewey & Almy in or about 1930. The Debtor purchased the stock of Dewey & Almy in 1954.

The Debtor and other potentially responsible parties have been working with EPA and MassDEP since 1988. In 1992 and 1993, the Debtor performed a cleanup at the Site with respect to asbestos, though other contamination remained. The Site was added to the federal National Priorities List in 1994. the Debtor received a Notice of Potential Liability from EPA in 1998 and a "Special Notice of Responsibility" in 1999. Also in 1999, the Debtor entered into an administrative order with EPA and the Kendall Company, another potentially responsible party. In the order, the Debtor and Kendall each agreed to pay 50% of the costs for performance of the Remedial Investigation / Feasibility Study ("RI/FS") for the Site. After the Debtor filed for reorganization, the Kendall Company continued the RI/FS work without financial participation from the Debtor.

In 2006, EPA announced that it was revisiting the potential risks posed by the presence of asbestos as the Site, including areas with concentrations of asbestos greater than 0.25%, even though the original cleanup was based on a concentration of 1%. EPA has recently indicated that there may be several additional areas of the Site that require remediation for asbestos.

The Firm has assisted the Debtor in analyzing its continuing potential liability for the presence of asbestos, its obligations under agreements entered into prior to the filing for reorganization, and how this Site should be addressed in the contact of broader negotiations with EPA over multiple sites. During this period, the Firm also assisted the Debtor in connection with negotiations between the Debtor and Kendall regarding a long-term settlement which would resolve the allocation of liability for costs at the Site between the Debtor and Kendall.

In addition, during this period, the Firm assisted the Debtor in providing comments on EPA's draft feasibility study (FS) and proposed plan (PP) for the Site. These are the critical documents that identify the future remedy for the Site, which EPA will expect the Debtor to perform or pay to perform, in conjunction with other responsible parties. The comment period is

the critical opportunity for Grace to maximize the cost-effectiveness of the ultimate remedy for the Site.

Finally, we also assisted the Debtor in negotiations with the current property owner of the Site and, in particular, in connection with issues related to potential limitations on the future use of the property. Such limitations may be critical to minimizing the scope, extend, and cost of future response actions at the Site.

This work is complex and requires an in-depth knowledge of the Superfund law, and applicable regulations governing the cleanup of asbestos. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to an effective response to EPA's potential request that more cleanup be performed with respect to asbestos and to overall minimization of the cleanup cost.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $565.00 | 54.7 | $ 30,905.50 |
| Jacob N. Polatin | Partner | Real Estate | $565.00 | 11.4 | $ 6,441.00 |
| Elisabeth M. DeLisle | Associate | Environmental | $410.00 | 16.6 | $ 6,806.00 |
| Lea Heffernan | Associate Intern | Environmental | $215.00 | 2.0 | $ 430.00 |
| | | | | | |
| **Sub Total** | | | | 84.7 | $ 44,582.50 |
| **Less Credit*** | | | | | ($ 545.68) |
| **TOTAL** | | | | 84.7 | $ 44,036.82 |

\* Credit of overpayment of official fees and costs disbursement for a Municipal Tax Lien Certificate from the Monthly Fee Application for June 2008.