# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | MISC. NO. 08-118 |
| | : | |
| W.R. GRACE & CO., *et al.*, | : | BANKRUPTCY CASE NO. 01-1139 |
| | : | |
| Debtors. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                    November 13, 2008

      Presently before the Court are Anderson Memorial Hospital's ("Anderson Memorial")

Motion to Reconsider Denial of Motion for Leave to Appeal the Bankruptcy Court's Order

Denying Class Certification, or in the Alternative, to Certify This Matter to the United States

Court of Appeals for the Third Circuit, to Remand this Matter to the Bankruptcy Court for

Discovery, and/or to Conduct a Status Conference (Docket No. 12), W.R. Grace and Co.'s

("Debtor") Brief in Opposition (Docket No. 13), and Anderson Memorial's Reply Memorandum.

(Docket No. 14.)  For the reasons stated below, Anderson Memorial's Motion for

Reconsideration is denied.

## I.  BACKGROUND[1]

      On December 23, 1992, Anderson Memorial, represented by Speights & Runyan

("S&R"), filed a class action in South Carolina state court on behalf of certain building owners

and against Debtors and other manufacturers of asbestos containing materials.  In 1994, the

South Carolina court issued an order striking out-of-state class members from the Anderson

Memorial Complaint based on the South Carolina "Door Closing Statute." S.C. CODE ANNO. §

---

[1] The Background is taken from this Court's September 4, 2008, Memorandum which is the basis for Anderson Memorial's Motion for Reconsideration.

15-5-150.  Thereafter, the South Carolina action proceeded only as to buildings located in South

Carolina.

On February 9, 2001, the South Carolina court entered an *ex parte* order conditionally

certifying the state-wide class.  Shortly thereafter, on April 2, 2001, Grace filed its  Chapter 11

petition.  The South Carolina court subsequently issued a final order certifying a class of South

Carolina building owners as to three of the remaining defendants in the South Carolina

proceedings, but not Grace due to the bankruptcy stay.

By order dated April 22, 2002, the Bankruptcy Court approved an extensive notice

program and set March 31, 2003, as the bar date for asbestos property damage claims.  (Bankr.

Dkt. No. 1963.)  That order was not appealed.  Thereafter, at the request of the Asbestos Property

Damage Committee ("PD Committee")—of which Daniel Speights of S&R is a member—the

Bankruptcy Court abated "the requirement in the Bar Date Notice that counsel of record for

asbestos property damage claimants either (1) certify that they notified their clients of the bar

date by transmitting to them the proof of claim package or (2) give names and addresses to Grace

so Grace could notify them directly."  In re W.R. Grace & Co., 389 B.R. 373, 375 (Bankr. D.

Del. 2008) (citing Bankr. Dkt. Nos. 2269, 2274, 2745, 2394, 2469 and 2503).

Over 4,000 individual property damage claims were filed in response to the notice

program and prior to the March 31, 2003, bar date.  Approximately 3,000 of those claims were

filed by S&R, two of which were class proofs of claim on behalf of "worldwide" and "statewide"

building owners from the Anderson Memorial class action.  (Proof of Claim Nos. 9911 and

9914.)  S&R did not file a motion for class certification until October 22, 2005, over two and a

half years past the bar date.  (Bankr. Dkt. No. 10014.)  In the meantime, many of the claims filed

2

by S&R were either withdrawn and/or expunged after findings that S&R lacked authority to file on behalf of the individual claimants.

The Bankruptcy Court denied Anderson Memorial's motion for class certification finding that Anderson Memorial failed to satisfy the numerosity requirement of Federal Rule of Civil Procedure 23(a).[2]  On September 4, 2008, this Court denied Anderson Memorial's appeal, noting that while Federal Rule of Civil Procedure 23(f) permits appeal from an order denying class certification, appeal was unwarranted as the "Bankruptcy Court's decision that the Federal Rule of Civil Procedure 23(a) numerosity requirement was not met was sound."  In re W.R. Grace & Co, et al., Civ. A. No. 08-118, 2008 WL 4234339, at * 2 (D. Del. Sept. 4, 2008.)  This Court agreed with the Bankruptcy Court that class certification, at this late date would render the bar date "useless and adversely affect claimants who filed timely proofs of claim."  (Id.)

Anderson Memorial moves that this Court reconsider its September 4, 2008, Memorandum and Order, arguing that the "Court's conclusions are not only premature, but they are both factually and legally erroneous" as the Court's decision was based on factual misrepresentations that obscured the scope of Grace's compliance with its notice obligations. (Appellant's Mot. Reconsid. 2.)

