# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.**, *et al.*[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | Re: Docket No. [____] |
| | ) | [_____] Agenda Item [____] |
| | ) | |
| | ) | |

## ORDER APPROVING DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES, CONFIRMATION SCHEDULE AND RELATED RELIEF

Upon the *Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief* (Docket No. 19620) (the "Motion");[2] and the Debtors having filed the Debtors' disclosure statement (Docket No. ___) (the "Disclosure Statement") in relation to the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co, et al., the*

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]    Capitalized terms not defined herein shall have the same meaning as in the Motion.

*Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants'*

*Representative, and the Official Committee of Equity Security Holders Dated as of November 10,*

*2008* (Docket No. _____) (as it may be amended and including all exhibits and supplements

thereto, the "<u>Plan</u>") on November 10, 2008;[3] and the Debtors having filed the Exhibit Book

(Docket No. 19580) relating to the Plan and Disclosure Statement on September 19, 2008 and

amended the Exhibit Book on October 22, 2008 (Docket No. 19849), October 24, 2008 (Docket

No. 19866) and on November 10, 2008 (Docket Nos. _____); and the Debtors also having

filed a *Notice of Filing of Amendments to Proposed Confirmation and Solicitation Procedures* on

November 10, 2008 (Docket No. _____) (the "<u>Confirmation Procedures Amendments</u>"); and the

Court having reviewed and considered all timely filed objections to the Motion and the

Disclosure Statement and the Debtors' Consolidated Response to such objections; and the Court

having held hearings on the Motion and the adequacy of the Disclosure Statement on October 27,

2008, November 13, 2008 and November 14, 2008 (collectively, the "<u>Hearings</u>"); and the Court

having determined that the legal and factual bases set forth in the Motion and at the Hearings

establish just cause for the relief granted herein:

THE COURT HEREBY FINDS THAT:

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.

B.    This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

and venue of this proceeding and the Motion is proper in this District pursuant to 28 U.S.C. §§

1408 and 1409.

---

[3]    The Disclosure Statement and Plan filed on November __, 2008 amended previous versions of the Disclosure Statement (Docket No. 19851) and the Plan (Docket No. 19579) filed on September 19, 2008.

C.      Adequate notice of the Motion and the Hearings, made in the manner described in the Motion, including the form of the Disclosure Statement Hearing Notice annexed as Exhibit B to the Motion, was sufficient and appropriate under the circumstances and complied with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

D.      The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code.

E.      The Disclosure Statement complies with Bankruptcy Rule 3016 and describes in specific and conspicuous language all acts to be enjoined by, and identifies the entities subject to, all Plan injunctions against conduct not otherwise enjoined under the Bankruptcy Code.

F.      The Voting Procedures attached to the Motion as Exhibit C, as amended by the Confirmation Procedures Amendments, provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and the Bankruptcy Rules.

G.      The Ballots and Master Ballots attached to the Motion collectively as Exhibit D, as amended by the Confirmation Procedures Amendments, are sufficiently consistent with Official Form No. 14, adequately address the particular needs of these chapter 11 cases, and are appropriate for each class of claims and interests entitled to vote to accept or reject the Plan, including on a provisional basis.

H.      Unless otherwise provided in the Plan, Ballots need not be provided to Holders of Claims in Classes that are designated as unimpaired under the Plan or to parties that are not entitled to vote on the Plan.  The form of Notice of Non-Voting Class Status attached to the Motion as Exhibit E, as amended by the Confirmation Procedures Amendments, is adequate and sufficient notice to be sent to Holders of Claims in unimpaired classes who are not entitled to

vote on the Plan and who will not receive a provisional Ballot.  The form of Notice of Non-Voting Claim Status attached to the Confirmation Procedures Amendments as <u>Exhibit G</u> is adequate and sufficient notice to be sent to Holders of Claims in Class 9 who are being provisionally solicited, but certain of who will not be entitled to vote under the Voting Procedures even if it is determined that Class 9 is impaired.

I.      Pursuant to Bankruptcy Rule 3017(d), sufficient cause exists to set the Record Date at a date other than the date the order approving the Disclosure Statement is entered.

J.      In accordance with Bankruptcy Rule 3017(e), the procedures set forth in the Voting Procedures for transmitting Solicitation Packages to beneficial holders of stock of the Debtors are adequate.

K.      The contents of the Solicitation Packages, as set forth in the Voting Procedures, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties.

L.      The combination of direct and published notice of the Plan and Confirmation Hearing, as set forth in both the Motion and the Voting Procedures, and the form of the Confirmation Hearing Notice attached to the Motion as <u>Exhibit F</u>, as amended by the Confirmation Procedures Amendments, and the form of the Publication Notice attached to the Confirmation Procedures Amendments as <u>Exhibit H</u> (the "<u>Publication Notice</u>") are adequate and sufficient and satisfy the requirements of due process with respect to all known and unknown creditors of the Debtors.

M.      The form of the Notice to Counterparties to Executory Contracts and Unexpired Leases attached to the Confirmation Procedures Amendments as <u>Exhibit I</u> (the

"Notice to Counterparties to Executory Contracts and Unexpired Leases") is adequate and sufficient notice to counterparties to executory contracts and unexpired leases of the treatment of executory contracts and unexpired leases under the Plan.

N.      The form of the Notice of Procedures Relating to Payment of Post-Petition Interest on General Unsecured Claims attached to the Confirmation Procedures Amendments as Exhibit J (the "Post-Petition Interest Procedures Notice") is ~~adequate and sufficient notice~~**appropriate to be sent** to Holders of General Unsecured Claims ~~of the procedures in the Plan relating to the payment of post-petition interest with respect to General Unsecured Claims~~.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Disclosure Statement is APPROVED.

*Confirmation Hearing*:

3.      A hearing (the "Confirmation Hearing") to consider confirmation of the Plan will commence on the **[_____], 2009, at [__]:[__] a.m.**, prevailing Eastern time, before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219.

4.      The Confirmation Hearing may be continued from time to time by announcing such continuance in open court and providing written notice to parties that have filed Voting Motions or objections to confirmation of the Plan.

*Plan Objection Deadline*:

5.      The deadline to file objections to confirmation of the Plan (the "Plan Objection Deadline") is **4:00 p.m., prevailing Eastern time on [_____], ____.**

K&E 13248030.9
**K&E 13248030.10**

6.      All objections to confirmation of the Plan must be served in a manner so that they are underlined actually underlined received on or before 4:00 p.m., prevailing Eastern time, on the Plan Objection Deadline by (a) counsel to the Debtors, (b) counsel to each of the statutory committees appointed in these chapter 11 cases, (c) counsel to each of the future claimants' representatives appointed in these chapter 11 cases, (d) counsel to Sealed Air Corporation and Cryovac, Inc., (e) counsel to Fresenius, and (f) the United States Trustee (collectively, the "Notice Parties"). The addresses for service upon the Notice Parties are included in Section 11.11 of the Plan, except for the United States Trustee, which shall be served at the following address:

**Office of the United States Trustee**
Attn: David Klauder, Esq.
844 King Street, Suite 2207
Wilmington, Delaware 19801

7.      All objections to the Plan shall (a) state with particularity the legal and factual grounds for such objection, (b) provide, where applicable, the specific text, if any, that the objecting party believes to be appropriate to insert into the Plan, and (c) describe the nature and amount of the objector's Claim or Equity Interest.

8.      Objections not timely filed and served in accordance with the provisions of this Confirmation Procedures Order shall not be heard and shall be overruled.

9.      The Debtors and the Plan Proponents are authorized to file an omnibus reply to any timely filed objection(s) and/or supplemental brief in support of confirmation on or before the date which is seven (7) calendar days before the Confirmation Hearing, which shall be served by electronic or facsimile transmission or overnight mail on the same date upon the relevant objecting parties and the Notice Parties.

10.     The Debtors are authorized to file the Plan Supplement described in the Plan on or before the date that is ten (10) calendar days before the Plan Objection Deadline, and

shall serve the Plan Supplement on the Notice Parties and all parties requesting notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

*Voting Deadline*:

   11. All Ballots or Master Ballots accepting or rejecting the Plan must be received by BMC Group, Inc. (the "Voting Agent") by 4:00 p.m., prevailing Eastern time, no later than _____, ____ (the "Voting Deadline"), at the following address:

| By U.S. Mail: | By Courier: |
|---|---|
| BMC Group, Inc. | BMC Group, Inc. |
| Attn:  W. R. Grace Voting Agent | Attn:  W. R. Grace Voting Agent |
| P.O. Box 2007 | 17850 Lake Drive East |
| Chanhassen, MN 55317-2007 | Chanhassen, MN 55317 |

*Form and Manner of Confirmation Hearing and Solicitation Packages Notice:*

   12. The Confirmation Hearing Notice, substantially in the form attached to the Motion as Exhibit F, as amended by the Confirmation Procedures Amendments, is hereby APPROVED.

   13. The Publication Notice, substantially in the form attached to the Confirmation Procedures Amendments as Exhibit H, is hereby APPROVED.

   14. The Debtors shall serve the Confirmation Hearing Notice by first-class mail on or before a date that is not less than 25 calendar days before the Plan Objection Deadline on the parties described in the Motion.

   15. Not less than 25 calendar days before the Plan Objection Deadline, or as soon as practical thereafter, the Debtors shall publish (a) the Confirmation Hearing Notice (as may be reasonably modified to accommodate publication size limitations) once in each of *USA Today*, *The Wall Street Journal* and *The New York Times,* and (b) the Publication Notice once in (i) Andrews's Asbestos Litigation Reporter and Mealey's Litigation Report: Asbestos, (ii) the Sunday newspaper supplements *Parade* magazine and *USA Weekend* magazine, (iii) *Newsweek*,

*TV Guide*, *Sports Illustrated* and *U.S. News and World Report* and (iv) appropriate Canadian publications consistent with the Debtors' previous noticing programs in Canada (or comparable publications, as determined by the Debtors' notice consultant).

*Voting Record Date*:

16.     Pursuant to Bankruptcy Rules 3017(d) and 3018(a), the record date for purposes of determining which creditors and interest holders are entitled to vote on the Plan shall be the date which is two (2) business days following the date on which this Court enters this Confirmation Procedures Order approving the Disclosure Statement (the "Voting Record Date"). The Debtors shall specify the Voting Record Date in the Confirmation Hearing Notice.  Only Holders of Claims and Equity Interests as of the Voting Record Date shall be entitled to vote to accept or reject the Plan.

17.     With respect to a Claim transferred after the applicable proof of claim has been filed, the transferee shall be entitled to receive a Solicitation Package and cast a Ballot on account of such Claim only if (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.

*Voting Procedures and Solicitation*:

18.     The Voting Procedures attached to the Motion as Exhibit B, as amended by the Confirmation Procedures Amendments, including the special procedures relating to the solicitation and tabulation of Asbestos PI and Asbestos PD Claims, are APPROVED.

19.     Not more than fifteen (15) calendar days after the date on which this Court enters this Confirmation Procedures Order (the "Solicitation Date"), the Debtors shall mail the

Solicitation Packages, which shall consist of copies of: (i) the Confirmation Hearing Notice; (ii) this Confirmation Procedures Order without exhibits; (iii) the Disclosure Statement, (iv) the Exhibit Book (with the Plan attached as an Exhibit therein); (v) the Voting Procedures; (vi) one or more applicable Ballots and/or Master Ballots, together with voting instructions and information relative to the return of the Ballots or Master Ballots, or a Notice of Non-Voting Claim Status (if applicable); and (vii) pre-addressed return envelopes, to the parties entitled to vote on the Plan pursuant to the Voting Procedures. The Debtors shall also cause the Plan, Disclosure Statement, Confirmation Hearing Notice, Exhibit Book and this Confirmation Procedures Order (with all referenced exhibits) to be posted on their website at www.grace.com and the website maintained by the Voting Agent at www.bmcgroup.com/wrgrace.

20.     To avoid duplication and reduce expenses, Claimants who have more than one Claim shall receive only one Solicitation Package, but shall receive one Ballot for each different Claim. Each Claim held by a particular creditor as a result of such Claim having been transferred to such creditor by another creditor (or former creditor), either before or after the Petition Date, constitutes a separate Claim.

21.     If a Claimant has filed proofs of claim against more than one Debtor for the same debt obligation, the Claimant shall receive only a single Ballot with respect to that obligation and the corresponding vote shall count as a single vote, whether or not the Claimant submits multiple Ballots. Ballots solicited and tabulated pursuant to this paragraph may be used to confirm the Plan only if the Court orders limited substantive consolidation of the Debtors' estates as the Plan requests.

22.     On or before the Solicitation Distribution Date, the Debtors shall mail or cause to be mailed copies of this Confirmation Procedures Order (without any referenced

exhibits), the Confirmation Hearing Notice, together with the Notice of Non-Voting Class Status, to all Holders of Claims or Equity Interests in Classes which are not entitled to vote to accept or reject the Plan and who are not being provisionally solicited under the Voting Procedures.

23.    On or before the Solicitation Distribution Date, the Debtors shall mail or cause to be mailed copies of the Confirmation Hearing Notice and the Notice to Counterparties to Executory Contracts and Unexpired Leases to all non-Debtors parties to executory contracts or unexpired leases listed on the Debtors' schedules of executory contracts and unexpired leases filed previously with the Court.

24.    On or before the Solicitation Distribution Date, the Debtors shall mail or cause to be mailed copies of the Confirmation Hearing Notice to all parties requesting notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002 who are not otherwise Holders of Claims or Equity Interests in Classes that are entitled to vote to accept or reject the Plan.

25.    The Debtors are excused from re-mailing Solicitation Packages or Notices, as the case may be, to those entities whose addresses differ from the addresses in the claims register or the Debtors' records as of the Voting Record Date, or whose Solicitation Packages or Confirmation Hearing Notices are returned for any other reason not the fault of the Debtors.

*Form of Ballots and Notices*:

26.    The Ballots and Master Ballots, substantially in the forms collectively attached to the Motion as Exhibit B, as amended by the Confirmation Procedures Amendments, are hereby APPROVED.

27.    All votes to accept or reject the Plan must be cast by using the appropriate Ballot and Master Ballot.

28.     The Notice of Non-Voting Class Status, substantially in the form attached to the Motion as <u>Exhibit E</u>, as amended by the Confirmation Procedures Amendments, is hereby APPROVED.

29.     The Notice of Non-Voting Claim Status, substantially in the form attached to the Confirmation Procedures Amendments as <u>Exhibit G,</u> is hereby APPROVED.

30.     The Post-Petition Interest Procedures Notice, substantially in the form attached to the Confirmation Procedures Amendments as <u>Exhibit J</u>, is hereby APPROVED, and shall be sent to Holders of General Unsecured Claims in Class 9 in connection with the distribution of Solicitation Packages to such Holders.

*Voting Motions and Classification Objections:*

31.     Any holder of a Claim that seeks to challenge the amount of its Claim for voting purposes may file a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim in a different amount for purposes of voting (a "<u>Voting Motion</u>").  A Voting Motion must be filed on or before the Voting Deadline, and must be accompanied by a declaration by an appropriate representative of a moving party that (a) attaches a completed Ballot indicating how such party intends to vote on the Plan, (b) certifies the proposed voting amount of the applicable Claim and (c) attaches any evidence in support of the proposed voting amount of such Claim.  As to any Holder of a Claim filing a Voting Motion, such Holder's vote shall not be counted other than as already provided in the Voting Procedures unless temporarily allowed by the Bankruptcy Court for voting purposes, after notice and a hearing.  A Holder of a Claim who timely Files a Voting Motion with a properly completed declaration as required above does not need to submit a Ballot to the Voting Agent.

32.     Any Holder of a Claim who intends to pursue an objection to confirmation of the Plan on the grounds that such Holder's Claim is not properly classified may request a

Ballot from the Voting Agent for provisional voting under a different Class and may vote to accept or reject the Plan pursuant to the following procedures:

      (a)    The objecting Claimant must File a declaration with the Bankruptcy Court (a "**Disputed Classification Declaration**") on or before the Voting Deadline, which attaches (i) the Claimant's completed original Ballot indicating the Claimant's vote if the Debtors' classification of the Claim at issue is upheld and (ii) the Claimant's completed provisional Ballot indicating the Claimant's vote if it prevails on its classification objection.

      (b)    The Disputed Classification Declaration also must summarize the basis for the Claimant's classification objection.

      (c)    If the objecting Claimant also disputes the amount of its Claim for voting purposes, the Claimant must File a Voting Motion pursuant to Section 10(f)(i) of the Voting Procedures in addition to Filing a Disputed Classification Declaration.

      (d)    Unless otherwise ordered by the Bankruptcy Court, the Debtors shall report to the Bankruptcy Court in connection with the Confirmation Hearing the tabulation of votes for all Claims for which a Disputed Classification Declaration has been Filed using both (i) the original classification of the Claims that are subject to Disputed Classification Declarations and (ii) a provisional classification reflecting the requests in the Disputed Classification Declarations.

