# EXHIBIT 2

# SECOND AMENDMENT

**Second Amendment to Real Property Purchase and Sale Agreement and Escrow Instructions**

THIS SECOND AMENDMENT TO REAL PROPERTY PURCHASE AND SALE AGREEMENT AND ESCROW INSTRUCTIONS (this "Amendment") is made and entered into as of this 14th day of November, 2008, by and between W. R. Grace & Co. – Conn. ("Seller") and ALCO Iron & Metal Co. ("Purchaser").

**WITNESSETH:**

WHEREAS Seller and Purchaser entered into that certain Real Property Purchase and Sale Agreement and Escrow Instructions dated as of September 17, 2008 (the "Agreement") for the purchase and sale of that certain property located at 2140 Davis Street, San Leandro, California; and

WHEREAS Buyer and Seller executed a First Amendment to the Agreement on November 3, 2008 in order to extend the Due Diligence Period; and

WHEREAS Buyer and Seller have agreed to further extensions of the Due Diligence Period to and including November 14, 2008, and additional modifications to the terms of the Agreement, on the terms and conditions set forth herein below,

NOW, THEREFORE, for and in consideration of the foregoing recitals, and for other good and valuable consideration, Seller and Purchaser do hereby agree as follows:

1. **Modified Terms.**

    A.  Section 2.01 (f) is hereby deleted in its entirety and the following is inserted in its place:

    "Not later than December 31, 2008.

    B.  Section 2.01 (i), as amended by the First Amendment, is hereby deleted in its entirety and the following is inserted in its place:

    "Due Diligence Period": The period commencing on September 17, 2008 and ending at 5:00 p.m. Pacific Time on Monday, December 15, 2008

    C.  Section 2.01 (v) is hereby amended by the deletion of the words and number "Six Million Five Hundred Thousand Dollars ($6,500,000.00)" and by the insertion of the words and number "Six Million Three Hundred Thousand Dollars ($6,300,000.00)" in its place. In addition, the following provision is added to the end of Section 2.01 (v):

    > The parties have agreed to a $200,000 reduction in the Purchase Price because the Purchaser intends to remove transite found on the exterior of the Buildings, excluding the transite on the roofs. Purchaser shall provide reasonable evidence to Seller that it has removed the transite and installed new replacement materials

1

within twelve (12) months following Closing; if Purchaser has not removed the transite within such timeframe, Purchaser shall refund promptly to Seller the $200,000. The provisions of this Section 2.01 (v) shall survive Closing and delivery of the deed.

D. Section 2.01 is hereby amended to add the following definitions:

(hh) "Closure": As defined in Section 5.03(c)(8) in this Amendment.

(ii) "Closure Letter": As defined in Section 5.03(c)(8) in this Amendment.

(jj) "Post-Remedy Response Actions": As defined in 5.03(c)(8) in this Amendment.

E. Section 3.02 (b) is hereby amended by the deletion of the phrase "on the last day of the Due Diligence Period" and the insertion of the phrase "on November 17, 2008" in its place.

F. Section 4.02 is hereby amended by the addition of the following new subparagraph (f):

(f) Seller has engaged the services of a professional environmental consultant to prepare a Feasibility Study to evaluate potential additional remedial alternatives to address the Toluene Releases and will at its sole cost provide a copy of this report to Purchaser by November 21, 2008, or promptly upon receipt by Seller, whichever is later.

G. Section 4.02 is hereby amended by the addition of the following new subparagraph (g):

(g) Seller has engaged the services of a professional environmental consultant to prepare Workplans for Tank Closure as more fully described in Section 5.03(a) and will at its sole cost provide a copy of said workplans to Purchaser by November 21, 2008.

H. Section 4.02 is hereby amended by the addition of the following new subparagraph (h):

(h) Purchaser or Purchaser's lender may engage the services of a professional environmental consultant to prepare a Phase I site investigation for the Property and will, at its sole cost, provide a copy of the report of this investigation to Seller promptly when it is completed. Purchaser shall supply such consultant with a copy of the Phase I and Phase II ESA's, the Feasibility Study, and the Workplans for Tank Closure provided by Seller pursuant to Sections 4.02(b), 4.02(d), 4.02(f) and 4.02(g), hereof.

