THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**Objection Deadline: December 5, 2008 at 4:00 p.m. (requested)**
**Hearing Date:  December 15, 2008 at 1:00 p.m. (requested)**

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER DECLARING AS VOID *AB INITIO* ANY AND ALL ACTIONS TAKEN BY MARICOPA COUNTY, ARIZONA, FIRST LIBERTY NATIONAL BANK AND MARICOPA COUNTY SUPERIOR COURT WITH RESPECT TO DEBTORS' REAL PROPERTY IN MARICOPA COUNTY**

The Debtors request entry of an order declaring as void *ab initio* all actions taken

by Maricopa County, Arizona ("Maricopa County"), First Liberty National Bank ("First

Liberty") and the Superior Court of the State of Arizona in and for the County of Maricopa (the

"Superior Court") with respect to Debtors' operating plant located at 4220 W. Glenrosa,

---

[1] The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Glendale, Arizona 85019 and 4637 N. 42nd Avenue, Phoenix, Arizona 85019, Maricopa County

Tax Parcel 107-02-065B (the "Property"). It has recently come to the Debtors' attention that

Maricopa County has sold a tax lien with respect to the Property to First Liberty, First Liberty

has filed a foreclosure action with respect to the Property, and the Superior Court has entered a

default judgment with respect to the Property purporting to forever bar the Debtors from

asserting any rights in the Property. By this Motion, the Debtors seek to set aside any and all

actions taken in connection with the Property because such actions violate the automatic stay and

deprive the Debtors' estates of a valuable piece of real property for no consideration. In

addition, the Debtors seek damages for this willful violation of the automatic stay. In support of

this Motion, the Debtors respectfully state the following:

<u>Jurisdiction</u>

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is

proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for this Motion are sections 105 and 362 of the

Bankruptcy Code.

<u>Background</u>

3.      The Debtors currently own and operate a manufacturing plant at the

Property.

4.      Prior to 1966, the Property was owned by Ari-Zonolite Co., an Illinois

corporation doing business in Arizona ("Ari-Zonolite"). In August of 1966, the Debtors

2

purchased the stock of Ari-Zonolite. See Affidavit of Vicki B. Finkelstein, Director of Real

Estate & Senior Real Estate Counsel, W.R. Grace & Co., attached hereto as Exhibit B

("Affidavit") at page 2.[2]

       5.      On December 31, 1974, Ari-Zonolite filed Articles of Dissolution with the

State of Illinois and all of its assets were subsequently acquired by the Debtors. On this same

day, Ari-Zonolite executed a warranty deed, a copy of which is attached hereto as Exhibit C,

transferring the Property from Ari-Zonolite to the Debtors.

       6.      From 1974 until 2001, the Debtors continued to operate their

manufacturing plant on the Property and paid all taxes with respect to the Property as they came

due. During this time, the tax bills for the Property were mailed to "W R Grace & Company,

P.O. Box 122283, Fort Worth, TX 76121." See Affidavit at pg. 2.

       7.      On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11

Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and,

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate

their businesses and manage their properties as debtors in possession.

       8.      On April 25, 2001, the Debtors provided notice of their bankruptcy filings

to Maricopa County by sending the Maricopa County Treasurer two Notices of Commencement

of the Chapter 11 Cases. The Notices of Commencement of the Chapter 11 Cases were

addressed to "Maricopa County Treasurer, Attn: Doug Todd, Treasurer, W. Jefferson St. - Rm.

---

[2]  The Affidavit attached hereto as Exhibit B has been prepared in connection with a parallel state court action being
    commenced in Superior Court in Maricopa County, Arizona.

3

100, Phoenix, AZ 85003-2199" and "Maricopa County Treasurer, P.O. Box 78574, Phoenix, AZ

85062-8574." *See* Certificate of Service of Notice of Commencement attached hereto as

Exhibit D.

        9.     As a result of the commencement of its Chapter 11 Cases, the Debtors did

not pay the prepetition real property taxes with respect to the Property for the first quarter of

2001 (the "Prepetition Taxes").

        10.    By operation of state law, Maricopa County acquired a tax lien on the

Property for the Prepetition Taxes effective on January 1, 2001 (the "Tax Lien"). *See* A.R.S. §

42-17153(C)(1) (2008) (stating that "[t]he lien . . . attaches on January 1 of the tax year").

