IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

### AFFIDAVIT OF PAUL W. HANLON WITH RESPECT TO DEBTORS' PROPOSED SALE OF CERTAIN ASSETS OF THEIR ASBESTOS AND LEAD ABATEMENT BUSINESS

| | |
|---|---|
| STATE OF MASSACHUSETTS | ) |
| | ) ss |
| MIDDLESEX COUNTY | ) |

Paul W. Hanlon, being duly sworn, deposes and says:

1.      I am a Vice President of Grace Construction Products, a business unit of W.R.

Grace & Co.- Conn. ("Grace"), one of the above captioned debtors and debtors in possession

(collectively, the "Debtors"). All facts set forth in this Affidavit are based on my personal

knowledge, upon information supplied to me by employees of the Debtors or upon my opinion

---

1 The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.),
W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon,
Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc.,
Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC
(f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a
Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC
Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities
Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary
Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe,
Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc.
(f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace
Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.
R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe
Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH,
Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings
Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA
Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental
Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin &
Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

based upon my experience and knowledge of Grace's businesses.

2.      Further, I am generally familiar with the operations and ordinary course of business of Grace and the other Debtors.

3.      I have reviewed the *Debtors' Notice of Proposed Sale of Certain Assets of Debtors' Asbestos and Lead Abatement Business Pursuant to Order Establishing Procedures for the Sale of De Minimis Assets* (the "Notice") and attest that all facts and conclusions set forth therein are true and accurate.

4.      The assets being sold are most of the on-hand inventory and intellectual property (the "Assets") that are used in the Debtors' asbestos and lead abatement business (the "Abatement Business"). The Assets include primarily customer lists, formulations, trademark registrations and applications and on-hand inventory, as well as other intellectual property, contract rights, transferable licenses and permits, and documents, records and files, but not including trade receivables and payables, machinery and equipment, or any patents and patent applications related to the Debtors' Abatement Business. The Assets also include licenses of certain technology relating to the Debtors' Abatement Business.

5.      The Debtors propose to sell the Assets to Fiberlock Technologies, Inc., with a principal address at 150 Dascomb Road, Andover, Massachusetts 01810 ("Fiberlock"), for $400,000 payable in cash on the closing date, plus a sum not to exceed $42,000 for inventory on hand on the closing date. (The Debtors had $42,000 in inventory on-hand as of September 15, 2008). The purchase price of the Assets represents approximately 1X the Abatement Business's 2008 sales estimate, and 5X its 2008 EBIT estimate of $87,204.

6.      I have determined that sound business reasons justify the Sale. The Sale is being made in furtherance of the Debtors' efforts to monetize poorly performing assets and focus their businesses on their core competencies. The Debtors do not consider the Abatement Business to

be a strategic or core business. The market for the Abatement Business is small and appears to be shrinking, as the instances of lead paint and asbestos needing abatement are diminishing. The Debtors consider the Abatement Business a depreciating asset. I believe the limited resources devoted to the Abatement Business and the cash to be gained by this Sale can be better put to use in the Debtors' core businesses.

7.      In or about January 2008, the Debtors were approached by Fiberlock to purchase the Abatement Business. Due to shrinking sales and uncertain market conditions, the Debtors decided to entertain a bid for this product line, assuming it was reasonable. The market for asbestos and lead abatement has few competitors, namely W.R. Grace & Co.-Conn., Fiberlock, Foster Products, Certane – Certified Technologies, Inc., and Global Encasement, Inc. Only two manufacturers, one being Fiberlock, have a full asbestos and lead abatement product line. Fiberlock has a strong brand, a dedicated sales force, and an in-house manufacturing capability.

8.      Accordingly, the Debtors viewed Fiberlock as the party most likely to be interested in and derive the most value from purchasing the Assets, and thus the purchaser most likely to make the largest offer for the Assets. The Debtors felt that attempting to auction the Assets through investment banks or agents would incur costs that would substantially impact the profitability of such a small deal, and could jeopardize Fiberlock's interest in the deal. Accordingly, the Debtors have primarily pursued a sale of the Assets to Fiberlock. The Debtors engaged in arm's-length, good faith negotiations with Fiberlock over the terms of the Sale over the course of almost a year.

9.      Based on comparable internal and external analysis, I have determined that the proposed purchase price is reasonable.

10.     I further certify that (a) the sale price will provide fair value to the Debtors for the assets being sold and licenses being granted, and (b) the Sale complies with Debtors' internal

-3-

management policies.

11.     Based on an analysis of the market, the value of the Assets, and the benefits of

focusing the Debtors' business efforts on their core competencies, I believe that the Sale is in the

best interests of the Debtors' estates.

I declare under penalty of perjury that the foregoing is true and correct.

Paul W. Hanlon
Vice President, Ventures and Business Development, Grace Construction
Products


SWORN and SUBSCRIBED
before me on this ___*12th*___ day
of December, 2008.

Notary Public

My Commission Expires
December 19, 2008

-4-