UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## ZAI CLAIMANTS' MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF THE U.S. ZAI CLASS

RICHARDSON, PATRICK, WESTBROOK
& BRICKMAN, LLC
Edward J. Westbrook
Robert M. Turkewitz
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464
Telephone: (843) 727-6500

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue
Chronicle Building, Suite 680
Spokane, WA 99201
Telephone: (509) 455-3966

SULLIVAN · HAZELTINE · ALLINSON LLC
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
Elihu E. Allinson, III (No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 428-8191

Dated: December 15, 2008

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. THE ZAI CLASS SETTLEMENT.........................................................................1

   A.  The Settlement Secures Closure Through Certification of a U.S. ZAI Class and Through Settlement Benefits Made Available Through a 524(g) Trust................................2

   B.  The Class Settlement Achieves Affordability Through Periodic Funding Suited to Actual ZAI Claims Experiences. ..................................................................2

   C.  The Settlement Secures Meaningful Benefits for Homeowners While Conserving Trust Resources and Promoting Public Health and Safety.......................................3

III. ARGUMENTS ....................................................................................................4

   A.  This Court Should Give Preliminary Approval to the Proposed Class Settlement Because It Is Within the Range of Reasonableness. ................................................4

      1.  The Settlement Contains Sensible Compromises Between Competing Interests, Evidencing Thoughtful, Informed, Arms-Length Negotiations. ........................6

      2.  The Maturity of ZAI Proceedings Warrants Preliminary Approval of the Proposed Class Settlement.................................................................................7

      3.  The Proponents of Settlement are Experienced and Informed Advocates ...............8

   B.  Provisional Certification of a Rule 23(b)(3) Class is Appropriate................................9

      1.  Class Members Exceed 16,000 in Number, Satisfying the Numerosity Test...................9

      2.  The Claims of U.S. ZAI Claimants Share Common Questions of Fact and Law, Satisfying The Commonality Test. .......................................................10

      3.  The Claims the Proposed Class Representative are Typical of the Claims of Other Class Members, Satisfying the Typicality Test......................................10

      4.  The Proposed Class Representatives are Adequate Representatives of the Class..........12

      5.  The Standards of 23(b)(3) Are Also Satisfied. ..............................................13

   C.  This Court Should Direct that Appropriate Notice be Given to Class Members........16

IV. CONCLUSION ...................................................................................................18

## TABLE OF AUTHORITIES

### CASES

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)................................................5, 9, 13, 16

*Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) .......4

*Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir.), *cert denied*, 419 U.S. 900 (1974)...4

*Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628 (D.S.C. 1992), *aff'd*, 6 F.3d 177
(4th Cir. 1993) ................................................................................................................15

*Curiale v. Lenox Group, Inc.*, 2008 WL 4899474 (E.D. Pa. 2008)..........................................5, 17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................................9, 17

*Gates v. Rohm and Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008).................................................5, 9

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)...................................11

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) .....................................................................4, 6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...........................................11, 12, 13, 16

*Hill v. Western Elec. Co., Inc.*, 672 F.2d 381 (4th Cir. 1982) ....................................................12

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992) ...................................11

*In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) ........................................10

*In re Asbestos School Litig.*, 104 F.R.D. 422, 431-434, (E.D. Pa. 1984) aff'd in part and vacated
in part, remanded *In re School Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986) cert. denied,
*Celotex Corp. v. School Dist. of Lancaster*, 479 U.S. 852 (1986). .....................................14, 15

*In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693 (W.D. Wash. 1992) ............13

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) .........................................................6

*In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d
Cir. 1995)......................................................................................................................passim

*In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631 (E.D. Pa 2003) ........................................6

*In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) ............................5

*In Re Prudential Ins. Co. America Sales Practice Litig.*, 148 F.3d 283 (3d Cir. 1998)..........10, 13

*Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468 (5th Cir. 1986)..................................................14

*Johnston v. HBO Film Management, Inc.*, 265 F.3d 178 (3d Cir. 2001) ........................10, 11, 12

*Klingensmith v. BP Products North America, Inc.*, 2008 WL 4360965 (W.D. Pa 2008) ..............16

*Lake v. First Nationwide Bank*, 900 F. Supp. 726 (E.D. Pa. 1995)..............................................8

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).........................................17

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)............................................................17

