IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## DECLARATION OF EDWARD J. WESTBROOK, ESQ.

1. I, Edward J. Westbrook, am an attorney licensed in South Carolina and the District of Columbia. I have been admitted to the Bar of the Supreme Court of the United States, numerous federal courts of appeals and district courts. I have received *pro hac vice* admission in many other state and federal trial and appellate courts.

2. For approximately 25 years I have been engaged in toxic tort litigation with a specialty in asbestos property damage and class action litigation. I have handled numerous asbestos property damage trials and appeals. Some representative matters are summarized below:

   a. *In re: Asbestos School Litigation*, 789 F.2d 996 (3rd Cir. 1986), *cert. denied*, 107 S. Ct. 182 (1986) [member of Plaintiffs' Executive Committee in National Class Action for elementary and secondary school asbestos removal];

   b. *Spartanburg Cty. School District Seven v. National Gypsum Co.*, 805 F.2d 1148 (4th Cir. 1986) [argued and won first asbestos property damage appeal which established that "state of the art" was not a defense to implied warranty actions in South Carolina];

   c. *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975 (4th Cir. 1987), *reh'g denied*, 840 F.2d 219 (4th Cir. 1988) [argued and won landmark appeal establishing that the "economic loss" doctrine did not apply to asbestos property damage cases];

   d. *Kershaw Cty. Bd. of Educ. v. United States Gypsum Co.*, 396 S.E.2d 369 (S.C. 1990) [argued and won appeal establishing that "economic loss" doctrine did not apply to asbestos property damage actions in state court];

e. *Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 418 S.E.2d 648 (N.C. 1992) [argued and won appeal affirming fraud and negligence verdict against asbestos product manufacturer];

f. *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993) [co-lead counsel for certified class of nation's colleges seeking asbestos abatement costs];

g. *State Farm Mut. Auto. Ins. Co. v. W.R. Grace & Co.*, 834 F. Supp. 1052 (C.D. Ill. 1993), *aff'd*, 24 F.3d 955 (7th Cir. 1994), *reh'g denied*, 24 F.3d 955 (7th Cir. 1994) [argued and won affirmance of $12.5 million verdict in case establishing that asbestos product manufacturers are not protected by construction statutes of repose for manufacturing negligence].

h. *The Port Authority of New York and New Jersey vs. Allied Corporation et al.*, No. 91 Civ. 0310 (CLB) (MDF) (S.D.N.Y.), [received largest verdict ever in an asbestos property damage case ($66 million) on behalf of the owners of the New York World Trade Center].

i. *In Re Zonolite Attic Insulation Prod. Liab. Litig.*, MDL Dis. No. 1376 (D. Mass 2001) [Appointed Member of Plaintiffs' Executive Committee].

3. I have been involved in litigation concerning Zonolite Attic Insulation (ZAI) since 2000. Along with my co-counsel, Darrell W. Scott, Esq., and others, we instituted the first ZAI class action. *Barbanti v. W.R. Grace & Co. – Conn.*, No. 00201756-6 (Wash. Sup.). I was also counsel in several other ZAI proposed class actions and named by the ZAI MDL Court to be a member of the ZAI MDL Executive Committee. *In Re Zonolite Attic Insulation Prod. Liab. Litig.*, MDL Dist. No. 1376 (D. Mass. 2001). I have been significantly involved in ZAI issues in the Grace bankruptcy since its filing.

4. Throughout the Grace bankruptcy, we have believed that resolution of ZAI claims through a class action was the logical, indeed the only practical way to address the large number of relatively modest claims of individual homeowners. Toward that end, we have consistently sought collective treatment of the claims.

5. When the Grace bankruptcy was filed, I was familiar with many individuals within Grace, particularly in its legal department, as a result of my dealings with the company on traditional asbestos property damage litigation. Over the years, I had tried and/or settled numerous Grace cases and had developed a good, professional working relationship with Grace's inside and outside counsel. As the Grace bankruptcy wore on, I had sporadic contacts with Grace concerning a possible resolution of ZAI. I consistently advanced our view that ZAI claims lent themselves to collective treatment through a class action and claims facility. For various reasons, little progress was made on the settlement front over the years.

6. During the years of bankruptcy, I and my co-counsel participated in various formal attempts at jumpstarting a comprehensive bankruptcy settlement, including mediation before Judge Pointer and discussions with the personal injury claimants on their potential plan of reorganization for Grace. At one point, we reached agreement with the PI claimants to share on a percentage basis in their recovery should their plan become effective. For various reasons, that plan did not advance to confirmation. Nevertheless, contacts with Grace continued sporadically throughout this time.

7. In the summer of 2008, I was contacted by a representative of the personal injury interests (which by that time had resolved their issues with Grace and were Plan proponents). Through a series of discussions, meetings were arranged with representatives of Grace's Equity Committee, at which further exploratory talks took place concerning the possibility of resolving ZAI and terminating the many years of litigation that both sides recognized lay ahead in the bankruptcy court, district court and appellate courts should there be no settlement. These meetings and follow-up calls eventually led to further preliminary meetings with additional Grace representatives, including those at the highest levels of the company. For the first time after years of on and off negotiations, it appeared that the parties thought they might come close enough on their respective views of ZAI that a potential settlement was conceivable, although not yet achievable. Further meetings attended by representatives of the personal injury constituency, personal injury Futures Representative, Grace corporate representatives and Grace inside and outside counsel produced additional progress. Grace accepted in principle the concept that a ZAI facility could be a vehicle to resolve the claims. We accepted in principle the fact that Grace's financial status would not permit it to pay a lump sum on confirmation that we would otherwise require for a reasonable settlement in our professional judgment. Accordingly, the parties worked creatively toward the resolution ultimately embodied in the Class Settlement Agreement consisting of a claims facility and staggered funding, with some of the funding depending on the pace at which claims are filed.

8. Although the parties made conceptual progress, we realized that for a ZAI facility to be truly effective, it must address the needs of future ZAI claimants and that we would need a Futures Representative. After some discussion with co-counsel, traditional property damage counsel, the property damage committee and others, the parties unanimously agreed upon the Honorable Alexander M. Sanders as Futures Representative and Judge Sanders acquired counsel.

9. Once Judge Sanders and his counsel were in place, negotiations resumed with them at the table. The Futures Representative and his counsel brought valuable insight and made valuable suggestions that improved the conceptual resolution we had been discussing with Grace. After much more negotiation and exchanges of numerous ideas, comments, drafts and counterdrafts, we and the Futures Representative agreed on November 21, 2008 to an Agreement in Principle to be followed by a Class Settlement Agreement. As set forth in the Class Motion for

Preliminary Approval, the Proposed ZAI Resolution substantially achieves our goals of providing an effective ZAI education campaign and a long-term ZAI financial assistance facility that will permit homeowners to address ZAI rationally as they encounter it in the ensuing decades.

10. Throughout the years of negotiations, which were conducted by both sides at arms length and with the best interests of their clients in mind, all parties have acted in an effort to achieve resolution of a previously-intractable problem. Progress was possible because of the negotiating parties' mutual respect for the integrity and dedication of those on the other side. While each side sincerely believed in the correctness of its litigation position, each side recognized the significant risks of failing to come to a compromise at this critical time in Grace's bankruptcy.

11. I have negotiated numerous settlements with W.R. Grace over the years and can say without hesitation that these negotiations were conducted in the finest tradition of worthy adversaries. I believe this settlement is in the best interest of ZAI Claimants and is, under all the circumstances, a fair and reasonable resolution of the US ZAI Claims.

Edward J. Westbrook

Dated: 12/11/08