IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., et al.,[1] | Case No. 01-1139 (JKF) |
| Debtors. | Jointly Administered |
| | Re: Docket Nos. 19579, 20121<br>Prelim Objn Deadline: 12/22/08 at 4:00 p.m. (Eastern) |

**PRELIMINARY OBJECTION OF THE STATE OF MONTANA TO THE JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS**

The State of Montana ("Montana"), by and through its undersigned counsel, hereby asserts its preliminary objection (the "Preliminary Objection") to the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants'

---

[1] The Debtors are the following entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), ECARG, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, LB Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc. E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

1

Representative, and the Official Committee of Equity Security Holders (as such plan has been or may be modified and/or amended, the "Plan"). In support of this Preliminary Objection, Montana states as follows:

## BACKGROUND AND INTRODUCTION

1. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession.

2. On April 6, 2008, in the midst of litigation concerning the estimation of the Debtors' liability for asbestos personal injury claims, the Debtors, the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders reached an agreement in principle (the "Asbestos PI Settlement") to resolve all Asbestos PI Claims against the Debtors and to cooperate in the confirmation of a plan of reorganization. See Disclosure Statement (as defined below) at p. 11. Montana, which has filed indemnity and contribution claims relating to the Debtors' operations in Lincoln County, Montana, disagrees with the Asbestos PI Settlement and was not included in the negotiations leading to that "settlement", yet the Asbestos PI Settlement is "the foundation for the Plan." See id.[2]

---

[2] For that matter, the claimants that were allegedly injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants") also disagree with the Asbestos PI Settlement. See Libby Claimants' Second Motion (A) for Reconsideration of Order Granting Debtors leave from Scheduling Order and Shorting Notice of Solicitation Motion and (B) to Set a Reasonable Deadline for Objections to and Date for hearing on Approval of Disclosure Statement (Docket No. 19709), at ¶ 3 (stating that "[t]he Plan and related documents do not reflect an agreement with the Libby Claimants on how their claims should be treated. Although nominally represented by the PI Committee, the Libby Claimants' interests and concerns have not been fairly addressed in the Plan . . . . The Libby Claimants intend to oppose the Plan.").

3. On September 19, 2008, the Debtors filed the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders (Docket No. 19579). In connection with the Plan, the Debtors also provided a copy of the accompanying Disclosure Statement (Docket No. 19581) (the "Disclosure Statement").

4. On November 21, 2008, the Debtors filed the First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders (Docket No. 20121).

## MONTANA'S CLAIMS

5. Montana has been named as defendant in at least one hundred and twenty-three (123) cases in various Montana state courts (the "State Court Actions"). However, with the exception of one complaint, Montana was not named as a defendant in any of the State Court Actions until after the Petition Date.

6. Plaintiffs in the State Court Actions (the "Plaintiffs") allege periods of employment with or exposure from W.R. Grace and/or its predecessors' operations ranging from 1947 through 1993. The various State Court Actions relate to claims arising from the mining and processing of vermiculite containing asbestos within Montana. The various Plaintiffs in the State Court Actions include former employees of W.R. Grace and/or its predecessors, subcontractor employees, individuals that lived near the Debtors' operations, as well as their family members.

7. Pursuant to the Agreement and Plan of Reorganization between W.R. Grace & Co. and Zonolite Company, dated January 17, 1963, W.R. Grace acquired substantially all of the

3

properties and assets of Zonolite, including mining properties in Montana, and assumed all debts and liabilities of Zonolite. W.R. Grace & Co. is liable for the conduct of the predecessor and subsidiary companies, including W.R. Grace & Co. – Conn. and Zonolite Company, with respect to the claims as set forth in the State Court Actions. Indeed, approximately 52 of the State Court Actions themselves recognize this, asserting that Montana "aided and abetted" W.R. Grace.

