IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W.R. Grace & Co., *et. al.*, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

## PRELIMINARY OBJECTION TO CONFIRMATION
## OF THE FIRST AMENDED PLAN OF REORGANIZATION

Pursuant to the Case Management Order entered on December 5, 2008 [Docket No. 20204] (the "CMO"), Fireman's Fund Insurance Company, Allianz S.p.A., f/k/a Riunione Adriatica di Sicurta, and possibly other related insurance companies (collectively, "FFIC"), by their attorneys, object on a preliminary basis (this "Preliminary Objection") to confirmation of the *First Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of W.R. Grace & Co., Et Al., The Official Committee Of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, And The Official Committee Of Equity Security Holders Dated As Of December 19, 2008* (the "Plan").[1]

As set forth in the CMO, the objections herein are preliminary in nature, submitted to frame the issues for discovery and pre-trial purposes, and are not intended as, and are not, a final or complete statement of FFIC's objections to confirmation of the Plan. Rather,

---

[1] All capitalized terms not otherwise defined in this Preliminary Objection refer to those terms as currently defined in the Plan and/or in the Disclosure Statement relating to the Plan (the "Disclosure Statement") in the forms in which such documents appear on the docket as of this date. As of the deadline for filing preliminary objections to confirmation pursuant to the CMO, the Disclosure Statement with respect to the Plan has not yet been approved by the Court, and both the Plan and the Disclosure Statement, in their current draft form remain subject to further revision. It is not anticipated that there will be final Plan or Disclosure Statement documents until the hearings set for January 13-14, 2009, at the earliest, or possibly at the January 26, 2009, hearing. Accordingly, in addition to the reservations contained in the CMO and otherwise herein, this Preliminary Objection is subject to whatever revisions may be made to the Plan and Disclosure Statement hereafter.

in accordance with the CMO, this Preliminary Objection is designed to provide notice of FFIC's objections, in summary fashion, that FFIC has identified to date, without the benefit of discovery or complete investigation, and in the absence of final Plan and Disclosure Statement documents. Accordingly, FFIC reserves the right to fully develop its objections to confirmation, through discovery, further investigation and otherwise, and to assert modified, supplemental, or additional final objections prior to the March 16, 2009, date set forth in the CMO for the submission of final objections (except with respect to feasibility) to confirmation of the Plan.[2]

### Introduction

1. The Plan contemplates, *inter alia*, that after the Effective Date the Asbestos PI Trust will (i) have the exclusive right and obligation to review, process and pay Asbestos PI Claims, through the TDP, and (ii) pursuant to an assignment of Asbestos Insurance Rights, seek by litigation or settlement to recover under certain insurance policies for various policy periods that allegedly provide certain excess insurance coverage to Debtors issued by FFIC to the Debtors (collectively, the "Policies").

2. However, while the Plan seeks to enable the Asbestos PI Trust to compel FFIC to provide coverage, it also will, if confirmed, affirmatively violate FFIC's contractual rights under the Policies ("FFIC's Contractual Rights") through, *inter alia*, the discharge of Debtors' reciprocal contractual obligations ("Debtors' Contractual Obligations") under the Policies[3] and assignment of the Policies without FFIC's consent.

---

[2]     FFIC reserves its right as set forth in the CMO to assert objections to the feasibility of the Plan in accordance with the CMO.

[3]     In connection with the Policies, FFIC holds contingent and unliquidated Claims dependant on whether Debtors (and any other possible named insureds) actually perform Debtors' Contractual Obligations as required by the Policies to obtain coverage thereunder.

3.    Among the Contractual Rights under the Policies are the rights to associate in the

defense, investigation, and settlement, and to consent to any proposed settlement, of Asbestos PI

Claims (and any other Claims) that may be covered by the Policies.[4]  The Plan contemplates

violating FFIC's Contractual Rights by excluding FFIC from any aspect of the process by which

Asbestos PI Claims are to be allowed and paid.[5]  The Plan also contemplates allowing the

Asbestos PI Trust, with the consent of the TAC and FCR, to process and pay Asbestos PI Claims

without any involvement by, or consultation from, the Reorganized Debtors or FFIC.  Further,

there are no provisions in the Plan or any of the Plan Documents requiring Debtors, Reorganized

Debtors, the Asbestos PI Trust, or anyone else, from cooperating with FFIC in connection with

the investigation, defense and settlement of Asbestos PI Claims.  There is no provision in the

Trust Agreement or the TDPs setting forth how Debtors, Reorganized Debtors, or the Asbestos

PI Trust will satisfy any of the continuing Debtors' Contractual Obligation following the

Effective Date.  FFIC submits that they do not intend to do so, in violation of FFIC's Contractual

