## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>            Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>Jointly Administered<br><br>Related Docket Nos. 19581, 19620<br><br>Hearing on Plan Confirmation: April 6, 2009 |

## ROYAL'S PRELIMINARY OBJECTIONS TO
## DEBTORS' JOINT PLAN OF REORGANIZATION

O'MELVENY & MYERS LLP
Paul R. Koepff (*pro hac vice*)
Tancred V. Schiavoni (*pro hac vice*)
Gary Svirsky (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
Carl J. Pernicone (*pro hac vice*)
150 East 42nd Street
New York, NY 10017-5639

BIFFERATO GENTILOTTI LLC
Ian Connor Bifferato (#3273)
Garvan F. McDaniel (#4167)
800 King Street, First Floor
P.O. Box 2165
Wilmington, DE 19899-2165
(302) 429-1900

*Attorneys for Arrowood Indemnity Company*
*f/k/a Royal Indemnity Company*

In accordance with Paragraph 3 of the Case Management Order entered by this Court on December 5, 2008, Arrowood Indemnity Company, f/k/a Royal Indemnity Company ("Royal") respectfully submits these preliminary objections to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan") of W.R. Grace & Co., *et al.* (the "Debtors"), the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated as of September 19, 2008 (collectively the "Plan Proponents") (dkt. no. 19579).[1]

## INTRODUCTION

Royal files these objections without benefit of discovery.  Royal timely served plan-related discovery on the Debtors, the Future Claimants Representative, the Asbestos Claimants Committee, and the Unsecured Creditors Committee,  but the Court has required these preliminary objections to be filed by January 5, before discovery is complete.  Thus, these Objections are based on the terms of the Plan itself and such information as Royal has been able to obtain through other sources.  As explained below, the Court's scheduling order has made it virtually impossible for Royal to develop and set forth its objections to the Plan in the manner it deems appropriate.  While this problem affects all of Royal's objections, the impact of the Court's scheduling order is perhaps most acute with respect to the objection that the Plan does not satisfy the "good faith" requirement of § 1129(a)(3) of the Bankruptcy Code.[2]

---

[1] All capitalized terms not otherwise defined herein shall have the respective meanings set forth in the in the Plan.
[2] Unless otherwise indicated, all statutory citations in these Objections are to the United States Bankruptcy Code, 11 U.S.C.

All the ways in which the Plan may fail to meet the confirmation requirements of § 1129(a), and thereby make the Plan unconfirmable, may not be clear until the conclusion of discovery. In addition, discovery may reveal that the Plan also fails to meet the requirements of § 524(g), precluding the issuance of the sort of "channeling injunction" that would be authorized if the requirements of that provision are satisfied. An explanation of these objections (or, at least, as such an explanation as can be given absent discovery) is set forth below. In summary, Royal preliminary objects to confirmation of the Plan on the following grounds:

1. <u>The Plan Is Not "Insurance Neutral."</u>  The Plan is not "insurance neutral;" rather, it impairs Royal's legal and contractual interests in myriad ways, including the following:

- The Plan impairs Royal's insurance coverage defenses;
- The Plan unnecessarily carves out from a list of defenses that are supposedly preserved to the Coverage Litigation a variety of issues that are among those the state court would be most likely to find bar coverage;
- The Plan purports to assign Royal's policies to the Trust notwithstanding explicit anti-assignment provisions in the policies;
- The Plan enacts TDPs that interfere with Royal's rights under state law to control the defense and settlement of claims; and
- The Plan enjoins Royal from asserting contribution and other claims against the Settling Insurers, but does not provide any alternative treatment of such claims and no means for such claims to be paid.

Even though the Plan impairs Royal's contractual and legal rights, it does not provide them with any release from liability under their contracts, any compensation for the damage the Plan imposes on them, or any right to vote on the Plan, thus failing to satisfy several confirmation requirements contained in § 1129(a).

    2.  <u>The Plan Does Not Satisfy The Requirements Of § 524(g)</u>.  Because the Plan seeks the issuance of a channeling injunction under § 524(g), the Debtors must satisfy the requirements of that section of the Bankruptcy Code.  As yet, however, the Debtors appear to fail to do so in various ways, including the following:

- The Debtors have not established that their contributions to the Trust are "fair and equitable" as required by § 524(g)(4)(B)(ii); and

- The Debtors have not established that the non-debtor persons and entities who would be protected by the Channeling Injunction have derivative liability for Debtors' asbestos problems, and thus qualify for protection under § 524(g)(4)(A(ii); they also are not making contributions that are "fair and equitable;" some are making no contributions at all, while the contributions of others are *de minimis* at best.

