**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 01-1139 (JKF) |
|  | Jointly Administered |
| W.R. GRACE & CO., *et al.*, |  |
|  | **Hearing Date: January 14, 2009, at 9:00 a.m.** |
| Debtors-in-possession. | **Response Deadline: January 7, 2009** |
|  | **Related Nos. 20204, 20380** |
|  | **January 14, 2008 Agenda Item Number 5** |

**OPPOSITION OF THE OFFICIAL COMMITTEE
OF ASBESTOS PERSONAL INJURY CLAIMANTS TO THE LIBBY
CLAIMANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

The Official Committee of Asbestos Personal Injury Claimants ("**ACC**"), by and through its undersigned counsel, hereby submits this opposition to the "Libby Claimants' Motion to Compel Asbestos PI Committee to Respond to Libby Claimants' Interrogatories" ("**Motion**"), which was filed by the Libby Claimants on December 29, 2008. The grounds supporting this opposition are as follows.

**PRELIMINARY STATEMENT**

The Libby Claimants have lodged objections to the First Amended Joint Plan of Reorganization ("**Plan**") that rest, in large measure, on the following false premise: That their claims are meaningfully different and more valuable than other asbestos PI claims, and therefore the Libby Claimants are entitled to a greater proportionate share of the asbestos trust's assets than the non-Libby claimants. To make their case for a greater share of the assets, the Libby Claimants assert that they have been improperly classified with other asbestos claimants and that the Plan and the TDP do not treat them equally, and therefore "discriminate" against them. Their assertions, however, ring hollow. The Libby Claimants hold unsecured asbestos personal injury claims based on diseases caused by exposure to asbestos that Grace put into the air. These claims are no different from the scores of thousands of similar claims in any way that matters for

{D0144184.1 }

purposes of classification under the Bankruptcy Code. Moreover, the TDP entitles all asbestos personal injury claimants to the same payment percentage and procedural devices for having their claims reviewed, evaluated, and settled, or otherwise liquidated by the Grace 524(g) trust. For these reasons, the TDP does not treat the Libby Claimants disparately in violation of the equal treatment provisions contained in Bankruptcy Code §§ 524(g) and 1123(a)(4).

In support of their unfounded cries of "discrimination," the Libby Claimants have served a second set of interrogatories on the ACC,[1] purporting to seek information about the medical evidence that *may* be available in support of the claims of asbestos claimants from outside Libby, Montana, and how such claims *may* fare under the various TDP disease categories. The Libby Claimants' interrogatories seek detailed medical evidence (and advisory opinions) about the tens of thousands of non-malignant claims held by individual asbestos creditors who are not members of the ACC. For example, Interrogatory 3 asks: "Please identify all claims, of which you have knowledge, that qualify as claims for 'severe disabling pleural disease' (level 4B) under the TDP." Interrogatory 4, consisting of parts "a" and "b," then asks:

   a.   Please identify all claimants, of whom you have knowledge, diagnosed with unilateral or bilateral asbestos-related disease (ARD) per the American Thoracic Society (2004) Official Statement criteria, who have diffuse pleural thickening (DPT) identified on a chest x-ray or CT report. For avoidance of doubt, otherwise stated [sic], the definition of DPT for purposes of this interrogatory does not include any requirement of "at least extent '2'" and "at least width 'a'" per the TDP.

   b.   Please identify all claimants with DPT identified in your response to Interrogatory 4a above who also, to your knowledge, had an ILO score of 1/0 or less.

Second Interrogatories at 3-4. The rest of the interrogatories continue in a similar fashion.

---

[1]  *See* Libby Claimants' Second Interrogatories Propounded Upon the Asbestos PI Committee, dated Dec. 23, 2008 [hereinafter cited as "**Second Interrogatories**"], a copy of which is annexed hereto as **Exhibit 1**.

These interrogatories are not only breathtaking in scope, but unprecedented insofar as they require the ACC to answer them based on information it neither possesses nor controls. Although the interrogatories are nominally addressed to the ACC, they nonetheless demand that the ACC obtain information possessed by the ACC's individual members in their individual capacity, the law firms representing them, and all the clients of those firms holding asbestos personal injury claims.

The Libby Claimants attempt to cast this wide net through their definition of "knowledge." Their interrogatories define the term as "the knowledge of the Asbestos PI Committee *upon inquiry* of all of … its *members* (including *members' counsel*)." Second Interrogatories at 2 (definition "F"). In other words, the Libby Claimants are trying to press the ACC into service as their own estate-funded investigator to obtain discovery about all the Grace claimants that these law firms ever represented. That is not proper. There is simply no legal basis for treating the ACC as a conduit to reach information held by other parties in order to achieve "one-stop shopping" in discovery. Although the ACC represents the constituency of asbestos PI claimants as a whole, it is neither a substitute nor an agent for each of its members, the law firms representing those members, nor the clients of those firms. Moreover, the ACC is only obliged under the discovery rules to furnish information within its possession or control. It has no power or right to delve into the client files of the law firms representing its members to suit the convenience of the Libby Claimants.

