IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| W.R. GRACE & CO., *et al.*, ) | Case No. 01-01139 (JKF) |
| ) | Jointly Administered |
| ) | |
| Debtors. ) | Related to Docket No. 20380 |
| ) | Hrg. Date: January 14, 2009 |
| ) | 9:00 a.m. |
| ) | |

OPPOSITION OF VARIOUS LAW FIRMS REPRESENTING ASBESTOS PERSONAL
INJURY CLAIMANTS TO LIBBY CLAIMANTS' MOTION TO COMPEL ASBESTOS PI
COMMITTEE TO RESPOND TO LIBBY CLAIMANTS' INTERROGATORIES

The "Libby Claimants' Second Interrogatories Propounded Upon Asbestos PI Committee" (the "Interrogatories") were served on or about December 23, 2008. The "Libby Claimants' Motion to Compel Asbestos PI Committee to Respond to Libby Claimants' Interrogatories" (the "Motion to Compel") was filed on or about December 29, 2008.[1] The Interrogatories are made up of 14 individually numbered queries with approximately 30 discreet subparts and take up just 9 pages. The Motion to Compel is barely 5 pages long. Nevertheless, together they represent perhaps the most egregiously improper and abusively burdensome discovery seen in this reorganization case since the Debtors' concededly unproductive PI Questionnaire.

---

[1] The Motion to Compel was appended to a Notice of Motion, D.I. 20380.

## Summary

The Libby Claimants' have already filed a 100-page objection to the Plan and Disclosure Statement. The Interrogatories are not, as the Libby Claimants insist, "necessary for [them] to properly develop their objections to the [Plan]." Motion to Compel at 2-3. The sheer heft of the Libby Claimants' plan objection attests to its high state of development. The Interrogatories, rather, are plainly intended to harass not just the Asbestos PI Committee (the "Committee"), but also its members, its members' respective counsel, and the Committee's broader constituency.

Even indulging the notion that the information sought by way of the Interrogatories is appropriately sought – it is not – the Libby Claimants are proceeding in a manner that is highly improper. They propose to use the Committee as a conduit for obtaining detailed information about thousands of Asbestos PI Claims by improperly imputing to the Committee, through a contrived definition of what lies within the Committee's knowledge, vast information about such claims that it does not have.

Additionally, the Libby Claimants disregard proprietary work product of Asbestos PI Claimants' counsel by asking the Committee about claims databases maintained not only by Grace or the Committee, but by individual law firms. Then they propose to heap the substantial burden of conducting their far-reaching, eleventh-hour discovery on the Committee and counsel for individual members of the Committee.

Most troublesome of all is that, at the end of the day, it's all for naught. The Libby Claimants seek nothing that is relevant. Their objection to the Plan turns almost entirely on expert testimony and not on the exhaustive analysis of thousands of non-Libby Asbestos PI Claims upon which the Libby Claimants would now embark just as confirmation looms.

The Various Law Firms Representing Asbestos Personal Injury Claimants (collectively, "Law Firms")[2] thus have a very tangible stake with respect to the Interrogatories and the Motion to Compel. Two of the Law Firms, Baron & Budd, P.C., and Weitz & Luxenberg P.C., represent members of the Committee. They are particularly aggrieved by both the Interrogatories and the Motion to Compel, as the Libby Claimants would casually and falsely impute their knowledge of their other clients' Asbestos PI Claims – who number collectively in the thousands – to the Committee. The Law Firms who do not represent members of the Committee are also aggrieved, however. If the Libby Claimants obtain information they regard as useful from Committee members' counsel, they may well seek to widen the net and obtain similar information from all Asbestos PI Claimants' counsel. It is not hyperbole to suggest that the Libby Claimants are revisiting the worst excesses of the failed PIQ exercise mere months before the hearing on plan confirmation. The

---

[2] The Law Firms are Baron & Budd, P.C; Foster & Sear, L.L.P.; Hissey, Kientz & Herron, P.L.L.C.; The Law Offices of Peter G. Angelos, A Professional Corporation; David Lipman, P.A.; Provost & Umphrey, L.L.P.; Weitz & Luxenberg P.C.; Wilentz, Goldman & Spitzer, P.A.; and Williams Kherkher Law Firm L.L.P.

