IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| W.R. GRACE & CO., *et al.*, ) | Case No. 01-01139 (JKF) |
| ) | Jointly Administered |
| ) | |
| Debtors. ) | Related to Docket No. 20378 |
| ) | Hrg. Date: January 14, 2009 |
| ) | Objection Deadline: January 7, 2009 |
| ) | |

**OPPOSITION OF VARIOUS LAW FIRMS REPRESENTING ASBESTOS PERSONAL INJURY CLAIMANTS TO THE LIBBY CLAIMANTS' MOTION TO COMPEL DEBTORS TO RESPOND TO LIBBY CLAIMANTS' DOCUMENT REQUEST**

Various Law Firms Representing Asbestos Personal Injury Claimants (collectively, the "Law Firms"),[1] file their Opposition to the Libby Claimants' Motion to Compel Debtors to Respond to Libby Claimants' Document Request (the "Motion to Compel"). Respondents would respectfully show the Court as follows:

I. **FACTUAL AND PROCEDURAL BACKGROUND.**

At the omnibus hearing held on December 15, 2008, without the service of any document request or the benefit of any motion practice, the Libby Claimants sought an order from this Court requiring the Debtors to produce its own historical claims database, images of all completed asbestos personal injury questionnaires

---

[1] Each of the following law firms is a Respondent and, together, the following firms comprise the Respondents: Baron & Budd, P.C; Foster & Sear, L.L.P.; Hissey, Kientz & Herron, P.L.L.C.; The Law Offices of Peter G. Angelos, A Professional Corporation; David Lipman, P.A.; Provost & Umphrey, L.L.P.; Weitz & Luxenberg P.C.; Wilentz, Goldman & Spitzer, P.A.; and Williams Kherkher Law Firm L.L.P.

Page 1

("PIQs") and Proofs of Claim ("POCs") and the navigable database produced by Rust Consulting from the PIQ data. This action was vigorously opposed by the Law Firms and others, and the Court ordered the parties to seek to resolve matters consensually and report back two days hence, on December 17, 2008. The Law Firms did not oppose the Debtors providing their historical claims data to the Libby Claimants, and agreed to the entry of protective order providing the Libby Claimants access to such data. Protective Order Regarding Confidential Information [D.I. 20286] ("Protective Order"). However, the Law Firms refused to consent to the production of the other categories of discovery, and, on December 19, 2008, the Libby Claimants served, upon the Debtors, the Libby Claimants' First Request for Production of Documents by Debtors in Conjunction with Plan Confirmation Interrogatories Served on the Asbestos PI Committee (the "Document Request"). The Document Request seeks the following classes of documents:

1. All Personal Injury Questionnaires ("PIQ) submitted by asbestos personal injury claimants in this case

2. All images of the asbestos POC filed in this case

3. The Rust Database containing "the objective data contained on the PIQs and the POCs."

Document Request at 3-4 (collectively, the "Confidential Claimant Data"). The Debtors properly objected, on December 26, 2008, to the Document Request in its entirety. The Debtors objected on confidentiality grounds, noting that the Confidential Claimant Data is protected by various orders of this court, and also on relevance grounds, noting that the Libby Claimants had not established any

predicate for the production sought, which implicates over 4 million pages of hard copy data and an extensive database.

On December 29, 2008, the Libby Claimants filed their Motion to Compel, seeking an order from this Court requiring the Debtors to hand over the Confidential Claimant Data.

## II    JOINDER

The Law Firms respectfully join, to the extent appropriate, in the opposition of the MMWR Firms, filed substantially contemporaneously herewith.

## III    ARGUMENT

1. **The Confidential Claimant Data was provided for a unitary purpose now moot – the estimation of asbestos personal injury claims. The Law Firms would not have submitted to the production of the Confidential Claimant Data had it not been so circumscribed.**

This Court, after strenuously contested litigation concerning whether the Debtors would be allowed to propound the PIQ and collect the Confidential Claimant Data, entered a Case Management Order on August 29, 2005, approving the PIQ as part of the hearing on the estimation of Debtors' asbestos personal injury claims (the "Estimation Hearing"). By its explicit terms, the CMO was limited to "the Estimation of Asbestos Personal Injury Liabilities." See Case Management Order for the Estimation of Asbestos Personal Injury Liabilities (Docket No. 9301) (the "CMO"). The CMO further provided for the compilation of the PIQ data into a "navigable database" and allowed the Debtors' claims agent to "make it available to the Debtors and any parties in the estimation proceedings." *Id.* at 3. The first page of the Questionnaire (attached as Exhibit A to the CMO),

specified that "This Questionnaire is an official document approved by the Court in connection with estimating Grace's asbestos-related personal injury and wrongful death claims." PIQ at 1. In litigation over the responses to the PIQs, all parties relied on the assumption that the data collected was limited to the estimation process. When this Court entered its Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire (Docket No. 14149) (the "Motion to Compel Order") requiring claimants to provide information concerning settlements with third-party defendants sought by the PIQ the Court again made it clear that the information was to be provided for use in the estimation hearing only, stating:

