**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. Grace & Co., *et al.*, | : | Case No. 01-01139-JKF |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | Related Docket No. 20378 |

**RESPONSE AND OBJECTION OF MMWR FIRMS TO LIBBY CLAIMANTS' MOTION TO COMPEL DEBTORS TO RESPOND TO LIBBY CLAIMANTS' DOCUMENT REQUEST**

The MMWR Firms[1] respond and object to the Libby Claimants' Motion to Compel Debtors to Respond to Libby Claimants' Document Request (the Libby Claimants' "Motion"), and state:

## I. Background

1. On August 29, 2005, this Court entered its Order approving the Debtor's Personal Injury Questionnaire (the "Questionnaire"), and requiring all asbestos personal injury claimants (the "Claimants") to complete and return said Questionnaire.

2. Since then – as this Court is all too aware – an enormous amount of litigation has taken place regarding many different aspects of the parties' respective duties and rights relating to the Questionnaire, as well as to the content of the Questionnaire itself.

3. This litigation resulted in, among other things, this Court's entry of a series of heavily litigated and/or negotiated protective orders and bench orders, and in the entry of a

[1] For the purposes of this Response, the "MMWR Firms" are defined as follows: (i) Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, A Professional Law Corporation; (ii) Waters & Krauss, LLP; (iii) Paul and Hanley (iv) Early Ludwick & Sweeney; (v) Harowitz & Tigerman; (vi) the Wartnick Law Firm; and (vii) Early & Strauss.

number of agreements stated on the record at hearings concerning the Questionnaires (together, the "Protective Orders") governing the information that the Questionnaire requested (the Information). The Information includes sensitive medical and personal information about the Claimants, as well as information that the Claimants were required to keep confidential pursuant to binding confidentiality orders entered in other cases.

4. Two cornerstones of these Protective Orders are (1) that the Information was to be kept confidential, and (2) that the Information was to be used for estimation purposes only. See, e.g., Order, 12/22/06, at ¶ 4 ("Further, the information may be used by Grace, its counsel, its agents, and its experts in connection with this estimation proceeding only, and is to be kept confidential and may not be used by any person other than the Claimant for any purpose other than this estimation.").

5. In reliance on the Protective Orders, the MMWR Firms provided the information requested by the Questionnaires with the express understanding and on the condition that the Debtors were to use the Information solely for purposes of estimation, and that access to the Information would be restricted to a limited and specifically identified list of parties in this case.

6. Simply put, absent the Protective Orders, the Claimants represented by the MMWR Firms would not have provided the Information without first pursuing review to the fullest extent permissible under the law. See attached Affidavits of Peter A. Kraus, Esquire and Steven Kazan, Esquire. Prior to the hearing, additional affidavits will be provided for other MMWR Firms. Indeed, throughout this case, all of the parties have proceeded under the idea that the Information was to be kept confidential and was to be used for estimation purposes only. These protections led to the exchange of certain information that previously had not been produced in response to efforts by others to obtain such information, and allowed the Debtors to

gather certain information that they contended that they needed for estimation (which contention the MMWR Firms continue to dispute).

7. And now, seeking to undo the critical protections provided by the Protective Orders, the Libby Claimants seek production of all returned Questionnaires, all asbestos personal injury proofs of claim, and the Debtors' entire database containing all the data recorded on the Questionnaires and the proofs of claim, for a purpose entirely other than in connection with the expressly, court-ordered, limited use for the estimation proceeding in this bankruptcy case.

## II. Analysis

8. Protective Orders must be strictly and scrupulously enforced. See, e.g., Littlejohn v. BIC Corp., 851 F.2d 673, 684 (3d Cir. 1988) ("Scrupulous compliance with court discovery orders is particularly important because our system of discovery relies on the cooperation and integrity of attorneys operating within the guidelines provided by the Federal Rules of Civil Procedure and the provisions of any protective order.").

9. The relief that the Libby Claimants seek in their Motion is barred by the Protective Orders. Although they fail to request it in their Motion, what they effectively seek is a modification of the Court's Protective Orders, and in particular the use restriction. As explained below, however, the Libby Claimants are not entitled to any modification of any of the Court's Protective Orders.

