## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | x | **Chapter 11** |
| | : | |
| **W. R. GRACE & CO., et al.,**[1] | : | **Case No. 01-1139 (JKF)** |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |
| | : | Objection Deadline: February 6, 2009 at 4:00 p.m. |
| | : | Hearing Date: February 23, 2009 at 10:30 a.m. |
| | x | |

### MOTION OF KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND SUPPORT TERMINAL SERVICES, INC. FOR AN ORDER MODIFYING THE AUTOMATIC STAY

Kaneb Pipe Line Operating Partnership. L.P. and Support Terminal Services. Inc. (collectively. "**Kaneb**") hereby move this Court for entry of an order under section 362(d) of title 11 of the United States Code (as amended. the "**Bankruptcy Code**") modifying the automatic stay to allow Kaneb and Debtor Grace Energy Corporation to continue prosecution of their respective cross-appeals in an environmental liability action pending in the Texas Court of Appeals. Resolution of the cross-appeals is critical to protection of Kaneb's rights both within these bankruptcy proceedings and in respect of third-parties, including the United States government. In respect of this Motion, Kaneb respectfully states the following:

#### Jurisdiction

1.     This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to §§ 1408 and 1409.

2.     The statutory predicate for the relief requested herein is section 362(d)(1) of the Bankruptcy Code.

---

[1] The Debtors consist of 62 entities, including W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.) and the particular debtor involved in this Motion, Grace Energy Corporation.

**Background**

3.       This motion seeks modification of the automatic stay in order to permit Kaneb

and Debtor Grace Energy Corporation ("**GEC**") to finally resolve a dispute over their respective

rights and obligations arising out of a pipeline spill which allegedly occurred more than 35 years

ago in Massachusetts.  As set forth in detail below, GEC and Kaneb each assert the other is

ultimately responsible for the environmental damages sought by state and federal authorities.

4.       The dispute was litigated in the 191st District Court of Dallas County, Texas, from

1997 through 2000.  See Exhibit K1[2] (Plaintiffs Third Amended Original Petition) and Exhibit

K2 (Defendants' Seventh Amended Original Answer, Verified Denials, Affirmative Defenses,

and Counterclaims).  After a jury trial, the trial court rendered an Amended Final Judgment on

August 30, 2000 ("**State Court Judgment**").  Exhibit K3.  Both parties appealed.  Exhibit K4

(Kaneb Notice of Appeal) and Exhibit K5 (GEC Notice of Appeal).  In 2001, while the cross-

appeals were pending in the Court of Appeals for the Fifth District of Texas, in Dallas (the

"**Texas Appellate Court**"), GEC filed its voluntary petition in bankruptcy, invoking the

automatic stay.  The Texas Appellate Court, invoking its rules, suspended the entire appellate

proceedings.  Exhibit K6 (Abatement Order).  No briefing, argument or judgment has occurred

in the Texas Appellate Court.

5.       Kaneb seeks modification from the automatic stay now, because after more than

seven (7) years of bankruptcy proceedings, GEC and its fellow debtors are attempting to use

their proposed plan of reorganization to fix liabilities which should only be determined by the

Texas Appellate Court, as mandated by the *Rooker/Feldman* doctrine.  Moreover, unless the

Texas Appellate Court is freed to decide the issues before it, Kaneb may be subjected to

---

[2]  Because of the volume of Exhibits, the Exhibits are only being served on Debtors' counsel, the United States
Trustee and Unsecured Creditors' Committee Counsel.  If any other parties-in-interest want a copy of the Exhibits,
they may obtain them by request to Movants' counsel.

attempted invocation of collateral estoppel[3] in other actions. Finally, in order to fully participate in GEC's plan, Kaneb must be able to liquidate its rejection damages in connection with an executory contract at the center of the dispute before the Texas Appellate Court.

### The GEC Sale To Kaneb, The Otis Pipeline And The Environmental Liabilities

6.      In 1993, Kaneb purchased certain GEC subsidiaries (the "**Acquired Companies**") pursuant to a purchase agreement and plan of merger (the "**Merger Agreement**" or the "**Transaction**") with GEC. Exhibit K7 (Merger Agreement, without attachments). Under the Merger Agreement, GEC first caused the merger of the Acquired Companies into Support Terminal Services, Inc. Next, Kaneb acquired the stock of Support Terminal Services, Inc., subject to the terms and conditions of the Merger Agreement.

7.      It has been alleged in the Texas Action that prior to the Transaction, one of the Acquired Companies had owned a fuel pipeline which previously served Otis Air Force Base on the Massachusetts Military Reservation in Sandwich, Massachusetts (the "**Otis Pipeline**"). In the early 1970s, approximately 70,000 gallons of aviation gasoline and jet fuel allegedly was accidentally released from the Otis Pipeline, causing environmental damage to nearby property. In the 1990s, the Commonwealth of Massachusetts and the United States engaged in remediation efforts with respect to the Otis Pipeline fuel release, which was determined to be a Superfund site.

