# EXHIBIT K1

Plaintiff's Third Amended Original Petition

NO. 97-05135-J

| | | |
|---|---|---|
| GRACE ENERGY CORPORATION | § | IN THE DISTRICT COURT |
| vs. | § § § | |
| KANEB PIPE LINE OPERATING PARTNERSHIP, L.P.; SUPPORT TERMINAL SERVICES, INC.; and SUPPORT TERMINALS OPERATING PARTNERSHIP, L.P. | § § § § § | DALLAS COUNTY, TEXAS<br><br>191ST JUDICIAL DISTRICT |

FILED MAY 21 ... DIST... DALLAS CO., TEXAS DEPUTY

### PLAINTIFF'S THIRD AMENDED ORIGINAL PETITION

Grace Energy Corporation brings this declaratory judgment action against Kaneb Pipe Line Operating Partnership, L.P.; Support Terminal Services, Inc.; and Support Terminal Operating Partnership, L.P. (collectively "Defendants") and respectfully shows as follows:

### PARTIES

1. Grace Energy Corporation ("GEC") is a Delaware corporation with its principal place of business in Dallas, Texas.

2. Kaneb Pipe Line Operating Partnership, L.P. ("OLP") is a Delaware limited partnership. OLP has been served and has made an appearance in this case.

3. Support Terminal Services, Inc. ("STS") is a Delaware corporation. STS has been served and has made an appearance in this case.

4. Support Terminals Operating Partnership, L.P. ("STOP") is a Delaware limited partnership. STOP has been served and has made an appearance in this case.

### JURISDICTION AND VENUE

1. The Court has jurisdiction over Defendants (headquartered in Dallas County) and the subject matter (a contract performable in Dallas County and governed by Texas law). The amount in controversy is within the jurisdictional limits of this Court.

2. Venue is proper because: (a) all or part of the causes of action asserted herein arose in Dallas County, Texas; (b) that is where the contract between the parties was and is to be performed; and (c) Defendants' principal business offices are in Dallas County, Texas.

### SUMMARY OF DISPUTE

1. Federal officials have asserted that fuel has leaked from a pipe line in Massachusetts which used to be owned by the Standard Transmission division of Grace Petroleum Corporation ("GPC"), a corporation formerly owned by GEC. The federal government has given notice that it may seek response cost reimbursement. In addition, Massachusetts officials have asserted that past and potential pipe line leaks necessitated response action. GPC was sold to Samson Investment Company ("Samson"), which still owns GPC. Samson has made demand that GEC indemnify it for the state and federal government requirements to date and in the future, pursuant to the terms of the purchase and sale agreement between GEC and Samson.

2. The pipe line and associated liability in question were transferred in 1978 from GPC to another GEC entity, Standard Transpipe Corp., which was merged into a subsidiary of OLP in the transaction discussed in paragraph 15, below. If the pipe line and associated liability were not transferred to Standard Transpipe Corp., then they were transferred to Standard Transmission Division of W. R. Grace & Co.-Conn. and then to S.T.C. Corp., which was renamed Support Terminal Services, Inc. and which also was merged into a subsidiary of OLP in the transaction discussed in paragraph 13 below. Defendants refused to discuss these governmental requirements and refused to take responsibility for the response actions or response costs, thereby necessitating this action. GEC seeks a declaratory judgment as to Defendants' liability for the pipe line response costs, and GEC seeks to recover from Defendants for the time and money which has been spent responding to the governmental action pursuant to

Samson's indemnification demands. Defendants are liable for these response costs and GEC is not.

## FACTS

1. In 1965, Standard Transmission Corporation built a facility in the Upper Cape Cod area of Massachusetts to transport jet fuel and aviation gas to Otis Air Force Base. The pipe line is approximately 16.5 miles long and is referred to herein as the Otis Pipeline.

2. In 1971, Standard Transmission Corporation was merged into Cleary Petroleum Corporation ("Cleary"). After the merger, Standard Transmission's fuel terminal and supply business continued to be carried out by Standard Transmission, which was operated as a separate division of Cleary. In 1973, Cleary was acquired by a subsidiary of W. R. Grace & Co.-Conn., the owner of all the issued and outstanding stock of GEC, and continued to operate under the Cleary name. The Standard Transmission Division continued to be a separate division of Cleary, with separate headquarters, management, and business from the remainder of Cleary.

