# EXHIBIT K2

Defendants' Seventh Amended Original Answer, Verified Denials, Affirmative Defenses, and Counterclaims

ORIGINAL

Cause No. 97-05135-J

| | | |
|---|---|---|
| GRACE ENERGY CORPORATION | * | IN THE DISTRICT COURT OF |
| v. | * | DALLAS COUNTY, TEXAS |
| KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. ET AL. | * | 191ST JUDICIAL DISTRICT |

FILED MAY 4 2000
JIM HAMLIN TEXAS
DIST. CLERK, DALLAS CO. DEPUTY

## DEFENDANTS' SEVENTH AMENDED ORIGINAL ANSWER, VERIFIED DENIALS, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendants Kaneb Pipe Line Operating Partnership, L.P. ("Kaneb") and Support Terminal Services, Inc. ("STS") file this Defendants' Seventh Amended Original Answer, Verified Denials, Affirmative Defenses, and Counterclaims.[1]

### Answer

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Kaneb and STS (sometimes collectively referred to as "Defendants"), deny all allegations contained in Plaintiff's latest amended original petition and demand strict proof of each.

### Verified Denials

Pursuant to Rule 93(2), Defendants state that Kaneb and STOP are not liable in the capacity in which they have been sued.

### Affirmative Defenses

Pursuant to Rule 94, without waiving the foregoing general denial and by way of further answer, if such is necessary, Defendants would show this Honorable Court as follows:

---

[1] Pursuant to the Court's Order, Support Terminals Operating Partnership, L.P. ("STOP") is no longer a party to this case, the Court having ruled that STOP was improperly sued. To the extent that STOP remains a party, this pleading is filed on its behalf.

**DEFENDANTS' SEVENTH AMENDED ORIGINAL ANSWER, VERIFIED DENIALS, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS - PAGE 1**

005135

1. Plaintiff fails to state a cause of action against Defendants for which relief can be granted, in that the pipeline in question is neither, nor ever has been, owned or controlled by Defendants. The pipeline was not conveyed or transferred to Standard TransPipe Corporation, or any other company acquired by the Defendants in the STS Agreement and Plan of Merger, dated December 21, 1992 ("Agreement") or, alternatively, the pipeline was abandoned in 1976 or earlier, as Plaintiff has judicially admitted, and therefore Grace/Cleary Petroleum Corporation did not have title to the pipeline to convey it to Standard TransPipe Corporation, or any other entity, in 1978. Alternatively, the Otis pipeline and terminal facility was sold to Northeast Petroleum Corporation in 1976, and therefore Grace/Cleary Petroleum Corporation did not have title to the pipeline to convey it to Standard TransPipe Corporation or any other entity. Defendants owe no duty nor breached any legal duty to Plaintiff, its parent companies, subsidiaries, or other related entities with respect to the pipeline in question. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

2. Plaintiff's breach of contract claims are barred by the four-year statute of limitations, pursuant to § 16.004, Tex. Civ. Prac. & Rem. Code Ann. (Vernon 1990). Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

3. Defendants are not legally responsible for any liability for the pipeline in question, and Plaintiff's resulting damages, which are not admitted and are expressly denied, are the direct and proximate cause of the acts or omissions of Plaintiff and/or third parties or instrumentalities over which these Defendants have or had no control. Defendants specifically deny allegations that the pipeline and/or any liability associated therewith was ever purchased, conveyed, or otherwise transferred to Defendants, by or through any agreement, including but not limited to the Agreement. Both the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601-9675) (1995) and the Massachusetts Oil and Hazardous Material Release Prevention Act, Mass. Gen. Laws Ann. ch. 21E (West 1990) specifically prohibit any transfer of environmental liabilities. Defendants further affirmatively plead that the statute of frauds prohibits any oral

agreement to transfer the assets or assume the liabilities associated with the pipeline in 1978 when Plaintiff alleges that the assets and liabilities associated with the pipeline were transferred to Standard TransPipe Corporation. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

4. Plaintiff has failed to mitigate its damages, if any. Any costs or damages related to the investigation and/or clean up of the pipeline are the result of inappropriate and/or improper pipeline investigative and/or remediation efforts. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

