# EXHIBIT K18

VOL. VI   TAB 2

**EXCESS THIRD PARTY LIABILITY POLICY**

00478

**CNA** CONTINENTAL NATIONAL AMERICAN GROUP

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW:
(A stock insurance company, herein called the company)
Continental Center/310 S. Michigan Ave./Chicago, Ill. 60604

### DECLARATIONS

| AGENCY NO. | POLICY NUMBER |
|---|---|
| 035975 | RDX 033  915 66 45 |

- ☒ CONTINENTAL CASUALTY COMPANY
- ☐ NATIONAL FIRE INSURANCE COMPANY of Hartford
- ☐ AMERICAN CASUALTY COMPANY of Reading, Pa.
- ☐ TRANSPORTATION INSURANCE COMPANY
- ☐ TRANSCONTINENTAL INSURANCE COMPANY
- ☐ VALLEY FORGE INSURANCE COMPANY

NAMED INSURED & ADDRESS: (Number & Street, Town, County & State)

W.R. Grace & Co., and as
Per Endorsement No. 1
1114 Avenue of the Americas
New York, New York 10036

2. Policy Period: (hereinafter called "this policy period")   12-01 A.M. STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN.
   6/30/74   To: 6/30/77

3. Schedule of Underlying Insurance: Insurer and Policy Number

   **Unigard Mutual Ins. Co.   $10,000,000**

4. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COLUMN I | | IN EXCESS OF | COLUMN II | COLUMN III | |
|---|---|---|---|---|---|
| Company Limits | | | Underlying Limits | Total Limits | Coverage |
| $ | Each Person | $ | | $ | A. Bodily Injury Automobile |
| $ | Each Occurrence | $ | | $ | |
| $ | Each Person | $ | | $ | B. Bodily Injury Except Automobile |
| $ | Each Occurrence | $ | | $ | |
| $ | Aggregate | $ | | $ | |
| $ | Each Occurrence | $ | | $ | C. Property Damage Automobile |
| $ | Each Occurrence | $ | | $ | D. Property Damage Except Automobile |
| $ | Aggregate | $ | | $ | |
| $ | Each Occurrence | $ | | $ | E. Combined Single Limit Bodily Injury and Property Damage |
| $ | Aggregate | $ | | $ | |
| $10,000,000 each occurrence | | $10,000,000 | | $20,000,000 | F. Other |
| $10,000,000 aggregate | | $10,000,000 | | $20,000,000 | |

5. Premium Computation

| Premium Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| Flat Charge | - | - | 90,000. |

Deposit Premium: $ 90,000 on effective date of policy
Minimum Premium: $ — Annual
$ — Policy term

Audit Period: None

Forms numbers of Endorsement attached at issuance include: G-40264-E

Countersigned by _C.J. Anderson_
Licensed Resident Agent

G-40219-A

GEC 024736

WRG Policies
03202

00479

The company agrees with the named insured, in consideration of the payment of the premium and subject to the provisions of this policy:

## PART I — INSURING AGREEMENTS

**1. Excess Liability Indemnity**

To indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance inserted in column II of item 4 in the declarations; provided that this policy shall apply only to those coverages for which a limit of liability is inserted in column II provided further that the limit of the company's liability under this policy shall not exceed the applicable amount inserted in column I.

The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

If the applicable coverage in the immediate underlying policy insures accidents rather than occurrences, then "accident" is substituted for "occurrence" in the applicable coverage of this policy.

**2. Policy Period; Termination of Underlying Insurance**

This policy applies to injury or destruction taking place during this policy period, provided that when the immediate underlying policy insures occurrences taking place during its policy period, instead of injury or destruction taking place during its policy period, then this policy likewise applies to occurrences taking place during this policy period and "occurrence" is substituted for "injury or destruction" in Part III of this policy.

