# EXHIBIT K19

Page 1.

00685

## DECLARATIONS

Policy Number: 63-001-170

Item 1. Named Insured:

W. R. Grace & Company and/or subsidiary, associated, affiliated companies or owned and controlled and/or managed companies as now hereafter constituted.

Address:

1114 Avenue of the Americas, New York, New York

Item 2. Policy Period:

From June 30, 1975 to June 30, 1978
12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 3. Underlying Insurance

(See Attached)

Item 4. Underlying Limits

$100,000.00 United States, its territories, possessions, and Canada
$250,000.00 Foreign

Item 5. Limits of Liability - Ultimate Net Loss:

$1,000,000.00 Each Occurrence
$1,000,000.00 Aggregate

Item 6. Premium

$155,000.00 Annual Minimum & Deposit adjustable at a rate of .062 per $1,000 annual gross receipts on U.S. & Canadian sales only.

Premium for 1976 - 1977 - and - 1977 - 1978 to be determined prior to next anniversary.

By: /s/ Richard

GEC 024988

WRG Policies
03452




00686  Page 2

# W. R. Grace & Company

### Schedule of Underlying Insurance

| | | |
|---|---|---|
| I  General Liability (Including Watercraft) | B.I. | $1,000,000 Each Occurrence |
| | P.D. | $1,000,000 Each Occurrence |
| (A) Employee Benefits | | $250,000 Each Claim |
| | | $750,000 Aggregate |
| (B) Care Custody and Control | | $200,000 Each Occurrence and Aggregate |
| Automobile Liability | B.I. | $1,000,000 Each Occurrence |
| | P.D. | $1,000,000 Each Occurrence |
| Products Liability | B.I. | $1,000,000 Each Occurrence |
| | | $2,000,000 Annual Aggregate |
| | P.D. | $1,000,000 Each Occurrence |
| | | $2,000,000 Annual Aggregate |
| Advertisers Liability | | $250,000 Each Occurrence |

Oil & Gas Operations - Onshore: up to $5 million per occurrence

Operators extra expense covering with respect insureds Drilling Operations, workovers and producing wells up to one year after completion of drilling.

Offshore: up to $20 million per occurrence

II  Aircraft Liability (Excluding Non-Ownership) — $10,000,000 CSL including voluntary settlements of $100,000 per person - including crew (part of and not in addition to the $10,000,000 Limit)

(A) Care, Custody or Control — $1,000,000 (with respect to hangers Buildings or other property or contents thereof not owned by Insured except if required by lease or other agreement of if insurance is purchased)

(B) Non-Ownership Hull Liability — $100,000 per occurrence and aggregate

(C) Aircraft Non-Ownership Liability — $10,000,000 CSL excluding voluntary payments except for the operations of the Agricultural Chemicals Group of which $100,000 per person and $700,000 per accident is afforded plus $100,000 per person and $500,000 for Multi-Engine Aircraft operated by Diboga, S.A., Faucett, S.A., of Satco and Hired by Grace y CIA

GEC 024989

WRG Policies
03453

00694

Page 10.




(H) To any employee with respect to personal injury to or death of another employee of the same employer injured in the course of such employment;

(I) Except with respect to occurrence taking place in the United States, its territories, or possessions, or Canada to any liability of the Insured directly or indirectly occasioned by a happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

(J) Except with respect to operations performed by independent contractors, to liability arising out of the ownership, maintenance, operation, use loading or unloading of any watercraft; provided, however, this exclusion shall not apply to liability of the Named Insured for watercraft not owned by such Insured, or barges owned by the Insured;

(K) To liability arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft; provided, however this exclusion shall not apply to liability of the Named Insured for aircraft not owned by such Insured.

CONDITIONS

1. Premium.

   The premium for this policy shall be as stated on the declarations page.

2. Inspection and Audit.

   The company shall be permitted to inspect the Insured's premises, operations and elevators and to examine and audit the Insured's books and records at any time during the policy period and any extension thereof and within three years after the final termination of this policy, as far as they relate to the premium basis or the subject matter of this insurance.

