# EXHIBIT K52



**Northbrook Excess and Surplus Insurance Company**
Northbrook, Illinois

# Declarations

Renewal of No. __63  006 854__                                       __63  C03 153__
                                                                      Policy Number

Item 1. Named Insured:   W.R. Grace & Co.

Item 2. Address:   Grace Plaza
                   1114 Avenue of the Americas
                   New York, New York  10036

Item 3. Policy Period:   From: July 1, 1981    To: July 1, 1982
                         12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Coverage:   Excess Umbrella Liability

Item 5. Limits of Liability:   $3,750,000. any one occurrence and in the aggregate part of $20,000,000. any one occurrence and in the aggregate (where applicable) excess of $5,000,000. any one occurrence and in the aggregate (where applicable) excess of Primary.

Item 6. Premium:   Advance: $75,000.00    Annual Minimum: $75,000.00
                   Rate:    $0.0120 per $1,000. Sales

If the Policy Period is more than one year and the premium is to be paid in installments, Premium is payable on:

__Not applicable__        __Not applicable__        __Not applicable__
Effective Date             1st Anniversary           2nd Anniversary

In the event of cancellation by the Named Insured, NORTHBROOK shall receive and retain not less than as the policy minimum premium.

RU __72-2__ (Jacket)
Countersignature Date    July 10, 19 81

                                                    Authorized Representative

RUP-3

BROKER COPY

GEC 027473             WRG Policies
                       05939

02241

**B. Maintenance of Underlying Umbrella Insurance**

This policy is subject to the same terms, definitions (except for those terms defined in paragraph III), exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies listed in Section I. Coverage, prior to the happening of an occurrence for which claim is made under this policy. Any exclusion or restriction of coverage applicable to any Underlying Umbrella Policy shall also apply to this policy regardless of whether such exclusion or restriction applies to all underlying policies.

**C.** It is a condition of this policy that the Underlying Umbrella Policies or renewals or replacements thereof not more restrictive in coverage, shall be maintained in full effect during the currency of this policy, except for any reduction in the aggregate limit or limits contained therein solely by payment of claims in respect of occurrences happening during the period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, NORTHBROOK shall only be liable to the same extent as if the Insured had complied with this condition.

The Named Insured shall give notice to NORTHBROOK as soon as practicable of any exhaustion of aggregate limits of any underlying policy.

**D. Premium**

The premium for this policy shall be computed on the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified, is an estimated premium only. The earned premium shall be computed upon termination of this policy, or at the end of each twelve month period if the policy is written for a three year term. If the earned premium is more than the advance premium paid, the Insured shall pay the excess to NORTHBROOK, if less, NORTHBROOK shall return the difference, subject to the annual minimum premium for each twelve months of the policy period and the policy minimum premium as stated in the Declarations. See Description of Terms Used as Premium Basis.

**E. Inspection and Audit**

NORTHBROOK may inspect the Insured's property and operations and audit the Insured's books and records at any time at NORTHBROOK'S option during the policy period and within three years after the final termination of this policy. These actions are solely for NORTHBROOK'S benefit and they shall not be a representation that the Insured's property and operations are safe, healthful or are in compliance with any law, rule or regulation.

**F. Notice of Occurrence**

When there is an occurrence which may result in a claim under this policy, the Insured shall notify NORTHBROOK at its Home Office address in writing as soon as possible, giving particulars sufficient to identify the Insured and available information on time, place, and circumstances of the occurrence. The Insured will also send NORTHBROOK any legal papers that relate to the occurrence.

**G. Suit Against NORTHBROOK**

No action shall lie against NORTHBROOK unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and NORTHBROOK. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join NORTHBROOK as a codefendant in any action against the Insured to determine the Insured's liability, nor shall NORTHBROOK be impleaded by the Insured or the Insured's Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve NORTHBROOK of any of its obligations hereunder.

**H. Other Insurance**

Except as respects coverage written specifically as contributing insurance with this policy or to apply excess of this policy, this policy shall be excess insurance over any other insurance available to the Insured with respect to an occurrence covered hereunder.

**I. Subrogation**

In the event of any payment under this policy, NORTHBROOK shall be subrogated to all of the Insured's rights of recovery against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The amount recovered as subrogation shall be apportioned in the inverse order of payment of ultimate net loss to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

**J. Changes**

This policy must be endorsed in writing to change any of its provisions.

