# EXHIBIT K55



UMBRELLA LIABILITY POLICY

# Transit Casualty Company

3700 WILSHIRE BOULEVARD  LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A Stock insurance company, herein called the company)

XIV, 2

---

**TRANSIT CASUALTY COMPANY**
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI

Agrees with the NAMED INSURED in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy;

## INSURING AGREEMENTS

### I.  COVERAGE

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

  A. PERSONAL INJURY, as hereinafter defined;
  B. PROPERTY DAMAGE, as hereinafter defined;
  C. ADVERTISING INJURY OR DAMAGE, as hereinafter defined,
to which this policy applies, caused by an OCCURRENCE, as hereafter defined, happening anywhere in the world.

### II.  UNDERLYING LIMIT—RETAINED LIMIT

The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

  A. UNDERLYING LIMIT—an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; or

  B. RETAINED LIMIT—The amount specified in Item 3 I. B of the Declarations as the result of any one occurrence not covered by said underlying insurance, and which shall be borne by the INSURED.

### III.  LIMITS OF LIABILITY

Regardless of the number of persons and organizations who are INSUREDS under this policy and regardless of the number of claims made and suits brought against any or all INSUREDS, the total limit of the Company's liability for ULTIMATE NET LOSS resulting from any one OCCURRENCE shall not exceed the amount specified in Item 3 I. of the declarations.

The Company's liability shall be further limited to the amount stated as the annual aggregate limit in Item 3 II. of the declarations on account of all OCCURRENCES during each policy year arising out of:

  A. either the PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined; or

  B. occupational disease by all employees of the INSURED.

In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, are exhausted solely as the result of OCCURRENCES taking place after the inception date of this policy, this policy shall, subject to the Company's limit of liability and to other terms of this policy, with respect to OCCURRENCES which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the aggrgate limit of liability as stated in Item 3 II. is exhausted, but not for broader coverage than was provided by the exhausted underlying insurance.

In the event that the aggregate limits of liability of the underlying insurance are exhausted or reduced as the result of OCCURRENCES taking place prior to the inception date of this policy, this policy shall only be liable to the same extent as if the aggregate limits had not been so exhausted or reduced.

For the purpose of determining the limit of the Company's liability:

  (a) all PERSONAL INJURY and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions, and

  (b) all ADVERTISING INJURY OR DAMAGE involving the same injurious material or act, regardless of the number or kind of media used, or frequency of repetition thereof, whether claim is made by one or more persons

shall be considered as arising out of one OCCURRENCE.

### IV.  DEFENSE—SETTLEMENT

A. With respect to any OCCURRENCE not covered, as warranted, by the underlying policies listed in Schedule A hereof, whether collectible by the INSURED, but covered by the terms and conditions of this policy, except for the RETAINED LIMIT stated in Item 3 L B of the Declarations, the Company shall:

  (1) defend any suit against the insured alleging PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE and seeking damages therefore, even if such suit is groundless, false or fraudulent; but the COMPANY may make such investigation, negotiation or settlement of any claim or suit as it deems expedient. The INSURED shall promptly reimburse the COMPANY for any amount paid in the satisfaction of cases defended hereunder within the retained limit after making proper deduction for all recoveries and salvage collectible, but excluding all loss expense and legal expense

  (2) with respect to any suit defended under the terms of this coverage, in addition to the applicable limit of liability under this policy the COMPANY shall:

    (a) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds;

    (b) pay all expenses incurred by the COMPANY, all costs taxed against the INSURED in any such suit and all interest accruing after the entry of judgment until the COMPANY has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the COMPANY'S liability thereon;

    (c) pay reasonable expenses incurred by the INSURED at the COMPANY'S request in assisting the COMPANY in the investigation or defense of any claim or suit including actual loss of earnings not to exceed $25 per day, but the COMPANY shall not be required to reimburse the INSURED for salaries of employees of the INSURED.

In jurisdictions where the COMPANY may be prevented by law or otherwise from carrying out this agreement, the COMPANY shall pay any expense incurred with its written consent in accordance with this agreement.

B. When underlying insurance, whether or not listed in Schedule A, does apply to an OCCURRENCE, the COMPANY shall have no duty to pay defense, investigations, settlement or legal expenses covered by such underlying insurance; however, the COMPANY shall have the right and opportunity to associate with the INSURED and any underlying insurer in the defense and control of any claim or suit reasonably likely to involve the COMPANY under this policy.

GEC 027951

WRG Policies
06412

vasion of the rights of privacy. unless arising out of advertising activities.
which occurs during the policy period.

**^MIUM BASIS:**

..n used as a premium basis:
"admissions" means the total number of persons. other than employees of the NAMED INSURED. admitted to the event insured or to events conducted on the premises whether on paid admission tickets. complimentary tickets or passes:

(2) "cost" means the total cost to the NAMED INSURED with respect to operations performed for the NAMED INSURED during the policy period by independent contractors of all work let or sub-let in connection with each specific project. including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work. whether furnished by the owner. contractor or subcontractor. including all fees. allowances. bonuses or commissions made. paid or due.

(3) "receipts" means the gross amount of money charged by the NAMED INSURED for such operations by the NAMED INSURED or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures. and includes taxes. other than taxes which the NAMED INSURED collects as a separate item and remits directly to a governmental division:

(4) "remuneration" means the entire remuneration earned during the policy period by proprietors and by all employees of the NAMED INSURED. other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company.

(5) "sales" means the gross amount of money charged by the NAMED INSURED or by others trading under his name for all

goods and products sold or distributed during the policy period and charged during the policy period for installation. servicing or repair. and includes taxes. other than taxes which the NAMED INSURED and such others collect as a separate item and remit directly to a governmental division.

**M. PRODUCTS HAZARD:**
Includes PERSONAL INJURY and PROPERTY DAMAGE arising out of the INSURED's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the INSURED and after physical possession of such products has been relinquished to others.

**N. PROPERTY DAMAGE:**
The term PROPERTY DAMAGE wherever used herein means:
(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom. and
(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period.

**O. ULTIMATE NET LOSS:**
Means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the INSURED is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the INSURED with respect to damages covered hereunder. "ULTIMATE NET LOSS" does not include (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the INSURED, (b) office costs and expenses of the INSURED and salaries and expenses of employees of the INSURED or (c) general retainer fees of counsel retained by the INSURED.

