# EXHIBIT K57

*ATTENTION* XIV 4
*PLEASE NOTE*

SEND ALL CLAIMS TO:
NATIONAL UNDERWRITING AGENCY, INC.
150 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

**TRANSIT CASUALTY COMPANY**
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

# Declarations—Excess Umbrella Policy

## SCU 956259
Policy Number

Renewal of No. __SCU 955-978__

Item 1. Named Insured:  **W. R. Grace & Company**

Item 2. Address:  **1114 Avenue of the Americas**
**New York, New York   10036**

Item 3. Policy Period:  From: **June 30, 1982**  To: **June 30, 1983**
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Limits of Liability:  **$4,750,000 each occurrence and/or in the aggregate part**
**of $20,000,000 excess of $5,000,000 excess of underlying.**

Item 5. Premium:  Advance: **$65,313.**  Annual Minimum: **$65,313.**

Rate: **23.7% of .0350**  Premium Basis:  **per $1,000 of sales**

When used as a premium basis:
1. **"admissions"** means the total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;
2. **"cost"** means the total cost to the named insured with respect to operations performed for the named insured during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, whether included or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;
3. **"receipts"** means the gross amount of money charged by the named insured for such operations by the named insured or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;
4. **"remuneration"** means the entire remuneration earned during the policy period by all employees of the named insured, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company;
5. **"sales"** means the gross amount of money charged by the named insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the named insured and such others collect as a separate item and remit directly to a governmental division.

Countersignature Date  **August 10,**  19 **82**

Authorized Representative

T.V. 9810 A

GEC 027996

**TRANSIT CASUALTY COMPANY**
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

SCU 956-239

# Excess Umbrella Coverage—Insuring Agreements

**1. Coverage**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the insured for all sums which the insured shall be obliged to pay by reason of the liability imposed upon the insured by law, or assumed under contract or agreement by the insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom.

(b) Property Damage.

(c) Advertising Liability.

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

**UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:**

| Carrier | Limits |
|---|---|
| Underwriters at Lloyd's London & British Ins. Cos. (80%) Cover Note No. PY 107779 | $5,000,000 each occurrence and/or in the aggregate excess of primary insurances. |
| Transit Casualty Company UMB 950-239 (20%) | |

**2. Limit of Liability — Underlying Limits**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $ 5,000,000.    ultimate net loss in respect of each occurrence, but

(b) $ 5,000,000.    in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the insured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $ 4,750,000 part of $20,000,000    ultimate net loss in all in respect of each occurrence — subject to a limit of

(d) $ 4,750,000 part of $20,000,000    in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the insured.

08/10/82

T.V. 9812 A
mcc

GEC 027997

WRG Policies
06457

# Conditions

Transit Casualty (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.

I.   **Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

II.   **Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

III.   **Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

IV.   **Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

V.   **Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

VI.   **Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

VII.   **Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED. If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

VIII.   **Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

Secretary                                                                                           President

GEC 028004

WRG Policies
06464

# EXHIBIT K58



6431-5220
Members Of

BROKER                 CODE NO.    LOC    KIND     POOL    COM.

MARSH & McL. NAN, INC.                                           10%

1221 AVENUE OF THE AMERICAS

NEW YORK, NEW YORK  10020

NUMBER

6482- 5442

# ☒ GRANITE STATE INSURANCE COMPANY
# ☐ NEW HAMPSHIRE INSURANCE COMPANY

## PACIFIC STARR of NEW YORK, INC.

### UNDERWRITING MANAGERS
### NEW YORK

### DECLARATIONS

1. Assured:    **W. R. GRACE & CO., ET AL –**
   **(AS MORE FULLY DESCRIBED IN THE UNDERLYING POLICY/IES)**

      Address:    **1114 AVENUE OF THE AMERICAS**
   **NEW YORK, NEW YORK  10038**

2. Policy Period: From        **JUNE 30, 1982  TO  JUNE 30, 1983**
   both days at **12:01 A.M.**    (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and conditions of the form(s) attached.

