# EXHIBIT K64

XVI, 7

**TRANSIT CASUALTY COMPANY**
LOS ANGELES, CALIFORNIA
T. LOUIS, MISSOURI
(A stock Insurance company, herein called the company)

# Declarations—Excess Umbrella Policy

**SCU 956881**
Policy Number

Renewal of No. _____ SCU 956 535 _____

Item 1. Named Insured:       W. R. Grace & Company

Item 2. Address:             1114 Avenue of the Americas
                             New York, New York  10036

Item 3. Policy Period:       From: June 30, 1984    To: June 30, 1985
                             12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Limits of Liability: $1,250,000 each occurrence and/or in the aggregate part of
                             $20,000,000 excess of $5,000,000 excess underlying

Item 5. Premium:    Advance:  $18,750         Annual Minimum:  $18,750

                    Rate:     Flat            Premium Basis:

GEC 028832

When used as a premium basis:
1. **"admissions"** means the total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;
2. **"cost"** means the total cost to the named insured with respect to operations performed for the named insured during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;
3. **"receipts"** means the gross amount of money charged by the named insured for such operations by the named insured or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;
4. **"remuneration"** means the entire remuneration earned during the policy period by proprietors and by all employees of the named insured, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company;
5. **"sales"** means the gross amount of money charged by the named insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the named insured and such others collect as a separate item and remit directly to a governmental division.

Countersignature Date   July 18,   19 84

Authorized Representative

T.V. 9810 A

WRG Policies
07275

TRANSIT CASUALTY COMPANY
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

W. R. GRACE & COMPANY
SCU 956 881

# Excess Umbrella Coverage—Insuring Agreements

**1. Coverage**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom,

(b) Property Damage,

(c) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

**UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:**

| Carrier | Limits |
|---|---|
| Underwriters at Lloyd's London & British Insurance Companies (80%) Cover Note Number KY 017582 | $5,000,000 each occurrence and/or in the aggregate excess of primary insurances. |
| Transit Casualty Company UMB 950 239 (15%) | |
| Pacific Employers Insurance Company Policy Number T.B.A. (5%) | |

**2. Limit of Liability — Underlying Limits**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $ 5,000,000   ultimate net loss in respect of each occurrence, but

(b) $ 5,000,000   in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $ 1,250,000 part of $20,000,000   ultimate net loss in all in respect of each occurrence — subject to a limit of

(d) $ 1,250,000 part of $20,000,000   in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured.

7-18-84
T.V. 9812 A
dkw

GEC 028833

WRG Policies
07276

# Conditions

Transit Casualty (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.

**I. Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

**II. Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**III. Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

**IV. Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

**V. Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

**VI. Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured: provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**VII. Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficent notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED. If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

**VIII. Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

Secretary

President

GEC 028840

WRG Policies
07283

# EXHIBIT K65

VOL. XVI    T4E8

## CNA/insurance

**LIABILITY POLICY**

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW
(A stock insurance company, herein called the company)
333 So. Wabash Ave./Chicago, Ill. 60604

Item X   **DECLARATIONS**

1.  
| PRODUCER NO. | BRANCH | PREFIX | POLICY NUMBER |
|---|---|---|---|
| 135975 | 693 | RDX | 178 45 29 |

[X] CONTINENTAL CASUALTY COMPANY
[ ] NATIONAL FIRE INSURANCE COMPANY of Hartford
[ ] AMERICAN CASUALTY COMPANY of Reading, Pa.
[ ] TRANSPORTATION INSURANCE COMPANY
[ ] TRANSCONTINENTAL INSURANCE COMPANY
[ ] VALLEY FORGE INSURANCE COMPANY

NAMED INSURED & ADDRESS: (Number & Street, Town, County & State)

W. R. GRACE & CO.
AND AS PER ENDORSEMENT #1
1114 AVENUE OF AMERICAS
NEW YORK, NEW YORK 10036

2. Policy Period: (hereinafter called "this policy period")
   6-30-84    To:    6-30-85
   12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN.

