UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          )  Case No. 01-01139(JKF)
                                )  (Jointly Administered)
W.R. GRACE & CO., et al.,       )
                                )  Multipurpose Room
                                )  824 Market Street
                   Debtors.     )  Wilmington, Delaware 19801
                                )
                                )
                                )  January 26, 2009
                                )  10:39 A.M.


TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE

TELEPHONIC APPEARANCES:

David Parsons, Peg Brickley, Roger Frankel, Jeffrey Boerger,
Richard Cobb, Katharine Mayer, John Baden, Jacob Cohn, Darrell
Scott, Natalie Ramsey, Ari Berman, Sandy Esserman, Daniel Cohn,
David Klingler, Tiffany Cobb, John Phillips, Douglas Mannal,
Margaret Phillips, Rebecca Zubaty, Robert Guttmann, Peter
Lockwood, Walter Slocombe, Carl Pernicone, Christopher Candon,
Marc Lewinstein, Samuel Rubin, Christopher Greco, Brian
Bresnahan, Robert M. Horkovich, David Turetsky, Andrew Craig,
Linda Casey, Scott Baena, Douglas Cameron, John Demmy, Alan
Runyan, Mark Hurford, David Siegel, Paul Norris, Richard Wyron,
Michael Brown, Shayne Spencer, Jay Sakalo, Dale Cockrell,
Theodore Freedman, Kerri Mumford, Anna Newsom, Theodore
Tacconelli, David Klauder, Melani Dritz, Jeffrey Liesemer, Lisa
Esayian, Jonathan Guy, Elizabeth Cabraser, Brian Mukherjee,
David Bernick, Francis Monaco, Debra Felder, Jason Sloganick,
Ira Levee, Daniel Hogan, Joseph Radecki, Jeff Waxman, Marcos
Ramos, Richard Levy, Peter Shawn, James O'Neill, Terence
Edwards, Deanna Boll, Michael Davis, Marti Murray, Robert
Givone, Daniel Glosband, Jeffrey Wisler, Christina Kang, Edward
Longosz, Laura Stover, Alan Rich, Matthew Kramer, James
Restivo, Michael Lastowski, Arlene Krieger, Nathan Finch,
Jennifer Whitener, William Sparks, Janet Baer, Martin Dies,
Edward Westbrook, Craig Bruens, Elizabeth Devine, Thomas
Brandi, Marion Fairey and Daniel Speights

```
ECRO:                      Theresa Pullan

TRANSCRIPTION SERVICE:     TRANSCRIPTS PLUS
                           435 Riverview Circle
                           New Hope, Pennsylvania 18938
                           Telephone:  215-862-1115
                           Facsimile: 215-862-6639
                           e-mail CourtTranscripts@aol.com
```

 Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

1          THE COURT:  Good morning, everyone.  This is the

2    matter of W.R. Grace, Bankruptcy Number 01-11139.  This hearing

3    is entirely taking place by phone.  There is no -- no attorneys

4    are present in the courtroom.  The list I have participating by

5    phone is:  David Parsons, Peg Brickley, Roger Frankel, Jeffrey

6    Boerger, Richard Cobb, Katharine Mayer, John Baden, Jacob Cohn,

7    Darrell Scott, Natalie Ramsey, Ari Berman, Sandy Esserman,

8    Daniel Cohn, David Klingler, Tiffany Cobb, John Phillips,

9    Douglas Mannal, Margaret Phillips, Rebecca Zubaty, Robert

10   Guttmann, Peter Lockwood, Walter Slocombe, Carl Pernicone,

11   Christopher Candon, Marc Lewinstein, Samuel Rubin, Christopher

12   Greco, Brian Bresnahan, Robert M. Horkovich, David Turetsky,

13   Andrew Craig, Linda Casey, Scott Baena, Douglas Cameron, John

14   Demmy, Alan Runyan, Mark Hurford, David Siegel, Paul Norris,

15   Richard Wyron, Michael Brown, Shayne Spencer, Jay Sakalo, Dale

16   Cockrell, Theodore Freedman, Kerri Mumford, Anna Newsom,

17   Theodore Tacconelli, David Klauder, Melani Dritz, Jeffrey

18   Liesemer, Lisa Esayian, Jonathan Guy, Elizabeth Cabraser, Brian

19   Mukherjee, David Bernick, Francis Monaco, Debra Felder, Jason

20   Sloganick, Ira Levee, Daniel Hogan, Joseph Radecki, Jeff

21   Waxman, Marcos Ramos, Richard Levy, Peter Shawn, James O'Neill,

22   Terence Edwards, Deanna Boll, Michael Davis, Marti Murray,

23   Robert Givone, Daniel Glosband, Jeffrey Wisler, Christina Kang,

24   Edward Longosz, Laura Stover, Alan Rich, Matthew Kramer, James

25   Restivo, Michael Lastowski, Arlene Krieger, Nathan Finch,

1   Jennifer Whitener, William Sparks, Janet Baer, Martin Dies,

2   Edward Westbrook, Craig Bruens, Elizabeth Devine, Thomas

3   Brandi, Marion Fairey and Daniel Speights.

4          Ms. Baer?

5          MS. BAER:  Yes, Your Honor.

6          THE COURT:  Are you going to lead through the agenda?

7          MS. BAER:  I am, indeed, Your Honor.  First of all,

8   thank you so much for permitting us to do this by telephone.

9   It saves everybody a lot of time, and thus the estates a lot of

10  money.  So, we greatly appreciate your cooperation in that.

11         Your Honor, on the agenda today, Agenda Items Number

12  1 and 2 are omnibus objections and the like.  We're still

13  working through those matters, and ask that that -- those

14  matters just be continued to the next omnibus hearing on

15  February 23rd.

16         THE COURT:  That's fine.

17         MS. BAER:  And, Your Honor, I believe Delaware

18  counsel will bring you orders to sign continuing those matters.

19         THE COURT:  All right.

20         MS. BAER:  Your Honor, Matter Number 3 on the agenda

21  was the uncontested matter with respect to the nunc pro tunc

22  approval of R. Carl Sill as local counsel for Judge Sanders,

23  the PD FCR.

24         Your Honor, you signed an order on that one actually.

25  However, my client pointed out this morning that the order that

1  was signed indicated nunc pro tunc approval back to September

2  of 2009.  And obviously it should have been September of 2008.

3         So, perhaps counsel could submit a revised order that

4  makes that date correction.

5         MR. RICH:  I will do that.  I apologize for the typo.

6  Alan Rich.

7         THE COURT:  All right.  Thank you, Mr. Rich.

8         MS. BAER:  Your Honor, Agenda Item Number 4 involves

9  the Maricopa County issues that Grace had with respect to the

10 sale of some Grace property for tax -- lack of tax payments.

11 That has all been undone.  Everybody cooperated greatly in this

12 matter.  And we submitted an order to Your Honor dismissing

13 this motion as it's been resolved.  And Your Honor did, in

14 fact, sign that, I believe, on Friday morning or this morning.

15        THE COURT:  Yes, that's been entered.

16        MS. BAER:  Your Honor, I'm going to skip over just

17 momentarily 5 and 6 just to state that Item Agenda Number 7 has

18 also been resolved.  That was the matter with respect to the

19 Libby claimants motion to compel.  Your Honor entered an order

20 on that this morning.

21        THE COURT:  Yes.

22        MS. BAER:  That, Your Honor, takes us back to Agenda

23 Item Number 5, which is basically a report on where we stand on

24 the disclosure statement and specifically issues related to the

25 case management order.  And Mr. Bernick was going to address

1  those matters.

2        THE COURT: All right. Mr. Bernick?

3        MR. BERNICK: Good morning, Your Honor. I think that

4  there's only one issue there. We're going to talk about that

5  issue, and then I think Mr. Freedman is going to give a more

6  general report on the status of the plan and disclosure

7  statement process. And we want to make sure that the Court is

8  alerted to that, although there's no actual item up for a

9  decision today.

10       With respect to the CMO, I believe that there's an

11  issue that's been raised by the Libby claimants concerning the

12  dates for the commencement of expert discovery and for the --

13  any expert rebuttal reports. I'm assuming Mr. Cohn's on, and

14  can address his concern.

15        THE COURT: Mr. Cohn?

16        MR. COHN: Yes, Your Honor. This is Daniel Cohn for

17  the Libby claimants.

18       Are you -- am I coming through okay?

19        THE COURT: Yes, sir.

20        MR. COHN: Okay, great. Your Honor, the -- what the

21  plan proponents are doing here under the guise of putting in an

22  extra date or two is to fundamentally change the way experts

23  are -- the way expert discovery is going to proceed in this

24  matter. And we object to their proposal as being fundamentally

25  unfair especially inasmuch as it changes rules that have been

1  in place, and as to which deadlines have already passed, with

2  the Libby claimants relying on the deadlines that have been

3  set.

4         Let me go back for a moment to the CMO as it now

5  exists, Your Honor.  What the CMO says about expert reports,

6  right now I'm going to put aside feasibility, which was always

7  on a separate track.  I'm also talking only about Phase 2,

8  which affects the Libby claimants and only by how this affects

9  Libby because I know there have been a bunch of exceptions that

10 have been negotiated to accommodate the needs of other parties,

11 such as the PD folks.  And none of what I say has anything to

12 do with that.  I'm just addressing how the CMO was set up to

13 deal with Libby Phase 2 issues.

14        And the way this CMO was set up is that -- it's that

15 expert reports were due December 31st, 2008.  And the only

16 other -- the only other provision for expert reports was what

17 we'll call the supplemental expert reports, and as to those,

18 the CMO established a deadline of February 13, 2009.

19        There was no mention whatsoever of rebuttal experts.

20 The concept did not exist.

21        Now, there are obviously, you know, any number of

22 different approaches that could have been utilized in setting

23 up expert discovery and disclosure under this CMO.  Basically

24 there are two types of approaches that could have been used.

25 One would have been a sequential approach whereby you have some

1 reports that get filed, and then there's a chance for people to

2 do rebuttal reports, and then perhaps an opportunity for

3 surrebuttal reports, and so on.  In other words, a sequential

4 approach.

5            The other approach that was available was a parallel

6 approach where all parties could file their expert reports at

7 the same time, and then those experts would have the chance to

8 respond to each other.  And it was clearly the second approach

9 that was adopted.  The CMO, as it now exists, could not be

10 clearer on this question.  It says, "Expert reports are due

11 December 31, '08."

12            And then the only other reports that are mentioned

13 for experts are supplemental expert reports.  And as you,

14 yourself, observed on the record at the last hearing, the

15 meaning of a supplemental expert report is really pretty clear.

16 It means an expert who has already filed a report can file an

17 additional report in which he might react to what the other

18 side's experts had said in their initial report.  Or, for that

19 matter, might report on any additional work that he, himself,

20 had done.  But there is no connotation in the word

21 "supplemental expert report" that would permit a brand new

22 expert to weigh in for the first time with any kind of report.

23            In any event, you know, that deadline is a deadline

24 that's coming up on February 13 in the very near term.

25            So, that was the approach that was adopted, Your

1 Honor.  And as I say, it is unambiguous as to what the CMO

2 meant.

3        Now, Grace proposes to change this by adding a

4 provision for rebuttal expert reports.  And those rebuttal

5 expert reports are to be filed in the middle of May.  In other

6 words, five and a half months after the deadline that has

7 already past for the submission of expert reports.

