IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Hearing Date: February 23, 2009 at 10:30 a.m.** |
| | ) | **Related to Docket No.: 20538** |

## DEBTORS' OBJECTION TO MOTION OF KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND SUPPORT TERMINAL SERVICES, INC. FOR AN ORDER MODIFYING THE AUTOMATIC STAY

The Debtors object to the Motion of Kaneb Pipe Line Operating Partnership, L.P. and

Support Terminal Services, Inc. (collectively, "Kaneb") for an Order Modifying the Automatic

Stay (the "Motion") and request that the Motion be denied.

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f7kIa Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd, G C Limited Partners I, Inc. (Ok/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f7kIa Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holding!;, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f7kIa GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (Ok/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (Ok/a British Nursing Association, Inc.), Remedium Group, Inc. (Ok/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

After waiting nearly eight years since the commencement of these chapter 11 cases,
Kaneb now seeks relief from the automatic stay to continue consolidated appeals in state court
litigation (the "Texas Litigation"). Kaneb seeks this relief to pursue indemnity and other
monetary claims against the Debtors in that litigation. Kaneb, however, has failed to establish
cause to modify the automatic stay and will not be prejudiced by the continuation of the stay
during the remainder of these chapter 11 cases. Most notably, Kaneb never filed a proof of claim
against the Debtors based on its claims in the Texas Litigation. As a result, Kaneb is barred from
asserting those claims in these chapter 11 cases, and that portion of the Texas Litigation will
become moot upon confirmation of the Debtors' chapter 11 plan and the discharge related
thereto.

Kaneb attempts to circumvent this result by alleging, without any evidence, that the
merger agreement from which its claims arise is an executory contract and that Kaneb is entitled
to assert either a rejection damage claim or a cure claim in connection with assumption or
rejection of that contract under the Debtors' chapter 11 plan. These assertions are baseless. The
merger agreement was entered into by the Debtors and Kaneb in 1992, has been fully performed
by the parties in all material aspects and thus is not an executory contract.

Kaneb's assertion that cause for relief exists under the Rooker-Feldman doctrine is
equally unavailing. That doctrine only applies in limited circumstances where the loser in state
court litigation seeks to overturn the state court result in federal court, which is not the case here.

Lastly, Kaneb argues that cause exists because insurance may cover its claims against the
Debtors. In reality, however, there are serious questions of whether insurance coverage exists
and, if it does, the effect of the Debtors' proposed chapter 11 plan on such insurance coverage.
The primary insurance policies cited by Kaneb are subject to previous settlements, which have

2

exhausted certain portions of those policies, and also are subject to an insurance transfer agreement in relation to the section 524(g) asbestos personal injury trust to be established by the Debtors' chapter 11 plan. Further, Kaneb has no entitlement to any excess coverage. Thus, lifting the stay to permit Kaneb to pursue insurance coverage would only embroil the Debtors in speculative insurance coverage litigation at a time when the efforts of the Debtors' management and attorneys would be better spent seeking confirmation of the Debtors' chapter 11 plan.

## BACKGROUND

1.      The Texas Litigation concerns the ownership and liability related to a 12-mile long stretch of pipeline known as the "Otis Pipeline" located near the Cape Cod Canal in the town of Sandwich, Massachusetts. The Otis Pipeline has been the subject of substantial environmental cleanup liability – believed to be in excess of $70 million – relating to alleged fuel releases in the early 1970s.

2.      On December 21, 1992, Grace Energy Corporation ("GEC") and Kaneb Pipeline Operating Partnership, L.P. entered into the "STS Agreement and Plan of Merger" (the "Merger Agreement") whereby GEC sold Standard Transpipe Corp. ("STP") to Kaneb. See Motion at Ex. K7. In connection with the Merger Agreement, the parties also entered into an Insurance Procedures Agreement dated December 21, 1992 (the "Insurance Procedures Agreement"), a copy of which is annexed hereto as Exhibit A.

3.      In the years following the merger, a dispute arose between Kaneb and GEC as to whether the Otis Pipeline was owned by STP when GEC sold STP to Kaneb. In 1997, GEC commenced the Texas Litigation by filing an action against Kaneb seeking a declaratory judgment that Kaneb holds all present and future liabilities associated with the Otis Pipeline. GEC also sought a declaration that it had no indemnity obligations to Kaneb under the Merger Agreement for liability related to the Otis Pipeline.

