# Exhibit A

## Insurance Procedures Agreement

SUPPORT TERMINAL SERVICES, INC.
INSURANCE PROCEDURES AGREEMENT

INSURANCE PROCEDURES AGREEMENT dated December 21, 1992 by and among W. R. GRACE & CO. ("WRG"), a New York corporation, W. R. GRACE & CO.-CONN. ("Grace"), a Connecticut corporation and a wholly owned subsidiary of WRG, and GRACE ENERGY CORPORATION ("GEC"), a Delaware corporation and a wholly owned subsidiary of Grace, and KANEB PIPE LINE OPERATING PARTNERSHIP, L.P., a Delaware limited partnership ("OLP"), and NSTS, INC., a Delaware corporation and a wholly owned subsidiary of OLP, and NSTI, INC., a Delaware corporation and a wholly owned subsidiary of OLP (the "OLP Corporations").

WHEREAS, pursuant to an Agreement and Plan of Merger of even date herewith between GEC and the Corporations and OLP and the OLP Corporations (the "Merger Agreement"), OLP is acquiring the Corporations by means of their merger with and into the OLP Corporations;

WHEREAS, capitalized terms used but not defined herein are used with the definitions given them in the Merger Agreement;

WHEREAS, the Corporations have heretofore been covered under insurance programs described in Exhibit A hereto, and corresponding programs for prior periods (collectively, the "WRG Insurance Programs") maintained by WRG or Grace; and

WHEREAS, the parties to this Agreement wish to set forth their agreement on the terms and conditions under which the

OLP Corporations as successors by merger of the Corporations will continue to be covered under the WRG Insurance Programs for periods ending on or prior to the "Cut-Off", which term shall mean 12:01 a.m. on the day of the Closing;

NOW, THEREFORE, in consideration of the premises and the covenants and agreements herein contained, the parties hereto agree as follows:

1. OLP shall be the sole agent for the OLP Corporations in all matters relating to this Agreement, including the resolution of any disputes between any of the OLP Corporations and WRG, Grace or the appropriate insurance carrier relating to this Agreement. None of the OLP Corporations shall have any authority to represent itself in any such matter or to terminate such agency without the prior written consent of WRG and OLP.

2. All insurance coverage for the Corporations under the WRG Insurance Programs shall terminate at the Closing with respect to events or occurrences following the Cut-Off.

3. Except as otherwise provided in this Agreement, OLP and the OLP Corporations (but solely and exclusively in their capacity as successors to the Corporations by merger and dissolution, and not with respect to any matters respecting OLP or the OLP Corporations prior to the Closing) shall be covered under the WRG Insurance Programs, subject to the terms, conditions and limits (other than deductibles) of the applicable insurance policies, for events or occurrences preceding the Cut-Off. The deductibles for the relevant policy period shall be chargeable to

- 2 -

OLP and the OLP Corporations; provided that (i) the deductibles shall be the deductibles of the WRG Insurance Programs (the "Program Deductibles") and not any higher deductibles of third-party policies included therein, and WRG and Grace shall be responsible for paying the difference between the Program Deductibles and any such higher deductibles, (ii) the Program Deductibles shall be as set forth on Exhibit A for the policy periods referred to therein, and (iii) in no event shall the Program Deductibles for previous policy periods be higher than the corresponding Program Deductibles for the policy periods as set forth on Exhibit A.  With respect to coverages listed on Exhibit A whose policies expire prior to the Cut-Off, Grace shall provide substantially similar coverages for the period from such expiration until the Cut-Off.

4.  Coverage for the Corporations under WRG's excess liability insurance, as described in Exhibit A and subject to the terms, conditions and limits of the applicable insurance policies, shall terminate on June 30, 1992 with respect to events or occurrences preceding the Cut-Off.

5.  Blanket Crime and Fiduciary Liability insurance coverage for the Corporations shall terminate with respect to claims made after the Cut-Off.

6.  Neither OLP nor any OLP Corporation shall be liable to WRG, Grace or any insurance carrier providing coverage under the WRG Insurance Programs for any charge or assessment for which such OLP Corporation might otherwise be liable after the

- 3 -

Cut-Off under the WRG Insurance Programs, nor shall OLP or any OLP Corporation be entitled to any credits or refunds which such Corporation might otherwise be entitled to receive from WRG or any such insurance carrier after the Cut-Off under the WRG Insurance Programs, except as otherwise provided in this Agreement.

       7.   OLP and the Company shall give prompt notice to WRG of all claims which are covered by WRG Insurance Programs and which shall continue to be maintained by WRG for the Corporations after the Cut-Off as described in this Agreement; provided that failure to give such notice shall not adversely affect the rights of OLP and the OLP Corporations hereunder except to the extent that such failure results in a full or partial denial of coverage under the applicable policies and otherwise prejudices WRG or its subsidiaries. Upon notice of any claim, WRG shall notify the appropriate insurance carrier under the WRG Insurance Programs and, in conjunction with such insurance carrier, shall have the right to direct the investigation, negotiation and, if applicable, the defense of such claim and to settle or otherwise dispose of such claim without the consent or approval of OLP or any of the OLP Corporations unless the insureds are entitled to give consent to such settlement under the applicable third-party insurance policy. The parties shall cooperate with each other relative to the exchange of records and other information necessary for the reporting, investigation and, if applicable, defense of such claim. OLP shall cause the OLP Corporations to make

their employees available as may be necessary in connection with the investigation or defense of any such claim.

