**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| W.R. Grace & Co., *et al.* | : | Case No. 01-01139 JKF |
| | : | |
| Debtors. | : | (Jointly Administered) |

**Docket Reference No. 20538**

### ONEBEACON AMERICA INSURANCE COMPANY'S RESPONSE TO THE MOTION OF KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND SUPPORT TERMINAL SERVICES, INC. FOR AN ODER MODIFYING THE AUTOMATIC STAY

The Motion of Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. for an Order Modifying the Automatic Stay (the "Lift Stay Motion") (Dkt. No. 20538) highlights an important issue impacting both the Debtors and certain Settled Asbestos Insurance Companies, namely, the manner in which *non-asbestos-related* contractual indemnity claims held by such insurers under their settlement agreements will be classified and treated under the First Amended Joint Plan of Reorganization (the "Plan").

In the Lift Stay Motion, Kaneb and STS (collectively, "Kaneb") ask this Court to modify the automatic stay to permit them, *inter alia*, to assert claims against several of the Debtors' insurers (the "Targeted Insurers").[1] Kaneb intends to assert claims against those insurers under two separate legal theories. First, it seeks coverage as "potential judgment creditor" of the Debtor Grace Energy Corporation ("GEC") (*See* Lift Stay Motion at 13-17). Second, it seeks coverage as an alleged "co-insured" under the Targeted Policies. This second theory is based

---

[1] The Targeted Insurers and the specific policies under which Kaneb seeks recovery (the "Targeted Policies") are listed in Attachment "A-1" and Attachment "A-2" to the Affidavit of Ellen Presby submitted in support of the Lift Stay Motion.

upon the asserted proposition that Kaneb is a "successor-by-statutory-merger to a former Grace subsidiary" that was covered under Grace's insurance program (*See* Lift Stay Motion at 17-18).

Several of the Targeted Insurers are Settled Asbestos Insurance Companies under the Plan, including OneBeacon America Insurance Company ("OneBeacon"). The Court will no doubt recall that many, if not most, of the Settled Asbestos Insurance Companies have contractual indemnity rights against the Debtors arising from their prepetition settlement agreements with W.R. Grace & Co., *et al.* ("Grace"). These contractual indemnity rights, at least for certain insurers, are extremely broad. By way of example, OneBeacon, the successor-in-interest to Commercial Union Insurance Company, among others, has *three* separate settlement agreements with the Debtors, each of which contains a distinct contractual indemnity provision. The first two of those agreements are not applicable to the claims asserted by Kaneb against OneBeacon, but the third agreement is applicable.[2]

In the third agreement, dated October 7, 1998, Grace agreed as follows:

> From and after the Effective Date, Grace shall, at its own expense, defend Commercial Union [*i.e.*, OneBeacon] and shall indemnify and hold Commercial Union harmless against any and all liability, loss, costs or expenses, imposed upon Commercial Union as a result of any Claims that are asserted, initiated or continued by any person or entity against Commercial Union and that are based upon the Policies.

---

[2] In the first agreement, dated May 14, 1993, Grace agreed to indemnify OneBeacon with respect to any and all claims asserted against OneBeacon "in any way relating to Products Claims and/or Asbestos-Related Claims under the Policies," as each of those terms is defined therein. Grace's contractual indemnity obligations to OneBeacon under this agreement are triggered by the asbestos-related insurance coverage claims asserted by The Scotts Company against OneBeacon in the Scotts Adversary Proceeding (Adversary Pro. No. 04-55083). The Scotts-related contractual indemnity claims held by OneBeacon against Grace are now called "Indemnified Insurer TDP Claim" as described in § 5.13 of the WRG Asbestos PI Trust Distribution Procedures ("PI TDP"). Under the Plan, they are to be channeled to the Asbestos PI Trust for resolution, ostensibly because the underlying claims asserted by Scotts against OneBeacon that, in turn, give rise to OneBeacon's contractual indemnity claims against Grace are asbestos-related claims. In the second agreement, dated December 17, 1996, Grace agreed to indemnify OneBeacon with respect to certain claims asserted against OneBeacon based upon a specific environmental site in New Jersey.

