UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>    W.R. GRACE & CO., et al.,<br><br>    Debtors. | Chapter 11<br><br>Case No.:    01-1139 (JKF)<br>Jointly Administered<br><br>**Hearing Dates: March 9 and 10, 2009 at 9:00 a.m.**<br>**Objection Deadline: February 20, 2009 at 4:00 p.m.** |

**LIMITED OBJECTION OF UNIFIRST CORPORATION TO DEBTORS' DISCLOSURE STATEMENT FOR THE FIRST AMENDED JOINT PLAN OF REORGANIZATION**

Interested party UniFirst Corporation ("UniFirst") hereby files its Limited Objection to Debtors' Disclosure Statement for the First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code ("Disclosure Statement") of W.R. Grace & Co. ("Grace", and together with all other debtors and debtors-in-possession, "Debtors"). As set forth below, UniFirst seeks minor clarifications in the Disclosure Statement, and in the First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Plan"), concerning the scope of certain environmental obligations which Debtors have agreed shall continue and shall survive confirmation of the Plan. UniFirst remains hopeful that it may resolve these limited objections with Debtor's counsel, through separate stipulation, but to date such efforts have been to no avail.

**I.    BACKGROUND - THE WELLS G & H SUPERFUND SITE**

UniFirst, Grace and a third party, Beatrice Company ("Beatrice"), have worked cooperatively for two decades in responding to pollution conditions on and in the vicinity of their industrial properties in Woburn, Massachusetts. The U.S. Environmental Protection Agency ("EPA"), pursuant to Section 105 of CERCLA,[1] placed the Wells G & H Superfund Site in

---

[1]    The Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et. seq.

#10596291 v1

Woburn, Massachusetts (the "Woburn Site") on the National Priorities List in 1982. EPA executed a Final Record of Decision ("ROD") for the Woburn Site on September 14, 1989. Each of UniFirst, Grace and Beatrice is a party to a 1991 Consent Decree ("Decree") with the United States to implement the remedy that EPA selected and perform related obligations with respect to certain portions of the Woburn Site. A copy of the Decree, without exhibits, is attached as Exhibit 1.

The Woburn Site has been divided into three "Operable Units": (1) the "Source Area Properties" ("OU-1"); (2) the "Central Area" ("OU-2"); and (3) the Aberjona River and its associated floodplain and wetlands ("OU-3"). Under the terms of the Decree, Grace, UniFirst and Beatrice are Source Area Defendants; each has "Primary Responsibility" for clean-up of its own "Source Area Property." In addition, because the Grace and UniFirst properties are within the same quadrant of the Site, UniFirst has been assigned "Secondary Responsibility" for clean-up of the Grace property:

> Section 2. <u>W.R. Grace & Co. Property</u>
>
> Primary Responsibility
>
> Grace shall perform that portion of the Work to be conducted at the Grace property.
>
> Secondary Responsibility
>
> In the event that EPA determines that Grace is unable to perform the Work at the Grace property, UniFirst shall be liable, after receiving notice from EPA of such inability, for the performance of all remaining requirements of such Work.

Consent Decree, Schedule A, Section I.2.

Except with respect to monitoring, the Decree does not prescribe response actions to be performed in any areas of the Woburn Site other than the Source Area Properties. It does require, however, that the Source Area Defendants complete a Remedial Investigation/Feasibility

2

#10596291 v1

Study for the Central Area ("Central Area RI/FS"), to be used as the basis for selecting a final remedy for that portion of the Site. The Central Area constitutes the majority of the Woburn Site, consisting of everything but the Source Area Properties and Aberjona River Operable Units. UniFirst, Beatrice and Grace submitted a report to EPA in the mid-1990s, known as the "Phase IA Report," addressing the Central Area. EPA has deferred formal comments on the Phase IA Report. It has indicated, however, that it will require UniFirst, Grace and Beatrice to conduct additional environmental testing in the Central Area, and that its ultimate remedial goal is to restore groundwater in the Central Area to drinking water quality.

