IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Hearing Date: April 1, 2009 at 10:30 a.m. |
| | | Objection Deadline: March 13, 2009 by 4:00 p.m. |

# DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO MAKE LEGALLY REQUIRED MINIMUM CONTRIBUTIONS TO DEFINED BENEFIT PENSION PLANS COVERING DEBTORS' EMPLOYEES, DUE APRIL 2009

The Debtors respectfully move this Court for the entry of an order authorizing them to make contributions to their defined benefit retirement plans covering the Debtors' employees in the United States (the "Grace Retirement Plans"). The contributions sought to be made are due on or prior to April 15, 2009, and are necessary to assure compliance with the minimum funding

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace HG Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International. Inc., Kootenai Development Company, L B Realty, Inc,, Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, lzi.c., MRA Holdings Corp. (Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc.. E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil. Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch Nest Coal Company, H-G Coal Company.

requirements under federal law (the "April 2009 Contributions").[2] The April 2009 Contributions will total $8,533,803.[3] In support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is §§ 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code").

### Background and Relief Requested

2. The Debtors have requested, through a series of prior pension funding motions (collectively, the "Prior Funding Motions"), and received Court permission to make, all legally required minimum contributions to the Grace Retirement Plans for the period through January 2009. With respect to each Prior Funding Motion, prior to the applicable hearing date, the management of the Debtors discussed the applicable motion with representatives of each of the official committees (collectively, the "Committees"), and the future Claimants' Representative (the "FCR"), as requested.

3. The Court entered orders approving the requests under each Prior Funding Motion (as modified). In accordance with those orders, the Debtors contributed approximately $48.5 million to the Grace Retirement Plans in 2003[4], approximately $20.0 million in 2004,

---

[2] The Debtors are filing this Motion at this time because the April 1, 2009 omnibus hearing is the last scheduled hearing before the due date of the first quarterly minimum contribution for the 2009 plan year, April 15, 2009.

[3] See paragraphs 4 and 5 for a summary of applicable law with respect to the required quarterly minimum contributions due April 15th. See also attached Exhibit A, which lists all contributions made from 2005 to January 2008, as well as estimates of future minimum required contributions through 2010.

[4] This amount includes a contribution in 2003 of approximately $8.5 million for the Curtis Bay union pension plan, based on a separate motion and Court order dated March 3, 2003 [Docket No. 3445].

2

approximately $24.1 million in 2005[5], approximately $101.4 million in 2006[6], approximately $76.0 million in 2007, approximately $49.0 million in 2008, and approximately $7.6 million in January 2009.[7]

4. By this Motion, the Debtors are seeking approval to make the April 2009 Contributions on (or prior to) April 15, 2009, in an amount that will assure compliance with minimum funding requirements under applicable federal law. In summary, under applicable law, the total of the required quarterly minimum contributions for the 2009 plan year due on April 15, 2009, must be the lesser of (A) 25% of the total 2008 minimum contributions (minus available credit balances) for each of the Debtors' individual plans[8] or (B) the quarterly minimum amount calculated specifically for the 2009 plan year, which will be included in the final 2009 actuarial valuation report. The actual amount of the 2009 plan year contributions will therefore depend on calculations in the 2009 actuarial report for the Grace Retirement Plans.

5. At this time, the actuaries and Debtors anticipate that the 2009 actuarial valuation report will be finalized sometime during May 2009. Because the 2009 actuarial report will not be finalized prior to April 15, 2009, the April 2009 Contributions will be equal to 25% of the total 2008 minimum contributions; i.e., approximately $8.5 million as specified above, in order to assure compliance with applicable law. At this time, the actuaries and Debtors anticipate that the 2009 actuarial report will not result in quarterly minimum contributions that are lesser than 25% of the total 2008 minimum contributions. However, in the unlikely event that the 2009

---

[5] This amount includes a contribution in 2005 of approximately $7.9 million to two union pension plans covering union employees at the Debtors' Lake Charles, Louisiana and Chattanooga, Tennessee plants, based on a separate motion and Court order dated June 22, 2005 [Docket No. 8666].

