**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **W. R. Grace & Co., et al.,** | ) | **Case No. 01-01139 (JKF)** |
| | ) | **(Jointly Administered)** |
| | ) | |
| **Debtors.** | ) | |

## ZAI CLAIMANTS' MOTION FOR ORDER OF FINAL APPROVAL OF THE U.S. ZAI CLASS SETTLEMENT

Pursuant to Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23, the ZAI claimants respectfully

move the Court for an Order giving final approval to the U.S. ZAI class settlement.  The grounds

for the motion are set forth in the accompanying Memorandum in Support.

Dated: February 25, 2009
Wilmington, Delaware

SULLIVAN HAZELTINE ALLISON, L.L.C.

William D. Sullivan (2820)
William A. Hazeltine (No. 3294)
Elihu E. Allinson, III (3476)
4 East 8th Street, Suite 400
Wilmington, Delaware  19801
Telephone:  (302) 428-8191

-- and --

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue
Chronicle Building, Suite 680
Spokane, Washington  99201
Telephone:  (509) 455-3966

-- and --

RICHARDSON, PATRICK,
WESTBROOK  & BRICKMAN, L.L.C.
Edward J. Westbrook
Catherine H. McElveen
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, South Carolina  29464
Telephone:  (843) 727-6500

-- and –

Elizabeth Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000

*Counsel for ZAI Claimants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **W. R. Grace & Co., et al.,** | ) | **Case No. 01-01139 (JKF)** |
| | ) | **(Jointly Administered)** |
| | ) | |
| **Debtors.** | ) | |

## ZAI CLAIMANTS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL
## APPROVAL OF THE U.S. ZAI CLASS SETTLEMENT

SULLIVAN HAZELTINE ALLISON, L.L.C.
William D. Sullivan (2820)
Elihu E. Allinson, III (3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 428-8191

-- and –

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 Sprague Avenue
Chronicle Building, Ste.680
Spokane, WA 99201
Telephone: (509) 455-3966

RICHARDSON PATRICK WESTBROOK &
 BRICKMAN, L.L.C.
Edward J. Westbrook
Catherine H. McElveen
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
Telephone: (843) 727-6513

-- and –

Elizabeth Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

*Class Counsel for ZAI Claimants*

Dated: February 25, 2009
    Wilmington, Delaware

## TABLE OF CONTENTS

**I.    INTRODUCTION** .................................................................................................1

**II.    THE LEGAL STANDARD FOR FINAL APPROVAL**............................................2

1.    The Complexity, Expense, and Likely Duration of the ZAI Litigation,
as Well as the Maturity of the Issues, Strongly Favor Final Approval
of the U.S. ZAI Class Settlement ........................................................................4

2.    The Engagement of and Reaction of Class Members to the Settlement
Favor Final Approval of the Class Settlement ....................................................7

3.    The Stage of the Proceedings and Amount of Discovery Completed
Favor Approval of the U.S. ZAI Class Settlement .............................................7

4.    The Risks of Establishing Liability Favor Final Approval of the U.S.
ZAI Class Settlement ..........................................................................................8

5.    The Risk of Establishing Damages Favors Final Approval of the U.S.
ZAI Class Settlement ........................................................................................10

6.    The Risks of Maintaining a Class Action Through Trial Favor Approval
of the U.S. ZAI Class Settlement .....................................................................10

7.    Issues Surrounding the Defendant's Ability to Withstand a Greater
Judgment Warrant Final Approval of the U.S. ZAI Class Settlement ..............11

8.    The Reasonableness of the Settlement Fund in Light of the Best Possible
Recovery Favors Final Approval .......................................................................12

9.    The Reasonableness of the Settlement in Light of All Attendant Risks as
Informed by the Outcome of Claims by Others With Similar Claims Favors
Approval ............................................................................................................13

10.    Class Members are Accorded the Right to Opt-Out of the Class,
Warranting Final Approval of a Class Settlement that Benefits Thousands
of Participating Class Members .........................................................................14

11.    Provisions for Attorneys' Fees Do Not Counsel Against Final Approval of
the U.S. ZAI Class Settlement ..........................................................................14

12.    The Procedures for Processing Individual Settlement Claims are Fair
and Reasonable, Warranting Final Approval of the U.S. ZAI Class
Settlement ..........................................................................................................16

i

13.    The U.S. ZAI Class Settlement is Fair to All Creditors......................................16

III.    **CONCLUSION** ...........................................................................................................17

## TABLE OF AUTHORITIES

### CASES

1.    Bradburn Parent Teacher Store Inc. v. 3M, 513 F. Supp. 2d 322 (E.D. Pa. 2007) .......15

2.    Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975) ..................................................................2

3.    In re American Family Enterprises, 256 B.R. 377 (D.N.J. 2000) ...................................3

4.    In re AT & T Corp., 455 F.3d 160 (3d Cir. 2006) ...........................................................3

5.    In re Devon Capital Management, Inc., 261 B.R. 619 (Bankr. W.D. Pa. 2001) ..........16

6.    In re Electrical Carbon Products Antitrust Litigation,
      447 F. Supp. 2d 389 (D.N.J. 2006) .................................................................................3

7.    In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability
      Litigation, 55 F.3d 768 (3d Cir. 1995) ........................................................................3, 7

8.    In re M. Frenville Co., Inc., 744 F.2d 332 (3d Cir. 1984) ............................................10

9.    In re Martin, 91 F.3d 389 (3d Cir. 1996) ........................................................................3

10.   In re Prudential Insurance Co. America Sales Practice Litigation.
      Agent Actions, 148 F.3d 283 (3d Cir. 1998) ...................................................................3

11.   In re TSIC, Inc., 393 B.R. 71 (Bankr. D. Del. 2008) ......................................................3

12.   In re Warfarin Sodium Antitrust Litigation, 391 F.3d 516 (3d Cir. 2004) ...........2, 3, 15

13.   McCoy v. Health Net, Inc., 569 F. Supp. 2d 448 (D.N.J. 2008) ...................................15

14.   Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561
      (E.D. Pa. 2001) ................................................................................................................2

15.   United States v. King Pharmaceuticals, 493 F.3d 323 (3d Cir. 2007) ..........................15

### STATUTES

1.    Fed. R. Civ. P. 23(e)(2) ...................................................................................................2

## I.    **INTRODUCTION**

On January 16, 2009, this Court gave preliminary approval to the U.S. ZAI Class Settlement and ordered that individual notice be sent to the approximately 16,000 class members. Attach. 1.  Class notice was timely communicated to all class members and class counsel have been engaged in responding to class members' inquiries regarding the bankruptcy process, the class settlement, and the ultimate availability of the class benefits achieved.[1]

The hearing on final approval of the U.S. ZAI Class Settlement is set for April 1, 2009. The Court's standing scheduling order for omnibus hearings requires class counsel to file their motion for final approval of the class settlement by February 25, 2009 in order to be heard on April 1, 2009.  This filing date precedes the March 13, 2009 deadline for class members to file their comments.[2]  ZAI class counsel will supplement this memorandum, as appropriate, to respond to any comments received after February 25, 2009.

In its Order preliminarily approving the settlement, the Court found that the settlement terms were "within the range of reasonableness and contain no obvious deficiencies that would cause the Court to deny preliminary approval." Attach. 1 at 3.  The Court also found that the settlement was "the product of extensive, arms-length negotiations and involved experienced and well informed constituencies."  Id.  This memorandum addresses considerations material to the Court's determination that a class settlement is deserving of final approval by first summarizing the standards for final approval and then demonstrating that this class settlement meets those standards.

---

[1] A sample of the notice package is attached.  Attach. 2.

[2] Attach. 2, Class Notice, ¶ 17.  Class members also have until March 23, 2009 to opt-out of the class.  Attach. 2, Class Notice, ¶ 8.

## II.    THE LEGAL STANDARD FOR FINAL APPROVAL

The Third Circuit considers nine primary factors in gauging whether a class settlement is

fair, reasonable, and adequate, and thus deserving of final approval in accordance with Fed. R.

Civ. P. 23(e)(2). These well established factors, set forth in Girsh v. Jepson, are:

> (1) [t]he complexity, expense, and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534-35 (3d Cir. 2004) (quoting Girsh v.

Jepson, 521 F.2d 153, 156-57 (3d Cir. 1975)).

The Girsh factors are not exclusive, nor is every factor relevant to every proposed class

settlement.  Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561, 571 (E.D. Pa.

2001).  Thus, the Third Circuit has identified other potentially relevant and appropriate factors

that may guide a court is its determination:

> [1] [T]he maturity of the underlying substantive issues, as
> measured by the experience in adjudicating individual actions, the
> development of scientific knowledge, the extent of discovery on
> the merits, and other factors that bear on the ability to assess the
> probable outcome of a trial on the merits of liability and individual
> damages; [2] the existence and probable outcome of claims by
> other classes and subclasses; [3] the comparison between the
> results achieved by the settlement for individual class or subclass
> members and the results achieved—or likely to be achieved—for
> other claimants; [4] whether class or subclass members are
> accorded the right to opt out of the settlement; [5] whether any
> provisions for attorneys' fees are reasonable; and [6] whether the
> procedure for processing individual claims under the settlement is
> fair and reasonable.

In re AT & T Corp., 455 F.3d 160, 165 (3d Cir. 2006) (quoting In re Prudential Ins. Co. Am.

Sales Practice Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998)).  The considerations

identified in Girsh and Prudential involve some overlap, and the Prudential factors, like the Girsh

factors, do not necessarily apply to every case.  In re Elec. Carbon Prods. Antitrust Litig., 447 F.

Supp. 2d 389, 403 (D.N.J. 2006).

    The Girsh and Prudential factors guide a bankruptcy court in considering final approval

of a class action settlement.  In re Am. Family Enters., 256 B.R. 377 (D.N.J. 2000).  A

bankruptcy court addresses these factors against a backdrop that favors settlement of complex

bankruptcy litigation. "Settlement agreements are generally favored and, in fact encouraged, in

bankruptcy proceedings, as they provide for an often needed and efficient resolution of the

bankruptcy case." In re TSIC, Inc., 393 B.R. 71, 78 (Bankr. D. Del. 2008) (citing In re Martin,

91 F.3d 389, 393 (3d Cir. 1996)).

    When settlement negotiations take place prior to the court's order of class certification, as

occurred here, courts are appropriately "more scrupulous than usual" in examining the proposed

settlement.  In re Warfarin, 391 F.3d at 534 (quoting In re Gen. Motors Corp. Pick-up Truck Fuel

Tank Prods. Liab. Litig., 55 F.3d 768, 805 (3d Cir. 1995)).  This "heightened standard" is

designed to ensure that the interests of all class members are adequately protected.  Id. (citing In

re Prudential, 148 F.3d at 317).

    This Court has before it a class resolution of U.S. ZAI claims achieved after intensive and

protracted litigation, and secured in the full and helpful light of a mature plan of reorganization.

The Court should have every confidence that the U.S. ZAI Class Settlement is deserving of final

approval under the considerations delineated by Third Circuit authority and that its approval will

significantly advance the important goal of bringing closure to these bankruptcy proceedings.

1.    **The Complexity, Expense, and Likely Duration of the ZAI Litigation, as Well as the Maturity of the Issues, Strongly Favor Final Approval of the U.S. ZAI Class Settlement.**

ZAI litigation has posed significant challenges for the ZAI claimants, for W. R. Grace, and for the Bankruptcy Court, rendering sensible compromise of ZAI claims through class settlement a welcome event for all constituents.

ZAI claims stand out as presenting among the most difficult and protracted issues in a bankruptcy which itself has proven difficult and protracted. While asbestos personal injury claims enjoyed the benefit of a substantial pre-bankruptcy track record, ZAI claims were newly minted at the point of Grace's bankruptcy filing in April 2001. Although ZAI claimants were represented by experienced asbestos and class action counsel, ZAI claims plowed new ground in the field of asbestos property damage litigation. Unlike "traditional" asbestos property damage claims, which involved products to which asbestos was intentionally added and thereafter sold primarily to institutions for application by professionals, ZAI claims involved a consumer product contaminated with asbestos, sold to ordinary homeowners, and promoted as "do-it-yourself product." The type of asbestos (Libby amphibole) involved in the ZAI claims further potentially distinguished ZAI claims from "traditional" asbestos building cases which involved chrysotile asbestos.

These differences weighed heavily, and would continue to weigh heavily, on the complexity, potential expense, and likely duration of ZAI litigation if not resolved through class settlement. Class counsel made, in their estimation, helpful efforts to inform the Court's determinations by drawing upon well established evidentiary standards and legal authority from traditional property damage jurisprudence. Those efforts were ably countermatched by Grace's

efforts to separate ZAI claims from this tradition.  Some of Grace's challenges included the
following:

1.   ZAI often contained small percentages of asbestos (less than 1% in many
      instances) when compared to traditional property damage products (which
      often contained more than 10% asbestos);

2.   ZAI was not regarded as an "asbestos-containing product" in EPA
      regulations;

3.   ZAI was often isolated in attics, unlike spray asbestos products installed
      on school ceilings or other exposed areas; and

4.   Historical asbestos studies had limited utility as applied to Libby
      amphibole contained in ZAI.

These tensions between traditional asbestos property damage jurisprudence and the
unique dimensions of ZAI claims ultimately drove years of "Science Trial" discovery and
pretrial activities.  While these motions played a significant role in laying the foundation for the
ultimate settlement of ZAI claims, they paradoxically did little to divest ZAI claims of their
complexity, to diminish the prospect of considerable future litigation expense, or to shorten the
time necessary to ultimately resolve ZAI claims through litigation.

In that regard, on December 24, 2006, the Court issued what has become known as its
"Science Trial" pretrial Opinion.  The Court's opinion gave each side mixed impulses to fear and
cheer.  The Court agreed with the ZAI claimants that ZAI was contaminated with asbestos which
could be released upon disturbance.  However, the Court found that the asbestos levels produced
did not lead to an "unreasonable" risk of harm:

Without any scientifically reliable evidence indicating that ZAI poses an
unreasonable risk of harm, this court must grant Grace's motion for summary
judgment in part and deny Claimants' motion for summary judgment in part,
limited to the threshold issue of unreasonable risk of harm as it pertains to all
proofs of claim.  While the determination made herein may prove to be fatal to the

5

property damage claims, several different theories of liability were proposed in the individual proofs of claim and may still need to be addressed.

Science Trial Op. at 53
(emphasis added).

ZAI counsel thereafter continued to vigorously press ZAI claims. They sought immediate review of the "Science Trial" Opinion, which the district court denied. They asked this Court to dismiss a ZAI claim on the basis of the "Science Trial" Opinion so an appeal could be taken, which this Court denied. They sought release from the automatic stay so that ZAI claims could be adjudicated as tort litigation in state courts, which this Court denied. Following the Court's important "Science Trial" ruling, therefore, W. R. Grace and the ZAI claimants faced the reality of appeals through the normal appellate channels when review ultimately became available, as well as continuing litigation and likely appeals in respect of the impact of the Court's ruling on various ZAI theories of liability, most significantly, unfair and deceptive business practice claims. Thus, while ZAI litigation is now well matured, the future course of ZAI litigation remains complex, expensive, and indeterminate, absent sensible resolution through class settlement.

This history laid the foundation for settlement. While both Grace and the ZAI claimants argued their positions privately to one another, and publicly to the Court, their commitment to continue along this daunting, expensive, and indeterminate litigation course was unquestioned. The experience of the "Science Trial" proceeding provided both constituencies with guidance as to how common interests could shape compromise of claims and thereby avoid embroiling this Court, appellate courts, and the parties in further uncertain litigation. Thus, in the summer of 2008, following multiple earlier failed efforts, Grace and ZAI class counsel began engaging in meaningful settlement discussions.

6

Much more could be said concerning how this Girsh and Prudential factor of complexity, expense, likely duration of continued litigation, and maturity of the proceedings favors final approval of the U.S. ZAI class settlement.   Suffice it to say that the class settlement was the product of mature discussion between well-informed counsel who made reasonable compromises to avoid a certain future of continued uncertainty that would threaten Grace's reorganization.

### 2.     The Engagement of and Reaction of Class Members to the Settlement Favor Final Approval of the Class Settlement.

While the deadline for all class comments has not yet passed, class counsel have had the benefit of numerous discussions with class members who, to date, have responded to the class notice.  The overwhelming majority of responses involve inquiries regarding the evidence needed to make a claim and the specifics of the settlement and bankruptcy process. Understandably, some ZAI claimants share class counsel's preference that the settlement afford 100% reimbursement (instead of 55%) of the costs related to ZAI abatement.  Class members broadly understand, as does class counsel, that while a perfect world is a preferable world,  the risk and uncertainties of reality call for compromise of claims.  No class member, to date, has expressed any strong disagreement with the concept of resolving ZAI claims through the proposed facility or the funding provided for the facility.   The reaction of class members to date, therefore, warrants final approval of the class settlement.[3]

### 3.     The Stage of the Proceedings and Amount of Discovery Completed Favor Approval of the U.S. ZAI Class Settlement.

The timing of a proposed settlement impacts a court's consideration of its approval.  A proposed class settlement offered early in the litigation process is particularly subject to close scrutiny.  See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768,

---

[3] Class counsel will supplement their brief as necessary and submit a proposed order after the deadline for class member comments.

818 (3d Cir. 1995) (applying the <u>Girsh</u> factors and concluding that the district court had abused its discretion in approving the settlement because "[t]he case was simply settled too quickly with too little development on the merits").

As set forth above, ZAI litigation had reached a very advanced stage at the time successful settlement negotiations began. The parties had been through extensive discovery, summary judgment proceedings, appellate proceedings, contested proceedings regarding the ZAI bar date, and contested proceedings regarding certification of a ZAI class. Each of these matters had been extensively litigated at the time of the settlement in principle. In addition to formal discovery, class counsel had the benefit of years of communications with hundreds of ZAI claimants located throughout the United States and had developed familiarity with the circumstances faced by ZAI homeowners. This experience significantly aided class counsel in negotiating for, and ultimately achieving: (1) a settlement that would make a meaningful contribution to the ZAI claimants' abatement-related costs; (2) a multi-year, comprehensive educational program regarding ZAI; and (3) a long-term ZAI facility that avoided an unnecessary and potentially dangerous "rush to remove," due to fear that benefits would not be available in the future. Class counsel submit that the successful settlement negotiations that began in earnest seven years after the bankruptcy filing reflect a mature, informed, and sober litigation assessment by both sides.

### 4.    The Risks of Establishing Liability Favor Final Approval of the U.S. ZAI Class Settlement.

The ZAI claimants unquestionably faced major risks in ultimately prevailing as to Grace's liability for ZAI. While the ZAI claimants successfully established through the "Science Trial" proceedings that ZAI was contaminated with asbestos which could be released upon disturbance, they faced significant risks in establishing to this Court's satisfaction that such

release of asbestos would result in actionable harm.  While the ZAI claimants contended that

such actionable harm resulted from contamination by asbestos release, they recognized that this

Court had accepted, at least in part, Grace's contention that the release of asbestos must rise to

some level (as yet unidentified in the proceedings) that would be "unreasonable."  While ZAI

claimants were intent on seeking appellate review when it became available, they recognized that

for the foreseeable future, that ruling would be the practical "law of the case."

     In denying the ZAI claimants' motion for interlocutory review of the "Science Trial"

Opinion, Judge Buckwalter advised counsel to pursue settlement negotiations in light of the

uncertainty that both sides faced following the "Science Trial" summary judgment:

> The Court:    Well, of course, that is true, except that many times you get a decision
> against you, and a partial summary judgment motion, or something is
> clearly interlocutory, and then you proceed to attempt to resolve the case
> in light of the existing opinion.
>
>     It still can be resolved because the other side knows they might not
> necessarily be on firm ground on that point, and it still permits
> negotiations to go forward.
>
>                                         March 5, 2007 Tr. at 10-11.
>                                                     Attach. 3.

    As discussed in detail in the declaration of Edward J. Westbrook attached to ZAI

claimants' motion for preliminary approval, that negotiation process which began in earnest in

the summer of 2008, was a long and arduous process.  At the end of that process, class counsel

had confidence that they had reached a stage where the settlement structure and funding

sufficiently addressed the ZAI problem, given the significant uncertainties of establishing

ultimate liability.  This factor, therefore, favors approval of the U.S. ZAI class settlement.

### 5.    The Risk of Establishing Damages Favors Final Approval of the U.S. ZAI Class Settlement.

ZAI counsel vigorously opposed a ZAI bar date because of their conviction that the vast

majority of homeowners with ZAI remain unaware that their homes contain ZAI.   In class

counsel's judgment, substantial questions remain as to whether unknowing ZAI homeowners

could be barred from making claims post-confirmation, absent representation and appropriate

plan provisions for their claims. In re M. Frenville Co., Inc., 744 F.2d 332 (3d Cir. 1984).

[Bankruptcy Courts must follow state accrual rules].  Nevertheless, the bar date remained a

practical reality for class counsel, imposing significant risks as to the ultimate damages for which

Grace could be held responsible.

ZAI counsel also faced the risk that the method by which building owners had established

their damages in traditional property damage cases (contamination evidence) might not succeed

here.  In its "Science Trial" Opinion, this Court distinguished these contamination cases as

situations where asbestos was located in "living and work areas, not confined to an attic or

similar location as is ZAI."  Science Trial Op. at 23.  If the Court's view on the relevance of

contamination evidence to ZAI homes was upheld on appeal, ZAI counsel could foresee that

establishing damages through contamination evidence would be uncertain.  Thus, the number of

ZAI claimants able to assert damages, and the proof necessary for individual ZAI homeowners to

establish damages, posed important risks driving settlement and ultimately warranting this

Court's final approval of the class settlement achieved.

### 6.    The Risks of Maintaining a Class Action Through Trial Favor Approval of the U.S. ZAI Class Settlement.

This Girsh factor is particularly applicable here.  Following seven years of efforts in

bankruptcy, ZAI claimants had still not obtained an initial determination as to whether an

existing certified ZAI class action would be recognized, let alone determinations that would help shape the likelihood of achieving the character of, or the scope of a broader ZAI class. ZAI counsel filed extensive briefing demonstrating that class certification was not only desirable, but essential. They were confident that class-based proceedings would ultimately play a central role in any resolution of ZAI claims. This confidence, however, was countermatched by Grace's avowed determination to contest any class certification at an appellate level. Class counsel were prepared to see the class certification issue through the appellate route and firmly believe that this was a situation that cried out for class certification. But the risk of maintaining a class action through trial, if measured only by the delay in achieving benefits for ZAI homeowners, warrants final approval of the class settlement now before this Court.

7.    **Issues Surrounding the Defendant's Ability to Withstand a Greater Judgment Warrant Final Approval of the U.S. ZAI Class Settlement.**

The eight-hundred pound gorilla facing ZAI claimants is not their ZAI claims, but Grace's bankruptcy and its inability to satisfy all legitimate claims. The class settlement achieved for U.S. ZAI claimants is particularly deserving of final approval when measured against the prospects of ZAI claimants achieving more.

The ZAI class settlement as incorporated into the Grace plan of reorganization is not a short-sighted salvage of risky claims that abandons all but the few who filed proofs of claim. It is a facility having a minimum lifespan of 20 years with potential funding of $140 million. The settlement accommodates the conflicting positions of the parties as to the number of ZAI homeowners who will incur remediation expense.

The settlement, similarly, guards against Grace's concern that the facility might leave "stranded" large amounts of money ZAI claimants would never use. Thus, the settlement provides for a $30 million payment upon confirmation and a second $30 million payment on the

11

third anniversary of confirmation.  It further provides for up to ten annual payments of $8 million each over the ensuing 20 years depending on whether ZAI claimants come forward in sufficient numbers that the ZAI settlement fund is below $10 million on any date following the fifth anniversary of the confirmation date.  Should sufficient ZAI claims materialize, Grace has committed up to an additional $80 million, for a total of $140 million to satisfy ZAI claims.  Because Grace's assets are finite and the demands on those assets many, the likelihood that ZAI claimants could achieve more is exceedingly slim.  In short, class counsel do not believe that, in light of the extraordinary financial circumstances confronting Grace and the numerous claims against it, Grace could withstand a significantly greater judgment than the U.S. ZAI class settlement effectively provides.

### 8.     The Reasonableness of the Settlement Fund in Light of the Best Possible Recovery Favors Final Approval.

The $140 million total class action fund can be evaluated in a number of ways depending on how the "best possible recovery" is defined.  Under the presumption that the ZAI bar date cut off further claims, only approximately 16,000 ZAI claims would remain.  Were all of these claims valued at $3,000 - $5,000 (an average ZAI removal cost), the ZAI settlement would more than fund 100% payment of those claims (a total of $48 – 80 million).

Disregarding the effect of the bar date, and assuming an average settlement of 50% of a claimant's removal costs, the $140 million settlement fund could address $280 million in removal which, on an average of $3,000 - $5,000 abatement cost per home, would abate approximately 56,000 - 93,000 homes.[4]  This is approximately 3.5 – 6 times as many ZAI homeowners as filed claims as of the bar date.

---

[4] $140 million divided by $1,500 (50% of $3,000) is 93,000; $140 million divided by $2,500 (50% of $5,000) is 56,000.

Should unexpectedly one million homeowners come forward with a $3,000 removal cost, of course, total damages would equal $3 billion.  But this calculation, representing more than the value of Grace,  and the highly unlikely assumptions associated with it, are a practical irrelevancy under this Girsh standard given Grace's limited ability to pay and other legitimate demands being placed upon Grace.  It may also be noted that the settlement requires claimants to invest in their abatement project by paying 45% of the costs themselves.  The settlement thus guards against people who might attempt to take financial advantage of a settlement fund, but who have no intention of remedying the problem that was the basis for obtaining recovery from that fund.

Under more reasoned estimates as to potential claimants, were an equal number of homeowners to eventually come forward as have responded to Grace's substantial bar date notice and all such claimants be deemed eligible, approximately 32,000 total claimants would require accommodation.  The class settlement achieved, having a total potential fund of $140 million, would provide each of those claimants with approximately $4,000 in abatement assistance, a recovery figure that is well within the range of reasonableness.

### 9.    The Reasonableness of the Settlement in Light of All Attendant Risks as Informed by the Outcome of Claims by Others With Similar Claims Favors Approval.

Because the ZAI litigation was newly emerged when Grace filed for bankruptcy, there had been no ZAI verdicts before bankruptcy.  Thus, the present settlement cannot be evaluated on the basis of prior trial results.  However, to the extent it casts light on the issue, the Court may take notice of the Canadian ZAI settlement already approved by the Canadian Court, which resolves all Canadian ZAI claims for $6.5 million Canadian.  Such a comparison, it is acknowledged, is imperfect because the controlling law in Canada differs from the laws of the

13

United States,  ZAI sales in Canada were smaller than ZAI sales in the United States,[5] and the posture of the ZAI litigation in Canada (where the government is a co-defendant) differs from the posture of the litigation here.  But to the extent comparison should be made, the U.S. ZAI class settlement of a potential $140 million compares favorably to the Canadian ZAI settlement of $6.5 million, where maximum potential homeowner recoveries are $600.

**10.    Class Members are Accorded the Right to Opt-Out of the Class, Warranting Final Approval of a Class Settlement that Benefits Thousands of Participating Class Members.**

Class members have been afforded an opportunity to opt-out of the U.S. ZAI class if they believe that their legal interests are best served by representing themselves in these bankruptcy proceedings on an individual basis.[6]  This safeguard provides additional assurance to the Court that final approval of the class settlement is appropriate, thereby permitting class members to avail themselves of the benefits achieved in the settlement.

**11.    Provisions for Attorneys' Fees Do Not Counsel Against Final Approval of the U.S. ZAI Class Settlement.**

Unlike many class actions, where class counsel separately negotiate a fee with the defendant, the present class settlement contains no such separate negotiated fee.  Rather, class counsel will, at the proper time, apply to the Court for an appropriate common fund attorneys' fee pursuant to established precedent in the Third Circuit and elsewhere.  In this regard, under the common fund doctrine, an attorney "whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his

---

[5] Canadian ZAI sales appear to have been approximately 20% - 40% of U.S. ZAI sales depending on the years analyzed.

[6] Some class members (less than 100 as of the filing of this memorandum) have returned opt-out forms as is their right under the class notice.

litigation, including attorneys' fees." United States v. King Pharm., 493 F.3d 323, 328 (3d Cir. 2007).

Class counsel will file such a petition only if the class action settlement is given final approval and the terms of the settlement are incorporated into an approved Grace plan of reorganization.  The interim period between approval of the U.S. ZAI class settlement and the effective date of a Grace plan of reorganization will certainly entail many additional months of work and obligation for class counsel before the ZAI settlement facility envisioned by the class settlement is successfully implemented.

While it is premature to delve into the merits of an appropriate common fund fee award, class counsel have informed Grace, the Class, and the Court, that they intend to seek a common fund fee not to exceed 25% of the two initial non-contingent settlement payments by Grace.[7]  For present purposes it is relevant to observe that a 25% common fund attorneys' fee award is well within the range of reasonableness.  As the Delaware district court has noted, "Many courts, including several in the Third Circuit, have considered 25% to be the 'benchmark' figure for attorney fee awards in class action lawsuits, with adjustments up or down for significant case-specific factors." In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 262 (D. Del 2002). Many class action settlements in the Third Circuit award a higher percentage.  See, e.g., McCoy v. Health Net, Inc., 569 F. Supp. 2d 448 (D.N.J. 2008) [ERISA and RICO case awarding 28-32% of a settlement valued at $215 - $249 million]; Bradburn Parent Teacher Store Inc. v. 3M, 513 F. Supp. 2d 322 (E.D. Pa. 2007) [antitrust case, 35% fee award on $39 million settlement].

Provisions for attorney fees in the settlement, therefore, do not counsel against final approval of the U.S. ZAI class settlement.

---

[7] See Attach. 2, Class Settlement Agreement, ¶ 5; Class Notice ¶ 20.

**12.    The Procedures for Processing Individual Settlement Claims are Fair and Reasonable, Warranting Final Approval of the U.S. ZAI Class Settlement.**

Under the proposed settlement, a ZAI claims facility will be established pursuant to Section 524(g).  As set forth in the ZAI Trust Distribution Procedures (ZAI TDP), the ZAI TDP "is designed to provide fair, equitable and substantially similar treatment for all US ZAI PD Claims …"[8]  The ZAI TDP affords ZAI homeowners, present and future, equal access to the facility and to reimbursement for their ZAI abatement-related expenses upon submission of sensible evidentiary proof.  Under the TDP, a claimant must only submit documentation to establish that: (1) the claimant owns or rents the structure in question; (2) the structure had or has ZAI; and (3) the claimant has incurred expenses for ZAI abatement-related costs.  The facility is designed so that claimants can participate without the need for a lawyer.  Disputes, should they occur, are to be settled informally through mediation or arbitration, if necessary.[9]  These simplified procedures ensure that the facility will be a genuine resource for ZAI claimants, thus supporting final settlement approval.

**13.    The U.S. ZAI Class Settlement is Fair to All Creditors.**

A final factor to be considered in a bankruptcy settlement in addition to the Girsh / Prudential factors is whether it is fair to other creditors.  The court must determine that "no one has been set apart for unfair treatment."  In re Devon Capital Mgmt., Inc., 261 B.R. 619, 623 (Bankr. W.D. Pa. 2001).

The terms of the class settlement have been served on all participants in this bankruptcy as an attachment to the ZAI claimants' motion for preliminary approval. (Dkt. 20275) (Dec. 15, 2008).  No creditor has objected to the settlement.  In light of the circumstances set forth above

---

[8] Exh. 33 to Grace's First Amended Joint Plan of Reorganization, filed February 3, 2009, §1.1. ("Grace Plan Exh. 33").

[9] See Grace Plan, Exh.33; §5.4 Evidentiary Requirements; §5.7 Arbitration.

detailing the complexity and difficulty of the ZAI litigation and settlement process, it is anticipated that the final fairness hearing will confirm that other creditors welcome Grace's resolution of its ZAI liability and removal of this significant impediment to a successful reorganization.

## III.   CONCLUSION

The U.S. ZAI Class Settlement represents a significant achievement in these bankruptcy proceedings.   The settlement is eminently fair, reasonable and adequate.   The settlement is the product of extensive, difficult work engaged in by informed adversaries.   That work continues to this day as ZAI class counsel engage with Grace, the PD Future Claimants Representative, and other constituencies to move this class settlement, the ZAI claims facility and Grace's overall reorganization efforts toward successful conclusion.   The ZAI claimants, through class counsel, therefore respectfully request that this Court move Grace's bankruptcy toward closure by granting final approval to the U.S. ZAI Class Settlement.

SULLIVAN HAZELTINE ALLISON, L.L.C.

William D. Sullivan (2820)
William A. Hazeltine (No. 3294)
Elihu E. Allinson, III (3476)
4 East 8th Street, Suite 400
Wilmington, Delaware  19801
Telephone:  (302) 428-8191

-- and --

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue
Chronicle Building, Suite 680
Spokane, Washington  99201
Telephone:  (509) 455-3966

-- and --

17

RICHARDSON, PATRICK,
WESTBROOK  & BRICKMAN, L.L.C.
Edward J. Westbrook
Catherine H. McElveen
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, South Carolina  29464
Telephone:  (843) 727-6500

-- and –

Elizabeth Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000

*Counsel for ZAI Claimants*