IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | x | Chapter 11 |
| | : | |
| W. R. GRACE & CO., et al.,[1] | : | Case No. 01-1139 (JKF) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Objection Deadline: March 13, 2009 at 4:00 p.m. |
| | : | Hearing Date: April 1, 2009 at 10:30 a.m. |
| | x | |

## MOTION OF KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND SUPPORT TERMINAL SERVICES, INC. FOR AN ORDER MODIFYING THE AUTOMATIC STAY: MACON, GEORGIA SITE

Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. (collectively, "**Kaneb**") hereby move this Court for entry of an order under section 362(d) of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") modifying the automatic stay to allow Kaneb to pursue insurance coverage with respect to environmental liabilities relating to a fuel pipeline site in Macon, Georgia. This motion seeks relief with respect to most or all of the same insurance policies that are at issue in the pending "lift stay" motion involving the former fuel pipeline site in near Otis Air Force Base, on Cape Cod, Massachusetts. In respect of this Motion, Kaneb respectfully states the following:

### I.
### Jurisdiction

1. This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein is section 362(d)(1) of the Bankruptcy Code.

---

[1] The Debtors consist of 62 entities, including W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.) and the particular debtor involved in this Motion, Grace Energy Corporation.

## II.
## The Otis Pipeline Motion

3.  On January 16, 2009, Kaneb filed Motion of Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. for An Order Modifying The Automatic Stay, attaching Exhibits K1-K67. Dkt. 20538. That motion (the "**Otis Pipeline Motion**")[2] concerns an environmentally contaminated property in Massachusetts called the Otis Pipeline that Kaneb may or may not have responsibility for based on a merger transaction with Grace Energy Corporation ("**GEC**"). In the Otis Pipeline Motion, Kaneb is seeking relief from the stay to pursue state court litigation with GEC concerning responsibility for the Otis Pipeline. In the Otis Pipeline Motion, Kaneb also seeks stay relief to seek recovery on certain insurance policies that provide coverage to Kaneb for liability in connection with the Otis Pipeline.

4.  The instant motion for relief from stay (the "**Macon Motion**") concerns another environmentally contaminated property in Macon, Georgia that was part of the same merger transaction. Here, Kaneb seeks relief from stay to seek recovery on certain insurance policies that provide coverage to Kaneb for liability in connection with the Macon site. Because many of the exhibits used in connection with the Otis Pipeline Motion also apply to the Macon Motion, the same exhibit numbers will be used.

## III.
## Background

5.  In 1993, Kaneb purchased certain GEC subsidiaries (the "**Acquired Companies**") pursuant to a purchase agreement and plan of merger (the "**Merger Agreement**" or the "**Transaction**") with GEC. Exhibit K7 (Merger Agreement, without attachments). Under the Merger Agreement, GEC first caused the merger of the Acquired Companies into Support

---

[2] The Otis Pipeline Motion is currently set for hearing on April 1, 2009.

Terminal Services. Inc.  Next, Kaneb acquired the stock of Support Terminal Services, Inc., subject to the terms and conditions of the Merger Agreement.

6.      The Merger Agreement closed on March 2, 1993. Under its terms, GEC and Kaneb exchanged numerous representations, warranties and indemnities. Among them, GEC represented and warranted that the Acquired Companies held no liability with respect to, and were in compliance with, all environmental laws. GEC also expressly agreed to indemnify Kaneb in the event such representation and warranty was inaccurate or the Merger Agreement was breached.

7.      On April 2, 2001, GEC along with its affiliates filed these Chapter 11 bankruptcy cases.

8.      On March 20, 2003, Kaneb filed a proof of claim number 4208 for $6,250,258 with "contractual indemnity" designated as the basis for the claim. This contractual indemnity claim was asserted only for costs associated with the Macon, Georgia site. The Macon indemnity claim arose from state cleanups of two areas (Area 1 and Area 3) affected by jet fuel releases from the pipeline in Macon, Georgia serving Warner Robins AFB.

9.      That Kaneb Macon proof of claim was filed with the Claims Processing Agent designating case No. 01-01139 and W.R. Grace & Co., et. al. as the debtor.

10.     On May 5, 2004, W.R. Grace filed "Debtor's Fifth Omnibus Objection to Claims" ("**Fifth Objection**"). 01-01139 Dkt. 5527. The Fifth Objection listed on its Exhibit C an objection to Kaneb's Macon claim number 4208 in case number 01-01140 (01-01140 is the case number for W.R. Grace & Co. -Conn) of $6,250,258. See also 01-01139 Dkt 5589 regarding service of the objection.

- 4 -

11. On July 19, 2004, the bankruptcy court entered Order Granting the Relief Sought in Debtor's Fifth Omnibus Objection to Claims. 01-01139 Dkt. 6007. That order attaches an Exhibit C and states that claims listed on Exhibit C are expunged and "disallowed" for all purposes. The Kaneb Macon claim number 4208 in case number 01-01140 of $6,250,258 is listed on Exhibit C.

12. Even though the Kaneb indemnity claim against the bankruptcy estate related to the Macon site was disallowed, Kaneb seeks relief from the stay *to seek any insurance coverage it is entitled to* with respect to the Macon, Georgia site.

13. On September 19, 2008, debtors filed their disclosure statement and joint plan of reorganization (the "**Disclosure Statement**" and the "**Plan**"). Hearings have been held on the issue of approval of the Disclosure Statement, and it is anticipated that an amended disclosure statement and plan will be filed. The Policies pursuant to which Kaneb presently seeks permission to pursue coverage rights are identified in Exh. K9 to the Otis Pipeline Motion.[3] *See also* Affidavit of Ellen Presby at ¶¶ 4-5 (submitted with the Otis Pipeline Motion).

14. Kaneb seeks relief from the stay in order to pursue its direct rights as a *co-insured* under the Policies. The insurance policies (either expressly or by following form) broadly define the "Named Insured" to include W.R. Grace and all of its subsidiary, associated, and affiliated companies. See, e.g., Exhibit K11 (attached to the Otis Pipeline Motion) at GEC029747 ("Named Insured: W.R. Grace & Co. and/or any subsidiary, organization, or company, including subsidiaries of a subsidiary company, owned, controlled or coming under the active management of W.R. Grace & Co."); Exhibit K65 at GEC028845 ("W.R. Grace & Co. and/or subsidiary,

---

[3] Because of the large volume of documents involved, complete copies of Kaneb's copies of the policies have not been submitted with this motion, but an Appendix of complete policy documents has been created and is available to the debtor and to the creditors' committee upon request.

associated, affiliated companies and/or organizations, owned, controlled and/or managed companies as now or hereinafter constituted").

15.     Thus, Kaneb, by virtue of its status as a successor-by-statutory-merger to a former Grace subsidiary, has rights under the liability policies that covered this subsidiary at the time it (allegedly) owned the pipeline. This includes policies effective from 1978 (the year in which Grace Petroleum Corporation internally transferred pipeline assets to a newly-created Grace subsidiary, Standard TransPipe Corporation) through 1993 (the year in which Kaneb acquired Standard TransPipe Corporation), since Standard TransPipe Corporation met the definition of named insured under the policies. In addition, by reason of the alleged 1978 internal transfer of pipeline assets and liabilities from Grace to Standard TransPipe, Kaneb (as successor-by-merger to Standard TransPipe) would qualify as a co-insured and/or an assignee of rights under policies issued to GEC and its predecessors prior to the 1978 internal transfer of pipeline assets.

GEC will not be harmed if Kaneb is permitted to proceed against policies as to which it is a co-insured and/or an assignee of rights. Except for claims involving "products liability/ completed operations" (which are not involved in the Macon site), all of the primary policies, and all or nearly all of the excess/umbrella policies, provide coverage on a "per occurrence" basis, without any "aggregate limit." *See id.* at Exhibit K10 at GEC029631; Exhibit K11 at GEC029747; Exhibit K12 at GEC030188).[4]

---

[4] Kaneb has identified only one policy that appears to have an aggregate limit applicable to premises-operations claims of the type involving the Otis Pipeline claim. See Northbrook Policy No. 63 001 172, Exhibit K24. (Because Kaneb has not undertaken any discovery or other investigation of this Northbrook policy, it does not concede that it has an aggregate limit.) However, notwithstanding the possible existence of an aggregate limit in that policy good cause exists to permit Kaneb to proceed against Northbrook Policy No. 63 001 172. *See, e.g., In re Cybermedica, Inc.,* 280 B.R. 12, 18 (Bankr. D. Mass. 2002) (cause existed to lift stay to permit directors and officers of debtor to seek payment of defense costs under D&O policy and harm to estate "speculative"); *In re Arter & Hadden, L.L.P.,* 335 B.R. 666, 674 (Bankr. N.D. Ohio 2005) (same).

16. The absence of "aggregate" limits for so-called "premises-operations" claims means that no matter how many "per occurrence" limits are paid out under the policy, the policy limits remain available to pay for other occurrences involving premises-operations claims. Thus, payment of claims relating to the Macon site would not diminish the amount of insurance coverage available to GEC with respect to other claims.

17. It is well-established that relief from a stay is appropriate where, as here, the recovery of insurance proceeds by a non-debtor would not reduce or eliminate the debtor's right to collect under that same policy. *See In re Spaulding Composites Co., Inc.*, 207 B.R. 899 (9th Cir. BAP 1997) (insurance claim did not violate automatic stay where payment of non-debtor's claim would not impair insurer's ability to satisfy policy obligations to debtor); *cf. In re Circle K Corp.*, 121 B.R. 257 (Bankr. D. Ariz. 1990) (policy proceeds deemed asset of estate where liability policies were "wasting" or "burning candle" policies, *i.e.*, payment of defense costs or judgments eroded or exhausted policy limits); *In re Metropolitan Mortgage & Securities Co., Inc.*, 325 B.R. 851, 857 (Bankr., E.D. Wash. 2005) (automatic stay prohibits non-debtor action that would diminish limits available to debtor under insurance policies). Because the pursuit of claims under the Policies would not diminish rights available to the debtor, Kaneb should be granted relief from the stay.

18. Further, to the extent Kaneb incurs defense costs in connection with the Georgia Department of Natural Resources action or other actions relating to the Macon site, these defense costs are payable under the primary policies without reduction or erosion of the limits of liability of those policies. *See* Exh. K10 at GEC029638; Exhibit K11 at GEC029754-55; Exhibit K12 at GEC030195 (primary policies) (all exhibits attached to Otis Pipeline Motion). Further, because there are no "aggregate limits" applicable to the type of general liability claims that Kaneb would

bring under these primary and excess/umbrella policies, payment of Kaneb's insurance claims relating to the Macon site would not diminish the amount of insurance coverage available to the debtor with respect to other claims.

19.  Finally, and also as noted above, the *proceeds* of the insurance policies are not assets of the debtor estate because they would not be payable to the debtor but, instead, would be payable to a non-debtor third party. In the case of defense costs, the proceeds would be payable to Kaneb for its attorney's fees and costs incurred in defending against claims being brought against Kaneb in connection with the Macon site. In the case of indemnity, the policy proceeds would be payable in satisfaction of any settlement or judgment obtained against Kaneb in connection with the Macon site. Under either scenario, the debtor stands to obtain no policy proceeds, and therefore the proceeds cannot be considered property of the debtor state.

20.  Since the policy *proceeds* would be paid to a third party other than the debtor, the law does not deem those *proceeds* to be assets of the debtor's estate:

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor increase the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.
>
> . . . [U]nder the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.

*In the Matter of Edgeworth*, 993 F.2d 51, 55-56 (5th Cir. 1993). Because the policy proceeds are not assets of the debtor estate, Kaneb is entitled to relief from the automatic stay to pursue those proceeds.

## IV.
## Prayer

WHEREFORE, pursuant to 11 U.S.C. § 362(d)(1), Movants Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. pray for relief from the automatic stay of 11 U.S.C. § 362(a) to allow all parties, courts, and court personnel to take all actions necessary and appropriate to litigate causes of actions and defenses, to otherwise prosecute and defend, and to administer any claims by Kaneb under the Policies (as previously defined) for insurance coverage relating to the Macon site, and for all other relief to which Movants shows themselves justly entitled.

Dated: February 25, 2009

Respectfully submitted,

SMITH KATZENSTEIN & FURLOW LLP

_____
Kathleen M. Miller (I.D. No. 2898)
Etta R. Wolfe (I.D. No. 4164)
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410 (Courier 19801)
Wilmington, De 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
Email: kmiller@skfdelaware.com
         erw@skfdelaware.com

Steve A. Peirce, Bar No. 15731200
FULBRIGHT & JAWORSKI L.L.P.
300 Convent Street, Suite 2200
San Antonio, TX 78205-3792
Telephone: (210) 224-5575
Facsimile: (210) 270-7205
Email: speirce@fulbright.com

Toby L. Gerber, Bar No. 07813700
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
Email: tgerber@fulbright.com

Robert J. Gilbert, Mass. Bar No. 565466
GILBERT & RENTON LLC
344 North Main Street
Andover, MA 01810
Telephone: (978) 475-7580
Facsimile: (978) 475-1881
Email: rgilbert@gilbertandrenton.com

**ATTORNEYS FOR KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND SUPPORT TERMINAL SERVICES, INC.**