# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.,** *et al.*[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | |
| | ) | |
| | ) | |

## EXHIBIT 10 TO EXHIBIT BOOK
## COOPERATION AGREEMENT

**EXHIBIT 10**

Attached.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**DRAFT--2/27/2009**

# W.R. GRACE ASBESTOS PERSONAL INJURY SETTLEMENT TRUST

**[insert date]**
**[To be executed and delivered on the Effective Date]**

W.R. Grace & Co.
Attn: General Counsel
7500 Grace Drive
Columbia, Maryland  21044

      Re:    Cooperation Agreement Between the W.R. Grace Asbestos Personal Injury Trust (the "**Asbestos Trust**") and the Grace Reorganized Debtors

Dear Counsel:

      Pursuant to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., *et al*., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders, as may be amended or modified (the "**Plan**"), this letter sets forth the agreement between the Asbestos Trust and the Reorganized Debtors regarding the Asbestos Trust's access to certain Documents (as defined herein) pertaining to Asbestos PI Claims and certain related facilities maintained by the Debtors during their Chapter 11 Cases and thereafter by the Reorganized Debtors as provided herein (the "**Cooperation Agreement**").[1]

      1.    As used in this Cooperation Agreement, the term "**Document**" means any written record or electronically-stored information, including any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data compilations, or databases.

      2.    Under the procedures set forth in this Cooperation Agreement, the Reorganized Debtors shall provide, or cause to be provided, to the Asbestos Trust all Documents described below that are within the possession, custody, or control of the Reorganized Debtors, including responsive Documents held on their behalf by any of the Reorganized Debtors' Affiliates or Representatives. The Reorganized Debtors acknowledge and represent that they have succeeded to possession, custody, or control of the responsive Documents that the Debtors maintained during their Chapter 11 Cases, and those that were held on the Debtors' behalf by their Representatives during the Chapter 11 Cases.

      3.    The Asbestos Trust shall be entitled to the following Documents under the procedures set forth in this Cooperation Agreement:

---

[1] All capitalized terms not otherwise defined herein have the meanings defined in the Plan. As used in this Cooperation Agreement, the term "**Debtors**" refers to the debtors and debtors-in-possession in the jointly-administered bankruptcy cases styled <u>In re W.R. Grace & Co.</u>, *et al.,* Case No. 01-1139 (JKF) (Bankr. D. Del.), together with all of their predecessors-in-interest. As defined in more detail in the Plan, "**Asbestos PI Claims**" refers to certain claims against the Debtors.

**DRAFT--2/27/2009**

(a) In the course of defending Grace in pre-petition asbestos personal injury and property damage lawsuits, Grace collected all known Documents responsive to discovery requests in those lawsuits in a document archive in Boston, Massachusetts. Non-privileged Documents in that archive have been made available to counsel for the Official Committee of Asbestos Personal Injury Claimants and the Asbestos PI Future Claimants' Representative in the estimation proceedings in the Chapter 11 Cases. The Reorganized Debtors agree to continue to maintain those non-privileged Documents in the Boston archive and to make them available for review and copying by the Asbestos Trust;

(b) Grace also created during the course of defending pre-petition asbestos personal injury and property damage lawsuits a coded "Searchlink" database of documents relating to Grace's manufacture and sale of asbestos-containing products (including product invoices and other sales records) produced in those lawsuits. The Reorganized Debtors will provide to the Asbestos Trust (i) a copy of that database and (ii) user names, passwords and instructions to enable the Asbestos Trust to utilize the associated software search mechanism;

(c) In the course of defending and settling pre-petition asbestos personal injury claims, Grace maintained a collection of personal injury claims files at its Boca Raton, Florida office, and at off-site storage facilities in Florida. Those personal injury claim files typically included the complaint or other form of written claim, and for settled claims, the claims files included exposure affidavits and/or other documentation of the alleged exposure to Grace's asbestos containing products and medical records of the alleged injury resulting from that exposure, and evidence of the disposition of the claim. Grace also maintained a Claims Management System ("CMS") computer database of those personal injury claims, and issued Monthly Asbestos Litigation Summaries ("MALS"). The Reorganized Debtors agree to maintain these Boca Raton personal injury claims files, the CMS database of personal injury claims and the MALS and to make them available to the Asbestos Trust for inspection and on-site copying;

(d) In order to assist the Asbestos Trust with its insurance recovery efforts, Grace either has provided or the Reorganized Debtors agree to provide to the Asbestos Trust the following compilations to the extent that they already exist and are readily available and the following Documents to the extent they exist and are within the Reorganized Debtors' possession, custody, or control:

    (i) Contact information for the insurance companies with whom Grace has corresponded over the years

2

**DRAFT--2/27/2009**

|        |                                                                                                                                                                                                                                                                                                |
| ------ | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|        | to the extent Grace already has this information assembled;                                                                                                                                                                                                                                  |
| (ii)   | Correspondence files with the insurance companies, brokers, or other entities regarding insurance coverage for asbestos liabilities, including all Documents relating to settlement of insurance coverage claims for asbestos liabilities;                                                     |
| (iii)  | Information with respect to past expenses maintained in the CMS system that were used to separate indemnity costs from defense costs;                                                                                                                                                          |
| (iv)   | Grace has already provided documents describing Grace's allocation program and coverage-in-place agreement policy registers for all settled carriers;                                                                                                                                          |
| (v)    | All computer programs relating to Grace's asbestos insurance allocation models;                                                                                                                                                                                                                |
| (vi)   | Support for the "Impairment of Limits" spreadsheet and the "Policy Register Estimated Erosion Amounts By Insurer Coverage In Place Agreements" worksheet and all other data relating to the exhaustion or impairment of the limits of Grace's liability insurance policies;                    |
| (vii)  | Correspondence reflecting notice of asbestos claims and demands for payment of asbestos claims, specifically including:  Grace's notification to its insurers of its filing for Chapter 11;                                                                                                    |
| (viii) | Grace will provide written authorization for the Asbestos Trust to obtain access to (a) any Grace insurance files maintained by its former broker Marsh and (b) the insurance files and insurance related memos and pleadings maintained or stored by Grace's previous insurance recovery counsel; |
| (ix)   | An Excel spreadsheet showing the asbestos insurance receipts and a copy of the programming source code for the administration of the coverage-in-place agreements; and                                                                                                                         |
| (x)    | Grace has already provided copies of all liability insurance policies issued pre-petition to the Debtors.                                                                                                                                                                                      |

3

**DRAFT--2/27/2009**

 (e) The Reorganized Debtors shall provide to the Asbestos Trust copies of all Documents pertaining to any supersedeas bonds or similar assurances of payment posted and outstanding as of the commencement of the Chapter 11 Cases with respect to any judgment entered against any of the Debtors on an Asbestos PI Claim;

 (f) The Reorganized Debtors shall provide to the Asbestos Trust copies of all databases of ballots submitted in the Chapter 11 Cases for Class 6 Claims, including imaged copies of all such ballots and all databases and compilations created for the Bankruptcy Court regarding voting; and

 (g) The Reorganized Debtors shall provide to the Asbestos Trust copies of all Documents previously produced by Grace in connection with the asbestos personal injury estimation during the Chapter 11 Cases.

 4. The Asbestos Trust shall also be entitled to access to the facilities referred to in Paragraph 3 above relating to the above-described Documents, under the procedures set forth in this Cooperation Agreement.  More specifically, the Reorganized Debtors shall provide the Asbestos Trust with:

 (a) access at reasonable times to all physical repositories ("**Repositories**") of the Documents identified in Paragraph 3 herein for the purpose of inspecting or copying such Documents;

 (b) copies of any electronic and paper indexes of the above-described Documents maintained in such Repositories; and

 (c) permission to copy, or cause the copying of, any and all Documents located or stored in such Repositories, including permission to remove any and all Documents from such Repositories for the purpose of copying or causing the copying of any and all such Documents.

 5. Within thirty (30) calendar days after receipt of a written request, the Reorganized Debtors shall provide the Asbestos Trust with (a) copies of any Documents described in Paragraph 3 above, and (b) access to any Repository described in Paragraph 4 above.  When providing such Documents or access, the Reorganized Debtors shall also provide the Asbestos Trust with any available electronic and paper index that identifies or describes the contents of any disc, database, or box of Documents provided, and all digital collections of such Documents.  To the extent any Documents in digital form are stored in a format with full text or other searchable capabilities, the Reorganized Debtors shall provide any and all search engines, software and programs to fully enable all potential search functions.  Any responsive Document that consists of a database or data compilation in electronic or digital form shall be produced in computer-readable format and shall include descriptions of data tables and fields used in the database or compilation.

 6. Beyond the Documents to be provided or made available to the Asbestos Trust by the Reorganized Debtors hereunder, the Reorganized Debtors will cooperate with the Asbestos

Trust in the Asbestos Trust's insurance coverage recovery and actions. The Reorganized Debtors will provide reasonable access to the Reorganized Debtors' personnel for interviews, depositions and trials if necessary. The Reorganized Debtors will authorize and encourage the cooperation of the Reorganized Debtors' defense counsel and consultants to provide their insurance related documents to the Asbestos Trust and to make themselves reasonably available for interviews, depositions and trials in insurance coverage recovery proceedings if necessary, compensation for which will have to be agreed upon by the Asbestos Trust and the respective defense counsel and consultants.

7. Within thirty (30) calendar days after the execution of this Cooperation Agreement, the Reorganized Debtors shall identify to the Asbestos Trust in writing its present and former agents or Representatives who likely have significant knowledge about the Documents or subject matters described in Paragraph 3 above (the "**Designated Representatives**"). Upon request by the Asbestos Trust, the Reorganized Debtors shall use commercially reasonable efforts to make the Designated Representatives available to the Asbestos Trust, including, without limitation, (a) those Designated Representatives whose knowledge and familiarity with the Documents might enable the Asbestos Trust to utilize the Documents more effectively and/or more efficiently and (b) those Designated Representatives whose information may be necessary to authenticate or prove the chain of custody for admissibility purposes in court or other proceedings. To the extent that the Reorganized Debtors have the ability to direct any Designated Representative or other agent or officer to cooperate with the Asbestos Trust, the Reorganized Debtors agree to do so. The Asbestos Trust shall reimburse the Reorganized Debtors for all lost time and reasonable expenses incurred in making such persons available, including but not limited to reimbursement for the Designated Representatives' fees or pro rata salary. Compensation for lost time shall be at rates mutually agreed upon by the Asbestos Trust and the Reorganized Debtors. The Reorganized Debtors shall not take any action intended to dissuade any person from cooperating with the Asbestos Trust. The Reorganized Debtors do not object to the Asbestos Trust contacting its former officers and employees and/or third parties, and the Reorganized Debtors agree to provide any available contact information for such persons as may be requested by the Asbestos Trust.

8. If at any time a Reorganized Debtor decides to terminate the employment or retention of a Designated Representative, the Reorganized Debtor shall provide the Asbestos Trust with at least fourteen (14) days' advance notice of such termination, in which event, at the sole option and request of the Asbestos Trust, the Reorganized Debtors and the Asbestos Trust shall confer in good faith to negotiate, if possible, an arrangement whereby a Reorganized Debtor will continue the employment or retention of the Designated Representative at the expense of the Asbestos Trust; *provided, however*, that nothing in this Cooperation Agreement shall preclude or bar the Asbestos Trust from separately retaining the services of a Designated Representative as a consultant or advisor to the Asbestos Trust after the Designated Representative's employment or retention with any of the Reorganized Debtors has been terminated or otherwise concluded.

9. In responding to the Asbestos Trust's requests pursuant to Paragraphs 1 through 8 above, the Reorganized Debtors shall provide the Asbestos Trust with a written certification that they have used their reasonable efforts to comply with those requests, or, if unable to so comply,

**DRAFT--2/27/2009**

shall provide a written explanation of reasons. Except as expressly provided in this Cooperation Agreement, nothing herein shall be interpreted as requiring the Reorganized Debtors to create any new Documents or to update or revise any of the information described herein.

10. The Asbestos Trust shall reimburse the Reorganized Debtors for all reasonable costs and expenses that any of the Reorganized Debtors incur on or after the date of execution of this Agreement in complying with the Asbestos Trust's requests for access to Documents or Repositories under this Cooperation Agreement, including the out-of-pocket expenses of making copies of any Documents at the Asbestos Trust's request; *provided, however,* that the Reorganized Debtors shall maintain the Documents and the Repositories at their own expense for the duration of this Cooperation Agreement, subject to the provisions of Paragraph 16 hereof regarding the right of the Reorganized Debtors to provide the Asbestos Trust with one hundred eighty (180) days' advance written notice with respect to Documents and/or Repositories that the Reorganized Debtors wish to dispose of or destroy and the right of the Asbestos Trust to then take possession of such Documents and/or Repositories at its own expense.

11. The Asbestos Trust shall use the Documents and information provided under this Cooperation Agreement only for purposes of (a) its processing, resolution, and defense of Asbestos PI Claims channeled to the Asbestos Trust under the Plan; (b) its pursuit of the Asbestos Trust Causes of Action; (c) its pursuit of the Asbestos Insurance Rights; and (d) settlement discussions with any Asbestos Insurance Entity; *provided, however,* that the Asbestos Trust may share the Documents and information with the holders of the Asbestos PI Claims. Notwithstanding any other provision of this Agreement, under no circumstances shall documents provided pursuant to this Agreement be used by the Asbestos Trust as a basis for or in support of any claim against the Reorganized Debtors, the Sealed Air Indemnified Parties, or the Fresenius Indemnified Parties. Subject to the non-waiver provisions of paragraph 13 below, the preceding sentence shall not preclude the Asbestos Trust, in any future litigation against the Reorganized Debtors, from seeking discovery of any document or information provided pursuant to this Agreement.

12. Neither the Reorganized Debtors nor any of their Representatives shall have any liability to the Asbestos Trust or its Representatives arising out of or relating to the use of the Documents or any errors or omissions resulting therefrom; *provided, however*, that such exculpation shall not pertain to any breach by any of the Reorganized Debtors of the duties created by this Cooperation Agreement or any of the Plan Documents.

13. By entering into this Cooperation Agreement, and providing the Asbestos Trust with access to or copies of the Documents, the Reorganized Debtors are not waiving any attorney-client privilege pertaining to the Documents; *provided, however*, that the retention of such privilege shall neither inhibit nor prevent the Reorganized Debtors from fulfilling their obligations hereunder. Nevertheless, to enable the Asbestos Trust to fulfill the purposes outlined in Paragraph 11 above, the Reorganized Debtors hereby waive any work product immunity or privilege that might attach to any of the Documents or information described in Paragraph 3 above, including, without limitation, Documents containing attorney mental impressions or trial preparation materials. Notwithstanding any other provision of this paragraph or this Agreement,

**DRAFT--2/27/2009**

nothing in this Agreement shall waive any attorney-client privilege or work product immunity for documents related to asbestos property damage claims or lawsuits.

    14.    This Cooperation Agreement is the entire agreement between the Asbestos Trust and the Reorganized Debtors with respect to the subject matter hereof, and supersedes all prior representations and agreements between the parties as to such subject matter. Any modification, waiver, or amendment of any provision of this Cooperation Agreement must be in writing and signed on behalf of the Asbestos Trust and the Reorganized Debtors, and no waiver of any term or breach of this Cooperation Agreement shall be deemed a waiver of such term for the future or any subsequent or other breach hereof. No failure or delay by any party in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof, or the exercise of any other right, power, or privilege hereunder. This Cooperation Agreement, and the terms hereof, shall be binding upon each of the Reorganized Debtors, the Asbestos Trust, and each of their respective successors and assigns. Should there be any litigation with respect to the Asbestos Trust's access to Documents or information under this Cooperation Agreement in which the Asbestos Trust prevails, the Reorganized Debtors (or each of their successors or assigns, as the case may be) shall reimburse the Asbestos Trust for its reasonable attorneys' fees and costs.

    15.    This Cooperation Agreement shall be construed in accordance with the laws of the State of Delaware, without regard to any conflict of law principles.

    16.    This Cooperation Agreement shall expire on December 31, 2020, unless renewed in writing at least one hundred and twenty (120) days prior thereto by mutual consent of the parties; *provided, however*, that the Reorganized Debtors, their successors, and assigns shall remain obligated to provide the Asbestos Trust with access to the Documents and Repositories for as long as such entities remain in possession or control thereof; and *provided, further*, until the expiration date of this Cooperation Agreement, the Reorganized Debtors, their successors, and assigns shall not dispose of or destroy the Documents or Repositories without providing at least one hundred and eighty (180) days' advance written notice to the Asbestos Trust, within which one hundred and eighty (180) day period the Asbestos Trust shall be entitled to take possession of the Documents at its own expense.

    17.    The following rules of construction shall apply to this Cooperation Agreement:

        (a) the words "include," "including," and any variation thereof are not limiting;

        (b) the word "or" is not exclusive;

        (c) the word "and" includes "or"; and

        (d) the plural includes the singular, and vice-versa.

    18.    Notices hereunder shall be sent for overnight delivery either by courier or certified mail, return receipt requested, addressed to:

**DRAFT--2/27/2009**

    (a) <u>If to the Asbestos Trust</u>:

        **[insert name and address]**

        <u>with copies to the following Representatives</u>:

        **[insert name and address]**

    (b) <u>If to the Reorganized Debtors</u>:

        **[insert name and address]**

        <u>with copies to the following Representatives</u>:

        **[insert name and address]**

    Please acknowledge your agreement to the terms of this Cooperation Agreement by signing in the space provided below, and returning one copy of the signed Cooperation Agreement to the Asbestos Trust, whereupon this Cooperation Agreement shall become a binding agreement between the Asbestos Trust and the Reorganized Debtors.

        Very truly yours,

        _____
        Trustee

        _____
        Trustee

        _____
        Trustee

**AGREED AND ACCEPTED:**
this ___ day of _____, 20__, by:

**THE REORGANIZED DEBTORS**
W.R. GRACE & CO., on behalf of itself and its subsidiaries
and affiliates that are Reorganized Debtors under the Plan

By: _____
Name:

**DRAFT--2/27/2009**

Title: