## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF KIRKLAND & ELLIS LLP
### FOR THE THIRTIETH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Kirkland & Ellis LLP for the Thirtieth Interim Period</u> (the "Application").

### BACKGROUND

1.      Kirkland & Ellis LLP ("K&E") was retained as counsel to the Debtors.  In the Application, K&E seeks approval of fees totaling $6,748,525.00 and expenses totaling $636,917.13 for its services from July 1, 2008 through September 30, 2008 (the "Application Period").

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2008, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996 (the "U. S. Trustee Guidelines"), as well as for consistency with precedent

established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served an initial report on K&E, and received a response from K&E, portions of which response are quoted herein.

## DISCUSSION

3.    In our initial report, we noted four instances in which multiple K&E professionals and paraprofessionals participated in meetings or conferences.  See Exhibit "A."  However, the time entries did not explain why it was necessary for each professional to participate.  Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Thus, we asked K&E to provide an explanation of each professional's roles at the conferences and why it was necessary for him or her to be in attendance.  K&E provided a response which we have included as Response Exhibit "A."  We accept K&E's response, except with respect to the fees billed for attendance of summer associates, Katherine Katz and Jonathan Ganter, at the July 10, 2008 joint defense conference.  The fact that both Ms. Katz and Mr. Ganter had conducted research and prepared memoranda covering topics discussed in the meeting does not establish the necessity of their attendance at the meeting.  Thus, we recommend disallowance of the fees billed by timekeepers Katz and Ganter, for a reduction of $430.50 in fees.

4.    In our initial report, we noted two instances during the Application Period where multiple K&E professionals and paraprofessionals participated in hearings.  See Exhibit "B." However, the time entries did not explain why it was necessary for each professional to participate. In light of Paragraph II.D.5. of the U.S. Trustee Guidelines, cited above, we asked K&E to explain

why it was necessary for each attendee to be present at the hearings, as well as the role of each

attendee.  K&E provided a response which we have included as Response Exhibit "B."  We accept

K&E's response, except with respect to the attendance of associate Christopher Greco at the

September 29, 2008 omnibus hearing.  According to the response, Mr. Greco had conducted research

on numerous aspects of the default interest matters that lead counsel, David Bernick, was addressing

at the hearing, and Mr. Greco attended telephonically in order to prepare any follow-up legal

research.  We do not believe the response has demonstrated why it was necessary for Mr. Greco to

attend the hearing in order to perform follow-up legal research.  Moreover, Mr. Bernick was already

being assisted at the hearing by attorneys Bruens and Leon.  Thus, we recommend disallowance of

Mr. Greco's time spent at the hearing, for a reduction of $1,599.00 in fees.

5.    In our initial report, we noted the following ground transportation charge which

appeared unusually high:

  7/25/08    $447.60   Janet Baer, Transportation to/from airport, Columbia, MD 7/25/08

In response to our inquiry, K&E provided the following information concerning this charge:

Ground Transportation Charge (¶ 5)

The Initial Report identifies one ground transportation charge with regard to which
you request additional detail.  This was a charge for $447.60 incurred by Jan Baer on
July 22nd, 2008 for car service provided by Boston Coach for transportation from
Baltimore-Washington International Airport Amtrak Station in Baltimore, Maryland
to the Courtyard Marriott Hotel, 8910 Stanford Boulevard, in Columbia, Maryland.
Jan was traveling from that day's hearing in Wilmington, Delaware to her hotel in
Columbia prior to attending an all-day meeting at Grace's Columbia headquarters on
July 23rd.  As do other car services, Boston Coach charges not by distance, but by
time, based on quarter-hour increments, beginning when the car leaves its garage and
ending when it returns to the garage.  Boston Coach's per-hour rate is $78.

The trip from Boston Coach's Washington, D.C. garage to the BWI train station (a
distance of approximately 40 miles) took one hour.  The car was scheduled to pick

Jan up at 4:23 pm, but, due to the hearing running long, she had to take a later train and did not arrive into the train station until 6:33, resulting in a 2 hour and 10 minute wait time charge. Since Jan had no way of knowing that the hearing would run over, and Boston Coach, like all car services, requires prior notice to change pickup time, there was no way to avoid the wait charge. The 14-mile trip from the train station to the hotel took 30 minutes, and the trip from the Columbia hotel back to D.C. (approximately 43 miles) took 1 hour and 10 minutes. The total actual driving plus wait time amounted to 4 hours and 50 minutes, and K&E was charged for a total of 5 hours. At $78 per hour, the charge was $390. In addition, there was an additional fuel service charge of 14% ($54.60) (a higher-than-normal fuel surcharge due to it being a time of very high fuel prices). Finally, there was a $3 surcharge for pickup at a train station.

Because this ground transportation charge is properly chargeable to the Debtors for the reasons set forth above, K&E respectfully requests full reimbursement thereof.

One of the factors relevant to whether an expense is proper is "[w]hether the expense is reasonable and economical."[1] Although it may have been convenient for K&E to utilize Boston Coach car service for this trip, it was not economical to the estate. Boston Coach does not maintain an office in Baltimore, and thus the car was required to come to BWI from Washington, DC. Then upon transporting Ms. Baer from BWI to Columbia, Maryland, the car returned from Columbia to Washington, DC. The end result was that the 14-mile trip from BWI to the hotel in Columbia, Maryland cost the estate $447.60. There are taxis and car services that service BWI, and use of either one would have been more economical. Use of a Baltimore-based car or taxi service for the same trip would have cost less than $100.00, even with taxes, tip, and fuel surcharge. Thus, we recommend a reduction of $347.60 in expenses.

6.      In our initial report, we noted a total of $8,575.80 billed for "Scanned Images." K&E billed these scanned images at $0.15 per page. Thus, we asked K&E to explain why these scanned pages should be charged at a higher rate than the $0.10 per page allowed for photocopies in this

---

[1] *See* Paragraph II.E.1. of the U. S. Trustee Guidelines.

District.  K&E responded as follows:

> The Initial Report requests an explanation for why scanned images are charged at $0.15 per page instead of the $0.10 per page charge allowed for photocopies pursuant to the applicable local Bankruptcy Rule.  K&E agrees to a reduction of $2,858.60 with regard to the period covered by the Initial Report (during the period covered by the Initial Report, K&E scanned 57,172 pages at a charge of $0.15 per page, for a total charge of $8,575.80.  Reducing the charge to $0.10 per page results in a charge of $5,717.20.)  As we stated in our response to the 29th interim period report, we have adjusted our billing procedures to ensure that scanned images are charged to the Debtors at $0.10 per page rather than $0.15 per page.  This change was made effective as of November 4th, 2008.

We appreciate K&E's response and recommend a reduction of $2,858.60 in expenses.

7.    In our initial report, we noted the following sets of identical or similar expense entries:

| | | |
|---|---|---|
| 9/9/08 | $145.39 | Fed Exp from: Patrick King, Esq., Washington, D.C. |
| 9/9/08 | $145.39 | Fed Exp from: Patrick King, Esq., Washington, D.C. |
| 9/15/08 | $145.87 | UPS Dlvry to: KIRKLAND & ELLIS, LLP, WASHINGTON, D.C. from: Ellen T. Ahern |
| 9/15/08 | $145.87 | UPS Dlvry to: KIRKLAND & ELLIS, LLP, WASHINGTON, D.C. from: Ellen T. Ahern |
| 7/25/08 | $821.00 | Professional Fees - Expert Professional Services Fees Rendered July 24, 2008, Fees and expenses |
| 7/28/08 | $821.00 | Professional Fees - Expert Professional Services Fees Rendered July 24, 2008, Fees and expenses |
| 8/21/08 | $43.30 | Fed Exp to:  Daniel Rooney, CHICAGO, IL from:Terrell Stansbury |
| 8/21/08 | $36.09 | Fed Exp to:  Daniel Rooney, CHICAGO, IL from:Terrell Stansbury |
| 8/21/08 | $36.09 | Fed Exp to:  Daniel Rooney, CHICAGO, IL from:Terrell Stansbury |
| 8/21/08 | $43.30 | Fed Exp to:  Daniel Rooney, CHICAGO, IL from:Terrell Stansbury |
| 8/21/08 | $43.30 | Fed Exp to:  Daniel Rooney, CHICAGO, IL from:Terrell Stansbury |
| 8/21/08 | $36.09 | Fed Exp to:  Daniel Rooney, CHICAGO, IL from:Terrell Stansbury |
| 8/25/08 | $31.55 | Fed Exp to:  Terrell Stansbury, WASHINGTON, DC from: Sarah Whitney |
| 8/25/08 | $31.55 | Fed Exp to:  Terrell Stansbury, WASHINGTON, DC from: Sarah Whitney |
| 8/25/08 | $31.55 | Fed Exp to:  Terrell Stansbury, WASHINGTON, DC from: Sarah Whitney |

Thus, we asked K&E to review its records and advise whether any of the expense entries were duplicates.  K&E provided a response which we have included as Response Exhibit "C."  We appreciate K&E's response and recommend a reduction of $481.59 in expenses.

## CONCLUSION

8.      Thus, we recommend approval of $6,746,495.50 in fees ($6,748,525.00 minus

$2,029.50) and $633,229.34 in expenses ($636,917.13 minus $3,687.79) for K&E's services for the

Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:

                Warren H. Smith
                Texas State Bar No. 18757050

Republic Center
325 N. St. Paul Street, Suite 1250
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 9th day of March, 2009.

Warren H. Smith

**SERVICE LIST**
<u>Notice Parties</u>

**The Applicant**
Deanna Boll
David M. Bernick, P.C.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

dboll@kirkland.com
dbernick@kirkland.com

**The Debtor**
William Sparks
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044
william.sparks@grace.com

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
James R. O'Neill
Pachulski, Stang, Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

**United States Trustee**
David Klauder
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

**EXHIBITS "A" and "B"**

*(See attached Excel spreadsheets.)*

**RESPONSE EXHIBIT "A"**

<u>Attendance at Conferences (¶ 3 and Exhibit A)</u>

Paragraph 3 of the Initial Report requests greater explanation concerning the attendance of multiple K&E professionals at conferences on four different occasions. In lettered paragraphs (a) through (d) below, we describe each conference, and each attending professionals' questioned time.

First, however, because the majority of the questioned time is for criminal defense team conferences, we thought it would be useful to provide a brief summary of the status of the criminal case leading up to and during the conference dates in question.

As you know, in February 2005, the U.S. Government unsealed a grand jury indictment against Grace and seven of its former employees[2] relating to Grace's former vermiculite mining and processing activities in Libby, Montana. The indictment accuses Grace and the individual defendants of (a) violating the Clean Air Act, (b) obstruction of justice, and (c) conspiracy to violate the Clean Air Act and defraud the United States by impeding the functions of the EPA, the National Institute for Occupational Safety and Health ("NIOSH"), and other agencies. K&E has been Grace's defense counsel since the unsealing of the indictment. In July 2006, after the District Court for the District of Montana dismissed several key counts of the indictment, the Government filed a superseding indictment that omitted the dismissed counts. Later that month, the District Court dismissed a portion of the conspiracy count of the superseding indictment, and, in August 2006, the District Court granted a motion by the defendants to exclude certain evidence. The Government appealed these and other rulings to the Ninth Circuit Court of Appeals. In September 2007, the Ninth Circuit overturned the July 2006 and August 2006 District Court rulings. The defendants petitioned the Ninth Circuit for a rehearing, which was denied in December 2007, and, in April 2008, the defendants appealed to the U.S. Supreme Court. On June 23rd, 2008, the Supreme Court denied *certiorari* in the appeal, and remanded the case back to the District Court, where the jury selection in the trial began on February 19th, 2009.

While awaiting the Supreme Court's ruling, K&E's criminal defense team had been largely in a "stand down" mode. Since the June 23rd ruling, of course, the team has been vigorously preparing for trial.

    a.      <u>July 7th, 2008</u>

Harding, Giroux, Stansbury, Ahern, King, McMillin, Fitzsimmons, Lancaster

This conference, held two weeks after the Supreme Court's ruling, was a K&E-only "all hands" defense team meeting held in K&E's Washington, DC offices. The meeting was held in order

---

[2]One of the seven individual defendants passed away in 2007, and the proceedings now remain against Grace and the six surviving individual defendants.

to discuss the substance and import of the Court's ruling.  Most critically, the defense team members met to discuss and determine:  the potential timing of the trial start date, the strategy for trial, the trial preparation tasks required, and the professionals who would be responsible for each such task. David Bernick led the meeting and had asked all team members to come prepared with a detailed analysis relating to the particular factual or expert issues for which such team member (or small group, in some cases) was responsible.  Each presenter needed to prepare and present a detailed report on the status of the assigned factual or expert trial module, as well as a report on the then-current status of the team member's or group's development of themes and materials for trial. Following each presentation, the presenter(s) and other defense team members worked together to develop the trial strategy and trial preparation task list with regard to each subject covered by the presentation.

The K&E professionals participating in this meeting all participated in order to fulfill their ongoing criminal defense team roles and responsibilities.  Specific team members' roles are described in the following three paragraphs.

D.C. litigation partner Barbara Harding attended the meeting in her role as second in command of the defense team (under D.C. litigation partner Larry Urgenson).  Barbara's particular focus is on the science aspects of the defense, and, at the July 7th conference, she prepared and gave presentations relating to the major aspects of the science defense.  Los Angeles partner Walter Lancaster has primary responsibility for developing the defense to the obstruction of justice charges. In addition, he has primary responsibility for developing the cross examinations of two of the prosecution's chief expert/fact witnesses (witnesses whose testimony addresses all of the government's charges).  He attended, and made presentations, in furtherance of this role.

Chicago litigation partner Scott McMillin is responsible, under Barbara Harding, for the science defense.  Some of his particular areas of responsibility are development of the defense with respect to matters such as risk assessment, sampling data and techniques, industrial hygiene, and geology.  Scott prepared and gave presentations on such matters at the July 7th conference.  Chicago litigation partner Ellen Ahern's defense team role is fairly broad.  She works on a variety of expert and factual witness issues, in particular historical factual issues, as well as more science-based risk assessment and industrial hygiene matters.  Ellen attended the meeting in furtherance of her team role, making presentations related to these subjects.  D.C. litigation partner Brian Stansbury has primary responsibility for the development of Grace's medical defense, which includes preparing cross and direct examinations of medical experts, and he attended, and made presentations, in this role.  D.C. litigation associate Patrick King works on factual development and matters related to the conspiracy to defraud charge.  Patrick prepared several fact development narratives/outlines which were presented at the July 7th meeting.

D.C. legal assistant analyst Tim Fitzsimmons, who holds a doctorate in biomedical sciences,

is a legal assistant analyst member of the defense team.[3] His responsibilities are multiple: to analyze many of the underlying documents related to expert witnesses; to assist with scientific aspects of the direct and cross examination preparations for such witnesses; to find and analyze documents relevant to the science case for consideration as exhibits during K&E's cross-examination of Government expert witnesses; and, more generally, to help the defense team better understand the biomedical aspects of the trial themes being developed. Tim attended this particular meeting in large part in order to gain an understanding of the legal issues and intellectual arguments of the case so that he could better fulfill his team role. Finally, D.C. legal assistant Britton Giroux attended the meeting in order to prepare various documents (drafts of pleadings, expert reports, and discovery requests) for the attorneys to review throughout the course of the day.

　　　b.　　July 10th, 2008

　　Harding, B. Stansbury, Ahern, Ganter, Katz, Urgenson, Durity, Farrell, King, Koch, McMillin, Bianca

　　The July 10th time entries all related to one of the weekly conference calls held with counsel for the individual defendants (the "joint defense"). Shortly before the call, the District Court judge had scheduled a status conference for October 1st, 2008, and on this call, the participants planned strategy and assigned tasks with respect to the status conference.

　　Barbara Harding, Brian Stansbury, Ellen Ahern, Patrick King, and Scott McMillin attended this telephone conference in furtherance of their respective defense team roles described in paragraph 1(a).[4] Additionally, D.C. litigation partner Larry Urgenson led the K&E team on the call, in his role of senior litigation partner with overall responsibility for the defense. Chicago litigation associate Sal Bianca attended to fulfill his responsibility of being the senior associate responsible for the broad array of risk assessment issues in the case. D.C. litigation associate Laura Durity attended because issues were discussed relating to her responsibilities within her assigned subject matters of industrial hygiene and analysis of federal regulatory history. D.C. litigation associate Peter Farrell attended in order to assist him fulfill his responsibilities for preparing portions of Grace's status conference statement and researching and drafting several briefs due before the status conference date. D.C.

---

[3]After the personal injury (PI) settlement was reached in Grace's bankruptcy case in April 2008, Tim, as well as several other members of the PI team, (some of whom had previously been part-time members of the defense team) began transitioning into full-time defense team members. To the extent possible, in the interest of efficiency and knowledge retention, K&E has moved PI team members into roles on the defense team that are analogous with their former PI team roles. If the description of Tim's role above looks familiar, it is because his defense team role largely mirrors his prior PI team role.

[4]Not every defense team member attends every joint defense call. Except for "all-hands" planning meetings or conferences, K&E defense team members attend joint defense conferences only when the subjects being covered relate to their particular areas of responsibility.

litigation associate Rebecca Koch attended to fulfill her responsibility of preparing portions of Grace's affirmative trial outline, as topics were covered on the call that related to her specific trial outline responsibilities relating to mine and mill operations and engineering controls. Katherine Katz and Jonathan Ganter, D.C. litigation summer associates during the time of the conference, attended because topics were covered with respect to which they had conducted research and prepared legal memoranda.

      c.    <u>August 7th. 2008</u>

Mena, Bruens, Boll, Rooney, Ahern, Lewinstein, Labovitz, Freedman, Christopher, McMillin

The questioned August 7th time entries actually represent two wholly separate conferences. The first was a full-day, in-person conference held in K&E's New York offices among K&E restructuring/chapter 11 plan team members, Grace representatives, and counsel for the personal injury (PI) claimants and the PI future claims representative. K&E professionals attending this first meeting were Andres Mena, Craig Bruens, Mark Lewinstein, Natasha Labovitz, Ted Freedman, and Thomas Christopher, and myself. The second August 7th conference was a meeting among K&E criminal defense team members Scott McMillin, Ellen Ahern, and Dan Rooney and a consulting expert located in Denver, Colorado. We describe first the plan team conference and then the defense expert meeting below.

      (i)    <u>Plan team conference</u>

Mena, Bruens, Boll, Lewinstein, Labovitz, Freedman, Christopher

This meeting, held in K&E's New York offices, was conducted with PI claimants' counsel to address and negotiate the various issues associated with the PI transactional documents (deferred payment agreement, guarantee, share issuance agreement, warrant and registration rights agreement). The overall purpose of the meeting was to further the process of negotiating plan documents following the PI settlement reached in principle in April of 2008. Exhibit A to the Initial Report shows less than full day participation by several K&E team members at this meeting; that is because each attended only such portions of the meeting as appropriate for his/her area of responsibility.

New York corporate partners Tom Christopher and Andres Mena are the lead partners on all corporate issues relating to Grace's restructuring, and both attended the meeting as the K&E team's lead negotiators on, and drafters of, these documents. New York bankruptcy partner Natasha Labovitz attended in her role as a restructuring partner with a specialty involving some of the transactions that were being memorialized in the corporate documents. Natasha worked with the corporate lawyers in drafting and negotiating these documents, and she offered advice and suggestions from a bankruptcy perspective regarding bankruptcy nuances in these transactional documents. New York restructuring partner Craig Bruens and

I attended in our roles of being the partners in charge of the plan (myself) and disclosure statement (Craig and Ms. Baer) and ancillary plan documents (primarily non-corporate ancillary documents such as trust agreements, trust distribution procedures, etc.). New York restructuring associate Marc Lewinstein attended in his role as the lead associate working with Craig and Ms. Baer on the drafting of the disclosure statement and the analysis of issues related thereto.

New York senior restructuring partner Ted Freedman is responsible for developing much of Grace's chapter 11 plan and bankruptcy emergence strategy. Ted, as the most senior restructuring partner on the Grace team, has been on the PI team since its inception, and attended this meeting in order to coordinate all aspects of the meeting and ensure that all Grace issues were properly represented in both the transactional documents and the traditional bankruptcy plan documents and the negotiations with respect thereto.

(ii)    Defense expert meeting

McMillin, Ahern, Rooney

The other set of August 7th time entries questioned in the Initial Report represent time spent at a meeting between K&E criminal defense team members Scott McMillin, Ellen Ahern, and Dan Rooney and a consulting geographical information systems (GIS) expert located in Denver, Colorado.

The purpose of the meeting was (a) to discuss what information the GIS expert needed in order to prepare a rebuttal to the Government's GIS expert, and (b) to review and modify the reports and trial materials Grace's GIS expert had created in order to get them ready for trial use. Scott McMillin attended because he is the partner responsible for GIS issues in the science defense, and had specific responsibility for this expert. Ellen Ahern attended because she utilized this expert separately with regard to data relating to Grace's historical plant operations. She also assisted Scott with development of the expert's reports as they related to preparation of risk assessment-related graphics that were then under development. Chicago senior legal assistant Dan Rooney attended to facilitate the gathering and transfer of the needed information (data points from other Grace experts) to the GIS expert.

d.    August 17th - 18th. 2008 Joint Defense Conference

Karan, Harding, Giroux, Stansbury, Rooney, Ahern, Urgenson, Farrell, King, Koch, McMillin, Mace, Lancaster, Durity, Rohrhofer

The August 17th and August 18th[5] questioned time entries all relate to a two-day joint defense conference held in K&E's Washington, D.C. offices.  At this point in the criminal case, there was no trial date set, but there was a status conference scheduled for October 1st, at which, among other things, *Daubert* hearing dates and the actual trial date would be set.  Both the K&E team and the individual defendants' counsel had been working separately on trial strategy development, and this conference served as the opportunity to review and reconcile trial strategies arrived at by all counsel.  In a sense, this meeting was a follow-up to the strategy/brainstorming session held on July 10th that is described above.  At the August meeting, K&E prepared and gave a comprehensive presentation of all defense issues on which K&E had been working.  K&E's presentation included hundreds of slides and graphics as well as at least twenty-five factual narratives. The scientific presentations were particularly detailed and complex, and took a significant amount of time.[6]  Team members who helped prepare, but did not physically make, actual presentations were present in order to field any issues/questions that arose during the presentations and to implement any comments from the joint defense team in their ongoing work product.

Barbara Harding, Brian Stansbury, Ellen Ahern, Larry Urgenson, Peter Farrell, Patrick King, Rebecca Koch, Scott McMillin, Walter Lancaster and Laura Durity attended in their respective defense team roles described in paragraphs l(a) or 1(b) above, as applicable.  Each, either individually or with small groups, prepared and made presentations on matters for which he or she was responsible.  Each of these professionals also attended in order to be able to answer questions asked following the presentations.  In addition, Chicago litigation partner Alex Karan attended as author of a portion of the trial outline.  In addition, other conference participants needed his in-depth knowledge of the Government's environmental remediation efforts in and around Libby.  Alex also prepared many of the presentation materials for K&E's presentation to the individual defendants' counsel.

D.C. litigation associate Tyler Mace, the senior associate on the defense team, worked extensively with Larry Urgenson, Barbara Harding, Ellen Ahern and other team members to prepare and coordinate K&E's presentations made at the meetings.  Tyler's defense team role includes, among other things, the coordination of discovery and defense efforts with the individual defendants, as well as day-to-day management of the matter.  He attended the meeting in fulfillment of this role. Dan Rooney made the logistical arrangements for the meeting, compiled documents and data used to build graphics for the presentations being made, and, with Britton Giroux's assistance, created binders containing such materials.  Britton also prepared volumes of expert reports, potential

---

[5]We have since been advised by K&E that references to August 17th and 18th time entries should read September 17th and 18th.

[6]The reason for such a large presentation is that, since most defense briefs are filed jointly by Grace and the individual defendants, both the K&E team and the individual defendants' counsel need to meet to share the most current thinking, and together agree on a common approach. Joint defense counsels' comments to K&E's presentations allowed K&E to go forward with preparation of the trial and witness examination outlines.

demonstratives, and potential pleadings. D.C. case assistant Morgan Rohrhofer also assisted Dan Rooney in preparing materials for the conference, particularly those relating to outlines for cross examinations of Government witnesses.


## RESPONSE EXHIBIT "B"


Attendance at July 21st. 2008 and September 29th, 2008 Omnibus Hearings (¶ 4 and Exhibit "B")

Paragraph 4 of the Initial Report requests greater explanation concerning the attendance of multiple K&E professionals at the July and the September omnibus hearings.  Set forth below are our replies with regard to each hearing.

a.      July 21st Omnibus Hearing

Basta, Harding, Baer, Esayian, McMillin, Freedman

The major items up at the July omnibus hearing were status conferences regarding Zonolite Attic Insulation (ZAI) and other property damage (PD) claims issues,[7] and a status conference regarding the default interest litigation (described in paragraph 2(b) below).

Former D.C. litigation associate Amanda Basta participated by telephone in the PD/ZAI claims status conferences presented at the hearing, in her role of senior associate responsible for drafting Grace's opposition to the Canadian ZAI claimants' motion to lift the automatic stay.  She needed to participate in the hearing telephonically in order for her to draft further pleadings in the matter related to what was happening in the hearing.  Barbara Harding participated by telephone in the portions of the hearing related to ZAI claims issues and default interest.  As described above, Barbara is currently the partner in charge of many aspects of the defense team.  In addition, she was previously the partner in charge of the day- to-day activities of the PI estimation team (see the 29th Period Response for a fuller description of the PI estimation proceedings).  Barbara attended the ZAI portions of the hearing in order to be immediately aware of the arguments being raised by all parties and assess their potential effect on the criminal matter. She also attended to provide historical support on certain factual issues that arose in the default interest hearing portion that related to PI estimation discovery.

Former Chicago restructuring partner Janet Baer (who left K&E in February 2009) conducted

---

[7]PD/ZAI claims and associated matters are more fully described in K&E's response to the Fee Auditor's Initial Report regarding the 29th Interim Period (the "29th Period Response").

the non-ZAI portion of the hearing and participated as needed during the default interest status conference portion of the hearing. As you know, Jan had been the restructuring partner in charge of the Grace case on a daily basis for the last number of years. She attended every omnibus hearing not only to present matters, but also to provide historical information and continuity (since she was the team member with the longest historical knowledge of the case) and assist with bankruptcy-related issues that arise during the hearings. Chicago-based litigation partner Lisa Esayian, the litigation partner in charge of PD claims, attended a half hour of the July 21st hearing by telephone in order to listen to the status report being presented by the law firm of Reed Smith, special litigation counsel for ZAI claims. The report covered the status of certain Canadian PD claims and certain pending State of California PD claims. In addition, she updated the PD provisions contained in Grace's disclosure statement with information presented at the hearing. Scott McMillin, who, after the PI estimation trial ended, transitioned away from PI matters into taking the lead on ZAI issues, prepared David Bernick for the day's ZAI arguments, and then attended the ZAI-related portions of the July omnibus hearing by telephone in order to provide support with David's ZAI-related arguments.[8]

New York senior restructuring partner Ted Freedman attended the hearing to fulfill both his ZAI and default interest litigation roles. His role with respect to ZAI was to analyze the bankruptcy aspects of the litigation, and he attended the hearing in person in order to provide real time assistance to David Bernick on the bankruptcy and other legal issues associated with the ZAI matters up at the hearing. In addition, Ted has been heavily involved in the default interest litigation matter, working closely with the litigation group on briefing and negotiations involving this issue and the impact that the issue has on the plan of reorganization.

      b.      <u>September 29th Omnibus Hearing</u>

            Baer, Love, Bruens, Greco, Leon

The major item up at the September omnibus hearing was the default interest/credit agreement trial. In the default interest litigation, certain of the Debtors' lenders sought payment on their claims to include post-petition interest at 100% of the contractual default rate, in accordance with the terms set forth in the Debtors' pre-petition credit facilities. In June of 2008, the Debtors filed an objection to these bank claims, arguing that the relevant Bankruptcy Code section does not mandate payment of post-petition default interest; that default interest was inappropriate both because there had been no determination of the Debtors' solvency; and that equitable considerations weighed against default interest in the Debtors' cases. In September 2008, after the parties conducted discovery in relation to the Debtors' objection, the Debtors filed their trial brief, responding to the arguments raised by the lenders and the Unsecured Creditors' Committee (UCC). The lenders, joined by the UCC, filed a pre-trial memorandum at the same time. The Court held a trial on the matter at the September omnibus hearing.

---

[8]Once the criminal trial date was set, Scott moved to full-time defense team work.

Jan Baer attended the hearing in her ongoing bankruptcy team role described in paragraph 2(a) above.  She prepared and presented all non-default interest items on the agenda.  She also worked extensively with Craig Bruens, Eric Leon and Christopher Greco to prepare David Bernick for the default interest arguments he would be making at the hearing.  Craig Bruens attended only the default interest portion of the hearing.  He had drafted Grace's original objection to the bank lenders' claims for default interest and assisted in drafting the trial briefs in relation to the default interest matters up at the September hearing.  Craig provided the bankruptcy analysis for all of the briefing on the matter.  New York litigation partner Eric Leon also assisted David in preparing for the hearing, reviewing, analyzing and summarizing case law and other materials related to the litigation analysis and discovery issues, and he attended the hearing to assist David with any issues arising during the default interest trial.  Christopher Greco, a New York restructuring associate, attended the hearing via telephone.  Chris had conducted legal research into numerous aspects of the default interest matters David Bernick was presenting at the hearing, and he participated telephonically in order to prepare any follow up legal research.  Before the hearing, Chris worked extensively with Jan, Craig, and Eric to determine the best default interest arguments, and then conducted his research accordingly.  Chicago-based Kimberly Love is the bankruptcy team legal assistant charged with lending support at all hearings where legal assistant support is required.  She assists with hearing preparation materials as requested by the attorneys and attends the hearings in order to provide real-time assistance as requested.  She attended the September omnibus hearing and assisted onsite with the preparation of hearing materials.  During the hearing, she then provided the K&E attorneys with assistance with documents, claims files, pleadings and demonstrative materials.

## RESPONSE EXHIBIT "C"

The Initial Report identifies the expenses listed below, and asks whether, because of the similarity of some, those similar expenses are duplicates of each other.  All of the questioned overnight delivery expenses represent shipment of criminal defense discovery and/or trial preparation materials.  We do not believe they are duplicate charges, but we are verifying those charges with UPS and Federal Express to make sure that K&E has not been double billed by those delivery service providers.  We will agree to waive shipping charges of <u>$481.59</u> as indicated below pending follow up from UPS and Federal Express. If we confirm that separate packages were shipped notwithstanding what appears to be duplicative charges, we will renew our request for payment on account of such expenses.  In terms of expenses related to experts, while the rate is the same, the two expert expenses are for two different experts as indicated below.

| (1) | 9/9/08 | $145.39 | Fed Exp from: Patrick King, Esq., Washington, D.C. | This is a charge for a delivery of a box of trial preparation materials delivered from K&E's D.C. offices to defense team member Patrick King at his vacation location so that he could continue to prepare for trial on vacation. |
|-----|--------|---------|---------------------------------------------------|---------------------------------------------------|
| (2) | 9/9/08 | $145.39 | Fed Exp from: Patrick King, Esq., Washington, D.C. | *We believe this is a charge for a second box of trial preparation materials delivered to Patrick King while he was on vacation; however, we will agree to withdraw the charge pending investigation with Federal Express.* |
| (3) | 9/15/08 | $145.87 | UPS Dlvry to: KIRKLAND & ELLIS, LLP, WASHINGTON, D.C. from:  Ellen T. Ahern | This is a charge for a delivery of a box of expert witness-related materials from Ellen Ahern while at an expert conference at K&E's D.C. offices. |
| (4) | 9/15/08 | $145.87 | UPS Dlvry to: KIRKLAND & ELLIS, LLP, WASHINGTON, D.C. from: Ellen T. Ahern | *We believe this is a charge for a second box of expert witness materials delivered to K&E's Washington, D.C. offices; however, we will agree to withdraw the charge pending investigation with UPS.* |

| (5) | 7/25/08 | $821.00 | Professional Fees - Expert Professional Services Fees Rendered July 234, 2008, Fees and expenses | The $821 professional fees shown in both rows (5) and (6) are not duplicates. They are separate charges for separate experts' time spent attending the same series of meetings held at Grace's headquarters on July 24th, 2008. |
| (6) | 7/28/08 | $821.00 | Professional Fees - Expert Professional Services Fees Rendered July 24, 2008, Fees and expenses | See the explanation in row (5) above. |
| (7) | 8/21/08 | $43.30 | Fed Exp to: Daniel Rooney, CHICAGO, IL from: Terrell (Brian) Stansbury | The charges listed in rows (7) - (12) are for deliveries of various defense team litigation and trial preparation materials sent by defense team member Brian Stansbury, of K&E's D.C. office, to K&E's Chicago defense team senior legal assistant. |
| (8) | 8/21/08 | $36.09 | Fed Exp to: Daniel Rooney, CHICAGO, IL from: Terrell (Brian) Stansbury | See the explanation in row (7) above. |
| (9) | 8/21/08 | $36.09 | Fed Exp to: Daniel Rooney, CHICAGO, IL from: Terrell (Brian) Stansbury | *We believe this is a charge for additional trial preparation materials sent by Brian Stansbury to Daniel Rooney; however, we will agree to withdraw the charge pending investigation with Federal Express.* |
| (10) | 8/21/08 | $43.30 | Fed Exp to: Daniel Rooney, CHICAGO, IL from: Terrell (Brian) Stansbury | *We believe this is a charge for additional trial preparation materials sent by Brian Stansbury to Daniel Rooney; however, we will agree to withdraw the charge pending investigation with Federal Express.* |
| (11) | 8/21/08 | $43.30 | Fed Exp to: Daniel Rooney, CHICAGO, IL from: Terrell (Brian) Stansbury | *We believe this is a charge for additional trial preparation materials sent by Brian Stansbury to Daniel Rooney; however, we will agree to withdraw the charge pending investigation with Federal Express.* |

| (12) | 8/21/08 | $36.09 | Fed Exp to: Daniel Rooney, CHICAGO, IL from: Terrell (Brian) Stansbury | *We believe this is a charge for additional trial preparation materials sent by Brian Stansbury to Daniel Rooney; however, we will agree to withdraw the charge pending investigation with Federal Express.* |
| (13) | 8/25/08 | $31.55 | Fed Exp to: Terrell (Brian) Stansbury, WASHINGTON, DC from: Sarah Whitney | The charges listed in rows (13) through (15) are for deliveries from K&E's Chicago office to the D.C. defense team of materials related to status conference preparations. |
| (14) | 8/25/08 | $31.55 | Fed Exp to: Terrell (Brian) Stansbury, WASHINGTON, DC from: Sarah Whitney | *We believe this is a charge for additional materials related to status conference preparations; however, we will agree to withdraw the charge pending investigation with Federal Express.* |
| (15) | 8/25/08 | $31.55 | Fed Exp to: Terrell (Brian) Stansbury, WASHINGTON, DC from: Sarah Whitney | *We believe this is a charge for additional materials related to status conference preparations; however, we will agree to withdraw the charge pending investigation with Federal Express.* |