# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **W.R. Grace & Co., et al.** | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |

**THIRTY-FIRST QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM OCTOBER 1, 2008 THROUGH DECEMBER 31, 2008**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **October 1, 2008 – December 31, 2008** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$557,387.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$20,499.56** |
| Fees and Expenses of the Asbestos Issues Expert: | |

This is an: ☒ interim ☐ final application

This is the thirtieth quarterly application filed.

## Attachment A

**Monthly Interim Fee Applications**

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002<br>D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock)<br>$43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002<br>D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock)<br>$114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002<br>D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock)<br>$11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002<br>D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock)<br>$5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002<br>D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock)<br>$771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002<br>D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock)<br>$1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003<br>D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003<br>D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003<br>D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003<br>D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock)<br>$1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003<br>D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003<br>D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock)<br>$2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003<br>D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock)<br>$3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003<br>D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock)<br>$61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003<br>D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock)<br>$14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |
| September 9, 2004 D.I. 6341 | 7/1/04 – 7/31/04 | $72,394.00 | $3,461.84 (Stroock) $40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |

3

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 23, 2004 D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004 D.I 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock) $27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004 D.I. 7086 | 10/1/04 – 10/31/04 | $200,155.50 | $1,368.18 (Stroock) $ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005 D.I. 7481 | 11/1/04 – 11/30/04 | $218,608.50 | $14,019.09 (Stroock) $25,102.80 (Navigant October) $27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005 D.I. 7667 | 12/1/04 – 12/31/04 | $235,503.70 | $10,442.92 (Stroock) $62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005 D.I. 8026 | 1/1/05 – 1/31/05 | $187,168.00 | $4,411.55 (Stroock) $15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005 D.I. 8155 | 2/1/05 – 2/28/05 | $108,180.25 | $8,102.85 (Stroock) $18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005 D.I. 8305 | 3/1/05 – 3/31/05 | $56,941.25 | $287.23 (Stroock) $6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005 D.I. 8562 | 4/1/05- - 4/30/05 | $127,695.00 | $3,531.45 (Stroock) $20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005 D.I. 8704 | 5/1/05- 5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |
| August 3, 2005 D.I. 9135 | 6/1/05- 6/30/05 | $114,903.75 | $4,871.74 (Stroock) $34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005 D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock) $2,211.00 (Navigant) | $94,224.60 | $4,299.44 |

NY 71979845v2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| October 4, 2005 D.I. 9565 | 8/1/05 – 8/31/05 | $106,796.25 | $5,046.99 (Stroock) $18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005 D.I. 10951 | 9/1/05 – 9/30/05 | $67,697.50 | $1,399.68 (Stroock) $11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005 D.I. 11202 | 10/1/05 – 10/31/05 | $98,216.75 | $1,611.30 (Stroock) $11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006 D.I. 11507 | 11/1/05 – 11/30/05 | $104,348.00 | $2,847.45 (Stroock) $71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006 D.I. 11655 | 12/1/05 – 12/31/05 | $96,855.00 | $1,379.53 (Stroock) $20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006 D.I. 11921 | 1/1/06 – 1/31/06 | $73.383.00 | $1,810.85 (Stroock) $14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006 D.I. 12134 | 2/1/06 – 2/28/06 | $105,083.75 | $1,434.62 (Stroock) $25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006 D.I. 12354 | 3/1/06 – 3/31/06 | $145,189.50 | $2,512.81 (Stroock) $25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006    DI. 12558 | 4/1/2006 – 4/30/2006 | $116,817.00 | $2,141.42 (Stroock) $7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006 D.I. 12748 | 5/1/2006 – 5/31/2006 | $121,304.50 | $1,838.71 (Stroock) $17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006 D.I. 12899 | 6/1/2006 – 6/30/2006 | $94,856.50 | $1,869.66 (Stroock) $38,548.75 (Navigant) | $75,885.20 | $40,418.41 |
| August 30, 2006 D.I. 13117 | 7/1/2006 – 7/31/2006 | $97,397.25 | $496.76 (Stroock) $30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006 D.I. 13336 | 8/1/2006 – 8/31/2006 | $131,856.25 | $98.34 (Stroock) $98,317.50 (Navigant) | $105,485.00 | $98,415.84 |
| November 2, 2006 D.I. 13559 | 9/1/2006 – 9/30/2006 | $150,960.00 | $4,147.01 (Stroock) $91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006 D.I. 13838 | 10/1/06 – 10/31/06 | $196,223.50 | $915.14 (Stroock) $147,374.20 (Navigant) | $156,978.89 | $148,289.34 |

NY 71979845v2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| January 12, 2007<br>D.I. 14292 | 11/1/06 –<br>11/30/06 | $188,638.00 | $3,370.16 (Stroock)<br>$133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007<br>D.I. 14415 | 12/1/06 –<br>12/31/06 | $99,832.00 | $5,752.89 (Stroock)<br>$55,245.22 (Navigant) | $79,865.60 | $60,998.11 |
| March 8, 2007<br>D.I. 14810 | 1/1/07 –<br>1/31/07 | $77,582.00 | $962.06 (Stroock)<br>$90,474.74 (Navigant) | $62,065.60 | $91,436.80 |
| April 10, 2007<br>D.I. 15132 | 2/1/07 –<br>2/28/07 | $119,140.50 | $3,092.88 (Stroock)<br>$77,301.25 (Navigant) | $95,312.40 | $80,394.13 |
| May 1, 2007<br>D.I. 15457 | 3/1/07 –<br>3/31/07 | $135,228.00 | $6,635.25 (Stroock)<br>$104,674.53 (Navigant) | $108,182.40 | $111,309.78 |
| June 22, 2007<br>D.I. 16136 | 4/1/07 –<br>4/30/07 | $177,646.00 | $815.81 (Stroock)<br>$173,437.45 (Navigant) | $142,116.80 | $174,253.26 |
| July 17, 2007<br>D.I. 16309 | 5/1/07 –<br>5/31/07 | $205,937.25 | $6,405.01 (Stroock)<br>$162,431.03 (Navigant) | $164,749.80 | $168,836.04 |
| August 10, 2007<br>D.I. 16528 | 6/1/07 –<br>6/30/07 | $225,650.50 | $5,929.97 (Stroock)<br>$200,294.81 (Navigant) | $180,520.40 | $206,224.78 |
| September 14, 2007<br>D.I. 16822 | 7/1/07 –<br>7/31/07 | $157,268.50 | $4,021.65 (Stroock)<br>$208,116.54 (Navigant) | $125,814.80 | $212,138.19 |
| October 1, 2007<br>D.I. 16959 | 8/1/07 –<br>8/31/07 | $145,866.50 | $3,354.61 (Stroock)<br>$210,152.54 (Navigant) | $116,693.20 | $213,507.15 |
| November 16, 2007<br>D.I. 17394 | 9/1/07 –<br>9/30/07 | $206,908.50 | $3,056.89 (Stroock) | $165,526.80 | $3,056.89 |
| December 5, 2007<br>D.I. 17548 | 10/1/07 –<br>10/31/07 | $288,976.50 | $22,324.58 (Stroock)<br>$325,509.63 (Navigant) | $231,181.20 | $303,185.05 |
| January 11, 2008<br>D.I. 17803 | 11/1/07 –<br>11/30/07 | $249,372.50 | $32,780.40 (Stroock)<br>$162,394.93 (Navigant) | $199,498.00 | $195,175.33 |
| February 1, 2008<br>D.I. 17957 | 12/1/07 –<br>12/31/07 | $116,522.50 | $57,717.92 (Stroock)<br>$47,444.43 (Navigant) | $93,218.00 | $105,162.35 |
| March 4, 2008<br>D.I. 18202 | 1/1/08 –<br>1/31/08 | $201,472.50 | $3,282.80 (Stroock)<br>$86,070.26 (Navigant) | $161,178.00 | $89,353.06 |

NY 71979845v2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| April 5, 2008<br>D.I. 18450 | 2/1/08 – 2/29/08 | $195,491.00 | $5,922.25 (Stroock)<br>$73,924.16 (Navigant) | $156,392.80 | $79,846.41 |
| April 29, 2008<br>D.I. 18639 | 3/1/08 – 3/31/08 | $275,659.00 | $11,217.17 (Stroock)<br>$69,201.53 (Navigant) | $220,527.20 | $80,418.70 |
| June 4, 2008<br>D.I. 18862 | 4/1/08<br>4/30/08 | $298,888.00 | $10,143.60 (Stroock)<br>$38,800.00 (Navigant) | $239,110.40 | $48,943.60 |
| July 1, 2008<br>D.I. 19032 | 5/1/08<br>5/31/08 | $138,683.50 [1] | $3,649.95 (Stroock) | $110,946.80 [2] | $3,649.95 |
| August 4, 2008<br>D.I. 19224 | 6/1/08<br>6/30/08 | $213,559.00 | $12,357.78 (Stroock)<br>$96.84 (Navigant) | $170,847.20 | $12,454.62 |
| September _, 2008<br>D.I. 19516 | 7/1/08<br>7/31/08 | $206,087.50 | $6,717.13 (Stroock)<br>$259.90 (Navigant) | $164,870.00 | $6,977.03 |
| September 30, 2008<br>D.I. 19653 | 8/1/08<br>8/31/08 | $212,928.50 | $2,326.65 (Stroock) | $170,342.80 | $2,326.65 |
| November 6, 2008<br>D.I. 19949 | 9/1/08<br>9/30/08 | $226,486.50 | $2,844.77 (Stroock) | $181,189.20 | $2,844.77 |
| December 2, 2008<br>D.I. 20168 | 10/1/08<br>10/31/08 | $270,097.00 | $10,611.52 (Stroock) | $216,077.60 | $10,611.52 |
| December 30, 2008<br>D.I. 20384 | 11/1/08<br>11/30/08 | $184,642.00 | $5,870.24 (Stroock) | $147,713.60 | $5,870.24 |
| February 3, 2009<br>D.I. 20654 | 12/1/08-12/31/08 | $102,648.50 | $4,017.80 (Stroock) | $82,118.80 | $4,017.80 |
| March 3, 2009<br><br>D.I. 20906 | 1/1/09<br>1/31/09 | $ | $ | | |

---

[1]    See paragraph 10 herein.

[2]    See paragraph 10 herein.

NY 71979845v2

**Quarterly Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43* | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[3] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[4] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]    These amounts relate to the Committee's Asbestos Issues Expert.

[3]    Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[4]    Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

NY 71979845v2

|  | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003 D.I. 3815 (Eighth) | 1/1/03 – 3/31/03 | $224,358.50 | $9,424.04 $1,077.80* | $224,615.50[5] | $9,424.04 (Stroock)[3] $1,077.80 (Chambers)[3] |
| August 29, 2003 D.I. 4357 (Ninth) | 4/1/03 – 6/30/03 | $215,903.50 | $2,726.28 $67,628.50* | $215,903.50[6] | $2,726.28 (Stroock)[4] $67,628.50 (Chambers)[4] |
| December 5, 2003 D.I. 4778 (Tenth) | 7/1/03 – 9/30/03 | $218,222.00 | $4,339.46 $36,865.19* | $218,222.00[7] | $4,339.46 (Stroock)[5] $36,865.19 (Chambers)[5] |
| March 2, 2004 D.I. 5212 (Eleventh) | 10/1/03 – 12/31/03 | $215,718.50 | $5,950.82 $100,349.50* | $215,718.50[8] | $5,922.67 (Stroock)[6] $100,349.50 (Chambers)[6] |
| May 18, 2004 D.I. 5597 (Twelfth) | 1/1/04 – 3/31/04 | $254,857.00 | $9,965.36 $83,147.07* | $254,857.00[9] | $9,965.36 (Stroock)[7] $83,147.07 (Navigant)[7] |
| August 26, 2004 D.I. 6269 (Thirteenth) | 4/1/04 – 6/30/04 | $353,629.50 | $7,760.42 $272,474.16* | $353,629.50[10] | $7,760.42 (Stroock)[8] $272,474.16 (Navigant)[8] |

---

[5]  Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[6]  Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[7]  Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[8]  Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[9]  Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[10]  Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

NY 71979845v2

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004<br>D.I. 6871<br>(Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08<br>$67,569.50* | $226,702.50[11] | $6,705.08 (Stroock)[9]<br>$67,569.50 (Navigant)[9] |
| February 22, 2005<br>D.I. 7851<br>(Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19<br>$140,422.11* | $648,355.70[12] | $25,830.19 (Stroock)[10]<br>$140,422.11 (Navigant)[10] |
| May 16, 2005<br>D.I. 8468<br>(Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23<br>$40,104.23* | $349,644.00 | $12,746.23 (Stroock)[13]<br>$40,104.23 (Navigant) |
| August 19, 2005<br>D.I. 9225<br>(Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40<br>$54,204.34* | $340,096.25[14] | $9,261.40 (Stroock)<br>$54,204.34 (Navigant) |
| November 18, 2005<br>D.I. 11118<br>(Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71<br>$31,958.50* | $291,843.50[15] | $8,534.71 (Stroock)<br>$31,958.50 (Navigant) |
| February 15, 2006<br>D.I. 11798<br>(Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28<br>$103,498.49* | $299,419.75[16] | $5,838.69 (Stroock<br>$103,498.49 (Navigant) |

---

[11]  Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[12]  Court Order dated June 29, 2005 approved fees in the amount of  $648,335.70 and expenses in the amount of $166,252.30.

[13]  Court  Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[14]  Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[15]  Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[16]  Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

NY 71979845v2

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 26, 2006 D.I. 12533 (Twentieth) | 1/1/2006 – 3/31/2006 | $323,566.25 | $5,758.28 $65,934.98* | $323,451.25[17] | $5,758.28 (Stroock) $64,810.58 (Navigant) |
| August 17, 2006 D.I. 13006 (Twenty-First) | 4/1/2006 – 6/30/2006 | $332,978.00 | $5,849.79 $63,467.50* | $332,978.00[18] | $5,849.70 (Stroock) $63,467.50 (Navigant) |
| November 29, 2006 D.I. 13835 (Twenty-Second) | 7/1/2006 – 9/30/2006 | $380,213.50 | $4,742.11 $219,776.61* | $380,213.50[19] | $4,742.11 (Stroock) $219,776.61 (Navigant) |
| March 1, 2007 D.I. 14717 (Twenty-Third) | 10/1/2007 – 12/31/07 | $484,693.50 | $10,038.19 $336,058.12* | $484,693.50[20] | $10,038.19 (Stroock) $336,058.12 (Navigant) |
| June 4, 2007 D.I. 15949 (Twenty-Fourth) | 1/1/07 - 3/31/07 | $331,950.50 | $10,690.15 $272,450.52* | $331,950.50[21] | $10,690.15 (Stroock) $272,450.52 (Navigant) |
| August 30, 2007 D.I. 16710 (Twenty-Fifth) | 4/1/2007 - 6/30/2007 | $609,233.75 | $13,150.79 $536,163.29* | $609,233.75[22] | $13,150.79 (Stroock) $536,163.29 (Navigant) |

---

[17]  Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the amount of $71,130.16.

[18]  Court Order dated December 18, 2006 approved fees in the amount of $332,978.00 and expenses in the amount of $69,317.29.

[19]  Court Order dated May 3, 2007 approved fees in the amount of $380,213.50 and expenses in the amount of $224,518.72.

[20]  Court Order dated June 20, 2007 approved fees in the amount of $484,693.50 and expenses in the amount of $346,096.31.

[21]  Court Order dated September 24, 2007 approved fees in the amount of $331,950.50 and expenses in the amount of $283,140.67.

[22]  Court order dated December 13, 2007 approved fees in the amount of $609,233.75 and expenses in the amount of $549,314.08.

11

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| December 12, 2007 D.I. 17625 (Twenty-Sixth) | 7/1/2007 – 9/30/2007 | $510,043.50 | $10,433.15 $418.269.08* | $508,758.50[23] | $10,433.15 (Stroock) $418,269.08 (Navigant) |
| March 5, 2008 D.I. 18222 (Twenty-Seventh) | 10/1/07 – 12/31/07 | $654,871.50 | $112,822.90 $535,348.99* | $654,871.50[24] | $112,650.85 (Stroock) $535,348.99 (Navigant) |
| May 27, 2008 D.I. 18789 (Twenty-Eighth) | 1/1/08 3/31/08 | $672,622.50 | $20,422.22 $229,195.95* | $672,622.50[25] | $20,422.22 (Stroock) $229,195.95 (Navigant) |
| August 27, 2008 D.I. 19386 (Twenty-Ninth) | 4/1/08 6/30/08 | $653,130.50 | $26,151.33 $38,896.84 | $653,130.50[26] | $26,151.33 (Stroock) $38,896.84 (Navigant) |
| December 5, 2008 D.I. 20207 (Thirtieth) | 7/1/08 – 9/30/08 | $645,502.50 | $11,888.55 $259.90 | | |

[23]  Court order dated March 12, 2008 approved fees in the amount of $508,758.50 and expenses in the amount of $428,702.23.

[24]  Court order dated June 23, 2008 approved fees in the amount of $654,871.50 and expenses in the amount of $647,999.84.

[25]  Court order dated October 1, 2008 approved fees in the amount of $672,622.50 and expenses in the amount of $249,618.17.

[26]  Court order dated December 17, 2008 approved fees in the amount of $653,130.50 and expenses in the amount of $65,048.17.

12

**WR GRACE & CO**

**ATTACHMENT B**

**OCTOBER 1, 2008 - DECEMBER 31, 2008**

|  | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** |  |  |  |  |
| Greenberg, Mayer | 0.8 | $825 | $      660.00 | 19 |
| Kruger, Lewis | 58.0 | 945 | 54,810.00 | 39 |
| Pasquale, Kenneth | 149.2 | 775 | 115,630.00 | 9 |
| Speiser, Mark A. | 0.4 | 900 | 360.00 | 21 |
|  |  |  |  |  |
| **Associates** |  |  |  |  |
| Berg, Madelaine | 11.9 | 650 | 7,735.00 | 28 |
| Gutierrez, James S. | 38.6 | 490 | 18,914.00 | 5 |
| Harris, Daniel J. | 73.9 | 295 | 21,800.50 | 1 |
| Krieger, Arlene G. | 477.9 | 650 | 310,635.00 | 24 |
| Lawrence, Anna M | 2.5 | 295 | 737.50 | 1 |
|  |  |  |  |  |
| **Paraprofessionals** |  |  |  |  |
| Cohen, Reuben H. | 4.7 | 235 | 1,104.50 | 1 |
| De Pinto, Lauren M. | 4.5 | 235 | 1,057.50 | 3 |
| Holzberg, Ethel H. | 92.4 | 270 | 24,948.00 | 36 |
| Magzamen, Michael S. | 0.4 | 270 | 108.00 | 6 |
| Mohamed, David | 106.5 | 175 | 18,637.50 | 19 |
|  |  |  |  |  |
| **Sub Total** | **1,021.7** |  | **$  577,137.50** |  |
| **Less 50% Travel** | **(27.4)** |  | **(19,750.00)** |  |
| **Total** | **994.3** |  | **$  557,387.50** |  |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## THIRTY-FIRST QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM OCTOBER 1, 2008 THROUGH DECEMBER 31, 2008

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA  Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection

therewith, respectfully represents as follows:

## INTRODUCTION

1.      By this application (the "Application"), Stroock seeks (i) an interim allowance of

compensation for the professional services rendered by Stroock as counsel for the Committee for

the period from October 1, 2008 through December 31, 2008 (the "Compensation Period") in the

aggregate amount of $557,387.50 representing 813.2 hours of professional services and 208.5

hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses

incurred by Stroock during the Compensation Period in connection with the rendition of such

professional services and paraprofessional services in the aggregate amount of $20,499.56.


2.      Venue of this proceeding and this Application is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C.

§§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.


## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary

petitions for reorganization under chapter 11 of the Bankruptcy Code and has continued in the

management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been

procedurally consolidated and are being jointly administered.


4.      The Debtors operate a worldwide specialty chemicals and materials business and

employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal

year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues.  The

Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales

are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor

subsidiaries and affiliates.

     5.     On April 12, 2001, the United States Trustee formed the Committee.  During the

first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its

counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter

11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP

(n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  On December 3, 2003, the

United States Trustee filed a second amended notice of appointment of the Committee.  On July

10, 2006, the United States Trustee filed a third amended notice of appointment of the

Committee.

     6.     The United States Trustee also appointed two separate official committees to

represent the interests of claimants asserting asbestos-related personal injury claims (the "ACC")

and asbestos-related property damage claims (the "PD Committee") against the Debtors

(collectively, the "Asbestos Claim Committees").  On June 18, 2001, the United States Trustee

appointed an official committee to represent the interests of equity security holders of the

Debtors (the "Equity Committee").

     7.     By order dated May 24, 2004, the Court authorized the appointment of a legal

representative for future asbestos personal injury claimants (the "PI FCR").  By order dated

---

[2]    The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related
charge to earnings recorded in the fourth quarter of 2000.

October 20, 2008, the Court authorized the appointment of a legal representative for future

asbestos property damage claimants (the "PD FCR").

8.      By application dated May 1, 2001, Stroock sought Court approval for its retention

as counsel to the Committee nunc pro tunc to April 12, 2001.  The Court signed an order

approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.      This is the thirty-first quarterly interim application Stroock has filed with the

Court for an allowance of compensation and reimbursement of expenses for services rendered to

the Committee.  This Application is submitted pursuant to the terms of the Administrative Order

Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement

of Expenses for Professionals and Official Committee Members, approved by the Court on

May 3, 2001 as amended by order dated April 17, 2002 (collectively, the "Administrative Fee

Order").

10.      In accordance with the procedures established by the Administrative Fee Order,

Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of

the fees and 100% of Stroock's expenses requested, and not objected to, in the October 2008 and

November 2008 fee statements.  Stroock has not received payment for the fees and expenses

requested in the December 2008 fee statement for which a certificate of no objection has been

filed.  Applicant has received no other payments and no promises for payment from any source

for services rendered in connection with these cases for the months encompassing this

Compensation Period other than as immediately set forth above.  There is no agreement or

understanding between the Applicant and any other person (other than members of Stroock) for

the sharing of compensation to be received for the services rendered in these cases.

NY 71979845v2

11.     As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.     Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates.  The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13.     Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee.  Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006.  A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B".  In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

5

14.     Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection.  A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

15.     Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

16.     The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B".  Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17.     As reflected in prior compensation applications, in mid-November 2004, the Debtors filed a reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for carrying out the estimations (the "Estimation Motion"), and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims.

18.     The Court subsequently approved a form of case management order to govern the pre-confirmation estimation of asbestos personal injury claims (the "PI CMO") and several

6

amendments thereto (the "Amended PI CMOs") and the related form of questionnaire (the

"Questionnaire") to be used by asbestos personal injury claimants who had commenced pre-

petition litigation against the Debtors (the "PI Pre-Petition Litigation Claimants"), and two case

management orders for property damage claims (as amended, the "PD CMOs"); one to govern

the Debtors' claims objection process and the other to govern the pre-confirmation estimation of

property damage claims ("PD Claims").  The Amended PI CMOs established pre-trial dates and

deadlines and trial dates to govern the estimation of asbestos personal injury claims (the "PI

Estimation").  At least 35 expert and fact witness depositions were held prior to the

commencement of the PI Estimation trial in prior compensation periods.

        19.     On April 7, 2008, the Debtors informed the Court that they had reached an

agreement with the ACC, the PI FCR and the Equity Committee (collectively, the "Plan

Proponents") on a resolution of the Debtors' present and future asbestos liabilities (the

"Proposed PI Resolution") and made public a term sheet (the "Term Sheet") setting forth terms

of such parties' proposed treatment of classes of claims and equity holders to be embodied in a

plan of reorganization to be filed with the Court.  As a result of the Proposed PI Resolution of the

Debtors' asbestos personal injury liabilities (the "Proposed Asbestos Resolution"), the PI

Estimation trial was suspended, subject to being restarted if the Proposed PI Resolution fell apart

or a plan embodying the Term Sheet was not confirmed.  The Debtors and the Plan Proponents

filed a plan (the "Plan") embodying the Term Sheet and related disclosure statement (the

"Disclosure Statement") on September 19, 2008.

        20.     During this Compensation Period, the Debtors informed the Court that they had

reached an agreement in principle with counsel for the US ZAI PD Claimants, the Asbestos PD

FCR and the Equity Committee to resolve all of the Debtors' US ZAI property damage claims

7

pending as of the Chapter 11 filing date and all such claims asserted thereafter.  Stroock

reviewed the ZAI Term Sheet and prepared a memorandum for the Committee on the terms of

the agreement.  Stroock also reviewed and communicated with the Committee on the motion

filed seeking to have the Court establish a bar date for Canadian PD Claims and approve the

related notice and forms.

21.    In addition, Stroock reviewed the separate motions the Debtors filed seeking

authority to settle PD Claims asserted by the Children's Hospital of Pittsburgh and the Regents

of the University of California.  Stroock communicated with Debtors' counsel to obtain

additional information and support for the proposed settlements and, after obtaining such

information, prepared memoranda for the Committee discussing the settlements.  Further during

this Compensation Period, Stroock attended to the memorandum decisions and related orders

issued by Judge Fitzgerald with respect to the PD Claims asserted by the California Department

of General Services and the summary judgment motion filed by Macerich Fresno Limited

Partnership.  Stroock has expended 6.8 hours on this category for a fee of $4,420.00.

### Asset Analysis and Recovery – Category 0008

22.    During this Compensation Period, the Debtors filed a motion seeking

authorization to sell their limited partnership interests in Colowyo Coal Company L.P. (the

"Colowyo Transaction").  Stroock spoke with Debtors' in house counsel regarding this matter,

attended to the motion, the limited partnership agreement, the purchase and sale agreement and

all other related documents and further attended to and discussed with counsel the limited

objection filed to the transaction.  As reflected elsewhere in this Application, certain of the

services rendered by Stroock in connection with this matter are reflected in Category 0009 –

NY 71979845v2

Asset Analysis and Recovery.  Stroock has expended 2.9 hours on this category for a fee of $1,885.00.

### Asset Dispositions, Sales, Uses and Leases (Section 363) – Category 0009

23.    During this Compensation Period, the Debtors filed a motion seeking authorization to sell certain land and other assets to Alco Iron & Metal Co. ("Alco Iron"). Stroock reviewed the motion, the asset purchase agreement and other related transaction documents, discussed the proposed transaction and prepared an information request with Capstone for the Debtors, attended to and discussed the transaction and the subsequent amendment to the transaction with Debtors' counsel and other representatives for Grace, reviewed Capstone's memorandum on the transaction for the Committee and prepared a supplemental memorandum for the Committee addressing the amendments to the transaction as it was initially discussed.  Also during this Compensation Period, the Debtors filed a motion seeking approval for their sale to the City of Charleston of Debtors' property located within the City, which property was the subject of the City's still pending motion for stay relief.  Stroock reviewed the sale motion and related appraisal and discussed the financial and environmental related terms of the sale with Debtors' counsel.  As already reported in this Application, during this Compensation Period, Stroock rendered services in connection with the Colowyo Transaction, certain of which services are reflected in this category.  Stroock has expended 21.7 hours on this category for a fee of $14,105.00

### Business Operations -- Category 0013

24.    During this Compensation Period, Stroock attended to Capstone's draft report to the Committee on the Debtors' second quarter 2008 operations and discussed the same with Capstone.  Stroock has expended 1.4 hours on this category for a fee of $910.00.

NY 71979845v2

**Case Administration -- Category 0014**

25.    As reported in prior monthly compensation applications, these chapter 11 cases were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L. Buckwalter following Judge Wolin's recusal from these cases.

26.    During this Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the increasing number of pending adversary proceedings and appeals, to ensure that the Committee was fully informed about all pending motions, adversary proceedings and appeals and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable.  Stroock continued to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests.  Stroock has expended 153.5 hours on this category for a fee of $35,596.00.

**Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015**

27.    As reported in prior compensation applications, the Debtors filed an objection to the proofs of claim filed by the agent bank on behalf of holders of bank debt under the Debtors' two $250 million pre-petition Credit Agreements, focusing on the bank debt holders' unsecured claims for post-petition interest at the default rate (the "Debtors' Objection").  The Committee, which includes in its constituency the holders of bank debt, discussed the Debtors' Objection and determined to file a response in opposition to it.

28.    During the prior compensation period, Stroock rendered substantial services on behalf of the Committee in connection with the litigation resulting from the Debtors' Objection.

10

Stroock completed the Committee's response to the Debtors' Objection, reviewed the separate responses filed by certain bank debt holders (the "Bank Lender Group") and the Equity Committee, participated in meet and confer conference calls with Debtors' counsel and representatives of other parties regarding discovery-related issues, reaching agreement with all parties on a stipulation to govern pre-trial discovery and engaged in substantial discovery with respect to the Debtors' Objection.  Stroock also participated in a settlement meeting attended by representatives of all interested parties, which did not result in a resolution of the Debtors' Objection.  In advance of the September 29, 2008 argument on the Debtors' Objection, Stroock reviewed the evidentiary record and issues and prepared its presentation to the Court.

29.    During the September 29, 2008 argument, the Court directed the parties to engage in a settlement conference prior to the next omnibus hearing.  During this Compensation Period, Stroock prepared for and attended a settlement meeting with representatives for the Debtors; the Equity Committee and the Bank Lender Group in mid-October 2008.  Stroock also engaged in discussions with Debtors' counsel and other parties in interest regarding the submission of exhibits and other evidentiary issues relating to the September 29, 2008 argument before the Court.

30.    Also during this Compensation Period, the Debtors filed a notice seeking authority for a settlement they had reached resolving the claims of their estates against the chapter 11 estate of L. Tersigni Consulting and other parties.  Stroock reviewed the proposed settlement, obtained additional information regarding the settlement from Debtors' counsel and prepared a memorandum for the Committee discussing the settlement.  Stroock has expended 22.7 hours on this category for a fee of $16,808.00.

**Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017**

31.    During this Compensation Period, Stroock communicated with the members of the full Committee through numerous memoranda, telephone and conference calls.  In order to keep the Committee fully informed of all of the pending matters in these cases, and thus enable the Committee to take informed positions on those issues, Stroock reviewed and summarized the motions, other pleadings and notices filed by the Debtors and other parties in interest in these cases and the objections and responses filed, raised issues the Committee should be aware of, made recommendations to the Committee concerning appropriate actions to be taken with regard to the pleadings and communicated with members of the Committee regarding the positions to be taken.  In addition, Stroock engaged counsel and other representatives for the Debtors, and other parties and movants, as applicable, with the Committee's questions, concerns and comments, negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders, stipulations and settlement agreements.

32.    As already reported in the Application, during this Compensation Period, Stroock rendered services in connection with the default interest litigation, including its preparation for and attendance at a settlement meeting.  Certain of Stroock's services with respect to communicating with the Committee regarding the settlement meeting are reflected in this category.  Also as reported in this Application in Category 0036,  Stroock rendered substantial services in connection with the numerous drafts of the Disclosure Statement, the Plan and related Plan Documents filed by the Debtors and other Plan Proponents.  Certain of the services rendered by Stroock in communicating with the Committee about these matters and in connection with its preparation of pleadings on behalf of the Committee are reflected in this category.

33.     In addition, during this Compensation Period, Stroock prepared memoranda to the Committee discussing the hearings held before Judge Fitzgerald and the rulings issued by the Court and addressing the many pleadings and other materials filed with the Court and the District Court on appeal.  In addition to the default interest litigation and Disclosure Statement and Plan– related matters, the matters addressed in these memoranda included (i) the Debtors' motion seeking to establish abar date for Canadian ZAI Claimants and the terms of the settlement addressing the treatment of such claims in the Plan, (ii) the Debtors' separate motions seeking approval of settlements of property damage claims asserted by Children's Hospital of Pittsburgh and the Regents of the University of California, (iii) the terms of the agreement in principle reached with the Us ZAI PD Claimants addressing the treatment of their claims under the Plan, (iv) the Debtors' motion for approval of a stipulation with Tyco Healthcare Group LP ("Tyco") resolving its claims for past and future response costs under CERCLA for environmental remediation of property relating to a superfund site located in Massachusettes (the "Tyco Settlement") and (iv) the modification being made to certain of the initial terms of the Alco Iron transaction as described in the Debtors' motion and previously discussed with the Committee.

34.     Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases, to participate in those proceedings and matters and in the confirmation of a plan providing appropriate treatment for the creditors represented by the Committee.  Stroock has expended 79.2 hours on this category for a fee of $53,469.50.

13

**Fee Application, Applicant -- Category 0018**

35.     During this Compensation Period, Stroock prepared its fee statements for the

months of September 2008, October 2008 and November 2008 and related notices, affidavits of

service and certifications of no objection where applicable.  Stroock also prepared its Thirtieth

Quarterly Fee Application covering the period from July 1, 2008 through September 30, 2008

(the "prior compensation application"), including a narrative section summarizing the services

rendered during that period by Stroock and numerous fee and expense schedules, as required by

the Administrative Fee Order entered by the Court.  Stroock has expended 74.8 hours on this

category for a fee of $28,608.00.

**Creditor Inquiries -- Category 0019**

36.     During this Compensation Period, Stroock responded to inquiries from unsecured

creditors with respect to the status of these cases, the Plan, Disclosure Statement and

confirmation process, the post-petition interest litigation before the Court and exit financing,

among other matters.  Stroock has expended 5.2 hours on this category for a fee of $4,012.50.

**Fee Application, Others -- Category 0020**

37.     During this Compensation Period, Stroock prepared notices, affidavits of service

and certifications with respect to Capstone's monthly fee statements for the months of July 2008,

August 2008 and September 2008 and with respect to Capstone's 18th and 19th quarterly interim

fee applications.  Stroock also attended to fee applications of other professionals retained in these

cases.  Stroock has expended 18.4 hours on this category for a fee of $6,830.00.

14

### Environmental Matters/Regulations/Litigation -- Category 0022

38.    During this Compensation Period, the Debtors filed a motion seeking approval for

a stipulation resolving the claim asserted by Tyco for past and future response costs for

environmental remediation of a superfund site.  Stroock reviewed the proposed settlement, the

related proof ocf claim and other documentation, prepared a request for additional information

for the Debtors and communicated with and participated in conference calls with Debtors'

representatives discussing issues and concerns raised by the proposed Tyco settlement.  Stroock

prepared two memoranda for the Committee discussing this matter.  In addition, as already

described in the Application, the Debtors sought approval for the sale of certain property to Alco

Iron and for approval of the sale of certain real property to the City of Charleston.  Reflected in

this category are services Stroock rendered in attending to environmental issues and potential

claims and liabilities raised by each of these transactions and in discussing its questions and

concerns on these matters with Debtors' counsel.  Stroock has expended 24.4 hours on this

category for a fee of $15,860.00.

### Litigation (Non-Bankruptcy/General) – Category 0032

39.    During this Compensation Period, the Debtors filed a motion seeking to void

actions taken by Maricopa County, Arizona against property owned in the County by the

Debtors.  Stroock reviewed the pleading and the related subsequent stipulation filed by the

parties and Maricopa's response to Debtors' motion.  Stroock has expended 1.4 hours on this

category for a fee of $910.00.

### Travel – Non Working -- Category 0035

40.    Stroock's fees in this category during this Compensation Period relate to Stroock

attorneys traveling (i) to and from Wilmington, DE for the omnibus hearing before Judge

Fitzgerald on October 20, 2008 and (ii) to and from Pittsburgh, PA for (a) the Disclosure

Statement-related hearings on October 27, 2008 and November 14, 2008 and (b) the omnibus

hearings, including Disclosure Statement and Plan confirmation scheduling and process-related

matters, on November 24, 2008 and December 15, 2008 before Judge Fitzgerald.  Stroock has

expended 54.8 hours on this category for a fee of $39,500.00 for which Stroock is seeking

payment in the amount of $19,750.00.

### Plan and Disclosure Statement -- Category 0036

41.     As reported in the prior compensation application, towards the latter part of that

compensation period, the Debtors filed a plan of reorganization embodying the Proposed PI

Resolution and the Term Sheet the Debtors reached with the Plan Proponents.  Stroock began its

review of the initial drafts of the Plan and related Disclosure Statement focusing on those terms

and provisions affecting the treatment of general unsecured creditors, communicated with the

Committee and Capstone regarding the Plan documents and began to identify possible objections

to the Plan documents.

42.     During this Compensation Period, Stroock reviewed each of the many revised

drafts of the Disclosure Statement and the Plan, including all exhibits thereto, and the revised

drafts of the solicitation, voting and confirmation procedures' orders, notices and related

documents (collectively, the "Plan Documents") identifying issues and concerns with respect to

the treatment of general unsecured creditors in Class 9, continuously advocated its comments and

proposed modifications on the Plan Documents to Debtors' counsel, communicated with the

Committee and reviewed relevant case law.  Stroock also prepared several pleadings during this

Compensation Period.  These included the preparation of the Committee's (i) comprehensive

objection to the adequacy of the then current form of the Disclosure Statement, (ii) preliminary

16

objection to confirmation of the Plan and (iii) response to the Plan Proponents' designation of

Phase I confirmation issues.  Stroock also reviewed and commented on the drafts of the case

management orders proposed to govern the confirmation process.  Also, during this

Compensation Period, Stroock reviewed the objections filed by other parties to the Court's

approval of the Disclosure Statement and confirmation of the Plan and reviewed the responses

filed by the Debtors' and the other Plan Proponents.  Stroock expended 480.8 hours on this

category for a fee of $300,170.50.

### Hearings -- Category 0037

43.    During this Compensation Period, Judge Fitzgerald held five hearings, all but one

of which took place in Pittsburgh, PA.  Two of the hearings considered only objections relating

to the Disclosure Statement and/or the confirmation schedule and process.  Three of the hearings

were omnibus hearings, but even these hearings considered matters relating to a confirmation

schedule and process and Disclosure Statement objections.  Other matters considered or

discussed at the omnibus hearings included a status conference on the default interest litigation,

the agreement in principle reached with representatives for the US ZAI PD Claims to be

embodied in the Plan, and argument on matters involving the claims of Anderson Memorial

Hospital.  Stroock reviewed each of the agenda notices and all relevant pleadings, orders,

stipulations, and other documentation in advance of these hearings and participated in a number

of conference calls discussing these matters, as applicable.  Stroock prepared for and attended the

hearings, and advocated the Committee's positions, as appropriate.  After the hearings, Stroock,

as reflected elsewhere in this Application, prepared memoranda informing the Committee of the

arguments made at the hearings and, where applicable, the Court's rulings.  Stroock expended

71.4 hours on this category for a fee of $52,418.00.

**Tax Issues – Category 0047**

44.    As reflected elsewhere in this Application, during this Compensation Period, the Debtors sought approval for the Colowyo Transaction.  Stroock rendered services in this category in connection with its review of the tax aspects of the motion and related documentation, and engaged in a conference call with Debtors' representatives and Capstone regarding this matter for the Committee.  Stroock expended 2.3 hours on this category for a fee of $1,635.00.

**FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES**

45.    The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts.  Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

The Time and Labor Required.  The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch.  Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends.  The services rendered by Stroock were performed efficiently, effectively and economically.

18

The Novelty and Difficulty of Questions.  Novel and complex issues have

already arisen in the course of these Chapter 11 cases, and it can be

anticipated that other such issues will be encountered.  In this case, as in

many others in which the firm is involved, Stroock's effective advocacy

and creative approach have helped clarify and resolve such issues and will

continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly.  Stroock

believes that its recognized expertise in the area of corporate

reorganization, its ability to draw from highly experienced professionals in

other areas of Stroock's practice, and its creative approach to the

resolution of issues, are and will continue to contribute to the

maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of

the Case.  Due to the size of Stroock's insolvency department, Stroock's

representation of the Committee has not precluded its acceptance of new

clients.  However, the volume of the matters needing attention on a

continuing basis has required several of the attorneys to commit

significant portions of their time to these cases.

The Customary Fee.  The fee sought herein is based upon Stroock's

normal hourly rates for services of this kind.  Stroock respectfully submits

that the fee sought herein is not unusual given the magnitude and

complexity of these cases and the time expended in attending to the

19

representation of the Committee, and is commensurate with fees Stroock

has been awarded in other cases, as well as with fees charged by other

attorneys of comparable experience.

Whether the Fee is Fixed or Contingent.  Pursuant to §§ 330 and 331 of

the Bankruptcy Code, all fees sought by professionals employed under

§ 1103 of the Code are contingent pending final approval by this Court,

and are subject to adjustment dependent upon the services rendered and

the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already

indicated, Stroock has attended to the various issues arising in these cases.

Occasionally, Stroock has had to perform those services under significant

time constraints requiring attorneys assigned to these cases to work

evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of

Stroock, the Committee has been an active participant in these Chapter 11

cases from the very first days of its formation, and its assistance, as well as

constructive criticism, has greatly contributed to the efficient

administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one

of the largest and most sophisticated insolvency practices in the nation and

has played a major role in numerous cases of national import including:

Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel

20

Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings. Stroock's experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation, ERISA, tax, environmental and intellectual property law areas to perform the wide ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

Nature and Length of Professional Relationship.  As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

21

### ALLOWANCE OF COMPENSATION

46.    The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

47.    With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person.  11 U.S.C. § 330.  Section 330 further states that the court should take into consideration, <u>inter alia</u>, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title.  <u>Id.</u> The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

48.    The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 1,021.7 hours.  Such services have a fair market value of $557,387.50.  The work involved, and thus the time expended, was carefully assigned in light of the experience, expertise and familiarity with the issues in these cases required for a particular task.

NY 71979845v2

49.     As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

50.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $20,499.56 for which Stroock respectfully requests reimbursement in full. The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters. Stroock has endeavored to minimize to the fullest extent possible those expenses incurred to enable Stroock to devote time beyond normal office hours to matters that imposed extraordinary time demands. Attached hereto as Exhibit "D" is a summary chart reflecting each category of disbursement for which Stroock seeks reimbursement.

51.     Stroock's billing rates do not include charges for photocopying, telephone and telecopy toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postag e and certain other office services, because the needs of each client for such services differ. Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

52.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

53.    No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

54.    Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

55.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order:

>the allowance of compensation for professional services rendered to the Committee during the period from October 1, 2008 through and including December 31, 2008 in the amount of $557,387.50, for which Stroock seeks payment;

>the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from October 1, 2008 through and including December 31, 2008 in the amount of $20,499.56;

NY 71979845v2

authorizing and directing the Debtors to pay to Stroock each of the amounts set

forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid

pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       March 6, 2008

                           STROOCK & STROOCK & LAVAN LLP

                           Lewis Kruger
                           Kenneth Pasquale
                           Members of the Firm
                           180 Maiden Lane
                           New York, New York 10038-4982
                           (212) 806-5400

                           Co-Counsel for the Official Committee of
                           Unsecured Creditors of W. R. Grace & Co., et al.

25