THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Re: Docket No. 18847** |

**Objection Deadline: April 10, 2009 at 4:00 p.m.**
**Hearing Date: April 27, 2009 at 10:30 a.m.**

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING STIPULATIONS RESOLVING PROOFS OF CLAIMS OF CERTAIN PRP GROUP/ENTITIES PURSUANT TO THE EPA MULTI-SITE AGREEMENT**

The Debtors respectfully move this Court (the "Motion") for the entry of an order approving the stipulations resolving certain claims of American Premier Underwriters, Inc. ("APU") and the National Railroad Passenger Corporation ("Amtrak" and together with APU the "Claimants"). The Claimants and the Debtors have entered into stipulations (the "Stipulations") resolving claims 10585 and 11320 (the "Proofs of Claim") pursuant to the *Settlement Agreement*

---

1 The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

*Resolving the United States' Proofs of Claim for Certain Environmental Matters* (the "EPA Multi-Site Agreement"), a copy of which is attached as Exhibit A hereto. In support of the Motion, the Debtors state the following:

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for this Motion are section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9019.

**Background and Proofs of Claim**

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. On or about March 28, 2003, the United States[2] on behalf of the Environmental Protection Agency, the United States Department of Agriculture Forest Services, and the Army Corps of Engineers, filed its proofs of claim numbered 9634 and 9635 (the "Proofs of Claim") relating to the obligations and liabilities of Grace arising from environmental contamination at numerous sites around the country.

5. Proof of Claim No. 9634 seeks cost recovery and injunctive relief in connection with environmental remedial liability at 32 sites and at unspecified future sites. The Debtor-

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Settlement Agreement.

owned sites named in Claim No. 9634 include both closed and operating facilities. The non-Debtor-owned sites named in Claim No. 9634 consist primarily of multi-party Superfund sites at which Grace has varying degrees of involvement.

6. On March 31, 2003, Amtrak filed a claim against the Debtors, which the Debtors' claims agent has numbered 11320, with respect to the Hamilton Township Site in Trenton, NJ for unspecified damages for environmental remediation response costs.

7. On March 31, 2003, APU filed a claim against the Debtors, which the Debtors' claims agent has numbered 10585, with respect to the Hamilton Township Site in Trenton, NJ for unspecified damages for environmental remediation response costs.

8. On May 14, 2008, the Debtors and the United States of America entered into the EPA Multi-Site Agreement (Exhibit A to Dkt. No. 18847).

9. On June 2, 2008, the Court approved the EPA Multi-Site Agreement by its *Order Authorizing Settlement Agreement Resolving the United States' Proof of Claim Regarding Certain Environmental Matters* (Dkt. No. 18847).

10. The EPA Multi-Site Agreement provides that certain claimants who qualify as a PRP Group/Entity are entitled to receive payments or distributions from the Debtors if by the effective date of the Debtors' plan of reorganization such claimants agree in writing that all liabilities and obligations for the site that have been or ever could be asserted by the PRP Group/Entity (or any of its individual members where the PRP Group/Entity is a group of potentially responsible parties) against the Debtors are discharged and satisfied by the allowed claim provided for in the EPA Multi-Site Agreement.

11. In accordance with the EPA Multi-Site Agreement, the Debtors and certain claimants qualifying as a PRP Group/Entity in the EPA Multi-Site Agreement have entered into stipulations resolving claims against the Debtors.

12. Pursuant to the *Amended Order Authorizing and Approving An Omnibus Procedure For Settling Certain Claims And Causes Of Action Brought By Or Against The Debtors In a Judicial, Administrative, Arbitral Or Other Action Or Proceeding* (the "Amended Order") (Dkt. No. 936), the Debtors are authorized to settle claims that exceed $1,000,000 only upon separate order of the Court upon a motion of the Debtors served upon the necessary parties-in-interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

13. Therefore, pursuant to the EPA Multi-Site Agreement and the Amended Order, the Debtors hereby move this Court for approval of the stipulations attached hereto as Exhibit B and Exhibit C.

**Relief Requested**

14. By this Motion, the Debtors respectfully seek the entry of an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Debtors' execution of the Stipulations and (ii) allowing claims 10585 and 11320 in the sums provided for in the Stipulations.

**Stipulations**

15. The Debtors and APU have entered into a stipulation. a copy of which is attached hereto as Exhibit B, allowing claim 10585 as an unsecured, pre-petition, non-priority claim against the chapter 11 estates of the Debtors in the total amount of $1,686,971.45, which is consistent with the EPA Multi Site Agreement but also reflects a negotiated credit with a contractor with whom APU and Amtrak had a dispute related to performance of remedial

services. This claim shall be paid in the same matter as all other similarly situated General Unsecured Claims pursuant to the confirmed chapter 11 plan or plans with respect to the Debtors, except with respect to the payment of interest as described in the stipulation. This claim shall be paid in the same matter as all other similarly situated General Unsecured Claims pursuant to the confirmed chapter 11 plan or plans with respect to the Debtors, except with respect to the payment of interest as described in the stipulation.

16. The Debtors and Amtrak have entered into a stipulation. a copy of which is attached hereto as Exhibit C, allowing claim 11320 as an unsecured, pre-petition, non-priority claim against the chapter 11 estates of the Debtors in the total amount of $1,452,029.34, which again is consistent with the EPA Multi Site Agreement but also reflects a negotiated credit with a contractor with whom APU and Amtrak had a dispute related to performance of remedial services. This claim shall be paid in the same matter as all other similarly situated General Unsecured Claims pursuant to the confirmed chapter 11 plan or plans with respect to the Debtors, except with respect to the payment of interest as described in the stipulation.

**Basis for Relief**

**Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a)**

17. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. Pro. 9019(a).

18. Courts generally favor minimizing litigation and expediting the administration of a bankruptcy case. See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., 2006 WL 2842462, at *3 (D. Del. 2006). Settlements and

compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Indeed, compromises are favored in bankruptcy. Martin, 91 F.3d at 393.

19. Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See id. at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

20. The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. at 393; see also In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006).

21. It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a

proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 1114 (citations omitted).

**Application of Standards for Approval of a Settlement to the Facts of This Case**

22. The Debtors have determined that entry into the Stipulations is in the best interests of the Debtors and their estates and serves a public interest. The Stipulations are fair and reasonable, are within the reasonable range of litigation possibilities and are simply implementing the terms of the EPA Multi-Site Agreement that this Court has previously approved.

23. The Stipulations prevent the incurrence of significant transaction costs and cost-effectively resolves significant environmental liabilities of the Debtor. The court's approval of the Stipulations will resolve the claims of APU and Amtrak with respect to certain sites in the EPA Multi-Site Agreement without forcing litigation.

24. Furthermore, the Stipulations allow the Debtors to avoid potential additional or increased obligations. The Stipulations will preclude any future claim concerning the Debtors' responsibility regarding remediation or other liability with respect to the Liquidated Sites (as defined in the EPA Multi-Site Agreement) and will constitute a final resolution of the Debtors' liability relating thereto.

25. Finally, approval of the Stipulations benefits the public. Approval of the Stipulations will support the remediation of the sites. The Stipulations provide assurance to the creditors that environmental liabilities associated with the sites are fully addressed. Clearly, the resolution of environmental claims at the Liquidated Sites and support for the remediation of sites serve the public interest.

26. For the above reasons, the Debtors believe that the Stipulations represent a reasonable settlement of the Proofs of Claim and the Court should approve the Stipulations.

## Conclusion

27. The Stipulations are fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest. In addition, the Debtors reasonably believe that the relief requested in this Motion will aid in the expeditious resolution of these Chapter 11 Cases. Accordingly, the Debtors have demonstrated a sound business justification and public interest for the execution and consummation of the Stipulations.

## Notice

28. Notice of this Motion has been given to: (i) the office of the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in these Chapter 11 Cases, (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; (vii) counsel to the United States, (ix) counsel to APU; and (x) counsel to Amtrak. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully seek the entry of an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Debtors' execution of the Stipulations; (ii) allowing claims 10585 and 11320 in the sums provided for in the Stipulations and (iii) granting such other relief as may be appropriate.

Dated: March 10, 2009

KIRKLAND & ELLIS LLP
Theodore L. Freedman
153 East 53rd Street
New York, New York 10022
(212) 446-4800

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession