(c) Subject to the terms, conditions and limitations of this Article, OLP shall indemnify and hold harmless all of the Grace Entities from and against any and all Damages caused by or arising out of obligations or liabilities of any of the Corporations for which any of the Grace Entities is liable, except obligations or liabilities which constitute a breach of any representation or warranty of GEC in Article 6 or any Ancillary Agreement or the certificate described in Section 11.06 (without reference for this purpose to the exception contained in clause (i) of Section 11.06).

13.03 <u>Indemnification by GEC</u>.   (a)   Subject to the terms, conditions and limitations of this Article, GEC shall indemnify OLP (and, while they are controlled by OLP or any affiliate of Kaneb Services, Inc., the OLP Corporations) and save and hold OLP (and, while they are controlled by OLP or any affiliate of Kaneb Services, Inc., the OLP Corporations) harmless from and against any Damages caused by or arising out of (i) the failure of GEC to perform or fulfill any agreement or covenant to be performed or fulfilled by it under this Agreement, or (ii) any inaccuracy in any representation or breach of any warranty of GEC in Article 6 or any Ancillary Agreement or the certificate described in Section 11.06 (without reference for this purpose to the exception contained in clause (i) of Section 11.06).

(b)  The representations and warranties of GEC set forth in sections 6.01 through 6.04 and 6.20 shall survive the Closing. The representations and warranties set forth in Sections 6.05

56

through 6.10, 6.12 through 6.19, 6.21 and 6.22 shall survive the Closing but shall expire and be of no further force and effect on the second anniversary of the Closing Date, the representations and warranties set forth in Section 6.11 shall survive the Closing but shall expire and be of no force and effect on the fifth anniversary of the Closing Date, and the representations and warranties set forth in Section 6.23 shall survive the Closing but shall expire and be of no force and effect 20 days after the expiration of all applicable statutes of limitation (including all extensions thereof); except in each case with respect to claims OLP has asserted against GEC in writing, setting forth with reasonable specificity the nature of such claims, on or before the applicable expiration date.

(c)    GEC shall have no liability for or in connection with any provision of Section 10.01 or 10.04, it being the intention of the parties that the effect of any nonperformance thereof be limited to nonfulfillment of the conditions set forth in Section 11.02.

13.04  Limitations.    (a) None of OLP and the OLP Corporations (i) may assert a General Claim unless the condition, event, occurrence, action or omission which gives rise to such General Claim gives rise to Damages in excess of $7,500; and (ii) may assert any General Claim unless and until the aggregate amount of General Claims that may be asserted under clause (i) of this subsection shall exceed $1,000,000, and then only with respect to the excess of such General Claims over said $1,000,000.

(b) None of OLP and the OLP Corporations may assert an Environmental Claim unless the occurrence at a location which gives rise to such Environmental Claim gives rise to Damages in excess of $100,000, and then only with respect to the excess of such Environmental Claim over said $100,000.    OLP and the OLP Corporations shall be indemnified by GEC for 60%, and only 60% of the amount by which any Environmental Claim exceeds said $100,000; provided that in no event shall GEC be required to indemnify OLP and the OLP Corporations for more than $10,000,000 (that is, 60% of an aggregate of $16,666,667 of Environmental Claims in excess of such $100,000 limit) of Environmental Claims in the aggregate. For purposes of this subsection, "occurrence" shall mean any condition, event, action or omission which took place prior to the Closing and which constitutes a breach of Section 6.11.    For purposes of this subsection, repeated occurrences arising from a single cause shall be deemed to be a single occurrence.    For purposes of this subsection, separate occurrences that cause indivisible harm or require indivisible remedial action shall also be deemed to be a single occurrence if such harm or remedial action cannot reasonably be allocated among such separate occurrences.

(c) The dollar threshold and limitations set forth in this Section have been negotiated for the special purposes of the provisions in which they appear, and are not to be taken as evidence of the level of "materiality" for purposes of any statutory or common law which may be applicable to the transactions

contemplated by this Agreement under which a level of materiality might be an issue.

(d)   The indemnification under Section 13.03 and the Guaranty Agreement shall be the sole remedy of OLP and its affiliates, including, after the Closing, the Corporations, against GEC and its affiliates for Damages with respect to any inaccuracy in or breach of any representation, warranty, covenant or agreement contained in this Agreement or any other agreement or document (other than the Ancillary Agreements, which shall not be subject to this limitation) related hereto or thereto (including the certificates described in Section 11.06), whether such claims are brought under this Article 13 or otherwise.

(e)   The indemnification under Section 13.02 shall be the sole remedy of GEC and its affiliates against OLP and its affiliates for Damages with respect to any inaccuracy in or breach of any representation, warranty, covenant or agreement contained in this Agreement or in the Ancillary Agreements or any other agreement or document related hereto or thereto (including the certificate described in Section 12.06), whether such claims are brought under this Article 13 or otherwise.

13.05  <u>Defense of Third Party Claims</u>.  Any claims for indemnification by the OLP Corporations shall be made only on their behalf by OLP.  OLP shall notify GEC in writing promptly after learning of any Third Party Claim.  It shall be a necessary condition of any claim by OLP for indemnification under this Article with respect to any Third Party Claim, that OLP tender the

defense thereof (including control over all negotiation, trial, appeal or other proceedings) to GEC, provided that GEC shall keep OLP reasonably informed at GEC's expense regarding such defense. If OLP does not so notify and tender such defense within 30 days of learning of such Third Party Claim, OLP's right to indemnification hereunder shall not be impaired except to the extent that GEC shall have been prejudiced by such failure and except that GEC shall not be liable for any expenses incurred during the period in which OLP failed to give notice. GEC may undertake such defense by notice to OLP not later than 30 days after receipt of a notice that the defense is tendered to it. Failure by GEC to so notify OLP that it will undertake such defense shall be deemed to be a waiver of GEC's right to undertake such defense. If GEC undertakes defense of any Third Party Claim, OLP shall cooperate with GEC and its counsel in the investigation and defense thereof, and may participate (at its own expense) in such investigation and defense, but GEC shall retain control of the negotiation, tactics, trial, appeals and other matters and proceedings related thereto. If GEC does not undertake the defense of any Third Party Claim, OLP shall permit GEC, at its own expense, to participate in the investigation and defense thereof, but OLP shall control such investigation and defense. OLP and GEC agree to make available to each other, their counsel and other representatives, all information and documents available to them which relate to any Third Party Claim, and to render to each other such assistance as may reasonably be required in order to ensure

the proper and adequate defense of such Third Party Claim. Except pursuant to a final judgment rendered thereon, OLP shall not pay or settle any Third Party Claim, whether or not any action or proceeding has been commenced thereon, without the prior written consent of GEC, which consent shall not be unreasonably withheld or delayed by GEC. If OLP pays or settles any Third Party Claim prior to a judgment thereon without such consent, OLP shall be deemed to have waived all rights to indemnification or payment with respect to such Third Party Claim, unless such consent is unreasonably withheld or delayed.

13.06  <u>Consequential and Lost Profit Damages</u>.  Neither party shall seek consequential damages or damages for lost profits in any claim for indemnification under this Article, nor shall it accept payment of any award or judgment to the extent that such award or judgment includes consequential damages or damages for lost profits.

13.07  <u>Indemnification Payments</u>.  Payments of amounts owed under this Article 13 shall be made within ten days after final determination thereof.

### ARTICLE 14

### Cooperation in Various Matters

14.01  <u>Mutual Cooperation</u>. Each party to this Agreement shall cooperate with the other party, which cooperation shall include the furnishing of testimony and other evidence, permitting access to employees and providing information regarding the

whereabouts of former employees, as reasonably requested by such other party in connection with the prosecution or defense of any claims by third parties or Governmental Authorities or other matters (other than claims against each other) relating to the Corporations or the Operations.

14.02  <u>Preservation of OLP's Files and Records</u>.  For a period of seven years after the Closing, OLP shall use reasonable efforts to preserve all files and records in OLP's or the Corporations' possession relating to the Corporations and the Operations that are less than seven years old, shall allow GEC reasonable access to such files and records and the right to make copies and extracts therefrom at any time during normal business hours, and shall not dispose of any thereof, provided that commencing four years after the Closing, OLP may give GEC written notice of its intention to dispose of any part thereof, specifying the items to be disposed of in reasonable detail.  GEC may, within a period of sixty days after receipt of any such notice, notify OLP of GEC's desire to retain one or more of the items to be disposed of.  OLP shall, upon receipt of such a notice from GEC, deliver to GEC, at GEC's expense, the items specified in OLP's notice to GEC which GEC has elected to retain.

14.03  <u>Preservation of GEC's Files and Records</u>.  For a period of seven years after the Closing, GEC shall use reasonable efforts to preserve all files and records in GEC's possession relating to the Corporations and the Operations that are less than seven years old, shall allow OLP reasonable access to such files

and records and the right to make copies and extracts therefrom at any time during normal business hours, and shall not dispose of any thereof, provided that commencing four years after the Closing, GEC may give OLP written notice of its intention to dispose of any part thereof, specifying the items to be disposed of in reasonable detail.  OLP may, within a period of sixty days after receipt of any such notice, notify GEC of OLP's desire to retain one or more of the items to be disposed of.  GEC shall, upon receipt of such a notice from OLP, deliver to OLP at OLP's expense, the items specified in GEC's notice to OLP which OLP has elected to retain.

14.04  <u>Preparation of Reports, etc</u>.  GEC and OLP shall cooperate and cause their employees and those of the Corporations to cooperate in the timely preparation of financial and other reports and statements relating to the Corporations and the Operations, for periods ending on or prior to the Closing Date, in accordance with the reasonable request of the party responsible for the preparation of the report in question.

14.05  <u>Amendment of Guaranteed Agreements, etc</u>.  Without the prior written consent of GEC, which consent may be granted or refused at GEC's discretion, OLP shall not and shall not permit any of the Corporations to amend, modify or extend the term of any lease or other agreement listed in the schedule to this Section, at any time during which any GEC Entity has a guaranty obligation with respect to such lease or other agreement.

ARTICLE 15

Expenses; Termination of Services;
Broker's Fees; Guaranty Agreement

15.01     Expenses.   Each party to this Agreement shall pay
all expenses incurred by it in connection with the preparation,
authorization, execution and performance of this Agreement and the
Ancillary Agreements (except as may be provided elsewhere herein),
including, but not limited to, all fees and expenses of agents,
representatives, counsel and accountants engaged by it, except that
OLP shall be solely responsible for (a) the cost of obtaining title
insurance with respect to the Properties, (b) any sales, use,
transfer and similar taxes and all recording and similar fees
applicable to the transactions contemplated by this Agreement, and
(c) the costs and expenses incurred in connection with obtaining
all permits and licenses required by OLP or any of the Corporations
to operate the Operations and the Facilities after the Closing.

15.02   Termination of GEC Services.   All contracts,
agreements, commitments or other arrangements, whether written or
oral, and whether express or implied, pursuant to which GEC or any
of its affiliates provides legal, financial, accounting, insurance
or other services to the Corporations or the Operations shall be
terminated as of the Closing except as provided under the Ancillary
Agreements.   OLP shall execute and deliver to GEC, at GEC's
request, documents necessary or desirable to release GEC and any
such affiliate from any obligations with respect to such terminated
contracts, agreements, commitments and arrangements and to
otherwise confirm such termination.

15.03  Broker's Fees.  Each party to this Agreement shall hold the other party harmless with respect to any broker's, finder's or other similar agent's fee with respect to the transactions contemplated hereby claimed by any broker, finder or similar agent engaged, employed by or otherwise acting on behalf of the indemnifying party.

15.04  Guaranty Agreement.  Contemporaneously with the execution of this Agreement, Grace-Conn has executed and delivered to OLP the Guaranty Agreement.

## ARTICLE 16

### Notices

16.01  Procedure and Addresses.  All notices, requests, demands and other communications required or permitted to be given hereunder shall be deemed to have been duly given effective upon receipt if in writing and delivered personally or by facsimile transmission or courier service, at the following addresses:

If to GEC or any of the Corporations:

```
Grace Energy Corporation
Two Galleria Tower
Suite 1500
13455 Noel Road
Dallas,. Texas 75240-6681
Attention:  Chief Counsel
Facsimile number:    (214) 772-0215
Confirmation number: (214) 770-0200
```

With a copy to:

```
W. R. Grace & Co.
One Town Center Road
Boca Raton, Florida  33486-1010
Attention: Secretary
Facsimile number:    (407) 362-1635
Confirmation number: (407) 362-1645
```

65

If to OLP or any of the OLP Corporations:

> Kaneb Pipe Line Operating Partnership, L.P.
> 2400 Lakeside Boulevard
> Suite 600
> Richardson, Texas    75082
> Attention:  Edward D. Doherty
> Facsimile number:    (214) 699-1894
> Confirmation number: (214) 699-4047

With a copy to:

> Kaneb Services, Inc.
> 2400 Lakeside Boulevard
> Suite 600
> Richardson, Texas    75082
> Attention:  Stephen M. Hoffner, Esq.
> Facsimile number:     (214) 699-1894
> Confirmation number: (214) 699-4047

16.02  <u>Change of Notice Address</u>.  Any party may change the address to which such communications are to be directed to it by giving written notice to the other party in the manner provided in Section 16.01.

## ARTICLE 17

### General

17.01  <u>Entire Agreement</u>.  This Agreement, the Ancillary Agreements, the Guaranty Agreement, and the other agreements, documents and instruments being delivered at the Closing set forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersede all prior agreements, arrangements and understandings relating to the subject matter hereof, whether written or oral.

17.02  <u>No Other Representations, etc</u>. No representation, promise, inducement or statement of intention relating to the transactions contemplated by this Agreement has been made by or on

behalf of any party hereto which is not set forth in this Agreement, the Guaranty Agreement or the Ancillary Agreements.

17.03 <u>Headings</u>. The Article and Section headings contained in this Agreement are for convenient reference only, and shall not in any way affect the meaning or interpretation of this Agreement.

17.04 <u>Governing Law</u>. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, excluding the conflict of laws provisions thereof that would otherwise require the application of the law of any other jurisdiction.

17.05 <u>Counterparts; Telecopy Execution and Delivery</u>. (a) This Agreement may be executed in multiple counterparts (including counterparts executed by one party), each of which shall be an original, but all of which shall constitute a single agreement.

(b) A facsimile, telecopy or other reproduction of this Agreement may be executed by one or more parties hereto, and an executed copy of this Agreement may be delivered by one or more parties hereto by facsimile or similar instantaneous electronic transmission device pursuant to which the signature of or on behalf of such party can be seen, and such execution and delivery shall be considered valid, binding and effective for all purposes. At the request of any party hereto, all parties hereto agree to execute an original of this Agreement as well as any facsimile, telecopy or other reproduction hereof.

17.06   <u>Binding Agreement; Assignment</u>.   This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but this Agreement shall not be assignable by any party without the prior written consent of the other parties hereto; provided that OLP and the OLP Corporations may assign their rights hereunder to an affiliate or affiliates of Kaneb Services, Inc., without the requirement of any consent.

17.07   <u>Amendment</u>.   This Agreement may be amended only in a writing executed by the parties hereto which specifically states that it amends this Agreement.

17.08   <u>No Waiver</u>.   Failure of any party to insist upon strict observance of or compliance with any term of this Agreement in one or more instances shall not be deemed to be a waiver of its rights to insist upon such observance or compliance with the other terms hereof, or in the future.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date first above written.

Attest:                         GRACE ENERGY CORPORATION

_A. H. Riddleberger_            By _Fink L. Ryan_ _____

                                KANEB PIPE LINE OPERATING
                                PARTNERSHIP, L.P.

Attest:                         By KANEB PIPE LINE COMPANY,
                                general partner

_____           By _____

Attest:                         SUPPORT TERMINAL SERVICES, INC.

_A. H. Riddleberger_  By _____

Attest:                         STANTRANS, INC.

_A. H. Riddleberger_  By _____

Attest:                         STANDARD TRANSPIPE CORP.

_A. H. Riddleberger_  By _____

Attest:                                  NSTS, INC.

_____          By _____

Attest:                                  NSTI, INC.

_____          By _____

## CERTIFICATES OF ADOPTION

The undersigned, [Assistant] Secretary of Support Terminal Services, Inc. ("STS"), hereby certifies that this Agreement and Plan of Merger has been adopted by the written consent of Grace Energy Corporation, as sole stockholder of STS.

The undersigned, [Assistant] Secretary of StanTrans, Inc. ("STI"), hereby certifies that this Agreement and Plan of Merger has been adopted by the written consent of Support Terminal Services, Inc., as sole stockholder of STI.

The undersigned, Assistant Secretary of each of NSTS, Inc. and NSTI, Inc., hereby certifies that this Agreement and Plan of Merger has been adopted by the written consent of Kaneb Pipe Line Operating Partnership, L.P., as sole stockholder of each of said corporations.

F:\mb0606\gra120\merge4.agt

## STS AGREEMENT AND PLAN OF MERGER

### DISCLOSURE SCHEDULE PREAMBLE

This Preamble is attached to and made a part of the attached Disclosure Schedules, which have been delivered by Support Terminal Services, Inc. to Kaneb Services, Inc. pursuant to the terms of the STS Agreement and Plan of Merger dated as of December 21, 1992, 1992, by and between such parties (the "Agreement").  Capitalized terms used but not defined in this Preamble or the attached Disclosure Schedules shall have the meanings given them in the Agreement.

Each matter set forth in a Disclosure Schedule shall be deemed to include by reference all relevant matters set forth in any other Disclosure Schedule.

Reference in a Disclosure Schedule to any contract, agreement, instrument, document, order, decree or judgement (singularly, "instrument" and collectively, "instruments") shall be deemed to be reference to all amendments and modifications thereof, if any, as reflected by the files of any Corportion or otherwise disclosed to OLP, and to all instruments referred to in any of the foregoing, as applicable.

Any information set forth in a Disclosure Schedule that is not required to be disclosed pursuant to the terms of the Section of the Agreement to which such Disclosure Schedule relates is provided for informational purposes only and shall not be construed as expanding or modifying GEC's representation and warranty contained in such section.

The listing of or reference in a Disclosure Schedule to any notice, claim, demand, inquiry or threat shall not be construed as an admission of the truth or accuracy thereof or an admission of responsibility or liability.

H:\Shared\Skaye\VP\Energy\ST\Preamble.STS

The disclosure of a particular item or matter on a Disclosure Schedule shall not be construed as an admission by GEC that such item or matter falls within the scope of any materiality or other qualifications or limitations to the representation or warranty to which such Disclosure Schedule relates.

The undersigned acknowledge that the attached are true and correct copies of the schedules referred to in the Agreement.

_____
GRACE ENERGY CORPORATION

_____
KANEB PIPE LINE
OPERATING PARTNERSHIP

H:\Shared\Skaye\WP\Energy\ST\Preamble.ST8

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

OWNED & LEASED REAL PROPERTY

Owned Real Property

1.    1800 Frankfurst Avenue
      BALTIMORE, MARYLAND 21226

      Storage Tanks:        49


2.    4.5 miles south of Alamogordo on Highway 54
      ALAMOGORDO, NEW MEXICO 88311

      Storage Tanks:        5
      Pipeline:             connecting with Santa Fe Pacific Pipeline
                            near El Paso


3.    3350 North Raceway Road
      INDIANAPOLIS, INDIANA 46234

      Storage Tanks:        18


4.    6225 Hawkinsville Road
      MACON, GEORGIA 31206

      Storage Tanks:        10
      Pipeline:             from terminal to Robins AFB


5.    Route 29 North of Town
      CHILLICOTHE, ILLINOIS 61523

      Storage Tanks:        6


6.    Highway 16
      DRUMRIGHT, OKLAHOMA 74030

      Storage Tanks:        4

<u>EXHIBIT A</u><br>
Page 2

7.  North Landing Road
    <u>VIRGINIA BEACH, VIRGINIA 23456</u>

    Storage Tanks:      2
    Pipeline:           from terminal to Oceana NAS


8.  2nd Avenue
    <u>MOUNDVILLE, ALABAMA 35474</u>

    Storage Tanks:      6


9.  20830 Lamm Road
    <u>ELMENDORF, TEXAS 78112</u>

    Storage Tanks:      4


10. 1020 East 2nd Street
    <u>WINONA, MINNESOTA 55987</u>

    Storage Tanks:      5


11. 13198 S.W. 288th Street
    <u>HOMESTEAD, FLORIDA 33033-2012</u>

    Storage Tanks:      2
    Pipeline:           from  Everglades  Pipe  Line  at  Miami
                        International Airport to Homestead AFB


12. 460 Hunter Loop Road
    <u>MONTGOMERY, ALABAMA 36108</u>

    Storage Tanks:      3
    Pipeline:           from terminal to Maxwell AFB


13. Highway 27 South
    <u>BREMEN, GEORGIA 30110</u>

    Storage Tanks:      8

14.   2830 West Market
      <u>PERU, ILLINOIS 61354</u>

      Storage Tanks:        8

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

Owned Easements and Rights-of-Way

Alamogordo, New Mexico
Petroleum Pipeline from
El Paso to Holloman Air Force Base, New Mexico

1.  Permit to Install Utility Facilities Within Public Right of Way from State Highway Commission of New Mexico to Southwestern Transmission Corporation, dated August 2, 1965, and recorded in the office of the County Clerk, Otero County, New Mexico in Book 333, Page 427. (Permit # 2-5378)

2.  Consent to Cross U.S. Government Right of Way from the Department of the Air Force to Southwestern Transmission Corporation, dated December 30, 1965. Unrecorded.

3.  Warranty Deed of Easement from Dora Longwell Walker to Southwestern Transmission Corporation, dated September 24, 1965 and recorded in the office of the County Clerk, Otero County, New Mexico, in Book 334, Page 318.

4.  Grant Right of Way Easement from City of Alamogordo to Southwestern Transmission Corporation, dated October 26, 1965, and recorded in the office of the County Clerk, Otero County, New Mexico, in Book 334, Page 312.

5.  Warranty Deed of Easement from Lawrence H. Fitzgerald et. al to Southwestern Transmission Corporation, dated December 10, 1965, and recorded in the office of the County Clerk, Otero County, New Mexico, in Book 334, Page 454 and recorded in Book 334, Page 705 (for correction).

6.  Warranty Deed of Easement from Dollie E. Hill, et. al to Southwestern Transmission Corporation, dated February 7, 1965, and recorded in the office of the County Clerk, Otero County, New Mexico, in Book 334, Page 798.

Note:  Southwestern Transmission, National Transmission, Petro Storage and Transmission are predecessors to Standard Transmission, a division of Cleary Petroleum Corporation, which is the predecessor to Standard TransPipe Corp.

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

Owned Easements and Rights-of-Way

Alamogordo, New Mexico
Petroleum Pipeline from
El Paso to Holloman Air Force Base, New Mexico

7. Warranty Deed of Easement from Henry J. Hill and Katherine Hill to Southwestern Transmission Corporation, dated September 20, 1965, and recorded in the office of the County Clerk, Otero County, New Mexico, in Book 334, Page 320.

8. Warranty Deed of Easement from C. A. McNatt and Maurice McNatt to Southwestern Transmission Corporation, dated November 12, 1965, and recorded in the office of the County Clerk, Otero County, New Mexico, in Book 334, Page 316.

9. Grant Right of Way Easement from City of Alamogordo to Southwestern Transmission Corporation, dated October 26, 1965, and recorded in the office of the County Clerk, Otero County, New Mexico, in Book 334, Page 310.

10. Warranty Deed of Easement from C. A. McNatt and Maurice McNatt Southwestern Transmission Corporation, dated November 12, 1965, and recorded in the office of the County Clerk, Otero County, New Mexico, in Book 334, Page 308.

11. Right of Way Grant from Department of the Interior to Southwestern Transmission Corporation, dated January 18, 1966, and recorded in the office of the County Clerk, Otero County, New Mexico in Book 334, Page 598.

12. Warranty Deed of Easement from C. A. McNatt and Maurice McNatt Southwestern Transmission Corporation, dated November 12, 1965, and recorded in the office of the County Clerk, Otero County, New Mexico, in Book 334, Page 314.

13. Permit For Right of Way and Easement from the State of New Mexico to Southwestern Transmission Corporation, dated November 2, 1965, and recorded in office of the County Clerk, Otero County, New Mexico, in Book 334, Page 305. (Permit # RW-16362)

14. Permit to Install Utility Facilities Within Public Right of Way from State Highway Commission of New Mexico to Southwestern Transmission Corporation, dated August 2, 1965, and recorded in the office of the County Clerk, Otero County, New Mexico in Book 333, Page 423.

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

Owned Easements and Rights-of-Way

Homestead, Florida
Petroleum Pipeline from Miami International
Airport to Homestead Air Force Base

1.  Grant of Pipeline Easement dated October 1, 1963, by Broward County Port
    Authority, as grantor, and National Transmission Corp., as grantee, ending
    on May 31, 1993. (Two foot pipeline easement located partly in the City of
    Fort Lauderdale and partly in the City of Hollywood)  Unrecorded

2.  Easement for Construction and Maintenance of Pipeline dated April 17,
    1972, between Dadeland Shopping Center, Inc., as grantor, and Standard
    Transmission and City Gas Company, as grantees, recorded in the official
    records of Dade County, Florida, at Vol. 7680, Page 838.

3.  Right of Way Grant dated April 30, 1963, by George C. Busher and Mary
    Ann H. Busher to National Transmission Corp.  Unrecorded.

H:\Shared\Skaye\WP\Energy\ST\EXHIBIT.A1

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

Owned Easements and Rights-of-Way


Montgomery, Alabama
Serving Maxwell Air Force Base by
Petro Storage and Transmission Corp.


1.   Permit from State Highway Department of Alabama to Petro Storage and Transmission Corporation, dated July 7, 1961, for installation of a pipeline along the east side of U.S. 82 and the west side of U.S. 31 and to Maxwell field. Unrecorded.

2.   Pipeline Easement from Estell Capell to Petro Trans Company dated June 30, 1961, and recorded in Book 505, Page 314, in Montgomery County, Alabama.

3.   Easement from Triangle Refinery, Inc. [not in file]. Not recorded. Notes in file reference Mr. Hugo Wynn, POB 3367, Houston, Texas (713) 664-4511, Ball & Ball Attorneys.

4.   Easement from Plymouth Oil Company to Petro, dated September 6, 1961. Unrecorded. For the construction, maintenance, inspection, operation, repair and replacement of one 8" pipeline for the transportation of jet fuel. Unrecorded.

5.   Easement Agreement from Shell Oil Company to Petro Storage and Transmission Corporation, dated July 7, 1961. Unrecorded. As amended by the Agreement Amending Pipeline Easement, dated February 25, 1964 amending the "as-built" drawing for the original drawing.


H:\Shared\Skaye\WP\Energy\ST\EXHIBIT.A1

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

Owned Easements and Rights-of-Way

Virginia Beach, Virginia
Pipeline between North Landing River
to Oceana Air Field (Navy)

1.     Letter dated August 20, 1963 from R. H. Free, Colonel, Corps of Engineers to General Manager of Standard Transmission Corporation authorizing the construction of a bulkhead, dredge and fill behind bulkhead in North Landing River & Permit.

2.     Easement Agreement dated September 16, 1963 b J. G. Bell and Mary B. Bell, husband and wife, as Grantors, and Standard Transmission Corporation, as Grantee, granting a 20' wide easement for the construction, maintenance and operation of a pipeline across the property. No recording information.

3.     Deed of Easement dated June 17, 1970 between Valentine E. Miller and Sylvia B. Miller, husband and wife, Grantors, and Standard Transmission Corporation, as Grantee, granting an easement 15' wide for construction, maintenance and repair of a pipeline, recorded in Book 1167, Page 123 in the Clerk's Office of the Circuit Court of Virginia Beach on July 21, 1970.

4.     Right of Way Grant from Harry A. and Love B. Sawyer, as Grantors, to Standard Transmission Corporation, as Grantee, granting 50' right of way on "certain property located in Princess Ann Borough owned by Harry Sawyer - located on North and South Side of Lupton Lane." dated July 25, 1963 and recorded at Book 1019, Page 504 in Clerk's Office, Circuit Court of City of Virginia Beach, Virginia.

5.     Letter Agreement dated December 5, 1989 authorizing encroachment onto city right-of-way between City of Virginia Beach, Virginia and Standard Transpipe (Virginia) Inc. when replacing a portion of a 6" Jet Fuel Transmission Line (copy in file is unexecuted by City of Virginia Beach).

H:\shared\skaye\\

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

Owned Easements and Rights-of-Way

Macon, Georgia
Petroleum Pipeline from Macon
to Robins Air Force Base

1.  Permit for Utility Facility Encroachment dated April 29, 1965 from State of Georgia for installation of pipeline within the limits of rights of way for State Highway Rate No. 247, Houston, County, Georgia.  Unrecorded.

2.  Letter from Fenley Ryther, County Engineer, Bibb County, authorizing Permit to Standard Transmission dated February 6, 1970.  Unrecorded.

3.  Right of Way Grant dated May 14, 1965 from R. W. Barnwell, Jr. to Standard Transmission Corporation and recorded in Book 956, Page 397 in Clerk's Office, Superior Court, Bibb County, Georgia.

4.  Right of Way Grant dated May 28, 1965 from Milton E. Minglew, et. al to Standard Transmission Corporation and recorded in Book 956, Page 575 in Clerk's Office, Superior Court, Bibb County, Georgia.

5.  Right of Way Grant dated May 10, 1965 from Carl. A. Hamlin, Sr. to Standard Transmission Corporation and recorded in Book 954, Page 731 in Clerk's Office, Superior Court, Bibb County, Georgia.

6.  Right of Way Grant dated May 13, 1965 from James H. Rowan and Mrs. Evelyn R. Rowan to Standard Transmission Corporation and recorded in Book 956, Page 199 in Clerk's Office, Superior Court, Bibb County, Georgia.

7.  Right of Way Grant dated May 13, 1965 from Athel W. Spires and Mrs. Mary W. Spires to Standard Transmission Corporation and recorded in Book 956, Page 197 in Clerks Office, Superior Court, Bibb County, Georgia.

8.  Right of Way Grant dated May 14, 1965 from Mrs. Lois Bradley Simpson to Standard Transmission Corporation and recorded in Book 956, Page 407 in Clerk's Office, Superior Court, Bibb County, Georgia.

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

Owned Easements and Rights-of-Way

Macon, Georgia
Petroleum Pipeline from Macon
to Robins Air Force Base

9.  Right of Way Grant dated May 14, 1965 from J. J. Simpson and Mrs. Lois Bradley Simpson to Standard Transmission Corporation and recorded in Book 956, Page 407 in Clerk's Office, Superior Court, Bibb County, Georgia.

10. Right of Way Grant dated may 10, 1965 from H. Grady Hamlin to Standard Transmission Corporation and recorded in Book 954, page 729 in Clerk's Office, Superior Court, Bibb County, Georgia.

11. Right of Way and Easement dated May 7, 1965 from Bateman Co., Inc. to Standard Transmission Corporation and recorded in Book 954, Page 723 in Clerk's Office, Superior Court, Bibb County, Georgia.

12. Right of Way and Easement from Magnolia W. McLendon to Standard Transmission Corporation, dated May 8, 1965, and recorded in Book 954, Page 721 in Clerk's Office, Superior Court, Bibb County, Georgia.

13. Right of Way and Easement from C. B. Skipper to Standard Transmission Corporation, dated May 7, 1965, and recorded in Book 954, Page 719 in Clerk's Office, Superior Court, Bibb County, Georgia.

14. Permit from State of Georgia to Standard Transmission Corporation dated April 29, 1965.  Unrecorded.

15. License and Permit from Bibb County, Georgia, to Standard Transmission Corporation dated April 20, 1965, recorded in Deed Book 956, Page 167, Clerk's Office, Superior Court, Bibb County, Georgia.

16. Right of Way and Easement from F. M. Matthews to Standard Transmission Corporation, dated April 29, 1965, and recorded in Book 954, Page 727, in Clerk's Office, Superior Court, Bibb County, Georgia.

17. Right of Way and Easement from W. W. Durden to Standard Transmission Corporation dated April 29, 1965, and recorded in Book 956, Page 139, in the Clerk's Office, Superior Court, Bibb County, Georgia.

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

Owned Easements and Rights-of-Way

Macon, Georgia
Petroleum Pipeline from Macon
to Robins Air Force Base

18. Right of Way and Easement from E. K. Cargill to Standard Transmission Corporation, dated April 30, 1965, and recorded in Book 956, Page 195, in the Clerk's Office, Superior Court, Bibb County, Georgia.

19. Easement from Teddy N. Staples to Standard Transmission Corporation dated August 20, 1964, and recorded in Book 935, Page 439, in Clerk's Office, Bibb Superior Court, Macon, Georgia.

20. Easement from Standard Oil Company to Standard Transmission Corporation dated September 8, 1964. Unrecorded. Subject to August 28, 1964, agreement between the same parties regarding use of name "Standard."

21. Easement from Shell Oil Company to Standard Transmission Corporation dated March 10, 1970. Unrecorded.

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

Leased Real Property

1.   Lease and Agreement, dated August 1, 1981, by and between Texas City Terminal Railway Company and StanTrans, Inc. ("Texas City Lease").

Silent on assignment.

2.   Industry Track Agreement, dated August 1, 1981, by and between Texas City Terminal Railway Company ("TCTRC") and StanTrans, Inc. for use of railroad track; as amended by letter dated February 9, 1982.

Assignment:   §15.   May be assigned; prompt written notice of such assignment, which includes identity and address of assignee to be given to TCTRC.

3.   Agreement dated May 23, 1973 by and between Texas City Terminal Railway Company and Anchortank, Inc. for Track No. ICC 35, (Storage No. 2) from Station 3+37 to 12+12 end of track, effective May 8, 1972, as amended by letter dated November 17, 1975 [not signed by Anchortank, Inc.]; assigned to StanTrans, Inc. by General Conveyance, Assignment and Transfer dated March 9, 1979.

Assignment:   Article 6.   No assignment without written consent.

4.   Lease and Agreement by and between Texas City Terminal Railway Company and StanTrans, Inc., effective as of July 1, 1985.

Silent on assignment.

5.   (a) Lease and Agreement between Texas City Terminal Railway Company, and StanTrans, Inc., effective as of July 1, 1988; as amended by Lease Amendment effective April 1, 1989.

Silent on assignment.

(b) Industry Track Agreement between Texas City Terminal Railway Company and StanTrans, Inc. effective as of July 1, 1988 for the lease of track pursuant to Item 5(a) above.

Assignment:   §15.   No assignment unless lease referenced in Item 5(a) is assigned to such person and then only when such lease has been assigned with advance written consent of TCTRC.

6.  Lease and Agreement dated April 1, 1986 between Texas City
    Terminal Railway Company and Emmet F. Lowry; as amended on
    June 1, 1988; as amended on May 1, 1989 by Agreement Amending
    Lease and Cancelling Prior Amendment; as further amended by
    Third Amendment to Lease Agreement dated December 29, 1989
    extending term and providing renewal options and as assigned
    by Assignment of Lease and Bill of Sale dated December 29,
    1989 from the estate of Lowry to Unitank-Texas, Inc. and as
    further assigned by General Assignment and Bill of Sale dated
    December 29, 1989 from Unitank to StanTrans, Inc.

    Assignment:    §16.  May assign if prompt written notice is
                   provided to TCTRC which includes the name and
                   mailing address of the assignee, the effective
                   date of assignment and a true and complete
                   copy of document by which the assignment was
                   effected.

7.  Lease and Agreement, dated July 1, 1985, by and between Texas
    City Railway Company and StanTrans, Inc., for Warehouses No.
    4, 5 and 5-A; as amended by Supplement to and Amendment of
    Warehouses Lease effective July 16, 1986 adding Warehouse 4-A
    to the leased premises; as further amended by Agreement
    Concerning Deletion of Two Warehouses From Prior Lease, and
    Other Matters (deleting Warehouses 5 and 5A) dated November 9,
    1987 and as further amended by Cancellation of Lease as to
    Warehouse 4-A, effective May 1, 1989.

    Silent on assignment.

8.  Lease of Office Space dated April 1, 1981 between Texas City
    Terminal Railway Company and StanTrans, Inc., as amended by
    letter dated September 8, 1989, effective August 1, 1989, and
    as further amended by letter dated June 24, 1992 effective
    January 1, 1992.

    Assignment:    §4.  May be assigned only upon prior receipt
                   of written permission of Lessor.

9.  Lease by Letter Agreement dated November 21, 1988 between
    Texas City Terminal Railway Company and StanTrans, Inc., as
    amended by Letter Agreement dated June 24, 1992, effective
    January 1, 1992.

    Silent on assignment.

10.  **Lease and Agreement effective July 1, 1988 between Texas City
Terminal Railway Company and Unitank-Texas, Inc., as assigned
by General Assignment and Bill of Sale dated December 29, 1989
from Unitank Texas, Inc. to StanTrans, Inc.**

Address:    1111 Main Dock Road (Loop 197 South)
Texas City, Texas

Assignment:    §18.  Right to assign upon prompt written
notice to TCTRC which includes name and
mailing address of assignee, effective date of
assignment and a true copy of instruments by
which assignment became effective.

11.  **Lease dated May 1, 1984 between The Stockton Port District and
Union Pacific Railroad Company, d/b/a The Western Pacific
Railroad Company; assigned by Western Pacific to Support
Terminal Services, Inc. by Assignment of Lease dated September
30, 1988; as amended by Addendum to Lease dated September 30,
1988 extending term to 20 years; and as further amended by
First Amendment to Lease dated June 17, 1991 by and between
The Stockton Port District and Support Terminal Services, Inc.**

Address:    2941 Navy Drive
Stockton, California 95203

Assignment:    §10.  Tenant shall not, either voluntarily or
by operation of law, assign or transfer the
Lease without the prior written consent of
Lessor, which shall not be unreasonably
withheld.  Tenant must give prior written
notice to Lessor of proposed assignee's name,
nature of business to be conducted on the
premises, terms of assignment, space to be
assigned and such financial information as
Lessor may reasonably request.  Lessor has the
option to either terminate lease upon receipt
of such notice or amend the Lease.

The first Amendment provides as follows:  ". . . if (i) any
anticipated use of the premises by any proposed assignee or
sublessee involves or reasonably could involve the generation
or storage, use, treatment or disposal of Hazardous Materials
in a manner or for a purpose prohibited by any law,
regulation, rule or ordinance, (ii) the proposed assignee or
sublessee has been required by any prior landlord, lender or
governmental authority to undertake removal or remedial action
in connection with any Hazardous Materials on a property where
the presence of the Hazardous Materials resulted from such
proposed assignee's or sublessee's action or use of the
property in question or (iii) the proposed assignee or
sublessee is subject to an enforcement order issued by any

governmental authority in connection with the use, disposal or storage of Hazardous Materials, it shall not be unreasonable for Port [Lessor] to withhold its consent to an assignment or subletting to such proposed assignee or sublessee. This paragraph shall not preclude other grounds for Port's [Lessor's] rejection of a sublease or assignment pursuant to any other provisions of this Agreement."

12. Lease dated February 1, 1978 by and between Southern Pacific Pipe Lines, Inc., and Imperial Terminals, Ltd., as amended by Supplement #1 effective March 19, 1983 and by Supplement #2 dated March 18, 1988.

Address:   349 Aten Road
           Imperial, California 92251

   Assignment:   §18.   Lessee shall not assign without the prior written consent of Lessor, except for assignment by reason of corporate change of Lessee, or to a wholly owned subsidiary, or to a corporation owning the majority of shares of Lessee.

13. Indenture of Lease dated July 1, 1968 by and between Georgia Ports Authority, as Lessor, and Southeast Terminals, Inc., as extended by Agreement to Extend Lease for Ten-Year Term dated March 21, 1974 and as further extended by Letter dated March 23, 1984 [not in file] and March 27, 1984 for an additional Ten-Year Term; and as assigned to Support Terminal Services, Inc. (formerly STC Corp.) by Assignment dated October 1980 by and between Southeast Terminals, Inc., Assignor and STC Corp., Assignee; Consent to Assignment of Lease dated October 13, 1980.

Address:   800 Lumpkin Boulevard
           Columbus, Georgia 31901

   Assignment:   §11.   No assignment without the written consent of Lessor, which shall not be unreasonably withheld.

14. Lease Agreement dated June 1, 1977 by and between Southern Pacific Pipe Lines, Inc., ("Southern") and Standard Transmission and Navaho Refining Company, a joint venture, as amended on November 15, 1977, October 1, 1984, and April 1, 1988 [all missing from file] and as supplemented by Fourth Supplemental Lease Agreement, dated April 1, 1992, by and between SFPP, L.P. (successor to Southern) and Support Terminal Services,

Inc., (formerly Standard Transmission, a division of Cleary
Petroleum Corporation) and Navajo Refining Company, a joint
venture, increasing rent and extending term.

Address:   3605 South Dodge
           Tucson, Arizona 85713

   Assignment:       §20.  No assignment without the prior written
                     consent of Lessor, except for assignment by
                     reason of corporate change of Lessee, or to
                     wholly owned subsidiary, or to a corporation
                     owning the majority of shares of Lessee.

15.  Agreement dated May 1, 1957 by and between Southern Pacific
     Company and General Petroleum Corporation in Tucson, Arizona,
     as supplemented by Supplemental Agreement dated November 19,
     1963 between Southern Pacific Company and Socony Mobil Oil
     Company (successor to General Petroleum Corporation); Sublease
     dated August 15, 1977 by and between Mobil Oil Corporation,
     Landlord and Standard Transmission, a Division of Cleary
     Petroleum Corporation in Tucson, Arizona, as amended by
     Amendment to Sublease Agreement dated July 15, 1982 by and
     between Mobil Oil Corporation and ST Services, Tenant.
     Currently sublet on a month-to-month basis; negotiations in
     progress for direct lease by Support Terminal Services, Inc.
     from Southern Pacific Transportation Company.

Address:   3339 Ajo Way
           Tucson, Arizona 85713

   Assignment:       §7 of 5/1/57 Agreement:  No assignment without
                     the prior written consent of Lessor.

                     §24 of 8/14/77 Agreement:  Sublessee may not
                     assign this Lease without the prior written
                     consent of Sublessor except for an assignment
                     by reason of corporate change of Tenant, or to
                     a wholly owned subsidiary, or to a corporation
                     owning the majority of shares of Tenant.

16.  Lease dated October 30, 1990 by and between the City of
     Milwaukee and Support Terminal Services, Inc. and Garland
     Middendorf as tenants-in-common, as amended by Amendment of
     Lease, dated May 7, 1992, by and between the City of Milwaukee
     and Support Terminal Services, Inc., Tenant; Support Terminal
     Services, Inc. purchased Garland Middendorf's interest
     pursuant to a Purchase and Sale Agreement dated 1/1/91.

Address:   1626 South Harbor Drive
           Milwaukee, Wisconsin 53207

EXHIBIT A
Page 17

Assignment:     §13.  Tenant shall not, except with the prior written consent of City, assign any interest in this Lease.

17.  Office Lease Agreement, dated May 15, 1991, by and between Plaza Investment Associates, Support Terminal Services, Inc., Tenant.

Address:  Dominion Plaza
          Suite 1000
          17304 Preston Road
          Dallas, Texas

Assignment:     §9.  No assignment without the prior, express written consent of Landlord.  At least 60 days prior to assignment, Tenant must provide Landlord with the name of proposed assignee, commencement date of assignment and nature of such assignee's business.  Landlord has option (to be exercised within 30 days from submission of Tenant's written request) to (a) permit Tenant to assign or (b) refuse to consent, or (c) cancel the Lease.

18.  Lease between the Secretary of the Air Force and ST Services dated February 9, 1989 for a Pipeline Right-of-Way and an Area for Storage Tanks.

Address:  Homestead, Florida

Assignment:     §8.  Lessee shall not transfer or assign without permission in writing from the Secretary of the Air Force.

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

LEASED EASEMENTS & RIGHTS-OF-WAY

## I.   MACON, GEORGIA

A.   Lease No. L1783 dated 3/22/65 between Norfolk Southern Corporation (formerly Georgia Southern and Florida Railway Company) and Standard Transmission Corporation for the lease of property for petroleum pipe line near Elberta, GA, executed 3/19/65.

B.   Lease No. L2083 between Central of Georgia Railroad Company and Cleary Petroleum Corporation, Licensee (undated and unsigned by Central of Georgia) for Lease of Property for an eight-inch petroleum products pipe line at Rutland, GA.

C.   Lease No. 2183 dated 3/22/65 between Norfolk Southern Corporation (formerly Georgia Southern and Florida Railway Company) and Standard Transmission Corporation for the lease of property for petroleum pipe line near Macon, GA, executed 3/19/65.

## II.   MONTGOMERY, ALABAMA

A.   Lease No. L0487 dated 12/11/87 between the Secretary of the Air Force and Standard TransPipe Corporation for Lease of Property at Maxwell Air Force Base, Alabama Military Reservation, No. DACA01-1-88-103; for a right-of-way five (5) feet wide consisting of 0.81 acres of land, more or less, together with approximately 7,016 linear feet of 4-inch underground pipeline located thereon.  Five year extension requested by letter dated 6/19/92; negotiation in progress.

B.   Lease No. 1483 dated 7/14/61 between Gulf, Mobile and Ohio Railroad Company ("Railroad") and Cleary Petroleum Corporation, successor to Petro Storage and Transmission Corporation, for a 4-inch gas pipe line, upon, under and across its right of way at Montgomery, Alabama at a point 2,115.5 feet north of Railroad's Milepost 178; amended by Agreement dated 3/24/72 substituting Standard Transmission Company, a Division of Cleary Petroleum; further amended by agreement dated 12/18/78 among Illinois Central Gulf Railroad Company ("Illinois"), successor to Railroad, Grace Petroleum Corporation and W. R. Grace & Co. whereby W.R. Grace & Co. succeeds to the interests of Grace Petroleum under the Lease.

NOTE:   Illinois apparently is no longer in business; current owner of right-of-way is not known; last rental payment made 7/19/85.

### III. HOMESTEAD, FLORIDA

A.  Lease No. L0391 effective 3/22/91 between Florida East Coast Railway Company and Standard TransPipe Corp. for five continuous strips of land in Dade County, Florida, 4' wide, measured 2' wide on each side of a centerline.

As amended by letter dated 8/16/91 decreasing length of pipeline and reducing annual rental as a result of:

(i)  Partial Assignment of Lease Agreement dated 8/6/91 by Florida East Coast Railway Company to State of Florida, Florida Department of Transportation ("DOT") as assignee, for approximately 765 feet of pipeline. DOT allows Standard TransPipe Corp. to occupy a public right-of-way on this property as a public utility and at no charge to Standard TransPipe Corp.

(ii)  Lease No. L2290 - between Standard TransPipe Corp. and Florida East Coast Railway Company dated 3/22/89 for a strip of land in Section 5, Township 56 South, Range 40 East, Dade County, Florida, 4 feet wide, measured 2 feet on each side of a centerline; (515 linear feet); fee simple title conveyed to Edward L. Clark and Deanna D. Clark, his wife, by Florida East Coast Railway; Partial Assignment of Lease Agreement to Clarks not in file.

(iii)  Lease No. L2390 - Partial Assignment of Lease Agreement to Johnnie T. Reaves dated 12/3/90.

B.  Lease No. L1083 effective 2/9/89 between the Secretary of the Air Force (lease No. AF (HMSTD 1) 88 and ST Services for a Pipeline Right-of-Way comprised of a strip or parcel of land 6' wide lying in the NE 1/4 and SE 1/4 of Section 2, Township 57 South, Range 39 East, Dade County, Florida.

### IV. ALAMOGORDO, NEW MEXICO.

A.  Lease No. L1683 - Decision granting Right-of-Way dated 12/12/80 by the U.S. Department of the Interior, Bureau of Land Management, Serial number of Grant New Mexico 40601; Standard TransPipe Corporation as Grantee for a 20 foot wide right-of-way for one 6-inch natural gas pipeline used to supply jet fuel to Holloman Air Force Base, New Mexico.

B.  Lease No. L1185 - Supplemental Agreement Number 4 between Standard TransPipe Corporation and the United States of America dated 1/31/90 to Easement No. DACA47-2-76-5 to Lease between the Department of the Air force and Standard Transmission, a division of Cleary Petroleum dated 7/24/75.

C.    Commercial Lease M.P.B-1315.95-L (C) dated 1/23/85 between
Southern Pacific Transportation Company and Standard TransPipe
Corp.

## V.    TEXAS CITY, TEXAS

A..    Lease No. 5083 - Pipeline Right-of-Way executed 3/20/72,
effective 9/1/71, between Texas City Terminal Railway Company
and Anchortank, Inc. for five line(s) of pipe totaling 228.25
rods in length, as supplemented by:

(a)    Supplement No.. 1 to Pipeline Right-of-Way effective
9/9/77, effective 7/1/72 between Texas City Terminal
Railway Company and Anchortank, Inc. adding 17 additional
line(s) of pipe totaling 96.05 rods in length;

(b)    Assignment to StanTrans, Inc. dated 3/9/79;

(c)    Consent to Assignment and Guaranty executed by Texas City
Terminal Railway Company dated 3/6/79 and W.R. Grace &
Co. guaranty dated 3/7/79.

B.    Lease No. L1285 - Pipeline Right-of-Way dated 7/11/85 (effec-
tive 7/1/85) between Texas City Terminal Railway Company and
StanTrans, Inc. for three line(s) of pipe totaling 54.24 rods
in length.

C.    Lease No. L0386 - Agreement dated 8/14/57 between Texas City
Terminal Railway Company and Gillock Chemical Company
(predecessor to Amoco Chemicals Corporation) for two line(s)
of pipe, one six-inch and one four-inch totaling 291.75 rods
in length.    Transfer of Right-of-Way by letter dated 2/6/81;
as amended by letter dated 4/2/86.

D.    Lease No. L0788 - Pipeline Right-of-Way effective 7/1/88
between Texas City Terminal Railway Company and StanTrans,
Inc. for nineteen lines of pipe totaling 91.52 rods in length.

E.    Lease No. L0888 - Pipeline Right-of-Way effective 1/1/90
between Texas City Terminal Railway Company and StanTrans,
Inc. for 15 lines of pipe totaling 741.81 rods in length.

*F.    Lease No. L0590 - Pipeline Right-of-Way effective 11/1/87
between Emmett F. Lowry and Texas City Terminal Railway
Company for 3 lines of pipe totaling 115.02 rods in length.

*G.    Lease No. L0690 - Pipeline Right-of-Way effective 11/1/87
between Emmett F. Lowry and Texas City Terminal Railway
Company for one line of pipe totaling 8.02 rods in length.

*H.    Lease No. L0790 - Pipeline Right-of-Way effective 11/1/87
between Emmett F. Lowry and Texas City Terminal Railway

Company for two lines of pipe totaling 30.38 rods in length.

*I.    Lease No. L0890 - Pipeline Right-of-Way effective dated 9/3/82, 11/1/81 between Emmett F. Lowry and Texas City Terminal Railway Company for six lines of pipe totaling 8.02 rods in length.

*J.    Lease No. L1090 - Pipeline Right-of-Way dated 1/6/89 effective 1/1/89 between Emmett F. Lowry and Texas City Terminal Railway Company for one line of pipe totaling 61.7 rods in length.

*K.    Lease No. L1190 - Pipeline Right-of-Way dated 10/4/79 effective 1/1/79 between Emmett F. Lowry and Texas City Terminal Railway Company for two lines of pipe totaling 30.33 rods in length.

L.    Lease No. L1290 - Agreement for Pipeline Right-of-Way effective 8/1/89 between StanTrans, Inc. and Texas City Terminal Railway Company for eight lines of pipe and one cable tray totaling 40.91 rods in length.

M.    Lease No. L1390 - Easement for Pipeline Right-of-Way effective 2/5/90 between StanTrans, Inc. and Texas City Terminal Railway Company for two lines of pipe totaling 175.21 rods in length.

*N.    Lease No. L1690 - Lease of Pipeline between Emmett F. Lowry and Marathon Oil Company effective 7/1/73 for one pipeline at Texas City Terminal Railway Company's No. 4 Dock.

*O.    Lease No. L1790 - Agreement for Pipeline Right-of-Way effective 9/1/89 between Unitank-Texas, Inc. and Texas City Terminal Railway Company for eight lines of pipe totaling 39.76 rods in length.

P.    Lease No. L1890 - Easement for Pipeline Right-of-Way effective 6/1/90 between StanTrans, Inc. and Texas City Terminal Railway Company for two lines of pipe totaling 123.4 rods in length.

*Q.    Lease No. L1990 - Pipeline Right-of-Way effective 10/1/86 between Emmett F. Lowry and Texas City Terminal Railway Company for one line of pipe totaling 61.7 rods in length.

*    By Assignment of Lease and Bill of Sale dated December 29, 1989, the estate of Emmet F. Lowry assigned Texas City Property to Unitank Texas, Inc.; which was assigned to StanTrans, Inc. by General Assignment and Bill of Sale dated December 29, 1989.

H:\shared\skaye\wp\energy\st\Exhibit.A1

EXHIBIT 8

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

OPINION OF COUNSEL FOR GEC

H:\Shared\Skaye\WP\Energy\ST\EXHIBIT.E

<u>EXHIBIT B TO STS AGREEMENT AND PLAN OF MERGER</u>

[Opinion of Grace General Counsel]

_____, 1993

Kaneb Pipe Line Operating
 Partnership, L.P.
2400 Lakeside Boulevard
Suite 600
Richardson, Texas 75082

Gentlemen:

As General Counsel of Grace Energy Corporation, a Delaware corporation ("GEC"), and W. R. Grace & Co.-Conn., a Connecticut corporation ("Grace-Conn."), I have been asked to render my opinion to you in connection with the closing under the STS Agreement and Plan of Merger dated December __, 1992 (the "Merger Agreement"), between GEC, Support Terminal Services, Inc., a Delaware corporation and a wholly owned subsidiary of GEC ("STS"), StanTrans, Inc., a Delaware corporation and a wholly owned subsidiary of GEC ("STI"), Standard TransPipe (Virginia) Inc., a Virginia corporation and an indirect wholly owned subsidiary of GEC ("STV"), and Kaneb Pipe Line Operating Partnership, L.P., a Delaware limited partnership ("OLP"), NSTS, Inc., a Delaware corporation and a wholly owned subsidiary of OLP ("NSTS"), and NSTI, Inc., a Delaware corporation and a wholly owned subsidiary of OLP ("NSTI").

In connection with this opinion, I have examined or caused to be examined the following documents: the Merger Agreement; the Guaranty Agreement of even date therewith by Grace-Conn. in favor of OLP, NSTS and NSTI (the "Guaranty Agreement"); the Employee Benefit Agreement, the Tax Procedures Agreement and the Insurance Procedures Agreement, each of even date therewith between GEC and OLP and certain other parties (collectively, the "Ancillary Agreements"); the corporate charter and by-laws of each of GEC, STS, STI and Grace-Conn.; the records of the corporate proceedings of each of GEC, STS, STI and Grace-Conn.; and such other documents as I have deemed necessary for the opinion hereinafter expressed.

2

I have also assumed for the purposes hereof the genuineness of all signatures (other than those of representatives of GEC, STS, STI and Grace-Conn.) and the authenticity of all items submitted to me as certified or photostatic copies and the authenticity of the originals of such copies.

Based on the foregoing, I am of the opinion that:

1.   Each of GEC, STS and STI is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, with full corporate power to enter into the Merger Agreement and the Ancillary Agreements to which it is a party and to perform its obligations thereunder.

2.   Grace-Conn. is a corporation duly organized, validly existing and in good standing under the laws of the State of Connecticut, with full corporate power to enter into the Guaranty and the Ancillary Agreements to which it is a party and to perform its obligations thereunder.

4.   The execution and delivery by each of GEC, STS and STI of the Merger Agreement and the Ancillary Agreements to which it is a party and its performance of its obligations thereunder have been duly authorized by all necessary corporate action on its part, including without limitation any required stockholder approval.   Each of GEC, STS and STI has duly executed and delivered the Merger Agreement and the Ancillary Agreements to which it is a party.

5.   The execution and delivery by Grace-Conn. of the Guaranty Agreement and the Ancillary Agreements to which it is a party and its performance of its obligations thereunder have been duly authorized by all necessary corporate action of Grace-Conn.   Grace-Conn. has duly executed and delivered the Guaranty Agreement and the Ancillary Agreements to which it is a party.

In rendering the foregoing opinion, I express no opinion as to any laws other than those of the States of Delaware and Connecticut.

H:\SHARED\JMCFARLA\WP\STS\OPINGEC

3

    This opinion is limited to specific issues addressed herein and is limited in all respects to laws, interpretations thereof and other matters existing on the date hereof.  I do not undertake to update this opinion for changes in such laws, interpretations or other matters.  This opinion is furnished solely for OLP's benefit in connection with the above-referenced closing.  This opinion is not to be relied upon for any other purpose or made available to any other person, firm or entity without my express prior written consent.

Very truly yours,

<u>EXHIBIT C TO STS AGREEMENT AND PLAN OF MERGER</u>

[Opinion of Kaneb General Counsel]

December __, 1992

Grace Energy Corporation
Two Galleria Tower
Suite 1500
13455 Noel Road
Dallas, Texas 75240-6681

Gentlemen:

As General Counsel of Kaneb Pipe Line Operating Partnership, L.P., a Delaware limited partnership ("OLP"), and Kaneb Pipe Line Company, a Delaware corporation and the sole general partner of OLP (the "General Partner"), I have been asked to render my opinion to you in connection with the closing under the STS Agreement and Plan of Merger dated December __, 1992 (the "Merger Agreement"), between Grace Energy Corporation, a Delaware corporation ("GEC"), Support Terminal Services, Inc., a Delaware corporation and a wholly owned subsidiary of GEC, StanTrans, Inc., a Delaware corporation and a wholly owned subsidiary of GEC, Standard TransPipe (Virginia) Inc., a Virginia corporation and an indirect wholly owned subsidiary of GEC, and OLP, NSTS, Inc., a Delaware corporation and a wholly owned subsidiary of OLP ("NSTS"), and NSTI, Inc., a Delaware corporation and a wholly owned subsidiary of OLP ("NSTI").

In connection with this opinion, I have examined or caused to be examined the following documents: the Merger Agreement; the Employee Benefit Agreement, the Tax Procedures Agreement, and the Insurance Procedures Agreement, each of even date therewith between GEC and OLP and certain other parties (collectively, the "Ancillary Agreements"); the certificate of limited partnership and the partnership agreement of OLP; the corporate charter and by-laws of each of the General Partner, NSTS, NSTI and NSTV; the records of OLP's partnership proceedings; the records of the corporate proceedings of each of the General Partner, NSTS, NSTI and NSTV;

H:\SHARED\JMCFARLA\WP\STS\OPINKANB

and such other documents as I have deemed necessary for the opinion hereinafter expressed.

I have also assumed for the purposes hereof the genuineness of all signatures (other than those of representatives of OLP, the General Partner, NSTS and NSTI) and the authenticity of all items submitted to me as certified or photostatic copies and the authenticity of the originals of such copies.

Based on the foregoing, I am of the opinion that:

1.   OLP is a limited partnership duly formed, validly existing and in good standing under the laws of the State of Delaware, with full partnership power to enter into the Merger Agreement and the Ancillary Agreements and to perform its obligations thereunder.

2.   The General Partner is the sole general partner of OLP and is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, with full corporate power in the name and on behalf of OLP to enter into the Merger Agreement and the Ancillary Agreements.

3.   Each of NSTS and NSTI is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, with full corporate power to enter into the Merger Agreement and the Ancillary Agreements to which it is a party and to perform its obligations thereunder.

4.   The execution and delivery by OLP of the Merger Agreement and the Ancillary Agreements and its performance of its obligations thereunder have been duly authorized by all necessary partnership action of OLP.

5.   The execution and delivery in the name and on behalf of OLP by the General Partner of the Merger Agreement and the Ancillary Agreements and the General Partner's performance in the name and on behalf of OLP of OLP's obligations thereunder have been duly authorized by all necessary corporate action of the General Partner.   The Merger Agreement and the Ancillary Agreements have been duly executed and delivered in the name and on behalf of OLP by the General Partner as sole general partner of OLP.

6.   The execution and delivery by each of NSTS and NSTI of the Merger Agreement and the Ancillary Agreements to which it is a party and its performance of its obligations thereunder have been duly authorized by all necessary corporate action on its part, including without limitation any required stockholder approval.   Each of NSTS and NSTI has duly executed and

3

delivered the Merger Agreement and the Ancillary Agreements to which it is a party.

In rendering the foregoing opinion, I express no opinion as to any laws other than those of the State of Texas and the General Corporation Law of the State of Delaware.

This opinion is limited to specific issues addressed herein and is limited in all respects to laws, interpretations thereof and other matters existing on the date hereof. I do not undertake to update this opinion for changes in such laws, interpretations or other matters. This opinion is furnished solely for the benefit of GEC and W. R. Grace & Co.-Conn. and their subsidiaries in connection with the above-referenced closing. This opinion is not to be relied upon for any other purpose or made available to any other person, firm or entity without my express prior written consent.

                                        Very truly yours,

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

INVENTORY CUSTODY TRANSFER

1.    The product inventory stored at the Facilities is owned by
customers of GEC ("Customers").    Transfer of the physical
inventory shall be as of 12:00 midnight CST on the Closing
Date, or other times that GEC and OLP may mutually agree to.
GEC will transfer to OLP and OLP will assume custody of such
inventory and necessary documentation will be exchanged by the
GEC and OLP to evidence such transfer of custody.    It is
agreed that all Customers' accounts shall be balanced by GEC
and OLP in accordance with any and all applicable agreements,
contracts and proper accounting procedures.

2.    GEC and OLP shall agree upon the selection of an independent
Licensed Petroleum Inspector (the "Inspector") to participate
in the inventory custody transfer at each Facility.    The
Inspector shall have authority to resolve any and all disputes
between GEC and OLP with respect to inventory custody
transfer.    All costs associated with the retention and use of
the Inspector will be borne equally by GEC and OLP.

3.    Storage tanks will be gauged, sampled and tested by the
Inspector in the presence of a representative of GEC and OLP.
If representatives of GEC and OLP are not present, the
Inspector's measurements and documentation shall prevail.

4.    All volumes shall be determined in accordance with API and
ASTM procedures, as applicable.

5.    All gauging related to the determination of quantity of the
petroleum products or other products in each tank shall be
done in accordance with the API Manual of Petroleum
Measurement Standards (latest revision) or by currently
accepted industry standards or procedures.

6.    For purpose of ascertaining the aforesaid volume:

      (a)    All tanks shall be gauged, sampled, and tested by the
Inspector and said volume shall be converted to a volume at a
temperature of 60° Fahrenheit in accordance with current API
approved methods and procedures for petroleum products or

temperature correction and volume adjustment factors for other liquids.

(b)  All lines will be either 100 percent full or 100 percent empty (and identified as such) and the volumes contained therein will be deemed to be the respective calculated line fill volumes.

7.   Quality standards of all products on hand shall be determined by ASTM or API standards by the Inspector and shall be suitable for marketing in the area served by the STS system and in accordance with all applicable laws, rules and regulations.  In the event that the quality of any product has become degraded while in the custody of GEC and remains in such degraded condition at the time of the Closing, GEC agrees to hold Buyer harmless for any liability resulting from the correction of such product to the satisfaction of the Customer and in the further event that it is not possible to correct the quality of the product, GEC agrees to bear the cost of replacing such product, less the salvage value of the degraded product, if any.

8.   If after inventory reconciliation there are losses for which any Corporation would, by contract, be required to pay the Customer, then GEC shall pay to OLP the amounts of such losses which OLP pays to Customer(s).  This will be handled by OLP presenting GEC with proof of payment to Customer(s) and the GEC promptly reimbursing OLP for same.  All such proof must be presented to GEC within six (6) months of date of Closing.

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

UNAUDITED CONSOLIDATED BALANCE SHEET
ON A LEGAL ENTITY BASIS
AS OF NOVEMBER 30, 1992

ST SERVICES
BALANCE SHEET
ST SERVICES - CONSOLIDATED
NOVEMBER 30, 1992

**CURRENT ASSETS**

| | |
|---|---:|
| 101 CASH - DEPOSITORY | 2,000.00 |
| 105 CASH - DISBURSEMENTS | (160,335.31) |
| 106 CASH - P/R CLEARING | 2,000.00 |
| 113 PETTY CASH AND OTHER | 6,330.00 |
| | ---------- |
| **TOTAL CASH** | (150,005.31) |
| | ---------- |
| 124 ACCOUNTS RECEIVABLE | 3,030,977.40 |
| 12401 A/R - CONTRA | (1,300,000.00) |
| 134 A/R ACCRUED | 261,718.91 |
| | ---------- |
| **TOTAL TRADE RECEIVABLES** | 1,992,696.31 |
| | ---------- |
| NET TRADE RECEIVABLES | 1,992,696.31 |
| 125 REIMBURSEMENT RECEIVABLE | 109,377.29 |
| | ---------- |
| **TOTAL ACCOUNTS RECEIVABLE** | 2,102,073.60 |
| | ---------- |
| 138 NITROGEN INVENTORY | 2,240.42 |
| 139 ADDITIVE INVENTORY | 4,331.92 |
| 251 PREPAID INSURANCE | 532,014.80 |
| 252 PREPAID CONTRIBUTION EXP. | 4,866.29 |
| 263 PREPAID RIGHTS OF WAY | 8,067.94 |
| 271 PREPAID RENT | 30,062.59 |
| 273 PREPAID LICENSES & TAXES | 4,933.30 |
| 275 PREPAID OTHER EXPENSES | 121,187.32 |
| 278 DEPOSITS | 17,425.78 |
| | ---------- |
| **TOTAL OTHER CURRENT ASSETS** | 731,740.01 |
| | ---------- |
| **TOTAL CURRENT ASSETS** | 3,848,650.34 |
| | ========== |
| 266 INVESTMENTS | 2,435,718.43 |

**FIXED ASSETS**

| | |
|---|---:|
| 201 LAND | 1,136,136.67 |
| 206 RIGHT OF WAY | (3,209.23) |
| 204 AMONT RIGHTS OF WAY | (10,689.01) |
| 207 OFFICE FURNITURE & EQUIP | 720,629.11 |
| 208 ALLOWANCE FOR DEPRECIATION | (805,439.06) |
| 209 BUILDINGS | 1,564,603.33 |
| 210 ALLOWANCE FOR DEPRECIATION | (864,305.10) |
| 211 PLANT & EQUIPMENT | 30,450,608.31 |
| 212 ALLOWANCE FOR DEPRECIATION | (19,765,876.78) |
| 215 VEHICLES | 133,951.14 |
| 216 ALLOWANCE FOR DEPRECIATION | (64,977.34) |
| 218 CONSTRUCTION IN PROGRESS | 446,139.04 |
| | ---------- |
| **TOTAL GROSS FIXED ASSETS** | 34,734,941.19 |
| **TOTAL ALLOW. FOR DEPRECIATION** | (30,983,418.51) |
| | ========== |

ST SERVICES
ALLIANCE FUNDS
ST SERVICES - CONSOLIDATED
NOVEMBER 30, 1992

TOTAL FIXED ASSETS                    $5,745,305.88
                                      ------------

TOTAL ASSETS                          $6,790,516.55
                                      ============

ST SERVICES
BALANCE SHEET
ST SERVICES - CONSOLIDATED
NOVEMBER 30, 1992

**CURRENT LIABILITIES**

| | | |
|---|---:|---:|
| 311 ACCOUNTS PAYABLE - OTHER | 277,461.28 | |
| 314 ACCOUNTS PAYABLE | 674,733.71 | |
| 316 A/P ACCRUED | 135,000.00 | |
| 323 EMPLOYEE DEDUCTIONS | 1,800.00 | |
| TOTAL ACCOUNTS PAYABLE | 1,091,395.99 | |
| 336 ACCRUED INCOME TAX -FEDERAL | 203,450.00 | |
| 337 ACCRUED INCOME TAX - STATE | 15,445.00 | |
| 338 CURRENT DEFERRED TAXES | (5,295.00) | |
| 348 ACCRUED FRANCHISE TAX | (12,461.00) | |
| TOTAL TAXES PAYABLE | 206,139.00 | |
| 366 ACCRUED PROPERTY TAXES | 332,037.23 | |
| 368 ACCRUED SALARIES | 25,843.79 | |
| 370 ACCRUED OTHER EXP | 100,759.61 | |
| 371 ACCRUED INCENTIVE BONUS | 488,793.00 | |
| 373 ACCRUED JVM FEES | 3,431.00 | |
| 390 CURRENT DEFERRED INCOME | 1,648,430.14 | |
| TOTAL OTHER CURRENT LIABILITIES | 2,279,164.55 | |
| TOTAL CURRENT LIABILITIES | | 3,663,473.55 |
| 407 DEFERRED INCOME TAXES | 10,059,122.00 | |
| TOTAL NON CURRENT LIABILITIES | | 10,059,122.00 |

**CAPITAL**

| | | |
|---|---:|---:|
| 457 PAID-IN CAPITAL | 7,096,988.40 | |
| 458 HOME OFFICE-W.R.GRACE | 738,983.24 | |
| 466 GRACE ACCOUNT 1140 | (545,147.23) | |
| 467 RETAINED EARNINGS | 38,771,186.46 | |
| NET INCOME | 5,021,790.13 | |
| TOTAL CAPITAL | | 51,067,720.00 |
| TOTAL LIABILITY & CAPITAL | | 64,790,316.55 |

SCHEDULE 6.01(b)

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

JURISDICTION OF INCORPORATION AND
QUALIFICATIONS OF EACH CORPORATION

I.    Support Terminal Services, Inc.

    (a) State of Incorporation:  Delaware

    (b) Qualified to do Business in:

| | | |
|---|---|---|
| Alabama | Illinois | New Jersey |
| Arizona | Indiana | New York |
| Arkansas | Maryland | Oklahoma |
| California | Michigan | Texas |
| Georgia | Minnesota | Virginia |
| Wisconsin | | |

II.   Standard TransPipe Corp.

    (a)  State of Incorporation:  Delaware

    (b)  Qualified to do Business in:

| | | |
|---|---|---|
| Alabama | Illinois | Texas |
| Florida | New Mexico | |
| Georgia | Oklahoma | |

III.  Standard TransPipe (Virginia), Inc.

    (a)  State of Incorporation:  Virginia

IV.   StanTrans, Inc

    (a)  State of Incorporation:  Delaware

    (b)  Qualified to do Business in:

    Texas

SCHEDULE 6.03

**SUPPORT TERMINAL SERVICES, INC.**
**STS AGREEMENT AND PLAN OF MERGER**

CONSENTS AND APPROVALS

NONE

SCHEDULE 6.04(a)

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

CAPITALIZATION OF EACH CORPORATION

I.     Support Terminal Services, Inc.
       Authorized Shares - 10,000 Common Shares -
                                $1.00 par value
       Sole Shareholder:     Grace Energy Corporation
       Issued Shares:        10 Shares - May 31, 1989

II.    Standard TransPipe Corp.
       Authorized Shares - 100 Common Shares -
                                $1.00 par value
       Sole Shareholder:     Support Terminal Services, Inc.
       Issued Shares:        100 Shares - April 6, 1989

III.   Standard TransPipe (Virginia), Inc.
       Authorized Shares - 1,000 Common Shares -
                                $1.00 par value
       Sole Shareholder:     Standard TransPipe Corp.
       Issued Shares:        1,000 Shares - November 1, 1979

IV.    StanTrans, Inc.
       Authorized Shares - 1,000 Capital Shares -
                                $1.00 par value
       Sole Shareholder:     Support Terminal Services, Inc.
       Issued Shares:        100 Shares - April 6, 1989

H:\Shared\Skaye\WP\Energy\ST\60.4a

SCHEDULE 6.05(a)


SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

MANAGEMENT REPORTS


Unaudited Balance Sheets as of December 31, 1989, 1990 and
1991 and Unaudited Income Statements for each of the three
years ended December 31, 1991

H:\Shared\Skaye\WP\Energy\ST\6.05a

NATURAL RESOURCES GROUP
ST SERVICES

DECEMBER 31,1989    COMPARATIVE BALANCE SHEET
($000)

| ASSETS | JAN.1 CURR.YR. (1) | CURRENT MONTH END ACTUAL (2) | BUDGET (3) | LAST YR. (4) |
|---|---|---|---|---|
| 1 CASH AND CASH EQUIVALENTS | (306) | (500) | (325) | (306) |
| 2 OTH.TIME DEP.&OTH.MKT.SEC | | | | |
| 3 NOTES & ACCTS. REC.-TRADE | 1,838 | 1,710 | 1,914 | 1,838 |
| 4 CUS. NOTES & DRAFTS DISC. | | | | |
| 5 INTRA/INTER CORP.REC(PAY) | | | | |
| 6 NOTES&ACCOUNTS REC.-OTHER | 80 | 268 | 200 | 80 |
| 7 ALLOW. FOR DOUBTFUL ACC. | (177) | (13) | (172) | (177) |
| 8 INV.-RAW&PACKAG.MATERIALS | | | | |
| 9 INV.-WORK IN PROCESS | | | | |
| 10 INV.-FINISHED GOODS | | | | |
| 11 TOTAL INVENTORIES | | | | |
| 12 OTHER CURRENT ASSETS | 504 | 113 | 500 | 504 |
| 13 TOTAL CURRENT ASSETS | 1,939 | 1,608 | 2,117 | 1,939 |
| 14 PROPERTIES AND EQUIPMENT | 65,081 | 77,329 | 67,992 | 65,081 |
| 15 LESS-ACCUM. DEPR. & DEPL. | (21,118) | (33,000) | (23,193) | (21,118) |
| 16 NET PROPERTIES & EQUIP. | 43,963 | 44,329 | 44,799 | 43,963 |
| 17 INVEST.-IN CONSOL. SUBS. | | | | |
| 18 INVEST.-PARTNERSHIPS | | | | |
| 19 INVEST.-AFFIL.&70-50&1 | | | | |
| 20 INVEST.-OTHER | | | | |
| 21 GOODWILL | | | | |
| 22 ALLOW. FOR AMORT.-GOODWILL | | | | |
| 23 MRG EQUIP./TOOLS-NET | | | | |
| 24 OTHER ASSETS | 7 | 33 | | 7 |
| 25 TOTAL ASSETS | $ 45,909 | $ 55,970 | $ 46,916 | $ 45,909 |
| | | | | |
| LIABILITIES | | | | |
| 26 L.T. DEBT DUE IN ONE YR. | | | | |
| 27 LOANS PAYABLE | | | | |
| 28 ACCTS.AND ACCEPT. PAYABLE | 601 | 775 | 425 | 601 |
| 29 U.S.&FOREIGN TAXES ON INC | 266 | (209) | 248 | 266 |
| 30 CURRENT DEF. INC. TAXES | (801) | (1,681) | | (801) |
| 31 OTHER CURRENT LIABILITIES | 318 | 528 | 375 | 318 |
| 32 TOTAL CURRENT LIABILITIES | 381 | (589) | 1,048 | 381 |
| 33 DEFERRED INCOME | 37 | 37 | 37 | 37 |
| 34 NON-CURR.DEF.TAXES ON INC | 9,565 | 12,045 | 10,235 | 9,565 |
| 35 OTHER NONCURR.LIABILITIES | | | | |
| 36 LONG TERM DEBT | | | | |
| 37 MINORITY INTEREST | | | | |
| 38 CAPITAL STOCK | | | | |
| 39 TREASURY STOCK | | | | |
| 40 PAID IN CAPITAL | | | | |
| 41 RETAINED EARN.-BEG. OF YR | 3,550 | 3,549 | 3,550 | 3,550 |
| 42 R/E-INC/(LOSS) CURRENT YR | 22,103 | 26,069 | 25,698 | 22,103 |
| 43 R/E-DIVIDENDS DECLARED/PD | 3,971 | | 3,675 | 3,971 |
| 44 R/E-OTHER(CHANGES)/CREDIT | | | | (5) |
| 45 RETAINED EARN.-END OF PER | 26,069 | 28,268 | 29,573 | 26,069 |
| 46 R/E ADJ.-EQUITY ADJUST. | (1,190) | (11,301) | (3,768) | (1,190) |
| 47 INTRA/INTER CORP-COMP.N.Y | 7,497 | 62 | 6,268 | 7,497 |
| 48 INTRA/INTER CORP-CR.UNITS | | 12,115 | | |
| 49 INTRA/INTER CORP-OTHER | | | | |
| 50 TOT.INTRA/INTER CORP.ACC. | 6,307 | 12,177 | 2,480 | 6,307 |
| 51 TOT.LIAB.&STHLDR/MBR OFRS EQ | $ 45,909 | $ 55,970 | $ 46,916 | $ 45,909 |

| SALIENT STATISTICS | THIS YEAR (1) | BUDGET (2) | LAST YEAR (3) |
|---|---|---|---|
| 1 MONTHS REC. ON HAND | 1.08 MO | 1.28 MO | 1.26 MO |
| 2 MONTHS INV. ON HAND | | | |
| 3 NET SALES&REV.(CUM.BASIS) | 18,966 | 17,897 | 17,499 |
| 4 GCE (MONTH END) | 44,494 | 35,603 | 35,926 |
| 5 AVG. GCE-PROJ. FULL YR. | 36,735 | 35,994 | 32,304 |
| 6 PROJ. % RETURN ON GCE | 10.5 % | 10.2 % | 12.3 % |
| 7 TCE CAP.(INIT(MONTH END) | 49,500 | 38,451 | 37,755 |
| 8 TCE BEF. CAP. LEASES-(NE) | 44,494 | 35,603 | 35,926 |
| 9 AVG.TCE BEF.CAP.LEASE-PFY | 36,735 | 35,994 | 32,304 |
| 10 PROJ. % RETURN ON AVG.TCE | 10.5 % | 10.2 % | 12.3 % |
| 11 WKG. CAP. INC/(DEC) PFY | 639 | 87 | 197 |
| 12 ST LOANS(INCL/DEC) PFY | | | |
| 13 WORKING CAPITAL (MON.END) | 2,197 | 1,049 | 1,558 |
| 14 WKG.CAP.%OF NET SALES&REV | 11.6 % | 6.0 % | 8.9 % |
| 15 CAP.EXPENDITURES-(Y-T-D) | 12,482 | 2,736 | 1,559 |
| 16 CAP.EXPENDITURES-(P-F-Y) | 12,482 | 2,736 | 1,559 |
| 17 PURCHASES MRG EQUIP./TOOL | | | |
| 18 BAD DEBT EXPENSE | | | |
| 19 FOR.EXCH.TAX EFF-EXP/(CR) | | | |
| 20 NET FASB 52 ADJ. C/IL1-GS | | | |
| 21 NET LIFO ADJ.G/IL1-GS | | | |
| 22 TOTAL LIFO ADJ.-INVENT. | | | |

DECEMBER 31,1989
(000)

REPORT OF OPERATIONS
YEAR TO DATE

NATURAL RESOURCES GROUP
31 SERVICES

|  | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) |
|---|---|---|---|---|---|---|---|---|---|---|
|  | STATEMENT OF INCOME | | | VARIANCE (FAV)/(UNFAV) ACTUAL VS. | | | | % OF SALES | | |
|  | | | | AMOUNT | | PERCENT | | | | |
|  | ACTUAL | BUDGET | LAST YR. | BUDGET | LAST YR. | BUDGET | LAST YR. | ACTUAL | BUDGET | LAST YR. |
| 1 NET SALES & REVENUES | 18,966 | 17,897 | 17,499 | 1,069 | 1,467 | 6.0% | 8.4% | 100.0 | 100.0 | 100.0 % |
| 2 TOT.COST/SALES REF.DEP. | 2,618 | 2,052 | 1,752 | (566) | (866) | (4.3) | (49.9) | 50.7 | 50.6 | 50.5 |
| 3 DEPR.CHARGED TO PROD. | 1,591 | 2,037 | 1,639 | 83 | (155) | 4.0 | (7.9) | 10.1 | 11.5 | 10.5 |
| 4 AMORT.MRG EQUIP./TOOLS |  |  |  |  |  |  |  |  |  |  |
| 5 GROSS PROFIT-SALES & REV. | 7,374 | 6,788 | 6,918 | 506 | 456 | 8.6 | 6.6 | 36.9 | 37.9 | 39.5 |
| OPERATING EXPENSES: |  |  |  |  |  |  |  |  |  |  |
| 6 SELLING |  |  |  |  |  |  |  |  |  |  |
| 7 DEPR-SELL.(AG.CHEM) |  |  |  |  |  |  |  |  |  |  |
| 8 GEN.& ADMINISTRATIVE | 1,092 | 1,085 | 1,010 | (7) | (82) | (.6) | (8.1) | 5.8 | 6.1 | 5.8 |
| 9 RESEARCH DEVELOPMENT |  |  |  |  |  |  |  |  |  |  |
| 10 INTER-CC.ROYALTIES |  |  |  |  |  |  |  |  |  |  |
| 11 DEPR-HOT CHGD-PROD. |  |  |  |  |  |  |  |  |  |  |
| 12 EXPL./DRY HOLES ABAND. |  |  |  |  |  |  |  |  |  |  |
| 13 TOTAL OPERATING EXPENSES | 1,092 | 1,085 | 1,010 | (7) | (82) | (.6) | (8.1) | 5.8 | 6.1 | 5.8 |
| 14 OPERATING INCOME(LOSS) | 6,282 | 5,703 | 5,908 | 579 | 374 | 10.2 | 6.3 | 33.1 | 31.9 | 33.4 |
| NON-OPER. INCOME(EXPENSE): |  |  |  |  |  |  |  |  |  |  |
| 15 INTEREST INCOME | 10 |  |  | 10 | 10 | N.D. | N.D. | 0.1 |  |  |
| 16 INTEREST (EXPENSE) |  |  |  |  |  |  |  |  |  |  |
| 17 DIVIDEND INC.-OUTSIDERS |  |  |  |  |  |  |  |  |  |  |
| 18 OTHER INCOME | (38) |  | 10 | (38) | (48) | N.D. | (100.0) | (.2) |  |  |
| 19 OTHER (EXPENSES) | (46) |  | (2) | (46) | (44) | N.D. | (4700.0) | (.5) |  | 0.1 |
| 20 PRE-OP START-UP (EXP.) |  |  |  |  |  |  |  |  |  |  |
| 21 INCOME(LOSS) BEF.TAXES | 6,158 | 5,703 | 5,916 | 455 | 242 | 8.0 | 4.1 | 32.5 | 31.9 | 33.8 |
| 22 U.S.FED.IX.+(NET OF ITC) | 371 | 695 | 805 | 324 | 334 | 34.6 | 35.1 | 2.0 | 3.9 | 4.6 |
| 23 FOR.& U.S.STATE TAXES | 135 | 135 | 122 |  | (13) | 3.4 | (11.5) | 0.7 | 0.7 | 0.7 |
| 24 DEFERRED TAXES | 1,696 | 1,196 | 1,018 | (481) | (683) | (41.6) | (47.3) | 8.9 | 6.7 | 5.8 |
| 25 INCOME(LOSS)AFTER TAXES | 4,000 | 3,675 | 3,971 | 325 | 29 | 8.8 | 0.7 | 21.1 | 20.5 | 22.7 |
| 26 OTHER AFED.-AFTER TAX |  |  |  |  |  |  |  |  |  |  |
| 27 INC(LOSS) - PARTNERSHIPS |  |  |  |  |  |  |  |  |  |  |
| 28 EQ.IN NET INC.OF AFFIL. |  |  |  |  |  |  |  |  |  |  |
| 29 FRGN.EXCH.GAIN(LOSS)-NET |  |  |  |  |  |  |  |  |  |  |
| 30 AMORT.PURCH.GOODWILL |  |  |  |  |  |  |  |  |  |  |
| 31 CONT.IF.TAX-POS.(NEG.) |  |  |  |  |  |  |  |  |  |  |
| 32 INC(LOSS) BEF. S.I.(GS) | 4,000 | 3,675 | 3,971 | 325 | 29 | 8.8 | 0.7 | 21.1 | 20.5 | 22.7 |
| 33 INC(LOSS) DEF-S.I.(MIN) |  |  |  |  |  |  |  |  |  |  |
| 34 S.I.(BEF).TAX-MIN.INT.) |  |  |  |  |  |  |  |  |  |  |
| 35 S.I.BILAFT.TAX-G.S.) |  |  |  |  |  |  |  |  |  |  |
| 36 S.I.BILAFT.TAX-G.S.) |  |  |  |  |  |  |  |  |  |  |
| 37 NET INC(LOSS)-MIN.SH. |  |  |  |  |  |  |  |  |  |  |
| 38 NET INC(LOSS)-GE.SH. | 4,000 | 3,675 | 3,971 | 325 | 29 | 8.8 | 0.7 | 21.1 | 20.5 | 22.7 % |

DECEMBER 31,1990          COMPARATIVE BALANCE SHEET

**GRACE ENERGY**
**S1 SERVICES**

## Comparative Balance Sheet

| (1000) | (1) JAN.1 CURR.YR. | (2) ACTUAL | (3) BUDGET | (4) LAST YR. |
|---|---|---|---|---|
| ASSETS | | | | |
| 1 CASH AND CASH EQUIVALENTS | (506) | (246) | (325) | (500) |
| 2 OTH.TIME DEP.&OTH.MKT.SEC | | | | |
| 3 NOTES & ACCTS. REC.-TRADE | 1,710 | 2,206 | 1,779 | 1,710 |
| 4 CUS. NOTES & DRAFTS DISC. | | | | |
| 5 INTRA/INTER CORP.REC.(PAY) | | | | |
| 6 ALLOW.ACCOUNTS REC.-OTHER | 268 | 74 | 150 | 268 |
| 7 ALLOW.ACCOUNTS REC.-OTHER | (13) | (101) | (25) | (13) |
| 8 INV.-RAW&PACKAG.MATERIALS | | | | |
| 9 INV.-WORK IN PROCESS | | | | |
| 10 INV.-FINISHED GOODS | | | | |
| 11 INV.-LIFO RESERVE | | | | |
| 12 TOTAL INVENTORIES | | | | |
| 13 OTHER CURRENT ASSETS | 143 | 442 | 250 | 143 |
| 14 TOTAL CURRENT ASSETS | 1,608 | 2,069 | 1,829 | 1,608 |
| 15 PROPERTIES AND EQUIPMENT | 77,329 | 83,972 | 82,371 | 77,329 |
| 16 LESS-ACCUM. DEPR. & DEPL. | (23,000) | (25,485) | (25,753) | (23,000) |
| 17 NET PROPERTIES AND EQUIP. | 54,329 | 58,487 | 56,618 | 54,329 |
| 18 INVEST.-PARTNERSHIPS | | | | |
| 19 INVEST.-AFFIL.(20-50%) | | | | |
| 20 INVEST.-OTHER | | | | |
| 21 GOODWILL | | | | |
| 22 ALLOW.FOR AMORT.GOODWILL | | | | |
| 23 NRG EQUIP./TOOLS-NET | 33 | 117 | | 33 |
| 24 OTHER ASSETS | | | | |
| 25 TOTAL ASSETS | $ 55,970 | $ 61,473 | $ 58,447 | $ 55,970 |
| LIABILITIES | | | | |
| 26 L.T. DEBT DUE IN ONE YR. | | | | |
| 27 LOANS PAYABLE | | | | |
| 28 ACCTS.AND ACCEPT. PAYABLE | 775 | 901 | 600 | 775 |
| 29 U.S.&FOREIGN TAXES ON INC | (209) | 318 | 150 | (209) |
| 30 CURRENT DEF. INC. TAXES | (1,681) | (1,351) | (1,099) | (1,681) |
| 31 OTHER CURRENT LIABILITIES | 526 | 1,012 | 600 | 526 |
| 32 TOTAL CURRENT LIABILITIES | (589) | 871 | 251 | (589) |
| 33 DEFERRED INCOME | 20 | 7 | 60 | 20 |
| 34 NON-CURR.DEF.TAXES ON INC | 12,045 | 13,831 | 13,358 | 12,045 |
| 35 OTHER NONCURR.LIABILITIES | | | | |
| 36 LONG TERM DEBT | | | | |
| 37 MINORITY INTEREST | | | | |
| 38 CAPITAL STOCK | | | | |
| 39 TREASURY STOCK | | | | |
| 40 PAID IN CAPITAL | 3,549 | 3,549 | 3,550 | 3,549 |
| 41 RETAINED EARN.-BEG. OF YR | 26,069 | 26,769 | 30,112 | 26,069 |
| 42 R/E-INC/(LOSS) CURRENT YR | 4,000 | 4,839 | 4,584 | 4,000 |
| 43 R/E-DIVIDENDS DECLARED/PD | | | | |
| 44 R/E-OTHER/CHARGES/CREDIT | | | | |
| 45 RETAINED EARN.-END OF PER | 28,768 | 33,608 | 34,716 | 28,768 |
| 46 FAS NO.52 EQUITY ADJUST. | (11,301) | | (11,301) | (11,301) |
| 47 INTRA/INTER CORP-CGP.A.V | 62 | 9,604 | 7,583 | 62 |
| 48 INTRA/INTER CORP-CK-UNITS | 12,115 | | | 12,115 |
| 49 INTRA/INTER CORP-OTHER | | | | |
| 50 TOT.INTRA/INTER CORP.ACC. | 12,177 | 9,604 | 6,222 | 12,177 |
| 51 TOT.LIAB.&STOCKHOLDERS EQ | $ 55,970 | $ 61,473 | $ 58,447 | $ 55,970 |

## Salient Statistics

| | (1) THIS YEAR | (2) BUDGET | (3) LAST YEAR |
|---|---|---|---|
| 1 MONTHS REC. ON HAND | 1.15 MO | 1.00 MO | 1.08 MO |
| 2 MONTHS INV. ON HAND | | | |
| 3 NET SALES&REV.(CGR.BASIS) | 23,106 | 21,255 | 18,966 |
| 4 CCE (MONTH END) | 46,761 | 44,578 | 44,494 |
| 5 AVG. GCE-PROJ. FULL YR. | 45,464 | 44,724 | 36,335 |
| 6 PROJ. % RETURN ON AGE | 10.6 % | 10.2 % | 10.9 % |
| 7 ICE CAP-LIMIT(MONTH END) | 50,488 | 48,144 | 49,500 |
| 8 ICE BEF. CAP. LEASES-(INE) | 46,761 | 44,578 | 44,494 |
| 9 AVG.ICE BEF.CAP.LEASE-PFV | 45,464 | 44,724 | 45,335 |
| 10 PROJ.% RETURN ON AVG.ICE | 10.6 % | 10.2 % | 10.9 % |
| 11 AVG. CAP. INC/(DEC) PFV | (202) | (1,277) | 639 |
| 12 ST LOANS(INC)/DEC PFV | | | |
| (EXCL.FROM WKG.CAP.ABOVE | | | |
| 13 WORKING CAPITAL (MON-END) | 1,995 | 1,578 | 2,197 |
| 14 WKG.CAP.&CF NET SALES&REV | 8.6 % | 7.4 % | 11.6% |
| 15 CAP-EXPENDITURES-(YT-T-D) | 4,764 | 3,764 | 12,482 |
| 16 CAP.EXPENDITURES-IP-F-T) | 6,764 | 3,764 | 12,482 |
| 17 PURCHASES NRG EQUIP./TOOL | | | |
| 18 BAD DEBT EXPENSE | | | |
| 19 FOR.EXCH-TAX EFF.-EXP/(ICR) | | | |
| 20 NET FAS# 52 ADJ. C/(L)-GS | | | |
| 21 NET LIFO ADJ.G/(L)-GS | | | |
| 22 TOTAL LIFO ADJ.-INVENT. | | | |

GRACE ENERGY
SI SERVICES

REPORT OF OPERATIONS
YEAR TO DATE

DECEMBER 31,1990
(1000)

| | | STATEMENT OF INCOME | | | VARIANCE FAV/(UNFAV) ACTUAL VS. | | | | % OF SALES | | |
| | | | | | AMOUNT | | PERCENT | | | | |
| | | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) |
| | | ACTUAL | BUDGET | LAST YR. | BUDGET | LAST YR. | BUDGET | LAST YR. | ACTUAL | BUDGET | LAST YR. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | NET SALES & REVENUES | $ 23,106 | $ 21,255 | $ 18,966 | $ 1,851 | $ 4,110 | 8.7 % | 21.8 % | 100.0 % | 100.0 % | 100.0 % |
| 2 | TOT.COST/SALES BEF.DEP. | 11,523 | 10,309 | 9,610 | (1,214) | (1,903) | (11.8) | (19.8) | 49.9 | 48.5 | 50.7 |
| 3 | DEPR.CHARGED TO PROD. | 2,514 | 2,643 | 1,931 | 129 | (540) | 4.9 | (27.1) | 10.9 | 12.4 | 10.4 |
| 4 | AMRT.MRG EQUIP./TOOLS | | | | | | | | | | |
| 5 | GROSS PROFIT-SALES & REV. | 9,049 | 8,303 | 7,334 | 746 | 1,695 | 9.2 | 23.0 | 39.2 | 39.1 | 38.9 |
| | OPERATING EXPENSES: | | | | | | | | | | |
| 6 | SELLING | | | | | | | | | | |
| 7 | DEPR.-SELL.(AC.CHEM) | | | | | | | | | | |
| 8 | GEN.& ADMINISTRATIVE | 1,236 | 1,208 | 1,092 | (28) | (144) | (2.3) | (13.2) | 5.3 | 5.7 | 5.8 |
| 9 | RESEARCH DEVELOPMENT | | | | | | | | | | |
| 10 | INTER-CO.ROYALTIES | | | | | | | | | | |
| 11 | DEPR.NOT CHGD.PROD. | | | | | | | | | | |
| 12 | EXPL.DRY HOLES ABAND. | | | | | | | | | | |
| 13 | TOTAL OPERATING EXPENSES | 1,236 | 1,208 | 1,092 | (28) | (144) | (2.3) | (13.2) | 5.3 | 5.7 | 5.8 |
| 14 | (OPERATING INCOME(LOSS) | 7,833 | 7,095 | 6,282 | 738 | 1,551 | 10.4 | 24.7 | 33.9 | 33.1 | 33.1 |
| | NON-OPER.INCOME(EXPENSE)) | | | | | | | | | | |
| 15 | INTEREST INCOME | 6 | | | 6 | (4) | N.D. | (10.0) | | | 0.1 |
| 16 | INTEREST (EXPENSE) | | | | | | | | | | |
| 17 | DIVIDEND INC.-OUTSIDERS | | | | | | | | | | |
| 18 | OTHER INCOME | 2 | | 10 | 2 | 40 | N.D. | N.D. | | | |
| 19 | OTHER(EXPENSES) | (379) | | (38) | (379) | (283) | N.D. | (299.8) | (1.6) | | (1.2) |
| 20 | PRE-OP START-UP (EXP.) | | | (96) | | | | | | | (.5) |
| 21 | INCOME(LOSS) BEF.TAXES | 7,462 | 7,093 | 6,158 | 367 | 1,304 | 5.2 | 21.2 | 32.3 | 33.4 | 32.5 |
| 22 | U.S.FED.TX.(NET OF ITC) | 443 | 436 | 321 | (7) | (72) | (1.6) | (19.1) | 0.5 | 0.7 | 2.0 |
| 23 | FGN.& U.S.STATE TAXES | 119 | 149 | 91 | 30 | (28) | 20.1 | (30.8) | | 0.1 | 0.5 |
| 24 | DEFERRED TAXES | 2,061 | 1,926 | 1,698 | (135) | (365) | (7.0) | (21.5) | 8.9 | | 8.9 |
| 25 | INCOME(LOSS)AFTER TAXES | 4,839 | 4,584 | 4,000 | 255 | 839 | 5.6 | 21.0 | 20.9 | 21.6 | 21.1 |
| 26 | OTHER ADJ.(AFTER TAX) | | | | | | | | | | |
| 27 | INC(LOSS) PARTNERSHIPS | | | | | | | | | | |
| 28 | INC(LOSS) INC.OF AFFIL. | | | | | | | | | | |
| 29 | FRGN.EXCH.GAI(LOSS)-NET | | | | | | | | | | |
| 30 | AMRT.PURCH.GOODWILL | | | | | | | | | | |
| 31 | N.Y.ADJUSTMENTS | | | | | | | | | | |
| 32 | CONT.AF.TAX-POS.(NEG.) | | | | | | | | | | |
| 33 | INC(LOSS) BEF.S.I.(GS) | 4,839 | 4,584 | 4,000 | 255 | 839 | 5.6 | 21.0 | 20.9 | 21.6 | 21.1 |
| 34 | INC(LOSS) BEF.S.I.(MIN) | | | | | | | | | | |
| 35 | S.I.(AFT.TAX-MIN-INT.) | | | | | | | | | | |
| 36 | S.I.021AF1.TAX-G.S.) | | | | | | | | | | |
| 37 | NET INC(LOSS)-MIN.SH. | | | | | | | | | | |
| 38 | NET INC(LOSS)-GR.SH. | $ 4,839 | $ 4,584 | $ 4,000 | $ 255 | $ 839 | 5.6 % | 21.0 % | 20.9 % | 21.6 % | 21.1 % |

GRACE ENERGY
ST SERVICES

DECEMBER 31,1991
(000)

## COMPARATIVE BALANCE SHEET

| ASSETS | JAN 1 CURR.YR. (1) | CURRENT MONTH END ACTUAL (2) | BUDGET (3) | LAST YR. (4) |
|---|---|---|---|---|
| 1 CASH AND CASH EQUIVALENTS | (246) | (301) | (500) | (246) |
| 2 OTH-TIME DEP.&OTH.MKT.SEC | | | | |
| 3 NOTES & ACCTS. REC.-TRADE | 2,206 | 2,799 | 2,050 | 2,206 |
| 4 CUS. NOTES & DRAFTS DISC. | | | | |
| 5 INTRA/INTER CORP./RECIPAT | | | | |
| 6 NOTES&ACCOUNTS REC.-OTHER | 574 | 153 | 500 | 574 |
| 7 ALLOW. FOR DOUBTFUL ACC. | (107) | | | (107) |
| 8 INV.-RAW&PACKAG.MATERIALS | | | | |
| 9 INV.-WORK IN PROCESS | | | | |
| 10 INV.-FINISHED GOODS | | | | |
| 11 INV.-LIFO RESERVE | | | | |
| 12 TOTAL INVENTORIES | | | | |
| 13 OTHER CURRENT ASSETS | 412 | 210 | 772 | 412 |
| 14 TOTAL CURRENT ASSETS | 2,865 | 3,363 | 2,822 | 2,880 |
| 15 PROPERTIES AND EQUIPMENT | 83,572 | 80,851 | 85,838 | 83,260 |
| 16 LESS-ACCUM. DEPR. & DEPL. | (25,185) | (25,158) | (27,996) | (25,165) |
| 17 NET PROPERTIES & EQUIP. | 58,387 | 60,639 | 59,812 | 58,187 |
| 18 INVEST.-PARTNERSHIPS | | | | |
| 19 INVEST.-AFFIL.(20-50%) | | | | |
| 20 INVEST.-OTHER | | | | |
| 21 GOODWILL | | | | |
| 22 ALLOW.FOR AMORT.GOODWILL | | | | |
| 23 MAG EQUIP./TOOLS-NET | | | | |
| 24 OTHER ASSETS | 117 | 117 | | 117 |
| 25 TOTAL ASSETS | $ 61,433 | $ 64,013 | $ 62,664 | $ 61,413 |
| LIABILITIES | | | | |
| 26 L.T. DEBT DUE IN ONE YR. | | | | |
| 27 LOANS PAYABLE | | | | |
| 28 ACCTS.AND ACCEPT. PAYABLE | 903 | 1,277 | 800 | 901 |
| 29 U.S.&FOREIGN TAXES ON INC | 430 | 430 | 166 | 318 |
| 30 CURRENT DEF. INC. TAXES | (1,357) | (1,121)A | (1,526) | (1,357) |
| 31 OTHER CURRENT LIABILITIES | 1,012 | 2,414 | 790 | 1,074 |
| 32 TOTAL CURRENT LIABILITIES | 874 | 3,009 A | 190 | 874 |
| 33 DEFERRED INCOME | 7 | | 10 | |
| 34 NON-CURR.DEF.TAXES ON INC | 13,831 | 14,974 A | 14,647 | 13,931 |
| 35 OTHER NONCURR.LIABILITIES | | | | |
| 36 LONG TERM DEBT | | | | |
| 37 MINORITY INTEREST | | | | |
| 38 CAPITAL STOCK | | | | |
| 39 TREASURY STOCK | | | | |
| 40 PAID IN CAPITAL | 3,549 | 3,549 A | 3,549 | 3,549 |
| 41 RETAINED EARN.-BEG. OF YR | 20,769 | 33,606 | 33,657 | 20,769 |
| 42 R/E-INC(LOSS) CURRENT YR | 4,839 | 5,178 | 5,290 | 4,839 |
| 43 R/E-DIVIDENDS DECLARED/PD | | | | |
| 44 R/E-OTHERCHARGES/CREDIT | | | | |
| 45 RETAINED EARN.-END OF PER | 33,608 | 38,784 | 38,947 | 33,608 |
| 46 FAS NO.52-EQUITY ADJUST. | | | | |
| 47 INTRA/INTER CORP-CORP.H.Y | 9,604 | 3,727 | 3,321 | 9,604 |
| 48 INTRA/INTER CORP-GR.UNITS | | | | |
| 49 INTRA/INTER CORP-OTHER | | | | |
| 50 TOT.INTRA/INTER COMP.ACC. | 9,604 | 3,727 A | 3,321 | 9,604 |

## SALIENT STATISTICS

| | THIS YEAR (1) | BUDGET (2) | LAST YEAR (3) |
|---|---|---|---|
| 1 MONTHS REC. ON HAND | 1.36 MO | 1.02 MO | 1.15 MO |
| 2 MONTHS INV. ON HAND | | | |
| 3 NET SALES&REV.(CON.BASIS) | 24,694 | 24,155 | 23,106 |
| 4 GCE (MONTH END) | 46,060 | 45,817 | 46,701 |
| 5 AVG. GCE-PROJ. FULL YR. | 44,342 | 46,250 | 46,704 |
| 6 PROJ. % RETURN ON AGCE | 11.2 % | 11.4 % | 10.6 % |
| 7 TCE CAP.LIMIT(MONTH END) | 49,945 | 49,482 | 48,144 |
| 8 TCE BEF. CAP. LEASES-INI | 46,060 | 45,817 | 46,701 |
| 9 AVG.TCE BEF.CAP-LEASE-PFY | 46,342 | 46,250 | 45,464 |
| 10 PROJ. % RETURN ON AVG.TCE | 11.2 % | 11.4 % | 10.6 % |
| 11 WKG. CAP. INC/(DEC) PFY | (11,377) | (1,520) | (202) |
| 12 WKG. CAP. INC/(DEC) YTD | (11,377) | | 122 |
| 13 ST LOANS(INC)/DEC PFY YTD | | | |
| 14 (EXCL.FROM WKG.CAP-ABOVE | | | |
| 15 WORKING CAPITAL (MON-END) | 373 | 2,632 | 1,995 |
| 16 WKG.CAP.%OF NET SALES&REV | 1.5 % | 10.9 % | 8.6 % |
| 17 CAP.EXPENDITURES-(Y-T-D) | 5,092 | 3,023 | 4,284 |
| 18 CAP.EXPENDITURES-(P-F-T) | 5,092 | 3,823 | 4,284 |
| 19 PURCHASES MAG EQUIP./TOOL | | | |
| 20 BAD DEBT EXPENSE | | | |
| 21 FOR.EXCH.TAX EFF.(EXP/(CR) | | | |
| 22 NET FAS9 52 ADJ. G/(IL)-GS | | | |
| 23 TOTAL LIFO ADJ.-INVENT. | | | |

(A) BALANCES NOTED DO NOT AGREE TO FINAL SR BALANCE SHEET. REFER TO
RECONCILIATION IN WORKFILE FOR FURTHER INFORMATION.

(EMBER 31,1991
.00)

REPORT OF OPERATIONS
YEAR TO DATE

ACC.CHGE.
ST SERVICES

| | STATEMENT OF INCOME | | | VARIANCE FAV/(UNFAV) ACTUAL VS. | | | | % OF SALES | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | AMOUNT | | PERCENT | | | | |
| | (1) ACTUAL | (2) BUDGET | (3) LAST YR. | (4) BUDGET | (5) LAST YR. | (6) BUDGET | (7) LAST YR. | (8) ACTUAL | (9) BUDGET | (10) LAST YR. |
| NET SALES & REVENUES | 25,694 | 24,155 | 23,106 | 539 | 1,588 | 2.2 % | 6.9 % | 100.0 % | 100.0 % | 100.0 % |
| 1 TCI-COST/SALES BEF.DEP. | 11,850 | 11,779 | 11,523 | (71) | (327) | (.6) | (2.8) | 46.0 | 48.8 | 49.9 |
| 2 DEPR.CHARGED TO PROD. | 2,631 | 2,681 | 2,514 | 60 | (307) | 2.1 | (12.2) | 11.4 | 11.9 | 10.9 |
| 3 INDRI.MRG EQUIP./TOOLS | | | | | | | | | | |
| 5 GROSS PROFIT-SALES & REV. | 10,023 | 9,495 | 9,069 | 528 | 954 | 5.6 | 10.5 | 40.6 | 39.3 | 39.2 |
| OPERATING EXPENSES: | | | | | | | | | | |
|   SELLING | | | | | | | | | | |
| 6 DEPR.-SELL.(AG.CHEM) | | | | | | | | | | |
| 7 GEN.& ADMINISTRATIVE | 1,372 | 1,376 | 1,236 | 4 | (136) | 0.3 | (11.0) | 5.4 | 5.7 | 5.3 |
| 8 RESEARCH DEVELOPMENT | | | | | | | | | | |
| 9 INTER-CO.ROYALTIES | | | | | | | | | | |
| 10 DEPR.NOT CHGD.PROD. | | | | | | | | | | |
| 11 EXPL./DRY HOLES ABAND. | | | | | | | | | | |
| 3 TOTAL OPERATING EXPENSES | 1,372 | 1,376 | 1,236 | 4 | (136) | 0.3 | (11.0) | 5.4 | 5.7 | 5.3 |
| 4 OPERATING INCOME(LOSS) | 8,651 | 8,119 | 7,833 | 532 | 818 | 6.6 | 10.4 | 35.0 | 33.6 | 33.9 |
| NON-OPER.INCOME(EXPENSE)): | | | | | | | | | | |
| 15 INTEREST INCOME | 1 | 27 | 6 | (26) | (5) | (96.3) | (83.3) | | 0.1 | |
| 16 INTEREST (EXPENSE) | | | | | | | | | | |
| 17 DIVIDEND INC.-OUTSIDERS | | | | | | | | | | |
| 18 OTHER INCOME | 67 | | 2 | 67 | 65 | N.D. | 3250.0 | 0.3 | | |
| 19 OTHER(EXPENSES) | (318) | | (379) | (718) | (339) | N.D. | (89.4) | (12.9) | | (1.6) |
| 20 PRE-OP START-UP (EXP.) | | | | | | | | | | |
| 21 INCOME(LOSS) BEF.TAXES | 8,001 | 8,146 | 7,462 | (145) | 539 | (1.8) | 7.2 | 32.4 | 33.7 | 32.3 |
| 22 U.S.FED.TX.(NET OF ITC) | 1,182 | 387 | 443 | (795) | (739) | (205.4) | (166.8) | 4.8 | 1.6 | 1.9 |
| 23 FOR.& U.S.STATE TAXES | 113 | 6 | 8 | (107) | (105) | (11) | (24.1) | 0.5 | 0.5 | 0.1 |
| 24 DEFERRED TAXES | 1,351 | 2,336 | 2,061 | 820 | 543 | 35.1 | 28.1 | 6.5 | 9.8 | 8.9 |
| 25 INCOME(LOSS)AFTER TAXES | 5,178 | 5,290 | 4,839 | (112) | 339 | (2.1) | 7.0 | 21.0 | 21.9 | 20.9 |
| 26 OTHER ADJ.(AFTER TAX)1 | | | | | | | | | | |
| 27 INC(LOSS)-PARTNERSHIPS | | | | | | | | | | |
| 28 EQ.IN NET INC.OF AFFIL. | | | | | | | | | | |
| 29 FRGN.EXCH.GAIN(LOSS)-NET | | | | | | | | | | |
| 30 AMORT.PURCH.GOODWILL | | | | | | | | | | |
| 31 N.Y.ADJUSTMENTS | | | | | | | | | | |
| 32 (CONT.AF.TAX-POS.,INEG.) | | | | | | | | | | |
| 32 INC(LOSS) BEF. S.1.(GS) | 5,178 | 5,290 | 4,839 | (112) | 339 | (2.1) | 7.0 | 21.0 | 21.9 | 20.9 |
| 33 INC(LOSS) DEF.-S.1.(MIN) | | | | | | | | | | |
| 34 S.1.(AFT.)TAX-MIN.INT.) | | | | | | | | | | |
| 35 S.1.61(AFT.TAX-G.S.) | | | | | | | | | | |
| 36 S.1.62(AFT.TAX-G.S.) | | | | | | | | | | |
| 37 NET INC(LOSS)-MIN.SH. | | | | | | | | | | |
| 38 NET INC(LOSS)-GR.SH. | 5,178 | 5,290 | 4,839 | (112) | 339 | (2.1) | 7.0 | 21.0 % | 21.9 % | 20.9 % |

SCHEDULE 6.05(b)


SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

MANAGEMENT REPORTS


Unaudited Balance Sheets as of November 30, 1991 and Unaudited
Income Statements for each of the eleven months ended
November 30, 1991 and 1992

H:\Shared\Skaye\WP\Energy\ST\6.05a

NOVEMBER 30,1991          COMPARATIVE BALANCE SHEET

(000)

GRACE ENERGY
ST SERVICES                    7A

## COMPARATIVE BALANCE SHEET

| ASSETS | (1) JAN.1 CUR.YR. | (2) ACTUAL | (3) BUDGET | (4) LAST YR. |
|---|---|---|---|---|
| 1 CASH AND CASH EQUIVALENTS | $ (246) | $ (341) | $ (500) | $ (414) |
| 2 OTH.TIME DEP.-OTH.MKT.SEC | | | | |
| 3 NOTES & ACCTS. REC.-TRADE | 2,206 | 3,011 | 1,990 | 2,158 |
| 4 CUS. NOTES & DRAFTS DISC. | | | | |
| 5 INTRA/INTER CORP-REC(PAY) | | (37) | | 657 |
| 6 NOTES&ACCOUNTS REC.-OTHER | 571 | | 500 | (94) |
| 7 ALLOW. FOR DOUBTFUL ACC. | (107) | | | |
| 8 INV.-RAW&PACKAG.MATERIALS | | | | |
| 9 INV.-WORK IN PROCESS | | | | |
| 10 INV.-FINISHED GOODS | | | | |
| 11 INV.-LIFO RESERVE | | | | |
| 12 TOTAL INVENTORIES | 412 | 373 | 200 | 390 |
| 13 OTHER CURRENT ASSETS | | | | |
| 14 TOTAL CURRENT ASSETS | 2,849 | 3,003 | 2,190 | 2,697 |
| 15 PROPERTIES AND EQUIPMENT | 83,972 | 88,383 | 87,279 | 83,739 |
| 16 LESS-ACCUM. DEPR.& DEPL. | (25,485) | (27,912) | (27,750) | (25,279) |
| 17 NET PROPERTIES & EQUIP. | 58,487 | 60,471 | 59,529 | 58,460 |
| 18 INVEST.-PARTNERSHIPS | | | | |
| 19 INVEST.-AFFIL.(20-50%) | | | | |
| 20 INVEST.-OTHER | | | | |
| 21 GOODWILL | | | | |
| 22 ALLOW. FOR AMORT.GOODWILL | | | | |
| 23 NRG EQUIP./TOOLS-NET | | | | |
| 24 OTHER ASSETS | 117 | | | |
| 25 TOTAL ASSETS | $ 61,473 | $ 63,474 | $ 61,719 | $ 61,157 |
| LIABILITIES | | | | |
| 26 L.T. DEBT DUE IN ONE YR. | $ | $ | $ | $ |
| 27 LOANS PAYABLE | | | | |
| 28 ACCTS AND ACCEPT. PAYABLE | 901 | 797 | 800 | 768 |
| 29 U.S.&FOREIGN TAXES ON INC | 318 | 239 | 89 | 103 |
| 30 CURRENT DEF. INC.TAXES | (1,357) | (1,394) | (1,526) | (1,520) |
| 31 OTHER CURRENT LIABILITIES | 1,012 | 2,712 | 750 | 651 |
| 32 TOTAL CURRENT LIABILITIES | 874 | 2,354 | 113 | 2 |
| 33 DEFERRED INCOME | 7 | | 10 | |
| 34 NON-CURR.DEF.TAXES ON INC | 13,031 | 15,346 | 16,454 | 13,046 |
| 35 OTHER NONCURR.LIABILITIES | | | | |
| 36 LONG TERM DEBT | | | | |
| 37 MINORITY INTEREST | | | | |
| 38 CAPITAL STOCK | | | | |
| 39 TREASURY STOCK | | | | |
| 40 PAID IN CAPITAL | 3,549 | 3,549 | 3,549 | 3,549 |
| 41 RETAINED EARN.-BEG. OF YR | 28,769 | 33,607 | 33,657 | 28,768 |
| 42 R/E-INC/(LOSS) CURRENT YR | 4,839 | 4,818 | 4,789 | 4,176 |
| 43 R/E-DIVIDENDS DECLARED/PD | | | | |
| 44 R/E-OTHER(CHARGES)/CREDIT | | | | |
| 45 RETAINED EARN.-END OF PER | 33,608 | 38,425 | 38,446 | 32,944 |
| 46 FAS NO.52-EQUITY ADJUST. | | (114) | | 168 |
| 47 INTRA/INTER CORP-CORP.N.Y | 9,604 | 3,514 | 3,147 | 10,642 |
| 48 INTRA/INTER CORP-GR.UNITS | | | | |
| 49 INTRA/INTER CORP-OTHER | | | | |
| 50 TOT.INTRA/INTER CORP.ACC. | 9,604 | 3,400 | 3,147 | 10,810 |
| | $ 61,473 | $ 63,474 | $ 61,719 | $ 61,157 |

| SALIENT STATISTICS | (1) THIS YEAR | (2) BUDGET | (3) LAST YEAR |
|---|---|---|---|
| 1 MONTHS REC. ON HAND | 1.48 MO | 0.99 MO | 1.05 MO |
| 2 MONTHS INV. ON HAND | | | |
| 3 NET SALES&REV.(CON.BASIS) | 22,530 | 22,105 | 20,966 |
| 4 GCE (MONTH END) | 45,774 | 45,142 | 47,303 |
| 5 AVG. GCE-PROJ. FULL YR. | 46,481 | 46,258 | 45,464 |
| 6 PROJ. % RETURN ON AGCE | 11.4 % | 11.4 % | 10.6 % |
| 7 TCE CAP.LIMIT(MONTH END) | 45,753 | 45,753 | 46,914 |
| 8 TCE BEF. CAP. LEASES-(ME) | 45,774 | 45,142 | 47,303 |
| 9 AVG.TCE BEF.CAP-LEASE-PFY | 46,481 | 46,258 | 45,464 |
| 10 PROJ. % RETURN ON AVG.TCE | 11.4 % | 11.4 % | 10.6 % |
| 11 WKG. CAP. INC/(DEC) PFY | (1,372) | | (202) |
| 12 WKG. CAP. INC/(DEC) YTD | (1,383) | (2,081) | 659 |
| 13 ST LOANS(INC)/DEC PFY | | | |
| (EXCL.FROM WKG.CAP.ABOVE | | | |
| 14 WORKING CAPITAL (NON.END) | 649 | 2,077 | 2,695 |
| 15 WKG.CAP.%OF NET SALES&REV | 2.7 % | 8.6 % | 11.0 % |
| 16 CAP.EXPENDITURES-(Y-T-D) | 4,637 | 3,264 | 6,461 |
| 17 CAP.EXPENDITURES-(P-F-T) | 5,469 | 3,623 | 6,764 |
| 18 PURCHASES NRG EQUIP./TOOL | | | |
| 19 BAD DEBT EXPENSE | | | |
| 20 FOR.EXCH.TAX EFF.EXP/(CR) | | | |
| 21 NET FAS# 52 ADJ. G/(L)-GS | | | |
| 22 NET LIFO ADJ.G/(L)-GS | | | |
| 23 TOTAL LIFO ADJ.-INVENT. | | | |

GRACE ENERGY
ST SERVICES
REPORT OF OPERATIONS
YEAR TO DATE

NOVEMBER 30, 1991
($000)

|  | STATEMENT OF INCOME | | | VARIANCE FAV/(UNFAV) ACTUAL VS. | | | | % OF SALES | | |
|  | | | | AMOUNT | | PERCENT | | | | |
|  | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) |
|  | ACTUAL | BUDGET | LAST YR. | BUDGET | LAST YR. | BUDGET | LAST YR. | ACTUAL | BUDGET | LAST YR. |
| 1 NET SALES & REVENUES | $ 22,530 | $ 22,105 | $ 20,966 | $ 425 | $ 1,564 | 1.9 % | 7.5 % | 100.0 % | 100.0 % | 100.0 % |
| 2 TOT.COST/SALES BEF.DEP. | 10,718 | 10,858 | 10,936 | 140 | 218 | 1.3 | 2.0 | 47.6 | 49.1 | 52.2 |
| 3 DEPR.CHARGED TO PROD. | 2,575 | 2,635 | 2,299 | 60 | (276) | 2.3 | (12.0) | 11.4 | 11.9 | 11.0 |
| 4 AMORT.MRG EQUIP./TOOLS | | | | | | | | | | |
| 5 GROSS PROFIT-SALES & REV. | 9,237 | 8,612 | 7,731 | 625 | 1,506 | 7.3 | 19.5 | 41.0 | 39.0 | 36.9 |
| OPERATING EXPENSES: | | | | | | | | | | |
| 6 SELLING | | | | | | | | | | |
| 7 DEPR.-SELL.(AG.CHEM) | | | | | | | | | | |
| 8 GEN.& ADMINISTRATIVE | 1,223 | 1,262 | 1,119 | 39 | (104) | 3.1 | (19.3) | 5.4 | 5.7 | 5.3 |
| 9 RESEARCH DEVELOPMENT | | | | | | | | | | |
| 10 INTER-CO.ROYALTIES | | | | | | | | | | |
| 11 DEPR.NOT CHGD.PROD. | | | | | | | | | | |
| 12 EXPL./DRY HOLE&C ABAND. | | | | | | | | | | |
| 13 TOTAL OPERATING EXPENSES | 1,223 | 1,262 | 1,119 | 39 | (104) | 3.1 | (19.3) | 5.4 | 5.7 | 5.3 |
| 14 OPERATING INCOME(LOSS) | 8,014 | 7,350 | 6,612 | 664 | 1,402 | 9.0 | 21.2 | 35.6 | 33.3 | 31.5 |
| NON-OPER. INCOME(EXPENSE): | | | | | | | | | | |
| 15 INTEREST INCOME | | 24 | 4 | (23) | (3) | (95.8) | (75.0) | | 0.1 | |
| 16 INTEREST (EXPENSE) | | | | | | | | | | |
| 17 DIVIDEND INC.-OUTSIDERS | | | | | | | | | | |
| 18 OTHER INCOME | (6) | | 2 | (6) | (8) | N.D. | (400.0) | | | (.4) |
| 19 OTHER(EXPENSES) | (560) | | (133) | (560) | (427) | N.D. | (321.1) | (2.5) | | |
| 20 PRE-OP START-UP (EXP.) | | | | | | | | | | |
| 21 INCOME(LOSS) BEF.TAXES | 7,449 | 7,374 | 6,485 | 75 | 964 | 1.0 | 14.9 | 33.1 | 33.4 | 30.9 |
| 22 U.S.FED.TX.(NET OF ITC) | 992 | 319 | 172 | (673) | (820) | (211.0) | (476.7) | 4.4 | 1.4 | 0.8 |
| 23 FOR. & U.S.STATE TAXES | 123 | 121 | 162 | (2) | 39 | (1.7) | 24.1 | 0.5 | 0.5 | 0.8 |
| 24 DEFERRED TAXES | 1,516 | 2,145 | 1,970 | 629 | 455 | 29.3 | 23.1 | 6.7 | 9.7 | 9.4 |
| 25 INCOME(LOSS)AFTER TAXES | 4,818 | 4,789 | 4,176 | 29 | 642 | 0.6 | 15.4 | 21.4 | 21.7 | 19.9 |
| 26 INC(LOSS)-AFTER TAX(II) | | | | | | | | | | |
| 27 EQ.IN NET INC.OF AFFIL. | | | | | | | | | | |
| 28 FRGN.EXCH.GAIN(LOSS)-NET | | | | | | | | | | |
| 29 AMORT.PURCH.GOODWILL | | | | | | | | | | |
| 30 N.T.ADJUSTMENTS | | | | | | | | | | |
| 31 CONT.AF.TAX-POS.(NEG.) | | | | | | | | | | |
| 32 INC(LOSS) BEF. S.I.(IGS) | 4,818 | 4,789 | 4,176 | 29 | 642 | 0.6 | 15.4 | 21.4 | 21.7 | 19.9 |
| 33 INC(LOSS) BEF.S.I.(MIN) | | | | | | | | | | |
| 34 S.I.(AFT.TAX-MIN.INT.) | | | | | | | | | | |
| 35 S.I.01(AFT.TAX-G.S.) | | | | | | | | | | |
| 36 S.I.02(AFT.TAX-G.S.) | | | | | | | | | | |
| 37 NET INC(LOSS)-MIN.SH. | | | | | | | | | | |
| 38 NET INC(LOSS)-GR.SH. | $ 4,818 | $ 4,789 | $ 4,176 | $ 29 | $ 642 | 0.6 % | 15.4 % | 21.4 % | 21.7 % | 19.9 % |

NOVEMBER 30,
(1000)

| ASSETS | (1) JAN 1 CUR.YR. | (2) ACTUAL | (3) BUDGET | (4) LAST YR. |
|---|---|---|---|---|
| | | CURRENT MONTH END | | |
| 1 CASH AND CASH EQUIVALENTS | (310) | (358) | (400) | (344) |
| 2 OTH-TIME DEF.CLOTH.MKT-SEC | | | | |
| 3 NOTES & ACCTS REC-TRADE | 2,799 | 3,293 | 3,586 | 3,011 |
| 4 CUS-NOTES & DRAFTS DISC. | | | | |
| 5 INTRA/INTER CORP.REC(PAY) | 153 | 109 | 200 | (37) |
| 6 NOTES&ACCOUNTS REC-OTHER | | | | |
| 7 NOTES-AFOR DOUBTFUL ACC. | | | | |
| 8 INV-RAW&PACKG.MATERIALS | | | | |
| 9 INV-WORK IN PROCESS | | | | |
| 10 INV-FINISHED GOODS | | | | |
| 11 INV-LIFO RESERVE | | | | |
| 12 TOTAL INVENTORIES | 740 | 752 | 475 | 373 |
| 13 OTHER CURRENT ASSETS | | | | |
| 14 TOTAL CURRENT ASSETS | 3,382 | 3,796 | 3,861 | 3,003 |
| 15 PROPERTIES AND EQUIPMENT | 88,803 | 94,135 | 94,372 | 88,383 |
| 16 LESS-ACCUM. DEPR. & DEPL. | (28,158) | (30,990) | (31,144) | (27,912) |
| 17 NET PROPERTIES & EQUIP. | 60,679 | 63,745 | 63,228 | 60,471 |
| 18 INVEST-PARTNERSHIPS | | | | |
| 19 INVEST-AFFIL.(20-50%) | | | | |
| 20 INVEST-OTHER | | | | |
| 21 GOODWILL | | | | |
| 22 ALLOW. FOR AMORT.GOODWILL | | | | |
| 23 NRG EQUIP./TOOLS-NET | | | | |
| 24 OTHER ASSETS | (18) | | | |
| 25 TOTAL ASSETS | $ 64,043 | $ 67,541 | $ 67,089 | $ 63,474 |
| LIABILITIES | | | | |
| 26 L.T. DEBT DUE IN ONE YR. | | | | |
| 27 LOANS PAYABLE | 1,277 | 1,091 | 800 | 797 |
| 28 ACCTS.AND ACCEPT. PAYABLE | 430 | 323 | 346 | 239 |
| 29 U.S.&FOREIGN TAXES ON INC | (1,112) | (5) | (651) | (1,391) |
| 30 CURRENT DEF. INC. TAXES | | | | |
| 31 OTHER CURRENT LIABILITIES | 2,414 | 2,276 | 2,145 | 2,712 |
| 32 TOTAL CURRENT LIABILITIES | 3,009 | 3,685 | 2,640 | 2,354 |
| 33 DEFERRED INCOME | 14,974 | 15,059 | 15,883 | 15,346 |
| 34 NON-CURR.DEF.TAXES ON INC | | | | |
| 35 OTHER NONCURR.LIABILITIES | | | | |
| 36 LONG-TERM DEBT | | | | |
| 37 MINORITY INTEREST | | | | |
| 38 CAPITAL STOCK | | | | |
| 39 TREASURY STOCK | | | | |
| 40 PAID IN CAPITAL | 3,549 | 3,549 | 3,549 | 3,549 |
| 41 RETAINED EARN.-BEG. OF YR | 33,606 | 38,384 | 30,795 | 33,602 |
| 42 R/E-INC/(LOSS) CURRENT YR | 5,178 | 5,068 | 5,073 | 4,818 |
| 43 R/E-DIVIDENDS DECLARED/PD | | | | |
| 44 R/E-OTHER EARN./END OF PER | 38,784 | 43,852 | 43,868 | 38,425 |
| 45 FAS NO.52 EQUITY ADJUST. | | | | |
| 46 R/E-OTHER | | | | |
| 47 INTRA/INTER CORP-CORP.N.Y | | | | (111) |
| 48 INTRA/INTER CORP-GR.UNITS | 3,727 | 1,396 | 1,149 | 3,914 |
| 49 INTRA/INTER CORP-OTHER | | | | |
| 50 IOI-INTRA/INTER CORP.ACC. | 3,727 | 1,396 | 1,149 | 3,800 |
| 51 IOI-LIAB.&STOCKHOLDERS EQ | $ 64,043 | $ 67,541 | $ 67,089 | $ 63,474 |

ST SERVICES

| SALIENT STATISTICS | (1) THIS YEAR | (2) BUDGET | (3) LAST YEAR |
|---|---|---|---|
| 1 MONTHS REC. ON HAND | 1.37 MO | 1.42 PC | 1.46 PC |
| 2 MONTHS INV. ON HAND | 24,558 | 22,565 | 22,530 |
| 3 NET SALES&REV.(CON-BASIS) | | | |
| 4 GCE (MONTH END) | 48,797 | 48,566 | 45,774 |
| 5 AVG. GCE-PROJ. FULL YR. | 47,319 | 47,331 | 46,382 |
| 6 PROJ. % RETURN ON ACCE | 11.8 % | 11.7 % | 11.2 % |
| 7 TCE CAP.LIMIT(MONTH END) | 48,566 | 48,566 | 46,753 |
| 8 TCE BEF. CAP. LEASES-(ME) | 48,797 | 48,566 | 45,774 |
| 9 AVG.TCE BEF.CAP.LEASE-PFY | 47,319 | 47,331 | 46,382 |
| 10 PROJ. % RETURN ON AVG.TCE | 11.8 % | 11.7 % | 11.2 % |
| 11 WKG. CAP. INC/(DEC) PFY | 671 | 734 | (1,377) |
| 12 WKG. CAP. INC/(DEC) YTD | 845 | 1,304 | (1,383) |
| 13 ST LOANS(INC)/DEC.PFY | | | |
| 14 (EXCL.FOREIGN WKG.CAP.ABOVE) | | | |
| 15 WORKING CAP %OF NET SALES&REV | 111 | 1,221 | 649 |
| 16 WKG.CAP %OF NET SALES&REV | 0.4 % | 4.6 % | 2.7 % |
| 17 CAP.EXPENDITURES-(P-Y-D) | 5,923 | 5,067 | 4,637 |
| 18 CAP.EXPENDITURES-(P-F-Y) | 6,324 | 6,407 | 5,092 |
| 19 PURCHASES NRG EQUIP./TOOL | | | |
| 20 BAD DEBT EXPENSE | | | |
| 21 NET FASB 52 ADJ. G/(L)-GS | | | |
| 22 NET LIFO ADJ-G/(L)-GS | | | |
| 23 TOTAL LIFO ADJ-INVEN. | | | |

NOVEMBER 199_
($000)

GRACE ... ST SERVICES

PERIOD OF ... ION / YEAR TO DATE

| | | STATEMENT OF INCOME | | | VARIANCE FAV/(UNFAV) ACTUAL VS. | | | | % OF SALES | | |
| | | | | | AMOUNT | | PERCENT | | | | |
| | | (1) ACTUAL | (2) BUDGET | (3) LAST YR. | (4) BUDGET | (5) LAST YR. | (6) BUDGET | (7) LAST YR. | (8) ACTUAL | (9) BUDGET | (10) LAST YR. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | NET SALES & REVENUES | $ 24,558 | $ 23,585 | $ 22,530 | $ 973 | $ 2,028 | 4.1% | 9.0% | 100.0% | 100.0% | 100.0% |
| 2 | TOT.COST/SALES BEF.DEP. | 12,177 | 11,242 | 10,718 | (935) | (1,459) | (8.3) | (13.6) | 49.6 | 47.7 | 47.6 |
| 3 | DEPR.CHARGED TO PROD. | 2,852 | 2,921 | 2,575 | .69 | (277) | 2.4 | (10.8) | 11.6 | 12.4 | 11.4 |
| 4 | AMORT.INTG EQUIP./TOOLS | - | - | - | | | | | | | |
| 5 | GROSS PROFIT-SALES & REV. | 9,529 | 9,422 | 9,237 | 107 | 292 | 1.1 | 3.2 | 38.8 | 35.9 | 41.0 |
| 6 | OPERATING EXPENSES: | | | | | | | | | | |
| 7 | SELLING | | | | | | | | | | |
| 8 | DEPR.-SELL.(AG.CHEM) | 1,293 | 1,382 | 1,223 | 89 | (70) | 6.4 | (5.7) | 5.3 | 5.9 | 5.4 |
| 9 | GEN.& ADMINISTRATIVE | | | | | | | | | | |
| 10 | RESEARCH& DEVELOPMENT | | | | | | | | | | |
| 11 | INTER-CO.ROYALTIES | | | | | | | | | | |
| 12 | DEPR.NOT CHGD.PROD. | | | | | | | | | | |
| 13 | EXPL..DRY HOLE& ABAND. | 1 | | | | | | | | | |
| 13 | TOTAL OPERATING EXPENSES | 1,293 | 1,382 | 1,223 | 89 | (70) | 6.4 | (5.7) | 5.3 | 5.5 | 5.4 |
| 14 | OPERATING INCOME(LOSS) | 8,236 | 8,040 | 8,014 | 196 | 222 | 2.4 | 2.8 | 33.5 | 34.1 | 35.6 |
| 14 | NON-OPER.INCOME(EXPENSE): | | | | | | | | | | |
| 15 | INTEREST INCOME | | | 1 | | (1) | | (100.0) | | | |
| 16 | INTEREST (EXPENSE) | | | | | | | | | | |
| 17 | DIVIDEND INC.-OUTSIDERS | | | | | | | | | | |
| 18 | OTHER INCOME | (5) | | (6) | (5) | 1 | N.D. | 16.7 | | | |
| 19 | OTHER(EXPENSES) | | | | | | | | | | |
| 20 | PRE-OP START-UP (EXP.) | (398) | (184) | (560) | (214) | 162 | (116.3) | 28.9 | (1.6) | (.8) | (2.5) |
| 21 | INCOME(LOSS) BEF.TAXES | 7,833 | 7,856 | 7,449 | (23) | 384 | (.3) | 5.2 | 31.9 | 33.3 | 33.1 |
| 22 | U.S.FED.TX.(NET OF ITC) | 1,434 | 1,474 | 992 | 40 | (442) | 2.7 | (44.6) | 5.8 | 6.2 | 4.4 |
| 23 | FOR.& U.S.STATE TAXES | 1,165 | 1,185 | 1,123 | 20 | (22) | 12.1 | (17.9) | 0.6 | 0.7 | 0.5 |
| 24 | DEFERRED TAXES | 1,146 | 1,144 | 1,516 | (42) | 330 | (3.7) | 21.8 | 4.8 | 4.5 | 6.7 |
| 25 | INCOME(LOSS)AFTER TAXES | 5,068 | 5,073 | 4,818 | (5) | 250 | (.1) | 5.2 | 20.6 | 21.5 | 21.4 |
| 26 | OTHR ADJ.AFTER TAX)1) | | | | | | | | | | |
| 27 | INC(LOSS)- PARTNERSHIPS | | | | | | | | | | |
| 28 | EQ.IN NET INC.OF AFFIL. | | | | | | | | | | |
| 29 | FRGN.EXCH.GAIN(LOSS)-NET | | | | | | | | | | |
| 30 | AMORT.PURCH.GOODWILL | | | | | | | | | | |
| 31 | M.Y.ADJUSTMENTS | | | | | | | | | | |
| 31 | CONT.AF.TAX-POS.(NEG.) | | | | | | | | | | |
| 32 | INC(LOSS) BEF. S.I.(GS) | 5,068 | 5,073 | 4,818 | (5) | 250 | (.1) | 5.2 | 20.6 | 21.5 | 21.4 |
| 33 | INC(LOSS) BEF.S.I.(MIN) | | | | | | | | | | |
| 34 | S.I.(AFI.TAX-MIN.INT.) | | | | | | | | | | |
| 35 | S.I.B1(AFI.TAX-G.S.) | | | | | | | | | | |
| 36 | S.I.B2(AFI.TAX-G.S.) | | | | | | | | | | |
| 37 | NET INC(LOSS)-MIN.SH. | | | | | | | | | | |
| 38 | NET INC(LOSS)-GR.SH. | $ 5,068 | $ 5,073 | $ 4,818 | $ (5) | $ 250 | (.11)% | 5.2% | 20.6% | 21.5% | 21.4% |

SCHEDULE 6.05(c)


### SUPPORT TERMINAL SERVICES, INC.
### STS AGREEMENT AND PLAN OF MERGER

### <u>EXCEPTIONS</u>


1.    Pension liability under FAS 87 is recorded on Grace's books.

2.    Postretirement benefit liability under FAS 106 is recorded on Grace's books.


H:\Shared\Skaye\WP\Energy\ST\6.05c

SCHEDULE 6.05(d)

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

RECONCILIATION OF NOVEMBER 30, 1992
LEGAL ENTITY BALANCE SHEET TO
NOVEMBER 30, 1992 MANAGEMENT REPORT

H:\Shared\Skaye\WP\Energy\ST\6.05c

Grace Energy Corporation
Support Terminal Services, Inc.
Balance Sheet Reconciliation - November 30, 1992

JBrown
STNOVRECRLS
10:47 AM 12/1/92

| | ST Services Legal Entity B/S | Adjustments | Adjusted B/S to Reconcile to mngmt. reporting | |
|---|---|---|---|---|
| **Current Assets** | | | | |
| 104 Cash - Depository | $2,000 | | $2,000 | (1) |
| 105 Cash - Disbursements | (358,328) | | (358,328) | (1) |
| 106 Cash - P/R Clearing | 2,000 | | 2,000 | (1) |
| 112 Petty Cash and other | 6,330 | | 6,330 | (1) |
| Total Cash | (358,098) | | (358,098) | |
| | | | | |
| 124 Accounts Receivable | 3,030,977 | | 3,030,977 | (2) |
| 12401 A/R Contra | (1,300,000) | 1,300,000 (A) | 0 | (2) |
| 128 A/R Accrued | 261,719 | | 261,719 | (2) |
| Total Accounts Receivable | 1,992,696 | 1,300,000 | 3,292,696 | |
| | | | | |
| 126 Reimbursement Receivable | 109,377 | | 109,377 | (3) |
| Total Accounts Receivable | 2,102,073 | 1,300,000 | 3,402,073 | (3) |
| | | | | |
| 156 Nitrogen Inventory | 8,248 | | 8,248 | (4) |
| 159 Additive Inventory | 4,532 | | 4,532 | (4) |
| 251 Prepaid Insurance | 632,016 | | 632,016 | (4) |
| 262 Prepaid Conversion Exp | 4,644 | | 4,644 | (4) |
| 263 Prepaid Right of Way | 8,006 | | 8,006 | (4) |
| 271 Prepaid Rent | 60,842 | | 60,842 | (4) |
| 273 Prepaid Licenses & Taxes | 4,623 | | 4,623 | (4) |
| 275 Prepaid Other Expenses | 121,166 | | 121,166 | (4) |
| 276 Deposits | 17,428 | | 17,428 | (4) |
| Total Other Current Assets | 761,740 | | 761,740 | |
| | | | | |
| Total Current Assets | 2,105,718 | 1,300,000 | 3,796,716 | |
| | | | | |
| 284 Investments | 3,649,490 | (3,649,490) (B) | 0 | (5) |
| | | | | |
| 202 Land | 1,136,135 | | 1,136,135 | (6) |
| 205 Right of Way | 43,209 | | 43,209 | (6) |
| 206 Amort. of Right of Way | (38,689) | | (38,689) | (6) |
| 207 Office Furniture & Equip | 758,928 | | 758,928 | (6) |
| 208 Allowance for Depreciation | (605,430) | | (605,430) | (6) |
| 209 Buildings | 1,344,493 | | 1,344,493 | (6) |
| 210 Allowance for Depreciation | (644,366) | | (644,366) | (6) |
| 211 Plant & Equipment | 90,650,601 | | 90,650,601 | (6) |
| 212 Allowance for Depreciation | (29,785,977) | | (29,785,977) | (6) |
| 215 Vehicles | 133,521 | | 133,521 | (6) |
| 216 Allowance for Depreciation | (94,976) | | (94,976) | (6) |
| 218 Construction in Progress | 668,156 | | 668,156 | (6) |
| Total Fixed Assets | 63,745,306 | | 63,745,306 | |
| | | | | |
| TOTAL ASSETS | 69,790,614 | (2,349,490) | 67,541,021 | |