Jlllcere
STMOVREC 2t.6
10:43 AM 12/14/92

Grace Energy Corporation
Support Terminal Services, Inc.
Balance Sheet Reconciliation - November 30, 1992

| | 6T Services Legal Entity B/S | Adjustments | Adjusted B/S to Reconcile to mngmt. reporting | |
|---|---|---|---|---|
| **Current Liabilities** | | | | |
| 313 Accounts Payable Other | $277,663 | | $277,663 | (7) |
| 314 Accounts Payable | 678,736 | | 678,736 | (7) |
| 316 A/P Accrued | 136,000 | | 136,000 | (7) |
| 323 Employee Deductions | 1,800 | | 1,800 | (7) |
| **Total Accounts Payable** | 1,091,399 | | 1,091,399 | |
| | | | | |
| 356 Accrued Income Tax - Federal | 292,430 | 23,600 (A) | 316,030 | (8) |
| 357 Accrued Income Tax - State | 10,444 | | 10,444 | (8) |
| 358 Current Deferred Taxes | (6,296) | | (6,296) | (8) |
| 360 Accrued Franchise Tax | (12,461) | | (12,461) | (8) |
| **Total Taxes Payable** | 284,118 | 23,600 | 317,718 | |
| | | | | |
| 366 Accrued Property Taxes | 222,217 | | 222,217 | (10) |
| 348 Accrued Salaries | 29,944 | | 29,944 | (10) |
| 370 Accrued Other Expense | 106,766 | | 106,766 | (10) |
| 371 Accrued Incentive Bonus | 466,763 | | 466,763 | (10) |
| 373 Accrued IPM Fees | 2,831 | (2,831) (A) | 0 | |
| 390 Current Deferred Income | 1,458,820 | | 1,458,820 | (10) |
| **Total Other Current Liabilities** | 2,278,164 | (2,831) | 2,276,333 | |
| | | | | |
| **Total Current Liabilities** | 3,663,672 | 20,769 | 3,684,441 | |
| | | | | |
| 407 Deferred Income Tax | 15,059,122 | | 15,059,122 | (11) |
| | | | | |
| **Total Non-Current Liabilities** | 16,069,122 | | 16,069,122 | |
| | | | | |
| 457 Paid In Capital | 7,008,080 | (3,849,490) (8) | 3,846,490 | (12) |
| 458 Home Office - W.R. Grace | 738,953 | 1,222,166 (A) | 1,961,118 | (16) |
| 468 Grace Account 1150 | (665,147) | | (665,147) | (16) |
| 467 Retained Earnings | 38,771,183 | 12,816 (A) | 38,784,000 | (13) |
| Net Income | 6,023,760 | 4,260 (A) | 6,028,000 | (14) |
| **Total Capital** | 51,067,720 | (2,270,236) | 48,797,441 | |
| | | | | |
| **TOTAL LIABILITIES & CAPITAL** | 149,790,614 | (12,219,490) | 167,541,021 | |

Grace Energy Corporation
Support Terminal Services, Inc.
Balance Sheet Reconciliation - November 30, 1992

## ASSETS

| | | |
|---|---|---|
| Cash and Cash Equivalents | Sum of (1)'s | ($356,096) |
| Notes & Accts. Rec. - Trade | Sum of (2)'s | 3,292,698 |
| Notes & Accts. Rec. - Other | Sum of (3)'s | 109,377 |
| Other Current Assets | Sum of (4)'s | 761,740 |
| Total Current Assets | | 3,795,718 |
| Properties & Equipment | Sum of (5)'s | 94,734,945 |
| Less - Accumulated Depr. & Depl. | Sum of (6)'s | (20,988,639) |
| Net Properties & Equip. | | 83,746,306 |
| Total Assets | | $67,541,024 |

## LIABILITIES

| | | |
|---|---|---|
| Accounts & Accept. Payable | Sum of (7)'s | $1,061,360 |
| U.S & Foreign Taxes on Income | Sum of (8)'s | 333,016 |
| Current Deferred Income Taxes | Sum of (9)'s | (6,266) |
| Other Current Liabilities | Sum of (10)'s | 2,275,323 |
| Total Current Liabilities | | 3,884,441 |
| Non-Current Def. Taxes on Income | Sum of (11)'s | 16,069,122 |
| Paid in Capital | Sum of (12)'s | 3,548,000 |
| Retained Earnings-Beginning of Year | Sum of (13)'s | 38,784,000 |
| P/E - Inc/(Loss) Current Year | Sum of (14)'s | 6,066,000 |
| Retained Earnings- End of Year | | |
| Intra/Inter Corporate | Sum of (16)'s | 1,395,461 |
| Total Liab. & Stockholders' Equity | | $67,541,024 |

JBloom
8TNOVREC.XLS
8:50 AM 12/14/92

Grace Energy Corporation
Support Terminal Services, Inc.
Footnote Explanations

(A)  Represents entry to transfer unit interest and receivable balances to separate unit for management reporting.

(B)  Represents elimination of investment against paid in capital.

JBloom
STHOVnEC XL 6
1:40 PM 12/14/02

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

## LITIGATION

<u>Duane Lednum vs. StanTrans, Inc., Americhem, Inc., and Texas City Railway Terminal</u> - 122nd Judicial District Court, Galveston, Texas, Docket No. 91-CV-1174.   Plaintiff alleges he was overcome by chemical fumes, fell and sustained multiple injuries.

<u>Bradley Roberts vs. StanTrans, Inc., Americhem, Inc., and Texas City Railway Terminal</u>- 122nd Judicial District Court, Galveston, Texas, Docket No. 91-CV-1091.   Plaintiff alleges was overcome by chemical fumes, fell and sustained multiple injuries.

<u>Donald Thompson vs. Support Terminal Services, Inc.</u>[1] - State Court of Fulton County, Georgia, Docket No. 90-VS-17457 H.   Plaintiff alleges he sustained crush-type amputation of tips of left ring and small fingers.

<u>Norman Trainer vs. StanTrans, Inc. and John Springer</u> - 10th Judicial District, District Court of Galveston County, Texas, Docket No. 92-CV-0379.   Plaintiff alleges he was exposed to chemicals allegedly released into the air.

## WORKERS' COMPENSATION CLAIMS

James W. Stevens - Claimant alleged that on 9/3/85 he strained his shoulder(s).   A claim for lost wages and medical payments was filed.

Michael Pucciarello - Claimant alleged that on 6/6/87 he fell, at which time he strained his lower back.   A claim for lost wages and medical payments was filed.

---

[1]   Support Terminal Services, Inc. has filed a third party complaint against Flash Foods Petroleum Products Corp.

Willie Wooten - Claimant alleged that on 12/7/90 he was struck by a flying object and sustained a broken/fractured pelvis. A claim for lost wages and medical payments was filed.

Thomas F. Talbott - Claimant alleged that on 1/13/92 he fell, and sustained a bruise/contusion/abrasion of the knee(s). A claim for lost wages and medical payments was filed.

Melvin Dale Bass - Claimant alleged that on 7/3/91 he suffered loss of consciousness; heart attack/cardiac. A claim for lost wages and medical payments was filed and is being contested.

Eldon L. Cameron - Claimant alleged that on 10/10/91 he strained his lower back. A claim for lost wages and medical payments was filed.

William Shifflett - Claimant alleged that on 1/29/92 she sustained a fall resulting in strained knee(s). A claim for lost wages and medical payments was filed.

Reginald D. Clark - Claimant alleged that on 8/22/92 he fell and sustained a strain to the trunk area of his body. A claim for lost wages and medical payments was filed.

Tommy Vance - Claimant alleged that on 8/14/92 he suffered an irritation to his eyes. A claim for lost wages and medical payments was filed.

## POTENTIAL CLAIMS

An automobile accident has been reported at the Baltimore, Maryland terminal which occurred on 12/10/92. This potential claim is in the process of being further investigated.

SCHEDULE 6.07(a)


**SUPPORT TERMINAL SERVICES, INC.**
**STS AGREEMENT AND PLAN OF MERGER**


**UNION CONTRACTS**


Articles of Agreement between Stantrans, Inc. (Texas City) and
Oil, Chemical and Atomic Workers International Union AFL-CIO
dated June 29, 1990.


H:\Shared\Skaye\WP\Energy\ST\6.07A

SCHEDULE 6:07(b)

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

<u>EMPLOYMENT AGREEMENTS</u>

NONE

<u>Schedule 6.07(c)</u>

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

<u>LABOR PRACTICES</u>


The National Labor Relations Board (as Case Number 5RC13766) on
August 17, 1992 notified Support Terminal Services, Inc. that there
was a petition by the International Chemical Workers Union signed
by a sufficient number of employees that a representation election
for the Baltimore terminal needed to be held.   The election was
held on September 16, 1992 and the results of the election were 4
for Union, 13 against and 1 challenged ballot.   The election was
certified by the NLRB on September 30, 1992.

Under the Union Agreement between StanTrans, Inc. and OCAW at the
Texas City, Texas terminal, an arbitration was held on November 11,
1992 on whether StanTrans had wrongfully discharged Mr. Steve A.
Branstetter.  The Arbitrator's decision is expected to be received
45 to 60 days from November 11, 1992.

H:\Shared\Skaye\WP\Energy\ST\6.07C

Schedule 6.08

**Support Terminal Services, Inc.**
**(ST Services)**
**Summary of Insurance**

| Line No. | (1) Insurer | (2) Policy Number | (3) Coverage | (4) Policy Period | (5) Limit of Liability | (6) Deductible |
|---|---|---|---|---|---|---|
| (1) | Industrial Risk Insurers and Various Domestic Insurers | 31-1-54040 Various | **Fire & Allied Perils (on Real and Personal Property)** <br> – Fire, lightning, extended coverage, vandalism, <br> – Malicious mischief and sprinkler leakage <br> – All risk, including difference-in-conditions <br> – Earthquake and Flood | 12/31/91 – 12/31/92 | Blanket $50,000,000 | $25,000 (a) |
| (2) | Industrial Risk Insurers | 31-3-48079 | **Boiler & Machinery** <br> – Comprehensive – Mechanical and Electrical Equipment <br> – Physical Damage | 12/31/91 – 12/31/92 | 50,000,000 | 25,000 (a) |
| (3) | Transamerica Insurance Company | 275102) | **Automobile Liability** | 06/30/92 – 06/30/93 | 2,500,000 | 500,000 (b) |
| (4) | CNA | COP00160454 (USA) <br> COP00160454(a) (CAN) | **Automobile Liability Deductible "Buy-Back"** <br> – Bodily Injury <br> – Property Damage | 06/30/92 – 06/30/93 | 7,500,000 | 2,500,000 (b) |
| (5) | CNA | COP00160454 (USA) <br> COP00160454(a) (CAN) | **General Liability** <br> – Liability – Bodily Injury and Property Damage | 06/30/92 – 04/30/93 | 7,500,000 | 2,500,000 (b) |
| (6) | Transportation Insurance Company, CNA, Nat'l Fire Ins. Co. of Hartford, Transportation Insurance Company | WC10-7417023 <br> WC20-7417023 <br> WC10-7419248 <br> WC20-7417936 | **Workers Compensation** <br> – Workers' Compensation <br> – Employer's Liability | 06/30/92 – 04/30/93 | Statutory 1,000,000 / | 1,000,000 <br> 1,000,000 |
| (7) | Lloyd's and various British insurers | 40-0568-92 <br> 40-0571-92 <br> 40-0572-92 | **Marine Terminal Operator's Legal Liability** <br> – Comprehensive General Liability <br> – Terminal Operator's Liability | 07/31/92 – 04/30/93 (a) | 2,500,000 / 5,000,000 | 25,000 / 250,000 (c) |
| (8) | Various Scandinavian insurers and Mutual Marine Office | Various | **Energy & Marine Liability** <br> – Operator's Extra Expense – Pollution <br> – Products and Indemnity <br> – Wharfinger's/Stevedore's/Charterer's Liability | 06/30/92 – 04/30/93 | 25,000,000 <br> 25,000,000 <br> 25,000,000 | 250,000 <br> 25,000 <br> 25,000 (d) |
| (9) | United States Aircraft Insurance Group | 300AC-198261 | **Aviation – Hull and Liability** (including non-owned aircraft) | 01/01/90 – 01/01/93 | 200,000,000 | – |
| (10) | National Union Fire Insurance Company, X.L. Insurance Co., Ltd., A.C.E. Insurance Co., Ltd. | Various | **Excess Liability** | 06/30/92 – 04/30/93 | 17,500,000 <br> 15,000,000 <br> 200,000,000 | – |
| (11) | National Union Fire Insurance Company, American Home Assurance Company, Federal Insurance Company (Chubb) | 4355-20 <br> 6218721 (CAN) <br> 81000034-A | **Blanket Crime (all employees)** <br> – Fidelity <br> – Money & Securities | 12/31/92 – 12/31/92 | 25,000,000 | 500,000 USA (a) <br> 25,000 CAN |
| (12) | CODA, A.C.E., X.L., Gulf | Various | **Directors and Officers Liability** | 11/04/02 – 11/04/03 | 110,000,000 | 25,000,000 (f) |
| (13) | National Union Fire Insurance Company, Federal Insurance Company (Chubb) | 4228406 <br> 81212043-A | **Fiduciary Liability** | 11/04/02 – 11/04/03 | 50,000,000 | 150,000 |

**NOTE:**
(a) Grace's Corporate property (fire and allied lines) and boiler and machinery deductibles are $2,000,000.
(b) Limit of liability include deductible and/or "self-insured" retention.
(c) Products and Completed Operations claims are underwritten on a "claims-made" basis, subject to an automatic five-year discovery provision.
   Limit of liability includes "self-insured" retention.
(d) Subject to policy terms and condition, program responds to losses not covered by Marine Terminal Operator's Liability policy.
   Total limit is $25 million.
(e) Deductibles indicated are Corporate deductibles only.
(f) Deductible indicated in summary of insurance is the Corporate Reimbursement deductible only. Non-indemnifiable claims are
   subject to deductible of $5,000 per Director & Officer and a plain aggregate of $40,000.

- 1 -

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

CONTRACTS

A.   Customer Contracts of $100,000 or more

1. Agreement No. 35-88-04-192 effective 5/1/88 between STS and
   Bell Fuels, Inc.

   Silent on assignment by STS.

2. Agreement No. 35-92-03-279 effective 3/1/92 between STS and MG
   Refining and Marketing, Inc.

   Silent on assignment by STS.

3. Storage and Product Handling Agreement No. 35-92-07-288
   effective 9/1/92 between STS and MG Refining and Marketing,
   Inc.

   Silent on assignment by STS.

4. Agreement No. 35-90-05-228 effective 4/1/90 between STS and
   Martin Oil Marketing, Ltd.

   Silent on assignment by STS.

5. Agreement No. 35-88-04-194 effective 8/1/88 between STS and
   Martin Oil Marketing, Ltd.

   Silent on assignment by STS.

6. Agreement No. 35-92-01-274 effective 1/1/92 between STS and
   Martin Oil Marketing, Ltd.

   Silent on assignment by STS.

7. Agreement No. 85-05-IND-111 effective 5/1/85 between STS and
   Martin Oil Marketing, Ltd.; as amended by Addendum I dated
   1/9/88; Terminal Contract Amendment effective 6/23/89; and by
   letters dated 11/3/89 and 8/27/90 [both letters unsigned by
   Martin Oil].

   ¶17.   Neither party may assign Agreement without prior
   written consent of the other party.

8.  Storage and Product Handling Agreement No. 29-92-10-299 effective 10/1/92 between STS and Unocal Corp.

    Silent on assignment by STS.

9.  Agreement No. 31-87-07-178 effective 7/1/87 between STS and Unocal Corp.; as amended by Addendum I dated 4/7/88 and Terminal Contract Amendment dated 6/4/89.

    Silent on assignment by STS.

    (A) Additive Tank Agreement effective 3/1/87 between STS and Unocal Corp.

    Silent on assignment by STS.

10. Storage and Product Handling Agreement No. 35-92-08-290 effective 8/1/92 between STS and Bell Fuels, Inc.

    Silent on assignment by STS.

11. Agreement No. 39-92-03-278 between STS and Solvay Minerals, Inc. (formerly Solvay America, Inc., successor to Tenneco Minerals Co.).

    ¶10.  Neither party may assign Agreement without prior written consent of the nonassigning party.

12. Agreement No. 22-92-06-282 effective 6/1/92 between STS and PetroPlus, Inc.

    Silent on assignment by STS.

13. Agreement No. 34-85-06-114 (#85-06-CHI-114) effective 5/15/85 between STS and Ashland Petroleum Company; as amended by Addendum I dated 12/11/87.

    ¶17.  Neither party may assign Agreement without prior written consent of the other party.

14. Agreement No. 85-06-CHI-115 (#34-85-06-115) effective 6/1/85 between STS and Ashland Petroleum Company; as amended by Amendment #1 effective 3/1/86; Addendum #I dated 12/11/87; Amendment #2 effective 8/1/88; and Terminal Contract Amendment dated 6/14/89.

---

        Not cancelable by the Corporation upon notice of one year or less.

¶17.    Neither party may assign Agreement without prior written consent of the other party.

15.    Agreement No. 86-11-CHI-162 (#34-86-11-162) effective 11/1/86 STS and Ashland Petroleum Company.

¶17.    Neither party may assign Agreement without prior written consent of the other party.

16.    Agreement No. 85-103-COL-108 dated March 22, 1985 between STS and Burris Chemical, Inc.; as amended by letters dated October 3, 1986 and October 31, 1988; and Addendum I dated 12/23/87.

Silent on assignment by STS.

17.    Service Agreement #636 dated October 1, 1989 between Stan-Trans, Inc. (successor to Unitank Terminal Service) and Atochem U.S.A., Inc.; with appended Schedule A-1 dated April 8, 1992 and Schedule C (Schedule C undated and unsigned).

¶19.    Neither party may assign Agreement without prior written consent of the other, except that either party may assign agreement in its entirety to a corporation which shall, in good faith, succeed to its entire business by merger, consolidation, or transfer of substantially all its assets for a valid business purpose other than avoidance of such party's obligations hereunder which shall expressly assume the obligations and liabilities of such party under this Agreement.

*18.    Terminaling Agreement #PC-2360 dated May 15, 1989 between StanTrans, Inc. (successor to Unitank Terminal Service) and Chevron Chemical Company, as amended by Amendment No. 24 dated April 8, 1992 (supersedes Amendments No. 1 through 23).

¶24.1.  Agreement may not be assigned by either party without prior written consent of the other, which shall not be unreasonably withheld.

19.    Master Service Agreement #13-91-01-164 dated November 8, 1990 between StanTrans, Inc. and Dakota Gasification Company; with appended Schedule A dated 5/16/92.  [Signature page not in file.]

¶10.    Neither party may assign Agreement without consent of the other party, which will not be unreasonably withheld and upon express assumption by the assignee of the obligations of

said party hereunder, provided, that any company or other entity succeeding by purchase, merger or consolidation to the properties, substantially as an entity, of either party shall be entitled to the rights and be subject to the obligations of its predecessor under this Agreement without the necessity of obtaining the consent of the other party hereto.

20.   Master Service Agreement #13-88-04-129 dated 4/12/88 and executed 5/2/88 between StanTrans, Inc. and W.R. Grace & Company, Organic Chemicals Division; with appended schedules:

(a)   Schedule C dated 8/28/91.
(b)   Schedule G dated 8/7/91.
(c)   Schedule H dated 12/18/89.
(d)   Schedule I dated 12/20/91.
(e)   Schedule J dated 8/19/92.

Silent on assignment by StanTrans, Inc.

21.   Master Service Agreement #13-90-02-151 dated 2/1/90 between StanTrans, Inc. and Tolson USA, Inc.; with appended Schedule A dated 5/6/92.

¶12.   Neither party may assign Agreement without prior written consent of the other party.

22.   Agreement #21-90-05-229 between STS and ARCO Products Company at Imperial, CA terminal dated June 15, 1990;

(a)   Addendum to Agreement dated 10/11/92; Imperial Terminal Blending;
(b)   Imperial Terminal Branded Additive Agreement, effective 1/1/92. [Unsigned by Arco.]

Silent on assignment by STS.

23.   Storage and Product Handling Agreement #21-92-10-303 between STS and Arco Products Company dated 10/1/92;

Silent on assignment by STS.

*24.   Service Contract #81-08-BA-101A between STS and Holtrachem, Inc. tendered as of 7/2/84; as amended by Addendum I dated 11/30/87; Addendum II dated 3/30/88 and Addendum III dated 7/3/91.

Silent on assignment by STS.

25.   Storage  and  Product  Handling  Agreement  #34-92-07-287
effective 7/1/92 between STS and Marathon Oil Company.

Silent on assignment by STS.

26.   Service Contract #84-10-BAL 117 tendered as of 9/4/84 between
STS and ICI Americas, Inc. (formerly C-I-L Chemicals); as
amended by Addendum #1 dated 8/5/87 and Addendum II dated
11/30/87; Consent to Assignment dated 7/5/89.

Silent on assignment by STS.

27.   Master Service Agreement #41-91-12-142778 entered into as of
2/16/92 between STS and Gulf Lubricants U.S.A.; as amended by
Amendment I dated 4/13/92 and Amendment II dated 7/23/92.

Silent on assignment by STS.

28.   Service Agreement No. 24-90-09-235 effective 9/1/90 between
Support Terminal Services, Inc. ("STS") and CF Industries;
amended by letter effective 6/12/91 and by Amendment I to
Agreement effective 9/1/91.

¶12(b).   Agreement may not be assigned by either party
without prior written consent of other party, which shall not
be unreasonably withheld, except that if the facilities are
sold by STS, then sale will be subject to the purchaser
performing under the terms of this Agreement, and STS may
assign Agreement to Purchaser, provided STS guarantees
performance of this Agreement by the assignee, and except
that STS may assign to a corporation with or into which it
may be merged or consolidated.

29.   Master Service Agreement #13-92-09-175 between StanTrans,
Inc. and Omega Petrochemical tendered as of 11/17/92
[unsigned by Omega]; with appended Schedule A dated 12/4/92.

§11.   StanTrans, Inc. may not sell or transfer the tanks or
transfer or assign agreement without prior written consent.

30.   Master  Service  Agreement  #13-92-09-176  tendered  as  of
11/17/92 between StanTrans, Inc. and Texport Oil Company
dated 12/9/92; with appended Schedule A dated 11/17/92

Silent on assignment by StanTrans, Inc.

31.   Master Service Agreement #13-92-12-178 tendered as of 12/4/92
between StanTrans, Inc. and Global Petroleum (unsigned by

Global]; with appended Schedule A dated 12/4/92.

§11.  StanTrans, Inc. may not sell or transfer the tanks or transfer or assign agreement without prior written consent.

32.  Agreement No. 29-91-01-242 effective 1/1/91 between STS and Texaco Refining and Marketing, Inc. ("Texaco").

Silent on assignment by STS.

33.  Stockton Terminal Community Additive Agreement effective 1/1/92 between STS and Texaco.

Silent on assignment by STS.

34.  Stockton Terminal Agreement for Customer Provided Additive and Equipment effective 1/1/92 between STS and Texaco.

Silent on assignment by STS.

35.  Agreement No. 35-91-12-269 effective 12/1/91 between STS and Amoco Oil Co.

Silent on assignment by STS.

*36.  Agreement No. 39-91-11-264 effective 11/1/91 between STS and Phillips 66 Company.

Silent on assignment by STS.

37.  Agreement No. 39-90-10-233 effective 10/1/90 between STS and Phillips 66 Company.

Silent on assignment by STS.

**B.  Customer Contracts of $250,000 or more**

*38.  Service Contract BAL 84/02 116 (#41-84-02-116) dated February 1, 1984, between STS and Baltimore and Ohio Railroad Company ("CSX"); as amended by Addendum I dated 10/4/84 and Addendum II dated February 5, 1988.

Silent on assignment by STS.

39.  A.  Agreement between Support Terminal Services (formerly Standard Transmission) and Tosco Refining Company (successor of Lion Oil Company, the successor of Phillips Petroleum Company) dated 11/12/74; as assigned to Lion

Oil Company on 4/1/76, and as amended by:

(i)     Letter dated 2/19/79;
(ii)    Amendment effective as of 1/1/82;
(iii)   Addendum II dated 11/1/89;
(iv)    Amendment    to    Stockton    Terminal    Agreement
        effective 1/1/89;
(v)     Terminal Contract Amendment effective 11/1/89;
(vi)    Addendum to Agreement dated 9/25/92;

¶18.  Neither party may assign Agreement without prior written consent of the other party.

B.    Additive Agreement effective 7/1/87 between STS and Tosco Corporation.

Silent on assignment by STS.

*40. Master Service Agreement No. 13-88-08-131 dated August 1, 1988 between StanTrans, Inc. and Amoco Oil Company; as amended by Addendum I effective 2/4/92 and with appended Schedule G dated 9/2/92.

Silent on assignment by StanTrans, Inc.

*41. Master Service Agreement No. 41-90-07-139 dated May 29, 1990 between STS and Amoco Oil Company.

¶11.  No assignment by either party without prior written consent of the other party, which shall not be unreasonably withheld.

*42. Storage and Product Handling Agreement dated as of July 1, 1990 between STS and CF Industries, Inc.

¶4.5.  Neither party may assign without prior written consent of the other party, which shall not be unreasonably withheld.

*43. Service Agreement #41-92-07-143 dated as of July 1, 1992 between ADM Corn Processing, a division of Archer-Daniels-Midland Company and STS.

Silent on assignment by STS.

*44. Service    Agreement    (#41-86-11-119)    #86-11-BAL-119    dated July 24, 1986, revised September 21, 1986 between STS and Alcan Rubber and Chemical, Inc. ("Alcan"); as amended by

Addendum I dated November 23, 1987 and Addendum I dated July 8, 1988, effective November 1, 1988.

Silent on assignment by STS.

45. Master Service Agreement #13-90-05-156 dated September 7, 1990 between StanTrans, Inc. and Amoco Chemical Company with appended schedules:

   (a)  Schedule A dated 6/29/92;
\*(b)  Schedule D dated 4/1/92;
   (c)  Schedule E dated 3/30/92; and,
   (d)  Schedule F dated 9/18/92.

Silent on assignment by StanTrans, Inc.

46. Master Service Contract #82-07-TC263 tendered as of July 1, 1982 between StanTrans, Inc. and BASF Corporation (formerly Badische Corporation) ("BASF").

\*(a)   Schedule A dated 9/22/92;
\*(b)   Schedule E dated 11/11/91;
  (c)   Schedule F dated 5/3/89;
\*(d)   Schedule G dated 1/21/92;
\*(e)   Schedule H dated 7/6/92;
\*(f)   Schedule I dated 12/19/91;
  (g)   Schedule J dated 3/10/92;
\*(h)   Schedule K dated 11/11/91;
  (i)   Schedule M dated 5/13/92;
\*(j)   Schedule N dated 3/10/92;
  (k)   Schedule S dated 11/11/91; Terminates 12/31/92
\*(l)   Schedule T dated 9/22/92;
\*(m)   Schedule U dated 7/22/92;
  (n)   Schedule V dated 1/21/92;
  (o)   Schedule W dated 1/21/92;
\*(p)   Schedule Z dated 1/21/92;
\*(q)   Schedule AA dated 11/11/91;
\*(r)   Schedule DD dated 9/22/92;
\*(s)   Schedule EE dated 1/21/92;
\*(t)   Schedule HH dated 1/29/92;
\*(u)   Schedule II dated 1/21/92;
  (v)   Schedule LL dated 6/8/89; Amendment by letter dated 3/22/89;
  (w)   Schedule MM dated 7/22/92;
  (x)   Schedule QQ dated 5/13/92;
  (y)   Schedule SS dated 12/14/92
\*(z)   Schedule TT dated 3/10/92;
 (aa)  Schedule UU dated 3/10/92;
 (bb)  Schedule VV dated 3/10/92;

    \*(cc)  Schedule WW dated 5/13/92;
    \*(dd)  Schedule YY dated 5/13/92;
    (ee)  Schedule ZZ dated 5/13/92;
    (ff)  Schedule AAA dated 7/6/92;
    (gg)  Schedule BBB dated 8/3/92.

Silent on assignment by StanTrans, Inc.

\*47.  Agreement #13-89-04-140 dated May 5, 1989 between StanTrans, Inc. and E. I. Du Pont De Nemours and Company; as amended by Amendment I dated 3/5/91 (unsigned by DuPont) and Amendment II dated  9/29/92.

Silent on assignment by StanTrans, Inc.

\*48.  Service Agreement #85-10-BAL-132 dated January 29, 1986 between STS and Elf Asphalt, a subsidiary of Elf Acquitane Asphalt Inc. (formerly Riffe Petroleum Company, a subsidiary of Charter Oil Company) ("Elf"); as amended by Addendum I dated 12/10/87; Addendum II dated 1/30/88, effective 1/1/88; and Addendum III dated 3/15/90.  Amendment by letter dated 4/14/87.

¶11.  Neither party may assign Agreement without prior written consent of the other party, which shall not be unreasonably withheld.

49.  Service Agreement #83-09-TC274 tendered as of 8/2/83 and executed 8/8/83 between StanTrans, Inc. and Ethyl Corporation; as amended by Addendum I dated 12/1/87 and letter dated August 20, 1986.

Silent on assignment by StanTrans, Inc.

\*50.  A. Agreement #74-01-STO-001 dated 11/12/74 between Standard Transmission, a division of Cleary Petroleum Corporation and Exxon Company, U.S.A. ("Exxon"); (unsigned by Standard).

    (a)  Assignment dated 11/12/74 from Standard Transmission to Stockton Terminals, Ltd.
    (b)  Amended by letter dated 2/19/79.
    (c)  Amendment Number 1 effective 1/1/82.
    (d)  Federal Contract Supplement for Exxon Chemical Americas, dated 3/25/82.
    (e)  Amendment Number II effective 9/1/85.
    (f)  Addendum III to Agreement dated 4/15/88.
    (g)  Terminal Contract Amendment dated 5/24/89 (unsigned by Exxon).

(h)  Amendment by letter dated 4/6/90.
(i)  Amendment by letter dated 5/4/90 [supersedes 4/6/90
     letter].
(j)  Amendment IV effective 6/15/90.

¶18.  Neither party may assign Agreement without prior written
consent of the other party.

B.  Stockton Terminal Community Additive Agreement effective
    1/1/92.

C.  Stockton Terminal Branded Additive Agreement effective
    1/1/92.


Silent on assignment by STS.

51.  Master Service Agreement #13-88-02-127 dated 2/1/88 between
     StanTrans, Inc. and ISP Technologies, Inc. (formerly GAF
     Chemicals Corporation); as amended by Amendment No. 1 dated
     10/1/91; with appended schedules:

     *(a)  Schedule B dated 6/11/92.
      (b)  Schedule H dated 10/25/91.
      (c)  Schedule I dated 1/2/90.
      (d)  Schedule J dated 11/6/92.

Silent on assignment by StanTrans, Inc.

52.  Master Service Agreement #13/41-92-01-172 dated June 11, 1992
     between STS/StanTrans, Inc. and Marubeni America Corporation,
     ("Marubeni Agreement"), with appended schedules:

     *(a)  Schedule A-1 dated 6/11/92;
     *(b)  Schedule A-2 dated 6/11/92;
      (c)  Agreement among Marubeni, STS and Elf Atochem S.A.
           ("Elf") providing that in the event Elf's contract with
           Marubeni terminates prior to termination of Marubeni
           Agreement, Marubeni Agreement shall be assigned to Elf.

¶19.  Neither party may assign Agreement without prior written
consent of the other, except that either party may assign
Agreement in its entirety to a corporation which shall, in
good faith, succeed to its entire business by a merger,
consolidation, or transfer of substantially all its assets
for a valid business purpose other than avoidance of such
party's obligations hereunder and which shall expressly assume
the obligations and liabilities of such party under this

Agreement by an instrument in writing delivered to the other party hereto.

53. Terminal Agreement No. 86-06-TC120 between StanTrans, Inc. and Miles, Inc. (formerly Mobay Corporation), Revised April 1988; as amended by Addendum Number I dated 8/1/89 and Addendum Number II dated 4/20/90 (supersedes Addendum Number I).

¶XX. Agreement may not be assigned by either party without written consent of the other, which shall not be unreasonably withheld.

54. Master Terminal Agreement No. 13-90-03-155 between StanTrans, Inc. and Miles, Inc. (formerly Mobay Corporation) dated 7/17/90; with appended schedules:

   (a) Schedule C dated 4/30/92;
   (b) Schedule D dated 1/7/92;
   (c) Schedule G dated 1/28/92.

¶XX. Agreement may not be assigned by either party without the written consent of the other which, shall not be unreasonably withheld.

55. Master Terminal Agreement #13-87-01-124 between StanTrans, Inc. and Miles, Inc. (formerly Mobay Corporation) effective 3/22/88; Exhibit A dated 4/23/91. [11/18/92]

¶XX. Agreement may not be assigned by either party without the written consent of the other, which shall not be unreasonably withheld.

56. Master Service Agreement #82-10-TC271 between StanTrans, Inc. and Mitsubishi International Corporation ("Mitsubishi") tendered as of 4/15/83; as amended by letter dated 2/10/87 [unsigned by Mitsubishi], Amendment II to Master Service Agreement dated 4/30/91, and Amendment III to Master Service Agreement dated 7/8/92.

Silent on assignment by StanTrans, Inc.

57. Service Contract #13-91-06-171 dated 7/8/91 between StanTrans, Inc. and Mitsubishi.

Silent on assignment by StanTrans, Inc.

58. Master Service Agreement #13-90-02-153 tendered as of 2/26/90 (executed 3/6/90) between StanTrans, Inc. and Murex, Inc. (formerly IndeChem Marketing Company, Inc.); with appended schedules:

   *(a)  Schedule A dated 3/16/92;
    (b)  Schedule D dated 5/4/92;
    (c)  Schedule E dated 5/4/92.

   Silent on assignment by StanTrans, Inc.

59. Master Service Agreement #13-89-07-144 tendered as of 6/20/89 between StanTrans, Inc. and Nalco Chemical Company; as amended by letter dated 3/12/90, with appended schedules:

    (a)   Schedule A dated 5/23/91;
    (b)   Schedule D dated 5/18/92;
    (c)   Schedule E dated.10/23/91;
    (d)   Schedule F dated 6/11/92.

   Silent on assignment by StanTrans, Inc.

60. Master Service Agreement #13-90-10-165 tendered as of 10/19/90 between StanTrans, Inc. and Phibro Energy Inc. with appended schedules:

    (a)   Schedule A dated 10/12/92;
    (b)   Schedule B dated 6/4/92;
    (c)   Schedule D dated 12/16/92;
    (d)   Schedule E dated 12/16/92.

   Silent on assignment by StanTrans, Inc.

61. Terminal Agreement #13-83-09-275 effective 8/10/83, dated 8/30/83, between StanTrans, Inc. and Shell Oil Company, with appended exhibits:

   *(a)  Exhibit A-9 dated 6/23/92;
    (b)  Exhibit A-8 dated 2/14/92;
   *(c)  Exhibit A-5 dated 6/22/92;
   *(d)  Exhibit A-2 dated 6/22/92;
    (e)  Exhibit A-14 dated 11/16/92;
    (f)  Exhibit A-15 dated 12/4/92;
    (g)  Exhibit A-16 dated 12/4/92.

   ¶XXII.  Neither party may assign without written consent of the other party.

62. Agreement #85-08-IMP-119 effective 1/1/86 between STS and Ultramar, Inc. (formerly Champlin Petroleum Company); as amended by Addendum to Agreement 85-08-IMP-119 dated October 28, 1992; Addendum I to Contract dated 12/21/87; Amendment effective 3/1/86; Terminal Contract Amendment dated 5/24/89 (unsigned by Ultramar).

¶17. Neither party may assign Agreement without prior written consent of the other party.

(a) Imperial Terminal Community Additive Agreement effective 1/1/92 between STS and Ultramar, Inc.

Silent on assignment by STS.

(b) Agreement for RVP Testing effective 6/27/91 between STS and Ultramar, Inc.

Silent on assignment by STS.

63. Agreement #85-08-STO-120 effective 9/1/85 between STS and Ultramar, Inc. (formerly Champlin Petroleum Company); as amended by Amendment effective 2/1/86; Addendum II effective 4/15/88; Terminal Contract Amendment dated 5/24/89 [unsigned by Ultramar]; and Addendum dated 10/28/92.

¶17. Neither party may assign Agreement without prior written consent of the other party.

(a) Stockton Terminal Community Additive Agreement effective 1/1/92 between STS and Ultramar, Inc.

Silent on assignment by STS.

64. Service Contract #84-11-BAL-121 between STS and GAF Building Materials Corporation (formerly, GAF Corporation) dated 2/16/85 (executed 1/20/86); as amended by Addendum to Agreement dated 3/11/86 and Addendum I dated 1/27/89; Consent to Assignment dated 3/14/89.

Silent on assignment by STS.

65. Master Service Agreement #41-90-03-138 entered into as of 6/10/91 between STS and Texaco Chemical Company; as amended by Addendum I dated 7/24/92.

Silent on assignment by STS.

66. Master Service Agreement #41-88-08-132 tendered as of 8/1/88 between STS and Standard Chlorine of Delaware, Inc. as amended by Addendum I dated 10/19/89 and with appended schedules:

    (a) Schedule C dated 5/9/88;
    (b) Schedule E dated 9/1/88;
    (c) Schedule F dated 12/12/88;
    (d) Schedule G dated 10/23/89;
    (e) Schedule I dated 10/23/91;

Silent on assignment by STS.

67. Service Agreement #41-91-08-141 tendered as of 9/13/91 between STS and Phillips 66 Company.

Silent on assignment by STS.

68. Master Service Agreement #13-90-05-157 tendered as of 5/17/90 between StanTrans and Sun Refining and Marketing Company with appended schedules:

    (a)   Schedule A dated 3/4/92;
    (b)   Schedule B dated 11/19/92;
    (c)   Schedule C dated 3/18/92;
    (d)   Schedule E dated 9/10/92
    (e)   Schedule F dated 3/18/92.

Silent on assignment by STS.

## Federal Contracts and Uniform Tenders

The assignment of federal contracts is governed by Federal Acquisition Regulation Subpart 42.120.

69. Award/Contract issued to ST Services by Defense Fuel Supply Center, Alexandria, Virginia, Contract No. DLA600-91-C-5134; Requisition/Purchase Request/Project No. SC0600-91-0083/ Drumright, OK dated 3/21/91 for the period 4/1/91 through 3/31/95 under Solicitation DLA600-91-R-0011 and Amendments 0001 and 0002; as modified by:

    (a) Modification of Contract No. P00008 executed 9/28/92;
    (b) Modification of Contract No. P00007 executed 4/15/92;
    (c) Modification of Contract No. P00006 executed 2/20/92;
    (d) Modification of Contract No. P00005 executed 1/16/92;
    (e) Modification of Contract No. P00004 executed 11/22/91;
    (f) Modification of Contract No. P00005 executed 11/5/91;
    (g) Modification of Contract No. P00002 executed 10/23/91;

70. Award/Contract issued to ST Services by Defense Fuel Supply Center, Contract No. DLA600-90-C-5071; Requisition/Purchase Request/Project No. SC0600-90-0064 Moundville, Alabama, dated 11/21/90 for the period 12/1/90 through 11/30/94 under Solicitation DLA600-90-R-0076 and Amendments 0001 and 0002.

    (a) Modification of Contract No. P00001 executed 3/22/91;
    (b) Modification of Contract No. P00002 executed 4/19/91;
    (c) Modification of Contract No. P00003 executed 5/8/91;
    (d) Modification of Contract No. P00005 executed 6/19/91;
    (e) Modification of Contract No. P00006 executed 9/11/91;
    (f) Modification of Contract No. P00007 executed 10/28/91;
    (g) Modification of Contract No. P00008 executed 2/13/92;
    (h) Modification of Contract No. P00009 executed 3/23/92;
    (i) Modification of Contract No. P000010 executed 7/9/92;
    (j) Modification of Contract No. P000011 executed 10/7/92;
    (k) Modification of Contract No. P000012 executed 10/27/92;

71. Award/Contract issued to STS by Defense Fuel Supply Center, Alexandria, Virginia; Contract DLA600-91-C-5120; Requisition/Purchase Request/Project No. SC0600-90-0075 & Amd. 1/San Antonio in response to RFP DLA600-90-R-0135 dated 1/30/91; Solicitation No. DLA 600-90-R-0135 dated 8/2/90 for period 1/1/91 to 12/31/92 with three 1 year renewal options.

    (a) Amendment of Solicitation #001 dated 12/17/90.
    (b) Amendment of Solicitation #002 dated 12/14/90.
    (c) Amendment of Solicitation #003 dated 11/14/90.
    (d) Modification of Contract No. P00001 dated 4/10/91.
    (e) Modification of Contract No. P00002 dated 6/20/91.
    (f) Modification of Contract No. P00003 dated 8/5/91.
    (g) Modification of Contract No. P00004 dated 10/29/91.
    (h) Modification of Contract No. P00005 dated 12/31/91.
    (i) Modification of Contract No. P00006 dated 12/31/91.
    (j) Modification of Contract No. P00007 dated 1/30/92.
    (k) Modification of Contract No. P00008 dated 4/16/92.
    (l) Modification of Contract No. P00009 dated 8/6/92.
    (m) Modification of Contract No. P000010 dated 10/22/92.

72. Award/Contract issued to ST Services by Defense Fuel Supply Center; Contract DLA600-90-C-5034; Requisition/ Purchase No. SC0600-89-0096 Basic Doraville/Bremen, Georgia; Solicitation No. DLA 600-89-R-0166 dated 2/21/90; for the period 4/1/90 through 3/31/94.

    (a) Modification of Contract No. P00001 executed 6/20/90.
    (b) Modification of Contract No. P00002 dated 7/16/90.
    (c) Modification of Contract No. P00003 dated 6/25/90.

    (d) Modification of Contract No. P00004 dated 8/31/90.
    (e) Modification of Contract No. P00005 dated 9/19/90.
    (f) Modification of Contract No. P00006 dated 12/12/90.
    (g) Modification of Contract No. P00007 dated 3/4/91.
    (h) Modification of Contract No. P00008 dated 5/15/91.
    (i) Modification of Contract No. P00009 dated 5/23/91.
    (j) Modification of Contract No. P000010 dated 7/22/91.
    (k) Modification of Contract No. P000011 dated 10/15/91.
    (l) Modification of Contract No. P000012 dated 10/23/91.
    (m) Modification of Contract No. P000013 dated 2/14/92.
    (n) Modification of Contract No. P000014 dated 4/17/92.

73. Award/Contract issued to ST Services by Defense Fuel Supply
    Center, Alexandria, Virginia; Contract DLA600-92-C-5203;
    Requisition/ Purchase No. SC0600-91-0033/Doraville/Bremen, GA;
    Solicitation No. DLA 600-91-R-0180 dated 12/3/91 for period
    from 12/15/91 to 12/14/95;

    (a) Modification of Contract No. P00001 dated 1/16/92.
    (b) Modification of Contract No. P00002 dated 9/2/92.
    (c) Modification of Contract No. P00003 dated 10/26/92.

74. Uniform Tender of Rates and/or Charges for Transportation
    Services, issued by Standard TransPipe Corp., Joint Rate Sheet
    No. 1, Supplement No. 23 issued 11/1/91, effective 1/9/92
    through 1/9/94 for Jet Fuel at Homestead AFB, Dade, Florida.

75. Uniform Tender of Rates and/or Charges for Transportation
    Services, issued by Standard TransPipe Corp., Tender No. 9,
    Supplement No. 3 issued on 1/24/92, effective 3/1/92 for Jet
    Fuel at Glenview NAS, Cook, Illinois. (Grace Transportation
    Participating Carrier.)

76. Uniform Tender of Rates and/or Charges for Transportation
    Services, issued by Standard TransPipe Corp., Tender No. 10,
    Supplement No. 1 issued 5/14/90, effective 6/1/90 and
    Supplement No. 2 issued 10/26/90, effective 12/1/90 for Jet
    Fuel at Memphis NAS, Shelby, Tennessee.

77. Uniform Tender of Rates and/or Charges for Transportation
    Services, issued by Santa Fe Pacific Pipeline Partners,
    L.P. (SFPP, LP)/Standard TransPipe Corp., Tender No. Section 22
    (FERC) Quotation 25, Supplement No. Amendment 1, issued on
    7/20/92, effective 9/1/92 for Jet Fuel from El Paso, Texas to
    Alamogordo, New Mexico and from Alamogordo, New Mexico to
    Holloman AFB, New Mexico.

78. Uniform Tender of Rates and/or Charges for Transportation
    Services, issued by Standard TransPipe Corp., Tender No. 8,

7/20/92, effective 9/1/92 for Jet Fuel from El Paso, Texas to
Alamogordo, New Mexico and from Alamogordo, New Mexico to
Holloman AFB, New Mexico.

78. Uniform Tender of Rates and/or Charges for Transportation
Services, issued by Standard TransPipe Corp., Tender No. 8,
Supplement No. 6, issued 3/1/92, effective 4/1/92 for Jet Fuel
at Fort Rucker; Dannelly Field, Maxwell Air Force Base and
U.S. Property and Fiscal Office - Montgomery, Alabama.

79. Supplement #26 to Tender No. 2, Uniform Tender of Rates and/or
Charges for Transportation Services; U.S. Government Tender
for the Transport of Jet Fuel; Standard Transpipe (Virginia),
Inc. as the issuing carrier; issue date 11/21/90, effective
January 1, 1991.

D.    Contracts with Suppliers of $100,000 or More

1.    Gas Products Supply Agreement between Tri-Gas, Inc. and
StanTrans, Inc. dated 11/18/91, effective 3/1/92.

§18. Agreement may be assigned to any corporation with which
either party may merge or consolidate or to which either party
may transfer all or a material amount of its assets.

2.    Bulk Service Agreement dated 12/1/90 between MG Industries,
Inc. and ST Services, Inc.; as amended by Addendum No. 1 dated
12/21/90 and with appended Attachment A - Nitrogen Product and
Equipment Rider.

§19. Provides for assignment to any corporation or entity with
which either party may merge or consolidate or to which either
party may transfer all or a material amount of assets;

3.    Nitrogen Pipeline Supply Agreement between Union Carbide
Industrial Gases, Inc. and StanTrans, Inc. dated 6/14/89.

§16. No assignment by either party without prior written
consent, which shall not be unreasonably withheld.

NOTE:  See Exhibit A regarding leased real property.

E.    Contracts Outside of the Ordinary Course -- Indemnities

1.    Offer of Agreement to Purchase Real Property from Shell Oil
Company dated 2/26/90 ("Offer of Agreement") conveying Shell's

H:\Shared\Skaye\WP\Energy\ST\6.091

interest in the premises located at South Harbor Drive, Jones
Island, Milwaukee, WI between Shell Oil Company and Tanco
Terminals, Inc. as amended by Addendum (undated) and Addendum
II (undated); as assigned by Assignment of Offer of Agreement
dated 8/17/90 between Tanco Terminals, Inc. and STS and
Garland Middendorf as tenants-in-common; with consent by Shell
Oil dated 8/17/90 and Bill of Sale dated 8/17/90.

Pursuant to Purchase and Sale Agreement dated January 1, 1991
between STS and Garland Middendorf, STS purchased Middendorf's
50% interest in the Offer of Agreement.

§8.4 Agreement shall not be assigned by Purchaser, either
voluntarily or by operation of law without Shell's prior
consent.

2.  Agreement for Sale and Purchase of Assets among StanTrans,
    Inc. and Unitank Texas, Inc. dated as of December 29, 1989.

    §10. Agreement may not be assigned by either party without
    prior written consent of other party.

3.  Joint Venture Agreement between Standard Transmission, a
    division of Cleary Petroleum Corporation and Navajo Refining
    Company dated April 27, 1977; as amended by First Amendment
    to Joint Venture Agreement dated 8/17/77 and Second Amendment
    to Joint Venture Agreement dated 6/1/92.

    §XXI. Agreement may not be assigned by any party without the
    express written consent of the other.

4.  Contract of Sale dated 12/18/86 between Mobil Oil Corporation
    and STS.

    §12. Agreement may be not assigned by STS without prior
    written consent of Mobil.

5.  Agreement dated 8/22/88 between Union Pacific Railroad
    Company, as successor to Western Pacific Railroad Company and
    STS.

    §9. Agreement may not be assigned without prior written
    consent.

H:\Shared\Skaye\WP\Energy\ST\6.09l

SCHEDULE 6.10

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

EMPLOYEE BENEFIT PLANS

I.    Employee Pension Benefit Plans

W. R. Grace & Co. Retirement Plan for Salaried Employees

Grace Energy Corporation Retirement Plan for Hourly Employees*

Grace Energy Corporation Employees' Savings and Investment Plan

II.   Employee Welfare Benefit Plans

W. R. Grace & Co. Group Life, AD&D, Medical and Disability Plan

W. R. Grace & Co. Business Travel Accident Insurance Plan and Felonious Assault Insurance Plan

W. R. Grace & Co. Long Term Disability Income Plan

W. R. Grace & Co. Voluntary Group Accident Insurance Plan

Grace Energy Corporation Occupational Accidental Death Plan.

W. R. Grace & Co. Executive Salary Protection Plan

III.  Deferred Compensation and Other Non-Qualified Retirement Plans

W. R. Grace & Co. Supplemental Executive Retirement Plan

Non-Qualified excess program for the W. R. Grace & Co. Salaried Savings and Investment Plan

W. R. Grace & Co. Deferral of Basic and Incentive Compensation Program

Grace Energy Corporation Defined Compensation Plan

---

*     Merged into W. R. Grace & Co.-Conn. Retirement Plan for Non-Union Employees of Subsidiary Corporations (which includes Texas City Hourly Union Employees).

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

ENVIRONMENTAL MATTERS

## ST Services

# SITE REMEDEATION
### Environmental Oversight Review  July 23, 1992

| | | |
|---|---|---|
| **1.1 LOCATION** <br> Stockton, CA <br> Site No. : 4041 | **1.2 CURRENT OWNER** <br> Support Terminal Services <br> Dallas, Texas | **1.3 PREVIOUS OWNER(s)** <br> Sante Fe Pacific Pipeline <br> (ST acquired 1974) |

**1.4 FACILITY DESCRIPTION**

This terminal is located at 2941 Navy Drive, and is situated entirely within the Port of Stockton.   The ST facility is but one of five similar petroleum distribution terminals located adjacent to each other.   This terminal consists of 18 bulk liquid petroleum storage tanks ranging in size from 1,000 bbl. to 50,000 bbl.   Petroleum products are received by pipeline and distributed through tank truck loading facilities.   All tanks are contained in concrete and/or earthen dikes, all loading racks are equipped with concrete spill containment.

| | |
|---|---|
| **1.6 FACILITY STATUS** <br> Currently operating bulk liquid storage terminal. | **1.7 COMPLIANCE STATUS** <br> With the exception of present groundwater contamination, this terminal is in complete compliance with appl. rules & regulations. |

| | | |
|---|---|---|
| **2.1 DISCOVERY DATE** <br> June, 1987 | **2.2 TYPE OF CONTAMINATION** <br> Groundwater contaminated <br> by hydrocarbons. | **2.3 ADJ. LAND USE** <br> Industial |

**2.4 SOURCE OF CONTAMINATION**

Past practices, resulting from operations of all 5 terminals located within the Port of Stockton area. The contaminant plume is spread throughout the uppermost water bearing zone, and is consistent beneath all facilities, and may extend 1/2 mile down-gradient (easterly).

| | |
|---|---|
| **2.5 NOTICE of VIOLATION** <br> To date there have not been any violations issued regarding this project.   ST is undertaking this remediation on a voluntary basis. | **2.6 ADMIN. CONSENT ORDER** <br> None <br> The state RWQCB is providing oversight, deadlines have been issued. |

| | |
|---|---|
| **2.7 REMEDIATION METHODS** <br> Presently undefined <br><br> Additional site assessment activities are progressing, and when completed we will begin to determine exactly what type of remediation will be the most effective. | **2.8 MILESTONES** <br> 12/91  Contract negotiations continue <br> 01/92  Contract negotiations continue <br> 06/92  Site Assessment program initiated <br> 10/92  Site assessment scheduled for completion |

**2.9 PROGRESS-TO-DATE**

*The members of the Stockton Committee met with the RWQCB to finalize the work plan for the next phase of the site assessment program.   Only minor changes were made to well placements and the addition of several soil borings. At this meeting the Committee was informed by RWQCB that SFPP had declined to join with the Stockton Committee, and would perform their own site investigation.*

*EMCON has begun the installation of new monitoring wells and Cone Penitrometer points (CPT).   Sampling of new and existing monitor wells will begin in July.*

| | |
|---|---|
| **2.10 LEGAL ACTIONS** <br> None | **2.11 CONSULTANTS** <br> EMCON Associates <br> San Jose, CA |

| 04/15/91 Cost Estimate | Total Cost J-T-D | Total Cost 1991 | Estimated Cost 1992 | Estimated Cost 1993 + | 1992 Accrual | 07/23/92 Projected Total | Estimate Variance |
|---|---|---|---|---|---|---|---|
| $752 | $74 | $51 | $100 | $587 | $0 | $738 | $14 |

6.11

# ST SERVICES – STOCKTON, CALIFORNIA



N

(Tanks Indicated by circles)

(Loading Rack Areas)

# SITE REMEDEATION
## Environmental Oversight Review  July 23, 1992

| 1.1 LOCATION | 1.2 CURRENT OWNER | 1.3 PREVIOUS OWNER(s) |
|---|---|---|
| Marcy, NY<br>Site No. : 4080 | Bray Terminals, Inc. | ST Services (01/80)<br>Cities Service Co. |

**1.4 FACILITY DESCRIPTION**

Bray Terminals, Marcy facility consists of 5 bulk liquid petroleum storage tanks.   This terminal was purchased from ST Services in 01/82 after ST had operated it from 01/80.   The facility is located along State Highway 49. This terminal is also located adjacent to Chevron's terminal bounded on the northeast.

| 1.5 FACILITY STATUS | 1.7 COMPLIANCE STATUS |
|---|---|
| Currently operating bulk liquid storage terminal. | ST Services is no longer operating this facility, and the extent of liability is limited to 1/2 of all cost associated with the existing contamination. |

| 2.1 DISCOVERY DATE | 2.2 TYPE OF CONTAMINATION | 2.3 ADJ. LAND USE |
|---|---|---|
| June,  1987 | Groundwater contaminated by petroleum hydrocarbons. | Industial |

**2.4 SOURCE OF CONTAMINATION**

The source of the groundwater contamination is unknown, however it is a distinct possibility that poor past operating practices associated with terminating activities may have contributed.   Also, the existing contamination may be infuenced from off-site sources.   The contaminant plume is located at the water table directly below the terminal and extends along the southern portion of the property.

| 2.5 NOTICE of VIOLATION | 2.6 ADMIN. CONSENT ORDER |
|---|---|
| NOV form DEC recieved 12/07.87<br>State of New York requires site investigation and remediation of groundwater contamination. | None |

| 2.7 REMEDIATION METHODS | 2.8 MILESTONES | |
|---|---|---|
| Pump-and-Treat:<br>Groundwater is pumped to a packed column air stripper, then discharged through an NPDES outfall, all processed air from stripper is treated through carbon canisters. | 02/89<br>03/89<br>06/90<br>08/91 | Phase II site assessment complete<br>Remediation Plan approved<br>Free product recovery sys. operational<br>Groundwater remediation begin |

**2.9 PROGRESS-TO-DATE**

*The facility's groundwater treatment system was completed and placed in operation on 08/14/91.   Analysis of the stripping tower effluent indicates no detectable hydrocarbons.   Since the 06/9 quarterly sampling event there has been no free phase product detected in recovery well RW-2.   Sampling and monitoring schedules have been modified to monthly.   Per 11/91 DEC letter O'Brien & Gere will perform additional soil borings to delineate fuel oil contaminations.*

*The State DEC has expressed concerns regarding monitor wells #4, #6, #9, #10, and #12.   There appears to be damage to some of these wells, and others have been dry since 12/91.*

| 2.10 LEGAL ACTIONS | 2.11 CONSULTANTS |
|---|---|
| Attorneys for the firm of Sidley & Austin have been monitoring the discussions with the State of New York. | O'Brien & Gere Engineers, Inc.<br>Syracuse, NY |

| 04/15/91<br>Cost<br>Estimate | Total<br>Cost<br>J-T-D | Total<br>Cost<br>1991 | Estimated<br>Cost<br>1992 | Estimated<br>Cost<br>1993 + | 1992<br>Accrual | 01/22/92<br>Projected<br>Total | Estimate<br>Variance |
|---|---|---|---|---|---|---|---|
| $533 | $266 | $237 | $50 | $280 | $0 | $567 | ($34) |

BRAY TERMINALS, INC.
MARCY, NEW YORK

SITE MAP

LEGEND

● EXISTING MOHAWK VALLEY OIL CO. MONITORING WELL

⊕ EXISTING BRAY TERMINALS MONITORING WELL

⊕ NEWLY INSTALLED BRAY TERMINALS MONITORING WELL

SCALE IN FEET
0    120    240

RIVER ROAD — STATE HIGHWAY ROUTE 49

OFFICE
GARAGE

LOADING DOCK
TANK

PIPE

TANK 6

TANK 1

BERM

TANK 4

TANK 3

BERM

TANK 2

BERM

PIPE LINES

MOHAWK VALLEY OIL COMPANY

FORMER TANK LOCATION

# SITE REMEDEATION
## Environmental Oversight Review  July 23, 1992

**Section 1.0 Facility Descrip.**

| 1.1 LOCATION | 1.2 CURRENT OWNER | 1.3 PREVIOUS OWNER(s) |
|---|---|---|
| Spectron-Elkton, MD<br>Site No. : 4063 | Paul and Sally Mraz<br>Spectron, Inc. | Solvent Distillers<br>Galaxy Chemicals |

**1.4 FACILITY DESCRIPTION**

Spectron, Inc. was operated as a waste recycling facility until 08/88 when it entered bankruptcy.   This site is located at 111 Providence Rd., adjacent to several homes in a residential area.   Also, there is a stream that bisects the site, which is used by the local residents for fishing.   There is evidence that stormwater runoff has spread contamination throughout the site, including groundwater.

| 1.5 FACILITY STATUS | 1.7 COMPLIANCE STATUS |
|---|---|
| Closed waste recycling operation | This site is presently under the direction of the USEPA, and is listed as a federal Superfund Site. |

**Section 2.0 Environmental Status**

| 2.1 DISCOVERY DATE | 2.2 TYPE OF CONTAMINATION | 2.3 ADJ. LAND USE |
|---|---|---|
| April 12, 1989 | Soil/groundwater are contaminated petro. hydrocarbons, and chemicals. | Semi-rural |

**2.4 SOURCE OF CONTAMINATION**

This site has ceased operations, however there are 1300 drums and 62 storage tanks containing various hazardous chemicals.   Hazardous wastes from leaking drums and unlined retention ponds have migrated into the soils, groundwater and the nearby stream.   In addition to the groundwater showing contamination, the stream known as Elk Creek has detectable levels of industrial solvents.

| 2.5 NOTICE of VIOLATION | 2.6 ADMIN. CONSENT ORDER |
|---|---|
| None | Emergency Removal Consent Order 08/21/89. |

| 2.7 REMEDIATION METHODS | 2.8 MILESTONES | |
|---|---|---|
| Pending EPA issuance of Consent Order Under the "Emergency Removal Action" rules EPA has begun to dispose of the containerized wastes. | 04/89<br>10/89<br>12/89<br>07/90 | EPA Preliminary Site Assessment<br>ST signs Removal Action Order<br>ST submits initial "Cash-out" payment<br>Proposed PRP Agreement |

**2.9 PROGRESS-TO-DATE**

ST has paid an initial fee for assessment work performed by the PRP group, and due to the relatively small quantity of materials attributed to ST, it appears that we will be able to "cash-out" of the remediation process.   The PRP committee has not finalized the "de-minimus" cash-out agreement.   ST's original "cash-out" payment pertained only to the "Emergency Removal Actions", and we anticipate a final "cash-out" from the total remediation phase to be less than $5,000.   To date there has been no communication from the EPA regarding ST's deminimus buy-out.

| 2.10 LEGAL ACTIONS | 2.11 CONSULTANTS |
|---|---|
| None | Chemical Waste Management<br>(Removal Actions only) |

**Section 3.0 Costs**

| 04/15/91 Cost Estimate | Total Cost J-T-D | Total Cost 1991 | Estimated Cost 1992 | Estimated Cost 1993 + | 1992 Accrual | 01/22/92 Projected Total | Estimate Variance |
|---|---|---|---|---|---|---|---|
| $3 | $3 | $3 | $5 | $0 | $0 | $8 | ($5) |

# SITE REMEDEATION
## Environmental Oversight Review  July 23, 1992

| | | |
|---|---|---|
| **1.1 LOCATION**<br>Baltimore, MD<br>Site No. : 4070 | **1.2 CURRENT OWNER**<br>Support Terminal Services<br>Dallas, Texas | **1.3 PREVIOUS OWNER(s)**<br>Skyline Terminal, Inc.<br>(ST acquired 04/81) |

**1.4 FACILITY DESCRIPTION**

Terminal is located at 1800 Frankfurst Ave, in an industrial area, adjacent to the "Harbor Tunnel", and is bordered on the east by Chesapeake Bay.   This facility consists of 49 bulk liquid storage tanks, ranging in size from 1,000 bbl. to 80,000 bbL, and are utilized to store chemicals, petrochemicals, and food-grade products.   These are recived and delivered by pipeline, truck, rail, and vessel.   All tanks are contained in concrete and/or earthen dikes, and loading racks are equipped with concrete spill containment.

| | |
|---|---|
| **1.5 FACILITY STATUS**<br>Currently operating bulk liquid storage terminal. | **1.7 COMPLIANCE STATUS**<br>With the exception of present groundwater contamination, this terminal is in complete compliance with appl. rules & regulations. |

| | | |
|---|---|---|
| **2.1 DISCOVERY DATE** | **2.2 TYPE OF CONTAMINATION**<br>Groundwater contaminated<br>by Benzene | **2.3 ADJ. LAND USE**<br>Industial |

**2.4 SOURCE OF CONTAMINATION**

The groundwater contamination is the result of a leak found in the bottom of a Benzene storage storage tank. The contaminant plume is located directly below the old tank foundation, and extends approximately 150 Ft. to the west and northeast of the foundation.

| | |
|---|---|
| **2.5 NOTICE of VIOLATION**<br>To date there has not been any violations issued regarding this project.   ST is undertaking this remediation on a voluntary basis. | **2.6 ADMIN. CONSENT ORDER**<br>None |

| | | |
|---|---|---|
| **2.7 REMEDIATION METHODS**<br>Pump-and-Treat:<br>Groundwater from pumping of 4 wells is processed through a coalescing separator, then an air stripper, and finally a carbon adsorption canisters.   Processed water is discharged to city sewer system. | **2.8 MILESTONES**<br>11/90<br>06/91<br>08/91<br>07/92 | Remediation Plan approved<br>Equipment installation<br>Startup<br>Remediation continues |

**2.9 PROGRESS-TO-DATE**

*The pump and treat remediation system continues to be operational.   The system consistantly operates daily and is interlocked with the operation of the terminal's hot oil heating system.   Due to the fact that the contaminated air discharged from the treatment system is disposed of by injection into the makeup air supplied to the hot oil boilers, the treatment system will only operate if the hot oil heaters are functioning.   The pump and treat system is recovering approximatel 80-90 gallons of groundwater per day and treatment efficiencies are consistantly greater than 99%. Seasonal fluctuations in the groundwater level and flow have made if difficult to determine the overall progress of the remediation system.*

| | |
|---|---|
| **2.10 LEGAL ACTIONS**<br>None | **2.11 CONSULTANTS**<br>The Sullivan Engineering Group, Inc.<br>Clarksburg, NJ |

| 04/15/91<br>Cost<br>Estimate | Total<br>Cost<br>J-T-D | Total<br>Cost<br>1991 | Estimated<br>Cost<br>1992 | Estimated<br>Cost<br>1993 + | 1992<br>Accrual | 07/23/92<br>Projected<br>Total | Estimate<br>Variance |
|---|---|---|---|---|---|---|---|
| $366 | $319 | $308 | $30 | $60 | $0 | $398 | ($32) |

Section 1.0  Facility Descript.

Section 2.0  Environmental Status

Section 3.0  Costs

6.11



# ST Services

6.11

## SITE REMEDEATION
### Environmental Oversight Review  July 23, 1992

**Section 1.0  Facility Descript**

| 1.1 LOCATION | 1.2 CURRENT OWNER | 1.3 PREVIOUS OWNER(s) |
|---|---|---|
| Alamogordo, NM<br>Site No. : 4002 | Standard Transpipe<br>Dallas, Texas | None |

**1.4 FACILITY DESCRIPTION**

Terminal is situated 4.5 miles south of Alamogordo NM along Highway #54, and consists of 5 bulk liquid storage tanks.  These tanks contain military jet fuel (JP-4) and range in size from 10,000 bbl. to 33,000 bbl.   Jet fuel is received into the terminal from pipeline and trucks, while the terminal delivers jet fuel to Holloman Air Force Base by pipeline.    This terminal is also equipped with tank truck loading facilities.   All tanks are contained within within an earthen dike, and truck loading facilities are equipped with concrete spill containment system.

| 1.5 FACILITY STATUS | 1.7 COMPLIANCE STATUS |
|---|---|
| Currently operating bulk liquid storage terminal. | With the exception of present groundwater contamination, this terminal is in complete compliance with appl. rules & regulations. |

**Section 2.0  Environmental Status**

| 2.1 DISCOVERY DATE | 2.2 TYPE OF CONTAMINATION | 2.3 ADJ. LAND USE |
|---|---|---|
| June, 1983 | Groundwater contaminated by hydrocarbons (jet fuel). | Residential, Commercial, and Ranching |

**2.4 SOURCE OF CONTAMINATION**

Past practices, and spills resulting from pipeline accidents combined with rainfall runoff to contaminate nearby drinking water wells.   The contaminant plume is located at the drinking water table directly below the terminal and approximately 1/2 mile down-gradient (south).

| 2.5 NOTICE of VIOLATION | 2.6 ADMIN. CONSENT ORDER |
|---|---|
| To date there has not been any violations issued regarding this project.   ST is undertaking this remediation on a voluntary basis. | None |

| 2.7 REMEDIATION METHODS | 2.8 MILESTONES | |
|---|---|---|
| Pump-and-Treat:<br>Groundwater from pumping of 5 wells is processed through oil/water separator, then an air stripper, and finally a carbon adsorption chamber.  Processed water is discharged to ground by filtration galleries. | 10/85<br>/87<br>03/88<br>04/88<br>06/92 | Settlement Agreement complete<br>Site Assessment complete<br>Remediation Plan approved<br>Remediation System operational<br>Remediation continues |

**2.9 PROGRESS-TO-DATE**

The groundwater remediation system continues to operate daily with an average of 2800 gallons/day being processed through the air stripper/carbon filter treatment system.  Per state requirements, the monitoring wells are sampled and analized quarterly.   The first quarter analysis of 1992 indicates that the pump and treat system is operating according the design parameters and state requirements.   The terminal replaced the carbon in the #1 filter in April after over 1 year of use, which indicates that the air stripping is significantly treating the influent water and thereby contributing to reduced operating costs.   There appears to be a significant increase in the water level which is attributed to heavy spring rains.   The fluctuation of the water table is expected to increase the contaminants in the influent to the treatment system due to the "washing" effect.

| 2.10 LEGAL ACTIONS | 2.11 CONSULTANTS |
|---|---|
| None | Geohyrology Associates, Inc.<br>Albuquerque, NM |

**Section 3.0  Costs**

| 04/15/91<br>Cost<br>Estimate | Total<br>Cost<br>J-T-D | Total<br>Cost<br>1991 | Estimated<br>Cost<br>1992 | Estimated<br>Cost<br>1993 + | 1992<br>Accrual | 07/23/92<br>Projected<br>Total | Estimate<br>Variance |
|---|---|---|---|---|---|---|---|
| $770 | $658 | $112 | $28 | $75 | $0 | $749 | $21 |

( Note: $534  paid by insurance )

6.11



**ST Services**

6.11

# SITE REMEDIATION
### Environmental Oversight Review  July 23, 1992

| 1.1 LOCATION | 1.2 CURRENT OWNER | 1.3 PREVIOUS OWNER(s) |
|---|---|---|
| Columbus, GA<br>Site No. : 4071 | Support Terminal Services<br>Dallas, Texas | Whitaker Oil<br>(ST acquired 1981) |

**1.4 FACILITY DESCRIPTION**

The Columbus terminal can be found at 800 Lumpkin Road, and has 35 bulk liquid storage tanks ranging in size from 720 bbL to 20,000 bbL. These tanks are utilized to store petroleum and chemicals. As a member of the Port of Columbus. ST receives products by vessel and rail car, and is capable of distributing these commodities by tank truck and rail car. All tanks are above ground, and are contained within concrete and/or earthen dikes. The loading racks are provided with spill containment that drains to an oil/water separator within the tank dike area.

| 1.5 FACILITY STATUS | 1.7 COMPLIANCE STATUS |
|---|---|
| Currently operating bulk liquid storage terminal. | With the exception of present soil contamination, this terminal is in complete compliance with appl. rules & regulations. |

| 2.1 DISCOVERY DATE | 2.2 TYPE OF CONTAMINATION | 2.3 ADJ. LAND USE |
|---|---|---|
| August, 1990 | Surface soil contaminated by Sodium Hydroxide (Caustic) | Industrial |

**2.4 SOURCE OF CONTAMINATION**

Past practices, and a leaking pump seal allowed sodium hydroxide to pool within the diked area. An additional spill reported on 09/23/91 which may have compounded the already existing problem. The contamination has been limited to the area within the tank dike and a small area down-gradient from the dike drain. Groundwater monitoring wells have proven that there is no contamination of subsurface water.

| 2.5 NOTICE of VIOLATION | 2.6 ADMIN. CONSENT ORDER |
|---|---|
| NOV issued 09/01/91 | Consent Order issued on 06/23/92.<br>ST signed order on 07/6/92. This order requires ST to submit a work plan and schedule within 60 days. |

| 2.7 REMEDIATION METHODS | 2.8 MILESTONES | |
|---|---|---|
| Excavation with off-site disposal at a permitted class II land fill. Area will be back-filled with clean soil. Analysis indicates that the contaminated soil has a pH below 12.0, and therefore is not considered hazardous waste. | 08/91<br>06/91<br>10/91<br>01/92<br>06/92 | Initial treatments complete<br>DNR samples show additional cont.<br>Received Notice-of-Violation<br>DNR samples show additional cont.<br>DNR issues Consent Order |

**2.9 PROGRESS-TO-DATE**

*Following repeated attempts to remediate the contaminated soil, ST contracted with Delta Environmental Consultants to perform additional site assessment in order to determine the causes for the continued high pH readings found in the soil. We have determined that the original remediation activities insufficiently treated the soil and therefore, not all of the caustic had been neutralized. The state DNR issued a Consent Order on 06/23/92 that requires ST to develop a work plan and schedule that will completely address the contamination. The results of Delta's assessment concludes that the existing soil can no longer be treated in-place, therefore all contaminated soil with pH greater than 9.0 must be excavated and disposed of off-site. The Consent Order was signed by Fred Johnson on 07/06/92 and mailed to the DNR with a check in the amount of $10,000 to be applied to the penalty assessed by DNR. Delta will complete the work plan and schedule by 08/01/92. Following the approval of DNR, we will proceed with the remediation activities. Delta has estimated the remediation activities will require 2 to 4 weeks, depending on weather.*

| 2.10 LEGAL ACTIONS | 2.11 CONSULTANTS |
|---|---|
| None | Delta Environmental Consultants, Inc.<br>Atlanta, GA |

| 04/15/91<br>Cost<br>Estimate | Total<br>Cost<br>J-T-D | Total<br>Cost<br>1991 | Estimated<br>Cost<br>1992 | Estimated<br>Cost<br>1993 + | 1992<br>Accrual | 07/23/92<br>Projected<br>Total | Estimate<br>Variance |
|---|---|---|---|---|---|---|---|
| $255 | $318 | $276 | $250 | $20 | $0 | $546 | ($291) |

6.11.



SCHEDULE 6.12


SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER


EXCEPTIONS TO ORDINARY COURSE OF
OPERATIONS OF CORPORATIONS


Damage to tanks in Homestead, Florida facility
due to Hurricane Andrew


H:\Shared\Skaye\WP\Energy\ST\6.12

SCHEDULE 6.13

**SUPPORT TERMINAL SERVICES, INC.**
**STS AGREEMENT AND PLAN OF MERGER**

<u>LIENS AND ENCUMBRANCES</u>

1.    Rights of lessors to leasehold improvements.

2.    See unrecorded and/or undocumented easements as set forth in
      Exhibit A.

SCHEDULE 6.14

**SUPPORT TERMINAL SERVICES, INC.**
**STS AGREEMENT AND PLAN OF MERGER**

<u>LIABILITIES</u>

See Schedule 6.12

SCHEDULE 6.15


SUPPORT TERMINAL SERVICES, INC.
STOCK PURCHASE AGREEMENT


<u>TRADEMARKS & TRADENAMES; INTELLECTUAL PROPERTY</u>


Unregistered rights in the following:


ST Services
ST
StanTrans
Support Terminal Services
Standard TransPipe
STS


H:\Shared\Skaye\WP\Energy\ST\6.15

SCHEDULE 6.16


SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER


COMPLIANCE WITH APPLICABLE LAW


NONE

SCHEDULE 6.17

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

### CUSTOMERS

U.S. Government
BASF Corporation
Amoco Oil Company
Shell Oil Company
Elf Asphalt
ADM Corn Processing
Sun Refining & Marketing Company
Tosco Corporation
Ultramar, Inc.
Mitsubishi International Corporation
GAF Chemicals Corporation
Exxon Company, U.S.A.
CF Industries, Inc.
Standard Chlorine of Delaware, Inc.
Phillips Petroleum Company
Miles, Inc.
Marubeni America Corporation
IndeChem Marketing Company, Inc. (Murex)
Navajo Refining Co.
Nalco Chemical Company
Phibro Energy, Inc.
Ethyl Corporation
Alban Rubber & Chemical, Inc.
E.I. Du Pont de Nemours and Company
Texaco Refining & Marketing, Inc.
CSX
Unocal (Union Oil)

H:\Shared\Skaye\WP\Energy\STS\6.r9

SCHEDULE 6.19


SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

## PROPERTIES, LICENSES & PERMITS


See Exhibit A

SCHEDULE 6.22

## SUPPORT TERMINAL SERVICES, INC.
## STS AGREEMENT AND PLAN OF MERGER

### PERSONAL PROPERTY

Distribution By Department - Accumulated Depreciation
For 1 Period(s)
Periods Posted Year-to-Date: 12

11/05/92
3:00pm

Schedule 6.21

| Asset Number | Description | Placed In Service | Book Cost | Prior Year Accum Depr - Sec 179 & ITC | Depr Posted - Prior Periods | Depr Posted This Period | Period End = Net Book Value |
|---|---|---|---|---|---|---|---|

Department Code: 12      Department Description: TERMINAL 12

General Ledger Asset Account: 202012000
        Accumulated Account: 203012000

| 122001 | FURNITURE & FIXTURES-MISC | 11/01/71 | 253.00 | 228.00 | 0.00 | 0.00 | 25.00 |
| 122006 | FURNITURE | 03/01/80 | 1248.00 | 1123.00 | 0.00 | 0.00 | 125.00 |
| 122007 | PANASONIC FAX MACHINE | 10/01/92 | 1290.00 | 0.00 | 38.70 | 19.35 | 1231.95 |

Totals for: 207012000     208012000      2791.00     1351.00     38.70     19.35     1381.95

General Ledger Asset Account: 209012000
        Accumulated Account: 210012000

| 124001 | MISC PLANT & EQUIPMENT | 11/01/71 | 365001.00 | 328501.00 | 0.00 | 0.00 | 36500.00 |
| 124002 | PIG LAUNCHER | 09/01/72 | 4177.00 | 3759.00 | 0.00 | 0.00 | 418.00 |
| 124003 | VOLCNE SEPARATOR | 11/01/73 | 3815.00 | 3434.00 | 0.00 | 0.00 | 381.00 |
| 124004 | CATHODIC PROTECTOR | 06/01/74 | 570.00 | 513.00 | 0.00 | 0.00 | 57.00 |
| 124005 | CATHODIC PROT UNIT | 11/01/74 | 1983.00 | 1785.00 | 0.00 | 0.00 | 198.00 |
| 124007 | CATHODIC PROT UNIT | 09/01/76 | 330.00 | 297.00 | 0.00 | 0.00 | 33.00 |
| 124008 | CATHODIC PROT UNIT | 01/01/77 | 4492.00 | 4043.00 | 0.00 | 0.00 | 449.00 |
| 124009 | TERMINAL FACILITY | 11/01/78 | 52089.33 | 52089.33 | 0.00 | 0.00 | 0.00 |
| 124010 | EXTENDED LIFE 009 | 08/01/87 | 14055.67 | 2054.00 | 425.34 | 38.76 | 11536.37 |
| 124011 | METER | 04/01/79 | 4115.00 | 3703.00 | 0.00 | 0.00 | 412.00 |
| 124012 | PIPE | 05/01/79 | 8174.00 | 7357.00 | 0.00 | 0.00 | 817.00 |
| 124013 | METERS | 06/01/79 | 1348.19 | 1213.19 | 0.00 | 0.00 | 135.00 |
| 124014 | NEW PIPELINE | 04/01/81 | 65694.34 | 65694.34 | 0.00 | 0.00 | 0.00 |
| 124015 | EXTENDED LIFE 014 | 08/01/87 | 118710.17 | 23308.42 | 4837.60 | 439.78 | 90124.37 |
| 124016 | CATHODIC PROTECTION EQUIPMENT | 10/01/81 | 1319.59 | 1319.59 | 0.00 | 0.00 | 0.00 |
| 124017 | EXTENDED LIFE 016 | 08/01/87 | 2652.41 | 524.29 | 108.82 | 9.89 | 2009.41 |
| 124018 | 6" PIPELINE CO482 | 07/01/82 | 19929.77 | 19929.77 | 0.00 | 0.00 | 0.00 |
| 124019 | EXTENDED LIFE 018 | 08/01/87 | 49769.74 | 9451.61 | 1961.66 | 178.33 | 39178.14 |
| 124020 | CATHODIC PROTECTION | 09/01/82 | 4051.40 | 4051.40 | 0.00 | 0.00 | 0.00 |
| 124021 | EXTENDED LIFE 020 | 08/01/87 | 10597.56 | 2016.78 | 418.58 | 38.05 | 8124.15 |
| 124022 | CATHODIC PROTECTION | 12/01/82 | 4471.56 | 4471.56 | 0.00 | 0.00 | 0.00 |
| 124023 | EXTENDED LIFE 022 | 08/01/87 | 12562.44 | 2398.12 | 497.72 | 45.25 | 9621.35 |
| 124024 | FIBERGLASS TANK BOTTOM | 12/01/82 | 8147.50 | 8147.50 | 0.00 | 0.00 | 0.00 |

* - Denotes retired asset