Distribution By Department - Accumulated Depreciation
for 1 Period(s)
Periods Posted Year-to-Date: 12

12/09/08
3:08pm

Schedule 6.22

| Asset Number | Description | Placed In Service | Book Cost | Prior Year Accum Depr - Sec 179 & ITC | Depr Posted - Prior Periods - | Depr Posted This Period | Period End = Net Book Value |
|---|---|---|---|---|---|---|---|
| Totals for: 209041000 | 210041000 | | 381011.55 | 159349.87 | 9905.94 | 1044.43 | 210711.31 |

General Ledger Asset Account: 211041000
Accumulated Account: 212041000

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 414001 | BALTIMORE - PLANT & EQUIPMENT | 05/01/81 | 712859.25 | 712859.25 | 0.00 | 0.00 | 0.00 |
| 414002 | EXTENDED LIFE 001 | 08/01/87 | 1314815.47 | 258507.40 | 53651.44 | 4877.40 | 997779.23 |
| 414003 | TANK FARM IMPROVEMENTS | 07/01/81 | 311273.04 | 311273.04 | 0.00 | 0.00 | 0.00 |
| 414004 | EXTENDED LIFE 003 | 08/01/87 | 598362.27 | 117944.05 | 24479.74 | 2225.43 | 453713.05 |
| 414005 | CHANNEL DREDGING | 12/01/81 | 251493.83 | 251493.83 | 0.00 | 0.00 | 0.00 |
| 414006 | EXTENDED LIFE 005 | 08/01/87 | 537506.17 | 106606.82 | 22125.74 | 2011.43 | 406763.18 |
| 414007 | PIER | 12/01/81 | 671912.08 | 671912.08 | 0.00 | 0.00 | 0.00 |
| 414008 | EXTENDED LIFE 007 | 08/01/87 | 1436047.51 | 284817.23 | 59113.01 | 5373.91 | 1086743.36 |
| 414009 | 2-15,000 BBL | 12/01/81 | 295961.87 | 295961.87 | 0.00 | 0.00 | 0.00 |
| 414010 | EXTENDED LIFE 009 | 08/01/87 | 632546.29 | 125456.50 | 26037.94 | 2367.08 | 478685.77 |
| 414011 | 21,000 BBL TANK | 12/01/81 | 8969.75 | 8969.75 | 0.00 | 0.00 | 0.00 |
| 414012 | EXTENDED LIFE 011 | 08/01/87 | 19170.25 | 3802.12 | 789.12 | 71.74 | 14507.27 |
| 414013 | BOILER | 12/01/81 | 87410.70 | 87410.70 | 0.00 | 0.00 | 0.00 |
| 414014 | EXTENDED LIFE 013 | 08/01/87 | 186833.37 | 37055.69 | 7690.81 | 699.16 | 141387.71 |
| 414015 | SUPPORTS, BRIDGE, WALKWAY | 05/01/82 | 5051.46 | 5051.46 | 0.00 | 0.00 | 0.00 |
| 414016 | EXTENDED LIFE 015 | 08/01/87 | 12054.74 | 2284.25 | 474.09 | 43.10 | 9253.30 |
| 414017 | PIER | 05/01/82 | 10089.36 | 10089.36 | 0.00 | 0.00 | 0.00 |
| 414018 | EXTENDED LIFE 017 | 08/01/87 | 24075.96 | 4562.20 | 946.87 | 86.08 | 18480.81 |
| 414019 | DREDGING | 05/01/82 | 91860.44 | 91860.44 | 0.00 | 0.00 | 0.00 |
| 414020 | EXTENDED LIFE 019 | 08/01/87 | 219201.50 | 41537.77 | 8521.05 | 783.73 | 168258.95 |
| 414021 | DREDGE SPOIL AREA | 05/01/82 | 10587.23 | 10587.23 | 0.00 | 0.00 | 0.00 |
| 414022 | EXTENDED LIFE 021 | 08/01/87 | 25263.77 | 4787.40 | 993.61 | 90.33 | 19392.43 |
| 414023 | TKS 1501 & 1502 | 05/01/82 | 70736.94 | 70736.94 | 0.00 | 0.00 | 0.00 |
| 414024 | EXTENDED LIFE 024 | 08/01/87 | 168795.14 | 31985.98 | 6638.60 | 603.51 | 129567.05 |
| 414025 | DOCK PRODUCT LINES | 05/01/82 | 27529.02 | 27529.02 | 0.00 | 0.00 | 0.00 |
| 414026 | EXTENDED LIFE 025 | 08/01/82 | 65690.80 | 12448.11 | 2583.57 | 234.87 | 50424.25 |
| 414027 | SITE PREPARATION | 05/01/82 | 7547.33 | 7547.33 | 0.00 | 0.00 | 0.00 |
| 414028 | EXTENDED LIFE 027 | 08/01/87 | 18009.88 | 3412.72 | 708.30 | 64.39 | 13824.47 |
| 414029 | CATHODIC PROTECTION | 05/01/82 | 2773.26 | 2773.26 | 0.00 | 0.00 | 0.00 |
| 414030 | EXTENDED LIFE 029 | 08/01/87 | 6617.59 | 1254.02 | 260.27 | 23.66 | 5079.64 |
| 414031 | PAVING RETAINING WALL/DIK | 05/01/82 | 10868.03 | 10868.03 | 0.00 | 0.00 | 0.00 |
| 414032 | EXTENDED LIFE 031 | 08/01/87 | 25933.37 | 4914.29 | 1019.95 | 92.72 | 19906.41 |
| 414033 | MISC TK FARM IMPROVEMENT | 05/01/82 | 12844.91 | 12844.91 | 0.00 | 0.00 | 0.00 |
| 414034 | EXTENDED LIFE 033 | 08/01/87 | 30650.09 | 5808.15 | 1205.46 | 109.59 | 23526.89 |
| 414035 | BOILER & WATER TREATMENT | 07/01/82 | 1011.49 | 1011.49 | 0.00 | 0.00 | 0.00 |
| 414036 | EXTENDED LIFE 035 | 08/01/87 | 2526.49 | 479.75 | 99.57 | 9.05 | 1938.12 |
| 414037 | PIPING, MECHANICAL/INSUL. | 07/01/82 | 8568.33 | 8568.33 | 0.00 | 0.00 | 0.00 |
| 414038 | EXTENDED LIFE 037 | 08/01/87 | 16471.43 | 3114.94 | 646.50 | 58.77 | 12651.22 |
| 414039 | ELECT. RM/WAREHOUSE/BOILER | 07/01/82 | 1070.43 | 1070.43 | 0.00 | 0.00 | 0.00 |
| 414040 | EXTENDED LIFE 039 | 08/01/87 | 2672.57 | 507.61 | 105.35 | 9.58 | 2050.03 |
| 414041 | TANK MODIFICATIONS | 07/01/82 | 314.79 | 314.79 | 0.00 | 0.00 | 0.00 |
| 414042 | EXTENDED LIFE 041 | 08/01/87 | 786.15 | 149.33 | 30.93 | 2.82 | 603.01 |
| 414043 | MCC BUILDING | 07/01/82 | 2578.38 | 2578.38 | 0.00 | 0.00 | 0.00 |
| 414044 | EXTENDED LIFE 043 | 08/01/87 | 6439.02 | 1222.75 | 253.78 | 23.07 | 4939.42 |
| 414045 | ELECTRICAL DISTRIBUTION | 09/01/82 | 21890.82 | 21890.82 | 0.00 | 0.00 | 0.00 |
| 414046 | EXTENDED LIFE 045 | 08/01/87 | 57262.18 | 10897.51 | 2261.75 | 205.61 | 43897.31 |

* - Denotes retired asset

STS

Distribution By Department - Accumulated Depreciation
for 1 Period(s)
Periods Posted Year-to-Date: 12

12:05:?
3:06pm

Schedule 6.22

| Asset Number | Description | Placed In Service | Book Cost | Prior Year Accum Depr - Sec 179 & ITC | Depr Posted - Prior Periods - | Depr Posted This Period | Period End = Net Book Value |
|---|---|---|---|---|---|---|---|
| 414047 | DREDGING | 10/01/82 | 108750.00 | 108750.00 | 0.00 | 0.00 | 0.00 |
| 414048 | EXTENDED LIFE 047 | 08/01/87 | 291250.00 | 55484.38 | 11515.63 | 1046.87 | 223203.12 |
| 414049 | CONSTRUCTION TANK | 10/01/82 | 18567.36 | 18567.36 | 0.00 | 0.00 | 0.00 |
| 414050 | EXTENDED LIFE 049 | 08/01/87 | 49725.65 | 9473.28 | 1966.09 | 178.74 | 38107.54 |
| 414051 | PERMANENT POWER | 10/01/82 | 3773.48 | 3773.48 | 0.00 | 0.00 | 0.00 |
| 414052 | EXTENDED LIFE 051 | 08/01/87 | 10105.04 | 1925.23 | 399.58 | 36.32 | 7744.91 |
| 414053 | WASTE WATER SYSTEM | 12/01/82 | 51795.90 | 51795.90 | 0.00 | 0.00 | 0.00 |
| 414054 | EXTENDED LIFE 053 | 08/01/87 | 145521.74 | 27778.57 | 5765.37 | 524.12 | 111453.62 |
| 414055 | NITROGEN SUPPLY SYSTEM | 12/01/82 | 12018.65 | 12018.65 | 0.00 | 0.00 | 0.00 |
| 414056 | EXTENDED LIFE 055 | 08/01/87 | 33766.03 | 6445.68 | 1337.78 | 121.62 | 25860.95 |
| 414057 | BOTTOM LOAD FUEL SK | 12/01/82 | 567.24 | 567.24 | 0.00 | 0.00 | 0.00 |
| 414058 | EXTENDED LIFE 057 | 08/01/87 | 1593.52 | 304.21 | 63.14 | 5.74 | 1220.43 |
| 414059 | COLONIAL PIPELINE | 12/01/82 | 13788.56 | 13788.56 | 0.00 | 0.00 | 0.00 |
| 414060 | EXTENDED LIFE 059 | 08/01/87 | 38739.63 | 7394.96 | 1534.80 | 139.53 | 29670.34 |
| 414061 | SANITARY AIR FILTER | 12/01/82 | 1468.32 | 1468.32 | 0.00 | 0.00 | 0.00 |
| 414062 | EXTENDED LIFE 061 | 08/01/87 | 4124.93 | 787.48 | 163.44 | 14.86 | 3159.15 |
| 414063 | WINTERIZATION/SKID | 12/01/82 | 669.78 | 669.78 | 0.00 | 0.00 | 0.00 |
| 414064 | EXTENDED LIFE 063 | 08/01/87 | 1881.64 | 359.21 | 74.55 | 6.78 | 1441.10 |
| 414065 | DOCK SHELTERS | 12/01/82 | 1165.42 | 1165.42 | 0.00 | 0.00 | 0.00 |
| 414066 | EXTENDED LIFE 065 | 08/01/87 | 3274.43 | 625.05 | 129.73 | 11.79 | 2507.86 |
| 414067 | TANK 2101 | 12/01/82 | 759.83 | 759.83 | 0.00 | 0.00 | 0.00 |
| 414068 | EXTENDED LIFE 067 | 08/01/87 | 2134.17 | 407.48 | 84.57 | 7.69 | 1634.43 |
| 414069 | SUGAR EQUIPMENT SHELTER | 02/01/83 | 2818.28 | 2818.28 | 0.00 | 0.00 | 0.00 |
| 414070 | EXTENDED LIFE 069 | 08/01/87 | 8315.32 | 1590.52 | 330.11 | 30.01 | 6364.68 |
| 414071 | PUMP/PIPING | 04/01/83 | 4360.31 | 4360.31 | 0.00 | 0.00 | 0.00 |
| 414072 | EXTENDED LIFE 071 | 08/01/87 | 13528.51 | 2469.02 | 512.43 | 46.59 | 10500.47 |
| 414073 | AIR SYSTEM 1501/1502 | 04/01/83 | 1135.83 | 1135.83 | 0.00 | 0.00 | 0.00 |
| 414074 | EXTENDED LIFE 073 | 08/01/87 | 3524.27 | 643.20 | 133.49 | 12.14 | 2735.44 |
| 414075 | PUMPS/WATERLINE | 05/01/83 | 1650.95 | 1650.95 | 0.00 | 0.00 | 0.00 |
| 414076 | EXTENDED LIFE 075 | 08/01/87 | 5255.53 | 960.01 | 199.25 | 18.11 | 4078.16 |
| 414077 | TWO 150 LB FIRE EXT. | 09/01/83 | 2086.07 | 2086.07 | 0.00 | 0.00 | 0.00 |
| 414078 | EXTENDED LIFE 077 | 08/01/87 | 7552.92 | 1385.77 | 287.61 | 26.15 | 5853.39 |
| 414079 | MOVE DISP. TAILER | 09/01/83 | 6840.28 | 6840.28 | 0.00 | 0.00 | 0.00 |
| 414080 | EXTENDED LIFE 079 | 08/01/87 | 24207.90 | 4438.31 | 921.16 | 83.74 | 18764.69 |
| 414081 | UPGRADE SO TERMINAL TANKAGE | 11/01/83 | 8873.52 | 8873.52 | 0.00 | 0.00 | 0.00 |
| 414082 | EXTENDED LIFE 081 | 08/01/87 | 33193.85 | 6096.45 | 1265.30 | 115.03 | 25717.07 |
| 414083 | SO TERMINAL DRAINAGE | 11/01/83 | 5617.37 | 5617.37 | 0.00 | 0.00 | 0.00 |
| 414084 | EXTENDED LIFE 083 | 08/01/87 | 21013.09 | 3859.34 | 800.99 | 72.82 | 16279.94 |
| 414085 | COMPLETE TK2101 | 11/01/83 | 1701.76 | 1701.76 | 0.00 | 0.00 | 0.00 |
| 414086 | EXTENDED LIFE 085 | 08/01/87 | 6365.97 | 1169.15 | 242.65 | 22.06 | 4932.11 |
| 414087 | RELOCATE & UPGRADE TK 8001 | 12/01/83 | 25993.07 | 25993.07 | 0.00 | 0.00 | 0.00 |
| 414088 | EXTENDED LIFE 087 | 08/01/87 | 100034.29 | 18388.32 | 3816.44 | 346.95 | 77482.58 |
| 414089 | NEW FIVE SPOT RAIL CAR FACILTY | 08/01/84 | 3329.33 | 3329.33 | 0.00 | 0.00 | 0.00 |
| 414090 | EXTENDED LIFE 089 | 08/01/87 | 16400.17 | 2896.36 | 601.13 | 54.65 | 12848.03 |
| 414091 | ACM COKE EXPANSION | 12/01/84 | 27526.62 | 27526.62 | 0.00 | 0.00 | 0.00 |
| 414092 | EXTENDED LIFE 091 | 08/01/87 | 155983.97 | 27630.84 | 5734.70 | 521.34 | 122097.09 |
| 414093 | PRODUCT RECOVERY LINE SOUTH - | 12/01/84 | 1430.02 | 1430.02 | 0.00 | 0.00 | 0.00 |
| 414094 | EXTENDED LIFE 093 | 08/01/87 | 8103.39 | 1435.42 | 297.92 | 27.08 | 6342.97 |
| 414095 | TRF 67000 BB TK#6701 FROM ST. | 05/01/82 | 20902.92 | 20902.92 | 0.00 | 0.00 | 0.00 |
| 414096 | EXTENDED LIFE 095 | 08/01/87 | 46097.08 | 8700.18 | 1805.70 | 164.15 | 35427.05 |
| 414097 | ADDITIONAL COSTS TK 6701 | 01/01/85 | 662.16 | 662.16 | 0.00 | 0.00 | 0.00 |
| 414098 | EXTENDED LIFE 097 | 08/01/87 | 3894.93 | 690.40 | 143.29 | 13.03 | 3048.21 |

* - Denotes retired asset

STS

Distribution By Department - Accumulated Depreciation
For 1 Period(s)
Periods Posted Year-to-Date: 12

12/09/08
3:08pm

Schedule 6.22

| Asset Number | Description | Placed In Service | Book Cost | Prior Year Accum Depr - Sec 179 & ITC | Depr Posted - Prior Periods - | Depr Posted This Period | Period End * Net Book Value |
|---|---|---|---|---|---|---|---|
| 414099 | RELOCATE TK6701 FROM ST. IGNAC | 01/01/85 | 46426.61 | 46426.61 | 0.00 | 0.00 | 0.00 |
| 414100 | EXTENDED LIFE 099 | 08/01/87 | 273058.01 | 48406.48 | 10046.63 | 913.33 | 213701.57 |
| 414101 | 65TH STREET CONTAINMENT | 01/01/85 | 3316.69 | 3316.69 | 0.00 | 0.00 | 0.00 |
| 414102 | EXTENDED LIFE 101 | 08/01/87 | 19608.31 | 3458.12 | 717.72 | 65.25 | 15267.22 |
| 414103 | TK3301 FUEL OIL PREP | 01/01/85 | 10911.67 | 10911.67 | 0.00 | 0.00 | 0.00 |
| 414104 | EXTENDED LIFE 103 | 08/01/87 | 64179.18 | 11376.97 | 2361.26 | 214.66 | 50226.29 |
| 414105 | TRF 8 3K BB TKS FROM SOMERVILL | 01/01/85 | 67189.44 | 67189.44 | 0.00 | 0.00 | 0.00 |
| 414106 | EXTENDED LIFE 105 | 08/01/87 | 395189.66 | 70054.69 | 14539.65 | 1321.79 | 309273.53 |
| 414107 | INTERIM FIRE PROTECTION | 01/01/85 | 1019.67 | 1019.67 | 0.00 | 0.00 | 0.00 |
| 414108 | EXTENDED LIFE 107 | 08/01/87 | 5997.89 | 1063.18 | 220.66 | 20.06 | 4693.99 |
| 414109 | TRF 301-308 FROM SOMERVILLE - | 06/01/80 | 19350.00 | 19350.00 | 0.00 | 0.00 | 0.00 |
| 414110 | EXTENDED LIFE 109 | 08/01/87 | 28650.00 | 5852.08 | 1214.58 | 110.42 | 21472.92 |
| 414111 | PHASE I FERT ADDITIONS (AMROCH | 05/01/85 | 6893.84 | 6893.84 | 0.00 | 0.00 | 0.00 |
| 414112 | EXTENDED LIFE 111 | 08/01/87 | 47575.94 | 8089.97 | 1679.05 | 152.64 | 37654.28 |
| 414113 | PHASE II FERT ADDITIONS (AMROC | 05/01/85 | 1235.47 | 1235.47 | 0.00 | 0.00 | 0.00 |
| 414114 | EXTENDED LIFE 113 | 08/01/87 | 8525.94 | 1449.82 | 300.91 | 27.35 | 6747.86 |
| 414115 | NEW PUMP STATION & PIPING TK 1 | 05/01/85 | 2837.72 | 2837.72 | 0.00 | 0.00 | 0.00 |
| 414116 | EXTENDED LIFE 115 | 08/01/87 | 19583.63 | 3330.09 | 691.15 | 62.83 | 15499.56 |
| 414117 | NEW WATER LINE & SAFETY SHOWERS | 05/01/85 | 3647.78 | 3647.78 | 0.00 | 0.00 | 0.00 |
| 414118 | EXTENDED LIFE 117 | 08/01/87 | 25174.29 | 4280.77 | 888.46 | 80.77 | 19924.29 |
| 414119 | PIPE RACK CROSSWALKS - NEW | 06/01/86 | 901.50 | 901.50 | 0.00 | 0.00 | 0.00 |
| 414120 | EXTENDED LIFE 119 | 08/01/87 | 6495.88 | 1105.31 | 229.40 | 20.86 | 5140.31 |
| 414121 | CAUSTIC TEMP CONTROL | 07/01/86 | 540.25 | 540.25 | 0.00 | 0.00 | 0.00 |
| 414122 | EXTENDED LIFE 121 | 08/01/87 | 4069.86 | 693.01 | 143.83 | 13.08 | 3219.94 |
| 414123 | TK1003 & 1004 - ETHANOL CONVER | 07/01/86 | 25865.22 | 25865.22 | 0.00 | 0.00 | 0.00 |
| 414124 | EXTENDED LIFE 123 | 08/01/87 | 195002.23 | 33204.36 | 6891.47 | 626.50 | 154279.90 |
| 414125 | TK 3301 - LUBE OIL PROJECT | 08/01/86 | 745.23 | 745.23 | 0.00 | 0.00 | 0.00 |
| 414126 | EXTENDED LIFE 125 | 08/01/87 | 5878.70 | 1001.75 | 207.91 | 18.90 | 4650.14 |
| 414127 | TRF TK 6702 FROM ST. IGNACE - | 05/01/82 | 19785.84 | 19785.84 | 0.00 | 0.00 | 0.00 |
| 414128 | EXTENDED LIFE 127 | 08/01/87 | 47214.16 | 8946.89 | 1856.90 | 168.81 | 36241.56 |
| 414129 | RE-ERECT TK 6702 FROM ST. IGNA | 08/01/83 | 88395.28 | 88395.28 | 0.00 | 0.00 | 0.00 |
| 414130 | EXTENDED LIFE 129 | 08/01/87 | 697339.68 | 118621.14 | 24660.99 | 2241.91 | 551615.64 |
| 414131 | TK 503 SOUTH POINT ETHANOL | 08/01/86 | 15820.73 | 15820.73 | 0.00 | 0.00 | 0.00 |
| 414132 | EXTENDED LIFE 131 | 08/01/87 | 124807.89 | 21266.24 | 4413.75 | 401.25 | 98726.65 |
| 414133 | RELOCATE TKS 309 & 310 - SOMER | 09/01/86 | 8043.26 | 8043.26 | 0.00 | 0.00 | 0.00 |
| 414134 | EXTENDED LIFE 133 | 08/01/87 | 66560.26 | 11348.97 | 2355.45 | 214.13 | 52641.71 |
| 414135 | TKS 309 & 310 TRF FRM SOMERVIL | 06/01/80 | 4838.05 | 4838.05 | 0.00 | 0.00 | 0.00 |
| 414136 | EXTENDED LIFE 135 | 08/01/87 | 7161.95 | 1462.89 | 303.62 | 27.60 | 5367.84 |
| 414137 | TKS 1003 & 1004 FRM SOMERVILLE | 06/01/80 | 16125.00 | 16125.00 | 0.00 | 0.00 | 0.00 |
| 414138 | EXTENDED LIFE 137 | 08/01/87 | 23875.00 | 4876.74 | 1012.16 | 92.01 | 17894.09 |
| 414139 | TK 1301 BUILD & EQUIP NEW | 11/01/85 | 24959.10 | 24959.10 | 0.00 | 0.00 | 0.00 |
| 414140 | EXTENDED LIFE 139 | 08/01/87 | 228593.11 | 39027.61 | 8100.07 | 736.37 | 180729.06 |
| 414141 | REMOTE GAUGING PHASE I | 11/01/85 | 5799.50 | 5799.50 | 0.00 | 0.00 | 0.00 |
| 414142 | EXTENDED LIFE 141 | 08/01/87 | 53116.25 | 9058.43 | 1882.13 | 171.10 | 41994.59 |
| 414143 | COMPRESSOR UPGRADE NEW | 11/01/85 | 1999.63 | 1999.63 | 0.00 | 0.00 | 0.00 |
| 414144 | EXTENDED LIFE 143 | 08/01/87 | 18313.80 | 3126.78 | 648.95 | 59.00 | 14479.07 |
| 414145 | TK 3301 MODIFICATIONS FOR ETHA | 11/01/85 | 558.61 | 558.61 | 0.00 | 0.00 | 0.00 |
| 414146 | EXTENDED LIFE 145 | 08/01/87 | 5116.78 | 873.49 | 181.29 | 16.48 | 4045.52 |
| 414147 | PAINT TKS 6701, 301-308 | 01/01/86 | 7078.30 | 7078.30 | 0.00 | 0.00 | 0.00 |
| 414148 | EXTENDED LIFE 147 | 08/01/87 | 72397.97 | 12376.26 | 2568.66 | 233.51 | 57219.54 |
| 414149 | TK 1001 (CAUSTIC CONV) | 01/01/86 | 7475.39 | 7475.39 | 0.00 | 0.00 | 0.00 |
| 414150 | EXTENDED LIFE 149 | 08/01/87 | 76458.56 | 13070.55 | 2712.76 | 246.61 | 60428.64 |

* - Denotes retired asset

STS

Distribution By Department: - Accumulated Depreciation
For 1 Period(s)
Periods Posted Year-to-Date: 12

12/09/92
3:08pm

Schedule 6.23

| Asset Number | Description | Placed In Service | Book Cost | Prior Year Accum Depr - Sec 179 & ITC - | Depr Posted - Prior Periods - | Depr Posted This Period | Period End * Net Book Value |
|---|---|---|---|---|---|---|---|
| 414151 | SCALE CONCRETE | 01/01/86 | 3105.72 | 3105.72 | 0.00 | 0.00 | 0.00 |
| 414152 | EXTENDED LIFE 151 | 08/01/87 | 31765.28 | 5430.25 | 1127.03 | 102.46 | 25105.54 |
| 414153 | TK 501 GAUGE & PIPING | 01/01/86 | 1380.01 | 1380.01 | 0.00 | 0.00 | 0.00 |
| 414154 | EXTENDED LIFE 153 | 08/01/87 | 14114.63 | 2412.96 | 500.80 | 45.53 | 11155.34 |
| 414155 | TKS 1005&06-C438S RECONST. COS | 01/01/86 | 16209.41 | 16209.41 | 0.00 | 0.00 | 0.00 |
| 414156 | EXTENDED LIFE 155 | 08/01/87 | 165790.59 | 28341.66 | 5882.23 | 534.75 | 131031.95 |
| 414157 | TKS 1005&06 TRF FROM SOMERVILL | 06/01/80 | 16125.00 | 16125.00 | 0.00 | 0.00 | 0.00 |
| 414158 | EXTENDED LIFE 157 | 08/01/87 | 23875.00 | 4876.74 | 1012.16 | 92.01 | 17894.09 |
| 414159 | 2ND CLOSE TK 6702 | 08/01/85 | 785.94 | 785.94 | 0.00 | 0.00 | 0.00 |
| 414160 | EXTENDED LIFE 159 | 08/01/87 | 6200.36 | 1056.42 | 219.26 | 19.93 | 4904.75 |
| 414161 | CAUSTIC LOADING ARMS | 03/01/86 | 501.68 | 501.68 | 0.00 | 0.00 | 0.00 |
| 414162 | EXTENDED LIFE 161 | 08/01/87 | 5794.41 | 950.39 | 197.25 | 17.93 | 4628.84 |
| 414163 | INBOUND SUGAR PRE-STRAINERS - | 03/01/86 | 358.87 | 358.87 | 0.00 | 0.00 | 0.00 |
| 414164 | EXTENDED LIFE 163 | 08/01/87 | 4144.17 | 679.82 | 141.09 | 12.83 | 3310.43 |
| 414165 | STEAM LINE EXTENSION | 03/01/86 | 2355.55 | 2355.55 | 0.00 | 0.00 | 0.00 |
| 414166 | EXTENDED LIFE 165 | 08/01/87 | 27204.52 | 4462.41 | 926.16 | 84.20 | 21731.75 |
| 414167 | USED 18,000 GAL TK FR AG CHE | 06/01/64 | 11083.00 | 10521.00 | 0.00 | 0.00 | 462.00 |
| 414168 | USED 30,000 GAL TK FR AG CHE | 08/01/62 | 9450.00 | 9450.00 | 0.00 | 0.00 | 0.00 |
| 414169 | BOILER WATER TREATMENT - AFE C | 04/01/86 | 644.76 | 644.76 | 0.00 | 0.00 | 0.00 |
| 414170 | EXTENDED LIFE 169 | 08/01/87 | 7952.10 | 1305.14 | 270.88 | 24.62 | 6351.46 |
| 414171 | 2-67000 BBL TANKS TSF FM 42 TO | 05/01/82 | 39571.99 | 39571.99 | 0.00 | 0.00 | 0.00 |
| 414172 | EXTENDED LIFE 171 | 08/01/87 | 94428.01 | 17893.68 | 3713.78 | 337.62 | 72482.93 |
| 414173 | TSF 10000 BBL TANK FM 36 TO41 | 06/01/80 | 8062.50 | 8062.50 | 0.00 | 0.00 | 0.00 |
| 414174 | EXTENDED LIFE 173 | 08/01/87 | 11937.50 | 2438.36 | 506.07 | 46.01 | 8947.06 |
| 414175 | TSF 10000 BBL TANK FRM 36 TO 4 | 06/01/80 | 8062.50 | 8062.50 | 0.00 | 0.00 | 0.00 |
| 414176 | EXTENDED LIFE 175 | 08/01/87 | 11937.50 | 2438.36 | 506.07 | 46.01 | 8947.06 |
| 414177 | TSF 10000 BBL TANK FM 36 TO 41 | 06/01/80 | 8062.50 | 8062.50 | 0.00 | 0.00 | 0.00 |
| 414178 | EXTENDED LIFE 177 | 08/01/87 | 11937.50 | 2438.36 | 506.07 | 46.01 | 8947.06 |
| 414179 | TANK 1202 PROJECT | 07/01/86 | 6276.55 | 6276.55 | 0.00 | 0.00 | 0.00 |
| 414180 | EXTENDED LIFE 179 | 08/01/87 | 96723.45 | 15904.32 | 3300.90 | 300.08 | 77218.15 |
| 414181 | ASPHALT PROJECT | 07/01/86 | 114928.16 | 114928.16 | 0.00 | 0.00 | 0.00 |
| 414182 | EXTENDED LIFE 181 | 08/01/87 | 1771071.84 | 291218.78 | 60441.64 | 5494.69 | 1413916.73 |
| 414183 | MARPOL "OILY WASTE RECEPTION" | 08/01/86 | 858.70 | 858.70 | 0.00 | 0.00 | 0.00 |
| 414184 | EXTENDED LIFE 183 | 08/01/87 | 14406.46 | 2370.26 | 491.94 | 44.72 | 11499.54 |
| 414185 | TKS 1005 & 1006 PROJECT | 09/01/86 | 1340.66 | 1340.66 | 0.00 | 0.00 | 0.00 |
| 414186 | EXTENDED LIFE 185 | 08/01/87 | 24659.34 | 4069.54 | 842.54 | 76.60 | 19680.66 |
| 414187 | METER MODIFICATION (SUPPLEMENT | 10/01/86 | 636.31 | 636.31 | 0.00 | 0.00 | 0.00 |
| 414188 | EXTENDED LIFE 187 | 08/01/87 | 12938.73 | 2131.26 | 442.34 | 40.21 | 10324.92 |
| 414189 | TK 1001 (CAUSTIC COND) | 10/01/86 | 140.20 | 140.20 | 0.00 | 0.00 | 0.00 |
| 414190 | EXTENDED LIFE 189 | 08/01/87 | 2850.90 | 469.59 | 97.46 | 8.86 | 2274.99 |
| 414191 | MODIFY 309.310.502. & 1003 RAJ | 11/01/86 | 852.83 | 852.83 | 0.00 | 0.00 | 0.00 |
| 414192 | EXTENDED LIFE 191 | 08/01/87 | 19361.82 | 3191.12 | 662.31 | 60.21 | 15448.18 |
| 414193 | 1002/2001 RAIL SPOT | 11/01/86 | 230.67 | 230.67 | 0.00 | 0.00 | 0.00 |
| 414194 | EXTENDED LIFE 193 | 08/01/87 | 5236.70 | 963.10 | 173.14 | 16.28 | 4178.18 |
| 414195 | FERTILIZER RELOCATION/TR LOAD | 12/01/86 | 3313.04 | 3313.04 | 0.00 | 0.00 | 0.00 |
| 414196 | EXTENDED LIFE 195 | 08/01/87 | 85035.37 | 14023.01 | 2910.44 | 264.58 | 67837.34 |
| 414197 | TANK 1202 PROJECT | 01/01/87 | 274.82 | 274.82 | 0.00 | 0.00 | 0.00 |
| 414198 | EXTENDED LIFE 197 | 08/01/87 | 8099.78 | 1336.47 | 277.38 | 25.22 | 6460.71 |
| 414199 | STEAM METER | 01/01/87 | 279.58 | 279.58 | 0.00 | 0.00 | 0.00 |
| 414200 | EXTENDED LIFE 199 | 08/01/87 | 8241.54 | 1359.86 | 282.23 | 25.66 | 6573.79 |
| 414201 | TANK 1201 HEUBLEIN ETHANOL C80 | 01/01/87 | 3696.49 | 3696.49 | 0.00 | 0.00 | 0.00 |
| 414202 | EXTENDED LIFE 201 | 08/01/87 | 108957.68 | 17978.09 | 3731.30 | 339.21 | 86909.08 |

* - Denotes retired asset

STS

Distribution By Department - Accumulated Depreciation
for 1 Period(s)
Periods Posted Year-to-Date: 12

12/09/98
3:08pm

Schedule 6.22

| Asset Number | Description | Placed In Service | Book Cost | Prior Year Accum Depr - Sec 179 & ITC - | Depr Posted - Prior Periods - | Depr Posted This Period | Period End = Net Book Value |
|---|---|---|---|---|---|---|---|
| 414205 | PLATECOILS & PIPING-ASPHALT PR | 01/01/87 | 2294.60 | 2294.60 | 0.00 | 0.00 | 0.00 |
| 414206 | EXTENDED LIFE 205 | 08/01/87 | 67636.86 | 11160.12 | 2316.25 | 210.57 | 53949.92 |
| 414207 | RAIL CATWALKS.MOV.ELECT CONTR- | 01/01/87 | 1638.00 | 1638.00 | 0.00 | 0.00 | 0.00 |
| 414208 | EXTENDED LIFE 207 | 08/01/87 | 48281.11 | 7966.42 | 1653.41 | 150.31 | 38510.97 |
| 414209 | REMOTE GAUGING. PHASE II | 01/01/87 | 1035.02 | 1035.02 | 0.00 | 0.00 | 0.00 |
| 414210 | EXTENDED LIFE 209 | 08/01/87 | 30508.90 | 5033.98 | 1044.79 | 94.98 | 24335.15 |
| 414211 | ALCAN LATEX PROJECT | 01/01/87 | 19589.08 | 19589.08 | 0.00 | 0.00 | 0.00 |
| 414212 | EXTENDED LIFE 211 | 08/01/87 | 577410.92 | 95273.20 | 19773.68 | 1797.61 | 460566.43 |
| 414213 | ASPHALT PROJECT | 01/01/87 | 9980.88 | 9980.88 | 0.00 | 0.00 | 0.00 |
| 414214 | EXTENDED LIFE 213 | 08/01/87 | 294198.65 | 48542.98 | 10074.96 | 915.90 | 234664.81 |
| 414215 | RAIL. ROAD & PARKING LOT PAVING | 01/01/87 | 3006.08 | 3006.08 | 0.00 | 0.00 | 0.00 |
| 414216 | EXTENDED LIFE 215 | 08/01/87 | 88608.49 | 14620.46 | 3034.43 | 275.86 | 70677.74 |
| 414217 | TSF 2-3000 BBL FM 36 TO 41-C86 | 06/01/80 | 5568.75 | 5568.75 | 0.00 | 0.00 | 0.00 |
| 414218 | EXTENDED LIFE 217 | 08/01/87 | 6431.25 | 1283.61 | 266.41 | 24.22 | 4857.01 |
| 414219 | TSF 2-3000 BBL FM 36 TO 41-C86 | 06/01/80 | 5568.75 | 5568.75 | 0.00 | 0.00 | 0.00 |
| 414220 | EXTENDED LIFE 219 | 08/01/87 | 6431.25 | 1283.61 | 266.41 | 24.22 | 4857.01 |
| 414221 | 2-1000 BBL-TSF 36 TO 41 | 06/01/80 | 1762.50 | 1762.50 | 0.00 | 0.00 | 0.00 |
| 414222 | EXTENDED LIFE 221 | 08/01/87 | 2237.50 | 450.86 | 93.57 | 8.51 | 1684.56 |
| 414223 | OVERSPENT RB605.6AF RAIL FACIL | 03/01/87 | 102.10 | 102.10 | 0.00 | 0.00 | 0.00 |
| 414224 | EXTENDED LIFE 223 | 08/01/87 | 4253.77 | 674.56 | 140.00 | 12.73 | 3426.48 |
| 414225 | LUBE & FUEL OIL T/T CONTAINMEN | 03/01/87 | 825.60 | 825.60 | 0.00 | 0.00 | 0.00 |
| 414226 | EXTENDED LIFE 225 | 08/01/87 | 34400.46 | 5465.08 | 1132.18 | 102.93 | 27710.27 |
| 414227 | KEY STOP LOADER | 06/01/84 | 445.33 | 445.33 | 0.00 | 0.00 | 0.00 |
| 414228 | EXTENDED LIFE 227 | 08/01/87 | 2054.67 | 362.30 | 75.19 | 6.84 | 1610.34 |
| 414229 | CS-55 SYSTEM UP-GRADE | 06/01/87 | 1335.15 | 1335.15 | 0.00 | 0.00 | 0.00 |
| 414230 | EXTENDED LIFE 229 | 08/01/87 | 55630.89 | 8821.72 | 1830.92 | 166.45 | 44811.80 |
| 414231 | TKS 1005 & 1006 PROJECT | 07/01/87 | 20.82 | 20.82 | 0.00 | 0.00 | 0.00 |
| 414232 | EXTENDED LIFE 231 | 08/01/87 | 4420.08 | 702.43 | 145.79 | 13.25 | 3558.61 |
| 414233 | HVAC SYSTEM UPGRADE | 07/01/87 | 43.25 | 43.25 | 0.00 | 0.00 | 0.00 |
| 414234 | EXTENDED LIFE 233 | 08/01/87 | 1801.75 | 285.71 | 59.30 | 5.39 | 1451.35 |
| 414235 | STAIRWAYS & CROSSWALKS - BALTI- | 08/01/87 | 13690.01 | 2160.81 | 448.47 | 40.77 | 10939.96 |
| 414236 | TANK 304 PREP FOR AC-30 | 10/01/87 | 102987.72 | 15757.13 | 3399.60 | 308.96 | 83523.03 |
| 414237 | ALCAN LATEX PROJECT | 10/01/87 | 145325.44 | 22234.80 | 4795.74 | 435.98 | 117858.92 |
| 414238 | WASTEWATER HOLDING TANKS & SEW | 12/01/87 | 68866.70 | 10123.40 | 2272.60 | 206.60 | 56264.10 |
| 414239 | TANK 1201 - HEUBLEIN ETHANOL | 12/01/87 | 14360.60 | 2111.00 | 473.90 | 43.08 | 11732.62 |
| 414240 | TANK 6703 & 6704 PAINTING | 12/01/87 | 12965.93 | 1905.99 | 427.87 | 38.90 | 10593.17 |
| 414241 | OFFICE EXPANSION. 1987 | 01/01/88 | 60147.45 | 8661.24 | 1984.87 | 180.44 | 49320.90 |
| 414242 | STD CHLORINE TK 1005 | 01/01/88 | 53315.03 | 7677.36 | 1759.39 | 159.95 | 43718.33 |
| 414243 | NEW TRUCK SCALE & PNEUMATIC SY | 01/01/88 | 121096.08 | 17437.84 | 3996.17 | 363.29 | 99298.78 |
| 414244 | NEW TRUCK SCALE & PNEUMATIC SY | 01/01/88 | 1517.67 | 218.55 | 50.09 | 4.55 | 1244.48 |
| 414245 | STEAM BACK PRESSURE CONTROL | 01/01/88 | 8359.73 | 1203.80 | 275.87 | 25.08 | 6854.98 |
| 414246 | TANK 1008 CIL CAUSTIC | 01/01/88 | 234836.29 | 33816.43 | 7749.60 | 704.51 | 192565.75 |
| 414247 | MODS TO TANK 1005 SYSTEM | 01/01/88 | 17037.56 | 2453.40 | 562.24 | 51.11 | 13970.81 |
| 414248 | HOT OIL UNIT TO STEAM GENERATO | 01/01/88 | 114024.62 | 16419.55 | 3762.82 | 342.07 | 93500.18 |
| 414249 | MODS TO TANK 1005 SYSTEM | 01/01/88 | 1215.02 | 175.08 | 40.12 | 3.65 | 996.97 |
| 414250 | FRUCTOSE STEAM METER | 02/01/88 | 12900.77 | 1819.02 | 425.73 | 38.70 | 10617.32 |
| 414251 | TANK 1008 CIL CAUSTIC | 02/01/88 | 7207.07 | 1016.19 | 237.83 | 21.62 | 5931.43 |
| 414252 | TANK 1202 PROJECT-PAINTING | 06/01/88 | 17592.53 | 2269.43 | 580.55 | 52.78 | 14689.77 |
| 414253 | ULTRASONIC THICKNESS GAUGE | 09/01/88 | 1473.56 | 884.13 | 243.14 | 22.10 | 324.19 |
| 414254 | INSULATION TKS 1001/1003 | 10/01/88 | 88788.74 | 17313.80 | 4883.38 | 443.94 | 66147.62 |
| 414255 | SAFETY SHOWERS ASPH 1008/1301 | 10/01/88 | 6792.48 | 3973.61 | 1120.76 | 101.89 | 1596.22 |
| 414256 | FERT RECEIVING MANIFOLD/LINE | 10/01/88 | 10171.80 | 1190.10 | 335.67 | 30.51 | 8615.52 |

* - Denotes retired asset

STS

Distribution by Department - Accumulated Depreciation
For 1 Period(s)
Periods Posted Year-to-Date: 12

12/09/92
3:08am

Schedule 6.21

| Asset Number | Description | Placed In Service | Book Cost | Prior Year Accum Depr - Sec 179 & ITC - | Depr Posted Prior Periods - | Depr Posted This Period | Period End = Net Book Value |
|---|---|---|---|---|---|---|---|
| 414257 | PAN & TILT VIDEO CAMERA | 10/01/88 | 9466.10 | 5537.68 | 1561.91 | 141.99 | 2224.52 |
| 414258 | HOT WATER BOILER TK 1501/1502 | 10/01/88 | 30659.34 | 9978.57 | 1686.26 | 153.30 | 22841.21 |
| 414259 | FERT REC LINES/WW HOLD TANK | 10/01/88 | 20000.00 | 2340.00 | 660.00 | 60.00 | 16940.00 |
| 414260 | HOSE REELS & BUNKER GEAR | 12/01/88 | 5476.05 | 1013.07 | 301.18 | 27.38 | 4134.42 |
| 414261 | TANK 1201 POCB-STD CHLORINE | 12/01/88 | 45080.73 | 9079.93 | 2699.44 | 245.40 | 37056.96 |
| 414262 | TANK 1202 STD CHLORINE | 12/01/88 | 57613.30 | 10658.47 | 3168.73 | 288.07 | 45498.03 |
| 414263 | CATWALKS/STAIRWAYS 1988 | 01/01/89 | 15982.44 | 1726.11 | 527.42 | 47.95 | 13680.96 |
| 414264 | TK 1002-K11 GENERAL FOAM | 01/01/89 | 194691.51 | 35044.47 | 10708.03 | 973.46 | 147955.55 |
| 414265 | NORTH DIKE EXP-E ROADWAY CONT | 01/01/89 | 198639.46 | 21453.06 | 6555.10 | 595.92 | 170035.38 |
| 414266 | GAUGING SYS PRINTER | 01/01/89 | 761.35 | 137.04 | 41.87 | 3.81 | 578.63 |
| 414267 | DOCK CAMERAS AND VCR | 01/01/89 | 7247.61 | 3913.71 | 1195.86 | 108.71 | 2029.33 |
| 414268 | WASTEWATER HOLDING TANKS/SEWER | 01/01/89 | 132722.26 | 14334.00 | 4379.83 | 398.17 | 113610.26 |
| 414269 | CORKEN COMPRESSOR TK1002 | 09/01/89 | 35031.88 | 5464.47 | 2146.75 | 195.16 | 31225.50 |
| 414270 | HOT OIL FILTERS/SYSTEMS | 09/01/89 | 12939.46 | 1811.53 | 711.67 | 64.70 | 10351.56 |
| 414271 | INSULATION TK 3301 | 09/01/89 | 132440.73 | 11125.02 | 4370.55 | 397.32 | 116547.84 |
| 414272 | MIXERS LATEX TKS 311/318 | 09/01/89 | 20093.34 | 1687.84 | 663.08 | 60.28 | 17682.14 |
| 414273 | TK 1005 LINE MODS | 09/01/89 | 9876.95 | 1382.77 | 543.24 | 49.38 | 7901.56 |
| 414274 | HOSE CLEANING FACILITY | 11/01/89 | 64157.53 | 5004.29 | 2117.20 | 192.47 | 56843.57 |
| 414275 | 4-3000 ELEVATED TANKS | 11/01/89 | 659108.71 | 51410.48 | 21750.58 | 1977.33 | 583970.32 |
| 414276 | CONCRETE ROADWAY | 11/01/89 | 30950.00 | 2414.10 | 1021.35 | 92.85 | 27421.70 |
| 414277 | RELOCATION OF FUEL OIL RAIL LO | 12/01/89 | 135805.90 | 10185.44 | 4481.59 | 407.42 | 120731.45 |
| 414278 | FRUCTOSE RAIL CAR HANDLING FAC | 01/01/90 | 393684.97 | 28345.32 | 12991.61 | 1181.05 | 351166.99 |
| 414279 | TANK AERATION BLOWERS | 02/01/90 | 15895.49 | 1827.98 | 874.25 | 79.48 | 13113.78 |
| 414280 | TK 103 CONCRETE FLOOR | 05/01/90 | 3317.76 | 199.07 | 109.49 | 9.95 | 2999.25 |
| 414281 | TANK 2401 | 05/01/90 | 340476.54 | 20428.59 | 11235.73 | 1021.43 | 307790.79 |
| 414282 | ASPHALT STORAGE & HANDLING | 08/01/90 | 1321000.00 | 67371.00 | 43593.00 | 3963.00 | 1206073.00 |
| 414283 | MAIN GATE FLOOD CONTROL | 12/01/90 | 14987.23 | 974.17 | 824.29 | 74.94 | 13113.83 |
| 414284 | SAFETY SHOWER 1301 LOAD AREA | 01/01/91 | 16990.78 | 1019.45 | 934.50 | 84.95 | 14951.88 |
| 414285 | HOT OIL BOILER #2 | 01/01/91 | 59000.00 | 2124.00 | 1947.00 | 177.00 | 54752.00 |
| 414286 | CROSSWALKS | 01/01/91 | 8980.32 | 538.82 | 493.92 | 44.90 | 7902.68 |
| 414287 | ASPHALT VIDEO | 01/01/91 | 10000.00 | 900.00 | 825.00 | 75.00 | 8200.00 |
| 414288 | ASPHALT 15 YR | 01/01/91 | 619000.00 | 37140.00 | 34045.00 | 3095.00 | 544720.00 |
| 414289 | ASPHALT 25 YR | 01/01/91 | 17054.86 | 613.98 | 562.81 | 51.17 | 15826.90 |
| 414290 | BENZENE PUMP UPGRADE | 01/01/91 | 18667.05 | 1120.02 | 1026.68 | 93.34 | 16427.01 |
| 414291 | TANK HIGH LEVEL ALARMS | 04/01/91 | 5920.79 | 266.44 | 325.66 | 29.60 | 5299.10 |
| 414292 | 6" GAS LINE | 04/01/91 | 16400.17 | 738.01 | 902.01 | 82.00 | 14678.15 |
| 414293 | CROSSWALKS (3) | 05/01/91 | 12000.00 | 480.00 | 660.00 | 60.00 | 10800.00 |
| 414294 | TK 80026B003 PRESSURE REFLIEF | 06/01/91 | 7283.19 | 254.92 | 400.59 | 36.42 | 6591.26 |
| 414295 | MOTOROLA RADIOS | 06/01/91 | 2943.40 | 309.10 | 485.72 | 44.16 | 2104.42 |
| 414296 | WATER CLEAN-UP SKID BENZENE | 07/01/91 | 78890.33 | 7100.13 | 13016.91 | 1183.36 | 57589.93 |
| 414297 | LATEX PUMP | 08/01/91 | 17362.94 | 434.08 | 954.97 | 86.62 | 15886.97 |
| 414298 | TK 301 & 302 SEPERATION | 09/01/91 | 97408.57 | 1948.17 | 5257.46 | 487.04 | 89615.90 |
| 414299 | 12 ADJ RAMPS LOAD RAMPS TK CAR | 11/01/91 | 32636.32 | 326.36 | 1794.97 | 163.18 | 30351.81 |
| 414300 | TK 6701 HIGH LEVEL ALARMS | 01/01/92 | 25477.80 | 0.00 | 1401.26 | 127.39 | 23949.15 |
| 414301 | EMERGENCY SUPPLY TRAILER/EQUIP | 01/01/92 | 7474.89 | 0.00 | 411.15 | 37.38 | 7026.36 |
| 414302 | 8" BALL VALVE/MOV EMGY SHUTDOWN | 02/01/92 | 16098.34 | 0.00 | 804.91 | 80.49 | 15212.94 |
| 414303 | THREADING MACHINE | 04/01/92 | 2439.27 | 0.00 | 97.56 | 12.20 | 2329.51 |
| 414304 | BREASTING DOLPHINS-WEST SIDE | 08/01/92 | 27450.00 | 0.00 | 549.00 | 137.25 | 26763.75 |
| 414305 | VAPOR CONTROL SYSTEM-BENZENE | 08/01/92 | 8334.20 | 0.00 | 166.70 | 41.67 | 8125.83 |
| 414306 | SAFETY SHOWER - ELF RAIL RACK | 09/01/92 | 2407.84 | 0.00 | 36.11 | 12.04 | 2359.69 |
| 414307 | TK 318 MIXER INSTALLATION | 10/01/92 | 33049.52 | 0.00 | 330.49 | 165.25 | 32563.78 |
| 414308 | TK 1001 WASTE WATER PUMP | 10/01/92 | 7324.55 | 0.00 | 73.25 | 36.63 | 7214.67 |

* - Denotes retired asset

STS

Distribution By Department - Accumulated Depreciation
for 1 Period(s)
Periods Posted Year-to-Date: 12

12:05/0
3:08pm

Schedule 6.22

| Asset Number | Description | Placed In Service | Book Cost | Prior Year Accum Depr – Sec 179 & ITC | Depr Posted – Prior Periods – | Depr Posted This Period | Period End = Net Book Value |
|---|---|---|---|---|---|---|---|
| .414309 | OOCX SURVEILLANCE CAMERAS | 10/01/92 | 8184.82 | 0.00 | 245.49 | 122.75 | 7816.58 |
| 414310 | ACRYLATE FACILITY-PARTIAL | 11/01/92 | 585858.71 | 0.00 | 2929.30 | 2929.29 | 580000.12 |
| 414311 | 2" WATER LINE TO SUGAR PAD | 12/01/92 | 4451.91 | 0.00 | 0.00 | 22.26 | 4429.65 |
| 414312 | ACRYLATE FACILITY-FINAL | 12/01/92 | 6500.00 | 0.00 | 0.00 | 32.50 | 6467.50 |
| | Totals for: 211041000 | 212041000 | 23203457.25 | 6527634.21 | 734293.36 | 69870.60 | 15871659.03 |

General Ledger Asset Account: 215041000
   Accumulated Account: 216041000

| Asset Number | Description | Placed In Service | Book Cost | Prior Year Accum Depr – Sec 179 & ITC | Depr Posted – Prior Periods – | Depr Posted This Period | Period End = Net Book Value |
|---|---|---|---|---|---|---|---|
| 415002 | PURCHASE BOOM TRUCK | 01/01/87 | 46208.00 | 41587.20 | 0.00 | 0.00 | 4620.80 |
| 415004 | 1988 DODGE PICKUP | 10/01/88 | 10225.00 | 9202.49 | 0.01 | 0.00 | 1022.50 |
| 415005 | 1987 FORD F150 PICKUP | 06/01/90 | 8282.91 | 4969.75 | 2484.87 | 0.00 | 828.29 |
| 415006 | UTILITY VEHICLE | 11/01/90 | 4828.95 | 1014.08 | 796.78 | 72.43 | 2945.66 |
| 415007 | E733 UTILITY VEHICLE | 02/01/91 | 2100.00 | 346.50 | 346.50 | 31.50 | 1375.50 |
| 415008 | EZ-GO XI-500 | 04/01/92 | 5103.00 | 0.00 | 1020.67 | 127.58 | 3954.75 |
| | Totals for: 215041000 | 216041000 | 76747.86 | 57120.02 | 4648.83 | 231.51 | 14747.50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals for – Department Code: 41 Department Desc: TERMINAL 41 | | | 24444814.40 | 6845866.67 | 755107.21 | 71600.40 | 16772240.12 |
| ** REPORT TOTALS ** | | | 48426432.68 | 15451773.39 | 1452541.02 | 139498.65 | 31382619.62 |

Notes :

1. This is a trial post
2. Adjustments taken this posting
3. Depreciation allocation for
   Final year assets : Spread over remaining life
      Retired assets : Adjustments taken this period
4. Assets meeting criteria for this report –   1186 of 1186
5. Reporting level - detail

" - Denotes retired asset

Schedule 6.23

## DATED DECEMBER 17, 1992

As of the date of this schedule, the following audits and claims are pending with respect to the Corporations:

### Federal Tax Audits of the Grace Consolidated Return

Federal Income Tax                     1987, 1988 and 1989

### State Tax Audits of Grace-Conn. Combined or Unitary Returns

California Franchise Tax              1983, 1984 and 1985
California Franchise Tax              1986, 1987 and 1988
Florida Corporation Income Tax       1985, 1986
Minnesota Corporation Tax            1985, 1986, 1987, 1988
                                      and 1989

### Refund Claim

STS – Texas Franchise Tax            1988, 1989 and 1990
STI – Texas Franchise Tax            1988, 1989 and 1990

SCHEDULE 14.05

SUPPORT TERMINAL SERVICES, INC.
STS AGREEMENT AND PLAN OF MERGER

GUARANTEED AGREEMENTS

See Exhibit A:      Leased Easements and Rights-of-Way -- Items
                    II.B and V.A

H:\shared\akaye\wp\energy\st\14.05

SUPPORT TERMINAL SERVICES, INC.
INSURANCE PROCEDURES AGREEMENT

INSURANCE PROCEDURES AGREEMENT dated December 21, 1992 by and among W. R. GRACE & CO. ("WRG"), a New York corporation, W. R. GRACE & CO.-CONN. ("Grace"), a Connecticut corporation and a wholly owned subsidiary of WRG, and GRACE ENERGY CORPORATION ("GEC"), a Delaware corporation and a wholly owned subsidiary of Grace, and KANEB PIPE LINE OPERATING PARTNERSHIP, L.P., a Delaware limited partnership ("OLP"), and NSTS, INC., a Delaware corporation and a wholly owned subsidiary of OLP, and NSTI, INC., a Delaware corporation and a wholly owned subsidiary of OLP (the "OLP Corporations").

WHEREAS, pursuant to an Agreement and Plan of Merger of even date herewith between GEC and the Corporations and OLP and the OLP Corporations (the "Merger Agreement"), OLP is acquiring the Corporations by means of their merger with and into the OLP Corporations;

WHEREAS, capitalized terms used but not defined herein are used with the definitions given them in the Merger Agreement;

WHEREAS, the Corporations have heretofore been covered under insurance programs described in Exhibit A hereto, and corresponding programs for prior periods (collectively, the "WRG Insurance Programs") maintained by WRG or Grace; and

WHEREAS, the parties to this Agreement wish to set forth their agreement on the terms and conditions under which the

OLP Corporations as successors by merger of the Corporations will continue to be covered under the WRG Insurance Programs for periods ending on or prior to the "Cut-Off", which term shall mean 12:01 a.m. on the day of the Closing;

NOW, THEREFORE, in consideration of the premises and the covenants and agreements herein contained, the parties hereto agree as follows:

1.    OLP shall be the sole agent for the OLP Corporations in all matters relating to this Agreement, including the resolution of any disputes between any of the OLP Corporations and WRG, Grace or the appropriate insurance carrier relating to this Agreement.  None of the OLP Corporations shall have any authority to represent itself in any such matter or to terminate such agency without the prior written consent of WRG and OLP.

2.    All insurance coverage for the Corporations under the WRG Insurance Programs shall terminate at the Closing with respect to events or occurrences following the Cut-Off.

3.    Except as otherwise provided in this Agreement, OLP and the OLP Corporations (but solely and exclusively in their capacity as successors to the Corporations by merger and dissolution, and not with respect to any matters respecting OLP or the OLP Corporations prior to the Closing) shall be covered under the WRG Insurance Programs, subject to the terms, conditions and limits (other than deductibles) of the applicable insurance policies, for events or occurrences preceding the Cut-Off.  The deductibles for the relevant policy period shall be chargeable to

- 2 -

OLP and the OLP Corporations; provided that (i) the deductibles shall be the deductibles of the WRG Insurance Programs (the "Program Deductibles") and not any higher deductibles of third-party policies included therein, and WRG and Grace shall be responsible for paying the difference between the Program Deductibles and any such higher deductibles, (ii) the Program Deductibles shall be as set forth on Exhibit A for the policy periods referred to therein, and (iii) in no event shall the Program Deductibles for previous policy periods be higher than the corresponding Program Deductibles for the policy periods as set forth on Exhibit A. With respect to coverages listed on Exhibit A whose policies expire prior to the Cut-Off, Grace shall provide substantially similar coverages for the period from such expiration until the Cut-Off.

4. Coverage for the Corporations under WRG's excess liability insurance, as described in Exhibit A and subject to the terms, conditions and limits of the applicable insurance policies, shall terminate on June 30, 1992 with respect to events or occurrences preceding the Cut-Off.

5. Blanket Crime and Fiduciary Liability insurance coverage for the Corporations shall terminate with respect to claims made after the Cut-Off.

6. Neither OLP nor any OLP Corporation shall be liable to WRG, Grace or any insurance carrier providing coverage under the WRG Insurance Programs for any charge or assessment for which such OLP Corporation might otherwise be liable after the

- 3 -

Cut-Off under the WRG Insurance Programs, nor shall OLP or any OLP Corporation be entitled to any credits or refunds which such Corporation might otherwise be entitled to receive from WRG or any such insurance carrier after the Cut-Off under the WRG Insurance Programs, except as otherwise provided in this Agreement.

7.    OLP and the Company shall give prompt notice to WRG of all claims which are covered by WRG Insurance Programs and which shall continue to be maintained by WRG for the Corporations after the Cut-Off as described in this Agreement; provided that failure to give such notice shall not adversely affect the rights of OLP and the OLP Corporations hereunder except to the extent that such failure results in a full or partial denial of coverage under the applicable policies and otherwise prejudices WRG or its subsidiaries.  Upon notice of any claim, WRG shall notify the appropriate insurance carrier under the WRG Insurance Programs and, in conjunction with such insurance carrier, shall have the right to direct the investigation, negotiation and, if applicable, the defense of such claim and to settle or otherwise dispose of such claim without the consent or approval of OLP or any of the OLP Corporations unless the insureds are entitled to give consent to such settlement under the applicable third-party insurance policy.  The parties shall cooperate with each other relative to the exchange of records and other information necessary for the reporting, investigation and, if applicable, defense of such claim.    OLP shall cause the OLP Corporations to make

- 4 -

their employees available as may be necessary in connection with the investigation or defense of any such claim.

      8.    The parties acknowledge that WRG, Grace or GEC has obtained on behalf of the Corporations certain performance bonds, bid bonds and other surety instruments ("Bonds") to secure certain obligations of the Corporations and that WRG, Grace and GEC are obligated to indemnify the sureties.  As promptly as practicable after the Closing, WRG, Grace or GEC, as the case may be, shall cancel all Bonds which are cancelable.  OLP shall use its reasonable efforts to obtain, or cause the OLP Corporations to obtain, replacements for those Bonds which are not cancelable. Upon obtaining each such replacement Bond, the party so obtaining shall promptly notify WRG and arrange for WRG, Grace or GEC, as the case may be, to be released from the Bonds which have been replaced.  During the period between the Closing and the date OLP or the Company obtains such replacement Bond and release, OLP shall pay WRG, Grace or GEC, as the case may be, all premiums and other fees charged by the surety to WRG, Grace or GEC with respect to the prior Bond for such period.  OLP shall also indemnify WRG, Grace and GEC and save and hold each of them harmless from and against any and all liabilities, costs, losses or damages (including reasonable attorneys' fees) suffered by WRG, Grace or GEC as a result of any act or omission by OLP or any OLP Corporation which requires the surety under a Bond to perform according to its terms.

- 5 -

9.   All notices, requests, demands and other communi-
cations required or permitted to be given hereunder shall be
given in accordance with the provisions of Article 16 of the
Merger Agreement.

10.   (a)  This Agreement and the Merger Agreement set
forth the entire agreement and understanding of the parties with
respect to the subject matter hereof and supersedes all prior
agreements, arrangements and understandings relating to the
subject matter hereof.  No representation, promise, inducement or
statement of intention relating to the subject matter hereof has
been made by the parties hereto nor any Corporation which is not
set forth in this Agreement or the Merger Agreement, and neither
the parties hereto nor any Corporation shall be bound by or
liable for any such representation, promise, inducement or
statement of intention not so set forth.

(b)  This Agreement may be amended, superseded or
canceled, and any of the provisions hereof may be waived, only by
a written instrument specifically stating that it amends, super-
sedes or cancels this Agreement or waives a provision hereof,
executed by or on behalf of all parties (or, in the case of a
waiver, by or on behalf of the party waiving compliance).  The
failure of any party at any time or times to require performance
of any provision of this Agreement shall in no manner affect the
right at a later time to enforce the same.  No waiver by any
party of any provision, or of any breach of any provision,
contained in this Agreement, in any one or more instances, shall

- 6 -

be deemed to be or construed as a further or continuing waiver of any such provision or breach, or a waiver of any other provision or of any other breach of any provision of this Agreement.

(c)   This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, excluding the conflict-of-laws provisions thereof that would otherwise require the application of the law of any other jurisdiction.

(d)   This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute but one agreement.

(e)   This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns; provided that (i) the rights of each OLP Corporation hereunder shall terminate at such time as it is no longer controlled by OLP or an affiliate of Kaneb Services, Inc., and (ii) this Agreement shall not be assignable by any party without the prior written consent of the other parties, provided that OLP and the OLP Corporations may assign their rights hereunder to an affiliate or affiliates of Kaneb Services, Inc., without such consent.

11. Notwithstanding any term or provision hereof, the Closing shall be a condition subsequent to the effectiveness of this Agreement, and this Agreement shall automatically terminate without any further action being required, if and when the Merger Agreement is terminated pursuant to its terms.  If this Agreement

- 7 -

terminates pursuant to the immediately preceding sentence, no party shall have any obligation to any other party under this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this instrument on the date first above written.

W. R. GRACE & CO.

By_____
        Title:

W. R. GRACE & CO.-CONN.

By_____
        Title:

GRACE ENERGY CORPORATION


By_____
        Title:

KANEB PIPE LINE OPERATING
PARTNERSHIP, L.P.

By KANEB PIPE LINE COMPANY,
   general partner


By_____
        Title:

NSTS, INC.


By_____
        Title:

NSTI, INC.


By_____
        Title:

- 8 -

Sunset Terminal Services, Inc.
(S... Services)
Summary of Insurance

EXHIBIT A

| Line No. | (1) Insurer | (2) Policy Number | (3) Coverage | (4) Policy Period | (5) Limit of Liability | (6) Deductible |
|---|---|---|---|---|---|---|
| | **SECTION 1** | | | | | |
| (1) | Industrial Risk Insurers and Various Domestic Insurers | 31-3-54846 Various | **Fire & Allied Perils (on Real and Personal Property)** - Fire, lightning, extended coverage, vandalism, - Malicious mischief and sprinkler leakage - All risk, including difference-in-conditions - Earthquake and Flood | 12/31/91-12/31/92 | Blanket $50,000,000 | $25,000 |
| (2) | Industrial Risk Insurers | 31-3-48979 | **Boiler & Machinery** - Comprehensive - Mechanical and Electrical Equipment - Physical Damage | 12/31/91-12/31/92 | 50,000,000 | 25,000 |
| (3) | Transamerica Insurance Company | 2781621 | **Automobile Liability Deductible "Buy-Back"** | 08/30/92-06/30/93 | 2,500,000 | - |
| (4) | CNA | CCP001604364 (USA) CCP9001604498 (CAN) | **Automobile Liability** Liability (including non-owned vehicles) - Bodily Injury - Property Damage | 08/30/92-08/30/93 | 7,500,000 | - |
| (5) | CNA | CCP001604364 (USA) CCP9001604498 (CAN) | **General Liability** Liability - Bodily Injury and Property Damage | 08/30/92-08/30/93 | 7,500,000 | - |
| (6) | Transportation Insurance Company CNA National Fire Ins. Co. of Hartford Transportation Insurance Company | WC10-7417923 WC00-7417924 WC107 418 246 WC00-7417925 | **Workers' Compensation** - Workers' Compensation - Employer's Liability | 08/30/92-08/30/93 | Statutory 1,000,000/ 2,000,000 | -- |
| (7) | Lloyd's and various British Insurers | 40-0568-92 40-0571-92 40-0572-92 | **Marine Terminal Operator's Legal Liability** - Comprehensive General Liability - Terminal Operator's Liability | 07/31/92-08/30/93 | 2,500,000/ 5,000,000 | - (a) |
| (8) | Various Scandinavian Insurers and Mutual Marine Office | Various | **Energy & Marine Liability** - Operator's Extra Expense - Pollution - Protection & Indemnity - Wharfinger's/Stevedore's/Charterer's Liability | 08/30/92-08/30/93 | 25,000,000 25,000,000 25,000,000 | 250,000 25,000 25,000 (b) |
| (9) | United States Aircraft Insurance Group | 360AC-198281 | **Aircraft - Hull and Liability** (including non-owned aircraft) | 01/01/90-01/01/93 | 200,000,000 | - |
| (10) | CODA A.C.E. X.L. Gulf | Various | **Directors and Officers Liability** | 11/04/92-11/04/93 | 110,000,000 | 25,000,000 (c) |

...port Terminal Services, Inc.,
(St...ices,
Summary of Insurance

EXHIBIT A

| Line No. | (1) Insurer | (2) Policy Number | (3) Coverage | (4) Policy Period | (5) Limit of Liability | (6) Deductible |
|---|---|---|---|---|---|---|
| | SECTION 2 | | | | | |
| (11) | National Union Fire Insurance Company X.L. Insurance Co., Ltd. A.C.E. Insurance Co., Ltd. | Various | Excess Liability | 06/30/92 – 06/30/93 | 17,500,000 75,000,000 200,000,000 | - |
| | SECTION 3 | | | | | |
| (12) | National Union Fire Insurance Company American Home Assurance Company Federal Insurance Company (Chubb) | 4385430 8219721 (CAN) 81099031–A | Blanket Crime (all employees) – Fidelity – Money & Securities | 12/31/91 – 12/31/92 | 25,000,000 | 500,000 USA (d) 25,000 CAN |
| (13) | National Union Fire Insurance Company Federal Insurance Company (Chubb) | 1422805 8121254 2 –A | Fiduciary Liability | 11/04/92 – 11/04/93 | 50,000,000 | 150,000 |

NOTE:

(a)    Products and Completed Operations claims are underwritten on a "claims–made" basis, subject to an automatic five–year discovery provision.

(b)    Subject to policy terms and conditions, policy responds to losses not covered under Marine Terminal Operator's Liability policy. Total limit is $25 million.

(c)    Deductible indicated in Summary of Insurance is the Corporate Reimbursement deductible only. The deductible is $5,000 per Director or Officer, subject to $50,000 claim aggregate for non–indemnifiable acts.

(d)    Deductibles indicated are Corporate Deductibles only.

- 2 -

## SUPPORT TERMINAL SERVICES, INC.
## TAX PROCEDURES AGREEMENT

AGREEMENT dated December 21, 1992 by and among W.R. Grace & Co. ("Grace"), a New York corporation, W.R. Grace & Co.-Conn. ("Grace-Conn."), a Connecticut corporation, Grace Energy Corporation ("GEC"), a Delaware corporation, and Kaneb Pipe Line Operating Partnership, L.P. ("OLP"), a Delaware limited partnership, NSTS, Inc. ("NSTS"), a Delaware corporation, and NSTI, Inc. ("NSTI"), a Delaware corporation.

### WITNESSETH:

WHEREAS, GEC and OLP, NSTS, and NSTI (OLP, NSTS, and NSTI collectively "Buyer") among others have entered into the STS Agreement and Plan of Merger ("Merger Agreement") of even date herewith providing for the merger of STV into STP, the merger of STP into STS and the mergers of STI and STS into, respectively, NSTI, and NSTS;

WHEREAS, prior to the date of this Agreement, STS, STI, STP and STV (collectively "Corporations") have been included in Grace's consolidated returns of federal income taxes and certain of Grace-Conn.'s state combined, unitary or consolidated tax returns;

WHEREAS, GEC and Buyer are not willing to consummate the transactions contemplated by such Merger Agreement without agreement as to settlement of certain tax obligations;

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements herein contained, the parties hereto agree as follows:

1.    <u>Definitions</u>

As used in this Agreement, the following terms have the meanings set forth in this Article.    All Article and Section numbers used in this agreement refer to Articles and Sections of this Agreement, unless otherwise specifically described.

1.01    "Buyer" means OLP, NSTS, and NSTI.

1.02    "Closing" has the meaning specified in the Merger Agreement.

1.03    "Closing Date" means the date of this Agreement.

1.04    "Code" means the Internal Revenue Code of 1986, as amended.

1.05    "Combined Return Tax" means any Income Tax for which a return is filed on a combined, unitary or consolidated basis (whether at the initiative of the tax authorities or the taxpayer) which includes the income (or other basis for taxation) of one or more of the Corporations and of one or more members of the Grace Group.

1.06    "Corporations" has the meaning specified in the Merger Agreement.

1.07    "GEC" has the meaning specified in the Merger Agreement.

1.08    "Grace" has the meaning specified in the Merger Agreement.

1.09    "Grace-Conn." has the meaning specified in the Merger Agreement.

2

1.10  "Grace Group" means Grace and all of its direct or indirect subsidiaries whether or not wholly-owned, other than the Corporations.

1.11  "Income Tax" means (i) a Tax imposed on or measured by (in whole or in part) income of the taxpayer, or (ii) any state franchise tax assessed in lieu of an income tax.

1.12  "Merger Agreement" means the STS Agreement and Plan of Merger among GEC, the Corporations and Buyer dated December 21, 1992.

1.13  "NSTI" has the meaning specified in the Merger Agreement.

1.14  "NSTS" has the meaning specified in the Merger Agreement.

1.15  "OLP" has the meaning specified in the Merger Agreement.

1.16  "Separate Return Tax" means any Income Tax other than a Combined Return Tax.

1.17  "STI" has the meaning specified in the Merger Agreement.

1.18  "STP" has the meaning specified in the Merger Agreement.

1.19  "STS" has the meaning specified in the Merger Agreement.

1.20  "STV" has the meaning specified in the Merger Agreement.

1.21  "Tax" has the meaning specified in the Merger Agreement.

2.  Grace, Grace-Conn. and GEC Responsibility for Taxes

2.01  Grace, Grace-Conn. and GEC shall have sole responsibility for all matters related to Combined Return Taxes and Separate Return Taxes with respect to periods ending on or before the Closing Date including, but not limited to, preparation and filing of returns, conduct of any governmental audits, and

3

resolution of any disputes with governmental authorities and, except as otherwise provided in this Section 2.01, Buyer and its affiliates shall have no obligation with respect thereto. Grace, Grace-Conn. and GEC shall prepare and file any and all returns of Combined Return Taxes and Separate Return Taxes with respect to such periods. Buyer shall, as reasonably requested by Grace, Grace-Conn. or GEC, provide Grace, Grace-Conn. or GEC with all information and documents in their possession or control necessary or appropriate to enable Grace, Grace-Conn. or GEC to perform their obligations under this Section. Grace, Grace-Conn. and GEC shall keep confidential all such information and documents received from Buyer under this Section, except as otherwise required by law. Grace, Grace-Conn. or GEC shall pay to the taxing authorities, and, subject to Section 13.04 of the Merger Agreement, shall indemnify Buyer against, all Combined Return Taxes and Separate Return Taxes for all periods ending on or before the Closing Date (including any payments resulting from any governmental audit or other adjustment or amendment of any return of such Taxes), and Grace, Grace-Conn. and GEC shall be entitled to retain any refund of Combined Return Taxes or Separate Return Taxes for such periods.

3.  Responsibility of Buyer for Taxes

    3.01 After the Closing, Buyer shall have sole responsibility for all matters related to (a) all Separate Return Taxes of the Corporations attributable to periods beginning after the Closing Date and (b) Taxes other than Combined Return Taxes and Separate Return Taxes, including, but not limited to, preparation and filing

4

of returns, conduct of any audits, and resolution of any disputes with governmental authorities and, except as otherwise provided in this Section 3.01, GEC and other members of the Grace Group shall have no obligation with respect thereto. Buyer shall prepare and file any and all returns and reports of such Taxes. Grace shall, and shall cause its subsidiaries to, provide Buyer with all information and documents in their possession or control necessary or appropriate to enable Buyer to perform its obligations under this Section. Buyer shall keep confidential all such information and documents received from the Grace Group under this Section except as otherwise required by law. Buyer shall pay to the taxing authorities, and shall indemnify the Grace Group against, all Taxes of the Corporations described in this Section (including any payments resulting from any governmental audit or other adjustment or amendment of any return of such Taxes), and Buyer shall be entitled to retain any refund of Taxes described in this Section.

4.    Specific Tax Undertakings

4.01  Neither Buyer nor any stockholders or partners of Buyer shall be entitled to any compensation for any use by the Grace Group of carrybacks or other tax attributes of the Corporations.

5.    Settlement for Taxes

5.01  The Corporations will have remitted to Grace prior to the Closing, in accordance with standard Grace procedures, amounts in respect of Taxes which are the responsibility of Buyer under Article 3. Any such funds which have not been remitted by the Grace Group to the relevant Tax authorities on or prior to the Closing Date shall be remitted by the Grace Group to the appro-

5

priate Tax authorities on behalf of the Corporations, or at the option of Grace, Grace-Conn. or GEC, shall be paid by Grace, Grace-Conn. or GEC to Buyer promptly after the Closing.

6.    Purchase Price

6.01   The parties acknowledge that the purchase price under the Merger Agreement takes into account the liabilities for Taxes to be retained or assumed by Grace, Grace-Conn. and GEC under Article 2 of this Agreement, and the liabilities for Taxes to be retained or assumed by Buyer under Article 3 of this Agreement.

7.    Termination of Income Tax Agreement

7.01   The Income Tax Agreement dated July 24, 1989 among Grace, Grace-Conn., GEC and certain subsidiaries of GEC shall be terminated as of the Closing with respect to the Corporations which are parties to such Income Tax Agreement.

8.    General

8.01   This Agreement may be amended, modified, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument specifically referring to this Agreement specifically stating that it amends, modifies, supersedes or cancels this Agreement or waives any of its terms, executed by all parties (or, in the case of a waiver, by the party waiving compliance). The failure of any party at any time or times to require performance of any provision of the Agreement shall in no manner affect the right at a later time to enforce the same. No waiver by any party of any breach of any term contained in this Agreement, in any one or more instances, shall be deemed to be or

6

construed as a further or continuing waiver of such breach, or a waiver of any breach of any other term.

8.02  All obligations of entities included in the term Buyer and all obligations of Grace, Grace-Conn. and GEC, respectively, under this Agreement shall be joint and several.

8.03  The Article headings contained in this Agreement are for convenient reference only, and shall not in any way affect the meaning or interpretation of this Agreement.

8.04  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, excluding the conflict of laws provisions thereof that would otherwise require the application of the law of any other juris-diction.

8.05  This Agreement may be executed in multiple counterparts, each of which shall be an original, but all of which shall constitute but one agreement.

8.06  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, but no assignment by any party of any of its obligations under this Agreement shall operate to discharge that party from such obligation.

8.07  All notices, requests, demands and other communications required or permitted to be given hereunder shall be deemed to have been duly given if in writing and delivered personally or mailed first-class, postage prepaid, registered or certified mail, addressed as follows:

7

If to Grace or Grace-Conn.:

> W.R. Grace & Co.
> One Town Center Road
> Boca Raton, Florida 33486-1010
> Attention:  Director of Taxes

If to GEC:

> Grace Energy Corporation
> 13455 Noel Road, Suite 1500
> Dallas, Texas 75240
> Attention:  Vice President - Taxes

with a copy to:

> W.R. Grace & Co.
> One Town Center Road
> Boca Raton, Florida 33486-1010
> Attention:  Director of Taxes

If to Buyer:

> Kaneb Pipe Line Operating Partnership, L.P.
> 2400 Lakeside Boulevard
> Suite 600
> Richardson, Texas 75082
> Attention:  Edward D. Doherty

with a copy to:

> Kaneb Services, Inc.
> 2400 Lakeside Boulevard
> Suite 600
> Richardson, Texas 75082
> Attention:  Stephen M. Hoffner, Esq.

Any party may change the address to which such communications are to be directed to it by giving written notice to the other parties in the manner provided in this Section.

10.  Survival

10.01        The representations, warranties, covenants and agreements of the parties set forth in this Agreement shall survive until twenty (20) days after the expiration of all applicable statutes of limitation (including any and all extensions thereof).

SCHEDULE TO SECTION 6.23 Of THE MERGER AGREEMENT

DATED DECEMBER 17, 1992

As of the date of this schedule, the following audits and claims are pending with respect to the Corporations:

Federal Tax Audits of the Grace Consolidated Return

| | |
|---|---|
| Federal Income Tax | 1987, 1988 and 1989 |

State Tax Audits of Grace-Conn. Combined or Unitary Returns

| | |
|---|---|
| California Franchise Tax | 1983, 1984 and 1985 |
| California Franchise Tax | 1986, 1987 and 1988 |
| Florida Corporation Income Tax | 1985, 1986 |
| Minnesota Corporation Tax | 1985, 1986, 1987, 1988 and 1989 |

Refund Claim

| | |
|---|---|
| STS - Texas Franchise Tax | 1988, 1989 and 1990 |
| STI - Texas Franchise Tax | 1988, 1989 and 1990 |

11

## EMPLOYEE BENEFITS AGREEMEN .

AGREEMENT dated December 2/, 1992 by and among W. R. Grace & Co. ("Grace"), a New York corporation, W. R. Grace & Co.-Conn. ("Grace-Conn."), a Connecticut corporation, Grace Energy Corporation ("GEC"), a Delaware corporation, and Kaneb Pipe Line Operating Partnership, L.P. ("OLP"), a Delaware limited partnership, NSTS, Inc. ("NSTS"), a Delaware Corporation, and NSTI, Inc. ("NSTI"), a Delaware corporation.

WHEREAS, OLP, NSTS, and NSTI (collectively "Purchaser") and GEC, among others, have entered into the STS Agreement and Plan of Merger ("Merger Agreement") of even date herewith providing for the merger of STV into STP, the merger of STP into STS and the mergers of STI, and STS into, respectively, NSTI, and NSTS; and

WHEREAS, pursuant to the Merger Agreement, the parties hereto wish to set forth their agreement as to certain matters regarding the treatment of employees of STS, STI, STP and STV (the "Corporations") and the employee benefits provided to such employees;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

1.      Definitions.

Except as otherwise expressly provided herein, all capitalized terms used herein shall have the meaning assigned to them under the Merger Agreement.

2.      Collective Bargaining Agreement.

STI (a subsidiary of STS) has entered into a collective bargaining agreement with the Oil, Chemical and Atomic Worker's International Union AFL-CIO, dated June 29, 1990, which covers certain employees of STI (Texas City).  To the extent that the provisions of such collective bargaining agreement differ from the provisions of this Agreement, the provisions of such collective bargaining agreement shall control.  Without limiting the scope of the preceding sentence, if required by the terms of such collective

bargaining agreement, Purchaser shall cause to be established, effective as of the Closing Date, a defined benefit pension plan qualified under Section 401(a) of the Code ("Purchaser's Pension Plan") which (a) satisfies the requirements of such collective bargaining agreement, (b) recognizes all periods of employment prior to the Closing Date for participation, vesting and benefit accrual purposes that are recognized for such purposes as of such date under the Grace Energy Corporation Retirement Plan for Hourly Employees (the "Hourly Plan") and (c) provides that benefits payable under the Hourly Plan shall in all events offset the benefits payable under Purchaser's Pension Plan.

3.    <u>Occupational Accidental Death Policy.</u>

Purchaser shall take any and all necessary action to become, as of the Closing Date, the policyholder of the Pan-American Life Insurance Company Occupational Accidental Death Insurance Policy (policy number G-25611) which covers union hourly employees of STI (Texas City).

4.    <u>Defined Benefit Pension Plans.</u>

(a)    As of the Closing Date, (i) the employees of the Corporations on that date, including any employees of the Corporations who are not actively at work on that date, (the "Continued Employees") who participated in the W. R. Grace & Co. Retirement Plan for Salaried Employees and/or the Hourly Plan (collectively referred to herein as the "Grace Pension Plans") on the day before the Closing Date shall cease to actively participate in the Grace Pension Plans and (ii) the Corporations shall cease to be participating employers in those Plans.

(b)    Grace shall cause the Administrative Committee of the Grace Pension Plans to take any and all necessary action to cause the accrued benefits of all Continued Employees who are participants in the Grace Pension Plans on the Closing Date to become fully vested and nonforfeitable as of such date. The Grace Pension Plans shall thereafter be liable for payment of such accrued benefits in accordance with the terms thereof.

9.    Grace Executive Benefit Plans.

As of the Closing Date, any and all Continued Employees who participated in the W. R. Grace & Co. Executive Salary Protection Plan, the W. R. Grace & Co. Supplemental Executive Retirement Plan and/or any other executive benefit plan maintained by Grace or Grace Energy (collectively referred to herein as the "Grace Executive Benefit Plans") on the day before the Closing Date shall cease to participate in the Grace Executive Benefit Plans. Grace shall be liable for the payment of any benefits that may be payable under the terms of any Grace Executive Benefit Plan to Continued Employees. Purchaser shall be under no obligation to establish successor plans to replace the benefits provided under any Grace Executive Benefit Plan.

10.    Grace Deferred Compensation Program.

Grace shall remain liable on and after the Closing Date for the payment to any Continued Employee of the total amount of compensation which was deferred prior to the Closing Date at the election of such employee pursuant to the deferred compensation agreements between Grace and/or Grace Energy and the Continued Employee and which was not paid on or before the Closing Date, in accordance with such election.

11.    Annual Incentive Compensation Plan and Long Term Incentive Plan.

(a)    Certain Continued Employees participate in the Grace Energy Corporation Annual Incentive Compensation Plan (the "Grace Energy Annual Incentive Plan"). Purchaser shall pay incentive compensation under the Grace Energy Annual Incentive Plan on or before April 15, 1993 to such Continued Employees, with respect to services rendered during 1992 but prior to the Closing Date, which payments shall, in the aggregate, equal the aggregate amount which is reflected on the Closing Statement with respect to such plan.

(b)    The Closing Statement shall not reflect any liability with respect to the W. R. Grace & Co. Long Term Incentive Plan.

12.    Benefit Plan Costs.

Neither the Purchaser nor the Corporations shall be obligated to pay any amount due and unpaid by the Corporations at the time of the Closing with respect to the

provision of employee benefits prior to the Closing for eligible employees of the Corporations under employee benefit plans maintained by Grace or any Grace Entity. Notwithstanding the provisions of the preceding sentence, the Purchaser shall pay to Grace at or promptly after the Closing all amounts due and unpaid by the Corporations at the time of the Closing with respect to employee premium payments to the Grace Welfare Plans and Grace LTD Plan and employee contributions to the Grace Savings Plan.

13.    Vacation.

With respect to Continued Employees, Purchaser shall continue to apply the Corporations' vacation policies that are effective the day before the Closing Date (the "Corporations' Vacation Policies") for at least the remainder of the calendar year in which the Closing occurs; so that each Continued Employee shall be entitled to use any vacation time or receive any vacation pay to which he or she would otherwise be entitled for that calendar year under the Corporations' Vacation Policies (including any vacation carried-over from the preceding calendar year).

14.    Severance Pay.

Effective upon the Closing, Purchaser shall establish a severance pay plan or program for the benefit of all Continued Employees, which plan or program shall remain in effect for a period of not less than 12 months after the Closing Date. With respect to salaried Continued Employees, such severance pay plan or program shall provide benefits that are comparable to the benefits provided under the terms of the GEC severance pay program for salaried employees that was announced to the salaried employees of the Corporations in conjunction with the divestment of GEC by Grace and that was in effect on the day before the Closing Date, based upon an aggregation of service with the Corporations up to the Closing and service with Purchaser after Closing. With respect to hourly Continued Employees, such severance pay plan or program shall provide benefits that are comparable to the Corporations' severance pay plan or program for hourly employees that was in effect the day before the Closing Date, based upon an aggregation of service with the Corporations up to the Closing and service with Purchaser after the Closing. The preceding provisions of this Section 14 shall apply to (i) any Continued

Employee who is terminated by the Purchaser within 12 months after the Closing Date other than for cause, (ii) any Continued Employee who voluntarily terminates employment with the Purchaser in order to avoid a forced relocation of principal residence or as a result of an unreasonable change in job duties or compensation, and (iii) any Continued Employee who on the Closing Date is absent from work on account of disability (whether or not he or she is receiving workers' compensation payments), who recovers from such disability and requests reinstatement to active employment status but is denied reinstatement by Purchaser within the 12 month period beginning on the Closing Date.

15.  Payroll Issues.

(a)    At the request of Grace made any time after Closing, Purchaser shall, in a timely manner, provide Grace with the information in Purchaser's possession that Grace deems necessary for Grace to complete any Internal Revenue Service ("IRS") filing, including IRS W-2 Forms, with respect to each individual whose employment with the Corporations terminated prior to the Closing Date.

(b)    Purchaser shall report to the IRS all taxable income earned by each Continued Employee for the entire calendar year in which the Closing occurs under Purchaser's Federal tax identification number and shall prepare, for Continued Employees, IRS W-2 Forms with respect to that income and shall reference such number on those forms.  Grace, in a timely manner, shall request that the IRS transfer from Grace's Federal tax identification number to Purchaser's Federal tax identification number taxes withheld for Continued Employees prior to the Closing Date.

16.  Continued Employees.

Notwithstanding any provisions to the contrary herein contained and except as otherwise provided in Section 14 of this Agreement, no individual shall be treated as a Continued Employee for purposes of eligibility to participate in any employee benefit plan maintained by the Purchaser or any of its affiliates unless, as of the Closing Date, such individual is (i) either actively employed or on authorized vacation, holiday, regularly unscheduled time off (such as weekends, holidays and the like) or other authorized leave

(such as sick leave, maternity leave, jury duty, emergency leave, military leave and the like) and (ii) not absent due to disability.

17.    Right to Amend.

This Agreement may be amended, superseded or canceled, and any of the terms hereof may be waived only by a written instrument specifically referring to this Agreement and specifically stating that it amends, supersedes or cancels this Agreement or waives any of its terms, executed by both parties (or, in the case of a waiver, by the party waiving compliance). The failure of any party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same. No waiver by either party of any breach of any term contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of such breach, or waiver of any breach of any other term.

18.    Miscellaneous.

(a)    Nothing in this Agreement shall be deemed to constitute a contract between either of the parties hereto and its employees or any of the Corporations and their employees or to be consideration or inducement for the employment of any employee with either of the parties or any of the Corporations.

(b)    Nothing in this Agreement shall give any employee the right to be retained in the service of either of the parties hereto or any of the Corporations or to interfere with the parties' rights to discharge or terminate the service of any employee without regard to the effect such discharge or termination may have on any rights under any employee benefit plan.

(c)    This Agreement does not create, and shall not be construed as creating, any rights enforceable by any person not a party to this Agreement.

(d)    Except as otherwise expressly provided in this Agreement, no provision of this Agreement shall be interpreted or construed in a manner which would prevent the parties hereto or any of the Corporations, in their sole discretion, from discontinuing, suspending or amending any employee benefit plan, severance pay plan or any other plan or program covering employees.

(e)     Notwithstanding any term or provision hereof, the Closing under the Merger Agreement shall be a condition subsequent to the effectiveness of this Agreement, and this Agreement shall automatically terminate without any further action required if and when the Merger Agreement terminates pursuant to its terms.  If this Agreement terminates pursuant to the immediately preceding sentence, neither party shall have any obligation to the other under this Agreement.

(f)     This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, excluding the conflict of laws provisions thereof that would otherwise require the application of the law of any other jurisdiction.

(g)     Each party to this Agreement shall cooperate with the others to effectuate the foregoing provisions of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date first above written.

W. R. Grace & Co.

By:_____

W. R. Grace & Co.-Conn.

By:_____

Grace Energy Corporation

By:_____

Kaneb Pipe Line Operating Partnership, L.P., By Kaneb Pipe Line Company, General Partner

By:_____

NSTS, Inc.

By:_____

NSTI, Inc.

By:_____

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this *"Guaranty Agreement"*) dated as of December 2/, 1992, is made by W. R. GRACE & CO. - CONN., a Connecticut corporation (*"Guarantor"*), in favor of KANEB PIPE LINE OPERATING PARTNERSHIP, L.P., a Delaware limited partnership ("KPL"), NSTS, Inc., a Delaware corporation ("NSTS"), and NSTI, Inc., a Delaware corporation ("NSTI"), (KPL, NSTS and NSTI are hereinafter individually and collectively referred to as the *"Beneficiary"*).

### RECITALS

Reference is hereby made to that certain STS Agreement and Plan of Merger (the *"Merger Agreement"*) dated of even date herewith among Beneficiary and Grace Energy Corporation, a Delaware corporation and wholly-owned subsidiary of Guarantor (*"Subsidiary"*), among others.

It is a condition to the agreement of Beneficiary to execute the Merger Agreement and consummate the transactions contemplated thereby that this Guaranty Agreement shall have been executed and delivered by Guarantor.

NOW, THEREFORE, in order to induce, and in consideration of, the execution and delivery of the Merger Agreement by Beneficiary, and for reasonably equivalent value, Guarantor hereby covenants and agrees with Beneficiary as follows:

1.    *Defined Terms.*  Capitalized terms used herein but not defined shall have the meaning given them in the Merger Agreement.

2.    *The Guaranty.*    (a) Guarantor hereby irrevocably and unconditionally guarantees to each of KPL, NSTS and NSTI the full and timely performance, payment and discharge by Subsidiary of all obligations and liabilities of Subsidiary now existing or hereafter arising under the Merger Agreement and the Ancillary Agreements, as such agreements may hereafter be amended (the *"Guaranteed Obligations"*) and hereby agrees that if Subsidiary shall fail to pay any Guaranteed Obligation when and as the same shall be due and payable by Subsidiary to any Beneficiary or timely to perform and discharge in full any Guaranteed Obligation in accordance with the terms of the Merger Agreement or the Ancillary Agreements, Guarantor shall forthwith pay to KPL for the benefit of the appropriate Beneficiary an amount equal to any such amount or perform and discharge any such Guaranteed Obligation, as the case may be, as such payment or performance and discharge is required pursuant to the terms of the Merger Agreement or the Ancillary Agreements to be made or done by Subsidiary.  Except as expressly provided in this Guaranty Agreement, KPL shall act as agent for NSTS and NSTI under this Agreement.

(b)    Guarantor agrees that no renewal or extension of, or any other indulgence with respect to, the Guaranteed Obligations or any part thereof, no release of Subsidiary (except an express written release) or of any other Person primarily or secondarily liable on the Guaranteed Obligations or any part thereof (including any guarantor or surety), no delay in enforcement of payment of the Guaranteed Obligations or any part thereof, and no delay or omission or lack of diligence or care in exercising any right or power with respect to the Guaranteed Obligations, or any other guaranty thereof, shall in any manner impair or affect the rights of any Beneficiary hereunder.

(c)    This is an absolute Guaranty of payment and not of collection, and Guarantor waives any right to require that any action be brought against Subsidiary or any other Person.    Should any Beneficiary seek to enforce the obligations of Guarantor hereunder by action in any court, Guarantor waives any necessity, substantive or procedural, that a judgment previously be rendered against Subsidiary or any other Person, or that any action be brought against Subsidiary or any other Person, or that Subsidiary or any other Person should be joined in such cause; the obligations of the Guarantor assumed hereunder are several from those of Subsidiary or any other Person, and are primary obligations concerning which Guarantor is a principal obligor.    Such waiver shall be without prejudice to any Beneficiary at its option to proceed against Subsidiary or any other Person, whether by separate action or by joinder.    Guarantor agrees that this Guaranty shall not be discharged except by the full, final and complete payment and satisfaction of the Guaranteed Obligations.    The obligations of Guarantor hereunder shall not be affected in any way by:    (1) the recision of any payment of the Guaranteed Obligations or the requirement that any such payment otherwise be returned by any Beneficiary upon the insolvency, bankruptcy or reorganization of Subsidiary, (2) receivership, insolvency, bankruptcy or other similar proceedings affecting Guarantor or Guarantor's assets, or (3) the liquidation or dissolution of the Subsidiary.

3.    *Obligations Absolute*.    The obligations of Guarantor hereunder shall be primary, absolute, irrevocable and unconditional, and shall not be released, discharged or in any way affected by, any of the following circumstances or conditions (whether or not Guarantor shall have any knowledge or notice thereof):

(a)    any amendment, modification of or supplement to the Merger Agreement or the Ancillary Agreements or any other instrument referred to therein or any assignment or transfer of any rights or obligations thereunder in accordance with its terms; or

(b)    any receivership, bankruptcy, insolvency, readjustment, composition, liquidation, dissolution or similar proceeding with respect to Subsidiary or its property; or

-2-

(c)    any merger, amalgamation or consolidation of Guarantor or of Subsidiary into or with any other corporation or partnership or any sale, lease or transfer of any or all of the assets of Guarantor or of Subsidiary to any. Person.

4.    *Waiver.* (a) Guarantor unconditionally waives, to the fullest extent permitted by law:  (i) notice of acceptance hereof and notice of any liability to which it applies or may apply, notice of any action taken or omitted in reliance hereon and of any defaults by Subsidiary in the payment or performance of any Guaranteed Obligations, and of any of the matters referred to in paragraph 3 hereof; (ii) all notices that may otherwise be required by. statute, · rule of law or otherwise to preserve any of the rights· of any Beneficiary against Guarantor, including, without limitation, presentment to or demand for payment from Subsidiary or Guarantor, notice to Subsidiary or to Guarantor of default or protest for nonpayment or dishonor, and the filing of claims with a court in the event of the bankruptcy of Subsidiary; and (iii) any requirement of diligence on the part of any Beneficiary in enforcing this Guaranty Agreement.  Guarantor waives any right to require any Beneficiary to proceed against any additional or substitute endorsers or guarantors.

(b) ·    Guarantor specifically waives, at each occurrence thereof any notice of the creation, existence, extension or renewal or rearrangement of the Guaranteed Obligations, or any indulgence with respect to the Guaranteed Obligations, or any part thereof, and waives notice of the amount of the Guaranteed Obligations outstanding at any time, and · agrees that the maturity of the Guaranteed Obligations, or any part thereof, may be accelerated, extended or renewed or any other indulgence may be granted with respect thereto by any Beneficiary as may be expressly agreed to in writing by Subsidiary without notice to or further consent by Guarantor, at any time or times.

· (c)    A Beneficiary may at any time, without the consent of or notice to Guarantor, without incurring responsibility to the undersigned, without impairing or releasing the obligations of the undersigned, upon or without any terms or conditions and in whole or in part:  (1) change the manner, place or terms of payment· or change or extend the time of payment of, renew, or alter any liability of Subsidiary (to which Subsidiary expressly agrees in writing) hereby guaranteed (including the Guaranteed Obligations), or any liabilities incurred directly or indirectly hereunder, and the Guaranty herein made shall apply to the liabilities of Subsidiary as any of such liabilities may be changed, extended, renewed or altered in any manner; (2) exercise or refrain from exercising any rights against Subsidiary or other Person, or otherwise act or refrain from acting; and (3) subordinate the payment of all or any part of the Guaranteed Obligations to .the payment of any liabilities which may be due to any Beneficiary or others.

(d)    GUARANTOR EXPRESSLY AND SPECIFICALLY WAIVES ANY AND ALL RIGHTS, WHETHER ARISING BY LAW OR AGREEMENT OR OTHERWISE, TO

REIMBURSEMENT, CONTRIBUTION, AND SUBROGATION, AND TO PARTICIPATE IN ANY CLAIM OR REMEDY OF BENEFICIARY OR ANY OTHER PERSON AGAINST SUBSIDIARY OR ANY OTHER PERSON, WITH RESPECT TO THE GUARANTEED OBLIGATIONS. GUARANTOR HAS CONSULTED WITH LEGAL COUNSEL OF ITS OWN CHOOSING AS TO THE EFFECT OF THE FOREGOING WAIVERS IN THIS SECTION 4.

(e)    No delay on the part of any Beneficiary in exercising any right hereunder or failure to exercise the same shall operate as a waiver of such right, nor in any event shall any modification or waiver of the provisions of this Guaranty be effective unless in writing; nor shall any such waiver be applicable except in the specific instance for which given.

5.    Defenses.  Notwithstanding any term or provision hereof, Guarantor shall have, and be entitled to assert and use, any and all valid defenses to the payment and performance of Guaranteed Obligations arising under, relating to or in connection with the Merger Agreement or any Ancillary Agreement, including without limitation any defenses arising under, relating to, or in connection with Article 13 of the Merger Agreement but only to the extent that Subsidiary would be able to assert and use such valid defense; provided, that none of the matters set forth in the last sentence of Section 2(c) hereof may be utilized by Guarantor as a defense to payment or performance of the Guaranteed Obligations.

6.    Notices.  Unless otherwise specifically provided herein, all notices, consents, directions, approvals, instructions, requests and other communications required or permitted by the terms hereof shall be in writing, and any such communication shall become effective when received, addressed in the following manner:

(a)    if to Guarantor, to:

W. R. Grace & Co.-Conn.
One Town Center Road
Boca Raton, Florida 33486-10
Attention: Secretary
Facsimile Number: (407) 362-1635
Confirmation Number: (407) 362-1645