IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., <u>et al.</u>,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Hearing Date: April 1, 2009 at 10:30 a.m.**
**Agenda Item No. 8**
**Related to Docket No.: 20846**

## DEBTORS' OBJECTION TO KANEB'S MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY REGARDING MACON, GA SITE

The Debtors object to the Motion of Kaneb Pipe Line Operating Partnership, L.P. and

Support Terminal Services, Inc. (collectively, "<u>Kaneb</u>") for an Order Modifying the Automatic

Stay with respect to pursuit of insurance coverage for a site in Macon, Georgia (the "Motion")

and request the Motion be denied. Kaneb's attempt to seek recovery under the Debtors'

insurance policies could have a significant impact on the Debtors' estates at a very key time in

their reorganization process. Lifting the stay for Kaneb could trigger complex and time

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f7kIa Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd, G C Limited Partners I, Inc. (Ok/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f7kIa Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holding!;, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f7kIa GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (Ok/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (Ok/a British Nursing Association, Inc.), Remedium Group, Inc. (Ok/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

consuming insurance coverage litigation in which the Debtors will both have to participate and in some cases, potentially, defend the insurance carriers.

Kaneb's Motion arises out of the same underlying 1992 corporate transaction referred to in Kaneb's pending stay relief motion involving the Otis Pipeline site. (Docket No. 20846). In this instance, however, there is no ongoing litigation with respect to the Macon site. Instead, Kaneb is seeking to avoid the implications of having had its proof of claim for indemnification for cleanup costs related to the Macon site expunged, by attempting to pursue Grace's insurance carriers. Kaneb argues that cause exists to modify the stay because insurance may cover its alleged claims against the Debtors and the pursuit of those potential claims will not affect the Debtors' estates. Kaneb is incorrect. No such insurance coverage exists. The primary insurance policies cited by Kaneb have been exhausted through previous settlements and Kaneb has no entitlement to any excess coverage due to the terms of the 1992 transaction. Lifting the stay so Kaneb may attempt to pursue insurance coverage, would have a significant impact on the Debtors who may then be forced to both litigate the issues of insurance coverage and potentially defend certain carriers to whom they may have provided indemnities. As a result, Kaneb's motion must be denied.

## BACKGROUND

1.      On January 16, 2009, Kaneb filed its stay relief motion relating to the Otis Pipeline. In that motion, Kaneb sought stay relief so that it could pursue pending state court litigation and indemnity claims related to cleanup costs associated with property located in Massachusetts. In its Otis Pipeline motion, Kaneb also seeks relief so that it may seek recovery under certain of the Debtors' insurance policies.

2.      In this Motion, Kaneb seeks stay relief so that it may seek recovery under the very same insurance policies identified in the Otis Pipeline motion for costs associated with

2

environmental clean-up of a site in Macon, Georgia. Similar to the Otis Pipeline motion, Kaneb

also asserts in this motion that it may be entitled to insurance proceeds as a "successor-by-

statutory-merger to a former Grace subsidiary" based on a 1992 transaction between Grace

Energy Corporation ("GEC") and Kaneb whereby Kaneb purchased certain GEC subsidiaries.

   3.  On March 20, 2003, Kaneb filed a proof of claim in these chapter 11

cases, seeking indemnity for cleanup costs related to the Macon site. See Claim No. 4208.

However, that claim was expunged after Kaneb failed to respond to the Debtors' objection. See

Debtors' Fifth Omnibus Objection to Claims (Substantive) at Ex. C, p. 4 (Docket No. 5527); and

Order Granting Relief Sought in Debtors' Fifth Omnibus Objection to Claims (Substantive) at

Ex. C, p. 3 (Docket No. 6007).

   4.  Despite having its claim expunged, Kaneb now asks this Court for

permission to essentially circumvent the bankruptcy process and receive preferential treatment

over all other creditors by seeking relief from the automatic stay to pursue the Debtors' insurers

to collect the very same claim expunged by this Court.

### ARGUMENT

### KANEB HAS FAILED TO SHOW SUFFICIENT
### CAUSE TO MODIFY THE AUTOMATIC STAY

   5.  The automatic stay is one of the most fundamental protections provided to

a debtor under the Bankruptcy Code. See Midatlantic Nat. Bank v. New Jersey Dept. of Envtl.

Prot., 474 U.S. 494, 503 (1986). As recognized by the Third Circuit, the purpose of the automatic

stay is to:

> prevent certain creditors from gaining a preference for their claims
> against the debtor; to forestall the depletion of the debtors' assets
> due to legal costs in defending proceedings against it; and, in
> general, to avoid interference with the orderly liquidation or
> rehabilitation of the debtor.

3

Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991).

6.      Pursuant to section 362(d) of the Bankruptcy Code, a movant must demonstrate sufficient cause to justify lifting or modifying the automatic stay.  Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the movant." In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993).  In particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

(a)      whether any great prejudice to either the bankrupt estate or the debtors will result from continuation of the civil suit;

(b)      whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

(c)      the probability of the creditor prevailing on the merits.

Continental, 152 B.R at 424; In re W. R Grace & Co., 2007 WL 1129170, *2 (Bankr. D. Del. April 13, 2007).

7.      As the movant for stay relief, Kaneb "bear[s] the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the debtor in denying relief."  In re Micro Design, Inc., 120 B.R. 363,369 (E.D. Pa. 1990); see also In re Metro Transp. Co., 82 B.R. 351, 352 (Bankr. E.D. Pa. 1988) (reviewing precedent establishing the "difficult task" of unsecured creditors in obtaining relief from the stay).

8.      Kaneb has failed to satisfy its burden of proving that cause exists to modify the automatic stay because (a) modification of the automatic stay would impose substantial prejudice on the Debtors, (b) the balance of hardships weighs heavily in favor of the Debtors, and (c) Kaneb has not demonstrated any probability of success in obtaining insurance

4

proceeds from the Debtors' insurers under the relevant insurance policies.  Therefore, the Motion should be denied.

## A.    Modification of the Automatic Stay Would Impose Substantial Prejudice on the Debtors.

9.    Kaneb seeks relief from the automatic stay to attempt to seek recovery under certain of the Debtors' insurance policies.  Kaneb incorrectly bases its motion on the argument that the estate will not be harmed because insurance proceeds are not a part of the estate. This allegation is contrary to Third Circuit law:  "The Third Circuit has expressly concluded that an insurance policy is property of the estate within the meaning of Section 541 [of the Bankruptcy Code]." In re Kaiser Aluminum Corp., 343 B.R. 88, 94 (D. Del. 2006); see also Tringali v. Hathaway Machinery Co., 796 F.2d 553, 560 (1st Cir. Mass. 1986) ("We do not agree with the initial premise of this argument, however, for language, authority, and reason all indicate that proceeds of a liability insurance policy are "property of the estate."); and In re Johns-Manville Corp., 40 B.R. 219, 230 (S.D.N.Y. 1984) ("the fact that [the Debtor] ultimately may not receive all of the proceeds under its products liability insurance does not affect its status as property under the Code subject to the provisions of the automatic stay").  Thus, any attempt to recover insurance proceeds by Kaneb is an attempt to obtain possession of property of the estate.

10.    More importantly, it is unclear whether there is any insurance coverage for Kaneb's alleged claims regarding the Macon site.  On Exhibit K9 to its Otis Pipeline motion, Kaneb lists three primary insurance policies and numerous excess insurance policies that Kaneb now asserts may be sources of coverage for Kaneb's claims regarding the Macon site.   The three primary policies with Continental Casualty Company (policies numbered CCP2483440, CCP2483440 and CCP9023670), however, have been exhausted by the Debtors through previous

settlements with respect to asbestos coverage, <u>see</u> <u>Exhibit 5 to Exhibit Book for Debtors' First</u> <u>Amended Joint Plan of Reorganization</u> (Docket No. 20668), and also settlements with respect to environmental coverage.[2] Thus, there is no longer any primary insurance available with respect to Kaneb's claims.

11.     Kaneb's claims for coverage under the Debtors' excess insurance policies must also fail. In connection with the 1992 transaction, Kaneb and GEC entered into an "Insurance Procedures Agreement," a copy of which was attached to the Debtors' objection to Kaneb's Otis Pipeline motion (Docket No. 20703). Under that agreement, Kaneb's right to any excess insurance coverage terminated on June 30, 1992. (see, Insurance Procedures Agreement at ¶ 4.) In addition, even if Kaneb had a right to the Debtors' excess insurance policies, which it does not, many of those excess policies have been exhausted through settlements, while other of the excess policies will never be triggered because their attachment points are too high. Further, certain of the settlements between the Debtors and the carriers may require the Debtors to indemnify the insurers. Thus, to the extent that Kaneb would otherwise be entitled to any of the excess coverage, its claims against the insurance would be transformed into direct claims against the Debtors.

12.     This Court previously has recognized that granting claimants relief from the automatic stay would be detrimental to the administration of the Debtors' estates because it would distract the Debtors and undermine the reorganization process. <u>See</u> <u>Grace</u>, 2007 WL

---

[2] The various insurance settlement agreements referred to herein are confidential and may not be produced to Kaneb without the consent of the Debtors and the insurers who are parties to them. The Debtors have agreed to production of the settlement agreements to Kaneb but, to date, all of the carriers have not. Recently, two of the carriers have agreed to production of the settlement agreements, subject to execution of an appropriate confidentiality agreement or protective order. The settlement agreements will be produced by the Debtors to the Court for in camera inspection upon request by the Court.

1129170, at *3 ("Granting [relief from the automatic stay] would also be a distraction from the reorganization process."); see also In re Ronald Perlstein Enter., Inc., 70 B.R. 1005, 1009 (Bankr. E.D. 1987) (recognizing the "need of . . . a debtor to devote its likely-limited financial resources and energies to the formulation of a Plan to treat all of its similarly-classified creditors equitably in bankruptcy court.").

   13. Substantial prejudice would result if the stay were modified to allow Kaneb to proceed against the Debtors' insurers as it is likely to embroil the Debtors in complex and time-consuming insurance litigation at a critical time in these chapter 11 cases.  As this Court is well aware, the Debtors' insurers have been very active in these chapter 11 cases. Several insurance carriers contacted the Debtors related to the Otis Pipeline motion;  two insurance carriers filed responses to the Otis Pipeline motion, and one insurer has objected to this Motion.[3]  These carriers have alleged exactly what the Debtors are concerned about-- that the carriers believe that any liabilities they may incur with respect to Kaneb are subject to indemnification by the Debtors.  While the Debtors reserve all of their rights with respect to the validity of such indemnification claims, the key point for the Court to focus on is that allowing Kaneb to proceed, even as to alleged insurance, would result in the expenditure of significant time and costs by the Debtors and their estates.

   14. Further, as this Court is well aware, these chapter 11 cases are at a critical stage.  The Debtors have recently received approval of their disclosure statement and are in the

---

[3] See OneBeacon America Insurance Company's Response To The Motion of Kaneb Pipe Line Operating Partnership, L.P. And Support Terminal Services, Inc. For An Order Modifying The Automatic Stay (Docket No. 20976); Continental Casualty Company to Motion of Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services for an Order Modifying the Automatic Stay (Docket No. 20984); and Response And Objection of Continental Casualty Company to Motion of Kaneb Pipe Line Operating Partnership, L.P. And Support Terminal Services, Inc. For An Order Modifying The Automatic Stay (Docket No. 20974).

DOCS_DE:146230.1

middle of discovery relating to the confirmation hearings scheduled for June and September 2009. The Debtors require all of their efforts be focused on completing the chapter 11 plan process. Thus, permitting Kaneb to pursue the Debtors' insurance carriers, which will inevitably involve the Debtors, would cause substantial prejudice to the Debtors.

**B.**     **The Balance of Hardships Weighs Significantly in Favor of the Debtors.**

15.     The above-described prejudice and burdens upon the Debtors far outweigh any inconvenience that would be encountered by Kaneb if the automatic stay remains in place. Kaneb will bear little or no hardship from the continuation of the automatic stay. In fact, Kaneb has not even offered an argument for why it would not suffer any harm from the continuation of the automatic stay, choosing instead to assert that the Debtors will suffer no harm. Kaneb's unsubstantiated allegation that it may be entitled to insurance coverage is insufficient to constitute cause for relief from the stay. See In re Metro Transp., 82 B.R. at 354 ("Proving (rather than as here, merely vaguely alleging) insurance coverage and expressly agreeing to limit litigation or assertion of claims against insurers . . . could possibly support a conclusion that the balance of hardships tips in favor of a tort claimant."). As explained above, it is unclear if there is any insurance coverage for Kaneb's claims related to the Macon site and determining the answer to that question could require complex and extensive litigation.

**C.**     **Kaneb Has Not Demonstrated Any Likelihood of Success on the Merits.**

16.     Finally, the Motion should be denied because Kaneb has not demonstrated any likelihood of success on the merits. Not only has Kaneb failed to offer any support for its argument that it may be entitled to coverage under certain of the Debtors insurance policies, Kaneb has also failed to provide any support for its argument that it may be entitled to indemnification under those policies. A mere assertion of a cause of action does not demonstrate a likelihood of success on the merits. See In re Daly & Sinnott Law Ctr. PLLC, 292 B.R. 796,

8

801-802 (Bankr. D. Vt. 2003) (sufficient evidence, as opposed to allegations, required to show

likelihood of success on the merits).

### CONCLUSION

For all of the foregoing reasons, the Debtors respectfully request that Kaneb's

Motion to modify the automatic stay be denied.

Dated: March 20, 2009

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore L. Freedman
153 East 53rd Street
New York, New York  10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

- and -

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

DOCS_DE:146230.1