# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | x | Chapter 11 |
| W. R. GRACE & CO., et al., | : | Case No. 01-1139 (JKF) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Hearing Date: April 1, 2009 at 10:30 a.m. |
| | x | Related to Docket No. 20538, 20846, 20984, 21062, 20703, 20704, 20706 |

## KANEB'S REPLY TO:
## (1) DEBTOR'S RESPONSE [DKT. 20703; INSURANCE ISSUES ONLY],
## (2) ONE BEACON AMERICA INSURANCE COMPANY'S RESPONSE [DKT. 20706], AND
## (3) CONTINENTAL CASUALTY COMPANY'S RESPONSE [DKT. 20704] TO:
## THE MOTION OF KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND
## SUPPORT TERMINAL SERVICES, INC. FOR
## AN ORDER MODIFYING THE AUTOMATIC STAY [20538, 20846]

Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. (collectively, "Kaneb") files this Reply[1] and states:

## I.
## REPLY

### A.    Debtors Agree That They Have No Interest In The Insurance Policies

The Debtors contend that there is no insurance coverage for Kaneb, due to confidential settlements[2] the Debtors entered into with insurers prior to the bankruptcy. Apparently, the Debtors' have ceded their interest in these policies through a series of settlement or buyback

---

[1] On January 16, 2009, Kaneb filed a motion for relief from stay to pursue a state court appeal and also to pursue insurance coverage. Dkt. 20538. On February 10, 2009, the Debtors filed a response to the Kaneb lift stay motion. Dkt. 20703. On February 10, 2009, OneBeacon America Insurance Company filed a response to the Kaneb lift stay motion. Dkt. 20706. On February 10, 2009, Continental Casualty Company filed a response to the Kaneb lift stay motion. Dkt. 20704. This reply deals with the insurance related issues in those three responses. Kaneb is separately filing a reply to the Debtor's response to Kaneb's lift stay motion with respect to the appeal issue.

[2] As Kaneb neither was a party to any such settlement agreements, nor was in privy with any party, nor received any consideration, such agreements have no effect upon Kaneb's separate rights in any insurance policies. Neither Debtors nor the insurers (OneBeacon and Continental) have produced any settlement agreements, but the parties are negotiating a confidentiality agreement to enable Kaneb to review such agreements. If the agreements are disclosed prior to the hearing, Kaneb reserves the right to submit briefing or to request a continued hearing date. Absent production, Debtors and/or the insurers cannot object on the basis of such putative agreements.

agreements with various unidentified insurers involving both asbestos and environmental claims. *See* Debtors' Objection at 17. If the Debtors relinquished their insurance policies, then there is no estate property involved and relief from the stay should be granted.

## B.    Insurance Coverage Is Not The Proper Subject Of A Lift Stay Motion

The Debtors suggest that the undisclosed, confidential insurance settlements eliminated Kaneb's insurance rights under certain policies, or that Kaneb must otherwise prove it has insurance coverage.[3] First, the issue of coverage (being one between non-debtor Kaneb and non-debtor insurers) is not a proper issue for a lift-stay hearing, and the stay should be lifted to allow the proper court to determine coverage issues. Second, as noted above, because of these insurance settlements, the Debtors no longer have any interest in these policies, so the coverage issue is not pertinent to stay relief. Third, Kaneb was not a signatory to any of these undisclosed, confidential insurance settlements, received no consideration, and at all relevant times was the owner of separate rights under the policies. Accordingly, Debtors never had any right or authority to terminate Kaneb's rights – and the insurers do not contend otherwise.[4]

The Debtors suggest that "Kaneb's unsubstantiated allegations" of insurance coverage are insufficient to permit relief from the automatic stay, citing a case in which a tort claimant sought leave to sue the debtor. *See* Debtors' Objection at 17, *citing In re Metro Transp.*, 82 B.R. 351, 354 (E.D. Pa. 1988). However, *Metro Transp.* is inapposite, because the tort claimant in that case did not possess its own separate interest in the relevant policies, but instead sought to recover solely upon the Debtor's interest. In this case, Kaneb itself is an insured under these

---

[3] In other words, the Debtors contend that the insurers must concede their liability for environmental response costs in order for Kaneb to be given the right to sue the insurers. *See* Debtors' Objection at 17.

[4] Indeed, Kaneb's continuing rights under the policies is confirmed by the fact that one or more of the settlement/buyback agreement apparently contains an indemnity clause to address exactly this situation in which a separate insured brings claims under the policies.

policies. Further, the policies have no aggregate limit, so recovery by Kaneb would not diminish the Debtor's own insurance rights. Thus, *Metro Transp.* provides no basis to deny relief.

C. **The Debtors Will Not Be Embroiled In Insurance Coverage Litigation**

The Debtors' assume that they would become embroiled in a coverage action between Kaneb and the insurers. However, Debtors provide no factual support or legal authority for this assertion, and Kaneb is unaware of any authority requiring joinder of unaffected co-insureds in a coverage case in which only one insured's policy rights (here, the rights of Kaneb) are involved. Debtors will NOT be embroiled in coverage litigation. That case will involve only Kaneb and the insurers. Debtors have no stake, and will not be parties.

D. **The Indemnity Agreements In The Insurance Settlements Are Subject To The Stay And The Claims Allowance Process**

The insurers (OneBeacon and Continental) have alleged that they *might* have rights of indemnity against Debtors pursuant to the undisclosed settlement/buyback agreements. The Debtors also oppose stay relief because of the insurers might bring indemnity claims against the Debtors under these settlement/buyback agreements.

The Debtors made a pre-petition bargain,[5] knowing that it could result in an indemnity claim back against them by the insurers. The Debtors must live with that bargain, just like the bargain that the Debtors made with all their other creditors. The Debtors' argument is akin to arguing that a creditor is stayed from pursuing a non-debtor guarantor because the guarantor might make a claim against the debtor. If the insurers make a claim back against the Debtors for indemnity, the insurers will be still subject to the automatic stay. In addition, the insurers will be subject to the claims objection and allowance process for their indemnity claims. If the insurers

---

[5] Kaneb is not a party to that bargain and received no consideration from it. The fact that the Debtors agreed to indemnify the insurers is an acknowledgement that Kaneb has separate rights that Debtors have no ability to terminate.

have proper indemnity claims, the Debtors' plan provides for 100% payment. Indeed, OneBeacon made the proper response here: that it does not oppose the stay relief, it just wants to make sure that the Debtors' plan provides for its resultant indemnity claim.

E.     **The Debtors' Plan Is Not Affected By The Stay Relief**

Kaneb's pursuit of coverage will not affect the plan of reorganization or the transfer of Debtors' insurance rights to the asbestos personal injury trust, for three reasons:

> a. The insurance rights that Debtors are transferring to the trust are separate and distinct from Kaneb's insurance rights;
>
> b. The insurance rights that Debtors are transferring relate solely to Debtors' insurance coverage for *asbestos* claims arising under the policies' "products liability" coverage, whereas Kaneb seeks to pursue its own rights to coverage for *environmental* claims[6] arising under the "premises/operations" coverage, see, e.g., First Amended Plan, §§ 1.1(12) (definition of "Asbestos Insurance Rights"), 7.2.2(d) (transferring Asbestos Insurance Rights to the Asbestos PI Trust).; and
>
> c. Kaneb is seeking coverage under provisions of the policies that are not subject to aggregate limits. Therefore, even if Kaneb prevails 100% against the insurers, that will not reduce by one penny the amounts available to Debtors (or the trust) for other claims under the policies.

F.     **Insurance Procedures Agreement Is Irrelevant To The Stay Relief**

There is absolutely no merit to Debtors' argument that Kaneb somehow forfeited any right to excess insurance coverage pursuant to the so-called 1992 "Insurance Procedures Agreement." As the Court is aware, this motion for relief from stay relates solely to insurance policies in effect between 1971 through 1988. By contrast, The Insurance Procedures Agreement ("IPA") (attached as **Exhibit A** to Debtors' Objection) relates solely to the policies that were in force as of the date of the IPA transaction (June 30, 1992). *See* IPA (Policy

---

[6] Continental also discusses the transfer of insurance rights to the asbestos personal injury trust. However, the only coverage being transferred is that pertaining to asbestos coverage. Coverage for non-asbestos matters (e.g., environmental claims) is not being transferred.

{08008\60173069.2}                                     - 4 -

Schedule, attached as **Exhibit A** thereto). Kaneb seeks no relief under any of the policies identified in the IPA. Thus, this argument is a red herring.[7]

## G. Other Coverage Litigation Does Not Involve Kaneb

There also is no importance to Continental's suggestion that coverage litigation between Debtors and various insurers is pending – and has been stayed – in the Southern District of New York. As an initial matter, the proper venue for coverage litigation between Kaneb and the insurers is irrelevant to the question whether Kaneb is entitled to relief from the stay. But even if there was some relevance, it should be noted that neither Kaneb nor New STS has ever been a party to, or in privity with any party to, any coverage action between Debtors and the insurers. *See* Minot Affidavit, attached hereto as **Attachment A**.

## II.
## SUMMARY OF REPLY

In sum, (1) insurance coverage issues should not be litigated in a lift stay hearing; (2) Kaneb is not bound by the confidential insurance settlements to which it was not a party; (3) the Debtors will not be embroiled in insurance coverage litigation; (4) if the insurers have indemnity claims against the Debtors, those claims are subject to the stay, the claims allowance process, and the chapter 11 plan; and (5) the Debtors are not affected by the pursuit of insurance coverage because (a) the Debtors relinquished their rights under the policies, (b) the policies are not "wasting" or "burning candle" type policies, (c) the Kaneb claims relate to environmental matters, not asbestos matters covered by the plan, and (d) the Insurance Procedures Agreement does not concern Kaneb's claims.

---

[7] Notably, the IPA reflects one important truth: The pipeline company (which Kaneb acquired) has always been a separate insured under the insurance policies and has its own rights to those policies.

Dated: March 23, 2009

Respectfully submitted,

SMITH KATZENSTEIN & FURLOW LLP

*[signature]*

Kathleen M. Miller (I.D. No. 2898)
Etta R. Wolfe (I.D. No. 4164)
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410 (Courier 19801)
Wilmington, De 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
Email: kmiller@skfdelaware.com
       erw@skfdelaware.com

and

Steve A. Peirce, Bar No. 15731200
FULBRIGHT & JAWORSKI L.L.P.
300 Convent Street, Suite 2200
San Antonio, TX 78205-3792
Telephone: (210) 224-5575
Facsimile: (210) 270-7205
Email: speirce@fulbright.com

Toby L. Gerber, Bar No. 07813700
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
Email: tgerber@fulbright.com

**ATTORNEYS FOR KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND SUPPORT TERMINAL SERVICES, INC.**