IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: April 10, 2009 at 4:00 p.m.**
**Hearing Date: April 27, 2009 at 10:30 a.m.**

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO A NEW EMPLOYMENT AGREEMENT TO EXTEND THE TERM OF THEIR CURRENT CHIEF EXECUTIVE OFFICER**

The Debtors hereby move this Court for entry of an order substantially in the form attached as Exhibit A hereto (the "Order") authorizing the Debtors to enter into a new employment agreement with Alfred E. Festa to extend his term as Chief Executive Officer (the "CEO"). In support of this Motion, the Debtors respectfully state as follows:

**Jurisdiction**

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

## Background

3. On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"), which have been consolidated for administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

4. Mr. Festa has been CEO of the Debtors since June 1, 2005.[2] Mr. Festa assumed the position of CEO pursuant to a written agreement with the Debtors, dated January 19, 2005 (the "2005 CEO Agreement"), which expires on May 31, 2009.[3] The 2005 CEO Agreement was approved by the Court by an order dated April 24, 2005 [Docket No. 8340].

5. Mr. Festa currently continues to serve as CEO under the 2005 CEO Agreement. The Debtors' Board of Directors have determined that Mr. Festa should continue to be retained in the CEO position.[4]

7. Since Mr. Festa has become CEO, each of the Debtors' businesses have performed well. In 2004, the last full calendar year prior to Mr. Festa becoming CEO, the

[2] Mr. Festa joined the Debtors as chief operating officer in November 2003. He served in that position until he assumed the position of CEO on June 1, 2005.

[3] See Affidavit of W. Brian McGowan in Support of Debtors' Motion for Entry of an Order Authorizing Debtrs to Enter into a New Employment Agreement to Extend the Term of Their Current Chief Executive Officer (the "McGowan Affidavit") ¶ 2, attached hereto as Exhibit B.

[4] See McGowan Affidavit at ¶ 3.

EBIT") of $179 million. In 2008, despite difficult economic conditions in the second half of 2008, at the end of that year total revenue had increased to $3,317 million, and Core EBIT had increased to $300 million.[5]

8. Also, during Mr. Festa's tenure as CEO, the Debtors have resolved a substantial portion of their liabilities subject to compromise and moved closer to resolution of these Chapter 11 Cases. Specifically, for instance, in 2008, the Debtors announced an agreement in principle to settle all present and future asbestos-related personal injury claims against the Debtors. On March 9, 2009, the Court approved the Disclosure Statement for the Debtors' Joint Plan of Reorganization.

9. Thus, the Debtors' Board, in its sound business judgment, believes that Mr. Festa continues to make significant contributions to the Debtors' business performance as CEO, and therefore continuity of his leadership of the Debtors will benefit the Debtors' estates.[6]

**Mr. Festa's 2009 CEO Agreement**

10. The Debtors' Board of Directors and Mr. Festa have finalized the terms under which Mr. Festa would agree to continue in the position of CEO. Those terms comprise the proposed written agreement that is annexed as Exhibit 1 to Exhibit A (the "2009 CEO Agreement"). The 2009 CEO Agreement has been accepted by Mr. Festa, and the Board approved the 2009 CEO Agreement (subject to Court approval) at its last meeting on February 26, 2009.[7]

---

[4] See McGowan Affidavit at ¶ 3.

[5] See McGowan Affidavit at ¶ 4.

[6] See McGowan Affidavit at ¶ 13.

[7] See McGowan Affidavit at ¶ 6.

11. The term of the 2009 CEO Agreement is for four years, commencing on June 1, 2009, immediately upon the expiration of the 2005 CEO Agreement.

12. The initial annual base salary under the 2009 CEO Agreement will be $936,000, which is a continuation of Mr. Festa's current annual base salary. Mr. Festa's annual base salary has been that same amount since June 1, 2008. Mr. Festa's annual base salary immediately prior to June 2008 was $900,000.[8]

13. Mr. Festa's targeted award under the Debtors' annual incentive compensation program (the "Annual Bonus Program") will be 100% of annual base salary under the 2009 CEO Agreement. That percentage was initially established by the 2005 CEO Agreement, and has remained unchanged.[9]

14. The annual incentive opportunity for Mr. Festa represented by the Annual Bonus Program provisions in the 2009 CEO Agreement is well within the range of competitive practice at the 50th percentile within the Debtors' industry peer group.[10]

15. Finally, the 2009 CEO Agreement provides for participation by Mr. Festa in each of the Debtors' annual "long-term incentive compensation programs" (the "LTIPs"), with a targeted value under the 2009-2010 LTIP of $3.2 million.[11] With respect to each of the four prior annual LTIP grants to Mr. Festa as CEO (including the grant last year under the 2008-2010

---

[8] See McGowan Affidavit at ¶ 7.

[9] See McGowan Affidavit at ¶ 8.

[10] See McGowan Affidavit at ¶ 9; Declaration of Nick Bubnovich, Senior Consultant at Watson Wyatt Worldwide, in Support of The Debtors' Motion for Entry of an Order Authorizing the Debtors to Enter into a New Employment Agreement to Extend the Term of Their Current Chief Executive Officer ¶ 7, attached hereto as Exhibit C.

[11] Based on the recommendation of Watson Wyatt, as represented by Nick Bubnovich, the Debtors have reset their long-term incentive award strategy to reflect the 50th percentile of the Debtors' industry peer group, instead of the 60th percentile that was used to derive such award values when implementing last year's incentive programs. Watson Wyatt's recommendation was based on a myriad of factors, including the recent significant drop in stock prices in general, and other circumstances that are the result of the current economic downturn. See Bubnovich Decl. at ¶ 3.

LTIP), the targeted value awarded to him remained unchanged at $1.69 million.[12]

16. The award value granted to the CEO under the 2009-2011 LTIP would reflect current market practice regarding long-term incentive values awarded to chief executive officers at the 50th percentile of the Debtors' industry peer group, as reported by Watson Wyatt.[13]

17. In all other respects, the 2009 CEO Agreement is essentially the same as the 2005 CEO Agreement, including with respect to severance pay arrangements, benefit program participation, indemnification and other provisions.[14]

**Relief Requested**

18. The debtors request that the Court authorize and approve the Debtors' entry into the 2009 CEO Agreement pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

**Basis for Relief**

19. The 2009 CEO Agreement provides a significant benefit to the Debtors' estates by continuing the services of Mr. Festa as CEO of the Debtors. The Debtors in their business judgment believe the 2009 CEO Agreement is reasonable, and should be approved.

20. Section 105(a) of the Bankruptcy Code permits the court to "issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This Court has recognized that the broad reach of its equitable powers under section 105(a) of the Bankruptcy Code authorizes, among other things, entering employment agreements with chief executives and other high ranking corporate officers.

[12] See McGowan Affidavit at ¶ 10. Simultaneously with this Motion, the Debtors are also filing a motion with the Court for approval of the 2009-2011 LTIP. Please refer to that motion for more information on the 2009-2011 LTIP.

[13] See McGowan Affidavit at ¶ 11; Bubnovich Decl. at ¶ 7. Payments will only be made under the Annual Bonus Program and the LTIPs to the extent that specific financial targets are achieved by the Debtors for the applicable performance period.

[14] See McGowan Affidavit at ¶ 12.

21. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, ... other than in the ordinary course of business, property of the estate." A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such us in an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also, In re Adelphia Comms. Corp., No. 02-41729, 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003); Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999) (stating that "[i]n determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions," and in doing so, "courts consider a variety of factors, which essentially represent a 'business judgment test'") (internal citations omitted); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

22. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See In re Montgomery Ward Holding Corp., 242 B.R. at 153; see also In re Delaware & Hudson Ry. Co., 124 B.R. at 175-76; In re Lionel Corp., 722 F.2d at 1070-71 (2d Cir. 1983).

23. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in

the honest belief that the action was in the debtor's best interest. See Adelphia, 2003 WL 22316543, at *30 (quoting In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992)).

24. Generally, courts authorize debtors to use assets of the estate to employ and compensate executives, including provision for bonus and severance packages. See In re Montgomery Ward Holding Corp., 242 B.R. at 153 (sound business purpose justified the Debtor's employee incentive programs); see also In re America West Airlines, Inc., 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (approving success bonuses to certain officers and employees as within Debtor's sound business judgment); In re Interco Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991) (authorizing the debtor to assume prepetition severance contracts and approving performance based retention program to ensure critical employees remained with the debtor).

25. In many recent cases involving similarly large chapter 11 debtors, bankruptcy courts have authorized the debtor's employment of high-ranking executives to guide the restructuring process pursuant to section 363. See, e.g., In re Adelphia Comms. Corp., Case No. 02-41729 (REG) (Bankr. S.D.N.Y. Mar. 7, 2003) (approving under section 363 the "employment and compensation" of the debtors' chairman and chief executive officer, and president and chief operating officer, as "in the best interests of the Debtors, their estates, their creditors and other parties-in-interest"); In re WorldCom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Dec. 16, 2002) (entering "an order pursuant to sections 363 and 105" of the Bankruptcy Code authorizing the "employment of [the debtors'] president[,] chief executive officer, [and] chairman of the board of directors" as "necessary and in the best interests of the Debtors and their estates"); In re Collins & Aikman Corp., Case No. 05-55927 (SWR) (Bankr. E.D. Mich. Sept. 12, 2005) (approving the employment agreements of the "president and chief executive officer, and certain other members of the Debtors' new management team; it appearing that the relief requested is in

the best interests of the Debtors' estates"); In re Mirant Corp., Case No. 03-46591 (DML) (Bankr. N.D. Tex. Nov. 23, 2005) (entering an order authorizing the debtors to enter into executive employment agreements on the grounds that "the relief requested . . . is either in the Debtors' ordinary course business or authorized under section 363(b) of the Bankruptcy Code").

26. The Debtors exercised sound business judgment in deciding to continue to retain Mr. Festa as CEO, by entering the 2009 CEO Agreement with Mr. Festa because, as stated above, the 2009 CEO Agreement will benefit the Debtors' estates by providing continuity of leadership of the Debtors.

**Notice**

27. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtor's pre-petition lenders, (iv) counsel to the official committees and the Future Claimants' Representatives, and (v) all those parties that requested service and notice of papers in accordance with Fed.R.Bankr.P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**No Prior Request**

28. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto, authorizing the Debtors to enter into the 2009 CEO Agreement and granting such other and further relief as is just and proper.

Dated: March 23, 2009

KIRKLAND & ELLIS LLP
Theodore L. Freedman
13 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neil (DE Bar No. 4042)
Kathleen P. Makowski (DE Bar No. 3648)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession