# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**AFFIDAVIT OF W. BRIAN MCGOWAN IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO ENTER INTO A NEW EMPLOYMENT AGREEMENT TO EXTEND THE TERM OF THEIR CURRENT CHIEF EXECUTIVE OFFICER**

W. Brian McGowan, being duly sworn, deposes and says:

1. I am Senior Vice President-Administration of W. R. Grace & Co., a corporation organized under the laws of the State of Delaware, one of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in these cases. In that capacity, I am responsible for supervision of the Debtors' various executive compensation and company benefit plans. I offer this affidavit in support of the Motion of the Debtors for an Order Authorizing the

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Debtors to Enter into a New Employment Agreement to Extend the Term of Their Current Chief Executive Officer (the "Motion").

2. Mr. Festa has been CEO[2] of the Debtors since June 1, 2005. Mr. Festa assumed the position of CEO pursuant to a written agreement with the Debtors, dated January 19, 2005 (the "2005 CEO Agreement"), which expires on May 31, 2009.[3] The 2005 CEO Agreement was approved by the Court by an order dated April 24, 2005 [Docket No. 8340].

3. Mr. Festa currently continues to serve as CEO under the 2005 CEO Agreement. The Debtors' Board of Directors has determined that Mr. Festa should continue to be retained in the CEO position.

4. Since Mr. Festa has become CEO, each of the Debtors' businesses have performed well. In 2004, the last full calendar year prior to Mr. Festa becoming CEO, the Debtors reported total revenue of $2,260 million, and pretax income from core operations ("Core EBIT") of $179 million. In 2008, despite difficult economic conditions in the second half of 2008, at the end of that year total revenue had increased to $3,317 million, and Core EBIT had increased to $300 million

5. I understand, as reported by Watson Wyatt, the Debtors' compensation consultant, that the award value granted to the CEO under the 2009-2011 LTIP would reflect current market practice regarding long-term incentive values awarded to chief executive officers at the 50th percentile of the Debtors' industry peer group.

---

[2] Any term not defined herein shall have the meaning ascribed thereto in the Motion.

[3] Mr. Festa joined the Debtors as chief operating officer in November 2003. He served in that position until he assumed the position of CEO on June 1, 2005.

6. The Debtors' Board of Directors and Mr. Festa have finalized the terms of the CEO Agreement. The CEO Agreement has been accepted by Mr. Festa, and the Debtors' Board of Directors approved the CEO Agreement (subject to the Court's approval) at its last meeting on February 26, 2009.

7. The initial annual base salary under the 2009 CEO Agreement will be $936,000, which is a continuation of Mr. Festa's current annual base salary. Mr. Festa's annual base salary has been that same amount since June 1, 2008. Mr. Festa's annual base salary immediately prior to June 2008 was $900,000.

8. Mr. Festa's targeted award under the Debtors' annual incentive compensation program (the "Annual Bonus Program") will be 100% of annual base salary under the 2009 CEO Agreement. That percentage was initially established by the 2005 CEO Agreement, and has remained unchanged.

9. I understand as reported by Watson Wyatt that the annual incentive opportunity for Mr. Festa represented by the Annual Bonus Program provisions in the 2009 CEO Agreement is well within the range of competitive practice at the 50th percentile within the Debtors' industry peer group.

10. The 2009 CEO Agreement also provides for participation by Mr. Festa in each of the Debtors' annual "long-term incentive compensation programs" (the "LTIPs"), with a targeted value under the 2009-2010 LTIP of $3.2 million.[4] With respect to each of the four prior annual

---

[4] Based on the recommendation of Watson Wyatt, as represented by Nick Bubnovich, the Debtors have reset their long-term incentive award strategy to reflect the 50th percentile of the Debtors' industry peer group, instead of the 60th percentile that was used to derive such award values when implementing last year's incentive programs. Watson Wyatt's recommendation was based on a myriad of factors, including the recent significant drop in stock prices in general, and other circumstances that are the result of the current economic downturn.

LTIP grants to Mr. Festa as CEO (including the grant last year under the 2008-2010 LTIP), the targeted value awarded to him remained unchanged at $1.69 million.[5]

11. The award value granted to the CEO under the 2009-2011 LTIP would reflect current market practice regarding long-term incentive values awarded to chief executive officers at the 50th percentile of the Debtors' industry peer group, as reported by Watson Wyatt.[6]

12. In all other respects, the 2009 CEO Agreement is essentially the same as the 2005 CEO Agreement, including with respect to severance pay arrangements, benefit program participation, indemnification and other provisions.

13. The Debtors believe that the CEO Agreement and the incentives provided therein are reasonable and appropriate and will enhance the prospect of retaining an effective CEO and, ultimately, attaining a successful result in these Chapter 11 Cases. The Debtors, in their sound business judgment, believes that Mr. Festa continues to make significant contributions to the Debtors' business performance as CEO, and therefore continuity of his leadership of the Debtors will benefit the Debtors' estates.

FURTHER AFFIANT SAYETH NOT

Dated this 23rd day of March, 2009.

*W. Brian McGowan*
W. Brian McGowan

---

[5] Simultaneously with this Motion, the Debtors are also filing a motion with the Court for approval of the 2009-2011 LTIP. Please refer to that motion for more information on the 2009-2011 LTIP.

[6] Payments will only be made under the Annual Bonus Program and the LTIPs to the extent that specific financial targets are achieved by the Debtors for the applicable performance period.

SUBSCRIBED AND SWORN TO BEFORE ME

this 23rd day of March 2009.

Diane E. Armstrong
Notary Public
My Commission Expires: 09/18/2012



DIANE Z. ARMSTRONG
Notary Public, State of Maryland
County of Howard
My Commission Expires September 18, 2012