# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: April 10, 2009 at 4:00 p.m.**
**Hearing Date: April 27, 2009 at 10:30 a.m.**

### AFFIDAVIT OF NICK BUBNOVICH, SENIOR CONSULTANT AT WATSON WYATT WORLDWIDE, IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO A NEW EMPLOYMENT AGREEMENT TO EXTEND THE TERM OF THEIR CURRENT CHIEF EXECUTIVE OFFICER

Nick Bubnovich, being duly sworn, deposes and says:

1. I am a senior consultant in Watson Wyatt Worldwide's Human Capital ("Human Capital") consulting practice. I offer this affidavit in support of the Motion of the Debtors for Entry of an Order Authorizing the Debtors to Enter into a New Employment Agreement to Extend the Term of Their Current Chief Executive Officer (the "CEO Agreement").

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2. I have over 25 years of experience in the field of compensation and benefits consulting, but I primarily focus on executive compensation. While I have special expertise with compensation programs for companies that have commenced chapter 11 cases or are otherwise financially distressed, I also assist both chapter 11 and non-chapter 11 client companies in the design and evaluation of short and long-term incentive programs, as well as employment contracts and severance contracts and programs.

3. The salient features of the CEO Agreement's proposed compensation are as follows: (a) base salary of $936,000 per annum, (b) target annual bonus opportunity of 100% of base salary and (c) an annual long-term incentive target opportunity under the Debtors' annual Long Term Incentive Program ("LTIP") of $3.2 million.

4. I compared the CEO's total direct compensation (the "TDC") (i.e., the sum of base salary, annual incentive opportunity and long-term incentive opportunity) under the CEO Agreement to that of Chief Executive Officers in the Debtors' industry peer group (the "Industry Peer Group"). The Industry Peer Group is composed of Albemarle, Cabot, Eastman Chemical, EcoLab, Fuller H.B., Hercules, International Flavors & Fragrances, PP&G, Rohm & Haas, and Sigma Aldrich. The Industry Peer Group is appropriate because these companies are in the same specialty industry as the Debtors and, in some cases, are direct competitors of the Debtors. Performance in the specialty chemical industry is sensitive to general economic conditions and, therefore, factors which may affect the Industry Peer Group will also affect the Debtors.

5. My analysis focused on the total compensation opportunity rather than any specific compensation component, because the compensation mix can vary from company to

2

company. My view, as well as that of most other compensation consultants, is that TDC (rather than each element comprising TDC) is the most appropriate measure.

6. TDC for Chief Executive Officers in the Industry peer Group consists of: (a) base salary, (b) actual annual incentive, (c) three-year average of the Black-Scholes value of stock options, (d) the value of any restricted long-term incentive payout and (e) restricted stock awards valued without regard to any restriction. In this analysis, assuming the implementation of the CEO Agreement, the CEO's TDC is slightly below (approximately 3%) the median TDC of Chief Executive Officers in the Industry Peer Group.

7. Based on my experience, as well as that, I believe, of other compensation consultants, most companies target compensation for senior executive positions in a range around the median, sometimes as high as the 75th percentile, depending upon such factors as a particular executive's tenure, experience and performance, as well as the company's particular circumstances. The CEO's TDC, assuming the implementation of the CEO Agreement, is within that range, essentially at the median for the Industry Peer Group. Actual compensation earned, however, is dependent upon company financial performance. I note that two elements of the CEO's TDC under the CEO Agreement (annual incentive opportunity and long-term incentive opportunity) are contingent upon company performance. Thus, if the Debtors' performance is poor and does not trigger the payment of the annual incentive and long-term incentive opportunities to the CEO, the CEO's TDC would be well below the median of Chief Executive Officers in the Industry Peer Group. Accordingly, I conclude that the CEO's TDC under the CEO Agreement is within the range of competitive practice.

AFFIANT FURTHER SAYETH NOT

Dated this 23rd day of March, 2009.

_Nick Bubnovich_
Nick Bubnovich

SUBSCRIBED AND SWORN TO BEFORE ME

this 23rd day of March, 2009.

_Natalie K. Rozak_
Notary Public
My Commission Expires: 10-09-11

OFFICIAL SEAL
NATALIE K ROZAK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/09/11

4