**Exhibit B**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Re: Docket No. |

**AFFIDAVIT OF JEREMY F. ROHEN IN SUPPORT OF DEBTORS' APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF SEALE & ASSOCIATES, INC. AS FINANCIAL ADVISOR FOR SALE OF THEIR GAS EQUIPMENT BUSINESS**

COMMONWEALTH OF VIRGINIA)
                         )  ss:
COUNTY OF ARLINGTON      )

Jeremy F. Rohen, being duly sworn, deposes and says:

1. I am a managing director of Seale & Associates, Inc. ("Seale"), a financial advisory firm with its principal office located at 4301 N. Fairfax Drive, Suite 305, Arlington, Virginia 22203. I am duly authorized to make this affidavit on behalf of Seale.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

K&E 14356916.1

2.  I submit this Affidavit in support of the Application[2] of the Debtors, for the entry of an order pursuant to sections 327(a) and 328(a), authorizing the retention and employment of Seale as financial advisor to the Debtors in connection with the sale (the "Transaction") of all or substantially all of the assets of the Debtors' gas equipment business (the "Business"). Unless otherwise stated in this affidavit, I have personal knowledge of the facts set forth herein. To the best of my knowledge based upon the inquiries described below, the following statements are true.

### Seale's Qualifications

3.  Seale's professionals have extensive expertise in structuring and executing acquisitions, divestitures, joint ventures, carve-outs, strategic alliances and spin-offs. Seale has extensive experience in selling assets similar to the assets of the Business. As such, the services provided by Seale will allow the Debtors to obtain maximum value for the assets related to the Business for the benefit of the Debtors' estates.

### Disinterestedness

4. The Debtors have numerous creditors, stakeholders and other parties with whom they maintain business relationships. In connection with its proposed retention by the Debtors in the Chapter 11 Cases, Seale undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. To check and clear potential conflicts of interest in the Chapter 11 Cases, Seale reviewed a list of significant creditors and parties in interest in these cases (collectively, the "Potential Parties-in-Interest") to determine whether it had any relationships with the following entities:

---

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Application.

    (a)    the Debtors and certain of their affiliates;

    (b)    the Debtors' present and former officers and directors;

    (c)    the Debtors' largest trade creditors;

    (d)    significant secured lenders;

    (e)    preferred stockholders and other stockholders;

    (f)    counterparties to significant leases or executory contracts;

    (g)    the attorneys and other professionals that the Debtors have identified for employment in the Chapter 11 Cases;

    (h)    parties to significant litigation with the Debtors; and

    (i)    other significant parties in interest.

5.     The identities of the Potential Parties-in-Interest were provided to Seale by the Debtors.

6.     As part of its diverse practice, Seale appears in numerous cases, proceedings and transactions involving many different attorneys, accountants, brokers and financial consultants, some of whom may represent claimants and parties in interest in the Chapter 11 Cases. Further, Seale has in the past, and may in the future, be represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, Seale has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or the Chapter 11 Cases in which it works with or against other professionals involved in these cases. Based on our current knowledge of the professionals involved in the Chapter 11 Cases, and to the best of my knowledge, none of these business relations constitute interests adverse to the Debtors.

7.     To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I, nor Seale nor any of its professional employees has any connection with the Debtors, their creditors, the U.S. Trustee or any other Potential Parties in Interest in these Chapter 11 Cases or their respective attorneys or accountants.

8. To the best of my knowledge, information and belief, insofar as I have been to ascertain after reasonable inquiry, Seale has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, the Chapter 11 Cases. If Seale's proposed retention by the Debtors is approved by the Court, Seale will not accept any engagement or perform any service for any entity or person other than the Debtors in the Chapter 11 Cases. Seale will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or parties-in-interest in the Chapter 11 Cases, provided that such services do not relate to, or have any direct connection with, the Chapter 11 Cases or the Debtors.

9. Insofar as I have been able to determine after reasonable inquiry, Seale and the employees of Seale who will work on this engagement do not hold or represent any interest adverse to the Debtors or their estates, and Seale is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Seale, its professionals and employees:

   (a) are not creditors, equity security holders or insiders of the Debtors;

   (b) were not, within two years before the date of filing of the Debtors' chapter 11 petitions, directors, officers, or employees of the Debtors; and

   (c) do not have an interest materially adverse to the Debtors, their respective estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

10. I am not related or connected to and, to the best of my knowledge after reasonable inquiry, no other professional of Seale who will work on this engagement is related or connected to, the United States Bankruptcy Court handling the Chapter 11 Cases, any United States Bankruptcy Judge for the District of Delaware, any of the District Judges for the District of

Delaware who handle bankruptcy cases, the United States Trustee for this Region, or any employee in the Office of the United States Trustee for this Region.

11. If Seale discovers any additional information that requires disclosure, Seale will promptly file a supplemental affidavit with the Court.

### Scope of Proposed Retention

12. Pursuant to the terms of the Retention Agreement, Seale has agreed to provide the following services (the "Transaction Services"):[3]

    (a) identify potential acquiring companies;

    (b) assist the Debtors in approaching those companies and any other companies which otherwise come to the Debtors' attention;

    (c) coordinate the execution of confidentiality agreements with prospective acquiring companies;

    (d) complete necessary selling materials;

    (e) coordinate the divestiture process with potential acquiring companies;

    (f) assist in the preparation of management presentations;

    (g) coordinate management presentation visits and data room inspections with acquiring companies; and

    (h) assist in the closing process as requested by the Debtors.

13. The Transaction Services that Seale will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. I believe that the Transaction Services performed by Seale will not duplicate the services that The Blackstone Group L.P. ("Blackstone"), the Debtors' financial advisors, or the Debtors' other professionals will be providing to the Debtors in the Chapter 11 Cases. Seale will carry out distinct functions in the

---

[3] The following summary of the Retention Agreement is provided solely for the convenience of the Court and parties in interest. To the extent that there are any discrepancies between this summary and the Retention Agreement, the terms and language of the Retention Agreement shall govern.

Chapter 11 Cases relating only to the Transaction, and so there is no reason to be concerned about duplication of efforts by Seale and Blackstone.

### Compensation

14. The terms of Seale's proposed compensation are fully set forth in the Retention Agreement (the "Fee Structure"). In summary, under the terms of the Retention Agreement and subject to the Court's approval, Seale will receive:

    (a)    a US $25,000 monthly non-refundable retainer payable following the Debtors' execution of the Retention Agreement, but not to exceed US$100,000; plus

    (b)    contingent upon the closing of the Transaction, a Success Fee calculated as 2.00% on any Proceeds that when calculated as a multiple of 2008 EBITDA is equal to 6.5 times or less; plus 2.50% of any portion of Proceeds that when calculated as a multiple of 2008 EBITDA is greater than 6.5 times and up to and including 7.5 times; plus 3% of any portion of Proceeds that when calculated as a multiple of 2008 EBITDA is in excess of 7.5 times.

15. The non-refundable retainer fee paid under 14(a) above shall be credited to Seale's fees due under 14(b) above, if applicable, on the date of closing of the Transaction.

16. With the exception of the non-refundable retainer fee, Seale's fees under 14(b) above shall be due and payable on the date of closing of the Transaction; provided, however, that as to any portion of its fee which is based on Proceeds derived from "earn-outs" or similar contingent payments, Seale's fee with respect thereto shall be paid as such Proceeds are received.

17. The Retention Agreement also provides that the Debtors will reimburse Seale on a monthly basis for all expenses reasonably incurred in connection with the Transaction Services. The parties agree that such expenses shall include, but not be limited to, travel (including transportation, room, board and related expenses), long distance telephone, facsimile, postage, private delivery service, research materials, translators and consultants where necessary, and all

similar costs. Travel to be undertaken in connection with the Transaction Services is subject to the prior approval of the Debtors.

18. The Fee Structure appropriately reflects the nature and scope of the Transaction Services, Seale's substantial experience with respect to these types of services, and the fee structures typically used by Seale and other leading financial advisors, which do not bill their clients on an hourly basis for transactions of this kind. I believe that the Fee Structure is (a) reasonable; (b) market-based; (c) well within the range of comparable transactions; and (d) merited by Seale's expertise and experience.

19. As of the Petition Date, Seale did not hold a prepetition claim against the Debtors for services rendered.

20. To the best of my knowledge, Seale has no agreement with any other entity to share with such entity any compensation received by Seale in connection with the Chapter 11 Cases other than as permitted by section 504 of the Bankruptcy Code.

21. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of March, 2009.

Jeremy F. Rohen

Sworn to and subscribed before me
this 20 day of March, 2009

#7055673
Notary Public
My Commission expires: 3-31-2010

7

K&E 14356916.1