**Exhibit C**

DOCS_DE:146335.1



4301 N. Fairfax Drive, Suite 305
Arlington, Virginia 22203
Office: 703 294 6770
Fax: 703 294 6790

March 16, 2009

Mr. George W. Young
Vice President, Business Development
W. R. Grace & Co. – Conn.
7500 Grace Drive
Columbia, MD  21044

Dear George:

This letter sets forth our agreement appointing Seale & Associates, Inc. ("Seale") as  advisor to assist W. R. Grace & Co. – Conn. ("Grace" or the "Company") on a non-exclusive basis in the sale of one of Grace's businesses (the "Unit")  under the following terms:

**1.      Appointment of Advisor**—Grace hereby appoints Seale as its advisor to assist in the sale of all or substantially all of the assets of the Unit (a "Transaction").

**2.      Fees**— Subject to approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") as set forth in paragraph 12 below,  Grace shall pay to Seale for its services hereunder the following fees:

(a)      US$25,000 monthly non-refundable retainer payable following Grace's execution of this Agreement, but not to exceed US$100,000; plus

(b)      contingent upon the closing of the Transaction, a Success Fee calculated as 2.00% on any Proceeds that when calculated as a multiple of 2008 EBITDA is equal to 6.5 times or less; plus 2.50% of any portion of Proceeds that when calculated as a multiple of 2008 EBITDA is in greater than 6.5 times and up to and including 7.5 times; plus 3% of any portion of Proceeds that when calculated as a multiple of 2008 EBITDA is in excess of 7.5 times.

The non-refundable retainer fee paid under (a) above shall be credited to Seale's fees due under (b) above, if applicable, on the date of closing of the Transaction.

With the exception of the non-refundable retainer fee, Seale's fees under (b) above shall be due and payable on the date of closing of the Transaction; provided, however, that as to any portion of its fee which is based on Proceeds derived from "earn-outs" or similar contingent payments, Seale's fee with respect thereto shall be paid over the term of such agreements as such Proceeds are received.

"Proceeds" means the total of the following received by Grace or its shareholders in connection with the Transaction: (i) any cash payments, plus (ii) the face value of any debt or similar securities received in connection with the Transaction, plus (iii) the higher of the book or market value on the date received of any shares of capital stock of another corporation, plus (iv) the fair market value of any other property or assets, plus (v) the actual amount of any consideration derived through "earn-outs" or similar contingent payment arrangements.

Grace reserves the right, at any time and for any reason or no reason, to refuse any offer for a Transaction, to reject any particular proposed Transaction, to delay or terminate any negotiations with respect to any proposed Transaction, and to refuse to proceed with, or to delay the closing of any proposed Transaction, whether or not covered by a binding or allegedly binding contract, and whether or not such Transaction appears to meet Grace's goals. With respect to Seale, no obligation, commitment or duty of any nature whatever on the part of Grace shall exist or be implied in fact or in law to pursue, negotiate for, comply with any contract or alleged contract for, or bring to completion any Transaction, or that Seale is authorized to make any binding offer or binding commitment of any nature whatever on behalf of Grace or its affiliates.

**3.     Expenses**—Grace will reimburse Seale on a monthly basis for all expenses reasonably incurred in connection with Seale's services under this Agreement. The parties agree that such expenses shall include, but not be limited to, travel (including transportation, room, board and related expenses), long distance telephone, facsimile, postage, private delivery service, research materials, translators and consultants where necessary, and all similar costs. Travel to be undertaken in connection with this Agreement is subject to the prior approval of Grace.

**4.     Nature of Services**—Seale shall (a) identify potential acquiring companies; (b) assist Grace in approaching those companies and any other companies which otherwise come to Grace's attention; (c) coordinate the execution of confidentiality agreements with prospective acquiring companies; (d) complete necessary selling materials; (e) coordinate the divestiture process with potential acquiring companies; (f) assist in the preparation of management presentations; (g) coordinate management presentation visits and data room inspections with acquiring companies; and (h) assist in the closing process as requested by Grace. If any potential acquiring companies approach Grace or any of its shareholders, are identified to Grace or its shareholders by a third party, or are identified by Grace or its shareholders, or any of their officers, directors, agents, or employees, Grace shall promptly notify Seale. Grace shall also promptly notify Seale of the existence, terms, conditions and progress of any offers to purchase the Company of any kind whatsoever made to Grace or any of its shareholders during the term of this Agreement or the period described in paragraph 10 hereof. Grace shall furnish Seale with such information with respect to the Unit's business, operations, assets and liabilities as Seale may reasonably request to assist Seale in providing the services contemplated hereby; provided that Seale shall hold and use such information subject to the terms of the confidentiality agreement dated February 9, 2009, between Seale and Grace..

**5.     Potential Acquiring Companies**—Seale will select potential acquiring companies to which it will present the Company based upon its judgment of the best combination in light of the objectives of Grace as Grace has identified those objectives to Seale.

**6.     Indemnification**—If an Indemnified Person (as defined below) becomes involved in any action or legal proceeding in connection with the transactions contemplated by this Agreement, Grace agrees to indemnify and hold the Indemnified Party harmless from any liability or claims and reasonable attorneys' fees and other expenses incurred with respect to preparing for or defending against such action or legal proceeding, provided that Grace shall not be liable under the provisions of this paragraph 6 for any liability, claims, reasonable attorneys' fees or other expenses to the extent that a court having jurisdiction shall have determined by a final judgment that the liability or claim resulted from the Indemnified Party's breach of its obligations under this

Agreement, willful misfeasance or gross negligence. Grace agrees that the indemnification commitments set forth in this paragraph 6 shall apply whether or not any Indemnified Person is a party to any such action or legal proceeding. It shall be a condition to the indemnification provided for in this paragraph 6 that the Indemnified Person give Grace prompt written notice of such action or legal proceeding and that it is seeking indemnification with respect thereto, and that Grace be permitted, at its option by notice to Seale, to undertake the defense of the Indemnified Person. If Grace undertakes such defense, the Indemnified Person may also engage separate counsel at its own expense. In addition to any liability that Grace may otherwise have to Seale. Grace agrees that, unless a final judicial determination is made to the effect specified above, any settlement of an action or legal proceeding against Grace or any of its shareholders as to which any Indemnified Person has given notice of indemnification as provided above, shall include a release from the party bringing such action or legal proceeding of each such Indemnified Person, which release shall be reasonably satisfactory to Seale and its counsel.

The term "Indemnified Person" means Seale and its controlling persons, affiliates, directors, officers, agents and employees. Grace and Seale agree that if the indemnification sought pursuant to this paragraph 6 is finally judicially determined to be unavailable for any reason, then Grace and Seale shall contribute to the losses, claims, damages, liabilities and expenses for which such indemnification is held unavailable in such proportion as is appropriate to reflect the relative benefits to Grace, on one hand, and Seale on the other, in connection with the transactions to which such indemnification relates, provided, however, that in no event shall the amount to be so contributed by Seale exceed the amount of the fees actually received by Seale pursuant to paragraph 2 above.

7.      **Information**—Although Seale has or will endeavor to provide information or materials to Grace that Seale believes to be relevant for the purpose of Grace's investigation and evaluation of the potential acquiring companies, Seale does not make any representation or warranty as to the accuracy or completeness of the information thus provided. Grace understands that the information provided by Seale may be obtained from one or more of the following sources or other sources which Seale may, in its discretion, select: potential acquiring companies (including their officers, directors, agents, employees and other representatives); industry sources, standard reference sources and other information generally available to the public; and approaches to key personnel in the industries from which Seale believes an acquisition may take place. Grace understands that such information is not subject to any independent verification or due diligence investigation by Seale, and Grace agrees that neither Seale nor any of its employees, directors, agents, representatives, or controlling persons shall have any liability to Grace resulting directly or indirectly from use of the information or materials provided to Grace by Seale or from unintentional errors in or omissions from such information or materials by Seale. Grace understands and agrees that Seale has no responsibility or obligation to verify, through its own due diligence, any information on which Grace bases its decision to sell or not to sell the Business to a particular acquiring company or to accept or reject any proposed terms and conditions of such Transaction.

8.      **Terms of a Transaction**—Grace will rely on its own legal and financial advisors in negotiating the terms and conditions of a Transaction, including the Proceeds to be received for the sale of the Unit's assets. Grace agrees that neither Seale nor any of its employees, directors, agents, representatives or controlling persons shall have any liability to Grace resulting from any of the terms or conditions of a Transaction.

**9.    Confidentiality Agreements**—Seale will obtain a confidentiality agreement from any prospective buyer before identifying Grace to or providing such prospective buyer with any evaluation material about the Business. Grace shall be a party to each such agreement, and agrees that it shall have the sole responsibility for the future enforcement of the agreement against any prospective buyer. Notwithstanding the foregoing, prior to obtaining such confidentiality agreements, Seale shall have the right to identify Grace and the Unit to any prospective buyer approved by Grace.

**10.    Termination**—Either Grace or Seale may terminate this Agreement at any time by written notice to the other party. If within twelve (12) months after the termination of this Agreement, Grace closes a Transaction with a company or other entity, including any officers, directors, employees, or agents thereof acting individually or with others, which, during the term of this Agreement, approached Grace or its shareholders, or was identified to Grace or its shareholders by Seale, then Seale shall be entitled to the fee outlined in paragraph 2.

**11.    Governing Law, etc.**—This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of laws thereof.

The provisions regarding indemnification in paragraph 6, information in paragraph 7, terms of a Transaction in paragraph 8, and governing law in this paragraph 11 shall survive the termination of this Agreement.

This writing contains the entire agreement of Seale and Grace with respect to its subject matter; there are no promises, understandings, or agreements of any kind that relate to this Agreement other than those stated above. This Agreement may not be changed except in writing signed by both parties.

**12.    Effectiveness of Agreement, etc.**---This Agreement shall become effective only when a final order (the "Retention Order") satisfactory in form and substance to Seale and Grace has been entered by the Bankruptcy Court approving this Agreement pursuant to the application for such order pursuant to section 327 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

Grace shall use its best efforts to promptly apply to the Bankruptcy Court for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (a) this Agreement and (b) Seale's retention by Seale under the terms of this Agreement. Grace shall supply Seale with a draft of such application and any proposed Retention Order sufficiently in advance of the filing of such application and proposed order to enable Seale and its counsel to review and comment thereon.  Seale shall supply Grace with an appropriate affidavit of disinterestedness for filing with such application.

Because Seale is not being compensated on an hourly basis, but primarily on a contingent fee basis pursuant to section 328(a) of the Bankruptcy Code, it is agreed that Seale will not be required to maintain and will not maintain detailed time records in connection with rendering services to Grace. If Seale's engagement hereunder is approved by the Bankruptcy Court, then except as otherwise provided in the Retention Order, Grace shall pay all fees and expenses of Seale hereunder as promptly as practicable in accordance with the terms hereof;

provided that with respect to any installment of the nonrefundable retainer fee not due at the time of entry of the Retention Order, payment terms shall be net 60 days.

Seale acknowledges that it must seek payment by Grace of any amounts owing on account of Seale's indemnification, contribution and/or reimbursement obligations under this Agreement by first filing an application therefor with the Bankruptcy Court.  Grace may not pay any such amount to Seale before the entry of an order by the Bankruptcy Court approving payment.

[Signature page follows]

Please indicate your consent to the foregoing terms by signing where indicated below and returning this Agreement to us. A facsimile or counterpart facsimiles of this Agreement bearing the signatures of the parties and transmitted by facsimile or similar technology shall be as binding on the parties as an original executed Agreement.

We are pleased to be working with you.

Sincerely yours,

**Seale & Associates, Inc.**

Jeremy F. Rohen
Managing Director

Accepted and Agreed to on _March 23_, 2009

**W. R. Grace & Co. – Conn.**

Mr. George W. Young
Vice President Business Development
Grace Davison