IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: April 10, 2009 at 4:00 p.m.**
**Hearing Date:  April 27, 2009 at 10:30 a.m.**

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE IMPLEMENTATION OF THE 2009-2011 LONG-TERM INCENTIVE PLAN FOR KEY EMPLOYEES

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby file this motion (the "Motion") for entry of an order authorizing the implementation of the Grace 2009-2011 Long-Term Incentive Plan (the "2009-2011 LTIP") for certain key employees, as part of the Debtors' ongoing long-term incentive compensation program. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W R Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.     This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested herein are sections 105(a) and 363(b) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

## Background

3.     On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"), which have been consolidated for administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

4.     On the dates noted in the following Schedule, the Court entered an order authorizing the implementation of the respective long-term incentive plans (the "Chapter 11 LTIPs") for management and other key employees of the Debtor selected to participate in the LTIPs (the "Key Employees"), as part of the Debtors' ongoing long-term incentive program[2]:

---

[2] Under each Chapter 11 LTIP, cash payouts were based on business performance during a three-calendar year performance period. Prior to the 2008-2010 LTIP, the Chapter 11 LTIPs provided for only cash-based incentives to Key Employees, and did not include any incentives based on the performance of the common stock of W. R. Grace & Co. (the Debtors' parent corporation). The 2008-2010 LTIP provided for awards of stock options of that common stock.

| Date of Order | Period of LTIP |
|---|---|
| August 26, 2002 | 2002-2004 LTIP |
| March 26, 2003 | 2003-2005 LTIP |
| June 9, 2004 | 2004-2006 LTIP |
| July 13, 2005 | 2005-2007 LTIP |
| July 24, 2006 | 2006-2008 LTIP |
| August 29, 2007 | 2007-2009 LTIP |
| August 26, 2008 | 2008-2010 LTIP |

5.      The Debtors' long-standing, ongoing strategy for its long-term incentive program necessitates that a renewed LTIP be implemented each calendar year, with no more than three LTIPs in effect in any year. Thus, upon approval of this Motion by the Court, the 2007-2009 LTIP, the 2008-2010 LTIP, and the 2009-2011 LTIP will each be active in 2009.[3]

6.      The provisions of the 2009-2011 LTIP are essentially the same as the provisions under the 2008-2010 LTIP, except that the aggregate targeted award will be decreased based upon the recommendation of Watson Wyatt Worldwide ("Watson Wyatt"), the compensation consultant to the Compensation Committee of the Debtors' Board of Directors.[4]

---

[3] See Affidavit of W. Brian McGowan in Support of Debtors' Motion for an Order Authorizing the Implementation of the 2009-2011 Long-Term Incentive Program for Key Employees (the "McGowan Affidavit") ¶ 3, attached hereto as Exhibit A.

[4] See McGowan Aff. at ¶ 4; Affidavit of Nick Bubnovich in Support of the Debtors' Motion for an Order Authorizing the Implementation of the 2009-2011 Long-Term Incentive Program for Key Employees (the "Bubnovich Affidavit") ¶ 15, attached hereto as Exhibit B.  The 2008-2010 LTIP was similar to the earlier Chapter 11 LTIPs, except in two respects: (1) the total targeted value of awards under the 2008-2010 LTIP (comprised of potential cash payouts plus stock option awards) was increased to $15.8 million excluding the CEO, in order to reflect the recommendations last year of Watson Wyatt as necessary to provide long-term incentive opportunities at or about the 60th percentile of such opportunities provided by the Debtors' industry peer group, and (2) that LTIP included awards of stock options for Grace Stock.

## Total Aggregate Targeted Award Value of the 2009-2011 LTIP

7.      The aggregate targeted award value of the 2009-2011 LTIP will be $12.5 million (excluding the Chief Executive Officer of the Debtors (the "CEO")).   This award value is a decrease of $3.3 million when compared to the aggregate targeted award value of the 2008-2010 LTIP, which was $15.8 million (excluding the CEO).[5]

8.      The decrease in the aggregate targeted award value results from a decision of the Compensation Committee to reset its long term incentive award strategy to reflect the 50th percentile of the Debtors' industry peer group, instead of the 60th percentile that has been part of the Debtors' long-term incentive award strategy for a period commencing prior to the filing of the Chapter 11 Cases through the implementation of the 2008-2010 LTIP last year.    The Committee's decision was based on the recommendation of Watson Wyatt.[6]

9.      Watson Wyatt's recommendation was based on a myriad of factors, including the recent significant drop in stock prices in general, and other circumstances that are the result of

---

[5] The total targeted award value awarded to the CEO under the Chapter 11 LTIPs generally has been established by the applicable written employment agreement between the CEO and the Debtors, each of which were approved by the Court. The current CEO's long-term incentive opportunities were set forth in his employment agreement, approved by this Court on April 24, 2005.  That agreement does not specifically establish the CEO's incentive opportunities under subsequent LTIPs.  That agreement expires May 31, 2009.  The Debtors anticipate entering into a new employment agreement with the current CEO prior to that date, which will extend the CEO's employment term and specify the CEO's long-term incentive opportunities for 2009, as well as his other compensation. The Debtors' are filing a motion with the Court for approval of the CEO's new employment agreement simultaneously with the filing of this Motion.  Based on the recommendation of Watson Wyatt, the proposed aggregate award value granted to the CEO under the 2009-2011 LTIP will be $3.2 million, which would be an increase from the $1.69 million aggregate award value granted to the CEO last year under the 2008-2010 LTIP.  The award value granted to the CEO under the 2009-2011 LTIP would reflect current market practice regarding long-term incentive values awarded to chief executive officers within the Debtors' industry peer group, as reported by Watson Wyatt.  See McGowan Aff. at ¶ 12; Bubnovich Aff. at ¶ 14.

[6] The industry peer group data to determine appropriate long-term incentive opportunities for the Debtors' Key Employees is derived from a group of specialty chemicals companies, in the case of top executives; and from broader market data for other Key Employees.  For more information regarding the Debtors' industry peer group, see the 2008 annual report on Form 10-K, item 11, "Executive Compensation" under Compensation Discussion and Analysis.  See McGowan Aff. at ¶ 11; Bubnovich Aff. at ¶ 11.

the current economic downturn.[7]

## Basic Design of the 2009-2011 LTIP

10.    Under the 2009-2011 LTIP, the cash payout award component will equal 50% of the total targeted award that the Key Employee receives; and the remaining 50% of the total targeted award will be comprised of a grant of stock options for shares of the Debtors' parent, W. R. Grace & Co. ("Grace Stock")[8]

## Cash Component of the 2009-2011 LTIP

11.    As specified above, 50% of the total targeted award value of the 2009-2011 LTIP (i.e., 50% of $12.5 million, or $6.25 million) will be comprised of targeted cash payout awards.

12.    The total aggregate cash awards (if earned) under the 2009-2011 LTIP (excluding the CEO) would be as follows:[9]

| Year | Targeted Cash Payout | Maximum Cash Payout |
|------|----------------------|---------------------|
| 2011 | $2.08 million | $2.08 million |
| 2012 | $4.17 million | $10.42 million |
| Total | $6.25 million | $12.50 million |

---

[7] See McGowan Aff. at ¶ 11; Bubnovich Aff. at ¶ 11.

[8] This allocation is similar to the allocation applicable to the 2008-2010 LTIP, except that the cash allocation under that LTIP was limited to 50% of the cash award under the immediately prior LTIP, i.e., under the 2007-2009 LTIP, instead of simply 50% of the aggregate total value of the 2008-2010 LTIP itself.  See McGowan Aff. at ¶ 13.

[9] See McGowan Aff. at ¶ 14.

13.    Cash awards to Key Employees (if earned) will be made in one-third and two-thirds installments in 2011 and 2012, respectively, which continues the cash payout practice applicable to the prior Chapter 11 LTIPs, including the 2008-2010 LTIP.[10]

14.    The performance criteria for the cash awards portion of the 2009-2011 LTIP are essentially the same as the provisions of the 2008-2010 LTIP (and the earlier Chapter 11 LTIPs). Specifically:

(a)    Business performance for cash awards is measured on a three-year performance period, commencing with 2009.[11]

(b)    The applicable compounded annual 3-year growth rate in core earnings before interest and taxes ("EBIT") to achieve a cash payment of 100% of the 2009-2011 LTIP target award (the "Base Target Cash Award") will be 6% per annum. Core EBIT for the 3-year period is adjusted for changes in pension expense and LTIP expense ("Core EBIT").

(c)    Partial payouts for EBIT growth rates between 0% and 6% will be implemented on a straight-line basis.

(d)    The amount of the 2009-2011 LTIP cash payments will be increased at EBIT compounded annual growth rates in excess of the 6%, up to a maximum of 200% of the Base Target Cash Award at an annual compounded EBIT growth rate of 25%.

(e)    Cash payouts (if earned) will occur in 1/3 and 2/3 installments, respectively, in early March following years 2 and 3 of the LTIP (i.e., in 2011 and 2012.) The 1/3 installment following year 2 is limited to 1/3 of the Base Targeted Cash Award.

(f)    Cash payout adjustments for a "significant acquisition" and a "significant divestiture" applicable to the calculation of cash awards under the 2008-2010 LTIP (and the 2007-2009 LTIP) will also apply to cash awards under the 2008-

[10] See McGowan Aff. at ¶ 15.

[11] For each of the previous Chapter 11 LTIPs, the three-year performance period commenced with the calendar year in which the LTIP was implemented.

2010 LTIP.[12]

## Stock Option Component of the 2009-2011 LTIP [13]

15.    As specified above, 50% of the total targeted award value of the 2009-2011 LTIP (i.e., 50% of $12.5 million, or $6.25 million) will be comprised of awards of options on Grace Stock.

16.    Under the 2009-2011 LTIP, the Debtors anticipate granting options covering approximately 2 million shares of Grace Stock (including the CEO).[14]

17.    The stock options granted under the 2009-2011 LTIP will be deemed to have the same value as applicable to the options granted last year under the 2008-2010 LTIP, based on the recommendation of Watson Wyatt.  As a result, the number of shares of Grace Stock covered by grants under the 2009-2011 LTIP will be about the same number as covered by grants last year under the 2008-2010 LTIP.[15]

18.    The "strike price" of the stock options awarded under the 2009-2011 LTIP will be the market price of Grace Stock as of the award date (the "Award Date").  One third of the awarded stock options would vest in 2010, one-third would vest in 2011, and the remaining one-

---

[12] As with prior LTIPs, the Debtors reserve the right to determine whether a particular employee is a Key Employee with respect to the 2009-2011 LTIP; and the right to vary the selection, and the degree of participation, of Key Employees under the 2009-2011 LTIP from the Key Employees identified under prior LTIPs.  See McGowan Aff. at ¶ 16.

[13] Prior to last year's option awards under the 2008-2010 LTIP, none of the earlier Chapter 11 LTIPs included any award of stock options or other equity-based incentives.  Under the 2008-2010 LTIP, the Debtor's issued grants of options on approximately 2 million shares of Grace Stock (including the CEO).

[14] See McGowan Aff. at ¶ 17.

[15] See McGowan Aff. at ¶ 18.  The number of Grace Shares covered by options granted under the 2009-2011 LTIP will not be recalculated to reflect the current market price of Grace Stock.  Recalculating the number of Grace Shares using the current, lower market price, by applying the Black-Scholes or other similar formula, would result in a significantly increased number of shares subject to grants under the 2009-2011 LTIP, when compared to the number of shares covered by grants last year under the 2008-2010 LTIP.

third would vest in 2012; each on the anniversaries of the Award Date.[16]  The stock options

would generally be exercisable for a period of 5 years after grant.[17]

### Relief Requested

19.     By this Motion, the Debtors request that the Court authorize the continuation of

the Debtors' ongoing long-term incentive program by authorizing the implementation of the

2009-2011 LTIP, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

### Basis for Relief

20.     Section 105(a) of the Bankruptcy Code permits the court to "issue any order... that

is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This

Court has recognized that the broad reach of its equitable powers under section 105(a) of the

Bankruptcy Code authorizes, among other things, implementation of key employee retention

programs, including long-term incentive plans.

21.     Section 363(b)(1) provides in relevant part that "the trustee, after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate..." A court has the statutory authority to authorize a debtor to use property of the estate

pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the

debtor's sound business judgment and when the use of the property is proposed in good faith. In

re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); see also Fulton State Bank v.

Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be

supported by an "articulated business justification"); Stephens Indus., Inc. v. McClung, 789 F.2d

---

[16] See McGowan Aff. at ¶ 19.  The stock options awarded last year under the 2008-2010 LTIP are subject to 2-year vesting.

[17] See McGowan Aff. at ¶ 19.  The options will be issued under the Grace 2000 Stock Incentive Plan, which was authorized and approved by the Court, in 2001, in conjunction with the Debtors petition for relief under Chapter 11.  Currently under that Plan, the Debtors have approximately 2.8 million shares available for stock options or restricted stock grants.

386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Ernst Home Ctr., Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

22.    Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See In re Montgomery Ward Holding Corp., 242 B.R. at 153; see also In re Delaware & Hudson Ry. Co., 124 B.R. at 175-76; In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983). Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992).

23.    Generally, courts authorize debtors to implement key employee incentive programs because key employees are essential to a debtor's continued operations. See In re Montgomery Ward Holding Corp., 242 B.R. at 153 (sound business purpose justified the debtor's employee incentive programs); see also In re America West Airlines, Inc., 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (approving success bonuses to certain officers and employees as within Debtor's sound business judgment); In re Interco Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991) (authorizing the debtor to assume prepetition severance contracts and approving performance based retention program to ensure critical employees remained with the debtor).

24.    Permitting the Debtors to continue the Debtors' ongoing long-term incentive program by implementing the 2009-2011 LTIP will accomplish the sound business purpose of maximizing the value of the Debtors' estates and furthering the Debtors' efforts to successfully reorganize during the remaining period of the Chapter 11 process, by promoting the motivation

and retention of Key Employees.

25.     It continues to be the case that the Debtors must provide sufficient incentives to motivate and retain a critical mass of their high-performing employees in sufficient numbers during the remaining pendency of these Chapter 11 Cases to maximize the likelihood of a successful restructuring.

26.     In light of the foregoing, the Debtors believe that the incentives provided by the 2009-2011 LTIP are reasonable and appropriate and will enhance the prospect of retaining and motivating Key Employees and, ultimately, attaining a successful result in these Chapter 11 Cases. For all of these reasons, the 2009-2011 LTIP should be approved.

## Notice

27.     Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to the official committees and the Future Claimants' Representatives, and (v) all those parties that requested service and notice of papers in accordance with Fed.R.Bankr.P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

28.     No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing, but not requiring, the Debtors to continue the Debtors' ongoing long-term incentive program by authorizing the implementation of the 2009-2011 Long-Term Incentive Plan, (ii) authorizing the Debtors to take such other action as may be necessary or appropriate to effect the intent of this Motion, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: March 23, 2009

KIRKLAND & ELLIS LLP
Theodore L. Freedman
153 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neil (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession