# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

### AFFIDAVIT OF W. BRIAN MCGOWAN IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE IMPLEMENTATION OF THE 2009-2011 LONG-TERM INCENTIVE PROGRAM FOR KEY EMPLOYEES

W. Brian McGowan, being duly sworn, deposes and says:

1.      I am Senior Vice President-Administration of W. R. Grace & Co., a corporation organized under the laws of the State of Delaware, one of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in these cases.    In that capacity, I am responsible for supervision of the Debtors' various executive compensation and company benefit plans.   I offer this affidavit in support of the Motion of the Debtors for an Order Authorizing the Implementation of the 2009-2011 Long-Term Incentive Program for Key Employees (the "Motion").

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2.      The Debtors' respective long-term incentive programs (each an "LTIP" and collectively, the "Chapter 11 LTIPs") were developed in conjunction with the Human Capital Advisor Services Group of Deloitte & Touche, at the time that the Debtors sought approval of the 2002-2004 LTIP.  The Chapter 11 LTIPs have been regularly reviewed since that time.  Most recently, Watson Wyatt Worldwide ("Watson Wyatt"), the current independent compensation consultant to the Compensation Committee of the Debtors' Board of Directors, reviewed the Chapter 11 LTIPs during 2008 and 2009.[2]

3.      The Debtors' long-standing, ongoing strategy for its long-term incentive program necessitates that a renewed LTIP be implemented each calendar year, with no more than three LTIPs in effect in any year.  Thus, upon the Court's approval of the 2009-2011 LTIP, the 2007-2009 LTIP, the 2008-2010 LTIP, and the 2009-2011 LTIP will each be active in 2009.

4.      The 2009-2011 LTIP will have the effect of continuing the Debtors' Chapter 11 LTIPs under substantially the same terms as the previous LTIPs, except as outlined below. Continuing the Chapter 11 LTIPs by implementing the 2009-2011 LTIP will aid the maximization of the value of the Debtors' estates and further the Debtors' efforts to successfully reorganize by assisting in the retention of Key Employees who are experienced and talented individuals, intimately familiar with the Debtors' businesses.

5.      The Key Employees are individuals who certainly could obtain employment elsewhere.  The Debtors' management believes that without continuing the Chapter 11 LTIPs, it will be difficult to retain the Key Employees.  Attracting and hiring qualified replacements for any Key Employees who do leave will be difficult and expensive.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

6.      Any unanticipated loss of Key Employees likely would adversely affect the Debtors' operations by lowering the morale of the remaining employees because of the appearance of disarray and disruption generated by such departures.  It would also burden the Debtors' remaining employees with additional responsibilities.   Such a scenario would negatively impact the Debtors' operations.

7.      The Debtors must protect a critical mass of their high-performing employees in sufficient numbers to profitably operate their businesses during the pendency of these Chapter 11 Cases.

8.      Given the current status of the Chapter 11 Cases, the Debtors' management continues to believe that it will be difficult to maintain employee morale and loyalty if it does not continue the Chapter 11 LTIPs by implementing the 2009-2011 LTIP.

9.      The employees' morale, continued loyalty to the Debtors and faith in the Debtors' management will be furthered by the 2009-2011 LTIP because the Chapter 11 LTIPs clearly signal the Debtors' commitment to continuing to grow their businesses profitably for the benefit of the Debtors' stakeholders, including their employees.  The Debtors need such programs to maximize their chances for a successful reorganization.

10.     The Debtors' specific goals in implementing the 2009-2011 LTIP include: (a) continuing the Chapter 11 LTIPs, which will provide cash-based and equity-based, long-term incentive opportunities to achieve compensation levels that are competitive within the specialty chemical industry; and (b) providing cash and equity incentive compensation potential to Key Employees during the Chapter 11 Cases, which is related to the performance of the Debtors' businesses.

11.     That said, in recognition of, among other things, the significant drop in stock prices in general and the current economic downturn, the 2009-2011 LTIP resets the long-term incentive award to reflect the 50th percentile of the Debtors' industry peer group, rather than the 60th percentile that has been used as a benchmark in prior years.[3]   The Committee's decision was based on the recommendation of Watson Wyatt.

12.     Accordingly, the aggregate targeted award value of the 2009-2011 LTIP will be $12.5 million (excluding the Chief Executive Officer of the Debtors (the "CEO")).  This award value is a decrease of $3.3 million when compared to the aggregate targeted award value of the 2008-2010 LTIP, which was $15.8 million (excluding the CEO).[4]

13.     Under the 2009-2011 LTIP, the cash payout award component will equal 50% of the total targeted award that the Key Employee receives; and the remaining 50% of the total targeted award will be comprised of a grant of stock options for shares of the Debtors' parent, W. R. Grace & Co. ("Grace Stock")[5]

---

[3] The industry peer group data to determine appropriate long-term incentive opportunities for the Debtors' Key Employees is derived from a group of specialty chemicals companies, in the case of top executives; and from broader market data for other Key Employees.  For more information regarding the Debtors' industry peer group, see the 2008 annual report on Form 10-K.

[4] The total targeted award value awarded to the CEO under the Chapter 11 LTIPs generally has been established by the applicable written employment agreement between the CEO and the Debtors, each of which were approved by the Court. The current CEO's long-term incentive opportunities were set forth in his employment agreement, approved by this Court on April 24, 2005 [Docket No. 8340].  That agreement does not specifically establish the CEO's incentive opportunities under subsequent LTIPs.  That agreement expires May 31, 2009.  The Debtors anticipate entering into a new employment agreement with the current CEO prior to that date, which will extend the CEO's employment term and specify the CEO's long-term incentive opportunities for 2009, as well as his other compensation.  The Debtors' are filing a motion with the Court for approval of the CEO's new employment agreement simultaneously with the filing of this Motion.  Based on the recommendation of Watson Wyatt, the proposed aggregate award value granted to the CEO under the 2009-2011 LTIP will be $3.2 million, which would be an increase from the $1.69 million aggregate award value granted to the CEO last year under the 2008-2010 LTIP.  The award value granted to the CEO under the 2009-2011 LTIP would reflect current market practice regarding long-term incentive values awarded to chief executive officers within the Debtors' industry peer group, as reported by Watson Wyatt.

[5] This allocation is similar to the allocation applicable to the 2008-2010 LTIP, except that the cash allocation under that LTIP was limited to 50% of the cash award under the immediately prior LTIP, i.e., under the 2007-2009 LTIP, instead of simply 50% of the aggregate total value of the 2008-2010 LTIP itself.

14.     The total aggregate cash awards (if earned) under the 2009-2011 LTIP (excluding the CEO) would be as follows:

| Year | Targeted Cash Payout | Maximum Cash Payout |
|------|---------------------|---------------------|
| 2011 | $2.08 million | $2.08 million |
| 2012 | $4.17 million | $10.42 million |
| Total | $6.25 million | $12.50 million |

15.     Cash awards to Key Employees (if earned) will made in one-third and two-thirds installments in 2011 and 2012, respectively, which continues the cash payout practice applicable to the prior Chapter 11 LTIPs, including the 2008-2010 LTIP.

16.     The performance criteria for the cash awards portion of the 2009-2011 LTIP are essentially the same as the provisions of the 2008-2010 LTIP (and the earlier Chapter 11 LTIPs). Specifically[6]:

(a)     Business performance for cash awards is measured on a three-year performance period, commencing with 2009.[7]

(b)     The applicable compounded annual 3-year growth rate in core earnings before interest and taxes ("EBIT") to achieve a cash payment of 100% of the 2009-2011 LTIP target award (the "Base Target Cash Award") will be 6% per annum. Core

---

[6] As with prior LTIPs, the Debtors reserve the right to determine whether a particular employee is a Key Employee with respect to the 2009-2011 LTIP; and the right to vary the selection, and the degree of participation, of Key Employees under the 2009-2011 LTIP from the Key Employees identified under prior LTIPs.

[7] For each of the previous Chapter 11 LTIPs, the three-year performance period commenced with the calendar year in which the LTIP was implemented.

EBIT for the 3-year period is adjusted for changes in pension expense and LTIP expense ("Core EBIT").

(c)     Partial payouts for EBIT growth rates between 0% and 6% will be implemented on a straight-line basis.

(d)     The amount of the 2009-2011 LTIP cash payments will be increased at EBIT compounded annual growth rates in excess of the 6%, up to a maximum of 200% of the Base Target Cash Award at an annual compounded EBIT growth rate of 25%.

(e)     Cash payouts (if earned) will occur in 1/3 and 2/3 installments, respectively, in early March following years 2 and 3 of the LTIP (i.e., in 2011 and 2012.) The 1/3 installment following year 2 is limited to 1/3 of the Base Targeted Cash Award.

(f)     Cash payout adjustments for a "significant acquisition" and a "significant divestiture" applicable to the calculation of cash awards under the 2008-2010 LTIP (and the 2007-2009 LTIP) will also apply to cash awards under the 2008-2010 LTIP.

17.     Under the 2009-2011 LTIP, the Debtors anticipate granting options covering approximately 2 million shares of Grace Stock (including the CEO).

18.     The stock options granted under the 2009-2011 LTIP will be deemed to have the same value as applicable to the options granted last year under the 2008-2010 LTIP, based on the recommendation of Watson Wyatt. As a result, the number of shares of Grace Stock covered by grants under the 2009-2011 LTIP will be about the same number as covered by grants last year under the 2008-2010 LTIP.[8]

19.     The "strike price" of the stock options awarded under the 2009-2011 LTIP will be the market price of Grace Stock as of the award date (the "Award Date"). One third of the awarded stock options would vest in 2010, one-third would vest in 2011, and the remaining one-

---

[8] The number of Grace Shares covered by options granted under the 2009-2011 LTIP will not be recalculated to reflect the current market price of Grace Stock. Recalculating the number of Grace Shares using the current, lower market price, by applying the Black-Scholes or other similar formula, would result in a significantly increased number of shares subject to grants under the 2009-2011 LTIP, when compared to the number of shares covered by grants last year under the 2008-2010 LTIP.

third would vest in 2012; each on the anniversaries of the Award Date.[9]  The stock options would generally be exercisable for a period of 5 years after grant.[10]

20.    In light of the foregoing, the Debtors believe that the incentives provided by the 2009-2011 LTIP are reasonable and appropriate and will enhance the prospect of retaining Key Employees and, ultimately, attaining a successful result in these Chapter 11 Cases.

---

[9] The stock options awarded last year under the 2008-2010 LTIP are subject to 2-year vesting.

[10] The options will be issued under the Grace 2000 Stock Incentive Plan, which was authorized and approved by the Court, in 2001, in conjunction with the Debtors petition for relief under Chapter 11. Currently under that Plan, the Debtors have approximately 2.8 million shares available for stock options or restricted stock grants.

FURTHER AFFIANT SAYETH NOT

Dated this 23rd day of March 2009.

W B McGowan

W. Brian McGowan

SUBSCRIBED AND SWORN TO BEFORE ME

this 23rd day of March 2009.

Diane E. Armstrong

Notary Public



DIANE Z. ARMSTRONG
Notary Public, State of Maryland
County of Howard
My Commission Expires September 18, 2012

K&E 14381695.2