ATTACHMENT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

### DECLARATION OF DARRELL W. SCOTT

1. I am an attorney at The Scott Law, P.S. and one of the Class Counsel appointed by this Court as counsel for the U.S. ZAI Class. I am the attorney principally responsible for managing and supervising communications between U.S. ZAI class members and this firm.

2. The Scott Law Group commits substantial resources in an effort to make itself continuously available to individual U.S. ZAI Class members to answer questions and to keep them abreast of developments affecting their claims. Our availability to ZAI claimants helps insure that we remain generally appraised of ZAI claimants' interests and views.

3. In this regard, The Scott Law Group has maintained a U.S. ZAI Class settlement website that provides ZAI class members with downloadable versions of important documents, such as the Court approved Class Notice, the U.S. ZAI Class Settlement Agreement, and important briefing pertinent to the class settlement process. That site also contains a Frequently Asked Questions page that supplies answers to the principal questions class members may have regarding the class settlement and that provides an email link to communicate with The Scott Law Group regarding any questions or concerns they might have.

4. The Scott Law Group also maintains a toll free number staffed by individuals who are trained and supervised in responding to calls from U.S. ZAI Class members. Our written communications and website encourage Class members to phone us should they have any questions.

5. Since the public announcement of the U.S. ZAI Class settlement in late November of 2008, we have had significant contacts with U.S. ZAI Class members, including in excess of 6,000 visits to the U.S. ZAI Class settlement website, in excess of 200 phone call inquiries from ZAI claimants and in excess of 100 communications from ZAI claimants by written communication or email.

6. U.S. ZAI Class member's reactions to the U.S. ZAI Class settlement, as reflected in communications with The Scott Law Group, have been highly favorable. The principal subject matter of Class member communications with our office concern the timing of availability of settlement benefits, questions regarding eligibility for benefits, and general inquiries regarding procedures for applying for settlement benefits.

7. I have had the opportunity to serve as class counsel in several successful property damage class settlements. The reaction of ZAI Class members to the U.S. ZAI Class settlement, as communicated with this office is in keeping with the most favorably received class settlements in which I have been involved. As an attorney who has been actively and continuously representing ZAI interests for the past nine years, I have confidence that the U.S. ZAI Class settlement is fair, reasonable, adequate, and in the best interest of U.S. ZAI Class members.

Darrell W. Scott

Dated: March 23, 2009

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## DECLARATION OF EDWARD J. WESTBROOK

1. I am one of the class counsel for the U.S. ZAI class of claimants.

2. Shortly after the class notice was sent to class members accompanied by a Request for Exclusion, commonly called an "opt-out" form, my co-class counsel, Darrell Scott, alerted me that some class members were calling his office believing they had to return the opt-out form to be <u>included</u> in the class. Mr. Scott's office verbally informed these callers that the opt-out form was to be used only for class members who wish to be <u>excluded</u> from the class action.

3. As the result of the contacts with Mr. Scott's office, we became concerned that other class members might be returning the opt-out form in the similarly mistaken belief that it had to be executed to participate in the class action. Accordingly, we contacted the opt-outs to confirm their intention. We explained that opting out removed the claim from the class. We told the class members that they needed to do nothing further if they really wished to opt-out, but if they were mistaken about the effect of an opt-out, they should let us know.

4. As a result of our effort to clarify the meaning of opting out, we received a significant number of replies. These replies demonstrated that a large number of those who had returned opt-out forms had done so in error, believing that the form was necessary to remain in the class. The common thread among the responses we received withdrawing their opt-outs was that the individuals had read the notice hurriedly and had not understood the significance of executing the opt-out form.

5. As a result of our effort to clarify for class members the effect of executing the opt-out form, 36 of the 198 opt-outs (almost 20%) have retracted their opt-out, leaving 162 class members as opt-outs. This number is less than 2% of the total class membership of over 16,000.

6. In addition to those individuals who have written us concerning their opt-out forms, we have received a large number of calls from individuals in response to the class

notice itself. Many of these individuals had questions concerning the class settlement process and the proof necessary to make a claim. No class member who contacted us objected to the settlement or indicated that he or she was going to file any objection. Some class members did express their wish that Grace's reimbursement percentage of 55% of abatement-related costs could be higher. When the difficulties of achieving a 100% recovery in the bankruptcy setting were explained to them, they understood the need for compromise. Class members also had questions about when the facility would begin operating. We explained to these individuals the anticipated timeline for plan confirmation as a prerequisite for the facility to begin operation. We also explained that the facility's evidentiary requirements were anticipated to be straightforward so that claimants would not need individual counsel to make a claim, although they could have counsel if they desired as a matter of private contract. One former class member, Anderson Memorial Hospital, did not contact us, but filed a pleading noting it had opted out and asking that final approval of the class settlement be delayed until confirmation.

7. Based on the results of the contacts we have had with class members, and the reaction of the class to the settlement, I continue to believe that it is a fair, reasonable and adequate resolution of the claims of the U.S. ZAI class.

8. I was co-lead counsel for the certified class in the College and University national class action. In that case, which involved approximately 3,000 colleges, we had approximately 214 opt-outs (approximately 7%). The Court approved numerous settlements in that case. Central Wesleyan College, et al v. W.R. Grace, 143 F.R.D. 628, 647 (D.S.C. 1992), aff'd 6 F.3d 177 (4th Cir. 1993).

Edward J. Westbrook

Dated: March 24, 2009