```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE


IN RE:                     .    Case No. 01-01139(JKF)
                           .
W.R. GRACE & CO.,          .
et al.,                    .    5414 U.S. Steel Tower
                           .    600 Grant Street
                           .    Pittsburgh, PA 15219
          Debtors.   .
                           .    March 9, 2009
. . . . . . . . . . . . . ..    10:03 a.m.


                      TRANSCRIPT OF HEARING
              BEFORE HONORABLE JUDITH K. FITZGERALD
              UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:          Kirkland & Ellis, LLP
                          By:  THEODORE FREEDMAN, ESQ.
                               DEANNA BOLL, ESQ.
                               RASHAD W. EVANS, ESQ.
                               CRAIG BRUENS, ESQ.
                               MAGALI LEE, ESQ.
                               CHRISTOPHER GRECO, ESQ.
                               MARC LEWINSTEIN, ESQ.
                          Citigroup Center
                          153 East 53rd Street
                          New York, NY 10022


Audio Operator:           Cathy Younker



Proceedings recorded by electronic sound recording, transcript
               produced by transcription service.
```

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311      Fax No. (609) 587-3599**

APPEARANCES (cont'd):

| | |
|---|---|
| For the Debtors: | Law Offices of Janet Baer<br>By:  JANET BAER, ESQ.<br>70 West Madison, Suite 2100<br>Chicago, IL 60602 |
| For the Asbestos<br>Creditors Committee: | Caplin & Drysdale, Chartered<br>By:  PETER LOCKWOOD, ESQ.<br>One Thomas Circle, NW<br>Washington, D.C.  20005 |
| For the Property<br>Damage Committee: | Bilzin Sumberg Baena Price &<br>  Axelrod LLP<br>By:  MATTHEW KRAMER, ESQ.<br>     SCOTT BAENA, ESQ.<br>     JAY SAKALO, ESQ.<br>200 South Biscayne Boulevard<br>Suite 2500<br>Miami, FL  33131 |
| For the Future<br>Claimants<br>Representatives: | Orrick, Herrington & Sutcliffe<br>  LLP<br>By:  ROGER FRANKEL, ESQ.<br>     JONATHAN GUY, ESQ.<br>     DEBRA FELDER, ESQ.<br>     RICHARD WYRON, ESQ.<br>Washington Harbour<br>3050 K Street, N.W.<br>Washington, D.C.  20007 |
| For the<br>Unsecured Creditors'<br>Committee: | Stroock & Stroock & Lavan<br>By:  KENNETH PASQUALE, ESQ.<br>     ARLENE KRIEGER, ESQ.<br>180 Maiden Lane<br>New York, NY  10038-4982 |
| For the Equity<br>Committee: | Kramer Levin Naftalis & Frankel<br>By:  DOUG MANNAL, ESQ.<br>919 Third Avenue<br>New York, NY  10022 |
| For Fresenius: | McDermott Will & Emery<br>By:  NATHAN COCO, ESQ.<br>227 West Monroe Street<br>Chicago, IL 60606 |

APPEARANCES (cont'd):

| | |
|---|---|
| For the Debtors: | Pachulski, Stang, Ziehl &Jones<br>By:  JAMES O'NEILL, ESQ.<br>919 North Market Street<br>17th Floor<br>Wilmington, DE  19899-8705 |
| For Sealed Air: | Skadden, Arps, Slate, Meagher & Flom<br>By:  DAVID TURETSKY, ESQ.<br>Four Times Square<br>New York, NY 10036 |
| For the Asbestos<br>Creditors Committee: | Caplin & Drysdale, Chartered<br>By:  WALTER SLOCOMBE, ESQ.<br>      JEFFREY LIESEMER, ESQ.<br>One Thomas Circle, NW<br>Washington, D.C.  20005 |
| For the Asbestos<br>Creditors Committee: | Campbell & Levine<br>By:  MARK T. HURFORD, ESQ.<br>800 North King Street, Suite 300<br>Wilmington, DE 19801 |
| For W.R. Grace: | W.R. Grace<br>By: RICHARD C. FINKE, ESQ.<br>    MARK SHELNITZ, ESQ.<br>    WILLIAM SPARKS, ESQ.<br>    SUSETTE SMITH, ESQ.<br>7500 Grace Drive<br>Columbia, MD  21044 |
| For Maryland Casualty<br>Zurich: | Connolly Bove Lodge & Hutz<br>By:  JEFFREY WISLER, ESQ.<br>The Nemours Building<br>1007 North Orange Street<br>Wilmington, DE 19899 |
| For Arrowood: | Wilson Elser Moskowitz Edelman<br>  & Dicker, LLP<br>By:  CARL PERNICONE, ESQ.<br>150 East 42nd Street<br>New York, NY  10017 |
| For Anderson Memorial: | Kozyak Tropin Throckmorton<br>By:  JOHN W. KOZYAK, ESQ.<br>2525 Ponce de Leon, 9th Floor<br>Miami, FL 33134 |

APPEARANCES (cont'd):

| | |
|---|---|
| For Official Committee of Asbestos Personal Injury Claimants: | Anderson Kill & Olick<br>By:  ROBERT M. HORKOVICH, ESQ.<br>1251 Avenue of the Americas<br>New York, NY  10020-1186 |
| For the Ad Hoc Committee of Equity Sec. Holders: | Dewey & LeBoeuf, LLP<br>By:  JENNIFER WHITENER, ESQ.<br>125 West 55th Street<br>New York, NY  10019 |
| For Axa Belgium: | Tucker Arensberg<br>By:  MICHAEL SHINER, ESQ.<br>1500 One PPG Place<br>Pittsburgh, PA 15222 |
| For One Beacon & Seaton Insurance | Drinker Biddle & Reath<br>By:  JEFFREY BOERGER, ESQ.<br>     MICHAEL F. BROWN, ESQ.<br>One Logan Square<br>18th and Cherry Streets<br>Philadelphia, PA 19103 |
| For Everest Reinsurance Company: | Marks, O'Neill, O'Brien & Courtney<br>By:  JOHN D. MATTEY, ESQ.<br>     BRIAN L. KASPRZAK, ESQ.<br>913 North Market Street, Suite 800<br>Wilmington, DE 19801 |
| For Arrowood: | Bifferato, Gentilotti, Biden & Balick<br>By:  GARVAN McDANIEL, ESQ.<br>800 North King Street<br>Wilmington, DE 19899 |
| For Babson Capital Management, Inc. | Babson Capital Management, Inc.<br>By:  MARTI MURRAY, ESQ. |
| For Official Committee of Asbestos Property Damage Claimants: | Dies & Hile, LLP<br>By:  MARTIN DIES, ESQ.<br>1601 Rio Grande, Suite 330<br>Austin, TX  78701<br><br>Anderson Kill & Olick<br>By:  ROBERT M. HORVICH, ESQ.<br>1251 Avenue of the Americas<br>New York NY 10020 |

APPEARANCES (cont'd):

| | |
|---|---|
| For the United States Trustee: | United States Trustee Department<br>By: DAVID KLAUDER, ESQ.<br>833 Chestnut Street<br>Philadelphia, PA 19107 |
| For State of Montana Department of Environmental Quality: | Womble Carlyle Sandridge & Rice<br>By:  FRANCIS MONACO, ESQ.<br>      KEVIN J. MANGAN, ESQ.<br>222 Delaware Avenue<br>Suite 1501<br>Wilmington, DE  19801<br><br>Phillips, Goldman & Spence<br>By:  JOHN C. PHILLIPS, JR., ESQ.<br>25 East Second Street<br>Media, PA 19063 |
| For Various Claimant Firms: | Stutzman, Bromberg, Esserman & Plifka<br>By:  DAVID J. PARSONS, ESQ.<br>      SANDER L. ESSERMAN, ESQ.<br>2323 Bryan Street<br>Suite 2200<br>Dallas, TX  75201 |
| For Vinson & Elkins: | Vinson & Elkins, LLP<br>By:  ARI BERMAN, ESQ.<br>Trammell Crow Center<br>2001 Ross Avenue, Suite 3700<br>Dallas, TX  75201 |
| For David T. Austern: | Piper Jaffray & Co.<br>By:  JASON SOLGANICK, ESQ.<br><br>Tre Angeli<br>By:  JOSEPH RADECKI, ESQ. |
| For Arrowood: | O'Melveny & Myers<br>By:  TANCRED SCHIAVONI, ESQ.<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036 |
| For Hartford Financial Services: | Wilmer Cutler Pickering Hale & Dorr<br>By:  MELANIE DRITZ<br>399 Park Avenue<br>New York, NY 10022 |

APPEARANCES (cont'd):

For ZAI claimants:          Hogan Firm Attorneys at Law
                            By:  DANIEL K. HOGAN, ESQ.
                            1311 Delaware Avenue
                            Wilmington, DE  19801

For Creditor:               Montgomery, McCracken, Walker &
                               Rhoads, LLP
                            By:  NATALIE D. RAMSEY, ESQ.
                            300 Delaware Avenue, Ste. 750
                            Wilmington, DE  19801

For the Debtors:            Kirkland & Ellis, LLP
                            By:  DAVID BERNICK, ESQ.
                                 LISA ESAYIAN, ESQ.
                                 JANET BAER, ESQ.
                            200 East Randolph Drive
                            Chicago, IL  60601

For Libby Claimants:        Cohn Whitesell & Goldberg, LLP
                            By:  CHRISTOPHER M. CANDON, ESQ.
                                 DANIEL COHN, ESQ.
                            101 Arch Street
                            Boston, MA  02110

For Everest Reinsurance     Crowell & Moring
Company:                    By:  LESLIE A. DAVIS, ESQ.
                                 MARK PLEVIN, ESQ.
                            1001 Pennsylvania Ave
                            Washington, D.C. 20004

For the State of CA,        Hahn & Hessen, LLP
Dept. of Gen. Services:     By:  CHRISTINA J. KANG, ESQ.
                            488 Madison Avenue, 14th Fl.
                            New York, NY  10022

For Halycon Asset           Halcyon Asset Management, LLC
Management LLC:             By:  JOHN GREENE

For National Union Fire     Zeichner Ellman & Krause, LLP
Insurance Co.:              By:  ROBERT GUTTMANN, ESQ.
                                 MICHAEL DAVIS, ESQ.
                            575 Lexington Avenue
                            New York, NY  10022

APPEARANCES (cont'd):

| | |
|---|---|
| For Fireman's Fund: | Stevens & Lee, P.C.<br>By:  JOHN DEMMY, ESQ.<br>1105 North Market Street, 7th Fl.<br>Wilmington, DE  19801 |
| For Creditor: | Landis Rath & Cobb<br>By:  JAMES S. GREEN, JR., ESQ.<br>     RICHARD S. COBB, ESQ.<br>919 Market St., Suite 1800<br>Wilmington, DE 19899 |
| For Baker & Hostetler: | Baker & Hostetler<br>By:  DONALD WORKMAN, ESQ.<br>Washington Square, Suite 1100<br>Washington, DC 20036 |
| For Dow Jones News Wires: | Dow Jones News Wires<br>By:  PEG BRICKLEY, ESQ. |
| For Creditor: | Vinson & Elkins<br>By:  STEVEN ABRAMOWITZ, ESQ.<br>666 Fifth Avenue, 26th Floor<br>New York, NY 10103 |
| For Scott Company: | Vorys, Sater, Seymour & Pease, LLP<br>By:  TIFFANY COBB, ESQ.<br>52 East Gay Street<br>Columbus, OH  43216 |
| For Plaintiffs: | Lowenstein Sandler<br>By:  IRA LEVEE, ESQ.<br>65 Livingston Avenue<br>Rosalind, NJ 07068 |
| For Creditor: | Pepper Hamilton<br>By:  LINDA J. CASEY, ESQ.<br>300 Two Logan Square<br>Eighteenth and Arch Streets<br>Philadelphia, PA 19103 |
| For Owens-Illinois: | McCarter & English<br>By:  KATHERINE L. MAYER, ESQ.<br>Renaissance Centre, 405 N. King St.<br>Wilmington, DE  19801 |

APPEARANCES (cont'd):

For Ford, Marrin,            Ford, Marrin, Esposito, Witmeyer &
Esposito, Witmeyer             Gleser
& Gleser:                    By:  SHAYNE SPENCER, ESQ.
                                  ELIZABETH DeCRISTOFARO, ESQ.
                             Wall Street Plaza
                             New York, NY  10005


For Allstate Insurance:      Cuyler Burk, LLP
                             By:  ANDREW CRAIG, ESQ.
                             Parsippany Corporate Center
                             Four Century Drive
                             Parsippany, NJ  07054


For CNA:                     Goodwin Procter, LLP
                             By:  BRIAN MUKHERJEE, ESQ.
                             Exchange Place
                             Boston, MA  02109-2881


For Official Committee       Brandi Law Firm
of Asbestos Property         By:  TERENCE D. EDWARDS, ESQ.
Damage Claimants:                 THOMAS J. BRANDI, ESQ.
                             44 Montgomery St., Suite 1050
                             San Francisco, CA  94104


                             Riker, Danzig, Scherer, Hyland &
                               Perretti
                             By:  TARA MONDELLI, ESQ.
                             Headquarters Plaza
                             One Speedwell Ave
                             Morristown, NJ 07962


For Official Committee       Richardson Patrick Westbrook &
of Asbestos Property           Brickman, P.C.
Claimants:                   By:  EDWARD J. WESTBROOK, ESQ.
                             174 East Bay Street
                             Charleston, SC  29401


                             ELIZABETH DEVINE, ESQ.


For London Market            Mendes & Mount, LLP
Companies:                   By:  ALEXANDER MUELLER, ESQ.
                             750 Seventh Avenue
                             New York, NY  10019-6829

APPEARANCES (cont'd):

For Barclays Capital:       Barclays Capital, Inc.
                            By:  ANDREW L. CHAN, ESQ.

For Cetus Capital:          Cetus Capital
                            By:  GENTRY KLEIN, ESQ.

For Asbestos Property       Scott Law Group
Damage Claimants:           By:  DARRELL SCOTT, ESQ.
                            1001 East Main Street, Suite 500
                            Sevierville, TN  37864

                            Lieff, Cabraser, Heimann & Berstein
                            By:  ELIZABETH J. CABRASER, ESQ.
                            Embarcadero Center West
                            275 Battery Sreet, Suite 3000
                            San Francisco, CA 94111

                            Simmons Cooper
                            By:  ROBERT PHILLIPS, ESQ.
                            707 Berkshire Blvd.
                            East Alton, IL 62024

For the PD Committee:       Speights & Runyan
                            By:  DANIEL SPEIGHTS, ESQ.
                                 MARIANN FAIREY, ESQ.
                                 ALAN RUNYAN, ESQ.
                            200 Jackson Avenue, East
                            Hampton, SC  29924

For Unifirst:               Pepper Hamilton
                            By:  JAMES C. CARIGNAN, ESQ.
                            Hercules Plaza, Suite 5100
                            1313 Market Street
                            Wilmington, DE 19899

For Bank of America:        Richards Layton & Finger
                            By:  MARCOS RAMOS, ESQ.
                                 MICHAEL ROMANCZUK, ESQ.
                            One Rodney Square
                            920 North King Street
                            Wilmington, DE 19801

For Kaneb Pipe Line:        Fulbright & Jaworski
                            By:  STEVE PIERCE, ESQ.
                            300 Convent Street, Suite 2200
                            San Antonio, TX 78205

APPEARANCES (cont'd):

```
For the Asbestos          Ferry Joseph & Pearce, P.A.
Creditors Committee:      By:  THEODORE TACCONELLI, ESQ.
                          824 Market Street, Suite 19899
                          Wilmington, DE  19899

                          Pryor Cashman
                          By:  RICHARD LEVY, ESQ.
                          410 Park Avenue
                          New York, NY 10022

For Allen & Comapny:      Allen & Company
                          By:  TAL GURION, ESQ.

For FR PD:                Sanders & Nwettles
                          By:  ALEX SANDERS, ESQ.
                          2008 Lincoln Street
                          Columbia, SC 29201
```

1          DEPUTY CLERK:  All rise.

2          THE COURT:  Please be seated.  Somebody apparently

3  has a BlackBerry or some other type of device.  It might be on

4  the phone.  Please stop using it because we're already having

5  difficulties with the phone lines today.  And that will cause

6  even more trouble.  So, kindly turn it off.

7          This is the matter of W.R. Grace, Bankruptcy Number

8  01-1139.  This is the time set for the certification of counsel

9  regarding the disclosure statement hearing.  I have -- one

10 second -- a list of participants by phone, Jennifer Whitener,

11 Andrew Craig, Jennifer -- I'm sorry -- Jeffrey Boerger, John

12 Mattey, Theodore Freedman -- but I see him in court -- Garvan

13 McDaniel, Marti Murray, Sander Esserman, David Klauder, Kevin

14 Mangan, Walter Slocombe, Robert Horkovich, Ari Berman, Francis

15 Monaco, John Phillips, Jason Solganick, Tancred Schiavoni,

16 Joseph Radecki, Jonathan Guy, Melanie Dritz, Deanna Boll,

17 Rashad Evans, Daniel Hogan, Natalie Ramsey, Lisa Esayian,

18 Jeffrey Liesemer, Craig Bruens, Christopher Candon, Leslie

19 Davis, David Bernick, Christina Kang, John Greene, Robert

20 Guttmann, Terence Edwards, Scott Baena, John Demmy, Debra

21 Felder, David Parsons, Arlene Krieger, James Green, Mark

22 Shelnitz, Donald Workman, Michael Davis, Peg Brickley, Matthew

23 Kramer, Steven Abramotwitz, Tiffany Cobb, Peter Lockwood -- but

24 I see him in court -- Mark Hurford, Carl Pernicone, Ira Levee,

25 Linda Casey, Katharine Mayer, Brian Kasprzak, Shayne Spencer,

1  Mark Plevin, William Sparks, Magali Lee, Brian Mukherjee, Tara

2  Mondelli, Alex Mueller, Michael Brown, Christopher Greco, Marc

3  Lewinstein, Janet Baer -- but I see her in court -- Edward

4  Westbrook, Elizabeth Devine, Jay Sakalo -- he's here, too --

5  Andrew Chan, Gentry Klein, Susette Smith, Darrell Scott,

6  Elizabeth Cabraser, Marion Fairey, Elizabeth DeCristofaro,

7  Daniel Speights, Richard Cobb, Martin Dies, Thomas Brandi,

8  Robert Phillips, Alan Runyan, James Carignan, Marcos Ramos,

9  Steve Pierce, Richard Levy, Theodore Tacconelli, Daniel Cohn,

10 Michael Romanczuk, and Ted Gurion.

11          And I'll take entries in court, please.

12          MR. FREEDMAN:  Good morning, Your Honor, Theodore

13 Freedman for the debtors.

14          MS. BOLL:  Good morning, Your Honor, Deanna Boll for

15 the debtors.

16          MS. BAER:  Good morning, Your Honor, Janet Baer for

17 the debtors.

18          MR. MANNAL:  Good morning, Doug Mannal for the equity

19 committee, Your Honor.

20          MR. LOCKWOOD:  Good morning, Your Honor, Peter

21 Lockwood for the ACC.

22          MR. FRANKEL:  Good morning, Your Honor, Roger Frankel

23 for the PI Future Claims Representative.

24          MR. WYRON:  Good morning, Your Honor, Richard Wyron

25 also for the PI FCR.

1          MR. RICH:  Your Honor, Alan Rich for the PD FCR.

2          MR. SAKALO:  Good morning, Your Honor, Jay Sakalo on

3    behalf of the property damage committee.

4          MR. PASQUALE:  Good morning, Your Honor, Ken Pasquale

5    for the unsecured creditors committee.

6          MR. O'NEILL:  Good morning, Your Honor, James O'Neill

7    for the debtors.

8          MR. KOZYAK:  Good morning, Your Honor, John Kozyak on

9    behalf of Anderson Memorial.

10          MR. SPEIGHTS:  Good morning, Your Honor, Dan Speights

11    on behalf of Anderson Memorial.

12          MR. PERNICONE:  Good morning, Your Honor, Carl

13    Pernicone, I'm co-counsel for Arrowood Indemnity.

14          MR. TURETSKY:  Good morning, Your Honor, David

15    Turetsky of Skadden Arps for Sealed Air.

16          MR. COCO:  Good morning, Your Honor, Nathan Coco on

17    behalf Fresenius.

18          MR. CRAIG:  Good morning, Andrew Craig on behalf of

19    Allstate Insurance Company.

20          MR. SHINER:  Good morning, Your Honor, Michael Shiner

21    for Axa Belgium.

22          MR. COHN:  Good morning, Your Honor, Jacob Cohn for

23    Federal Insurance Company.

24          MR. SANDERS:  Good morning, Your Honor, Alex Sanders,

25    FCR PD.

1          MR. LONGOS:  Good morning, Your Honor, Edward Longos,
2  Maryland Casualty in Zurich.

3          MR. WISLER:  Good morning, Your Honor, Jeffrey Wisler
4  on behalf of Maryland Casualty in Zurich.

5          THE COURT:  Mr. Freedman?

6          MR. FREEDMAN:  Your Honor, I'd also like to note that
7  Craig Bruens of Kirkland and Ellis, one of our partners is also
8  here and appearing for the debtors.

9          THE COURT:  Thank you.

10          MR. FREEDMAN:  Well, Your Honor, we've made
11  substantial progress.  And I'm here to report it.  And I'd like
12  to by way of background just walk through where we've been and
13  we are today.

14          As the Court will recall, this disclosure statement
15  hearing commenced on October 27th.  There were continued
16  hearings on November 14th, November 24th, and January 13th.  By
17  January 13th, effectively all of the issues with respect to the
18  disclosure statement had been resolved, there were a few stray
19  cats and dogs, except for PD matters.  And on January 13, this
20  Court set a schedule for finally getting resolution of
21  everything that remained to be open, particularly with respect
22  to PD.

23          Pursuant to that schedule, on February 3rd, as the
24  Court had directed, the debtors and the other co-proponents
25  filed a first amended plan which contained a revised treatment

1  with respect to PD claims and a complete set of all of the plan

2  documents.

3  　　　　　On February 20th, objections to the disclosure

4  statement were filed by some parties.

5  　　　　　And on February 27th, response to those objections

6  the debtor filed by way of certification of counsel, amendments

7  and modifications to the plan, the plan documents and the

8  disclosure statement.  We also filed on February 27th, a chart

9  which reported to the Court the status of those things that had

10  been subject to the objections filed on February 20th.

11  　　　　　There were three matters as to which objections were

12  filed on February 20th that we have been advised prior to the

13  proceeding have -- were resolved by the amendments that were

14  made on February 27th.  Those related to the PD FCR, the

15  Maryland Casualty objection, and the Unifirst objection.

16  　　　　　And I want to make clear there's kind of a standing

17  understanding that when the debtors indicate that there have

18  been agreement on any of the disclosure statement points, it's

19  with the understanding that all parties reserve all of their

20  rights with respect to the confirmation hearing.  And an

21  agreement on the disclosure statement is not a concession on

22  that.  So, we don't have to have people standing up in line

23  making that same point.  It's understood.

24  　　　　　In any event, so we -- what we filed on February 27th

25  resolved the PD FCR, Maryland Casualty and Unifirst.

1          Subsequent to that time, I'm happy to report, we did

2    obtain the -- we did make some modifications which satisfied

3    the Department of Justice.  And I would like to -- without

4    going into the details of the Department of Justice objections,

5    what I'd like to hand up to the Court if I may is a blackline

6    of the provisions of the disclosure statement which have been

7    modified by agreement with the Department of Justice.  We do

8    have other copies of this for anybody who cares to see it.

9          THE COURT:  All right.  Thank you.

10          MR. FREEDMAN:  And this is a -- these are

11    modifications to Section 3.2.8.3 and 9.6.2 of the disclosure

12    statement.  I'm not going to read the entire language as

13    modified, but I will say that there was a clarification about

14    the nature of the accusations in the indictment.  The

15    Department of Justice requested and the debtors agreed to

16    insert a reference to the restitution statute which is 18

17    U.S.C. Sections 3663 and 3663a.  Those were both changes to

18    3.2.8.3.  And reference to restitution was also added to 9.6.2.

19    And there was a clarification again about the nature of the

20    indictment.

21          So, those were the changes that the Department of

22    Justice agreed to.  Also, I'm sorry, the Department of Justice

23    did ask and we did agree at the end of Section 3.2.8.3 to add

24    the following sentence, "The DOJ asserts that any criminal fine

25    or restitution ordered by the United States District Court for

1  the District of Montana will be non-dischargeable pursuant to

2  18 U.S.C. Sections 3613e and f.  The debtors do not agree with

3  the DOJ's assertions -- that that the DOJ's assertion is

4  correct."

5          That language is now added to the disclosure

6  statement.  And the Department of Justice has indicated to us,

7  as I said, and I believe also has advised the Court that they

8  are satisfied with that disclosure and won't raise any

9  additional objections.

10          THE COURT:  All right.

11          MR. FREEDMAN:  Moving on then, the next objection

12 that was raised was a series of objections by Anderson

13 Memorial.  I have been advised by counsel to Anderson Memorial

14 prior to the commencement of the proceeding that of their

15 objections, they are only going to continue to press two of the

16 matters that they had objected to.

17          And what the debtors did is in response to the

18 objections filed on the 20th by Anderson Memorial, we did amend

19 the disclosure statement in many respects.  And that's all laid

20 out in the chart.  And they appear to be unhappy still with two

21 of the issues -- two of the matters that we addressed in our

22 modifications.

23          Those are Item Number 3 which is at the disclosure

24 contained --

25          UNIDENTIFIED SPEAKER:  (Inaudible)

1        MR. FREEDMAN:  I'm sorry?

2        UNIDENTIFIED SPEAKER:  Two.

3        MR. FREEDMAN:  I apologize.  I understood it as --

4  Item Number 2 that the disclosure statement at Pages 8 and 23

5  does not estimate the dollar amount of the unresolved PD claims

6  or give a statement regarding how their allowance would affect

7  the total amount of PD claims, and whether if allowed, the

8  funds for the PD trust will be sufficient to pay PD claims in

9  full.

10        And they also are pressing their objection Number 8

11  which basically says that the disclosure statement needs to

12  estimate the amount of the ZAI claims.

13        With respect to both of those matters, the debtors

14  are believe that additional disclosure, any additional

15  disclosure to what is already in the disclosure statement is

16  inappropriate, frankly.

17        First with respect to the amount of the PD claims

18  that they're apparently seeking greater disclosure on, the

19  debtors contest all of their liability with respect to PD

20  claims.  There are substantial claims that have been settled.

21  The amount of those settlements is fully laid out.  Any other

22  PD claims that were filed prior to the PD bar date are

23  contested.  And to the extent that they're contested, the

24  debtors do not believe that there is any appropriate additional

25  disclosure on those.

1        And with respect to any future amounts of PD claims,

2   that's a purely hypothetical number which the debtors do not

3   believe can provide any value to somebody deciding whether or

4   not to vote on the disclosure statement.

5        Frankly, the same analysis is with respect to ZAI.

6   As this Court found in the science opinion, the debtors have a

7   substantial basis because ZAI is not proving to be a harmful

8   product if left undisturbed.  Just conclude that ZAI does not

9   give rise to any property damages liability.  The debtors have

10  contested all of that liability.

11       They have effectively terminated the need for an

12  estimation hearing by entering into the settlement that is

13  currently before the Court.  But, any other number with respect

14  to ZAI is purely speculative.  There's no factual basis for it.

15  And it makes no sense in a document which is intended to give

16  people information about whether they should vote for or

17  against the plan to put in some hypothetical number that has no

18  basis in fact.

19       So, we believe that the disclosure statement provides

20  sufficient disclosure on both of these matters and that there's

21  no further need for disclosure on either of them.

22       THE COURT:  What is the ZAI -- what do the ZAI

23  claimants at this point contend with respect to an estimate of

24  the claims now that there is a settlement in principle and --

25       MR. FREEDMAN:  I do not understand them to make any

1  specific contention as to an estimate of those claims.

2          THE COURT:  All right.  Good morning.

3          MR. KOZYAK:  Good morning, Your Honor.

4          DEPUTY CLERK:  Your name again, sir?

5          MR. KOZYAK:  John Kozyak.  Your Honor, John Kozyak

6  from Kozyak, Tropin, and Throckmorton in Miami, Florida.  I'm

7  here as co-counsel with Mr. Speights on behalf of Anderson

8  Memorial.  Pleased to be here for the first time and look

9  forward to being here through confirmation.

10          THE COURT:  Thank you for bringing the great weather

11  with you.

12          MR. KOZYAK:  Oh, well, it is a little nicer in South

13  Florida, Your Honor.  And I represented the property damage

14  claimants in pre and post-confirmation in <u>Celotex</u> with Mr.

15  Speights when he was the chairman of the committees.

16          And Your Honor, Mr. Freedman is correct.  There have

17  been a number of changes made.  And we are not pressing a

18  number of the objections that we had raised because they added,

19  I think, eight pages to the PD procedures, Pages, I think

20  they're 88 through 94.  And they also fleshed out a ZAI issue.

21          And I proposed to Mr. Freedman three sentences to be

22  inserted in this voluminous disclosure statement and plan.

23  Today, I advised him that I was not pressing for the second

24  statement regarding futures out of deference to Judge Sanders

25  who is represented by counsel.  We do believe that that would

1  be relevant and should be included, but we're not going to

2  press it.

3          I am pressing two sentences.  I do believe that there

4  should be an insertion what we contend as to be the amount of

5  PD claims.  And I think that could be dealt with just like it's

6  dealt with most disclosure statement issues, just like it's

7  been dealt with by the debtors with other parties.  You just

8  heard that the insertion for the Department of Justice says, we

9  think this, and they disagree.  It's on Page, I think, 98 and

10 99 with the creditors' committee.

11         The creditors' committee believes that they're

12 impaired.  The debtors don't.  They spell it out in two

13 paragraphs.  Ours could be down to one sentence.  And the

14 reason I think this should be included, Your Honor, is in the

15 event that Anderson Memorial's claims, class claims, those

16 decisions are reversed on appeal, we believe that the amount of

17 the claims will be very, very substantial.

18         And we conservatively suggested to the debtors that

19 they should insert the language that if there was a reversal,

20 if the PD claims, not the future claims, the PD claims would be

21 in excess of $1 billion.  And we said that was conservative.

22 And Your Honor, I would like the Court to take judicial notice

23 of -- and I have an extra copy if it would assist the Court --

24 Docket Number 19987 which was the Anderson Memorial's hospital

25 status report which was filed on November 10 and

1  (indiscernible) to the Court before.

2          And the reason I think that that's highly relevant,

3  Your Honor, is that it lays out the claim.  I know that this

4  Court is familiar with the Anderson Memorial worldwide and

5  statewide claims and Anderson Memorial's individual claims.

6  But, if I could just recap on this -- in this status report, if

7  the Court would review it again --

8          MR. FREEDMAN:  Does counsel have counsel have a copy

9  of the status --

10          MR. KOZYAK:  Sure.  I'd be happy to.

11          THE COURT:  That would help me, too, because I've

12  undoubtedly seen it, but in terms of recap --

13          MR. KOZYAK:  May I approach --

14          THE COURT:  Yes, thanks.  And if you're asking me to

15  take judicial notice that it was filed, I'll certainly do that.

16  In terms of taking judicial notice of the truth, I can't do

17  that.

18          MR. KOZYAK:  I'm not asking that, Your Honor.

19          THE COURT:  I can take judicial notice that it was

20  filed, certainly.

21          MR. KOZYAK:  Your Honor, and you're absolutely right.

22  I'm not asking you to look at the voluminous reports for

23  instance of the shipping documents of hundreds of shipments to

24  South Carolina for instance or the 3,000 buildings that are

25  identified in the documents in the claims.

1       But, I do want that to be -- because this is recently

2 filed, it contains affidavits and a number of documents

3 relating to these claims.  I'd like to remind the Court that

4 although the Court denied certification on these class claims,

5 the Court has never ruled on the substantive objections raised

6 by Grace on authority, or the substantive grounds saying for

7 instance, there's not enough identification of the product on

8 this side or that side.  Both remain pending.

9       Now, the appeal is before the Third DC -- I mean, the

10 Third Circuit.  And we believe that we have a chance of winning

11 obviously.  And obviously, W.R. Grace thinks we should never

12 get a penny, we should never come back to this courtroom, but

13 that's not the point.  The point is that we have raised a

14 substantial number of claims as class components.  We have

15 other pending claims.  We have the Canadian claims.  We have

16 Anderson Memorial's individual claim that has not been resolved

17 or denied.  And we believe that you can't just say because we

18 denied liability, we are going to put down the amount of the

19 claims as 114 million, I believe it is; and we're not going to

20 estimate it; we're not going to estimate what your recovery is

21 going to be.

22       And if we win, we do believe that this will be a

23 feasability issue.  So, going back to Point 1 which is

24 addressed on the chart as Number 2, we believe that there

25 should be an insertion similar to the other ones, one sentence.

1 In the event the denial of class certification of the Anderson

2 Memorial Hospital class is reversed, Anderson on behalf of

3 itself and the class it represents contends its claims will be

4 total in excess of $1 billion and the debtors continue to

5 dispute any liability.

6         I've offered, you know, any other kind of language to

7 say they strongly object to it.  They really object to it, et

8 cetera.  But, they refuse to put anything in there that would

9 relate to our claims.

10         Your Honor, I think it's also important to say, I

11 understand that they object to the claims and they think they

12 have strong defenses, but I will again state that the bar date

13 -- that they have never specifically given notice to the people

14 that are identified in these claims, of the property building,

15 by property address.  And I think that that's important to

16 raise.

17         THE COURT:  Well, that issue we've been down the road

18 several times on both the District Court, this Court.  That

19 issue I don't think we need to address in the disclosure

20 statement.

21         MR. KOZYAK:  I didn't ask -- my sentence was the

22 sentence that I would like included, Your Honor.  I didn't ask

23 for another sentence about --

24         THE COURT:  Well, look --

25         MR. KOZYAK:   -- about the bar date.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Okay.  With respect to $1 billion, are

2 you talking worldwide, statewide, are you talking Anderson's

3 individual claim?  I mean, there are lots of issues.

4          MR. KOZYAK:  Worldwide.  Worldwide, Your Honor.

5          THE COURT:  Well, that's a difficult proposition for

6 the debtor.  It seems to me that if Anderson wants to take that

7 position when so far the class certification is not -- the

8 class is not certified and has never been certified that

9 Anderson can go out with a letter saying, this is what we think

10 the claims will be.  I don't think the debtor has to advocate

11 that position on behalf of Anderson.

12          MR. KOZYAK:  Your Honor, if I misspoke or I was not

13 clear, I am not suggesting for a second that they have to

14 advocate it.  Just as an example, Your Honor, And this happened

15 in the Celotex case.  It happened twice today.  I'm not asking

16 them to say they're advocating that our claims are in excess of

17 $1 billion.  They're advocating that they should be placed at

18 zero.  And they're saying because we think we want to deny

19 liability, we intend to deny liability, they should be at zero.

20          And that means that there's zero probability that we

21 will win on appeal.  And there's zero probability that we will

22 have one claim.

23          Now, in other cases, for instance in the Celotex

24 case, a single problem came up.  We, the PD claimants had

25 asserted that the claims would be over $1 billion.  The

1 property -- the bodily injury people said it would be less than

2 that.  The debtor said, we think they'll be substantial, but we

3 can't estimate it.

4          That would be fine.  You have -- but we believe for

5 adequate -- adequacy, and we needed to raise it -- they should

6 include some statement in there if they lose, that these claims

7 will be substantial, because they will be.

8          THE COURT:  All right.  Is the word substantial

9 sufficient?  Substantial but can't be estimated because at this

10 point, no one knows what the claims will be?

11          MR. KOZYAK:  I believe that would be satisfactory.

12          THE COURT:  Mr. Freedman?

13          MR. FREEDMAN:  Your Honor, the problem with all of

14 this is that Mr. Kozyak is asking the debtors to do something

15 and Anderson is asking the debtors to do something which

16 they're not willing to do themselves.  Their complaints do not

17 state any number.  They have filed complaints which under the

18 rigors of Rule 11 they have not been willing to put down a

19 number for.

20          THE COURT:  None of the claims have an amount?

21          MR. FREEDMAN:  None of these claims that I -- I've

22 only --

23          DEPUTY CLERK:  Speak into the mike, please.

24          MR. FREEDMAN:  Excuse me.  I've only had the chance

25 to go through this document, at least this round, briefly.

1  But, I don't see a single dollar value in anything that's in

2  here.  And if I'm wrong about that, then I missed it, but I

3  don't see anything.  And it certainly doesn't appear in the

4  summary of the claims.

5          What they're basically saying is that it could be all

6  the money in the world and we should put that into the

7  disclosure statement for whatever effect that will have on

8  creditors.  That is simply not appropriate for a disclosure

9  statement.

10          The debtors don't believe that the liability is

11  substantial.  The debtors believe that there is no liability.

12  Anderson is not even putting its own number on what that

13  liability is, they've just simply filed these complaints.

14          So, we think that there is extensive disclosure of

15  the Anderson proceedings.  Anybody that wants to understand

16  what's going on in the Anderson case can read the disclosure

17  statement and understand that.  And I have no problem if

18  Anderson's counsel wants to send out his own letter as an

19  approved -- just a list of communication in connection with the

20  disclosure statement that says whatever they feel that they're

21  ethically permitted to say with respect to those claims.

22          But, it's simply not appropriate for the debtors to

23  be asked to put in even some kind of a reference to potential

24  exposure when that exposure has no brackets to it, that the

25  plaintiff has sought, and what the debtors -- as has been

1  repeatedly the case particularly with these class actions --

2  indicates that it has no belief that it has any liability.  So,

3  I do have a problem with the word substantial for those

4  reasons.

5          THE COURT:  All right.  Mr. Kozyak?

6          MR. KOZYAK:  Your Honor, I do believe that it

7  shouldn't be there.  I do believe that the footnote expanding

8  - - Footnote Number 7, something along the line -- they feel

9  just as strongly about the Department of Justice.  They feel

10  just as strongly about the ZAI claims having no liability.

11          THE COURT:  Oh, but with the Department of Justice,

12  there's a criminal statute that tells them if they're convicted

13  what they're going to be liable for.  If Anderson hasn't even

14  deigned to put in a number somewhere, I don't know how the

15  debtors are going to put in a number.

16          Has Anderson -- have the proofs of claim or the

17  allegations somewhere set a parameter?  If they haven't, I'm

18  not going to force the debtor to make that choice.  Anderson

19  can send out a letter if that's what it thinks, if it's got

20  some number.  I don't see how the debtor can do it if Anderson

21  hasn't.

22          MR. KOZYAK:  Okay.  Then, I'll present a letter to

23  the Court for approval.

24          Now, Your Honor, on the ZAI issue, we asked for one

25  sentence to be included, "The total estimated amount of the ZAI

1  claims and demands are estimated to be blank." We asked them

2  to fill it in.  And the reason we asked them to fill it in,

3  Your Honor, is we believe that it's highly relevant to people

4  who are voting on this plan, the adequacy of information.  And

5  the reason is -- and when we filed our objection to the

6  disclosure statement, it fleshed out --

7           THE COURT:  Wait.  Does Anderson hold claims --

8           MR. KOZYAK:  Yes.

9           THE COURT:  -- in the ZAI class?

10          MR. KOZYAK:  Yes.

11          THE COURT:  Anderson does?

12          MR. KOZYAK:  Yes.

13          THE COURT:  Anderson Memorial Hospital --

14          MR. KOZYAK:  Yes.

15          THE COURT:  -- has a home installation product

16  installed in its hospital attics?

17          MR. SPEIGHTS:  Your Honor, Anderson Memorial Hospital

18  filed a ZAI class claim for the bar date for the State of South

19  Carolina only.  The certification about which we have had

20  multiple discussions included Zonolite Attic Insulation.  So,

21  we filed a class claim by the ZAI bar date.  There has been no

22  objection to that class claim that I am aware of.

23          THE COURT:  For home attic insulation for houses in

24  South Carolina?

25          MR. SPEIGHTS:  For all the buildings in South

1  Carolina with the Zonolite Attic Insulation which presumably

2  are mostly homes if not entirely homes.

3          THE COURT:  Okay.  So, there's a class claim out

4  there that I'm -- I'm sorry, I'm just not aware of it until now

5  -- for South Carolina buildings with ZAI in it?

6          MR. SPEIGHTS:  Yes, Your Honor.

7          THE COURT:  That was filed by Anderson Memorial

8  Hospital?

9          MR. SPEIGHTS:  Yes, Your Honor.

10          THE COURT:  It can be a class -- the hospital can be

11  a class representative for home building products?

12          MR. SPEIGHTS:  Well first of all, Anderson has always

13  claimed for home building products not just Zonolite Attic

14  Insulation.  For example, textures on ceilings and homes.  But

15  --

16          THE COURT:  Yes, but I'm talking about home attic

17  insulation which as I understood it was only used in homes not

18  hospitals.

19          MR. SPEIGHTS:  I understand, Your Honor.  Anderson

20  filed a class -- let's go back to the beginning.  Anderson

21  filed a class on behalf of a certain described set of buildings

22  in South Carolina including homes.  Anderson upon amendment on

23  the complaint included products other than the Monokote-type

24  products, but included Zonolite Attic Insulation.  That was a

25  hotly litigated subject in the South Carolina proceedings,

1 whether Zonolite was in or out.  And Judge Hayes decided

2 Zonolite was in.

3          So, Anderson on behalf of itself and the buildings in

4 South Carolina including homes with Grace's products has a

5 class action.

6          Now, this has never come up to Your Honor --

7          THE COURT:  No, it hasn't.

8          MR. SPEIGHTS:  -- because there was no bar date on

9 ZAI at the time we were visiting most every Tuesday in

10 Pittsburgh.

11          THE COURT:  Okay.

12          MR. SPEIGHTS:  But, we do have that class action and

13 it has not been objected to.

14          THE COURT:  Okay.

15          MR. SPEIGHTS:  Thank you, Your Honor.

16          MR. KOZYAK:  Thank you for allowing my co-counsel to

17 clarify that, Your Honor.

18          THE COURT:  Okay.

19          MR. KOZYAK:  And Your Honor, the point though is the

20 reason this is -- when we pushed this point in our objection,

21 they added in their response that the ZAI opt out because we

22 objected, there was no clarification of what would happen if

23 somebody opted out of the settlement.  Their clarification was,

24 well, if you opt out, you still go back into the fund that they

25 provided for.

1          Well, that is not what's set forth in the papers that

2 are being presented to the Court on the settlement of the ZAI

3 claims.  That is not in there.  And we believe that if -- we

4 know what the numerator is, up to $140 million.  And we believe

5 that it's important for the adequacy of the disclosure

6 statement for the debtors to estimate what the denominator is.

7          We're not here on the hearing on the motion to

8 approve the settlement of the ZAI claims, but it seems to me

9 that settlement -- but it seems to me that there should be an

10 estimate put in there for the ZAI claims.

11          THE COURT:  Okay.  Mr. Freedman?

12          MR. FREEDMAN:  Your Honor --

13          THE COURT:  Can you use a microphone, please?

14          MR. FREEDMAN:  Yes, I apologize.  We're -- the

15 debtors are, I guess, a little bit confused about exactly what

16 is being argued here.  But it would seem to me that the bottom

17 line is this.  There is no basis whether or not Mr. Speights

18 really does have a class claim that really does include ZAI in

19 the settlement class that has been described.  There is simply

20 no basis for coming up with an estimate of what the ZAI

21 liability is.

22          This Court is as familiar as everybody with the

23 record on looking at the amount of the ZAI liability.  And it

24 is simply impossible to come up with a determination of what

25 that liability would be.  We know that from the strong

1  representation of the ZAI class representatives that they

2  assert that there is substantial liability.  But beyond that,

3  there has been no record made as to what that liability could

4  be.  And it provides no value to anybody making an assessment

5  of the -- whether or not to vote for the plan, to know anything

6  about the ZAI matter other than that the debtors have made an

7  agreement to provide a substantial amount of money to pay

8  homeowners who have ZAI in their residences.

9       If Anderson's claims are homeowner claims -- it's

10 hard to figure out how that would be -- then they can be

11 addressed that way.  If Anderson's claims are not homeowner

12 claims and would fall within the class of claims that are

13 covered under Section 7a of class -- 7a of the plan, then

14 they'll be addressed under those procedures.  They filed a

15 proof of claim and those claims will then be addressed by this

16 Court pursuant to the procedures laid out in the PD CMO that

17 was heavily negotiated between the future claimants

18 representative and the debtors, copied -- all of which was

19 copied to Mr. Speights and I believe his counsel.

20      So, the bottom line here is that whether or not they

21 have an issue that they can rightly raise with respect to

22 confirmation of the plan for the treatment of ZAI is something

23 for confirmation.  But putting in a number that states a value

24 for the ZAI is such a hypothetical on this record that it

25 serves no purpose.

1         And again, if Mr. Speights and his counsel want to

2    send out a letter that's approved by this Court that somehow

3    says something about that, then the debtors can't control them

4    coming to the Court to ask for it.  But, that should not be in

5    our disclosure statement.

6         THE COURT:  Well, the class -- the treatment for ZAI

7    is basically three-fold.  I mean, there's an education

8    function.  There's a monitoring function.  And then there's a

9    payment function to the extent that someone at some point is

10   going to have to either remove or renovate or do something that

11   causes the ZAI insulation itself to have to be disturbed.

12        So, the only -- well, all of those may cause some

13   funding issues.  But, the largest decrease in the funding

14   source to the extent that it's ever necessary would be the

15   issue of the removal or renovation.  But, the problem at this

16   point is I haven't seen any estimates from anybody to tell me

17   who or when or how that's likely to happen.

18        So, the difficulty that I'm seeing is, I don't know

19   how anybody's going to make that assessment right now because

20   at least from where I'm sitting I haven't seen any information

21   that's going to tell me what those numbers are.  So, maybe

22   that's coming in the settlement, I don't know.  I haven't seen

23   anything along those lines.  I'm not sure.

24        I don't know what it is that the debtor or the plan

25   proponents can say that's going to assist except that this is

1 the settlement, this is why it's a class.  That's why I thought

2 I was convinced that this was appropriate class treatment

3 because it's very difficult to configure how else to do this

4 type of treatment but for putting it into a class as opposed --

5 I don't mean a plan class, I mean a class -- a Federal Rule of

6 Civil Procedure type of class.

7        So, is there a way to -- I'm happy to put some

8 numbers in if you can do it, but how can you do it?

9        MR. FREEDMAN:  Well, precisely, Your Honor.  And

10 quite frankly, the observations you just made are exactly why

11 ZAI is appropriate for 524g treatment because it is

12 indeterminate as to what that future liability would be.  It

13 wouldn't affect the debtors' ability and there is a settlement

14 which will be voted on by the ZAI claimants under the standards

15 of Section 524b (sic) and 1126.

16        So, the Court will have the ability to approve the

17 plan treatment of ZAI with these very pertinent facts before

18 it.  And your observations are dead on about the uncertainty as

19 to what the actual number could be, which is what 524g is

20 intended to address.

21        With respect to the intersection between the civil

22 procedure class and the bankruptcy class, just to clarify that

23 point, the class representatives have made a motion to certify

24 their class which is going to be heard.  If somebody opts in or

25 out of that, it does not affect the definitions in the plan

1  which include all ZAI claims.  And all ZAI claimants will be
2  treated under the plan regardless whether they opt in or out of
3  the class.

4        MR. KOZYAK:  Your Honor, I'll just follow up on the
5  last point first.  That was not clear at all until the
6  disclosure statement was amended.  That is not included in the
7  settlement papers.  And once -- on the motion on the settlement
8  papers doesn't say anything about the opt out will be
9  restricted to the class in the plan.  And in the settlement
10  papers that are going to be -- that have been filed by the
11  class representatives, they have a provision.  They have said,
12  obviously, that they think that the settlement is fair.  I'm
13  not here to argue that today.  They say that the $140 million
14  that's going to be paid under a certain formula that the
15  Court's well aware of would be adequate.  But, they also --
16  that's based upon a certain number of claims being filed.

17        Then they include a sentence in their papers that'll
18  be presented to the Court later, "Should unexpectedly one
19  million homeowners come forward with the $3,000 removal cost,
20  of course total damages would equal $3 billion."

21        Well, if that happens unexpectedly, they can say
22  that's totally unexpected; they don't think that's going to
23  ever happen.  The amount that those people will get is
24  substantially less than 100 percent.  We believe that that
25  should be -- that there should be an estimate in there.  The

1 chart on the front of the disclosure statement says -- goes

2 through all the claims of people getting paid a 100 cents or

3 whatever.  And on the PD ones, we've already argued.  And on

4 the ZAI ones, they put "unknown".

5          And we believe that it is a substantial number.  And

6 there should be an insertion in there.  They could cut and

7 paste from these two documents and include it.  But not say in

8 the disclosure statement after we press it that ZAI claims are

9 going to be -- if you opt out, you just go right back into the

10 same pot and not include that in the settlement papers.  And

11 that's our point.

12          THE COURT:  Well, okay.  When is the settlement

13 hearing scheduled?

14          MR. KOZYAK:  April 1st.

15          DEPUTY CLERK:  Use the mic when you speak, please.

16          MR. KOZYAK:  My understanding is April 1st.

17          THE COURT:  And -- but the disclosure statement, I

18 think we need to get finalized today because of the service

19 issues.  Here's the problem.

20          MR. KOZYAK:  I think it could be with one sentence.

21          THE COURT:  Well, maybe the sentence has to be for

22 additional information, see the Court's order either approving

23 or disapproving the settlement, because the problem may be that

24 if the settlement is approved, then the numbers can be cut and

25 pasted.  If it isn't approved, then cutting and pasting it will

1 make the disclosure statement inaccurate, potentially.  So,

2 that --

3        MR. KOZYAK:  I think our approach, respectfully, Your

4 Honor, was not one of which had to be -- we suggested a

5 sentence in the disclosure statement saying that the amount of

6 the money -- it could be up to $3 billion.  That's what they

7 said.  I'm not suggesting that that's the number has to be

8 included.

9        THE COURT:  The amount of the money?

10        MR. KOZYAK:  The amount of the ZAI claims.

11        THE COURT:  Claims.

12        MR. KOZYAK:  I'm sorry, I didn't mean to -- and

13 demands.

14        THE COURT:  Well, but that's -- I don't think that's

15 the debtors' estimate though, is it?  That's the estimate

16 that's provided, if I recall, by the ZAI proponents.

17        MR. KOZYAK:  It is.  You're absolutely accurate, Your

18 Honor.

19        THE COURT:  Right.

20        MR. KOZYAK:  But, we believe that the debtor should

21 put a number in there.

22        MR. FREEDMAN:  Your Honor, that's a purely

23 hypothetical number, describing to a class -- consequence it

24 might happen.  There's no basis.  There's absolutely no basis

25 in any record before this Court --

1          DEPUTY CLERK:  Speak into the mic, please.

2          MR. FREEDMAN:  There's no basis in any record before

3   this Court to pick any number that would have any value.  And

4   again, in a disclosure statement which affects all of the

5   classes --

6          THE COURT:  Where is the language in the disclosure

7   statement?  It seems to me that a simple sentence that says

8   that the amount of the distribution will be totally dependent

9   on the number of claims, and the fewer the claims, the higher

10  the distribution.  Because -- I mean, since it's in quotes a

11  pot plan and the distribution's dependent on the number of

12  claims, at this point that's probably the best that can be

13  done.  And that's how I understood the language.  But, if it's

14  not clear, perhaps that's all that needs to be said.

15         Because the difficulty is the debtor hasn't done an

16  estimate.  I don't know that the proponents of the class claim

17  have a class action that is at his point -- they've probably

18  done it, but I haven't heard the numbers yet.  So, I can't

19  opine as to what they may be.  I don't know that the debtor can

20  because I don't know that the debtors' bought off on it.

21         So, I think for accuracy purposes, a simple sentence

22  that says, you know, the distribution's dependent on the number

23  of claims, the higher the number of claims, the lower the

24  distribution.  If that's accurate, probably does it.  Is that

25  accurate?

**J&J COURT TRANSCRIBERS, INC.**

1           MR. FREEDMAN:  From the debtors' standpoint, we would

2    agree with putting in that sentence.

3           THE COURT:  Well, is that --

4           MR. FREEDMAN:  I believe that is accurate.  Like in

5    any limited fund trust, it's a limited fund.  So, that is

6    stating a fact, that has to be accurate.

7           THE COURT:  Okay.  So, that can -- it can state it's

8    a limited fund.  And so, the distribution depends on the number

9    of claims.  The more claims, the less any specific claim it

10   will receive.  And I think that's probably at this stage the

11   best.  And then I think you can -- I think it already does

12   state that there's the motion to approve a class action.  And

13   for more information, you know, you can refer to those

14   documents and cite the document numbers.

15          MR. FREEDMAN:  Your Honor, I'd like to beg the

16   Court's indulgence to take a five minute recess so that we

17   could work out the precise language now and get it approved now

18   because I don't want to leave the hearing without this being

19   resolved.  It doesn't seem to require an exchange of

20   communications that could delay getting the disclosure

21   statement.

22          THE COURT:  Well, that's fine, but can we finish the

23   rest of objections first, and then we'll take a recess so you

24   can work out all of the language to make sure that we get it

25   all done?

41

1        MR. KOZYAK:  Thank you, Your Honor.

2        MR. FREEDMAN:  Your Honor, those are all the

3  objections that are outstanding with respect to the disclosure

4  statement.  There are two additional matters, really three

5  areas that I want to advise the Court about and just bring to

6  the Court's attention.  One has to do with some changes that

7  were made to the plan and to the disclosure statement that were

8  inserted on February 27th.  And they have to do with a

9  particular kind of insurance asset that the debtor has.  This

10 being insurance reimbursement agreements.

11       The personal injury claimants concluded -- that being

12 the PI FCR and the asbestos claimants' committee for personal

13 injury concluded that there was a category -- this category of

14 insurance asset, in order for the trust to realize the full

15 value of it, there needed to be some modifications to the plan

16 that made clear that the debtors were going to be -- excuse me,

17 that the trust was going to be substituted for the debtors and

18 that payment under the trust would have the effect of

19 satisfying the payment obligations under the agreements.

20       And, so, that was added to the plan on February 27th.

21 And disclosure was made about that subsequently.

22       Quite frankly, we don't know whether or not anybody

23 intends to raise an issue about that in the disclosure

24 statement hearing or even in the confirmation hearing, but I

25 did want to bring it to the Court's attention.

1          Secondly, one of the documents that affects the

2  rights of both personal injury asbestos claimants and property

3  damages asbestos claimants is a document known as the

4  inter-creditor agreement.  An extremely complicated document

5  because the different obligations are complicated.  But, it

6  essentially has to do with the way in which those two trusts

7  will manage their interests in what's known as the 524g shares

8  that are going to stand behind the debtors' obligations under

9  the plan.

10          And that inter-creditor agreement was subject to some

11  continuing negotiations after February 27th.  And the debtors

12  have now been advised that the personal injury claimants and

13  the property damages future claimant's representative have come

14  to an agreement on modification to that language so that the

15  document that was filed on February 27th is not precisely the

16  same as the document that we would include in the disclosure

17  statement.  And the disclosure statement description is not

18  precisely the same.

19          I am happy to hand up to the Court, if the Court

20  wants to receive it, because I warn you that -- what's the

21  phrase that I believe Safire used to say, my go, my eyes,

22  play's over.  The changes that are involved here are

23  complicated.  But, having said that, I would like to hand up to

24  the Court a description of the changes as reflected in the

25  disclosure statement and make a representation that the changes

1  to the document track the disclosure statement changes.

2         THE COURT:  All right.  Thank you.

3         MR. FREEDMAN:  And I guess all I would say about this

4  is that my understanding is that -- Mr. Rich can speak for

5  himself -- but, my understanding is that these changes make the

6  document more acceptable from the standpoint of the PD FCR and

7  apparently simplify the document.

8         THE COURT:  At least it's pretty in multiple colors.

9  Okay.

10        MR. FREEDMAN:  If anybody else wants to see it, I've

11 got other copies.

12        So, Your Honor -- and then finally, we do have -- and

13 I had a list of them, but they seem to have -- Your Honor, we

14 do have a number of clean up changes, mostly in the nature of

15 typos or words that were missing.  Frankly, what we have asked

16 the Court is that in the order that we intend to hand up today,

17 this solicitation and approval order, that in that order

18 there's a provision that says that the debtors will be

19 authorized to make the typo type changes, immaterial

20 modifications between the entry of that order and the actual

21 printing of the document as we go through it and we catch

22 things.

23        I can hand up to the Court a list of these minor

24 substantive changes rather than making everybody go through the

25 exercise of hearing me read them.

1        THE COURT:  All right.  Thank you.

2        MR. FREEDMAN:  I think it probably would be a good

3 idea to stop right here before I go into the next step which is

4 discussing the solicitation and approval order and what's going

5 to happen after today in terms of how we intend to print.  And

6 I'd like to describe to the Court what the printing and

7 solicitation process is going to look like so that the Court

8 understands what we'll be doing between now and the first phase

9 of the confirmation hearing.

10       But, before we do that, maybe it's time to hear if

11 anybody has anything to say about what I've just described.

12       THE COURT:  All right.  Anyone have any comments?

13 Yes, sir?

14       MR. SCHIAVONI:  Your Honor, this is Tanc Schiavoni

15 for Arrowood.

16       THE COURT:  Yes, sir?

17       MR. SCHIAVONI:  And I would just ask with regard to

18 the changes on typos and what not going forward, I guess I

19 don't have a problem with that, but I'm assuming the order

20 would provide a requirement that they just give everyone notice

21 of what changes they're making when they make them.

22       THE COURT:  Yes, I think I'd get a list of them

23 submitted by the debtor so that in fact everybody knows.  But,

24 for example the list that was just handed up that are the

25 non-substantive changes, for example -- well, here's one,

                    **J&J COURT TRANSCRIBERS, INC.**

1  Section 7.15f was changed to delete internal cross references

2  to specific subsections within Section 7.15.  And now reads,

3  "Except as otherwise provided in this Section 7.15."

4          Typo on Page 88 of the plan in the last paragraph

5  before Article 8 should be letter J and not romanette ii.

6          Then in the PD trust agreement, however, there is one

7  that says Section 4.6c should include "an officer or employee

8  of the PD trust or an advisor, consultant, or agent of the PD

9  trust, the Z-tak, or the PD FCR" at the end of the first

10  sentence just like in the last sentence.

11          So, they're conforming changes I think to the

12  internal documents.  But I think it would be appropriate to

13  make sure that the debtor circulates the list to make sure that

14  no one has a concern with what's going on.  The list that's

15  been handed up so far does not seem to have anything

16  substantive.  It's just conforming changes.

17          MR. SCHIAVONI:  Judge, I appreciate you reading

18  those, but my concern was more on just the form of the order

19  that's entered to the extent it authorizes the debtor to make

20  non-substantive changes.  It just -- in connection with any

21  changes that they might make on a going forward basis, they

22  would provide us, I take it, you know with a blackline before

23  they make them so we all can agree that they're not

24  substantive.

25          THE COURT:  Right.  That's -- I thought that's what I

1 just said, that I'd make sure the debtor circulates something.

2 Either that or we'll just tell the debtor not to make any.   I

3 mean documents go out with mistakes.   One way or the other,

4 either they can circulate them or they can go out with mistakes

5 and we can always correct them at the plan hearing.

6       MR. CRAIG:  Andrew Craig for Allstate, Your Honor.

7 With respect to the first issue that Mr. Freedman mentioned,

8 the asbestos insurance reimbursement agreements I believe

9 they're called, we do not have a disclosure statement

10 objection, but I did want to make the Court aware that that is

11 a significant plan issue for Allstate and for a number of other

12 insurers.   And I think it's important to note that those

13 agreements are specifically excepted from the insurance

14 neutrality provision in this new draft.   So, that is a

15 significant issue.

16       THE COURT:  Intentionally?

17       MR. CRAIG:  Yes.

18       THE COURT:  Okay.

19       MR. FREEDMAN:  Your Honor, to the extent that the

20 plan operates the way in which I describe, they are excepted

21 from insurance neutrality if that constitutes a violation of

22 insurance neutrality.

23       THE COURT:  Okay.

24       MR. CRAIG:  I'm not here to argue that, obviously,

25 Your Honor.  But, that is -- you can plainly see what the issue

1   is going to be for the insurers with that respect.

2            THE COURT:  Yes, I can.  Thank you.  Anytime those --

3   that combination of words, insurance neutrality, pops up, I got

4   that issue down pat.  Thanks.

5            Okay.  Any other comments before we turn either to

6   schedule -- I know you want a recess, but Mr. Freedman, if you

7   have an order you're handing up, may I take it so that I can

8   read it over the recess?  And then I'll give you a chance to

9   take a look at the language you want to work out.

10           MR. FREEDMAN:  I do, Your Honor.  I'm going to hand

11  up to the Court a blackline and a clean version of the order.

12  This -- I will say that there have been no objections to the

13  solicitation procedures that the debtors proposed.

14           We did work extensively with the general unsecured

15  creditors committee who were extremely helpful in fashioning

16  the procedures to the extent of their constituency and frankly

17  even beyond that.  And also, we worked with the PI committee.

18  They were very helpful in fashioning these procedures.  But, as

19  I said, we have no objection.

20           So, the blackline is against the version that I think

21  was originally filed back in October when we filed our original

22  plan.  And I guess the Court will see the changes are extremely

23  minor.

24           THE COURT:  All right.

25           MR. FREEDMAN:  I apologize, it's the blackline

**J&J COURT TRANSCRIBERS, INC.**

1  against the 27th version which contained only --

2          THE COURT:  The newest one.

3          UNIDENTIFIED ATTORNEY:  Updated from what was

4  previously filed.

5          THE COURT:  From the newest one?

6          UNIDENTIFIED ATTORNEY:  Right.

7          THE COURT:  Okay.  Thank you.  All right.  How much

8  time would you like for recess?

9          MR. FREEDMAN:  I would hope that we could write that

10  simple sentence in about five minutes.

11          THE COURT:  All right.  We'll take a 15 minute

12  recess.

13                        (Recess)

14          DEPUTY CLERK:  All rise.

15          THE COURT:  Please be seated.  Mr. Freedman?

16          MR. FREEDMAN:  Yes, Your Honor.  What we would

17  propose is the following.  There's a chart at the beginning of

18  the disclosure statement which sets forth treatment of each of

19  the classes.  And in the last column on the right hand side of

20  that chart with respect to Class 7(b) U.S. ZAI PD claims,

21  currently the title of that column is, Estimated Percentage

22  Recovery.  There is currently no number in there.  What we

23  would put into that chart is the word -- at that place -- is

24  the word, unknown.  And then we would add a footnote to that

25  word.

1          And the footnote language which we've agreed on has

2  been reviewed with, as I understand it, the asbestos PD

3  committee and also has been assented to by the asbestos PD

4  future claimants representative and is as follows.  "The

5  asbestos PD trust will hold a limited fund for the payment of

6  Class B claimants" -- excuse me, "7(b) claimants which will not

7  exceed $140 million.  References made to the distributions to

8  Class 7(b) claimants described in Section 2.7.3.  The actual

9  amount of distribution that a Class 7(b) claimant will receive

10  could vary depending on the amount of claims made against the

11  asbestos PD trust by persons asserting Class 7(b) claims."

12          THE COURT:  Mr. Kozyak?

13          MR. KOZYAK:  That's fine, Your Honor.  We agreed to

14  it in less than 15 minutes.

15          THE COURT:  All right.  Okay.  That's fine.

16          MR. FREEDMAN:  Thank you.  Well, Your Honor, on that

17  happy note, I think we have no more issues with respect to the

18  disclosure statement.

19          And therefore, I'd like to turn to the order

20  approving disclosure statement, solicitation, and confirmation

21  procedures, confirmation schedule, and related relief which as

22  I said has not been the subject of any --

23          THE COURT:  Excuse me.

24          MR. FREEDMAN:  -- which has -- Your Honor, which has

25  not been the subject of any objection.  Given that, I'd kind of

1  like to walk you through -- the Court through in kind of a

2  20,000 foot level what's going to happen next and give the

3  Court an idea of the magnitude, frankly, of what's going to

4  happen next because as the Court well knows, this is an

5  extremely complicated plan.  And the solicitation process

6  frankly is one that has been given quite a lot of thought by a

7  number of parties and is not simple in and of itself.

8           So, were the Court to enter the order as proposed

9  today or tomorrow, then the voting record date by the terms of

10 that order would be March 13th.  Two business days from the

11 disclosure statement order.

12          The debtors would need until 21 days from the entry

13 of the order for the disclosure statement to be mailed.  And

14 I'll just -- we may well be able to get it out sooner than

15 that, but I'll describe to the Court the magnitude of what's

16 involved here.  And we think that 21 days is an appropriate

17 amount of time to allow us to do that mailing.

18          And the publication of the confirmation hearing would

19 be by April 25th which would be 25 days from the entry --

20 excuse me, 25 days from the mailing.  The mailing actually

21 would be on March 31st, no later than March 31st.

22          The voting deadline under that schedule would be May

23 20th.  The plan objection deadline would be May 20th.  That

24 actually is a slight modification in certain claimants' favor

25 from what the plan confirmation CMO says.  The plan

1   confirmation CMO said that Phase II objections were going to be

2   due on May 20th and Phase I objections were going to be due --

3          MS. BAER:  May 15th.

4          MR. FREEDMAN:  -- May 15th.  We thought that it made

5   no sense to split those up, so we moved them both to May 20th.

6   The plan proponents trial brief for Phase I would be May 29th.

7   The plan proponents trial brief for Phase II would be August

8   7th.  and the confirmation hearing, first phase, would start on

9   June 22nd, 2009 because that confirmation hearing, as the Court

10  may recall, will address the issues of insurance neutrality and

11  whether Class 9 is impaired.  And presumably by that time, we'd

12  have the benefit of the Court's order on the default interest

13  to inform how we proceed forward on that point.

14         Then, all of that would mean that the length of the

15  solicitation period for this plan would be 50 days from -- that

16  is 50 days from a mailing starting on March 31st.  The debtors

17  will strive to get the mailing out sooner.

18         To understand just a little bit of background of

19  what's involved here, the order permits the debtors to mail out

20  the plan in two formats.  One, in CD ROMs and to send out a

21  package of CD ROMs.  And secondly to send out packages of

22  printed documents.  The debtors intend to do the bulk of the

23  mailing by way of CD ROM, but if somebody -- and there'll be a

24  clear notice to this effect -- wants to receive a copy of the

25  plan in a hardcopy, they'll be able to request that.  And the

1 CD ROM will be in a standard Adobe format, readable on both Mac

2 and Windows, and with an instruction sheet so that people can

3 get it.  This, we believe, it's a device that's been used in a

4 number of other cases, substantially reduces the mailing costs

5 and to some extent the printing cost for the project.

6       So, Your Honor, the number of CD ROMs that the

7 debtors anticipate mailing is 48,000.  That includes 20

8 different categories of parties who are entitled to receive

9 this, that is we've structured the notice to have to address

10 claims that are objected to, claims that aren't objected to,

11 claims in impaired classes, and unimpaired classes.  I can go

12 through our count for each of those, but it's essentially 20

13 different categories of people, each of whom will receive a CD

14 ROM and hardcopy voting instructions or solicitation

15 instructions that address their particular case.  That's quite

16 frankly why a 21-day period to fulfil this mailing is more than

17 appropriate.

18       In addition, we anticipate sending out 10,600

19 harcopies to six other categories of claimants including the

20 Class 3 employee claims and so forth who we really do not

21 believe require getting the CD ROM.

22       That pretty much describes the process that we intend

23 to go through.  And with that, I'd ask the Court if you have

24 any questions obviously on the solicitation procedures order,

25 we'd be glad to entertain them, but otherwise, if we could ask

1  the Court to enter that order --

2          THE COURT:  It looks fine, unless someone has a

3  comment or question or concern.  Anyone?  Anyone on the phone

4  want to be heard on the solicitation order or the approval of

5  the disclosure statement?  What about the question as to making

6  the nonmaterial modifications?

7          MR. FREEDMAN:  Well, Your Honor, what we had frankly

8  anticipated doing because we want to get these things printed

9  so we can get them mailed is using the flexibility that was

10 built into the order to make changes of immaterial

11 modifications.  And then when we actually do the filing, we

12 will file at that time a copy -- a blackline of any immaterial

13 modifications.  We had not anticipated needing to go back to

14 other parties and seeking their assent so that they agree that

15 a change is material or immaterial.

16         So, quite frankly, if that's the Court's instruction,

17 then we would -- in order to do this, I think, we probably

18 would not make any further changes and just send out the

19 document.  If there's a typo, it will go out with the typo.

20         THE COURT:  Okay.  I think with respect to typos,

21 frankly, if you catch one, you can make a typo.  I think with

22 respect to adding or deleting actual phrases, things like the

23 one that I read where you caught a mistake where there was a

24 reference where the Paragraph J should have been an ii, for

25 example, something like that, I don't think is a problem.  If

1 you're actually adding phrases or subtracting phrases, I think

2 those probably really do need the agreement of the entities

3 that would be affected by those changes.

4          So, to the extent that it is really just a typo, I

5 don't think you need to circulate those in advance.  But, if

6 you're going to add or delete a phrase of any type, I think you

7 do need to get the consent.   So --

8          MR. FREEDMAN:  Well, Your Honor, we understand the

9 language in the order that it deals with our flexibility with

10 respect to immaterial changes to refer to typos.  And we will

11 not make any other changes.  We do have flexibility under the

12 Bankruptcy Code to make modifications to the plan.

13          THE COURT:  Yes.

14          MR. FREEDMAN:  In any event, we'll use that procedure

15 if it's necessary during the solicitation process to offer up

16 changes to the plan that are more than typos.  But, I think the

17 order as it currently stands is adequate because we will not

18 use the authority, and I don't read the authority, to address

19 anything other than typos.

20          THE COURT:  Okay.  The -- I read the blackline

21 version.  I didn't attempt to read the non-blackline version in

22 the 15 minute break.  Is it ready to be signed or do you need

23 some additional changes based on the discussion in court today?

24          MR. FREEDMAN:  The order is ready to be signed

25 because it makes reference to the disclosure statement as filed

1  on the 27th with the changes as announced to the Court during

2  this hearing.  And I think that's sufficient to allow us to

3  proceed forward.

4       THE COURT:  Okay.  So, when are you going to actually

5  be filing the corrected document, when you get it ready to be

6  mailed out?

7       MR. FREEDMAN:  Yes.  That would be our intention.

8       THE COURT:  Okay.  I've signed the order that

9  approves the disclosure statement and the solicitation and

10 confirmation procedures.  I'll get it docketed as soon as I'm

11 back in chambers.  And I will understand that it refers to the

12 corrected document that will actually be filed along with the

13 blackline when the document is ready for printing and

14 publication.

15      MR. FREEDMAN:  Thank you, Your Honor.

16      THE COURT:  Okay.  Anything else today?

17      MS. BAER:  Your Honor, I have one order to get

18 entered.  Your Honor, when we were here on February 27th, there

19 was an objection filed by an individual named Wendy MacLean

20 with respect to ZAI.

21      THE COURT:  Yes.

22      MS. BAER  And that had been resolved and we needed to

23 hand up an order.  This order has been agreed to between the

24 debtors and Mr. Westbrook and I'd like to hand it up for

25 signature.

1          THE COURT:  All right.  Thank you.  Do you remember
2  -- this doesn't have what agenda number this referred to.  Do
3  you remember?

4          MS. BAER:  It's a good question.

5          THE COURT:  Seven?

6          MS. BAER:  It does refer to the docket number of the
7  pro se letter.  But, no I'd need to go back and look at the
8  agenda.

9          THE COURT:  All right.  We'll figure it out.

10          UNIDENTIFIED SPEAKER:  (Inaudible).

11          MS. BAER:  Yes, yes.

12          THE COURT:  Okay.  All right.  That order is entered,
13  as well.  So, we'll terminate that proceeding on the docket,
14  too.

15          MS. BAER:  Thank you, Your Honor.

16          THE COURT:  Okay.  Thank you.  We're adjourned.

17          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

18                    * * * * *

19

20

21

22

23

24

25

# C E R T I F I C A T I O N

I, VIDHYA VEERAPPAN, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Vidhya Veerappan          DATE:  March 16, 2009
VIDHYA VEERAPPAN
J&J COURT TRANSCRIBERS, INC.