UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                  .      Case No. 01-01139(JKF)
                        .
                        .
W.R. GRACE & CO., at al.,.
                        .      USX Tower - 54th Floor
                        .      600 Grant Street
                        .      Pittsburgh, PA 15219
                        .
          Debtors.      .      December 17, 2008
. . . . . . . . . . . . . ..   2:48 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

For the Debtors:             Kirkland & Ellis, LLP
                             By:  THEODORE L. FREEDMAN, ESQ.
                             Citigroup Center
                             153 East 53rd Street
                             New York, NY 10022-4611


For the Debtors:             Kirkland & Ellis, LLP
                             By:  DAVID M. BERNICK, ESQ.
                                  JANET S. BAER, ESQ.
                             200 East Randolph Drive
                             Chicago, IL 60601


For the Debtors:             Pachulski, Stang, Ziehl, Young,
                               Jones & Weintraub, P.C.
                             By:  JAMES E. O'NEILL, ESQ.
                             919 Market Street, 16th Floor
                             P.O. Box 8705
                             Wilmington, DE 19899


Audio Operator:              Janet Heller


Proceedings recorded by electronic sound recording, transcript
produced by transcription service
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311   Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (cont.):

For the Asbestos Claimants        Caplin & Drysdale
Committee:                        By:  PETER VAN N. LOCKWOOD, ESQ.
                                       WALTER B. SLOCOMBE, ESQ.
                                       NATHAN D. FINCH, ESQ.
                                  1 Thomas Circle, N.W.
                                  Washington, DC 20005


For the Future Claimants          Orrick, Herrington & Sutcliffe
Representative:                      LLP
                                  By:  DEBRA FELDER, ESQ.
                                       RICHARD H. WYRON, ESQ.
                                       ROGER FRANKEL, ESQ.
                                  Washington Harbour
                                  3050 K. Street, N.W.
                                  Washington, DC 20007


For Official Committee            Bilzin, Sumberg, Baena, Price &
of Asbestos Property                Axelrod, LLP
Damage Claimants:                 By:  JAY M. SAKALO, ESQ.
                                  Wachovia Financial Center
                                  200 South Biscayne Blvd.,
                                    Suite 2500
                                  Miami, FL 33131


For the Asbestos                  Campbell & Levine, LLC
Personal Injury                   By:  KATHLEEN C. DAVIS, ESQ.
Committee:                        800 N. King Street, Suite 300
                                  Wilmington, DE 19801


For Federal Insurance             Cozen O'Connor
Company:                          By:  JACOB C. COHN, ESQ.
                                  1900 Market Street
                                  Philadelphia, PA 19103


For Federal Insurance             Cozen O'Connor
Company:                          By:  JEFF WAXMAN, ESQ.
                                  Chase Manhattan Centre
                                  1201 N. Market St., Suite 1400
                                  Wilmington, DE 19801


For Ford, Marrin,                 Ford, Marrin, Esposito, Witmeyer
Esposito, Witmeyer &                & Gleser, LLP
Gleser, LLP:                      By:  SHAYNE W. SPENCER, ESQ.
                                  Wall Street Plaza, 23rd Floor
                                  New York, NY 10005-1875


**J&J COURT TRANSCRIBERS, INC.**

TELEPHONIC APPEARANCES (cont.):

For Official Committee          Anderson, Kill & Olick
of Asbestos:                    By:  ROBERT M. HORKOVICH, ESQ.
                                1251 Avenue of the Americas
                                New York, NY 10020

For Fireman's Fund              Stevens & Lee, P.C.
Insurance Company:              By:  MARNIE SIMON, ESQ.
                                1818 Market Street, 29th Floor
                                Philadelphia, PA 19103

For Fireman's Fund              Stevens & Lee, P.C.
Insurance Company:              By:  JOHN D. DEMMY, ESQ.
                                1105 North Market Street, 7th Fl.
                                Wilmington, DE 19801

For BNSF Railway                Pepper Hamilton, LLP
Company:                        By:  LINDA J. CASEY, ESQ.
                                3000 Two Logan Square
                                18th & Arch Streets
                                Philadelphia, PA 19103-2799

For Travelers Casualty          Simpson, Thacher & Bartlett
Insurance:                      By:  KAREN E. ABRAVANEL, ESQ.
                                425 Lexington Avenue
                                New York, NY 10017-3954

For Creditor MMWR Firms         Montgomery, McCracken, Walker
& Grace Certain Cancer          By:  NATALIE D. RAMSEY, ESQ.
Claimants:                      123 South Broad Street
                                Philadelphia, PA 19109-1030

For Royale Belge:               Mendes & Mount
                                By:  ANNA NEWSOM, ESQ.
                                760 Seventh Avenue
                                New York, NY 10019-6829

For One Beacon & Seaton         Drinker, Biddle & Reath
Insurance:                      By:  MICHAEL F. BROWN, ESQ.
                                One Logan Square
                                18th & Logan Streets
                                Philadelphia, PA 19103-6996

For One Beacon & Seaton         Drinker, Biddle & Reath
Insurance:                      By:  WARREN T. PRATT, ESQ.
                                1100 North Market Street
                                Wilmington, DE 19801-1254

**J&J COURT TRANSCRIBERS, INC.**

TELEPHONE APPEARANCES (cont.):

For Debtor W.R. Grace: W.R. Grace & Co.
 By:  WILLIAM SPARKS, ESQ.

For Allstate Insurance Cuyler Burk, LLP
Company: By:  EDGAR M. WHITING, ESQ.
 Parsippany Corporate Center
 Four Century Drive, 3rd Floor
 Parsippany, NJ 07054

For National Union Fire Zeichner, Ellman & Krause, LLP
Insurance Company: By:  MICHAEL DAVIS, ESQ.
  ROBERT GUTTMANN, ESQ.
 575 Lexington Avenue
 New York, NY 10022

For Scotts Company: Vorys, Sater, Seymour & Pease LLP
 By:  TIFFANY STRELOW COBB, ESQ.
 52 East Gay Street
 Columbus, OH 43216-1008

For Various Claimant Stutzman, Bromberg, Esserman
Firms: By:  DAVID A. KLINGLER, ESQ.
  SANDER L. ESSERMAN, ESQ.
 2323 Bryan Street, Suite 2200
 Dallas, TX 75201

For CNA: Goodwin Procter, LLP
 By:  DANIEL M. GLOSBAND, ESQ.
 Exchange Place, 53 State Street
 Boston, MA 02109

For State of Montana Womble, Carlyle, Sandridge & Rice
Dept. of Environmental By:  FRANCIS A. MONACO, ESQ.
Quality: 222 Delaware Avenue, 15th Floor
 Wilmington, DE 19801

For Co-Counsel to Cohn, Whitesell & Goldberg, LLP
Libby Claimants: By:  DANIEL C. COHN, ESQ.
  CHRISTOPHER M. CANDON, ESQ.
 101 Arch Street
 Boston, MA 02110

For Ad Hoc Committee Dewey & LeBoeuf, LLP
of Equity Security Holders: By:  JENNIFER WHITENER, ESQ.
 1301 Avenue of the Americas
 New York, NY 10019-6092

**J&J COURT TRANSCRIBERS, INC.**

TELEPHONIC APPEARANCES (cont.):

For Official Committee        Kramer, Levin, Naftalis & Frankel
of Equity Holders:            By:  DAVID E. BLABEY, JR., ESQ.
                                   DOUGLAS H. MANNAL, ESQ.
                              1177 Avenue of the Americas
                              New York, NY 10036

For Hartford Financial        Wilmer, Cutler, Pickering, Hale
Services Group, Inc.:         By:  MELANIE J. DRITZ, ESQ.
                              399 Park Avenue
                              New York, NY 10022

For Maryland Casualty Co.:    Eckert, Seamans, Cherin & Mellott
                              By:  EDWARD H. LONGOSZ, ESQ.
                                   LAURA G. STOVER, ESQ.
                              1747 Pennsylvania Avenue NW
                              Washington, DC 20006-4604

For Maryland Casualty Co.:    Connolly, Bove, Lodge & Hutz
                              By:  JEFFREY C. WISLER, ESQ.
                              The Nemours Building
                              1007 North Orange Street
                              Wilmington, DE 19899

For Babson Capital Mgmt.:     Babson Capital Management, Inc.
                              By:  MARTI MURRAY, ESQ.

For Official Committee        Stroock & Stroock & Lavan, LLP
of Unsecured Creditors:       By:  ARLENE G. KRIEGER, ESQ.
                              180 Maiden Lane
                              New York, NY 10038-4982

APPEARANCES IN COURT:

For Arrowwood:                O'Melveny & Myers, LLP
                              By:  TANCRED SCHIAVONI, ESQ.
                              Times Square Tower
                              7 Times Square
                              New York, NY 10036


                              - - -


J&J COURT TRANSCRIBERS, INC.

1          THE COURT:  This is the matter of W.R. Grace

2    bankruptcy number 01-1139.  This is the hearing that was

3    continued from Monday.

4          The list of participants I have by phone, I do not

5    know if this is complete since people apparently did not sign

6    up until the last minute, so I'll read what I have.

7          Francis Monaco, David Klingler, Karen Abravanel,

8    James O'Neill, Sandy Esserman, David -- I'm sorry -- Debra

9    Felder, Daniel Glosband, Jennifer Whitener, Daniel Cohn,

10   Christopher Candon, David Blabey, Michael Brown, Michael Davis,

11   Theodore Freedman, Jacob Cohn, Melanie Dritz, Marnie Simon,

12   Peter Lockwood, Edward Longosz, Linda Casey, Natalie Ramsey,

13   Jeffrey Wisler, Laura Stover, Walter Slocombe, Jay Sakalo,

14   Janet Baer, Anna Newsom, Robert Guttmann, Nathan Finch, Shayne

15   Spencer, Richard Wyron, Roger Frankel, Tiffany Cobb, David

16   Bernick, Warren Pratt, Douglas Mannal, William Sparks, Robert

17   Horkovich, Edgar Whiting, Jeff Waxman, John Demmy, Kathleen

18   Davis and Marti Murray.  And I believe Arlene Krieger is on the

19   line as well.

20         MS. KRIEGER:  Yes, Your Honor, I am.

21         THE COURT:  I'll take entries here in Pittsburgh.

22   Good afternoon.

23         MR. SCHIAVONI:  Tancred Schiavoni, Your Honor, from

24   O'Melveny for Century Indemnity.

25         THE COURT:  I don't think your microphone's on, Mr.

**J&J COURT TRANSCRIBERS, INC.**

1  Schiavoni.

2         MR. SCHIAVONI:  Oh, sorry.  Tancred Schiavoni for

3  it's Arrowwood actually from O'Melveny & Myers, Your Honor.

4         THE COURT:  Okay.  All right.  I'm not sure where you

5  stand now, Mr. Bernick?

6         MR. BERNICK:  Yes, Your Honor.  I'm here with Jan

7  Baer so if it's okay I'll keep you on the speaker phone.

8         THE COURT:  Actually it isn't, Mr. Bernick, because

9  you fade in and out.

10         MR. BERNICK:  Okay.  There you go.

11         THE COURT:  I need you to pick up.

12         MR. BERNICK:  There you go.  Where things were left I

13  think mostly related to the protective order and then I know

14  that certain of the carriers, one or two, re-raised the issue

15  based under the CMO.

16         I know there is considerable discussion surrounding

17  some language changes to the disclosure statement plan that

18  came out of some of the objections made previously by the

19  carriers, but those -- I think that those are not really up for

20  discussion today, rather we've got to finalize our proposed

21  language changes to the disclosure statement plan and bring

22  those up in connection with the hearings that are scheduled to

23  take place in January.

24         So I think the only real carryover for today related

25  to the confidential information and the protective order issues

1 and then -- and the ripple effect that the carriers believe

2 they have with respect to the CMO.

3        Insofar as the protective orders are concerned, Ms.

4 Baer has worked very hard to incorporate any and all

5 suggestions that were made by the carriers with respect to the

6 protective order and a redraft of the protective order has been

7 circulated.

8        So I guess issue one is whether there are any

9 remaining issues that the carriers want to raise with respect

10 to the protective order recognizing that of course they want to

11 preserve any and all objections that they previously have made.

12        And then the Libby folks, we're going to have a --

13 Libby folks proposed different, some different confidentiality

14 issues and some different relevance issues.  But it's my

15 understanding is that where we are today with respect to the

16 Libby claimants is that they're prepared to sign on to the

17 same, essentially the same protective order, but simply as a

18 weigh station so that they can get the process going because we

19 do need to have further discussions with the Libby people.

20        So we have a protective order that's been circulated

21 for Libby that is the same in substance as the protective order

22 for the carriers.

23        My understanding is that Mr. Cohn doesn't have any

24 objection to that.  And my further understanding is that he's

25 got a scheduling issue involving a family matter and would like

 1  to get out of Dodge, so maybe that's the first thing that we

 2  can take up is Mr. Cohn's position with respect to the revised

 3  protective order, then we can go to the insurers and the

 4  protective order and then the insurers on the CMO.

 5          THE COURT:  All right.  Mr. Cohn?

 6          MR. COHN:  Yes, Your Honor.  Can you hear me okay?

 7          THE COURT:  Yes, sir.

 8          MR. COHN:  Okay.  Terrific.  This is Daniel Cohn for

 9  the Libby claimants.  We have been in extensive discussions

10  with not just the plan proponent, but also with Turton, a

11  personal injury law firm that has an interest in the privacy

12  issues that are raised by the information that the Libby

13  claimants have been seeking.

14          THE COURT:  Mr. Cohn, I'm sorry, you're kind of

15  muffled.  Are you on a speaker phone?  Mr. Cohn?

16          THE OPERATOR:  Actually, Your Honor, this is the

17  court call operator.  Obviously he just disconnected so he must

18  have been trying to do something.  I'm sure he'll be dialing

19  back in shortly.

20          THE COURT:  Okay.

21          MR. BERNICK:  As soon as he realizes that he got cut

22  off.

23                      (Laughter)

24                      (Pause)

25          THE OPERATOR:  Mr. Cohn's line is now back in there,

1  Your Honor.

2           THE COURT:  Thank you very much.  Okay, Mr. Cohn, we

3  lost you.  I'm sorry.

4           MR. COHN:  Well, I apologize, Your Honor.  I'm in a

5  truly obscure part of central Massachusetts and I'm amazed that

6  we have cell service at all.  I hope I can be heard.

7           THE COURT:  It's a little difficult but okay, go

8  ahead because these phones only work basically when people are

9  on a land line and holding onto the receivers, but okay, let's

10 try it.

11          MR. COHN:  All right.  Well, thank you, Your Honor.

12 We are proceeding by consent on a part of what we have

13 requested, namely, Grace's pre-petition case management system

14 database.

15          As to that we circulated a proposed protective order

16 and that as Mr. Bernick just said is very similar to the one

17 that the insurers are dealing with.

18          And so then that has drawn no objections, Your Honor,

19 and as to that we would ask that it be entered today or as soon

20 as is feasible.  We did email it to you, but I know you've been

21 getting a lot of emails and I'm not sure whether you have it in

22 front of you.

23          THE CLERK:  The revised one?

24          THE COURT:  No, this is the one -- the revised one

25 that I have is the one from the insurers.  Let me see.  I don't

1  think the other one -- I don't -- here's the one for Libby.

2  Okay.  I have the one for Libby, too.

3          MR. COHN:  That's good, Your Honor.  So I believe

4  that there's no objection to this one which deals only with the

5  Grace case management system database.  And we would ask if

6  there are no objections that if you don't have any concerns

7  that that order be entered.

8          THE COURT:  Okay.  I haven't even had a chance to see

9  these, Mr. Cohn.  I've been in court all day literally so I

10  think that what I will do at this point is enter these orders

11  so that the parties can get started.

12          I'll read them tonight.  If I have some concern, I'll

13  let you know about it.  But at this point if the parties are

14  content with the form of the order so that you can get started

15  with discovery, frankly, I don't think I'm going to interfere

16  with your discovery actions because I want you to get started

17  so that there is not a holdup later.  And if I think that some

18  change needs to be made, then I think I'll just contact Ms.

19  Baer and have her put something on the next omnibus agenda so

20  we can address it.  But I don't see any reason at this point if

21  the parties are content with it that I'll have some objection

22  to it.

23          MR. MONACO:  Your Honor, this is Frank Monaco.  Could

24  I be heard on this matter?

25          THE COURT:  Yes, sir.

**J&J COURT TRANSCRIBERS, INC.**

1      MR. MONACO:  Your Honor, for the record Frank Monaco

2 for the State of Montana.  Your Honor, it was my understanding

3 based on what was said in court and conversations or email

4 exchanges I've had with debtor's counsel that Montana was also

5 going to be included in the Libby claimant order just as it was

6 with the insurers.

7      Now if debtor's counsel represents to me and the

8 Court that the information sought by the insurers in Paragraph

9 1 covers the information sought by the Libby claimants in their

10 Paragraph 1 of their order, then there is no reason for Montana

11 to be part of this.

12      MR. BERNICK:  There is none because whatever is in

13 the Libby order -- the Libby order covered the, at this point

14 just the CMS database.  So -- and that's the other one. the

15 other one.

16      MR. MONACO:  Okay.  So --

17      MR. BERNICK:  So you're okay.

18      MR. MONACO:  Okay.  All right.  With that, Your

19 Honor, then I don't need to be part of that order then.

20      MS. RAMSEY:  Your Honor, this is Natalie Ramsey on

21 behalf of certain of the personal injury law firms.  There was

22 one change.  I have no objection to this order, but I just want

23 the record to be clear.

24      There was one change that made it into the insurer,

25 State of Montana order, that did not make it into the Libby

**J&J COURT TRANSCRIBERS, INC.**

1 claimants' motion, and I think it's self evident but for the --

2 in an abundance of caution I want to make it clear.  And that

3 is there is a provision that allows the Libby claimants to seek

4 additional discovery and says that this does not prohibit them

5 from doing that and we had added a footnote in the other order

6 that says it also does not in any way adversely affect the

7 rights of the parties against whom that discovery is sought to

8 object or otherwise oppose it.

9         And as I said I think that's clear, but as long as

10 the record is clear that that is also the case, that our rights

11 to oppose such additional discovery also are not adversely

12 impacted by this.

13         I think I'm comfortable that that doesn't have to

14 actually be in the form of order itself, but I would like the

15 Libby claimants to confirm that.

16         MR. COHN:  My feeling is that that's certainly the

17 case.  And if you would feel more comfortable in order to get

18 this thing going, Jan, I'm sure, could just drop a line to you

19 to that effect.

20         MS. RAMSEY:  If the parties just agree on the record

21 as far as I'm concerned right now, both the Libby claimants and

22 the plan proponents, I'm comfortable with the order being

23 entered in its current form so that we don't have additional

24 delay.

25         MR. COHN:  Grace certainly agrees.

**J&J COURT TRANSCRIBERS, INC.**

1              THE COURT:  Mr. --

2              MR. COHN:  On behalf of the Libby claimants, Your

3  Honor, I agree.

4              THE COURT:  All right.  Do all plan proponents -- is

5  Mr. Bernick speaking for all plan proponents?

6              MR. FRANKEL:  Your Honor, this is Roger Frankel for

7  the PIFCR.  We agree.

8              THE COURT:  Anybody there for the Asbestos Creditors

9  Committee?  All right.  Well, there's no one there but where

10 does it belong in this order?  I'll simply interlineate it.

11             MS. RAMSEY:  I don't have that.  Jan, do you have it

12 in front of you?

13             MR. BERNICK:  Well, where does that language belong

14 in the order?  Jan's looking for it, Your Honor.

15             THE COURT:  Well --

16             MR. FINCH:  Your Honor, this is Nathan Finch for the

17 Asbestos Claimants Committee.  We agree to the order as well.

18             MR. BERNICK:  That's where it belongs in Paragraph

19 10?

20             MS. BAER:  Paragraph 10.  End of the second to last

21 sentence.

22             MR. BERNICK:  Jan says it's in Paragraph 10.

23             THE COURT:  Ten.  Yes, that's what I was looking too.

24             MR. BERNICK:  The end of the second to last sentence

25 is where I guess it would belong.  Is that right?  Yes.

1        THE COURT:  Why don't I simply say in the sentence in

2   Paragraph 10 that says, "Further nothing contained herein shall

3   prohibit Libby counsel from seeking relief..." oh wait -- "...

4   in the bankruptcy court and/or from raising objections."  Oh

5   that's the designation of documents.  That's not the right

6   paragraph.  Sorry.

7        Here it is.  "Nothing contained herein shall prohibit

8   Libby counsel from requesting a production or disclosure of

9   confidential information in accordance with the Federal Rules

10  of Civil Procedure, Federal Rules of Bankruptcy Procedure or

11  any state rules of civil procedure in connection with these

12  Chapter 11 cases or in any other legal proceeding."

13       Why don't I just insert, "Nothing contained herein

14  shall prohibit Libby counsel from requesting..." and insert

15  right there, "... or opposing parties from opposing?"

16       MS. RAMSEY:  That's correct, Your Honor, except that

17  I think that's not the right sentence.  It's the -- the

18  sentence that we were looking to was the one that prohibited --

19  that said, "Nnothing contained herein shall prohibit them from

20  requesting the production of disclosure of information or

21  documents."

22       THE COURT:  Right.  I thought that's the sentence I

23  was reading.

24       MS. RAMSEY:  Oh, is it?  I'm sorry.  I thought you

25  were reading the preceding sentence.  That's the next to last

**J&J COURT TRANSCRIBERS, INC.**

1  sentence in that paragraph?

2        THE COURT:  I thought that's what I was reading.

3  Sure looks like it.  It's a long sentence, but I think that's

4  the one I'm reading.

5        It starts, "Further, nothing contained herein shall

6  prohibit Libby counsel from requesting the production or

7  disclosure of confidential information."  Is that the one

8  you're talking about.

9        MS. RAMSEY:  Just a moment, Your Honor.

10        THE COURT:  That's the -- there are only three

11  sentences in the paragraph and that's the middle sentence.

12        MS. RAMSEY:  I'm sorry.  I have the insurer order in

13  front of me.  I'm just about to get to the paragraph in the

14  Libby order.

15        THE COURT:  I'm sorry.  There are four sentences in

16  the order.  I apologize.  I'm reading the third one.

17        MS. RAMSEY:  Yes, Your Honor, that is the correct

18  sentence.

19        THE COURT:  Okay.  So, if I say, "Nothing contained

20  herein shall prohibit Libby counsel from requesting or opposing

21  parties from opposing the production or disclosure," does that

22  work?

23        And the fourth sentence can say, "Nothing contained

24  shall prohibit Libby counsel from seeking relief," can say,

25  "Shall prohibit Libby counsel or opposing counsel from opposing

1  relief."

2       And I think that should cover everything.  Is that

3  okay based on the agreement of counsel?

4       MS. RAMSEY:  Yes, Your Honor.  Actually I apologize

5  but this order is slightly different in that paragraph than the

6  insurer order.  And where I also see -- would like such

7  language entered if we're changing it is in footnote 3 on --

8  I'm looking for the page number -- Page 2, which talks

9  specifically about the fact that this order is without

10 prejudice of the Libby claimants' right to seek additional

11 information through written discovery.

12      THE COURT:  Oh, okay.  I'll just add, "Libby's

13 counsel's ability to seek or opposing..."

14      MS. RAMSEY:  -- parties.

15      THE COURT:  "... parties' ability to oppose requests

16 for additional..."

17      MS. RAMSEY:  Thank you, Your Honor.

18      THE COURT:  Okay?

19      MS. RAMSEY:  Yes.

20      THE COURT:  All right.

21      MR. COHN:  Now, Your Honor, all three of those

22 changes are satisfactory to the Libby claimants.

23      THE COURT:  Okay, Mr. Cohn.  And the plan proponents

24 as well?

25      MR. BERNICK:  So far as Grace is concerned, yes.

1          MR. FINCH:  So far as the ACC is concerned yes, Your

2    Honor.

3          THE COURT:  Mr. Frankel?

4          MR. FRANKEL:  Yes, Your Honor, those changes are fine

5    with the FCR.

6          THE COURT:  Okay.  Any other changes necessary to the

7    Libby order?

8          MR. FINCH:  Your Honor, there is a scheduling issue

9    with respect to this and I don't know if Mr. Cohn wants to

10   raise it but I will.

11         Under the current version of the case management

12   order there are dates and deadlines already in the order that

13   would require the Libby claimants to tee up by motion discovery

14   that they want from relating to individual claimants or law

15   firms.  And it looks like the information they're seeking from

16   the debtor that was produced in the estimation case is the same

17   type if not the identical type of information that they want.

18         And it would seem to me that rather than slow down

19   the process, that the Libby claimants be required to tee up

20   those issues all at once, i.e. put a document request on the

21   debtor and file a motion to compel against the debtor to

22   produce the additional information that they're not getting

23   pursuant to this with the parties having the right -- any

24   interested parties having the right to respond to that by some

25   date certain.  And interested parties would include obviously

1 more than just the debtor and the plan proponents.  It would

2 have to include every individual claimant law firm that

3 produced information pursuant to the questionnaire process and

4 then that could all be heard simultaneous.

5        MR. COHN:  Yes, Your Honor, I did want to report that

6 in discussions with the debtors and also with the asbestos

7 personal injury law firms that we did agree on some deadlines

8 and on a process for that motion to be brought.

9        We essentially agreed to use the same deadlines that

10 are already in place for any dispute that might arise

11 concerning the other issues we've already talked about.

12        So that would be that we would need to file a motion

13 on December 29th seeking to compel the debtors to produce the

14 information that we're seeking.  And then January 7th would be

15 the deadline for any opposing parties to oppose.  And the

16 matter would be heard then on January 14th at 9:00 which is the

17 same time scheduled as I said already for any Libby related

18 discovery disputes with asbestos personal injury law firms.

19        So we would all get onto the same track and we would

20 hopefully on January 14th get your decision as to the remaining

21 items that we are seeking and that seem to be perhaps opposed

22 to some extent by the asbestos personal injury law firms.

23        And then I would just add that Grace has agreed to

24 help us with the service issue to make sure that we serve

25 everybody that's known to Grace to be a personal injury law

1  firm that has had an interest in this type of issue in

2  connection with the estimation proceeding under the assumption

3  that the same people might well have an interest in these

4  issues that we're raising now.

5          THE COURT:  Okay.  Do I need to make that change in

6  this order somewhere?

7          MR. FINCH:  No, I don't think so.  I just wanted to

8  get clarification on the record that's what was going to

9  happen.

10          MR. COHN:  Right.

11          THE COURT:  All right.

12          MR. COHN:  Your Honor, we would be content either to

13  have an oral order that says that that procedure is okay or

14  else we could submit under certificate of counsel a written

15  procedural order.

16          MR. BERNICK:  Your Honor, this is David Bernick.  The

17  timing is fine and, of course, as Mr. Cohn indicates, we're

18  trying to facilitate this for Mr. Cohn.

19          But I don't think -- there's no -- the idea that

20  somehow a procedure is being okayed, I can assure Mr. Cohn from

21  long and deep experience on these matters that there will not

22  be agreement from all the different law firms on what procedure

23  is appropriate to compel the discovery of information relating

24  to their clients.

25          THE COURT:  No, I think he meant the procedure -- the

1  timing, I think, issues is what he was talking about.

2          MR. COHN:  We've already got the agreement of Ms.

3  Ramsey and Mr. Esserman's firm on these timing issues.

4          MR. BERNICK:  Yes.  They're fine with us.

5          MR. FINCH:  They're fine with the ACC but Mr. --

6  excuse me -- Ms. Ramsey and Mr. Esserman obviously don't

7  represent the entire world that's interested in this.

8          THE COURT:  Well, I think when a motion to compel

9  production is filed, it should simply be filed with a notice

10 that indicates that the Court has fixed these deadlines.  So

11 that when you serve that motion you can serve it with an order

12 that fixes the deadline for response as January 7th and the

13 hearing on January 14th at 9:00.  And then the order will be

14 entered with that notice.  I mean, there will be a notice

15 that's gone on.  This is an oral order that authorizes those

16 dates to be used.

17         MR. COHN:  That's terrific, Your Honor.  Thank you

18 very much.

19         THE COURT:  Okay.  What else on the Libby matters?

20         MR. COHN:  Nothing known to me, Your Honor.

21         MR. BERNICK:  I'm not aware of anything.

22         MR. COHN:  So I would ask if I might be excused?

23         THE COURT:  Okay.  Anybody else have anything, any

24 issues that are going to involve Mr. Cohn's clients before he

25 leaves?

1          MR. BERNICK:  Yes.  Actually there -- service making

2    sure that Mr. Cohn is alerted to the -- we just kind of jumped

3    ahead and I don't think that Mr. Cohn is going to have a

4    problem with it, but there was inquiry made.  We volunteered

5    that we might be seeking to adjudicate the scope of the vendor

6    endorsement for Scott at some point during the process leading

7    up to confirmation.  And I'm prepared to address the schedule

8    for that today in connection with the CMO to the extent that we

9    talk about the CMO.

10          What I was going to say is that we think that should

11   follow essentially the same tract in terms of scheduling as

12   Phase 2 because it's not necessary to the issues that are going

13   to be raised in connection with Phase 1.  We would say the same

14   thing about to the extent that the insurers raise questions

15   about the scope of the indemnity for the settled insurance

16   claim, that is, what it covers and what it does not cover.  I

17   think that those are part and parcel of what will be issues

18   that will be relevant to the Libby claimant in Phase 2, i.e.,

19   the scope of the channeling injunction.  And therefore we would

20   say that those two should follow the Phase 2 discovery and

21   pretrial schedule.  I don't think Mr. Cohn is going to have any

22   objection to that because it doesn't accelerate anything with

23   respect to his client, being able to maintain the schedule for

24   his client.  But I wanted to make sure that I mentioned it

25   while he was still on the phone.

1             THE COURT:  Mr. Cohn?

2             MR. COHN:  I appreciate that.  I have no objection

3  and in fact I think that it's a very good idea to adjudicate

4  and focus on the issue of the scope of the indemnity for the

5  settled insurers.  So I would support that, Your Honor.

6             THE COURT:  All right.

7             MR. BROWN:  Your Honor, this is Michael Brown.  I

8  have a point of clarification because I'm not entirely sure on

9  what Mr. Bernick is proposing.  And again I represent, in

10  connection with this issue, Seaton and One Beacon.

11             Is Mr. Bernick proposing that the issue of the for

12  settled insurers of the scope of the contractual indemnity and

13  how those contractual indemnity claims are being treated under

14  the plan will now be shifted from Phase 1 to Phase 2 entirely?

15             MR. BERNICK:  They were never part of Phase 1.  Phase

16  1 dealt with the objections that you all raised to the plan and

17  confirmation to the plan.

18             And I don't see that you've raised any such

19  objection.  You raised issues concerning the scope of

20  channeling injunction which issues we've now tried to respond

21  to in a way that I'm assuming is satisfactory because it gives

22  your clients protection.  And you raised issues concerning

23  classification.  Those classification issues would be taken up

24  in Phase 1.

25             The issue of what happens insofar as the channeling

1  injunction is concerned, or claims that emanate from Libby, we

2  always regarded as being a Phase 2 issue because it relates to

3  the Libby claimants.  And all that I was telling Mr. Cohn was

4  that because of that, that would subsume any issues that do get

5  raised to the extent that they are raised concerning the scope

6  of the indemnity.

7         From our point of view if the indemnity claims are

8  all channeled, as we believe this plan calls for them to be

9  channeled and that ultimately is adopted, then the scope of the

10 indemnity probably isn't very relevant and doesn't need to be

11 adjudicated.  But I just wanted to make sure that that

12 statement was made while Mr. Cohn was still on the telephone.

13        MR. BROWN:  Okay.  Well, Your Honor, I -- again it's

14 Michael Brown.  I'm not sure I entirely understand how those

15 issues are being parsed, I'm not saying I have an objection to

16 them, but --

17        MR. BERNICK:  Well that's something we can talk

18 about, you know, later on this call or at some other time.  I'm

19 just kind of, again out of concern to make sure that something

20 doesn't get said about Mr. Cohn's client while he's not on the

21 phone, I wanted to make that statement.  We're not seeking to

22 bind you at all by (indiscernible).

23        THE COURT:  Okay.  I'm not sure how they're all going

24 to get up at this point either, Mr. Brown, because I don't

25 quite at this point understand the whole plan because I still

1  don't even have the whole disclosure statement and I'm not sure

2  how it all fits together.

3        But I think the issue at this point is to the extent

4  that there is some issue as to whether or not the indemnity

5  claims are in fact channeled, that issue, whether they are in

6  fact channeled, will be taken up in Phase 2.  That's what I've

7  gathered out of this.

8        MR. FINCH:  And, Your Honor, that's sort of what I

9  heard as well I guess.  But the issues are intertwined because

10 to the extent that that's going to be taken up in Phase 2, it

11 seems to me that any issues that relate to that need to be

12 taken up in Phase 2 as well.

13       MR. BERNICK:  Again I did not seek to raise this

14 today for a decision.  I simply assumed that there would be

15 questions about the CMO because your client, I assumed from the

16 statements that have been made in court, wanted to talk about

17 the CMO.  So I just made the statement.  If you want additional

18 matters to be taken up in Phase 2 rather than Phase 1, you

19 know, we're going to have the statement of what the Phase 2 and

20 Phase 1 issues are.  At your request that statement is being

21 made by the end of the month, but we think that in fact all

22 that's happened is that the number of issues that are raised in

23 Phase 1 is reduced and that that is that something you would

24 like.  If you want to reduce some more I guess you can always,

25 under the CMO, make an application to that effect.  But we're

1  not asking that it be resolved today.

2           THE COURT:  Okay.

3           MS. COBB:  Your Honor, this is Tiffany Cobb on behalf

4  of the Scotts Company.  May I be heard?

5           THE COURT:  Yes.

6           MS. COBB:  I too am a bit confused on the parsing of

7  the issues and I think it does largely -- is largely due to the

8  fact that we still do not have an approved disclosure

9  statement.

10          Your Honor, at the tail end of Monday's hearing you

11 may recall that I had broached the subject of what I believe is

12 really more of a housekeeping matter.

13          As you know at the November 24th hearing, there -- it

14 was appropriate to make modifications to the discovery schedule

15 as it related to Scotts and the insurers given that there was a

16 continuation of those disclosure statement issues to December

17 15th.  Those dates were modified very modestly by two weeks and

18 indeed none of the key dates for Phase 1, i.e., the final trial

19 brief, the April anticipated Phase 1 hearing date, none of

20 those dates were changed.  But there were modifications we

21 believe appropriately so because you would expect to have a

22 resolution to a disclosure statement issue before you launch

23 into discovery.  And now, of course, everyone assumes that

24 those issues would be resolved on Monday and now we know those

25 have been once again further adjourned to January.

1      My proposal that began on Monday, and I will continue

2  today, is to suggest that similarly there be an appropriate and

3  very modest modification to ensure that we aren't putting the

4  cart before the horse and issuing discovery, for example, or

5  noting objections that may never be necessary depending upon

6  the resolution of those disclosure statement issues on January

7  13 and January 14.

8      I know that certain of the insurance carriers were

9  aware of the modest proposal to have a preliminary objection

10  and written fact discovery served just seven days after the

11  conclusion of the January 14 date, everything else following

12  form from there.

13      And again, and this I think is key, without changing

14  any of the end dates to ensure that we still stay on track for

15  April and specifically the fact witness list, the final plan

16  objections, the trial brief, the exchange of exhibits, and the

17  April hearing would all stay the same.

18      We are simply proposing that the initial objections

19  to discovery wait until after there has been a resolution of

20  the Scotts and insurance companies' disclosure statement issue.

21      MR. BERNICK:  And, Your Honor, I intended to take

22  that up at the conclusion of the last issue.  But to the extent

23  that it's now being raised, it's the same, exactly the same

24  process or the same issue that has been presented before by way

25  of deferring the schedule and it's an apples and oranges

1  problem.

2       If they have got preliminary objections, they can

3  make their preliminary objections.  The preliminary objections

4  were felt to be important actually by the Libby people so we

5  put them in at an early date.

6       The fact of making preliminary objections if the

7  disclosure statement issues have not been resolved and they

8  have been absolutely beaten to death and we're down to very

9  small things, they can make an objection in order to preserve

10 their preliminary objection.

11      The preliminary objections have absolutely no binding

12 effect, but some folks want them to take place early and we're

13 fine with that.

14      To the extent that she would now bump the schedule

15 for two weeks or whatever period of time it is, all the way

16 down, it does in fact have ramifications.  This thing was put

17 together very, very carefully.

18      And all that counsel is saying is part of the same

19 theme is let's wait and wait until everything absolutely is

20 pinned down and you can't take a step.  We just don't have to

21 do that.  These preliminary matters can all be taken care of.

22 People can serve their discovery, make their objections.  It's

23 not as if they are -- anything is carved in stone.  It's not.

24 And particularly when the disclosure statement issues are now

25 down to the point of being so refined.

1          MS. COBB:  Judge --

2          MR. BROWN:  Your Honor, this is Michael Brown.  I'd

3 like to just chime in on this and echo what Ms. Cobb was

4 saying.

5          I mean we are getting the cart out in front of the

6 horse with not so much preliminary objections, but serving

7 discovery in advance of knowing what we're serving discovery on

8 is a problem.  And the comments that Mr. Bernick made earlier

9 where I understand he seems to be parsing the issues of the

10 scope of the channeling injunction and treating that separately

11 from the treatment of the contractual indemnity claims, only

12 further complicates matters because from the standpoint of

13 settled insurers those two issues are directly tied with one

14 another.

15          MR. BERNICK:  There's nothing to do.  The question of

16 what's in Phase 1 or Phase 2, only could mean that your

17 obligations are deferred.  And this schedule specifically

18 contemplated that we would be stating Phase 1 and Phase 2

19 issues at the end of the month, which we will do.  None of the

20 dates that we're talking about here has anything to do with any

21 issues, have anything to do with the disclosure statement.  So

22 I raised the point by way of being courteous to Mr. Cohn that

23 dealt with a way down the road issue and it's now being tied

24 back to the disclosure statement which is being tied to their

25 obligations before we even begin the litigation process.

1          Litigation takes place all the time on the basis of

2     preliminary objections, preliminary positions.  You don't wait

3     until all the details of the pretrial order are absolutely set

4     down to a fare-thee-well to begin the discovery process.  And

5     all that's going on here is that folks just don't want to begin

6     the discovery process so they can later argue that all the

7     dates should shift.

8          Now it may be that some dates do have to shift.  This

9     order specifically contemplates that people could make those

10    applications.  The purpose of this order is to get the process

11    going and nothing that is in the first part of this process in

12    any way, shape or form depends upon the final language that's

13    being used to refine the final few issues that pertain to the

14    disclosure statement.

15               THE COURT:  Well --

16          MR. BERNICK:  We would have been happy to have the

17    disclosure statement resolved the other day.  It just didn't

18    get there in terms of the wording.

19          MS. COBB:  Your Honor, Tiffany Cobb on behalf of

20    Scotts.  The same precise rationale that justified the slight

21    modification at the November 24th hearing applies with equal

22    force here.

23          I disagree with Mr. Bernick in terms of putting

24    written fact discovery out before we have a resolution of the

25    disclosure statement.

1          I can give you one example of where written fact
2    discovery may prove completely unnecessary.  Depending upon the
3    resolution of the trust distribution procedures issue that we
4    raised on Monday that has yet to be fully resolved, that's one
5    of many examples of if there's clarification on that issue, my
6    client, the Scotts Company, no longer needs discovery on that
7    matter.
8          So I can point to additional examples if Your Honor
9    would like, but I haven't heard any rationale beyond well, we
10   have this unfounded attribution to these counsel asking for
11   extensions that -- they're just going to ask for future
12   extensions.  No.  All we are asking for is a modification to
13   the early date, the written fact discovery, and keeping in
14   place all of the final key dates.  The final plan objection
15   stays March 16th.  Trial briefs stay March 16th.  The exchange
16   of exhibits, still 14 days before the hearing.  We are not
17   asking for an extension to the April hearing.
18          THE COURT:  Okay.  I got the point, folks.  Look this
19   is the issue.  At this point in time it seems to me that the
20   disclosure statement as to the parties for whom the debtor is
21   not contemplating making any changes, that discovery can go
22   forward.  There is really no reason to hold off discovery as to
23   the parties who know what the plan is going to say as to the
24   treatment of their claims.  And that's what the purpose of the
25   discovery is.  It's not about the disclosure statement.  You

1  folks know what the disclosure statement is going to say in

2  major part at this point.

3          As to the classification issues, you know what the

4  debtor is -- where your client is going to be placed with

5  respect to what the debtor is going to do with the claims.  You

6  may not know at this point all the details of that

7  classification if you're still bargaining with the debtor.  But

8  if you're still bargaining with the debtor, then you're going

9  to make modifications to the plan documents at some point that

10 you will have agreed on and then you can change the scope of

11 the discovery to go along with whatever agreement you've made.

12         At this point there's a document on file and unless

13 the debtor is going to make changes to it, then you know what

14 the issues are and you can start the discovery at this point.

15         I'm really not sure why another change to those dates

16 has to be done.  I'm sure there is not a need to change dates

17 as to those creditors that the debtor is no longer dealing

18 with, negotiating with.

19         As to the creditors the debtor is still negotiating

20 with, and as a result doesn't have a completed document for,

21 that's a different issue.  I don't know how the creditors can

22 start discovery if in fact they don't have a document that says

23 here, this is how my treatment is going to be.

24         You know, Mr. Bernick, I don't think the plan

25 proponents can have it both ways.  They can't on the one hand

1 say we don't have a document done but oh, by the way creditors,

2 here is, you know, here's what we're giving you so far, go take

3 discovery.  It's up to the debtors to propose a feasible plan

4 and a reasonable time and then up to the creditors based on

5 that plan to get discovery.  So the debtor has to start this

6 process.  The plan proponents have the obligation to get this

7 process under way in a fashion that lets everybody else

8 understand what the debtors want to do.  And so far the debtors

9 haven't done it.  So I need a final document from the debtors.

10       MS. DiCHRISTOPHER:  Your Honor, this is Elizabeth

11 DiChristopher.  May I be heard just briefly?

12       MR. BERNICK:  Your Honor, but just to be clear on

13 what the issue is.  The property damage people are the only

14 people with respect to whom the documentation has not been

15 produced because there actually are continuing negotiations.

16 They're not part of the schedule at all.  They are the ones

17 that are to be heard in January.

18       All of the people who are on this phone clamoring for

19 more time all have received the document.  The document has

20 been extensively negotiated and extensively revised.  We're

21 down to the last couple revisions, if any, and they know

22 exactly what they are.  Those are all the people who are saying

23 they have no idea about where to go from here.

24       And that's what is less than forthright.  They know

25 exactly what the positions are because they come into court to

1  state those positions.

2          And insofar as the discovery is concerned, every day

3  of the week discovery gets conducted with respect to matters

4  that ultimately are resolved, the discovery becomes moot.

5          All that this does is that they serve the discovery.

6  If it becomes moot, it becomes moot.  Ms. Cobb thinks that in

7  some fashion she's going to be able to pre-negotiate the TDP to

8  a fare-thee-well.  That's up to the ACC and the FCR.

9          I frankly doubt that the TDP is going to be revised

10 at all in the space of this period of time nor does it need to

11 be resolved.  She doesn't need to know what the final TDP is in

12 order to be able to say at this point I don't like the TDP and

13 I want discovery with respect to the TDP, you file the

14 discovery.  Every single case that gets litigated in the United

15 States does discovery proceed on the basis of allegations and

16 objections.

17         THE COURT:  Okay.  All right.  Fine.  To the extent

18 the TDP is of record and it's going to be the TDP that you're

19 going forward with, fine, discovery can be done.  If the TDP is

20 still in a negotiating standpoint, if that's the position, then

21 there's no point doing discovery until we have a final

22 document.  So are you telling me that it's the final document?

23         MR. BERNICK:  I'm telling you for purposes of the

24 disclosure statement that goes out, yes, it's the final

25 document.

1          THE COURT:  All right.  Then the discovery can start.

2          MR. BERNICK:  Yes.  And that's true with respect to

3  --

4          MS. COBB:  Your Honor.  Your Honor.

5          MR. BERNICK:  -- with respect to all of these people.

6  There is no substantive negotiation that is taking place with

7  respect to the carriers.  There's no substantive negotiations

8  taking place with respect to Scott.  That's just false.  All

9  that this is is their effort to have the disclosure statement

10 read out in ways that they like to assume the substantive

11 position that they're going to take place later on in

12 confirmation.

13         THE COURT:  Well okay.

14         MR. BERNICK:  That's all that's going on.

15         THE COURT:  Okay.

16         MS. COBB:  Your Honor, may I be heard?  This is

17 Tiffany Cobb.  I do feel that I need to respond to that, Mr.

18 Bernick.

19         I had understood at the hearing the reason that this

20 was going to be continued is precisely to encourage the parties

21 to discuss perhaps a resolution to the outstanding issues.

22         THE COURT:  But you can do that, Ms. Cobb, in the

23 context of discovery.  We have exactly five minutes to get

24 through the rest of these issues.  This is not something I

25 continued this hearing for.  So if you folks --

1          MS. COBB:  But I --

2          THE COURT:  Ms. Cobb --

3          MS. COBB:  Yes.

4          THE COURT:  -- this is not something I continued this

5  hearing for.  I'm sorry.  It's not.

6          So the issue is this.  The order that I already

7  entered stays in place.  I'm not making changes to the dates.

8  The discovery can be served.  If it's moot, it'll be moot.  If

9  there are changes, the discovery can be revised.  That's it.

10         Let's move onto something that I continued the

11  hearing for.

12         MR. BERNICK:  The last issue was with respect to the

13  insurers whether they have problems, and we understand and

14  we'll stipulate on the record that they preserve any and all

15  objections that they have made with respect to the

16  confidentiality or the protective order.

17         But the question is are there any additional

18  suggestions that they have that are suitable to put before the

19  Court of further revisions that should be made to the

20  protective order because we would ask otherwise the Court enter

21  the protective order with respect to the insurers.

22         It's the same order that you just proofed with

23  respect to Libby.

24         THE COURT:  Have the insurers seen the order, Mr.

25  Schiavoni?

1          MR. SCHIAVONI:  Your Honor, we gave comments to Ms.

2     Baer.  If Mr. Bernick is representing he made those comments,

3     then I'm fine with the order as entered or as submitted to you.

4          THE COURT:  After we made the changes?

5          MR. SCHIAVONI:  Yes.  We gave her comments on the

6     order yesterday, Mr. Bernick.  As long as you've made those

7     changes we're fine with the --

8          MR. BERNICK:  Yes, Ms. Baer is nodding at me that in

9     fact your comments were incorporated in.  If there's anything

10    further that it turns out that we didn't do and intended to do

11    you know, we'd be happy to follow up on those as well.  But our

12    intent was to incorporate the suggestions that you made.

13         MR. SCHIAVONI:  Then I'm fine.

14         MR. GLOSBAND:  This is Dan Glosband.  We forwarded

15    suggestions that were incorporated on behalf of Firemen's Fund

16    and Continental.  We don't represent Firemen's Fund, we just

17    collected their comments.

18         But there is a form of acknowledgment required in

19    Paragraph 5, or we can further disclose information to

20    professionals and the like working with us.  I would ask if

21    Grace is going to furnish us with a copy of that form some time

22    quite soon?

23         MR. BERNICK:  It's a form to give to professionals.

24    Yes, we'll give you one.  Jan is marking that down.

25         MR. GLOSBAND:  Thank you.

1          MR. SCHIAVONI:  Judge, if I could just be heard for
2    one second.  I don't want to belabor the point or try the
3    patience of the Court, but on an entirely different issue on
4    the case management order.  We have expert reports due on
5    January 15th, that's under 30 days from now.  We only got the
6    first documents from Mr. Bernick's office available to us
7    yesterday.  It puts us under tremendous pressure.  We've done
8    everything.  We've served our discovery.  We did everything in
9    a sense Mr. Bernick wanted.  We've served it, we've asked to
10   meet with Mr. Bernick's client.  And no fault intended, but we
11   just haven't because of the holidays, been able to get that on
12   calendar.  It puts me under tremendous pressure to basically
13   get an expert report in on the 15th.  It's also -- it's the one
14   thing about this schedule that's not in the ordinary course to
15   have expert reports due before fact discovery in a sense even
16   takes place.   It's going to require me to put in multiple
17   expert reports so --

18          MR. BERNICK:  Your Honor, again, a) it is not
19   germane, b) this is Phase 1.  Their Phase 1 issue is
20   classification, should they be Class 9 or Class 6?  It has
21   nothing to do with the voluminous information that they
22   themselves have assumed the burden of by asking for it.  And I
23   would add the entire record, trial record for the estimation
24   trial and all of the details have been a matter of public
25   record for months.

1            So the idea that somehow the intricacies of the

2    estimation are foreign and they haven't been able to get

3    information until today, is false.  And to the extent that

4    they've gotten additional information today, it is material

5    that they could have had weeks ago if they had signed a

6    stipulation that essentially reads out the same way this

7    protective order does.

8            MR. SCHIAVONI:  We signed the stipulation within four

9    days.

10           Judge, in 99 percent of all the cases in America,

11   expert reports are due at the end of fact discovery, they're

12   not due before it starts.

13           MR. BERNICK:  Well --

14           MR. SCHIAVONI:  Mr. Bernick, please.  This is not --

15   this helps your -- it helps the debtor not to have multiple

16   expert reports.

17           MR. BERNICK:  Oh.

18           MR. SCHIAVONI:  We're just asking for the expert

19   reports to come in when fact discovery is over.  That's all.

20           MR. BERNICK:  This is just -- you know, there has

21   been absolutely no showing and this is now the same CMO --

22           THE COURT:  Pardon me.  When is the fact discovery

23   due -- done?

24           MR. BERNICK:  The fact discovery ends with respect to

25   Phase 1 let's see other fact discovery concludes, except on

1 feasibility, other fact discovery concludes for the insurers on

2 March the 2nd.

3        THE COURT:  Okay.  I'm confused too because it is

4 unusual to get expert reports in before fact discovery is done.

5 Is there just a legal issue?

6        MR. BERNICK:  No.  You can have factually -- you can

7 have -- well we believe that there is just a legal issue.  But

8 to the extent that there's anything that carries over, they

9 also can do a supplemental expert report for Phase 1 by

10 February the 3rd.  So that was also built in.

11        And an expert deposition for Phase 1 goes through

12 February 26th.  There's also the sake of talking about whether

13 it should be Class 9 or Class 6.

14        Again, it's all driven by the fact that what they

15 want this information for and I think they've been actually

16 somewhat candid about it in court, they want to see whether

17 they want to settle their case --

18        MR. SCHIAVONI:  We do want to settle --

19        MR. BERNICK:  -- but they want to settle policies --

20 and the reason they want the information basically is to find

21 out what's going on with the Whitney claimants, what's going on

22 with some of the other claimants which is the information, the

23 detailed information underpinning the estimate they want so

24 they can make economic decisions about whether they want to

25 settle out.

1           THE COURT:  Well that's okay.

2           MR. BERNICK:  And that's another -- okay, that's

3  fine.  But it doesn't -- shouldn't get in the way of litigating

4  the issues that are actually on the table to be litigated.  It

5  has nothing to do with economics.

6           MR. SCHIAVONI:  But, Judge, you know here's the

7  thing.  I mean we're not -- we've served other discovery as Mr.

8  Bernick knows.  We've served requests for admission and we have

9  depositions.  We have other things that we'd actually

10  incorporate within the expert reports.  To have to sort of put

11  them in and then supplement them.  You know I heard as part of

12  this process there were 80, 80 expert reports now in connection

13  with the estimation.  That is not the right way to do

14  litigation.  You take the fact discovery, you prepare the

15  expert reports when you have a record.

16           MR. BERNICK:  Well, Judge, this is totally -- this is

17  a joke that you can ask for everything in the entire bankruptcy

18  case, it will fill you know seven trailers.  It doesn't make it

19  relevant to the issues that are being litigated.  This is all

20  stuff that they want because they want to know the price at

21  which to cash out their policy --

22           THE COURT:  Okay.  That --

23           MR. BERNICK:  -- and we're happy to give it to them

24  but not in connection with the estimation.  That's a whole

25  other discovery schedule on Class 9 versus Class 6.

1          THE COURT:  I don't see how any of that is going to

2     help with the classification issue.  If the only issue is

3     classification, there really isn't much for the insurers, much

4     of a factual component to that.  Most of that has to be driven

5     by the legal issues and I don't see what the estimation has to

6     do with that classification issue.

7          MR. SCHIAVONI:  Judge, whether you think it's a lot

8     or a little, the fact of the matter is this.  January 15th is

9     14 days after the new year --

10          THE COURT:  Yes.

11          MR. SCHIAVONI:  -- and it gives us very little time.

12     You know if we could -- basically we'd like to meet with Mr.

13     Bernick and be done before we have to hire an expert.  In all

14     candor --

15          THE COURT:  Well --

16          MR. BERNICK:  Well, but that's a different issue.

17     We're always happy --

18          THE COURT:  Mr. Bernick, please.  Mr. Bernick.

19          MR. BERNICK:  I'm sorry.  I'm sorry.  I'm sorry.

20          MR. SCHIAVONI:  But putting that aside, I mean,

21     giving us another 15 or 20 days, pushing that date back, so we

22     get whatever minimum, whether you consider it small or large to

23     support --

24          THE COURT:  Okay.  But why aren't these things --

25     these things were all negotiated.  I'm given the -- I was given

**J&J COURT TRANSCRIBERS, INC.**

1 an order that everybody agreed to.  I changed --

2           MR. SCHIAVONI:  No, Your Honor, we objected to the

3 order.

4           THE COURT:  -- I changed the dates.  Everybody agreed

5 to the changed dates and now I'm back here rearguing something

6 that isn't even on my continued agenda.  Now this isn't the way

7 you litigate things.  I don't understand this process.

8           MR. SCHIAVONI:  No, no, Judge, we did object.

9           MR. BROWN:  Your Honor, this is Michael Brown.  If I

10 could just jump in here.  I mean some --

11           THE COURT:  No.  No, Mr. Brown, I'm dealing with Mr.

12 Schiavoni.

13           MR. SCHIAVONI:  I'm sorry, Judge, but we did actually

14 object to the schedule and we then filed a motion to that

15 confidentiality motion.  The predicate of it was that we would

16 try to meet the schedule with Mr. Bernick but we needed to

17 basically get the stuff from him before the schedule started.

18           He's just given us the stuff.  He just started giving

19 it to us and in theory we're going to get the rest of it

20 Christmas week.  You know, giving us 14 days to get an expert

21 report --

22           THE COURT:  All right.  What's the next thing that

23 happens --

24           MR. SCHIAVONI:  It's Mr. Bernick is the one who

25 hasn't made the showing about --

1      THE COURT:  -- what is the next thing that happens

2  after the January 15th expert report date?  I don't have this

3  order here.  I'm not prepared for this.  This is not something

4  that was continued for today.

5      MR. BERNICK:  Well, there's no reason that you should

6  be, Your Honor, because all the stuff that they're asking, the

7  predicate for everything that they're saying is that all this

8  voluminous information which --

9      THE COURT:  Could I just get an answer to my question

10 please?

11     MR. BERNICK:  Yes, other --

12     THE COURT:  Really.  I'm five minutes past when I

13 need to leave.

14     MR. BERNICK:  Okay.

15     THE COURT:  Now I'm frankly --

16     MR. BERNICK:  Preliminary objections --

17     THE COURT:  -- I'm sorry, but I'm frustrated.

18     MR. BERNICK:  Yes.

19     THE COURT:  So what's the next thing that happens?

20     MR. BERNICK:  The next thing, other fact discovery

21 closes on March the 2nd.  Designation of Phase 1 issues by us

22 is January the 13th.  I'm just going down.  Expert reports

23 January 15th.  Response to designation of Phase 1 issues

24 January the 20th.  Supplemental expert reports February the

25 3rd.  Expert depositions February 26th.  Preliminary witness

1 list February 16.

2          THE COURT:  Okay.  Wait.

3          MR. BERNICK:  Final --

4          THE COURT:  Stop.  Stop please.  I'll just -- if we

5 can just eliminate the need for the supplemental expert

6 deposition or expert reports, take out the preliminary expert

7 reports January 15th and make all expert reports due whatever

8 that supplemental expert report date was, does that work?

9          MR. BERNICK:  Well, let me see.  Supplemental expert

10 reports February --

11          THE COURT:  -- 3rd, I think?

12          MR. BERNICK:  Well, no, that's February 3rd.  But

13 then I would suggest -- well, that's fine.  February 3rd, I'm

14 just looking for how that implicates everything else.  This is

15 just for the insurers?

16          THE COURT:  Yes.

17          MR. BERNICK:  Just for the insurers.  Response to

18 designation other fact discovery.

19          UNIDENTIFIED SPEAKER:  We would need a date to

20 respond to the insurance company experts, David --

21          MR. BERNICK:  That's true unless they're prepared to

22 simply go forward and depose our people.  That's also a

23 possibility.

24          THE COURT:  Well when are the depositions of the

25 experts?

1            MR. BERNICK:  They start, they were to start on the

2   22nd in light of January 15th --

3            THE COURT:  Okay.

4            MR. BERNICK:  -- for the expert reports.  So if the

5   expert depositions are then put back until after February 3rd

6   and he follows the same sequence, we go from February the 15th

7   so just a week, so if we went with February the 3rd for the

8   expert report, we wouldn't be able to start the depositions

9   until February the 10th and the depositions would then have to

10  take place on February the 10th through February the 26th.

11           THE COURT:  Okay.  How about --

12           MR. BERNICK:  I would --

13           THE COURT:  All right.

14           MR. BERNICK:  -- go along with that except that I'm

15  -- and this is just on the insurers -- I think I would go along

16  with that.

17           THE COURT:  All right.  Just --

18           MR. BERNICK:  I don't know --

19           THE COURT:  -- just on the insurers.  Then if there

20  is a need for a supplemental expert report as a result of the

21  depositions, if there is, can it be built in just the next week

22  from February 26th say until March 6th?

23           MR. BERNICK:  Yes, I think that that's probably all

24  right.

25           MR. BROWN:  So there would be an opportunity to have

1  a supplemental rebuttal report to the insurance company experts

2  between February 26th and March the 6th?

3            THE COURT:  Right.  One week.

4            MR. BROWN:  Okay.

5            MR. BERNICK:  Okay.  So then just to be concrete.  So

6  everybody would then write down strike the first reference to

7  expert report for -- no actually it's just a footnote because

8  it's just the carriers.

9            For the carriers the expert reports would be due on

10 February the 3rd.  For the carriers the expert depositions

11 would then commence on February the 10th, be done by February

12 the 26th.

13           And then for the insurers the plan proponents' expert

14 supplemental would be between, I guess it would be some time --

15           THE COURT:  Would be due March 6th.

16           MR. BERNICK:  Be due March 6th, right.

17           MS. COBB:  Your Honor, the footnote applies to the

18 Scotts Company as well as the insurers?

19           MR. BERNICK:  Absolutely not.  It has nothing to do

20 with Scotts.

21           MS. COBB:  It does.  They all want --

22           MR. BERNICK:  No.  No.  Scotts issue is entirely

23 different.  It's completely and utterly different.  Nothing to

24 do -- Scotts may have a Class 6 versus Class 9 claim.  I doubt

25 it.  I'm not sure what's left to litigate insofar as Scotts is

1 concerned in Phase 1 at all.

2        Phase 1 there's an adversary issue with respect to

3 Scotts and that adversary issue is going to be the subject of a

4 schedule that we're to propose to the Court.

5        What I was going to say today for Ms. Cobb to

6 consider is whether we simply adopt Phase 2, the Phase 2

7 schedule for the Scotts' adversary on threshold questions that

8 we wanted to raise.

9        MS. COBB:  Well, of course we need to see a final

10 document first, David.  I have no idea what the --

11        MR. BERNICK:  I don't even know what --

12        MS. COBB:  -- final disclosure statement -- in

13 fairness for the record, at the time the CMO was negotiated,

14 Scotts was operating on a premise of the plan where we had

15 assurances that our treatment was essentially 180 degrees

16 different than what we were at Friday at 4:55 p.m. so --

17        THE COURT:  Ms. Cobb, I'm sorry, I've already said

18 this issue is not on my agenda today.  I'm sorry.  I've said

19 that at least three times now.  You folks can go negotiate this

20 issue outside of this court.  If you can come to an agreement

21 I'm happy to do it.  You can put it on the next omnibus.  I'll

22 take it up then.

23        As to Scotts, I don't think the issues are the same.

24 If they are and I'm mistaken, you can bring it up at the next

25 hearing.  For now as to Scotts, it stays the same.  I'm making

1  those changes to the insurers right now.  That's all.

2          MR. BERNICK:  We will incorporate --

3          THE COURT:  Okay.  What else is -- I want to get back

4  to the issue --

5          MR. BERNICK:  Right.

6          THE COURT:  -- that was on the agenda for today.

7  Does anybody have any additional changes to the protective

8  order for today?

9          MR. WYRON:  Your Honor, it's Richard Wyron for the

10  Futures rep.

11          THE COURT:  Yes, sir.

12          MR. WYRON:  We had raised with the debtor a

13  clarification of the last sentence of Paragraph 5.  I don't

14  know -- I haven't seen a revised proposed order and I don't

15  know if that change was acceptable or not.

16          MR. BERNICK:  It was.  It was, Richard.

17          MR. WYRON:  Thank you.

18          THE COURT:  Actually I have two Paragraph 5s, two

19  Paragraphs 5.  Oh, no, I don't either.  I apologize.  It's the

20  way the typing looped.  I do not.  I'm sorry.

21          MR. BERNICK:  Anybody else?  What, Montana?  Montana

22  is being put in.  Your Honor, as to Paragraph 23 --

23          THE COURT:  All right.

24          MR. BERNICK:  -- of the insurer's order.  And in the

25  first sentence it says, this entry of this protective order

1  dah, dah, dah, dah, confidential information covered shall be

2  produced by the debtors to the insurers' insert, and Montana

3  pursuant to the terms of this protective order.

4          THE COURT:  I already have and Montana.

5          MR. BERNICK:  Okay.

6          THE COURT:  Well, I have subject to the entry of this

7  protective order or a document attesting to the insurers or

8  Montana's agreement.

9          MR. BERNICK:  Yes, but you then have to add Montana

10 later on in the sentence.

11         THE COURT:  "To be bound by this protective order,

12 the confidential information covered by these protective orders

13 shall be produced by the debtors to the insurers ..." oh, or

14 Montana?

15         MR. BERNICK:  And Montana.

16         THE COURT:  And --

17         MR. BERNICK:  Yes.

18         THE COURT:  -- Montana.  Okay.  That's in.  Anyplace

19 else?

20         MR. BERNICK:  We don't see anything.

21         THE COURT:  All right.  I'm going to enter this

22 order.  I understand that it was circulated very shortly before

23 this hearing and so people may have issues with respect to some

24 change that you've asked that you haven't had a chance to see.

25         If that's the case, I will expect to get a COC that

1 has a revised form of order that makes the appropriate changes.

2 So you can do that outside this record and submit one.

3       If you do, please have Ms. Baer contact my chambers

4 here, call my chambers and let me know that it's been filed and

5 in the JKF box so that I know that it is a different order than

6 the one that has been submitted to me.

7       I'm going to have these two orders docketed now, but

8 I -- the one Libby and one for the insurers order.  I do

9 appreciate the fact that because they were emailed right before

10 court that not all of you may have had an opportunity actually

11 to see the language.

12       MR. BERNICK:  Yes, and the debtor at least would add

13 that we appreciate everybody being very prompt in providing

14 their input and notwithstanding the issues that are out there,

15 it's worked very cordially and fluidly to try to get this thing

16 put together.

17       THE COURT:  All right.  If there is anything else

18 that has to be addressed then put it onto the next omnibus, Ms.

19 Baer, or else if there's something that's more urgent than the

20 next omnibus, contact my chambers and I'll try to get something

21 scheduled for you tomorrow.

22       Okay.  We're adjourned.  Thank you.

23       ATTORNEYS:  Thank you, Your Honor.

24

25                    * * * * *


                **J&J COURT TRANSCRIBERS, INC.**

# **C E R T I F I C A T I O N**

I, JANET D. PERSONS, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Janet D. Persons          DATE:  December 26, 2008
JANET D. PERSONS
J&J COURT TRANSCRIBERS, INC.