## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |
| | Related Docket Nos. 19581, 19620 |
| | |
| | Hearing Date: April 27, 2009 at 10:30 a.m. (EST) |
| | Response Deadline: April 20, 2009 at 4:00 p.m. (EST) |

## MOTION TO STRIKE WHITEHOUSE EXPERT REPORT
## OR, ALTERNATIVELY, COMPEL THE PRODUCTION OF
## DOCUMENTS AND DATABASES ON WHICH HE RELIES
## AND FOR ENTRY OF A CONFIDENTIALITY ORDER

Garvan F. McDaniel, Esq. (#4167)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, DE 19801
(302) 429-1900 Phone
(302) 429-8600 Fax

-and-

Carl J. Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER, LLP
150 East 42nd Street, 10017
New York, NY 10017-5639
Telephone: (212) 490-3000

-and-

Tancred Schiavoni, Esq.
Gary Svirsky, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York, 10036

*Counsel to Arrowood Indemnity
Company, f/k/a Royal Indemnity Company*

Due to the large volume of attachments, copies of the appendix and exhibits may be obtained by
contacting Garvan Mc Daniel, Esquire at gmcdaniel@bglawde.com

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 4

THE SCHEDULING ORDER IMPOSED DISCOVERY DEADLINES ............................. 4

ON MARCH 16, THE LIBBY CLAIMANTS PROFFERED DR.
WHITEHOUSE'S PURPORTED EXPERT OPINION WITHOUT THE
UNDERLYING DATABASES AND DOCUMENTS ....................................................... 4

FIVE OF THE MOST PROMINENT DOCTORS IN ASBESTOS MEDICINE HAVE
REVIEWED DR. WHITEHOUSE'S WORK AND FOUND IT UNSCIENTIFIC
AND DEEPLY FLAWED ............................................................................................... 5

A FEDERAL JUDGE HAS ALREADY MADE CRITICAL OBSERVATIONS
ABOUT DR. WHITEHOUSE'S OPINION .................................................................... 6

THE LIBBY CLAIMANTS REBUFFED ARROWOOD'S EFFORTS TO OBTAIN
PRODUCTION OF THE DATABASES AND DOCUMENTS UNDERLYING DR.
WHITEHOUSE'S REPORT AND TESTIMONY ........................................................... 8

DR. WHITEHOUSE WALKS OUT OF HIS DEPOSITION AFTER CAUSING
EVERYONE TO TRAVEL TO EASTERN WASHINGTON STATE ................................ 9

ARGUMENT ......................................................................................................................... 10

POINT I    DR. WHITEHOUSE'S EXPERT REPORT SHOULD BE STRICKEN BECAUSE
THE LIBBY CLAIMANTS HAVE FAILED TO PRODUCE THE DATABASES
AND DOCUMENTS ON WHICH DR. WHITEHOUSE RELIED IN HIS REPORT
AND TESTIMONY ..................................................................................................... 10

A.    Rule 26(a)(2)(B) required the Libby Claimants to
produce the documents on which Dr. Whitehouse
relied in rendering his purported expert opinion ................................. 10

B.    The Libby Claimants waived any privilege by
putting both their medical records at issue and having
Dr. Whitehouse rely on them in formulating his opinion ................... 14

POINT II    ALTERNATIVELY, THE COURT SHOULD COMPEL THE LIBBY
CLAIMANTS TO PRODUCE THE WITHHELD DOCUMENTS, AWARD
APPROPRIATE SANCTIONS AND ENTER THE PROPOSED
CONFIDENTIALITY ORDER ...................................................................................... 16

POINT III    MOVANTS HAVE A RIGHT TO BE HEARD BECAUSE THE LIBBY
CLAIMANTS HAVE INTERVENED, ASSERTED OBJECTIONS,
AND SOUGHT RULINGS THAT COULD BIND ALL PARTIES. ................................... 18

i

## TABLE OF AUTHORITIES
### (continued)

Page

CONCLUSION..................................................................................................................... 22

**TABLE OF AUTHORITIES**

Page

**CASES**

*American President Lines v. Hartford Fire Ins. Co.,*
   55 F.R.D. 61 (E.D. Pa. 1971)................................................................................................ 13

*Brooks v. Price,*
   121 Fed. Appx. 961 (3d Cir. 2005)................................................................................ 11, 12

*Carr v. Deeds,*
   453 F.3d 593 (4th Cir. 2006) ............................................................................................. 10

*Copley Press, Inc. v. Peregrine Sys. (In re Peregrine Sys.),*
   311 B.R. 679 (D. Del. 2004) ............................................................................................. 17

*Danvers Motor Co. v. Ford Motor Co.,*
   432 F.3d 286 (3d Cir. 2005)............................................................................................... 20

*Doe v. Dairy,*
   456 F.3d 704 (7th Cir. 2006) ............................................................................................. 14

*Eugene v. Miller,*
   No. 2007-CV-0013, 2008 WL 2224824 (V.I. May 27, 2008) ............................................. 14

*Goldstein v. Forbes (In re Cendant Corp.),*
   260 F.3d 183 (3d. Cir. 2001)........................................................................................ 17, 18

*Hagans v. Henry Weber Aircraft Distributors, Inc.,*
   852 F.2d 60 (3d Cir. 1988)................................................................................................. 12

*In re Asbestos Products Liability Litigation (No. VI),*
   MDL Docket No. 875,
   2009 WL 466381 (E.D. Pa. Feb. 25, 2009) ....................................................................... 15

*In re Epic Associates V,*
   54 B.R. 445 (Bankr. E.D. Va. 1985 .................................................................................... 16

*In re Northstar Energy, Inc.,*
   315 B.R. 425 (Bankr. E.D. Tex. 2004) ............................................................................... 16

*In re Safeguard Scientifics,*
   No. 01-3208, 2004 U.S. Dist. LEXIS 23494 (E.D. Pa. Nov. 17, 2004) ................................ 10

*Johnson v. Vanguard Manufacturing, Inc.,*
   34 Fed. Appx. 858 (3d Cir. 2002)....................................................................................... 10

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,*
   998 F.2d 157 (3d Cir. 1993)......................................................................................... 16, 17

## TABLE OF AUTHORITIES
### (continued)

Page

*Littlejohn v. BIC Corp.*,
  851 F.2d 673 (3d Cir. 1988)...............................................................................16-17

*McMillan v. Weeks Marine, Inc.*,
  478 F. Supp. 2d 651 (D. Del. 2007)............................................................. 11

*Miller v. Indiana Hosp.*,
  16 F.3d 549 (3d Cir. 1994)........................................................................... 17

*Muldrow v. Re-Direct, Inc.*,
  493 F.3d 160 (D.C. Cir. 2007) ..................................................................... 12

*Nixon v. Warner Communications, Inc.*,
  435 U.S. 589 (1978)...................................................................................... 16

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994)........................................................................... 17

*Reed v. Binder*,
  165 F.R.D. 424 (D.N.J. 1996)....................................................................... 11

*Republic of Philippines v. Westinghouse Electric Corp.*,
  949 F.2d 653 (3d Cir. 1991).......................................................................... 17

*Schoffstall v. Henderson*,
  223 F.3d 818 (8th Cir. 2000) ....................................................................... 14

*Smith v. Botsford General Hospital*,
  419 F.3d 513 (6th Cir. 2005) ....................................................................... 12

*Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*,
  47 F.3d 277 (8th Cir. 1995) .....................................................................11-12

*Trigon Ins. Co. v. United States*,
  204 F.R.D. 277 (E.D. Va. 2001) ................................................................... 12

*United States v. 68.94 Acres of Land*,
  918 F.2d 389 (3d Cir. 1990).......................................................................... 12

*United States v. Cambio Exacto, S.A.*,
  166 F.3d 522 (2d Cir. 1999).......................................................................20-21

*Vandenbraak v. Alfieri*,
  No. 01-482, 2005 U.S. Dist. LEXIS 9882 (D. Del. May 25, 2005) .............. 11

*Williams v. Rene*,
  72 F.3d 1096 (3d Cir. 1995).......................................................................... 14

## TABLE OF AUTHORITIES
### (continued)

Page

### RULES

Del. Uniform Rules Evid. 503(d)(3) .................................................................................... 15

Fed. R. Bankr. P. 7026 .................................................................................................... 10

Fed. R. Bankr. P. 7037 .................................................................................................... 10

Fed. R. Bankr. P. 9014 .................................................................................................... 10

Fed. R. Bankr. P. 9018 .................................................................................................... 16

Fed. R. Civ. P. 26-37 ...................................................................................................... 13

Fed. R. Civ. P. 26 ......................................................................................... 3, 10, 11, 22

Fed. R. Civ. P. 26(a) ........................................................................................... 10, 11

Fed. R. Civ. P. 26(a)(2)(B) ......................................................................... 2, 10, 11, 12

Fed. R. Civ. P. 26(b) ........................................................................................................ 11

Fed. R. Civ. P. 26(g) ........................................................................................................ 13

Fed. R. Civ. P. 26(g)(2)-(3) ........................................................................................... 13

Fed. R. Civ. P. 37 ......................................................................................... 3, 10, 11

Fed. R. Civ. P. 37(b)(2)(B) ............................................................................................. 13

Kan. Stat. Ann. § 60-427 ................................................................................................ 15

Mont. R. Civ. P. 35(b)(2) ............................................................................................... 15

N.D. R. Evid. 503 ........................................................................................................... 15

Va. Code Ann. § 8.01-399 .............................................................................................. 15

Wis. Stat. Ann. § 905.04 ................................................................................................ 15

### OTHER AUTHORITIES

Fed. R. Civ. P. 26(a)Advisory Committee Notes (1993) ................................................ 11

Fed. R. Civ. P. 26(a)(2)(B), Advisory Committee Notes (1993) .................................... 12

Fed. R. Civ. P. 26(g), Advisory Committee Notes (1983) ............................................. 13

Karl A. Menninger, II, *Confidentiality of Medical and Other Treatment Records*,
    87 Am. Jur. Proof of Facts 3d 259, § 20 (2008) .................................................. 15

Movants seek an order (i) striking Dr. Alan Whitehouse's purported expert report or, alternatively, (ii) compelling the Libby Claimants to produce the databases and documents that Dr. Whitehouse reviewed in formulating his opinion, awarding appropriate sanctions and entering the Confidentiality Order submitted with this motion as Appendix 1.[1]

## PRELIMINARY STATEMENT

At the Plan Proponents' urging, this Court entered what everyone agrees is an aggressive scheduling order for discovery and confirmation proceedings. When this schedule was proposed to the Court, the Debtors flagged alleged confidentiality concerns as a potential problem. Soon after, a motion was filed, argument heard and a confidentiality order entered with the intent of addressing any alleged confidentiality concerns.[2] The Libby Claimants participated extensively in that argument about confidentiality.[3] Knowing that discovery deadlines were looming, the Libby Claimants did not mention their confidentiality concerns about the databases and other information their expert used. Nor did they file a motion to address those concerns.

Instead, the Libby Claimants let run the deadline for filing expert reports and responding to written discovery. Only then did they advise the parties—and only when asked—that they

---

[1]  "Movants" refers to Arrowood Indemnity Company, f/k/a Royal Indemnity Company. Movants submit Allen Schwartz's April, 3 2009 declaration ("Schwartz Decl.") in support of this motion.

[2]  *Motion for Entry of Confidentiality Order Filed by Arrowood Indemnity Company f/k/a Royal Indemnity Company*, dkt. no. 20212, December 5, 2008. The following joinders were filed: *Limited Joinder of Continental Casualty Company to Motion for Entry of Confidentiality Order*, dkt no. 20225, December 9, 2009; *Joinder of Alianz S.p.A. f/k/a Riunione Adriatica Di Sicurta, Fireman's Fund Insurance Company To Motions For Entry Of Confidentiality Order*, dkt. no. 20226, December 9, 2009; *Joinder by Allstate Insurance Company Joinder to Motions for Entry of Confidentiality Order*, dkt. no. 20237, December 10, 2009. The following Objections were filed: *Debtors' Response to Insurers' Motion for Entry of Confidentiality Order and Debtors' Revised Order*, dkt. no. 20221, December 8, 2008; *Limited Objection of Various Law Firms Representing Asbestos Personal Injury Claimants to Insurers' Motion for Entry of Confidentiality Order*, dkt. no. 20233, December 10, 2008; *Joinder of Motley Rice LLC in the Limited Objection of Various Law Firms Representing Asbestos Personal Injury Claimants to Insurers' Motion for Entry of Confidentiality Order*, dkt no 20265, December 12, 2008. The motion was heard by Judge Fitzgerald on December 15, 2008. *See* Schwartz Decl. Ex. A (Transcript of Motion Hearing, December 15, 2008).

[3]  *See* Schwartz Decl. Ex. A, *In re W.R. Grace & Co.*, 01-1139, Transcript of Motion Hearing at 94 (Bankr. D. Del. December 15, 2008) (Mr. Cohn spoke on behalf of the Libby Claimants, at 121-139).

would produce documents and databases on which their experts relied after the Court entered a confidentiality order, which they also said had to be agreed to by all parties.[4] Importantly, the Libby Claimants' lawyers also insisted on terms that would have masked the identity of their clients from the parties to this case and precluded Dr. Whitehouse's meaningful cross-examination. In the meantime, the Libby Claimants tried to benefit from their non-compliance with their expert disclosure obligations and thereby gain an unfair advantage in connection with Dr. Whitehouse's deposition. The Libby Claimants went ahead with his deposition on March 19, 2009—in a remote and hard-to-reach location in Washington State—without producing the documents and databases that Dr. Whitehouse reviewed in formulating his purported expert report and testimony.

No one can deny that the parties have been prejudiced. It was impossible to prepare for Dr. Whitehouse's deposition or question him effectively without the databases mentioned in his expert report and a set of his documents. As if not having the data and documents on which Dr. Whitehouse relied were not bad enough, after four hours of questioning, he unilaterally declared the deposition over and walked out of the room. This is exactly the kind of delay that the Court was told would be avoided when the discovery schedule was presented. It is simply impossible for the short schedule to work—let alone comply with basic due process—if the Libby Claimants can get away with such conduct.

Rule 26(a)(2)(B) requires the disclosure of all information that experts consider in forming their opinions and testimony, including all data or other information. This Rule imposes

---

[4]  *See* Schwartz Decl. Ex. B, March 10, 2009 letter from Allen Schwartz to Daniel Cohn (asking for the missing exhibits in the Libby Claimants response to the ACC's discovery requests); Schwartz Decl. Ex. C, March 16, 2009 letter from Allen Schwartz to Daniel Cohn (asking for supplemental expert reports and suggesting a meet-and-confer to resolve issues relating to the report); Schwartz Decl. Ex. D, March 17, 2009 letter from Allen Schwartz to Daniel Cohn (asking for databases Dr. Whitehouse used in forming his opinions). The Libby Claimants refused to provide the numerous exhibits they reference in their February 20, 2009 *Response to Debtors' Request for the Production of Documents*. *See* Schwartz Decl. Ex. F.

a duty to disclose, without awaiting formal discovery requests, basic information that is needed to prepare for trial. Rule 37 imposes severe consequences for violating Rule 26. Unless the failure to produce data or other information is harmless—which is not the case here—the non-complying party is not permitted to use as evidence any testimony or information that should have been disclosed. That sanction is entirely appropriate here.

Alternatively, the Court should compel the Libby Claimants to produce the databases and documents that Dr. Whitehouse reviewed in connection with his report and testimony and award appropriate sanctions. Because the records at issue belong to the Libby Claimants, who have intervened here—and who seek rulings that may bind all other parties—none of this material is privileged. Third Circuit law is clear that a claimant places at issue his physician's diagnosis that he uses in a case, thus waiving any privilege. By intervening in this action and seeking relief based on their diagnoses, the Libby Claimants have waived any privilege.

The proposed Confidentiality Order would obviate whatever reasons for not producing their records the Libby Claimants may raise and also put all parties on equal footing. Importantly, Movants agree that medical information would be deemed confidential and filed with this Court under prescribed procedures. The people whose data is at issue are objectors who decided to intervene, object, and seek rulings that could be binding on all parties. And the documents at issue concern the claims and demands that are at the heart of this case. Movants will be prejudiced and their due process rights impaired if at the contested confirmation hearing some parties will have had access to the full record while others will have been shut out. All parties will also benefit if Movants obtain access to documents that could assist the parties in evaluating settlement before plan litigation goes any further.

3

## STATEMENT OF FACTS

*The Scheduling Order imposed*
*discovery deadlines.*

At the Plan Proponents' urging, on December 5, 2008, the Court entered a Case

Management Order that set an aggressive discovery schedule.[5]  On January 29, 2009, the Court

entered a slightly modified scheduling order.[6]  Under the Second Amended Case Management

Order, expert reports were due by March 16, preliminary witness lists by March 13, and written

fact discovery was also required to be served by January 23 as to Phase II issues.[7]  Rebuttal

expert reports were due by April 6 as to Libby Claimant issues, and are due as to all other issues

by May 15, 2009.[8]  In the run up to the entry of these orders, Arrowood and other parties

objected that the schedule could only work if the Plan Proponents and other parties complied

with all discovery obligations.

*On March 16, the Libby Claimants proffered*
*Dr. Whitehouse's purported expert opinion without*
*the underlying databases or documents.*

The plaintiffs' lawyers who purport to represent the Libby Claimants served Dr. Alan

Whitehouse's September 25, 2006 report on Grace and certain other parties.  The sum and

substance of his opinion is that people in Libby, Montana have a singularly unique and different

asbestos-related disease than those in other locations who have been exposed to asbestos.[9]  In

paragraphs 5 and 67 of his September 25, 2006 report, Dr. Whitehouse refers specifically to

---

[5]    *First Case Management Order Related to the First Joint Plan of Reorganization*, dkt. no. 20204, December 5, 2009.

[6]    *Second Amended Case Management Order Related to the First Amended Plan of Reorganization*, dkt no. 20622, January 29, 2009.

[7]    *Id.*

[8]    *Id.*

[9]    *See* Schwartz Decl. Ex. H (Dr. Whitehouse's September 25, 2006 report) at 27 ("There generally appears to be a distinct pattern for Libby asbestos disease.").

4

databases that he created in formulating his opinions.[10]  Elsewhere in his report, Dr. Whitehouse

refers to occupational histories on which he relies in formulating his opinion.[11]  The Libby

Claimants have not produced any of this information to Arrowood.

*Five of the most prominent doctors in asbestos medicine have reviewed*
*Dr. Whitehouse's work and found it unscientific and deeply flawed*

Dr. Whitehouse did not perform epidemiological studies to reach any of his conclusions

and there is no other academic support for his opinion in his expert report.[12]  Instead, he relied

mainly on case histories and extrapolated from his observations to reach conclusions about

causation.[13]  Dr. Whitehouse has been criticized, among other things, for relying on physicians

without training in the field in which they work[14] and for his close association to the plaintiffs'

lawyers who are funding the lawyers representing the Libby Claimants.[15]

Five world-renowned scientists and medical doctors, who are leaders in their respective

fields, have reviewed Dr. Whitehouse's reports and found them unscientific and deeply flawed.

---

[10]  *See* Schwartz Decl. Ex. H (Dr. Whitehouse's September 25, 2006 report) at paragraph 5 ("Since 1980 I have evaluated or treated over 700 patients for asbestos disease from Libby asbestos. Since about 2000, patient data has been tracked on a database."); *Id.* at paragraph 67 ("the data and other information considered in forming the above opinions and observations include: a. Patient information on patients in the Dr. Whitehouse 550 database.").

[11]  *See Id.* at paragraph 16 ("I have taken hundreds of histories of work exposure at the W.R. Grace mine and mill near Libby, Montana and am familiar with conditions in the various jobs there. I have also taken hundreds of histories of exposure from family members of workers and Libby community members."). In addition, Dr. Whitehouse testified that there are two other studies upon which he will rely upon for his opinions in this matter. (Whitehouse Dep. Tr. at 70-72, 191-192). Dr. Whitehouse's deposition reflects his reliance on these two studies. *Id.* Yet, neither were produced. These documents should have been produced.

[12]  *See United States v. W.R. Grace*, 9:05-cr-00007-DWM-1, dkt no. 976, W.R. Grace's Motion to Strike Dr. Alan C. Whitehouse's Testimony (D. Mont. March 10, 2009).

[13]  *Id.*

[14]  Dr. Whitehouse has acknowledged using a doctor trained in pediatric medicine for his studies. Schwartz Decl. Ex. G (Whitehouse Dep. Tr. at 42-43) ("[Stansbury]: 'And Dr. Brad Black has not completed a residency or a fellowship in radiology, pulmonology or occupational medicine, correct?' [Whitehouse]: 'That's correct.' [Stansbury]: 'His primary training is a pediatrician, correct?' ... [Whitehouse]: 'Yes. That's correct.'").

[15]  *See Id.* at 206-218 (testimony regarding the numerous "thank you" letters Dr. Whitehouse sent to Libby Claimants' counsel John Heberling for referring patients to Dr. Whitehouse for diagnosis of asbestosis.).

These doctors include Dr. Gary K. Friedman of the Texas Lung Institute[16] ("It is my opinion that

Dr. Whitehouse's medical or scientific opinions differ materially from the authoritative sources

which he has identified in the bibliographies attached to his publications and reports. . . . Dr.

Whitehouse has failed to demonstrate a scientific basis for alleging that individuals exposed to

"Libby Asbestos" products in Libby Montana would have any different disease or risk of

progression than individuals exposed to "Libby Asbestos" in other geographic locations." );[17] Dr.

Laura S. Welch ("Dr. Whitehouse's report draws a number of conclusions about deaths from

asbestos-related disease in the Libby population, and how these patterns differ from patterns seen

in other asbestos-exposed groups . . . these comparisons are not valid. . . .The methods Dr.

Whitehouse used for assigning cause of death are not what are generally accepted in use for

cohort mortality studies.");[18] and Dr. Gail D. Stockman, a medical doctor with a Ph.D. in

experimental biology and a former faculty member at the University of Texas M.D. Anderson

Hospital[19] ("When one piece of data from pulmonary function testing is extracted and discussed

separately from the tests as a whole, as when Dr. Whitehouse states, 'We find that the DLCO

defect is the leading indicator of severity in the Libby cohort,' the conclusions are at best

meaningless, and at worse, deceptive.").[20]

*A federal judge has already made critical*
*observations about Dr. Whitehouse's opinion*

Recently, in its criminal trial in Montana, Grace filed a *Daubert* motion to strike

Dr. Whitehouse's testimony as unreliable, arguing that he failed to conduct epidemiological

---

[16]   Rebuttal Report of Dr. Gary K. Friedman, dkt. no. 21205, Ex. 8 at pg. 1, April 9, 2009.

[17]   *Id.* at par. 16.

[18]   Rebuttal Report of Dr. Laura S. Welch, dkt. no. 21205, Ex. 2 at pg. 5, April 6, 2009.

[19]   Rebuttal Report of Dr. Gail D. Stockman, dkt. no. 21205, Ex. 1 at par. 1, April 6, 2009.

[20]   *Id.* at par. 50.

studies before opining about causation, and instead relied on "common sense" to reach his

purportedly scientific conclusions.[21]  On March 18, Judge Molloy, who is presiding over

Grace's criminal trial, expressed concern about the lack of any scientific method in

Dr. Whitehouse's opinion: "Doesn't [Dr. Whitehouse] undermine his own opinion when he says

that he's relying on his common sense? . . . We've got 15 people here with common sense.  They

need, if anything, his science."[22]

Indeed, Dr. Whitehouse admitted that he relied on common sense rather than

epidemiological studies:

> I'm not familiar with [the Bradford Hill criteria for determining causation]. *I'm a much more practical person. You know, I see 11 cases of mesothelioma come out of Libby, there is a lot of exposure there, that's causation as far as I'm concerned.* And from a practice standpoint from a physician, that's what you need, and that's the sort of thing that physicians rely on, basically.[23]

Dr. Whitehouse also testified at the criminal trial that he has no scientific basis for his opinion

that a wave or asbestos-related disease in Libby will continue into the future:

Q.    . . . And you don't have the science to make a scientific prediction, do you?

A.    Not to the numbers, no.

Q.    You don't have the exposure numbers and you don't have a curve.  True or not?

A.    I don't have exposure numbers and I do not have a curve.[24]

---

[21]    *United States v. W.R. Grace,* 9:05-cr-00007-DWM-1, dkt. no. 976, *Motion to Strike the Testimony of Dr. Alan C. Whitehouse* by W.R. Grace at 6-7 (D. Mont. March, 10, 2009).

[22]    *See* Tristan Scott, *W.R. Grace Trial. Defense Requests Testimony Be Stricken,* Missoulian, Mar. 19, 2009, http://www.missoulian.com/articles/2009/03/19/news/mtregional/news06.txt.

[23]    *United States v. W.R. Grace,* 9:05-cr-00007-DWM-1, Trial Tr. vol 7, 1522, March 4, 2009 (emphasis added).

[24]    *Id.* at 1512.

*The Libby Claimants rebuffed Arrowood's*
*efforts to obtain production of the databases and documents*
*underlying Dr. Whitehouse's report and testimony.*

The Libby Claimants did not voluntarily produce the information at issue. Arrowood's counsel sent a letter to the Libby Claimants' Counsel, Daniel Cohn, on March 10, asking him for the exhibits attached to the Libby Claimants' discovery responses to the ACC, which included databases on which Dr. Whitehouse relied.[25] Arrowood also proposed to meet Mr. Cohn at his Boston office. Mr. Cohn's partner, Christopher Candon, responded on March 11, stating that "[n]o documents have been or will be produced until the entry of a satisfactory protective/confidentiality order, so a trip by our office tomorrow afternoon is not needed. . . . We're reviewing whether to supply the documents subject to the discovery request to parties other than the parties that propounded the discovery once the protective/confidentiality order is in place."[26] On March 17, Arrowood sent another letter to Mr. Cohn citing paragraphs in Dr. Whitehouse's report that refer to databases and information he used to formulate his opinions and requested those databases.[27] In response, neither Mr. Cohn nor his partner provided the requested information. The Libby Claimants did not respond to a second email sent to Mr. Cohn and Mr. Condon on March 17, 2009 in which Arrowood, in an effort to resolve the issue, attached a proposed protective order.[28] Moreover, the Libby Claimants failed to move for a

---

[25] *See* Schwartz Decl. Ex. B, March 10, 2009 letter from Allen Schwartz to Daniel Cohn; *See* Schwartz Decl. Ex. R, Libby Claimant's Response to Official Committee Asbestos Personal Injury Claimants' First Set of Requests for the Production of Documents, February 20, 2009.

[26] *See* Schwartz Decl. Ex. E.

[27] *See* Schwartz Decl. Ex. D.

[28] *See* Schwartz Decl. Ex. W, email with attached proposed protective order from Tancred Schiavoni to Daniel C. Cohn and Cristopher M. Candon.

protective order and made unreasonable demands as they strung out discussions about a
consensual protective order.[29]

> *Dr. Whitehouse walks out of his deposition after causing*
> *everyone to travel to eastern Washington State.*

The Libby Claimants produced Dr. Whitehouse for deposition on March 19.[30] Arrowood
and others were invited to attend and cross-examine.[31] Counsel for the Libby Claimants would
only agree to make Dr. Whitehouse available in Spokane, Washington. Spokane is in the remote
south-eastern corner of Washington State. It takes a full day to get there. Four hours into the
deposition, Dr. Whitehouse announced that he was leaving and walked out.[32] The initial
examiner was not done with his questioning and the Libby Claimants did not allow anyone else
in attendance, including Arrowood's counsel, to ask any questions.[33] The Libby Claimants were
late in serving Arrowood with the Whitehouse supplemental expert report and a large number of
other insurers appear not to have been served at all.[34]

---

[29] *See* Schwartz Decl. Ex. U, email from March 26, 2009 through March 31, 2009 from Daniel C. Cohn to Grace's attorneys Brian Stansbury and Lisa Esiayan. Additionally, the purported confidentiality concerns that have been used to block cross examination of Dr. Whitehouse are undercut by the fact that Dr. Whitehouse's expert report has been posted on web site of the Missoulian without their objection. *See* Tristan Scott, *Bankruptcy Trial Reveals More Details of Asbestos Contamination*, Missoulian, April 5, 2009, http://missoulian.com/articles/2009/04/05/news/local/news03.txt.

[30] *See* Schwartz Decl. Ex. V (Notice of Deposition of Dr. Alan Whitehouse, dkt. no. 20970, March 12, 2009).

[31] *See Id.*

[32] *See* Schwartz Decl. Ex. G (Whitehouse Dep. Tr. at 268-269) ("[Mr. Stansbury]: 'Are you walking out of this deposition?' A: 'I'm walking out'"); *See Id.* at 270 ("Videographer: '[the deposition time] is four hours twenty four minutes.'")

[33] *See* Schwartz Decl. Ex. G

[34] The Libby Claimants failed to serve Dr. Whitehouse's supplemental expert report to Arrowood or other insurers by the March 16, 2009 deadline. Under the *Second Amended Case Management Order Related to the First Amended Plan of Reorganization*, dkt no. 20622, January 29, 2009, Supplemental Expert Reports were due by March 16, 2009, for all parties who had filed initial reports. Dr. Whitehouse Supplemental Expert Report is attached as Schwartz Decl. Ex. Q. The Libby Claimants instead sent Arrowood and the other insurers a notice of service listing the six entities on which they served the supplemental report. *See* Schwartz Decl. Ex. P (Notice of Service of Dr. Whitehouse's Supplemental Expert Report, dkt. no. 21018, March 16, 2009). The Libby Claimants further attached an affidavit of service to their notice of service to simply attest that they served their notice of service. In that affidavit the Libby Claimants state that they served insurers with the notice of service; not the actual supplemental report. Only after receiving a letter demanding the report did the

## ARGUMENT

## POINT I

### DR. WHITEHOUSE'S EXPERT REPORT SHOULD BE STRICKEN BECAUSE THE LIBBY CLAIMANTS HAVE FAILED TO PRODUCE THE DATABASES AND DOCUMENTS ON WHICH DR. WHITEHOUSE RELIED IN HIS REPORT AND TESTIMONY.

**A.    Rule 26(a)(2)(B) required the Libby Claimants to produce the documents on which Dr. Whitehouse relied in rendering his purported expert opinion.**

It is axiomatic that a party proffering an expert opinion must produce all "information considered by the [expert] in forming the [his or her] opinion." Fed. R. Civ. P. 26(a)(2)(B).[35] This includes the "data or other information considered by the witness in forming" his expert report and testimony. *Id.* That is precisely how the Third Circuit has interpreted Rule 26:

> Pursuant to Fed. R. Civ. P. 26(a)(2)(B), an expert witness's report must contain a complete statement of all opinions to be expressed and the data or other information considered by the witness in forming those opinions. A party that fails to disclose evidence required by Rule 26(a) will not be allowed to use that evidence unless the failure to disclose the evidence is harmless.

*Johnson v. Vanguard Manufacturing, Inc.*, 34 Fed. Appx. 858, 859 (3d Cir. 2002); *see also In re Safeguard Scientifics*, No. 01-3208, 2004 U.S. Dist. LEXIS 23494 at *5 (E.D. Pa. Nov. 17, 2004) ("If an expert's initial report does not include a complete statement of opinions to be expressed and the basis for these opinions, a court may prohibit the expert from later testifying on issues or opinions not addressed in the initial report"); *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) ("Every litigant in federal court is plainly entitled under Rule 26(a)(2)(B) to be given the

---

Libby Claimants provide Arrowood with the supplemental report. *See* Schwartz Decl. Ex. S, March 17, 2009 email from Cristopher M. Candon to Allen Schwartz and Tancred Schiavoni attaching the supplemental expert report. Mr. Candon stated that the Libby Claimants' failure to serve Arrowood was unintentional: "We did not exclude your firm intentionally, *but only served the plan proponents with the Libby Claimant's supplemental expert reports* and non-confidential reliance materials. *We served all participants in the plan confirmation proceeding the notice of filing of supplemental expert reports*." (emphasis added). Yet even after Arrowood alerted the Libby Claimants about their failure to serve the other parties—and they admitted this failure—they did not provide the supplemental expert report to all insurers

[35]    Fed. R. Civ. P. 26 and Fed. R. Civ. P. 37 are incorporated generally by Fed. R. Bankr. P. 9014, and respectively by Fed. R. Bankr. P. 7026, and Fed. R. Bankr. P. 7037

information spelled out therein, and none shoulder the burden to independently investigate and ferret out that information as best they can and at the expense of their client . . . the available penalty for failure to comply with Rule 26(a)(2)(B) is equally plain, and if a litigant refuses to comply with the requirements of the rule, he dose so at his peril"). Indeed, Rule 26 "imposes on parties a duty to disclose, *without awaiting formal discovery requests*, certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement." Fed. R. Civ. P. 26(a), Advisory Committee Notes (1993) (emphasis added).

The reasons for this rule are straightforward and self-evident. First, an opposing party cannot test an expert's opinion or formulate a rebuttal opinion without an opportunity to assess the underlying data and the conclusions drawn from it. As the Third Circuit has held, "Rules 26(a) and (b) recognize that being forced to cross-examine an opposing expert without the benefit of a meaningful opportunity to depose him *puts a party at a substantial disadvantage*." *Brooks v. Price*, 121 Fed. Appx. 961, 965 (3d Cir. 2005) (emphasis added); *McMillan v. Weeks Marine, Inc.*, 478 F. Supp. 2d 651, 659 (D. Del. 2007) ("The purpose of [Rule 26(a)(2)(B)] is to give opposing parties a reasonable opportunity to prepare for effective cross examination or to secure their own expert witness"). Second, the law forbids litigation by ambush and specifically the use of surprise expert opinions. *See Vandenbraak v. Alfieri*, No. 01-482, 2005 U.S. Dist. LEXIS 9882 at *9 (D. Del. May 25, 2005) ("[Rule 26(a)(2)(B)] is intended to protect opposing parties from unfair surprise and to allow such parties an opportunity to develop evidence to meet the expert testimony being proffered by the party that hired the expert"); *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996) ("The reason for requiring expert reports is 'the elimination of unfair surprise to the opposing party and the conservation of resources'") (quoting *Sylla-Sawdon*

*v. Uniroyal Goodrich Tire Co*, 47 F.3d 277, 284 (8th Cir. 1995); *see also Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) (same).

Sanctions under Rule 37 "provide[] an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." Fed R. Civ. P. 26(a)(2)(B), Advisory Committee Notes (1993). Accordingly, Third Circuit courts have not hesitated to uphold decisions striking expert testimony where a party has failed to comply with this rule. *See United States v. 68.94 Acres of Land*, 918 F.2d 389, 396-97 (3d Cir. 1990) (upholding the exclusion of plaintiff's expert when, at trial, the expert relied on data that plaintiffs had failed to disclose in accord with a pre-trial order); *Hagans v. Henry Weber Aircraft Distributors, Inc*, 852 F.2d 60, 64 (3d Cir. 1988) (holding that the exclusion of plaintiff's substitute pilot expert was a proper sanction for the plaintiff's failure to disclosure all the bases of the original pilot expert's opinion in accordance with the district judge's pre-trial order); *Brooks*, 121 Fed. Appx. at 965 (affirming the exclusion of plaintiff's expert witness for failing to file an expert report prior to the discovery deadline, depriving defendant of a meaningful opportunity to depose him and putting defendant at a substantial disadvantage); *see also Smith v. Botsford General Hospital*, 419 F.3d 513, 516 (6th Cir. 2005) (affirming the striking of plaintiff's expert witness for failure to disclose the data and other information considered in forming his opinion); *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 282-284, 289-91 (E.D. Va. 2001) (finding that government had a duty to preserve correspondence between expert and consultants, and that destruction of such evidence was intentional warranting sanctions for spoliation of evidence, and that an adverse inference against the expert's testimony and their credibility in general was warranted).

Here, Dr. Whitehouse actually refers to the databases that he used in formulating his opinions.[36] He also specifically refers to documents he relied on, which memorialize the Libby Claimants purported occupational and exposure histories.[37] The Movants have been severely prejudiced by being denied this information by the Libby Claimants. First, it will be difficult to refute Dr. Whitehouse's confirmation testimony without an opportunity to examine the data supporting his opinion—or to have done so before his deposition. Second, Movants have been precluded from preparing rebuttal opinions relating to Libby issues, which were due on April 6, 2009. Third, there will be no way for Movants to cure the prejudice if they are denied access to this discovery. The volume, breadth, and scope of the objections the Libby Claimants asserted at Dr. Whitehouse's deposition—together with his disruptive behavior—is proof of their disregard for their discovery obligations. The Court should therefore strike Dr. Whitehouse's opinion.[38]

Moreover, if the Plan Proponents have access to the withheld documents, then Movants should, too. *See American President Lines v. Hartford Fire Ins.* Co., 55 F.R.D. 61 (E.D. Pa. 1971) (once documents are made available to one party, documents must be made available to all parties). Because Movants and the Plan Proponents may have adverse interests at the

---

[36] In paragraph 5 of his expert report Dr. Whitehouse states that "Since 1980 I have evaluated or treated over 700 patients for asbestos disease from Libby asbestos. Since about 2000, patient data has been tracked on a database." *See* Schwartz Decl. Ex. H (Dr. Whitehouse's September 25, 2006 report). In paragraph 67 of his report, Dr. Whitehouse states that "the data and other information considered in forming the above opinions and observations include: a. Patient information on patients in the Dr. Whitehouse 550 database."

[37] *See* Id. at paragraph 16 ("I have taken hundreds of histories of work exposure at the W.R Grace mine and mill near Libby, Montana and am familiar with conditions in the various jobs there. I have also taken hundreds of histories of exposure from family members of workers and Libby community members.").

[38] If a party fails to obey a Court order concerning discovery or fails to respond to discovery, under Rule 37(b)(2)(B) a court may sanction a party by issuing an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters into evidence. See Fed. R. Civ. P. 37(b)(2)(B). Additionally, when a party fails to comply with its discovery obligations, Rule 26(g)(2)-(3) provides courts with the discretion to impose appropriate sanctions, including prohibiting the intransigent party from introducing evidence in support of its claims. The Advisory Committee Notes to the 1983 Amendment state that "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions."

confirmation hearing, Movants will be prejudiced if they do not receive access to the same

information as their adversaries.[39]

**B.    The Libby Claimants waived any privilege by**
**putting both their medical records at issue and having**
**Dr. Whitehouse rely on them in formulating his opinion.**

The databases and documents at issue are not privileged. But even if the physician-

patient privilege applied, the Libby Claimants have waived it. A patient who uses a physician's

diagnosis in litigation places that information at issue and waives the physician-patient privilege.

*See Williams v. Rene*, 72 F.3d 1096, 1103 (3d Cir. 1995) ("by putting his physical condition at

issue, plaintiff waived the physician-patient privilege with respect to the injuries claimed to have

been incurred in the accident"); *Eugene v. Miller*, No. 2007-CV-0013, 2008 WL 2224824, at *1

(V.I. May 27, 2008) ("where a party's physical condition is a factor or element of the party's

claims, no patient-physician privilege exists"); *Doe v. Dairy*, 456 F.3d 704, 718 (7th Cir. 2006)

("If plaintiff by seeking damages for her emotional distress places his or her psychological state

in issue, the defendant is entitled to discover any records of that state"); *Schoffstall v. Henderson*,

223 F.3d 818, 823 (8th Cir. 2000) (holding that plaintiff waived the psychotherapist-patient

privilege by placing her medical condition at issue). By intervening in this action, objecting, and

seeking affirmative relief based on their alleged diagnoses, the Libby Claimants have waived any

privilege that may have applied to their medical records.

State statutes also allow for disclosure of physician-patient privileged information when

patients put their health at issue. For example, in Montana, where the Libby Claimants allege

they were injured, the law provides as follows:

---

[39]   Arrowood joined the Debtors' document requests by seeking anything material produced to the Debtor. *See*
Schwartz Decl. Ex. 1 (Arrowood's January 5, 2009 document requests directed to Grace, Request No. 5). *See*
Schwartz Decl. Exhibit X, March 11, 2009 letter from Allen Schwartz to Janet Baer, counsel for the Debtors,
requesting the Libby Claimant databases

> by . . . commencing an action or asserting a defense which places in issue the
> mental or physical condition of a party to the action, the party examined or a party
> to the action waives any privilege the party may have in that action or any other
> action involving the same controversy, regarding the testimony of every person
> who has treated, prescribed, consulted, or examined or may thereafter treat,
> consult, prescribe or examine, such party in respect to the same mental or physical
> condition.

Mont. R. Civ. P. 35(b)(2). Delaware law is the same. Del. Uniform Rules Evid. 503(d)(3)

("There is no privilege under this rule for a communication relevant to an issue of the physical,

mental or emotional condition of the patient in any proceeding in which the patient relies upon

the condition as an element of the patient's claim or defense"). Indeed, other states have similar

rules providing that patients waive privilege if they put their medical condition at issue in the

litigation.[40]

Recently, an Eastern District of Pennsylvania court faced with facts similar to those here

held that "[b]y bringing suit based on diagnoses of asbestosis, Plaintiffs have essentially released

to the world their own medical information and waived any privilege to the privacy of that

information." *In re Asbestos Products Liability Litigation (No. VI)*, MDL Docket No. 875, 2009

WL 466381 at *3 (E.D. Pa. Feb 25, 2009). So too here. The Libby Claimants have intervened in

this bankruptcy proceeding because of their alleged asbestos injuries and base their claims on

medical information that their expert is using to formulate his opinion. They should not be

permitted to claim injury while attempting to bar access to the relevant information based on

medical privilege. This is not only contrary to the law in this circuit, but runs counter to

common sense.

---

[40] *See* Kan. Stat. Ann. § 60-427; N.D.R. Evid. 503; Va. Code Ann. § 8.01-399; Wis. Stat. Ann. § 905.04. *See also* Karl A. Menninger, II, *Confidentiality of Medical and Other Treatment Records*, 87 Am. Jur. Proof of Facts 3d 259, § 20 (2008).

## POINT II

### ALTERNATIVELY, THE COURT SHOULD COMPEL THE LIBBY CLAIMANTS TO PRODUCE THE WITHHELD DOCUMENTS, AWARD APPROPRIATE SANCTIONS AND ENTER THE PROPOSED CONFIDENTIALITY ORDER.

While the Court should strike Dr. Whitehouse's expert report, it also has the authority to compel the production of the withheld databases and documents and the power to enter a limited confidentiality order. Under Bankruptcy Rule 9018, this Court "may make any order which justice requires" to tailor an existing protective order to allow other parties in interest access to documents otherwise protected from public exposure. Courts entering a confidentiality order have an affirmative obligation to consider less restrictive alternatives. *See, e.g., In re Epic Associates V*, 54 B.R. 445, 450 (Bankr. E.D. Va. 1985) ("[l]ess restrictive alternatives to the closure order must be considered and rejected") (citation omitted). *Cf. In re Northstar Energy, Inc.,* 315 B.R. 425, 430 (Bankr. E.D. Tex. 2004) (sealing documents, but allowing access after party enters into confidentially agreement in order to "insure that the protection provided is particularly crafted for the circumstances presented").

There is a strong presumption, however, in favor of public access to court documents. The Supreme Court has recognized the right "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications,* 435 U.S. 589, 597 (1978). This right is "beyond dispute" in this Circuit. *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 161 (3d Cir. 1993) (recognizing the "existence of this right, which antedates the Constitution and which is applicable in both criminal and civil cases, is now 'beyond dispute'") (internal citations omitted); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 677-78 (3d Cir. 1988) (the existence of the public's common law right of access to judicial proceedings and

records is beyond dispute); *Copley Press, Inc. v. Peregrine Sys. (In re Peregrine Sys.)*, 311 B.R. 679, 687 (D. Del. 2004) (same).[41]

The right is broad in scope and covers any "judicial record." *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 192 (3d. Cir. 2001). Third Circuit courts have applied the common law right to a variety of judicial proceedings. *See Republic of Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653, 659-60 (3d Cir. 1991) (finding that the common law right of access to judicial proceedings and records applies to both criminal and civil proceedings). They have also extended it to a broad range of documents. *See, e.g., Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 782 (3d Cir. 1994) (settlement agreement deemed a judicial record); *Leucadia*, 998 F.2d at 161-64 (the common law public right of access envisions a "pervasive common law right 'to inspect and copy public records and documents, including judicial records and documents.' . . . [And there is a] presumptive right of public access to all material filed in connection with non-discovery pretrial motions, whether those motions are case dispositive or not") (citations omitted). The party seeking to prevent public access has to carry a "heavy" burden. *Miller*, 16 F.3d at 551. It must show a "clearly defined and serious injury." *Goldstein*, 260 F.3d at 194 ("specificity is essential"). The Third Circuit has held that "[b]road allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.*

To the extent that some of these documents have been produced to other parties in this case, it would be contrary to this rule to continue to withhold them from Movants. No "specific examples or articulated reasoning" have been presented that might be suffered by anyone if the documents were made accessible to Movants. In *Goldstein*, the Third Circuit found that the district court abused its discretion by not (i) providing a clear reason for why the documents were

---

[41] *See also Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) ("our strong presumption of openness does not permit the routine closing of judicial records to the public") (internal citations omitted).

not made accessible; (ii) recognizing the presumption of access; and (iii) determining if documents were the type of information to be protected or whether there was a clearly defined injury to be prevented. *Goldstein*, 260 F.3d at 198. Therefore, before denying Movants' access to the withheld information, the Court would need to provide a clear reason for doing so, after recognizing the presumption of access, and determine that it would be preventing a clearly defined injury (where the Confidentiality Order would be in place).

The proposed Confidentiality Order is undoubtedly a less restrictive alternative to barring an entire class of parties-in-interest from access to documents already in the Plan Proponents' possession. Neither the Libby Claimants—nor anyone else—have suggested that Movants would improperly use the documents on which Dr. Whitehouse relied. And the proposed Confidentiality Order should dispel any doubts that the Libby Claimants may have had. Therefore, if this Court does not strike Dr. Whitehouse's opinion and testimony, it should order the Libby Claimants to produce the withheld material and enter the narrowly tailored proposed Confidentiality Order.

## POINT III

### MOVANTS HAVE A RIGHT TO BE HEARD BECAUSE THE LIBBY CLAIMANTS HAVE INTERVENED, ASSERTED OBJECTIONS, AND SOUGHT RULINGS THAT COULD BIND ALL PARTIES.

While the Libby Claimants told this court that "the only party from whom we need discovery is Grace," in the names of various individual claimants they have propounded discovery on several insurers.[42] For example, the Libby Claimants propounded document requests on Arrowood in the names of Mary A. Doney and Vern Byington, and served discovery requests on other insurers, including Maryland Casualty Company, and Continental Casualty

---

[42] *See* Schwartz Decl. Ex. A, Hr'g Tr. at 140.

Company.[43] In their requests to Arrowood, the Libby Claimants sought, among other things, all documents relating to insurance coverage for claims asserted by the Libby Claimants against the Debtors, all communications between Arrowood and the Debtors regarding the Libby Claimants' claims, documents relating to claims against the Debtors, and potential insurer defenses against the Debtors. The Libby Claimants' discovery ran the gamut of potential confirmation issues. The insurers should have the most basic right to know the information on which the Libby Claimants' expert relied in formulating opinions in support of their claims and assertions.

On top of this, the Libby Claimants seek declarations from this Court that directly affect Movants' rights. They object to the Creditor Release provision, which provides that anyone voting in favor of or receiving property under the Plan release the Asbestos Protected Parties, including Settling Asbestos Insurance Companies, from all Claims relating to the Debtors and their operations prior to the Effective Date.[44] They also contend that the Plan injunction wrongfully prevents them from suing insurers for "independent claims," and ask the Court to limit the injunction so that they will be able to sue Settled Asbestos Insurance Entities who provided assets to the trust in exchange for finality.[45] They state—while referring to one insurer by name—that the Asbestos PI Channeling Injunction "would appear to bar the Libby Claimants

---

[43]   *See* Schwartz Decl. Ex. J, Mary A. Doney's First Request to Arrowood For Production of Documents, January 23, 2009; Schwartz Decl. Ex. K, Joinder of Vern Byington In the Debtors', Asbestos PI Future Claimants Representative's, and Official Committee of Asbestos Personal Injury Claimants' First Set of Requests To Arrowood for the Production of Documents, January 23, 2009; Schwartz Decl. Ex. L, Vern Byington's First Set of Interrogatories to MCC, January 23, 2009; See Schwartz Decl. Ex. M, Joinder of Mary A. Doney in the Debtors', Asbestos PI Future Claimants Representative's, and Official Committee of Asbestos Personal Injury Claimants' First Set of Requests to MCC for the Production of Documents, January 23, 2009; Schwartz Decl. Ex. N, Mary A. Doney's First Interrogatories to CNA, January 23, 2009; Schwartz Decl. Ex. O, Mary A. Doney's First Request to CNA for Production of Documents, January 23, 2009. Additionally, Libby Claimant Kirk White served discovery on Maryland Casualty Company and Elmer Biladeau and Mary Doney also served discovery on multiple insurers by filing Joinders in BNSF's discovery.

[44]   *See Libby Claimants' Objections to Debtors' Disclosure Statement For Joint Plan of Reorganization*, dkt no. 19803 at 84.

[45]   *Id* at 82-83.

from pursuing claims against Maryland Casualty Company (and other Grace insurers)" based on independent claims.[46] They additionally claim that the Plan wrongfully gives previously settled insurers Asbestos PI Channeling Injunction protection.[47] They also object to insurance proceeds not subject to an aggregate cap being placed in the Asbestos PI Trust, even if insurers contributed large amounts for such protection.[48] They directly state that "the Libby Claimants may not be barred from pursuing insurance that is not subject to aggregate limits."[49] All of these objections are directly aimed at the insurers' economic rights in this case. This Court should not allow the Libby Claimants to bar Movants from this information when they not only served discovery on insurers, but also are asking the court to rule that the Asbestos PI Channeling Injunction improperly limits their right to sue insurers. Indeed, their objections strike at the heart of the rights insurers receive in exchange for contributions to the 524(g) trust.

The Court should also not lose sight of the fact that the Libby Claimants are litigating to change Movants' rights under the Plan. Right now, settling insurers under the Plan receive the full protection of the Asbestos PI Channeling Injunction. The Libby Claimants seek to remove that full protection.[50] This is a direct attempt to change insurers' rights under the Plan. If they are successful, Settling Asbestos Insurance Companies would be stripped of many of their protections under the Plan. This alone is a basis for standing. *See Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291(3d Cir. 2005) ("While it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms"); *United States v. Cambio*

---

[46]  *Id.* at 82.

[47]  *Id.* at 86.

[48]  *Id.* at 88-89.

[49]  *Id.* at 89.

[50]  *Id.* at 82-89.

*Exacto, S.A.*, 166 F.3d 522, 528 (2d Cir. 1999) ("Substantial economic harm is plainly the type of injury for which parties may seek redress in federal court").

\*       \*       \*

The Libby Claimants cannot have it both ways. They should not be allowed to get away with denying basic information to insurers on the grounds that insurers have no right to this information, while also serving extensive discovery on insurers and litigating this case with the express goal of limiting insurers' rights.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court enter an order striking Dr. Whitehouse's report. The scope of the Libby Claimants' non-compliance with the Rule 26 and the Case Management Order—together with the disruptive behavior of Dr. Whitehouse at his deposition—is proof of their disregard for their discovery obligations. This relief is appropriate and will spare the estate from the cost and burden of perhaps weeks of deposition and hearing testimony by multiple rebuttal experts, all of whom will attest to the fact that Dr. Whitehouse's report is unscientific and deeply flawed, and his opinion unfounded. The estate need not bear this cost and burden since the Libby Claimants have not complied with their threshold disclosure obligations. Alternatively, the Court should compel the Libby Claimants to produce the databases and documents that Dr. Whitehouse generated and/or reviewed in formulating his opinion, award appropriate sanctions and enter the Confidentiality Order submitted with this motion as Appendix 1. Appropriate sanctions would include costs for traveling to southeastern-Washington State for the deposition that Dr. Whitehouse's unilaterally walked out of after four hours.

Dated:    April 9, 2009
          Wilmington, Delaware

                            By:    /s/Garvan F. McDaniel
                                   _____
                                   Garvan F. McDaniel, Esq. (#4167)
                                   BIFFERATO GENTILOTTI LLC
                                   800 N. King Street, Plaza Level
                                   Wilmington, DE  19801
                                   (302) 429-1900 Phone
                                   (302) 429-8600 Fax

                                   -and-

                                   Carl J. Pernicone, Esq.
                                   WILSON, ELSER, MOSKOWITZ
                                   EDELMAN & DICKER, LLP

22

150 East 42nd Street
New York, NY 10017-5639
Telephone: (212) 490-3000

-and-

Tancred Schiavoni, Esq.
Gary Svirsky, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York
(212) 326-2267

*Counsel to Arrowood Indemnity
Company, f/k/a Royal Indemnity Company*