# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 01-01139(JKF)
                                .
                                .
W. R. GRACE & CO.,              .
                                . 5414 USX Tower Building
                                . Pittsburgh, PA  15222
                                .
            Debtors.            .
                                . December 15, 2008
. . . . . . . . . . . . . . . . 1:08 p.m.

TRANSCRIPT OF MOTION HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Kirkland & Ellis, LLP
                            By:  DAVID BERNICK, ESQ.
                                 BARBARA HARDING, ESQ.
                                 JANET BAER, ESQ.
                                 LISA ESAYIAN, ESQ.
                                 CRAIG BRUENS, ESQ.
                            200 East Randolph Drive
                            Chicago, IL  60601

For the Debtors:            Kirkland & Ellis, LLP
                            By:  THEODORE FREEDMAN, ESQ.
                                 CHRISTOPHER GRECO, ESQ.
                                 DEANNA BOLL, ESQ.
                                 RASHAD W. EVANS, ESQ.
                                 MARC LEWINSTEIN, ESQ.
                            Citigroup Center, 153 East 53rd St.
                            New York, NY  10022

For the Debtors:            Reed Smith LLP
                            By:  JAMES RESTIVO, ESQ.
                                 TRACI REA, ESQ.
                            435 Sixth Avenue
                            Pittsburgh, PA  15219

Audio Operator:             Cathy Younker

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311      Fax No.  (609) 587-3599**

**APPEARANCES (Contd'):**

| | |
|---|---|
| For the Debtors: | Pachulski, Stang, Ziehl &Jones<br>By:  JAMES O'NEILL, ESQ.<br>919 North Market Street<br>17th Floor<br>Wilmington, DE  19899-8705 |
| For Official Committee:<br>of Asbestos Personal<br>Injury Claimants: | Caplin & Drysdale, Chartered<br>By:  PETER LOCKWOOD, ESQ.<br>     JEFF LIESEMER, ESQ.<br>     NATHAN FINCH. ESQ.<br>     WALTER SLOCOMBE, ESQ.<br>One Thomas Circle, NW<br>Washington, D.C.  20005 |
| | Caplin & Drysdale, Chartered<br>By:  RITA TOBIN, ESQ.<br>375 Park Avenue<br>New York, NY  10152 |
| For the Unsecured<br>Creditors' Committee: | Stroock & Stroock & Lavan<br>By:  KENNETH PASQUALE, ESQ.<br>     ARLENE KRIEGER, ESQ.<br>     LEWIS KRUGER, ESQ.<br>180 Maiden Lane<br>New York, NY  10038-4982 |
| For Official Committee<br>of Unsecured Creditors: | Duane Morris LLP<br>By:  MICHAEL LASTOWSKI, ESQ.<br>1100 North Market Street, Ste 1200<br>Wilmington, DE  19801-1246 |
| For the Property<br>Damage Committee: | Bilzin Sumberg Baena Price &<br>Axelrod LLP<br>By:  MATTHEW KRAMER, ESQ.<br>     SCOTT BAENA, ESQ.<br>     JAY SAKALO, ESQ.<br>200 South Biscayne Boulevard<br>Suite 2500<br>Miami, FL  33131 |
| For the Ad Hoc<br>Committee of Equity<br>Sec. Holders: | Dewey & LeBoeuf, LLP<br>By:  JENNIFER WHITENER, ESQ.<br>125 West 55th Street<br>New York, NY  10019 |

**APPEARANCES (Cont'd):**

| | |
|---|---|
| For the Future<br>Claimants<br>Representatives: | Orrick, Herrington & Sutcliffe, LLP<br>By:  ROGER FRANKEL, ESQ.<br>     RICHARD WYRON, ESQ.<br>Washington Harbour<br>3050 K Street, N.W.<br>Washington, D.C.  20007 |
| For Maryland Casualty<br>and Zurich Intl.: | Connelly Bove Lodge & Hutz, LLP<br>By:  JEFFREY WISLER, ESQ.<br>The Nemours Building<br>1007 North Orange Street<br>Wilmington, DE  19899 |
| | Eckert Seamans Cherin & Mellott,<br>LLC<br>By:  EDWARD LONGOSZ, II, ESQ.<br>1747 Pennsylvania Avenue, N.W.<br>Suite 1200<br>Washington, D.C.  20006 |
| For Sealed Air: | Skadden, Arps, Slate, Meagher &<br>Flom, LLP<br>By:  DAVID TURETSKY, ESQ.<br>     JAN BAKER, ESQ.<br>One Rodney Square<br>Wilmington, DE  19801 |
| Co-Counsel to Libby<br>Claimants: | Cohn, Whitesell & Goldberg, LLP<br>By: DANIEL C. COHN, ESQ.<br>    CHRISTOPHER CANDON, ESQ.<br>101 Arch Street<br>Boston, MA  02110 |
| For the Bank Lenders: | Landis Rath & Cobb, LLP<br>By:  RICHARD S. COBB, ESQ.<br>     KERRI KING MUMFORD, ESQ.<br>     JAMES GREEN, JR., ESQ.<br>919 Market Street<br>Wilmington, DE  19801 |
| | Paul Weiss Rifkind Wharton<br>& Garrison, LLP.<br>By:  REBECCA ZUBATY, ESQ.<br>1285 Avenue of the Americas<br>New York, NY  10019 |

**J&J COURT TRANSCRIBERS, INC.**

4

**APPEARANCES (Cont'd):**

For Continental
Casualty Company:                   Ford, Marrin, Esposito,
                                    Witmeyer & Gleser, LLP
                                    By: ELIZABETH DeCRISTOFARO, ESQ.
                                    Wall Street Plaza, 23rd Floor
                                    New York, NY  10005-1875

For Official Committee              Dies & Hile, LLP
of Asbestos Property                By:  MARTIN DIES, ESQ.
Damage Claimants:                   1601 Rio Grande, Suite 330
                                    Austin, TX  78701

                                    LECG
                                    By:  ELIZABETH DEVINE, ESQ.

For Various Claimant                Stutzman, Bromberg, Esserman &
Firms:                              Plifka
                                    By:  DAVID J. PARSONS, ESQ.
                                         SANDER L. ESSERMAN, ESQ.
                                    2323 Bryan Street
                                    Suite 2200
                                    Dallas, TX  75201

For Firemen's Fund:                 Stevens & Lee, P.C.
                                    By:  JOHN DEMMY, ESQ.
                                    1105 North Market Street, 7th Fl.
                                    Wilmington, DE  19801

For Fireman's Fund:                 Stevens & Lee
                                    By:  DAVID R. BEANE, ESQ.
                                    111 North Sixth Street
                                    P.O. Box 679
                                    Reading, PA  19603

For Owens-Illinois:                 McCarter & English
                                    By: KATHARINE MAYER, ESQ.
                                    Renaissance Centre, 405 N. King St.
                                    Wilmington, DE  19801

For Asbestos Property               Scott Law Group
Damage Claimants:                   By:  DARRELL SCOTT, ESQ.
                                    1001 East Main Street, Suite 500
                                    Sevierville, TN  37864

**APPEARANCES (Cont'd):**

For National Union Fire
Insurance Co.:

Zeichner Ellman & Krause, LLP
By:   MATTHEW RUSSELL, ESQ.
      ROBERT GUTTMANN, ESQ.
      MICHAEL DAVIS, ESQ.
575 Lexington Avenue
New York, NY  10022

For the Future
Claimants
Representatives:

Orrick, Herrington & Sutcliffe, LLP
By:   DEBRA FELDER, ESQ.
      JOSHUA CUTLER, ESQ.
      JONATHAN GUY, ESQ
Washington Harbour
3050 K Street, N.W.
Washington, D.C.  20007 For

For Federal Insurance
Company:

Cozen O'Connor
By:   JACOB C. COHN, ESQ.
1900 Market Street
Philadelphia, PA  19103

For Federal Insurance
Company:

Cozen O'Connor
By:   JEFFREY WAXMAN, ESQ.
Chase Manhattan Centre
1201 North Market Street
Wilmington, DE  19801

For Allstate Insurance:

Cuyler Burk, LLP
By:   ANDREW CRAIG, ESQ.
Parsippany Corporate Center
Four Century Drive
Parsippany, NJ  07054

For W.R. Grace:

W.R. Grace
By: WILLIAM CORCORAN, ESQ.
    MARK SHELNITZ, ESQ.
    PAUL NORRIS, ESQ.
7500 Grace Drive
Columbia, MD  21044

For State of Montana
Department of
Environmental Quality:

Womble Carlyle Sandridge & Rice
By:   FRANCIS MONACO, ESQ.
222 Delaware Avenue
Suite 1501
Wilmington, DE  19801

6

**APPEARANCES (Cont'd):**

For State of Montana:          Christensen, Moore, Cockrell,
                               Cummings & Axelberg, P.C.
                               By:  DALE R. COCKRELL, ESQ.
                               Two Medicine Building
                               160 Heritage Way
                               Suite 104
                               Kalispell, MT  59904

For Official Committee         Anderson Kill & Olick
of Asbestos Personal           By:  ROBERT M. HORKOVICH, ESQ.
Injury Claimants:              1251 Avenue of the Americas
                               New York, NY  10020-1186

For Official Committee         Campbell & Levine
ov Asbestos Personal           By:  MARK T. HURFORD, ESQ.
Injury Claimants:              800 North King Street
                               Suite 300
                               Wilmington, DE  19701

For CNA:                       Goodwin Procter, LLP
                               By:  DANIEL GLOSBAND, ESQ.
                                    BRIAN MUKHERJEE, ESQ.
                               Exchange Place
                               Boston, MA  02109-2881

For Grace Certain              Montgomery, McCracken, Walker
Cancer Claimants:              & Rhoads, LLP
                               By:  NATALIE D. RAMSEY, ESQ.
                               300 Delaware Avenue, Ste. 750
                               Wilmington, DE  19801

For David T. Austern,          Phillips, Goldman & Spence, P.A.
the Future Claimants'          By:  JOHN C. PHILLIPS, ESQ.
Representative:                1200 North Broom Street
                               Wilmington, DE  19806

                               Tre Angeli, LLC
                               By:  JOSEPH RADECKI, ESQ.

For the Property               Ferry Joseph & Pearce, P.A.
Damage Committee:              By:  THEODORE TACCONELLI, ESQ.
                               824 Market Street, Suite 19899
                               Wilmington, DE  19899

For Ford, Marin,               Ford, Marrin, Esposito, Witmeyer &
Esposito, Witmeyer             Gleser
& Gleser:                      By:  SHAYNE SPENCER, ESQ.
                               Wall Street Plaza
                               New York, NY  10005

**APPEARANCES (Cont'd):**

| | |
|---|---|
| For Official Committee<br>of Asbestos Property<br>Damage Claimants: | Brandi Law Firm<br>By: THOMAS BRANDI, ESQ.<br>    TERENCE D. EDWARDS, ESQ.<br>44 Montgomery St., Suite 1050<br>San Francisco, CA  94104 |
| For the State of CA,<br>Dept. of Gen. Services: | Hahn & Hessen, LLP<br>By:  CHRISTINA J. KANG, ESQ.<br>488 Madison Avenue, 14th Fl.<br>New York, NY  10022 |
| For Baron & Budd,<br>et al.: | Hogan Firm Attorneys at Law<br>By:  DANIEL K. HOGAN, ESQ.<br>1311 Delaware Avenue<br>Wilmington, DE  19801 |
| For the PD Committee: | Speights & Runyan<br>By:  DANIEL SPEIGHTS, ESQ.<br>    ALAN RUNYAN, ESQ.<br>    MARION FAIREY, ESQ.<br>200 Jackson Avenue, East<br>Hampton, SC  29924 |
| For David T. Austern: | Piper Jaffray & Co.<br>By:  JASON SOLGANICK |
| For Scotts Company: | Vorys, Sater, Seymour & Pease, LLP<br>By:  TIFFANY COBB, ESQ.<br>    ROBERT J. SIDMAN, ESQ.<br>52 East Gay Street<br>Columbus, OH  43216 |
| For Official Committee<br>of Asbestos Property<br>Claimants: | Richardson Patrick Westbrook &<br>Brickman, P.C.<br>By:  EDWARD J. WESTBROOK, ESQ.<br>174 East Bay Street<br>Charleston, SC  29401 |
| For Official Committee<br>of Asbestos Property<br>Claimants: | Hamilton, Rabinovitz & Alschuler<br>By:  FRANCINE RABINOVITZ, ESQ.<br>26384 Carmel Rancho Lane, Suite 202<br>Carmel, CA  93923<br><br>Conway Del Genio, Gries & Co, LLC<br>By:  GREGORY BOYER, ESQ. |

**APPEARANCES (Cont'd):**

| | |
|---|---|
| For Official Committee of Asbestos Property Claimants: | Lieff, Cabraser, Heinmann & Bernstein<br>By:  ELIZABETH J. CABRASER, ESQ. |
| | Pryor Cashman LLP<br>By:  RICHARD LEVY, ESQ. |
| | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>By:  CURTIS PLAZA, ESQ.<br>One Speedwell Avenue<br>Morristown, NJ  07962 |
| For W.R. Grace: | WILLIAM SPARKS, ESQ. |
| For W.R. Grace: | DAVID SIEGEL<br>PAUL NORRIS |
| For Lehman Brothers: | Lehman Brothers<br>By:  ANDREW CHAN |
| For Dow Jones News Wires: | Dow Jones News Wires<br>By:  PEG BRICKLEY |
| For Citadel Investment Group: | Citadel Investment Group<br>By:  ASHOK VASVANI |
| For Murray Capital Management | Murray Capital Management, Inc.<br>By:  MARTI MURRAY |
| For Morgan Stanley Senior Funding, Inc.: | Katten, Muchin, Rosenman LLP<br>By:  NOAH HELLER, ESQ.<br>    MERRITT PARDINI, ESQ.<br>    JEFF FRIEDMAN, ESQ. |
| For ERISA: | Lowenstein Sandler PC<br>By:  IRA LEVEE, ESQ.<br>65 Livingston Avenue<br>Roseland, NJ  07068 |
| For Her Majesty the Queen in Right of Canada: | Office of the Attorney General<br>By:  JACQUELINE DAIS-VISCA, ESQ. |

**APPEARANCES (Cont'd):**

| | |
|---|---|
| For Bank of America: | Richards, Layton & Finger, P.A.<br>By:  JASON MADRON, ESQ.<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE 19899 |
| For PD/FCR: | ALAN RICH, ESQ. |
| For Loan Maker/<br>Long Acre: | Pepper Hamilton<br>By:  DENNIS VERY, ESQ. |
| For Seaton Ins. Co.: | Drinker Biddle & Reath LLP<br>By:  MICHAEL F. BROWN, ESQ.<br>     WARREN PRATT, ESQ.<br>One Logan Square<br>18th & Cherry Streets<br>Philadelphia, PA  19103 |
| For Arrowwood Indemnity<br>f/k/a Royal Indemnity: | Wilson, Elser, Moskowitz, Edelman<br>& Dicker, LLP<br>By: CARL PERNICONE, ESQ.<br>New York, NY 10019<br><br>Bifferato, Gentilotti, Biden<br>& Balick, LLC<br>By:  GARVAN McDANIEL, ESQ.<br>800 N. King Street<br>Wilmington, DE  19899 |
| For Arrowwood Indemnity<br>f/k/a Royal Indemnity: | O'Melveney & Meyers, LLP<br>By:  TANCRID SCHIAVONI, ESQ.<br>Times Square Tower, 7 Times Square<br>New York, NY  10036 |
| For JD Capital: | JD Capital<br>By:  RYAN DUFFY, ESQ.<br>     TAI CURION |
| For the Equity Committee: | Kramer, Levin, Naftalis & Frankel,<br>LLP<br>By:  DOUGLAS MANNAL, ESQ.<br>     DAVID BLAVEY, ESQ.<br>1177 Avenue of the Americas<br>New York, NY  10036 |
| For the Blackstone<br>Group: | The Blackstone Group<br>By:  BRIAN BRESNAHAN |

**APPEARANCES (Cont'd):**

For the U.S. Trustee:
United States Trustee Department
By:  DAVID KLAUDER, AUSA
833 Chestnut Street
Suite 500
Philadelphia, PA  19107

For Fair Harbor Capital
LLC:
Fair Harbor Capital, LLC
By:  FRED GLASS

For Fresenius Medical
Care Holdings, Inc.:
McDermott, Will & Emery
By:  DAVID S. ROSENBLOOM, ESQ.
227 West Monroe Street
Chicago, IL  60606

For Century Indemnity:
White & Williams, LLP
By:  JOSEPH GIBBONS, ESQ.
1800 One Liberty Place
Philadelphia, PA  19103

For Loeb Partners:
Paul Weiss Rifkind Wharton
& Garrison, LLP.
By:  ANDREW ROSENBERG, ESQ.
1285 Avenue of the Americas
New York, NY  10019

For Kaneb Pipe Line
Operating Partnership,
et al.:
Fulbright & Jaworski
By:  STEVE PEIRCE, ESQ.
300 Convent Street
Suite 2200
San Antonio, TX  78205

For Bloomberg, LLP
Bloomberg, LLP
By:  STEVEN H. CHURCH

For Travelers:
Simpson, Thacher & Bartlett
By:  ELISA ALCABES, ESQ.
425 Lexington Avenue
New York, NY  10017

For Anderson Hospital:
BUD FERRY, ESQ.

For London Market
Companies:
Mendes & Mount, LLP
By:  ALEXANDER MUELLER, ESQ.
750 Seventh Avenue
New York, NY  10019-6829

**APPEARANCES (Cont'd):**

| | |
|---|---|
| For Everest Reinsurance<br>Co. & McKinley Ins. Co.: | Marks, O'Neill, O'Brien &<br>Courtney, P.C.<br>By:  JOHN D. MATTEY, ESQ.<br>     BRIAN KASPRZAK, ESQ.<br>913 North Market St., Suite 800<br>Wilmington, DE  19801 |
| For Everest Reinsurance<br>Co. & McKinley Ins. Co.: | Crowell & Moring, LLP<br>By: MARK D. PLEVIN, ESQ.<br>    LESLIE A. EPLEY, ESQ.<br>    LESLIE DAVIS, ESQ.<br>1001 Pennsylvania Avenue, NW<br>Washington, DC  20004 |
| For Borrowers Committee: | Zuckerman Spaeder LLP<br>By:  VIRGINIA GULDI, ESQ.<br>1800 M. Street, N.W. Suite 1000<br>Washington, D.C.  20036 |
| For SNSF Railway Co: | Pepper Hamilton, LLP<br>By:  LINDA CASEY, ESQ.<br>3000 Two Logan Square<br>18th & Arch Streets<br>Philadelphia, PA  19103 |
| For Fee Auditor: | Warren H. Smith & Associates PC<br>By:  WARREN H. SMITH |
| For Hartford Financial<br>Service Group: | Wilmer, Cutler, Pickering, Hale<br>& Dorr LLP<br>By:  MELANIE DRITZ, ESQ.<br>399 Park Avenue<br>New York, NY  10022 |
| For Serengeti: | Vinson & Elkins, LLP<br>By:  ARI BERMAN, ESQ.<br>Trammell Crow Center<br>2001 Ross Avenue, Suite 3700<br>Dallas, TX  75201 |

1       COURT CLERK:  All rise.

2       THE COURT:  Good afternoon everyone, please be
3   seated.

4       This is the matter of W.R. Grace, Bankruptcy Number
5   01-1139.  The list of participants I have by phone is Michael
6   Davis, Jeffrey Liesemer, Jason Solganick, Melanie Dritz,
7   Barbara Harding, Daniel Cohn, Walter Slocombe, Nathan Finch,
8   Peter Lockwood, Brian Bresnahan, Mark Hurford, Jonathan Guy,
9   Rita Tobin, Arlene Krieger, William Sparks, James O'Neill,
10  Theodore Tacconelli, Andrew Craig, Jacob Cohn, Christina Kang,
11  Susette Smith, Garvan McDaniel, Michael Lastowski, Daniel
12  Hogan, David Siegel, Paul Norris, John Demmy, Natalie Ramsey,
13  Jennifer Whitener, Theodore Freedman, John Phillips, Kerri
14  Mumford, Sandy Esserman, Martin Dies, Peg Brickley, Jeff
15  Waxman, Christopher Candon, Douglas Mannal, Darrell Scott,
16  Scott Baena, David Klauder, Debra Felder, Edward Westbrook,
17  Curtis Plaza, Warren Smith, Joseph Radecki, Thomas Brandi,
18  Francis Monaco, Jay Sakalo, Marion Fairey, Elizabeth Devine,
19  Andrew Chan, Daniel Speights, Elizabeth Cabraser, Alan Runyan,
20  David Beane, David Bernick, David Parsons, Janet Baer, Deanne
21  Boll, Lisa Esayian, Tiffany Cobb, Marti Murray, Christopher
22  Greco, Craig Bruens, Rashad Evans, Rebecca Zubaty, Matthew
23  Kramer, Brian Mukherjee, Richard Levy, Terence Edwards, Robert
24  Guttmann, Robert Horkovich, Shayne Spencer, Linda Casey, James
25  Green, and Ari Berman.

94

1 don't know, we haven't heard whether the insurers are agreeable
2 to this order as we have now amended it in light of the
3 requests that they've made.  And maybe the appropriate step now
4 is to find out whether they disagree.

5          THE COURT:  Mr. Schiavoni?

6          MR. SCHIAVONI:  Your Honor, Tancred Schiavoni for
7 Arrowwood Royal, and I negotiated this with the debtors.  The
8 big picture here, Judge, is that the debtors have proposed a
9 very aggressive schedule by any calculation.  We have expert
10 reports now due in 30 days from today, and for those of us who
11 are obligated to take a couple of days off for Christmas and
12 the holidays, we don't really even have the full 30 days to get
13 ready for those expert reports.

14          The notion here that when the debtors approached us
15 with an expedited schedule we said, look, we'll work with you
16 on the schedule but we'd like to have, up front, some
17 commitment from you that you're going to work with us, that
18 you're going to get to us some basic information, information
19 that really levels the playing field here so that we can go
20 ahead with you on this schedule, so that we're prepared to have
21 the basic information to put expert reports in, and also,
22 Judge, and I think we've made this very clear, that we only got
23 demands from the ACC on our open coverage very, very recently,
24 in the last couple of weeks.  There's no complaining about
25 that, but all of us have -- or most of us have expressed an

1 by Mr. Bernick.  I just wanted to make sure that that was

2 clear.  We don't see a need for any alterations to the carve

3 out.  A lot of that information was provided.  We consider it

4 to be attorney-client information, confidential privileged

5 information, information that should not have been produced in

6 the first place.

7          THE COURT:  What, the names?

8          MR. ESSERMAN:  No, no, no.  Just all the carve out

9 information.

10          THE COURT:  Okay.  Because names are certainly not

11 attorney-client information.

12          MR. ESSERMAN:  No.  We understand that.

13                    (Laughter)

14          MR. ESSERMAN:  We understand that.  Although social

15 security are confidential -- it's a --

16          THE COURT:  It's a confidential -- yes, because the

17 administrative office has certainly defined certain portions of

18 the --

19          MR. ESSERMAN:  Yes.

20          THE COURT:  -- social security numbers to be

21 confidential, but the names of the clients are certainly not

22 attorney-client information.  Okay.

23          MR. ESSERMAN:  But we understand the need to get

24 information quickly.  We've reacted quickly in a matter of

25 weeks, and the order as described by Mr. Bernick is fine with

121

1  us.

2      THE COURT:  All right.  Thank you.  Ms. Ramsey, are

3  you standing to say something, too?

4      MR. BERNICK:  We always like to hear from Ms. Ramsey,

5  so we would be disappointed if there weren't --

6      MS. RAMSEY:  Thank you, Your Honor.  I was standing

7  in case it was necessary for me to say something, but I think

8  Mr. Esserman and Mr. Bernick have covered the points that I

9  would like to make.

10     THE COURT:  All right.  Thank you.

11     MR. BERNICK:  Your Honor, we have a marked up copy of

12  the order that I've given to Mr. Schiavoni over there, and

13  we're hopeful that he can read through it.  And maybe in the

14  interim we can take up the last issue, which relates to the

15  Libby claimants.

16     THE COURT:  All right.

17     MR. BERNICK:  And this order does not cover the Libby

18  claimants.  However, Mr. Cohn is anxious to get clarity on what

19  his clients are going to get because it bears upon his position

20  with respect to scheduling.  I think that where we are with

21  respect to the Libby claimants is that they're agreeable to

22  this same order, and also -- well, I think where we are with

23  respect to the Libby claimants, and let me be more specific

24  about it, is that the only issue that remains insofar as we are

25  concerned with the Libby claimants is their ability to get the

 1 | other settlement information.  Am I correct about that, Mr.
 2 | Cohn?

 3 |          THE COURT:  I don't know what you mean by the other
 4 | settlement information.

 5 |          MR. BERNICK:  The third carve out is for --

 6 |          THE COURT:  Oh, the third carve out?

 7 |          MR. BERNICK:  Oh -- I mean the second carve out is
 8 | for --

 9 |          THE COURT:  All right.

10 |          MR. BERNICK:  -- the settlement information relating
11 | to settlement with others.

12 |          THE COURT:  Other attorneys.

13 |          MR. BERNICK:  And so, I -- I think that where we are
14 | is that we're able to reach an agreement with Mr. Cohn and his
15 | clients except on the question of their desire to get
16 | information about other settlements that have been reached.
17 | And I know that Mr. Cohn has some arguments to make on that
18 | score that are specific to his claimants, and therefore it
19 | might be appropriate while the carriers look at the order that
20 | relates to them if we could have that matter heard.

21 |          THE COURT:  All right.  Mr. Cohn?

22 |          MR. COHN:  Yes.  Thank you, Your Honor.  I do need to
23 | point out that we have -- that we have been asking for slightly
24 | different information from what the carriers wanted.  It's
25 | information that's very specific to our objections that you're

1  already somewhat familiar with from the disclosure statement

2  stage.   The three items of information that we wanted are, one,

3  the Grace pre-bankruptcy database.   My understanding is there's

4  no issue about that, but I'd just raise that as background.

5  The second is the personal injury questionnaires that were

6  submitted as part of the estimation process, and then the third

7  is the Rust Consulting Group compilation of the data from the

8  personal injury questionnaires.   And these are directly

9  pertinent to our objections because as you know the objection

10  is based on discrimination against the Libby claimants, both as

11  to medical criteria, exposure criteria, and also as it relates

12  to the fact that Libby claimants have -- indisputably were

13  harmed by Grace's asbestos as opposed to somebody else's,

14  whereas other claimants have all sorts of issues in proving

15  both exposure to Grace's asbestos and that the harm came from

16  Grace's particular asbestos.   And corresponding to that, they

17  have all sorts of other asbestos producers whom they can

18  pursue.

19          And so, it's against that backdrop, Your Honor, that

20  the -- this information about other claims is directly

21  relevant, and in particular settlement data about what kinds of

22  settlements other claimants can be getting from other asbestos

23  producers is very important and material to our case.

24          Now, in discussions with --

25          THE COURT:   Why, if they don't have claims against

**J&J COURT TRANSCRIBERS, INC.**

1  any other settlement -- any other producers, does it matter
2  what other settlements the claimants got from other producers?

3           MR. COHN:  I'm sorry.  If the Libby claimants don't
4  have --

5           THE COURT:  Claims against other producers does it
6  matter what other claimants got as settlements from other
7  producers?

8           MR. COHN:  Because the issue is discrimination under
9  the TDP, Your Honor.  If the TDP were to pay -- let's just say
10 that a Libby claimant had a claim against Grace, having
11 suffered $50,000 of damages, and so did some other person had
12 some claim against Grace and suffered $50,000 of damages, if
13 both of those claims are liquidated at $50,000, that's actually
14 discriminatory against the Libby claimants because the other
15 guy has, maybe 20, 25, 30 other pockets to look to for his
16 exposure.  It's not clear -- it may not even be clear that he
17 was exposed to Grace's asbestos at all, but even if he was
18 exposed to Grace's asbestos there are so many other people who
19 are responsible to one degree or another that that claim should
20 not be allowed against Grace on the same basis that a Libby
21 claimant's claim would get allowed based on indisputable
22 exposure to Grace's asbestos, and that clearly the damage could
23 only have been done by Grace's asbestos.

24          So, that's why these trust distribution procedures
25 have traditionally contained the phenomenon -- what's defined

1  as an extraordinary claim, Your Honor, which says that if you
2  were exposed to just this producer's asbestos, then you get a
3  claim -- you get a multiple of the -- what would otherwise have
4  been the liquidated value of your claim.  But the question is,
5  okay, are those provisions fair to the Libby claimants?  And
6  that's the issue that we need discovery on.  And that directly
7  bears on --

8            THE COURT:  So, you're unhappy with the multiple?
9            MR. COHN:  We're unhappy with the multiple and with
10 the criteria under the TDP whereby there is complete discretion
11 on the part of the trustees to take any Libby claim and say,
12 well, yes, it's true that your exposure was only to Grace's
13 asbestos, but we're not going to give you the multiple, so
14 that, in essence, is the objection.

15           THE COURT:  But if they don't like that, the decision
16 of the trustee, then they have the same remedy under the TDP
17 that everybody else has, don't they, which is to then pursue
18 the next remedy, you know, that ADR, or to take it back into
19 the tort system for liquidating the claim.

20           MR. COHN:  Well, that's the very problem, Your Honor.
21 First of all, the TDP says that the decision of the
22 extraordinary claims panel, which is who resolves this --

23           THE COURT:  Right.

24           MR. COHN:  -- is final.  Those are the words of the
25 TDP.  So, it would appear to us on our reading of the TDP that,

1   in fact, on that particular issue there is no recourse.   There

2   may be recourse on other issues, but there's no recourse on

3   that issue.   Second, Your Honor, even when you have recourse,

4   you know, let's say you -- it -- let's say it's not an

5   extraordinary claim issue, and so you can go to ADR, you go to

6   -- you know, you go to mediation, and then if that fails you go

7   to the tort system, there is a cap imposed on what you can get

8   through the tort system.

9           THE COURT:  Yes.

10          MR. COHN:  And that also is directly relevant to

11  whether our claims are being treated discriminatorily in the

12  sense that Libby claims are being paid less than their fair

13  share of the assets of the trust based on what a Libby claimant

14  could obtain through the tort system compared to what a non-

15  Libby claimant could obtain through the tort system.   So,

16  that's the nature of the objection, and we do intend to prove

17  that, Your Honor.  But among the things that we need to prove

18  -- among the items of discovery that we need to obtain is

19  information about these other claims, because when you're

20  talking about discrimination you are inherently comparing your

21  claim, the Libby claim, to how other claims are being treated.

22  Now, we have -- we have -- I said that --

23          THE COURT:  There are other sources for that

24  information, though, that don't violate the confidentiality

25  order that this Court agreed to in compelling those claimants

1  to submit that information to this Court for purposes of the
2  estimation hearing.

3        MR. COHN:  Your Honor, it is conceivably true that we
4  could do a -- we could do discovery directly against the law
5  firms that represent these folks --

6        THE COURT:  Or the other trusts, like the debtor did.

7        MR. COHN:  We could, Your Honor, and in that case
8  we'd be back here trying to confirm this plan some time in 2010
9  or 2011 because, as you know, that was a very lengthy process.
10  What we've been trying to here, Your Honor, is we are trying to
11  work within the time frames that the debtor wants to work
12  through in order to have that confirmation hearing occur within
13  the most expedited possible framework.  We're trying to work
14  with the debtor on this, Your Honor.  And the debtor, to be
15  candid, has worked with us.

16        The background of this, Your Honor, is that we
17  reached agreement with the plan proponents on a form of order
18  that would be issued that could address these issues of
19  confidentiality.  That was circulated to any party that might
20  be interested, and there arrived back, in effect, an objection
21  by Mr. Esserman and Ms. Ramsey on the issue of what we thought
22  was an issue of privacy, which is that there's this personal
23  identifying information.  It's inherently a part of these
24  personal -- these PI questionnaires, and it's part of the Rust
25  database.

**J&J COURT TRANSCRIBERS, INC.**

1           And so, the way we said we'd accommodate that is,
2    well, we don't actually -- we may not care about personal
3    identifying information.  We can say we don't need that right
4    now because right now we could just look at the Rust database.
5    The debtors can redact from it the personal identifying
6    information so that we'd just have, in effect, claimants by
7    number, if you will, and that may well prove to be all that we
8    ever need.  And the only thing that we needed -- and the only
9    thing that we needed in order to make that work was an
10   agreement by the plan proponents that if we ever needed to
11   introduce any part of the Rust database that the fact that we
12   had the redacted version would not be used to contest
13   admissibility, which I understand they are willing to say.  So,
14   in terms of the Libby claimants and the plan proponents, we are
15   -- you know, we are in sync.  We've reached a compromise, and
16   we're willing to proceed on that basis.

17          The remaining issue, having addressed the personal
18   identifying information issue, which, by the way, you know, as
19   personal injury people ourselves, I mean, we're very sensitive
20   to that.  We were -- we felt strongly that that information
21   should be protected when we went through the estimation
22   proceeding, so we're happy to respect that in this context.
23   But that leaves the remaining issue of the fact that among the
24   items of information that were filed with -- or part of the
25   Rust database as a result of being culled from the personal

1  injury questionnaires, are settlements with other parties.  And
2  as to that we understand Ms. Ramsey and Mr. Esserman -- or at
3  least Ms Ramsey to still have a problem with.  And maybe I
4  should let her speak for herself, but I think we've articulated
5  what the relevance is to the Libby claimants' objections to
6  confirmation.  It's very important information going, you know,
7  right to the heart of this issue of discrimination.  And I
8  don't see how we can -- I don't see how we can pursue our case
9  without having access to that information.

10        And then the question of how we get access to it,
11  well, this is clearly the most expedited way for us to get
12  access to it compared to pursuing what you might call
13  traditional discovery against the various other sources of
14  information, and that's solely an issue of time, Your Honor.
15  We're happy to pursue this discovery in the traditional way.
16  It's just that we'll then have to come back to you and ask for
17  the additional time within which to do it.

18        And what purpose, what interest of Ms. Ramsey or her
19  clients would that serve?  I mean, it's not -- this is not
20  information that we could possibly be precluded from having
21  because it is clearly relevant, and it -- clearly it's the Rule
22  26 standard, it doesn't even have to be relevant, it has to
23  lead to potentially admissible information.  So --

24        THE COURT:  But again, you don't need the personal
25  information.  You simply need the substance behind it.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. COHN:  We're past personal information, Your
2     Honor.  We're willing to agree --
3          THE COURT:  Even on the settlements?
4          MR. COHN:  Yes, Your Honor.
5          THE COURT:  Okay.
6          MR. COHN:  Yes.  Yes, Your Honor.  Yes.  I'm sorry.
7     Maybe I should have made that clearer.  So, this is solely --
8     this is not an issue of whether it's legitimate information for
9     us to have, it's just the question of what kind of gauntlet
10    will we have to run in order to get this information?  And we
11    would respectfully submit that the -- with a confirmation
12    hearing looming next year, the fact is that the only feasible
13    way for us to get this information is to use the compilation
14    that already exists in the form of the Rust database.
15         THE COURT:  All right.
16         MR. FINCH:  Your Honor, just so it's clear, the ACC
17    --
18         THE CLERK:  Your name, please?
19         MR. FINCH:  Nathan Finch for the asbestos claimants'
20    committee.  The ACC, and I believe the other plan proponents,
21    as well, would dispute the accuracy of many of Mr. Cohn's
22    factual contentions about the Libby claims, and we don't
23    concede the relevance of any of this.  As a way to try to
24    accommodate them as to the confidentiality issues, the ACC
25    takes no position on whether or not they can get access to this

1  confidential data; however, we don't have the right to weigh
2  the confidentiality protections of Mr. Esserman's clients or
3  Ms. Ramsey's with respect to settlements with other defendants
4  in -- either individually or in the aggregate.  And Your Honor
5  is correct.  There are a lot of other sources of publicly
6  available information about what the value of an all-in
7  mesothelioma case would be that Mr. Cohn could seek without
8  having to get access to this information.  But just by way of
9  example, when Grace settled cases it paid it several share of
10 the case.  Libby's right.  They only had typically Grace to
11 shoot at.  But the all-in value of a mesothelioma case
12 historically from Libby is a tiny, tiny percentage compared to
13 the all-in value of a mesothelioma case in other parts of the
14 country -- Texas, New York City, in California.  Mesothelioma
15 cases might be worth ten or 20 times what they are in Libby,
16 Montana, and that's the basis of the function of the caliber of
17 lawyers bringing them, and the jurisdictions which they try
18 them in.  And that available -- you can get that from the Rand
19 Report in 2005 that talks about those jurisdictional
20 differences.  And you can get them from open Court testimony
21 and other plan confirmation hearings, so I'm not conceding at
22 all that this is relevant.  I am saying that we're not going to
23 stand on confidentiality issues because it's not my issue, but
24 don't be taking my silence as to the relevance as an agreement
25 that it is relevant discovery.

**J&J COURT TRANSCRIBERS, INC.**

1              MR. BERNICK:  Your Honor, I think that the answer
2     here is very comparable to the answer that you gave with
3     respect to the insurers, albeit the context is slightly
4     different.   In both cases we're dealing with information that
5     the debtor and the plan proponents cannot control.  They only
6     have it pursuant to Court order, and therefore we have no
7     ability to agree to any other disposition, nor does the Court
8     really have the ability to say, well, I'm going to abrogate my
9     prior orders.  You would have to have before you the same
10    claimants and the same law firms, and be litigating anew the
11    question of whether, now, for this different purpose the
12    information should be compelled from people who are, at least
13    with respect to the insurers, as we know, and also with respect
14    to the Libby people, are clearly third parties.  We're talking
15    about information relating to a variety of other claimants.
16    Those claimants are third parties when it comes to the issue
17    that's been raised by the Libby claimants.  The Libby claimants
18    essentially are seeking discovery from third parties in order
19    to foster their own dispute with the plan proponents.  So, you
20    would have to have some kind of process that's served with
21    respect to the same people, same information.  We'd have to
22    have them hailed into Court for this purpose now, a different
23    purpose, and there would have to be some kind of proceeding.
24    So, really, Mr. Finch spoke to the desire of the ACC to be
25    cooperative in this.  That same desire has been demonstrated by

1  the law firms and their clients, as well, that is, Mr.
2  Esserman's clients, Ms. Ramsey's clients had been prepared to
3  be flexible and to say here's what we will agree to as a way of
4  resolving this problem, but there's no way, shape, or form that
5  the Libby claimants can really say I'm sorry, that's not
6  enough.  It's not really up to them to be able to say it.  And
7  the other way in which it's very similar to the situation with
8  respect to the insureds -- the insurers, is that the factual,
9  or the -- the predicate of relevance here is really -- is
10 really just not there at all, in the same fashion as it was for
11 the carriers.  They're really focused on their unsettled
12 policies, not litigation over the indemnity.  Here the argument
13 that is being made for relevance is one that, again, doesn't
14 hold very much weight, not that it can be dispositively
15 resolved.  But the TDP pays a multiplier under certain
16 conditions that -- and Mr. Cohn has problems with them, but
17 pays a certain multiplier, and he says on behalf of his clients
18 that that's discriminatory, it's not fair because it really
19 means that they're not treated the same way as other people.
20 And he says that that's so because really they have no other
21 recourse that Libby claimants, other than to sue Grace, whereas
22 other folks have the ability to sue lots and lots of other
23 people.

24         The comparison of fairness is an interesting thing,
25 but the point -- the basis of which fairness can be established

1  is completely the opposite of what Mr. Cohn has argued.  The
2  TDP -- the people of Libby only have the ability to argue
3  fairness by reference to the value of their claims, and their
4  claims can't be pursued against all of these other people.
5  They can only be pursued against Grace, but that's the way that
6  it was before the bankruptcy occurred.  So, the real issue is
7  does the TDP -- the real issue that Mr. Cohn is raising, and
8  I'm not saying it's a valid issue, or it's my issue, I'm not
9  characterizing it, but the real issue that Mr. Cohn seems to be
10 raising is a question of fairness that should be answered by
11 reference to, well, how did you guys fare in the tort system
12 previously?  So, the point of comparison has nothing to do with
13 how the TDP for other claims against other products compares to
14 their prior settlements, or to their settlements against others
15 in the tort system.  Those claims involved completely different
16 products, completely different other joint defendants, other
17 sources of money, and therefore there's no relationship.  The
18 point of comparison for his fairness point is with prior
19 settlements.  Well, the prior settlements are all set forth in
20 the claims of the database, so he should be doing a comparison
21 between how his clients -- again, according to his logic and
22 his issue, how the TDP fares by reference to what they will be
23 able to obtain as compared to prior settlements in Libby.
24         There is simply no relationship whatsoever between
25 the pie that exists with respect to settlements in the

135

 1  aggregate for people who are suing Monokote who worked on
 2  construction sites and had all kinds of other people to sue,
 3  and the people who were at Libby who were exposed to Monokote,
 4  but Libby operations, and have only one defendant to sue.  So,
 5  he has made no showing today that this world, this unbelievably
 6  complicated world of settlements, of claims involving other
 7  products, other exposures, other clients, has any relevance
 8  whatsoever to his own theory of fairness, the benchmark for
 9  which presumably would be prior settlements that took place in
10  the tort system by Libby claimants.

11          In any event, we're not going to be able to get this
12  issue answered today in any way that breaches the agreement
13  that already has been articulated by Mr. Esserman and Ms.
14  Ramsey.  The fact of the matter is that Mr. Cohn does not have
15  any kind of process that has been put before the Court that
16  would acquire power over these people for purposes of this
17  litigation.  So, what I would suggest is that we do what we can
18  do.  We get a protective order that follows form to the order
19  here.  Of course there are -- Mr. Cohn wants the Rust database.
20  We would have to call that out specifically.  But that we get
21  that done.  And if, then, at some point he wants to come in and
22  argue for something additionally, we can certainly entertain
23  that.  But then I think he's got to follow a process pursuant
24  to which he can obtain jurisdiction over these other folks for
25  this purpose of the case.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. COHN:  Your Honor, Mr. Bernick is incorrect on

2   both points.  First on the relevancy point, Your Honor, if this

3   were a hundred cent case I would have to acknowledge who cares

4   what other people are getting because the only point of

5   relevancy would be whether Libby claimants are getting what

6   they have historically been entitled to through the tort

7   system.  But for the asbestos PI claimants it's not a hundred

8   cent case, even thought it's a hundred cent case for everybody

9   else.  And I think it's a genuine curiosity as to why that

10  should be so.  And the reason --

11         THE COURT:  It's not a hundred percent case for any

12  personal injury claimant.

13         MR. COHN:  Yes, Your Honor.  But it is a hundred cent

14  case for all other creditors.

15         THE COURT:  Oh.  Yes.  I thought you meant the

16  personal injury -- other personal injury claimants were getting

17  --

18         MR. COHN:  No --

19         THE COURT:  -- a hundred cents.  They're not, either.

20  Everybody is subject to the -- to the same matrix.

21         MR. COHN:  No, that's -- well, yes, Your Honor, but

22  why is it that general unsecured claimants who have contract

23  claims are getting 100 cents on the dollar plus interest?  Here

24  you're being called upon to make rulings about what the right

25  interest rate should be.  Why are they getting a hundred cents

1  on the dollar plus interest when personal injury claimants are

2  receiving a percentage which is now being estimated at

3  somewhere in the range of 25 to 35 percent?  The answer --

4  well, I'd love to hear your answer.

5          THE COURT:  I -- I may have to adjudicate an issue

6  about that, Mr. Cohn, so I will keep my comments to myself

7  right now.

8          MR. COHN:  All right.  Well --

9          MR. BERNICK:  I think it's pretty simple, because

10  it's part of an overall consensual resolution, and he has -- he

11  and his clients have the right to vote against it, but there

12  hasn't been any explanation about why this discovery is

13  relevant to some legal objection to the agreement.

14          MR. COHN:  The explanation is, Your Honor, that other

15  -- that someone has apparently determined that it's worth

16  compromising asbestos personal injury claims at basically less

17  than a third of their value, their alleged value, and that

18  means I -- that there was something wrong with the strength of

19  the claims, or that the claims were valued wrong, or something,

20  because otherwise it would be --

21          THE COURT:  Or that the debtor needs the contract

22  claims to stay in business in order to pay the personal injury

23  claims.

24          MR. COHN:  Well, but that wouldn't explain why the

25  financial creditors, who Grace doesn't need ever again, that

1  wouldn't explain why the financial creditors are getting paid a
2  hundred cents on the dollar.  So, even -- I understand your
3  point, Your Honor, that if you're doing business with a vendor
4  there might be valid business reasons to discriminate, but here
5  a vast majority of the general unsecured claims that are being
6  paid in full plus interest, are mere financial --

7           THE COURT:  But that's not the point for today.
8  Here's the issue for today, Mr. Cohn.  The point is this.
9  There is a consensual agreement to do something today that gets
10 at least discovery started and underway unless you get
11 something.  So, the question is, do I sign an order today that
12 at least gets discovery started, or do I not sign any order,
13 have some process started because at this point I don't know --
14 I just don't know who has been served in terms of the personal
15 injury lawyers who -- who represent the clients who have
16 submitted the data -- the information in the database to start
17 with, because they probably will wish to be heard as to some of
18 what you're requesting, and I don't -- I am having some
19 difficulty at the moment without some, I think, disclosure
20 statement that's approved and plan on the table, putting the
21 relevance into context.

22          Now, maybe when I get the absolute disclosure
23 statement that I know is going forward, and the plan that I
24 know is going forward, maybe I'll see it.  I think for today
25 the best resolution would simply be let's do what everybody has

1 agreed upon.  Let's at least get this discovery underway and
2 start somewhere.  Maybe when you see what everybody has agreed
3 on you may decide that you really don't need the additional
4 information.  You may decide you do.  But it's without -- if I
5 enter this order it will be without prejudice to your coming
6 back saying I really do need the information because, or in the
7 meantime starting the discovery against any of the other groups
8 that are not subject to my confidentiality order.

9         MR. COHN:  Well, that's the second point, Your Honor.
10 And by the way, to answer your question, of course, you know,
11 we're happy to get whatever discovery this Court thinks it can
12 permit as of today, so we want to get started.  It's not an all
13 or nothing proposition.

14         THE COURT:  Okay.

15         MR. COHN:  But there is obviously the practical
16 consideration of what impact is this remaining discovery that
17 we don't get today going to have on the schedule for confirming
18 the plan.  And so, in that regard I do want to raise a
19 procedural issue concerning how we would go about getting this
20 information.  This information is in the debtor's possession.
21 This is now the debtor's information obtained through
22 discovery.  Remember in the estimation proceeding, while the
23 personal injury questionnaires were perhaps a novel form of
24 discovery, it was discovery, and that was the basis on which
25 Grace sought and this Court supplied the information.  So, that

1  information is now in Grace's hands.  The only party from whom
2  we need discovery is Grace.  To go to the Manville Trust, for
3  example, to get information that the Manville Trust only got
4  because other people gave it to them seems like a horribly
5  indirect and inefficient way to obtain information that is now
6  in the debtors' hands.

7          So, what I would respectfully submit, Your Honor, is
8  that procedurally what we should do is set up a procedure and a
9  time frame whereby we can -- we'll file a motion.  The motion
10  will be to obtain discovery from the debtor, but it should be
11  on notice to those who supplied the information, and we'll get
12  as complete a list of those people as we can based on, if you
13  -- I assume the debtor will supply this to us, you know, based
14  on what was done in the estimation proceeding.

15          MR. BERNICK:  Your Honor, if I can just raise a point
16  of process -- and excuse me, Mr. Cohn.  I -- there is very bad
17  weather that's coming through, and I'm very concerned that -- I
18  don't know if any of the others are concerned, that the flights
19  are, you know, we've got to get out to the airport.  And with
20  due respect to Mr. Cohn, if he wants to file a motion on this
21  subject, you know, I'm happy to accommodate whatever schedule
22  is appropriate.  I don't know -- if it's a motion directed
23  against Grace, that's certainly true.  If it's a motion that
24  would require relief from others, and I suspect that it will,
25  then he's going to have to be in contact with those folks.  I