# EXHIBIT C

1  Jon L. Heberling
   McGarvey, Heberling, Sullivan & McGarvey
2  745 South Main
   Kalispell, MT 59901
3  (406) 752-5566

4  Attorneys for Plaintiffs

5

6

7

8

9  MONTANA FIRST JUDICIAL DISTRICT COURT, LEWIS AND CLARK COUNTY

10

11  BILLIE J. SCHULL and CAROLYN         )    CAUSE NO. CDV-2001-704
    SCHULL, husband and wife,            )
                                         )
12  GEORGE F. CHAPMAN and SHIRLEY E.     :
    CHAPMAN, husband and wife,           )
13                                       :
    JODY R. DENNING,                     )
14                                       :
    WILLIAM B. FIEBELKORN and BONNIE     )
15  FIEBELKORN, husband and wife,        :
                                         )
16  ROBERT L. MACK and JANET MACK,       :    AMENDED COMPLAINT AND
    husband and wife,                    )    DEMAND FOR TRIAL BY JURY
17                                       )
    ORIN W. FREDENBERG and GLENNA        )
18  FREDENBERG, husband and wife,        :
                                         )
19  DONALD A. JOHNSON and MILDRED E.     :
    JOHNSON, husband and wife,           )
20                                       :
    ROBBIN I. REDMAN and DAVID REDMAN,)
21  wife and husband,                    :
                                         )
22  EDWARD B. BENOIT and MYRTLE          :
    BENOIT, husband and wife,            )
23                                       :
    RICHARD G. DAVIDSON and KAY          )
24  DAVIDSON, husband and wife,          :
                                         )
25  IVAN W. TROYER, SR., and ROSE        :
    TROYER, husband and wife,            )
26

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY
KALISPELL, MONTANA      Amended Complaint and Demand for Trial by Jury                    1

| | |
|---|---|
| 1 | VIRGENE LECOUNT and GENEVA LECOUNT, husband and wife, |
| 2 | GEORGE P. WILLIAMS, |
| 3 | EDDIE E. EGGERS and CAROL EGGERS, husband and wife, |
| 4 | |
| 5 | RANDY J. CARLSON and LESLIE F. CARLSON, husband and wife, |
| 6 | DON L. DAY and GLORIA J. DAY, husband and wife, |
| 7 | |
| 8 | NORITA D. SKRAMSTAD and LESTER L. SKRAMSTAD, wife and husband, |
| 9 | ALICE A. PRIEST and VERGIL P. PRIEST, wife and husband, |
| 10 | |
| 11 | ROBERT K. FULLER and BONNIE E. FULLER, husband and wife, |
| 12 | RUSSELL F. DUTTON and BRENDA DUTTON, husband and wife, |
| 13 | |
| 14 | YOKO T. CANNON, |
| 15 | JOHN H. LEIB and ROBIN LEIB, husband and wife, |
| 16 | LARRY E. LUDWIG, |
| 17 | BILLY L. FORE and JO F. FORE, husband and wife, |
| 18 | |
| 19 | DONALD D. COOK and ARNELDA COOK, husband and wife, |
| 20 | THOMAS J. ALLEN and ELEANORE ALLEN, husband and wife, |
| 21 | |
| 22 | DON BLAINE, |
| 23 | JERALD TREGO and TERI TREGO, husband and wife, |
| 24 | WALTER E. MASON and MARY MASON, husband and wife, |
| 25 | |
| 26 | BETTY A. WARNER and EDGAR WARNER, wife and husband, |

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY
KALISPELL, MONTANA

Amended Complaint and Demand for Trial by Jury

2

1  WALTER D. TORGISON,          )
2  LINDA R. COLLINSON and CHARLES H.  :
   COLLINSON, wife and husband,  )
                                 :
3  STEVEN D. MOLES and SUSAN M.  )
   MOLES, husband and wife,      :
4                                )
   KENNETH RIECH and CYNTHIA RIECH,  :
5  husband and wife,             )
                                 :
6  DAVE ROHAN and NAOMI ROHAN,   )
   husband and wife,
7                                )
   JOHN E. SCHNACKENBERG and SHARON :
8  SCHNACKENBERG, husband and wife,  )
                                 :
9  LAURA SCHNACKENBERG JOHNSON   )
                                 :
10  GEORGE G. SHATTUCK,          )
                                 :
11  HELEN L. BRICKEY and LLOYD E.  )
    BRICKEY, wife and husband,   :
12                               )
    RICHARD L. SHAVLIK,          )
13                               )
    BRUCE C. BAKER and FRANCES J.  )
14  BAKER, husband and wife,     )
                                 )
15  FRANCES J. BAKER and BRUCE C.  )
    BAKER, wife and husband,     )
16                               )
    ALAN R. MALLORY and BOBBYE   :
17  MALLORY, husband and wife,   )
                                 )
18  ALFRED M. DICKERMAN and LOIS D.  )
    DICKERMAN, husband and wife,  )
19                               )
    KEITH G. CHALMERS,           :
20                               )
    JACK C. FARRAR and ROSE FARRAR,  )
21  husband and wife,            )
                                 )
22  GARY D. SWENSON and BONNIE   )
    SWENSON, husband and wife,   :
23                               )
    GORDON L. KNOPP and JUDY E.  :
24  KNOPP, husband and wife,     )
                                 )
25  LOUIS JAM,                   )
                                 )
26  ROBERT O. BEAGLE and SHERRY L.  )

LAW OFFICES
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY
KALISPELL, MONTANA

Amended Complaint and Demand for Trial by Jury

3

1 | BEAGLE, husband and wife, )

2 | LAUREL L. PORTE and DAVID F. PORTE, )
| wife and husband,

3 | )

4 | CONSTANCE R. PHILBRICK and )
| TRUEMAN R. PHILBRICK, wife and )
| husband, )

5 | )

6 | EUGENE E. HAMANN and BEVERLY )
| HAMANN, husband and wife, )

7 | KEITH G. WOOD and NANCY WOOD, )
| husband and wife, )

8 | )

9 | LARRY JACOBSON, )

10 | DAVID SHELTON and ARLA SHELTON, )
| husband and wife, )

11 | DARRYN W. BAKER, )

12 | JANE J. WRIGHT and JACK WRIGHT, )
| wife and husband, )

13 | )

14 | MICHAEL C. McCOMAS and CHRISTINA )
| McCOMAS, husband and wife, )

15 | STEVEN H. SCHNACKENBERG and )
| DENISE SCHNACKENBERG, husband and )

16 | wife, )

17 | KELLY MacDONALD and JULIE )
| MacDONALD, husband and wife, )

18 | )

19 | FRANKLIN D. WIDIC and SANDRA )
| WIDIC, husband and wife, )

20 | DAVID R. STEPHENSON and CAROLE )
| STEPHENSON, husband and wife, )

21 | )

22 | MICHAEL R. SMITH, )

23 | EUGENE AUGE and DARLENE AUGE, )
| husband and wife, )

24 | Plaintiffs, )

25 | v. )

26 | STATE OF MONTANA, a governmental )

1  entity and MARYLAND CASUALTY
   COMPANY, a Maryland Corporation,        )
2                                          )
3                      Defendants.         )

   _____

4          COME NOW the plaintiffs and allege as follows.
                        PARTIES
5      1.    Plaintiffs are listed on Exhibit "A" attached hereto.
6      2.    The State of Montana is a governmental entity.
7      3.    Maryland Casualty is a Maryland corporation with its principal place
8  of business in Maryland.
                     FIRST CLAIM
9               (Negligence v. State of Montana)
10     4.    The listed plaintiffs were employed by W.R. Grace and Company
11 or its predecessor, at its Zonolite or vermiculite mining and manufacturing
   operations in Lincoln County, Montana.
12     5.    Throughout the years of plaintiffs' employment, they worked in an
13 environment that caused them to be exposed to and to inhale asbestos dust.
14     6.    At all times plaintiffs were ignorant of the nature and extent of the
15 life threatening risks and injury involved, and would not have continued to
   work in such an environment if they had known the true facts.
16     7.    W.R. Grace provided its workers no coveralls and no showers.  As
17 a result workers went home with asbestos dust on their clothing and in their
18 cars, thereby contaminating family members as well.  Listed plaintiffs are
   workers and family members who contracted asbestos disease due to asbestos
19 dust brought home by workers.
20     8.    Without knowledge of the nature and extent of the asbestos
   hazard, plaintiffs were denied the options of avoiding exposure, demanding
21 protective devices, demanding safer operations, or changing jobs.
22     9.    RCM 1947 § 69-105 (effective 1955 to 1967) provided that the
23 State Board of Health "shall . . . have general supervision of the interests of
   health and life of the citizens".
24     10.   RCM 1947 § 69-201 (effective 1955 to 1967) provided that the
25 "Board . . . shall . . . execute all of the duties in the field of industrial hygiene".
26     11.   RCM 1947 § 69-4106 (effective 1967 to 1971) provided that the

1   Board "shall . . . (d) . . . enforce . . . for the preservation of public health and
2   prevention of disease".
3       12.   RCM 1947 § 69-4207, now § 50-70-102, MCA (effective 1971
    to date) provides for a State policy that "(1) will protect human health and
4   safety . . . (2) [and for a ] . . . program of abatement . . . of occupational
5   diseases".
6       13.   RCM 1947 § 69-105 (effective 1955 to 1967) provided that the
    Board of Health "shall make sanitary investigations and inquiries regarding . .
7   . employment . . .".
8       14.   RCM 1947 § 69-202 (effective 1955 to 1967) provided that the
    Board of Health "shall . . . (3) make investigations of the sanitary conditions
9   . . . in the various industries".
10      15.   RCM 1947 § 69-4203 (effective 1967 to 1971) provided that the
    Board of Health "shall . . . investigate the conditions of work . . .".
11
        16.   RCM 1947 § 69-4110, now § 50-1-202, MCA (effective 1967 to
12  date) provides that the Board "shall . . . (2) study conditions effecting citizens
13  . . . (3) make investigations . . .".
14      17.   RCM 1947 § 69-4211.1, now § 50-70-105, MCA (effective 1974
    to 1999) provided that the Board "shall . . . (6) determine . . . degree of hazard
15  at any workplace".
16      18.   RCM 1947 § 69-202 (effective 1955 to 1967) provided that the
    Board "shall . . . (5) . . . work with such industries to remedy unsanitary
17  conditions".
18      19.   RCM 1947 § 69-4203 (effective 1967 to 1971) provided that the
19  Board "shall . . . (4) . . . cooperate with the industry . . . in . . . correcting
    conditions which are hazardous to health".
20
        20.   RCM 1947 § 69-4211, now § 50-70-105, MCA (effective 1971
21  to 1999) provided that the Board "shall . . . (3) . . . issue orders necessary to
22  carry out this act".
23      21.   RCM 1947 § 69-4211.1, now § 50-70-105, MCA (effective 1974
    to 1999) provided that the Board "shall (1) enforce board orders . . . (3)
24  develop . . . plan for . . . abatement . . . of occupational diseases".
25      22.   Montana Constitution, Article IX § 1(1) (effective 1973 to date)
26  provides that "the State and each person shall maintain and improve a clean

1  and healthful environment in Montana : . .",

2  23.   RCM 1947 § 69-105 (effective 1955 to 1967) provides that the
Board "shall gather information . . . as it may deem proper for diffusion".

3

4  24.   RCM 1947 § 69-4110, now § 50-1-202, MCA (effective 1967 to
date) provides that the Board "shall . . . (3) make investigations, disseminate

5  information . . .".

6  25.   RCM 1947 § 69-4211.1, now § 50-70-105, MCA (effective 1974
to 1999) provides that the Board "shall . . . (7) disseminate information".

7  26.   In 1956 the State Board of Health, Division of Disease Control,

8  undertook an industrial hygiene study of the Zonolite mine and mill operation
at Libby, Montana "to determine if any of the components of this company

9  were detrimental to the health of the employees.". The 1956 report, p. 3,

10  found high dust levels, that the dust contained asbestos, and that "the

11  asbestos dust and the dust in the air is of considerable toxicity." The report
cited medical literature and described the disease asbestosis. The report cited

12  the 1954 edition of Drinker and Hatch, Industrial Dust, which describes the

13  lung damage done by asbestosis as "permanent" (p.37). Drinker and Hatch

14  note the 1947 total of 160 deaths from asbestosis in Great Britain (p.39).
Drinker and Hatch also demonstrate a ten times greater than normal incidence

15  of lung cancer in asbestosis cases (p.46). The 1956 report found dust levels

16  greatly exceeding the asbestos limit, and recommended dust control measures.

17  The 1956 report, p. 6, states:

18        Full recognition should be given to the fact that direct control
      measures alone are usually not enough to insure safe working

19        conditions.   The method of operations, proper maintenance of
      equipment and of housekeeping are equally essential to maintain
      healthful conditions.

20

21        That until such time as the repair and maintenance of both the
      exhaust and ore conveying systems have been complete, all the

22        men in the dry mill be provided with and required to wear an
      adequate respirator.

23  No further action was taken in 1956 and 1957.

24  27.   In 1958, the State Board of Health, Division of Disease Control,
undertook another industrial hygiene study of the Zonolite mine and mill

25  operation "to determine if any of the components of this company found to be

26  detrimental to the health of the employees during the last study in August,

1  1956 had been reduced or alleviated since that time." The report again found
2  dust levels greatly exceeding the asbestos limit, and recommended dust control
3  measures. The report, at p. 8, cites medical literature showing that asbestosis
4  is "a progressive disease with a bad prognosis," often fatal. The report, at p.
5  8, finds that asbestos dust "concentrations had, as yet, not been reduced to
   a satisfactory level over all . . . The dry mill still required a considerable
6  amount of work to reduce the dust in this area to an acceptable level." No
   further action was taken in 1958, 1959, 1960, or 1961.
7       28.  In 1959, the State of Montana, State Tuberculosis Sanitarium
8  treated Glenn Taylor, a Libby Zonolite mine worker, for shortness of breath and
9  asbestosis.
10      29.  In 1961, the State of Montana, through formal death certificate
   reporting procedures, had notice that Glenn Taylor, a millwright at Zonolite in
11 Libby died of asbestosis, and that Charles Wagner, a mechanic at Zonolite in
   Libby, died of pulmonary fibrosis.
12      30.  In 1962, the State Board of Health, Division of Disease Control,
13 undertook an industrial hygiene study of the Zonolite mine and mill operation
14 "to determine if any of the components of the operations continued to be a
   threat to the health of the employees." The report again found dust levels far
15 in excess of the asbestos limit, and recommended dust control measures. The
16 report, at p. 4, concludes "as indicated in the findings of this study, it appeared
17 that no progress had been made in reducing dust concentrations in the dry mill
   to an acceptable level and that, indeed, the dust concentrations had been
18 increased, substantially, over those in the past."
19      31.  In 1963, the State Board of Health, Division of Disease Control,
20 undertook an industrial hygiene study of the Grace/Zonolite mine and mill. The
21 report again found dust levels greatly exceeding the asbestos limit, and
   recommended dust control measures. The report, at p. 3, found a "hazardous
22 condition existing at this plant." No further action was taken in 1963.
23      32.  In April of 1964, the State Board of Health, Division of Disease
   Control, undertook an industrial hygiene study of the Grace/Zonolite mine and
24 mill "to determine if compliance with previous recommendations for the control
25 of dust had been achieved." The report again found dust levels greatly
26 exceeding the asbestos limit, and recommended dust control measures. The

1    report cited an article by Dr. Irving Selikoff (1964), finding dangerous levels of
2    asbestos disease in asbestos insulation workers with "light intermittent
3    exposure to asbestos." The State knew that the Libby workers had heavy and
     frequent exposure to asbestos. The 1964 report states at p. 3, "the asbestos
4    content of the material with which you are working appears to provide some
5    serious potential for the development of disease if not properly controlled. In
     addition, the discharge of large volumes of asbestos-laden dust at ground levels
6    sets up a condition where all members of the plant can be exposed in addition
7    to those who work in the dry mill." The 1964 report, p.3, also warns of
8    "possible widespread carcinogenic air pollution."
9          33.    In September, 1964, the State Board of Health, Division of Disease
     Control, undertook an industrial hygiene study of the Grace/Zonolite mine and
10   mill "to determine if the concentrations were excessive as has been found in
11   many previous studies." The report again found dust levels greatly exceeding
     the asbestos limit, and recommended dust control measures. The report states
12   at p. 3 "the dust discharged at ground level from the main dust collection fan
13   was continuously contaminating the whole plant work area and needs to be
14   either raised substantially so the dust-laden air discharges substantially above
     the plant area or that cleaning be provided. There was much reentry of this
15   dust into the working environment." The report concludes at p. 3 with the
16   "hope that continued work to reduce dust concentrations will be done and that
17   a continuous operation at acceptable levels will be achieved soon."
18         34.    In 1964, the State of Montana, through formal death certificate
     procedures, had notice that Albert Barney, a mill worker at Zonolite in Libby
19   died of cor-pulmonale.
20         35.    In 1966, the State of Montana, through formal death certificate
21   reporting procedures, had notice that Walter McQueen, a miner from Libby,
     died of asbestosis.
22         36.    In 1967, the State Board of Health, Division of Disease Control,
23   undertook an industrial hygiene study of the Grace/Zonolite mine and mill "to
     determine compliance with previous recommendations." The report, at p. 2,
24   concluded "as in the past, the need for particularly close attention to the
25   functioning of the dust control system, condition of duct work, . . . was
26   apparent. It was also apparent that a strict housekeeping program must be

1   maintained."

2       37.    In November 1967, evidence was presented to the Chairman of the
3   State Industrial Accident Board that another worker at the Grace/Zonolite mine
    and mill had been diagnosed with asbestosis from work in the warehouse.
4       38.    In 1974 the Montana State Department of Health performed an
5   investigation of the airborne asbestos exposure at the Grace mine and mill. No
    action was taken.
6       39.    From 1967 to about 1974, Grace regularly reported on the status
7   of dust control at its operations in Libby to the State of Montana.
8       40.    All the above described reports of the State of Montana, Division
    of Disease Control, were delivered to W.R. Grace & Co., or its predecessor.
9   None of the reports were made public, nor were the Grace workers or their
10  families warned of what the State had found.
11      41.    In 1971-1976, a number of federal agency inspections of the Grace
    mine and mill showed violations of asbestos dust control requirements. The
12  State of Montana was either a participant in said inspections or was copied in
13  on the reports of said inspections. Federal inspections in 1971, 1972, 1973,
14  1974 and 1975 found dangerous levels of asbestos dust at the Grace mine and
    mill. Again the State of Montana did nothing to warn the workers or their
15  families of the dangers of asbestos disease.
16      42.    From 1976 to a date after 1990, the State of Montana continued
17  to inspect the Grace mine and mill for occupational health hazards. In the
    1980s and up to 1998, the State of Montana had many occasions to review
18  and act upon matters relating to the W.R. Grace operations. The State never
19  did warn or act to protect the plaintiffs.
20      43.    By 1971, 14 workers at the Grace mine and mill had died of
    asbestos disease.
21      44.    The cause of action in this case arose after July 1, 1973, and there
22  is no sovereign immunity. (Art. II §18, 1972 Montana Constitution.)
23      45.    Plaintiffs as employees at the Grace/Zonolite mine and mill
    operation at Libby, Montana, and family members of employees, were at all
24  times members of the class of persons the above statutes intended to protect
25  from exposure to toxic asbestos dust, found hazardous by the State Board of
26  Health, Division of Disease Control.

46.   At all times pertinent herein, the State of Montana had a continuing duty to plaintiffs to gather information, to protect and to warn plaintiffs.

47.   The State Board of Health, Division of Disease Control, undertook specific action to cause corrective measures to be taken to protect plaintiffs.

48.   The State of Montana negligently failed to take sufficient action to protect plaintiffs from known hazards of asbestos exposure.

49.   The State of Montana negligently failed to gather sufficient information as to the extent of disease in workers at the Grace/Zonolite mine and mill operation.

50.   The State of Montana negligently failed to warn plaintiffs of the hazards of asbestos exposure.

51.   As a direct and proximate result of the conduct of the State of Montana, its agencies and agents as described above, plaintiffs suffer from asbestos disease which was diagnosed on the dates listed on Exhibit "A" attached hereto, due to asbestos exposure from the Grace/Zonolite mine and mill.

## SECOND CLAIM
### (Violation of the Montana Constitution)

52.   All paragraphs above are incorporated by this reference.

53.   Plaintiffs have the following inalienable rights, pursuant to the Montana Constitution, Article II, § 3:

> All persons are born free and have certain inalienable rights. They include the right to a clean and healthful environment and the rights of pursuing life's basic necessities, enjoying and defending their lives and liberties, acquiring, possessing and protecting property, and seeking their safety, health and happiness in all lawful ways.

54.   Plaintiffs have the further constitutional rights pursuant to the Montana Constitution, Article IX, § 1:

> The state and each person shall maintain and improve a clean and healthful environment in Montana for present and future generations.

55.   The past, present and continuing tremolite asbestos exposures caused and allowed by the State of Montana violate the inalienable right of plaintiffs to a clean and healthful environment, and breach the State's duty to

1  maintain and improve a clean and healthful environment for plaintiffs.

2  56.  As a direct, proximate and legal result of the conduct of the State
3  of Montana, plaintiffs have been exposed to and harmed by dangerous
   tremolite asbestos.

4  DAMAGES

5  57.  As a direct and proximate result of the acts of the State of
   Montana, the plaintiffs have suffered and will suffer:

6  a.  Loss of enjoyment of their established course of life;

7  b.  Loss of services which can no longer be performed;

8  c.  Physical, mental and emotional pain and suffering;

   d.  Medical expenses, rehabilitation expenses and related expenses;
9      and

10 e.  Loss of insurability for medical coverage.

11 THIRD CLAIM

   (Consortium v. State of Montana)
12
13 58.  All paragraphs above are incorporated by this reference.

   59.  As a result of the acts of the State of Montana above described,
14 the plaintiffs' spouses listed on Exhibit "A" attached hereto have substantially
   lost and will lose the care, comfort and society of their spouses, all to their
15 damage and detriment.

16 FOURTH CLAIM

17 (Negligence v. Maryland Casualty)

18 60.  Plaintiffs    Priest              Fuller
                      Cannon             Brickey
19                    Leib               Baker
                      Ludwig             Chalmers
20                    Cook               Dickerman
21                    Blaine             Farrar
22                    Warner             Swenson
                      Collinson          Knopp
23                    Rohan              Jam
24                    Schnackenberg, John Beagle
25                    Johnson            Wood
                      Shattuck           Shelton
26

1      Schnackenberg, Steven    MacDonald
2          Widic                Stephenson, and
3          Auge

make the following claims against Maryland Casualty Company.

4      61.    All paragraphs above are incorporated by this reference.

5      62.    Maryland Casualty Company was the workers' compensation
       carrier for W.R. Grace from June 30, 1962 to June 30, 1973.
6
7      63.    Maryland Casualty's professional staff included industrial hygienists
       and medical doctors with expertise in occupational disease. Maryland Casualty
8      was well aware of the hazards of asbestos exposure.

9      64.    At all times, Maryland Casualty knew of the asbestos disease
       exposure at the Grace Libby operations, and that workers were diseased and
10     dying from asbestos exposure, and that a hazardous condition existed.

11     65.    Maryland Casualty knew that at all times asbestos dust readings
       exceeded the asbestos standard, and knew or should have known that at
12
       Grace wherever there was visible dust in the air, there was a violation of the
13     asbestos standard.

14     66.    Maryland Casualty knew that the 1959 series of chest x-rays on
       the Libby workers showed a one-third incidence of abnormal chest x-rays.
15
16     67.    Maryland Casualty knew that the 1964-1973 annual series of
       chest x-rays on the Libby workers showed a 25% plus incidence of abnormal
17     chest x-rays.

18     68.    Maryland Casualty knew that a 1965 study showed 20% incidence
       of asbestosis in the Libby workers, with a likely incidence of twice that upon
19     thorough testing.

20     69.    Maryland Casualty knew or should have known that from 1961
       forward men were dying of asbestos disease, and that each year more became
21     diseased.

22     70.    Maryland Casualty knew or should have known that there were no
23     showers for workers, no coveralls for workers, and that workers went home
       and into the community covered with asbestos dust, which was hazardous to
24     all those who might come into contact with it.

25     71.    Maryland Casualty's engineering division and medical division
26     undertook to design an industrial hygiene program for control and prevention

1  of asbestos dust and disease for the benefit of the Libby workers, their families
2  and the community.

3  72.    In so doing, Maryland Casualty had a duty of reasonable care to
   the Libby workers, their families and the community.

4  73.    Maryland Casualty was negligent in design of the industrial hygiene
5  program:

6      (a)    in failing to include sufficient measures for education of workers
           in the hazards of asbestos exposure;

7      (b)    in failing to include measures to warn workers, their families, and
8             the community of the hazards of asbestos exposure;

9      (c)    in failing to include sufficient measures and standards for dust
           control through housekeeping, ventilation and exhaust air cleaning;

10     (d)    in failing to include sufficient measures and standards for
11            maintenance of equipment and premises; and

    (e)    in failing to include a sufficient medical monitoring program.

12 74.    Maryland Casualty undertook to provide industrial hygiene services
13 for the benefit of Grace employees, their families and the community.

14 75.    In so doing, Maryland Casualty had a duty of care to the Libby
   workers, their families and to the community.

15 76.    Maryland Casualty was negligent is this undertaking to provide
16 services:

17     (a)    in failing to recommend or require sufficient measures and
18            standards for employee education, warning the workers, their
           families and the community, protection against asbestos dust
19            going into workers' homes and into the community, dust control
20            (including housekeeping, ventilation, exhaust air cleaning and
           maintenance) and medical monitoring;

21     (b)    in failing to sufficiently test and monitor the effectiveness of dust
22            control at all locations where there was dust;

23     (c)    in failing to obtain medical information on the incidence of disease
           and deaths at the Grace operations from Grace and from public
24            agencies; and

25     (d)    in failing to sufficiently study and use the information on dust
26            control and asbestos disease that it did have.

77. Maryland Casualty's representatives with expertise in industrial hygiene inspected the Grace Libby operations.

78. In so doing, Maryland Casualty had a duty of reasonable care to the Libby workers, their families and to the community.

79. Maryland Casualty was negligent in inspection of the Grace Libby operations, in failing to report and act upon known hazardous conditions due to insufficient worker education, insufficient warnings to workers, their families and to the community, insufficient dust control (including housekeeping, ventilation, exhaust air cleaning and maintenance), and insufficient medical monitoring.

80. Plaintiffs above listed were exposed to asbestos dust and fibers as stated on the chart Exh. A hereto.

81. As a direct and proximate result of the negligence of Maryland Casualty, Plaintiffs above listed have been diagnosed with asbestosis disease on the dates stated on the chart Exh. A hereto.

### FIFTH CLAIM

#### (Aiding and Abetting v. Maryland Casualty)

82. All paragraphs above are incorporated by this reference.

83. Maryland Casualty knew the Grace Libby operations were dangerously substandard, and hazardous to workers, family members and community members who came into contact with asbestos dust.

84. Maryland Casualty encouraged, advised, aided, supported, assisted and abetted Grace in its dangerously substandard operation.

85. Maryland Casualty aided Grace with its professional industrial hygiene services.

86. Maryland Casualty designed a dust control program for the Grace Libby operation.

87. Maryland Casualty gave Grace substantial assistance in concealing the asbestos hazard from the workers, the unions and the public. At the time of the first worker's compensation case for asbestosis, Maryland Casualty knew that the only persons aware of the 25% plus incidence of abnormal chest x-rays in the Libby workers was Dr. Little, the radiologist, and Grace. Maryland Casualty recommended that the case be settled to avoid disclosure of the results to the union and to the general public. Also, Maryland Casualty knew

1  of the industrial hygiene reports by the State of Montana, and the findings of
2  dangerous levels of asbestos at Grace.    Again, Maryland Casualty
3  recommended settlement to avoid disclosure of the state reports to the unions
   and to the general public.
4      88.    Maryland Casualty aided and abetted Grace's course of action by
5  concealing the asbestos hazard, and the extent of disease and death, and by
   failing to warn the workers, their families and the community.
6                          SIXTH CLAIM
7                  (Consortium v. Maryland Casualty)
8      89.    All paragraphs above are incorporated by this reference.
       90.    As a result of the acts of the State of Montana above described,
9  the plaintiffs' spouses listed on Exhibit "A" attached hereto have substantially
10 lost and will lose the care, comfort and society of their spouses, all to their
11 damage and detriment.
12                            DAMAGES
       91.    As a direct and proximate result of the acts of Maryland Casualty,
13 the plaintiffs have suffered and will suffer:
14     a.    Loss of enjoyment of their established course of life;
15     b.    Loss of services which can no longer be performed;
       c.    Physical, mental and emotional pain and suffering;
16     d.    Medical expenses, rehabilitation expenses and related expenses;
17           and
       e.    Loss of insurability for medical coverage.
18
19                        PRAYER FOR RELIEF
20     WHEREFORE, the plaintiffs pray for damages against the State of
   Montana in an amount not to exceed $750,000 per claim, and against
21 Maryland Casualty as follows:
22     1.    Reasonable damages for lost enjoyment of established course of
   life, past and future.
23     2.    Reasonable damages for loss of services which can no longer be
24 performed.
25     3.    Reasonable damages for physical, mental and emotional pain and
26 suffering, past and future.

4.    Reasonable damages for medical expenses, rehabilitation expenses, and related expenses incurred to date and reasonably certain to be incurred in the future.

5.    Reasonable damages for loss of consortium.

6.    For costs of suit; and

7.    For such further relief as is just under the circumstances.

DEMAND FOR TRIAL BY JURY

Claimants hereby demand a trial by jury.

DATED this 21st day of March, 2002.

McGARVEY, HEBERLING, SULLIVAN
& McGARVEY

By: _____
Jon L. Heberling
Attorneys for Plaintiffs

EXHIBIT "A"

| Plaintiff | Spouse | Place of Residence | Plaintiff's work at W.R. Grace | Family Member | Family member worked at W.R. Grace | Date of Diagnosis |
|---|---|---|---|---|---|---|
| George F. Chapman | Shirley E. | Kalispell, MT | 3/30/74 - 3/29/76 | | | 7/22/98 |
| Jody R. Denning | None | Libby, MT | 10/7/94 - 1/20/78 | | | 7/22/98 |
| William B. Fiobelkorn | Bonnie | Vergdale, WA | 10/14/69 - 3/14/72 | | | 7/28/98 |
| Robert L. Mack | Janet | Elko, NV | 5/1/59 - 9/25/90 | | | 7/28/98 |
| Orin W. Fredenberg | Glenna | Kalispell, MT | 8/24/59 - 6/25/69 | | | 7/28/98 |
| Donald A. Johnson | Mildred E. | Libby, MT | 10/5/50 - 11/6/81 | | | Date of death 7/30/98 |
| Robbin I. Redman | David | Dutch, UT | | daughter of Arthur E. Bundrock | 7/26/57 - 10/16/78 | 8/11/98 |
| Billie J. Schull | Carolyn | Libby, MT | 10/10/66 - 7/12/68 | | | 8/26/98 |
| Edward B. Benoit | Myrtle | Libby, MT | 10/17/74 - 10/1/87 | | | 8/26/98 |
| Richard G. Davidson | Kay | Libby, MT | 4/16/57 - 5/16/59 | | | 9/21/98 |
| Ivan W. Troyer, Sr. | Rose | Libby, MT | 9/28/53 - 8/31/77 | | | 10/5/98 |
| Virgene LeCount | Geneva | Spokane, WA | 9/5/67 - 4/1/92 | | | 12/17/98 |

C:\Asbestos\Clients\State of Montana\Claimant chart\ph

3/21/02

1

| Plaintiff | Spouse | Place of Residence | Plaintiff's work at W.R. Grace | Family Member | Family member worked at W.R. Grace | Date of Diagnosis |
|---|---|---|---|---|---|---|
| George P. Williams | None | Libby, MT | 8/24/74 - 12/31/87 | | | 12/29/98 |
| Eddie E. Eggers | Carol | Superior, MT | 10/31/74 - 9/27/75 | | | 1/5/99 |
| Randy J. Carlson | Leslie F. | Libby, MT | 5/28/80 - 6/3/80 | | | 1/6/99 |
| Don L. Day | Gloria J. | Lufkin, TX | | Father Harold Day | 10/1/65 - 10/15/76 | 2/2/99 |
| Norita D. Skramstad | Lester L. | Libby, MT | | Husband Lester L. Skramstad | 8/26/59 - 7/15/61 | 3/10/99 |
| Alice A. Priest | Vergil P. | Libby, MT | | Husband Vergil P. Priest | 10/30/61 - 9/15/78 | 3/24/99 |
| Robert K. Fuller | Bonnie E. | Elko, NV | 4/20/65 - 9/21/90 | | | 5/27/99 |
| Russell F. Dutton | Brenda | Kalispell, MT | 7/31/74 - 9/21/90 | | | 7/14/99 |
| Yoko T. Cannon | None | Libby, MT | | Ex-Husband Stuart Cannon | 3/24/60 - 7/15/64 | 7/29/99 |
| John H. Leib | Robin | Eureka, MT | 4/6/59 - 6/25/64 | | | 8/11/99 |
| Larry E. Ludwig | None | Lewiston, ID | 5/28/63 - 1/30/65 | | | 8/12/99 |
| Billy L. Fore | Jo F. | Libby, MT | 12/14/73 - 1/1/91 | | | 9/15/99 |
| Donald D. Cook | Arnelda | Round Mtn, NV | 4/8/70 - 10/1/93 | | | 9/28/99 |
| Thomas J. Allen | Eleanore | Lakeside, MT | 10/17/60 - 9/26/62 | | | 10/12/99 |

2

C:\Asbestos\Clients\State of Montana\Oldmnlit chart\oh

3/23/05

| Plaintiff | Spouse | Place of Residence | Plaintiff's work at W.R. Grace | Family Member | Family member worked at W.R. Grace | Date of Diagnosis |
|---|---|---|---|---|---|---|
| Don Blaine | None | Rathdrum, ID | sub-contractor for Grinell Construction 1973-1974 | | | 10/21/99 |
| Jerald Trego | Teri | Port Orchard, WA | 8/16/74 - 12/3/82 | | | 11/3/99 |
| Walter E. Mason | Mary | Libby, MT | 5/3/47 - 7/26/56 | | | 11/17/99 |
| Betty A. Warner | Edgar Warner | Libby, MT | | husband Edgar Warner | 8/16/67 - 7/10/78 | 12/8/99 |
| Walter D. Torgison | None | Libby, MT | 7/31/74 - 9/1/90 | | | 12/9/99 |
| Linda R. Collinson | Charles H. | Libby, MT | | Ex-husband Don Riley | 5/6/60 - 1978 | 12/21/99 |
| Steven D. Moles | Susan M. | Chattoroy, WA | 8/16/75 - 1/6/76 | | | 12/21/99 |
| Kenneth Riech | Cynthia | Plains, MT | 11/12/74 - 1/1/85 | | | 12/29/99 |
| Dave Rohan | Naomi | Libby, MT | | father Walter C. Rohan | 12/26/62 - 1/31/78 | 1/4/00 |
| John E. Schnackenberg | Sharon | Libby, MT | 6/30/76 - 9/17/76 | also father Ed Schnackenberg | 11/19/56 - 1973 | 1/25/00 |
| Laura (Schnackenberg) Johnson | Richard D. | Libby, MT | | Ex-husband Ed Schnackenberg | 8/30/76 - 9/17/76 | 1/25/00 |
| George G. Shattuck | None | Arlee, MT | 7/2/68 - 7/7/78 | | | 3/1/00 |

3

C:\Asbestos\Clients\State of Montana\Claimant short\sh.

3/21/02

| Plaintiff | Spouse | Place of Residence | Plaintiff's work at W.R. Grace | Family Member | Family member worked at W.R. Grace | Date of Diagnosis |
|---|---|---|---|---|---|---|
| Helen L. Brickey | Lloyd E. | Deer Park, WA | | husband Lloyd E. Brickey | 3/25/68 - 9/20/90 | 3/7/00 |
| Richard L. Shavlik | None | Kalispell, MT | 9/4/74 - 2/4/75 | | | 3/7/00 |
| Bruce C. Baker | Frances J. | Yakima, WA | 5/13/69 - 8/25/85 | | | 3/21/00 |
| Frances J. Baker | Bruce C. | Yakima, WA | | husband Bruce C. Baker | 5/13/69 - 8/25/85 | 3/21/00 |
| Alan R. Mallory | Bobbye | Post Falls, ID | 10/31/74 - 1/24/75 | | | 4/7/00 |
| Alfred M. Dickerman | Lois D. | Troy, MT | 3/11/68 - 10/3/83 | | | 4/13/00 |
| Keith G. Chalmers | None | Libby, MT | 12/2/68 - 6/2/69 | | | 4/13/00 |
| Jack C. Farrar | Rose | Coeur d'Alene, ID | 3/24/69 - 10/31/70 | | | 4/26/00 |
| Gary D. Swenson | Bonnie | Libby, MT | 11/2/63 - 2/21/64 | | | 4/27/00 |
| Gordon L. Knopp | Judy E. | Columbia Falls, MT | 7/31/72 - 2/20/73 | | | 5/18/00 |
| Louis Jam | None | The Dalles, OR | 5/13/65 - 10/23/67 | | | 5/30/00 |
| Robert O. Beagle | Sherry L. | Libby, MT | 4/21/59 - 1/1/92 | | | 5/31/00 |
| Laurel L. Porte | David F. | Oshkosh, WI | | father Lester Skramstad | 8/26/59 - 7/15/61 | 6/21/00 |

4

C:\Asbestos\Clients\State of Montana\Claimant chart.wpd

3/21/02

| Plaintiff | Spouse | Place of Residence | Plaintiff's work at W.R. Grace | Family Member | Family member worked at W.R. Grace | Date of Diagnosis |
|---|---|---|---|---|---|---|
| Constance R. Philbrick | Trueman R. | Stockton Springs, ME | | father Donald R. Smith | 5/3/51 - 11/1/87 | 6/26/00 |
| Eugene E. Hamann | Beverly | Kalispell, MT | 12/8/55 - 5/17/57 | | | 6/27/00 |
| Keith G. Wood | Nancy | Helena, MT | 7/2/68 - 9/19/68 | | | 7/11/00 |
| Larry Jacobson | Nona | Lolo, MT | 8/16/74 - 7/16/76 | father DeWayne Jacobson | 4/23/75 - 2/13/76 | 7/18/00 |
| David Shelton | Arla | Chehalis, WA | 4/17/62 - 10/31/66 | | | 7/19/00 |
| Darryn W. Baker | None | Yakima, WA | | Father Bruce C. Baker | 5/13/69 - 8/25/85 | 7/24/00 |
| Jane J. Wright | Jack Wright | Libby, MT | | husband Jack Wright | 1957 - 1963 | 8/3/00 |
| Michael C. McComas | Christina | Paradise, MT | | father Maryl McComas | 10/6/58 - 9/29/67 | 8/25/00 |
| Steven H. Schnackenberg | Denise | Libby, MT | | father Ed Schnackenberg | 11/19/56 - 1973 | 8/27/00 |
| Kelly MacDonald | Julie | Libby, MT | | step-father Don Riley | 5/6/60 - 1975 | 9/20/00 |
| Franklin D. Widic | Sandra | Springcreek, NV | 6/2/67 - 1/1/91 | | | 10/3/00 |
| David R. Stephenson | Carole | Libby, MT | 11/19/62 - 8/30/63 | | | 10/26/00 |

5

C:\Asbestos\Clients\State of Montana\Glidemani:chartijoh

3/21/02

| Plaintiff | Spouse | Place of Residence | Plaintiff's work at W.R. Grace | Family Member | Family member worked at W.R. Grace: | Date of Diagnosis |
|---|---|---|---|---|---|---|
| Michael R. Smith | None | Vallejo, CA | 5/17/74 - 4/2/84 | father Donald R. Smith | 5/3/51 - 11/1/87 | 11/25/00 |
| Eugene Auge | Darlene | Libby, MT | 10/31/69 - 1/19/70 | | | 11/27/00 |

6.

C:\AsbestosClientsStats\ of Montana\Claimant chart\joh

3/21/02