THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Objection Deadline: May 15, 2009 |
| | ) | Hearing Date: June 1, 2009 at 10:30 a.m. |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS' ENTRY INTO SETTLEMENT AGREEMENTS TO RESOLVE PENDING ERISA LITIGATION**

The Debtors have successfully negotiated an agreement to settle a long pending litigation matter with respect to the Debtors' 401(k) Savings and Investment Plan (the "S&I Plan"). The Debtors respectfully move this Court for the entry of an order authorizing the Debtors' entry into: (i) the settlement agreement (the "Settlement Agreement," a copy of which is attached hereto as <u>Exhibit A</u>) with the ERISA Plaintiffs and other defendants to resolve the pending ERISA Litigation (defined herein); (ii) an agreement to retain an independent fiduciary to review

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

the settlement on behalf of the S&I Plan (the "Retention Agreement," a copy of which is attached hereto as <u>Exhibit B</u>); and (iii) a claims release agreement with their insurer (the "Insurer Agreement," a copy of which is attached hereto as <u>Exhibit C</u>). (Together, these three agreements are referred to herein as the "Agreements.") In support of the Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## The ERISA Litigation

3.    In June 2004, lead plaintiff Keri Evans, later joined by co-plaintiff Timothy Whipps (the "Evans Plaintiffs"), filed a purported class action complaint (as amended, the "Evans Complaint") in the United States District Court for the District of Massachusetts (the "District Court") against the members of the Board of Directors of W. R. Grace & Co. (the "Parent) and certain current and former officers and employees of the Debtors (collectively, the "Non-Debtor Defendants"),[2] asserting various claims for relief relating to the S&I Plan for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Evans Plaintiffs are former employees of the Debtors who invested in the Debtors' S&I Plan, and are asserting claims on behalf of a class of all S&I Plan participants and beneficiaries who

---

[2] The "Non-Debtor Defendants" are John F. Akers, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice, H. Furlong Baldwin, Brenda Gottlieb, Robert M. Tarola, W. Brian McGowan, Michael Piergrossi, Eileen Walsh, David Nakashige, Elyse Napoli, Martin Hunter, and Ren Lapadario. Initially, the Evans Plaintiffs also sued State Street Bank & Trust Company and Fidelity Management Trust Company, but subsequently dismissed both of them from the suit, with prejudice.

2

invested in the Debtors' stock through their S&I Plan at any time during the period between July 1, 1999 to April 19, 2004.

4.  In the Evans Complaint, the Evans Plaintiffs allege that the decline in the price of the Debtors' common stock (the "Parent Common Stock") from July 1999 through February 2004 resulted in significant losses to S&I Plan participants. The Evans Plaintiffs further allege that the Defendants breached their fiduciary duties under ERISA by failing to sell or take other appropriate action with regard to the Parent Common Stock held by the S&I Plan during that period, and by failing to disclose the risk of investing in Parent Common Stock adequately to S&I Plan participants. The Evans Plaintiffs seek compensatory damages for the S&I Plan from the Non-Debtor Defendants.

5.  On December 6, 2006, the District Court dismissed the Evans Complaint on the ground that the Evans Plaintiffs were former participants in the S&I Plan who had already received their benefit and, thus, lacked standing to bring the lawsuit. The Evans Plaintiffs appealed the District Court's dismissal order (the "Evans Dismissal").

6.  In February 2008, while the appeal of the Evans Dismissal was pending, Mark Siamis, an active participant in the S&P Plan, filed a second purported class action (the "Siamis Complaint") asserting the same claims against the same Non-Debtor Defendants previously asserted in the Evans Complaint. On July 18, 2008, the United States Court of Appeals, First Circuit, reversed the Evans Dismissal, finding that Evans and Whipps had standing to bring their claims, and remanded the case to the District Court. On August 20, 2008, the District Court consolidated the Evans Complaint and the Siamis Complaint (collectively, the "ERISA Litigation"). The Evans Plaintiffs and Siamis, on behalf of themselves and the class participants, are herein collectively referred to as the "ERISA Plaintiffs."

**The ERISA Insurance Policy**

7.     The Debtors maintain insurance coverage for potential fiduciary liability relating to various employee benefit plans, including the S&I Plan. Their principal policy related to the ERISA Litigation is a $25 million fiduciary liability policy (the "ERISA Insurance Policy"), the Employee Benefit Plan Fiduciary Liability Insurance Policy Number 549-80-77, with a policy period of November 30, 2003 to November 30, 2004, issued by National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"). The Debtors believe that the ERISA Insurance Policy provides coverage to pay any liability resulting from the ERISA Litigation. Upon receipt of the Evans' Complaint, the Debtors promptly notified National Union of the ERISA Litigation and sought access to the ERISA Insurance Policy to cover the defense costs.

8.     On December 20, 2004, the Debtors filed a motion [Docket No. 7249] requesting this Court to approve the use of the ERISA Insurance Policy for paying legal fees and expenses incurred in connection with the ERISA Litigation as well for paying money to settle the ERISA Litigation. This Court approved that motion on January 26, 2005. Subject to a full reservation of rights, National Union has paid certain legal fees, costs and disbursements incurred by the Defendants in connection with the ERISA Litigation. Now, National Union has further agreed to pay $10 million to fully and finally settle the ERISA Litigation, along with a payment not to exceed $50,000 to cover the cost of review by an independent fiduciary.

9.     The amounts payable by National Union under the Agreements do not exhaust, or even nearly exhaust, the Debtors' available insurance coverage. The settlement utilizes only a portion of the National Union policy, and in addition, the Debtors maintain excess insurance policies that are not utilized at all by this settlement.

**The Settlement Agreement**

10.     Pursuant to the Debtors' certificates of incorporation, by-laws and applicable Delaware and Connecticut law, the Debtors are required to defend and indemnify its Parent's directors, officers and employees for certain matters, including those arising from the ERISA Litigation. The Debtors also have certain contractual indemnity obligations with certain of the Non-Debtor Defendants that may have been triggered by the ERISA Litigation. Although the Debtors believe that the allegations in the ERISA Litigation are without merit, the Debtors and the Defendants, in consultation with National Union, have engaged in extensive arm's-length negotiations with the ERISA Plaintiffs to resolve the ERISA Litigation. As a result of such negotiations, the Debtors have agreed to enter into the Settlement Agreement, substantially in the form attached hereto as Exhibit A, to avoid the significant expense, delay and uncertain results of continuing to defend the ERISA Litigation.

11.     Under the terms of the Settlement Agreement, the parties have agreed to, among other things, the following terms and conditions:[3]

   (a) Class Settlement Amount. The Debtors and the Non-Debtor Defendants have agreed to settle the ERISA Litigation for the amount of $10 million, which funds will be obtained from National Union under the ERISA Insurance Policy as outlined in the Insurer Agreement (Exhibit B), and paid into an account established by Counsel for the ERISA Plaintiffs at a federally-insured financial institution.

   (b) District Court Approval and Class Certification. The District Court must approve the Settlement Agreement after a hearing for preliminary and then final approval and certify the ERISA Litigation as a class action for settlement purposes.

   (c) Retention of Independent Fiduciary. The Settlement Agreement must be approved by Independent Fiduciary Services, Inc. ("IFS"), which Debtors

---

[3] The following summary of the Settlement Agreement is provided solely for the convenience of the Court and parties in interest. To the extent that there are any discrepancies between this summary and the Settlement Agreement, the terms and language of the Settlement Agreement shall govern. Capitalized terms used in the summary but not defined therein shall have the meaning ascribed to them in the Settlement Agreement.

have agreed to retain as the independent fiduciary of the S&I Plan, as set forth in the Retention Agreement (Exhibit C). IFS's fees and costs will be split between the Debtors and National Union.

(d) ERISA Plaintiffs' Releases. The ERISA Plaintiffs (i) agree to release the Debtors and the Non-Debtor Defendants from all claims arising from or related to the ERISA Litigation, (ii) agree to dismiss their claims pending in the Debtors' Chapter 11 cases relating to the ERISA Litigation, and (iii) agree not to file any new claims in the Debtors' Chapter 11 cases relating to the ERISA Litigation.

## The Retention Agreement

12. As set forth above, the Settlement Agreement provides for the Debtors to retain an independent fiduciary, for which they will bear half of the cost. It is necessary to have an independent fiduciary review the Settlement Agreement. The Settlement Agreement contains a release running from the S&I Plan to the fiduciaries. Because this release is something of value being given by the S&I Plan to the Plan's fiduciaries, Debtors believe it arguably constitutes a prohibited transaction under ERISA, 29 U.S.C. § 1106. The Department of Labor has issued a prohibited transaction exemption (PTE 2003-39) to allow cases like this to settle notwithstanding this prohibited transaction issue as long as an independent fiduciary evaluates and approves the settlement on behalf of the plan and concludes that it is reasonable. IFS's review and approval of the Settlement Agreement will satisfy this requirement.

13. Debtors have agreed to retain IFS because of IFS's broad experience in similar matters. IFS has over twenty years of experience as an institutional investment advisory firm, including numerous engagements as an independent fiduciary with the responsibility for reviewing settlement agreements on behalf of employee benefit plans.

14. Under the terms of the Retention Agreement, the Debtors have agreed to pay IFS $60,000 for its services, and to reimburse IFS for the reasonable fees and expenses of outside legal counsel up to a maximum of $40,000. National Union has agreed to split these costs.[4]

### The Insurer Agreement

15. The Debtors have agreed to utilize their coverage under the ERISA Insurance Policy to fund the Settlement Agreement. National Union has agreed to pay the aggregate sum of $10 million to the Debtors in compromise and full settlement of all existing and potential claims and questions that have arisen or that may have arisen between and among the Non-Debtor Defendants and National Union with respect to the ERISA Litigation.

16. Under the terms of the Insurer Agreement, the Debtors and National Union have also agreed to mutual releases of claims they may have against each other that relate to or arise out of the ERISA Litigation. National Union is obligated to pay for any additional defense costs incurred by the Debtors' counsel related to the defense or settlement of the ERISA Litigation, and for half the Debtors' costs of retaining IFS up to a maximum of $50,000.[5]

### Relief Requested

17. By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (a) authorizing the Debtors' entry into (i) the Settlement Agreement; (ii) the Retention Agreement; and (iii) the Insurer Agreement; (b) granting the Debtors authority to consummate the transactions

---

[4] This summary of the Retention Agreement is provided solely for the convenience of the Court and parties in interest. To the extent that there are any discrepancies between this summary and the Retention Agreement, the terms and language of the Retention Agreement shall govern. Capitalized terms used in the summary but not defined therein shall have the meaning ascribed to them in the Retention Agreement.

[5] This summary of the Insurer Agreement is provided solely for the convenience of the Court and parties in interest. To the extent that there are any discrepancies between this summary and the Insurer Agreement, the terms and language of the Insurer Agreement shall govern. Capitalized terms used in the summary but not defined therein shall have the meaning ascribed to them in the Insurer Agreement.

contemplated in the Settlement Agreement, including the use of the Debtors' estate property and resources necessary to undertake the performance set forth in the Settlement Agreement; and (c) granting such other relief as may be appropriate.

## Basis for Relief

### Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a)

18. This Court has the authority to authorize the Debtors' entry into the Agreements and the Debtors' incurrence of costs and expenses contemplated therein, pursuant to Bankruptcy Code §§ 105(a) and 363(b) and Bankruptcy Rule 9019.

19. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

20. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. §363(b)(1). A settlement of claims and causes of action by a debtor in possession constitutes a use of the property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999).

21. This Court may authorize the Debtors to use or sell property of the estates pursuant to § 363(b)(1) of the Bankruptcy Code if such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983).

22. Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed.

R. Bankr. P. 9019(a). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citations omitted). Indeed, compromises are favored in bankruptcy since they minimize litigation and expedite the administration of a bankruptcy case. See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., 2006 WL 2842462, at *3 (D. Del. 2006).

23. Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See Martin, 91 F.3d at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted).

<strong>Application of Standards for Approval to the Facts of This Case</strong>

**A.  The Debtors' Participation in the Agreements Is a Sound Exercise of the Debtors' Business Judgment, Satisfying the Requirements of § 363(b).**

24. Although the Debtors are not individually named defendants in the ERISA Litigation, the Debtors have a duty to defend and indemnify their directors, officers and employees for liability including that arising out of the ERISA Litigation pursuant to the Debtors' certificates of incorporation, by-laws, and applicable Delaware and Connecticut law. With the assistance of the Debtors, the non-Debtor Defendants have negotiated in good faith and have used commercially reasonable efforts to arrive at the terms in the Agreements. These Agreements will resolve significant potential liabilities alleged against the Non-Debtor Defendants, who include current and past directors, officers, and employees of the Debtors to whom the Debtors are required to provide defense and indemnification. Allowing the Debtors to

enter into the settlement also efficiently eliminates claims the ERISA Plaintiffs have filed and may file in the future against the Debtors' estates in the Chapter 11 cases.

25. Participating in the Agreements is clearly within the Debtors' sound business judgment. Without a settlement, the ERISA Litigation would continue for months or years, causing the Debtors to incur significant additional attorneys' fees and expenses, thereby depleting the ERISA Insurance Policy. Granting this Motion and approving the Debtors' entry into the Agreements will eliminate the risk of increased costs, and resolve these significant liabilities at nominal cost to the Debtors' estates. Indeed, under the Agreements, National Union is ultimately responsible for all the costs of settlement with the exception of approximately $50,000 that the Debtors will have to pay to retain IFS.

26. The settlement also provides much needed certainty to the Debtors and the Non-Debtor Defendants at a crucial time in these Chapter 11 cases, as the Debtors prepare for confirmation of their Chapter 11 Plan and conclusion of these Chapter 11 cases. The ERISA Litigation has been a distraction for the Debtors and for the Non-Debtor Defendants, and the Debtors believe that their reorganization efforts would benefit from putting an end to this distraction and allowing the Debtors and the Non-Debtor Defendants to more fully focus on the considerable challenges at hand while the Debtors proceed to emerge from Chapter 11.

**B.   The Agreements Are in the Best Interests of the Debtors' Estates, Satisfying the Requirements of Bankruptcy Rule 9019.**

27. The Agreements described herein were the product of a rigorous arms-length, good faith negotiation process. The Debtors have considered alternatives to settlement and the risks and expenses involved. While the Debtors believe their case is strong, the inherent risks of litigation create uncertainty. As described above, entering into the Agreements eliminates significant additional transaction and litigation costs and resolves significant liabilities alleged

against the Non-Debtor Defendants, including current directors, officers and employees of the Debtors, with very little cost to the Debtors. The directors, officers and employees can now focus on the Debtors' operations and facilitate a successful reorganization at this critical juncture instead of diverting their time to defend the ERISA Litigation.

28.     The Debtors will also receive a release and a covenant not to sue from the ERISA Plaintiffs, which will preclude future claims and any future liability of the Debtors with respect to the ERISA Litigation. Under the Agreements, National Union is ultimately responsible for funding the Settlement Fund, sharing in the costs of retaining IFS, and paying defense costs.

29.     Finally, the Settlement Agreement provides assurance to the creditors that any potential liabilities associated with the ERISA Litigation are fully addressed and permanently resolved at a de minimus cost to the Debtors' estates.. The Settlement Agreement brings closure to the ERISA Litigation once and for all.

### Conclusion

30.     For the reasons stated above, the Debtors entry into the Agreements is fair and equitable and in the best interests of the Debtors, their estates, and their creditors. In the absence of a resolution by settlement, the Debtors will have to devote time and resources and incur substantial legal fees and expenses, depleting their insurance coverage, litigating this matter to final judgment. Accordingly, the Debtors have demonstrated a sound business justification for participating in the execution of the Agreements.

### Notice

31.     Notice of this Motion has been given to: (i) the office of the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in

these Chapter 11 Cases, (v) counsel to the Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Bankruptcy Rule 2002; and (vii) counsel to the United States. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## **No Prior Request**

32. No prior motion or application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto (i) authorizing the Debtors' entry into (a) the Settlement Agreement, (b) the Retention Agreement, and (c) the Insurer Agreement; and (ii) granting such other relief as may be just or proper.

Dated: April 27, 2009

          KIRKLAND & ELLIS LLP
          David M. Bernick, P.C.
          Theodore L. Freedman
          Citigroup Center
          153 East 53rd Street
          New York, New York 10022-4611
          (212) 446-4800

          and

          PACHULSKI STANG ZIEHL & JONES LLP

          _/s/ Laura Davis Jones_
          Laura Davis Jones (Bar No. 2436)
          James E. O'Neill (Bar No. 4042)
          Timothy P. Cairns (Bar No. 4228)
          Kathleen P. Makowski (Bar No. 3648)
          919 North Market Street, 17th Floor
          P.O. Box 8705
          Wilmington, Delaware 19899-8705
          (302) 652-4100

          Co-Counsel for the Debtors and Debtors in Possession