# EXHIBIT C
# INSURER AGREEMENT

## AGREEMENT AND CLAIMS RELEASE

**THIS AGREEMENT AND CLAIMS RELEASE** (hereinafter, the "Agreement") is made between Administrative Committee, Investments and Benefits Committee, W. R. Grace & Co., John F. Akers, H. Furlong Baldwin, Ronald C. Cambre, Marye Anne Fox, Brenda Gottlieb, Martin Hunter, Ren Lapadario, W. Brian McGowan, John J. Murphy, David Nakashige, Elyse Napoli, Paul J. Norris, Michael Piergrossi, Robert M. Tarola, Thomas A. Vanderslice and Eileen Walsh (hereinafter, when referred to collectively, the "Claimants") and Domestic Claims – Financial Lines, a division of AIU Holdings, Inc., on behalf of National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter, "National Union").

## RECITALS

**WHEREAS**, National Union has issued on behalf of W. R. Grace & Co. (hereinafter, "Grace"), National Union's Employee Benefit Plan Fiduciary Liability Insurance Policy Number 549-80-77, with a policy period of November 30, 2003 to November 30, 2004 (hereinafter, the "Policy");

**WHEREAS**, the insureds under the Policy include the Claimants;

**WHEREAS**, on or about June 17, 2004, a complaint was filed in the United States District Court for the District of Massachusetts in an action entitled <u>Evans, et al. v. Akers, et al.</u>, Case Number 04-cv-11380-WGY (hereinafter, the "Evans Action");

**WHEREAS**, by letter dated June 25, 2004 from Marsh USA Inc., the broker for the Policy, National Union was provided with notice of the Evans Action;

**WHEREAS**, on or about December 19, 2005, a first amended complaint was filed in the Evans Action;

**WHEREAS**, on or about February 6, 2008, a complaint was filed in the United States District Court for the District of Massachusetts in an action entitled <u>Siamis, et al. v. Akers, et al.</u>, Case Number 08-cv-10193-WGY (hereinafter, the "Siamis Action");

**WHEREAS**, pursuant to an e-mail message dated February 20, 2008 from Marsh USA Inc., National Union was provided with notice of the Siamis Action;

**WHEREAS**, the allegations asserted in the Siamis Action are substantially similar to the allegations asserted in the Evans Action;

**WHEREAS**, on or about August 20, 2008, the Evans Action and the Siamis Action were consolidated (hereinafter, the Evans Action and the Siamis Action, together, the "Underlying Litigation");

**WHEREAS**, each of the Claimants except Grace is named as a defendant in one or more of the complaints filed in the Underlying Litigation;

**WHEREAS**, National Union, in letters dated September 22, 2004 and March 24, 2008, among other communications, set forth certain comments, reservations and defenses with respect to the coverage potentially available under the Policy to the Claimants in connection with the Underlying Litigation;

**WHEREAS**, National Union, subject to a full reservation of rights, has paid certain reasonable and necessary legal fees, costs and disbursements incurred by the Claimants in connection with the Underlying Litigation;

**WHEREAS**, on or about _____, 2009, the parties to the Underlying Litigation entered into a settlement agreement to fully resolve and settle with finality the Underlying Litigation (hereinafter, the "Underlying Settlement Agreement," a copy of which is attached hereto as Exhibit A); and

**WHEREAS**, the Claimants and National Union desire a complete and final resolution of all existing, potential and future claims, demands, rights and causes of action, known or unknown, (i) that were brought or could have been brought in the Underlying Litigation against

the Claimant Releasors (as hereinafter defined), (ii) that arise out of the Underlying Litigation, including all existing, potential and future claims, demands, rights and causes of action, known or unknown, with respect to the parties' respective positions concerning coverage for the Underlying Litigation under the Policy or any other insurance policy issued by National Union or any other member company of American International Group, Inc. or their present subsidiaries (hereinafter, collectively, "AIG") (except for claims for payment of defense costs and Independent Fiduciary Costs pursuant to paragraphs 6 and 7 below), (iii) that arise out of any of the acts, omissions, facts, matters, transactions or occurrences described in the complaints filed in the Underlying Litigation, (iv) that would be or are barred by principles of res judicata based on the claims asserted in the complaints filed in the Underlying Litigation, and (v) that relate to the W. R. Grace & Co. Savings and Investment Plan's (hereinafter, the "Plan") purchase, sale or holding of shares of voting common stock or any class of capital stock convertible into voting common stock that Grace is or was authorized to issue (hereinafter, "Grace Stock").

## AGREEMENT

**NOW, THEREFORE**, in consideration of the respective covenants, undertakings, representations and conditions hereinafter set forth, the Claimants and National Union hereby agree as follows:

1. **Confidentiality**: The existence and terms of this Agreement are confidential, and the parties hereto agree to maintain the confidentiality of the Agreement and each of its provisions, except as otherwise required by law or legal process, and except that (i) the Claimants may present this Agreement to the United States Bankruptcy Court for the District of Delaware in order to get approval of the Underlying Settlement Agreement, (ii) both the Claimants and National Union upon the request of any court of law may inform such court of the existence and terms of this Agreement, (iii) both the Claimants and National Union may provide information contained in this Agreement to their respective accountants, attorneys, auditors and regulators and (iv) National Union may notify its reinsurers of the terms and conditions of this Agreement. Any party intending to disclose either the existence or terms of this Agreement to any third party, other than those described in (i) through (iv) above, shall notify the other party sufficiently in

advance of the disclosure so as to allow such other party a reasonable opportunity to object to such disclosure through legal process.

2. **Payment by National Union**: In consideration of the releases by the Claimants pursuant to paragraph 3 below, National Union will pay the aggregate sum of Ten Million Dollars and Zero Cents ($10,000,000.00) to Grace in compromise and full settlement of all existing, potential and future claims, demands, rights and causes of action, known or unknown, (i) that were brought or could have been brought in the Underlying Litigation against the Claimant Releasors (as hereinafter defined), (ii) that arise out of the Underlying Litigation, including all existing, potential and future claims, demands, rights and causes of action, known or unknown, with respect to the parties' respective positions concerning coverage for the Underlying Litigation under the Policy or any other insurance policy issued by National Union or any other member company of AIG (except for claims for payment of defense costs and Independent Fiduciary Costs pursuant to paragraphs 6 and 7 below), (iii) that arise out of any of the acts, omissions, facts, matters, transactions or occurrences described in the complaints filed in the Underlying Litigation, (iv) that would be or are barred by principles of res judicata based on the claims asserted in the complaints filed in the Underlying Litigation, and (v) that relate to the Plan's purchase, sale or holding of shares of Grace Stock. National Union shall make the payment described in this paragraph within thirty (30) days after the entry of the "Preliminary Approval Order" described in Section 2.1.1. of the Underlying Settlement Agreement.

3. **Release by the Claimants**: Except as provided for in paragraph 5 below, the Claimants, on behalf of themselves, and their respective current and former affiliates, divisions, parents, subsidiaries, predecessors, successors in business or interest, assigns, agents, heirs, administrators, attorneys, employees, executors, directors, officers, trustees, controlling persons, shareholders, liquidators, subrogees and representatives of all of the foregoing, and each of them, and all persons and/or entities able to claim through any of the foregoing (except as otherwise provided in paragraph 4 below, when referred to collectively with the Claimants, the "Claimant Releasors") do forever release, and absolutely and forever discharge National Union, its current and former affiliates, divisions, parents, subsidiaries, predecessors, successors in business or interest, assigns, agents, administrators, attorneys, employees, executors, directors, officers, controlling persons, shareholders, insurers, reinsurers, liquidators, subrogees and representatives

of all of the foregoing, and each of them, and all persons and/or entities able to claim through any of the foregoing (when referred to collectively in this paragraph and paragraphs 6 and 9 below, the "National Union Releasees") of and from all existing, potential and future claims, demands, rights and causes of action, known or unknown, (i) that were brought or could have been brought in the Underlying Litigation against the Claimant Releasors, (ii) that arise out of the Underlying Litigation, including all existing, potential and future claims, demands, rights and causes of action, known or unknown, with respect to the parties' respective positions concerning coverage for the Underlying Litigation under the Policy or any other insurance policy issued by National Union or any other member company of AIG (except for claims for payment of defense costs and Independent Fiduciary Costs pursuant to paragraphs 6 and 7 below), (iii) that arise out of any of the acts, omissions, facts, matters, transactions or occurrences described in the complaints filed in the Underlying Litigation, (iv) that would be or are barred by principles of res judicata based on the claims asserted in the complaints filed in the Underlying Litigation, and (v) that relate to the Plan's purchase, sale or holding of shares of Grace Stock. This Agreement shall further constitute a covenant by the Claimant Releasors not to sue any of the National Union Releasees on any claims, demands, rights and causes of action released hereunder.

4. **Release by National Union**: Except as provided for in paragraph 5 below, National Union, on behalf of itself, and its current and former affiliates, divisions, parents, subsidiaries, predecessors, successors in business or interest, assigns, agents, heirs, administrators, attorneys, employees, executors, directors, officers, trustees, controlling persons, shareholders, insurers, reinsurers, liquidators, subrogees and representatives of all of the foregoing, and each of them, and all persons and/or entities able to claim through any of the foregoing (when referred to in this paragraph collectively with National Union, the "National Union Releasors"), does forever release, and absolutely and forever discharge the Claimants, their current and former affiliates, divisions, parents, subsidiaries, predecessors, successors in business or interest, assigns, agents, administrators, attorneys, employees, executors, directors, officers, controlling persons, shareholders, insurers, reinsurers, liquidators, subrogees and representatives of all of the foregoing, and each of them, and all persons and/or entities able to claim through any of the foregoing (when referred to in this paragraph for purposes of identifying the parties that are being granted releases by the National Union Releasors, collectively, the "Claimant Releasees")

of and from all existing, potential and future claims, demands, rights and causes of action, known or unknown, (i) that were brought or could have been brought in the Underlying Litigation against the Claimant Releasors, (ii) that arise out of the Underlying Litigation, including all existing, potential and future claims, demands, rights and causes of action, known or unknown, with respect to the parties' respective positions concerning coverage for the Underlying Litigation under the Policy or any other insurance policy issued by National Union or any other member company of AIG (except for claims for payment of defense costs and Independent Fiduciary Costs pursuant to paragraphs 6 and 7 below), (iii) that arise out of any of the acts, omissions, facts, matters, transactions or occurrences described in the complaints filed in the Underlying Litigation, (iv) that would be or are barred by principles of res judicata based on the claims asserted in the complaints filed in the Underlying Litigation, and (v) that relate to the Plan's purchase, sale or holding of shares of Grace Stock. This Agreement shall further constitute a covenant by the National Union Releasors not to sue any of the Claimant Releasees on any claims, demands, rights and causes of action released hereunder.

5. **Exceptions**: The Claimants and National Union hereby acknowledge and agree that this Agreement does not apply to the following: (a) any existing, potential or future claims, demands, rights and causes of action that have arisen or that may arise in connection with the Claimants' actions or conduct related to the calculation, allocation or distribution of the Settlement Fund pursuant to the Plan of Allocation under the Underlying Settlement Agreement; (b) any existing, potential or future claims, demands, rights and causes of action that have been or could be asserted under the federal securities laws or the securities laws of any state regarding the purchase or sale of any Grace security or debt instrument; and (c) any existing, potential or future claims, demands, rights and causes of action that have arisen or that may arise in connection with the action captioned Bunch, et al v. W.R. Grace & Co., et al., which was originally filed on or about October 26, 2004 in the United States District Court for the Eastern District of Kentucky as Case Number 04-cv-218-DLB, then transferred to the United States District Court for the District of Massachusetts and made part of Case Number 04-cv-11380-WGY, and then appealed in the United States Court of Appeals for the First Circuit as Case Number 08-1406. The Claimants and National Union agree that with respect to all existing, potential or future claims, demands, rights and causes of action that have arisen or that may arise

in connection with the matters identified in items (a), (b) and (c) of this paragraph, each party shall maintain his, her or its respective position as it existed prior to the execution of this Agreement.

6. **Payment of Defense Costs**: In addition to the reasonable and necessary legal fees, costs and disbursements National Union has paid to date on behalf of the Claimants, subject to the terms and conditions of the Policy, National Union will pay the reasonable and necessary legal fees, costs and disbursements charged and/or incurred by the law firms of Arent Fox LLP and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (hereinafter, together, "Defense Counsel") in connection with the defense and settlement of the Underlying Litigation, provided that National Union shall have no obligation to pay any legal fees, costs or disbursements charged and/or incurred by Defense Counsel after entry of the "Final Judgment" described in Section 2.4. of the Underlying Settlement Agreement, and the Claimant Releasors agree not to pursue any claims against the National Union Releasees with respect to any such legal fees, costs and disbursements.

7. **Payment of Independent Fiduciary Costs**: The Claimants and National Union hereby acknowledge and agree that the fees and expenses of Independent Fiduciary Services, Inc. (hereinafter, "IFS") and the reasonable and documented fees and expenses of outside legal counsel that IFS chooses to retain in connection with the engagement of IFS as an investment manager and as the independent fiduciary of the Plan (together, the "Independent Fiduciary Costs") shall be paid in the following manner: (i) Grace (or the Plan, to extent permitted by law) and National Union shall each pay fifty percent of the Independent Fiduciary Costs, provided that in no event shall National Union be obligated to pay more than a total amount of Fifty Thousand Dollars and Zero Cents ($50,000.00) in Independent Fiduciary Costs; and (ii) in the event that the total amount of the Independent Fiduciary Costs exceeds One Hundred Thousand Dollars and Zero Cents ($100,000.00), Grace (or the Plan, to the extent permitted by law) shall be responsible for the payment of all such Independent Fiduciary Costs in excess of One Hundred Thousand Dollars and Zero Cents ($100,000.00).

8. **Representation and Warranty on Assignment**: The Claimants and National Union hereby represent and warrant that they own the rights released herein and that they have not

assigned or transferred or purported to assign or transfer any such rights to any other person or entity.

9. **Indemnification and Hold Harmless Agreement**: The Claimants agree to indemnify and hold harmless the National Union Releasees from any and all liability, loss, damages or expenses (other than the payment provided for in paragraph 2 above, the legal fees, costs and disbursements already paid by National Union on behalf of the Claimants, any future legal fees, costs and disbursements to be paid by National Union on behalf of the Claimants pursuant to paragraph 6 above, and the Independent Fiduciary Costs to be paid by National Union pursuant to paragraph 7 above) resulting from any claim asserted or attempted to be asserted against any National Union Releasee based upon, arising out of or in way related to any claim for coverage for the Underlying Litigation under the Policy or any other policy of insurance issued by National Union or any other member company of AIG.

10. **Release of Unknown Claims**: The Claimants and National Union hereby acknowledge that they may have sustained or acquired against each other claims, demands, damages, losses, accounts, reckonings, debts, liabilities, indemnities, obligations, actions, causes of action, settlement costs, attorney's fees, court costs and expenses of a presently unknown and unforeseen nature which arise from or relate to the matters released in this Agreement. The Claimants and National Union hereby waive, with respect to the releases contained in this Agreement, any and all rights or benefits conferred by any statute, regulation or principle of common law or civil law of the United States or of any state, commonwealth, territory, or other jurisdiction thereof, or of any foreign country or other foreign jurisdiction which provides that a general release does not extend to claims which a party does not know or suspect to exist in its favor at the time of executing the release, which if known to the party must have materially affected the settlement. This Agreement is a complete release of known and unknown, present and future claims with respect to the matters released herein.

11. **Termination of Underlying Settlement Agreement**: In the event that the Underlying Settlement Agreement is terminated pursuant to Section 9.1. of the Underlying Settlement Agreement, then: (i) this Agreement and all negotiations, proceedings and statements relating thereto shall be null and void, shall not be admitted in any proceeding and shall be

without prejudice to any party hereto; (ii) each party shall be restored to his, her or its respective position as it existed prior to the execution of this Agreement; and (iii) if the payment described in paragraph 2 above has already been made by National Union, Grace shall promptly return to National Union the total amount of the payment that is returned to Grace pursuant to Section 9.2.1. of the Underlying Settlement Agreement.

12. **No Admission or Waiver, Etc.**: The Claimants and National Union agree that this Agreement shall not constitute, nor be construed as (i) an admission by the Claimants or National Union of any liability in connection with the Underlying Litigation, (ii) an admission by National Union that it has any liability either for any employee benefits or for coverage under the Policy, or (iii) a waiver by National Union of any of its rights, privileges and defenses under the Policy. The Claimants and National Union agree that this Agreement was entered to avoid the uncertainties of litigation and to avoid significant legal fees and costs that would result from protracted litigation. No part of this Agreement or any statement by any party hereto may be used in any action, suit or other proceeding as evidence of the respective rights, duties or obligations of the parties to the Policy or any other policies of insurance issued by National Union or any other member company of AIG. The Claimants and National Union further acknowledge that all agreements contained in the Agreement have been agreed to solely for the purpose of effectuating a compromise of disputed claims and shall not be deemed to constitute an admission or concession by any party or constitute a waiver of any legal position which any party might otherwise assert. This Agreement is without prejudice or value as precedent and shall not be used in any proceeding or hearing to create, prove or interpret the obligations under, or the terms and conditions of, any other insurance policy issued by National Union or any other member company of AIG. This Agreement is not to be construed in favor of any particular party hereto, but is to be construed as if drafted by all of the parties. The Claimants and National Union understand, acknowledge and agree that the negotiation, execution and performance of this Agreement shall not constitute, nor be construed as, an admission of any liability or infirmity of any defense or claim whatsoever by the Claimants or National Union.

13. **Construction**: No provision in this Agreement is to be interpreted for or against any party because that party or its legal representative drafted such provision.

14. **Captions and Headings**: Captions and headings contained in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

15. **Representation of Authority**: Any individual signing this Agreement on behalf of any entity represents and warrants that he or she has full authority to do so.

16. **Choice of Law**: This Agreement shall be construed under, and interpreted in accordance with, the laws of the State of New York, without regard to the conflict of law rules of the State of New York.

17. **Counterparts**: This Agreement may be executed in counterparts, each of which, when so executed, shall constitute an agreement binding on the parties hereto, notwithstanding that the parties to this Agreement are not signatories to the same counterpart. Executed signature pages transmitted by facsimile and/or by e-mail in PDF form shall be deemed to have the same effect as original signatures.

18. **Entire Agreement**: This Agreement constitutes the entire Agreement between the Claimants and National Union relating to the Underlying Litigation and the claims, demands, rights and causes of action released pursuant to paragraphs 3 and 4 above, and it is expressly understood by the parties that this Agreement may not be assigned, altered, amended, modified or otherwise changed except by a writing executed by an authorized representative of the Claimants and an authorized representative of National Union.

19. **No Personal Representations**: This Agreement is executed without reliance on any representation by any person. Each of the undersigned has reviewed this Agreement with his, her or its counsel, understands the contents of this Agreement and signs it freely and voluntarily.

20. **Attorney's Fees**: If any action at law or equity is brought to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to recover all costs incurred in such action or proceeding, including reasonable attorney's fees, in addition to any other relief to which the prevailing party may be otherwise entitled.

21. **Execution and Effective Date**: In witness whereof, the parties hereto have executed this Agreement to be effective as of the latest date written below.

ADMINISTRATIVE COMMITTEE

By: _____

Dated: _____    Its: _____

INVESTMENTS AND BENEFITS COMMITTEE

By: _____

Dated: _____    Its: _____

W. R. GRACE & CO.

By: _____

Dated: _____    Its: _____

Dated: _____    By: _____
                                                                    John F. Akers

Dated: _____    By: _____
                                                                   H. Furlong Baldwin

Dated: _____    By: _____
                                                                   Ronald C. Cambre

Dated: _____    By: _____
                                                                   Marye Anne Fox

Dated: _____    By: _____
                                     Brenda Gottlieb

Dated: _____    By: _____
                                     Martin Hunter

Dated: _____    By: _____
                                     Ren Lapadario

Dated: _____    By: _____
                                     W. Brian McGowan

Dated: _____    By: _____
                                     John J. Murphy

Dated: _____    By: _____
                                     David Nakashige

Dated: _____    By: _____
                                     Elyse Napoli

Dated: _____    By: _____
                                     Paul J. Norris

Dated: _____    By: _____
                                     Michael Piergrossi

Dated: _____    By: _____
                                     Robert M. Tarola

Dated: _____    By: _____
                                     Thomas A. Vanderslice

Dated: _____    By: _____
                                     Eileen Walsh

DOMESTIC CLAIMS – FINANCIAL LINES, A DIVISION OF AIU HOLDINGS, INC., on behalf of NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

By: _____

Dated: _____    Its: _____