IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**Objection Deadline: May 15, 2009 at 4:00 p.m.**
**Hearing Date: June 1, 2009 at 10:30 a.m.**

# DEBTORS' MOTION FOR AN ORDER AUTHORIZING A SETTLEMENT WITH THE INTERNAL REVENUE SERVICE RELATING TO THE CARRYBACK OF SPECIFIED LIABILITY LOSSES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully move this Court (the "Motion") for entry of an order authorizing the Debtors to (1) settle a federal income tax controversy with the Internal Revenue Service ("IRS") relating to specified liability losses("SLLs")[2] incurred by Debtor W. R. Grace & Co.–Conn. ("Grace-Conn") in 1998 and carried back to the 1989 taxable year ("SLL Controversy"); and (2) take such further action as is necessary to implement the settlement. A Stipulation of Settled Issues (the "Settlement," attached as Exhibit A), was filed with the United States Tax Court on April

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] A specified liability loss is a particular type of net operating loss that may be carried back for ten tax years.

3, 2009. The Settlement is not final until reviewed and approved by both this Court and the Joint Committee on Taxation of the U.S. Congress ("Joint Committee"), a congressional committee that must approve refunds of tax above a threshold amount.

The Court should grant this Motion because the Settlement allows the Debtors to claim a significant portion of the approximately $161 million in deductions at issue in the 1989 tax year, resulting in a refund of tax of approximately $14.7 million plus interest for the 1989 taxable period.[3] The Settlement also reserves the remainder of the SLLs at issue for use by the Debtors in later years.

In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(a)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion are sections 105 and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant

---

[3] The Tax Court case originally arose because of a deficiency that the IRS proposed against Fresenius, the parent of Grace-Conn for the tax years at issue. Because of different amounts that have been placed on deposit with the IRS in the past, and because of the terms of certain agreements with Fresenius, the Settlement will actually result in a refund to the Debtors.

to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. By way of general background, during its 1998 taxable year, Grace-Conn. incurred a substantial net operating loss ("NOL") for federal income tax purposes. Under special statutory provisions, deductions that qualify as SLLs may be carried back for ten years, as opposed to the regular two years. Based upon the tax return as filed, Grace-Conn determined that it had an SLL in 1998 of approximately $130 million that was eligible to be carried back for up to ten years. Grace-Conn applied the 1998 Carryback to its 1989 taxable year (the "1989 Carryback") and timely filed Form 1139 (Corporate Application for Tentative Refund) with the IRS to obtain a tentative refund of approximately $28 million. The IRS refunded the tax overpayment to Fresenius Medical Care Holdings, Inc. ("Fresenius"), a former parent of Grace-Conn. Pursuant to existing agreements between Fresenius and Grace-Conn, Fresenius paid the tentative refund to Grace-Conn.

5. After an IRS audit of Grace-Conn's 1998 tax return, and based upon an agreement with the IRS as to the amount of the SLL for that year, Grace-Conn determined that it had an additional $30 million SLL in 1998 that it could also carry back to 1989. On March 23, 2007, a claim for refund was filed for an additional overpayment of tax in 1989 relating to that additional SLL carryback amount ("Additional 1989 Carryback").

6. On March 22, 2007, the IRS issued a notice of deficiency for 1989 to Fresenius seeking the payment of $32,554,061 in taxes (the "Deficiency Notice"). The Deficiency Notice was based primarily on a disallowance of the 1989 Carryback. On April 25, 2007, the IRS disallowed the March 23, 2007 claim for refund (the "Disallowance Notice") for the Additional 1989 Carryback for the same reasons as stated in the Deficiency Notice.

7.     On March 28, 2007, the Debtors filed a motion seeking to modify the automatic stay so that Debtors could commence United States Tax Court litigation to resolve the SLL Controversy. The Motion is attached as Exhibit B. On May 2, 2007, this Court entered an order modifying the automatic stay as the Debtors requested in the Motion (Docket Ref. No. 15014 and 15298 Agenda No.6). The order is attached as Exhibit C.

8.     On June 18, 2007, the Debtors petitioned the United States Tax Court for a redetermination of the Deficiency Notice and Disallowance Notice. The petition is attached as Exhibit D.

## THE SLL CONTROVERSY

9.     The IRS and the Debtors agree that the total amount of net operating losses at issue is $161,526,580 (the "Carryback") and that such amount represents a SLL entitled to be carried back ten taxable periods. However, the parties disagree as to whether the Carryback may be used to offset all income of the consolidated group of which Grace-Conn. was a member. The IRS asserts that the Carryback is subject to limitations imposed by the separate return limitation year ("SRLY") rules found in Treas. Reg. § 1.1502-21A(c) as applicable to 1989. If the SRLY rules were to apply to the Carryback, such Carryback would only be deductible against Grace-Conn's separate company income in that year rather than the income of the consolidated group. Grace-Conn had no separate company income in 1989 and, therefore, if the SRLY rules applied none of the Carryback would be deductible in 1989.

10.    The Debtors argued to the IRS that the SRLY rules should not apply under the so-called "Lonely Parent Exception." Under the Lonely Parent Exception, the SRLY rules do not apply to limit the deductibility of a loss if the corporation generating the loss is considered

the "Lonely Parent" of the consolidated group for the year to which the loss is being carried (in this case, the 1989 taxable period).

11. Grace-Conn was the common parent of the Grace group from the date of its formation in 1899 until May 25, 1988. At that time the Grace consolidated group engaged in an internal restructuring wherein a New York corporation became the common parent of the Grace consolidated group in a transaction that qualified as a tax-free reorganization under the Internal Revenue Code ("IRC") (the "New York Holding Company Transaction").

12. The Treasury regulations under section 1502 of the IRC specifically provide that the Lonely Parent Exception applies to a loss incurred by a former common parent in a year prior to a group continuation transaction described in Treasury Regulation § 1.1502-75(d)(2)(ii) (a "-75(d)(2) Transaction") and carried forward to a group year after such transaction. By ruling, the IRS determined that a transaction like the New York Holding Company Transaction is also a group continuation transaction. The Debtors' position is thus that because the Grace-Conn group continued, Grace-Conn should be treated as the Lonely Parent for purposes of the application of the Lonely Parent Exception to a loss incurred by Grace-Conn. after the New York Holding Company Transaction and carried back to a year in which Grace-Conn. was no longer the common parent. A more detailed explanation of the Debtors' position may be found in the Debtors' tax protest to the IRS included as part of Exhibit B to this motion.

13. The position of the IRS is that the Lonely Parent Exception to the SRLY rules may apply to the carryforward of losses, but is not applicable to the carryback of losses arising after the New York Holding Company Transaction to a year prior to such transaction, even though the group continued for other purposes.

## **THE SLL SETTLEMENT**

14. The parties agree that the total net operating loss at issue of $161,526,580 shall be allowed as a SLL carryback to the 1989 taxable year and of that amount $53,526,580 may be used in 1989 without limitation by the SRLY rules. Use of this deduction will result in a refund of tax of approximately $14.7 million plus interest for the 1989 taxable period. The Settlement also permits the Debtors to retain the remainder of the SLLs at issue for use in later years subject to the SRLY rules.

15. The Settlement was reached because all parties recognized that the SLL Controversy involves a very technical and complicated issue and would be extremely difficult to resolve without judicial determination. Moreover, the outcome in litigation is uncertain and unpredictable, because the tax regulations at issue in this case are ambiguous and do not explicitly address how the Lonely Parent Exception should be applied. There is no express regulatory guidance for either the position of the IRS or the position of the Debtors. The Debtors believe that their position is consistent with the language of the regulations and the IRS rulings, as well as with the purposes of the SRLY rules. The Debtors also contend that in the absence of express regulatory guidance, taxpayers should generally be allowed to adopt a reasonable approach to the application of the consolidated return rules. See *Gottesman & Company, Inc. v. Commissioner*, 77 T.C. 1149 (1981). However, the consolidated return regulations are considered legislative regulations and there can be no assurance that the Tax Court would agree with the Debtors' position.

16. If this Court authorizes Grace to enter into the Settlement, the IRS will then forward the Settlement to the Joint Committee for final review and approval. After the Joint Committee approves the settlement, the Settlement will be final and the Tax Court will enter a

final decision. If the Settlement is not approved and the Debtors are forced to litigate this matter, the proceedings likely will be protracted, the cost of defending the Debtors' position will be expensive, and a favorable outcome cannot be assured.

### RELIEF REQUESTED

17. By this Motion, the Debtors seek an order authorizing the Debtors to (i) execute the Settlement, (ii) implement the Settlement upon its approval by the Joint Committee and the Tax Court as long as such settlement is substantially similar to the Settlement and, (iii) perform any and all other acts that are necessary or useful to implement the Settlement.[4]

### STATUTORY AUTHORITY

18. The Settlement is in the best interests of the Debtors and their creditors and should be approved by the Bankruptcy Court pursuant to Fed. R. Bankr. P. 9019, which authorizes this Court to approve a settlement entered into by a debtor. The decision whether to accept or reject a compromise lies within the sound business judgment of the Debtors. In re Neshaminy Office Bldn. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986). Approval of a compromise settlement is appropriate if it is in the "best interests of the estate." Id.

19. The settlement need not be the best that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979). In making its determination, a court should not substitute its own judgment for that of the debtor. Neshaminy Office, 62 B.R. at 803. Moreover, it is not necessary to conduct a "mini trial" of the facts or the merits underlying the dispute. In re Grant Broadcasting, 71 B.R. 390, 396 (E.D. Pa. 1987); see also In re A & C

---

[4] The Settlement does not address the remaining proofs of claim filed by the IRS against the Debtors in these chapter 11 cases. Once the Settlement is approved by this Court and the Tax Court, the Debtors will then work with the IRS to adjust their proof of claim, as applicable, to reflect the Settlement.

Properties, 784 F.2d 1377, 1384 (9th Cir.). Rather, the court need only consider those facts that are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement. Penn Central, 596 F.2d at 1114; see also In re Energy Cooperative, Inc., 886 F.2d 921, 924-25 (7th Cir. 1989).

20. The Debtors submit that the Settlement is in the best interests of the Debtors' estates and their creditors because the Debtors are permitted to claim a significant portion of the SLLs in dispute and because it is favorable given all the facts and circumstances. As previously stated, there are hazards of litigation and, therefore, a favorable outcome in litigation cannot be assured. In addition, in the absence of a resolution by the Settlement, the Debtors will likely incur substantial legal fees and expenses litigating the SLL Controversy to final judgment, and the resolution may be delayed for a lengthy period of time. In light of the foregoing, it is in the best interests of the Debtors' estate to accept the Settlement, thereby avoiding a lengthy and costly litigation with an uncertain outcome.

## NOTICE

21. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) the Department of Justice, (iii) the Internal Revenue Service, (iv) counsel to the debtor in possession lenders, (v) counsel to each official committee appointed by the United States Trustee and the Future Claimant's Representatives, and (vi) those parties that requested papers under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to (a) execute the Settlement, (b) implement the Settlement upon its approval by the Joint Committee as long as such settlement is substantially similar to the

Settlement, (c) perform any and all other acts that are necessary or useful to implement the Settlement, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: April 27, 2009

        KIRKLAND & ELLIS LLP
        David M. Bernick, P.C.
        Todd F. Maynes, P.C.
        200 East Randolph Drive
        Chicago, Illinois 60601
        (312) 861-2000

        THE LAW OFFICES OF JANET S. BAER, P.C.
        Janet S. Baer, P.C.
        70 W. Madison, Suite 2100
        Chicago, IL. 60602
        (312) 641-2162

        and

        PACHULSKI STANG ZIEHL & JONES LLP

        /s/ Laura Davis Jones
        _____
        Laura Davis Jones (Bar No. 2436)
        James E. O'Neill (Bar No. 4042)
        Kathleen P. Makowski (Bar No. 3648)
        Timothy P. Cairns (Bar No. 4228)
        919 North Market Street, 17th Floor
        P.O. Box 8705
        Wilmington, DE  19899-8705
        (Courier 19801)
        Telephone: (302) 652-4100
        Facsimile:  (302) 652-4400

        *Co-Counsel to the Debtors and Debtors in Possession*