# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date:  May 2, 2007 at 2:00 p.m.** |

**Hearing Date:  May 2, 2007 at 2:00 p.m.**
**(in Pittsburgh, PA)**
**Responses Due: April 13, 2007 at 4:00 p.m.**

### DEBTORS' MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY SO THAT DEBTORS MAY COMMENCE TAX COURT LITIGATION TO RESOLVE CERTAIN TAX CLAIMS

The Debtors respectfully move this Court (the "Motion") for entry of an order

(1) modifying the automatic stay in order to permit the Debtors to file litigation (the "Tax Suit")

in the United States Tax Court (the "Tax Court") against the Commissioner of the Internal

Revenue Service ("IRS"), with respect to certain tax claims potentially affecting Debtors' 1989

tax year and (2) authorizing Debtor W. R. Grace & Co.-Conn. ("Grace-Conn") to take such

action as is necessary to proceed with the Tax Suit.

In support of this Motion, the Debtors respectfully state as follows:

#### Jurisdiction

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G), with the

Debtors seeking to modify the automatic stay imposed by 11 U.S.C. § 362(a)(8).  Venue of this

Motion is proper under 28 U.S.C. § 1408.

2.       The statutory predicates for this Motion are Sections 105 and 362 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## Background

3.       On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

## Specified Liability Loss Carryback

4.       During its 1998 taxable year, Grace-Conn incurred a substantial net operating loss ("NOL") for federal income tax purposes. Based upon the tax return as filed, Grace-Conn determined that it had a specified liability loss ("SLL") of approximately $130 million that was eligible to be carried back for up to 10 years (the "Carryback"). Grace-Conn applied the Carryback to its 1989 taxable year and timely filed Form 1139 (Corporate Application for Tentative Refund) with the IRS to obtain a tentative refund of the resulting overpayment of tax in the 1989 year of approximately $28 million. The IRS refunded the tax overpayment to Fresenius Medical Care Holdings, Inc. ("Fresenius"). Pursuant to existing agreements between Fresenius and Grace-Conn (described below), Fresenius paid the tentative refund to Grace-Conn.

5.       After an IRS audit of Grace-Conn's 1998 tax return, and based upon an agreement with the IRS as to the amount of SSL for that year, Grace-Conn determined that it had an additional $30 million SLL that it could carryback to 1989. A claim for refund has been filed

2

for the additional overpayment of tax in 1989 resulting from that additional SLL carryback amount; to date the IRS has not taken action on this second carryback.

      6.      On March 22, 2007, the IRS issued a notice of deficiency for 1989 to Fresenius seeking the payment of taxes determined by the IRS to be due of $32,554,061 (the "Deficiency Notice," a version of which is attached as Exhibit A hereto). The Deficiency Notice is based primarily on a disallowance of the Carryback reflected on the Form 1139. Pursuant to Sections 6211, 6212 and 6213 of the Internal Revenue Code of 1986, as amended (the "Tax Code"), the Tax Suit must be filed in U.S. Tax Court to contest the disallowed Carryback within 90 days of the date of the Deficiency Notice. If the Tax Suit is not filed in the Tax Court within 90 days, the IRS is permitted to assess and attempt to collect the deficiency reflected in that notice (plus interest thereon) from Fresenius, Grace-Conn or from any other member of the consolidated tax group included in the 1989 consolidated tax return (pursuant to the several liability under Treas. Reg 1.1502-6).

      7.      As explained below, under the Tax Sharing and Indemnification Agreement dated September 27, 1996 (the "Tax Sharing Agreement"), attached as Exhibit B hereto, and the First Amended Settlement Agreement and Release of Claims (the "Settlement Agreement"), attached as Exhibit C hereto, Fresenius is entitled (subject to the terms and conditions of the Settlement Agreement) to be reimbursed by Grace-Conn for any amounts collected by the IRS from Fresenius resulting from the disallowance of the Carryback. If the Carryback is disallowed, Grace-Conn estimates that the amount of such required reimbursement will be no less than $28 million, plus interest, and that at least $16 million in other tax benefits will be lost.

3

**Tax Sharing And Indemnification Agreement**

8.      As a result of a restructuring transaction entered into on or about September 27, 1996, the Debtors' specialty chemicals business and other businesses were separated from its healthcare businesses, and the healthcare businesses became part of the Fresenius group.   Fresenius and Grace-Conn then entered into the Tax Sharing Agreement.

9.      On February 6, 2003, Grace-Conn and Fresenius, along with other interested parties, entered into the Settlement Agreement approved by this Court.  The Settlement Agreement, *inter alia*, supercedes the Tax Sharing Agreement in relevant part and provides that Debtors shall be responsible for all "Indemnified Taxes," including "all Taxes for or attributable to Tax Periods ending on or before December 31, 1996," attributable to Grace-Conn.  Section 3.05 of the Settlement Agreement requires that the Debtors "indemnify, defend and hold harmless" Fresenius "from any action by any Person, including any tax authority, seeking payment by or reimbursement from" Fresenius for "any Indemnified Taxes."  Therefore, if the IRS succeeds in disallowing the Carryback to the 1989 year and seeks payment from Fresenius of the amounts in the Deficiency Notice, Grace-Conn would be liable for any resulting tax deficiency (subject to the terms and conditions of the Settlement Agreement).

10.      Section 3.03(A) of the Settlement Agreement provides that Grace-Conn "solely shall be authorized to act for [Fresenius] in its sole discretion with respect to Indemnified Taxes."  In addition, Fresenius is required to "provide to Grace-Conn and its agents from time to time Powers of Attorney with respect to Indemnified Taxes so that Grace-Conn can act as the agent of [Fresenius] with respect to Indemnified Taxes."

4

## The Automatic Stay

11.     Section 362(a)(8) of the Bankruptcy Code extends the automatic stay to "the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor" (emphasis added). Because any liability resulting from the disallowance of the Carryback would be Grace-Conn's responsibility (subject to the terms and conditions of the Settlement Agreement), any action commenced in the Tax Court either by Grace-Conn or by Fresenius relating to the Carryback would "concern the debtor." The automatic stay would thus prevent Grace-Conn from commencing an action in Tax Court, in its own name or on behalf of Fresenius, to resolve the tax matters related to the Carryback.

12.     The language of Section 362(a)(8) is substantially broader than the general automatic stay of Section 362(a)(1), which applies only to actions "against the debtor." Section 362(a)(8) applies to any case "concerning the debtor." Given that Grace-Conn is a debtor and the liability created by the Deficiency Notice would be a liability of Grace-Conn directly under Treas. Reg. § 1.1502-6 and by indemnification under the Settlement Agreement, any litigation commenced by Fresenius or in Fresenius' name in Tax Court regarding this issue clearly concerns Grace-Conn and will have a significant impact on its estate.

13.     Therefore, as stated above, without the requested order, the automatic stay will prevent Grace-Conn and Fresenius from filing suit in the Tax Court with respect to the Deficiency Notice. The IRS will then assess against Fresenius (and potentially Grace-Conn) the tax and related interest alleged to be due, which in turn will create a corresponding claim by Fresenius against Grace-Conn under the Settlement Agreement.

5

## The Tax Suit

14.    There are substantial benefits to Grace-Conn of modifying the automatic

stay and having this matter litigated in the United States Tax Court. First and foremost, Grace-

Conn believes its position on the Carryback is correct and desires the opportunity to seek a

resolution of this issue with a branch of the IRS known as the Appeals Division, whose job it is

to resolve taxpayer disputes without the need for litigation, where possible. In this particular

case, the most likely route through which the Appeals Division will obtain jurisdiction to

consider this dispute is by Grace-Conn's filing a petition in Tax Court. Under IRS procedures,

when a case is docketed in Tax Court that has not yet had Appeals Division consideration, it is

typically referred to the Appeals Division for consideration. The IRS's procedural rules do not

provide a similar procedure after a notice of deficiency is issued if the taxpayer has not filed a

petition. Hence, if this Court does not modify the automatic stay to permit the parties to file a

petition in Tax Court, Grace-Conn will likely forfeit the opportunity to resolve the matter with

the Appeals Division.

15.    Second, if a suit seeking redetermination of the amounts set forth in the

Deficiency Notice is filed in the Tax Court, the IRS generally is prevented by Section 6213(a) of

the Tax Code from assessing and commencing collection of such amounts until the case is

resolved by the Tax Court. In turn, this means that Fresenius will have a claim against Grace-

Conn under the Settlement Agreement only if and when the Tax Court issues a decision in the

Tax Suit that is adverse to Grace-Conn. If Grace-Conn does not timely file a petition in Tax

Court to contest the Deficiency Notice, then the IRS can initiate assessment and collection

activities and Fresenius could then be forced to file a claim against Grace-Conn under the

6

Settlement Agreement. Given that it is operating in bankruptcy, Grace-Conn does not believe

that it would be beneficial to the administration of its bankruptcy estate to be forced to address a

claim by Fresenius at this time, especially with the availability of a court with specialized

expertise that does not require pre-payment to contest the tax.

      16.     Third, the Tax Court is a court with special expertise in the resolution of

matters such as the issues presented by the IRS's denial of the Carryback. The issue at hand is

one that requires specialized knowledge of the consolidated return regulations of the Tax Code.

A summary of the issue is attached as <u>Exhibit D</u>.

<b><u>Relief Requested</u></b>

      17.     By this Motion, the Debtors seek an order (i) modifying the automatic stay

so that Grace-Conn may institute and manage the litigation of the amounts at issue in the

Deficiency Notice, and (ii) authorizing Grace-Conn to proceed with the Tax Suit.

<b><u>Statutory Authority</u></b>

      18.     Under Section 362(d) of the Bankruptcy Code, "[o]n request of a party in

interest and after notice and a hearing, the court shall grant relief from the stay provided under

subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such

stay," provided the Court finds adequate cause for such modification.

      19.     Section 105 of the Bankruptcy Code permits a bankruptcy court to "issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title."

      20.     With respect to the question of whether another forum, such as the Tax

Court, is suited to adjudicate a matter, bankruptcy courts have identified various relevant factors:

7

"The analysis necessarily includes balancing the Bankruptcy Court's need to administer the

bankruptcy case in an orderly and efficient manner, the complexity of the tax issues to be

decided, the asset and liability structure of the debtor, the length of time required for trial and

decision, judicial economy and efficiency, the burden on the Bankruptcy Court's docket,

prejudice to the debtor and potential prejudice to the taxing authority responsible for collection

from inconsistent assessments." In re Hunt, 95 B.R. 442, 445 (Bankr. N.D. Tex. 1989).

      21.     This Court's time and attention are urgently required with respect to other

aspects of Chapter 11 Cases. The tax issues involved in the Tax Suit are sufficiently technical

that the expertise of a specialized tribunal would be beneficial. Finally, the Debtors' resources

are best preserved by filing the Tax Suit in Tax Court rather than paying the amounts at issue in

the Deficiency Notice and subsequently seeking a refund.

      22.     This Motion is in the best interests of the Debtors and their creditors and

should be approved by the Bankruptcy Court pursuant to Fed. R. Bankr. P. 4001.

### Notice

      23.     Notice of this Motion has been given to (i) the Office of the United States

Trustee, (ii) the Internal Revenue Service; (iii) counsel to the debtor in possession lenders,

(iv) counsel to each official committee appointed by the United States Trustee and the Future

Claimant's Representative, and (v) those parties that requested papers under Fed. R. Bankr. P.

2002. In light of the nature of the relief requested, the Debtors submit that no further notice is

required.

      WHEREFORE, the Debtors respectfully request that the Court enter an order (i)

modifying the automatic stay so that Grace-Conn may institute and manage the contest or

8

litigation of the amounts at issue in the Deficiency Notice, and (ii) authorizing Grace to proceed

with the Tax Suit.

Dated: March 28, 2007

        KIRKLAND & ELLIS LLP
        David M. Bernick, P.C.
        Janet S. Baer
        Todd F. Maynes, P.C.
        200 East Randolph Drive
        Chicago, Illinois 60601
        Telephone: (312) 861-2000

        and

        PACHULSKI STANG ZIEHL YOUNG JONES &
        WEINTRAUB LLP

        Laura Davis Jones (Bar No. 2436)
        James E. O'Neill (Bar No. 4042)
        Timothy P. Cairns (Bar No. 4228)
        919 North Market Street, 17th Floor
        P. O. Box 8705
        Wilmington, DE  19899-8705
        (302) 652-4100

        Co-Counsel for the Debtors and Debtors in Possession

9

THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Hearing Date: May 2, 2007 at 2:00 p.m. (in Pittsburgh, PA)**
**Response Deadline: April 13, 2007 at 4:00 p.m.**

## NOTICE OF DEBTORS' MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY SO THAT DEBTORS MAY COMMENCE TAX COURT LITIGATION TO RESOLVE CERTAIN TAX CLAIMS

TO:    Parties required to receive notice pursuant to Del. Bankr. LR 2002-1.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") filed

the Debtors' Motion for an Order Modifying the Automatic Stay So That Debtors May

Commence Tax Court Litigation to Resolve Certain Tax Claims (the "Motion") with the United

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 (the "Bankruptcy Court"). A true and correct copy of the Motion is attached hereto.

Objections or other responses to the relief requested in the Motion, if any, must be in writing and be filed with the Bankruptcy Court on April 13, 2007, at 4:00 p.m. At the same time, you must also serve a copy of the objections or responses, if any, upon the following: (i) co-counsel for the Debtors, Janet S. Baer, Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 and James E. O'Neill, Pachulski Stang Ziehl Young Jones & Weintraub LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801); (ii) counsel to the Official Committee of Unsecured Creditors, Lewis Kruger, Stroock & Stroock & Lavan, 180 Maiden Lane, New York, NY 10038-4982, and Michael R. Lastowski, Duane, Morris & Heckscher, LLP, 1100 N. Market Street, Suite 1200, Wilmington, DE 19801-1246; (iii) counsel to the Official Committee of Property Damage Claimants, Scott L. Baena, Bilzin, Sumberg, Dunn, Baena, Price & Axelrod, First Union Financial Center, 200 South Biscayne Boulevard, Suite 2500, Miami, FL 33131, and Michael B. Joseph, Ferry & Joseph, P.A., 824 Market Street, Suite 904, P.O. Box 1351, Wilmington, DE 19899; (iv) counsel to the Official Committee of Personal Injury Claimants, Peter Van L. Lockwood, Caplin & Drysdale, Chartered, One Thomas Circle, N.W., Washington, DC 20005, and Mark T. Hurford, Campbell & Levine, LLC, 800 N. King Street, Suite 300, Wilmington, DE 19801; (v) counsel to the Official Committee of Equity Holders, Gary Becker, Kramer Levin Naftalis & Frankel LLP, 919 Third Avenue, New York, NY 10022, and Teresa K.D. Currier, Buchanan, Ingersoll & Ro0ney, P.C., 1000 West Street, Suite 1410, P.O. Box 1397, Wilmington, DE 19899-1397; (vi) counsel to the Future Claimants' Representative, Richard H. Wyron,

2

Orrick, Herrington & Sutcliffe, LLP, 3050 K Street, NW, Suite 300, Washington, DC 20007,

and John C. Phillips, Jr., Phillips, Goldman & Spence, P.A., 1200 North Broom Street,

Wilmington, DE 19806; and (vii) the Office of the United States Trustee, Attn: David Klauder,

844 N. King Street, Wilmington, DE 19801.

IF NO OBJECTIONS ARE TIMELY FILED AND SERVED IN ACCORDANCE

WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF

REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

IN THE EVENT THAT ANY OBJECTION OR RESPONSE IS FILED AND SERVED

IN ACCORDANCE WITH THIS NOTICE, A HEARING ON THE MOTION WILL BE HELD

BEFORE THE HONORABLE JUDITH K. FITZGERALD AT THE UNITED STATES

*[Remainder of Page Intentionally Left Blank]*

3

BANKRUPTCY COURT, 5414 U.S. STEEL BUILDING, 600 GRANT STREET,

PITTSBURGH, PENNSYLVANIA 15219 ON MAY 2, 2007 AT 2:00 P.M. PREVAILING

EASTERN TIME.

Dated: March 28, 2007          KIRKLAND & ELLIS LLP
                               David M. Bernick, P.C.
                               Janet S. Baer
                               Andrea L. Johnson
                               200 East Randolph Drive
                               Chicago, Illinois 60601
                               (312) 861-2000

                               and

                               PACHULSKI STANG ZIEHL YOUNG JONES
                               & WEINTRAUB LLP

                               _____
                               Laura Davis Jones (Bar No. 2436)
                               James E. O'Neill (Bar No. 4042)
                               Timothy P. Cairns (Bar No. 4228)
                               919 North Market Street, 17th Floor
                               P.O. Box 8705
                               Wilmington, DE 19899-8705 (Courier 19801)
                               Telephone: (302) 652-4100
                               Facsimile:  (302) 652-4400

                               Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:126177.1

# **EXHIBIT A**

**Department of the Treasury**
**Internal Revenue Service**
P.O. Box 17167
Stop 4043
Ft. Lauderdale, Florida 33318

**Date:** **MAR 2 2 2007**

Fresenius Medical Care Holdings, Inc.
(f/k/a W.R. Grace & Co. Affiliated Group and after that
f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group)
c/o Tax Department
5400 Broken Sound Boulevard NW, Suite 300
Boca Raton, Florida 33487-3517

**Employee to Contact:**
Susan S. Wells
**Employee Identification Number:**
65-04445
**Contact Telephone Number:**
(954) 423-7510
**Taxpayer Identifying Number:**
13-3461988

**CERTIFIED MAIL**

| Taxable Year Ended | Deficiency |
|---|---|
| December 31, 1989 | $32,554,061.00 |

## NOTICE OF DEFICIENCY

The last date to file a petition with the United States Tax Court is __JUN 2 0 2007__
**if the filing of the tax court petition is not prohibited by the automatic stay imposed by
the bankruptcy code. If the automatic stay was in effect on the date of this letter or
comes into effect during the period from the date of this letter through __JUN 2 0 2007__
see the description of how to calculate the last date to file a petition below.**

We have determined that you owe additional tax, other amounts, or both, for the tax year(s)
identified above. This letter is your NOTICE OF DEFICIENCY, as required by law and
permitted by Bankruptcy Code §362(b)(9). The enclosed statement shows how we figured the
deficiency. If you are a C-corporation, section 6621(c) of the Internal Revenue Code requires
that we charge an interest rate two percent higher than the normal rate on large corporate
underpayments of $100,000 or more.

You and/or your spouse have various options in responding to this letter. The **first** option is
to agree with the amount of proposed deficiency listed above. *If you agree,* sign the enclosed
waiver form and return it to us at the Internal Revenue Service (IRS) address on the top of the
front of this letter. This will permit us to assess the deficiency quickly and can limit the
accumulation of interest. If you choose this option, you do not need to read any further.

Letter 1384 (DO) (Rev. 12-2004)
Cat. No. 40693N

2

A **second** option is to petition the United States Tax Court by the date shown above, *if the automatic stay **was not** in effect from the date of this letter through the date shown above as the last date to file a petition.* A stay is a temporary suspension of proceedings. If we issue a notice of deficiency and the automatic stay is in effect, the automatic stay prohibits a person in bankruptcy from filing a petition with the Tax Court until the automatic stay is lifted or terminated by operation of law.

A **third** option is to request the Bankruptcy Court to lift the automatic stay under the Bankruptcy Code section 362(d)(1) so that you can file a Tax Court petition while you are still in bankruptcy. *If you file a Tax Court petition while the automatic stay is still in effect, the Tax Court will dismiss your petition for lack of jurisdiction.*

A **fourth** option is to petition the Tax Court *after* the automatic stay is no longer in effect by operation of law. Generally, the automatic stay terminates by operation of law at the earliest of the time the bankruptcy case is closed, the time the bankruptcy case is dismissed, or in an individual Chapter 7 case or a case under Chapters 9, 11, 12 or 13, the time a discharge is granted or denied by the Bankruptcy Court.

### WHEN TO FILE A PETITION

Second Option – File by the date shown above as "the last date to file a petition," *if the automatic stay was **never** in effect for the time period from the date of this letter through the date listed above as the "last date to file a petition."*

Third and Fourth Options – If the automatic **stay is in effect** as of the date of this letter and prohibits the filing of a Tax Court petition, you may file a Tax Court petition after the automatic stay is lifted by the Bankruptcy Court or when the automatic stay is no longer in effect by operation of law. If the automatic stay was in effect as of the date of this letter, then once the automatic stay is terminated you have 90 days from the date it was terminated (150 days if we mailed this letter to an address outside of the Untied States), plus the additional 60 day period set out in section 6213(f)(1) of the Internal Revenue Code, to file your Tax Court petition asking for a redetermination of the deficiency.

If the automatic **stay was not in effect** as of the date of this letter but you file a bankruptcy petition within the 90 day (or if applicable, 150 day) period to file a Tax Court petition but prior to filing your Tax Court petition, then once the automatic stay is terminated, you have 90 days (or if applicable, 150 days) less the number of days between the date of this letter and the date of filing the bankruptcy petition, plus the additional 60 day period set out in section 6213(f)(1), to file your Tax Court petition. However, we suggest that you file your petition as soon as possible after the Bankruptcy Court lifts the automatic stay or the automatic stay is no longer in effect.

### HOW TO FILE A PETITION

If this letter is addressed to a husband and wife, both want to petition the Tax Court, **and** neither is in bankruptcy with an automatic stay in effect, you may file a joint petition that both of you must sign, or you may each file a separately signed petition.

If both spouses are in bankruptcy and the automatic stay is in effect, each spouse should request the Bankruptcy Court to lift the automatic stay before filing a Tax Court petition. If only one spouse has the automatic stay lifted, then only that spouse can file a Tax Court petition. If only one spouse is in bankruptcy and the automatic stay is in effect, the spouse in bankruptcy

Letter 1384 (DO) (Rev. 12-2004)
Cat. No. 40693N

3

must request the Bankruptcy Court to lift the stay before filing a petition with the Tax Court. The spouse not in bankruptcy can file a separate petition to the Tax Court. The extension of time given the spouse in bankruptcy does not extend the time to file a petition for the spouse not in bankruptcy.

All petitions to the Tax Court for a redetermination of this deficiency must be sent to: **United States Tax Court, 400 Second Street, N.W., Washington, D.C. 20217.** Attach a copy of this letter and copies of all statements and/or schedules you received with this letter. You can get a copy of the rules for filing a petition and a petition form by writing to the Clerk of the Tax Court at the same address. If more than one tax year is shown above, you may file one petition form showing all of the years you are contesting. You may represent yourself or you may be represented by anyone admitted to practice before the Tax Court.

The Tax Court has a simplified procedure for cases when the amount in dispute is $50,000 or less for any one tax year. You can get information about this procedure by writing to the Tax Court at the address listed above, or from the court's internet site at www.ustaxcourt.gov. Write promptly if you intend to file a timely petition with the Tax Court.

*The Court cannot consider your case if the petition is filed late.* The petition is considered timely filed if the U.S. postmark date falls with the 90 (or 150) day period stated above and as extended by I.R.C. §6213(f)(1), if applicable, and the envelope containing the petition is properly addressed to the Tax Court with the correct postage affixed. Contacting the Internal Revenue Service (IRS) for more information, or receiving other correspondence from the IRS, will not change the allowable period for filing a petition with the Tax Court. If you decide not to sign and return the enclosed waiver form, and you do not file a petition with the Tax Court within the applicable time limits discussed above, the law requires us to assess the proposed deficiency and send you a request for payment.

## BANKRUPTCY COURT CONSIDERATIONS AND OPTIONS

Whether you file a petition with the Tax court, contest the deficiency in the Bankruptcy Court, or sign and return the waiver form, the IRS is authorized to file a proof of claim with the Bankruptcy Court for the deficiency, interest and additions to tax provided by law.

You have the option of filing an objection in the Bankruptcy Court to any proof of claim the IRS may file or of initiating a proceeding under section 505 of the Bankruptcy Code to determine the amount of the proposed deficiency, interest and additions to tax provided by law that are due from you. You can initiate a section 505 proceeding even if the IRS has not filed a proof of claim in your bankruptcy case. If the Bankruptcy Court or the Tax Court determines your tax liability, you cannot petition the other Court to redetermine the same liability at some later date.

## GETTING ANSWERS TO ANY QUESTIONS

If you have questions about this letter, you may write to or call the contact person whose name, telephone number, employee identification number and IRS address are shown on the front of this letter. If you write, please include your telephone number, the best time for us to call, and a copy of this letter to help us to identify your account. You may wish to keep the original letter for your records. If you prefer to call and the telephone number is outside your local calling area, there will be a long distance charge to you.

**Letter 1384 (DO) (Rev. 12-2004)**
Cat. No. 40693N

4

The contact person can access your tax information and help you to get answers. Also you have the right to contact the office of the Taxpayer Advocate. Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process. The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition with the Tax Court. The Taxpayer Advocate can ensure that a tax matter gets prompt and proper handling when it may not have been resolved through normal channels. If you want Taxpayer Advocate assistance, please contact the Taxpayer Advocate for the IRS office that issued this notice of deficiency. For a list of Taxpayer Advocate telephone numbers and addresses, see the enclosed Notice 1214, *Helpful Contacts for Your "Notice of Deficiency"*.

Thank you for your cooperation.

Sincerely,

Mark W. Everson
Commissioner

By
Linda B. Vranas (mjm)

Linda B. Vranas
Technical Services Territory Manager
South Atlantic Area

Enclosures:
Waiver
Statement
Notice 1214
Envelope

Letter 1384 (DO) (Rev. 12-2004)
Cat. No. 40693N

**Form 4089**
(Rev. January 1983)

**Department of the Treasury**

**Internal Revenue Service**

**Notice of Deficiency Waiver**

---

**Name, SSN or EIN, and Address of Taxpayer**

Fresenius Medical Care Holdings, Inc.
(f/k/a W.R. Grace & Co. Affiliated Group and after that
f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group)
c/o Tax Department
5400 Broken Sound Boulevard NW, Suite 300
Boca Raton, Florida 33487-3517

EIN: 13-3461988

---

**Kind of Tax**    Income

---

**Copy to Authorized Representative**

Elyse Filon, Esquire, Vice President-Finance
W.R. Grace & Co.
5400 Broken Sound Boulevard NW, Suite 300
Boca Raton, Florida 33487-3517

**Deficiency**

---

| Taxable Year Ended | Deficiency |
|---|---|
| December 31, 1989 | $32,554,061.00 |

---

**See the attached explanation for the above deficiencies**

**I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest provided by law.**

| Your | | date |
| **Signature** | | |
| Spouse's | | date |
| **Signature** | | |
| **Taxpayer's Representative** | | date |
| **Signature** | | |
| **Corporate Name** | | |
| | | |
| **Corporate Officers** | | date |
| **Signature** | | |

**Note:** If you consent to the assessment of the amounts shown in this waiver, please sign and return it in order to limit the accumulation of interest and expedite our bill to you. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund. It will not prevent us from later determining, if necessary, that you owe additional tax; nor will it extend the time provided by law for either action.

If you later file a claim and the Internal Revenue Service disallows it, you may file suit for refund in a district court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign:** If this waiver is for any year(s) for which you filed a joint return, both you and your spouse must sign this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

---

**If you agree, please sign this waiver (Form 4089) and return it.**

Fresenius Medical
Care Holdings, Inc.
EIN:13-3461988

**ATTACHMENT TO WAIVER**
Taxable Year Ended
December 31, 1989

It is determined that the amount of $7,537,535.00 refunded to you for the taxable year ended December 31, 1989 resulted from your Application for Tentative Refund Form 1139 on which you claimed a net operating loss carryback from the taxable year ended December 31, 1997.

This net operating loss carryback cannot be used in the taxable year ended December 31, 1989 because it is subject to the separate return limitation year (SRLY) limitations imposed by the Treasury Regulations under I.R.C. § 1502 and the amount of the carryback exceeds the amount of the SRLY limitations imposed by those regulations.

It is further determined that the amount of $27,751,599.00 refunded to you for the taxable year ended December 31, 1989 resulted from your Application for Tentative Refund Form 1139 on which you claimed a net operating loss carryback from the taxable year ended December 31, 1998.

This net operating loss carryback cannot be used in the taxable year ended December 31, 1989 because it is subject to the separate return limitation year (SRLY) limitations imposed by the Treasury Regulations under I.R.C. § 1502 and the amount of the carryback exceeds the amount of the SRLY limitations imposed by those regulations.

Due to the adjustments in this notice and other reports previously furnished to you, you sustained a net operating loss deduction within the meaning of section 172 of the Internal Revenue Code in the amount of $0.00 for the taxable year ended December 31, 1989, rather than the amount of $131,427,399.00 as shown on your return.

Fresenius Medical Care
Holdings, Inc.

**ATTACHMENT TO WAIVER**
Taxable Year Ended
December 31, 1989

**Common Parent Corporation**
Fresenius Medical Care Holdings, Inc. (f/k/a
W.R. Grace & Co. Affiliated Group and after that
f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group)

**Employer Identification Number**
13-3461988

**Subsidiary Corporations**

| SUBSIDIARY | EIN | Taxable Year Ended December 31, 1989 |
|---|---|---|
| W.R. Grace & Co.-Conn | 13-5114230 | X |
| AG CHEM International, Inc. | 13-3450409 | X |
| Alewife Boston, Ltd. | 22-2603361 | X |
| Alewife Land Corporation | 22-2603359 | X |
| American Carry Products Corp. | 13-3064201 | X |
| Antilles Chemical Corporation | 13-6044272 | X |
| A-1 Bit and Tool Co. Inc. | 22-2974435 | X |
| Beckett Golf Club, Inc. | 22-2026790 | X |
| Berry Gas Company | 73-0801942 | X |
| Camillus Acres, Inc. | 23-1945205 | X |
| Chomerics, Inc. | 04-2281379 | X |
| Coalgrace, Inc. | 13-2934063 | X |
| Cox Marketing, Inc. | 75-1449619 | X |
| Creative Food ' Fun Company | 58-1505881 | X |
| Creative Restaurant Concepts, Inc. | 58-1507000 | X |
| Darex Puerto Rico, Inc. | 13-2830236 | X |
| Daylin Summit, Inc. | 95-2748113 | X |
| Del Taco Corporation | 95-3190440 | X |
| Del Taco Restaurants, Inc. (formally Taco Villa, Inc.) | 75-1437918 | X |
| Devcoa Incorporated | 95-1033047 | X |
| Deway and Almy Company | 04-6087235 | X |
| El Liquidating Corp. | 31-0513578 | X |
| Ecarq, Inc. | 22-2065245 | X |
| Emerson and Cuming, Inc. | 22-2312556 | X |
| Five Alewife Boston, Ltd. | 22-3003981 | X |
| GEC Equipment Co. | Pending | X |
| GEC Management Corp. | 75-2283780 | X |
| GPC Marketing Company | 22-2279517 | X |

Fresenius Medical Care
Holdings, Inc.

**ATTACHMENT TO WAIVER**
Taxable Year Ended
December 31, 1989

**Common Parent Corporation**
Fresenius Medical Care Holdings, Inc. (f/k/a
W.R. Grace & Co. Affiliated Group and after that
f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group)

**Employer Identification Number**
13-3461988

**Subsidiary Corporations**

| SUBSIDIARY | EIN | Taxable Year Ended December 31, 1989 |
|---|---|---|
| GPC Transporter, Inc. | 73-1195791 | X |
| GPC Property, Inc. | Pending | X |
| Gloucester New Communities Company, Inc. | 13-2728098 | X |
| Grace (Middle East), Inc. | 13-3307138 | X |
| Grace A-B, Inc. | 22-2355544 | X |
| Grace ASC Corp. | 13-3220484 | X |
| Grace Chemical Company of Cuba | 36-6110408 | X |
| Grace Communications, Inc. | 13-2830262 | X |
| Grace Drilling Company | 73-0971397 | X |
| Grace Energy Corp. | 11-2516702 | X |
| (formally Grace Natural Resources Corp.) | | X |
| Grace Environmental, Inc. | 13-3546067 | X |
| Grace Equipment Co. | 74-1951774 | X |
| Grace H-G, Inc. | 13-3041784 | X |
| Grace Industrial Chemicals, Inc. | 13-2671485 | X |
| Grace Offshore Co. | 72-0502652 | X |
| Grace Par Corporation | 22-2341175 | X |
| Grace Petroleum Corporation | 73-0963306 | X |
| Grace Petroleum Libya Incorporated | 13-6112816 | X |
| Grace Technology Marketing Services, Inc. | 13-2886491 | X |
| Grace Transportation Services, Inc. | 22-2289266 | X |
| (Formally Grace Distribution Services) | | |
| Grace Ventures Corp. | 13-3102623 | X |
| Grace Washington, Inc. | 22-2941320 | X |
| Gracoal, Inc. | 75-1511800 | X |
| Hanover Square Corporation | 13-6112817 | X |
| Homco International, Inc. | 74-1614655 | X |
| Monolith Enterprises Incorporated | 52-0913918 | X |
| Monolith Kitchens, Inc. | 52-1309187 | X |
| Mount Bundey Mining, Inc. | 13-3365823 | X |
| National Medical Care, Inc and Subsidiaries | 04-2835488 | X |

Fresenius Medical Care
Holdings, Inc.

**ATTACHMENT TO WAIVER**
Taxable Year Ended
December 31, 1989

**Common Parent Corporation**
Fresenius Medical Care Holdings, Inc. (f/k/a
W.R. Grace & Co. Affiliated Group and after that
f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group)

**Employer Identification Number**
13-3461988

**Subsidiary Corporations**

| SUBSIDIARY | EIN | Taxable Year Ended December 31, 1989 |
|---|---|---|
| Offshore Fisheries, Inc. | 04-2154816 | X |
| Ridgewood Acceptance Corporation | 22-2739256 | X |
| Ridgewood Bartow Holdings, Inc. | 22-3193793 | X |
| Ridgewood Phosphate Corporation | 13-3007066 | X |
| Seven Hanover Square Corporation | 13-2770379 | X |
| Sourgasco II Corp. | 13-3041786 | X |
| Southern Oil, Resin & Fiberglass, Inc. | 59-0967853 | X |
| StanTrans, Inc. | 73-1059702 | X |
| Standard Trans Pipe (Virginia) Inc. | 22-2265877 | X |
| Standard Transpipe Corp. | 73-1054103 | X |
| Support Terminal Services, Inc. | 73-1078342 | X |
| Ten Columbia Corporate Center, Inc. | 22-3018095 | X |
| Ven-Tech One, Inc. | 13-3098612 | X |
| W.R.C. Technical Ventures | 13-3098291 | X |
| W.R. Grace Capital Corp. | 13-2934061 | X |
| W.R. Grace Credit Corp. | 13-3096116 | X |
| W.R. Grace Land Corporation | 13-2677646 | X |
| W.R. Grace Properties, Inc. | 13-2660688 | X |
| Water Street Corporation | 13-6152056 | X |
| Woodward Chemicals Corporation | 13-2795345 | X |
| Woolwich Sewer Co. | 52-1036012 | X |
| Woolwich Water Co., Inc. | 52-1036013 | X |
| 1211 Wisconsin, Inc. | 22-2870023 | X |
| 7911 Baygreen, Inc. | 52-1645583 | X |

Fresenius Medical Care
Holdings, Inc.

**ATTACHMENT TO WAIVER**
Taxable Year Ended
December 31, 1989

The tax liability of Fresenius Medical Care Holdings, Inc. (f/k/a W.R. Grace & Co. Affiliated Group and after that f/k/a Fresenius National Medical Care Holdings, Inc. Affiliated Group) and each subsidiary company named above is stated as provided by the regulations prescribed under section 1502 of the Internal Revenue Code.

| Taxable Year Ended | Deficiency |
|---|---|
| December 31, 1989 | $32,554,061.00 |

The deficiency shown will be assessed severally against each corporation named above in accordance with the regulations prescribed under section 1502 of the Internal Revenue Code.

Form 5278
Taxpayer: Fresenius Medical Care Holdings, Inc.
      (f/k/a W.R. Grace & Co. Affiliated
      Group and after that f/k/a Fresenius National
      Medical Care Holdings, Inc. Affiliated Group

Return Form #1120

Schedule #1

STATEMENT - INCOME TAX CHANGES
Notice of Deficiency
Taxable Years Ended
December 31,
1989

| | |
|---|---|
| 1. Adjustments to Income | |
| a. Interest Expense- Corporate Owned Life Insurance | $10,602,282.00 |
| b. Net Operating Loss Deduction | 131,427,399.00 |
| 2. Total Adjustments | 142,029,681.00 |
| 3. Taxable Income | 145,355,687.00 |
|   a. No Return Filed     [   ] | |
|   b. Notice of Deficiency   [   ] | |
|   c. Return as Filed      [ x ] | |
| 4. Taxable Income as Revised | 287,385,368.00 |
| 5. Tax | 97,711,025.00 |
| 6. Alternative Tax | |
| 7. Corrected Tax Liability | 97,711,025.00 |
| 8. Less Credits: | |
|   a. Foreign Tax Credit | 33,135,650.00 |
|   b. General Business Credit | 9,265,937.00 |
|   c. Minimum Tax Credit | 3,024,137.00 |
| 9. Balance | 52,285,301.00 |
| 10. Plus: | |
|   a. Investment Tax Credit Recapture | 2,229,840.00 |
|   b. Research Credit Recapture | 109,856.00 |
|   c. Environmental Tax | 429,343.00 |
| 11. Total Corrected Tax Liability | 55,054,340.00 |
| 12. Total Tax: Shown on Return or Previously Adjusted (See Schedule # 1A) | 22,500,279.00 |
| 13. Increase in Tax | $32,554,061.00 |

Form 5278
Taxpayer:  Fresenius Medical Care Holdings, Inc.
           (f/k/a Grace & Co. Affiliated Group
           and after that f/k/a Fresenius National
           Medical Care Holdings, Inc.)

Return Form #1120

STATEMENT - INCOME TAX CHANGES
Notice of Deficiency

Schedule #1A

Taxable Years Ended
December 31,
1989

Form 5278-Line 12

| | |
|---|---|
| Tax liability assessed on original return | $45,160,750.00 |
| Plus: Additional Assessment Made on or about April 3, 1995 | 12,628,663.00 |
| Less: Refund from Form 1139 made on or about January 11, 1999 | 7,537,535.00 |
| Less: Refund from Form 1139 made on or about May 29, 2000 | 27,751,599.00 |
| Total tax shown on return and/or previously adjusted | $22,500,279.00 |

Fresenius Medical Care
Holdings, Inc. (f/k/a W.R. Grace
& Co. Affiliated Group
and after that f/k/a
Fresenius National Medical
Care Holdings, Inc. Affiliated Group)

Explanation of Items
Taxable Years Ended
December 31, 1989

Notice of Deficiency Statement

1.a.      It is determined that the claimed interest on loans from corporate owned life insurance in the amount of $13,252,852.00 is not allowed to the extent of $10,602,282.00 because it has not been established that any amounts in excess of $2,650,570.00 represents ordinary and necessary business expenses or was spent for the purpose designated.  Accordingly, your taxable income is increased in the amount of $10,602,282.00 for the taxable year ended December 31, 1989.

Recap of Adjustment by Entity                                     December 31, 1989
W.R. Grace & Co.-Conn                                             $10,602,282.00

1.b.      It is determined that the amount of $7,537,535.00 refunded to you for the taxable year ended December 31, 1989 resulted from your Application for Tentative Refund Form 1139 on which you claimed a net operating loss carryback from the taxable year ended December 31, 1997.

          This net operating loss carryback cannot be used in the taxable year ended December 31, 1989 because it is subject to the separate return limitation year (SRLY) limitations imposed by the Treasury Regulations under I.R.C. § 1502 and the amount of the carryback exceeds the amount of the SRLY limitations imposed by those regulations.

          It is further determined that the amount of $27,751,599.00 refunded to you for the taxable year ended December 31, 1989 resulted from your Application for Tentative Refund Form 1139 on which you claimed a net operating loss carryback from the taxable year ended December 31, 1998.

          This net operating loss carryback cannot be used in the taxable year ended December 31, 1989 because it is subject to the separate return limitation year (SRLY) limitations imposed by the Treasury Regulations under I.R.C. § 1502 and the amount of the carryback exceeds the amount of the SRLY limitations imposed by those regulations.

          Due to the adjustments in this notice and other reports previously furnished to you, you sustained a net operating loss deduction within the meaning of section 172 of the Internal Revenue Code in the amount of $0.00 for the taxable year ended December 31, 1989, rather than the amount of $131,427,399.00 as shown on your return.

Recap of Adjustment by Entity                                     December 31, 1989
W.R. Grace & Co.-Conn                                             $131,427,399.00

8.a.      Due to the adjustments in this notice for the taxable year ended December 31, 1989, it is determined that you are allowed the Foreign Tax Credit  in the amount of $33,135,650.00, as shown in Exhibits A and A1, rather than the amount of $ 33,135,837.00 as previously adjusted.  Accordingly your tax liability increased in the amount of $187.00 for the taxable year ended December 31, 1989.

Fresenius Medical Care
Holdings, Inc. (f/k/a W.R. Grace
& Co. Affiliated Group
and after that f/k/a
Fresenius National Medical
Care Holdings, Inc. Affiliated Group)

Explanation of Items
Taxable Years Ended
December 31, 1989

Notice of Deficiency Statement

8.b.    Due to the adjustments made to taxable income in this notice for the taxable year ended
December 31, 1989, it is determined that you are allowed the General Business Credit in the amount
of $9,265,937.00, as shown in Exhibits B and B1.

8.c.    Due to the adjustments made to taxable income in this notice that directly affect the prior year
minimum tax credit, it is determined that you are allowed the prior year minimum tax credit in the
amount of $3,024,137.00, as shown in Exhibit C, for the taxable year ended December 31, 1989.

10.a.    It is determined that for the taxable year ended December 31,1989 you reported recapture of
investment credits in the amount of $2,229,840.00 as a reduction to amounts of unused investment
credits being carried forward to 1989, not as an increase in tax. It is determined that there are no
investment credit carryovers to 1989. Therefore, the investment credit recapture in the amount of
$2,229,840.00 must be reported as an increase in tax. Accordingly, your tax liability is increased in the
amount of $2,229,840.00 for the taxable year ended December 31, 1989. See Exhibit D.

10.b    It is determined that for the taxable year ended December 31, 1989, the research credit in
the amount of $109,856.00 is due to be recaptured and reflects a correction of the preliminary base
period used in the March 19, 1995, to the actual base period amounts. Accordingly, your tax liability is
increased in the amount of $109 856.00 for the taxable year ended December 31, 1989. See Exhibits
D and E.

10.b.    Due to the adjustments made to taxable income that directly affect the environmental tax, it is
determined that you are subject to environmental tax in the amount of $429,343.00, for the taxable
year ended December 31, 1989, rather than the amount of $416, 619.00 as previously adjusted.
Accordingly, your tax liability is increased in the amount of $12,427.00 for the taxable year ended
December 31, 1989. See Exhibits F and F1.

Fresenius Medical Care Holdings, Inc. (f/k/a
W. R. Grace & Co. Affiliated Group and after
that f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group)

Notice of Deficiency Statement
Exhibit A

-------------------------------------------------- FTC Main Worksheet - Input --------------------------------------------------

|  | 12/1989 review |
|---|---|
| **ELECTIONS:** |  |
| Deduct Foreign Tax (Y/N) | No |
| Simplified AMT FTC (Y/N) | n/a |
| **REGULAR FTC:** |  |
| Summary: |  |
| Total Reg FTC from Categories | 33,080,157 |
| Adjustment to Regular FTC | 55,493 |
| Less: Boycott Reduction | 0 |
| Total Regular FTC Allowed | 33,135,650 |
| Limitation Fraction: |  |
| Adjustment to US Taxable Inc | 0 |
| Adjustment to Inc Tax for FTC | 0 |
| Rounding of Limit Frac (0=No): |  |
| 1-14 Decimal Places | 0 |
| Foreign Taxes Deducted: |  |
| Adjustment to Proforma Taxable Inc | 0 |
| Adjustment to Proforma Income Tax | 0 |
| **AMT FTC:** |  |
| Summary: |  |
| Total AMT FTC from Categories | 19,491,669 |
| Adjustment to AMT FTC | 0 |
| Less: Boycott Reduction | 0 |
| Total AMT FTC Allowed | 19,491,669 |
| Limitation Fraction: |  |
| Adjustment to US AMTI | 0 |
| Adjustment to TMT for AMT FTC | 0 |
| Rounding of Limit Frac (0=No): |  |
| 1-14 Decimal Places | 0 |
| Adjustment to Overall AMT FTC Limit | 0 |
| Foreign Taxes Deducted: |  |
| Adjustment to Proforma AMTI | 0 |
| Adjustment to Proforma Overall Limit | 0 |
| **MTC FTC:** |  |
| MTC FTC on Excl Items | 0 |

-------------------------------------------------- Adjustment to Regular FTC --------------------------------------------------

|  | 12/1989 review |
|---|---|
| Regular FTC Adjustment | 0 |
| FROM NEW GRACE PER RETURN | 0 |
| from NEW GRACE - GC HOLDIN | 0 |
| Manual Entry | 55,493 |
| Total | 55,493 |

Fresenius Medical Care Holdings, Inc. (f/k/a
W. R. Grace & Co. Affiliated Group and after
that f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group)

Notice of Deficiency Statement

Exhibit A1

-------------------------------------------------- Summary of Regular FTC Allowed --------------------------------------------------

|  | 12/1989 review |
|---|---|
| ELECTION: |  |
| Deduct Foreign Tax (Y/N) | No |
| REGULAR FTC ALLOWED: |  |
| Cat 1: PASSIVE | 0 |
| Cat 2: HIGH-WITHHOLDING | 523,871 |
| Cat 3: FUJI- 902 | 224,117 |
| Cat 4: K.K.FUR-SUS-902 | 0 |
| Cat 5: SEA-OIL-902 | 187,140 |
| Cat 6: GENERAL | 32,145,029 |
| Cat 7: CORMIX-902 | 0 |
| Cat 8: WR GRACE S.AFRICA- | 0 |
|  |  |
| Total Before Adjustments | 33,080,157 |
| Add: Adjustment | 55,493 |
| Less: Boycott Reduction | 0 |
|  |  |
| Total Regular FTC Allowed | 33,135,650 |
|  |  |
| SECTION 965 REPATRIATION: |  |
| Sec 965 Repatriation |  |
| Included in Total Reg FTC | 0 |

Fresenius Medical Care Holdings, Inc.

Notice of Deficiency Statement
Exhibit B

General Business Credit
Taxable Year Ended December 31, 1989

| Description | Amounts |
|---|---|
| Allowable General Business Credit Per Return | ($20,451,142.00) |
| Allowable General Business Credit Per Audit-March 19, 1995 | (662,618.00) |
| Adjustment to General Business Credit Per Audit March 19, 1995 | $19,788,524.00 |
| | |
| Allowable General Business Credit Per Audit-March 19, 1995 | ($662,618.00) |
| Allowable General Business Credit Per Form 1139-Carryback From 1997 | (8,130,168.00) |
| Adjustment to General Business Credit Per Form 1139-Carryback from 1997 | ($7,467,550.00) |
| | |
| Allowable General Business Credit Per Audit-March 19, 1995 | ($662,618.00) |
| Additional General Business Credit Per Form 1139-Carryback From 1997 | (7,467,550.00) |
| Total Allowable General Business Credit Per Form 1139-Carryback From 1997 | ($8,130,168.00) |
| Additional General Business Credit from Córrected 1997 Carryback to 1988 | (1,135,769.00) |
| Allowable General Business Credit Per Audit | ($9,265,937.00) |

Fresenius Medical Care Holdings, Inc. (f/k/a
W. R. Grace & Co. Affiliated Group and after
that f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group)

Notice of Deficiency Statement

Exhibit B1

––––––––––––––––––––––––––––––––––––– General Business Credit - Input –––––––––––––––––––––––––––––––––––––

|  | 12/1989 review |
|---|---|
| **ADJUSTMENTS TO LIMITATIONS:** |  |
| Sec 382 Limits for GBC/MTC | No |
| Post-1986 GBC Limit | 0 |
| Pre-1984 Comb-ITC Limit | n/a |
| **GBC COMPONENTS:** |  |
| Investment Credit: |  |
| Regular ITC | 0 |
| Regular ITC - Passive | 0 |
| Rehabilitation Credit | 0 |
| Invest ESOP (TRASOP) | n/a |
| Energy Credit | 0 |
| Reforestation Credit | n/a |
| Work/Jobs Credit | 54,812 |
| Welfare-to-Work Credit | n/a |
| Alcohol Fuel Credit | 0 |
| Research Credit | 807,805 |
| Low-Income Housing | 0 |
| Enhanced Oil Recovery | n/a |
| Disabled Access Credit | n/a |
| Biomass Electricity | n/a |
| Wind Electricity | n/a |
| Indian Employment | n/a |
| Employer Social Security | n/a |
| Post-6/96 Orphan Drug | n/a |
| New Markets Tax Credit | n/a |
| Pension Plan Credit | n/a |
| Child Care Credit | n/a |
| Payroll ESOP (PAYSOP) | n/a |
| WIN Credit | n/a |
| **GBC BEFORE ZONE CREDITS:** |  |
| Current GBC | 862,618 |
| GBC Available | 6,334,464 |
| **GBC Allowed** | 6,334,464 |
| **ZONE CREDITS:** |  |
| Empowerment Zone Credit | n/a |
| DC Zone Credit | n/a |
| NY Liberty Zone Credit | n/a |
| Zone Credits Allowed | n/a |
| **TOTAL GBC:** |  |
| Total GBC Before Adjustment | 6,334,464 |
| Adjustment to Total GBC | 2,931,473 |
| **Total GBC Allowed** | 9,265,937 |

––––––––––––––––––––––––––––––––––––– Regular ITC –––––––––––––––––––––––––––––––––––––

|  | 12/1989 review |
|---|---|
| Regular ITC | 0 |
| Total | 0 |

Fresenius Medical Care Holdings, Inc.

Notice of Deficiency Statement
Exhibit C

Minimum Tax Credit
Taxable Year Ended December 31, 1989

| Description | Amounts |
|---|---|
| Allowable Minimum Tax Credit Per Audit-March 19, 1995 | ($2,935, 000.00) |
| Additional Minimum Tax Credit from Original 1997 Carryback to 1988 Per Form 1139 | (69,985.00) |
| Total Allowable Minimum Tax Credit from Original 1997 Carryback to 1988 Per Form 1139 | ($3,004,985.00) |
| Delete: | |
| Allowable Minimum Tax Credit Per Audit-March 19, 1995 | 2,935,000.00 |
| Additional Minimum Tax Credit from Original 1997 Carryback to 1988 Per Form 1139, Now Superceded by Corrected Credit Amount As a Result of Corrected 1997 NOL Carryback to 1988 | 69,985.00 |
| Plus: Additional Minimum Tax Credit from Corrected 1997 NOL Carryback to 1988. | ($3,024,137.00) |
| Total Allowable Minimum Tax Credit Per Audit | ($3,024,137.00) |

Fresenius Medical Care Holdings, Inc. (f/k/a
W.R. Grace & Co. Affiliated Group and after
that f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group)

Notice of Deficiency Statement

Exhibit D

------------------------ Miscellaneous Taxes & Credit Recapture - Input ------------------------

| | 12/1989 review |
|---|---|
| **CREDIT RECAPTURE:** | |
| Investment Credit | 2,229,840 |
| Low-Income Housing Credit | 0 |
| Qual Elec Vehicle Credit | n/a |
| Indian Employment Credit | n/a |
| New Markets Tax Credit | n/a |
| Child Care Credit | n/a |
| Adjustment to Credit Recapture | 109,856 |
| | |
| Subtotal Credit Recapture | 2,339,696 |
| **MISCELLANEOUS TAXES:** | |
| Sec 453(l)(3) Interest | 0 |
| Sec 453A(c) Interest | 0 |
| Sec 460(b)(2) Interest | 0 |
| Adjustment to Misc Taxes | 0 |
| | |
| Subtotal Misc Taxes | 0 |
| **TOTAL MISC & RECAPTURE:** | |
| Total Misc & Recapture | 2,339,698 |
| | |
| **FOR AUDIT PURPOSES ONLY:** | |
| Disable COs/CBs FROM This Year: | |
| Disable All Carrybacks (Y/N) | No |
| Disable Cap Loss CB Only (Y/N) | No |
| Disable Major Carryovers (Y/N) | No |
| To Collect Payroll, Excise, | |
| and Other Data Not Used by | |
| the Program: | |
| For Info Only | 0 |

------------------------ Adjustment to Credit Recapture ------------------------

| | 12/1989 review |
|---|---|
| Adjustment to Credit Recapture | 0 |
| Minimum Tax Credit | 0 |
| Research Credit | 109,856 |
| | |
| Total | 109,856 |

Fresenius Medical Care Holdings, Inc. (f/k/a
W.R. Grace & Co. Affiliated Group and after
that f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group)

Notice of Deficiency Statement
Exhibit E

1989

| | Per 3/95 RAR | As Corrected | Adjustment |
|---|---|---|---|
| Current Year R & E Expenses | 55,345,882 | 55,345,882 | 0 |
| Base Years R & E Expenses ⓐ | 51,684,401 | 52,346,187 | (661,786) |
| Increase | 3,661,481 | 2,999,695 | 661,786 |
| | | | |
| 20% of increase | 732,296 | 599,939 | 132,357 |
| Sec. 280 reduction, 17% of above C (c) | 124,490 | 101,990 | 22,501 |
| R & E Credit | 607,806 | 497,949 | 109,856 |
| | | | |
| Credit per return | 771,499 | | |
| Adjustment per 3/95 RAR | (163,693) | | |
| Credit per 3/95 RAR | 607,806 | | |

Adjustments to 1985 expenses:
New York House
Ierman Buskin
Retail Group
Cryovac
Polyfibron
Baker & Taylor
Research Div.

Total, 1985

| Adjustments to 1986 expenses: | | | |
|---|---|---|---|
| Polyfibron | (176,000) | 0 | (176,000) |
| Baker & Taylor | (1,809,357) | 0 | (1,809,357) |
| Research Div. | (127,965) | (127,965) | 0 |
| Total, 1986 | (2,113,322) | (127,965) | (1,985,357) |
| | | | |
| Total base year adjustments | (2,113,322) | (127,965) | (1,985,357) |
| | | | |
| Averaging effect, divide total by 3 years | (704,441) | (42,655) | (661,786) |
| Correction of Polyfibron amt. | 0 | 0 | 0 |
| Total 85/86 base year adjstants | (704,441) | (42,655) | (661,786) |
| Total 87/88 base year adjstants | (1,114,892) | (1,114,892) | 0 |
| Base year amount per return | 53,503,734 | 53,503,734 | 0 |
| Base year amounts, as corrected ⓐ | 51,684,401 | 52,346,187 | (661,786) |

Fresenius Medical Care Holdings, Inc (f/k/a
W. R. Grace & Co. Affiliated Group and after
that f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group )

Notice of Deficiency Statement

Exhibit F

AMT Main Worksheet - Input

|  | 12/1989 review |
|---|---|
| SMALL CORPORATION: | |
| Qualifies for AMT Repeal | No |
| ALT MIN TAXABLE INCOME: | |
| Prelim Taxable Income | 287,385,368 |
| Add: Reg NOL Deduction | 483,717 |
| | |
| TI Before Regular NOL | 287,869,085 |
| Add: Adjustments/Pref Items | 70,139,684 |
| Reg Passive Loss/Inc | 0 |
| AMT Passive Inc/Loss | 0 |
| Reg NOL - Short Yr | 0 |
| Less: AMT NOL - Short Yr | 0 |
| | |
| Preadjustment AMTI | 358,008,769 |
| Excess Book Inc Adjust | 0 |
| ACE Adjustment | n/a |
| | |
| AMTI Before Energy/NOL | 358,008,769 |
| Less: Energy Pref Deduct | n/a |
| AMT NOL Deduction | 483,717 |
| | |
| Preliminary AMTI | 357,525,052 |
| Other AMTI | 1,359,796 |
| | |
| Alt Min Taxable Income | 358,884,848 |
| | |
| ALTERNATIVE MINIMUM TAX: | |
| Tentative Minimum Tax | 52,285,301 |
| Regular Tax After FTC | 64,575,375 |
| | |
| AMT Before Adjustment | 0 |
| Adjustment to AMT | 0 |
| | |
| Alternative Minimum Tax | 0 |
| | |
| ENVIRONMENTAL TAX: | |
| | |
| Env Tax Before Adjustment | 429,343 |
| Adjustment to Env Tax | 0 |
| | |
| Environmental Tax | 429,343 |
| | |
| MTC TO NEXT YEAR: | |
| MTC to Next Year Bef Adj | 19,010,275 |
| Adjustment to MTC | 0 |
| | |
| MTC Carried to Next Year | 19,010,275 |
| | |
| NET MIN TAX ON EXCL ITEMS: | |
| Other AMTI on Excl Items | 0 |

Fresenius Medical Care Holdings, Inc. (f/k/a
W.R. Grace & Co. Affiliated Group and after
that f/k/a Fresenius National Medical Care Holdings, Inc.
Affiliated Group)

Notice of Deficiency Statement

Exhibit F1

---------------- AMT Adjustments and Preference Items - Input -------------------

|  | 12/1989 review |
|---|---|
| **AMT ADJUSTMENTS/PREFS:** | |
| Depr Post-1986 Property | 57,416,061 |
| Amort of Poll Ctrl Fac | 0 |
| Amort of Mining Costs | 7,113,453 |
| Adjusted Gain or Loss | 0 |
| Long-Term Contracts | 0 |
| Installment Sales | 0 |
| Loss Limitations | 0 |
| Depletion | 5,293,635 |
| Certain Tax-Exempt Int | 0 |
| Charitable Contributions | 0 |
| Intangible Drilling Costs | 0 |
| Bad Debt Reserves | 0 |
| Depr Pre-1987 Real Prop | 316,535 |
| Other Preference Items | 0 |
| Other Adjustments | 0 |
| Foreign Div Gross-up (S78) | 0 |
| | |
| Total Adjusts & Prefs | 70,139,684 |
| | |
| **AMT NOLs – SPECIAL RULES:** | |
| Adjustment to AMT NOL Gen | 0 |
| Section 382 COs | No |
| AMT NOL COs from SRLY | 483,717 |
| AMT NOL CBs to SRY | No |
| Special AMT NOL CBs: | |
| 10/5/3-Year AMT NOL CBs | 0 |
| **AMT FTC LIMIT:** | |
| Adjustment to Overall Limit | 0 |
| **ENVIRONMENTAL TAX:** | |
| Adjustment to AMTI for Envir Tax | 0 |

**Internal Revenue Service**

**Department of the Treasury**

Date:  **MAR 2 2 2007**

Elyse Filon, Esquire, Vice President-Finance
W.R. Grace & Co.
5400 Broken Sound Boulevard NW
Suite 300
Boca Raton, Florida 33487-3517

**Taxpayer Name:**
Fresenius Medical Care Holdings, Inc.
**Taxpayer Identification Number:**
13-3461988
**Form Number:**
1120
**Year(s):**
1989
**Person to Contact/ID Number:**
Susan S. Wells
ID Number 65-04445
**Contact Telephone Number:**
(954) 423-7510
**Contact Fax Number:**
(954) 423-7495

Dear Ms. Filon:

We are sending you the enclosed material under the provisions of your power of attorney or other authorization we have on file. For your convenience, we have listed the name of the taxpayer to whom this material relates in the heading above.

If you have any questions, please call the contact person at the telephone number shown in the heading of this letter.

Thank you for your cooperation.

Sincerely,

*Linda B. Vranas (mjm)*

Linda B. Vranas
Technical Services Territory Manager
South Atlantic Area

Enclosures:
☐ Letters(s)
☐ Reports(s)
☑ Other – Notice of Deficiency

Letter 937 (Rev. 11-2004)
Catalog Number 30760X

**EXHIBIT B**

## TAX SHARING AND INDEMNIFICATION AGREEMENT

This TAX SHARING AND INDEMNIFICATION AGREEMENT (this "Agreement"), dated September 27, 1996, by and among W.R. Grace & Co., a New York corporation ("Grace"), W.R. Grace & Co.-Conn., a Connecticut corporation and a wholly owned subsidiary of Grace ("Grace-Conn."), and Fresenius AG, an Aktiengesell-schaft organized under the laws of the Federal Republic of Germany ("Fresenius AG").

### RECITALS

WHEREAS, Grace, Fresenius USA and Fresenius AG have entered into an Agreement and Plan of Reorganization (the "Re-organization Agreement");

WHEREAS, Grace and Grace-Conn. have entered into the Distribution Agreement;

AND WHEREAS, Grace, on behalf of itself and the NMC Group and Grace-Conn., on behalf of itself and the Grace-Conn. Group, wish to provide for the allocation between the NMC Group and the Grace-Conn. Group of all responsibilities, liabilities and benefits relating to or affecting Taxes (as hereinafter defined) paid or payable by either of them for all taxable pe-riods, whether beginning before, on or after the Distribution Date (as hereinafter defined) and to provide for certain other matters.

NOW, THEREFORE, in consideration of the premises, and of the representations, warranties, covenants and agreements set forth herein, the parties hereto hereby agree as follows:

### ARTICLE I

### DEFINITIONS

Capitalized terms used but not defined herein shall have the respective meanings assigned to them in the Distribu-tion Agreement or the Reorganization Agreement. As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and the plural forms of the terms defined):

"Adjusted NMC Group" means NMC and the NMC Subsidiar-ies.

"Grace-Conn. Tax Item" shall mean a Tax Item solely attributable to the Grace-Conn. Group, but including, for this purpose, any Tax Item solely attributable to Grace and arising with respect to a Pre-Merger Taxable Period or that portion of a Straddle Period ending on the Distribution Date, any item of income or gain, including any deferred item restored to income, any of the forgoing of which is associated with Grace's indirect interest in Grace Cocoa Associates L.P., and any Tax Item attributable solely to NMC arising with respect to the recapitalization of Grace immediately prior to the Grace Merger.

"Code" means the Internal Revenue Code of 1986, as amended, and shall include corresponding provisions of any subsequently enacted federal tax laws.

"Distribution Date" means the date on which the Distribution occurs or is deemed to occur for federal income tax purposes. For purposes of this Agreement, the Distribution shall be deemed effective as of the close of business on the Distribution Date.

"Final Determination" shall mean the final resolution of liability for any Tax for a taxable period, (i) by IRS Form 870 or 870-AD (or any successor forms thereto), on the date of acceptance by or on behalf of the taxpayer, or by a comparable form under the laws of other jurisdictions; except that a Form 870 or 870-AD or comparable form that reserves (whether by its terms or by operation of law) the right of the taxpayer to file a claim for refund and/or the right of the taxing authority to assert a further deficiency shall not constitute a Final Determination; (ii) by a decision, judgment, decree, or other order by a court of competent jurisdiction, which has become final and unappealable; (iii) by a closing agreement or accepted offer in compromise under Section 7121 or 7122 of the Code, or comparable agreements under the laws of other jurisdictions; (iv) by any allowance of a refund or credit in respect of an overpayment of Tax, but only after the expiration of all periods during which such refund may be recovered (including by way of offset) by the Tax imposing jurisdiction; or (v) by any other final disposition, including by reason of the expiration of the applicable statute of limitations or by mutual agreement of the parties.

"IRS" means the Internal Revenue Service.

"Joint Tax Return" shall mean any Tax Return that includes a member of the NMC Group and a member of the Grace-Conn. Group.

"Grace Tax Item" shall mean a Tax Item solely attributable to the NMC Group and that is not a Grace-Conn. Tax Item.

"Short Period" means the period commencing on January 1, 1996 and ending on the Distribution Date.

"Straddle Period" means a taxable period that includes but does not end on the Distribution Date.

"Tax" means any of the Taxes.

"Tax Deficiency" shall mean an assessment of Taxes, as a result of a Final Determination.

"Tax Detriment" means any item of income, gain, recapture of credit or any other Tax Item which increases Taxes paid or payable.

"Tax Item" means any item of income, gain, loss, deduction, credit, provisions for reserves, recapture of credit or any other item which increases or decreases Taxes paid or payable, including an adjustment under Code Section 481 resulting from a change in accounting method.

"Tax Refund" shall mean a refund of Taxes as the result of a Final Determination.

"Tax Return" means any return, filing, questionnaire, information return or other document required to be filed, including requests for extensions of time, filings made with estimated tax payments, claims for refund and amended returns that may be filed, for any period with any taxing authority (whether domestic or foreign) in connection with any Tax or Taxes (whether or not a payment is required to be made with respect to such filing).

"Taxes" means all forms of taxation, whenever created or imposed, and whether of the United States or elsewhere, and whether imposed by a local, municipal, governmental, state, foreign, federation or other body, and without limiting the generality of the foregoing, shall include income, sales, use, ad valorem, gross receipts, license, value added, franchise, transfer, recording, withholding, payroll, employment, excise, occupation, unemployment insurance, social security, business license, business organization, stamp, environmental, premium and property taxes, together with any related interest, penalties and additions to any such tax, or additional amounts imposed by any taxing authority (domestic or foreign) upon the

-3-

NMC Group, the Grace-Conn. Group or any of their respective
members or divisions or branches.

ARTICLE II

FILING OF TAX RETURNS

Section 2.01  Manner of Filing.  All Tax Returns
filed after the Distribution Date shall be prepared on a basis
which is consistent with the consummation of the transactions
as set forth in the Distribution Agreement, the Grace Tax Mat-
ters Certificate, the Fresenius AG Tax Matters Certificate and
the Grace Tax Opinions (in the absence of a controlling change
in law or circumstances) and shall be filed on a timely basis
(including extensions) by the party responsible for such filing
under this Agreement.  In the absence of a controlling change
in law or circumstances, all Tax Returns filed after the date
of this Agreement shall be prepared on a basis consistent with
the elections, accounting methods, conventions, and principles
of taxation used for the most recent taxable periods for which
Tax Returns involving similar Tax Items have been filed, to the
extent that a failure to do so would result in a Tax Detriment
to the other party hereto or a member of its Group.  Subject to
the provisions of this Agreement, all decisions relating to the
preparation of Tax Returns shall be made in the sole discretion
of the party responsible under this Agreement for such prepara-
tion.  Grace-Conn. will provide Grace with copies of all Tax
Returns (or appropriate portions thereof) filed after the Dis-
tribution Date to the extent such returns relate to the NMC
Group.

Section 2.02  Pre-Merger Tax Returns.

(a)  Consolidated Returns.  The Grace consolidated
federal income Tax Returns required to be filed for all taxable
periods ending on or before the Distribution Date ("Pre-Merger
Taxable Periods"), and for all Straddle Periods" shall be pre-
pared and filed by Grace-Conn., and Grace hereby irrevocably
designates, Grace-Conn. as its agent to take any and all actions
necessary or incidental to the preparation and filing of such
Returns.  Grace-Conn. agrees to cooperate in good faith with
Grace to determine the appropriate amount of Tax Items at-
tributable to the NMC Group to be reflected on Grace's consoli-
dated federal income Tax Return for Pre-Merger Taxable Periods
and Straddle Periods.  Grace-Conn. further agrees to provide
Grace with a copy of each such Tax Return two weeks before it
is filed, and to consider in good faith any comments thereon
provided in writing by Grace.

-4-

(b)  <u>Combined, Consolidated and Unitary Returns</u>.  All
state and local combined, consolidated and unitary corporate
income Joint Tax Returns which are required to be filed for all
Pre-Merger Taxable Periods and Straddle Periods, which have not
been previously filed shall be prepared and filed by Grace-
Conn., and Grace hereby irrevocably designates, and agrees to
cause each of its subsidiaries to so designate, Grace-Conn. as
its agent to take any and all actions necessary or incidental
to the preparation and filing of such Joint Tax Returns.
Grace-Conn. agrees to cooperate in good faith with Grace to
determine the appropriate amount of Tax Items attributable to
the NMC Group to be reflected on combined, consolidated and
unitary corporate Joint Tax Returns for Pre-Merger Taxable Pe-
riods and Straddle Periods.

(c)  <u>Other Returns</u>.  All other Tax Returns not de-
scribed elsewhere in this Section 2.02 that are required to be
filed for all Pre-Merger Taxable Periods and Straddle Periods
shall be prepared and filed by the party which prepared and
filed such Return for the most recent period for which such
Return was filed or if no such Return was filed in such period,
the party responsible under the appropriate law of the taxing
jurisdiction, provided, however, that any other Tax Returns
which, but for this proviso, would be prepared and filed by
Grace shall be prepared and filed by Grace-Conn., and Grace
hereby irrevocably designates Grace-Conn. as its agent to take
any and all actions necessary or incidental to the preparation
and filing of such other Tax Returns.  Grace-Conn. agrees to
cooperate in good faith with Grace to determine the appropriate
amount of Tax Items attributable to the NMC Business to be re-
flected on such Returns for Pre-Merger Taxable Periods and
Straddle Periods.

Section 2.03  <u>Post-Merger Tax Returns</u>.  All Tax Re-
turns for periods beginning after the Distribution Date ("Post-
Merger Taxable Periods") shall be the responsibility of the
Grace-Conn. Group if such Tax Returns relate solely to a member
or members of the Grace-Conn. Group or their respective assets
or businesses, and shall be the responsibility of the NMC Group
if such Tax Returns relate solely to a member or members of the
NMC Group or their respective assets or businesses.

ARTICLE III

PAYMENT OF TAXES

Section 3.01  Allocation of Tax Liabilities With
Respect to Unfiled Returns.

(a)  Consolidated Federal Income Tax Liabilities.
Except as otherwise provided in this Agreement, Grace-Conn.
shall pay, on a timely basis, all Taxes due with respect to the
consolidated federal income tax liability for all Pre-Merger
Taxable Periods and Straddle Periods of the affiliated group of
which Grace is the common parent (the "Affiliated Group").
Grace and NMC on behalf of the NMC Group hereby assume and
agree to pay directly to Grace-Conn. (i) the Adjusted NMC
Group's allocable share of those Taxes for all Pre-Merger Tax-
able Periods and Straddle Periods and (ii) Grace's allocable
share of those Taxes for the portion of any Straddle Period
commencing on the day after the Distribution Date.

The NMC Group's allocable share of the Affiliated
Group's consolidated federal income tax liability for Pre-
Merger Taxable Periods and Straddle Periods and Grace's al-
locable share of such tax liability for the portion of any
Straddle Period beginning on the day after the Distribution
Date (calculated by treating the day after the Distribution
Date as the first date of a taxable period) shall be determined
in accordance with the Grace Financial Accounting Policy State-
ments on Income Taxes (Policy 409) a copy of which is attached
hereto as Exhibit I (in effect as of the date hereof, the
"Prior Arrangement").

After the Distribution Date, Grace and/or NMC shall
timely pay all amounts payable by Grace and the NMC Group in
respect of quarterly estimated federal income tax payments for
the year ended December 31, 1996 in accordance with past prac-
tice and the Prior Arrangement, such payments to be made di-
rectly to Grace-Conn. which will, to the extent Tax is owed by
the consolidated group, forward such payments to the IRS.

If the calculations made pursuant to this Section
3.01(a) as compared to the amount shown as due on the appropri-
ate Tax Return indicate that the NMC Group has either overpaid
or underpaid its share of the consolidated federal income tax
liability for the year ended December 31, 1995 and for the year
ended December 31, 1996, respectively, within 30 days of the
filing of Grace's consolidated federal income tax return for
the year ended December 31, 1995, and the year ending December
31, 1996, respectively, Grace-Conn. shall pay Grace and/or NMC

-6-

the amount of any such overpayment or Grace and/or NMC shall
pay Grace-Conn. the amount of any such underpayment.

All calculations and determinations required to be
made pursuant to this Section 3.01(a) shall be made by Grace-
Conn. on a basis reasonably consistent with prior years, whose
good faith determination shall be binding upon the parties
hereto in the absence of mathematical error.

(b)  <u>Combined, Consolidated and Unitary Corporate
Income Taxes</u>.  Except as otherwise provided in this Agreement,
Grace-Conn. or a member of the Grace-Conn. Group shall pay, on
a timely basis, all Taxes due with respect to any combined,
consolidated or unitary state, local and foreign corporate in-
come tax liability for all Pre-Merger Taxable Periods and
Straddle Periods with respect to Joint Tax Returns ("Combined
Taxes").  Grace and NMC on behalf of the NMC Group hereby as-
sume and agree to pay directly to Grace-Conn. (i) the Adjusted
NMC Group's allocable share of those Taxes for all Pre-Merger
Taxable Periods and Straddle Periods and (ii) Grace's allocable
share of those Taxes for the portion of any Straddle Period
commencing on the day after the Distribution Date.

The NMC Group's allocable share of the Affiliated
Group's combined, consolidated and unitary income tax liability
(other than federal income taxes) for Pre-Merger Taxable Peri-
ods and Straddle Periods and Grace's allocable share of such
tax liability for the portion of any Straddle Period beginning
on the day after the Distribution Date (calculated by treating
the day after the Distribution Date as the first date of a tax-
able period) shall be determined in accordance with the Prior
Arrangement.

After the Distribution Date, Grace and/or NMC shall
timely pay all amounts payable by Grace and the NMC Group in
respect of quarterly estimated income tax payments for the year
ended December 31, 1996 in accordance with past practice and
the Prior Arrangement, such payments to be made directly to
Grace-Conn. which will, to the extent Tax is owed by the com-
bined, unitary or consolidated group, forward such payments to
the appropriate Taxing authority.

If the calculations made pursuant to this Section
3.01(b) as compared to the amount shown as due on the appropri-
ate Tax Return indicate that Grace and/or NMC has either over-
paid or underpaid its share of its Combined Tax liability
within 30 days after the filing of the relevant return, Grace-
Conn. shall pay Grace the amount of any such overpayment or
Grace shall pay Grace-Conn. the amount of any such underpay-
ment.  All calculations and determinations required to be made

-7-

pursuant to this Section 3.01(b) shall be made by Grace-Conn. on a basis reasonably consistent with prior years, whose good faith determination shall be binding upon the parties hereto in the absence of mathematical error.

(c)    All other Taxes for periods beginning before the Distribution Date shall be paid by the party responsible under this Agreement for filing the Tax Return pursuant to which such Taxes are due, provided that, in the case of other Taxes due with respect to Tax Returns of Grace for Straddle Periods ("Grace Straddle Returns"), Grace shall reimburse Grace-Conn. as follows:

1.    The "Hypothetical Pre-Distribution Tax" shall mean the Tax that would have been due for the taxable period ending on the Distribution Date if the Distribution Date were the last day of the taxable period. Such Tax shall be computed by determining the items of income, expense, deduction, loss or credit on a "closing of the books" basis as of the Distribution Date.

2.    Thirty days prior to the relevant due date (including extensions) of any Grace Straddle Return, Grace-Conn. shall present Grace with a schedule detailing the computation of the Hypothetical Pre-Distribution Tax attributable to Grace for such Straddle Period and the total Tax due with respect to the relevant Tax Return (the "Return Amount").

3.    Ten days after Grace-Conn. presents Grace with the schedule described in clause 2 above, (x) Grace shall pay Grace-Conn. the amount by which the Return Amount exceeds the sum of (i) the Hypothetical Pre-Distribution Tax plus (ii) the sum of any estimated payments, deposits or credits made or applied after the Distribution Date with respect to such Tax for the Straddle Period (which shall be made in accordance with past practice and the Prior Arrangement, such payments to be made directly to Grace-Conn. which will forward such payments to the appropriate taxing authority), or (y) Grace-Conn. shall pay Grace the amount by which the sum of (i) the Hypothetical Pre-Distribution Tax plus (ii) the sum of any estimated payments, deposits or credits made or applied after the Distribution Date with respect to such Tax for the Straddle Period exceeds the Return Amount.

-8-

4.  In the event Grace disputes Grace-Conn.'s compu-
    tation of the Hypothetical Pre-Distribution Tax,
    the Return Amount or any of the payments, depos-
    its or credits described in clause 1 above,
    Grace, or Grace-Conn., as the case may be, shall
    nevertheless pay to the other party any amounts
    that would be due under clause 3 pending adjust-
    ment after the resolution of such dispute, which
    shall be resolved by a "big six" accounting firm
    that does not have an engagement relationship
    with Grace, NMC or Grace-Conn. and that is mutu-
    ally agreed upon by Grace and Grace-Conn..  The
    accounting firm shall resolve such dispute as
    expeditiously as possible and shall do so ap-
    plying the applicable law and the provisions of
    this Agreement, with due regard for the posi-
    tions of the parties.  The costs, expenses and
    fees of the accounting firm shall be borne
    equally by Grace and Grace-Conn..

5.  Where the Hypothetical Pre-Distribution Tax sys-
    tem is not feasible in calculating the portion
    of any Tax for a Straddle Period that Grace is
    responsible for under this Section 3.01(c), the
    amount of such Tax for which Grace is respon-
    sible shall be determined by prorating the ac-
    tual tax due for the Straddle Period on a daily
    proration basis.  The amount of such Tax borne
    by Grace-Conn. shall be the amount allocated to
    the portion of the Straddle Period through the
    Distribution Date.  The principles of clauses 1,
    2, 3 and 4 shall be used to provide for payment
    and reimbursement of such Tax between the par-
    ties.

6.  In implementing this Section 3.01(c), the par-
    ties shall make any adjustments that are neces-
    sary to insure that, with respect to all Taxes
    for Straddle Periods, payment and reimbursement
    between the parties reflects the principle that
    Grace is to bear responsibility for Taxes for
    Grace (and any Affiliates) that are attributable
    to the portion of Straddle Periods after the
    Distribution Date.

(d)  Notwithstanding anything to the contrary, in
determining the NMC Group's allocable share of any Tax li-
ability, any increase in the Tax liability resulting from any
act or omission not in the ordinary course of business (other

-9-

than transactions contemplated by this Agreement, the Distribu-
tion Agreement, the Reorganization Agreement or the Employee
Benefits Agreement) on the part of any member of the NMC Group
occurring on the Distribution Date after the Effective Time
shall be deemed to arise in a taxable period which begins after
the Distribution Date.

(e)   Anything in Section 3.01(a) or (b) to the con-
trary notwithstanding, whenever Grace-Conn. is required to make
any of the calculations or determinations referred to therein,
Grace-Conn. shall provide Grace with (i) copies of any material
calculations or determinations as soon as is practicable after
such calculations or determinations have been made, and prior
to the applicable Tax Returns' being filed, sufficient to en-
able Grace to verify mathematical accuracy and (ii) if re-
quested by Grace, access during reasonable business hours to
copies of any Returns, reports or other statements sufficient
to enable Grace to verify reasonably consistent treatment with
prior years.

Section 3.02   Redetermined Tax Liabilities.

(a)   Joint Tax Returns.  In the case of any Final
Determination regarding a Joint Tax Return, any Tax Deficiency
shall be paid to the appropriate taxing authority by, and any
Tax Refund received from the appropriate taxing authority shall
be paid to, Grace-Conn., and Grace shall forward any such Tax
Refund to Grace-Conn. within ten days after receipt thereof;
provided, however, that whether or not there is a Tax Defi-
ciency or Tax Refund or whether or not a payment is required to
or from the appropriate taxing authority, Grace shall make pay-
ments to Grace-Conn. or receive payments from Grace-Conn. based
upon the following principles:

-   (i)   Grace shall make a payment to Grace-Conn.
in an amount equal to any increase in the NMC Group's allocable
share of Tax (including any applicable interest or penalties,
which is or has been imposed by any taxing authority with re-
spect to any additional Taxes resulting from such adjustments,
or any such interest that would have been imposed but for any
offsetting Grace-Conn. Tax Items) with respect to such Return
resulting from any adjustments to Grace Tax Items, less any
payments previously made by Grace to Grace-Conn. (or directly
to the appropriate taxing authority).  For this purpose, the
NMC Group's allocable share of Tax shall be determined in ac-
cordance with the Prior Arrangement.

(ii)   Grace-Conn. shall pay to Grace, to the ex-
tent not previously paid to Grace by the appropriate taxing
authority or by Grace-Conn., the amount of any decrease in the

-10-

NMC Group's allocable share of Tax with respect to such Tax Return resulting from adjustments to Grace Tax Items, as determined in accordance with the Prior Arrangement and, in addition, Grace-Conn. shall pay to Grace, to the extent not previously paid to Grace by the applicable taxing authority or by Grace-Conn., any applicable interest that is or has been paid by the taxing authority with respect to the reduction in Taxes resulting from such adjustments or such interest that would have been payable but for any offsetting Grace-Conn. Tax Items. For this purpose, the NMC Group's allocable share of Taxes shall be determined in accordance with the Prior Arrangement.

(iii)  Payments made pursuant to subsections (i) and (ii) above, shall be adjusted to take into account the amounts of any offsetting adjustments that would result in an increase or decrease in the NMC Group's allocable share of Taxes with respect to any Joint Tax Return for another period (as determined under the above principles), resulting from adjustments to Grace Tax Items in such Final Determination whether or not the offsetting adjustments are contained in a Final Determination with respect to such other Joint Tax Return.   In the event such other Joint Tax Return has been or subsequently becomes, the subject of a Final Determination, this Section 3.02 shall be applied in a manner that avoids any duplications of payments.

(b)  Separate Returns.  Grace-Conn. shall be liable for and shall indemnify, defend and hold harmless the Grace Indemnitees from and against all Taxes for Pre-Merger Taxable Periods and Straddle Periods with respect to Tax Returns that include only members of the Grace-Conn. Group and Grace and for Post-Merger Taxable Periods that include only members of the Grace-Conn. Group, and Grace shall be liable for and shall indemnify, defend and hold harmless the Grace-Conn. Indemnitees from and against all Taxes for Pre-Merger Taxable Periods and Straddle Periods that include only NMC and the NMC Subsidiaries and for Post-Merger Taxable Periods that include only members of the NMC Group.  Grace-Conn. shall be entitled to receive and retain all refunds of Taxes for Pre-Merger Taxable Periods and Straddle Periods with respect to Tax Returns that include only members of the Grace-Conn. Group or Grace and for Post-Merger Taxable Periods with respect to Tax Returns that include only members of the Grace-Conn. Group.  Grace shall be entitled to receive and retain all refunds of Taxes for Pre-Merger Taxable Periods and Straddle Periods with respect to Tax Returns that include only NMC and the NMC Subsidiaries and for Post-Merger Taxable Periods with respect to Tax Returns that include only members of the NMC Group.

(c)  <u>Calculation and Payment of Amounts</u>.  Except in
the case of Tax Returns that include only NMC and the NMC Sub-
sidiaries, all calculations and determinations required to be
made pursuant to this Section 3.02 shall be made by Grace-Conn.
in good faith and on a basis reasonably consistent with prior
years.  Any payments made by the parties hereunder to each
other shall be treated by each of the parties as satisfaction
of liabilities of such paying party and shall not be subject to
any gross-up or additional payment.

(d)  <u>Other Tax Liabilities and Refunds</u>.  Any Tax Li-
ability or Refund with respect to a Joint Tax Return not aris-
ing from an adjustment to, or change in, a Tax Item (e.g.,
change in applicable law) shall be allocated by Grace-Conn.
between Grace-Conn. and Grace in a manner consistent with the
Prior Arrangement.

(e)  The provisions of Section 3.01(e) shall apply
with respect to the calculations and allocations to be made by
Grace-Conn. pursuant to Sections 3.02(c) and (d) hereof.

Section 3.03  <u>Liability for Taxes with Respect to
Post-Distribution Periods</u>.  Unless otherwise provided in this
Agreement, the Grace-Conn. Group shall pay all Taxes and shall
be entitled to receive and retain all refunds of Taxes with re-
spect to periods beginning after the Distribution Date which
are attributable to the Grace-Conn. Business.  Unless otherwise
provided in this Agreement, the NMC Group shall pay all Taxes
and shall be entitled to receive and retain all refunds of
Taxes with respect to periods beginning after the Distribution
Date which are attributable to the NMC Business.

Section 3.04  <u>Carrybacks</u>.  Any Tax Refund resulting
from the carryback by Grace-Conn. of any Tax Item arising after
the Distribution Date to a Pre-Merger Taxable Period or a
Straddle Period shall be for the account of Grace-Conn., and
Grace shall promptly pay over to Grace-Conn. any such Tax Re-
fund that it receives.  To the extent that the carryback by
Grace-Conn. of any Tax Item does not result in a Tax Refund (or
would not result in a refund if a claim were filed) solely as
the result of an offsetting Grace Tax Item, Grace shall remit
to Grace-Conn. the amount of any decrease in the Grace-Conn.
Group's allocable share of Tax that would otherwise have re-
sulted from such carryback as determined under the principles
contained in Section 3.02(a).

Grace-Conn. shall be permitted to file, and Grace
shall fully cooperate with Grace-Conn. in connection with, any
refund claim.  To the extent that such refund claims do not re-
sult in a Tax Refund (or would not result in a refund if a

-12-

claim were filed) solely as the result of an offsetting Grace
Tax Item, Grace shall remit to Grace-Conn. an amount equal to
the decrease in the Grace-Conn. Group's allocable share of Tax
that would otherwise have resulted from such refund claim as
determined under the principles contained in Section 3.02(a).

ARTICLE IV

INDEMNITY:   COOPERATION AND EXCHANGE OF INFORMATION

Section 4.01  <u>Breach</u>.  Grace-Conn. shall be liable
for and shall indemnify, defend and hold harmless the Grace In-
demnitees from and against, and Grace shall be liable for and
shall indemnify, defend and hold harmless the Grace-Conn. In-
demnitees from and against any payment required to be made as a
result of the breach by a member of the Grace-Conn. Group or
the NMC Group, as the case may be, of any obligation under this
Agreement.  If Grace or any member of the NMC Group fails to
comply in any respect whatsoever with any of its responsibili-
ties under the Agreement relating to promptly forwarding to
Grace-Conn. any communications with and refunds received from
any taxing authority ("Forwarding Responsibilities"), then:

(a)  If such failure relates to a communication
other than a refund, Grace and NMC shall be liable for and
shall indemnify and hold Grace-Conn. and the Grace-Conn. Group
harmless from and against any costs or expenses (including,
without limitation, Taxes and lawyers' and accountants' fees)
("Indemnified Amount") incurred by or imposed upon Grace-Conn.
or any member of the Grace-Conn. or any obligation arising out of, in con-
nection with or relating to such communication, regardless of
whether Grace-Conn. or any member of the Grace-Conn. Group is
harmed as a result of such failure, provided, that the li-
ability of Grace and NMC under this paragraph (a) with respect
to any one such failure shall be equal to the greater of X or
Y; where "X" equals the lesser of (A) $10 million or (B) the
Indemnified Amount; and "Y" equals that portion of the Indemni-
fied Amount that Grace-Conn. demonstrates is caused (directly
or indirectly) by such failure; and

(b)  If such failure relates to a refund, then
Grace and NMC shall be liable to Grace-Conn. and the Grace-
Conn. Group for the full amount of such refund, plus interest
accruing as of the date such communication is received by Grace
or any member of the NMC Group at a rate of 5% above the prime
rate as published in the Wall Street Journal, plus any costs or
expenses (including, without limitation, lawyers' and ac-
countants' fees) incurred by or imposed upon Grace-Conn. or any

-13-

member of the Grace-Conn. Group in connection with obtaining such refund:

    Section 4.02  Notice of Indemnity.  Whenever a party hereto (hereinafter an "Indemnitee") becomes aware of the existence of an issue which could increase the liability for any Tax of the other party hereto or any member of its Group or require a payment hereunder (hereinafter an "Indemnity Issue"), the Indemnitee shall in good faith promptly give notice to such other party (hereinafter the "Indemnitor") of such Indemnity Issue.  The failure of any Indemnitee to give such notice shall not relieve any Indemnitor of its obligations under this Agreement except to the extent such Indemnitor or its affiliate is actually materially prejudiced by such failure to give notice. The Indemnitor and its representatives, at the Indemnitor's expense, shall be entitled to participate (i) in all conferences, meetings or proceedings with any taxing authority, the subject matter of which is or includes an Indemnity Issue and (ii) in all appearances before any court, the subject matter of which is or includes an Indemnity Issue.  The party who has responsibility for filing the Tax Return under this Agreement (the "Responsible Party") with respect to which there is an increase in liability for any Tax or with respect to which a payment is required hereunder shall have the right to decide as between the parties hereto how such matter is to be dealt with and finally resolved with the appropriate taxing authority and shall control all audits and similar proceedings.  The Responsible Party agrees to cooperate in the settlement of any Indemnity issue with the other party and to take such other party's interests into account.  If the Indemnitor is not the Responsible Party, such cooperation may include permitting the Indemnitor, at the Indemnitor's sole expense, to litigate or otherwise resolve any Indemnity Issue.

    Section 4.03  Cooperation and Exchange of Information.  (a)  Grace shall, and shall cause each appropriate member of the NMC Group to, prepare and submit to Grace-Conn., at Grace's expense, no later than July 1, 1996, all information as Grace-Conn. shall reasonably request to enable Grace-Conn. to file the Grace consolidated federal income tax return for the taxable year ending December 31, 1995, no later than July 1, 1997 for all information as Grace-Conn. shall reasonably request to enable Grace-Conn. to file the Grace consolidated federal income tax return for the taxable year ending December 31, 1996, no later than August 1, 1996 for all information that Grace-Conn. shall reasonably request to enable Grace-Conn. to file any state and local combined or unitary corporate income tax returns for the taxable year ending December 31, 1995, and no later than August 1, 1997 for all information that Grace-Conn. shall reasonably request to enable Grace-Conn. to file

-14-

any state and local combined or unitary corporate income tax returns for the taxable year ending December 31, 1996. Grace-Conn. shall be entitled to require Grace to engage a "Big Six" public accounting firm reasonably acceptable to Grace-Conn. to review the information which Grace is required to provide under this Section 4.03(a). The expenses of such "Big Six" public accounting firm shall be borne by Grace. Grace shall furnish to Grace-Conn. by January 31, 1997, an estimate of the Affiliated Group Taxable income or loss for the taxable year ending December 31, 1996, for use in determining the payment due with respect to the Affiliated Group on March 15, 1997, together with IRS Form 7004, "Application for Automatic Extension of Time to File Corporation Income Tax Return."

(b)   Grace, on behalf of itself and each member of the NMC Group, agrees to provide the Grace-Conn. Group, with such cooperation and information as Grace-Conn. shall reasonably request in connection with the preparation or filing of any Tax Return or claim for refund not inconsistent with this Agreement or in conducting any audit or other proceeding in respect to Taxes. Such cooperation and information shall include without limitation designation of an officer of Grace-Conn. as an officer of Grace and NMC for the purpose of signing Tax Returns, cashing refund checks and defending audits as well as promptly forwarding copies of appropriate notices and forms or other communications received from or sent to any taxing authority which relate to the Affiliated Group or the NMC Businesses and providing copies of all relevant Tax Returns, together with accompanying schedules and related workpapers, documents relating to rulings or other determinations by taxing authorities, including without limitation, foreign taxing authorities, and records concerning the ownership and Tax basis of property, which either party may possess. It is expressly the intention of the parties to this Agreement to take all actions necessary to establish Grace-Conn. as the sole agent for tax purposes of each member of the Affiliated Group with respect to all combined, consolidated and unitary Tax Returns of the Affiliated Group for Pre-Merger Taxable Periods and Straddle Periods as if Grace-Conn. were the common parent of the Affiliated Group, and as the sole agent for tax purposes of Grace for all Tax Returns of Grace for Pre-Merger Taxable Periods and Straddle Periods. Grace and NMC shall make, or shall cause the members of the NMC Group to make, their employees and facilities available on a mutually convenient basis to provide explanation of any documents or information provided hereunder.

(c)   Grace and Grace-Conn. agree to retain all Tax Returns, related schedules and workpapers, and all material records and other documents as required under Section 6001 of the Code and the regulations promulgated thereunder relating

-15-

thereto existing on the date hereof or created through the Dis-
tribution Date, until the expiration of the statute of limita-
tions (including extensions) of the taxable years to which such
Tax Returns and other documents relate and until the Final De-
termination of any payments which may be required in respect of
such years under this Agreement.  Grace-Conn. and Grace agree
to advise each other promptly of any such Final Determination.
Any information obtained under this Section shall be kept con-
fidential, except as may be otherwise necessary in connection
with the filing of Tax Returns or claims for refund or in con-
ducting any audit or other proceeding.

(d)   If any member of the Grace-Conn. Group or the
NMC Group, as the case may be, fails to provide any information
requested pursuant to this Section 4.03 by (i) the dates,
specified in subsection (a) hereof or, (ii) with respect to
information not requested pursuant to subsection (a) hereof,
within a reasonable period, as determined in good faith by the
party requesting information, then the requesting party shall
have the right to engage a "Big Six" public accounting firm of
its choice to gather such information.  Grace and Grace-Conn.,
as the case may be, agree. upon 24 hours' notice, in the case of
a failure. to provide information pursuant to subsection (a)
hereof, and otherwise upon 30 days' notice after the expiration
of such reasonable period, to permit any such "Big Six" public
accounting firm full access to all appropriate records or other
information in the possession of any member of the Grace-Conn.
Group or the NMC Group, as the case may be, during reasonable
business hours, and promptly to reimburse or pay directly all
costs and expenses in connection with the engagement of such
public accountants.

(e)   If any member of the Grace-Conn. Group or the
NMC Group, as the case may be, supplies information to a member
of the other Group pursuant to this Section 4.03 and an officer
of the requesting party signs a statement or other document
under penalties of perjury in reliance upon the accuracy of
such information, then a duly authorized officer of the party
supplying such information shall certify, under penalties of
perjury, the accuracy and completeness of the information so
supplied.  Grace-Conn. agrees to indemnify and hold harmless
each member of the NMC Group and its directors, officers and
employees, and Grace agrees to indemnify and hold harmless each
member of the Grace-Conn. Group and its directors, officers and
employees from and against any cost, fine, penalty or other
expense of any kind attributable to the negligence or willful
misconduct of a member of the Grace-Conn. Group or the NMC
Group, as the case may be, in supplying a member of the other
Group with inaccurate or incomplete information.

-16-

Section 4.04 <u>Certain Post-Distribution Transactions</u>.
Grace-Conn. shall, and shall cause each Grace-Conn. Group member to, comply with and take no action inconsistent with the
Grace Representation Letter.  Fresenius AG and Grace shall, and
shall cause each NMC Group member to, comply with and take no
action inconsistent with the Grace Representation Letter. Grace
further agrees that except as specifically set forth in the
Opinions or in the Grace Representation Letter, during the two-
year period following the Distribution Date, neither it nor NMC
shall cease to engage in the active trade or business described
in the Grace Representation Letter unless pursuant to a favor-
able ruling letter obtained from the IRS and satisfactory to
Grace-Conn. or in the opinion of Wachtell, Lipton, Rosen & Katz
or other nationally recognized counsel to Grace, which opinion
and which counsel shall be satisfactory to Grace-Conn., such
act or omission would not adversely affect the federal income
tax consequences of the Distribution to any of Grace, Grace-
Conn. or the stockholders of Grace-Conn., as set forth in the
Opinions.  In addition, Fresenius AG, Grace and NMC agree to
indemnify and hold the Grace-Conn. Indemnitees harmless from
and against the results of any Action which causes the Distri-
bution to fail to qualify under Section 355 of the Code or the
Grace Merger to fail to qualify as a reorganization under Sec-
tions 367 and 368 of the Code.  An "Action" shall mean (x) any
transaction in the stock or assets, or any combination thereof,
of Grace, its subsidiaries, NMC or a NMC Affiliate occurring
after the Distribution Date which is inconsistent with the
Grace Representation Letter or (y) any transaction or action on
the part of any of Fresenius AG, Fresenius Medical Care AG, an
Aktiengesellschaft organized under the laws of the Federal
Republic of Germany, or any of their respective subsidiaries or
affiliates, whether occurring before or after the Distribution
Date (but excluding any transaction or action on the part of
any member of the NMC Group), which is inconsistent with the
Fresenius AG Representation Letter.  Notwithstanding the
foregoing, an Action shall not include any transaction or ac-
tion specifically disclosed or specifically described in the
Representation Letters, the Distribution Agreement or the
Reorganization Agreement (or any agreement or document included
as an exhibit thereto) or of which Grace or Grace-Conn. has
actual knowledge as of the date of this Agreement.  An Action
shall not include any action on the part of Grace-Conn. or a
Grace-Conn. Affiliate.  Grace-Conn. agrees to indemnify and
hold the Grace Indemnitees harmless from and against any Tax
liability and Indemnifiable Losses resulting from the failure
of the Distribution to qualify under Section 355 of the Code or
the Grace Merger to fail to qualify as a reorganization under
Sections 367 and 368 of the Code, except where such failure is
attributable to an Action.

-17-

Section 4.05  <u>Injunction</u>.  The parties hereto agree that the payment of monetary compensation would not be an adequate remedy to a breach of the obligations contained in Section 4.04 hereof, and each party consents to the issuance and entry of an injunction against the taking of any action by it or a member of its Group described in the preceding section; <u>provided, however</u>, that the foregoing shall be without prejudice to and shall not constitute a waiver of any other remedy either party may be entitled to at law or at equity hereunder.

ARTICLE V

MISCELLANEOUS

Section 5.01  <u>Expenses</u>.  Unless otherwise expressly provided in this Agreement or in the Distribution Agreement, each party shall bear any and all expenses that arise from their respective obligations under this Agreement.

Section 5.02  <u>Amendment</u>.  This Agreement may not be amended except by an agreement in writing, signed by the parties hereto.  Anything in this Agreement or the Distribution Agreement to the contrary notwithstanding, in the event and to the extent that there shall be a conflict between the provisions of this Agreement and the Distribution Agreement, the provisions of this Agreement shall control.

Section 5.03  <u>Notices</u>.  All notices and other communications hereunder shall be in writing and shall be delivered by hand including overnight business courier or mailed by registered or certified mail (return receipt requested) to the parties at the following addresses (or at such other addresses for a party as shall be specified by like notice) and shall be deemed given on the date on which such notice is received:

Group:        To Grace-Conn. or any member of the Grace-Conn.

W.R. Grace & Co.-Conn.
One Town Center Road
Boca Raton, Florida  33486-1010
Attention:  Secretary
Fax:  (407) 362-1635

-18-

With a copy to:

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York  10019
Attention:  Andrew R. Brownstein, Esq.
Fax:  (212) 403-2000

To Grace or any member of the NMC Group:

NMC
1601 Trapelo Road
Reservoir Place
Waltham, Massachusetts  02154
Attention:  General Counsel

Section 5.04  <u>Resolution of Disputes</u>.  Any disputes
between the parties with respect to this Agreement shall be
resolved by a "Big Six" public accounting firm or a law firm
satisfactory to Grace-Conn. and Grace, whose fees and expenses
shall be shared equally by Grace-Conn. and Grace.

Section 5.05  <u>Application to Present and Future Sub-
sidiaries</u>.  This Agreement is being entered into by Grace-Conn.
and Grace on behalf of themselves and each member of the Grace-
Conn. Group and NMC Group, respectively.  This Agreement shall
constitute a direct obligation of each such member and shall be
deemed to have been readopted and affirmed on behalf of any
corporation which becomes a member of the Grace-Conn. Group or
NMC Group in the future.  Grace-Conn. and Grace hereby guaran-
tee the performance of all actions, agreements and obligations
provided for under this Agreement of each member of the Grace-
Conn. Group and the NMC Group, respectively.  Grace-Conn. and
Grace shall, upon the written request of the other, cause any
of their respective group members formally to execute this Agr-
eement.  This Agreement shall be binding upon, and shall inure
to the benefit of, the successors, assigns and persons control-
ling any of the corporations bound hereby for so long as such
successors, assigns or controlling persons are members of the
Grace-Conn. Group or the NMC Group or their successors and as-
signs.

Section 5.06  <u>Term</u>.  This Agreement shall commence on
the date of execution indicated below and shall continue in
effect until otherwise agreed to in writing by Grace-Conn. and
Grace, or their successors.

Section 5.07  <u>Titles and Headings</u>.  Titles and head-
ings to sections herein are inserted for the convenience of

-19-

reference only and are not intended to be a part or to affect the meaning or interpretation of this Agreement.

Section 5.08  <u>Legal Enforceability</u>.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.  Any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.  Without prejudice to any rights or remedies otherwise available to any party hereto, each party hereto acknowledges that damages would be an inadequate remedy for any breach of the provisions of this Agreement and agrees that the obligations of the parties hereunder shall be specifically enforceable.

Section 5.09  <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of New York.

-20-

Case 01-01139-AMC    Doc 21433-3    Filed 04/27/09    Page 61 of 62

        IN WITNESS WHEREOF, the parties have executed this
Agreement as of the 27 day of September, 1996.

                    W.R. GRACE & CO.-CONN.


                    By: _____
                        Name: Robert B. Lamm
                        Title: Vice President and Secretary

                    W.R. GRACE & CO.


                    By: _____
                        Name: Robert B. Lamm
                        Title: Vice President and Secretary

                    FRESENIUS AG

                    By: _____
                        Name: Heulred Heull
                        Title: Attorney in Fact


                            -21-

**EXHIBIT C**