# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              Chapter 11

W.R. GRACE & CO., et al.,           Case No. 01-01139(JKF)
                                    Jointly Administered
        Debtors.
                                    Aug. 23,  2004 (12:04 p.m.)
                                    Wilmington

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

T043

1    THE COURT: All right.

2    MR. COHN: Mr. Bernick, can you hear me?

3    THE COURT: Mr. Bernick, can you hear Mr. Cohn now?

4    MR. BERNICK: Yeah, a little bit better, that's

5    fine, thanks.

6    MR. COHN: All right, I'll do my best. So Mr.

7    Erickson was described as making headway despite obviously

8    being terribly severely ill, but the directions seemed

9    perhaps even to be getting better at least over the near

10   term, and yet he was the one who passed away first even

11   though what I had the impression from other people out in

12   Montana that maybe Ms. Regjovich-Taylor was more likely to be

13   the person who would pass away first as these proceedings

14   dragged on. I think what this should teach all of us is just

15   a little bit of humility about these matters. We can't tell.

16   The doctors can't tell. We shouldn't blame ourselves as

17   lawyers. The doctors themselves when a patient enters the

18   terminal stage of a long-term illness, the doctors themselves

19   can't tell us how long the person has to live.

20   THE COURT: I think that's the problem though. At

21   least with respect to one of them, it doesn't indicate that

22   the deponent really is in a terminal stage. It says that the

23   deponent's likely to die within a year or two. Well -- And I

24   don't mean to be facetious. I'm not taking the illnesses

25   lightly in this case, but we all may die within a year or

1  two.   That really doesn't give me much of a reason to

2  authorize a deposition of somebody who is in extremis when he

3  may live for two years.

4     MR. COHN:  Well, that's -- I'm not that there's

5  anybody here who would predict that this case will be over,

6  done with and raise in any better position to be doing these

7  depositions with a two-year period at the rate we've been

8  going.  But --

9     THE COURT:  Well, the plan and disclosure statement

10  are due in October, and given the fact that at this point

11  the case is getting pretty old, I don't expect it's going to

12  drag around too long getting through at least the disclosure

13  statement hearing, and if it's not a consensual plan, it's

14  going to go to an evidentiary hearing shortly after that.

15  So, I for one can predict that between now and two years from

16  now at least Grace is going to be not on my docket any longer

17  in terms of plan confirmation.

18     MR. COHN:  Well, Your Honor, that --

19     THE COURT:  Is that a telegraph?  Pardon me.

20  Somebody has a cell phone that's too close to the receiver

21  and we're getting noises that sound like a telegraph.  Please

22  -- Please turn your cell-phones off and put your mute buttons

23  on, please.  I'm sorry, Mr. Cohn, go ahead.

24     MR. COHN:  Right.  That's very encouraging to hear

25  for all sorts of reasons.  Obviously it's only partly within

42

1   this Court's control.

2          THE COURT:  Yes.

3          MR. COHN:  But what also, Your Honor, when the

4   doctors talk about a person, about their best guess being

5   that a person will expire within the next two years, that's

6   not a prediction that the person will live twenty-four months

7   in deposable health.

8          THE COURT:  That's true.

9          MR. COHN:  And then die obligingly on the second

10  anniversary of the medical prediction.  I mean, you know, we

11  can laugh about it, but it's very serious business.  These

12  people -- you can't -- you know we can't predict when they're

13  going to die.  You also can't predict when you're going to

14  take your turn for the worst and as a practical matter makes

15  them incapable of being deposed.  Now what's happened here,

16  Your Honor, is that because of the procedures that this Court

17  has put in place at Grace's request for these depositions to

18  be taken, it has as a practical matter become so difficult

19  for us to assemble the necessary information to meet the

20  criteria that have been established that in the real world

21  this is going to be one or two depositions a month, and there

22  couldn't be any more than that because --

23         THE COURT:  If there's some evidence that the

24  plaintiffs -- I don't know this, and I am asking a serious

25  question.  Is there some evidence that the plaintiffs are

1  dying at the rate of one or two per month?  I mean because it
2  seems --

3          MR. COHN:  No.  There is -- What there is, Your
4  Honor is -- I mean, first of all, by the way if there had
5  been -- Mr. Erickson is not the first Libby claimant to have
6  died.

7          THE COURT:  Yes.

8          MR. COHN:  There have been a number of them who
9  have died.  Whether that average is one or two per month, I'm
10  not sure.  The point that I'm making is that at most we're
11  incapable of providing the information and the motions and
12  satisfying the procedural criteria that you've put in place
13  at any greater rate.  For example, Your Honor, this matter
14  has been kicking around now for four months, and you have
15  four motions in front of you.  We have not been able to get
16  sufficient medical information to have any more depositions
17  to be the subject of motions, and therefore, we've missed
18  September, the September omnibus hearing.  At the earliest we
19  could have perhaps another motion or two pending for October,
20  but that assumes that we've been able to get medical
21  information.

22          THE COURT:  But Grace has asbestos personal injury
23  plaintiffs from all over the country.  Why is it that it's
24  only in the Libby context that these motions are coming up?
25  Surely, there must be similar circumstances elsewhere which

44

1 tends to make me question why only Libby plaintiffs are in

2 this type of extremis? It's not -- That's why I wanted some

3 independent medical verification because I'm not seeing it

4 from anybody else other than this one doctor from Libby.

5 MR. COHN: Well now just a second. That -- And

6 Grace can say these things, Your Honor. That doesn't make

7 them true.

8 THE COURT: That Grace has personal injury

9 plaintiffs?

10 MR. COHN: No, no.

11 THE COURT: Grace didn't say that, I'm looking at

12 this issue.

13 MR. COHN: No, you know, Your Honor, that Dr.

14 Whitehouse is the only doctor in here. You see three

15 different medical doctors in the evidence that has been

16 supplied. You have not just Dr. Whitehouse. You have Dr.

17 Black from the clinic. You have -- There's earlier there's a

18 Dr. Gunther and I believe there's one other person whose name

19 I don't recall. It was not just Dr. Whitehouse.

20 THE COURT: Well, I have that for one of the

21 deponents. I'm not sure that I have for the others. I did

22 not have anybody but Dr. Whitehouse for one, and I haven't

23 had a chance to look at the other two.

24 MR. COHN: It is also the case, Your Honor, that

25 this -- It's a real slander of Dr. Whitehouse. It is just