IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>Jointly Administered<br>Related Docket Nos. 19581, 19620 |

## ARROWOOD'S JOINDER TO DEBTORS' MOTION FOR PROTECTIVE ORDER AND OBJECTION TO LIBBY CLAIMANTS' DEPOSITION NOTICES

Arrowood Indemnity Company f/k/a Royal Indemnity Company ("Arrowood") hereby joins the Debtors' Motion For Protective Order And Objection To Libby Claimants' Deposition Notices, April 30, 2009 at Dkt. No. 21495 ("Debtors' Motion to Quash").[1] Grace convincingly argues that the notices for perpetuation depositions served by the Libby Plaintiff Lawyers fly directly in the face of the prior instruction by this Court.[2] When the Court previously heard a motion regarding perpetuation depositions in August 2004, the Court instructed the Libby Claimants that they first need to provide evidence demonstrating an exigent circumstance and admonished them that such evidence should come from an independent physician and not Dr. Whitehouse.[3] The Libby Plaintiff Lawyers completely ignored the Court's prior instruction and have not complied with the Court's directive in noticing any of the seventeen depositions

---

[1] Arrowood attaches the Declaration of Allen Schwartz (hereinafter "Schwartz Decl"), dated May 4, 2009, in support of this motion
[2] *See* Debtors' Motion to Quash at 4-5.
[3] *See* Order Denying Libby Claimants' Motion for Relief from the Automatic Stay and Preliminary Injunction to Take Perpetuation Deposition, August 23, 2004 at Dkt No 268; *see also* Ex D of Debtors' Motion (8/23/04 Tr at 43-65). At the hearing, the court noted that there was no "independent medical verification because [the court] is not seeing it from anybody else other than this one doctor [Whitehouse] from Libby" and that, "Grace has asbestos personal injury plaintiffs from all over the country". Why is it that it's only in the Libby context that these motions are coming up? Surely, there must be similar circumstances elsewhere which tend to make me question why only Libby plaintiffs are in this type of extremis " *See* Ex D of Debtors' Motion (8/23/04 Tr at 43-44)

that they seek.[4] Arrowood incorporates by reference Grace's argument in this respect.

In addition, Arrowood respectfully offers the following additional grounds for quashing the seventeen deposition notices served by the Libby Plaintiff Lawyers.

## POINT I.

### THE PURPOSE FOR WHICH THE LIBBY PLAINTIFF LAWYERS SEEK THE TESTIMONY OF SEVENTEEN DEPONENTS IS IMPROPER, AS A MATTER OF LAW, AND NOT ADMISSIBLE

The only reason the Libby Plaintiff Lawyers offered during the meet and confer process for their issuing seventeen perpetuation notices was their stated intent to use the bankruptcy confirmation discovery process to prove that individual personal injury claims exist under Montana law.[5]

In the Third Circuit, in situations where a claimant seeks to establish medical injuries that do not clearly manifest themselves in ways that are obvious and ascertainable to a lay person, expert testimony is required to prove the medical claim. *See Montgomery v. Pinchak*, 294 F.3d 492, 503 (3d Cir. 2002) (stating "this Court has recognized the need for expert testimony in proving a claim based on medical injury" and that "It is clear that [claimant] himself cannot explain the medical consequences of neglecting to conduct a scheduled cardiac catheterization for a patient with heart disease. Nor can [claimant] describe the effects upon the body of being denied, for prolonged periods, prescribed heart and HIV medication. Heart disease and HIV, unlike, for example, broken legs or bullet wounds, do not clearly manifest themselves in ways that are obvious and ascertainable to a lay person. Therefore, we find that to prove any serious deterioration in his heart's condition or in his immune system, [claimant] would need the

---

[4] The Libby Claimants initially filed 18 deposition notices, but on April 29, 2009 they canceled the deposition of Libby Claimant Patricia Hill *See* Amended Notice—Cancellation of Video Perpetuation Deposition of Patricia Hill, April 29, 2009 at Dkt No, 21461.
[5] *See* Schwartz Decl. ¶ 7

testimony of a medical expert.").[6] Asbestos-related diseases claims similarly require expert testimony.

Laypersons such as the seventeen deponents that the Libby Plaintiff Lawyers seek to depose cannot competently testify to a whole range of issues that are necessary to proving their sophisticated medical injury claims. It is blackletter law that a layperson claimant cannot competently discuss the etiology of their disease, or the prognosis for their disease in such situations—because these issues require extensive medical expertise. *See Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 888 (8th Cir. 2006) (stating that "When a party suffers a sophisticated injury, which requires surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within a lay person's understanding and expert testimony is required."); *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002) (holding that stroke is a sophisticated injury and requires an expert to testify about causation); *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1210 (8th Cir. 2000) (holding that "when the injury is a 'sophisticated' one, i.e., requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within the realm of lay understanding and must be established through expert testimony"); *Niklaus v. Vivadent*, 767 F. Supp. 94, 96 (M.D. PA. 1991) (holding that "in a

---

[6] The state of Montana is in accord as are other states. *See, e.g., Cain v Stevenson*, 706 P.2d 128, 131 (Mont 1985) (holding that expert testimony is required when causation is not clearly apparent and "the question of the prognosis of an injury and probable permanent disability is one necessarily within the ambit of expert medical opinion"); *See eg, Tormenia v First Investors Realty Co*, Inc, 251 F.3d 128, 131 (3d. Cir 2000) (holding that "New Jersey law does require expert testimony. . in cases where lay jurors confront causation issues that are too complex to be understood without the assistance of specialized expert testimony"); *Lattanze v Silverstrini*, 448 A.2d 605, 608, (Pa. Super Ct 1982) (holding that for lay testimony to be acceptable, "the injury and the act must be so closely connected that a lay person could diagnose the causal connection"); *Hamil v Bashline*, 481 Pa 256, 266 (1978) ("holding that medical testimony is needed to establish that the injury in question did, with a reasonable degree of medical certainty, stem from the . . . act"); *Clifford v Opdyke*, 156 N.J. Super. 208 (1978) (holding "the question of prognosis of an injury . is one necessarily within the ambit of expert medical opinion.")

personal injury case when there is no obvious causal relationship between the accident and the injury, unequivocal medical testimony is necessary to establish the causal connection.").

Expert testimony is necessary to prove the Libby Claimants' individual claims. Individual objectors cannot testify as to what they think scientifically caused their disease, or what their prognosis is. The testimony of these individuals cannot achieve its purported purpose. These depositions are completely irrelevant to this bankruptcy proceeding, whatever their use in a personal injury case in the tort system, and they also waste huge amounts of estate resources without even achieving their purported purpose.

## POINT II.

### THE LIBBY PLAINTIFF LAWYERS SHOULD BE BARRED FROM TAKING THE DEPOSITIONS SOUGHT BECAUSE THEY HAVE NOT COMPLIED WITH BASIC DISCLOSURE AND DISCOVERY OBLIGATIONS

The Libby Plaintiff Lawyers were required by Rule 2019 to submit basic information about the identity of each of their clients and their alleged claims. *See Baron & Budd, P.C. V. Unsecured Asbestos Claimants Committee*, 321 B.R. 147 (D.N.J. 2005).[7] Under the terms of the Case Management Order, this information was required to be provided to the parties at the outset of discovery.[8] None of the seventeen individuals for whom the Libby Plaintiff Lawyers have served perpetuation notices are identified as having mesothalomia, lung cancer or any other cancer in the Rule 2019 submissions.[9] Nor is there any other indication of any exigent circumstance warranting the need to take perpetuation depositions for any of these individuals.

---

[7] Stating that the "the core purpose of Rule 2019 is to ensure that reorganization plans deal fairly with all creditors and are arrived at openly" and that "the Court is satisfied with [the bankruptcy court's] determination that fee sharing, co-counsel and referral relationships (and the potential conflicts of interest that may arise therefrom) are indeed 'pertinent facts and circumstances in connection with the employment of the entity' Citing Fed. R. Bankr. P. 2019(a).

[8] Under the Second Amended Case Management Order Related to the First Amended Plan of Reorganization, January 29, 2009 at Dkt. No. 20622.

[9] *See* Ninth Amended and Restated Verified Statement in Connection with the Representation of Creditors filed by Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, April 22, 2009 at Dkt. No. 21365.

4

Moreover, the Libby Plaintiff Lawyers did not produce documents on any of the seventeen individuals that they have noticed for deposition prior to the filing of the Debtors' Motion to Quash. They also delayed in producing other basic information, such as the identity of the individuals who are personal representatives for the estates of claimants and the identity of these claimants.[10] Other requests, such as requests for copies of pleadings served in other personal injury actions besides those asserted against Grace, have not been adequately answered.[11] But, even if the Libby Plaintiff Lawyers produced their complete files on the deponents in response to requests made after the notices were issued, it would be too little too late. The Case Management Order set a deadline for the production of documents and the designation of experts. All of these deadlines have passed before the notices were issued.

Consequently, even if the Libby Plaintiff Lawyers produced the withheld documents and cured any deficiencies in their Rule 2019 disclosures, all parties to the confirmation proceedings have been prejudiced by their non-compliance. Among other things, the parties have lost the chance to designate experts to review, consider and provide advice and testimony on the medical records of the proposed deponents. Time has also been lost to seek third-party discovery related to the allegations of these deponents.

---

[10] See Schwartz Decl ¶ 13 The Libby Claimants only offered this information on May 1. *Id*
[11] See Schwartz Decl ¶ 12 The Libby Plaintiff Lawyers belatedly wrote offering to produce certain documents *See* Schwartz Decl ¶ 14, Exhibit H. *See* Schwartz Decl ¶ 14. As yet, Arrowood does not have these documents.

5

## POINT III.

## THE BURDEN AND DISTRACTION GENERATED BY THE SEVENTEEN PROPOSED DEPOSITIONS WOULD BE TREMENDOUS AND WITHOUT PRECEDENT

Even if there was some possibility that the depositions sought could lead to the discovery of admissible evidence, the incredible burden, expense and distraction associated with these depositions far outweigh any possible benefit.

The period of time needed to complete the seventeen proposed depositions, if permitted, would be significant. Even if the seventeen proposed depositions could be scheduled sequentially, one after another without a day's interruption between them, very likely the better part of three and a half weeks, or almost a month, will be necessary to complete these depositions. However, if any individual deponent contends that he or she is not able to sit for a full day, more than one day will be needed and the search for available slots to continue could easily be expected to require additional months. The period needed to complete these depositions will be further extended if deponents or counsel are not available on sequential dates, as will almost certainly be the case. To the extent that there are discovery or privilege-related disputes raised by individual deponents, the schedule could well stretch even further.

The resources needed to undertake the seventeen proposed depositions, if permitted, is equally daunting. Grace, the ACC and FCR will each feel compelled to have counsel attend these depositions. If there is just seven hours of questioning for direct and cross of each proposed deponent, a total of at least 21 hours will be devoted to each deposition. If this total is carried forward over all seventeen deponents, the hours that will be needed collectively for these depositions is at least 357 hours. This projection does not include any preparation time. Grace will be compelled to research the claim of each individual, review their medical records and past

claims. The additional time devoted to research and preparation could well press the time devoted to this project above 500 hours.

The Federal Rules place a high standard upon a party seeking such discovery. *See Ash v. Cart*, 512 F.2d 909, 911 (3d Cir. 1975). Under Federal Rule of Civil Procedure (Fed. R. Civ. P. 27(a)(1)), a petition for a deposition to perpetuate testimony must include "the facts that the petitioner wants to establish by the proposed testimony and the reasons and the reason to perpetuate it and the expected substance of the testimony of each deponent." Fed. R. Civ. P. 27(a)(I); *see also* Fed. R. Bankr. P. 2027. The scope of discovery is narrower than under Rule 26 of the Federal Rules of Civil Procedure, and "applies only in that special category of cases where it is necessary to prevent testimony from being lost." *Ash*, 512 F.2d at 911.

There is no precedent for the kind of burden and distraction that will be caused by this discovery effort, especially when no rationale has been advanced by the Libby Plaintiff Lawyers that would support the admission of the testimony that is sought at confirmation.

## POINT IV.

### ARROWOOD HAS A RIGHT TO BE HEARD BECAUSE THE LIBBY CLAIMANTS HAVE INTERVENED, ASSERTED OBJECTIONS, AND SOUGHT RULINGS THAT COULD BIND ALL PARTIES.

While the Libby Plaintiff Lawyers told this court that "the only party from whom we need discovery is Grace," in the names of various individual claimants they have propounded discovery on several insurers.[12] For example, the Libby Plaintiff Lawyers propounded document requests on Arrowood in the names of Mary A. Doney and Vern Byington, and served discovery requests on other insurers, including Maryland Casualty Company and Continental Casualty

---

[12] *See* Schwartz Decl. Ex. A at Dkt No. 21245, *In re W R Grace & Co*, 01-1139, Transcript of Motion Hearing at 140 (Bankr. D. Del. December 15, 2008).

Company.[13] In their requests to Arrowood, the Libby Plaintiff Lawyers sought, among other things, all documents relating to insurance coverage for claims asserted by the Libby Claimants against the Debtors, all communications between Arrowood and the Debtors regarding the Libby Claimants' claims, documents relating to claims against the Debtors, and potential insurer defenses against the Debtors. The Libby Claimants' discovery ran the gamut of potential confirmation issues.

On top of this, the Libby Plaintiff Lawyers seek declarations from this Court that directly affect Movants' rights. They object to the Creditor Release provision, which provides that anyone voting in favor of or receiving property under the Plan release the Asbestos Protected Parties, including Settling Asbestos Insurance Companies, from all Claims relating to the Debtors and their operations prior to the Effective Date.[14] They also contend that the Plan injunction wrongfully prevents them from suing insurers for "independent claims," and ask the Court to limit the injunction so that they will be able to sue Settled Asbestos Insurance Entities who provided assets to the trust in exchange for finality.[15] They state—while referring to one insurer by name—that the Asbestos PI Channeling Injunction "would appear to bar the Libby Claimants from pursuing claims against Maryland Casualty Company (and other Grace insurers)" based on independent claims.[16] They also object to insurance proceeds not subject to

---

[13] See Schwartz Decl. Ex. J at Dkt. No. 21245, Mary A. Doney's First Request to Arrowood For Production of Documents, January 23, 2009; see Schwartz Decl. Ex. K at Dkt. No. 21245, Joinder of Vern Byington in the Debtors', Asbestos PI Future Claimants Representative's, and Official Committee of Asbestos Personal Injury Claimants' First Set of Requests to Arrowood for the Production of Documents, January 23, 2009; see Schwartz Decl. Ex. L at Dkt. No. 21245, Vern Byington's First Set of Interrogatories to MCC, January 23, 2009; see Schwartz Decl. Ex. M at Dkt. No. 21245, Joinder of Mary A. Doney in the Debtors', Asbestos PI Future Claimants Representative's, and Official Committee of Asbestos Personal Injury Claimants' First Set of Requests to MCC for the Production of Documents, January 23, 2009; see Schwartz Decl. Ex. N at Dkt. No. 21245, Mary A. Doney's First Interrogatories to CNA, January 23, 2009; see Schwartz Decl. Ex. O at Dkt. No. 21245, Mary A. Doney's First Request to CNA for Production of Documents, January 23, 2009

[14] See Libby Claimants' Objections to Debtors' Disclosure Statement for Joint Plan of Reorganization, Dkt No 19803 at 84.

[15] Id at 82-83

[16] Id at 82.

8

an aggregate cap being placed in the Asbestos PI Trust, even if insurers contributed large amounts for such protection.[17] They directly state that "the Libby Claimants may not be barred from pursuing insurance that is not subject to aggregate limits."[18] All of these objections are directly aimed at the insurers' economic rights in this case. The Libby Claimants are asking the Court to rule that the Asbestos PI Channeling Injunction improperly limits their right to sue insurers. Their objections strike at the heart of the rights insurers receive in exchange for contributions to the 524(g) trust.

The Court should also not lose sight of the fact that the Libby Claimants are litigating to change Movants' economic rights under the Plan. Right now, settling insurers under the Plan receive the full protection of the Asbestos PI Channeling Injunction. The Libby Claimants seek to remove that full protection.[19] This is a direct attempt to change insurers' rights under the Plan. If they are successful, Settling Asbestos Insurance Companies would be stripped of many of their protections under the Plan. This alone is a basis for standing. *See Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291(3d Cir. 2005) ("While it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms."); *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 528 (2d Cir. 1999) ("Substantial economic harm is plainly the type of injury for which parties may seek redress in federal court.").

[Remainder of page left blank]

---

[17] *Id.* at 88-89
[18] *Id.* at 89.
[19] *Id.*

## CONCLUSION

For the foregoing reasons, Arrowood respectfully requests that the relief sought by Grace should be granted and the notices of the seventeen deponents quashed.

Dated: May 1, 2009
       Wilmington, Delaware

By: _____
Garvan F. McDaniel, Esq. (#4167)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, DE 19801
(302) 429-1900 Phone
(302) 429-8600 Fax

-and-

Carl J. Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER, LLP
150 East 42nd Street
New York, NY 10017-5639
Telephone: (212) 490-3000

-and-

Tancred Schiavoni, Esq.
Gary Svirsky, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York
(212) 326-2267

*Counsel to Arrowood Indemnity
Company, f/k/a Royal Indemnity Company*