**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF KIRKLAND & ELLIS LLP**
**FOR THE THIRTY-FIRST INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Kirkland & Ellis LLP for the Thirty-First Interim Period</u> (the "Application").

## BACKGROUND

1.      Kirkland & Ellis LLP ("K&E") was retained as counsel to the Debtors.  In the Application, K&E seeks approval of fees totaling $7,741,360.50 and expenses totaling $1,290,505.69 for its services from October 1, 2008 through December 31, 2008 (the "Application Period").

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2008, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330,

Issued January 30, 1996 (the "U.S. Trustee Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on K&E an initial report based on our review, and received a response from K&E, portions of which response are quoted herein.

## DISCUSSION

3.      In our initial report, we noted that on October 30, 2008, six K&E attorneys attended a conference with consultants.  The total time spent, including non-working travel time, was 34.10 hours for total fees of $16,938.00.  We also noted that on December 8, 2008, four K&E attorneys attended a mediation.  The total time spent was 27.90 hours for total fees of $19,937.00. The time entries for both meetings are listed on Exhibit "A."  Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Thus, we asked K&E to explain why it was necessary for each attendee to be present at these conferences, as well as the role of each attendee.  K&E's response is attached as Response Exhibit "A."  We accept K&E's response and have no objection to these fees.

4.      In our initial report, we noted a number of instances in which multiple K&E professionals and paraprofessionals attended the same hearing.  The time entries are listed on Exhibit "B."  In light of the Guideline cited above, we asked K&E to explain why it was necessary for each attendee to be present at these hearings, as well as the role of each attendee at the hearings.  K&E's response is attached as Response Exhibit "B."  We accept K&E's response except with respect to attendance by the following professionals:

<u>Disclosure Statement Hearings on October 27, 2008, November 14, 2008, and November 24, 2008</u>

The response does not establish the necessity of associate Christopher T. Greco's attendance. Although we understand from the response that Mr. Greco was heavily involved in preparation for the hearings, drafting documents, and assisting other counsel with hearing preparation, the response does not establish that Mr. Greco had a necessary role at the hearings themselves. Thus, we recommend disallowance of his time at the three hearings, for a fee reduction of $13,611.00.

<u>Status Conference in Montana Criminal Case on October 24, 2008</u>

The response does not establish the necessity of associate Peter A. Farrell's attendance. According to the response, Mr. Farrell "is the defense team associate most responsible for legal briefs, which included support for the legal arguments K&E was planning to make at the hearing." Although we understand Mr. Farrell had a necessary role in briefing and preparation for the conference, the response does not demonstrate Mr. Farrell's role at the conference or why it was necessary for him to attend. Thus, we recommend disallowance of his time at the status conference, for a fee reduction of $2,844.00.

In summary, for all items in this paragraph, we recommend a reduction of $16,455.00 in fees.

5.      In our initial report, we noted that paraprofessionals Maria D. Gaytan ($140), Kimberly K. Love ($240), Neal F. San Diego ($155), Linda L. Cordeiro ($145), Khalid M. Osman ($230), and Carrie L. Wildfong ($150), spent 243.80 hours for total fees of $38,148.50 on work which appeared to be of a clerical nature. The time entries are listed on Exhibit "C." On the issue of adjusting rates downward, we find persuasive the opinion expressed by the Honorable Judith K.

Fitzgerald in *In re USG Corporation*, Case No. 01-2094 (JKF), Transcript of Proceedings, August 29, 2005, pp. 49-52, wherein the Court opined that $160.00 per hour for file maintenance, even if performed electronically, was too high, and that $60.00 to $100.00 per hour for this service was more appropriate.[1]  We have been consistent in recommending that clerical tasks be billed at no more than $80.00 per hour.  Thus, we asked K&E to explain why this time should be compensated at the paralegals' full hourly rates.  K&E provided a response which we have attached as Response Exhibit "C," and, in addition, supplemented each of the time entries questioned.  We have attached the supplemented time entries as Response Exhibit "C-1."  We appreciate K&E's response and the additional explanation  provided for each of the time entries.  Had we been provided with the same degree of detail in the original Application, we would not have raised this issue.  Thus, we accept K&E's response and have no objection to these fees.

　　　　6.　　　　In our initial report, we noted the following time entries in which there is a discrepancy between the total time billed and the time recorded in parentheses:

| | | | | |
|---|---|---|---|---|
| a. | 11/15/2008 | Holly Bull | 5.30 | Review correspondence from J. Baer re fee auditor follow-up questions to fee auditor reply (.3); review several versions of response re same and prior responses to prepare draft response re same (1.2); review and edit second-round October invoices and prepare correspondence re same (2.8). |

　　　　　　Although 5.30 hours were billed, the time listed in parentheses totals only 4.30 hours, for a difference of 1.00 hour.

| | | | | |
|---|---|---|---|---|
| b. | 12/7/2008 | Tyler D Mace | 20.00 | Confer with defense counsel re mediation (1.5); prepare for mediation (12.5). |

---

[1]Nevertheless, the Court agreed to allow the applicant to present evidence in support of its $160.00 hourly rate at a later date.  *See* Transcript, *supra,* at p. 52.

Although 20.00 hours were billed, the time listed in parentheses totals only 14.00

hours, for a difference of 6.00 hours.

Thus, we asked K&E whether it was in agreement that fee adjustments are warranted for these time

entries.  K&E responded:

The Initial Report identifies the following two time entries with respect to which there is a discrepancy between the total time listed and the sum of the time recorded in parentheses, and requests that K&E explain the difference.  Each of these is set forth below, each followed by the requested explanation:

11/15/2008    Holly Bull    5.30    Review correspondence from J. Baer re fee auditor follow-up questions to fee auditor reply (.3); review several versions of response re same and prior responses to prepare draft response re same (1.2); review and edit second-round October invoices and prepare correspondence re same (2.8).

The total of 5.3 hours for this entry is correct, but the last parenthetical in the entry should have read "3.8" instead of "2.8"  This occurred because of a typographical error made by a secretary in typing the original handwritten entry into the billing system, and such error was not discovered during the biller's proofreading of the typed entries.

12/7/2008    Tyler D Mace  20.00   Confer with defense counsel re mediation (1.5); prepare for mediation (12.5).

The total of 20.0 hours for this entry is correct, but the description and parentheticals are incorrect.  This, too, was a typographical error made by a secretary in typing the original entries into the billing system, and the person inadvertently used Mr. Mace's description and time from the prior day instead of the correct December 7th description, which should have been:

Prepare for mediation and revise presentation re same (18.0);
confer with client re same (2.0).

Because the total time shown for both of these entries is correct, K&E respectfully requests full reimbursement therefore.

We accept K&E's response and have no objection to these fees.

7.      In our initial report, we noted a total of $3,354.45 billed for "Scanned Images" on the October 2008 monthly fee application.  The scanned images were billed at $0.15 per page.  Thus, we asked K&E to explain why these scanned pages should be charged at a higher rate than the $0.10 per page allowed for photocopies in this District.  K&E responded:

> ... K&E agrees to a reduction of $1,118.15 (K&E charged $3,354.45 for 22,363 pages of scanned images in October of 2008.  Reducing the per-page charge to $0.10 results in a total October 2008 charge of $2,236.30, a reduction of $1,118.15 from the $3,354.45 originally charged.)  As described in prior responses, effective November 4th, 2008, K&E adjusted its billing procedures to ensure that scanned images are charged to the Debtors at $0.10 per page rather than $0.15 per page. As a result, this issue should not arise again.

We appreciate K&E's response and recommend a reduction of $1,118.15 in expenses.

8.      In our initial report, we noted the following hotel charge which appeared excessive:

| 12/2/2008 | 450.06 | Walter Lancaster, Hotel, Chicago, IL, The Peninsula, 12/02/08 (Conference) |
|---|---|---|

It appears to us the one can ordinarily obtain satisfactory lodging in Chicago for $350.00 per night, plus taxes.  We further noted that the Peninsula is classified as a five-star hotel on the Expedia website.  K&E responded as follows:  "The room rate for this hotel stay was $390.00, and the tax was $60.06.  Not reducing this hotel charge on the Fee Application was an inadvertent error by K&E, and we agree that the charge should be reduced by $40.00 to match the recommended $350.00 per night room rate charge."  We appreciate K&E's response and recommend a reduction of $40.00 in expenses.

## CONCLUSION

9.      Thus, we recommend approval of $7,724,905.50 in fees ($7,741,360.50 minus $16,455.00) and $1,289,347.54 in expenses ($1,290,505.69 minus $1,158.15) for K&E's services

for the Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
      Warren H. Smith
      Texas State Bar No. 18757050

Republic Center
325 N. St. Paul Street, Suite 1250
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 6th day of May, 2009.

_____
      Warren H. Smith

# SERVICE LIST
Notice Parties

**The Applicant**
Deanna Boll
David M. Bernick, P.C.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

**The Debtor**
William Sparks
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
James R. O'Neill
Pachulski, Stang, Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

**United States Trustee**
David Klauder
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

**RESPONSE EXHIBIT "A"**

Paragraph 3 of the Initial Report requests greater explanation concerning the attendance of multiple K&E professionals at two criminal defense events:  an October 30, 2008 expert/joint defense conference, and a mediation session held with the U.S. Government on December 8, 2008.

In K&E's response to the Fee Auditor's Initial Report Regarding the Fee Application of K&E for the Thirtieth Interim Period (such response, the "Thirtieth Response"), we provided a brief explanation of the status of the criminal case as of the third quarter of 2008.  We explained that after the U.S. Supreme Court denied *certiorari*, in June of 2008, in the defendants' appeal of Ninth Circuit Court of Appeals rulings, the defense team shifted from a "stand-down" mode to full trial preparation mode.  The defense team began working harder as the trial grew closer.  On October 24th, Judge Malloy of The District Court for the District of Montana (the "District Court") set the start of jury selection for February 19, 2009, and the trial has been ongoing since that date.  (The October 24th status hearing is described in Paragraph 2(b) below.)

In lettered paragraphs (a) and (b) below, respectively, we describe the October 30th conference and the December 8th mediation, as well as each attending professionals' questioned time.

a.      October 30th, 2008 Conference

Karan, Mace, Fitzsimmons, Ahern, Harding, McMillin

This conference, held in K&E's Washington, D.C. offices, was a key meeting with multiple defense experts, as well as counsel for the individual defendants.  Prior to the conference, K&E had received a substantial document production from the Government which included air and soil sampling data, some of which had been relied upon by the Government's experts.  The purposes of the meeting were to review this sampling data, to review and coordinate the work of multiple defense experts, to allow joint defense counsel to meet with Grace's experts, and to plan trial strategy with those experts.  At the conference, numerous experts described their analyses of the sampling data.  The expert work that was the subject of the meeting was critical to understanding the underpinnings of certain prosecution experts' testimony, and also served to inform Grace's other experts.  This was a working meeting; participants attended only the portions of the meeting related to matters on which they were working.

The K&E professionals attending the meeting all participated in order to fulfill their ongoing criminal defense team roles and responsibilities.  Specific team members' roles are described in the paragraphs below.[2]

_____

[2]Throughout this response, the order of the professionals discussed corresponds to the order in which such professionals are listed in the Initial Report.

Chicago litigation partner Alex Karan had reviewed and analyzed much of the data on which the attending experts relied, and attended the meeting both to listen to the experts' presentations and to provide answers to questions about the expert data. In addition, as described in the Thirtieth Response, Alex authored a large portion of the trial outline, and the expert work being discussed at the meeting was part and parcel of many trial outline sections. Alex needed to attend in order to modify and update the trial outline. D.C. litigation associate Tyler Mace, the senior associate on the defense team, is responsible for, among other things, the preparation of discovery and coordination of defense efforts with the individual defendants. He attended the portion of the meeting at which discovery aspects of the experts' work was discussed. Tyler focused on getting clarity from the experts as to what particular further sampling data the defense would need to obtain in discovery. D.C. legal assistant, Dr. Tim Fitzsimmons, has a PhD in biomedical sciences, and he attended the meeting to help the team better understand the biomedical aspects of the trial themes, and to fulfill his team responsibilities of analyzing expert witness-related scientific documents and assisting with scientific aspects of witness direct and cross examination preparations. He worked primarily with Barbara Harding and Scott McMillin to prepare.

As described in the Thirtieth Response, Chicago litigation partner Ellen Ahern works on a variety of expert and factual witness issues, in particular historical factual issues, as well as more science-based risk assessment and industrial hygiene matters. In addition, Ellen works on a variety of issues that are implicated by historical fact witnesses called by the Government. The expert work being discussed helped her to prepare cross examinations of Government historical fact witnesses. D.C. litigation partner Barbara Harding, second in command of the defense team, focuses on the science defense. Barb attended the October 30th meeting in order to help her prepare direct and cross examinations of expert witnesses. Barb needed to draft expert examination outlines and conduct the related examinations during trial, and her participation in the conference was critical to her fulfillment of her trial responsibilities. Chicago litigation partner Scott McMillin is responsible, under Barbara Harding, for the science defense. Sampling data and techniques are one of his particular areas of responsibility, and so this sampling-focused meeting was a key one in which he needed to participate. Like Barb, Scott needed to not only prepare expert examination outlines, but also to conduct certain of those examinations at trial.

      b.     <u>December 8, 2008 Mediation</u>

Mace, Bernick, Harding, Urgenson

The December 8 mediation conference, held at the Department of Justice, was attended by counsel for all defendants as well as by the United States Attorney for the District of Montana. It was a single-day session ordered by the Court in an effort to avoid trial. K&E took the prospect of mediation quite seriously, and came prepared to discuss all aspects of the criminal case as well as its impact on Grace's bankruptcy. The four K&E attorneys present at the mediation worked directly with Grace's chief executive officer and general counsel to prepare a presentation for use at the mediation. David Bernick and Larry Urgenson, as the two lead defense trial lawyers, presented Grace's position to the Government. Barbara Harding attended primarily to present and discuss

aspects of the asbestos personal injury ("PI") estimation that had occurred in the Debtors' bankruptcy case, and its impact on the criminal case.  Tyler Mace had worked with David and Larry to prepare their mediation presentation, and he attended the mediation to support them during their presentations, as well as to address questions related to criminal fines and restitution issues.

**RESPONSE EXHIBIT "B"**

Paragraph 4 of the Initial Report requests greater explanation concerning the attendance of multiple K&E professionals at: (a) three separate disclosure statement hearing dates, (b) an October 24th criminal case status hearing, (c) the October omnibus hearing, and (d) the December omnibus hearing. Set forth below are our replies with regard to each of these hearing dates.

    a.    <u>Disclosure Statement Hearing Dates</u>

On September 19, 2008, the Debtors filed an amended plan of reorganization (the "<u>Plan</u>") and disclosure statement. Co-proponents of the Plan are the Committee of Asbestos Personal Injury Claimants, the Representative for Future Asbestos Personal Injury Claimants, and the Official Committee of Equity Security Holders. The committee representing general unsecured creditors and the Official Committee of Asbestos Property Damage Claimants were not Plan proponents. Numerous objections to the disclosure statement were filed by various parties. The Debtors' goal in the hearings was to have the Court approve the disclosure statement, and the solicitation and confirmation procedures related to the Plan. (In March 2009, the Court approved the disclosure statement and Plan voting procedures. The Plan confirmation hearing is scheduled to be begin in June.)

    i.    <u>October 27th, 2008</u>

Freedman, Bruens, Greco, Love, Gaytan, Baer, Boll, Esayian

Twenty-three disclosure statement objections had been filed by the October 17th objection deadline, and the October 27th hearing marked the first in-court opportunity for the Debtors to attempt to resolve some of those objections.

New York senior restructuring partner Ted Freedman has been and continues to be responsible for developing much of Grace's Plan and bankruptcy emergence strategy. He, along with lead case partner David Bernick, conducted the disclosure statement hearings on behalf of the Debtors. Ted worked closely with former Chicago restructuring partner Jan Baer, Craig Bruens, Deanna Boll, and Christopher Greco to draft Grace's brief responsive to the filed disclosure statement objections, to amend the disclosure statement to address some of the objections, and to otherwise work with various parties in attempts to resolve the pending objections.

New York restructuring partner Craig Bruens attended in his role as the primary restructuring partner dealing with issues related to the treatment of general unsecured claimants and their ongoing impairment arguments. Craig had a large role in developing the disclosure statement and Plan as they relate to interest issues involving general unsecured claimants. He was also the primary partner in charge of the solicitation procedures, which were up for approval in connection with the disclosure statement. Christopher Greco, a New York restructuring associate, had drafted and revised the Debtors' response to the disclosure statement objections, and had assisted David Bernick, Ted

Freedman, Jan Baer, Deanna Boll, and Craig Bruens with preparing for the hearing, by preparing hearing materials and revising ancillary Plan documents.

Chicago-based legal assistant Kimberly Love and Chicago-based case assistant Maria Gaytan attended the hearing in their ongoing bankruptcy team roles of providing hearing support. Kim, assisted by Maria, assisted the attorney team with the preparation of hearing materials and then attended the hearing in order to provide assistance in Court as requested. Kim's and Maria's real-time hearing assistance included providing the presenting attorneys with requested documents, claims files, pleadings and demonstrative materials. (Generally only one legal or case assistant attends bankruptcy hearings in the Cases, but the complexity and document-intensiveness of the disclosure statement hearings required the presence and assistance of two support staff team members.)

Former restructuring partner Jan Baer, who left K&E in February of 2009, had been involved in the Cases since their inception in 2001. Jan attended the hearing both to provide David Bernick and Ted Freedman with real-time support, and to fulfill her role as a primary drafter of the disclosure statement. As you know, Jan had been the restructuring partner in charge of the Grace case on a daily basis for the last number of years. She also has the most historical knowledge of the case of all bankruptcy team members aside from David Bernick. Jan worked extensively with Ted Freedman on the disclosure statement objections response briefing submitted to the Court shortly before the hearing date, and worked right up to the hearing on preparing for the hearing itself.

Chicago litigation partner Lisa Esayian handles all insurance issues in connection with Plan confirmation. This includes disclosure statement objections from insurers, primarily related to indirect asbestos personal injury claims, and as a primary confirmation issue. She attended the hearing in order to address insurance-related issues.

Finally, I am a partner in New York's restructuring group, and I am primarily responsible for drafting the Debtors' plan of reorganization and various parts of the disclosure statement. I work with Ted Freedman and Jan Baer in negotiating resolution to disclosure statement and plan-related objections, and strategizing next steps with the Debtors' fellow Plan proponents.

     ii.    <u>November 14th, 2008</u>

          Evans, Bruens, Greco, Love, Gaytan, Boll, Baer, Bernick, Esayian, Freedman

In an effort to resolve some of the filed objections, the Debtors had filed revisions to the Plan and disclosure statement, and amendments to the solicitation and confirmation procedures. The November 14th hearing was held in order to deal with these issues.

All of the issues described with respect to the October 27th disclosure statement hearing date were still on the table at the November 14th hearing, and participants Craig Bruens, Ted Freedman, Christopher Greco, Kimberly Love, Maria Gaytan, Janet Baer, Deanna Boll and Lisa Esayian

attended in their respective roles described in Paragraph 2(a)(i) above.  In addition, New York junior restructuring associate Rashad Evans had assisted Craig Bruens with solicitation issues and attended the hearing by telephone in order to assist on any solicitation follow up items.  Finally, of course, lead case partner David Bernick conducted Grace's portions of the hearing.

iii.    <u>November 24th, 2008</u>

Bruens, Greco, Lewinstein, Love, Baer, Bernick, Esayian, Freedman

The November 24th disclosure statement hearing was held immediately following the November omnibus hearing in order to deal with remaining disclosure statement PI and PD issues. Craig Bruens, Christopher Greco, Kimberly Love, Jan Baer, David Bernick, Lisa Esayian and Ted Freedman attended the November 24th hearing in their respective roles described in Paragraph 2(a)(i) above.  Lisa Esayian also participated in the November 24th hearing in order to address various motions related to property damage claims that were going forward as part of the omnibus hearing.  Chris Greco had the additional responsibility ahead of this hearing date of preparing and filing revised plan documents.  He also assisted Ted Freedman and Jan Baer with their hearing preparations.  In addition, New York restructuring associate Marc Lewinstein attended 1 1/4 hours of the hearing telephonically in order to fulfill his role as lead associate working with Craig Bruens and then-restructuring partner Jan Baer on the drafting of the disclosure statement and the analysis of related issues.  By listening in to the hearing, he was able to update the disclosure statement to reflect the hearing results, and was also able to begin drafting responses to the disclosure statement objections presented at the hearing.  Marc also assisted Craig Bruens in preparing the revised solicitation materials up for approval at the hearing.

b.    <u>October 24th Criminal Case Status Hearing</u>

Mace, Farrell, Harding, McMillin, Urgenson

This hearing was originally scheduled for October 1st, 2008, and then later rescheduled for October 24th.  The hearing was the first scheduled hearing following the interlocutory appeal (described in the Thirtieth Response) and was the hearing at which the judge was going to set a trial date and set out how trial discovery and *Daubert* hearings were going to be handled.  It was a major event in the case, and required preparation of numerous presentations by K&E defense team attorneys.  Team members prepared for the hearing by addressing issues regarding both the defense's and the Government's discovery, setting a discovery schedule, and addressing myriad expert issues. Both the prosecution and the defense filed extensive pre-hearing briefs.  The Court scheduled a number of dates, from briefing due dates to the start of jury selection for the trial.

Tyler Mace attended in his role, described above, as senior associate on the defense team. He had worked extensively on the pre-hearing brief and numerous hearing presentations.  In particular, he was focused on discovery issues.  D.C.-based litigation partner Larry Urgenson participated in his role of senior litigation partner with overall responsibility for the defense.  He,

along with David Bernick, presented portions of the status conference at the hearing.  Peter Farrell is the defense team associate most responsible for legal briefs, which included support for the legal arguments K&E was planning to make at the hearing.  (However, at the hearing itself, the Judge decided not to hear arguments related to legal arguments and instead set a motion schedule with arguments to take place in January of 2009.)  As discussed above, Barbara Harding and Scott McMillin are responsible for the science defense, and each had prepared extensively for the hearing. Both were present in that capacity, as well as to address pending *Daubert* issues if such arose during the course of the hearing.

  c. <u>October Omnibus Hearing</u>

    Bruens, Greco, Boll, Baer, Leon

  Up at the October omnibus hearing was the Debtors' motion to establish a bar date for Canadian ZAI claims, as well as approval of the related forms and notice program.  In addition, numerous matters were up for status conferences: the status of the default interest/credit agreement litigation described in the Thirtieth Response; the status of the remaining PD claims; the status of the Scott Company's motion for relief from a modified preliminary injunction; the status of the motion of the City of Charleston for relief from the automatic stay in order to seize a piece of the Debtors' real property via eminent domain; and the Debtors' motion to approve a settlement with the town of Acton, Massachusetts.  Finally, there took place a discussion of the logistics and timing surrounding the disclosure statement hearing dates that were then approaching.

  New York restructuring partner Craig Bruens participated in one hour of the hearing, via telephone, to fulfill his role related to the credit agreement/default interest litigation.  As described in the Thirtieth Response, Craig had drafted Grace's original objection to the bank lenders' claims for default interest and assisted in drafting the trial briefs for the credit agreement trial held at the September omnibus hearing.  He listened in to this portion of the October omnibus hearing in order to be able to prepare additional briefings on the matter.  New York litigation partner Eric Leon also participated in the hearing in his role as the partner in charge of the credit agreement/default interest litigation.

  New York restructuring associate Christopher Greco also attended a portion of the hearing by telephone.  Chris had drafted the Debtors' 25th omnibus objection to claims, and several of those claims were at issue at the hearing.  Chris was also in the process of revising plan documents and drafting the Debtors' response to disclosure statement objections, and so he listened in to the discussion of the disclosure statement hearing issues as well.

  Former Chicago restructuring partner Jan Baer attended the hearing in her then-ongoing bankruptcy team role described above and in many previous responses.  She prepared and gave a brief presentation on the status of the Scotts Company adversary proceeding, the Debtors' application to set a bar date and approve notice program for Canadian ZAI claims, and the Acton settlement.  Jan also presented all non-contested items on the agenda.  I participated telephonically

in the portion of the hearing related to the bar date and notice program for Canadian ZAI claims, as I drafted the motion and worked with the media expert to develop the notice program. I needed to be available in the event the Court or counsel had questions regarding that process.

       d.    <u>December Omnibus Hearing</u>

          Evans, Greco, Love, Baer, Bernick, Esayian, Freedman

The major items up at the December omnibus hearing were a status hearing on Grace's motion to expunge time-barred Canadian PD claims and a further hearing on the disclosure statement. Grace was to update the Court on progress made on disclosure statement objections since the November 24th disclosure hearing date. Also up were a motion for confidentiality order filed by Arrowood Indemnity Company, the Debtors' motion to approve the sale of their limited partnership interests in Colowyo Coal Company, the motion of City of Charleston, S.C., and related motion of Debtors to authorize the sale of the subject property to the City of Charleston.

Rashad Evans attended, via telephone, the portion of the hearing related to solicitation issues, in order to fulfill his responsibility of assisting Craig Bruens with arguments related to that process. Chris Greco also attended a portion of the hearing via telephone. Chris had revised plan ancillary documents in connection with the disclosure statement hearing and completed other omnibus hearing preparation. He worked with Ted Freedman and Jan Baer in preparation for the hearing. Kimberly Love attended in her hearing role described in Paragraph 2(a)(i) above. Jan Baer attended in her usual omnibus hearing role, and again prepared and presented the non-contested items, including the Charleston and Colowyo motions. David Bernick handled the portion of the hearing dealing with disclosure statement and plan issues. Chicago litigation partner Lisa Esayian attended, via telephone, the portion of the hearing relating to indirect PI claims and insurance issues. Ted Freedman attended the hearing to fulfill his default interest litigation role. As described in the Thirtieth Response, Ted has been heavily involved in the default interest litigation matter, working closely with Eric Leon and the litigation group on briefing and negotiations involving this issue and the impact that the issue has on the Plan.

## RESPONSE EXHIBIT "C"

In Paragraph 5 to the Initial Report, you raised the issue of K & E paraprofessionals' work that you state "appeared to be of clerical nature" and recommend billing that time at no more than $80.00 per hour. I believe my former partner, Ms. Baer, has addressed these concerns with you in the past, however, I am happy to attempt to explain here why I do not believe our legal assistant tasks were of mere clerical nature.

K & E uses legal assistants, project assistants and case assistants (paraprofessionals) when necessary to perform a wide range of tasks that are vital to K & E attorneys' effective representation of Grace in both the Cases and the defense of the criminal case. The tasks assigned to paraprofessionals are not clerical in nature; clerical tasks are performed by secretaries and their services are part of the overhead of the Firm. The tasks performed by paraprofessionals are those that cannot be performed by secretaries or other clerical personnel untrained in either the relatively complex tasks themselves or in the Cases or criminal proceedings. The alternative to paraprofessionals performing these tasks would be for attorneys to do the work, which would result in far higher fees to Grace.

Before describing the questioned paraprofessionals' case roles, let me briefly describe the "case management databases" referred to in many defense team paraprofessional time entries. These are the databases created by the K&E defense team to organize, track and manage all criminal case activity. These databases include materials not contained in K&E's document management system, such as research materials, document productions, and trial transcripts.[3] The case management databases are accessed daily by numerous members of the defense team, and it is critical that they are kept current and properly indexed. If a particular document is not categorized in a useful and logical manner, it becomes useless to the defense team. Pleadings, correspondence, hearing, deposition and trial transcripts, document production and calendaring, among other things, are all linked, organized and easily accessible by the whole team. The databases allow the case assistants to provide daily end-of-day updates to the entire team regarding newly-received correspondence, newly-filed pleadings, discovery responses, deadlines, etc. This system of organization saves enormous amounts of time, particularly when (as in the fourth quarter of 2008 for the Grace criminal case) a case enters its pre-trial phase. Properly categorizing and tagging each document requires a thorough knowledge of the case and its constituent parts. Case assistants are, as implied by the job title, trained to be thoroughly knowledgeable about the cases to which they are assigned.

---

[3]Documents are saved to K&E's document management system ("<u>DMS</u>") by default, to ensure that they are not lost, but trial teams generally do not rely on DMS organization for case management. It would be too confusing, given the sheer number of criminal case documents, as well as the organizational particulars of the case that do not really fit within the organizational parameters of DMS. DMS functions, in this case as more of a backup system/archive. The case management databases are more specifically dedicated to collecting, organizing and tracking materials for discovery, pre-trial and trial purposes.

Bankruptcy team members whose time is questioned are all Chicago-based:  case assistant Maria Gaytan, legal assistant Kimberly Love, and project assistant Carrie Wildfong.  Defense team members whose time is questioned are D.C.-based senior legal assistant Khalid Osman and Los Angeles case assistants Neal San Diego and Linda Cordeiro.  The attached (Response Exhibit C-1) contains all of these paraprofessionals' time entries questioned in the Initial Report, and provides greater detail for each entry.  Set forth below is a brief description of the case role and responsibilities of each.

Kimberly Love is the lead Chicago legal assistant assisting with Plan and disclosure statement insurance litigation matters.  In this capacity, she reviews, organizes, categorizes and updates the materials received from various counsel.  She needs to be prepared to immediately provide any document within her bailiwick to any requester, and, in order to do so, she must keep strict organization, updating, and cross-referencing of all relevant materials.  She also assists at hearings with organizing exhibits and presentations for various K&E lawyers, and even assists our co-Plan proponents with many of their needs at various hearings.  During the time period covered by the Initial Report, she worked primarily with partners Lisa Esayian and Andrew Running, former K&E partner Jan Baer, and associate Sam Blatnick.  She also provided assistance to partners Brian Stansbury and Barbara Harding (both of whom are now on the defense team but who were on the Plan team during the fourth quarter of 2008).

Chicago case assistant Maria Gaytan assists Kim Love with Plan and disclosure insurance litigation matters.  Maria, under Kim's direction, also organizes, categorizes and updates relevant materials.  She is responsible for maintaining the various case calendars related to the insurance litigation, as well as maintaining and updating insurance litigation-related materials for attorney use in briefing, hearing preparation and other litigation work.  Maria works with the same team members as does Kim Love.

Chicago restructuring project assistant Carrie Wildfong maintains the Grace bankruptcy case archives, which include pleadings from all of the related adversary proceedings, appeals and District Court cases.  She is responsible for monitoring the dockets for all of these matters on an almost-daily basis.  She reviews hard copies of all pleadings, organizing them in both a global docket sequence and in a matter-by-matter index.  In addition, she reviews each pleading to ascertain its significance, and then uploads those to the relevant electronic databases.  When a dual filing occurs (when a given pleading is filed in both the main bankruptcy case and on an ancillary docket), she cross-references the main case electronic archives against the ancillary proceedings archives to ensure consistency and accuracy.  The physical file is a voluminous archive as it includes all docket entries described above, and requires a good deal of attention to eliminate duplicative entries and accuracy of chronology of the docket.  If Carrie did not spend the time maintaining the case archives in this manner, bankruptcy team members would not be able to locate needed documents in a timely manner.

D.C. senior legal assistant Khalid Osman is a key member of the K&E defense team.  He leads a team of paraprofessionals on the case, including Terrell Stansbury, Carlos Padilla, Shawn

Olender, David Boutrous, and Natalya Palma.  Khalid's major task has been to assist in the organization and preparation of witness-related trial materials, and to oversee his paraprofessional team in doing the same.  Before Judge Malloy set a trial date, K&E did not expend the time necessary to have all potential witness materials ready for trial, but once the trial date was set for February 2009, Khalid, as well as the other members of the defense team, shifted into high gear.  The sheer number of documents he has had to review, organize, categorize, update and compile into the applicable witness preparation binders and sets has been staggering and has required his daily attention.  He has been charged with the upkeep and maintenance of each witness database for trial use, ensuring that each stays current as new information and materials develop.

Los Angeles case assistant Linda Cordeiro manages the Los Angeles Grace defense "war room."  Leading up to the trial, during the time period covered by the Initial Report, this was a large responsibility, and, to fulfill that responsibility, Linda received, reviewed, organized, and categorized the voluminous case materials received from counsel to the individual defendants in the case[4].  In addition, she had to ensure that the various trial materials sources -- hardcopy files, K&E's electronic document management system, and applicable trial databases -- remained current as new materials were received.  Linda regularly notified K&E defense team members of new additions to the trial materials collections.  In addition, Linda prepared and updated witness kits and witness direct and cross examination binders as requested by trial team attorneys.  She functioned, during this period, as the Los Angeles go-to person when K&E defense team members needed to know of the existence, the location and/or the status of a particular trial material.  Linda worked primarily with Los Angeles partner Walter Lancaster and associates Shani Moore Weatherby, Lauren Kozak, and Kyle Cutts.  Non-attorney K&E team members with whom she worked included Terrell Stansbury, Sarah Whitney, Megan Brown and Jared Voskuhl.

Los Angeles case assistant Neal San Diego provides assistance to Linda Cordeiro with her defense team responsibilities.  He assisted her in managing the Los Angeles war room and in reviewing and organizing the relevant materials.  In Linda's absence, he ensured that the various trial material sources remained current as new information was received.  Neal also performed regular updates to the case management database for use by defense team attorneys.  Finally, Neal regularly assisted former Los Angeles partner Wade Ackerman and Los Angeles associate Shani Moore-Weatherby with document and research requests.

Because of the substantive nature of all of the questioned paraprofessional time, K&E respectfully requests full reimbursement for the time entries shown on (<u>Response Exhibit C-1</u>).

---

[4]Linda also spent time working with Yarmuth Wilsdon Calfo ("YWC"), former counsel to Alan Stringer, who was an individual defendant in the criminal case until his death in 2007.  She worked with YWC to ensure that K&E captured all relevant materials for use at trial by K&E and the remaining individual defendants' counsel.

## RESPONSE EXHIBIT "C-1"

*(See attached Excel Spreadsheet.)*