UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | : | Chapter 11 |
|---|---|---|
| In re: | : | Case No. 01-1139 (JKF) |
| | : | Jointly Administered |
| W.R. GRACE & CO., *et al.*, | : | **Hearing Date: May 14, 2009, at 9:00 a.m.** |
| | : | **Response Deadline:  May 8, 2009** |
| Debtors-in-possession. | : | **Related Nos. 21428, 21489** |
| | : | **May 14, 2009 Agenda Item No. __** |

## OPPOSITION OF OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS TO LIBBY CLAIMANTS' MOTION (A) TO AMEND PLAN CONFIRMATION CASE MANAGEMENT ORDER AND (B) TO POSTPONE PHASE II OF THE CONFIRMATION HEARING

The Official Committee of Asbestos Personal Injury Claimants ("**ACC**"), by and through its undersigned counsel, hereby submits this opposition to the Libby Claimants' Motion (A) to Amend Plan Confirmation Case Management Order and (B) to Postpone Phase II of the Confirmation Hearing ("**Motion**"), which was filed by the Libby Claimants on April 27, 2009 [D.I. 21428].  Through their Motion, the Libby Claimants seek to compel the ACC to produce "detailed" statements of potential rebuttal arguments the ACC might employ in response to their Plan[1] objections, either by way of briefing or supplemental interrogatory responses.  They also seek to extend the time for conducting depositions, to postpone the Phase II Confirmation Hearing, and to impose upon the parties a nonconsensual briefing schedule for <u>Daubert</u> motions.  For the reasons set forth below, the Court should deny the Motion.

### PRELIMINARY STATEMENT

The Libby Claimants have lodged objections to the Plan that rest, in large measure, on the following false premise:  That their claims are meaningfully different and more valuable than

---

[1] Except for the term "Libby Claimants," and unless otherwise defined herein, all capitalized terms have the meanings given to them in the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated February 27, 2009 [D.I. 20872].

{D0152291.1 }

other Asbestos PI Claims, and therefore the Libby Claimants are entitled to a greater proportionate share of the Asbestos PI Trust's assets than the non-Libby claimants. To make their case for a greater share of the assets, the Libby Claimants assert that they have been improperly classified with other Asbestos PI Claims and that the Plan and the Asbestos PI TDP ("**TDP**") do not treat them equally, and therefore "discriminate" against them. Their assertions, however, ring hollow. The Libby Claimants hold unsecured asbestos personal injury claims based on diseases caused by exposure to asbestos that Grace put into the air. These claims are no different from the scores of thousands of similar claims in any way that matters for purposes of classification under the Bankruptcy Code. Moreover, the TDP entitles all Asbestos PI Claimants to the same payment percentage and the same procedural devices for having their claims reviewed, evaluated, and settled, or otherwise liquidated by the Asbestos PI Trust. For these reasons, the TDP does not treat the Libby Claimants disparately in violation of the equal treatment provisions contained in Bankruptcy Code §§ 524(g) and 1123(a)(4).

In support of their unfounded cries of "discrimination," the Libby Claimants served the Plan Proponents with their so-called "contention interrogatories" on December 23, 2008 ("**Interrogatories**").[2] In reality, the Interrogatories seek not the Plan Proponents' contentions, but rather their possible responses to the *Libby Claimants'* Plan objections. Specifically, the Interrogatories ask the Plan Proponents to describe "in detail" any information "responding" or "relating to," directly or "by inference," each of the Libby Claimants' Plan objections.[3] What is

---

[2] A copy of the Interrogatories is attached as **Exhibit 1**.

[3] The Interrogatories are overbroad and burdensome due, in part, to the aggressive use of the word "concerning," which is defined in the Interrogatories to mean "referring to, relating to, constituting, describing, evidencing, embodying, connected with, commenting on, responding to, showing, analyzing, reflecting, illustrating, depicting, summarizing, mentioning, recording, contradicting and rebutting, either directly *or by inference*." Ex. 1, at 2 (definition "D") (emphasis added).

more, they call upon the Plan Proponents to describe "what proof" they may offer at trial to support those responses and "what witnesses (expert or non-expert) will testify thereto."

Taken together, these Interrogatories are objectionable because, *inter alia*, they call upon the ACC to disclose contentions, evidence, and witnesses it might employ for purposes of impeachment or rebuttal – or to speculate on what its rebuttal case might consist of – in response to contentions, evidence, and witnesses that the Libby Claimants have not yet disclosed in support of their Plan objections. In other words, the Libby Claimants are demanding that the ACC and the other Plan Proponents "think out loud" about their rebuttal theories *before* the close of discovery and the deadline for trial briefs. It is unreasonable and improper to require the ACC to prematurely disclose the elements of its rebuttal case and to articulate theories not yet fully developed, absent a complete statement of the Libby Claimants' objections.

Notwithstanding the objectionable nature of the Interrogatories, the ACC went ahead and answered all of them, subject to its objections, and served those answers on the Libby Claimants on February 23, 2009. In those answers, the ACC rejected the Libby Claimants' contentions, and identified the witnesses and documents supporting its position. Since then, the ACC has given the Libby Claimants an enormous volume of discovery, including 342 pages of expert reports. Additionally, the ACC has supplemented its interrogatory answers, providing the Libby Claimants with more information about its potential witnesses. Moreover, the Libby Claimants recently deposed the ACC's designated Rule 30(b)(6) witness, Mr. Peter Lockwood, for over two hours, asking a total of 130 questions. Given the vast quantities of discovery provided to the Libby Claimants already, it is utterly disingenuous of them to argue that they are "in the dark"[4] and cannot understand the issues without "detailed" contentions from the ACC.

---

4   Motion ¶ 10.

Yet, the Libby Claimants have filed their Motion to compel the ACC to disclose *more detail* regarding its rebuttal and impeachment theories, which is tantamount to accelerating the ACC's deadline for filing its Phase II trial brief.[5]  And, even though the Libby Claimants want the ACC to file its trial brief earlier than scheduled, they are also seeking to *postpone* two events that are vital to confirming this Plan on a timely basis – the June 15, 2009 cutoff for depositions and the Phase II Confirmation Hearing.  Such an outcome might be advantageous for the Libby Claimants, but would be wholly unfair to the ACC and the Plan Proponents.  Far from being at the mercy of a "one-sided process," the Libby Claimants are actually trying to implement a one-sided process favoring them.

The Motion should be denied.  As explained below, the issues in dispute are adequately framed already.  There is no need to impose the burden and expense on the ACC, much less the estate, to speculate on what arguments it might use to rebut the Libby Claimants' Plan objections.  Moreover, the ACC's interrogatory answers are sufficiently responsive under the rules.  To the extent these answers harbor any informational gaps, such gaps have been filled through the combination of expert reports, supplemental interrogatory responses, and the Libby Claimants' recent deposition of Mr. Lockwood.  In short, the Libby Claimants have all the facts and data that can be given to them at this stage of the case.  They also have their own lawyers who are perfectly capable of reading the relevant legal authorities and applying them to distill the facts and data.  What the Libby Claimants really want is for the ACC to marshal the facts and data to connect the proverbial dots for them.  But the ACC has no obligation under the rules to do that.  The Court should thus reject the Libby Claimants' request to compel the ACC to

---

[5]   Under the Third Amended CMO, the ACC's Phase II trial brief is not due until August 7, 2009.

produce an "early trial brief," just as it should deny their request to prolong Phase II and to impose a nonconsensual Daubert briefing schedule, for the reasons explained below.

## ARGUMENT

### I.   The Issues to Be Resolved at Confirmation Are Sufficiently Framed

Despite the sound and fury of their arguments, the Libby Claimants lose sight of the core issue:  Whether the Plan is confirmable under §§ 524(g) and 1129 of the Bankruptcy Code. Thus, the focus should be on the Plan and what the Plan Documents provide.  The Plan Proponents filed the original version of the Plan and the Disclosure Statement on September 19, 2008.  Together with the exhibit book, the September 19th filing totaled 773 pages.  The Libby Claimants responded on October 17, 2008, with their 97-page disclosure statement objection.[6] Part of that objection challenged the Plan's confirmability, arguing that the Disclosure Statement could not be approved because the Plan was unconfirmable on its face.[7]  This sheer volume of paper alone belies the Libby Claimants' assertion that they are "in the dark" and unable to pursue discovery with respect to Plan issues.

After the Plan Proponents filed revised Plan Documents in November 2008, the Libby Claimants filed their preliminary Plan objections, which tracked in bullet-point fashion the Plan-related arguments asserted in their disclosure statement objection.  With the Plan and corresponding Plan objections on file, the issues were sufficiently framed to allow meaningful discovery to proceed.

---

[6]   See Libby Claimants' Objection to Debtors' Disclosure Statement for Joint Plan of Reorganization and Approval Motion, dated Oct. 17, 2008 [D.I. 19803].

[7]   This Court, of course, rejected those arguments, at least implicitly, when it approved the Disclosure Statement on March 9, 2009 [D.I. 20944].

Bankruptcy Rule 3020 provides that the filing of a Chapter 11 plan and objections thereto triggers a contested matter to which certain discovery rules under the Federal Rules of Civil Procedure apply. *See* Fed. R. Bankr. P. 3020(b)(1). In other words, the filing of plan objections adequately frames the issues to enable informed discovery to proceed. Nothing in the rules requires a plan proponent to file a reply brief in response to those objections, much less identify evidence the plan proponent may proffer in rebuttal to as-yet un-proffered evidence from the objector, which is what the Libby Claimants essentially seek. To read such a requirement into the rules would violate Bankruptcy Rule 1001, which provides that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001. Ordering the ACC, in effect, to file a reply brief, when trial briefs are already provided for under the Third Amended CMO,[8] would impose needless costs and burdens, and would likely prolong the whole confirmation process (as the Libby Claimants want), contrary to what Rule 1001 provides.

Moreover, the Libby Claimants have not yet provided their final witness list, nor have they furnished *their* trial brief in support of their Plan objections. Under the Third Amended CMO, expert discovery is not yet complete, final witness lists for Phase II are not due until June 15, 2009, and the Libby Claimants' trial brief is not due until July 13, 2009. Under these circumstances, it would be unreasonable to require the ACC to prematurely disclose the evidentiary elements of its as-yet unformulated rebuttal case, and to articulate theories not yet fully developed, prior to the close of discovery and a complete and final statement of the Libby Claimants' Plan objections, including the evidence they proffer in support of those objections.

---

[8] The term "Third Amended CMO" refers to the Third Amended Case Management Order Related to the First Amended Joint Plan of Reorganization, dated May 5, 2009 [D.I. 21544].

## II. The ACC Has Sufficiently Answered the Libby Claimants' Contention Interrogatories

On their face, the Interrogatories are 29 in number, but each of them consists of at least three subparts since each is framed in the following manner:

> Please state in detail [1] your contentions, [2] what proof you may offer at trial to prove such contentions and [3] what witnesses (expert or non-expert) that will testify thereto, concerning the Libby Claimants' objection that …."

Ex. 1, at 3-8. When all three subparts are added together, the sum total of interrogatories comes to 87 (*i.e.*, 29 multiplied by 3), which is more than treble the maximum limit permitted under Federal Rule of Civil Procedure 33(a)(1).

Apparently conscious of violating Rule 33 so overtly, the Libby Claimants "amended" their interrogatories to "make clear"[9] that Interrogatories 1 through 15 were really propounded by Libby Claimant Gayla Benefield, and Interrogatories 16 through 29 were really propounded by Libby Claimant Yoko Cannon, thus attaining the veneer of "technical" compliance with Rule 33. *See* Fed. R. Civ. P. 33(a)(1).[10] None of the interrogatories purports to deal with any discrete aspect of the claim asserted by Ms. Benefield or Ms. Cannon. They are exactly the same interrogatories propounded by the Libby Claimants as a whole on December 23, 2008.

Even though the Interrogatories are framed too broadly and violate the spirit, if not the letter, of Rule 33's numerical limit, the ACC went ahead and responded to *all* of them in good faith.[11] The ACC's answer to Interrogatory No. 2 serves as one example here. Interrogatory No. 2 states,

---

[9] Motion ¶ 3, n.4

[10] Nevertheless, when the three subparts are taken into account, the interrogatories per Libby Claimant still exceed the maximum limit.

[11] A copy of the ACC's objections and answers to these interrogatories is attached as **Exhibit 2**.

> Please state in detail your contentions, what proof you may offer at trial to prove such contentions and witnesses (expert and non-expert) that will testify thereto, concerning the Libby Claimants' objection that the TDP excludes legitimate claims of Libby Claimants … by creating disease criteria that are not consistent with standard medical practice.

Ex. 1, at 3.

After setting forth its objections to this interrogatory, the ACC answered as follows: "The ACC may call Dr. Laura Welch as an expert to testify that the TDP's medical criteria are consistent with standard medical practice." Ex. 2, at 7. By way of this answer, the ACC articulated its contention – *i.e.*, that "the TDP's medical criteria are consistent with standard medical practice." And it identified the expert witness supporting that contention – *i.e.*, Dr. Laura Welch, who provided the Libby Claimants with an expert report on that very issue on December 31, 2008. Using that information, the Libby Claimants can examine Dr. Welch's report and prepare for her deposition to explore the ACC's position further.[12] The same analysis pertains to all of the other interrogatory responses given to the Libby Claimants, including the ACC's supplemental interrogatory answers that have provided them with more information about the ACC's potential witnesses.[13] Additionally, the ACC has served the Libby Claimants with seven expert reports totaling 342 pages.[14] Taking all of its responses and expert reports into account, the ACC has responded to these interrogatories more than adequately.

---

[12] The Libby Claimants have noted Dr. Welch's deposition for June 3, 2009 [D.I. 21555].

[13] A copy of the ACC's supplemental objections and answers to the Interrogatories is attached as **Exhibit 3**.

[14] Copies of these experts reports are attached as **Exhibit 4** (Report of Dr. Laura Welch, dated Dec. 2008), **Exhibit 5** (Report of Dr. Laura Welch, dated Mar. 2009), **Exhibit 6** (Report of Dr. William Longo, dated Dec. 29, 2008), **Exhibit 7** (Report of Dr. Mark Peterson, dated Mar. 2008), **Exhibit 8** (Report of Dr. Samuel Hammar, dated Apr. 3, 2009), **Exhibit 9** (Report of Dr. Gail Stockman, dated April 2009), and **Exhibit 10** (Report of Dr. Gary Friedman, dated April 6, 2009).

The discovery rules do not require the ACC to restate the contents of Dr. Welch's report, or any other expert report, in its interrogatory answers. *See* SJ Berwin & Co. v. Evergreen Entm't Group, Inc., No. 92 Civ. 6209, 1994 WL 18567, *2 (S.D.N.Y. May 12, 1994) (stating that "a contention interrogatory is not simply a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery"). Nor do they require the ACC to provide what would be tantamount to a trial brief in advance of the trial brief deadline. *See* United States v. Maryland & Va. Milk Producers Ass'n, 22 F.R.D. 300, 301-02 (D.D.C. 1958) (sustaining objection to contention interrogatory that required the answering party to essentially "submit a skeletonized brief on the facts and the law"). Courts have consistently held that an answering party is under no duty to supply "a running narrative or description of the entire case, together with identifications of all knowledgeable persons and supporting documents." Hilt v. SFC Inc., 170 F.R.D. 182, 188 (D. Kan. 1997); *see also* Hiskett v. Wal-Mart Stores, Inc., 180 F.R.D. 403, 404 (D. Kan. 1998). Indeed, interrogatories seeking as much have been found to be "unduly burdensome *as a matter of law* and an abuse of the discovery system." Grynberg v. Total S.A., No. 03-CV-01280, 2006 WL 1186836, *7 (D. Colo. May 3, 2006) (emphasis added).

Moreover, an answering party need not divulge possible *rebuttal* arguments to the *interrogator's* contentions prior to the close of discovery, which is precisely what is being demanded of the ACC here. In United States ex rel. Tyson v. Amerigroup Illinois, Inc., 230 F.R.D. 538 (N.D. Ill. 2005), the plaintiffs served a contention interrogatory on the defendants, seeking their counter-theory to the plaintiffs' theory of damages. *Id*. at 539-40. The plaintiffs then moved to compel the defendants to respond to that interrogatory, which the court denied. Had the defendants asserted their own counterclaim for damages, the court noted, there may have been a plausible basis for the plaintiffs' motion to compel. But where, in advance of expert

discovery, the plaintiffs sought to extract a damages theory "that is to be used *essentially for rebuttal*," the court found the plaintiffs' motion to be without merit. *Id.* at 544-45 (emphasis added). The court thus refused to compel the defendants to "arbitrarily select one or to speculate which [rebuttal] theory [they] might ultimately choose, simply because they have been asked to do so." *Id*. at 545.

Here, as in Tyson, this Court should reject the Libby Claimants' gambit to obtain a preview of the ACC's rebuttal or impeachment arguments. Discovery in this case is not yet complete. The Libby Claimants have not yet served their sur-rebuttal experts reports. Final witnesses lists have not been exchanged. The deadline for objectors to file their Phase II trial briefs has not yet arrived. Given the posture of this case, the ACC neither has a complete statement of the Libby Claimants' objections nor a full understanding of the evidence they will seek to introduce at the Confirmation Hearing. Under these circumstances, it would be inappropriate to compel the ACC to serve up "detailed" descriptions of its rebuttal case or to articulate counter-theories not yet fully developed. The Court should thus deny the Motion.

**III.    The Libby Claimants Are Not "in the Dark" with Respect to the Matters at Issue**

Contrary to their assertions, the Libby Claimants are not "in the dark" either with respect to the ACC's position or the facts upon which the ACC intends to rely at the Confirmation Hearing. The Plan now numbers 143 pages, and the approved Disclosure Statement runs 197 pages. The accompanying exhibit book totals about 894 pages when the Plan (which is Exhibit 1 thereto) is excluded from the calculation. As noted, the ACC alone has served the Libby Claimants with seven expert reports. Additionally, in response to document requests, the Debtors have uploaded 1,901 documents to the virtual data-room, to which the Libby Claimants and other Plan objectors have access.

Furthermore, the Libby Claimants recently examined the ACC's designated 30(b)(6) witness, Mr. Lockwood, on issues relating to their Plan objections for more than two hours. The ACC even brought back Mr. Lockwood for a second day of questioning, just so the Libby Claimants and other objectors could finish their examinations. At the deposition, the Libby Claimants' counsel asked, and Mr. Lockwood answered, a total of 130 questions. Given the vast abundance of information already available to the Libby Claimants, they cannot be heard to argue that the ACC is keeping them "in the dark" and hampering their efforts to prepare for the Confirmation Hearing.

## IV. An Extension of the CMO Schedule Is Neither Warranted Nor Appropriate

The schedule established under the Third Amended CMO is the product of painstaking negotiations among the Plan Proponents and the objectors. The Court should not allow the Libby Claimants to upset this carefully-crafted schedule through their request to extend the time for depositions and to postpone the Phase II Confirmation Hearing.

Furthermore, if the Libby Claimants are facing actual time constraints in the discovery process (which they are not), these are constraints of their own making. The ACC and the other Plan Proponents served their interrogatory responses on the Libby Claimants on February 23, 2009. The Libby Claimants then waited *weeks* before their counsel sought a meet-and-confer on those responses, which did not occur until March 27, 2009. Then the Libby Claimants waited *another month* before they filed their Motion on April 27, 2009. Such conduct cannot be countenanced. The Court should reject these requested extensions and preserve the schedule embodied in the Third Amended CMO.

## V. The Libby Claimants' Request for a Court-Imposed Daubert Briefing Schedule Is Premature

The issue of a <u>Daubert</u> briefing schedule is simply not ripe for the Court to consider at this time. As a general matter, the ACC does not oppose setting up a briefing schedule for <u>Daubert</u> motions, provided such briefing occurs after the close of discovery. No proposed schedules have been exchanged among the litigants yet. The Plan Proponents and the objectors should have an opportunity to discuss any proposed schedules before invoking the Court's assistance. The Court should thus deny the Libby Claimants' request for a briefing schedule pending further discussions among the litigants.

**[Remainder of page intentionally left blank]**

## CONCLUSION

For all the reasons stated above, the ACC respectfully requests that the Court deny the Motion and grant to the Plan Proponents such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

**CAMPBELL & LEVINE, LLC**

*/s/ Mark T. Hurford*
Marla R. Eskin (No. 2989)
Mark T. Hurford (No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900
meskin@camlev.com
mhurford@camlev.com
Telefax: (302) 426-9947

**CAPLIN & DRYSDALE, CHARTERED**
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125
Telefax: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
Jeffrey A. Liesemer
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Telefax: (202) 429-3301

*Counsel for the Official Committee
of Asbestos Personal Injury Claimants*

Dated: May 8, 2009