# <u>EXHIBIT 10</u>

## TEXAS LUNG INSTITUTE

P O Box 42439
Houston, Texas 77242-2439
Phone (713) 805-1815
Fax (713) 952-3730
E-mail: expertmd@aol.com

April 6, 2009

Mr. Bernard S. Bailor
Caplin & Drysdale
One Thomas Circle, Northwest, Suite 1100
Washington, D.C.  20005

**RE:   W.R. Grace and Company, Case No. 01-1139 (JFK) U.S.
        Bankruptcy Court for the District of Delaware**

Dear Mr. Bailor:

This report is prepared in my capacity as a medical expert at the request of
Caplin and Drysdale Attorneys in anticipation for possible use in litigation.

<u>Documents Reviewed</u>

I am in receipt of your letter of March 17, 2009, with the enclosed:

    1.      Expert Report by Dr. Alan C. Whitehouse
    2.      Expert Report by Dr. Arthur Frank
    3.      Supplemental Expert Report of Dr. Alan C. Whitehouse

Likewise, I am in receipt of your letter of March 25, 2009 with 3 CDs
enclosed which were titled:

    1.      Whitehouse CT & CHX Readings, 24 clients
    2.      Mortality Study 3-14-09

3.    Whitehouse 123 Patient Medical Records 3-14-09

In response to my request, on March 28, 2009 I received a CD entitled Death Date Order (2007) which contains a chart and summary in regard to certain deceased persons. Death certificates in regard to certain persons are also contained on the CD. I have reviewed the contents of this CD.

I have received an email from your offices with the attached trial testimony of Dr. Allen Whitehouse dated March 4, 2009 in the matter of The United States vs. W.R.Grace et.al. I have reviewed this testimony.

I have reviewed certain prior depositions of Dr. Whitehouse related to the Grace litigation.

I have reviewed references contained in the bibliographies generated by Dr. Whitehouse or Dr. Frank attached to various reports which they have authored.

I have reviewed other relevant medical literature and texts.

Additional documents reviewed:

Whitehouse:  "Asbestos-Related Pleural Diseases Due to Tremolite Associated With Progressive Loss of Lung Function:  Serial Observations in 123 Miners, Family Members, and Residents of Libby, Montana" *Am J Ind Med* 46:219-225 (2004) ("Progression Study").

A review of all articles identified in the bibliography of the "Progression Study".

Whitehouse et.al.   " Environmental Exposure to Libby Asbestos and Mesotheliomas" Am. J. Ind. Med (2008) pg. 1-4 ("Mesothelioma Study")

A review of articles identified in the bibliographies for the "Mesothelioma Study".

 Expert Disclosure Report, Alan C. Whitehouse, M.D.  United States of America vs. W.R. Grace and Company, September 25, 2005.

A review of articles and textbooks identified in the bibliography of the Whitehouse Expert Disclosure Report.

Review of numerous documents in regard to the ATSDR studies.

Review of the "Libby Studies" which have been identified by Dr. Whitehouse.

Review of certain medical records in regard to patients evaluated by Dr. Whitehouse and/or the CARD clinic and Dr. Black.

Review of articles from the peer – reviewed medical literature or medical textbooks pertinent to the medical issues involved in the Grace litigation with emphasis on those issues raised by Dr. Whitehouse, Dr. Arthur Frank and in the "Libby Studies".

**Documents not yet received:**

It is noted that Dr Whitehouse has cited multiple CDs in his Expert Report (2008) or Supplemental Expert Report (2009) which he has reportedly provided.  None of these CDs have been provided for my review at this time. Likewise he has provided a list of exhibits which have not yet been provided to me. Per our discussions, it is probable that these items have not yet been received by your office. It is to be noted that the Whitehouse Supplemental Expert report was dated 3/12/09 and the "Mortality Study 3/14/09".  Please provide all exhibits and CDs identified by Dr. Whitehouse...

This report is being generated in response to a deadline of 4-06-09. Given the absence of data referenced by Dr. Whitehouse in his recent reports, this report and the opinions contained may be supplemented or revised at a later date, should additional pertinent information be received from any source.

**Purpose of this review:**  This review is conducted for the purposes of:

1.    Determining the reliability of the methodology employed by Dr. Alan C. Whitehouse in the diagnosis of asbestos-related disease among individuals whom he claims have been exposed to "Libby asbestos".

3

2.      Determining whether Dr. Whitehouse has adhered to established scientific principals, standards and guidelines of the American Thoracic Society, the American Medical Association, the ILO, The American Medical Association, Agencies of the State of Montana involved in Asbestos Screening or Surveillance,  and other national professional societies upon which he has relied or cited in his "references". Special emphasis is placed on adherence to the Standards, Guidelines or Official Statements that establish criteria or accepted methodologies for the purpose of :

(a)  Diagnosis of asbestosis and other asbestos related diseases

(b)  Interpretation of chest radiographs for pneumoconiosis,

(c)  Performance of pulmonary function testing

(d)  Interpretation of pulmonary function testing

(d)  Methodologies employed in the design of the "Progression Study"

3.      Determining the medical and scientific reliability of publications authored by Dr. Whitehouse concerning the health effects of Vermiculite, Tremolite or "Libby asbestos".

4.      Determining the consistency between Dr. Whitehouse statements and opinions, and the statements or opinions set forth in peer review medical literature, findings or opinions promulgated by Federal or State agencies, or other authorities upon which Dr. Whitehouse has relied.

5.      Determining the medical or scientific reliability of occupational and exposure histories obtained by Dr. Whitehouse based on Guidelines, Standards or other criteria documents upon which he has relied or otherwise cited in his references.

6.      Determining the medical or scientific reliability of Dr. Whitehouse's claims that disease caused by "Libby Asbestos" or

4

asbestos exposures in Libby, Montana represent a unique disease entity which is distinguishable from asbestos related diseases caused by other asbestos fiber types which have been documented to be fibrogenic.

7.      Determining whether diseases or injury caused by "Libby Asbestos" differs by geographic location -when pathways of exposure are similar.

8.      Determining the medical or scientific reliability of factual statements which Dr. Whitehouse has made in his publications, depositions and trial testimony.

9.      Determining the reliability of the medical prognoses which Dr. Whitehouse has made for those exposed to "Libby Asbestos"

10.      Determining the reliability of Dr. Whitehouse diagnosis of asbestos related diseases and whether his actual performance and interpretations of chest x-rays, pulmonary function studies, physical examinations, medical, occupational and exposure histories are performed in an acceptable manner and free from bias.

## Opinions:

1.      It is my opinion that Dr. Whitehouse's "Progression Study" is flawed and is unreliable for the purposes of claiming that individuals alleged to have exposure to Vermiculite and Tremolite in Libby, Montana have a unique disease caused by asbestos.

2.      It is my opinion that the "Progression Study" is unreliable for the purpose of opining an unusual rate of progressive loss of lung function as a result of any asbestos-related disorder alleged to be attributable to exposure to Vermiculite/Tremolite in Libby, Montana.

3.    It is my opinion that certain of the representations or opinions in the Progression Study are inaccurate, misleading, and are not supported by fact.

4.    It is my opinion that the results of the progression study are not applicable to the general population of Libby Montana or any other population or cohort.

5.    It is my opinion that Dr. Whitehouse did not adhere to American Thoracic Society (ATS) criteria in the design of the "Progression Study"

6.    It is my opinion that the alleged impairment of lung function in the progression study reflects flaws in the design of the study, the case selection for the study and the performance of the pulmonary function tests rather than physiologic changes in the patient population attributable to asbestos.

7.    It is my opinion that the only distinction which Dr. Whitehouse makes between asbestos related diseases caused by "Libby Asbestos" and other forms of asbestos is the effect on lung function. Dr. Whitehouse relies on his reported results in the "Progression study" to reach this conclusion.

8.    It is my opinion that the "Progression Study" is so flawed as to be scientifically unreliable. It is my opinion that it should not be relied upon by any physician – including Dr. Whitehouse.

9.    It is my opinion that because the "Progression Study" is unreliable, Dr. Whitehouse's theory of a unique disease due to "Libby Asbestos" is without scientific basis and should be disregarded.

10.    It is my opinion that the methodology used by Dr. Whitehouse in the diagnosis of asbestosis is flawed and not consistent with the criteria set forth by the ATS 2004 which he claims to follow.

11.    It is my opinion that Dr. Whitehouse does not follow the established criteria for systematic interpretation of pneumoconiosis x-rays as set forth by the ILO which he has cited in his reports.

12.    It is my opinion that Dr. Whitehouse's actual readings and
        interpretations of chest x-rays is flawed and fails to consider other
        more probable cause for radiographic findings.

13.    It is my opinion that Dr. Whitehouse's medical or scientific
        opinions differ materially from the authoritative sources which he
        has identified in the bibliographies attached to his publications and
        reports.

14.    It is my opinion that Dr. Whitehouse has failed to follow the ATS
        criteria requiring the exclusion of other more probable cause for
        radiographic changes which he opines to be attributable to
        asbestos.

15.    It is my opinion that many of Dr. Whitehouse's clinical practices
        and performance and interpretation of pulmonary functions differ
        from the criteria set forth in the American Medical Association
        Guide to the Evaluation of Permanent Impairment 5TH edition
        which he has identified as a reference in his Expert Report.

16.    It is my opinion that Dr. Whitehouse has failed to demonstrate a
        scientific basis for alleging that individuals exposed to "Libby
        Asbestos" products in Libby Montana would have any different
        disease or risk of progression than individuals exposed to " Libby
        Asbestos " in other geographic locations.

17.    It is my opinion that Dr. Whitehouse failed to include the common
        pulmonary function measurements used to detect airway
        obstruction in his "Progression Study". This is contrary to criteria
        set forth by the ATS in published standards on the diagnosis of
        COPD which Dr. Whitehouse has cited in his reports. Likewise it
        is contrary to the methodology employed in the American Medical
        Association Guide to the Evaluation of Permanent Impairment 5TH
        edition Furthermore it is contrary to the methodology employed by
        the American Thoracic Society in their Official Statements both
        for determining impairment due to respiratory disease and the ATS
        statement on impairment in asthma. Failure to include this data
        obscures or hides the impact of smoking. Failure to perform post

bronchodilator studies as required AMA 5th ed. and ATS would prevent the detection of reversible airway obstruction from numerous causes.

18.    It is my opinion that Dr. Whitehouse has not calculated the impact of smoking on the loss of lung function or causation of lung cancer. This methodology is inconsistent with that used by Amandus, Lockey and others who have published on Libby cohorts and whose work has been referenced by Dr. Whitehouse.

19.    It is my opinion that Dr. Whitehouse has over estimated the number of non malignant deaths due to "Libby Asbestos."

**Summary and Opinion:**

Pleural plaques and diffuse pleural thickening have long been recognized as the most common radiographic findings following asbestos exposure. The reason they are the most common findings is that they occur at far lower levels of exposure than does asbestosis. All fiber types of asbestos are recognized as causes of these pleural abnormalities.

Typically pleural plaques are not associated with impairment of lung function. Diffuse pleural thickening may or may not be associated with impairment of lung function and is distinct from pleural plaques. The American Thoracic Society has recognized this distinction since 1986. The ILO's criteria for the diagnosis of diffuse pleural thickening require blunting of a costophrenic angle. Quantification of pleural abnormalities in a systematic fashion is described in detail by the ILO. Dr. Whitehouse has ignored these criteria in his description and computation of degree of pleural abnormality.

The fact that pleural plaques and pleural thickening progress with time has long been accepted for all fiber types and was widely reported prior to Dr. Whitehouse's contributions to the medical literature. Progression of pleural change over time is expected – not unique. Dr. Whitehouse has failed to document that any significant change over time has occurred in the extent or thickness of the alleged pleural changes from a radiographic

8

standpoint. Likewise, there is no proof of any pathologic change unique from other cases of asbestos related pleural disease. Dr. Whitehouse claim of aggressive progression of pleural disease in the absence of proof of radiographic or pathologic change in the extent of the pleural abnormalities over the term of the study period is interesting.

Dr. Whitehouse claims a previously unreported degree of pulmonary function changes, based on an unproven methodology, utilizing studies performed by a variety of laboratories employing different equipment, different predicted values and failing to adhere to established medical standards for the performance of the studies. Given the above, the failure of radiographic or pathologic progression paralleling such changes raises the question of the reliability of Dr. Whitehouse's findings from "interesting" to disturbing.

The above is compounded by the fact that there are numerous causes other than asbestos for the appearance of pleural thickening on imaging studies.  Dr. Whitehouse has not provided any evidence of any case where the diagnosis of asbestos related pleural disease was eliminated in favor of other more probable cause. Even more disturbing is the absence of opinion that non asbestos related causes for pleural abnormality may cause or contribute to the claimed reduction of lung function.

Dr. Whitehouse unique approach to asbestos related diseases is not limited to lung function and pleural abnormalities.  The methodology which he employs in diagnosing asbestosis is inconsistent with the Guidelines or Standards upon which he claims to rely. Specifically Dr. Whitehouse diagnoses "asbestosis" on the basis of pleural plaques in the absence of interstitial fibrosis. He claims to employ the ATS – 2004 diagnostic criteria for diagnosis and management of non-malignant asbestos related disease. That Official Statement stipulates that the term asbestosis is based on interstitial fibrosis – not pleural changes, This position has been held by the ATS since 1986 when pulmonary physicians (such as Dr. Whitehouse) were admonished to limit the term asbestosis to interstitial fibrosis caused by asbestos. Physicians were informed as to the difference in etiology, pathology and prognosis between pleural plaques and interstitial fibrosis and the perils of misusing the term.

It is my opinion that all of Dr. Whitehouse diagnoses of "asbestosis" are unreliable, where such diagnosis is based on his perceived presence of pleural abnormality in the absence of bilateral interstitial fibrosis in a distribution consistent with asbestosis. A reviewer can not tell whether Dr. Whitehouse is referring to pleural plaque or interstitial fibrosis on the basis of the diagnosis alone. The potential magnitude of this problem should be apparent from the Peipens study where only 1% of the thousands of Libby patients screened were found to have interstitial changes on chest x-ray.

of reliability of the diagnosis of asbestosis are not based solely on the terminology Dr. Whitehouse has employed. Issues concerning adequacy of exposure, exclusion of other more probable cause for increase in interstitial markings, and reader error in his interpretation of the chest x-rays are likewise critical issues.

It is my opinion that the diagnosis of asbestosis by Dr. Alan Whitehouse does not have the same degree of reliability as that made by other physicians who have properly applied nationally recognized Standards, Guidelines or diagnostic criteria.

<u>Bases for My Opinions</u>

The opinions set forth in this report are based on my knowledge, training and experience as a physician who has studied asbestos related disease and treated asbestos disease patients for the past 36 years. I was honored to be a consultant to the American Bar Association (ABA) in an attempt to draft medical criteria for Federal Asbestos legislation. I have been retained as a medical consultant in an asbestos Bankruptcy with the consent of all parties. I serve as a consultant to the Trustees in several Bankruptcies. My role as a medical consultant has included defining scientifically sound medical criteria, assessing the merits of claims and evaluating the medical or scientific reliability of the methodologies employed by various physicians.

I have evaluated patients for asbestos related diseases at the request of both plaintiffs and defendants. I have testified by deposition and at trial at the request of both plaintiffs and defendants.

 I have based my opinions on  my review of :

a.  Documents Reviewed (see pages 1,2,3)

b.   all reports, depositions, affidavits, documents and literature authored or referenced by Dr. Alan Whitehouse in regard to the W.R. Grace litigation.

    1.  all report medical literature cited in my report including but not limited to the 2004 ATS Statement on the Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos, the 1986 ATS Statement on the Diagnosis of Nonmalignant Diseases Related to Asbestos, the 2000 ILO International Guidelines for the Interpretation of Radiographs due to Pneumoconiosis, the American Medical Association Guidelines for the Evaluation of Permanent Impairment (4th, 5th and 6th edition and the documents identified in their bibliographies), various ATS Statements establishing scientifically accepted criteria for lung function testing and interpretive strategies

In addition to the ATS Statements  I am relying on the ATS/ERS Statements in regard to lung function testing and interpretation that serve as the most recent updates in regard to the above.

c.  Review of the "Libby Studies"

d.  Review of those exhibits provided by Dr. Whitehouse

e.  Whitehouse mortality study

f.  Peer reviewed medical literature in addition to that cited by Dr. Whitehouse.

g.  Review of certain ATSDR Studies and documents

    h. Review of certain patient records from Dr. Whitehouse, Dr. Black and the CARD clinic practice – including but not necessarily limited to the 123 patients in the "Progression study"

As noted earlier in this report, Dr. Whitehouse has identified exhibits, CDs and other supporting evidence which has not yet been received by your office. Upon receipt of same, I will issue a supplemental report should that be necessary.

Exhibits:

A copy of my CV is attached as Exhibit 1.  That CV lists any articles I have authored in the past 10 years.

A copy of  power point presentations that I may use to describe my analyses will be provided as Exhibit 2.

A copy of an invoice referencing my charges for this report is attached as Exhibit 3.

A list of the cases in which I have testified as an expert at deposition or trial within the past 4 years will be provided as Exhibit 4.

Respectfully submitted,

Gary K. Friedman M.D.
GKF/gkf

*Mr. Bernard Bailor*
*April 3, 2009*                                                                                    *Page 13 of 13*

# CURRICULUM VITAE

## GARY K. FRIEDMAN, M.D.

CONTACT
INFORMATION:

Texas Lung Institute
9225 Katy Freeway Ste 404
Houston, Texas 77024
Phone: 713 932 8664
Fax:    713 464-2976
Email:  expertmd@aol.com

## EDUCATION:

College:
1961-1964

Lamar University
Beaumont, Texas
Bachelor of Science - Biology and Chemistry
Graduated 1964

College Honors:

Graduated cum laude
President of Student Body 1963-1964

College Societies:

Who's Who Among Students in American Universities & Colleges
Blue Key National Honor Society
Beta Beta Beta National Honor Society for Biology

Medical Education:
1964-1968

Baylor College of Medicine
Houston, Texas

Medical School Honors:

Graduated M.D., Cum Laude 1968
A.O.A. Medical Honor Fraternity
1968 Texas State Board of Medical Examiners
Honor Roll (Second Highest Score on State Licensure Exam)

Postgraduate Training:

1968-1969: Internship-Internal Medicine, Methodist Hospital
Houston, Texas

1969-1971: Residency-Internal Medicine
University of California School of Medicine at San Francisco

-2-

1

1971-1972: Fellowship in Pulmonary Disease
Baylor College of Medicine    Houston, Texas

1981-1982: Residency - Occupational Medicine
University of California School of Medicine at San Francisco

SPECIALTY BOARDS:    Board Certified American Board of Internal Medicine - 1971

Board Certified American Board of Preventive Medicine -
Occupational Medicine   February 4, 1985

Department of Health and Human Services,
National Institute for Occupational Safety and Health –
"B" Reader   October 1984-December 1988

Certified Medical Review Officer (MROCC), 1994-2003

PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 2007 – present | Consultant – DII Silica Trust |
| 2007 - present | Consultant -  Kaiser Silica Trust |
| 2006-present | Texas Lung Institute: Consultant Pulmonary and Occupational Medicine |
| 2006- present | TOMI – Physician and Consultant |
| 1973-2005 | Private Practice - Internal Medicine and Diseases of the Chest - Occupational Medicine |
| 1987-1994 | Director Occupational and Environmental Medicine - Pulmonary Division - U.T. Medical School Houston, Texas |
| 1973-1989 | Memorial City General Hospital Director, Inhalation Therapy and Pulmonary Function Laboratory |
| 1973-1988 | Sam Houston Memorial Hospital Director, Inhalation Therapy and Pulmonary Function Lab |

2

| | |
|---|---|
| 7/1985-1989 | West Houston Medical Center<br>Director, Inhalation Therapy and Pulmonary Function Lab |
| 1985-1989 | Memorial Hermann Memorial City Medical Center<br>Director, Department of Hyperbaric Medicine |
| 1986-1988 | Katy Community Hospital<br>Director, Inhalation Therapy and Pulmonary Function Lab |
| 1988-1993 | Director, Occupational and Environmental Medicine Clinic and<br>Toxic Fume Inhalation Center - Hermann Hospital |
| 1994 - 1996 | Chief Consultant - Occupational Medicine - Columbia/HCA<br>Health Care Corporation - Southwest Division |

MISCELLANEOUS:    National Consultant to Lifemark Cardiopulmonary Division, 1981-1982

Houston Medical Strike Force - Anti-terrorism Unit - 1998-2004 (Houston Fire Department)

Consultant Poison Control Industrial Toxicology

Medical Consultant - Owens Corning
National Settlement Program - 1999 – 2001
Medical Consultant to OC Bankruptcy - 2002

Consultant ABA Commission on Asbestos – 2003

ELECTED OFFICES:    Memorial City General Hospital
Medical Staff Vice President, 1979

Memorial City General Hospital
Chief of Staff, 1980

Harris County Medical Society - Western Branch
1978 - Vice President
1979 - President - Elect and Executive Committee
1980 - President

3

Harris County Medical Society, 1980 Executive Board

President - Columbia Occupational Health Network 1994-1996

COMMITTEES:                 Chairman, Department of Internal Medicine
                            Memorial City General Hospital, 1976

                            Chairman, Utilization Review Committee, 1977

                            Chairman, Credentials Committee, 1982

                            Member, Executive Committee
                            Memorial City General Hospital

                            Member, Emergency Room Committee, 1982-1983

                            Member, Public Relations Committee
                            Harris County Medical Society

                            Member, Committee on Water and Air Pollution
                            Harris County Society, 1980

                            Pulmonary Care Task Force
                            Hermann Hospital, 1988

                            ACOEM - Committee on the Promotion of Occupational &
                            Environmental Medicine, 1995-2002

                            Safety Committee Memorial Hospital - Memorial City, 1997-1998

                            American Thoracic Society Assembly on Environmental &
                            Occupational Health

PROFESSIONAL ORGANIZATIONS:

Harris County Medical Society

Texas Medical Association

Texas Thoracic Society

4

American Thoracic Society

American College of Occupational and Environmental Medicine

Diplomate American College of Physicians


ACADEMIC POSITIONS:

Assistant Clinical Professor, Department of Medicine, University of Texas Health Science
Center, 1985-Present

Director, Occupational and Environmental Medicine, Pulmonary Division, Department of
Medicine, University of Texas Health Science Center at Houston, 1987-1994,  2008 - present

Adjunct Associate Professor, University of Texas Health Science Center at Houston, School of
Public Health, 1990-Present

UTSPH – Occupational Medicine Resident Advisory Committee – 1990-Present

UTHSC – UT Medical School – Faculty Senate – 2006-Present


PUBLICATIONS:

Raymond C. Perkins, Ronald K. Scheule, Raymond Hamilton, Glen Gomes, Gary Friedman and
Andrij Holian: "Human Alveolar Macrophage Cytokine Release in Response to In Vitro and In
Vivo Asbestos Exposure; Experimental Lung Research 19:55-65 (1993), Taylor & Francis

Chapter 7, "Clinical Diagnosis of Asbestos-related Disease" in Asbestos: Risk Assessment,
Epidemiology, and Health Effects, edited by Ronald F. Dodson and Samuel P. Hammar, CRC
Press, Taylor & Francis Group, LLC, Boca Raton, FL, 2006.


CHARITABLE BOARDS:

Ron Stone Foundation

Washington-On-the-Brazos State Park Association

Washington County Fair – Youth Scholarship

LICENSED TO PRACTICE MEDICINE:

Texas          #D5004

Texas Lung Institute, P.A.
P O Box 42439
Houston, TX 77242-2439

Tax ID No.: 20-4313150

Date 4/5/2009
Invoice # 49

**Bill To**

Bernard S. Bailor
Caplin & Drysdale
One Thomas Circle, NW, Suite 1100
Washington, DC 20005

**Ship To**

Terms

| | |
|---|---|
| Ship Date | 4/5/2009 |
| Due Date | 4/5/2009 |
| Other | |

| Item | Description | Qty | Price | Amount |
|---|---|---|---|---|
| Consulting | W. R. Grace & Company, Case No. 01-1139 (JFK) U.S. Bankruptcy Court for the District of Delaware March 17, 2009 - March 31, 2009 | 41.5 | 500.00 | 20,750.00 |

THANK YOU!

| | |
|---|---|
| Total | $20,750.00 |
| Payments/Credits | $0.00 |
| Balance Due | $20,750.00 |

*Texas Lung Institute, P.A.*
expertmd@aol.com

713-805-1815
Fax 713-952-3730

DR. GARY FRIEDMAN
TRIALS AND DEPOSITIONS – Revised 12/18/08 2005

Edward Y. Robinson, Jr., for Jose Berlanga at Gardere, Wynne, Sewell – Cause No.
10823*RM00; Clyde A. Green and Marcia A. Green, et al. vs. Air Products and
Chemicals, Inc., et al.; in the District Court of Brazoria County, 149th Judicial District

Theodore E. Cullison, for Jeff Mundy at Mundy and Singley – Aria Cullison,
Individually and as Representative of the Estate of Theodore Cullison, Deceased, v.
American Standard, et al.; Cause No. GN-301263, in the 53rd Judicial District of Travis
County, Texas

Ray Charles Redmon, for Larry Adams at Kacal, Adams & Law – No. 2003-18385;
James Reed, et al vs. Aearo Company, et al; in the 55th Judicial District Court of Harris
County, Texas

Hughie Robinson, for James Ferrell at RG Taylor – Cause No. 2004-57631; Hughie
Robinson and Nina Robinson vs. Dow Chemical Company, et al; in the 11th Judicial
District Court of Harris County Transferred from Cause No. 30703; Hughie Robinson
and Nina Robinson vs. Dow Chemical Company, et al; in the 239th Judicial District
Court of Brazoria county

Paul Kovacevich, for James Ferrell at RG Taylor II, PC & Assoc – No. 2004-452409-7;
Joan Kovacevich, Individually and as Administrative of the Estate of Paul Kovacevich,
deceased vs. Beazer East, Inc., et al. Roy Klaus, for Jose Berlanga at Gardere – Cause No.
GN20-4184;

Larry A. Earles, Jr., et al. v. Ametek, Inc., et al., in the 353rd Judicial District court of
Travis County, Texas 2006 "video depo" – 09/06 Joyce Myers, for Bryan Blevins at
Provost Umphrey – (2005) Cause No. B-150, 374 (AU);

Shirley Melvin, Independent Administratrix of the Estate of Joyce Myers, et al vs.
Pittsburgh Corning Corporation, et al; in the 60th Judicial District Court of Jefferson
County, Texas (2006) Cause No. B-150, 374-BE; Shirley Melvin,…… 2007 Don Phipps,
for Pete Andarsio – Cause No. 2006-30794;

Don Phipps, et al. vs. AP Green Refractories, et al. in the District Court of Harris county,
Texas, 11th Judicial District Transferred from Cause No. B-150,374-BT; Don Phipps, Et
al. vs. AP Green Refractories, et al.; in the District Court of Jefferson County, Texas,
60th Judicial District

Willis N. Whisnant, Jr., for Reaud, Morgan & Quinn – Cause No. E-159,183-Q; Willis N.
Whisnant, Jr., Deceased, et al vs. E.I. du Pont de Nemours and Company, et al; In the
172nd Judicial District Court of Jefferson County, Texas