# Exhibit E

# Dr. John E. Parker Rebuttal Report April 6, 2009 W.R. Grace Bankruptcy Case

## Introduction

I was asked by counsel for W.R. Grace to review the medical criteria discussed in Dr. Laura Welch's December 2008 expert report. I was also asked to review the December 2008 expert reports of Dr. Alan C. Whitehouse and Dr. Arthur Frank, and the deposition of Dr. Alan C. Whitehouse from March 19, 2009. This report will (1) address the medical criteria proposed by Dr. Welch; (2) offer rebuttal opinions to those expressed by Dr. Whitehouse in his expert report and deposition; and (3) offer rebuttal opinions to Dr. Frank's expert report.

In his report, Dr. Whitehouse provides a rudimentary description of the patho-biology of lung and pleural injury from asbestos fiber exposures. This rudimentary discussion either over-simplifies asbestos lung injury or highlights Dr. Whitehouse's lack of sophistication in understanding the complexity of asbestos related disease. There is an extensive epidemiologic literature that describes and predicts human health effects from asbestos exposures. This knowledge accumulated over many decades needs to remain the guiding principle for evaluating disease in Libby, as ultimately, asbestos related disease is driven by type of fiber exposure, fiber toxicity, intensity and duration of exposure, and latency. There are dose-response relationships for pleural disease, parenchymal disease, and the two major cancers: mesothelioma and lung cancer.

## Background

I am currently a Professor and Chief of Pulmonary and Critical Care Medicine at West Virginia University Health Sciences Center. From 1985 through 1998, I worked in a number of capacities for the National Institute for Occupational Safety and Health ("NIOSH"). I was the Chief of the Examination Processing Branch at the Division of Respiratory Disease Studies for NIOSH from July 1991 through August 1998. In this position, I provided oversight for the NIOSH Coal Workers' Respiratory Health Program as well as the NIOSH B-reader program and served as faculty for the American College of Radiology View-box Seminar on Pneumoconiosis. Additionally, I was the co-author of NIOSH Hazard Alerts regarding toxicity of silica in sand blasters, rock drillers, and construction workers. I also developed a cooperative agreement with the Finnish Institute for Occupational Health for studying the health effects of asbestos on Russian asbestos miners and millers. Concurrently while serving as Chief of the Examination Processing Branch, I was also the Acting Chief of the Clinical Investigations Branch and the Acting Chief of the Epidemiological Investigations Branch at the Division of Respiratory Disease Studies for NIOSH. I also served as the Chief of the Protective Technology Branch of the Division of Safety Research for NIOSH. In this capacity, I supervised NIOSH research in workplace respiratory protection. Recently, I offered extensive expert testimony in *In re Silica MDL* about the proper methods for conducting ILO classifications of chest radiographs or B-readings of chest x-rays, generating a differential diagnosis of chest radiographic abnormalities, as well as the dual-occurrence of both asbestosis and silicosis in the same individual. I also testified in June of 2003 before the U.S. Senate Judiciary Committee while they were

"Lung Cancer 1 (Level VII) requires (1) Diagnosis of a primary lung cancer plus evidence of an underlying bilateral asbestos-related nonmalignant disease, (2) six months Grace exposure, (3) for claimants whose Grace exposure is not described in clause (ii) of the definition of Grace exposure, significant occupational exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question."

"Lung Cancer 2 (Level VI) requires (1) Diagnosis of a primary lung cancer; (2) Grace exposure, and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. Lung Cancer 2 (Level VI) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer (Level VII) claims. All claims in this disease level shall be individually evaluated."

Dr. Welch's report also addresses non-chest malignancies; that is *other cancers* (not mesothelioma and lung cancer). I do agree with the criteria as proposed for cancer of the **larynx**, but I do not agree with the recommendation for the medical criteria, with the inclusion of *colo-rectal, esophageal, pharyngeal, or stomach* cancer.

According to the Report:

"Other Cancer (Level V) requires (1) Diagnosis of a primary *colo-rectal,* **laryngeal**, *esophageal, pharyngeal, or stomach cancer*, plus evidence of an underlying bilateral asbestos-related nonmalignant disease, (2) six months Grace Exposure, (3) for claimants whose Grace Exposure is not described in clause (ii) of the definition of Grace exposure, significant occupational exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question."

I would recommend the inclusion of only **laryngeal** cancer (as well as mesothelioma and lung cancer) as the TDP compensable malignant disease(s). My recommendation is consistent with the findings of the 2006 Institute of Medicine (IOM) committee. The IOM committee found the evidence to be *sufficient* to infer a causal relationship for **laryngeal** cancer and asbestos exposures; the evidence to be *suggestive (not sufficient)* for *pharyngeal, stomach, and colorectal* cancers and asbestos exposures; and to be *inadequate* for *esophageal* cancer and asbestos exposures. It is my opinion that it is medically reasonable to include only **laryngeal** cancer in the TDP when the criteria require significant occupational exposure to asbestos and supporting medical documentation establishing asbestos exposure as a contributing factor to laryngeal cancer. Again my recommendations are consistent with the IOM conclusion.

I agree with Dr. Welch's use and the TDP recommendation of "severe asbestosis (Level IV-A)."

3

findings on chest x-ray or CT. The disease may take decades to progress to a point of severity." This is a typical textbook description of asbestos related disease. I find this statement curiously at odds with Dr. Whitehouse's strongly held views that suggests the Libby asbestos related disease is distinct, or unique, and progresses very rapidly. In fact, the Libby cohorts have asbestos related disease quite typical of amphibole exposed cohorts.

As the third and "tie-breaking" reader for the Libby ATSDR chest radiographic study, I have seen several thousand radiographs of Libby residents and employees of the mine and mill. The radiographic abnormalities, primarily pleural abnormalities, are typical of non-chrysotile asbestos exposures. It has been suggested that there is a unique or distinct pattern of lung injury from exposure to the tremolite or amphibole contaminants within the Libby vermiculite. I do not share this opinion or concern. The diagnostic methodology and medical standards for diagnosing asbestos, generally, are appropriate for evaluating people exposed to fibrous minerals from Libby.

I applaud Dr. Whitehouse's dedication to this initially underserved Libby population. It is clear to me that he cares immensely about his patients and what may now be referred to as his "cause." While working on a Native American reservation in Arizona, serving as a physician in the U.S. Health Service, I experienced a similar dedication to an underserved population. However, to best serve this population, I needed to maintain my scientific objectivity, and not have my well-placed desire to be helpful to my patients and the Native American population cross-over a line, or extend to a point of representing unhelpful advocacy, while ignoring or misunderstanding medical science, peer reviewed literature, and other important public health principles.

It is my opinion that Dr. Whitehouse has done this in expressing his insistence on a unique Libby disease, his misunderstanding or misrepresentation of DPT, and his tenacity for demanding the inclusion of DLCO in the TDP medical criteria. The Libby radiographic and clinical findings are consistent with international populations exposed to amphibole asbestos. In the Libby cohort, the pleural injury is clearly more severe, and the pleural injury more common, than with chrysotile asbestos exposed populations. Again, this is the international experience with amphibole exposed populations, and is not unique to the Libby cohort.

**The Importance of Proper Diagnostic Labeling**

Misdiagnosis or mislabeling, or an overemphasis of an asbestos-related disease, can have important untoward consequences for individuals. This includes not only dire psychological consequences for the misdiagnosed individuals but also may reduce the opportunity for the proper recognition and treatment of correctable conditions by attributing an individual's health problems exclusively to an asbestos related disease.

Dr. Whitehouse's report discusses the Diagnosis of Asbestos-Related Disease, relying upon the ATS 2004 Official statement, beginning on P. 5. He refers to a CARD Clinic general use of "ARD" (asbestos-related disease) to refer to non-malignant asbestos disease, sometimes using the term asbestosis as an umbrella term covering asbestos interstitial disease and asbestos

10