# Exhibit F

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Brian T. Stansbury
To Call Writer Directly:
(202) 879-5969
bstansbury@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200
Dir. Fax (202) 879-5200

April 8, 2009

**VIA ELECTRONIC MAIL AND
FEDERAL EXPRESS**

Jon L. Heberling
McGarvey, Heberling, Sullivan &
McGarvey, P.C.
745 South Main
Kalispell, Montana 59901-5399

Re:   *In re W.R. Grace & Co.*, Case No. 01-01139 (JKF)

Dear Jon:

I write in response to your March 31, 2009 and April 2, 2009 emails regarding Dr. Whitehouse's March 19, 2009 deposition. For your convenience, I have attached both e-mails to this letter.

First, with respect to the scheduling of the next deposition, given that we traveled thousands of miles to Spokane, Washington for the first deposition, only to have your witness stand up and walk out on the deposition, you are not in a position to dictate how and when we will re-depose Dr. Whitehouse, and under what conditions. Your e-mail references an agreement to limit the total deposition to 8 hours. However, explicit in that agreement was that the deposition of Dr. Whitehouse occur on March 19, 2009 until I finished asking my questions or used up the entirety of the allotted time. Before either occurred, your witness stood up and left the deposition, rather than answering anymore questions about a 2005 American Thoracic Society/European Respiratory Society Guideline on interpreting pulmonary function tests that was inconsistent with the opinions he intends to offer at the confirmation hearing. Your witness's refusal to answer any more questions and his abrupt unilateral termination of the deposition nullified any prior agreement with respect to time limits. However, in the spirit of cooperation, and in effort to accommodate Dr. Whitehouse and other parties to this proceeding, I am willing to reschedule the deposition for a date in June.

Second, as noted in my March 26, 2009 letter, we request that you compensate W.R. Grace for attorney preparation time and expenses. There are variety of legal reasons why W.R. Grace is entitled to fees and expenses, among them are that your improper objection, which at times involved nothing more than you yelling at the top of your lungs, had the effect of impeding, delaying, and frustrating the deposition. If you do not send W.R. Grace a check,

## KIRKLAND & ELLIS LLP

Jon Heberling
April 8, 2009
Page 2

for $17,487.70, to my attention at the address listed above, no later than April 13, 2009, we will have no alternative other than to seek relief from the Court.

Finally, based on Dr. Whitehouse's March 19, 2009 deposition, it is apparent that you have not produced all of Dr. Whitehouse's reliance materials. Below is a list of deficiencies in the production of reliance materials, identified thus far, that should be remedied prior to the next deposition:

- You have not produced the medical records and radiology for all 1,800 patients in Dr. Whitehouse's practice whose medical condition form the basis of his opinions about disease in Libby. Prior to walking out of the deposition, Dr. Whitehouse confirmed that the medical conditions of ALL 1,800 patients are relevant to formulating his opinions in this matter. Trans. at 68-69. Dr. Whitehouse specifically acknowledged that he could not carve out a sub-set of this group in formulating his opinions and that the medical condition of all such patients are relevant to his opinion. Given the need to protect the privacy of those individuals who have not asserted personal injury claims against W.R. Grace, we understand that the personal identifying information for non-Libby Claimants will need to be redacted. The personal identifying information for the Libby Claimants, who are asserting personal injury claims against W.R. Grace, will not need to be redacted.

- Prior to walking out on the deposition, Dr. Whitehouse testified that there were at least two other studies upon which he will rely upon for his opinions in this matter. Trans. at 70-72, 191-192. These include a study on the rapid progression of pleural disease and a study that "shows the continuum between plaques [and] interstitial disease." *Id.* Dr. Whitehouse's deposition testimony reflects his reliance on these two investigations. *Id.*

- To the extent that medical records were previously produced, in redacted form, in the criminal case in the spring of 2006, in the interest of conserving resources, we were willing to use those records rather than request that Dr. Whitehouse produce them again in this proceeding. However, Dr. Whitehouse's deposition testimony reflected his uncertainty about the accuracy of the unique identifiers assigned to those individuals. Specifically, when asked about whether certain individuals were among those people included in his 2004 paper, Dr. Whitehouse stated that he had not personally reviewed that production and could not state, with any certainty, whether a person was or was not in his 2004 paper, nor could he vouch for the accuracy of any identifiers assigned to those patients. *See* Trans. at 210, 214, 216. Some of the medical records for individuals included in his study were included on a CD enclosed in Dr. Whitehouse's December 2008 expert report. However, as has often been the case with past productions involving Dr. Whitehouse, this CD does not include complete charts for these individuals and instead include cherry-picked medical

KIRKLAND & ELLIS LLP

Jon Heberling
April 8, 2009
Page 3

records. Moreover, you have not produced the x-rays and HRCTs for these individuals, which were produced in the spring of 2006. We therefore request that you either replicate the previous productions from the spring of 2006 (including radiology), or have Dr. Whitehouse review and verify, in a signed and notarized document, the accuracy of the patient identifiers assigned to each patient whose records were produced in the Spring of 2006.

Please do not hesitate to contact me with any questions or concerns, and I look forward to resolving these issues.

Sincerely,

Brian T. Stansbury

CC:   Nathan D. Finch