## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.,** *et al.* | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | |

**DEBTORS' PLAN SUPPLEMENT TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS DATED FEBRUARY 27, 2009**

| | | |
|---|---|---|
| David M. Bernick, P.C. | Janet S. Baer, P.C. | Laura Davis Jones (#2436) |
| Theodore L. Freedman | THE LAW OFFICES OF | James E. O'Neill (#4042) |
| Deanna D. Boll | JANET S. BAER, P.C. | Timothy Cairns (#4228) |
| KIRKLAND & ELLIS LLP | 70 W. Madison St. | PACHULSKI STANG ZIEHL |
| Citigroup Center | Suite 2100 | & JONES LLP |
| 153 East 53rd Street | Chicago, IL 60602 | 919 North Market Street, 17th |
| New York, NY 10022 | Telephone: 312-641-2162 | Floor |
| Telephone: (212) 446-4800 | | P.O. Box 8705 |
| | | Wilmington, DE 19899-8705 |
| | | (Courier 19801) |
| | | Telephone: (302) 652-4100 |

*Counsel for the Debtors and Debtors in Possession*

Dated: May 8, 2009

## PLAN SUPPLEMENT TABLE OF CONTENTS

ITEM 1        By-Laws of W. R. Grace & Co.

ITEM 2        Amended Certificates of Incorporation of the Debtors

ITEM 3        Identity and Affiliations of Persons Proposed to Serve as Initial Board of
              Directors or Officers of the Reorganized Debtors

# ITEM 1

Adopted on February 26, 2009

## AMENDED AND RESTATED

## BY-LAWS

### of

## W. R. GRACE & CO.

### Incorporated under the Laws of the State of Delaware

## ARTICLE I

## OFFICES AND RECORDS

**Section 1.1**    **Delaware Office.**  The principal office of the Corporation in the State of Delaware shall be located in Wilmington, Delaware, and the name and address of its registered agent is The Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Suite 400, Wilmington, Delaware.

**Section 1.2**    **Other Offices.**  The Corporation may have such other offices, either within or without the State of Delaware, as the Board of Directors may designate or as the business of the Corporation may from time to time require.

**Section 1.3**    **Books and Records.**  The books and records of the Corporation may be kept outside the State of Delaware at such place or places as may from time to time be designated by the Board of Directors.

## ARTICLE II

## STOCKHOLDERS

**Section 2.1**    **Annual Meeting.**  The annual meeting of the stockholders of the Corporation shall be held annually (a) on the fifth day of May, or (b) if such day be a Saturday, Sunday or a holiday at the place where the meeting is to be held, on the last business day preceding or on the first business day after such fifth day of May, as may be fixed by the Board of Directors, or (c) on such other date as may be fixed by the Board of Directors.

**Section 2.2**    **Special Meeting.**  Subject to the rights of the holders of any series of stock having a preference over the Common Stock of the Corporation as to dividends or upon liquidation ("Preferred Stock") with respect to such series of Preferred Stock, special meetings of the stockholders may be called only by the Chairman, by the President or by the Board of Directors pursuant to a resolution adopted by a majority of the total number of directors which the Corporation would have if there were no vacancies (the "Whole Board").

**Section 2.3**    **Place of Meeting.**  The Chairman, the President or the Board of Directors, as the case may be, may designate the place of meeting for any annual meeting or for any special meeting of the stockholders called by the Chairman, the President or the Board of Directors.  If no designation is so made, the place of meeting shall be the principal office of the Corporation.

**Section 2.4**    **Notice of Meeting.**  Written or printed notice, stating the place, date and time of the meeting and the purpose or purposes for which the meeting is called, shall be delivered by the Corporation not less than ten (10) days nor more than sixty (60) days before the date of the meeting, either personally or by mail, to each stockholder of record entitled to vote at such meeting.  If mailed, such notice shall be deemed to be delivered when deposited in the U.S. mail with postage thereon prepaid, addressed to the stockholder at his address as it appears on

the stock transfer books of the Corporation. Such further notice shall be given as may be required by law. Only such business shall be conducted at a special meeting of stockholders as shall have been brought before the meeting pursuant to the Corporation's notice of meeting. Meetings may be held without notice if all stockholders entitled to vote are present, or if notice is waived by those not present in accordance with Section 6.4 of these By-laws. Any previously scheduled meeting of the stockholders may be postponed, and, (unless the Certificate of Incorporation otherwise provides) any special meeting of the stockholders may be cancelled, by resolution of the Board of Directors upon public notice given prior to the date previously scheduled for such meeting of stockholders.

**Section 2.5    Quorum and Adjournment.** Except as otherwise provided by law or by the Certificate of Incorporation, the holders of a majority of the outstanding shares of the Corporation entitled to vote generally in the election of directors (the "Voting Stock"), represented in person or by proxy, shall constitute a quorum at a meeting of stockholders, except that when specified business is to be voted on by a class or series of stock voting as a class, the holders of a majority of the voting power of the shares of such class or series shall constitute a quorum of such class or series for the transaction of such business. The chairman of the meeting or a majority of the shares so represented may adjourn the meeting from time to time, whether or not there is a quorum. No notice of the time and place of adjourned meetings need be given except as required by law. The stockholders present at a duly called meeting at which a quorum is present may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum.

**Section 2.6    Proxies.** At all meetings of stockholders, a stockholder may vote by proxy executed in writing (or in any other manner permitted by law) by the stockholder, or by his duly authorized attorney-in-fact.

**Section 2.7    Notice of Stockholder Business and Nominations.**

(A)    Annual Meetings of Stockholders.

(1)    Nominations of persons for election to the Board of Directors of the Corporation and the proposal of other business to be considered by the stockholders may be made at an annual meeting of stockholders (a) pursuant to the Corporation's notice of meeting; (b) by or at the direction of the Board of Directors; or (c) by any stockholder of the Corporation who was a stockholder of record at the time of giving of the notice provided for in this Section 2.7 and at the time of the annual meeting, who is entitled to vote at the meeting and who complies with the notice procedures set forth in this Section 2.7 as to such nomination or business. Clause (c) of the preceding sentence shall be the exclusive means for a stockholder to make nominations or propose other business to be considered at an annual meeting of stockholders (other than matters properly brought under Rule 14a-8 under the Securities Exchange Act of 1934, as amended (the "Exchange Act") and included in the Corporation's notice of meeting).

(2)    No nominations or any other business shall be deemed properly brought before an annual meeting by a stockholder pursuant to clause (c) of the first sentence of paragraph (A)(1) of this Section 2.7, unless the stockholder shall have given timely notice thereof in writing to the Secretary of the Corporation, and such other business is otherwise a proper matter for stockholder action. To be timely, a stockholder's notice shall be delivered to the Secretary at the principal executive offices of the Corporation not earlier than the close of business on the 120th day prior to, and not later than the close of business on the 90th day prior to, the first anniversary of the preceding year's annual meeting. Notwithstanding the foregoing, if (a) the date of the annual meeting is more than 30 days before or more than 60 days after such anniversary date or (b) no annual meeting was held during the preceding year, then notice by the stockholder to be timely must be so delivered not earlier than the close of business on the 120th day prior to the date of such annual meeting and not later than the close of business on the later of (i) the 90th day prior to the date of such annual meeting or (ii) if the first public announcement of the date of such annual meeting is less than 100 days prior to the date of such annual meeting, on the 10th day following the day on which public announcement of the date of such meeting is first made by the Corporation. In no event shall any adjournment or postponement of an annual meeting, or the public announcement thereof, commence a new time period for the giving of a stockholder's notice as described above. To be in proper form, a stockholder's notice (whether given pursuant to this paragraph (A)(2) or paragraph (B) of this Section 2.7) to the Secretary must: (a) set forth, as to the stockholder giving the notice and the beneficial owner, if any, on whose behalf the nomination or proposal is made, (i) the name and address of such stockholder, as they

appear on the Corporation's books, and of such beneficial owner, if any, (ii) (A) the class or series and number of shares of the Corporation that are, directly or indirectly, owned beneficially and of record by such stockholder and such beneficial owner; (B) any option, warrant, convertible security, stock appreciation right, or similar right with an exercise or conversion privilege or a settlement payment or mechanism at a price related to any class or series of shares of the Corporation or with a value derived in whole or in part from the value of any class or series of shares of the Corporation, whether or not such instrument or right shall be subject to settlement in the underlying class or series of capital stock of the Corporation or otherwise (a "Derivative Instrument") directly or indirectly owned beneficially by such stockholder and any other direct or indirect opportunity to profit or share in any profit derived from any increase or decrease in the value of shares of the Corporation; (C) any proxy, contract, arrangement, understanding, or relationship pursuant to which such stockholder has a right to vote any shares of any security of the Corporation; (D) any short interest in any security of the Corporation (for purposes of this Section 2.7, a person shall be deemed to have a short interest in a security if such person directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has the opportunity to profit or share in any profit derived from any decrease in the value of such security); (E) any rights to dividends on the shares of the Corporation owned beneficially by such stockholder that are separated or separable from the underlying shares of the Corporation; (F) any interest in shares of the Corporation or Derivative Instruments held, directly or indirectly, by a general or limited partnership in which such stockholder is a general partner or, directly or indirectly, beneficially owns an interest in a general partner; and (G) any performance-related fees (other than an asset-based fee) that such stockholder is entitled to based on any increase or decrease in the value of shares of the Corporation or Derivative Instruments, as of the date of such notice, including without limitation any interests in such fees held by members of such stockholder's immediate family sharing the same household (which information shall be supplemented by such stockholder and beneficial owner, if any, not later than 10 days after the record date for the meeting to disclose such ownership as of the record date), and (iii) any other information relating to such stockholder and beneficial owner, that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for, as applicable, the proposal and/or for the election of directors in a contested election pursuant to Section 14 of the Exchange Act and the rules and regulations promulgated thereunder; (b) set forth, if the notice relates to any business other than a nomination of a director or directors that the stockholder proposes to bring before the meeting (i) a brief description of the business desired to be brought before the meeting, the reasons for conducting such business at the meeting and any material interest of such stockholder and beneficial owner, in such business and (ii) a description of any agreements, arrangements and understandings between such stockholder and beneficial owner, and any other person or persons (including their names) in connection with the proposal of such business by such stockholder; (c) set forth, as to any person whom the stockholder proposes to nominate for election or reelection as a director (i) all information relating to such person that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for election of directors in a contested election pursuant to Section 14 of the Exchange Act and the rules and regulations promulgated thereunder (including such person's written consent to being named in the proxy statement as a nominee and to serving as a director if elected) and (ii) a description of all direct and indirect compensation and other material monetary agreements, arrangements and understandings during the past three years, and any other material relationships, between or among such stockholder and beneficial owner, and such owner's affiliates and associates, or others acting in concert with any such affiliates and associates, on the one hand, and each proposed nominee, and his or her affiliates and associates, or others acting in concert with any such affiliates and associates, on the other hand, including without limitation all information that would be required to be disclosed pursuant to Rule 404 promulgated under Regulation S-K if the stockholder making the nomination or any beneficial owner on whose behalf the nomination is made, or any affiliate or associate of either thereof, or person acting in concert with either thereof, were the "registrant" for purposes of such rule and the nominee were a director or executive officer of such registrant; and (d) with respect to each nominee for election to the Board of Directors, include a completed and signed questionnaire, representation and agreement as required by paragraph (D) of this Section 2.7. The Corporation may require any proposed nominee to furnish such other information as may reasonably be required by the Corporation to determine the eligibility of such proposed nominee to serve as an independent director of the Corporation or that could be material to a reasonable stockholder's understanding of the independence, or lack thereof, of such nominee.

3

(3)     Notwithstanding anything in the second sentence of paragraph (A)(2) of this Section 2.7 to the contrary, in the event that (1) the number of directors to be elected to the Board of Directors of the Corporation is increased and there is no public announcement by the Corporation naming all of the nominees for election as director or specifying the size of the increased Board of Directors at least 100 days prior to the first anniversary of the preceding year's annual meeting or (2) no annual meeting was held during the preceding year, then a stockholder's notice required by this Section 2.7 shall be considered timely, but only with respect to nominees for any new positions created by such increase, if it shall be delivered to the Secretary at the principal executive offices of the Corporation not later than the close of business on the 10th day following the day on which such public announcement is first made by the Corporation.

(B)     <u>Special Meetings of Stockholders</u>. Only such business shall be conducted at a special meeting of stockholders as shall have been brought before the meeting pursuant to the Corporation's notice of meeting. Nominations of persons for election to the Board of Directors may be made at a special meeting of stockholders at which directors are to be elected pursuant to the Corporation's notice of meeting as follows: (1) by or at the direction of the Board of Directors; or (2) provided that the Board of Directors has determined that directors shall be elected at such meeting, by any stockholder of the Corporation who (a) is a stockholder of record at the time of giving of notice provided for in this Section 2.7, (b) is a stockholder of record at the time of the special meeting, (c) is entitled to vote at the special meeting, and (d) has complied with the notice procedures set forth in this paragraph (B) as to such nomination. If the Corporation calls a special meeting of stockholders for the purpose of electing one or more directors to the Board of Directors, only a stockholder who meets all four requirements under clause (2) of the second sentence of this paragraph (B) (a "<u>Qualifying Stockholder</u>") may nominate a person or persons (as the case may be), for election to such position(s) as specified in the Corporation's notice of meeting, so long as the Qualifying Stockholder's notice required by paragraph (A)(2) of this Section 2.7 with respect to any nomination (including the completed and signed questionnaire, representation and agreement required by paragraph (D) of this Section 2.7) shall be delivered to the Secretary at the principal executive offices of the Corporation not earlier than the close of business on the 120th day prior to the date of such special meeting and not later than the close of business on the later of the 90th day prior to the date of such special meeting or, if the first public announcement of the date of such special meeting is less than 100 days prior to the date of the special meeting, the 10th day following the day on which public announcement is first made of the date of the special meeting and of the nominees proposed by the Board of Directors to be elected at such meeting. In no event shall any adjournment or postponement of a special meeting, or the public announcement of an adjournment thereof, commence a new time period for the giving of a Qualifying Stockholder's notice as described above.

(C)     <u>General</u>.

(1)     Only such persons who are nominated in accordance with the procedures set forth in this Section 2.7 may be elected and shall be eligible to serve as directors; and only such business shall be conducted at a meeting of stockholders as shall have been brought before the meeting in accordance with the procedures set forth in this Section 2.7. Except as otherwise provided by law, the Certificate of Incorporation or these By-laws, the chairman of the meeting shall have the power and duty to determine whether a nomination or any business proposed to be brought before the meeting was made or proposed, as the case may be, in accordance with the procedures set forth in this Section 2.7 and, if any proposed nomination or business is not in compliance with this Section 2.7, to declare that such defective proposal or nomination shall not be acted upon.

(2)     For purposes of this Section 2.7, "public announcement" shall mean disclosure in a press release reported by the Dow Jones News Service, Associated Press or a comparable national news service or in a document publicly filed by the Corporation with the Securities and Exchange Commission pursuant to Section 13, 14 or 15(d) of the Exchange Act and the rules and regulations promulgated thereunder.

(3)     In addition to the foregoing provisions of this Section 2.7, a stockholder shall also comply with all applicable requirements of the Exchange Act and the rules and regulations thereunder with respect to the matters set forth in this Section 2.7. Any references in these By-laws to the Exchange Act or the rules promulgated thereunder are not intended to and shall not limit the requirements applicable

4

to nominations or proposals as to any other business to be considered pursuant to paragraph (A)(1)(c) or paragraph B of this Section 2.7. Nothing in this Section 2.7 shall be deemed to affect any rights (a) of stockholders to request inclusion of proposals in the Corporation's proxy statement pursuant to Rule 14a-8 under the Exchange Act; or (b) of the holders of any series of Preferred Stock if and to the extent provided for under law, the Certificate of Incorporation, or these By-laws.

(D)    Submission of Questionnaire, Representation, and Agreement.  To be eligible to be a nominee for election or reelection as a director of the Corporation, a person must deliver (in accordance with the time periods prescribed for delivery of notice under this Section 2.7) to the Secretary at the principal executive offices of the Corporation a written questionnaire with respect to the background and qualification of such person and the background of any other person or entity making the nomination or on whose behalf the nomination is being made (which questionnaire shall be provided by the Secretary upon written request) and a written representation and agreement (in the form provided by the Secretary upon written request) that such person: (1) is not and will not become a party to (a) any agreement, arrangement or understanding with, and has not given any commitment or assurance to, any person or entity as to how such person, if elected as a director of the Corporation, will act or vote on any issue or question (a "Voting Commitment") that has not been disclosed therein or (b) any Voting Commitment that could limit or interfere with such person's ability to comply, if elected as a director of the Corporation, with such person's fiduciary duties under applicable law; (2) is not and will not become a party to any agreement, arrangement or understanding with any person or entity other than the Corporation with respect to any direct or indirect compensation, reimbursement or indemnification in connection with service or action as a director that has not been disclosed therein; (3) if the Board of Directors so requires, agrees to purchase within 90 days if elected as a director of the Corporation, a specified number of common shares of the Corporation ("Qualifying Shares") (subject to adjustment for any stock splits or stock dividends occurring after the date of such representation or agreement), will not dispose of such minimum number of shares so long as such person is a director, and has disclosed therein whether all or any portion of the Qualifying Shares were or will be purchased with any financial assistance provided by any other person, whether any other person has or will have any interest in the Qualifying Shares and, in each case, the name and address of such person; and (4) in such person's individual capacity and on behalf of any person or entity making the nomination or on whose behalf the nomination is being made, would be in compliance, if elected as a director of the Corporation, and will comply with all applicable publicly disclosed corporate governance, conflict of interest, confidentiality and stock ownership and trading policies and guidelines of the Corporation.

Section 2.8    Procedure for Election of Directors; Required Vote.  Election of directors at all meetings of the stockholders at which directors are to be elected shall be by ballot, and, subject to the rights of the holders of any series of Preferred Stock to elect directors under specified circumstances, a plurality of the votes cast thereat shall elect directors. Except as otherwise provided by law, the Certificate of Incorporation, or these By-laws, in all matters other than the election of directors, the affirmative vote of a majority of the shares present in person or represented by proxy at the meeting and entitled to vote on the matter shall be the act of the stockholders.

Section 2.9    Inspectors of Elections; Opening and Closing the Polls.  The Board of Directors by resolution shall appoint one or more inspectors, which inspector or inspectors may include individuals who serve the Corporation in other capacities, including, without limitation, as officers, employees, agents or representatives, to act at meetings of stockholders and make written reports thereof. One or more persons may be designated as alternate inspectors to replace any inspector who fails to act. If no inspector or alternate has been appointed to act or is able to act at a meeting of stockholders, the chairman of the meeting shall appoint one or more inspectors to act at the meeting. Each inspector, before discharging his or her duties, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of his or her ability. The inspectors shall have the duties prescribed by law.

The chairman of the meeting shall fix and announce at the meeting the date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at a meeting.

K&E 14337678.2

## ARTICLE III

## BOARD OF DIRECTORS

**Section 3.1**     **General Powers.** The business and affairs of the Corporation shall be managed under the direction of the Board of Directors. In addition to the powers and authorities by these By-laws expressly conferred upon them, the Board of Directors may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these By-laws required to be exercised or done by the stockholders. The Board of Directors may choose one of its members to be Chairman, and shall fill any vacancy in the position of Chairman at such time and in such manner as the Board of Directors shall determine. The Chairman shall preside at all meetings of the Board of Directors and of stockholders. The Chairman shall not be an officer of the Corporation unless the Board of Directors shall elect him an officer pursuant to Section 4.1 of these By-laws.

**Section 3.2**     **Number, Tenure and Qualifications.** Subject to the rights of the holders of any series of Preferred Stock to elect directors under specified circumstances, the number of directors shall be fixed from time to time exclusively pursuant to a resolution adopted by a majority of the Whole Board. The directors, other than those who may be elected by the holders of any series of Preferred Stock under specified circumstances, shall be divided, with respect to the time for which they severally hold office, into three classes, as nearly equal in number as is reasonably possible, designated Class I, Class II and Class III, with the initial term of office of the Class I directors to expire at the 1999 annual meeting of stockholders, the initial term of office of the Class II directors to expire at the 2000 annual meeting of stockholders and the initial term of office of the Class III directors to expire at the 2001 annual meeting of stockholders, with each director to hold office until his or her successor shall have been duly elected and qualified. At each annual meeting of stockholders, commencing with the 1999 annual meeting, directors elected to succeed those directors whose terms then expire shall be elected for a term of office to expire at the third succeeding annual meeting of stockholders after their election, with each director to hold office until his or her successor shall have been duly elected and qualified.

**Section 3.3**     **Regular Meetings.** A regular meeting of the Board of Directors shall be held without other notice than this Section 3.3 immediately after, and at the same place as, the Annual Meeting of Stockholders. The Board of Directors may fix the time and place for the holding of additional regular meetings without notice.

**Section 3.4**     **Special Meetings.** Special meetings of the Board of Directors shall be called at the request of the Chairman, the President or a majority of the directors then in office. The person or persons authorized to call special meetings of the Board of Directors may fix the place and time of such meetings.

**Section 3.5**     **Notice.** Notice of any special meeting or notice of a change in the time or place of any regular meeting of the Board of Directors shall be given to each director at his or her business or residence in writing by hand delivery, first-class or overnight mail or courier service, facsimile transmission, email or other electronic delivery, or orally (in person or by telephone). If mailed by first-class mail, such notice shall be deemed adequately delivered when deposited in the U.S. mail so addressed, with postage thereon prepaid, at least five (5) days before such meeting. If by overnight mail or courier service, such notice shall be deemed adequately delivered when the notice is delivered to the overnight mail or courier service company at least twenty-four (24) hours before such meeting. If by facsimile transmission, email or other electronic delivery, such notice shall be deemed adequately delivered when the notice is transmitted least twelve (12) hours before such meeting. If given orally, the notice shall be communicated to the director or his or her representative or to the answering machine of the director or representative. If given orally or by hand delivery, the notice shall be given at least twenty-four (24) hours prior to the time set for the meeting. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice of such meeting, except for amendments to these By-laws, as provided under Section 8.1. A meeting may be held at any time without notice if all the directors are present or if those not present waive notice of the meeting in accordance with Section 6.4 of these By-laws.

**Section 3.6**     **Action by Consent of Board of Directors.** Any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting if all members of the Board of Directors or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board of Directors or committee.

6

**Section 3.7**    __Conference Telephone Meetings.__  Members of the Board of Directors, or any committee thereof, may participate in a meeting of the Board of Directors or such committee by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at such meeting.

**Section 3.8**    __Quorum.__  Subject to Section 3.9, a number of directors equal to at least a majority of the Whole Board shall constitute a quorum for the transaction of business.  If at any meeting of the Board of Directors there shall be less than a quorum present, a majority of the directors present may adjourn the meeting from time to time without further notice.  The act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.  The directors present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough directors to leave less than a quorum.

**Section 3.9**    __Vacancies.__  Subject to applicable law and the rights of the holders of any series of Preferred Stock with respect to such series of Preferred Stock, and unless the Board of Directors otherwise determines, vacancies resulting from death, resignation, retirement, disqualification, removal from office or other cause, and newly created directorships resulting from any increase in the authorized number of directors, may be filled only by the affirmative vote of a majority of the remaining directors, though less than a quorum of the Board of Directors, and directors so chosen shall hold office for a term expiring at the annual meeting of stockholders at which the term of office of the class to which they have been elected expires and until such director's successor shall have been duly elected and qualified.  No decrease in the number of authorized directors constituting the Whole Board shall shorten the term of any incumbent director.

**Section 3.10**    __Committees.__  The Board of Directors may establish one or more committees.  Each committee shall consist of two or more directors of the Corporation designated by the Board of Directors.  The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  Any such committee may to the extent permitted by law exercise such powers and shall have such responsibilities as shall be specified in the designating resolution.  In the absence or disqualification of any member of such committee or committees, the member or members thereof present at any meeting and not disqualified from voting, whether or not constituting a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.  Each committee shall keep written minutes of its proceedings and shall report such proceedings to the Board of Directors when requested.

A majority of any committee may determine its action and fix the time and place of its meetings, unless the Board of Directors shall otherwise provide.  Notice of such meetings shall be given to each member of the committee in the manner provided for in Section 3.5 of these By-laws.  The Board of Directors shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve any such committee.  Nothing herein shall be deemed to prevent the Board of Directors from appointing one or more committees consisting in whole or in part of persons who are not directors of the Corporation; __provided__, __however__, that no such committee shall have or may exercise any authority of the Board of Directors.

The term of office of a committee member shall be as provided in the resolution of the Board designating him or her but shall not exceed his or her term as a director.  If prior to the end of his or her term, a committee member should cease to be a director, he or she shall cease to be a committee member.  Any member of a committee may resign at any time by giving written notice to the Board of Directors, the Chairman, the President or the Secretary.  Such resignation shall take effect as provided in Section 6.6 of these By-laws in the case of resignations by directors.  Any member of a committee may be removed from such committee, either with or without cause, at any time, by resolution adopted by a majority of the Whole Board.  Any vacancy in a committee shall be filled by the Board of Directors in the manner prescribed by these By-laws for the original designation of the members of such committee.

**Section 3.11**    __Removal.__  Subject to the rights of the holders of any series of Preferred Stock with respect to such series of Preferred Stock, any director, or the entire Board of Directors, may be removed from office at any time by the stockholders, but only for cause.

K&E 14337678.2

**Section 3.12      Records.**  The Board of Directors shall cause to be kept a record containing the minutes of the proceedings of the meetings of the Board of Directors and of the stockholders, appropriate stock books and registers and such books of records and accounts as may be necessary for the proper conduct of the business of the Corporation.

**ARTICLE IV**

**OFFICERS**

**Section 4.1      Elected Officers.**  The elected officers of the Corporation shall be a President, a Secretary, a Treasurer, and such other officers (including, without limitation, a Chairman and a Chief Financial Officer) as the Board of Directors may deem proper from time to time.  If the Board of Directors elects a Chairman as an officer, the Chairman shall be chosen from among the directors.  Each officer elected by the Board of Directors shall have such powers and duties as generally pertain to his or her respective office, subject to the specific provisions of this ARTICLE IV.  Such officers shall also have such powers and duties as may be conferred from time to time by the Board of Directors.  The Board of Directors may from time to time elect, or the Chairman (if an elected officer) or President may appoint, such assistant officers (including one or more Assistant Vice Presidents, Assistant Secretaries, Assistant Treasurers and Assistant Controllers) as may be necessary or desirable for the conduct of the business of the Corporation.  Such assistant officers shall have such duties and shall hold their offices for such terms as shall be provided in these By-laws or as may be prescribed by the Board of Directors or by the Chairman (if an elected officer) or President, as the case may be.

**Section 4.2      Election and Term of Office.**  The elected officers of the Corporation shall be elected annually by the Board of Directors at the regular meeting of the Board of Directors held after the annual meeting of the stockholders or at any other time as the Board of Directors may deem proper.  Each officer shall hold office until his successor shall have been duly elected and shall have qualified or until his or her death or until he or she shall resign, but any officer may be removed from office at any time by the affirmative vote of a majority of the Whole Board or, except in the case of an officer elected by the Board of Directors, by the Chairman (if an elected officer) or President.  Such removal shall be without prejudice to the contractual rights, if any, of the person so removed.

**Section 4.3      Chairman.**  The Chairman shall preside at all meetings of the stockholders and of the Board of Directors and may be designated as the Chief Executive Officer of the Corporation.  If elected as Chief Executive Officer, the Chairman shall be responsible for the general management of the affairs of the Corporation and shall perform all duties incidental to his or her office which may be required by law and all such other duties as are properly required of him or her by the Board of Directors.  In such capacity, he or she shall make reports to the Board of Directors and the stockholders, and shall see that all orders and resolutions of the Board of Directors and of any committee thereof are carried into effect.  The Chairman may also serve as President, if so elected by the Board of Directors.

**Section 4.4      President.**  The President may be designated as the Chief Executive Officer of the Corporation.  If elected as Chief Executive Officer, the President shall be responsible for the general affairs of the Corporation and shall perform all duties incidental to a chief executive officer and all such other duties as may be required by law or as are properly required of him or her by the Board of Directors.  In such capacity, he or she shall make reports to the Board of Directors and the stockholders, and shall see that all orders and resolutions of the Board of Directors and of any committee thereof are carried into effect.  If the President is not elected as Chief Executive Officer, the President shall act in a general executive capacity and shall assist the Chief Executive Officer in the administration and operation of the Corporation's business and the general supervision of its policies and affairs.  In the absence of or the inability to act of the Chairman, the President shall perform all duties of the Chairman and preside at all meetings of stockholders and of the Board of Directors.

**Section 4.5      Vice Presidents.**  Each Vice President shall have such powers and shall perform such duties as shall be assigned to him or her by the Board of Directors.

**Section 4.6      Chief Financial Officer.**  The Chief Financial Officer (if any) shall be a Vice President and act in an executive financial capacity.  He or she shall assist the Chairman and the President in the general supervision of the Corporation's financial policies and affairs.

8

**Section 4.7**     **Treasurer.**  The Treasurer shall exercise general supervision over the receipt, custody and disbursement of corporate funds. The Treasurer shall cause the funds of the Corporation to be deposited in such banks as may be authorized by the Board of Directors, or in such banks as may be designated as depositaries in the manner provided by resolution of the Board of Directors. He or she shall have such further powers and duties and shall be subject to such directions as may be granted or imposed upon him or her from time to time by the Board of Directors, the Chairman or the President.

**Section 4.8**     **Secretary.**  The Secretary shall keep or cause to be kept in one or more books provided for that purpose, the minutes of all meetings of the Board of Directors, the committees of the Board of Directors and the stockholders; he or she shall see that all notices are duly given in accordance with the provisions of these By-laws and as required by law; he or she shall be custodian of the records and the seal of the Corporation and affix and attest the seal to all stock certificates of the Corporation (unless the seal of the Corporation on such certificates shall be a facsimile, as hereinafter provided) and affix and attest the seal to all other documents to be executed on behalf of the Corporation under its seal; and he or she shall see that the books, reports, statements, certificates and other documents and records required by law to be kept and filed are properly kept and filed; and in general, he or she shall perform all the duties incident to the office of Secretary and such other duties as from time to time may be assigned to him or her by the Board of Directors, the Chairman or the President.

**Section 4.9**     **Controller.**  The Controller shall have general control, charge and supervision of the accounts of the Corporation.  He or she shall see that proper accounts are maintained and that all accounts are properly credited from time to time.  He or she shall prepare or cause to be prepared the financial statements of the Corporation.

**Section 4.10**     **Removal.**  Any officer elected by the Board of Directors may be removed by the affirmative vote of a majority of the Whole Board whenever, in their judgment, the best interests of the Corporation would be served thereby.  Any assistant officer appointed by the Chairman or the President may be removed by him or her whenever, in his or her judgment, the best interests of the Corporation would be served thereby.  No elected officer shall have any contractual rights against the Corporation for compensation by virtue of such election beyond the date of the election of his or her successor, his or her death, his or her resignation or his or her removal, whichever event shall first occur, except as otherwise provided in an employment contract or under an employee deferred compensation plan.

**Section 4.11**     **Vacancies.**  A newly created elected office and a vacancy in any elected office because of death, resignation, or removal may be filled by the Board of Directors for the unexpired portion of the term at any meeting of the Board of Directors.

### ARTICLE V

### STOCK CERTIFICATES AND TRANSFERS

**Section 5.1**     **Stock Certificates and Transfers.**

(A)     The interest of each stockholder of the Corporation shall be evidenced by certificates for shares of stock in such form as the appropriate officers of the Corporation may from time to time prescribe; provided that the Board of Directors may provide by resolution or resolutions that some or all of any or all classes or series of the stock of the Corporation shall be represented by uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Except as otherwise expressly provided by law, the rights and obligations of the holders of uncertificated stock and the rights and obligations of the holders of certificates representing stock of the same class and series shall be identical.

(B)     Every holder of stock of the Corporation represented by certificates shall be entitled to have a certificate signed by, or in the name of the Corporation by the Chairman of the Board, the President or any Vice President and by the Treasurer or an Assistant Treasurer or the Secretary or an Assistant Secretary of the Corporation representing the number of shares registered in certificate form. Any or all of the signatures on the certificates (if any) representing the stock of the Corporation may be facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate has ceased to be such

officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue.

(C)    The shares of the stock of the Corporation represented by certificates shall be transferred on the books of the Corporation by the holder thereof in person or by his or her attorney, upon surrender for cancellation of certificates for at least the same number of shares, with an assignment and power of transfer endorsed thereon or attached thereto, duly executed, with such proof of the authenticity of the signature as the Corporation or its agents may reasonably require.  Upon receipt of proper transfer instructions from the registered owner of uncertificated shares, such uncertificated shares shall be canceled and issuance of new equivalent uncertificated shares or certificated shares (if authorized) shall be made to the person entitled thereto and the transaction shall be recorded upon the books of the Corporation.

(D)    Within a reasonable time after the issuance or transfer of uncertificated stock, the Corporation shall send to the registered owner thereof a written notice containing the information required to be set forth or stated on certificates pursuant to the General Corporation Law of the State of Delaware (the "GCL") or, unless otherwise provided by the GCL, a statement that the Corporation will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights.

Section 5.2    Lost, Stolen or Destroyed Certificates.  No certificate for shares or uncertificated shares of stock in the Corporation shall be issued in place of any certificate alleged to have been lost, destroyed or stolen, except on production of such evidence of such loss, destruction or theft and on delivery to the Corporation of a bond of indemnity in such amount, upon such terms and secured by such surety, as the Board of Directors or any financial officer may in its or his or her discretion require.

## ARTICLE VI

## MISCELLANEOUS PROVISIONS

Section 6.1    Fiscal Year.  The fiscal year of the Corporation shall begin on the first day of January and end on the thirty-first day of December of each year.

Section 6.2    Dividends.  The Board of Directors may from time to time declare, and the Corporation may pay, dividends on its outstanding shares in the manner and upon the terms and conditions provided by law and the Certificate of Incorporation.

Section 6.3    Seal.  The corporate seal shall have inscribed thereon the words "Corporate Seal," the year of incorporation and around the margin thereof the words "W. R. Grace & Co."

Section 6.4    Waiver of Notice.  Whenever any notice is required to be given to any stockholder or director of the Corporation under the provisions of the GCL or these By-laws, a waiver thereof in writing, signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.  The attendance of any stockholder at a meeting in person or by proxy, without protesting at the beginning of the meeting the lack of notice of such meeting, shall constitute a waiver of notice of such stockholder.  Neither the business to be transacted at, nor the purpose of, any annual or special meeting of the stockholders or the Board of Directors or committee thereof need be specified in any waiver of notice of such meeting.

Section 6.5    Audits.  The accounts, books and records of the Corporation shall be audited upon the conclusion of each fiscal year by an independent certified public accountant selected by the Board of Directors, and it shall be the duty of the Board of Directors to cause such audit to be done annually.

Section 6.6    Resignations.  Any director or any officer or assistant officer, whether elected or appointed, may resign at any time by giving written notice of such resignation to the Chairman, the President, or the

10

Secretary, and such resignation shall be deemed to be effective as of the close of business on the date said notice is received by the Chairman, the President, or the Secretary, or at such later time as is specified therein. No formal action shall be required of the Board of Directors or the stockholders to make any such resignation effective.

**Section 6.7**    **Indemnification and Insurance.**

(A)    Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit, or proceeding, whether civil, criminal, administrative or investigative (hereinafter, a "proceeding"), by reason of the fact that he or she or a person of whom he or she is the legal representative is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans maintained or sponsored by the Corporation, whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the GCL as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith, and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that except as provided in paragraph (C) of this Section 6.7, the Corporation shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors. The right to indemnification conferred in this Section 6.7 shall be a contract right and shall include the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition, such advances to be paid by the Corporation within 20 days after the receipt by the Corporation of a statement or statements from the claimant requesting such advance or advances from time to time; provided, however, that if the GCL requires, the payment of such expenses incurred by a director or officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Corporation of an undertaking by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director or officer is not entitled to be indemnified under this Section 6.7 or otherwise.

(B)    To obtain indemnification under this Section 6.7, a claimant shall submit to the Corporation a written request, including therein or therewith such documentation and information as is reasonably available to the claimant and is reasonably necessary to determine whether and to what extent the claimant is entitled to indemnification. Upon written request by a claimant for indemnification pursuant to the first sentence of this paragraph (B), a determination, if required by applicable law, with respect to the claimant's entitlement thereto shall be made as follows: (1) if requested by the claimant, by Independent Counsel (as hereinafter defined), or (2) if no request is made by the claimant for a determination by Independent Counsel, (i) by the Board of Directors by a majority vote of a quorum consisting of Disinterested Directors (as hereinafter defined), or (ii) if a quorum of the Board of Directors consisting of Disinterested Directors is not obtainable or, even if obtainable, such quorum of Disinterested Directors so directs, by Independent Counsel in a written opinion to the Board of Directors, a copy of which shall be delivered to the claimant, or (iii) if a quorum of Disinterested Directors so directs, by the stockholders of the Corporation. In the event the determination of entitlement to indemnification is to be made by Independent Counsel at the request of the claimant, the Independent Counsel shall be selected by the Board of Directors unless there shall have occurred within two years prior to the date of the commencement of the action, suit or proceeding for which indemnification is claimed a "Change of Control" (as defined below) in which case the Independent Counsel shall be selected by the claimant unless the claimant shall request that such selection be made by the Board of Directors. If it is so determined that the claimant is entitled to indemnification, payment to the claimant shall be made within 10 days after such determination.

(C)    If a claim under paragraph (A) of this Section 6.7 is not paid in full by the Corporation within 30 days after a written claim pursuant to paragraph (B) of this Section 6.7 has been received by the Corporation, the claimant may at any time thereafter bring suit against the Corporation to recover the unpaid amount

11

of the claim and, if successful in whole or in part, the claimant shall be entitled to be paid also the expense of prosecuting such claim. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking, if any is required, has been tendered to the Corporation) that the claimant has not met the standard of conduct which makes it permissible under the GCL for the Corporation to indemnify the claimant for the amount claimed, but the burden of proving such defense shall be on the Corporation. Neither the failure of the Corporation (including its Board of Directors, Independent Counsel or stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he or she has met the applicable standard of conduct set forth in the GCL, nor an actual determination by the Corporation (including its Board of Directors, Independent Counsel or stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

(D)    If a determination shall have been made pursuant to paragraph (B) of this Section 6.7 that the claimant is entitled to indemnification, the Corporation shall be bound by such determination in any judicial proceeding commenced pursuant to paragraph (C) of this Section 6.7.

(E)    The Corporation shall be precluded from asserting in any judicial proceeding commenced pursuant to paragraph (C) of this Section 6.7 that the procedures and presumptions of this Section 6.7 are not valid, binding and enforceable and shall stipulate in such proceeding that the Corporation is bound by all the provisions of this Section 6.7.

(F)    The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Section 6.7 shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Certificate of Incorporation, these By-laws, agreement, vote of stockholders or Disinterested Directors or otherwise. No repeal or modification of this Section 6.7 shall in any way diminish or adversely affect the rights of any director, officer, employee or agent of the Corporation hereunder in respect of any acts, omissions, facts or circumstances occurring or arising prior to any such repeal or modification.

(G)    The Corporation may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the GCL. To the extent that the Corporation maintains any policy or policies providing such insurance, each such director or officer, and each such agent or employee to which rights to indemnification have been granted as provided in paragraph (H) of this Section 6.7, shall be covered by such policy or policies in accordance with its or their terms to the maximum extent of the coverage thereunder for any such director, officer, employee or agent.

(H)    The Corporation may, to the extent authorized from time to time by the Board of Directors, grant rights to indemnification, and rights to be paid by the Corporation the expenses incurred in defending any proceeding in advance of its final disposition, to any employee or agent of the Corporation to the fullest extent of the provisions of this Section 6.7 with respect to the indemnification and advancement of expenses of directors and officers of the Corporation.

(I)    If any provision or provisions of this Section 6.7 shall be held to be invalid, illegal or unenforceable for any reason whatsoever: (1) the validity, legality and enforceability of the remaining provisions of this Section 6.7 (including, without limitation, each portion of any paragraph of this Section 6.7 containing any such provision held to be invalid, illegal or unenforceable, that is not itself held to be invalid, illegal or unenforceable) shall not in any way be affected or impaired thereby; and (2) to the fullest extent possible, the provisions of this Section 6.7 (including, without limitation, each such portion of any paragraph of this Section 6.7 containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

12

(J)    For purposes of this Section 6.7:

(1)    "<u>Disinterested Director</u>" means a director of the Corporation who is not and was not a party to the matter in respect of which indemnification is sought by the claimant.

(2)    "<u>Independent Counsel</u>" means a law firm, a member of a law firm, or an independent practitioner, that is experienced in matters of corporation law and shall include any person who, under the applicable standards of professional conduct then prevailing, would not have a conflict of interest in representing either the Corporation or the claimant in an action to determine the claimant's rights under this Section 6.7.

(3)    "<u>Change of Control</u>" has the meaning given such term in the Corporation's 2000 Stock Incentive Plan, as the same may be amended or superseded from time to time.

(K)    Any notice, request or other communication required or permitted to be given to the Corporation under this Section 6.7 shall be in writing and either delivered in person or sent by facsimile transmission, email, overnight mail or courier service, or certified or registered mail, postage prepaid, return receipt requested, to the Secretary of the Corporation and shall be effective only upon receipt by the Secretary.

**ARTICLE VII**

**CONTRACTS, PROXIES, ETC.**

**Section 7.1**    <u>Contracts</u>.  Except as otherwise required by law, the Certificate of Incorporation or these By-laws, any contracts or other instruments may be executed and delivered in the name and on the behalf of the Corporation by such officer or officers of the Corporation as the Board of Directors may from time to time direct. Such authority may be general or confined to specific instances as the Board of Directors may determine.  The Chairman (if an elected officer), the President or any Vice President may execute bonds, contracts, deeds, leases and other instruments to be made or executed for or on behalf of the Corporation.  Subject to any restrictions imposed by the Board of Directors or the Chairman (if an elected officer), the President or any Vice President of the Corporation may delegate contractual powers to others under his jurisdiction, it being understood, however, that any such delegation of power shall not relieve such officer of responsibility with respect to the exercise of such delegated power.

**Section 7.2**    <u>Proxies</u>.  Unless otherwise provided by resolution adopted by the Board of Directors, the Chairman (if an elected officer), the President or any Vice President may from time to time appoint an attorney or attorneys or agent or agents of the Corporation, in the name and on behalf of the Corporation, to cast the votes which the Corporation may be entitled to cast as the holder of stock or other securities in any other corporation, any of whose stock or other securities may be held by the Corporation, at meetings of the holders of the stock or other securities of such other corporation, or to consent in writing, in the name of the Corporation as such holder, to any action by such other corporation, and may instruct the person or persons so appointed as to the manner of casting such votes or giving such consent, and may execute or cause to be executed in the name and on behalf of the Corporation and under its corporate seal or otherwise, all such written proxies or other instruments as he may deem necessary or proper in the premises.

**ARTICLE VIII**

**AMENDMENTS**

**Section 8.1**    <u>Amendments</u>.  These By-laws may be altered, amended, or repealed at any meeting of the Board of Directors or of the stockholders, provided notice of the proposed change was given in the notice of the meeting and, in the case of a meeting of the Board of Directors, in a notice given not less than two days prior to the meeting; <u>provided</u>, <u>however</u>, that, in the case of amendments by stockholders, notwithstanding any other provisions of these By-laws or any provision of law which might otherwise permit a lesser vote or no vote, but in addition to any affirmative vote of the holders of any particular class or series of the capital stock of the Corporation required

13

by law, the Certificate of Incorporation or these By-laws, the affirmative vote of the holders of at least 80 percent of the voting power of all the then outstanding shares of the Voting Stock, voting together as a single class, shall be required to alter, amend or repeal any provision of these By-laws.

14

# ITEM 2

**AMENDED AND RESTATED
CERTIFICATE OF INCORPORATION
OF
W. R. GRACE & CO.**

*Adopted in accordance with the provisions
of §303, §242 and §245 of the
General Corporation Law of the State of Delaware*

\* \* \* \* \* \* \*

W. R. Grace & Co., a corporation organized and existing under the laws of the State of Delaware (the "Corporation"), hereby certifies as follows:

The name of the Corporation is "W. R. Grace & Co."

The original Certificate of Incorporation was filed with the Secretary of State of the State of Delaware on August 6, 1997, under the name Grace Specialty Chemicals, Inc.

The Corporation and certain of the Corporation's direct and indirect subsidiaries filed a joint plan of reorganization (as amended, modified and supplemented, and including the exhibits and schedules thereto, the "Plan") which, pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), was confirmed by an order, entered [●], of the United States Bankruptcy Court for the District of Delaware, a court having jurisdiction of a proceeding under the Bankruptcy Code (the "Order"), and such order provides for the making and filing of this Amended and Restated Certificate of Incorporation.

The Board of Directors of the Corporation duly adopted resolutions in accordance with Section 303, Section 242 and Section 245 of the General Corporation Law of the State of Delaware, as authorized by the Order, to put into effect and carry out the Plan by amending and restating the Certificate of Incorporation in its entirety to read as set forth as follows:

ARTICLE I

The name of the Corporation is W. R. Grace & Co.

ARTICLE II

The address of the Corporation's registered office in the State of Delaware is The Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Suite 400, Wilmington, Delaware, County of New Castle. The name of the Corporation's registered agent at such address is The Prentice-Hall Corporation System, Inc.

## ARTICLE III

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

## ARTICLE IV[1]

Section 1   The total number of shares of stock which the Corporation shall have authority to issue is [Three Hundred and Fifty-Three Million (353,000,000)], consisting of [Fifty-Three Million (53,000,000)] shares of Preferred Stock, par value $.01 per share (the "Preferred Stock"), and [Three Hundred Million (300,000,000)] shares of Common Stock, par value $.01 per share (the "Common Stock").

Section 2   The Preferred Stock may be issued from time to time in one or more series. The Board of Directors is hereby authorized to provide for the issuance of shares of Preferred Stock in series and, by filing a certificate pursuant to the applicable law of the State of Delaware ("Preferred Stock Designation"), to establish from time to time the number of shares to be included in each such series, and to fix the designation, powers, preferences and rights of the shares of each such series and the qualifications, limitations and restrictions thereof.  The authority of the Board of Directors with respect to each series shall include, but not be limited to, determination of the following:

(a) The designation of the series, which may be by distinguishing number, letter or title.

(b) The number of shares of the series, which number the Board of Directors may thereafter (except where otherwise provided in the Preferred Stock Designation) increase or decrease (but not below the number of shares thereof then outstanding).

(c) Whether dividends, if any, shall be cumulative or noncumulative and the dividend rate of the series.

(d) The dates on which dividends, if any, shall be payable.

(e) The redemption rights and price or prices, if any, for shares of the series.

(f) The terms and amount of any sinking fund provided for the purchase or redemption of shares of the series.

(g) The amounts payable on, and the preferences, if any, of, shares of the series in the event of any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Corporation.

---

[1] **[Note: to confirm whether capitalization numbers will change.]**

K&E 14337683.8

(h) Whether the shares of the series shall be convertible into shares of any other class or series, or any other security, of the Corporation or any other corporation, and, if so, the specification of such other class or series of such other security, the conversion price or prices or rate or rates, any adjustments thereof, the date or dates at which such shares shall be convertible and all other terms and conditions upon which such conversion may be made.

(i) Restrictions on the issuance of shares of the same series or of any other class or series.

(j) The voting rights, if any, of the holders of shares of the series.

Section 3   The Common Stock shall be subject to the express terms of the Preferred Stock and any series thereof.  Each share of Common Stock shall be equal to each other share of Common Stock.  The holders of shares of Common Stock shall be entitled to one vote for each such share upon all questions presented to the stockholders.

Except as may be provided in this Amended and Restated Certificate of Incorporation or in a Preferred Stock Designation, or as may be required by law, the Common Stock shall have the exclusive right to vote for the election of directors and for all other purposes, and holders of Preferred Stock shall not be entitled to receive notice of any meeting of stockholders at which they are not entitled to vote.

Section 4   The Corporation shall be entitled to treat the person in whose name any share of its stock is registered as the owner thereof for all purposes and shall not be bound to recognize any equitable or other claim to, or interest in, such share on the part of any other person, whether or not the Corporation shall have notice thereof, except as expressly provided by applicable law.

Section 5   There shall be designated a series of the Corporation's Preferred Stock, as follows:

(a) Designation and Amount.  The shares of such series shall be designated as "Series A Junior Participating Preferred Stock" (the "Series A Preferred Stock") and the number of shares constituting the Series A Preferred Stock shall be 3,000,000.  Such number of shares may be increased or decreased by resolution of the Board of Directors; provided, that no decrease shall reduce the number of shares of Series A Preferred Stock to a number less than the number of shares then outstanding plus the number of shares reserved for issuance upon the exercise of outstanding options, rights or warrants or upon the conversion of any outstanding securities issued by the Corporation convertible into Series A Preferred Stock.

(b) Dividends and Distributions.

(i)     Subject to the rights of the holders of any shares of any series of Preferred Stock (or any similar stock) ranking prior and superior to the Series A Preferred Stock with respect to dividends, the holders of shares of Series A Preferred Stock, in preference to the holders of Common Stock, and of any other junior stock, shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available for the purpose, quarterly dividends payable in cash on the first day of March, June, September and December in each year (each such date being referred to herein as a "Quarterly Dividend Payment Date"), commencing

3

on the first Quarterly Dividend Payment Date after the first issuance of a share or fraction of a share of Series A Preferred Stock, in an amount per share (rounded to the nearest cent) equal to the greater of (a) $1 or (b) subject to the provision for adjustment hereinafter set forth, 100 times the aggregate per share amount of all cash dividends, and 100 times the aggregate per share amount (payable in kind) of all non-cash dividends or other distributions, other than a dividend payable in shares of Common Stock or a subdivision of the outstanding shares of Common Stock (by reclassification or otherwise), declared on the Common Stock since the immediately preceding Quarterly Dividend Payment Date or, with respect to the first Quarterly Dividend Payment Date, since the first issuance of any share of a fraction of a share of Series A Preferred Stock. In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by reclassification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the amount to which holders of shares of Series A Preferred Stock were entitled immediately prior to such event under clause (b) of the preceding sentence shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

   (ii) The Corporation shall declare a dividend or distribution on the Series A Preferred Stock as provided in subparagraph (a) of this paragraph (2) immediately after it declares a dividend or distribution on the Common Stock (other than a dividend payable in shares of Common Stock); provided that, in the event no dividend or distribution shall have been declared on the Common Stock during the period between any Quarterly Dividend Payment Date and the next subsequent Quarterly Dividend Payment Date, a dividend of $1 per share on the Series A Preferred Stock shall nevertheless be payable on such subsequent Quarterly Dividend Payment Date.

   (iii) Dividends shall begin to accrue and be cumulative on outstanding shares of Series A Preferred Stock from the Quarterly Dividend Payment Date next preceding the date of issue of such shares, unless the date of issue of such shares is prior to the record date for the first Quarterly Dividend Payment Date, in which case dividends on such shares shall begin to accrue from the date of issue of such shares, or unless the date of issue is a Quarterly Dividend Payment Date or is a date after the record date for the determination of holders of shares of Series A Preferred Stock entitled to receive a quarterly dividend and before such Quarterly Dividend Payment Date, in either of which events such dividends shall begin to accrue and be cumulative from such Quarterly Dividend Payment Date. Accrued but unpaid dividends shall not bear interest. Dividends paid on the shares of Series A Preferred Stock in an amount less than the total amount of such dividends at the time accrued and payable on such shares shall be allocated pro rata on a share-by-share basis among all such shares at the time outstanding. The Board of Directors may fix a record date for the determination of holders of shares of Series A Preferred Stock entitled to receive payment of a dividend or distribution declared thereon, which record date shall be not more than 60 days prior to the date fixed for the payment thereof.

K&E 14337683.8

(c) <u>Voting Rights</u>. The holders of shares of Series A Preferred Stock shall have the following voting rights:

(i)     Subject to the provision for adjustment hereinafter set forth, each share of Series A Preferred Stock shall entitle the holder thereof to 100 votes on all matters submitted to a vote of the stockholders of the Corporation. In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by reclassification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the number of votes per share to which holders of shares of Series A Preferred Stock were entitled immediately prior to such event shall be adjusted by multiplying such number by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

(ii)    Except as otherwise provided herein, in any other certificate of designations creating a series of Preferred Stock or any similar stock, or by law, the holders of shares of Series A Preferred Stock and the holders of shares of Common Stock and any other capital stock of the Corporation having general voting rights shall vote together as one class on all matters submitted to a vote of stockholders of the Corporation.

(iii)   Except as set forth herein, or as otherwise provided by law, holders of Series A Preferred Stock shall have no special voting rights and their consent shall not be required (except to the extent they are entitled to vote with holders of Common Stock as set forth herein) for taking any corporate action.

(d) <u>Certain Restrictions</u>.

(i)     Whenever quarterly dividends or other dividends or distributions payable on the Series A Preferred Stock as provided in paragraph (b) are in arrears, thereafter and until all accrued and unpaid dividends and distributions, whether or not declared, on shares of Series A Preferred Stock outstanding shall have been paid in full, the Corporation shall not:

(A) declare or pay dividends, or make any other distributions, on any shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Stock;

(B) declare or pay dividends, or make any other distributions, on any shares of stock ranking on a parity (either as to dividends or upon liquidation, dissolution or winding up) with the Series A Preferred Stock, except dividends paid ratably on the Series A Preferred Stock, and all such parity stock on which dividends are payable or in arrears in proportion to the total amounts to which the holders of all such shares are then entitled;

(C) redeem or purchase or otherwise acquire for consideration shares of any stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Stock, provided that the Corporation may at any time redeem, purchase or otherwise acquire shares of any such junior stock in exchange for shares of

5

any stock of the Corporation ranking junior (either as to dividends or upon dissolution, liquidation or winding up) to the Series A Preferred Stock; or

(D) redeem or purchase or otherwise acquire for consideration any shares of Series A Preferred Stock, or any shares of stock ranking on a parity with the Series A Preferred Stock, except in accordance with a purchase offer made in writing or by publication (as determined by the Board of Directors) to all holders of such shares upon such terms as the Board of Directors, after consideration of the respective annual dividend rates and other relative rights and preferences of the respective series and classes, shall determine in good faith will result in fair and equitable treatment among the respective series of classes.

(ii)     The Corporation shall not permit any subsidiary of the Corporation to purchase or otherwise acquire for consideration any shares of stock of the Corporation unless the Corporation could, under subparagraph (i) of this paragraph (d), purchase or otherwise acquire such shares at such time and in such manner.

(e) Reacquired Shares. Any shares of Series A Preferred Stock purchased or otherwise acquired by the Corporation in any manner whatsoever shall be retired and cancelled promptly after the acquisition thereof. All such shares shall upon their cancellation become authorized but unissued shares of Preferred Stock and may be reissued as part of a new series of Preferred Stock subject to the conditions and restrictions on issuance set forth herein, or in any other certificate of designations creating a series of Preferred Stock or any similar stock or as otherwise required by law.

(f) Liquidation, Dissolution or Winding Up. Upon any liquidation, dissolution or winding up of the Corporation, no distribution shall be made (1) to the holders of shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Stock unless, prior thereto, the holders of shares of Series A Preferred Stock shall have received $100 per share, plus an amount equal to all accrued and unpaid dividends and distributions thereon, whether or not declared, to the date of such payment, provided that the holders of shares of Series A Preferred Stock shall also be entitled to receive an aggregate amount per share, subject to the provision for adjustment hereinafter set forth, equal to 100 times the aggregate amount to be distributed per share to holders of shares of Common Stock, or (2) to the holders of shares of stock ranking on a parity (either as to dividends or upon liquidation, dissolution or winding up) with the Series A Preferred Stock, except distributions made ratably on the Series A Preferred Stock and all such parity stock in proportion to the total amounts to which the holders of all such shares are entitled upon such liquidation, dissolution or winding up. In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by reclassification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the aggregate amount to which holders of shares of Series A Preferred Stock were entitled immediately prior to such event under the proviso in clause (1) of the preceding sentence shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

6

(g) <u>Consolidation, Merger, etc</u>.  In case the Corporation shall enter into any consolidation, merger, combination or other transaction in which the shares of Common Stock are exchanged for or changed into other stock or securities, cash and/or any other property, then in any such case each share of Series A Preferred Stock shall at the same time be similarly exchanged or changed into an amount per share, subject to the provision for adjustment hereinafter set forth, equal to 100 times the aggregate amount of stock, securities, cash and/or any other property (payable in kind), as the case may be, into which or for which each share of Common Stock is changed or exchanged.  In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by re-classification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the amount set forth in the preceding sentence with respect to the exchange or change of shares of Series A Preferred Stock shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

(h) <u>No Redemption</u>.  The shares of Series A Preferred Stock shall not be redeemable.

(i) <u>Rank</u>.  The Series A Preferred Stock shall rank, with respect to the payment of dividends and the distribution of assets, junior to all series of any other class of the Corporation's Preferred Stock.

(j) <u>Amendment</u>. This Amended and Restated Certificate of Incorporation of the Corporation shall not be amended in any manner which would materially alter or change the powers, preferences or special rights of the Series A Preferred Stock so as to affect them adversely without the affirmative vote of the holders of at least two-thirds of the outstanding shares of Series A Preferred Stock, voting together as a single class.

Section 6  Notwithstanding anything to the contrary in this Amended and Restated Certificate of Incorporation, the Corporation shall not issue nonvoting equity securities to the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)).  The prohibition on the issuance of nonvoting equity securities is included in this Amended and Restated Certificate of Incorporation in compliance with Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)).  This Section 6 of this Article IV may be amended or eliminated in accordance with applicable law from time to time in effect.

## ARTICLE V

The Corporation is to have perpetual existence.

## ARTICLE VI

Section 1  <u>Number of Directors</u>.  Subject to any rights of the holders of any class or series of Preferred Stock to elect additional directors under specified circumstances, the number of directors which shall constitute the Board of Directors shall be fixed from time to time by

7

resolution adopted by the affirmative vote of a majority of the total number of directors then in office.

Section 2   Classes of Directors.   At each annual meeting of stockholders, directors of the Corporation shall be elected to hold office until the expiration of the term for which they are elected, and until their successors have been duly elected and qualified; except that if any such election shall be not so held, such election shall take place at stockholders' meeting called and held in accordance with the Delaware General Corporation Law.   Unless and except to the extent that the By-laws of the Corporation shall so require, the election of directors of the Corporation need not be by written ballot.   The directors of the Corporation, other than those who may be elected by the holders of any series of Preferred Stock or any other series or class of stock as set forth in this Amended and Restated Certificate of Incorporation, shall be divided into three classes as nearly equal in size as is practicable, hereby designated Class I, Class II and Class III. The term of office of the initial Class I directors shall expire at the next succeeding annual meeting of stockholders, the term of office of the initial Class II directors shall expire at the second succeeding annual meeting of stockholders and the term of office of the initial Class III directors shall expire at the third succeeding annual meeting of the stockholders.   The initial Class I, Class II and Class III directors shall be as set forth in the Plan.   At each annual meeting after the first annual meeting of stockholders, directors to replace those of a Class whose terms expire at such annual meeting shall be elected to hold office until the third succeeding annual meeting and until their respective successors shall have been duly elected and qualified.   If the number of directors is hereafter changed, any newly created directorships or decrease in directorships shall be so apportioned among the classes as to make all classes as nearly equal in number as practicable.

Section 3   Newly-Created Directorships and Vacancies.   Subject to the rights of the holders of any series of Preferred Stock then outstanding, newly created directorships resulting from any increase in the number of directors or any vacancies in the Board of Directors resulting from death, resignation, retirement, disqualification, removal from office or any other cause may be filled, so long as there is at least one remaining director, only by the Board of Directors, provided that a quorum is then in office and present, or by a majority of the directors then in office, if less than a quorum is then in office, or by the sole remaining director.   Directors elected to fill a newly created directorship or other vacancies shall hold office until such director's successor has been duly elected and qualified or until his or her earlier death, resignation or removal as hereinafter provided.

Section 4   Removal of Directors.   Subject to the rights of the holders of any series of Preferred Stock then outstanding, any director may be removed from office at any time only for cause, at a meeting called for that purpose, but only by the affirmative vote of the holders of at least 80% of the voting power of all outstanding shares of Common Stock entitled to vote generally in the election of directors, voting together as a single class.

Section 5   Rights of Holders of Preferred Stock.   Notwithstanding the provisions of this ARTICLE VI, whenever the holders of one or more series of Preferred Stock issued by the Corporation shall have the right, voting separately or together by series, to elect directors at an annual or special meeting of stockholders, the election, term of office, filling of vacancies and

8

other features of such directorship shall be governed by the rights of such Preferred Stock as set forth in the certificate of designations governing such series.

Section 6  <u>By-Laws</u>.  The Board of Directors is expressly authorized to adopt, amend, alter, change or repeal the by-laws of the Corporation.  Notwithstanding the foregoing and anything contained in this Amended and Restated Certificate of Incorporation to the contrary, the by-laws of the Corporation shall not be amended, altered, changed or repealed by the stockholders, and no provision inconsistent therewith shall be adopted by the stockholders, without the affirmative vote of the holders of 80% of the voting power of all outstanding shares of the Corporation entitled to vote generally in the election of directors, voting together as a single class.

Section 7  <u>No Cumulative Voting</u>.  Except as may otherwise be set forth in the resolution or resolutions of the Board of Directors providing the issue of a series of Preferred Stock, and then only with respect to such series of Preferred Stock, cumulative voting in the election of directors is specifically denied.

## ARTICLE VII

Section 1  <u>Limitation of Liability</u>.

(a)  To the fullest extent permitted by the Delaware General Corporation Law as it now exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than permitted prior thereto), no director of the Corporation shall be liable to the Corporation or its stockholders for monetary damages arising from a breach of fiduciary duty owed to the Corporation or its stockholders.

(b)  Any repeal or modification of the foregoing paragraph shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

Section 2  <u>Right to Indemnification</u>.  Each person who was or is made a party or is threatened to be made a party to or is otherwise involved (including involvement, without limitation, as a witness) in any actual or threatened action, suit or proceeding, whether civil, criminal, administrative or investigative (a "<u>proceeding</u>"), by reason of the fact that such person is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as an employee or agent of the Corporation or as a director, officer, partner, member, trustee, administrator, employee or agent of another corporation or of a partnership, joint venture, limited liability company, trust or other enterprise, including service with respect to an employee benefit plan (an "<u>indemnitee</u>"), whether the basis of such proceeding is alleged action in an official capacity as a director or officer or in any other capacity while serving as a director or officer, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than permitted prior thereto), against all expense, liability and loss (including attorneys' fees and

K&E 14337683.8

related disbursements, judgments, fines, excise taxes or penalties under the Employee Retirement Income Security Act of 1974, as amended from time to time ("ERISA"), penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such indemnitee in connection therewith and such indemnification shall continue as to an indemnitee who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the indemnitee's heirs, executors and administrators; provided, however, that, except as provided in Section 3 of this ARTICLE VII with respect to proceedings to enforce rights to indemnification, the Corporation shall indemnify any such indemnitee in connection with a proceeding (or part thereof) initiated by such indemnitee only if such proceeding (or part thereof) was authorized by the Board of Directors of the Corporation.  The right to indemnification conferred in this Section 2 of this ARTICLE VII shall be a contract right and shall include the obligation of the Corporation to pay the expenses incurred in defending any such proceeding in advance of its final disposition (an "advance of expenses"); provided, however, that an advance of expenses incurred by an indemnitee shall be made only upon delivery to the Corporation of an undertaking (an "undertaking"), by or on behalf of such indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (a "final adjudication") that such indemnitee is not entitled to be indemnified for such expenses under this Section 2 or otherwise.  The Corporation may, by action of its Board of Directors, provide indemnification to employees and agents of the Corporation with the same or lesser scope and effect as the foregoing indemnification of directors and officers.

Section 3    Procedure for Indemnification.  Any indemnification of a director or officer of the Corporation or advance of expenses (including attorneys' fees, costs and charges) under Section 2 of this ARTICLE VII shall be made promptly, and in any event within forty-five days (or, in the case of an advance of expenses, twenty days, provided that the director or officer has delivered the undertaking contemplated by Section 2 of this ARTICLE VII), upon the written request of the director or officer.  If a determination by the Corporation that the director or officer is entitled to indemnification pursuant to this ARTICLE VII is required, and the Corporation fails to respond within sixty days to a written request for indemnity, the Corporation shall be deemed to have approved the request.  If the Corporation denies a written request for indemnification or advance of expenses, in whole or in part, or if payment in full pursuant to such request is not made within forty-five days (or, in the case of an advance of expenses, twenty days, provided that the director or officer has delivered the undertaking contemplated by Section 2 of this ARTICLE VII), the right to indemnification or advances as granted by this ARTICLE VII shall be enforceable by the director or officer in any court of competent jurisdiction.  Such person's costs and expenses incurred in connection with successfully establishing his or her right to indemnification, in whole or in part, in any such action shall also be indemnified by the Corporation.  It shall be a defense to any such action (other than an action brought to enforce a claim for the advance of expenses where the undertaking required pursuant to Section 2 of this ARTICLE VII, if any, has been tendered to the Corporation) that the claimant has not met the standards of conduct which make it permissible under the Delaware General Corporation Law for the Corporation to indemnify the claimant for the amount claimed, but the burden of such defense shall be on the Corporation.  Neither the failure of the Corporation (including its Board of Directors, independent legal counsel or its stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because such person has met the applicable standard of conduct set forth in the Delaware General Corporation Law, nor an actual determination by the Corporation (including

10

its Board of Directors, independent legal counsel or its stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.  The procedure for indemnification of other employees and agents for whom indemnification is provided pursuant to Section 2 of this ARTICLE VII shall be the same procedure set forth in this Section 3 for directors or officers, unless otherwise set forth in the action of the Board of Directors providing indemnification for such employee or agent.

Section 4    Insurance.  The Corporation may purchase and maintain insurance on its own behalf and on behalf of any person who is or was or has agreed to become a director, officer, employee or agent of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss asserted against him or her and incurred by him or her in any such capacity, or arising out of his or her status as such, whether or not the Corporation would have the power to indemnify such person against such expenses, liability or loss under the Delaware General Corporation Law.

Section 5    Service for Subsidiaries.  Any person serving as a director, officer, employee or agent of another corporation, partnership, limited liability company, joint venture or other enterprise, at least 50% of whose equity interests are owned by the Corporation (a "subsidiary" for this ARTICLE VII) shall be conclusively presumed to be serving in such capacity at the request of the Corporation.

Section 6    Reliance.  Persons who after the date of the adoption of this ARTICLE VII become or remain directors or officers of the Corporation or who, while a director or officer of the Corporation, become or remain a director, officer, employee or agent of a subsidiary, shall be conclusively presumed to have relied on the rights to indemnity, advance of expenses and other rights contained in this ARTICLE VII in entering into or continuing such service.  The rights to indemnification and to the advance of expenses conferred in this ARTICLE VII shall apply to claims made against an indemnitee arising out of acts or omissions which occurred or occur both prior and subsequent to the adoption hereof.

Section 7    Other Rights; Continuation of Right to Indemnification.  The rights to indemnification and to the advance of expenses conferred in this ARTICLE VII shall not be exclusive of any other right which any person may have or hereafter acquire under this Amended and Restated Certificate of Incorporation or under any statute, by-law, agreement, vote of stockholders or disinterested directors or otherwise.  All rights to indemnification under this ARTICLE VII shall be deemed to be a contract between the Corporation and each director or officer of the Corporation who serves or served in such capacity at any time while this ARTICLE VII is in effect.  Any repeal or modification of this ARTICLE VII or any repeal or modification of relevant provisions of the Delaware General Corporation Law or any other applicable laws shall not in any way diminish any rights to indemnification of such director or officer or the obligations of the Corporation arising hereunder with respect to any proceeding arising out of, or relating to, any actions, transactions or facts occurring prior to the final adoption of such modification or repeal.

11

Section 8   Merger or Consolidation.  For purposes of this ARTICLE VII, references to the "Corporation" shall include, in addition to the resulting Corporation, any constituent Corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers and employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent Corporation, or is or was serving at the request of such constituent Corporation as a director, officer, employee or agent of another Corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under this ARTICLE VII with respect to the resulting or surviving Corporation as he or she would have with respect to such constituent Corporation if its separate existence had continued.

Section 9   Savings Clause.  If this ARTICLE VII or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Corporation shall nevertheless indemnify each person entitled to indemnification under Section 2 of this ARTICLE VII as to all expense, liability and loss (including attorneys' fees and related disbursements, judgments, penalties, fines, ERISA excise taxes and penalties, and amounts paid or to be paid in settlement) actually and reasonably incurred or suffered by such person and for which indemnification is available to such person pursuant to this ARTICLE VII to the fullest extent permitted by any applicable portion of this ARTICLE VII that shall not have been invalidated and to the fullest extent permitted by applicable law.

## ARTICLE VIII

The stockholders of the Corporation may not take any action by written consent in lieu of a meeting, and must take any actions at a duly called annual or special meeting of stockholders and the power of stockholders to consent in writing without a meeting is specifically denied. Special meetings of stockholders of the Corporation may be called only by either the chairman of the Board of Directors or the chief executive officer of the Corporation or pursuant to a resolution adopted by the affirmative vote of the majority of the total number of directors then in office.  Advance notice of stockholder nominations for the election of directors and of business to be brought by stockholders before any meeting of the stockholders of the Corporation shall be given in the manner provided in the by-laws of the Corporation.

## ARTICLE IX

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in the manner now or hereafter prescribed herein and by the laws of the state of Delaware, and all rights conferred upon stockholders herein are granted subject to this reservation.  Notwithstanding any other provision of this Amended and Restated Certificate of Incorporation or the by-laws of the Corporation, and notwithstanding the fact that a lesser percentage or separate class vote may be specified by law or otherwise, but in addition to any affirmative vote of the holders of any particular class or series of the capital stock required by law or otherwise, the affirmative vote of the holders of at least 80% of the voting power of all outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to adopt any provision inconsistent with, to amend, alter, change or repeal any provision of, or to adopt a by-law inconsistent with, ARTICLE VI, ARTICLE VII,

12

ARTICLE VIII, ARTICLE IX and ARTICLE X, of this Amended and Restated Certificate of Incorporation.

## ARTICLE X

Section 1   Right to Impose Trading Restrictions.

(a) In the event that the Corporation determines (in consultation with outside counsel) that at least 25 percentage points of "owner shift" have occurred with respect to the Corporation's equity for purposes of Section 382 of the Internal Revenue Code of 1986, as amended, and the Treasury regulations thereunder (collectively, "Section 382"), during the relevant "testing period", then the Board of Directors shall meet on an expedited basis to determine whether to impose restrictions on the trading of the Corporation's stock in accordance with this ARTICLE X and to determine the specific terms of such restrictions.  Unless otherwise defined herein, all terms used in this ARTICLE X (including but not limited to "5% shareholder," "testing period," "ownership change," and "owner shift") have the meaning ascribed to such terms under Section 382 and shall be construed accordingly.

(b) In determining whether 25 percentage points of "owner shift" have occurred, it shall be presumed that at least 12.5 percentage points of "owner shift" have occurred as a result of the issuance of warrants to the WRG Asbestos PI Trust, a Delaware statutory trust, established pursuant to Section 524(g) of the Bankruptcy Code (the "Asbestos PI Trust") (such warrants, the "Trust Warrants").  To the extent that the Trust Warrants are exercised in whole or in part, the actual amount of "owner shift" resulting from such exercise shall be used in determining whether 25 percentage points of "owner shift" have occurred, and the amount of the 12.5 percentage points of "owner shift" that were previously presumed shall be reduced by such amount.  In the event that any or all of the Trust Warrants shall expire unexercised, then no further presumption with respect to the Trust Warrants shall apply.

Section 2   Procedure to Impose Trading Restrictions.  If the Board of Directors determines to impose trading restrictions on transfers of the Corporation's stock pursuant to Section 1(a) of this ARTICLE X, which determination shall require the affirmative vote of at least 66-2/3% of all the directors, then the Corporation shall promptly announce the imposition and terms of such trading restrictions by means of a press release and the filing of a Current Report on Form 8-K with the Securities and Exchange Commission.  The terms of such restrictions, including the form of any notice or application documentation that may be associated with such restrictions, shall also be described by the Corporation in each quarterly and annual report filed by the Corporation with the Securities and Exchange Commission.

Section 3   Principal Terms of Trading Restrictions.  If the Board of Directors determines to impose trading restrictions on transfers of the Corporation's stock in accordance with Section 1(a), the principal terms of such trading restrictions shall be as set forth in this Section 3 of this ARTICLE X. The Board of Directors shall have the authority in its sole discretion to determine and establish the definitive and ancillary terms of such trading restrictions, so long as such terms are consistent with the provisions of this ARTICLE X:

(a) Any acquisition of the Corporation's stock by a person or entity that is not a 5% shareholder of the Corporation will be null and void *ab initio* as to the purchaser to the extent such acquisition causes such person or entity to become a 5% shareholder of the Corporation, unless the acquisition of such stock (i) was previously approved in writing by the Board of Directors, (ii) will not result in an increase in an "owner shift" for purposes of Section 382 in excess of any "owner shift" that would have occurred if the seller had sold the same amount of stock through general public market transactions (e.g., because the stock is purchased from another 5% shareholder whose stock acquisition had caused an "owner shift"), (iii) is the result of the exercise by the Asbestos PI Trust of the Trust Warrants, or (iv) is the result of any stock acquisition by the Asbestos PD Trust or the Asbestos PI Trust of stock directly from the Corporation (or any successor to the Corporation). Clauses (i) through (iv) of the immediately preceding sentence, each a "Permitted Acquisition".

(b) Any person or entity that is a 5% stockholder of the Corporation shall not be permitted to acquire additional stock of the Corporation and any such purchase of such additional stock shall be null and void *ab initio* as to the purchaser unless the acquisition of such stock was (1) previously approved in writing by the Corporation's Board of Directors or (2) is a Permitted Acquisition.

(c) Any stockholder of the Corporation seeking to use the "Permitted Acquisition" exception in the case of Section 3(a) or Section 3(b) of this ARTICLE X shall, prior to such transaction, notify the Corporation of its intent to engage in a Permitted Acquisition and provide at its own expense either (i) a legal opinion reasonably acceptable to the Corporation to the effect that such acquisition will qualify as a Permitted Acquisition, or (ii) a representation reasonably acceptable to the Corporation establishing that such acquisition will qualify as a Permitted Acquisition.

(d) Any person or entity that holds 5% or more of the Corporation's stock shall not be permitted to sell such stock, except that (i) there shall be no restriction on the ability of any person or entity to dispose of any stock of the Corporation held by such stockholder on the date on which the Corporation emerged from Chapter 11 bankruptcy protection (the "Emergence Date"), taking into account any adjustment in the number of shares held by such person or entity as a result of any stock splits, stock dividends, or other transactions that have caused a change in the number of shares held by such person or entity but which did not change the relative economic ownership of such person or entity in the Corporation;

(ii)     Any person or entity holding 9.99% or less, by value, of the outstanding stock of the Corporation shall be permitted to dispose of an amount of such stock representing up to 5%, by value, of the outstanding stock of the Corporation. Beginning two Business Days after such person or entity owns less than 5%, by value, of the Corporation's stock, such person or entity shall be permitted to sell the remainder of such stock. The term "Business Day" shall mean any day other than a Saturday, Sunday or a day on which banks located in New York, New York shall be authorized or required by law to close; and

(iii)     the sale of such stock shall be permitted if either (1) the purchase of such shares is a Permitted Acquisition, or (2) the sale was previously approved in writing by the Corporation's Board of Directors.

14

(e) The Corporation shall announce by press release and the filing of a Current Report on Form 8-K with the Securities and Exchange Commission if its Board of Directors shall determine that trading restrictions are no longer required. Any such trading restrictions shall expire automatically if the total amount of "owner shift" during the relevant "testing period" shall be less than 20 percentage points for purposes of Section 382.

(f) Notwithstanding anything to the contrary contained herein, no restrictions shall be imposed on the acquisition or disposition of the Corporation's stock by the Asbestos PI Trust or the WRG Asbestos Property Damage Settlement Trust, a Delaware statutory trust, established pursuant to Section 524(g) of the Bankruptcy Code (the "Asbestos PD Trust"), or on the ability of any person or entity to acquire any or all other stock of the Corporation from the Asbestos PI Trust or the Asbestos PD Trust to the extent the aforementioned stock is acquired by the Asbestos PI Trust or the Asbestos PD Trust directly from the Corporation.

Section 4    Requirement to Provide Information Regarding Share Ownership. All stockholders of the Corporation that have filed or would be required to file a Schedule 13D or 13G with the Securities and Exchange Commission with respect to the Corporation shall be required to provide information to the Corporation regarding such stockholder's ownership of the Corporation's stock, including the dates of the acquisition and disposition of such stock and the amounts of such acquisitions and dispositions, to the extent reasonably requested by the Corporation. In determining whether any information requested by the Corporation is reasonable, any such information shall be reasonably necessary only to the extent such information is relevant to the Corporation in determining the level of owner shift that has or will occur for purposes of Section 382. Such information shall be provided within five Business Days of the Corporation's request, and, at the stockholder's reasonable request, the Corporation shall execute a standard confidentiality agreement with respect to such information.

Section 5    Bankruptcy Rules; Expiration. The restrictions described herein, once in effect, shall be subject to the standard rules for corporations emerging from bankruptcy, including that any acquisitions of stock in violation of such restrictions shall be null and void *ab initio* without any action being taken by the Corporation.

(a) Any trading restrictions imposed by the Board of Directors shall automatically expire on (i) the second anniversary of the imposition of such restrictions, subject to the ability of the Board of Directors to impose new restrictions by an affirmative vote of the Board of Directors pursuant to Section 2 above or (ii) the date on which the amount of "owner shift" for purposes of Section 382 during the "testing period" is less than 20 percentage points.

(b) This ARTICLE X shall automatically expire on the date that is three years after the Emergence Date; provided, however, that the Board of Directors shall be permitted to extend such provisions for additional three-year periods upon the affirmative vote of at least 66-2/3% of all the directors.

IN WITNESS WHEREOF, W. R. Grace & Co. has caused this Amended and Restated Certificate of Incorporation to be signed by its [Senior Vice President] this [●] day of [●], 20[●].

15

W. R. GRACE & CO.


By:_____
    [●]

16

# CERTIFICATE OF AMENDMENT
**STOCK CORPORATION**
Office of the Secretary of the State
30 Trinity Street/P.O. Box 150470/Hartford, CT  06115-0470 Rev. 12/1999

| Space For Off | FILING #0002234426 PG  01 OF  04 VOL B-00400<br>FILED 03/30/2001 11:00 AM PAGE  03114<br>SECRETARY OF THE STATE<br>CONNECTICUT SECRETARY OF THE STATE |
|---|---|

**1.  NAME OF CORPORATION:**

### W. R. GRACE & CO. - CONN.

**2.  THE CERTIFICATE OF INCORPORATION IS** (check A., B. or C.)

_____  **A.  AMENDED.**

__XX__  **B.  AMENDED AND RESTATED.**

_____  **C.  RESTATED.**

**3.  TEXT OF EACH AMENDMENT/RESTATEMENT:**

A.  THE AUTHORIZED SHARES OF THE CORPORATION ARE REDUCED BY CANCELING THE PREFERRED, CLASS A PREFERRED, CLASS B PREFERRED, AND CLASS C PREFERRED SHARES SET FORTH BELOW:

| CLASS | NUMBER OF SHARES | PAR VALUE |
|---|---|---|
| PREFERRED | 40,000 | $100 |
| CLASS A PREFERRED | 50,000 | $100 |
| CLASS B PREFERRED | 40,000 | $100 |
| CLASS C PREFERRED | 5,000,000 | WITHOUT PAR VALUE |

B.  THE TOTAL NUMBER OF AUTHORIZED SHARES, AFTER THE FOREGOING REDUCTION OF THE SHARES, IS AS FOLLOWS:

| CLASS | NUMBER OF SHARES | PAR VALUE |
|---|---|---|
| COMMON | 300,000,000 | $1.00 |

C.  THE CERTIFICATE OF INCORPORATION OF W. R. GRACE & CO. - CONN., IS AMENDED AND RESTATED IN ITS ENTIRETY AND REPLACED WITH THE AMENDED AND RESTATED CERTIFICATE OF INCORPORATION SET FORTH IN EXHIBIT A.

**(Please reference an 8 1/2 X 11 attachment if additional space is needed)**

Space For Office Use Only

FILING #0002234420 PG 02 OF 04 VOL B-00400
FILED 03/30/2001 11:00 AM PAGE 03115
SECRETARY OF THE STATE
CONNECTICUT SECRETARY OF THE STATE

**4.  VOTE INFORMATION** (check A., B. or C.)

<u>XX</u>  **A.  The resolution was approved by shareholders as follows:**

(set forth all voting information required by Conn. Gen. Stat. Section 33-800 as amended in the space provided below)

| Number of Outstanding Voting Shares | Number of Shares Entitled to Vote | Vote Cast in favor of Amendment |
|---|---|---|
| 84,500,000 | 84,500,000 | 84,500,000 |

The number of votes cast in favor of the amendment was sufficient for approval of the amendment.

The resolution was duly authorized by the board of directors.

_____  **B.  The amendment was adopted by the board of directors without shareholder action. No shareholder vote was required for adoption.**

_____  **C.  The amendment was adopted by the incorporators without shareholder action. No shareholder vote was required for adoption.**

**5. EXECUTION**

Dated this 30th day of March, 2001

| W. Brian McGowan | Senior Vice President | *W B McGowan* |
|---|---|---|
| **Print or type name of signatory** | **Capacity of signatory** | **Signature** |

.HrtLib1:361039.1 March 28, 2001

## EXHIBIT A

**AMENDED AND RESTATED
CERTIFICATE OF INCORPORATION
OF
W. R. GRACE & CO. - CONN.**

FIRST:  The name of the corporation (the "Corporation") is: W. R. Grace & Co. - Conn.

SECOND:  The nature of the business to be transacted, or the purposes to be promoted or carried out by the Corporation, is to engage in any lawful act or activity for which Corporations may be formed under the Connecticut Business Corporation Act or any applicable successor act thereto, as the same may be amended from time to time.

THIRD:  A.  The designation of each class of shares, the authorized number of shares of each such class, and the par value of each share thereof are as follows:

| CLASS | NUMBER OF SHARES | PAR VALUE PER SHARE |
|---|---|---|
| Common | 300,000,000 | $1.00 |

B.  All shares of common stock have unlimited voting rights and together are entitled to receive the net assets of the Corporation upon dissolution.

*C.  Notwithstanding anything to the contrary in this Amended and Restated Certificate of Incorporation, the Corporation shall not issue nonvoting equity securities to the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)).  The prohibition on the issuance of nonvoting equity securities is included in this Amended and Restated Certificate of Incorporation in compliance with Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)).  This paragraph C. may be amended or eliminated in accordance with applicable law from time to time in effect.*

FOURTH:  The personal liability to the Corporation or its shareholders of a person who is or was a director of the Corporation for monetary damages for breach of duty as a director shall be limited to the amount of the compensation received by the director for serving the Corporation during the year of the violation if such breach did not (a) involve a knowing and culpable violation of law by the director, (b) enable the director or an associate, as defined in subdivision (3) of Section 33-840 of the Connecticut Business Corporation Act as in effect on the date hereof and as it may be amended from

time to time, to receive an improper personal economic gain, (c) show a lack of good faith and a conscious disregard for the duty of the director to the Corporation under circumstances in which the director was aware that the director's conduct or omission created an unjustifiable risk of serious injury to the Corporation, (d) constitute a sustained and unexcused pattern of inattention that amounted to an abdication of the director's duty to the Corporation, or (e) create liability under Section 33-757 of the Connecticut Business Corporation Act as in effect on the effective date hereof and as it may be amended from time to time. The personal liability of a person who is or was a director to the Corporation or its shareholders for breach of duty as a director shall further be limited to the fullest extent allowed from time to time by Connecticut law. This Article Fourth shall not limit or preclude the liability of a person who is or was a director for any act or omission occurring prior to the effective date hereof. Any lawful repeal or modification of this Article Fourth or the adoption of any provision inconsistent herewith by the Board of Directors and the shareholders of the Corporation shall not, with respect to a person who is or was a director, adversely affect any limitation of liability, right or protection of such person existing at or prior to the effective date of such repeal, modification or adoption of a provision inconsistent herewith.

FIFTH: The Corporation shall indemnify its directors for liability, as defined in Section 33-770(5) of the Connecticut Business Corporation Act, as in effect on the date hereof and as it may be amended from time to time, to any person for any action taken, or any failure to take any action, as a director, except liability that (a) involved a knowing and culpable violation of law by the director, (b) enabled the director or an associate (as defined in Section 33-840 of the Connecticut Business Corporation Act, as in effect on the date hereof and as it may be amended from time to time) to receive an improper personal gain, (c) showed a lack of good faith and conscious disregard for the duty of the director to the Corporation under circumstances in which the director was aware that the director's conduct or omission created an unjustifiable risk of serious injury to the Corporation, (d) constituted a sustained and unexcused pattern of inattention that amounted to an abdication of the director's duty to the Corporation, or (e) created liability under Section 33-757 of the Connecticut Business Corporation Act, as in effect on the date hereof and as it may be amended from time to time. Notwithstanding the preceding sentence, the Corporation shall not be required to indemnify an indemnitee in connection with a proceeding commenced by the indemnitee against the Corporation. This Article shall not affect the indemnification or advance of expenses to a director for any liability stemming from acts or omissions occurring prior to the effective date of this Article. Any lawful repeal or modification of this Article or the adoption of any provision inconsistent herewith by the board of directors and the shareholders of the Corporation shall not, with respect to a person who is or was a director adversely affect any right to indemnification of such person existing at or prior to the effective date of such repeal, modification or adoption of a provision inconsistent herewith.

The Corporation shall not be obligated by Section 33-776(d) of the Connecticut Business Corporation Act to indemnify, or advance expenses, to any current or former employee or agent of the Corporation who is not a director. However, the Corporation may, at the discretion of the board of directors, indemnify, or advance expenses to, any current or former employee or agent of the Corporation who is not a director to the fullest extent permitted by law.

**STANDARD FORM OF AMENDED AND RESTATED CERTIFICATE OF INCORPORATION FOR CERTAIN DELAWARE DEBTOR SUBSIDIARIES**

**AMENDED AND RESTATED**
**CERTIFICATE OF INCORPORATION**
**OF**

_____ [1]

*Adopted in accordance with the provisions*
*of §303, §242 and §245 of the*
*General Corporation Law of the State of Delaware*

\* \* \* \* \* \* \*

_____, a corporation organized and existing under the laws of the State of Delaware (the "Corporation"), hereby certifies as follows:

The name of the Corporation is "_____"

The original Certificate of Incorporation was filed with the Secretary of State of Delaware on _____, under the name _____

The Corporation and certain of the Corporation's affiliates filed a joint plan of reorganization (the "Plan") which, pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), was confirmed, as modified, by an order, entered _____, of the United States Bankruptcy Court for the District of Delaware, a court having jurisdiction of a proceeding under the Bankruptcy Code (the "Order"), and such order provides for the making and filing of this Amended and Restated Certificate of Incorporation.

The Board of Directors of the Corporation duly adopted resolutions in accordance with Section 303, Section 242 and Section 245 of the General Corporation Law of the State of Delaware, as authorized by the Order, to put into effect and carry out the Plan by amending and restating the Certificate of Incorporation in its entirety to read as follows:

ARTICLE I

The name of the Corporation is _____.

ARTICLE II

The address, including street, number, city, and county, of the registered office of the Corporation in the State of Delaware is 2711 Centerville Road, Suite 400, City of Wilmington 19908, County of New Castle; and the name of the registered agent of the corporation in the State of Delaware at such address is Corporation Service Company.

---

[1] **BLANKS TO BE FILLED IN FOR EACH OF THE DELAWARE COMPANIES CONTAINED ON APPENDIX A ATTACHED HERETO**

ARTICLE III

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware (the "GCL").

ARTICLE IV

Section 1   Authorized Shares.  The total number of shares of stock which the Corporation shall have authority to issue is _____ (_____) shares of Common Stock, par value $.01 per share.

**Section 2   Nonvoting Equity Securities.  Notwithstanding anything to the contrary in this Amended and Restated Certificate of Incorporation, the Corporation shall not issue nonvoting equity securities to the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)).  The prohibition on the issuance of nonvoting equity securities is included in this Amended and Restated Certificate of Incorporation in compliance with Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)).  This Section 2 of this ARTICLE IV may be amended or eliminated in accordance with applicable law from time to time in effect.**

ARTICLE V

The Corporation is to have perpetual existence.

ARTICLE VI

Section 1   Number of Directors.  The number of directors which shall constitute the Board of Directors shall be fixed from time to time by resolution adopted by the affirmative vote of a majority of the total number of directors then in office, or as otherwise provided in the by-laws of the Corporation.

Section 2   Amendment of By-laws.  In furtherance of and not in limitation of the powers conferred bu statute, the board of directors of the Corporation is expressly authorized to make, alter, amend or repeal the by-laws of the Corporation.

ARTICLE VII

Section 1   Limitation of Liability.  The personal liability of the directors of the Corporation is hereby eliminated to the fullest extent permitted by the provisions of paragraph (7) of subsection (b) of Section 102 of the GCL, as the same may be amended and supplemented

Section 2   Right to Indemnification.  The Corporation shall, to the fullest extent permitted by the provisions of Section 145 of the GCL, as the same may be amended and supplemented, indemnify any and all persons whom it shall have power to indemnify under said section from and against any and all of the expenses, liabilities, or other matters referred to in or covered by said section, and the indemnification provided for herein shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any by-law, agreement, vote of

2

stockholders or disinterested directors or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee, or agent and shall inure to the benefit of the heirs, executors, and administrators of such person.

## ARTICLE VIII

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in the manner now or hereafter prescribed herein and by the laws of the State of Delaware, and all rights conferred upon stockholders herein are granted subject to this reservation.

IN WITNESS WHEREOF, the Corporation has caused this Amended and Restated Certificate of Incorporation to be signed this _____ day of _____, 20__.

_____

By:_____
    Name:
    Title:

3

**Debtors Using**
**Delaware Form Certificate of Incorporation**

| Corporation | CAPITALIZATION | | Date of Incorporation | Original Corporate Name |
|---|---|---|---|---|
| | No. of Shares | Par Value | | |
| A-1 Bit & Tool Co., Inc. | 1,000 | $1.00 | 7/8/1988 | N/A |
| Amicon, Inc. | 1,000 | $1.00 | 1/3/1992 | N/A |
| CB Biomedical, Inc. | 1,000 | $1.00 | 6/28/1996 | Circe Biomedical, Inc. |
| CCHP, Inc. | 1,000 | $0.01 | 4/12/1991 | N/A |
| Coalgrace, Inc. | 100 | $1.00 | 10/20/1977 | N/A |
| Coalgrace II, Inc. | 1,000 | $1.00 | 10/7/1991 | N/A |
| Creative Food 'N Fun Company | 1,000 | $1.00 | 3/22/1983 | N/A |
| Darex Puerto Rico, Inc. | 1,000 | $0.00 | 8/1/1968 | Hatco Puerto Rico, Inc. |
| Del Taco Restaurants, Inc. | 1,000 | $1.00 | 8/4/1983 | Taco Villa, Inc. |
| G C Limited Partners I, Inc. | 1,000 | $1.00 | 4/15/1992 | WRG Four, Inc. |
| G C Management, Inc. | 1,000 | $1.00 | 6/24/1992 | Grace Cocoa Management, Inc. |
| GEC Management Corporation | 1,000 | $1.00 | 4/10/1989 | GNRC Management Corporation |
| GN Holdings, Inc. | (C)  200 (P)  800 | (C) $0.01 (P) $0.01 | 1/24/1991 | CCHP Delaware, Inc. |
| GPC Thomasville Corp. | 1,000 | $1.00 | 1/7/1993 | GPC Divestment Corp. |
| Grace A-B Inc. | 1,000 | $1.00 | 6/1/1981 | N/A |
| Grace A-B II Inc. | 1,000 | $1.00 | 10/7/1991 | N/A |
| Grace Drilling Company | (C) 1,500 (P) 1,500 | (C)  $1.00 (P) $100.00 | 12/4/1974 | Javelin Drilling Corp. |
| Grace Energy Corporation | 1,000 | $1.00 | 12/11/1979 | Grace Natural Resources Corp. |
| Grace Environmental, Inc. | 10,000 | $1.00 | 9/27/1989 | N/A |
| Grace Europe, Inc. | 1,000 | $1.00 | 6/25/1970 | Grace Industrial Chemicals, Inc. |
| Grace H-G Inc. | 1,000 | $1.00 | 10/8/1980 | N/A |
| Grace H-G II, Inc. | 1,000 | $1.00 | 10/7/1991 | N/A |
| Grace Hotel Services Corporation | 10,000 | $1.00 | 7/17/1990 | Hotel Services Corporation |
| Grace International Holdings, Inc. | 1,000 | $1.00 | 10/25/1995 | Dearborn International Holdings, Inc. |
| Grace PAR Corporation | 1,000 | $1.00 | 2/3/1981 | N/A |
| Grace Petroleum Libya Incorporated | 250 | $100.00 | 6/30/1955 | Water Street Corporation |
| Grace Tarpon Investors, Inc. | 1,000 | $1.00 | 4/15/1992 | WRG Three, Inc. |
| Grace Ventures Corp. | 1,000 | $1.00 | 2/2/1982 | Ven-Tech Two, Inc. |
| Grace Washington, Inc. | 1,000 | $1.00 | 12/14/1988 | N/A |
| Gracoal , Inc. | 100 | $1.00 | 11/21/1975 | N/A |

| Corporation | CAPITALIZATION | | Date of Incorporation | Original Corporate Name |
|---|---|---|---|---|
| | No. of Shares | Par Value | | |
| Gracoal II, Inc. | 1,000 | $0.00 | 5/22/1972 | Iron Creek Company |
| Guanica-Caribe Land Development Corporation | 1,000 | $1.00 | 7/14/1994 | N/A |
| Hanover Square Corporation | 250 | $100.00 | 6/30/1955 | N/A |
| Homco International, Inc. | 303 | $1,000.00 | 2/25/1974 | N/A |
| LB Realty, Inc. | 5,000 | $1.00 | 11/10/1992 | N/A |
| Monroe Street, Inc. | 1,000 | $1.00 | 7/17/1992 | N/A |
| MRA Holdings Corp. | 1,000 | $0.01 | 12/28/1994 | Nestor-BNA Holdings Corp. |
| MRA Intermedco, Inc. | 20,000 | $0.01 | 2/5/1990 | Nestor-BNA, Inc. |
| MRA Staffing Systems, Inc. | 20,000 | $0.01 | 3/15/1990 | British Nursing Association, Inc. |
| Water Street Corporation | 10 | $0.00 | 11/26/1956 | Porto Rico Container Corporation |

**AMENDED AND RESTATED**
**CERTIFICATE OF INCORPORATION**
**OF REMEDIUM GROUP, INC.**

*Adopted in accordance with the provisions*
*of §303, §242 and §245 of the*
*General Corporation Law of the State of Delaware*

\* \* \* \* \* \* \*

Remedium Group, Inc., a corporation organized and existing under the laws of the State of Delaware (the "Corporation"), hereby certifies as follows:

The name of the Corporation is "Remedium Group, Inc."

The original Certificate of Incorporation was filed with the Secretary of State of Delaware on July 25, 1980, under the name Emerson & Cuming, Inc.

The Corporation and certain of the Corporation's affiliates filed a joint plan of reorganization (the "Plan") which, pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), was confirmed, as modified, by an order, entered _____, of the United States Bankruptcy Court for the District of Delaware, a court having jurisdiction of a proceeding under the Bankruptcy Code (the "Order"), and such order provides for the making and filing of this Amended and Restated Certificate of Incorporation.

The Board of Directors of the Corporation duly adopted resolutions in accordance with Section 303, Section 242 and Section 245 of the General Corporation Law of the State of Delaware, as authorized by the Order, to put into effect and carry out the Plan by amending and restating the Certificate of Incorporation in its entirety to read as follows:

## ARTICLE 1:  NAME

The name of the Corporation shall be REMEDIUM GROUP, INC.

## ARTICLE 2:  REGISTERED OFFICE AND REGISTERED AGENT

The address, including street, number, city, and county, of the registered office of the Corporation in the State of Delaware is 2711 Centerville Road, Suite 400, City of Wilmington  19808, County of New Castle; and the name of the registered agent of the corporation in the State of Delaware at such address is Corporation Service Company.

1

## ARTICLE 3: PURPOSE

The nature of the business or purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware (the "DGCL").

## ARTICLE 4: CAPITALIZATION

1.    *Total Stock.*  The total number of shares of stock which the Corporation shall have authority to issue is twelve thousand two hundred twenty-three (12,223) shares of Common Stock of the par value of One Dollar ($1.00) per share, eleven thousand (11,000) of which shall be designated as the Class A Common Stock, and one thousand two hundred twenty-three (1,223) of which shall be designated as the Class B Common Stock.

2.    *Voting Rights.*  Except for the election of directors, all voting rights shall be vested in the holders of Class A Common Stock.  Voting rights with respect to election of directors shall be as set forth in Article 5.

3.    *Suits by Class B Holders.*  Except with respect to distributions payable to holders of Class B Common Stock pursuant to Article 6 below, no holder of Class B Common Stock shall have the right to bring suit against the Corporation, the Board of Directors or any individual director seeking the payment of a dividend or the making of other distributions by the Corporation.

*4.    Nonvoting Equity Securities. Notwithstanding anything to the contrary in this Certificate of Incorporation, the Corporation shall not issue nonvoting equity securities to the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)).  The prohibition on the issuance of nonvoting equity securities is included in this Amended and Restated Certificate of Incorporation in compliance with Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)).  This Section 4 may be amended or eliminated in accordance with applicable law from time to time in effect.*

## ARTICLE 5: BOARD OF DIRECTORS

1.    *Number and Classes.*  The Board of Directors of the Corporation shall consist of six directors and such directors shall be divided into two classes.  One class shall consist of five directors (the "Class A Directors") and only holders of Class A Common Stock shall be entitled to vote for the election or removal of Class A Directors.  The second class of directors shall consist of one director (the "Class B Director") and only holders of Class B Common Stock shall be entitled to vote for the election or removal of the Class B Director.

2.    *Vacancies.*  Any vacancies on the Board of Directors among the Class A Directors resulting from death, resignation, retirement, disqualification, removal from office or other cause shall be filled by a majority vote of the remaining Class A Directors then in office, or if there shall be no Class A Directors remaining, by vote of the holders of Class A Common Stock at the next annual or

2

special stockholders meeting. Any vacancy on the Board of Directors of the Class B Director resulting from death, resignation, retirement, disqualification, removal from office or other cause shall be filled by vote of the holders of Class B Common Stock at the next annual or special stockholders meeting.

## ARTICLE 6:  REDEMPTION OF STOCK

1.      *Limitation on Redemption of Class A Common Stock.*  So long as Class B Common Stock is issued and outstanding, the Corporation shall not redeem or acquire any issued and outstanding Class A Common Stock.

2.      *Redemption of Class B Common Stock by Corporation.*  The Corporation may redeem shares of Class B Common Stock, in whole or in part, at any time or from time to time on or after March 31, 2004 for cash or other immediately available funds, at a price per share (the "Redemption Price")equal to 1.05 times the Redemption Value (hereafter defined) to the extent that the Corporation shall have funds legally available for such payment.  From and after the date fixed for redemption, such shares of Class B Common Stock will no longer be outstanding and all rights in respect of such shares of Class B Common Stock shall cease, except the right to receive the Redemption Price.  If less than all of the outstanding shares of Class B Common Stock are to be redeemed, (a) the Corporation shall redeem a portion of the shares of Class B Common Stock of each holder pro rata based on the number of shares of Class B Common Stock held by each holder; (b) if the portion to be redeemed from any holder shall include a fraction of a share that cannot be expressed in tenths of a share, such fraction shall be rounded down to the nearest tenth of a share; and (c) the Corporation shall execute and deliver to each such holder a new certificate for the unredeemed shares of Class B Common Stock.

3.      *Notice of Redemption by Corporation.*  Notice of redemption must be given to the holders of Class B Common Stock at the addresses shown on the books of the Corporation not less than thirty (30) days nor more than sixty (60) days prior to the redemption date.  Each such notice shall state: (i) the redemption date; (ii) the total number of shares of Class B Common Stock to be redeemed and, if fewer than all of the issued and outstanding shares of Class B Common Stock are to be redeemed, the number of such shares of Class B Common Stock to be redeemed from each holder; (iii) the Redemption Price per share; and (iv) the place or places where certificates for such shares of Class B Common Stock are to be surrendered for payment of the Redemption Price.  Upon surrender of the certificate for any shares of Class B Common Stock so called for redemption (properly endorsed or assigned for transfer, if the Board shall so require and the notice shall so state), such shares shall be redeemed by the Corporation on the redemption date.

4.      *Redemption of Class B Common Stock Upon Request of Holders.*  By written request to the Corporation, holders of shares of Class B Common Stock may cause the Corporation to redeem such shares, in whole or in part, at any time or from time to time on or after March 31, 2006 for cash or other immediately available funds, at a price per share equal to the Redemption Value, to the extent that the Corporation shall have funds legally available for such payment.  Such written request must

3

be given by such holder to the Corporation not less than thirty (30) days nor more than sixty (60) days prior to the redemption date. Each such request shall state the redemption date and the total number of shares of Class B Common Stock to be redeemed. Upon receipt of such written request, the Corporation shall notify said holder, not more than fifteen (15) days thereafter, of the Redemption Value and the place or places where certificates for such shares of Class B Common Stock are to be surrendered for payment of the Redemption Value. Upon surrender of the certificate for any shares of Class B Common Stock so requested for redemption (properly endorsed or assigned for transfer, if the Board shall so require and the notice shall so state), such shares shall be redeemed by the Corporation on the redemption date. From and after the date fixed for redemption, such shares of Class B Common Stock will no longer be deemed to be outstanding and all rights in respect of such shares of Class B Common Stock shall cease, except the right to receive the Redemption Value.

5.      *Redemption Value.* The "Redemption Value" shall be equal to 10% of the Net Worth (hereafter defined) of the Corporation, determined from the balance sheet of the Corporation (the "Redemption Balance Sheet") as of the last day of the calendar month immediately preceding the month in which the notice of redemption is sent or received by the Corporation (the "Balance Sheet Date"), divided by the total number of shares of Class B Common Stock of the Corporation outstanding on the Balance Sheet Date; provided, however, that in no event shall the Redemption Value be less than $1.00 per share nor exceed $2,125.00 per share.

6.      *Calculation of Net Worth.* The term "Net Worth" shall mean the sum of all items included in determining total assets as shown on the asset side of the Redemption Balance Sheet, less the sum of all items included in determining total liabilities as shown on the liability side of the Redemption Balance Sheet, except that no current or deferred tax asset or liability shall be included in the computation of Net Worth, and subject to the provisions for determining Net Worth set forth in the Bylaws of the Corporation.

7.      *Objection to Calculation of Net Worth.* Prior to the redemption date, any holder of Class B Common Stock whose shares are being redeemed shall have reasonable access at reasonable times to the books and records of the Corporation relating to the preparation of the Redemption Balance Sheet. If prior to the redemption date holders of a majority of all then outstanding shares of Class B Common Stock send to the Corporation written objection to the value of the assets or liabilities set forth in the Redemption Balance Sheet, then (i) the Net Worth will be determined by an arbitrator either agreed to in writing by the holders of a majority of all then outstanding shares of Class B Common Stock and the Corporation, or, in the absence of such agreement, selected by lot from among the five largest nationally recognized accounting firms at that time (excluding, however, any firm which is then the regular outside accounting firm of the Corporation or any holder of a majority of all then outstanding Class B Common Stock), and (ii) the redemption date shall be delayed until the tenth (10th) business day after the arbitrator sends its determination of Net Worth to the Corporation and each holder of Class B Common Stock. The arbitrator's determination of Net Worth shall be binding on the Corporation and the holders of the Class B Common Stock. The holders of the Class B Common Stock shall pay the cost of such arbitrator unless the arbitrator's

4

determination of Net Worth exceeds by more than five percent (5%) the Corporation's determination of Net Worth, in which event the Corporation shall pay the cost of such arbitrator.

## ARTICLE 7: DISSOLUTION, LIQUIDATION, WINDING UP

1.      *Dissolution, liquidation, winding up.*  In the event of a voluntary or involuntary liquidation, dissolution, or winding up of the Corporation ("Dissolution"), (a) the holders of Class B Common Stock shall be entitled to receive out of the assets of the Corporation, whether those assets are capital or surplus of any nature, an amount per share equal to the lesser of (i) 10% of the amount of the total payment or distribution to the holders of Common Stock divided by the total number of shares of Class B Common Stock outstanding on the date of Dissolution, or (ii) the Redemption Value per share, as determined in accordance with Article 5 (except that for such purpose ☐Balance Sheet Date☐ shall be taken to mean the last day of the calendar month immediately preceding the month in which Dissolution is approved by all required corporate action), provided, however, that in no event shall such amount be less than $1.00 per share nor exceed $2,125.00 per share; and (b) the holders of Class A Common Stock shall be entitled to receive, ratably, all remaining assets of the Corporation.

2.      *Consolidation or Merger not Dissolution.*   Neither the consolidation or merger of the Corporation, nor the lease or conveyance of all or substantially all of its assets, shall be deemed a Dissolution of the Corporation for purposes of this Certificate of Incorporation.

## ARTICLE 8:  DURATION

The Corporation shall have perpetual existence.

## ARTICLE 9: BOARD MAY AMEND BYLAWS

In furtherance and not in limitation of the powers conferred by statute, the Board of Directors of the Corporation is expressly authorized to make, alter, amend or repeal the Bylaws of the Corporation.

## ARTICLE 10: LIMITATION OF DIRECTORS' LIABILITY

A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the DGCL, or (iv) for any transaction from which the director derived an improper personal benefit.

5

## ARTICLE 11: INDEMNIFICATION

1.      Each person who was or is made a party or is threatened to be made a party or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the DGCL, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators: provided, however, that, except as provided in Section 2 of this Article, the Corporation shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Corporation. The right to indemnification conferred in this Section shall be a contract right and shall include the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the DGCL requires, the payment of such expenses incurred by a director or officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director or officer is not entitled to be indemnified under this Section or otherwise.   The Corporation may, by action of its Board of Directors, provide indemnification to employees and agents of the Corporation with the same scope and effect as the foregoing indemnification of directors and officers.

2.      If a claim under Section 1 of this Article is not paid in full by the Corporation within 30 days after a written claim has been received by the Corporation, the claimant may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim and, if successful in whole or in part, the claimant shall be entitled to be paid also the expense of prosecuting such claim. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking, if any is required, has been tendered to the Corporation) that the claimant has not met the standards of conduct which make it permissible under the DGCL for the Corporation to indemnify the claimant for the amount claimed, but the burden of proving such defense shall be on

6

the Corporation. Neither the failure of the Corporation (including its Board of Directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he or she has met the applicable standard of conduct set forth in the DGCL, nor an actual determination by the Corporation (including its Board of Directors, independent legal counsel, or its stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

3.     The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Section shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Certificate of Incorporation of the Corporation, bylaw, agreement, vote of stockholders or disinterested directors or otherwise.

4.     To the extent available on commercially reasonable terms, the Corporation shall maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the DGCL.

## ARTICLE 12:  SUPERMAJORITY FOR AMENDMENT

No amendment of this Certificate of Incorporation requiring a vote of the stockholders under the DGCL shall be effective unless approved by holders of seventy-five percent (75%) of the Class A Common Stock then issued and outstanding and holders of seventy-five percent (75%) of the Class B Common Stock then issued and outstanding.

**IN WITNESS WHEREOF,** the undersigned has signed this Amended and Restated Certificate of Incorporation on this _____ day of _____, _____.

REMEDIUM GROUP, INC.

By:_____
   Name:
   Title:

## AMENDED AND RESTATED
## CERTIFICATE OF INCORPORATION
## OF LITIGATION MANAGEMENT, INC.

*Adopted in accordance with the provisions*
*of §303, §242 and §245 of the*
*General Corporation Law of the State of Delaware*

\* \* \* \* \* \*

Litigation Management, Inc., a corporation organized and existing under the laws of the State of Delaware (the "Corporation"), hereby certifies as follows:

The name of the Corporation is "Litigation Management, Inc."

The original Certificate of Incorporation was filed with the Secretary of State of Delaware on December 7, 1994, under the name GHSC Holding, Inc.

The Corporation and certain of the Corporation's affiliates filed a joint plan of reorganization (the "Plan") which, pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), was confirmed, as modified, by an order, entered _____, of the United States Bankruptcy Court for the District of Delaware, a court having jurisdiction of a proceeding under the Bankruptcy Code (the "Order"), and such order provides for the making and filing of this Amended and Restated Certificate of Incorporation.

The Board of Directors of the Corporation duly adopted resolutions in accordance with Section 303, Section 242 and Section 245 of the General Corporation Law of the State of Delaware, as authorized by the Order, to put into effect and carry out the Plan by amending and restating the Certificate of Incorporation in its entirety to read as follows:

## ARTICLE 1:  NAME

The name of the Corporation shall be LITIGATION MANAGEMENT, INC.

## ARTICLE 2:  REGISTERED OFFICE AND REGISTERED AGENT

The address, including street, number, city, and county, of the registered office of the Corporation in the State of Delaware is 2711 Centerville Road, Suite 400, City of Wilmington 19808, County of New Castle; and the name of the registered agent of the corporation in the State of Delaware at such address is Corporation Service Company.

1

## ARTICLE 3:  PURPOSE

The nature of the business or purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware (the "DGCL").

## ARTICLE 4:  CAPITALIZATION

1.      *Total Stock.*  The total number of shares of stock which the Corporation shall have authority to issue is 2,612 shares of the par value of One Dollar ($1.00) per share, consisting of (a) 2,500 shares of Common Stock, of which 1,500 shares shall be designated as the Class A Common Stock of the Corporation, and 1,000 shares shall be designated as the Class B Common Stock of the Corporation, and (b) 112 shares of Convertible Preferred Stock of the Corporation.

2.      *Class B Common Stock.*  Subject to the provisions of this Certificate of Incorporation, the Board of Directors is hereby authorized to provide for the issuance of shares of Class B Common Stock, which issuance may be in one or more series, to establish from time to time the number of shares to be included in any such series, and to fix the voting powers, full or limited, or no voting powers, and designations, powers, preferences and relative, participating, optional or other special rights of the shares of Class B Common Stock and any such series, and the qualifications, limitations and restrictions thereof, to the full extent permitted by law.

3.      *Convertible Preferred Stock.*  The Convertible Preferred Stock shall have the following powers, preferences, rights and qualifications, limitations or restrictions:

      (1)  *Dividends and Distributions.*

      (a) The holders of shares of Convertible Preferred Stock, in preference to the holders of the Class A Common Stock and the Class B Common Stock, and of any other junior stock, shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available for the purpose, annual dividends payable in cash on the first day of March in each year (each such date being referred to herein as a "*Dividend Payment Date*"), commencing on the first Dividend Payment Date after the first issuance of a share of Convertible Preferred Stock, at an annual rate of 8.75% of the Liquidation Preference (as defined in paragraph (5) of this Section 3).

If a dividend is paid to a U.S. corporation with respect to shares of the Convertible Preferred Stock and, under the principles of section 243 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), or a successor provision, such corporation is not entitled to the available deduction under section 243 of the Code in an amount equal to the allowable percentage ("Allowable Percentage"), currently 70 percent under section 243(a)(1) of the Code, permitted a corporation on a dividend from a less than 20 percent

owned corporation, then an additional amount (the "Additional Amount") shall accrue and be immediately payable as a dividend with respect to such shares. The Additional Amount shall be calculated as follows:

$$\text{Additional Amount} = \frac{\text{Tax Rate x Original Dividend x Allowable Percentage}}{1 - \text{Tax Rate}}$$

where:

"Tax Rate" means the maximum marginal U.S. corporate income tax rate then in effect, expressed as a decimal; and

"Original Dividend" means the amount of the dividend on such shares of Convertible Preferred Stock (not including any Additional Amount) treated as a dividend for U.S. tax purposes within the meaning of section 301(c)(1) of the Code, or any successor provision;

provided, however, that no Additional Amount shall be payable with respect to any Additional Amount.

(b) Dividends shall begin to accrue and be cumulative on outstanding shares of Convertible Preferred Stock from the date of issue of such shares. Interest shall not be payable on accrued but unpaid dividends. Dividends paid on the shares of Convertible Preferred Stock in an amount less than the total amount of such dividends at the time accrued and payable on such shares shall be allocated pro rata on a share-by-share basis among all such shares at the time outstanding. The Board of Directors may fix a record date for the determination of holders of shares of Convertible Preferred Stock entitled to receive payment of a dividend declared thereon, which record date shall be not more than 60 days prior to the date fixed for the payment thereof.

(2) *Voting Rights.* Except as otherwise provided in this Certificate of Incorporation or required by law, the holders of shares of Convertible Preferred Stock shall have no voting rights.

(3) *Certain Dividend Restrictions and Other Dividend Provisions.*

(a) Whenever dividends payable on the Convertible Preferred Stock as provided in paragraph (1) are in arrears, thereafter and until all accrued and unpaid dividends, whether or not declared, on shares of Convertible Preferred Stock outstanding shall have been paid in full, the Corporation shall not:

(i) declare or pay dividends, or make any other distributions, on any shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or

3

winding up) to the Convertible Preferred Stock; or

    (ii)    redeem or purchase or otherwise acquire for consideration shares of any stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Convertible Preferred Stock, provided that the Corporation may at any time redeem, purchase or otherwise acquire shares of any such junior stock in exchange for shares of any stock of the Corporation ranking junior (either as to dividends or upon dissolution, liquidation or winding up) to the Convertible Preferred Stock.

    (b)  If any dividend or distribution, whether in cash or other value, are paid on the Common Stock, the Convertible Preferred Stock shall share ratably in such dividend or distribution.  Any dividend or distribution on the Common Stock in or pursuant to a liquidation, dissolution or winding up of the Corporation shall not be deemed a dividend or distribution for purposes of this clause (b).

    (4)  *Reacquired Shares.*  Any shares of Convertible Preferred Stock purchased or otherwise acquired by the Corporation in any manner whatsoever may be either held in treasury or retired.  Any retired shares shall be authorized but unissued shares of Convertible Preferred Stock.

    (5)  *Liquidation, Dissolution or Winding Up.*  Upon any liquidation, dissolution or winding up of the Corporation, no distribution shall be made to the holders of shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Convertible Preferred Stock unless, prior thereto, the holders of shares of Convertible Preferred Stock shall have received $13,392.86 per share (the "Liquidation Preference"), plus accrued and unpaid dividends thereon to the date of payment of the Liquidation Preference, whether or not declared.

    (6)  *Redemption.*

    (a)  Any share of Convertible Preferred Stock shall be redeemable by the Corporation at any time after March 31, 2004 at a redemption price equal to the Liquidation Preference, plus accrued and unpaid dividends thereon to the date of redemption, whether or not declared.

    (b)  Any share of Convertible Preferred Stock shall be redeemable by any holder thereof at any time after March 31, 2006 at a redemption price per share equal to the Liquidation Preference, plus accrued and unpaid dividends thereon to the date of redemption, whether or not declared.

    (7)  *Rank.*  The Convertible Preferred Stock shall rank, with respect to the payment of dividends and the distribution of assets, senior to every other class and series of the

4

capital stock of the Corporation.

(8) *Conversion.*

(a) At any time after March 31, 2006, any holder of shares of Convertible Preferred Shares shall have the right to convert such shares into fully paid and nonassessable shares of Class A Common Stock at a conversion rate of one share of Class A Common Stock for each share of Convertible Preferred Stock converted, upon surrender to the Corporation of the shares to be so converted, together with written notice to the Corporation that such holder elects to convert such shares. Such notice shall also state the names (with address) in which the certificates for the shares of Class A Common Stock shall be issued. The surrendered shares shall be accompanied by such other documentation as the Corporation may reasonably request. The issuance of certificates for shares of Class A Common Stock upon the conversion of shares of Convertible Preferred Stock shall be made without charge to the converting stockholder for such certificates or any tax, and such certificates shall be issued in the name of, or in such name as may be directed by, the holder of the shares converted; provided that if the certificates are to be issued in a name other than the name of the holder of the shares converted, the surrendered certificates shall be accompanied by an instrument of transfer, and evidence of payment of any required tax, reasonably satisfactory to the Corporation.

(b) If the Corporation shall (i) take a record of the holders of Class A Common Stock for the purpose of entitling them to receive a dividend payable in, or other distribution of, Class A Common Stock; or (ii) subdivide the outstanding shares of its Class A Common Stock into a larger number of shares; or (iii) combine the outstanding shares of its Class A Common Stock into a smaller number of shares, or (iv) increase or decrease the number of shares of Class A Common Stock by reclassification, then the number of shares of Class A Common Stock issuable upon conversion of a share of Convertible Preferred Stock shall be adjusted to that number (rounded down to the nearest tenth of a share) determined by multiplying the number of shares of Class A Common Stock issuable upon such conversion immediately prior to such event by a fraction (A) the denominator of which shall be the total number of outstanding shares of the Class A Common Stock of the Corporation immediately prior to such event, and (B) the numerator of which shall be the total number of outstanding shares of Class A Common Stock of the Corporation immediately after such event. An adjustment made pursuant to this subsection shall become effective immediately after the record date in the case of a dividend payable in, or other distribution of, Class A Common Stock and shall become effective immediately after the effective date in the case of a subdivision, combination or reclassification of Class A Common Stock. The foregoing provisions shall apply to successive issues, subdivisions, or combinations of shares of Class A Common Stock. The Corporation covenants and agrees that it will reserve the number of shares of authorized but unissued Class A Common Stock deliverable upon conversion of the Convertible Preferred Stock.

5

(c) In each case of any adjustment in the shares of Class A Common Stock issuable upon the conversion of the Convertible Preferred Stock, the Corporation at its expense will promptly compute such adjustment and will prepare a report signed by its chief financial officer setting forth such adjustment or readjustment and showing in reasonable detail the method of calculation thereof and the facts upon which such adjustment or readjustment is based.  The Corporation will promptly mail a copy of each such report to each holder of Convertible Preferred Stock.

(d) In the event of (i) any taking by the Corporation of a record of the holders of the Class A Common Stock  for the purpose of determining the holders thereof who are entitled to receive any dividend (other than a regular periodic dividend payable in cash out of earned surplus) or other distribution, or any right to subscribe for, purchase or otherwise acquire any shares of stock of any class or any other securities or property, or to receive any other right, or (ii)  any capital reorganization of the Corporation, any reclassification or recapitalization of the capital stock of the Corporation or any consolidation or merger involving the Corporation and any other Person or any transfer of all or substantially all the assets of the Corporation to any other Person, or (iii) any voluntary or involuntary dissolution, liquidation or winding-up of the Corporation, the Corporation will mail to each holder of Convertible Preferred Stock  a notice specifying (A) the date or expected date on which any such record is to be taken for the purpose of such dividend or distribution or right, and the amount and character of such dividend, distribution or right, or (B) the date or expected date on which any of the transactions enumerated in clauses (ii) and (iii) is to take place and the time, if any such time is to be fixed, as of which the holders of record of Class A Common Stock shall be entitled to exchange their shares of Class A Common Stock for the cash, securities or other property deliverable upon such transaction. Such notice shall be mailed at least 15 business days prior to the date therein specified.

(9) *Amendment.*  This Certificate of Incorporation of the Corporation shall not be amended in any manner which would materially alter or change the powers, preferences or special rights of the Convertible Preferred Stock so as to affect them adversely without the affirmative vote of the holders of at least two-thirds of the outstanding shares of Convertible Preferred Stock, voting together as a single class.

4.      *Class A Common Stock.*

(a) The Class A Common Stock shall be subject to the express terms of the Class B Common Stock and any series thereof.  The holders of shares of the Class A Common Stock shall be entitled to one vote for each such share upon all questions presented to the stockholders.

(b) Except as may be provided in this Certificate of Incorporation or in a Class B

6

Common Stock designation, or as may be required by law, the Class A Common Stock shall have the exclusive right to vote for the election of directors and for all other purposes, and holders of Class B Common Stock or Convertible Preferred Stock shall not be entitled to receive notice of any meeting of stockholders at which they are not entitled to vote.

**5.** *Nonvoting Equity Securities.*

*Notwithstanding anything to the contrary in this Amended and Restated Certificate of Incorporation, the Corporation shall not issue nonvoting equity securities to the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)). The prohibition on the issuance of nonvoting equity securities is included in this Amended and Restated Certificate of Incorporation in compliance with Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)). This Section 5 may be amended or eliminated in accordance with applicable law from time to time in effect.*

## ARTICLE 5:  BOARD OF DIRECTORS

1.    *Number and Classes.*  The Board of Directors of the Corporation shall consist of five directors; provided, however, that if any Class B Common Stock is hereafter issued and the terms thereof so provide, the Board of Directors shall consist of six directors and such directors shall be divided into two classes.  One class shall consist of five directors (the "Class A Directors") and only holders of Class A Common Stock shall be entitled to vote for the election or removal of Class A Directors.  The second class of directors shall consist of one director (the "Class B Director") and only holders of Class B Common Stock shall be entitled to vote for the election or removal of the Class B Director.

2.    *Vacancies.*

(a)  Any vacancies on the Board of Directors resulting from death, resignation, retirement, disqualification, removal from office or other cause shall be filled by a majority vote of the remaining directors then in office, or if there shall be no director remaining, by vote of the holders of Class A Common Stock at the next annual or special stockholders meeting.

(b)  Notwithstanding the foregoing, if Class A Directors and a Class B Director are elected as provided above, then (i) any vacancies on the Board of Directors among the Class A Directors resulting from death, resignation, retirement, disqualification, removal from office or other cause shall be filled by a majority vote of the remaining Class A Directors then in office, or if there shall be no Class A Directors remaining, by vote of the holders of Class A Common Stock at the next annual or special stockholders meeting; and (ii) any vacancy on the Board of Directors of the Class B Director resulting from

7

death, resignation, retirement, disqualification, removal from office or other cause shall be filled by vote of the holders of Class B Common Stock at the next annual or special stockholders meeting.

## ARTICLE 6: DURATION

The Corporation shall have perpetual existence.

## ARTICLE 7: BOARD MAY AMEND BY-LAWS

In furtherance and not in limitation of the powers conferred by statute, the Board of Directors of the Corporation is expressly authorized to make, alter, amend or repeal the By-laws of the Corporation.

## ARTICLE 8: LIMITATION OF DIRECTORS' LIABILITY

A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the DGCL, or (iv) for any transaction from which the director derived an improper personal benefit.

## ARTICLE 9: INDEMNIFICATION

1.      Each person who was or is made a party or is threatened to be made a party or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the DGCL, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators: provided, however, that, except as provided in Section 2 of this Article, the Corporation shall indemnify any such person seeking

8

indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Corporation. The right to indemnification conferred in this Section shall be a contract right and shall include the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the DGCL requires, the payment of such expenses incurred by a director or officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director or officer is not entitled to be indemnified under this Section or otherwise. The Corporation may, by action of its Board of Directors, provide indemnification to employees and agents of the Corporation with the same scope and effect as the foregoing indemnification of directors and officers.

2.      If a claim under Section 1 of this Article is not paid in full by the Corporation within 30 days after a written claim has been received by the Corporation, the claimant may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim and, if successful in whole or in part, the claimant shall be entitled to be paid also the expense of prosecuting such claim. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking, if any is required, has been tendered to the Corporation) that the claimant has not met the standards of conduct which make it permissible under the DGCL for the Corporation to indemnify the claimant for the amount claimed, but the burden of proving such defense shall be on the Corporation. Neither the failure of the Corporation (including its Board of Directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he or she has met the applicable standard of conduct set forth in the DGCL, nor an actual determination by the Corporation (including its Board of Directors, independent legal counsel, or its stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

3.      The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Section shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of this Certificate of Incorporation or of any bylaw, agreement, vote of stockholders or disinterested directors or otherwise.

4.      To the extent available on commercially reasonable terms, the Corporation shall maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against

9

any such expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the DGCL.

## ARTICLE 10: SUPERMAJORITY FOR AMENDMENT

No amendment of this Certificate of Incorporation requiring a vote of the stockholders under the DGCL shall be effective unless approved by holders of seventy-five percent (75%) of the Class A Common Stock then issued and outstanding.

**IN WITNESS WHEREOF,** the undersigned has signed this Amended and Restated Certificate of Incorporation on this _____.

LITIGATION,  INC.


By:_____
    Name:
    Title:

10