## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |
| | **Ref. Nos. 21245 & 21525** |

## LIBBY CLAIMANTS' RESPONSE TO ARROWOOD'S
## REQUEST TO TAKE JUDICIAL NOTICE

The claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, hereby respond to Arrowood's Request to Take Judicial Notice, Pursuant to Federal Rule of Evidence 201, of Decision and Order Barring Expert Testimony of Dr. Whitehouse in Further Support of Motion to Strike Dr. Whitehouse Expert Report (Dkt. No. 21245) filed on May 4, 2009 [Docket No. 21525] (the "Arrowood Request") filed by Arrowood Indemnity Company f/k/a Royal Indemnity Company ("Arrowood"). In support of this Response, the Libby Claimants state:

### Introduction

1.      As part of the ongoing campaign of the Plan Proponents and other parties aligned against the Libby Claimants to "poison the well" by attempting to prejudice this Court against the expert qualifications and testimony to be offered by Dr. Alan C. Whitehouse, expert witness for the Libby Claimants, the Arrowood Request blatantly misapplies the concept of judicial notice in order to—with the flimsiest of excuses—bring to this Court's attention the ruling of

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [D.I. 21365], as it may be amended and restated from time to time.

another court in another case to which the Libby Claimants were not parties, limiting the topics on which Dr. Whitehouse was permitted to testify.

2.      Fed. R. Evid. 201(b) provides that judicial notice may be taken of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." The "facts" offered by Arrowood for this Court to accept are that, "Dr. Whitehouse does not possess specialized knowledge in the field of epidemiology.  His opinion testimony on the future pattern of disease and general causation is therefore inadmissible." While judicial notice is available to establish the existence of a paper on another court's docket, it is not available to cause the ruling of a court to be binding.  When the time comes for this Court to consider *Daubert* motions in conjunction with plan confirmation, the Libby Claimants are entitled to the opportunity to provide this Court with a more complete record concerning Dr. Whitehouse's qualifications than was placed before Judge Molloy in the widely-criticized prosecution of the criminal case against Grace.

### A.      Another court's *Daubert* ruling is not an adjudicative fact capable of being judicially noticed.

3.      Arrowood relies on Fed .R. Evid. 201.  Its motion fails to direct this Court to Rule 201(a), which states that this rule regarding judicial notice governs "only . . . adjudicative facts." (Emphasis added).  Rule 201 does not authorize a court to take judicial notice of another court's legal determinations, since such determinations are "neither an adjudicative fact within the meaning of Rule 201 nor beyond 'reasonable dispute.'" Taylor v. Charter Med. Corp., 162 F.3d 827, 831 (5th Cir. 1998).  A *Daubert* ruling made in another case is a determination of law, not a matter of adjudicative fact to which Rule 201 might apply.   See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592, n.10 (preliminary questions concerning a witness's qualification are determinations for the court).

2

4.        Courts have clearly and consistently rejected use of judicial notice to establish the truth of another court's findings.  See U.S. v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (citations omitted); Liberty Mut. Ins. Co. V. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation . . . '") (emphasis added).  Courts have cautioned against misapplying judicial notice as a substitute for doctrines such as collateral estoppel whereby substantive rulings in one proceeding may be made binding in another:

> A distinction must be carefully drawn between taking judicial notice of the existence of documents in the Court file as opposed to the truth of the facts asserted in those documents.  See In re Augenbaugh, 125 F.2d 887, 889 (3d Cir. 1942).  The authenticity of a court document does not automatically insure its introduction into evidence in the face of other objections such as hearsay.
>
> Thus, while a Court may take judicial notice of the existence of each document in the Court's file it may only take notice of the truth of facts asserted in documents such as orders, judgments, and findings of fact and conclusions of law because of the principles of collateral estoppel, res judicata, and the law of the case.

In re Snider Farms, Inc., 83 B.R. 977, 986 (Bankr. N.D. Ind. 1988) (emphasis in original).

5.        If judicial notice could be applied as Arrowood proposes, the doctrine would completely supplant the rules of collateral estoppel, res judicata, or law of the case. Merely proving the existence of a ruling on a court's docket would cause that ruling to be binding in every other case. This, of course, would be absurd.  Arrowood has not even attempted to demonstrate that Judge Molloy's order is binding on the Libby Claimants by collateral estoppel.  Nor could it, since the Libby Claimants were not parties to the criminal proceeding against Grace.[2]

---

[2]  Although Judge Molloy's order eliminated one area of Dr. Whitehouse's testimony, it permitted him to testify on all other matters.  It is possible that Grace, as a party to the criminal case, is bound by rulings adverse to Grace in that matter.

**B.    Judge Molloy's ruling should not be recognized by this Court for any purpose, much less via judicial notice.**

6.    Judicial notice only applies to facts "not subject to reasonable dispute." Fed.R.Evid., 201(b). "Future pattern of disease" and "general causation" standing alone are not "facts," and certainly not the kind of facts for which a court could take judicial notice.

7.    The issue of whether Dr. Whitehouse has "specialized knowledge in the field of epidemiology" will be a disputed question of fact in connection with plan confirmation. The record before Judge Molloy was not complete. On the issue of "specialized knowledge," the Affidavit of Dr. Whitehouse, attached hereto as Exhibit A, reflects a number of facts that were not before Judge Molloy, not the least of which is that Dr. Whitehouse is an author of two epidemiology publications on asbestos disease. Affidavit of Dr. Whitehouse, ¶ 5. The Affidavit indicates that for 40 years he has "regularly used and interpreted epidemiologic medical literature." Id., ¶ 4. He has "specialized knowledge" in epidemiology. Id., ¶ 4.

8.    In any event, the issue of whether a Libby Claimant's disease is caused by asbestos is not a matter of epidemiology at all. "General causation" is not a "fact" but, rather, a conclusion. "Causation by asbestos" is a necessary part of each diagnosis, under the diagnostic criteria set by the American Thoracic Society. Id., ¶ 7. "There is ample data on the presence of Libby winchite asbestos in the community, and ample evidence of asbestos-related disease from asbestos exposures in the Libby area for a pulmonologist to find causation of disease by asbestos." Id., ¶ 8. With over 900 diagnoses of asbestos-related disease, general causation may certainly be found.

9.    The specific opinion stricken by Judge Molloy was "that the CARD Clinic in Libby will see new cases of asbestos-related disease until at least the year 2030 . . . . In all other respects, the motion [to strike] is denied." The Molloy order omits to note that the stricken opinion is one that was published in the medical literature. Whitehouse (2004) "Asbestos

Related Pleural Disease Due to Tremolite Associated with Progressive Loss of Lung Function: Serial Observations in 123 Miners, Family Members, and Residents of Libby, Montana," Am J Ind Med 46:219-225 (Exh. 2 to Expert Report of Dr. Alan C. Whitehouse 12/29/08), which states:

> Assuming a latency period of between 20 and 30 years to significant disease, it is not unreasonable to expect that the people of Libby, Montana, will have to be monitored over the next 30-40 years, because of the risk for loss of pulmonary function and other known diseases historically associated with asbestos exposure.

Id. at 224. This Court, of course, is already familiar with the latency period of 20-30 years for asbestos disease. That period will be established, probably without contravention, in the record of the confirmation hearing. Conservatively running the hazard for 30 years from the year 2000 leads to an expectation of risk of disease up to 2030, as Dr. Whitehouse testified.

10.    This opinion is not truly a matter of epidemiologic statistics at all, as would, for example, a specific forecast of the number and timing of cases of asbestos disease in Libby (which the Libby Claimants do not intend to offer). Dr. Whitehouse's testimony that new asbestos cases will be diagnosed in Libby through 2030 is an observation based on the latency period plus evidence of immanent hazard. So what is going on here? This is the "epidemiology game." Grace and others will seek to redefine legal causation in terms of analytic epidemiology. They will contend that epidemiologic causation requires a dose/response study. None has been done on community exposures in Libby. Affidavit of Dr. Whitehouse, ¶ 8. So Grace will contend that there is no causation for the Libby community exposure cases, even though there is no dose/response study on most construction sites and asbestos exposure sites at issue in the Grace bankruptcy, and none is required to demonstrate legal causation.

11.     Legal causation requires that the cause be a "substantial factor" in producing the result. Many items of evidence may combine to a conclusion of "substantial factor." There is "evidence of causation by asbestos" in each of the 900 plus diagnoses on Libby Claimants. The scientific diagnoses may be added together for causation. The evidence will show that there is winchite asbestos in Libby. There is asbestos disease in Libby. Asbestos in Libby causes asbestos disease in Libby.

## Conclusion

In sum, judicial notice may not be used to bind this Court to judicial rulings of any kind, much less the *Daubert* ruling of another court, in another case, based on a different and incomplete record, and incorrect even based on that poor record. The Motion should be denied.

Dated: May 8, 2009
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, DE  19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

- and -

Daniel C. Cohn
Christopher M. Candon
**COHN WHITESELL & GOLDBERG LLP**
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2505
Facsimile:  (617) 951-0679

*Counsel for Libby Claimants*

6