IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |
| | Ref. Nos. 21495, 21521, 21522 & 21541 |

**LIBBY CLAIMANTS' RESPONSE TO DEBTORS' MOTION FOR
PROTECTIVE ORDER AND OBJECTION TO LIBBY CLAIMANTS'
DEPOSITION NOTICES AND JOINDERS FILED BY VARIOUS INSURERS**

The claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, hereby respond to the Debtors' Motion for Protective Order and Objection to Libby Claimants' Deposition Notices filed on April 30, 2009 [Docket No. 21495] (the "Motion"), Arrowood's Joinder to Debtors' Motion for Protective Order and Objection to Libby Claimants' Deposition Notices filed on May 4, 2009 [Docket No. 21521] (the "Arrowood Joinder"), Joinder of Maryland Casualty Company to Debtors' Motion for Protective Order and Objection to Libby Claimants' Deposition Notices filed on May 4, 2009 [Docket No. 21522], and Joinder of Continental Casualty Company to Debtors' Motion for Protective Order and Objection to Libby Claimants' Deposition Notices filed on May 5, 2009 [Docket No. 21541]. In support of this Response, the Libby Claimants state:

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 21365], as it may be amended and restated from time to time.

393.001-26248.doc

## Background

1. Before this Court is the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated February 27, 2009 [Docket No. 20872], jointly submitted by the Debtors together with the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Equity Security Holders, and the Asbestos PI Future Claimants' Representative (collectively, the "Plan Proponents"). In accordance with the Initial Case Management Order related to the First Amended Joint Plan of Reorganization dated December 5, 2008 (the "CMO") [Docket No. 20204],[2] the Libby Claimants filed a preliminary objection to the Plan (the "Libby Plan Objection") [Docket No. 20313]. The Libby Plan Objection contends, *inter alia*, that:

- The Plan violates the Bankruptcy Code's requirement of equal distribution, as set forth in In re Combustion Engineering, 391 F.3d 190, 239 (3d Cir. 2004) because the Plan and the related TDP and Asbestos PI Trust discriminate against the Libby Claimants on numerous grounds.

- In violation of the U.S. Constitution, the Montana Constitution, and 28 U.S.C. § 1411(a), the Plan denies the Libby Claimants their right to trial by jury by (a) capping the liquidated amount of Asbestos PI Claims at the Maximum Value of the particular claim even if the claimant obtains a jury verdict in a greater amount, and (b) providing delayed and riskier payment terms for claims based on jury verdicts.

- In violation of the Bankruptcy Code and Supreme Court caselaw, the Plan violates the Libby Claimants' right to have their claims allowed in accordance with applicable nonbankruptcy law.

- The Plan violates conditions of the Bankruptcy Code designed to ensure fairness of classification and voting.

- The Plan provides for injunctions that are not authorized by Section 524(g) of the Bankruptcy Code and Combustion Engineering.

---

[2] The CMO has subsequently been amended twice [Docket Nos. 20622 and 21544].

2

393.001-26248.doc

2.     Pursuant to the CMO, on March 13, 2009, the Libby Claimants [Docket No. 20983] and numerous other parties submitted preliminary witness lists for the Confirmation Hearing. As is their right under the CMO, the Libby Claimants have filed two supplemental lists [Docket Nos. 21260 and 21301]. These lists included 28 Libby Claimants whose testimony may be needed at the Confirmation Hearing ("the Libby Claimant Witnesses") to prove the above contentions. Under the CMO, final witness lists are not due until June 15, 2009.

3.     Having determined that 18 of the Libby Claimant Witnesses are too sick to travel or may die prior to the Confirmation Hearing, counsel to the Libby Claimants noticed their depositions to take place in Libby, Montana during the middle weeks of May. The depositions were purposely scheduled to take place prior to the June 15 CMO deposition deadline. Counsel to the Libby Claimants contacted counsel to the Debtors and the ACC in March to try to coordinate possible dates and advanced document production, but neither party responded. Given the June 15 deadline and the lack of a response from the Debtors or the ACC, on April 21, 2009, the Libby Claimants formally filed and served notices of video perpetuation depositions of 18 of the Libby Claimant Witnesses.

4.     On April 23, 2009, a "meet and confer" was held among counsel to the Debtors, Arrowood, and the Libby Claimants to discuss objections by the Debtors and Arrowood to the depositions. Counsel to the Libby Claimants informed counsel to the Debtors and Arrowood that the depositions were a necessary part of the Libby Claimants' case against plan confirmation and, specifically, would supply proof in support of the following objections:

- In violation of <u>Butner v. United States</u>, 440 U.S. 48 (1979) and other Supreme Court caselaw, the TDP fails to permit allowance of wrongful death claims even though valid under state law. Certain of the Libby Claimant Witnesses hold wrongful death claims. Their testimony establishing the elements of a claim for wrongful death under Montana law will rebut any attack by the Plan Proponents on the Libby Claimants' standing by establishing that claims meeting the requirements of Montana law for a wrongful death claim do exist. The Libby Claimants are willing to

3

eliminate the need for such testimony by entering into a stipulation with the Plan Proponents to the effect that there are valid claims for wrongful death against the Debtors. The Plan Proponents should not be permitted to have their cake and eat it too by preserving the right to challenge the Libby Claimants' standing on this issue while depriving the Libby Claimants of the means to prove their standing.

- In violation of Butner v. United States, 440 U.S. 48 (1979) and other Supreme Court caselaw, the TDP fails to permit allowance of claims for loss of consortium even though such claims are valid under state law. Certain of the Libby Claimant Witnesses hold loss-of-consortium claims. Their testimony establishing the elements of a claim for loss of consortium under Montana law will rebut any attack by the Plan Proponents on the Libby Claimants' standing by establishing that claims meeting the requirements of Montana law for a loss-of-consortium claim do exist. The Libby Claimants are willing to eliminate the need for such testimony by entering into a stipulation with the Plan Proponents to the effect that there are valid claims for loss of consortium against the Debtors. The Plan Proponents should not be permitted to have their cake and eat it too by preserving the right to challenge the Libby Claimants' standing on this issue while depriving the Libby Claimants of the means to prove their standing.

- In violation of In re Combustion Engineering, 391 F.3d 190 (3d Cir. 2004), the TDP contains arbitrary disease criteria that discriminate against the Libby Claimants. Certain of the Libby Claimant Witnesses, although they are ill with severe pleural disease under generally accepted medical criteria, American Thoracic Society at ATS (2004) "Diagnosis and Initial Management of Non-Malignant Diseases Related to Asbestos," Am J Respir Crit Care Med, 170:691-715, are excluded from the Severe Pleural Disease category under the TDP by arbitrary additional requirements. Medical expert testimony on this subject will be supplied by Dr. Alan Whitehouse. As this Court is aware, the Plan Proponents and Arrowood Indemnity Company are attempting, by means fair and foul,[3] to prejudice this Court against Dr. Whitehouse and destroy his credibility. The testimony of Libby Claimant Witnesses demonstrating that they do indeed suffer from severe disease is directly relevant to the Libby Claimants' argument that the disease criteria of the TDP discriminate against them.

The "meet and confer" did not produce a resolution, and on April 30, 2009 the Debtors filed the Motion. In anticipation of the Motion and the scheduling of a hearing thereon for the week of May 11th (discussed at the April 27 omnibus hearing), on April 29, 2009, the Libby Claimants

---

[3] A recent example of a foul means of attacking Dr. Whitehouse is Arrowood's Request to Take Judicial Notice, Pursuant to Federal Rule of Evidence 201, of Decision and Order Barring Expert Testimony of Dr. Whitehouse in Further Support of Motion to Strike Dr. Whitehouse Expert Report (Dkt. No. 21245) filed on May 4, 2009 [Docket No. 21525] —a transparent attempt to prejudice this Court against Dr. Whitehouse by bringing to this Court's attention, without any legal basis, a ruling by the judge in the Grace criminal trial limiting Dr. Whitehouse's testimony in that case.

4

393.001-26248.doc

renoticed a number of the depositions to take place later in the month of May; in addition, one deposition notice was withdrawn, making the total noticed depositions 17. Also on April 29, 2009, the Libby Claimants sent records on the 17 individuals to the Debtors, ACC, and Arrowood, and on May 4, 2009 invited other plan objectors to request the same records if they intended to participate in the depositions of the Libby Claimant Witnesses.

Response

### I.   The Depositions of the Libby Claimant Witnesses Are Appropriate Under the CMO

5.   Despite the Debtors' and Arrowood's protestations, the depositions of the Libby Claimant Witnesses are entirely appropriate under the CMO. Both the Debtors and Arrowood argue that the depositions somehow run afoul of the CMO. *Motion* at p. 3; *Arrowood Joinder* at p.5. But the Libby Claimants have properly listed the Libby Claimant Witnesses prior to the deadline to submit final witness lists and have noticed the depositions before the deposition deadline. Any suggestion by the Debtors and Arrowood that the depositions are not timely is not supported by the CMO.

6.   In an effort to distract the Court, both the Debtors and Arrowood argue the plan confirmation depositions are improper under the Court's 2004 ruling on perpetuation depositions. However, these depositions have no relationship whatsoever to the perpetuation depositions sought by the Libby Claimants in 2004. In 2004 there was no pending contested matter under Fed. R. Bankr. P. 9014 in which the deponents' testimony was relevant. The present depositions of the Libby Claimant Witnesses are for purposes of plan confirmation discovery in furtherance of their objections to the Plan. As such, the depositions of the Libby Claimant Witnesses in no way circumvent this Court's 2004 ruling on perpetuation depositions. Indeed, the pending depositions were denominated "perpetuation" only because the particular

5

393.001-26248.doc

Libby Claimant Witnesses are too sick to travel to Pittsburgh or Wilmington and some may not live until the Confirmation Hearing or be well enough to testify at that time. For this reason, and also in order to help expedite the confirmation hearing by potentially permitting this Court to receive deposition rather than live testimony for Libby Claimant Witnesses, these depositions are an appropriate discovery procedure in connection with plan confirmation. Consistent with the plan confirmation purpose of these depositions and unlike a general perpetuation deposition, the Libby Claimants gave notice of the deposition solely to the Plan Proponents and plan objectors, and not to other parties against whom the Libby Claimants have pending claims.

7. In sum, the depositions of the Libby Claimant Witnesses are appropriate under the CMO, both procedurally and for purposes of plan confirmation discovery.

## II. The Depositions of Libby Claimants Witnesses Will Result in Relevant and Admissible Testimony

8. This case proceeded at a snail's pace for more than seven years. During that time, the Debtors launched an unprecedented discovery program, causing delays, wasting estate resources, and burdening responding parties, including the Libby Claimants. Now, in the Plan confirmation proceedings, the Debtors have adopted an accelerated schedule and complain about the legitimate discovery program employed by the Libby Claimants. Just as the Debtors were given an opportunity to ample discovery during the course of this bankruptcy case, so too are the Libby Claimants entitled to discovery to prove their objections to the Plan. The testimony of the Libby Claimant Witnesses will prove the existence of valid wrongful death and consortium claims under Montana law and the effect of asbestos disease on Libby Claimants who have severe disabling pleural disease but whom the TDP relegates to the lowest disease classifications through the use of improper medical criteria. At the Confirmation Hearing, this testimony will be both relevant and admissible.

6

### A. Depositions of Libby Claimant Witnesses Will Prove the Existence of Wrongful Death and Consortium Claims

9. Montana recognizes a statutory action for wrongful death: "When injuries to and the death of one person are caused by the wrongful act or neglect of another, the personal representative of the decedent's estate may maintain an action for damages against the person causing the death . . . " MONT. CODE ANN. § 27-1-513. According to the Montana Supreme Court, "[g]enerally, damages under a wrongful death claim will include loss of consortium by a spouse, loss of comfort and society of the decedent suffered by the surviving heirs, and the reasonable value of the contributions in money that the decedent would reasonably have made for the support, education, training and care of the heirs had she lived. . . . wrongful death damages are personal to those who survive her." Hern v. Safeco Ins. Co. of Illinois, 125 P.3d 597, 604-05 (Mont. 2005). Accordingly, proof of the existence of a wrongful death claim under Montana law requires proof from the claimant (in a representative capacity) both of (1) "the wrongful act or neglect of another," in this case exposure to the Debtors' asbestos in Libby, and (2) damages in the above aspects suffered personally by the decedent's survivors. This will be accomplished by relevant, admissible testimony of one or more of the Libby Claimant Witnesses.[4] The cause of action for wrongful death, based on damages suffered by the decedent's survivors, is separate and distinct from causes of action of the decedent's estate based on injury to the decedent.

10. Montana also recognizes a cause of action for loss of consortium. The Montana Supreme Court states that "a cause of action for consortium of the deprived spouse is separate and distinct from the claim of the injured spouse and . . . the basis for a consortium claim lies in

---

[4] Depositions of Linda Collinson (personal representative of Charles Collinson) and Robert Petrusha (personal representative of Lorraine Petrusha) have been noticed for proving the existence of valid wrongful death claims under Montana law.

7

the Montana statutes in which the husband and wife contract for obligations of mutual respect, fidelity, and support . . . [which] includes a legal right to the aid, protection, affection and society of the other spouse." Bain v. Gleason, 726 P.2d 1153, 1155 (Mont. 1986). But cf. Mickelson v. Montana Rail Link, Inc., 999 P.2d 985 (Mont. 2000) (holding in the context of Montana comparative negligence law that "while a loss of consortium claim is independent as to damages, it is derivative as to liability"). "[L]oss of consortium embrace[s] all of those values-tangible and intangible-inherent in the family relationship." Hern, 125 P.3d at 606 (discussing child's right to a 'filial' loss of consortium claim after parental loss) (quoting Pence v. Fox, 813 P.2d 429, 432 (Mont. 1991)). Accordingly, proof of the existence of a consortium claim under Montana law requires proof unique to each case of disease (in representative capacity in the proposed depositions) that some loss of aid, protection, affection, or society is caused to one's spouse by a Libby Claimant's disease. The proof consists of establishing the limited capacity and relationships that result from the Libby victim's asbestos disease. This will be accomplished by relevant, admissible testimony of one or more of the Libby Claimant Witnesses.

11. As stated above, the Libby Claimants are willing to work with the Plan Proponents[5] to eliminate the need for these particular depositions by means of a stipulation that Libby Claimants have valid wrongful death and loss-of-consortium claims under Montana state law that are being disallowed by the Plan. Absent such a stipulation, however, the Libby Claimants need this discovery to prove that the Plan violates their right to have their claims allowed in accordance with applicable nonbankruptcy law.

---

[5] Arrowood's offer of a stipulation on this matter, while appreciated, is of little meaning to the Libby Claimants. As a plan objector, Arrowood is unable to bind the Plan Proponents on this or any other matter.

### B. Depositions of Libby Claimant Witnesses Will Demonstrate the Effect of Asbestos Disease on the Libby Claimants

12. The Libby Claimant Witnesses noticed for deposition have severe asbestos disease as diagnosed by Dr. Alan C. Whitehouse and the Center for Asbestos Related Disease, but almost all fail to meet the criteria for "Severe Disabling Pleural Disease" under the TDP. The Plan Proponents and other insurers are questioning Dr. Whitehouse's medical practices, suggesting that his diagnoses are incorrect and his opinions flawed. In addition to the scientific bases on which Dr. Whitehouse's opinions rest, the Libby Claimants intend to offer powerful corroboration of Dr. Whitehouse's expert opinions in the form of testimony by the Libby Claimant Witnesses concerning their own condition and the impact of asbestos disease on their ability to function in daily life. This testimony is directly relevant to the issue of whether their condition—contrary to the arbitrary medical criteria of the TDP—is "severe." The Libby Claimant Witnesses are competent to testify to their own symptoms, Shoemaker v. John Hancock Mut. Life Ins. Co., 147 Fed.Appx. 245, 248 (3d Cir. 2005) (plaintiff is competent to testify as to his own symptoms),[6] and Dr. Whitehouse as an expert treating physician is allowed to testify in specific reliance on such testimony from the Libby Claimant Witnesses. The Libby Claimants must be permitted to prove their case, and this evidence will do so.

13. It is not surprising that the Plan Proponents and their ally Arrowood attack the use of testimony of actual victims of asbestos disease. Their experts are hired guns whose opinions are not grounded in the actual care and examination of patients. If a Plan Proponent expert testifies that an individual meeting certain medical criteria does not suffer from severe pleural disease, it is certainly fair to rebut that testimony by introducing—along with Dr. Whitehouse's

---

[6] This case appears to have not been rendered as precedential, but the issue for which it is cited herein is accepted. See Smith v. Barnhart, 2002 WL 485050 (N.D. Cal. 2002)("A claimant's testimony concerning his own symptoms is competent evidence which must be taken into account. ")(citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

9

opinion to the contrary—evidence that actual people meeting these medical criteria are severely incapacitated. Not surprisingly, these severely diseased persons are the ones most likely to be unable to travel thousands of miles to the confirmation hearing or even testify from Montana at the time of the confirmation hearing. Accordingly, the Libby Claimants may take their testimony by deposition now, and rely on such depositions at the confirmation hearing. See Fed.R.Civ.P., 32(a)(4)(B) & (C).

### III.    The Arrowood Joinder is Replete with Misstatements and Without Merit

14.    The Arrowood Joinder is replete with misstatements and is without merit. It should be given no consideration by the Court. Each "point" made in the Arrowood Joinder is either untrue or a gross exaggeration of facts:

- Point I. Arrowood asserts that the only reason offered during the April 23 "meet and confer" by counsel to the Libby Claimants for issuing the deposition notices was to prove that individual personal injury claims exist under Montana law. Not true. Counsel to the Libby Claimants explained to the Debtors and Arrowood that the depositions were necessary for the reasons articulated in this Response.

- Point II. Arrowood asserts that the depositions should be barred because the Libby Claimants have not complied with basic 2019 disclosure and discovery obligations. Not true. Arrowood complains that the 2019 statement does not identify any of the Libby Claimant Witnesses as having cancer. As explained above, the Libby Claimant Witnesses who are testifying about their own asbestos disease are addressing severe pleural disease, not cancer. Arrowood complains that the deadlines for the production of documents and designation of experts under the CMO have passed. True but irrelevant. The depositions of the Libby Claimant Witnesses, as fact witnesses, are timely under the CMO. Arrowood claims that the Libby Claimants intentionally delayed passing along basic information concerning the Libby Claimant Witnesses. Not true. The correspondence attached to the Arrowood Joinder proves the exact opposite and shows that within a week of noticing the depositions, the Libby Claimants responded to each request made by Arrowood (usually within a day or two) and supplied Arrowood with records for each of the Libby Claimant Witnesses.[7]

---

[7] It would have been proper for the Libby Claimants to have withheld that information, insofar as it consists of confidential medical information, until entry of a protective order. However, recognizing the need for expedition, and in reliance on this Court's assurances that a protective order whereby Libby Claimants would be publicly referred to by number rather than name in order to protect their private information, the Libby Claimants have timely supplied the information requested by Arrowood in advance of actual entry of the protective order.

10

393.001-26248.doc

Neither Arrowood nor any other party has suffered any prejudice.

- Point III. Arrowood asserts the depositions will cause an unprecedented burden and distraction. After imagining a parade of horribles and hypothesizing every remotely conceivable delay, Arrowood estimates the time to conduct the depositions of the 17 Libby Claimant Witnesses could "require additional months" and legal preparation and participation by the Plan Proponents that could be "above 500 hours." Only irresponsible filibustering by Arrowood or the Plan Proponents could possibly consume this much time. These assertions are nonsense and intended to alarm the Court. It is worth the Court's notice that Arrowood itself has repeatedly refused the Plan Proponents' requests to pare down Arrowood's own witness list, *which includes more than 68 potential witnesses.* [Docket No. 21022]. Arrowood's professed concern for estate resources is a one-way street that apparently has no application to Arrowood itself. That having been said, the Libby Claimants would be willing to work with the Plan Proponents in a comprehensive effort to pare down the number of witnesses. Their "meet and confer" discussions never reached this point because Arrowood and the Plan Proponents took the position that there should be no depositions whatsoever of the Libby Claimant Witnesses.

- Point IV. Arrowood asserts that it has standing to be heard on the matter of depositions of Libby Claimant Witnesses because the Libby Claimants have intervened and asserted objections to the Plan that could affect all parties. Arrowood's introductory sentence to this "point" so blatantly takes a transcript quote out of context that it can only be meant to deceive the Court, and demands a response. To demonstrate that the Libby Claimants have "intervened" and involved various insurers, Arrowood attempts to portray counsel to the Libby Claimants as having told the Court one thing at the December 15, 2008 hearing ("the only party from whom we need discovery is Grace"), but then done something entirely different (propounded discovery on several insurers). At issue at the December 15 hearing was the production of various claims databases maintained by the Debtors. The quoted statement refers to the Libby Claimants' need for discovery only from the Debtors *concerning these databases*, rather than from all of the persons whose data was collected to develop the databases. While this argument was ultimately litigated (and the Libby Claimants were denied access to certain of the Debtors' databases), it obviously was not a discussion of global discovery needed by the Libby Claimants in these plan confirmation proceedings, which obviously would involve far more parties than just the Debtors.

393.001-26248.doc

15.     In sum, the Arrowood Joinder should be disregarded as incorrect and misleading.

## Conclusion

Based on the foregoing, the Motion should be denied.

Dated: May 8, 2009  
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Kerri Mumford

Adam G. Landis (No. 3407)  
Kerri K. Mumford (No. 4186)  
919 Market Street, Suite 1800  
Wilmington, DE  19801  
Telephone:  (302) 467-4400  
Facsimile:  (302) 467-4450

- and -

Daniel C. Cohn  
Christopher M. Candon  
**COHN WHITESELL & GOLDBERG LLP**  
101 Arch Street  
Boston, MA 02110  
Telephone:  (617) 951-2505  
Facsimile:  (617) 951-0679

*Counsel for Libby Claimants*

12

393.001-26248.doc