# Exhibit B

## Matter 88 - Acton Site OU3

During this Fifteenth Application Period, the Firm assisted the Debtor in matters related to the federal Superfund site known as the Grace Acton Site. On September 30, 2005, the federal Environmental Protection Agency issued the Record of Decision, or ROD, for the cleanup of the so-called Operable Unit 3 (OU-3) at the Site. The ROD identified a remedy for the Site, which EPA will expect the Debtor to implement pursuant to the terms of a consent decree entered into between the Debtor and the United States in 1980.

Although the ROD states the general outline of the remedy, substantial work is required to determine what flexibility the Debtor may have in implementing the remedy. The next step in this process was the issuance by EPA of a scope of work (SOW), to be performed by the Debtor, to implement the remedy described in the ROD. Following issuance of the SOW, and during the Fifteenth Application Period, the Firm worked with the Debtor on issues related to plans for the cleanup of groundwater and sediment at the Site, including review of draft reports to be submitted to EPA concerning the design for the Northeast Area groundwater remedy and the remedy in the area of the former landfill at the Site.

This work is complex and requires an in-depth knowledge of the history of the Debtor's cleanup of the Grace Acton Site, the terms of the 1980 Consent Decree, and the relevant provisions of federal and state Superfund laws. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to cost-effective compliance with the Debtor's obligations under the federal Superfund law and the 1980 Consent Decree.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $585.00 | 14.2 | $ 8,307.00 |
|  |  |  |  |  |  |
| **TOTAL** |  |  |  | **14.2** | **$ 8,307.00** |

## Matter 101 - Bankruptcy Matters

This matter covers preparation of monthly and interim fee applications, as well as the Firm's efforts to obtain Court cost authorization for the Firm to serve as special environmental counsel to Debtor. Foley Hoag's ordinary practice is to exercise billing discretion prior to submitting invoices, and it has done so with respect to each of the invoices it submitted during the Interim Period. To date, none of the interested parties objected to payment on account of any portion of any of those invoices, although they were entitled to do so.

The Firm's application-preparation fee is reasonable in light of the nature and magnitude of the effort involved. For each of those matters, as required by the Local Rules, the Firm submitted detailed billing summaries, and its attorneys prepared narrative descriptions of the work performed.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $585.00 | 1.0 | $ 585.00 |
| Adam P. Kahn | Partner | Environmental | $585.00 | 0.4 | $ 234.00 |
| | | | | | |
| TOTAL | | | | 1.4 | $ 819.00 |

### Matter 102 - Blackburn and Union Privileges Superfund Site, Walpole, Mass

During this Fifteenth Application Period, the Firm assisted the Debtor in matters related to the federal Superfund site known as the Blackburn and Union Privileges Superfund Site, in Walpole, Massachusetts. The site has been in industrial use for several hundred years. From approximately 1915 to 1935, it was operated by Multibestos Company, which manufactured products containing asbestos. The stock of Multibestos was purchased by Dewey & Almy in or about 1930. The Debtor purchased the stock of Dewey & Almy in 1954.

The Debtor and other potentially responsible parties have been working with EPA and MassDEP since 1988. In 1992 and 1993, the Debtor performed a cleanup at the Site with respect to asbestos, though other contamination remained. The Site was added to the federal National Priorities List in 1994. the Debtor received a Notice of Potential Liability from EPA in 1998 and a "Special Notice of Responsibility" in 1999. Also in 1999, the Debtor entered into an administrative order with EPA and the Kendall Company, another potentially responsible party. In the order, the Debtor and Kendall each agreed to pay 50% of the costs for performance of the Remedial Investigation / Feasibility Study ("RI/FS") for the Site. After the Debtor filed for reorganization, the Kendall Company continued the RI/FS work without financial participation from the Debtor.

In 2006, EPA announced that it was revisiting the potential risks posed by the presence of asbestos as the Site, including areas with concentrations of asbestos greater than 0.25%, even though the original cleanup was based on a concentration of 1%. EPA has recently indicated that there may be several additional areas of the Site that require remediation for asbestos.

The Firm has assisted the Debtor in analyzing its continuing potential liability for the presence of asbestos, its obligations under agreements entered into prior to the filing for reorganization, and how this Site should be addressed in the contact of broader negotiations with EPA over multiple sites. During this period, the Firm also assisted the Debtor in connection with negotiations between the Debtor and Kendall regarding a long-term settlement which would resolve the allocation of liability for costs at the Site between the Debtor and Kendall. A settlement was in fact reached during this period. The settlement was submitted to this Court and approved in December 2008.

On September 30, 2008, EPA issued the Record of Decision (ROD) for the Site, which identifies the elements of the cleanup plan EPA has selected. The remedy contains several

different components, the estimated cost of which in the ROD is approximately $13,000,000, and also identifies certain other issues which may require yet additional work.

During this period, EPA issued what is known as "special notice" letters pursuant to section 122 of CERCLA, triggering a period of negotiations with EPA concerning implementation of the remedy selected in the ROD. During this period, we assisted the debtor in responding to the special notice letter. This includes proposed revisions to EPA's draft consent decree and statement of work, preparation of and revisions to potential institutional controls to limit exposure to contamination at the Site, and continued review of issues related to potential liability of the Debtor for work required by the ROD.

In addition, during this period, EPA informed the Debtor and the other PRPs that conditions in the former mill building at the site pose certain immediate risks, separate and apart from the contamination addressed in the RI/FS and the ROD, and stated that it expects the Debtor and other PRPs to implement a removal action to address these concerns. The removal action notice raised yet additional issues related to the liability of the Debtor and other PRPs for conditions at the Site. During this period, we have assisted Debtor in reviewing these issues and preparing a response to EPA's removal action notice.

Finally, the Town of Walpole has certain interest in the Site and has raised concerns with EPA about certain issues that could affect the scope and cost of the cleanup. During this period, we assisted the Debtor in negotiations with the Town concerns the issues raised by the Town.

This work is complex and requires an in-depth knowledge of the Superfund law, and applicable regulations governing the cleanup of asbestos. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to an effective response to EPA's potential request that more cleanup be performed with respect to asbestos and to overall minimization of the cleanup cost.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $585.00 | 61.0 | $35,685.00 |
| Anthony D. Mirenda | Partner | Litigation | $605.00 | 0.1 | $ 60.50 |
| Jacob N. Polatin | Partner | Real Estate | $585.00 | 12.2 | $ 7,137.00 |
| Malcolm G. Henderson | Partner | Business | $550.00 | 0.9 | $ 495.00 |
| Nicola M. Lemay | Partner | Taxation | $555.00 | 1.2 | $ 666.00 |
| Mark A. Barnett | Associate | Business | $410.00 | 0.4 | $ 164.00 |
| Adam D. Wade | Associate | Business | $410.00 | 11.7 | $ 4,797.00 |
| Courtney Peters-Manning | Associate | Environmental | $345.00 | 35.9 | $12,385.50 |
| **TOTAL** | | | | 123.4 | $61,390.00 |