# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Case No. 01-01139 (JKF) |
| | : | |
| W. R. GRACE & CO., et al., | : | Jointly Administered |
| | : | |
| Debtors. | : | Chapter 11 |
| | : | |
| | : | Related to: Docket Nos. 19579, 20864 |
| | : | |
| | : | |

## OBJECTION OF MORGAN STANLEY SENIOR FUNDING, INC. TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS DATED FEBRUARY 27, 2009

Morgan Stanley Senior Funding, Inc. ("Morgan Stanley"), as assignee of certain claims of Bank of America, N.A. ("BofA"), by and through its undersigned counsel, hereby objects to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated February 27, 2009 (the "Plan")[1], and respectfully states as follows:

## Background

1.      On April 2, 2001 (the "Petition Date"), W. R. Grace & Co., W. R. Grace & Co. – Conn. ("Grace-Conn") and certain of their affiliates and subsidiaries (together with W. R. Grace & Co. and Grace-Conn, the "Debtors") filed with this Court their petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2. Prior to the Petition Date, BofA issued three standby letters of credit for the account of Grace-Conn (collectively, the "Letters of Credit") as collateral for certain insurance transactions and surety bonds issued in favor of the Debtors. Upon any draw under the Letters of Credit, Grace-Conn was obligated to reimburse BofA in accordance with the terms of certain agreement(s) between Grace-Conn and BofA (the "Reimbursement Agreements"). The Reimbursement Agreements provide for the payment of interest "on demand, on any amount not paid when due . . . from the due date until payment in full at a rate per annum equal to the rate of interest publicly announced from time to time by Bank of America as its prime rate, plus three percentage points (not to exceed the maximum rate permitted by applicable law)" (the "Morgan Stanley Contract Rate"). Notably, it is the only interest rate mentioned in the Reimbursement Agreement. See Reimbursement Agreement at ¶ 1(g) (emphasis added). Copies of the Letters of Credit and Reimbursement Agreements are attached as Exhibit "A" hereto and fully incorporated herein by reference. A more legible copy of the form of Reimbursement Agreement is attached as Exhibit "B" hereto

3. On November 11, 2005, the Debtors and BofA entered into that certain Stipulation Regarding Allowance of Certain Claims (the "2005 Stipulation"), pursuant to which the Debtors agreed that, as a result of National Union Fire Insurance Company of Pittsburgh, PA having drawn on two of the Letters of Credit, BofA was entitled to (i) an allowed, unsecured nonpriority claim against Grace-Conn in the amount of $9,779,270, and (ii) an allowed, contingent, unliquidated and undisputed claim against Grace-Conn with respect to all undrawn amounts of the outstanding Letters of Credit. On November 14, 2005, this Court entered its Order Authorizing Settlement with Bank of America, N.A. and Granting Related Relief which authorized the Debtors' entry into the 2005 Stipulation.

4. In light of National Union's subsequent draws under the Letters of Credit, BofA's allowed, contingent, unliquidated and undisputed claim against Grace-Conn with respect to such subsequent draws under the outstanding Letters of Credit was liquidated in the amount of $6,710,110.

5. Pursuant to Transfer of Claim Agreements dated April 24, 2006 and February 22, 2008, Morgan Stanley became the owner of all of BofA's right, title and interest in and to BofA's $6,710,110 claim and BofA's $9,779,270 claim (collectively, the "Morgan Stanley Claims").

6. Pursuant to a Stipulation, dated May 14, 2009, Regarding Classification of Claims of Morgan Stanley Senior Funding, Inc. as Assignee of Certain Claims of Bank of America, N.A. Under the Plan , the Morgan Stanley Claims are allowed under the Plan in full as Class 9 General Unsecured Claims. That stipulation does not, however, address the appropriate rate of post-petition interest to be paid on the Morgan Stanley Claims under the Plan. Based upon communications with Debtors' counsel, however, Morgan Stanley understands that it may be the Debtors' position that the Morgan Stanley Claims should be paid interest as calculated in Section 3.1.9(b)(D) of the Plan – i.e., at the federal judgment rate of 4.19% as of the Petition Date and not the Morgan Stanley Contract Rate specified in the Reimbursement Agreements. The Debtor may contend that the Morgan Stanley Contract Rate is not a non-default rate of interest as contemplated by Section 3.1.9(b)(C) of the Plan. In addition to submitting this Objection, Morgan Stanley is submitting the appropriate Post-Petition Interest Determination Notice and Notice of Non-Default Contract Rate of Interest as required by the approved Notice of Procedures Relating to Payment of Post-Petition Interest on General Unsecured Claims. While Morgan Stanley reserves all of its rights as asserted in those notices, this objection assumes that

the Plan Proponents will assert that interest on the Morgan Stanley Claims should be paid at the federal judgment rate as detailed in section 3.1.9(b)(D) of the Plan.

**Objection**

A. **The Plan Violates Section 1123(a)(4) of the Bankruptcy Code Because It Does Not Provide the Same Treatment for Each Claim in Class 9**

7. Section 1123(a)(4) of the Bankruptcy Code requires that a plan of reorganization shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). This provision requires that all creditors who are similarly situated receive equal treatment. Corestates Bank, N.A., v. United Chem. Tech., Inc., 202 B.R. 33, 47 (E.D. Pa. 1996) ("A plan that does discriminate unfairly gives unequal treatment to creditors who are similarly situated regarding legal rights and priority.") (citations omitted) and restates a cardinal principal of bankruptcy law that all claims within a class should be treated equally. See, e.g., In re Huckabee Auto. Co., 33 B.R. 141, 148 (Bankr. N.D. Ga. 1983).

8. The Plan does not provide for the requisite equality of treatment within Class 9. Class 9 effectively consists for 4 separate subclasses, yet is voting as one class. Ostensibly, the similarity is that these claims are paid in full with post-petition interest. But it is in connection with the payment of post-petition interest that they differ in treatment, thus causing the Plan to violate section 1123(a)(4). Interest on Class 9 Claims arising from the Pre-Petition Credit Facilities is calculated at 6.09% from the Petition date through December 31, 2005 and thereafter at floating prime, compounded quarterly. Environmental Claims that include a liquidated amount for post-petition or future cleanup liability receive interest at 4.19% from the date specified in an order allowing the claim, compounded annually. Class 9 Claims arising from an existing contract receive post-petition interest at the non-default contract rate, compounded

annually. "Other" Class 9 claims receive post-petition interest at the 4.19% federal judgment rate in effect on the Petition Date. Thus, within the same class, different claims receive different interest rates, calculated from different starting points and with different compounding periods (quarterly vs. annually). See Plan at § 3.1.9(b)(A) – (D).[2]

9. While neither the Bankruptcy Code nor the legislative history to section 1123(a)(4) explicitly defines the parameters of equal treatment, it has been stated that "the most conspicuous inequality that § 1123(a)(4) prohibits is payment of different percentage settlements to co-class members." In re AOV Indus., Inc., 792 F.2d 1140, 1152 (D.C. Cir. 1986). The case law interpreting section 1123(a)(4) also makes clear that courts must consider not only what individual creditors within the class are receiving, but also what they are giving up. In re Union Meeting Partners, 165 B.R. 553, 567 (Bankr. E.D. Pa. 1994), aff'd, 52 F.3d 317 (3d Cir. 1995). Here, the Plan Proponents have offered no justification for this disparate treatment of claims within the same class. Not only are different creditors receiving different interest rates with different compounding periods, but some creditors within Class 9 are certainly giving up more than others. Some may in fact be giving up nothing as, for example, it appears that a negotiated resolution was reached with the Pre-Petition Credit Facility Claim treatment. For example, the Plan provides only for the payment of a contract rate of interest if the contract rate is determined to be a non-default rate – otherwise the claimant receives the federal judgment rate. If the Plan is confirmed as written, and the Morgan Stanley Contract Rate is determined not to be a non-

---

[2] The Debtors assert that this treatment constitutes unimpairment of Class 9 pursuant to section 1124(1) of the Bankruptcy Code by leaving each claimant's legal, equitable and contractual rights unaltered and has purportedly sought the votes of Class 9 members as a precautionary measure. Morgan Stanley submits that its legal and contractual rights entitle it to interest at the Morgan Stanley Contract Rate – not the federal judgment rate and that its claim is impaired by the treatment in Class 9 if it does not receive the Morgan Stanley Contract Rate in respect of its allowed claim.

84375066v3

default rate, then Morgan Stanley will fail to receive more than $8 million, assuming the Debtors' emergence from chapter 11 by December 31, 2009 (i.e., the difference between post-petition interest at the Morgan Stanley Contract Rate, compounded annually, and post-petition interest at 4.19%, compounded annually).

**B. The Plan's Classification Scheme Amounts to Improper Gerrymandering of an Impaired Class**

10. As detailed below, Morgan Stanley submits that at least some creditors within Class 9 are impaired. While the Plan asserts that holders of Class 9 Claims are unimpaired, the votes of creditors within that class have nonetheless been solicited here. Should it ultimately become necessary, and assuming enough Class 9 votes are obtained, this may provide the Plan Proponents with the affirmative vote of an impaired class (11 U.S.C. § 1129(a)(10)), or may allow them to avoid satisfying the cram down standards set forth in section 1129(b) of the Bankruptcy Code as to a more appropriately class consisting of claims being treated in the manner of the Morgan Stanley Claims. It is clear that vote manipulation by the gerrymandering of classes seriously undermines the "critical confirmation requirements set out in Section 1129(a)(8) (acceptance by all impaired classes) and Section 1129(a)(10) (acceptance by at least one impaired class in the event of a 'cram down')." <u>John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.</u>, 987 F.2d 154, 158 (3d Cir.1993). While most "gerrymandering" cases discuss separately classifying similarly situated creditors to achieve an impaired class for purposes of section 1129(a)(10), gerrymandering to enable the plan proponent to avoid having to satisfy the "cram down" standards of section 1129(b) of the Bankruptcy Code, which, Morgan Stanley submits, the Debtors cannot do here, cannot be countenanced by the Court. The potential for acceptance of the Plan by Class 9 is inappropriately skewed because the votes of

numerous creditors who have either negotiated a post-petition rate of interest and compounding or are content to receive a non-default contract of interest, or who have no contract and are content to receive any post-petition interest are potentially overwhelming the votes of creditors like Morgan Stanley who may receive the federal judgment rate in the face of a valid contract rate of interest. Moreover, if it turns out that some of the claims in Class 9 are, in fact, legally unimpaired and others are not, the votes of the unimpaired creditors cannot be counted at all.

      **C.     The Plan Improperly Characterizes Class 9 Claims as Unimpaired**

      11.     Section 1124(1) of the Bankruptcy Code states that a class of claims is impaired unless, with respect to each claim in that class, the plan "leaves unaltered the legal, equitable, and contractual rights" of the claimholder. Thus, in order for a class to be unimpaired, <u>every claim within the class</u> must be unimpaired. See 11 U.S.C. § 1124(1).

      12.     The law in this Circuit is clear that if a chapter 11 plan does not leave a creditor's legal, equitable and contractual rights <u>entirely</u> unaltered, that creditor's claim is impaired under section 1124 of the Bankruptcy Code. <u>In re PPI Enters. (U.S.), Inc.</u>, 324 F.3d 197, 202 (3d Cir. 2003); <u>In re Coram Healthcare Corp.</u>, 315 B.R. 321, 351 (Bankr. D. Del. 2004) ("if the proposed plan of reorganization does not leave the creditor's rights entirely unaltered, the creditor's claim is impaired.").

      13.     Here, at least certain holders of Class 9 General Unsecured Claims – including Morgan Stanley – are impaired under the Plan despite the Plan Proponents' assertions to the contrary. Specifically, Section 3.1.9(b) provides that – what are effectively subclasses of Class 9 – will receive interest at a non-default contractual rate or, where there is no non-default rate specified in the contract, at the federal judgment rate of 4.19%. This does not render these

claims unimpaired because the claimholder's rights are not left entirely unaltered. Coram Healthcare, 315 B.R. at 351.

14. With respect to the Morgan Stanley Claims, unimpairment can be achieved only through payment of post-petition interest at the Morgan Stanley Contract Rate. Whether the Plan Proponents paste a "default rate" moniker or not upon the Reimbursement Agreement, that interest rate is what BofA bargained for under the Reimbursement Agreements and are the rights to which Morgan Stanley succeeded. Anything less erases the benefit of the bargain and indeed leaves Morgan Stanley with its legal, equitable and contractual rights altered. In re Ace-Texas, Inc., 217 B.R. 719, 727 (Bankr. D. Del. 1998) ("...impairment can be avoided only if the plan proposes cash payment in the full amount of the claim in accordance with the parties' agreement. When the agreement requires a higher post-default rate of interest, this means the higher rate must be paid. Any other treatment would alter the creditor's rights."). See also, In re Southland Corp., 160 F.3d 1054, 1059-60 (5th Cir. 1998) (holding reinstatement of impaired creditors requires that they receive "bargained-for default interest, which compensates them for unforeseeable costs of default"). Even some Class 9 creditors without a contract in the "other" subclass in Section 3.1.9(b)(D) of the Plan could find themselves receiving the federal judgment rate where only a higher, more appropriate rate – such as a state law judgment interest rate – would leave them unimpaired. See In re G.L. Bryan Investments, Inc., 340 B.R. 386, 390 (Bankr. D. Colo. 2006) (judgment creditor otherwise entitled to payment of interest under state judgment rate rendered impaired by plan's payment of interest at lower federal judgment rate of interest).

15. The Plan's approach to achieving unimpairment flies in the face of Congress's repeal of former section 1124(3) in light of In re New Valley Corp., 168 B.R. 73 (Bankr. D.N.J.

84375066v3

1994).  The New Valley Court held that section 1124(3) allowed a solvent debtor to pay only the "allowed" claims of unsecured creditors in full, excluding post-petition interest, without those creditors being rendered impaired, even though the Debtor was solvent and equity holders received a recovery.  Id. at 77-80.  In repealing section 1124(3), Congress made clear that, in the case of a reorganizing solvent debtor, unimpairment requires paying a creditor a separate payment of post-petition interest in addition to the "allowed" amount of the claim.  In re PPI, 324 F.3d at 206.  Any remaining doubt in this Circuit was eliminated when the Third Circuit found that a cash payment equal to the allowed prepetition amount of a claim, but without post-petition interest, could not qualify for unimpairment under section 1124(1) because the failure to pay post-petition interest did not leave contractual or legal rights unaltered.  Id. at 207.

16. Here, the only way the Morgan Stanley Claims can be rendered unimpaired is through payment of the Morgan Stanley Contract Rate -- irrespective of whether that rate is a "default rate".  Only the payment of interest as calculated in the Reimbursement Agreements renders the Morgan Stanley Claims unimpaired.  Blind application of the federal judgment rate does not achieve this same result.  While in Coram Healthcare, this Court did discuss how a class of unsecured creditors might be deemed unimpaired with payment of interest at the federal judgment rate, that plan (ultimately not confirmed) also provided for something not present here: the payment of interest "at whatever rate is determined [by the bankruptcy court] to be the proper rate of interest due them." 315 B.R. at 351.

D. **The Plan Cannot Satisfy the Absolute Priority Rule**

17. There can be no doubt that holders of Class 9 General Unsecured Claims are in a class superior to the equity interests of Classes 10 and 11.  Because the Plan enables owners of equity to retain their interests without rendering Class 9 claimants such as Morgan Stanley

84375066v3

unimpaired, the Plan cannot be confirmed unless Class 9 votes in favor of the plan[3] or the Plan Proponents satisfy the "cramdown" requirements of 1129(b) – a process that implicates the "fair and equitable" standard and the absolute priority rule embodied therein.

18. The absolute priority rule requires a plan to provide for payment in full of a dissenting class's claims, or absent such payment in full, to provide that holders of claims or interests junior in priority to those of the dissenting class not receive or retain any property under the Plan. In re Armstrong World Indus., 432 F.3d 507, 512-13 (3d Cir. 2005). As stated by the Third Circuit, "[e]ven in the flexible world of Chapter 11 reorganizations, the absolute priority rule, 11 U.S.C. § 1129(b)(2)(B), requires that equity holders receive nothing unless all creditors are paid in full."). In re Insilco Techs., 480 F.3d 212, 218 (3d Cir. 2007).

19. Even assuming, arguendo, that the Morgan Stanley Contract Rate in the Reimbursement agreement is a "default" rate – a point Morgan Stanley does not concede – the Plan violates the absolute priority rule because the Plan Proponents only propose to pay the Morgan Stanley Claims at the federal judgment rate of 4.19%. For purposes of the absolute priority rule, payment in full means payment of default interest to creditors whose contracts require such. In In re Dow Corning Corp., 456 F.3d 668, 679 (6th Cir. 2006), cert. denied, 549 U.S. 1317 (2007), the Court of Appeals for the Sixth Circuit stated:

> [I]n solvent debtor cases, rather than considering equitable principles, courts have generally confined themselves to determining and enforcing whatever pre-petition rights a given creditor has against the debtor. . . . When a debtor is solvent, then, the presumption is that a bankruptcy court's role is merely to enforce the contractual rights of the parties, and the role that equitable principles play in the allocation of competing interests is significantly reduced.

---

[3] Importantly, for the reasons set forth above, the voting needs to be conducted and acceptance or rejection measured with respect to appropriately subclasses of general unsecured creditors within Class 9. Morgan Stanley submits that its subclass should appropriately consist of claimants with contract rates of interest who are nevertheless being paid the federal judgment rate.

> Based on this application of the absolute priority rule in solvent debtor cases, Class 4 argues that we should enforce their rights under the contract, including their right to interest awarded at the default rate as set forth in the terms of their contract. . . . We agree. Default interest rates are intended to transfer some of the risk of default from creditors to the debtor. By interpreting the plan as allowing interest only at the non-default rate, the bankruptcy court effectively transferred that risk back to the Class 4 creditors. . . . [A]bsent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights.

Dow Corning, 456 F.3d at 679. See also, In re Southland, 160 F.3d at 1059-60; Coram Healthcare, 315 B.R. at 346 ("we are not convinced that Congress intended to supplant a party's contractual right to interest in all circumstances under chapter 11"). Here, permitting the Plan to deny Morgan Stanley the benefit of the bargain cannot pass the "fair and equitable" standards of section 1129(b) which the Debtor would likely have to satisfy if Morgan Stanley's claim is appropriately classified with other creditors having, but not receiving, a contract rate of interest under the Plan.

## Conclusion

21. Confirmation of the Plan should be denied. As stated above, the Plan violates section 1123(a)(4) of the Bankruptcy Code because it effectively creates separate subclasses within Class 9, each receiving different interest rates, calculated from different starting points and with different compounding periods. Not only is the treatment of claims within Class 9 impermissibly different, but classifying these disparate creditors together for voting serves only to "gerrymander" the vote and effectively disenfranchise creditors such as Morgan Stanley who have a contract rate of interest, but are only receiving the federal judgment rate. Ultimately, the Morgan Stanley Claims are impaired because they would be paid at an interest rate that alters the

underlying contractual rights in the Reimbursement Agreement.  Morgan Stanley must be paid its contractual rate of interest, irrespective of whether it is a "default rate" or not.

WHEREFORE, Morgan Stanley respectfully requests that this Court deny confirmation of the Plan and grant such other and further relief as is just and proper.

Dated: May 19, 2009

    */s/ Stuart M. Brown*    .
EDWARDS ANGELL PALMER & DODGE LLP
Stuart M. Brown (Bar No. 4050)
919 North Market Street
15th Floor
Wilmington, Delaware 19801
(302) 777-7770

-and-

KATTEN MUCHIN ROSENMAN LLP
Jeff J. Friedman (admitted pro hac vice)
Noah Heller (admitted pro hac vice)
Merritt A. Pardini (admitted pro hac vice)
575 Madison Avenue
New York, New York 10022
(212) 940-8800


*Attorneys for Morgan Stanley
Senior Funding, Inc.*