District of New York; <u>Moore, ex. rel. State of Mississippi v. The Flintkote Co., et al. v. Maryland Casualty Co., et al.</u>, No. 89-5138(2), venued in the Circuit Court of Jackson County, Mississippi; <u>Independent School District 197, et al. and W.R. Grace & Co. - Conn. v. Accident & Casualty Insurance of Winterthur, et al.</u>, No. 19-C4-88-007950, venued in the District Court of the County of Dakota, Minnesota; <u>W.R. Grace & Co. - Conn. v. Admiral Insurance Co., et al.</u>, No. 91-048251, venued in the District Court of Harris County, Texas; <u>Dayton Independent School District, et al. v. United States Mineral Products Co. and W.R. Grace & Co. - Conn. v. Admiral Insurance Co., et al.</u>, No. B-87-00507, venued in the United States District Court for the Eastern District of Texas, Beaumont; <u>W.R. Grace & Co. - Conn. v. Admiral Insurance Company, et al.</u>, No. BC 050432, venued in the Superior Court of the County of Los Angeles, California; and <u>American Employers Insurance Company, et al. v. W.R. Grace & Co. - Conn., et al.</u>, No. 6241-92, venued in the Supreme Court of the State of New York, County of New York.

D.    "Policy" and "Policies" mean all insurance policies issued or allegedly issued by Commercial Union to or for the benefit of Grace prior to and including the date of execution of the Agreement. "Policy" and "Policies" does not include any insurance policies issued to any corporation or entity that was formerly a subsidiary of Grace, or in which Grace otherwise held a

4

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000070

controlling interest, but had ceased to be a subsidiary of Grace, or in which Grace ceased holding a controlling interest, prior to the effective date of the policy. Commercial Union and Grace represent and warrant that they are unaware of any other contracts of insurance issued or alleged to have been issued to Grace prior to the date of execution of this Agreement, except those Policies listed below:

| Company | Policy No. | Policy Period |
|---|---|---|
| American Employers' Insurance Company ("AEIC") | A15-2127-51 | 10/20/62 - 10/20/65 |
| AEIC | A16-8220-001 | 10/20/65 - 10/20/68 |
| AEIC | A16-8220-002 | 10/20/65 - 10/20/68 |
| AEIC | A15-8138-001 | 01/27/65 - 10/20/65 |
| AEIC | A16-8220-003 | 10/20/68 - 06/30/71 |
| AEIC | A16-8220-004 | 10/20/68 - 06/30/71 |
| Employers Commercial Union Insurance Company | EY-8220-005 | 06/30/71 - 06/30/74 |
| Employers Commercial Union Insurance Company | EY-8220-006 | 06/30/71 - 06/30/74 |

Commercial Union does not admit the applicability of any or all of the Policies to any Claims.

E.   "Pending Litigation" means <u>Maryland Casualty Co. v. W.R. Grace & Co.</u>, No. 88 Civ. 4337 (JSM) venued in the Southern District of New York, as consolidated with <u>Unigard Security Ins.</u>

258380.2

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000071

Co. v. W.R. Grace & Co. - Conn., No. 97 Civ. 8941 (JSM), also venued in the Southern District of New York.

F.    "Effective Date" means the last date any signatory hereto executes this Agreement.

G.    "Party" means Grace or Commercial Union, as applicable.

H.    "Parties" means Grace and Commercial Union.

## II.    SETTLEMENT AMOUNT TO BE PAID BY COMMERCIAL UNION

Commercial Union shall pay to Grace the sum of Fifty-Seven Million Six Hundred Thousand Dollars ($57,600,000) ("Settlement Amount"). Payment of the Settlement Amount shall be made by Commercial Union to Grace within thirty (30) business days after actual receipt by Commercial Union of this Agreement, as executed by Grace. Payments are to be received from Commercial Union by either check or wire transfer.

## III.    RELEASES AND RESERVATIONS

A.    Grace hereby fully and forever releases and discharges Commercial Union from any and all rights, obligations and liabilities of any kind related to Claims arising under any or all of the Policies, from the beginning of time forward to the end of

6

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000072

the World, as if the Policies never existed.   The Policies, including all rights, obligations and liabilities associated with the Policies, are completely extinguished and terminated as to Claims.

B.   Commercial Union hereby fully and forever releases and discharges Grace from any and all rights, obligations and liabilities of any kind related to Claims arising under any or all of the Policies, from the beginning of time forward to the end of the World, as if the Policies never existed.   The Policies, including all rights, obligations and liabilities associated with the Policies, are completely extinguished and terminated as to Claims.

C.   Grace releases and discharges Commercial Union from any and all compensatory, punitive, exemplary or statutory damages, and equitable or extra-contractual relief, relating to or based upon any allegations of bad faith, fraud, misrepresentation, unfair claim practice, unfair trade practice or other acts or state of affairs, or failure to act, in connection with the investigations, handling, adjustment, litigation, defense or settlement arising out of or relating to the Policies.

D.   Commercial Union releases and discharges Grace from any and all compensatory, punitive, exemplary or statutory damages, and equitable or extra-contractual relief, relating to or based

7

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000073

upon any allegations of bad faith, fraud, misrepresentation, or other acts or state of affairs, or failure to act, in connection with the investigations, handling, adjustment, litigation, defense or settlement arising out of or relating to the Policies.

E.    Grace expressly assumes the risk that the alleged costs of its past, present, and/or future liability may be greater than Grace currently realizes, that the alleged costs may increase in amount or in severity over time and that the costs and/or claims may be progressive, cumulative, unknown and/or unforeseeable, and that there may be hidden, unknown and unknowable damages or costs. Grace nevertheless waives, surrenders, and abandons any rights under the Policies.



_____ (Initial - CU)

_____ (Initial - Grace)

F.    It is the intention of Commercial Union and Grace that this Agreement operate as and constitute a full release and extinguishment of the Policies, and Grace expressly waives any and all rights it may have, (whether by statute, code, ordinance, regulation, or otherwise) that limit or restrict the effect of a general release as to Claims which Grace does not know or suspect to exist at the time of the execution of the release.    However, the Parties agree that this Agreement does not relieve Commercial Union from its obligations under the "Settlement Agreement and

8

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000074

Release" dated December 17, 1996, entered into between Grace and Commercial Union in the case captioned Hatco Corp. v. W. R. Grace & Co.--Conn., No. 89-1031, and the "Settlement Agreement" dated May 7, 1993 entered into between Grace and Commercial Union as referenced in Section I.C., and payments due pursuant to this Agreement are in addition to the payments due pursuant to these other two agreements.

_____ (Initial — CU)

_____ (Initial — Grace)

## IV.   DISMISSAL WITH PREJUDICE

Within ten (10) days after payment of the Settlement Amount by Commercial Union to Grace pursuant to Section II of this Agreement, Grace shall file a motion to dismiss Commercial Union with prejudice, and without costs, from the Pending Litigation. Grace and Commercial Union shall bear their own respective costs, expenses and fees (including but not limited to attorneys' fees), in connection with the Pending Litigation, the negotiations for and execution of the Agreement, and the filing of the motion to dismiss Commercial Union.

## V.   COVENANT NOT TO SUE

Commercial Union hereby covenants not to sue or otherwise to seek to recover the Settlement Amount paid to Grace, from any

9

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000075

entity that currently is a successor of Grace, or any other entity or company that issued insurance to or for the benefit of Grace, to the extent that such successor(s) or other companies do not sue or otherwise seek to recover any money or obtain other relief from Commercial Union.   This covenant shall not preclude Commercial Union's right to pursue recovery from its reinsurers (if any), for some or all of the Settlement Amount.

## VI.   INDEMNIFICATION, HOLD HARMLESS AND DEFENSE

A.   From and after the Effective Date, Grace shall, at its own expense, defend Commercial Union and shall indemnify and hold Commercial Union harmless against any and all liability, loss, costs or expenses, imposed upon Commercial Union as a result of any Claims that are asserted, initiated or continued by any person or entity against Commercial Union and that are based upon the Policies.

B.   After receipt by Commercial Union of notice of any Claim, Commercial Union shall notify Grace in accordance with Section XII as soon as practicable, in writing, of such notice, and shall thereafter tender the Claim to Grace.

C.   After Grace receives any notice pursuant to Section VI.B., Grace shall promptly take all necessary actions to defend, indemnify and hold Commercial Union harmless.

10

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000076

D.    Grace and Commercial Union shall mutually agree upon a choice of counsel to represent Commercial Union.    Grace will consult with, and allow Commercial Union complete control over, the positions asserted in the interpretation of the language of the Policies, and will consult with Commercial Union in the defense of any Claim.

E.    Grace and Commercial Union will consult to the extent practicable about all decisions related to a material matter.    The Parties will make reasonable efforts to accommodate the litigation suggestions of each other before directing counsel to take any action.    The Parties will not dispute any decision made by the other, which is lawful and is reasonably made in their discretion.

F.    The Parties shall keep each other apprised in a timely manner of all significant developments in the defense of Commercial Union for any Claim.    Upon reasonable request Grace will supply Commercial Union with status reports.

G.    Any settlement or compromise made by Grace on behalf of Commercial Union shall provide that it is not an admission of liability by Commercial Union and is without precedent to Commercial Union.    Prior to entering into any settlement or compromise, Grace shall provide reasonable and timely disclosure to Commercial Union.    Commercial Union shall have such time as is practicable to review the proposed settlement or compromise and to

11

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000077

present its view to Grace. Pursuant to Section VII, Grace shall use best efforts to keep such settlement or compromise confidential.

H.   Commercial Union and Grace shall cooperate reasonably with each other to protect their respective interests with respect to Claims, and shall make all reasonable efforts to avoid taking positions in such litigation that are adverse to, or inconsistent with, their general business and corporate interests and positions.

I.   Commercial Union shall comply in a timely manner with Grace's requests for access to documentation or information pertaining to Policy defenses.

## VII.  <u>CONFIDENTIALITY OF AGREEMENT</u>

A.   This Agreement and all matters related to its existence, terms, negotiations, consideration, and performance, are strictly confidential. Grace and Commercial Union shall take all measures reasonably necessary to preserve the strict confidentiality of this Agreement, and all matters related to its existence, terms, negotiations, consideration, and performance, including but not limited to the following:

12

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000078

1.   Restricting access to only those persons and entities with a need for such information for some legitimate business purpose;

2.   Restricting duplicates, abstracts, and derivative works to only those necessary for some legitimate business purpose; and

3.   Employing all reasonable efforts to maintain strict confidentiality, including efforts commensurate with those employed for the protection of the Parties' own trade secrets, and other confidential business information.

B.   The Agreement, and matters related to its existence, terms, negotiations, consideration, and performance, may be revealed only under the following circumstances:

1.   Where a Party is or may be ordered to produce the Agreement, or matters related to its existence, terms, negotiation, consideration, and performance, as part of a judicial or other proceeding, the Party who is or may be compelled to disclose such information shall take all due measures at its own expense to oppose such disclosure. Furthermore, the Party who is or may be compelled to disclose such information shall notify the other Party in writing as soon as the possibility of such disclosure becomes evident (e.g., filing of motion to compel). Such notice shall include all relevant information available to

13

258380.2

the Party that may be compelled to disclose.

2. Any Party may describe and/or make reference to this Agreement to the extent that such disclosure is required to comply with any statute, rule or other requirement of any government or governmental agency or other authority. Without limiting the foregoing, the Parties agree that Grace may describe and/or make reference to this Agreement in a press release, an Annual Report on Form 10-K or any other report or filing that, on advice of counsel, Grace is required to make with the Securities and Exchange Commission ("SEC") pursuant to the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and in any financial statements and/or related notes included or incorporated by reference in any such report or filing; provided, however, that (1) Grace will not identify Commercial Union in any such press release; (2) Grace will not identify Commercial Union in any report or filing without notifying Commercial Union prior to the issuance of any filing or report, and shall take any comments rendered in response thereto into account prior to such issuance; (3) Grace agrees that a copy of this Agreement shall not be filed as an exhibit to any press release; (4) Grace agrees that a copy of the Agreement shall not be filed as an Exhibit to any report or filing unless Grace is required to do so by the SEC. If so required, Grace agrees (1) to consult with Commercial Union and to take into account their views

14

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000080

in connection with any objection by Grace to any such request by the SEC and (2) to seek confidential treatment by the SEC of such portions of the Agreement as Grace may deem appropriate in the circumstances. Nothing in this Section VII shall bar Commercial Union from making an independent application to the SEC to maintain the confidentiality of this Agreement.

3. The Agreement may be disclosed by Grace and Commercial Union to counsel, lenders, auditors, accountants, underwriters or reinsurers (including counsel for such entities) when necessary for a legitimate business purpose. Prior to such disclosure the person or entity to which disclosure shall be made shall agree in writing to be bound by the terms of Section VII of this Agreement.

C. Where a Party has produced this Agreement, and/or information related to its existence, terms, negotiations, consideration, or performance, as part of a judicial or other proceeding, the producing Party at its own expense shall seek a protective order or other document restricting the use of the materials to be produced, to the particular purpose of the litigation in, or other matter for, which it is produced. The producing Party shall take all steps necessary to bar the disclosure of the materials to anyone not involved in the litigation or matter.

15

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000081

D.    As part of any disclosure of the Agreement or matters related to its existence, terms, negotiations, consideration, and performance, the Party making the disclosure shall make all due effort to require the receiving entity to return all copies of the Agreement and all matters related to its existence, terms, negotiations, consideration and performance, when the use of such materials is at an end, or alternately, to certify in writing that such material has been destroyed.

## VIII.    SETTLEMENT NOT AN ADMISSION

A.    Grace acknowledges that Commercial Union disputes coverage under the Policies with respect to Claims.    Grace recognizes that Commercial Union's payment of the Settlement Amount is made in compromise of disputed coverage demands and is not, and cannot be construed as, an admission by Commercial Union that any defense, indemnity or other coverage or obligation to pay exists under any of the Policies, or that Commercial Union has any other obligation of any nature whatsoever (other than those arising under the Agreement) with respect to Claims.

B.    The Agreement and its negotiation and performance shall not be used in any manner by any person or entity in any future action or proceeding as evidence of the rights, duties or obligations of Grace or Commercial Union under the Policies.

16

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000082

IX.  APPLICATION OF AGREEMENT ONLY TO THE PARTIES

A.    This Agreement is intended to confer rights and benefits only upon Grace and Commercial Union, and not upon any other person or entity, and no person or entity other than Grace and Commercial Union shall have any enforceable rights under this Agreement.  Any right of action for breach of this Agreement is reserved to Grace and Commercial Union.

B.    This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions.  Accordingly, this Agreement does not reflect upon the Parties' views as to their rights and obligations with respect to the Claims, the Policies, or matters, persons or entities outside the scope of this Agreement.  This Agreement and its negotiation and performance shall not be used in any manner as evidence of the rights, duties, or obligations of Grace or Commercial Union with respect to the Claims, the Policies, or matters, persons or entities outside the scope of this Agreement.

X.   ASSISTANCE AND COOPERATION

A.    Grace and Commercial Union agree that they will execute and deliver to the other Party all instruments and do such further acts and things as the other Party may reasonably request in order

17

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000083

to effectuate the purposes of this Agreement.

B.    Should any person or entity not a party hereto challenge the validity of this Agreement, or any term thereof, Grace and Commercial Union shall provide to each other such cooperation and assistance as the other Party may reasonably request in order to resist such a challenge.

XI.    NOTICE REGARDING CORPORATE EXISTENCE

A.    Grace shall notify Commercial Union of any voluntary dissolution of Grace.    Such notice shall be given within thirty days after the adoption of any resolution or other action of the Board of Directors to dissolve the corporation, but in no circumstance shall such disclosure be required to be made prior to the first date on which Grace, in the opinion of counsel for Grace, is obligated to notify such governmental regulators or Grace stockholders, which ever first occurs.    Should Grace be subject to involuntary dissolution or receivership, Grace shall notify Commercial Union of such action no later than thirty days after formal service of process in such proceeding is served on Grace.

B.    Grace shall notify Commercial Union of any material change in the corporate form or ownership of Grace.    Such notice shall be given within thirty days after the adoption of any

18

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000084

resolution, or other action of the Board of Directors, changing such corporate form, but in no circumstance shall such disclosure be required to be made prior to the first date on which Grace, in the opinion of counsel for Grace, is obligated to so notify the relevant governmental regulators or Grace stockholders, which ever first occurs.

XII. <u>EXECUTION</u>

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deemed one and the same instrument. This Agreement consists of twenty six (26) typewritten pages, inclusive of signature pages.

XIII.<u>NOTICE</u>

Any statements, communications, or notices to be provided pursuant to this Agreement shall be sent to the attention of the persons indicated below:

For Grace:

(a)   W.R. Grace & Co. -- Conn.
      1750 Clintmoore Road
      Boca Raton, Florida 33487-2707
      (561) 362 - 2000 (Telephone)
      (561) 362 - 1883 (Facsimile)
      Attn:  Secretary

19

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000085

with a copy to: Director, Corporate Risk
Management

For Commercial Union:

(b)  Commercial Union Insurance Company
     100 Summer Street
     Boston, MA   02110
     (Street Address)

     P.O. Box 9545
     Boston, MA  02205-9545
     (Mailing Address)
     (617) 725-6000 (Telephone)
     (617) 725-6153 (Facsimile)
     Attn:  Mr. James J. McKay


Such addresses may be changed by providing notice pursuant to this
Section.  Notice of change of address is effective only upon
actual receipt.


## XIV.  PARTIAL INVALIDITY

If any provision of this Agreement, or the application of any
term or provision, is held to be illegal, invalid, or
unenforceable under present or future laws, such provision shall
be fully severable.  In such event: (1) the Agreement shall be
construed and enforced as if such illegal, invalid, or
unenforceable provision has never comprised a part of the
Agreement; (2) the remaining provisions of the Agreement shall
remain in full force and effect and shall not be affected by the
illegal, invalid, or unenforceable provision, or by its severance
from this Agreement, unless the effect of severance of such

20

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000086

provision shall conclusively make continued performance under this Agreement impossible; and (3) in lieu of such illegal, invalid, or unenforceable provision, there shall be added automatically as part of this Agreement a provision as similar in intent to such illegal, invalid, or unenforceable provision as may be possible and as may be legal, valid, and enforceable.

## XV. REMEDY FOR BREACH

If any Party to this Agreement contends that any other Party has materially breached the terms of the Agreement, such Party shall give the other Party to this Agreement notice thereof by certified mail. The Party contending that the Agreement has been materially breached shall give the other Party twenty (20) days from the date of the actual receipt of notice to cure the alleged breach, before taking any legal action. The Party to whom written notice of a breach has been given shall not take any legal action under this Agreement within that twenty (20) day period. However, the failure of a Party to object to one or more breaches or violations of this Agreement shall not constitute a waiver or limitation upon the right of such Party to object to any other breach or violation of this Agreement.

21

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000087

## XVI. ENTIRE AGREEMENT AND AMENDMENTS TO AGREEMENT

This Agreement is the complete and entire agreement of the Parties and may not be modified, changed, contradicted, added to, or altered in any way by any previous or concurrent written or oral agreements or any subsequent oral agreements. No amendment or variation of this Agreement shall be valid unless made in writing and signed by the Parties.

## XVII. NO CONSTRUCTION AGAINST EITHER PARTY

This Agreement was negotiated at arms-length with all Parties receiving advice from independent legal counsel. The Parties read this entire Agreement and know the contents hereof, that the terms hereof are contractual and not merely recitals, and acknowledge that they have signed this Agreement of their own free act. It is the intent of the Parties that no part of this Agreement be construed against any of the Parties because of the identity of the drafter or the fact that Commercial Union is an insurance company.

## XVIII. CHOICE OF LAW

This Agreement shall be construed and interpreted in accordance with, and be governed by, the laws of the State of New York, without regard to principles of conflicts of law.

22

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000088

## XIX.  REPRESENTATION AND WARRANTIES

A.   Grace represents that as of the date of execution of this Agreement, (a) it is not aware of any claim being made against the Policies by any entity formerly owned, controlled, related to, succeeding to Grace's interest, or affiliated with Grace, and whom Grace does not have the authority to bind to this Agreement, and (b) it is not aware of any claim that is going to be made or that is contemplated being made against the Policies after execution of this Agreement, by any entity formerly owned by, related to, succeeding to Grace's interest, or affiliated with Grace.  Grace acknowledges that if any entity formerly owned, controlled, related to, succeeding to Grace's interests, or affiliated with Grace makes a Claim under the Policies, Grace shall defend, indemnify and hold Commercial Union harmless pursuant to Section VI.

B.   No Party shall assign, transfer, convey or sell, or purport to assign, transfer, convey or sell to any person, persons, or entity, any cause of action, chose in action, or part thereof, arising out of or connected with the matters released herein, without first obtaining the written consent of the other Party; provided, however, that this sentence shall not prohibit any assignment by a Party by merger, consolidation, operation of

23

258380.2

OB-000089

law or other transaction that results in the succession of all or substantially all of such Party's assets.    Subject to the foregoing, this Agreement shall extend to and be binding upon the successors and assigns of the Parties.

C.    The Parties represent, warrant and agree that they (a) are the sole and lawful owners of all right, title, and interest in and to every Claim or matter released herein; (b) have not assigned or transferred or purported to or attempted to assign or transfer to any person or entity any claim or other matter released herein; and (c) have taken all necessary actions to duly approve the making and performance of the Agreement and that no further approval is necessary.

D.    The making and performance of the Agreement will not violate any provision of law, or of the respective articles of incorporation, charters, or by-laws of the Parties.

E.    The headings contained in the Agreement are for convenient reference only and shall not in any way alter the meaning or interpretation of the Agreement. The recitals set forth in the Agreement are fully incorporated into and form a part of the Agreement.

24

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000090

F.    Each of the Parties represents, warrants and certifies that the person signing the Agreement on its behalf is authorized to execute the Agreement, and that the Agreement constitutes a valid and binding obligation.

IN WITNESS WHEREOF, THE AGREEMENT HAS BEEN READ AND SIGNED IN DUPLICATE ORIGINALS BY THE DULY AUTHORIZED REPRESENTATIVES OF THE PARTIES:

W.R. GRACE & CO.

By: _____    Date: 10/7/98

Name (Print): Vice President & Treasurer

Title: Paul McMahon

Witness: Ellen W Walsh    Date: 10/7/98

SWORN to and SUBSCRIBED before me this 7th day of October , 1998.

Jody M. Crossman
Notary Public



258380.2

25

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000091

COMMERCIAL UNION INSURANCE COMPANY

By: _James J. McKay_          Date: _10/2/98_
    Mr. James J. McKay
    Environmental Claim Division

Witness: _____          Date: _10-2-98_

SWORN to and SUBSCRIBED
before me this 2nd day
of October, 1998.

_____
    Notary Public
My Commission Expires May 2, 2000

26

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000092



# SETTLEMENT AGREEMENT, RELEASE AND
# INDEMNIFICATION/HOLD HARMLESS AGREEMENT

This Settlement Agreement, Release and Indemnification/Hold Harmless Agreement is entered into this _6th_ day of _August_, 1992 by W. R. Grace & Co.-Conn., a Connecticut Corporation, formerly W. R. Grace & Co. ("Grace") (as defined in Section II., H. of this Agreement) and Unigard Security Insurance Company, formerly Unigard Mutual Insurance Company ("Unigard") (as defined in Section II., I. of this Agreement).

### I.    RECITALS

WHEREAS, Grace and Unigard entered into a contract of insurance, Policy No. 1-2517 with a policy period of June 30, 1974 to June 30, 1975 which has limits of liability of Ten Million Dollars ($10,000,000.00) in the aggregate for claims arising out of the "Products-Completed Operations Hazards," as those terms are defined under Policy No. 1-2517 ("the Unigard Policy") or any other policy whose form Unigard may be held to follow.

WHEREAS, numerous Asbestos-Related Claims (as defined in Section II.G. of this Agreement) have been made against Grace.

WHEREAS, in the following lawsuits, there are claims pending between Grace and a number of insurers, including Unigard, seeking declaratory relief and damages with respect to the alleged obligations of the insurers, including Unigard, to defend and indemnify Grace for Asbestos-Related Claims (as defined in Section II., G. of this Agreement) against Grace:

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000001

<u>Moore, ex rel. State of Mississippi v. The Flintkote Co., et al. v. Maryland Casualty Co., et al.</u>, No. 89-5138(2), filed in the Circuit Court of Jackson County Mississippi (the "Mississippi Action");

<u>Independent School District 197, et al. and W. R. Grace & Co.-Conn. v. Accident & Casualty Co. of Winterthur, et al.</u> No. 19-C4-88-007950, filed in the District Court of the County of Dakota, Minnesota (the "Minnesota Action");

<u>W. R. Grace & Co.-Conn. v. Admiral Insurance Co., et al.</u>, No. 91-048251, filed in the District Court of Harris County, Texas (the "Houston Action");

<u>Dayton Independent School District, et al. v. United States Mineral Products Co. and W. R. Grace & Co.-Conn. v. Admiral Insurance Co., et al.</u>, No. B-87-00507, filed in the United States District Court for the Eastern District of Texas, Beaumont (the "Beaumont Action");

<u>Maryland Casualty Company v. W. R. Grace & Co., et al.</u>, No. 88 Civ. 2613 (SWK), filed in the United States District Court for the Southern District of New York (the "New York Action");

<u>American Employers Insurance Company, et al. v. W.R. Grace & Co.-Conn., et al.</u>, No. 6241-92, filed in the Supreme Court of the State of New York, County of New York (the "New York State Court Action"); and

<u>W. R. Grace & Co.-Conn. v. Admiral Insurance Company, et al.</u>, No. BC 050432, filed in the Superior Court of the County of Los Angeles, California (the "California Action").

2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000002

These lawsuits shall be referred to collectively as "the insurance coverage litigation."

WHEREAS, Unigard denies that it has any obligation to defend or indemnify Grace in connection with any Asbestos-Related Claims.

WHEREAS, Grace and Unigard have incurred attorneys' fees and other expenses in connection with the insurance coverage litigation.

WHEREAS, Grace and Unigard anticipate that additional attorneys' fees and expenses will be incurred by each of them if they are required to pursue further and defend against the insurance coverage litigation, and Grace and Unigard desire to resolve amicably and discontinue the insurance coverage litigation with respect to the Unigard Policy and to avoid the costs and risks of such litigation by entering into this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and intending to be legally bound hereby, Grace and Unigard agree as follows:

II.  DEFINITIONS

A.  The definitions of the terms "Personal Injuries" and "Property Damage" shall be the same as those terms are defined in the Unigard Policy or any other policy whose form the Unigard Policy may be held to follow.

3

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000003

B.   "Asbestos-Related Products Personal Injury Claims" shall mean any and all claims for Personal Injuries arising from asbestos products manufactured, sold, handled or distributed by Grace or by others trading under its name or arising from products manufactured, sold, handled or distributed by Grace which allegedly contain asbestos or to which asbestos was allegedly added as an ingredient.

C.   "Asbestos-Related Products Property Damage Claims" shall mean any and all claims for Property Damage arising from asbestos products manufactured, sold, handled or distributed by Grace or by others trading under its name or arising from products manufactured, sold, handled or distributed by Grace which allegedly contain asbestos or to which asbestos was allegedly added as an ingredient.

D.   "Products Personal Injury Claims" shall mean claims for Personal Injuries that fall within the "Products-Completed Operations Hazards," as those terms are defined in the Unigard Policy or any other policy whose form the Unigard Policy may be held to follow.   Products Personal Injury Claims include, but are not limited to, Asbestos-Related Products Personal Injury Claims.

E.   "Products Property Damage Claims" shall mean claims for Property Damage that fall within the "Products-Completed Operations Hazards," as those terms are defined in the Unigard Policy or any other policy whose form the Unigard Policy may be held to follow.   Products Property Damage Claims include, but are not limited to, Asbestos-Related Products Property Damage Claims.

4

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000004

F.  "Products Claims" shall mean both Products Personal Injury Claims and Products Property Damage Claims as those terms are defined above.

G.  "Asbestos-Related Claims" shall mean both Asbestos-Related Products Personal Injury Claims and Asbestos-Related Products Property Damage Claims as those terms are defined above.

H.  "Grace" shall mean W.R. Grace & Co. -- Conn., its predecessors, successors, divisions, subdivisions, departments and subsidiary companies or corporations.

I.  "Unigard" shall mean Unigard Security Insurance Company, John Hancock Mutual Life Insurance Company, John Hancock Property & Casualty Holding Company, John Hancock Management Company, any entity owned or controlled by any of them, and the past and present directors, officers, employees, parents, subsidiaries, predecessors, and successors of each of the foregoing, together with the assigns of any rights or obligations of any of them under the Unigard Policy.


III.  PAYMENT BY UNIGARD IN COMPROMISE OF DISPUTED CLAIMS

Within twenty one days after the date of the execution of this Agreement, Unigard will pay to Grace the sum of Ten Million Dollars ($10,000,000.00), the full aggregate limits of liability under the Unigard Policy for claims arising out of the "Products-Completed Operations Hazards," as those terms are defined under the Unigard Policy or any other policy whose form

5

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000005

Unigard may be held to follow (the "Settlement Amount"). Grace will provide to Unigard any information that Unigard shall reasonably request relating to the Products Claims. Unigard shall not seek to recover from any of Grace's insurers any portion of the Settlement Amount other than any amounts owed to Unigard arising out of agreements to provide reinsurance to Unigard under the Unigard Policy.

IV.  RELEASE

In consideration of the payment by Unigard of the Settlement Amount and the mutual release of rights contained herein, Grace does hereby fully and forever release and discharge Unigard, its agents, reinsurers and attorneys from any obligation under the Unigard Policy for any and all past, present, or future claims, demands, obligations, suits, actions, causes of action and rights whatsoever for indemnity, defense and/or damages (including compensatory, punitive, exemplary, extracontractual or statutory) or other payments of any nature, which Grace may have or otherwise be required to pay, or which may hereafter accrue, (a) on account of, in any way growing out of, or in any way related to Products Claims under the Unigard Policy, whether known or unknown as of the date of execution of this Agreement; and (b) for any damages (including compensatory, punitive, exemplary, extracontractual or statutory) based upon any allegations of bad faith, unfair claim practice, unfair trade practice or other act or failure to act arising out of Unigard's

6

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

role as an insurer under the Unigard Policy with respect to any Products Claims whatsoever.

Grace's release of Unigard shall in no event inure to the benefit of any other insurance company that, at any time after the date this Agreement is executed, is merged into Unigard, or in which Unigard, at any time after the date this Agreement is executed, acquires a controlling interest. This release shall not prevent Grace from asserting against Unigard, its agents, reinsurers and attorneys any claim which Grace may have, or which may hereafter accrue, (a) on account of, in any way growing out of, or in any way related to Products Claims, whether known or unknown as of the date of this Agreement, under any insurance policy issued by Unigard other than the Unigard Policy; and (b) for any damages (including compensatory, punitive, exemplary, extracontractual or statutory) based upon any allegations of bad faith, unfair claim practice, unfair trade practice or other act or failure to act arising out of Unigard's role as an insurer under any insurance policy issued by Unigard other than the Unigard Policy with respect to any Products Claims whatsoever.

V.   INDEMNIFICATION/HOLD HARMLESS AGREEMENT

A.   In further consideration of the Settlement Amount, Grace agrees to indemnify, to hold Unigard harmless from and to reimburse Unigard for the full amount of any judgment, award, payment, settlement, suit or claim against Unigard by any other insurance carrier seeking contribution under the Unigard Policy

7

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000007

for Product Claims, or by any other person or entity claiming any right, assignment of rights, rights of subrogation, title or interest in or under the Unigard Policy for Product Claims, including without limitation claims for damages (including compensatory, punitive, exemplary, extracontractual or statutory) caused or allegedly caused in whole or in part by the conduct of Unigard under the Unigard Policy with respect to such Product Claims; but provided, however, that in no event shall Grace be obligated to indemnify, to hold Unigard harmless from or to reimburse Unigard for (i) any claim arising out of reinsurance provided to Unigard under the Unigard Policy, or (ii) the amount of any payment or settlement entered into by Unigard without the prior consent of Grace, which consent shall not be unreasonably withheld.

B.   Grace also agrees to indemnify Unigard for all costs and reasonable attorneys' fees associated with the claims for which Grace is obligated to indemnify Unigard as set forth in paragraph A of this Article, and which are incurred after the execution of this Agreement, but excluding any costs associated with the enforcement of this Agreement.  Unigard immediately shall advise Grace of the pendency of any suit or claim for which Grace is obligated to indemnify Unigard as set forth in Article V of this Agreement and keep Grace informed of any developments with respect to such claims or suits, including but not limited to any discovery requests and any motions.

C.   Unigard shall defend diligently and in good faith

8

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000008

any claim for which Grace is obligated to indemnify Unigard as set forth in paragraph A of this Article, utilizing the services of Taylor, Anderson & Travers or, at Unigard's option, other counsel approved by Grace.

D.   Unigard shall not incur costs or attorneys' fees without the prior approval of Grace, which approval shall not be unreasonably withheld.

E.   Grace has the right, at its own expense, to participate in the defense of Unigard.

F.   In the event that Unigard, while defending any claim described in paragraph A of this Article, incurs costs or attorneys' fees relating both to the Unigard Policy and other insurance policies issued by Unigard, Grace shall only be required to indemnify Unigard for that portion of such costs relating to the Unigard Policy.  The parties agree to use their best efforts to reach agreement on allocation of such costs.  Any dispute between the parties over the allocation of such costs which cannot be resolved by agreement shall be resolved through arbitration.


VI.   NO ADMISSIONS BY THE PARTIES

A.   The payment by Unigard of the Settlement Amount and its receipt by Grace is for the compromise of disputed claims, and neither such payment nor its receipt shall be construed as an admission by Unigard or Grace that any coverage or obligation to pay exists or does not exist under any Unigard

9

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000009

policy for defense or indemnity of Grace for claims of any nature. By entering into this Agreement, Unigard does not admit that it has any liability or obligation to Grace or to any other person.

B.    Further, this Agreement is not intended to be, nor shall it be construed as, an admission with respect to policy interpretation or as an admission by any party regarding any duties, rights or obligations arising under the Unigard Policy or any other policy of insurance issued by Unigard to Grace or anyone else. Nothing in this Agreement shall be deemed to constitute a release, compromise, waiver or an estoppel of any right of Grace or Unigard to assert any claim or defense pursuant to any policy of insurance issued by Unigard or any other insurer.

VII.  DISMISSAL WITH PREJUDICE OF CERTAIN ACTIONS, CLAIMS, AND CAUSES OF ACTION

A.    Upon the execution of this Agreement by the parties, Grace will dismiss with prejudice the claims and causes of action Grace has asserted against Unigard relating to the Unigard Policy in the Mississippi Action, the Minnesota Action, the Houston Action, the Beaumont Action, the New York Action and the California Action. Further, Grace will make all reasonable efforts to cause the remaining plaintiffs in the Minnesota Action to dismiss with prejudice the claims and causes of action they have asserted against Unigard relating to the Unigard Policy in the Minnesota Action. Further, Grace will dismiss with prejudice

10

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

its Sixth Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing against Unigard under the Unigard Policy contained in the First Amended Complaint for Declaratory Relief, Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing in the California Action.

B.   Unigard will dismiss with prejudice the claims and causes of action Unigard has asserted against Grace relating to the Unigard Policy in the New York State Court Action.

C.   Each party shall bear its own past costs and attorneys' fees incurred in connection with the insurance coverage litigation and any such costs and fees incurred to negotiate or implement the terms of this Agreement.

D.   Grace will cooperate with Unigard to minimize and prevent the possibility of the prosecution of cross-claims or other actions against Unigard by any other party.

VIII.   NO CONSTRUCTION AGAINST EITHER PARTY

The wording of this Agreement was reviewed and accepted by legal counsel for Grace and Unigard prior to its being signed by them.   Any ambiguities in the language of this Agreement shall not be construed against either party on the grounds that the party was the alleged drafter of the language in the event of any dispute arising between them in connection with this Agreement.

11

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000011

## IX.   INADMISSIBILITY OF AGREEMENT

Any evidence of the existence, terms or negotiation of this Agreement shall be inadmissible in any litigation, action or other proceeding, provided, however, that such evidence may be offered in an action seeking solely to enforce the terms of this Agreement or in connection with any litigation, action or other proceeding, between Unigard and any of its reinsurers or in connection with any litigation, action or other proceeding to establish exhaustion of the Unigard Policy.   In any litigation, action or other proceeding where exhaustion of the Unigard Policy is at issue, Unigard shall, subject to the provisions of Article VI of this Agreement, reasonably assist Grace in establishing that the Unigard Policy's limits of liability applicable to Products Claims properly have been exhausted.   This Agreement has been entered into in reliance upon the provisions of Rule 408 of the Federal Rules of Evidence and similar state law provisions which preclude the introduction of evidence regarding settlement negotiations or agreements.

## X.   APPLICATION OF AGREEMENT ONLY TO THE PARTIES

This Agreement is intended to confer rights and benefits only on the parties hereto and only with respect to the terms and conditions set forth herein.

12

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000012

## XI.   ENTIRE AGREEMENT/AMENDMENTS TO AGREEMENT

This Agreement is the complete and entire agreement of the parties and may not be modified, changed, contradicted, added to, or altered in any way by any previous written or oral agreements or any subsequent oral agreements.  No amendments or variations of the terms of the Agreement shall be valid unless made in writing and signed by both parties.

## XII.   CONFIDENTIALITY

The terms and conditions of this Agreement shall remain confidential and shall not be disclosed to any person or entity without the prior written consent of both parties, except: as required by contract or by authority of a court, administrative tribunal, arbitration panel, regulatory agency; in the normal course of business for such purposes as audits and accounting; or, where exhaustion of the Unigard Policy's limits of liability applicable to Products Claims are at issue, to Grace's other insurers, to underlying claimants and to any other person or entity.  Should a court order the disclosure of the terms of this Agreement to any other person or entity, the parties shall use their reasonable efforts to maintain its terms under seal and/or protective order.

13

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000013

XIII.  REPRESENTATION AND WARRANTIES

Each party represents and warrants to the other:

A.  that it is fully authorized to enter into this
    Agreement;

B.  that it is a corporation, duly organized and
    validly existing in good standing under the laws
    of one of the states of the United States of
    America;

C.  that it has taken all necessary corporate and
    internal legal actions to duly approve the making
    and performance of this Agreement and that no
    further governmental, regulatory, corporate or
    other internal approval is necessary;

D.  that the making and performance of this Agreement
    will not violate any provision of law or of its
    articles of incorporation, charter or by-laws;

E.  that it has read this entire Agreement and knows
    the contents hereof, that the terms hereof are
    contractual and not merely recitals, and that it
    has signed this Agreement of its own free act;

F.  that in making this Agreement, it
    has obtained the advice of legal counsel; and

G.  that there are no pending agreements, transactions
    or negotiations to which it is a party that would
    render this Agreement or any part thereof void,
    voidable or unenforceable.

14

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000014

XIV. <u>NOTICE</u>

All notices or other communications which any party desires or is required to give shall be given in writing and shall be deemed to have been given if sent by certified mail to the party at the address noted below or such other address as a party may designate in writing from time to time:

```
                    W. R. Grace & Co. - Conn.
                    Attn: Secretary
                    W. R. Grace & Co.
                    One Town Center Road
                    Boca Raton, Florida  33486
```

with a copy to:

```
                    Director of Corporate Risk Management
                    W. R. Grace & Co.
                    One Town Center Road
                    Boca Raton, Florida  33486
```

```
                    Unigard Security Insurance Company
                    Attn:  General Counsel
                    P.O. Box 90701
                    15805 N.E. 24th Street
                    Bellevue, Washington  98008
```

                              and

```
                    John Hancock Property and Casualty Company
                    Attn: General Counsel
                    P.O. Box 854
                    3 Copley Place
                    Boston, Massachusetts  02117
```

15

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000015

with a copy to:

        Allan E. Taylor, Esq.
        Taylor, Anderson & Travers
        75 Federal Street
        Boston, Massachusetts  02110

**W. R. GRACE & CO.-CONN.**

Date: _8/6/92_       By _____

                     Its _VICE PRESIDENT_

**UNIGARD SECURITY INSURANCE COMPANY**

Date: _8/3/92_       By _____

                     Its _Assistant Secretary_

16

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000016



## SETTLEMENT AGREEMENT, RELEASE AND
## INDEMNIFICATION/HOLD HARMLESS AGREEMENT

This Settlement Agreement, Release and Indemnification/Hold Harmless Agreement is entered into this _____ day of _____, 1995 by W. R. Grace & Co.-Conn., a Connecticut corporation, and W. R. Grace & Co. (collectively "Grace") (as defined in Article II., D. of this Agreement) and Unigard Security Insurance Company, formerly Unigard Mutual Insurance Company ("Unigard") (as defined in Article II., E. of this Agreement).

I.    RECITALS

WHEREAS, Grace and Unigard entered into a contract of insurance, Policy No. 1-0589 with a policy period of February 27, 1973 to June 30, 1975 ("the Unigard Policy"), which has annual limits of liability of Twenty Million Dollars ($20,000,000.00) in the aggregate for claims arising out of "Products" and/or "Products-Completed Operations," as those terms are defined and/or used under the Unigard Policy or any other policy whose form Unigard may be held to follow.

WHEREAS, numerous Asbestos-Related Claims (as defined in Article II., C. of this Agreement) have been made against Grace.

WHEREAS, in the following lawsuits, there are claims pending between Grace and a number of insurers, including Unigard, seeking declaratory relief and damages with respect to

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000017

the alleged obligations of the insurers, including Unigard, to defend and indemnify Grace for Asbestos-Related Claims (as defined in Article II., C. of this Agreement) against Grace:

W.R. Grace & Co.-Conn. v. Admiral Insurance Company, et al., No. BC 050432, filed in the Superior Court of the County of Los Angeles, California (the "California Action");

The County of Hennepin, et al. (Court File No. CT 89-019829), Sons of Norway International (Court File No. CT 90-002326), Metropolitan Airports Commission and Northwest Airlines (Court File No. 89-015537), and Minnesota/California Partners, a California General Partnership (Court File No. 90-7649), and in each case W.R. Grace & Co.-Conn. v. Central National Insurance Co., et al., filed in the District Court of the County of Hennepin, Minnesota, (the "Hennepin County Actions");

Ecolab Inc., et al. and W.R. Grace & Co.-Conn. v. Central National Insurance Co., No. 07-90-8450, filed in the District Court of the County of Ramsey, Minnesota (the "Ecolab Action");

Dayton Independent School District, et al. v. United States Mineral Products Co. and W. R. Grace & Co.-Conn. v. Admiral Insurance Co., et al., No. B-87-00507-CA, filed in the United States District Court for the Eastern District of Texas, Beaumont Division (the "Beaumont Action");

-2-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000018

Maryland Casualty Company v. W. R. Grace & Co., et al., No. 88 Civ. 2613 (SWK), filed in the United States District Court for the Southern District of New York (the "New York Action"); and

American Employers Insurance Company, et al. v. W.R. Grace & Co.-Conn., et al., No. 6241-92, filed in the Supreme Court of the State of New York, County of New York (the "New York State Court Action").

These lawsuits shall be referred to collectively as "the insurance coverage litigation."

WHEREAS, Unigard denies that it has any obligation to defend or indemnify Grace in connection with any Asbestos-Related Claims.

WHEREAS, Grace and Unigard disagree concerning the limits of liability under the Unigard Policy for the period from February 27, 1973 to June 30, 1973.

WHEREAS, Grace and Unigard have incurred attorneys' fees and other expenses in connection with the insurance coverage litigation.

WHEREAS, Grace and Unigard anticipate that additional attorneys' fees and expenses will be incurred by each of them if they are required to pursue further and defend against the insurance coverage litigation, and Grace and Unigard desire to resolve amicably their disputes and discontinue the insurance

-3-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

coverage litigation with respect to the Unigard Policy and to avoid the costs and risks of such litigation by entering into this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and intending to be legally bound hereby, Grace and Unigard agree as follows:

II.   DEFINITIONS

A.   The definitions of the terms "Personal Injuries" and "Property Damage" shall be the same as those terms are defined in the Unigard Policy or any other policy whose form the Unigard Policy may be held to follow.

B.   "Products Claims" shall mean claims, including, but not limited to, claims for Personal Injury or Property Damage, that fall within the Aggregate "Product" Limits and/or the Aggregate "Product-Completed Operations" Limits as those terms are defined and/or used in the Unigard Policy or any policy whose form the Unigard Policy is held to follow.

C.   "Asbestos-Related Claims" shall mean any and all claims, causes of action or suits asserted by any person, entity or governmental authority against Grace, whether in litigation or not, which seek to impose upon Grace legal liability for damages, or which seek any other relief from Grace, because or on account of or arising in any way from the manufacture, sale, handling, distribution, installation, presence, disposal, removal, replacement, encapsulation or other remediation or abatement of,

-4-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

or testing or monitoring or inspection for, asbestos-containing products or materials in or from any building or other structure, including without limitation (1) alleged property damage or other harm, allegedly caused by or on account of asbestos or asbestos fiber, or (2) alleged bodily injury, personal injury, sickness, disease, shock, fright, mental anguish and injury, increased risk of harm, and/or death or other harm, allegedly caused by or on account of asbestos or asbestos fiber, or (3) any combination thereof.

D.  "Grace" shall mean W.R. Grace & Co.-Conn., and/or W.R. Grace & Co. and their respective predecessors, successors, divisions, subdivisions, departments and subsidiary companies or corporations.

E.  "Unigard" shall mean Unigard Security Insurance Company, John Hancock Mutual Life Insurance Company, John Hancock Property & Casualty Holding Company, John Hancock Management Company, any entity owned or controlled by any of them, and the past and present directors, officers, employees, parents, subsidiaries, predecessors, and successors of each of the foregoing, together with the assigns of any rights or obligations of any of them under the Unigard Policy.

III.  <u>PAYMENT BY UNIGARD IN COMPROMISE OF DISPUTED CLAIMS</u>

Within twenty one days after the date of the execution of this Agreement, Unigard will pay to Grace the sum of Thirty-Two Million Five Hundred Thousand Dollars ($32,500,000.00), for

-5-

**CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER**

claims arising out of "Products" and/or "Products-Completed Operations," as those terms are defined under the Unigard Policy or any other policy whose form Unigard may be held to follow, for all Products Claims and for all Asbestos-Related Claims (the "Settlement Amount").  Grace will provide to Unigard any information within Grace's possession or control that Unigard shall reasonably request relating to any Products Claims or any Asbestos-Related Claims.  Unigard shall not seek to recover from any of Grace's insurers any portion of the Settlement Amount other than any amounts owed to Unigard arising out of agreements to provide reinsurance to Unigard under the Unigard Policy.

IV.   RELEASE

In consideration of the payment by Unigard of the Settlement Amount and the mutual release of rights contained herein, Grace does hereby fully and forever release and discharge Unigard, its agents, reinsurers and attorneys from any obligation under the Unigard Policy for any and all past, present, or future claims, demands, obligations, suits, actions, causes of action and rights whatsoever for indemnity, defense and/or damages (including compensatory, punitive, exemplary, extracontractual or statutory) or other payments of any nature, which Grace may have or otherwise be required to pay, or which may hereafter accrue, (a) on account of, in any way growing out of, or in any way related to any Products Claims and/or any Asbestos-Related Claims under the Unigard Policy, whether known or unknown as of the date

-6-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

of execution of this Agreement; and (b) for any damages
(including compensatory, punitive, exemplary, extracontractual or
statutory) based upon any allegations of bad faith, unfair claim
practice, unfair trade practice or other act or failure to act
arising out of Unigard's role as an insurer under the Unigard
Policy with respect to any Products Claims and/or any Asbestos-
Related Claims whatsoever.

Grace's release of Unigard shall in no event inure to
the benefit of any other insurance company that, at any time
after the date this Agreement is executed, is merged into
Unigard, or in which Unigard, at any time after the date this
Agreement is executed, acquires a controlling interest.

V.   INDEMNIFICATION/HOLD HARMLESS AGREEMENT

A.   In further consideration of the Settlement Amount,
Grace agrees to indemnify, to hold Unigard harmless from and to
reimburse Unigard for the full amount of any judgment, award,
payment, settlement, suit or claim against Unigard by any other
insurance carrier seeking contribution under the Unigard Policy
for Product Claims or Asbestos-Related Claims, or by any other
person or entity claiming any right, assignment of rights, rights
of subrogation, title or interest in or under the Unigard Policy
for Product Claims or Asbestos-Related Claims, including without
limitation claims for damages (including compensatory, punitive,
exemplary, extracontractual or statutory) caused or allegedly
caused in whole or in part by the negligence, bad faith,

-7-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

statutory violation, breach of contract, breach of duty or other conduct of Unigard under the Unigard Policy with respect to such Product Claims or Asbestos-Related Claims; but provided, however, that in no event shall Grace be obligated to indemnify, to hold Unigard harmless from or to reimburse Unigard for (i) any claim arising out of reinsurance provided to Unigard under the Unigard Policy, or (ii) the amount of any payment or settlement entered into by Unigard without the prior consent of Grace, which consent shall not be unreasonably withheld.

B.   Grace also agrees to indemnify Unigard for all costs and reasonable attorneys' fees associated with the claims for which Grace is obligated to indemnify Unigard as set forth in paragraph A of this Article, and which are incurred after the execution of this Agreement, but excluding any costs associated with the enforcement of this Agreement. Unigard immediately shall advise Grace of the pendency of any suit or claim for which Grace is obligated to indemnify Unigard as set forth in Article V of this Agreement and keep Grace informed of any developments with respect to such claims or suits, including but not limited to any discovery requests and any motions.

C.   Unigard shall defend diligently and in good faith any claim for which Grace is obligated to indemnify Unigard as set forth in paragraph A of this Article, utilizing the services of Taylor, Anderson & Travers or, at Unigard's option, other counsel approved by Grace.

-8-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000024

D. Unigard shall not incur costs or attorneys' fees without the prior approval of Grace, which approval shall not be unreasonably withheld.

E. Grace has the right, at its own expense, to participate in the defense of Unigard.

## VI. NO ADMISSIONS BY THE PARTIES

A. The payment by Unigard of the Settlement Amount and its receipt by Grace is for the compromise of disputed claims, and neither such payment nor its receipt shall be construed as an admission by Unigard or Grace that any coverage or obligation to pay exists or does not exist under any Unigard policy for defense or indemnity of Grace for claims of any nature. By entering into this Agreement, Unigard does not admit that it has any liability or obligation to Grace or to any other person.

B. Further, this Agreement is not intended to be, nor shall it be construed as, an admission with respect to policy interpretation or as an admission by any party regarding any duties, rights or obligations arising under the Unigard Policy or any other policy of insurance issued by Unigard to Grace or anyone else. Nothing in this Agreement shall be deemed to constitute a release, compromise, waiver or an estoppel of any right of Grace or Unigard to assert any claim or defense pursuant to any policy of insurance issued by Unigard or any other insurer, except as specifically provided in this Agreement.

-9-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000025

VII. DISMISSAL WITH PREJUDICE OF CERTAIN ACTIONS,
     CLAIMS, AND CAUSES OF ACTION

A.    Upon the execution of this Agreement by the
parties and the payment by Unigard as set forth in Article III of
this Agreement, Grace will dismiss with prejudice the claims and
causes of action Grace has asserted against Unigard relating to
the Unigard Policy in the Hennepin County Actions, The Ecolab
Action, the Beaumont Action, and the New York Action.  Further,
Grace will make all reasonable efforts to cause the remaining
third-party plaintiffs in the Beaumont Action and the remaining
plaintiffs in the Hennepin County Actions and the Ecolab Action
to dismiss with prejudice the claims and causes of action they
have asserted against Unigard relating to the Unigard Policy in
the Beaumont Action, the Hennepin County Actions and the Ecolab
Action.

B.    Unigard and Grace agree that the Dismissal Without
Prejudice of Unigard by Grace entered by the Court on April 6,
1994 in the California Action shall have the same force and
effect as a Dismissal with Prejudice of Unigard by Grace entered
by the Court in the California Action.  Further, Grace will not
refile the California Action against Unigard.

C.    Unigard will dismiss with prejudice the claims and
causes of action Unigard has asserted against Grace relating to
the Unigard Policy in the New York State Court Action.

D.    Each party shall bear its own past costs and
attorneys' fees incurred in connection with the insurance

-10-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000026

coverage litigation and any such costs and fees incurred to negotiate or implement the terms of this Agreement.

E.    Grace will cooperate with Unigard to minimize and prevent the possibility of the prosecution of cross-claims or other actions against Unigard by any other party.


VIII.    <u>NO CONSTRUCTION AGAINST EITHER PARTY</u>

The wording of this Agreement was reviewed and accepted by legal counsel for Grace and Unigard prior to its being signed by them.    Any ambiguities in the language of this Agreement shall not be construed against either party on the grounds that the party was the alleged drafter of the language in the event of any dispute arising between them in connection with this Agreement.


IX.    <u>INADMISSIBILITY OF AGREEMENT</u>

Any evidence of the existence, terms or negotiation of this Agreement shall be inadmissible in any litigation, action or other proceeding, provided, however, that such evidence may be offered in an action seeking solely to enforce the terms of this Agreement or in connection with any litigation, action or other proceeding, between Unigard and any of its reinsurers.    This Agreement has been entered into in reliance upon the provisions of Rule 408 of the Federal Rules of Evidence and similar state law provisions which preclude the introduction of evidence regarding settlement negotiations or agreements.

-11-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

X.    APPLICATION OF AGREEMENT ONLY TO THE PARTIES

This Agreement is intended to confer rights and benefits only on the parties hereto and only with respect to the terms and conditions set forth herein.

XI.    ENTIRE AGREEMENT/AMENDMENTS TO AGREEMENT

This Agreement is the complete and entire agreement of the parties and may not be modified, changed, contradicted, added to, or altered in any way by any previous written or oral agreements or any subsequent oral agreements.  No amendments or variations of the terms of this Agreement shall be valid unless made in writing and signed by both parties.

XII.    CONFIDENTIALITY

The terms and conditions of this Agreement shall remain confidential and shall not be disclosed to any person or entity without the prior written consent of both parties, except: as required by contract or by authority of a court, administrative tribunal, arbitration panel, or regulatory agency, including, but not limited to, the United States Securities and Exchange Commission; other insurers of Grace; reinsurers of Unigard; in the normal course of business for such purposes as audits and accounting; or to the extent required to defend against disputes, claims or actions described in Articles III, IV and V of this Agreement.  Should a court order the disclosure of the terms of this Agreement to any other person or entity, the parties shall

-12-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

use their reasonable efforts to maintain its terms under seal
and/or protective order.

XIII.  REPRESENTATION AND WARRANTIES

Each party represents and warrants to the other:

A.   that it is fully authorized to enter into this
     Agreement;

B.   that it is a corporation, duly organized and
     validly existing in good standing under the laws
     of one of the states of the United States of
     America;

C.   that it has taken all necessary corporate and
     internal legal actions to duly approve the making
     and performance of this Agreement and that no
     further governmental, regulatory, corporate or
     other internal approval is necessary;

D.   that the making and performance of this Agreement
     will not violate any provision of law or of its
     articles of incorporation, charter or by-laws;

E.   that it has read this entire Agreement and knows
     the contents hereof, that the terms hereof are
     contractual and not merely recitals, and that it
     has signed this Agreement of its own free_act;

F.   that in making this Agreement, it has obtained the
     advice of legal counsel; and

-13-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000029

G.    that there are no pending agreements,

transactions or negotiations to which it is a

party that would render this Agreement or any part

thereof void, voidable or unenforceable.

XIV. <u>NOTICE</u>

All notices or other communications which any party

desires or is required to give shall be given in writing and

shall be deemed to have been given if sent by certified mail to

the party at the address noted below or such other address as a

party may designate in writing from time to time:

If to Grace:

W. R. Grace & Co.
One Town Center Road
Boca Raton, Florida  33486
Attn: Secretary

with a copy to:

Director of Corporate Risk Management
W. R. Grace & Co.
One Town Center Road
Boca Raton, Florida  33486

If to Unigard:

Michael Studley, Esq.
General Counsel
Unigard Security Insurance Company
c/o John Hancock Property and Casualty Company
P.O. Box 854
200 Clarendon Street, T-55
Boston, Massachusetts  02117 .

-14-

**CONFIDENTIAL SUBJECT TO MARCH**
**2009 PROTECTIVE ORDER**

and

John Hancock Property and Casualty Company
Attn: General Counsel
P.O. Box 854
200 Clarendon Street, T-29
Boston, Massachusetts  02117

with a copy to:

Allan E. Taylor, Esq.
Taylor, Anderson & Travers
75 Federal Street
Boston, Massachusetts  02110


W. R. GRACE & CO.-CONN.

Date: _____     By _____

                                Its _____


W. R. GRACE & CO.

Date: _5/15/95_____     By _____

                                Its _____


UNIGARD SECURITY INSURANCE COMPANY

Date: _12 MAY 1995_____     By _____

                                Its GENERAL COUNSEL + CORPORATE SECRETARY


-15-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER



Δ π EXHIBIT 20
Deponent *Posner*
Date *5-6-27* Rptr. *LL*
WWW.DEPOBOOK.COM

# SETTLEMENT AGREEMENT, RELEASE & INDEMNIFICATION/HOLD HARMLESS AGREEMENT

### Between

## W. R. GRACE & CO.

### and

## UNIGARD SECURITY INSURANCE COMPANY

### July 11, 1996

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

## SETTLEMENT AGREEMENT, RELEASE AND

## INDEMNIFICATION/HOLD HARMLESS AGREEMENT

This Settlement Agreement, Release and Indemnification/Hold Harmless Agreement is entered into this 11ᵗʰ day of July, 1996 by W. R. Grace & Co.-Conn., a Connecticut corporation, and W. R. Grace & Co. (collectively "Grace") (as defined in Article II., A. of this Agreement) and Unigard Security Insurance, formerly Unigard Mutual Insurance Company ("Unigard") (as defined in Article II., B. of this Agreement).

I.    RECITALS

WHEREAS, Unigard issued to Grace two policies of insurance, Policy No. 1-2517 with a policy period of June 30, 1974 to June 30, 1975 and Policy No. 1-0589 with a policy period of February 27, 1973 to June 30, 1975 (collectively the "Unigard Policies").

WHEREAS, Grace has asserted that Unigard is responsible under the Unigard Policies to defend and indemnify Grace as a result of liability, or potential future liability, of Grace arising out of Environmental Claims (as defined in Article II.,C. of this Agreement) asserted, or which may in the future be asserted, in connection with a manufacturing facility owned by Hatco Corporation and located in Fords, New Jersey (the "Hatco Site"); and

WHEREAS, there is a dispute between Grace and Unigard with respect to Unigard's obligations under the Unigard Policies to defend and/or indemnify Grace with respect to such claims, which

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000033

is the subject of certain pending third-party litigation brought by Grace against Unigard entitled <u>Hatco, Inc. v. W. R. Grace & Co.-Conn. v. Allstate Insurance Company, et. al.</u>, United States District Court for the District of New Jersey, Civil Action No. 89-1031 (AMW) (the "Pending Litigation"); and

WHEREAS, Unigard has denied that it has any such obligation to Grace, and has defended the Pending Litigation against it; and

WHEREAS, the parties believe that it is in their mutual interest to reach an amicable resolution with respect to all Environmental Claims arising, or which may in the future arise, out of the Hatco Site and the issues raised in the Pending Litigation without admission or adjudication of any issue of fact or law, and to resolve all past, present or future disputes relating to Unigard's obligations to Grace under the Unigard Policies with respect to Environmental Claims arising out of the Hatco Site;

NOW, THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration, Grace and Unigard hereby agree as follows:

II.   <u>DEFINITIONS</u>

A.    "Grace" shall mean W. R. Grace & Co.-Conn., and/or W. R. Grace & Co. and their respective predecessors, successors, and subsidiary companies or corporations.

B.    "Unigard" shall mean Unigard Security Insurance Company, John Hancock Mutual Life Insurance Company, John Hancock

-2-

**CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER**

SEA-000034

Property & Casualty Holding Company, John Hancock Management Company, any entity owned or controlled by any of them, and the past and present directors, officers, employees, parents, subsidiaries, predecessors, and successors of each of the foregoing, together with the assigns of any rights or obligations of any of them under the Unigard Policies.

C. "Environmental Claims" shall mean any past, present and/or future claim, action, suit, proceeding or notice of liability, whether made at law or equity and whether sounding in contract, tort or any other common law or statutory cause of action made against Grace by any Federal, State, local or other governmental agency or Hatco Corporation, its successors or assignees for environmental liabilities involving alleged, actual, threatened or potential pollution, contamination or other injurious environmental condition, or injury to, destruction of or loss of natural resources, and including but not limited to any property damage, natural resource damage, cleanup or remediation, but shall not include claims for (1) personal injury (The term "personal injury" shall not include claims for wrongful entry or eviction, nuisance or trespass, or invasion of the right of privacy or occupancy arising out of alleged, actual, threatened or potential pollution, contamination or other injurious environmental condition.), or (2) claims for property damage, natural resource damage, clean-up or remediation brought by any non-governmental party, except Hatco Corporation, its successors or assignees.

-3-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000035

III. <u>PAYMENT BY UNIGARD IN COMPROMISE OF DISPUTED CLAIMS</u>

In full and final settlement of all Environmental Claims that Grace has or may have, now or in the future, known or unknown, against Unigard under the Unigard policies arising out of the Hatco Site, Unigard will pay to Grace within 30 days after execution of this Agreement by both parties the total sum of Two Million Dollars ($2,000,000) (the "Settlement Amount").

IV. <u>DISMISSAL WITH PREJUDICE OF PENDING LITIGATION</u>

Upon receipt of the payment of the Settlement Amount, Grace shall discontinue with prejudice its prosecution of its claims against Unigard in the Pending Litigation. Grace will use reasonable efforts to minimize the possibility of any claims or actions against Unigard by any insurance company from which Grace also seeks coverage under any policies issued by any such insurance companies for Environmental Claims arising out of the Hatco Site. In particular, if Grace settles with any other insurance company with respect to any such Environmental Claims arising out of the Hatco Site, Grace will request a release from each such insurer of any claim it may have against Unigard.

Each party shall bear its own past costs and attorneys' fees incurred in connection with the Pending Litigation and any such costs and fees incurred to negotiate or implement the terms of this Agreement.

-4-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000036

## V.    RELEASE

In further consideration of the payment of the
Settlement Amount by Unigard and the mutual release of rights
contained herein, Grace does hereby fully and forever release and
discharge Unigard, its agents, reinsurers and attorneys from any
obligation arising under the Unigard policies for any and all
past, present, or future claims, demands, obligations, suits,
actions, causes of action and rights whatsoever for indemnity,
defense and/or damages or other payments of any nature, which
Grace may have paid, may agree to pay, or otherwise may be
required to pay, or which may hereafter accrue, on account of or
in any way related to Environmental Claims arising out of the
Hatco Site, whether known or unknown as of the date of execution
of this Agreement; and for any damages (including compensatory,
punitive, exemplary, extracontractual or statutory) based upon
any allegations of bad faith, unfair claim practice, unfair trade
practice or other act or failure to act arising out of Unigard's
role as an insurer under the Unigard policies with respect to any
Environmental Claims arising out of the Hatco Site.

Grace's release of Unigard shall in no event inure to the
benefit of any other insurance company that, at any time after
the date of this Agreement is executed, is merged into Unigard,
or in which Unigard, at any time after the date this Agreement is
executed, acquires a controlling interest.

-5-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000037

## VI. INDEMNIFICATION/HOLD HARMLESS AGREEMENT

A. From and after the time when Unigard has forwarded the payment of the Settlement Amount to Grace, Grace shall indemnify and hold Unigard harmless from and against any and all liability, excluding any attorneys' fees or other costs or expenses, imposed upon Unigard as a result of any claims, demands, lawsuits, causes of action or proceedings that are asserted, initiated or continued by any person or entity against Unigard and that are based upon the Policies and arise out of the Environmental Claims arising out of the Hatco Site, except as otherwise provided in this paragraph VI. The matters for which Grace is obligated pursuant to this paragraph VI to indemnify and hold harmless Unigard are hereinafter referred to as "Indemnifiable Claims."

B. Grace's obligation to indemnify Unigard for Indemnifiable Claims with respect to the Policies shall be subject to an aggregate limit equal to the Settlement Amount under this Agreement. Once Grace has paid any liabilities for Indemnifiable Claims of Unigard in an amount equal to the Settlement Amount, Grace shall not be obligated to indemnify Unigard for further Indemnifiable Claims with respect to the Policies.

C. Within ninety (90) days after receipt by Unigard of notice of any complaint or the commencement or continuation of any action or proceeding that constitutes an Indemnifiable Claim,

-6-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000038

Unigard shall notify Grace in writing of such Indemnifiable Claim. The consequences of Unigard's failure to comply with this notice provision shall be governed by New Jersey law as it relates to notice given by insureds to insurers.

D.    Grace shall have no obligation to pay Unigard's attorney's fees or costs of defense arising out of any Indemnifiable Claim. Grace shall have no right to assume the defense of Unigard with regard to any Indemnifiable Claim.

E.    Unigard and Grace shall cooperate reasonably with each other with respect to Indemnifiable Claims. Grace shall comply in a timely manner with Unigard's requests for access to documentation or information pertaining to its defense of an Indemnifiable Claim.

F.    Unigard shall not have the right to settle any Indemnifiable Claim without Grace's consent, which shall not be unreasonably withheld. Grace shall have the right to settle or compromise any Indemnifiable Claim on behalf of Unigard if the total amount of the proposed settlement or compromise does not exceed the Settlement Amount. Unigard shall have such time as is practicable to review the proposed settlement or compromise and to present its view to Grace, but no such settlement or compromise shall require Unigard's approval if the total amount of the settlement or compromise does not exceed the Settlement Amount. If the total amount of the proposed settlement or compromise exceeds the Settlement Amount, Grace must obtain

-7-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000039

Unigard's consent, which shall not be unreasonably withheld, prior to agreeing to and effectuating any such settlement or compromise. Each party shall provide reasonable and timely disclosure to the other party as soon as is practicable of any proposed settlement or compromise. Any settlement or compromise arranged by Grace shall provide that it is not an admission of liability by Unigard and is without precedent as to Unigard. Any settlement agreement entered into by Grace shall include language substantially similar to that contained in Section VII. A. and B. of this Agreement. Grace shall use reasonable efforts to keep such settlement or compromise confidential. Should Unigard and Grace disagree on the settlement of any Indemnifiable Claims and withold their consent to any settlement under this section, Unigard and Grace agree to present their dispute for resolution pursuant to Section XIV.

VII. <u>NO ADMISSIONS BY THE PARTIES</u>

A. The payment by Unigard of the Settlement Amount and its receipt by Grace is for the compromise of disputed claims, and neither such payment nor its receipt shall be construed as an admission by Unigard or Grace that any coverage or obligation to pay exists or does not exist under any Unigard policy for defense or indemnity of Grace for claims of any nature. By entering into this Agreement, Unigard does not admit

-8-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000040

that it has any liability or obligation to Grace or to any other person.

B.    Further, this Agreement is not intended to be, nor shall it be construed as, an admission with respect to policy interpretation or as an admission by any party regarding any duties, rights or obligations arising under the Unigard Policies or any other policy of insurance issued by Unigard to Grace or anyone else. Nothing in this Agreement shall be deemed to constitute a release, compromise, waiver or an estoppel of any right of Grace or Unigard to assert any claim or defense pursuant to any policy of insurance issued by Unigard or any other insurer, except as specifically provided in this Agreement.

VIII.  NO CONSTRUCTION AGAINST EITHER PARTY

The wording of this Agreement was reviewed and accepted by legal counsel for Grace and Unigard prior to its being signed by them. Any ambiguities in the language of this Agreement shall not be construed against either party on the grounds that the party was the alleged drafter of the language in the event of any dispute arising between them in connection with this Agreement.

IX.   INADMISSIBILITY OF AGREEMENT

Any evidence of the existence, terms or negotiation of this Agreement shall be inadmissible in any litigation, action or other proceeding, provided, however, that such evidence may be

-9-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000041

offered (1) by either party in an action seeking solely to
enforce the terms of this Agreement, (2) by Unigard in connection
with any litigation, action or other proceeding, between Unigard
and any of its reinsurers, and (3) Grace may offer this Agreement
as evidence in any trial or proceeding as needed to support an
allocation of liability among its various insurance carriers.
This Agreement has been entered into in reliance upon the
provisions of Rule 408 of the Federal Rules of Evidence and
similar state law provisions which preclude the introduction of
evidence regarding settlement negotiations or agreements.

    X.   APPLICATION OF AGREEMENT ONLY TO THE PARTIES

       This Agreement is intended to confer rights and
benefits only on the parties hereto and only with respect to the
terms and conditions set forth herein.

    XI.   ENTIRE AGREEMENT/AMENDMENTS TO AGREEMENT

       This Agreement is the complete and entire agreement of
the parties and may not be modified, changed, contradicted, added
to, or altered in any way by any previous written or oral
agreements or any subsequent oral agreements.  No amendments or
variations of the terms of this Agreement shall be valid unless
made in writing and signed by both parties.

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000042

XII. <u>CONFIDENTIALITY</u>

The terms and conditions of this Agreement shall remain confidential and shall not be disclosed to any person or entity without the prior written consent of both parties, except: as required by contract or by authority of a court, administrative tribunal, arbitration panel, or regulatory agency, including, but not limited to, the United States Securities and Exchange Commission or any court in which the issue of allocation of liability among Grace's insurers is being heard; other insurers of Grace; reinsurers of Unigard; in the normal course of business for such purposes as audits and accounting; to the extent required to defend against disputes, claims or actions related to this Agreement; or to the extent required to litigate or resolve issues related to claims of exclusion or impairment of the Unigard Policies.  Should a court order the disclosure of the terms of this Agreement to any other person or entity, the parties shall use their reasonable efforts to maintain its terms under seal and/or protective order.

XIII. <u>REPRESENTATION AND WARRANTIES</u>

Each party represents and warrants to the other:

A.    that it is fully authorized to enter into this Agreement;

-11-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000043

B.  that it is a corporation, duly organized and validly existing in good standing under the laws of one of the states of the United States of America;

C.  that it has taken all necessary corporate and internal legal actions to duly approve the making and performance of this Agreement and that no further governmental, regulatory, corporate or other internal approval is necessary;

D.  that the making and performance of this Agreement will not violate any provision of law or of its articles of incorporation, charter or by-laws;

E.  that it has read this entire Agreement and knows the contents hereof, that the terms hereof are contractual and not merely recitals, and that it has signed this Agreement of its own free act;

F.  that in making this Agreement, it has obtained the advice of legal counsel; and

G.  that there are no pending agreements, transactions or negotiations to which it is a party that would render this Agreement or any part thereof void, voidable or unenforceable.

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000044

XIV. CHOICE OF LAW; JURISDICTION

This Agreement shall be construed pursuant to the laws of the State of New Jersey. Any suit or action to enforce the terms of this Agreement shall be commenced and maintained before the Honorable Alfred M. Wolin of the U.S. District Court for the District of New Jersey, which Court shall retain jurisdiction to enforce this Agreement.

XV.  COVENANT NOT TO SEEK RECOVERY

Unigard hereby covenants not to seek to recover the Settlement Amount from any other insurance company that may have provided coverage to Grace for Environmental Claims arising out of or relating to the Hatco Site.

XVI. RESERVATION OF RIGHTS

Grace reserves all of its rights, without limitation, to enforce coverage provided by Unigard on any and all grounds for any and all claims for coverage which are not released in this Agreement. Unigard reserves all of its rights, without limitation, to deny or dispute coverage to Grace on any and all grounds for any and all claims for coverage which are not released in this Agreement.

-13-

**CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER**

SEA-000045

XVII.    NOTICE

All notices or other communications which any party desires or is required to give shall be given in writing and shall be deemed to have been given if sent by certified mail to the party at the address noted below or such other address as a party may designate in writing from time to time:

If to Grace:

        W. R. Grace & Co.
        One Town Center Road
        Boca Raton, Florida  33486
        Attn: Secretary

with a copy to:

        Director of Corporate Risk Management
        W. R. Grace & Co.
        One Town Center Road
        Boca Raton, Florida  33486

If to Unigard:

        Michael Studley, Esq.
        General Counsel
        Unigard Security Insurance Company
        c/o John Hancock Property and Casualty Company
        P.O. Box 854
        200 Clarendon Street, T-55
        Boston, Massachusetts  02117

            and

        John Hancock Property and Casualty Company
        Attn: General Counsel
        P.O. Box 854
        200 Clarendon Street, T-55
        Boston, Massachusetts  02117

            and

        William P. Hutt, CPCU
        Second Vice President
        John Hancock Management Company
        P.O. Box 854
        200 Clarendon Street, T-29
        Boston, Massachusetts  02117

-14-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000046

with a copy to:

    Allan E. Taylor, Esq.
    Taylor, Duane, Barton & Gilman
    75 Federal Street
    Boston, Massachusetts 02110

W. R. GRACE & CO.-CONN.

Date: _7/11/96_    By _____

Its _Asst VP_____

W.R. GRACE & CO.

Date: _7/11/96_    By _____

Its _Asst VP_____

UNIGARD SECURITY INSURANCE
COMPANY

Date: _7/12/96_    By _____

Its _Asst VP_____

-15-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000047



SETTLEMENT AGREEMENT & RELEASE

Between

W. R. GRACE & CO.

and

UNIGARD SECURITY INSURANCE COMPANY

March 5, 1997

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is entered into this _5th_ day of _March_ , 1997 by W. R. Grace & Co., a Delaware corporation, W. R. Grace & Co., a New York corporation which changed its name to Fresenius National Medical Care Holdings, Inc., and W.R. Grace & Co.-Conn., a Connecticut corporation (collectively "Grace") (as defined in Article II., A. of this Agreement) and Unigard Security Insurance Company, formerly Unigard Mutual Insurance Company ("Unigard") (as defined in Article II., B. of this Agreement).

### I.    RECITALS

WHEREAS, Unigard issued to Grace two policies of insurance, Policy No. I-2517 with a policy period of June 30, 1974 to June 30, 1975 and Policy No. I-0589 with a policy period of February 27, 1973 to June 30, 1975 (collectively the "Unigard Policies").

WHEREAS, Grace has asserted that Unigard is responsible under the Unigard Policies to defend and indemnify Grace as a result of liability, or potential future liability, of Grace arising out of Environmental Claims (as defined in Article II., D. of this Agreement) asserted, or which may in the future be asserted; and

WHEREAS, there is a dispute between Grace and Unigard with respect to Unigard's obligations under the Unigard Policies to defend and/or indemnify Grace with respect to such claims, which is the subject of certain pending cross-claims brought by Grace against Unigard in an action entitled Maryland Casualty Co., v. W. R. Grace & Co., et al., United States District Court for the

**CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER**

Southern District of New York, Civil Action No. 88 Civ. 4337
(JGM) (the "Pending Litigation"); and

WHEREAS, Unigard has denied that it has any such obligation
to Grace, and has defended the Pending Litigation against it; and

WHEREAS, the parties believe that it is in their mutual
interest to reach an amicable resolution with respect to all
Environmental Claims and the issues raised in the Pending
Litigation without admission or adjudication of any issue of fact
or law, and to resolve all past, present or future disputes
relating to Unigard's obligations to Grace under the Unigard
Policies with respect to Environmental Claims;

NOW, THEREFORE, in consideration of the mutual promises
contained herein and other good and valuable consideration, Grace
and Unigard hereby agree as follows:

II.  <u>DEFINITIONS</u>

A.    "Grace" shall mean W. R. Grace & Co.-Conn., a
Connecticut corporation, W. R. Grace & Co., a New York
corporation which changed its name to Fresenius National Medical
Holdings, Inc., and W.R. Grace & Co., a Delaware corporation, and
their respective predecessors, successors, and subsidiary
companies or corporations.

B.    "Unigard" shall mean Unigard Security Insurance
Company, John Hancock Mutual Life Insurance Company, John Hancock
Property & Casualty Holding Company, John Hancock Management
Company, any entity owned or controlled by any of them, and the
past and present directors, officers, employees, parents,
subsidiaries, predecessors, and successors of each of the

-2-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000050

foregoing, together with the assigns of any rights or obligations of any of them under the Unigard Policies.

C.    "Person" shall mean an individual, a corporation, a partnership, an association, a proprietorship, a trust or any other entity or organization, any federal, state, local or foreign governmental or quasi-governmental body or political subdivision or any agency or instrumentality thereof, or any person or entity acting or purporting to act on behalf of any federal, state, local or foreign governmental or quasi-governmental body or political subdivision or any agency or instrumentality thereof.

D.    "Environmental Claims" shall mean any past, present and/or future claim, action, suit, proceeding or notice of liability or potential liability, whether made at law or equity and whether sounding in contract, tort or any other common law or statutory cause of action made against Grace by any Person for environmental liabilities involving alleged, actual, threatened or potential pollution, contamination or other injurious environmental condition, or injury to, destruction of or loss of natural resources, and including any property damage, natural resource damage, cleanup or remediation, but shall not include personal injury claims.  The term "personal injury claims" shall mean any past, present and/or future claim, action, suit, proceeding or notice of liability or potential liability, whether made at law or equity and whether sounding in contract, tort or any other common law or statutory cause of action made against Grace by any Person for bodily injury, sickness or disease, mental injury, mental anguish, malpractice, shock, disability,

-3-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

false arrest, false imprisonment, detention, malicious prosecution, discrimination, humiliation, libel, slander or defamation of character, including death at any time resulting therefrom. For the purpose of this Agreement, however, the term "personal injury claims" shall not include any past, present and/or future claim, action, suit, proceeding or notice of liability or potential liability, whether made at law or equity and whether sounding in contract, tort or any other common law or statutory cause of action made against Grace by any Person for wrongful entry or eviction, nuisance or trespass, or invasion of the right of privacy or occupancy arising out of alleged, actual, threatened or potential pollution, contamination or other injurious environmental condition.

III. <u>PAYMENT BY UNIGARD IN COMPROMISE OF DISPUTED CLAIMS</u>

In full and final settlement of all Environmental Claims that Grace has or may have, now or in the future, known or unknown, against Unigard under the Unigard policies, Unigard will pay to Grace within 30 days after execution of this Agreement by both parties the total sum of Two Million Dollars ($2,000,000) (the "Settlement Amount").

IV. <u>DISMISSAL WITH PREJUDICE OF PENDING LITIGATION</u>

Upon receipt of the payment of the Settlement Amount, Grace and Unigard shall discontinue with prejudice their prosecution of their claims against each other in the Pending Litigation. Each party shall bear its own past costs and attorneys' fees incurred in connection with the Pending

-4-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

Litigation and any such costs and fees incurred to negotiate or implement the terms of this Agreement.

V.   RELEASE

    A.    In further consideration of the payment of the Settlement Amount by Unigard and the mutual release of rights contained herein, Grace does hereby fully and forever release and discharge Unigard, its agents, reinsurers and attorneys from any obligation arising under the Unigard policies for any and all past, present, or future claims, demands, obligations, suits, actions, causes of action and rights whatsoever for indemnity, defense and/or damages or other payments of any nature, which Grace may have paid, may agree to pay, or otherwise may be required to pay, or which may hereafter accrue, on account of or arising out of Environmental Claims, whether known or unknown as of the date of execution of this Agreement; and for any damages (including compensatory, punitive, exemplary, extracontractual or statutory) based upon any allegations of bad faith, unfair claim practice, unfair trade practice or other act or failure to act arising out of Unigard's role as an insurer under the Unigard policies with respect to any Environmental Claims.

    B.    In further consideration of the payment of the Settlement Amount by Unigard and the mutual release of rights contained herein, Grace agrees that it will not seek to recover from Unigard amounts it paid in defense of and to settle claims which were the subject of a lawsuit in the United States District Court for the District of Massachusetts entitled Anne Anderson et al. v. W.R. Grace & Co., et al., Civil Action No. 82-1672-S,

-5-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000053

filed on May 14, 1982 and which were the subject of a settlement
agreement entered into as of September 20, 1986 between Grace and
the plaintiffs in that action.

     C.   Grace represents that as of the date of execution
of this Agreement, it is not aware of any Environmental Claims
contemplated being made against the Unigard Policies by any
former subsidiary of Grace or any other entity which may be
entitled to coverage under the Unigard Policies.

     D.   Grace's release of Unigard shall in no event inure
to the benefit of any other insurance company that, at any time
after the date of this Agreement is executed, is merged into
Unigard, or in which Unigard, at any time after the date this
Agreement is executed, acquires a controlling interest.

VI.   <u>NO ADMISSIONS BY THE PARTIES</u>

     A.   The payment by Unigard of the Settlement Amount
and its receipt by Grace is for the compromise of disputed
claims, and neither such payment nor its receipt shall be
construed as an admission by Unigard or Grace that any coverage
or obligation to pay exists or does not exist under any Unigard
policy for defense or indemnity of Grace for claims of any
nature.  By entering into this Agreement, Unigard does not admit
that it has any liability or obligation to Grace or to any other
person.

     B.   Further, this Agreement is not intended to be, nor
shall it be construed as, an admission with respect to policy
interpretation or as an admission by any party regarding any
duties, rights or obligations arising under the Unigard Policies

-6-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000054

or any other policy of insurance issued by Unigard to Grace or anyone else. Nothing in this Agreement shall be deemed to constitute a release, compromise, waiver or an estoppel of any right of Grace or Unigard to assert any claim or defense pursuant to any policy of insurance issued by Unigard or any other insurer, except as specifically provided in this Agreement.

### VII. <u>NO CONSTRUCTION AGAINST EITHER PARTY</u>

The wording of this Agreement was reviewed and accepted by legal counsel for Grace and Unigard prior to its being signed by them. Any ambiguities in the language of this Agreement shall not be construed against either party on the grounds that the party was the alleged drafter of the language in the event of any dispute arising between them in connection with this Agreement.

### VIII. <u>INADMISSIBILITY OF AGREEMENT</u>

Any evidence of the existence, terms or negotiation of this Agreement shall be inadmissible in any litigation, action or other proceeding, provided, however, that such evidence may be offered (1) by either party in an action seeking solely to enforce the terms of this Agreement, (2) by Unigard in connection with any litigation, action or other proceeding, between Unigard and any of its reinsurers, and (3) Grace may offer this Agreement as evidence in any trial or proceeding as needed to support an allocation of liability among its various insurance carriers. This Agreement has been entered into in reliance upon the provisions of Rule 408 of the Federal Rules of Evidence and similar state law provisions which preclude the introduction of

-7-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000055

evidence regarding settlement negotiations or agreements.

    IX.   APPLICATION OF AGREEMENT ONLY TO THE PARTIES

       This Agreement is intended to confer rights and benefits only on the parties hereto and only with respect to the terms and conditions set forth herein.

    X.   ENTIRE AGREEMENT/AMENDMENTS TO AGREEMENT

       This Agreement is the complete and entire agreement of the parties and may not be modified, changed, contradicted, added to, or altered in any way by any previous written or oral agreements or any subsequent oral agreements.  No amendments or variations of the terms of this Agreement shall be valid unless made in writing and signed by both parties.

    XI.   CONFIDENTIALITY

       The terms and conditions of this Agreement shall remain confidential and shall not be disclosed to any person or entity without the prior written consent of both parties, except: as required by contract or by authority of a court, administrative tribunal, arbitration panel, or regulatory agency, including, but not limited to, the United States Securities and Exchange Commission or any court in which the issue of allocation of liability among Grace's insurers is being heard; other insurers of Grace; reinsurers of Unigard; in the normal course of business for such purposes as audits and accounting; to the extent required to defend against disputes, claims or actions related to this Agreement; or to the extent required to litigate or resolve

-8-

**CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER**

issues related to claims of exclusion or impairment of the
Unigard Policies.  Should a court order the disclosure of the
terms of this Agreement to any other person or entity, the
parties shall use their reasonable efforts to maintain its terms
under seal and/or protective order.

XII. REPRESENTATION AND WARRANTIES

Each party represents and warrants to the other:

A.    that it is fully authorized to enter into this
      Agreement;

B.    that it is a corporation, duly organized and
      validly existing in good standing under the laws
      of one of the states of the United States of
      America;

C.    that it has taken all necessary corporate and
      internal legal actions to duly approve the making
      and performance of this Agreement and that no
      further governmental, regulatory, corporate or
      other internal approval is necessary;

D.    that the making and performance of this Agreement
      will not violate any provision of law or of its
      articles of incorporation, charter or by-laws;

E.    that it has read this entire Agreement and knows
      the contents hereof, that the terms hereof are
      contractual and not merely recitals, and that it
      has signed this Agreement of its own free act;

-9-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000057

F.   that in making this Agreement, it has obtained the
     advice of legal counsel; and

G.   that there are no pending agreements, transactions
     or negotiations to which it is a party that would
     render this Agreement or any part thereof void,
     voidable or unenforceable.


XIII.  AGREEMENT NOT TO SUE OR SEEK RECOVERY

A.   Unigard agrees not to sue or otherwise seek to
recover the Settlement Amount paid to Grace from any other
insurance companies that wrote coverage for Grace to the extent
that such other insurance companies do not sue or otherwise seek
to recover from Unigard amounts paid to Grace for Environmental
Claims.

B.   Nothing in this Agreement shall preclude Unigard
from seeking recovery of the Settlement Amount from its
reinsurers.

C.   Grace agrees to use reasonable efforts to obtain
the same agreements from insurance companies with which it
settles in the future, with respect to Environmental Claims, that
such insurance companies will not sue or otherwise seek to
recover from Unigard amounts paid to Grace pursuant to such
settlement agreements.

D.   Grace warrants that it has obtained the same
agreement as set forth in Section XIII. A. of this Agreement from
Allstate Insurance Company and Certain Underwriters at Lloyd's,
London and London Market Insurance Companies with which it has
settled in the past, with respect to Environmental Claims, that

-10-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000058

such insurance companies will not sue or otherwise seek to recover from other insurance companies amounts paid to Grace pursuant to such settlement agreements.

XIV.  RESERVATION OF RIGHTS

Grace reserves all of its rights, without limitation, to enforce coverage provided by Unigard on any and all grounds for any and all claims for coverage which are not released in this Agreement.  Unigard reserves all of its rights, without limitation, to deny or dispute coverage to Grace on any and all grounds for any and all claims for coverage which are not released in this Agreement.

XV.  NOTICE

All notices or other communications which any party desires or is required to give shall be given in writing and shall be deemed to have been given if sent by certified mail to the party at the address noted below or such other address as a party may designate in writing from time to time:

If to Grace:

    W. R. Grace & Co.
    One Town Center Road
    Boca Raton, Florida  33486
    Attn: Secretary

with a copy to:

    Director of Corporate Risk Management
    W. R. Grace & Co.
    One Town Center Road
    Boca Raton, Florida  33486

-11-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000059

If to Unigard:

    Michael Studley, Esq.
    General Counsel
    Unigard Security Insurance Company
    c/o John Hancock Property and Casualty Company
    P.O. Box 854
    200 Clarendon Street, T-55
    Boston, Massachusetts  02117

        and

    John Hancock Property and Casualty Company
    Attn: General Counsel
    P.O. Box 854
    200 Clarendon Street, T-55
    Boston, Massachusetts  02117

        and

    William P. Hutt, CPCU
    Second Vice President
    John Hancock Management Company
    P.O. Box 854
    200 Clarendon Street, T-29
    Boston, Massachusetts  02117

with a copy to:

    James J. Duane, III, Esq.
    Taylor, Duane, Barton & Gilman
    75 Federal Street
    Boston, Massachusetts  02110

Date: _3/3/97_    W. R. GRACE & CO. (a Delaware
                   corporation)

              By _____

              Its _Asst VP_____

-12-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000060

Date: 3/3/57          W.R. GRACE & CO. (a New York corporation
                      which changed its name to Fresenius
                      National Medical Care Holdings, Inc.)
                      By its Attorney-In-Fact
                      W.R. GRACE-CONN.

                      By _____

                      Its _____ Asst VP _____

Date: 3/3/57          W.R. GRACE & CO-CONN. (a Connecticut
                      corporation)

                      By _____

                      Its ___ Asst VP _____

                      UNIGARD SECURITY INSURANCE COMPANY

Date: 3/5/97          By _William S Hutt_____

                      Its __ Asst V.P. _____

-13-

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000061