agreed-upon amounts; (ii) Packco distributes a portion of the
New Grace Capital Contribution to Grace-Conn. which uses such
funds to pay creditors; (iii) the Intragroup Spinoff occurs;
(iv) Grace contributes the remaining amount of the New Grace
Capital Contribution to New Grace as well as the capital stock
of Grace-Conn.; and (v) New Grace loans the amount described in
clause (iv) to Grace-Conn. in the form of a security.

(b) Prior to the Distribution, Grace-Conn. may con-
summate a cash tender offer in accordance with applicable secu-
rities laws for any and all Grace-Conn. Public Debt. Grace-
Conn. may also elect, in its discretion, to defease or other-
wise acquire any portion of the Grace-Conn. Public Debt. To
the extent that upon consummation of the Distribution, there
remains outstanding (other than to the extent owned by Grace-
Conn. or New Grace) in excess of $50 million in principal
amount of the Grace-Conn. Public Debt, New Grace or Grace-Conn.
shall obtain an "evergreen" letter of credit, with an initial
expiration date no sooner than 364 days after the Effective
Time, from a financial institution or group of financial insti-
tutions reasonably acceptable to Grace and SAC for the benefit
of Grace with respect to such outstanding amount from time to
time in excess of $50 million.

The letter of credit shall be in form and substance
reasonably acceptable to SAC and shall entitle Grace to draw
thereunder if Grace shall be required to make (and makes) any
payment pursuant to the terms of its guarantee of any Grace-
Conn. Public Debt. The expiration date of such letter of
credit shall be automatically extended for successive 364-day
periods, with an absolute expiration date on the date that is
the 91st day after the date on which the outstanding principal
amount of the Grace-Conn. Public Debt shall have been reduced
to no more than $50 million, unless, prior to such 91st day,
any payments shall have been made that are subject to avoidance
pursuant to a bankruptcy or similar proceeding, in which case
such letter of credit shall be extended (with respect to the
applicable payments) until such payments are no longer subject
to such avoidance, unless notice of termination is given by the
issuing bank or banks, in which case Grace shall be entitled to
draw thereunder (whether or not any demand for payment in re-
spect of its guarantee shall have been made), provided that, to
the extent such funds are not used to make payments on the
Grace-Conn. Public Debt, Grace shall hold such proceeds sepa-
rate in an interest-bearing escrow account with a financial
institution and pursuant to escrow arrangements reasonably ac-
ceptable to Grace-Conn. To the extent that the amount held in
such escrow account is greater than (i) the outstanding Grace-
Conn. Public Debt minus (ii) $50 million, Grace shall remit
such excess amount to Grace-Conn. The amount of the letter of

credit may be reduced from time to time, but shall not at any
time be less than the amount by which the outstanding principal
amount of the Grace-Conn. Public Debt (other than such debt
owned by a member of the New Grace Group) exceeds $50 million.

"Debt Costs" shall mean the costs incurred by Grace
or Grace-Conn. in connection with a tender offer, defeasance,
retirement or other acquisition of Grace-Conn. Public Debt,
which costs shall consist of (i) any incremental costs, fees,
expenses and payments incurred in connection with such action,
and in the case of a tender offer shall include all costs,
fees, expenses and payments incurred in connection with a ten-
der offer that are, in the aggregate, in excess of the out-
standing principal amount and accrued interest of the Grace-
Conn. Public Debt so acquired; plus (ii) any costs associated
with terminating or re-negotiating any related interest rate
swap agreements with respect to the amount of Grace-Conn. Pub-
lic Debt acquired, defeased or retired; and plus (iii) the
costs of the letter of credit described above.

SECTION 2.07  Grace Recapitalization.  (a)  Imme-
diately prior to the Effective Time, Grace shall consummate a
recapitalization of the Grace Common Stock, such that each
share of Grace Common Stock outstanding as of the Record Date
shall be exchanged for the Per Share Common Consideration and
the Per Share Preferred Consideration (the "Recapitalization").
Options to purchase shares of Grace Common Stock previously
granted by Grace or a predecessor and outstanding as of the
time of the Recapitalization shall be treated as provided in
the Benefits Agreement.  In connection with the Recapitaliza-
tion and the Merger, the Grace Certificate of Incorporation
shall be amended so that the par value of the Newco Common
Stock will be $.10 per share, as well as otherwise provided in
the Merger Agreement.  Grace shall retain an Exchange Agent or
transfer agent as appropriate and take other appropriate ac-
tions to effect the Recapitalization, including customary pro-
cedures with respect to the exchange of share certificates.

(b)  No fractional shares of Newco Common Stock or
Newco Convertible Preferred Stock shall be issued in the Re-
capitalization.  In lieu of any such fractional shares, each
person who would otherwise have been entitled to a fraction of
a share of Newco Common Stock or Newco Convertible Preferred
Stock upon surrender of former shares of Grace Common Stock for
exchange pursuant to the Recapitalization shall be paid an
amount in cash (without interest) equal to such holder's pro-
portionate interest in the net proceeds from the sale or sales
in the open market by the Exchange Agent, on behalf of all such
holders, of the aggregate fractional shares of Newco Common
Stock or Newco Convertible Preferred Stock issued pursuant to

- 26 -

this paragraph. As soon as practicable following the Distribution Date, the Exchange Agent shall determine the excess of (i) the number of full shares of Newco Common Stock or Newco Convertible Preferred Stock, as the case may be, delivered to the Exchange Agent over (ii) the aggregate number of full shares of Newco Common Stock or Newco Convertible Preferred Stock to be distributed in respect of Grace Common Shares (such excess, the "Excess Shares"), and the Exchange Agent, as agent for the former holders of such Grace Common Shares, shall sell the Excess Shares at the prevailing prices on the open market. The sale of the Excess Shares by the Exchange Agent shall be executed on a public exchange through one or more firms and shall be executed in round lots to the extent practicable. Grace shall pay all commissions, transfer taxes and other out-of-pocket transaction costs, including the expenses and compensation of the Exchange Agent, incurred in connection with such sale of Excess Shares. Until the net proceeds of such sale or sales have been distributed, the Exchange Agent shall hold such proceeds in trust for such former stockholders. As soon as practicable after the determination of the amount of cash to be paid in lieu of any fractional interests, the Exchange Agent shall make available in accordance with this Agreement such amounts to such former stockholders.

SECTION 2.08 Registration and Listing. Prior to the Distribution Date:

(a) The parties shall take such efforts regarding the Registration Statements and the Joint Proxy Statement as is provided in the Merger Agreement. After such Registration Statements become effective, Grace shall cause the Joint Proxy Statement and the information statement (or prospectus, as the case may be) for the New Grace Common Stock forming a part of the Registration Statement for New Grace to be delivered to all holders of record of Grace Common Stock as of the record date for the meeting of Grace shareholders to which the Joint Proxy Statement relates.

(b) The parties hereto shall use reasonable efforts to take all such action as may be necessary or appropriate under state securities and blue sky laws in connection with the transactions contemplated by this Agreement.

(c) New Grace and Grace shall prepare, and New Grace and Grace shall file and seek to make effective, an application for the listing of the New Grace Common Stock on the NYSE, and an application for the listing on the NYSE of the Newco Common Stock and the Newco Convertible Preferred Stock to be issued in connection with the Recapitalization and the Merger, in each case subject to official notice of issuance.

- 27 -

(d)   The parties hereto shall cooperate in preparing, filing with the SEC and causing to become effective any registration statements or amendments thereto which are necessary or appropriate in order to effect the transactions contemplated hereby or to reflect the establishment of, or amendments to, any employee benefit plans contemplated hereby or by the Employee Benefits Agreement requiring registration under the Securities Act.

SECTION 2.09   Grace and New Grace Boards.   The parties hereto shall take all steps necessary so that, effective immediately after the Distribution, the Board of Directors of each of Grace and New Grace, so long as the common stock of such company is registered under Section 12 of the Exchange Act, shall at all times be comprised of a majority of independent directors (other than due to temporary vacancies).

SECTION 2.10   Transfers Not Effected Prior to the Distribution; Transfers Deemed Effective as of the Distribution Date.   To the extent that any transfers contemplated by this Article II shall not have been consummated on the Distribution Date, including, without limitation, any Foreign Transfers, the parties shall cooperate to effect such transfers as promptly following the Distribution Date as shall be practicable.   Nothing herein shall be deemed to require the transfer of any Assets or the assumption of any Liabilities which by their terms or operation of law cannot be transferred or assumed; *provided, however*, that Grace and New Grace and their respective Subsidiaries shall cooperate to obtain any necessary consents or approvals for the transfer of all Assets and Liabilities contemplated to be transferred pursuant to this Article II.   In the event that any such transfer of Assets or Liabilities has not been consummated, effective as of and after the Distribution Date, the party retaining such Asset or Liability shall thereafter hold such Asset in trust for the use and benefit of the party entitled thereto (at the expense of the party entitled thereto) and retain such Liability for the account of the party by whom such Liability is to be assumed pursuant hereto, and take such other action as may be reasonably requested by the party to which such Asset is to be transferred, or by whom such Liability is to be assumed, as the case may be, in order to place such party, insofar as reasonably possible, in the same position as would have existed had such Asset or Liability been transferred as contemplated hereby.   As and when any such Asset or Liability becomes transferable, such transfer shall be effected forthwith.   The parties agree that, as of the Distribution Date, each party hereto shall be deemed to have acquired complete and sole beneficial ownership over all of the Assets, together with all rights, powers and privileges incident thereto, and shall be deemed to have assumed in accordance with the

- 28 -

terms of this Agreement all of the Liabilities, and all duties, obligations and responsibilities incident thereto, which such party is entitled to acquire or required to assume pursuant to the terms of this Agreement.

SECTION 2.11  Intercompany Accounts and Distribution Payments.  After the Distribution Date, the parties shall be obligated to pay only those intercompany accounts between members of the New Grace Group and members of the Packco Group that arose in connection with transfers of goods and services in the ordinary course of business, consistent with past practices (which the parties shall use reasonable efforts to settle prior to the Distribution Date), and all other intercompany accounts shall be settled without transfer of non-financial assets as of the Distribution Date.

### ARTICLE III

### THE DISTRIBUTION

SECTION 3.01  Record Date and Distribution Date. Subject to the satisfaction of the conditions set forth in Section 8.01(a), the Board of Directors of Grace, in its sole discretion and consistent with the Merger Agreement, shall establish the Record Date and the Distribution Date and any appropriate procedures in connection with the Distribution.

SECTION 3.02  The Agent.  Prior to the Distribution Date, New Grace shall enter into an agreement with the Agent providing for, among other things, the payment of the Distribution to the holders of Grace Common Stock in accordance with this Article III.

SECTION 3.03  Delivery of Share Certificates to the Agent.  Prior to the Distribution Date, Grace shall deliver to the Agent a share certificate representing (or authorize the related book-entry transfer of) all of the outstanding shares of New Grace Common Stock to be distributed in connection with the payment of the Distribution.  After the Distribution Date, upon the request of the Agent, New Grace shall provide all certificates for shares (or book-entry transfer authorizations) of New Grace Common Stock that the Agent shall require in order to effect the Distribution.

SECTION 3.04  The Distribution.  Subject to the terms and conditions of this Agreement, New Grace shall instruct the Agent to distribute, as of the Distribution Date, one share of New Grace Common Stock in respect of each share of Grace Common

- 29 -

Stock held by holders of record of Grace Common Stock on the
Record Date.

## ARTICLE IV

### SURVIVAL AND INDEMNIFICATION

SECTION 4.01  Survival of Agreements.  All covenants
and agreements of the parties hereto contained in this Agree-
ment shall survive the Distribution Date.

SECTION 4.02  Indemnification.  (a)  Except as spe-
cifically otherwise provided in the Other Agreements, the New
Grace Group shall indemnify, defend and hold harmless the Pack-
co Indemnitees from and against (i) all Indemnifiable Losses
arising out of or due to the failure or alleged failure of any
member of the New Grace Group (x) to pay any Grace-Conn. Lia-
bilities (including, without limitation, all Liabilities spe-
cifically excluded from the definition of Packco Liabilities
herein), whether such Indemnifiable Losses relate to events,
occurrences or circumstances occurring or existing, or whether
such Indemnifiable Losses are asserted, before or after the
Distribution Date, or (y) to perform any of its obligations
under this Agreement (including the obligation to effect the
transfers as provided in the last sentence of Section 2.01(a));
(ii) all Indemnifiable Losses arising out of or based upon any
untrue statement or alleged untrue statement of a material
fact, or omission or alleged omission to state a material fact
required to be stated, in the Registration Statements or the
Joint Proxy Statement or any preliminary or final form thereof
or any amendment thereto, or necessary to make the statements
therein not misleading, except that such indemnifications shall
not apply to any Indemnifiable Losses that arise out of or are
based upon any statement or omission, or alleged statement or
omission, in any of the portions of the Registration Statements
or the Joint Proxy Statement, or any preliminary or final form
thereof or any amendment thereto, solely with respect to infor-
mation relating to SAC supplied by SAC specifically for use in
the preparation thereof or relating to Newco after the Merger;
and (iii) all Indemnifiable Losses arising from or relating to
all existing litigation brought by pre-Merger shareholders of
Grace acting in such capacity and all litigation to be brought
by pre-Merger shareholders of Grace acting in such capacity and
relating to any events or transactions occurring prior to the
Effective Time or to the transactions contemplated by the
Transaction Agreements.

(b)  Except as specifically otherwise provided in the
Other Agreements, the Packco Group shall indemnify, defend and

hold harmless the New Grace Indemnitees from and against (i)
all Indemnifiable Losses arising out of or due to the failure
or alleged failure of any member of the Packco Group to pay any
Packco Liabilities or to perform any of its obligations under
this Agreement after the Distribution Date; and (ii) all Indem-
nifiable Losses arising out of or based upon any untrue state-
ment or alleged untrue statement of a material fact, or omis-
sion or alleged omission to state a material fact required to
be stated, in any portion of the Registration Statements or the
Joint Proxy Statement (or any preliminary or final form thereof
or any amendment thereto) solely with respect to information
relating to SAC supplied by SAC specifically for use in the
preparation thereof or relating to Newco after the Merger (in-
cluding the pro forma financial information relating to Newco
contained in the Registration Statements (other than the his-
torical information relating to Grace and the Packaging Busi-
ness)), or necessary to make the statements therein not mis-
leading.

(c)  If any Indemnity Payment required to be made
hereunder or under any Other Agreement is denominated in a cur-
rency other than United States dollars, such payment shall be
made in United States dollars and the amount thereof shall be
computed using the Foreign Exchange Rate for such currency de-
termined as of the date on which such Indemnity Payment is
made.

(d)  Notwithstanding anything to the contrary set
forth herein, indemnification relating to any arrangements be-
tween any member of the Packco Group and any member of the New
Grace Group for the provision after the Distribution of goods
and services in the ordinary course shall be governed by the
terms of such arrangements and not by this Section or as other-
wise set forth in this Agreement and the Other Agreements.

SECTION 4.03  Procedures for Indemnification for
Third-Party Claims.  (a)  Grace shall, and shall cause the oth-
er Packco Indemnitees to, notify New Grace in writing promptly
after learning of any Third-Party Claim for which any Packco
Indemnitee intends to seek indemnification from New Grace under
this Agreement.  New Grace shall, and shall cause the other New
Grace Indemnitees to, notify Grace in writing promptly after
learning of any Third-Party Claim for which any New Grace In-
demnitee intends to seek indemnification from Grace under this
Agreement.  The failure of any Indemnitee to give such notice
shall not relieve any Indemnifying Party of its obligations
under this Article except to the extent that such Indemnifying
Party or its Affiliate is actually prejudiced by such failure
to give notice.  Such notice shall describe such Third-Party

- 31 -

Claim in reasonable detail considering the Information provided to the Indemnitee.

(b)    Except as otherwise provided in paragraph (c) of this Section, an Indemnifying Party may, by notice to the Indemnitee and to Grace, if New Grace is the Indemnifying Party, or to the Indemnitee and New Grace, if Grace is the Indemnifying Party, at any time after receipt by such Indemnifying Party of such Indemnitee's notice of a Third-Party Claim, undertake (itself or through another member of the Group of which the Indemnifying Party is a member) the defense or settlement of such Third-Party Claim.  If an Indemnifying Party undertakes the defense of any Third-Party Claim, such Indemnifying Party shall thereby admit its obligation to indemnify the Indemnitee against such Third-Party Claim, and such Indemnifying Party shall control the investigation and defense or settlement thereof, and the Indemnitee may not settle or compromise such Third-Party Claim, except that such Indemnifying Party shall not (i) require any Indemnitee, without its prior written consent, to take or refrain from taking any action in connection with such Third-Party Claim, or make any public statement, which such Indemnitee reasonably considers to be against its interests, nor (ii) without the prior written consent of the Indemnitee and of Grace, if the Indemnitee is a Packco Indemnitee, or the Indemnitee and of New Grace, if the Indemnitee is a New Grace Indemnitee, consent to any settlement that does not include as a part thereof an unconditional release of the Indemnitees from liability with respect to such Third-Party Claim or that requires the Indemnitee or any of its Representatives or Affiliates to make any payment that is not fully indemnified under this Agreement or to be subject to any non-monetary remedy; and subject to the Indemnifying Party's control rights, as specified herein, the Indemnitees may participate in such investigation and defense, at their own expense.  Following the provision of notices to the Indemnifying Party, until such time as an Indemnifying Party has undertaken the defense of any Third-Party Claim as provided herein, such Indemnitee shall control the investigation and defense or settlement thereof, without prejudice to its right to seek indemnification hereunder.

(c)    If an Indemnitee reasonably determines that there may be legal defenses available to it that are different from or in addition to those available to its Indemnifying Party which make it inappropriate for the Indemnifying Party to undertake the defense or settlement thereof, then such Indemnifying Party shall not be entitled to undertake the defense or settlement of such Third-Party Claim; and counsel for the Indemnifying Party shall be entitled to conduct the defense of

such Indemnifying Party and counsel for the Indemnitee (se-
lected by the Indemnitee) shall be entitled to conduct the de-
fense of such Indemnitee, it being understood that both such
counsel shall cooperate with each other to conduct the defense
or settlement of such action as efficiently as possible.  The
above provisions of this paragraph (c) shall not apply to
Third-Party Claims relating to asbestos claims described in the
proviso to the definition of Packco Liabilities.  Rather, with
respect to such asbestos claims, with the consent of Grace-
Conn., which shall not be unreasonably withheld, counsel for
the Indemnifying Party shall be entitled to conduct the defense
of such Third-Party Claim to the extent the legal defenses
available to the Indemnifying Party and the Indemnitee are sub-
stantially similar, but counsel for the Indemnitee shall be
entitled to assert and conduct its own defense to the extent,
but only to the extent, of any additional legal defenses avail-
able to it.

(d)  In no event shall an Indemnifying Party be li-
able for the fees and expenses of more than one counsel for all
Indemnitees (in addition to its own counsel, if any) in connec-
tion with any one action, or separate but similar or related
actions, in the same jurisdiction arising out of the same gen-
eral allegations or circumstances.

(e)  New Grace shall, and shall cause the other New
Grace Indemnitees to, and Grace shall, and shall cause the
other Packco Indemnitees to, make available to each other,
their counsel and other Representatives, all information and
documents reasonably available to them which relate to any
Third-Party Claim, and otherwise cooperate as may reasonably be
required in connection with the investigation, defense and set-
tlement thereof, subject to the terms and conditions of a mutu-
ally acceptable joint defense agreement.  Any joint defense
agreement entered into by New Grace or Grace with any third
party relating to any Third-Party Claim shall provide that New
Grace or Grace may, if requested, provide information obtained
through any such agreement to the New Grace Indemnitees and/or
the Packco Indemnitees.

SECTION 4.04  Remedies Cumulative.  The remedies pro-
vided in this Article IV shall be cumulative and shall not pre-
clude assertion by any Indemnitee of any other rights or the
seeking of any other remedies against any Indemnifying Party.
However, the procedures set forth in Section 4.03 shall be the
exclusive procedures governing any indemnity action brought
under this Agreement, except as otherwise specifically provided
in any of the Other Agreements.

- 33 -

ARTICLE V

CERTAIN ADDITIONAL COVENANTS

SECTION 5.01  Notices to Third Parties.  In addition
to the actions described in Section 5.02, the members of the
Packco Group and the members of the New Grace Group shall coop-
erate to make all other filings and give notice to and obtain
consents from all third parties that may reasonably be required
to consummate the transactions contemplated by this Agreement,
the Merger Agreement and the Other Agreements.

SECTION 5.02  Licenses and Permits.  Each party here-
to shall cause the appropriate members of its Group to prepare
and file with the appropriate licensing and permitting authori-
ties applications for the transfer or issuance, as may be nec-
essary or advisable in connection with the transactions contem-
plated by this Agreement, the Other Agreements and the Merger
Agreement, to its Group of all material governmental licenses
and permits required for the members of its Group to operate
its Business after the Distribution Date.  The members of the
New Grace Group and the members of the Packco Group shall coop-
erate and use all reasonable efforts to secure the transfer or
issuance of the licenses and permits.

SECTION 5.03  Intercompany Agreements.  All con-
tracts, licenses, agreements, commitments or other arrange-
ments, formal or informal, between any member of the Packco
Group, on the one hand, and any member of the New Grace Group,
on the other hand, in existence as of the Distribution Date,
pursuant to which any member of either Group makes payments in
respect of Taxes to any member of the other Group or provides
to any member of the other Group goods or services (including,
without limitation, management, administrative, legal, finan-
cial, accounting, data processing, insurance or technical sup-
port), or the use of any Assets of any member of the other
Group, or the secondment of any employee, or pursuant to which
rights, privileges or benefits are afforded to members of ei-
ther Group as Affiliates of the other Group, shall terminate as
of the close of business on the day prior to the Distribution
Date, except as specifically provided herein or in the Other
Agreements.  From and after the Distribution Date, no member of
either Group shall have any rights under any such contract,
license, agreement, commitment or arrangement with any member
of the other Group, except as specifically provided herein or
in the Other Agreements.

SECTION 5.04  Guarantee Obligations.  (a) Grace and
New Grace shall cooperate, and shall cause their respective
Groups to cooperate, to terminate, or to cause a member of the

- 34 -

Packco Group to be substituted in all respects for any member
of the New Grace Group in respect of, all obligations of any
member of the New Grace Group under any Packco Liabilities for
which such member of the New Grace Group may be liable, as
guarantor, original tenant, primary obligor or otherwise.    If
such a termination or substitution is not effected by the Dis-
tribution Date, (i) Grace shall indemnify and hold harmless the
New Grace Indemnitees for any Indemnifiable Loss arising from
or relating thereto, and (ii) without the prior written consent
of the Chief Financial Officer, Treasurer or any Assistant
Treasurer of New Grace, from and after the Distribution Date,
Grace shall not, and shall not permit any member of the Packco
Group or any of its Affiliates to, renew or extend the term of,
increase its obligations under, or transfer to a third party,
any loan, lease, contract or other obligation for which any
member of the New Grace Group is or may be liable unless all
obligations of the New Grace Group with respect thereto are
thereupon terminated by documentation reasonably satisfactory
in form and substance to the Chief Financial Officer, Treasurer
or any Assistant Treasurer of New Grace, *provided* that the lim-
itations in clause (ii) shall not apply in the event that a
member of the Packco Group obtains a letter of credit from a
financial institution reasonably acceptable to New Grace and
for the benefit of New Grace with respect to such obligation of
the New Grace Group.

         (b)    Grace and New Grace shall cooperate, and shall
cause their respective Groups to cooperate, to terminate, or to
cause a member of the New Grace Group to be substituted in all
respects for any member of the Packco Group in respect of, all
obligations of any member of the Packco Group under any Grace-
Conn. Liabilities for which such member of the Packco Group may
be liable, as guarantor, original tenant, primary obligor or
otherwise.    The foregoing sentence does not apply to the Grace-
Conn. Public Debt, which is governed by Section 2.06.    If such
a termination or substitution is not effected by the Distribu-
tion Date, (i) New Grace shall indemnify and hold harmless the
Packco Indemnitees for any Indemnifiable Loss arising from or
relating thereto, and (ii) without the prior written consent of
the Chief Financial Officer, Treasurer or any Assistant Trea-
surer of Grace, from and after the Distribution Date, New Grace
shall not, and shall not permit any member of the New Grace
Group to, renew or extend the term of, increase its obligations
under, or transfer to a third party, any loan, lease, contract
or other obligation for which any member of the Packco Group is
or may be liable unless all obligations of the Packco Group
with respect thereto are thereupon terminated by documentation
reasonably satisfactory in form and substance to the Chief Fi-
nancial Officer, Treasurer or any Assistant Treasurer of Grace,
*provided* that the limitations contained in clause (ii) shall

- 35 -

not apply in the event that a member of the New Grace Group obtains a letter of credit from a financial institution reasonably acceptable to Grace and for the benefit of Grace with respect to such obligation of the Packco Group.

SECTION 5.05  Further Assurances.  In addition to the actions specifically provided for elsewhere in this Agreement, each of the parties hereto shall use reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary, proper or advisable under applicable laws, regulations and agreements to consummate and make effective the transactions contemplated by this Agreement.  Without limiting the foregoing, each party hereto shall cooperate with the other party, and execute and deliver, or use reasonable efforts to cause to be executed and delivered, all instruments, and to make all filings with, and to obtain all consents, approvals or authorizations of, any governmental or regulatory authority or any other Person under any permit, license, agreement, indenture or other instrument, and take all such other actions as such party may reasonably be requested to take by any other party hereto from time to time, consistent with the terms of this Agreement, the Merger Agreement and the Other Agreements, in order to effectuate the provisions and purposes of this Agreement.

SECTION 5.06  Environmental Claims Cooperation.  With respect to claims relating to Environmental Laws described in clause (a) of the definition of Packco Liabilities, the New Grace Group and the Packco Group shall cooperate to minimize the costs incurred in connection with such claims and shall generally cooperate and provide appropriate information to the other party with respect to such claims.  Notwithstanding any other provision of this Agreement, including Article IV, Grace shall be entitled to participate in the defense of any such claims but New Grace shall control the resolution of any such claims; *provided* that New Grace shall not consent to entry of any judgment or enter into any settlement without the approval of Grace, which approval shall not be unreasonably withheld.

## ARTICLE VI

### ACCESS TO INFORMATION

SECTION 6.01  Provision of Corporate Records.  Prior to or as promptly as practicable after the Distribution Date, Grace shall retain complete and accurate copies but shall deliver to New Grace all corporate books and records of the New Grace Group in its possession and copies of the relevant portions of all corporate books and records of the Packco Group

- 36 -

relating directly and predominantly to the Grace-Conn. Assets,
the New Grace Business, or the Liabilities of the New Grace
Group, including, in each case, all active agreements, active
litigation files and government filings. Grace shall also re-
tain complete and accurate copies but deliver to New Grace all
corporate board and committee minute books of Grace. From and
after the Distribution Date, all such books, records and copies
shall be the property of New Grace. Prior to or as promptly as
practicable after the Distribution Date, New Grace shall de-
liver to Grace all corporate books and records of the Packco
Group in its possession and copies of the relevant portions of
all corporate books and records of the New Grace Group relating
directly and predominantly to the Packco Assets, the Packaging
Business, or the Liabilities of the Packco Group, including, in
each case, all active agreements, active litigation files and
government filings. From and after the Distribution Date, all
such books, records and copies shall be the property of Grace.
The costs and expenses incurred in the provision of records or
other information to a party shall be paid for (including reim-
bursement of costs incurred by the providing party) by the re-
questing party.

         SECTION 6.02 Access to Information. From and after
the Distribution Date, each of Grace and New Grace shall afford
to the other and to the other's Representatives reasonable ac-
cess and duplicating rights during normal business hours to all
Information within the possession or control of such party's
Group relating to the other party's Group's pre-Distribution
business, Assets or Liabilities or relating to or arising in
connection with the relationship between the Groups on or prior
to the Distribution Date, insofar as such access is reasonably
required for a reasonable purpose, subject to the provisions
below regarding Privileged Information. Without limiting the
foregoing, Information may be requested under this Section 6.02
for audit, accounting, claims, litigation and Tax purposes, as
well as for purposes of fulfilling disclosure and reporting
obligations.

         In furtherance of the foregoing:

         (a) Each party hereto acknowledges that: (i) Each
of Grace and New Grace (and the members of the Packco
Group and the New Grace Group, respectively) has or may
obtain Privileged Information; (ii) there are a number of
Litigation Matters affecting each or both of Grace and New
Grace; (iii) both Grace and New Grace have a common legal
interest in Litigation Matters, in the Privileged Informa-
tion and in the preservation of the confidential status of
the Privileged Information, in each case relating to the
pre-Distribution business of the Packco Group or the New

- 37 -

Grace Group or relating to or arising in connection with
the relationship between the Groups on or prior to the
Distribution Date; and (iv) both Grace and New Grace in-
tend that the transactions contemplated hereby and by the
Merger Agreement and the Other Agreements and any transfer
of Privileged Information in connection therewith shall
not operate as a waiver of any potentially applicable
privilege.

    (b)   Each of Grace and New Grace agrees, on behalf of
itself and each member of the Group of which it is a mem-
ber, not to disclose or otherwise waive any privilege at-
taching to any Privileged Information relating to the pre-
Distribution business of the New Grace Group or the Packco
Group, respectively, or relating to or arising in connec-
tion with the relationship between the Groups on or prior
to the Distribution Date, without providing prompt written
notice to and obtaining the prior written consent of the
other, which consent shall not be unreasonably withheld
and shall not be withheld if the other party certifies
that such disclosure is to be made in response to a likely
threat of suspension or debarment or similar action; pro-
vided, however, that Grace and New Grace may make such
disclosure or waiver with respect to Privileged Informa-
tion if such Privileged Information relates solely to the
pre-Distribution business of the Packco Group in the case
of Grace or the New Grace Group in the case of New Grace.
In the event of a disagreement between any member of the
Packco Group and any member of the New Grace Group con-
cerning the reasonableness of withholding such consent, no
disclosure shall be made prior to a resolution of such
disagreement by a court of competent jurisdiction, pro-
vided that the limitations in this sentence shall not ap-
ply in the case of disclosure required by law and so cer-
tified as provided in the first sentence of this para-
graph.

    (c)   Upon any member of the Packco Group or any mem-
ber of the New Grace Group receiving any subpoena or other
compulsory disclosure notice from a court, other govern-
mental agency or otherwise which requests disclosure of
Privileged Information, in each case relating to pre-Dis-
tribution business of the New Grace Group or the Packco
Group, respectively, or relating to or arising in connec-
tion with the relationship between the Groups on or prior
to the Distribution Date, the recipient of the notice
shall promptly provide to the other Group (following the
notice provisions set forth herein) a copy of such notice,
the intended response, and all materials or information
relating to the other Group that might be disclosed.   In

- 38 -

the event of a disagreement as to the intended response or disclosure, unless and until the disagreement is resolved as provided in paragraph (b) of this Section, the parties shall cooperate to assert all defenses to disclosure claimed by either party's Group, and shall not disclose any disputed documents or information until all legal defenses and claims of privilege have been finally determined.

SECTION 6.03  Production of Witnesses.  Subject to Section 6.02, after the Distribution Date, each of Grace and New Grace shall, and shall cause each member of the Packco Group and the New Grace Group, respectively, to make available to New Grace or Grace or any member of the New Grace Group or of the Packco Group, as the case may be, upon written request, such Group's directors, officers, employees and agents as witnesses to the extent that any such Person may reasonably be required in connection with any Litigation Matters, administrative or other proceedings in which the requesting party may from time to time be involved and relating to the pre-Distribution business of the Packco Group or the New Grace Group or relating to or in connection with the relationship between the Groups on or prior to the Distribution Date.

SECTION 6.04  Retention of Records.  Except as otherwise agreed in writing, or as otherwise provided in the Other Agreements, each of Grace and New Grace shall, and shall cause the members of the Group of which it is a member to, retain all Information in such party's Group's possession or under its control relating directly and predominantly to the pre-Distribution business, Assets or Liabilities of the other party's Group until such Information is at least ten years old or until such later date as may be required by law, except that if, prior to the expiration of such period, any member of either party's Group wishes to destroy or dispose of any such Information that is at least three years old, prior to destroying or disposing of any of such Information, (a) the party whose Group is proposing to dispose of or destroy any such Information shall provide no less than 30 days' prior written notice to the other party, specifying the Information proposed to be destroyed or disposed of, and (b) if, prior to the scheduled date for such destruction or disposal, the other party requests in writing that any of the Information proposed to be destroyed or disposed of be delivered to such other party, the party whose Group is proposing to dispose of or destroy such Information promptly shall arrange for the delivery of the requested Information to a location specified by, and at the expense of, the requesting party.

SECTION 6.05  Confidentiality.  Subject to Section 6.02, which shall govern Privileged Information, from and after the Distribution Date, each of Grace and New Grace shall hold, and shall use reasonable efforts to cause its Affiliates and Representatives to hold, in strict confidence all Information concerning the other party's Group obtained by it prior to the Distribution Date or furnished to it by such other party's Group pursuant to this Agreement or the Other Agreements and shall not release or disclose such Information to any other Person, except its Affiliates and Representatives, who shall be bound by the provisions of this Section 6.05, and each party shall be responsible for a breach by any of its Affiliates or Representatives; provided, however, that any member of the Packco Group or the New Grace Group may disclose such Information to the extent that (a) disclosure is compelled by judicial or administrative process or, in the opinion of such Person's counsel, by other requirements of law, or (b) such party can show that such Information was (i) available to such Person on a nonconfidential basis (other than from a member of the other party's Group) prior to its disclosure by the other party's Group, (ii) in the public domain through no fault of such Person or (iii) lawfully acquired by such Person from another source after the time that it was furnished to such Person by the other party's Group, and not acquired from such source subject to any confidentiality obligation on the part of such source known to the acquiror.  Notwithstanding the foregoing, each of Grace and New Grace shall be deemed to have satisfied its obligations under this Section 6.05 with respect to any Information (other than Privileged Information) if it exercises the same care with regard to such Information as it takes to preserve confidentiality for its own similar Information.

SECTION 6.06  Cooperation with Respect to Government Reports and Filings.  Grace, on behalf of itself and each member of the Packco Group, agrees to provide any member of the New Grace Group, and New Grace, on behalf of itself and each member of the New Grace Group, agrees to provide any member of the Packco Group, with such cooperation and Information as may be reasonably requested by the other in connection with the preparation or filing of any government report or other government filing contemplated by this Agreement or in conducting any other government proceeding relating to the pre-Distribution business of the Packco Group or the New Grace Group, Assets or Liabilities of either Group or relating to or in connection with the relationship between the Groups on or prior to the Distribution Date.  Such cooperation and Information shall include, without limitation, promptly forwarding copies of appropriate notices and forms or other communications received from or sent to any government authority which relate to the Packco Group, in the case of the New Grace Group, or the New Grace

- 40 -

Group, in the case of the Packco Group.  Each party shall make
its employees and facilities available during normal business
hours and on reasonable prior notice to provide explanation of
any documents or Information provided hereunder.

ARTICLE VII

NO REPRESENTATIONS OR WARRANTIES

SECTION 7.01  No Representations or Warranties.  Ex-
cept as expressly set forth herein or in any other Transaction
Agreement (including Article II and Sections 4.01, 4.02 and
5.05), New Grace and Grace-Conn. understand and agree that no
member of the Packco Group is, in this Agreement or in any
other agreement or document, representing or warranting to New
Grace or any member of the New Grace Group in any way as to the
Grace-Conn. Assets, the New Grace Business or the Grace-Conn.
Liabilities, it being agreed and understood that New Grace and
each member of the New Grace Group shall take all of the Grace-
Conn. Assets "as is, where is."  Except as expressly set forth
herein or in any other Transaction Agreement and subject to
Sections 4.01, 4.02 and 5.05, New Grace and each member of the
New Grace Group shall bear the economic and legal risk that the
Grace-Conn. Assets shall prove to be insufficient or that the
title of any member of the New Grace Group to any Grace-Conn.
Assets shall be other than good and marketable and free from
encumbrances.  Except as expressly set forth herein or in any
other Transaction Agreement (including Article II and Sections
4.01, 4.02 and 5.05), Grace understands and agrees that no mem-
ber of the New Grace Group is, in this Agreement or in any
other agreement or document, representing or warranting to
Grace or any member of the Packco Group in any way as to the
Packco Assets, the Packaging Business or the Packco Liabili-
ties, it being agreed and understood that Grace, Packco and
each other member of the Packco Group shall take all of the
Packco Assets "as is, where is."  Except as expressly set forth
herein or in any other Transaction Agreement and subject to
Sections 4.01, 4.02 and 5.05, Grace and each member of the
Packco Group shall bear the economic and legal risk that the
Packco Assets shall prove to be insufficient or that the title
of any member of the Packco Group to any Packco Assets shall be
other than good and marketable and free from encumbrances.  The
foregoing shall be without prejudice to any rights under Ar-
ticle II, Section 4.01, Section 4.02 or Section 5.05 or to the
covenants otherwise contained in this Agreement or any other
Transaction Agreement.

- 41 -

ARTICLE VIII

MISCELLANEOUS

SECTION 8.01  Conditions to Obligations.  (a)  The obligations of the parties hereto to consummate the payment of the Distribution are subject to the satisfaction of each of the following conditions:

(i)  the transactions contemplated hereby (including the Distribution, the Recapitalization, the Merger, the amendment to the Grace Certificate of Incorporation and otherwise as required by applicable law and stock exchange regulations) shall have been duly approved by Grace share-holders;

(ii)  all conditions to the Merger set forth in the Merger Agreement (other than that the Distribution be con-summated) shall have been satisfied or waived;

(iii)  all third-party consents and governmental ap-provals required in connection with the transactions con-templated hereby shall have been received, except where the failure to obtain such consents or approvals would not have a material adverse effect on either (A) the ability of the parties to consummate the transactions contemplated by this Agreement, the Other Agreements or the Merger Agreement or (B) the business, assets, liabilities, finan-cial condition or results of operations of Grace-Conn. or Packco and their respective subsidiaries, taken as a whole;

(iv)  the transactions contemplated by Article II shall have been consummated in all material respects, to the extent required to be consummated prior to the Distri-bution;

(v)  the shares of New Grace Common Stock to be is-sued in the Distribution, and the shares of Newco Common Stock and the Newco Convertible Preferred Stock to be is-sued in the Recapitalization and the Merger, as the case may be, shall have been authorized for listing on the NYSE, in each case subject to official notice of issuance;

(vi)  the Board of Directors of New Grace, composed as contemplated by Section 2.09, shall have been duly elect-ed;

(vii)  the Registration Statements shall have been de-clared effective under the Exchange Act or the Securities

- 42 -

Act, as the case may be, by the SEC and no stop order sus-
pending the effectiveness of either of the Registration
Statements shall have been issued by the SEC and, to the
knowledge of Grace and New Grace, no proceeding for that
purpose shall have been instituted by the SEC;

(viii)  the applicable parties shall have entered into
each of the Other Agreements;

(ix)  (A) the Board of Directors of Grace shall have
received customary opinions of a nationally recognized
investment banking or appraisal firm in form and substance
reasonably satisfactory to such Board to the effect that,
after giving effect to the transactions set forth in Ar-
ticle II hereof, neither Grace nor New Grace and Grace--
Conn. will be insolvent (such opinions to be dated as of
the date of the Merger Agreement, the date the Board of
Directors of Grace declares the Distribution and the Dis-
tribution Date) and (B) the financial condition of each of
Grace and Grace-Conn. satisfies the requirements of Sec-
tion 170 of the Delaware General Corporation Law and Sec-
tion 33-687 of the Connecticut Business Corporation Act,
respectively, such that the distribution of the common
stock of Packco to Grace by Grace-Conn. and the Distribu-
tion may be effected without violating such Sections, and
the Board of Directors of Grace and the Board of Directors
of Grace-Conn. shall in good faith have determined that
such requirements have been satisfied; and

(x)  the transactions contemplated hereby shall be in
compliance with all applicable federal and state securi-
ties laws.

(b)  Any determination made by the Board of Directors
of Grace or Grace-Conn. on behalf of such party hereto prior to
the Distribution Date concerning the satisfaction or waiver of
any or all of the conditions set forth in this Section shall be
conclusive.

SECTION 8.02  Use of Grace Name and Mark.  Grace ac-
knowledges that Grace-Conn. shall own all rights in the "Grace"
name and logo and related tradenames and marks.  Effective at
the Distribution Date, Grace shall change its name to a name
that does not use the word "Grace" or any variation thereof and
shall itself, and shall cause each member of the Packco Group
to, cease all use of the "Grace" name as part of any corporate
name.  As promptly as practicable after the Distribution Date,
Grace shall, and shall cause each member of the Packco Group

- 43 -

to, cease all other use of the "Grace" name and logo and re-
lated tradenames and marks, *provided* that Grace may use inven-
tory including any such name, logo, tradenames or marks in ex-
istence as of the Distribution Date.  Grace shall cause the
Packco Group to use such names, logos and marks during such
transition period only to the extent consistent with past prac-
tice and as Grace reasonably believes is appropriate, and dur-
ing the period of such usage Grace shall cause the Packco Group
to maintain the same standards of quality with respect to such
names, logos and marks as previously exercised.  No such mate-
rial shall be used by the Packco Group after the six-month an-
niversary of the Distribution Date.

    SECTION 8.03  Complete Agreement.  This Agreement,
the Exhibits and Schedules hereto and the agreements and other
documents referred to herein shall constitute the entire agree-
ment between the parties hereto with respect to the subject
matter hereof (other than the Merger Agreement and the sched-
ules and exhibits thereto) and shall supersede all previous
negotiations, commitments and writings with respect to such
subject matter.

    SECTION 8.04  Expenses.  Except as otherwise specifi-
cally provided herein or in any other Transaction Agreement,
New Grace shall bear all costs and expenses (including all Debt
Costs, Adjusted Foreign Transfer Taxes, Severance Costs and
losses of benefits) incurred by Grace, New Grace and/or any
members of their respective Groups (collectively, the "Transac-
tion Costs") in connection with the transactions contemplated
by this Agreement and the Other Agreements (including the Con-
tribution (and the related transfers, separations and/or al-
locations of Assets and Liabilities), the Intragroup Spinoff,
the Distribution and the Recapitalization)); *provided* that
Grace (for the account of Newco after the Merger) agrees to
bear:  (i) the lesser of $50 million and 37% of the aggregate
amount of all Debt Costs, Adjusted Foreign Transfer Taxes and
Severance Costs; (ii) the lesser of $10 million and 37% of all
other Transaction Costs (excluding any Debt Costs, Adjusted
Foreign Transfer Taxes, Severance Costs and costs and expenses
payable by New Grace or Grace pursuant to Section 6.12 of the
Merger Agreement) and (iii) the fees and costs incurred in con-
nection with the Grace Credit Agreement.  "Severance Costs"
means the costs associated with the termination in connection
with the transactions contemplated hereby (including the Merg-
er) of employment of employees of Grace and Grace-Conn. located
at the Grace corporate headquarters.  To the extent Transaction
Costs are not included in the New Grace Capital Contribution,
Newco or New Grace shall promptly pay its share of any such
costs upon receipt of reasonable documentation relating to such
costs.  Appropriate payment shall be made between the parties

- 44 -

in respect of Adjusted Foreign Transfer Taxes on the Distribution Date so that Adjusted Foreign Transfer Taxes are borne in the proportions described above in this Section 8.04. Appropriate payment shall be made between the parties in respect of Adjusted Foreign Transfer Taxes and the amount calculated pursuant to clause (c) of the definition of "New Grace Capital Contribution" to the extent that such amounts estimated as of the Distribution Date may be recalculated in a more accurate manner. New Grace agrees that it shall pay, or cause Grace-Conn. to pay, all amounts payable by New Grace pursuant to Section 6.12(a) of the Merger Agreement. Any amount paid by one party to the other under this Agreement in respect of Transaction Costs shall be treated, for tax purposes, as an adjustment to the portion of the New Grace Capital Contribution contributed from Grace to New Grace.

SECTION 8.05  Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (other than the laws regarding choice of laws and conflicts of laws that would apply the substantive laws of any other jurisdiction) as to all matters, including matters of validity, construction, effect, performance and remedies.

SECTION 8.06  Notices.  All notices, requests, claims, demands and other communications hereunder shall be in writing and shall be given (and shall be deemed to have been duly given upon receipt) by delivery in person, by standard form of telecommunications, by courier, or by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

If to Grace or any member of the Packco Group:

Sealed Air Corporation
Park 80 East
Saddle Brook, New Jersey  07663
Attention:  President
Fax:  (201) 703-4152

and

Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017
Attention:  Christopher Mayer, Esq.
Fax:  (212) 450-4800

- 45 -

If to New Grace or any member of the New Grace Group:

W. R. Grace & Co.
One Town Center Road
Boca Raton, Florida  33486
Attention:  Secretary
Fax:  (561) 362-1970

with a copy to:

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York  10019
Attention:  Andrew R. Brownstein, Esq.
Fax:  (212) 403-2000

or to such other address as any party hereto may have furnished to the other parties by a notice in writing in accordance with this Section.

SECTION 8.07  Amendment and Modification.  This Agreement may be amended, modified or supplemented only by a written agreement signed by all of the parties hereto and subject to the reasonable consent of SAC.

SECTION 8.08  Successors and Assigns; No Third-Party Beneficiaries.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their successors and permitted assigns, but neither this Agreement nor any of the rights, interests and obligations hereunder shall be assigned by any party hereto without the prior written consent of the other parties.  Except for the provisions of Sections 4.02 and 4.03 relating to indemnities, which are also for the benefit of the Indemnitees, this Agreement is solely for the benefit of the parties hereto and their Subsidiaries and Affiliates and is not intended to confer upon any other Persons any rights or remedies hereunder.

SECTION 8.09  Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

SECTION 8.10  Interpretation.  (a)  The Article and Section headings contained in this Agreement are solely for the purpose of reference, are not part of the agreement of the parties hereto and shall not in any way affect the meaning or interpretation of this Agreement.

- 46 -

(b)    The parties hereto intend that the Distribution shall be a distribution pursuant to the provisions of Section 355 of the Code, so that no gain or loss shall be recognized for federal income tax purposes as a result of such transaction, and all provisions of this Agreement shall be so interpreted.  The parties hereto do not intend to submit the Distribution to the Internal Revenue Service for a private letter ruling with respect to such nonrecognition, and any ultimate ruling or decision that any gain or loss should be recognized for federal income tax purposes shall not permit a rescission or reformation of this Agreement or transactions contemplated hereby.

SECTION 8.11  Severability.  If any provision of this Agreement or the application thereof to any person or circumstance is determined by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions hereof, or the application of such provision to persons or circumstances other than those as to which it has been held invalid or unenforceable, shall remain in full force and effect and shall in no way be affected, impaired or invalidated thereby, so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner adverse to any party.

SECTION 8.12  References; Construction.  References to any "Article," "Exhibit," "Schedule" or "Section," without more, are to Articles, Exhibits, Schedules and Sections to or of this Agreement.  Unless otherwise expressly stated, clauses beginning with the term "including" set forth examples only and in no way limit the generality of the matters thus exemplified.

SECTION 8.13  Termination.  Notwithstanding any provision hereof, following termination of the Merger Agreement, this Agreement may be terminated and the Distribution abandoned at any time prior to the Distribution Date by and in the sole discretion of the Board of Directors of Grace without the approval of any other party hereto or of Grace's shareholders. In the event of such termination, no party hereto or to any Other Agreement shall have any Liability to any Person by reason of this Agreement or any Other Agreement.

SECTION 8.14  SAC Reasonable Consent.  The parties hereto agree that any actions to be taken by Grace or New Grace under this Agreement that are not specifically required herein and that relate to Packco or the Packaging Business (including, without limitation, the transactions described in Article II) must be reasonably satisfactory to SAC.

- 47 -

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

W. R. GRACE & CO.

By: _____
    Name:  Larry Ellberger
    Title: Senior Vice President

W. R. GRACE & CO.-CONN.

By: _____
    Name:  Robert B. Lamm
    Title: Vice President

GRACE SPECIALTY CHEMICALS, INC.
   (to be renamed W. R. Grace & Co.)

By: _____
    Name:  W.B. McGowan
    Title: Senior Vice President

- 48 -

**Exhibit B**

EXECUTION COPY

TAX SHARING AGREEMENT

by and among

W. R. GRACE & CO.,

W. R. GRACE & CO.-CONN.

and

SEALED AIR CORPORATION

Dated as of March 30, 1998

## TAX SHARING AGREEMENT

This TAX SHARING AGREEMENT (this "Agreement"), dated as of March 30, 1998, by and among W. R. Grace & Co., a Delaware corporation ("Grace"), W. R. Grace & Co.-Conn., a Connecticut corporation and a wholly owned subsidiary of Grace ("Grace-Conn."), and Sealed Air Corporation, a Delaware corporation ("Sealed Air").

### RECITALS

WHEREAS, Grace, Packco Acquisition Corp., a Delaware corporation and a wholly owned subsidiary of Grace, and Sealed Air have entered into an Agreement and Plan of Merger (the "Merger Agreement");

WHEREAS, Grace, Grace-Conn. and Grace Specialty Chemicals, Inc., a Delaware corporation and a wholly owned subsidiary of Grace ("New Grace"), have entered into the Distribution Agreement;

AND WHEREAS, Grace, on behalf of itself and the Packco Group, and Grace-Conn., on behalf of itself and the New Grace Group, wish to provide for the allocation between the Packco Group and the New Grace Group of all responsibilities, liabilities and benefits relating to or affecting Taxes (as hereinafter defined) paid or payable by either of them for all taxable periods, whether beginning before, on or after the Distribution Date (as hereinafter defined) and to provide for certain other matters.

NOW, THEREFORE, in consideration of the premises, and of the representations, warranties, covenants and agreements set forth herein, the parties hereto hereby agree as follows:

### ARTICLE I.

### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the respective meanings assigned to them in the Distribution Agreement or the Merger Agreement. As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and the plural forms of the terms defined):

"Action":  as defined in Section 5.3(a).

"Active New Grace Businesses":  as defined in Section 5.2(b).

"Active Packco Business":  as defined in Section 5.1(b).

29845v19/03901.0005

"Adjusted Item":  as defined in Section 3.2(a)(v).

"Adjusted Party" means the party for the account of which is an Adjusted Item.

"Affiliated Group" means the affiliated group of which Grace is the common parent or any predecessor or successor thereto.

"Agreed Date":  as defined in Section 2.2(b).

"Code" means the Internal Revenue Code of 1986, as amended, and shall include corresponding provisions of any subsequently enacted federal tax laws.

"Conn Prepared Returns":  as defined in Section 2.2(a).

"Conn Prior Payments":  as defined in Section 3.2(c)(iii).

"Consistency/Basis Disagreement":  as defined in Section 2.2(b).

"Corresponding Item":  as defined in Section 3.2(a)(v).

"Corresponding Party" means the party for the account of which is a Corresponding Item.

"Del Prepared Returns":  as defined in Section 2.2(a).

"Discontinued Businesses":  shall mean (x) the can sealing and coating portion of the New Grace Business which portion is described in the proviso to the definition of the Packaging Business and (y) certain other businesses currently accounted for as discontinued operations.

"Distribution Date" means the date on which the Distribution occurs.  For purposes of this Agreement, the Distribution shall be deemed effective as of the close of business on the Distribution Date.

"Equity Securities" means any stock or other equity securities treated as stock for tax purposes, or options, warrants, rights, convertible debt, or any other instrument or security that affords any Person the right, whether conditional or otherwise, to acquire stock.

"Final Determination" means the final resolution of liability for any Tax for a taxable period (i) by a duly executed IRS Form 870 or 870-AD (or any successor forms thereto), on the date such Form is effective, or by a comparable form under the laws of other jurisdictions; except that a Form 870 or 870-AD or comparable form that reserves (whether by its terms or by operation of law) the right of the taxpayer to file a claim for

refund and/or the right of the taxing authority to assert a
further deficiency shall not constitute a Final Determination
with respect to the right so reserved; (ii) by a decision,
judgment, decree, or other order by a court of competent
jurisdiction, which has become final and unappealable; (iii) by a
closing agreement or accepted offer in compromise under
Section 7121 or 7122 of the Code, or comparable agreements under
the laws of other jurisdictions; (iv) by any allowance of a
refund or credit in respect of an overpayment of Tax, but only
after the expiration of all periods during which such refund may
be recovered (including by way of offset) by the jurisdiction
imposing Tax; or (v) by any other final disposition, including by
reason of the expiration of the applicable statute of limitations
or by mutual agreement of the parties.

"Foreign Cap" shall mean $3 million.

"Foreign Packco Subsidiary" means a Packco Subsidiary
organized in a foreign jurisdiction.

"Foreign Packco Tax Item" means a Tax Item of a Foreign
Packco Subsidiary arising in the Pre-Distribution Period
attributable to the Packaging Business conducted by such
Subsidiary other than any Tax Item of a Foreign Packco Subsidiary
arising as a result of a Foreign Transfer.

"Foreign New Grace Subsidiary" means a New Grace
Subsidiary organized in a foreign jurisdiction.

"Forwarding Party":  as defined in Section 4.1.

"Forwarding Responsibilities":  as defined in
Section 4.1.

"Hypothetical Pre-Distribution Tax":  as defined in
Section 2.2(d).

"Hypothetical Pre-Distribution Overall Tax Benefit":
as defined in Section 2.2(d).

"Indemnified Amount":  as defined in Section 4.1.

"Indemnitee":  as defined in Section 4.2(a).

"Indemnitor":  as defined in Section 4.2(a).

"Indemnity Issue":  as defined in Section 4.2(a).

"Interest":  as defined under "Taxes" below.

"IRS" means the Internal Revenue Service.

"New Grace Tax Item" means a Tax Item arising in the
Pre-Distribution Period attributable to (i) New Grace, Grace-

-3-

Conn., Packco, any Foreign New Grace Subsidiary, any member of
the Affiliated Group which was a member prior to the Distribution
Date or any member of the affiliated group for United States
federal income tax purposes of which W. R. Grace & Co., a New
York corporation, was the common parent or (ii) the New Grace
Business conducted by any Foreign Packco Subsidiary.

"Overall Tax Benefit" shall mean, for any taxable
period, the net operating loss, unused credits (taking into
account foreign tax credits when realized regardless of the
period for which the associated earnings and profits were earned)
and any other aggregate net unused Tax Benefit not used to reduce
Taxes for the period.

"Packco Prior Payments":  as defined in
Section 3.2(c)(iii).

"Packaging Tax Item" means a Tax Item attributable to
Sealed Air, any member of the Packco Group or otherwise relating
to the Packaging Business or the Packaging Assets that is not a
New Grace Tax Item or a Foreign Packco Tax Item.

"Payee":  as defined in Section 3.2(c).

"Payor":  as defined in Section 3.2(c).

"Post-Distribution Period" means the Post-Distribution
Taxable Periods and the portion of any Straddle Period beginning
on the date after the Distribution Date.

"Post-Distribution Taxable Period" means any taxable
period beginning after the Distribution Date.

"Pre-Distribution Period" means the Pre-Distribution
Taxable Periods and the portion of any Straddle Period ending on
the Distribution Date.

"Pre-Distribution Schedules":  as defined in
Section 2.2(b).

"Pre-Distribution Taxable Period" means any taxable
period ending on or before the Distribution Date

"Proceeding" shall mean any audit or other examination,
judicial or administrative proceeding relating to liability for
or refunds or adjustments with respect to Taxes.

"Recipient Group":  as defined in Section 4.1.

"Restriction Period" means the period beginning on the
date hereof and ending on the two-year anniversary of the
Effective Time.

"Reviewing Party":  as defined in Section 5.3(c).

-4-

"Ruling/Opinion Exception":  as defined in Section 5.1.

"Sealed Air Parties" means Sealed Air and each of its past, present or future Affiliates, other than any member of the Packco Group.

"Straddle Period" means a taxable period that includes, but does not end on, the Distribution Date.

"Substantial Authority":  as defined in Section 2.1.

"Tax Benefit" means any item of loss, deduction, credit or any other Tax Item which decreases Taxes paid or payable.

"Tax Deficiency" means an assessment of Taxes, as a result of a Final Determination.

"Tax Detriment" means any item of income, gain, recapture of credit or any other Tax Item which increases Taxes paid or payable.

"Tax-Free Status" means the qualification of the Distribution (i) as a transaction described in Section 355(a)(1) of the Code, (ii) as a transaction in which the stock distributed thereby is qualified property for purposes of Section 355(c)(2) of the Code and (iii) as a transaction in which each of Grace, Grace-Conn., Packco, New Grace and each member of the New Grace Group recognizes no income or gain.

"Tax Item" means any item of income, gain, loss, deduction, credit, recapture of credit or any other item which increases or decreases Taxes paid or payable, including an adjustment under Code Section 481 resulting from a change in accounting method.

"Tax Opinions" shall mean the tax opinions referred to in Section 7.1(e) of the Merger Agreement.

"Tax Refund" means a refund of Taxes as the result of a Final Determination.

"Tax Return" means any return, filing, questionnaire, information return or other document required to be filed, including requests for extensions of time, filings made with estimated tax payments, claims for refund and amended returns that may be filed, for any period with any taxing authority (whether domestic or foreign) in connection with any Tax or Taxes (whether or not a payment is required to be made with respect to such filing).

"Taxes" means all forms of taxation, whenever created or imposed, and whether of the United States or elsewhere, and whether imposed by a local, municipal, governmental, state, foreign, federation or other body, and, without limiting the

generality of the foregoing, shall include income, sales, use, ad valorem, gross receipts, trade, license, value added, franchise, transfer, recording, withholding, payroll, employment, excise, occupation, unemployment insurance, social security, business license, business organization, stamp, environmental, premium and property taxes, together with any related interest, penalties and additions to any such tax, or additional amounts imposed by any taxing authority (domestic or foreign) (such interest, penalties, additions and additional amounts, "Interest").

"Transaction Party":  as defined in Section 5.3(c).

## ARTICLE II.

### FILING OF TAX RETURNS

Section 2.1.  Manner of Filing.  All Tax Returns filed after the Distribution Date and the Pre-Distribution Schedules shall be prepared on a basis which is consistent with the consummation of the transactions as set forth in the Distribution Agreement, the Grace Tax Matters Certificate, the Sealed Air Tax Matters Certificate, the Tax Opinions and any opinions, rulings, agreements or written advice relating to Foreign Transfers (in the absence of a controlling change in law or circumstances) and shall be filed on a timely basis (including extensions) by the party responsible for such filing under this Agreement.  In the absence of a controlling change in law or circumstances, all such Tax Returns and Pre-Distribution Schedules shall also be prepared on a basis which is consistent with the treatment of each of the Foreign Transfers in the jurisdictions listed on Exhibit A hereto as a reorganization, pursuant to a plan of reorganization, within the meaning of Section 368(a)(1)(D) of the Code.  The Pre-Distribution Schedules and all Tax Returns in respect of a Pre-Distribution Taxable Period or portion, ending on the Distribution Date of any Straddle Period, that include any member of the New Grace Group or the Packco Group shall be prepared on the basis of substantial authority or on a reasonable basis with (if applicable) appropriate disclosure (each, "Substantial Authority"); provided, however, that such Schedules and Returns shall be prepared on a basis consistent with the elections (other than elections relating to carrybacks and carryforwards described in Section 3.3(a)), accounting methods, conventions and principles of taxation used for the most recent taxable periods of members of the New Grace Group for which Tax Returns involving similar Tax Items have been filed, to the extent that a failure to do so would result in a Tax Detriment, or a reduction in a Tax Benefit, to a member of the Packco Group, as long as such consistent position has Substantial Authority.  All Tax Returns in respect of a Post-Distribution Taxable Period or portion, beginning after the Distribution Date, of any Straddle Period, shall be prepared with Substantial Authority; provided, however, that such Returns shall be prepared on a basis consistent with the elections (other than elections relating to carrybacks and carryforwards described in Section 3.3(a)), accounting methods,

conventions and principles of taxation used for the most recent
taxable periods of members of the New Grace Group for which Tax
Returns involving similar Tax Items have been filed, to the
extent that a failure to do so would result in a Tax Detriment,
or a reduction in a Tax Benefit, to a member of the other Group,
as long as such consistent position has Substantial Authority.
In the event of a conflict with respect to a Straddle Period
between the requirements of the immediately preceding sentence
and the second preceding sentence, the second preceding sentence
shall prevail. Subject to the provisions of this Agreement, all
decisions relating to the preparation of Tax Returns shall be
made in the sole discretion of the party responsible under this
Agreement for such preparation. Grace shall provide Grace-Conn.
with copies of all Tax Returns filed after the Distribution Date
that relate to any member of the New Grace Group. Grace-Conn.
shall provide Grace with a copy of any portion of a Tax Return
necessary to confirm Grace-Conn.'s entitlement to payment
hereunder in respect of a carryback or refund.

      Section 2.2. <u>Pre-Distribution and Straddle Period Tax</u>
<u>Returns</u>.

      (a)  Grace shall prepare and file, or cause to be
prepared and filed, any Tax Returns required to be filed by a
member or members of the New Grace Group or the Packco Group for
any Pre-Distribution Taxable Period and any Straddle Period;
<u>provided</u>, <u>however</u>, that Grace-Conn. shall prepare and file, or
cause to be prepared and filed, any Tax Returns relating solely
to a member or members of the New Grace Group or their respective
assets or businesses (such Tax Returns to be prepared and filed,
or caused to be prepared and filed, by Grace, the "<u>Del Prepared</u>
<u>Returns</u>", and by Grace-Conn., the "<u>Conn Prepared Returns</u>",
respectively).

      (b)  With respect to any Del Prepared Return that has
not been filed as of the Distribution Date and relates to a Pre-
Distribution Taxable Period or a Straddle Period, Grace-Conn.
shall, 25 calendar days before the due date (including
extensions) for such Return, provide Grace with a schedule
(collectively, the "<u>Pre-Distribution Schedules</u>") detailing the
computation of (i) in the case of a Pre-Distribution Taxable
Period, the Tax and/or Overall Tax Benefit and (ii) in the case
of a Straddle Period, the Hypothetical Pre-Distribution Tax
and/or Hypothetical Pre-Distribution Overall Tax Benefit, in
either case, attributable to the member or members of the New
Grace Group or the Packco Group included in such Return.  Any
Pre-Distribution Schedule relating to a Pre-Distribution Taxable
Period shall be delivered to Grace in the form of a completed,
but unexecuted Tax Return.  If Grace so requests, Grace-Conn.
shall discuss with Grace the preparation of, and allow Grace
periodically to review major issues with respect to, any Pre-
Distribution Schedule.  In the event that Grace disagrees with
any Tax Item reflected (or anticipated to be reflected) on a Pre-
Distribution Schedule and demonstrates (by means of a written

-7-

explanation in sufficient detail to permit such conclusion to be verified) its conclusion that Grace-Conn. has failed to comply with the requirements of the third sentence of Section 2.1 hereof (a "Consistency/Basis Disagreement"), Grace-Conn. shall explain its calculation of such Tax Item within 14 days of receipt of Grace's written explanation. The parties shall attempt in good faith mutually to resolve any Consistency/Basis Disagreements prior to the due date for filing the relevant Tax Return. Notwithstanding any other provision of this Agreement, with respect to estimated Tax payments to a foreign governmental authority for the first quarter of 1998 that are due before the parties have agreed on the amount in connection therewith for which Grace-Conn. is responsible hereunder, (I) Grace shall estimate in good faith and in accordance with past practice and make such estimated Tax payment, (II) Grace shall promptly provide such estimate to Grace-Conn., (III) Grace-Conn. shall deliver to Grace the applicable Pre-Distribution Schedule reasonably promptly after the Distribution Date (provided that Grace and its Affiliates reasonably and promptly cooperate with Grace-Conn. in the preparation thereof), (IV) Grace-Conn. shall not be required to make any payment in respect of such estimated Taxes to Grace until five days after the date that the parties agree on such Pre-Distribution Schedule (the "Agreed Date") (and such payment shall not exceed the amount of such estimated Tax paid, shall otherwise be determined based on the Pre-Distribution Schedule as distinguished from the estimated Tax paid, and shall be made in immediately available funds), and (IV) such payment shall bear interest from the time that payment is due to the applicable governmental authority until the earlier of the date that payment is made by Grace-Conn. and five days after the Agreed Date at the rate of interest charged for Eurodollar or LIBOR loans under Grace-Conn.'s principal senior bank debt agreement. If such payment by Grace-Conn. is not made by the fifth day after the Agreed Date, then such payment shall bear interest from the fifth day after the Agreed Date until the date that payment is made by Grace-Conn. at the rate that is two percent in excess of the rate set forth in clause (IV) of the preceding sentence.

(c)  Whether or not any Consistency/Basis Disagreements or any other disagreements relating to a Tax Item on a Pre-Distribution Schedule have been resolved by the applicable due date, Grace shall (i) prepare the Del Prepared Returns on the basis of, and in a manner consistent with, the Pre-Distribution Schedules, (ii) provide Grace-Conn. with a copy of each Del Prepared Return 14 calendar days before such Return is filed and reflect any comments thereon provided in good faith by Grace-Conn. and (iii) provide Grace-Conn. with a copy of each Del Prepared Return two business days after such Return is filed.  In the event that any Consistency/Basis Disagreements relating to a Pre-Distribution Schedule have not been resolved prior to the filing of the relevant Tax Return, such disagreements shall be promptly resolved pursuant to Section 6.7 hereof.

-8-

(d)  The "<u>Hypothetical Pre-Distribution Tax</u>" shall mean the Tax that would have been due for the taxable period ending on the Distribution Date if the Distribution Date were the last day of the taxable period.  The "<u>Hypothetical Pre-Distribution Overall Tax Benefit</u>" shall mean the Overall Tax Benefit that would have arisen in the taxable period ending on the Distribution Date if the Distribution Date were the last day of the taxable period.  Such Tax or Overall Tax Benefit shall be computed by determining items of income, expense, deduction, loss and credit on a "closing of the books" basis, reflecting tax accounting principles as of the close of business on the Distribution Date.

Section 2.3.  <u>Post-Distribution Tax Returns</u>.  Any Tax Return for a Post-Distribution Taxable Period shall be the responsibility of the New Grace Group if such Tax Return relates solely to a member or members of the New Grace Group or their respective assets or businesses, and shall be the responsibility of the Packco Group if such Tax Return relates solely to a member or members of the Packco Group or Sealed Air or their respective assets or businesses.

ARTICLE III.

<u>PAYMENT OF TAXES</u>

Section 3.1.  <u>Allocation of Tax Liabilities With Respect to Unfiled Returns</u>.

(a)  All Taxes shall be paid by the party responsible under this Agreement for filing the Tax Return pursuant to which such Taxes are due; <u>provided</u>, <u>however</u>, that

(i)  in the case of Taxes due with respect to Del Prepared Returns for Pre-Distribution Taxable Periods or Straddle Periods, Grace-Conn. shall pay Grace the amount, if any, of the Tax or Hypothetical Pre-Distribution Tax, as the case may be, if any, reflected in the Pre-Distribution Schedule relating to such Tax Return attributable to the member or members of the New Grace Group or the Packco Group included in such Return (and in the case of the Business Tax and Real Estate Tax due to France or a political subdivision thereof (and other Taxes due to any jurisdiction based on analogous principles), with respect to Post-Distribution Periods in 1998, Grace-Conn. shall pay Grace the amount of any Tax liability attributable to the New Grace Business).  Such payment shall be made, at Grace-Conn.'s discretion, either in immediately available funds on the morning of the relevant date when payment is due to the governmental authority in respect of such Tax Return or, if not in immediately available funds, two business days prior to such due date.  Grace shall forward any such payment that it receives from Grace-Conn. to the appropriate taxing authority.

-9-

(ii) in the case of Del Prepared Returns for any taxable period, on the relevant date on which payment is due (or a refund is received) in respect of such Tax Return, Grace shall pay Grace-Conn. the amount, if any, of the actual reduction in Taxes, or the actual increase in the Tax refund, that would have been payable or receivable with respect to such Tax Return but for any Overall Tax Benefit (or Hypothetical Pre-Distribution Overall Tax Benefit) that is for the account of Grace-Conn. under Section 3.2(a)(iii), below. In the case of a payment by Grace in respect of a reduction in Taxes, such payment shall be made in immediately available funds on the morning of the relevant due date or, if not in immediately available funds, two business days prior to the due date.

(iii) the parties intend that, in implementing this Section 3.1(a), payment and reimbursement between the parties shall reflect the principles of Section 3.2(a).

(b) Notwithstanding anything to the contrary, any Tax Item resulting from any act or omission not in the ordinary course of business (other than transactions contemplated by this Agreement, the Distribution Agreement, the Merger Agreement or the Benefits Agreement) on the part of any member of the Packco Group or any of the Sealed Air Parties occurring on the Distribution Date after the Effective Time shall be deemed to arise in a taxable period which begins after the Distribution Date.

Section 3.2. <u>Indemnities; Redetermined Tax Liabilities</u>. Except as otherwise provided in Article V:

(a) <u>Indemnities</u>.

(i) Grace-Conn. shall be responsible for (w) any Tax for a Pre-Distribution Taxable Period (and any Hypothetical Pre-Distribution Tax for a Straddle Period) of Grace, Grace-Conn., Packco, any Foreign New Grace Subsidiary, any current or former member of the Affiliated Group which was a member prior to the Distribution Date or any current or former member of the affiliated group for United States federal income tax purposes of which W. R. Grace & Co., a New York corporation, was the common parent, (x) any Tax for a Pre-Distribution Taxable Period (and any Hypothetical Pre-Distribution Tax for a Straddle Period) of a Foreign Packco Subsidiary attributable to the Packaging Business reflected on a Tax Return filed by such Subsidiary on or before the Distribution Date or on a Pre-Distribution Schedule, (y) any Tax of any member of the New Grace Group or a Foreign Packco Subsidiary, in either case, to the extent attributable to the New Grace Business and (z) 75% (or if the Packco Group has borne an amount of Tax in respect of adjustments to Foreign Packco Tax Items (and fees and expenses in Proceedings relating to such adjustments) that exceeds the Foreign Cap, then 100%) of any increase in Tax of a member of the

-10-

Packco Group attributable to an adjustment to a Foreign Packco
Tax Item.

(ii)   Grace shall be responsible for any
Taxes (x) of any member of the Packco Group or otherwise relating
to the Packaging Business or the Packaging Assets (except to the
extent that Grace-Conn. is responsible for such Taxes pursuant to
clause (i) above) and (y) of any of the Sealed Air Parties,
whether arising before, on or after the Distribution Date.

(iii)   Any Overall Tax Benefit (or
Hypothetical Pre-Distribution Overall Tax Benefit) shall be for
the account of Grace-Conn. to the extent that such Overall Tax
Benefit (or Hypothetical Pre-Distribution Overall Tax Benefit) is
attributable to (w) Grace, Grace-Conn., Packco, any Foreign New
Grace Subsidiary, any current or former member of the Affiliated
Group which was a member prior to the Distribution Date or any
current or former member of the affiliated group for United
States federal income tax purposes of which W. R. Grace & Co., a
New York corporation, was the common parent, in each case, for
the Pre-Distribution Period, (x) the Packaging Business of a
Foreign Packco Subsidiary for the Pre-Distribution Period
reflected on a Tax Return filed by such Subsidiary on or before
the Distribution Date or on a Pre-Distribution Schedule (other
than the Foreign NOLs), (y) a Pre-Distribution Period of any
member of the New Grace Group or a Foreign Packco Subsidiary, in
either case, to the extent attributable to the New Grace Business
(other than the Foreign NOLs) or (z) any adjustment to a Foreign
Packco Tax Item.

(iv)   For purposes of determining the amount
for which Grace or Grace-Conn. is responsible for paying the
other party, or entitled to receive from the other party, in the
event of any adjustment, including a Final Determination, of a
Tax Item of a Foreign Packaging Subsidiary (other than a Tax Item
that arises as a result of a Foreign Transfer), Tax Items that
are clearly attributable to the Packaging Business or the New
Grace Business, respectively, shall be allocated to such Business
and Tax Items that are not so attributable shall be allocated in
the proportion that the earnings from operations of such Business
operated by such Subsidiary bears to the total earnings from
operations of such Subsidiary, as reflected in audited financial
statements for the most recent, as of the end of such taxable
period, full-year accounting period.  Tax Items so allocated
shall be treated for all purposes of this Agreement as
attributable to the Business to which they are allocated.

(v)   Timing Adjustments.  In the event of any
adjustment, including a Final Determination, of a Tax Item (the
"Adjusted Item") which results in a Tax Benefit or Tax Detriment
for the account of one party and a corresponding Tax Detriment or
Tax Benefit (the "Corresponding Item") for the account of the
other party, then (I) if the Corresponding Item is a Tax Benefit,
the Corresponding Party shall pay the Adjusted Party and (II) if

the Corresponding Item is a Tax Detriment, the Adjusted Party shall pay the Corresponding Party, in either case, for each taxable period in which a member of the Group of the party entitled to payment under this Section 3.2(a)(v) actually realizes the Tax Benefit, in the case of (I), or the Tax Detriment, in the case of (II), by reason of the adjustment, an amount equal to such realized Tax Benefit, in the case of (I), or realized Tax Detriment, in the case of (II), including interest (computed at a 5% annual rate) from the original due date (without extensions) for filing of the Return for such taxable period through the date of payment under this Section 3.2(a)(v).

(b)  Final Determinations.  In the case of any Final Determination regarding a Tax Return, any Tax Deficiency shall be paid to the appropriate taxing authority by, and any Tax Refund received from the appropriate taxing authority shall be paid to, the party which filed such Return; provided, however, that whether or not there is a Tax Deficiency or Tax Refund and whether or not a payment is required to or from the appropriate taxing authority, Grace shall make payments to, or receive payments from, Grace-Conn. based upon the following principles:

(i)  Grace-Conn. shall make a payment to Grace in an amount equal to (x) any increase in the Tax of any of the Sealed Air Parties or any member of the Packco Group resulting from any adjustment to a New Grace Tax Item and (y) 75% (or, if the Packco Group has borne an amount of Tax in respect of adjustments to Foreign Packco Tax Items (and fees and expenses in Proceedings relating to such adjustments) that exceeds the Foreign Cap, then 100%) of any increase in the Tax of any of the Sealed Air Parties or any member of the Packco Group resulting from any adjustment to a Foreign Packco Tax Item, in either case (x) or (y), together with any Interest relating thereto that is or has been imposed by the relevant taxing authority (or would have been imposed but for an offsetting Packaging Tax Item).

(ii)  Grace shall pay to Grace-Conn. an amount equal to (x) any decrease in the Tax of any of the Sealed Air Parties or any member of the Packco Group resulting from any adjustment to a New Grace Tax Item and (y) any decrease in the Tax of any of the Sealed Air Parties or any member of the Packco Group resulting from any adjustment to a Foreign Packco Tax Item, in either case (x) or (y), together with any Interest relating thereto that is or has been paid by the relevant taxing authority (or would have been paid but for an offsetting Packaging Tax Item).

(iii)  The parties intend that, in implementing this Section 3.2(b), payment and reimbursement between the parties shall reflect the principles of Section 3.2(a).

(iv)  Payments otherwise required to be made under this Section 3.2(b) with respect to a single Final

-12-

Determination shall be netted and offset against each other so that either Grace shall make a payment to Grace-Conn. or Grace-Conn. shall make a payment to Grace, but not both.

      (c)   <u>Calculation and Payment of Amounts</u>.

      (i)  All calculations and determinations required to be made pursuant to this Article III shall initially be made by the party obligated to make such payment (the "<u>Payor</u>") in its good faith.  If the party entitled to receive a payment (the "<u>Payee</u>") so requests, the Payor shall present its calculations and determinations to the Payee in writing.  The Payee shall be deemed to consent to such calculations and determinations unless the Payee notifies the Payor in writing within 30 days of receiving such calculations and determinations. If the Payee disagrees with the Payor's calculations and determinations, the parties shall attempt in good faith mutually to resolve the disagreement.  In the event that they cannot so resolve the disagreement, it shall be resolved promptly pursuant to Section 6.7 hereof.

      (ii)  For all tax purposes, the parties hereto agree to treat, and to cause their respective affiliates to treat, (x) any payment required to be paid to a member of the other Group by this Agreement as an adjustment to the portion of the New Grace Capital Contribution that is contributed from Grace to New Grace and (ii) any payment of interest or Taxes (other than U.S. Federal income taxes) by or to a taxing authority as taxable or deductible, as the case may be, to the party entitled under this Agreement to retain such payment or required under this Agreement to make such payment, in either case except as otherwise mandated by the law or a Final Determination.  In the event of such a Final Determination, the payment in question shall be adjusted to place the parties in the same after-tax position that they would have enjoyed absent such Final Determination.  Any payment required by this Agreement that is not made on or before the date required hereunder shall bear interest, from and after such date through the date of payment, at the rate that is two percent in excess of the rate of interest charged for Eurodollar or LIBOR loans under the principal senior bank debt agreement of the party required to make such payment.

      (iii)  Payment of any amount required to be made pursuant to this Article III as a result of a Final Determination shall become due and payable after such Final Determination has been made within ten business days of the receipt of written notice from the party entitled to receive such payment to the party required to make such payment.  Any amounts required to be paid in respect of Taxes or Overall Tax Benefits pursuant to this Article III shall be adjusted to avoid duplication of payments and to take into account the sum of any payments previously made by any member of the Packco Group on or prior to the Distribution Date or by Grace-Conn. or any other member of the New Grace Group at any time in respect of such

-13-

Taxes or Overall Tax Benefits (the "Conn Prior Payments") and the sum of any payments previously made by any member of the Packco Group after the Distribution Date in respect of such Taxes or Overall Tax Benefits (the "Packco Prior Payments"). Appropriate payments will be made between the parties in the event that the Conn Prior Payments or the Packco Prior Payments, respectively, exceed the amounts for which Grace-Conn. or Packco, respectively, is responsible under the principles of Section 3.2(a).

(d)   Other Tax Liabilities and Refunds.  Any Tax or Tax refund that is not otherwise covered by Section 3.1 or 3.2(b) shall be allocated, and payment shall be made by Grace-Conn. or Grace, using the principles of Sections 3.2(a); provided, however, that any Tax refund (whether or not governed by Section 3.1 or 3.2(b)) arising as a result of an adjustment of a Foreign Packco Tax Item shall be allocated in the same manner and to the same extent as Taxes and expenses in respect of adjustments of Foreign Packco Tax Items have been borne (it being agreed and understood that to the extent that the Foreign Cap has been exceeded, such refund shall be entirely for the benefit of Grace-Conn. and to the extent that refunds are shared 75% by Grace-Conn. and 25% by Grace the Foreign Cap shall be increased by the amount refunded to Grace).  Any Tax refund received by one party that is for the account of the other party shall be paid to such other party promptly upon receipt thereof.  Any Tax paid by one party that is the responsibility of the other party shall be reimbursed promptly by the other party.

Section 3.3.  Carrybacks and Refund Claims.  (a)  Any Tax refund resulting from the carryback by any member of the New Grace Group of any Tax Item arising after the Distribution Date to a Pre-Distribution Taxable Period or a Straddle Period shall be for the account of Grace-Conn., and Grace shall promptly pay over to Grace-Conn. any such Tax refund that it receives.  In the event that a member of the New Grace Group, on the one hand, and a member of the Packco Group or a Sealed Air Party, on the other hand, are each entitled to carryback a Tax Item to a Pre-Distribution Taxable Period or a Straddle Period, the respective Tax Items shall be utilized under the rules of applicable law (which shall be, in the case of carrybacks to such periods of the Affiliated Group and carrybacks under foreign or State law with respect to which is no applicable rule regarding the priority of such utilization, the rules contained in Treasury Regulation § 1.1502-21T).  Any election affecting the carryback or carryforward of any Tax Item of any member of the New Grace Group, or a payment to or by such a member under this Agreement in respect of a carryback or carryforward, including the elections under Section 172(b)(3) of the Code and Treasury Regulation §§ 1.1502-21T(b)(3) and 1.172-13(c) with respect to the taxable years of the Affiliated Group that begin on each of January 1, 1997, and January 1, 1998, shall not be made without the consent of Grace-Conn. and shall be made if Grace-Conn. so requests.

-14-

(b)  Grace-Conn. shall be permitted to file, and Grace shall fully cooperate with Grace-Conn. in connection with, any refund claim.  To the extent that such a refund claim (other than a claim arising from a carryback) does not result in a Tax refund (or would not result in a refund if a claim were filed) as the result of an offsetting Packaging Tax Item (including a Packaging Tax Item carried back to a Pre-Distribution Taxable Period or a Straddle Period), Grace shall remit to Grace-Conn. the amount of any decrease in Tax that results or would have resulted from such refund claim.

Section 3.4.  <u>Liability for Taxes with Respect to Post-Distribution Periods</u>.  Unless otherwise specifically provided in this Agreement or the Distribution Agreement, the New Grace Group shall pay all Taxes and shall be entitled to receive and retain all refunds of Taxes with respect to periods beginning after the Distribution Date which are attributable to the New Grace Business.  Unless otherwise provided in this Agreement, the Packco Group shall pay all Taxes and shall be entitled to receive and retain all refunds of Taxes with respect to periods beginning after the Distribution Date which are attributable to the Packaging Business.

ARTICLE IV.

INDEMNITY, COOPERATION AND EXCHANGE OF INFORMATION

Section 4.1.  <u>Breach</u>.  Grace-Conn. shall be liable for and shall indemnify, defend and hold harmless the Packco Indemnitees from and against, and Grace shall be liable for and shall indemnify, defend and hold harmless the New Grace Indemnitees from and against, any payment required to be made as a result of the breach by a member of the New Grace Group or the Packco Group, respectively, of any obligation under this Agreement.  If any member of the Packco Group or the New Grace Group, fails to comply in any respect whatsoever with any of its responsibilities under this Agreement relating to promptly forwarding to any member of the other Group (the "<u>Recipient Group</u>") any communications with and refunds received from any taxing authority ("<u>Forwarding Responsibilities</u>"), then Grace or Grace-Conn., as the case may be, (the "<u>Forwarding Party</u>") shall be liable for and shall indemnify and hold the New Grace Indemnitees or the Packco Indemnitees, as the case may be, harmless from and against any costs or expenses (including, without limitation, Taxes and reasonably incurred lawyers' and accountants' fees) ("<u>Indemnified Amount</u>") incurred by or imposed upon any member of the Recipient Group arising out of, in connection with or relating to such communication; <u>provided</u>, <u>however</u>, that the liability of the Forwarding Party with respect to any one such failure shall be equal to that portion of the Indemnified Amount that a member of the Recipient Group demonstrates is caused (directly or indirectly) by such failure.

Section 4.2.  Contests.  (a)  Whenever a party hereto
(the "Indemnitee") becomes aware of the existence of an issue
that could increase the liability for any Tax, or decrease the
amount of any refund, of the other party hereto or any member of
its Group or require a payment hereunder (an "Indemnity Issue"),
the Indemnitee shall in good faith promptly give notice to such
other party (the "Indemnitor") of such Indemnity Issue.  The
failure of any Indemnitee to give such notice shall not relieve
any Indemnitor of its obligations under this Agreement, except to
the extent that such Indemnitor or its affiliate is actually
materially prejudiced by such failure to give notice.

(b)  The Indemnitor and its representatives, at the
Indemnitor's expense, shall be entitled to participate (i) in all
conferences, meetings or proceedings with any taxing authority,
the subject matter of which is or includes an Indemnity Issue in
respect of a Pre-Distribution Period and (ii) in all appearances
before any court, the subject matter of which is or includes an
Indemnity Issue in respect of a Pre-Distribution Period.

(c)  Except as provided in Section 4.2(d), Grace-Conn.
shall have the right to decide as between the parties hereto how
any Indemnity Issue for a Pre-Distribution Taxable Period is to
be dealt with and finally resolved with the appropriate taxing
authority and shall control all Proceedings relating thereto.
Grace agrees to cooperate with Grace-Conn. in the settlement of
any such Indemnity Issue; provided, however, that Grace-Conn.
shall act in good faith in the conduct of such Proceedings and
shall keep Grace reasonably informed of any developments which
can reasonably be expected to affect adversely Grace.  Such
cooperation shall include permitting Grace-Conn. to litigate or
otherwise resolve any such Indemnity Issue.  It is expressly the
intention of the parties to this Agreement to take, and the
parties shall take, all actions necessary to establish Grace-
Conn. as the sole agent for Tax purposes of each member of the
Affiliated Group, as if Grace-Conn. were the common parent of the
Affiliated Group, with respect to all combined, consolidated and
unitary Tax Returns of the Affiliated Group for the Pre-
Distribution Taxable Periods.

(d)  The parties jointly shall represent the interests
of (i) the Affiliated Group in any Proceeding relating to any
Straddle Period and (ii) any Foreign Packco Subsidiary in any
Proceeding relating to any taxable period that involves an
Indemnity Issue.  Neither party shall settle any dispute relating
to any such period without the consent of the other party (which
consent shall not be unreasonably withheld); provided, however,
that if either party proposes a settlement and the other party
does not consent thereto, the nonconsenting party shall assume
control of the Proceeding (and bear all subsequently incurred
costs, fees and expenses relating thereto) and the respective
liabilities of the parties shall be determined pursuant to
Section 6.7 based on the magnitude and likelihood of success of
the issues involved in the Proceeding, the reasonableness of the

-16-

settlement offer, the expense of continuing the Proceeding and
other relevant factors. Any other disputes regarding the conduct
or resolution of any such Proceeding shall be resolved pursuant
to Section 6.7. All costs, fees and expenses paid to third
parties in the course of such Proceeding shall be borne by the
parties in the same ratio as the ratio in which, pursuant to the
terms of this Agreement, the parties would share the
responsibility for payment of the Taxes asserted by the taxing
authority in its claim or assessment if such claim or assessment
were sustained in its entirety; provided, however, that in the
event that any party hereto retains its own advisors or experts
in connection with any Proceeding, the costs and expenses thereof
shall be borne solely by such party.

Section 4.3.  Cooperation and Exchange of Information.

(a)  Grace shall, and shall cause each appropriate
member of the Packco Group to, prepare and submit to Grace-Conn.,
as soon as practicable, but in no event later than the date that
is 30 days after a request from Grace-Conn. (i) all information
as Grace-Conn. shall reasonably request to enable Grace-Conn. to
file any Conn Prepared Return or prepare any Pre-Distribution
Schedule (which information shall be provided in the form and of
the quality in which comparable information was provided prior to
the Distribution) and (ii) any Del Prepared Return (including any
amended return) for any year within the carryback or carryforward
period for an Overall Tax Benefit or Hypothetical Pre-
Distribution Overall Tax Benefit that is for the account of
Grace-Conn. or for any year with respect to which Grace is
entitled to a payment under Section 3.2(a)(v). Grace-Conn. shall
bear any out-of-pocket marginal expense paid by any member of the
Packco Group in preparing and submitting such information in
respect of a Pre-Distribution Schedule relating to a Pre-
Distribution Taxable Period, and the parties shall share equally
any such expenses in respect of a Pre-Distribution Schedule
relating to a Straddle Period.

(b)  Each party on behalf of itself and each member of
its Group, agrees to provide the other party and the members of
such party's Group with such cooperation and information as the
second party or its Group members shall reasonably request in
connection with the preparation or filing of any Tax Return, Pre-
Distribution Schedule or claim for refund not inconsistent with
this Agreement or in conducting any Proceeding in respect of
Taxes. Such cooperation and information shall include, without
limitation, (i) execution and delivery of a power of attorney by
Grace or any other member of the Packco Group to Grace-Conn. or
another member of the New Grace Group or designation of an
officer of Grace-Conn. or another member of the New Grace Group
as an officer of Grace or any other member of the Packco Group
for the purpose of signing Tax Returns, cashing refund checks and
conducting Proceedings if Grace-Conn. could not otherwise
exercise its rights under this Agreement with respect to such
Returns, refunds or Proceedings, (ii) promptly forwarding copies

-17-

of appropriate notices and forms or other communications received
from or sent to any taxing authority which relate to the
Affiliated Group, the Packaging Business or the New Grace
Business and (iii) providing copies of all relevant portions of
Tax Returns, accompanying schedules, related workpapers,
documents relating to rulings or other determinations by taxing
authorities, including, without limitation, foreign taxing
authorities, and records concerning the ownership and Tax basis
of property, which either party may possess. Each party shall
make, and shall cause the members of the Packco Group to make,
their employees and facilities available on a mutually convenient
basis to provide explanation of any documents or information
provided hereunder.

(c)   Grace and Grace-Conn. agree to retain all Tax
Returns, related schedules and workpapers, and all material
records and other documents as required under Section 6001 of the
Code and the regulations promulgated thereunder relating thereto
existing on the date hereof or created through the Distribution
Date, until the expiration of the statute of limitations
(including extensions) of the taxable years to which such Tax
Returns and other documents relate and until the Final
Determination of any payments which may be required in respect of
such years under this Agreement. Grace-Conn. and Grace agree to
advise each other promptly of any such Final Determination. Any
information obtained under this Section shall be kept
confidential, except as may be otherwise necessary in connection
with the filing of Tax Returns or claims for refund or in
conducting any audit or other proceeding.

(d)   If (i) any member of the Packco Group fails to
provide any information requested pursuant to Section 4.3(a) by
the dates and in the manner specified in Section 4.3(a) hereof or
(ii) with respect to information not requested pursuant to
Section 4.3(a) hereof, any member of either Group fails to
provide any information requested pursuant to this Section 4.3,
within a reasonable period, then the requesting party shall have
the right to engage a "Big Six" public accounting firm of its
choice to gather such information. Each party agrees upon two
business days' notice, in the case of a failure to provide
information pursuant to Section 4.3 hereof to permit any such
"Big Six" public accounting firm full access to all appropriate
records or other information in the possession of any member of
the party's Group during reasonable business hours, and promptly
to reimburse or pay directly all costs and expenses in connection
with the engagement of such public accountants.

(e)   If any member of either Group supplies information
pursuant to this Agreement and an officer of any member of the
other Group signs a statement or other document under penalties
of perjury in reliance upon the accuracy of such information and
so requests, then a duly authorized officer of the member
supplying such information shall certify, under penalties of
perjury, the accuracy and completeness of the information so

-18-

supplied. Grace agrees to indemnify and hold harmless each New Grace Indemnitee, and Grace-Conn. agrees to indemnify and hold harmless each Packco Indemnitee, from and against any cost, fine, penalty or other expense of any kind attributable to the gross negligence or willful misconduct of a member of the Packco Group, or New Grace Group, as the case may be, in supplying a member of the other Group with inaccurate or incomplete information.

ARTICLE V.

CERTAIN POST-DISTRIBUTION TRANSACTIONS

Section 5.1  Sealed Air and Packco Group Covenants.

Unless, in the case of any of Sections 5.1(a) through (f) below, Grace has obtained a ruling letter from the IRS or an opinion of nationally recognized counsel to Grace, in either case, to the effect that, without material qualification, such act or omission will not adversely affect the federal income tax consequences of the Distribution to any of Grace, Grace-Conn. or the stockholders of Grace-Conn., as set forth in the Tax Opinions, and the substance of, and basis for, such conclusion in such ruling or opinion is reasonably satisfactory to Grace-Conn. in its good faith solely with regard to preserving the Tax-Free Status of the Distribution (the "Ruling/Opinion Exception"):

(a)  No Sealed Air Party at any time nor any member of the Packco Group at any time after the Effective Time shall take any action, or fail or omit to take any action, that would cause any representation made in the Sealed Air Tax Matters Certificate or the Grace Tax Matters Certificate to be untrue in a manner that would have an adverse effect on the Tax-Free Status of the Distribution.

(b)  Until the first day after the Restriction Period, the Packco Group shall continue the active conduct of the Packaging Business (the "Active Packco Business").  The Packco Group shall not liquidate, dispose of, or otherwise discontinue the conduct of any material portion of the Active Packco Business.  The Packco Group shall continue the active conduct of the Packaging Business primarily through officers and employees of the Packco Group (and not through independent contractors).

(c)  Until the first day after the Restriction Period, no Sealed Air Party nor any member of the Packco Group shall sell or otherwise issue to any Person, or redeem or otherwise acquire from any Person (other than any member of the Packco Group), any Equity Securities of Grace or any other member of the Packco Group; provided, however, that (i) purchases that, in the aggregate, meet the requirements of Section 4.05(1)(b) of Revenue Procedure 96-30 shall not constitute a redemption or acquisition of stock of Grace for purposes of this Section 5.1(c), (ii) if required by law, any member of the Packco Group may issue a de minimis number of Equity Securities of such member to any person

-19-

in order to qualify such person to serve as an officer or
director of such member and (iii) Grace may issue, as
compensation for services or pursuant to the exercise of
compensatory stock options, Equity Securities of Grace that do
not exceed in the aggregate ten percent of the Equity Securities
of Grace.

(d)  Until the first day after the Restriction Period,
no Sealed Air Party nor any member of the Packco Group shall (i)
solicit any Person to make a tender offer for, or otherwise
acquire or sell, the Equity Securities of Grace, (ii) participate
in or support any unsolicited tender offer for, or other
acquisition, disposition or issuance of, the Equity Securities of
Grace or (iii) approve or otherwise permit any proposed business
combination or any transaction which, in the case of (i), (ii) or
(iii), individually or in the aggregate, together with the
transactions contemplated under the Distribution Agreement, the
Merger Agreement, the Benefits Agreement and this Agreement,
results in one or more Persons acquiring (other than in
acquisitions not taken into account for purposes of Section
355(e)) directly or indirectly stock representing a 50 percent or
greater interest (within the meaning of Section 355(e) of the
Code) in Grace.  In addition, no Sealed Air Party nor any member
of the Packco Group shall at any time, whether before or
subsequent to the expiration of the Restriction Period, engage in
any action described in clauses (i), (ii) or (iii) of the
preceding sentence if it is pursuant to an arrangement negotiated
(in whole or in part) prior to the Distribution, even if at the
time of the Distribution it is subject to various conditions, nor
shall any such Party or member take any action, or fail or omit
to take any action, that would cause Section 355(d) or (e) to
apply to the Distribution.

(e)  Until the first day after the Restriction Period,
no Sealed Air Party nor the members of the Packco Group shall
sell, transfer, or otherwise dispose of or agree to dispose of
assets (including, for such purpose, any shares of capital stock
of a Subsidiary) that, in the aggregate, constitute more than 60%
of the gross assets of Packco, nor shall they sell, transfer, or
otherwise dispose of or agree to dispose of assets (including,
for such purpose, any shares of capital stock of a Subsidiary)
that, in the aggregate, constitute more than 60% of the con-
solidated gross assets of the Packco Group.  The foregoing
sentence shall not apply to sales, transfers, or dispositions of
assets in the ordinary course of business.  The percentages of
gross assets or consolidated gross assets of Packco or the Packco
Group, as the case may be, sold, transferred, or otherwise
disposed of, shall be based on the fair market value of the gross
assets of Packco and the Packco Group as of the Effective Time,
and for this purpose, the values set forth in the Packaging
Business Disclosure Letter Balance Sheet shall be conclusive.

(f)  Until the first day after the Restriction Period,
neither Packco nor its Subsidiaries shall voluntarily dissolve or

liquidate or engage in any merger, consolidation or other re-
organization. The foregoing sentence shall not apply to trans-
actions in which Grace or Packco acquires another corporation,
limited liability company, limited partnership, general
partnership or joint venture solely for cash or other
consideration that· is not Equity Securities. Reorganizations of
Grace or Packco or their respective Subsidiaries with their
Affiliates, and liquidations of Packco's Affiliates, are not
subject to Section 5.1(b) or this Section 5.1(f) to the extent
not inconsistent with the structure necessary for the
Distribution to qualify for Tax-Free Status.

     (g)  Until the first day after the Restriction Period,
Grace shall furnish Grace-Conn. with a copy of any ruling request
that Sealed Air, Grace or any of their Affiliates may file with
the IRS and any opinion received that relates to or otherwise
reasonably could be expected to have an effect on the Tax-Free
Status of the Distribution.

     Section 5.2  <u>New Grace Covenants</u>.

     Unless, in the case of any of Sections 5.2(a) through
(e) below, Grace-Conn. has obtained a ruling letter from the IRS
or an opinion of nationally recognized counsel to Grace-Conn., in
either case, to the effect that, without material qualification,
such act or omission will not adversely affect the federal income
tax consequences of the Distribution to any of Grace, Grace-Conn.
or the stockholders of Grace-Conn., as set forth in the Tax
Opinions, and the substance of, and basis for, such conclusion in
such ruling or opinion is reasonably satisfactory to Grace in its
good faith solely with regard to preserving the Tax-Free Status
of the Distribution:

     (a)  No member of the New Grace Group shall take any
action, or fail or omit to take any action, that would cause any
representation made in the Sealed Air Tax Matters Certificate or
the Grace Tax Matters Certificate to be untrue in a manner that
would have an adverse effect on the Tax-Free Status of the
Distribution.

     (b)  Until the first day after the Restriction Period,
the New Grace Group shall continue the active conduct of one of
the Active New Grace Businesses. "<u>Active New Grace Businesses</u>"
shall mean each of the Grace Davison business and the Grace
Construction Business. The New Grace Group may dispose of,
liquidate or discontinue the conduct of the Grace Davison
business or the Grace Construction Products business if it
actively continues the conduct of the other. The New Grace Group
shall continue the active conduct of at least one of the Active
New Grace Businesses primarily through officers and employees of
the New Grace Group (and not through independent contractors).

     (c)  Until the first day after the Restriction Period,

-21-

no member of the New Grace Group shall sell or otherwise issue to
any Person, or redeem or otherwise acquire from any Person (other
than any member of the New Grace Group), any Equity Securities of
New Grace or any other member of the New Grace Group; provided,
however, that (i) purchases that, in the aggregate, meet the
requirements of Section 4.05(1)(b) of Revenue Procedure 96-30
shall not constitute a redemption or acquisition of stock of New
Grace for purposes of this Section 5.2(c), (ii) if required by
law, any member of the New Grace Group may issue a de minimis
number of Equity Securities of such member to any person in order
to qualify such person to serve as an officer or director of such
member and (iii) New Grace may, pursuant to shareholder-approved
equity compensation plans, issue, as compensation for services or
pursuant to the exercise of compensatory stock options, Equity
Securities of New Grace.

      (d)   Until the first day after the Restriction Period,
no member of the New Grace Group shall (i) solicit any Person to
make a tender offer for, or otherwise acquire or sell, the Equity
Securities of New Grace, (ii) participate in or support any
unsolicited tender offer for, or other acquisition, disposition
or issuance of, the Equity Securities of New Grace or (iii)
approve or otherwise permit any proposed business combination or
any transaction which, in the case of (i), (ii) or (iii), indivi-
dually or in the aggregate, together with the transactions
contemplated under the Distribution Agreement, the Merger Agree-
ment, the Benefits Agreement and this Agreement, results in one
or more Persons acquiring (other than in acquisitions not taken
into account for purposes of Section 355(e)) directly or in-
directly stock representing a 50 percent or greater interest
(within the meaning of Section 355(e) of the Code) in New Grace.
In addition, no member of the New Grace Group shall at any time,
whether before or subsequent to the expiration of the Restriction
Period, engage in any action described in clauses (i), (ii) or
(iii) of the preceding sentence if it is pursuant to an arrange-
ment negotiated (in whole or in part) prior to the Distribution,
even if at the time of the Distribution it is subject to various
conditions, nor shall any such member take any action, or fail or
omit to take any action, that would cause Section 355(d) or (e)
of the Code to apply to the Distribution.

      (e)   Until the first day after the Restriction Period,
no member of the New Grace Group shall sell, transfer, or other-
wise dispose of or agree to dispose of assets (including, for
such purpose, any shares of capital stock of a Subsidiary) that,
in the aggregate, constitute more than 60% of the gross assets of
New Grace, nor shall they sell, transfer, or otherwise dispose of
or agree to dispose of assets (including, for such purpose, any
shares of capital stock of a Subsidiary) that, in the aggregate,
constitute more than 60% of the consolidated gross assets of the
New Grace Group.  The foregoing sentence shall not apply to
sales, transfers, or dispositions of assets in the ordinary
course of business or to a sale, transfer or disposition of any
or all of the Discontinued Businesses and either of the Active

New Grace Businesses; provided, however, that in the event of a
sale, transfer or disposition of one of the Active New Grace
Businesses, the retained Active New Grace Business shall be
conducted by a member of the New Grace Group at substantially the
same level as on the Distribution Date.  The percentages of gross
assets or consolidated gross assets of New Grace or the New Grace
Group, as the case may be, sold, transferred, or otherwise
disposed of, shall be based on the fair market value of the gross
assets of New Grace and the New Grace Group as of the Effective
Time, and for this purpose, the values set forth in the
Registration Statements shall be conclusive.

(f)    Until the first day after the Restriction Period,
Grace-Conn. shall furnish Grace with a copy of any ruling request
that Grace-Conn. or any of its Affiliates may file with the IRS
and any opinion received that relates to or otherwise reasonably
could be expected to have an effect on the Tax-Free Status of the
Distribution.

Section 5.3.  Responsibility for Taxes.

(a)    Sealed Air and Grace agree to indemnify and hold
the Grace-Conn. Indemnitees harmless from and against all
Indemnifiable Losses resulting from (x) any Action which causes
the Distribution to fail to have Tax-Free Status or (y) the
Merger failing to qualify as a reorganization under Section 368
of the Code.  An "Action" shall mean any act or omission which
fails to comply with any of the representations in the Sealed Air
Tax Matters Certificate or the covenants in Section 5.1 and any
act or omission which would fail to comply with any of the
covenants in Section 5.1 but for compliance with the
Ruling/Opinion Exception.  An "Action" shall also include an
action or omission which would be a breach of the covenant
contained in the first sentence of Section 5.1(d), if such
covenant were in effect until the day which is five years after
the Effective Time instead of until the first day after the
Restriction Period.

(b)    Grace-Conn. agrees to indemnify and hold the
Packco Indemnitees harmless from and against any Tax resulting
from the failure of the Distribution to have Tax-Free Status,
except where such failure is attributable to an Action.

(c)    For purposes of Sections 5.1 and 5.2 hereof, when
a tax opinion or ruling of one party (the "Transaction Party") is
required to be reasonably satisfactory to the other party (the
"Reviewing Party"), the Reviewing Party at the request of the
Transaction Party shall designate nationally recognized counsel
to review such opinion or ruling without revealing the substance
of the underlying transaction to the Reviewing Party and the
concurrence of such outside counsel to the sufficiency of such
opinion or ruling shall constitute "reasonable satisfaction" to
the Reviewing Party for purposes of this Agreement.

Section 5.4.  Injunction.  The parties hereto agree
that the payment of monetary compensation would not be an
adequate remedy for a breach of the obligations contained in
Article V hereof, and each party consents to the issuance and
entry of an injunction against the taking of any action by it or
a member of its Group that would constitute such a breach;
provided, however, that the foregoing shall be without prejudice
to and shall not constitute a waiver of any other remedy either
party may be entitled to at law or at equity hereunder.

Section 5.5.  Distribution.  For purposes of this
Article V only, "Distribution" shall mean the contribution by
Grace-Conn. of assets and liabilities to Packco, the distribution
of cash by Packco to Grace-Conn., the distribution by Grace-Conn.
of the stock of Packco to Grace, the contribution of cash and the
stock of Grace-Conn. to New Grace, the loan from New Grace to
Grace-Conn. and the distribution by Grace of the stock of New
Grace to the shareholders of Grace, each as provided in the
Distribution Agreement.

ARTICLE VI.

MISCELLANEOUS

Section 6.1.  Expenses.  Unless otherwise expressly
provided in this Agreement, the Distribution Agreement or the
Merger Agreement, each party shall bear any and all expenses that
arise from their respective obligations under this Agreement.

Section 6.2.  Foreign Transfer Taxes.  Adjusted Foreign
Transfer Taxes shall be shared by the parties as provided in the
Distribution Agreement.  Audit adjustments and Final Determina-
tions of such Taxes shall be governed by the Distribution Agree-
ment.  This Agreement governs responsibilities of the parties
with respect to filing Tax Returns relating to Foreign Transfer
Taxes, paying Foreign Transfer Taxes reflected on such Tax
Returns to the applicable governmental authority and conducting
Proceedings relating to Foreign Transfer Taxes.  For purposes of
determining indemnity and reimbursement obligations of the
parties under this Agreement, Tax Items arising as a result of
the Foreign Transfers (but not Tax Items arising from any actual
distribution of Subsidiary Excess Cash) shall be disregarded, and
the Pre-Distribution Schedules shall not reflect such Tax Items.

Section 6.3.  Payments Paid or Received on Behalf of
Indemnitees; Right to Designate Payee.  Each of Grace-Conn. and
Grace shall be entitled to designate an Affiliate of such party
as payee with respect to any payment that would otherwise be made
to Grace-Conn. or Grace, respectively, under this Agreement.  Any
payment received by Grace-Conn. or Grace, respectively, or its
respective designees shall be received on behalf of the relevant
Grace-Conn. Indemnitees or Packco Indemnitees.

-24-

Section 6.4.  _Foreign Exchange Rate_.  If any amount required to be paid hereunder is determined by reference to a Tax, Tax refund, Tax Benefit or Tax Detriment that is denominated in a currency other than United States dollars, such payment shall be made in United States dollars and the amount thereof shall be computed using the Foreign Exchange Rate for such currency determined as of the date that such Tax is paid, such Tax refund is received or such Tax Benefit or Tax Detriment reduces or increases the amount of Tax or Tax refund that would otherwise be paid or received.

Section 6.5.  _Amendment_.  This Agreement may not be amended except by an agreement in writing, signed by the parties hereto.  Anything in this Agreement or the Distribution Agreement to the contrary notwithstanding, in the event and to the extent that there shall be a conflict between the provisions of this Agreement and the Distribution Agreement, the provisions of this Agreement shall control.

Section 6.6.  _Notices_.  All notices and other communi-cations hereunder shall be in writing and shall be delivered by hand including overnight business courier or mailed by registered or certified mail (return receipt requested) to the parties at the following addresses (or at such other addresses for a party as shall be specified by like notice) and shall be deemed given on the date on which such notice is received:

> (a)  To Grace-Conn. or any member of the New Grace Group:
>
> W. R. Grace & Co.-Conn.
> One Town Center Road
> Boca Raton, Florida  33486-1010
> Attention:  Secretary
> Fax:  (561) 362-1635

with a copy to:

> Wachtell, Lipton, Rosen & Katz
> 51 West 52nd Street
> New York, New York  10019
> Attention:  Andrew R. Brownstein, Esq.
> Fax:  (212) 403-2000

> (b)  To Grace or any member of the Packco Group:
>
> care of Sealed Air
> Park 80 East
> Saddle Brook, New Jersey  07663
> Attention:  President
> Fax:  (201) 703-4152

with a copy to:

Davis Polk & Wardwell
450 Lexington Ave.
New York, New York  10017
Attention:  Christopher Mayer, Esq.
Fax:  (212) 450-4800

Section 6.7.  Resolution of Disputes.  Any disputes
between the parties with respect to this Agreement regarding the
practice and preparation of returns or the calculation of amounts
shall be resolved by a "Big Six" public accounting firm whose
determination shall be conclusive and binding on the parties.
The fees and expenses of such firm shall be shared equally by
Grace-Conn. and Grace, except as otherwise provided herein.  Any
other disputes shall be resolved by a "Big Six" public accounting
firm or a law firm or by any other procedure that the parties may
choose.

Section 6.8.  Application to Present and Future
Subsidiaries.  This Agreement is being entered into by Grace-
Conn. and Grace on behalf of themselves and each member of the
New Grace Group and Packco Group, respectively.  This Agreement
shall constitute a direct obligation of each such member.  Grace-
Conn. and Grace hereby guarantee the performance of all actions,
agreements and obligations provided for under this Agreement of
each member of the New Grace Group and the Packco Group, respec-
tively.  Grace-Conn. and Grace shall, upon the written request of
the other, cause any of their respective Group members formally
to execute this Agreement.  This Agreement shall be binding upon,
and shall inure to the benefit of, the successors and assigns of
any of the corporations bound hereby.

Section 6.9  Term.  This Agreement shall commence on
the date of execution indicated below and shall continue in
effect until otherwise agreed to in writing by Grace-Conn. and
Grace, or their successors.

Section 6.10.  Titles and Headings.  Titles and head-
ings to Sections herein are inserted for the convenience of
reference only and are not intended to be a part or to affect the
meaning or interpretation of this Agreement.

Section 6.11.  Legal Enforceability.  Any provision of
this Agreement which is prohibited or unenforceable in any juris-
diction shall, as to such jurisdiction, be ineffective to the
extent of such prohibition or unenforceability without invalidat-
ing the remaining provisions hereof.  Any such prohibition or
unenforceability in any jurisdiction shall not invalidate or
render unenforceable such provision in any other jurisdiction.
Without prejudice to any rights or remedies otherwise available
to any party hereto, each party hereto acknowledges that damages
would be an inadequate remedy for any breach of the provisions of
this Agreement and agrees that the obligations of the parties
hereunder shall be specifically enforceable.

Section 6.12.   Governing Law.   This Agreement shall be governed by the laws of the State of Delaware.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

W. R. GRACE & CO.

By: _____
    Name:  Larry Ellberger
    Title: Senior Vice President


W. R. GRACE & CO.-CONN.

By: _____
    Name:  Robert B. Lamm
    Title: Vice President


SEALED AIR CORPORATION

By: _____
    Name:
    Title:

IN WITNESS WHEREOF, the parties have caused this
Agreement to be executed as of the date first above written.

W. R. GRACE & CO.

By: _____
    Name:
    Title:

W. R. GRACE & CO.-CONN.

By: _____
    Name:
    Title:

SEALED AIR CORPORATION

By: _____
    Name: William V. Hickey
    Title: President

-28-

Exhibit A

Argentina

Australia

Belgium

Brazil

Canada

Chile

Colombia

Germany

Hong Kong

Italy

Japan

Mexico

Netherlands

New Zealand

Poland

Russia

South Africa

Spain

Sweden

United Kingdom

Venezuela



## ALEXANDER FORBES

*Consulting Actuaries*

Robyn Kow
William M Mercer
10 South Wacker Drive
Chicago, Illinois

26 January 1998

Tel: 269 0760

**Fax 091 312 9027626**

Dear Robyn

### GRACE AFRICA PENSION FUND
### TRANSFER OF MEMBERS TO "PACKCO"

The Grace Africa Pension Fund is valued using the actuarial basis set out below.

In respect of past service liabilities (and Transfer Values), the liability for each member is the present value of the accrued benefits in terms of the Grace Africa Pension Fund Rules in respect of service prior to the effective date with no allowance for any future service deficit or surplus arising from future contribution shortfalls or excesses.

### Actuarial Assumptions

The valuation is conducted on the basis of the following assumptions:

1.  **Interest**

    It was assumed that the Fund would earn 15% per annum on its investments including capital appreciation. This rate was reduced to 5½% in respect of the period after retirement in order to make some allowance for increases to pensioners.

2.  **Mortality**

    | | | |
    |---|---|---|
    | Post-retirement | : | PA (90) ult. |
    | Pre-retirement | : | SA 72/77 ult (rated down three years for females). |

    ...../2

☎ P O Box 7472 08, Sandton, 2146
Alexander Forbes Place, 61 Katherine Street, Sandown. Telephone (011) 269-0000, Telefax (011) 269-3333. http://www.aforbes.co.za

A Division of Forbes Financial Services Group (Pty) Limited and Managers for Forbes Financial Services Group (Pty) Limited. Registration Number 69/22667 (12)
Actuaries
RC Brewer  GF Brown  RE Checker  JR Clark*  JCH Geyer  RI Gordon  MNJC Oakley  CW Herbert  GN V Kerrigan*  P Knowles  RJ Lambourey  LD Lowle  NJ Lloyd  PH Martin
A Ndaru**  EL Nowell  ID Peatrid  GJB Peter  AR Piennaar  T Smeyman  JNV Twomy  M van den Berg  LA van Zyl  H Walker  AD White  RFS Niland
FL Holmes
Directors of Forbes Financial Services Group (Pty) Ltd
* (Chairman & Managing Director)  RR Addison  DJ Bergman  GvR Oosterly  AGS Hofmayr  GN V Kerrigan*  LD Lowle  MT Maloale  PJJ van der Walt  JH Vickers  ** Zimbabwean

- 2 -

3.    <u>Salary Increases</u>

It was assumed that salary increments would be at a rate of 13,5% per annum.

4.    <u>Withdrawals</u>

It was assumed that withdrawals would be in accordance with the following table:

| Age Group | Annual Rate of Withdrawal | |
|---|---|---|
| | Males | Females |
| 20 – 24 | 15% | 20% |
| 25 – 29 | 10% | 15% |
| 30 – 34 | 7% | 10% |
| 35 – 39 | 4% | 6% |
| 40 – 44 | 2% | 3% |
| 45  + | Nil | Nil |

5.    <u>Proportion Married</u>

It was assumed that, at Normal Retirement Date, 90% of all members would be married to wives four years younger (males) or husbands four years older (females).

6.    <u>Early Retirements</u>

It has been assumed that all members who reach retirement age will retire on that date. No allowance has been made for ill-health early retirements in view of the existence of a reassured Disability Income Continuance Scheme.

7.    <u>Minimum Reserves</u>

For each Member on the transfer date, a minimum reserve will be set up equal to the member's withdrawal benefit at that date.

No credit will be taken for a Member's future contributions in excess of the cost of benefits accruing in the future.

8.    <u>Market Value Adjustment</u>

No market value adjustment will be required as it is the intention to allocate the appropriate assets and transfer them into whichever portfolio or portfolios the Sealed Air management require.

.../3

- 3 -

9.    **Calculation of Transfer Values**

The rationale and approach in calculating the transfer value to a Packco arrangement is to provide a proportion of the total assets in relation that the liabilities of the Packco members of the Grace Africa Pension Fund bear to the total liabilities of the Grace Africa Pension Fund.   The transfer value will consist of the transferring members' full actuarial reserves, determined on the basis of the methods and assumptions employed for the most recent statutory actuarial valuation of the Grace Africa Pension Fund enhanced by a proportion of the surplus as described above.

Assets equal to the transfer value (the total of the Packco members' share of the Grace Africa Pension Fund) will be segregated at the Transfer Date and maintained in a separate portfolio until such time as the local Packco Fund is established.     The transfer value will be increased by the yield on the segregated assets between the Transfer Date and the eventual date of transfer.

10.    **Pension Increases**

The W R Grace Pension Fund has granted increases in the past having regard for the Fund earnings and the inflation rate in South Africa.   These have been as high as 15% (1990 and 1992) and as low as 7% (1996).   The average since 1988 has been 11,11%.

Yours sincerely

**P N MARTIN**
*Fellow of the Institute of Actuaries*
*Fellow of the Faculty of Actuaries*
*Valuator of the Fund and employee of*
*Alexander Forbes Consulting Actuaries*





## Sedgwick Noble Lowndes

Sedgwick Noble Lowndes Limited
St Martin's House, 31-35 Clarendon Road, Watford, Hertfordshire WD1 1JA
Telephone 01923-246911 · Facsimile 01923-243228

**Private and Confidential**

Mr John Forgach
Senior Benefits Counsel
W R Grace & Co
One Town Center Road
Boca Raton
FL33486-1010

31 March 1998

Dear Mr Forgach

**Transfer of Cryovac from the Grace UK Pension Plan**

**Background**

The pension plan contains pension members, deferred members with entitlement to pensions payable in the future, and active members. The active members include employees who will be transferred to PackCo, a subsidiary of Sealed Air, and those who will remain with the new Grace companies which may well be renamed. The first group of active members includes those transferring to PackCo but who work outside the UK and have deferred pensions in the Grace Plan.

The deferred and pensioner members will not be split. They will remain in the existing plan, whose principal employer will become one of the continuing companies remaining in the Grace Group of Companies. It is intended to set up a mirror image plan to receive the assets and liabilities from the Grace UK Pension Plan for the Cryovac transferring members.

It is intended that the assets would be apportioned in proportion to the liabilities. Thus if the assets do not exactly match the liabilities - on most acceptable measures of funding the Grace UK Pension Plan has assets in excess of liabilities - then the share of assets attributed to each section would reflect this position.

The Transfer Amount at the Effective Date from the Grace UK Pension Plan in respect of the Cryovac members would, therefore, be the assets attributable to those members representing the proportion of the total assets which their past service liabilities represent as a proportion of the total liabilities.

Similarly the assets attributable to the other active employees, and all the deferred and pensioner members would remain behind in the Grace UK Pension Plan.

There will be an adjustment in relation to the "Time for Change" Programme. In accordance with a separate agreement, the cost of the improvement is to be met by Sealed Air, and thus the transfer amount will be adjusted as set out in the following paragraphs.

The new mirror image plan would be sponsored by PackCo, a subsidiary of Sealed Air.

A member of the Sedgwick Group
Registered office, Norwich House, Wellesley Road, Croydon CR9 3CB
Registered in England number 487058
Regulated by the Personal Investment Authority

Q:\WR\INCLUS\PLAC\PACTICOREVDXXMO-2.LLM

1



The proportion transferred out of the Grace Plan will be in accordance with Clause 15 (in particular 15(8)) of the Second Schedule of the Trust Deed of the Grace UK Pension Plan dated 24 February 1988.  Before the transfer takes place, the trustees must have the amount calculated in accordance with that Clause, and the Inland Revenue Pensions and Superannuation Office must give the consent for the bulk transfer to take place.  The members transferring would have given their consent to such a transfer, and a discharge of the ongoing Grace UK Pension Plan trustees from any further liability for their benefits.  In the event that this consent process takes place, no further certification by the Grace UK Pension Plan actuary is required.

## Effective Date

The intended effective date for the establishment of the Cryovac mirror image plan is 31 March 1998.  Members would start accruing benefits in respect of post transfer service in that plan from that date, and that date would be used as the effective date for calculations for the bulk transfer calculation.

## Determination of Transfer Amount as at the Effective Date

Liabilities will be calculated using the assumptions set out below for all members of the Plan.  Plan Salaries for those transferring active Cryovac members included in the "Time for Change" exercise will be their plan salaries at 31 March 1997 increased by the assumed rate of salary growth set out later in this letter, rather than actual salary.  Consent to transfer will be required.  Members who will have indicated that they do not want to transfer, will receive deferred benefit entitlements as if they were leaving active service on 31 March 1998.  Their liability will be calculated appropriately.  The Transfer Amount will be calculated as the appropriate portion of the total assets as described above, after deduction of the value as at 31 March 1998 of any bulk transfer values due to be paid out of the Grace Plan due to previous business sales.

## Asset Valuation

Assets for transfer will be calculated on a proportionate basis as described above.  There is, therefore, no reason for valuing assets in any other way at the effective date other than at market value.  The amount calculated for transfer at the effective date will be the relevant proportion of the market value of assets on that date.

## Adjustment between Effective Date and Asset Transfer Date

The Assets transferred shall be adjusted to reflect the period between Effective Date and Asset Transfer Date by multiplying the Transfer Amount as at the Effective Date by the FT-SE Actuaries All Share Total Return Index ("the Index") on the day before Asset Transfer Date and dividing by the Index on the day before the Effective Date.

The Value of Benefit will be calculated using the assumptions set out below.  These assumptions are consistent with those in the most recent funding valuation.

## Summary of Assumptions

| | | | |
|---|---|---|---|
| (a) | Investment return | : | 9.0% pa |
| (b) | Plan Salary increases | : | 7.0% pa |
| (c) | Pension Increase in Retirement | : | 4.0% pa on all pension up to State Pension Age and after State Pension Age on pension in excess of the GMP;<br>3.0% p.a. on GMP accrued after 6 April 1988;<br>0% p.a. on GMP accrued before 6 April 1988. |
| (d) | Revaluation of pension in excess of GMP after withdrawal up to Retirement | : | 4.5% p.a. |
| | Revaluation on GMP | : | 6½% p.a. |
| (e) | Pension commuted for cash | : | The maximum allowed in each case. |
| (f) | Mortality | : | PMA80 Table for males and PFA80 Table for females. |
| (g) | Marital status at death or retirement | : | 90% of male members and 75% of female members will be married. On average wives will be 3 years younger than the member, and husbands 2 years older. |
| (h) | Leaving Service | : | A specific allowance has been made; sample rates are given below: |

| Age | Men<br>% | Women<br>% |
|---|---|---|
| 20 | 15.0 | 15.0 |
| 25 | 10.4 | 18.4 |
| 30 | 6.9 | 12.4 |
| 35 | 3.5 | 5.6 |
| 40 | 1.7 | 2.1 |
| 45 | 0.6 | 1 8 |

| | | | |
|---|---|---|---|
| (i) | Early Retirements from active status | : | 20% of female members who joined after 1 October 1990 and all male members retire early at each age between 60 and 64. All other female members will retire at 60. No retirement at normal pension age. |
| (j) | Retirements of Deferreds | : | At Normal Retirement Age of member on exit. |

Yours sincerely

David B Martin
Fellow of the Faculty of Actuaries

**SCHEDULE B**
**CERTAIN NON-U.S. EMPLOYEES**

Part 1:

Terence J. Kennett
Lee Frot
Bruno Vicente
Peter Leyland
Frederic Amiet
Philippe Simon
Georges Ermakoff
Isabelle Bodet
Guy Brou
Jean Paragot
Frederic Barrier
Bruno Leret
Miereille Gallerne
Marie-France Mallinger
Didier Ladone

Part 2:

Cheryl Hubbard
Pauline Behan
Elaine Thorpe
Sarah Maud
David Line
Peter Cannon
Paul Bird
Leslie Daniel
Patricia Saunders
Gus Franck
Yves Barrault

Part 3:

See attached.

Part 3:

|      | Position             | Country   | (1) Severance |
|------|----------------------|-----------|---------------|
| (1)  | Factory Assistant    | Chile     | $    2,633    |
| (2)  | Factory Assistant    | Chile     | 2,600         |
| (3)  | Accounting Analyst   | Chile     | 4,667         |
| (4)  | Accounting Analyst   | Chile     | 5,000         |
| (5)  | Accounting Chief     | Chile     | 9,089         |
| (6)  | Collector            | Chile     | 4,618         |
| (7)  |                      |           | 28,588        |
|      |                      |           |               |
| (8)  | System Administrator | Mexico    | 10,000        |
| (9)  | Voice / Data         | Mexico    | 20,000        |
| (10) | Systems Analyst      | Argentina | 3,500         |
| (11) | Systems Analyst      | Argentina | 3,750         |
| (12) | Systems Analyst      | Brazil    | 18,139        |
| (13) | Systems Programer    | Brazil    | 9,237         |
| (14) |                      |           | 64,625        |
|      |                      |           |               |
| (15) | Total All            |           | $   93,213    |

**SCHEDULE C**
**CERTAIN EMPLOYEES AT DUNCAN, S.C.**

Jim Hansen
Henry Lyons

### SCHEDULE D
### CERTAIN RELOCATING EMPLOYEES

Clarence Wittenburg
Jerry Witkowski

**SCHEDULE E**

Robert Green, UK

**SCHEDULE F**
**CERTAIN EXPATRIATE EMPLOYEES**

Part 1. US Expatriates:

        Mark Becker
        Sean Dempsey
        Gary Hayes
        Betsy Kuo
        Chin-lin Lo
        Peter Luxemburger
        John Mark
        David Newsome
        James Oddo, Jr.
        Stephen Ostercamp
        M. Henry Piedra
        Phillip Su
        Kyle Tebbs

Part 2. Non-US "Inpatriates":

        Fernando Guzman
        Mauro Kernkraut
        Alejandro Nigro
        Amanda Wong
        Christopher Woodbridge

**Exhibit C**

EMPLOYEE BENEFITS ALLOCATION AGREEMENT

This EMPLOYEE BENEFITS ALLOCATION AGREEMENT (this "Agreement"), dated as of March 30, 1998, by and among W. R. Grace & Co., a Delaware corporation ("Grace"), W. R. Grace & Co.-Conn., a Connecticut corporation and a wholly owned subsidiary of Grace ("Grace-Conn."), and General Specialty Chemicals, Inc. (to be renamed W. R. Grace & Co.), a Delaware corporation and a wholly owned subsidiary of Grace ("New Grace").

RECITALS

A. *The Merger Agreement.* Grace and Sealed Air Corporation, a Delaware corporation ("SAC"), have entered into an Agreement and Plan of Merger, dated as of August 14, 1997 (the "Merger Agreement"), pursuant to which, at the Effective Time (as defined therein), a wholly owned subsidiary of Grace will merge with and into SAC, with SAC being the surviving corporation (the "Merger"), and Grace being renamed Sealed Air Corporation.

B. *The Distribution Agreement.* The Distribution Agreement dated as of March 30, 1997, by and among Grace, Grace-Conn. and New Grace (the "Distribution Agreement") and the Other Agreements (as defined in the Distribution Agreement) set forth certain transactions that SAC has required as a condition to its willingness to consummate the Merger, and the purpose of the Distribution Agreement is to make possible the Merger by divesting Grace of the businesses and operations to be conducted by New Grace and its subsidiaries, including New Grace-Conn.

C. *The Contribution.* Prior to the Effective Time, and subject to the terms and conditions set forth in the Distribution Agreement, Grace intends to cause the transfer to a wholly owned subsidiary of Grace-Conn. ("Packco") of certain assets and liabilities of Grace and its subsidiaries predominantly related to the Packaging Business (the "Contribution"), as contemplated by the Distribution Agreement and the Other Agreements.

D. *The Distribution.* Following the Contribution and prior to the Effective Time, subject to the conditions set forth in the Distribution Agreement, (i) the capital stock of Packco will be distributed to Grace, (ii) the capital stock of Grace-Conn. will be contributed to New Grace and (iii) all of the issued and outstanding shares of the common stock of New Grace (together with the New Grace Rights, "New Grace Common

Stock") will be distributed (the "<u>Distribution</u>") to the holders as of the Record Date of the common stock of Grace, par value $.01 per share ("<u>Grace Common Stock</u>"), other than shares held in the treasury of Grace, on a pro rata basis.

      E.  *This Agreement.*  This Agreement is one of the Other Agreements contemplated by the Distribution Agreement, and its purpose is to set forth the agreement of Grace, Grace-Conn. and New Grace with respect to certain matters relating to employees and employee benefit plans and compensation arrangements;

      NOW, THEREFORE, in consideration of the premises, and of the representations, warranties, covenants and agreements set forth herein, the parties hereto hereby agree as follows:

## ARTICLE I

## DEFINITIONS

      SECTION 1.01  **General.**  Capitalized terms used but not defined herein shall have the meanings set forth in the Distribution Agreement or the Merger Agreement, as applicable. As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

      *Agreement:*  has the meaning assigned to it in the preamble hereof.

      *ABO:*  has the meaning assigned to it in Section 4.01(b).

      *AICP:*  the Annual Incentive Compensation Program of Grace.

      *Alternate Payee:*  an alternate payee under a domestic relations order which qualifies under Section 414(p) of the Code and Section 206(d) of ERISA and which creates or recognizes an alternate payee's right to, or assigns to an alternate payee, all or a portion of the benefits payable to a participant under any Plan, or an alternate recipient under a medical child support order which qualifies under Section 609(a) of ERISA and which creates or recognizes the existence of an alternate recipient's right to, or assigns to an alternate recipient the right to, receive benefits for which a participant or beneficiary is eligible under any Plan.

-2-

*ASA:* has the meaning assigned to it in Section 4.01(b).

*Benefit Plan:* any Plan established, sponsored or maintained by any member of the Packco Group, any member of the New Grace Group, or any predecessor or affiliate of any of the foregoing, existing as of the Distribution Date or prior thereto, to which any member of the Packco Group or the New Grace Group contributes, has contributed, is required to contribute or has been required to contribute, on behalf of any employee of a member of the Packco Group or a member of the New Grace Group, or under which any employee of a member of the Packco Group or a member of the New Grace Group, former employee of a member of the Packco Group or a member of the New Grace Group, or any beneficiary or dependent thereof, is covered, is eligible for coverage or has benefits rights.

*Change in Control Severance Agreements:* the agreements listed on Schedule I hereto.

*Change in Control Severance Plan:* the Grace Change in Control Severance Program for U.S. Employees (April 3, 1996- April 3, 1998).

*Current Performance Period:* any three-year performance period under the Grace LTIP that begins before and ends after the Effective Time.

*Current Plan Year:* the plan year or fiscal year, to the extent applicable with respect to any Plan, during which the Distribution Date occurs.

*Cypress 401(k) Plans:* the Cypress Packaging, Inc. Union Employees 401(k) Pension Plan and the Cypress Packaging, Inc. 401(k) Retirement Plan.

*Deferred Compensation Plan:* the W. R. Grace & Co. Deferred Compensation Program.

*Distribution Agreement:* has the meaning assigned to it in the fourth paragraph hereof.

*Employee:* with respect to any entity, an individual who is considered, according to the payroll and other records of such entity, to be employed by such entity, regardless of whether such individual is, at the relevant time, actively at work or on leave of absence (including vacation, holiday, sick leave, family and medical leave, disability leave, military leave, jury duty, layoff with rights of recall, and any other leave of absence or similar interruption of active employment

-3-

that is not considered, according to the policies or practices of such entity, to have resulted in a permanent termination of such individual's employment), but excluding any individual who is, as of the relevant time, on long-term disability leave.

*Foreign Plan:* has the meaning assigned to it in Section 6.01.

*Grace:* has the meaning assigned to it in the first paragraph hereof.

*Grace Dependent Care Plan:* the W. R. Grace & Co. Dependent Care Plan.

*Grace LTIP:* the Grace Long Term Incentive Program.

*Grace Medical Expense Plan:* the W. R. Grace & Co. Health Care Reimbursement Account Plan.

*Grace Option:* an option to purchase shares of Grace Common Stock granted pursuant to any Grace Stock Incentive Plan.

*Grace Severance Pay Plan:* the W. R. Grace & Co. Severance Pay Plan for Salaried Employees, as amended effective July 1, 1996.

*Grace Stock Incentive Plans:* the Grace 1996 Stock Incentive Plan, the Grace 1994 Stock Incentive Plan, the Grace 1989 Stock Incentive Plan, the Grace 1986 Stock Incentive Plan, and the Grace 1981 Stock Incentive Plan.

*Hourly Non-Union Retirement Plan:* the W. R. Grace & Co.-Conn. Retirement Plan for Non-Union Employees of Subsidiary Corporations.

*Hourly SIP:* the W. R. Grace & Co. Hourly Employee Savings and Investment Plan.

*Insured Foreign Plan:* a Foreign Plan that provides retirement or pension benefits and that is funded through individually allocated insurance contracts, each of which is identified as such in the Packaging Business Disclosure Letter to the Merger Agreement.

*IRS:* the Internal Revenue Service.

*Local Actuary:* has the meaning assigned to it in Section 6.01.

-4-

*LTIP Awards:*  has the meaning assigned to it in Section 3(a) hereof.

*Newco Ratio:*  the amount obtained by dividing (i) the average of the arithmetic mean between the highest and lowest sales prices of a share of Grace Common Stock on the New York Stock Exchange Composite Tape on each of the five trading days immediately preceding the ex-dividend date for the Distribution, by (ii) the average of the arithmetic mean between the highest and lowest sales prices of a share of Newco Common Stock on the New York Stock Exchange Composite Tape on each of the five trading days beginning on the ex-dividend date for the Distribution.

*New Grace Benefit Plan:*  any Benefit Plan that is sponsored or maintained by a member of the New Grace Group as of the Distribution Date.

*New Grace Employee:*  any Employee who is allocated to the New Grace Group pursuant to Section 2.01 of this Agreement and who is not hired by any member of the Packco Group pursuant to Section 6.11(b) of the Merger Agreement.

*New Grace Participant:*  any individual who is a New Grace Employee or a beneficiary, dependent or Alternate Payee of such an individual.

*New Grace Ratio:*  the amount obtained by dividing (i) the average of the arithmetic mean between the highest and lowest sales prices of a share of Grace Common Stock on the New York Stock Exchange Composite Tape on each of the five trading days immediately preceding the ex-dividend date for the Distribution by (ii) the average of the arithmetic mean between the highest and lowest sales prices of a share of New Grace Common Stock on the New York Stock Exchange Composite Tape on each of the five trading days beginning on the ex-dividend date for the Distribution.

*Noninsured Foreign Pension Plan:*  a Foreign Plan that is a defined benefit pension plan and is not an Insured Foreign Plan, each Noninsured Foreign Pension Plan being identified as such in the Packaging Business Disclosure Schedule to the Merger Agreement.

*Packco Benefit Plan:*  any Benefit Plan that is sponsored or maintained by a member of the Packco Group following the Distribution Date.

*Packco Employee:*  any Employee who is allocated to the Packco Group pursuant to Section 2.01 of this Agreement or who is hired by any member of the Packco Group pursuant to Section 6.11(b) of the Merger Agreement.

-5-

*Packco Health Plan:* the Blue Cross Blue Shield Health Plan for Cryovac and Formpac Employees.

*Packco Hourly Non-Union Retirement Plan:* has the meaning assigned to it in Section 4.01(d).

*Packco Medical and Dependent Care Expense Plan:* the Health Care and Dependent Care Spending Account Plan for Cryovac and Formpac Employees.

*Packco Participant:* any individual who is a Packco Employee or a beneficiary, dependent or Alternate Payee of such an individual.

*Packco Savings Plan:* a Qualified Plan designated by Grace to receive a transfer of assets from the Hourly SIP and/or the Salaried SIP pursuant to Section 4.02(b).

*Pension Plan:* any Benefit Plan that is an "employee pension benefit plan" (within the meaning of section 3(2) of ERISA), whether or not that Plan is a Qualified Plan.

*Plan:* any bonus, incentive compensation, deferred compensation, pension, profit sharing, retirement, stock purchase, stock option, stock ownership, stock appreciation rights, phantom stock, company car, fringe benefit, leave of absence, layoff, vacation, day or dependent care, legal services, cafeteria, life, health, medical, accident, disability, workman's compensation or other insurance, severance, separation or other employee benefit plan, practice, policy or other arrangement of any kind (including, but not limited to, any "employee benefit plan" (within the meaning of section 3(3) of ERISA)).

*Qualified Plan:* any Benefit Plan that is an "employee pension benefit plan" (within the meaning of section 3(2) of ERISA) and which is intended to qualify under section 401(a) of the Code.

*Salaried Retirement Plan:* the W. R. Grace & Co. Retirement Plan for Salaried Employees.

*Salaried SIP:* the W. R. Grace & Co. Salaried Employees Savings and Investment Plan.

*Salary Protection Plan:* the W.R. Grace & Co. Executive Salary Protection Plan.

*Schurpack 401(k) Plan:* the Schurpack Employees 401(k) Thrift Plan.

-6-

*SERP:* the W. R. Grace & Co. Supplemental Executive Retirement Plan.

*Split Dollar Program:* the W. R. Grace & Co. Executive Split Dollar Life Insurance Program.

*Terminated Grace Employee:* any individual who is, as of the Distribution Date, a former Employee of any member of the New Grace Group or the Packco Group.

*Terminated Grace Participant:* a Terminated Grace Employee or a beneficiary, dependent or Alternate Payee of a Terminated Grace Employee.

*Termination Benefits:* has the meaning assigned to it in Section 2.02(a) hereof.

*Union Retirement Plan:* the Retirement Plan of W. R. Grace & Co.-Conn. Chemical Group (Cedar Rapids Plant).

*U.S. Welfare Plan:* a Welfare Plan other than a Welfare Plan that is maintained outside of the United States primarily for the benefit of individuals substantially all of whom are nonresident aliens with respect to the United States.

*Welfare Plan:* any Benefit Plan that is an "employee welfare benefit plan" (within the meaning of section 3(1) of ERISA).

## ARTICLE II

### TRANSFER OF EMPLOYEES; TERMINATION BENEFITS

SECTION 2.01  Transfer of Employees.  (a)  Grace and New Grace shall take all steps necessary or appropriate so that all of the Employees of Grace and its subsidiaries are allocated between the New Grace Group and the Packco Group in accordance with the principles set forth in the Section 2.01(b), and so that each individual who is so allocated to the Packco Group is, as of the Distribution Date, an Employee of a member of the Packco Group, and each other individual who is, as of the Distribution Date, an Employee of Grace or any of its Subsidiaries is an Employee of a member of the New Grace Group.

(b)  In making the allocation provided for in Section 2.01, Grace and New Grace shall allocate each Employee who is exclusively employed in the Packaging Business to the Packco Group and each Employee who is exclusively employed in the New Grace Business to the New Grace Group.  All other Employees

-7-

shall be allocated in a mutually agreeable manner that, to the extent possible, takes into account the Employees' expertise, experience and existing positions and duties and does not unreasonably disrupt either the Packaging Business or the New Grace Business and maximizes the ability of each of the Packco Group and the New Grace Group to manage and operate their respective businesses after the Distribution Date, taking into account the respective needs of such businesses as established by past practice.

SECTION 2.02  Change of Control Benefits; Termination Benefits.  (a)  No New Grace Employee and no Packco Employee shall be deemed, as a result of the steps called for by Section 2.01 or otherwise as a result of the consummation of the transactions contemplated by the Distribution Agreement and the Merger, to have become entitled to any benefits under any Benefit Plan, contract, agreement, statute, regulation or other arrangement that provides for the payment of severance pay, salary continuation, pay in lieu of notice, unused vacation pay, or similar benefits in connection with actual or constructive termination or alleged actual or constructive termination of employment (collectively, "Termination Benefits").  Without limiting the generality of the foregoing, none of the transactions contemplated by the Distribution Agreement and the Merger Agreement constitute a "change in control" for purposes of any Benefit Plan.  Grace shall take all steps necessary and appropriate so that any Change in Control Severance Agreement between Grace and any Packco Employee terminates before the Distribution Date.

(b)  All Liabilities (other than for Severance Costs as defined in Section 8.04 of the Distribution Agreement) relating to or arising out of claims made by or on behalf of New Grace Participants or Packco Participants for, or with respect to, Termination Benefits relating to the actual or constructive termination or alleged actual or constructive termination of employment of any New Grace Employee or Packco Employee with any member of the Packco Group or the New Grace Group, which claims arise as a result of the consummation of the transactions contemplated by the Distribution Agreement, shall be considered other Transaction Costs that are governed by clause (ii) of the first sentence of Section 8.04 of the Distribution Agreement.

(c)  Except as specifically provided otherwise in Section 2.02(b) above and in Section 8.04 of the Distribution Agreement, effective as of the Distribution Date, the New Grace Group shall assume or retain, as appropriate, all Liabilities relating to or arising out of claims made by or on behalf of New Grace Participants for, or with respect to, Termination

-8-

Benefits relating to the actual or constructive termination or alleged actual or constructive termination of employment of any New Grace Employee with any member of the Packco Group or the New Grace Group, whether before, on or after the Distribution Date.  In addition, the New Grace Group shall assume or retain, as appropriate, all Liabilities (including with respect to Packco Employees) pursuant to the Change in Control Severance Plan and the Change in Control Severance Agreements.

(d)    Except as specifically provided otherwise in Sections 2.02(b) and (c) above and in Section 8.04 of the Distribution Agreement, effective as of the Distribution Date, the Packco Group shall assume or retain, as appropriate, all Liabilities relating to or arising out of claims made by or on behalf of Packco Participants for, or with respect to, Termination Benefits relating to the actual or constructive termination or alleged actual or constructive termination of employment of any Packco Employee with any member of the Packco Group or the New Grace Group, whether before (in the case of constructive termination), on or after the Distribution Date.

ARTICLE III

INCENTIVE PLANS

SECTION 3.01  Grace LTIP.  (a)  The contingent awards for Current Performance Periods held by New Grace Participants and Packco Participants (such contingent awards, the "LTIP Awards") under the Grace LTIP shall be adjusted and paid in cash by New Grace in accordance with such methodology as New Grace determines in its sole discretion.

(b)    Effective as of the Distribution Date, the New Grace Group shall assume or retain, as appropriate, all Liabilities relating to or arising out of awards payable under the Grace LTIP.

SECTION 3.02  Grace Options.  (a)  New Grace shall assume and adopt, effective as of the Distribution Date, each of the Grace Stock Incentive Plans, with such changes as may be necessary to reflect the change in the issuer of awards thereunder and such other changes as New Grace shall, in its sole discretion, determine.  As soon as practicable after and effective as of the Distribution Date, all Grace Options that are then outstanding shall be adjusted or replaced as set forth in this Section 3.02, or in such other manner as the parties hereto shall agree.

-9-

(b)   Each such Grace Option that is held by a New
Grace Employee or a Terminated Grace Participant shall be re-
placed with an option (a "New Grace Option") to acquire a num-
ber of New Grace Common Shares that equals the number of shares
subject to such Grace Option immediately before such replace-
ment, times the New Grace Ratio (rounded up to the nearest
whole share), with a per-share exercise price that equals the
per-share exercise price of such Grace Option immediately be-
fore such replacement, divided by the New Grace Ratio (rounded
up to the nearest one hundredth of a cent).  Each New Grace
Option shall otherwise have the same terms and conditions as
the Grace Option it replaces, except that references to employ-
ment by or termination of employment with Grace and its affili-
ates shall be changed to references to employment by or termi-
nation of employment with New Grace and its affiliates.  Effec-
tive as of the Distribution Date, New Grace shall assume all
Liabilities relating to or arising under the New Grace Options
or the Grace Stock Incentive Plans.

(c)   Each such Grace Option that is held by a Packco
Employee shall be adjusted so that the number of Newco Common
Shares subject to such Grace Option equals the number of shares
subject to such Grace Option immediately before such adjust-
ment, times the Newco Ratio (rounded down to the nearest whole
share), and the per-share exercise price equals the per-share
exercise price of such Grace Option immediately before such
adjustment, divided by the Newco Ratio (rounded up to the near-
est whole cent).  Each Grace Option as so adjusted shall other-
wise have the same terms and conditions as were in effect be-
fore such adjustment.  Effective as of the Distribution Date,
Grace shall retain all Liabilities relating to or arising under
the Grace Options held by Packco Employees.

SECTION 3.03  Annual Incentive Compensation Plan.
(a)   New Grace shall pay, or cause to be paid by another member
of the New Grace Group, all bonuses earned by Packco Employees
and New Grace Employees for the 1997 calendar year under the
AICP, in accordance with the terms of the AICP as interpreted
by New Grace in its sole discretion.  Effective as of the Dis-
tribution Date, the New Grace Group shall assume all Liabili-
ties relating to or arising under the AICP.

(b)   Packco Employees shall not be eligible to earn
bonuses under the AICP for 1998 or any subsequent year.  How-
ever, if the Distribution Date occurs later than March 31,
1998, then Grace and New Grace shall use reasonable best ef-
forts to develop and implement an annual incentive program for
Packco Employees, the cost of which will be shared between the
New Grace Group and the Packco Group in a manner relating to

-10-

the relative portions of the 1998 calendar year that precede
and follow the Distribution Date.

## ARTICLE IV

### PENSION AND SAVINGS PLANS

SECTION 4.01  Retirement Plans and Supplemental Re-
tirement Plan.  (a)  Grace, New Grace and Grace-Conn. shall
take all steps necessary or appropriate so that, effective no
later than the Distribution Date:  (i) one or more members of
the New Grace Group are the sole sponsors of the Salaried Re-
tirement Plan, the SERP and the Hourly Non-Union Retirement
Plan; and (ii) one or more members of the Packco Group are the
sole sponsors of the Union Retirement Plan.  Such steps shall
include, without limitation, the appointment or reappointment
by New Grace (by action after the Distribution Date to approve
or ratify such appointment or reappointment) of all named fidu-
ciaries, trustees, custodians, recordkeepers and other fiducia-
ries and service providers to the Salaried Retirement Plan, the
SERP and the Hourly Non-Union Retirement Plan, and the appoint-
ment or reappointment by Grace of all named fiduciaries, trust-
ees, custodians, recordkeepers and other fiduciaries and ser-
vice providers to the Union Retirement Plan.

(b)  Effective as of the Distribution Date, the
Packco Employees shall cease accruing benefits under the Sala-
ried Retirement Plan, the SERP and the Hourly Non-Union Retire-
ment Plan.  As promptly as practicable following the Distribu-
tion Date, and effective as of the Distribution Date, Grace in-
tends to implement a program for Packco Employees who partici-
pated in the Salaried Retirement Plan before the Distribution
Date designed to substantially make up for any anticipated ma-
terial adverse impact on them resulting from the termination of
such participation as of the Distribution Date.  Such program
will assume that each such Packco Participant works as an em-
ployee until normal retirement (age 65) and that he or she will
achieve a reasonable investment return on his or her account in
the Sealed Air Corporation Profit Sharing Plan.  Upon the
implementation of such program by Grace, New Grace shall (i)
cause the Salaried Retirement Plan to be amended so that, ef-
fective immediately before the Distribution Date: (A) the ac-
crued benefit of each Packco Employee who is a participant
therein is increased by crediting such Packco Employee with an
additional year of service; (B) the accrued benefit of each
such Packco Employee who is at least 40 years old as of the
Distribution Date is also increased by an amount equal to the
lesser of (x) 13 percent of the amount of such accrued benefit
(after giving effect to the increase described in clause (A) of

-11-