EXHIBIT 14

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------X
In Re:                            Chapter 11

                                  Case No.

                                  01-01139 JKF
W.R. Grace & Co., et al.,

                                  (Jointly
            Debtors.              Administered)
---------------------------------X

\* \* \* CONFIDENTIAL \* \* \*

— — —

May 13, 2009

— — —

DEPOSITION of RICHARD FINKE, held at the offices of Kirkland & Ellis, 655 Fifteenth Street, N.W., Washington, DC, commencing at 9:32 A.M., on the above date, before Lisa Lynch, a Registered Merit Reporter, New Jersey Certified Court Reporter, License No. XI00825, and Certified Realtime Reporter

— — —

MAGNA LEGAL SERVICES, LLP

7 Penn Center, 8th Floor
1635 Market Street
Philadelphia, PA   19103

Page 2

```
 1   APPEARANCES:
 2
     DRINKER BIDDLE & REATH, LLP
 3   BY: MICHAEL F. BROWN, ESQUIRE
     One Logan Square
 4   18th and Cherry Streets
     Philadelphia, Pennsylvania 19103-6996
 5   (brownmf@dbr.com)
     Representing OneBeacon America Insurance
 6   Company, Seaton Insurance Company,
     Government Employees Insurance Company,
 7   Columbia Insurance Company f/k/a Republic
     Insurance Company
 8
 9   CAPLIN & DRYSDALE, CHARTERED
     BY: JEFFREY A. LIESEMER, ESQUIRE
10   One Thomas Circle NW
     Suite 1100
11   Washington, DD 20005
     202.862.7801
12   (jal@capdale.com)
     Representing Grace, Official Committee of
13   Asbestos Personal Injury Claimants ("ACC")
14
     KIRKLAND & ELLIS, LP
15   BY: BARBARA M. HARDING, ESQUIRE
         THEODORE L. FREEDMAN, ESQUIRE
16   655 Fifteenth Street, N.W.
     Washington, DC 20005-5793
17   202.879.5081
     (barbara.harding@kirkland.com)
18   (tfreedman@kirkland.com)
     Representing the Debtors
19
20   THE LAW OFFICES OF JANET S. BAER, P.C.
     BY: JANET S. BAER, ESQUIRE
21   70 West Madison Street
     Suite 2100
22   Chicago, Illinois 60602
     jbaer@jsbpc.com
23   Representing W.R. Grace
24
```

Page 3

```
 1   APPEARANCES: (continued)
 2   SIMPSON THACHER & BARTLETT, LLP
     BY: ELISA ALCABES, ESQUIRE
 3   425 Lexington Avenue
     New York, New York 10017-3954
 4   212.455.2846
     (ealcabes@stblaw.com)
 5   Representing Travelers Casualty and Surety
     Company
 6
 7   VORYS, SATER, SEYMOUR AND PEASE, LLP
     BY: WILLIAM J. POHLMAN, ESQUIRE*
 8       PHILIP DOWNEY, ESQUIRE*
     (*VIA TELECONFERENCE)
 9   52 East Gay Street
     Columbus, Ohio 43215
10   614.464.8349
     (wjpohlman@vorys.com)
11   Representing The Scotts Company, LLC
12
     LEWIS, SLOVAK & KOVACICH, PC
13   BY: TOM L. LEWIS, ESQUIRE
     P.O. Box 2325
14   723 Third Avenue
     Great Falls, Montana 59403
15   406.761.5595
     tom@lsklaw.net
16   Representing the Libby Claimants
17
     SPEIGHTS & RUNYAN
18   BY: DANIEL H. SPEIGHTS, ESQUIRE*
     (*VIA TELECONFERENCE)
19   200 Jackson Avenue East
     P.O. Box 685
20   Hampton, South Carolina 29924
     803.943.4444
21   (dspeights@speightsrunyan.com)
     Representing Anderson Memorial Hospital
22
23
24
```

Page 4

```
 1   APPEARANCES:(continued)
 2   MENDES & MOUNT, LLP
     BY: ALEXANDER MUELLER, ESQUIRE
 3   750 Seventh Avenue
     New York, New York 10019
 4   212.261.8296
     (alexander.mueller@mendes.com)
 5   Representing London Market Companies
 6
     FORD MARRIN ESPOSITO & WITNEYER & GLESER
 7   BY: ELIZABETH M. DeCRISTOFARO, ESQUIRE*
     (*VIA TELECONFERENCE)
 8   Wall Street Plaza
     New York, New York 10005-1875
 9   212.269.4900
     Representing Continental Casualty Company
10   and Continental Insurance Company
11
     BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
12   BY: MATTHEW I. KRAMER, ESQUIRE*
     (*VIA TELECONFERENCE)
13   200 South Biscayne Boulevard
     Suite 2500
14   Miami, Florida 33131-5340
     305.450.7246
15   (mkramer@bilzin.com)
     Representing Property Damage Committee
16
17   STROOCK & STROOCK & LAVAN, LLP
     BY: ARLENE G. KRIEGER, ESQUIRE*
18       LEWIS KRUGER, ESQUIRE*
     (*VIA TELECONFERENCE)
19   180 Maiden Lane
     New York, New York 10038-4982
20   212.806.5400
     (akrieger@stroock.com)
21   Representing Official Committee of
     Unsecured Creditors
22
23
24
```

Page 5

```
 1   APPEARANCES: (continued)
 2
     CROWELL & MORING, LLP
 3   BY: MARK D. PLEVIN, ESQUIRE
         NOAH S. BLOOMBERG, ESQUIRE
 4   1001 Pennsylvania Avenue, N.W.
     Washington, DC 20004-2595
 5   202.624.2913
     (mplevin@crowell.com)
 6   (nbloomberg@crowell.com)
     Representing Fireman's Fund Insurance
 7   (Surety Bond)
 8
     STEVENS & LEE, P.C.
 9   BY: MARNIE E. SIMON, ESQUIRE
     1818 Market Street, 29th Floor
10   Philadelphia, Pennsylvania 19103-1702
     215.751.2885
11   (mes@stevenslee.com)
     Representing Fireman's Fund Insurance
12
13   LAW OFFICES OF ALAN B. RICH
     BY: ALAN B. RICH, ESQUIRE
14   Elm Place, Suite 4620
     1401 Elm Street
15   Dallas, Texas 75202
     214.744.5100
16   (arich@alanrichlaw.com)
     Representing Property Damage PCR
17
18   CONNOLLY BOVE LODGE & HUTZ, LLP
     BY: JEFFREY C. WISLER, ESQUIRE
19   The Nemours Building
     1007 North Orange Street
20   P.O. Box 2207
     Wilmington, Delaware 19899
21   302.888.6528
     (jwisler@cblh.com)
22   Representing Maryland Casualty
23
24
```

Page 6

```
 1   APPEARANCES: (continued)
 2   ECKERT SEAMANS CHERIN & MELLOTT, LLC
     BY: EDWARD J. LONGOSZ, II, ESQUIRE
 3   1747 Pennsylvania Avenue, N.W.
     12th Floor
 4   Washington, DC 20006
     202.659.6619
 5   (elongosz@eckertseamans.com)
     Representing Maryland Casualty and Zurich
 6
 7   WILEY REIN, LLP
     BY: RICHARD A. IFFT, ESQUIRE
 8   1776 K Street NW
     Washington, DC 20006
 9   202.719.7170
     (rifft@wileyrein.com)
10   Representing Maryland Casualty and Zurich
11
     COZEN O'CONNOR
12   BY: JACOB C. COHN, ESQUIRE
     1900 Market Street
13   Philadelphia, Pennsylvania 19103-3508
     215.665.2147
14   (jcohn@cozen.com)
     Representing Federal Insurance Company
15
16   ORRICK HERRINGTON & SUTCLIFFE, LLP
     BY: PERI N. MAHALEY, ESQUIRE
17   Columbia Center
     1152 15th Street, N.W.
18   Washington, DC 20005-1706
     202.339.8516
19   (pmahaley@orrick.com)
     Representing PI Future Claimants'
20   Representative
21
     CUYLER BURK, P.C.
22   BY: ANDREW CRAIG, ESQUIRE
     4 Century Drive
23   Parsippany, New Jersey 07054
     973.734.3200
 4   (acraig@cuyler.com)
```

Page 7

```
 1   APPEARANCES: (continued)
 2   O'MELVENY & MEYERS LLP
     BY: TANCRED SCHIAVONI, ESQUIRE*
 3   (*VIA TELEPHONE)
     7 Times Square
 4   New York, New York 10036
     212.326.2267
 5   (tschiavoni@omm.com)
     Representing Arrowood Indemnity Company
 6
 7   WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
     BY: KEVIN J. MANGAN, ESQUIRE*
 8   (*VIA TELECONFERENCE)
     222 Delaware Avenue
 9   Suite 1501
     Wilmington, Delaware 19801
10   302.252.4361
     (kmangan@wcsr.com)
11   Representing State of Montana
12
     PEPPER HAMILTON, LLP
13   BY: LINDA J. CASEY, ESQUIRE*
     (*VIA TELECONFERENCE)
14   3000 Two Logan Square
     Philadelphia, Pennsylvania 19103
15   215.981.4000
     (caseyl@pepperlaw.com)
16   Representing BNSF Railway Company
17   KRAMER LEVIN NAFTALIS & FRANKEL, LLP
     BY: SARAH SCHINDLER-WILLAIMS, ESQUIRE*
18   (*VIA TELECONFERENCE)
     1177 Avenue of the Americas
19   New York, New York 10036
     212.715.9515
 0   (SSchindlerWilliams@kramerlevin.com)
     Representing the Equity Committee
21
22
23
24
```

Page 8

```
 1              INDEX
               EXAMINATION
 2
     Witness Name            Page
 3   RICHARD FINKE
 4      BY MR. BROWN          12,333
 5      BY MS. ALCABES        129
 6      BY MR. LEWIS          187
 7      BY MR. PLEVIN         265
 8      BY MR. WISLER         285
 9      BY MR. COHN           289
10      BY MR. MANGAN         296
11      BY MR. DOWNEY         305, 371
12      BY MR. SCHIAVONI      343
13      BY MR. SPEIGHTS       347
14
15           EXHIBITS
     EXHIBIT  DESCRIPTION         ID
16
     Exhibit 1  Notice of Deposition of   16
17      Debtors Pursuant to Rule
        30(b)(6)
18
     Exhibit 2  Document entitled W.R.    16
19      Grace/Confirmation Hearing
        30(b)(6) Deposition Notice
20
     Exhibit 3  SEC Form 8-K         25
21
     Exhibit 4  Exhibit 6 to Exhibit Book, 41
22      Asbestos Insurance
        Transfer Agreement
23
     Exhibit 5  Exhibit 19 to Exhibit    53
24      Book, Retained Causes of
```

Page 9

```
 1           EXHIBITS
     EXHIBIT  DESCRIPTION         ID
 2
 3   Exhibit 6  Exhibit 2 to Exhibit Book, 55
        Asbestos PI Trust Agreement
 4
     Exhibit 7  Exhibit 4 to Exhibit Book, 55
 5      Trust Distribution
        Procedures
 6
     Exhibit 8  First Amended Joint Plan  70
 7      of Reorganization
 8   Exhibit 9  Exhibit 5 to Exhibit Book, 92
        Schedule of Settled
 9      Asbestos Insurers Entitled
        to 524(g) Protection
10
     Exhibit    Settlement Agreement  98
11   10    Bates stamped OB 1 through
              33
12
     Exhibit    Travelers/Allstate    135
13   11    30(b)(6) deposition notice
14   Exhibit    Travelers 30(b)(6)    136
     12    supplemental deposition
15         notice
16   Exhibit    Grace/Aetna Asbestos   149
     13    Settlement Agreement dated
17         May 22, 1996
18   Exhibit    Exhibit 25 to Exhibit  178
     14    Book, CMO for Class 7A
19         Asbestos PD Claims
20
21
22
23
24
```

Page 10

DEPOSITION SUPPORT INDEX

Direction to Witness Not To Answer
Page Line    Page Line
30   2       37   12
37   17      39   8
39   15      369  1

Request For Production of Documents
Page Line    Page Line
(None)

Stipulations
Page Line    Page Line
(None)

Questions Marked
Page Line    Page Line
(None)

- - -

Page 11

1  RICHARD FINKE,
2      having been sworn by the Notary
3      Public of the States of New York
4      and New Jersey, was examined and
5      testified as follows:
6              - - -
7  EXAMINATION BY
8  MR. BROWN:
9      Q. Good morning, Mr. Finke.
10 My name is Michael Brown. I represent One
11 Beacon, Seaton, Geico and Republic for the
12 objecting insurance companies in the Grace
13 bankruptcy. You've been deposed several
14 times before, correct?
15     A. Yes, I have.
16     Q. Okay. So we can dispense
17 with the formalities of what a
18 deposition's all about?
19     A. Yes, we can.
20     Q. Okay.
21         MS. HARDING: Michael,
22     would you mind if I made a quick
23     statement on the record?
24         MR. BROWN: Sure.

Page 12

1         MS. HARDING: I just wanted
2     to make a statement on the record
3     that the debtors have designated
4     Mr. Finke to answer certain
5     appropriate questions related to
6     certain 30(b)(6) topics.
7         As we've indicated, Mr.
8     Finke will be available for seven
9     hours today. We've also designated
10    Mr. Hughes and Mr. LaForce to
11    answer other 30(b)(6) topic
12    questions. We are hoping and
13    expecting that the parties seeking
14    to ask questions have coordinated
15    so that we can end in seven hours
16    and we think it's a reasonable
17    expectation.
18        The debtors have reviewed
19    the deposition of Mr. Lockwood and
20    agree, in essence, with Mr.
21    Lockwood's answers with respect to
22    how the Plan operates and so we
23    think and are very hopeful that
24    there will not be a need to go

Page 13

1     further than seven hours to get to
2     the appropriate inquiry as to how
3     the Plan operates. So I just
4     wanted to get that on the record.
5         MR. BROWN: Okay.
6     Actually, that's helpful. Maybe I
7     could follow up with a question for
8     Mr. Finke.
9     Q. Mr. Finke, have you
10 reviewed Mr. Lockwood's Rule 30(b)(6)
11 deposition transcript?
12    A. Yes, I have.
13    Q. Okay. Is there anything
14 that you read in that transcript that you
15 disagreed with?
16    A. No, nothing of substance.
17    Q. Okay. How about anything
18 not of substance?
19    A. There are a few occasions,
20 I think, where I either would have worded
21 something differently or where I think Mr.
22 Lockwood may have been either in error --
23 might have been in error depending on
24 whether he was -- depending on the

Page 14

1  context. Let me give you one example of
2  that.
3     Q.  Sure.
4     A.  He, I think, made a
5  statement at one point where he equated
6  asbestos in place coverage or insurance
7  coverage with the asbestos insurance
8  reimbursement agreements. I believe he
9  said he thought they were the same thing,
10 and perhaps in substance or in concept
11 they are. I'm not an insurance lawyer,
12 but I know that under the Plan
13 definitionally the definition of asbestos
14 (sic) in place insurance coverage
15 specifically excludes asbestos
16 reimbursement agreements from the
17 definition.
18    Q.  Okay.
19    A.  Which would suggest they
20 are not the same.
21    Q.  All right. I'm going to
22 suggest that Miss Alcabes, or one of the
23 people whose issue that is, may want to
 1 follow up with you on that point.

Page 15

1     A.  Sure.
2     Q.  But let's pass on that.
3     Other than what you've just
4  described, is there anything else in Mr.
5  Lockwood's deposition transcript that the
6  debtors disagreed with?
7     A.  Nothing that comes to
8  mind.
9        MR. BROWN: Okay. Let me
10 have the first exhibit marked, and
11 can we go off the record for a
12 second.
13       (Off the record.)
14       (Notice of Deposition of
15 Debtors Pursuant to Rule
16 30(b)(6) marked for identification
17 as Exhibit Finke-1.)
18       (Document entitled W.R.
19 Grace/Confirmation Hearing 30(b)(6)
20 Deposition Notice marked for
21 identification as Exhibit
22 Finke-2.)
23 BY MR. BROWN:
24    Q.  Mr. Finke, I'm going to put

Page 16

1  before you two exhibits marked -- we're
2  using the term Finke 30(b)(6) 1 and Finke
3  30(b)(6) 2. For shorthand during the
4  deposition I'll just refer to them as
5  Finke-1 and Finke-2. Could you identify
6  Finke-1 for me, please?
7     A.  It is a Notice of
8  Deposition of Debtors Pursuant to Rule
9  30(b)(6) served by One Beacon, Seaton,
10 Geico and Columbia.
11    Q.  Going forward, it would be
12 more accurate to refer to Columbia as
13 Republic. I know it says Columbia there.
14 The date on here is April 28th, 2009 and
15 the site is Drinker Biddle & Reath's
16 offices but we obviously changed those by
17 agreement after this was scheduled.
18    Is it your understanding that
19 you're appearing here today in response to
20 this Rule 30(b)(6) notice?
21    A.  Yes.
22    Q.  And there were several
23 others served on you as well?
24    A.  Correct.

Page 17

1     Q.  Correct, all right.
2     If you look at what's been marked
3  as Finke-2, can you identify that for
4  me?
5     A.  It is a chart 18 pages long
6  entitled W.R. Grace/Confirmation Hearing
7  30(b)(6) Deposition Notice Witness
8  Designations.
9     Q.  Okay. And is it your
10 understanding that this document was
11 prepared by your counsel?
12    A.  Yes, that's my
13 understanding.
14    Q.  And have you seen it before
15 today?
16    A.  Yes.
17    Q.  Okay. And am I correct
18 that it basically lists all the various
19 topics from all the 30(b)(6) notices that
20 were served on Grace and then designates
21 one of, I believe, three individuals to
22 testify about the various topics?
23    A.  I would agree that it
24 includes all 30(b)(6) notices that have

Page 114

1  they're also Class 6 claims, correct?
2      A.   Correct.
3      Q.   And indemnified insurer TDP
4  claims are also Class 6 claims, correct?
5      A.   I believe so but I'm going
6  to go back and reread the definition
7  again.
8      Q.   Okay.
9      (The witness reviews the document.)
10     A.   Yes.
11     Q.   Can you describe for me the
12 factual basis for putting all of those
13 claims in the same class?
14         MS. HARDING: Object to
15     form. Calls for -- to the extent
16     that it calls for a legal
17     conclusion and --
18     A.   I would refer to the --
19         THE WITNESS: I'm sorry.
20         MS. HARDING: -- and
21     attorney-client work product
22     privileges to the extent that they
23     apply. But if you can still
24     answer, go ahead.

Page 115

1      A.   My answer would be to refer
2  to the terms of the Plan and the
3  definitions. The definitions of asbestos
4  PI claims would incorporate the factual
5  basis of those claims.
6      Q.   All right. I'm asking a
7  broader question, I think, Mr. Finke, and
8  I'm not asking for a legal conclusion.
9          MS. HARDING: Okay.
10         And --
11     Q.   I'm asking for what is it
12 that's factually similar about these
13 claims that warrants in the debtor's view
14 placing them all into Class 6.
15         MS. HARDING: Object to
16     form.
17         MR. LIESEMER: Object to
18     form.
19         MS. HARDING: Foundation
20     and it...
21     A.   I may be misunderstanding
22 your broad question, but I have to again
23 respond by referring to the factual
24 circumstances laid out in the definition

Page 116

1  of asbestos PI claims. It is those --
2  those set of circumstances that result in
3  all of these claims being classified as
4  Class 6 claims.
5      Q.   What are the similarities
6  between the claims; that is, between the
7  personal injury claims and the contractual
8  indemnity claims, if any?
9          MS. HARDING: Object to
10     form.
11         MR. LIESEMER: Object to
12     form.
13     A.   Assuming you're referring
14 to contractual indemnity claims arising
15 out of, directly or indirectly, an
16 asbestos PI claim, the similarity is that
17 the underlying claim is by a person who
18 alleges -- and I'm just paraphrasing
19 because I don't want to read this entire
20 definition -- but alleges that he has
21 contracted an asbestos-related disease due
22 to exposure to asbestos from a Grace
23 product or operation.
24     Q.   Anything else?

Page 117

1          MS. HARDING: Object to
2      form.
3      A.   I don't understand your
4  question.
5      Q.   My question is: Is there
6  any other basis for classifying the
7  contractual indemnity claims that we've
8  just been discussing with the personal
9  injury claims, the asbestos personal
10 injury claims?
11         MS. HARDING: Object to
12     form.
13     A.   The basis I've laid out for
14 the definition of asbestos PI claims.
15     Q.   Okay. Mr. Finke, why are
16 contractual indemnity claims arising from
17 the asbestos claims that you just
18 described placed into Class 6 while other
19 contractual indemnity claims against Grace
20 are placed into Class 9?
21         MS. HARDING: Object to
22     form and to the -- and object to
23     the extent it calls for a legal
24     conclusion. If you can answer, go


**Page 118**

1   ahead.
2       A. Because the contractual
3   indemnity claims that arise based out of
4   an asbestos PI claim all seek to impose
5   liability upon the debtors as a result of
6   the debtors' asbestos-related products or
7   operations.
8       Q. Okay. Is Fresenius a
9   separate entity from any of the debtors
10  today?
11          MS. HARDING: Object to
12      form.
13      Q. Separate legal entity.
14      A. Yes.
15      Q. How about Sealed Air
16  Corporation? Is that a separate legal
17  entity?
18      A. Yes.
19      Q. And they're both
20  non-debtors, correct?
21      A. Correct.
22      Q. Are they -- do they have
23  separate -- does Fresenius and the debtors
1   have separate management?

**Page 119**

1       A. Yes.
2       Q. And would your answer be
3   the same with respect to Sealed Air and
4   the debtors?
5       A. Yes.
6       Q. Does Fresenius and the
7   debtors or do Fresenius and the debtors
8   have any shared operations?
9       A. Not that I'm aware of.
10      Q. Do Sealed Air and the
11  debtors have any shared operations?
12      A. Not that I'm aware of.
13      Q. Do any of the debtors have
14  any ownership interest in Fresenius?
15          MS. HARDING: Object to
16      form.
17      A. I don't know but I'm not
18  aware of any.
19      Q. Do any of the debtors have
20  any ownership interest in Sealed Air?
21          MS. HARDING: Same
22      objection.
23      A. Again, I don't know but I'm
24  not aware of any.

**Page 120**

1       Q. Do any of the debtors
2   control Fresenius?
3       A. No.
4       Q. Do any of the debtors
5   control Sealed Air?
6       A. No.
7           MR. BROWN: How did we mark
8       the transfer agreement?
9           MS. BAER: The insurance
10      transfer agreement is Exhibit 4.
11          (Off the record.)
12  BY MR. BROWN:
13      Q. We talked about this
14  earlier. Can you take a look at Schedule
15  1 to Exhibit 4?
16      A. Yes.
17      Q. My question is: Does
18  Fresenius have any rights under the
19  policies listed on Schedule 1?
20          MS. HARDING: Object to
21      form.
22      A. I don't believe so.
23      Q. How about Sealed Air?
24      A. I don't believe so.

**Page 121**

1           MR. BROWN: Why don't we
2       take a five-minute break. I may be
3       finished.
4           MS. HARDING: Okay.
5           (Recess taken.)
6   BY MR. BROWN:
7       Q. Mr. Finke, I have a few
8   more questions for you and then I'll pass
9   you along to the next questioner.
10          Can you take a look at Section 11.9
11  of the Plan again? That's the exculpation
12  provision.
13      A. Yes.
14      Q. Do you understand the scope
15  of the exculpation provision in terms of
16  the entities and individuals that are
17  actually exculpated under this
18  provision?
19          MS. HARDING: Object to
20      form.
21      A. Yes, I believe I do.
22      Q. Okay. Well, let me give
23  you a couple of examples. It's includes
24  the Asbestos PI Committee, correct?

Page 122

1  A. Yes.
2  Q. And we talked a little
3  about the Asbestos PI Committee being
4  individual asbestos claimants, correct?
5  A. Yes.
6  Q. And you testified that, by
7  and large, they perform their duties as
8  committee members through their asbestos
9  personal injury counsel, correct?
10  A. Correct.
11  Q. Okay. And that would
12  include, among other individuals, Mr. Rice
13  and his law firm, correct?
14  A. Yes, I believe that's
15  right.
16  Q. And Mr. Cooney and his law
17  firm?
18  A. Well, I guess what I don't
19  know is which of the -- which of the
20  asbestos plaintiffs' attorneys we've
21  identified are -- or have clients that are
22  members of the committee. I just don't
23  recall.
24  Q. Okay, fair enough.

Page 123

1  There are also -- the TAC is within
2  the scope of this exculpation provision,
3  correct?
4  A. Yes.
5  Q. So it would include the TAC
6  members, Mr. Weitz, Mr. Cooney, Mr. Budd
7  and Mr. Rice, correct?
8  A. Correct.
9  Q. And to the extent that the
10  firms -- to extent that any members of the
11  Asbestos PI Committee are represented by
12  the firms of Mr. Cooney, Mr. Rice, Mr.
13  Weitz and Mr. Budd, they too would be
14  covered by it, correct?
15  A. Correct.
16  MS. HARDING: Object to
17  form.
18  Q. All right. Now, about
19  halfway down the provision it has a phrase
20  that says "or any of their respective
21  Representatives". Do you see that?
22  A. Yes.
23  Q. And Representatives is in
24  initial cap R, correct?

Page 124

1  A. Yes.
2  Q. Why don't you go to the
3  defined term Representatives which appears
4  at 33 of the Joint Plan. It's definition
5  number 177.
6  MS. HARDING: I think I
7  lost the line of -- did you
8  previously ask if the TAC was
9  covered --
10  MR. BROWN: Yes.
11  MS. HARDING: -- by the
12  exculpation in 11.9?
13  MR. BROWN: Yes.
14  MS. HARDING: I'm just
15  looking and I don't see that so I
16  just wanted to make sure that the
17  record wasn't unclear.
18  MS. BAER: Barbara.
19  MR. BROWN: Asbestos PI
20  Trust Advisory Committee.
21  MS. HARDING: All right.
22  MR. BROWN: We're happy to
23  have it taken out.
24  MS. HARDING: No, no. I

Page 125

1  was talking because I was going too
2  fast and I just didn't see it and I
3  wanted to make sure.
4  A. Okay.
5  Q. Sitting here today and
6  looking at the defined term
7  Representatives and seeing its use in
8  Section 11.9 of the Plan, do you have any
9  idea of the scope of this exculpation
10  provision in terms of who's covered by
11  it?
12  MS. HARDING: Object to
13  form.
14  A. Well, certainly the
15  definition of Representatives gives me an
16  idea as to the scope of the exculpation
17  provision.
18  Q. Okay. But I mean the
19  actual identities of the individuals, you
20  couldn't -- you couldn't give me a list
21  today, could you?
22  A. No.
23  Q. Okay.
24  A. I could not.