# EXHIBIT 16

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

— — —

| | |
|---|---|
| In Re: | : Chapter 11 |
| | : |
| | : Case No. |
| W.R. GRACE & CO., et al, | : 01-01139 JKF |
| | : |
| | : (Jointly |
| Debtors | : Administered) |

— — —

Friday, May 1, 2009

— — —

Oral deposition of PETER VAN

N. LOCKWOOD, ESQUIRE, taken pursuant to

notice, was held at the offices of CAPLIN

& DRYSDALE, One Thomas Circle N.W., Suite

1100, Washington, DC  20005, commencing

at 9:43 a.m., on the above date, before

Lori A. Zabielski, a Registered

Professional Reporter and Notary Public

in and for the Commonwealth of

Pennsylvania.

— — —

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

Page 2

```
 1   APPEARANCES:
 2
 3   DRINKER BIDDLE & REATH, LLP
       BY:  MICHAEL F. BROWN, ESQUIRE
 4         JEFFREY M. BOERGER, ESQUIRE
       One Logan Square
 5     18th & Cherry Streets
       Philadelphia, Pennsylvania 19103-6996
 6     215.988.2988
       (brownmf@dbr.com)
 7     (jeffrey.boerger@dbr.com)
       Representing OneBeacon America Insurance
 8     Company, Seaton Insurance Company,
       Government Employees Insurance Company,
 9     Columbia Insurance Company f/k/a Republic
       Insurance Company
10
11
       CAPLIN & DRYSDALE, CHARTERED
12     BY:  NATHAN D. FINCH, ESQUIRE
             JEFFREY A. LIESEMER, ESQUIRE*
13           (*VIA TELECONFERENCE)
       One Thomas Circle N.W.
14     Suite 1100
       Washington, DC  20005
15     202.862.7801
       (ndf@capdale.com)
16     (jal@capdale.com)
       Representing Grace, Official Committee of
17     Asbestos Personal Injury Claimants
       ("ACC"), and Witness
18
19
       W.R. GRACE & CO.
20     BY:  RICHARD C. FINKE, ESQUIRE*
             ASSISTANT GENERAL COUNSEL
21           (*VIA TELECONFERENCE)
       5400 Broken Sound Boulevard, NW
22     Suite 300
       Boca Raton, Florida  33487
23     561.362.1533
       Representing W.R. Grace & Co.
```

Page 3

```
 1   APPEARANCES (continued)
 2
 3   KIRKLAND & ELLIS, LLP
       BY:  BARBARA M. HARDING, ESQUIRE
 4         THEODORE L. FREEDMAN, ESQUIRE
       655 Fifteenth Street, N.W.
 5     Washington, DC  20005-5793
       202.879.5081
 6     (barbara.harding@kirkland.com)
       (tfreeedman@kirkland.com)
 7     Representing the Debtors
 8
 9   SIMPSON THACHER & BARTLETT, LLP
       BY:  ELISA ALCABES, ESQUIRE
10     425 Lexington Avenue
       New York, New York  10017-3954
11     212.455.3133
       (ealcabes@stblaw.com)
12     Representing Travelers Casualty and
       Surety Company
13
14
       VORYS, SATER, SEYMOUR AND PEASE, LLP
15     BY:  TIFFANY STRELOW COBB, ESQUIRE*
             ROBERT J. SIDMAN, ESQUIRE*
16           (*VIA TELECONFERENCE)
       52 East Gay Street
17     Columbus, Ohio  43215
       614.464.8322
18     (tscobb@vorys.com)
       Representing The Scotts Company, LLC
19
20
       COHN WHITESELL & GOLDBERG, LLP
21     BY:  DANIEL C. COHN, ESQUIRE
       101 Arch Street
22     Boston, Massachusetts 02110
       617.951.2505
23     (cohn@cwg11.com)
       Representing the Libby Claimants
24
```

Page 4

```
 1   APPEARANCES (continued)
 2
 3   SPEIGHTS & RUNYAN
       BY:  DANIEL H. SPEIGHTS, ESQUIRE*
 4           (* VIA TELECONFERENCE)
       200 Jackson Avenue East
 5     P.O. Box 685
       Hampton, South Carolina  29924
 6     803.943.4444
       (dspeights@speightsrunyan.com)
 7     Representing Anderson Memorial Hospital
 8
 9   TUCKER ARENSBERG
       BY:  MICHAEL A. SHINER, ESQUIRE
10     1500 One PPG Place
       Pittsburgh, Pennsylvania  15222
11     412.594.5586
       (mshiner@tuckerlaw.com)
12     Representing Certain London Market
       Insurers and AXA Belgium
13
14
       MENDES & MOUNT, LLP
15     BY:  CAROLINA ACEVEDO, ESQUIRE*
             (*VIA TELECONFERENCE)
16     750 Seventh Avenue
       New York, New York  10019
17     212.261.8262
       (carolina.acevedo@mendes.com)
18     Representing AXA Belgium as Successor to
       Royale Belge SSA
19
20
       MENDES & MOUNT, LLP
21     BY:  ALEXANDER MUELLER, ESQUIRE*
             (*VIA TELECONFERENCE)
22     750 Seventh Avenue
       New York, New York  10019-6829
23     212.261.8296
       (alexander.mueller@mendes.com)
24     Representing London Market Companies
```

Page 5

```
 1   APPEARANCE (continued)
 2
 3   FORD MARRIN ESPOSITO & WITMEYER & GLESER
       BY:  ELIZABETH M. DeCRISTOFARO, ESQUIRE
 4     Wall Street Plaza
       New York, New York  10005-1875
 5     212.269.4900
       Representing Continental Casualty Company
 6     and Continental Insurance Company
 7
 8   BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
       BY:  MATTHEW I, KRAMER, ESQUIRE
 9     200 South Biscayne Boulevard
       Suite 2500
10     Miami, Florida  33131-5340
       305.450.7246
11     (mkramer@bilzin.com)
       Representing Property Damage Committee
12
13
       STROOCK & STROOCK & LAVAN, LLP
14     BY:  ARLENE G. KRIEGER, ESQUIRE
       180 Maiden Lane
15     New York, New York  10038-4982
       212.806.5400
16     (akrieger@stroock.com)
       Representing Official Committee of
17     Unsecured Creditors
18
19     CROWELL & MORING, LLP
       BY:  MARK PLEVIN, ESQUIRE
20           NOAH S. BLOOMBERG, ESQUIRE
       1001 Pennsylvania Avenue NW
21     Washington, DC  20004-2595
       202.624.2913
22     (mplevin@crowell.com)
       (nbloomberg@crowell.com)
23     Representing Fireman's Fund Insurance
       (Surety Bond)
24
```

Page 6

```
 1   APPEARANCES (continued)
 2
 3   STEVENS & LEE, P.C.
     BY: JOHN D. DEMMY, ESQUIRE
     1105 North Market Street, 7th Floor
 4   Wilmington, Delaware 19801
     302.654.5180
 5   (jdd@stevenslee.com)
     Representing Fireman's Fund Insurance
 6
 7
     ALAN B. RICH LAW OFFICES
 8   BY: ALAN B. RICH, ESQUIRE
     Elm Place, Suite 4620
 9   1401 Elm Street
     Dallas, Texas 75202
10   214.744.5100
     (arich@alanrichlaw.com)
11   Representing Property Damage FCR
12
13   CONNOLLY BOVE LODGE & HUTZ, LLP
     BY: JEFFREY C. WISLER, ESQUIRE
14   The Nemours Building
     1007 North Orange Street
15   P.O. Box 2207
     Wilmington, Delaware 19899
16   302.88.6528
     (jwisler@cblh.com)
17   Representing Maryland Casualty
18
19   ECKERT SEAMANS CHERIN & MELLOTT, LLC
     BY: EDWARD J. LONGOSZ, II, ESQUIRE
20   1747 Pennsylvania Avenue, NW
     12th Floor
21   Washington, DC 20006
     202.659.6619
22   (elongosz@eckertseamans.com)
     Representing Maryland Casualty and Zurich
23
```

Page 7

```
 1   APPEARANCES (continued)
 2
 3   WILEY REIN, LLP
     BY: KARALEE C. MORELL, ESQUIRE
     1776 K Street NW
 4   Washington, DC 20006
     202.719.7520
 5   (kmorell@wileyrein.com)
     Representing Maryland Casualty and Zurich
 6
 7
     COZEN O'CONNOR
 8   BY: JACOB C. COHN, ESQUIRE
     1900 Market Street
 9   Philadelphia, Pennsylvania 19103-3508
     215.665.2147
10   (jcohn@cozen.com)
     Representing Federal Insurance Company
11
12
     ORRICK HERRINGTON & SUTCLIFFE, LLP
13   BY: JONATHAN P. GUY, ESQUIRE
         JOSHUA M. CUTLER, ESQUIRE
14   Columbia Center
     1152 15th Street, N.W.
15   Washington, DC 20005-1706
     202.339.8516
16   (jguy@orrick.com)
     Representing Future Claimants
17   Representative
18
19   CUYLER BURK, P.C.
     BY: ANDREW CRAIG, ESQUIRE
     4 Century Drive
     Parsippany, New Jersey 07054
     973.734.3200
     (acraig@cuyler.com)
22   Representing Allstate Insurance Company
23
24
```

Page 8

```
 1   APPEARANCES (continued)
 2
 3   WILSON ELSER MOSKOWITZ EDELMAN & DICKER,
     LLP
 4   BY: CARL PERNICONE, ESQUIRE*
         (*VIA TELECONFERENCE)
 5   150 East 42nd Street
     New York, New York 10017-5639
 6   212.915.5656
     (carl.pernicone@wilsonelser.com)
 7   Representing Arrowood Indemnity Company
 8
 9   WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
     BY: KEVIN J. MANGAN, ESQUIRE*
10       (*VIA TELECONFERENCE)
     222 Delaware Avenue
11   Suite 1501
     Wilmington, Delaware 19801
12   302.252.4361
     (kmangan@wcsr.com)
13   Representing State of Montana
14
15   PEPPER HAMILTON, LLP
     BY: LINDA J. CASEY, ESQUIRE*
16       (*VIA TELECONFERENCE)
     3000 Two Logan Square
17   Philadelphia, Pennsylvania 19103
     215.981.4000
18   (caseyl@pepperlaw.com)
     Representing BNSF Railway Company
19
20          - - -
21
22
23
24
```

Page 9

```
 1          - - -
 2        I N D E X
 3          - - -
 4
 5   Testimony of:
 6     PETER VAN N. LOCKWOOD, ESQUIRE
 7
 8   By Mr. Brown      Page 12
 9   By Ms. Alcabes    Page 267
10   By Ms. Cobb       Page 339
11   By Mr. Cohn       Page 368
12
13
14
15        E X H I B I T S
16          - - -
17   NO.   DESCRIPTION              PAGE
18   1     Amended Notice of Deposition
           of Asbestos PI Committee...    12
19
20   2     Objections to the Official
           Committee...                   12
21   3     Form 8-K and Term Sheet     15
22   4     Exhibit-6 to Exhibit Book     26
23   5     First Amended Joint Plan of
           Reorganization...             27
24
```

Page 10

1   EXHIBITS (continued)
2
3   NO.   DESCRIPTION            PAGE
4   6     Exhibit-19 to Exhibit Book    83
5   7     Settlement Agreement
          * CONFIDENTIAL *         144
6
    8     Complaint for Declaration of
7         the Relief...                175
8   9     Diagram                      175
9   10    Exhibit-2 to Exhibit Book    196
10  11    Exhibit-4 to Exhibit Book    224
11  12    Exhibit-10 to Exhibit Book   260
12  13    Travelers Casualty and Surety
          Company's Notice of Deposition
13        to the Official Committee of
          Asbestos Personal Injury
14        Claimants...                 267
15  14    Debtors' Disclosure...       280
16  15    Documents bearing Bates stamps
          TRAVAS0000019 through 141
17        * CONFIDENTIAL *         289
18  16    Notice of Service of Discovery 324
19
          - - -
20
21
22
23
24

Page 11

1            - - -
2       DEPOSITION SUPPORT INDEX
3            - - -
4
5   Direction to Witness Not to Answer:
6   Page   Line       Page    Line
7   NONE
8
9
10  Request for Production of Documents:
11  Page   Line       Page    Line
12  NONE
13
14
15  Stipulations:
16  Page   Line       Page    Line
17  12     02
18
19
20  Area(s) Marked Confidential:
21  Page   Line       Page    Line
    152    01  through  168    03
    292    01  through  311    14
23
24

Page 12

1            - - -
2       (It is hereby stipulated and
3   agreed by and among counsel for
4   the respective parties that the
5   filing, sealing and certification
6   of the deposition are waived; and
7   that all objections, except as to
8   the form of the question, will be
9   reserved until the time of trial.)
10           - - -
11       PETER VAN N. LOCKWOOD,
12  ESQUIRE, after having been first
13  duly sworn, was examined and
14  testified as follows:
15           - - -
16       EXAMINATION
17           - - -
18       (ACC 30(b)(6)-1 and 2
19  premarked for identification.)
20           - - -
21  BY MR. BROWN:
22      Q.    Good morning, Mr. Lockwood.
23      A.    Good morning, Mr. Brown.
24      Q.    You are appearing here today

Page 13

1   as the Rule 30(b)(6) designee for the
2   ACC, correct?
3       A.    Correct.
4       Q.    And that is with respect to
5   a number of 30(b)(6) notices, correct?
6       A.    A very large number, yes.
7       Q.    Can you look at the one
8   that's been put before you and marked ACC
9   Rule 30(b)(6)-1, which I will call ACC-1
10  here after.
11      A.    I have it.
12      Q.    Can you identify it?
13      A.    It is an Amended Notice of
14  Deposition of Asbestos PI Committee
15  Pursuant to Rule 30(b)(6) served by four
16  insurance companies, One Beacon, Seaton,
17  Geico, and Columbia. And it contains an
18  attachment with definitions and topics
19  which are the subject matter of
20  testimony.
21      Q.    Okay. And can you look at
22  the document that I put before you that's
23  marked ACC-2.
24      A.    I have it.

Page 118

1  provision, essentially that we are
2  going to transfer the assets to
3  the Trust and if you got a claim
4  or an interest in the assets, then
5  you can litigate that claim
6  against the Trust.
7       But we are going, I guess,
8  have potential confirmation
9  objections about whether there are
10  any such claims.  I mean, the mere
11  assertion of a claim doesn't mean
12  that it's valid.
13  BY MR. BROWN:
14       Q.   Okay.  If I can direct your
15  attention down to 7.2.4, which is
16  entitled Assignment and Enforcement of
17  Asbestos PI Trust Causes of Action.
18       A.   Yes.
19       Q.   I must confess, I am a bit
20  baffled by this one, so I need some help
21  with it.
22       How do Asbestos PI Trust
23  causes of action differ from asbestos
·1  insurance rights?

Page 119

1       A.   Well, I have to go back and
2  look at the definitions to answer that
3  question.
4       Well, I think asbestos PI
5  Trust causes of action does include
6  asbestos insurance rights.
7       Q.   What else does it include?
8       A.   Well, if you look at the
9  definition, it includes defenses such
10  that, for example, if a claimant says, I
11  have a valid claim against Grace that's
12  channelled to the Trust and the Trust
13  disagrees with it, the Trust retains all
14  the defenses to that claim that Grace
15  would have had.  That's clause A under
16  definition 47.
17       Q.   Okay.
18       A.   Clause B is, for example,
19  contribution rights, et cetera.  So, for
20  example, if the Trust has -- if Grace has
21  contribution rights that it has not
22  asserted and that which are still valid
23  against a codefendant in a tort system
24  and the codefendant brings in indirect

Page 120

1  Asbestos PI Trust claim against the
2  Trust, the Trust could assert Grace's
3  contribution rights as a counterclaim to
4  that.  That's two categories of things
5  that this is intended to include.
6       Q.   Okay.  Let's go to page 64,
7  7.2.6, Creation and Termination of the
8  Asbestos PI TAC.
9       A.   Correct.
10       Q.   It says, "On or before the
11  Confirmation Date, the initial members of
12  the Asbestos PI TAC shall be selected by
13  the Asbestos PI Committee."
14       That has already occurred,
15  correct?
16       A.   Correct.  They are
17  identified in the Asbestos PI Trust
18  Agreement.
19       Q.   Okay.  How many actual
20  committee members are there on the
21  Asbestos PI Committee?
22       A.   I don't remember.  But we
23  have the Disclosure Statement here.  I
24  could pretty quickly find out by just

Page 121

1  looking at it where they are identified.
2       Q.   Okay.
3       A.   It's certainly more than the
4  four that are going to be on the TAC.
5       Q.   Okay.  Is it fair to say
6  that the actual committee members who are
7  asbestos claimants act through their tort
8  counsel in connection with their
9  obligations as committee members?
10       A.   As a general proposition,
11  that's true.  In any given committee on
12  any given issue, an individual member
13  might choose to show up and act on their
14  own behalf, and there have been some
15  examples in the past where that has
16  occurred.
17       But, as a general
18  proposition, the committee members are
19  blue-collar folks of limited legal
20  knowledge, and they delegate to their
21  personal injury lawyers their sort of
22  activities acting for them as an agent on
23  these committees.
24       Q.   Okay.  You are counsel to

Page 122

1    the Asbestos PI Committee. You don't
2    have occasion, do you, to deal directly
3    with the actual claimants?
4         MR. FINCH: Object to the
5    form.
6         THE WITNESS: That's not
7    entirely true. I get calls
8    periodically that I just got this
9    incomprehensible Disclosure
10   Statement from Grace and could you
11   please tell me what it means or
12   something. But as a general
13   proposition --
14        MR. FINCH: Transfer to it
15   to Finch.
16        THE WITNESS: Or where do I
17   file my proof of claim.
18        But, as a general
19   proposition, I don't nor do other
20   folks at Caplin & Drysdale deal
21   directly with original committee
22   members.
23   BY MR. BROWN:
     Q.   You deal with personal

Page 123

1    injury attorneys, correct?
2         A.   As a general proposition, we
3    deal with the PI lawyers who have been
4    appointed by their client committee
5    member to act on their behest in the
6    committee.
7         Q.   Now, the TAC members are
8    John Cooney, Perry Weitz, Joe Rice,
9    and -- who was the fourth one?
10        A.   Well, I can tell you by
11   looking at the PI Trust Agreement, which
12   is Exhibit-2 to the Plan and looking at
13   the signature page, we should have, which
14   is --
15        Q.   Russell Budd.
16        A.   Russell Budd, John Cooney,
17   Joseph Rice, and Perry Weitz.
18        Q.   And each of them works for a
19   law firm, correct?
20        A.   Each of them is a partner a
21   law firm, yes.
22        Q.   Sorry. I didn't mean to...
23        Now, does each of those law
24   firms have a client that sits on the

Page 124

1    committee?
2         A.   Yes.
3         Q.   And do those committee
4    members for those firms act through those
5    four gentlemen?
6         A.   On the committee?
7         Q.   Yes.
8         A.   Generally, yes.
9         Q.   Okay. So is it fair to say
10   that Mr. Rice, Mr. Weitz, Mr. Cooney, and
11   Mr. Budd selected themselves to be
12   members of the TAC?
13        A.   No, because there are many
14   other members of the committee, and the
15   committee as a whole, which, in this
16   particular case, I believe has a majority
17   of members that are not these four
18   gentlemen, decided which of their members
19   they thought would be appropriate persons
20   to put on the TAC.
21        Q.   And how was that decided?
22        A.   As far as I know, they had
23   informal discussions, and they had a
24   committee meeting. I don't remember

Page 125

1    whether there were votes or anything like
2    that. But at the end of the day, through
3    some sort of nomination or informal
4    self-nomination or self-nomination,
5    speeches, lobbying, discussions, what
6    have you, there came a time at which the
7    committee voted to select these four
8    people.
9         Q.   Okay.
10        A.   And I might add that the
11   Future Claimants Representative had a
12   sort of a generalized oversight in the
13   sense that while the Plan contemplates
14   that the committee would nominate the
15   TAC. If the FCR thought, for some reason
16   or another, that somebody had been put on
17   the TAC that was a real bad idea, the
18   committee would probably have had to
19   listen to the Future Representative's
20   views on that even though the Futures Rep
21   did not have sort of a formal veto or
22   role in that process.
23        Q.   Okay. I want to now turn to
24   page -- well, it's 69 on my version,

Page 126

1   Section 7.7, Conditions to Occurrence of
2   the Confirmation Date, and I want to
3   focus your attention first on (g).
4       A.   I see it.
5       Q.   What are the securities that
6   are funding the Asbestos PI Trust?
7       A.   The warrant and the Deferred
8   Payment Agreement, which is a debt
9   obligation, which also includes, I
10  believe, a promissory note or promissory
11  notes.
12      Q.   Can you describe for me the
13  circumstances under which the asbestos PI
14  claim -- excuse me -- the Asbestos PI
15  Trust will be funded with dividends?
16      A.   In the event that it
17  exercises the warrant and acquires stock
18  pursuant to that exercise and the stock
19  pays dividends, it will get dividends.
20      Q.   And if the warrant is not
21  exercised?
22      A.   Then it won't get dividends.
23      Q.   What about if there is a
24  default under the deferred payment note?

Page 127

1       A.   My recollection is that the
2   Trust has the right to get 50.1 percent
3   of the stock of the Debtor under those
4   circumstances.
5            But, again, the terms of --
6   that's a very complicated set of
7   documents, and the precise terms of that
8   are whatever the document states. I can
9   only give you a sort of a very
10  generalized description.
11      Q.   Okay. Let me draw your
12  attention now down to (l), condition (l).
13      A.   Yes, I see it.
14      Q.   What does that mean?
15           MS. HARDING: Object to
16  form.
17           THE WITNESS: Well, what it
18  means is that if you didn't have a
19  TDP, which includes things like a
20  payment percentage and mechanisms
21  for trying to trying to limit the
22  ways in which the Trust expends
23  monies on claims, and you just had
24  sort of a come in, sue the Trust

Page 128

1   and the tort system, et cetera,
2   you would have a
3   first-come-first-serve operation
4   where there was the distinct
5   possibility that, as it happened
6   in the Manville Trust at the very
7   beginning, all the money would run
8   out the door at the front end, and
9   there wouldn't be anything left
10  for future claimants, which would
11  violate 524(g).
12  BY MR. BROWN:
13      Q.   Okay. Well, the way that
14  this provision is written suggests that
15  any procedures other than those that are
16  set forth in this Plan would defeat the
17  purposes of Section 524(g).
18           Is that what is intended
19  here?
20           MR. FINCH: Object to form.
21           MS. HARDING: Object to
22  form.
23  BY MR. BROWN:
24      Q.   Are there other options, is

Page 129

1   the question?
2       A.   If the question is could one
3   hypothesize a somewhat different set of
4   TDPs that had somewhat different
5   procedures, the answer is depending on
6   what that different TDP set of procedures
7   was, you might be able to say the same
8   thing about it.
9            The purpose of this thing is
10  to say that this structure, according to
11  the court, satisfies the requirements of
12  524(g) that say that you have to
13  establish this requirement.
14           I mean, this is a finding of
15  fact that is intended to have the court
16  rule that the Plan does, in fact, meet
17  the requirements of a subsection of
18  524(g).
19      Q.   You could, in fact, have a
20  Plan that met the qualifications for
21  524(g) that actually had a role for
22  asbestos insurance entities, correct?
23           MR. FINCH: Object to form.
24           MS. HARDING: Object to

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

– – –

In Re:                          : Chapter 11
                                :
                                : Case No.
W.R. GRACE & CO., et al,        : 01-01139 JKF
                                :
                                : (Jointly
              Debtors           : Administered)


– – –

Monday, May 4, 2009

– – –

Continuation of oral

deposition of PETER VAN N. LOCKWOOD,

ESQUIRE, taken pursuant to notice, was

held at the offices of CAPLIN & DRYSDALE,

One Thomas Circle N.W., Suite 1100,

Washington, DC  20005, commencing at

12:05 p.m., on the above date, before

Lori A. Zabielski, a Registered

Professional Reporter and Notary Public

in and for the Commonwealth of

Pennsylvania.

– – –

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

## Page 450

```
 1   APPEARANCES:
 2
 3   DRINKER BIDDLE & REATH, LLP
       BY: MICHAEL F. BROWN, ESQUIRE
 4   One Logan Square
     18th & Cherry Streets
 5   Philadelphia, Pennsylvania 19103-6996
     215.988.2988
 6   (brownmf@dbr.com)
     (jeffrey.boerger@dbr.com)
 7   Representing OneBeacon America Insurance
       Company, Seaton Insurance Company,
 8   Government Employees Insurance Company,
       Columbia Insurance Company f/k/a Republic
 9   Insurance Company
10
11   CAPLIN & DRYSDALE, CHARTERED
       BY: NATHAN D. FINCH, ESQUIRE
12   JEFFREY A. LIESEMER, ESQUIRE*
       (*VIA TELECONFERENCE)
13   One Thomas Circle N.W.
     Suite 1100
14   Washington, DC 20005
     202.862.7801
15   (ndf@capdale.com)
     (jal@capdale.com)
16   Representing Grace, Official Committee of
       Asbestos Personal Injury Claimants
17   ("ACC"), and Witness
18
     ANDERSON KILL & OLICK, P.C.
19     BY: ROBERT M. HORKOVICH, ESQUIRE
     1251 Avenue of the Americas
20   New York, New York 10020
     212.278.1322
21   (rhorkorvitz@andersonkill.com)
     Representing the ACC
22
23
 4
```

## Page 451

```
 1   APPEARANCES (continued)
 2
 3   KIRKLAND & ELLIS, LLP
       BY: THEODORE L. FREEDMAN, ESQUIRE
 4   655 Fifteenth Street, N.W.
     Washington, DC 20005-5793
 5   202.879.5081
     (tfreedman@kirkland.com)
 6   Representing the Debtors
 7
 8   THE LAW OFFICES OF JANET S. BAER, P.C.
       BY: JANET S. BAER, ESQUIRE
 9   70 West Madison Street
     Suite 2100
10   Chicago, Illinois 606002
     312.641.2162
11   Representing the Debtors
12
13   SIMPSON THACHER & BARTLETT, LLP
       BY: SAMUEL J. RUBIN, ESQUIRE*
14   (*VIA TELECONFERENCE)
     425 Lexington Avenue
15   New York, New York 10017-3954
     212.455.3122
16   (srubin@stblaw.com)
     Representing Travelers Casualty and
17   Surety Company
18
19   VORYS, SATER, SEYMOUR AND PEASE, LLP
       BY: TIFFANY STRELOW COBB, ESQUIRE*
20   (*VIA TELECONFERENCE)
     52 East Gay Street
     Columbus, Ohio 43215
     614.464.8322
22   (tscobb@vorys.com)
     Representing The Scotts Company, LLC
23
24
```

## Page 452

```
 1   APPEARANCES (continued)
 2
 3   COHN WHITESELL & GOLDBERG, LLP
       BY: DANIEL C. COHN, ESQUIRE
 4   101 Arch Street
     Boston, Massachusetts 02110
 5   617.951.2505
     (cohn@cwg11.com)
 6   Representing the Libby Claimants
 7
 8   SPEIGHTS & RUNYAN
       BY: DANIEL H. SPEIGHTS, ESQUIRE*
 9   (*VIA TELECONFERENCE)
     200 Jackson Avenue East
10   P.O. Box 685
     Hampton, South Carolina 29924
11   803.943.4444
     (dspeights@speightsrunyan.com)
12   Representing Anderson Memorial Hospital
13
14   TUCKER ARENSBERG
       BY: MICHAEL A. SHINER, ESQUIRE*
15   (*VIA TELECONFERENCE)
     1500 One PPG Place
16   Pittsburgh, Pennsylvania 15222
     412.594.5586
17   (mshiner@tuckerlaw.com)
     Representing Certain London Market
18   Insurers and AXA Belgium
19
20   FORD MARRIN ESPOSITO & WITMEYER & GLESER
       BY: ELIZABETH M. DeCRISTOFARO, ESQUIRE
21   Wall Street Plaza
     New York, New York 10005-1875
22   212.269.4900
     Representing Continental Casualty Company
23   and Continental Insurance Company
24
```

## Page 453

```
 1   APPEARANCES (continued)
 2
 3   BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
       BY: MATTHEW I. KRAMER, ESQUIRE*
 4   (*VIA TELECONFERENCE)
     200 South Biscayne Boulevard
 5   Suite 2500
     Miami, Florida 33131-5340
 6   305.450.7246
     (mkramer@bilzin.com)
 7   Representing Property Damage Committee
 8
 9   STROOCK & STROOCK & LAVAN, LLP
       BY: ARLENE G. KRIEGER, ESQUIRE*
10   (*VIA TELECONFERENCE)
     180 Maiden Lane
11   New York, New York 10038-4982
     212.806.5400
12   (akrieger@stroock.com)
     Representing Official Committee of
13   Unsecured Creditors
14
15   CROWELL & MORING, LLP
       BY: MARK PLEVIN, ESQUIRE
16     NOAH S. BLOOMBERG, ESQUIRE
     1001 Pennsylvania Avenue NW
17   Washington, DC 20004-2595
     202.624.2913
18   (mplevin@crowell.com)
     (nbloomberg@crowell.com)
19   Representing Fireman's Fund Insurance
     (Surety Bond)
20
21
22
23
24
```

## Page 454

```
 1   APPEARANCES (continued)
 2
 3   STEVENS & LEE, P.C.
     BY:  JOHN D. DEMMY, ESQUIRE*
 4     (* VIA TELECONFERENCE)
     1105 North Market Street, 7th Floor
 5   Wilmington, Delaware  19801
     302.654.5180
 6   (jdd@stevenslee.com)
     Representing Fireman's Fund Insurance
 7
 8
     ALAN B. RICH LAW OFFICES
 9   BY:  ALAN B. RICH, ESQUIRE*
       (*VIA TELECONFERENCE)
10   Elm Place, Suite 4620
     1401 Elm Street
11   Dallas, Texas  75202
     214.744.5100
12   (arich@alanrichlaw.com)
     Representing Property Damage FCR
13
14
     CONNOLLY BOVE LODGE & HUTZ, LLP
15   BY:  JEFFREY C. WISLER, ESQUIRE
     The Nemours Building
16   1007 North Orange Street
     P.O. Box 2207
17   Wilmington, Delaware  19899
     302.88.6528
18   (jwisler@cblh.com)
     Representing Maryland Casualty
19
20
     ECKERT SEAMANS CHERIN & MELLOTT, LLC
21   BY:  EDWARD J. LONGOSZ, II, ESQUIRE
     1747 Pennsylvania Avenue, NW
22   12th Floor
     Washington, DC  20006
23   202.659.6619
     (elongosz@eckertseamans.com)
 4   Representing Maryland Casualty and Zurich
```

## Page 455

```
 1   APPEARANCES (continued)
 2
 3   WILEY REIN, LLP
     BY:  KARALEE C. MORELL, ESQUIRE
 4   1776 K Street NW
     Washington, DC  20006
 5   202.719.7520
     (kmorell@wileyrein.com)
 6   Representing Maryland Casualty and Zurich
 7
 8   COZEN O'CONNOR
     BY:  ILAN ROSENBERG, ESQUIRE*
 9     (*VIA TELECONFERENCE)
     1900 Market Street
10   Philadelphia, Pennsylvania  19103-3508
     215.665.4621
11   (irosenberg@cozen.com)
     Representing Federal Insurance Company
12
13
     ORRICK HERRINGTON & SUTCLIFFE, LLP
14   BY:  JONATHAN P. GUY, ESQUIRE
        JOSHUA M. CUTLER, ESQUIRE
15   Columbia Center
     1152 15th Street, N.W.
16   Washington, DC  20005-1706
     202.339.8516
17   (jguy@orrick.com)
     Representing Future Claimants
18   Representative
19
20   CUYLER BURK, P.C.
     BY:  TANYA M. MASCARICH, ESQUIRE*
21     (*VIA TELECONFERENCE)
     4 Century Drive
22   Parsippany, New Jersey  07054
     973.734.3200
23   (tmascarich@cuyler.com)
     Representing Allstate Insurance Company
24
```

## Page 456

```
 1   APPEARANCES (continued)
 2
 3   WILSON ELSER MOSKOWITZ EDELMAN & DICKER,
     LLP
 4   BY:  CARL PERNICONE, ESQUIRE
     150 East 42nd Street
 5   New York, New York  10017-5639
     212.915.5656
 6   (carl.pernicone@wilsonelser.com)
     Representing Arrowood Indemnity Company
 7
 8   O'MELVENY & MYERS, LLP
     BY:  TANCRED SCHIAVONI, ESQUIRE*
 9     (*VIA TELECONFERENCE)
     Times Square Tower
10   7 Times Square
     New York, New York  10036
11   212.326.2267
     (tschiavoni@omm.com)
12   Representing Arrowood Indemnity Company
13
14   WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
     BY:  KEVIN J. MANGAN, ESQUIRE*
15     (*VIA TELECONFERENCE)
     222 Delaware Avenue
16   Suite 1501
     Wilmington, Delaware  19801
17   302.252.4361
     (kmangan@wcsr.com)
18   Representing State of Montana
19
20   PEPPER HAMILTON, LLP
     BY:  LINDA J. CASEY, ESQUIRE*
21     (*VIA TELECONFERENCE)
     3000 Two Logan Square
22   Philadelphia, Pennsylvania  19103
     215.981.4000
23   (caseyl@pepperlaw.com)
     Representing BNSF Railway Company
24
```

## Page 457

```
 1
     APPEARANCES (continued)
 2
 3
     GOODWIN PROCTER, LLP
 4   BY:  DANIEL M. GLOSBAND, ESQUIRE*
        (*VIA TELECONFERENCE)
 5   Exchange Place
     53 State Street
 6   Boston, Massachusetts  02109
     617.570.1930
 7   (dglosband@goodwinprocter.com)
     Representing CNA Insurance
 8
 9
     KRAMER LEVIN NAFTALIS & FRANKEL, LLP
10   BY:  GREGORY A. HOROWITZ, ESQUIRE
     1177 Avenue of the Americas
11   New York, New York  10036
     212.715.9571
12   (ghorowitz@kramerlevin.com)
     Representing Official Committee of Equity
13   Holders
14
          - - -
15
16
17
18
19
20
21
22
23
24
```

Page 458

```
 1                  - - -
 2              I N D E X
 3                  - - -
 4
 5   Testimony of:
 6       PETER VAN N. LOCKWOOD, ESQUIRE
 7
 8   By Mr. Cohn          Page 462
 9   By Mr. Wisler        Page 531
10   By Mr. Mangan        Page 544
11   By Ms. Casey         Page 549
12   By Mr. Speights      Page 563
13   By Mr. Plevin        Page 606
14   By Mr. Schiavoni     Page 624
15   By Mr. Brown         Page 636
16
17                  - - -
18              E X H I B I T S
19                  - - -
20   NO.  DESCRIPTION           PAGE
21   17   Notice of Deposition of
          Asbestos PI Committee Pursuant
22        to Rule 30(b)(6)         460
23   18   Exhibit 8 to Exhibit Book   460
 1                  - - -
```

Page 459

```
 1                  - - -
 2       DEPOSITION SUPPORT INDEX
 3                  - - -
 4
 5   Direction to Witness Not to Answer:
 6   Page  Line      Page   Line
 7   620   11        632    14
 8
 9
10   Request for Production of Documents:
11   Page  Line      Page   Line
12   NONE
13
14
15   Stipulations:
16   Page  Line      Page   Line
17   12    02
     (Previously)
18
19
20   Area(s) Marked Confidential:
21   Page  Line      Page   Line
22   NONE
23
24
```

Page 460

```
 1                  - - -
 2       PETER VAN N. LOCKWOOD,
 3   ESQUIRE, after having been first
 4   duly sworn, was examined and
 5   testified as follows:
 6                  - - -
 7       PROCEEDINGS
 8                  - - -
 9       (ACC 30(b)(6)-17 and 18
10   premarked for identification at
11   this time.)
12                  - - -
13       MR. COHN:  Go ahead,
14   Mr. Schiavoni.
15       MR. SCHIAVONI:  I just
16   wanted to object.  We have written
17   the Libby claimants separately
18   about this, but we object to them
19   doing any questioning of
20   Mr. Lockwood on the grounds that
21   the Libby claimants are members of
22   the committee; they have not
23   objected to Mr. Lockwood's
24   designation to testify on behalf
```

Page 461

```
 1   of the committee; nor have they
 2   offered in response to requests
 3   any alternative witness to testify
 4   on any topics on which they
 5   disagree with Mr. Lockwood.
 6       We see Mr. Lockwood's
 7   testimony and the failure of the
 8   Libby claimants to object to the
 9   designation of Mr. Lockwood as an
10   adoptive omission by the Libby
11   claimants, and we object to any
12   questioning by them as essentially
13   questioning seeking to impeach
14   their own witness.  Thank you.
15       MR. COHN:  You are welcome.
16   We will respond to your
17   correspondence, but, for the
18   moment, let's simply say that we
19   reject the basis for your
20   objection.
21       MR. SCHIAVONI:  If there are
22   any topics that the Libby
23   claimants object to Mr. Lockwood's
24   designation on, we need to know
```

Page 638

1    Q.   I am sorry. When you said
2  members of the ACC itself, what members
3  are you talking about?
4    A.   Well, I was referring to the
5  personal injury counsel who were the
6  delegated representatives of the
7  individual ACC members, if that's what
8  you are driving at.
9    Q.   That's what I am driving at.
10   And who specifically were
11  they?
12   A.   As far as I know -- well,
13  the way in which the process works, in
14  general, is sometimes the ACC has
15  in-person meetings, sometimes it has
16  telephonic meetings, sometimes documents
17  get sent to it by email as PDF
18  attachments or whatever, and the ACC has
19  asked do you want to have a meeting or is
20  this good enough for you. So there is a
21  variety of ways in which the ACC views an
22  input is obtained.
23      And my answer was simply
24  that at the conclusion of a process, the

Page 639

1  members of the ACC had weighed in in one
2  or more of the ways in which I had
3  described some of them had; they all had
4  the opportunity to express their views;
5  and, therefore, the final product was the
6  product of their input. And there was a
7  final vote to go forward with the
8  document.
9    Q.   Okay. And when you say the
10  members, you are talking about their
11  actual personal injury counsel?
12   A.   As far as I know. But,
13  again, I couldn't tell you whether an
14  individual personal injury lawyer might
15  have consulted with his client, the
16  member, on one or more aspects of the TDP
17  or, for that matter, even sent the client
18  a copy of the entire TDP and had a
19  discussion with him about it. I
20  certainly couldn't exclude that.
21   Q.   Can you tell me the list of
22  counsel that you are talking about, the
23  actual names?
24   A.   They would be -- as a

Page 640

1  general proposition, I believe they are
2  in the Disclosure Statement. If they
3  are, it's a hell of a lot better
4  description of them than my memory. I
5  just --
6      MR. FINCH: There is also an
7    order entered by the U.S. Trustee
8    that identifies the 11 individual
9    members of the ACC and their
10   counsel, care of their firms.
11  BY MR. BROWN:
12   Q.   That's what I am driving at.
13  I would like to know who the individuals
14  were at their firms that were involved.
15   A.   Well, let me just see. I am
16  somewhat surprised. The Disclosure
17  Statement does not appear to contain the
18  members of the ACC. It just lists the
19  counsel representing the committee as a
20  whole. I had misremembered. I had
21  thought that it did.
22      I can't really remember. I
23  mean, I know the four -- I identified
24  four earlier as being involved in the

Page 641

1  discussions with Grace. They are
2  included. I think there is at least nine
3  members of the ACC. I do not recall, as
4  I sit here, who the other five members of
5  the ACC are. I mean, they are of
6  record -- strike that. I do not recall
7  who the other five lawyers for the
8  members of the ACC are. They are of
9  record.
10   Q.   But the four to which you
11  are referring is Mr. Budd, Mr. Rice,
12  Mr. Cooney, and Mr. Weitz?
13   A.   Correct.
14   Q.   You were talking about the
15  Trust Distribution Procedures and who
16  drafted them.
17      Would your answer be the
18  same with respect to the Trust Agreement?
19   A.   On the Trust Agreement, I
20  think there was more input from Grace,
21  and, indeed, I think there may have been
22  some from counsel from Sealed Air, as I
23  think about it. And, indeed, now that I
24  think about it, I think there may have

Page 642

1 even been a little input from the Sealed
2 Air counsel on the TDP. But, again, the
3 primary draftspersons were counsel for
4 the ACC and the FCR.
5      **Q.   Okay. Can I direct your**
6 **attention to the Plan, which I guess is**
7 **ACC-5, and specifically it's page 70 on**
8 **my copy. It's under Section 7.7**
9 **Conditions to Occurrence of the**
10 **Confirmation Date, specifically condition**
11 **(j).**
12      A.   I see it.
13      **Q.   Can you just take a moment**
14 **to read that? I have one question on**
15 **that.**
16      A.   I have read it.
17      **Q.   In the portion of that**
18 **condition dealing with asbestos PD**
19 **claims, second-to-the last line, you will**
20 **see the words "if any" appear there, but**
21 **the same language doesn't appear for**
22 **asbestos PI claims.**
23      **Why?**
24      MR. FINCH:  Objection,

Page 643

1 foundation.
2      THE WITNESS:  I need to talk
3 to my counsel about this one.
4      (There was a discussion held
5 off the record between the witness
6 and counsel at this time.)
7      MR. FINCH:  The discussion
8 was with respect to whether I need
9 to instruct him not to answer the
10 question. He is allowed to answer
11 the question as long as doing so
12 doesn't reveal privileged
13 communication.
14      I think you can answer.
15      THE WITNESS:  Barely.
16 The "if any" is in there, as
17 best I can recall, because the
18 Plan proponents -- in contrast of
19 PI, "if any" is under PD. Because
20 the Plan proponents are quite
21 confident that there is going to
22 be lots of future PI demands and
23 are less confident that there is
24 going to be lots of future PD

Page 644

1 demands, or if there are, they
2 will be valid.
3      MR. BROWN:  Okay. That's
4 all I have.
5      MR. FINCH:  Could you go
6 back to the question I asked you
7 to find and read that question and
8 read the answer, and I will see if
9 I have got any redirect.
10      Does anybody else have any
11 questions?
12      (No response.)
13      MR. FINCH:  Hearing none,
14 let me just hear that back.
15      (The reporter read from the
16 record as requested.)
17      MR. FINCH:  No questions.
18 I think that is the end of
19 the deposition.
20      (The deposition concluded at
21 4:19 p.m.)
22
23
24

Page 645

1            CERTIFICATE
2
3
4      I HEREBY CERTIFY that the witness
5 was duly sworn by me and that the
6 deposition is a true record of the
7 testimony given by the witness.
8
9
10
11
12 _____
13 Lori A. Zabielski
14 Registered Professional Reporter
15 Dated:  May 5, 2009
16
17
18
19
20      (The foregoing certification
21 of this transcript does not apply to any
22 reproduction of the same by any means,
23 unless under the direct control and/or
24 supervision of the certifying reporter.)