**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Related to Docket No.20872 |

**OBJECTIONS OF ALLSTATE INSURANCE COMPANY TO FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W.R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS DATED FEBRUARY 27, 2009**

Allstate Insurance Company ("Allstate"), solely as successor in interest to Northbrook Excess and Surplus Insurance Company, formerly Northbrook Insurance Company ("Northbrook"), by and through its undersigned counsel, hereby submits its objections to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, and The Official Committee of Equity Security Holders (collectively the "Plan Proponents") Dated February 27, 2009 (the "First Amended Plan"), and states as follows:

**Background**

1.      Northbrook issued fifteen (15) excess liability insurance policies to W.R. Grace and Co. ("Grace") covering policy years ranging from June 30, 1975 through June 30, 1982.

5316618v.1

2. Eight Northbrook policies[1] are subject to releases of coverage in consideration for payments that were made by Allstate in accordance with the terms of a Settlement Agreement that became effective on June 7, 1994 (the "1994 Settlement Agreement").[2] All of those policies are included by the Plan Proponents as "Asbestos Insurance Policies" identified as the subject of an "Asbestos Insurance Settlement Agreement" in Exhibits 5 and 6 of the Exhibit Book to the First Amended Plan.[3] According to the First Amended Plan, the releases of coverage under the 1994 Settlement Agreement are limited to the "products" coverage under the policies, as identified in Exhibit 5 to the Exhibit Book.

3. Pursuant to the terms of the 1994 Settlement Agreement, Grace is obligated to indemnify Allstate against any liability, loss, cost or expense (with certain specified exceptions) arising from any Asbestos-Related Claims by any third party that are based upon the aforesaid policies and arise out of the Products/Completed Operations coverage portions of the policies (as defined in the 1994 Settlement Agreement). Any such potential third party claims against Allstate are defined in the First Amended Plan as "Indirect PI Trust Claims" and are channeled to the Asbestos PI Trust to the extent Insurer is an "Asbestos Protected Party". In addition, any indemnification claim by Allstate against Grace pursuant to the 1994 Settlement Agreement is considered an Indirect PI Trust Claim and is likewise channeled to the Asbestos PI Trust. All Indirect

---

[1] The policies are 63 001 170, 63 002 048, 63 005 793, 63 001 171, 63 005 794, 63 006 854, 63 008 153, and 63 001 172.
[2] The 1994 Settlement Agreement is subject to the terms of a confidentiality provision and accordingly is not being included as an exhibit hereto.
[3] All capitalized terms, unless otherwise defined herein, have the meanings given to them in the First Amended Plan.

5316618v.1

PI Trust Claims are to be resolved in accordance with the Trust Distribution Procedures. Grace is to receive a discharge from those indemnification claims.

4. Seven additional Northbrook policies[4] are subject to releases of coverage once certain payments are made by Allstate in accordance with the terms of a Settlement Agreement that became effective on February 9, 1996 (the "1996 Settlement Agreement") (the 1994 Settlement Agreement and the 1996 Settlement Agreement are collectively referred to as the "Settlement Agreements").[5] Under the First Amended Plan, the right to any payments from those policies that may arise from the 1996 Settlement Agreement are also assigned to the Asbestos PI Trust. As to these policies, Allstate is not considered a "Settled Asbestos Insurance Company" and receives no protection from the proposed Asbestos PI Channeling Injunction despite the fact that the terms of the 1996 Agreement meet the standards for Bankruptcy Code section 524(g) protection. They are, however, included by the Plan Proponents as "Asbestos Insurance Reimbursement Agreements" identified on Schedule 3 to Exhibit 6 to the Exhibit Book, the Asbestos Insurance Transfer Agreement. Any potential recourse Allstate might have against Grace in the event third-party claims are asserted against Allstate directly would also constitute an Indirect PI Trust Claim and similarly be channeled to the Asbestos PI Trust. All Indirect PI Trust Claims are to be resolved in accordance with the Trust Distribution Procedures. Grace is to receive a discharge from those indemnification claims.

---

[4] The policies are 63 005 795, 63 006 855, 63 008 154, 63 002 049, 63 004 784, 63 001 173, and 63 003 296.

[5] The 1996 Settlement Agreement is also subject to the terms of a confidentiality provision and accordingly is not being included as an exhibit hereto.

5316618v.1

## PLAN OBJECTIONS

**1.    TO THE EXTENT THE FIRST AMENDED PLAN IS NOT INSURANCE NEUTRAL IT VIOLATES BANKRUPTCY CODE 1129(a)(1) AND (3).**

Section 7.2.2(d)(iv) of the First Amended Plan provides that "[o]n the Effective Date, the Asbestos PI Trust shall be the successor to all rights of the Debtors and Non-Debtor Affiliates under each Asbestos Insurance Reimbursement Agreement.  The Asbestos PI Trust's payment of an Asbestos PI Claim under the PI TDP shall be deemed to constitute settlement and payment of such claim by or on behalf of the Debtors or Non-Debtor Affiliates within the meaning of, and in full compliance with, each Asbestos Insurance Reimbursement Agreement."  This provision of the First Amended Plan ostensibly eviscerates all contractual rights Allstate has to ensure that the various prerequisites for payment under the 1996 Settlement Agreement have been met and that payment is in fact contractually due.

Moreover, the First Amended Plan plainly alters, if not eliminates, Allstate's indemnification rights, notwithstanding that the Asbestos PI Trust would receive all benefits of the Settlement Agreements.  Section 7.13 of the First Amended Plan provides in part as follows:

> Except as otherwise expressly provided in this Plan, the Debtors, the Reorganized Debtors, the Asbestos PI Committee, the Asbestos PD Committee, the Asbestos PI FCR, the Asbestos PD FCR, the CCAA Representative Counsel, and the Asbestos Protected Parties will not, pursuant to this Plan or otherwise, assume, agree to perform, pay, or indemnify creditors, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any of the Debtors' past or present Affiliates, as such liabilities or obligations may relate to or arise out of the operations of or assets of the Debtors or any of the Debtors' past or present Affiliates or any of their respective successors, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Confirmation Date.

That section further provides a release to the Asbestos Protected Parties, including Grace, from "(a) any and all Asbestos-Related Claims".

Similarly, section 8.1.1 discharges all "Claims, Plan Claims, demands and Equity Interests of any nature whatsoever" against the Debtors and enjoins any actions to collect, recover or offset any such debt.

Section 7.15 of the First Amended Plan provides, in part, that

> (a)    Except to the extent provided in this Section 7.15, notwithstanding anything to the contrary in the Confirmation Order, the Plan or any of the Plan Documents, nothing in the Confirmation Order, the Plan or any of the Plan Documents (including any other provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect.

That same section then carves out a substantial portion of the protections it purports to offer:

> (h)    The Asbestos Insurance Entities shall be subject to the releases and injunctions to the extent described in this Plan, and this Section 7.15 is not intended nor shall it be construed to limit the protections afforded to the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties by such releases and injunctions or to allow the Asbestos Insurance Entities to undertake any action against any of the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties that is contrary to such releases and/or injunctions.
>
> * * *
>
> (j)    Asbestos Insurance Entities that are parties to Asbestos Insurance Reimbursement Agreements shall be bound by the provisions of Section 7.2.2(d)(iv) with respect to such Asbestos Insurance Reimbursement Agreements.

First, by altering or eliminating Allstate's rights under the Settlement Agreements and, second, to the extent Section 7.15 or any other provision that purports to preserve insurer neutrality, could be construed to be inapplicable to preserve Allstate's full and complete indemnification rights against Grace in light of the releases and discharges

contained in sections 7.15 and 8.1.1 (or anywhere else in the First Amended Plan), the First Amended Plan impermissibly alters Allstate's rights under the policies and Settlement Agreements, has not been proposed in good faith and contains terms forbidden by law, and therefore fails to comply with 11 U.S.C. §§1129(a)(1) and (3).

**2.    TO THE EXTENT THE FIRST AMENDED PLAN ALTERS IN ANY WAY ALLSTATE'S INDEMNIFICATION RIGHTS, IT VIOLATES 11 U.S.C. § 365**

The First Amended Plan is non-committal on the issue of whether the Settlement Agreements are executory contracts that are subject to the assumption and assignment conditions set forth in Bankruptcy Code § 365. Article 9.1 of the First Amended Plan addresses executory contracts and unexpired leases. Section 9.1.1 provides, generally, that all executory contracts will be deemed assumed except for (i) certain contracts specifically rejected, (ii) the TSIA, and (iii) "agreements, to the extent executory, that create an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos PI Claims, Asbestos PD Claims or CDN ZAI PD Claims (other than all Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements, and Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreements, to the extent they are executory, and the 1998 Tax Sharing Agreement)." Thus, under this provision of the First Amended Plan, all or any of the Settlement Agreements that are considered executory are to be assumed.

Bankruptcy Code section 365(b)(1) requires, among other things, a debtor to cure existing defaults (or provide adequate assurance of a prompt cure) and to provide adequate assurance of future performance under the contract to be assumed. If an agreement is to be assumed and then assigned (assuming it is otherwise assignable),

section 365(f)(2) requires the assignee to provide adequate assurance of future performance. Under the First Amended Plan, Indirect PI Trust Claims, which include any indemnification claims by Allstate under the Settlement Agreements, are incorporated into the definition of "Asbestos PI Claim" and are to be paid by the Asbestos PI Trust as a Class 6 claim. First Amended Plan, § 3.1.6. Class 6 claims are, by the Plan Proponents' admission, impaired.

The Asbestos PI Trust Agreement provides that "[a]s set forth in Section 5.6 below, Indirect PI Trust Claims, if any, shall be subject to the same categorization, evaluation, and payment provisions of this TDP as all other PI Trust Claims." Section 5.6 of the Asbestos PI Trust Agreement references a definition of "Indirect PI Trust Claims" that is at odds with the First Amended Plan and excludes Allstate's potential indemnity claims. The First Amended Plan defines "Indirect PI Trust Claims" as a "Claim or remedy, liability, or Demand against the Debtors, now existing or hereafter arising . . . that is . . . (y) held by any Entity that is a claim seeking payment, repayment, reimbursement, indemnification, subrogation, or contribution from the Debtors with respect to any **insurance settlement agreement**, surety bond, letter of credit, or other financial assurance issued or entered into by any Entity on account of, or with respect to, Asbestos PI Claims . . . ." First Amended Plan, § 1.1(138) (emphasis added). The Asbestos PI Trust Agreement defines "Indirect PI Trust Claims" in a manner that eliminates the above-emphasized reference to "insurance settlement agreements." That conflict alone, if not rectified, should preclude plan confirmation.

Moreover, by subjecting Allstate's potential indemnity claims to the procedures and payment distribution percentages outlined in the Asbestos PI Trust Agreement, the

First Amended Plan plainly purports to alter Allstate's contractual rights. To the extent the Settlement Agreements are, or any Settlement Agreement is, an executory contract to be assumed by the Debtors, the First Amended Plan therefore cannot satisfy the Bankruptcy Code §§ 365(b)(1)(C) and 365(f)(2)(B) requirements that the Debtor, or assignee as the case may be, provide adequate assurance of its future performance. On their face, the First Amended Plan and Asbestos PI Trust Agreement establish that Grace's obligations under the Settlement Agreements will not be performed.

3.  **IF ANY ONE OR BOTH OF THE SETTLEMENT AGREEMENTS IS NOT AN EXECUTORY CONTRACT, ANY PROVISION OF THE PLAN THAT PRECLUDES AN ARGUMENT BY ALLSTATE THAT THE FIRST AMENDED PLAN'S TREATMENT OF GRACE'S INDEMNIFICATION OBLIGATIONS CONSTITUTES A BREACH OR AN ANTICIPATORY BREACH OF THE SETTLEMENT AGREEMENTS VIOLATES BANKRUPTCY CODE §1129**

On their face, the insurance neutrality provisions of section 7.15 seemingly preserve the argument by Allstate that Grace's abdication of its indemnification obligations under the Settlement Agreements constitutes either a breach or an anticipatory breach of those agreements. To the extent any provision of the First Amended Plan is intended or determined to impair that argument by Insurer in any way, it fails to comply with Bankruptcy Code § 1129(a)(1) and (3) because it does not comply with applicable provisions of Title 11 of the United States Code and was not proposed in good faith and not by any means forbidden by law.

4.  **ALLSTATE'S CONTRACTUAL INDEMNIFICATION CLAIMS ARE IMPROPERLY CLASSIFIED**

The First Amended Plan defines "General Unsecured Claims" to exclude Asbestos PI Claims. First Amended Plan, § 1.1(126). The First Amended Plan provides, in general, for the payment in full of the allowed amount of General Unsecured Claims.

5316618v.1

By including Allstate's contractual indemnification claims arising under the Settlement Agreements as "Asbestos PI Claims", and thereby (1) failing to classify them (and similar claims) separately or, alternatively, (2) excluding them as General Unsecured Claims, the First Amended Plan improperly classifies Allstate's claims.

5. **TO THE EXTENT ANY POTENTIAL THIRD PARTY CLAIMS AGAINST ALLSTATE ARE NOT CHANNELED TO THE TRUST, ALLSTATE'S RIGHTS UNDER THE SETTLEMENT AGREEMENTS ARE FURTHER IMPAIRED**

Upon information and belief, various third parties who have asserted Asbestos PI Claims against the Debtors, which the Debtors have or may contend give rise to a reimbursement or payment obligation by Allstate, have objected or may object to the First Amended Plan. If and to the extent any such objection is resolved or adjudicated in a manner that does not enjoin or prohibit direct action by such third parties against Allstate, the treatment of those claims will further impair Allstate's rights under the Settlement Agreements. The practical effect of leaving Allstate with any direct exposure to third party claims, while at the same time limiting its indemnification claims, is that Allstate's exposure will be magnified, its contractual rights impaired and its benefit of the bargain denied.

6. **THE PROVISIONS FOR RETENTION OF JURISDICTION ARE IMPROPER AND OVERLY BROAD**

Article 10 of the First Amended Plan contains numerous provisions for the "retention" of jurisdiction by the bankruptcy court to hear and determine a wide variety of matters. Among those, Article 10.9 provides that the bankruptcy court will retain jurisdiction "[t]o hear and determine matters concerning the Asbestos Insurance Policies, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreements,

9

and Asbestos Insurance Settlement Agreements; *provided, however,* that the Court shall have nonexclusive jurisdiction over such matters." To the extent this Court determines that it will retain jurisdiction over any matters, the scope of the retention can be no broader than would otherwise be permissible under applicable law. The retention should not and cannot, for example, alter or otherwise limit the permissive or mandatory abstention provisions set forth in 28 U.S.C. §1334(c)(1) and (2).

**7.     JOINDER OF OTHER INSURERS' OBJECTIONS**

Allstate joins in the objections by all other insurers to the extent not already identified above.

Dated: May 20, 2009
       Wilmington, Delaware

Respectfully submitted,

White & Williams, LLP

By:     /s/ James S/ Yoder
JAMES S. YODER, ESQ. (DE #2643)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899
(302) 467-4524

-and-

Stefano Calogero Esq.
Andrew K. Craig, Esq.
Edgar Whiting, Esq.
CUYLER BURK, P.C.
Parsippany Corporate Center
Four Century Drive
Parsippany, NJ 07054

5316618v.1