# EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 01-01139 JKF |
| W.R. Grace & Co., *et al.* | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |

### DECLARATION OF MICHAEL J. POWERS
### PURSUANT TO 28 U.S.C. § 1746

I, Michael J. Powers, do hereby declare as follows:

1.      I am Assistant Vice President – Direct Claims at Resolute Management, Inc. – New England Division ("Resolute-NE"), with offices at Two Central Square, Cambridge, Massachusetts 02139-3111.

2.      Resolute-NE has been separately designated by Government Employees Insurance Company ("GEICO") and by Republic Insurance Company n/k/a Starr Indemnity & Liability Company ("Republic") as their Third-Party Administrator with respect to certain claims and coverage issues related to certain policies of insurance issued by GEICO and by Republic to W.R. Grace & Company, *et al.* I am the Resolute-NE employee charged with handling these accounts, and in that capacity I have knowledge regarding the documents attached and described below.

3.      I make this declaration in support of the Final Objections of Government Employees Insurance Company and Republic Insurance Company n/k/a Starr Indemnity & Liability Company to Confirmation of Amended Joint Plan of Reorganization (the "Plan Objections"), as well as to put certain information and documents before the Court that are pertinent to the Plan Objections.

PHLIT/ 1132533.2

4.      Attached hereto as Exhibit A is a true and correct copy of GEICO Policy No. GXU 30031, issued to W.R. Grace & Company, *et al.*, by Government Employees Insurance Company for the period 6/30/81 to 6/30/82, as obtained from records maintained by GEICO in the regular course of business.

5.      Attached hereto as Exhibit B is a true and correct copy of GEICO Policy No. GXU 30152, issued to W.R. Grace & Company, *et al.*, by Government Employees Insurance Company for the period 6/30/82 to 6/30/83, as obtained from records maintained by GEICO in the regular course of business.

6.      Attached hereto as Exhibit C is a true and correct copy of GEICO Policy No. GXO 30267, issued to W.R. Grace & Company, *et al.*, by Government Employees Insurance Company for the period 6/30/83 to 6/30/84, as obtained from records maintained by GEICO in the regular course of business.

7.      Attached hereto as Exhibit D is a true and correct copy of Republic Policy No. CDE 749, issued to W.R. Grace & Company, *et al.*, by Republic Insurance Company for the period 6/30/83 to 6/30/84, as obtained from records maintained by Republic in the regular course of business.

8.      Attached hereto as Exhibit E is a true and correct copy of Republic Policy No. CDE 750, issued to W.R. Grace & Company, *et al.*, by Republic Insurance Company for the period 6/30/83 to 6/30/84, as obtained from records maintained by Republic in the regular course of business.

9.      Attached hereto as Exhibit F is a true and correct copy of London Policy No. 79 DD 1633C (also referenced as Cover Note No. PY107779), issued to W.R. Grace & Company, *et al.*, by Certain London Market Insurance Companies for the period 6/30/79 to 6/30/82, obtained

from records maintained by GEICO in the regular course of business, certain terms of which may be incorporated by reference into GEICO Policy No. GXU 30031 (Ex. A).

10.     Attached hereto as Exhibit G is a true and correct copy of London Policy No. KYO 17582, issued to W.R. Grace & Company, *et al.*, by Certain London Market Insurance Companies for the period 6/30/82 to 6/30/85, as obtained from records maintained by Republic in the regular course of business, certain terms of which may be incorporated by reference into GEICO Policy No. 30152 (Ex. B), GEICO Policy No. 30267 (Ex. C), Republic Policy No. CDE 749 (Ex. D), and Republic Policy No. CDE 750 (Ex. E).


I, Michael J. Powers, do hereby declare under penalty of perjury that the foregoing is true and correct.  Executed on May *19*, 2009 at Cambridge, Massachusetts.


_____
Michael J. Powers

# EXHIBIT A

# GEICO

## GOVERNMENT EMPLOYEES INSURANCE COMPANY
### HOME OFFICE ● WASHINGTON, D.C. 20076

## EXCESS UMBRELLA LIABILITY POLICY

### DECLARATIONS

Policy Number GXU  30031                          Renewal of:  New

Item 1.  A.  Named Insured:  **W. R. Grace & Company and/or subsidiary, associated, affiliated Companies and/or organizations, owned, controlled and/or managed Companies as now or hereinafter constituted.**

B.  Named Insured's Address:  **1114 Avenue of the Americas New York, New York 10036**

*Diversified indust. Prods. Mfg.*

Item 2.  Policy Period: From_____**June 30, 1981**_____ to_____**June 30, 1982**_____
12:01 A.M., standard time at the address of the Named Insured as stated herein.

Item 3.  First Underlying Umbrella Liability Policy (Insurer, Limits, Policy Number):
**$5,000,000 each occurrence and aggregate where applicable as lead by Underwriters at Lloyds of London and Certain British Companies Policy No. TBA.**

Item 4.  Underlying Umbrella Liability Limits of Liability
with respect to each occurrence:                              $ **200,000,000**
which limits apply in excess of underlying insurance.

Item 5.  Underlying Umbrella Liability Agregate Limits
of Liability Where Applicable                                 $ **200,000,000**
which limits apply in excess of underlying insurance.

Item 6.  GEICO's Limit of Liability: As per Insuring Agreement II:

a.  $ **10,000,000**     each occurrence
b.  $ **10,000,000**     aggregate where applicable

**which is part of $50,000,000 each occurrence and aggregate where applicable in excess of Items (4) and (5) above.**

Item 7.  Premium:
a.  Flat Charge              $ **5,000**
b.  Deposit Premium          $
c.  Minimum Premium          $
d.  Rate
e.  Audit Reporting Period:
(Annual unless otherwise indicated)

Item 8.  Endorsements Attached at inception:
**ELE-14, ELE-16, No. 3 (Canc. Rev.)**

Countersigned by Authorized Representative

ELU-2 (2-81)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

HOME OFFICE COPY

GEI-000001

# ENDORSEMENT    1

Effective Date ___June 30, 1981___

## NEW YORK STATE AMENDATORY ENDORSEMENT

### (EXCESS UMBRELLA POLICY)

1.  It is understood and agreed that Condition E. of the policy is deleted in its entirety and the following is substituted therefor;

    E.  Action Against GEICO; Payment of Loss

    No action shall lie against GEICO unless, as a condition precedent thereto:

    (1)  there shall have been full compliance with all the terms of this policy,

    (2)  the full amount of the underlying umbrella limits shall have been paid by or on behalf of the insured, and

    (3)  the insured's obligation to pay ultimate net loss shall have been finally determined either by final judgment against the insured or by written agreement of the insured, the claimant, and GEICO.

    Thereafter, any person or organization or the legal representative thereof who has secured such judgment or written agreement shall be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join GEICO as a party to any action against the insured to determine the insured's liability, nor shall GEICO be impleaded by the insured or his legal representative.

    In the event of a judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract, shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, and upon GEICO, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against GEICO under the terms of this policy for the amount of such judgment not exceeding the amount of the applicable limit of liability hereunder.

2.  It is agreed that Condition B. of the policy is deleted in its entirety and the following is substituted therefor;

    B.  Maintenance of Underlying Umbrella Insurance

    The underlying umbrella insurance shall be maintained in full effect during the currency of this policy without reduction of coverage or limits of liability except for any reduction of the aggregate limits of liability contained therein solely by reason of:

    (1)  payment of judgments or settlements thereunder in respect of occurrences taking place during the policy period,

    (2)  payment of judgments or settlements thereunder in respect of damages because of personal injury or advertising injury arising out of an offense committed during the policy period (applicable only if the immediate underlying umbrella policy insures personal injury or advertising injury on other than an occurrence basis), or

    (3)  the operation of a "Prior Insurance and Non-Cumulation of Liability" provision thereunder.

    If the immediate underlying umbrella policy is cancelled, this policy likewise will be cancelled upon ten (10) days written notice to the named insured, and such date and time shall become the end of the policy period. If the immediate underlying umbrella policy otherwise ceases to apply (for reasons other than reduction of the aggregate limits of liability therein as provided in the first paragraph of this Condition), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the named insured.

    Except as otherwise provided in this Condition, failure of the named insured to comply with this Condition shall not invalidate this policy, but in the event of such failure, GEICO shall be liable under this policy only to the same extent that it would have been liable had the named insured complied with this Condition. The insured shall promptly reimburse GEICO for any amounts that GEICO would not have had to pay but for the insured's failure to comply with this Condition.

    All other terms, conditions and exclusions remain the same.

_____Attached to and made a part of Policy No.___GXU 30031_____of GOVERNMENT EMPLOYEES INSURANCE COMPANY,_____

issued to___W. R. Grace & Company, etal_____

Countersigned: At__New York, New York_____ Date___June 18, 1981____

_____     _____
            Secretary.                            President.

By _____
        Authorized Representative

ELE-14 (3-81)     **CONFIDENTIAL**
                  **SUBJECT TO APRIL 2009**
                  **PROTECTIVE ORDER**

GEI-000002

# ENDORSEMENT        2

Effective Date __June 30, 1981__

## NEW YORK STATE AMENDATORY ENDORSEMENT

### (EXCESS UMBRELLA OR EXCESS LIABILITY POLICY)

It is hereby understood and agreed that, notwithstanding anything in this policy to the contrary, with respect to such insurance as is afforded by this policy, the terms of this policy as respects coverage for operations in the State of New York shall conform to the coverage requirements of the applicable insurance laws of the State of New York or the applicable regulations of the New York Insurance Department; provided, however, that the Company's limit of liability as stated in this policy shall be excess of the limits of liability of any underlying insurance of self-insurance as stated in the Declarations or in any endorsement attached hereto.

Attached to and made a part of Policy No. __GXII 30031__ of GOVERNMENT EMPLOYEES INSURANCE COMPANY,

issued to __W. R. Grace & Company, etal__

Countersigned: At __New York, New York__         Date __June 18, 1981__

Secretary.                    President.

By _____
        Authorized Representative

ELE-16 (3-81)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

# GEICO

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| W. R. Grace & Company, etal | | | 3 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| GXU | 30631 | 6/30/81 – 6/30/82 | 6/30/81 |

Issued By (Name of Insurance Company)

**Government Employees Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that Condition (K) of the policy, cancellation, is amended in part as follows:

Reference to "thirty (30) days" is amended to read "sixty (60) days"

All other terms and conditions remain unchanged.

_____
Authorized Agent

ELE-23 (3-81)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

HOME OFFICE COPY

GEI-000004

# GEICO

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| W. R. Grace & Company, etal | | | 4 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| GXU | 20021 | 6/30/81 - 6/30/82 | 6/30/81 |

Issued By (Name of Insurance Company)

**Government Employees Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

In consideration of the premium charged, it is agreed to amend Item (3) of the Declarations in part to reflect Cover Note No. PY 107779.

Authorized Agent

ELE-23 (3-81)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

HOME OFFICE COPY

GEI-000005

# GOVERNMENT EMPLOYEES INSURANCE COMPANY

A Shareholder Owned Company  –  Not Affiliated with the United States Government (herein called GEICO)

### HOME OFFICE ● WASHINGTON, D.C. 20076

### EXCESS UMBRELLA LIABILITY POLICY

In consideration of the payment of the premium, if paid when due, in reliance upon the statements in the Declarations made a part hereof, and subject to all the terms of this policy, agrees with the named insured as follows:

### INSURING AGREEMENTS

I. Coverage

GEICO will pay on behalf of the insured all sums in excess of the **underlying umbrella limits** which the insured shall become legally obligated to pay as damages because of

A. Bodily Injury,
B. Personal Injury,
C. Property Damage, or
D. Advertising Injury

to which this policy applies and arising out of hazards which are covered by and defined in the **immediate underlying umbrella policy.**

This policy is subject to the same terms, definitions, exclusions, and conditions (except as otherwise provided herein) as are contained in the **immediate underlying umbrella policy;** but this policy shall not be subject to the terms and conditions of the **immediate underlying umbrella policy** with respect to the premium, the policy period, the renewal or extension agreement (if any), the amount and limits of liability, or any other term, definition, exclusion, or condition which may be inconsistent with this policy.

II. Limit of Liability

It is expressly agreed that liability shall attach to GEICO only after the full amount of the **underlying umbrella limits** shall have been paid by or on behalf of the insured, and GEICO shall then be liable to pay only the excess thereof up to a further

$ (as stated in Item 6a of the Declarations)  **ultimate net loss** with respect to each occurrence - subject to a limit of

$ (as stated in Item 6b of the Declarations)  in the aggregate for each **annual period** with respect to any hazard for which an aggregate limit of liability applies in the **immediate underlying umbrella policy.**

If any damages covered hereunder are also covered in whole or in part under any other excess policy issued to the insured prior to the inception date hereof, GEICO's limit of liability as stated in Item 6 of the Declarations shall be reduced by any amounts due to the insured on account of such damages covered under any such prior insurance.

III. Policy Period

This policy applies only to occurrences which take place during the **policy period.**

If the **immediate underlying umbrella policy** insures personal injury or advertising injury on other than an occurrence basis, this policy applies only to damages which are payable because of personal injury or advertising injury arising out of an offense committed during the **policy period.**

### EXCLUSION

In addition to the exclusions contained in the **immediate underlying umbrella policy,** this policy does not apply to any claim based on the insured's failure to comply with the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, and amendments thereto, or similar provisions of any Federal, State, or local statutory law or common law.

### DEFINITIONS

When used in this policy, including endorsements forming a part hereof:

A. "Annual period" means each consecutive period of one year commencing from the effective date of this policy.

B. "Immediate underlying umbrella policy" means the policy of the **underlying umbrella insurance** which provides the layer of umbrella liability insurance immediately preceding the layer of umbrella liability insurance provided by this policy.

C. "Named Insured" means the person or organization named in Item 1 of the Declarations (the first "named insured") and also includes any person or organization qualifying as a named insured in the **immediate underlying umbrella policy.**

D. "Policy Period" means the period set forth in Item 2 of the Declaration, subject to Conditions B and K of this policy.

E. "Ultimate net loss": This policy is subject to the same definition of "ultimate net loss" as is contained in the **immediate underlying umbrella policy.** If not defined in the **immediate underlying umbrella policy,** "ultimate net loss" means all sums which the insured, or any organization as his insurer, or both, become obligated to pay as damages because of bodily injury, personal injury, property damage, or advertising injury, either through adjudication or settlement with the written consent of GEICO; but "ultimate net loss" does not include costs or expenses which any person or organization has incurred in the investigation, settlement, or defense of any claim or suit, notwithstanding that the **underlying umbrella insurance** may provide insurance for such costs or expenses.

F. "Underlying umbrella insurance" means:

(1) the umbrella liability insurance policies set forth in Item 3 of the Declarations, including any renewal or replacement thereof not more restrictive, and

(2) umbrella liability insurance policies not set forth in Item 3 of the Declarations which have been reported to and accepted in writing by GEICO.

G. "Underlying umbrella limits" means the sum of the limits of liability of the **underlying umbrella insurance** and any other available umbrella liability insurance collectible by the insured (other than umbrella liability insurance purchased specifically to apply either in excess of GEICO's limit of liability hereunder or as contributing insurance to the layer of umbrella liability insurance provided by this policy), provided that "underlying umbrella limits" means not less than the following amounts:

$ (as stated in Item 4 of the Declarations)  **ultimate net loss** with respect to each occurrence, but

$ (as stated in Item 5 of the Declarations)  in the aggregate for each **annual period** with respect to any hazard for which an aggregate limit of liability applies in the **immediate underlying umbrella policy.**

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

EL-2 (2-81)

## RECONCILIATION OF TERMS

Whenever the following terms are used in the immediate underlying umbrella policy, this policy shall be changed as follows:

1. "Advertising offense" or "advertising liability" or "advertising damage" are synonymous with "advertising injury" and shall be substituted for the words "advertising injury" wherever appearing in this policy or endorsements forming a part hereof.

2. "Assured" is synonymous with "insured" and shall be substituted for the word "insured" wherever appearing in this policy or endorsements forming a part hereof.

3. "Named assured" is synonymous with "named insured" and shall be substituted for the words "named insured" wherever appearing in this policy or endorsements forming a part hereof; provided, however, that the definition of "named assured" shall be subject to the definition of "named insured" contained in this policy.

## CONDITIONS

A. **Premium**

If the premium is stated in the Declarations as a flat charge, such premium is applicable to the first annual period and is not subject to adjustment except as hereinafter provided.

If the premium is stated in the Declarations as other than a flat charge, such premium is an advance premium only which shall be credited to the amount of the earned premium due at the end of the annual period.

As the close of each period (or part thereof terminating with the end of the policy period) designated in the Declarations as the "Audit Reporting Period", the earned premium for such period shall be computed in accordance with the rates and minimum premium stated in the Declarations, and upon notice thereof to the first named insured shall become due and payable. If the total earned premium for the annual period is less than the premium previously paid, GEICO shall return to the first named insured the unearned portion paid by the first named insured.

Appropriate additional premium shall be payable with respect to any change in the premium for the underlying umbrella insurance or with respect to any person or organization becoming a named insured during the policy period.

The premium and rate for each successive annual period shall be indicated in a written notice sent to the first named insured, and the premium shall become due on the date indicated in such notice.

The first named insured shall maintain records of such information as is necessary for premium computation and shall send copies of such records to GEICO as the end of the annual period and at such other times as GEICO may direct.

B. **Maintenance of Underlying Umbrella Insurance**

The underlying umbrella insurance shall be maintained in full effect during the currency of this policy without reduction of coverage or limits of liability except for any reduction of the aggregate limits of liability contained therein solely by reason of:

(1) payment of judgments or settlements thereunder in respect of occurrences taking place during the policy period,

(2) payment of judgments or settlements thereunder in respect of damages because of personal injury or advertising injury arising out of an offense committed during the policy period (applicable only if the immediate underlying umbrella policy insures personal injury or advertising injury on other than an occurrence basis), or

(3) the operation of a "Prior Insurance and Non-Cumulation of Liability" provision thereunder.

If the immediate underlying umbrella policy is cancelled, this policy likewise is cancelled on the same date at the same time without notice to the named insured, and such date and time shall become the end of the policy period. If the immediate underlying umbrella policy otherwise ceases to apply (for reasons other than reduction of the aggregate limits of liability therein as provided in the first paragraph of this Condition), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the named insured.

Except as otherwise provided in this Condition, failure of the named insured to comply with this Condition shall not invalidate this policy, but in the event of such failure, GEICO shall be liable under this policy only to the same extent that it would have been liable had the named insured complied with this Condition. The insured shall promptly reimburse GEICO for any amounts that GEICO would not have had to pay but for the insured's failure to comply with this Condition.

C. **Insured's Duties**

(1) Written notice of any occurrence or injury or offense reasonably likely to result in a claim under this policy shall be given to GEICO by or on behalf of the insured as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and the fullest information available at the time.

(2) If claim is made or suit is brought against the insured, the insured shall immediately forward to GEICO every demand, notice, summons, or other process received by him or his representative.

(3) The insured shall cooperate with GEICO and, upon GEICO's request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, personal injury, property damage, or advertising injury with respect to which insurance is afforded under this policy; and the insured shall attend hearings and assist in securing and giving evidence and obtaining evidence and obtaining the attendance of witnesses.

(4) The insured shall comply with all the terms of the underlying umbrella insurance and shall cooperate with the insurers thereof.

(5) The insured shall not, except at his own expense, voluntarily make any payment, assume any obligation, or incur any expense.

(6) Upon notice that any aggregate limit of liability contained in any policy of the underlying umbrella insurance has been exhausted or impaired, the named insured shall immediately make all reasonable efforts to reinstate such limits.

(7) The named insured shall give GEICO prompt notice of:

(a) any changes in the scope of the coverage or in the amount of limits of insurance under any policy of the underlying umbrella insurance;

(b) any change in the premium for any policy of the underlying umbrella insurance;

(c) any renewal or replacement of any policy of the underlying umbrella insurance.

D. **Appeals**

In the event the insured or any organization as his insurer elect not to appeal a judgment in excess of the underlying umbrella limits, GEICO may elect to do so at its own cost and expense, and shall be liable, in addition to the applicable limit of liability, for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of GEICO for ultimate net loss exceed the limits of liability set forth in Insuring Agreement II of this policy and in addition the cost and expenses of such appeal.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000062

E.   Action Against GEICO; Payment of Loss

No action shall lie against GEICO unless, as a condition precedent thereto:

(1)   there shall have been full compliance with all the terms of this policy,

(2)   the full amount of the underlying umbrella limits shall have been paid by or on behalf of the insured, and

(3)   the insured's obligation to pay ultimate net loss shall have been finally determined either by final judgment against the insured after actual trial or by written agreement of the insured, the claimant, and GEICO.

Thereafter, any person or organization or the legal representative thereof who has secured such judgment or written agreement shall be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join GEICO as a party to any action against the insured to determine the insured's liability, nor shall GEICO be impleaded by the insured or his legal representative.

All ultimate net loss covered by this policy shall be due and payable by GEICO within thirty (30) days after such ultimate net loss is respectively claimed and proven in accordance with the terms of this policy.

F.   Other Insurance

The insurance afforded by this policy shall apply as excess insurance, not contributory, to other available insurance collectible by the insured and covering damages against which insurance is afforded by this policy (other than insurance purchased specifically to apply either in excess of GEICO's limit of liability hereunder or as contributing insurance to the layer of umbrella liability insurance provided by this policy).

G.   Subrogation and Other Recoveries .

In the event of any payment under this policy, GEICO shall be subrogated to all of the insured's rights of recovery therefor against any person or organization, and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing to prejudice such rights.

Because this policy provides excess insurance, the insured's right of recovery cannot always be exclusively subrogated to GEICO. It is, therefore, agreed that in such event GEICO shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow the principle that any interest, including the insured, who shall have paid an amount over and above the sum of the underlying umbrella limits and GEICO's applicable limit of liability shall first be reimbursed up to the amount paid as ultimate net loss liability by such interest. GEICO shall then be reimbursed out of any balance then remaining up to the amounts paid under this policy. Lastly, the interests, including the insured, of whom this insurance is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amounts shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

H.   Changes

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop GEICO from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of GEICO.

I.   Assignment

Assignment of interest under this policy shall not bind GEICO until its consent is endorsed hereon.

J.   First Named Insured

The first named insured named in Item 1 of the Declarations shall be responsible for payment of all premiums and is authorized to act on behalf of all other insureds and named insureds with respect to giving and receiving notice of cancellation and to receiving any return premium that may become payable under this policy.

K.   Cancellation

This policy may be cancelled by the first named insured by mailing to GEICO written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by GEICO by mailing to the first named insured at the address shown in this policy written notice stating when not less than thirty (30) days thereafter, or ten (10) days thereafter with respect to cancellation for non-payment of premium, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the first named insured or by GEICO shall be the equivalent of mailing.

If the first named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If GEICO cancels, earned premium shall be computed pro-rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

L.   Declarations

By acceptance of this policy, the named insured agrees that the statements in the Declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between himself and GEICO or any of its agents relating to this insurance.

## NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those stated elsewhere in this policy.

This policy does not apply:

1)   to injury, sickness, disease, death or destruction

(a)   with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

2)  to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3)  to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

   (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

   (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored transported or disposed of by or on behalf of an Insured; or

   (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation, or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

As used in this exclusion:

"Hazardous Properties" include radioactive, toxic or explosive properties;

"Nuclear Material" means source material, special nuclear material or byproducts material;

"Source Material," "Special Nuclear Material," and "Byproduct Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"Waste" means any waste material (1) containing byproduct material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility;

"Nuclear Facility" means

(a)  any nuclear reactor,

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on each site and all premises for such operations;

"Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "Injury" or "Destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, the Government Employees Insurance Company has caused this amendment to be signed by the President and Secretary of the Company.


_[signature]_                                    _[signature]_
          Secretary.                                      President.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

# EXHIBIT B

 **GEICO**

# GOVERNMENT EMPLOYEES INSURANCE COMPANY
## HOME OFFICE ● WASHINGTON, D.C. 20076

## EXCESS UMBRELLA LIABILITY POLICY

### DECLARATIONS

Policy Number  GXU    Nᵒ  30152                    Renewal of:  GXU  30031

Item 1.  A.  Named Insured:  W. R. Grace & Company and/or subsidiary, associated, affiliated
Companies and/or organizations, owned, controlled and/or
managed Companies as now or hereinafter constituted.

B.  Named Insured's Address:  1114 Avenue of the Americas
New York, New York  10036

*Diversified Corblort. Info
Chemicals, natural Resources,
Consumer Services/Products*

Item 2.  Policy Period: From_____June 30, 1982_____ to_____June 30, 1983____
12:01 A.M., standard time at the address of the Named Insured as stated herein.

*Products = 85%*

Item 3.  First Underlying Umbrella Liability Policy (Insurer, Limits, Policy Number):
$5,000,000 each occurrence and aggregate where applicable as provided by Underwriters
at Lloyds of London and Certain British Companies Policy No. TBA.

Item 4.  Underlying Umbrella Liability Limits of Liability
with respect to each occurrence:                  $  150,000,000
which limits apply in excess of underlying insurance.

Item 5.  Underlying Umbrella Liability Agregate Limits
of Liability Where Applicable                      $  150,000,000
which limits apply in excess of underlying insurance.

Item 6.  GEICO's Limit of Liability: As per Insuring Agreement II:

a.  $ 10,000,000      each occurrence
b.  $ 10,000,000      aggregate where applicable

which is part of $100,000,000 each occurrence and aggregate where applicable in
excess of Items (4) and (5) above.

Item 7.  Premium:    a.  Flat Charge .................................. $ 5,000
b.  Deposit Premium          $
c.  Minimum Premium          $
d.  Rate
e.  Audit Reporting Period:
(Annual unless otherwise indicated)

Item 8.  Endorsements Attached at inception:

ELE-14, ELE-16, No. 3 (Cancellation Rev.), No. 4 (Following Form endorsement)

7/6/82-jc

_____
Countersigned by Authorized Representative

ELU-2 (2-81)          CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

ORIGINAL

GEI-000006

ENDORSEMENT ————————————(1)————

Effective Date ___June 30, 1982___

## NEW YORK STATE AMENDATORY ENDORSEMENT

### (EXCESS UMBRELLA POLICY)

. 1.   It is understood and agreed that Condition E. of the policy is deleted in its entirety and the following is substituted therefor;

E.   Action Against GEICO; Payment of Loss

No action shall lie against GEICO unless, as a condition precedent thereto:

(1)   there shall have been full compliance with all the terms of this policy,

(2)   the full amount of the underlying umbrella limits shall have been paid by or on behalf of the insured, and

(3)   the insured's obligation to pay ultimate net loss shall have been finally determined either by final judgment against the insured or by written agreement of the insured, the claimant, and GEICO.

Thereafter, any person or organization or the legal representative thereof who has secured such judgment or written agreement shall be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join GEICO as a party to any action against the insured to determine the insured's liability, nor shall GEICO be impleaded by the insured or his legal representative.

In the event of a judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract, shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, and upon GEICO, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against GEICO under the terms of this policy for the amount of such judgment not exceeding the amount of the applicable limit of liability hereunder.

2.   It is agreed that Condition B. of the policy is deleted in its entirety and the following is substituted therefor;

B.   Maintenance of Underlying Umbrella Insurance

The underlying umbrella insurance shall be maintained in full effect during the currency of this policy without reduction of coverage or limits of liability except for any reduction of the aggregate limits of liability contained therein solely by reason of:

(1)   payment of judgments or settlements thereunder in respect of occurrences taking place during the policy period,

(2)   payment of judgments or settlements thereunder in respect of damages because of personal injury or advertising injury arising out of an offense committed during the policy period (applicable only if the immediate underlying umbrella policy insures personal injury or advertising injury on other than an occurrence basis), or

(3)   the operation of a "Prior Insurance and Non-Cumulation of Liability" provision thereunder.

If the immediate underlying umbrella policy is cancelled, this policy likewise will be cancelled upon ten (10) days written notice to the named insured, and such date and time shall become the end of the policy period. If the immediate underlying umbrella policy otherwise ceases to apply (for reasons other than reduction of the aggregate limits of liability therein as provided in the first paragraph of this Condition), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the named insured.

Except as otherwise provided in this Condition, failure of the named insured to comply with this Condition shall not invalidate this policy, but in the event of such failure, GEICO shall be liable under this policy only to the same extent that it would have been liable had the named insured complied with this Condition. The insured shall promptly reimburse GEICO for any amounts that GEICO would not have had to pay but for the insured's failure to comply with this Condition.

All other terms, conditions and exclusions remain the same.

Attached to and made a part of Policy No._____GXU 30152_____of GOVERNMENT EMPLOYEES INSURANCE COMPANY,

Issued  to_____W. R. Grace & Company, etal

Countersigned: At___New York, New York_____Date____July 6, 1982

_____                    _____
            Secretary.                                        President.

By _____
        Authorized Representative

ELE-14 (3-81)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000007

# ENDORSEMENT                                   (2)

Effective Date ___June 30, 1982___

## NEW YORK STATE AMENDATORY ENDORSEMENT

### (EXCESS UMBRELLA OR EXCESS LIABILITY POLICY)

It is hereby understood and agreed that, notwithstanding anything in this policy to the contrary, with respect to such insurance as is afforded by this policy, the terms of this policy as respects coverage for operations in the State of New York shall conform to the coverage requirements of the applicable insurance laws of the State of New York or the applicable regulations of the New York Insurance Department; provided, however, that the Company's limit of liability as stated in this policy shall be excess of the limits of liability of any underlying insurance of self-insurance as stated in the Declarations or in any endorsement attached hereto.

Attached to and made a part of Policy No.__GXU 30152_____of GOVERNMENT EMPLOYEES INSURANCE COMPANY,

issued to__W. R. Grace & Company, etal_____

Countersigned: At__New York, New York_____Date__July 6, 1982_____

_Secretary._                          _President._

By_____
                 Authorized Representative

ELE-16 (3-81)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000008

# GEICO

| Named Insured | Endorsement Number |
|---|---|
| W. R. Grace & Company, etal | (3) |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| GXU | 30152 | 6/30/82 – 6/30/83 | 6/30/82 |

Issued By (Name of Insurance Company)

Government Employees Insurance Company

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that Condition (K) of the policy, cancellation, is amended in part as follows:

Reference to "thirty (30) days" is amended to read "sixty (60) days"

All other terms and conditions remain unchanged.

Authorized Agent

ELE-23 (3-81)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

ORIGINAL

GEI-000009

# GEICO

| Named Insured | Endorsement Number |
|---|---|
| W. R. Grace & Company, et al | (4) |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| GXU | 30152 | 6/30/82 – 6/30/83 | 6/30/82 |

| Issued By (Name of Insurance Company) |
|---|
| Government Employees Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that except only with respect for policy term, premium and limit
of liability, this policy is hereby amended to follow all the terms, conditions,
definitions and exclusions of the first layer Umbrella policy, Lloyds of London
and Certain British Companies Policy No. TBA, and all renewals and replacements
thereof. It is further agreed that all preprinted terms and conditions hereon
are deleted to the extent that they vary from or are inconsistent with the terms
and conditions of the first layer Umbrella.

Authorized Agent

ELE-23 (3-81)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

ORIGINAL

GEI-000010

# GEICO

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| W. R. Grace & Company, etal | | | (5) |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| GXS | 30152 | 6/30/82 – 6/30/83 | 6/30/82 |
| Issued By (Name of Insurance Company) | | | |
| Government Employees Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

In consideration of the premium charged, it is agreed to amend Item 3. of the Declarations, in part, to reflect Cover Note No. KYO 17582.

8/17/82--jc

_____
Authorized Agent

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

HOME OFFICE COPY

# GOVERNMENT EMPLOYEES INSURANCE COMPANY

A Shareholder Owned Company — Not Affiliated with the United States Government (herein called GEICO)

HOME OFFICE ● WASHINGTON, D.C. 20076

## EXCESS UMBRELLA LIABILITY POLICY

In consideration of the payment of the premium, if paid when due, in reliance upon the statements in the Declarations made a part hereof, and subject to all the terms of this policy, agrees with the named insured as follows:

### INSURING AGREEMENTS

I.  Coverage

GEICO will pay on behalf of the insured all sums in excess of the **underlying umbrella limits** which the insured shall become legally obligated to pay as damages because of

A.  Bodily Injury,
B.  Personal Injury,
C.  Property Damage, or
D.  Advertising Injury

to which this policy applies and arising out of hazards which are covered by and defined in the **immediate underlying umbrella policy.**

This policy is subject to the same terms, definitions, exclusions, and conditions (except as otherwise provided herein) as are contained in the **immediate underlying umbrella policy**; but this policy shall not be subject to the terms and conditions of the **immediate underlying umbrella policy** with respect to the premium, the policy period, the renewal or extension agreement (if any), the amount and limits of liability, or any other term, definition, exclusion, or condition which may be inconsistent with this policy.

II.  Limit of Liability

It is expressly agreed that liability shall attach to GEICO only after the full amount of the **underlying umbrella limits** shall have been paid by or on behalf of the insured, and GEICO shall then be liable to pay only the excess thereof up to a further

$ (as stated in Item 6a of the Declarations)  **ultimate net loss** with respect to each occurrence - subject to a limit of

$ (as stated in Item 6b of the Declarations)  in the aggregate for each **annual period** with respect to any hazard for which an aggregate limit of liability applies in the **immediate underlying umbrella policy.**

If any damages covered hereunder are also covered in whole or in part under any other excess policy issued to the insured prior to the inception date hereof, GEICO's limit of liability as stated in Item 6 of the Declarations shall be reduced by any amounts due to the insured on account of such damages covered under any such prior insurance.

III.  Policy Period

This policy applies only to occurrences which take place during the **policy period.**

If the **immediate underlying umbrella policy** insures personal injury or advertising injury on other than an occurrence basis, this policy applies only to damages which are payable because of personal injury or advertising injury arising out of an offense committed during the **policy period.**

### EXCLUSION

In addition to the exclusions contained in the **immediate underlying umbrella policy**, this policy does not apply to any claim based on the insured's failure to comply with the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, and amendments thereto, or similar provisions of any Federal, State, or local statutory law or common law.

### DEFINITIONS

When used in this policy, including endorsements forming a part hereof:

A.  "Annual period" means each consecutive period of one year commencing from the effective date of this policy.

B.  "Immediate underlying umbrella policy" means the policy of the **underlying umbrella insurance** which provides the layer of umbrella liability insurance immediately preceding the layer of umbrella liability insurance provided by this policy.

C.  "Named Insured" means the person or organization named in Item 1 of the Declarations (the first "named insured") and also includes any person or organization qualifying as a named insured in the **immediate underlying umbrella policy.**

D.  "Policy Period" means the period set forth in Item 2 of the Declaration, subject to Conditions B and K of this policy.

E.  "Ultimate net loss": This policy is subject to the same definition of "ultimate net loss" as is contained in the **immediate underlying umbrella policy.** If not defined in the **immediate underlying umbrella policy**, "ultimate net loss" means all sums which the insured, or any organization as his insurer, or both, become obligated to pay as damages because of bodily injury, personal injury, property damage, or advertising injury, either through adjudication or settlement with the written consent of GEICO; but "ultimate net loss" does not include costs or expenses which any person or organization has incurred in the investigation, settlement, or defense of any claim or suit, notwithstanding that the **underlying umbrella insurance** may provide insurance for such costs or expenses.

F.  "Underlying umbrella insurance" means:

(1)  the umbrella liability insurance policies set forth in Item 3 of the Declarations, including any renewal or replacement thereof not more restrictive, and

(2)  umbrella liability insurance policies not set forth in Item 3 of the Declarations which have been reported to and accepted in writing by GEICO.

G.  "Underlying umbrella limits" means the sum of the limits of liability of the **underlying umbrella insurance** and any other available umbrella liability insurance collectible by the insured (other than insurance purchased specifically to apply either in excess of GEICO's limit of liability hereunder or as contributing insurance to the layer of umbrella liability insurance provided by this policy), provided that "underlying umbrella limits" means not less than the following amounts:

$ (as stated in Item 4 of the Declarations)  **ultimate net loss** with respect to each occurrence, but

$ (as stated in Item 5 of the Declarations)  in the aggregate for each **annual period** with respect to any hazard for which an aggregate limit of liability applies in the **immediate underlying umbrella policy.**

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

EL-2 (2-81)

## RECONCILIATION OF TERMS

Whenever the following terms are used in the immediate underlying umbrella policy, this policy shall be changed as follows:

1. "Advertising offense" or "advertising liability" or "advertising damage" are synonymous with "advertising injury" and shall be substituted for the words "advertising injury" wherever appearing in this policy or endorsements forming a part hereof.

2. "Assured" is synonymous with "insured" and shall be substituted for the word "insured" wherever appearing in this policy or endorsements forming a part hereof.

3. "Named assured" is synonymous with "named insured" and shall be substituted for the words "named insured" wherever appearing in this policy or endorsements forming a part hereof: provided, however, that the definition of "named assured" shall be subject to the definition of "named insured" contained in this policy.

## CONDITIONS

A. Premium

If the premium is stated in the Declarations as a flat charge, such premium is applicable to the first annual period and is not subject to adjustment except as hereinafter provided.

If the premium is stated in the Declarations as other than a flat charge, such premium is an advance premium only which shall be credited to the amount of the earned premium due at the end of the annual period.

As the close of each period (or part thereof terminating with the end of the policy period) designated in the Declarations as the "Audit Reporting Period", the earned premium for such period shall be computed in accordance with the rates and minimum premium stated in the Declarations, and upon notice thereof to the first named insured shall become due and payable. If the total earned premium for the annual period is less than the premium previously paid, GEICO shall return to the first named insured the unearned portion paid by the first named insured.

Appropriate additional premium shall be payable with respect to any change in the premium for the underlying umbrella insurance or with respect to any person or organization becoming a named insured during the policy period.

The premium and rate for each successive annual period shall be indicated in a written notice sent to the first named insured, and the premium shall become due on the date indicated in such notice.

The first named insured shall maintain records of such information as is necessary for premium computation and shall send copies of such records to GEICO as the end of the annual period and at such other times as GEICO may direct.

B. Maintenance of Underlying Umbrella Insurance

The underlying umbrella insurance shall be maintained in full effect during the currency of this policy without reduction of coverage or limits of liability except for any reduction of the aggregate limits of liability contained therein solely by reason of:

(1) payment of judgments or settlements thereunder in respect of occurrences taking place during the policy period,

(2) payment of judgments or settlements thereunder in respect of damages because of personal injury or advertising injury arising out of an offense committed during the policy period (applicable only if the immediate underlying umbrella policy insures personal injury or advertising injury on other than an occurrence basis), or

(3) the operation of a "Prior Insurance and Non-Cumulation of Liability" provision thereunder.

If the immediate underlying umbrella policy is cancelled, this policy likewise is cancelled on the same date at the same time without notice to the named insured, and such date and time shall become the end of the policy period. If the immediate underlying umbrella policy otherwise ceases to apply (for reasons other than reduction of the aggregate limits of liability therein as provided in the first paragraph of this Condition), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the named insured.

Except as otherwise provided in this Condition, failure of the named insured to comply with this Condition shall not invalidate this policy, but in the event of such failure, GEICO shall be liable under this policy only to the same extent that it would have been liable had the named insured complied with this Condition. The insured shall promptly reimburse GEICO for any amounts that GEICO would not have had to pay but for the insured's failure to comply with this Condition.

C. Insured's Duties

(1) Written notice of any occurrence or injury or offense reasonably likely to result in a claim under this policy shall be given to GEICO by or on behalf of the insured as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and the fullest information available at the time.

(2) If claim is made or suit is brought against the insured, the insured shall immediately forward to GEICO every demand, notice, summons, or other process received by him or his representative.

(3) The insured shall cooperate with GEICO and, upon GEICO's request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, personal injury, property damage, or advertising injury with respect to which insurance is afforded under this policy; and the insured shall attend hearings and assist in securing and giving evidence and obtaining evidence and obtaining the attendance of witnesses.

(4) The insured shall comply with all the terms of the underlying umbrella insurance and shall cooperate with the insurers thereof.

(5) The insured shall not, except at his own expense, voluntarily make any payment, assume any obligation, or incur any expense.

(6) Upon notice that any aggregate limit of liability contained in any policy of the underlying umbrella insurance has been exhausted or impaired, the named insured shall immediately make all reasonable efforts to reinstate such limits.

(7) The named insured shall give GEICO prompt notice of:

(a) any changes in the scope of the coverage or in the amount of limits of insurance under any policy of the underlying umbrella insurance;

(b) any change in the premium for any policy of the underlying umbrella insurance;

(c) any renewal or replacement of any policy of the underlying umbrella insurance.

D. Appeals

In the event the insured or any organization as his insurer elect not to appeal a judgment in excess of the underlying umbrella limits, GEICO may elect to do so at its own cost and expense, and shall be liable, in addition to the applicable limit of liability, for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of GEICO for ultimate net loss exceed the limits of liability set forth in Insuring Agreement II of this policy and in addition the cost and expenses of such appeal.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000062

E.   Action Against GEICO: Payment of Loss

No action shall lie against GEICO unless, as a condition precedent thereto:

(1)   there shall have been full compliance with all the terms of this policy,

(2)   the full amount of the **underlying umbrella limits** shall have been paid by or on behalf of the insured, and

(3)   the insured's obligation to pay **ultimate net loss** shall have been finally determined either by final judgment against the insured after actual trial or by written agreement of the insured, the claimant, and GEICO.

Thereafter, any person or organization or the legal representative thereof who has secured such judgment or written agreement shall be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join GEICO as a party to any action against the insured to determine the insured's liability, nor shall GEICO be impleaded by the insured or his legal representative.

All **ultimate net loss** covered by this policy shall be due and payable by GEICO within thirty (30) days after such **ultimate net loss** is respectively claimed and proven in accordance with the terms of this policy.

F.   Other Insurance

The insurance afforded by this policy shall apply as excess insurance, not contributory, to other available insurance collectible by the insured and covering damages against which insurance is afforded by this policy (other than insurance purchased specifically to apply either in excess of GEICO's limit of liability hereunder or as contributing insurance to the layer of umbrella liability insurance provided by this policy).

G.   Subrogation and Other Recoveries .

In the event of any payment under this policy, GEICO shall be subrogated to all of the insured's rights of recovery therefor against any person or organization, and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing to prejudice such rights.

Because this policy provides excess insurance, the insured's right of recovery cannot always be exclusively subrogated to GEICO. It is, therefore, agreed that in such event GEICO shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow the principle that any interest, including the insured, who shall have paid an amount over and above the sum of the **underlying umbrella limits** and GEICO's applicable limit of liability shall first be reimbursed up to the amount paid as **ultimate net loss** liability by such interest. GEICO shall then be reimbursed out of any balance then remaining up to the amounts paid under this policy. Lastly, the interests, including the insured, of whom this insurance is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amounts shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

H.   Changes

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop GEICO from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of GEICO.

I.   Assignment

Assignment of interest under this policy shall not bind GEICO until its consent is endorsed hereon.

J.   First Named Insured

The first **named** insured named in Item 1 of the Declarations shall be responsible for payment of all premiums and is authorized to act on behalf of all other insureds and **named insureds** with respect to giving and receiving notice of cancellation and to receiving any return premium that may become payable under this policy.

K.   Cancellation

This policy may be cancelled by the first **named** insured by mailing to GEICO written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by GEICO by mailing to the first **named** insured at the address shown in this policy written notice stating when not less than thirty (30) days thereafter, or ten (10) days thereafter with respect to cancellation for non-payment of premium, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period.** Delivery of such written notice either by the first **named insured** or by GEICO shall be the equivalent of mailing.

If the first **named** insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If GEICO cancels, earned premium shall be computed pro-rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

L.   Declarations

By acceptance of this policy, the **named insured** agrees that the statements in the Declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between himself and GEICO or any of its agents relating to this insurance.

## NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those stated elsewhere in this policy.

This policy does not apply:

1)   to injury, sickness, disease, death or destruction

(a)   with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000063

2)   to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3)   to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a)   the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

(b)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored transported or disposed of by or on behalf of an Insured; or

(c)   the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation, or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

As used in this exclusion:

"Hazardous Properties" include radioactive, toxic or explosive properties;

"Nuclear Material" means source material, special nuclear material or byproducts material;

"Source Material," "Special Nuclear Material," and "Byproduct Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"Waste" means any waste material (1) containing byproduct material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility;

"Nuclear Facility" means

(a)   any nuclear reactor,

(b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on each site and all premises for such operations;

"Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "Injury" or "Destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, the Government Employees Insurance Company has caused this amendment to be signed by the President and Secretary of the Company.

_____
Secretary.

_____
President.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

# EXHIBIT C

# GEICO

## GOVERNMENT EMPLOYEES INSURANCE COMPANY

### HOME OFFICE ● WASHINGTON, D.C. 20076

### EXCESS UMBRELLA LIABILITY POLICY

### DECLARATIONS

Policy Number GXU   Nº   30267                    Renewal of: GXU 30152

Item 1.  A.  Named Insured:   W. R. Grace & Company, etal and/or subsidiary, associated,
                              affiliated Companies and/or organizations, owned, controlled
                              and/or managed Companies as now or hereinafter constituted.

         B.  Named Insured's Address:

                              1114 Avenue of the Americas        *Chemical Mfdt, Petroleum Prods,*
                              New York, New York   10036          *Indust./Retail Operations*
                                                                  *Prods = 96%*

Item 2.  Policy Period: From___June 30, 1983_____  to___June 30, 1984_____
                        12:01 A.M., standard time at the address of the Named Insured as stated herein.

Item 3.  First Underlying Umbrella Liability Policy (Insurer, Limits, Policy Number):
         $5,000,000 each occurrence and aggregate where applicable as provided by Underwriters
         at Lloyds of London and Certain British Companies Cover Note No. KYO17582.
                                                            *$7,000*
Item 4.  Underlying Umbrella Liability Limits of Liability
         with respect to each occurrence:                   $150,000,000
         which limits apply in excess of underlying insurance.

Item 5.  Underlying Umbrella Liability Agregate Limits
         of Liability Where Applicable                      $150,000,000
         which limits apply in excess of underlying insurance.

Item 6.  GEICO's Limit of Liability: As per Insuring Agreement II:
                        a.  $10,000,000    each occurrence
                        b.  $10,000,000    aggregate where applicable
         which is part of $100,000,000 each occurrence and aggregate where applicable in
         excess of Items (4) and (5) above.

Item 7.  Premium:     a.  Flat Charge            $5,000
                      b.  Deposit Premium        $
                      c.  Minimum Premium        $
                      d.  Rate
                      e.  Audit Reporting Period:
                          (Annual unless otherwise indicated)

Item 8.  Endorsements Attached at inception:

         ELE-14, ELE-16, No. 3 (Cancellation Rev.), No. 4 (Following Form Endmt.)

         7/12/83—jc

                                                  Countersigned by Authorized Representative

ELU-2 (2-81)          CONFIDENTIAL          ORIGINAL
                   SUBJECT TO APRIL 2009
                   PROTECTIVE ORDER
                                                                        GEI-000012

# ENDORSEMENT (1)

Effective Date   June 30, 1983

## NEW YORK STATE AMENDATORY ENDORSEMENT

### (EXCESS UMBRELLA POLICY)

1. It is understood and agreed that Condition E. of the policy is deleted in its entirety and the following is substituted therefor:

   E.  Action Against GEICO; Payment of Loss

   No action shall lie against GEICO unless, as a condition precedent thereto:

   (1)  there shall have been full compliance with all the terms of this policy,

   (2)  the full amount of the underlying umbrella limits shall have been paid by or on behalf of the insured, and

   (3)  the insured's obligation to pay ultimate net loss shall have been finally determined either by final judgment against the insured or by written agreement of the insured, the claimant, and GEICO.

   Thereafter, any person or organization or the legal representative thereof who has secured such judgment or written agreement shall be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join GEICO as a party to any action against the insured to determine the insured's liability, nor shall GEICO be impleaded by the insured or his legal representative.

   In the event of a judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract, shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, and upon GEICO, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against GEICO under the terms of this policy for the amount of such judgment not exceeding the amount of the applicable limit of liability hereunder.

2. It is agreed that Condition B. of the policy is deleted in its entirety and the following is substituted therefor:

   B.  Maintenance of Underlying Umbrella Insurance

   The underlying umbrella insurance shall be maintained in full effect during the currency of this policy without reduction of coverage or limits of liability except for any reduction of the aggregate limits of liability contained therein solely by reason of:

   (1)  payment of judgments or settlements thereunder in respect of occurrences taking place during the policy period,

   (2)  payment of judgments or settlements thereunder in respect of damages because of personal injury or advertising injury arising out of an offense committed during the policy period (applicable only if the immediate underlying umbrella policy insures personal injury or advertising injury on other than an occurrence basis), or

   (3)  the operation of a "Prior Insurance and Non-Cumulation of Liability" provision thereunder.

   If the immediate underlying umbrella policy is cancelled, this policy likewise will be cancelled upon ten (10) days written notice to the named insured, and such date and time shall become the end of the policy period. If the immediate underlying umbrella policy otherwise ceases to apply (for reasons other than reduction of the aggregate limits of liability therein as provided in the first paragraph of this Condition), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the named insured.

   Except as otherwise provided in this Condition, failure of the named insured to comply with this Condition shall not invalidate this policy, but in the event of such failure, GEICO shall be liable under this policy only to the same extent that it would have been liable had the named insured complied with this Condition. The insured shall promptly reimburse GEICO for any amounts that GEICO would not have had to pay but for the insured's failure to comply with this Condition.

   All other terms, conditions and exclusions remain the same.

Attached to and made a part of Policy No.  GXU 30267  of GOVERNMENT EMPLOYEES INSURANCE COMPANY.

issued to  W. R. Grace & Company, etal

Countersigned: At  New York, New York  Date  July 12, 1983

_____
Secretary.

_____
President.

By _____
Authorized Representative

GLS-14 (5-81)   CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000013

# ENDORSEMENT          (2)

Effective Date    June 30, 1983

## NEW YORK STATE AMENDATORY ENDORSEMENT

## (EXCESS UMBRELLA OR EXCESS LIABILITY POLICY)

It is hereby understood and agreed that, notwithstanding anything in this policy to the contrary, with respect to such insurance as is afforded by this policy, the terms of this policy as respects coverage for operations in the State of New York shall conform to the coverage requirements of the applicable insurance laws of the State of New York or the applicable regulations of the New York Insurance Department; provided, however, that the Company's limit of liability as stated in this policy shall be excess of the limits of liability of any underlying insurance of self-insurance as stated in the Declarations or in any endorsement attached hereto.

Attached to and made a part of Policy No.____GXU 30267____of GOVERNMENT EMPLOYEES INSURANCE COMPANY,

issued to____W. R. Grace & Company, etal____

Countersigned:  At____New York, New York____Date____July 12, 1983____

_____
Secretary.

_____
President.

By_____
              Authorized Representative

ELE-16 (3-81)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000014

# GEICO

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| W. R. Grace & Company, etal | | | (3) |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| GXU | 30267 | 6/30/83 – 6/30/84 | 6/30/83 |
| Issued By (Name of Insurance Company) | | | |
| Government Employees Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that Condition (K) of the policy, cancellation, is amended in part as follows:

Reference to "thirty (30) days" is amended to read "sixty (60) days"

All other terms and conditions remain unchanged.

Authorized Agent

FLE-23 (3-81)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

ORIGINAL

GEI-000015

# GEICO

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| W. R. Grace & Company, etal | | | (4) |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| GXU | 30267 | 6/30/83 – 6/30/84 | 6/30/83 |
| Issued By (Name of Insurance Company) | | | |
| Government Employees Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that except only with respect to policy period, premium and limits of liability, this policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the first layer Umbrella policy, (London and various British) KYO17582 and all renewals and replacements thereof. It is further agreed that all pre-printed terms and conditions hereon are deleted to the extent that they vary from or are inconsistent with the terms and conditions of the first layer Umbrella.

Authorized Agent

ELE-23 (3-81)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

ORIGINAL

GEI-000016

# GOVERNMENT EMPLOYEES INSURANCE COMPANY

A Shareholder Owned Company – Not Affiliated with the United States Government (herein called GEICO)

### HOME OFFICE ● WASHINGTON, D.C. 20076

## EXCESS UMBRELLA LIABILITY POLICY

In consideration of the payment of the premium, if paid when due, in reliance upon the statements in the Declarations made a part hereof, and subject to all the terms of this policy; agrees with the **named insured** as follows:

### INSURING AGREEMENTS

I. Coverage

GEICO will pay on behalf of the insured all sums in excess of the **underlying umbrella limits** which the insured shall become legally obligated to pay as damages because of

A. Bodily Injury,
B. Personal Injury,
C. Property Damage, or
D. Advertising Injury

to which this policy applies and arising out of hazards which are covered by and defined in the **immediate underlying umbrella policy.**

This policy is subject to the same terms, definitions, exclusions, and conditions (except as otherwise provided herein) as are contained in the **immediate underlying umbrella policy**; but this policy shall not be subject to the terms and conditions of the **immediate underlying umbrella policy** with respect to the premium, the policy period, the renewal or extension agreement (if any), the amount and limits of liability, or any other term, definition, exclusion, or condition which may be inconsistent with this policy.

II. Limit of Liability

It is expressly agreed that liability shall attach to GEICO only after the full amount of the **underlying umbrella limits** shall have been paid by or on behalf of the insured, and GEICO shall then be liable to pay the excess thereof up to a further

$ (as stated in Item 6a of the Declarations)  **ultimate net loss** with respect to each occurrence - subject to a limit of

$ (as stated in Item 6b of the Declarations)  in the aggregate for each **annual period** with respect to any hazard for which an aggregate limit of liability applies in the **immediate underlying umbrella policy.**

If any damages covered hereunder are also covered in whole or in part under any other excess policy issued to the insured prior to the inception date hereof, GEICO's limit of liability as stated in Item 6 of the Declarations shall be reduced by any amounts due to the insured on account of such damages covered under any such prior insurance.

III. Policy Period

This policy applies only to occurrences which take place during the **policy period.**

If the **immediate underlying umbrella policy** insures personal injury or advertising injury on other than an occurrence basis, this policy applies only to damages which are payable because of personal injury or advertising injury arising out of an offense committed during the **policy period.**

### EXCLUSION

In addition to the exclusions contained in the **immediate underlying umbrella policy**, this policy does not apply to any claim based on the insured's failure to comply with the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, and amendments thereto, or similar provisions of any Federal, State, or local statutory law or common law.

### DEFINITIONS

When used in this policy, including endorsements forming a part hereof:

A. "Annual period" means each consecutive period of one year commencing from the effective date of this policy.

B. "Immediate underlying umbrella policy" means the policy of the **underlying umbrella insurance** which provides the layer of umbrella liability insurance immediately preceding the layer of umbrella liability insurance provided by this policy.

C. "Named Insured" means the person or organization named in Item 1 of the Declarations (the first "named insured") and also includes any person or organization qualifying as a named insured in the **immediate underlying umbrella policy.**

D. "Policy Period" means the period set forth in Item 2 of the Declaration, subject to Conditions B and K of this policy.

E. "Ultimate net loss": This policy is subject to the same definition of "ultimate net loss" as is contained in the **immediate underlying umbrella policy.** If not defined in the **immediate underlying umbrella policy**, "ultimate net loss" means all sums which the insured, or any organization as his insurer, or both, become obligated to pay as damages because of bodily injury, personal injury, property damage, or advertising injury, either through adjudication or settlement with the written consent of GEICO; but "ultimate net loss" does not include costs or expenses which any person or organization has incurred in the investigation, settlement, or defense of any claim or suit, notwithstanding that the **underlying umbrella insurance** may provide insurance for such costs or expenses.

F. "Underlying umbrella insurance" means:

(1) the umbrella liability insurance policies set forth in Item 3 of the Declarations, including any renewal or replacement thereof not more restrictive, and

(2) umbrella liability insurance policies not set forth in Item 3 of the Declarations which have been reported to and accepted in writing by GEICO.

G. "Underlying umbrella limits" means the sum of the limits of liability of the underlying umbrella insurance and any other available umbrella liability insurance collectible by the insured (other than insurance purchased specifically to apply either in excess of GEICO's limit of liability hereunder or as contributing insurance to the layer of umbrella liability insurance provided by this policy), provided that "underlying umbrella limits" means not less than the following amounts:

$ (as stated in Item 4 of the Declarations)  **ultimate net loss** with respect to each occurrence, but

$ (as stated in Item 5 of the Declarations)  in the aggregate for each **annual period** with respect to any hazard for which an aggregate limit of liability applies in the **immediate underlying umbrella policy.**

CONFIDENTIAL
EL-2 (2-81)  SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000061

## RECONCILIATION OF TERMS

Whenever the following terms are used in the **immediate underlying umbrella** policy, this policy shall be changed as follows:

1. "Advertising offense" or "advertising liability" or "advertising damage" are synonymous with "advertising injury" and shall be substituted for the words "advertising injury" wherever appearing in this policy or endorsements forming a part hereof.

2. "Assured" is synonymous with "insured" and shall be substituted for the word "insured" wherever appearing in this policy or endorsements forming a part hereof.

3. "Named assured" is synonymous with "named insured" and shall be substituted for the words "named insured" wherever appearing in this policy or endorsements forming a part hereof; provided, however, that the definition of "named assured" shall be subject to the definition of "named insured" contained in this policy.

## CONDITIONS

### A. Premium

If the premium is stated in the Declarations as a flat charge, such premium is applicable to the first annual period and is not subject to adjustment except as hereinafter provided.

If the premium is stated in the Declarations as other than a flat charge, such premium is an advance premium only which shall be credited to the amount of the earned premium due at the end of the annual period.

As the close of each period (or part thereof terminating with the end of the policy period) designated in the Declarations as the "Audit Reporting Period", the earned premium for such period shall be computed in accordance with the rates and minimum premium stated in the Declarations, and upon notice thereof to the first named insured shall become due and payable. If the total earned premium for the annual period is less than the premium previously paid, GEICO shall return to the first named insured the unearned portion paid by the first named insured.

Appropriate additional premium shall be payable with respect to any change in the premium for the **underlying umbrella insurance** or with respect to any person or organization becoming a **named insured** during the **policy period**.

The premium and rate for each successive **annual period** shall be indicated in a written notice sent to the first named insured, and the premium shall become due on the date indicated in such notice.

The first named insured shall maintain records of such information as is necessary for premium computation and shall send copies of such records to GEICO as the end of the annual period and at such other times as GEICO may direct.

### B. Maintenance of Underlying Umbrella Insurance

The **underlying umbrella insurance** shall be maintained in full effect during the currency of this policy without reduction of coverage or limits of liability except for any reduction of the aggregate limits of liability contained therein solely by reason of:

(1) payment of judgments or settlements thereunder in respect of occurrences taking place during the **policy period**,

(2) payment of judgments or settlements thereunder in respect of damages because of personal injury or advertising injury arising out of an offense committed during the **policy period** (applicable only if the **immediate underlying umbrella** policy insures personal injury or advertising injury on other than an occurrence basis), or

(3) the operation of a "Prior Insurance and Non-Cumulation of Liability" provision thereunder.

If the **immediate underlying umbrella** policy is cancelled, this policy likewise is cancelled on the same date at the same time without notice to the **named insured**, and such date and time shall become the end of the **policy period**. If the **immediate underlying umbrella** policy otherwise ceases to apply (for reasons other than reduction of the aggregate limits of liability therein as provided in the first paragraph of this Condition), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the **named insured**.

Except as otherwise provided in this Condition, failure of the **named insured** to comply with this Condition shall not invalidate this policy, but in the event of such failure, GEICO shall be liable under this policy only to the same extent that it would have been liable had the named insured complied with this Condition. The insured shall promptly reimburse GEICO for any amounts that GEICO would not have had to pay but for the insured's failure to comply with this Condition.

### C. Insured's Duties

(1) Written notice of any occurrence or injury or offense reasonably likely to result in a claim under this policy shall be given to GEICO by or on behalf of the insured as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and the fullest information available at the time.

(2) If claim is made or suit is brought against the insured, the insured shall immediately forward to GEICO every demand, notice, summons, or other process received by him or his representative.

(3) The insured shall cooperate with GEICO and, upon GEICO's request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, personal injury, property damage, or advertising injury with respect to which insurance is afforded under this policy; and the insured shall attend hearings and assist in securing and giving evidence and obtaining evidence and obtaining the attendance of witnesses.

(4) The insured shall comply with all the terms of the **underlying umbrella insurance** and shall cooperate with the insurers thereof.

(5) The insured shall not, except at his own expense, voluntarily make any payment, assume any obligation, or incur any expense.

(6) Upon notice that any aggregate limit of liability contained in any policy of the **underlying umbrella insurance** has been exhausted or impaired, the **named insured** shall immediately make all reasonable efforts to reinstate such limits.

(7) The **named insured** shall give GEICO prompt notice of:

(a) any changes in the scope of the coverage or in the amount of limits of insurance under any policy of the **underlying umbrella insurance**;

(b) any change in the premium for any policy of the **underlying umbrella insurance**;

(c) any renewal or replacement of any policy of the **underlying umbrella insurance**.

### D. Appeals

In the event the insured or any organization as his insurer elect not to appeal a judgment in excess of the **underlying umbrella limits**, GEICO may elect to do so at its own cost and expense, and shall be liable, in addition to the applicable limit of liability, for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of GEICO for ultimate net loss exceed the limits of liability set forth in Insuring Agreement II of this policy and in addition the cost and expenses of such appeal.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

E.   Action Against GEICO; Payment of Loss

No action shall lie against GEICO unless, as a condition precedent thereto:

(1)   there shall have been full compliance with all the terms of this policy,

(2)   the full amount of the **underlying umbrella limits** shall have been paid by or on behalf of the insured, and

(3)   the insured's obligation to pay **ultimate net loss** shall have been finally determined either by final judgment against the insured after actual trial or by written agreement of the insured, the claimant, and GEICO.

Thereafter, any person or organization or the legal representative thereof who has secured such judgment or written agreement shall be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join GEICO as a party to any action against the insured to determine the insured's liability, nor shall GEICO be impleaded by the insured or his legal representative.

All **ultimate net loss** covered by this policy shall be due and payable by GEICO within thirty (30) days after such **ultimate net loss** is respectively claimed and proven in accordance with the terms of this policy.

F.   Other Insurance

The insurance afforded by this policy shall apply as excess insurance, not contributory, to other available insurance collectible by the insured and covering damages against which insurance is afforded by this policy (other than insurance purchased specifically to apply either in excess of GEICO's limit of liability hereunder or as contributing insurance to the layer of umbrella liability insurance provided by this policy).

G.   Subrogation and Other Recoveries .

In the event of any payment under this policy, GEICO shall be subrogated to all of the insured's rights of recovery therefor against any person or organization, and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing to prejudice such rights.

Because this policy provides excess insurance, the insured's right of recovery cannot always be exclusively subrogated to GEICO. It is, therefore, agreed that in such event GEICO shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow the principle that any interest, including the insured, who shall have paid an amount over and above the sum of the **underlying umbrella limits** and GEICO's applicable limit of liability shall first be reimbursed up to the amount paid as **ultimate net loss** liability by such interest. GEICO shall then be reimbursed out of any balance then remaining up to the amounts paid under this policy. Lastly, the interests, including the insured, of whom this insurance is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amounts shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

H.   Changes

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop GEICO from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of GEICO.

I.   Assignment

Assignment of interest under this policy shall not bind GEICO until its consent is endorsed hereon.

J.   First Named Insured

The first named insured named in Item 1 of the Declarations shall be responsible for payment of all premiums and is authorized to act on behalf of all other insureds and named insureds with respect to giving and receiving notice of cancellation and to receiving any return premium that may become payable under this policy.

K.   Cancellation

This policy may be cancelled by the first **named insured** by mailing to GEICO written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by GEICO by mailing to the first **named insured** at the address shown in this policy written notice stating when not less than thirty (30) days thereafter, or ten (10) days thereafter with respect to cancellation for non-payment of premium, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period**. Delivery of such written notice either by the first **named insured** or by GEICO shall be the equivalent of mailing.

If the first **named insured** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If GEICO cancels, earned premium shall be computed pro-rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

L.   Declarations

By acceptance of this policy, the **named insured** agrees that the statements in the Declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between himself and GEICO or any of its agents relating to this insurance.

## NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those stated elsewhere in this policy.

This policy does not apply:

1)   to injury, sickness, disease, death or destruction

(a)   with respect to which an **insured** under the policy is also an **insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000063

2) to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3) to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored transported or disposed of by or on behalf of an insured; or

   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation, or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

As used in this exclusion:

"Hazardous Properties" include radioactive, toxic or explosive properties;

"Nuclear Material" means source material, special nuclear material or byproducts material;

"Source Material," "Special Nuclear Material," and "Byproduct Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"Waste" means any waste material (1) containing byproduct material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility;

"Nuclear Facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on each site and all premises for such operations;

"Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "Injury" or "Destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, the Government Employees Insurance Company has caused this amendment to be signed by the President and Secretary of the Company.

_Secretary._                                   _President._

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000064

# EXHIBIT D

No.
**CDE** 0749

Renewal of No.

New

ARATIONS – SPECIAL COVERAGE POLIC

**STOCK COMPANY**

☒ **REPUBLIC INSURANCE COMPANY**

☐ **VANGUARD INSURANCE COMPANY**

2727 TURTLE CREEK BOULEVARD, DALLAS, TEXAS 75219

Named Insured and Mailing Address

W. R. Grace & Company Etal and/or subsidiary, associated,
affiliated companies and/or organizations owned, controlled
and/or managed companies as now or hereinafter constituted.
1114 Avenue of the Americas
New York, NY 10036

Item 1.   Policy Period:   From   June 30, 1983   To   June 30, 1984

12:01 A.M., Standard Time at the address of the named Insured as stated herein.

Item 2.   Premium:   Advance Premium: $ 3,750.00
Rate: flat

Minimum Premium: $ 3,750.00

If the Policy Period is more than one year and the premium is to be paid in installments, premium is payable on:

| Effective Date | 1st Anniversary | 2nd Anniversary |
|---|---|---|
| $ | $ | $ |

Item 3.   Coverage:   Excess umbrella

Item 4.   Limits of Liability:  The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

$3,000,000 P/O $75,000,000 excess of $75,000,000 each occurrence/aggregate

Item 5.   During the past three years no insurer has cancelled insurance issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein.

Item 6.   Endorsement:   S/L 126-1

Countersigned by _Robert A. Neilson_
Authorized

Date of Issue:   August 1, 1983br

CDE-2-(9-73)

COMPANY COPY

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000004

# REPUBLIC INSURANCE COMPANY

(A Stock Insurance Company, Herein Called the Company)

## EXCESS UMBRELLA POLICY
### INSURING AGREEMENTS

**1. COVERAGE**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Named Insured for damages, direct or consequential and expenses on account of:

(a)  Personal Injuries, including death at any time resulting therefrom,

(b)  Property Damage,

(c)  Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

## UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:

### Lloyds KYO17582 and various

**2. LIMIT OF LIABILITY — UNDERLYING LIMITS**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a)  $75,000,000.00      ultimate net loss in respect of each occurrence, but

(b)  $75,000,000.00      in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured

and the Company shall then be liable to pay only the excess thereof up to a further

(c)  $3,000,000.00
P/O  $75,000,000.00      ultimate net loss in all respect of each occurrence — subject to a limit of

(d)  $3,000,000.00
P/O  $75,000,000.00      in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

## DEFINITIONS

**1. NAMED INSURED:**

The words "Named Insured" includes The Named Insured Stated in The Declarations forming a part hereof and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.

**2. INSURED:**

The word "Insured" includes The Named Insured and/or any Officer, Director, Stockholder, Partner or Employee of The Named Insured, while acting in his capacity as such.

CDEU-1 (9-73)

**CONFIDENTIAL**
**SUBJECT TO APRIL 2009**
**PROTECTIVE ORDER**

**REP- 000005**

## CONDITIONS

### 1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY —

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess Policy issued to the Insured prior to the inception date hereof the limit of liability hereon as stated in Insuring Agreements 2c and 2d shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions of this Policy in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Insured for liability in respect of such personal injury or property damage without payment of additional premium.

### 2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE —

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Insuring Agreement 1 prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of Condition of the Underlying Umbrella Policies.

### 3. NOTICE OF OCCURRENCE —

Whenever the Insured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Insured shall be held liable, is likely to involve this Policy, notice shall be given by or on behalf of the Insured to Cravens, Dargan & Company Special Risks and/or American Adjustment Company, P. O. Box 1660, Houston, Texas 77001 as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

### 4. OTHER INSURANCE —

If other valid and collectible insurance with any other Insurer is available to the Insured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.

**CONFIDENTIAL**
**SUBJECT TO APRIL 2009**
**PROTECTIVE ORDER**

It is agreed that except only with respect to policy period, premium and limits of liability, this policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the first layer umbrella policy, (LONDON AND VARIOUS BRITISH) KY017582 and all renewals and replacements thereof. It is further agreed that all pre-printed terms and conditions hereon are deleted to the extent that they vary from or are inconsistent with the terms and conditions of the first layer umbrella.

Nothing herein contained shall vary, alter, waive or extend any of the terms, representations, declarations, exclusions, conditions or agreements of the Policy other than as above stated.

The information below is required only when this endorsement is issued subsequent to preparation of the policy.

To be attached to and forming part of Policy No. _____

Issued to _____

Endorsement No. _____

Effective _____ 19 ____

S/L 120-1
REV. (06/83)

CRAVENS, DARGAN & COMPANY

By _____

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

STOCK COMPANY

# ☐ REPUBLIC INSURANCE COMPANY
# ☐ VANGUARD INSURANCE COMPANY

Member Of
**REPUBLIC INSURANCE COMPANY GROUP**
A CAPITAL STOCK COMPANY

2727 Turtle Creek Boulevard, Dallas, Texas 75219

EFFECTED THROUGH

CRAVENS, DARGAN & CO., SPECIAL RISKS
P. O. Box 1660 — Houston, Texas 77001

This policy is made and accepted subject to the provisions and stipulations hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

CDE-1 (9-73) REV. 4/81

10842

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of the policy:

**The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.**

## CONDITIONS

**1. Premium Computation:** The deposit premium stated in the declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

**2. Inspection and Audit:** The Company Shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Action Against Company:** No action shall lie against the company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the insured, the claimant and the company.

**4. Subrogation:** In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

**5. Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

**6. Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Named Insured's legal representative as Named Insured; provided that notice of cancellation addressed to the Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**7. Cancellation:** This policy may be canceled by the insured by surrender thereof to the Company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than thirty days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. If the insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**8. Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

nis policy shall not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

  (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

  (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

  (a) the nuclear material (1) is at any nuclear facility owned by or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom:

  (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  (c) the injury, sickness, disease, death, or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this policy:

"hazardous properties" includes radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fule component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

"Waste" means any waste material (1) containing by-product material other then the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof.

"nuclear facility" means:

  (a) any nuclear reactor,

  (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste.

  (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

  (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such Operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;·

with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination or property.

## WAR RISK EXCLUSION ENDORSEMENT

This policy shall not apply to any liability of the insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

# EXHIBIT E

No.
**CDE  0750**
Renewal of No.

DECLARATIONS – SPECIAL COVERAGE POLICY

STOCK COMPANY

☒ **REPUBLIC INSURANCE COMPANY**
☐ **VANGUARD INSURANCE COMPANY**
2727 TURTLE CREEK BOULEVARD, DALLAS, TEXAS 75219

Named Insured and Mailing Address

W. R. Grace & Company Etal and/or subsidiary, associated,
affiliated companies and/or organizations owned, controlled
and/or managed companies as now or hereinafter constituted.
1114 Avenue of the American
New York, NY   10036

Item 1.    Policy Period:    From    June 30, 1983    To    June 30, 1984

12:01 A.M., Standard Time at the address of the named Insured as stated herein.

Item 2.    Premium:    Advance Premium: $    3,300.00
Rate: flat

Minimum Premium: $    3,300.00
If the Policy Period is more than one year and the premium is to be paid in installments, premium is payable on:

Effective Date          1st Anniversary          2nd Anniversary
$                       $                        $

Item 3.    Coverage:    Excess umbrella

Item 4.    Limits of Liability:  The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

$5,600,000 P/O $100,000,000 excess of $150,000,000 each occurrence/aggregate

Item 5.    During the past three years no insurer has cancelled insurance issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein.

Item 6.    Endorsement: S/L 120-E

Countersigned by ___*Robert A. Neilson*___
                                    Authorized

Date of Issue:    August 1, 1983km

CDE-2-(9-73)

COMPANY COPY

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000008

# REPUBLIC INSURANCE COMPANY

(A Stock Insurance Company, Herein Called the Company).

## EXCESS UMBRELLA POLICY
## INSURING AGREEMENTS

### 1. COVERAGE

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Named Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom,

(b) Property Damage,

(c) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

### UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:

### Lloyds KY017582 and various

### 2. LIMIT OF LIABILITY — UNDERLYING LIMITS

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $150,000,000.00     ultimate net loss in respect of each occurrence, but

(b) $150,000,000.00     in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $6,600,000.00
P/O $100,000,000.00     ultimate net loss in all respect of each occurrence — subject to a limit of

(d) $6,600,000.00
P/O $100,000,000.00     in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

### DEFINITIONS

### 1. NAMED INSURED:

The words "Named Insured" includes The Named Insured Stated in The Declarations forming a part hereof and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.

### 2. INSURED:

The word "Insured" includes The Named Insured and/or any Officer, Director, Stockholder, Partner or Employee of The Named Insured, while acting in his capacity as such.

CDEU-1 (9-73)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000009

## CONDITIONS

### 1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY —

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess Policy issued to the Insured prior to the inception date hereof the limit of liability hereon as stated in Insuring Agreements 2c and 2d shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions of this Policy in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Insured for liability in respect of such personal injury or property damage without payment of additional premium.

### 2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE —

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Insuring Agreement 1 prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of Condition of the Underlying Umbrella Policies.

### 3. NOTICE OF OCCURRENCE —

Whenever the Insured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Insured shall be held liable, is likely to involve this Policy, notice shall be given by or on behalf of the insured to Cravens, Dargan & Company Special Risks and/or American Adjustment Company, P. O. Box 1660, Houston, Texas 77001 as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

### 4. OTHER INSURANCE —

If other valid and collectible insurance with any other Insurer is available to the Insured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.

**CONFIDENTIAL**
**SUBJECT TO APRIL 2009**
**PROTECTIVE ORDER**

**REP- 000010**

It is agreed that except only with respect to policy period,
premium and limits of liability, this policy is hereby amended to
follow all the terms, conditions, definitions and exclusions of
the first layer umbrella policy, (LONDON AND VARIOUS BRITISH)
KYO17582 and all renewals and replacements thereof. It is
further agreed that all pre-printed terms and conditions hereon
are deleted to the extent that they vary from or are inconsistent
with the terms and conditions of the first layer umbrella.

Nothing herein contained shall vary, alter, waive or extend any
of the terms, representations, declarations, exclusions,
conditions or agreements of the Policy other than as above
stated.

The information below is required only when this endorsement is
issued subsequent to preparation of the policy.

To be attached to and forming part of Policy No. _____

Issued to _____

Endorsement No. _____

Effective _____ 19 ____

S/L 120-1
REV. (06/83)

CRAVENS, DARGAN & COMPANY

By _____

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000011

STOCK COMPANY

# ☐ REPUBLIC INSURANCE COMPANY
# ☐ VANGUARD INSURANCE COMPANY

Member Of
**REPUBLIC INSURANCE COMPANY GROUP**
A CAPITAL STOCK COMPANY

2727 Turtle Creek Boulevard, Dallas, Texas 75219

EFFECTED THROUGH

CRAVENS, DARGAN & CO., SPECIAL RISKS
P. O. Box 1660 — Houston, Texas 77001

This policy is made and accepted subject to the provisions and stipulations hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

CDE-1 (9-73) REV. 4/81

10842

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000001

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of the policy:

**The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.**

## CONDITIONS

**1.    Premium Computation:** The deposit premium stated in the declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

**2.    Inspection and Audit:** The Company Shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3.    Action Against Company:** No action shall lie against the company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the insured, the claimant and the company.

**4.    Subrogation:** In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver 'nstruments and papers and do whatever else is necessary to secure such .hts. The insured shall do nothing alter loss to prejudice such rights.

**5.    Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

**6.    Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Named Insured's legal representative as Named Insured; provided that notice of cancellation addressed to the Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**7.    Cancellation:** This policy may be canceled by the insured by surrender thereof to the Company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than thirty days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. If the insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**8.    Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

_Thomas H. Bradley_
Secretary

_John F. Knight_
President

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

. his policy shall not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction
  (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or
  (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
  (a) the nuclear material (1) is at any nuclear facility owned by or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;
  (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
  (c) the injury, sickness, disease, death, or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this policy:

"hazardous properties" includes radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fule component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

"Waste" means any waste material (1) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof.

"nuclear facility" means:
(a) any nuclear reactor,
(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste.
(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such Operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;·

with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination or property.

## WAR RISK EXCLUSION ENDORSEMENT

This policy shall not apply to any liability of the Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

# EXHIBIT F

No...78DD1633C............

☙ **Whereas**   W.R. GRACE AND COMPANY (as more fully described in item 1 (a) of the declarations herein) of 1114 Avenue of the Americas, New York, N.Y. 10036 hereinafter called the Assured, have paid U.S.$454,400.00 Premium or Consideration to Us, the undersigned Assurers to ~~insure against loss as follows viz~~ indemnify the Assured in ~~respect of~~ UMBRELLA LIABILITY as per wording attached hereto.

100% of 80% of the limits stated herein

during the period commencing at        **Thirtieth**        day of
**June,**        19 79    , and ending at **Thirtieth**
day of    **June,**    19 82  .
both days at 12.01 a.m. Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company** for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding ~~the sum of~~ ONE HUNDRED PER CENT of EIGHTY PER CENT of the limits stated herein,

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this    **25α**        day of
*November*        19 80

DB/io

DIRECTOR
H. S. WEAVERS (UNDERWRITING) AGENCIES LTE

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000065

Policy No.

(48.05% WALBROOK INSURANCE COMPANY LIMITED
( 6.49% EL PASO INSURANCE COMPANY LIMITED
(11.69% MUTUAL REINSURANCE COMPANY LIMITED
(12.99% DART INSURANCE COMPANY LIMITED
(11.04% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
( 9.74% ST. KATHERINE INSURANCE COMPANY LIMITED
per: H.S. Weavers (Underwriting) Agencies Limited

100%

L03B169027278

ADDENDUM

Attaching to and forming part of Policy No.79DD1633C

of    CERTAIN INSURANCE COMPANIES.

Issued to        W.R.GRACE AND COMPANY.

It is understood and agreed that following an adjustment of premium for
the period 30th June 1979 to 30th June 1980 the earned premium does not
exceed the minimum premium paid, therefore the Minimum and Deposit
provisions of this Policy apply.

All other terms and conditions of the Policy remaining unchanged.

Dated London, 28th August 1980

DJB/ic

27/1/80
DIRECTOR
L033169027278
H. & WEAVERS (UNDERWRITING) AGENCIES LTD

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000066

ADDENDUM NO.3

Attaching to and forming part of Policy No.79DD1633C

Issued to                    W.R.GRACE & CO.

Notwithstanding anything contained herein to the contrary, it is hereby understood and agreed that this Policy shall not apply:-

A       To Property Damage claims arising from:-

(1) Erroneous delivery of seeds, erroneous substitution of one seed from another, or mislabelling of seeds;
(2) Cross pollination;
(3) Germination failure;
(4) The presence of noxious weed seed;
(5) Natural shrinkage of grain;
(6) Loss of and/or damage and/or deterioration from delay or from moisture content of grain;
(7) Commingling of grain.

B       (1) To liability arising under any policy of insurance or reinsurance;
(2) To liability arising out of the issuance,non-issuance,declination or cancellation of, or the imposition of special terms to any policy of insurance or reinsurance.

C       In respect of oil and/or gas drilling and/or exploration operations to:-

(i) the cost of control of any oil and/or gas well
(ii)loss of hole and/or in hole equipment.

It is further understood and agreed that except insofar as coverage is available to the Assured in the Underlying Insurances as set out in the attached Schedule,this Policy shall not apply:-

(A) To Charterers liability;
(B) To the safe berthing of any marine vessel;
(C) To marine vessels in the Assured's Care,Custody or Control;
(D) To Non-owned watercraft liability;
(E) To Contractual Liability;
(F) To Incidental Malpractice Liability;
(G) In respect of oil and/or gas drilling and/or exploration operations to:-
        (i)     explosion,blowout and/or cratering;
        (ii)    underground Property Damage not already excluded by the Seepage,Pollution and Contamination Clause No.1 and the Seepage, Pollution and Contamination Exclusion Clause No.2.

(H) To liability resulting from the ownership,maintenance and/or operations of any dock,wharf and/or quay facility.

(I) To Punitive and/or Exemplary Damages
(J) To Pharmacists Liability.

All other terms and conditions of the Policy remaining unchanged.

Dated ,10th December 1979        **CONFIDENTIAL**
DD/sc                           **SUBJECT TO APRIL 2009**            GEI-000067
                                **PROTECTIVE ORDER**

ADDENDUM NO.4


Attaching to and forming part of Policy No.79DD1633C


Notwithstanding anything contained herein to the contrary it is hereby understood and agreed that this Policy shall apply to "Joint Ventures" subject always to the following attached "Joint Venture Clause" given below except in respect of those Joint Ventures which are excepted by virtue of Addendum No.(5)

### JOINT VENTURE CLAUSE
#### (THIRD PARTY LIABILITY)
##### (Approved by Lloyd's Underwriters' Non-Marine Association)

(1) It is hereby understood and agreed by the Assured and Underwriters that, as regards any liability of the Assured which is insured under this Policy and arises in any manner whatsoever out of the operations or existence of any joint venture, co-venture, joint lease, joint operating agreement or partnership (hereinafter called " Joint Venture ") in which the Assured has an interest, the liability of Underwriters under this Policy shall be limited to the product of (a) the percentage interest of the Assured in the said Joint Venture and (b) the total limit of liability insurance afforded the Assured by this Policy. Where the percentage interest of the Assured in said Joint Venture is not set forth in writing, the percentage to be applied shall be that which would be imposed by law at the inception of the Joint Venture. Such percentage shall not be increased by the insolvency of others interested in the said Joint Venture.

(2) It is further understood and agreed that, where any underlying insurance(s) have been reduced by a clause having the same effect as paragraph (1), the liability of Underwriters under this Policy, as limited by paragraph (1), shall be excess of the sum of (a) such reduced limits of any underlying insurance(s) and (b) the limits of any underlying insurance(s) not reduced.

22/1/70

N.M.A. 1687


It is further understood and agreed that the term "Joint Venture" as used in the above attached "Joint Venture Clause" or elsewhere within the Policy wording shall be understood to mean:

> "Any joining together of two or more companies, either legally or contractually, for the purpose of any business undertaking where joint financial or corporeal benefit is intended."


All other terms and conditions of the Policy remaining unchanged.


Dated,London 10th December 1979
DB/sc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000068

ADDENDUM NO. 5

Attaching to and forming part of Policy No 79DD1633C

Issued to                      W. R. GRACE & CO.

It is hereby understood and agreed that the "Joint Venture Clause" contained in Addendum No.4 shall not apply in respect of any co-venture or partnership where:

(A) The Assured's financial interest is at least 50%;

(B) The Assured has sole responsibility for the management and operation;

(C) The Assured is obligated to provide full insurance.

Notwithstanding the foregoing, it is understood and agreed that any future contractual agreement issued by the Assured to its co-venturers or partners will specify that the insurance provided by the Assured's insurers shall be the sole and exclusive protection afforded to any and all members of such ventures.

All other terms and conditions of the Policy remaining unchanged.

Dated, London 10th December 1979

DB/sc



CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER



ADDENDUM NO.6

Attaching to and forming part of Policy No.79DD1633C

Issued to                W.R.GRACE & CO.

ADJUSTMENT CLAUSE.

Notwithstanding anything stated herein to the contrary, it is
hereby agreed that the premium charged hereon is comprised of a Minimum and
Deposit of $1,320,000.00 part of $1,650,000.00 plus an annual flat premium
charge of $14,400.00 part of $18,000.00 in respect of Charterers Liability
and in respect of the coverage provided hereunder for the safe berthing of
any marine vessel and marine vessels in the Assured's care,custody or control
and shall be due and payable as follows:-

30th June 1979          -     $440,000.00 part of
                              $550,000.00 (Minimum and Deposit)

                  plus  $ 14,400.00 part of
                        $ 18,000.00 (Flat Premium)

30th June 1980          -     $440,000.00 part of
                              $550,000.00 (Minimum and Deposit)

                  plus  $ 14,400.00 part of
                        $ 18,000.00 (Flat Premium)

30th June 1981          -     $440,000.00 part of
                              $550,000.00 (Minimum and Deposit)

                  plus  $ 14,400.00 part of
                        $ 18,000.00 (Flat Premium)

It is further understood and agreed that the Minimum and Deposit Premium
specified above is subject to adjustment with Earned Premium to be calculated at
a rate of 0.0925 per $1,000.00 of the Assured's Gross Receipts.

The Assured shall declare to Underwriters as soon as possible after each
anniversary date (commencing with the 30th June 1980) the total amount of their Gross
Receipts during  the preceding annual period and should the Earned Premium so
computed exceed the Deposit Premium charged for said annual period then the
balance shall be immediately payable by the Assured to the Underwriters.

Notwithstanding anything contained herein to the contrary, if this Policy
shall be cancelled by the Assured, Underwriters shall be entitled to the Earned
Premium for the period that this Policy has been in force or the short rate
proportion of the Minimum Premium whichever is the greater, plus the short rate
proportion of the flat premium charge.  If this Policy is cancelled by
Underwriters they shall be entitled to the Earned Premium for the period that this
Policy  has been in force or pro rata of the Minimum Premium whichever is the
greater, plus the pro rata proportion of the flat premium charge.

All other terms and conditions of the Policy remaining unchanged.

Dated ,London 10th December 1979

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000070

ADDENDUM NO. 7

Attaching to and forming part of Policy No. 79DD1633C

Issued to:                          W.R. GRACE & CO.


    Notwithstanding the fact that the Assured has underlying insurance in
force providing coverage in respect of Products Recall and Architects Errors
and Omissions Insurance, it is specifically understood and agreed that no
such coverage shall be provided hereunder and for the purposes of this
Policy the underlying coverage shall not be impaired by such exposures.

    It is further understood and agreed that this Policy shall not apply to
any loss which would have been covered by the scheduled underlying policies,
except for the deductible provisions contained therein.


All other terms and conditions of the Policy remaining unchanged.

Dated, London,  10th December, 1979

DB/sc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000071

ADDENDUM NO.1

Attaching to and forming part of Policy No.79DD1633C

Issued to               W.R.GRACE & CO.


As respects the Assured's operations outside the United States of America and/or Canada Insuring Agreement II is amended to read as follows:-

   "...Underwriters hereon shall be only liable for the ultimate net loss the excess of either:-

   (a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances;

or (b) $250,000.00 ultimate net loss in respect of each occurrence.

      whichever is the greater,

·or (c) $250,000.00 ultimate net loss in respect of each occurrence not covered by said underlying insurances,

                                    ................"


All other terms and conditions of the Policy remaining unchanged.

Dated,London 10th December 1979

DB/sc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

ADDENDUM NO. 2

Attaching to and forming part of Policy No. 79DD1633C

Issued to:                  W.R. GRACE & CO.

It is hereby understood and agreed that this policy is extended
to include "Employee Benefit Liability", as more fully defined in the
scheduled underlying policies and that as respects such coverage this
policy is subject to the same warranties, terms and conditions (except
as regards the premium, the obligation to investigate and defend, the
amount and limits of liability and the renewal agreement, if any) as
are contained in the said underlying policies.

It is however further understood and agreed that the above extension
in coverage shall not apply to claims based upon the Employee Retirement
Income Security Act of 1974, Public Law 93-406 commonly referred to as
the Pension Reform Act of 1974 and amendments thereto, or similar
provisions of any Federal, State or Local Statutory Law or Common Law.

All other terms and conditions of the Policy remaining unchanged.

Dated, London, 10th December, 1979

DB/sc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000073



**ADDENDUM 8**

Attaching to and forming part of Policy No.79DD1633C

Issued to:                W.R. GRACE & CO.

It is hereby understood and agreed that the following attached clause shall apply in respect of the Assured's oil and/or gas operations on, over and/or under water:

### SEEPAGE, POLLUTION AND CONTAMINATION EXCLUSION CLAUSE No. 2
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination.
(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances.
(3) Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by sub-surface operations of the Assured.
(4) Removal of, loss of or damage to sub-surface oil, gas or any other substance, the property of others.
(5) Fines, penalties, punitive or exemplary damages.
22/1/70.
N.M.A. 1684.

It is also understood and agreed that the following attached clause shall apply in respect of the Assured's oil and/or gas operations other than those on, over and/or under water:

### SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 1
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1) Removal of, loss of or damage to sub-surface oil, gas or any other substance, the property of others, provided always that this paragraph (1) shall not apply to any liability which would otherwise be covered under this Insurance for such removal, loss or damage directly attributable to blow-out, cratering or fire of an oil or gas well owned or operated by, or under the control of, the Assured.
(2) Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by sub-surface operations of the Assured.
(3) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (3) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(4) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(5) Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.
22/1/70.
N.M.A. 1683.

It is further understood and agreed that the following attached clause shall apply in respect of all operations of the Assured, other than oil and/or gas operations.

### INDUSTRIES, SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 3
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(3) Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.
22/1/70.
N.M.A. 1685.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000074

All other terms and conditions of the Policy remaining unchanged

ADDENDUM NO. 9

Attaching to and forming part of Policy No. 79DD1633C

Issued to:                W.R. GRACE & CO.

It is hereby understood and agreed that the BOOKER DRILLING COMPANY
is included herein as an additional Assured.   In consequence of the
above the CNA Casualty Company of Illinois will provide underlying
coverage on a "Difference Between" basis up to the appropriate underlying
limits as expressed in the schedule attached hereto until such time
as the existing underlying insurances of Booker Drilling Company are
cancelled and the coverages are included within the CNA underlying
insurance programme.

Gross Receipts from the aforementioned entity shall be included in
the premium adjustment in accordance with Addendum No. 6.

All other terms and conditions of the Policy remaining unchanged.

Dated, London,   10th December, 1979

DB/ic

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

ADDENDUM NO.10

Attaching to. and forming part of Policy No.79DD1633C

Issued to                    W.R.GRACE & CO.

## WARRANTY

It is hereby warranted by the Assured that Physical Damage coverage
is maintained for 100% values in respect of all Highly Protected Risk
properties and that a blanket block policy for $50,000,000 excess of a
$1,000,000 deductible is maintained for all other real property; all
property in the Assured's care, custody or control being covered by such
policies.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000076

ADDENDUM NO. 11

Attaching to and forming part of Policy No. 79DD1633C

Issued to:                    W.R. GRACE & CO.

It is hereby understood and agreed that this Policy is extended
to include "Data Processors Errors and Omissions" and "Insurance
Brokers Errors and Omissions".

It is however specifically understood and agreed that the above
extension in coverage is only applicable insofar as such coverage is
available to the Assured in the schedule of Underlying Insurances
attached hereto and that as respects such coverages this Policy is
subject to the same warranties, terms and conditions (except as regards
the premium, the obligation to investigate and defend, the amount and
limits of liability and the renewal agreement, if any), as are contained
in said Underlying Insurances.

All other terms and conditions of the Policy remaining unchanged.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

COPY    ADDENDUM NO 13

Attaching to and forming part of Policy No 79DD1633C

Issued to:       W.R.GRACE & CO.

It is understood and agreed that, with effect from 1st October 1980 this
Policy shall apply in respect of the Joint Venture known as Four Corners
Mine and International Minerals & Chemical Corporation is included hereon
in respect of their interest in this Joint Venture. Also included as an
Additional Assured is Morgan Guaranty Trust Company of New York, but
only in respect of their interest as mortgagee in the Four Corners Mine
Joint Venture and pursuant to the terms and conditions of the credit
agreement dated January 27, 1981.

It is further understood and agreed that coverage provided hereon shall
apply separately in excess of the following underlying insurances in
respect of the Four Corners Mine Joint Venture.

| Coverage | Limit | Carrier |
|---|---|---|
| A.General Liability | $1,000,000 (applies separately to each contractor but is subject to a combined $5,000,000 limit for any one occurrence. | Hartford Insurance Company. |
| B.Employers Liability | $  500,000 | Hartford Insurance Company. |
| C.Umbrella Liability (To apply excess of A and B above) | $29,000,000 | Hartford Insurance Company. |

It is further understood and agreed that the Joint Venture Clause incorporated
in Addendum No 4 will not apply to this Joint Venture.

L03B169
027275
1.1183      DIRECTOR
H. S. WEAVERS (UNDERWRITING) AGENCIES LTD

All other terms and conditions of the Policy remaining unchanged.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000078

ADENDUM NO 14

Attaching to and forming part of Policy No 79DD1G33C

Issued to:        W.R.GRACE & CO.

It is hereby understood and agreed that with effect from 10th March,1982 this Policy shall not apply to Chemed Corporation and/or any subsidiary, organisation or company, including subsidiaries of a subsidiary company, owned controlled or coming under the active management of Chemed Corporation.

L038 16902727,
DIRECTOR
23.11.83
H. B. WEAVERS (UNDERWRITING) AGENCIES LTD

All other terms and conditions of the Policy remaining unchanged
PSGB/sc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

COPY

**ADDENDUM NO 15**

Attaching to and forming part of Policy No 79DD1633C

Issued to:      W.R.GRACE AND CO.

It is understood and agreed that with effect from 30th April,1982 the
Assured leased an aircraft (Gulf Stream II No.227-GL) to Mobil, who
give the understanding that they will provide insurance.  If there
should be a breach of contract, W.R.Grace's primary Aviation Policy
will respond for any contingent liability that may exist.

All other terms and conditions of the Policy remaining unchanged.
PSGB/sc

L03816902727S

30384

H. S. WEAVERS (UNDERWRITING) AGENCIES LT:

DIRECTOR

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000080

## UMBRELLA POLICY (LONDON 1971)

**Named Assured:**  As stated in Item 1 of the Declarations forming a part hereof

> ~~H.S. and/or subsidiary associated affiliated companies owned and controlled companies as now or hereafter constituted~~ and of which prompt notice has been given to Underwriters (hereinafter called the "Named Assured").

### INSURING AGREEMENTS:

**1.    COVERAGE –**

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:-

    (a)    imposed upon the Assured by law,

or    (b)    assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:-

    (i)    Personal Injuries

    (ii)    Property Damage

    (iii)    Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world.

**11.    LIMIT OF LIABILITY –**

Underwriters hereon shall be only liable for the ultimate net loss the excess of either:-

    (a)    the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances,

or    (b)    $ 100,000    ultimate net loss in respect of each occurrence not covered by said underlying insurances,

(hereinafter called the "underlying limits"):

and then only up to a further sum as stated in Item 2(a) of the Declarations in all in respect of each occurrence – subject to a limit as stated in Item 2(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this Policy subject to all the terms, conditions and definitions hereof shall:-

    (1)    in the event of reduction pay the excess of the reduced underlying limit

    (2)    in the event of exhaustion continue in force as underlying insurance.

The inclusion or addition hereunder of more than one Assured shall not operate to increase Underwriters' limits of liability beyond those set forth in the Declarations.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000081

THIS POLICY IS SUBJECT TO THE FOLLOWING DEFINITIONS:

1.   ASSURED –

The unqualified word "Assured", wherever used in this Policy, includes:-

(a)   The Named Assured, and, if the Named Assured is designated in Item 1 of the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(b)   any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such, and any organisation or proprietor with respect to real estate management for the Named Assured;

(c)   any person, organisation, trustee or estate to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only to the extent of such obligation and in respect of operations by or on behalf of the Named Assured or of facilities of the Named Assured or of facilities used by the Named Assured;

(d)   any additional Assured (not being the Named Assured under this policy) included in the Underlying Insurances, subject to the provisions in Condition B; but not for broader coverage than is available to such additional Assured under any underlying insurances as set out in attached schedule;

(e)   with respect to any automobile owned by the Named Assured or hired for use in behalf of the Named Assured, or to any aircraft owned by or hired for use in behalf of the Named Assured, any person while using such automobile or aircraft and any person or organisation legally responsible for the use thereof, provided the actual use of the automobile or aircraft is with the permission of the Named Assured.   The insurance extended by this sub-division (e), with respect to any person or organisation other than the Named Assured shall not apply:-

1.   to any person or organisation, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any occurrence arising out of the operation thereof;

2.   to any manufacturer of aircraft, aircraft engines, or aviation accessories, or any aviation sales or service or repair organisation or airport or hangar operator or their respective employees or agents with respect to any occurrence arising out of any of the aforementioned;

3.   with respect to any hired automobile or aircraft, to the owner thereof or any employee of such owner;

4.   with respect to any non-owned automobile to any officer, director, stockholder, partner or employee of the Named Assured if such automobile is owned in full or in part by him or a member of his household.

This sub-division (e) shall not apply if it restricts the insurance granted under sub-division (d) above.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000082          Page 2 of 11

2.    PERSONAL INJURIES -

The term "Personal Injuries", wherever used herein, means bodily injury (including death at any time resulting therefrom), mental injury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, humiliation; also libel, slander or defamation of character or invasion of rights of privacy, except that which arises out of any advertising activities.

3.    PROPERTY DAMAGE -

The term "Property Damage", wherever used herein, shall mean loss of or direct damage to or destruction of tangible property (other than property owned by the Named Assured).

4.    ADVERTISING LIABILITY -

The term "Advertising Liability", wherever used herein, shall mean:-

(1)    Libel, slander or defamation;

(2)    Any infringement of copyright or of title or of slogan;

(3)    Piracy or unfair competition or idea misappropriation under an implied contract;

(4)    Any invasion of right of privacy;

committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Assured's advertising activities.

5.    OCCURRENCE -

The term "Occurrence", wherever used herein, shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintention- ally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

6.    DAMAGES -

The term "Damages" includes damages for death and for care and loss of services resulting from personal injury and damages for loss of use of property resulting from property damage.

7.    ULTIMATE NET LOSS -

The term "Ultimate Net Loss" shall mean the total sum which the Assured, or his Underlying Insurers as scheduled, or both, become obligated to pay by reason of personal injuries, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's or of any underlying insurers permanent employees.

The Underwriters shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance.

8.    AUTOMOBILE –

The term "Automobile", wherever used herein, shall mean a land motor vehicle, trailer or semi-trailer.

9.    AIRCRAFT –

The term "Aircraft", wherever used herein, shall mean any heavier than air or lighter than air aircraft designed to transport persons or property.

10.    PRODUCTS LIABILITY –

The term "Products Liability" means :–

(a)    Liability arising out of goods or products manufactured, sold, handled or distributed by the Assured or by others trading under his name (hereinafter called "the Assured's products") if the occurrence occurs after possession of such goods or products has been relinquished to others by the Assured or by others trading under his name and if such occurrence occurs away from premises owned, rented or controlled by the Assured; provided such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

(b)    Liability arising out of operations, if the occurrence occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the Assured; provided operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further the following shall not be deemed to be "operations" within the meaning of this paragraph:–

(i)    pick-up or delivery, except from or onto a railroad car;
(ii)   the maintenance of vehicles owned or used by or in behalf of the Assured;
(iii)  the existence of tools, uninstalled equipment and abandoned or unused materials.

11.    ANNUAL PERIOD –

The term "Annual Period" shall mean each consecutive period of one year commencing from the inception date of this Policy.

THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS:

This Policy shall not apply:–

(a)    to any obligation for which the Assured and any company as its Insurer may be held liable under any Workmen's Compensation, unemployment compensation or disability benefits law provided, however, that this exclusion does not apply to liability of others assumed by the Named Assured under contract or agreement;

L.P.O.354B (8/76)

Page 4 of 11

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

(b)    to personal injury, property damage or advertising liability arising out of the conduct of any partnership or joint venture of which the Assured is a partner or member and which is not designated in this policy as a Named Assured;

(c)    to claims made against the Assured:-

(i)    on account of Personal Injuries or Property Damage resulting from the failure of the Assured's products or work completed by or for the Assured to perform the function or serve the purpose intended by the Assured, if such failure is due to a mistake or deficiency in any design, formula, plan, specification, advertising material or printed instructions prepared or developed by the Assured; but this exclusion (i) does not apply to Personal Injuries or Property Damage resulting from the active malfunctioning of such products or work;

(ii)   on account of Property Damage to the Assured's products arising out of such products or any part of such products;

(iii)  on account of Property Damage to work performed by or on behalf of the Assured arising out of work or any portion thereof, or out of the materials, parts or equipment furnished in connection therewith;

(iv)   for the withdrawal, inspection, repair, replacement, or loss of use of the Assured's products or work completed by or for the Assured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(d)    with respect to advertising activities, to claims made against the Assured for:-

(i)    failure of performance of contract, but this shall not relate to claims for unauthorised appropriation of ideas based upon alleged breach of an implied contract;

(ii)   infringement of registered trade marks, service mark or trade name by use thereof as the registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans;

(iii)  incorrect description of any article or commodity;

(iv)   mistake in advertised price;

(e)    except in respect of occurrences taking place in the United States of America, its territories or possessions, or Canada, to any liability of the Assured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

(f)    to any liability arising out of the violation of any statute, law, ordinance or regulation prohibiting discrimination or humiliation because of race, creed, colour or national origin,

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000085

Except insofar as coverage is available to the Assured in the underlying insurances as set out in the attached Schedule, this policy shall not apply:-

(g)    to the liability of any Assured hereunder for assault and battery committed by or at the direction of such Assured except liability for Personal Injuries resulting from any act alleged to be assault and battery committed for the purpose of preventing or eliminating danger in the operation of aircraft, or for the purpose of preventing Personal Injuries or Property Damage; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(h)    with respect to any aircraft owned by the Assured except liability of the Named Assured for aircraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(i)    with respect to any watercraft owned by the Assured, while away from premises owned, rented or controlled by the Assured, except liability of the Named Assured for watercraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(j)    to any employee with respect to injury to or the death of another employee of the same Employer injured in the course of such employment.

## THIS POLICY IS SUBJECT TO THE FOLLOWING CONDITIONS:

A.    PREMIUM –

Unless otherwise provided for the premium for this Policy is a flat premium and is not subject to adjustment except as provided in Conditions B and P.

B.    ADDITIONAL ASSUREDS –

In the event of additional assureds being added to the coverage under the underlying insurance during currency hereof prompt notice shall be given to Underwriters hereon who shall be entitled to charge an appropriate additional premium hereon.

C.    PRIOR INSURANCE AND NON CUMULATION OF LIABILITY –

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in item 2 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

D.    SPECIAL CONDITIONS APPLICABLE TO OCCUPATIONAL DISEASE –

As regards personal injury (fatal or non-fatal) by occupational disease sustained by any employee of the Assured, this policy is subject to the same warranties, terms and conditions (except as regards the premium, the amounts and limits of liability and the renewal agreement, if any) as are contained in or as may be added to the underlying insurance prior to the happening of an occurrence for which claim is made hereunder.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER
GEI-000086          Page 6 of 11

E.    INSPECTION AND    'DIT –

Underwriters shall be permitted but not obligated to inspect the Assured's property and operations at any time.  Neither the Underwriters' right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Assured or others, to determine or warrant that such property or operations are safe.

Underwriters may examine and audit the Assured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

F.    CROSS LIABILITY –

In the event of claims being made by reason of personal injury suffered by any employee of one Assured hereunder for which another Assured hereunder is or may be liable, then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

In the event of claims being made by reason of damage to property belonging to any Assured hereunder for which another Assured is, or may be, liable then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

Nothing contained herein shall operate to increase Underwriters' limit of liability as set forth in Insuring Agreement 11.

G.    NOTICE OF OCCURRENCE –

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this policy, notice shall be sent as stated in Item 4 of the Declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

H.    ASSISTANCE AND CO-OPERATION –

The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers or both in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

I.    APPEALS –

In the event the Assured or the Assured's underlying insurers elect not to appeal a judgment in excess of the underlying limits, Underwriters may elect to make such appeal at their own cost and expense, and shall be liable for the taxable costs and disbursements and interest on judgments incidental thereto, but in no event shall the liability of Underwriters for ultimate net loss exceed the amount set forth in Insuring Agreement 11 for any one occurrence and in addition the cost and expense of such appeal.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000087