# EXHIBIT 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
_____X

In Re:                          Chapter 11

                                Case No.

                                01-01139 JKF

W.R. Grace & Co., et al.,

                                (Jointly
         Debtors.              Administered)
_____X


        * * * CONFIDENTIAL * * *


            —    —    —


         May 13, 2009


            —    —    —


      DEPOSITION of RICHARD FINKE, held

at the offices of Kirkland & Ellis, 655

Fifteenth Street, N.W., Washington, DC,

commencing at 9:32 A.M., on the above

date, before Lisa Lynch, a Registered

Merit Reporter, New Jersey Certified Court

Reporter, License No. XI00825, and

Certified Realtime Reporter


         —    —    —


      MAGNA LEGAL SERVICES, LLP

   7 Penn Center, 8th Floor
      1635 Market Street
      Philadelphia, PA  19103

Page 2

```
 1   APPEARANCES:
 2
     DRINKER BIDDLE & REATH, LLP
 3   BY: MICHAEL F. BROWN, ESQUIRE
     One Logan Square
 4   18th and Cherry Streets
     Philadelphia, Pennsylvania 19103-6996
 5   (brownmf@dbr.com)
     Representing OneBeacon America Insurance
 6   Company, Seaton Insurance Company,
     Government Employees Insurance Company,
 7   Columbia Insurance Company f/k/a Republic
     Insurance Company
 8
 9   CAPLIN & DRYSDALE, CHARTERED
     BY: JEFFREY A. LIESEMER, ESQUIRE
10   One Thomas Circle NW
     Suite 1100
11   Washington, DD 20005
     202.862.7801
12   (jal@capdale.com)
     Representing Grace, Official Committee of
13   Asbestos Personal Injury Claimants ("ACC")
14
     KIRKLAND & ELLIS, LP
15   BY: BARBARA M. HARDING, ESQUIRE
         THEODORE L. FREEDMAN, ESQUIRE
16   655 Fifteenth Street, N.W.
     Washington, DC 20005-5793
17   202.879.5081
     (barbara.harding@kirkland.com)
18   (tfreedman@kirkland.com)
     Representing the Debtors
19
20   THE LAW OFFICES OF JANET S. BAER, P.C.
     BY: JANET S. BAER, ESQUIRE
21   70 West Madison Street
     Suite 2100
22   Chicago, Illinois 60602
     jbaer@jsbpc.com
23   Representing W.R. Grace
24
```

Page 4

```
 1   APPEARANCES:(continued)
 2   MENDES & MOUNT, LLP
     BY: ALEXANDER MUELLER, ESQUIRE
 3   750 Seventh Avenue
     New York, New York 10019
 4   212.261.8296
     (alexander.mueller@mendes.com)
 5   Representing London Market Companies
 6
     FORD MARRIN ESPOSITO & WITNEYER & GLESER
 7   BY: ELIZABETH M. DeCRISTOFARO, ESQUIRE*
     (*VIA TELECONFERENCE)
 8   Wall Street Plaza
     New York, New York 10005-1875
 9   212.269.4900
     Representing Continental Casualty Company
10   and Continental Insurance Company
11
     BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
12   BY: MATTHEW I. KRAMER, ESQUIRE*
     (*VIA TELECONFERENCE)
13   200 South Biscayne Boulevard
     Suite 2500
14   Miami, Florida 33131-5340
     305.450.7246
15   (mkramer@bilzin.com)
     Representing Property Damage Committee
16
17   STROOCK & STROOCK & LAVAN, LLP
     BY: ARLENE G. KRIEGER, ESQUIRE*
18       LEWIS KRUGER, ESQUIRE*
     (*VIA TELECONFERENCE)
19   180 Maiden Lane
     New York, New York 10038-4982
20   212.806.5400
     (akrieger@stroock.com)
21   Representing Official Committee of
     Unsecured Creditors
22
23
24
```

Page 3

```
 1   APPEARANCES: (continued)
 2   SIMPSON THACHER & BARTLETT, LLP
     BY: ELISA ALCABES, ESQUIRE
 3   425 Lexington Avenue
     New York, New York 10017-3954
 4   212.455.2846
     (ealcabes@stblaw.com)
 5   Representing Travelers Casualty and Surety
     Company
 6
 7   VORYS, SATER, SEYMOUR AND PEASE, LLP
     BY: WILLIAM J. POHLMAN, ESQUIRE*
 8       PHILIP DOWNEY, ESQUIRE*
     (*VIA TELECONFERENCE)
 9   52 East Gay Street
     Columbus, Ohio 43215
10   614.464.8349
     (wjpohlman@vorys.com)
11   Representing The Scotts Company, LLC
12
     LEWIS, SLOVAK & KOVACICH, PC
13   BY: TOM L. LEWIS, ESQUIRE
     P.O. Box 2325
14   723 Third Avenue
     Great Falls, Montana 59403
15   406.761.5595
     tom@lsklaw.net
16   Representing the Libby Claimants
17
     SPEIGHTS & RUNYAN
18   BY: DANIEL H. SPEIGHTS, ESQUIRE*
     (*VIA TELECONFERENCE)
19   200 Jackson Avenue East
     P.O. Box 685
20   Hampton, South Carolina 29924
     803.943.4444
21   (dspeights@speightsrunyan.com)
     Representing Anderson Memorial Hospital
22
23
24
```

Page 5

```
 1   APPEARANCES: (continued)
 2
     CROWELL & MORING, LLP
 3   BY: MARK D. PLEVIN, ESQUIRE
         NOAH S. BLOOMBERG, ESQUIRE
 4   1001 Pennsylvania Avenue, N.W.
     Washington, DC 20004-2595
 5   202.624.2913
     (mplevin@crowell.com)
 6   (nbloomberg@crowell.com)
     Representing Fireman's Fund Insurance
 7   (Surety Bond)
 8
     STEVENS & LEE, P.C.
 9   BY: MARNIE E. SIMON, ESQUIRE
     1818 Market Street, 29th Floor
10   Philadelphia, Pennsylvania 19103-1702
     215.751.2885
11   (mes@stevenslee.com)
     Representing Fireman's Fund Insurance
12
     LAW OFFICES OF ALAN B. RICH
13   BY: ALAN B. RICH, ESQUIRE
     Elm Place, Suite 4620
14   1401 Elm Street
     Dallas, Texas 75202
15   214.744.5100
     (arich@alanrichlaw.com)
16   Representing Property Damage PCR
17
     CONNOLLY BOVE LODGE & HUTZ, LLP
18   BY: JEFFREY C. WISLER, ESQUIRE
     The Nemours Building
19   1007 North Orange Street
     P.O. Box 2207
20   Wilmington, Delaware 19899
     302.888.6528
21   (jwisler@cblh.com)
     Representing Maryland Casualty
22
23
24
```

| Page 6 | Page 8 |
|---|---|

**Page 6**

1  A P P E A R A N C E S: (continued)
2  ECKERT SEAMANS CHERIN & MELLOTT, LLC
   BY: EDWARD J. LONGOSZ, II, ESQUIRE
   1747 Pennsylvania Avenue, N.W.
   12th Floor
4  Washington, DC 20006
   202.659.6619
5  (elongosz@eckertseamans.com)
   Representing Maryland Casualty and Zurich
6
7  WILEY REIN, LLP
   BY: RICHARD A. IFFT, ESQUIRE
8  1776 K Street NW
   Washington, DC 20006
9  202.719.7170
   (rifft@wileyrein.com)
10 Representing Maryland Casualty and Zurich
11
   COZEN O'CONNOR
12 BY: JACOB C. COHN, ESQUIRE
   1900 Market Street
13 Philadelphia, Pennsylvania 19103-3508
   215.665.2147
14 (jcohn@cozen.com)
   Representing Federal Insurance Company
15
16 ORRICK HERRINGTON & SUTCLIFFE, LLP
   BY: PERI N. MAHALEY, ESQUIRE
17 Columbia Center
   1152 15th Street, N.W.
18 Washington, DC 20005-1706
   202.339.8516
19 (pmahaley@orrick.com)
   Representing PI Future Claimants'
20 Representative
21
   CUYLER BURK, P.C.
22 BY: ANDREW CRAIG, ESQUIRE
   4 Century Drive
23 Parsippany, New Jersey 07054
   973.734.3200
4  (acraig@cuyler.com)

**Page 8**

1        INDEX
         EXAMINATION
2
   Witness Name              Page
3  RICHARD FINKE
4    BY MR. BROWN          12,333
5    BY MS. ALCABES          129
6    BY MR. LEWIS            187
7    BY MR. PLEVIN           265
8    BY MR. WISLER           285
9    BY MR. COHN             289
10   BY MR. MANGAN           296
11   BY MR. DOWNEY        305, 371
12   BY MR. SCHIAVONI        343
13   BY MR. SPEIGHTS         347
14
15        EXHIBITS
   EXHIBIT   DESCRIPTION          ID
16
17 Exhibit 1  Notice of Deposition of   16
             Debtors Pursuant to Rule
18           30(b)(6)

19 Exhibit 2  Document entitled W.R.    16
             Grace/Confirmation Hearing
20           30(b)(6) Deposition Notice

21 Exhibit 3  SEC Form 8-K             25

22 Exhibit 4  Exhibit 6 to Exhibit Book, 41
             Asbestos Insurance
23           Transfer Agreement

24 Exhibit 5  Exhibit 19 to Exhibit    53
             Book, Retained Causes of

| Page 7 | Page 9 |
|---|---|

**Page 7**

1  A P P E A R A N C E S: (continued)
2  O'MELVENY & MEYERS LLP
   BY: TANCRED SCHIAVONI, ESQUIRE*
3  (*VIA TELEPHONE)
   7 Times Square
4  New York, New York 10036
   212.326.2267
5  (tschiavoni@omm.com)
   Representing Arrowood Indemnity Company
6
7  WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
   BY: KEVIN J. MANGAN, ESQUIRE*
8  (*VIA TELECONFERENCE)
   222 Delaware Avenue
9  Suite 1501
   Wilmington, Delaware 19801
10 302.252.4361
   (kmangan@wcsr.com)
11 Representing State of Montana
12
   PEPPER HAMILTON, LLP
13 BY: LINDA J. CASEY, ESQUIRE*
   (*VIA TELECONFERENCE)
14 3000 Two Logan Square
   Philadelphia, Pennsylvania 19103
15 215.981.4000
   (caseyl@pepperlaw.com)
16 Representing BNSF Railway Company
17 KRAMER LEVIN NAFTALIS & FRANKEL, LLP
   BY: SARAH SCHINDLER-WILLAIMS, ESQUIRE*
18 (*VIA TELECONFERENCE)
   1177 Avenue of the Americas
19 New York, New York 10036
   212.715.9515
0  (SSchindlerWilliams@kramerlevin.com)
   Representing the Equity Committee
21
22
23
24

**Page 9**

1        EXHIBITS
   EXHIBIT   DESCRIPTION          ID
2
3  Exhibit 6  Exhibit 2 to Exhibit Book, 55
             Asbestos PI Trust Agreement
4
5  Exhibit 7  Exhibit 4 to Exhibit Book, 55
             Trust Distribution
             Procedures
6
7  Exhibit 8  First Amended Joint Plan 70
             of Reorganization
8  Exhibit 9  Exhibit 5 to Exhibit Book, 92
             Schedule of Settled
9            Asbestos Insurers Entitled
             to 524(g) Protection
10
11 Exhibit   Settlement Agreement    98
10           Bates stamped OB 1 through
             33
12
   Exhibit   Travelers/Allstate    135
13 11          30(b)(6) deposition notice
14 Exhibit   Travelers 30(b)(6)    136
12           supplemental deposition
15           notice
16 Exhibit   Grace/Aetna Asbestos  149
13           Settlement Agreement dated
17           May 22, 1996
18 Exhibit   Exhibit 25 to Exhibit  178
14           Book, CMO for Class 7A
19           Asbestos PD Claims
20
21
22
23
24

Page 10

DEPOSITION SUPPORT INDEX

Direction to Witness Not To Answer
Page  Line      Page  Line
30    2         37    12
37    17        39    8
39    15        369   1

Request For Production of Documents
Page  Line    Page  Line
(None)

Stipulations
Page  Line    Page  Line
(None)

Questions Marked
Page  Line    Page  Line
(None)

        - - -

---

Page 11

1    R I C H A R D   F I N K E,
2        having been sworn by the Notary
3        Public of the States of New York
4        and New Jersey, was examined and
5        testified as follows:
6
7    EXAMINATION BY
8    MR. BROWN:
9        Q.   Good morning, Mr. Finke.
10   My name is Michael Brown.  I represent One
11   Beacon, Seaton, Geico and Republic for the
12   objecting insurance companies in the Grace
13   bankruptcy.  You've been deposed several
14   times before, correct?
15       A.   Yes, I have.
16       Q.   Okay.  So we can dispense
17   with the formalities of what a
18   deposition's all about?
19       A.   Yes, we can.
20       Q.   Okay.
21           MS. HARDING:  Michael,
22   would you mind if I made a quick
23   statement on the record?
24           MR. BROWN:  Sure.

---

Page 12

1        MS. HARDING:  I just wanted
2    to make a statement on the record
3    that the debtors have designated
4    Mr. Finke to answer certain
5    appropriate questions related to
6    certain 30(b)(6) topics.
7        As we've indicated, Mr.
8    Finke will be available for seven
9    hours today.  We've also designated
10   Mr. Hughes and Mr. LaForce to
11   answer other 30(b)(6) topic
12   questions.  We are hoping and
13   expecting that the parties seeking
14   to ask questions have coordinated
15   so that we can end in seven hours
16   and we think it's a reasonable
17   expectation.
18       The debtors have reviewed
19   the deposition of Mr. Lockwood and
20   agree, in essence, with Mr.
21   Lockwood's answers with respect to
22   how the Plan operates and so we
23   think and are very hopeful that
24   there will not be a need to go

---

Page 13

1    further than seven hours to get to
2    the appropriate inquiry as to how
3    the Plan operates.  So I just
4    wanted to get that on the record.
5        MR. BROWN:  Okay.
6    Actually, that's helpful.  Maybe I
7    could follow up with a question for
8    Mr. Finke.
9        Q.   Mr. Finke, have you
10   reviewed Mr. Lockwood's Rule 30(b)(6)
11   deposition transcript?
12       A.   Yes, I have.
13       Q.   Okay.  Is there anything
14   that you read in that transcript that you
15   disagreed with?
16       A.   No, nothing of substance.
17       Q.   Okay.  How about anything
18   not of substance?
19       A.   There are a few occasions,
20   I think, where I either would have worded
21   something differently or where I think Mr.
22   Lockwood may have been either in error --
23   might have been in error depending on
24   whether he was -- depending on the

Page 14

1  context. Let me give you one example of
2  that.
3      Q.   Sure.
4      A.   He, I think, made a
5  statement at one point where he equated
6  asbestos in place coverage or insurance
7  coverage with the asbestos insurance
8  reimbursement agreements. I believe he
9  said he thought they were the same thing,
10  and perhaps in substance or in concept
11  they are. I'm not an insurance lawyer,
12  but I know that under the Plan
13  definitionally the definition of asbestos
14  (sic) in place insurance coverage
15  specifically excludes asbestos
16  reimbursement agreements from the
17  definition.
18      Q.   Okay.
19      A.   Which would suggest they
20  are not the same.
21      Q.   All right. I'm going to
22  suggest that Miss Alcabes, or one of the
23  people whose issue that is, may want to
1  follow up with you on that point.

Page 15

1      A.   Sure.
2      Q.   But let's pass on that.
3      Other than what you've just
4  described, is there anything else in Mr.
5  Lockwood's deposition transcript that the
6  debtors disagreed with?
7      A.   Nothing that comes to
8  mind.
9          MR. BROWN: Okay. Let me
10  have the first exhibit marked, and
11  can we go off the record for a
12  second.
13          (Off the record.)
14          (Notice of Deposition of
15  Debtors Pursuant to Rule
16  30(b)(6) marked for identification
17  as Exhibit Finke-1.)
18          (Document entitled W.R.
19  Grace/Confirmation Hearing 30(b)(6)
20  Deposition Notice marked for
21  identification as Exhibit
22  Finke-2.)
23  BY MR. BROWN:
24      Q.   Mr. Finke, I'm going to put

Page 16

1  before you two exhibits marked -- we're
2  using the term Finke 30(b)(6) 1 and Finke
3  30(b)(6) 2. For shorthand during the
4  deposition I'll just refer to them as
5  Finke-1 and Finke-2. Could you identify
6  Finke-1 for me, please?
7      A.   It is a Notice of
8  Deposition of Debtors Pursuant to Rule
9  30(b)(6) served by One Beacon, Seaton,
10  Geico and Columbia.
11      Q.   Going forward, it would be
12  more accurate to refer to Columbia as
13  Republic. I know it says Columbia there.
14  The date on here is April 28th, 2009 and
15  the site is Drinker Biddle & Reath's
16  offices but we obviously changed those by
17  agreement after this was scheduled.
18      Is it your understanding that
19  you're appearing here today in response to
20  this Rule 30(b)(6) notice?
21      A.   Yes.
22      Q.   And there were several
23  others served on you as well?
24      A.   Correct.

Page 17

1      Q.   Correct, all right.
2      If you look at what's been marked
3  as Finke-2, can you identify that for
4  me?
5      A.   It is a chart 18 pages long
6  entitled W.R. Grace/Confirmation Hearing
7  30(b)(6) Deposition Notice Witness
8  Designations.
9      Q.   Okay. And is it your
10  understanding that this document was
11  prepared by your counsel?
12      A.   Yes, that's my
13  understanding.
14      Q.   And have you seen it before
15  today?
16      A.   Yes.
17      Q.   Okay. And am I correct
18  that it basically lists all the various
19  topics from all the 30(b)(6) notices that
20  were served on Grace and then designates
21  one of, I believe, three individuals to
22  testify about the various topics?
23      A.   I would agree that it
24  includes all 30(b)(6) notices that have

Page 70

1 you now what has been marked as Exhibit 8
2 to this deposition and what is Exhibit 1
3 to the Exhibit Book.  First question is:
4 Would you identify the document, please?
5       A.    Yes.  I think Exhibit 8 is
6 the First Amended Joint Plan of
7 Reorganization that was filed by Grace and
8 its co-proponents.
9       Q.    Okay.
10       A.    And the date is February --
11 date on the document is February 27,
12 2009.
13       Q.    Okay.  Have you reviewed
14 this document in its entirety?
15       A.    Yes.
16       Q.    How many times?
17       MS. HARDING:  You mean in
18 its entirety how many times?
19       MR. BROWN:  Well, let's
20 start-up with that question.
21       A.    Interpreting review as
22 meaning a detailed word-for-word reading
23 of the entire document, I would say
1 once.

Page 71

1       Q.    Okay.  And how many times
2 have you partially reviewed the
3 document?
4       A.    Many times.
5       Q.    Okay.  Do you understand
6 it?
7       A.    I have an understanding of
8 it.  I would not profess to have a
9 complete understanding of it.
10       Q.    Okay.  Are there particular
11 provisions in the Plan that you're quite
12 certain you don't understand?
13       MS. HARDING:  Object to
14 form and relevance and concern that
15 we're not going to the seven
16 hours -- I mean, if you have a
17 specific question about a specific
18 provision that you don't understand
19 as an insured, then I think you
20 should ask him questions about
21 that.  I think...
22       MR. BROWN:  Is that an
23 instruction not to answer the
24 question?

Page 72

1       MS. HARDING:  No, it's
2 not.
3       MR. BROWN:  Okay.  It's
4 just --
5       MS. HARDING:  It's just an
6 objection that...
7       A.    I'm sure that I do not
8 understand the annex or annexes that I
9 believe relate to tax issues.
10       MS. HARDING:  I guess --
11 are you asking him in his personal
12 capacity?
13       MR. BROWN:  I don't think
14 he's here in his personal capacity.
15 I think he's here in his capacity
16 as a designee for W.R. Grace or for
17 the debtors.
18       MS. HARDING:  Okay.  Are
19 you asking him if there's anybody
20 at W.R. Grace that has an
21 understanding of different
22 provisions of the Plan as lawyers
23 and --
24       MR. BROWN:  I think he's

Page 73

1 here to testify about the operation
2 of the Plan.  I think that was --
3 isn't he?  So my question is
4 what --
5       MS. HARDING:  He's here to
6 answer questions to help you
7 understand the Plan.
8       MR. BROWN:  Barbara, can
9 we --
10       MS. HARDING:  So I think if
11 there are questions that you don't
12 understand, I think you should ask
13 him those.
14       MR. BROWN:  I would like to
15 know whether there are particular
16 provisions in the Plan that the
17 witness can identify that he is not
18 familiar with or that he doesn't
19 understand.
20       MS. HARDING:  Well, I think
21 he's asked and answered, so...
22       A.    Yes, for myself there are
23 provisions that I do not understand, such
24 as the tax annexes.  This --

Page 74

1    MS. HARDING:  Which also
2  were not designated 30(b)(6) topics
3  by any person who --
4    MR. BROWN:  Can I ask that
5  we just let the witness answer the
6  question?
7    MS. HARDING:  Well, I think
8  if you want to ask him questions
9  about topics that were designated
10  that you asked him to become
11  familiar with, then --
12    MR. BROWN:  I didn't ask
13  him a question about the tax annex.
14  It was in his answer.
15    MS. HARDING:  Well, that's
16  because you asked him about any
17  provision of the Plan.  You
18  asked -- we tried to prepare the
19  witness to answer questions about
20  topics that everybody asked about.
21    MR. BROWN:  All right.
22  I'll ask my question again.  If you
23  have an objection and you want to
24  instruct him not to answer, then do

Page 75

1  it and we'll move on.
2  BY MR. BROWN:
3    Q.   Mr. Finke, as you sit here
4  today looking at the Joint Plan, can you
5  identify particular provisions that you do
6  not understand?
7    MS. HARDING:  Object, asked
8  and answered, but answer one more
9  time if you'd like.
10    A.   In addition to what I've
11  already identified, the provision on the
12  warrants is not entirely clear to me.  And
13  if I spent the time to go through the
14  document page by page, there may be a few
15  other sections that I don't feel very
16  comfortable with in terms of the level of
17  my understanding.
18    Speaking on behalf of W.R. Grace as
19  a whole, there are individuals who
20  understand those sections and, taken as a
21  whole, I think W.R. Grace does have a good
22  understanding of the Plan.
23    Q.   Okay.  Well, let me take
24  your counsel up on her offer and direct

Page 76

1  your attention to page 87 of the Plan,
2  Section 7.15, and what I would like you to
3  do, because I have a series of questions
4  about it, is why don't you take a few
5  moments to review Section 7.15.  In fact,
6  if you want to take a break at this
7  point --
8    MR. BROWN:  Does that make
9  sense?  Okay.
10    MS. HARDING:  Well, I mean,
11  how long is it, again?
12    THE WITNESS:  Seven
13  pages.
14    MS. HARDING:  Five-minute
15  break?
16    MR. BROWN:  That's fine,
17  yes.
18    (Recess taken.)
19  BY MR. BROWN:
20    Q.   Mr. Finke, we had a short
21  break and before that I directed your
22  attention to Section 7.15 of the Plan
23  entitled Insurance Neutrality.  Did you
24  have an opportunity to review that section

Page 77

1  during the break?
2    A.   Yes.
3    Q.   This was not one of the
4  sections that you mentioned in your prior
5  testimony that you were -- that you did
6  not understand.  Is it safe to say that
7  this is a provision that you do
8  understand?  And I'm asking that question,
9  really, in your capacity as an individual
10  and as the designee on this subject for
11  the debtors.
12    MS. HARDING:  Object to
13  form.
14    A.   Yes, I believe I understand
15  it.
16    Q.   Okay.  Can you turn to
17  Section 11.9 of the Plan, and that's
18  entitled Exculpation, and if you'd take a
19  moment to review that section.
20    (The witness reviews the document.)
21    A.   Okay.
22    Q.   Given the language in
23  Section 7.15, am I correct that asbestos
24  insurance entities are not bound by the

Page 78

1  exculpation provision in Section 11.9 of
2  the Plan?
3          MR. LIESEMER:  Object to
4      the form.
5          MS. HARDING:  Object to the
6      form.
7      A.   I believe they -- the
8  asbestos insurance companies are bound by
9  Section 11.9.
10     Q.   They are bound?
11     A.   Yes.
12     Q.   If you go back to 7.15,
13  where is that set forth?
14         MS. HARDING:  Object to
15     form.
16         MR. LIESEMER:  Same
17     objection.
18     A.   Well, of course, there's no
19  provision in Section 7.15 that
20  specifically states that the insurers are
21  bound by Section 11.9.  I assume that's
22  not what you're asking, but -- well,
23  literally, I think that is what you asked,
24  so --

Page 79

1      Q.   Yes, that is what I asked.
2      A.   -- that's my answer then.
3      Q.   So there's nothing in 7.15
4  that says that they're bound by 11.9 but
5  your testimony is that they are in fact
6  bound by 11.9?
7      A.   Yes.
8      Q.   Are there any other
9  provisions in the Plan that are not
10  specifically spelled out in Section 7.15
11  for which the insurers are bound
12  notwithstanding Section 7.15?
13         MS. HARDING:  Objection to
14     form, and I think it misstates his
15     testimony.
16         THE WITNESS:  I'm sorry.
17     Could you read back the question?
18         (The reporter reads the
19     pending question.)
20         MS. HARDING:  Object to
21     form.  I think it's confusing,
22     speculative.  I don't see how you
23     can possibly answer that question.
24     But if you can answer it, go ahead.

Page 80

1          It also calls for a legal
2          conclusion.
3          (The witness reviews the document.)
4      A.   Okay.  I would direct you
5  to Section 7.15(h) which states that "the
6  asbestos insurance entities shall be
7  subject to the releases and injunctions to
8  the extent described in this Plan" so my
9  answer to your question is that I believe
10  any provisions in the Plan that would
11  constitute a release or an injunction, and
12  I would include 11.9 in that language, are
13  binding on the asbestos insurance
14  entities.
15     Q.   So your testimony is that
16  7.15(h) includes through its language
17  Section 11.9?
18     A.   Yes, that is how I read
19  it.
20     Q.   What consideration, if any,
21  are Grace's insureds getting under the
22  Plan in exchange for the exculpation
23  provision in 11.9?
24         MR. LIESEMER:  Objection to

Page 81

1      form.
2          MS. HARDING:  Objection to
3      form.
4      A.   All right.  First, your
5  question assumes that the insurance
6  entities would be entitled to some
7  consideration in exchange for being bound
8  by Section 11.9.  I don't know that to be
9  the case.  I don't know that they're not
10  entitled to it either.
11         But as far as consideration, if one
12  had to justify being bound by Section 11.9
13  on the basis of consideration, I think the
14  answer with respect to asbestos insurance
15  entities would also apply to all parties
16  involved in the Chapter 11, which is that
17  the entities and individuals covered by
18  the exculpation have been active in the
19  business of these Chapter 11 cases, they
20  have had to take positions, make
21  arguments, make decisions, et cetera, that
22  affect one or more parties involved in the
23  Chapter 11 cases and have thereby exposed
24  themselves to potential liability, I

Page 82

1  suppose, for their acts or omissions. And
2  the Chapter 11 itself could not proceed to
3  the point of resolution without the
4  efforts of these entities and these
5  individuals. So to the extent -- so there
6  is a -- in order to encourage and
7  facilitate the activities of the parties
8  listed in Section 11.9, it is my
9  understanding that it is common in these
10 types of bankruptcies to provide
11 exculpation of those entities and
12 individuals for their activities, and I'm
13 quoting here from 11.9, "In connection
14 with or arising out of the Chapter 11
15 cases." It is their participation and the
16 fruits of their participation that would
17 constitute consideration.
18     Q.  I want to circle back to a
19 question that I asked a few questions ago
20 concerning 7.15 and I asked you a question
21 to the effect of other than what's
22 specifically set forth in Section 7.15 are
23 there any other provisions in the Plan or
1  Plan documents that are binding upon

Page 83

1  Grace's insurers, and in answer to that
2  question you referred me to subsection (h)
3  and how 11.9 in the debtor's view was
4  encompassed within the language of (h).
5      So I want to go back to that
6  question and ask: Other than 11.9, is
7  there anything else?
8      A.  I'm --
9          MS. HARDING:  Object to
10     form.  I think it's confusing
11     and I'll leave it at that.  If you
12     can answer, go ahead.
13     A.  I believe there is a more
14 general provision relating to the binding
15 nature of court orders, findings, et
16 cetera.  That is what I was looking for
17 initially in response to your answer and
18 then I remembered the provision in 7.15(h)
19 and so I've directed you to that
20 provision.  If you want me to spend the
21 time -- I do not know where in that Plan
22 that more general provision is that I have
23 in mind.
24     Q.  Well --

Page 84

1      A.  I could spend the time to
2  look for it if you'd like.
3      Q.  No, let's try this a little
4  differently.  Look at 7.15(a).
5      A.  Okay.
6      Q.  It says "Except to the
7  extent provided in this Section 7.15,
8  notwithstanding anything to the contrary
9  in the Confirmation Order, the Plan or any
10 of the Plan documents -- nothing in the
11 Confirmation Order, the Plan or the Plan
12 documents, including any other provision
13 that purports to be preemptory or
14 supervening, shall in any way operate to
15 or have the effect of impairing any
16 asbestos insurance entity's legal,
17 equitable or contractual rights, if any,
18 in any respect."  Have I read that
19 correctly?
20     A.  I believe so.
21     Q.  Okay.  And what I'm asking
22 is:  Given that broad statement, are there
23 any other provisions in the plan that are
24 not set forth in 7.15 that override the

Page 85

1  language in 7.15(a)?
2          MS. HARDING:  Object to
3      form.
4      A.  Based on the language of
5  7.15(a), and if I'm understanding it as it
6  was intended, it states by its terms that
7  nothing else in the Plan or any of the
8  Plan documents would operate, you know, to
9  impair the -- an asbestos insurance
10 entity's rights.
11     Q.  So is your answer no?
12         MS. HARDING:  Object, asked
13     and answered, but...
14     A.  Based on the language in
15 7.15(a), my answer would be no, subject
16 to -- subject to wanting to review the
17 remainder of the Plan because, as I
18 mentioned, I do have in mind that there is
19 one or more general provisions concerning
20 the applicability or binding nature of
21 court orders, court findings and the like.
22     And while I understand 7.15(a)
23 appears to act in such a way that would
24 make my proviso in my answer irrelevant, I

Page 86

1  would still feel more comfortable having
2  found and reviewed those other provisions
3  before giving an unequivocal "no".
4      Q.   Let's do this because we
5  don't want to waste time.  Why don't we --
6  I'm going to continue on.  We'll obviously
7  have breaks.  And during one of those
8  breaks, why don't you look for whatever
9  provision it is that you -- or provisions
10  that you think you're talking about and
11  then when we return from our break, even
12  if I'm not the questioner, would you bring
13  those one or two sections up to me?  That
14  will save us some time.
15      A.   That's fine.
16      Q.   All right.  I want to focus
17  your attention now on 7.15(b).
18      (The witness reviews the document.)
19      A.   Okay.
20      Q.   You see on the second line
21  there rolling over to the third line the
22  phrase "The beneficiaries of the Asbestos
23  PI Trust"?  Do you see that?
24      A.   Yes.

Page 87

1      Q.   What do you understand that
2  term to mean?
3          MR. LIESEMER:  Object to
4      the form.
5      Q.   What does that term mean?
6      A.   I understand it to mean
7  holders of asbestos PI claims.
8      Q.   Okay.  And does that
9  include holders of indirect Asbestos PI
10  Trust claims?
11          MR. LIESEMER:  Object to
12      form.
13      A.   Yes.
14      Q.   And does it include
15  indemnified insurer -- does it -- excuse
16  me.
17      Does that term include the holders
18  of indemnified insurer TDP claims?
19          MR. LIESEMER:  Object to
20      the form.
21      A.   Is that a defined term?
22      Q.   Good question.  It is a
23  term that appears in Section 5.13 of the
24  Trust Distribution Procedures.  I don't

Page 88

1  know that it is, per se, defined.
2          MS. HARDING:  Where is it
3      in the TDP?
4          MR. BROWN:  It's in Section
5      5.13.
6          MR. COHN:  Is that on page
7      49 of the TDP?
8          MR. BROWN:  I don't know
9      the page number.
10          THE WITNESS:  Page 49,
11      yes.
12      A.   Based on Section 5.13 of
13  the TDP and on the basis that a holder of
14  an indemnified insured TDP claim
15  potentially may have that claim paid by
16  the PI Trust in accordance with Section
17  5.13, I would interpret such a holder to
18  be a beneficiary of the PI Trust.
19      Q.   Okay.  So let's just take
20  one of my clients, for example.  Let's
21  take Seaton Insurance Company.  If Seaton
22  Insurance Company has an indemnified
23  insured TDP claim, then Seaton Insurance
24  Company, as I understand 7.15(b), is bound

Page 89

1  by the Plan, the Plan documents and the
2  confirmation order?
3          MR. LIESEMER:  Object to
4      the form.
5          MS. HARDING:  Object to the
6      form.
7      Q.   Do I have that correct?
8      A.   I believe so, yes.
9      Q.   Okay.  And is it bound by
10  the Plan, Plan documents and confirmation
11  order insofar as it may also be listed as
12  being a partially settled insurer?
13          MS. HARDING:  Object to the
14      form.  And are you referring to
15      7.15(b)?
16          MR. BROWN:  Yes.
17          MS. HARDING:  Back to
18      7.15(b) when you asked that
19      question?
20          MR. BROWN:  Yes.
21      A.   I'm not sure I see the
22  connection between Section 5.13 of the TDP
23  and your question, if there is any.
24  The -- I believe the answer is they are

Page 90

1  bound to the same extent any asbestos
2  insurance entity is bound under the
3  Plan.
4      Q.   Mr. Finke, you understand,
5  don't you, that -- well, let's not do it
6  that way.  Let's go to -- I think it's the
7  asbestos insurance transfer agreement.
8          MS. HARDING: Is that one
9      of our exhibits?
10         MR. BROWN:  No, I'm sorry,
11     it's not that.  It's Exhibit 5.
12     Q.   Do you have Exhibit 5?
13     A.   Retained causes of action?
14     Q.   No.  This is Exhibit 5 to
15  the Exhibit Book.
16     A.   To the Exhibit Book.
17         MS. HARDING: I have a
18     copy.  It's not his but you can
19     look at it if you'd like.
20         MR. COHN:  What is the
21     document?
22         MS. BAER:  It's Exhibit 5
23     to the Exhibit Book, Schedule of
24     Settled Asbestos Insurers.

Page 91

1          (Exhibit 5 to Exhibit Book,
2      Schedule of Settled Asbestos
3      Insurers Entitled to 524(g)
4      Protection marked for
5      identification as Exhibit
6      Finke-9.)
7      Q.   What I'd like you, Mr.
8  Finke -- first of all, why don't you
9  identify what we've just marked as Exhibit
10  9?
11     A.   Okay.  Finke Exhibit 9 is
12  Exhibit 5 to the Exhibit Book.  It is
13  entitled Schedule of Settled Asbestos
14  Insurers Entitled to 524(g) Protection.
15     Q.   Now, you understand, don't
16  you, that at least some of the insurance
17  companies that are listed on this schedule
18  have indemnity claims against the
19  debtors?
20         MR. LIESEMER:  Object to
21     the form of the question.
22     A.   Yes, I believe that's
23  correct.
24     Q.   And to the extent that

Page 92

1  there are indemnity claims against the
2  debtor and to the extent that those are
3  asbestos-related, those fit within the
4  defined term "indemnified insured TDP
5  claims", correct?
6          MS. HARDING:  Object to
7      form.
8          MR. LIESEMER:  Join.
9          MS. HARDING:  Are you
10     looking for 7.15?
11         MS. ALCABES:  5.13.
12         MS. HARDING:  There you go.
13     A.   No, I don't agree.
14         MR. BROWN:  Could you read
15     back the last question?
16         (The reporter reads the
17     requested portion.)
18     A.   No, I don't agree.  My
19  understanding of Section 5.13 is this
20  provision would take effect only upon
21  confirmation of the Plan since the
22  definition indicates, or requires, that
23  the indemnified insuror TDP claim is
24  channeled to the PI Trust, which it can't

Page 93

1  be at this point.
2      Q.   All these questions are in
3  the context of the Plan being confirmed.
4      A.   Well, then I don't --
5      Q.   Let me back up.  I think
6  the record's kind of muddled at this
7  point.
8      A.   Okay.
9      Q.   Why don't you -- if you
10  look at the schedule of settled asbestos
11  insurance companies, I believe you'd
12  testified -- that's Exhibit 9 -- I believe
13  you'd testified that some of the companies
14  that are listed on there have contractual
15  indemnity claims against the debtors.
16     A.   That was under the
17  assumption we were talking about current
18  claims.  I didn't realize you had -- that
19  your questions were all in the context of
20  the assumption of a confirmed plan.
21     Q.   All right.  If you look at
22  the schedule, you understand that the
23  insureds that are listed on here have
24  settlement agreements with the debtors,

Page 94

```
 1   correct?
 2       A.   Yes.
 3       Q.   And you also understand
 4   that certain of those settlement
 5   agreements have contractual indemnity
 6   provisions in them, correct?
 7       A.   Yes.
 8       Q.   And I believe you testified
 9   that those contractual indemnity
10   provisions are under the Plan to be
11   treated as indemnified insured TDP claims
12   under Section 5.13 of the TDP.  Is that
13   correct?
14       A.   No, no, that certainly
15   wasn't my intent.
16       Q.   Okay.  How are they being
17   treated under the Plan?
18       A.   As indirect PI Trust
19   claims.
20       Q.   Okay.  Do you understand
21   indemnified insured TDP claims to be a
22   class of indirect PI Trust claims?
23       A.   It appears to me to be
24   that, that they are the same.  Or at least
```

Page 95

```
 1   I don't see a distinction.  Whether they
 2   are intended to be or not, I don't know.
 3   Since we really were not involved in the
 4   drafting of the TDP, my --
 5       Q.   The "we" you're referring
 6   to is Grace?
 7       A.   Grace, yes.  My bigger
 8   problem is that once the plan is confirmed
 9   I don't understand -- have not understood
10   and don't today how there can be such a
11   claim under 5.13 since my understanding of
12   the mechanics of the asbestos PI
13   channeling injunction is that any claim
14   against a settled insurer which is an
15   asbestos protected party would be barred
16   and that claim would be channeled to the
17   PI Trust and that that holder of that PI
18   claim, the sole resolution -- not
19   resolution -- the sole source for any
20   recovery for the holder of that claim is
21   the PI Trust.
22       So I have not understood, and still
23   don't, how any indemnified insurer TDP
24   claim could arise.
```

Page 96

```
 1       Q.   Let's get back to the
 2   insurance neutrality provision then, which
 3   is 7.15.
 4       A.   Okay.
 5       Q.   Getting back to 7.15(b),
 6   this line of questioning talked with or
 7   started with the reference to the term,
 8   the phrase, "the beneficiaries of the
 9   Asbestos PI Trust".
10       A.   Uh-huh.
11       Q.   I'm a little confused by
12   your testimony at this point.  If you are
13   the holder of an indemnified insurer TDP
14   claim post-confirmation, are you a
15   beneficiary of the Asbestos PI Trust?
16       MR. LIESEMER:  Object to
17   the form of the question.
18       MS. HARDING:  Object to
19   form.
20       A.   Assuming for the sake of
21   argument such a claim could arise, my
22   understanding would be yes.
23       MR. BROWN:  All right.  I'm
24   going to shift gears.  We'll mark
```

Page 97

```
 1   another document.  The document I'm
 2   about to mark is one of our
 3   settlement agreements so we can
 4   mark this portion of the deposition
 5   subject to the protective order but
 6   what I would like to do with this
 7   one, like we did with Mr. Posner,
 8   to the extent that no one objects
 9   to the extent that we, my clients,
10   would like to use this portion of
11   the testimony without having it
12   under seal, we would be able to do
13   so without asking all parties to
14   agree.  Is that fair?
15       MS. HARDING:  That's up to
16   you.
17       MR. BROWN:  All right.
18       MR. LEWIS:  Did you say
19   Mr. Posner?
20       MR. BROWN:  Yes.
21       MR. LEWIS:  Okay.
22       (Settlement Agreement
23   Bates stamped OB 1 through 33
24   marked for identification as
```

Page 98

1    Exhibit Finke-10.)
2        MS. HARDING: And as I
3    understand it, all parties are -- I
4    think all parties in this room have
5    agreed to the protective order.
6        MR. BROWN: I don't know.
7    Is Mr. Speights on the line?
8        Mr. Speights?
9        MS. BAER: We can put on
10   the record that Mr. Speights never
11   objected to the provisions of the
12   protective order.
13       MR. BROWN: Okay.
14   **Q.   Mr. Finke, you have before**
15   **you a document which has been marked**
16   **Finke-10 and I'd like you to take a few**
17   **moments to review it and then tell me**
18   **whether you have ever seen the document**
19   **before.**
20       A.   No, I have not.
21   **Q.   Okay.  Can you turn to**
22   **pages 30 and 31?**
23       MR. LIESEMER: Are you
1    referring to the Bates numbering?

Page 99

1        MR. BROWN: Actually, it's
2    the same on these, on this
3    particular document, but OB 30 and
4    31.
5    **Q.   Do you recognize any of the**
6    **signatures that appear on either of those**
7    **pages?**
8        MS. HARDING: You mean the
9    names of the people that have
10   signed or the actual signatures?
11       MR. BROWN: The latter.
12       A.   The signature of Robert H.
13   Beber appears to be his signature, not --
14   I can't say that conclusively, but --
15   **Q.   Do you recognize --**
16       A.   -- it looks familiar.
17   **Q.   Do you recognize the**
18   **signature of Mr. Posner?**
19       A.   I don't.
20   **Q.   Who are the parties to the**
21   **agreement?**
22       MS. HARDING: Object to
23   form and object to the extent that
24   he's testified that he's never seen

Page 100

1    the document before.
2        A.   Based on the --
3        MS. HARDING: To the extent
4    that you know.
5        THE WITNESS: Sorry.
6        A.   Based on the signature
7    page, the parties are W.R. Grace & Co.,
8    W.R. Grace & Co.-Conn., Commercial Union
9    Insurance Company as successor in interest
10   to Employers Commercial Union Insurance
11   Company of America and Employers
12   Commercial Union Insurance Company and
13   American Employers Insurance Company.
14   **Q.   Okay.  And would you agree**
15   **with me that the parties that executed**
16   **this document appear, at least from what**
17   **is on the document, to have signed it in**
18   **or around May of 1993?**
19       A.   Yes.
20   **Q.   Okay.  If you look at the**
21   **signature block for Mr. Beber, he's**
22   **indicated as having signed this document**
23   **on behalf of W.R. Grace & Co.  Do you see**
24   **that?**

Page 101

1        MS. HARDING: Which?
2        A.   Yes.
3        MS. HARDING: Wait a
4    minute.  What page?  30 or 31?
5        MR. BROWN: OB 30.
6        MS. HARDING: Right, I just
7    wanted to make it clear that he
8    appears to be in two different
9    places.
10       MR. BROWN: I'm focused on
11   the first signature on OB 30.
12       MS. HARDING: Page 30, all
13   right.
14   **Q.   The company that was called**
15   **W.R. Grace & Company in May of 1993 has a**
16   **different name today, doesn't it?**
17       A.   I believe that's correct.
18   **Q.   Okay.  And the name is**
19   **Fresenius Medical Care Holdings, Inc., is**
20   **it not?**
21       A.   I don't know the answer off
22   the top of my head.
23   **Q.   Okay.  Let me direct you to**
24   **a few things in the Plan.  I'd like you to**