IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF)<br>Jointly Administered |
| Debtors. | Related to Docket No. 20872<br>Hrg. Date: September 8-11, 2009<br>Objection Deadline: May 20, 2009 |

OBJECTION OF THE EDWARDS JUDGMENT CLAIMANTS TO THE FIRST AMENDED JOINT
PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W.R.
GRACE & CO. ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY
CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE
OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS DATED FEBRUARY 27, 2009

Aaron C. Edwards, James T. Beam, Edward E. Storey, John M. Thomas, and

Sheila Martin[1] (collectively, the "Edwards Judgment Claimants")[2] hereby file their

Objection to the First Amended Joint Plan of Reorganization Under Chapter 11 of

the Bankruptcy Code of W.R. Grace & Co. et al., the Official Committee of Asbestos

Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and

the Official Committee of Equity Security Holders Dated February 27, 2009 (Docket

No. 20872) (the "Joint Plan"). The Edwards Judgment Claimants would

respectfully show the Court as follows:

---

[1] Individually and as Administratrix of the Estate of Jessie J. Williamson,
Deceased, and as Representative of the Wrongful Death Beneficiaries.

[2] The Edwards Judgment Claimants are represented by the law firm of Reaud
Morgan & Quinn, Inc. and hold judgment claims against W.R. Grace ("Grace" or
"Debtor"). The Edwards Judgment Claimants were awarded damages against W.R.
Grace in the matter of *Aaron C. Edwards, et al. vs. Pittsburgh Corning, et al.*,
Cause No. B-150.896-J in the 60th District Court of Jefferson County, Texas.

I    FACTUAL BACKGROUND

On the 28th day of March, 2000, the 60th District Court of Jefferson County, Texas, entered a judgment against W.R. Grace & Co. ("Grace") and Pittsburgh Corning in favor of the Edwards Judgment Claimants.[3] The Edwards Judgment awarded compensatory and punitive damages against Grace in the amount of $38.427,617.78.[4] Post-judgment interest accrues on the Edwards Judgment at the rate of 12% per annum until paid.

Grace appealed and on June 30. 2000 posted a supersedeas bond in the amount of $43,038,931.91 (the "Bond").[5] The Bond covers the entire judgment amount plus one year's post-judgment interest, and was guaranteed by Fireman's Fund Insurance Company as Surety. The Bond specified that the Surety was to pay the plaintiffs if "Grace does not perfect an appeal or the appeal is dismissed, and Grace does not perform the trail [sic] court's Judgment." Bond, at page 2.

Grace filed its petition for Chapter 11 relief on April 2, 2001. As of the petition date. the appeal of the Edwards Judgment was still pending. As a result of the automatic stay. Grace has not performed the trial court's judgment.

---

[3] A true and correct copy of this Judgment is attached hereto as Exhibit A.

[4] Compensatory damages were in the aggregate amount of $16.927.617.78. for which Grace and Pittsburgh Corning were jointly and severally liable, and punitive damages against Grace alone in the aggregate amount of $21,500.000.    An additional sum was awarded to the Edwards Judgment Claimants for punitive damages for which Pittsburgh Corning was solely liable.

[5] A true and correct copy of the Bond is attached hereto as Exhibit B.

On February 27, 2009 Grace filed the Plan and Disclosure Statement. While
making no specific reference to the Edwards Judgment, the Trust Distribution
Procedures ("TDP"), submitted therewith, contain provisions dealing with judgment
(and other pre-petition liquidated) claims. *See* TDP at 5.2 (the language is provided
in § II.1, *infra*).

## II    ANALYSIS

1    **The provision of the TDP detailing the treatment of Pre-Petition Liquidated
Claims is unnecessarily confusing, internally inconsistent, and ambiguous as
to the proposed treatment of the Edwards Judgment Claims. Without
amendment, the TDP may have the (perhaps unintended) consequence of
excluding the Edwards Judgment Claims from the definition of Liquidated
Claims.**

Under the Plan, the claims of all asbestos claimants are to be processed
under the TDP and § 5.2 governs the processing and payment of those claims
liquidated by settlement or judgment pre-petition. A review of § 5.2, however,
reveals language that is ambiguous and internally inconsistent, and which leaves
the Edwards Judgment Claimants in significant doubt as to how liquidated
judgment claims secured by supersedeas bonds will be treated. Indeed, on a literal
reading, the TDP contains language which leaves doubtful whether the Edwards
Judgment Claims will be even be considered to be Pre-Petition Liquidated Claims,
despite their obvious status as claims liquidated by judgment pre-petition. It is
entirely possible that this potential result is the unintended consequence of the
addition of extraneous language to the TDP concerning the treatment of liquidated
claims secured by supersedeas bond. A supersedeas bond is a species of "appeal
bond" posted by a party to litigation appealing an adverse judgment to provide a

security or surety pending the prosecution of the appeal.  Black's Law Dictionary

defines an appeal bond as

> a bond that an appellate court may require from an appellant in a civil
> case to ensure payment of the costs of appeal; a bond required as a
> condition to bringing an appeal or staying execution of the judgment
> appealed from ... Cf. *supersedeas bond.*

Black's Law Dictionary at 187.  Black's goes on to define a supersedeas bond as "an

appellant's bond to stay execution of a judgment during the pendency of an appeal

... Cf. *appeal bond.*"  *Id.* at 189.

The TDP contains the following provision pertaining to the processing and

payment of Pre-Petition Liquidated Claims:

> As soon as practicable after the Effective Date, the PI Trust shall pay,
> upon submission by the claimant of the appropriate documentation, all
> PI Trust Claims that were liquidated by (i) a binding settlement
> agreement for the particular claim entered into prior to the Petition
> Date that is judicially enforceable by the claimant, (ii) *a jury verdict or*
> *non-final judgment in the tort system obtained prior to the Petition*
> *Date, provided there is no supersedeas bond associated with such*
> *verdict or judgment.* or (iii) by a judgment that became final and non-
> appealable prior to the Petition Date (collectively "Pre-Petition
> Liquidated Claims").

TDP at § 5.2(a) (emphasis added).  The italicized portion. at first blush, seems to

exclude the Edwards Judgment Claims from the definition of Pre-Petition

Liquidated Claims on the ground that they are secured by a supersedeas bond.

The addition of this qualification is puzzling.  There seems no reason why a

claim liquidated by judgment should lose its status as a Pre-Petition Liquidated

Claim on the grounds that, as a condition of prosecuting an appeal, an appellant

has been required to post security to ensure that the judgment would be satisfied in

the event that the appeal fails or is not prosecuted to conclusion.  There is nothing

about the posting of a bond that operates to *unliquidate* the claim – requiring a
bond is intended to allow a defendant to suspend execution of judgment pending the
pursuit of an appeal. Indeed, the posting of a bond in the amount of a judgment is
yet more evidence of the liquidated value of the claim. Unless such an appeal is
pursued successfully, the judgment stands, and the supersedeas bond operates as
security for the payment of the judgment in full.

Adding to the confusion over the inclusion of the supersedeas bond clause is
the fact that the Grace TDP is not internally consistent on the effect of bonds posted
to secure judgments pending appeal. The next section of the TDP, § 5.2(b), deals
with the marshalling of security, and states:

> Holders of Pre-Petition Liquidated Claims that are secured by letters
> of credit, *appeal bonds*, or other such security of sureties shall first
> exhaust their rights against any applicable security or surety before
> making a claim against the PI Trust. Only in the event that such
> security or surety is insufficient to pay the Pre-Petition Liquidated
> Claim in full shall the deficiency be processed and paid as a Pre-
> Petition Liquidated Claim

TDP at § 5.2(a) (emphasis added). This straightforward provision requires those
holding Pre-Petition Liquidated Claims, including judgment claims, to look first to
any "appeal bonds" securing the judgment before bringing the deficiency to the PI
Trust. A supersedeas bond is just such an "appeal bond." As a result, one provision
of the TDP includes within the definition of a Pre-Petition Liquidated Claim "a jury
verdict or non-final judgment in the tort system obtained prior to the Petition Date"
but expressly excludes from such definition those judgments secured by one type of
appeal bond, a supersedeas bond. The immediately adjacent provision of the TDP
requires those holders of Pre-Petition Liquidated Claims secured by an appeal bond

to look to the bond first for payment before looking to the PI Trust for any deficiency. This juxtaposition is confusing and ambiguous. If the Plan Proponents had actually intended § 5.2(a) to mean that claims secured by an appeal bond were not to be considered as Pre-Petition Liquidated Claims, then the inclusion of the § 5.2(b)'s requirement that a liquidated claimant first look to an appeal bond for recovery would be redundant. Perhaps the Plan Proponents were intending, by the addition of the supersedeas bond language to § 5.2(a), to ensure that claimants holding bonded judgment claims look first to the security for recovery and assert only claims for any deficiency to the Trust. If that is the case, then the language complicates rather than clarifies the issue and should be removed, to avoid any unintended consequence of the addition of the clause in § 5.2(a) dealing with supersedeas bonds.

The ambiguity in § 5.2 makes a definitive determination of whether the Edwards Judgment Claims would be treated as Pre-Petition Liquidated Claims under the TDP extremely difficult. The Edwards Judgment Claims are certainly not "unliquidated" and cannot properly fit under § 5.3 of the TDP dealing with the resolution of Unliquidated PI Trust Claims, designed to determine a value for, process, and pay those claims that were not liquidated pre-petition. Such uncertainty hampers the Edwards Judgment Claimants from determining how they will be treated under the TDP. It is probable that the Plan Proponents did not intend this uncertainty, which can be readily clarified by the removal of the "provided there is no supersedeas bond associated with such verdict or judgment"

clause from § 5.2(a). Only once the internal inconsistencies in the TDP are resolved,
and the position of judgment claims secured by a supersedeas bond clarified by the
removal of the extraneous language, may the Edwards Judgment Claimants have
confidence in the fair treatment of their claims under the TDP.[6]

2      **The TDP contains language imported virtually wholesale from other
bankruptcy cases, none of which include the exclusion of supersedeas bonded
claims from the definition of Pre-Petition Liquidated Claims.**

Section 5.2 of Grace's Plan is imported substantially intact from language
which routinely appears in TDPs developed in other cases. Indeed, § 5.2(b), dealing
with the marshalling of security, is absolutely identical in five other cases confirmed
or pending before this Court. The exact same language appears, unchanged, in
*Pittsburgh Corning* (Western Pennsylvania Case No. 00-22876), *Armstrong World
Industries* (Delaware Case No 00-4471), *Federal Mogul* (Delaware Case No. 01-
10578). *Owens Corning* (00-03837) and *USG Corporation* (Delaware Case No. 01-
2094).[7] Moreover, in the same five cases the language in § 5.2(a), concerning the
processing and payment of Pre-Petition Liquidated Claims is extremely similar. In
*Pittsburgh Corning*. TDP § 5.2(a) provides, in relevant part

> As soon as practicable after the Effective Date, the Asbestos PI Trust
> shall pay from the relevant Asbestos PI Trust Fund or out of any
> available insurance proceeds, upon submission by the claimant of the
> applicable Asbestos PI Trust proof of claim form, together with all
> documentation required thereunder, all Asbestos PI Trust Claims that
> were liquidated by (i) a binding settlement agreement for the

[6] Exhibit C contains a blackline of the changes to the TDP required to remedy the
erroneous language and render the Plan confirmable.

[7] As noted, the other cases use precisely the same language and, for the sake of
brevity, will not be reproduced herein.

particular claim entered into prior to the Petition Date that is judicially enforceable by the claimant, (ii) a jury verdict or non-final judgment in the tort system obtained prior to the Petition Date, or (iii) by a judgment that became final and non-appealable prior to the Petition Date (collectively "Pre-Petition Liquidated Claims")

*Pittsburgh Corning* TDP at § 5.2(a). The only difference between this language and the language in the TDP is the absence, in the *Pittsburgh Corning* TDP of the clause relating to supersedeas bonds ("provided there is no supersedeas bond associated with such verdict or judgment") and the presence, in the TDP. of an additional subset of Pre-Petition Liquidated Claims that potentially broadens the number of claims that will qualify as Pre-Petition Liquidated Claims ("liquidated ... (iv) as a result of being allowed by the Bankruptcy Court"). The TDPs in the other four cases are equally similar to the TDP in this case.

The language in the TDP was clearly drawn from language commonly used in TDPs already utilized in other cases. One of the two subsections of § 5.2 of the Grace Plan is identical to that used in other cases and the other is substantially similar, the difference being the addition of the language that might be perceived to call the liquidated status of claims secured by a supersedeas bond into question. The other five TDPs are internally consistent, and classify. correctly, a bonded judgment claim as a liquidated claim while requiring claimants to marshal any securities guaranteeing their recovery before seeking payment of the deficiency (if any) from the 524(g) Trust.[8] The other five TDPs do not present the problem posed

---

[8] Indeed, the language in the Pittsburgh Corning TDP will govern the same judgment and supersedeas bond at issue here, as the Edwards Judgment was entered partially in respect of claims against Grace and partially in respect of claims against Pittsburgh Corning. It would be a matter of supreme irony if the

by the extraneous language in the TDP in this case, and its inclusion here

unnecessarily confuses and complicates tried and tested language that has been

proven to be effective in categorizing and processing liquidated claims. This Court

should decline to approve this addition to the usual TDP language and insist upon

its removal before the Plan may be confirmed. The usual TDP language has the

benefit of clarity and precision. and should be implemented here.

3    If the intent of the Plan Proponents is to treat the Edwards Judgment claims
     as unliquidated claims under the TDP, this constitutes unfair and
     impermissible discrimination and a groundless stripping of the Edwards
     Judgment Claimants' security interest. The language must be removed from
     the TDP for the Plan to be confirmable.

     Claims that have been resolved by a judgment or jury verdict are properly

considered liquidated claims. They are clearly not unliquidated – a legal process

has resulted in a valuation of the claims sufficient for payment purposes.[9]  Such an

approach is routinely taken in other cases, as evidenced by the five prior TDPs

discussed in the immediately preceding section. It is entirely likely that the

extraneous language in the TDP was added without the intent to call the liquidated

status of claims like the Edwards Judgment Claims into question. Yet the

---

Plan Proponents' modified version of the Pittsburgh Corning TDP language resulted
in wholly disparate treatment of claims arising out of the same judgment and
secured by the same supersedeas bond in two different cases.

[9] Indeed. the TDP provides, in the section outlining the goals of the trust, that "the
goal of the PI Trust is to treat all claimants equitably" and that the TDP advances
this goal by paying claimants "as equivalent a share as possible of the value of their
claims based on historical values for substantially similar claims in the tort
system." TDP § 2.1. Such valuation of claims is not required when it comes to the
Edwards Judgment Claims, as they were actually valued in the tort system pre-
petition.

consequence (intended or not) of the added language is to render that liquidated status uncertain.

In the event that the removal of claims like those held by the Edwards Judgment Claimants is actually intended by the Plan Proponents, this Court's path is clear. A Plan that provides for payment of claims according to a TDP that classifies liquidated claims as unliquidated by simple virtue of those claims secured status may not be confirmed.[10] Under the TDP as drafted a claim that has been liquidated by "a jury verdict or non-final judgment in the tort system obtained prior to the Petition Date" is considered to be an unliquidated claim if "there is no supersedeas bond associated with such verdict or judgment." § 5.2(a). This distinction, added by the Plan Proponents to language commonly used in TDPs,

---

[10] Section 1129(a)(1) provides that a plan may only be confirmed it if complies "with the applicable provisions of the [Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). Section 1129(a)(1) has been interpreted to require the court to find that the plan complies with the requirements for classification of claims and the contents of a plan outlined in Sections 1122 and 1123(a), respectively. *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) (noting that the legislative history of Section 1129(a)(1) indicates that the section was meant to embody the requirements of Sections 1122 and 1123 of the Bankruptcy Code); *see also Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2d Cir. 1988). Section 1123(a)(4) requires the plan to provide the same treatment to all claims or interests that are classified together, unless a holder of a claim or interest agrees to accept different treatment for its claim. If a plan excludes a liquidated claim that is secured by a supersedeas bond from the definition of a Pre-Petition Liquidated Claim by virtue of the existence of the security, then this violates § 1123(a)(4)'s requirement of equal treatment and, by virtue of § 1129(a)(1), the plan may not be confirmed. Additionally, a plan of reorganization that incorporates a § 524(g) injunction must satisfy the principle of equality of distribution amongst creditors by treating like claims alike. *In re Combustion Engineering*, 391 F.3d 190, 239 (3d Cir. 2004) ("The Bankruptcy Code furthers the policy of "equality of distribution among creditors by requiring that a plan of reorganization provide similar treatment to similarly situation claims.")

makes no sense. If anything, a claim liquidated by jury verdict or judgment that is secured by a supersedeas bond has more right to be treated as liquidated, as the claim's value is secured by a bond specifically provided to secure the costs of the judgment if the appellant fails to overturn the judgment on appeal. The Plan Proponents may not strip the Edwards Judgment Claimants of their security interest and may certainly not use the very existence of that security to treat them in a manner less favorably than unsecured judgment claimants.[11]

It is difficult to imagine that the language added to TDP § 5.2(a) over and above the customary language dealing with liquidated claims is intended to remove the Edwards Judgment Claims from the classification of Pre-Petition Liquidated Claims. Such an intent would have no basis in best practice, reason or logic, and would have the unfortunate effect of rendering the value of claims liquidated pre-petition uncertain as a consequence of the posting of an appeal bond, a mechanism designed to protect the prevailing party at trial. It would also render a portion of §

---

[11] It is doubtful that this Court has jurisdiction to deprive the Edwards Judgment Claimants of the benefit of the security provided in the form of the supersedeas bond. As the bond was executed by Fireman's Fund Insurance Company as Surety and constitutes a continuing obligation to pay to the Edwards Judgment Claimants a sum equal to the judgment amount, plus interest, in the event that Grace does not perfect an appeal or the appeal is dismissed and Grace does not perform the judgment or Grace does not perform an adverse judgment final on appeal. See Bond (Exhibit 2 hereto) at 2-3 ("the Surety on this bond is bound to pay all damages and costs that may be awarded to Grace up to the amount of this bond if: (1) Grace does not perfect an appeal or the appeal is dismissed, and Grace does not perform the trail [sic] court's Judgment signed March 28, 2000; or (2) Grace does not perform an adverse judgment final on appeal"). As an obligation of a third party non-debtor (Fireman's Fund) to a another third party non-debtor (the Edwards Judgment Claimants). that does not constitute property of the estate, this court lacks the subject matter jurisdiction necessary to extinguish the security provided by the supersedeas bond. See, e.g. *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984).

5.2(b) dealing with marshalling of securities redundant.  In the unlikely event that the Plan Proponents intended to cause this result, this Court should deny confirmation in the face of such a provision on the grounds that it impermissibly and unfairly treats such claims less favorably than other claims held by judgment creditors without valid reason or cause.  The Plan Proponents should not be permitted to deny the Edwards Judgment Claimants the benefit of their hard-fought trial judgment and should honor the value determined in the tort system when channeling the claim to the 524(g) trust for payment post-confirmation.  Any diminution in the rights of the Edwards Judgment Claimants would render the plan unconfirmable and must be stricken from the TDP.

## III    CONCLUSION AND PRAYER FOR RELIEF

The Edwards Judgment Claimants prevailed at trial against the Debtor and received a judgment that provides an actual, tort system valuation of the claims they hold against the Debtor.  In order to pursue an appeal of that judgment. the Debtor posted a supersedeas bond to suspend execution of the judgment and secure payment of it in the event the Debtor did not prevail on appeal.  The Debtor has not prevailed on appeal, and the judgment still stands.  Under the language commonly used in TDPs, the Edwards Judgment Claims would be treated as Pre-Petition Liquidated Claims.  The judgment would provide a liquidated value for the claims, the Edwards Judgment Claimants would be required to marshal their security under TDP § 5.2(b) and would then file a claim against the 524(g) trust for any deficiency claim.

Due to the addition of language to the TDP not found in other TDPs approved by or pending before this Court, the status of the liquidated Edwards Judgment Claims as Pre-Petition Liquidated Claims is called into question. It is entirely likely that the ambiguity and uncertainty over the classification of the claims is an unintended consequence of the addition of such language to the TDP. in which case the Plan Proponents should remove the language from the TDP. If the Plan Proponents actually intend to treat the Edwards Judgment Claims as anything other than Pre-Petition Liquidated Claims. then they have no rational basis for seeking to deprive the Edwards Judgment Claimants of the benefit of their pre-petition judgment and the security obtained thereto. Intentional or not, the effects potentially arising from language added to § 5.2(a) falls foul of 11 U.S.C. § 1129(a)(1) and this Court should deny confirmation in the absence of an amendment to remove the offending language. Such a drastic step is. fortunately. unnecessary, as the concerns of the Edwards Judgment Claimants can be readily rectified by the removal of the words "provided there is no supersedeas bond associated with such verdict or judgment" from § 5.2(a).[12] Such as step would bring the TDP in line with those used in other cases before this Court. and remove any ambiguity that might be caused by the modification of the customary language.

WHEREFORE, for the foregoing reasons, the Edwards Judgment Claimants respectfully urge this Court to enter an order denying confirmation of the Plan on the grounds that the TDP fails to unambiguously classify the Edwards Judgment

---

[12] *See* Exhibit C for a blackline of the TDP revised to reflect the modifications necessary to remedy the flaw identified by the Edwards Judgment Claimants.

Claims as Pre-Petition Liquidated Claims, and granting such other relief to which

the Edwards Judgment Claimants are justly entitled.

Dated: May 20, 2009

/s/ Kathleen M. Miller
Kathleen M. Miller (ID no. 2898)
SMITH, KATZENSTEIN &
FURLOW, LLP
800 Delaware Avenue, 10th Floor
Wilmington, Delaware 19899
Telephone: (302) 652-8400
Facsimile: (302) 654-8405
E-mail: KMM@skfdelaware.com

Sander L. Esserman
David J. Parsons
STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201

COUNSEL FOR
THE EDWARDS JUDGMENT CLAIMANTS