IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. Grace & Co., *et al.*, | : | Case No. 01-1139 (JKF) |
| | : | |
| Debtors. | : | Jointly Administered |
| | | Objection Deadline: May 20, 2009 |
| | | Related Dkt. No. 20872 |

### OBJECTION OF GENERAL INSURANCE COMPANY OF AMERICA TO W.R. GRACE & CO. FIRST AMENDED JOINT PLAN OF REORGANIZATION AND JOINDER IN OBJECTIONS BY OTHER INSURERS

In accordance with the Third Amended Case Management Order entered by the Court on May 5, 2009, General Insurance Company of America ("General Insurance") submits these objections to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders (the "Plan").

### PRELIMINARY STATEMENT

General Insurance entered into a Settlement Agreement and Mutual Release (the "Settlement Agreement") with W.R. Grace & Co.-Conn. ("Grace"), effective March 3, 1994. The Settlement Agreement dealt with primary policies issued (or allegedly issued) by General Insurance to Vermiculite-Northwest, Inc. ("VNW") for the period from June 1, 1961 through June 1, 1967.

VNW was an entity engaged in the business of manufacturing and distribution of materials capable of use in construction work. It was a licensee of Zonolite Company ("Zonolite"), with rights to manufacture, sell and distribute certain products in all or part of a five-state area in the Northwestern United States. Grace acquired Zonolite in 1963 and became

00000631.

VNW's sole shareholder in 1966. General Insurance is not alleged to have ever insured any of the Debtors' operations in Libby, Montana or any of the Debtors' businesses other than VNW.

The Settlement Agreement settled all disputes and issues between General Insurance and Grace as to all "Asbestos-Related Claims" against VNW, which are broadly defined in the Agreement to include all "Asbestos-Related Bodily Injury Claims" and all "Asbestos-Related Property Damage Claims" -- "regardless of the cause of action or theory of recovery employed by the Person asserting such claims." (Agreement at 5-6.) The Agreement could not be clearer on this point.[1] It contains a recital that Grace and General Insurance have entered into the Agreement to resolve "among other things, coverage for Asbestos-Related Claims and Products Claims...." (Agreement at 4-5.) It contains a representation, warranty and covenant that:

> "Grace agrees that no further Asbestos-Related Claims or Products
> Claims will be presented or tendered by Grace to General under
> the Primary Policies for any reason or purpose regardless of the
> theory of coverage." (Agreement at 18.)

And the Agreement incorporates the definition of "Asbestos-Related Claims" into its definition of "Product Claims" (Agreement at 6), thus confirming the breadth of the Agreement and the release set forth therein, which encompasses "Products Claims" -- defined to include all "Asbestos-Related Claims." (Agreement at 9-10.)

For nearly 15 years since the effective date of the Settlement Agreement, Grace never pursued coverage from General Insurance for asbestos-related claims. Grace's initial Disclosure Statement filed in November 2004 [Dkt. No. 6896] states in Section 2.7.2.2. that "[w]ith one exception, coverage disputes regarding the Grace and Zonolite primary policies have been settled, and the settlement amounts paid in full." The only unsettled coverage noted is a carrier not in any way related to General Insurance. No mention is made of General Insurance. The text

---

[1] The confidentiality provision of the General Insurance Settlement Agreement permits disclosure of its contents when necessary to prove exhaustion of the policies. (Agreement at 19.)

of the Amended Disclosure Statement filed in January 2005 [Dkt. No. 7559] is the same on this subject, and to make the point even clearer, Exhibit 10 to the Amended Disclosure Statement, entitled "Primary & Excess Insurance Policies That Were or Are Applicable to Asbestos-Related Claims," lists the General Insurance policies and describes them as "Resolved."

Indeed, neither the description of insurance coverage at Section 2.10.2.2 of the present Disclosure Statement approved in February 2009 [Dkt. No. 20667], nor any coverage description in any prior iteration thereof, makes any reference to unresolved General Insurance coverage. Instead, the Court-approved Disclosure Statement states that with one "exception" -- not General Insurance or any related carrier -- "coverage regarding the Grace and Zonolite primary policies for 1953-1985 has been fully settled and the settlement amounts paid in full." (Feb. 27. 2009 Discl. St. at 41.)

What prompts this objection is that on October 23, 2008, without any notice to General Insurance, the Debtors filed Exhibit 5 [Dkt. 19849] in connection with the then-proposed Plan and Disclosure Statement, entitled "Schedule of Settled Asbestos Insurers Entitled to 524(g) Protection."[2] This Exhibit indicates that only "products coverage" of the listed General Insurance policies is entitled to 524(g) injunctive protection as settled policies. The current Exhibit 5 in the Exhibit Book is the same as to General Insurance [Dkt. 20874], and the current Plan defines "Settled Asbestos Insurance Company" as settled companies but "only to the extent of, any Asbestos Insurance Policy (or any portion thereof) identified as the subject of an Asbestos Insurance Settlement Agreement in Exhibit 5 in the Exhibit Book…." (Plan at 37.) Moreover, Schedule 1 of current Exhibit 6 to the Plan (entitled "Asbestos Insurance Transfer Agreement")[Dkt. 20874] lists General Insurance policies as policies that the Insurance Contributors "have reason to believe potentially or actually provide insurance for Asbestos PI

---

[2] Plan Proponents never served General Insurance with Plan Exhibit 5, the Plan, the Disclosure Statement or the various Case Management Orders.

Claims" and hence are among the Asbestos Insurance Rights to be transferred to the Asbestos PI Trust.[3]

## OBJECTIONS

The point of General Insurance's objections is not to involve the Court in any resolution of the issue of the interpretation of the Settlement Agreement, including whether Grace or other Plan Proponents have understated the scope of the settlement and release thereunder, but rather (i) to assure neutrality as to any coverage litigation that may ensue as to that issue, any other coverage issue, and the defenses that General Insurance has to coverage, including not only settlement and release, but also breach of notice requirements, statute of limitations, and other bars to coverage such as estoppel, waiver, and laches, and (ii) to assure that the Plan is clarified or modified to provide that General Insurance's contract claims against Grace arising from the Settlement Agreement are not channeled to the Asbestos Trust as Indirect Asbestos PI Trust Claims or otherwise, but instead are classified and treated as Class 9 General Unsecured Claims, to be paid in full. These contract claims would include, for example, indemnification claims under the Settlement Agreement if a coverage court finds that General Insurance is <u>not</u> liable for asbestos-related claims. Such claims are not for reimbursement of payments to asbestos claimants. They are claims for damages or other compensatory payments, among other things, under the broad indemnity provisions of the Settlement Agreement and for legal fees and other costs and expenses.

General Insurance hereby joins the objections filed by other insurance companies, which show inter alia that the Plan is not "insurance neutral", even apart from the specific concerns of General Insurance raised herein; that it does not satisfy the requirements of Section 524(g); that it violates Sections 1129(a)(1) and Section 1129(a)(3) in multiple ways, including by assignment

---

[3] Capitalized terms that are defined in the Plan are used herein with the same meaning, unless otherwise indicated.

of Asbestos Insurance Rights without consent of General Insurance and misclassification and mistreatment of contractual and indemnity claims that would arise if General Insurance ever were required to pay Asbestos Claims under the released VNW coverage. General Insurance is entitled to be indemnified for, defended against, and held harmless from, all asbestos-related claims under the broad indemnity contained in its Settlement Agreement, and all claims under this contractual indemnity should be classified and treated as Class 9 General Unsecured Claims.

### 1. General Insurance Has Standing To Make These Objections.

General Insurance joins in the objections of the other insurers on the issue of insurer standing to object to all Plan confirmation issues. Moreover, as to the specific matters raised herein -- whether the Plan is "Insurance Neutral" as to General Insurance and whether the claims of General Insurance are properly classified and treated under the Plan -- there should be no question concerning the standing of General Insurance. Even the narrowest of approaches acknowledges the standing of insurers to object to plan provisions and raise confirmation objections "that directly affect their contractual rights and interests." *In re Quigley Co., Inc.*, 391 B.R. 695, 706 (Bankr. S.D.N.Y. 2008).

### 2. The Plan Is Not Insurance Neutral In General Or As To General Insurance.

By now, the Court is familiar with the basic principles that underlie the insurance neutrality concept:

- "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54 (1979).
- Nothing in the Code authorizes the rewriting of the Policies for the benefit of the Debtors' creditors -- to the contrary, a debtor must take its contracts as it finds them. *Zartman v. First Nat'l Bank of Waterloo*, 216 U.S. 1334, 135 (1910); *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1091 (3d Cir. 1990).[4]

---

[4] Under the substantive state law, an insurance contract cannot be modified without the consent of all parties. *J.M.P.H. Wetherell v. Sentry Reinsurance, Inc.*, 743 F. Supp. 1157, 1170 (E.D. Pa. 1990) (PA law); *Murray v. John*

- Bankruptcy courts have long recognized that they lack the power to alter the rights and obligations of insurers. *Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.)*, 97 B.R. 220, 221 (Bankr. E.D. Pa.), *aff'd, Amatex Corp. v. Stonewall Ins. Co.*, 102 B.R. 411 (E.D. Pa. 1989).

- The Bankruptcy Code does not expand the debtor's rights against others beyond what they were at the commencement of the case. *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487,492-93 (3d Cir. 1997); *Foothill Capital Corp v. Clare's Food Market, Inc. (In re Coupon Clearing Serv., Inc.)* 113 F.3d 1091, 1099 (9th Cir. 1997); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984).

Accordingly, the idea of "insurance neutrality" is to assure that a plan does not contravene the Bankruptcy Code by altering the insurer's rights under state law and its insurance contracts.

In the present case, the neutrality language proposed in Section 7.15 of the Plan is deficient. General Insurance hereby joins in the objections of other insurers that set forth the deficiencies in Section 7.15. General Insurance, however, has several specific "neutrality" concerns. First and foremost, nothing in the Plan should deprive it of a level playing field to litigate the basic issue of the scope of the Settlement Agreement and the release contained therein. If the Plan is not neutral in this respect, it in effect alters the rights and obligations of the insurer and deprives the insurer of its contractual and State Law rights.

In this regard, the "insurance neutrality" language in the Plan is decidedly less robust than that included in other recently confirmed plans in asbestos-related bankruptcy cases. For example, in *Federal Mogul*, the bankruptcy court approved language made it clear that the confirmation of the plan and other orders and findings in that case could not "be used as evidence in any forum to prove," *inter alia*, that "any Asbestos Insurance Company is liable for, or otherwise obligated to pay with respect to, any individual Claim or Demand...."[5]

---

*Hancock Mut. Life Ins. Co.*, 165 Pa. Super. 514, 516, 69 A.2d 182, 183 (1949) (same). So too is a debtor precluded from unilaterally modifying its contracts as a matter of bankruptcy law. *Joshua Slocum*, 922 F.2d at 1091; *see Yates Dev., Inc. v. Old Kings Interchange, Inc. (In re Yates Dev., Inc.)*, 256 F.3d 1285, 1290 (11th Cir. 2001).

[5] *In re Federal Mogul Global, Inc., et al.*, Case No. 01-10578, Plan of Reorganization, §10.4 (Bankr. D. Del.) (confirmed November 8, 2007)[Dkt. No.13614]. Section 10.4 of the Federal Mogul plan states in pertinent part:

In contrast, the "insurance neutrality" language set forth in Plan Section 7.15 contains no such use prohibition. While the Confirmation Order may not be "binding" on General Insurance under Plan Section 7.15, any use of the Order or other rulings and findings as evidence in coverage litigation -- to show, for example that the Court approved Exhibit 5 and its description or misstatement of the Settlement Agreement -- would be highly prejudicial to General Insurance. Consequently, the existing "insurance neutrality" language in Section 7.15 may not

---

> ...None of (I) the Bankruptcy Court's or District Court's approval of the Plan or the Plan Documents, (II) the Confirmation Order or any findings and conclusions entered with respect to Confirmation, nor (III) any estimation or valuation of Asbestos Personal Injury Claims, either individually or in the aggregate (including, without limitation, any agreement as to the valuation of Asbestos Personal Injury Claims) in the Reorganization Cases shall, with respect to any Asbestos Insurance Company, constitute a trial or hearing on the merits or an adjudication or judgment; or accelerate the obligations, if any, of any Asbestos Insurance Company under its Asbestos Insurance Policies; or be used as evidence in any forum to prove:
>
> (i) that any of the Debtors, the Trust, or any Asbestos Insurance Company is liable for, or otherwise obligated to pay with respect to, any individual Asbestos Personal Injury Claim or Demand;
>
> (ii) that the procedures established by the Plan, including the Asbestos Personal Injury Trust Distribution Procedures, for evaluating and paying Asbestos Personal Injury Claims and Demands are reasonable;
>
> (iii) that the procedures established by the Plan, including the Asbestos Personal Injury Trust Distribution Procedures, for evaluating and paying Asbestos Personal Injury Claims and Demands are consistent with any procedures that were used to evaluate or settle Asbestos Personal Injury Claims against the Debtors before the Petition Date;
>
> (iv) that the settlement of, or the value assigned to, any individual Asbestos Personal Injury Claim pursuant to the Asbestos Personal Injury Trust Distribution Procedures was reasonable and/or otherwise appropriate;
>
> (v) that any of the Asbestos Insurance Companies participated in and/or consented to the negotiation of the Plan or any of the Plan Documents;
>
> (vi) that any of the Debtors or the Trust has suffered an insured loss with respect to any Asbestos Personal Injury Claim or Demand; or
>
> (vii) as to (A) the liability of the Debtors or the Trust for Asbestos Personal Injury Claims or Demands, whether such Claims or Demands are considered individually or on an aggregate basis; or (B) the value of such Asbestos Personal Injury Claims or Demands, individually or in the aggregate.

restrict efforts by the Asbestos PI Trust to establish General Insurance's obligations based on the confirmation of the Plan.

So, too, Grace should not be permitted to use the Plan itself or any Plan Documents to attempt to prove any liability or coverage obligation of General Insurance, and an appropriate limiting instruction should be available to General Insurance in the event that Plan Documents are admitted into evidence. *See* ¶¶ 2.a. and 6.d. of Stipulation and Agreed Order entered on February 10, 2009 [Dkt. No. 302] in *In re TH Agriculture & Nutrition, L.L.C.*, Case No. 08-14692 (Bankr. S.D.N.Y.), attached as **Exhibit A**.

Section 7.15 is further deficient because, in subsection "(c)," it provides for insurer rights to be determined, as applicable to General Insurance, under the defined term "Asbestos Insurance Settlement Agreements." Debtors should clarify that for purposes of Section 7.15(c), this definition includes General Insurance's Settlement Agreement with Grace, regardless of its mischaracterization in Exhibit 5.

Furthermore, the Plan's definition of "Asbestos Insurer Coverage Defense" (at § 1.1(16) of the Plan) excludes any defense that "the Plan or any of the Plan Documents do not comply with the Bankruptcy Code…." This exclusion is at best confusing. Does it mean that Grace is entitled to show in a coverage action that this Court found the Plan (including Exhibit 5) to be proposed in good faith, as required by Code § 1129(c)(3)?

Finally, instead of the Court "hammering out" neutrality language on a objection by objection basis, what is needed here is negotiation of a neutrality stipulation -- which has become the practice in asbestos bankruptcy cases. The court should consider requiring, and setting a time-frame for, such negotiation.

3.  **The Plan Violates Sections 1129(a)(1), 1122 and 1123(a)(3), (4) Because It Misclassifies The Claims Of General Insurance And Does Not Provide For Their Treatment.**

Under the Settlement Agreement, Grace released General Insurance and promised to indemnify it and hold it harmless from any liability or expenses incurred as a result of asbestos-related claims. (Settlement Agreement, § 8.) The Debtors further agreed to hire and pay counsel to defend General Insurance from any such claims. (*Id.*) Moreover, Grace warranted and covenanted not to tender any asbestos-related claims to General Insurance, and it agreed to cooperate fully with General Insurance in opposing any effort to invalidate the Settlement Agreement. (Settlement Agreement, §§ 9, 15.D.)

Grace and its Plan violate the Settlement Agreement. Under the Settlement Agreement, General Insurance holds claims against the Debtors for breach of contract damages and indemnity ("Contract Claims"). Among other things, if the Asbestos PI Trust or some other person sues General Insurance for coverage of asbestos-related claims, the Debtors would be liable to pay all of General Insurance's damages, including its expenses and costs of defense. Grace is liable for General Insurance's attorneys' fees incurred in making this submission, which is necessitated by Grace's breach of Settlement Agreement. Moreover, because General Insurance's contingent and non-contingent Contract Claims are general unsecured claims that do not arise out of Asbestos Claims, they cannot be channeled to the Asbestos PI Trust, and they must be classified as General Unsecured Claims under the Plan and paid in full along with other general unsecured claims.

  a.  **The Plan's And TDP's Treatment Of General Insurance's Contract Claims Must Be Clarified To Provide For Treatment Of General Insurance's Contingent Claims For Breach Of Contract And Indemnity.**

The Plan defines "Indirect PI Trust Claims" to mean claims for "payment, repayment, reimbursement, [or] indemnification ... from the Debtors with respect to any insurance settlement

agreement." (Plan, ¶138, p. 39.) This definition is broad enough to encompass the above-described Contract Claims, and the Plan provides that such claims are channeled to the Abestos PI Trust.[6] The TDP, however, appears to contemplate indirect asbestos claims only where the claimant has paid a direct asbestos claim.

TDP Section 5.6 governs Indirect PI Trust Claims and it requires Indirect Claimants to have paid an individual claimant for claims that the PI Trust would have otherwise have been liable to pay. In other words, the Plan and TDP only provide for payment of indemnity claims that derive from the payment of an asbestos tort claim.[7]

If General Insurance's Contract Claims are Indirect PI Trust Claims, then the Plan and TDP do not afford them any mechanism for payment at all. This would, of course, mean that General Insurance's claims were treated differently from other claims in the same class -- rendering the Plan unconfirmable on its face under Section 1123(a)(4). Accordingly, as a threshold matter, Plan Proponents must clarify how the Plan and TDP will treat General Insurance's Contract Claims. As explained below, however, the Plan is still not confirmable unless General Insurance's Contract Claims are treated as General Unsecured Claims.

### b. The Plan Cannot Be Confirmed Unless General Insurance's Contract Claims Are Treated As General Unsecured Claims.

If the Plan is not clarified to exclude the above-described Contract Claims from the definition of Indirect PI Trust Claims, the Plan cannot be confirmed because it violates Section

---

[6] To the extent that General Insurance's contingent claims are subject to a bar date, General Insurance will move for permission to file a late claim as it did not receive notice of the bar date.

[7] Two other TDP provisions deal with insurance claims, but neither is applicable to General Insurance's claims. TDP Section 5.12 governs "Insurance-Related TDP Claims," but this section governs claims against insurance companies, not claims for indemnity by insurance companies. TDP Section 5.13 governs "Indemnified Insurer TDP Claims," but this section governs claims against a Settled Asbestos Insurance Company. The Plan defines "Settled Asbestos Insurance Company" to mean insurers that have entered into settlements with the Debtors "but only with respect to, and only to the extent of" insurance policies identified on Plan Exhibit 5. Plan Exhibit 5 states (erroneously) that the Debtors have settled with General Insurance as to products coverage only.

524(g) and Section 1122. General Insurance's Contract Claims are not asbestos-related claims; they are general unsecured claims arising out of the parties' pre-petition Settlement Agreement. Accordingly, they cannot be channeled to the Asbestos PI Trust under Section 524(g), and they cannot be classified with asbestos-related claims. If the Plan is to be confirmed, it must be clarified to provide that the above-described Contract Claims are not Asbestos Claims that will be channeled to the Asbestos PI Trust (or the Asbestos PD Trust) but are General Unsecured Claims that will be paid in full.

### (i) Section 524(g) Does Not Permit Channeling Of General Insurance's Contract Claims.

Section 524(g) trusts and injunctions are highly specific and are designed to deal solely with asbestos-related claims. Under Section 524(g), courts may issue channeling injunctions "with respect to any claim or demand that … is to be paid … by a trust described in paragraph (2)(B)(i)." 11 U.S.C. § 524(g)(1)(B). Section 524(g) trusts "assume the liabilities of a debtor which … has been named as a defendant in personal injury, wrongful death, or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products." 11 U.S.C. § 524(g)(2)(B)(i)(I).

In addition, before it can issue the injunction, a court must make various findings including that "the debtor is likely to be subject to substantial future demands for payment arising out of the same or similar conduct or events that gave rise to the claims that are addressed in the injunction" and "the actual amounts, numbers, and timing of such future demands cannot be determined." 11 U.S.C. § 524(g)(2)(B)(ii)(I)-(II).

These provisions make it clear that General Insurance's claims for indemnity and breach of contact -- the Contract Claims -- cannot be channeled to a § 524(g) asbestos trust. First, General Insurance's Contract Claims do not arise from the payment of Asbestos Claims. In fact, by definition, they can only arise if a court of competent jurisdiction finds that General Insurance

is <u>not</u> liable for asbestos-related claims. As such, General Insurance's claims are simple contract claims arising from Grace's indemnity obligations and/or breach of the Settlement Agreement that cannot be assumed by a Section 524(g) trust.

Second, the channeling injunction cannot include General Insurance's Contract Claims because the debtor is <u>not</u> "likely to be subject to substantial future demands arising out of the same or similar conduct." Section 524(g) defines "demand" to mean a demand for payment that is <u>not</u> a claim during the bankruptcy proceedings. 11 U.S.C. § 524(g)(5). General Insurance's right to payment is a claim, not a demand, because it arises out of a pre-petition contract. Any similar right to payment arising out of the similar conduct (i.e., arising out of a pre-petition agreement) would also qualify as a claim. Thus, it is certain that the Debtor would never be subject to a future "demand" arising out of similar conduct. Because the Court cannot find that similar future demands are likely, it cannot include General Insurance's Contract Claims within the scope of the channeling injunction.

        **(ii)    Because General Insurance's Contract Claims Are Not Asbestos-Related, They Should Be Included In Class 9 With General Unsecured Claims.**

The Plan can be read as placing General Insurance's claims in the same class as asbestos-related claims and demands. This classification violates Section 1122's requirement that all claims in a class be "substantially similar." "[C]lassification is constrained by two straight-forward rules: Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason." *In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996); *see also Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 661 (6th Cir. 2002) (stating that dissimilar claims may not be classified together). Here, the Plan places General Insurance's claims in the same class as dissimilar claims and in a different class from similar claims for no legitimate reason.

Whether claims are "substantially similar" depends on whether they "possess the same legal attributes and share common priority against the estate." *In re Heron, Burchette, Ruckert & Rothwell*, 148 B.R. 660, 670 (Bankr. D.D.C. 1992). Here, General Insurance's Contract Claims differ from the other claims in Class 6 in their legal character and relationship to the Debtors' assets.

General Insurance's Contract Claims are fundamentally different from the Asbestos Claims under the Plan, which include both "claims" as defined in Section 101(5) of the Bankruptcy Code and "demands" as defined in Section 524(g)(5). Claims and Demands are classified together in the Plan's Asbestos Claim Classes, Class 6 and Class 7. Absent Section 524(g), of course, a plan of reorganization may not release a debtor from liability for future demands, and it certainly could not place those demands in the same class as general unsecured claims. Section 524(g), however, gives debtors the ability to classify asbestos-related claims and demands together because Section 524(g) requires that debtors provide for the payment of future demands through creation of a trust. Thus, by operation of law, claims and demands arising from asbestos exposure have a special classification and a specific right to asbestos trust assets.

General unsecured claims, however, may not be channeled to a Section 524(g) trust, may not be classified with future demands, and do not have the same right to a debtor's assets. For this reason, general unsecured claims -- like General Insurance's Contract Claims for breach of contract and indemnity -- may not be classified along with asbestos-related claims. The Plan is thus unconfirmable if General Insurance's Contract Claims are not classified in Class 9, General Unsecured Claims.

## CONCLUSION

      For the reasons stated, General Insurance requests that the Court deny confirmation of the Plan.

Dated:  May 20, 2009               Respectfully submitted,

                                         /s/ Frederick B. Rosner
                                         Frederick B. Rosner (DE #3995)
                                         MESSANA ROSNER & STERN LLP
                                         1000 N. West Street, Suite 1200
                                         Wilmington, DE  19801
                                         Telephone: 302-777-1111
                                         Facsimile: 302-295-4801

                                         - and-

                                         Robert B. Millner
                                         Christopher E. Prince
                                         SONNENSCHEIN NATH & ROSENTHAL LLP
                                         233 S. Wacker Drive, Suite 7800
                                         Chicago, Illinois  60606
                                         Telephone: 312-876-8000
                                         Facsimile: 312-876-7934
                                         *Counsel for General Insurance Company of America*