# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| W. R. GRACE & CO.-CONN., | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 02-01657 |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA. | ) | |
| | ) | Hearing: December 17, 2007, 2:00 p.m. |
| Defendant, Third Party and | ) | Agenda Item No. _____ |
| Joinder Plaintiff | ) | |
| | ) | |
| | ) | |
| REAUD, MORGAN & QUINN, INC. and | ) | Re: Docket Nos. 58, 106, 107, 112, 114 |
| ENVIRONMENTAL LITIGATION GROUP, P.C., | ) | _____ |
| | ) | |
| Third-Party and Joinder | ) | |
| Defendants | ) | |

## ORDER AUTHORIZING DEBTORS' SETTLEMENT WITH NATIONAL UNION AND CLAIMANTS

Upon consideration of the "*Debtors' Motion for an Order Authorizing Settlement with National Union and Claimants*" (the "Motion"); and due and proper notice of the Motion having been given; and it appearing that the relief requested in the Motion is in the best interests of the Debtors,[1] their estates and creditors, it is hereby

ORDERED that the Motion is granted; and it is further

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

ORDERED that the Debtors are hereby authorized to perform their obligations under the Agreement; and it is further

ORDERED that National Union Claim No. 9553 is allowed in the sums provided for in the Agreement; and it is further

ORDERED that the Claimants' Claims Nos. 103, 104, 13945, 13954, 14036 and 14053 are disallowed and expunged for all purposes; and it is further

ORDERED that upon payment by National Union of the Payment Amount, this Adversary Proceeding shall be dismissed; and it is further

ORDERED that the Debtors are authorized to take whatever other actions may be necessary to consummate the transactions contemplated by the Agreement; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order; and it is further

ORDERED that this Order is effective immediately upon its entry.

Dated: December **4**, 2007

Judith K. Fitzgerald

Honorable Judith K. Fitzgerald

U. S. Bankruptcy Judge

2

91100-001\DOCS_DE:132752.1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement"), dated November *13th*,

2007, is made by and between (i) W. R. Grace & Co. and its 61 affiliated entities who are

Debtors in the chapter 11 cases identified as case no. 01-01139 (JKF) pending in the United

States Bankruptcy Court for the District of Delaware; (ii) National Union Fire Insurance

Company of Pittsburgh, PA. and it affiliates AIU Insurance Company, American Home

Assurance Company, Granite State Insurance Company, Illinois National Insurance Company,

The Insurance Company of the State of Pennsylvania, New Hampshire Insurance Company,

Commerce and Industry Insurance Company and Commerce and Industry Insurance Company of

Canada (collectively, "National Union"); and (iii) Reaud, Morgan & Quinn, Inc. ("RMQ") and

Environmental Litigation Group, P.C. ("ELG") and their respective clients who are Settling

Plaintiffs under the Settlement Agreements defined below (collectively, RMQ, ELG and their

clients shall be referred to as "Claimants"). The Debtors, National Union and Claimants shall be

referred to herein collectively as "the Parties."

### RECITALS

A.    On or about August 25, 2000, Claimants entered into two settlement agreements

with W.R. Grace & Co.-Conn ("Grace") one of the Debtors (the "Settlement Agreements"). The

first agreement, the "Alabama Agreement," established procedures for qualifying Alabama

asbestos personal injury claimants to settle their claims against Grace. The second agreement,

the "Texas Agreement," likewise established procedures for qualifying Texas asbestos personal

injury claimants to settle their claims against Grace.

B.    The Settlement Agreements contain specific requirements that a Claimant must

satisfy before its claim is eligible for payment. These requirement include supplying "Qualifying

Materials" to substantiate a Claimant's claim. Pursuant to the Settlement Agreements, Grace was

K&E 12326528.4

required to make payments on account of claims that satisfied the Settlement Agreements in four

yearly installments, with the final two payments due on January 15, 2002 and January 15, 2003.

     C.     Pursuant to the terms of the Settlement Agreements, Grace was required to obtain

guarantees of its prospective obligations under the Settlement Agreements. To satisfy this

requirement, Grace caused National Union to issue two surety bonds (the "Bonds") to Grace, as

the principal, for the benefit of Claimants, as obligees. Bond #ESD 7311060 dated October 23,

2000 secures payments under the Alabama Agreement; Bond #ESD 7311061 dated October 23,

2000 secures payments under the Texas Agreement.

     D.     On April 2, 2001 (the "Petition Date"), Debtors filed chapter 11 Bankruptcy cases

in the United States Bankruptcy Court for the District of Delaware. At that time, two of the four

installments under the Settlement Agreements had been paid by Debtors. The third installment

was paid by agreement of the parties during the chapter 11 cases.

     E.     Grace commenced an Adversary Proceeding (Case No. 02-01657) on January 18,

2002 seeking to enjoin National Union from making certain prospective payments pursuant to

the Bonds. Grace initially alleged that Claimants had not provided sufficient documentation to

support their claims for payment as required by the Settlement Agreements and thus were not

owed any amounts under the Settlement Agreements for which the Bonds were posted.

     F.     National Union responded by filing a third-party action against Claimants which

sought a declaration that no additional monies were owed under the Settlement Agreements or

establishing the extent, if any, of National Union's and Grace's obligations to Claimants.

     G.     In December 2002, National Union moved for summary judgment seeking a

declaration that no additional amounts were owed to the Claimants under the Settlement

Agreements. Claimants filed a cross-claim and on September 10, 2003 filed a cross-motion for

2

summary judgment alleging that additional amounts were due under the Settlement Agreements and that no further review of the claims was appropriate.

H.      Oral argument on the cross motions for summary judgment was originally held in March 2004. At the March 2004 hearing, the Court granted the Debtors the right to review all supporting documentation submitted for unpaid claims that was submitted within 60 days prior to the Petition Date as well as any supporting documentation submitted after the Petition Date. The Court also granted National Union the right to review all claims and supporting documentation submitted for any claims that remained unpaid under the Settlement Agreements, regardless of when the supporting documentation was submitted.

I.      The Court did not rule at that time, however, as to what would be the rights of the Parties after such review was completed.

J.      In June 2006, Claimants filed a Motion for Entry of Judgment which National Union and the Debtors opposed.

K.      The Court ordered briefing on the issue of the applicability of section 108 of the Bankruptcy Code and set the matter for further oral argument. On July 19, 2007, after reviewing the briefing and hearing the arguments of counsel, the Court determined that ordered National Union was to pay Claimants on account of Qualified Claims submitted more than 60 days prior to the Petition Date (i.e. on or before January 31, 2001)..

L.      The Parties subsequently engaged in good-faith discussions regarding the form of the Order memorializing the Court's July 19, 2007 rulings. While the Parties essentially reached agreement with respect to the correct value of the Qualified Claims submitted more than 60 days prior to the Petition Date which should be paid, the Parties are not able to agree on the issue of prejudgment interest.

3

K&E 12206428.4

M.    National Union has filed various proofs of claim against the Debtors for the obligations of the Debtors to National Union as a result of the Bonds. Pursuant to a Stipulation between the Debtors and National Union dated February 1, 2006, National Union's sole surviving claim against the Debtors related to the Bonds is claim number 9553 which asserts a claim against the Debtors in the amount of $46,971,764 plus unliquidated amounts which National Union asserts are secured by certain letters of credit (the "National Union Claim").

N.    Claimants have filed certain proofs of claim against the Debtors, identified as claims nos. 103, 104, 13945, 13954, 14036 and 14053 for unpaid amounts they assert are owing by the Debtors to Claimants under the Settlement Agreements (the "Claimants' Claims").

O.    The Parties now desire to enter into this Agreement, on the terms and conditions as set forth herein, in order to resolve the outstanding issues between them, including but not limited to: (a) all issues regarding all claims that have been submitted to Debtors for payment under the Settlement Agreements; (b) the issue of pre judgment interest; (c) how the amounts owing under the Settlement Agreements shall be funded by National Union; (d) the allowed amount of National Union's Claim; (e) release of the Bonds; (f) satisfaction and cancellation of the Settlement Agreements and disallowance of Claimant's Claims; and (f) dismissal of the Adversary Proceeding.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the Parties agree as follows:

1.    National Union shall pay Claimants the sum of $15,350,000 in full satisfaction and settlement of National Union's obligations under the Bonds (the "Payment Amount"), which Payment Amount shall be paid by National Union to Claimants within 3 business days after an order entered by the Bankruptcy Court approving this Agreement becomes a Final Order, as defined below (the "Closing Date"), such order to be in form and content reasonably satisfactory

4

to the Parties, and each of them, which shall authorize the Debtors to perform their obligations under this Agreement, cancel and release the Bonds, allow the National Union Claim in the sum provided for herein, and dismiss the Adversary Proceeding (the "Approval Order"). Notwithstanding the foregoing, the Closing Date shall not occur before December 10, 2007.

2.      Upon payment by National Union of the Payment Amount, (a) the Bonds shall be cancelled and the originals returned to National Union on the Closing Date and all obligations of National Union under the Bonds shall be deemed fully satisfied; (b) the Settlement Agreements and all obligations of the Debtors thereunder shall be deemed fully satisfied, and (c) the Adversary Proceeding shall be dismissed.

3.      In order to partially fund the Payment Amount, National Union shall draw down (a) the remainder of letter of credit no. 7404289 issued by Bank of America N.A. in the remaining amount of $710,110 and (b) letter of credit no. 7404163 issued by Bank of America N.A. in the amount of $6 million, and both letters of credit shall be cancelled. National Union shall draw on the letters of credit five business days prior to the Closing Date.

4.      Surety Bond No. ESD 7310985 dated September 19, 2000 issued on behalf of Grace by American Home Assurance Company, an affiliate of National Union, in favor of the Tennessee Department of Heath and Environment in the penal sum of $31,772,596.00 (the "Tennessee Bond") shall remain unaltered and nothing herein shall provide any basis to cancel the Tennessee Bond notwithstanding the draw by National Union of letter of credit no. 7404163 outlined in paragraph 3 above which was posted as partial security for Grace's obligations to American Home Assurance Company for the Tennessee Bond, and Debtors shall have no obligation to provide a replacement letter of credit.

5

5.     Upon payment by National Union of the Payment Amount, National Union Claim

No. 9553 shall be allowed in the total amount of $9,806,018, as an unsecured, pre-petition, non-

priority claim against the chapter 11 estates of the Debtors, which claim consists of: (a)

$8,639,890, the balance of the Payment Amount after applying the letter of credit proceeds

outlined in paragraph 3 above; (b) National Union's claim for unpaid bond premiums on the

Bonds in the amount of $432,193; and (c) National Union's claim for litigation expenses in

connection with the Bonds in the amount of $733,935. All other amounts claimed owing on

Claim No. 9553 shall be hereby expunged and disallowed. In the event that any plan or plans of

reorganization that the Debtors, or any of them, may confirm in their bankruptcy cases provides

for payment of interest on unsecured, pre-petition, non-priority claims, the National Union Claim

in the amount allowed herein, shall bear interest at the rate provided in such plan or plans from

and after the Closing Date without regard to the date from which interest accrues under the terms

of such plan or plans of reorganization with respect to any other creditor.

6.     The amounts set forth in paragraph 5 above are being allowed without prejudice

to: (i) any further amounts National Union may claim for legal fees and expenses accrued in

connection with the Bonds for legal services after September 30, 2007, (ii) any additional

amounts due for premiums arising under the Bonds in excess of the amount allowed herein for

which National Union can provide the Debtors evidence of such further amounts owing; (iii)

amounts due for premiums arising under the Tennessee Bond, and (iv) any other amounts

unrelated to the Bonds that may be due to National Union. Notwithstanding any other provision

in the Agreement, no claim listed in the preceding sentence is released or reduced by this

Agreement. National Union may file new proofs of claim ("New POCs") for (i) amounts

National Union may claim for legal fees and expenses accrued in connection with the Bonds

6

after September 30, 2007, (ii) additional amounts due for premiums on the Bonds in excess of the amount allowed herein, if applicable, and (iii) amounts due for premiums arising under the Tennessee Bond, and such New POCs shall not be deemed to be untimely. All parties reserve all their rights and defenses (other than untimeliness) with respect to the claims described in this paragraph.

7.    Upon payment by National Union of the Payment Amount, all of Claimants' claims which were submitted to Debtors under the Settlement Agreements at any time shall be disallowed and expunged. To the extent that Claimants seek to pursue claims which they allege were covered under the Settlement Agreements but were not previously submitted to Debtors as a result of the chapter 11 filing and notwithstanding any bar date previously imposed in Debtors' Chapter 11 cases, these Claimants shall have 90 days from the date of a Final Order to file such proofs of claims and this Agreement shall not release or affect such claims. National Union shall have no liability for any claims preserved, asserted or allowed pursuant to this paragraph and Debtors reserve their rights to object to any such claims. Furthermore, this Agreement does not affect or in any way relate to "new asbestos-related cancers" among Settling Plaintiffs as outlined in paragraph 9 of the Settlement Agreements and the corresponding releases, and all rights outlined thereunder are preserved.

8.    In the event that the Tennessee Bond outlined in paragraph 4 above is later drawn upon prior to Debtors' emergence from their Chapter 11 cases, National Union shall be allowed a general unsecured claim to be reimbursed for any draw or other costs or expenses due National Union that may arise in connection with the Tennessee Bond. Such general unsecured claim shall be entitled to the same treatment and conditions with respect to interest as the National Union Claim outlined in paragraph 5 above. In the event that the Tennessee Bond is not drawn

7

upon prior to Debtors' emergence from Chapter 11, Debtors shall assume the agreement establishing the Tennessee Bond in its chapter 11 plan and perform its obligations thereunder in the ordinary course of its business, other than providing a replacement letter of credit.

9.    To the extent that National Union makes any payments under this Agreement or under the Tennessee Bond or other pre-exiting prepetition obligations to the Debtors, and to the extent National Union has a right of setoff, this Agreement hereby substitutes an administrative priority claim equal in value, if any, to such right of setoff. No such administrative priority claim shall be allowed to or paid to National Union pursuant to such claim unless and until the Bankruptcy Court determines that National Union had a right of offset equal in value to the amount of such administrative priority claim. The Debtors shall retain all rights to contend that there is no such right of setoff and to object to the administrative priority claim substituted herein. The intent of this paragraph is to preserve the status quo and to allow National Union to make payments to Claimants and the Debtors without the need to raise setoff issues each time a payment is made. All entities shall retain all rights and defenses in connection with such payments and the administrative priority claims and no party is deemed to have agreed that any such setoff rights exist or not.

10.    As used herein, the term "Final Order" means an order of the Bankruptcy Court that has been entered upon the docket in the Debtors' chapter 11 cases, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument or rehearing was sought, and

8

the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a "Final Order."

11.    The Parties will cooperate to cause the order approving this Agreement to become a Final Order at the earliest date possible. The Parties further agree that if the Bankruptcy Court enters an order approving this Agreement, which order does not become a Final Order for any reason within 120 days of the entry of the order, each Party shall have the right to declare this Agreement null and void, in which case the Parties will have all of the rights, obligations and claims that they had prior to executing this Agreement.

12.    Claimants agree that they are forever barred, estopped, and enjoined from asserting any additional claims against National Union or the Debtors, except to the extent that entities other than National Union may have liability as outlined in paragraph 7 above, with respect to the claims addressed by the Settlement Agreements.

13.    The Parties agree that Claimants are not parties to the agreements contained above in paragraphs 3, 4, 5, 6, 8 and 9 and are not making any promise or representation with regard to such paragraphs.

**RELEASES**

14.    Other than the Parties' obligations hereunder, the Debtors, on behalf of themselves and each of their subsidiaries and affiliates, hereby release and discharge National Union and Claimants and each of their/its successors, heirs, assigns, agents, partners, attorneys, family members, employees, shareholders, officers, directors, members, representatives, insurers, corporations, partnerships and their subsidiaries, affiliates and predecessors, of and from any and all manner of action or actions, cause or causes of action in law or in equity, suits, debts, liens,

9

K&E 13264284

contracts, agreements, promises, liabilities, claims, demands, damages, losses, costs or expenses of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, from the beginning of time to the date of this Agreement which the Debtors now have or may hereafter have by reason of any matter, cause or thing whatsoever from the beginning of time to the date hereof relating to or arising out of the Settlement Agreements, Bonds, letters of credit, National Union Claim, Claimants' Claims and any claims arising out of, based upon, or relating to any of the matters raised in the Settlement Agreements, Bonds, letters of credit, National Union Claim or Claimants' Claims. Without limiting the generality of the foregoing, the Debtors, on behalf of themselves and each of their subsidiaries and affiliates, in the event the National Union Claim is hereafter transferred, sold or assigned, agrees that the National Union Claim shall not be subject at any time to any right of setoff or any other defense arising out of the Tennessee Bond, any other obligations owed to any of the Debtors, or otherwise.

15. Other than the Parties' obligations hereunder, National Union, on behalf of itself and each of its subsidiaries and affiliates, hereby releases and discharges Claimants, the Debtors and each of their/its successors, heirs, assigns, agents, partners, attorneys, family members, employees, shareholders, officers, directors, members, representatives, insurers, corporations, partnerships and their subsidiaries, affiliates and predecessors, of and from any and all manner of action or actions, cause or causes of action in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, demands, damages, losses, costs or expenses of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, from the beginning of time to the date of this Agreement which National Union now has or may hereafter have by reason of any matter, cause or thing whatsoever from the beginning of time to the date hereof relating to or arising out of the Settlement Agreements, Bonds, letters of credit, National

10

Union Claim or Claimants' Claims and any claims arising out of, based upon, or relating to any of the matters raised in the Settlement Agreements, Bonds, letters of credit, National Union Claims or Claimants' Claims.

16.    Other than the Parties' obligations hereunder, and except as set forth in paragraph 7 above, Claimants on behalf of themselves and each of their respective subsidiaries and affiliates, partners, members and share or other equity holders, hereby releases and discharges the Debtors and National Union and each of their/its successors, heirs, assigns, agents, partners, attorneys, family members, employees, shareholders, officers, directors, members, representatives, insurers, corporations, partnerships and their subsidiaries, affiliates and predecessors, of and from any and all manner of action or actions, cause or causes of action in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, demands, damages, losses, costs or expenses of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, from the beginning of time to the date of this Agreement which Claimants now has or may hereafter have by reason of any matter, cause or thing whatsoever from the beginning of time to the date hereof relating to or arising out of the Settlement Agreements, Bonds, letters of credit, National Union Claim or Claimants' Claims and any claims arising out of, based upon, or relating to any of the matters raised in the Settlement Agreements, Bonds, letters of credit, National Union Claim or Claimants' Claims.  It is understood and agreed that nothing herein shall settle, release or affect in any way the rights of the parties in that certain case entitled Aaron C. Edwards, et al. v. Pittsburgh Corning Corporation, et al (Cause No. B-150,896-J; 60th District Court, Jefferson County, Texas), including the judgment rendered therein against W. R. Grace & Co. and the pending appeal."

11

17.    Each of the Parties represents and warrants to all other Parties that it is the sole (or joint with one or more other Parties) and lawful owner of all right, title and interest in and to every claim that is releasing hereby and that no portion of any claim, right, demand, action or cause of action that it has or might have against any other Party, nor any portion of any such claim, right, demand, action or cause of action to which it may be entitled, has been assigned or transferred to any other person, firm or corporation in any manner (other than assignments which may have been made by Claimants to their counsel pursuant to any agreement between such parties), including by way of subrogation or operation of law or otherwise. Each Party further represents and warrants to all other Parties that it does not know of any person or entity not a Party hereto who has (or claims to have) any interest in any claim or right which is released hereby. In the event that any claim, demand, or suit should be made or instituted against a Party or Parties because of a purported assignment, subrogation, or transfer, the Party who so assigned, subrogated or transferred that claim, demand, or suit agrees to indemnify and hold harmless the other Party or Parties against the claim, suit or demand and to pay and satisfy any such claim, suit or demand, including necessary expenses of investigation, attorneys' fees and costs.

## MISCELLANEOUS

18.    This Agreement shall be construed and interpreted in accordance with the laws of the State of Delaware.

19.    All Parties agree that this Agreement may be executed in counterparts, and that any copy of this Agreement which contains the original or a photocopy or facsimile of the signature of each and every signatory hereto shall be deemed an original.

20.    Each Party shall bear all attorney fees and costs incurred by such Party in connection with the Settlement Agreements, Bonds, letters of credit, National Union Claim or Claimants' Claims, this Agreement and the matters and documents referred to herein and all

12

K&E 13336928.4

related matters, except for the obligations of Debtors to National Union outlined in paragraphs 5 and 6 above.

21.    This Agreement sets forth the entire agreement between the Parties concerning the settlement of the disputes described in this Agreement, and shall supersede any and all prior agreements or understandings, written or oral, between these Parties pertaining to the subject matter hereof except for the releases previously executed by the settling plaintiffs under the Settlement Agreements. Each Party agrees that no provision or breach of this Agreement may be waived unless the waiver is expressed in a writing signed by the Party charged with the waiver, and that the waiver of any one provision or breach shall not be deemed to constitute a waiver of any other provision or breach. This Agreement may not be amended, modified, or terminated, in whole or in part, except by an instrument in writing, executed by the Parties or their authorized representatives.

22.    To the extent that any additional documents or acts are reasonably required to be executed or performed by a Party in order to effectuate or carry out this Agreement, the Party in question shall promptly execute and deliver such documents and/or perform said acts in accordance with the terms hereof.

23.    The liability for any claim released herein is denied by the Parties herein released, and this final compromise and settlement thereof shall never be treated as an admission of liability or responsibility at any time for any purpose.

24.    The terms of this Agreement have been negotiated at arms' length among sophisticated Parties represented by counsel, and this Agreement in its final form is the result of the combined efforts of counsel for all Parties. As a result, the rule of "Interpretation Against the Draftsman" shall not apply in any dispute over interpretation of the terms of this Agreement.

13

25.    Any dispute concerning the interpretation, performance or enforcement of this Agreement or any other matter arising from or connected with this Agreement shall be determined solely by proceedings in the Debtors' chapter 11 cases or in the event the chapter 11 cases are closed, in the appropriate State or Federal Court in Delaware.

26.    In entering into this Agreement, the Parties represent that they each relied upon the advice of their own attorneys, who are attorneys of their own choice, concerning the legal consequences of this Agreement; that the terms of this Agreement have been completely read and explained to the Parties by their respective attorneys; and that the terms of this Agreement are fully understood and voluntarily accepted by the Parties.

27.    All Parties agree that all warranties and representations expressed in this Agreement shall survive the execution of the Agreement.

28.    Any provision of this Agreement which is deemed invalid, illegal or unenforceable shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without affecting in any way the validity, legality or enforceability of any other provision of this Agreement, provided that the economic or legal substance of this Agreement is not affected in any manner materially adverse to any Party.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth above.

W. R. GRACE & CO., et al., Debtors and Debtors in possession

By _____
Jay Hughes
Sr. Litigation Counsel

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH NA, AIU

14

K&E 13730704.4

INSURANCE COMPANY, AMERICAN HOME
ASSURANCE COMPANY, GRANITE STATE
INSURANCE COMPANY, ILLINOIS
NATIONAL INSURANCE COMPANY, THE
INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA, NEW HAMPSHIRE
INSURANCE COMPANY, COMMERCE AND
INDUSTRY INSURANCE COMPANY AND
COMMERCE AND INDUSTRY INSURANCE
COMPANY OF CANADA

By _____
Their Authorized Signatory

REAUD, MORGAN QUINN AND
ENVIRONMENTAL LITIGATION GROUP P.C.
for Claimants

By _____
Their Authorized Signatory

15

INSURANCE COMPANY, AMERICAN HOME
ASSURANCE COMPANY, GRANITE STATE
INSURANCE COMPANY, ILLINOIS
NATIONAL INSURANCE COMPANY, THE
INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA, NEW HAMPSHIRE
INSURANCE COMPANY, COMMERCE AND
INDUSTRY INSURANCE COMPANY AND
COMMERCE AND INDUSTRY INSURANCE
COMPANY OF CANADA

By _____
    Their Authorized Signatory

REAUD, MORGAN QUINN AND
ENVIRONMENTAL LITIGATION GROUP P.C.
for Claimants

By _____ THEIR ATTORNEY
    Their Authorized Signatory

15