IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., *et. al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**FINAL PHASE I AND NON-SURETY CLAIM RELATED PHASE II
OBJECTIONS OF FIREMAN'S FUND INSURANCE COMPANY,
ALLIANZ S.P.A., F/K/A RIUNIONE ADRIATICA DI SICURTA, AND ALLIANZ SE,
F/K/A ALLIANZ AKTIENGESELLSCHAFT TO
CONFIRMATION OF THE FIRST AMENDED JOINT PLAN OF REORGANIZATION**

Pursuant to the Third Amended Case Management Order entered by this Court on

May 5, 2009 [Docket No. 21544] (the "CMO"), and the *Order Approving Disclosure Statement,*

*Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief* entered by

this Court on March 9, 2009 [Docket No. 20944], Fireman's Fund Insurance Company, Allianz

S.p.A., f/k/a Riunione Adriatica di Sicurta, Allianz SE, f/k/a Allianz Aktiengesellschaft, and

possibly other related insurance companies (collectively, "FFIC"), by their attorneys, hereby

object (this "Objection") to confirmation of the *First Amended Joint Plan of Reorganization*

*Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee*

*of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and*

*the Official Committee of Equity Security Holders Dated as of February 27, 2009* (the "Plan").[1]

As set forth in the CMO, this Objection is not intended as, and is not, the final or

complete statement of FFIC's Objection.  Rather, in accordance with the CMO, FFIC reserves

---

[1]    All capitalized terms not otherwise defined in this Objection refer to those terms as currently defined in the Plan
and/or in the Disclosure Statement relating to the Plan (the "Disclosure Statement") in the forms in which such
documents appear on the docket as of this date.

the right to more fully develop its objections to confirmation, through ongoing discovery, further investigation and otherwise; and to assert modified, supplemental, or additional objections and related legal argument in its Trial Briefs to be filed on June 1, 2009 with regard to Phase I issues (as defined in the CMO), and on July 13, 2009 with regard to Phase II issues (all issues that are not Phase I issues).[2]

Further, as set forth in more detail below, FFIC is both an insurer and a creditor of W.R. Grace & Co. ("Grace").  FFIC has filed separate Surety Claim (as defined below) related Phase II confirmation objections based on its status as a creditor of Debtors.  This Objection will therefore focus on non-Surety Claim issues that are specifically of concern to FFIC based on its status as an insurer of Debtors.

## Introduction and Background

1.  Prior to bankruptcy, FFIC issued certain insurance policies to Debtors, which are defined by the Plan as Asbestos PI Insurance Policies.  In addition, FFIC is a creditor of Debtors, by virtue of its claim against Grace (the "Surety Claim") under a pre-petition "Indemnity Agreement" under which Grace assumed a contractual obligation to indemnify FFIC for any loss FFIC suffered under a supersedeas bond in excess of $43 million (the "Bond").  FFIC issued the Bond on Grace's behalf so that Grace could appeal an underlying judgment (the "Edwards judgment") that five asbestos personal injury claimants obtained against Grace pre-petition.  The Edwards judgment awards the five claimants compensatory damages against Grace totaling $21 million, punitive damages in the amount of $21.5 million, and post-judgment interest at the rate of 12 percent per annum (interest accrued to date on the compensatory damages portion of the judgment amounts to approximately $22 million).[3]  On March 27, 2003, FFIC timely filed its

---

[2]    FFIC further reserves the right to assert objections to the feasibility of the Plan in accordance with the CMO.

[3]    The compensatory damage portions of the judgment were awarded jointly and severally against Grace and

2

proof of claim in this bankruptcy case asserting an unsecured claim for the full amount of the

Bond, $43,038,931.91, which is the maximum amount that Grace is obligated to pay to FFIC

pursuant to the Indemnity Agreement, should FFIC incur any loss as a result of furnishing the

Bond.  The proof of claim also asserts a secured claim based on a $13 million letter of credit

provided by Wachovia Bank to secure Grace's obligations to FFIC under the Indemnity

Agreement, including the payment of premiums.  FFIC has already drawn approximately $1.8

million on the letter of credit due to Grace's failure to pay premiums owed on the Bond, leaving

collateral of $11,204,000 available.  No one has objected to FFIC's proof of claim, hence the

claim is undisputed.

　　　　2.  Pursuant to the CMO, the Plan Proponents have established a process whereby the

Confirmation Hearing is bifurcated into two phases.  The CMO contemplates that Phase I,

scheduled for June 22-25, 2009, will deal with the issue of whether insurers, in their capacities as

insurers, have standing to object to confirmation of the Plan on any issue other than the proposed

assignment of Asbestos PI Insurance Policies to the Asbestos PI Trust, and, relatedly, whether

the Plan is "insurance neutral."  The CMO contemplates that Phase II, scheduled for September

8-11, 2009, will deal with all confirmation issues that are not Phase I issues.  However, other

than defining purported Phase I issues in the CMO (which FFIC interprets as the Plan

Proponents' desire to obtain an advisory ruling from the Court on standing outside of the context

of the specific confirmation objections that have been or will be asserted by insurers), the Plan

Proponents have done nothing – including, without limitation, filing a motion to strike or dismiss

the confirmation objections filed by insurers to date – to bring these issues before the Court.

Thus, the Phase I proceeding is premature and out of context, as a decision with respect to

---

Pittsburgh Corning Co., which filed for bankruptcy before the appeal.

standing or "insurance neutrality" can only be made within the context of the specific confirmation objections asserted by insurers.

3.  Regardless, this Phase I process is clearly inapplicable as to FFIC because, as a creditor, it has unquestionable standing to object to confirmation of the Plan, beyond any manufactured argument about its standing because of its status as an Asbestos PI Insurance Entity.   Nevertheless, even in its capacity as an insurer, FFIC has standing to object to confirmation of the Plan because it is a party in interest in these case, and, as explained in more detail below, its rights will be impaired by confirmation of the Plan and its obligations may be burdened by confirmation of the Plan.  Moreover, contrary to the Plan Proponents' suggestion, the Plan is not "insurance neutral."

4.  The Plan contemplates, *inter alia*, that after the Effective Date, the Asbestos PI Trust will (i) have the exclusive right and obligation to review, process and pay Asbestos PI Claims, through the TDP, and (ii) pursuant to an assignment of Asbestos Insurance Rights, seek by litigation or settlement to recover insurance proceeds under certain insurance policies issued by FFIC to Debtors that allegedly provide certain excess insurance coverage to Debtors (collectively, the "Policies").

5.  However, while the Plan, if confirmed, will operate to enable the Asbestos PI Trust to seek to compel FFIC to provide coverage it also will affirmatively abrogate FFIC's contractual rights under the Policies ("FFIC's Contractual Rights") through, *inter alia*, the discharge of Debtors' reciprocal contractual obligations ("Debtors' Contractual Obligations") under the Policies[4] and assignment of the Asbestos Insurance Rights without FFIC's consent.

---

[4]   The FFIC Policies are subject to the same terms and provisions of the underlying insurance as of the effective date of each policy.  In connection therewith, FFIC holds contingent and unliquidated Claims dependant on whether Debtors (and any other possible named insureds) actually perform Debtors' Contractual Obligations as required by the Policies to obtain coverage thereunder, as well as possible claims for reimbursement,

6.    Among FFIC's Contractual Rights are the rights to associate in the defense, investigation, and settlement, and to consent to any proposed settlement, of Asbestos PI Claims (and any other Claims) that may be covered by the Policies.[5]  The Plan contemplates violating FFIC's Contractual Rights by excluding FFIC from the process by which Asbestos PI Claims are to be processed and paid, and for which, later, coverage will be sought.[6]  The Plan also contemplates allowing the Asbestos PI Trust, with the consent of the TAC and FCR, to process and pay Asbestos PI Claims without any involvement by, or consultation from, the Reorganized Debtors or FFIC.  Further, there are no provisions in the Plan or any of the Plan Documents requiring Debtors, Reorganized Debtors, the Asbestos PI Trust, or anyone else, to cooperate with FFIC in connection with the investigation, defense and settlement of Asbestos PI Claims.  There is no provision in the Asbestos PI Trust Agreement or the TDPs setting forth how Debtors, Reorganized Debtors, or the Asbestos PI Trust will satisfy any of the continuing Debtors' Contractual Obligations following the Effective Date.  FFIC submits that the Plan Proponents do not intend to do so, and do not intend for the Asbestos PI Trust to be obligated to do so, all in violation of FFIC's Contractual Rights, which may vitiate any alleged insurance coverage that may exist for otherwise covered Asbestos PI Claims.[7]

7.    Under the Policies Debtors have an affirmative, continuing duty to cooperate with FFIC in the investigation, defense and settlement of all Asbestos PI Claims that may be covered

---

contribution and indemnity and possible premium adjustments related to those Policies.

[5]    An insurer's right to associate in the defense of covered claims is fundamental to the structural and economic relationships that form the basis of an insurance policy.  *See* 43 Am. Jur.2d Insurance § 1384; 7C *J. Appleman, Insurance Law and Practice* § 4681 (Berdal rev. 1979).  This right is so fundamental that its deprivation will vitiate an insurer's obligation to provide coverage under a policy.  *See* 43 Am. Jur.2d Insurance § 1384.

[6]    *See*, e.g., Plan § 7.2; Asbestos PI Trust Agreement § 1.2; and TDP § 2.2, (providing, collectively, that only the Asbestos PI Trust will have the right to evaluate, process and pay Asbestos PI Claims).

[7]    *See* 14 Couch on Ins. § 199:13 (2003) ("As a general rule, an insured's breach of a cooperation clause precludes coverage and releases the insurer from its responsibilities…"); N.Y. JURISPRUDENCE, 2d. ed. (2008) Insurance § 1954; *Davis v. Allstate Ins. Co.*, 204 A.D. 2d 592, 594 (N.Y. App. Div. 1994).

by Policies.  This also is a fundamental policy right as it ensures the necessary alignment of

economic interests between the insurer and its policyholder in defeating and/or minimizing the

policyholder's liability for any unmeritorious claim.[8]  A policyholder's breach of its duty to

cooperate will relieve the insurer from its obligation, if any, to provide coverage under the

policy.[9]

8.   Any insurance coverage allegedly provided by the Policies is further subject to the

prohibition against assignment of the Policies.  Enforcement of anti-assignment clauses in

insurance policies is crucial to maintaining the fundamental bargain between the insurer and

policyholder.[10]  The Plan, however, contemplates that Debtors and other Insurance Contributors

will assign their Asbestos Insurance Rights under the Policies to the Asbestos PI Trust

notwithstanding anti-assignment provisions in the Policies.  *See* Plan § 7.2.2.  The Policies are

not subject to assignment without FFIC's express consent, which has neither been sought from

nor given by FFIC.[11]

9.   Confirmation of the Plan, with implementation of the TDP, along with the

discharge, release and exculpation provisions of the Plan, combined with the assignment of

Asbestos Insurance Rights to the Asbestos PI Trust without FFIC's consent, will result in

---

[8]   *See* 43 Am. Jur.2d Insurance § 1420.

[9]   *Id.*

[10]   *See* 43 Am.Jur.2d Insurance § 785; *Caldwell Trucking PRP Group v. Spalding Composites Co.*, 890 F.  Supp. 1247, 1260-61 (D.N.J. 1995) (holding that assignment of insurance rights would violate "essence of the contract" because, *inter alia*, it would create an economic incentive for policyholders to maximize insurance pay-out, which is inconsistent with policyholder's obligation to cooperate in its own defense).  Moreover, breach of the anti-assignment clause will vitiate an insurer's further obligations to provide coverage under the policy.  *See* 43 Am.Jur.2d Insurance § 785.

[11]   *See* 11 U.S.C. § 365(c)(1)(A) (debtor cannot assume or assign a contract if applicable law excuses non-debtor from accepting performance from entity other than debtor); *Allied Corp. v. Frola*, 1992 WL 281114 (D. N.J. 1992) (Wolin, J.) (finding that policies were not assignable and discussing authority); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 3d Cir. 1989) ("[S]ince insurance is a personal contract between the insurer and the named insured and on behalf of others specifically provided for, coverage terminates when contract is assigned or transferred without the consent, permission, and approval of both contracting parties.") (citations omitted); *but see Hartford Accident and Indemnity Company v. Global Industrial Technologies, Inc.*, C.A. No. 07-1749 (W.D. Pa., July 25, 2008), slip. op. at 12-14 (on appeal) [Federal-Mogul].

wholesale violations of FFIC's Contractual Rights, including those outlined above. For example, if implemented, the TDP will violate FFIC's Contractual Rights to, *inter alia*, ensure that appropriately rigorous standards are utilized for evaluation and allowance of Asbestos PI Claims. As such, the Plan is contrary to the provisions of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), and results in a Plan that cannot possibly be "insurance neutral."

10. The release and exculpation provisions of the Plan at Article VIII and § 11.9 are overly broad and do not comply with the standards for releases under applicable Third Circuit law.

11. The Plan does not comply with § 524(g) of the Bankruptcy Code.

12. Accordingly, FFIC objects to confirmation of the Plan on the following grounds.

**Objections To Confirmation**

13. A "court shall confirm a plan only if all of the . . . requirements [of this section] are met . . ." *See* § 1129(a) of the Bankruptcy Code.

**I. The Plan Is Not Insurance Neutral Because It Violates FFIC's Contractual Rights Under Applicable Law And, Therefore, Does Not Satisfy The Requirements Of § 1129(a)(3)**

14. Section 1129(a)(3) of the Bankruptcy Code provides that a plan may be confirmed "only if [it] has been proposed in good faith and not by any means forbidden by law." Courts that have considered this provision have held that the language "forbidden by law" incorporates all applicable non-bankruptcy law.[12]

---

[12] *In re Zenith Elec. Corp.*, 241 B.R. 92, 107-08 (Bankr. D. Del. 1999) (determining whether a transaction between a controlling shareholder and its corporation contemplated in the debtor's plan violated Delaware corporate law). *See also Collier on Bankruptcy* ¶ 1129.03 [3] [a] [ii] ("section 1129(a)(3) requires that the proposal of the plan comply with all applicable law, not merely the bankruptcy law"); *In re Cajun Elec. Power Coop., Inc.*, 230 B.R 715, 737 (M.D. La. 1999) (finding that the plan did not satisfy the good faith requirement of § 1129(a)(3) because it attempted to improperly modify contracts, contrary to established state cooperative law); *In re Mahoney*, 80 B.R. 197, 200-03 (Bankr. S.D. Cal. 1987) (denying confirmation of a plan containing provisions which violated state's

7

15.  There is no authority in the Bankruptcy Code providing for, or defining what constitutes, "insurance neutrality."  In *Combustion Engineering*, the Third Circuit recognized that plans can be insurance neutral when the plan leaves ***unaltered*** parties' claims, defenses, rights or causes of action under subject insurance policies and, by the terms of the plan, those claims, defenses, rights or causes of action pass through the bankruptcy case ***unaffected*** by the terms of the plan.  *See Combustion Engineering,* 391 F.3d 190, 218 (3d Cir. 2005).  For a plan to be truly "neutral" with respect to insurance policies and claims relating thereto, such as those based on violation of FFIC's Contractual Rights, it must not impair an insurer's rights under such policies.  Here, Debtors' Plan does not leave FFIC's claims, defenses, rights and/or causes of action unimpaired because the Plan impermissibly alters FFIC's Contractual Rights and relieves Debtors from their reciprocal Debtors' Contractual Obligations.[13]

---

corporations law).

[13]  Plan Proponents assert that FFIC has no standing to pursue Plan objections because the Plan is "insurance neutral."  FFIC does have standing to pursue Plan objections based on its status as a creditor in relation to the Bond.  Furthermore, FFIC has standing in its capacity as an insurer because the Plan is not "insurance neutral".

SL1 923749v1/021630.00003

A.      **The Plan Is Not Insurance Neutral Because It Purports To Assign FFIC's Policies Without FFIC's Consent**

16.     It is axiomatic that bankruptcy does not expand or otherwise alter a debtor's right or interest in an asset of the estate.   Upon bankruptcy, Debtors rights (if any) under the Policies were limited by the terms and conditions thereof, including anti-assignment provisions.  Debtors' non-assignable interest in the Policies did not become an assignable interest merely by becoming property of the estate.  Rather, as the Third Circuit stated in *Combustion Engineering*, "[t]o the extent such an interest [transferred to the estate] is limited in the hands of the debtor, it is equally limited in the hands of the estate."   Accordingly, Debtors' rights under the Policies are limited by the anti-assignment provisions thereof.

17.     FFIC is well aware of this Court's rulings in other cases that insurance policy anti-assignment clauses are preempted in § 524(g) cases by § 1123(a)(5).  FFIC respectfully disagrees with the Court's analysis of this issue, which it believes is incorrect; and notes that appeals are pending in the Third Circuit Court of Appeals in two cases in which this Court has ruled on this issue.  To avoid belaboring the point here, but in order to fully preserve its arguments for appeal, FFIC will include in its trial brief on Phase II issues an accompanying Appendix containing the arguments it will raise on this issue.

18.     Nevertheless, § 7.15 does not render the Plan insurance neutral as the purported assignment of Asbestos Insurance Rights does more than simply alter FFIC's Contractual Rights by purporting to bind Asbestos Insurance Entities to the transfer of Asbestos Insurance Rights under the Asbestos Insurance Transfer Agreement.  Further, and notwithstanding § 7.15, Asbestos Insurance Entities are subject to the releases and injunctions set forth in Article XIII of the Plan.  *See* Plan §§ 7.15(g) and (h).

SL1 923749v1/021630.00003

19. In this regard the Plan does not satisfy § 1129(a)(3) because it proposes to assign Asbestos Insurance Rights to the Asbestos PI Trust while discharging Debtors' Contractual Obligations and without the Asbestos PI Trust being required to assume such obligations. Even if, *arguendo*, the Asbestos Insurance Rights can be assigned, the Asbestos PI Trust must then be bound to perform the reciprocal Debtors' Contractual Obligations. Since the terms of the Plan excuse Debtors from such (inconvenient) obligations and do not require the Asbestos PI Trust to assume them, the Plan does not comply with § 1129(a)(3) the Bankruptcy Code with respect to FFIC. Thus, the Plan does not comply with the Bankruptcy Code with respect to FFIC, as the terms of the Policies must "ride through" and remain binding on a reorganized debtor (or its successor) after confirmation of a plan (in order to ensure compliance with § 1129(a)(3), effect true insurance neutrality, and to provide that the Plan is fair and equitable as to FFIC).[14]

20. The Plan's purported involuntary assignment of the Policies to the Asbestos PI Trust is in contravention of state law, and would vitiate any coverage otherwise available thereunder. Plan § 7.15(g) cannot eliminate such a violation of FFIC's Contractual Rights as a defense to coverage available to FFIC post-Confirmation.

**B.** **The Plan Is Not Insurance Neutral Because It Purports To Enjoin FFIC's Contribution Claims Against Non-Debtor Entities**

21. Section 7.15 of the Plan is not "insurance neutral" because it impairs FFIC's right to assert Contribution Claims against Settled Asbestos Insurance Companies (which are channeled to the Asbestos PI Trust as an offset claim). *See* Plan §§ 7.15(i) and 8.2.1. This provision is harmful to FFIC because it could eliminate FFIC's right to assert Contribution Claims against other insurers under general insurance law.

---

[14] *See, e.g., In re Stewart Foods, Inc.*, 64 F.3d 141, 145 (4th Cir. 1995) (terms of contract binding); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 119, 1153 (3d Cir. 1989) (debtors bound by arbitration clause in contract); *Texas Pacific Indemn. Co. v. Atlantic Richfield Co.*, 846 S.2d 580, 585 (Tex. App. 1993) (enforcing anti-assignment provision in bond despite bankruptcy trustee's attempt to assign).

10

22.  The "remedy" provided in § 7.15(i) for otherwise enforceable Contribution Claims against non-debtor entities, including Settled Asbestos Insurance Companies, leaves a non-settling Asbestos Insurance Entity, such as FFIC, without the same set of rights that it would have had absent the impairments arising solely as a result of this Plan being confirmed.  *See* Plan §§ 7.15(i) and 8.2.1.  Enjoining the Contribution Claims in this way violates FFIC's non-bankruptcy law rights against the non-debtor entities.

### C.    The Plan Impermissibly Alters and Impairs FFIC's Contractual Rights and Debtor's Contractual Obligations

23.  The Plan is not "insurance neutral" because it impairs FFIC's Contractual Rights and releases Debtors' Contractual Obligations while purporting to grant unfettered rights to the Asbestos PI Trust to seek insurance coverage under the artificially-impaired Policies

24.  Although § 7.15 purports to allow Asbestos Insurance Entities to maintain Asbestos Insurer Coverage Defenses, such provision is illusory and inadequate without allowing an insurer the same set of rights it has outside of bankruptcy to participate in the investigation of Asbestos PI Claims and to defend against unmeritorious Asbestos PI Claims.

25.  The Plan is not insurance neutral, and does not satisfy § 1129(a)(3) of the Bankruptcy Code, because it violates FFIC's Contractual Rights to associate in the investigation, defense and settlement, and in consenting to settlement, of Asbestos PI Claims, for which the Asbestos PI Trust will seek coverage from FFIC under the Policies.[15]

---

[15]  In *In re The Wallace & Gale Co.*, No. 85-4-0092 (Chapter 11) (Bankr. D. MD. July 22, 1998), Transcript Of Oral Ruling, the bankruptcy court was asked to confirm a proposed plan of reorganization that – like the Plan – purported to eliminate insurers' rights regarding the defense, investigation, and settlement of asbestos-related bodily injury claims for which coverage was sought.  In a ruling from the bench, the *Wallace & Gale* court denied confirmation of the plan and acknowledged the importance of the insurers' contractual rights, holding that a plan that violates such rights cannot be confirmed:

> If it is to be liable for any judgment rendered against the insured, [an insurer] has a right to make certain that a proper defense is made to the claim and that unwarranted or overstated and conclusive claims are exposed and defeated. . . .

SL1 923749v1/021630.00003

26.   The Plan provides the Asbestos PI Trust with the exclusive right and obligation to review, process and pay Asbestos PI Claims, without allowing for the participation of FFIC in the process, thus violating FFIC's Contractual Rights with respect to Debtors' (or any other purported rights holders under the Policies) ongoing duty of cooperation under the Policies. Further, FFIC may demand that Debtors, Reorganized Debtors, or the Asbestos PI Trust comply with Debtors' Contractual Obligations to FFIC by objecting to, and seeking the disallowance of, unmeritorious Asbestos PI Claims.  Their failure to do so, and the discharge and/or release of such Debtors' Contractual Obligations by operation of the Plan, would constitute a further violation of the duty of cooperation and of FFIC's Contractual Rights.

27.   The Plan is not insurance neutral, and does not satisfy § 1129(a)(3) of the Bankruptcy Code because it, in effect, unilaterally re-writes the Policies by discharging Debtors' Contractual Obligations, while also enjoining FFIC from seeking to enforce performance of Debtors' Contractual Obligations, all while permitting the Asbestos PI Trust to seek coverage from FFIC under the Policies through the involuntary assignment of Asbestos Insurance Rights. *See* Plan § 7.15(h).

28.   The Plan does not satisfy § 1129(a)(3) because it improperly provides for claimants' submissions to the Asbestos PI Trust to be kept secret.  *See* § 6.5 of the TDP.  Such artificial confidentiality requirements violates FFIC's Contractual Rights and will adversely affect all non-settled insurers by, at the very least, promoting the payment of non-meritorious

---

I find that the cornerstone of the Plan is the wrenching away of these controls bargained for by the [insurance] carriers.  And in placing these same controls in the hands of the persons suing the Debtor.

Trans. at 119-21 (citing *Sherwood Brands, Inc. v. Hartford Acc. & Indem.*, 347 Md. 32, 698 A.2d 1078 (1997)). Debtors cannot unilaterally abrogate FFIC's Contractual Rights and/or the statutory rights to participate in the defense of unmeritorious Asbestos PI Claims, or other Claims that may allegedly be subject to coverage from FFIC, without jeopardizing alleged insurance coverage that might otherwise be available.

claims.[16]  Enforced secrecy in the claims resolution process, while coverage is sought from

FFIC, means that FFIC might not even be able to discover the basis on which payment was made

by the Asbestos PI Trust on an Asbestos PI Claim that has been tendered for payment to FFIC

under the Policies.  Thus, the Plan impairs FFIC's Contractual Rights by declaring the

documents submitted in support of an Asbestos PI Claim to be "privileged" and entitled to

"confidential" treatment and, as such, beyond the reach of an insurer that is otherwise

contractually-entitled to that information from its insured.  The Plan thus would impair FFIC's

Contractual Rights because the preemptive declaration in the TDP that Asbestos PI Claim

submissions are "privileged" and/or "confidential," would present an impediment preventing

insurers from enforcing their rights and defenses that is not otherwise present in the tort system.

Moreover, this structural lack of transparency in the claims resolution process is an invitation to

collusive, or even fraudulent, practices.  Despite its existing rights under the Policies, such

offensive provision of the TDP would impose upon FFIC an unnecessarily heavy burden of

proving entitlement to such artificially "privileged" and/or "confidential" information

        29.  The Plan does not satisfy § 1129(a)(3) because it, in effect, unilaterally re-writes

the Policies by discharging Debtors' Contractual Obligations, while also enjoining FFIC from

seeking to enforce performance of Debtors' Contractual Obligations, all while permitting the

Asbestos PI Trust to seek coverage from FFIC under the Policies through the involuntary

assignment of Asbestos Insurance Rights.  *See* Plan § 7.15(h).

        30.  The Plan does not satisfy § 1129(a)(3) because, contrary to FFIC's rights under

applicable non-bankruptcy law, the TDP does not require that proceeds from Asbestos Insurance

---

[16]    The TDP purports to require that the Asbestos PI Trust hold all materials submitted by an Asbestos PI Claimant
as confidential, and only allows the Asbestos PI Trust, in specific limited circumstances (which are not
identified), to disclose the contents of the materials to the applicable insurance company after obtaining the
consent of the TAC and the FCR.  *See* TDP § 6.5.

13

Settlement Agreements – or from other settlements – first be applied to the payment of allowed Asbestos PI Claims before insurance coverage is sought from non-settled insurers.

31. The Plan does not satisfy § 1129(a)(3) because its release and injunction provisions impair FFIC's Contractual Rights including, without limitation, any (i) rights of subrogation, contribution, recoupment and setoff; (ii) rights to require the insured to pay any retrospective premiums, deductibles and self-insured retentions; and (iii) rights to enforce performance of Debtors' Contractual Obligations. *See* Plan §§ 7.15(h), 11.9, and Article VIII.[17]

32. The Plan does not satisfy § 1129(a)(3) because its exculpation provision is impermissibly broad because it violates the rule against prospective waivers of malpractice claims, and it may also violate applicable state trust law. *See* Plan § 11.9.

33. Finally, in the face of the overwhelmingly compelling evidence that Debtors presented in support of the Estimation Motion, the entire Asbestos PI Settlement – as implemented by the TDP provisions that allow the Asbestos PI Trust to settle Asbestos PI Claims without the involvement of FFIC and then present that settled claim to FFIC for payment – is a voluntary (and, perhaps, collusive) payment in violation of the consent to settle requirements of the Policies. Under the totality of the circumstances, this attempt to bind FFIC is in violation of FFIC's Contractual Rights and is not "insurance neutral."

## II. The Plan Does Not Satisfy The Requirements For Confirmation Pursuant To § 1129(a)(1) of the Bankruptcy Code

34. The Plan does not satisfy § 1129(a)(1) because it fails to comply with the requirements contained in § 1123(a)(5). Section 1123(a)(5) of the Bankruptcy Code requires that

---

[17] A bankruptcy court cannot alter or enlarge an insurer's contractual obligations. *See Coupon Clearing Serv.*, 113 F.3d at 1099 ("[T]he estate ha[s] no greater rights in property than those held by the debtor prior to bankruptcy."); *Moody v. Amoco*, 734 F.2d at 1213 (the Bankruptcy Code is not intended to expand debtor's rights against others more than they exist at the commencement of the case). Moreover, as a matter of applicable non-bankruptcy law, the abrogation of FFIC's Contractual Rights may excuse FFIC from any obligations to provide otherwise allegedly applicable coverage for Asbestos PI Claims. *See* 14 Couch on Ins. § 199:13 (2003).

SL1 923749v1/021630.00003

a Plan contain adequate means for its implementation.  Here, although the Plan contains a channeling injunction under § 524(g) of the Bankruptcy Code, the Plan makes clear that a non-settling insurer that enters into a post-confirmation settlement agreement cannot obtain the benefits of the § 524(g) injunction.[18]  Because the transfer of Asbestos Insurance Rights to the Asbestos PI Trust is designed to partially fund the Asbestos PI Trust's payment of Asbestos PI Claims, it should be structured to permit the maximum potential recovery from Asbestos Insurance Entities.  In this respect, therefore, the Plan's failure to allow for post-Confirmation settling insurers to gain the benefit of the channeling injunction results in the Plan lacking sufficient means for implementation

        35.   The Plan's artificial and non-statutorily based timing restriction of obtaining the Asbestos PI Channeling Injunction, solely as a means of securing a litigation advantage for Plan Proponents, also runs afoul of  § 1129(a)(1) because it fails to comply with the requirements contained in § 524(g) of the Bankruptcy Code.[19]  Section 524(g) does not authorize imposition of the artificial timing requirement that Plan Proponents have attempted to build into the Plan. Where a plan of reorganization is otherwise confirmable under Chapter 11 and, further, meets the various requirements of § 524(g), the district court "may issue . . . an injunction in accordance with this subsection to supplement the injunctive effect of a discharge under this section."  11 U.S.C. § 524(g)(1)(A).

---

[18]    Definition 200 of the Plan defines "Settled Asbestos Insurance Company" to mean "any Asbestos Insurance Entity that has entered into an Asbestos Insurance Settlement Agreement *prior to the conclusion of the Confirmation Hearing* . . ."  (Emphasis added).

[19]    FFIC notes that in other § 524(g) cases presided over by this Court, including Federal-Mogul Global, Inc., Case No. 01-10578 (JKF), there has been no artificial deadline imposed in the confirmed plan with respect to the inclusion of post-confirmation settling insurers within the protections available to insurers under § 524(g).

15

36.  Section 524(g) then sets forth the requirements that must be met before such a supplemental injunction may issue.[20]  One such requirement is that the third party must qualify under § 524(g)(4)(A)(ii), as having the kind of connection with the debtor that justifies § 524(g) relief.  Every one of Debtors' insurers indisputably meets this requirement.[21]  Another such requirement is that "the ***court*** determines," before entering the confirmation order, that identifying the third party (by name or as part of an identifiable group) in such injunction "is fair and equitable with respect to" potential future asbestos claimants who would be subject to the injunction, "in light of the benefits provided, or to be provided, to such trust on behalf of . . . such third party."[22]

37.  If these two requirements are satisfied, and if the Plan meets the other requirements of §§ 1129(a) and 524(g), then the insurer is entitled to be protected under the supplemental injunction issued pursuant to § 524(g).[23]  Nowhere, however, does § 524(g) purport to allow Plan Proponents to impose any restriction, timing-related or otherwise, on the District Court's power to find that an insurer has made a "fair and equitable" contribution to the trust justifying the extension of the channeling injunction to such insurer.  Indeed, § 524(g) plans and confirmation orders regularly acknowledge that the district court's power to provide insurers with the protection of a channeling injunction is not time-limited.  Thus, the Plan's artificial

---

[20]  "To achieve this relief [provided by § 524(g)], a debtor must satisfy the perquisites set forth in § 524(g) in addition to the standard plan confirmation requirements."  Combustion Eng'g, 391 F.3d at 234.

[21]  *See* 11 U.S.C. § 524(g)(4)(a)(ii)(III) (authorizing issuance of a supplemental channeling injunction in favor of any third party whose alleged liability arises from "the third party's provision of insurance to the debtor or a related party").

[22]  11 U.S.C. § 524(g)(4)(B)(ii) (emphasis added).  Similarly, § 524(g)(1) states that "*a court* that enters an order confirming a plan of reorganization under chapter 11 may issue" a supplemental injunction under § 524(g).  (Emphasis added.)  It is clear from the statute that these references to "court" are to the District Court, not this Bankruptcy Court.  *See* 11 U.S.C. § 524(g)(3) (the channeling injunction is valid only if the confirmation order is "issued or affirmed by the district court that has jurisdiction over the reorganization case").

[23]  *See* In re Western Asbestos, 313 B.R. 822, 855 (Bankr. N.D. Cal. 2003) ("While an injunction is an equitable remedy, in this instance, the equities are built into [§ 524(g)].  If those equities are satisfied, the Court does not believe that it has the discretion to limit the effect of the supplemental injunction to something less than that permitted by statute").

time-restriction as to current unsettled insurers obtaining the benefits of the Asbestos PI

Channeling Injunction are impermissible under §§ 524(g) and 1129(a)(1) of the Bankruptcy

Code.

38.   Finally, the Plan does not satisfy § 1129(a)(1) because it fails to comply with the

requirements contained in § 524(g)(2)(B)(i)(II) of the Bankruptcy Code.

Section 524(g)(2)(B)(i)(II) provides that an asbestos personal injury trust "is to be funded in

whole or in part by the ***securities of 1 or more of the debtors*** involved in such plan . . . ."

(Emphasis added.)  Under the Plan, Debtors are contributing the Warrants to the Asbestos PI

Trust.  *See* Plan § 7.1.4.  The Warrants are not "securities" because they are not available to the

Asbestos PI Trust for immediate funding and are not items held or traded for investment

purposes or for a profit stream.  Moreover, FFIC submits that the Warrants have no current value

and have no certainty of attaining any value after confirmation of the Plan.  Thus, the granting of

the Warrants to the Asbestos PI Trust is illusory with respect to conformity with

§524(g)(2)(B)(i)(II) of the Bankruptcy Code.

39.   The Plan does not satisfy § 1129(a)(3) because the Asbestos PI Trust's exclusive

right to review, process and pay Asbestos PI Claims, without any involvement by the Court or

non-settled insurers (from whom coverage will be sought for payment of such claims) violates

§ 502 of the Bankruptcy Code (as well as FFIC's Contractual Rights under the Policies).

Implementation of the TDP will deprive FFIC of its statutory right under § 502(a) of the

Bankruptcy Code to prosecute objections to the allowance of unmeritorious Asbestos PI Claims,

which are independent of FFIC's Contractual Rights.[24]

---

[24]   *See* 11 U.S.C. § 502(a); *In re Keck, Mahin & Cate*, 241 B.R. 583, 596 (Bankr. N.D. Ill. 1999)(finding that
professional liability insurer is a party in interest with standing to object to plan provisions affecting its
interests); *In re Standard Insulations, Inc.*, 138 B.R. 947 (Bankr. W.D. Mo. 1992) (holding that insurers were
parties in interest under §§ 1109(b) and 502(a) due to their possible responsibility to cover claims arising from

SL1 923749v1/021630.00003

40.  The Plan does not satisfy § 1129(a)(3) to the extent that it contains third-party release provisions and injunctions that are extremely broad with respect both to the entities being released and with respect to the claims to be released.  *See* Article VIII of the Plan.  This includes, without limitation, the Plan's broad definition of Asbestos Protected Parties, which makes it impossible to know exactly who is covered by the Asbestos PI Channeling Injunction.  Similarly, the Asbestos Insurance Entity Injunction and the various Releases identified in § 8.8 of the Plan are overly, and unnecessarily, broad.

41.  The Plan does not satisfy § 1129(a)(3) to the extent that it attempts to confer jurisdiction, contrary to 28 U.S.C. § 157, over non-core matters, such as insurance coverage disputes or other adjudication of FFIC's rights and obligations under the Policies, upon the Bankruptcy Court.  This includes, without limitation, any possible adjudication of FFIC's rights against any affiliate, released party, or any other non-debtor third party.[25]

42.  The Plan does not satisfy § 1129(a)(4) because the compensation to be provided to the members of the TAC by the Asbestos PI Trust is not set forth in the Plan or in any of the Plan Documents.

43.  The Plan does not satisfy § 1129(a)(5)(A)(ii) in that the TAC is in a position to effectively control the Asbestos PI Trust, which is a successor to Debtors with respect to

exposure to debtor's products during the covered periods).

[25]  To the extent that the Plan contemplates that proceeds of the Policies will be a source for payment of Asbestos Trust Claims, neither the Plan nor the Confirmation Order may adjudicate the existence or extent of insurance coverage under the Policies, rights to payments under the Policies or coverage for any particular Asbestos Trust Claim.  *See Beard v. Braunstein*, 914 F.2d 434, 445 (3d Cir. 1990) (holding that an action "involving pre-petition contracts, allegedly breached both before and after the filing of a petition, is entirely a non-core matter"); *Amatex*, 107 B.R. at 863 (determining that an adversary proceeding seeking declaratory relief concerning insurance coverage for asbestos-related claims is a non-core matter), *aff'd*, 908 F.2d 961 (3d Cir. 1990); *Sullivan v. Maryland Cas. Co. (In re Ramex, Int'l, Inc.)*, 91 B.R. 313, 315 (Bankr. E.D. Pa. 1988) (stating that a "cause of action for declaratory judgment under a policy of insurance issued to the debtor pre-petition is not a core proceeding"); *In the Matter of United States Brass Corp.*, 110 F.3d 1261, 1268-9 (7th Cir. 1997) (holding that an action between a debtor and its insurer to resolve a coverage dispute is non-core).

SL1 923749v1/021630.00003

Asbestos Insurance Rights, and the appointment of the members of the TAC is not consistent with the interests of creditors or with public policy.

### III. The Plan Is Not Proposed In Good Faith As To FFIC Or Otherwise, And, Therefore, Does Not Satisfy The Requirements Of § 1129(a)(3)

44. Plan Proponents have proposed a Plan that intentionally impairs FFIC's rights in contravention of § 1129(a)(3) of the Bankruptcy Code. Accordingly, the Plan is not proposed in good faith with respect to FFIC. In this regard, FFIC incorporates its objections outlined in Part I above.

45. Further, FFIC submits that Debtors' own statements demonstrate that the Plan is not proposed in good faith with respect to the proposed treatment of Asbestos PI Claims, as the terms of the Asbestos PI Trust Agreement and the TDP are such that non-meritorious -- or possibly even fraudulent -- Asbestos PI Claims will be allowed and paid as a result of confirmation of the Plan and implementation of the TDP.[26]

46. The Plan is not proposed in good faith because it subjects non-settling insurers to increased risk of possible obligations through the TDP's unreasonable claim allowance criteria, which will ensure compensation of meritless claims. This is demonstrated by, *inter alia*:

    (a) The very general and non-specific language used in the TDP; and

---

[26] In their original disclosure statement filed on November 13, 2004 [Docket No. 6896] (the "First Disclosure Statement"), Debtors stated:

> In the Debtors' view, only a small portion of the Asbestos PI Claims allege even a prima facie case of any functional impairment attributable to exposure to the Debtors' products.

First Disclosure Statement § 2.4.1. As recently as March 2008, Debtors' position was that their aggregate liability for present and future Asbestos PI Claims was between $385 million and $1.314 billion, with a median value of $712 million. *See* Debtors' Expert Report by B. Thomas Florence, Ph.D., dated June 18, 2007, at p. 3 [Docket No. 16116]. Yet, in April 2008, Debtors did an about-face, agreeing, without insurer involvement or consent, to spend over $2 billion in payment of Asbestos PI Claims. *See* Plan §§ 1.1.40 and 7.2.2. In addition to violating the good faith requirements of the Bankruptcy Code, Debtors' voluntary acceptance of such substantial asbestos liability has a direct and adverse impact on FFIC' Contractual Rights, which is belied by characterizing the Plan as "insurance neutral."

(b)  The absolute and unfettered discretion that can be exercised by the Trustees -- as directed by the TAC and FCR – in processing and paying Asbestos PI Claims.

47.  Pursuant to the overly lax medical and exposure standards of the TDP,  claimants are effectively relieved from their legal obligation to demonstrate negligence and causation, and instead required simply to submit a claim form providing generic information regarding the nature of the alleged Asbestos PI Claim.

48.  The TDP would allow claimants that have received adverse results in the tort system for the same asbestos-related claim against other defendants nevertheless to recover from the Asbestos PI Trust.[27]

49.  The TDP requires a claimant to provide a statement from a physician in connection with an Asbestos PI Claim; however, there are no safeguards in place to ensure that those statements are credible, or whether the physician providing such statements must be board-certified as a specialist in radiology, pathology or other specialties.[28]

50.  Not only does the artificial confidentiality of claimants' submissions to the Asbestos PI Trust, as mandated by the TDP, *see* TDP § 6.5, violate FFIC's Contractual Rights (as discussed in Part I above), it also demonstrates the lack of good faith with respect to the process by which Asbestos PI Claims will be processed and paid.  In effect, when the Asbestos PI Trust seeks coverage from FFIC with respect to an Asbestos PI Claim, the only parties that will know what evidence was presented with respect to the claim -- and the basis on which the claim was paid, and for which coverage is sought -- will be those persons, including claimants'

---

[27]  *See* TDP § 5.7(a)(2)("In addition, claimants who otherwise meet the requirements of this TDP for payment of a PI Trust Claim shall be paid irrespective of the results in any litigation at anytime between the claimant and any other defendant in the tort system.").  If such adverse result was due to a circumstance that would be equally applicable to Debtors (*i.e.*, that the claimant has no impairment, or that such impairment was not due to exposure to asbestos) then the TDP similarly should bar such claimants from obtaining compensation from the Asbestos PI Trust.  Failure of the TDP to so provide demonstrates the lack of good faith in this arrangement and how meritless claims will be "processed and paid" by the Asbestos PI Trust.

[28]  *See In re Silica Products Liability Litig.*, 398 F.Supp. 2d 563 (S.D. Tex. 2005) (highlighting potential abuses in the medical screening/diagnosis process for mass tort claims).

counsel, with a fiduciary duty to claimants.  FFIC will not have such information and would not

be entitled to such under the TDP unless it can obtain an order from the Court directing the

Asbestos PI Trust to disclose this most basic of information.

51.  The Plan is not proposed in good faith from the perspective of non-settled insures,

including FFIC, to the extent it represents a voluntary settlement that, because non-settled

insurers' consent was not solicited, will vitiate otherwise available insurance coverage.

Significantly, after pursuing estimation of Asbestos PI Claims for over four years, on April 6,

2008, the Plan Proponents entered into the Asbestos PI Settlement.  As a result, Debtors have

abandoned their most fundamental position in this bankruptcy case that "most [of the] Asbestos

Claims have no value."  *See* Disclosure Statement at p. 67.  If the Plan Proponents complete

reversal on the value of Asbestos PI Claims is based on something other than credible medical

evidence of disease and causal connection to Debtors' operations or products, any alleged

coverage that the Policies may otherwise provide will be vitiated as a result of the Plan's

numerous impairments to FFIC's Contractual Rights.

### IV.  The Plan Cannot Be Confirmed Because It Is Not Fair And Equitable As To FFIC And Therefore Does Not Satisfy The Requirements of § 1129(b)

52.  Section 1129(b) of the Bankruptcy Code states, in pertinent part, that "the court . .

. shall confirm a plan . . . if the plan does not discriminate unfairly, and is fair and equitable . . .

."  *See* 1129(b) of the Bankruptcy Code.

53.  FFIC is entitled to fair and equitable treatment of its rights under, interests in, and

potential Claims arising out of, the Policies.  Because the Plan does not provide fair and

equitable treatment to FFIC, it does not satisfy § 1129(b) of the Bankruptcy Code with respect to

FFIC, as follows.

SL1 923749v1/021630.00003

54.  Specifically, the discharges and injunctions contained in the Plan impermissibly impair FFIC's post-Effective Date rights to enforce satisfaction of Debtors', Reorganized Debtors' and/or or the Asbestos PI Trust's continuing duties and obligations under the Policies, as well as any possible rights of set-off, recoupment, contribution, reimbursement and subrogation.  *See* Plan §§ 7.15(h) and Article XIII.  In this respect, the Plan is not fair and equitable to, and unfairly discriminates against, FFIC because it makes FFIC potentially liable to provide insurance coverage and other performance under the Policies while depriving FFIC of its corresponding ability to exercise its rights, and enforce its remedies, thereunder.  *Id.*

55.  In addition, the Plan improperly proposes to re-write the terms of the Policies.  A debtor "cannot unilaterally impose coverage terms on [the insurers] ...."[29]  To the extent that the Plan purports to assign any of the Policies without the prior express consent of FFIC and without expressly requiring Debtors, Reorganized Debtors and/or or the Asbestos PI Trust, as the case may be, to assume all of the duties and obligations of the insured thereunder, it impermissibly attempts to unilaterally modify the terms of the Policies.

56.  The Plan also violates the jurisdictional limitations of 28 U.S.C. § 157 because it improperly attempts to confer jurisdiction upon the Bankruptcy Court for non-core matters that may involve adjudication of FFIC's rights and obligations under the Policies.  *See* Plan § 7.15(e).  This includes, without limitation, any possible adjudication of FFIC's rights against any affiliate, released party, or any other non-debtor third party.  To the extent that the Plan contemplates that proceeds of the Policies will be a source for payment of Asbestos PI Claims, neither the Plan nor

---

[29]  *Certain Underwriters at* Lloyd's, *London v. McDermott Int'l Inc.*, 2002 U.S.  Dist.  Lexis 874* 32 (E.D. La. 2002); *In re Ames Dept.  Stores, Inc.*, 1995 WL 311764 (S.D.N.Y.  May 18, 1995) (bankruptcy court does not have the authority to rewrite the terms of an insurance policy and impose requirements upon the insurer which were not part of the parties' bargains).

SL1 923749v1/021630.00003

the Confirmation Order may adjudicate the existence or extent of alleged coverage under the

Policies or alleged coverage for any particular Asbestos PI Claim.

### Reservation Of Rights

57.  FFIC expressly reserves, and does not waive, all of its rights, defenses, limitations

and/or exclusions in connection with FFIC's Contractual Rights, Debtors' Contractual

Obligations, applicable law or otherwise.  FFIC further reserves all rights to assert any and all

such rights, defenses, limitations and/or exclusions in any appropriate manner or forum

whatsoever (including, without limitation, any of its rights to have any non-core matter relating

to the interpretation of FFIC's Contractual Rights and Debtors' Contractual Obligations

adjudicated by the United States District Court).  Nothing contained in this Objection shall be

deemed to expand any alleged coverage that may otherwise be available under any insurance

policies or any alleged rights to payment under any settlements.

58.  FFIC further reserves all of its rights to raise the issues contained in this Objection

and any other related issues in any procedurally-appropriate contested matter and/or adversary

proceeding including, without limitation, objections to confirmation of the Plan and a separate

adversary proceeding requesting any appropriate declaratory and/or injunctive relief with respect

to any of FFIC's Contractual Rights and Debtors' Contractual Obligations that may be adversely

affected by confirmation of the Plan.

59.  FFIC further reserves all of its rights to object to any claim for coverage under

any of the Policies and/or any claim for payment under any settlement agreements, and/or to seek

declaratory and/or injunctive relief to the extent that treatment of FFIC's Contractual Rights,

Debtors' Contractual Obligations, and/or confirmation of the Plan violates any terms or

conditions of any of the Policies and/or settlements or gives rise to any defenses on behalf of

FFIC.

SL1 923749v1/021630.00003

60.  Nothing in this Objection shall be construed as an acknowledgment that any of the Policies, or pre-petition settlement agreements, cover or otherwise apply to any Claims, losses or damages on account of any Claims or otherwise, or that any such Claims or causes of action are eligible for payment.  FFIC reserves the right to seek an adjudication that Debtors have waived or forfeited any allegedly available coverage under the Policies.

61.  Finally, FFIC reserves its right to amend, modify or supplement this Objection in response to, or as a result of any discovery or investigation being conducted in connection with confirmation of the Plan and/or any submission in connection with the Plan or this case filed by any party-in-interest.  FFIC also reserves the right to adopt any other objections to confirmation of the Plan filed by any other party.

SL1 923749v1/021630.00003

## Conclusion

WHEREFORE, FFIC objects to confirmation of the Plan and requests such relief as the Court deems just and proper.

Dated:  May 20, 2009                    STEVENS & LEE, P.C.

/s/ *John D. Demmy*
John D. Demmy (DE Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

-and-

Leonard P. Goldberger
Marnie E. Simon
(Members PA Bar)
1818 Market Street, 29th Floor
Philadelphia, PA 19103-1702
Telephone:  (215) 751-2864/2885
Telecopier:  (610) 371-7376/8505
Email: lpg@stevenslee.com
Email: mes@stevenslee.com

ATTORNEYS FOR FIREMAN'S FUND
INSURANCE COMPANY, ALLIANZ S.p.A., f/k/a
RIUNIONE ADRIATICA DI SICURTA, AND
ALLIANZ SE, f/k/a ALLIANZ
AKTIENGESELLSCHAFT

SL1 923749v1/021630.00003