## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| W.R. GRACE & CO., *et al.,* | ) Case No. 01-01139 (JKF) |
| | ) |
| Debtors. | ) Jointly Administered |

## BRIEF IN SUPPORT OF MOTION BY FIREMAN'S FUND INSURANCE COMPANY PURSUANT TO BANKRUPTCY RULE 3018 FOR TEMPORARY ALLOWANCE OF PROOF OF CLAIM NO. 15175

John D. Demmy (DE Bar No. 2802)
STEVENS & LEE, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone:  (302) 425-3308
Telecopier:  (610) 371-8515
Email:  jdd@stevenslee.com

Leonard P. Goldberger
Marnie E. Simon
(Members PA Bar)
STEVENS & LEE, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA  19103-1702
Telephone:  (215) 751-2864/2885
Telecopier:  (610) 371-7376/8505
Email:  lpg@stevenslee.com
Email:  mes@stevenslee.com

Mark D. Plevin
Leslie A. Davis
Tacie H. Yoon
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 624-2500
Telecopier:  (202) 628-5116
Email:  mplevin@crowell.com
Email:  ldavis@crowell.com
Email:  tyoon@crowell.com

ATTORNEYS FOR FIREMAN'S FUND INSURANCE COMPANY

Dated:  May 20, 2009

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ...................................................................................2

    A.    The Voting Procedures .........................................................................2

    B.    Fireman's Fund's Proof Of Claim...........................................................4

    C.    The Likelihood That Fireman's Fund Will Incur A
          Loss Under The Supersedeas Bond.........................................................6

ARGUMENT .......................................................................................................10

I.    FIREMAN'S FUND HAS A RIGHT TO VOTE ON THE PLAN
    BECAUSE NO PARTY IN INTEREST HAS OBJECTED TO ITS
    PROOF OF CLAIM.........................................................................10

II.    FIREMAN'S FUND'S CLAIM SHOULD BE TEMPORARILY
    ALLOWED FOR VOTING PURPOSES IN THE AMOUNT
    OF $3.86 MILLION..........................................................................14

CONCLUSION ....................................................................................................18

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    **Page**

Bittner v. Borne Chemical Co., 691 F.2d 134 (3d Cir. 1982).........................................11

In re Amarex, Inc., 61 B.R. 301 (Bankr. W.D. Okla. 1985)...........................................13

In re F.B.F. Indus., Inc., 165 B.R. 544 (Bankr. E.D. Pa. 1994) .....................................14

In re Frascella Enters., Inc., 360 B.R. 435 (Bankr. E.D. Pa. 2007)................ 11, 12, 13, 17

In re Hydrox Chemical Co., 194 B.R. 617 (Bankr. N.D. Ill. 1996) ................................14

In re Lloyd E. Mitchell, Inc., 373 B.R. 416 (Bankr. D. Md. 2007).................................15

In re Ralph Lauren Womenswear, Inc., 197 B.R. 771 (Bankr. S.D.N.Y. 1996)..............11

In re Windsor Plumbing Supply Co., 170 B.R. 503 (Bankr. E.D.N.Y. 1994)............12, 16

Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988) .........................................15

United States v. LTV Corp. (In re Chateaugay Corp.), 944 F.2d 997 (2d Cir. 1991).12, 16

**STATE CASES**

Final Judgment, Edwards, et al. v. Pittsburgh Corning Corp., et al., No. B-150,896-J
(Tex. Dist. Ct., Jefferson Cty., 60th Judicial Dist.) ..........................................................4

Opinion dated April 13, 2001, W.R. Grace & Co. v. Edwards, et al.,
No. 06-00-00112-CV (Tex. App. April 13, 2001) ...........................................................5

**FEDERAL RULES**

Fed. R. Bankr. P. 3018(a)...............................................................................................10

**OTHER**

9 Collier on Bankruptcy ¶ 3018[5] (15th ed. rev. 2005).................................................11

Fireman's Fund Insurance Company ("Fireman's Fund") seeks an order temporarily allowing its Proof of Claim No. 15175 (the "Surety Claim") against W.R. Grace & Co. ("Grace") for voting purposes as a Class 9 claim in the amount of $3.86 million.

Fireman's Fund's Surety Claim arises out of an underlying judgment that five asbestos personal injury plaintiffs (the "Edwards plaintiffs") obtained against Grace pre-petition. Grace appealed the judgment. Grace obtained a supersedeas bond from Fireman's Fund in the amount of $43,038,931.91 (the "Bond") so that the Edwards plaintiffs could not execute on their judgment against Grace and its assets while Grace's appeal of the judgment was pending. By obtaining the Bond from Fireman's Fund, Grace avoided the need to deposit its own funds to secure the Edwards plaintiffs' judgment during the pendency of the appeal. As a condition to issuing the Bond, Fireman's Fund required that Grace enter into an Indemnity Agreement in which Grace agreed that it would fully indemnify Fireman's Fund for any loss Fireman's Fund suffered as a consequence of issuing the Bond. Through the Surety Claim, Fireman's Fund seeks to recover from Grace under the Indemnity Agreement any and all amounts Fireman's Fund may end up paying under the Bond.

The Surety Claim is presently contingent and unliquidated because Grace's appeal has not yet been decided by the Texas Court of Appeals, thus neither Grace's underlying liability nor Fireman's Fund's potential liability on the Bond have been fixed.

Although Fireman's Fund's Surety Claim asserts a right to payment of an amount in excess of $43 million, Debtors seek to limit Fireman's Fund to a vote in Class

6 valued at only $1.00. Fireman's Fund submits that an equitable and appropriate estimate of its claim for voting purposes is substantially greater – $3.86 million, after taking account of the chances that Grace's appeal will be successful. Moreover, as set forth in (i) Fireman's Fund's accompanying Phase II plan objections relating to the Surety Claim and (ii) its Disputed Classification Declaration, the Surety Claim should be classified with other contractual/financial instrument claims in Class 9, not with asbestos bodily injury claims in Class 6.

Thus, for the reasons set forth herein and in its other submissions today, Fireman's Fund requests that the Court temporarily allow its proof of claim as a Class 9 claim valued for voting purposes only in the amount of $3.86 million. In the alternative, Fireman's Fund asks that the Court allow it to vote a Class 6 claim in that same amount.

## FACTUAL BACKGROUND[1]

### A.    The Voting Procedures

On March 9, 2009, the Court entered an order establishing voting and solicitation procedures that, among other things, approved special procedures for voting by holders of claims in Classes 6 through 9.[2]

Apparently based on their contention that Fireman's Fund's Surety Claim is properly classified under the Plan as an "Indirect PI Trust Claim," Debtors sent Fireman's Fund a solicitation package containing a Class 6 ballot for holders of Asbestos

---

[1]    All capitalized terms not otherwise defined in this brief refer to those terms as currently defined in the First Amended Joint Plan (the "Plan," Dkt. No. 20872), the Disclosure Statement relating to the Plan (the "Disclosure Statement," Dkt. No. 20873), and the "Voting Procedures" approved by the Order Approving Disclosure Statement, Solicitation And Confirmation Procedures, Confirmation Schedule And Related Relief (the "Order," Dkt. No. 20944).

[2]    *See* Order, ¶ 17.

PI Claims and Indirect PI Trust Claims, both of which the Plan classifies within Class 6.[3]

Under the Voting Procedures, each holder of an Asbestos PI Claim is entitled to a vote

that is valued based on the holder's claimed disease level, ranging from $180,000 to

$300.[4]  In contrast, the Voting Procedures provide that "[e]ach Holder of an Indirect PI

Trust Claim that is unliquidated and/or contingent will have a single vote in the amount,

for voting purposes only, of $1.00. . . ."[5]

Paragraph 31 of the Order states:

> Any Holder of a Claim that seeks to challenge the amount of its Claim for
> voting purposes may File a motion for an order pursuant to Bankruptcy Rule
> 3018(a) temporarily allowing such Claim in a different amount for purposes
> of voting (a "<u>Voting Motion</u>").

The Order further provides that any party who files a Voting Motion shall

be permitted to submit a ballot indicating how the party intends to vote on the Plan,

although the vote will not be counted other than as stated in the Voting Procedures unless

the Court temporarily allows the claim for voting purposes.[6]

As a result, unless the Court temporarily allows Fireman's Fund's proof of

claim in a different amount, Fireman's Fund's vote will be counted in the amount of only

$1.00.

---

[3]    As noted, Fireman's Fund disagrees with Debtors' classification of its claim as a Class 6
claim, and is filing an objection to plan confirmation on that basis, among others.  Fireman's
Fund's claim is properly classified as a Class 9 general unsecured claim.  Accordingly, pursuant
to ¶ 32 of the Order, Fireman's Fund is also filing a Disputed Classification Declaration along
with a provisional Class 9 ballot.

[4]    Voting Procedures, § 3(b)(i).

[5]    *Id.*, § 3(b)(ii).

[6]    Order, ¶ 31.

B.    **Fireman's Fund's Surety Claim**

In April, 2000, Grace suffered a judgment in Texas state court under which the Edwards plaintiffs were awarded compensatory damages against Grace totaling $21 million, punitive damages against Grace in the amount of $21.5 million, and post-judgment interest at the rate of 12 percent per annum.[7]  (Interest accrued to date on the compensatory damages portion of the judgment amounts to approximately $22 million.) Grace timely appealed the judgment.  In order to stay execution of the judgment while the appeal was prosecuted, Grace obtained the Bond from Fireman's Fund in the amount of $43,038,931.91.

As an express precondition to its willingness to issue the Bond, Fireman's Fund required that Grace enter into an indemnity agreement with Fireman's Fund (the "Indemnity Agreement"), pursuant to which Grace is obligated to indemnify Fireman's Fund for any and all losses that Fireman's Fund may incur as a result of issuing the bond:

> The Indemnitors [Grace] will indemnify the Surety [Fireman's Fund] against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such Bonds and any renewal, continuation or successor thereof, including but not limited to sums paid or liabilities incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.[8]

---

[7]    Final Judgment, Edwards, et al. v. Pittsburgh Corning Corp., et al., No. B-150,896-J (Tex. Dist. Ct., Jefferson Cty., 60th Judicial Dist.), §§ II-V.  A true and correct copy of the judgment is attached to Fireman's Fund's proof of claim.  *See* Declaration of Richard Kowalczyk In Support Of Motion By Fireman's Fund Insurance Company Pursuant To Bankruptcy Rule 3018 For Temporary Allowance Of Proof Of Claim No. 15175 (the "Kowalczyk Decl."), at Exh. 3.  The compensatory damage portions of the award were awarded jointly and severally against Grace and Pittsburgh Corning Co., which filed for bankruptcy before the appeal.

[8]    Indemnity Agreement, ¶ 2.  A true and correct copy of the Indemnity Agreement is attached to Fireman's Fund's proof of claim.  *See* Kowalczyk Decl., Exh. 3.

The Indemnity Agreement also obligates Grace to pay premiums for the Bond, as long as potential liability under the Bond continues.[9]

On April 13, 2001, after learning of Debtors' bankruptcy filing, the Texas Court of Appeals suspended the appeal, and entered an order stating that "for administrative purposes this case is abated and will be treated as closed."[10]  At that time, Grace had filed its opening appellate brief, but no other proceedings had taken place.  In particular, the appellees had not yet filed any response to Grace's opening appellate brief. The appeal remains abated.

On March 27, 2003, Fireman's Fund timely filed its Surety Claim in this bankruptcy case.[11]  The proof of claim asserts an unsecured claim for the full amount of the supersedeas bond, $43,038,931.91, which is the maximum amount that Grace is obligated to pay to Fireman's Fund pursuant to the Indemnity Agreement, should Fireman's Fund incur any loss as a result of furnishing the Bond.  The proof of claim also asserts a secured claim based on a letter of credit provided by Wachovia Bank to secure Grace's obligations to Fireman's Fund under the Indemnity Agreement and the Bond, including the payment of premiums.[12]  Fireman's Fund has already drawn approximately $1.8 million on the letter of credit due to Grace's failure to pay premiums owed on the

---

[9]    Indemnity Agreement, ¶ 1.

[10]   Opinion dated April 13, 2001, W.R. Grace & Co. v. Edwards, et al., No. 06-00-00112-CV (Tex. App. April 13, 2001).  See Kowalczyk Decl. at Exhibit 4.

[11]   A true and correct copy of Fireman's Fund's proof of claim is attached to the Kowalczyk Decl. as Exhibit 3.

[12]   A true and correct copy of the Letter of Credit is attached to Fireman's Fund's proof of claim. See Kowalczyk Decl., Exh. 3.

Bond, leaving approximately $11,204,000.00 available.[13]  No one has objected to Fireman's Fund's proof of claim, hence the Surety Claim is undisputed.

Fireman's Fund's unsecured claim is contingent on Grace failing to pay a final judgment to the asbestos plaintiffs if Grace's appeal is unsuccessful.[14]  Under the Indemnity Agreement, Grace is liable to reimburse Fireman's Fund for 100 percent of any payment Fireman's Fund makes under the Bond.  Grace has never contended that the Indemnity Agreement is unenforceable.  In fact, Grace's Rule 30(b)(6) designee testified on May 13, 2009 that Grace is not making any contention that the Indemnity Agreement is unenforceable.[15]

**C.      The Likelihood That Fireman's Fund Will Incur A Loss Under The Bond**

The amount of Grace's obligation to Fireman's Fund under the Indemnity Agreement is uncertain, because it is uncertain how much, if anything, Fireman's Fund may be required to pay under the Bond.

Grace could owe Fireman's Fund as much as $43,038,931.91, if (i) the appeal is reinstated, (ii) the appellees prevail on appeal (both in the Texas Court of Appeals and in any subsequent proceedings before the Texas Supreme Court), (iii) Grace

---

[13]    *See* Kowalczyk Decl. ¶¶ 5-7.

[14]    *See* Supersedeas Bond, a true and correct copy of which is attached to Fireman's Fund's proof of claim.  *See* Kowalczyk Decl., Exh. 3. *See also* Rule 24.1, Tex. R. App. P.

[15]    *See* Transcript of May 15, 2009 Deposition of Richard Finke ("Finke Tr.") at 277:20-278:2, Exh. 1 to the accompanying Declaration of Leslie A. Davis In Support Of Motion By Fireman's Fund Insurance Company Pursuant To Bankruptcy Rule 3018 For Temporary Allowance Of Proof Of Claim No. 15175.

fails to pay any resulting final judgment, and (iv) Fireman's Fund is required to pay the judgment pursuant to the Bond. The amount Grace would then owe Fireman's Fund would be the full amount paid by Fireman's Fund (*i.e.*, the amount of the judgment and accrued post-judgment interest (but likely excluding punitive damages), up to the face amount of the Bond, $43+ million), less whatever collateral Fireman's Fund is actually able to draw under the Wachovia letter of credit.

However, if Grace were to prevail on appeal (either because the judgment is reversed on the merits, or because the case is remanded for a new trial due to procedural irregularities or for other reasons), then the existing judgment would be vacated and Fireman's Fund would be released from any obligation under the Bond. (In that event, the plaintiffs would be required under the Plan (if it is confirmed) to submit their claims to the Trust for resolution under the TDPs, and the plaintiffs would also lose any claim to post-judgment interest.)

Based on the numerous errors committed by the trial court, the likelihood of the appeal being successful is very high, as set out in Grace's opening appellate brief in the Texas Court of Appeals and in the accompanying declaration of Mike Hatchell, Esq., who specializes in appellate practice in the Texas state courts.[16] This is not a matter of dispute, at least not with Grace: just days ago, its Rule 30(b)(6) witness testified that

---

[16]    *See* accompanying Declaration of Mike A. Hatchell In Support Of Motion By Fireman's Fund Insurance Company Pursuant To Bankruptcy Rule 3018 For Temporary Allowance Of Proof Of Claim No. 15175.

"Grace believes it has a very strong position on appeal and that the appeal should be pursued."[17]

Grace's appellate brief sets forth 14 separate issues justifying reversal.[18] Some of the issues upon which Grace urges that the judgment be either reversed and rendered in favor of Grace, or reversed and remanded for a new trial, or that the damages be remitted, are as follows:

- The 69-member jury panel from which the twelve jurors were ultimately selected included 31 people who were plaintiffs in an asbestos action, were related to or otherwise connected with persons with asbestos claims, or had themselves been screened for asbestos-related disease.[19]  Grace's motion to strike the panel was improperly denied.[20]

- One person who was seated as a juror failed to reveal during voir dire that she and her husband were working with an attorney and actively preparing to file an asbestos personal injury lawsuit against Grace and other defendants.[21]  That juror and her husband actually filed their lawsuit ***during the Edwards trial***.[22] When this fact was brought to the court's attention during the trial, the court improperly refused to excuse the juror from the panel.[23]

---

[17]  Finke Tr. at 283:10-12.

[18]  *See* Grace's Appellate Brief at xv-xvi (Exh. 5 to the Kowalczyk Decl.).

[19]  *Id.* at 1.

[20]  *Id.*

[21]  *Id.* at 2, 14.

[22]  *Id.* at 14.

[23]  *Id.* at 15.

- Plaintiffs failed to prove exposure to any Grace product. The plaintiffs, who worked at a U.S. Steel plant in Alabama, were all unable to identify a single Grace product that they used or handled. The plaintiffs did not produce any invoices, bills of lading, or other records showing that any Grace product was sold or shipped to the U.S. Steel plant where they worked.[24]

- The court incorrectly refused to admit evidence presented by Grace which would have shown the plaintiffs' employer's knowledge of asbestos hazards, and conditions in the workplace such as warning signs, and practices such as requiring the use of respirators, dust controls, and air monitoring, all of which was relevant to prove potential negligence on the part of the plaintiffs' employer, rather than by Grace.[25]

- The court improperly consolidated the claims of five plaintiffs with very different types of medical claims, including a wrongful death claim, a lung cancer case, and three non-malignancy cases. The consolidation resulted in a confusing mix of burdens of proof and also improperly included punitive damages issues relating to the wrongful death case with solely compensatory damage issues relating to the four personal injury actions.[26]

As explained below, although the Voting Procedures purport to assign Fireman's Fund's unliquidated and/or contingent claim a single vote in the amount of

---

[24]   *Id.* at 19-24.

[25]   *Id.* at 27-30.

[26]   *Id.* at 33-35.

only $1.00,[27] Fireman's Fund asserts that its Surety Claim should instead be estimated, for purposes of voting on the Plan, at $3.86 million.

## ARGUMENT

**I.    FIREMAN'S FUND HAS A RIGHT TO VOTE ON THE PLAN BECAUSE NO PARTY IN INTEREST HAS OBJECTED TO ITS PROOF OF CLAIM**

Section 1126(a) of the Bankruptcy Code provides that only holders of claims allowed pursuant to § 502 are permitted to vote to either accept or reject a plan of reorganization.  Section 502(a) provides that a proof of claim is "deemed allowed" unless a party in interest objects.  No objection has been filed to Fireman's Fund's proof of claim based on the Indemnity Agreement related to the Bond.  Therefore, the claim should be "deemed allowed" and Fireman's Fund should be permitted to vote on the Plan.  The only question is what dollar amount should be assigned to Fireman's Fund's vote.

Neither the Bankruptcy Code nor the Bankruptcy Rules appears to contain any provision specifically addressing this issue.  Rule 3018, which is cited in paragraph 31 of the Order, provides a mechanism by which holders of claims *that have been objected to* may nevertheless vote if their claims are temporarily allowed for voting purposes.  The rule states, in part, that "[n]otwithstanding objection to a claim," the court "may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."[28]  But the rule does not seem to apply directly to this situation, since no objection has been filed to Fireman's Fund's claim.  In

---

[27]    *See* Voting Procedures, § 3(b)(ii).

[28]    Fed. R. Bankr. P. 3018(a).

the absence of any directive in the Bankruptcy Code and Rules, there is a reasonable

basis for concluding that an unobjected-to contingent claim ought to be permitted to vote

the full amount claimed – in this instance, slightly more than $43 million.

Even if one assumes that Rule 3018 does apply, neither it nor the Code

provides guidance as to the method a bankruptcy court should use to value a claim for

purposes of voting.[29]  Accordingly, the matter is left to the reasonable discretion of the

court.[30]  In the seminal Third Circuit case on estimation of claims, <u>Bittner v. Borne

Chemical</u>, the court stated:

> The Code, the Rules of Bankruptcy Procedure, 11 U.S.C. app. (1977), and the
> Suggested Interim Bankruptcy Rules, 11 U.S.C.A. (1982), are silent as to the
> manner in which contingent or unliquidated claims are to be estimated.
> Despite the lack of express direction on the matter, we are persuaded that
> Congress intended the procedure to be undertaken initially by the bankruptcy
> judges, using whatever method is best suited to the particular contingencies at
> issue.  The principal consideration must be an accommodation to the
> underlying purposes of the Code.[31]

To further the goals of Chapter 11, the <u>Bittner</u> court emphasized "the

advantages of speed and simplicity,"[32] and that "a reorganization must be accomplished

quickly and efficiently."[33]  In the same vein, the Second Circuit has likewise approved

"the speedy and rough estimation of . . . claims for purposes of determining [a claimant's]

---

[29]  <u>In re Frascella Enters., Inc.</u>, 360 B.R. 435, 458 (Bankr. E.D. Pa. 2007).  *See also* <u>In re Ralph
Lauren Womenswear, Inc.</u>, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996); 9 <u>Collier on Bankruptcy</u> ¶
3018[5] at 3018-10 (15th ed. rev. 2005).

[30]  <u>Frascella</u>, 360 B.R. at 458.

[31]  <u>Bittner v. Borne Chemical Co.</u>, 691 F.2d 134, 135 (3d Cir. 1982).

[32]  *Id.* at 136.

[33]  *Id.* at 137.

voice in the Chapter 11 proceedings."[34]  Accordingly, estimation "necessarily implies no

certainty. . . .  It is merely the court's best estimate for the purpose of permitting the case

to go forward and thus not unduly delaying the matter."[35]

Although <u>Bittner</u> was decided under § 502(c), it has been held to apply to

estimation for voting purposes.[36]  The bankruptcy court in <u>Frascella</u>, for example,

recently explained the proper methodology as follows:

> A trier of fact first determines which version [of the facts] is most probable
> and proceeds from there to determine an award in a fixed amount.  An
> estimator of claims must take into account the likelihood that each party's
> version might or might not be accepted by a trier of fact.  The estimated value
> of a claim is then the amount of the claim diminished by [the] probability that
> it may be sustainable only in part or not at all.[37]

The court's role is not to "make definitive findings," but to "assess[ ] the

possibilities of the various contentions and appl[y] the appropriate discount to reflect the

uncertainties of the contingencies."[38]  Ultimately, "the goal of estimation is to fix a value

on the claim that will ensure that voting power is commensurate with the claimant's

economic interest."[39]

In <u>Amarex</u>, for example, the debtor objected to claims filed by

approximately 275 alleged preference recipients.  The court held that given the large

number of preference suits filed by the debtor and the short time available, it would be

---

[34]  <u>United States v. LTV Corp. (In re Chateaugay Corp.)</u>, 944 F.2d 997, 1006 (2d Cir. 1991).

[35]  <u>In re Windsor Plumbing Supply Co.</u>, 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994), quoting <u>In re Nova Real Estate Inv. Trust</u>, 23 B.R. 62, 66 (Bankr. E.D. Va. 1982).

[36]  <u>Frascella</u>, 360 B.R. at 458 n.48.

[37]  <u>Id</u>. at 458, quoting <u>Ralph Lauren Womenswear</u>, 197 B.R. at 775 (alterations in original).

[38]  <u>Id</u>.

impossible to conduct a preliminary hearing on each claim.  The court compared two alternatives:  first, "[t]o disallow claims temporarily without having heard each case would disenfranchise a substantial part of the unsecured claims which are deemed allowed until a final adjudication;"[40] second, "[t]o allow them to vote on the [two competing] plans, even though some may be eventually disallowed for purposes of distribution, is more in keeping with the spirit of Chapter 11 which encourages creditor vote and participation in the reorganization process."[41]  The court chose the second alternative and ordered that each alleged preference recipient should be permitted to vote his, her, or its claim in either the scheduled amount or the amount set forth in the proof of claim.[42]

Another example of how courts have applied this analysis is F.B.F. Industries, where the bankruptcy court temporarily allowed a claim under a surety bond which the debtor had issued to secure payment under a note.  Although a default had not yet occurred to trigger the debtor's liability under the surety bond, the court held that the claim should be temporarily allowed at 100%, because "[t]o the extent default did not already exist, . . . future default would be inevitable and imminent."[43]  Similarly, in Hydrox Chemical, an Illinois bankruptcy court found that "[c]laimants can present a strong evidentiary case, and one that is legally viable," but because the claim was for a

---

(continued)

[39]   *Id.* at 459, citing Pension Benefit Guaranty Corp. v. Enron, 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004).

[40]   In re Amarex, Inc., 61 B.R. 301, 302-03 (Bankr. W.D. Okla. 1985).

[41]   *Id* at 303.

[42]   *Id.*

RICO violation, and "[t]he inquiry as to whether a pattern under RICO can be established is necessarily less than precise," the court temporarily allowed the claim at two-thirds of the amount claimed to account for the uncertainty in the outcome.[44]

## II.    FIREMAN'S FUND'S CLAIM SHOULD BE TEMPORARILY ALLOWED FOR VOTING PURPOSES IN THE AMOUNT OF $3.86 MILLION.

The Voting Procedures would value Fireman's Fund's $43 million contingent claim at only $1.00 for voting purposes.  As a result, Fireman's Fund $43 million claim would be valued at a tiny fraction of individual asbestos personal injury claims, which would be valued for voting purposes from a minimum of $300 (in the case of "Other Asbestos Disease") up to $180,000 (for mesothelioma claims).[45]  The $1.00 value that would be assigned to Fireman's Fund's $43 million claim is particularly unjustified in light of the absence of any challenge by Grace to Fireman's Fund's right to recover under the Indemnity Agreement for any payment Fireman's Fund is required to make under the Bond.  In fact, Grace's Rule 30(b)(6) designee has testified that he knows of no basis to argue that the Indemnity Agreement is not enforceable according to its terms.[46]

Although some courts have temporarily allowed all mass tort claims at a value of $1.00 for voting purposes, the reasoning employed by those courts is simply not applicable to a non-tort contractual indemnity claim like the one asserted here by

---

(continued)

[43]    In re F.B.F. Indus., Inc., 165 B.R. 544, 552 (Bankr. E.D. Pa. 1994).

[44]    In re Hydrox Chemical Co., 194 B.R. 617, 628 (Bankr. N.D. Ill. 1996).

[45]    Voting Procedures, §§ 3(b)(i) and (ii).

[46]    Finke Tr. at 277:20-278:2.

Fireman's Fund.  In <u>Kane v. Johns-Manville Corp.</u>, for example, the Second Circuit affirmed the bankruptcy court's decision to temporarily allow the claims of asbestos claimants in the amount of $1.00 each for voting purposes.  A significant difference from this case is that in <u>Manville</u>, literally thousands of claims were involved – at the conclusion of the notice campaign for voting, 52,440 claimants had submitted proofs of claim and voting forms – and the class in question consisted ***only*** of current asbestos claimants, unlike Class 6 here (which sweeps in Indirect PI Trust Claims, allegedly including Fireman's Fund's contractual claim).[47]  Giving each class member an equal vote avoided the insurmountable delay that would have resulted if each of more than 50,000 separate asbestos bodily injury claims had to be considered individually for voting purposes.[48]  The same $1.00 per vote method was also used to temporarily allow for voting purposes the claims of more than 19,000 asbestos claimants in <u>Lloyd E. Mitchell</u> – but there, the class of asbestos claimants whose claims were being voted at $1.00 did not include claimants who, because they had settled with the debtor pre-petition, had contractual claims based on their settlements; in <u>Lloyd E. Mitchell</u>, the settled claimants were separately classified and allowed to vote based on the actual amount of their settlements.[49]

Here, assigning a value of just $1.00 to Fireman's Fund's $43 million contract claim under the Indemnity Agreement, while unliquidated asbestos personal injury claims are valued up to 180,000 times higher, turns upside down the rationale of

---

[47]    <u>Kane v. Johns-Manville Corp.</u>, 843 F.2d 636, 641 (2d Cir. 1988).

[48]    *Id.* at 651 (Miner, J., concurring).

[49]    <u>In re Lloyd E. Mitchell, Inc.</u>, 373 B.R. 416, 422, 428 (Bankr. D. Md. 2007).

the Kane and Lloyd E. Mitchell courts.  The Debtors' Disclosure Statement identifies

only a handful of other Class 6 claimants, apart from the Asbestos PI Claimants,

including several parties that seek reimbursement, indemnification, subrogation, or

contribution from Grace for damages paid to asbestos plaintiffs,[50] and several insurers

seeking reimbursement, indemnification, subrogation, or contribution from Grace under

"any insurance settlement agreement, surety bond, letters of credit or other financial

assurance" with respect to an Asbestos PI Claim.[51]  Thus, the number of Indirect PI Trust

Claimants is limited, and certainly not so vast and unwieldy as to justify applying the

$1.00 per vote procedure.

       The Debtors' attempt to justify valuing Fireman's Fund's claim at $1.00

by asserting that "the Debtors are aware of no other reliable method of valuing these

claims"[52] flies in the face of the general view that estimation of a claim for voting

purposes "'necessarily implies no certainty'"[53] and should be "speedy and rough."[54]  The

effect of applying the $1.00 per vote rule to Fireman's Fund would be to disenfranchise

---

[50]   Disclosure Statement at 57 (identifying claims filed by Maryland Casualty Company, the State of Montana, Continental Casualty Company, "and other similarly situated parties," and claims that may be asserted by Burlington Northern Santa Fe Railroad and Scotts Company LLC).

[51]   *Id.* at 57-58 (identifying claims filed by Royal Insurance Company, Continental Casualty Company, Maryland Casualty Company, "and other Settled Asbestos Insurance Companies arising out of insurance settlement agreements;" Longacre Master Fund Ltd. as successor to National Union Fire Insurance Company for payments made on an Asbestos PI Settlement, and the contingent claims of Fireman's Fund and Wachovia Bank relating to the Edwards judgment).

[52]   *Id.* at 60.

[53]   Windsor Plumbing Supply, 170 B.R. at 521.

[54]   Chateaugay, 944 F.2d at 1006.

Fireman's Fund, because the $1.00 value does not come close to giving Fireman's Fund "voting power . . . commensurate with [its] economic interest" in the case.[55]

Based on the goals of estimation as set out by the court in <u>Frascella</u> and other cases, Fireman's Fund asks that the Court allow Fireman's Fund to vote its claim in the amount of $3.86 million.  This is based on the following considerations, all of which are supported by the Declarations of Richard Kowalczyk and Mike Hatchell submitted herewith:

| | |
|---|---|
| Maximum amount that Fireman's Fund could be liable to pay under the Bond | $43,038,931.91 |
| Discounted by 65%, a conservative estimate of the probability that Grace's appeal will be successful (in which case Fireman's Fund would have no liability under the Bond and Grace therefore would not have any indemnification obligation under the Indemnity Agreement) | $15.06 million |
| Less the $11.2 million remaining amount of the letter of credit issued by Wachovia, which Fireman's Fund should be able to draw down as security for Grace's obligation under the Bond | $3.86 million |
| Multiplied by 100%, the probability that Grace would be required, under the Indemnity Agreement, to pay the entire amount of Fireman's Fund's liability under the Bond (because Grace does not contend that its Indemnity Agreement is unenforceable) | $3.86 million |
| Amount of Fireman's Fund's claim for voting purposes | $3.86 million |

Applying this calculation to temporarily allow Fireman's Fund's Surety Claim for voting purposes in the amount of $3.86 million, whether as a Class 6 claim (as Debtors apparently contend) or as a Class 9 claim (as Fireman's Fund contends), will

---

[55] <u>Frascella</u>, 360 B.R. at 459.

serve the purposes of Chapter 11 by allowing Fireman's Fund to participate in the voting process in proportion to its economic interest in the case, without unduly delaying the proceedings, and preventing disenfranchisement of a substantial creditor entitled to vote to accept or reject the Plan.

## CONCLUSION

For the reasons stated above, this Court should allow Fireman's Fund to vote on the Plan, with its claim valued for voting purposes only at $3.86 million in Class 9. In the alternative, the Court should allow Fireman's Fund to vote its Claim in Class 6 in the amount of $3.86 million.

Dated:  May 20, 2009                                Respectfully submitted,

                                                    /s/ John D. Demmy
                                                    John D. Demmy (DE Bar No. 2802)
                                                    STEVENS & LEE, P.C.
                                                    1105 North Market Street, 7th Floor
                                                    Wilmington, DE 19801
                                                    Telephone:  (302) 425-3308
                                                    Telecopier:  (610) 371-8515
                                                    Email:  jdd@stevenslee.com

                                                    Mark D. Plevin
                                                    Leslie A. Davis
                                                    Tacie H. Yoon
                                                    CROWELL & MORING LLP
                                                    1001 Pennsylvania Avenue, N.W.
                                                    Washington, D.C. 20004
                                                    Telephone:  (202) 624-2500
                                                    Telecopier:  (202) 628-5116
                                                    Email:  mplevin@crowell.com
                                                    Email:  ldavis@crowell.com
                                                    Email:  tyoon@crowell.com

                                                    - and -

Leonard P. Goldberger
Marnie E. Simon
(Members PA Bar)
STEVENS & LEE, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA  19103-1702
Telephone:  (215) 751-2864/2885
Telecopier:  (610) 371-7376/8505
Email:  lpg@stevenslee.com
Email:  mes@stevenslee.com

ATTORNEYS FOR FIREMAN'S
FUND INSURANCE COMPANY

7835252.04