# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| W.R. GRACE & CO., *et al.*, ) | Case No. 01-01139 (JKF) |
| ) | |
| ) | Jointly Administered |
| Debtors. ) | |

## DECLARATION OF LESLIE A. DAVIS IN SUPPORT OF MOTION BY FIREMAN'S FUND INSURANCE COMPANY PURSUANT TO BANKRUPTCY RULE 3018 FOR TEMPORARY ALLOWANCE OF PROOF OF CLAIM NO. 15175

I, Leslie A. Davis, declare as follows:

1. I am a licensed attorney in the State of Maryland and the District of Columbia and counsel at Crowell & Moring LLP, attorneys for Fireman's Fund Insurance Company ("Fireman's Fund"), a creditor and party in interest in Debtors' case.

2. I submit this Declaration in support of the Motion by Fireman's Fund Insurance Company Pursuant To Bankruptcy Rule 3018 For Temporary Allowance Of Proof Of Claim No. 15715 (the "Motion"), seeking the allowance of Fireman's Fund's Proof of Claim No. 15715 (the "Claim") in an amount different than that proposed by Debtors in the Voting Procedures approved in ¶ 17 of the Order. I make this declaration based on personal knowledge.

3. Except as may be indicated below, I have personal knowledge of the facts stated herein, and could and would competently testify to them if called as a witness.

4. Exhibit 1 hereto is a true and correct copy of portions of the transcript of the deposition of Debtors' Rule 30(b)(6) designee, Richard Finke, held on May 13, 2009 in this bankruptcy case. I obtained this transcript from the court reporter who transcribed Mr. Finke's testimony.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2009, in Washington, D.C.

_____/s/ Leslie A. Davis_____
Leslie A. Davis

7939135

# EXHIBIT 1

```
 1      IN THE UNITED STATES BANKRUPTCY COURT
           FOR THE DISTRICT OF DELAWARE
 2   _____X
     In Re:                        Chapter 11
 3

 4                                 Case No.

 5                                 01-01139 JKF
     W.R. Grace & Co., et al.,
 6
                                   (Jointly
 7            Debtors.             Administered)
     _____X
 8

 9         * * * CONFIDENTIAL * * *

10               —  —  —

11           May 13, 2009

12               —  —  —

13      DEPOSITION of RICHARD FINKE, held

14   at the offices of Kirkland & Ellis, 655

15   Fifteenth Street, N.W., Washington, DC,

16   commencing at 9:32 A.M., on the above

17   date, before Lisa Lynch, a Registered

18   Merit Reporter, New Jersey Certified Court

19   Reporter, License No. XI00825, and

20   Certified Realtime Reporter

21               —  —  —

22        MAGNA LEGAL SERVICES, LLP

23        7 Penn Center, 8th Floor
              1635 Market Street
24            Philadelphia, PA  19103
```

```
 1   subject of course to the terms of the
 2   indemnity agreement, it provides that, to
 3   the extent Fireman's Fund pays under the
 4   supercedeas bond, Grace will reimburse
 5   Fireman's Fund up to the amount of the
 6   bond?
 7         A.    Yes, I understand that.
 8         Q.    Okay.  Are you aware that
 9   Fireman's Fund filed a proof of claim that
10   is a contingent claim for any amounts that
11   it is entitled to under the indemnity
12   agreement from Grace in the event that
13   Fireman's Fund pays on the supercedeas
14   bond?
15         A.    That's my understanding,
16   yes.
17         Q.    Has Grace classified that
18   claim by Fireman's Fund under its Plan, to
19   your knowledge?
20         A.    My understanding --
21               MS. HARDING:  Object to
22         form but go ahead.
23               THE WITNESS:  Sorry.
24         A.    My understanding is that
```

Page 271

1  that is still under discussion and
2  consideration at Grace.
3       Q.   Okay.  If I were to tell
4  you that Fireman's Fund was sent a ballot
5  to vote in Class 6 as an indirect asbestos
6  PI claim, would that surprise you?
7       A.   No, from the standpoint
8  that the bond was issued in connection
9  with an asbestos personal injury case and
10 trial.
11      Q.   Can you identify any other
12 claim that you know of that has been
13 classified by Grace as a Class 6 claim
14 that is based on a contract such as the
15 indemnity agreement between Fireman's Fund
16 and Grace?
17      A.   Let's see.
18           MS. HARDING:  You're asking
19      if he can recall, if he knows?
20           MR. PLEVIN:  If he knows.
21      A.   There is a claim by, I
22 believe, National Union concerning -- it's
23 not a supercedeas bond or appeal bond but
24 a bond to secure a settlement with some

1    asbestos personal injury claimants.  I

2    believe the claim they filed based on that

3    bond has been classified as a Class 6.

4         Q.    Was the -- was there an

5    adversary proceeding in the bankruptcy

6    case concerning the allowance and

7    classification of the National Union bond

8    claim?

9         A.    I believe there was.

10        Q.    And was there a settlement

11   approved by the Bankruptcy Court?

12        A.    I believe there was a

13   settlement.  I honestly can't remember

14   right now if it was approved by the

15   Bankruptcy Court.  It wouldn't surprise me

16   if it was but I just don't recall.

17        Q.    Okay.  And as far as you

18   recall, does the settlement between

19   National Union and Grace provide for how

20   the National Union bond claim would be

21   classified?

22        A.    That I don't know.

23        Q.    Your best recollection and

24   understanding as you sit here today is

```
 1    that the National Union bond claim is

 2    classified as a Class 6 claim?

 3           A.    That is my understanding,

 4    yes.

 5           Q.    Assuming that's the case,

 6    can you think of any other contractual

 7    claim that has been classified as Class 6

 8    besides the Fireman's Fund claim and the

 9    National Union claim?

10           A.    Well, when you say

11    "contractual," I don't have a specific

12    claim in mind, but any contractual

13    indemnification claim that is based on an

14    asbestos personal injury claim would be

15    classified as Class 6.

16           Q.    But you can't think of any

17    particular claim as you sit here today

18    that fits that --

19           A.    No.

20           Q.    -- category other than the

21    Fireman's Fund claim?

22           A.    That's correct.

23                 MS. HARDING:  Are you

24          asking for a specific entity's
```

```
 1        claim?
 2              MR. PLEVIN:  Yes.
 3              MS. HARDING:  Is that what
 4        you meant?
 5              MR. PLEVIN:  Or any
 6        specific proof of claim.
 7        Q.    Now, you said that in
 8   response to one of my earlier questions
 9   that the classification of the Fireman's
10   Fund claim was under consideration.
11        A.    Yes.
12        Q.    What did you mean by
13   that?
14              MS. HARDING: Well, object
15              to form and to the extent it calls
16              for attorney-client privilege or
17              work product, joint interest
18              privilege, I instruct the witness
19              not to answer.  But to the extent
20              that it doesn't, you can answer.
21        A.    I think beyond saying that
22   it is under discussion and under
23   consideration, I don't know that there's
24   anything I could add to that that wouldn't
```

Page 275

1  disclose privileged communication.
2       Q.   Okay.  And pursuant to your
3  counsel's instruction, you don't intend to
4  disclose privileged information, do you?
5       A.   That's correct.
6       Q.   Okay.  During the pendancy
7  of the bankruptcy case, were any premiums
8  due in order to keep the bond in effect
9  and in place?
10      A.   That I do not know.
11      Q.   Do you know whether during
12 the pendancy of the bankruptcy case there
13 were any drawdowns -- well, let me
14 withdraw that question and step back and
15 ask a foundational question.
16      Are you aware that a portion of the
17 bond is secured by a letter of credit
18 issued by Wachovia Bank on behalf of
19 Grace?
20      A.   Yes.
21      Q.   Do you know the amount of
22 the bond when -- rather, the amount of the
23 letter of credit when it was first
24 issued?

Case 01-01139-AMC   Doc 21788-4   Filed 05/20/09   Page 11 of 18

Page 276

```
 1         A.    I believe it was about --
 2   around 13 million dollars.
 3         Q.    Do you know if any part of
 4   that letter of credit has been drawn down
 5   during the bankruptcy case either to pay
 6   premiums on the bond or for any other
 7   purpose?
 8         A.    My understanding is that it
 9   was drawn down in the amount of
10   approximately two million dollars to pay
11   for premiums.
12         Q.    Has Wachovia made a claim
13   against Grace for the portion that it paid
14   under the letter of credit?
15         A.    I don't know.
16               MS. HARDING:  Object to
17         form.  Go ahead.
18         A.    I don't know.
19         Q.    Do you know when the
20   drawdown of approximately two million
21   dollars occurred?
22         A.    No, I don't.
23         Q.    Does Grace contend that the
24   drawdowns were improper in any way?
```

Page 277

```
 1              MS. HARDING:  Object to
 2         form.  And to the extent it calls
 3         for privileged communications or
 4         work product -- I'm not saying it
 5         does.  I'm just saying to the
 6         extent it does...
 7              THE WITNESS:  Yeah.
 8        A.    I don't know the answer.
 9        Q.    Focusing on the indemnity
10   agreement between Fireman's Fund and Grace
11   that relates to the supercedeas bond, does
12   Grace contend that the indemnity agreement
13   is unenforceable for any reason?
14              MS. HARDING:  Same
15         objection.
16        A.    Yeah, I don't -- I don't
17   know what positions we have taken, if any,
18   with respect to the Fireman's Fund claim.
19   No, I don't know.
20        Q.    Let me move it off
21   contentions and ask whether you're aware
22   of any facts that suggest that the
23   indemnity agreement is not enforceable
24   according to its terms.
```

```
 1        A.    No, I'm not aware of any
 2   facts.
 3        Q.    Can you explain to me why,
 4   to the extent the Fireman's Fund claim is
 5   classified in Class 6, it is in fact
 6   classified in Class 6?
 7              MS. HARDING:  Object to
 8         form.  It calls for a legal
 9         conclusion or a legal analysis,
10         but -- and to the extent that it
11         might call for privileged
12         communications or work product,
13         object on that point as well.
14              But to the extent you can
15         answer without divulging those...
16        A.    I believe there is a
17   provision in the Plan under which arguably
18   any claim based on a bond, you know,
19   securing an asbestos-related liability
20   could be classified as a Class 6 claim,
21   but my brief attempts to find that
22   provision right now have not been
23   successful.  So I could take the time now
24   if you want to take a break or I could
```

1  look for it later, but --

2          Q.    I think that answer is

3  sufficient and let me see if I can just

4  summarize it:  That you believe there's a

5  provision in either the --  are you

6  looking at the Plan or the TDPs?

7          A.    I'm looking at the Plan

8  right now.

9          Q.    So you believe there's a

10 provision in the Plan that says something

11 to the effect that a bond claim that

12 secures an asbestos PI claim or appeal is

13 a Class 6 claim?

14         A.    Yes.

15         Q.    Okay.  Is there any other

16 reason you are aware of or can think of

17 why the Fireman's Fund bond claim would be

18 classified as a Class 6 claim?

19         A.    No, that's -- that's all

20 that comes to mind, to my mind.

21         Q.    As a -- withdrawn.

22               To the extent the Fireman's Fund

23 claim does end up being classified as a

24 Class 6 claim, would it be a claim that

```
 1   would be channeled to the Trust for
 2   payment?
 3           A.   Yes.
 4           Q.   And as a claim channeled to
 5   the Trust, would it be subject to the
 6   payment percentage?
 7           A.   Yes, that's my
 8   understanding.
 9           Q.   Are you generally familiar
10   with the concept of setoff?
11           A.   Generally, yes.
12           Q.   What is your understanding
13   of the concept of setoff?
14           A.   That a --
15                MS. HARDING:  Well, are you
16           asking him kind of generally as a
17           lawyer his understanding of the
18           concept setoff?
19                MR. PLEVIN:  I asked what
20           his understanding was.
21                MS. HARDING:  Okay.  To the
22           extent that it doesn't reveal
23           attorney-client privilege or work
24           product...
```

```
 1              THE WITNESS:  Right.
 2         A.    That a claimant can either
 3    reduce his liability on a separate claim
 4    by setting off the amount owed on -- on
 5    the first claim.  I'm not articulating it
 6    well, but...
 7         Q.    All right.  Are you aware,
 8    Mr. Finke, of the fact that Fireman's Fund
 9    issued certain liability insurance
10    policies to W.R. Grace?
11         A.    Yes.
12         Q.    And do you know that W.R.
13    Grace is making claim against Fireman's
14    Fund for coverage under those policies?
15              MS. HARDING:  Object to
16         form but go ahead.
17         A.    I did not know that.
18         Q.    Okay.  Let me represent to
19    you that Grace is in fact making a claim
20    against Fireman's Fund for coverage under
21    those policies.
22         A.    Okay.
23         Q.    And that discussions are
24    going on between the two companies about
```

1   that.

2         When Grace entered into the

3   indemnity agreement with Fireman's Fund

4   with respect to the bond, was Grace

5   entering into that on its own account or

6   on behalf of somebody else as a fiduciary,

7   trustee or other representative?

8            MS. HARDING:  Object to

9       form.  Attorney-client privilege,

10      work product.  To the extent that

11      you can answer without revealing

12      those...

13     A.    I'm not personally aware of

14   the circumstances in which Grace entered

15   into that indemnification agreement, but I

16   will add I'm not aware of any

17   circumstances under which it would have

18   entered into it on another's behalf.

19     Q.    Does the -- if the Plan is

20   confirmed, does Grace have a position one

21   way or the other as to whether it would

22   continue with the Edwards appeal to the

23   extent that issue is not resolved

24   consensually among the parties to the

1    bankruptcy case?

2            MS. HARDING: Object to

3        form and calls for speculation.

4        And to the extent it calls for

5        attorney-client privilege or work

6        product communications, I instruct

7        the witness not to answer.

8        Otherwise, you can answer.

9        A.   I will say that, yeah,

10   Grace believes it has a very strong

11   position on the appeal and that the appeal

12   should be pursued.

13       Q.   Okay. I think this may be

14   my last question, Mr. Finke.

15           At the time of the negotiations

16   relating to the Plan, was Grace aware of

17   the Edwards appeal, the supercedeas bond

18   issued by Fireman's Fund and the indemnity

19   agreement between Fireman's Fund and

20   Grace?

21       A.   Yes.

22       Q.   And were those items in

23   fact the subject of discussion among Grace

24   and other parties with whom it negotiated