## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| _____ | ) | Chapter 11 |
| In re | ) | |
|  | ) | Case No. 01-01139 (JKF) |
| W.R. GRACE & CO., *et al.,* | ) | |
|  | ) | Jointly Administered |
| Debtors. | ) | |
| _____ | ) | **Related to Dkt. No. 20872** |

## PHASE II "SURETY CLAIM" RELATED OBJECTIONS OF FIREMAN'S FUND INSURANCE COMPANY, AS A CREDITOR, TO CONFIRMATION OF THE FIRST AMENDED PLAN OF REORGANIZATION

John D. Demmy (DE Bar No. 2802)
STEVENS & LEE, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

Leonard P. Goldberger
Marnie E. Simon
(Members PA Bar)
STEVENS & LEE, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA 19103-1702
Telephone: (215) 751-2864/2885
Telecopier: (610) 371-7376/8505
Email: lpg@stevenslee.com
Email: mes@stevenslee.com

Mark D. Plevin
Leslie A. Davis
Tacie H. Yoon
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Telecopier: (202) 628-5116
Email: mplevin@crowell.com
Email: ldavis@crowell.com
Email: tyoon@crowell.com

ATTORNEYS FOR FIREMAN'S FUND INSURANCE COMPANY

Dated: May 20, 2009

# TABLE OF CONTENTS

**Page**

**TABLE OF CONTENTS** ....................................................................................... i

**TABLE OF AUTHORITIES** ............................................................................... iii

**FACTUAL BACKGROUND** ...................................................................................5

    A.    The Supersedeas Bond Fireman's Fund Posted To
            Secure Grace's Appeal Of The Edwards Judgment ...................................5

    B.    Fireman's Fund's Surety Claim Against Grace .........................................6

    C.    Fireman's Fund's Right To Setoff........................................................10

**OBJECTIONS TO CONFIRMATION** ...................................................................10

I.    The Plan Does Not Meet The Confirmation Requirements Of
    § 1129(a) Because Of Its Improper Treatment Of Fireman's Fund's
    Claim And Its Abridgment Of Fireman's Fund's Legal Right To Setoff .............10

    A.    The Plan Violates § 1129(a)(1) Because It Fails To Comply With Numerous
            Provisions Of Chapter 11 Of The Bankruptcy Code................................10

        1.    The Plan violates § 1122(a) because it improperly classifies Fireman's
                Fund's entire claim under the Indemnity Agreement in Class 6 with
                Asbestos PI Claims, instead of in Class 9, with respect to its unsecured
                claim, and Class 2 with respect to the part of its claim that is secured by
                the Wachovia letter of credit………………………….…………10

        2.    The Plan violates §§ 1123(a)(3) And 1123(a)(4) because
                it fails to specify the treatment of Fireman's Fund's Surety Claim, and
                it discriminates among claimants within the same class ...............16

        3.    The Plan fails to preserve Fireman's Fund's statutory right, pursuant to
                § 553(a), to set off amounts that Grace owes to Fireman's Fund under the
                Indemnity Agreement against any obligations owed under Fireman's
                Fund's insurance policies ...........................................................19

    B.    The Plan Does Not Satisfy The Requirement Under § 1129(a)(3)
            That It Be Proposed In "Good Faith And Not By Any Means Forbidden
            By Law" .....................................................................................22

        1.    The Plan was not proposed in good faith ......................................22

    2.    The Plan violates Fireman's Fund's contractual rights under applicable non-bankruptcy law ..................................................................23

II.    The Plan Violates § 524(g) By Improperly Channeling Fireman's Fund's Indemnity Claim To The Asbestos PI Trust..........................................................................26

**RESERVATION OF RIGHTS**.....................................................................................28

**CONCLUSION** ...................................................................................................28

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                        **Page**

In re ACandS, Inc., 311 B.R. 36 (Bankr. D. Del. 2004) ................................................. 22

In re AOV Indus., Inc., 792 F.2d 1140 (D.C. Cir. 1986),
   vac. on other grounds, 797 F.2d 1004 (D.C. Cir. 1986) ..................................... 11, 18

Barnes v. Whelan, 689 F.2d 193 (D.C. Cir. 1982) ......................................................... 11

In re Butler, 42 B.R. 777 (Bankr. D. Ark. 1984) ........................................................... 17

In re Cajun Electric Power Coop., Inc., 230 B.R. 715 (M.D. La. 1999) ......................... 23

Citizens Bank of Maryland v. Strumpf, 116 U.S. 286 (1995) ........................................ 20

In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004) ................................ 27

In re Communications Dynamics, Inc., 382 B.R. 219
   (Bankr. D. Del. 2008) .................................................................................. 21

In re Congoleum Corp., 362 B.R. 167 (Bankr. D.N.J. 2007) ................................... 12, 13

In re Coram Healthcare Corp., 315 B.R. 321 (Bankr. D. Del. 2004) ................... 12, 13, 23

In re Dow Corning Corp., 244 B.R. 634, 35 (Bankr. E.D. Mich. 1999),
   *aff'd*, 255 B.R. 445 (E.D. Mich. 2000),
   *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002) .................................................. 12

In re Jersey City Med. Ctr., 817 F.2d 1055 (3d Cir. 1987) .............................................. 11

In re Jorgensen, 66 B.R. 104 (9th Cir. BAP 1986) ........................................................ 22

In re Lund, 136 B.R. 237 (Bankr. N.D. 1990) ............................................................... 21

Matter of Isis Foods, Inc., 24 B.R. 75 (Bankr. W.D. Mo. 1982) ..................................... 21

Metco Mining & Minerals, Inc. v. PBS Coals, Inc.
   (In re Metco Mining & Minerals, Inc.),
   171 B.R. 210 (Bankr. W.D. Pa. 1994) .................................................................... 20

Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392 (9th Cir. 1996) ..................... 21

In re Northeast Dairy Cooperative Federation, 73 B.R. 239 (Bankr. N.D.N.Y. 1987) ..... 12

In re Phoenix Petroleum Co., 278 B.R. 385 (Bankr. E.D. Pa. 2001) .............................. 21

In re Planet Hollywood International, 274 B.R. 391 (Bankr. D. Del. 2001) ..............18, 19

In re Richard Buick, Inc., 126 B.R. 840 (Bankr. E.D. Pa. 1991) ...............................11, 12

In re Salem Suede, Inc., 219 B.R. 922 (Bankr. D. Mass. 1998)......................................13

In re Smith, 123 B.R. 863 (C.D. Cal. 1991)............................................................18, 19

Steelcase, Inc. v. Johnston (In re Johnston), 21 F.3d 323, 327 (9th Cir. 1994) ...............12

United States v. Continental Airlines (In re Continental Airlines),
    134 F.3d 536 (3d Cir. 1998) ......................................................................22

In re Walker, 165 B.R. 994 (E.D. Va. 1994)...................................................................22

Williams v. American Bank of the Mid-Cities, N.A.
    (In re Williams), 61 B.R. 567 (Bankr. N.D. Tex. 1986) .............................................21

In re Zenith Elec. Corp., 241 B.R. 92 (Bankr. D. Del. 1999) ...........................................23

## STATE CASES

Gingher v. Fanseen, 172 A. 75 (Md. 1934) .....................................................................21

Harrison v. Adams, 128 P.2d 9 (Cal. 1942)....................................................................21

In re Lumbermen's Mutual, 184 S.W.3d 718 (Tex. 2006) ...............................................25

Mid-Century Insurance Co. v. Boyte, 80 S.W.2d 546 (Tex. 2002)....................................5

Muniz v. Vasquez, 797 S.W.2d 147 (Tex. App. – Houston 1990) ...................................14

Sommers v. Concepcion, 20 S.W.3d 27 (Tex. App. 2000)..............................................21

State v. Watts, 197 S.W.2d 197 (Tex. Civ. App. – Austin 1946) .....................................14

Opinion dated April 13, 2001, W.R. Grace & Co. v. Edwards, et al.,
No. 06-00-00112-CV (Tex. App. April 13, 2001) ............................................................6

## FEDERAL STATUTES

11 U.S.C. § 524(g)...................................................................................... 10, 26, 27, 28

11 U.S.C. § 553(a)................................................................................................passim

11 U.S.C. § 1121 ........................................................................................19

11 U.S.C. § 1122(a) ............................................................ 3, 10, 11, 12, 15

11 U.S.C. § 1123(a) ...............................................................................*passim*

11 U.S.C. § 1129(a) ...............................................................................*passim*

**RULES**

Texas Rule of Appellate Procedure 24.1  ............................................................5

Texas Civil Procedure Code § 51.001 ............................................................5

**OTHER**

Restatement (First) Of Security § 103 .........................................................26

Pursuant to the Third Amended Case Management Order (the "CMO," Dkt. No. 21544), Fireman's Fund Insurance Company hereby sets forth its Phase II objections to confirmation of the First Amended Joint Plan of Reorganization Under Chapter 11 Of The Bankruptcy Code Of W.R. Grace & Co. (the "Plan," Dkt. No. 20872).[1]

Fireman's Fund is both an insurer and a creditor of Debtors. These Phase II objections focus on issues that are specifically of concern to Fireman's Fund based on its status as the holder of a contingent contractual indemnity claim that is subject to setoff (the "Surety Claim"). Debtors' counsel recently acknowledged that any objections by Fireman's Fund to the Plan with respect to the classification or treatment of Fireman's Fund's Surety Claim, including the extent of Fireman's Fund's setoff rights based on the Surety Claim, are Phase II issues.[2] Fireman's Fund is also today filing separate objections to confirmation with respect both to Phase I issues and non-Surety Claim-related Phase II issues.

Fireman Fund's Surety Claim arises from (i) a pre-petition supersedeas bond (the "Bond") posted by Fireman's Fund on behalf of W.R. Grace & Co. and W.R. Grace & Co.-Conn. (together, "Grace") in connection with Grace's appeal of a Texas state court judgment against it in five consolidated asbestos personal injury cases (collectively, "Edwards") and (ii) a related pre-petition "Indemnity Agreement" under which Grace assumed a contractual obligation to indemnify Fireman's Fund for any and all loss Fireman's Fund suffers under the Bond. The

---

[1]   All capitalized terms not otherwise defined in this Objection refer to those terms as currently defined in the Plan and in the Disclosure Statement relating to the Plan (the "Disclosure Statement," Dkt. No. 20873) in the forms in which such documents appear on the docket as of this date. All statutory references are to the Bankruptcy Code, 11 U.S.C., unless otherwise stated.

[2]   *See* e-mail from Theodore Freedman and Mark Plevin, dated May 7, 2009, Exh. A. to the Declaration of Leslie A. Davis In Support Of Phase II "Surety Claim" Related Objections Of Fireman's Fund Insurance Company, As A Creditor, To Confirmation Of The First Amended Plan Of Reorganization.

face amount of the Bond is slightly more than $43 million.  Grace obtained the Bond to forestall efforts by the <u>Edwards</u> plaintiffs to execute their judgment against Grace's assets while the appeal was pending.

The appeal that is the subject of the Bond has been stayed by Grace's bankruptcy case.  Once the appeal resumes and the amount (if any) of Grace's liability for the underlying judgment is determined, Fireman's Fund will be entitled to setoff Grace's obligation to Fireman's Fund under the Indemnity Agreement (reflecting any amounts Fireman's Fund is required to pay under the Bond) against Grace's claim for insurance coverage of underlying asbestos liabilities under insurance policies issued by Fireman's Fund, since both obligations are mutual and arose pre-petition.  Under § 553 of the Bankruptcy Code, Fireman's Fund's setoff rights must be preserved, but they are not under the proposed Plan.

Because discovery on Phase II issues has not been completed, the objections stated herein are necessarily summary in nature, not a final or complete statement of Fireman's Fund's objections to confirmation of the Plan.  Rather, in accordance with the CMO, after the completion of discovery (other than as to feasibility), Fireman's Fund will state more fully all of its objections in its Phase II Trial Brief, which is due on July 13, 2009.

Notwithstanding that these objections are being submitted at a relatively preliminary stage of the Phase II proceedings, it is apparent that the Plan fails to meet the confirmation requirements of § 1129(a) and therefore cannot be confirmed.  In addition, the Plan also fails to meet the requirements of § 524(g), precluding the issuance of a channeling injunction with respect to Fireman's Fund's claim for contractual indemnification.  In summary, Fireman's Fund's objections are as follows:

1.    The Plan violates § 1129(a)(1) because it fails to comply with numerous provisions of Chapter 11 of the Bankruptcy Code.

a.      The Plan violates § 1122(a) by improperly classifying Fireman's Fund's Surety Claim as an Indirect PI Trust Claim within Class 6 (Asbestos PI Claims).  Instead, Fireman's Fund's Surety Claim should be classified as a General Unsecured Claim in Class 9.

b.      The Plan violates § 1123(a)(3) because it fails to specify the treatment of Fireman's Fund's Surety Claim, assuming it remains classified in Class 6.  Rather, the TDPs provide that Indirect PI Trust Claims "shall be processed in accordance with procedures ***to be developed*** and implemented by the Trustees."[3]

c.      The Plan violates § 1123(a)(4) by failing to "provide the same treatment for each claim or interest of a particular class."  The Plan purports to establish procedures to pay Asbestos PI Claims pursuant to a matrix set forth in the TDP, but the TDP fails to set out any procedures for the treatment of Indirect PI Trust Claims, which are in the same class as Asbestos PI Claims.  The Plan is also silent as to the treatment of the portion of Fireman's Fund's Surety Claim that is secured by a letter of credit that was issued in favor of Fireman's Fund pre-petition.  Therefore, nothing in the Plan suggests that it will provide the same treatment for the type of Indirect PI Trust Claim that Grace contends Fireman's Fund holds as it does for Asbestos PI Claims.

d.      The Plan violates § 553(a) by failing to preserve Fireman's Fund's right, under applicable non-bankruptcy law, to set off the amounts

---

[3]    TDP § 5.6 (emphasis added).

3

that Grace owes to Fireman's Fund under the Indemnity Agreement against

obligations allegedly owed by Fireman's Fund to Grace under Fireman's

Fund's insurance policies.

2.      The Plan does not satisfy the requirement under § 1129(a)(3) that it be

"proposed in good faith and not by any means forbidden by law."

        a.      The Plan has not been proposed in good faith because, as the

evidence will show, the Plan Proponents were aware of Fireman's Fund's

right to be fully indemnified for any amounts it is required to pay under the

Bond, but they nevertheless drafted the Plan in a way that violates Fireman's

Fund's contractual rights and eliminates its setoff rights.

        b.      The Plan violates Fireman's Fund's contractual rights under

the Bond and the Indemnity Agreement by, among other things: (i) imposing

extracontractual conditions on Fireman's Fund being paid; and (ii)

improperly converting the Bond, which is a form of guaranty, into an asset at

Debtors' disposal.

        c.      The Plan improperly vests in the Asbestos PI Trust the

exclusive right to control the prosecution of the <u>Edwards</u> appeal by assigning

to, and "indefeasibly vest[ing] in the Trust . . . all of the actions, claims,

rights, defenses, counterclaims, suits, and causes of action of the Debtors"

and granting the Asbestos PI Trust the "exclusive right" to enforce the

Asbestos PI Trust Causes Of Action.[4]  In fact, under the Indemnity

---

[4]    Plan §§ 7.2.4, 7.2.8.

Agreement and applicable Texas law, Fireman's Fund has the right to control prosecution of the appeal, if Grace fails to do so.

3.      The Plan fails to satisfy the requirements of § 524(g), because it improperly channels Fireman's Fund's contractual indemnity claim to the Trust.

## FACTUAL BACKGROUND

**A.    The Supersedeas Bond Fireman's Fund Posted To Secure Grace's Appeal Of The <u>Edwards</u> Judgment**

In April, 2000, Grace suffered a judgment in Texas state court under which the <u>Edwards</u> plaintiffs were awarded compensatory damages against Grace totaling $21 million, punitive damages against Grace in the amount of $21.5 million, and post-judgment interest at the rate of 12 percent per annum.[5]  (Interest accrued to date on the compensatory damages portion of the judgment amounts to approximately $22 million.)  Grace timely appealed the judgment.

Under Texas law, a judgment-holder may immediately begin execution against a judgment debtor's assets, notwithstanding the pendency of an appeal, unless collateral is posted to secure payment of the judgment in the event the appeal is unsuccessful and the judgment debtor fails to satisfy the judgment.[6]  In order to stay execution of the judgment against its assets while it appealed, Grace obtained the Bond from Fireman's Fund.  The Bond is a supersedeas bond in the amount of $43,038,931.91.

---

[5]    The compensatory damage portions of the judgment were awarded jointly and severally against Grace and Pittsburgh Corning Co., which filed for bankruptcy before the appeal.

[6]    *See* <u>Mid-Century Ins. Co. of Texas v. Boyte</u>, 80 S.W.3d 546, 548 (Tex. 2002) ("Parties become judgment debtor and judgment creditor at the entry of the trial court's judgment, not when all appeals are finalized"); Tex. R. App. P. 24.1 (setting forth the manner in which a judgment debtor can suspend enforcement of a judgment, including by "filing with the trial court clerk a good and sufficient bond" or "making a deposit with the trial court clerk in lieu of a bond"); Tex. Civ. Proc. Code § 51.001 (defining "security" as "a bond or deposit posted, as provided by the Texas Rules of Appellate Procedure, by a judgment debtor to ***suspend execution of the judgment during appeal of the judgment***") (emphasis added).

5

As an express precondition to its willingness to issue the Bond, Fireman's Fund required that Grace enter into the Indemnity Agreement, pursuant to which Grace is obligated to indemnify Fireman's Fund for any and all loss that Fireman's Fund incurs as a result of issuing the Bond:

> The Indemnitors [Grace] will indemnify the Surety [Fireman's Fund] against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such Bonds and any renewal, continuation or successor thereof, including but not limited to sums paid or liabilities incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

The Indemnity Agreement also obligates Grace to pay premiums for the Bond, as long as potential liability under the Bond continues.

On April 13, 2001, after learning of Debtors' bankruptcy filing and the consequent automatic stay, the Texas Court of Appeals suspended the appeal, and entered an order stating that "for administrative purposes this case is abated and will be treated as closed."[7] At that time, Grace had filed its opening appellate brief, but no other proceedings had taken place. In particular, the appellees had not yet filed any response to Grace's opening appellate brief. The appeal remains abated.

### B.    Fireman's Fund's Surety Claim Against Grace

On March 27, 2003, Fireman's Fund timely filed its proof of claim in this bankruptcy case, asserting the Surety Claim. The proof of claim asserts an unsecured claim for the full amount of the Bond, $43,038,931.91, which is the maximum amount that Grace could be obligated to pay to Fireman's Fund pursuant to the Indemnity Agreement, should Fireman's

---

[7]    Opinion dated April 13, 2001, <u>W.R. Grace & Co. v. Edwards, *et al.*</u>, No. 06-00-00112-CV (Tex. App. April 13, 2001).

Fund incur any loss as a result of furnishing the Bond.  The proof of claim also asserts a secured claim based on a $13 million letter of credit provided by Wachovia Bank to secure Grace's obligations to Fireman's Fund under the Indemnity Agreement, including the payment of premiums.  Fireman's Fund has already drawn approximately $1.8 million on the letter of credit due to Grace's failure to pay premiums owed on the Bond, leaving collateral of approximately $11,204,000 available.  No one has objected to Fireman's Fund's proof of claim, hence the claim is undisputed.

   Fireman's Fund's Surety Claim is contingent on Grace failing to pay a final judgment to the Edwards plaintiffs if Grace's appeal is unsuccessful.  Grace, of course, would be the primary obligor on any final judgment in favor of the Edwards plaintiffs; Fireman's Fund, as the surety under the Bond, is only a secondary obligor, obligated to pay only if Grace fails to do so.  The purpose of the Indemnity Agreement is to ensure that the obligation to pay the judgment ultimately remains with Grace, where it belongs.  Under the Indemnity Agreement, Grace is liable to reimburse Fireman's Fund for 100 percent of any payment Fireman's Fund makes under the Bond.  Grace has never contended that the Indemnity Agreement is unenforceable.  In fact, the evidence will show that Grace is not aware of any facts suggesting that the Indemnity Agreement is unenforceable.

   The amount of Grace's obligation to Fireman's Fund under the Indemnity Agreement is uncertain, because it is uncertain how much, if anything, Fireman's Fund may be required to pay under the Bond.

   Grace could owe Fireman's Fund as much as $43,038,931.91, if (i) the appeal is reinstated on the docket of the Texas Court of Appeals, (ii) the trial court's judgment in favor of appellees is affirmed (both in the Texas Court of Appeals and in any subsequent proceedings before the Texas Supreme Court), (iii) Grace fails to pay the final judgment, and (iv) Fireman's

Fund is required to pay the judgment pursuant to the Bond.  The amount Grace would then owe

Fireman's Fund would be the full amount paid by Fireman's Fund (*i.e.*, the amount of the

judgment and accrued post-judgment interest (but likely excluding punitive damages), up to the

$43+ million face amount of the Bond, less whatever remaining collateral Fireman's Fund is able

to draw under the Wachovia letter of credit).

However, if Grace were to prevail on appeal (either because the judgment is

reversed on the merits, or because the case is remanded for a new trial due to procedural

irregularities or for other reasons), then the existing judgment would be vacated and Fireman's

Fund would be released from any obligation under the Bond.  (In that event, the Edwards

plaintiffs would be required under the Plan (if it is confirmed) to submit their claims to the Trust

for resolution under the TDPs, and they would lose any claim to post-judgment interest.[8])

Based on the numerous errors committed by the trial court, the likelihood of

Grace's appeal being successful is very high, as set out in Grace's opening appellate brief in the

Texas Court of Appeals.  Grace's appellate brief sets forth 14 separate issues justifying reversal.

Some of the issues upon which Grace urges that the judgment be either reversed and rendered in

favor of Grace, or reversed and remanded for a new trial, or that the damages be remitted, are as

follows:

- The 69-member jury panel from which the twelve jurors were ultimately selected
  included 31 people who were plaintiffs in an asbestos action, were related to or
  otherwise connected with persons with asbestos claims, or had themselves been
  screened for asbestos-related disease.  Grace's motion to strike the panel was

---

[8]    *See, e.g.*, Tr. of Deposition of Peter Van N. Lockwood, In re W.R. Grace & Co., No. 01-01139
(Bankr. D. Del. May 4, 2009) at 613:14-614:20; Tr. of Deposition of David Austern, In re W.R. Grace &
Co., No. 01-01139 (Bankr. D. Del. May 15, 2009) at 200:9-201:20.

improperly denied.

- One person who was seated as a juror failed to reveal during voir dire that she and her husband were working with an attorney and actively preparing to file an asbestos personal injury lawsuit against Grace and other defendants.  That juror and her husband actually filed their lawsuit ***during the Edwards trial***.  When this fact was brought to the court's attention during the trial, the court improperly refused to excuse the juror from the panel.

- Plaintiffs failed to prove exposure to any Grace product.  The plaintiffs, who worked at a U.S. Steel plant in Alabama, were all unable to identify a single Grace product that they used or handled.  The plaintiffs did not produce any invoices, bills of lading, or other records showing that any Grace product was sold or shipped to the U.S. Steel plant where they worked.

- The court erroneously refused to admit evidence presented by Grace which would have shown the plaintiffs' employer's knowledge of asbestos hazards, and conditions in the workplace such as warning signs, and practices such as requiring the use of respirators, dust controls, and air monitoring, all of which was relevant to prove potential negligence on the part of the plaintiffs' employer, rather than by Grace.

- The court improperly consolidated the claims of five plaintiffs with very different types of medical claims, including a wrongful death claim, a lung cancer case, and three non-malignancy cases.  The consolidation resulted in a confusing mix of burdens of proof and also improperly included punitive damages issues relating to the wrongful death case with solely compensatory damage issues relating to the four personal injury actions.

**C.    Fireman's Fund's Right To Setoff**

Fireman's Fund is one of several insurance companies that, pre-petition, issued comprehensive general liability insurance policies to Grace that Grace asserts provide coverage for its liability to asbestos bodily injury claimants.  Grace seeks to apply the proceeds of the Fireman's Fund policies, if any, to fund its proposed § 524(g) Trust.  There can be no dispute that Grace's claims to the insurance proceeds are pre-petition claims, since the policies were issued long before Grace filed for bankruptcy.

Fireman's Fund's Surety Claim against Grace under the pre-petition Indemnity Agreement is also a pre-petition claim, albeit contingent on a post-petition event.  As discussed below, Fireman's Fund has an absolute right under § 553(a) to use the amount of Grace's payment obligation under the Indemnity Agreement as an offset to reduce the amount of insurance policy proceeds that Grace claims Fireman's Fund is obligated to pay under the policies it issued to Grace.  That setoff right existed before Grace filed for bankruptcy, and the Bankruptcy Code requires that it be preserved.  As demonstrated by the attached e-mail from Grace's counsel Mr. Freedman, Grace was well aware even before receiving these Objections that Fireman's Fund is asserting a right of setoff.  But despite knowing of the claim, Grace and the other Plan Proponents have failed to address it properly in the Plan.  Since the Plan fails to preserve Fireman's Fund's right of setoff, the Plan cannot be confirmed.

## OBJECTIONS TO CONFIRMATION

**I.    The Plan Does Not Meet The Confirmation Requirements Of § 1129(a) Because Of Its Improper Treatment Of Fireman's Fund's Surety Claim And Its Abridgment Of Fireman's Fund's Legal Right To Setoff.**

**A.    The Plan Violates § 1129(a)(1) Because It Fails To Comply With Numerous Provisions Of Chapter 11 Of The Bankruptcy Code.**

**1.    The Plan violates § 1122(a) because it improperly classifies Fireman's Fund's entire claim under the Indemnity Agreement in Class 6 with Asbestos PI Claims, instead of in Class 9, with respect to its unsecured**

10

**claim, and Class 2 with respect to the part of its claim that is secured by the Wachovia letter of credit.**

The Plan classifies Fireman's Fund's Surety Claim, which is a contractual indemnity claim, as an Indirect PI Trust Claim within Class 6, along with the claims of thousands of asbestos personal injury plaintiffs whose claims, referred to as "Asbestos PI Claims," all arise in tort.  But since Fireman's Fund's Surety Claim is completely different in nature and legal character from the Asbestos PI Claims, it should properly be classified as a General Unsecured Claim in Class 9.  The failure of the Plan to properly classify Fireman's Fund's claim violates § 1122(a), which permits claims to be placed in the same class only if they are "substantially similar."[9]

The purpose of classifying similar claims together is to "insure[ ] that 'classes of claims will have similar interests and that votes cast by the class will reflect joint interests of the class.'"[10]  There are no such joint interests here between the Asbestos PI Claimants – who allege that Grace is liable to them in tort for personal injuries that they have suffered – and Fireman's Fund, to whom Grace is liable under a written indemnification contract whose purpose is to make Fireman's Fund whole for any amounts it advances on behalf of Grace, the primary obligor under any final judgment in favor of the <u>Edwards</u> plaintiffs.  Therefore, the classification of Fireman's Fund's Surety Claim in Class 6 does not satisfy the Bankruptcy Code's requirement that "classification of the claims or interests must be reasonable."[11]

---

[9]   <u>In re Jersey City Med. Ctr.</u>, 817 F.2d 1055, 1060 (3d Cir. 1987).  *See also* <u>In re AOV Indus., Inc.</u>, 792 F.2d 1140, 1150 (D.C. Cir. 1986) ("any group created must be homogeneous"), quoting <u>Barnes v. Whelan</u>, 689 F.2d 193, 201 (D.C. Cir. 1982), *vacated on other grounds*, 797 F.2d 1004 (D.C. Cir. 1986).

[10]   <u>In re Richard Buick, Inc.</u>, 126 B.R. 840, 853 (Bankr. E.D. Pa. 1991).

[11]   <u>Jersey City Med. Ctr.</u>, 817 F.2d at 1061.

In classifying claims and determining what claims are "substantially similar" under § 1122(a), "what matters is the legal character of the claim."[12]  The Ninth Circuit's ruling in <u>Johnston</u> is instructive.  In that case, the court affirmed lower court rulings approving a plan that classified the claim of one unsecured creditor, Steelcase, separately from the claims of other unsecured creditors.[13]  The Ninth Circuit framed the relevant question as follows:  "Whether the issue [ ] is denial of separate classification or approval of separate classification, the question . . . is the same:  are the claims substantially similar?"[14]  Answering that question, the Ninth Circuit found that Steelcase's claim was not substantially similar to other unsecured claims, and therefore was properly classified separately, because "the legal character of [Steelcase's] claim is ***not*** 'substantially similar to the other claims or interests of such [unsecured] class[es].'"[15]

> [Steelcase's] claim, unlike all others, is partially secured by collateral . . . Steelcase . . . unlike all other unsecured creditors, is embroiled in litigation with [debtor], and [ ] its claim thus may be offset. . . .  Steelcase cannot deny the possibility, if not necessarily the probability, that, if successful in the litigation, it could be paid in full before all other unsecured creditors.[16]

The court in <u>Congoleum</u> likewise examined the "legal character" of asbestos claims that had been placed into four separate classes, and concluded that there was no reasonable justification for separately classifying those claims because "[t]he nature of the Class

---

[12]  <u>In re Congoleum Corp.</u>, 362 B.R. 167, 183 (Bankr. D.N.J. 2007).  *See also* <u>In re Coram Healthcare Corp.</u>, 315 B.R. 321, 349 (Bankr. D. Del. 2004) ("A proper determination of whether claims are "substantially similar" focuses on the nature of the claims"); <u>In re Dow Corning Corp.</u>, 244 B.R. 634, 35 (Bankr. E.D. Mich. 1999), *aff'd*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002) (in determining whether claims are "substantially similar," courts examine whether they are similar in "legal nature, character, or effect"); <u>Richard Buick</u>, 126 B.R. at 853 ("'the primary analysis centers upon the legal attributes of the claims. . . . Emphasis is not upon the holder so much as it is upon that which is held'"), quoting <u>In re Northeast Dairy Cooperative Federation, Inc.</u>, 73 B.R. 239, 248 (Bankr. N.D.N.Y. 1987).

[13]  <u>Steelcase, Inc. v. Johnston</u> (In re Johnston), 21 F.3d 323, 327 (9th Cir. 1994).

[14]  *Id*. at 328 (emphasis in original).

[15]  *Id*.

2, 3, 10, and 11 claims vis-à-vis the bankruptcy estate is the same – they are tort claims."[17]

Similarly, in <u>Coram</u>, the court held that the claims of one group of unsecured creditors, arising

from the purchase of notes (the "Noteholders"), were properly classified separately from the

unsecured claims of trade creditors, because (i) while the trade creditors' claims arose from the

provision of services to the debtor, the Noteholders' claims did not, (ii) the Noteholders' claims

were being treated differently by the plan, and (iii) the Noteholders "represent a voting interest

that is sufficiently distinct from the trade creditors to merit a separate voice in this reorganization

case."[18]

Here, "the legal nature, character, or effect" of Fireman's Fund's Surety Claim is

substantially different from the other claims classified in Class 6:

- Fireman's Fund's Surety Claim is at least partially secured by (i) the Wachovia letter of

    credit and (ii) its right to setoff the amount of the Surety Claim against its obligations, if

    any, to Grace under liability insurance policies issued by Fireman's Fund to Grace, which

    Grace contends provide coverage for Grace's asbestos liabilities.  In these respects, the

    Surety Claim is unlike the Asbestos PI Claims.

- Fireman's Fund's Surety Claim is a contractual indemnity claim, whereas the Asbestos PI

    Claims arise in tort and the Indirect PI Trust Claims are mostly contribution claims by

    tort system co-defendants of Grace.

---

*(Continued from previous page)*

[16]   *Id*. at 328.

[17]   <u>Congoleum</u>, 362 B.R. at 184.  *See also* <u>In re Salem Suede, Inc.</u>, 219 B.R. 922, 933 (Bankr. D. Mass. 1998) (placing judgment creditors' secured and unsecured claims in the same class and separately classifying the judgment creditors' unsecured claims in a different class from the claims of other unsecured creditors was improper).

[18]   <u>Coram</u>, 315 B.R. at 350-51.

- The loss that Fireman's Fund would incur if it is required to make payment on the Bond is purely financial and contractual; there is no element of negligence on the part of Grace, and no bodily injury to Fireman's Fund, as there is regarding the tort claims of the Asbestos PI Claimants.

- Grace is the primary obligor to the Edwards plaintiffs, just as it is the primary obligor to all other Asbestos PI Claimants. Grace is also the primary obligor with respect to contribution claims asserted against it by Indirect PI Trust Claimants who assert that they have settled a portion of Grace's liability to tort claimants. In contrast, as surety under the Bond, Fireman's Fund is merely a secondary obligor, backstopping Grace's obligation to the Edwards plaintiffs under any final judgment.[19] If Grace, as the primary obligor, fails to fulfill its obligations to asbestos claimants in the Edwards matter, and Fireman's Fund is forced to pay on the Bond, its contractual Surety Claim against Grace under the Indemnity Agreement is not somehow converted into an asbestos-related tort claim that can properly be classified in Class 6.

- Finally, the Bond which Fireman's Fund provided at Grace's request benefited Grace, by making it possible for Grace to avoid committing its own funds to stay execution of the Edwards judgment. This is another factor that distinguishes Fireman's Fund's Surety Claim from the tort claims of the Asbestos PI Claimants, whose claims against Grace are not based on any benefit they conferred on Grace.

    For each of these reasons, the "legal character" of Fireman's Fund's claim is not

---

[19] *See, e.g.,* Muniz v. Vasquez, 797 S.W.2d 147, 150 (Tex. App. – Houston [14th Dist.] 1990) ("The supersedeas bond is not an unconditional agreement to pay a stated sum of money; but imposes only a contingent or conditional liability, and its primary purpose is security"), citing State v. Watts, 197 S.W.2d 197, 199 (Tex. Civ. App. –Austin 1946).

substantially similar to that of the Asbestos PI Claims, and Fireman's Fund's Surety Claim consequently cannot be included within Class 6.

Even Grace appears to harbor doubts about the correctness of its having classified the Fireman's Fund Surety Claim in Class 6:  although stating that he was not surprised to learn that Fireman's Fund had been sent a Class 6 ballot, given the terms of the Plan, Grace's Rule 30(b)(6) witness testified on May 13 that the classification of Fireman's Fund's claim was nevertheless "still under discussion and consideration at Grace" and that the claim ultimately may be "classified differently."[20]

Another problem with the proposed classification of the Surety Claim in Class 6 is that the Plan completely fails to address the portion of Fireman's Fund's claim that is secured.[21]  The Disclosure Statement states that the estimated amount of all secured claims in Class 2 is only $4.7 million,[22] which indicates that the Plan is not taking into consideration the letter of credit securing Grace's payment of Fireman's Fund's Surety Claim.  The remaining collateral under that letter of credit is now approximately $11.2 million.  To the extent that the Plan disregards the secured portion of Fireman's Fund's Surety Claim, and treats the entire claim as an unsecured Indirect PI Trust Claim notwithstanding the existence of the letter of credit protecting Fireman's Fund, the Plan violates § 1122(a).

---

[20]  *See* Tr. of Deposition of Richard Finke, In re W.R. Grace & Co., No. 01-01139 (Bankr. D. Del. May 13, 2009) at 270:17-271:2.

[21]  *See* Fireman's Fund's proof of claim (stating that the claim is supported by a letter of credit in the amount of $13,000,000).  As noted, a portion of the letter of credit was previously drawn down to pay premiums to keep the Bond in force.

[22]  Disclosure Statement § 1.2.1, at p.6.

**2.      The Plan violates §§ 1123(a)(3) and 1123(a)(4) because it fails to specify the treatment of Fireman's Fund's Surety Claim, and it discriminates among claimants within the same class.**

Section 1123(a)(3) requires that a plan must specify "the treatment of any class of claims or interests that is impaired under the plan."  Further, § 1123(a)(4) requires that a plan must "provide the same treatment for each claim or interest of a particular class."  Pursuant to the plain language of those provisions, the Plan fails to satisfy both of these requirements as to the Fireman's Fund Surety Claim, should it remain in Class 6.

Class 6 includes two types of claims, Asbestos PI Claims and Indirect PI Trust Claims.  The Plan, however, only specifies the treatment of Asbestos PI Claims, stating in § 3.1.6 that "All Asbestos PI Claims shall be resolved in accordance with the terms, provisions, and procedures of the Asbestos PI Trust Agreement and the Asbestos PI TDP."  While Section V of the TDPs sets out detailed procedures for the ordering, processing, and payment of Asbestos PI Claims, TDP § 5.6 states that "Indirect PI Trust Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Bankruptcy Court shall be processed in accordance with procedures ***to be developed and implemented by the Trustees***."[23]  In other words, rather than specify now how Indirect PI Trust Claims will be treated post-confirmation, the Plan provides that the Trustees will make it up as they go along.

As a consequence of the Plan's failure to specify any adequate mechanism for allowance or payment of the type of Indirect PI Trust Claim that Grace contends Fireman's Fund holds, there is no way to tell how such claims will be treated.  Since the Plan and TDPs do specify the treatment of Asbestos PI Claims, also classified in Class 6, it is obviously unclear whether Indirect PI Trust Claims will be treated in the same manner as "direct" Asbestos PI

---

[23]    TDP § 5.6 (emphasis added).

16

Trust claims.  The Plan is therefore unconfirmable because it does not satisfy the requirements of § 1123(a)(3).[24]

What little the Plan does say about the treatment of Indirect PI Trust Claims, however, indicates that it does not provide the same treatment for Indirect PI Trust Claims as it does for direct Asbestos PI Claims, thus failing to meet the requirements of § 1123(a)(4).  A direct claimant can be paid simply based on its rights under state law.  Indirect PI Trust Claimants, however, must establish more than a right to payment under state law, since they must also prove that they paid a liability that would otherwise be payable by the Trust.  Moreover, direct claimants are immediately eligible for payment in FIFO order "based on the date their liquidation becomes final."[25]  Indirect PI Trust Claims, on the other hand, will not be paid unless, among other things, the claimant asserting an Indirect PI Trust Claim obtains a release of the PI Trust from all liability to the direct claimant.[26]  Such a requirement may make sense for tort system co-defendants of Grace whose "indirect" claim against Grace is based on a contention that their settlement payments to asbestos claimants resolved Grace's liability as well.  But such an extracontractual requirement cannot be justified with respect to Fireman's Fund, whose Surety Claim against Grace will result from Fireman's Fund paying a judgment under compulsion, not entering into a settlement.  If the Edwards plaintiffs still have a judgment after appellate proceedings are completed, they will simply demand payment of the judgment, and cannot be compelled also to execute releases.  The increased burdens placed on Fireman's Fund

---

[24]   See, e.g,. In re Butler, 42 B.R. 777, 780 (Bankr. D. Ark. 1984) (§ 1123(a)(3) "requires the plan to specify the amount of payments to be made and the date when such payments will be due," and the proposed plan in that case failed to satisfy that requirement because "not one sentence" specified the payments that a certain class of claims will receive, or when those claims would be paid).

[25]   Id. § 5.1(c).

[26]   Id. § 5.6.

as a purported Indirect PI Trust Claimant demonstrates inequality of treatment in violation of § 1129(a)(4).[27]

The court's ruling in <u>In re Smith</u> is instructive.[28]  In that case, the debtor placed the claim of a plaintiff who had sued the debtor in the same class with all other unsecured creditors.  The plan proposed to pay unsecured creditors in full within 30 days of confirmation, except for the plaintiff and the holder of one other "disputed" claim.  Those two creditors were to receive nothing under the plan, but would retain the right to pursue their causes of action outside of the bankruptcy forum.  Later, the debtor proposed to modify the plan, leaving the plaintiff as the only class member who would not be paid shortly after confirmation.  In response to the proposed modification, the bankruptcy court found that "[the plaintiff's treatment] alone, is enough to deny the Debtor confirmation of her plan, for it violates the dictates of 11 U.S.C. § 1123(a)(4) which requires that all claims within a given class receive 'the same treatment.'"[29]

Similarly, this Court in <u>Planet Hollywood</u> rejected a proposed plan modification that would have treated one creditor with a "disputed claim" differently from other creditors of the same class with "disputed claims," on the ground that the modification would have violated § 1123(a)(4).[30]  Originally, the plan required payment of only "allowed claims," defined as claims that had been allowed by a final order no longer subject to appeal.  The debtor did not make payments to a particular unsecured creditor because the debtor appealed an order allowing that creditor's claim.  The creditor moved to modify the plan to provide that its claim would be paid

---

[27]  *See* <u>AOV Industries</u>, 792 F.2d at 1152 ("It is disparate treatment when members of a common class are required to tender more valuable consideration – be it their claim against specific property of the debtor or some other cognizable chose in action – in exchange for the same percentage of recovery").

[28]  <u>In re Smith</u>, 123 B.R. 863 (Bankr. C.D. Cal. 1991).

[29]  *Id.*

[30]  <u>In re Planet Hollywood Int'l</u>, 274 B.R. 391, 400 (Bankr. D. Del. 2001).

immediately, or that payments to it would be put in escrow until the appeal was completed. The court found that the proposed modification was improper because it would have treated that one creditor differently than other creditors of the same class who also had "disputed claims."[31]

As in Smith and Planet Hollywood, the Plan's failure to specify how Indirect Asbestos PI Claims will be processed and paid, despite the detailed treatment set forth in the Plan for holders of direct Asbestos PI Claims, and its imposition of burdens on holders of Indirect Asbestos PI Claims that exceed those placed on holders of direct Asbestos PI Claims in order to recover on their claims, necessarily means that holders of Indirect Asbestos PI Claims will not receive the "same treatment" as holders of direct Asbestos PI Claims who are in the same class. The Plan's failure to ensure the "same treatment" of Indirect Asbestos PI Claims and direct Asbestos PI Claims in the same class violates the requirements of § 1123(a)(4), thereby prohibiting confirmation of the Plan.

> 3.    The Plan fails to preserve Fireman's Fund's statutory right, pursuant to § 553(a), to set off amounts that Grace owes to Fireman's Fund under the Indemnity Agreement against any obligations owed under Fireman's Fund's insurance policies.

Section 553(a) of the Bankruptcy Code provides that "this title does not affect the right of any creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . against a claim of such creditor against the debtor that arose before the commencement of the case."[32] This language not only establishes a right to setoff in bankruptcy, it is also controlling notwithstanding any other provision of the Bankruptcy Code. Because a plan of reorganization is proposed pursuant to §§ 1121, 1123, and 1129, the

---

[31]   *Id.*

[32]   11 U.S.C. § 553(a).

necessarily implication of the language in § 553(a) is that a creditor's right to setoff shall not be affected by a plan.

Section 553(a) preserves in bankruptcy any setoff rights that exist under applicable non-bankruptcy law.[33]  As one bankruptcy court has explained, the right to setoff allows "[p]arties owing mutual debts . . . to state the accounts between them, to subtract the one from the other, and to pay only the balance.  This practice is grounded in avoiding the absurdity of 'making A pay B when B owes A.'"[34]

But although § 553 mandates that setoff rights are preserved notwithstanding any other provision of the Bankruptcy Code, it appears that the Plan improperly purports to eliminate Fireman's Fund's setoff rights (to the extent Fireman's Fund's claim remains classified as a Class 6 Indirect PI Trust Claim).  The Asbestos PI Channeling Injunction described in § 8.2.1 of the Plan expressly enjoins holders of Asbestos PI Claims (defined to include Indirect PI Trust Claims), from "setting off, seeking reimbursement of, indemnification or contribution from . . . or otherwise recouping in any manner, directly or indirectly, any amount against any liability

---

[33]   11 U.S.C. §553(a); Citizens Bank of Maryland v. Strumpf, 116 U.S. 286, 289 (1995); Metco Mining & Minerals, Inc. v. PBS Coals, Inc. (In re Metco Mining & Minerals, Inc.), 171 B.R. 210, 216 (Bankr. W.D. Pa. 1994).  A right to set off mutual debts has long been recognized in Texas (where the Edwards trial took place), Maryland (where Grace is located, and where it signed the Indemnity Agreement), and California (where Fireman's Fund is located).  See, e.g., Sommers v. Concepcion, 20 S.W.3d 27, 35 (Tex. App. 2000) ("The right of setoff allows entities that owe each other money to apply their debts to each other"); Gingher v. Fanseen, 172 A. 75, 78 (Md. 1934) ("'The defense of set-off, technically, means a cross-claim, and is confined to mutual debts between the plaintiff and defendant'"), quoting Cohen v. Karp, 122 A. 524, 525 (Md. 1923); Harrison v. Adams, 128 P.2d 9, 11 (Cal. 1942) ("it is well settled that a court of equity will compel a set-off when mutual demands are held under such circumstances that one of them should be applied against the other and only the balance recovered").

[34]   Metco, 171 B.R. at 216, quoting Matter of Bevill, Bresler & Schulman Asset Mgt., 896 F.2d 54, 57 (3d Cir. 1990).  See also In re Communications Dynamics, Inc., 382 B.R. 219, 228 (Bankr. D. Del. 2008) ("Courts have allowed this right [of setoff] because without it, it would be unfair to require a creditor to pay in full what is owed to the debtor only to receive a portion, if that, of its claim against the debtor").

owed to any [Debtors], or any property or interest in property of any [Debtors]."[35]  Instead, the "sole recourse" of the holder of an Asbestos PI Claim under the Plan "shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling Injunction and the Asbestos PI TDP," which, as mentioned above, fails to specify how a claim like Fireman's Fund's will be treated if left in Class 6, and, in any event, nowhere permits a party such as Fireman's Fund to exercise its setoff rights.  The Plan cannot be confirmed if it fails to preserve Fireman's Fund's setoff rights.[36]

The fact that Fireman's Fund's claim is presently contingent and unliquidated is no justification for the Plan's attempted elimination of Fireman's Fund's setoff rights. As the Ninth Circuit held in Newbery, "a claim may . . . be set off without regard to whether it is contingent or unliquidated, as long as the claim qualifies as 'mutual' under applicable nonbankruptcy law. . . ."[37]  Texas law likewise permits a creditor to pursue an unmatured set-off claim, provided the obligor is insolvent.[38]  In Williams, a Texas bankruptcy court upheld a bank's setoff claim against an account holder, finding that "it is clear that the Bank also had a valid [setoff] right on the petition date, even though the note had not 'matured' by its terms.

---

[35]  Plan, § 8.2.1.(d).

[36]  See, e.g., In re Phoenix Petroleum Co., 278 B.R. 385, 400 (Bankr. E.D. Pa. 2001) ("a creditor does not lose its setoff rights when it properly asserts that right prior to confirmation"); In re Lund, 136 B.R. 237, 241 (Bankr. N.D. 1990) (plan could not be confirmed because it "fails to preserve [a party's] contractual right to setoff").

[37]  Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1398-99 (9th Cir. 1996)) (citation omitted). See also Matter of Isis Foods, Inc., 24 B.R. 75, 76 (Bankr. W.D. Mo. 1982) ("It is patent law on the issue of setoff [ ] that the right of setoff may be asserted in the bankruptcy case even though at the time the petition is filed one of the debts involved is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated. Nor is it necessary that the debt sought to be setoff be due when the case is commenced").

[38]  Williams v. American Bank of the Mid-Cities, N.A. (In re Williams), 61 B.R. 567, 571 n.4 (Bankr. N.D. Tex. 1986).

Under Texas law, it is clear that a bank may offset an unmatured debt if the customer is 'insolvent.'"[39]  The debtor's bankruptcy filing was, of course, a judicial admission of insolvency.[40]

Therefore, the Plan cannot be confirmed because it fails to preserve Fireman's Fund's setoff rights, in violation of §§ 553 and 1129(a)(1).[41]

**B.     The Plan Does Not Satisfy The Requirement Under § 1129(a)(3) That It Be Proposed In "Good Faith And Not By Any Means Forbidden By Law."**

Section 1129(a)(3) of the Bankruptcy Code explicitly conditions confirmation of a Chapter 11 plan on a judicial finding that the plan was "proposed in good faith and not by any means forbidden by law."  The treatment of Fireman's Fund's claim under the Plan demonstrates that Plan Proponents cannot meet this requirement.

**1.     The Plan was not proposed in good faith.**

The good faith requirement "is designed to prevent abuse of the bankruptcy laws and protect jurisdictional integrity."[42]  Thus, for a plan to be proposed in good faith, it must exhibit "a fundamental fairness in dealing with one's creditors."[43]  Fundamental fairness requires that "the plan be proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code."[44]

---

[39]    *Id.*

[40]    *Id.*

[41]    *See* United States v. Continental Airlines (In re Continental Airlines), 134 F.3d 536, 541 (3d Cir. 1998) ("a right to set-off is preserved under § 553 in a bankruptcy proceeding").

[42]    In re Walker, 165 B.R. 994, 1001 (E.D. Va. 1994).

[43]    In re Jorgensen, 66 B.R. 104, 109 (9th Cir. B.A.P. 1986).

[44]    In re ACandS, Inc., 311 B.R. 36, 43 (Bankr. D. Del. 2004), citing Coram Healthcare, 271 B.R. at 234.

Here, the Plan was not proposed in good faith because, the evidence will show, Plan Proponents were fully aware of Fireman's Fund's claim but nevertheless drafted the Plan in a way that will violate Fireman's Fund's contractual rights under its Indemnity Agreement and eliminates, by fiat, Fireman's Fund's statutorily-preserved setoff rights.

Further, as shown in Fireman's Fund's Rule 3018 Motion and Disputed Classification Declaration, which are also being filed today, Grace has implemented fundamentally unfair voting procedures that (i) classify Fireman's Fund's claim in the wrong class, in order to avoid Grace's obligation to pay Fireman's Fund's claim in full together with other Class 9 claims, and (ii) values Fireman's Fund's $43+ million claim at just $1.00 for purposes of voting.  Together, these provisions have the effect of disenfranchising Fireman's Fund and preventing it from having any meaningful voice on the Plan's inappropriate treatment of its rights.

Therefore, the Plan is not being proposed in good faith and does not satisfy § 1123(a)(3).

2.    **The Plan violates Fireman's Fund's contractual rights under applicable non-bankruptcy law**

Courts that have considered the language "forbidden by law" in § 1129(a)(3) have held it that incorporates all applicable non-bankruptcy law.[45]  Here, the Plan violates § 1129(a)(3) because it contains provisions that violate Fireman's Fund's contractual rights under state law.

---

[45]    In re Zenith Elec. Corp., 241 B.R. 92, 108 (Bankr. D. Del. 1999) (determining whether a transaction between a controlling shareholder and its corporation contemplated in the debtor's plan violated Delaware corporations law); In re Cajun Elec. Power Coop., Inc., 230 B.R. 715, 737 (M.D. La. 1999) (plan did not satisfy the good faith requirement of § 1129(a)(3) because it attempted to improperly modify contracts, contrary to state law).

As discussed above, the Plan burdens Fireman's Fund's ability to recover on its Surety Claim by adding additional requirements not found in the Indemnity Agreement between Grace and Fireman's Fund.  Under the Indemnity Agreement, Grace agreed to reimburse Fireman's Fund for any loss Fireman's Fund suffers under the Bond, which would occur if Fireman's Fund were to pay any portion of a final judgment in the <u>Edwards</u> case in the event Grace fails to do so.  But the Plan imposes a new extracontractual requirement on Fireman's Fund as a pre-condition to Fireman's Fund obtaining any payment on its claim against Grace, which is that Fireman's Fund must first obtain a release in favor of the Asbestos PI Trust from the <u>Edwards</u> plaintiffs.  Nothing in the Indemnity Agreement requires Fireman's Fund to obtain any such releases before it would be indemnified by Grace.  Moreover, as discussed above, it is highly unlikely that if Fireman's Fund pays a final judgment in favor of the <u>Edwards</u> plaintiffs in conformity with the Bond, the <u>Edwards</u> plaintiffs would agree to sign releases in favor of Grace. At a minimum, they cannot be compelled to do so.  In that circumstance, the Plan would preclude Fireman's Fund from recovering from Grace under the Indemnity Agreement, thus overturning the entire structure of the transaction under which Fireman's Fund agreed to issue the Bond in favor of Grace and to protect Grace's assets from execution, but only on the condition that Grace remain ultimately financially liable for the judgment.

The Plan also purports to usurp Fireman's Fund's "exclusive right" under the Indemnity Agreement to "decide and determine whether any claim, liability, suit or judgment made or brought against the Surety [Fireman's Fund] or the Indemnitors [Grace] or any of them on any such Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed"[46] – a right that is separately recognized under Texas law.[47]  Under § 7.2.4 of the Plan,

---

[46]   Indemnity Agreement § 5.

however, all Asbestos PI Trust Causes of Action shall be "indefeasibly vested in" the Asbestos

PI Trust, and pursuant to § 7.2.8, the Asbestos PI Trust is empowered to "initiate, prosecute,

defend, and resolve all legal actions . . . related to any asset, liability, or responsibility of the

Asbestos PI Trust." The reason the Indemnity Agreement and Texas law give Fireman's Fund

the right to assume control of the bonded appeal is to protect itself from financial risk if the

appellant (Grace), having secured the Bond, attempts to evade its responsibility to prosecute the

appeal.[48] Given that the Trust is being established as a mechanism for efficiently resolving

claims, there is no reason to believe that it will have any incentive to actively pursue the Edwards

appeal (particularly if, pursuant to other provisions of the Plan, Fireman's Fund rather than Grace

or the Trust can be stuck with ultimate responsibility for payment of the judgment).

   In fact, there would be an obvious element of self-dealing involved if the Trust

were the one to decide whether to continue the appeal. Pre-bankruptcy, Grace had every

incentive to press its appeal of an erroneous judgment against it, since one way or the other,

Grace would be financially responsible for payment of the judgment (either by paying a

judgment directly, or by reimbursing Fireman's Fund as required by the Indemnity Agreement).

But the Trust has no similar concerns, particularly if the Plan can be twisted to force Fireman's

Fund to pay the judgment while, at the same time, stripping it of both (i) its contractual right to

---

*(Continued from previous page)*

[47] *See*, *e.g.*, In re Lumbermens Mutual, 184 S.W.3d 718, 720-21, 724 (Tex. 2006) (permitting surety that had issued a $29 million supersedeas bond to intervene in the principal's appeal in order to assert a potentially dispositive issue that the principal had abandoned, in order to "protect[ ] the funds that the underlying judgment puts at risk").

[48] Grace's Rule 30(b)(6) witness testified on May 13 that "Grace believes it has a very strong position on the appeal and that the appeal should be pursued." *See* Tr. of Deposition of Richard Finke, In re W.R. Grace & Co., No. 01-01139 (Bankr. D. Del. May 13, 2009) at 283:9-12. Fireman's Fund agrees. But the Plan would wrest control of the appeal from Grace and Fireman's Fund and hand it over to the Trust, which – to the extent it can evade Fireman's Fund setoff rights – may not have any financial incentive to continue prosecuting the appeal.

be fully reimbursed (through an unlawful classification of its Surety Claim) and (ii) its statutory right to assert the defense of setoff.  The self-dealing embodied by these Plan provisions is also strong evidence that the Plan does not meet the requirement of § 1129(a)(3) that it be proposed in good faith.

The Plan's treatment of Fireman's Fund's Surety Claim also turns the supersedeas bond relationship on its head, first by purporting to make Fireman's Fund the primary obligor to the <u>Edwards</u> plaintiffs when, in reality, it is merely a guarantor of Grace's potential obligation to them, and second by relegating Fireman's Fund to a cents-on-the-dollar recovery from the Asbestos PI Trust even though Grace agreed to fully indemnify Fireman's Fund against any loss Fireman's Fund may suffer by virtue of guaranteeing Grace's performance.  That is not the relationship that Fireman's Fund agreed to when it issued the Bond and required Grace to enter into the Indemnity Agreement, and the premium that Grace is obligated to pay for the Bond does not reflect risk of the magnitude potentially created by the Plan.[49]

## II.    The Plan Violates § 524(g) By Improperly Channeling Fireman's Fund's Indemnity Claim To The Asbestos PI Trust

Section 524(g) affords broad injunctive relief to a debtor who can meet the specific requirements set forth therein.  That relief applies, however, only to "the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products."[50]

---

[49]    *See* Restatement (First) Of Security § 103 ("Where suretyship exists, it is the duty of the principal to the surety to satisfy the surety's obligation by performing his own duty to the creditor . . . ").

[50]    11 U.S.C. § 524(g)(2)(B)(i).

26

Thus, while § 524(g) may afford broad relief, it is not infinite, and specifically only applies to a debtor's alleged asbestos-related personal injury, wrongful death, or property damage liability. It cannot be construed so broadly as to include discrete contractual claims, such as Fireman's Fund's, arising from a financial instrument that was intended by the parties only to guarantee satisfaction of a judgment against Grace, and to preserve Grace's assets in the process.

Yet the Asbestos PI Channeling Injunction described in § 8.2.1 of the Plan purports to sweep Fireman's Fund's contractual claim for indemnity into the Asbestos PI Trust, and to enjoin Fireman's Fund from asserting its Surety Claim directly against its contractual counter-party, Grace. Channeling Fireman's Fund's Surety Claim to the Trust is antithetical to the purposes for which the channeling injunction/trust mechanism was enacted. As the Third Circuit explained in Combustion Engineering:

> Channeling asbestos-related claims to a personal injury trust relieves the debtor of the uncertainty of future asbestos liabilities. This helps achieve the purpose of Chapter 11 by facilitating the reorganization and rehabilitation of the debtor as an economically viable entity. At the same time, the rehabilitation process served by the channeling injunction supports the equitable resolution of asbestos-related claims. In theory, a debtor emerging from a Chapter 11 reorganization as a going-concern cleansed of asbestos liability will provide the asbestos personal injury trust with an "evergreen" source of funding to pay future claims. This unique funding mechanism makes it possible for future asbestos claimants to obtain substantially similar recoveries as current claimants in a manner consistent with due process.[51]

These kinds of trusts were conceived of to handle massive numbers of future personal injury claims where the extent of the debtor's future liability could not be determined, and to streamline the process of providing fair and reasonable compensation to injured persons. Section 524(g)(2)(B)(ii)(V) requires that the trust mechanism "provide reasonable assurance that

---

[51]    In re Combustion Engineering, Inc., 391 F.3d 190, 234 (3d Cir. 2004).

Case 01-01139-AMC    Doc 21791    Filed 05/20/09    Page 34 of 35

the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner." But neither the Disclosure Statement nor the Plan suggest that Grace is likely to confront an overwhelming number of claims that are "similar" to Fireman's Fund's Surety Claim under the Indemnity Agreement. In fact, the Surety Claim is unique among all the claims against Grace.

Therefore, applying the channeling injunction mechanism of § 524(g) to Fireman's Fund's Surety Claim, where Grace's potential liability is both contractual and limited, is an abuse of the purpose for which § 524(g) was enacted.

## RESERVATION OF RIGHTS

Fireman's Fund reserves the right to supplement and modify these Objections to state additional objections, or to revise the objections already stated, based on information obtained through discovery, which is still ongoing, or through other investigation. Nothing in these Objections shall be construed as an acknowledgement that any of the policies issued by Fireman's Fund cover or otherwise apply to any Claims, losses, or damages on account of Claims or otherwise, or that any such Claims or causes of action are eligible for coverage under the Fireman's Fund policies. Fireman's Fund reserves the right to seek an adjudication that Debtors have waived or forfeited any allegedly available coverage under the policies.

In addition, Fireman's Fund (i) joins other objections being filed at this time to the extent they are applicable to the issues relating to the Bond and the Indemnity Agreement, and (ii) reserves the right to join other objections to confirmation filed by other parties in interest or creditors.

## CONCLUSION

For the reasons stated above, the Court should not confirm the Plan. In the alternative, the Court should only confirm the Plan if Fireman's Fund's Surety Claim is

classified and treated as a Class 9 claim entitled to 100% payment like other claims in Class 9,

and if the Plan is modified to preserve Fireman's Fund's setoff rights.

Dated:  May 20, 2009                          Respectfully submitted,


                                              /s/ John D. Demmy
                                              John D. Demmy (DE Bar No. 2802)
                                              STEVENS & LEE, P.C.
                                              1105 North Market Street, 7th Floor
                                              Wilmington, DE 19801
                                              Telephone:  (302) 425-3308
                                              Telecopier:  (610) 371-8515
                                              Email:  jdd@stevenslee.com

                                              - and –


                                              Mark D. Plevin
                                              Leslie A. Davis
                                              Tacie H. Yoon
                                              CROWELL & MORING LLP
                                              1001 Pennsylvania Avenue, N.W.
                                              Washington, D.C. 20004
                                              Telephone:  (202) 624-2500
                                              Telecopier:  (202) 628-5116
                                              Email:  mplevin@crowell.com
                                              Email:  ldavis@crowell.com
                                              Email:  tyoon@crowell.com

                                              Leonard P. Goldberger
                                              Marnie E. Simon
                                              (Members PA Bar)
                                              STEVENS & LEE, P.C.
                                              1818 Market Street, 29th Floor
                                              Philadelphia, PA  19103-1702
                                              Telephone:  (215) 751-2864/2885
                                              Telecopier:  (610) 371-7376/8505
                                              Email:  lpg@stevenslee.com
                                              Email:  mes@stevenslee.com

                                              ATTORNEYS FOR FIREMAN'S
                                              FUND INSURANCE COMPANY

7930830.04

29