IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W. R. GRACE & CO., et al., | : | Case No. 01-01139 (JKF) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Objection Deadline: May 20, 2009** |
| | : | |
| | : | **Re: Docket No. 20872** |

**ACTING UNITED STATES TRUSTEE'S OBJECTION TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W.R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS DATED FEBRUARY 27, 2009**

The Acting United States Trustee, by and through her counsel, hereby files the following objection to the First Amended Joint Plan of Reorganization of the Debtors, the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated February 27, 2009 (the "Plan"), and in support thereof states as follows:

**Introduction**

1.  Roberta A. DeAngelis is the Acting United States Trustee ("U.S. Trustee") for this District.

2.  Pursuant to 28 U.S.C. §586 and in furtherance of her case supervisory responsibilities, the U.S. Trustee has standing to raise and be heard on issues set forth in the Motion pursuant to 11 U.S.C. §307 and 28 U.S.C. §586(a). This duty is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts.

1

*See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

### Background

3.  On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing these chapter 11 cases (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.  Numerous committees representing various constituents have been appointed in this case. On April 13, 2001, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Creditors Committee"). Also on April 13, 2001, the U.S. Trustee appointed the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee") and the Official Committee of Asbestos Property Damage Claimants (the "PD Committee"). On June 18, 2001, the U.S. Trustee appointed the Official Committee of Equity Holders (the "Equity Committee"). In addition, on May 24, 2004, the Court appointed David Austern as the Personal Injury Future Claimants Representative (the "PI FCR").

5.  On March 9, 2009, the Court entered an order approving the Disclosure Statement related to the Plan. The Court also entered a Case Management Order related to the Plan, which scheduled the confirmation hearing in two phases. Phase I of the confirmation hearing shall take

place on June 22-25, 2009 and Phase II of the confirmation hearing shall take place on September 8-11, 2009.

6. The Plan is jointly proposed by the Debtors, the PI Committee, the PI FCR and the Equity Committee (collectively referred to as the "Plan Proponents").

## Basis for Relief Requested

7. The Court may confirm a plan under Chapter 11 only if each of the thirteen enumerated requirements of 11 U.S.C. §1129(a) are met. A limited exception is made if the requirements of 11 U.S.C. §1129(a)(8) are not met, confirmation can still occur if the provisions of 11 U.S.C. §1129(b) are met (the "cram-down" provisions).

8. The U.S. Trustee objects to the Plan on the following basis: (a) the Asbestos PI and Asbestos PD Channeling Injunctions are overbroad in the inclusion of certain entities that are not entitled to the injunctions; (b) the general releases are overbroad in that certain beneficiaries of those releases are not permitted to be released from all prepetition conduct under relevant law; and (c) the Exculpation clause is overbroad and is not supported by relevant law.

*Channeling Injunctions*

9. First, the U.S. Trustee objects to certain entities being included in the definition of Asbestos Protected Party and receiving the benefits of both the Asbestos PI and Asbestos PD Channeling Injunctions (as set out in Sections 8.2 and 8.3 of the Plan).

10. The Channeling Injunctions run to the benefit of an Asbestos Protected Party, which is a defined term under the Plan. The Representatives of the Debtors, Non-Debtor Affiliates, the Sealed Air Indemnified Parties, and the Fresenius Indemnified Parties are included in the definition of Asbestos Protected Party. The Representatives would include all professionals of these entities

and all past and present officers and directors. The inclusion of the professionals and past officers and directors in the Channeling Injunctions is not appropriate and in violation of relevant Third Circuit law. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 235 (3d Cir. 2004) (finding that § 524(g) injunction may not extend to third-party actions against non-debtors where the liability alleged is not derivative of the debtor).

11.  Moreover, to the extent that the Plan Proponents seek to approve a channeling injunction that goes beyond the specific mandates of section 524(g), such provisions would be in direct violation of the mandates of the *Combustion* decision. The Plan Proponents cannot rely solely on section 105 as support for the approval of an injunction.

*Releases*

12.  Next, the U.S. Trustee objects to the Plan Proponents providing releases (as set out in Sections 8.8.7 and 8.8.8 of the Plan) of the claims of the Debtors' and third-party claimants and interest holders in favor of certain non-debtor parties, including former directors and officers of the Debtors, the Non-Debtor Affiliates, Montana Vermiculite Company, and their particular Representatives. These releases are overbroad in scope and do not meet the relevant standard set out by the Delaware court in the *Zenith* case. *See In re Zenith Electronics*, 241 B.R. 92, 111 (Bankr. D. Del. 1999).

13.  The Bankruptcy Court in *Zenith* adopted a five part test enunciated in *Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994) to determine whether a release by a debtor of a third party as a part of a plan of reorganization is permissible. These factors are:

> "...(1) an identity of interest between the debtor and the third party...; (2) substantial contribution by the non-debtor of assets to the reorganization; (3) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success; (4) an agreement by a substantial majority of creditors

>     to support the injunction, specifically if the impacted class or classes 'overwhelmingly' votes to accept the plan; and (5) provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction." *Id.* at 937

Some parties may qualify for the protection afforded by the provision and some may not. The court in *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), examined a similar provision and tested its applicability as to each party to be affected by the provision. For example, the attempt in *Genesis*, supra, to release the debtor's post-petition management, was rejected, the Court stating: "As to the debtor's management personnel here, there is no showing that the individual releases have made a substantial contribution of assets to the reorganization." *Id* at 606.

14.     In the present case, the releases of these non-debtors do not meet the requisite standard set out in *Zenith*, specifically there has been no evidence that these non-debtors made a substantial contribution of assets to the reorganization. Because no evidence has been provided to support that the *Zenith* and *Master Mortgage* factors have been met, it is axiomatic that the releases cannot be approved. *See Genesis*, 266 B.R. at 606; *In re Exide Technologies*, 303 B.R. 48, 73-74 (Bank. D. Del. 2003) (both cases finding director and officer releases impermissible under the *Zenith* standard).

*Exculpation*

15.     Finally, the Exculpation clause in Section 11.9 of the Plan is objectionable because that provision appears to broaden the holding of *In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000), where the United States Court of Appeals for the Third Circuit held that the exculpation clause in PWS's plan correctly stated the standard of liability for members of the official committee of unsecured creditors and its professionals. The Third Circuit did not comment on the

propriety of exculpation clauses generally in *PWS*. Whether the protection afforded by the exculpation clause is properly characterized as a release or an injunction, the U.S. Trustee submits that, unlike the exculpation clause in *PWS*, the clause in the Plan goes beyond what was recognized in PWS.

16. In *PWS*, the Third Circuit held that an official committee, committee members and their professionals remained liable to third parties for willful misconduct or gross negligence since under Section 1103, the liability of committee members and their professionals are limited to willful misconduct or *ultra vires* acts. The Exculpation clause in the Plan contains a whole host of beneficiaries, including Representatives of the Debtors, the Non-Debtor Affiliates, and the various committees. Once again, the Debtors need to prove under the relevant law why certain entities who did not provide a contribution to this reorganization, such as former officers and directors and those Representatives of the Non-Debtor Affiliates, should be exculpated from virtually any post-petition conduct.

17. In light of the facts that the confirmation hearing will be held in two phases, with all of the issues address by the U.S. Trustee in this Objection to be heard in the Phase II hearing, and that discovery is still ongoing related to Phase II issues, the U.S. Trustee reserves her right to amend, modify, or supplement this Objection prior to the Phase II confirmation hearing.

WHEREFORE, the Acting United States Trustee respectfully requests this Court issue a ruling commensurate with the above referenced objection, and award such other relief as this Court deems appropriate under the circumstances.

                Respectfully submitted,

                ROBERTA A. DEANGELIS
                Acting United States Trustee

BY:   */s/ David M. Klauder*
       David M. Klauder
       Trial Attorney
       Office of the United States Trustee
       833 Chestnut Street, Suite 500
       Philadelphia, PA 19107

Dated: May 20, 2009       Telephone:  (215) 597-4411
       Facsimile:   (215) 597-5795