## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objections Due:** May 20, 2009 |
| | ) | |
| | ) | **Hearing Dates:** June 22-26, 2009 |
| | ) | September 8-11, 2009 |
| | ) | |
| | ) | Relates to Document No. 20872 |
| | ) | |
| | ) | Document No. _____ |
| _____ | ) | |

**OBJECTION OF CERTAIN LONDON MARKET INSURANCE COMPANIES
TO CONFIRMATION OF FIRST AMENDED JOINT PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W.R. GRACE & CO.,
ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY
CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE,
AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
DATED FEBRUARY 27, 2009 [DKT. NO. 20872]**

Certain London Market Insurance Companies as identified on Exhibit "A" to their

Notice of Appearance filed on January 5, 2009 (the "LMC") object to Confirmation of the First

Amended Joint Plan of Reorganization Under the Bankruptcy Code of W.R. Grace

& Co., *et al.*, The Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI

Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated

February 27, 2009 (the "Plan"):

## I.    SUMMARY OF ARGUMENT

1.    The Plan is fundamentally flawed because it fails to comply with

numerous provisions of the Bankruptcy Code and applicable law for, *inter alia*, the following

reasons:

- The Plan attempts to assume and assign to the Asbestos PI Trust the 1995 London Asbestos Settlement without complying with the requirements for assumption and assignment of an executory contract under of 11 U.S.C. § 365;

- The Plan attempts to grant the Trust improved rights under the 1995 London Asbestos Settlement, including, *inter alia*, excusing and waiving Debtors' breaches of the 1995 London Settlement Agreement; and

- The Plan is not Insurance Neutral.

For these reasons and for additional reasons as set forth below, the Plan does not meet the requirements of Sections 524(g) and 1129 of the Bankruptcy Code and, therefore, cannot be confirmed.[1]

2.        Pursuant to the Third Amended Case Management Order Related to the First Amended Joint Plan of Reorganization (the "CMO"), the LMC are required to file Final Plan Objections by May 20, 2009. Phase II Discovery does not conclude until June 15, 2009 and the Trial Briefs of Phase II Objectors are not due until July 13, 2009. Accordingly, LMC reserve the right, after the conclusion of discovery in their Phase II Trial Briefs, to supplement these Objections and assert additional grounds why the Plan fails to meet the requirements of Sections 1129(a) and 524(g) of the Bankruptcy Code.

## II.    OBJECTIONS TO CONFIRMATION OF PLAN (PHASE II ISSUES)[2]

### A.    A Brief Summary of The 1995 London Asbestos Settlement Agreement

3.        W. R. Grace & Co. and W. R. Grace & Co.-Conn. and the LMC are parties to a Confidential Settlement Agreement dated November 17, 1995 (the "1995 London Asbestos Settlement"). The 1995 London Asbestos Settlement was a comprehensive settlement of

---

[1]        The LMC also reserve the right to adopt and rely on any and all objections to the Plan that have been or may be raised by other interested parties.

[2]        The LMC do not address standing in light of the concession in paragraph 1 of the CMO that "Plan Proponents shall not challenged [sic] the standing of the insurers, to the extent they are parties to Asbestos Insurance Reimbursement Agreements, to object to, in Phase II, the Plan's proposed treatment of the Asbestos Insurance Reimbursement Agreements, under the Plan."

multiple disputes and contains significant ongoing obligations for all parties.  In summary, the

1995 London Asbestos Settlement allocates products bodily injury claims on a pro-rata basis

from date of first exposure until date of diagnosis, death or claim.  The allocation period is not

limited by the coverage block, so that amounts paid to a claimant with a first exposure in 1970

and a date of diagnosis in 2005 would be allocated from 1970 until 2005. In addition, the

coverage block under the 1995 London Asbestos Settlement does not collapse for insolvencies,

exhausted years, or years in which no coverage was placed. The 1995 London Asbestos

Settlement establishes extensive claims handling procedures that, *inter alia*: (i) require Grace to

obtain permission from London Market Companies prior to entering into a settlement that would

require Grace to pay in excess of $25,000 for an individual bodily injury claim or $250,000 for a

group of bodily injury claims; and (ii) grant extensive audit rights to LMC that include the right

to review individual claim files.  The 1995 London Asbestos Settlement also contains a material

confidentiality provision and an indemnity from Debtors in favor of LMC.

> **B.**        **Treatment of the 1995 London Asbestos Settlement Under The Plan**

> 4.        Under the Plan, the 1995 London Asbestos Settlement is classified as an

"Asbestos Insurance Reimbursement Agreement" ("AIRA") on Schedule 3 of the Asbestos

Insurance Transfer Agreement (Exhibit 6 to the Plan Exhibit Book) (hereafter the "Transfer

Agreement").  In turn, an AIRA is defined under the Plan as follows:

> [A]ny agreement entered into prior to the Petition Date between the Debtors or
> Non-Debtor Affiliates, or any of them or their predecessors , on the one hand, and
> any Asbestos Insurance Entity, on the other hand, to which the Asbestos Insurance
> Entity agreed to reimburse the Debtors or the Non-Debtor Affiliates, or any of
> them or their predecessors, for certain liability, indemnity, or defense costs arising
> from or related to asbestos-related claims, including Asbestos PI Claims.  The
> known Asbestos Insurance Reimbursement Agreements are listed on Schedule 3
> to the Asbestos Insurance Transfer Agreement.

*Plan, p. 5.*

5.      Pursuant to the Plan and the Transfer Agreement, the Insurance

Contributors (i.e., the Debtors) "irrevocably transfer, convey, and grant to the Asbestos PI Trust

all of their Asbestos Insurance Rights . . ."  *Transfer Agmt, § 1(a).*

6.      The Transfer is free and clear of all liens, claims and encumbrances,

except that "all *Asbestos Insurer Coverage Defenses* are preserved."  *Id.*  The Plan defines

Asbestos Insurer Coverage Defenses as follows:

> Asbestos Insurer Coverage Defenses are defined under the Plan to mean "all
> rights and defenses at law or in equity that any Asbestos Insurance Entity may
> have under any Asbestos Insurance Policy, Asbestos Insurance Settlement
> Agreement, Asbestos In-Place Insurance Coverage or applicable law to a claim
> seeking insurance coverage.  Asbestos Insurer Coverage Defenses include any
> defense based on the terms of the Plan or the Plan Documents or the manner in
> which the Plan or Plan Documents were negotiated; but Asbestos Insurer
> Coverage Defenses do not include any defense that (i) the Plan or any of the Plan
> Documents do not comply with the Bankruptcy Code, or (ii) the transfer of
> Asbestos Insurance Rights pursuant to the Asbestos Insurance Transfer
> Agreement is prohibited by an Asbestos Insurance Policy, any Asbestos Insurance
> Settlement Agreement, any Asbestos In-Place Insurance Coverage or applicable
> non-bankruptcy law."

*Plan, p. 6-7.*

7.      But the Plan goes further than just transferring an AIRA to the Asbestos PI

Trust *cum onere*.  An AIRA receives the following additional treatment in Section 7.2.2(b)(iv) of

the Plan:

> On the Effective Date, the Asbestos PI Trust shall be the successor to all rights of
> the Debtors and Non-Debtor Affiliates under each Asbestos Insurance
> Reimbursement Agreement.  The Asbestos PI Trust's payment of an Asbestos PI
> Claim under the PI TDP *shall be deemed to constitute settlement and payment of
> such claim by or on behalf of the Debtors or Non-Debtor Affiliates within the
> meaning of, and in full compliance with, each Asbestos Insurance Reimbursement
> Agreement*.

*Plan, p. 64.*  emphasis added

8.    Section 7.2.2(b)(iv) of the Plan substantially, substantively and detrimentally affects the rights of the LMC.  Section 7.2.2(b)(iv) of the Plan re-writes the terms of the 1995 London Asbestos Settlement so that payment of a claim by the Trust will be deemed to be settlement and payment of that claim in full compliance with the terms of the 1995 London Asbestos Settlement, whether or not it complies with the terms and conditions of the 1995 London Asbestos Settlement.  Nowhere in the Plan do Plan Proponents cite to any section of the Bankruptcy Code that authorizes Section 7.2.2(b)(iv) of the Plan.

9.    In order to effectuate this wholesale re-writing and impairment of LMC's contractual rights, the Plan Proponents carve the AIRA out from the insurance neutrality protections provided in Section 7.15 of the Plan.  Section 7.15(j) provides that "Asbestos Insurance Entities that are parties to Asbestos Insurance Reimbursement Agreements shall be bound by the provisions of Section 7.2.2(d)(v) of the Plan with respect to such Asbestos Insurance Reimbursement Agreements."  *Plan, p. 89.*

C.    **The 1995 London Asbestos Settlement Is an Executory Contract**

10.    The 1995 London Asbestos Settlement is an "Executory Contract", as it is so far unperformed by both the Debtor and LMC that "the failure of either [the Debtor or LMC] to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir. 1989); *see also Enter. Energy Corp. v. United States* (*In re Columbia Gas System, Inc.*), 50 F.3d 233, 239 (3d Cir. 1995); *Official Comm. of Unsecured Creditors of MetalSource Corp. v. U.S. MetalSource Corp.* (*In re U.S. Metalsource Corp.*), 163 B.R. 260, 269 (Bankr. W.D. Pa. 1993).

11.    Clearly, should Debtors fail to perform their obligations under the 1995 London Asbestos Settlement such as indemnifying LMC for an indemnified claim or refusing to

allow LMC to exercise their claims auditing rights, then Debtors' breach of contract would excuse LMC from future performance. These are more than mere ministerial obligations under a fully executed contract.

> **D.  The Plan Proponents Can Only Transfer the 1995 London Asbestos Settlement To the Asbestos PI Trust If They Can Comply With the Requirements of 11 U.S.C. § 365(b) Concerning Assumption and Assignment of Executory Contracts**

12.  Executory contracts can only be assumed pursuant to 11 U.S.C. § 365(b). One of the requirements for assumption is "adequate assurance of future performance." 11 U.S.C. § 365(b)(1)(C).

13.  Before an executory contract may be assigned, the debtor must first, among other things, assume the contract and provide adequate assurance of future performance. *See* 11 U.S.C §§ 365 (b)(1)(A) & (f)(2)(A). Adequate assurance provides the non-debtor party with needed protection because an assignment relieves the debtor and the bankruptcy estate from liability for breaches that occur after the assignment. *See* 11 U.S.C. § 365(j). Determining whether an assignee has provided adequate assurance is a fact-based inquiry that focuses on the specific facts of the proposed assignment. *See Cinicola v. Scharffenberger*, 248 F.3d 110 (3d Cir. 2001).

14.  As a matter of law, Debtors cannot provide adequate assurance of future performance here. Plan Proponents have stated in Section 7.2.2(d)(iv) of the Plan their intention to not perform the terms of the 1995 London Asbestos Settlement. In fact, the Plan will rewrite the agreement. Plan Proponents cite to no law that authorizes this wholesale evisceration of the Debtors' agreement with the LMC.

15.     If Debtors want the benefits of 1995 London Asbestos Settlement, then the

contract must be assumed *cum onore*, with all of its benefits and all of its burdens.  In *In re ANC*

*Rental*, the Court wrote as follows:

> The [debtor], however, may not blow hot and cold. If he accepts the contract he
> accepts it *cum onere*. If he receives the benefit he must adopt the burdens. He
> cannot accept one and reject the other. 190 F.2d 994, 997 (3d Cir. 1951). See also
> City of Covington v. Covington Landing L.P., 71 F.3d 1221, 1226 (6th Cir. 1995)
> (neither debtor nor court has authority to modify material terms of a lease
> assigned); *In re Allegheny Health, Educ. & Research Found.*, 265 B.R. 88, 113
> (Bankr. W.D. Pa. [*239] 2001) (bankruptcy court has no jurisdiction under *§ 365*
> to alter, enlarge or redefine the [**33] terms and conditions of the original
> contract assumed and assigned); *In re Washington Capital Aviation & Leasing,*
> 156 B.R. 167, 173 (Bankr. E.D. Va. 1993) (assumption of unexpired lease
> pursuant to *§ 365* does not augment a debtor's right under the agreement); *In re*
> *Mellen,* 79 B.R. 385, 387 (Bankr. N.D. Ill. 1987) (neither debtor nor court has
> authority under *§ 365* to expand or vary terms of an existing contract or unexpired
> lease); *In re Mushroom Transp. Co.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987)
> (executory contracts and unexpired leases must be assumed in their entirety,
> subject to both benefits and burdens thereunder); *In re Air Vectors Assocs.*, 53
> B.R. 668, 687 (Bankr. S.D.N.Y. 1985) (bankruptcy court is without authority to
> rewrite the terms of a lease); *In re Easthampton Sand & Gravel Co.*, 25 B.R. 193,
> 198 (Bankr. E.D.N.Y. 1982) (equity will not countenance debtor's attempt to
> relieve itself of conditions which are clearly vested by the contracting parties as an
> essential part of their bargain and which do not contravene overriding federal
> policy).

*In re ANC Rental Corporation, Inc.,* 277 B.R. 226 at 238-239 (Bankr. DE 2002).

16.     To the extent Debtors seek to transfer the 1995 London Asbestos

Settlement to the Trust without complying with all of the requirements for assumption and

assignment of an executory contract set forth in Section 365, the Debtors cannot have the benefit

of 11 U.S.C. § 365(k) and Debtors must remain obligated as a party under the 1995 London

Asbestos Settlement.[3]  *In re American Flint Glass*, 197 F.3d 76 (3d Cir. 1999).

---

[3]     Furthermore, any injunction in the plan that purports to protect the Debtors from such
claims post-confirmation would also render the plan non-confirmable and is invalid.  The
Debtors cannot use an injunction under Section 105(a) (or any other section of the Bankruptcy
Code, including Section 524(g)) to excuse non-compliance with the executory contract

17.     There is only one way for Plan Proponents to amend the 1995 London Asbestos Settlement to substitute the payment of a claim under the TDPs as the trigger for settlement and reimbursement of a claim under the agreement, and that is by a written amendment consented to and signed by LMC. To date, Plan Proponents do not have such an agreement to amend.

18.     To the extent the Plan does not comply with all of the provisions of 11 U.S.C. § 365 with respect to the 1995 London Asbestos Settlement, then the Plan does not comply with 11 U.S.C. § 1129(a)(2) and cannot be confirmed. *In re Wabash Valley Power Ass'n*, 1991 Bankr. LEXIS 2213 (Bankr. S.D. Ind. Aug. 7, 1991) (plan that violates 11 U.S.C. § 365 by providing for partial assumption could not be confirmed because it did not satisfy 11 U.S.C. § 1129(a)(2)); *see also Matter of Chicago, Rock Island and Pacific R. Co.*, 860 F.2d 267, 272 (7th Cir. 1988) (requiring trustee to take "the debtor's contracts *cum onere*, that is, subject to existing burdens.").

**E.     Regardless of Whether the 1995 London Asbestos Settlement Is Determined to Be An Executory Contract or a Non-Executory Contract, the Plan Proponents Cannot Use This Bankruptcy To Re-Write the Agreement in their Favor**

19.     Contractual rights are also determined under state law. *See, e.g., In re Bristol Assocs., Inc.*, 505 F.2d 1056, 1059 n. 4 (3d Cir. 1974).[4] As this Court recognized, such

---

requirements of 11 U.S.C. § 365. *United States, Dep't of Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1475 (4th Cir. 1990) (issuing an injunction that bars a party from exercising contractual rights provided in assumed executory contracts may conflict with the rule that executory contracts are assumed *cum onere*); *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004) (Section 105(a) is a provision of "a limited scope" and "does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code."); *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000).

[4]     *See also Bogus v. Am. Nat'l Bank of Cheyenne, Wyo.*, 401 F.2d 458, 460-461 (10th Cir. 1968); *Paramount Fin. Co. v. United States*, 379 F.2d 543, 544-545 (6th Cir. 1967); *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241 (3d Cir. 2001).

rights must not be modified by a plan. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 209 (3d Cir. 2004) ("recognizing the Plan should not modify the contractual rights of insurers"); s*ee also In re EES Lambert Assocs.*, 62 B.R. 328, 336 (Bankr. N.D. Ill. 1986) ("However expansive the bankruptcy court's power may be to protect the property interests of debtors-in-possession, it does not extend to enlarging the rights of a debtor under a contract or rewriting its terms."); *In re Bolin Oil Co.*, 51 B.R. 936, 938 (Bankr. N.D. Ohio 1985) (holding, with respect to an insurance policy issued to the debtor, that "[t]he Bankruptcy Code does not enlarge the rights of the debtor under a contract"); *Argonaut Ins. Co. v. Ames Dept. Stores, Inc.*, No. 93 Civ. 4014 (KMW), 1995 U.S. Dist. LEXIS 6704, *2 (S.D.N.Y. May 18, 1995) ("a bankruptcy court does not have the power to rewrite contracts"); *Zartman v. First Nat'l Bank of Waterloo, N.Y.*, 216 U.S. 134, 138 (1910) ("While bankruptcy courts have the power to allow debtors to escape burdensome contracts by rejecting them, bankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms."); *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984) (debtor must assume contract's burdens as well as its benefits).[5]

---

[5] The Third Circuit has made it absolutely clear that § 541 does not eliminate any restrictions on an interest in property once it has passed to the estate:

> Courts applying the *Butner* analysis have relied on its holding to conclude that "once a property interest has passed to the estate, it is subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law." *In re American Freight Sys., Inc.*, 179 B.R. 952, 960 (Bankr. D. Kan. 1995); *see also In re Transcon Lines*, 58 F.3d 1432, 1438 (9th Cir. 1995) (noting that "nonbankruptcy law defines the nature, scope, and extent of the property rights that come into the hands of the bankruptcy estate"), *cert. denied sub nom. Gumport v. Sterling Press, Inc.*, 516 U.S. 1146, 134 L. Ed. 2d 96, 116 S. Ct. 1016 (1996); *In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992) ("[A] bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition."); *In re FCX, Inc.*, 853 F.2d 1149, 1153 (4th Cir. 1988) ("The estate under § 541(a) succeeds only to those interests that the debtor had in property prior to commencement of the bankruptcy case."); *In re Bishop College*, 151 B.R. 394, 398 (Bankr. N.D.Tex. 1993) (holding that a bankrupt's

20.    Section 365 allows a limited modification of executory contracts, but only insofar as Sections 365(a), (b), and (f) allow a debtor to cure defaults, assume, and assign to the extent permitted by applicable law.  No other modifications are explicitly authorized by the Code *see C.G. (In re: Kennesaw Dairy Queen Brazler)* 28 B.R. 535 (Bankr. N.D. Ga. 1983).

21.    Section 7.2.2(d)(iv) of the Plan clearly articulates Plan Proponents' intention not to perform material terms of the 1995 London Asbestos Settlement.  In fact, the Plan rewrites the agreement so that "payment of an Asbestos PI Claim under the PI TDP shall be deemed to constitute settlement and payment of such claim by or on behalf of the Debtors . . . within the meaning of, and in full compliance with" the 1995 London Asbestos Settlement.

22.    These revisions to the heart of the 1995 London Asbestos Settlement violate the rule that requires *cum onore* assumption of the agreement.  If the 1995 London Asbestos Settlement can be assigned to the PI Trust, the PI Trust cannot have more and better rights than the Debtors currently have under the Agreement.  This Court must deny confirmation and reject this effort to re-write LMCs' agreement.

**F.    The Transfer of the 1995 London Asbestos Settlement Agreement Violates 11 U.S.C. § 365(c)(1)(A) Because Applicable Law Excuses LMC From Having To Perform Its Duties If The Contract is Assigned to the PI Trust**

23.    Section 365(c) of the Bankruptcy Code prohibits a debtor from assuming and assigning an executory contract if applicable non-bankruptcy law excuses a party, other than the debtor, to such contract from accepting performance from or rendering performance to an entity other than the debtor.

---

estate receives trust assets "subject to any restrictions imposed by state law, pre-petition").

*Integrated Solutions v. Serv. Support Specialties.*, 124 F.3d 487, 492 (3d Cir. 1997).

24.     Section 365(c)(1)(A) applies when the contract is a personal services contract or the anti-assignment provision concerns the regulation of public safety.  *In re ANC Rental Corporation, Inc.*, 277 B.R. 226, 236 (Bankr. DE 2002); *In re West Electronics, Inc.*, 852 F.2d 79 (3d Cir. 1988).

25.     While it is open to debate whether an insurance contract is "personal", the contract in question here is a settlement agreement, crafted and agreed to based upon terms not generic in the industry.  The obligations of Grace under the 1995 London Asbestos Settlement are extremely personal in nature.  The very structure of the Settlement Agreement, where Grace is required to pay its own funds to, *inter alia*, fill non-collapsed coverage gaps and trigger LMCs' payment obligations uniquely and specifically align the interests of the Debtors and LMC as parties to the agreement.  These are personal duties under applicable law (New York) because they involve a relationship of "personal credit and confidence."  *Bentley v. Textile Banking Co.*, 271 N.Y.S.2d 417, 420 (N.Y. App. Div 1996); *Jetter v. Scollan*, 48 Misc. 546, 549 (N.Y. Sup. Ct. App. Term 1905) ("[T]he authorities are unanimous that a contract is not assignable when it involves reliance upon personal credit, confidence, or skill.").  Accordingly, pursuant to Section 365(c)(1)(A), the agreement cannot be assigned because of LMC's reliance on the personal nature of the agreement.

### G.     The Plan is Not "Insurance Neutral" as to LMC And Thus Cannot Be Confirmed Under *Combustion Engineering*

26.     As this Court is aware from other asbestos bankruptcy cases, LMC respectfully submit that the minimal Insurance Neutrality Language ("INL") that can adequately protect them is the language from *In re Combustion Engineering*, 391 F.3d 190, 218 (3d Cir. 2004), that was accepted by this Court and approved by the Court of Appeals for the Third

Circuit.  LMC therefore object to the Plan because it fails to adopt the following INL as in

*Combustion Engineering*:

> Notwithstanding anything to the contrary in this Order, the Plan or any of the Plan
> Documents, nothing in this Order, the Plan or any of the Plan Documents
> (including any other provision that purports to be preemptory or supervening),
> shall in any way operate to, or have the effect of, impairing the insurers' legal,
> equitable or contractual rights, if any, in any respect.  The rights of insurers shall
> be determined under the Asbestos Insurance Policies or Asbestos Insurance
> Settlement Agreements.

27.    Unlike the INL that this Court drafted in *Combustion Engineering*, the
Plan's proposed INL fails to adequately preserve insurers' rights and defenses.  To render the
Plan truly "neutral", insurance neutrality language in this case needs to provide that nothing be
allowed to impose new obligations on LMC.  The proposed language set forth above more
closely comports to that adopted in *Combustion Engineering* and would, accordingly, protect
LMC's rights from being adversely affected.

28.    The INL contained in the Plan is not insurer neutral, because, *inter alia*,
the Asbestos Insurer Coverage Defenses do not preserve all of the affirmative obligations an
insured owes to its insurers.

29.    The Plan is not insurance neutral because the Asbestos Insurance
Coverage Defenses definition is unnecessarily restrictive.

30.    The Plan is not insurance neutral because it interferes with LMCs' rights
under the 1995 London Asbestos Settlement because the TDPs do not require the Trust to
provide timely notification of claims, the duty of good faith and fair dealing, the duty to defend
and not suffer default, the duty to refrain from collusive or unreasonable settlements, and the
duty to assist and cooperate.

31. The Plan is not insurance neutral because it contains injunctions which prevent LMC from asserting contribution, subrogation and other claims against other parties, including other insurers.

32. The Plan's treatment of the 1995 London Asbestos Settlement in Section 7.2.2(d)(iv) is not neutral and adversely affects LMCs' rights without any authority under the Bankruptcy Code to do so.

### H.    The Plan Breaches the 1995 London Asbestos Agreement And Is Thus Not Confirmable Under Section 1129(a)(3)

33. In order for a court to confirm a plan it must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). This provision is expansive and includes all applicable law.  7 COLLIER ON BANKRUPTCY § 1129.03 (15th ed. rev.); *In re Dapontes*, 364 B.R. 866, 867 (Bankr. D. Conn. 2007).

34. "The good faith standard requires that the plan be proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code." *In re Coram Healthcare Corp.,* 271 B.R. 228, 234 (Bankr. D. Del. 2001) (quoting *In re Zenith Electronics Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999)) (internal citation and quotation marks omitted).

35. Confirmation can be denied where a plan violates a contract.  *In re Ingelside Associates*, 136 B.R. 955, 962 (Bankr. E.D. Pa. 1992).  As discussed above, the Plan cannot amend the terms of the 1995 London Asbestos Settlement for the benefit of the Trust.

36. In evaluating the totality of circumstances surrounding a plan a court has "'considerable judicial discretion' in finding good faith, with the most important feature being an inquiry into the 'fundamental fairness' of the plan." *In re Coram Healthcare, 271 B.R. at 234*

(quoting *In re American Family Enterprises*, 256 B.R. 377, 401 (D.N.J. 2000)) (internal citation and quotation marks omitted).

   37. If we assume for purposes of argument that the 1995 London Asbestos Settlement is somehow assigned to the PI Trust, the PI Trust would have to breach the audit and inspection provisions of the 1995 London Asbestos Settlement because Section 6.5 of the TDP mandates that claimant submissions to the Trust be kept confidential from any party (such as LMC) absent a subpoena from the Bankruptcy Court. That provision provides in part:

>   6.5 **Confidentiality of Claimants' Submissions**. All submissions to the PI Trust by a holder of a Trust Claim or a proof of claim form and materials related thereto shall be treated as made in the course of settlement discussions between the holder and the PI Trust and intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including, but not limited to, those directly applicable to settlement discussions. The PI Trust will preserve the confidentiality of such claimant submissions, and shall disclose the contents thereof only, with the permission of the holder, to another trust established for the benefit of asbestos personal injury claimants pursuant to section 524(g) and/or section 105 of the Bankruptcy Code or other applicable law, to such other person as authorized by the holder, or in response to a valid subpoena of such materials issued by the Bankruptcy Court.

   38. A preemptive declaration that such information is "privileged" and/or "confidential" improperly deprives the LMC of its rights under the 1995 London Asbestos Settlement. In essence, under the TDPs, LMC lose numerous bargained for rights.

   39. Partially completed discovery has disclosed that it is the understanding of certain of the Plan Proponents that the Trust will not comply with certain provisions of the 1995 London Asbestos Settlement, despite the fact that the contract must be assumed by the Trust, *cum onore*. Accordingly, the Plan appears works an anticipatory repudiation of the 1995 London Asbestos Settlement.

   40. Accordingly, due to the fact that the Plan will breach the terms of the 1995 London Asbestos Settlement and/or make compliance with the terms of the 1995 London

Asbestos Settlement impossible, the plan is not proposed in good faith and does not comply with 11 U.S.C. § 1129(a)(3).

## I.      The Exculpation and Release Provisions of the Plan Are Overbroad

41.     The exculpation provisions set forth in Section 11.9 of the Plan are overly broad.  The exculpation impermissibly includes non-debtors such as the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties.  It also appears to provide protection for claims arising from "administration of this Plan or the Property distributed under this Plan".  This could provide prospective immunity from liability to the Asbestos PI Trust, which is clearly improper. *In re Congoleum*, 362 B.R. 167, 190-91 (Bankr. N.J. 2007) (holding that the bankruptcy court "may not unilaterally expand the exception to § 524(g) in asbestos cases to include every conceivable entity involved in an asbestos case.").

## III.    RESERVATION OF RIGHTS

42.     LMC continues to conduct discovery, as the Phase II discovery deadline has not yet passed.  LMC reserve their right to supplement and modify this Objection to state additional objections, or to revise the objections already stated, once the discovery served herewith and any follow-up discovery is responded to.  LMC also reserve the right to join other objections to confirmation filed by other parties at interest to the extent that any such objections are applicable to LMC.

## IV. CONCLUSION

43. For the reasons stated above, the Plan fails to comply with the provisions of the Bankruptcy Code and applicable law and LMC request that this Honorable Court deny confirmation of the Plan and grant LMC such other relief as is just and proper.

Date: May 20, 2009

JOHN SHEEHAN SPADARO, LLC

*/s/ John S. Spadaro*
John S. Spadaro, Esq. (No. 3155)
724 Yorklyn Road, Suite 375
Hockesin, DE 19707
302-235-2516 p
302-23502536 f

Thomas J. Quinn, Esquire
thomas.quinn@mendes.com
Alexander Mueller, Esquire
alexander.mueller@mendes.com
Mendes & Mount LLP
750 Seventh Avenue
New York, NY 10019
212-261-8000 p
212-261-8750 f

Michael A. Shiner, Esquire (PA ID 78088)
mshiner@tuckerlaw.com
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222
Phone: (412) 594-5586
Fax: (412) 594-5619

*Counsel for Certain London Market Insurance Companies*