# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., *et al.* ) | Case No. 01-1139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | **Objections Due:** May 20, 2009 |
| ) | |
| ) | **Hearing Dates:** June 22-26, 2009 |
| ) | September 8-11, 2009 |
| ) | |
| ) | Relates to Document No. 20872 |
| ) | |
| ) | Document No. _____ |

## AXA BELGIUM'S OBJECTIONS TO
## THE FIRST AMENDED JOINT PLAN OF REORGANIZATION

In accordance with the Court's Third Amended Case Management Order, AXA Belgium, as successor to Royal Belge SA ("AXA Belgium"), a party in interest in the captioned proceeding, sets forth below its objections to the confirmation of the First Amended Joint Plan of Reorganization (the "Plan"), and respectfully states as follows:

### PRELIMINARY STATEMENT

The Schedule to the Asbestos Insurance Transfer Agreement alleges that "Royale Belge S.A." issued three policies: AVB102 (77-78), AVB124 (78-79) and 1251427 (84-85). These objections are being submitted on behalf of Royale Belge with regard to the policies it allegedly issued and not on behalf of any other entity. AXA Belgium previously raised issues as to the alleged issuance of these policies, including the fact that AXA Belgium is unaware of a policy numbered "1251427" and notes that coverage details remain unconfirmed for this alleged policy and the others above. AXA Belgium reserves its right to further raise objections with regard to these alleged policies.

As the proposed Plan intends to use proceeds from insurance policies allegedly issued to the Debtors, AXA Belgium has an interest in how the Plan treats its policies and contractual rights and, thus, standing to protect those interests. Further, the Plan's failure to satisfy the statutory requirements for confirmation renders the Plan unconfirmable.

**PLAN PROVISIONS**

As part of the Plan, the Asbestos Insurance Transfer Agreement "irrevocably transfers, conveys, and grants to the Asbestos PI Trust all of their Asbestos Insurance Rights, including, without limitation, any and all rights to Proceeds." Asbestos Insurance Transfer Agreement, §1(a). See also Plan §7.7.2(d)(ii). The Agreement does not transfer from the insured to the Asbestos PI Trust any of the insured's obligations under any insurance policies; nor does the Plan definition of "Asbestos Insurance Rights" include any obligations on the part of the insured. See Plan §1.1.12. In spite of this broad transfer of "Asbestos Insurance Rights," the Agreement alleges that "[t]he Transfer is not an assignment of any insurance policy." Asbestos Insurance Transfer Agreement, §1(a). The Agreement also states, in §3(a)(i), that "[a]ll insurance policies that the Insurance Contributors have reason to believe potentially or actually provide insurance coverage for Asbestos PI Claims are listed and described accurately on the attached Schedule 1" Thus, the policies allegedly issued by Royale Belge, among others listed on the Schedule to the Agreement, are subject to the sweeping and irreversible transfer of Asbestos Insurance Rights to the Trust. The Plan further provides that "Asbestos Insurance Entities shall be bound by the Court's findings and conclusions that, under the Bankruptcy Code, the transfer of all rights under the Asbestos Insurance Transfer Agreement is valid and enforceable against each Asbestos Insurance Entity notwithstanding any anti-assignment provision in or incorporated into any Asbestos Insurance Policy." Plan §7.15(g).

**PLAN OBJECTIONS**

In claiming that the policies allegedly issued by Royale Belge "potentially or actually provide insurance coverage for Asbestos PI Claims," the Asbestos Insurance Transfer Agreement has presumed that these policies do in fact provide insurance coverage for Asbestos PI Claims, doing away with a fundamental defense that AXA Belgium would be entitled to assert in any coverage dispute over asbestos-related claims. However, the Agreement irrevocably transfers all of the insured's Asbestos Insurance Rights, and none of its obligations, under the policies allegedly issued by Royale Belge. Thus, the Agreement strips AXA Belgium of several contractual rights, including, but not limited to the right to notice from an insured, the right to assistance and cooperation from the insured, the right to participate in the defense of claims against the insured, the right to no assignment by the insured without the insurer's consent and the right to pay only claims covered by the policies, that no action shall lie against the insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of the Policy, nor until the amount of the insured's obligation to pay shall have been finally determined. Put another way, the protections and privileges to which AXA Belgium would be entitled to in the context of litigation in the tort system are not preserved under the Plan.

Thus, the creation of the Trust and the transfer of insurance-related "rights" to it has two dire consequences for AXA Belgium. First, it replaces the policyholder with the Trust, an entity that has no contractual relationship with Royale Belge and second, it ensures that the Trust will have none of the policyholder's contractual duties under the insurance policies yet vests in the Trust the exclusive authority to contest, litigate and settle claims using proceeds from these policies.

The Plan's assignment of insurance is not valid and enforceable under the Bankruptcy Code as a matter of law. Permitting the proposed assignment would violate AXA Belgium's

contractual rights by assigning rights to the aforementioned policies to the Trust without AXA Belgium's consent. For all of these reasons, the Plan is not insurer-neutral.

The Plan also fails to meet the statutory requirements for a confirmable Plan, including 11 U.S.C. 524(g) and 1129(a). For instance, 524(g)(2)(B)(ii)(V) requires that the Trust "will value, and . . . pay, present claims and future demands that involved similar claims in substantially the same manner." However, while the Plan provides that the Trustees will have the right to implement the TDPs without the benefit of judicial oversight, the insurers who are expected to fund the Trust have no input into these matters.

The Plan lacks the good faith required by 1129(a)(3). The fact that the Plan purportedly is assigning rights under the policies and not the policies themselves does not somehow cure the Plan's deficiencies on this issue. Unlike the entities to whom these policies were originally issued, the Trust, which was created solely for the benefit of asbestos personal injury claimants, does not have an incentive to fight claims presented to it. Thus, AXA Belgium is left without any of the rights under the policies, including the rights to associate in the defense of each claim for which indemnity is sought, to receive notice of each claim, to receive the insured's assistance and cooperation in evaluating each claim, to consent to any assignment under the policies, to pay only claims covered by the Policies; and to be protected from any action brought directly against the insurer. The Plan is not proposed in good faith because it rests upon breaches of contract in the form of the evisceration of AXA Belgium's rights under the policies.

Furthermore, the exculpation provisions set forth in Section 11.9 of the Plan are overly broad. The exculpation impermissibly includes non-debtors such as the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties. It also appears to provide protection for claims arising from "administration of this Plan or the Property distributed under this Plan". This could provide prospective immunity from liability to the Asbestos PI Trust, which is clearly improper.

4

*In re Congoleum*, 362 B.R. 167, 190-91 (Bankr. N.J. 2007) (holding that the bankruptcy court "may not unilaterally expand the exception to § 524(g) in asbestos cases to include every conceivable entity involved in an asbestos case.").

Finally, AXA Belgium objects to the Plan to the extent that it obligates AXA Belgium to pay to the Asbestos PI Trust any amount in excess of the amount actually paid by the Asbestos PI Trust to the holders of Asbestos PI Claims. *Fuller-Austin Insulation Company v. Highlands Ins. Company*, 135 Cal.App. 4th 958, 1000 (Cal. Ct. App. 2006).

## JOINDER & RESERVATION OF RIGHTS

AXA Belgium hereby incorporates by reference and joins in other insurers' objections to the Plan. AXA Belgium also hereby reserves the right to incorporate by reference, and adopt as its own, any reservations of rights stated by any other insurer or any other party.

This summary of AXA Belgium's objections is being submitted prior to the completion of Plan-related discovery. Accordingly, AXA Belgium reserves all rights to amend, modify, add to, supplement, or delete from these objections in any way based on information learned during discovery or otherwise prior to the close of the Confirmation Hearing.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

WHEREFORE, AXA Belgium respectfully requests that the Court deny confirmation of the Plan and grant such further relief as is just and proper.

Dated:  May 20, 2009

        Respectfully submitted,

        /s/ Michael A. Shiner
        Michael A. Shiner, *pro hac vice*
        TUCKER ARENSBERG
        1500 One PPG Place
        Pittsburgh, PA 15222-5401
        Telephone: (412) 566-1212
        Facsimile: (412) 594-5619
        mshiner@tuckerlaw.com

        Eileen T. McCabe, *pro hac vice*
        MENDES & MOUNT, LLP
        750 Seventh Avenue
        New York, NY  10019
        Telephone:  (212)261-8254
        Facsimile:  (302)235-2536
        eileen.mccabe@mendes.com

        John S. Spadaro (No. 3155)
        724 Yorklyn Road, Suite 375
        Hockessin, DE 19707
        Telephone:  (302) 235-7745
        Facsimile:  (302) 235-2536
        jspadaro@johnsheehanspadaro.com

        *Counsel for AXA Belgium as successor to Royal Belge SA*

BANK_FIN:353232-1 024798-139290