# EXHIBIT C

1

```
 1        IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF DELAWARE
 2                    -   -   -
 3
         In Re:                   : Chapter 11
 4                                :
                                  : Case No.
 5       W.R. GRACE & CO., et al, : 01-01139 JKF
                                  :
 6                                : (Jointly
                     Debtors      : Administered)
 7
 8                    -   -   -
 9             Thursday, May 7, 2009
10                    -   -   -
11             Oral deposition of GEORGE L.
12       PRIEST, taken pursuant to notice, was
13       held at the offices of DRINKER BIDDLE &
14       REATH, Two Logan Square, 18th & Cherry
15       Streets, Philadelphia, Pennsylvania
16       19103, commencing at 10:18 a.m., on the
17       above date, before Lori A. Zabielski, a
18       Registered Professional Reporter and
19       Notary Public in and for the Commonwealth
20       of Pennsylvania.
                      -   -   -
21             MAGNA LEGAL SERVICES
                  Seven Penn Center
22                1635 Market Street
                     8th Floor
23         Philadelphia, Pennsylvania 19103
                   866.624.6221
24
```

```
 1    APPEARANCES:
 2
 3    DRINKER BIDDLE & REATH, LLP
      BY:  MICHAEL F. BROWN, ESQUIRE
 4    One Logan Square
      18th & Cherry Streets
 5    Philadelphia, Pennsylvania  19103-6996
      215.988.2988
 6    (brownmf@dbr.com)
      (jeffrey.boerger@dbr.com)
 7    Representing OneBeacon America Insurance
      Company, Seaton Insurance Company,
 8    Government Employees Insurance Company,
      Columbia Insurance Company f/k/a Republic
 9    Insurance Company
10
11    CAPLIN & DRYSDALE, CHARTERED
      BY:  PETER VAN N. LOCKWOOD, ESQUIRE
12    One Thomas Circle N.W.
      Suite 1100
13    Washington, DC  20005
      202.862.7801
14    (pvnl@capdale.com)
      Representing Grace, Official Committee of
15    Asbestos Personal Injury Claimants
      ("ACC")
16
17
      ANDERSON KILL & OLICK, P.C.
18    BY:  ROBERT M. HORKOVICH, ESQUIRE*
            (*VIA TELECONFERENCE)
19    1251 Avenue of the Americas
      New York, New York 10020
20    212.278.1322
      (rhorkorvitz@andersonkill.com)
21    Representing the ACC
22
23
24
```

```
1      APPEARANCES (continued)
2
3      CAMPBELL & LEVINE, LLC
       BY:   MARK T. HURFORD, ESQUIRE*
4          (*VIA TELECONFERENCE)
       800 North King Street, Suite 300
5      Wilmington, Delaware  19801
       302.426.1900
6      (mhurford@camlev.com)
       Representing Official Committee of
7      Asbestos Personal Injury Claimants
8
9      KIRKLAND & ELLIS, LLP
       BY:   LISA G. ESAYIAN, ESQUIRE
10     300 North LaSalle Street
       Chicago, Illinois  60654
11     312.862.2226
       (lisa.esaylan@kirkland.com)
12     Representing the Debtors
13
14     SIMPSON THACHER & BARTLETT, LLP
       BY:   SAMUEL J. RUBIN, ESQUIRE*
15         (*VIA TELECONFERENCE)
       425 Lexington Avenue
16     New York, New York  10017-3954
       212.455.3122
17     (srubin@stblaw.com)
       Representing Travelers Casualty and
18     Surety Company
19
20     FORD MARRIN ESPOSITO & WITMEYER & GLESER
       BY:   ELIZABETH M. DeCRISTOFARO, ESQUIRE*
21         (*VIA TELECONFERENCE)
       Wall Street Plaza
22     New York, New York  10005-1875
       212.269.4900
23     Representing Continental Casualty Company
       and Continental Insurance Company
24
```

```
1    APPEARANCES (continued)
2
3    BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
     BY:   JEFFREY I. SNYDER, ESQUIRE*
4          (*VIA TELECONFERENCE)
     200 South Biscayne Boulevard
5    Suite 2500
     Miami, Florida  33131-5340
6    305.375.6148
     (jsnyder@bilzin.com)
7    Representing Property Damage Committee
8
9    STROOCK & STROOCK & LAVAN, LLP
     BY:   ARLENE G. KRIEGER, ESQUIRE*
10         (*VIA TELECONFERENCE)
     180 Maiden Lane
11   New York, New York  10038-4982
     212.806.5400
12   (akrieger@stroock.com)
     Representing Official Committee of
13   Unsecured Creditors
14
15   STEVENS & LEE, P.C.
     BY:   MARNIE E. SIMON, ESQUIRE
16   1818 Market Street, 29th Floor
     Philadelphia, Pennsylvania  19103-1702
17   215.751.2885
     (mes@stevenslee.com)
18   Representing Fireman's Fund Insurance
19
20   ALAN B. RICH LAW OFFICES
     BY:   ALAN B. RICH, ESQUIRE
21   Elm Place, Suite 4620
     1401 Elm Street
22   Dallas, Texas  75202
     214.744.5100
23   (arich@alanrichlaw.com)
     Representing Property Damage FCR
24
```

```
1    APPEARANCES (continued)
2
3    ECKERT SEAMANS CHERIN & MELLOTT, LLC
     BY:   LAURA G. STOVER, ESQUIRE
4    1747 Pennsylvania Avenue, NW
     12th Floor
5    Washington, DC  20006
     202.659.6619
6    (lstover@eckertseamans.com)
     Representing Maryland Casualty and Zurich
7
8
     WILEY REIN, LLP
9    BY:   KARALEE C. MORELL, ESQUIRE*
           (*VIA TELECONFERENCE)
10   1776 K Street NW
     Washington, DC  20006
11   202.719.7520
     (kmorell@wileyrein.com)
12   Representing Maryland Casualty and Zurich
13
14   COZEN O'CONNOR
     BY:   ILAN ROSENBERG, ESQUIRE*
15         (*VIA TELECONFERENCE)
     1900 Market Street
16   Philadelphia, Pennsylvania  19103-3508
     215.665.2147
17   (irosenberg@cozen.com)
     Representing Federal Insurance Company
18
19
     ORRICK HERRINGTON & SUTCLIFFE, LLP
20   BY:   PERI N. MAHALEY, ESQUIRE
     Columbia Center
21   1152 15th Street, N.W.
     Washington, DC  20005-1706
22   202.339.8427
     (pmahaley@orrick.com)
23   Representing Future Claimants
     Representative
24
```

```
 1    APPEARANCES (continued)
 2
 3    CUYLER BURK, P.C.
      BY:  EDWARD V. COLLINS, ESQUIRE*
 4         (*VIA TELECONFERENCE)
      4 Century Drive
 5    Parsippany, New Jersey  07054
      973.734.3200
 6    (ecollins@cuyler.com)
      Representing Allstate Insurance Company
 7
 8
      WILSON ELSER MOSKOWITZ EDELMAN & DICKER,
 9    LLP
      BY:  CARL PERNICONE, ESQUIRE*
10         (*VIA TELECONFERENCE)
      150 East 42nd Street
11    New York, New York  10017-5639
      212.915.5656
12    (carl.pernicone@wilsonelser.com)
      Representing Arrowood Indemnity Company
13
14
      GOODWIN PROCTER, LLP
15    BY:  MICHAEL S. GIANNOTTO, ESQUIRE*
           (*VIA TELECONFERENCE)
16    901 New York Avenue, N.W.
      Washington, DC  20001
17    202.346.4124
      (mgiannotto@goodwinprocter.com)
18    Representing CNA Insurance
19
20    KRAMER LEVIN NAFTALIS & FRANKEL, LLP
      BY:  GREGORY A. HOROWITZ, ESQUIRE*
21         (*VIA TELECONFERENCE)
      1177 Avenue of the Americas
22    New York, New York 10036
      212.715.9571
23    (ghorowitz@kramerlevin.com)
      Representing Official Committee of Equity
24    Holders
```

```
 1                        ~  -  -
 2                     I N D E X
 3                        ~  -  ~
 4
 5    Testimony of:    GEORGE L. PRIEST
 6
 7    By Mr. Lockwood          Page  09, 239
 8    By Ms. Esayian           Page  213
 9    By Mr. Brown             Page  233
10    By Mr. Pernicone         Page  234
11
12                        ~  -  -
13                     E X H I B I T S
14                        -  ~  -
15    NO.          DESCRIPTION              PAGE
16    Priest-1     Exhibit Book to First
                   Amended Joint Plan of
17                 Reorganization and
                   Disclosure Statement as
18                 of February 27, 2009     09
19    Priest-2     Debtors' Disclosure
                   Statement for the First
20                 Amended Joint Plan of
                   Reorganization under
21                 Chapter 11...            09
22    Priest-3     Certain Insurers' Notice
                   of Filing of the Expert
23                 Report of Professor
                   George L. Priest         09
24                        ~  -  ~
```

```
1                      -   -   -

2            DEPOSITION SUPPORT INDEX

3                      -   -   -

4

5    Direction to Witness Not to Answer:

6    Page    Line          Page      Line

7    NONE

8

9

10   Request for Production of Documents:

11   Page    Line          Page      Line

12   NONE

13

14

15   Stipulations:

16   Page    Line          Page      Line

17   09      02

18

19

20   Area(s) Marked Confidential:

21   Page    Line          Page      Line

22   NONE

23

24
```

```
1                        -   -   -

2                  (It is hereby stipulated and

3            agreed by and among counsel for

4            the respective parties that the

5            filing, sealing and certification

6            of the deposition are waived; and

7            that all objections, except as to

8            the form of the question, will be

9            reserved until the time of trial.)

10                       -   -   -

11                 (Exhibits Priest-1, 2, and 3

12           premarked for identification.)

13                       -   -   -

14                 GEORGE L. PRIEST, after

15           having been first duly sworn, was

16           examined and testified as follows:

17                       -   -   -

18                 EXAMINATION

19                       -   -   -

20   BY MR. LOCKWOOD:

21           Q.    Good morning, Professor

22   Priest.

23           A.    Good morning.

24           Q.    You have been deposed
```

1    before, correct?

2         A.    I have.

3         Q.    So I don't need to explain

4    the procedures and the process to you?

5         A.    I feel confident about the

6    procedures, unless you are trying

7    something new.

8         Q.    And if I ask you a question

9    that you don't understand, you will tell

10   me that you don't understand it and ask

11   me to rephrase it, if you would, please.

12        A.    Yes.  Thank you.  I will.

13        Q.    You understand that you have

14   prepared an expert report in this case?

15        A.    That's correct, I have.

16        Q.    And just for the record, the

17   case is In Re: W.R. Grace & Company, et

18   al, pending in the United States

19   Bankruptcy Court for the District of

20   Delaware?

21        A.    That's correct.

22        Q.    And I am going to be asking

23   you questions today about your report.  I

24   have premarked an exhibit as Priest

1          for.

2                  THE WITNESS:  No, it

3          wouldn't surprise me.  Is that

4          what the question was?  Would it

5          surprise me?

6      BY MS. ESAYIAN:

7          Q.   Yes.

8          A.   No.  It would not surprise

9      me.

10         Q.   In fact, is it your

11     understanding that Grace's insurers did

12     pay sums to defend and indemnify Grace in

13     property damage cases as well as in

14     personal injury cases?

15                 MR. BROWN:  Object to the

16         form.

17                 THE WITNESS:  That would be

18         my understanding, yes.

19     BY MS. ESAYIAN:

20         Q.   All right.  Now, you also

21     understand that there is an asbestos

22     Property Damage Claims Trust that is to

23     be established under this proposed Plan

24     of Reorganization?

1           A.    Yes, I have seen that.

2           Q.    Are you aware that the same

3    Grace insurance policies that afford

4    coverage for asbestos personal injury

5    claims also afford coverage for asbestos

6    property damage claims?

7           A.    Yes.

8           Q.    And are you aware that the

9    Asbestos Property Damage Trust is not

10   receiving any rights to those insurance

11   policies?

12          A.    I didn't know that, no.

13          Q.    Okay.  If you assume that,

14   that the Asbestos Property Damage Trust

15   is not receiving any rights to Grace's

16   insurance policies, is that an economic

17   benefit to Grace's insurers?

18               MR. BROWN:  Object to the

19          form.

20               THE WITNESS:  I don't know

21          the context at all of how that was

22          agreed to or how that was provided

23          or what was done there.  So I

24          can't really comment on that.

```
1                    Again, I was asked -- I did
2            look at the entire Disclosure
3            Statement, but I was asked to
4            focus on the a personal injury
5            asbestos model or personal injury
6            claims.  And so I looked at the
7            property damage discussion, but I
8            didn't study it carefully.
9       BY MS. ESAYIAN:
10           Q.   Okay.  So you just can't
11      comment al all and you don't have any
12      opinions on whether the fact that the
13      Asbestos Property Damage Trust is not
14      going to be able to access Grace's
15      insurance provides any economic benefit
16      to Grace's insurers?
17           A.   I can't answer that.
18                MS. ESAYIAN:  Okay.  That's
19           all I have.  Thank you.
20                THE WITNESS:  Thank you.
21                MR. BROWN:  I have a couple
22           of questions.
23                     -  -  -
24                    EXAMINATION
```

1

2      BY MR. BROWN:

3              Q.     Professor Priest, can you

4      take a look at Section 7.15 of the Plan,

5      specifically take a look at sections (a)

6      and (b), if you would.

7              A.     Okay.

8              Q.     Now, focusing on (b), on the

9      second line, there is a term that says

10     "beneficiaries of the Asbestos PI Trust."

11             Do you see that?

12             A.     Yes.

13             Q.     As a factual matter, do you

14     know whether any of Grace's insurers are

15     beneficiaries of the Asbestos PI Trust?

16             A.     I do not know that.

17             Q.     Okay.  Focusing on

18     subsection (h), again, as a factual

19     matter, do you know whether any of

20     Grace's insurers have claims against the

21     entities listed there, the Sealed Air

22     indemnified parties or the Fresenius

23     indemnified parties?

24             A.     I do not know that.

```
 1                    MR. BROWN:  Thank you.

 2                    MR. PERNICONE:  Michael,

 3              this is Carl Pernicone.  Does

 4              anybody have any follow-up

 5              questions on the phone?  I have

 6              just a few questions.

 7                    MR. BROWN:  You are on.

 8                         -  -  -

 9                    EXAMINATION

10                         -  -  -

11      BY MR. PERNICONE:

12              Q.    Mr. Priest, can you hear me?

13              A.    Yes, very well.  Thank you.

14              Q.    This is Carl Pernicone,

15      co-counsel for Arrowood Indemnity.  I

16      will try to be brief.

17                    I want to focus on your

18      testimony, Section 11.9, the exculpation

19      clause.  I believe you testified just a

20      few minutes ago that, while you didn't

21      address it in your report, it was your

22      opinion that it affected the insurers'

23      rights?

24                    Do you remember that
```

235

1    testimony?

2              MR. LOCKWOOD:  Well, I am

3         going to object to this line of

4         questioning because the case

5         management order contemplated that

6         expert reports were to be filed by

7         a specific date and contained all

8         of the experts' conclusions, et

9         cetera.

10             An while Professor Priest

11        may after that deadline in reading

12        some documents come up with some

13        additional opinions, I don't

14        believe that they are properly

15        subject to either the case

16        management ordered deadline for

17        being included as part of his

18        testimony in this case, and,

19        therefore, I don't believe they

20        are proper subjects for a

21        deposition.

22             MR. PERNICONE:  Okay.  Your

23        objection is noted, Mr. Lockwood.

24   BY MR. PERNICONE:

1          Q.    I just want to follow up on

2    that testimony.

3                Do you remember giving that

4    testimony?

5          A.    Yes, I do.

6          Q.    Here is my first follow-up

7    question:  Based on your review of the

8    Plan, is it your understanding that

9    Section 11.9 purports to release claims,

10   including claims insurers might have

11   against a number of Non-Debtors?

12         A.    Yes, that's how I read it.

13         Q.    Okay.  Now, you testified

14   earlier that you had reviewed the Plan

15   carefully.

16               Do you remember that?

17         A.    Yes.

18         Q.    In the course of that

19   careful review of the Plan, did you come

20   across any provision that would purport

21   to compensate insurers for the release

22   under Section 11.9 of any claims that

23   they might have against Non-Debtors?

24               MR. LOCKWOOD:   Same

```
1              objection.
2                   THE WITNESS:  No, I did not.
3    BY MR. PERNICONE:
4              Q.   Okay.  In your expert
5    opinion, Professor, would there be any
6    economic implications for insurers if any
7    claims they might have against
8    Non-Debtors are released pursuant to
9    Section 11.9?
10                  MR. LOCKWOOD:  Same
11             objection.
12                  THE WITNESS:  Yes, there are
13             economic implications.
14   BY MR. PERNICONE:
15             Q.   Okay.  Could you describe
16   for us what those economic implications
17   would be?
18                  MR. LOCKWOOD:  Can I have a
19             standing objection to testimony
20             about this subject rather than
21             having to interject?
22                  MR. PERNICONE:  Absolutely,
23             Mr. Lockwood.
24                  MR. LOCKWOOD:  Thank you.
```

```
 1                    MR. PERNICONE:  Could the
 2            reporter just read back my last
 3            question?
 4                    THE WITNESS:  I remember it.
 5       BY MR. PERNICONE:
 6            Q.   Okay.
 7            A.    The economic implications,
 8       whatever those claims are, are released
 9       by this exculpation clause.  And so if
10       the claims had merit or had value, that
11       value that is been eliminated by this
12       provision.
13                    MR. PERNICONE:  Thank you,
14            Professor.  I have no further
15            questions.
16                    MR. LOCKWOOD:  Well, given
17            the lack of assurance that my
18            objections to this line of
19            questioning will be upheld, I am
20            going to conditionally ask a few
21            follow-up questions on
22            Mr. Pernicone's line of questions.
23                    -   -   -
24                    EXAMINATION
```

```
 1                        -  -  -
 2     BY MR. LOCKWOOD:
 3          Q.    Do you have Section 11.9 of
 4     the Plan before you in Priest Exhibit-1,
 5     Professor Priest?
 6          A.    I do.
 7          Q.    Could you tell us for the
 8     record your understanding of what claims
 9     are being, as you put it, released by
10     this provision?
11          A.    Well, I don't have specific
12     claims in mind, but the provision must
13     have some meaning for an able person like
14     you to have put it in the Plan.
15               It refers to any claims with
16     regard to liability for any act or
17     omission in connection with or arising
18     out of the Chapter 11 cases, including
19     the negotiation under this Plan or the
20     settlements provided, and it goes on in
21     that regard.
22               I don't know what the claims
23     might be, but if the provision eliminates
24     liability for all of those actions, then
```

240

```
1     whatever claims there might have been

2     are, as I said, released or, to use your

3     term, vitiated.

4          Q.    Well, first, as your answer

5     indicated, the claims covered by this

6     exculpation provision are for acts or

7     omissions in connection with or arising

8     out of the Chapter 11 cases, correct?

9               MR. PERNICONE: , objection,

10              mischaracterizes his testimony.

11              THE WITNESS:   Well, that's

12              first, yes, including.  And then

13              it goes on.  It's a long sentence.

14    BY MR. LOCKWOOD:

15         Q.    But under normal corporate

16    drafting principles, doesn't the word

17    "including" refer to subsets of claims as

18    opposed to additional claims?

19              MR. PERNICONE:  Same

20              objection.

21              THE WITNESS:  Well, again,

22              the way I read it is it says,

23              first, "in connection with or

24              arising out of the Chapter 11
```

```
 1              Cases."  Now, if all the rest
 2              refers to the Chapter 11 cases,
 3              which is including the negotiation
 4              of this Plan or the settlements --
 5              then it says, "or the settlements
 6              provided in the Sealed Air
 7              Settlement Agreement and the
 8              Fresenius Settlement Agreement"
 9              that's part of the Chapter 11
10              cases, then it is.
11                   The pursuit of confirmation
12              of this Plan, again, that would
13              seem to be additive, although
14              maybe that's incorporated in -- I
15              didn't look up how the term
16              "Chapter 11 Cases," which is
17              initial capped, is defined.
18                   Maybe all of these
19              subsequent clauses are captured by
20              the term "Chapter 11 Cases."  In
21              that case, it's captured by the
22              term "Chapter 11 Cases."  Not
23              knowing and not cross-checking the
24              definition of Chapter 11 cases, it
```

242

| | |
|---|---|
| 1. | seemed to me that these later |
| 2 | clauses may be additive. |
| 3 | BY MR. LOCKWOOD: |
| 4 | Q.     Well, are you aware, for |
| 5 | example, that the Sealed Air Settlement |
| 6 | Agreement and the Fresenius Settlement |
| 7 | Agreement related to adversary |
| 8 | proceedings that the ACC and the Property |
| 9 | Damage Committee had filed against those |
| 10 | folks in this bankruptcy case? |
| 11 | A.     I believe I knew that from |
| 12 | reading the Disclosure Statement, yes. |
| 13 | Q.     So if Chapter 11 cases |
| 14 | includes this bankruptcy case, then |
| 15 | wouldn't those settlements be in |
| 16 | connection with or arising out of the |
| 17 | Chapter 11 case? |
| 18 | MR. PERNICONE:   Objection to |
| 19 | form. |
| 20 | THE WITNESS:   It could be. |
| 21 | If it's so clear, what the term |
| 22 | "Chapter 11 Cases" means, I don't |
| 23 | know why we have all of this to |
| 24 | follow. |

```
 1                    It goes on to say, "or the

 2              administration of this Plan or the

 3              property to be distributed under

 4              this Plan so long as, in each case

 5              such action, or failure to act,

 6              did not constitute gross

 7              negligence or willful misconduct."

 8                    If the administration of

 9              this Plan is part of the Chapter

10              11 cases, then I will concede the

11              point.  I will again ask you as a

12              drafter, why do you need to put

13              all that in?

14         BY MR. LOCKWOOD:

15              Q.    Not to put too fine a point

16         on it, Professor Priest, you have

17         absolutely no idea whether there would be

18         any factual or legal justification for

19         any insurer to file any claim against any

20         of the parties listed in Section 11.9, do

21         you?

22              A.    The only knowledge that I

23         have about a factual or legal

24         justification is having read, as I
```

1    mentioned, lots of plans in the context

2    of asbestos bankruptcies and in the

3    context of other legal matters.   A

4    provision like this is not introduced if

5    there is no possibility of any legal or

6    factual justification for a lawsuit

7    against the parties who are released --

8    or exculpated in the first five lines of

9    the provision.

10                But you are quite right.   I

11   have no factual -- I haven't studied this

12   at all.

13           Q.    This provision, which

14   Mr. Pernicone got you to say, included

15   insurers --

16                MR. PERNICONE:   Objection as

17          to form.

18   BY MR. LOCKWOOD:

19           Q.    -- is not limited to

20   insurers, is it?

21                MR. PERNICONE:   Objection as

22          to form.

23                THE WITNESS:   I don't think

24          it's limited as to insurers, no.

1   BY MR. LOCKWOOD:

2           Q.   So, as far as you know, the

3   purpose of this provision being inserted

4   in this Plan might have to do with all

5   sort of claims that have nothing

6   whatsoever to do with insurers?

7           MR. PERNICONE:   Objection to

8       form.   It's a hypothetical.   No

9       foundation.

10  BY MR. LOCKWOOD:

11          Q.   Correct?

12          A.   It might.   I don't know.   It

13  certainly doesn't except the insurers

14  from the operation of the provision.   If

15  insurers have no factual -- no possible

16  factual or legal justification for a

17  claim against these entities, then except

18  them from the operation of the provision,

19  and that will calm them down.

20          MR. LOCKWOOD:   No further

21      questions.

22          MR. PERNICONE:   No further

23      questions.

24          (The deposition concluded at

1          4:05 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1                    CERTIFICATE

2

3

4          I HEREBY CERTIFY that the witness

5     was duly sworn by me and that the

6     deposition is a true record of the

7     testimony given by the witness.

8

9

10

11

12     _____

3          Lori A. Zabielski

14          Registered Professional Reporter

15          Dated:  MAY 8, 2009

16

17

18

19

20                    (The foregoing certification

21     of this transcript does not apply to any

22     reproduction of the same by any means,

23     unless under the direct control and/or

24     supervision of the certifying reporter.)

```
 1          INSTRUCTIONS TO WITNESS

 2

 3          Please read your deposition over

 4    carefully and make any necessary

 5    corrections.  You should state the reason

 6    in the appropriate space on the errata

 7    sheet for any corrections that are made.

 8          After doing so, please sign the

 9    errata sheet and date it.

10    You are signing same subject to the

11    changes you have noted on the errata

12    sheet, which will be attached to your

 3    deposition.

14          It is imperative that you return

15    the original errata sheet to the deposing

16    attorney within thirty (30) days of

17    receipt of the deposition transcript by

18    you.  If you fail to do so, the

19    deposition transcript may be deemed to be

20    accurate and may be used in court.

21

22

23

24
```

```
 1                    -   ..   ..   -   -   -

 2                       E R R A T A

 3                    -    ..   ..   ..   -   -

 4      PAGE    LINE   CHANGE

 5      _____  _____ _____

 6      _____  _____ _____

 7      _____  _____ _____

 8      _____  _____ _____

 9      _____  _____ _____

10      _____  _____ _____

11      _____  _____ _____

12      _____  _____ _____

 3      _____  _____ _____

14      _____  _____ _____

15      _____  _____ _____

16      _____  _____ _____

17      _____  _____ _____

18      _____  _____ _____

19      _____  _____ _____

20      _____  _____ _____

21      _____  _____ _____

22      _____  _____ _____

23      _____  _____ _____

24      _____  _____ _____
```

```
1            ACKNOWLEDGEMENT OF DEPONENT

2            I, _____, do

3      hereby certify that I have read the

4      foregoing pages,   1-    PGS, and that

5      the same is a correct transcription of

6      the answers given by me to the questions

7      therein propounded, except for the

8      correction or changes in form or

9      substance, if any, noted in the attached

10     Errata Sheet.

11

12     _____

       WITNESS NAME                DATE

3

14

15

16

17     Subscribed and sown

18     to before me this

19     _____ day of _____, 20_____.

20     My commission expires:

21     _____.

22

23     _____

       Notary Public

24
```