IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: June 29, 2009** |
| | ) | **Objection Deadline: June 12, 2009** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO MAKE LEGALLY REQUIRED MINIMUM CONTRIBUTIONS TO DEFINED BENEFIT PENSION PLANS COVERING DEBTORS' EMPLOYEES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully move this Court for the entry of an order authorizing the Debtors to make the minimum contributions to the defined benefit retirement plans covering the Debtors' employees in the United States (the "Grace Retirement Plans") required under federal law during the period July 15, 2009 to January 15, 2010 inclusive (the "09-10 Funding Period"). The total of the legally required minimum contributions for the 09-10 Funding Period under current law will be approximately $30.4 million. In support of this motion, the Debtors respectfully state

---

1  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street,lzi.c., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remediurn Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch Nest Coal Company, H-G Coal Company.

as follows:

## Jurisdiction

1.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).  Venue of this proceeding and this motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought herein is §§ 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code").

## Background

2.      On April 2, 2001 (the "Petition Date"), each of the Debtors in these chapter 11 cases (collectively, the "Chapter 11 Cases") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

3.      Since 2003, the Debtors have requested and received Court permission to make contributions to the Grace Retirement Plans pursuant to seven prior funding motions (collectively, the "Prior Funding Motions").  With respect to each such motion, prior to the applicable hearing date, the management of the Debtors have discussed the applicable motion with the Official Committee of Unsecured Creditors, the Official Committee of Property Damage Claimants, the Official Committee of Personal Injury Claimants and the Official Committee of Equity Security Holders (collectively, the "Official Committees") and the Future Claimants' Representative (together, with subsequently appointed Future Claimants' Representatives in the Chapter 11 Cases, the "FCRs"), as requested.

4.      The Court entered orders approving the requests under each Prior Funding Motion (as modified).  In accordance with those orders, the Debtors contributed approximately $48.5

million to the Grace Retirement Plans in 2003[2], approximately $20 million in 2004, approximately $24.1 million in 2005[3], approximately $101.4 million in 2006[4], approximately $76.0 million in 2007, approximately $49.0 million in 2008, and approximately $16.1 million to date in 2009.[5]

5.      In this motion, the Debtors are seeking to continue funding the Grace Retirement Plans by timely making the legally required minimum contributions, which is consistent with the funding approach that was initially articulated in the Prior Funding Motion submitted on May 23, 2005 [Docket No. 8484] (the "2005 Funding Motion") and the Court's order dated June 22, 2005 [Docket No. 8667]. The Debtors believe that this approach has had a beneficial impact on the Debtors' estates and their creditors, and that the continuation of this approach continues to be in the best interest of the Debtors' estates and their creditors.

6.      The Debtors have provided each of the Official Committees and the FCRs with a prior draft of this motion and have discussed this motion with them and their representatives who have requested such discussions.

## Grace Retirement Plans

7.      The Prior Funding Motions included considerable background regarding the Grace Retirement Plans and the importance of maintaining them and supporting their financial viability. That background continues to be valid. In summary, following is a review and update of some of the information noted originally in the Prior Funding Motions:

---

2    This amount includes a contribution in 2003 of approximately $8.5 million for the Curtis Bay union pension plan, based on a separate motion and court order dated March 3, 2003 [Docket No. 3445].

3    This amount includes a contribution in 2005 of approximately $7.9 million to two union pension plans covering union employees at the Debtors' Lake Charles, Louisiana and Chattanooga, Tennessee plants, based on a separate motion and court order dated June 22, 2005 [Docket No. 8666].

4    This amount includes a contribution in 2006 of approximately $1.1 million to one union pension plan covering union employees at the Debtors' Chicago Dewey & Almy Plant.

5    See Exhibit C for a list of the actual contributions to the Grace Retirement Plans for each calendar year from 2006 until 2009, as well as estimated annual contributions through 2010.

- The Grace Retirement Plans currently consist of ten funded, defined benefit pension plans, each of which is qualified under section 401(a) of the Internal Revenue Code.

- The most significant Grace Retirement Plan is the W. R. Grace & Co. Retirement Plan for Salaried Employees (the "Grace Salaried Plan"), which comprises approximately 80% of the assets and 82% of the liability of the Grace Retirement Plans in the aggregate (depending on the measure of liability).

- The Debtors have a long history of providing employees with defined benefit pension plans.

- Many of the Grace Retirement Plans are maintained pursuant to collective bargaining agreements.

- The employers that are considered competitors or peers of the Debtors' businesses generally maintain defined benefit pension plans for their employees.

- The "plan year" of each Grace Retirement Plan is a calendar year.

**Funded Status of the Grace Retirement Plans**

8.    **Exhibit A** to this motion updates several different calculations to measure the liabilities and assets of the Grace Retirement Plans, which were originally used in the Prior Funding Motions.  All amounts on **Exhibit A** have been calculated by the actuary of the Grace Retirement Plans.

9.    The Grace Retirement Plans are underfunded by most accepted measures.  As of January 1, 2009, the amount by which the Grace Retirement Plans were funded ranges from $(113 million) to $(375 million), depending on the measure used.

10.    As specified on **Exhibit A**, the total market value of assets as of January 1, 2009 was approximately $560 million.  This is a decrease of approximately $214 million from January 1, 2008 (when the market value was approximately $774 million).[6]  The decrease in the asset value during 2008 was the result of asset returns of approximately -25.9% during 2008 and

---

6   As of March 31, 2009, the total market value of assets was $517 million, as a result of market fluctuation and benefit payments.

approximately $59.2 million that was paid out of the Grace Retirement Plans during the year; offset by the Debtors' contribution of approximately $49.0 million.[7]

### Employees Covered by the Grace Retirement Plans

11.     Virtually all of the Debtors' current employees are covered by one of the Grace Retirement Plans. The Grace Salaried Plan alone covers over 1,900 active, salaried employees (of a total U.S. workforce of approximately 3,000 employees), or over 60% of the Debtors' U.S. workforce.

12.     The Debtors' employees continue to consider ongoing benefit accruals under the Grace Retirement Plans and the financial viability of the Grace Retirement Plans as among the most important aspects of their employment relationship with the Debtors.

13.     The Debtors' employees continue to closely monitor the financial viability of the Grace Retirement Plans through the Debtors' ERISA and SEC disclosures, as well as other research techniques.

14.     The Debtors' employees continue to emphasize to the Debtors' management the importance of the Grace Retirement Plans.

15.     The Debtors' management and employees continue to be motivated to work towards successfully creating value for the Debtors' estates by growing the revenues and profits of the Debtors' businesses, with the expectation that at least a portion of the cash generated by those efforts would be used to provide the funding necessary to assure the long-term viability of the Grace Retirement Plans.

16.     The Debtors' management believes that continuing to make at least the legally required minimum contributions to each of the Grace Retirement Plans is essential to maintaining the morale of the Debtors' workforce and its confidence in management, and

---

7   The Debtors project that in 2009 approximately $60 to $70 million will be paid out of the Grace Retirement Plans.

thereby the productivity and long-term profitability of the Debtors' businesses. The employees are vital to maintaining and enhancing the value of the Debtors' estates and to the Debtors' successful reorganization.

## Prior Funding Motions

17.    Each of the Prior Funding Motions was tailored to recognize the concerns of the Debtors' employees regarding the financial viability of the Grace Retirement Plans, and the value of the employees to the Debtors' estates and their vital role in a successful reorganization of the Debtors.  In addition, the Prior Funding Motions considered the concerns voiced by the Official Committees and their advisors—some of which expressed concern regarding the conservation of the Debtors' cash, while others expressed an interest in maintaining the morale of the Debtors' workforce.

18.    In the 2005 Funding Motion, the funding approach was simplified to satisfy the single most important goal of the multiple objectives previously considered in the 2003 and 2004 funding motions—i.e., making only the legally required minimum contributions for a 12-month period commencing July 2005.  As specified in the 2005 Funding Motion, the Debtors' management believed that simplifying the funding approach in this manner recognized the concerns of the Official Committees regarding the continued conservation of the Debtors' cash, while addressing employee concerns regarding the continued viability of the Grace Retirement Plans.  The Court signed the order approving the simplified funding approach of the 2005 Funding Motion on June 22, 2005.

## 09-10 Funding Approach

19.    Consistent with the funding approach initially established by the 2005 Funding Motion and the related Court Order, the funding approach for the 09-10 Funding Period (the "09-10 Funding Approach") is to make only those contributions to the Grace Retirement Plans that

are necessary to satisfy the minimums that are legally required by applicable law.[8] Each such

contribution shall be made no sooner than one month before the deadline imposed by federal law

(unless a significant corporate income tax advantage may be achieved by making a contribution

of the same amount earlier).

20.    The legally required minimum contributions to the Grace Retirement Plans for the

09-10 Funding Period are specified in the following schedule (the "Schedule"):

| Payment Due Date[9] | Contributions[10] | Plan Year |
|---|---|---|
| **2009** | | |
| July 15 | $8,164,422 | 2009 |
| September 15 | $4,824,756 | 2008 |
| October 15 | $8,628,679 | 2009 |
| **2010** | | |
| January 15 | $8,757,675 | 2009 |
| **Total** | **$30,375,532** | |

21.    The contributions listed on the Schedule for the 2008 and 2009 plan years have

been finalized, and are not subject to change as a result of future market performance of the

assets of the Grace Retirement Plans or any anticipated changes in applicable law.

22.    There are no anticipated changes in applicable federal law that could affect the

amount of the minimum contributions required to be made to the Grace Retirement Plans during

the 09-10 Funding Period.

23.    It is necessary to secure Court approval for the payment of legally required

minimum contributions for the 09-10 Funding Period at this time because the first due date with

8    Consistent with the most recent Prior Funding Motions, the 09-10 Funding Approach does not include the
     objective of eliminating the requirement of the Grace Retirement Plans to pay PBGC variable rate premiums. It
     is estimated that the Grace Retirement Plans will be required to pay approximately $2.3 million in PBGC
     variable rate premiums for 2009.  In order to avoid the requirement to pay all such premiums for 2009, the
     Debtors would be required to contribute approximately $261.5 million to the Grace Retirement Plans by
     September 15, 2009, in addition to the legally required minimums.

9    Debtors may slightly accelerate the timing of the legally required minimum contributions during the 09-10
     Funding Period to maximize tax benefits.

10   All contributions specified in this motion and the exhibits hereto have been calculated by the actuary of the
     Grace Retirement Plans.

respect to such contributions is July 15, 2009, less than one month after the hearing date for this motion.

### Addressing Employees' and Creditors' Concerns

24.     The Debtors believe that the legitimate concerns of their employees will be addressed if management can report to the employees the Court's approval for the Debtors to make all of the legally required minimum contributions to the Grace Retirement Plans for the 09-10 Funding Period.

25.     The Debtors also believe that the legitimate concerns regarding the Debtors' conservation of cash will continue to be addressed by the 09-10 Funding Approach because cash will only be used to satisfy the minimum contribution requirements imposed by applicable law, and not to make any additional contributions to satisfy any other objective.

### Relief Requested

26.     By this motion, the Debtors seek authority to make the minimum contributions required by applicable federal law to one or more of the Grace Retirement Plans for the period July 15, 2009 to January 15, 2010 (inclusive).

### Basis for Relief

27.     Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business property of the estate." 11 U.S.C. § 363(b). A court has the statutory authority to authorize a debtor to use property of the estate pursuant to § 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Lionel

Corp., 722 F.2d 1063, 1071(2d Cir. 1983), see also In re Montgomery Ward Holding Corp., 242

B.R. 147, 153 (Bankr. D. Del. 1999); Fulton State Bank v. Schipper, 993 F.2d 513, 515 (7th Cir.

1991) (a debtor's decision must be supported by "some articulated business justification");

Stephen Indus., Inc. v. McClun, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business

purpose" standard for sales proposed pursuant to section 363(b); In re Ernst Home Ctr., Inc., 209

B.R. 974, 979 (Bankr. W.D. Wash. 1997).

28.    Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish

that it has a valid business purpose for using estate property outside the ordinary course of

business. See Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid

business purpose, however, a presumption arises that the debtor's decision was made on an

informed basis, in good faith and in the honest belief that the action was in the debtor's best

interest. See In re Integrated Res., Inc., 147 B.R. 654, 656 (S.D.N.Y. 1992). A party in

interest seeking to challenge the debtor's valid business purpose must "produce some evidence

supporting its objections." Montgomery Ward, 242 B.R. at 155.

### The Proposed Transactions Are Supported by Sound Business Judgment

29.    The Debtors respectfully submit that implementing the 09-10 Funding Approach

is the least costly approach to funding the Grace Retirement Plans in accordance with the

requirements imposed by applicable federal law.  Such implementation will also allow for the

funding of the Grace Retirement Plans in a manner that helps to maintain the morale and

productivity of the Debtors' employees throughout the United States, and that maintains

competitive employee benefits vis-à-vis the Debtors' competitors and peers, which is key to

continuing to maintain a dedicated, motivated and loyal work force.  Such a work force is a

vital component of the Debtors' estates and restructuring efforts.

30.    The Debtors have determined in their business judgment that implementing the

09-10 Funding Approach is in the best interests of the Debtors' estates and creditors.  As specified above, clear business reasons exist to justify, under section 363(b) of the Bankruptcy Code, such implementation.

### Notice

31.    Notice of this motion has been given to (i) of the Office of the United States Trustee, (ii) counsel to the Debtor-In-Possession lenders, (iii) counsel to each Official Committee appointed by the United States Trustee. (iv) counsel to each FCR, and (v) those parties that requested papers under Fed.R.Bankr.P.2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

32.    No prior Application for the relief requested herein has been made to this or any other Court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an Order substantially in the form attached hereto (i) authorizing the Debtors to make the minimum contributions to the Grace Retirement Plans for the 09-10 Funding Period required by federal law, and (ii) granting such other and further relief as the Court deems just and proper.

Wilmington, Delaware
Dated: May 22, 2009

Respectfully submitted,

KIRKLAND & ELLIS LLP
Theodore L. Freedman
David M. Bernick, P.C.
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900

and

THE LAW OFFICES OF JANET S. BAER P.C.
Janet S. Baer, P. C.
70 West Madison Street, Suite 2100
Chicago, IL  60602
Telephone:  (312) 641-2162

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession