# EXHIBIT B

## SETTLEMENT AGREEMENT AND POLICY RELEASE

THIS SETTLEMENT AGREEMENT AND POLICY RELEASE ("*Agreement*") is made and entered into effective this 3rd day of March, 1994, by and between W.R. Grace & Co.-Conn., a Connecticut corporation, f/k/a W.R. Grace & Co. ("*Grace*") (as defined below), and General Insurance Company of America ("*General*") (as defined below) (collectively, Grace and General will sometimes be referred to herein as the "Parties").

### W I T N E S S E T H:

**WHEREAS**, General issued comprehensive blanket liability policies to VNW (as defined below), and other named insureds, bearing the following policy numbers and covering the following policy years: (1) BLP No. 205359 for the period from June 1, 1962, through June 1, 1963; (2) BLP No. 221289 for the period from June 1, 1963, through June 1, 1964; (3) BLP No. 245115 for the period from June 1, 1964, through June 1, 1965; (4) BLP No. 260071 for the period from June 1, 1965, through June 1, 1966; (collectively referred to herein as the "*Acknowledged Primary Policies*");

**WHEREAS**, there exists a dispute between General and Grace as to whether General insured Vermiculite-Northwest, Inc., and others under additional comprehensive blanket liability policies for the alleged policy years covering (1) June 1, 1961, through June 1, 1962, alleged to be BLP No. 186027, and (2) June 1, 1966, through June 1, 1967, alleged to be BLP No. 270815, and as to whether General insured Vermiculite-Northwest, Inc., or its predecessor Northwest Insulations Co., under any other existing or alleged, known or unknown, primary liability policies, other than the

Acknowledged Primary Policies (all collectively referred to herein as the *"Disputed Primary Policies"*) (the Acknowledged Primary Policies and the Disputed Primary Policies are collectively referred to herein as the *"Primary Policies"*);

**WHEREAS**, VNW was incorporated in the State of Washington to conduct a general manufacturing and distribution business relating to materials capable of use in construction work and, in furtherance thereof, VNW entered into certain licensing agreements with the Zonolite Company (*"Zonolite"*), including but not necessarily limited to, agreements dated April 1, 1959, and December 11, 1962, for the manufacture of certain products, including asbestos-containing products, pursuant to Zonolite specifications, and distribution thereof;

**WHEREAS**, VNW, as a licensee of Zonolite, was restricted by virtue of the aforesaid licensing agreements entered into with Zonolite in the manufacture, sale, and distribution of said products to the states of Washington, Oregon, Alaska, Idaho County and west and north thereof in the State of Idaho, and the Counties of Lincoln, Flathead, Sanders, Lake, Mineral, Missoula and Ravalli in the State of Montana (hereinafter the *"VNW Five State Area"*);

**WHEREAS**, Grace acquired Zonolite pursuant to an Agreement Plan of Reorganization dated January 17, 1963, and Zonolite was dissolved on September 18, 1964. As a result of Grace's acquisition of Zonolite, Grace succeeded to Zonolite's rights and duties under Zonolite's licensing agreements with VNW. Grace thereafter entered into an Agreement Plan of Reorganization between

Grace, VNW and Selling Shareholders dated August 5, 1966, at which time Grace became the sole shareholder of VNW;

**WHEREAS**, there exists a dispute between General and Grace as to whether insurance afforded by General to VNW under the Primary Policies affords liability insurance coverage of any nature to Grace;

**WHEREAS**, Grace has been the target of numerous claims, actions and lawsuits seeking, among other things, restitution, money and damages for personal or Bodily Injury and Property Damage alleged to have been caused or aggravated by products containing asbestos;

**WHEREAS**, Grace has made demand upon General and certain other insurance companies to defend and indemnify Grace with respect to past, present and future asbestos related bodily injury and property damage claims which have been asserted, are pending, or which may be asserted in the future and Grace has given General certain notice of such claims under the Primary Policies;

**WHEREAS**, Grace and General dispute the existence, kind, extent, duties and obligations of insurance coverage between them for the Underlying Asbestos Claims and there has been and is litigation involving Grace, General, and certain other insurance companies concerning insurance coverage for such claims;

**WHEREAS**, on or about October 11, 1983, The Maryland Casualty Company ("*Maryland*") filed a civil action in the United States District Court for the Southern District of New York against Grace, General, Continental Casualty Company ("*CNA*"), Royal Indemnity Company ("*Royal*") and Aetna Casualty & Surety Company ("*Aetna*") (hereinafter General, Maryland, CNA, Royal and Aetna are sometimes

-3-

collectively referred to as the "*Primary Insurers*"). The action is styled <u>Maryland Casualty Company v. W.R. Grace & Co., et al</u>. (No. 83 Civ. 7451 SWK) (hereinafter the "*New York Action*"). In the New York Action, Grace has made claims against the Primary Insurers, including General, seeking a declaration that the Primary Insurers owe Grace a defense and insurance coverage for the Underlying Asbestos Claims which have been asserted, are pending, or which may be asserted in the future, against Grace. The Primary Insurers have also filed claims against each other seeking an adjudication of the respective rights of contribution, apportionment and indemnity between the Primary Insurers for any liability to indemnify and/or defend Grace in the Underlying Asbestos Claims;

**WHEREAS**, Grace has heretofore entered into settlement agreements with CNA, Maryland and Aetna.

**WHEREAS**, CNA and Maryland collectively have fully paid and Grace has been fully reimbursed for all judgements, settlements, and Defense Costs incurred by Grace through August 31, 1991 associated with Asbestos-Related Bodily Injury Claims (as hereinafter defined), including all judgements, settlements and Defense Costs incurred by Grace in the VNW Five State Area through August 31, 1991, relating to the Asbestos-Related Bodily Injury Claims;

**WHEREAS** on or before March 14, 1994, General shall pay Grace the amount of $5,000,000, as hereinafter provided;

**WHEREAS**, Grace and General have entered into this Agreement to resolve and compromise their disputes under the Primary Policies concerning, among other things, coverage for Asbestos-Related

-4-

Claims and Products Claims (as defined below) and to avoid the uncertainty and expense attendant to such disputes and the related litigation, but, in so doing, neither Grace nor General admit in any way the validity of any of the positions or arguments advanced by the other or by any third party;

NOW, THEREFORE, in consideration of the mutual promises, covenants and consideration herein set forth, and intending to be legally bound, Grace and General hereby agree as follows:

1. <u>Additional Definitions</u>. As used within the Agreement, the following definitions govern the meanings attributable to the following defined terms:

A. *"Asbestos-Related Bodily Injury Claims"* shall mean any and all past, present, future, known or unknown, foreseeable or unforeseeable claims for bodily injury, sickness or disease asserted by any Person against Grace, VNW or Zonolite (or any combination thereof), or against others trading under the name of such companies, where such bodily injury, sickness or disease claims arise out of, involve or relate in any way to asbestos, regardless of the cause of action or theory of recovery employed by the Person asserting such claims, or the theory of recovery or coverage employed by Grace or any other Person with respect to such claims.

B. *"Asbestos-Related Property Damage Claims"* shall mean any and all past, present, future, known or unknown, foreseeable or unforeseeable claims asserted by any Person against Grace, VNW or Zonolite (or any combination thereof), or against others trading under the name of such companies, involving or relating in any way

-5-

to asbestos in buildings or in or on property, regardless of the cause of action or theory of recovery employed by the Person asserting such claims, or the theory of recovery or coverage employed by Grace or any other Person with respect to such claims.

C.    *"Asbestos-Related Claims"* shall mean both Asbestos-Related Bodily Injury Claims and Asbestos-Related Property Damage Claims as those terms are defined above.

D.    *"Bodily Injury"* and *"Property Damage"* shall have the same definitions as those set forth for those terms in the Acknowledged Primary Policies.

E.    *"Products Claims"* shall mean Asbestos-Related Claims and any other claim, demand, or lawsuit for Bodily Injury or Property Damage arising from the handling or use of, or the existence of any condition in, goods or products manufactured, sold, handled or distributed by Grace, Zonolite or VNW, regardless of the cause of action or theory of recovery or coverage employed by the Person asserting such claims (including claims based upon a failure to warn) or the cause of action or theory of recovery employed by Grace or any other Person with respect to such claims.

F.    *"Products Aggregates"* shall mean any aggregates or limits in the Primary Policies that are applicable to Products Claims.

G.    *"Defense Expenses"* shall mean all reasonable and necessary counsel fees which have been or will be incurred by Grace to defend Products Claims, and other reasonable and necessary expenses (such as court costs, witness fees, transcript costs, and expert fees) which have been or will be incurred by Grace and are

-6-

directly attributable to the defense of Products Claims. Defense Expenses shall not include any fees or expenses incurred by Grace in connection with its efforts to document or establish insurance coverage (through litigation or otherwise), to investigate insurance issues or negotiate this Agreement or any other agreement or arrangement with any Other Insurer, nor shall Defense Expenses include any sums within the definition of Loss.

H.   *"Loss"* shall mean all sums Grace has paid or will pay in the future in settlement of Products Claims, or in satisfaction of judgments entered with respect to such Claims, including, without limitation, any interest Grace may be required to pay thereon. For purposes of this Agreement only, Loss shall not include any sums within the definition of Defense Expenses.

I.   *"General"* means General Insurance Company of America, its predecessors, successors, parents, divisions, subdivisions, departments, subsidiary and parent companies or corporations, any companies or corporations owned, controlled or under common control or ownership with General, and any assignees of its rights and obligations under the Primary Policies;

J.   *"Grace"* means W.R. Grace & Co.-Conn., its predecessors, successors, divisions, subdivisions, departments, subsidiary and parent companies or corporations, any companies or corporations owned, controlled or under common control or ownership with Grace, and any assignees of its rights and obligations under the Primary Policies;

K.   *"Other Insureds"* shall mean any Person who has claimed, is claiming and/or claims in the future to be insured or

-7-

covered under the Primary Policies, and any Person identified in any of the Primary Policies as a named insured, additional named insured or additional insured, including any former or current directors, officers or employees of any such insured.

L. "*Other Insurer*" shall mean any insurer other than General which at any time issues or issued (or is at any time alleged to have issued) an insurance policy or policies of any kind whatsoever to Grace, Zonolite, VNW, or any of the Other Insureds.

M. "*Person*" means any individual, administrator, executor or legal representative, corporation, partnership, association, trust, government unit at any level of government, agency, or other entity. Whenever the context so requires, the singular use of the term Person shall include the plural and vice versa.

N. "*VNW*" means Vermiculite-Northwest, Inc., and any other named insureds under the Primary Policies, their predecessors, successors, divisions, subdivisions, departments and subsidiary and parent companies or corporations, any companies or corporations owned, controlled or under common control or ownership with VNW, and any assignees of their rights and obligations under the Primary Policies.

2. <u>Payment</u>. General shall pay to Grace the sum of Five Million Dollars ($5,000,000) in full satisfaction of General's alleged duty and/or obligation to indemnify VNW, Zonolite, Grace and any Other Insureds for Loss arising out of Products Claims under the Primary Policies and in full satisfaction of General's alleged duty and/or obligation to defend VNW, Grace or any Other

-8-

Insured and to pay Defense Expenses arising out of Products Claims under the Primary Policies. Such sums have been or will be paid within ten (10) days following execution of this Agreement by Grace by wire transfer to the account of Grace at Chemical Bank (ABA #021-000-128; Account Name-W.R. Grace & Co.; Account #016-001257).

3.    Payment Allocations.  Grace and General agree that the payment to be made by General pursuant to Paragraph 2 shall be allocated among the Primary Policies as follows:

6-1-1962 to 6-1-1963 Policy Period:

| | |
|---|---|
| Bodily Injury Loss | $500,000 |
| Property Damage Loss | $250,000 |

6-1-1963 to 6-1-1964 Policy Period:

| | |
|---|---|
| Bodily Injury Loss | $1,000,000 |
| Property Damage Loss | $250,000 |

6-1-1964 to 6-1-1965 Policy Period:

| | |
|---|---|
| Bodily Injury Loss | $1,000,000 |
| Property Damage Loss | $250,000 |

6-1-1965 to 6-1-1966 Policy Period:

| | |
|---|---|
| Bodily Injury Loss | $1,000,000 |
| Property Damage Loss | $250,000 |

| | |
|---|---|
| Disputed Primary Policies and Defense Expenses | $500,000 |

4.    Specific Release by Grace.  Grace, for itself, and for any Person on whose behalf Grace is authorized to act, hereby releases and forever discharges General as follows:

A.    Grace forever releases, surrenders, renounces, relinquishes, waives, bargains away, acquits, and discharges General from any and all past, pending, present, future, legal, equitable, fixed, contingent, matured, unmatured, liquidated, unliquidated, foreseeable, unforeseeable, or known or unknown

-9-

claims, allegations, demands, obligations, suits, actions, causes of action, proceedings, rights, damages, and costs of any nature whatsoever for Loss, Defense Expenses, or other payments, benefits, or obligations (hereinafter "Claims") that:  (i) arise under the Primary Policies; and (ii) are for or related to any liability imposed on or alleged against Grace, Zonolite, or VNW (regardless of the legal theory on which such liability is premised) where such actual or alleged liability, casualty or loss relates to Products Claims under the Primary Policies, including Claims that relate to any alleged misconduct, bad faith, violation of any insurance code, statute or regulation, or any other alleged wrongdoing of General relating to Products Claims under the Primary Policies.

B.    Grace hereby withdraws ab initio all requests, demands and tenders for indemnity, Loss, Defense Expenses, reimbursement costs of any nature, payments, benefits or obligations heretofore submitted to General for Products Claims under the Primary Policies and does hereby covenant and agree to forever relinquish and abandon any and all rights, whether actual or alleged, known or unknown, accrued or unaccrued, for any coverage of Products Claims under the Primary Policies.  It is the express intent of the Parties that this Agreement shall operate to release and forever discharge to the fullest extent possible under law General from any and all obligations (past, present, existing or future, actual or alleged, known or unknown, accrued or unaccrued) to VNW, Grace, Zonolite, Other Insureds on whose behalf Grace is authorized to act and any Person (except for any Other

Insurer) making a claim by, through or derived from Grace, for Products Claims under the Primary Policies.

C. Nothing in this Agreement is intended to be, or will be construed by General or Grace to be, a release of: (i) any obligation that General may owe to CNA for Defense Costs paid or incurred by CNA on behalf of Grace or (ii) any obligation that General may owe to Maryland for Defense Costs paid or incurred by Maryland on behalf of Grace.

5. Exhaustion. Grace and General acknowledge that the payment made by General under Paragraph 2 of this Agreement represents and shall be conclusively deemed for all purposes to be a full and final payment and complete exhaustion of all Products Aggregates set forth in the Primary Policies.

6. Full Satisfaction of Obligations. Grace further acknowledges that the agreements of General contained in this Agreement constitute the fulfillment of General's entire duties and/or obligations to Grace for Products Claims under the Primary Policies.

7. Dismissal. Within 15 days of full and final execution of this Agreement and payment by General, Grace will file a dismissal with prejudice with respect to any and all claims asserted or which could have been asserted against General by VNW, Zonolite or Grace (arising out of Products Claims under the Primary Policies) in the New York Action, including any and all Products Claims which are or could have been asserted arising out of the issuance or alleged issuance by General of the Primary Policies.

-11-

8.   <u>Indemnification by Grace</u>.

A.   In the event that any Other Insured or any Person (except any Other Insurer including, without limitation, Maryland, CNA, Royal and Aetna) makes Products Claims under the Acknowledged Primary Policies (including without limitation claims pursuant to a direct-action statute, garnishment proceeding, third-party suit, or otherwise) against General, Grace will indemnify and hold harmless General from any and all liability imposed upon, or costs or expenses incurred by, General in connection with such claims, provided, however, that if such claimant is not an Other Insured, such total aggregate indemnification for all such claims will be limited to the amounts paid to Grace by General pursuant to paragraph 2 of this Agreement.

B.   In the event that any Other Insured or any Person (except any Other Insurer including without limitation, Maryland, CNA, Royal and Aetna) makes Products Claims under the Disputed Primary Policies (including without limitation claims pursuant to a direct-action statute garnishment proceeding, third-party suit, or otherwise) against General which are acquired or derived through an affirmative act of Grace subsequent to Grace's acquisition of Vermiculite Northwest, Inc., such as by an assignment, Grace will indemnify and hold harmless General from any and all liability imposed upon, or costs or expenses incurred by, General in connection with such claims.  In the event that any other Insured or any Person (except any Other Insurer including without limitation, Maryland, CNA, Royal and Aetna) makes Products Claims under the Disputed Primary Policies (including without limitation

-12-

claims pursuant to a direct-action statute garnishment proceeding, third-party suit, or otherwise) against General which are not acquired or derived through an affirmative act of Grace subsequent to Grace's acquisition of Vermiculite Northwest, Inc., such as by an assignment, such total aggregate indemnification for all such claims will be limited to the amounts paid to Grace by General pursuant to paragraph 2 of this Agreement. As further set forth in paragraph 15(G) of this Agreement, Grace will have no obligation to indemnify General for Product Claims under any Disputed Primary Policy (except for BLP No. 186027 and BLP No. 270815) which is referred to in Newly Discovered Information (as defined in ¶15(G)).

C.   In the event a claim is made against General for which General is to be indemnified as provided in paragraphs 8(A) and (B) above, General shall give written notice of such claim to Grace as soon as is practical. Grace at its own expense shall assume the defense of General for such claims, including the hiring of counsel for such defense. General shall cooperate with Grace in connection with General's defense. In the event Grace fails or refuses to retain counsel within a reasonable time to defend General, General may retain counsel and Grace will be required to pay promptly all reasonable attorneys' fees and other costs and expenses incurred in connection with General's defense.

9.   Cooperation.

A.   In the event any proceedings are commenced to invalidate all or any part of this Agreement, the Parties do mutually agree to cooperate fully in the opposition to such proceedings. The Parties further agree to cooperate fully, if

-13-

necessary, to prove exhaustion of the Products Aggregates of the Primary Policies. In the event that, as a result of such proceedings, a claim is made against the Parties to this Agreement, all defenses ever available to the Parties under the Primary Policies are neither waived nor impaired, but are fully preserved.

B. Grace agrees that it will not take a position in the New York Action, and in any other litigation involving Asbestos-Related Claims under the Primary Policies, with respect to (a) whether General had an obligation to defend or indemnify VNW or Grace for Asbestos-Related Claims arising outside the VNW Five State Area, and (b) whether General has any obligation to CNA, Maryland, Royal, Aetna or any Other Insurers for contribution, indemnity or subrogation by reason of the Primary Policies. Nothing herein shall prohibit Grace, or its employees or agents, from responding fully and truthfully to properly served and noticed discovery or from giving full and truthful testimony pursuant to proper service of a subpoena before a court or tribunal or by court order or direction. The Parties agree that the provisions of this paragraph 9(B) shall be specifically enforceable.

C. Grace agrees that any settlement agreement between Grace and any other primary insurer (which issued, or is alleged to have issued, policies of primary insurance covering or allegedly covering Asbestos Related Claims, including Royal) shall provide that such settlement agreement does not impair or release any claim that General may have against such other primary insurer for recovery of General's unreimbursed Defense Expenses. In the event that a court of law rules that General's rights against any other

-14-

primary insurer are impaired in any way by any such settlement, such impairment will not result in any liability on the part of Grace to General so long as Grace acted in good faith to preserve General's rights against such other primary insurers in such settlement(s).

10.  <u>Complete Resolution of Disputes Under Primary Policies</u>. This Agreement is the complete and final resolution of all disputes between General and Grace for Products Claims under the Primary Policies.  After the effective date of this Agreement, Grace and General will not institute any lawsuits, including, but not limited to, any counterclaims, cross-claims, or third-party complaints, or assert any claims against each other in connection with Products Claims under the Primary Policies, except to enforce the terms of this Agreement or to recover damages for its breach.

11.  <u>No Admissions; Reservation of Rights</u>.

A.  The Parties agree that they are entering into this Agreement for the purposes of settling certain disputes between them and of avoiding the cost of further litigation with respect to these disputes.

B.  Nothing contained in this Agreement or in any document exchanged by the Parties in the negotiation or furtherance of this Agreement shall be construed as an admission or concession by either party (1) that any particular theory with respect to coverage for (including but not limited to whether any coverage is owed under an "accident" or "occurrence" based Primary Policy), or allocation of Products Claims or any other type of claim is valid or (2) that Grace is, or ever was, entitled to any coverage of any

nature under the Primary Policies. Further, each of the Parties has fully participated in preparation of this Settlement Agreement and Release. Accordingly, the fact that any term or provision herein was proposed, drafted or approved in whole, or in part, by one of the Parties, shall not, for that reason, result in the construction of that term, provision or any part of the Agreement and Release against that party.

   C. Neither the terms of this Agreement nor its negotiation, its execution, nor any act in performance of this Agreement shall be invoked by either of the Parties hereto or their attorneys or agents in any proceeding for the purpose of attempting to establish or prove the acceptance by General or Grace of any particular interpretation of any insurance policy, including the Primary Policies, with respect to any claim for coverage of any nature.

   D. The Parties agree, as an essential and integral part of this Agreement, that this Agreement and the matters contained in this Agreement are not intended to be, nor shall they in fact be, admissible or relevant in any case or proceeding to prove the acceptance by either party hereto of any particular theory or type of insurance coverage, or as evidence of any obligation that either party hereto has or may have to anyone other than to each other under the terms and conditions set forth herein.

   E. Except as provided in this Agreement, each of the Parties hereby reserves all rights it may have against the other party to this Agreement. Nothing contained herein shall be

-16-

interpreted as a restriction on the right of either party to bring a claim based on a breach of this Agreement.

F.    Nothing in this Agreement is intended to limit or expand any obligation owed by any Other Insurer to indemnify and defend Grace for Asbestos-Related Claims.    Nothing contained in this Agreement is intended to limit or expand any obligation that any Other Insurer may owe to General by way of contribution, indemnity, apportionment or otherwise for sums paid or incurred by General for Asbestos-Related Claims.

12.    <u>Preservation of Grace and General's Rights Against Third Parties</u>.    This Agreement is not intended to and shall not be construed so as to vary, modify, or release any right that Grace or General may have against any Person other than General or Grace, respectively, including, but not limited to, any other insurance company for or in connection with the payment of past, present, or future Loss, Defense Expenses and/or other sums arising from any claims either settled or not settled by this Agreement.    However, General agrees that it will not seek to recover from Grace's excess insurers any indemnity or Loss payments or Defense Expenses paid by General for claims under the Primary Policies.

13.    <u>Benefits to Parties</u>.    Upon execution, this Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns.

14.    <u>No Third-Party Rights</u>.    No Person other than General and Grace shall have any rights under this Agreement or shall otherwise be deemed to be a third-party beneficiary under this Agreement.

-17-

15. <u>Representations and Warranties; Confidentiality; Further Covenants</u>.

A.   The officer signing this Agreement on behalf of W.R. Grace & Co.-Conn. has authority to do so.

B.   General represents and warrants that the officer signing this agreement on General's behalf is authorized by the corporate by-laws so to do and to bind General to its terms.

C.   Grace and General specifically stipulate and agree that the statements made, positions taken, and documents exchanged leading up to and including the preparation of this Agreement, as well as to the Agreement itself, are and will remain confidential, subject to Rule 408 of the Federal Rules of Evidence and the Protective Order previously entered on February 27, 1986 in the New York Action, and will not be used in any form or manner by Grace or General, their attorneys and its agents, in any other litigation of any type whatsoever, except litigation to enforce the terms of this Agreement or in that portion of the New York Action involving claims of contribution, indemnity, or apportionment between General and any of the Primary Insurers.

D.   Grace agrees that no further Asbestos-Related Claims or Products Claims will be presented or tendered by Grace to General under the Primary Policies for any reason or purpose regardless of the theory of coverage.

E.   This Agreement and its terms shall remain confidential and shall not be disclosed to third Parties, except under the terms of the Protective Order entered on February 27, 1986, in the New York Action or other appropriate pledge of

-18-

confidentiality and if the disclosure is required under proper discovery request or otherwise under operation of law. In the event that a disclosure is contemplated or scheduled to occur, the party contemplating or scheduling such disclosure shall provide written notice of its intent to disclose at least ten (10) days prior to such disclosure, setting forth verbatim all information which it proposes to disclose, the identity of each person to whom the information is to be disclosed, the confidentiality agreement governing the disclosure, and the circumstances pursuant to which disclosure is proposed to be made. Notwithstanding the foregoing, (i) Grace or General may disclose this Agreement or its contents to accountants, auditors, insurers, reinsurers, governmental authorities and other regulatory entities to which the disclosing party has a duty to report; (ii) Grace or General may disclose this Agreement or its contents when necessary to prove the exhaustion of the Primary Policies; (iii) Grace or General may disclose this Agreement or its contents with the prior written consent of the other; and (iv) Grace or General may disclose the facts of a settlement and release in general terms within press releases, disclosures to shareholders and to governmental entities, as deemed necessary or appropriate by good faith business judgment. Before Grace or General may disclose the terms or substance of this agreement to Other Insurers, that party shall disclose to the other party hereto the identity of such Other Insurer.

F.    Grace hereby represents and warrants that it has no knowledge of Other Claims which have been tendered, filed, asserted, are pending, or have been threatened against Grace,

Zonolite or VNW which would implicate any of the Primary Policies. For purposes of this representation, "Other Claims" means any actual, potential or threatened claim of which Grace has knowledge or otherwise has been put on notice which involves, or is alleged to involve, VNW or a VNW product, but "Other Claims" does not include Asbestos-Related Claims, Products Claims or claims falling within the Products Aggregates. Nothing in this Settlement Agreement shall preclude Grace from submitting any Other Claims to General for payment under the Primary Policies and nothing in this Settlement Agreement shall limit or preclude any defenses which General might otherwise have to such Other Claims.

G.    General and Grace mutually represent and warrant that each has extensively searched its files, and except for the information exchanged between them regarding BLP No. 270815 and BLP No. 186027 during the course of discovery and otherwise, receipt of which is hereby acknowledged, no other information referencing the Disputed Primary Policies has been discovered or is known to exist in their respective files. In the event General discovers information in its files related to the Disputed Primary Policies other than BLP No. 270815 and BLP No. 186027 ("Newly Discovered Information"), Grace will be relieved of its indemnification obligations under paragraph 8(B) of this Agreement to hold General harmless from any and all liability imposed upon or costs or expenses incurred by General in connection with Products Claims under any disputed Primary Policy except for BLP No. 270815 or BLP No. 186027, which is referred to in the Newly Discovered Information.

-20-

16. <u>Entire Agreement; Amendments</u>. General and Grace agree that this Agreement constitutes the entire agreement between them with regard to the matters set forth herein. This Agreement supersedes any and all prior agreements or understandings between General and Grace as to the subject matter of this Agreement. This Agreement may be modified or amended only by a written document, signed by the duly authorized representatives of both Parties to this Agreement, and no oral modification of the Agreement shall be effective, notwithstanding any provisions of governing law that may allow for oral modification.

17. <u>Governing Law</u>. General and Grace voluntarily stipulate and agree that this Agreement will be governed, construed, and applied only in accordance with the laws of the State of Washington.

18. <u>Notice</u>. Any notice pursuant to this Agreement shall be in writing by registered or certified mail, return receipt requested, addressed to:

A. W.R. Grace & Co.-Conn., Attention: Secretary, with a copy to Director of Corporate Risk Management, One Town Center Road, Boca Raton, Florida 33486-1010.

B. General Insurance Company of America, Attention: General Counsel, Safeco Plaza, Seattle, WA 98185.

C. In the event that either party changes its above address, the party may notify the other party in writing and all further notices pursuant to this Agreement shall be sent to the new address in accordance with paragraph 18.

19.   <u>Captions</u>.   The captions contained within this Agreement are for convenience only and shall not control the meaning, effect, or construction of this Agreement.

20.   <u>Counterparts</u>.   This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this Agreement, as set forth below.

W.R. GRACE & CO.-CONN.

By: _____
     (Name)  Jeffrey M. Posner
     (Title)  Assistant Vice President

Date: _3/3/94_____


GENERAL INSURANCE COMPANY OF AMERICA


By: _____
     (Name)
     (Title)

Date: _____


SLIT\SETTAGM5 KBR cyl

-23-

IN WITNESS WHEREOF, the Parties have executed this Agreement, as set forth below.

W.R. GRACE & CO.-CONN.

By: _____
       (Name)
       (Title)

Date: _____


GENERAL INSURANCE COMPANY OF AMERICA

By: _____
       (Name)
       (Title)   Clifford C. Duever
               Region Vice President, Claims

Date: __February 28, 1994_____

SLIT\SETTAGMS KBR cyl

-23-

IN WITNESS WHEREOF, the Parties have executed this Agreement, as set forth below.

W.R. GRACE & CO.-CONN.

By: _____
       (Name)
       (Title)

Date: _____


GENERAL INSURANCE COMPANY OF AMERICA

By: _____
       (Name)   Clifford C. Duever
       (Title)  Region Vice President, Claims

Date: _____

SLITNSETTAGMS KBR cyl

-23-