## II. LEGAL STANDARD

Local Rule 7.1(g) permits motions for reconsideration.  E.D. Pa Civ. P. 7.1(g).  Such motions are analogous to those brought under Federal Rule of Civil Procedure 59(e) whose purpose is to correct "manifest errors of law or fact or to present newly discovered evidence."

---

[2] Federal Rule of Civil Procedure 23(a) is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7023(a).

Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985); see Kennedy Indus. v. Aparo, Civ.

A. No. 04-5967, 2006 WL 1892685, at *1 (E.D. Pa. Jul. 6, 2006).

Given a court's interest in the finality of it judgments, "[m]otions for . . . reconsideration

should be granted sparingly and may not be used to rehash arguments which have already been

briefed by the parties and considered and decided by the Court." Ciena Corp. v. Corvis Corp.,

352 F. Supp. 2d 526, 527 (D. Del. 2005).  Reconsideration is not permitted simply to allow a

"second bite at the apple." See Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d

Cir. 1995).  Litigants who fail in their "first attempt to persuade a court to adopt its position may

not use a motion for reconsideration either to attempt a new approach or correct mistakes it made

in its previous one .... [or] to argue new facts or issues that inexcusably were not presented to the

court in the matter previously decided." Kennedy Indus., 2006 WL 1892685, at *1 (quotation

omitted); see also Brambles USA Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990) (it is

not appropriate to relitigate issues already decided by a court on a motion for reconsideration).

The Third Circuit has stated that the party seeking reconsideration must demonstrate "at

least one of the following grounds: (1) an intervening change in the controlling law; (2) the

availability of new evidence that was not available when the court granted the motion . . .; or (3)

the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood

Café by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999); see also Jackson v. Rohm

& Haas Co., Civ. A. No. 06-1540, 2007 WL 579662, *2 (3d Cir. Feb. 26, 2007) (motions for

reconsideration granted only to "correct manifest errors of law or fact or to present newly

discovered evidence") (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).

4

## III.  DISCUSSION

In its Motion for Reconsideration, Anderson Memorial spends little time addressing[3] the

Max's Seafood  standard claiming that the Court's conclusions "are not only premature, but they

are both factually and legally erroneous."  (Appellant's Mot. Reconsid. 2.)  Anderson Memorial

asserts that the bar date's expiration does not limit class membership, and as a result this Court's

assertion that the "numerosity requirement was not met" was in error.  (Id. at 11; Court

Memorandum & Order, In re W.R. Grace & Co, et al., Civ. A. No. 08-118, 2008 WL 4234339,

*2 (D. Del. Sept. 4, 2008.)

### 1.    Anderson Memorials' Assertions of Factual Error

In its Motion for Reconsideration, Anderson Memorial alleges two factual errors: (1)

W.R. Grace failed to give actual notice to "hundreds if not thousands of building owners with

Grace's ACM [asbestos containing material]," and  this Court erred when it stated that the bar

date "order was not appealed." (Id. at 2, 3.)   As a result Anderson "can easily demonstrate many

more members of the class whose claims have not been barred.  As the record now stands,

however, there is no evidence whatsoever that Grace gave actual notice."  (Id.)

In their Reply Memorandum in Support of Their Motion to Reconsider Denial of Motion

---

[3] The paucity of Anderson Memorial's argument, in its Motion for Reconsider, can likely
be explained by their repeated request for permission to "brief and argue this matter on the
merits." (Pl.'s Mot. Reconsid. 1.)  Counsel "would like to explain to this Court if it permits
briefings and arguments" (Id. at 8) preferably at "oral argument or an in-person status conference
so that all these issues may be addressed."  (Id. at 12.)  The appropriate place for Anderson
Memorial to articulate why the relief sought should be granted is through its Motion.  Both Local
and the Federal Rules provide courts with discretion to decide whether or not oral argument is
necessary.  See E.D. PA CIV. P. 7.1(g) and FED. R. CIV. P. 78(b).  Given this, the proper place for
Anderson Memorial to articulate the legal and factual basis for its Motion is in its briefings to the
Court.

for Leave to Appeal, Anderson Memorial expands upon the alleged factual errors raised in their

Motion to Reconsider.  (Appellant's Reply Br.)  Specifically, Anderson Memorial states that the

Bankruptcy Court was "manifestly wrong" in (1) finding that Grace provided actual notice to a

large number of claimants, (2) determining that Anderson Memorial had not met the numerosity

requirements of Federal Rule of Civil Procedure 23,[4] (3) asserting that class certification would

adversely affect other claimants, (4) determining that no Anderson Memorial class was certified

as to Grace, and (5) committing a host of other factual errors including refusing to let Anderson

mark documents for identification.  (Id. 4-11.)

### i.    Failure to Provide Actual Notice

Apellants claim that Debtor's misrepresentations concerning the adequacy of notice led

this Court to erroneously deny class certification.  (Appellant's Mot. Reconsid. 3 (citing Mission

Towers v. W.R. Grace, 2007 WL 4333817 at *3)); Appellants Reply Br. 4-5.)  Anderson argues

that it "has shown on its appeal to the Third Circuit, there was not a scintilla of evidence

presented that Grace provided actual notice to **any** asbestos property damage claimant other than

approximately seven claimants who had property damage cases pending when Grace filed its

bankruptcy petition."[5] (Appellant's Mot. Reconsid. 2) (emphasis in original).  Efforts to prove

the inadequacy of notice have been "frustrated" by the Bankruptcy Court, as that court

determined that the bar date notice was appropriate; granted "Grace's Motion for Protective

---

[4] Anderson lumped issues (1) and (2) together under one heading, with issue (2) receiving cursory attention.  (Appellant's Reply Br. 4.)  For the sake of clarity, the issues will be treated separately.

[5] Appellant may have shown this evidence to the Third Circuit, but such evidence is not found in the Motion before this Court.

Order prohibiting any discovery about the bar date order;" and ruled against permitting a

collateral attack on the bar date order.[6] (Id. at 2-3; Bankr. Dkt. No. 11025; Bankr. Dkt. No.

13077.)

As noted previously, on April 22, 2002, the Bankruptcy Court approved an extensive

notice program setting March 31, 2003, as the bar date for asbestos property damage claims.

(Bankr. Dkt. No. 1963.)  Thereafter, at the request of the Asbestos Property Damage Committee

("PD Committee")—of which Daniel Speights of S&R is a member—the Bankruptcy Court

abated "the requirement in the Bar Date Notice that counsel of record for asbestos property

damage claimants either (1) certify that they notified their clients of the bar date by transmitting

to them the proof of claim package or (2) give names and addresses to Grace so Grace could

notify them directly."  In re W.R. Grace & Co., 389 B.R. 373, 375 (Bankr. D. Del. 2008) (citing

Bankr. Dkt. Nos. 2269, 2274, 2745, 2394, 2469 and 2503).  Despite W.R. Grace's objection, the

Court approved the PD Committee's opt-out proposal.  (Bankr. Dkt. No. 2745.)

Following this Order, W.R. Grace "spent a considerable amount of money publishing the

notice in both national and local publications."  In re W.R. Grace & Co., 389 B.R. at 375.  Notice

was provided to property damage claimants, and actual notice was given to "200,000 known

asbestos claimants."  Mission Towers v. W.R. Grace, et al., WL 4333817, at *1.  Notified

property damage claimants included "all named parties to the handful of property damage cases

---

[6] Appellants note that the Bankruptcy Court "at Grace's urging, has frustrated all of Anderson's substantial efforts to make this showing."  (Id.)  The Court assumes that Anderson Memorial is referring simply to the inherent nature of the adversarial process and is not asserting that the Bankruptcy Court conspired with Appellee to undermine Anderson Memorial's case.  If this Court's assumptions are incorrect, it would seem that a Motion for Reconsideration is not the only motion that Appellants should be filing.

pending when Grace filed its bankruptcy petition, and all known personal injury and property

damage lawyers." Id. This Court has previously determined that publication notice was

appropriate. Id. at *4. That the notice program was valid is the law of the case. See 18B Charles

Alan Wright, Arthur R. Miller, & Edward H. Cooper, FED. PRACT. & PROC. JURIS 2d § 4478 (2d

ed. 2000). ("Law-of-the-case rules have developed to maintain consistency and avoid

reconsideration of matters once decided during the course of a single continuing lawsuit.")

Anderson Memorial has provided no evidence that notice procedures were faulty or that Debtor

failed to comply with them. Appellant's counsel cryptically refers to "evidence" of actual notice

to property damage claimants other than the seven claimants. (Appellant's Mot. Reconsid. 2.)

Yet, this evidence has not been provided to this Court.

Anderson relies on mere assertions in challenging the validity of the notice allegedly

provided to 8700[7] property damage claimants, yet argument over the notice provided these

claimants is misplaced. First, these 8700 claimants were not raised in this Court's decision to

uphold the Bankruptcy Court's decision after examining "the class certification decision in detail

. . . denial of class certification was neither imprudent nor erroneous." In re W.R. Grace & Co.,

2008 WL 4234339 at *2. Disputing whether actual notice was provided to 8700 potential

claimants is also undermined by the fact that the notice program instituted, with input from all

the parties, has been affirmed repeatedly by this Court. Mission Towers, 2007 WL 4333817, at

*7; Pacificorp and Vancott Bagley Cornwall & McCarthy v. W.R. Grace, et al., Civ. A. No. 05-

764, 2006 WL 2375371, at *15 (D. Del. Aug. 16, 2006).

Complaints about Debtor's failure to provide notice ring hollow in the face of the fact

---

[7] This number is referred to as 9700 in other filings and memoranda issued in this case.

8

that the PD Committee successfully obtained revisions to the bar date order so that counsel for

plaintiffs were not obligated either to provide notice to claimants that they represented or to

provide a list of claimants to Grace so that it could have provided actual notice to them.

(Appellee's Resp. Mot. 4.)

Motions for reconsideration may be granted based on "new evidence" or to "correct clear

errors of law or fact." Max's Seafood Café, 176 F.3d at 677. Extensive notice procedures, at no

small cost to the court or the litigants, were established. Neither new evidence nor errors of fact

or law have been shown.

### ii.    Dispute Regarding Appeal

Anderson Memorial takes issue with this Court's statement that the bar date "order was

not appealed" stating that the PD Committee "sought leave to appeal this order to this Court,"

but appeal was denied as interlocutory. (Appellant's Mot. Reconsid. 3.) Further, Anderson

Memorial "was not a party to the bar date motion, but even if it had been, it would not have had

the right to appeal, and if it had attempted to do so, its appeal likewise would have been denied

as interlocutory." (Id.)

Anderson Memorial correctly asserts that the PD Committee moved to appeal the bar date

order, a motion denied by the court.[8] What is left unsaid is the reasoning behind the PD

Committee's appeal – namely that there was "no bar date order which applies to other asbestos

claimants." (Bankr. Dkt. No. 2019 ¶ 4.) This appeal was made because the PD Committee was

worried that other groups of claimants, not subject to a bar date, might achieve an economic

---

[8] The PD Committee subsequently sought and obtained revisions to the initial bar date order. (Bankr. Dkt. No. 2274 & 2502.)

advantage.  (Bankr. Dkt. No. 2554, p. 3.); see In re Celotex Corp., 204 B.R. 586, 592 (Bankr.

M.D. Fla. 1996) (different bar dates set for different groups of claimants).  Interlocutory review

was denied given that when there are "multiple issues arising from the diverse types of claims

before them, courts have frequently established multiple bar dates . . . different bar dates from

different claims, absent identifiable immediate prejudice" do not provide the "exceptional

circumstances necessary to warrant leave to appeal the interlocutory Order governing the bar date

for Property Damage Proof of Claims."  (Bankr. Dkt. No. 2555, p. 4-5.)

    Anderson Memorial's appeal does not alter the fact that a valid bar date was established

with input from the parties to this litigation, including the PD Committee.  This Court previously

noted that Anderson Memorial had not met the numerosity requirement imposed by Federal Rule

23(a), and that class certification would render the bar date useless, adversely affecting those who

filed timely proofs of claim.  In re W.R. Grace & Co., 389 B.R. at 380.  Anderson Memorial has

not shown that their filing an appeal justifies reconsideration of this Court's prior decision to

upholding the denial of class certification.

> **iii.    Anderson Met the Numerosity Requirement Imposed by Rule 23(a) When it Attached the Names of 3000 Claimants to its Motion for Class Certification**

    Anderson Memorial asserts in its Reply Brief that it "met numerosity by filing class

proofs of claim and by attaching a list of more than 3000 claimants" to its Motion for Class

Certification, something "neither this Court, the Bankruptcy Court, nor Grace realized that

Anderson did."  (Appellant's Reply Br. 3-4.)  Like the claimants in In re Interregional Equity

Corp. ("Interregional"), Anderson Memorial asserts that it attached a list of putative class

members to its Complaint and as a result there was no "need to get into the individual proof of claim form" as the list of all putative claim holders "was sufficient." In re Interregional Equity Corp., 227 B.R. 358, 371 (D.N.J. 1998).

Anderson Memorial is making both legal and factual arguments regarding compliance with Rule 23's numerosity requirement. The legal argument, which will be addressed subsequently, is that following the lead of Interregional, this Court should not limit class certification to those who filed individual proof of claim forms prior to the bar date. The factual argument suggests that by attaching 3000 listed claimants to their Complaint, Anderson Memorial, consistent with Interregional, satisfied the numerosity requirement imposed by Federal Rule of Civil Procedure 23(a). FED. R. CIV. P. 23(a).

The existence of these 3000 claimants does not constitute new evidence justifying reconsideration. The Bankruptcy Court, at the outset of its Memorandum Opinion, noted that Anderson Memorial's proposed class included those "claims identified in Exhibit A," i.e., the 3000 claims raised by Anderson Memorial. In re W.R. Grace & Co., 389 B.R. at 373. Two sentences later the Bankruptcy Court noted "for the reasons which follow, we find that Anderson has not satisfied the numerosity requirements of Fed. R. Civ. P. 23(a)." Id. Aware of the 3,000 claims listed in Exhibit A, the Bankruptcy Court determined that there was not sufficient numerosity for class certification as the only valid claim was Anderson Memorial's claim "for a South Carolina building." Id. at 376. This Court affirmed the Bankruptcy Court's decision. Anderson Memorial has provided no evidence justifying reconsideration.

### iv. Anderson Memorial Asserts that Class Certification Would not Harm Other Claimants

Anderson Memorial disputes the Bankruptcy Court's determination that class certification would harm those filing timely proofs of claim.  (Appellant's Reply Br. 5.)  Citing to an absence of evidence on the record, the fact that all but a few claimants have settled their claims, and that "Grace's Plan provides for the payment in full of all unresolved property damage claims that are allowed," Anderson Memorial argues that class certification would not harm other claimants. This argument fails to note that the tentative settlements between Debtor and other claimants have not been approved.  Permitting claims filed after the bar date would enable new claimants to opt out of the class asserting their own independent claims.  A new class could undermine current, long-standing settlement efforts, and this Court fails to see how such a scenario advances judicial economy and does not harm those who filed timely claims.  Assuming *arguendo* that Anderson Memorial is correct, a dispute over the harm incurred by yet uncompensated claimants does not provide sufficient reason to grant a motion to reconsider.  See Max's Seafood, 176 F. 3d at 677 (motion for reconsideration must show either "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . .; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.")

### v. The Court Erred in Determining That No Anderson Memorial Class was Certified as to Grace

Anderson Memorial next argues that the Bankruptcy Court's determination that "there is no pre- or postpetition Anderson memorial class . . . makes no sense."  (Appellant's Reply Br. 9-10) (internal quotations omitted.)  Anderson Memorial is grasping at straws with this argument. There is no dispute that the South Carolina state court's grant of class certification was "conditional," issued to preserve state court jurisdiction, and had no precedential value.  (Id. at 7;

12

In re W.R. Grace & Co., 389 B.R. at 374.)  Also, on June 29, 2001, the South Carolina court

issued a final Order of Certification, which included three defendants and did not include Debtor

as a defendant.  Id.

Anderson Memorial provides no evidence showing that the Bankruptcy Court erred when

finding that there was no "pre- or postpetition certified class as to Grace."  Even if the South

Carolina court's "conditional" certification created a certified class, the Bankruptcy Court's

denial of class certification is warranted.  A state court certified class still must comply with Rule

23.  See Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 178 (1974) ("[i]n determining the

propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a

cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are

met."); see also Zelinsky v. Staples, Inc., Civ. A. No. 08-864, 2008 WL 4425814, at *5 (W. D.

Pa. Sep. 29, 2008) ("Significantly, I note that the action was initially commenced in Pennsylvania

state court, and then was removed to this Court by the Defendant, thereby causing Rule 23 to

come into play.")   Examining the Rule 23 factors, the Bankruptcy Court determined that

Anderson Memorial failed to meet these factors.  This Court, looking at the facts, affirmed that

determination.

As such, while no pre- or postpetition class was certified as to Grace, even if such a class

had been certified by the South Carolina court, such a conditional class still has to comply with

the Rule 23 standards.  The proposed Anderson Memorial class did not meet the Rule 23 criteria.

### vi. Other Manifest Factual Errors Made by Bankruptcy Court

Anderson Memorial also asserts that the Bankruptcy Court made several manifestly

wrong factual errors.  One such error involves a dispute about when property damage issues were

first litigated, be it in 2002 or 2005.  (Appellant's Reply Br. 10.)  The other error apparently

involves Anderson Memorial's disagreement with assertions made by Debtor regarding the

Bankruptcy Court's decision to not admit boxes of sales records.  (Id.)  Regarding the latter

error, this Court fails to see how assertions made by Debtor constitute error by the Bankruptcy

Court.  More importantly, neither "error" constitutes a "clear error of . . . fact" that must be

corrected "to prevent manifest injustice."  Max's Seafood Café, 176 F. 3d at 677.

> **2.    Anderson Memorial's Assertion of Legal Error**
>
> > **a.    Anderson's Reliance Upon _In re American Reserve_ and _In re_
> > _Interregional Equity Corp._**

Anderson Memorial argues that since the Seventh Circuit's decision in In re American

Reserve, 840 F. 2d 487, 492 (7th Cir. 1987)  ("American Reserve"), there exists "an unbroken

string of Court of Appeals decisions allowing class proofs of claims in bankruptcies as well as a

bankruptcy ruling in this circuit" rejecting this Court's "holding that membership in a class

action is limited to those who filed individual proofs of claim."  (Appellant's Mot. Reconsid. 3

citing  In re American Reserve, 840 F. 2d at 492 (7th Cir. 1987)); In re Interregional Equity

Corp., 227 B.R. 358, 371 (D.N.J. 1998).  American Reserve holds that a bankruptcy court may

permit class proofs of claim.  In re American Reserve, 840 F.2d at 493.  Although, the Third

Circuit has not adopted American Reserve a bankruptcy court in the District of New Jersey, in

Interregional, certified a class that included proofs of claim filed after the bar date.  In re

Interregional Equity Corp., 227 B.R. at 371.

Anderson Memorial avers that these cases posit that "class membership is not limited by

date order" and seeks to take "depositions the Bankruptcy Court quashed, to identify building

14

owners with Grace's ACM." (Appellant's Mot. Reconsid. 4.) Anderson Memorial, however,

endeavors to have both cases do more lifting than they can bear as they are readily

distinguishable from the present case.

i.   *American Reserve*

While <u>American Reserve</u> permitted a bankruptcy class action, it does not follow that

bankruptcy class actions be permitted as a matter of right, as "not every effort to represent a class

will succeed; the representative is an agent only if the class is certified." <u>In re American Reserve</u>,

840 F.2d at 493. <u>American Reserve</u> goes into considerable detail examining the strengths and

short-comings of class actions, noting that features, inherent in class actions, could "greatly

complicate a bankruptcy without yielding significant compensation to the injured parties." <u>Id.</u> at

491. In such instances, the "marginal deterrence would not be worth the candle" and "may make

class certification less desirable in bankruptcy than in ordinary civil litigation." <u>Id.</u> at 491, 494.

Conversely, class action "suits for larger stakes, based on sound legal theories, may hold out

substantial prospects of compensation or deterrence without unduly complicating or delaying the

case." <u>Id.</u> at 492.

Recognizing the varied utility of class actions, the <u>American Reserve</u> court remanded to

the bankruptcy court, noting that the bankruptcy judge has "discretion under Rule 9014 not to

apply Rule 7023 - and therefore not to apply Rule 23 - in this 'contested matter'" as the

bankruptcy rules provide courts with "substantial discretion to consider the benefits and costs of

class litigation." <u>Id.</u> at 494, 492. In the present case, the Bankruptcy Court engaged in a detailed,

fact specific analysis finding that Anderson Memorial did not meet the numerosity requirement

under Rule 23(a).  In re W.R. Grace & Co., 389 B.R. at 374-75.[9]

Even though it determined that Anderson Memorial had not met the requirements

imposed by Federal Rule 23(a), the Bankruptcy Court addressed the Rule 23(b) factors "to

further illustrate the impropriety and inadvisability of certifying a class in this case."  Id. at 377.

The Bankruptcy Court found that "there has been no showing of a risk of inconsistent

adjudication or that adjudication with respect to individual class members would be dispositive

of the interests of other claimants," or that a class would be a "superior method" of adjudication.

Id. at 378.  A class action would nullify the bar date without showing excusable neglect; and the

class action opt-out election would provide "another end run around the bar date" adversely

affecting the bankruptcy proceedings.  Id. at 380.  Further, certification would "needlessly

prolong this case which was filed nearly seven years ago."  Id.

Consistent with American Reserve, this Court looked at the Bankruptcy Court's decision

"in detail," affirming that the "numerosity requirement was not met," and that certification would

"render the bar date useless and adversely affect claimants who filed timely proofs of claim."  In

re W.R. Grace & Co., 2008 WL 4234339, at *2.

## ii.    *Interregional*

Anderson Memorial cites Interregional for the proposition that while the Third Circuit has

───────────────

[9] The Court noted that Anderson Memorial did not provide it with any "persuasive
authority or argument" to show (1) that the bar date "can or ought to be bypassed. . . so that
claimants who did not file a proof of claim by the date of March 31, 2003, could now participate
in a class proof claim;" (2) that the bar date notice procedures were inadequate or that class
certification and notice would improve upon those procedures; or (3) why remaining claims
cannot be timely adjudicated "through the property damage case management process already
established and working in this case."  Id. at 377.

not adopted <u>American Reserve</u>, courts in the Third Circuit have certified classes with claimants who filed proofs of claim after the bar date.  (Pl.'s Mot. Reconsid. 6.)  Anderson Memorial is correct, but like <u>American Reserve</u>, <u>Interregional</u> is distinguishable from the present suit.

 <u>Interregional</u> involved efforts to certify a class where the claimants were all victims of an elaborate ponzi scheme.   Noting that "the vast majority of courts who have recently considered the issue have concluded that class proofs of claim are now regularly permitted in a bankruptcy proceeding," the court engaged in an intensely fact specific analysis examining the Rule 23(a) factors necessary for class certification: (1) numerosity, (2) common questions of law or fact, (3) typicality, and (4) whether representatives will fairly and adequately protect the interests of the class.  <u>In re Interregional Equity Corp.</u>, 227 B.R. at 366; FED. R. CIV. P. 23(a).  The <u>Interregional</u> court granted class certification concluding that these factors were met.

 The Bankruptcy Court in the present case, carefully analyzed the Rule 23(a) factors, concluding that numerosity was dispositive and that Anderson Memorial "failed to meet the requirements of Rule 23."  <u>In re W. R. Grace & Co.</u>, 389 B.R. 373, 376 (D. Del 2008).  This Court affirmed that decision, and Anderson Memorial provides no sufficient reasons to warrant reconsideration of that decision.

 Likewise, the <u>Interregional</u> court determined that Rule 23(b)'s requirement that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy" had been met.  <u>Interregional Equity Corp.</u>, 227 B.R. at 370.[10]  Rule 23(b)(3) analysis

---

[10] Upon meeting the Rule 23(a) criteria, at least one of the elements of Rule 23(b) must be met.  Specifically, Federal Rule of Civil Procedure 23(b) states:
  A class action may be maintained if Rule 23(a) is satisfied and if:
  (1) prosecuting separate actions by or against individual class members would create a risk of:

requires that the court "identify the legal and factual issues" and "determine whether the common issues predominate." Id. at 369.  Rule 23(b)(3) provides a list of factors to consider including class member's interest in separate actions, other ongoing litigation, the benefits of combining claims in one forum and the difficulty in managing a class action.  See Fed. R. Civ. P. 23(b)(3)(A-D).

The Interregional court determined there were common issues of law and fact as prospective class members were "all victims of a massive 'ponzi' scheme." Id. at 370.  Unlike creditors in many bankruptcy proceedings, the various claims raised in Interregional did undermine the efficacy of a class action.  Id.

Finding common issues of fact, the court then considered whether a class action was "superior to other available methods for fairly and efficiently adjudicating the controversy." FED.

---

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and  (D) the likely difficulties in managing a class action.

18

R. Civ. P. 23(v)(3).  The court dismissed a suggestion that a series of "test cases" would be more effective, as such cases could actually increase costs to the litigants and crowd the docket, a social cost borne by all.  Interregional Equity Corp., 227 B.R. at 370.

The court next examined whether claims of proof submitted after the bar date should be permitted.  Like Debtor in this case, those opposing to class certification in Interregional asserted that permitting claims filed after the bar date "would unjustifiably extend the bar date with respect to lease investors who have not filed timely proofs of claims."  Id. at 371.  The Interregional court rejected this argument, and found such claims valid.  Id.

Finally, the Interregional court disagreed with the argument that granting class actions, after the bar date, violated Bankruptcy Rule 2019's procedures governing representation of multiple creditors.  The court determined that the "safeguards inherent" in class action procedures satisfied Rule 2019, [11] noting that:

[11]    Rule 2019 states: In a chapter 9 municipality or chapter 11 reorganization case, except with respect to a committee appointed pursuant to § 1102 or 1114 of the Code, every entity or committee representing more than one creditor or equity security holder and, unless otherwise directed by the court, every indenture trustee, shall file a verified statement setting forth (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity or indenture trustee, and, in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized or agreed to act; and (4) with reference to the time of the employment of the entity, the organization or formation of the committee, or the appearance in the case of any indenture trustee, the amounts of claims or interests owned by the entity, the members of the committee or the indenture trustee, the times when acquired, the amounts paid therefor, and any sales or other disposition thereof. The statement shall include a copy of the instrument, if any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors or equity security holders. A

> not every effort to represent a class will succeed; the representative is an agent
> only if the class is certified.  Putative agents keep the case alive pending the
> decision on certification. . . . If the bankruptcy judge denies the request to certify a
> class, then each creditor must file an individual proof of claim; the putative agent
> never obtains "authorized agent" status.  If the court certifies the class, however,
> the self-appointed agent has become "authorized", and the original filing is
> effective for the whole class.

Id. (citing American Reserve, 840 F. 2d at 493.)

    In the present case, despite finding that "the Rule 23(a) elements were not established by

Anderson Memorial," the Bankruptcy Court nonetheless examined whether the Rule 23(b)

criteria had been met.    In re W. R. Grace & Co., 389 B.R. at 376.  The Bankruptcy Court found

that a class action was not a superior method for adjudicating this suit.  The court noted that there

was no risk of inconsistent adjudication or evidence Debtors treated the class in such a manner

that warranted class relief.  Id.  Given this, the only Rule 23(b) factor considered was whether (1)

there existed "questions of law or fact common to the class members" that predominated "over

---

> supplemental statement shall be filed promptly, setting forth any material changes
> in the facts contained in the statement filed pursuant to this subdivision.
>
> (b) On motion of any party in interest or on its own initiative, the court may (1)
> determine whether there has been a failure to comply with the provisions of
> subdivision (a) of this rule or with any other applicable law regulating the
> activities and personnel of any entity, committee, or indenture trustee or any other
> impropriety in connection with any solicitation and, if it so determines, the court
> may refuse to permit that entity, committee, or indenture trustee to be heard
> further or to intervene in the case; (2) examine any representation provision of a
> deposit agreement, proxy, trust mortgage, trust indenture, or deed of trust, or
> committee or other authorization, and any claim or interest acquired by any entity
> or committee in contemplation or in the course of a case under the Code and grant
> appropriate relief; and (3) hold invalid any authority, acceptance, rejection, or
> objection given, procured, or received by an entity or committee who has not
> complied with this rule or with § 1125(b) of the Code.

questions affecting only individual members" and (2) that a class action was the superior means for the "fair and efficient adjudication of the controversy." Id. (internal quotations omitted).

   The Bankruptcy Court found that Anderson Memorial's Motion for Class Certification failed to meet these requirements. Many of the issues raised were specific to a finite number of claims and dis not lend themselves to resolution as a class as these matters could be better addressed on a "claimant-by-claimant" basis or as part of smaller groups of similarly situated claimants. Id. A class action would nullify the bar date without a showing of excusable neglect; and the class action opt-out election would provide "another end run around the bar date," adversely affecting the bankruptcy proceedings. Id. at 380. Further, certification would "needlessly prolong this case which was filed nearly seven years ago." Id.

   The Bankruptcy Court determined that class certification was inappropriate. Despite this, Anderson Memorial seeks inclusion of claims filed after the bar date. Such an effort is futile as both the Bankruptcy Court and this Court determined that Anderson Memorial failed to satisfy either subsection (a) or (b) of Rule 23. Anderson Memorial has provided no evidence that merits reversal of this Court's prior determination that denial of class certification was warranted. Given the absence of class certification, this Court need not examine the general question of whether proofs of claim, filed after the bar date, are admissible in bankruptcy. Both American Reserve and Interregional note that "not every effort to represent a class will succeed." American Reserve, 840 F. 2d at 493; Interregional, 227 B.R. at 371. This is one such instance.

   In Interregional, the putative class was precisely defined and the causal chain was clear. The present case lacks such clarity. Grace's ACM was sold to thousands of customers over a period of decades. Many of those buildings have since changed hands. Further, the Bankruptcy

21

Court determined that Anderson Memorial had not met the requirements of Rule 23. This Court

affirmed the Bankruptcy Court ruling. The Bankruptcy Court's decision is consistent with both

American Reserve and Interregional – the decision to certify a class requires careful, fact-

intensive analysis. This Court, looking at the evidence before it, affirmed that decision.

Anderson Memorial has not shown any changes in the controlling law, new evidence, or a clear

error of law or fact justifying reconsideration.

## IV. CONCLUSION

For the reasons stated, Anderson Memorial's Motion for Leave to Appeal is Denied. An

appropriate order follows.