      (e)    A Claimant who Files a Disputed Classification Declaration must File its objection to the Plan and its classification of such Claimant's Claims on or before the Plan Objection Deadline.

      33.    The Debtors are authorized to correct and to otherwise make non-substantive changes to the Voting Procedures, Ballots, Master Ballots and other notices approved by this Confirmation Procedures Order without further order of the Court before they are mailed to parties in interest, including changes to correct typographical, grammatical and/or formatting errors or omissions and to conform the Voting Procedures, Ballots, Master Ballots and other notices to any modifications to the Plan and/or Disclosure Statement.

34.     The Debtors are authorized and empowered to take all actions and execute such other documents as may be necessary to implement the relief granted herein.

35.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Confirmation Procedures Order.

Dated:_____, 2008

_____
Honorable Judith K. Fitzgerald

K&E 13248030.9
**K&E 13248030.10**

Exhibit A

Document comparison done by Workshare DeltaView on Thursday, November 20, 2008 2:27:46 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://NYDMS/LEGAL/13248030/9 |
| Document 2 | interwovenSite://NYDMS/LEGAL/13248030/10 |
| Rendering set | Basic K&E |

| Legend: |
|---|
| **Insertion** |
| ~~Deletion~~ |
| *Moved from* |
| *Moved to* |
| Style change |
| Format change |
| Moved deletion |

| Inserted cell | |
|---|---|
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| **No.** | **Change** | **Text** |
| 1 | Deletion | K&E 13248030.9 |
| 2 | Insertion | K&E 13248030.10 |
| 3 | Deletion | K&E 13248030.9 |
| 4 | Insertion | K&E 13248030.10 |
| 5-6 | Change | "Interest Procedures...of General Unsecured" changed to "Interest Procedures...of General Unsecured" |
| 7 | Change | "Holders of General...Unsecured Claims." changed to "Holders of General Unsecured Claims." |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 3 |
| Deletions | 4 |
| Moved from | 0 |
| Moved to | 0 |

| | |
|---|---|
| Style change | 0 |
| Format changed | 0 |
| Total changes | 7 |

## W. R. GRACE & CO. ET AL.
## VOTING PROCEDURES

The following procedures (the "**Voting Procedures**") govern the distribution of solicitation materials with respect to the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of November __, 2008* (as it may be amended, supplemented or modified, the "**Plan**"), the return of Ballots and Master Ballots for purposes of voting to accept or reject the Plan, and the tabulation of such votes with respect to same.

The Voting Procedures set forth in this document are supplemented by the instructions accompanying the Ballots and Master Ballots that will be included in the Solicitation Packages. Capitalized terms used herein shall have the meanings set forth in section 12 hereof or, if not defined herein, in the Plan.

1.    **Publication Notice:**

    a.    **General Publication Notice**:  The Debtors will cause the Confirmation Hearing Notice to be published once in the following publications on a date not less than twenty-five (25) calendar days before the Plan Objection Deadline: the weekday edition of the national editions of *USA Today, The Wall Street Journal*, and *The New York Times.*

    b.    **Additional Publication Notice**:  The Debtors will cause the Publication Notice to be published once in the following publications on a date not less than twenty-five (25) calendar days before the Plan Objection Deadline or as soon as possible thereafter: (a) Andrews's Asbestos Litigation Reporter and Mealey's Litigation Report: Asbestos, (b) the Sunday newspaper supplements *Parade* magazine and *USA Weekend* magazine, (c) *Newsweek*, *TV Guide*, *Sports Illustrated* and *U.S. News and World Report*, and (d) appropriate Canadian publications consistent with the Debtors' previous noticing programs in Canada (or comparable publications, as determined by the Debtors' notice consultant).

1

Exhibit C

K&E 13254000.21
**K&E 13254000.22**

2.      **Distribution of Solicitation Packages - Generally:**[1]

a.      **Determination of Holders of Record:**  Except as otherwise provided for herein, appropriate Solicitation Packages will be served upon the Entity that holds a Claim or Equity Interest entitled to vote as of the Voting Record Date, and the Debtors will have no obligation to cause a Solicitation Package to be served upon any subsequent Holder of such Claim (as may be evidenced by any notice of assignment of such Claim entered on the Bankruptcy Court's docket or that only becomes effective after the Voting Record Date or otherwise) or Equity Interest.

b.      **Solicitation Date:**  On or before the date that is fifteen (15) calendar days following the date on which the Bankruptcy Court enters the Disclosure Statement Order, the Voting Agent will cause Solicitation Packages to be distributed to all known Holders of Claims and Equity Interests who are entitled to vote pursuant to these Voting Procedures.

c.      **Claims Against Multiple Debtors.**  Holders of Claims that are eligible to vote and that filed identical Claims against multiple Debtors shall be entitled to receive one Solicitation Package and one Ballot on account of such identical Claims.

d.      **Obtaining Additional Copies:**  Copies of the Plan, Disclosure Statement, Exhibit Book and the Disclosure Statement Order (with exhibits) are available on the Debtors' website at www.grace.com and the website maintained by the Voting Agent at www.bmcgroup.com/wrgrace.   Parties in interest may also request copies by sending an email to wrgrace@bmcgroup.com or via U.S. mail by sending a written request to the Voting Agent at:  BMC Group, Inc., Attn:  W. R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913.

e.      **Exception for Undeliverable Addresses:**  Notwithstanding any provision in these Voting Procedures to the contrary, the Voting Agent shall not be required to mail a Solicitation Package to any Entity from which the notice of the Bankruptcy Court hearing to approve the Disclosure Statement was returned as undeliverable by the postal service, unless the Debtors or the Voting Agent are provided with an accurate address for such Entity before the Voting Record Date.

f.      **Parties to Executory Contracts and Unexpired Leases:**  Each Entity that is listed on the Debtors' Schedules of Executory Contracts or is otherwise known to be a party to an executory contract or an unexpired lease with a Debtor, irrespective of whether, pursuant to section 365 of the Bankruptcy Code, such contract or lease is, in fact, an "executory contract" or "unexpired lease," will not receive a Solicitation Package on account of the contract or lease, but shall be

---

[1]     See sections 3, 4, 5, 6 and 7 of these Voting Procedures, which govern the manner in which Solicitation Packages are to be distributed with respect to Holders of Asbestos PI Claims, Holders of Equity Interests in the Parent, Holders of Asbestos PD Claims, Holders of CDN ZAI PD Claims and Holders of General Unsecured Claims, respectively.

Exhibit C

sent, on or before the Solicitation Date, a Confirmation Hearing Notice and a Notice to Counterparties to Executory Contracts and Unexpired Leases.

**3.    Distribution of Solicitation Packages To, and Special Procedures for, Holders of Asbestos PI Claims:**

    a.    **Distribution of Solicitation Packages.**  The Voting Agent will cause Solicitation Packages to be served with respect to Holders of Asbestos PI Claims as follows:

        i.    **To Attorneys Representing Individual Holders of Asbestos PI Claims:**

            (A)    A single Solicitation Package will be served upon each attorney known by the Debtors (based on the Debtors' records and any list of attorneys furnished to the Debtors on or before the entry of the Disclosure Statement Order) to represent or potentially to represent individuals who may hold or assert Asbestos PI Claims. *Solicitation Packages will <u>not</u> be served upon the individual Holders of Asbestos PI Claims, except (I) where an individual Holder of an Asbestos PI Claim requests a Solicitation Package in accordance with these Voting Procedures, (II) where a proof of claim with respect to an Asbestos PI Claim is signed and filed by an individual Holder of an Asbestos PI Claim, rather than the Holder's attorney, prior to the Voting Record Date or (III) where an attorney timely advises the Voting Agent, pursuant to section 3(a)(i)(B) below, of the names and addresses of individuals who hold or may assert Asbestos PI Claims who should receive their own Solicitation Packages.*

            (B)    If an attorney who receives a Solicitation Package either (I) is unable to certify with respect to any Holder of an Asbestos PI Claim represented by such attorney that such attorney has the authority to vote on the Plan on behalf of such Holder (*see* section 3(c)(ii) below) or (II) wishes any Holder of an Asbestos PI Claim represented by such attorney to cast his or her own Ballot on the Plan, such attorney shall, no later than twenty-one (21) days after the Solicitation Date, furnish the Voting Agent with the name, address and last four digits of the social security number of each such Holder, together with any cover letter which said attorney may wish to transmit to the Holders so designated, which the Voting Agent shall include with the Solicitation Package to be transmitted to said Holders.

            (C)    Attorneys who wish their clients to receive Solicitation Packages for informational purposes (without a Ballot) must provide such clients' names, addresses and the last four digits of their social security numbers, together with a cover letter from such attorney to

K&E 13254000.21
**K&E 13254000.22**

be included with the Solicitation Packages, no later than twenty-one (21) days after the Solicitation Date.

### ii.   To Individuals Who Hold or Assert Asbestos PI Claims:

(A)   **Transmittal by the Voting Agent.** If either (I) an individual who holds or asserts an Asbestos PI Claim requests a Solicitation Package either by written notice to the Voting Agent and provides a mailing address therewith, or (II) an attorney who represents or purports to represent the Holder of an Asbestos PI Claim furnishes names and addresses of individuals in accordance with section 3(a)(i)(B) hereof to the Voting Agent, then the Voting Agent will cause a Solicitation Package to be mailed, together with a Ballot, directly to each such individual who holds or asserts such Asbestos PI Claim(s) within seven (7) days after receiving such request. In addition, if an individual who holds or asserts an Asbestos PI Claim signs and files (or has already filed) a proof of Asbestos PI Claim prior to the Voting Record Date, then the Voting Agent will cause a Solicitation Package, together with an appropriate Ballot, to be mailed directly to each such individual on or before the Solicitation Date.

(B)   **Transmittal by an Attorney.** An attorney may choose to transmit Solicitation Packages to his or her clients directly. If an attorney chooses to do so, such attorney must, no later than twenty-one (21) days after the Solicitation Date, furnish a written request to the Voting Agent for a specified amount of Solicitation Packages and individual Ballots, which will be provided to such attorney within seven (7) days after receipt of such written request. The Debtors will reimburse such attorney for the actual postage incurred by the attorney. Attorneys seeking reimbursement shall submit reasonable evidence of postage expenses incurred in order to obtain such reimbursement.

### iii.   To Holders of Indirect PI Trust Claims:

The Voting Agent will cause a Solicitation Package to be served upon each Holder of an Indirect PI Trust Claim as identified by the Debtors based on their records and review of the Claims filed on or before the March 2003 Bar Date and the Schedules of Liabilities (the "**Schedules**") filed by the Debtors with the Bankruptcy Court, provided that the Indirect PI Trust Claim has not yet been withdrawn, disallowed or expunged by an order of the Bankruptcy Court entered on or before the Voting Record Date.

### b.   Calculation of Votes With Respect to Asbestos PI Claims

i.   **Individual Holders of Asbestos PI Claims.** Each Holder of an Asbestos PI Claim (other than an Indirect PI Trust Claim, discussed in section

Exhibit C

3(b)(ii) below) will have a single vote on the Plan in an amount based upon the type of disease that forms the basis for such Holder's asserted Asbestos PI Claim. The amount of an Asbestos PI Claim, to be used solely for purposes of voting to accept or reject the Plan, is as follows:

(A)     If the basis for the Asbestos PI Claim is alleged to be **"MESOTHELIOMA"** (**Disease Level VIII**) (according to the criteria set forth in the TDP, which criteria will be described in the instructions on the Ballot), then each Holder of an Asbestos PI Claim of the type shall vote his or her Asbestos PI Claim in an amount equal to the scheduled value for "Mesothelioma" in the TDP (which scheduled value will be set forth in the instructions to the Ballot). **Claim amount for voting purposes only: $180,000.**

(B)     If the basis for the Asbestos PI Claim is alleged to be **"LUNG CANCER 1"** (**Disease Level VII**) (according to the criteria set forth in the TDP, which criteria will be described in the instructions on the Ballot), then each Holder of an Asbestos PI Claim of the type shall vote his or her Asbestos PI Claim in an amount equal to the scheduled value for "Lung Cancer 1" in the TDP (which scheduled value will be set forth in the instructions to the Ballot). **Claim amount for voting purposes only: $42,000.**

(C)     If the basis for the Asbestos PI Claim is alleged to be **"LUNG CANCER 2"** (**Disease Level VI**) (according to the criteria set forth in the TDP, which criteria will be described in the instructions on the Ballot), then each Holder of an Asbestos PI Claim of the type shall vote his or her Asbestos PI Claim in an amount equal to the scheduled value for "Lung Cancer 2" in the TDP (which average value will be set forth in the instructions to the Ballot). **Claim amount for voting purposes only: $14,000.**

(D)     If the basis for the Asbestos PI Claim is alleged to be **"OTHER CANCER"** (**Disease Level V**) (according to the criteria set forth in the TDP, which criteria will be described in the instructions on the Ballot), then each Holder of an Asbestos PI Claim of the type shall vote his or her Asbestos PI Claim in an amount equal to the scheduled value for "Other Cancer" in the TDP (which scheduled value will be set forth in the instructions to the Ballot). **Claim amount for voting purposes only: $20,000.**

(E)     If the basis for the Asbestos PI Claim is alleged to be **"SEVERE ASBESTOSIS"** (**Disease Level IV-A**) (according to the criteria set forth in the TDP, which criteria will be described in the instructions on the Ballot), then each Holder of an Asbestos PI Claim of the type shall vote his or her Asbestos PI Claim in an amount equal to the scheduled value for "Severe Asbestosis" in the

5

Exhibit C

K&E 13254000.21
**K&E 13254000.22**

TDP (which scheduled value will be set forth in the instructions to the Ballot).  **Claim amount for voting purposes only: $50,000.**

(F)     If the basis for the Asbestos PI Claim is alleged to be **"SEVERE DISABLING PLEURAL DISEASE"** (**Disease Level IV-B**) (according to the criteria set forth in the TDP, which criteria will be described in the instructions on the Ballot), then each Holder of an Asbestos PI Claim of the type shall vote his or her Asbestos PI Claim in an amount equal to the scheduled value for "Severe Disabling Pleural Disease" in the TDP (which scheduled value will be set forth in the instructions to the Ballot).  **Claim amount for voting purposes only: $50,000.**

(G)     If the basis for the Asbestos PI Claim is alleged to be **"ASBESTOSIS/PLEURAL DISEASE"** (**Disease Level III**) (according to the criteria set forth in the TDP, which criteria will be described in the instructions on the Ballot), then each Holder of an Asbestos PI Claim of the type shall vote his or her Asbestos PI Claim in an amount equal to the scheduled value for "Asbestosis/Pleural Disease" in the TDP (which scheduled value will be set forth in the instructions to the Ballot).  **Claim amount for voting purposes only: $7,500.**

(H)     If the basis for the Asbestos PI Claim is alleged to be **"ASBESTOSIS/PLEURAL DISEASE"** (**Disease Level II**) (according to the criteria set forth in the TDP, which criteria will be described in the instructions on the Ballot), then each Holder of an Asbestos PI Claim of the type shall vote his or her Asbestos PI Claim in an amount equal to the scheduled value for "Asbestosis/Pleural Disease" in the TDP (which scheduled value will be set forth in the instructions to the Ballot).  **Claim amount for voting purposes only: $2,500.**

(I)     If the basis for the Asbestos PI Claim is alleged to be **"OTHER ASBESTOS DISEASE"** (**Disease Level I**) (according to the criteria set forth in the TDP, which criteria will be described in the instructions on the Ballot), then each Holder of an Asbestos PI Claim of the type shall vote his or her Asbestos PI Claim in an amount equal to the scheduled value for "Other Asbestos Disease" in the TDP (which scheduled value will be set forth in the instructions to the Ballot).  **Claim amount for voting purposes only: $300.**

***The designation of the disease level by the Holder of an Asbestos PI Claim or his or her attorney and the value assigned to the Holder's claim will <u>not</u> be binding upon the Holder, the Debtors, the Asbestos PI***

6                                                      <u>Exhibit C</u>

*Trust or any other Entity for any purpose other than confirming the Plan.*

Only one (1) disease level may be selected for each Holder of an Asbestos PI Claim.  In the event more than one (1) disease level is selected by or on behalf of a Holder of an Asbestos PI Claim, the Voting Agent shall count solely the selected disease level with the highest value for voting purposes.  In the event a Ballot or Master Ballot fails to indicate the disease level of a Holder of an Asbestos PI Claim, the vote of the Holder of such Asbestos PI Claim shall be counted for voting purposes only in the amount of $1.00.

ii.     **Indirect PI Trust Claims.**  Each Holder of an Indirect PI Trust Claim **that is unliquidated and/or contingent** will have a single vote in the amount, for voting purposes only, of $1.00, which does not constitute an allowance of such Claims for purposes of distribution ~~and~~**.  However, if the Holder's Claim has been allowed in a liquidated amount, the Holder shall be entitled to vote the allowed liquidated amount of such Claim.  This provision** is without prejudice to the rights of the Holders of such ~~c~~**C**laims or the Asbestos PI Trust in any other context.

iii.    **Required Certifications Regarding Compensable Claim.**  No vote for or against the Plan by or on behalf of a Holder of an Asbestos PI Claim (other than an Indirect PI Trust Claim) shall be counted by the Voting Agent unless the Ballot or Master Ballot reflecting such vote is submitted to the Voting Agent with written certifications, in the form contained on the Ballot and/or Master Ballot, which certifications shall be under penalty of perjury.  Individual Ballots shall contain a certification that (A) the Holder of such Asbestos PI Claim has experienced exposure to an asbestos-containing material or product with respect to which the Debtors have legal liability, and (B) the Holder of such Asbestos PI Claim has the disease level asserted on such Holder's Ballot, based on medical records or similar documentation in the possession of the party/parties specified on the Ballot.  Master Ballots shall contain the certifications set forth in section 3(c)(ii) below.

c.      **Completion and Return of Master Ballots by Attorneys for Holders of Asbestos PI Claims.**  Attorneys who represent individual Holders of Asbestos PI Claims shall be permitted to cast Ballots for such Holders, but only to the extent such attorneys have the authority under applicable bankruptcy or non-bankruptcy law to do so, and so certify in the manner set forth herein and on the Master Ballots respecting Asbestos PI Claims.  Each attorney voting on behalf of the individuals he or she represents who hold or assert Asbestos PI Claims shall complete a Master Ballot, which will set forth the votes cast by such attorney on behalf of any such clients.  The following procedures will govern the completion and return of a Master Ballot.

i.      **Summarizing Votes on the Master Ballot:**

Exhibit C

(A)     The Master Ballot shall contain the following options for voting, one of which shall be marked by the attorney:

(I)     "**ALL** of the individuals listed on the Exhibit accompanying this Master Ballot, all of whom are Holders of Class 6 Asbestos PI Claims, **ACCEPT** the Plan."

(II)    "**ALL** of the individuals listed on the Exhibit accompanying this Master Ballot, all of whom are Holders of Class 6 Asbestos PI Claims, **REJECT** the Plan."

(III)   "**SOME** of the individuals listed on the Exhibit accompanying this Master Ballot, all of whom are Holders of Class 6 Asbestos PI Claims, **ACCEPT** the Plan, while other individuals on the Exhibit accompanying this Master Ballot **REJECT** the Plan."

(B)     The attorney completing the Master Ballot also will have to complete a summary of votes on the Plan for each disease level of Asbestos PI Claims for which the attorney is voting on the Plan, substantially in the form below:

| Disease Level | Votes **Accepting** the Plan | Votes **Rejecting** the Plan | Total Votes |
|---|---|---|---|
| Mesothelioma (Level VIII) | | | |
| Lung Cancer 1 (Level VII) | | | |
| Lung Cancer 2 (Level VI) | | | |
| Other Cancer (Level V) | | | |
| Severe Asbestosis (Level IV-A) | | | |
| Severe Disabling Pleural Disease (Level IV-B) | | | |
| Asbestosis/Pleural Disease (Level III) | | | |
| Asbestosis/Pleural Disease (Level II) | | | |
| Other Asbestos Disease (Level I) | | | |
| **Total Votes** | | | |

Exhibit C

K&E 13254000.21

**K&E 13254000.22**

ii.  **Certification by Attorney of Authority to Vote and Related Issues:**

(A)  The Master Ballot will contain certifications, which shall be under penalty of perjury pursuant to 28 U.S.C. § 1746, to be completed by the attorney preparing and signing the Master Ballot pursuant to which such attorney will certify that he or she (I) has the authority under applicable bankruptcy or non-bankruptcy law to cast a Ballot on the Plan on behalf of the Holders of each of the Asbestos PI Claims listed on the exhibit to the Master Ballot, and (II) has the authority to represent the disease category indicated with respect to each Holder of an Asbestos PI Claim listed on the exhibit attached to the Master Ballot, which disease category is true and correct.

(B)  If the attorney is unable to make such certifications on behalf of any Holder of an Asbestos PI Claim whom he or she represents, the attorney may *not* cast a vote on behalf of such claimant and *must* timely send the information relating to the names and addresses of its clients for whom he or she may not vote to the Voting Agent in accordance with section 3(a)(i)(B) of these Voting Procedures.

iii.  **Summary Sheet Exhibit to the Master Ballot:**

(A)  Each attorney shall prepare an electronic list on a CD-ROM, which list should be in Excel™ or a comparable application, as an Exhibit to the Master Ballot.  The Exhibit should include each of the following fields (in the order listed):  (I) the last four digits of the Social Security number of the Claimant; (II) the last name of the Claimant; (III) the first name of the Claimant; (IV) the street address of the Claimant; (V) the town of the Claimant; (VI) the state of the Claimant; (VII) the zip code of the Claimant; (VIII) the disease level of the Claimant; and (IX) whether the Claimant votes to accept or reject the Plan.  A sample template is set forth below and may also be downloaded in Excel™ format from the Voting Agent's website at  www.bmcgroup.com/wrgrace.  *If an attorney certifies that he/she does not have access to Excel™ or a comparable application __and__ represents fewer than 100 Holders of Asbestos PI Claims, then the attorney may provide the Exhibit in hard copy.*

Sample Exhibit

| Last Four Digits of Soc. Sec. No. | Last Name | First Name | Street Address | Town | State | Zip Code | Disease Level | Accept or Reject |
|---|---|---|---|---|---|---|---|---|
| 1234 | Smith | John | Any Street | Town | State | 12345 | Mesothelioma | Accept |

9                                                                Exhibit C

(B)     In the event of any discrepancy between the information contained in a Master Ballot and the summary of votes, as required by section 3(c)(i) hereof, and the information contained in the summary sheet exhibit to the Master Ballot described above, the summary sheet exhibit to the Master Ballot shall control.

(C)     The CD-ROM Exhibit required under section 3(c)(i)(A) above must be enclosed with the Master Ballot, and the completed Master Ballot and Exhibit must be returned to the Voting Agent in accordance with sections 8(d) and (e) of these Voting Procedures.

**4.     Distribution of Solicitation Packages -- To Holders of Parent Common Stock.**

a.     **Equity Interests:**  Except as otherwise provided herein, the following procedures shall apply to solicitation with respect to the Holders of Parent Common Stock:

i.     **List of Record Holders:** Pursuant to Bankruptcy Rules 1007(i) and 3017(e), within three (3) business days after the Voting Record Date, the Transfer Agent shall provide to the Voting Agent (A) a copy of the list of the names, addresses, and holdings of the Holders of Parent Stock as of the Voting Record Date in an electronic file, and (B) such other information as the Voting Agent deems reasonable and necessary to perform its duties hereunder.  The Voting Agent shall use such list and other information only for purposes consistent with these Voting Procedures.

ii.     **Determination of Number of Beneficial Owners:**  As soon as practicable after the entry of the Disclosure Statement Order, the Voting Agent shall attempt to contact the institutional Holders of record of Parent Common Stock or their agent to ascertain the number of beneficial owners of such Parent Common Stock holding through such Nominees.

iii.     **Distribution to Record Holders Other than Nominees:**  The Voting Agent will cause a Solicitation Package to be served upon each registered record Holder (other than Nominees), as of the Voting Record Date, of any Parent Common Stock.

iv.     **Distribution to Nominees**:  For Parent Common Stock, the Voting Agent will cause Solicitation Packages to be served upon each Nominee in sufficient numbers estimated to allow dissemination of Solicitation Packages to each of the beneficial owners of Parent Common Stock for which it serves with instructions to each Nominee to contact the Voting Agent for additional sets of Solicitation Packages, if necessary, and promptly (within five (5) business days after receipt of the Solicitation Packages) distribute the Solicitation Packages to the beneficial owners for

K&E 13254000.21
**K&E 13254000.22**

which it serves.  Upon request by a Nominee, the Voting Agent shall send any such Entity a Solicitation Package.

(A)     **Nominees' Options for Obtaining Votes**:  Nominees shall have two options for obtaining votes of beneficial owners of Parent Common Stock, consistent with customary practices for obtaining votes of securities held in street name.

(I)     The Nominee may "prevalidate" the individual Ballot contained in the Solicitation Package and send it to the beneficial owner of Parent Common Stock for voting within five (5) business days after the receipt by such Nominee of the Solicitation Package.  The beneficial owner shall then complete and return the "prevalidated" individual Ballot directly to the Voting Agent in the return envelope to be provided in the Solicitation Package.   A Nominee "prevalidates" a beneficial owner's Ballot by completing and executing the beneficial owner's Ballot (except items 2 and 3) in accordance with the instructions provided and by indicating thereon the name of the beneficial owner, the Nominee's name and DTC Participant No., the amount of Parent Common Stock held by the Nominee on behalf of the beneficial owner, and the appropriate account numbers through which the beneficial owner's holdings are derived; or

(II)    The Nominee may forward the Solicitation Package to the beneficial owner of the Parent Common Stock for voting along with a return envelope provided by and addressed to the Nominee.   The beneficial owner shall then complete and return the individual Ballot to the Nominee.  In such case, the Nominee shall summarize the votes of its respective beneficial owners on a Master Ballot, which shall be provided to the Nominee separately by the Voting Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Voting Agent. ***The Nominee shall advise the beneficial owners to return their individual Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Voting Agent so that the Master Ballot is ACTUALLY RECEIVED by the Voting Agent by the Voting Deadline.***

(B)     **Reimbursement of Expenses:**  The Debtors may, upon written request, and without application to or Order of the Bankruptcy Court, reimburse the Transfer Agent, Nominees, or any of their

K&E 13254000.21
**K&E 13254000.22**

agents, for reasonable, actual, and necessary out-of-pocket expenses incurred in performing the tasks described above.

5.    **Distribution of Solicitation Packages -- To Holders of Asbestos PD Claims:**

a.    **Filed Claims:**  Except as otherwise provided for herein, the Voting Agent will cause a Solicitation Package to be served upon each Holder of an Asbestos PD Claim (including Indirect PD Trust Claims) that (i) is represented by a proof of claim filed against the Debtors (A) on or before the March 2003 Bar Date with respect to Asbestos PD Claims other than US ZAI PD Claims and (B) on or before October 31, 2008 with respect to US ZAI PD Claims, and (ii) has not been withdrawn by the Holder or disallowed or expunged by order of the Bankruptcy Court entered on or before the Voting Record Date.

b.    **Distribution of Solicitation Packages to Attorneys Representing Holders of Asbestos PD Claims:**

i.    A single Solicitation Package with a Master Ballot will be served upon each attorney known by the Debtors (based on the proofs of claim filed by the March 2003 Bar Date or the ZAI Bar Date) to represent multiple Holders of Asbestos PD Claims. ***Solicitation Packages will <u>not</u> be served upon the Holders of Asbestos PD Claims, except (A) where a Holder of an Asbestos PD Claim requests a Solicitation Package in accordance with these Voting Procedures, (B) where a proof of claim with respect to an Asbestos PD Claim is signed and filed by the Holder, rather than the Holder's attorney, prior to the March 2003 Bar Date or ZAI Bar Date (as applicable) or (C) where an attorney timely advises the Voting Agent, pursuant to section 5(b)(ii)(A) below, of the names and addresses of individuals who hold Asbestos PD Claims who should receive their own Solicitation Packages.***

(A)    If an attorney who receives a Solicitation Package either (I) is unable to certify with respect to any Holder of an Asbestos PD Claim represented by such attorney that such attorney has the authority to vote on the Plan on behalf of such Holder (*see* section 5(c)(ii) below) or (II) wishes any Holder of an Asbestos PD Claim represented by such attorney to cast his or her own Ballot on the Plan, such attorney shall, no later than twenty-one (21) days after the Solicitation Date, furnish the Voting Agent with the name, address and copy of the proof of claim filed by or on behalf of such Holder, together with any cover letter which said attorney may wish to transmit to the Holders so designated, which the Voting Agent shall include with the Solicitation Package to be transmitted to said Holders.

(B)    Attorneys who wish their clients to receive Solicitation Packages for informational purposes (without a Ballot) must provide such

12    Exhibit C

clients' names, addresses and the last four digits of their social security numbers or tax identification numbers, together with a cover letter from such attorney to be included with the Solicitation Packages, no later than twenty-one (21) days after the Solicitation Date.

ii.     **To Individuals Who Hold Asbestos PD Claims:**

(A)     **Transmittal by the Voting Agent.**  If an attorney who represents the Holder of an Asbestos PD Claim furnishes the names and addresses of individuals or entities in accordance with section 5(b)(i)(A) hereof to the Voting Agent, then the Voting Agent will cause a Solicitation Package to be mailed, together with a Ballot, directly to each such individual who holds or asserts such Asbestos PD Claim(s) within seven (7) days after receiving such request.

(B)     **Transmittal by an Attorney.**  An attorney may choose to transmit Solicitation Packages to his or her clients directly.  If an attorney chooses to do so, such attorney must, no later than twenty-one (21) days after the Solicitation Date, furnish a written request to the Voting Agent for a specified amount of Solicitation Packages and individual Ballots, which will be provided to such attorney within seven (7) days after receipt of such written request.  The Debtors will reimburse such attorney for the actual postage incurred by the attorney.   Attorneys seeking reimbursement shall submit reasonable evidence of postage expenses incurred in order to obtain such reimbursement.

c.     **Completion and Return of Master Ballots by Attorneys for Holders of Asbestos PD Claims.**  Attorneys who represent and have filed proofs of claims for multiple Holders of Asbestos PD Claims shall be permitted to cast Ballots for such Holders, but only to the extent such attorneys have the authority under applicable bankruptcy or non-bankruptcy law to do so, and so certify in the manner set forth herein and on the Master Ballots respecting Asbestos PD Claims. Each attorney voting on behalf of the individuals or entities he or she represents who have filed Asbestos PD Claims shall complete a Master Ballot, which will set forth the votes cast by such attorney on behalf of any such clients.  The following procedures will govern the completion and return of a Master Ballot.

i.     **Summarizing Votes on the Master Ballot:**

(A)     The Master Ballot shall contain the following options for voting, one of which shall be marked by the attorney:

(I)     **"ALL** of the individuals or entities listed on the Exhibit accompanying this Master Ballot, all of whom are Holders of Class 7 Asbestos PD Claims, **ACCEPT** the Plan."

K&E 13254000.21
**K&E 13254000.22**

(II)    "**ALL** of the individuals or entities listed on the Exhibit accompanying this Master Ballot, all of whom are Holders of Class 7 Asbestos PD Claims, **REJECT** the Plan."

(III)    "**SOME** of the individuals or entities listed on the Exhibit accompanying this Master Ballot, all of whom are Holders of Class 7 Asbestos PD Claims, **ACCEPT** the Plan, while other individuals or entities on the Exhibit accompanying this Master Ballot **REJECT** the Plan."

(B)    The attorney completing the Master Ballot also will have to complete a summary of votes on the Plan for the Holders of Asbestos PD Claims for which the attorney is voting on the Plan. The summary shall state as follows:

| Holders of Asbestos PD Claims Voting to **Accept** the Plan | Holders of Asbestos PD Claims Voting to **Reject** the Plan |
| --- | --- |
| | |

### ii.    Certification by Attorney of Authority to Vote and Related Issues:

(A)    The Master Ballot will contain certifications, which shall be under penalty of perjury pursuant to 28 U.S.C. § 1746, to be completed by the attorney preparing and signing the Master Ballot pursuant to which such attorney will certify that he or she has the authority under applicable bankruptcy or non-bankruptcy law to cast a Ballot on the Plan on behalf of the Holders of each of the Asbestos PD Claims listed on the exhibit to the Master Ballot.

(B)    If the attorney is unable to make such certification on behalf of any Holder of an Asbestos PD Claim whom he or she represents, the attorney may *not* cast a vote on behalf of such claimant and *must* timely send the information relating to the names and addresses of its clients for whom he or she may not vote to the Voting Agent in accordance with section 5(b)(i)(A) of these Voting Procedures.

### iii.    Summary Sheet Exhibit to the Master Ballot:

(A)    Each attorney shall prepare an electronic list on a CD-ROM, which list should be in Excel™ or a comparable application, as an Exhibit to the Master Ballot. The Exhibit should include each of the following fields (in the order listed): (I) the proof of claim number of each Claimant's claim (to be completed by the Voting Agent); (II) the last name of the Claimant; (III) the first name of the Claimant; (IV) the street address of the Claimant; (V) the town of

14

Exhibit C

the Claimant; (VI) the state of the Claimant; (VII) the zip code of the Claimant; and (VIII) whether the Claimant votes to accept or reject the Plan.  A sample template is set forth below and may also be downloaded in Excel™ format from the Voting Agent's website at  www.bmcgroup.com/wrgrace.  ***If an attorney certifies that he/she does not have access to Excel™ or a comparable application <u>and</u> represents fewer than 100 Holders of Asbestos PD Claims, then the attorney may provide the Exhibit in hard copy.***

<u>Sample Exhibit</u>

| Proof of Claim No. | Last Name | First Name | Street Address | Town | State | Zip Code | Accept or Reject |
|---|---|---|---|---|---|---|---|
| 1234 | Smith | John | Any Street | Town | State | 12345 | Accept |

      (B)     In the event of any discrepancy between the information contained in a Master Ballot and the summary of votes, as required by section 5(c)(i) hereof, and the information contained in the summary sheet exhibit to the Master Ballot described above, the summary sheet exhibit to the Master Ballot shall control.

      (C)     The entire summary sheet must be attached as an exhibit to the Master Ballot, and the completed Master Ballot and exhibit must be returned to the Voting Agent in accordance with sections 8(d) and (e) of these Voting Procedures.

**6.      Distribution of Solicitation Packages -- Holders of Canadian ZAI PD Claims:**

    a.     Under applicable Canadian law, once appropriate authority is given in the Canadian Court, the CCAA Representative Counsel will be empowered and authorized to vote to accept or reject the Plan on behalf of the Class 8 CDN ZAI PD Claims in accordance with the Minutes of Settlement of Canadian ZAI Claims.  Accordingly, the Voting Agent will cause a Solicitation Package to be served only upon the CCAA Representative Counsel.

**7.      Distribution of Solicitation Packages -- To Holders of General Unsecured Claims (Provisional Vote):**

    a.     **Scheduled Claims**:  Except as otherwise provided herein, the Voting Agent will cause a Solicitation Package to be served upon each Holder of a General Unsecured Claim against the Debtors that is listed in the Schedules as of the Voting Record Date with a Claim in excess of $0.00 other than Claims designated in the Schedules as contingent, unliquidated and/or disputed, *provided, however*, that each Holder of a General Unsecured Claim that is otherwise entitled to receive a Solicitation Package pursuant to this section and is also entitled to

15

Exhibit C

receive a Solicitation Package pursuant to section 7(b) below shall be entitled to receive only one Solicitation Package.

b.    **Filed Claims**:  Except as otherwise provided herein, the Voting Agent will cause a Solicitation Package to be served upon each Holder of a General Unsecured Claim that is represented by a proof of claim filed against the Debtors that (i) has not been withdrawn, disallowed or expunged by an order of the Bankruptcy Court entered on or before the Voting Record Date and (ii) is not the subject of a pending objection as of the Voting Record Date.  If the Debtors determine that a proof of claim filed against the Debtors is not a Class 9 General Unsecured Claim, then the Debtors shall not be required to serve a Solicitation Package to the Holder of such Claim, unless the Holder of such Claim is otherwise entitled to receive a Solicitation Package under these Voting Procedures, and instead shall serve upon the Claimant a Confirmation Hearing Notice and a Notice of Non-Voting Class Status.  The Voting Agent will send to Holders of General Unsecured Claims that are subject to a pending objection as of the Voting Record Date a Confirmation Hearing Notice and a Notice of Non-Voting Claim Status.

c.    **Bank Claims**:  The Administrative Agent shall make the register of Lenders maintained pursuant to each of the Pre-petition Credit Facilities available to the Voting Agent as an agent of the Debtors.  Following receipt of the register of Lenders, the Voting Agent will cause a Solicitation Package (including an appropriate Ballot) to be served upon each Lender holding a General Unsecured Claim arising from the Pre-petition Credit Facilities as of the Voting Record Date.

**8.**    **Distribution of Solicitation Packages -- To Other Parties:**

a.    The Voting Agent will cause a Solicitation Package to be served upon (i) the Securities and Exchange Commission, (ii) the Office of the United States Trustee for the District of Delaware, (iii) the Internal Revenue Service, (iv) the attorneys for each official committee appointed in the Debtors' chapter 11 cases, (v) the attorneys for the Asbestos PI Future Claimants' Representative, (vi) the attorneys for the Asbestos PD Future Claimants' Representative, (vii) the attorneys for the agent for the Debtors' pre-petition bank lenders, (viii) the attorneys for the agent for the Debtors' postpetition bank lenders, and (ix) each party that filed a notice of appearance with the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 2002.

**9.**    **Return of Ballots:**

a.    **Claimants that Are Entitled to Vote:**

i.    Each Holder of an Asbestos PI Claim (other than an Indirect PI Trust Claim) is entitled to vote to accept or reject the Plan.

ii.    Each Holder of an Indirect PI Trust Claim that has not been disallowed or expunged by order of the Bankruptcy Court entered on or before the

K&E 13254000.21
**K&E 13254000.22**

Record Date is entitled to vote to accept or reject the Plan. With respect to any Indirect PI Trust Claim that has been transferred after the applicable proof of claim has been filed, the transferee shall be entitled to receive a Solicitation Package and cast a Ballot on account of such Indirect PI Trust Claim only if (X) all actions necessary to the transfer of the Indirect PI Trust Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date or (Y) the transferee files by the Voting Record Date (I) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (II) a sworn statement of the transferor supporting the validity of the transfer.

iii.    Each Holder of an Asbestos PD Claim that is being solicited pursuant to these Voting Procedures is entitled to vote to accept or reject the Plan <u>solely</u> to the extent required by section 524(g) of the Bankruptcy Code.

iv.    The CCAA Representative Counsel shall be entitled to vote to accept or reject the Plan on behalf of all Holders of Canadian ZAI PD Claims in the manner and to the extent provided in the Minutes of Settlement of Canadian ZAI Claims and the Canadian Settlement Approval.

v.    Each Holder of a General Unsecured Claim that is being solicited pursuant to these Voting Procedures shall be entitled to vote to accept or reject the Plan on a provisional basis. Such votes will be given effect <u>only if</u> it is determined that Class 9 is an impaired Class under section 1124 of the Bankruptcy Code. If it is determined that Class 9 is unimpaired, then Class 9 will be deemed to accept the Plan and any and all Ballots cast by Holders of General Unsecured Claims will be disregarded for all purposes.

b.    **Equity Interests that Are Entitled to Vote:** Each Holder of Parent Common Stock as of the Voting Record Date is entitled to vote to accept or reject the Plan.

c.    **Authority to Complete and Execute Ballots:** If a Ballot or Master Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or any other Entity acting in a fiduciary or representative capacity, such person must indicate such capacity when signing. The authority of the signatory of each Ballot or Master Ballot to complete and execute the Ballot or Master Ballot shall be presumed, but each such signatory shall certify under penalty of perjury, by executing the Ballot or Master Ballot, that he or she has such authority and shall provide evidence of such authority upon request of the Voting Agent**.**

d.    **Place to Send Completed Ballots and Master Ballots:**

i.    **Voting Agent:** All Ballots and Master Ballots should be returned by mail, hand-delivery or overnight courier to the Voting Agent as follows:

**By U.S. Mail:**                    **By Courier:**

<u>Exhibit C</u>

BMC Group, Inc.                     BMC Group, Inc.
Attn:  W. R. Grace Voting Agent     Attn:  W. R. Grace Voting Agent
P.O. Box 2007                       17850 Lake Drive East
Chanhassen, MN 55317-2007           Chanhassen, MN 55317

e.    **Deadline for Receiving Completed Ballots and Master Ballots:**

i.    All Ballots and Master Ballots must be ***actually received*** by the Voting Agent by the Voting Deadline.  The Voting Agent will NOT accept Ballots or Master Ballots submitted by facsimile or electronic transmission.  If any Ballot or Master Ballot is received by the Voting Agent after the Voting Deadline, the vote(s) recorded on that Ballot or Master Ballot will not be counted for purposes of voting on the Plan.

ii.   The Voting Agent will date and stamp all Ballots and Master Ballots when received.  In addition, the Voting Agent will retain a copy of such Ballots and Master Ballots for a period of one (1) year after the Effective Date of the Plan, unless otherwise instructed by the Debtors, in writing, or otherwise ordered by the Bankruptcy Court.

**10.    Tabulation of Ballots - Determination of Amount of Claims and Equity Interests Voted:**

a.    **Asbestos PI Claims:**  The amount of Asbestos PI Claims for purposes of voting to accept or reject the Plan shall be calculated as provided in section 3(b) of these Voting Procedures.

b.    **Asbestos PD Claims:**   The Debtors are soliciting the votes of Holders of Asbestos PD Claims solely to the extent required by section 524(g) of the Bankruptcy Code.  The tabulation of such votes shall be determined pursuant to a future order of the Bankruptcy Court.

c.    **Equity Interests:**  Each registered holder or beneficial owner of Parent Common Stock is entitled to a vote equal to the number of registered holder's or beneficial owner's shares of Parent Common Stock as of the Voting Record Date. With respect to the tabulation of Ballots and Master Ballots for Equity Interests in the Parent, for purposes of voting, the amount to be used to tabulate acceptance or rejection of the Plan is as follows (in order of priority):

i.    Votes cast by beneficial owners holding Parent Common Stock through a Nominee will be applied against the positions held by such entities as of the Voting Record Date, as evidenced by the record and depository listings.  Votes submitted by a Nominee, whether pursuant to a Master Ballot or prevalidated Ballots, will not be counted in excess of the Record Amount of Parent Common Stock held by such Nominee.

K&E 13254000.21
**K&E 13254000.22**

ii.     To the extent that conflicting votes or "overvotes" are submitted by a Nominee, whether pursuant to a Master Ballot or prevalidated Ballots, the Voting Agent will attempt to resolve the conflict or overvote prior to the preparation of the vote certification.

iii.    To the extent that overvotes on a Master Ballot or on prevalidated Ballots are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or prevalidated Ballots that contained the overvote, but only to the extent of the Nominee's position in Parent Common Stock.

iv.     Multiple Master Ballots may be completed by a single Nominee and delivered to the Voting Agent.  Votes reflected by multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots.  If two or more Master Ballots are inconsistent, the latest otherwise valid Master Ballot received prior to the Voting Deadline will, to the extent of any such inconsistency, supersede and revoke any prior Master Ballot.

v.      For purposes of tabulating votes, each registered holder or beneficial holder of Parent Common Stock will be deemed to have voted the full amount of its holdings relating to Parent Common Stock.

d.      **Canadian ZAI PD Claims:**  The aggregate value of Class 8 CDN ZAI PD Claims for voting purposes will be $6,500,000, which represents the payment to the CDN ZAI PD Claims Fund pursuant to the CDN ZAI Minutes of Settlement.

e.      **General Unsecured Claims:**  If it is determined that Class 9 General Unsecured Claims is impaired pursuant to section 1124 of the Bankruptcy Code, then the amount to be used to tabulate acceptance or rejection of the Plan will be as follows (in order of priority):

i.      If (A) prior to the Voting Deadline, a Claim has been allowed fully or partially, whether for all purposes or for voting purposes only, pursuant to a Bankruptcy Court order or Bankruptcy Court-approved procedures, (B) prior to the Voting Deadline, the Debtors and the Holder of a Claim File a Stipulation agreeing to fully or partially allow such Claim for voting purposes only and no objection to such allowance is received by the Debtors within seven (7) calendar days after service by first-class mail of notice of such agreement to the parties upon whom notice is required, or (C) after the Voting Deadline, the Bankruptcy Court enters an order allowing a Claim for voting purposes only in response to a timely Filed Voting Motion, the amount allowed thereunder.

ii.     The liquidated amount specified in a proof of claim timely Filed in accordance with the March 2003 Bar Date Order, so long as such Claim

K&E 13254000.21
**K&E 13254000.22**

has not been disallowed or expunged by the Bankruptcy Court and is not the subject of an objection pending as of the Voting Record Date, *provided, however*, that the Holders of Claims arising from the Pre-petition Credit Facilities shall be entitled to vote such Claims, subject to the limitation in section 10(e)(vi) below, notwithstanding the pending objection to post-petition interest payable in relation to such Claims.

iii.   The amount of the Claim listed in the Schedules as liquidated, undisputed and noncontingent.

iv.   If a Claim is recorded in the Schedules or on a proof of claim as unliquidated, contingent and/or disputed only in part, the Holder of the Claim shall be entitled to vote that portion of the Claim that is liquidated, noncontingent and undisputed in the liquidated, noncontingent and undisputed amount, subject to any limitations set forth herein and unless otherwise ordered by the Bankruptcy Court.

v.   If a proof of claim has been timely filed in accordance with the March 2003 Bar Date Order and such Claim is wholly unliquidated or contingent, the Claim amount, for voting purposes only, shall be $1.00, so long as such Claim has not been disallowed or expunged by the Bankruptcy Court and is not the subject of an objection pending as of the Voting Record Date.

vi.   With respect to (i) through (v) above, any amount of post-petition interest that may be payable with respect to a Claim under the Plan shall <u>not</u> be included for purposes of tabulating votes to accept or reject the Plan.

f.   **Voting Motions and Classification Objections.**

i.   Any Holder of a Claim who seeks to challenge the amount of its Claim for voting purposes may file a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim in an amount requested for purposes of voting (a "**Voting Motion**").

(A)   A Voting Motion must be filed on or before the Voting Deadline.

(B)   A Voting Motion must be accompanied by a declaration by an appropriate representative of the moving party that (1) attaches a completed Ballot indicating how such party intends to vote on the Plan, (2) certifies the proposed voting amount of the applicable Claim and (3) attaches any evidence in support of the proposed voting amount of such Claim.

(C)   As to any Holder of a Claim who Files a Voting Motion, such Holder's vote shall <u>not</u> be counted other than as provided in these Voting Procedures unless temporarily allowed by the Bankruptcy

Court for voting purposes, after notice and a hearing. The hearing on a timely Filed Voting Motion may take place after the Voting Deadline.

(D)     A Holder of a Claim who timely Files a Voting Motion with a properly completed declaration as required above does not need to submit a Ballot to the Voting Agent.

ii.     Any Holder of a Claim who intends to pursue an objection to confirmation of the Plan on the grounds that such Holder's Claim is not properly classified may request a Ballot from the Voting Agent for provisional voting under a different Class and may vote to accept or reject the Plan pursuant to the following procedures:

(A)     The objecting Claimant must File a declaration with the Bankruptcy Court (a "**Disputed Classification Declaration**") on or before the Voting Deadline, which attaches (1) the Claimant's completed original Ballot indicating the Claimant's vote if the Debtors' classification of the Claim at issue is upheld and (2) the Claimant's completed provisional Ballot indicating the Claimant's vote if it prevails on its classification objection.

(B)     The Disputed Classification Declaration also must summarize the basis for the Claimant's classification objection.

(C)     If the objecting Claimant also disputes the amount of its Claim for voting purposes, the Claimant must File a Voting Motion pursuant to section 10(f)(i) of these Voting Procedures in addition to Filing a Disputed Classification Declaration.

(D)     Unless otherwise ordered by the Bankruptcy Court, the Debtors shall report to the Bankruptcy Court in connection with the Confirmation Hearing the tabulation of votes for all Claims for which a Disputed Classification Declaration has been Filed using both (1) the original classification of the Claims that are subject to Disputed Classification Declarations and (2) a provisional classification reflecting the requests in the Disputed Classification Declarations.

(E)     A Claimant who Files a Disputed Classification Declaration must File its objection to the Plan and its classification of such Claimant's Claims on or before the deadline established by the Bankruptcy Court for objections to confirmation of the Plan.

21                                                          Exhibit C

11.     **Tabulation of Votes -- Ballots Excluded:**

A Ballot or Master Ballot will not be counted if any of the following, without limitation, applies to such Ballot or Master Ballot:

a.      The Holder submitting the Ballot or Master Ballot is not entitled to vote pursuant to sections 9(a) and (b) hereof.

b.      The Ballot or Master Ballot is not ***actually received*** by the Voting Agent in the manner set forth in sections 9(d) and (e) hereof by the Voting Deadline.

c.      The Ballot or Master Ballot is returned to the Voting Agent indicating acceptance or rejection of the Plan but is unsigned.

d.      The Ballot or Master Ballot is received after the Voting Deadline, regardless of when it is postmarked.

e.      The Ballot or Master Ballot is illegible or contains insufficient information to permit the identification of the Claimant or Equity Interest Holder.

f.      The Ballot or Master Ballot is transmitted to the Voting Agent by facsimile or other electronic means.

g.      The Ballot or Master Ballot is submitted in a form that is not appropriate for such Claim or Equity Interest.

h.      A Ballot or Master Ballot that is not completed and/or lacks an original signature.

12.     **Tabulation of Votes -- General Voting Procedures and Standard Assumptions:**

In addition to the foregoing, the following voting procedures and standard assumptions will be used in tabulating Ballots and Master Ballots:

a.      A Creditor or Equity Interest Holder may not split his, her, or its vote with respect to each of its Claims or Equity Interests. Accordingly, (i) each Creditor or Equity Interest Holder shall have a vote within a particular class for each Claim or Equity Interest held by such Holder as of the Voting Record Date, (ii) the full amount of such Holder's Claim or Equity Interest (calculated in accordance with these procedures) within a particular class shall be deemed to have been voted either to accept or reject a Plan, and (iii) any Ballot submitted by or on behalf of a particular Claim or Equity Interest that partially rejects and partially accepts the Plan shall not be counted.

b.      The Voting Agent, in its discretion, may contact voters to cure any defects in a Ballot or Master Ballot.

c.      Subject to section 12(d) hereof, if multiple Ballots or Master Ballots are received on or prior to the Voting Deadline on account of the same Claim or Equity

K&E 13254000.21
**K&E 13254000.22**

Interest, in the absence of contrary information establishing which Holder held such Claim or Equity Interest as of the Voting Record Date, the last valid Ballot or Master Ballot that is received by the Voting Agent prior to the Voting Deadline will be the Ballot or Master Ballot that is counted. In the event multiple conflicting Ballots or Master Ballots are received on account of the same claim or interest on the same day, such Ballots or Master Ballots will be disregarded.

d.      If multiple Ballots are received prior to the Voting Deadline from a Holder of a Claim or Equity Interest <u>and</u> someone purporting to be his, her, or its attorney or agent, the Ballot received from the Holder of the Claim or Equity Interest will be the Ballot that is counted, and the vote of the purported attorney or agent will not be counted.

e.      There shall be a rebuttable presumption that any Holder of a Claim or Equity Interest who submits a properly completed superseding Ballot on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such Holder's acceptance or rejection of the Plan.

f.      A Ballot that is completed, but on which the Claimant or Equity Interest Holder did not note whether to accept or reject the Plan, shall not be counted as a vote to accept or reject the Plan.

g.      Separate proofs of claim filed against multiple Debtors on account of the same underlying debt obligation shall be deemed, collectively, to be one Claim for voting purposes.

h.      Single proofs of claim filed against multiple Debtors (*e.g.*, proofs of claim filed against "W. R. Grace & Co., *et al.*") shall be deemed to be one Claim for voting purposes.

i.      Where a Holder of a Claim or Equity Interest chooses to both accept and reject the Plan on the same Ballot, such Ballot shall not be counted as a vote to accept or reject the Plan.

**13.    Definitions:**

a.      **"Administrative Agent"** means JPMorgan Chase Bank in its capacity as administrative agent under each of the Pre-petition Credit Facilities.

b.      **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware.

c.      **"Confirmation Hearing"** means the hearing on the confirmation of the Plan, as such hearing may be adjourned from time to time.

d.      **"Confirmation Hearing Notice"** means a notice of, *inter alia*, (i) approval of the Disclosure Statement and scheduling of the Confirmation Hearing, and (ii) the deadlines for voting on, and filing objections to confirmation of, the Plan, in

Exhibit C

K&E 13254000.21
**K&E 13254000.22**

substantially the form approved by the Bankruptcy Court in the Confirmation Procedures Order.

e.    **"Disclosure Statement"** means the disclosure statement in connection with the Plan, as approved by the Bankruptcy Court in the Disclosure Statement Order.

f.    **"Disclosure Statement Order"** means the order of the Bankruptcy Court approving the adequacy of the Disclosure Statement.[2]

g.    **"Disputed Classification Declaration"** shall have the meaning set forth in section 10(f) hereof.

h.    **"Lenders"** means the lenders under each of the Pre-petition Credit Facilities.

i.    **"March 2003 Bar Date"** means the bar date set by order of the Bankruptcy Court fixing March 31, 2003 as the deadline for filing certain proofs of claim, including Indirect PI Trust Claims, against the Debtors' estates.

j.    **"Master Ballot"** means a Ballot (i) filed on behalf of one or more Holders of Asbestos PI Claims or Asbestos PD Claims in accordance with the procedures set forth in sections 3 or 5 of these Voting Procedures or (ii) filed on behalf of one or more beneficial owners of Parent Common Stock in accordance with the procedures set forth in section 4 of these Voting Procedures.

k.    **"Nominees"** means institutional Holders of record of Equity Interests who hold Equity Interests in "street name" on behalf of beneficial owners or the agents or intermediaries of such Holders who otherwise represent such beneficial owners.

l.    **"Notice of Non-Voting Claim Status"** means a notice to be sent to Holders of Class 9 General Unsecured Claims that are subject to an objection pending as of the Voting Record Date in the form approved by the Bankruptcy Court in the Confirmation Procedures Order.

m.    **"Notice of Non-Voting Class Status"** means a notice to be sent to Holders of Claims represented by proofs of claim Filed with the Bankruptcy Court that the Debtors have determined are within the unimpaired Classes of Claims who are not entitled to vote to accept or reject the Plan in the form approved by the Bankruptcy Court in the Confirmation Procedures Order.

n.    **"Notice to Counterparties to Executory Contracts and Unexpired Leases"** means a notice to be sent to counterparties to executory contracts and unexpired leases describing the treatment of executory contracts and unexpired leases under

---

[2]    The Bankruptcy Court may approve the Disclosure Statement as part of the Confirmation Procedures Order, rather than by separate order, in which case references to the Disclosure Statement Order shall mean the Confirmation Procedures Order.

Exhibit C

the Plan substantially in the form approved by the Bankruptcy Court in the Confirmation Procedures Order.

o.    **"Plan Objection Deadline"** means <u>4:00 p.m. (prevailing Eastern time)</u>, on _____ ___ <u>2008</u>, as the date established by the Bankruptcy Court to be the deadline for the filing of objections to confirmation of the Plan.

p.    **"Publication Notice"** means a published notice of (i) approval of the Disclosure Statement and scheduling of the Confirmation Hearing, (ii) the deadlines for voting on, and filing objections to confirmation of, the Plan, and (iii) the procedures for Holders of Claims or Interests to obtain a Solicitation Package, substantially in the form approved by the Bankruptcy Court in the Confirmation Procedures Order.

q.    **"Record Amount"** means the amount shown on the records of the Nominees (as confirmed by record and depository listings) as of the Voting Record Date.

r.    **"Solicitation Date"** means the date specified in section 2(b) of these Voting Procedures.

s.    **"Solicitation Package"** means, and will consist of, all of the following:

    i.    Confirmation Hearing Notice.

    ii.    Disclosure Statement Order (without exhibits).

    iii.    Disclosure Statement.

    iv.    Exhibit Book (with the Plan attached as an Exhibit therein).

    v.    The Voting Procedures.

    vi.    One or more applicable Ballots and/or Master Ballots, together with voting instructions and information relative to the return of the Ballots or Master Ballots.

    vii.    Pre-addressed return envelope(s).

    viii.    Any other materials ordered by the Court to be included.

t.    "**Transfer Agent**" means the transfer agent for the Parent Common Stock.

u.    **"Voting Agent"** means BMC Group, Inc.

v.    **"Voting Deadline"** means <u>4:00 p.m. (prevailing Eastern time)</u>, on _____ ___ <u>2008</u>, as the date established by the Bankruptcy Court to be the deadline for the Voting Agent to receive Ballots and Master Ballots on the Plan.

K&E 13254000.21

**K&E 13254000.22**

w.      **"Voting Motion"** shall have the meaning set forth in section 10(f) hereof.

x.      **"Voting Record Date"** means the date that is two (2) Business Days after the entry of the Disclosure Statement Order.

y.      **"ZAI Bar Date Order"** means the order of the Bankruptcy Court fixing October 31, 2008 as the deadline for filing a proof of claim relating to US ZAI PD Claims against the Debtors' estates.

26                                                      <u>Exhibit C</u>

Document comparison done by Workshare DeltaView on Thursday, November 20, 2008 1:28:25 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://NYDMS/LEGAL/13254000/21 |
| Document 2 | interwovenSite://NYDMS/LEGAL/13254000/22 |
| Rendering set | Basic K&E |

| Legend: |
|---|
| **Insertion** |
| ~~Deletion~~ |
| *Moved from* |
| *Moved to* |
| Style change |
| Format change |
| Moved deletion |

| Inserted cell | |
|---|---|
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| **No.** | **Change** | **Text** |
| 1 | Deletion | K&E 13254000.21 |
| 2 | Insertion | K&E 13254000.22 |
| 3 | Change | "Holder of an Indirect PI...vote in the amount," changed to "Holder of an Indirect PI...vote in the amount," |
| 4-5 | Change | "Claims for purposes of...prejudice to the rights" changed to "Claims for purposes of...prejudice to the rights" |
| 6-7 | Change | "the rights of the Holders of such claims" changed to "the rights of the Holders of such Claims" |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 4 |
| Deletions | 3 |
| Moved from | 0 |
| Moved to | 0 |

| Style change | 0 |
|---|---|
| Format changed | 0 |
| Total changes | 7 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.**, *et al.*[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | BALLOT FOR ACCEPTING OR |
| | ) | REJECTING JOINT PLAN OF |
| | ) | REORGANIZATION UNDER CHAPTER |
| | ) | 11 OF THE BANKRUPTCY CODE |

**Class 6**
**Asbestos PI Claims (Indirect PI Trust Claims)**

### VOTING INSTRUCTIONS AND BALLOT FOR HOLDERS OF
### INDIRECT PI TRUST CLAIMS WITHIN CLASS 6 ASBESTOS PI CLAIMS

W. R. Grace & Co. and its affiliated debtors and debtors in possession (collectively, the "Debtors") are soliciting votes to accept or reject the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of November __, 2008* (as it may be amended or supplemented, the "Plan") described in the accompanying Disclosure Statement (the "Disclosure Statement") from the Holders of certain impaired Claims against, and Equity Interests in, the Debtors.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

On [_____,___], 2008, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order approving, among other things, (i) the Disclosure Statement as providing adequate information for Holders of Claims against, or Equity Interests in, the Debtors to make a decision as to whether to accept or reject the Plan and (ii) certain procedures (the "Voting Procedures") for the solicitation and tabulation of votes to accept or reject the Plan. The Voting Procedures contain important information regarding the balloting process and are included in the Solicitation Package accompanying this Ballot. Please read the Plan, the Disclosure Statement and the Voting Procedures before submitting your Ballot. Capitalized terms not defined herein shall have the meaning ascribed to them in the Voting Procedures and the Plan.

The accompanying Ballot is to be used only for voting by Holders of Indirect PI Trust Claims, which are included within the Plan's definition of Asbestos PI Claims. You have received the Ballot either because you have filed with the Bankruptcy Court an Indirect PI Trust Claim or have been identified by the Debtors on their schedules of liabilities as a Holder of an Indirect PI Trust Claim.

In order for your vote to be counted, your Ballot must be properly completed, signed, and returned by mail, hand delivery or overnight courier to the Debtors' court-approved Voting Agent as follows:

| **By U.S. Mail:** | **By Courier:** |
|---|---|
| BMC Group, Inc. | BMC Group, Inc. |
| Attn: W. R. Grace Voting Agent | Attn: W. R. Grace Voting Agent |
| P.O. Box 2007 | 17850 Lake Drive East |
| Chanhassen, MN 55317-2007 | Chanhassen, MN 55317 |

> **Your Ballot must be RECEIVED by the Voting Agent no later than 4:00 p.m., prevailing Eastern time, on _____ ____, 2008 (the "Voting Deadline"). Facsimiles and electronic submissions will NOT be accepted.**

*Please note that the Plan can be confirmed by the Bankruptcy Court and thereby made binding on you, including the creation of a trust pursuant to section 524(g) of the Bankruptcy Code and the channeling of all Asbestos PI Claims, including Indirect PI Trust Claims, to such trust, if the Plan satisfies the following requirements: (i) it is accepted by the Holders of two-thirds in amount of the Class 6 Asbestos PI Claims for which votes to accept or reject the Plan were cast and counted pursuant to the Voting Procedures; (ii) it is accepted by at least three-fourths in number of the Class 6 Asbestos PI Claims for which votes to accept or reject the Plan were cast and counted pursuant to the Voting Procedures; and (iii) it otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Equity Interests in the Debtors (including those Holders who abstain from voting on or reject the Plan and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.*

**SPECIFIC RELEASES BY HOLDERS
OF CLAIMS OR EQUITY INTERESTS**

  **Please take notice that, as more fully provided for in Section 8.8.7 of the Plan, each Holder of a Claim or Equity Interest who votes in favor of the Plan under the Plan shall be deemed to have unconditionally released the Asbestos Protected Parties, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee, the Asbestos PI FCR and the Asbestos PD FCR, and each party's Representatives, as of the Effective Date, from any and all Claims, SA Claims, SA Damages, obligations, rights, suits, damages, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, their operations on or before the Effective Date, their respective property, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments, or other documents. In addition to the foregoing, each Holder of a Claim or Equity Interest who receives or retains any property under this Plan shall also be deemed to unconditionally release the Fresenius Indemnified Parties to the same extent as the release in the preceding sentence.**

  If you have questions about your Ballot, or if you did not receive a copy of the Disclosure Statement, Plan, Exhibit Book or Voting Procedures, you may contact the Voting Agent at (888) 909-0100. Copies of the Plan and related documents are also available on the Debtors' website at www.grace.com and at the website maintained by the Voting Agent at www.bmcgroup.com/wrgrace.

**VOTING INFORMATION AND INSTRUCTIONS
FOR COMPLETING THE BALLOT**

  The accompanying Ballot is for voting purposes only and does not constitute and shall not be deemed to be a proof of claim or interest or an admission by the Debtors of the validity or amount of a claim.

  **Please follow these instructions to complete your Ballot:**

1.  **Read the Plan, the Disclosure Statement, the Voting Procedures and these instructions.**

2.  **(Item 1) This is the amount of your Claim for voting purposes only.**
  Pursuant to the Voting Procedures, **if** your Indirect PI Trust Claim **is unliquidated and/or contingent, then it** will be counted in the amount of $1.00 for purposes of voting to accept or reject the Plan, which does not constitute an allowance of such Claim for purposes of distribution under the Trust Distribution Procedures and. **If your Indirect PI Trust Claim has been allowed in a**

K&E 13304194.9
K&E 13304194.10

**liquidated amount, you will be entitled to vote the allowed liquidated amount of such Claim.  The amount of your Indirect PI Trust Claim for voting purposes** is without prejudice to your rights or the rights of the Debtors and the Asbestos PI Trust in any other context.  If you disagree with the amount of your Indirect PI Trust Claim for voting purposes, you may file a Voting Motion with the Bankruptcy Court in accordance with and subject to the deadline established in Section 10(f)(i) of the Voting Procedures.  If you disagree with the classification of your Indirect PI Trust Claim, you may follow the procedures in Section 10(f)(ii) of the Voting Procedures.

3.      **(Item 2)  Vote to accept or reject the Plan by marking an "X" in the box that corresponds to your choice.  Please note that, if you vote to accept the Plan, you will be deemed to have granted the releases described in Section 8.8.7 of the Plan.**

4.      **(Item 3)  Print telephone number, name of signatory (if different than Claimant) and title of agent, if applicable.**

5.      **(Item 4)  By signing the Ballot, you make the following certifications:**

- "I have been provided with a copy of the Plan, the Disclosure Statement, the Exhibit Book, the Voting Procedures and the exhibits thereto."

- "I was the Holder of an Indirect PI Trust Claim, as defined in the Plan, as of the Voting Record Date or I have the authority, under applicable law, to vote to accept or reject the Plan on behalf of a Holder of an Indirect PI Trust Claim as of the Voting Record Date."

6.      **(Item 5)  Sign and date the Ballot.  Unsigned Ballots will NOT be counted.**

7.      **(Item 6)  If the mailing address to which your Ballot was sent is incorrect, supply corrected address information.**

8.      **Return the Ballot in the envelope provided.  The Ballot must be RECEIVED by the Voting Agent by the Voting Deadline or it will NOT be counted. Facsimiles and electronic submissions will NOT be accepted.**

**IF YOU HAVE ANY QUESTIONS REGARDING YOUR BALLOT, OR IF YOU DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT, PLAN, EXHIBIT BOOK OR VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE VOTING AGENT, BMC GROUP, INC., TOLL-FREE AT (888) 909-0100.**

K&E 13304194.9
**K&E 13304194.10**

Exhibit D-3

**COPIES OF THE PLAN, DISCLOSURE STATEMENT, EXHIBIT BOOK AND VOTING PROCEDURES (AND ALL EXHIBITS THERETO) ARE ALSO AVAILABLE ON THE DEBTORS' WEBSITE AT WWW.GRACE.COM AND THE VOTING AGENT'S WEBSITE AT WWW.BMCGROUP.COM/WRGRACE.**

[Remainder of page left blank intentionally]

## BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

| [Name & Address] | *In re W. R. Grace & Co., et al.*<br>Case No. 01-01139 (JFK)<br><br>**Class 6 Asbestos PI Claims**<br>**(Indirect PI Trust Claims)** |
|---|---|

**Please read the instructions accompanying this Ballot before completing the Ballot.  Print Clearly.**

| Item 1. | **PRINCIPAL AMOUNT OF INDIRECT PI TRUST CLAIM.**  Amount of your claim for voting purposes only: <u>$1.00</u>. |
|---|---|

| Item 2. | **VOTE ON THE PLAN**.  The undersigned Holder of the Indirect PI Trust Claim in the amount set forth in Item 1 hereby votes <u>all</u> of its Claim to (check one box only): |
|---|---|

❑     ACCEPT the Plan

❑     REJECT the Plan

**Please note:  If you vote to accept the Plan, you will be deemed to have given the specific releases set forth in Section 8.8.7 of the Plan.**

| Item 3. | **TELEPHONE NUMBER / AUTHORIZATION** |
|---|---|

Telephone Number:

Name of Signatory (if different from claimant):

If by Authorized Agent, Title or Agent:

| Item 4. | **ACKNOWLEDGEMENTS AND CERTIFICATIONS.**  By signing and returning this Ballot, you make the following acknowledgements and certifications: |
|---|---|
| (i) | I have been provided with a copy of the Plan, the Disclosure Statement, the Exhibit Book, the Voting Procedures and the exhibits thereto; and |
| (ii) | I was the Holder of an Indirect PI Trust Claim, as defined in the Plan, as of the Voting Record Date or I have the authority, under applicable law, to vote to accept or reject the Plan on behalf of a Holder of an Indirect PI Trust Claim as of the Voting Record Date. |

| Item 5. | **SIGNATURE AND DATE:** |
|---|---|

Signature of Claimant or Authorized Agent                                              Date

**Item 6.  ADDRESS CORRECTIONS, IF ANY (PRINT CLEARLY)**

Name

Address 1

Address 2

K&E 13304194.9
**K&E 13304194.10**

City, State and ZIP Code (US)

K&E 13304194.9
**K&E 13304194.10**

Exhibit D-3

Document comparison done by Workshare DeltaView on Thursday, November 20, 2008
1:36:41 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://NYDMS/LEGAL/13304194/9 |
| Document 2 | interwovenSite://NYDMS/LEGAL/13304194/10 |
| Rendering set | Basic K&E |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| *~~Moved from~~* | |
| *Moved to* | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| **No.** | **Change** | **Text** |
| 1 | Deletion | K&E 13304194.9 |
| 2 | Insertion | K&E 13304194.10 |
| 3 | Deletion | K&E 13304194.9 |
| 4 | Insertion | K&E 13304194.10 |
| 5 | Change | "Pursuant to the Voting...Indirect PI Trust Claim" changed to "Pursuant to the Voting...Indirect PI Trust Claim" |
| 6 | Change | "your Indirect PI Trust...counted in the amount of" changed to "your Indirect PI Trust...counted in the amount of" |
| 7-8 | Change | "the Trust Distribution...prejudice to your rights" changed to "the Trust Distribution...prejudice to your rights" |

| Statistics: | |
|---|---|
| | Count |

| Insertions | 5 |
|---|---|
| Deletions | 3 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 8 |

**\*\*PROVISIONAL\*\***

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.**, *et al.*[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | BALLOT FOR ACCEPTING OR |
| | ) | REJECTING JOINT PLAN OF |
| | ) | REORGANIZATION UNDER CHAPTER |
| | ) | 11 OF THE BANKRUPTCY CODE |

**Class 9**
**General Unsecured Claims**

### VOTING INSTRUCTIONS AND BALLOT FOR HOLDERS OF
### CLASS 9 GENERAL UNSECURED CLAIMS

W. R. Grace & Co. and its affiliated debtors and debtors in possession (collectively, the "Debtors") are soliciting votes to accept or reject the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of November __, 2008* (as it may be amended or supplemented, the "Plan") described in the accompanying Disclosure Statement (the "Disclosure Statement") from the Holders of certain impaired Claims against, and Equity Interests in, the Debtors.

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc.,  CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**PROVISIONAL**

On [_____, ___], 2008, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order approving, among other things, (i) the Disclosure Statement as providing adequate information for Holders of Claims against, or Equity Interests in, the Debtors to make a decision as to whether to accept or reject the Plan and (ii) certain procedures (the "Voting Procedures") for the solicitation and tabulation of votes to accept or reject the Plan. The Voting Procedures contain important information regarding the balloting process and are included in the Solicitation Package accompanying this Ballot. Please read the Plan, the Disclosure Statement and the Voting Procedures before submitting your Ballot. Capitalized terms not defined herein shall have the meaning ascribed to them in the Voting Procedures and the Plan.

The accompanying Ballot is to be used only for provisional voting by Holders of General Unsecured Claims. You have received the Ballot either because you have filed with the Bankruptcy Court a General Unsecured Claim or have been identified by the Debtors on their schedules of liabilities as a Holder of a General Unsecured Claim. Please note that the Plan provides that Class 9 General Unsecured Claims are unimpaired, but the Debtors have agreed to solicit the votes of Holders of General Unsecured Claims on a provisional basis. The provisionally solicited votes of the Holders of General Unsecured Claims shall not be used to determine acceptance or rejection of the Plan by the Class unless it is determined that Class 9 is impaired. If it is determined that Class 9 is unimpaired, then Class 9 will be deemed to accept the Plan and any and all Ballots cast by Holders of General Unsecured Claims will be disregarded for all purposes.

In order for your vote to be counted (if it is determined that Class 9 is impaired), your Ballot must be properly completed, signed, and returned by mail, hand delivery or overnight courier to the Debtors' court-approved Voting Agent as follows:

| **By U.S. Mail:** | **By Courier:** |
|---|---|
| BMC Group, Inc. | BMC Group, Inc. |
| Attn: W. R. Grace Voting Agent | Attn: W. R. Grace Voting Agent |
| P.O. Box 2007 | 17850 Lake Drive East |
| Chanhassen, MN 55317-2007 | Chanhassen, MN 55317 |

---

**Your Ballot must be RECEIVED by the Voting Agent no later than 4:00 p.m., prevailing Eastern time, on _____ ____, 2008 (the "Voting Deadline"). Facsimiles and electronic submissions will NOT be accepted.**

---

*Please note that the Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by each class that is entitled to vote. In the event that the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of section 1129(a) and (b) of the Bankruptcy Code. If it is determined that Class 9 General Unsecured Claims is impaired pursuant to section 1124 of the Bankruptcy Code, then the Plan will be accepted by Class 9 General Unsecured Claims if it is accepted by (i) the Holders of at least two-thirds in amount of the Class 9 General Unsecured Claims for which votes to accept or reject the Plan were cast and counted pursuant to the Voting*

Exhibit D-9

**PROVISIONAL**

*Procedures; and (ii) the Holders of at least one-half in number of the Class 9 General Unsecured Claims for which votes to accept or reject the Plan were cast and counted pursuant to the Voting Procedures. If it is determined that Class 9 is unimpaired, then Class 9 will be deemed to accept the Plan and any and all Ballots cast by Holders of General Unsecured Claims will be disregarded for all purposes. If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Equity Interests in the Debtors (including those Holders who abstain from voting on or reject the Plan and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.*

---

**SPECIFIC RELEASES BY HOLDERS
OF CLAIMS OR EQUITY INTERESTS**

**Please take notice that, as more fully provided for in Section 8.8.7 of the Plan, each Holder of a Claim or Equity Interest who votes in favor of the Plan shall be deemed to have unconditionally released the Asbestos Protected Parties, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee, the Asbestos PI FCR and the Asbestos PD FCR, and each party's Representatives, as of the Effective Date, from any and all Claims, SA Claims, SA Damages, obligations, rights, suits, damages, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, their operations on or before the Effective Date, their respective property, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments, or other documents. In addition to the foregoing, each Holder of a Claim or Equity Interest who receives or retains any property under this Plan shall also be deemed to unconditionally release the Fresenius Indemnified Parties to the same extent as the release in the preceding sentence.**

---

If you have questions about your Ballot, or if you did not receive a copy of the Disclosure Statement, Plan, Exhibit Book or Voting Procedures, you may contact the Voting Agent at (888) 909-0100. Copies of the Plan and related documents are also available on the Debtors' website at www.grace.com and at the website maintained by the Voting Agent at www.bmcgroup.com/wrgrace.

**VOTING INFORMATION AND INSTRUCTIONS
FOR COMPLETING THE BALLOT**

The accompanying Ballot is for voting purposes only and does not constitute and shall not be deemed to be a proof of claim or interest or an admission by the Debtors of the validity or amount of a claim.

**PROVISIONAL**

**Please follow these instructions to complete your Ballot:**

1.    **Read the Plan, the Disclosure Statement, the Voting Procedures and these instructions.**

2.    **(Item 1)  This is the amount of your Claim for voting purposes only.**

3.    **(Item 2)  Vote to accept or reject the Plan by marking an "X" in the box that corresponds to your choice.  <u>Please note that, if you vote to accept the Plan, you will be deemed to have granted the releases described in Section 8.8.7 of the Plan.</u>**

4.    **(Item 3)   Print telephone number, name of signatory (if different than Claimant) and title of agent, if applicable.**

5.    **(Item 4)  By signing the Ballot, you make the following certifications:**

   - **"I have been provided with a copy of the Plan, the Disclosure Statement, the Exhibit Book, the Voting Procedures and the exhibits thereto."**

   - **"I was the Holder of a General Unsecured Claim, as defined in the Plan, as of the Voting Record Date or I have the authority, under applicable law, to vote to accept or reject the Plan on behalf of a Holder of a General Unsecured Claim as of the Voting Record Date."**

6.    **(Item 5)  Sign and date the Ballot.  Unsigned Ballots will NOT be counted.**

7.    **(Item 6)  If the mailing address to which your Ballot was sent is incorrect, supply corrected address information.**

8.    **Return the Ballot in the envelope provided.  The Ballot must be RECEIVED by the Voting Agent by the Voting Deadline or it will NOT be counted. Facsimiles and electronic submissions will NOT be accepted.**

**IF YOU HAVE ANY QUESTIONS REGARDING YOUR BALLOT, OR IF YOU DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT, PLAN, EXHIBIT BOOK OR VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE VOTING AGENT, BMC GROUP, INC., TOLL-FREE AT (888) 909-0100.**

**COPIES OF THE PLAN, DISCLOSURE STATEMENT, EXHIBIT BOOK AND VOTING PROCEDURES (AND ALL EXHIBITS THERETO) ARE ALSO AVAILABLE ON THE DEBTORS' WEBSITE AT WWW.GRACE.COM AND THE VOTING AGENT'S WEBSITE AT WWW.BMCGROUP.COM/WRGRACE.**

[Remainder of page left blank intentionally]

**\*\*PROVISIONAL\*\***

**BALLOT**

**PLEASE COMPLETE THE FOLLOWING:**

| [Name & Address] | *In re W. R. Grace & Co., et al.*<br>Case No. 01-01139 (JFK)<br><br>**Class 9 General Unsecured Claims** |
|---|---|
| **Please read the instructions accompanying this Ballot before completing the Ballot.  Print Clearly.** ||

| Item 1. | **PRINCIPAL AMOUNT OF GENERAL UNSECURED CLAIM.**  The undersigned certifies that as of _____, 2008 (the "Voting Record Date"), the undersigned was the Holder**, or had the authority to vote for the Holder,** of a General Unsecured Claim in the amount set forth below.<br><br>Amount of your claim for voting purposes only: $ _____ . |
|---|---|

| Item 2. | **VOTE ON THE PLAN**.  The undersigned Holder of the General Unsecured Claim in the amount set forth in Item 1 hereby votes <u>all</u> of its Claim to (check one box only): |
|---|---|
| ❐ | ACCEPT the Plan |
| ❐ | REJECT the Plan |

**Please note:  If you vote to accept the Plan, you will be deemed to have given the specific releases set forth in Section 8.8.7 of the Plan.**

| Item 3. | **TELEPHONE NUMBER / AUTHORIZATION** |
|---|---|
| Telephone Number: ||
| Name of Signatory (if different from claimant): ||
| If by Authorized Agent, Title or Agent: ||

| Item 4. | **ACKNOWLEDGEMENTS AND CERTIFICATIONS.**  By signing and returning this Ballot, you make the following acknowledgements and certifications: |
|---|---|
| (i) | I have been provided with a copy of the Plan, the Disclosure Statement, the Exhibit Book, the Voting Procedures and the exhibits thereto; and |
| (ii) | I was the Holder of a General Unsecured Claim, as defined in the Plan, as of the Voting Record Date or I have the authority, under applicable law, to vote to accept or reject the Plan on behalf of a Holder of a General Unsecured Claim as of the Voting Record Date. |

| Item 5. | **SIGNATURE AND DATE:** |
|---|---|
| | |
| Signature of Claimant or Authorized Agent                                      Date ||

| **Item 6.  ADDRESS CORRECTIONS, IF ANY (PRINT CLEARLY)** |
|---|
| Name |
| Address 1 |
| Address 2 |
| City, State and ZIP Code (US) |

<u>Exhibit D-9</u>

K&E 13599219.513599219.6

K&E 13599219.5 13599219.6

Document comparison done by Workshare DeltaView on Thursday, November 20, 2008
2:25:02 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://NYDMS/LEGAL/13599219/5 |
| Document 2 | interwovenSite://NYDMS/LEGAL/13599219/6 |
| Rendering set | Basic K&E |

| Legend: | |
|---|---|
| **Insertion** | |
| D̶e̶l̶e̶t̶i̶o̶n̶ | |
| *M̶o̶v̶e̶d̶ ̶f̶r̶o̶m̶* | |
| *Moved to* | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| No. | Change | Text |
| 1-2 | Change | "K&E 13599219.5" changed to "K&E 13599219.6" |
| 3-4 | Change | "K&E 13599219.5" changed to "K&E 13599219.6" |
| 5 | Change | "Date"), the undersigned…Unsecured Claim in" changed to "Date"), the undersigned…Unsecured Claim in" |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 3 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 5 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.**, *et al.*[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |

**NOTICE OF CONFIRMATION HEARING AND IMPORTANT
DEADLINES IN RELATION TO THE FIRST AMENDED JOINT
PLAN OF REORGANIZATION OF W. R. GRACE & CO., ET AL.**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.     On November __, 2008, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed (i) the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of November __, 2008* (as it may be amended or supplemented, the "Plan") and (ii) the Disclosure Statement, pursuant to section 1125 of the Bankruptcy Code, for the Plan (the "Disclosure Statement").[2]

---

[1]     The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife  Boston Ltd., Alewife Land Corporation, Amicon, Inc.,  CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]     Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

2.    On [      ], 2008, after notice and a hearing, pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Confirmation Procedures Order") (i) approving the Disclosure Statement as providing adequate information for Holders of Claims and Equity Interests to make a decision as to whether to accept or reject the Plan, (ii) approving certain procedures (the "Voting Procedures") for the Debtors to solicit and tabulate votes to accept or reject the Plan and (iii) scheduling certain dates in connection with Plan confirmation.

3.    Pursuant to the ~~Disclosure Statement~~**Confirmation Procedures** Order, the Bankruptcy Court established the deadline by which votes to accept or reject the Plan must be actually received by BMC Group, Inc. (the "Voting Agent") as [          ], 2009 at [      ] [ ].m. **(prevailing Eastern time)** (the "Voting Deadline").

4.    A hearing (the "Confirmation Hearing") will be held before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219 **on [    ], 2009 at [      ] [ ].m. (prevailing Eastern time)**, to consider the entry of an order, among other things, confirming the Plan under section 1129 of the Bankruptcy Code.

5.    **INJUNCTIONS: The Plan proposes injunctions under sections 524(g) and 105 of the Bankruptcy Code, applicable to all persons and entities, that result in the permanent channeling of (i) all Asbestos PI Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to an Asbestos PI Trust, (ii) all Asbestos PD Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to an Asbestos PD Trust and (iii) all CDN ZAI PD Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to the CDN ZAI PD Claims Fund, all as more specifically described in the Plan. The Plan also proposes an injunction applicable to all persons and entities that enjoins all Successor Claims against the Asbestos Protected Parties based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction, as more specifically described in the Plan. These injunctions enjoin all persons and entities from bringing claims covered by the particular injunctions against the Debtors and the other identified parties in the Plan. You should read the Plan and the Disclosure Statement for a more complete discussion of how such injunctions will operate and affect your rights.**

6.    **SPECIFIC RELEASES BY HOLDERS OF CLAIMS OR EQUITY INTERESTS: As more fully provided for in Section 8.8.7 of the Plan, each Holder of a Claim or Equity Interest who votes in favor of the Plan shall be deemed to have unconditionally released the Asbestos Protected Parties, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee, the Asbestos PI FCR and the Asbestos PD FCR, and each party's Representatives, as of the Effective Date, from any and all Claims, SA Claims, SA Damages, obligations, rights, suits, damages, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or**

2                                                        Exhibit F

**collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, their operations on or before the Effective Date, their respective property, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments, or other documents. In addition to the foregoing, each Holder of a Claim or Equity Interest who receives or retains any property under this Plan shall also be deemed to unconditionally release the Fresenius Indemnified Parties to the same extent as the release in the preceding sentence.**

7.      The Plan constitutes a motion to assume certain executory contracts and unexpired leases as of the Effective Date and provides for the rejection of certain other executory contracts and unexpired leases as of the Effective Date.  Section 9.1 of the Plan sets forth (i) the treatment of executory contracts and unexpired leases under the Plan, (ii) the procedures relating to assumption of executory contracts and unexpired leases under the Plan, including procedures and deadlines for counterparties to assert or object to any cure amount that may be owing in relation to the assumption of an executory contract or unexpired lease, and (iii) the procedures for filing proofs of claim arising from any contract that will be rejected under the Plan. Counterparties to executory contracts or unexpired leases should receive separate notice of these procedures and may obtain a copy of that notice as described in Paragraph ~~8~~9 below.

8.      Section 3.1.9(b) of the Plan provides for the payment of post-petition interest to Holders of General Unsecured Claims and provides procedures for such Holders to (i) assert an entitlement to post-petition interest in a different amount than provided for in the Plan (a "Post-Petition Interest Determination Notice") or (ii) identify a non-default contract rate of interest to which the Holder is entitled under the Plan (a "Notice of Non-Default Contract Rate of Interest").  A Post-Petition Interest Determination must comply with the requirements of Section 3.1.9(d) of the Plan and be filed with the Bankruptcy Court **on or before _____, ____**.  A Notice of Non-Default Contract Rate of Interest must comply with the requirements of Section 3.1.9(e) of the Plan and be received by the Voting Agent (at the address listed in Paragraph 10) **on or before _____, _____.**  Holders of General Unsecured Claims should receive separate notice of these procedures and obtain a copy of that notice as described in Paragraph 9 below.

9.      In accordance with the Confirmation Procedures Order, certain materials (the "Solicitation Package"), including a copy of the Disclosure Statement and Plan, have been provided with this Notice to Holders of Claims and Equity Interests in impaired classes under the Plan and to Holders of Claims in Classes 7 and 9 under the Plan.[3]  In addition, the Confirmation Procedures Order authorized the Debtors to distribute (i) a notice to counterparties to executory contracts and unexpired leases describing the treatment of executory contracts and unexpired leases under the Plan, and (ii) a notice to Holders of Class 9 General Unsecured Claims ~~describing~~**regarding** the Plan's ~~provisions~~**procedures** with respect to the payment of post-petition interest in relation to General Unsecured Claims.  The Plan, Disclosure Statement**,**

---

[3] Contents of the Solicitation Package are described in the Voting Procedures.

**Voting Procedures** and related documents and notices are also available via the internet on the Debtors' website at www.wrgrace.com and on Voting Agent's website at www.bmcgroup.com/wrgrace. If you did not receive a Solicitation Package, but wish to receive one, you should send a written request by U.S. Mail to BMC Group, Inc., Attn: W. R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913. Creditors and Equity Interest Holders who are entitled to vote on the Plan should receive Ballots and instructions for voting in their Solicitation Package. Creditors who are Holders of Claims that are not entitled to vote on the Plan should**will not** receive ~~only this Notice~~**a Solicitation Package**.

10.     If a Holder a Claim is not entitled to vote under the Voting Procedures or disagrees with the amount of its Claim for voting purposes, such Holder may file a motion with the Bankruptcy Court, pursuant to Bankruptcy Rule 3018(a) and Section 10(f)(i) of the Voting Procedures, requesting temporary allowance of such Claim in an amount which the Bankruptcy Court deems proper solely for the purpose of casting a vote to accept or reject the Plan (a "Voting Motion"). **All Voting Motions must be filed and served in accordance with the Voting Procedures on or before the Voting Deadline.** If a Holder of a Claim intends to pursue an objection to confirmation of the Plan on the grounds that such Holder's Claim is not properly classified, such Holder may request a Ballot from the Voting Agent for provisional voting under a different Class and may vote to accept or reject the Plan by filing a Disputed Classification Declaration **on or before the Voting Deadline** pursuant to Section 10(f)(ii) of the Voting Procedures.  **The Voting Procedures may be obtained from the Voting Agent pursuant as described in Paragraph 9 above.**

11.     Subject to the provisions for filing a Voting Motion or Disputed Classification Declaration, to be counted, a Ballot (or Master Ballot) to accept or reject the Plan must be actually received by the Voting Agent by the Voting Deadline as follows:

| **By U.S. Mail:** | **By Courier:** |
|---|---|
| BMC Group, Inc. | BMC Group, Inc. |
| Attn:  W. R. Grace Voting Agent | Attn:  W. R. Grace Voting Agent |
| P.O. Box 2007 | 17850 Lake Drive East |
| Chanhassen, MN 55317-2007 | Chanhassen, MN 55317 |

**The Voting Deadline is [          ], 2009.**

12.     Responses and objections, if any, to the confirmation of the Plan or any relief sought by the Debtors in connection with confirmation of the Plan, must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection to the Plan and, if practicable, proposed modification to the Plan that would resolve such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by [_____], 2008 at 4:00 p.m. (prevailing Eastern Time), on (a) counsel to the Debtors, (b) counsel to each of the statutory committees appointed in these chapter 11 cases, (c) counsel to each of the future claimants' representatives appointed in these chapter 11 cases, (d) counsel to Sealed Air Corporation and Cryovac, Inc., (e) counsel to Fresenius, and (f) the United States Trustee, whose addresses are set forth in Section 11.11 of the Plan, except for the United States

4                                    Exhibit F

Trustee, who shall be served at:  Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, Delaware 19801.

**ANY OBJECTION TO THE CONFIRMATION OF THE PLAN THAT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN SHALL NOT BE CONSIDERED.**

13.    The Confirmation Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by an announcement in the Bankruptcy Court of such adjournment at the Confirmation Hearing or any continued hearing.

Dated: _____, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore L. Freedman
Janet S. Baer
Deanna D. Boll
Craig A. Bruens
153 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone:  (302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

Exhibit F

Document comparison done by Workshare DeltaView on Thursday, November 20, 2008 2:15:44 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://NYDMS/LEGAL/13260561/8 |
| Document 2 | interwovenSite://NYDMS/LEGAL/13260561/9 |
| Rendering set | Basic K&E |

| Legend: |
|---|
| **<u>Insertion</u>** |
| ~~Deletion~~ |
| *~~Moved from~~* |
| *<u>Moved to</u>* |
| Style change |
| Format change |
| <span style="color:red">Moved deletion</span> |

| Inserted cell | |
|---|---|
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| **No.** | **Change** | **Text** |
| 1-2 | Change | "K&E 13260561.8" changed to "K&E 13260561.9" |
| 3-4 | Change | "K&E 13260561.8" changed to "K&E 13260561.9" |
| 5-6 | Change | "3.      Pursuant to the...Court established" changed to "3.          Pursuant to the...Court established" |
| 7-8 | Change | "notice as described in Paragraph 8 below." changed to "notice as described in Paragraph 9 below." |
| 9-10 | Change | "Class 9 General Unsecured...describing the Plan" changed to "Class 9 General Unsecured...regarding the Plan" |
| 11-12 | Change | "s provisions with respect to the payment of" changed to "s procedures with respect to the payment of" |
| 13 | Change | "The Plan, Disclosure...documents and notices" |

|  |  | changed to "The Plan, Disclosure...documents and notices" |
|---|---|---|
| 14-15 | Change | "not entitled to vote on the Plan should receive" changed to "not entitled to vote on the Plan will not receive" |
| 16-17 | Change | "receive only this Notice." changed to "receive a Solicitation Package." |
| 18 | Insertion | 10(f)(ii) of the Voting...in Paragraph 9 above. |

| Statistics: | |
|---|---|
|  | Count |
| Insertions | 10 |
| Deletions | 8 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 18 |

Legal Notice                                                                        Legal Notice

# Notice of Voting Rights and Hearing to Consider Approval of Joint Plan of Reorganization for W. R. Grace & Co. and its Related Debtors

A Joint Plan ("Plan") to reorganize W. R. Grace & Co and its related Debtors ("Grace") has been filed in the United States Bankruptcy Court for the District of Delaware. Persons or entities with claims against or interests in Grace, including persons with Asbestos Personal Injury ("PI"), Asbestos Property Damage ("PD") or Zonolite Attic Insulation ("ZAI") claims against Grace, may be entitled to vote to accept or reject the Plan. A list of the Debtors may be found at www.wrgrace.com.

A detailed document describing the Plan, called the "Disclosure Statement," was approved by the Bankruptcy Court on [**Month Date, 2008**]. The Disclosure Statement, a copy of the Plan itself and voting materials called a "Solicitation Package," have been mailed to known persons or entities entitled to vote to accept or reject the Plan or to their lawyers.

### What Does the Plan Say?

The Plan proposes injunctions and third-party releases under the Bankruptcy Code resulting in the permanent channeling of PI, PD and ZAI Claims into various Trusts and Funds. This means that Grace and other "Asbestos Protected Parties" will no longer be liable for PI, PD and ZAI claims because these claims will now be paid by the Trusts or Funds. (The Plan also proposes an injunction that enjoins all Successor Claims against the Asbestos Protected Parties, as more specifically described in the Plan.) You should read the Plan and Disclosure Statement for a more complete discussion of how these releases and injunctions will operate and affect your rights.

### How Do I Know If I Am Eligible To Vote?

The Bankruptcy Court has approved certain "Voting Procedures" describing who can vote on the Plan and how to vote. You may obtain a copy of the Voting Procedures by writing or calling the Voting Agent at the address or number below. The Disclosure Statement contains information that will help you decided how to vote on the Plan if you are entitled to do so. **Your legal rights may be affected if you do not vote on the Plan.** If you are not entitled to vote or you disagree with the amount or classification of your claim for voting purposes, you may file a motion or a declaration with the Bankruptcy Court on or before the Voting Deadline as more thoroughly described in the Voting Procedures.

> **Votes Must Be Received By [Month Date Year] ("Voting Deadline")**

### Can I Respond or Object to the Plan?

~~Responses:~~**The Bankruptcy Court has ordered that responses** and objections to the Plan must:

- Be in writing;
- State the name and address of the objecting party and the amount and nature of ·the claim or interest of such party;
- Explicitly state the basis and nature of any objection to the Plan and any proposed modification to the Plan that would resolve such objection;
- Conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and
- Be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by [**Month Date Year**] **at 4:00 PM EST**.

Objections must be served on a number of different individuals and entities whose addresses are set forth in Section 11.11 of the Plan. In addition, objections must be served on the Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, Delaware 19801.

**Any objection to the confirmation of the ~~p~~Plan that is not filed and served as ~~prescribed herein~~described above shall not be considered.**

### How Will The Plan be Approved?

A "Confirmation Hearing" will be held before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219 [**Month Date Year at Time**] to consider confirming the Plan. The Confirmation Hearing may be adjourned from time to time by an announcement at the Confirmation Hearing or any continued hearing.

**To obtain the Plan, Disclosure Statement, Voting Procedures and/or a Ballot**
## Visit: www.bmcgroup.com/wrgrace
**Write: BMC Group, Inc., Attn: W. R. Grace Voting Agent,**
**P.O. Box 913, El Segundo, CA 90245-0913**

<u>Exhibit H</u>

**Call: ((888) 909-0100)**



Document comparison done by Workshare DeltaView on
Thursday, November 20, 2008 1:43:46 PM

| Input: | |
|--------|--|
| Document 1 | interwovenSite://NYDMS/LEGAL/13481466/3 |
| Document 2 | interwovenSite://NYDMS/LEGAL/13481466/4 |
| Rendering set | Basic K&E |

| Legend: |
|---------|
| **Insertion** |
| ~~Deletion~~ |
| *~~Moved from~~* |
| *Moved to* |
| Style change |
| Format change |
| Moved deletion |

| Inserted cell | |
|---------------|--|
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|------------------|---|---|
| **No.** | **Change** | **Text** |
| 1-2 | Change | "K&E 13481466.3" changed to "K&E 13481466.4" |
| 3-4 | Change | "Responses and objections to the Plan must:" changed to "The Bankruptcy Court has...to the Plan must:" |
| 5-6 | Change | "objection to the confirmation of the plan" changed to "objection to the confirmation of the Plan" |
| 7-8 | Change | "that is not filed and...shall not be considered." changed to "that is not filed and...shall not be considered." |

| Statistics: | |
|-------------|--|
| | Count |
| Insertions | 4 |
| Deletions | 4 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 8 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.,** *et al.***1** | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |

## NOTICE TO COUNTERPARTIES TO
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On November __, 2008, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of November __, 2008* (as it may be amended or supplemented, the "Plan") and the Disclosure Statement, pursuant to section 1125 of the Bankruptcy Code, for the Plan (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement").2

2.      On [      ], 2008, after notice and a hearing, pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the

---

**1**    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc.,  CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2    Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

"Disclosure Statement Order") (a) approving the Disclosure Statement as providing adequate information for Holders of Claims and Equity Interests to make a decision as to whether to accept or reject the Plan, (b) approving certain procedures (the "Voting Procedures") for the Debtors to solicit and tabulate votes to accept or reject the Plan and (c) scheduling certain dates in connection with Plan confirmation.

3.      The Disclosure Statement, the Disclosure Statement Order, the Plan and other documents and materials related thereto may be obtained by contacting the Debtors' Voting Agent, BMC Group, Inc., at (888) 909-0100, sending an email to wrgrace@bmcgroup.com, or sending a written request by U.S. Mail to:

> BMC Group, Inc.
> Attn: W. R. Grace Voting Agent
> P.O. Box 913
> El Segundo, CA 90245-0913

4.      **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS LISTED AS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS.**[3]

5.      **Assumption Generally**:  Section 9.1.1 of the Plan provides that, except for (i) executory contracts and unexpired leases that the Debtors reject prior to the Effective Date or designate (on a list set forth in Exhibit 18 in the Exhibit Book) as being subject to rejection in connection with the Effective Date; (ii) the TSIA which shall be terminated (except for Section 4.04) upon the effective date of the Fresenius Settlement Agreement; and (iii) agreements, to the extent executory, that create an obligation of the Debtors to reimburse or indemnify third parties (other than the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties) with respect to Asbestos PI Claims, Asbestos PD Claims or CDN ZAI PD Claims (other than all Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements, and Asbestos In-Place Insurance Coverage, to the extent they are executory, and the 1998 Tax Sharing Agreement), all executory contracts and unexpired leases (including all Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements, and Asbestos In-Place Insurance Coverage, to the extent they are executory, and the 1998 Tax Sharing Agreement) not previously assumed by the Debtors pursuant to Bankruptcy Code § 365 shall be deemed to have been assumed by the Reorganized Debtors on the Effective Date, and that the Plan shall constitute a motion to assume such executory contracts and unexpired leases as of the Effective Date.

6.      **Assumption Procedures**:  Section 9.1.2 of the Plan provides that, not later than twenty (20) days after entry of the Confirmation Order, the Debtors will File with the Bankruptcy Court an exhibit (the "Cure Exhibit") setting forth those executory contracts and unexpired leases which are being assumed by the Debtors and as to which the Debtors believe that cure amounts are owing, together with the respective cure amounts due for each such executory contract or assumed lease.  The Debtors shall serve the Cure Exhibit on each non-

---

[3]    This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases listed on the Debtors' Schedules of Executory Contracts filed with the Bankruptcy Court on or about June 1, 2001.  This Notice is not an admission by the Debtors that any contract or lease is executory or unexpired.

Debtor party to an executory contract or unexpired lease being assumed pursuant to the Plan, including those listed on such exhibit.  If there is a dispute regarding (i) the nature or amount of any cure, (ii) the ability of a Reorganized Debtor or assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (iii) any other matter pertaining to assumption, cure will occur following the entry of a Final Order resolving the dispute and approving the assumption.  With respect to any executory contracts or unexpired leases which are being assumed by the Debtors but as to which the Debtors contend that no cure amounts are due, such executory contracts and unexpired leases will not be included on the Cure Exhibit.

      7.      Section 9.1.2 of the Plan further provides that, not later than twenty (20) days after the Filing and service of the Cure Exhibit, the non-Debtor party to any executory contract or unexpired lease that the Debtors propose to assume, whether or not listed on the Cure Exhibit, may dispute the cure amount, if any, set forth by the Debtors on the Cure Exhibit pursuant to Section 9.1.1 of the Plan, assert that a cure amount should be owing with respect to any executory contract or unexpired lease that is being assumed,  or otherwise object to the assumption of the executory contract or unexpired lease indicated in Section 9.1.1 of the Plan by Filing a written objection with the Bankruptcy Court and serving such objection on counsel for the Debtors.  If no objection to the cure amount or the proposed assumption is properly Filed and served within twenty (20) days after the Filing **and service** of the Cure Exhibit, then (i) the proposed assumption of the executory contract**s** or unexpired leases shall be deemed approved without further action of the Bankruptcy Court in accordance with the Plan and the Confirmation Order, effective as of the Effective Date, and (ii) the cure amount, if any, identified by the Debtors in the Cure Exhibit shall be fixed and shall be paid in **full in** Cash on the Effective Date or on such other terms as are agreed to by the parties to such executory contract or unexpired lease.  Section 9.1.2 also provides procedures for resolving any objection to the cure amount or the proposed assumption that is properly Filed and served within twenty (20) days after the Filing and service of the Cure Exhibit.

      8.      **Rejection of Certain Executory Contracts and Unexpired Leases**:  Section 9.1.3 of the Plan provides that, on the Effective Date, each executory contract and unexpired lease listed on Exhibit 18 in the Exhibit Book shall be rejected pursuant to section 365 of the Bankruptcy Code.  Each contract and lease listed on Exhibit 18 shall be rejected only to the extent that such contract or lease constitutes an executory contract or unexpired lease.  Listing a contract or lease on Exhibit 18 shall not constitute an admission by the Debtors or Reorganized Debtors that such contract or lease is an executory contract or unexpired lease or that the Debtors or Reorganized Debtors have any liability thereunder.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interests of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.  A copy of Exhibit 18 is enclosed with this Notice.

      9.      Section 9.1.3 of the Plan further provides that the Debtors shall have the right until ten (10) days prior to the Effective Date to modify the list of rejected contracts included in Exhibit 18 enclosed with this notice to add executory contracts or leases (but not the 1998 Tax Sharing Agreement or any Asbestos Insurance Policy, Asbestos Insurance Settlement Agreement, or Asbestos In-Place Insurance Coverage) or remove executory contracts or leases

(but not Section 4.04 of the TSIA addressed in Section 8.8.4(b) of this Plan), *provided, however,* that the Debtors shall File a notice with the Bankruptcy Court and serve each affected party with such notice.  Notwithstanding the foregoing, such affected parties shall not be entitled to any Administrative Expense Claim for any executory contracts or leases added to the list of rejected contracts and will only be entitled to a Claim for rejection damages.

10.    Section 9.1.3 of the Plan further provides that, to the extent executory, all agreements that create an obligation of the Debtors to reimburse or indemnify third parties (other than the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties) with respect to Asbestos PI Claims, Asbestos PD Claims or CDN ZAI PD Claims (other than Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements, or Asbestos In-Place Insurance Coverage, to the extent any are executory, and the 1998 Tax Sharing Agreement) shall be deemed rejected by operation of entry of the Confirmation Order, subject to the occurrence of the Effective Date, unless expressly identified and assumed pursuant to **the Plan, a Plan Document or** an order of the Bankruptcy Court.

11.    **Rejection Damage Claims**.  Section 9.1.3 of the Plan provides that, pursuant to the terms of the March 2003 Bar Date Order and Bankruptcy Rule 3002(c)(4), and except as otherwise ordered by the Bankruptcy Court, a proof of claim for each Claim arising from the rejection of an executory contract or unexpired lease pursuant to th~~is~~**e** Plan or otherwise shall be Filed with the Bankruptcy Court within thirty (30) days of the later of: (i) the date of the entry of an order, approving such rejection, or (ii) the Effective Date.  Any Claims not Filed within such applicable time period shall be forever barred from assertion.  Except with respect to Claims arising from the rejection of an executory contract or unexpired lease that creates an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos PI Claims, Asbestos PD Claims or CDN ZAI PD Claims, all Claims for damages arising from the rejection of an executory contract or unexpired lease shall be included in Class 9 and shall be treated in accordance with Article 3 of the Plan.  All Claims for damages arising from the rejection of an agreement that creates an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos PI Claims, Asbestos PD Claims or CDN ZAI PD Claims shall be included in Class 6, Class 7 or Class 8, respectively, and shall be treated in accordance with Article 3 of the Plan.

**YOUR STATUS AS A COUNTERPARTY TO AN EXECUTORY CONTRACT AND/OR AN UNEXPIRED LEASE DOES NOT IN AND OF ITSELF ENTITLE YOU TO VOTE ON THE PLAN.**

Exhibit I

Dated: _____, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

--and--

KIRKLAND & ELLIS LLP
Theodore L. Freedman
Deanna D. Boll
Craig A. Bruens
153 East 53rd Street
New York, New York 10022
Telephone:  (212) 446-4800

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone:  (302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

5

Exhibit I

Document comparison done by Workshare DeltaView on Thursday, November 20, 2008 2:13:21 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://NYDMS/LEGAL/13618083/2 |
| Document 2 | interwovenSite://NYDMS/LEGAL/13618083/3 |
| Rendering set | Basic K&E |

| Legend: |
|---|
| **<u>Insertion</u>** |
| ~~Deletion~~ |
| *~~Moved from~~* |
| *<u>Moved to</u>* |
| Style change |
| Format change |
| Moved deletion |

| Inserted cell | |
|---|---|
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| **No.** | **Change** | **Text** |
| 1-2 | Change | "K&E 13618083.2" changed to "K&E 13618083.3" |
| 3 | Change | "twenty (20) days after...Exhibit, then (i) the" changed to "twenty (20) days after...Exhibit, then (i) the" |
| 4 | Insertion | assumption of the executory contracts |
| 5 | Change | "shall be fixed and shall...the Effective Date or on" changed to "shall be fixed and shall...the Effective Date or on" |
| 6 | Change | "identified and assumed...of the Bankruptcy Court." changed to "identified and assumed...of the Bankruptcy Court." |
| 7-8 | Change | "or unexpired lease pursuant to this" changed to "or unexpired lease pursuant to the" |

| Statistics: | |
|---|---|
| | Count |

| Insertions | 6 |
|---|---|
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 8 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.,** *et al.***[1]** | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |

## NOTICE OF PROCEDURES RELATING TO PAYMENT
## OF POST-PETITION INTEREST ON GENERAL UNSECURED CLAIMS

On November __, 2008, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of November __, 2008* (as it may be amended or supplemented, the "<u>Plan</u>") and a Disclosure Statement with respect to the Plan (as it may be amended or supplemented, the "<u>Disclosure Statement</u>") pursuant to section 1125 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>").[2]

On [_____], 2008, the Bankruptcy Court entered an order (the "<u>Confirmation Procedures Order</u>") that, among other things, approved the Disclosure Statement as containing adequate information, as required under section 1125(a) of the Bankruptcy Code, and authorized the Debtors to solicit votes to accept or reject the Plan.

---

[1]   The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]   All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

<u>Exhibit J</u>

K&E ~~13618863.3~~13618863.4

The Disclosure Statement, Confirmation Procedures Order, Plan and other related documents and materials may be obtained from the Debtors' voting and claims reconciliation agent, BMC Corp., Inc., (i) at its website at www.bmcgroup.com/wrgrace, (ii) by writing to: BMC Group, Inc., Attn: W. R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913, (iii) by calling (888) 909-0100 or (iv) by emailing wrgrace@bmcgroup.com.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE OR MIGHT BE THE HOLDER OF A CLASS 9 GENERAL UNSECURED CLAIM IN ORDER TO INFORM YOU OF CERTAIN PROCEDURES AND DEADLINES IN THE PLAN WITH REGARD TO THE TREATMENT OF CLASS 9 CLAIMS. THIS NOTICE SUMMARIZES CERTAIN PLAN PROVISIONS, BUT YOU SHOULD REVIEW THE PLAN AND DISCLOSURE STATEMENT FULLY TO UNDERSTAND HOW YOUR RIGHTS MAY BE AFFECTED.**

### Plan Treatment of General Unsecured Claims

Under Section 3.1.9(b) of the Plan, as summarized below, each Holder of a Class 9 General Unsecured Claim shall be paid the Allowed Amount of its Allowed General Unsecured Claim plus post-petition interest on such Claim either (i) in Cash in full on the later of (A) the Effective Date or (B) the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, or (ii) on such other less favorable terms as have been agreed upon by the Holder of an Allowed General Unsecured Claim and the Debtors or the Reorganized Debtors. Subject to Section 3.1.9(d) of the Plan, post-petition interest on Allowed General Unsecured Claims shall be calculated as follows (i) either:

(A)     for General Unsecured Claims arising from the Pre-petition Credit Facilities, post-petition interest shall be calculated at the rate of 6.09% from the Petition Date through December 31, 2005 and thereafter at floating prime, in each case compounded quarterly through the Effective Date ~~or the date such General Unsecured Claim becomes an Allowed Claim~~;

(B)     for General Unsecured Claims arising from Environmental Claims that include a liquidated amount for post-petition or future cleanup liability, post-petition interest shall be calculated at the rate of 4.19% from the date of any order allowing the Environmental Claim in such liquidated amount, compounded annually through the Effective Date or the date **of payment of** such General Unsecured Claim **if it** becomes an Allowed Claim **after the Effective Date**;

(C)     for General Unsecured Claims arising from an existing contract that specifies payment of interest at a non-default rate of interest, post-petition interest shall be calculated at the non-default rate of interest provided in such contract from the Petition Date, compounded annually through the Effective Date or the date ~~such~~**of payment of the** General Unsecured Claim **if it** becomes an Allowed Claim **after the Effective Date**; or

(D)     for all other General Unsecured Claims, post-petition interest shall be calculated at the rate of 4.19% from the Petition Date, compounded annually through the Effective Date or the date **of payment of** such General Unsecured Claim **if it** becomes an Allowed Claim **after the Effective Date**; or

(ii) on such other less favorable terms as have been agreed upon by the Holder of an Allowed General Unsecured Claim and the Debtors or Reorganized Debtors, including an agreement whereby no post-petition interest is paid on the Claim or post-petition interest begins to accrue on the Claim on a date other than the Petition Date.

Exhibit J

## Procedures for Resolving Post-Petition Interest Disputes

Section 3.1.9(d) of the Plan provides for the following procedures for a Holder of a General Unsecured Claim to dispute the post-petition interest treatment under the Plan:

i.    If any Holder of a General Unsecured Claim, other than a Holder of a General Unsecured Claim arising from the Pre-petition Credit Facilities (which Claims are subject to a pending objection and litigation concerning the amount of post-petition interest) believes that it is entitled to post-petition interest at a rate or calculation other than the treatment set forth in Section 3.1.9(b) of the Plan, such Holder may File with the Bankruptcy Court a "Post-Petition Interest Determination Notice" by no later than the deadline established by the Bankruptcy Court for Claimants to vote to accept or reject the Plan, which is **[Month Day, Year]**, as set forth in the Confirmation Procedures Order.

ii.    Any Post-petition Interest Determination Notice that is Filed shall (A) identify the Claim and the requested rate of post-petition interest applicable to such Claim and (B) attach documentation supporting the payment of such rate of interest for the Claim. **Failure to timely File a Post-Petition Interest Determination Notice with the required information and supporting documentation will be deemed an agreement to accept the post-petition interest treatment provided for in Section 3.1.9(b) of the Plan.**

iii.    The Debtors or Reorganized Debtors, as applicable, may dispute any Post-Petition Interest Determination Notice by Filing an objection thereto by no later than 60 days after the Effective Date. In objecting to a Post-Petition Interest Determination Notice, the Debtors or Reorganized Debtors may assert that the Holder of the General Unsecured Claim that Filed the Post-Petition Interest Determination Notice is entitled to no post-petition interest under applicable law or an amount of post-petition interest less than the amount provided for in Section 3.1.9(b) of the Plan. If the Debtors or Reorganized Debtors object to a Post-Petition Interest Determination Notice, then they shall also assert any and all objections that they may have to the underlying General Unsecured Claim within the same objection notwithstanding the time to file such other objections set forth in Section 5.1 of the Plan. All Post-Petition Interest Determination Notices not resolved by stipulation or certificate of no objection shall be resolved in the Bankruptcy Court as claims allowance litigation, subject to the same bankruptcy rules and procedures that would have applied had the litigation been conducted before the Effective Date.

## Procedures for Determining Non-Default Contract Rate of Interest

Section 3.1.9(e) of the Plan provides for the following procedures for a Holder of a General Unsecured Claim to substantiate the existence of a non-default contract rate of interest applicable to such Claim as contemplated by Section 3.1.9(b) of the Plan:

i.    Any Holder of a General Unsecured Claim, other than a Holder of a General Unsecured Claim arising from the Pre-petition Credit Facilities, who does not dispute the manner in which post-petition interest shall be calculated as provided for in Section 3.1.9(b) of the Plan, but who wishes to substantiate the existence of an existing contract that specifies payment of interest at a non-default rate of interest as contemplated by Section 3.1.9(b)(i)(C), shall submit an "Notice of Non-Default Contract Rate of Interest" to the Debtors' voting and claims reconciliation agent, BMC Group, Inc (at the address listed below), by no later than the deadline established by the Bankruptcy Court for Claimants to vote to accept or reject the Plan, which is **[Month Day, Year]**, as set forth in the Confirmation Procedures Order.

**By U.S. Mail:**                                    **By Courier:**
BMC Group, Inc.                                 BMC Group, Inc.
Attn:  W. R. Grace Voting Agent      Attn:  W. R. Grace Voting Agent
P.O. Box 2007                                     17850 Lake Drive East
Chanhassen, MN 55317-2007          Chanhassen, MN 55317

ii.  Any Notice of Non-Default Contract Rate of Interest shall (A) identify the Claim and the non-default contractual rate of interest applicable to such Claim, (B) attach a copy of the contract relating to such Claim and (C) be signed by the Holder of the Claim or its authorized representative under penalty of perjury.  A Notice of Non-Default Contract Rate of Interest does not need to be Filed with the Bankruptcy Court.  **Failure by a Holder or its representative to timely submit a Notice of Non-Default Contract Rate of Interest will be deemed an admission that no non-default contract rate of interest exists with respect to such Holder's General Unsecured Claim, and said Holder of the General Unsecured Claim shall receive interest as set forth in Section 3.1.9(b)(i)(D) of the Plan (provided that the Holder of the General Unsecured Claim has not Filed a Post-Petition Interest Determination Notice).**

iii.  At any time before the Effective Date, the Debtors may dispute any Notice of Non-Default Contract Rate of Interest by serving a written objection upon the Holder of a General Unsecured Claim who has submitted a Notice of Non-Default Contract Rate of Interest.  If a resolution is not reached between the parties, the Holder of the General Unsecured Claim may request a hearing before the Bankruptcy Court to resolve the objection to its Notice of Non-Default Contract Rate of Interest, *provided, however,* that such request must be made no later than 60 days after the Effective Date and that the only issue to be determined by the Bankruptcy Court at such a hearing shall be the appropriate amount of non-default contract interest with respect to the General Unsecured Claim, which shall be paid on the Post-Effective Distribution Date in relation to a Final Order making such determination.  If the Debtors do not dispute a Notice of Non-Default Contract Rate of Interest by serving a written objection upon the Holder of a General Unsecured Claim who has submitted a Notice of Non-Default Contract Rate of Interest, then the interest rate contained in the Notice of Non-Default Contract Rate of Interest shall govern and be paid.

**PLEASE READ THE PLAN AND DISCLOSURE STATEMENT FOR MORE INFORMATION.**

Dated: _____, 2008

KIRKLAND & ELLIS LLP                          PACHULSKI STANG ZIEHL & JONES LLP
David M. Bernick, P.C.                             Laura Davis Jones (Bar No. 2436)
Theodore L. Freedman                             James E. O'Neill (Bar No. 4042)
Janet S. Baer                                             Timothy P. Cairns (Bar No. 4228)
Deanna D. Boll                                         919 North Market Street, 17th Floor
Craig A. Bruens                                        P.O. Box 8705
153 East 53rd Street                                 Wilmington, Delaware 19899-8705
New York, New York 10022                    Telephone:  (302) 652-4100
Telephone:  (212) 446-4800

Co-Counsel for the Debtors and Debtors in Possession

Document comparison done by Workshare DeltaView on Thursday, November 20, 2008 2:23:20 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://NYDMS/LEGAL/13618863/3 |
| Document 2 | interwovenSite://NYDMS/LEGAL/13618863/4 |
| Rendering set | Basic K&E |

| Legend: |
|---|
| **Insertion** |
| ~~Deletion~~ |
| *~~Moved from~~* |
| *Moved to* |
| Style change |
| Format change |
| Moved deletion |

| Inserted cell | |
|---|---|
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| No. | Change | Text |
| 1-2 | Change | "K&E 13618863.3" changed to "K&E 13618863.4" |
| 3 | Change | "quarterly through the...an Allowed Claim;" changed to "quarterly through the Effective Date;" |
| 4 | Change | "the Effective Date or the...General Unsecured Claim" changed to "the Effective Date or the...General Unsecured Claim" |
| 5 | Change | "such General Unsecured...becomes an Allowed Claim" changed to "such General Unsecured...becomes an Allowed Claim" |
| 6 | Change | "becomes an Allowed Claim;" changed to "becomes an Allowed Claim...the Effective Date;" |
| 7-8 | Change | "the Effective Date or the...General Unsecured Claim" changed to "the Effective Date or the...General Unsecured Claim" |
| 9 | Change | "General Unsecured Claim becomes an Allowed Claim" changed to "General Unsecured |

| | | Claim...becomes an Allowed Claim" |
|---|---|---|
| 10 | Change | "becomes an Allowed Claim; or" changed to "becomes an Allowed Claim...the Effective Date; or" |
| 11 | Change | "the Effective Date or the...General Unsecured Claim" changed to "the Effective Date or the...General Unsecured Claim" |
| 12 | Change | "such General Unsecured...becomes an Allowed Claim" changed to "such General Unsecured...becomes an Allowed Claim" |
| 13 | Change | "becomes an Allowed Claim; or" changed to "becomes an Allowed Claim...the Effective Date; or" |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 10 |
| Deletions | 3 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 13 |