I. Section 4.04 (a) is hereby amended by the deletion of the following phrase: "if the results of Purchaser's Investigations are unsatisfactory to Purchaser in its sole and absolute discretion," and with the insertion of the following language in its place:

if, and only if, the results of the Purchaser's or Purchaser's lender's Phase I site investigation conducted pursuant to Section 4.02 (h) hereof has, on or before the expiration of the Due Diligence Period, identified any unresolved, material environmental condition that (i) was not identified, described, or otherwise revealed in the Phase I or Phase II reports provided pursuant to Sections 4.02 (b) and 4.02 (d), (ii) was not already known by Purchaser from sources independent of the Phase I report to be conducted by Purchaser or Purchaser's lender pursuant to Section 4.02 (h) hereof, and (iii) would generally be the subject of an enforcement action if it were brought to the attention of appropriate governmental agencies.

J.  Section 5.03 (a) is hereby amended to add the following sentence:

Except as required by the approved Workplans for Tank Closure, Seller shall have no responsibility for the demolition and removal of the cleaned and inert Aboveground Storage Tanks.

K.  Section 5.03(b) is hereby amended to add the following sentence *before* the sentence "Seller undertakes no other actions or responsibility in connection with environmental conditions at the Property":

**Response Actions** shall include the closure and proper abandonment of: (i) any and all monitoring and extraction wells on the Property which were in existence as of the Close of Escrow or were installed by Seller after the Close of Escrow; (ii) the "intercept trench" aka "french drain" referenced in the Phase I and Phase II ESAs; and (iii) the piping associated with the Underground Storage Tanks and Aboveground Storage Tanks in the manner and to the extent set forth in the approved Workplans for Tank Closure, respectively.

L.  Section 5.03 (c) is hereby amended by the addition of the following new subparagraphs (6), (7), (8), (9), (10), (11) and (12):

(6)  Bank Financing: If Purchaser is able to obtain financing for Closing on terms acceptable to Purchaser, Seller shall complete all Response Actions and obtain Closure, as defined below in Section 5.03(c)(8), within five (5) years of Closing.

(7)  Cash Sale: If Purchaser determines, in its sole discretion, not to obtain financing, and instead, to purchase the Property with cash, Seller shall obtain Closure, as defined below in Section 5.03(c)(8), within two (2) years of Closing. Purchaser shall use commercially reasonable efforts during the two years after Closing to obtain financing in the amount of at least $4 million dollars (65% of Purchase Price) on terms acceptable to Purchaser. In the event, Purchaser is able to obtain such financing, the applicable timeframe for obtaining Closure shall be extended up to, but no later than, five (5) years of Closing. If Purchaser fails to

November 16, 2008

3

use commercially reasonable efforts during the two years after Closing to obtain financing in the amount of at least $4 million dollars (65% of Purchase Price) on terms acceptable to Purchaser, the applicable timeframe for obtaining Closure shall be extended up to, but no later than, five (5) years of Closing.

(8) Closure: Closure shall mean the receipt of a Closure Letter, defined below, from each governmental authority exercising jurisdiction over a Response Action. Closure Letter shall mean a no-further-action letter, or other documentation from a governmental authority exercising jurisdiction over a Response Action, evidencing that the Response Actions are complete; or a letter to the Division Chief, Toxics Clean Up Division of the California Regional Water Quality Control Board, San Francisco Bay Region confirming agreement that activities necessary to address Response Actions have been completed, provided that such letter shall not have been refuted by the governmental agency. The requirement by a governmental authority to conduct post-remedy groundwater monitoring, operations and maintenance requirements ("Post-Remedy Response Actions"), or to impose a deed restriction, restricting the use of the Property to commercial or light industrial use, be placed upon the Property shall not mean that Closure has not been attained.

(9) Additional Financial Assurances: Within thirty (30) days of Closure, Seller shall provide to Purchaser a letter of credit or other financial assurance reasonably sufficient to cover additional remedial work required to complete the Response Actions if Post-Remedy Response Actions are required.

(10) Liquidated Damages: If Seller has not achieved Closure within the applicable timeframes set forth above, Seller shall pay to Purchaser five hundred thousand dollars ($500,000) as liquidated damages for Seller's inability to obtain such timely Closure.

(11) Post-Remedy Response Actions: Notwithstanding the receipt of a Closure Letter, Seller shall continue to conduct any and all Post-Remedy Response Actions required by the governmental authority exercising jurisdiction over the Response Actions. Furthermore, notwithstanding the receipt of a Closure Letter, in the event that any governmental authority with jurisdiction determines that further or additional remedial or response actions related to the Response Actions are necessary, after Closing, Seller agrees to undertake, at Seller's cost, such further remedial or response actions to the extent the need for such actions is related to Seller's past operations and use of the Real Property.

(12) Residual Contamination: It is understood that residual soil and groundwater contamination may exist on the Land that may affect Purchaser's future use and development of the Real Property. If, and to the extent that, during the future use or development of the Real Property, Purchaser incurs added costs to remove, handle and dispose of soil, groundwater, or concrete under Aboveground Storage Tanks, because of the presence of Hazardous Substances which are related to Seller's past operations and use of the Real Property, Seller

agrees to reimburse Purchaser for any legally required incremental costs of handling and disposal of such contaminated soil, groundwater or concrete, including, but not limited to the costs of lab sampling, added hazardous material training of workers, added transportation and added disposal costs. Any such contaminated soil, groundwater or concrete shall be disposed of under Seller's EPA generator identification number, and Seller shall have the right to control all aspects of handling and disposal of such soil and concrete.

**M.** Section 5.03 (d) (3) is hereby amended to delete the phrase "in whole or in part," and to also delete the phrase, "a governmental authority evidencing the authority's" and to make such editorial changes that the entire paragraph 5.03(d)(3) shall read as follows:

Upon completion of the Response Actions, Seller shall provide Purchaser with a copy of each Closure Letter(s), and this Right of Access shall then terminate insofar as it relates to the Response Action completed.

**N.** Section 11.01 is hereby amended by the deletion of the existing language and by substituting the following language:

Lease Back of Portion of the Property: Purchaser agrees to enter into a lease back to Seller of a portion of the Land, including that portion of the Land on which Seller's Construction Products tanks currently sit (the "Tank Farm Area") and other areas of the Land, upon terms and conditions substantially in the form of the proposed lease to be attached hereto, on or about Monday November 17, 2008, as Exhibit D. The parties shall use their diligent good faith efforts to negotiate the final terms of the Lease during the Due Diligence Period, and the Lease shall be effective as of Closing.

**O.** Attachment 5.03(a) is amended and items 4 and 5 are added follows:

4. All monitoring wells, extraction wells, intercept drains aka french drains, and any equipment installed in connection with the Response Actions (subject to agency approval of the Workplan for Toluene Release Closure).

5. The piping and appurtenances associated with the Aboveground Storage Tanks, in the manner and to the extent required under the Workplans for Tank Closure.

**P.** Exhibit B, Excluded Personal Property, is hereby amended by the deletion of the opening clause, and the substitution of the following in its place:

Below is the list of personal property to be removed by Seller from the Property. Items 1, 3, 5, 6 and 7 shall be removed by Seller prior to Closing, and items 2, 4 and 8 shall be removed by Seller within four (4) weeks after Closing.

**2. Ratification of Agreement.** Seller and Purchaser hereby ratify and confirm all of the terms and conditions of the Agreement, as amended by the First Amendment and further amended hereby. Except as modified, amended or supplemented by the First Amendment and this Amendment, all of the terms and provisions of the Agreement shall remain in full force and effect.

5

November 16, 2008

3.  **Counterparts.** This Amendment may be executed in any number of counterparts, each of which shall constitute an original, and all of which, when taken together, shall constitute but one and the same instrument.

4.  **Facsimiles.** Each party shall be authorized to accept, and may rely upon, a facsimile transmission of this Amendment executed by the other party and such document shall be binding upon the executing party.

IN WITNESS WHEREOF, Seller and Purchaser have entered into this Amendment as of the day and year first above written.

SELLER:

W. R. GRACE & CO. - CONN.,
a Connecticut corporation

By: _____

Its: President

Date: 11/17/08

PURCHASER:

ALCO IRON & METAL CO.,
a California corporation

By: _____

Its: President

Date: 11-19-08

November 16, 2008

6