        11.    Without the knowledge of the Debtors, Maricopa County allegedly sold

the Tax Lien on February 10, 2003 to First Liberty, through their agents, the Mooring Tax Asset

Group.

        12.    On April 13, 2006, over three years after the purported sale of the Tax

Lien to First Liberty, the Debtors received a letter from Thomas Burke of the Mooring Tax Asset

Group, on behalf of First Liberty (the "April 2006 Letter"), a copy of which is attached hereto as

Exhibit E. The April 2006 Letter was addressed to "W.R. Grace & Company, P.O. Box 122283,

Fort Worth, TX 76121." The April 2006 Letter stated that on February 10, 2003, First Liberty

purchased the Tax Lien on the Property and that, in accordance with Arizona law, if the owner of

the Property has not paid the taxes within three years of the sale, the tax lien holder may

foreclose on the property.

4

13.    In response to the April 2006 Letter, the Debtors contacted Maricopa

County regarding the purported sale of the Tax Lien.  The Debtors were reassured by the

Maricopa County Treasurer's Office that the Debtors' account was "flagged" as in chapter 11

and that no tax lien would be executed.  *See* Affidavit at pg. 4.

14.    Also in response to the April 2006 Letter, in late April of 2006 the Debtors

contacted Mooring Tax Asset Group regarding the purported sale of the Tax Lien.  The Debtors

explained to Tom Burke at Mooring Tax Asset Group that the Property was flagged as being in

chapter 11 and that the Debtors had been in discussions with Maricopa County and had received

an assurance that no tax lien would be executed.  *See* Affidavit at pg. 4.

15.    Despite this assurance, on December 1, 2006, the Debtors received a

Notice of Intent to File Foreclosure Action ("Notice") from Maricopa County, a copy of which is

attached hereto as Exhibit F.  The Notice listed "W.R. Grace & Company, P.O. Box 3247, Lake

Charles, LA 70602" as the "Property Owner."  The Debtors responded to this Notice by sending

a letter to Maricopa County, dated December 21, 2006, stating that any foreclosure action would

be in violation of the automatic stay and demanding that all foreclosure actions be ceased

immediately (the "December 2006 Letter"), a copy of which is attached hereto as Exhibit G.

16.    On September 24, 2007, the Debtors had a phone conversation with

Maricopa County regarding the status of the Tax Lien on the Property.  The Debtors were

informed that the Property was listed in the county records as being "under litigation" but that

there was no mention of bankruptcy proceedings in the county records.  *See* Affidavit at pg. 4.

The Debtors again notified Maricopa County of its Chapter 11 Cases, and followed-up its phone

5

conversation with a letter advising Maricopa County of the Chapter 11 Cases and that it would

be a violation of the automatic stay to conduct any action with respect to the Property (the

"September 2007 Letter"), a copy of which is attached hereto as Exhibit H.

17.     The Debtors have recently learned that on March 17, 2008, First Liberty

filed a Summons and Complaint in the Superior Court (No. CV-2008-006088) to quiet title to the

Property and seeking a declaration from the Superior Court that the Debtors have not redeemed

the Property in the time period required under state law and therefore the Debtors are forever

barred from having or claiming any right or title adverse to First Liberty (the "Quiet Title

Action"), a copy of which is attached hereto as Exhibit I.  *See* Exhibit I.  Despite the Debtors

having maintained an operating plant at the Property throughout the events described in this

Motion, First Liberty contends that they were unable to find a statutory agent for Ari-Zonolite

and therefore used service of process by publication as the only means of noticing the Debtors

regarding the Quiet Title Action.

18.     It has since come to the Debtors' attention that on or about August 19,

2008, the Superior Court entered a default judgment against Ari-Zonolite with respect to the

Quiet Title Action, thus purporting to strip away all of the Debtors' rights in the Property.

19.     On September 24, 2008, again without notifying the Debtors despite

having received all postpetition tax payments from the Debtors during the Chapter 11 Cases and

despite communicating with the Debtors several times during the course of the Chapter 11 Cases,

Maricopa County allegedly issued a treasurer's deed to First Liberty, pursuant to that default

judgment.

6

20.     On October 30, 2008, the Debtors received a letter, addressed to "Ari-

zonolite Co., c/o Terry Puglisi, Esq., 7500 Grace Dr., Columbia, MD 21044-4009," from

Michael J. Doyle, counsel for First Liberty, notifying the Debtors about the Quiet Title Action

and the basis for their foreclosure on the Property (the "October 2008 Letter"), a copy of which

is attached hereto as Exhibit J. As noted above, this letter was mailed to the Debtors' corporate

headquarters in Columbia, Maryland and was the first time that the Debtors became aware of the

foreclosure actions of First Liberty.

21.     On November 13, 2008, Debtors' counsel sent a letter to Mr. Doyle in

response to the October 30, 2008 letter (the "November 2008 Letter"), a copy of which is

attached hereto as Exhibit K. In this letter, the Debtors explained that the Quiet Title Action was

in violation of the automatic stay and that the Debtors would be taking appropriate legal action to

challenge First Liberty's position in the Quiet Title Action.

## Relief Requested

22.     By this Motion the Debtors respectfully request entry of an order, pursuant

to section 362 of the Bankruptcy Code, (i) declaring the Quiet Title Action void *ab initio*, (ii)

declaring the treasurer's deed allegedly issued on September 24, 2008 void *ab initio* as an

unauthorized postpetition transfer, (iii) declaring the default judgment entered by the Superior

Court as void *ab initio*, (iv) declaring the alleged sale of the Tax Lien in 2003 void *ab initio*, (v)

ordering Maricopa County, First Liberty, the Superior Court and their agents to take no further

action with respect to the Property, (vi) ordering Maricopa County to pay compensatory and

7

punitive damages for willfully violating the automatic stay and (vii) granting such other relief as may be just or proper.

### Argument

23.    This Court should enter an order (i) declaring the Quiet Title Action void *ab initio*, (ii) declaring the treasurer's deed allegedly issued on September 24, 2008 void *ab initio* as an unauthorized postpetition transfer, (iii) declaring the default judgment entered by the Superior Court as void *ab initio*, (iv) declaring the alleged sale of the Tax Lien in 2003 void *ab initio*, (v) ordering Maricopa County, First Liberty, the Superior Court and their agents to take no further action with respect to the Property and (vi) ordering Maricopa County to pay compensatory and punitive damages for willfully violating the automatic stay. The Quiet Title Action, the purported treasurer's deed, the default judgment entered by the Superior Court and the sale of the Tax Lien are all actions that were taken against property of the Debtors' estates, without Bankruptcy Court approval, in violation of the automatic stay.

24.    It is well-established that the filing of a bankruptcy petition generally "operates as a stay ... of the commencement or continuation ... of a judicial ... action or proceeding against the debtor . . . to recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 362(a)(1). The automatic stay provision of the Bankruptcy Code is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (quoting S. Rep. No. 95-989, 95 Cong. 2d Sess. 54-55, U.S. Code Cong. & Admin. News 1978, pp. 5787, 5840-41 (1978)). The automatic stay is designed "to protect the debtor from an

8

uncontrollable scramble for its assets in a number of uncoordinated proceedings in different

courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors,

and to provide the debtor and its executives with a reasonable respite from protracted litigation,

during which they may have an opportunity to formulate a plan of reorganization for the debtor."

*Gilman v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 177 B.R. 475, 479 (D. Del.

1993) (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 998 (4th Cir. 1986), *cert. denied*,

479 U.S. 876 (1986)).  *See also Constitution Bank v. Tubbs*, 68 F.3d 685, 691 (3d Cir. 1995)

(holding that the scope of section 362 is intended to be very broad and is a fundamental debtor

protection).

        25.     Absent relief from the stay, judicial actions and proceedings against the

debtor are void *ab initio*. *Kalb v. Feuerstein*, 308 U.S. 433, 438-40 ("the action of the ... Court

was not merely erroneous but was beyond its power, void, and subject to collateral attack"); *see*

*also In re Ward*, 837 F.2d 124, 126 (3d Cir.1988) (sheriff's sale conducted in violation of the stay

is "void and without effect").  The Third Circuit has stated that "[h]olding that judicial acts and

proceedings in violation of the automatic stay are void ab initio is consistent with the stay's

function of "enabl[ing] the bankruptcy court to decide whether it will exercise its power under

section 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the

debtor or allow another court to do so, thereby preventing a 'chaotic and uncontrolled scramble

for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *Maritime*

*Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1207 (3d Cir. 1991) (citing *Hunt v.*

*Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir.1986) quoting *In re Holtkamp*, 669 F.2d 505

(7th Cir.1982)).  And further, the Third Circuit has held that the automatic stay applies to all

prepetition claims.  *In re Continental Airlines*, 134 F.3d 536, 539 n.5 (3d Cir. 1998).

      26.    This Court should declare the actions taken with respect to the Property as

void *ab initio* because each of the actions were taken in violation of the automatic stay.  First, the

filing of the summons and complaint in the Quiet Title Action represents a clear violation of the

express language of section 362(a) of the Bankruptcy Code.  11 U.S.C. § 362(a)(1).  The filing of

the summons and complaint is the "commencement" of a "judicial . . . action" to "recover a

claim against the debtor that arose before the commencement of the case."  *Id.*  The taxes that

form the basis for the tax lien on the Property were accrued during the first quarter of 2001,

before the Debtors commenced their Chapter 11 Cases.  Therefore, any claim that may exist on

behalf of Maricopa County is a prepetition claim because it arose when the prepetition real

property taxes became due.  Therefore, the mere filing of the summons and complaint violate the

automatic stay and should be declared as void *ab initio*.

      27.    Second, the treasurer's deed purporting to transfer the Property to First

Liberty is also a violation of the automatic stay.  The notice of intent to foreclose that Maricopa

County issued was in violation of automatic stay, as was any action taking to complete the

foreclosure action, such as issuing a treasurer's deed.  *In re Kane*, 248 B.R. 216, 36 Bankr. Ct.

Dec. (CRR) 19 (B.A.P. 1st Cir. 2000), *aff'd*, 254 F.3d 325, 46 Collier Bankr. Cas. 2d (MB) 1036

(1st Cir. 2001) (notice of intent to foreclose was void and did not serve to confer any rights on

taxing authority).

10

28.     Third, the Superior Court's entering a default judgment in favor of First

Liberty with respect to the Property was also in violation of the automatic stay. *In re Graves*, 33

F.3d 242 (3d Cir. 1994) (State-court postpetition orders denying debtor relief from foreclosure

and refusing to stay ejectment were void as violative of automatic stay and, therefore,

Bankruptcy Court was correct in not giving preclusive effect to orders in hearing on creditor's

motion for relief from stay; and further, orders are not entitled to preclusive effect because

judgments in foreclosure and evictions actions were entered by default and debtor did not

actually litigate those actions, and debtor may challenge notice of foreclosure sale in hearing on

sheriff sale purchaser's motion for relief from stay).

29.     Fourth, Maricopa County's alleged sale of the Tax Lien in 2003 to First

Liberty was in violation of the automatic stay.  The sale of a tax lien is a violation of the

automatic stay. *In re Formisano*, 148 B.R. 217, 221 (Bankr. D.N.J. 1992) ("counsel argues that

the tax sale was not a violation of the automatic stay, but rather nothing more than a post-petition

transfer of a pre-petition lien.  He reasons that since the sale does not create, perfect or enforce

the lien there can be no violation of the automatic stay.  This reasoning can not stand up to the

express language of section 362(a)(3), as such a transfer by the purchase of a tax certificate is an

'act to obtain possession of property of the estate or of property from the estate or to exercise

control over property of the estate'. 11 U.S.C. § 362(a)(3)"); *see also In re Servico, Inc.*, 144

B.R. 933 (Bankr. S.D. Fla. 1992) (holding that tax sales in violation of the automatic stay are

deemed void).

11

30.     It is also clear that it is irrelevant whether Maricopa County, First Liberty or the Superior Court had notice of the Debtors' Chapter 11 Cases when it commenced its actions with respect to the Property. *In re Thomas*, 319 B.R. 910 (Bankr. M.D. Ga. 2004) (Foreclosure sale that creditor conducts with no notice of debtor's bankruptcy filing is nonetheless void, if conducted postpetition while automatic stay was in effect).

31.     Finally, this Court should order Maricopa County, and any other party with knowledge of the Debtors' Chapter 11 Cases that participated in the purported foreclosure of the Property, to pay damages to the Debtors pursuant to 11 U.S.C. § 362(k) for willfully violating the automatic stay. *In re Myers*, 491 F.3d 120, 130 (3d Cir. 2007) ("[I]t is appropriate for the Bankruptcy Court to impose damages under 11 U.S.C. § 362(h) against any parties that created, encouraged, or actively participated in violations of the automatic stay, even if those violations are later ratified by annulment of the stay) (citing *In re Atlantic Bus. & Cmty. Corp.*, 901 F.2d 325, 328-29 (3d Cir.1990)). Section 362(k) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). Although the statute refers to "an individual," the Third Circuit has recognized that section 362(h) applies to corporate debtors, as well. *Cuffee v. Atl. Bus. and Cmty. Dev. Corp., ( In re Atl. Bus. and Cmty. Dev. Corp.)*, 901 F.2d 325, 329 (3d Cir.1990). (Note: the damages provisions is now section 362(k)). The damages paid to the Debtors should be compensatory and punitive, including all costs incurred by the Debtors as a result of the violation of the automatic stay, including but not limited to attorneys fees. The damages should include a

12

rate of interest at or above the rate at which the Debtors propose[3] to pay claims in their proposed plan of reorganization.

32.     This Court should award damages because it is clear that Maricopa County had knowledge of the Debtors' Chapter 11 Cases. Maricopa County listed "W.R. Grace & Co." as the property owner on the Notice of Foreclosure Action. In addition, Maricopa County had numerous conversations and exchanges with the Debtors regarding the Property and their Chapter 11 Cases, including the December 2006 Letter. And further, the Bankruptcy Code does not require that the violation of the automatic stay be willful - mere knowledge of the bankruptcy petition is sufficient. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 320 n.8 (3d Cir. 2003) ("[A]lthough § 362(h) requires a "willful" violation as a condition precedent to recovering damages, we have noted that this does not mean that the creditor must intend to violate the stay. 'It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional.') (quoting *Lansdale Family Restaurants Inc. v. Weis Food Service*, 977 F.2d 826, 829 (3rd Cir.1992) (internal citations and quotation marks omitted)). As noted in paragraph 8, Maricopa County was sent a Notice of Commencement of the Chapter 11 Cases on April 25, 2001 and yet, Maricopa County still participated in a foreclosure action against the Debtors' property. Thus, this Court should order Maricopa County to pay damages to the Debtors for Maricopa County's willful violation of the automatic stay.

13

33.     If this Court does not enter an order declaring the actions taken with

respect to the Property as void *ab initio*, the Debtors' estates will be deprived of a valuable asset,

an operating plant and piece of real property, for little or no consideration.  Therefore, this Court

should grant the Motion for the above stated reasons.

## Conclusion

34.     Because the actions taken with respect to the Property violate the

automatic stay and would deprive the Debtors' estates of a valuable asset for little or no

consideration, this Court should grant the Motion and enter an order declaring the actions taken

with respect to the Property as void *ab initio*.

## Notice

35.     Notice of this Motion has been given to:  (i) the office of the United States

Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each of the official

committees appointed by the United States Trustee, (iv) counsel to the Asbestos Property

Damage Future Claimants' Representative; (v) counsel to the Asbestos Personal Injury Future

Claimants' Representative, (vi) those parties that requested service and notice of papers in

accordance with Bankruptcy Rule 2002; (vii) counsel to the Maricopa County Treasurer's

Office, (viii) counsel to First Liberty National Bank and (ix) the clerk of court for the Superior

Court in Maricopa County.  In light of the nature of the relief requested, the Debtors submit that

no further notice is required.

14

**WHEREFORE**, the Debtors respectfully request entry of an order, pursuant to section 362 of the Bankruptcy Code, (i) declaring the Quiet Title Action void *ab initio*, (ii) declaring the treasurer's deed allegedly issued on September 24, 2008 void *ab initio* as an unauthorized postpetition transfer, (iii) declaring the default judgment entered by the Superior Court as void *ab initio*, (iv) declaring the alleged sale of the Tax Lien in 2003 void *ab initio*, (v) ordering Maricopa County, First Liberty, the Superior Court and their agents to take no further action with respect to the Property, (vi) ordering Maricopa County to pay compensatory and punitive damages for willfully violating the automatic stay and (vii) granting such other relief as may be just or proper.

Dated: November 24, 2008

     KIRKLAND & ELLIS LLP
     David M. Bernick, P.C.
     Janet S. Baer
     200 East Randolph Drive
     Chicago, Illinois 60601
     (312) 861-2000

     and

     PACHULSKI STANG ZIEHL & JONES LLP

     Laura Davis Jones (Bar No. 2436)
     James E. O'Neill (Bar No. 4042)
     Kathleen P. Makowski (Bar No. 3648)
     Timothy P. Cairns (Bar No. 4228)
     919 North Market Street, 17th Floor
     P.O. Box 8705
     Wilmington, Delaware  19899-8705
     (302) 652-4100

     Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:142464.1