*Rodriguez v. Carlson*, 166 F.R.D. 465 (E.D. Wash. 1996).....................................................9, 14

*Smith v. Professional Billing & Management Services, Inc.*, 2007 WL 4191749 (D.N.J. 2007)....5

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ............................................................10, 11

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)...............................................16

### STATUTES

11 U.S.C. §524(g)......................................................................................................................2

### OTHER AUTHORITIES

*Manual for Complex Litigation, Fourth*, § 21.632 (2006) ....................................................5, 17

*Manual for Complex Litigation, Fourth*, § 21.633 .................................................................5

*Manual for Complex Litigation, Third*, § 30.212 (2003) ......................................................17, 18
*Manual for Complex Litigation, Third*, § 30.41 (2003) ...............................................................16
*Manual for Complex Litigation, Third*, § 30.44 (2003) ...............................................................18

## RULES

Fed. R. Civ. P. 23 ...........................................................................................................................1
Fed. R. Civ. P. 23(a) ..........................................................................................................1, 5, 9, 18
Fed. R. Civ. P. 23(a)(1) ............................................................................................................9, 10
Fed. R. Civ. P. 23(a)(3) ..................................................................................................................10
Fed. R. Civ. P. 23(a)(4) ............................................................................................................12, 13
Fed. R. Civ. P. 23(b)(3)...........................................................................................................passim
Fed. R. Civ. P. 23(c)(2) ......................................................................................................16, 17, 18
Fed. R. Civ. P. 23(e) .......................................................................................................1, 17, 18

## TREATISES

2 Herbert B. Newberg & Alda Conte, *Newberg on Class Actions* § 11.25 at 11-36, 11-37 (3d ed.
   1992)..........................................................................................................................................4

# I. <u>INTRODUCTION</u>

This Court has long counseled that concerted effort should be made to negotiate resolution of ZAI claims.   That objective has now been achieved.

The proposed ZAI Class settlement, memorialized in the attached Class Settlement Agreement (Appendix "A"), represents a sensible compromise that secures meaningful benefits for all ZAI homeowners, present and future, who incur expense in connection with remediation of ZAI.

Class members' motion seeks to move that class settlement toward its final approval and its implementation through confirmation of a plan of reorganization.

ZAI claimants, therefore, pursuant to Fed. R. Civ. P. 23(e), respectfully request that this Court enter an Order:

> (1)      preliminarily approving the ZAI class settlement, finding that it is within the range of reasonableness for purposes of Fed. R. Civ. P. 23;

> (2)      provisionally certifying the U.S. ZAI class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), appointing proposed class representatives and appointing class counsel; and

> (3)      directing that appropriate notice be sent to individual class members notifying them of preliminary approval of the class settlement, certification of the class, and of their rights in respect of the class and the class settlement.

# II. <u>THE ZAI CLASS SETTLEMENT</u>

The details of the ZAI settlement are contained in the attached Settlement Agreement[1],

---

1 The Class Settlement Agreement, attached as Appendix A, has been signed by counsel for the ZAI Class, but the signature page for W.R. Grace & Co. *et al* had not been received at the time of this filing.  A fully-

which incorporates the Term Sheet for Resolution of U.S. Zonolite Attic Insulation Claims. The central components of the settlement include the following:

A.      **The Settlement Secures Closure Through Certification of a U.S. ZAI Class and Through Settlement Benefits Made Available Through a 524(g) Trust.**

The U.S. ZAI settlement resolves all current and future U.S. ZAI claims through the instrumentalities of a certified U.S. ZAI class and through employment of a 524(g) property damage trust. The proposed ZAI class consists of all individuals who filed U.S. ZAI proofs of claim on or before the October 31, 2008 bar date established by the Court. Certification of the class aggregates current ZAI claims for purposes of settlement, secures legal representation for class members, sets into motion procedures that afford due process protection to class members, and ultimately secures settlement benefits for that class.

The settlement makes use of a 524(g) property damage trust, as contemplated in W. R. Grace's current Plan of Reorganization, as a vehicle for extending settlement benefits to class members. Class members' claims, as well as all future ZAI claims, are channeled to the 524(g) asbestos property damage trust where ZAI trust distribution procedures, reflective of the ZAI settlement terms, will extend benefits to ZAI claimants.

B.      **The Class Settlement Achieves Affordability Through Periodic Funding Suited to Actual ZAI Claims Experiences.**

The settlement incorporates flexible funding procedures through an up-front payment, deferred payment, and sequence of future contingent payments. The settlement, thereby, achieves a measure of affordability that renders settlement possible and gives assurance to current and future ZAI homeowners that settlement benefits will be available when and as they are needed.

executed copy of the Class Settlement Agreement will be filed separately.

An initial payment of $30 million provides funding appropriate to the numbers of ZAI homeowners who have reported removal or abatement costs to date and those that are anticipated in the near future. A deferred payment of $30 million follows three years after the effective date of W. R. Grace's Plan of Reorganization. This payment, together with the initial payment, afford substantial funds to assist all ZAI class members who remediate at the average reported costs.[2] This is true even after payment of anticipated class fees and costs.[3]

Further, the settlement provides for a series of up to ten contingent payments of $8 million each over the ensuing 20 years, triggered by the ZAI Trust assets dropping below $10 million. These contingent payments, totaling an additional $80 million dollars, insure that funds are available to ZAI claims, when needed and as needed, over the life of the trust. The availability of these funds helps insure that homeowners do not prematurely or needlessly incur removal or abatement cost, out of fear that settlement benefits may not be available in the future.

C.    **The Settlement Secures Meaningful Benefits for Homeowners While Conserving Trust Resources and Promoting Public Health and Safety.**

In keeping with the original objective of ZAI litigation, the class settlement details trust distribution procedures responsive to the actual financial costs experienced by ZAI homeowners. Those procedures reimburse ZAI homeowners 55% of the remediation costs they have incurred as a result of ZAI. The trust distribution procedures thereby conserve trust resources by linking disbursement to actual incurred expense. The distribution procedures, further, insure that available funds actually advance public health and safety objectives by promoting responsible

---

2 Average removal costs of $3,000 - $5,000 per home have been typical. At the agreed-upon 55% reimbursement level, the total cost to assist all class members who remediate an average home would range from approximately $26.4 million ($3,000 x .55 x 16,000) to approximately $44 million ($5,000 x .55 x 16,000). Of course, only a fraction of the 16,000 plus claimants are expected to remediate ZAI in the next five years. Thereafter, an additional $80 million in contingent payments may also become available.

3 Class Counsel have agreed to limit their common fund fee request to 25% of the two non-contingent

remediation of ZAI. The public health goal will also be advanced by a comprehensive ZAI education program to ensure homeowners are aware of ZAI issues and act responsibly to address them.

The necessary steps, at this stage of the proceeding, to advance this settlement toward final approval and toward its embodiment in a confirmed plan of reorganization, are for this Court to give preliminary approval to the class settlement, to provisionally certify the class and appoint representatives and counsel for that class, and to issue appropriate notice to class members. These steps are appropriate for the following reasons.

## III. ARGUMENTS

### A.    This Court Should Give Preliminary Approval to the Proposed Class Settlement Because It Is Within the Range of Reasonableness.

The decision to approve a proposed settlement of a class action is left to the sound discretion of the court. *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). A decision to approve a class settlement will be reversed only for a clear abuse of discretion. *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir.), *cert denied*, 419 U.S. 900 (1974).

At the initial preliminary approval stage, the court makes a preliminary determination of the fairness of the settlement. The purpose of the preliminary evaluation is to determine whether the settlement is within the "range of reasonableness" such that notice to the class of the terms and conditions of the settlement should be issued and a formal fairness hearing on that agreement is worthwhile. 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.25 at 11-36, 11-37 (3d ed. 1992); *see Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (the purpose of preliminary approval is "to ascertain whether

payments.

there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing"). The Court is essentially engaged in determining that "there are no obvious deficiencies and the settlement falls within the range of reason." *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008), citing *Smith v. Professional Billing & Management Services, Inc.*, 2007 WL 4191749 at *1 (D.N.J. 2007) (citing *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

The Court's determinations at the preliminary approval stage can be made on the basis of information already known to the Court, as well as information supplied through briefing and informal presentations by the parties. *Manual for Complex Litigation, Fourth*, § 21.632 (2006). Preliminary approval does not require formal notice or hearing, and the Court may grant such relief upon an informal application by the settling parties. *Manual for Complex Litigation, Third*, § 30.41 (2003).

Where the Court, as here, has not already certified a class, the Court at the preliminary approval stage also considers provisional certification of the proposed class. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Gates v. Rohm and Haas Co.*, 248 F.R.D. at 439. This determination is made based on whether the provisions of Rule 23(a) and the relevant provisions of Rule 23(b) are met. *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995).[4]

---

[4] Following preliminary approval of the settlement and provisional certification of the class, and after appropriate notice to class members has been issued, a final "fairness hearing" is held. At this time, the Court determines whether the settlement should be given final approval as "fair, adequate, and reasonable" and whether the class should be afforded final certification. *Manual for Complex Litigation, Fourth*, § 21.633; *In re Prudential Ins. Co. America Sales Practice Litig.* 148 F.3d 283, 316-317 (3d Cir. 1998); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Curiale v. Lenox Group, Inc.*, 2008 WL 4899474 at *4 (E.D. Pa. 2008); *Amchem v. Windsor*, 521 U.S. at 620 (1997); *Gates v. Rohm and Haas Co.*, 248 F.R.D. at 439. It is anticipated that the Court will consider final approval of the class settlement in conjunction with confirmation of W. R. Grace's plan of

Factors considered in making the preliminary approval determination include: 1) whether the negotiations occurred at arm's length; 2) whether there was sufficient discovery; and 3) whether the proponents of the settlement are experienced in similar litigation, and 4) whether only a small fraction of the class objected. *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 638 (E.D. Pa 2003); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995); *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n. 18 (3d Cir. 2001).[5]

This Court has every reason to find that these standards have been met.

1.    The Settlement Contains Sensible Compromises Between Competing Interests, Evidencing Thoughtful, Informed, Arms-Length Negotiations.

The circumstances under which class settlement was achieved are more fully detailed in the Declaration of Edward Westbrook filed in support hereof.   These circumstances bear all the hallmarks of arms-length negotiations between well-informed advocates.

First, settlement was achieved through negotiations involving diverse and competing interests.  Constituencies included representatives of W. R. Grace, a representative of the Equity Committee of Security Holders, ZAI claimants' counsel who had been principally engaged in representing ZAI interests throughout Grace's bankruptcy, and the Court-appointed representative for future asbestos-related property damage claimants.

---

reorganization.

[5] Hearing on final approval of a class settlement involves consideration of a nine-factor test to determine whether the settlement is "fair, adequate, and reasonable": 1) the complexity, expense, and likely duration of the litigation; 2) the reaction of the class to the settlement; 3) the stage of the proceedings and the amount of discovery completed; 4) the risks of establishing liability; 5) the risks of establishing damages; 6) the risks of maintaining the class action through the trial; 7) the ability of the defendants to withstand a greater judgment; 8) the range of reasonableness of the settlement fund in light of the best possible recovery; and 9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

Further, success was achieved only following years of failed efforts, years of litigation between the principal parties, and the manifest preparedness of those parties to engage in continued litigation if necessary. W. R. Grace's recently proposed property damage case management order in connection with its Plan of Reorganization contemplated years of additional post-confirmation litigation involving ZAI matters. Counsel for ZAI interests, similarly, have taken recent measures to file and seek certification of class-based ZAI proofs of claim and demonstrated their preparedness, if necessary, to pursue ZAI homeowners' interests well beyond plan confirmation. The compromise settlement that has finally emerged from lengthy negotiation efforts involving these parties is archetypical of one achieved through "arms-length" negotiations.

This Court has every reason to find that the first condition for preliminary approval of the class settlement has been met: the underlying negotiations were arms-length and non-collusive.

2.    The Maturity of ZAI Proceedings Warrants Preliminary Approval of the Proposed Class Settlement.

The second consideration for preliminary approval of a class settlement, the state of discovery, focuses attention on the stage of the proceedings and whether they have reached such maturity that an environment conducive of meaningful negotiations exists. As a point of contrast, with early settlements "both parties have . . . less information on the membership of the class, on the size of potential claims, on whether the settlement purports to resolve class or individual claims, on the strengths and weaknesses of the case, and on how class members will benefit from the settlement. Without the benefit of more extensive discovery, both sides may underestimate the strength of the plaintiffs' claims." *In re General Motors*, 55 F.3d at 789

(citations omitted).

ZAI proceedings, it is clear, have advanced to the stage that settlement negotiations are not only possible, but highly advisable. The parties' negotiations benefited from substantial discovery conducted over the course of the ZAI Science Trial, from various rulings of this Court in connection with those proceedings, and from U.S. ZAI proof of claim filings pursuant to the recent ZAI bar date. The second test for preliminary approval of the class settlement, the maturity of the proceedings, therefore, heavily weighs in favor of preliminary approval of the class settlement.

3.    The Proponents of Settlement are Experienced and Informed Advocates

The third factor in preliminarily approving a class settlement involves consideration of the relevant experience of those proposing settlement. The Court has had ample opportunity over the course of this bankruptcy to observe the experience, judgment, and abilities of counsel, from which to gauge the quality of negotiations and its resulting settlement product. Counsel for all involved constituencies are highly experienced in the litigation of or negotiated resolution of complex matters.

It may be lastly observed that the Court's preliminary approval analysis takes place in a broader context of judicial policy favoring settlement of claims. *In re General Motors*, 55 F.3d at 784 ('The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *see also* 2 Newberg on Class Actions at § 11.41 (3d ed. 1992). The expense and duration of litigation are factors in evaluating the reasonableness of settlement. *Lake v. First Nationwide Bank*, 900 F. Supp. 726 (E.D. Pa. 1995). The proposed settlement deserves preliminary approval because it offers the opportunity to avoid years of protracted ZAI litigation that otherwise awaits this and

other courts and that threatens confirmation of and upholding of any plan of reorganization. This Court, therefore, should preliminarily approve the class settlement as within the range of reasonableness.

**B.**    **Provisional Certification of a Rule 23(b)(3) Class is Appropriate**

Where the Court has not already certified a class, the Court at the preliminary approval stage must also determine whether the class satisfies the requirements of Rule 23, and thus should be provisionally certified. *Amchem*, 521 U.S. at 620; *Gates v. Rohm and Haas Co.*, 248 F.R.D. at 439. By provisionally certifying the class, the court preserves a defendant's right to contest certification should the settlement not achieve final approval. *In re General Motors*, 55 F.3d at 794 ("We acknowledge that settlement classes, conceived of either as provisional or conditional certifications, represent a practical construction of the class action rule. Such construction affords considerable economies to both the litigants and the judiciary and is also fully consistent with the flexibility integral to Rule 23.")

Certification is appropriate where the proposed representatives have established all of the conditions of Rule 23(a) and one of the conditions of 23(b). *See Amchem*, 521 U.S. at 611; *see also, Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178, (1974). The proposed class readily satisfies these elements.

1.    Class Members Exceed 16,000 in Number, Satisfying the Numerosity Test.

Rule 23(a)(1) requires that members of the class be so numerous that their joinder in the litigation is impracticable. *See* Fed. R. Civ. P. 23(a)(1). In order to meet this numerosity requirement:

> [P]laintiffs need not show that the number of class members is so large that it would be impossible to join all of them; impracticability does not mean impossibility . . . . [I]n addition to

> the mere number of plaintiffs, such factors as "geographical dispersion, degree of sophistication, and class members' reluctance to sue individually" are considered in determining the impracticability of joinder.

*Rodriguez v. Carlson*, 166 F.R.D. 465, 471 (E.D. Wash. 1996) (citations omitted).  Generally, where the potential number of plaintiffs exceeds 40, the numerosity test of Rule 23(a)(1) has been met.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

The proposed U.S. ZAI class is composed of individuals who timely filed U.S. ZAI Proofs of Claim.  In excess of 16,000 such claims were filed on or before the October 31, 2008 bar date.  This number readily satisfies the numerosity test of Rule 23(a)(1).

    2.    The Claims of U.S. ZAI Claimants Share Common Questions of Fact and Law, Satisfying The Commonality Test.

Rule 23(a)(2) requires that there be "questions of law or fact common to the members of the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement is satisfied if the claims of the proposed representatives share at least one question of fact or law with the grievances of the prospective class.  *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001); *See also In Re Prudential Ins. Co. America Sales Practice Litig.*, 148 F.3d 283, 310 (3d Cir. 1998).  A single common issue may satisfy this requirement.  *See In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 145, 167 (2d Cir. 1987).  Fed. R. Civ. P. 23(b)(3).  The concepts of "commonality" and "typicality" tend to merge in Courts' class action analyses.  *Stewart v. Abraham*, 275 F.3d at 227.  Fuller discussion of the common legal and factual issues underlying the claims of each U.S. ZAI claimants, therefore, is reserved for discussion below.  It is sufficient, for present purposes, to note that any one of the common legal and factual issues discussed below would readily satisfy the commonality test of Fed. R. Civ. P. 23(a)(2).

3.      The Claims the Proposed Class Representative are Typical of the Claims of Other Class Members, Satisfying the Typicality Test.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The typicality inquiry "centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Stewart v. Abraham*, 275 F.3d at 227.  A plaintiff's claims will be deemed typical if "they are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) (holding claims to be typical when the same event or practice or course of conduct that gives rise to the claims of other class members is based on the same legal theory).  A representative plaintiff is typical of the class where there is a "nexus" between the plaintiff's injury and the injuries suffered by the class members; such a nexus will be found where the named plaintiff's claims stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based on the same legal or remedial theory.  *See General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 (1982).

Factual differences, of course, may always be found between class members.  However, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d at 923, quoted in *Stewart v. Abraham*, 275 F.3d at 227-28.  So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Johnston v. HBO*, 265 F.3d at 184.

The claims of proposed class representatives Marco Barbanti and Ralph Busch are

clearly typical of the claims of other members of the proposed class. Each timely filed a U.S. ZAI proof of claim arising out of their ownership of residential properties in which ZAI has been installed and each is a member of the class they seek to represent. The ZAI claims of Marco Barbanti and Ralph Busch were previously determined by the Washington court to be typical of claims of other ZAI homeowners for purposes of that Court's certification of a Washington ZAI class and appointment of them as class representatives. The typicality of their claims is evidenced as well by their having been designated as ZAI science trial claimants whose claims were subjected to common issue litigation in the ZAI science trial proceedings. The claims of Marco Barbanti and Ralph Busch arise from the same events and course of conduct, and are based on the same legal theories as other U.S. ZAI claimants, namely, unfair and deceptive business practices in the manufacture and sale of ZAI and sale of a negligently manufactured and defective product. The typicality requirement, therefore, is satisfied.

4.    The Proposed Class Representatives are Adequate Representatives of the Class.

Rule 23(a)(4) states that the representative plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The purpose of the adequacy of the representation requirement is to ensure that the class representatives and their counsel will be diligent and capable in protecting the interests of class members. *See Hill v. Western Elec. Co., Inc.*, 672 F.2d 381, 389 n.3 (4th Cir. 1982). To determine whether this criterion has been met, courts look at two factors: (1) whether the named plaintiffs' counsel is competent to represent the class; and (2) whether there exists any conflict of interest between the named plaintiffs and the rest of the class. *See Hanlon*, 150 F.3d at 1020; *see also Johnston v. HBO,* 265 F.3d at 185.

The adequacy of Marco Barbanti and Ralph Busch as class representatives is not a

matter of speculation.  Marco Barbanti and Ralph Busch have demonstrated their commitment to

U.S. ZAI claimants by having commenced, pre-petition, class-based litigation on behalf of ZAI

homeowners, by having served through appointment as class representatives in the bellwether

Washington ZAI Class, by having pursued ZAI claims generally throughout these bankruptcy

proceedings, and by their having steadfastly petitioned, throughout that period, for sensible class

based remedies for ZAI homeowners burden with the expenses of removing or abating ZAI,

precisely the result now achieved through negotiated settlement.

> Proposed class counsel, Edward Westbrook, Darrell Scott, and Elizabeth

Cabraser, have extensive experience managing class litigation.  They possess the resources to

actively and vigorously represent U.S. ZAI claimants and they have demonstrated their

preparedness to represent those interests through steadfast participation in Grace bankruptcy

proceedings on behalf of ZAI interests.

> The requirements of Rule 23(a)(4), therefore, are satisfied.

5.    The Standards of 23(b)(3) Are Also Satisfied.

To certify a class under Rule 23(b)(3), a court must find that:

> [t]he questions of law or fact common to the members of the class
> predominate over any questions affecting only individual members,
> and the class action is superior to other available methods for the
> fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  Both criteria are met in this case.

> The predominance inquiry tests "whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  The

predominance inquiry "focuses on the relationship between the common and individual issues.

'When common questions present a significant aspect of the case and they can be resolved for all

members of the class in a single adjudication, there is clear justification for handling the dispute

-13-

on a representative rather than on an individual basis.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citations and quotations omitted); *see also In re Prudential Insurance Co. of America Sales Practices Litig.*, 148 F.3d at 314-15 (certifying nationwide consumer fraud class); *In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693, 697 (W.D. Wash. 1992) ("[w]here plaintiffs allege a common course of wrongdoing based on the same misrepresentations, individual issues of reliance do not preclude certification of the class."); *Rodriguez v. Carlson*, 166 F.R.D. 465, 479 (E.D. Wash. 1996) (any individual issues regarding damages were overshadowed by the "predominant common questions of liability.")

There is significant precedent for certification of a Rule 23(b)(3) class action in respect of property damage claims arising out of asbestos containing building products. The Asbestos School decision is particularly instructive, the court having approved certification of asbestos property damage claims on behalf of schools nationwide pursuant to rule 23(b)(3). *In re Asbestos School Litig.*, 104 F.R.D. 422, 431-434 (E.D. Pa. 1984) aff'd in part and vacated in part, remanded *In re School Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986) (affirming 23(b)(3) certification of monetary damages claims and vacating certification of 23(b)(1)(b) limited fund class) cert. denied, *Celotex Corp. v. School Dist. of Lancaster*, 479 U.S. 852 (1986). In certifying the class claims of schools nationwide under Rule 23(b)(3), the district court considered whether common questions of law or fact predominated with regard to the alleged violations of law. The court held:

> These claims, as noted, arise out of the same common nucleus of operative facts relating to defendants' conduct and the nature of asbestos products. Common questions relating to the hazards of asbestos, the knowledge of the defendants of the hazards, industry policies and practices and defendants' failure to warn and to test are at the core of all the damage claims for relief, and will dominate other issues at trial, regardless of how defendants' conduct is characterized in terms of a specific tort.

*Asbestos School*, 104 F.R.D. at 432; accord *School Asbestos*, 789 F.2d at 1008 ("Experience shows that in the asbestos litigation arena redundant evidence is the rule rather than the exception."); *See also Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468 (5th Cir. 1986) (upholding Rule 23(b)(3) class certification of asbestos personal injury claims of almost one thousand individuals).

Similarly, the Court in *Central Wesleyan* certified a class action proceeding for resolution of common issues involved in the claims of colleges and universities nationwide seeking to recover costs of asbestos remediation. *Central Wesleyan College v. W. R. Grace & Co.*, 143 F.R.D. 628, 643 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993).

This case presents an almost identical situation, involving asbestos remediation and abatement claims arising out of manufacture and sale of a building product and presenting core common questions that predominate proceedings regarding their merit. This Court's own experience with ZAI claims teaches this lesson. Predominating over, and indeed consuming, bankruptcy proceedings in respect of ZAI have been core factual and legal issues common to all class members claims. Several years were devoted to the common issue seen by Grace as entirely dispositive of ZAI claims, viz. whether ZAI poses an unreasonable risk of harm. Efforts to address that common predominating question have served to highlight and bring to the forefront for resolution additional common predominating questions: whether a finding that ZAI does not pose an "unreasonable risk of harm," as a matter of law, absolves Grace of liability under all available legal theories; whether the Court's interlocutory partial summary judgment order will be ultimately determined correct; whether non-disclosure of asbestos contamination constitutes an unfair or deceptive business practice, establishing Grace's liability irrespective of the "unreasonableness" of the health risk posed by the product; whether ZAI is defective and

liability thereby arises under the independent risk/utility test; whether ZAI is defective and liability thereby arises because the product fails the consumer expectation test; and whether, separate from strict liability standards, Grace has liability because it was negligent in its manufacture or sale of ZAI.

There can be little question but that common issues present a "significant aspect" of the determination of Grace's liability to U.S. ZAI claims. Moreover, while the certified matters of *School Asbestos* and *Central Wesleyan* involved numerous defendants and numerous building products, ZAI claims involve a single manufacturer and a single product, rendering ZAI claims even more amenable to certification under Rule 23(b)(3) than those previously certified cases. There is, therefore, clear warrant for certifying a ZAI class pursuant to Rule 23(b)(3).

Finally, with respect to the "superiority" test of Rule 23(b)(3), in the context of class certification for purposes of settlement, the Court need not inquire into whether the case, if tried, would present intractable management problems, since the effect of class settlement is to altogether avoid trial. *Amchem*, 521 U.S. at 620; *Klingensmith v. BP Products North America, Inc.*, 2008 WL 4360965 at *2 (W.D. Pa 2008).

"Superiority," moreover, is affirmatively demonstrated where certification will reduce litigation costs and otherwise promote greater efficiency. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The numbers of present U.S. ZAI claims, exceeding 17,000, are so large that this Court is presented with severe case management challenges if a class is not certified. The Court would be engaged in facilitating the direct participation of thousands of largely unrepresented ZAI claimants who have claims of such value that individual participation is practically impossible. Where claimants, as a practical matter, cannot pursue their claims on an individual basis, the "superiority" test is satisfied. *Hanlon*, 150 F.3d at 1023.

The superiority test, therefore, is fully satisfied in this respect alone.

**C.**    <u>**This Court Should Direct that Appropriate Notice be Given to Class Members.**</u>

The Court's granting of preliminary approval and certification of a settlement class lays a foundation for notice to Class Members of the terms of the settlement, their rights as class members, and the procedures for final approval of the class settlement. *See Manual for Complex Litigation, Third*, § 30.41 (2003).

Rule 23(c)(2) provides that where the certification order is made pursuant to Rule 23(b)(3), notice must be given to class members. Further, Rule 23(e), governing approval of class settlements, provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Notice under Rule 23(c)(2) and 23(e) can be combined. *Manual for Complex Litigation, Fourth*, § 21.632, cited favorably in *Curiale v. Lenox Group, Inc.*, 2008 WL 4899474 (E.D. Pa 2008). The Court must provide the best notice practicable to class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

According to the *Manual for Complex Litigation, Third*, § 30.212 (2003), the notice should:

- describe the essential terms of the proposed settlement;

- disclose any special benefits provided to the class representatives;

- provide information regarding attorneys' fees . . .

- indicate the time and place of the hearing to consider approval of the settlement, and the method of objecting to (or, if permitted, for opting out of) the settlement;

- explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations; and

- prominently display the address and phone number of class counsel and the procedure for making inquiries.

Members of the ZAI class are readily identifiable, each having recently filed a U.S. ZAI proof of claim containing information regarding where notice should be sent.  Class Representatives propose that direct individual notice be given to each member of the class at the address shown on their recently filed U.S. ZAI proof of claim.  The proposed form of notice is attached as Appendix "B."  The form of notice complies with Rule 23(e), Rule 23(c)(2), and the recommendations made in the *Manual for Complex Litigation, Third*, § 30.212 (2003).

Finally, upon finding that a class settlement should be preliminarily approved, the Court should schedule a final fairness hearing for purposes of rendering a final determination that the class settlement was made in good faith and is fair, adequate, and reasonable.  *Manual for Complex Litigation, Third*, § 30.44 (2003).  The fairness hearing provides a forum for the parties to explain the proposed settlement and for class members to voice their support for, or opposition to, the settlement.  At this same hearing, the court can consider, and class members can comment on, class counsels' petition for reimbursement of costs and award of attorneys' Fees.

Class Representatives propose that the Court schedule a final fairness hearing at the earliest practicable time following completion of notice to class members.

## IV.  CONCLUSION

For the above reasons, ZAI claimants request that this Court enter an order: (1)

preliminarily approving the ZAI class settlement, finding that it is within the range of

reasonableness;  (2) provisionally certifying the U.S. ZAI class pursuant to Fed. R. Civ. P. 23(a)

and 23(b)(3), appointing proposed class representatives, and appointing class counsel; and (3)

directing that appropriate notice be sent to individual class members notifying them of

preliminary approval of the class settlement, certification of the class, and of their right in respect

of the class and the class settlement.

Dated: December 15, 2008
      Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

William D. Sullivan (2820)
Elihu E. Allinson, III (3476)
4 East 8th Street, Suite 400
Wilmington, Delaware  19801
Telephone:  (302) 428-8191

-- and --

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue
Chronicle Building, Suite 680
Spokane, Washington  99201
Telephone:  (509) 455-3966

-- and --

RICHARDSON, PATRICK, WESTBROOK
 & BRICKMAN, LLC
Edward J. Westbrook
Robert M. Turkewitz
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, South Carolina  29464
Telephone:  (843) 727-6500

*Counsel for ZAI Claimants*