8. The State of Montana denies that it is in any manner responsible for the events giving rise to the various Plaintiffs' claims for relief set forth in the State Court Actions, or for injuries and damages allegedly sustained by those Plaintiffs. If, however, liability is imposed on Montana as a result of the matters alleged in the various State Court Actions, such liability was caused by the Debtors because the Debtors had a duty to:

   (a) furnish a place of employment that was safe for employees, including the Plaintiffs in the State Court Actions;

   (b) furnish and require the use of safety devices and safeguards, such as respiratory protective devices, by employees, including the Plaintiffs in the State Court Actions; and

   (c) adopt and use such methods, processes, practices, means, and operations as reasonably adequate to render the place of employment safe, and to do every other thing reasonably necessary to protect the life and safety of employees, including the Plaintiffs in the State Court Actions.

9. W.R. Grace breached the aforementioned duties, and that breach was the proximate, intervening, and superseding cause of the alleged injuries and damages of the Plaintiffs in the State Court Actions.

10. As the Debtors have previously acknowledged, the actions against Montana are wholly and completely derivative of the Debtors' operations. See December 19, 2005 Tr., 153:6-11. Consequently, on or about March 25, 2003, Montana filed contribution and indemnification claims against the Debtors, seeking contribution and indemnification from the Debtors in the pending State Court Actions against Montana.

## PRELIMINARY OBJECTION

### A. The Plan Blatantly Disregards The Absolute Priority Rule And Prohibition Against Unfair Discrimination In The Event That Class 6 Rejects The Plan.

11. As a preliminary matter, Montana objects to the Plan because it blatantly disregards the absolute priority rule and prohibition against unfair discrimination, as set forth in Bankruptcy Code section 1129(b). Specifically, the Bankruptcy Code provides that a plan normally may be confirmed if it meets certain requirements, including that each and every class either accepts the plan or does not suffer any impairment under the plan. See 11 U.S.C. § 1129(a)(8) ("The court shall confirm a plan only if all of the following requirements are met: . . . (8) With respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan."). The Bankruptcy Code, however, provides an alternative regime for confirmation, commonly referred to as "cram down." Specifically, a debtor may confirm a plan even if one of the impaired classes does not accept the plan, so long as the plan is (among other things) fair and equitable and does not discriminate unfairly. See id. § 1129(b)(1) (stating that "if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met[, the court] shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan").

5

12.     The Bankruptcy Code provides that in order to meet the "fair and equitable" requirement of this cram down regime, it must comply with what is known as the "absolute priority rule." Specifically, it must be the case that each creditor in the dissenting class either receives the full value of the allowed amount of its claim, or alternatively that the creditors in junior classes do not receive any distribution. See 11 U.S.C. § 1129(b)(2)(B)(ii) (requiring that for "a plan [to] be fair and equitable with respect to a class" for purposes of cram down, it must be the case that "the plan provides that each holder of a claim of such class receive . . . the allowed amount of such claim" or, alternatively, "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property . . . ."); see also In re Armstrong World Indus., Inc., 432 F.3d 507, 508 (3d Cir. 2005) (affirming denial of confirmation because plan violated absolute priority rule).

13.     The Plan directly contravenes both the prohibition on unfair discrimination as well as the requirements of the absolute priority rule in the event that Class 6 rejects the Plan. Specifically, Montana's claims have been classified within Class 6 Asbestos PI Claims. See infra Part I.B (discussing, and disputing, classification of Montana's claims). Class 6 Asbestos PI Claims are impaired under the Plan. See Plan § 3.1.6(d) ("Class 6 is impaired."); see also Disclosure Statement § 1.2.1 (stating that Class 6 Asbestos PI Claims will be resolved pursuant to the Asbestos PI Trust Agreement, and that holders of such claims will receive an "[u]nknown" amount).[3]

14.     Notwithstanding that Class 6 is impaired under the Plan, classes that are the same in priority to Class 6 are unimpaired under the Plan. Specifically, in violation of the prohibition

---

[3] Class 8 CDN ZAI PD Claims and Class 10 Equity Interests in the Parent also are impaired under the Plan. See Plan § 3.1.8(d) & 3.1.10(c).

6

on unfair discrimination, the Plan provides that each holder of allowed Class 7 Asbestos PD Claims "shall be paid the Allowed Amount of its Allowed Asbestos PD Claim in Cash in full . . . ." Plan § 3.1.7(b)(i); see also Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 7 as "100%"). Likewise, the Plan provides that each holder of allowed Class 9 General Unsecured Claims "shall be paid the Allowed Amount of its Allowed General Unsecured Claim plus post-petition interest on such Claim . . . in Cash in full . . ." Plan § 3.1.9(b); see also Disclosure Statement § 1.2.1 (listing estimated percentage recovery for Class 9 as "100%").

15.    Finally, classes that are junior in priority to Class 6 are unimpaired under the Plan. Specifically, in violation of the absolute priority rule, the Plan provides, with respect to Class 11 Equity interests in Debtors Other than the Parent, that "[t]his Plan leaves unaltered the legal, equitable, and contractual rights to which each such Equity Interest in the Debtors other than the Parent entitles the Holder of such Equity Interest." Plan § 3.1.11(b); see also Disclosure Statement § 1.2.1 (listing estimated percentage recovery for Class 11 as "100%").

16.    The Debtors have thus disregarded Bankruptcy Code section 1129(b). Specifically, they have stated that even if a class does not accept the Plan, the Debtors nonetheless are seeking confirmation of the Plan pursuant to the cram-down regime. See Plan § 6.5.1 ("With respect to impaired Equity Interests in the Parent, and subject to Section 6.4 of this Plan [addressing acceptance by Classes 6 and 7 pursuant to Bankruptcy Code section 524(g)], with respect to any impaired Class of Plan Claims that fail to accept this Plan in accordance with Bankruptcy Code §§ 1126 and 1129(a), the Plan Proponents request, to the extent consistent with applicable law, that the Court confirm this Plan in accordance with Bankruptcy Code § 1129(b) with respect to such non-accepting Class of Equity Interests and

7

such non-accepting Class of Plan Claims (if any), and this Plan constitutes a motion for such relief."); see also Disclosure Statement § 4.6 ("Impaired Equity Interests in the Parent and/or impaired Classes of Plan claims that fail to accept the Plan may be 'crammed down' in accordance with Bankruptcy Code § 1129(b)."); id. § 8.2.1 (summarizing cram-down regime and stating that "[i]n the event one or more Classes of impaired Claims or Equity Interests rejects the Plan, the Debtors reserve the right to proceed with confirmation pursuant to Bankruptcy Code § 1129(b), and the Bankruptcy Court will determine, at the Confirmation Hearing, whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired Class of Claims or Equity Interests"). This is so despite the fact that the Plan, in the event of a cram down, would violate the absolute priority rule and prohibition on unfair discrimination, in direct contravention of Bankruptcy Code section 1129(b).

17. Montana requests the Court to require the Debtors to amend the Plan in order to bring it into compliance with the requirements of Bankruptcy Code section 1129(b). Specifically, the Debtors should not be allowed to maintain in section 6.5.1 of the Plan that they are seeking confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) when, in fact, the Plan in its current form directly violates the requirements of that section.

**B.     Montana Disputes The Proposed Classification Of Its Claims.**

18. While the Plan does not mention the classification of Montana's claims specifically, the Disclosure Statement provides that Montana's indemnification and contribution claims would be treated as an Indirect PI Trust Claim. See Disclosure Statement § 2.8.1.3 ("To the extent that the State of Montana's claim is Allowed, it will be treated as an Indirect PI Trust Claim.").

19. Indirect PI Trust Claims are a subset of the Class 6 Asbestos PI Claims. See Plan § 1.1(32) (defining "Asbestos PI Claim" to include an "Indirect PI Trust Claim").

8

20.     The Plan further provides that those Asbestos PI Claims (including Montana's claims, to the extent that they are allowed to be treated as Indirect PI Trust Claims, as contemplated by the Plan) are channeled to the Asbestos PI Trust. See Plan § 3.1.6(c) ("The sole recourse of the Holder of an Asbestos PI Claim on account of such Asbestos PI Claim . . . shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling Injunction, the Asbestos PI Trust Agreement, and the TDP."). The Debtors' purported basis for channeling the Asbestos PI Claims to the Asbestos PI Trust is Bankruptcy Code section 524(g). See Plan § 1.1(37) ("'Asbestos PI Trust' shall mean the . . . statutory trust, established pursuant to section 524(g) of the Bankruptcy Code . . . ."); id. § 1.1(31) ("'Asbestos PI Channeling Injunction' shall mean the order(s) entered or affirmed by the District Court, in accordance with and pursuant to Bankruptcy Code § 524(g), permanently and forever staying, restraining, and enjoining any Entity from taking any action against any Asbestos Protected Party . . . with respect to any Asbestos PI Claims, all of which shall be channeled to the Asbestos PI Trust for resolution as set forth in the TDP.").

21.     Montana maintains that its claims for indemnification and contribution are not of the type that are subject to Bankruptcy Code section 524(g). Specifically, the injunction that is implemented by that section addresses only the liabilities of a debtor that, as of the petition date, was named as a defendant in personal injury, wrongful death, or property damage actions. See 11 U.S.C. § 524(g)(2)(B)(i)(I) (requiring that "the injunction is to be implemented in connection with a trust that . . . is to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions"). Montana believes that its claims, which are in the nature of indemnification and contribution, not personal injury, wrongful death, or property damage, fall outside the scope of

9

this section.  Therefore, Montana requests the Court to require the Plan to be amended to provide that Montana's claims are not Asbestos PI Claims and are not channeled to the section 524(g) injunction.

## C.     The Plan Should Not Be Confirmed Because It Is Infeasible.

22.     Pursuant to the Bankruptcy Code, a plan also may be confirmed only if it is feasible.  Specifically, section 1129(a)(11) provides that a plan may be confirmed only if, among other things, "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . ."  11 U.S.C. § 1129(a)(11).

23.     Montana objects to the Plan because it believes that the Plan may not be feasible.  In particular, Montana believes that its claims may not be claims that are capable of being discharged by the Plan.  The Bankruptcy Code defines a "claim" as a "right to payment."  11 U.S.C. § 101(5).  Because Montana may not have a "claim" as defined in the Bankruptcy Code until its right to payment arises, Montana's claims may be treated as post-confirmation claims against the reorganized debtor, not subject to the automatic stay and not subject to compromise or discharge by the Plan.  See Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332, 335-36 (3d Cir. 1984) (reversing district court, and concluding that the automatic stay did not apply to indemnification and contribution claims that relate to a debtor's prepetition acts but for which the claimant did not have a right to payment until after the petition date).[4]

---

[4]     For the same reason, Montana believes that its claims may not be claims that are subject to the automatic stay, and therefore there is no prohibition on Montana joining the Debtors as third-party defendants in the State Court Actions, including for the purpose of liquidating its indemnification and contribution claims against the Debtors.  To the extent that the automatic stay does apply, Montana reserves all rights and arguments, including (i) to seek relief from the automatic stay and/or the permanent injunction, or (ii) to seek permission in the State Court Actions to introduce evidence of the Debtors' conduct as a superseding intervening cause of the plaintiffs' damages and to conduct necessary discovery.

24. In the event that Montana has a claim of $750 million[5] or more for indemnification or contribution that is not discharged by the Plan, Montana believes that confirmation of the Plan likely is to be followed by the need for liquidation or further financial reorganization of the Debtors. Therefore, Montana believes that the Plan does not comply with section 1129(a)(11), and, as a result, should not be confirmed.

**D.    The Plan Was Not Proposed In Good Faith.**

25. The Bankruptcy Code provides that a plan normally may be confirmed only if, among other things, it was "proposed in good faith." 11 U.S.C. § 1129(a)(3). Montana objects to the Plan because it was not proposed in good faith.

26. As a preliminary matter, Montana maintains that the Plan has not been proposed in good faith because, as set forth above, the Plan blatantly disregards the absolute priority rule and prohibition on unfair discrimination.

27. Furthermore, Montana maintains that the Plan has not been proposed in good faith because, as discussed above, Montana was not involved in any of the negotiations leading up to the Asbestos PI Settlement that "is the foundation for the Plan." Disclosure Statement at p. 11. Montana understands that certain other creditors, including the Libby Claimants, also are not in agreement with the Asbestos PI Settlement. See, e.g., Libby Claimants' Second Motion (A) for Reconsideration of Order Granting Debtors leave from Scheduling Order and Shorting Notice of Solicitation Motion and (B) to Set a Reasonable Deadline for Objections to and Date for hearing on Approval of Disclosure Statement (Docket No. 19709), at ¶¶ 3-4 (stating that "counsel to the Libby Claimants was not permitted to review advance drafts of the Plan or the Disclosure Statement" and that "the Plan and related documents do not reflect an agreement with the Libby

---

[5] Theoretically, the plaintiffs in the State Court Actions have asserted claims that could total $750 million. Specifically, there are approximately 1000 known claimants, each of which is subject to a statutory maximum of $750,000 pursuant to Mont. Code Ann. § 2-9-108(1). Montana disputes all such claims.

Claimants on how their claims should be treated . . . . The Libby Claimants intend to oppose the Plan."). The Plan's effectuation of the Asbestos PI Settlement does not reflect an agreement with Montana on how its claims should be treated, and instead constitutes a concerted action among the Debtors, the Official Committee of Asbestos Personal Injury Claimants, and the Asbestos PI Future Claimants' Representative to satisfy asbestos personal injury claimants while leaving Montana with no assurance of a fair distribution.

28.     For these reasons, Montana maintains that the Plan was not proposed in good faith and, consequently, should not be confirmed.

**E.     The Medical Criteria Set Forth In The Trust Distribution Procedures Are Improper.**

29.     Finally, Montana believes that the medical criteria set forth in the Trust Distribution Procedures (as defined in the Plan) are inappropriate. Specifically, the Trust Distribution Procedures provide that individuals within the "Lung Cancer 2 (Level VI)" are not required to submit any evidence of asbestos-related nonmalignant disease. See Trust Distribution Procedures at p. 25 (requiring such individuals to submit only a diagnosis of a primary lung cancer, Grace Exposure, and medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question). Lung cancer is very common. To allow recovery from the trust for lung cancer based on exposure creates a risk of trust payouts to a large number of persons with cancers that almost certainly were not caused by asbestos. Therefore, the Trust Distribution Procedures should be amended to require evidence of asbestos-related nonmalignant disease of the lungs/pleura, in order to limit compensation to persons who could show at least some effect from asbestos exposure, other than merely lung cancer.

WCSR 4036426v5

## RESERVATION OF RIGHTS

30. Montana reserves all rights to raise additional arguments and objections to the Plan or any amended plan (including, without limitation, by means of filing supplemental objections to the Plan) either at or prior to any hearing with respect to any such plan.

WHEREFORE, Montana respectfully requests that this Court (i) sustain the Preliminary Objection, (ii) deny confirmation of the Plan, and (iii) grant such other and further relief as it deems just and proper.

Dated:  December 22, 2008                  Respectfully submitted,

**Womble Carlyle Sandridge & Rice, PLLC**


By:    /s/ Matthew P. Ward_____
       Francis A. Monaco, Jr. (#2078)
       Kevin J. Mangan (#3810)
       Matthew P. Ward (#4471)
       222 Delaware Avenue, Suite 1501
       Wilmington, DE  19801
       Ph: (302) 252-4320
       Fax: (302) 252-4330

       Counsel for the State of Montana

WCSR  4036426v5