Rights under the Policies, which will vitiate any alleged insurance coverage for otherwise

covered Asbestos PI Claims.[6]

4.    Further, Debtors have an affirmative, continuing duty to cooperate with FFIC in

the investigation, defense and settlement of all Asbestos PI Claims that may be covered by

Policies.  This also is a fundamental policy right as it ensures the necessary alignment of

---

[4]    An insurer's right to associate in the defense of covered claims is fundamental to the structural
and economic relationships that form the basis of an insurance policy.  *See* 43 Am. Jur.2d Insurance
§ 1384; 7C *J. Appleman, Insurance Law and Practice* § 4681 (Berdal rev. 1979).  This right is so
fundamental that its deprivation will vitiate an insurer's obligation to provide coverage under a policy.
*See* 43 Am. Jur.2d Insurance § 1384.

[5]    *See* Plan § 7.2, Asbestos PI Trust Agreement § 1.2, and TDP § 2.2, (providing, collectively, that
only the Asbestos PI Trust will have the right to evaluate, process and pay Asbestos PI Claims).

[6]    *See* 14 Couch on Ins. § 199:13 (2003) ("As a general rule, an insured's breach of a cooperation
clause precludes coverage and releases the insurer from its responsibilities..."); N.Y. JURISPRUDENCE,
2d. ed. (2008) Insurance § 1954; *Davis v. Allstate Ins. Co.*, 204 A.D. 2d 592, 594 (N.Y. App. Div. 1994).

3

economic interests between the insurer and its policyholder in defeating and/or minimizing the

policyholder's liability for any unmeritorious claim.[7]  A policyholder's breach of its duty to

cooperate will relieve the insurer from its obligation, if any, to provide coverage under the

policy.[8]

5.  Any insurance coverage allegedly provided by the Policies is further subject to the

prohibition against assignment of the Policies.  Enforcement of anti-assignment clauses in

insurance policies is crucial to maintaining the fundamental bargain between the insurer and

policyholder.[9]  The Plan, however, contemplates that Debtors and other Insurance Contributors

will assign their Asbestos Insurance Rights under the Policies to the Asbestos PI Trust in spite of

any anti-assignment provisions in the Policies.  *See* Plan § 7.2.2.  The Policies are not subject to

assignment without FFIC's consent, which has not been sought from FFIC.[10]

6.  Additionally, if implemented, the TDP will violate FFIC's Contractual Rights to,

*inter alia*, ensure that appropriately rigorous standards are utilized for evaluation and allowance

of Asbestos PI Claims.

---

[7]    *See* 43 Am. Jur.2d Insurance §1420.

[8]    *Id.*

[9]    *See* 43 Am.Jur.2d Insurance § 785; *Caldwell Trucking PRP Group v. Spalding Composites Co.*, 890 F. Supp. 1247, 1260-61 (D.N.J. 1995) (holding that assignment of insurance rights would violate "essence of the contract" because, *inter alia*, it would create an economic incentive for policyholders to maximize insurance pay-out, which is inconsistent with policyholder's obligation to cooperate in its own defense).  Moreover, breach of the anti-assignment clause will vitiate an insurer's further obligations to provide coverage under the policy. *See* 43 Am.Jur.2d Insurance § 785.

[10]    *See* 11 U.S.C. § 365(c)(1)(A) (debtor cannot assume or assign a contract if applicable law excuses non-debtor from accepting performance from entity other than debtor); *Allied Corp. v. Frola*, 1992 WL 281114 (D. N.J. 1992) (Wolin, J.) (finding that policies were not assignable and discussing authority); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 3d Cir. 1989) ("[S]ince insurance is a personal contract between the insurer and the named insured and on behalf of others specifically provided for, coverage terminates when contract is assigned or transferred without the consent, permission, and approval of both contracting parties.") (citations omitted); *but see Hartford Accident and Indemnity Company v. Global Industrial Technologies, Inc.*, C.A. No. 07-1749 (W.D. Pa., July 25, 2008), slip. op. at 12-14 (on appeal).

4

7.   Confirmation of the Plan, with implementation of the TDP, along with the discharge, release and exculpation provisions of the Plan, combined with the assignment of Asbestos Insurance Rights to the Asbestos PI Trust without FFIC's consent, will violate FFIC's Contractual Rights, including those outlined above; is contrary to the provisions of title 11 of the United States Code; and results in a Plan that cannot be insurance neutral.

8.   Accordingly, for the following reasons FFIC preliminarily objects to confirmation of the Plan.

### Preliminary Objections To Confirmation

I.   **The Plan Violates FFIC's Rights Under Applicable Law And Therefore Does Not Satisfy The Requirements Of § 1129(a)(3)**

Section 1129(a)(3) of the Bankruptcy Code provides that a plan may be confirmed "only if [it] has been proposed in good faith and not by any means forbidden by law." Courts that have considered this provision have held that the language "forbidden by law" incorporates all applicable non-bankruptcy law.[11]

\*   The Plan does not satisfy § 1129(a)(3) because it violates FFIC's Contractual Rights to associate in the investigation, defense and settlement, and in consenting to settlement, of Asbestos PI Claims, for which the Asbestos PI Trust will seek coverage from FFIC under the Policies.[12]

---

[11]   *In re Zenith Elec. Corp.*, 241 B.R. 92, 107-08 (Bankr. D. Del. 1999) (determining whether a transaction between a controlling shareholder and its corporation contemplated in the debtor's plan violated Delaware corporate law). *See also Collier on Bankruptcy* ¶ 1129.03 [3] [a] [ii] ("section 1129(a)(3) requires that the proposal of the plan comply with all applicable law, not merely the bankruptcy law"); *In re Cajun Elec. Power Coop., Inc.*, 230 B.R 715, 737 (M.D. La. 1999) (finding that the plan did not satisfy the good faith requirement of § 1129(a)(3) because it attempted to improperly modify contracts, contrary to established state cooperative law); *In re Mahoney*, 80 B.R. 197, 200-03 (Bankr. S.D. Cal. 1987) (denying confirmation of a plan containing provisions which violated state's corporations law).

[12]   In *In re The Wallace & Gale Co.*, No. 85-4-0092 (Chapter 11) (Bankr. D. MD. July 22, 1998), Transcript Of Oral Ruling, the bankruptcy court was asked to confirm a proposed plan of reorganization that – like the Plan – purported to eliminate insurers' rights regarding the defense, investigation, and

\* The Plan does not satisfy § 1129(a)(3) because it provides the Asbestos PI Trust with the exclusive right and obligation to review, process and pay Asbestos PI Claims, without allowing for the participation of FFIC in the process, thus violating FFIC's Contractual Rights with respect to Debtors' (or any other purported rights holders under the Policies) ongoing duty of cooperation under the Policies. Further, FFIC may demand that Debtors, Reorganized Debtors, or the Asbestos PI Trust comply with Debtors' Contractual Obligations to FFIC by objecting to, and seeking the disallowance of, unmeritorious Asbestos PI Claims. Their failure to do so, and the discharge and/or release of such Contractual Obligations by the Plan, would constitute a further violation of the duty of cooperation and of FFIC's Contractual Rights.

\* The Plan does not satisfy § 1129(a)(3) because it provides for assignment of the Asbestos Insurance Rights with respect to the Policies to the Asbestos PI Trust without FFIC's consent and otherwise in contravention of state law, including FFIC's Contractual Rights, and further eliminates such as a defense to coverage. *See* Plan § 7.2.[13]

---

settlement of asbestos-related bodily injury claims for which coverage was sought. In a ruling from the bench, the *Wallace & Gale* court denied confirmation of the plan and acknowledged the importance of the insurers' contractual rights, holding that a plan that violates such rights cannot be confirmed:

> If it is to be liable for any judgment rendered against the insured, [an insurer] has a right to make certain that a proper defense is made to the claim and that unwarranted or overstated and conclusive claims are exposed and defeated. . . .

> I find that the cornerstone of the Plan is the wrenching away of these controls bargained for by the [insurance] carriers. And in placing these same controls in the hands of the persons suing the Debtor.

Trans. at 119-21 (citing *Sherwood Brands, Inc. v. Hartford Acc. & Indem.*, 347 Md. 32, 698 A.2d 1078 (1997)). Debtors cannot unilaterally abrogate FFIC's Contractual Rights and/or the statutory rights to participate in the defense of unmeritorious Asbestos PI Claims, or other Claims that may allegedly be subject to coverage from FFIC, without jeopardizing alleged insurance coverage that might otherwise be available.

[13] An additional reason why the Plan is not, and in its current form, cannot be, "insurance neutral."

SL1 892657v1/021630.00003

\*      The Plan does not satisfy § 1129(a)(3) because it, in effect, re-writes the Policies by discharging Debtors from Debtors' Contractual Obligations, while also enjoining FFIC from seeking to enforce performance of Debtors' Contractual Obligations to FFIC, all while the Asbestos PI Trust seeks coverage from FFIC under the Policies through the assignment of Asbestos Insurance Rights. *See* Plan § 7.15(h).

\*      The Plan does not satisfy § 1129(a)(3) because it purports to enjoin FFIC from pursuing Contribution Claims against a Settled Asbestos Insurance Company, *see* Plan §§ 7.15(i) and 8.2.1, which violates FFIC's state law rights against non-debtor entities.

\*      The Plan does not satisfy § 1129(a)(3) because, contrary to FFIC's rights under applicable state law, the TDP does not require that proceeds from Asbestos Insurance Settlement Agreements, or from other settlements, be applied to the payment of Asbestos PI Claims before insurance coverage is sought from non-settled insurance companies.

\*      The Plan does not satisfy § 1129(a)(3) because it provides, artificially, for claimants' submissions to the Asbestos PI Trust to be kept secret. *See* § 6.5 of the TDP. Such artificial confidentiality requirements violates FFIC's Contractual Rights and will adversely affect all non-settled insurers by promoting the payment of non-meritorious claims.[14] Secrecy in the claims resolution process, while coverage is sought from FFIC, means that FFIC might not even be able to discover the basis on which payment was made by the Asbestos PI Trust on an Asbestos PI Claim which is to be tendered for payment to FFIC under the Policies. Thus, the Plan impairs FFIC's rights by declaring the documents submitted by a claimant in support of an Asbestos PI Claim to be "privileged" and entitled to "confidential" treatment and, as such,

---

[14]    The TDP purports to require that the Asbestos PI Trust hold all materials submitted by an Asbestos PI Claimant as confidential, and only allows the Asbestos PI Trust, in specific limited circumstances (which are not identified), to disclose the contents of the materials to the applicable insurance company after obtaining the consent of the TAC and the FCR. *See* TDP § 6.5.

7

beyond the reach of an insurer that otherwise is contractually entitled to that information from its insured. The Plan thus would impair FFIC's Contractual Rights because the preemptive declaration in the TDP that Asbestos PI Claim submissions are "privileged" and/or "confidential," would present an impediment preventing insurers from enforcing their rights and defenses that is not otherwise present in the tort system. Despite its existing rights under the Policies, such provision of the TDP would impose upon FFIC an unnecessarily heavy burden of proving entitlement to such artificially "privileged" and/or "confidential" information.

## II.    The Plan Violates Title 11 And Therefore Does Not Satisfy The Requirements Of § 1129(a)(3)

\*    The Plan does not satisfy § 1129(a)(3) because the Asbestos PI Trust has the exclusive right to review, process and pay Asbestos PI Claims, without any involvement by the Court or insurers (who will be asked to provide coverage for such claims), violates Section 502 of the Bankruptcy Code (as well as FFIC's Contractual Rights under the Policies, as stated above). Implementation of the TDP will deprive FFIC of its statutory right under Section 502(a) of the Bankruptcy Code to prosecute objections to the allowance of unmeritorious Asbestos PI Claims, which are independent of FFIC's Contractual Rights.[15]

\*    The Plan does not satisfy § 1129(a)(3) because it proposes to assign the benefits of the Policies to the Asbestos PI Trust without assuming the corresponding burdens thereunder. Because the Plan purports to assign the Asbestos Insurance Rights under the Policies without requiring the Asbestos PI Trust to assume the reciprocal Debtors' Contractual Obligations, the Plan does not comply with the Bankruptcy Code with respect to FFIC, as the

---

[15]    *See* 11 U.S.C. § 502(a); *In re Keck, Mahin & Cate*, 241 B.R. 583, 596 (Bankr. N.D. Ill. 1999)(finding that professional liability insurer is a party in interest with standing to object to plan provisions affecting its interests); *In re Standard Insulations, Inc.*, 138 B.R. 947 (Bankr. W.D. Mo. 1992) (holding that insurers were parties in interest under sections 1109(b) and 502(a) due to their possible responsibility to cover claims arising from exposure to debtor's products during the covered periods).

terms of the Policies' must "ride through" and remain binding on a reorganized debtor after

confirmation of a plan (in order to ensure compliance with § 1129(a)(3), effect true insurance

neutrality, and to provide that the Plan is fair and equitable as to FFIC).[16]  Further, because the

anti-assignment provisions of the Policies must "ride through" any reorganization, Debtors

cannot assign their rights under the Policies without the prior express consent of FFIC.  Even if,

*arguendo*, the Policies can be assigned, the Asbestos PI Trust would then be bound to perform

Debtors' Contractual Obligations, but for the terms of the Plan that release such obligations.[17]

      *     The Plan does not satisfy § 1129(a)(3) because the release and injunction

provisions of the Plan impair FFIC's Contractual Rights including, without limitation, any

(i) rights of subrogation, contribution, recoupment and setoff; (ii) rights to require the insured to

pay any retrospective premiums, deductibles and self-insured retentions; and (iii) rights to

enforce performance of Debtors' Contractual Obligations.  *See* Plan § 7.15(h) and Article VIII.[18]

      *     The Plan does not satisfy § 1129(a)(3) to the extent that it contains third-

party release provisions and injunctions that are extremely broad with respect both to the entities

being released and with respect to the claims to be released.  *See* Article VIII of the Plan.  This

---

[16]    *See, e.g., In re Stewart Foods, Inc.*, 64 F.3d 141, 145 (4th Cir. 1995) (terms of contract binding); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 119, 1153 (3d Cir. 1989) (debtors bound by arbitration clause in contract); *Texas Pacific Indemn. Co. v. Atlantic Richfield Co.*, 846 S.2d 580, 585 (Tex. App. 1993) (enforcing anti-assignment provision in bond despite bankruptcy trustee's attempt to assign).

[17]    Thus, as set forth above, the Plan's purported assignment of the Policies would vitiate any coverage otherwise available thereunder; and the Plan further cannot eliminate such as a defense to coverage available to FFIC post-confirmation.

[18]    A bankruptcy court cannot alter or enlarge an insurer's contractual obligations.  *See Coupon Clearing Serv.*, 113 F.3d at 1099 ("[T]he estate ha[s] no greater rights in property than those held by the debtor prior to bankruptcy."); *Moody v. Amoco*, 734 F.2d at 1213 (the Bankruptcy Code is not intended to expand debtor's rights against others more than they exist at the commencement of the case). Moreover, as a matter of applicable non-bankruptcy law, the abrogation of FFIC's Contractual Rights may excuse FFIC from any obligations to provide otherwise allegedly applicable coverage for Asbestos PI Claims. *See* 14 Couch on Ins. § 199:13 (2003).

includes, without limitation, the Plan's broad definition of Asbestos Protected Parties, which makes it impossible to know exactly who is covered by the Asbestos PI Channeling Injunction. Similarly, the Asbestos Insurance Entity Injunction and the various Releases identified in section 8.8 of the Plan are overly, and unnecessarily, broad.

      \*     The Plan does not satisfy § 1129(a)(3) to the extent that it attempts to confer jurisdiction, contrary to 28 U.S.C. § 157, over non-core matters, such as insurance coverage disputes or other adjudication of FFIC's rights and obligations under the Policies, with the Bankruptcy Court. This includes, without limitation, any possible adjudication of FFIC's rights against any affiliate, released party, or any other non-debtor third party.[19]

      \*     The Plan does not satisfy § 1129(a)(4) because the compensation to be provided to the members of the TAC by the Asbestos PI Trust is not set forth in the Plan or in any of the Plan Documents.

### III.    The Plan Is Not Proposed In Good Faith As to FFIC Or Otherwise, And Therefore Does Not Satisfy The Requirements Of § 1129(a)(3)

      \*     Plan Proponents have proposed a Plan that intentionally impairs FFIC's rights in contravention of § 1129(a)(3) of the Bankruptcy Code. Accordingly, the Plan is not proposed in good faith with respect to FFIC. FFIC incorporates in this regard its preliminary objections outlined in Part I above.

---

[19]    To the extent that the Plan contemplates that proceeds of the Policies will be a source for payment of Asbestos Trust Claims, neither the Plan nor the Confirmation Order may adjudicate the existence or extent of insurance coverage under the Policies, rights to payments under the Policies or coverage for any particular Asbestos Trust Claim. *See Beard v. Braunstein*, 914 F.2d 434, 445 (3d Cir. 1990) (holding that an action "involving pre-petition contracts, allegedly breached both before and after the filing of a petition, is entirely a non-core matter"); *Amatex*, 107 B.R. at 863 (determining that an adversary proceeding seeking declaratory relief concerning insurance coverage for asbestos-related claims is a non-core matter), *aff'd*, 908 F.2d 961 (3d Cir. 1990); *Sullivan v. Maryland Cas. Co. (In re Ramex, Int'l, Inc.)*, 91 B.R. 313, 315 (Bankr. E.D. Pa. 1988) (stating that a "cause of action for declaratory judgment under a policy of insurance issued to the debtor pre-petition is not a core proceeding"); *In the Matter of United States Brass Corp.*, 110 F.3d 1261, 1268-9 (7th Cir. 1997) (holding that an action between a debtor and its insurer to resolve a coverage dispute is non-core).

10

&ast;  Further, FFIC submits that Debtors own statements demonstrate that the Plan is not proposed in good faith with respect to the proposed treatment of Asbestos PI Claims as the terms of the Asbestos PI Trust Agreement and the TDP are such that non-meritorious, or even fraudulent, Asbestos PI Claims will be allowed and paid as a result of confirmation of the Plan and implementation of the TDP.[20]

&ast;  The Plan is not proposed in good faith because it subjects non-settling insurers to increased risk of possible obligations through the TDP's unreasonable claim allowance criteria, which will ensure compensation of meritless claims. This is demonstrated by, *inter alia*:

  &ast;  The very general and non-specific language used in the TDP

  &ast;  The absolute and unfettered discretion that can be exercised by the Trustees -- as directed by the TAC and FCR – in processing and paying Asbestos PI Claims

  &ast;  Pursuant to the lax medical and exposure standards of the TDP, claimants are effectively relieved from their legal obligation to demonstrate negligence and causation, and instead claimants are required simply to submit a claim form providing generic information regarding the nature of the alleged claim.

---

[20] In their original disclosure statement filed on November 13, 2004 [Docket No. 6896] (the "First Disclosure Statement"), Debtors stated:

> In the Debtors' view, only a small portion of the Asbestos PI Claims allege even a prima facie case of any functional impairment attributable to exposure to the Debtors' products.

First Disclosure Statement § 2.4.1. As recently as March, 2008, Debtors' position was that their aggregate liability for present and future Asbestos PI Claims was between $385 million and $1.314 billion, with a median value of $712 million. *See* Debtors' Expert Report by B. Thomas Florence, Ph.D., dated June 18, 2007, at p. 3 [Docket No. 16116]. Yet, in April Debtors did an about-face, agreeing, without insurer involvement or consent, to spend over $2 billion in payment of Asbestos PI Claims. *See* Plan §§ 1.1.40 and 7.2.2. In addition to violating the good faith requirements of the Bankruptcy Code, Debtors' voluntary acceptance of such substantial asbestos liability has a direct and adverse impact on FFIC' Contractual Rights, which is belied by characterizing the Plan as "insurance neutral." *See* Section IV, *infra*.

11

   *  The TDP contains provisions that would allow claimants that have received adverse results in the tort system for the same asbestos-related claim against other defendants nevertheless to recover from the Asbestos PI Trust.[21]

   *  The TDP requires a claimant to provide a statement from a physician in connection with an Asbestos PI Claim; however, there are no safeguards in place to ensure that those statements are credible, or whether the physician providing such statements must be board-certified as a specialist in radiology, pathology or other specialties.[22]

   *  Not only does the artificial confidentiality of claimants' submissions to the Asbestos PI Trust, as authorized by the TDP, *see* § 6.5 of the TDP, violate FFIC's Contractual Rights (as discussed above), it also demonstrates the lack of good faith with respect to the process by which Asbestos PI Claims will be processed and paid. In effect, when the Asbestos PI Trust seeks coverage from FFIC with respect to an Asbestos PI Claim, the only parties that will know what evidence was presented with respect to the claim -- and the basis on which the claim was paid, and for which coverage is sought -- will be those persons, including claimants' counsel, with a fiduciary duty to claimants. FFIC will not have such information and would not be entitled to such under the TDP unless it can obtain an order from the Court directing the Asbestos PI Trust to disclose this most basic of information.

---

[21] *See* TDP § 5.7(a)(2)("In addition, claimants who otherwise meet the requirements of this TDP for payment of a PI Trust Claim shall be paid irrespective of the results in any litigation at anytime between the claimant and any other defendant in the tort system."). If such adverse result was due to a circumstance that would be equally applicable to Debtors (*i.e.*, that the claimant has no impairment, or that such impairment was not due to exposure to asbestos) then the TDP similarly should bar such claimants from obtaining compensation from the Asbestos PI Trust. Failure of the TDP to so provide demonstrates the lack of good faith in this arrangement and how meritless claims will be "processed and paid" by the Asbestos PI Trust.

[22] *See In re Silica Products Liability Litig.*, 398 F.Supp. 2d 563 (S.D. Tex. 2005) (highlighting potential abuses in the medical screening/diagnosis process for mass tort claims).

SL1 892657v1/021630.00003

&ast;       The Plan is not proposed in good faith from the perspective of non-settled

insures, including FFIC, to the extent it represents a voluntary settlement that, because non-

settled insurers' consent was not solicited, will vitiate otherwise available insurance coverage.

After pursuing estimation of Asbestos PI Claims for over four years, on April 6, 2008, the Plan

Proponents entered into the Asbestos PI Settlement.  As a result, Debtors have abandoned their

most fundamental position in this bankruptcy case that "most [of the] Asbestos Claims have no

value." *See* Disclosure Statement at 71.  If the Plan Proponents complete reversal on the value of

Asbestos PI Claims is based on something other than credible medical evidence of disease and

causal connection to Debtors' operations or products, any alleged coverage that the Policies may

otherwise provide will be vitiated as a result of impairments to FFIC's Contractual Rights.

## IV.       To The Extent The Plan Impairs FFIC's Contractual, State Law, Or Bankruptcy-Related Rights, It Is Not Insurance Neutral And Section 7.15 Of The Plan Does Not Make The Plan Insurance Neutral

There is no authority in the Bankruptcy Code providing for, or defining what

constitutes, "insurance neutrality."  In *Combustion Engineering*, the Third Circuit recognized

that plans can be insurance neutral when the plan leaves *unaltered* parties' claims, defenses,

rights or causes of action under subject insurance policies and, by the terms of the plan, those

claims, defenses, rights or causes of action pass through the bankruptcy case *unaffected* by the

terms of the plan. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 218 (3d Cir. 2005). [23]

For a plan to be truly neutral with respect to insurance policies and claims relating thereto, such

as those based on violation of FFIC's Contractual Rights, it must not impair an insurer's rights

---

[23]       Relatedly, section 1124 of the Bankruptcy Code provides that a class of claims or interests is impaired under a plan unless, the plan "leaves *unaltered* the legal, equitable, and contractual rights to which such claim ... entitles the holder ...."  11 U.S.C.  § 1124 (emphasis supplied).

13

under such policies. As discussed above, the Plan does not leave FFIC unimpaired because the Plan alters FFIC's Contractual Rights and the reciprocal set of Debtors' Contractual Obligations.

     \* Despite the title of section 7.15 of the Plan ("Section 7.15"), the Plan is not "insurance neutral" for the following reasons, among others:

     \* The substitution of the "remedy" provided in Section 7.15 (i) for otherwise enforceable Contribution Claims against non-debtor entities leaves a non-settling Asbestos Insurance Entity without the same set of rights that it would have had absent this bankruptcy.

     \* Section 7.15 purports to (i) bind Asbestos Insurance Entities to the transfer of Asbestos Insurance Rights under the Asbestos Insurance Transfer Agreement notwithstanding any anti-assignment provision in or incorporated into any Asbestos Insurance Policy or otherwise applicable non-bankruptcy law and (ii) subjects all Asbestos Insurance Entities to the releases and injunctions set forth in Article XIII of the Plan. *See* Plan § 7.15(g) and (h).

     \* The Plan is not "insurance neutral" because it impairs FFIC's Contractual Rights and releases Debtors' Contractual Obligations while purporting to grant unfettered rights to the Asbestos PI Trust to seek insurance coverage.

     \* Although Section 7.15 purports to allow Asbestos Insurance Entities to maintain Asbestos Insurer Coverage Defenses, such provision is inadequate without allowing an insurer the rights it has outside of bankruptcy to participate in the investigation of Asbestos PI Claims and to defend against unmeritorious Asbestos PI Claims. Notwithstanding the "Insurance Neutrality" language of Section 7.15, the TDP does not even contemplate that the Asbestos PI Trust will disclose any information to an Asbestos Insurance Entity except in

SL1 892657v1/021630.00003

"specific limited circumstances." *See* TDP at § 6.5. Only a full exchange of information about Asbestos PI Claims that the Asbestos PI Trust seeks coverage under the Policies would comply with Debtors' Contract Obligations.

      \*      Finally, in the face of the evidence that Debtors presented in support of the Estimation Motion, the entire Asbestos Settlement Agreement, as implemented by the TDP provisions that allow the Asbestos PI Trust to settle Asbestos PI Claims without the involvement of FFIC and then present that settled claim to FFIC for payment, is a voluntary payment in violation of the consent to settle requirements of the Policies. Under the totality of the circumstances, this attempt to bind FFIC is in violation of FFIC's Contractual Rights and is not insurance neutral.

## V.    The Plan Cannot Be Confirmed Because It Is Not Fair And Equitable As To FFIC

FFIC is entitled to fair and equitable treatment of its rights under, interests in, and potential Claims arising out of, the Policies. Because the Plan does not provide fair and equitable treatment to FFIC, it does not satisfy section 1129(b) of the Bankruptcy Code with respect to FFIC, as follows.

      \*      Specifically, the discharges and injunctions contained in the Plan impermissibly impair FFIC's post-Effective Date rights to enforce satisfaction of Debtors', Reorganized Debtors' and/or or the Asbestos PI Trust's continuing duties and obligations under the Policies, as well as any possible rights of set-off, recoupment, contribution, reimbursement and subrogation. *See* Plan, Section 7.15(h), Article XIII. In this respect, the Plan is not fair and equitable to, and unfairly discriminates against, FFIC because it makes FFIC potentially liable to provide insurance coverage and other performance under the Policies while depriving FFIC of its corresponding ability to exercise its rights, and enforce its remedies, thereunder. *Id.*

SL1 892657v1/021630.00003

&ast;  In addition, the Plan improperly proposes to re-write the terms of the Policies. A debtor "cannot unilaterally impose coverage terms on [the insurers] ...."[24] To the extent that the Plan purports to assign any of the Policies without the prior express consent of FFIC and without expressly requiring Debtors, Reorganized Debtors and/or or the Asbestos PI Trust, as the case may be, to assume all of the duties and obligations of the insured thereunder, it impermissibly attempts to unilaterally modify the terms of the Policies.

&ast;  The Plan also violates the jurisdictional limitations of 28 U.S.C. § 157 because it improperly attempts to confer jurisdiction upon the Bankruptcy Court for non-core matters that may involve adjudication of FFIC's rights and obligations under the Policies. *See* Plan § 7.15(e). This includes, without limitation, any possible adjudication of FFIC's rights against any affiliate, released party, or any other non-debtor third party. To the extent that the Plan contemplates that proceeds of the Policies will be a source for payment of Asbestos PI Claims, neither the Plan nor the Confirmation Order may adjudicate the existence or extent of alleged coverage under the Policies or alleged coverage for any particular Asbestos PI Claim.

### Reservation Of Rights

FFIC expressly reserves, and does not waive, all of its rights, defenses, limitations and/or exclusions in connection with FFIC's Contractual Rights, Debtors' Contractual Obligations, applicable law or otherwise. FFIC further reserves all rights to assert any and all such rights, defenses, limitations and/or exclusions in any appropriate manner or forum whatsoever (including, without limitation, any of its rights to have any non-core matter relating to the interpretation of FFIC's Contractual Rights and Debtors' Contractual Obligations

---

[24] *Certain Underwriters at* Lloyd's, *London v. McDermott Int'l Inc.*, 2002 U.S. Dist. Lexis 874* 32 (E.D. La. 2002); *In re Ames Dept. Stores, Inc.*, 1995 WL 311764 (S.D.N.Y. May 18, 1995) (bankruptcy court does not have the authority to rewrite the terms of an insurance policy and impose requirements upon the insurer which were not part of the parties' bargains).

SL1 892657v1/021630.00003

adjudicated by the United States District Court). Nothing contained in this Preliminary Objection shall be deemed to expand any alleged coverage that may otherwise be available under any insurance policies or any alleged rights to payment under any settlements.

FFIC further reserves all of its rights to raise the issues contained in this Preliminary Objection and any other related issues in any procedurally-appropriate contested matter and/or adversary proceeding including, without limitation, objections to confirmation of the Plan and a separate adversary proceeding requesting any appropriate declaratory and/or injunctive relief with respect to any of FFIC's Contractual Rights and Debtors' Contractual Obligations that may be adversely affected by confirmation of the Plan.

FFIC further reserves all of its rights to object to any claim for coverage under any of the Policies and/or any claim for payment under any settlement agreements, and/or to seek declaratory and/or injunctive relief to the extent that treatment of FFIC's Contractual Rights, Debtors' Contractual Obligations, and/or confirmation of the Plan violates any terms or conditions of any of the Policies and/or settlements or gives rise to any defenses on behalf of FFIC.

Nothing in this Preliminary Objection shall be construed as an acknowledgment that any of the Policies, or pre-petition settlement agreements, cover or otherwise apply to any Claims, losses or damages on account of any Claims or otherwise, or that any such Claims or causes of action are eligible for payment. FFIC reserves the right to seek an adjudication that Debtors have waived or forfeited any allegedly available coverage under the Policies.

Finally, FFIC reserves its right to amend, modify or supplement this Preliminary Objection in response to, or as a result of any discovery or investigation being conducted in connection with confirmation of the Plan and/or any submission in connection with the Plan or

this case filed by any party-in-interest.  FFIC also reserves the right to adopt any other objections

to confirmation of the Plan filed by any other party.

### Conclusion

WHEREFORE, FFIC preliminarily objects to confirmation of the Plan and requests such

relief as the Court deems just and proper.

Dated:  January 5, 2009                    STEVENS & LEE, P.C.

                                           /s/ *John D. Demmy*
                                           John D. Demmy (DE Bar No. 2802)
                                           1105 North Market Street, 7th Floor
                                           Wilmington, DE 19801
                                           Telephone: (302) 425-3308
                                           Telecopier: (610) 371-8515
                                           Email: jdd@stevenslee.com

                                           -and-

                                           Leonard P. Goldberger
                                           Marnie E. Simon
                                           (Members PA Bar)
                                           1818 Market Street, 29th Floor
                                           Philadelphia, PA 19103-1702
                                           Telephone:  (215) 751-2864/2885
                                           Telecopier:  (610) 371-7376/8505
                                           Email: lpg@stevenslee.com
                                           Email: mes@stevenslee.com

                                           ATTORNEYS FOR FIREMAN'S FUND
                                           INSURANCE COMPANY AND ALLIANZ
                                           S.p.A., f/k/a  RIUNIONE ADRIATICA DI
                                           SICURTA