    3.  <u>The Plan Does Not Meet The Confirmation Requirements Of § 1129(a)</u>.  Every plan proponent must bear the burden of proving that its plan meets the enumerated confirmation requirements set forth in § 1129(a) of the Bankruptcy Code.  It is less then clear that the Plan Proponents here can carry that burden, and the Court can make the requisite findings under § 1129(a), because of the following:

- Since the Plan violates numerous provisions of the Bankruptcy Code, Plan Proponents cannot meet the requirements of § 1129(a)(1), which requires that a plan comply with the applicable provisions of the Bankruptcy Code.  Among the Code provisions that this Plan may violates are the following:

    ➢ The Plan appears to discharge the liabilities of non-debtors in violation of §§ 1141 and 524(e);

    ➢ The Plan cancels the requirement in § 501 that claimants have allowed claims before they can vote or be paid, and overrides Royal's rights under § 502 to object to claims; and

    ➢ The solicitation and voting under the Plan did not meet the Code's requirements;

- The Plan does not meet the requirement of § 1129(a)(3) that it be proposed in "good faith." The claimants' lawyers wrote the TDPs, which govern the liquidation and payment of claims, and which contain lax medical criteria, lax exposure criteria, and admittedly inflated claim values, so as to make it easier for the claims to be paid rapidly;

4.  <u>The Plan is unconfirmable to the extent that it purports to upgrade Grace's bargained-for exchange in the 1995 Settlement Agreement</u>. The Bankruptcy Code requires that a reorganization plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. §1129(a)(3). "[M]eans forbidden by law" refers to state as well as federal law. *See In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984); *In re Bush Indus., Inc.*, 315 B.R. 292, 308 (Bankr. W.D.N.Y. 2004) (mandate under Section 1129(a)(3) includes laws of corporate governance). Courts will deny confirmation under Section 1129(a)(3) where, as here, the debtor proposes a plan to effect improper objectives, including to avoid applicable law or to gain a tactical advantage. *See In re Bush Indus., Inc.*, 315 B.R. at 304-08; *In re Manor Place Dev. Assocs., L.P.*, 144 B.R. 679, 686 (Bankr. D.N.J. 1992).[3]

It is "well settled" that a debtor's rights under a contract are "subject to all valid claims, liens and equities." *Zartman v. First Nat'l Bank of Waterloo, N.Y.*, 216 U.S. 134, 138 (1910). "While bankruptcy courts have the power to allow debtors to *escape* burdensome contracts by rejecting them, bankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms." *In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) (vacating confirmed plan on grounds that it allowed debtors to unilaterally modify contract); *see also Butner v. United States*, 440 U.S. 48, 55 (1979) (rule that property rights should not receive different treatment because an interested party enters bankruptcy is necessary "to reduce uncertainty . . . and to prevent a party from receiving a windfall merely by

---

[3] The Court should also deny confirmation based on Section 1129(a)(1), which prohibits confirmation of a plan that, by its terms or in its proposed implementation, conflicts with or contravenes applicable bankruptcy law. *See In re Manor Place Dev. Assocs., L.P.*, 144 B.R. 679 (Bankr. D.N.J. 1992).

reason of the happenstance of bankruptcy") (internal quotation omitted). It is also well-established that a debtor must assume a contract's burdens as well as its benefits, *see NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984), citing *In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3d Cir. 1951), even in the case of assigned contracts, *Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001).[4]

Therefore, a debtor may not use the bankruptcy process to upgrade a contract that is the basis for its claim against a non-debtor. *See In re EES Lambert Assocs.*, 62 B.R. 328, 336 (Bankr. N.D. Ill. 1986) ("However expansive the bankruptcy court's power may be to protect the property interests of debtors-in-possession, it does not extend to enlarging the rights of a debtor under a contract or rewriting its terms."); *In re Heaven Sent, Ltd.*, 50 B.R. 636, 638 (Bankr. E.D. Pa. 1985) ("the Code does not augment the rights of a debtor under a contract"); *In re Bolin Oil Co.*, 51 B.R. 936, 938 (Bankr. N.D. Ohio 1985) (with respect to an insurance policy issued to the debtor, "[t]he Bankruptcy Code does not enlarge the rights of the debtor under a contract").

Courts have consistently applied these principles in asbestos bankruptcies. Indeed, in a bankruptcy case similar to this one, a district court in the Third Circuit held that the filing of bankruptcy did not alter the rights of parties to insurance contracts. *See In re Amatex Corp.*, 107 B.R. 856, 865-66 (E.D. Pa. 1989) ("It is therefore clear, under Pennsylvania law, that the rights and obligations of the Debtor and [insurer] under the [insurance] policy are not altered because of the Debtor's Chapter 11 filing"). The *Amatex* court acknowledged that it had no power to alter the terms of the policy. "[T]his court does not have the power to require that [the insurer] cash out the coverage under its policy contrary to the terms of that policy. [The insurer] must only indemnify the Debtor in accordance with the terms of its policy." *Id.* at 871; *see also ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 764 F.2d 968, 975 (3d Cir. 1985) ("It is undisputed that .

---

[4] *See also In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1091 (9th Cir. 1990) (bankruptcy court "must be sensitive to the rights of the non-debtor contracting party . . . and the policy requiring that the non-debtor receive the full benefit of his or her bargain"); *City of Covington v. Covington Landing Ltd. Partnership*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party").

. . the policy language explicitly gave the insurer the right to defend ACandS in any suit in which the insurer had the duty to defend. The district court was without power to abrogate this contract right"); *In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) (holding that the debtor did not have any right to immediate possession of the insurance proceeds); *see also Columbia Cas. Co. v. Fed. Press Co. (In re Fed. Press Co.)*, 104 B.R. 56, 64 (Bankr. N.D. Ind. 1989) (debtor "not automatically relieved of its obligations under the . . . policies simply because it has filed its Chapter 11 petition").

Grace is obligated to assist and cooperate with Royal and to ensure that the Royal Settlement Agreement is fully implemented and that no further asbestos-related or products claims are tendered to Royal. To the extent that that Plan purports to release Grace of any of its contractual obligations, the Plan violates Sections 1129(a)(1) and (a)(3).

5. <u>The Plan is unconfirmable to the extent it treats Royal's claims differently than other similarly situated claims.</u> Under Section 1129(a)(1), courts have reviewed and considered, among other provisions, a plan's compliance with Section 1122 (classification of claims and interests). *See, e.g., In re Fantastic Homes Enters., Inc.*, 44 B.R. 999, 1001 (M.D. Fla. 1984) (reversing order confirming plan which violated Section 1129(a)(1) because of non-compliance with Section 1122(b)).

Section 1122(a) permits claims to be placed in the same class only if they are "substantially similar." 11 U.S.C. §1122(a). In determining the propriety of a plan's classification, the Bankruptcy Code requires that "classification of the claims or interests must be reasonable." *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) ("[t]he authorities recognize that the classification of claims or interests must be reasonable"). But Grace's classification of Royal's claims cannot qualify as "reasonable" because *Grace fails to classify them at all*.[5]

Royal has both insurance-related claims and contract-related claims against

---

[5] *See* 2008 Disclosure Statement §4.3.1 (failing to classify Royal's claims) (dkt. no. 19581).

Grace. The contractual claims must be treated like other contract claims. *See In re Hoffinger Indus.*, 321 B.R. 498, 505 (Bankr. E.D. Ark. 2005) ("A plan discriminates unfairly only if similar claims are treated differently without a reasonable basis for the disparate treatment.") (internal quotation marks omitted). And Royal must receive treatment at least equal to that of unsecured creditors. *In re Safety-Kleen Corp.*, 380 B.R. 716, 733 (Bankr. D. Del. 2008) ("if it's a contract claim, you'll be treated like any other unsecured creditor). But under the current Plan, it remains a mystery how Grace will treat Royal's claims. Until this omission is corrected, the Plan will remain unconfirmable.

6. <u>The Plan is unconfirmable to the extent that it purports to assign rights that Grace does not have</u>. The Third Circuit has recognized that "the estate's legal and equitable interests in property rise no higher than those of the debtor," *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993), and thus are "subject to the same limitations imposed upon the debtor by applicable non-bankruptcy law," *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir. 1997); *see also In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) ("Under the reasoning of *McAteer*, the owner of an insurance policy cannot obtain greater rights to the proceeds of that policy than he would have under state law by merely filing a bankruptcy petition"). Uniform treatment of the property rights of the debtor and its successors is necessary "to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy." *Butner v. United States*, 440 U.S. 48, 55 (1979).

To the extent that the Plan attempts to assign Royal's Policies it fails because pursuant to the Settlement Agreement, Grace no longer has *any* rights to asbestos-related coverage under the Royal Policies. Grace may not transfer to the trust assets to which it has no right, such as asbestos-related coverage under the Royal Policies. *See In re Kelley*, 58 B.R. 927, 930 (Bankr. D. Del. 1986) ("Misrepresentation of their assets and of the amount of income available after expenses for distribution to creditors makes any attempt to determine whether the proposed plan meets the requirements of § 1325(a)(4) and (b)(1) meaningless."); *IBA, Inc. v.*

*Hoyt (In re Hoyt)*, 326 B.R. 13, 15 (Bankr. W.D.N.Y. 2005) ("the Debtors' various Plans were not proposed in good faith, because among other things, the Debtors' Schedules and Statements, as originally filed and amended, were materially inaccurate relative to their assets and income").

7. <u>The Plan is unconfirmable to the extent that it seeks to fund the trust by breaching the Settlement Agreement</u>.  Section 1129(a)(3) prohibits confirming any plan that was proposed by any means forbidden by law. 7 COLLIER ON BANKRUPTCY §1129.03 (15th ed. rev.).  The section 1129(a)(3) prohibition is expansive, and includes all applicable law, not merely bankruptcy law. *Id.*; *In re Dapontes*, 364 B.R. 866, 867 (Bankr. D. Conn. 2007) ("The 1129(a)(3) prohibition is expansive, *i.e.*, it includes both federal and any other applicable law").  Courts in the Third Circuit have held that confirmation can be denied pursuant to Section 1129(a)(3) when a contract has been violated. *See In re Ingleside Associates*, 136 B.R. 955, 962 (Bankr. E.D. Pa. 1992) ("[P]roposed amendments and modifications to [] partnership agreement[s], as those to any other contract, may be so substantial as to justify denial of confirmation under [Section 1129(a)(3)]").

Royal and Grace entered into a pre-petition Settlement Agreement, pursuant to which, Grace gave Royal full releases as to all asbestos-related claims.  Shortly after the parties executed the Settlement Agreement, the court presiding over the New York Coverage Action entered a Stipulated Order dismissing Grace's and Royal's claims against each other with prejudice.[6]  The court confirmed its intention to accept the Settlement Agreement between Royal and Grace in its 1998 Final Judgment when it stated "IT IS HEREBY FURTHER ORDERED AND ADJUDGED that the claims of Grace and Royal against each other are dismissed pursuant to the Court's order of January 18, 1995."[7]

---

[6] *Maryland Casualty Co. v. W.R. Grace & Co.*, 83 Civ.7451, Stipulated Order of Dismissal (S.D.N.Y. Jan. 18, 1995) (Elias Decl., Ex. E).
[7] *Maryland Casualty Co. v. W.R. Grace & Co.*, 83 Civ. 7451 (JSM), Final Judgment (S.D.N.Y. Mar. 4, 1998) (Elias Decl., Ex. S).

NY1:1765989.1                                                   8

To the extent the Plan contemplates that Royal's Policies will be among the assets transferred to the trust to pay asbestos-related personal injury claims,[8] that transfer would violate the Settlement Agreement. That is contrary to Section 1129(a)(3) not only because Grace proposes to fund the trust by breaching its contract but also because that contract is a settlement agreement, to which courts in this circuit attach special importance. *See Mack Trucks*, 372 F.2d at 22-23; *Ingleside Assocs*, 136 B.R. at 962. Moreover, by seeking more money from Royal, Grace would violated not only a binding settlement agreement, but also the court orders approving that agreement. The Third Circuit has made clear that those are grounds to deny confirmation under Section 1129(a)(3).

        8.    <u>The Plan is unconfirmable to the extent that insurance-related provisions in the Plan violate the insurers' contractual rights</u>. It is well settled that a debtor's rights under a contract are "subject to all valid claims, liens and equities." *Zartman v. First Nat'l Bank of Waterloo*, N.Y., 216 U.S. 1324, 135 (1910); *see also Butner v. United States*, 440 U.S. 48, 54 (1979) ("Property interests [in bankruptcy] are created and defined by state law"). Consequently, the property interests of a bankruptcy estate are "subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law," with nonbankruptcy law defining "the nature, scope and extent of the property rights that come into the hands of the bankruptcy estate." *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 492-93 (3d Cir. 1997). Accordingly, the Debtors "[do] not have greater rights in the property of the estate than [they] had before filing for bankruptcy." *Id.* The Plan violates this clear and well-established rule of law, as it purports to take Debtors' rights under its insurance policies, which are part of the bankruptcy estate under Section 541(a)(1), and change them into more favorable agreements, and re-write those contracts for the benefit of the Plan Trust and the Asbestos

---

[8] Plan at §7.2.2(d)(ii) (dkt. no. 19579); 2008 Disclosure Statement §1.2.8 (dkt. no. 19581).

Claimants favored under the Plan. Accordingly, the Plan violates section 1129(a)(1) and is not confirmable.

The Debtors, pursuant to the Plan, seek to avoid certain terms, conditions and defenses arising under Debtors' insurance policies by seeking approval of certain insurance-related provisions that are contrary to both the facts and applicable law, including, *inter alia*:

(a) Purporting to "transfer and assign" significant interests in the Royal policies to the Plan Trust despite consent to assignment provisions and applicable state law prohibiting such assignment;

(b) Purporting to "transfer and assign" significant interests in the Royal policies to the Plan Trust despite the fact that Grace has no asbestos-related rights as a result of the Settlement Agreement;

(c) Providing that only the Plan Trustee shall have the authority to contest asbestos personal injury claims, despite Royal's rights regarding the defense, investigation and settlement of Asbestos Claims under the insurance policies and Section 502(a) of the Bankruptcy Code;

(d) Providing for payments to Asbestos Claimants which might not be required under the terms and conditions of the insurance policies and applicable insurance law; and

(e) Providing that any insurance-related decision of the Bankruptcy Court made while addressing objections to the Plan can be used against insurers in future adversary proceedings.

These provisions violate bankruptcy and applicable non-bankruptcy law, denude Royal of important rights under its insurance policies with Grace, and convert the Royal insurance policies from bilateral contracts, with rights and duties on each contracting party, into unilateral receivable streams. Nothing in Sections 365, 524(g), 1123, or elsewhere in the Bankruptcy Code allows the Debtors to seek these insurance-related provisions as part of their Plan and to thereby eliminate pertinent terms, conditions and defenses of Royal's insurance policies.

These insurance-related provisions are (i) unnecessary for Plan confirmation and violate requirements that asbestos-related plans be "insurance neutral" and (ii) without legal or factual

support. In addition, most if not all of these insurance related-provisions need to be addressed in separate proceedings, because such findings and conclusions are (a) beyond a bankruptcy court's jurisdiction, *see Beard v. Braunstein*, 914 F.2d 434, 445 (3rd Cir. 1990), and (b) must be addressed in a proper plenary proceeding with its attendant procedural and substantive protections. *See, e.g., In re McKay*, 732 F.2d 44, 47-48 (3d. Cir. 1984).

Moreover, the "insurance neutrality" language in the Plan is decidedly less robust than that included in other recent confirmed plans in asbestos-related bankruptcy cases. For example, in *Federal Mogul*, the bankruptcy court approved language making it clear that the confirmation of the plan and other orders and findings in that case would not "accelerate the obligations, if any, of any Asbestos Insurance Company" and could not "be used as evidence in any forum to prove," *inter alia*, the reasonableness of the Trust Distribution Procedures or that any of the Debtors had "suffered an insured loss with respect to any Asbestos Personal Injury Claims or Demands."[9]

In contrast, the "insurance neutrality" language set forth in Plan §7.15 contains no such express prohibitions.

9.  <u>The Plan is unconfirmable to the extent that the broad exculpation sought in the Plan violates applicable law</u>. Pursuant to the exculpation provision in the Plan, the Debtors seek to exculpate an overbroad group of individuals, including the Future Claimants' Representative, the Asbestos PI Committee, the Trust Advisory Committee, the Plan Trustees, and all of their Representatives. See Plan, §11.8. In addition, the exculpation provision impermissibly reaches back to pre-petition actions, and exculpates an indeterminate number of actors and types of conduct. *See id.* In addition to a wide array of non-debtor third

---

[9] *In re Federal Mogul Global, Inc., et al.*, Case No. 01-10578, Plan of Reorganization, § 10.4 (Bankr. D. Del.) (confirmed November 8, 2007).

NY1:1765989.1                                           11

parties, §11.8 of the Plan seeks to release all current and former representatives of the Debtors from any claim against them for a broad array of acts or omissions.

Such terms and conditions violate applicable bankruptcy law, *see* 11 U.S.C. § 524(e), need to be expressly approved by the creditors and other parties-in-interest whom the Debtors seek to bind, and are overly broad in that the exculpation seeks to protect persons and entities from a broad array of acts or omissions.

Royal also objects to the discharges and releases provided in §8.1 of the Plan and specifically objects to the language that the Reorganized Debtors "shall not be responsible for any obligations of the Debtors or the Debtors in Possession except those expressly assumed by the Reorganized Debtors in the Plan," and the language that "All entities shall be precluded and forever barred from asserting against the Debtors and Reorganized Debtors, or their assets, properties, or interest in property" as being broader than that allowed by 11 U.S.C. §§ 1141 and 524. The Debtor is entitled only to a discharge of "debt" as a "personal liability." 11 U.S.C. §§ 1141(d); 524(a)(1); 524(a)(2); see also 11 U.S.C. §101(5) and (12) ("debt" means liability on claim, and "claim" is right to payment); *Brown v. General Motors Corp.*, 152 B.R. 935, 939 (W.D. Wis. 1993) (only debts are discharged).

10. <u>The Plan is unconfirmable to the extent that it was not proposed in good faith</u>. In determining whether the good faith requirement of Section 1129(a)(3) has been met, the Court must examine the totality of facts and circumstances, *see In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001), including the facts and circumstances leading up to the filing of the case and the debtor's conduct during the case. *See In re Silberkraus*, 253 B.R. 890, 902 (Bankr. C.D. Cal. 2000). In making that inquiry, the Court considers whether "the plan [was] proposed with honesty, good intentions and a basis for expecting that a reorganization can

be effected with results consistent with the objectives and purposes of the Bankruptcy Code." *Coram Healthcare*, 271 B.R. at 234. The Court "has considerable judicial discretion in finding good faith, with the most important feature being an inquiry into the fundamental fairness of the plan." *Coram Healthcare*, 271 B.R. at 234.

In *ACandS*, based on the "totality of circumstances" standard articulated in *Healthcare Corp*, the Court determined that "[e]ven if all of the requirements of Sec 524(g) were met, I would deny confirmation of the plan as not having been proposed in good faith under Sec 1129(a)(3) … [g]iven the unbridled dominance of the [pre-petition] committee in the debtor's affairs and actions during the pre-petition period … and the obvious self-dealing that resulted from control of the debtor…." *ACandS*, slip op. at 10 - 11. Similarly, in this case, a self-selected group of asbestos claimants counsel dominated the bankruptcy proceeding and engaged in self-dealing with Grace. This is evidenced by Grace's recent change of position on the scope of the Settlement Agreement. Consequently, the Plan was not proposed in good faith based on the totality of the circumstances.

Moreover, the Plan does not meet the "good faith" confirmation requirement because it was designed, at least in part, to prejudice Royal and evade the Settlement Agreement. Although that agreement extinguished all of Royal's "indemnity and defense obligations . . . in any way relating to . . . asbestos-related claims," Settlement Agreement §4.0, the Plan attempts to assign to the Trust the right to seek payment from Royal for asbestos-related claims. And although the Settlement Agreement also precludes Grace from voluntarily assisting any person in the establishment of any claim against Royal, the Plan is actually designed to aid asbestos claimants, specifically the Libby Claimants, in establishing direct action claims against Royal.

In exchange for Grace providing this assistance in breach of its contract, Grace receives claimants' support for the Plan.

11.     **The Plan is unconfirmable to the extent that it is not fundamentally fair**.  Classifications under the Plan must be fair and reasonable in order for the Plan to be approved by this Court.  *In re Jersey City Medical Center*, 817 F.2d 1055, 1061 (3d Cir. 1987).  Consequently, the results of the Plan must be fair.  This "is not dependent on express statutory provisions.  It inheres in the jurisdiction of a court of bankruptcy." *American United Mutual Life Ins. Co. v. City of Avon Park*, 311 U.S. 138, 146 (1940).  Accordingly, such a determination of fundamental fairness is "based on the responsibility of the court before entering an order of confirmation to be satisfied that the plan in its practical incidence embodies a fair and equitable bargain openly arrived at and devoid of overreaching, however subtle."  *Id.*

12.     The Plan is unconfirmable to the extent that it is financially infeasible. The Plan discharges Grace from all liabilities and transfers those liabilities to the Plan Trust. See Plan, §7.2.3 ("all liabilities, obligations, and responsibilities . . . with respect to all Asbestos PI Claims shall be channeled to and assumed by the Asbestos PI Trust."), §7.2.1 ("The purpose of the Asbestos PI Trust shall be to . . . assume the liabilities of the Debtors with respect to all Asbestos PI Claims."  The Plan proposes to fund the Plan Trust with unliquidated and contingent insurance recoveries, despite the risks that such insurance proceeds may not be available.  See Disclosure Statement, §2.10.  A plan's feasibility should not be based on "unsubstantiated assumptions."  *In re Pegasus Agency, Inc.*, 101 F.3d 882, 886-87 (2d Cir. 1996).

The Plan is also unfeasible because Grace has failed to show that it can obtain sufficient financing to effectuate the Plan's provisions.  If exit financing is unavailable, or available on unreasonable terms, the Plan will violate Section 1129(a)(11).

13. <u>The Plan is unconfirmable to the extent that Class 9 (General Unsecured) claims are incorrectly designated as not impaired</u>. Under Section 1124(1) of the Bankruptcy Code, a class of claims is impaired under a plan of reorganization unless the plan leaves unaltered the legal, equitable and contractual rights of the holders of each claim. Class 9 is impaired because each claim is not being paid in full, in cash, including with post-petition interest at the applicable default rate to which each such claim is contractually entitled. *See In re PPI Enters.*, 228 B.R. 339, 352 (Bankr. D. Del. 1998) ("to be unimpaired, the claim must receive postpetition interest"). Accordingly, as a result of the impairment, the vote that is being provisionally solicited of Class 9 should be counted for all purposes in connection with the Plan.

14. <u>The Plan is unconfirmable to the extent that it violates the absolute priority rule and the "fair and equitable" requirement of Section 1129(b)</u>. As a class senior to the class of equity, Class 9 claims must be paid in full before equity can receive or retain any property. *See In re Armstrong World Indus.*, 432 F.3d 507, 513 (3d Cir. Del. 2005) ("The absolute priority rule was later codified as part of the "fair and equitable" requirement of 11 U.S.C. § 1129(b). Under the statute, a plan is fair and equitable with respect to an impaired, dissenting class of unsecured claims if (1) it pays the class's claims in full, or if (2) it does not allow holders of any junior claims or interests to receive or retain any property under the plan "on account of" such claims or interests"). The Plan violates this requirement because it provides for Grace's equity holders to retain substantial value without first providing payment in full to more senior creditors, including Class 9 claimants.

**RESERVATION OF RIGHTS**

These objections are preliminary in nature only, submitted only for the purpose of framing the issues, and without prejudice to Royal's objections and argument at any hearing on

confirmation of the Plan or other matters before the Court.  Royal reserves the right to amend, modify or supplement these objections for any reason, including *inter alia*, in response to, or as a result of, the filing of any Plan supplement or any other submission in connection with this bankruptcy case or any discovery being conducted in connection with confirmation proceeding concerning the Plan.  Royal also reserves the right to adopt any other objections to the Plan filed by any party.

## CONCLUSION

Based on the forgoing, Royal requests that the Court deny approval of the Plan.

Dated:  January 5, 2009
         New York, New York

O'MELVENY & MYERS LLP

By:  /s/ Tancred Schiavoni

Tancred V. Schiavoni (*pro hac vice*)
Gary Svirsky (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036
Telephone:     (212) 326-2000
Facsimile:     (212) 326-2061

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
Carl J. Pernicone  (*pro hac vice*)
150 East 42nd Street
New York, NY 10017-5639
Telephone:     (212) 490-3000
Facsimile:     (212) 490-3038

BIFFERATO GENTILOTTI LLC
Ian Connor Bifferato (#3273)
Garvan F. McDaniel (#4167)
800 King Street, First Floor
P.O. Box 2165
Wilmington, DE 19899-2165
(302) 429-1900

...

*Attorneys for Arrowood Indemnity Company*
*f/k/a Royal Indemnity Company*