For these reasons, the ACC informed the Libby Claimants that it would not gather information from third parties or from documents outside of its possession or control, in order to answer their interrogatories. The Libby Claimants promptly responded with this Motion to compel. In all the asbestos Chapter 11 cases that ever have been filed, *no* bankruptcy court –

including this one – has ever compelled a statutory creditors committee to answer interrogatories based on information that was in the hands of its individual constituents or third parties. The Libby Claimants have supplied no legitimate grounds for the extraordinary and unprecedented relief they seek; their request is improper under the Bankruptcy Code and Rules, the Federal Rules of Civil Procedure, and fundamental notions of proper notice and due process. For all the reasons stated herein, the Court should deny their Motion.

## ARGUMENT

**I.  Because the ACC Does Not Represent, and Cannot Bind, Individual Creditors and Their Attorneys, the Libby Claimants Cannot Obtain Discovery from Them by Merely Serving Interrogatories on the ACC**

The ACC is a statutory creditors committee created pursuant to Bankruptcy Code § 1102, and has the powers specified in § 1103.[2] Although the ACC represents the general interests of all claimants within its constituency, it does not represent any of its individual members, claimants, or claimants' attorneys. See In re Kensington Int'l, Ltd., 368 F.3d 289, 315 (3d Cir. 2004) ("[I]t is established that a Creditors Committee owes a fiduciary duty to the unsecured creditors as a whole, not to the individual members.").[3] As a result, the ACC is not the agent of

---

[2] The ACC consists of eleven individuals holding unsecured claims for asbestos-related personal injury tort or wrongful death against Grace. They were appointed by the United States Trustee to act in a fiduciary capacity for the constituency of asbestos personal injury claimants as a whole. See Notice of Appointment of Official Committee of Asbestos Personal Injury Claimants, dated April 13, 2001 [D.I. 95], a copy of which is annexed hereto as **Exhibit 2**. The members of the ACC typically authorize their attorneys to act on their behalf for purposes of committee business.

[3] See also A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1015 (4th Cir. 1986) ("[U]nder the Rules … the Committee is not authorized to represent the individual interests of any claimant, as distinguished from the general interests of all claimants."); In re Garden Ridge Corp., No. 04-10324, 2005 WL 523129, at *4 (Bankr. D. Del. Mar. 2, 2005) ("The Official Committee is simply not intended to represent individual creditor interests."); In re Boston Reg'l Med. Ctr., Inc., 328 F. Supp. 2d 130, 143 (D. Mass. 2004) ("Although the Committee serves to represent the creditors in the context of the bankruptcy proceedings, any claims that the creditors have against the defendants are the property of the creditors individually and

its constituents, and cannot bind them in litigation.  *See* Kensington Int'l, Ltd., 368 F.3d at 315; In re Quality Beverage Co., 181 B.R. 887, 894 (Bankr. S.D. Tex. 1995); 7 COLLIER ON BANKRUPTCY ¶ 1103.05 [1][d][i], at 1103-26 (15th ed. rev. 2005).  Given that the Third Circuit squarely held in Kensington that notice to a creditors committee cannot serve as notice to all of the individual creditors whose interests are represented by that committee, it follows, as night follows day, that discovery directed at a creditors committee cannot require the individual creditors within that constituency to respond.

Based on these axiomatic principles, the Libby Claimants cannot obtain discovery from individual ACC members, their lawyers, and the clients of those lawyers, simply by serving interrogatories on the ACC.  Tellingly, the Libby Claimants fail to cite any legal authority supporting the far-reaching discovery they seek.

## II. The ACC Has No Duty to Gather Information Not Within Its Possession or Control

A party has a duty to answer interrogatories based on what it knows and the information within its possession or control.  *See* Cinema Amusements v. Loew's, Inc., 7 F.R.D. 318, 321 (D. Del. 1947) (citing cases).  A party is *not* required to search out new information.  *See* Huthnance v. District of Columbia, Civil Action No. 06-1891, 2008 WL 5220565, at *9 (D.D.C. Dec. 15, 2008).  Nor must a party conduct "extensive investigations or … complex research."  Miller v.

---

must be asserted by them rather than the Committee."); In re Walnut Leasing Co., Nos. 97-19699, CIV. A. 99-526, 2000 WL 283843, at *2 (E.D. Pa. Mar. 15, 2000) ("The Committee owes a fiduciary duty only to the class of creditors that it represents and not to … individual creditors."); In re Drexel Burnham Lambert Group, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992) ("The duty [of the committee and its counsel] extends to the class as a whole, not to its individual members."); In re Levy, 54 B.R. 805, 807 (Bankr. S.D.N.Y. 1985) ("Counsel for the creditors' committee do not represent any individual creditor's interest in this case; they [are] retained to represent the entire unsecured creditor class."); In re Snyder, 51 B.R. 432, 439 (Bankr. D. Utah 1985) (acknowledging that a committee's attorneys represent only committee members and that individual creditors are represented by their respective attorneys).

Pruneda, 236 F.R.D. 277, 282 (N.D. W. Va. 2004).  Yet, as presently framed, the Libby Claimants' interrogatories would force the ACC to go beyond the information it has, to seek out additional information from its individual members and the law firms representing them.  In doing so, these interrogatories go far beyond what is allowed under the rules.

As a distinct entity, the ACC has no right or authority to access documents or other information in the client files of law firms representing members of the ACC.  Since the ACC is not the agent of its individual members, it certainly cannot be the agent of the law firms representing them.  These firms do not represent the ACC.  Nor are they alter egos of the ACC.  As a result, the knowledge of these firms can be neither attributed nor imputed to the ACC.  Moreover, the ACC cannot overcome the privacy rights of individual claimants with respect to their medical information.  Nor can it waive the attorney-client privilege to access information contained in their client files.  In sum, the Libby Claimants have no basis for compelling the ACC to answer their interrogatories as currently framed.

Indeed, there is no precedent for the extraordinary relief they seek in their Motion.  In a more "traditional," non-asbestos reorganization, a creditors committee would not be deemed to know everything its members know.  Nor would it have access to all the documents any particular committee member possessed. Suppose, for example, a bank served as a member of a commercial creditors committee.  If a party wanted to discover what that particular bank knew, the party, *inter alia*, would have to take a Rule 30(b)(6) deposition of the bank.  That party could not obtain witness testimony, documents, or other information from the bank by serving discovery requests on the committee.  Nor could that party, through interrogatories directed to the committee, compel the law firm representing the bank to disclose information contained in the client files of the bank *and the files of the law firm's other clients*.  To obtain discovery in

that fashion would be absurd and impermissible under the rules. But that is precisely the outcome the Libby Claimants seek.

### III. The Libby Claimants' Interrogatories Are Burdensome and Oppressive, Call for Expert Opinion About Literally Tens of Thousands of Claims, and the ACC Should Not Be Compelled to Answer Them as Currently Framed

The scope of the Libby Claimants' interrogatories is breathtaking, especially in view of the fact that the Libby Claimants are asking this Court to compel the ACC to gather information from third parties concerning countless individual claimants. As just one example, Interrogatory 3 asks, "Please identify all claims, of which you have *knowledge*, that qualify as claims for 'severe disabling pleural disease' (level 4B) under the TDP." Second Interrogatories at 3 (emphasis added). Under their overbroad definition of "knowledge," the Libby Claimants are asking the ACC to identify not only the particular claims it might know in its capacity as a creditors' committee, if any, but all such claims known to the ACC's individual members and the law firms representing them. There could be thousands of such claims, if not tens of thousands, within the collective "knowledge" of the law firms in question. Their interrogatories then proceed to ask the ACC to supply additional details about these types of claims and other specific medical information. In effect, the Libby Claimants are requiring the ACC to undertake an exercise similar to the Debtors' PI questionnaire in the estimation case. But unlike the PI questionnaires, the Libby Claimants are not proposing to go directly to the individual claimants and the law firms representing them. Rather, the Libby Claimants want to obtain highly-detailed information by serving discovery on only one party, the ACC. That is not permissible. And, aside from the attorney-client privilege, work product, and privacy issues raised, such an exercise would impose an enormous burden on the law firms, who are not even parties to this case.

Moreover, the interrogatories as framed ask the ACC to provide expert opinion about what the Grace 524(g) trust will determine when it gets around to evaluating literally tens of thousands of non-malignant claims. To use the same example cited above, Interrogatory 3 asks: "Please identify all claims, of which you have knowledge, that *qualify* as claims for 'severe disabling pleural disease' (level 4B) under the TDP." Second Interrogatories at 3 (emphasis added). To decide whether a claim "qualifies" for "Severe Disabling Pleural Disease (level) 4B" under the TDP, the ACC would have to individually review medical records for each of the tens of thousands of asbestos personal injury claimants who hold non-malignant claims (which are not in its possession or control), ask an expert to review the x-rays, ILO reports, and pulmonary function tests for such claims, and then give an opinion about whether the claim "qualifies" for a given disease category. The scope of work the Libby Claimants assume the ACC can undertake to comply with the interrogatories as framed is astounding – it will literally take more than a year for the 524(g) trust that will be formed at the completion of these bankruptcy proceedings, with dozens of qualified claims reviewers on hand, to review and evaluate the backlog of claims.[4]

Furthermore, the Libby Claimants are not only demanding that the ACC undertake a constituency-wide investigation on their behalf, they are also requiring the ACC to distill the raw data that would be produced and to furnish it in a format of their liking. Each time the interrogatories ask the ACC to "identify" any claim or claimant, they expect the ACC to supply a database consisting of nine categories or "lists." But this goes far beyond the pale of what the rules require. It is basic discovery law that the proponents of discovery are not entitled to force

---

[4] Moreover, as the Libby Claimants should well know, whatever medical information exists about an asbestos claim today may change in material respects between now and the time when the claim is evaluated for settlement by a defendant or a bankruptcy trust several years from now.

{D0144184.1 } 8

respondents to prepare their case, but only to provide the information necessary for the proponents to do so themselves. *See, e.g.*, Olmert v. Nelson, 60 F.R.D. 369, 370 (D.D.C. 1973); Kainz v. Anheuser-Busch, Inc., 15 F.R.D. 242, 251 (N.D. Ill. 1954); Aktiebolaget Vargos v. Clark, 8 F.R.D. 635, 636 (D.D.C. 1949) ("A litigant may not compel his adversary to go to work for him."). The Libby Claimants cannot dictate the format in which they want the ACC's answers to appear. *See* Luey v. Sterling Drug, Inc., 240 F. Supp. 632, 637 (W.D. Mich. 1965); Porter v. Montaldo's, 71 F. Supp. 372, 375 (S.D. Ohio 1946); H.K. Porter Co. v. Bremer, 12 F.R.D. 187, 187-88 (N.D. Ohio 1951). Through their radical notions of "knowledge" and "identify," the Libby Claimants are trying to shift the burden of their own investigation and data-processing onto the ACC and the law firms representing non-Libby claimants. For the reasons outlined above, this is not proper. The Court should deny the Motion.

**IV.    The Libby Claimants Have Not Shown How Their Interrogatories Are Relevant to Plan Confirmation**

Through their interrogatories, the Libby Claimants are, in effect, asking for disease and medical information about every single Grace claimant these law firms ever represented, under the guise that the information will enable the Libby Claimants to show that their claims are being "discriminated against" under the TDP. But they have made no effort to show why they need the information to support their "discrimination" contentions. They have not demonstrated how detailed medical information from *non-Libby* claimants can establish how the medical criteria *in the TDP* "discriminates" against the Libby Claimants.

Moreover, the Libby Claimants are wrong when they assert that, without this requested information, the ACC will be able to "selectively utilize data provided by its members," to the Libby Claimants' detriment. Motion at 5. The TDP's medical and exposure criteria are the product of expert opinion about asbestos-related diseases and their causes, and years of

experience resolving cases against Grace and other defendants in the tort system and through bankruptcy trusts, not the facts of individual tort cases against Grace. Hence, their fear of the ACC "selectively utiliz[ing] data" surreptitiously provided by the ACC's members is simply not grounded in reality. This Court should not compel the ACC – and, by extension, the individual claimants and law firms representing them – to answer these interrogatories in order to respond to concerns that utterly lack foundation.

## **CONCLUSION**

For all the reasons stated above, the ACC respectfully requests that the Court deny the Motion and grant to the ACC such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

| | |
|---|---|
| **CAPLIN & DRYSDALE, CHARTERED** | **CAMPBELL & LEVINE, LLC** |
| Elihu Inselbuch | |
| 375 Park Avenue, 35th Floor | |
| New York, NY  10152-3500 | |
| Telephone: (212) 319-7125 | /s/ Mark T. Hurford |
| Telefax: (212) 644-6755 | Marla R. Eskin (No. 2989) |
| | Mark T. Hurford (No. 3299) |
| Peter Van N. Lockwood | 800 N. King Street, Suite 300 |
| Nathan D. Finch | Wilmington, DE 19801 |
| Jeffrey A. Liesemer | Telephone: (302) 426-1900 |
| One Thomas Circle, N.W. | Telefax: (302) 426-9947 |
| Washington, D.C. 20005 | meskin@camlev.com |
| Telephone: (202) 862-5000 | mhurford@camlev.com |
| Telefax: (202) 429-3301 | |

*Counsel for the Official Committee of Asbestos Personal Injury Claimants*

Dated:  January 7, 2009