Law Firms oppose the Motion to Compel in the strongest terms and would respectfully show the Court as follows:

1. **Joinder in other responses.**

The Law Firms respectfully join, to the extent appropriate, in the Committee's opposition to the Motion to Compel, and the opposition of Kazan McClain, filed substantially contemporaneously herewith.

2. **The Libby Claimants' Stated Reason for Propounding the Interrogatories Has Been Invalidated by the Libby Claimants Themselves.**

As noted, the Libby Claimants' insistence that "[t]he requested information is necessary for [them] to properly develop their objections to the [Plan]"[3] is belied by the objection itself. Filed on October 17, 2008, the Libby Claimants' objection to the Plan and Disclosure Statement, at 100 pages with 277 footnotes, is fully developed.[4] [D.I. 19803, 19803-1]. Largely consistent with positions they have been espousing for years, the Libby Claimant's objections to the Plan are hardly novel. They have been proclaiming the inherent differences of Libby Asbestos Claims for

---

[3] Motion to Compel at 2-3.

[4] Moreover, the Libby Claimants supplemented this tome with their "preliminary objections" to the Debtors' first amended plan that incorporated their lengthy objection to the initial plan by reference. [D.I. 20313]. Suffice it to say that the Libby Claimants have not been hampered in articulating their objections to the Debtors' Plan.

at least four years.[5]  On or about December 31, 2008, moreover, the Libby Claimants served 3 expert reports that, with attachments, collectively comprise 188 pages.[6]  Any suggestion that any lack of factual information leaves the Libby Claimants groping around in the dark to formulate their objections to the Plan is unfounded; their objection is formed, filed, and supported by multiple expert reports.

3.  **The Libby Claimants Improperly Propose to Use the Asbestos PI Committee as a Conduit for Obtaining Highly Particularized Information Regarding Thousands of Individual Asbestos Claims.**

Although the Libby Claimants nominally propounded the Interrogatories to just the Committee, that is merely a ruse.  The Libby Claimants would improperly impute to the Committee knowledge of detailed information about thousands of individual asbestos PI claims.  They would sustain this fiction through artful semantics, defining "Knowledge" as "the knowledge of the Asbestos PI Committee

---

[5] *See* the explanation of the difference between tremolite and chrysotile asbestos in the Libby Claimants' Objection to Disclosure Statement, Estimation Motion, Case Management Motion and Related Pleadings (Docket No. 7335) in December 2004. *See further* the detailed discussion of the special nature of "Libby tremolite asbestos disease" in the June 2005 Opposition of Libby Claimants to Motion to Approve PI CMO and Questionnaire (Docket No. 8846).  Lest these earlier references to tremolite cause confusion, the Libby Claimants acknowledged in their Plan objection that Libby Asbestos, which they formerly believed to be comprised of tremolite, is actually a combination of winchite, richterite, and tremolite.  [D.I. 19803 at 12, n.29].

[6] Expert Reports of Dr. Arthur Frank (65 pages), Dr. Terry Spear (40 pages), and Dr. Alan C. Whitehouse (83 pages).

*upon inquiry* of all its professionals and its members *(including members' counsel).*"7  Thus, the Libby Claimants propose employing the Committee as a conduit for taking discovery from not only the Committee or even the individual asbestos victims who comprise the Committee's membership, but also from the thousands of other asbestos victims represented by Committee members' respective counsel.  This is outrageous.

The Committee "cannot reasonably be expected to be privy to all business information of all creditors." *Creditors' Comm. v. Baybank Valley Trust. Co. (In re Trantex Corp.)*, 10 B.R. 235, 238 (Bankr. D. Mass. 1981).  A committee "represents a class of creditors, not the individual creditors on a case-by-case basis." *Id.*  Further, while a committee has a duty to represent the collective interests of its constituency, it does not have the authority to bind each individual committee member.  *In re Kensington Int'l Ltd.*, 368 F.3d 289, 315 (3d Cir. 2004).  Absent authority to bind its members, a committee assuredly lacks authority to respond to interrogatories on a committee member's behalf.  Indeed, Federal Rule of Civil Procedure 33 commands that interrogatories are "to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by and officer or agent …." FED. R. CIV. P. 33(a).  There is nothing in Rule 33 or elsewhere that validates what the Libby Claimants are trying to get away with here.

---

7 Interrogatories, Definitions, ¶ F.

The Libby Claimants' contrived definition of "Knowledge", literally applied, also leads to an absurd end. One of the Committee's members is a Libby Claimant. The proffered definition of "Knowledge" encompasses the knowledge of the Libby Claimant serving on the Committee, as well as the knowledge of such Libby Claimant's counsel (whose knowledge undoubtedly extends to dozens or hundreds of other Libby Claims). The Libby Claimants would thus require the ACC to make "inquiry" upon its Libby Claimant member and such member's counsel for information about all Asbestos PI Claims within their knowledge – claims that would include numerous Libby Claims – so that the Committee can provide such information back to the Libby Claimants. The circularity is confounding.

Interrogatory No. 1 gets the ball rolling by asking "[h]ow many claims do you have knowledge of?" With the broad definition of "knowledge," the Libby Claimants would improperly impute to the Committee – "you" in the language of the specific interrogatory – detailed knowledge of thousands of asbestos claims – knowledge that the Committee, as merely a representative body, does not have.

4. **The Libby Claimants Would Improperly Intrude Upon the Work Product of Individual Law Firms.**

Interrogatory No. 2 then asks for identification of "all computerized databases or other compilations of data concerning claims, of which you have knowledge," thereby imputing to the Committee knowledge of all databases of asbestos PI claims. This includes not just Grace's databases, but even proprietary

databases maintained by individual Law Firms. Depending on what the Libby Claimants mean by "identify" with respect to a computerized database, they may well be intruding on the work product of law firms representing Asbestos PI Claimants, including that of some or all of the Law Firms.

Nor is that all. No less than seven discreet interrogatory subparts expressly request identification of "any computerized databases or other compilations of data concerning claimants' medical criteria specified in [other interrogatory subparts]." *See* Interrogatories 5.d., 6.c., 7.d., 8.d., 9.c., 10.e., and 11.c. By these queries, the Libby Claimants are plainly seeking information regarding the fields included within various databases.[8] In so doing, the Libby Claimants are impermissibly intruding upon quintessential work product. The decision-making process that leads up to the determination of what information to collect in preparation for litigation and how to organize and store that information is a paradigmatic example of the very "mental process of the attorney" that is "sheltered" by the work-product doctrine. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d. Cir. 2003). Each field of a litigation database maintained by a law firm represents conscious choices by attorneys regarding the relevance and importance of various pieces of

---

[8] The Libby Claimants are also seeking medical information that is subject to confidentiality restrictions previously imposed by the Court. The Law Firms incorporate by reference into this opposition their separate response to the Libby Claimants' Motion to Compel Debtors to Respond to Libby Claimants' Document Request filed contemporaneously herewith.

information to ongoing and prospective litigation.  The selection and ordering of the fields are the product of highly confidential attorney thought processes, and inextricably linked to the trial strategy employed by counsel in preparation for litigation.  As Wright & Miller note, "the litigation support system is ordinarily protected as work product under Rule 26(b)(3)" and computerized litigation-support systems, given the substantial involvement of counsel in the design of the systems and the selection of the data therein, might "qualify for the heightened protection accorded attorneys' mental impressions and legal theories." Wright & Miller, 8A *Federal Practice & Procedure*, § 2218.

In a relatively recent case, a court held that a company's litigation database, which included information regarding all litigation that was being prosecuted, defended, or supervised by a company's attorneys, was protected work-product, because the database was created primarily to assist counsel in understanding, managing, and providing legal advice about pending and threatened litigation. *Lawrence E. Jaffee Pension Plan v. Household Int'l., Inc.*, 237 F.R.D. 176, 184 (N.D. Ill. 2006).

In another case, a party's in-house legal department maintained a database to manage its claims, and sought a protective order to forestall discovery targeted at the existence and contents of the database.  The court considering the request held that the:

> computer data base undoubtedly contains a substantial amount of work product which would be impossible to separate from non-work product. In fact, the entire system arguably constitutes work product as it was created in anticipation of litigation… Accordingly, the computer data base is not subject to discovery, although information which can be obtained from an alternate source does not become immune from discovery simply because it is also found on the data base.

*Shipes v. BIC Corp.,* 154 F.R.D. 301, 309 (M.D. Ga. 1994). Allowing attorney databases to be discovered runs the risk of revealing the mental impressions, conclusions, opinions, legal theories, or trial strategies of the attorneys who constructed the database.

5. **The Libby Claimants Propose to Shift the Burden and Expense of Their Own Discovery Upon the Committee.**

Except for Interrogatory Nos. 13 and 14, which seek identification and information regarding confirmation witnesses, the Interrogatories and their myriad subparts seek very specific information regarding individual Asbestos PI Claimants. The Libby Claimants would thus foist upon the Committee, its members, and its members' respective counsel the enormously burdensome task of combing through a large universe of claims data, knowledge of which is improperly imputed to the Committee, to respond to such particularized queries as

- which claimants with diffuse pleural thickening "meet the blunting requirement" (Interrogatory 5.b.);

- which claimants with diffuse pleural thickening "meet the 'width "a"' requirement ..." (Interrogatory 7.b.);

- which claimants with diffusing capacity of less than 65% do not have either FVC or TLC less than 65% (Interrogatory 10.d.); and

- which claimants have a "DLCO under 65, an FEV1/FVC ration over 65, and an RV over 120" (Interrogatory 12.b.).

These representative subparts from the Interrogatories are all painfully reminiscent of the worst excesses of the discredited P.I.Q. exercise.

Given the highly particularized information sought by many of these queries, the Libby Claimants would require the Committee, as the party to whom to Interrogatories are directed, to somehow persuade or compel counsel for individual members of the Committee to embark on a laborious, time-intensive review of medical records available for hundreds or thousands of other Asbestos PI Claimants such counsel represents.

It is long settled that "[a] litigant may not compel his adversary to go to work for him."[9] *Phillips v. City of New York*, 230 F.R.D. 369, 370 (S.D.N.Y. 2005), *quoting Aktiebolaget Vargos v. Clark*, 8 F.R.D. 635, 636 (D.D.C. 1949). The latter decision includes the following cogent and topical pronouncement:

> An adverse party should not be required to perform burdensome labors or to execute difficult and expensive tasks, in searching for facts and classifying and compiling data.

---

[9] *See also Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions … on wits borrowed," or, one might infer, exertions exacted from, "the adversary.").

*Aktiebolaget Vargos v. Clark*, 8 F.R.D. at 636; *see also United Cigar-Whelan Stores Corp. v. Phillip Morris, Inc.*, 21 F.R.D. 107, 109 (S.D.N.Y. 1957) ("[D]iscovery proceedings should [not] be utilized to cast upon a defendant the burden of establishing the plaintiff"s case when the plaintiff can at least as readily establish the requested facts.").

6. **The Libby Claimants Seek Discovery That Is Irrelevant.**

Compounding these other improprieties, the Interrogatories seek information that neither relevant nor calculated to lead to the discovery of admissible evidence. The Libby Claimants' objection to the Plan boils down to the notion that Libby Claims are sufficiently different from other Asbestos PI Claims to warrant different treatment under the Plan. The Interrogatories, however, are not in furtherance of the Libby Claimants' objection.

For example, the Libby Claimants assert that verdicts and settlements obtained by victims of Libby asbestos exposure from Grace pre-petition were higher than those obtained by other victims of exposure to Grace asbestos. [D. I. 19803 at 2]. None of the information called for by the Interrogatories could bolster this proposition, which obviously will stand or fall based on empirical data readily obtainable from Grace. Indeed, the Libby Claimants have already been granted access to Grace's pre-petition litigation and settlement database under a protective order entered on December 7, 2008. *See* Protective Order Regarding Confidential Information [D.I. 20286].

Page 12

The Libby Claimants also assert that "amphobile asbestos, including Libby asbestos, is far more toxic than chrysotile asbestos," the latter being the type overwhelmingly used in asbestos-containing construction materials according to the Libby Claimants. *Id.* at 12-13.  In their objection to the Plan, for example, the Libby Claimants assert that "[a] person diagnosed with non-malignant Libby Asbestos Disease has approximately a 76 percent likelihood of progressing to severe disease – about three times the progressivity rate for chrysotile asbestos disease." *Id.* at 14, citing the expert report of Dr. Alan C. Whitehouse.  The Libby Claimants' own citation of Dr. Whitehouse's report underscores a critical point; resolution of the question of whether Libby Claims are sufficiently different from other Asbestos PI Claims as to call for different treatment will ultimately turn on expert evidence and legal arguments to be presented to the Court at the forthcoming confirmation hearing.  The Libby Claimants simply do not need to delve into the minutia of other Asbestos PI Claims to prove how inherently "special" or "different" their claims are; advancing and refuting that proposition is properly left to the experts.

In a similar vein, the Libby Claimants assert that certain medical criteria embodied in the proposed TPD are exclusionary as to Libby Claimants and that the Plan would deprive Libby Claims of the benefit of certain insurance coverage for which they do not compete with other Asbestos PI Claims. *Id.* at 32, 35.  These, too, are positions that will be validated (or not) at confirmation through expert testimony and legal argument.  There is no way to justify the trawler fishing

exercise upon which the Libby Claimants would now embark.  Proper adjudication of the Libby Claimants' Plan objection simply does not require that they obtain through discovery highly particularized information about other Asbestos PI Claims.[10]

7. **The Libby Claimants Have Waited to Seek This Oppressive Discovery Until Mere Months Before the Confirmation Hearing.**

The Libby Claimants waited until virtually the eve of confirmation before propounding the Interrogatories.  They even waited until more than two months after filing their voluminous objection to the Plan.  [D.I. 19803, 19803-1].  Their tardiness in seeking discovery suggests two things.  First, as has been suggested, the Libby Claimants do not really need what they are asking for to litigate their Plan objection.  The Libby Claimants' objection to the Plan contains four dozen footnotes citing Dr. Whitehouse's expert report, so one may conclude that the critical importance of expert testimony to the Court's ultimate disposition of their objection is not lost on the Libby Claimants.

The timing of the Interrogatories also suggests that the Libby Claimants intend them more as a litigation tactic than an avenue to needed information.  It is

---

[10] Moreover, detailed information with respect to individual Asbestos PI Claims may not be fully developed until a particular claim is ready for submission to a Section 524(g) trust established pursuant to a confirmed plan of reorganization. Grace's reorganization case (and application of the automatic stay) has been in place for more than seven years now, leaving the plaintiffs' bar generally, and the Law Firms in particular, in something of a holding pattern pending confirmation of a plan.

extremely late in the day to be subjecting the minutia of individual Asbestos PI Claims to the degree of scrutiny called for by the Interrogatories. In a mass tort case, but especially one that has been pending for more than 7 years, that task is properly relegated to a trust set up for the express purpose of evaluating and, if appropriate, paying such claims. The Libby Claimants' untimely discovery suggests something in the nature of a clumsy attempt at a shakedown that, ironically, threatens to delay the just resolution of all asbestos-related claims, including those of the Libby Claimants themselves.

Additionally, the volume of the discovery sought by the Libby Claimants is staggering. In addition to Grace's pre-petition litigation and settlement database that has already been made available to the Libby Claimants, they seek to have 30-odd interrogatory subparts answered by the Committee with respect to thousands of discreet claims and millions of imaged pages of PIQ's produced by Grace. It is inconceivable that the Libby Claimants can get their arms around so vast an information universe within anything approaching the timetable set out in the Court's case management order. Fully-formed confirmation objections do not require such comprehensive discovery. With the Interrogatories, the Libby Claimants seek only to harass – an illegitimate purpose that must not be indulged.

WHEREFORE, the Law Firms pray that this Court deny the Libby Claimants' Motion to Compel Asbestos PI Committee to Respond to Libby

Claimants' Interrogatories in its entirely, save and except for Interrogatories 13 and 14, which pertain to the identification by the Asbestos PI Committee of confirmation witnesses, subject to such limited objections as may be asserted by the Asbestos PI Committee.

Dated: January 7, 2009

Sander L. Esserman
David A. Klingler
David J. Parsons
**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,**
**A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999

**COUNSEL FOR VARIOUS LAW FIRMS REPRESENTING PERSONAL INJURY CLAIMANTS**

/s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
E-mail: dkhogan@dkhogan.com

**LOCAL COUNSEL FOR VARIOUS LAW FIRMS REPRESENTING PERSONAL INJURY CLAIMANTS**