> The information may be used by Grace, its counsel, its agents, and its experts in connection with this estimation proceeding only, and is to be kept confidential and may not be used by any person other than the Claimant for any purpose other than this estimation.

Motion to Compel Order at 2. Subsequently, when the Debtors sought to serve supplementary discovery by interrogatory with regard to the PIQs upon certain law firms, the Debtors and the claimants from whom discovery was sought agreed to provide the information under (a) terms of strict confidentiality, and (b) for the limited purpose of the estimation hearing. *See* Modified Order Establishing the Non-Waiver of Privilege Contained in Answers to the Debtors' Interrogatories and the Sealing and Confidentiality of Such Answers (Docket No. 16259) (the "PIQ Protective Order"). This Court ordered that

> any and all information provided to the Debtors in response to the Third Set of Interrogatories may only be used by them or disclosed to the Debtors, their counsel, agents, and experts. Such information may be used only in respect to the estimation proceedings in these chapter 11 cases and may not be used for any other purpose.

PIQ Protective Order at 2. When the PIQ Protective Order was extended to the other official committees appointed in this case, this Court reiterated that "such information may be used only in respect to the estimation proceedings in these chapter 11 cases and may not be used for any other purpose." Agreed Supplemental Order Regarding Modified Order Establishing the Non-Waiver of Privilege Contained in Answers to the Debtors' Interrogatories and the Sealing and Confidentiality of Such Answers (Docket No. 16918) at 2.

      This Court, as well as all of the parties to the estimation proceeding, all of the claimants who answered the PIQ at the direction of this Court (including, notably, the Libby Claimants), and all of the firms who responded to successive interrogatories under the PIQ Protective Order operated under the same understanding: the Confidential Claimant Data was being provided for the purposes of the estimation hearing, and would not be used for any other purpose. The claimants represented by the Law Firms would not have provided the Confidential Claimant Data absent this understanding of absolute confidentiality and limited scope. This Court made its rulings absolutely crystal on several occasions: the PIQs were for estimation purposes only and could have no other application or be used for any other purposes. At all times through this process, the Libby Claimants

attended court and participated fully in the estimation hearing and the formulation of the orders governing the PIQ process, and never once suggested that the Court permit the information to be used for any wider purpose. Indeed, counsel for the Libby Claimants voiced concern about the sensitive nature of some of the information at the very outset, and gained from this Court an assurance of confidentiality and limited purpose.

> Mr Cohn: There's a request for social security number, and I think just because of the security implications of that, that should be stricken … The COURT: Why don't we build into the case management order or this order that it will be kept confidential. It's for use in this litigation period, and then it's not to be disclosed to parties outside the litigation without order of Court.

Transcript of Hearing Held on July 19, 2005 at 266-67 (Docket Number 9105).[2] The Libby Claimants were even more protective of their own medical records, arguing that their treating physician should not be required to hand over unredacted medical records to the Debtors in response to a discovery request. *See* Objection of Libby Claimants to Debtors' Motion for Authorization to Seek Discovery From Dr. Alan C. Whitehouse and for a Protective Order Relation to Production of Documents (Docket No. 12065) at 14. This cautious attitude to medical privacy clearly does not extend to the medical records that certainly will comprise parts of the Confidential Claimant Data.

---

[2] Moreover, the Libby Claimants objected to the entire questionnaire process from the outset. See Opposition of Libby Claimants to Debtors' Motion to Approve PI CMO and Questionnaire (Docket No. 8846).

The estimation hearing ended in early 2008 with an agreement between the active parties to the estimation on the aggregate valuation of Asbestos Personal Injury Claims.  Given that the Court ordered the Confidential Claimant Data provided for the sole purpose of the estimation hearing, and that the estimation hearing is long over, the information should not be released to any other party for a reason different from that for which it was collected.  Claimants who answered the PIQ relied up this assurance of strict confidentiality and limited scope, and they should not be deprived of their rights at this late stage.  The Libby Claimants had many opportunities to argue for a more expansive scope at the time, and they not only failed to take such opportunities but actively argued in favor of strict confidentiality protections.  They may not now seek to modify the settled orders of this Court, relied upon by the Law Firms in responding to the PIQs, and obtain information for use in an entirely separate proceeding that was collected for a specific purpose and held under close restriction.

The law of the case doctrine applies to require maintenance of the limitation of the Confidential Claimant Data to the estimation hearing and the imposition of strict confidentiality over the contents of the PIQ and associated materials.  The United States Supreme Court has noted that "as most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).  Law of the case rules seek "to maintain consistency and avoid reconsideration of matters once decided." *Casey v. Planned*

*Parenthood of S.E. Pa.*, 14 F.3d 848, 856 (3rd Cir. 1994). The Third Circuit has especially cautioned that, although the law of the case doctrine does not completely preclude reconsideration, courts should take care not to render injustice to parties that rely on a ruling delivered in a case. *In re Engel*, 124 F.3d 567, 584 (3rd Cir. 1997) ("the court must consider any prejudice that may result from reconsidering a prior order because of possible injustice to one who may have relied upon that order"). Reconsideration is appropriate in exceptional circumstances such as "where there has been an intervening change in the law, where new evidence has become available, or where reconsideration is necessary to prevent clear error or a manifest injustice." *Al Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*, 104 F.3d 601, 605 (3rd Cir. 1997). Here, no such circumstances exist, and claimants who complied with this Court's orders under the explicit assurance that the Confidential Claimant Data would be used solely for estimation purposes and kept strictly confidential would be highly prejudiced by this Court's reversal of that assurance at this late juncture. If the Libby Claimants had wished to retain the possibility of using the Confidential Claimants Data at the confirmation stage of this case, they had ample opportunity to urge this Court to incorporate such a usage into the many orders regulating the PIQs.

2. **The information sought is irrelevant to the purpose which the Libby Claimants purport to advance and the Libby Claimants have not made any showing that the Confidential Claimant Data is calculated to lead to the discovery of any admissible evidence.**

The Libby Claimants bear the burden of establishing that the discovery they seek is relevant to the matter at hand. They cannot simply demand discovery on the basis that the United States Supreme Court has, as they cite, noted that pre-trial discovery is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). There must be some concrete nexus between the discovery sought and the issue in controversy. The Libby Claimants' articulated reason for wanting the Confidential Claimant Data is that the "plan proponents have suggested that the Libby Claims are the same as the rest of the asbestos personal injury claims asserted or to be asserted against the Debtors" and that "to properly respond to this claim, the Libby Claimants are entitled to understand the full extent of the asbestos personal injury claims against the Debtor." Motion to Compel at 4.[3]

This conclusory statement does nothing to show the relevance of the Confidential Claimant Data to the confirmation objections advanced by the Libby Claimants. The Confidential Claimant Data was collected for a singular purpose –

---

[3] The Various Law Firms have filed, contemporaneously with this Opposition, an Objection to the Libby Claimants' Motion to Compel Asbestos PI Committee to Respond to Libby Claimants' Interrogatories. This Objection contains a discussion of the relevance of the Libby Claimants' discovery demands, which discussion is incorporated herein by reference insofar as it is germane to the discovery propounded upon the Debtors.

the estimation of the asbestos personal injury claims against the Debtors. If the Libby Claimants have a legitimate issue with the Plan, then it is that the treatment of their own claims is somehow improper, and that the Plan and Plan Documents improperly treat the Libby Claims. Information detailing the claims of other claimants has no bearing on the treatment of the Libby Claims under the Plan, and can provide absolutely no utility to the Libby Claimants in advancing their confirmation objections. Indeed, they filed exhaustingly detailed disclosure statement and plan objections that set forth, in high detail, a preview of their confirmation objections. They have served three detailed expert reports on the plan proponents. They do not need the Confidential Claimant Data either to develop or hone their objections yet further, and the details of claims held by other claimants against the Debtors are entirely irrelevant to whether the Plan treats *their* claims fairly. The absence of a showing of relevance provides yet further reason for this Court to respect the private and sensitive nature of the Confidential Claimant Data and permit it to remain sealed and restricted to the use for which it was gathered – the now terminated estimation proceeding.

3. **The information sought by the Libby Claimants is colossal in scale, and they cannot effectively use even a fraction of the information they seek. Confidentiality should not be breached, especially for a fruitless endeavor.**

The Confidential Claimant Data runs, by the Debtors' count, to over **four million** pages of hard copy. The navigable database has many tens of thousands of unique claimant records. It is inconceivable that the Libby Claimants can even

scratch the surface of such a huge amount of data, never mind fully understand and process it in the time available to them. The confirmation hearing with respect to the Libby Claimants' objections is set for June 22-25, 2009. Case Management Order Related to the First Amended Joint Plan Of Reorganization (Docket No. 20186) (the "Confirmation CMO") at 1. The deadline for the submission of expert reports has already past and the Libby Claimants have served three reports. *Id.* at 3. Supplemental expert reports are due on February 13, 2009 (five weeks hence). Final Plan objections are due on March 16, 2009 (two and a half months hence). *Id.* at 3. Especially given that the disclosure statement and plan objections of the Libby Claimants are so fully formed (as evidenced by the bulky disclosure statement objections extensively previewing same), the Confidential Claimant Data cannot add much, if anything, to the case to be advanced at the confirmation hearing. As a matter of sheer practicality, the Libby Claimants, with the best will in the world, cannot even begin to process the Confidential Claimant Data in time for it to feed into their final Plan objections that they must file in two and half months. To attempt to do so would be an exercise in rank futility. This provides additional reason for this Court to leave the privacy and confidentiality of the data undisturbed and decline to permit the Libby Claimants to have access to the Confidential Claimant Data.

### IV.   CONCLUSION AND PRAYER FOR RELIEF

The Libby Claimants, having once stood side-by-side with the Law Firms and others that opposed the collection of the Confidential Claimant Data, now seek to

gain access to the extremely sensitive and private data of many tens of thousands of other asbestos personal injury claimants.  The Libby Claimants do so without articulating a cogent reason why they need the information, much less establishing that it is calculated to lead to the discovery of relevant and admissible evidence.  They claim to want the information to more fully understand the universe of asbestos claims levelled against the Debtors and held by others to properly object to the treatment of their own claims under the Plan.

      The Confidential Claimant data was gathered for a specific purpose – the estimation of asbestos personal injury claims – and provided in reliance on the explicit guarantee that the information would be used only for this purpose and maintained under conditions of strict confidentiality and security.  The Libby Claimants, after initially opposing the entire PIQ process, stood firm with the Law Firms in insisting upon these restrictions, precautions that they now seek to set aside for their own advantage.  The restrictions are the law of the case, and should not be revisited in the absence of exceptional circumstances, particularly where to do so would wholly prejudice the rights of the claimants who relied on assurances of confidentiality and limited purpose.  They have not established the relevance of the information they seek, and they have not provided any justification for this breach of confidentiality.  Furthermore, with the tight deadlines in this case leading up to the confirmation hearing in June juxtaposed with the highly developed nature of the Libby Claimants' confirmation objections, it is clear that any access to the Confidential Claimant Data would be as futile as it is unnecessary.  The Libby

Claimants should not be permitted to have the settled expectations of asbestos claimants upturned for no apparent utility.

WHEREFORE, for the foregoing reasons, the Law Firms pray that this Court deny the Motion to Compel, order that the Confidential Claimant Data remain sealed and undisclosed, enter an order requiring the Debtors to keep the Confidential Claimant Data private and that the Law Firms be afforded such other relief as to which they may be entitled.

Dated: January 7, 2009

    Sander L. Esserman
    David A. Klingler
    David J. Parsons
    **STUTZMAN, BROMBERG,
    ESSERMAN & PLIFKA,
    A Professional Corporation**
    2323 Bryan Street, Suite 2200
    Dallas, Texas 75201
    Telephone:  (214) 969-4900
    Facsimile:   (214) 969-4999

    **COUNSEL FOR LAW FIRMS
    REPRESENTING PERSONAL INJURY
    CLAIMANTS**

    /s/ Daniel K. Hogan
    Daniel K. Hogan (ID no. 2814)
    **THE HOGAN FIRM**
    1311 Delaware Avenue
    Wilmington, Delaware 19806
    Telephone:  (302) 656-7540
    Facsimile:   (302) 656-7599
    E-mail:  dkhogan@dkhogan.com

    **LOCAL COUNSEL FOR FOR LAW FIRMS
    REPRESENTING PERSONAL INJURY
    CLAIMANTS**