### A. Applicable Standards

10. "Although courts have discretionary authority to modify a stipulated protective order, the burden of demonstrating that an agreed protective order should be modified is on the moving party." Phillips Petroleum Co. v. Rexene Prods. Co., 158 F.R.D. 43, 46 (D. Del. 1994).

11. The United States Court of Appeals for the Third Circuit has set out the following factors to be evaluated in determining whether to grant a request for modification of a protective order.[2]

(1) The degree to which the original parties relied on order;

(2) The interest in privacy of the party seeking protection;

(3) Whether the information is being sought for a legitimate purpose or an improper purpose;

(4) The prevention of embarrassment, and whether that embarrassment would be particularly serious;

(5) Whether the information sought is important to public health and safety;

(6) Whether sharing of the information among litigants would promote fairness and efficiency;

(7) Whether the party benefiting from the order of confidentiality is a public entity or official; and

(8) Whether the case involves issues important to the public.

See Arnold v. Commonwealth of Pa. Dep't of Transp., 477 F.3d 105, 108 (3d Cir. 2007) (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787-88 (3d Cir. 1994)).

**B. The MMWR Firms relied on the Protective Orders in producing and in advising their clients to produce the Information**

12. Reliance on the Protective Orders was the basis on which, and the sole reason that, the MMWR Firms responded to the Questionnaires.

13. "In determining whether to modify an already existing confidentiality order, the parties' reliance on the order is a relevant factor." Pansy, 23 F.3d at 789.

14. Parties' ability to trust and confidently rely upon protective orders serves an important policy goal. "Protective orders . . . are intended to 'secure the just, speedy, and

---

[2] As the Pansy court noted, this is same test used to determine whether to grant a protective order in the first instance, with the addition of a "reliance" element. See Pansy, 23 F.3d at 790.

inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant.' By shielding sensitive information from third parties and the public at large, protective orders 'offer litigants a measure of privacy' and 'aid the progression of litigation and facilitate settlements.'" In re Grand Jury, 286 F.3d 153, 159 (3d Cir. 2002) (quoting Pansey, 23 F.3d at 786; Martindell v. International Tel. and Tel. Corp., 594 F.2d 291, 295 (2d Cir. 1979)).

15. If the Court were to modify any of its previously entered and relied upon protective orders, parties understandably may be hesitant or even unwilling to rely on any such orders in the future. As one court stated, "If protective orders were easily modified, moreover, parties would be less forthcoming in giving testimony and less willing to settle their disputes: 'Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation.' Indeed, we have observed that protective orders can provide a powerful incentive to deponents who would not otherwise testify. We have also noted the reliance on protective orders by parties otherwise reluctant to reach a settlement." Securities and Exchange Comm'n v. TheStreet.com, 273 F.3d 222, 230 (2d Cir. 2001) (quoting Martindell, 594 F.2d at 295, 296).

16. In addition, a precedent for readily modifying protective orders could start the Court down a "slippery slope." Parties may become encouraged to seek access to information to which they have no right, and the Court may find itself faced with a multitude of requests for such information, and resulting disputes. Indeed, as reflected in the Debtors' objection to the Libby discovery, the Debtors now may seek to use certain of the Information in connection with confirmation – something that this Court has expressly and directly addressed before, and which this Court has explicitly rejected by restricting the Information to estimation only.

17. Here, the MMWR Firms strenuously objected to producing the Information, on grounds including but not limited to confidentiality and privacy, and ongoing and binding nondisclosure obligations relating to prior settlements. In addition, the vast majority of Claimants represented by the MMWR Firms had not yet had a chance to fully develop their cases against Grace because of the pendency of the bankruptcy case. The data that the MMWR Firms had on file for these Claimants, consequently, had not been developed to the point that it could fairly be used to determine the merits of claims. To permit the Libby Claimants to value individual claims by comparison implicates the jurisdictional limits of this Court and it is an inappropriate exercise and burden in connection with plan confirmation.

18. The attached Affidavits of Peter A. Kraus, Esquire and Steven Kazan, Esquire attest to the MMWR Firms' reliance on the Protective Orders.

19. The various confidentiality, use, and other protections and restrictions ordered and endorsed by this Court relating to the Information were the prerequisite to the Debtor's obtaining the information responsive to its Questionnaire.

20. Consequently, the "reliance" factor cuts strongly in favor of refraining from modifying the Protective Orders and in favor of denying the Libby Claimants' Motion.

**C. The MMWR Firms have a strong interest in maintaining, and indeed a duty to maintain, the privacy of their clients' personal, medical, and claims Information**

21. The Questionnaires and other documents that the Libby Claimants seek contain much sensitive, personal, private, and/or confidential information, including without limitation Claimants' personal medical information, personally identifying information such as social security numbers, birthdates, and addresses, and information relating to settlements of prior suits protected by ongoing binding confidentiality agreements.

22. The Claimants have given the MMWR Firms authorization to release the Claimants' personal information solely under confidentiality restrictions and solely in prosecution of their claims. If Libby had sought the Information from the MMWR Firms directly, the MMWR Firms would not be authorized to release it. And if the Libby Claimants sought it from the Claimants directly, the Claimants would strongly oppose the Libby Claimants' right to such "discovery" unrelated to the merits of the Libby Claimants' claims against the Debtors.

23. In addition, if the Libby Claimants were permitted to put the Information to use in any manner relating to the determination of merits of claims, the Claimants would suffer harm. As stated above, the data that the MMWR Firms have on file is incomplete, due to the pendency of the bankruptcy case. In preparation for any type of "on the merits" evaluation, the Claimants, through their firms, will need to augment and refine their present supporting data. This was among the reasons why the MMWR Firms insisted upon the restriction that the Debtors use the Information solely for estimation purposes.

24. Consequently, the MMWR Firms and their Claimants have a strong interest in maintaining the privacy of the Information, and this factor favors maintaining the Protective Orders and denying the Libby Claimants' Motion.

**D. The Libby Claimants do not appear to have an actual need for or legitimate purpose in seeking the Information**

25. The Information does not appear to be relevant to the Libby Claimants' objections to the Debtors' Plan, and, therefore, the Libby Claimants should not be considered to have a proper purpose in seeking the Information.

26. The Libby Claimants claim to need the Information to support their Plan objection. They argue, "The Debtors, Asbestos PI Committee, and other plan proponents have suggested that the Libby Claims are the same as the rest of the asbestos personal injury claims asserted or to be asserted against the Debtors. To properly respond to this claim, the Libby Claimants are entitled to understand the full extent of the asbestos personal injury claims against the Debtors." Libby Claimants' Motion at p.4.

27. Based on the Libby Claimants' Preliminary Objections to First Amended Joint Chapter 11 Plan, their objections principally boil down to an argument that the TDP does not treat Libby Claimants in a manner comparable to how such claimants would be treated in the state tort system. The details concerning the merits (or lack thereof) of other claimants' claims are not relevant to the question of whether the TDP accurately reflects how the Libby claims would be treated in the tort system. On this point, the MMWR Firms incorporate by reference and join in the relevance objections raised by the Debtors, the ACC, and others.

28. The Libby Claimants' Motion to Compel further argues, "Accordingly, the Libby Claimants should not be in a position where the Debtors can selectively utilize data without being required to provide the Libby Claimants with equal access." Id.

29. On the contrary, the Debtors are not permitted to "selectively utilize data." The Debtors are absolutely prohibited from using any of the Information for any purpose other than estimation. With respect to confirmation, the Libby Claimants do not need the Information in order to level any playing field with the Debtors.

30. Consequently, this factor favors maintaining the Protective Orders and denying the Libby Claimants' Motion.

**E. The Claimants may suffer embarrassment if their personal medical information were disseminated**

31. The Information includes the Claimants' personal medical histories, as well as accompanying documents such as x-rays. This type of information is inherently sensitive, and the Claimants have a strong interest in preventing its dissemination. Depending on Claimants' particular circumstances, their medical histories may include information that, for personal reasons, they wish to keep private. Consequently, this factor favors maintaining the Protective Orders and denying the Libby Claimants' Motion.

**F. The Information is not important, or in any way relevant to, public health and safety**

32. The Information consists of the Claimants' own personal information and medical histories, documents relating to their various illnesses such as x-rays, their personal work and exposure histories, and their personal litigation and claim histories. This Information has no bearing whatsoever on the public's health and safety, and indeed, no relevance whatsoever to any matter other than these proceedings.

33. Consequently, this factor favors maintaining the Protective Orders and denying the Libby Claimants' Motion.

**G. The sharing of the Information with the Libby Claimants would not promote fairness and efficiency**

34. As discussed above, the Information is not necessary to the Libby Claimants' plan objections. Its production to the Libby Claimants will not aid resolution of either those objections or any other matter before the Court.

35. On the contrary, rather than promoting fairness and efficiency, the Libby Claimants' requested relief would likely further delay what has already been a very protracted

case. The Libby Claimants request a vast quantity of documents and data. And not only is it enormous in scope, but much of it is of a complex nature.

36. Consequently, this factor favors maintaining the Protective Orders and denying the Libby Claimants' Motion.

**H. This case involves private litigants and concerns matters that do not impact upon the public**

37. "If a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality." Glenmede Trust Co. v. Thompson, 56 F.3d 476, 484 (3d Cir. 1995) (quoting Pansy, 23 F.3d at 788).

38. Here, this proceeding involves only private litigants, and concerns private disputes that do not implicate the public interest. Indeed, the court of appeals' leading cases in which protective orders have been modified mostly appear to have involved disputes concerning governmental or quasi-governmental parties and/or matters in which the general public had a clear interest. See, e.g., Arnold, 477 F.3d 105 (affirming district court's partial granting of newspaper's motion to lift confidentiality order in case involving alleged misconduct by employees of Pennsylvania Department of Transportation and government contractors); Shingara v. Skiles, 420 F.3d 301 (3d Cir. 2005) (reversing district court's denial of newspaper's motion to vacate protective order in case involving alleged misconduct by members of the Pennsylvania State Police) Pansy, 23 F.3d 772 (reversing district court's denial of newspapers' motions to intervene and to modify or vacate confidentiality order in 1983 action between Borough and its former chief of police) ; cf In re Grand Jury, 286 F.3d 153 (3d Cir. 2002) (holding that grand jury

subpoena trumped civil protective order and stressing public's strong interest in function of grand jury and "potential harm to society" if target were to go unpunished).

39. Here, the proceedings involve only disputes between private litigants, and do not relate to matters that impact upon the public at large. Consequently, this factor favors maintaining the Protective Orders and denying the Libby Claimants' Motion.

## III. Conclusion

40. The Protective Orders that this Court has entered in this case prohibit the relief that the Libby Claimants seek in their Motion. The Libby Claimants have failed to, and indeed are unable in the circumstances before the Court, to satisfy their very high burden of overcoming the protections imbedded in those Protective Orders and the reasons for those protections. Accordingly, the Court should deny the Libby Claimants' Motion.

41. The MMWR Firms incorporate the arguments raised in the Opposition of Various Law Firms Representing Asbestos Personal Injury Claimants to the Libby Claimants' Motion to Compel Debtors to Respond to Libby Claimants' Document Request. The MMWR Firms reserve the right to raise additional arguments before or at the time of hearing.

WHEREFORE, the MMWR Firms respectfully request that the Court enter an Order denying in full with prejudice the Libby Claimants' Motion to Compel Debtors to Respond to Libby Claimants' Document Requests.

Dated: January 7, 2009

MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

By: /s/ Laurie A. Krepto

Laurie A. Krepto, Esquire (4109)
1105 North Market Street, Suite 1500
Wilmington, DE 19801
(302) 504-7800
(302) 504-7820 (facsimile)

and

Natalie D. Ramsey, Esquire (PA only)
Simon E. Fraser, Esquire (PA only)
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500
(215) 772-7620 (facsimile)

Attorneys for MMWR Firms