8.      Ownership of the abandoned Otis Pipeline, responsibility for the fuel release, and liability for remediation costs and other liabilities, as between Kaneb and GEC under the Merger Agreement, are at the heart of the disputes which were litigated in the Texas trial court and are now on appeal before the Texas Appellate Court.

---

[3] Movants do not admit, by seeking this relief, that trial court judgment has any collateral estoppel effect, noting that this would be an issue to be decided by another court.

**The Litigation**

9.      The Merger Agreement closed on March 2, 1993.  Under its terms, GEC and
Kaneb exchanged numerous representations, warranties and indemnities.  Among them, GEC
represented and warranted that the Acquired Companies held no liability with respect to, and
were in compliance with, all environmental laws.  GEC also expressly agreed to indemnify
Kaneb in the event such representation and warranty was inaccurate or the Merger Agreement
was breached.

10.     In 1995, the Commonwealth of Massachusetts issued notices to various parties
believed to be liable for the alleged Otis Pipeline release; and in 1997, the United States took
similar action.  Among the parties receiving a notice was Samson Hydrocarbons, which – like
Kaneb — had purchased a company and held an indemnity from GEC.  For a period of time,
Samson was able to enforce its indemnity against GEC for cleanup costs at the Otis Pipeline site.

11.     In 1997, however, GEC filed suit against Kaneb and certain of Kaneb's
subsidiaries seeking, among other things, declaratory relief that Kaneb, not GEC, was
responsible for the alleged liabilities associated with the Otis Pipeline.  Exhibit K1.

12.     Kaneb denied liability and responded with defenses and counter-claims, including
enforcement of GEC's indemnity obligation for the inaccuracy of GEC's representations and
warranties regarding environmental liabilities, and damages for breach of the Merger Agreement.
Exhibit K2.

13.     The case was tried to a jury and the State Court Judgment was entered by the
Texas trial court on August 30, 2000.  The State Court Judgment purports to incorporate prior
summary judgment orders with respect to liability for the Otis Pipeline.  Exhibit K3.  The State
Court Judgment declares that liability for the Otis Pipeline release had transferred from GEC to

Kaneb, that GEC did not owe indemnity to Kaneb for any liabilities related to the Otis Pipeline, and that neither party was entitled to an award on its affirmative claims. Exhibit K3.

14.    In October 2000, Kaneb and GEC each filed timely notices of appeal in the Texas Appellate Court, initiating the proceedings styled *Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc., Appellants and Cross-Appellees v. Grace Energy Corporation, Appellee and Cross-Appellant*, Appeal No. 05-00-01592-CV (the "**State Court Appeal**"). Exhibits K4 and K5.

15.    On April 2, 2001, GEC along with its affiliates filed these Chapter 11 bankruptcy cases. Since then, the automatic stay of 11 U.S.C. § 362(a) and the suspension of the State Court Appeal under Texas Rule of Appellate Procedure 8, as ordered by the Texas Appellate Court, have prohibited Kaneb and GEC from prosecuting their cross-appeals. Exhibit K6; *American Rice v. Tenzer*, 1998 Tex. App. LEXIS 7319 (Tex. App. — Houston [1st Dist.] 1998) (not designated for publication).

The Proposed Plan Of Reorganization

16.    On September 19, 2008, debtors filed their disclosure statement and joint plan of reorganization (the "**Disclosure Statement**" and the "**Plan**"). Hearings have been held on the issue of approval of the Disclosure Statement, and it is anticipated that an amended disclosure statement and plan will be filed.

17.    Currently, the Plan provides for payment in full of all allowed general unsecured claims. *See* Section 3.1.9 of the Plan. The Plan also provides a discharge for the debtors pursuant to 11 U.S.C. §§ 1141 and 524. *See* Sections 4.8 of the Disclosure Statement and 8.1 of the Plan. Although the Merger Agreement is an executory contract under 11 U.S.C. §365, GEC has not yet filed any motion to assume or reject same; as a result, Kaneb has not yet filed a proof

of claim as to the Otis Pipeline; however, Kaneb will be unable to do so unless and until and the Texas appellate process is completed and the cure costs (in the event of assumption) or Kaneb's rejection damages (in the event of rejection) are subject to calculation.

### The Department Of Justice Claim Against Kaneb

18.    On October 31, 2008, the United States Department of Justice (the "**DOJ**") notified Kaneb of a claim for cleanup costs in connection with the Otis Pipeline. Exhibit K8 (without attachments). The DOJ claim represents a substantial risk to Kaneb that it will be assessed liability while the State Court Appeal remains unresolved. Upon information and belief, Kaneb alleges that the sudden assertion of the DOJ claim against Kaneb, more than 35 years after the Otis Pipeline incident, is based upon the DOJ's reading of the Plan and the fact that the State Court Appeal has not been resolved.

19.    Kaneb hereby moves this Court to modify the automatic stay so that Kaneb and GEC can resolve their cross-appeals in the State Court Appeal. Resolution of the State Court Appeal will benefit both Kaneb and the bankruptcy estates by (a) finally establishing the liabilities, if any, of the estates to Kaneb and third parties arising out the Otis Pipeline fuel release; (b) liquidating Kaneb's damages, if any, arising from rejection of the Merger Agreement (or setting the amount of cure costs in the event of assumption); (c) enabling Kaneb to pursue claims, if any, against insurers that issued policies to GEC pursuant to which Kaneb is a co-insured or otherwise may be entitled to policy proceeds, and (d) enabling Kaneb to establish defenses against the DOJ claim, and to protect itself against other parties seeking to establish rights based upon the State Court Judgment.

## Argument And Authorities

### State Court Appeal

20.     Modification of the automatic stay to allow continuation of the State Court Appeal is authorized because "cause" exists under section 362(d)(1) of the Bankruptcy Code. Modification also is in the best interests of the bankruptcy estates and is in the public interest. Finality and certainty with respect to Otis Pipeline liabilities (which under the *Rooker/Feldman* Doctrine can only be decided by the Texas Appellate Court) will resolve disputed matters under the Plan, liquidate liabilities of the bankruptcy estates (or alternatively, bring funds into the estates), and allocate responsibility for the remediation cost of significant public environmental claims.

21.     Upon the commencement of these bankruptcy cases on April 2, 2001, an automatic stay went into effect pursuant to 11 U.S.C. § 362(a). Accordingly, there is a stay, applicable to all entities, prohibiting the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case. 11 U.S.C. § 362(a)(1). Relief from the stay is appropriate when there is "cause" to grant such relief. 11 U.S.C. § 362(d)(1).

22.     When a debtor is involved in litigation, causes of actions *against the debtor* are stayed under 11 U.S.C. § 362(a)(1), but causes of action *by the debtor* are not stayed. *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) (section 362 by its terms only stays proceedings against the debtor; the statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate); *see also Estate of Michael Angelo Corry Inn, Inc. v. Vega*, 53 Fed. App'x. 205, 207 (3d Cir. 2002).

23.    Similarly, if an appeal is pending when the automatic stay arises, appeals of matters that were originally brought *against* the debtor are stayed, regardless of whether the debtor is the appellant or appellee. Thus, whether a case is subject to the automatic stay must be determined based upon how the claims were originally asserted. *St. Croix*, 682 F.2d at 449. *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991) states:

> Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay. *Thus, within one case, actions against a debtor will be suspended even though closely related claims asserted by the debtor may continue.* Judicial proceedings resting on counterclaims and third-party claims asserted by a defendant-debtor are not stayed, while same-case proceedings arising out of claims asserted by the [non-debtor] plaintiff are stayed.

959 F.2d at 1204-05. [Emphasis supplied].

24.    Thus, in the State Court Appeal, Kaneb's appeal of the denial of its counterclaims against GEC are stayed by operation of section 362(a), but section 362(a) does not stay GEC's appeal of the denial of its claims against Kaneb (or Kaneb's right to defend against GEC's appeal). However, GEC's appeal has been abated by Texas Appellate Court under Texas Rules of Appellate Procedure 8.2[4] and the abatement continues until the Texas Appellate Court reinstates.[5] *See* Exhibit K6.

25.    Sufficient "cause" to justify the modification of the stay exists, as demonstrated in this Motion. "Cause" has no clear definition and is determined on a case-by-case basis with respect to modification of the stay. *Int'l Business Machines v. Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991). In determining "cause," courts generally consider the policies

---

[4] Tex.R.App.P 8.2 provides "[a] bankruptcy suspends the appeal and all periods in these rules from the date when the bankruptcy petition is filed until the appellate court reinstates . . ."
[5] Tex.R.App.P. 8.3(a) provides "[i]f a case has been suspended by a bankruptcy filing, a party may move that the appellate court reinstate the appeal if permitted by federal law or the bankruptcy court. If the bankruptcy court has lifted or terminated the stay, a certified copy of the order must be attached to the motion."

of the automatic stay and the competing interests of the parties. *In re Continental Airlines, Inc.,* 152 B.R. 420, 424 (D.Del. 1993), including the following:

- prejudice suffered by the debtors or the estates if the stay is lifted;

- balance of hardships facing the parties; and

- probable success on the merits if the stay is lifted.

*Id.* at 424. In addition, modification of the automatic stay should not unduly interfere with the bankruptcy cases.

26.    In the case at bar, there is no discernible prejudice suffered by GEC or its bankruptcy estate.[6] Resolution of the liabilities associated with the Otis Pipeline, in fact, will benefit GEC by providing it certainty with respect to its liabilities and assets. In contrast, failure to modify the stay will cause hardship to Kaneb by leaving it subject to potential liability for the Otis Pipeline damages and potentially without a right to seek indemnity, contribution or insurance benefits from GEC and various insurers. Since the purpose of the lift stay motion is to achieve certainty through completion of the appellate process – regardless of the outcome on the merits — the probability of success is high. Moreover, due to the *Rooker/Feldman* doctrine, such success cannot be achieved unless the State Court Appeal is prosecuted.

### The *Rooker/Feldman* Doctrine

27.    Because the *Rooker/Feldman* doctrine prevents this court from deciding state court appellate issues, the State Court Appeal is the only mechanism to obtain review of the state court judgment. The *Rooker/Feldman* doctrine holds that "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Liedtke v. State Bar of Texas,* 18 F.3d 315, 317 (5th Cir. 1994). Under the

---

[6] Because this matter is on appeal, there should be no significant fees or costs incurred by the debtors in briefing and arguing the issues before the Texas Appellate Court. Moreover, debtors' bankruptcy counsel will not be distracted from their duties since this matter will, no doubt, be staffed by other outside counsel.

*Rooker/Feldman* doctrine, a federal trial court cannot sit in appellate review of a state court final judgment. *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996).

28.    In *In re Wilson*, the Third Circuit reversed a bankruptcy court order denying relief from stay to pursue a state court appeal, noting that, because of the *Rooker/Feldman* doctrine, if the litigant were denied relief from the stay, she would have no opportunity to challenge the adverse state court ruling. *In re Wilson*, 116 F.3d 87, 90 (3rd Cir. 1997). In *In re Moore*, the court granted a non-debtor litigant relief from the stay, stating "[i]n this case 'cause' exists to lift the automatic stay because Johnson's state court appeal is the only method available for judicial review of the Master's order . . . [t]he *Rooker-Feldman* [footnote omitted] doctrine precludes review of the Master's order in this Court." *In re Moore*, 2005 Bankr. LEXIS 2742 (Bankr. D.S.C. 2005). In *Blackford v. Meredith*, a debtor was allowed relief from the stay to pursue an appeal in state court, the court noting that "an appeal of the state court judgment is the only remedy available if [the debtor-movant] wishes to contest the state court judgment because the *Rooker-Feldman* doctrine prevents a lower federal court from sitting in review of state court decisions." *Blackford v. Meredith (In re Meredith)*, 2005 U.S. Dist. LEXIS 40242 (E.D. Va. Aug. 19, 2005). Thus, stay relief is appropriate in light of the *Rooker/Feldman* doctrine.

### Avoidance Of Collateral Estoppel Effect

29.    Cause for modifying the stay also exists because failure to resolve the State Court Appeal leaves Kaneb potentially vulnerable to the collateral estoppel effect of a judgment (which may be reversible) in other litigation, including objections to the Plan, claims against debtors' insurers and with respect to the DOJ claim.

30.    In *In re Wilson, supra,* the Third Circuit reversed the bankruptcy court's denial of a motion for relief from stay to pursue an appeal because such an appeal was the only way for the movant to attack the collateral estoppel effect of the state court judgment. 116 F.3d at 90 ("if the bankruptcy proceeding continues without modification of the stay, issue preclusion will prevent Baldino from challenging the effect of the state court judgment in the bankruptcy court"). In *Am. College of Dentists Found., Inc. v. Dorris Mktg. Group, Inc. (In re Dorris Mktg. Group, Inc.),* 2005 Bankr. LEXIS 282 (Bankr. E.D. Va. 2005), a plaintiff sued Dorris in arbitration and won, then moved to confirm the arbitration award. Before the arbitration award could be heard, Dorris filed bankruptcy, invoking the automatic stay. *Id.* The court lifted the stay to confirm the award in part to impose the collateral estoppel effect of the arbitration award on the debtor's non-debtor principals. *Id.* at *6, 12.

### Discharge Injunction

31.    If the current Plan is confirmed, it will provide for a discharge for the debtors, including GEC, under 11 U.S.C. §§ 1141 and 524. The discharge of debt in bankruptcy serves to terminate the automatic stay of section 362. 11 U.S.C. § 362(c)(2)(C) (automatic stay expires when a discharge is granted or denied in Chapter 11): *Hazelquist v. Guchi Moochie Tackle Co.,* 437 F.3d 1178, 1180 (Fed. Cir. 2006); *U. S. v. White,* 466 F.3d 1241, 1245 (11th Cir. 2006) (confirmation of plan grants the debtor a discharge that replaces the automatic stay with a permanent injunction pursuant to § 524 of the Bankruptcy Code). To the extent GEC then attempts to rely on the "discharge injunction" to avoid resolution of Kaneb's appeal in the Texas Appellate Court, the *Rooker/Feldman* Doctrine will have been violated because this Court's confirmation order would have usurped the Texas Appellate Court's right to resolve the State Court Appeal.

32.    Moreover, because the plan discharge will not affect Kaneb's defenses to GEC's claims on appeal (and in fact will effectively terminate the stay as to same), there is no reason not to lift the stay at this point, given that the plan confirmation process is underway. This is because GEC is entitled only to a discharge of "debt" as a "personal liability." 11 U.S.C. §§ 1141(d); 524(a)(1), 524(a)(2); *see also* 11 U.S.C. § 101(5) and (12)("debt" means liability on claim, and "claim" is a right to payment); *Brown v. General Motors Corp.*, 152 B.R. 935, 939 (W.D. Wis. 1993) (only debts are discharged). The discharge injunction does not prohibit Kaneb from defending any actions by the debtors. *See, e.g., In re Black*, 280 B.R. 680, 685-86 (Bankr. N.D. Ala. 2001) (neither setoff nor recoupment barred by discharge); *Brown v. General Motors Corp.*, 152 B.R. 935, 939 (W.D. Wis. 1993) (defense of recoupment not barred by discharge order); *see also Megafoods Stores v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1036 (3d Cir. 1995) (citing cases where creditor permitted to recoup or setoff despite failure to object to plan confirmation or appeal from the confirmation order). Thus, matters in the State Court Appeal that do not involve Kaneb seeking a "right to payment" against the debtors, including Kaneb's opportunity to reverse the declaratory relief in GEC's favor, would not be barred by the discharge injunction.

## Relief From Stay to Seek a Right to Payment

33.    There are also aspects of the State Court Appeal, however, where Kaneb seeks a "right to payment" in connection with the Merger Agreement and the Otis Pipeline. At the trial level, Kaneb sought recovery against GEC for Otis Pipeline expenses pursuant to an indemnity right under the Merger Agreement. The State Court Judgment denied Kaneb any recovery, but Kaneb filed a notice of appeal. Because of the *Rooker/Feldman* doctrine, the bankruptcy court cannot finally determine whether GEC is liable for indemnity and for damages. Therefore, relief from the stay is appropriate.

### Recoupment Defense Not Subject to the Stay

34.     Even if the Kaneb indemnity claims are not treated as an executory contract claim. and Kaneb's right to payment against GEC would be barred, Kaneb seeks relief from stay to pursue such indemnity claims in the State Court Appeal as a defense of recoupment. against any claims by GEC under the Merger Agreement. because both side's claims arise out of the same transaction. *See University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065. 1079-80 (3d Cir. 1992) (recoupment is the setting up of a demand arising from the same transaction as the plaintiff's claim, strictly for the purpose of abatement or reduction of such claim: it is not subject to the automatic stay).

### Relief From Stay To Seek Insurance Recovery

35.     Kaneb also seeks relief from the stay to prosecute the state court litigation in order to establish liability for GEC for the purposes of recovering on any insurance policies that may provide coverage to GEC for these claims. including policies issued to GEC pursuant to which Kaneb is a co-insured or is has its own separate right to policy proceeds.  The Policies pursuant to which Kaneb presently seeks permission to pursue coverage rights are identified in Exh. K9 hereto.[7] *See also* Affidavit of Ellen Presby at ¶¶ 4-5.

### a.  Coverage Sought as Potential Judgment Creditors of GEC, to Recover Under Policies Covering GEC's Liability

36.     Kaneb first seeks relief so that, in the event GEC is held liable for the Otis Pipeline release, Kaneb may seek recovery under policies that provide coverage to GEC insurers for such insurance.

---

[7] Because of the large volume of documents involved, complete copies of Kaneb's copies of the policies have not been submitted with this motion.  An Appendix of complete policy documents has been created has been served on debtors' counsel, the United States Trustee and counsel to the unsecured creditors' committee.  A copy of the Appendix will be available at the hearing for the Court's review.

37.    Kaneb's right to proceed against GEC's insurer derives from the established principle that a discharge of a debt of the debtor does not affect the liability of any other entity on. or the property of any other entity for, such debt. *In re Conston Inc.*, 181 B.R. 769, 773 (D. Del. 1995).

38.    This right to proceed against other entities includes the right to proceed against any insurers of the debtor. For example, in *Houston v. Edgeworth (In re Edgeworth)*, Dr. Edgeworth allegedly committed malpractice, injuring the plaintiff. 993 F.2d 51. 53 (5th Cir. 1993). Dr. Edgeworth then filed a chapter 7 bankruptcy. *Id.* The plaintiff did not participate in the bankruptcy. *Id.* Dr. Edgeworth received a discharge. *Id.* The plaintiff then sought to lift the stay[8] to proceed only against the debtor nominally in order to collect from the insurance policy. The Fifth Circuit held in favor of the plaintiffs, noting that the scope of the section 524 discharge injunction does not prevent establishing the insurer's liability by proceeding against a discharged debtor. *Id.* at 54.[9] In sum, stay relief is appropriate where the debtor is sued nominally in order to recover against insurance proceeds.

---

[8] Technically, the lift stay motion was improper because the discharge injunction of 11 U.S.C. § 524 replaced the stay, but the court did not dwell on that issue. *Id.* at 53, n.2.

[9] *See also In re Fernstrom Storage and Van Company*, 938 F.2d 731. 734 (7th Cir. 1991) ("The failure to file a proof of claim does not preclude an action against the debtor to establish liability that will be satisfied by a third party."); *see also Id.* at 736-737 (failure to file proof of claim for equipment destroyed in a fire at debtor's premises did not preclude creditor from proceeding with civil action for declaration of debtor's liability solely for purpose of recovering under debtor's insurance policies; *In re Jet Florida Systems*, 883 F.2d 970 (11th Cir. 1989) (notwithstanding failure to file proof of claim, and entry of § 524(a) permanent injunction, former employee allowed to proceed with defamation claim against debtor to establish debtor's liability in order to recover from debtor's insurer); *Ranger Ins. Co. v. Wolcott (In re TLI, Inc.)* 1998 U.S. Dist. LEXIS 15488 (N.D. Tex. 1998) (the discharge was not an impediment to proceeding against the insurance policy); *Frazier v. McInnis*, 1996 Tex. App. LEXIS 4226 (Tex. App.—San Antonio 1996, no pet.) (unpublished) (bankruptcy only acts as an injunction against seeking personal liability against him on the debt, but it does not extinguish the debt nor does it prevent the Fraziers from establishing McInnis' liability in a state proceeding in order to recover from McInnis' insurer); *Am. College of Dentists v. Dorris Mktg. Group*, 2005 Bankr. LEXIS 282 at *5 (stay relief is appropriate when the debtor is a nominal defendant and recovery is only being sought against third parties or insurance policies); *In re Turner*, 55 B.R. 498 (Bankr. N.D. Ohio 1985) (modifying stay to permit creditors' RICO action against debtor to proceed where judgment would be satisfied under fidelity bond, despite lack of proof of claim).

39.    The right to proceed against GEC's insurers also is established by the language of the primary and umbrella insurance policies issued to GEC. These policies include provisions (either explicitly or by following form to underlying policies) that require the insurer (a) to pay claims "on behalf of" GEC, *see, e.g.*, Exh. K10 at GEC029632, and (b) to pay such claims even if GEC becomes insolvent or bankrupt. *See id.* at GEC029645 (typical anti-insolvency language reads as follows: "Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its legal obligations hereunder.").[10]

40.    It is also important to note that GEC will not be harmed if Kaneb is permitted to proceed against these policies to recover amounts nominally owed by GEC. Except for claims involving "products liability/ completed operations" (which are not involved in the Otis Pipeline case), all of the primary policies, and all or nearly all of the excess/umbrella policies, provide coverage on a "per occurrence" basis, without any "aggregate limit." *See id.* at Exhibit K10 at GEC029631; Exhibit K11 at GEC029747; Exhibit K12 at GEC030188).[11]

41.    The absence of "aggregate" limits for so-called "premises-operations" claims means that no matter how many "per occurrence" limits are paid out under the policy, the policy limits remain available to pay for other occurrences involving premises-operations claims. Thus, payment of claims relating to the Otis Pipeline release would not diminish the amount of insurance coverage available to GEC with respect to other claims.

---

[10] Kaneb has attached relevant policy excerpts as exhibits to this motion. In addition, Kaneb has filed an Appendix of Policies containing complete copies of the policy documents that it has for each of the Policies for which it seeks relief from stay. *See also* Affidavit of Ellen Presby.

[11] Kaneb has identified only one policy that appears to have an aggregate limit applicable to premises-operations claims of the type involving the Otis Pipeline claim. See Northbrook Policy No. 63 001 172, Exhibit K24. (Because Kaneb has not undertaken any discovery or other investigation of this Northbrook policy, it does not concede that it has an aggregate limit.) However, notwithstanding the possible existence of an aggregate limit in that policy good cause exists to permit Kaneb to proceed against Northbrook Policy No. 63 001 172. *See, e.g., In re Cybermedica, Inc.,* 280 B.R. 12, 18 (Bankr. D. Mass. 2002) (cause existed to lift stay to permit directors and officers of debtor to seek payment of defense costs under D&O policy and harm to estate "speculative"); *In re Arter & Hadden,* L.L.P., 335 B.R. 666, 674 (Bankr. N.D. Ohio 2005) (same).

42.    Relief from a stay is appropriate where, as here, the recovery of insurance proceeds by a non-debtor would not reduce or eliminate the debtor's right to collect under that same policy. *See In re Spaulding Composites Co., Inc.*, 207 B.R. 899 (9th Cir. BAP 1997) (insurance claim did not violate automatic stay where payment of non-debtor's claim would not impair insurer's ability to satisfy policy obligations to debtor); *cf. In re Circle K Corp.*, 121 B.R. 257 (Bankr.. D. Ariz. 1990) (policy proceeds deemed asset of estate where liability policies were "wasting" or "burning candle" policies, *i.e.*. payment of defense costs or judgments eroded or exhausted policy limits); *In re Metropolitan Mortgage & Securities Co., Inc.*. 325 B.R. 851, 857 (Bankr., E.D. Wash. 2005) (automatic stay prohibits non-debtor action that would diminish limits available to debtor under insurance policies).  Because the pursuit of claims under the Policies would not diminish rights available to the debtor, Kaneb should be granted relief from the stay.

43.    Finally, it bears noting that the insurance assets involved in this portion of the motion cannot be considered part of the debtor's estate, and therefore should not be subject to the automatic stay.  If Kaneb establishes in the Texas Court of Appeals that GEC is liable. then the insurance policies issued to GEC would require payment of proceeds "on behalf of" GEC to a non-debtor (Kaneb).  Because the policy *proceeds* payable on behalf of the debtor (*i.e.*. in the event Kaneb establishes the debtor's nominal liability in the Texas Court of Appeals) would be paid to a third party other than the debtor. the law does not deem those *proceeds* to be assets of the debtor's estate:

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim.  When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor increase the bankruptcy estate.  In other words, when the debtor has

no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.

. . . [U]nder the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.

*In the Matter of Edgeworth*, 993 F.2d 51, 55-56 (5th Cir. 1993). Because the policy proceeds are not assets of the debtor estate. Kaneb is entitled to relief from the automatic stay to pursue those proceeds.

### b.  Coverage Sought on the Basis that Kaneb is a Co-Insured Under These Policies

44.     Kaneb also seeks relief from the stay in order to pursue its direct rights as a *co-insured* under the Policies.  The insurance policies (either expressly or by following form) broadly define the "Named Insured" to include W.R. Grace and all of its subsidiary, associated, and affiliated companies. See. e.g., Exhibit K11 at GEC029747 ("Named Insured: W.R. Grace & Co. and/or any subsidiary, organization, or company, including subsidiaries of a subsidiary company, owned, controlled or coming under the active management of W.R. Grace & Co."); Exhibit K65 at GEC028845 ("W.R. Grace & Co. and/or subsidiary, associated, affiliated companies and/or organizations. owned. controlled and/or managed companies as now or hereinafter constituted").

45.     Thus, Kaneb, by virtue of its status as a successor-by-statutory-merger to a former Grace subsidiary, has rights under the liability policies that covered this subsidiary at the time it (allegedly) owned the pipeline. This includes policies effective from 1978 (the year in which Grace Petroleum Corporation internally transferred pipeline assets to a newly-created Grace subsidiary, Standard TransPipe Corporation) through 1993 (the year in which Kaneb acquired Standard TransPipe Corporation). since Standard TransPipe Corporation met the definition of named insured under the policies.  In addition. by reason of the alleged 1978 internal transfer of

pipeline assets and liabilities from Grace to Standard TransPipe, Kaneb (as successor-by-merger to Standard TransPipe) would qualify as a co-insured and/or an assignee of rights under policies issued to GEC and its predecessors prior to the 1978 internal transfer of pipeline assets.

46.    GEC will not be harmed if Kaneb is permitted to proceed against policies as to which it is a co-insured and/or an assignee of rights. As noted *supra*, the policies are not subject to aggregate limits, and therefore payment of claims will not reduce the amounts available to the debtor for payment of other claims.

47.    Further, to the extent Kaneb incurs defense costs in connection with the DOJ action or other actions relating to the Otis Pipeline, these defense costs are payable under the primary policies without reduction or erosion of the limits of liability of those policies. *See* Exh. K10 at GEC029638); Exhibit K11 at GEC029754-55; Exhibit K12 at GEC030195 (primary policies).  Further, because there are no "aggregate limits" applicable to the type of general liability claims that Kaneb would bring under these primary and excess/umbrella policies, payment of Kaneb's insurance claims relating to the Otis Pipeline release would not diminish the amount of insurance coverage available to the debtor with respect to other claims.

48.    Finally, and also as noted above, the *proceeds* of the insurance policies are not assets of the debtor estate because they would not be payable to the debtor but, instead, would be payable to a non-debtor third party.  In the case of defense costs, the proceeds would be payable to Kaneb for its attorney's fees and costs incurred in defending against the DOJ action.  In the case of indemnity, the policy proceeds would be payable to the Department of Justice in satisfaction of any settlement or judgment obtained against Kaneb in connection with the Otis Pipeline release.

**Other Factors**

49. Bankruptcy courts also regularly consider other factors to lift the stay to allow state court litigation to proceed. *See, e.g., In re Sonnax Indus.,* 907 F.2d 1280 (2d Cir. 1990); *Prindle v. Countryside Manor (In re Countryside Manor),* 188 B.R. 489 (Bankr. D. Conn. 1995); and *In re Curtis,* 40 B.R. 795 (Bankr. D. Utah 1984), discussed below:

- *Whether relief would result in partial or complete issue resolution.* Resolution of the State Court Appeal will completely resolve the issues that are the subject of those actions.

- *Lack of connection with or interference with bankruptcy case.* Resolution of the State Court Appeal will help, not hinder, the resolution of the bankruptcy case, since the State Court Appeal must ultimately be resolved by the Texas Appellate Court, under the *Rooker/Feldman* Doctrine, in any event.

- *Whether other proceeding involves debtor as fiduciary.* Not applicable.

- *Whether specialized tribunal with necessary expertise has been established to hear the cause of action.* As discussed above, because of the *Rooker/Feldman* doctrine, only the Texas Appellate Court may hear the State Court Appeal.

- *Whether debtor's insurer has assumed full defense responsibility.* Kaneb contends that insurance coverage for GEC is available, although it is unknown whether the insurer will assume full responsibility.

- *Whether the action primarily involves third parties.* To the extent that the State Court Appeal is being prosecuted to avoid the possible collateral estoppel effect of the State Court Judgment, the action primarily involves third parties.

- *Whether litigation in another forum would prejudice interests of other creditors.* Kaneb contends that the other creditors will not be prejudiced by the relief requested.

- *Whether judgment claim arising from other action is subject to equitable subordination.* Not applicable.

- *Whether movant's success in other proceeding would result in a judicial lien avoidable by debtor.* Not applicable.

- *Interests of judicial economy and expeditious and economical resolution of litigation.* As discussed above, because of the *Rooker/Feldman* Doctrine, only the Texas Appellate Court may hear the State Court Appeal, and if the action is remanded, it is much more efficient that the

state court and the state court attorneys deal with the matter in Texas. Further, there is no valid basis for further delay of the resolution of the underlying dispute.

- *Whether parties are ready for trial in other proceeding.* Kaneb is prepared to file its appellate briefs within the Texas Appellate Court deadlines. There is no valid reason why debtors' counsel could not meet such deadlines.

- *Impact of stay on parties and balance of harms.* This is discussed above.

### Prayer

WHEREFORE, pursuant to 11 U.S.C. § 362(d)(1), Movants Kaneb Pipe Line Operating Partnership. L.P. and Support Terminal Services. Inc. pray for relief from the automatic stay of 11 U.S.C. § 362(a) to allow all parties. courts, and court personnel to take all actions necessary and appropriate to litigate causes of actions and defenses, to otherwise prosecute and defend, and to administer (1) the State Court Appeal, including the filing of briefs, motions. argument, entering of opinions, orders, judgments. and mandates. and the prosecution of any post appellate proceedings, including proceedings before the Texas Supreme Court and any trial court proceedings on remand, and (2) any claims by Kaneb under the Policies (as previously defined) for insurance coverage relating to the Otis Pipeline release, and for all other relief to which Movants shows themselves justly entitled.

Dated: January 16, 2009

Respectfully submitted,

SMITH KATZENSTEIN & FURLOW LLP

Kathleen M. Miller (I.D. No. 2898)
Etta R. Wolfe (I.D. No. 4164)
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410 (Courier 19801)
Wilmington, De 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
Email: kmiller@skfdelaware.com
       erw@skfdelaware.com

Steve A. Peirce, Bar No. 15731200
FULBRIGHT & JAWORSKI L.L.P.
300 Convent Street, Suite 2200
San Antonio, TX 78205-3792
Telephone: (210) 224-5575
Facsimile: (210) 270-7205
Email: speirce@fulbright.com

Toby L. Gerber, Bar No. 07813700
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
Email: tgerber@fulbright.com

**ATTORNEYS FOR KANEB PIPE LINE
OPERATING PARTNERSHIP, L.P. AND
SUPPORT TERMINAL SERVICES, INC.**