3. In 1973, before Cleary was merged with a Grace subsidiary, the Otis Pipeline was taken out of service due to reduced demand for fuel at Otis Air Force Base. In 1976, the terminal facility connected to the Otis Pipeline, but not the pipe line itself, was sold to a company called Northeast Petroleum Corporation of Cape Cod, Inc.

4. In 1978, Cleary changed its name to GPC. At approximately the same time, all of the Standard Transmission military pipeline assets and liabilities, including the Otis Pipeline, were transferred into Standard TransPipe Corp., a Delaware corporation, and all of the remaining assets and liabilities of the Standard Transmission Division were transferred from Cleary/GPC into the newly-created Standard Transmission Division of W. R. Grace & Co.-Conn. This "push down" was accomplished orally and was also memorialized in a memorandum to Felix Larkin

from Hal Logan dated July 24, 1978, a General Bill of Sale, and other written memoranda and agreements.

5.  The memoranda, agreements, and General Bill of Sale were not intended to be final, integrated writings of all intentions and agreements of the parties relating to the "push down" transaction. The documents do evidence an intent and agreement to transfer all Standard Transmission assets and liabilities, including the Otis Pipeline, out of Cleary/GPC and into the new entities, especially in light of the surrounding circumstances. In the event, however, that the Court is not convinced that the Otis Pipeline potential liabilities were transferred by virtue of these writings, then GEC pleads, in the alternative, that Standard TransPipe Corp. is estopped from claiming the Otis Pipeline was transferred to it and Standard TransPipe Corp. has made binding admission of its ownership of the Otis Pipeline assets and liabilities. Pleading further in the alternative, GEC alleges that if the Court is not convinced that the Otis Pipeline potential liabilities were transferred as a result of the aforementioned writings, and there is no estoppel or admission binding upon Defendants in view of Standard TransPipe Corp.'s acceptance of the Otis Pipeline and its tax benefits, then such writings are ambiguous and their meaning must be resolved by the trier of fact.

6.  The "push down" agreement was fully performed by the parties. Standard TransPipe Corp. assumed all liabilities and assets that ever related to military pipeline business and activities of Standard Transmission. With respect to the Otis Pipeline in particular, Standard TransPipe Corp. has specifically recognized and admitted its ownership of the Otis Pipeline and associated liabilities and potential liabilities after the 1978 "push down" and has taken federal tax depreciation deductions on the Otis Pipeline for a number of years after 1978 and continued to maintain the tax basis for that asset all the way through 1992, when Standard TransPipe Corp. was sold to Defendants. After the 1978 transfer, GPC transferred all tax basis in the Otis

Pipeline to Standard TransPipe Corp. and GPC ceased taking depreciation deductions with respect to the Otis Pipeline in reliance on Standard TransPipe Corp.'s assumption of this asset/liability. In 1980, the Standard Transmission Division of W. R. Grace & Co.-Conn. became S.T.C. Corp. The following year, 1981, S.T.C. Corp. changed its name to Support Terminal Services, Inc. The stock of Standard TransPipe Corp. and Support Terminal Services, Inc. was later transferred to Grace Energy Corporation, a wholly-owned subsidiary of W. R. Grace & Co.-Conn.

7.   On January 21, 1993, GEC sold the stock of its GPC subsidiary to Samson. On March 2, 1993, GEC sold the stock of Support Terminal Services, Inc. and Standard TransPipe Corp. to OLP by a series of forward mergers. The mergers were made pursuant to the STS Agreement And Plan of Merger ("Agreement") dated December 21, 1992, a true and correct copy of which, without the voluminous schedules, is attached hereto.

8.   After Samson purchased GPC, Samson changed the name of GPC to SNG Production Co. ("SNG"). In March 1994, the Air Force asserted there had been past fuel spills from the Otis Pipeline and terminated the 1965 Consent Agreement between it and Standard Transmission Corporation. The Consent Agreement was the agreement pursuant to which the Air Force gave permission to Standard Transmission to install and operate the Otis Pipeline. In July 1994, the Air Force filed of record a letter demanding removal of the Otis Pipeline pursuant to the terms of the 1965 Consent Agreement. On November 28, 1995, the Massachusetts Department of Environmental Protection sent a notice of responsibility ("DEP NOR") to SNG. The DEP NOR asserted that there were fuel leaks or threatened fuel leaks from the Otis Pipeline and mandated that SNG provide an Immediate Response Action Plan to evaluate the presence of product, perform on site discovery along the Otis Pipeline, and remove the Otis Pipeline. Samson referred the DEP NOR to GEC for response on SNG's behalf, and GEC undertook an

initial response. Subsequent to the DEP NOR, GEC has had to prepare an IRA Completion Report, a Partial Response Outcome Statement and perform other work pursuant to demands on SNG by the DEP. Time and resources have been spent responding to the DEP demands on SNG and SNG's indemnity demands on GEC, for which GEC seeks recovery from Defendants in this lawsuit.

9. Samson subsequently changed the name of SNG to Samson Hydrocarbons Company ("Samson Hydrocarbons"). On January 9, 1997, the United States Department of Justice ("DOJ") sent a letter to Samson Hydrocarbons asserting that the Defense Department had incurred expenses in responding to two fuel spills allegedly coming from the Otis Pipeline and inviting Samson Hydrocarbons to discuss its potential liability with DOJ. Samson again referred the correspondence to Grace. Without acknowledging Samson Hydrocarbons has any liability in connection with the claims made by DOJ, Grace has attempted to cooperate with Samson in providing such response and has conducted a review of the ownership of the Otis Pipeline.

10. Under the Agreement, OLP acquired the stock and all of the attendant liabilities of Standard TransPipe Corp. and Support Terminal Services, Inc. Because all of the assets and liabilities of Standard TransPipe Corp. and Support Terminal Services, Inc., including those relating to the Otis Pipeline, were transferred to OLP under the Agreement, the environmental liabilities being asserted by the Massachusetts DEP and the DOJ are the responsibility of the OLP entity that is the successor to Standard TransPipe Corp. or Support Terminal Services, Inc. STS acquired the Otis Pipeline liability and cross-conveyed it among OLP and STOP. The business of the original Standard Transmission Corporation is still being carried on today by the same personnel with the same management, in the same offices and facilities, in the same manner, and under the same "ST" trade name as it always was through the various different ownerships.

11. The Agreement contains indemnity provisions in Section 13.03 that require GEC to indemnify OLP and save and hold OLP harmless from and against damages and liabilities caused by or arising out of: (i) GEC's failure to perform or fulfill an agreement or covenant to be performed by it under the Agreement; or (ii) an inaccuracy in any representation or breach of any warranty of GEC in Article 6. GEC has not failed to perform or fulfill an agreement or covenant under the Agreement, and GEC did not make any inaccurate representation or breach any warranty under Article 6, with respect to the Otis Pipeline. Therefore GEC has no indemnity obligation to any of the Defendants with respect to the Otis Pipeline. The indemnity provisions of Section 13.03 as limited by the terms and conditions of Section 13.04 are the sole remedy for OLP for the breach, if any, of Article 6, or any other claim relating to the Otis Pipeline.

12. In April 1997, GEC discussed the foregoing facts with Defendants and their counsel. GEC offered to meet with Defendants to discuss the matter further and to attempt to reach agreement on the effect of the governmental claims under the Agreement. Defendants refused to acknowledge that they have any responsibility for the Otis Pipeline and refused to meet with GEC to discuss the matter further. There is, therefore, a present controversy between the parties concerning the meaning and effect of the Agreement which can only be resolved by a judgment of this Court declaring the rights, status, or other legal relations of the parties under the Agreement.

## CAUSES OF ACTION

1. GEC seeks a declaratory judgment that one or more of Defendants hold all present and future liabilities associated with the Otis Pipeline. The Otis Pipeline was pushed down to Standard TransPipe Corp. or Support Terminal Services, Inc. in the late 1970s. Even if it were found that the Otis Pipeline was not pushed down, the doctrines of estoppel, quasi-estoppel, ratification, binding admission, waiver, assumption of liability, assumption of the risk,

and acceptance of the benefits preclude Defendants from now denying their ownership of the Otis Pipeline and all liabilities or burdens associated with it. Under the Agreement and pursuant to the Texas Business Corporations Act, Defendants have stepped into the shoes of Standard TransPipe Corp. and Support Terminal Services, Inc. and hold all of their liabilities and burdens.

2. GEC seeks a further declaration that GEC has no indemnity obligation to any of Defendants with respect to the Otis Pipeline, contractual or otherwise, or, alternatively, that any applicable indemnity clause of the Agreement is unenforceable. Among other things, the indemnity obligations, if any, of GEC under Sections 13.03 and 13.04 and any applicable limitations of Section 13.02(c), if any, are unenforceable due to the express indemnity doctrine, repudiation, prior material breach, contractual limitation of remedies and damages, failure of consideration, statutory and contractual limitations, failure of conditions precedent, and unclean hands. If the Court finds a breach of Article 6 by GEC with respect to the Otis Pipeline, and compliance with the terms and conditions of the Article 13 by Defendants, then Defendants' sole remedy against GEC is the 40/60 cost-sharing specified in Sections 13.03 and 13.04 with a maximum exposure of $10 million for GEC. The limitations on GEC's cross-indemnity rights under Section 13.02(c) are not applicable in this case. If the Court finds that they are, then GEC pleads, in the alternative, that Defendants are precluded from asserting Section 13.02(c) limitations due to Defendants' repudiation and prior material breach of the Merger Agreement. If that does not preclude Defendants from relying on Section 13.02(c), then GEC pleads, in the alternative, that the manner in which Defendants are attempting to use Section 13.02(c) in this case creates an ambiguity and causes Section 13.02(c) to be in irreconcilable conflict with Sections 13.03 and 13.04. The Court should rule that the specific provisions of Sections 13.03 and 13.04 concerning the handling of environmental liabilities are controlling over Section 13.02(c) if there is any arguable applicability of Section 13.02(c). GEC is entitled to

recover all of its costs and reasonable and necessary attorneys fees incurred in connection with this action pursuant to Chapter 37.009 of the Civil Practice and Remedies Code.

3. GEC has expended in excess of $3.0 million to date responding to the DEP NOR and the DOJ letter. Defendants have failed and refused to cooperate in the handling of these claims. These response costs have been reasonable and have benefited Defendants. Defendants' refusal to acknowledge their liability for the Otis Pipeline and the response costs associated therewith is a violation of state law and repudiation and breach of Agreement. GEC is entitled to recover from Defendants all expenditures GEC has made in responding to the DEP NOR and the DOJ letter, together with costs of court, prejudgment interest, postjudgment interest, and attorneys fees and expenses. GEC is entitled to recover its attorneys fees under the Agreement and pursuant to Chapter 38 of the Civil Practice and Remedies Code. Presentment of GEC's claim has been made and all conditions precedent to the recovery of attorneys' fees have occurred.

## PRAYER

1. GEC prays for a declaratory judgment that one or more of Defendants hold the liabilities associated with the Otis Pipeline. GEC seeks a further declaration that GEC has no indemnity obligation to any of Defendants with respect to the Otis Pipeline, contractual or otherwise, or, alternatively, that any applicable indemnity clause of the Agreement is unenforceable. In the alternative, if the Court declares that GEC has indemnification liability, then it is subject to the conditions and limitations contained in Sections 13.03 and 13.04 of the Agreement. The Court should further declare, and enter judgment, that Defendants are jointly and severally liable to GEC for all of GEC's costs and reasonable and necessary attorneys fees, together with postjudgment interest. GEC seeks a judgment against OLP for all of GEC's actual damages, for breach of contract or in equity (such as *quantum meruit*), plus costs, prejudgment

interest, postjudgment interest, and reasonable and necessary attorneys fees. GEC prays for such other relief, at law or in equity, to which it may be entitled.

Respectfully submitted,

COWLES & THOMPSON, P.C.

By: /s/ John M. Pease
JOHN M. PEASE
State Bar No. 15698050

901 Main Street, Suite 4000
Dallas, Texas 75202
(214) 672-2000
(214) 672-2020 Fax

CRADY, JEWETT & McCULLEY, L.L.P.

Ross Spence
State Bar No. 18918400
909 Fannin, Suite 1400
Houston, Texas 77010-1006
(713) 739-7007
(713) 739-8403 Fax

ATTORNEYS FOR GRACE ENERGY CORPORATION

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on the following counsel of record in this cause of action on this the 21st day of May, 1999.

Ms. Ellen A. Presby
Mills ★ Presby and Associates, L.L.P.
5910 N. Central Expressway, Suite 900
Dallas, Texas 75206

/s/ John M. Pease
JOHN M. PEASE