5. Plaintiff is estopped (promissorily, quasi-, and by contract) from recovering for any liabilities associated with the pipeline in question from Defendants, including costs and attorneys' fees. Plaintiff represented in the Agreement that the companies sold to Defendants were in compliance with, and had no liability under, any environmental laws and standards. Plaintiff further represented that the pipeline was previously owned, owned by a third-party and abandoned, and cannot now take a different position. Defendants relied upon Plaintiff's representations. Plaintiff, years after the agreement, took actions consistent with ownership, and exercised dominion and control over the Otis pipeline and its liabilities by, among other things, giving authority to others to take action with respect to the pipeline and its liabilities. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

6. Plaintiff's claims are barred by laches because Plaintiff unreasonably delayed and made a stale demand upon Defendants to assume responsibility for the environmental investigation and clean up of the pipeline. To allow Plaintiff to pursue its claims against Defendants at this late date, and in light of the circumstances outlined herein, would result in unconscionable prejudice to Defendants. Plaintiff delayed in asserting allegations that Defendants allegedly owned the Otis pipeline and allegedly held its liabilities after Plaintiff received the Massachusetts and United States Department of Justice environmental inquiries concerning the pipeline in 1994, 1995 and 1997. Also, Plaintiff agreed to and paid for the environmental investigation and/or

clean up on behalf of Samson/SNG Production Company for over a year and a half; and Plaintiff's agents, employees, representatives and environmental investigation and remediation experts, including but not limited to Mary Ellen Johns, Susan Cooke and Woodard & Curran, stated in correspondence and formal reports for an extended period of time that the pipeline was owned by Samson/SNG Production Company.

The unconscionable prejudice which would be suffered by Defendants if Plaintiff were allowed to pursue its claims at this late date include, but are not limited to: (a) loss of the opportunity to enforce various representations, warranties and covenants in the Agreement; the time period for enforcement of such representations, warranties and covenants having expired due to Plaintiff's delay in asserting that the Otis pipeline was included in the Agreement; and (b) loss of the opportunity to investigate and/or remediate the pipeline more efficiently and less expensively than have Plaintiff and its agents, assuming but expressly denying that Defendants, currently or ever, owned the pipeline or held its liabilities. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

7.  Plaintiff's claims are barred by waiver for the same reasons as those asserted in the immediately preceding paragraph.

8.  Defendants have no successor liability for the acts of any party relating to the pipeline in question, and they assumed no liabilities of any party relating to the pipeline. Defendants are not successors of Cleary/Grace Petroleum Corporation and therefore hold no environmental liabilities of either entity or any related entity. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

9.  Defendants are excused from performance of any executory obligations of the Agreement, including but not limited to indemnification of Plaintiff, because Plaintiff committed material breaches of the Agreement, including but not limited to those expressed in Defendants' breach of contract counterclaim below. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

10.     Plaintiff's initial breach of the Agreement precludes further performance by Defendants, and constitutes a failure of consideration. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

11.     Defendants are entitled to reformation of the Agreement, in the event the Court determines that the Agreement conveyed the Otis pipeline and any associated liabilities to one or more Defendants, because: (a) a prior enforceable agreement concerning the sale and merger of various companies by Plaintiff to Defendants was reached prior to reducing the agreement to writing; and/or (b) there was a mutual mistake among the parties concerning whether the Otis pipeline was part of the Agreement; or, in the alternative, a unilateral mistake by Defendants coupled with fraud committed by Plaintiff, as described more fully below in Defendants' counterclaims, or other inequitable conduct on the part of Plaintiff (including but not limited to the fact that Plaintiff failed to disclose the existence of the Otis pipeline as an asset being conveyed as part of the Agreement; Plaintiff represented the pipeline was "previously owned" and abandoned; that any associated liability was not disclosed on Schedule 6.11 to the Agreement; and Plaintiff represented that the "previously owned" asset and any liabilities were not part of the Agreement). Defendants are entitled to reformation of the Agreement to insert specific language to the effect that the pipeline was and is not part of the Agreement. In the alternative, Defendants are entitled to a reformation of Article 13 to reflect that Plaintiff must fully indemnify Defendants for any costs and/or liability associated with the pipeline. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

12.     In the event liability is found to exist against Defendants, Defendants are entitled to indemnification from Plaintiff pursuant to the terms of the Agreement. Plaintiff is not entitled to indemnification from Defendants. The Otis pipeline environmental liabilities were not held by the companies affected by the Agreement, and thus Defendants have no indemnity obligation to Plaintiff. Further, even if the Otis pipeline or its liabilities were conveyed in 1978, which Defendants do not admit and expressly deny, neither the 1978 draft bill of sale, the 1978 Larkin memoranda, nor any other document includes any language or agreement to indemnify for future

**DEFENDANTS' SEVENTH AMENDED ORIGINAL ANSWER, VERIFIED DENIALS,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS - PAGE 5**

contingent environmental liabilities. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

13. Mutual and unilateral mistake are applicable to the facts of this case. Specifically, Plaintiff represented to Defendants that the Otis pipeline was a "previously owned" and abandoned facility or asset, and that it was owned by a third-party. Moreover, there was no meeting of the minds of the parties that the Otis pipeline or its liabilities would be included in the Agreement. The fact that it was left off applicable Agreement schedules and no reference was made to it in the books, records, and other financial data and files made available to Defendants in connection with the Agreement shows that it was not intended to be part of the Agreement and that the parties agreed the Otis pipeline and liabilities would not be part of the Agreement (or, alternatively, that it was part of Plaintiff's deception). Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

14. The discovery rule and fraudulent concealment are applicable in response to Plaintiff's statute of limitations affirmative defense. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

15. Defendants assert that the Otis pipeline was abandoned in 1976 or earlier, as a result of the absence of any pipeline business since 1973 and the sale of the Otis terminal (including the pipeline pumps) in 1976. With such sale, the Otis pipeline could no longer physically receive petroleum products, nor have the pumping power to move them. As a result of the abandonment of the pipeline in 1976 or earlier, Grace/Cleary Petroleum Corporation did not have title to or ownership rights in the pipeline to enable it to transfer the pipeline to Standard TransPipe Corporation or any other entity in 1978 or thereafter. Moreover, once Plaintiff, on behalf of Samson/SNG Production Company, began to exercise dominion and control over the pipeline by actions, including but not limited to the segmentation of the pipeline and other investigative/remediation conduct, Plaintiff acquired title to and possession of the pipeline and any attendant liabilities. Plaintiff, years after the Agreement, took actions consistent with ownership, and exercised dominion and control over the Otis pipeline,

by, among other things, giving authority to others to take action with respect to the pipeline and its liabilities. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

16. Plaintiff assumed the risk and associated liabilities of the pipeline and is now estopped from taking a position inconsistent with its prior assumption. Plaintiff assumed the risk and associated liabilities of the pipeline by exercising dominion and control over the pipeline in Plaintiff's investigation and remediation of the pipeline since December 1995. Plaintiff is estopped from denying ownership of the pipeline for the same reasons stated herein. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

17. Plaintiff accepted the benefits of the Agreement and cannot now, among other things, attempt to change the terms and effect of the Agreement solely to Plaintiff's benefit. The benefits of the Agreement are the $63,847,801.96 paid by Defendants to Plaintiff for the companies purchased in the Agreement. The companies did not include the Otis pipeline. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

## Counterclaims

1. **Breach of Contract**

In the unlikely event that it is determined that the pipeline and/or any associated liability was conveyed or transferred to one or more of the companies acquired by Defendants, pursuant to the terms of the Agreement, Defendants contend that Plaintiff committed various breaches of the Agreement. The breaches include, but are not limited to, breach of Section 6.11 of the Agreement. That section was breached by: (1) the existence of environmental law liability with respect to the Otis pipeline at the time of the execution of the Agreement; and (2) Plaintiff's failure to disclose its knowledge of the environmental liabilities associated with the Otis pipeline at the time of the execution of the Agreement.

Other breaches of the Agreement include, but are not limited to: (1) Plaintiff's breach of Section 6.03 of the Agreement, because ". . . the execution and delivery by each of GEC and the Corporations of this

Agreement . . . [should have] require[d] it to . . . make . . . [a] filing with, any . . . Governmental Authority . . . [i.e., filing the Otis pipeline easements and rights of way in the name of Standard TransPipe Corporation or whatever entity GEC contends received the Otis pipeline, in the Sandwich, Barnstable County, Massachusetts Deed Records];" (2) Plaintiff's breach of Section 9.01 of the Agreement to the extent that, although Plaintiff may have allowed Defendants access to certain books, records, relevant purchasing and other financial data and files of Plaintiff, none of that information revealed that the Otis pipeline and/or any associated liability were part of the transaction contemplated in the Agreement (and in fact revealed only that they were not part of the transaction), and all of the oral representations were that the Otis pipeline and liability were not part of the deal, therefore rendering such access meaningless and effectively useless with respect to assessing the value and any associated liability of the Otis pipeline; (3) Plaintiff's breach of Section 9.05 of the Agreement by failing to disclose that the Otis pipeline and its known environmental liability were part of the Agreement - this constituted a "Material Adverse Effect," as defined in the Agreement, for which Plaintiff was contractually obligated to advise Defendants but failed to do so; (4) Plaintiff's breach of Section 6.06 of the Agreement because GEC executives were obligated to remove the abandoned pipeline and were aware of the Town of Sandwich and National Guard investigations and possible threatened actions which have extended beyond violations of environmental laws; (5) Plaintiff's failure to list the Otis pipeline real property, i.e., rights of way and easements, in Exhibit A, under Section 6.18 of the Agreement, which was Plaintiff's list of the real property, including pipeline rights of way and easements owned or leased by the corporations being sold to Defendants; (6) Plaintiff's failure to disclose the existence of the Otis pipeline and liabilities in Schedule 5.02 of the Agreement, the schedule of consolidated balance sheets for the entities acquired; (7) Plaintiff's breach of Section 6.09 by failing to disclose that the Consent Agreement between Standard Transmission Corporation and the U. S. Department of the Air Force covering part of the Otis pipeline rights of way contains a currently effective provision for indemnification by the Corporation for environmental matters; (8) Plaintiff's failure to disclose the existence of any liabilities associated with the Otis pipeline as an exception to the representations

**DEFENDANTS' SEVENTH AMENDED ORIGINAL ANSWER, VERIFIED DENIALS,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS - PAGE 8**

005142

and warranties of Section 6.14 that the corporations being sold to Defendants had no liability except as specifically disclosed, the schedule of liabilities which were required to be reflected in the notes to the consolidated balance sheet; and (9) Plaintiff's failure to disclose the existence of the Otis pipeline in Schedule 6.22 to the Agreement, the schedule of personal property owned by the corporations being sold to Defendants.

Defendants have suffered damages (including but not limited to the attorneys' fees and expenses incurred, and which continue to occur and will occur through trial and any appeals) and have been exposed to liability (contingent environmental liability at this point, which may become an actual liability depending upon court or administrative rulings) as a proximate result of Plaintiff's breaches, discussed above. As the full extent of the environmental liability associated with the pipeline is currently unknown, Defendants cannot state the maximum amount of damages sought from Plaintiff in the unlikely event that the Court rules that Plaintiff transferred the pipeline and its associated liabilities to a company acquired by Defendants pursuant to the terms of the Agreement. Defendants seek from Plaintiff indemnification, or contribution in the alternative, pursuant to both common law and Article 13 of the Agreement, for any associated liability and clean up costs related to the pipeline, to date and in the future, and recovery of their attorneys' fees incurred in prosecuting this counterclaim for breach of contract, as allowed by Texas Civil Practice and Remedies Code Annotated, Section 38.001. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

2. **Fraud - Intentional Misrepresentation**

Defendants contend that Plaintiff and its representatives made material misrepresentations, including but not limited to those referenced in the immediately preceding paragraph, concerning the Agreement. The misrepresentations included, but were not limited to, the environmental representations and warranties contained in Section 6.11 of the Agreement, Plaintiff's references to the Otis pipeline as "previously owned," owned by a third-party and "abandoned," and Plaintiff's representation that neither the pipeline nor any liabilities were part of the Agreement. Assuming for pleading purposes only, and without admitting that

Defendants acquired the Otis pipeline and any of its attendant liabilities in the Agreement, Plaintiff represented that the Otis pipeline did not have environmental liabilities. Specifically, Plaintiff represented in Section 6.11 of the Agreement that, with the exception of the properties and facilities listed in Schedule 6.11 of the Agreement, none of the property or facilities conveyed from Plaintiff to Defendants in the Agreement had any environmental liability. The Otis pipeline had environmental liability based upon leaks in the pipeline which occurred in the early 1970's. The misrepresentations were made with knowledge of their falsity or made recklessly without any knowledge of the truth and as a positive assertion. The misrepresentations were made with the intention that they be acted upon by one or more Defendants and Defendants acted in reliance on the misrepresentations and thereby proximately suffered injury for which Defendants now sue. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

3.     **Fraudulent Inducement/Concealment or Failure to Disclose**

Defendants contend that Plaintiff, acting through its representatives, concealed or failed to disclose material facts, including but not limited to those referenced in paragraphs 1 and 2 above, addressing Defendants' breach of contract and fraud counterclaims, and Plaintiff's representations to Defendants during negotiations of the Agreement that the Otis pipeline was "previously owned," a "third-party facility," "abandoned," and not part of the Agreement. Such material facts were within the knowledge of Plaintiff and its representatives. Defendants further contend that Plaintiff, acting through its representatives, knew that Defendants and their representatives were ignorant of certain material facts, and did not have an equal opportunity to discover the truth concerning those facts. Plaintiff, acting through its representatives, intended to induce Defendants into executing the Agreement by concealing or failing to disclose various material facts, and Defendants suffered injury as a result of acting without knowledge of the undisclosed material facts for which Defendants seek recovery from Plaintiff. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

4.  **Statutory Fraud - Factual Misrepresentations and False Promises**

Pursuant to Texas Business and Commerce Code Annotated, Section 27.01(a)(1), Defendants contend that Plaintiff, acting through its representatives, made false representations of a past or existing material fact or facts, including but not limited to those referenced in paragraphs 1-3 above, addressing Defendants' breach of contract and fraud counterclaims, which material facts were within the knowledge of Plaintiff and its representatives. Defendants further contend that Plaintiff, acting through its representatives, made the false representation(s) to Defendants and their representatives for the purpose of inducing Defendants to enter into the Agreement. Defendants relied upon the false representation(s) of Plaintiff and its representatives by entering into the Agreement and suffered injury as a proximate result thereof. To the extent that Plaintiff is now taking the position that the Otis pipeline or liability was part of the assets or liability transferred by the Merger Agreement, Plaintiff had actual awareness of the falsity of the representation(s).

Defendants seek their actual damages, exemplary damages, attorneys' fees, expert witness fees, costs for copies of depositions and costs of court from Plaintiff as allowed by Section 27.01(e) of the Texas Business and Commerce Code. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

5.  **Negligent Misrepresentation**

Defendants contend that Plaintiff, acting through its representatives, made representation(s), including but not limited to those referenced in paragraphs 1-3, above, addressing Defendants' breach of contract and fraud counterclaims, in the course of Plaintiff's business and in conjunction with the Agreement, in which Plaintiff had a pecuniary interest. The representation(s) supplied false information for the guidance of Defendants, and their representatives, in their business. Moreover, Plaintiff, acting through its representatives, did not exercise reasonable care or competence in obtaining or communicating the information to Defendants and their representatives, resulting in injuries proximately resulting from the above referenced representation(s)

DEFENDANTS' SEVENTH AMENDED ORIGINAL ANSWER, VERIFIED DENIALS,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS - PAGE 11

for which Defendants seek recovery from Plaintiff. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

6. **Reformation of Contract**

Defendants are entitled to reformation of the Agreement, in the event the Court determines that the Agreement conveyed the pipeline and any associated liabilities to one or more Defendants, because: (a) a prior enforceable agreement concerning the sale and merger of various companies by Plaintiff to Defendants was reached prior to reducing the agreement to writing; (b) the prior agreement was enforceable; (c) there was a mutual mistake among the parties concerning whether the Otis pipeline or liabilities were part of the Agreement; or, in the alternative, a unilateral mistake by Defendants coupled with fraud committed by Plaintiff, as described more fully above in Defendants' counterclaims, or other inequitable conduct on the part of Plaintiff (including but not limited to the fact that Plaintiff failed to disclose the existence of the pipeline as an asset or liability being conveyed as part of the Agreement; that Plaintiff represented the pipeline was "previously owned," owned by a third-party, and abandoned; that Plaintiff represented neither the pipeline nor any liabilities were part of the Agreement; and that Plaintiff did not disclose any Otis pipeline liabilities on Schedule 6.11 to the Agreement). Defendants are entitled to reformation of the Agreement to insert specific language to confirm that neither the pipeline nor its liabilities were or are part of the Agreement. In the alternative, Defendants are entitled to a reformation of Article 13 to reflect that Plaintiff must fully indemnify Defendants for any environmental-related costs and/or liability associated with the pipeline. Defendants also refer Plaintiff to Ed Doherty and Fred Johnson's previous deposition testimony on this issue.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiff take nothing against them and that Defendants recover their attorneys' fees and costs. In the alternative, and in the event the finder of fact determines that the pipeline and/or its liability was transferred or conveyed to one or more of Defendants, Defendants pray that they prevail upon their counterclaim(s) and be awarded the relief available to a prevailing party under such counterclaim(s), including but not limited to (1) actual and exemplary damages, attorneys'

fees, expert witness fees, costs for copies of depositions and court costs recoverable for breach of Section 27.01 of the Texas Business and Commerce Code Annotated; (2) attorneys' fees and court costs pursuant to Texas Civil Practice and Remedies Code Annotated, Section 38.001; (3) reformation of the Agreement to confirm that the Otis pipeline assets and liabilities were not conveyed to Defendants, or (4) a reformation of the remedies available under the Agreement. Defendants further pray for such other and further relief to which they may show themselves justly entitled.

        Respectfully submitted,

        _____
        Ellen A. Presby
        State Bar No. 16249600

        John M. Frick
        State Bar No. 07455200

        Lisa A. Schumacher
        State Bar No. 17851450

        Jonathan M. Spigel
        State Bar No. 18934760

        MILLS ✯ PRESBY AND ASSOCIATES, L.L.P.
        5910 N. Central Expressway, Suite 900
        Dallas, Texas 75206-5141
        Telephone: (214) 265-9265
        Facsimile: (214) 363-3167

        ATTORNEYS FOR DEFENDANTS
        KANEB PIPE LINE OPERATING PARTNERSHIP, L.P.;
        AND SUPPORT TERMINAL SERVICES, INC.

## VERIFICATION

THE STATE OF TEXAS       §
                         §
COUNTY OF DALLAS         §

BEFORE ME, the undersigned authority, on this day personally appeared Edward D. Doherty, who, after being duly sworn by me, upon his oath stated the following:

"I am the Chairman and Chief Executive Officer for Kaneb Pipe Line Company, the general partner of defendant Kaneb Pipe Line Operating Partnership, L.P. I have personal knowledge of the facts in this verification, and they are true and correct. In my capacity as Chairman and Chief Executive Officer for Kaneb Pipe Line Company, the general partner of defendant Kaneb Pipe Line Operating Partnership, L.P., I have knowledge of the 1992 STS Agreement and Plan of Merger. I am knowledgeable of the organizational structure of Kaneb Pipe Line Operating Partnership, L.P. Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Operating Partnership, L.P. are not liable in the capacity in which they have been sued. No Grace entity merged with either of the two partnerships."

KANEB PIPE LINE COMPANY

_____
Edward D. Doherty
Chairman and Chief Executive Officer

SUBSCRIBED AND SWORN TO before me on this 4th day of May, 2000.

_____
Notary Public, State of Texas


SHARON K. MCCURRY
MY COMMISSION EXPIRES
April 11, 2002

DEFENDANTS' SEVENTH AMENDED ORIGINAL ANSWER, VERIFIED DENIALS,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS - PAGE 14

005148

005149

## CERTIFICATE OF SERVICE

On the 4th day of May, 2000, a true and correct copy of the foregoing Defendants' Seventh Amended Original Answer, Verified Denials, Affirmative Defenses, and Counterclaims was served via facsimile on the following attorneys of record:

John M. Pease
**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 4000
Dallas, Texas 75202

Ross Spence
**CRADY, JEWETT & MCCULLEY, L.L.P.**
909 Fannin Street, Suite 1400
Houston, Texas 77010-1006

_____
Ellen A. Presby

\1005.gra

DEFENDANTS' SEVENTH AMENDED ORIGINAL ANSWER, VERIFIED DENIALS,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS - PAGE 15