If the immediate underlying policy is canceled, this policy likewise is canceled effective on the same date at the same time and without notice to the insureds. If the immediate underlying policy otherwise ceases to apply (for reasons other than the exhaustion of an aggregate limit of liability), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the insureds.

## PART II — DEFINITIONS

**1. Immediate Underlying Policy**

"Immediate underlying policy" means the policy of the underlying insurance which provides the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this policy.

**2. Loss**

"Loss" means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages, and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses nor costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses.

**3. Underlying Insurance**

"Underlying insurance" means the insurance policies listed in item 3 in the declarations and includes any renewal or replacement of such policies.

## PART III
### PROVISIONS GOVERNING THE APPLICATION OF THE AGGREGATE LIMITS OF LIABILITY

**1. Reduction of the Aggregate**

This provision applies only if this policy contains an aggregate limit of liability which applies to the occurrence.

If the "each occurrence" or "each person" limit of liability of the underlying insurance is less than as stated in column II in item 4 in the declarations because the aggregate limits of liability of the underlying insurance have been reduced, this policy becomes excess of such reduced limit of liability if such reduction is solely the result of injury or destruction occurring after the inception date of this policy and not before. Nothing contained herein shall operate to increase the limit of the company's liability.

**2. Application of the Aggregate to Separate Projects**

To the extent that the aggregate limits of liability of the immediate underlying policy apply separately to various operations, projects, locations, hazards or types of injury, the aggregate limits of liability of this policy likewise apply separately to such operations, projects, locations, hazards or types of injury.

**3. Application of the Aggregate to Periods of Time**

The aggregate limits of liability of this policy apply separately to each aggregate period. The first aggregate period of this policy begins on the effective date of this policy and ends on the next termination date of the aggregate period of the immediate underlying policy. Any succeeding aggregate period of this policy is concurrent with the aggregate period of the immediate underlying policy unless it is the final aggregate period. The final aggregate period of this policy begins on the termination date of the aggregate period of the immediate underlying policy immediately preceding the expiration date of this policy and ends on the expiration date of this policy.

This paragraph does not apply if the expiration date of this policy and the expiration date or anniversary date of the immediate underlying policy are identical. If this policy is a renewal of a similar policy underwritten by this company, the applicable aggregate limit of liability of this policy for the first period shall be reduced by any amounts paid or payable on account of injury or destruction taking place during the final aggregate period of the policy renewed. The final aggregate period of the policy renewed shall be determined in the same manner as the final aggregate period for this policy.

## PART IV — NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those in the immediate underlying policy.

Except with respect to automobiles registered in the State of New York, this policy does not apply:

A. to bodily injury or property damage

(1) with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

WRG Policies
03203

GEC 024737

00430.351

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

## PART V — CONDITIONS

**1. Underlying Insurance — Changes During this Policy Period**

Any change in coverage in the underlying insurance shall be promptly reported to the company and the insured shall, upon request, furnish the company with copies of such changes.

Any change in the premium for the underlying insurance shall be promptly reported to the company and the premium for this policy, subject to the minimum premium, may be adjusted in accordance with the manuals of the company then in effect.

**2. Notice of Loss; Participation in Defense by the Company**

Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

**3. Action Against Company**

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy.

Any person or organization or the legal representative thereof who has secured a judgment against the insured shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability. Any payments by the company under this condition 3 shall discharge the company's obligation to the insured to the extent of such payments.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**4. Subrogation and Other Recoveries**

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after the occurrence to prejudice such rights.

Because this policy affords excess coverage, the insured's right of recovery cannot always be exclusively subrogated to the company. It is, therefore, agreed that the company shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow in the principle that any interest, including the insured, that shall have paid an amount over and above any payment under this policy shall first be reimbursed up to the amount paid by such interest; the company shall then be reimbursed out of any balance then remaining up to the amounts paid as the result of loss covered under this policy; and lastly, the interests, including the insured, of whom this coverage is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amounts shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

**5. Other Insurance**

This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy.

If, with respect to a loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects such loss; provided, that if the applicable limit of liability of this policy is greater than the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the applicable limit of liability afforded by this policy.

**6. Cancellation**

This policy may be cancelled by the named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in the declarations written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium or minimum premium, whichever is greater, shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**7. First Named Insured**

The insured first named in item 1 in the declarations is authorized to act on behalf of all named insureds and other insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy. The insured first named in item 1 in the declarations is responsible for the payment of all premiums but the other named insureds jointly and severally agree to make such premium payments in full if the insured first named in item 1 fails to pay the amount due within thirty days after the company gives a written demand for payment to the insured first named in item 1.

In witness whereof, the company has caused this policy to be signed by its president and a secretary at Chicago, Illinois, but the policy shall not become valid until countersigned on the declarations page by a duly authorized representative of the company.

Continental Casualty Company
Transportation Insurance Company

National Fire Insurance Company of Hartford
Transcontinental Insurance Company

American Casualty Company of Reading, Pa.
Valley Forge Insurance Company

*[signatures]*

GEC 024738

WRG Policies
03204

00483

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

☐
☐
☐
☐

## Named Insured

It is agreed that the Named Insured is as follows: W.R. Grace & Co. and/or Subsidiary organizations, associated affiliated companies, owned, controlled and/or managed companies as now or hereinafter constituted.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| ITEM NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
|---|---|---|---|
| 1 | RDX 9156645 | W.R. Grace & Co. Etal | 6/30/74 |

CNA insurance     7/12/74 crz

Blank Endorsement
G-21821-B    GEC 024741    Countersigned by _____

PRODUCER COPY

WRG Policies
03207

VOL. VII TAB 10

09478

**EXCESS THIRD PARTY LIABILITY POLICY**

CNA Continental National American Group

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW:
(A stock insurance company, herein called the company)
Continental Center/310 S. Michigan Ave./Chicago, IL 60604

### 1. DECLARATIONS

| AGENCY NO. | POLICY NUMBER |
|---|---|
| 035975 | RDX 033 915 66 45 |

**NAMED INSURED & ADDRESS:** (Number & Street, Town, County & State)

W.R. Grace & Co., and as
Per Endorsement No. 1
1114 Avenue of the Americas
New York, New York 10036

- [x] **CONTINENTAL CASUALTY COMPANY**
- [ ] **NATIONAL FIRE INSURANCE COMPANY** of Hartford
- [ ] **AMERICAN CASUALTY COMPANY** of Reading, Pa.
- [ ] **TRANSPORTATION INSURANCE COMPANY**
- [ ] **TRANSCONTINENTAL INSURANCE COMPANY**
- [ ] **VALLEY FORGE INSURANCE COMPANY**

### 2. Policy Period: (hereinafter called "this policy period")

6/30/74 To: 6/30/77    12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN.

### 3. Schedule of Underlying Insurance: Insurer and Policy Number

Unigard Mutual Ins. Co.    $10,000,000

### 4. Limits of Liability

The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COLUMN I Company Limits | IN EXCESS OF | COLUMN II Underlying Limits | COLUMN III Total Limits | Coverage |
|---|---|---|---|---|
| $ Each Person | | $ | $ | A. Bodily Injury Automobile |
| $ Each Occurrence | | $ | $ | |
| $ Each Person | | $ | $ | B. Bodily Injury Except Automobile |
| $ Each Occurrence | | $ | $ | |
| $ Aggregate | | $ | $ | |
| $ Each Occurrence | | $ | $ | C. Property Damage Automobile |
| $ Each Occurrence | | $ | $ | D. Property Damage Except Automobile |
| $ Aggregate | | $ | $ | |
| $ Each Occurrence | | $ | $ | E. Combined Single Limit Bodily Injury and Property Damage |
| $ Aggregate | | $ | $ | |
| $10,000,000 each occurrence $10,000,000 aggregate | | $10,000,000 $10,000,000 | $20,000,000 $20,000,000 | F. Other |

### 5. Premium Computation

| Premium Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| Flat Charge | - | - | 90,000. |

Deposit Premium: $90,000 on effective date of policy

Minimum Premium: $ — Annual
$ — Policy term

Audit Period: None

Forms numbers of Endorsement attached at issuance include: G-40284-E

Countersigned by: _C.A. Anderson_
Licensed Resident Agent

G-40219-A

GEC 025072

WRG Policies 03530

00479

The company agrees with the named insured, in consideration of the payment of the premium and subject to the provisions of this policy:

## PART I — INSURING AGREEMENTS

**1. Excess Liability Indemnity**

To indemnify the Insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance inserted in column II of item 3 in the declarations; provided that this policy shall apply only to those coverages for which a limit of liability is inserted in column I; provided further that the limit of the company's liability under this policy shall not exceed the applicable amount inserted in column I.

The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

If the applicable coverage in the immediate underlying policy insures accidents rather than occurrences, then "accident" is substituted for "occurrence" in the applicable coverage of this policy.

**2. Policy Period: Termination of Underlying Insurance**

This policy applies to injury or destruction taking place during this policy period, provided that when the immediate underlying policy insures occurrences taking place during its policy period, instead of injury or destruction taking place during its policy period, then this policy likewise applies to occurrences taking place during this policy period and "occurrence" is substituted for "injury or destruction" in Part III of this policy.

If the immediate underlying policy is canceled, this policy likewise is canceled effective on the same date at the same time and without notice to the insureds. If the immediate underlying policy otherwise ceases to apply (for reasons other than the exhaustion of an aggregate limit of liability), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the insureds.

## PART II — DEFINITIONS

**1. Immediate Underlying Policy**

"Immediate underlying policy" means the policy of the underlying insurance which provides the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this policy.

**2. Loss**

"Loss" means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages, and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses nor costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses.

**3. Underlying Insurance**

"Underlying insurance" means the insurance policies listed in item 3 in the declarations and includes any renewal or replacement of such policies.

## PART III
### PROVISIONS GOVERNING THE APPLICATION OF THE AGGREGATE LIMITS OF LIABILITY

**1. Reduction of the Aggregate**

This provision applies only if this policy contains an aggregate limit of liability which applies to the occurrence.

If the "each occurrence" or "each person" limit of liability of the underlying insurance is less than as stated in column II in the declarations because the aggregate limits of liability of the underlying insurance have been reduced, this policy becomes excess of such reduced limit of liability if such reduction is solely the result of injury or destruction occurring after the inception date of this policy and not before. Nothing contained herein shall operate to increase the limit of the company's liability.

**2. Application of the Aggregate to Separate Projects**

To the extent that the aggregate limits of liability of the immediate underlying policy apply separately to various operations, projects, locations, hazards or types of injury, the aggregate limits of liability of this policy likewise apply separately to such operations, projects, locations, hazards or types of injury.

**3. Application of the Aggregate to Periods of Time**

The aggregate limits of liability of this policy apply separately to each aggregate period. The first aggregate period of this policy begins on the effective date of this policy and ends on the next termination date of the aggregate period of the immediate underlying policy. Any succeeding aggregate period of this policy is concurrent with the aggregate period of the immediate underlying policy unless it is the final aggregate period. The final aggregate period of this policy begins on the termination date of the aggregate period of the immediate underlying policy immediately preceding the expiration date of this policy and ends on the expiration date of this policy.

This paragraph does not apply if the expiration date of this policy and the expiration date or anniversary date of the immediate underlying policy are identical. If this policy is a renewal of a similar policy underwritten by this company, the applicable aggregate limit of liability of this policy for the first period shall be reduced by any amounts paid or payable on account of injury or destruction taking place during the final aggregate period of the policy renewed. The final aggregate period of the policy renewed shall be determined in the same manner as the final aggregate period for this policy.

## PART IV — NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those in the immediate underlying policy.

Except with respect to automobiles registered in the State of New York, this policy does not apply:

A. to bodily injury or property damage

(1) with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

GEC 025073

WRG Policies
03531

00430.351

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

## PART V — CONDITIONS

**1. Underlying Insurance — Changes During this Policy Period**

Any change in coverage in the underlying insurance shall be promptly reported to the company and the insured shall, upon request, furnish the company with copies of such changes.

Any change in the premium for the underlying insurance shall be promptly reported to the company and the premium for this policy, subject to the minimum premium, may be adjusted in accordance with the manuals of the company then in effect.

**2. Notice of Loss; Participation in Defense by the Company**

Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

**3. Action Against Company**

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy.

Any person or organization or the legal representative thereof who has secured a judgment against the insured shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability. Any payments by the company under this condition 3 shall discharge the company's obligation to the insured to the extent of such payments.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**4. Subrogation and Other Recoveries**

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after the occurrence to prejudice such rights.

Because this policy affords excess coverage, the insured's right of recovery cannot always be exclusively subrogated to the company. It is, therefore, agreed that the company shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow the principle that any interest, including the insured, that shall have paid an amount over and above any payment under this policy shall first be reimbursed up to the amount paid by such interest; the company shall then be reimbursed out of any balance then remaining up to the amounts paid as the result of loss covered under this policy; and lastly, the interests, including the insured, of whom this coverage is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amounts shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

**5. Other Insurance**

This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy.

If, with respect to a loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects such loss; provided that if the applicable limit of liability of this policy is greater than the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the applicable limit of liability afforded by this policy.

**6. Cancellation**

This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in the declarations written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium or minimum premium, whichever is greater, shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**7. First Named Insured**

The insured first named in item 1 in the declarations is authorized to act on behalf of all named insureds and other insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy. The insured first named in item 1 in the declarations is responsible for the payment of all premiums but the other named insureds jointly and severally agree to make such premium payments in full if the insured first named in item 1 fails to pay the amount due within thirty days after the company gives a written demand for payment to the insured first named in item 1.

In witness whereof, the company has caused this policy to be signed by its president and a secretary at Chicago, Illinois, but the policy shall not become valid until countersigned on the declarations page by a duly authorized representative of the company.

| Continental Casualty Company<br>Transportation Insurance Company | National Fire Insurance Company of Hartford<br>Transcontinental Insurance Company | American Casualty Company of Reading, Pa.<br>Valley Forge Insurance Company |
|---|---|---|
| *[signatures]* | *[signatures]* | *[signatures]* |

WRG Policies
03532

GEC 025074

VOL. VIII TAB 5

**EXCESS THIRD PARTY LIABILITY POLICY**

00178

**CNA** Continental National American Group

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW:
(A stock insurance company, herein called the company)
Continental Center/310 S. Michigan Ave./Chicago, IL 60604

☒ CONTINENTAL CASUALTY COMPANY
☐ NATIONAL FIRE INSURANCE COMPANY of Hartford
☐ AMERICAN CASUALTY COMPANY of Reading, Pa.
☐ TRANSPORTATION INSURANCE COMPANY
☐ TRANSCONTINENTAL INSURANCE COMPANY
☐ VALLEY FORGE INSURANCE COMPANY

**DECLARATIONS**

| Item | AGENCY NO. | POLICY NUMBER |
|---|---|---|
| 1. | 035975 | RDX 033 915 66 45 |

NAMED INSURED & ADDRESS: (Number & Street, Town, County & State)

W.R. Grace & Co., and as Per Endorsement No. 1
1114 Avenue of the Americas
New York, New York 10036

2. Policy Period: (hereinafter called "this policy period") 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN.
6/30/74 To: 6/30/77

3. Schedule of Underlying Insurance: Insurer and Policy Number

Unigard Mutual Ins. Co.  $10,000,000

4. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COLUMN I Company Limits | IN EXCESS OF COLUMN II Underlying Limits | COLUMN III Total Limits | Coverage |
|---|---|---|---|
| $ Each Person | $ | $ | A. Bodily Injury Automobile |
| $ Each Occurrence | $ | $ | |
| $ Each Person | $ | $ | B. Bodily Injury Except Automobile |
| $ Each Occurrence | $ | $ | |
| $ Aggregate | $ | $ | |
| $ Each Occurrence | $ | $ | C. Property Damage Automobile |
| $ Each Occurrence | $ | $ | D. Property Damage Except Automobile |
| $ Aggregate | $ | $ | |
| $ Each Occurrence | $ | $ | E. Combined Single Limit Bodily Injury and Property Damage |
| $ Aggregate | $ | $ | |
| $10,000,000 each occurrence | $10,000,000 | $20,000,000 | F. Other |
| $10,000,000 aggregate | $10,000,000 | $20,000,000 | |

5. Premium Computation

| Premium Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| Flat Charge | — | — | 90,000. |

Deposit Premium: $90,000 on effective date of policy

Minimum Premium: $ — Annual
$ — Policy term

Audit Period: None

Forms numbers of Endorsement attached at issuance include: G-40284-E

Countersigned by _____ Licensed Resident Agent

G-40219-A

GEC 025408

00479

The company agrees with the named insured, in consideration of the payment of the premium and subject to the provisions of this policy:

## PART I — INSURING AGREEMENTS

**1. Excess Liability Indemnity**

To indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance inserted in column II of item 4 in the declarations; provided that this policy shall apply only to those coverages for which a limit of liability is inserted in column I; provided further that the limit of the company's liability under this policy shall not exceed the applicable amount inserted in column L.

The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

If the applicable coverage in the immediate underlying policy insures accidents rather than occurrences, then "accident" is substituted for "occurrence" in the applicable coverage of this policy.

**2. Policy Period; Termination of Underlying Insurance**

This policy applies to injury or destruction taking place during this policy period, provided that when the immediate underlying policy insures occurrence taking place during its policy period, instead of injury or destruction taking place during its policy period, then this policy likewise applies to occurrence taking place during this policy period and "occurrences" is substituted for "injury or destruction" in Part III of this policy.

If the immediate underlying policy is canceled, this policy likewise is canceled effective on the same date at the same time and without notice to the insureds. If the immediate underlying policy otherwise ceases to apply (for reasons other than the exhaustion of an aggregate limit of liability), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the insureds.

## PART II — DEFINITIONS

**1. Immediate Underlying Policy**

"Immediate underlying policy" means the policy of the underlying insurance which provides the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this policy.

**2. Loss**

"Loss" means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages, and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses nor costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses.

**3. Underlying Insurance**

"Underlying insurance" means the insurance policies listed in item 3 in the declarations and includes any renewal or replacement of such policies.

## PART III
### PROVISIONS GOVERNING THE APPLICATION OF THE AGGREGATE LIMITS OF LIABILITY

**1. Reduction of the Aggregate**

This provision applies only if this policy contains an aggregate limit of liability which applies to the occurrence.

If the "each occurrence" or "each person" limit of liability of the underlying insurance is less than as stated in column II in item 4 in the declarations because the aggregate limits of liability of the underlying insurance have been reduced, this policy becomes excess of such reduced limit of liability if such reduction is solely the result of injury or destruction occurring after the inception date of this policy and not before. Nothing contained herein shall operate to increase the limit of the company's liability.

**2. Application of the Aggregate to Separate Projects**

To the extent that the aggregate limits of liability of the immediate underlying policy apply separately to various operations, projects, locations, hazards or types of injury, the aggregate limits of liability of this policy likewise apply separately to such operations, projects, locations, hazards or types of injury.

**3. Application of the Aggregate to Periods of Time**

The aggregate limits of liability of this policy apply separately to each aggregate period. The first aggregate period of this policy begins on the effective date of this policy and ends on the next termination date of the aggregate period of the immediate underlying policy. Any succeeding aggregate period of this policy is concurrent with the aggregate period of the immediate underlying policy unless it is the final aggregate period. The final aggregate period of this policy begins on the termination date of the aggregate period of the immediate underlying policy immediately preceding the expiration date of this policy and ends on the expiration date of this policy.

This paragraph does not apply if the expiration date of this policy and the expiration date or anniversary date of the immediate underlying policy are identical. If this policy is a renewal of a similar policy underwritten by this company, the applicable aggregate limit of liability of this policy for the first period shall be reduced by any amounts paid or payable on account of injury or destruction taking place during the final aggregate period of the policy renewed. The final aggregate period of the policy renewed shall be determined in the same manner as the final aggregate period for this policy.

## PART IV — NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those in the immediate underlying policy.

Except with respect to automobiles registered in the State of New York, this policy does not apply:

**A.** to bodily injury or property damage

(1) with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraphs (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

GEC 025409

00430.351

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

## PART V — CONDITIONS

**1. Underlying Insurance — Changes During this Policy Period**

Any change in coverage in the underlying insurance shall be promptly reported to the company and the insured shall, upon request, furnish the company with copies of such changes.

Any change in the premium for the underlying insurance shall be promptly reported to the company and the premium for this policy, subject to the minimum premium, may be adjusted in accordance with the manuals of the company then in effect.

**2. Notice of Loss; Participation in Defense by the Company**

Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

**3. Action Against Company**

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy.

Any person or organization or the legal representative thereof who has secured a judgment against the insured shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability. Any payments by the company under this condition 3 shall discharge the company's obligation to the insured to the extent of such payments.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**4. Subrogation and Other Recoveries**

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after the occurrence to prejudice such rights.

Because this policy affords excess coverage, the insured's right of recovery cannot always be exclusively subrogated to the company. It is, therefore, agreed that the company shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow in the principle that any interest, including the insured, that shall have paid an amount over and above any payment under this policy shall first be reimbursed up to the amount paid by such interest; the company shall then be reimbursed out of any balance then remaining up to the amounts paid as the result of loss covered under this policy; and lastly, the interests, including the insured, of whom this coverage is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amounts shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

**5. Other Insurance**

This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy.

If, with respect to a loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects such loss; provided, that if the applicable limit of liability of this policy is greater than the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the applicable limit of liability afforded by this policy.

**6. Cancellation**

This policy may be cancelled by the named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in the declarations written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium or minimum premium, whichever is greater, shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**7. First Named Insured**

The insured first named in item 1 in the declarations is authorized to act on behalf of all named insureds and other insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy. The insured first named in item 1 in the declarations is responsible for the payment of all premiums but the other named insureds jointly and severally agree to make such premium payments in full if the insured first named in item 1 fails to pay the amount due within thirty days after the company gives a written demand for payment to the insured first named in item 1.

In witness whereof, the company has caused this policy to be signed by its president and a secretary at Chicago, Illinois, but the policy shall not become valid until countersigned on the declarations page by a duly authorized representative of the company.

Continental Casualty Company
Transportation Insurance Company

National Fire Insurance Company of Hartford
Transcontinental Insurance Company

American Casualty Company of Reading, Pa.
Valley Forge Insurance Company

00483

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

☐
☐
☐
☐

-1351

## Named Insured

It is agreed that the Named Insured is as follows: W.R. Grace & Co. and/or Subsidiary organizations, associated affiliated companies, owned, controlled and/or managed companies as now or hereinafter constituted.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| | | Issued to | Effective date of this endorsement |
|---|---|---|---|
| 1 | RDX 9156645 | W.R. Grace & Co. Etal | 6/30/74 |

CNA insurance          7/12/74 crz

Countersigned by _____
Authorized Agent

PRODUCER COPY

GEC 025413