3. Special Conditions Applicable to Occupational Disease.

   As regards personal injury (fatal or non-fatal) by occupational disease sustained by any employee of the Insured, this policy is subject to the same warranties, terms or conditions (except as regards the premium, the amount and limits of liability, any condition respecting "Other Insurance" and the renewal agreement, if any) as are contained in or as may be added to the policies of underlying insurances set forth in the declarations prior to the happening of an occurrence for which claim is made hereunder.

4. Limits of Liability.

   The company shall only be liable for ultimate net loss in excess of either:

   (A) Except as provided in sub-paragraph (B) hereof, the applicable limits of liability of the policies of underlying insurance set forth in Item 3 of the declarations; or

GEC 024997

WRG Policies
03461

(B) As respects each occurrence not covered by such underlying insurance, or where each occurrence is covered by such underlying insurance but in recoverable amounts less than the underlying limits set forth in Item 4 of the declarations, the amount of ultimate net loss set forth in the declarations as "Underlying Limits",

But in no event shall the company be liable for an amount in excess of the applicable limit of liability set forth in Item 5 of the declarations.

The limit of liability stated in Item 5 of the declarations as applicable to "Each Occurrence" is the total limit of the company's liability under this policy for ultimate net loss as a result of any one occurrence. Subject to the limit of liability set forth in Item 5 of the declarations with respect to "Each Occurrence", the limit of liability so set forth as "Aggregate" shall be the total limit of the company's liability under this policy for ultimate net loss:

(1) Because of all personal injury and property damage during each consecutive twelve months of the policy period, arising out of the products-completed operations hazards, and

(2) Because of all personal injury during each consecutive twelve months of the policy period sustained from occupational disease by any employee of the Insured.

In the event of reduction or exhaustion of the aggregate limits of liability under the policies of underlying insurance by reason of losses paid thereunder, this policy shall:

(1) In the event of reduction, pay the excess of the reduced underlying insurance, and

(2) In the event of exhaustion, continue in force as underlying insurance,

But nothing in this paragraph shall operate to increase the limits of the company's liability.

In the event of reduction or exhaustion of the aggregate limit or limits designated in the underlying policy or policies solely by payment of losses in respect to accidents or occurrences during the period of such underlying policy or policies, it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced underlying limit or, if such limit is exhausted, shall apply as underlying insurance, notwithstanding anything to the contrary in the terms and conditions of this policy.

5. Severability of Interests

The term "The Insured" is used severally and not collectively, but the inclusion herein of more than one Insured shall not operate to increase the limits of the company's liability. If more than one Insured is named in

00699   .556

*NORTHBROOK POLICY JACKET*

## Conditions

Northbrook Insurance Company (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.

I. **Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

II. **Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

III. **Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment aginst the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

IV. **Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

V. **Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

VI. **Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured: provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

VII. **Cancellation:** This policy may be canceled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

VIII. **Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

*[signature]*          *[signature]*
Secretary              President

GEC 025002            WRG Policies
                      03466

# EXHIBIT K20

- 00712



# Northbrook
# Insurance Company
## Northbrook, Illinois



## Declarations – Special Cover Policy – Casualty

Renewal of No. __63 000 532__                                                                 __63 001 171__
                                                                                              Policy Number

Item 1. Named Insured:       W. R. Grace
                             (See Endorsement No. 2)

Item 2. Address:             1114 Avenue of the Americas
                             New York, New York

Item 3. Policy Period:       From: June 30, 1975     To:    June 30, 1978
                             12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Coverage:            Follow Form Excess Umbrella Liability

Item 5. Limits of Liability: $1,500,000 any one occurrence and in the aggregate part of
                             $4,000,000 any one occurrence and in the aggregate excess of
                             $1,000,000 any one occurrence and in the aggregate.

Item 6. Premium:             Advance: $39,000.          Annual Minimum:   $39,000.
                             Rate:    $.0158 per $1,000 Gross Receipts on U.S. and Canadian Sales

If the Policy Period is more than one year and the premium is to be paid in installments, Premium is payable on:

__June 30, 1975__           __To Be Determined__        __To Be Determined__
Effective Date              1st Anniversary             2nd Anniversary

In the event of cancellation by the Named Insured, the Company shall receive and retain not less than                         as the policy minimum premium.

Item 7. Schedule of Underlying Insurance:

    See RU13 Attached

                                                 Agency at    Northbrook, Illinois

Countersignature Date    December 11, 19 75      _____ Agent

                                                 GEC 025015                WRG Policies
                                                                           03479

# Northbrook Insurance Company

00713



A Stock Insurance Company, Herein Called the Company

## Excess Umbrella Coverage – Insuring Agreements

### 1. Coverage

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom.

(b) Property Damage.

(c) Advertising Liability.

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:

    Northbrook Insurance Company    $1,000,000
    Policy No. 63 001 170

### 2. Limit of Liability – Underlying Limits

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

GEC 025016

(a) $ 1,000,000      ultimate net loss in respect of each occurrence, but

(b) $ See Endorsement No. 1      in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $ 1,500,000 part of $4,000,000      ultimate net loss in all in respect of each occurrence — subject to a limit of

(d) $ See Endorsement No. 1      in the aggregate for each annual period during the currency of this policy, separately in respect of Product Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured.

WRG Policies 03480

00714

# Northbrook Insurance Company
Northbrook, Illinois



## Endorsement

Named Insured: W. R. Grace, etal.             Policy No.: 63 001 171
                                               Endorsement No.: 1

In consideration of the premium charged it is understood and agreed that "Insuring Agreement"

2. "Limit of Liability - Underlying Limits" sub paragraph (b) and (d) are deleted in their entirety and replaced by the following.

(b) $1,000,000 In the aggregate for each annual period during the currency of this Policy.

(d) $1,500,000 In the aggregate for each annual period during the currency part of of this Policy.
    $4,000,000

It is further understood and agreed that "DEFINITIONS" 1 "Named Insured:" and 2 "Insured:" are deleted in their entirety and replaced by the following.

1. Named Insured
   The words "Named Insured" shall be as stated in Item 1 of the Declarations.

2. Insured:
   The words "Insured" includes any additional insured (not being the "Named Insured" under this Policy) included in the Underlying Insurances but not for broader coverage than is available to such additional insured under any Underlying Insurance as set out under "INSURING AGREEMENT" 1 "Underlying Umbrella Insurers And Policy Number"

In the event of additional insureds being added to the Coverage under the Underlying Insurances during the currency of this Policy, prompt notice shall be given to the Company who shall be entitled to charge an appropriate additional premium.

GEC 025017

This endorsement to take effect on the 30th day of June 19 75. All other terms and conditions remain unchanged.

Countersigned: December 11, 1975

Authorized Representative

WRG Policies
03481

00715

# Northbrook Insurance Company
Northbrook, Illinois



## Endorsement

Named Insured: W. R. Grace, etal.    Policy No.: 63 001 171
Endorsement No.: 2

It is agreed that such insurance as this policy affords to the Named Insured as shown in Item 1 of the Declarations, applies also to the additional Insured(s) named below, subject to the following provisions:
1. The Named Insured is authorized to act for such additional Insured(s) in all matters pertaining to this insurance, including receipt of notice of cancellation; and
2. Return premium, if any shall be paid to the Named Insured; and;
3. The Named Insured shall pay the premium for the insurance afforded the additional Insured(s): provided, that in the event of bankruptcy, or insolvency of the Named Insured, each additional Insured shall be responsible for and shall pay to the company the premium for the insurance afforded such additional Insured.
4. The insurance applies with respect to the business operations of the additional Insured(s) in the states to which this policy applies.
5. The Named Insured declares that all firms named in the policy as Named Insureds or as additional insureds are owned or financially controlled by the same interests.
6. It is further understood and agreed that the addition of one or more Insured shall not operate to increase the company's limits of liability.

### NAMES OF ADDITIONAL INSUREDS

W. R. Grace & Company and/or subsidiary, associated, affiliated companies or owned and controlled and/or managed companies as now or hereafter constituted.

All other conditions and provisions remain unchanged.

GEC 025018

This endorsement to take effect on the 30th day of June 19 75. All other terms and conditions remain unchanged.

Countersigned: December 11, 1975

Authorized Representative

WRG Policies
03482

NORTHBROOK POLICY JACKET

## Conditions

Northbrook Insurance Company (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.

I. **Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

II. **Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

III. **Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment aginst the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

IV. **Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

V. **Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

VI. **Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

VII. **Cancellation:** This policy may be canceled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condtion of cancellation.

VIII. **Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

WRG Policies
03488

*Myron J. Resnick*
Secretary

GEC 025024

*Archie R. Boe*
President