**K. Assignment**

Assignment of interest under this policy shall not bind NORTHBROOK unless its consent is endorsed hereon.

**L. Cancellation**

This policy may be cancelled by the Insured by surrender thereof to NORTHBROOK or by mailing to NORTHBROOK written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by NORTHBROOK by mailing to the Insured at the address shown in this policy or last known address written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if NORTHBROOK cancels the policy because the Insured has failed to pay a premium when due, this policy may be cancelled by NORTHBROOK by mailing a written notice of cancellation to the Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by NORTHBROOK shall be equivalent to mailing.

If the Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If NORTHBROOK cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. NORTHBROOK'S check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Insured.

**M. Sole Agent Clause**

If there is more than one Named Insured be̲     ̲nder, the Named Insured first named in Item 1 of the̲     ̲clarations shall be deemed to be the agent for all Named Insureds with respect to no̲     ̲of cancellation, payment of return premium, paym̲     ̲of unabsorbed premium deposit refunds (dividends) and in all other matters pertaining to this insurance.

GEC 027475

WRG Policies
05941

# EXHIBIT K53

ATTENTION XIII, 7
PLEASE NOTE

SEND ALL CLAIMS TO:
NATIONAL UNDERWRITING AGENCY, INC.
150 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

**TRANSIT CASUALTY COMPANY**
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

# Declarations—Excess Umbrella Policy

**SCU 955978**
Policy Number

Renewal of No. **SCU 953-565**

Item 1. Named Insured:  **W. R. GRACE & COMPANY**

Item 2. Address:  1114 Avenue of the Americas
New York, New York  10036

Item 3. Policy Period:  From: **June 30, 1981**  To: **June 30, 1982**
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Limits of Liability:  **$1,000,000 each occurrence and/or in the aggregate part of $20,000,000 excess of $5,000,000 excess of underlying.**

Item 5. Premium:  Advance: **$20,000**    Annual Minimum: **$20,000**

Rate: **$.0601**    Premium Basis: **Per $1,000 of Sales**

When used as a premium basis:
1. "admissions" means the total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;
2. "cost" means the total cost to the named insured with respect to operations performed for the named insured during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;
3. "receipts" means the gross amount of money charged by the named insured for such operations by the named insured or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;
4. "remuneration" means the entire remuneration earned during the policy period by proprietors and by all employees of the named insured, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company;
5. "sales" means the gross amount of money charged by the named insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the named insured and such others collect as a separate item and remit directly to a governmental division.

Countersignature Date  **July 9,** 19 **81**    Authorized Representative

T.V. 9810 A
MCC

GEC 027484

WRG Policies
05950

TRANSIT CASUALTY COMPANY
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

SCU 955-978

# Excess Umbrella Coverage—Insuring Agreements

**1. Coverage**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom,

(b) Property Damage,

(c) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:

| Carrier | Limits |
|---|---|
| Underwriters At Lloyd's London & British Ins. Cos. (80%) Cover Note No. PY 107779 | $5,000,000 each occurrence and/or in the aggregate excess of primary insurances. |
| Northbrook Excess & Surplus Insurance Co. (20%) | |

**2. Limit of Liability — Underlying Limits**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $ 5,000,000    ultimate net loss in respect of each occurrence, but

(b) $ 5,000,000    in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $ 1,000,000 p/o    ultimate net loss in all in respect of each occurrence — subject to a limit of
$20,000,000

(d) $ 1,000,000 p/o    in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured.
$20,000,000

07/09/81
T.V. 9812 A
mcc

GEC 027485

WRG Policies
05951

## Conditions

Transit Casualty (herein after called the Company) agrees with the Named Insured. named in the Declarations made a part hereof. in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.

I. **Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

II. **Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

III. **Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

IV. **Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

V. **Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed. except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

VI. **Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if. however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

VII. **Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED. If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

VIII. **Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

Secretary

President

GEC 027488     WRG Policies
               05954

# EXHIBIT K54

VOL. X V    TAB. 1    02560

No. K7017582

**Whereas** W.R. GRACE AND CO. (as more fully described herein) of 1114 Avenue of the Americas, New York, N.Y. 10036, U.S.A. hereinafter called the Assured, have paid U.S. $393,400.00 Premium or Consideration to Us, the undersigned Assurers to ~~in consideration of the following risks~~ indemnify the Assured in respect of UMBRELLA LIABILITY as per wording attached hereto,

100% of 80% of the limits stated herein

during the period commencing at the **thirtieth** day of **June,** 19 **82**, and ending at the **thirtiet** day of **June,** 19 **85**. both days at 12.01 a.m. Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company** for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding ~~xxxxxxx~~ ONE HUNDRED PER CENT of EIGHTY PER CENT of the limits stated herein

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this **23rd** day of **November 1983**

PSGB/rjb

GEC 028307

WRG Policies 06760

02561

## UMBRELLA POLICY (LONDON 1971)

**Named Assured:** As stated in Item 1 of the Declarations forming a part hereof ~~and/or subsidiary, associated, affiliated companies owned and controlled companies, as now or hereafter constituted~~ and of which prompt notice has been given to Underwriters (hereinafter called the "Named Assured").

### INSURING AGREEMENTS:

**I. COVERAGE -**

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:-

    (a)   imposed upon the Assured by law,

or  (b)   assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:-

    (i)   Personal Injuries

    (ii)  Property Damage

    (iii) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world.

**II. LIMIT OF LIABILITY -**

Underwriters hereon shall be only liable for the ultimate net loss the excess of either:-

    (a)   the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances,

or  (b)   $ 100,000    ultimate net loss in respect of each occurrence not covered by said underlying insurances,

           (hereinafter called the "underlying limits"):

and then only up to a further sum as stated in Item 2(a) of the Declarations in all in respect of each occurrence - subject to a limit as stated in Item 2(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this Policy subject to all the terms, conditions and definitions hereof shall:-

    (1)   in the event of reduction pay the excess of the reduced underlying limit

    (2)   in the event of exhaustion continue in force as underlying insurance.

The inclusion or addition hereunder of more than one Assured shall not operate to increase Underwriters' limits of liability beyond those set forth in the Declarations.


GEC 028308

WRG Policies
06761

ATTACHING TO AND FORMING PART OF POLICY No. KY017582

## DECLARATIONS:

ITEM 1. (a) Named Assured:— W.R. GRACE & CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned controlled and/or managed Companies as now or hereinafter constituted.

(b) Address of Named Assured:—
1114 Avenue of the Americas,
New York N.Y. 10036.
U.S.A.

ITEM 2. Limit of Liability – as Insuring Agreement II :—

(a) Limit in all in respect of each occurrence   $ 5,000,000

(b) Limit in the aggregate for each annual period where applicable   $ 5,000,000

ITEM 3. Policy Period:— 30th June 1982 to 30th June 1985.
both days at 12.01 A.M. Local Standard Time

ITEM 4. Notice of Occurrence (Condition G) to:—
Marsh & McLennan, Incorporated,
1221 Avenue of the Americas, New York, N.Y. 10036. U.S.A.

ITEM 5. Currency (Condition Q):— United States Dollars.

ITEM 6. Payment of Premium (Condition Q) to:—
Marsh & McLennan Incorporated,
1221 Avenue of the Americas, New York, N.Y. 10036, U.S.A.

ITEM 7. Service of Process (Condition S) upon:—
Messrs Mendes and Mount.
3 Park Avenue,
New York N.Y. 10016
U.S.A.

E.P.O. 354B (8/76)   Page 11 of 11

GEC 028318

WRG Policies
06771

02301

1879G/JLC

# Bowring

COVER NOTE

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
            LONDON EC3
TELEX: 882191
Registered No. 76170 London

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

Please always quote this No. KY017582

Date 19th July, 1982

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

| | |
|---|---|
| TYPE: | UMBRELLA LIABILITY INCLUDING WORKER'S COMPENSATION ACT AND EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974), AS EXPIRING. |
| FORM: | WORDING AS EXPIRING AS FAR AS APPLICABLE TO BE AGREED BY UNDERWRITERS. |
| ASSURED: | W.R. GRACE & COMPANY ETAL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANISATIONS OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED PLUS JOINT VENTURES AS EXPIRING. |
| PERIOD: | 36 months at 30th June, 1982. |
| INTEREST: | Coverage in respect of all of the Insured's operations. |
| SUM INSURED: | 80% of<br>$ 5,000,000    Each Occurrence (Aggregate Products and Occupational Disease)<br><br>EXCESS OF:-<br><br>A) The amount covered under underlying insurances as per schedule attached.<br><br>B) $ 100,000 Each Occurrence in respect of losses not covered by said underlying insurances. |
| SITUATION: | WORLDWIDE. |

GEC 028348

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

WRG Policies
06801