## CONDITIONS

**A. Premium Computations:** The deposit premium stated in the Declarations is an advance premium only unless otherwise speci.... 'pon termination of this policy, the earned premium shall be ....ted in accordance with the rates and minimum premium ap-...le to this insurance as stated in the Declarations. If the earned ...um thus computed exceeds the advance premium paid, the NAMED INSURED shall pay the excess to the COMPANY: if less. the COMPANY shall return to the NAMED INSURED the unearned portion paid by such INSURED. The NAMED INSURED shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the COMPANY at the end of the policy period. as the COMPANY may direct.

**B.** Inspection and Audit: The COMPANY shall be permitted but not obligated to inspect the NAMED INSURED'S property and operations at any time. Neither the COMPANY'S right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking. on behalf of or for the benefit of the NAMED INSURED or others. to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law. rule or regulation.
The COMPANY may examine and audit the NAMED INSURED'S books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy. as far as they relate to the subject matter of this insurance.

**C.** Severability of Interest: The term "INSURED" is used severally and not collectively except with respect to Insuring Agreement II (UNDERLYING LIMITS—RETAINED LIMITS), Insuring Agreement III (LIMITS OF LIABILITY) and Condition H (Other Insurance). The inclusion in this policy of more than one INSURED shall not operate to increase the COMPANY'S total liability for all INSURED'S covered by this policy beyond the limits set forth in Item 3 1, 3 1 B and 3 II of the Declarations.

**D.** Notice of Occurrence, Claim or Legal Proceeding: Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder. written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.
The INSURED shall give like notice of any claim made or legal ....eding commenced on account of such occurrence. If legal ....eedings are begun. the INSURED. when requested by the COM-Y. shall forward to it each paper thereon. or a copy thereof, ...ived by the INSURED or the INSURED'S representatives. to-...her with copies of reports of investigations made by the INSURED with respect to such claim proceedings.

**E.** Action Against COMPANY: No action shall lie against the COMPANY unless. as a condition precedent thereto. the INSURED shall have fully complied with all the terms of this policy. nor until the

amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the COMPANY.

**F.** Appeals: In the event the INSURED or the INSURED's underlying insurer elects not to appeal a judgment in excess of the RETAINED LIMIT. the COMPANY may elect to do so at its own expense. and shall be liable for the taxable costs. disbursements and interest incidental thereto. but in no event shall the liability of the COMPANY for ULTIMATE NET LOSS exceed the amount set forth in Insuring Agreement II (UNDERLYING LIMIT—RETAINED LIMIT) and Insurance Agreement III (LIMITS OF LIABILITY) for any one OCCURRENCE plus the taxable costs, disbursements and interests incidental to such appeal.

**G.** Payment of ULTIMATE NET LOSS: Coverage under this policy shall not apply unless and until the INSURED, or the INSURED'S underlying insurer, shall be obligated to pay the amount of the UNDERLYING LIMIT or RETAINED LIMIT on account of PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE. When the amount of ULTIMATE NET LOSS has finally been determined. the COMPANY shall promptly indemnify the INSURED the amount of ULTIMATE NET LOSS falling within the terms of this policy.

**H.** Other Insurance: If other collectible insurance with any other INSURER is available to the INSURED covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of the RETAINED LIMIT and LIMIT OF LIABILITY hereunder. the insurance hereunder shall be in excess of. and not contribute with. such other insurance. If collectible insurance under any other policy(ies) of the COMPANY is available to the INSURED, covering a loss also covered hereunder (other than underlying insurance of which the insurance afforded by this policy is in excess), the COMPANY'S total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies). If other collectible insurance under any policy(ies) of the COMPANY is available to the INSURED, the ULTIMATE NET LOSS as the result of any one OCCURRENCE not covered by underlying insurance shall not be cumulative.

**I.** Underlying Insurance: If underlying insurance applicable in any one OCCURRENCE is exhausted by payment of judgment or settlement on behalf of the INSURED, the COMPANY shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the INSURED resulting from the same occurrence. but only where this policy applies immediately in excess of such underlying insurance. without the intervention of excess insurance of another insurer.

**J.** Bankruptcy and Insolvency: In the event of the bankruptcy or insolvency of the INSURED or any entity comprising the INSURED. the

GEC 027954        WRG Policies
                              06415

COMPANY shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolv...

**K. Subrogation:** In the event of any payment under this policy, the COMPANY shall be subrogated to all the INSURED'S rights of recovery against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.
The amount recovered as subrogation shall be apportioned in the inverse order of payment of ULTIMATE NET LOSS to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

**L. Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the COMPANY from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the COMPANY.

**M. Assignment:** Assignment of interest under this policy shall not bind the COMPANY until its consent is endorsed hereon; if, however, the NAMED INSURED shall be adjudged bankrupt or insolvent, this policy shall cover the NAMED INSURED'S legal representative as NAMED INSURED; provided that notice of cancellation addressed to the INSURED named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**N. Sole Agent Clause:** The NAMED INSURED as stated in the DECLARATIONS shall be primarily responsible for payment of all premiums and shall act on behalf of all other INSUREDS with respect to the giving and receipt of any return premium that may become payable under this policy.

**O. Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date

of cancellation stated in the notice shall become the end of the policy period. Delivery o... ch written notice either by the NAMED INSURED or by the COM... NY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation if effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED.

If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS: and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

**P. Maintenance of Underlying Insurance:** It is warranted by the Insured that the underlying policy(ies) listed in Schedule A, or renewals or replacements thereof not more restrictive in coverage, shall be maintained in force during the currency of this policy, except for any reduction in the aggregate limit(s) contained therein solely by payment of claims in respect of OCCURRENCES happening during the period of this policy. In the event of failure by the INSURED so to maintain such policy(ies) in force, the Insurance afforded by this policy shall apply in the same manner it would have applied had such policy(ies) been so maintained in force.

**Q. Employers' Liability—Common Law Defenses:** As a condition to the recovery of any loss under this policy, with respect to personal injury to or the death of any employee arising out of and in the course of employment by the NAMED INSURED, the NAMED INSURED warrants that it has not and will not abrogate its common law defenses under any worker's compensation or occupational disease law by rejection thereof, or otherwise in the event the NAMED INSURED should, at any time during the policy period, abrogate such defenses, such insurance as is afforded with respect to such employee shall automatically terminate at the same time.

**R. Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.



ATTENTION
PLEASE NOTE
SEND ALL CLAIMS TO:
NATIONAL UNDERWRITING AGENCY, INC.
40 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

**IN WITNESS WHEREOF,** the Transit Casualty Company has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

_Alex Steinborn_
Secretary

_W. L. Gregory_
President

GEC 027955

WRG Policies
06416

NO. UMB950239

STOCK COMPANY

**New**

Renewal of No.

### DECLARATIONS — UMBRELLA LIABILITY POLICY

## ...sit Casualty Company

... BOULEVARD   LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A stock insurance company, herein called the company)

**Item 1. Named Insured:**   W. R. Grace & Company

   **Address:**   1114 Avenue of the Americas
   New York, New York   10036

**Item 2. Policy Period:** From   June 30, 1982   To:   June 30, 1983
   12:01 A.M., Standard Time at the address of the Named Insured as stated herein.

**Item 3. Limits of Liability:** The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

   I. $See Endt #1 Single limit any one OCCURRENCE combined PERSONAL INJURY, PROPERTY DAMAGE and ADVERTISING INJURY or DAMAGE in excess of:

   A. The amount recoverable under the underlying insurance as set out in Schedule A attached or

   B. $See Endt #1 Ultimate net loss as the result of any one occurrence not covered by said underlying insurance.

   II. $See Endt #1 Limit in the aggregate for each annual period with respect to:

   A. The PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined, or

   B. Occupational Disease sustained by employees of the INSURED.

**Item 4. Premium:**   $95,000.

   Advance Premium $95,000.      Rate         Premium Basis
                                 20% $.0585 per $1,000 Sales
   Minimum Premium $95,000.

**Items 5.** Warranted that, during the past three years, no insurer has cancelled insurance issued to the NAMED INSURED, similar to that afforded hereunder, unless otherwise stated herein.

Countersigned by: _____

10/04/82

GEC 027956         WRG Policies
                   06417

# ENDORSEMENT  W. R. GRACE & COMPANY

POLICY NO. UMB 950-239
END'T. NO. 1

Effective date:  June 30, 1982

It is hereby agreed that Item 3, Limits of Liability, is completed to read as follows:

1.  $1,000,000 single limit any one occurrence part of $5,000,000 single limit any one occurrence combined Personal Injury, Property Damage and Advertising Injury or Damage in excess of:

   A.  the amount recoverable under the underlying insurance as set out in Schedule A attached, or

   B.  $25,000 ultimate net loss as the result of any one occurrence not covered by said underlying insurance.

2.  $1,000,000 single limit in the aggregate part of $5,000,000 single in the aggregate for each annual period with respect to:

   A.  the Products Hazard or Completed Operations Hazard or both combined, or

   B.  Occupational Disease sustained by employes of the Insured.

Countersignature Date:    October 4,    19 82

Authorized Representative

TV 9820

GEC 027957

WRG Policies
06418



UMBRELLA LIABILITY POLICY

XV. 2

# Transit Casualty Company

3700 WILSHIRE BOULEVARD   LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A Stock insurance company, herein called the company)

---

## TRANSIT CASUALTY COMPANY
### LOS ANGELES, CALIFORNIA
### ST. LOUIS, MISSOURI

Agrees with the NAMED INSURED in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy;

### INSURING AGREEMENTS

**I.   COVERAGE**

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

A. PERSONAL INJURY, as hereinafter defined;
B. PROPERTY DAMAGE, as hereinafter defined;
C. ADVERTISING INJURY OR DAMAGE, as hereinafter defined,

to which this policy applies, caused by an OCCURRENCE, as hereafter defined, happening anywhere in the world.

**II.   UNDERLYING LIMIT—RETAINED LIMIT**

The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

A. UNDERLYING LIMIT—an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; or

B. RETAINED LIMIT—The amount specified in Item 3 L B of the Declarations as the result of any one occurrence not covered by said underlying insurance, and which shall be borne by the INSURED.

**III.   LIMITS OF LIABILITY**

Regardless of the number of persons and organizations who are INSUREDS under this policy and regardless of the number of claims made and suits brought against any or all INSUREDS, the total limit of the Company's liability for ULTIMATE NET LOSS resulting from any one OCCURRENCE shall not exceed the amount specified in Item 3 I. of the declarations.

The Company's liability shall be further limited to the amount stated as the annual aggregate limit in Item 3 II. of the declarations on account of all OCCURRENCES during each policy year arising out of:

A. either the PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined; or

B. occupational disease by all employees of the INSURED.

In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, are exhausted solely as the result of OCCURRENCES taking place after the inception date of this policy, this policy shall, subject to the Company's limit of liability and to other terms of this policy, with respect to OCCURRENCES which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the aggrgate limit of liability as stated in Item 3 II. is exhausted, but not for broader coverage than was provided by the exhausted underlying insurance.

In the event that the aggregate limits of liability of the underlying insurance are exhausted or reduced as the result of OCCURRENCES taking place prior to the inception date of this policy, the Company shall only be liable to the same extent as if the aggregate limits had not been so exhausted or reduced.

For the purpose of determining the limit of the Company's liability:

(a) all PERSONAL INJURY and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions, and

(b) all ADVERTISING INJURY OR DAMAGE involving the same injurious material or act, regardless of the number or kind of media used, or frequency of repetition thereof, whether claim is made by one or more persons

shall be considered as arising out of one OCCURRENCE.

**IV.   DEFENSE—SETTLEMENT**

A. With respect to any suit against the insured alleging PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE and seeking damages therefore, even if such suit is groundless, false or fraudulent; but the COMPANY may make such investigation, negotiation or settlement of any claim or suit as it deems expedient. The INSURED shall promptly reimburse the COMPANY for any amount paid in the satisfaction of cases defended hereunder within the retained limit after making proper deduction for all recoveries and salvage collectible, but excluding all loss expense and legal expense

(1) defend any suit against the insured alleging PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE and seeking damages therefore, even if such suit is groundless, false or fraudulent; but the COMPANY may make such investigation, negotiation or settlement of any claim or suit as it deems expedient. The INSURED shall promptly reimburse the COMPANY for any amount paid in the satisfaction of cases defended hereunder within the retained limit after making proper deduction for all recoveries and salvage collectible, but excluding all loss expense and legal expense

(2) with respect to any suit defended under the terms of this coverage, in addition to the applicable limit of liability under this policy the COMPANY shall:

(a) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds;

(b) pay all expenses incurred by the COMPANY, all costs taxed against the INSURED in any such suit and all interest accruing after the entry of judgment until the COMPANY has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the COMPANY'S liability thereon;

(c) pay reasonable expenses incurred by the INSURED at the COMPANY'S request in assisting the COMPANY in the investigation or defense of any claim or suit including actual loss of earnings not to exceed $25 per day, but the COMPANY shall not be required to reimburse the INSURED for salaries of employees of the INSURED.

In jurisdictions where the COMPANY may be prevented by law or otherwise from carrying out this agreement, the COMPANY shall pay any expense incurred with its written consent in accordance with this agreement.

B. When underlying insurance, whether or not listed in Schedule A, does apply to an OCCURRENCE, the COMPANY shall have no duty to pay defense, investigations, settlement or legal expenses covered by such underlying insurance; however, the COMPANY shall have the right and opportunity to associate with the INSURED and any underlying insurer in the defense and control of any claim or suit reasonably likely to involve the COMPANY under this policy.

---

T.V. 9800 A (Rev 3 82)

GEC 028361

WRG Policies
06814

vasion of the rights of privacy, unless arising out of advertising activities.
which occurs during the policy period.

L. ~EMIUM BASIS:

~n used as a premium basis:

"admissions" means the total number of persons, other than employees of the NAMED INSURED, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes:

(2) "cost" means the total cost to the NAMED INSURED with respect to operations performed for the NAMED INSURED during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due.

(3) "receipts" means the gross amount of money charged by the NAMED INSURED for such operations by the NAMED INSURED or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the NAMED INSURED collects as a separate item and remits directly to a governmental division:

(4) "remuneration" means the entire remuneration earned during the policy period by proprietors and by all employees of the NAMED INSURED, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company.

(5) "sales" means the gross amount of money charged by the NAMED INSURED or by others trading under his name for all

goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the NAMED INSURED and such others collect as a separate item and remit directly to a governmental division.

M. PRODUCTS HAZARD:
Includes PERSONAL INJURY and PROPERTY DAMAGE arising out of the INSURED's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the INSURED and after physical possession of such products has been relinquished to others.

N. PROPERTY DAMAGE:
The term PROPERTY DAMAGE wherever used herein means:
(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and
(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period.

O. ULTIMATE NET LOSS:
Means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the INSURED is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the INSURED with respect to damages covered hereunder. "ULTIMATE NET LOSS" does not include (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the INSURED, (b) office costs and expenses of the INSURED and salaries and expenses of employees of the INSURED or (c) general retainer fees of counsel retained by the INSURED.

## CONDITIONS

A. Premium Computations: The deposit premium stated in the Declarations is an advance premium only unless otherwise specified upon termination of this policy, the earned premium shall be ted in accordance with the rates and minimum premium applic to this insurance as stated in the Declarations. If the earned ium thus computed exceeds the advance premium paid, the NAMED INSURED shall pay the excess to the COMPANY; if less, the COMPANY shall return to the NAMED INSURED the unearned portion paid by such INSURED. The NAMED INSURED shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the COMPANY at the end of the policy period, as the COMPANY may direct.

B. Inspection and Audit: The COMPANY shall be permitted but not obligated to inspect the NAMED INSURED'S property and operations at any time. Neither the COMPANY'S right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the NAMED INSURED or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.
The COMPANY may examine and audit the NAMED INSURED'S books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

C. Severability of Interest: The term "INSURED" is used severally and not collectively except with respect to Insuring Agreement II (UNDERLYING LIMITS—RETAINED LIMITS), Insuring Agreement III (LIMITS OF LIABILITY) and Condition H (Other Insurance). The inclusion in this policy of more than one INSURED shall not operate to increase the COMPANY'S total liability for all INSURED'S covered by this policy beyond the limits set forth in Item 3 I, 3 I B and 3 II of the Declarations.

D. Notice of Occurrence, Claim or Legal Proceeding: Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.
The INSURED shall give like notice of any claim made or legal c eeding commenced on account of such occurrence. If legal eedings are begun, the INSURED, when requested by the COMPANY, shall forward to it each paper thereon, or a copy thereof, ...eved by the INSURED or the INSURED'S representatives, together with copies of reports of investigations made by the INSURED with respect to such claim proceedings.

E. Action Against COMPANY: No action shall lie against the COMPANY unless, as a condition precedent thereto, the INSURED shall have fully complied with all the terms of this policy, nor until the

amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the COMPANY.

F. Appeals: In the event the INSURED or the INSURED's underlying insurer elects not to appeal a judgment in excess of the RETAINED LIMIT, the COMPANY may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the COMPANY for ULTIMATE NET LOSS exceed the amount set forth in Insuring Agreement II (UNDERLYING LIMIT—RETAINED LIMIT) and Insurance Agreement III (LIMITS OF LIABILITY) for any one OCCURRENCE plus the taxable costs, disbursements and interests incidental to such appeal.

G. Payment of ULTIMATE NET LOSS: Coverage under this policy shall not apply unless and until the INSURED, or the INSURED's underlying insurer, shall be obligated to pay the amount of the UNDERLYING LIMIT or RETAINED LIMIT on account of PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE. When the amount of ULTIMATE NET LOSS has finally been determined, the COMPANY shall promptly indemnify the INSURED the amount of ULTIMATE NET LOSS falling within the terms of this policy.

H. Other Insurance: If other collectible insurance with any other INSURER is available to the INSURED covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of the RETAINED LIMIT and LIMIT OF LIABILITY hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If collectible insurance under any other policy(ies) of the COMPANY is available to the INSURED, covering a loss also covered hereunder (other than underlying insurance of which the insurance afforded by this policy is in excess), the COMPANY'S total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies). If other collectible insurance under any policy(ies) of the COMPANY is available to the INSURED, the ULTIMATE NET LOSS as the result of any one OCCURRENCE not covered by underlying insurance shall not be cumulative.

I. Underlying Insurance: If underlying insurance applicable in any one OCCURRENCE is exhausted by payment of judgment or settlement on behalf of the INSURED, the COMPANY shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the INSURED resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another insurer.

J. Bankruptcy and Insolvency: In the event of the bankruptcy or insolvency of the INSURED or any entity comprising the INSURED, the

WRG Policies
06817

COMPANY shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolv.

**K. Subrogation:** In the event of any payment under this policy, the COMPANY shall be subrogated to all the INSURED'S rights of recovery against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The amount recovered as subrogation shall be apportioned in the inverse order of payment of ULTIMATE NET LOSS to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

**L. Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the COMPANY from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the COMPANY.

**M. Assignment:** Assignment of interest under this policy shall not bind the COMPANY until its consent is endorsed hereon; if, however, the NAMED INSURED shall be adjudged bankrupt or insolvent, this policy shall cover the NAMED INSURED'S legal representative as NAMED INSURED; provided that notice of cancellation addressed to the INSURED named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**N. Sole Agent Clause:** The NAMED INSURED as stated in the DECLARATIONS shall be primarily responsible for payment of all premiums and shall act on behalf of all other INSUREDS with respect to the giving and receipt of any return premium that may become payable under this policy.

**O. Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery o   :h written notice either by the NAMED INSURED or by the COM.   NY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation if effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED.

If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

**P. Maintenance of Underlying Insurance:** It is warranted by the Insured that the underlying policy(ies) listed in Schedule A, or renewals or replacements thereof not more restrictive in coverage, shall be maintained in force during the currency of this policy, except for any reduction in the aggregate limit(s) contained therein solely by payment of claims in respect of OCCURRENCES happening during the period of this policy. In the event of failure by the INSURED so to maintain such policy(ies) in force, the Insurance afforded by this policy shall apply in the same manner it would have applied had such policy(ies) been so maintained in force.

**Q. Employers' Liability—Common Law Defenses:** As a condition to the recovery of any loss under this policy, with respect to personal injury to or the death of any employee arising out of and in the course of employment by the NAMED INSURED, the NAMED INSURED warrants that it has not and will not abrogate its common law defenses under any worker's compensation or occupational disease law by rejection thereof, or otherwise in the event the NAMED INSURED should, at any time during the policy period, abrogate such defenses such insurance as is afforded with respect to such employee shall automatically terminate at the same time.

**R. Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.



IN WITNESS WHEREOF, the Transit Casualty Company has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

GEC 028365

WRG Policies
06818

NO. UMB 950239

STOCK COMPANY

DECLARATIONS — UMBRELLA LIABILITY POLICY

New
Renewal of No.

...sit Casualty Company

....TE BOULEVARD    LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A stock insurance company, herein called the company)



Item 1.  Named Insured:    **W. R. Grace & Company**

Address:    **1114 Avenue of the Americas**
**New York, New York  10036**

Item 2.  Policy Period: From  **June 30, 1982**    To:  **June 30, 1983**
12:01 A.M., Standard Time at the address of the Named Insured as stated herein.

Item 3.  Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this
policy having reference thereto.

I.  $ **See Endt #1** Single limit any one OCCURRENCE combined PERSONAL INJURY, PROPERTY DAMAGE and
ADVERTISING INJURY or DAMAGE in excess of:

A.  The amount recoverable under the underlying insurance as set out in Schedule A attached or

B.  $ **See Endt #1** Ultimate net loss as the result of any one occurrence not covered by said underlying
insurance.

II.  $ **See Endt #1** Limit in the aggregate for each annual period with respect to:

A.  The PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined, or

B.  Occupational Disease sustained by employees of the INSURED.

Item 4.  Premium:    **$95,000.**

Advance Premium $ **95,000.**    Rate    Premium Basis
**20% $.0585 per $1,000 Sales**

Minimum Premium $ **95,000.**

Items 5.  Warranted that, during the past three years, no insurer has cancelled insurance issued to the NAMED INSURED,
similar to that afforded hereunder, unless otherwise stated herein.

Countersigned by: _____

**10/04/82**

GEC 028366

**WRG Policies
06819**

# ENDORSEMENT    W. R. GRACE & COMPANY

POLICY NO. UMB 950-23
END'T. NO. 1

**Effective date:  June 30, 1982**

It is hereby agreed that Item 3, Limits of Liability, is completed to
read as follows:

1.  $1,000,000 single limit any one occurrence part of
    $5,000,000 single limit any one occurrence combined
    Personal Injury, Property Damage and Advertising
    Injury or Damage in excess of:

    A.  the amount recoverable under the underlying insurance
        as set out in Schedule A attached, or

    B.  $25,000 ultimate net loss as the result of any one
        occurrence not covered by said underlying insurance.

2.  $1,000,000 single limit in the aggregate part of
    $5,000,000 single in the aggregate for each annual period
    with respect to:

    A.  the Products Hazard or Completed Operations Hazard or
        both combined, or

    B.  Occupational Disease sustained by employes of the Insured.

GEC 028367

Countersignature Date:        October 4,        19 82        _____
TV 9820                                                      Authorized Representative

WRG Policies
06820

# EXHIBIT K56

COPY

No. ................................

VOL. XIV, TAB 2

**Whereas** W.R. GRACE AND CO (as more fully described in Item 1 (a) of the declarations attached hereto) of 1114 Avenue of the Americas, New York N.Y. 10036, hereinafter called the Assured, have paid U.S. $141,755.62 part of Premium or Consideration to Us, the undersigned Assurers to indemnify the Assured in respect of EXCESS UMBRELLA LIABILITY as per wording attached hereto,

91.64% of 56.25% of the limits stated herein

during the period commencing at **Thirtieth** day of **June** 19**83**, and ending at **Thirtieth** day of **June** 19**86** both days at 12.01 A.M. Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company** for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding **NINETY-ONE DECIMAL SIX FOUR PER CENT OF FIFTY-SIX DECIMAL TWO FIVE PER CENT of the limits stated herein**,

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this **FOURTH** day of **MAY 1984**

MCB/sc

DIRECTOR
H. S. WEAVERS (UNDERWRITING AGENCIES LTD.

GEC 027963

WRG Policies
06424

NAMED ASSURED:  As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwriters (hereinafter called the "Named Assured").

## INSURING AGREEMENTS:

### I.    COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:–

(a)    imposed upon the Assured by law,

or  (b)    assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:–

(i)    Personal Injuries

(ii)    Property Damage

(iii)    Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

### II.    LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:–

$ (as stated in Item 3 of the Declarations)     ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations)     in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies

H.S.W.(U)A.    H.S.W.(U)A.

of the Declarations)            each occurrence – subject to a limit
                                of

$ (as stated in Item 6          in the aggregate for each annual
of the Declarations)            period during the currency of this
                                Policy, separately in respect of
                                Products Liability and in respect of
                                Personal Injury (fatal or non-fatal)
                                by Occupational Disease sustained
                                by any employees of the Assured and
                                ~~in respect of any other hazard subject~~
                                ~~to an aggregate limit in the Underlying~~
                                ~~Umbrella Policies.~~

## CONDITIONS:

1.   PRIOR INSURANCE AND NON CUMULATION OF LIABILITY –

     It is agreed that if any loss covered hereunder is also covered in whole or in part under
     any other excess policy issued to the Assured prior to the inception date hereof the limit
     of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any
     amounts due to the Assured on account of such loss under such prior insurance.

2.   MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE –

     This Policy is subject to the same terms, definitions, exclusions and conditions (except
     as regards the premium, the amount and limits of liability and except as otherwise
     provided herein) as are contained in or as may be added to the Underlying Umbrella
     Policies stated in Item 2 of the Declarations prior to the happening of an occurrence
     for which claim is made hereunder.   Should, however, any alteration be made in the
     premium for the Underlying Umbrella Policies during the currency of this Policy Under-
     writers reserve the right to adjust the premium hereon accordingly.

     It is a condition of this Policy that the Underlying Umbrella Policies shall be maintaine
     in full effect during the Policy period without reduction of coverage or limits except
     for any reduction of the aggregate limits contained therein solely by payment of claims
     in respect of accidents and/or occurrences occurring during the period of this Policy or
     by the operation of Condition C. of the Underlying Umbrella Policies.

3.   CANCELLATION –.

     This Policy may be cancelled by the Named Assured or by the Underwriters or their
     representatives by sending by registered mail notice to the other party stating when, not
     less than ~~thirty (30)~~ sixty (60) days thereafter, cancellation shall be effective.   The mailing of
     notice as aforesaid by Underwriters or their representatives to the Named Assured at the
     address shown in this Policy shall be sufficient proof of notice, and the insurance under
     this Policy shall end on the effective date and hour of cancellation stated in the notice.
     Delivery of such written notice either by the Named Assured or by the Underwriters or
     their representatives shall be equivalent to mailing.   .

     If this Policy shall be cancelled by the Named Assured the Underwriters shall retain
     the customary short rate proportion of the premium for the period this Policy has been

## DECLARATIONS:

ITEM 1.  (a)  Named Assured:- W.R. GRACE AND CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

 (b)  Address of Named Assured:- 1114 Avenue of the Americas, New York, N.Y.10038.

ITEM 2.  (a)  Underlying Umbrella Policies:- 79DD1633C
                                              KYO17582

 (b)  Underlying Umbrella Insurers:- Certain Insurance Companies

ITEM 3.  Underlying Umbrella Limits
(Insuring Agreement II):-                    U.S $  5,000,000

ITEM 4.  Underlying Umbrella Aggregate Limits
(Insuring Agreement II):-                    U.S. $  5,000,000

ITEM 5.  Limit of Liability
(Insuring Agreement II):-                    U.S. $ 20,000,000

ITEM 6.  Aggregate Limit of Liability
(Insuring Agreement II):-                    U.S. $ 20,000,000

ITEM 7.  Policy Period:- 30th June, 1982 to 30th June 1985
                         both days at 12.01 A.M. Local Standard Time

ITEM 8.  Notice of Occurrence (Condition 4) to:-

                         Marsh & McLennan Inc.,
                         1221 Avenue of the Americas,
                         New York, N.Y.10020.

ITEM 9:  Service of Process (Condition 6) upon:-

                         Messrs Mendes and Mount.
                         3 Park Avenue,
                         New York, N.Y.10016
                         U.S.A.

L.P.O.355A (12/76)                                    Page 4 of 4

GEC 027975            WRG Policies
                         06436

18810/DJ

# Bowring

**COVER NOTE**

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

| | |
|---|---|
| P.O. BOX 145. | TELEPHONE: 01-283 3100 |
| THE BOWRING BUILDING. | TELEGRAMS: BOWINSUR |
| TOWER PLACE. | LONDON EC3 |
| LONDON EC3P 3BE | TELEX: 882191 |
| (Registered Office) | Registered No. 76170 London |

Please always
quote this No. ... KY017782 ...........

Date .. 19th July, 1982 ..............

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

**TYPE:**    EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT
LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974)

**FORM:**    Short Excess Form as expiring as far as applicable amendments if
any to be agreed by Underwriters

**ASSURED:**    W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated,
Affiliated Companies, and/or Organisations owned, controlled
and/or managed Companies as now or hereinafter constituted plus
joint ventures as expiring

**PERIOD:**    36 months at 30th June, 1982

**INTEREST:**    Coverage in respect Assured's Operations

**SUM INSURED:**    56.25% of
$20,000,000    each occurrence (Aggregate Products and
Occupational Disease)

**EXCESS OF:-**

$ 5,000,000    each occurrence (Aggregate Products and
Occupational Disease)

**WHICH IN TURN EXCESS OF:-**

Scheduled Primaries or $100,000 Self Insured Retention where no
concurrent insurance

**SITUATION:**    Worldwide

GEC 027990

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

**C.T. BOWRING & CO. (INSURANCE) LTD.**

WRG Policies
06451

# Bowring

COVER NOTE

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
                         LONDON EC3
TELEX: 882191
Registered No. 76170 London

Please always    KY017782
quote this No. .................................

Date    19th July, 1982
...................................................

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

| | |
|---|---|
| <u>TYPE:</u> | EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974) |
| <u>FORM:</u> | Short Excess Form as expiring as far as applicable amendments if any to be agreed by Underwriters |
| <u>ASSURED:</u> | W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated, Affiliated Companies, and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted plus joint ventures as expiring |
| <u>PERIOD:</u> | 36 months at 30th June, 1982 |
| <u>INTEREST:</u> | Coverage in respect Assured's Operations |

<u>SUM INSURED:</u>    56.25% of
$20,000,000    each occurrence (Aggregate Products and Occupational Disease)

<u>EXCESS OF:-</u>

$ 5,000,000    each occurrence (Aggregate Products and Occupational Disease)

<u>WHICH IN TURN EXCESS OF:-</u>

Scheduled Primaries or $100,000 Self Insured Retention where no concurrent insurance

<u>SITUATION:</u>    Worldwide

GEC 027992

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

WRG Policies
06453

No: ............................

COPY

**Whereas** W.R.GRACE AND CO (as more fully described
in Item 1 (a) of the declarations attached hereto)
of 1114 Avenue of the Americas, New York, U.S.A.
hereinafter called the Assured, have paid U.S. $800,000.00 part of
Premium or Consideration to Us, the undersigned Assurers to
indemnify the Assured in
respect of EXCESS UMBRELLA LIABILITY as per wording attached
hereto,

91.641 of 56.251 of the
limits stated herein

VOL. X VI, TAB 3

during the period commencing at **Thirtieth** day of
**June** 1982 , and ending at **Thirtieth**
day of **June** 1985 . both days at 12.01 A.M.
Legal Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company**
for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors,
Administrators and Assigns, all such loss as above stated, not exceeding **NINETY-ONE DECIMAL
SIX FOUR PER CENT OF FIFTY-SIX DECIMAL TWO FIVE PER CENT of the limits stated
herein,**

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that
in proportion to the several sums by each of us subscribed against our respective names not exceeding the several
sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or
otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the
Assurers have hereunto subscribed my name on their behalf this FOURTH day of
MAY 1984

GEC 028373

WRG Policies
06826

FSCB/sc

DIRECTOR
C G WEAVERS (UNDERWRITING) AGENCIES LTD.

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwriter (Hereinafter called the "Named Assured").

## INSURING AGREEMENTS

I.    COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:–

    (a)    imposed upon the Assured by law,

or (b)    assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:–

    (i)    Personal Injuries

    (ii)   Property Damage

    (iii)  Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

II.    LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of thei respective ultimate net loss liability as follows:–

$ (as stated in Item 3 of the Declarations)       ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations)       in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies.

H.S.W. (U)A.

of the Declarations)                    each occurrence – subject to a limit
                                        of

$ (as stated in Item 6              in the aggregate for each annual
    of the Declarations)            period during the currency of this
                                    Policy, separately in respect of this
                                    Products Liability and in respect of
                                    Personal Injury (fatal or non-fatal)
                                    by Occupational Disease sustained
                                    by any employees of the Assured ~~and~~
                                    ~~in respect of any other hazard subject~~
                                    ~~to an aggregate limit in the Underlying~~
                                    ~~Umbrella Policies.~~

## CONDITIONS:

1.    PRIOR INSURANCE AND NON CUMULATION OF LIABILITY –

It is agreed that if any loss covered hereunder is also covered in whole or in part under
any other excess policy issued to the Assured prior to the inception date hereof the limit
of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by an
amounts due to the Assured on account of such loss under such prior insurance.

2.    MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE –

This Policy is subject to the same terms, definitions, exclusions and conditions (except
as regards the premium, the amount and limits of liability and except as otherwise
provided herein) as are contained in or as may be added to the Underlying Umbrella
Policies stated in Item 2 of the Declarations prior to the happening of an occurrence
for which claim is made hereunder.   Should, however, any alteration be made in the
premium for the Underlying Umbrella Policies during the currency of this Policy Under-
writers reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained
in full effect during the Policy period without reduction of coverage or limits except
for any reduction of the aggregate limits contained therein solely by payment of claims
in respect of accidents and/or occurrences occurring during the period of this Policy or
by the operation of Condition C. of the Underlying Umbrella Policies.

GEC 028383

3.    CANCELLATION –

This Policy may be cancelled by the Named Assured or by the Underwriters or their
representatives by sending by registered mail notice to the other party stating when, no
less than ~~thirty (30)~~ sixty days thereafter, cancellation shall be effective.   The mailing of
notice as aforesaid by Underwriters or their representatives to the Named Assured at th
address shown in this Policy shall be sufficient proof of notice, and the insurance unde
this Policy shall end on the effective date and hour of cancellation stated in the notice
Delivery of such written notice either by the Named Assured or by the Underwriters or
their representatives shall be equivalent to mailing.   .

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain
the customary short rate proportion of the premium for the period this Policy has been

WRG Policies
                                        06836

**DECLARATIONS:**

ITEM 1.    (a)    Named Assured:-    W.R. GRACE AND CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

(b)    Address of Named Assured:-    1114 Avenue of the Americas, New York, N.Y. 10038.

ITEM 2.    (a)    Underlying Umbrella Policies:- 79DD1633C
KYO17582

(b)    Underlying Umbrella Insurers:- Certain Insurance Companies

ITEM 3.    Underlying Umbrella Limits
(Insuring Agreement II):-                                  U.S $ 5,000,000

ITEM 4.    Underlying Umbrella Aggregate Limits
(Insuring Agreement II):-                                  U.S. $ 5,000,000

ITEM 5.    Limit of Liability
(Insuring Agreement II):-                                  U.S. $ 20,000,000

ITEM 6.    Aggregate Limit of Liability
(Insuring Agreement II):-                                  U.S. $ 20,000,000

ITEM 7.    Policy Period:- 30th June, 1982 to 30th June 1985
both days at 12.01 A.M. Local Standard Time

ITEM 8.    Notice of Occurrence (Condition 4) to:-

Marsh & McLennan Inc.,
1221 Avenue of the Americas,
New York, N.Y. 10020.

ITEM 9:    Service of Process (Condition 6) upon:-

Messrs Mendes and Mount.
3 Park Avenue,
New York, N.Y. 10016
U.S.A.

# Bowring

**COVER NOTE**

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

| | |
|---|---|
| P.O. BOX 145. | TELEPHONE: 01-283 3100 |
| THE BOWRING BUILDING. | TELEGRAMS: BOWINSUR |
| TOWER PLACE. | LONDON EC3 |
| LONDON EC3P 3BE | TELEX: 882191 |
| (Registered Office) | Registered No. 76170 London |

Please always
quote this No.  KYO17782

Date  19th July, 1982

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

**TYPE:** EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT
LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974)

**FORM:** Short Excess Form as expiring as far as applicable amendments if
any to be agreed by Underwriters

**ASSURED:** W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated,
Affiliated Companies, and/or Organisations owned, controlled
and/or managed Companies as now or hereinafter constituted plus
joint ventures as expiring

**PERIOD:** 36 months at 30th June, 1982

**INTEREST:** Coverage in respect Assured's Operations

**SUM INSURED:** 56.25% of
$20,000,000    each occurrence (Aggregate Products and
Occupational Disease)

**EXCESS OF:-**

$ 5,000,000    each occurrence (Aggregate Products and
Occupational Disease)

**WHICH IN TURN EXCESS OF:-**

Scheduled Primaries or $100,000 Self Insured Retention where no
concurrent insurance

**SITUATION:** Worldwide

GEC 028389

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

WRG Policies
06842

COPY

No. ....................

VOL XVI. A2 4

**Whereas** W.R. GRACE AND CO (as more fully described
in Item 1 (a) of the declarations attached hereto)
of 1114 Avenue of the Americas, New York, N.Y. 10036,
hereinafter called the Assured, have paid U.S. $900,000.00 part of
Premium or Consideration to Us, the undersigned Assurers to
................................................... indemnify the Assured in
respect of EXCESS UMBRELLA LIABILITY as per wording attached
hereto,

91.845 of 56.255 of the
limits stated herein

during the period commencing at **Thirtieth** day of
**June**            19**82** , and ending at **Thirtieth**
day of   **June**            19**85** , both days at 12.01 A.M.
Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company**
for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors,
Administrators and Assigns, all such loss as above stated, not exceeding **NINETY-ONE DECIMAL
SIX FOUR PER CENT OF FIFTY-SIX DECIMAL TWO FIVE PER CENT of the limits stated
herein,**

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that
in proportion to the several sums by each of us subscribed against our respective names not exceeding the several
sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or
otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the
Assurers have hereunto subscribed my name on their behalf this         FOURTH         day of
MAY         19**84**

GEC 028794

FBGB/sc

DIRECTOR
H. S. WEAVERS UNDERWRITING AGENCIES LTD.

WRG Policies
07237

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwrite (hereinafter called the "Named Assured").

## INSURING AGREEMENTS:

I.    COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:–

(a)    imposed upon the Assured by law,

or  (b)    assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:–

(i)    Personal Injuries

(ii)    Property Damage

(iii)    Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policie stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

II.    LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Under lying Umbrella Insurers have paid or have been held liable to pay the full amount of the respective ultimate net loss liability as follows:–

$ (as stated in Item 3        ultimate net loss in respect of each
of the Declarations)          occurrence, but

$ (as stated in Item 4
of the Declarations)          in the aggregate for each annual
                              period during the currency of this
                              Policy, separately in respect of
                              Products Liability and in respect of
                              Personal Injury (fatal or non-fatal)
                              by Occupational Disease sustained
                              by any employees of the Assured and
                              in respect of any other hazard subject
                              to an aggregate limit in the Underlying
                              Umbrella Policies

H.S.W.(U)A                    H.S.W.(U)A

WRG Policies
07246                         Page 1 o

of the Declarations)                    each occurrence – subject to a limit of

$ (as stated in Item 6                    in the aggregate for each annual
of the Declarations)                      period during the currency of this
                                          Policy, separately in respect of
                                          Products Liability and in respect of
                                          Personal Injury (fatal or non-fatal)
                                          by Occupational Disease sustained
                                          by any employees of the Assured ~~and~~
                                          ~~in respect of any other hazard subject~~
                                          ~~to an aggregate limit in the Underlying~~
                                          ~~Umbrella Policies.~~

## CONDITIONS:

**1.    PRIOR INSURANCE AND NON CUMULATION OF LIABILITY  –**

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the lim of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by an amounts due to the Assured on account of such loss under such prior insurance.

**2.    MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE  –**

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.    Should, however, any alteration be made in the premium for the Underlying Umbrella Policies during the currency of this Policy Under writers reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintain in full effect during the Policy period without reduction of coverage or limits except for any reduction of the aggregate limits contained therein solely by payment of claim in respect of accidents and/or occurrences occurring during the period of this Policy o by the operation of Condition C. of the Underlying Umbrella Policies.

GEC 028804

**3.    CANCELLATION  –**

This Policy may be cancelled by the Named Assured or by the Underwriters or their representatives by sending by registered mail notice to the other party stating when, r less than ~~thirty (30)~~ *sixty (60)* days thereafter, cancellation shall be effective.    The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at th address shown in this Policy shall be sufficient proof of notice, and the insurance unde this Policy shall end on the effective date and hour of cancellation stated in the notic Delivery of such written notice either by the Named Assured or by the Underwriters or their representatives shall be equivalent to mailing.    .

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this Policy has been

WRG Policies
07247

DECLARATIONS:

ITEM 1.   (a)   Named Assured:- W.R. GRACE AND CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

          (b)   Address of Named Assured:- 1114 Avenue of the Americas, New York, N.Y.10038.

ITEM 2.   (a)   Underlying Umbrella Policies:- 79DD1633C
                                                KYO17582

          (b)   Underlying Umbrella Insurers:- Certain Insurance Companies

ITEM 3.   Underlying Umbrella Limits
          (Insuring Agreement II):-                    U.S $ 5,000,000

ITEM 4.   Underlying Umbrella Aggregate Limits
          (Insuring Agreement II):-                    U.S. $ 5,000,000

ITEM 5.   Limit of Liability
          (Insuring Agreement II):-                    U.S. $ 20,000,000

ITEM 6.   Aggregate Limit of Liability
          (Insuring Agreement II):-                    U.S. $ 20,000,000

ITEM 7.   Policy Period:- 30th June, 1982 to 30th June 1985
                          both days at 12.01 A.M. Local Standard Time

ITEM 8.   Notice of Occurrence (Condition 4) to:-

                          Marsh & McLennan Inc.,
                          1221 Avenue of the Americas,
                          New York, N.Y.10020.

ITEM 9:   Service of Process (Condition 6) upon:-

                          Messrs Mendes and Mount.
                          3 Park Avenue,
                          New York, N.Y.10016
                          U.S.A.

L.P.O.355A (12/76)                    GEC 028806

# Bowring

**COVER NOTE**

**C. T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE

(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
      LONDON EC3

TELEX: 882191

Registered No. 76170 London

Please always
quote this No. KY017782

Date 19th July, 1982

VAT No. 244 251779

In accordance with your instructions we have arranged cover as follows:

**TYPE:**      EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974)

**FORM:**      Short Excess Form as expiring as far as applicable amendments if any to be agreed by Underwriters

**ASSURED:**      W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated, Affiliated Companies, and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted plus joint ventures as expiring

**PERIOD:**      36 months at 30th June, 1982

**INTEREST:**      Coverage in respect Assured's Operations

**SUM INSURED:**      56.25% of
$20,000,000    each occurrence (Aggregate Products and Occupational Disease)

     EXCESS OF:-

     $ 5,000,000    each occurrence (Aggregate Products and Occupational Disease)

     WHICH IN TURN EXCESS OF:-

     Scheduled Primaries or $100,000 Self Insured Retention where no concurrent insurance

**SITUATION:**      Worldwide

GEC 028812

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

WRG Policies
07255

# Bowring

COVER NOTE

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE

(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
LONDON EC3

TELEX: 882191

Registered No. 76170 London

Please always    KY017782
quote this No. .........................................

Date............. 19th July, 1982

VAT No. 244 251 79

In accordance with your instructions we have arranged cover as follows:

| | |
|---|---|
| TYPE: | EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974) |
| FORM: | Short Excess Form as expiring as far as applicable amendments if any to be agreed by Underwriters |
| ASSURED: | W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated, Affiliated Companies, and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted plus joint ventures as expiring |
| PERIOD: | 36 months at 30th June, 1982 |
| INTEREST: | Coverage in respect Assured's Operations |

SUM INSURED:   56.25% of
$20,000,000    each occurrence (Aggregate Products and
                Occupational Disease)

EXCESS OF:-

$ 5,000,000    each occurrence (Aggregate Products and
                Occupational Disease)

WHICH IN TURN EXCESS OF:-

Scheduled Primaries or $100,000 Self Insured Retention where no
concurrent insurance

SITUATION:     Worldwide

For the attention of Mr F. Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

GEC 028814

C.T. BOWRING & CO. IINSURANCEI LTD.

WRG Policies
07257