3. Amount:     **$ 4,000,000.  PART OF**
   **$20,000,000.  EXCESS OF**
   **$ 5,000,000.  EXCESS OF UNDERLYING**

4. Coverage:    **EXCESS UMBRELLA LIABILITY**

5. Premium: A) Provisional or deposit premium    $ 55,000.00

             B) Minimum Premium                 $ 55,000.00

             C) Basis of Adjustment (Rate)         ADJ. $.0350 PER 1,000.00 SALES

             D) Audit Period                      NONE                                GEC 028005

             E) Currency: U.S. Dollars

Assignment of this Policy shall not be valid except with the written consent of this Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by written notice or by surrender of this Policy to the Company. This Policy may also be cancelled, with or without the return or tender of the unearned premium, by the Company or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's address as shown herein, not less than 30 days written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

Not withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written, it is understood and agreed that whenever an additional or return premium of $10.00 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

In Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_Trevor E. Gapin_ Secretary                                     _Robert B. Sanborn_ President

                                  **WRG Policies**      PACIFIC STARR OF NEW YORK, INC.

Countersigned      JULY 8, 1982  TD/yn              **06465**                 UNDERWRITING MANAGERS

1114 PSNY

02663

## EXCESS UMBRELLA POLICY

Named Assured: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.

### SCHEDULE

.3:9

| ITEM 1. | NAMED ASSURED | W. R. GRACE & CO., ET AL |
|---------|---------------|--------------------------|
| ITEM 2. | Underlying Umbrella Policies: | UNDERWRITERS AT LLOYD'S, LONDON AND BRITISH COMPANIES |
| ITEM 3. | Underlying Umbrella limits (Insuring Agreement II): | $5,000,000. |
| ITEM 4. | Underlying Umbrella Aggregate Limits (Insuring Agreement II): | $5,000,000. |
| ITEM 5. | Limit of Liability (Insuring Agreement III): | $4,000,000. PART OF $20,000,000. |
| ITEM 6. | Aggregate Limit of Liability (Insuring Agreement II): | $4,000,000. PART OF $20,000,000. |
| ITEM 7. | Notice of Occurrence (Conditions 4) to: | Pacific Starr of New York, Inc. |
|         |               | 99 John Street |
|         |               | New York, New York  10038 |

### INSURING AGREEMENTS

**COVERAGE**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability

  (a) imposed upon the Assured by law,

or

  (b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured while acting in his capacity as such.

for damages, direct or consequential and expenses on account of:

  (i) Personal injuries, including death at any time resulting therefrom,

  (ii) Property damage,

  (iii) Advertising liability,

caused by or arising out of each occurrence happening anywhere in the World, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Schedule, (hereinafter called the "Underlying Umbrella Insurers").

Attached to and forming part of Policy No.   6482-5442

Issued to:  W. R. GRACE & CO., ET AL

Dated:   JULY 8, 1982

GEC 028006

P-431-PSNY

WRG Policies 06466

☒ GRANITE STATE INSURANCE COMPANY

☐ NEW HAMPSHIRE INSURANCE COMPANY

PACIFIC STARR OF NEW YORK, INC.
Underwriting Managers

By _____

## II. LIMIT OF LIABILITY - UNDERLYING LIMITS

It is expressly agreed that liability shall attacn to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:-

| $ (as stated in Item 3 of the Declarations) | Ultimate net loss in respect of each occurrence, but |
| $ (as stated in Item 4 of the Declarations) | in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured. |

and the Company shall then be liable to pay only the excess ther of up to a further

| $ (as stated in Item 5 of the Declarations) | ultimate net loss in all in respect each occurrence-subject to a limit |
| $ (as stated in Item 6 of the Declarations) | in the aggregate for each annual pe iod during the currency of this Po cy separately, in respect of Pro ucts Liability and separately in r spect of Personal Injury (fatal non-fatal) by Occupational Disea sustained by any employees of t Assured. |

## CONDITIONS

### 1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY-

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Schedule shall be reduced by .ny amounts due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph, and to all the other terms and conditions of of this Policy, in the event that Personal Injury or Property Damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Assured for liability in respect to such ᴾ~rsonal Injury or Property Damage without payment of addition-premium.

### 2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE-

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Schedule prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of the Prior Insurance and Non Cumulation of Liability Condition of the Underlying Umbrella Policies.

### 3. CANCELLATION-

This Policy may be cancelled by the Named Assured or by the Company or their representative by mailing written notice to the other party stating when, not less than thirty (30) days (ten [1 days for non-payment of premium) thereafter, cancellation shall effective. The mailing of notice as aforesaid by the Company their representative to the Named Assured at the address shov in this Policy shall be sufficient proof of notice and the Insuran under this Policy shall end on the effective date and hour cancellation stated in the notice. Delivery of such written noti either by the Named Assured or by the Company or their repr sentative shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Cor pany shall retain the customary short rate proportion of the pr mium for the period this Policy has been in force. If this Poli shall be cancelled by the Company the Company shall retair pro rata proportion of the premium for the period this Polic been in force. Notice of cancellation by the Company sha effective even though the Company makes no payment or te of return premium.

### 4. NOTICE OF OCCURRENCE-

Whenever the Assured has information from which they reasonably conclude that an occurrence covered hereunder i volves injuries or damage which in the event that the Assure shall be held liable, is likely to involve this Policy, notice shall sent as stated in Item 7 of the Schedule as soon as practicabl provided however, that failure to give notice of any occurren which at the time of its happening did not appear to involve th Policy, but which, at a later date, would appear to give rise claims hereunder, shall not prejudice such claim.

### 5. OTHER INSURANCE-

If other valid and collectible insurance with any other Insur is available to the Assured covering a loss also covered by th Policy, other than Insurance that is in excess of the Insurance a forded by this Policy, the Insurance afforded by this Policy shall in excess of and shall not contribute with such other insurance.

GEC 028007

WRG Policies
06467

# EXHIBIT K59

**TRANSIT CASUALTY COMPANY**
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)


SEND ALL CLAIMS TO:
NATIONAL UNDERWRITING AGENCY, INC.
150 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

# Declarations—Excess Umbrella Policy     X V. 4

## SCU 956535
Policy Number

Renewal of No. __SCU 956259__

Item 1. Named Insured:   **W. R. Grace & Company**

Item 2. Address:   **1114 Avenue of the Americas
New York, New York    10036**

Item 3. Policy Period:   From: **June 30, 1983**   To: **June 30, 1984**
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Limits of Liability:   **$4,750,000 each occurrence and/or in the aggregate part
of $20,000,000 excess of $5,000,000 excess underlying.**

Item 5. Premium:   Advance: **$71,250.**     Annual Minimum: **$71,250**

Rate: **23.75% of .0350**     Premium Basis:   **per 1,000 sales**

When used as a premium basis:

1. **"admissions"** means the total number of persons, other than employees of the **named insured**, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

2. **"cost"** means the total cost to the **named insured** with respect to operations performed for the **named insured** during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

3. **"receipts"** means the gross amount of money charged by the **named insured** for such operations by the **named insured** or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the **named insured** collects as a separate item and remits directly to a governmental division;

4. **"remuneration"** means the entire remuneration earned during the policy period by proprietors and by all employees of the **named insured**, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company;

5. **"sales"** means the gross amount of money charged by the **named insured** or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the **named insured** and such others collect as a separate item and remit directly to a governmental division.

Countersignature Date   **July 25,**   19 **83**

Authorized Representative

T.V. 9810 A
**mcc**

GEC 028392

WRG Policies
06845

ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

SCU 965535

# Excess Umbrella Coverage—Insuring Agreements

**1. Coverage**

The Company hereby agrees. subject to the limitations. terms and conditions hereinafter mentioned. to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages. direct or consequential and expenses on account of:

(a) Personal Injuries. including death at any time resulting therefrom.

(b) Property Damage.

(c) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world. and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

**UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:**

Carrier

Limits

Underwriters at Lloyd's London &
British Ins. Cos.
(80%)
Cover Note No. KY 017582

$5,000,000 each occurrence and/or
in the aggregate excess of primary

Transit Casualty Company
UMB 950239
(20%)

**2. Limit of Liability — Underlying Limits**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $ 5,000,000.            ultimate net loss in respect of each occurrence, but

(b) $ 5,000,000.            in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the Insured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $ 4,750,000 part of        ultimate net loss in all in respect of each occurrence — subject to a limit of
$20,000,000

(d) $ 4,750,000 part of        in the aggregate for each annual period during the currency of this policy, separately in
$20,000,000                    respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the Insured.

07-23-83
T.V. 9812 A
mcc

GEC 028393

WRG Policies
06846

# Conditions

Transit Casualty (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy;

**The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.**

**I.    Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

**II.    Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**III.    Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

**IV.    Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

**V.    Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

**VI.    Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**VII.    Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED. If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

**VIII.    Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

Secretary

W. L. Gregory

WRG Policies
06853    President

# EXHIBIT K60

06/30/83 - 06/30/84
GRANITE STATE INSURANCE
POLICY NO.:  6483-5666
LIMIT:   $4M PART OF $20M XS $5M

GEC 028402

*VOL. XV, TABS*

NUMBER
6483- 5666



# ☒ GRANITE STATE INSURANCE COMPANY
# ☐ NEW HAMPSHIRE INSURANCE COMPANY

## PACIFIC STARR of NEW YORK, INC.

### UNDERWRITING MANAGERS
### NEW YORK

### DECLARATIONS

1. **Assured:** W. R. GRACE & CO., ET AL
   (AS MORE FULLY DEFINED IN THE UNDERLYING POLICY/IES)

   **Address:** 1114 AVENUE OF THE AMERICAS
   NEW YORK, NEW YORK 10038

2. **Policy Period: From**    JUNE 30, 1983 TO JUNE 30, 1984
   both days at 12:01 A.M. (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and conditions of the form(s) attached.

3. **Amount:**   $ 4,000,000. PART OF
   $20,000,000. EXCESS OF
   $ 5,000,000. EXCESS OF UNDERLYING

4. **Coverage:** EXCESS UMBRELLA LIABILITY

5. **Premium: A) Provisional or deposit premium**    $ 60,000.00

   B) Minimum Premium    $ 60,000.00

   C) Basis of Adjustment (Rate)    FLAT

   D) Audit Period    NONE
   E) Currency: U.S. Dollars

Assignment of this Policy shall not be valid except with the written consent of this Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by written notice or by surrender of this Policy to the Company. This Policy may also be cancelled, with or without the return or tender of the unearned premium, by the Company or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's address as shown herein, not less than 30 days written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

Not withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written, it is understood and agreed that whenever an additional or return premium of $10.00 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

In Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

*Marion E. Gafen* Secretary

*Robert B. Sanborn* President

PACIFIC STARR OF NEW YORK, INC.
UNDERWRITING MANAGERS

Countersigned   AUGUST 2, 1983   JG/lp
1114 PSNY

(By) _____

GEC 028403

ORIGINAL

WRG Policies
06855

## EXCESS UMBRELLA POLICY

**Named Assured:** As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.

## SCHEDULE

| | | |
|---|---|---|
| ITEM 1. | NAMED ASSURED | W. R. GRACE & CO., ET AL |
| ITEM 2. | Underlying Umbrella Policies: | UNDERWRITERS AT LLOYDS, LONDON AND BRITISH COMPANIES |
| ITEM 3. | Underlying Umbrella limits (Insuring Agreement II): | $5,000,000. |
| ITEM 4. | Underlying Umbrella Aggregate Limits (Insuring Agreement II): | $5,000,000. |
| ITEM 5. | Limit of Liability (Insuring Agreement II): | $4,000,000. PART OF $20,000,000. |
| ITEM 6. | Aggregate Limit of Liability (Insuring Agreement II): | $4,000,000. PART OF $20,000,000. |
| ITEM 7. | Notice of Occurrence (Conditions 4) to: | Pacific Starr of New York, Inc. 99 JOHN STREET NEW YORK, NEW YORK 10038 |

## INSURING AGREEMENTS

**L COVERAGE**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability

(a) imposed upon the Assured by law,

or

(b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured while acting in his capacity as such.

for damages, direct or consequential and expenses on account of:

(i) Personal injuries, including death at any time resulting therefrom,

(ii) Property damage,

(iii) Advertising liability,

caused by or arising out of each occurrence happening anywhere in the World, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Schedule, (hereinafter called the "Underlying Umbrella Insurers").

WRG Policies
06856

Attached to and forming part of Policy No.  6483-5666

☒ GRANITE STATE INSURANCE COMPANY

☐ NEW HAMPSHIRE INSURANCE COMPANY

Issued to:  W. R. GRACE & CO., ET AL

Dated:  AUGUST 2, 1983

PACIFIC STARR OF NEW YORK, INC.
Underwriting Managers

By ...............................................

GEC 028404

P-431-PSNY

## II. LIMIT OF LIABILITY - UNDERLYING LIMITS

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:-

| | |
|---|---|
| $ (as stated in Item 3 of the Declarations) | Ultimate net loss in respect of each occurrence, but |
| $ (as stated in Item 4 of the Declarations) | in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured. |

and the Company shall then be liable to pay only the excess thereof up to a further

| | |
|---|---|
| $ (as stated in Item 5 of the Declarations). | ultimate net loss in all in respect of each occurrence-subject to a limit of |
| $ (as stated in Item 6 of the Declarations) | in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured. |

GEC 028405

# CONDITIONS

## 1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY-

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Schedule shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph, and to all the other terms and conditions of of this Policy, in the event that Personal Injury or Property Damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Assured for liability in respect to such Personal Injury or Property Damage without payment of additional premium.

## 2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE-

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Schedule prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of the Prior Insurance and Non Cumulation of Liability Condition of the Underlying Umbrella Policies.

## 3. CANCELLATION-

This Policy may be cancelled by the Named Assured or by the Company or their representative by mailing written notice to the

other party stating when, not less than thirty (30) days (ten [10] days for non-payment of premium) thereafter, cancellation shall be effective. The mailing of notice as aforesaid by the Company or their representative to the Named Assured at the address shown in this Policy shall be sufficient proof of notice and the Insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Company or their representative shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Company shall retain the customary short rate proportion of the premium for the period this Policy has been in force. If this Policy shall be cancelled by the Company the Company shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Company shall be effective even though the Company makes no payment or tender of return premium.

## 4. NOTICE OF OCCURRENCE-

Whenever the Assured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which in the event that the Assured shall be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 7 of the Schedule as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claim.

## 5. OTHER INSURANCE-

If other valid and collectible insurance with any other Insurer is available to the Assured covering a loss also covered by this Policy, other than Insurance that is in excess of the Insurance afforded by this Policy, the Insurance afforded by this Policy shall be in excess of and shall not contribute with such Insurance.

WRG Policies
06857

# EXHIBIT K61

03134    Vol 10 gb 2

# INA

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| W.R. Grace & Co., Etal | | | 5 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XMO | 01 72 04 | 6/30/84 to 6/30/85 | 6/30/84 |
| Issued By (Name of Insurance Company) | | | |
| Pacific Employers Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

In consideration of the premium charged for this policy it is agreed that

in the event of cancellation for other than non-payment of premium,

sixty (60) days notice will be sent to the Insured.

GEC 028785

6/14/85

Authorized Agent

CC-1E15 Ptd. in U.S.A.

ORIGINAL

WRG Policies
07228

T063

**INA**  PACIFIC EMPLOYERS INSURANCE COMPANY, LOS ANGELES, CALIFORNIA

| EXCESS BLANKET CATASTROPHE LIABILITY POLICY | DECLARATIONS |
|---|---|

XMO **01 72 04**

**Named Insured** W.R. GRACE & CO., ETAL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANIZATIONS OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED PLUS JOINT VENTURES AS EXPIRING

**Address** GRACE PLAZA, 1114 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK 10036

Policy Period: From    6/30/84    to    6/30/85    12:01 A.M., standard time at the address of the Named Insured as stated herein.

Audit Period: Annual, unless otherwise stated    5.85% RATE ON GROSS SALES
Endorsements attached to policy at inception:    Nuclear Energy Liability Exclusion

**LIMITS OF LIABILITY**

PEIC'S LIMIT OF LIABILITY:

ITEM 1. $ 250,000. 170 5,000,000.    arising out of any one occurrence because of personal injury, property damage or advertising injury or any combination thereof.

ITEM 2. 170 250,000. 5,000,000.    arising out of all occurrences during each policy year because of the products hazard, or the completed operations hazard, or both combined.

INSURED'S RETAINED LIMIT:
Underlying Insurance, or

ITEM 3. $   100,000.    because of personal injury, property damage or advertising injury arising out of any one occurrence not within the terms of coverage of underlying insurance but within the terms of the coverage of this insurance.

**PREMIUM COMPUTATION**

| Estimated | Rate per 5.85% PER 100 GROSS SALES WHICH IS 100% OF 5,000,000. LAYER PRICE | Total Advance Premium |
|---|---|---|
| $27,000. | | $27,000.00 |

MINIMUM PREMIUM $   10,000.

In the event of cancellation by the Named Insured, PEIC shall receive and retain not less than $ 10,000.    as the Minimum Premium.

8/1/84    Countersigned By _____
Authorized agent

LD-6893 Ptg. in U.S.A.

WRG Policies
07229

GEC 028786

**4. Appeals**

If the Insured or the Insured's underlying insurer elects not to appeal a judgment in excess of the retained limit, PEIC may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of PEIC for ultimate net loss exceed the amount specified in the Limits of Liability section of the Declarations plus the taxable costs, disbursements and interest incidental to such appeal.

**5. Action Against PEIC**

No action shall lie against PEIC unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and PEIC. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join PEIC as a co-defendant in any action against the Insured to determine the Insured's liability, nor shall PEIC be impleaded by the Insured or his Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve PEIC of any of its obligations hereunder.

**6. Other Insurance**

If collectible insurance with any insurer is available to the Insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over PEIC's limit of liability provided in this policy.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, PEIC shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7. Subrogation**

In the event of any payment under this policy, PEIC shall be subrogated to all the Insured's rights of recovery therefor against any person or organization; and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Any amount so recovered shall be apportioned as follows:

Any interest (including the Insured's) having paid an amount in excess of the retained limit plus PEIC's limit of liability hereunder shall be reimbursed first to the extent of actual payment. PEIC shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the Insured or any underlying insurer, as their interest may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by PEIC, it shall bear the expenses thereof.

**8. Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop PEIC from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**9. Assignment**

Assignment of interest under this policy shall not bind PEIC until its consent is endorsed hereon; if, however, the Named Insured shall die, or be adjudged bankrupt or insolvent, such insurance as is afforded by this policy shall apply (a) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (b) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy**

If this policy is issued for a period of three years, the limits of PEIC's liability shall apply separately to each consecutive policy year thereof.

**11. Maintenance of Underlying Policies**

The Named Insured shall maintain the underlying policies (and renewals thereof) with limits of liability as stated in Schedule A in full effect during this policy period, except for any reduction or exhaustion of the aggregate limit or limits contained in such policies solely by payment of claims arising out of occurrences which happen during this policy period. Failure of the Named Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure PEIC shall be liable only to the extent that it would have been liable had the Named Insured complied therewith.

The Named Insured shall give PEIC written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any underlying policy, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

**12. Cancellation**

This policy may be cancelled by the Named Insured by surrender thereof to PEIC or any of its authorized agents or by mailing to PEIC written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by PEIC by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by PEIC shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If PEIC cancels, earned premium shall be computed pro rata. When this policy insures more than one Named Insured cancellation may be effected by the first named of such Named Insured for the account of all Insureds. Notice of cancellation by PEIC to the first Named Insured shall be deemed notice to all Insureds and payment of any unearned premium to such first named Named Insured shall be for the account of all Insureds. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**13. Acceptance**

By acceptance of this policy, the Insured agrees that this policy embodies all agreements existing between himself and PEIC or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the PACIFIC EMPLOYERS INSURANCE COMPANY has caused this policy to be signed by its President and a Secretary in Los Angeles, California, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

DENNIS C. POULSEN, Secretary

BERNARD A. BUGE, JR., President

WRG Policies
07233

GEC 028790