...0238

Schedule of Underlying Insurance: Insurer and Policy Number

SEE ENDORSEMENT #2

4. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COLUMN I Company Limits | | IN EXCESS OF COLUMN II Underlying Limits | COLUMN III Total Limits | Coverage |
|---|---|---|---|---|
| $ | Each Person | $ | $ | A. Bodily Injury Automobile |
| $ | Each Occurrence | $ | $ | |
| $ | Each Person* | $ | $ | B. Bodily Injury Except Automobile |
| $ | Each Occurrence | $ | $ | |
| $ | Aggregate | $ | $ | |
| $ | Each Occurrence | $ | $ | C. Property Damage Automobile |
| $ | Each Occurrence | $ | $ | D. Property Damage Except Automobile |
| $ | Aggregate | $ | $ | |
| $ | Each Occurrence | $ | $ | E. Combined Single Limit Bodily Injury and Property Damage |
| $ | Aggregate | $ | $ | |
| $1,000,000. PART OF $20,000,000. | | $ 5,000,000. | $25,000,000. | F. Other COMBINED SINGLE LIMIT EACH OCCURRENCE AND AGGREGATE WHERE APPLICABLE |

5. Premium Computation

| Premium Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| 1984 CALENDAR YEAR GROSS SALES | TBD | .00175 | $16,250. |

Deposit Premium: $ 16,250.  on effective date of policy

Minimum Premium: $ 16,250.  Annual
$ _____ Policy term

Audit Period  ANNUAL

*Absence of entry means the "each person" limit does not apply.

Countersigned by  Harriet Ryan
Authorized Agent

G-40219-A

GEC 028842

WRG Policies
07285

The company agrees with the named insured, in consideration of the payment of the premium and subject to the provisions of this policy:

## PART I — INSURING AGREEMENTS

**1. Excess Liability Indemnity**

To indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance inserted in column II of item 4 in the declarations; provided that this policy shall apply only to those coverages for which a limit of liability is inserted in column I; provided further that the limit of the company's liability under this policy shall not ceed the applicable amount inserted in column I.

The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

If the applicable coverage in the immediate underlying policy insures accidents rather than occurrences, then "accident" is substituted for "occurrence" in the applicable coverage of this policy.

**2. Policy Period: Termination of Underlying Insurance**

This policy applies to injury or destruction taking place during this policy period; provided that when the immediate underlying policy insures occurrences taking place during its policy period, instead of injury or destruction taking place during its policy period, then this policy likewise applies to occurrences taking place during this policy period and "occurrences" is substituted for "injury or destruction" in Part III of this policy.

If the immediate underlying policy is canceled, this policy likewise is canceled effective on the same date at the same time and without notice to the insureds. If the immediate underlying policy otherwise ceases to apply (for reasons other than the exhaustion of an aggregate limit of liability), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the insureds.

## PART II — DEFINITIONS

**1. Immediate Underlying Policy**

"Immediate underlying policy" means the policy of the underlying insurance which provides the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this policy.

**2. Loss**

"Loss" means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses nor costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses.

**3. Underlying Insurance**

"Underlying insurance" means the insurance policies listed in item 3 in the declarations and includes any renewal or replacement of such policies.

## PART III

### PROVISIONS GOVERNING THE APPLICATION OF THE AGGREGATE LIMITS OF LIABILITY

**1. Reduction of the Aggregate**

This provision applies only if this policy contains an aggregate limit of liability which applies to the occurrence.

If the "each occurrence" or "each person" limit of liability of the underlying insurance is less than as stated in column II in item 4 in the declarations because the aggregate limits of liability of the underlying insurance have been reduced, this policy becomes excess of such reduced limit of liability if such reduction is solely the result of injury or destruction occurring after the inception date of this policy and not before. Nothing contained ein shall operate to increase the limit of the company's liability.

**2. Application of the Aggregate to Separate Projects**

To the extent that the aggregate limits of liability of the immediate underlying policy apply separately to various operations, projects, locations, hazards or types of injury, the aggregate limits of liability of this policy likewise apply separately to such operations, projects, locations, hazards or types of injury.

**3. Application of the Aggregate to Periods of Time**

The aggregate limits of liability of this policy apply separately to each aggregate period. The first aggregate period of this policy begins on the effective date of this policy and ends on the next termination date of the aggregate period of the immediate underlying policy. Any succeeding aggregate period of this policy is concurrent with the aggregate period of the immediate underlying policy unless it is the final aggregate period. The final aggregate period of this policy begins on the termination date of the aggregate period of the immediate underlying policy immediately preceding the expiration date of this policy and ends on the expiration date of this policy.

This paragraph does not apply if the expiration date of this policy and the expiration date or anniversary date of the immediate underlying policy are identical. If this policy is a renewal of a similar policy underwritten by this company, the applicable aggregate limit of liability of this policy for the first period shall be reduced by any amounts paid or payable on account of injury or destruction taking place during the final aggregate period of the policy renewed. The final aggregate period of the policy renewed shall be determined in the same manner as the final aggregate period for this policy.

## PART IV — NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those in the immediate underlying policy.

Except with respect to automobiles registered in the State of New York, this policy does not apply:

A. to bodily injury or property damage

(1) with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties.

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

GEC 028843

WRG Policies
07286

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

## PART V — CONDITIONS

**1. Underlying Insurance — Changes During this Policy Period**

Any change in coverage in the underlying insurance shall be promptly reported to the company and the insured shall, upon request, furnish the company with copies of such changes.

Any change in the premium for the underlying insurance shall be promptly reported to the company and the premium for this policy, subject to the minimum premium, may be adjusted in accordance with the manuals of the company then in effect.

**2. Notice of Loss; Participation in Defense by the Company**

Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

**3. Action Against Company**

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy.

Any person or organization or the legal representative thereof who has secured a judgment against the insured shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability. Any payments by the company under this condition 3 shall discharge the company's obligation to the insured to the extent of such payments.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**4. Subrogation and Other Recoveries**

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person, organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after the occurrence to prejudice such rights.

Because this policy affords excess coverage, the insured's right of recovery cannot always be exclusively subrogated to the company. It is, therefore, agreed that the company shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow in the principle that any interest, including the insured, that shall have paid an amount over and above any payment under this policy shall first be reimbursed up to the amount paid by such interest; the company shall then be reimbursed out of any balance then remaining up to the amounts paid as the result of loss covered under this policy; and lastly, the interests, including the insured, of whom this coverage is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amounts shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

**5. Other Insurance**

This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy.

If, with respect to a loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects such loss; provided, that if the applicable limit of liability of this policy is greater than the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the applicable limit of liability afforded by this policy.

**6. Cancellation**

This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in the declarations written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium or minimum premium, whichever is greater, shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**7. First Named Insured**

The insured first named in item 1 in the declarations is authorized to act on behalf of all named insureds and other insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy. The insured first named in item 1 in the declarations is responsible for the payment of all premiums but the other named insureds jointly and severally agree to make such premium payments in full if the insured first named in item 1 fails to pay the amount due within thirty days after the company gives a written demand for payment to the insured first named in item 1.

In witness whereof, the company has caused this policy to be signed by its president and a secretary at Chicago, Illinois, but the policy shall not become valid until countersigned on the declarations page by a duly authorized representative of the company.

| Continental Casualty Company | National Fire Insurance Company of Hartford | American Casualty Company of Reading, Pa. |
|---|---|---|
| Transportation Insurance Company | Transcontinental Insurance Company | Valley Forge Insurance Company |

*Corporate Secretary*        *President*

06311

NAMED INSURED

W. R. GRACE & CO. AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANIZATIONS, OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 1 | RDX 178 4529 | | |



GW

Countersigned by _____
Authorized Representative

G-39543-A

GEC 028845

WRG Policies
07288

05212

## SCHEDULE OF UNDERLYING INSURANCE

IT IS AGREED THAT ITEM 3 OF THE POLICY DECLARATIONS, LIMITS OF LIABILITY IS COMPLETED TO READ AS FOLLOWS:

THE COMPANY'S LIABILITY UNDER THIS POLICY IS LIMITED TO:

    $1,000,000. EACH OCCURRENCE
    $1,000,000. AGGREGATE WHERE APPLICABLE

WHICH IS PART OF $20,000,000. EXCESS OF $5,000,000. EXCESS OF PRIMARY AS FOLLOWS:

| | PARTICIPATION | POLICY NUMBER OR RENEWAL THEREOF |
|---|---|---|
| **FIRST LAYER - $5.0 MILLION EXCESS OF PRIMARY** | | |
| VARIOUS BRITISH COMPANIES | $ 4,000,000. | KYO 17582 |
| TRANSIT CASUALTY CO. | 750,000. | UMB 950239 |
| PACIFIC EMPLOYERS GROUP | 250,000. | XM 0017204 |
| | $ 5,000,000. | |
| | | |
| **SECOND LAYER - $20.0 MILLION EXCESS OF $5.0 MILLION** | | |
| LLOYDS & VARIOUS COMPANIES | $11,250,000. | KYO 17782 |
| GRANITE STATE INS. CO. | 4,750,000. | 6484-5866 |
| PACIFIC EMPLOYERS GROUP | 1,750,000. | XCC 012283 |
| TRANSIT CASUALTY CO. | 1,250,000. | SCU 956881 |
| CONTINENTAL CASUALTY CO. | 1,000,000. | RDX 1784529 |
| | $20,000,000. | |

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 2 | RDX 178 4529 | | |


INSURANCE FROM CNA    GW

Countersigned by _____
                          Authorized Representative

G-39543-A

WRG Policies
07289

GEC 028846

# EXHIBIT K66

| Service Office Number | Agency Number | | Old. icy No. |
|---|---|---|---|
| Montgomery & Collins, Inc.<br>50 California St.<br>San Francisco, CA. 94111 | | ☐ New; ☒ Renewal; ☐ Rewrite of:<br>← Agency Name | XMO 01 72 04 |

EXCESS BLANKET CATASTROPHE
LIABILITY POLICY

## PACIFIC EMPLOYERS INSURANCE COMPANY

XMO 01 72 11

Named Insured: W.R. Grace & Co., Etal
Grace Plaza
1114 Avenue of the Americas
Address: New York, New York 10036-7794

Policy Period: From **6/30/85** to **6/30/86**    12:01 A.M., standard time at the address of the Named Insured as stated herein.

Audit Period: Annual, unless otherwise stated
Endorsements attached to policy at inception:  Nuclear Energy Liability Exclusion

### LIMITS OF LIABILITY

PEIC'S LIMIT OF LIABILITY:

ITEM 1. $ **1,000,000.** arising out of any one occurrence because of personal injury,
p/o $5,000,000. property damage or advertising injury or any combination thereof.

ITEM 2. $ **1,000,000.** arising out of all occurrences during each policy year because of
p/o $5,000,000. the products hazard, or the completed operations hazard, or both combined.

INSURED'S RETAINED LIMIT:
Underlying Insurance, or

ITEM 3. $ **100,000.** because of personal injury, property damage or advertising injury arising out of any one occurrence not within the terms of coverage of underlying insurance but within the terms of the coverage of this insurance.

### PREMIUM COMPUTATION

Estimated: 1,515,405,458    Rate per .034 per 1000 Sales    Total Advance Premium: $280,000.

GEC 029337

MINIMUM PREMIUM $ 280,000.

in the event of cancellation by the Named Insured, PEIC shall receive and retain not less than $ 10,000. as the Minimum Premium.

9/10/85
Countersigned By _____

WRG Policies

## PERSONS OR ENTITIES INSURED
(continued)

(d) any person while using, with the permission of the Named Insured, any automobile or aircraft owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission, and any officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured, but only while such automobile or aircraft is being used in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under this paragraph (d):

(i) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place;

(ii) to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee (of whom the Named Insured is a sub-lessee) thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

(iii) to any manufacturer of aircraft, aircraft engines or aviation accessories, or any aviation sales, service or repair organization or airport or hangar operator or their respective employees or agents.

GEC 029339

## RETAINED LIMIT—PEIC'S LIMIT OF LIABILITY

R. )less of the number of (1) Insureds under this policy, (2) persons or organizations who sustain injury or damage, or (3) claims made or suits brought because of personal injury, property damage, or advertising injury, PEIC's liability is limited as follows:

With respect to personal injury, property damage or advertising injury, or any combination thereof, PEIC's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of:

(a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured; or

(b) the amount specified in Item 3. of the Limits of Liability section of the declarations because of personal injury, property damage or advertising injury not within the terms of the coverage of the underlying insurance listed in Schedule A:

then for an amount not exceeding the amount specified in Item 1. of Limits of Liability section of the declarations arising out of any one occurrence.

There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of PEIC, because of either the products hazard or the completed operations hazard, or both combined, arising out of all occurrences during each policy year shall not exceed the amount specified in Item 2. of the Limits of Liability section of the declarations.

If the aggregate limits of liability of the underlying insurance listed in Schedule A are reduced or exhausted because of personal injury, property damage or advertising injury during the period of this policy, PEIN will, subject to PEIC's limit of liability stated above, continue such coverage as is afforded by such listed underlying insurance for the remainder of the policy year of such underlying insurance in excess of the reduced or exhausted limits.

For the purpose of determining the limits of PEIC's liability, (1) all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence, and (2) with respect to advertising injury, all injury arising out of any advertisement, publicity article, broadcast or telecast or any combination thereof involving the same injurious material or act, regardless of the frequency of repetition thereof or the number or kind of media used, whether claim is made by one or more persons, shall be deemed to arise out of one occurrence.

## POLICY PERIOD, TERRITORY

T     olicy applies to personal injury, property damage or advertising injury which occurs anywhere during the policy period.

## EXCLUSIONS

This policy does not apply:

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to property damage to (1) property owned by the Insured, or (2) the Insured's products arising out of such products or any part of such products, or (3) work performed by or on behalf of the Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(c) to loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an insured;

(d) to damages claimed for the withdrawal, inspection, repair, replacement or loss of the use of the Insured's products or work completed by or for the Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(e) to advertising injury resulting from (1) failure of performance of contract, (2) infringement of trade mark, service mark or trade name by use thereof as the trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

(f) to property damage in accordance with the provisions of the property damage exclusion endorsement attached hereto;

(g) as respects parts (b), (c), and (d) of the definition of personal injury, to injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the Named Insured;

(h) as respects part (c) of the definition of personal injury, to injury arising out of any publication or utterance, if the first injurious publication or utterance of the same or similar material by or on behalf of the Named Insured was made prior to the effective date of this policy;

(i) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

WRG Policies
07772

**4. Appeals**

If the Insured or the Insured's underlying insurer elects … ) appeal a judgment in excess of the retained limit, PEIC may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of PEIC for ultimate net loss exceed the amount specified in the Limits of Liability section of the Declarations plus the taxable costs, disbursements and interest incidental to such appeal.

**Action Against PEIC**

No action shall lie against PEIC unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and PEIC. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join PEIC as a co-defendant in any action against the Insured to determine the Insured's liability, nor shall PEIC be impleaded by the Insured or his Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve PEIC of any of its obligations hereunder.

**6. Other Insurance**

…ollectible insurance with any insurer is available to the Insured …ring a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over PEIC's limit of liability provided in this policy.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, PEIC shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**Subrogation**

In the event of any payment under this policy, PEIC shall be subrogated to all the Insured's rights of recovery therefor against any person or organization; and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Any amount so recovered shall be apportioned as follows:

Any interest (including the Insured's) having paid an amount in excess of the retained limit plus PEIC's limit of liability hereunder shall be reimbursed first to the extent of actual payment. PEIC shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the Insured or any underlying insurer, as their interest may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by PEIC, it shall bear the expenses thereof.

**8. Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop PEIC from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**9. Assignment**

Assignment of interest under this policy shall not bind PEIC until its consent is endorsed hereon; if, however, the Named Insured shall die, or be adjudged bankrupt or insolvent, such insurance as is afforded by this policy shall apply (a) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (b) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy**

If this policy is issued for a period of three years, the limits of PEIC's liability shall apply separately to each consecutive policy year thereof.

**11. Maintenance of Underlying Policies**

The Named Insured shall maintain the underlying policies (and renewals thereof) with limits of liability as stated in Schedule A in full effect during this policy period, except for any reduction or exhaustion of the aggregate limit or limits contained in such policies solely by payment of claims arising out of occurrences which happen during this policy period. Failure of the Named Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure PEIC shall be liable only to the extent that it would have been liable had the Named Insured complied therewith.

The Named Insured shall give PEIC written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any underlying policy, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

**12. Cancellation**

This policy may be cancelled by the Named Insured by surrender thereof to PEIC or any of its authorized agents or by mailing to PEIC written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by PEIC by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by PEIC shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If PEIC cancels, earned premium shall be computed pro rata. When this policy insures more than one Named Insured cancellation may be effected by the first named of such Named Insured for the account of all Insureds. Notice of cancellation by PEIC to the first Named Insured shall be deemed notice to all Insureds and payment of any unearned premium to such first named Named Insured shall be for the account of all Insureds. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**13. Acceptance**

By acceptance of this policy, the Insured agrees that this policy embodies all agreements existing between himself and PEIC or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the PACIFIC EMPLOYERS INSURANCE COMPANY has caused this policy to be signed by its President and a Secretary at Los Angeles, California, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

DENNIS C. POULSEN, Secretary

BERNARD A. BUGE, JR., President

# EXHIBIT K67

| Service Office Number | Agency Number |
|---|---|
| Montgomery & Collins, Inc.<br>50 California St.<br>San Francisco, CA. 94111 | |

☐ New; ☒ Renewal; ☐ Rewrite of: — Agency Name

Old Certificate No.

XCC 01 22 83

CERTIFICATE OF EXCESS INSURANCE

## PACIFIC EMPLOYERS INSURANCE COMPANY

**Item 1. Name of Insured —**
W.R. Grace & Co., Etal
Grace Plaza, 1114 Avenue of the Americas
New York, New York 10036-7794

**Item 2. Address —**

XCC 01 23 15

**Item 3. Certificate Term —** From: 6/30/85
To: 6/30/86
12:01 A.M., standard time at the address of the insured as stated in Item 2 above.

**Item 4. Primary Insurance —**

| Primary Carriers | Policy Numbers | Policy Periods |
|---|---|---|
| London | To Follow | 6/30/85 to 6/30/86 |
| PEIC | XMO 01 72 11 | 6/30/85 to 6/30/86 |

**Item 5. Description of Primary Insurance —** Umbrella Liability

**Item 6. Description of Excess Insurance —** $1,000,000. part of $15,000,000. excess of $5,000,000.
Umbrella Liability excess of Primary as per file

**Item 7. Premium —** $76,667.

**Item 8. attached hereto and made a part hereof:**
No. 1 — Nuclear Energy Liability Exclusion Endorsement (Form LC-1012) ; LD6B97

9/10/85

LD-6B98 PTD. IN U.S.A.

GEC 029358

WRG Policies
07791