8        Grace is also proposing to be able to depose -- to be

9 able to depose the Libby claimants' experts before they have to

10 prepare and file their own rebuttal expert reports.

11        So, in both of those respects, this is a fundamental

12 change from sequence that was set up -- the approach that was

13 adopted in this initial CMO.  And I have four points to make

14 about that, Your Honor:

15        The first point is that -- which I really just made,

16 is that the CMO is clear.  This is not an attempt to correct

17 some kind of ambiguity or to interpret the CMO.  This is just a

18 change that Grace happens to want to make for its own benefit

19 to just create a process that is more advantageous to Grace.

20 And it does not, as I say, it is not tied to any issue that was

21 left open in the initial CMO.

22        Second, Your Honor, this relates to a deadline that

23 has already past.  That deadline was December 31st.  And the

24 Libby claimants, in fact, filed their expert reports at the

25 deadline.  And -- and in reliance on the provisions of the CMO

1    with no expectation that we could come back and just rewrite

2    the CMO for our own particular benefit at a later time.

3              The third point that I want to make, Your Honor, is

4    that this really -- this is not fine-tuning, this is not the

5    kind of thing that was envisioned when we included that

6    reservation of rights later in the CMO where parties might need

7    to come back and rejigger the CMO as problems arose in the

8    course of the discovery process.  No problem has arisen unless

9    the problem is defined is the fact that Grace chose to ignore

10   the December 31st deadline.

11             But there's no problem here that's being dressed.

12   This is just rewrite the CMO and fundamentally change the

13   rules.

14             And finally, Your Honor, I did want to observe,

15   although this should really have no -- this last point really,

16   in some ways, should have no bearing on the merits because a

17   party should not be entitled to just ignore a deadline even if

18   the party does end up being prejudiced by missing the deadline.

19   But in this case, there will be no prejudice to the plan

20   proponents because the ACC has itself filed expert reports that

21   address the issues that have been raised in the Libby expert

22   reports.  And the ACC will have the opportunity, in accordance

23   with the CMO as it's now written, to file supplemental reports

24   by the February 13th deadline that address the issues that were

25   raised in the Libby expert reports.

1          In other words, the process has, in fact, worked.

2   The plan proponents viewed as a group have, in fact, complied

3   with the December 31st deadline.  They have experts lined up.

4   And you will receive a fair trial of the issues that relate to

5   Libby.

6          So, this change is not necessary to permit the plan

7   proponents to introduce expert testimony in response to Libby

8   medical issues.

9          So, for all of those reasons, Your Honor, I would

10  respectfully submit that the change proposed by Grace relating

11  to permitting rebuttal expert reports should be rejected.

12          THE COURT:  All right.

13          MR. BERNICK:  Your Honor, this is David Bernick.  I

14  think that the -- that's a partial history.  It's not really

15  the full history.  And in particular, it doesn't consider the

16  experience that we have in connection with the estimation case.

17          In connection with the estimation case, the reality

18  was that in matters of this complexity, inevitably there are

19  new experts that are designated to deal with issues as they

20  come up.  And inevitably, the record evolves somewhat with

21  respect to expert discovery.

22          When it came to this particular CMO, we anticipated

23  that there would be an initial round of expert reports.  In

24  connection with that round, we were not required to anticipate

25  all that their experts would say.  And, indeed, with respect to

1 certain expects, the details make a tremendous amount of

2 difference, including a particular Dr. Whitehouse.

3        All the plan proponents were required to do was to

4 include or to submit reports that would discharge their going

5 in obligations with respect to the plan, which is to

6 demonstrate that the plan and the TDP were well founded, and

7 that's exactly what was done.

8        There's no way that we could anticipate the details

9 of their expert submissions, including to the point of

10 designating experts specifically to respond to them.

11        So, our anticipation was that the date for

12 supplemental reports would also be a date for submitting

13 rebuttal expert reports.

14        There was probably a little bit of an omission

15 because in connection with the bankruptcy -- with the

16 estimation trial, there was at least a word that distinguished

17 supplemental and rebuttal.  That is that both words were used,

18 although the deadline was the same.  And we wanted to make sure

19 that in connection with this matter that we wouldn't be caught

20 up in some distinction that says, well, you can do

21 supplemental, but you can't do rebuttal.  So, essentially what

22 had to be done was two things:

23        One, we had to make clear that here were going to be

24 rebuttal reports.  That the supplemental reports, if Your Honor

25 has indicated they should be for purposes of supplementation,

1   and not new experts, that we would have the same right as

2   obviously exists and exists in connection with the estimation

3   matter to have rebuttal reports.

4          And then the only remaining question is what should

5   that date be?  So, to the extent that counsel is arguing that

6   we shouldn't have the opportunity for rebuttal reports, that is

7   completely contrary to the practice that we had in the

8   estimation case.  It is totally prejudicial being that we can't

9   even call experts that are -- don't represent our affirmative

10  burden here, but are purely rebuttal experts.  And that would

11  work obviously huge prejudice to the plan proponents.

12         So, first of all, we should have a right to expert

13  rebuttal reports.  That was never foreclosed, that was never

14  the intention.  That's what we all did in connection with the

15  estimation case.

16         The remaining question is what should be the timing

17  of those rebuttal reports.  While, if we had kept to the

18  original schedule, it would have been important to have those

19  rebuttal reports be in February, and the same date as

20  supplemental reports, that no longer is critical because the

21  schedule, as a whole, has slipped.

22         And because timing is not as critical, the question

23  is how do you rationally get to the point where this process

24  works in an efficient fashion so that everybody knows what

25  everybody else is going to say.  And I think that the current

1  CMO does precisely that.  Supplemental reports are February,

2  and then the rebuttal reports are May.  And why should that be

3  so?

4          First of all, the matters that are raised by their

5  expert reports that don't deal with our burden, but with their

6  response, they are very complicated matters.  They have to do

7  with Dr. Whitehouse, who now purports to have new data that

8  supports his theory that there's some unique disease at Libby.

9  We're going to have to -- we're going to have to understand

10 exactly what that data is.  We don't know what that data is to

11 date.  We're going to have to deal with that data.  We're going

12 to have to gather other data in order to respond to it.  That

13 takes time.

14         If we have rebuttal reports due before May, all that

15 would happen is that we would have rebuttal reports which might

16 not be complete because we don't know exactly what it is

17 they're responding to.  The whole idea is to get Whitehouse's

18 data pinned down so that we can have a full response.  We're

19 not going to get Whitehouse's data pinned down until we have

20 the opportunity to take his deposition.

21         At that point, we'll be in a position to formulate

22 our response, do our own rebuttal reports, and then our experts

23 can be deposed.  You have a very logical sequence.  We do

24 supplementation in February.  We then commence discovery with

25 respect to those matters where they have the affirmative

1  burden.  We can do discovery with respect to our experts at the

2  same time.  And then insofar as rebuttal is concerned, where

3  the depositions have been concluded, and we know what data that

4  we're dealing with, we will then submit a rebuttal expert

5  report for those witnesses who are rebuttal experts, and then

6  they can be deposed.  Because the time line for conducting

7  depositions extends through June.

8           So, it is a very, very rational approach that

9  recognizes the reality of the fact that there is new data that

10 is still being produced, we're going to have to respond to it.

11 And rushing it and changing the order only serves the purpose

12 of playing gotcha.  A rebuttal report because it was done -- it

13 was due at an earlier point in time is incomplete and,

14 therefore, you can't have your expert testify to matters that

15 are not set forth in the rebuttal report.  We don't want to go

16 down that road.  We want to make sure that by the time the

17 discovery is done, everybody's had the opportunity to take a

18 fair crack at the data and respond to it, and to be deposed

19 with respect to expert reports that are meaningful.

20           THE COURT:  Anyone else want to address this?

21                (No audible response heard)

22           THE COURT:  Okay.  Mr. Cohn?

23           MR. COHN:  Yes, Your Honor.  This -- this is a

24 version of reality that was not at all part of the discussions

25 with the Court or the discussion among the parties in

1 formulating this initial CMO.  It's not that Mr. Bernick's

2 proposal would necessarily be -- has been such a terrible

3 approach to adopt it, it's just that it was not the approach

4 that was adopted.

5       And -- and as I say, the Libby claimants could very

6 well have taken the position that maybe they wanted to withhold

7 some of their experts and have them go later, or maybe we

8 wanted the chance to depose Grace's experts before we had to

9 produce a rebuttal report.  But we didn't have the ability to

10 do that because we played by the rules.  And Grace is now

11 trying to change those rules.

12      Now, Mr. Bernick says that they could not have

13 anticipated what Libby's experts were going to say.  That is

14 simply not true.  We -- as you know, Your Honor, we set forth

15 in excruciating detail in our disclosure statement objection

16 the part that related to -- which was the majority of the

17 pleading, which related to our objection to the plan.  We set

18 forth in exhaustive detail the medical criteria that we thought

19 were improper under the TDP as relates to the Libby claim.

20      In addition, Your Honor, this is not -- this was not

21 Dr. Whitehouse's first report.  Dr. Whitehouse, you might

22 recall, produced a report in the course of the estimation

23 proceeding, and there were a whole bunch of expert reports

24 concerning Libby claims.  And so, while it is, of course, true

25 that with the passage of time, there has been new data, I would

1 expect that the ACC's experts have new data, as well as the

2 Libby claimants.  That there has been no fundamental change in

3 the medical issues here.

4        So, Grace had, in fact, the extraordinary ability to

5 really know pretty much what the Libby claimants were going to

6 say.  Both because of the earlier reports of the Libby experts,

7 and also because of the very detailed plan objection that had

8 been filed by the Libby claimants.

9        Now, Mr. Bernick kind of glides over the issue of

10 burden of proof here.  But we need to emphasize, the burden of

11 proof on all elements of confirmation lies with the proponents

12 of the plan.  There is no burden that the Libby claimants have.

13 Obviously we need to make a legally sufficient objection, and

14 we need to introduce the evidence to back it up.

15        But there is no -- there is nothing -- there is no

16 issue as to which the -- Grace has the right to sit back and

17 say, well, we don't need to prove an affirmative case here

18 because it's the Libby claimants' burden.  And so -- and it's

19 just not true that there was any warrant for Grace to sit back

20 and just say, well, that's not our issue, we don't have to

21 worry about that in connection with our December 31 initial

22 expert reports.

23        MR. BERNICK:  Your --

24        MR. COHN:  Finally, Your Honor -- you'll have your

25 chance, Mr. Bernick.  Finally, Your Honor, this whole notion

1  that the term "supplement" includes rebuttal is -- when, in

2  fact, those terms had not been conflated in conjunction with

3  the estimation is just an example of that Grace, at best, had

4  something in its own mind which it chose not to share with the

5  Libby claimants about how this process would work.  But it's

6  certainly not clear at all from the language that when you use

7  the word "supplemental," that it includes rebuttal.

8        So, in sum, Your Honor, nothing Mr. Bernick said in

9  reply has in any way changed the fundamental point that this

10 Court adopted a set of rules for how expert discovery would

11 work.  And those rules are now proposed by Grace to be

12 fundamentally rewritten to the prejudice of the Libby

13 claimants.

14       MR. BERNICK:  Just very briefly, Your Honor.  The

15 issue on burden of proof, yes, we have the burden of proof in

16 demonstrating that the TDP that is included in the plan

17 complies with the Code.  And that's why there were initial

18 expert reports submitted in -- by the plan proponents, in order

19 to show that that burden has been met.

20       The issue is not who bears the legal burden of proof.

21 The issue is what theories are being used scientifically to try

22 to fight that -- to try to fight the proposition that that

23 burden of proof has been sustained.

24       We have no obligation in demonstrating that the TDP

25 complies with the law to anticipate the scientific theories

1  that Mr. Cohn's clients will use in order to say that law has

2  not been complied with.  That is their burden.  If they've got

3  a scientific theory that says that we're wrong, it is their

4  burden to propose that scientific theory, and then we have to

5  respond.  And that is exactly what the story was here.  They

6  now have submitted an expert report or reports that purport to

7  advance their scientific theory which we do not subscribe to

8  that says that there's a unique disease process at Libby and

9  that it's not recognized in the TDP.  They advanced that

10  proposal.  We were aware, of course, of Dr. Whitehouse's views.

11  But we were aware of those views based upon prior articles in a

12  set of data that was preexisting.  The reports that came out

13  from Dr. Whitehouse, in particular, included new data, and

14  there are whole new ideas that Dr. Whitehouse has developed,

15  including making comparisons with mesothelioma rates in

16  Australia.

17          So, there is a bunch of new data that's been brought

18  to the table that, A, we couldn't anticipate, that, B, where we

19  were not obliged to anticipate.  And it's that new data, and

20  those new ideas that we need to have the opportunity to

21  discover before we can meaningfully rebut.  And that is the

22  whole purpose of this is to be able to have a meaningful

23  process so we know what it is that we're rebutting, we can do

24  expert reports, but then fully disclose the data that we are

25  now going to have to develop in order to rebut their new data

1  and their theories, and that our people then can be timely

2  deposed with the benefit of all that information.

3          Any result that forecloses that effort means that

4  essentially they've brought new data to the table that we will

5  not have an opportunity to respond to, and that there will be

6  major prejudice, therefore, to our case.  That's not

7  appropriate.

8          Now, the question of using the word "supplemental"

9  versus "rebuttal," perhaps we should have used rebuttal, as

10  well.  But as Your Honor will recall, this whole CMO was

11  negotiated with, you know, like 19 parties in a very tight

12  period of time.  And we had to get things done.

13          And to now say, well, because you used

14  "supplemental," that's not rebuttal, therefore, you are

15  foreclosed from producing evidence in response because you

16  didn't submit those reports elevates -- you know, elevates

17  procedure and form over substantive rights.

18          There is no prejudice here.  Everybody is going to

19  have the opportunity to fully advance their evidence.  They're

20  may be more time that takes place, but there's no substantive

21  prejudice.  There is only a strategic argument that Mr. Cohn is

22  making.

23          THE COURT:  Okay.  Mr. Cohn, any last words?

24          MR. COHN:  Well, only, Your Honor, that even if you

25  were to construe "supplemental" to include "rebuttal," the

1  deadline for those reports under the original CMO is coming

2  right up.  It's March 16th.

3       And that just bears no relationship to Mr. Bernick's

4  theory that somehow they ought to have until the middle of May

5  to bring in a whole stable of new experts, throw these reports

6  into our laps, and then give us a mere month to respond.  I

7  mean this is just -- as I say, this is a strategic move on

8  Grace's part to just rewrite the rules to the complete

9  prejudice of Libby.

10      THE COURT:  Okay.  Well, it seems to me that if, in

11 fact, and I don't have a handle on this, so I'll only accept

12 the representations for purposes of this ruling.  If, in fact,

13 there is a new data set that is advanced in Dr. Whitehouse, or

14 anybody else's, report, then that is appropriate for

15 consideration by this Court of an opportunity for people who

16 have to meet that data set by introducing new witnesses.

17      Now, you can call them rebuttal, supplemental, I

18 don't know what the appropriate word is.  I don't think

19 supplemental is the right word because I go back to what I said

20 at the last hearing, supplemental seems to me to mean that

21 you've produced something in the first instance, and then

22 you're adding to it.  That's what the concept of supplemental

23 is.

24      But nonetheless, to the extent that the entity --

25 excuse me -- that produced the first report is either not the

1    -- is not the correct entity, for whatever reason, to respond

2    to the new data set, then I would always, under those

3    circumstances, consider permitting some additional expert

4    analysis by the party who found it necessary to address it

5    anyway.

6        So, in that concept -- in that construct, I don't

7    see a reason why any party, including Libby, if Libby needs to

8    do it in response to the debtor, or the ACC, or any other

9    parties in interest, data set when it gets it filed of record,

10   if Libby needs time to address it to allow Libby that

11   opportunity.  And I want that clear on the record, that

12   opportunity will be provided if it's needed, to get that new

13   expert.  So, if you want to call it rebuttal, fine.  I'm happy

14   to use that word.

15       So,  I think the change in the CMO, for that reason,

16   is appropriate.  And I will permit the change to include

17   rebuttal expert reports and surrebuttal reports for that

18   reason.  The surrebuttal ought to take care of Libby and the

19   other parties' need to address whatever data sets are advanced

20   in the rebuttal reports that similarly take cognizance of the

21   new data sets that came up.  For example, and this is only by

22   way of example, in Dr. Whitehouse's report.

23       Now, the timing is a different issue.  Mr. Cohn is

24   arguing that Libby doesn't have enough time after the rebuttal

25   reports are produced to appropriately take the depositions and

1  produce the surrebuttal reports.

2          So, is there something that can be done to split this

3  difference?

4          MR. BERNICK:  Yes.  We could certainly move up the

5  date for the rebuttal expert reports to April.  Make it April

6  15.

7          THE COURT:  All right.

8          MR. BERNICK:  That would leave a total of 60 days for

9  any depositions.  So, if we did our rebuttal reports on the

10 15th of April, and they did surrebuttal on the 15th of May, we

11 could also do it that way.

12         MR. COHN:  Your Honor, I'm not -- I don't think that

13 30 days is necessarily enough.  And here, I'm just speculating,

14 of course, because I don't know what's going to be in those

15 reports. But I don't think that 30 days is enough to be sure

16 that there will be enough time for us for the surrebuttal

17 reports.

18         And considering that they've had Dr. Whitehouse's

19 report since December 31st, it would seem to me that the

20 appropriate dates might be -- would really be the middle of

21 March for rebuttal, and then the middle of May for surrebuttal.

22         MR. BERNICK:  The difficulty with that -- and, you

23 know, I'd be willing to go one step further and do April 1, is

24 that there's not -- at a certain point, it's not just a

25 negotiation here.  The difficulty is that we haven't taken Dr.

1  Whitehouse's deposition.  So, we -- we think we know some of

2  the information.  We do know some of the information that he's

3  now relying upon because we can divine it from the expert

4  report.

5          And so if we -- you know, I think we can -- I think

6  that we actually have some of that information now, not from

7  the Libby case, but from the -- not Libby's, this case, but

8  from the criminal case.  And I want to be clear that that has

9  been made available to us.

10          So, we think we're making progress here.  But we need

11 to take Dr. Whitehouse's deposition to figure out what all that

12 means.

13          And then we have to develop our own expert response.

14 And I know, Your Honor, that that's going to take some time

15 because it implicates the use of PIQ data.  And as we've

16 indicated to the Court before, the PIQ data, we think, does

17 have some relevance to this issue on a much more focused way

18 than the Libby claimants previously have sought it.  But that's

19 going to take some time to work out because we understand the

20 confidentiality issues that are associated with that.

21          So, there's work to be done.  Both to understand what

22 Dr. Whitehouse has done, in terms of the new data and its use.

23 And there's work to be done in mustering our data that we're

24 going to use to respond to it.  It is our position, Your Honor,

25 that the disease that Dr. Whitehouse says is distinctive to

1  Libby isn't distinctive to Libby.

2            THE COURT:  Okay.  Well --

3            MR. BERNICK:  It is elsewhere, as well.  That takes

4  time.  So, you know --

5            THE COURT:  All right.

6            MR. BERNICK:  -- April --

7            THE COURT:  Take a look at the calendar, please.  If

8  we make the rebuttal expert reports due April the 6th, and move

9  the surrebuttal reports to May 22nd, which adds a week on both

10 ends.  So, essentially it provides six weeks in the middle.

11 That should certainly be sufficient time.

12           But what does that do to the final plan objections

13 and the expert deposition deadlines?

14           MR. BERNICK:  Well, the --

15           THE COURT:  Does it affect those?

16           MR. BERNICK:  The expert depositions deadline is not

17 -- completion is not until June 15th.  So, we would have to --

18 we would have to -- in fact, I would urge to the Court, keep

19 May 15 as surrebuttal.  That gives us 30 days to take the

20 depositions now with the benefit of the further information,

21 I'm certain we'll be able to do that.  If it's three weeks,

22 then you get into the usual messing up people's schedules.  But

23 if Your Honor believes that we can do that between May 22nd and

24 June 15th, so be it, we'll make it happen.

25           With respect to the plan objections, I don't think

1  that this really relates to -- I mean the plan objections

2  certainly can be made.  The -- let's see.  The other plan --

3  the final plan objections is May 15.  And that would be

4  commensurate with -- that would be commensurate with their

5  submitting their final -- surrebuttal expert report.  So,

6  certainly by way of their making the objection, there is --

7  they should be in a position to make those objections by May

8  15th.

9          THE COURT:  Well, I was trying to get another week on

10 the other end so that the surrebuttal reports would be due by

11 the 22nd.  How -- what -- if I simply cut that date -- if I

12 make it the 20th instead of the 22nd, and make the final plan

13 objections due also May 20 --

14         MR. BERNICK:  Yeah, I don't think that that's a --

15 from our point of view, we'll make that work.

16         THE COURT:  Okay.  So, let's say surrebuttal reports

17 due May 20.  And the plan objections due May 20.  That should

18 still provide sufficient time to do expert depositions by the

19 15th, and it still provides almost six weeks between the date

20 that the rebuttal reports are due and the surrebuttal reports

21 are due.  That should surely, under this time frame, be

22 sufficient time.

23         MR. COHN:  Well, Your Honor, but that -- this does

24 raise another issue having to do with the fairness of the whole

25 process.  Mr. Bernick is proposing that Grace will have the

1 chance to depose our expert witness before preparing the

2 rebuttal reports.

3        So, you know, this is just -- again, just a complete

4 change in the report as it was originally -- I'm sorry -- in

5 the CMO as originally structured whereby all experts would have

6 to produce their reports.  And then -- and then there would be

7 a chance for expert depositions on all of the experts.

8        MR. BERNICK:  Your Honor, no, that's just not --

9 that's just -- the expert -- the whole problem is that when you

10 have new data that's in the expert report, of course, you have

11 to take the deposition before you do the rebuttal report

12 because that's what enables you to make sure that the rebuttal

13 report is fully responsive.  Otherwise it is totally screwy.

14 Then you do the expert rebuttal report, the expert is then

15 deposed, and then you have now a supplemental rebuttal report.

16 The --

17        THE COURT:  Yes, that process seems to me to be what

18 would have to take place.  Otherwise there would not be any

19 logic to doing a rebuttal report, just like you'd need to do

20 the depositions of the rebuttal experts before you do the

21 surrebuttal report.  So, that's why I'm building that much time

22 in to allow the depositions of the rebuttal experts before a

23 surrebuttal report has to be produced.  And I think that's

24 plenty of time to accomplish that.

25        MR. COHN:  Your Honor, that -- those will be the sole

1  depositions that the plan proponents are permitted to take of

2  the Libby experts.

3          MR. BERNICK:  No, no --

4          MR. COHN:  This is not a process whereby they're

5  going to be subject to repeated depositions, I would trust.

6          MR. BERNICK:  Well, no, no, not -- no.  The whole

7  idea is that the rebuttal -- that we are open.  You can take

8  our experts -- the submitted expert reports and depose them on

9  exactly the same time table.

10         Once the rebuttal reports, and then your surrebuttal

11 reports, which now deal with new information, once those are

12 done, then you get to depose the rebuttal experts.  We would

13 take the deposition of any expert who submitted your --

14 equivalent to a rebuttal report.  And to say it's surrebuttal,

15 it's still a rebuttal report, but only with respect to those

16 new matters.

17         THE COURT:  Right.  That's -- that would be my

18 expectation.  A surrebuttal report would encompass new matter

19 that is encompassed within the rebuttal report.  The rebuttal

20 report is obviously intended to encompass new matter that's in

21 the initial report, or the initial and supplemental reports, if

22 they're filed in the -- before the rebuttal report.

23         I think that schedule works.  It seems to me that

24 given the time frame between now and when the plan confirmation

25 hearing is expected to commence, and given the fact that the

1   primary reports are of record, this time frame should provide

2   everybody with an adequate opportunity to do what's necessary

3   without creating any undue prejudice, in fact, any prejudice to

4   anyone.   There is a long time.   There's six months between now

5   and when the confirmation hearing is -- let's see -- March,

6   April, May, June -- five months, plus, between when now and the

7   confirmation hearing is going to start.   So, I think that is an

8   adequate amount of time to get everybody on board and doing the

9   discovery in a fashion that is commensurate with what you need,

10  and to get the limited issues regarding the medical criteria

11  appropriately explored.

12          So, with those changes in the dates, I'll accept an

13  order.   Now, is that the only issue, Mr. Cohn, that you wanted

14  to address?

15          MR. COHN:   Well, yes, Your Honor.   Although I did

16  want to just observe that you heard Mr. Bernick make reference

17  to the -- to PIQ data.

18          THE COURT:   Yes.

19          MR. COHN:   The very data as to which this Court has

20  ruled was irrelevant and, hence, unavailable to the Libby

21  claimants on that basis.   And now we're being told by Grace

22  that it intends to use the PIQ data in preparing its expert

23  rebuttal reports.   I -- this is -- what this means is either

24  the Court was in error in ruling that it was irrelevant, or

25  that Grace has no warrant to use those data, and should be

1  barred from --

2       THE COURT:  Well, I don't know what Mr. Bernick said

3  with respect to what they do or don't intend to use.   If

4  they're going to use PIQ data, then apparently it's going to be

5  relevant to something, and Libby's going to be able to discover

6  it.

7       MR. BERNICK:  Right.  This is something that, as

8  we've said consistently in the briefing process, the Libby

9  claimants -- they made a very, very broad request that we

10  didn't believe was justifiable on relevance grounds.  And we

11  specifically said in our papers that we believe that there may

12  be a much more focus group of data that is relevant, and that

13  we wanted to be clear that that was out there.  Their requests

14  weren't focused.

15       And so we do anticipate articulating that data.  I

16  can tell Your Honor about it today, but that would probably not

17  be terribly productive, in talking with the claimants' lawyers

18  to see if we can't reach agreement that there is some

19  appropriate way in which to use it.  It has nothing to do with

20  settlement histories.  It has nothing to do with settling other

21  cases.  It has purely to do with the question of whether there

22  is a distinctive disease at Libby.  And that is of the essence

23  to their case.

24       THE COURT:  All right.  In any event, I don't have an

25  issue before me.  To the extent the debtor is going to use

1  something from the data, then obviously you're entitled to

2  discover it, Mr. Cohn.

3          Okay.  What else?

4          MR. BERNICK:  I don't believe that there's anything

5  else, Your Honor, with respect to Libby.  I think that Mr.

6  Freedman, turning to one of the other agenda items, wanted to

7  give a status report on where we are insofar as the plan and

8  disclosure statement documents are concerned.

9          THE COURT:  All right.

10         MR. BROWN:  Your Honor, this is Michael Brown.  Just

11 before Mr. Freedman begins, can I have one point of

12 clarification?  The discussion that we just went through, are

13 those deadlines applicable now to the Libby claimants, or to

14 everyone?  Because if everyone --

15         THE COURT:  They were applicable to Libby.

16         MR. BROWN:  I beg your pardon?

17         THE COURT:  They were applicable to Libby.  I think

18 Mr. Cohn made clear at the beginning he was only suggesting

19 that he was arguing on behalf of how Phase 2 affected Libby.

20         MR. BROWN:  Okay.  Thank you, Your Honor.

21         MR. BERNICK:  Thank you.  Okay.  Go ahead, Ted.

22         MR. FREEDMAN:  Yeah.  Yes, Your Honor.  This is Ted

23 Freedman for the debtors.

24         Your Honor, if you'll recall, on January 14th, you

25 set a final schedule for proceeding forward with the plan and

1 disclosure statement.  And the first milestone in that schedule

2 is that on February 3rd, the debtors will file a definitive

3 plan and disclosure statement with the Court, and circulate it

4 to the parties.

5          There are open issues at this point with respect to

6 two constituencies:

7          First, with respect to PI, the issues have been

8 narrowed down to really just two matters:  One, the future

9 claimants' represent for PI and the Asbestos Claimants'

10 Committee, the PI Committee, have worked on a modification to

11 the PI TDP to address -- to address certain issues related to

12 the payment of indirect PI trust claims that were raised by

13 some of the insurance companies that had settled insurance

14 policies and also, I believe Scotts.  And my understanding is

15 that those TDP issues are prepared, but have not yet been

16 circulated pending what I believe is final approval by the PI

17 Committee.  My further understanding is that those changes will

18 be circulated in time to allow that document to be integrated

19 into the February 3rd filing.

20          There are also a few changes or final issues that

21 need to be made with respect to the transactional documents

22 that are being filed with respect to the PI trust, and those

23 also will be done in time to meet the February 3rd filing.

24          With respect to PD, which is the other constituency

25 where there are open issues, the ZAI deal, if you will, is very

1  -- the documentation on that is very far along, and we have

2  been working very cooperatively with the future claimants'

3  representative for PD, and also the attorneys, Mr. Scott and

4  Westberg (phonetic) to complete that documentation.   And I

5  don't have any doubt that that will be done by the February 3rd

6  date.

7          With respect to non-ZAI PD, what we've refer to as

8  traditional PD, the debtors' proposal for how to deal with

9  traditional PD will not change in the sense that what the

10  debtors' plan would propose is that all PD other than the ZAI

11  claimants will be paid 100 cent dollars.   And we have

12  circulated, in fact, it's been out there for many months, a CMO

13  -- a PD CMO, if you will, which explains how the debtors intend

14  to process the PD CMO.   And absent any agreement to modify

15  that, we will be going with that document on February 3rd.

16          There were also a number of other related documents

17  that implement how the debtor will fund the PD trust to comply

18  with its obligations to pay traditional PD claims in full, and

19  if the Court recalls, there were actually very few PD claims

20  that exist.   So, it's not a -- it should not be a difficult

21  problem.

22          In point of fact, we have not, at this point,

23  received any useful feedback from the PD Committee on the PD

24  CMO or the debtors' proposal on how to deal with that.   But we

25  intend to proceed forward and make a filing on February 3rd

1  that will reflect the transaction that we've described.

2       THE COURT:  All right.  Are you looking for comment

3  from the Committees?

4       MR. BERNICK:  One other thing, Your Honor, before

5  perhaps you get those is that we have a deadline of February

6  the 3rd to have completed plan and disclosure statement

7  documents, and that is days away.  And right now, with respect

8  to PD, I note that Mr. Rich and the futures' representative are

9  working very hard, and we appreciate that effort.

10      But right now, we don't have a lot of optimism that

11 we're really going to get to that point.  Because thus far, we

12 haven't heard anything.  And that is of a very significant

13 concern.

14      And I'll just alert the Court to that.  You know,

15 we're going to continue to rely upon those folks and do the

16 best that we can.  But, you know, this is -- this is an issue

17 that we have.

18      THE COURT:  Well, I don't know, Mr. Rich, is there

19 something that the futures' rep can do here?

20      MR. RICH:  Your Honor, we're working -- you know,

21 we're not alone on our side of the table here.  And we're

22 working with various PD claimants, and we're working with the

23 Property Damage Committee to try to come up with a unified

24 proposal to send to the debtors.  And we hope we'll be able to

25 do that this week, at least insofar as the CMO is concerned.

1           And all I can say is that the PD FCR is working every

2  day on this, and we are putting something together.  And

3  hopefully we'll be able to go to the debtor with a proposal

4  very shortly from everybody on our side of the table.

5           THE COURT:  All right.  I'm not sure who's on for the

6  Property Damage Committee.  Mr. Baena?

7           MR. BAENA:  Yes, Your Honor.  I am here.  Can you

8  hear me?

9           THE COURT:  Yes.

10          MR. BAENA:  Your Honor, may it please the Court,

11 Scott Baena on behalf of the PD Committee.

12          Judge, we have, over the last 10 days, received an

13 enormous volume of documents from various sources, the

14 documentation relates principally to property damage, and

15 Zonolite related issues under the plan.  We had been going

16 through that documentation, which others even the Zonolite

17 interest, had had the opportunity to review it before we did.

18          So, we're traveling up a very steep learning curve in

19 terms of the documentation, but we're doing it.  We worked all

20 weekend.  We have meetings scheduled for tomorrow, Wednesday,

21 and Thursday.  We're aware of the debtors' desire to obtain

22 comments from PD and from the PD FCR before they make their

23 filing on the 3rd.  We're doing our very best to exceed to that

24 goal.

25          We, by the way, should add that we have met with the

1  debtors and their counsel in Atlanta to discuss these

2  documentation issues.  And we're doing our very, very best.

3          I wouldn't wish, though, for the Court to think we're

4  doing nothing.  Nothing could be further from the truth.

5          THE COURT:  Okay.  Is there something that I can do

6  to help expedite this process?

7          MR. BAENA:  Judge, you know, the documents, as you

8  would expect, are exceedingly complicated.  They have been

9  drafted by a number of different parties, and integrated by a

10  series of defined terms that challenge the best of counsel.

11  It's just a tediously difficult process to get through the

12  complexity of the documents, none of which are explained by any

13  form of disclosure, except for perhaps the fact of their

14  existence by the existing form of disclosure statement.

15          So, we are at this with some very difficult documents

16  without the benefit of having been at the table while they were

17  being drafted, and having had the benefit of the evolution of

18  those documents.  We are meeting with the draftspeople of

19  certain of those documents tomorrow telephonically from the PI

20  FCR's law firm.  We are doing the best we can.

21          MR. BERNICK:  Your Honor, I'm not going to revisit

22  the history because it's not productive.  I'll take Mr. Baena's

23  representations at face value.  We just want to make the date.

24          THE COURT:  Okay.  It doesn't seem that there's much

25  else I can do.  So, is there anything else on the agenda?

1           MS. BAER:  No, Your Honor.  That's all on the agenda.

2           THE COURT:  Okay.  We're adjourned.  I guess we'll

3   speak again next month.

4           MS. BAER:  And, Your Honor, I'll submit a revised CMO

5   today or tomorrow.

6           THE COURT:  All right.  Thank you.

7           MS. BAER:  Thank you.

8           THE COURT:  We're adjourned.  You can close the

9   record.

10      (Whereupon, at 11:30 A.M.  the hearing was adjourned.)

11

12                          CERTIFICATE

13

14      I certify that the foregoing is a correct transcript from

15   the electronic sound recording of the proceedings in the

16   above-entitled matter.

17

18

19   /s/  *Karen Hartmann*                    Date:  January 30, 2009

20   TRANSCRIPTS PLUS

21

22

23

24

25

**'**

'08- 8:11

**/**

/S/- 37:19

**0**

0111139- 3:2

**1**

1- 4:12 23:23
10- 35:12
100- 33:11
11:30- 37:10
13- 7:18 8:24
13TH- 10:24
14TH- 31:24
15- 23:6 25:19 26:3
15TH- 23:10 25:17,24 26:8,19
16TH- 21:2
19- 20:11

**2**

2- 4:12 7:7,13 31:19
20- 26:13,17
2008- 5:2 7:15
2009- 5:2 7:18 37:19
20TH- 26:12
22ND- 25:9,23 26:11,12
23RD- 4:15

**3**

3- 4:20
30- 23:13,15 25:19
31- 8:11 17:21 37:19
31ST- 7:15 9:23 10:10 11:3 23:19
3RD- 32:2,19,23 33:5,15,25 34:6 35:23

**4**

4- 5:8

**5**

5- 5:17,23

**6**

6- 5:17
60- 23:8
6TH- 25:8

**7**

7- 5:17

**A**

ABILITY- 16:9 17:4
ABLE- 9:8,9 19:22 25:21 30:5 34:24 35:3

ABSENT- 33:14
ACC- 10:20,22 22:8
ACC'S- 17:1
ACCEPT- 21:11 29:12
ACCOMMODATE- 7:10
ACCOMPLISH- 27:24
ACCORDANCE- 10:22
ACTUAL- 6:8
ADD- 35:25
ADDING- 9:3 21:22
ADDITION- 16:20
ADDITIONAL- 8:17,19 22:3
ADDRESS- 5:25 6:14 10:21,24 15:20 22:4,10,19 29:14 32:11
ADDRESSING- 7:12
ADDS- 25:9
ADEQUATE- 29:2,8
ADJOURNED- 37:2,8,10
ADOPT- 16:3
ADOPTED- 8:9,25 9:13 16:4 18:10
ADVANCE- 19:7 20:19
ADVANCED- 19:9 21:13 22:19
ADVANTAGEOUS- 9:19
AFFECT- 25:15
AFFECTED- 31:19
AFFECTS- 7:8
AGENDA- 4:6,11,20 5:8,17,22 31:6 36:25 37:1
AGREEMENT- 30:18 33:14
AHEAD- 31:21
ALAN- 3:14,24 5:6
ALERT- 34:14
ALERTED- 6:8
ALLOW- 22:10 27:22 32:18
ALONE- 34:21
AMBIGUITY- 9:17
AMONG- 15:25
AMOUNT- 12:1 29:8
ANALYSIS- 22:4
ANDREW- 3:17
ANNA- 3:16
ANTICIPATE- 11:24 12:8 18:25 19:18,19 30:15
ANTICIPATED- 11:22 16:13
ANTICIPATION- 12:11
ANYWAY- 22:5
APOLOGIZE- 5:5
APPARENTLY- 30:4
APPLICABLE- 31:13,15,17
APPRECIATE- 4:10 34:9
APPROACH- 7:25

8:4,5,6,8,25 9:12 15:8 16:3
APPROACHES- 7:22,24
APPROPRIATE- 20:7 21:14,18 22:16 23:20 30:19
APPROPRIATELY- 22:25 29:11
APPROVAL- 4:22 5:1 32:16
APRIL- 23:5,10,23 25:6,8 29:6
ARGUING- 13:5 22:24 31:19
ARGUMENT- 20:21
ARI- 3:7
ARISEN- 10:8
ARLENE- 3:25
AROSE- 10:7
ARTICLES- 19:11
ARTICULATING- 30:15
ASBESTOS- 32:9
ASSOCIATED- 24:20
ASSUMING- 6:13
ATLANTA- 36:1
ATTEMPT- 9:16
ATTORNEYS- 3:3 33:3
AUSTRALIA- 19:16
AVAILABLE- 8:5 24:9
AWARE- 19:10,11 35:21

**B**

BACK- 5:1,22 7:4 10:1,7 17:14,16,19 21:19
BADEN- 3:6
BAENA- 3:13 35:6,7,10,11 36:7
BAENA'S- 36:22
BAER- 4:1,4,5,7,17,20 5:8,16,22 37:1,4,7
BANKRUPTCY- 3:2 12:15
BARRED- 30:1
BASED- 19:11
BASIS- 29:21
BEARING- 10:16
BEARS- 18:20 21:3
BEGINNING- 31:18
BEGINS- 31:11
BELIEVES- 25:23
BENEFIT- 9:18 10:2 20:2 25:20 36:16,17
BERMAN- 3:7
BERNICK- 3:19 5:25 6:2,3 11:13 16:12 17:9,23,25 18:8,14 23:4,8,22 25:3,6,14,16 26:14,25 27:8 28:3,6 29:16

30:2,7 31:4,21 34:4 36:21
BERNICK'S- 16:1 21:3
BETWEEN- 25:23 26:19 28:24 29:4,6
BIT- 12:14
BOARD- 29:8
BOERGER- 3:6
BOLL- 3:22
BOTH- 9:11 12:17 17:6 24:21 25:9
BRAND- 8:21
BRANDI- 4:3
BRESNAHAN- 3:12
BRIAN- 3:12,18
BRICKLEY- 3:5
BRIEFING- 30:8
BROAD- 30:19
BROUGHT- 19:17 20:4
BROWN- 3:15 31:10,16,20
BRUENS- 4:2
BUILDING- 27:21
BUNCH- 7:9 16:23 19:17
BURDEN- 13:10 14:5 15:1 17:10,12,18 18:15,19,20,23 19:2,4

**C**

CABRASER- 3:18
CALENDAR- 25:7
CALL- 7:17 13:9 21:17 22:13
CAMERON- 3:13
CAN- 6:14 8:16 12:20 14:18,23 15:1,6 19:21,23 20:1 21:17 23:2 24:3,5 25:23 26:2 28:7 30:16 31:11 34:16,19 35:1,7 36:5,20,25 37:8
CAN'T- 12:21 13:8 15:14 30:18
CANDON- 3:11
CARE- 22:18
CARL- 3:10 4:22
CASE- 5:25 10:19 11:16,17 13:8,15 17:17 20:6 24:7,8 30:23
CASES- 30:21
CASEY- 3:13
CAUGHT- 12:19
CENT- 33:11
CERTAIN- 12:1 23:24 25:21 32:11 36:19
CERTAINLY- 18:6 23:4 25:11 26:2,6
CERTIFICATE- 37:12
CERTIFY- 37:14

CHALLENGE- 36:10
CHANCE- 8:1,7 16:8 17:25 27:1,7
CHANGE- 6:22 9:3,12,18 10:12 11:6,10 16:11 17:2 22:15,16 27:4 33:9
CHANGED- 18:9
CHANGES- 6:25 29:12 32:17,20
CHANGING- 15:11
CHOSE- 10:9 18:4
CHRISTINA- 3:23
CHRISTOPHER- 3:11
CIRCULATE- 32:3
CIRCULATED- 32:16,18 33:12
CIRCUMSTANCES- 22:3
CLAIM- 16:19
CLAIMANTS- 5:19 6:11,17 7:2,8 9:24 16:5 17:2,5,8,12 18:5,13 24:18 29:21 30:9 31:13 33:11 34:22
CLAIMANTS'- 9:9 17:18 30:17 32:9 33:2
CLAIMS- 16:24 32:12 33:18,19
CLARIFICATION- 31:12
CLEAR- 8:15 9:16 12:23 18:6 22:11 24:8 30:13 31:18
CLEARER- 8:10
CLEARLY- 8:8
CLIENTS- 19:1
CLOSE- 37:8
CMO- 6:10 7:4,5,12,14,18,23 9:1,13,16,17,21,2 5 8:9 10:2,6,7,12,23 11:22 14:1 16:1 20:10 21:1 22:15 27:5 33:12,13,14,24 34:25 37:4
COBB- 3:6,8
COCKRELL- 3:16
CODE- 18:17
COGNIZANCE- 22:20
COHN- 3:6,8 6:15,16,20 15:22,23 17:24 20:21,23,24 22:23 23:12 26:23 27:25 28:4 29:13,15,19 31:2,18
COHN'S- 6:13 19:1
COME- 10:1,7 11:20 34:23
COMING- 6:18 8:24 21:1

COMMENCE- 14:24 28:25
COMMENCEMENT- 6:12
COMMENSURATE- 26:4 29:9
COMMENT- 34:2
COMMENTS- 35:22
COMMITTEE- 32:10,17 33:23 34:23 35:6,11
COMMITTEES- 34:3
COMPANIES- 32:13
COMPARISONS- 19:15
COMPEL- 5:19
COMPLETE- 14:16 21:8 27:3 33:4
COMPLETED- 34:6
COMPLETELY- 13:7
COMPLETION- 25:17
COMPLEXITY- 11:18 36:12
COMPLICATED- 14:6 36:8
COMPLIED- 11:2 19:2
COMPLIES- 18:17,25
COMPLY- 33:17
CONCEPT- 7:20 21:22 22:6
CONCERN- 6:14 34:13
CONCERNED- 15:2 31:8 34:25
CONCERNING- 6:11 16:24
CONCLUDED- 15:3
CONDUCTING- 15:6
CONFIDENTIALITY- 24:20
CONFIRMATION- 17:11 28:24 29:5,7
CONFLATED- 18:2
CONJUNCTION- 18:2
CONNECTION- 11:16,17,24 12:15,19 13:2,14 17:21
CONNOTATION- 8:20
CONSIDER- 11:15 22:3
CONSIDERATION- 21:15
CONSIDERING- 23:18
CONSISTENTLY- 30:8
CONSTITUENCIES- 32:6
CONSTITUENCY- 32:24
CONSTRUCT- 22:6
CONSTRUE- 20:25
CONTINUE- 34:15
CONTINUED- 4:14
CONTINUING- 4:18

CONTRARY- 13:7
COOPERATED- 5:11
COOPERATION- 4:10
COOPERATIVELY- 33:2
CORRECT- 9:16 22:1 37:14
CORRECTION- 5:4
COULDN'T- 19:18
COUNSEL- 4:18,22 5:3 13:5 36:1,10
COUNTY- 5:9
COURSE- 10:8 16:22,24 19:10 23:14 27:10
COURTROOM- 3:4
CRACK- 15:18
CRAIG- 3:13 4:2
CREATE- 9:19
CREATING- 29:3
CRIMINAL- 24:8
CRITERIA- 16:18 29:10
CRITICAL- 13:20,22
CURRENT- 13:25
CURVE- 35:18
CUT- 26:11

D
DALE- 3:15
DAMAGE- 34:23 35:6,14
DANIEL- 3:8,20,23 4:3 6:16
DARRELL- 3:7 14:7,10,11,12,18,19
DATA- 15:3,9,18 19:12,13,17,19,24 ,25
16:25 17:1 20:4 21:13,16
22:2,9,19,21 24:15,16,22,23 27:10
29:17,19,22,25 30:4,12,15 31:1
DATE- 5:4 6:22 12:11,12 13:5,19 14:11 23:5
26:11,19 33:6 36:23 37:19
DATES- 6:12 23:20 29:12
DAVID- 3:5,8,12,14,17,19 11:13
DAVIS- 3:22
DAY- 35:2
DAYS- 23:8,13,15 25:19 34:7 35:12
DEADLINE- 7:18 8:23 9:6,22,23,25 10:10,17,18,24 11:3 12:18 21:1 25:16 34:5
DEADLINES- 7:1,2 25:13 31:13

DEAL- 7:13 11:19 14:5,11 28:11 32:25 33:8,24
DEALING- 15:4
DEANNA- 3:22
DEBRA- 3:19
DEBTOR- 22:8 30:25 33:17 35:3
DEBTORS- 31:23 32:2 33:13 34:24 36:1
DEBTORS'- 33:8,10,24 35:21
DECEMBER- 7:15 8:11 9:23 10:10 11:3 17:21 23:19
DECISION- 6:9
DEFINED- 10:9 36:10
DEFINITIVE- 32:2
DELAWARE- 4:17
DEMMY- 3:14
DEMONSTRATE- 12:6
DEMONSTRATING- 18:16,24
DEPOSE- 9:8,9 16:8 27:1 28:8,12
DEPOSED- 14:23 15:6,18 20:2 27:15
DEPOSITION- 14:20 24:1,11 25:13 27:11 28:13
DEPOSITIONS- 15:3,7 22:25 23:9 25:16,20 26:18 27:7,20,22 28:1,5
DESCRIBED- 34:1
DESIGNATED- 11:19
DESIGNATING- 12:10
DESIRE- 35:21
DETAIL- 16:15,18
DETAILED- 17:7
DETAILS- 12:1,8
DEVELOP- 19:25 24:13
DEVELOPED- 19:14
DEVINE- 4:2
DIDN'T- 16:9 20:16 30:10
DIES- 4:1
DIFFERENCE- 12:2 23:3
DIFFERENT- 7:22 22:23 36:9
DIFFICULT- 33:20 36:11,15
DIFFICULTY- 23:22,25
DISCHARGE- 12:4
DISCLOSE- 19:24
DISCLOSURE- 5:24 6:6 7:23 16:15 31:8 32:1,3 34:6 36:13,14
DISCOVER- 19:21 30:5 31:2
DISCOVERY-

6:12,23 7:23 10:8 11:21 14:24 15:1,17 18:10 29:9
DISCUSS- 36:1
DISCUSSION- 15:25 31:12
DISCUSSIONS- 15:24
DISEASE- 14:8 19:8 24:25 30:22
DISMISSING- 5:12
DISTINCTION- 12:20
DISTINCTIVE- 24:25 25:1 30:22
DISTINGUISHED- 12:16
DIVINE- 24:3
DOCUMENT- 32:18 33:15
DOCUMENTATION- 33:1,4
35:14,16,19 36:2
DOCUMENTS- 31:8 32:21 33:16 34:7 35:13
36:7,12,15,18,19
DOESN'T- 11:15 22:24 36:24
DOLLARS- 33:11
DOUBT- 33:5
DOUGLAS- 3:9,13
DR- 12:2 14:7 16:21 19:10,13,14 21:13 22:22 23:18,25 24:11,22,25
DRAFTED- 36:9,17
DRAFTSPEOPLE- 36:18
DRESSED- 10:11
DRITZ- 3:17
DUE- 7:15 8:10 14:14 15:13 25:8 26:10,13,17,20,21

E
EACH- 8:8
EARLIER- 15:13 17:6
EDWARD- 3:24 4:2
EDWARDS- 3:22
EFFICIENT- 13:24
EFFORT- 20:3 34:9
ELECTRONIC- 37:15
ELEMENTS- 17:11
ELEVATES- 20:16
ELIZABETH- 3:18 4:2
ELSE'S- 21:14
ELSEWHERE- 25:3
EMPHASIZE- 17:10
ENABLES- 27:12
ENCOMPASS- 28:18,20
ENCOMPASSED- 28:19
ENDS- 25:10

ENORMOUS- 35:13
ENTERED- 5:15,19
ENTIRELY- 3:3
ENTITLED- 10:17 31:1
ENTITY- 21:24 22:1
ENVISIONED- 10:5
EQUIVALENT- 28:14
ERROR- 29:24
ESAYIAN- 3:18
ESPECIALLY- 6:25
ESSENCE- 30:22
ESSENTIALLY- 12:21 20:4 25:10
ESSERMAN- 3:7
ESTABLISHED- 7:18
ESTATES- 4:9
ESTIMATION- 11:16,17 12:16 13:2,8,15 16:22 18:3
EVERYBODY- 4:9 5:11 13:24,25 20:18 29:2,8 35:4
EVERYBODY'S- 15:17
EVERYONE- 3:1 31:14
EVIDENCE- 17:14 20:15,19
EVOLUTION- 36:17
EVOLVES- 11:20
EXACTLY- 12:7 14:10,16 19:5 28:9
EXAMPLE- 18:3 22:21,22
EXCEED- 35:23
EXCEEDINGLY- 36:8
EXCEPT- 36:13
EXCEPTIONS- 7:9
EXCRUCIATING- 16:15
EXCUSE- 21:25
EXHAUSTIVE- 16:18
EXISTENCE- 36:14
EXISTING- 36:14
EXISTS- 7:5 8:9 13:2
EXPECT- 17:1 36:8
EXPECTATION- 10:1 28:18
EXPECTED- 28:25
EXPECTS- 12:1
EXPEDITE- 36:6
EXPERIENCE- 11:16
EXPERT- 6:12,13,23 8:6,10,13,15,16,2 1,22
7:5,15,16,17,23 9:4,5,7,10,24 10:20,21,25 11:7,11,21,23 12:9,13 13:12 14:5 15:4,14,19 16:23 17:22 18:10,18 19:6,24

22:3,13,17 23:5
24:3,13
25:8,13,16
26:5,18 27:1,7,9,
EXPERTS- 6:22
7:19 8:7,13,18
9:9 11:3,19,25
12:10 13:1,9,10
14:22 15:1,5
16:7,8,13 17:1,6
21:5 27:5,7,20,22
28:2,8,12
EXPLAINED- 36:12
EXPLAINS- 33:13
EXPLORED- 29:11
EXTENDS- 15:7
EXTENT- 13:5
21:24 30:25
EXTRA- 6:22
EXTRAORDINARY-
17:4

F
FACE- 36:23
FAIR- 11:4 15:18
FAIREY- 4:3
FAIRNESS- 26:24
FAR- 33:1 34:11
FASHION- 13:24
29:9
FCR- 4:23 35:1,22
FCR'S- 36:20
FEASIBILITY- 7:6
FEBRUARY- 4:15
7:18 8:24 10:24
13:19 14:1,24
32:2,19,23
33:5,15,25 34:5
FEEDBACK- 33:23
FELDER- 3:19
FIGHT- 18:22
FIGURE- 24:11
FILE- 8:6,16 9:10
10:23 32:2
FILED- 8:1,16
9:5,24 10:20 17:8
22:9 28:22 32:22
FILING- 32:19,23
33:25 35:23
FINAL- 25:12
26:3,5,12 31:25
32:16,20
FINALLY- 10:14
17:24,25
FINCH- 3:25
FINE- 4:16 22:13
FINE-TUNING- 10:4
FIRM- 36:20
FIRST- 4:7 8:22
9:15 13:12 14:4
16:21 21:21,25
32:1,7
FIVE- 9:6 29:6
FOCUS- 30:12
FOCUSED- 24:17
30:14
FOLKS- 7:11 34:15
FORECLOSED- 13:13
20:15

FORECLOSES- 20:3
FOREGOING- 37:14
FORM- 20:17
36:13,14
FORMULATE- 14:21
FORMULATING- 16:1
FORTH- 15:15
16:14,18
FORWARD- 31:25
33:25
FOUND- 22:4
FOUNDED- 12:6
FOUR- 9:13
FRAME- 26:21
28:24 29:1
FRANCIS- 3:19
FRANKEL- 3:5
FREEDMAN- 3:16
6:5 31:6,11,22,23
FRIDAY- 5:14
FULL- 11:15 14:18
33:18
FULLY- 19:24
20:19 27:13
FUND- 33:17
FUNDAMENTAL- 9:11
17:2 18:9
FUNDAMENTALLY-
6:22,24 10:12
18:12
FURTHER- 23:23
25:20 32:17 36:4
FUTURE- 32:8 33:2
FUTURES'- 34:8,19

G
GENERAL- 6:6
GET- 8:1 13:23
14:17,19 20:12
22:12 25:22 26:9
28:12 29:8,10
34:5,11 36:11
GETS- 22:9
GIVE- 6:5 21:6
31:7
GIVEN- 28:24,25
GIVES- 25:19
GIVONE- 3:23
GLIDES- 17:9
GLOSBAND- 3:23
GO- 7:4 15:15
16:7 21:19 23:23
31:21 35:3
GOAL- 35:24
GOING- 4:6
5:16,25 6:4,5,23
7:6 12:4,23 13:25
14:9,11,19 15:10
16:13 17:5 19:25
20:18 23:14
24:14,19,24 28:5
29:7 30:4,5,25
33:15 34:11,15
35:15 36:21
GOOD- 3:1 6:3
GOT- 19:2
GOTCHA- 15:12
GRACE- 3:2 5:9,10
9:3,8,18,19 10:9

11:10 16:10
17:4,16,19
18:3,11 26:25
29:21,25
GRACE'S- 16:8
21:8
GREATLY- 4:10
5:11
GRECO- 3:12
GROUNDS- 30:10
GROUP- 11:2 30:12
GUESS- 37:2
GUISE- 6:21
GUTTMANN- 3:10

H
HALF- 9:6
HANDLE- 21:11
HAPPEN- 14:15
25:24
HAPPENS- 9:18
HAPPY- 22:13
HARD- 34:9
HAVEN'T- 23:25
34:12
HE'S- 24:2
HEAR- 35:8
HEARD- 15:21
29:16 34:12
HEARING- 3:2 4:14
8:14 21:20 28:25
29:5,7 37:10
HELP- 36:6
HENCE- 29:20
HISTORIES- 30:20
HISTORY- 11:14,15
36:22
HOGAN- 3:20
HOPE- 34:24
HOPEFULLY- 35:3
HORKOVICH- 3:12
HUGE- 13:11
HURFORD- 3:14

I
IDEA- 14:17 28:7
IDEAS- 19:14,20
IMPLEMENT- 33:17
IMPLICATES- 24:15
IMPORTANT- 13:18
IMPROPER- 16:19
INASMUCH- 6:25
INCOMPLETE- 15:13
INDEED- 4:7 11:25
INDICATED- 5:1
12:25 24:16
INDIRECT- 32:12
INEVITABLY-
11:18,22
INFORMATION- 20:2
24:2,6 25:20
28:11
INITIAL- 8:18
9:13,21 11:23
16:1 17:21 18:17
28:21
INSOFAR- 15:2
31:7 34:25
INSTANCE- 21:21

INSTEAD- 26:12
INSURANCE- 32:13
INTEGRATED- 32:18
36:9
INTEND- 30:3
33:13,25
INTENDED- 28:20
INTENDS- 29:22
INTENTION- 13:14
INTEREST- 22:9
35:17
INTERPRET- 9:17
INTRODUCE- 11:7
17:14
INTRODUCING-
21:16
INVOLVES- 5:8
IRA- 3:20
IRRELEVANT-
29:20,24
ISN'T- 25:1
ISSUE- 6:4,5,11
9:20 17:9,16,20
18:15,20,21 22:23
24:17 26:24 29:13
30:25 34:16
ISSUES- 5:9,24
7:13 10:21,24
11:4,8,19 17:3
32:5,7,11,15,20,2
5
24:20 29:10 35:15
36:2
IT'S- 5:13 7:14
10:23 11:14
16:1,3 17:18 18:5
19:9,19 21:2
22:12 23:24 25:21
28:14,15 30:4
33:12,20 36:11,22
ITEM- 5:8,17,23
6:8
ITEMS- 4:11 31:6

J
JACOB- 3:6
JAMES- 3:21,24
JANET- 4:1
JANUARY- 31:24
37:19
JASON- 3:19
JAY- 3:15
JEFF- 3:20
JEFFREY-
3:5,17,23
JENNIFER- 4:1
JOHN- 3:6,8,13
JONATHAN- 3:18
JOSEPH- 3:20
JUDGE- 4:22 35:12
36:7
JUNE- 15:7
25:17,24 29:6
JUSTIFIABLE-
30:10

K
KANG- 3:23
KATHARINE- 3:6

KERRI- 3:16
KLAUDER- 3:17
KLINGLER- 3:8
KNOWS- 13:24
KRAMER- 3:24
KRIEGER- 3:25

L
LACK- 5:10
LANGUAGE- 18:6
LAPS- 21:6
LASTOWSKI- 3:25
LATER- 10:2,6
16:7
LAURA- 3:24
LAWYERS- 30:17
LEAD- 4:6
LEARNING- 35:18
LEAVE- 23:8
LEFT- 9:21
LEGAL- 18:20
LEGALLY- 17:13
LET'S- 26:2,16
29:5
LEVEE- 3:20
LEVY- 3:21
LEWINSTEIN- 3:11
LIBBY- 5:19
6:11,17
7:2,8,9,13 9:9,24
10:21,25 11:5,7
14:8 16:5,19,24
17:2,5,6,8,12,18
18:5,12 19:8 21:9
22:7,10,18,24
24:7,18 25:1 28:2
29:20 30:8,22
31:5,13,15,17,19
LIBBY'S- 16:13
24:7 30:5
LIES- 17:11
LIESEMER- 3:18
LIMITED- 29:10
LINDA- 3:13
LINE- 15:6
LINED- 11:3
LISA- 3:18
LIST- 3:4
LOCAL- 4:22
LOCKWOOD- 3:10
LOGIC- 27:19
LOGICAL- 14:23
LONG- 29:4
LONGER- 13:20
LONGOSZ- 3:24
LOOK- 25:7
LOOKING- 34:2
LOT- 4:9 34:10

M
MAJOR- 20:6
MAJORITY- 16:16
MAKING- 15:19
20:22 24:10 26:6
MANAGEMENT- 5:25
MANNAL- 3:9
MANY- 33:12
MARC- 3:11
MARCH- 21:2 23:21

29:5
MARCOS- 3:21
MARGARET- 3:9
MARICOPA- 5:9
MARION- 4:3
MARK- 3:14
MARTI- 3:22
MARTIN- 4:1
MATTER- 3:2
4:20,21 5:12,18
6:24 8:19 12:19
13:3 28:18,20
37:16
MATTERS-
4:13,14,18 6:1
11:18 14:4,6,25
15:14 28:16 32:8
MATTHEW- 3:24
MAYER- 3:6
MEANINGFUL- 15:19
19:22
MEANINGFULLY-
19:21
MEANS- 8:16 20:3
24:12 29:23
MEANT- 9:2
MEDICAL- 11:8
16:18 17:3 29:10
MEET- 21:16 32:23
MEETING- 36:18
MEETINGS- 35:20
MELANI- 3:17
MERE- 21:6
MERITS- 10:16
MESOTHELIOMA-
19:15
MESSING- 25:22
MET- 18:19 35:25
MICHAEL-
3:15,22,25 31:10
MILESTONE- 32:1
MISSING- 10:18
MODIFICATION-
32:10
MODIFY- 33:14
MOMENTARILY- 5:17
MONACO- 3:19
MONEY- 4:10
MONTH- 21:6 37:3
MONTHS- 9:6
29:4,6 33:12
MORNING- 3:1 4:25
5:14,20 6:3
MOTION- 5:13,19
MOVE- 21:7 23:4
25:8
MUCH- 4:8 17:5
24:17 27:21 30:12
36:24
MUKHERJEE- 3:19
MUMFORD- 5:16
MURRAY- 3:22
MUSTERING- 24:23

**N**

NARROWED- 32:8
NATALIE- 3:7
NATHAN- 3:25
NEAR- 8:24

NECESSARILY- 16:2
23:13
NECESSARY- 11:6
22:4 29:2
NEEDED- 22:12
NEGOTIATED- 7:10
20:11
NEGOTIATION-
23:25
NEVER- 13:13
NEW- 8:21 11:19
13:1 14:7 15:9
19:13,14,17,19,20
,25
16:25 17:1 20:4
21:5,13,16
22:2,12,21 24:22
27:10
28:11,16,18,20
NEWSOM- 3:16
NONETHELESS-
21:24
NONZAI- 33:7
NORRIS- 3:14
NOTE- 34:8
NOTION- 17:25
NUNC- 4:21 5:1

**O**

O'NEILL- 3:21
OBJECT- 6:24
OBJECTION-
16:15,17 17:7,13
26:6
OBJECTIONS- 4:12
25:12,25
26:1,3,7,13,17
OBLIGATION- 18:24
OBLIGATIONS- 12:5
33:18
OBLIGED- 19:19
OBSERVE- 10:14
29:16
OBSERVED- 8:14
OBTAIN- 35:21
OBVIOUSLY- 5:2
7:21 13:2,11
17:13 28:20 31:1
OMISSION- 12:14
OMNIBUS- 4:12,14
ONE- 4:24 6:4
7:25 12:23 23:23
31:6,11 32:8 34:4
OPEN- 9:21 28:7
32:5,25
OPPORTUNITY- 8:2
10:22 13:6 14:20
15:17 19:20
20:5,19 21:15
22:11,12 29:2
35:17
OPTIMISM- 34:10
ORDER- 4:24,25
5:3,12,19,25
14:12 15:11 18:18
19:1,25 29:13
ORDERS- 4:18
ORIGINAL- 13:18
21:1

ORIGINALLY-
27:4,5
OTHERWISE-
27:13,18
OWN- 9:10,18 10:2
14:22 18:4 24:13

**P**

PAID- 33:11
PAPERS- 30:11
PARALLEL- 8:5
PARSONS- 3:5
PARTIAL- 11:14
PARTICIPATING-
3:4
PARTICULAR- 10:2
11:15,22 12:2
19:13
PARTIES- 7:10 8:6
10:6 15:25 20:11
22:9 32:4 36:9
PARTIES'- 22:19
PARTY- 10:17,18
22:4,7
PASSAGE- 16:25
PASSED- 7:1
PAST- 9:7,23
PAUL- 3:14
PAY- 33:18
PAYMENT- 32:12
PAYMENTS- 5:10
PD- 4:23 7:11
33:3,7,8,9,10,13,
14,17,18,19,23
32:24 34:8,22
35:1,11,22
PEG- 3:5
PENDING- 32:16
PEOPLE- 8:1 20:1
21:15
PEOPLE'S- 25:22
PERHAPS- 5:3 8:2
20:9 34:5 36:13
PERIOD- 20:12
PERMIT- 8:21 11:6
22:16
PERMITTED- 28:1
PERMITTING- 4:8
11:11 22:3
PERNICONE- 3:10
PETER- 3:10,21
PHASE- 7:7,13
31:19
PHILLIPS- 3:8,9
PHONE- 3:3,5
32:7,9,10,11,12,1
6,22
PI- 36:19
PINNED- 14:18,19
PIQ- 24:15,16
29:17,22 30:4
PLACE- 3:3 7:1
20:20 27:18
PLAN- 6:6,21
10:19 11:2,6
12:3,5,6 13:11
16:17 17:7,12
18:16,18 25:12,25
26:1,2,3,12,17

28:1,24 31:7,25
32:3 33:10 34:6
35:15
PLAYED- 16:10
PLAYING- 15:12
PLEADING- 16:17
PLENTY- 27:24
POINTED- 4:25
POINTS- 9:13
POLICIES- 32:14
POSITION- 14:21
16:6 24:24 26:7
PRACTICE- 13:7
PRECISELY- 14:1
PREEXISTING-
19:12
PREJUDICE- 10:19
13:11 18:12
20:6,18,21 21:9
29:3
PREJUDICED- 10:18
PREJUDICIAL- 13:8
PREPARE- 9:10
PREPARED- 32:15
PREPARING- 27:1
29:22
PRESENT- 3:4
PREVIOUSLY- 24:18
PRINCIPALLY-
35:14
PRIOR- 19:11
PRO- 4:21 5:1
PROBABLY- 12:14
30:16
PROBLEM-
10:8,9,11 27:9
33:21
PROBLEMS- 10:7
PROCEDURE- 20:17
PROCEED- 6:23
33:25
PROCEEDINGS-
37:15
PROCESS- 6:7 9:19
10:8 11:1 13:23
18:5 19:8,23
26:25 27:17 28:4
30:8 33:14
36:6,11
PRODUCE- 16:9
23:1 27:6
PRODUCED- 15:10
16:22 21:21,25
22:25 27:23
PRODUCING- 20:15
PRODUCTIVE- 30:17
36:22
PROGRESS- 24:10
PROOF- 17:10,11
18:15,20,23
PROPERTY- 5:10
34:23 35:6,14
PROPONENTS- 21:6
10:20 11:2,7 12:3
13:11 17:11 18:18
28:1
PROPOSAL- 6:24
16:2 19:10
33:8,24 34:24

35:3
PROPOSE- 19:4
33:10
PROPOSED- 11:10
18:11
PROPOSES- 9:3
PROPOSING- 9:8
26:25
PROPOSITION-
18:22
PROVIDE- 26:18
29:1
PROVIDED- 22:12
PROVIDES- 25:10
26:19
PROVISION- 7:16
9:4
PROVISIONS- 9:25
PURELY- 13:10
30:21
PURPORT- 19:6
PURPORTS- 14:7
PURPOSE- 15:11
19:22
PURPOSES- 12:25
21:12
PUTTING- 6:21
35:2

**R**

RADECKI- 3:20
RAISE- 26:24
RAISED- 6:11
10:21,25 14:4
32:12
RAMOS- 3:21
RAMSEY- 3:7
RATES- 19:15
RATIONAL- 15:8
RATIONALLY- 13:23
REACH- 30:18
REACT- 8:17
REALITY- 11:17
15:9,24
REASON-
22:1,7,15,18
REASONS- 11:9
REBECCA- 3:9
REBUT- 19:21,25
REBUTTAL- 6:13
7:19 8:2 9:4,10
11:11
13:3,6,10,13,17,1
9
12:13,17,21,24
14:2,14,15,22
15:2,4,5,12,15
16:9 18:1,7
20:9,14,25 21:17
22:13,17,20,24
23:5,9,21 25:8
27:2,11,12,14,15,
19,20,22
28:7,10,12,14,15,
19
REBUTTING- 19:23
RECALLS- 33:19
RECEIVE- 11:4
RECEIVED- 33:23

35:12
RECOGNIZED- 19:9
RECOGNIZES- 15:9
RECORDING- 37:15
REFLECT- 34:1
REJECTED- 11:11
REJIGGER- 10:7
RELATE- 11:4
RELATIONSHIP-
21:3
RELEVANCE- 24:17
30:10
RELIANCE- 9:25
RELY- 34:15
RELYING- 7:2 24:3
REMAINING-
13:4,16
REP- 34:19
REPEATED- 28:5
REPLY- 18:9
8:15,16,17,18,19,
21,22
REPORT- 5:23 6:6
15:5,12,15
16:9,21,22 19:6
21:14,25 22:22
27:4,10,11,13,14,
15,19,21,23
28:14,15,18,19,20
,21,22
23:19 24:4 26:5
31:7
REPORTS- 6:13
8:1,2,3,6,10,12,1
3
7:5,15,16,17
9:4,5,7,10,24
10:20,22,23,25
11:11,23
13:3,6,13,17,19,2
0
12:4,12,13,24
14:1,2,5,14,15,22
15:19 16:23
17:6,22 18:18
19:6,12,24 20:16
21:1,5
22:17,20,25
23:1,5,9,15,
REPRESENTATIONS-
21:12 36:23
REPRESENTATIVE-
33:3 34:8
REQUEST- 30:9
REQUESTS- 30:13
REQUIRED- 11:24
12:3
RESERVATION- 10:6
RESOLVED- 5:13,18
RESPECT- 4:21
5:9,18 6:10
11:21,25 12:5
14:25 15:1,19
25:25 28:15 30:3
31:5
32:5,7,21,22,24
33:7 34:7
RESPECTFULLY-
11:10

RESPECTS- 9:11
RESPOND- 8:8
12:10 14:12
15:10,18 19:5
20:5 21:6 22:1
24:24
RESPONDING- 14:17
RESPONSE- 11:7
14:6,18,22 15:21
20:15 22:8 24:13
RESPONSIVE- 27:13
RESTIVO- 3:25
RESULT- 20:3
REVISED- 5:3 37:4
REVISIT- 36:21
REWRITE- 10:1,12
21:8
REWRITTEN- 18:12
RICH- 3:24
5:5,6,7
34:8,18,20
RICHARD-
3:6,15,21
RIGHTS- 10:6
20:17
ROAD- 15:16
ROBERT- 3:9,12,23
ROGER- 3:5
ROUND- 11:23,24
RUBIN- 3:11
RULED- 29:20
RULES- 6:25 10:13
16:10,11 18:10,11
21:8
RULING- 21:12
29:24
RUNYAN- 3:14
RUSHING- 15:11

S
SAKALO- 3:15
SALE- 5:10
SAMUEL- 3:11
SANDERS- 4:22
SANDY- 3:7
SAVES- 4:9
SCHEDULE-
13:18,21 28:23
31:25 32:1
SCHEDULED- 35:20
SCHEDULES- 25:22
SCIENTIFIC- 18:25
19:3,4,7
SCIENTIFICALLY-
18:21
SCOTT- 3:7,13
33:3 35:11
SCOTTS- 32:14
SCREWY- 27:13
SECOND- 8:8 9:22
SEE- 22:7 26:2
29:5 30:18
SEPARATE- 7:7
SEPTEMBER- 5:1,2
SEQUENCE- 9:12
14:23
SEQUENTIAL- 7:25
8:3
SERIES- 36:10

SERVES- 15:11
SET- 7:3,12,14
9:12 15:15
16:14,17 18:10
19:12 21:13,16
22:2,9 31:25
SETS- 22:19,21
SETTING- 7:22
SETTLED- 32:13
SETTLEMENT- 30:20
SETTLING- 30:20
SHARE- 18:4
SHAWN- 3:21
SHAYNE- 3:15
SHORTLY- 35:4
SHOULDN'T- 13:6
SHOW- 18:19
SIDE- 34:21 35:4
SIDE'S- 8:18
SIEGEL- 3:14
SIGN- 4:18 5:14
SIGNED- 4:24 5:1
SIGNIFICANT-
34:12
SILL- 4:22
SIMILARLY- 22:20
SIMPLY- 16:14
26:11
SIT- 17:16,19
SIX- 25:10 26:19
29:4
SKIP- 5:16
SLIPPED- 13:21
SLOCOMBE- 3:10
SLOGANICK- 3:20
SOLE- 27:25
SOMEWHAT- 11:20
SOUGHT- 24:18
SOUND- 37:15
SOURCES- 35:13
SPARKS- 4:1
SPECIFICALLY-
5:24 12:10 30:11
SPECULATING-
23:13
SPEIGHTS- 4:3
SPENCER- 3:15
SPLIT- 23:2
STABLE- 21:5
STAND- 5:23
START- 29:7
STATE- 5:17
STATEMENT- 5:24
6:7 16:15 31:8
32:1,3 34:6 36:14
STATUS- 6:6 31:7
STEEP- 35:18
STEP- 23:23
STORY- 19:5
STOVER- 3:24
STRATEGIC- 20:21
21:7
STRUCTURED- 27:5
SUBMISSION- 9:7
SUBMISSIONS- 12:9
SUBMITTED- 5:12
18:18 19:6
28:8,13
SUBMITTING- **12:12**

26:5
SUBSCRIBE- 19:7
SUBSTANTIVE-
20:17,20
SUFFICIENT- 17:13
25:11 26:18,22
SUM- 18:8
SUPPLEMENT- 18:1
SUPPLEMENTAL-
7:17 8:13,15,21
10:23
12:12,17,21,24
13:20 14:1 18:7
20:8,14,25
21:17,19,20,22
27:15 28:21
SUPPLEMENTATION-
12:25 14:24
SUPPORTS- 14:8
SURELY- 26:21
SURREBUTTAL- 8:3
22:17,18
23:1,10,16,21
25:9,19
26:5,10,16,20
27:21,23
28:10,14,18
SUSTAINED- 18:23

T
TABLE- 19:18 20:4
28:9 34:21 35:4
36:16
TACCONELLI- 3:17
TAKING- 3:3
TAX- 5:10
TDP- 12:6 16:19
18:16,24 19:9
32:11,15
TED- 31:21,22
TEDIOUSLY- 36:11
TELEPHONE- 4:8
TELEPHONICALLY-
36:19
TERENCE- 3:22
TERM- 8:24 18:1
TERMS- 18:2 24:22
35:19 36:10
TERRIBLE- 16:2
TERRIBLY- 30:17
TESTIMONY- 11:7
THEODORE- 3:16,17
THEORIES-
18:21,25 20:1
THEORY- 14:8
19:3,4,7 21:4
THEREFORE- 15:14
20:6,14
THIRD- 10:3
THOMAS- 4:2
THREE- 25:21
THROW- 21:5
THURSDAY- 35:21
THUS- 4:9 34:11
TIED- 9:20
TIFFANY- 3:8
TIGHT- 20:11
TIME- 4:9 8:7,22
10:2 14:13

15:2,6,13,16
16:25 20:12,20
22:10,24 23:16
24:14,19 25:4,11
26:18,21,22
27:21,24 28:9,24
29:1,4,8 32:18,23
TIMELY- 20:1
TIMING- 13:16,22
22:23
TODAY- 4:11 6:9
30:16 37:5
TOGETHER- 35:2
TOMORROW- 35:20
36:19 37:5
TOTAL- 23:8
TRACK- 7:7
TRADITIONAL-
33:8,9,18
TRANSACTION- 34:1
TRANSACTIONAL-
32:21
TRANSCRIPT- 37:14
TRANSCRIPTS-
37:20
TRAVELING- 35:18
TREMENDOUS- 12:1
TRIAL- 11:4 12:16
TRUST- 28:5
32:12,22 33:17
TRUTH- 36:4
TUNC- 4:21 5:1
TURETSKY- 3:12
TURNING- 31:6
TWO- 6:22 7:24
12:22 32:6,8
TYPES- 7:24
TYPO- 5:5

U
UNAMBIGUOUS- 9:1
UNAVAILABLE-
29:20
UNCONTESTED- 4:21
UNDERSTANDING-
32:14,17
UNDONE- 5:11
UNDUE- 29:3
UNFAIR- 6:25
UNIFIED- 34:23
UNIQUE- 14:8 19:8
UNLESS- 10:8
URGE- 25:18
USED- 7:24 12:17
18:21 20:9,13
USEFUL- 33:23
USING- 20:8
UTILIZED- 7:22

V
VALUE- 36:23
VARIOUS- 34:22
35:13
VERSION- 15:24
VERSUS- 20:9
VIEW- 26:15
VIEWED- 11:2
VIEWS- 19:10,11
VOLUME- 35:13

**W**

WALTER- 3:10
WARRANT- 17:19
29:25
WAXMAN- 3:21
WAYS- 10:16
WE'RE- 4:12 6:4
14:9,11,18
15:4,10 19:3,23
24:10,23 29:21
34:11,15,20,21,22
35:18,19,21,23
36:2,3 37:2,8
WEDNESDAY- 35:20
WEEK- 25:9 26:9
34:25
WEEKEND- 35:20
WEEKS- 25:10,21
26:19
WEIGH- 8:22
WEISBERG- 33:4
WEREN'T- 30:14
WESTBROOK- 4:2
WHATSOEVER- 7:19
WHEREBY- 7:25
27:5 28:4
WHEREUPON- 37:10
WHITEHOUSE- 12:2
14:7 16:21
19:13,14 21:13
24:22,25
WHITEHOUSE'S-
14:17,19 16:21
19:10 22:22 23:18
24:1,11
WHITENER- 4:1
WHO'S- 35:5
WHOLE- 13:21
14:17 16:23 17:25
19:14,22 20:10
21:5 26:24 27:9
28:6
WILL- 4:18 5:5
10:19,22 11:4
15:4 19:1
20:4,5,10
22:12,16 23:16
26:25 27:25
33:5,9,11,13,15,1
7
32:2,17,23,25
34:1
WILLIAM- 4:1
WILLING- 23:23
WISH- 36:3
WISLER- 3:23
WITHHOLD- 16:6
WITNESS- 27:1
WITNESSES- 15:5
21:16
WORD- 8:20 12:16
18:7 20:8
21:18,19 22:14
WORDS- 8:3 9:6
11:1 12:17 20:23
WORK- 8:19 13:11
18:5,11
24:19,21,23 26:15

WORKED- 11:1
32:10 35:19
WORKING- 4:13
33:2 34:9,20,22
35:1
WORKS- 13:24
28:23
WORRY- 17:21
WOULDN'T- 12:19
36:3
WR- 3:2
WRITTEN- 10:23
WYRON- 3:15

**Y**

YOU'D- 27:19
YOU'LL- 17:24
31:24
YOU'RE- 21:22
31:1
YOU'VE- 21:21

**Z**

ZAI- 32:25 33:10
ZONOLITE-
35:15,16