3

4.      In its response, Kaneb asserted a general denial and several affirmative defenses. Kaneb denied purchasing the Otis Pipeline as part of the Merger Agreement and asserted several counterclaims by which it sought indemnity, attorney's fees and reformation of the Merger Agreement to confirm that the Otis Pipeline was not conveyed to Kaneb.

5.      On July 2, 1999, the Texas state court entered a partial summary judgment (a copy of which is attached hereto as Exhibit B (the "Partial Summary Judgment Order")) in favor of GEC holding that the Otis Pipeline assets and liabilities were transferred to STP prior to 1992 and thus included in the Merger Agreement when Kaneb acquired STP. The Texas court also held that the environmental exposure relating to the Otis Pipeline during the time when it was owned by GEC "was clearly a liability of STP that could be and was transferred to [Kaneb]" pursuant to the Merger Agreement. See Partial Summary Judgment Order at ¶ C. The Texas court, however, also determined that there were issues of fact concerning Kaneb's affirmative defensives and counterclaims. These factual issues were certified for a jury trial.

6.      On August 20, 2000, after a jury trial, the Texas court entered an Amended Final Judgment, which made final the previous Partial Summary Judgment Order and also held that all liabilities pertaining to the Otis Pipeline were transferred from GEC to Kaneb and that GEC did not owe any indemnity to Kaneb for such liability. See Motion at Ex. K3. The court also awarded GEC approximately $1.8 million in attorney's fees, but declined to award GEC approximately $3.4 million in response costs that it had incurred in relation to the Otis Pipeline prior to trial. Kaneb appealed to the Texas Court of Appeals and GEC cross appealed.

7.      In April 2001, GEC and the rest of the Debtors commenced these chapter 11 cases. As a result, the automatic stay has prevented the Texas Litigation from going forward.

4

8.      During the course of these chapter 11 cases, Kaneb failed to timely file a
proof of claim against the Debtors related to the Texas Litigation or the Otis Pipeline. As a
result, the issue of the validity of Kaneb's counterclaims in the Texas Litigation will become
moot after confirmation. Kaneb did, however, file a proof of claim with respect to an unrelated
alleged obligation of the Debtors, which claim was subsequently expunged after the Debtors
objected to that claim.

9.      Despite failing to file a proof of claim and after waiting nearly eight years
since the commencement of these chapter 11 cases, Kaneb now seeks relief from the automatic
stay to prosecute its appeal in the Texas Litigation and liquidate its claims asserted therein
against the Debtors and their estates.

## ARGUMENT

### KANEB HAS FAILED TO SHOW SUFFICIENT
### CAUSE TO MODIFY THE AUTOMATIC STAY.

10.      The automatic stay is one of the most fundamental protections provided to
a debtor under the Bankruptcy Code. See Midatlantic Nat. Bank v. New Jersey Dept. of Envtl.
Prot., 474 U.S. 494, 503 (1986). As recognized by the Third Circuit, the purpose of the
automatic stay is to:

> prevent certain creditors from gaining a preference for their claims
> against the debtor; to forestall the depletion of the debtors' assets
> due to legal costs in defending proceedings against it; and, in
> general, to avoid interference with the orderly liquidation or
> rehabilitation of the debtor.

Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991).

11.      Pursuant to section 362(d) of the Bankruptcy Code, a movant must
demonstrate sufficient cause to justify lifting or modifying the automatic stay. Although the
Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies

underlying the automatic stay [and] . . . the competing interests of the debtor and the movant."

In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993).  In particular, Delaware courts

consider the following three factors in balancing the competing interests of the parties:

> (a)    whether any great prejudice to either bankrupt estate or the debtors
> will result from continuation of the civil suit;

> (b)    whether the hardship to the non-bankrupt party by maintenance of
> the stay considerably outweighs the hardship to the debtor; and

> (c)    the probability of the creditor prevailing on the merits.

Continental, 152 B.R at 424; In re W. R. Grace & Co., 2007 WL 1129170, *2 (Bankr. D.

Del. April 13, 2007).

12.    Kaneb, as an unsecured creditor of the Debtors, "bear[s] the heavy and

possibly insurmountable burden of proving that the balance of hardships tips significantly in

favor of granting relief as against the hardships to the debtor in denying relief." In re Micro

Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990); see also In re Metro Transp. Co., 82 B.R. 351,

352 (Bankr. E.D. Pa. 1988) (reviewing precedent establishing the "difficult task" of unsecured

creditors in obtaining relief from the stay).

13.    Kaneb has failed to satisfy its burden of proving that cause exists to

modify the automatic stay because (a) modification of the automatic stay would impose

substantial prejudice on the Debtors, (b) the balance of hardships weighs heavily in favor of the

Debtors, and (c) Kaneb has not demonstrated any probability of success in the Texas Litigation.

In addition, no cause exists to grant relief to allow Kaneb to pursue insurance.  Therefore, the

Motion should be denied.

A.      **Modification of the Automatic Stay Would**
        **Impose Substantial Prejudice on the Debtors.**

        14.     The Debtors would incur substantial prejudice if the automatic stay were

modified to proceed with the Texas Litigation because they would be forced to litigate issues that

will become moot upon confirmation of the Debtors' chapter 11 plan.  As discussed in Section B

below, Kaneb did not file proof of claim against the Debtors based on its claims in the Texas

Litigation.  Thus, its claims are now barred and will be discharged under the Debtors' plan.  See

11 U.S.C. §§ 502(b)(9), 1141(d)(1)(A).  It would be a wasteful expense for the Debtors and an

inefficient use of judicial resources to resume state court litigation concerning Kaneb's claims

when those claims will be discharged and not require any further litigation after confirmation.

        15.     In addition, this Court previously has recognized that granting litigation

claimants relief from the automatic stay would be detrimental to the administration of the

Debtors' estates because it would distract the Debtors and undermine the reorganization process.

See Grace, 2007 WL 1129170, at *3 ("Granting [relief from the automatic stay] would also be a

distraction from the reorganization process."); see also In re Ronald Perlstein Enter., Inc., 70

B.R. 1005, 1009 (Bankr. E.D. 1987) (recognizing the "need of . . . a debtor to devote its likely-

limited financial resources and energies to the formulation of a Plan to treat all of its similarly-

classified creditors equitably in bankruptcy court.").

        16.     As this Court is well aware, these chapter 11 cases are at a critical stage.

The Debtors filed their amended joint plan of reorganization and related disclosure statement on

February 3, 2009, and they are earnestly proceeding towards the final disclosure statement

hearing on March 9 and 10, 2009 and confirmation hearings in June and September 2009.  The

Debtors require all of their efforts to be focused on completing the chapter 11 plan process.

Even though the Texas Litigation involves an appeal of a state court judgment, as opposed to an

7

evidentiary trial, the litigation is at the early appellate stage and continuation of it would be
distracting to the Debtors. In particular, the Texas Litigation has an extensive record and
involves significant legal and monetary issues that would require the attention of the Debtors' in-
house counsel working in conjunction with outside counsel. As a result, continuation of the
litigation would force the Debtors' in-counsel to reduce the time that they would otherwise
devote to issues relating to the Debtors' chapter 11 cases and plan of reorganization.

**B.      The Balance of Hardships Weighs Significantly in Favor of the Debtors.**

17.      The above-described burdens upon the Debtors far outweigh any
inconvenience that would be encountered by Kaneb if the automatic stay remained in place with
respect to the Texas Litigation. Kaneb will bear little or no hardship from the continuation of the
automatic stay, because (i) Kaneb is barred from asserting its claims against the Debtors thereby
eliminating the need to liquidate such claims in the Texas Litigation, (ii) the Debtors are not
trying to use these chapter 11 cases to overturn any ruling in the Texas Litigation in violation of
the <u>Rooker-Feldman</u> doctrine, and (iii) modification of the automatic stay is not necessary to
preserve Kaneb's defensive rights, if any, in the Texas Litigation. Moreover, Kaneb waited eight
years without seeking to lift the automatic stay, further demonstrating that it has not been
burdened with any hardship from the effects of the stay.

**1.      Kaneb Is Barred from Asserting the Claims Against the Debtors
              that It Seeks To Liquidate in the Texas Litigation.**

18.      Kaneb's Motion rests upon the flawed presumption that relief from the
automatic stay is necessary to determine the Debtors' alleged liabilities to Kaneb and to liquidate
Kaneb's claims against the Debtors. Motion at ¶¶ 19-20. These issues, however, do not need to
be litigated at all. Kaneb failed to file a proof of claim against the Debtors based on its claims in
the Texas Litigation and will not be entitled to do so in the future because, contrary to Kaneb's

8

assertions, the Merger Agreement is not an executory contract. As a result, Kaneb's claims against the Debtors will be discharged upon confirmation of the Debtors' plan without the need for any further litigation. Maintenance of the automatic stay pending the discharge of Kaneb's claims will, therefore, cause no hardship to Kaneb and is necessary to avoid undue expense and burden from being imposed on the Debtors.

> (a)    Kaneb Failed To Timely File a Proof of Claim Against the
>         Debtors in Relation to Its Claims in the Texas Litigation.

19.    Bankruptcy Rule 3003 authorizes bankruptcy courts to fix the time within which proofs of claims may be filed against a debtor. See Fed. R. Bankr. P. 3003(c). The establishment of claims bar dates has been recognized as "essential" to the reorganization process. See, e.g., In re Drexel Burnham Lambert Group Inc., 151 B.R. 674, 679 (Bankr. S.D.N.Y. 1993) ("The issuance of the claims bar date is an essential feature of the reorganization process because it provides a date certain after which a plan can be negotiated, formulated, and eventually confirmed."); In re Pettibone Corp., 123 B.R. 304, 308 (Bankr. N.D. Ill. 1990) ("A bar date in a reorganization case provides a mechanism by which a trustee in bankruptcy can estimate the potential liabilities of the debtor. This estimate is essential to formulating a viable plan of reorganization.") (citation omitted).

20.    Here, this Court established March 31, 2003 as the bar date for, among other things, non-asbestos creditors to assert prepetition claims against the Debtors. Order As To All Non-Asbestos Claims, Asbestos Property Damage Claims, And Medical Monitoring Claims: (I) Establishing Bar Date, (II) Approving Proof of Claim Forms And (III) Approving Notice Program (Docket No. 1963). The Texas Litigation involves Kaneb's indemnity claims against the Debtors under the Merger Agreement, which are prepetition claims. See In re M. Frenville Co., 744 F.2d 332, 337 (3d Cir. 1984) ("When parties agree in advance that one party will

9

indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement."). As a result, Kaneb was required to file a proof of claim by March 31, 2003 or else its claims would be barred. See 11 U.S.C. § 502(b)(9); Fed. R. Bankr. P. 3003(c)(2). Because Kaneb failed to do so, it is now prohibited from participating in the Debtors' reorganization unless it can establish sufficient grounds for its failure to file a proof of claim. Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995).[2]

(b)     The Merger Agreement Is Not Executory.

21.     Kaneb seeks to avoid the result flowing from its failure to timely file a proof of claim by asserting that the Merger Agreement under which its claims arise is an executory contract, which must be either assumed or rejected by the Debtors. Motion at ¶ 17. The problem with this argument is that the Merger Agreement is not an executory contract.

22.     The Third Circuit has followed the Countryman definition of an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the contact are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp., 872 F.3d 36, 39 (3d Cir. 1989) (citation omitted).

---

[2]     A creditor may seek permission to file its claim late pursuant to Bankruptcy Rule 9006, which provides, among other things, for the enlargement of time periods specified by order of the bankruptcy court "on motion made after the expiration of the specified period to permit the act to be done where the failure to act was the result of excusable neglect." See Fed. R. Bankr. P. 9006(b)(1) (emphasis added). The burden of proving excusable neglect lies with the claimant. See, e.g., In re Enron Corp., 298 B.R. 513, 525 (Bankr. S.D.N.Y. 2003). Kaneb has not moved to file a late proof of claim on the grounds of excusable neglect, and the Debtors believe that any such motion would not be successful given that Kaneb was served directly with the Debtors' bar date motion and timely filed a claim seeking payment for unrelated matters, which claim was expunged after an uncontested objection by the Debtors. See Debtors' Fifth Omnibus Objection to Claims (Substantive) at Ex. C, p. 4 (Docket No. 5527); Order Granting Relief Sought in Debtors' Fifth Omnibus Objection to Claims (Substantive) at Ex. C, p. 3 (Docket No. 6007).

10

23.     The Merger Agreement is not an executory contract because there were no material obligations to be performed by each party as of the petition date. The sale and merger of various companies to Kaneb under the Merger Agreement closed on December 21, 1992, more than eight years before the commencement of these chapter 11 cases. Kaneb paid the required consideration under the Merger Agreement and the companies were transferred by the Debtors to Kaneb. No material obligations remain under the Merger Agreement.

24.     In the Texas Litigation, Kaneb has asserted indemnity claims under the Merger Agreement. However, the Debtors' indemnity obligation, if any, relating to such claims had expired as of the petition date. See Merger Agreement § 13.03 ("[T]he representations and warranties set forth in [the environmental disclosures section] shall expire and be of no force and effect on the fifth anniversary of the closing"). Even had they not expired, the Debtors' indemnity obligation would not render the Merger Agreement executory. See, e.g., In re THC Fin. Corp., 686 F.2d 799, 804 (9th Cir. 1982) ("[C]ourts have consistently held that contracts that only required payment by the debtor are not executory."); In re Federal-Mogul Global, Inc., 385 B.R. 560, 575 (Bankr. D. Del. 2008) ("[C]ourts have recognized that where one of the parties to the insurance policy has fulfilled the central agreement to such contract, such as the obligation of the insured to pay the premium in exchange for the insurer's defense and payment of indemnity claims against the insured, the contract is no longer executory."); In re Farmland Indus., 318 B.R. 159, 163 (Bankr. W.D. Mo. 2004) (contingent indemnity obligation did not render agreement executory); In re Spectrum Info. Techs., Inc., 190 B.R. 741, 748 (Bankr. E.D. N.Y. 1996) (same); In re Van Dyk Research Corp., 13 B.R. 487, 503-06 (Bankr. D. N.J. 1981) (debtors' obligation to indemnify was not an executory contract).

11

25.     Simply referring to the Merger Agreement as an executory contract does not make it so.  Nowhere has Kaneb provided any evidence to support its assertions.  Moreover, it is quite telling that Kaneb has never raised this issue during the course of these chapter 11 cases until its recent disclosure statement objection and the filing of the Motion.  Indeed, Kaneb already conceded that any and all obligations under the Merger Agreement expired when it failed to respond to the Debtors' objection to Kaneb's unrelated proof of claim resulting in that claim being expunged.  See Debtors' Fifth Omnibus Objection to Claims (Substantive) at Ex. C, p. 4 (Docket No. 5527); Order Granting Relief Sought in Debtors' Fifth Omnibus Objection to Claims (Substantive) at Ex. C, p. 3 (Docket No. 6007).

26.     Because the Merger Agreement is not an executory contract, Kaneb will not be entitled to assert a rejection damage claim or a cure claim against the Debtors that would relate to the Texas Litigation.  Thus, continuation of the stay will not impair any of Kaneb's rights in these chapter 11 cases.  Those rights, if any ever existed, were forfeited by Kaneb when it failed to file a proof of claim nearly six years ago.

## 2.      The Rooker-Feldman Doctrine Is Not Applicable.

27.     Continuation of the automatic stay will not cause any hardship upon Kaneb in relation to the ultimate outcome of the Texas Litigation (to the extent not rendered moot by the discharge of Kaneb's claims against the Debtors) and will not violate the Rooker-Feldman doctrine as Kaneb has asserted.  In fact, that doctrine is not applicable here.

28.     The Rooker-Feldman doctrine deprives a federal district court of jurisdiction in limited circumstances to review a state court adjudication.  Turner v. Crawford Square Apts. III, L.P., 449 F.3d 542, 547 (3d Cir. 2006).  The Supreme Court recently held that the doctrine is "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

12

district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Thus, the Rooker-Feldman doctrine only bars claims in federal court if (a) the claim was actually litigated in state court or (b) the federal claim is "inextricably intertwined" with the state court adjudication. Dougal v. Saxon Mortg. (In re Dougal), 2008 Bankr. LEXIS 2981 (Bankr. W.D. Pa. Oct. 29, 2008). "A federal claim is considered to be inextricably intertwined with a state court adjudication when the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief sought, or must take action that would negate the state court judgment." Id.

29.    The Rooker-Feldman doctrine is not applicable here for several reasons. First, neither the Debtors nor Kaneb (the loser in the Texas Litigation) has filed an action in this Court in relation to the Texas Litigation. Second, neither party has asked this Court to review or to reject the judgment on appeal in the Texas Litigation. Third, neither party has asked this Court to make any substantive rulings under state law in relation to the Texas Litigation.

30.    Notwithstanding the foregoing, Kaneb agues that the Debtors' proposed chapter 11 plan somehow implicates the Rooker-Feldman doctrine. That argument is wrong both factually and legally. Factually, the Debtors have not proposed anything unusual in their plan concerning the Texas Litigation, nor are they seeking to alter the state court judgment in the Texas Litigation through the plan process. Instead, as it relates to Kaneb, the Debtors' plan simply seeks to implement the Bankruptcy Code's discharge of claims against the Debtors.[3]

---

[3] To the extent that the Debtors' prior drafts of their proposed disclosure statement may have been ambiguous concerning the effect of the Debtors' discharge on the Texas Litigation, the Debtors have recently clarified that the effect of the discharge under their plan will be that the Debtors "will be discharged of any liability they may otherwise have had to Kaneb and Kaneb will be precluded from pursuing a claim against the Debtors for damages or cost recovery in the Texas Litigation or otherwise." First Amended Disclosure Statement at § 2.8.3.1 (Docket No. 20667).

13

Legally, the chapter 11 plan process and the automatic stay are core bankruptcy proceedings to which the Rooker-Feldman doctrine does not apply. See, e.g., Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1087-1088 (9th Cir. Cal. 2000) ("A bankruptcy court simply does not conduct an improper appellate review of a state court when it enforces an automatic stay that issues from its own federal statutory authority."); In re Clarke, 373 B.R. 769, 771 (Bankr. S.D. Fla. 2006) ("[T]he Rooker-Feldman doctrine does not abrogate the bankruptcy court's authority to enforce the automatic stay"); Farrell v. Decew (In re Farrell), 293 B.R. 99, 100 (Bankr. D. Conn. 2003) (bankruptcy court does not violate Rooker-Feldman doctrine when it considers whether a debt has been discharged or whether a discharge injunction has been violated by creditor's further pursuit of a state court appeal).

31.    Kaneb relies upon the Third Circuit's decision in In re Wilson, 116 F.3d 87 (3d Cir. 1997) in support of its argument that the Rooker-Feldman doctrine applies here and establishes cause for relief from the stay.[4]  In re Wilson is easily distinguishable.  In that case, the state court judgment at issue directly affected the individual debtor's ability to obtain a discharge of the creditor's alleged claim.  In re Wilson, 116 F.3d at 90.  Here, there is no determination in the Texas Litigation that could bear upon the discharge of Kaneb's claims against the Debtors.[5]  While the Debtors' chapter 11 plan will prevent Kaneb from enforcing its right to payment against the Debtors as asserted in the Texas Litigation, that result is not due to this Court altering or upholding the decision in the Texas Litigation, but instead results

---

[4]    Kaneb also relies on In re Wilson in arguing that relief from the automatic stay is necessary to avoid collateral estoppel effect. Motion at ¶¶ 29-30.  The Debtors submit that Kaneb has not proven that the potential collateral estoppel effect of the judgment in the Texas Litigation will cause any hardship upon Kaneb especially given the fact that Kaneb has waited nearly eight years before seeking relief from the automatic stay.

[5]    In addition, In re Wilson was decided before the Supreme Court clarified the narrow confines and limited applicability of the Rooker-Feldman doctrine in Exxon-Mobil.

14

independently from Kaneb's failure to file a proof of claim and the discharge provisions of section 1141 of the Bankruptcy Code. Cf. Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 871 (9th Cir. 2005) ("Actions seeking a determination of nondischargeability are core bankruptcy proceedings and are not subject to the Rooker-Feldman doctrine") (internal citation omitted); In re Dougal, 2008 Bankr. LEXIS 2981 (refusing to apply the Rooker-Feldman doctrine where there is an independent claim for relief that does not undermine the state judgment).

### 3. Modification of the Automatic Stay is Not Necessary to Preserve Any Defensive Rights of Kaneb.

32.     Kaneb also asserts that relief from the automatic stay is needed so that it may pursue its claims as a defense to the claims asserted by the Debtors in the Texas Litigation. Motion at ¶ 34. Relief from the stay is not justified on this basis. While the Debtors reserve all of their rights as to whether Kaneb has any valid right of recoupment in the Texas Litigation, the Debtors do not contest that the discharge of Kaneb's claims against the Debtors will not prevent Kaneb from asserting its defenses to the claims being pursued by the Debtors against Kaneb in the Texas Litigation. However, under no circumstances would Kaneb be entitled to any affirmative recovery in the Texas Litigation from the Debtors on account of its claims or defenses after discharge. Thus, Kaneb will not be prejudiced with respect to its defensive posture in the Texas Litigation by continuation of the automatic stay.

15

**C.**     **Kaneb Has Not Demonstrated Any Likelihood of Success on the Merits.**

33.     Finally, the Motion should be denied because Kaneb has not demonstrated

any likelihood of success on the merits.  In the Motion, Kaneb pays mere lip service to this

element of cause and simply states that "[s]ince the purpose of the lift stay motion is to achieve

certainty through completion of the appellate process – regardless of the outcome on the merits –

the probability of success is high."  Motion at ¶ 26.

34.     A mere assertion or restatement of their cause of action does not

demonstrate a likelihood of success on the merits.  See In re Daly & Sinnott Law Ctr. PLLC, 292

B.R. 796, 801-802 (Bankr. D. Vt. 2003) (sufficient evidence, as opposed to allegations, required

to show likelihood of success on the merits).  Moreover, the Debtors believe that Kaneb is not

likely to prevail on its claims in the Texas Litigation.  Indeed, certain of the issues were decided

by a jury and the Texas appellate courts are very reluctant to disturb a jury verdict.  See Finch v.

Texas Employers' Ins. Assoc., 564 S.W.2d 807, 811 (Tex. Civ. App. Dallas 1978) ("In order for

appellant to prevail on this point, they must show that the finding is so against the great weight

of the evidence presented at trial so as to be manifestly unjust.  Upon review, we cannot

substitute our judgment for the trier of fact simply because the evidence is conflicting or because

we might have arrived at a different result than the jury.  In order to determine whether the jury's

answer is against the great weight of the evidence, we must review that evidence").  The

remaining issues were decided by the state court on summary judgment.  See Ex. B (Partial

Summary Judgment Order); Motion at Ex. K3 (Amended Final Judgment).  The state court also

denied Kaneb's motions for a new trial and to modify, correct and reform.  Id.  Given these facts,

and Kaneb's failure to offer any evidence as to the likelihood of its success, the Debtors submit

that Kaneb has failed to establish that it is likely to succeed on the merits.

16

**D.**    **No Cause Exists to Grant Relief From the Stay to Seek Insurance Recovery.**

35.    Kaneb argues that relief from the stay is appropriate because Kaneb's

claims in the Texas Litigation <u>may</u> be covered by insurance of the Debtors.  Motion at ¶¶ 35-48.

As an initial matter, Kaneb's unsubstantiated allegation that it may be entitled to insurance

coverage is insufficient to constitute cause for relief from the stay.  <u>See</u> <u>In re Metro Transp.</u>, 82

B.R. at 354 ("Proving (rather than as here, merely vaguely alleging) insurance coverage and

expressly agreeing to limit litigation or assertion of claims against insurers . . . <u>could</u> possibly

support a conclusion that the balance of hardships tips in favor of a tort claimant.").  More

importantly, it is unclear whether there is any insurance coverage for Kaneb's claims in the

Texas Litigation and determining the answer to that question would require complex and

extensive litigation.  Thus, relief from the stay to proceed against insurance should be denied.

36.    On Exhibit K9 to its Motion, Kaneb lists three primary insurance policies

and numerous excess insurance policies that it asserts may be sources of coverage for Kaneb's

claims in the Texas Litigation.  The three primary policies with Continental Casualty Company

(policies numbered CCP2483440, CCP2483440 and CCP9023670), however, are subject to

certain prior settlements with respect to asbestos coverage, <u>see</u> <u>Exhibit 5 to Exhibit Book for</u>

<u>Debtors' First Amended Joint Plan of Reorganization</u> (Docket No. 20668), and also settlements

with respect to environmental coverage.  As a result of these prior settlements, there may no

longer be any primary insurance available with respect to Kaneb's claims.

37.    Determining whether there is any potential coverage remaining would

require Kaneb to disclose the alleged facts and legal theories on which its is basing its coverage

claim(s), including by way of example the factual basis for arguing that coverage was triggered

in any given policy period, Kaneb's basis for arguing that any applicable exclusions (such as

pollution exclusions) did not bar coverage, the basis for arguing that coverage remains despite

17

any prior settlement and release of coverage, the basis for allocating the total loss to any given time period, and Kaneb's basis for arguing that it has complied with all policy preconditions for coverage, such as timely notice. Environmental coverage claims such as those Kaneb propose to pursue against the Debtors' primary insurer are usually extremely contentious and typically require years of litigation to resolve. Moreover, granting relief from the stay to pursue any insurance coverage could raise issues with respect to the effect on the Debtors' chapter 11 plan, which contemplates the transfer of insurance to the asbestos personal injury trust to be established thereunder. Absent clear answers to the questions of whether coverage exists and the effect of such coverage under the Debtors' chapter 11 plan, the Debtors submit that no cause for relief from the stay exists.

38.     In addition, Kaneb's claims for coverage under the Debtors' excess insurance policies must fail. As mentioned earlier, in connection with the Merger Agreement, Kaneb and GEC entered into the Insurance Procedures Agreement. See Ex. A. Under that agreement, Kaneb's right to any excess insurance coverage terminated on June 30, 1992. Insurance Procedures Agreement at ¶ 4. Even if Kaneb had a right to the Debtors' excess insurance policies, which it does not, many of those excess policies have been exhausted through settlements entered into by the Debtors and the respective insurers. And, some of those settlements may require the Debtors to indemnify the insurers for certain matters and claims post-settlement, which means that any "coverage" by those insurers would be transformed into direct claims against the Debtors.

39.     Based on the foregoing, Kaneb's claims to proceed against insurance ring hollow. There appears to be no insurance coverage available for Kaneb's claims as a result of settlements of insurance polices and the specific terms of the Insurance Procedures Agreement.

18

While Kaneb may seek to litigate the insurance coverage questions with the Debtors' insurers, it has asserted no grounds to modify the stay to do so.  Substantial prejudice would result if the stay were modified to proceed with such insurance litigation as it is likely to embroil the Debtors in complex and time-consuming litigation at a critical time in these chapter 11 cases.  As this Court is well aware, the Debtors' insurers have been very active in these chapter 11 cases, and the Debtors have already been contacted by several insurance carriers related to the Kaneb Motion.  These carriers have asserted that they believe that any liabilities they may incur with respect to Kaneb are subject to indemnification by the Debtors.  While the Debtors reserve all of their rights with respect to the validity of such indemnification claims, the key point for this Court to focus on is that allowing Kaneb to proceed, even as to alleged insurance, would result in significant costs to the Debtors and their estates.  The Debtors submit that being forced to proceed with complex insurance coverage litigation with respect to Kaneb's unsecured claims, which are otherwise barred from being asserted against the Debtors, would be inequitable.  Thus, cause to modify the automatic stay does not exist on the basis of alleged insurance coverage.

19

## **CONCLUSION**

For all of the foregoing reasons, the Debtors request that Kaneb's Motion to

modify the automatic stay be denied.

Dated: February 10, 2009

> KIRKLAND & ELLIS LLP
> David M. Bernick, P.C.
> Theodore L. Freedman
> Janet S. Baer
> Craig A. Bruens
> 153 East 53rd Street
> New York, New York  10022-4611
> Telephone:  (212) 446-4800
> Facsimile:  (212) 446-4900
>
> - and -
>
> PACHULSKI STANG ZIEHL JONES LLP
>
> *Jamie E. O'Neill*
>
> Laura Davis Jones (Bar No. 2436)
> Jamie E. O'Neill (Bar No. 4042)
> Kathleen P. Makowski (Bar No. 3648)
> Timothy P. Cairns (Bar No. 4228)
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705 (Courier 19801)
> Telephone: (302) 652-4100
> Facsimile:  (302) 652-4400
>
> Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:144820.1