8.  The parties acknowledge that WRG, Grace or GEC has obtained on behalf of the Corporations certain performance bonds, bid bonds and other surety instruments ("Bonds") to secure certain obligations of the Corporations and that WRG, Grace and GEC are obligated to indemnify the sureties.  As promptly as practicable after the Closing, WRG, Grace or GEC, as the case may be, shall cancel all Bonds which are cancelable.  OLP shall use its reasonable efforts to obtain, or cause the OLP Corporations to obtain, replacements for those Bonds which are not cancelable.  Upon obtaining each such replacement Bond, the party so obtaining shall promptly notify WRG and arrange for WRG, Grace or GEC, as the case may be, to be released from the Bonds which have been replaced.  During the period between the Closing and the date OLP or the Company obtains such replacement Bond and release, OLP shall pay WRG, Grace or GEC, as the case may be, all premiums and other fees charged by the surety to WRG, Grace or GEC with respect to the prior Bond for such period.  OLP shall also indemnify WRG, Grace and GEC and save and hold each of them harmless from and against any and all liabilities, costs, losses or damages (including reasonable attorneys' fees) suffered by WRG, Grace or GEC as a result of any act or omission by OLP or any OLP Corporation which requires the surety under a Bond to perform according to its terms.

9. All notices, requests, demands and other communications required or permitted to be given hereunder shall be given in accordance with the provisions of Article 16 of the Merger Agreement.

10. (a) This Agreement and the Merger Agreement set forth the entire agreement and understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements, arrangements and understandings relating to the subject matter hereof. No representation, promise, inducement or statement of intention relating to the subject matter hereof has been made by the parties hereto nor any Corporation which is not set forth in this Agreement or the Merger Agreement, and neither the parties hereto nor any Corporation shall be bound by or liable for any such representation, promise, inducement or statement of intention not so set forth.

(b) This Agreement may be amended, superseded or canceled, and any of the provisions hereof may be waived, only by a written instrument specifically stating that it amends, supersedes or cancels this Agreement or waives a provision hereof, executed by or on behalf of all parties (or, in the case of a waiver, by or on behalf of the party waiving compliance). The failure of any party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same. No waiver by any party of any provision, or of any breach of any provision, contained in this Agreement, in any one or more instances, shall

- 6 -

be deemed to be or construed as a further or continuing waiver of any such provision or breach, or a waiver of any other provision or of any other breach of any provision of this Agreement.

   (c) This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, excluding the conflict-of-laws provisions thereof that would otherwise require the application of the law of any other jurisdiction.

   (d) This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute but one agreement.

   (e) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns; provided that (i) the rights of each OLP Corporation hereunder shall terminate at such time as it is no longer controlled by OLP or an affiliate of Kaneb Services, Inc., and (ii) this Agreement shall not be assignable by any party without the prior written consent of the other parties, provided that OLP and the OLP Corporations may assign their rights hereunder to an affiliate or affiliates of Kaneb Services, Inc., without such consent.

   11. Notwithstanding any term or provision hereof, the Closing shall be a condition subsequent to the effectiveness of this Agreement, and this Agreement shall automatically terminate without any further action being required, if and when the Merger Agreement is terminated pursuant to its terms.  If this Agreement

terminates pursuant to the immediately preceding sentence, no party shall have any obligation to any other party under this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this instrument on the date first above written.

| W. R. GRACE & CO. | KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. |
|---|---|
| By _____  Title: | By KANEB PIPE LINE COMPANY, general partner |
| W. R. GRACE & CO.-CONN. | By _____  Title: |
| By _____  Title: | NSTS, INC. |
| GRACE ENERGY CORPORATION | By _____  Title: |
|  | NSTI, INC. |
| By _____  Title: | By _____  Title: |

- 8 -

terminates pursuant to the immediately preceding sentence, no party shall have any obligation to any other party under this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this instrument on the date first above written.

| W. R. GRACE & CO. | KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. |
|---|---|
| By_____<br>Title: | By KANEB PIPE LINE COMPANY, general partner<br>By _Douglas M. E____<br>Title: |
| W. R. GRACE & CO.-CONN. | NSTS, INC. |
| By_____<br>Title: | By _Ed D____<br>Title: |
| GRACE ENERGY CORPORATION | NSTI, INC. |
| By _Frank L. Ryan_<br>Title: | By _Ed D____<br>Title: |

- 8 -

Support Terminal Services, Inc.
(STS Services)
Summary of Insurance

EXHIBIT A

| Line No. | (1) Insurer | (2) Policy Number | (3) Coverage | (4) Policy Period | (5) Limit of Liability | (6) Deductible |
|---|---|---|---|---|---|---|
| | | | **SECTION 1** | | | |
| (1) | Industrial Risk Insurers and Various Domestic Insurers | 31-3-54646 Various | **Fire & Allied Perils (on Real and Personal Property)**<br>— Fire, lightning, extended coverage, vandalism,<br>— Malicious mischief and sprinkler leakage<br>— All risk, including difference-in-conditions<br>— Earthquake and Flood | 12/31/91 – 12/31/92 | Blanket $50,000,000 | $25,000 |
| (2) | Industrial Risk Insurers | 31-3-48979 | **Boiler & Machinery**<br>— Comprehensive – Mechanical and Electrical Equipment<br>— Physical Damage | 12/31/91 – 12/31/92 | 50,000,000 | 25,000 |
| (3) | Transamerica Insurance Company | 2781621 | **Automobile Liability Deductible "Buy-Back"** | 06/30/92 – 06/30/93 | 2,500,000 | — |
| (4) | CNA | CCP001604364 (USA) CCP9001604498 (CAN) | **Automobile Liability**<br>Liability (including non-owned vehicles)<br>— Bodily Injury<br>— Property Damage | 06/30/92 – 06/30/93 | 7,500,000 | — |
| (5) | CNA | CCP001604364 (USA) CCP9001604498 (CAN) | **General Liability**<br>Liability – Bodily Injury and Property Damage | 06/30/92 – 06/30/93 | 7,500,000 | — |
| (6) | Transportation Insurance Company CNA National Fire Ins. Co. of Hartford Transportation Insurance Company | WC10-7417923 WC00-7417924 WC107 418 246 WC80-741 79 25 | **Workers' Compensation**<br>— Workers' Compensation<br>— Employer's Liability | 06/30/92 – 06/30/93 | Statutory 1,000,000 / 2,000,000 | — — |
| (7) | Lloyd's and various British insurers | 40-0568-92 40-0571-92 40-0572-92 | **Marine Terminal Operator's Legal Liability**<br>— Comprehensive General Liability<br>— Terminal Operator's Liability | 07/31/92 – 06/30/93 | 2,500,000 / 5,000,000 | — (a) |
| (8) | Various Scandinavian insurers and Mutual Marine Office | Various | **Energy & Marine Liability**<br>— Operator's Extra Expense – Pollution<br>— Protection & Indemnity<br>— Wharfinger's/Stevedore's/Charterer's Liability | 06/30/92 – 06/30/93 | 25,000,000 25,000,000 25,000,000 | 250,000 25,000 25,000 (b) |
| (9) | United States Aircraft Insurance Group | 360AC-198281 | **Aircraft – Hull and Liability**<br>(including non-owned aircraft) | 01/01/90 – 01/01/93 | 200,000,000 | — |
| (10) | CODA A.C.E. X.L Gulf | Various | **Directors and Officers Liability** | 11/04/92 – 11/04/93 | 110,000,000 | 25,000,000 (c) |

- 1 -

Support Terminal Services, Inc.
(STS~~es)
Summary of Insurance

EXHIBIT A

| Line No. | (1) Insurer | (2) Policy Number | (3) Coverage | (4) Policy Period | (5) Limit of Liability | (6) Deductible |
|---|---|---|---|---|---|---|
| | **SECTION 2** | | | | | |
| (11) | National Union Fire Insurance Company<br>X.L. Insurance Co., Ltd.<br>A.C.E. Insurance Co., Ltd. | Various | Excess Liability | 06/30/92–06/30/93 | 17,500,000<br>75,000,000<br>200,000,000 | — |
| | **SECTION 3** | | | | | |
| (12) | National Union Fire Insurance Company<br>American Home Assurance Company<br>Federal Insurance Company (Chubb) | 4385430<br>6219721 (CAN)<br>81099034–A | Blanket Crime (all employees)<br>– Fidelity<br>– Money & Securities | 12/31/91–12/31/92 | 25,000,000 | 500,000 USA (d)<br>25,000 CAN |
| (13) | National Union Fire Insurance Company<br>Federal Insurance Company (Chubb) | 4226405<br>81212642–A | Fiduciary Liability | 11/04/92–11/04/93 | 50,000,000 | 150,000 |

**NOTE:**

(a)  Products and Completed Operations claims are underwritten on a "claims-made" basis, subject to an automatic five-year discovery provision.

(b)  Subject to policy terms and conditions, policy responds to losses not covered under Marine Terminal Operator's Liability policy. Total limit is $25 million.

(c)  Deductible indicated in Summary of Insurance is the Corporate Reimbursement deductible only. The deductible is $5,000 per Director or Officer, subject to $50,000 claim aggregate for non-indemnifiable acts.

(d)  Deductibles indicated are Corporate Deductibles only.

– 2 –