(October 7, 1998 Settlement Agreement, Section VI. A).  The term "Policies" therein includes, among others, Policy No. EY-8220-005, which is one of policies targeted by Kaneb  (*See* Lift Stay Motion, Attachment "A-1" and Attachment "A-2" to Affidavit of Ellen Presby).  The term "Claim" includes the type of environmental property damage coverage claim asserted by Kaneb against OneBeacon under Policy No. EY-8220-005.[3]

Indeed, the underlying liability (or alleged liability) for which Kaneb seeks an insurance recovery – whether as a potential judgment creditor of the Debtor GEC or as an alleged "co-insured" under the Targeted Policies – arises from certain environmental cleanup costs associated with a military site in Massachusetts  (*See* Lift Stay Motion at 3, 6, and Ex. K-8 thereto).[4]  It has nothing to do with asbestos, much less Grace-related asbestos.  That being so, the contractual indemnity claims held by OneBeacon against the Debtors arising from Kaneb's claims against OneBeacon under Policy No. EY-8220-005 do not constitute "Asbestos PI Claims" or "Indirect PI Trust Claims," each as defined in the Plan, or "Indemnified Insurer TDP Claims," as described in § 5.13 of the PI TDP.  The same thing, of course, is true with respect to other Targeted Insurers insofar as they are Settled Asbestos Insurance Companies with contractual rights of indemnity against Grace for the claims that Kaneb seeks to assert against them.  Neither the Plan, nor its accompanying Disclosure Statement, however, says anything specific about the classification or treatment of these contractual indemnity claims arising from *non-asbestos-related* insurance claims asserted by a third-party against Settled Asbestos

---

[3] Each of the settlement agreements contains a confidentiality agreement and, therefore, OneBeacon is not attaching them to this response.  OneBeacon is agreeable to producing the settlement agreements upon the entry of an appropriate confidentiality order by the Court.

[4] Upon information and belief, the cleanup costs associated with this site are alleged to be approximately $75 million.  It is unclear whether Kaneb is alleged by the government to be responsible for all or some portion of that figure.

Insurance Companies. By default, such claims appear to be Class 9 General Unsecured Claims, but that is not explicit. For the avoidance of doubt, it ought to be clear how such claims will be classified and treated under the Plan.[5]

In the Lift Stay Motion, Kaneb seeks relief from the automatic stay to pursue its appeal against GEC in the Texas appellate courts and, as noted earlier, to pursue the Targeted Insurers, either as a potential judgment creditor of GEC or as an alleged "co-insured" under the Targeted Policies. The Debtors, and perhaps certain Settled Asbestos Insurance Companies, will likely argue that the Lift Stay Motion should be denied in its entirety. OneBeacon takes no position on that subject. Regardless of how this Court rules on the Lift Stay Motion, however, it is abundantly clear that Kaneb will pursue insurance claims – whether now or later – against OneBeacon, and others, and that such claims will give rise to *non-asbestos-related* contractual

*[Remainder of page intentionally left blank]*

---

[5] OneBeacon served Requests for Admission on the Debtors seeking clarification on the classification and treatment of these claims, but the Debtors have not yet served their responses.

indemnity claims against the Debtors.  In light of that fact, the Plan Proponents should make equally clear that such contractual indemnity claims will be classified and treated as Class 9 General Unsecured Claims under their Plan.

Respectfully submitted,

Dated: February 10, 2009　　　　　　　　　/s/ David P. Primack
　　　　　　　　　　　　　　　　　　　　　Warren T. Pratt (DE Bar I.D. #4334)
　　　　　　　　　　　　　　　　　　　　　David P. Primack (DE Bar I.D. #4449)
　　　　　　　　　　　　　　　　　　　　　DRINKER BIDDLE & REATH LLP
　　　　　　　　　　　　　　　　　　　　　1100 N. Market Street, Suite 1000
　　　　　　　　　　　　　　　　　　　　　Wilmington, DE  19801-1243
　　　　　　　　　　　　　　　　　　　　　Telephone: (302) 467-4200
　　　　　　　　　　　　　　　　　　　　　Facsimile:  (302) 467-4201

　　　　　　　　　　　　　　　　　　　　　　　　- and -

　　　　　　　　　　　　　　　　　　　　　Michael F. Brown (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Jeffrey M. Boerger *(pro hac vice)*
　　　　　　　　　　　　　　　　　　　　　DRINKER BIDDLE & REATH LLP
　　　　　　　　　　　　　　　　　　　　　One Logan Square
　　　　　　　　　　　　　　　　　　　　　18th & Cherry Streets
　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103-6996
　　　　　　　　　　　　　　　　　　　　　Telephone: (215) 988-2700
　　　　　　　　　　　　　　　　　　　　　Facsimile: (215) 988-2757

　　　　　　　　　　　　　　　　　　　　　Counsel for OneBeacon America
　　　　　　　　　　　　　　　　　　　　　Insurance Company