The parties to the Decree, including UniFirst, Grace and Beatrice, are jointly and severally liable for the Central Area RI/FS. Decree, Schedule A, Section 4II. In addition to the costs that UniFirst, Beatrice and Grace must incur to complete the Central Area RI/FS, they (along with others) face potential joint and several liability for performing the work that EPA ultimately will require to implement the remedy it selects for the Central Area.

"Under CERCLA, . . . the Federal Government may clean up a contaminated area itself, see § 104, or it may compel responsible parties to perform the cleanup, see § 106(a)." *Cooper Indus., Inc. v. Aviall Serv. Inc.*, 543 U.S. 157, 161 (2004). In either case, the Government may pursue and obtain complete relief from less than all responsible parties, who, in turn, may bring their own actions, under either § 107 or § 113 of CERCLA, 42 U.S.C. § 9607 or § 9613, to enforce the site clean-up obligations of the other responsible parties. *Aviall*, 543 U.S. at 167; *U.S. v. Atlantic Research Corp.*, 127 S. Ct. 2331, 2333-35 (2007).

## II. DEBTORS' CONTINUING LIABILITY - THE MULTI-SITE SETTLEMENT AGREEMENT

On or about December 17, 2007, the Debtors and the EPA, the United States Department of Agriculture, the United States Department of the Interior, the National Oceanic and

Atmospheric Administration of the United States Department of Commerce, and the United States Army Corps of Engineers (collectively, the "Settling Federal Agencies") entered into an agreement that addresses Debtors' past and future environmental obligations at thirty-five sites around the country.  Disclosure Statement, Section 2.8.2.  In response to comments from creditor groups and the public, the parties revised and executed an amended settlement agreement (the "Multi-Site Settlement Agreement") and, on May 23, 2008, filed the Multi-Site Settlement Agreement with the Bankruptcy Court (Docket No. 18783).  *Id*.  The Bankruptcy Court entered an order approving the Multi-Site Settlement Agreement on June 3, 2008 (Docket No. 18847). The Woburn Site is one of the thirty-five sites governed by the Multi-Site Settlement Agreement. *See* Disclosure Statement, Section 2.8.2.

As amended, both the Disclosure Statement and the Plan now indicate that the rights and obligations of EPA and the Debtors, respectively, with respect to the thirty-five sites, including the Woburn Site, shall be governed by the Multi-Site Settlement Agreement, and that such rights and obligations shall not be affected in any way by confirmation of the Plan.  It is therefore clear that the Debtors' affirmative obligations with respect to the Woburn Site shall survive confirmation of the Plan, but there is no explicit acknowledgement or recognition of the broader context of those obligations with other potentially responsible parties, such as UniFirst, under the liability provisions of CERCLA.

In particular, the Disclosure Statement states, "The Multi-Site Settlement Agreement is incorporated into the Plan, and the rights of the Settling Federal Agencies and the Debtors with respect to 'Debtor Owned Sites,' 'Additional Sites,' 'Work Consent Decrees' and 'Work Administrative Orders,' as defined in the Multi-Site Settlement Agreement, shall be governed by the Multi-Site Settlement Agreement notwithstanding any other provision of the Plan or

4

#10596291 v1

Confirmation Order to the contrary." Disclosure Statement, Section 2.8.2; *see also* Plan, Section 3.1.9(c). In turn, the Multi-Site Settlement Agreement confirms that Debtor's environmental obligations with respect to the thirty-five sites:

> shall not be discharged under Section 1141 of the Bankruptcy Code by the confirmation of a Plan or Reorganization, nor shall such claims or obligations be impaired or affected in any way by the Bankruptcy Cases or confirmation of a Plan of Reorganization.

Multi-Site Settlement Agreement, Section 12. Such claims may include, but are not limited to, those against the Debtors by the Settling Federal Agencies under CERCLA Section 107 (42 U.S.C. § 9607) to address hazardous substances that have migrated from a Debtor-Owned Site to other properties, such as the Central Area. *See id.* As noted above, response actions that EPA may perform, or require Grace and/or UniFirst to perform, in the Central Area include completion of the Central Area RI/FS, and design and implementation of a remedy to address environmental conditions in the Central Area. Precisely what EPA may require of the Debtors or UniFirst, however, remains indeterminate.

By incorporating the Multi-Site Settlement Agreement into the Plan, the Disclosure Statement and Plan make clear that Debtors' responsibilities with respect to the Woburn Site will be preserved. Those responsibilities will be the same whether enforced directly by EPA or as a result of EPA's enforcement actions under CERCLA against other parties. UniFirst simply requests, therefore, that Section 2.8.2 of the Disclosure Statement and Section 3.1.9(c) of the Plan be amended to clarify that Debtors' responsibilities with respect to the Woburn Site will be preserved, and any liability that Debtors may have for environmental conditions in the Central Area shall not be discharged, regardless whether such responsibilities and liabilities are enforced directly by EPA or indirectly, in response to such EPA action, by other potentially responsible

#10596291 v1

parties like UniFirst.[2]

## III. COST SHARING AGREEMENT

Grace, UniFirst and Beatrice are parties to a written cost sharing agreement, dated November 26, 1990 (the "Cost-Sharing Agreement"), relating to Central Area RI/FS obligations and associated EPA Oversight Costs (copy attached as Exhibit 2). Grace, UniFirst and Beatrice have significant, continuing, unfulfilled obligations under the Cost-Sharing Agreement. The Court already addressed preservation and continuation of Debtors' performance under the Cost Sharing Agreement in a prior order. Order Authorizing Agreement, dated April 2, 2008 (Docket No. 18582). In that Order, issued in response to Motion of Debtors for Entry of an Order Authorizing Liability Transfer Agreement for Certain Environmental Liabilities and Properties (Docket No. 18110), the Court ordered that the Cost-Sharing Agreement be considered an Assignable Contract (as that term was defined in the Liability Transfer Agreement[3]), thereby preserving the Debtors' rights and obligations under the Cost-Sharing Agreement.

Consistent with the Court's prior order, UniFirst requests that Section 4.9 of the Disclosure Statement and Section 9.1 of the Plan be amended to make clear that the Cost-Sharing Agreement: (i) is an executory contract to be assumed by the Reorganized Debtors on the Effective Date; and (ii) will not be designated on the list set forth in Exhibit 18 of the Exhibit Book as being subject to rejection in connection with the Effective Date.

---

[2] UniFirst acknowledges that its Proof of Claim No. 9562 was disallowed by the court in its October 23, 2006 Order (Docket No. 13497). UniFirst is not seeking here to have such claim allowed, or to obtain any payment thereon in this proceeding. Rather, UniFirst seeks to clarify that the Plan preserves, and does not discharge, Debtors' obligations and liabilities with respect to the Central Area, regardless whether enforced directly by EPA or indirectly, in response to such EPA action, in a future claim by other potentially responsible parties, including UniFirst.

[3] Subsequent to entry of the Court's order, Debtors were unable to come to final agreement with the parties to whom they had proposed to transfer properties and associated environmental liabilities, and the transaction contemplated by the Liability Transfer Agreement was not completed.

Dated: February 20, 2009

Respectfully submitted,

UNIFIRST CORPORATION,

By its attorneys,

 /s/ Leigh-Anne M. Raport
David M. Fournier (DE No. 2812)
Leigh-Anne M. Raport (DE No. 5055)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
Tel.:  302.777.6500
Fax:  302.421.8390

and

Michael J. Pappone
Gregory A. Bibler
GOODWIN PROCTER LLP
53 State Street
Boston, MA  02109-2881
Tel.:  617.570.1000
Fax:  617.523.1231

7