[6] This amount includes a contribution in 2006 of approximately $1.1 million to a union pension plan covering union employees at the Debtors' Chicago Dewey & Almy Plan.

[7] This amount was the last quarterly minimum contribution for the 2008 plan year.

[8] The total minimum contributions for the 2008 plan year were approximately $36.3 million; and the available credit balances are approximately $0.5 million.

3

actuarial report does result in lesser quarterly contributions, any portion of the April 2009 Contributions that are greater than the actual 2009 plan year quarterly required minimum contributions, as eventually specified in the final 2009 actuarial report, will be used to offset subsequent required minimum contributions.

6.     After the 2009 actuarial report is finalized, the Debtors will submit another pension funding motion to make all required contributions for the remainder of 2009 and early 2010. That motion will specify the exact amount of each contribution required during that period, and will also include information regarding the overall funded status of the Grace Retirement Plans, which will update much of the funding information included in the Prior Funding Motions.

7.     This Motion to make the April 2009 Contributions to the Grace Retirement Plans is a continuation of the funding approach specified in the most recent Prior Funding Motion, whereby the Debtors have timely made only the legally required minimum contributions to each Grace Retirement Plan, to assure that the Grace Retirement Plans are funded in accordance with applicable law.

8.     The Prior Funding Motions included considerable background regarding the Grace Retirement Plans and the importance of maintaining those plans and supporting their financial viability. That background continues to be valid. In summary, the Debtors' management continues to strongly believe that continuing to make at least the legally required minimum contributions to each of the Grace Retirement Plans is essential to maintaining the morale of the Debtors' workforce and its confidence in management, and thereby the productivity and long-term profitability of the Debtors' businesses. The employees are vital to maintaining and enhancing the value of the Debtors' estates and to the Debtors' successful reorganization.

9. The Debtors have provided representatives of each of the Committees and the FCR with a prior draft of this Motion and have discussed this Motion with those parties requesting such discussions.

### Basis for Relief

10. Section 105(a) of the Bankruptcy Code permits the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business property of the estate." 11 U.S.C. § 363(b)(1).

11. A court has the statutory authority to a debtor to use property of the estate pursuant to § 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. See In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F2d 143, 149-150 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983), see also In re Schipper, 993 F2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward holding Corp., 242 B.R. 147, 153 (Bankr. D.Del. 1999); In re Ernst Home Ctr Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

12. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See Lionel Corp., 722 F2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an

5

informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Res., Inc., 147 B.R. 654, 656 (S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

### The Proposed Transaction Is Supported by Sound Business Judgment

13. The Debtors respectfully submit that making the April 2009 Contributions is the least costly approach to funding the Grace Retirement Plans in accordance with the requirements imposed by applicable federal law. That is, the Debtors are seeking approval to make no more than the legally required contributions to those Plans that are due on April 15, 2009. Making the April 2009 Contributions will help to maintain the morale and productivity of the Debtors' employees throughout the United States, which is key to continuing to retain a dedicated, motivated and loyal work force. Such work force is a vital component of the Debtors' estates and restructuring efforts.

14. The Debtors have determined in their business judgment that making the April 2009 Contributions is in the best interests of the Debtors' estates and creditors. As specified above, clear business reasons exist to justify, under section 363(b) of the Bankruptcy Code, such implementation.

### Notice

15. Notice of this Motion has been given to (i) of the Office of the United States Trustee, (ii) counsel to the Debtor-In-Possession lenders, (iii) counsel to each of the Committees, (iv) counsel to the FCR, and (v) those parties that requested papers under Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**No Prior Request**

16. No prior Application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order substantially in the form attached hereto (i) authorizing the Debtors to make the April 2009 Contributions to the Grace Retirement Plans required by federal law, on or prior to April 15, 2009, in the amount of $8,533,803, and (ii) granting such other and further relief as the Court deems just and proper.

Wilmington, Delaware
Dated: February 23, 2009

Respectfully submitted,

KIRKLAND & ELLIS LLP
Theodore L. Freedman
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
(212) 446-4800

-and-

PACHULSKI, STANG, ZIEHL, & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession