# 1A
# PART 3

**INA**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| W. R. Grace & Co., Etal | | | 4 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XMO | 01 72 04 | 6/30/84 to 6/30/85 | 6/30/84 |

Issued By (Name of Insurance Company)

Pacific Employers Insurance Company

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the pol

Follow Form Endorsement

"It is agreed that except only with respect to policy period, premium and limits of liability, this policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the first layer Umbrella policy, (London and various British) KYO17582 and all renewals and replacements thereof. It is further agreed that all pre-printed terms and conditions hereon are deleted to the extent that they vary from or are inconsistent with the terms and conditions of the first layer Umbrella."

6/14/85

Authorized Agent

CC-1E15  Ptd. in U.S.A.

ORIGINAL

# Lloyd's

## Policy No.  KYO 17782

### 06/30/82 – 06/30/85

No: ....................

COPY

VOL. XVI. TAB 4

**Whereas** W.R. GRACE AND CO (as more fully described in Item 1 (a) of the declarations attached hereto of 1114 Avenue of the Americas, New York N.Y. 10036, ..... hereinafter called the Assured, ..... paid U.S. 3000,000.00 Premium or Consideration to Us, the undersigned Assurers to ................................ indemnify the Assured in respect of EXCESS UMBRELLA LIABILITY as per wording attached hereto.

91.64% of 56.25% of the limits stated herein

during the period commencing at **Thirtieth** day of **June** 19**82** , and ending at **Thirtieth** day of **June** 19**85** . both days at 12.01 A.M. Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company** for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding **NINETY-ONE DECIMAL SIX FOUR PER CENT OF FIFTY-SIX DECIMAL TWO FIVE PER CENT of the limits stated herein,**

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this **FOURTH** day of **MAY** 19**84**

DIRECTOR
H. S. WEAVERS (UNDERWRITING) AGENCIES LTD.

FS.CB/BC

U:

H.S.W.(U)A.

D:

C:
or
nu

U.S.A.

**4% TAX CLAUSE**
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

Notice is hereby given that the Underwriters have agreed to allow for the purpose of paying the Federal Excise Tax 4% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Underwriters will deduct 4% from the amount of the return and the Assured or his agent should take steps to recover the Tax from the U.S. Government.

19/5/66
N.M.A. 1546

U.S.A.

RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

H.S.W.(U)A.

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

3/2/64
I.M.A. 1477

U.S.A.

H.S.W.(U)A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*
*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroads) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability).

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.

This policy*

does not apply:—

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraphs (a) or (b) thereof; "nuclear facility" means

   (a) any nuclear reactor,
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.
It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
N.M.A. 1256

ADDENDUM NO 1

Attaching to and forming part of Policy No. KYO17782

Issued to:     W.R. GRACE & CO.

It is hereby understood and agreed that this policy is extended to cover "Employee Benefit Liability," as more fully defined in the Underlying Umbrella Policy(ies) as referred to in the wording of this policy.

Notwithstanding anything stated above to the contrary, it is understood and agreed that the above extension in coverage shall not apply to claims based upon the Employee Retirement Income Security Act of 1974 Public Law 93-406 commonly referred to as the Pension Reform Act of 1974 and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law.

All other terms and conditions of the Policy remaining unchanged.

ADDENDUM NO 2

Attaching to and forming part of Policy No KY017782.

Issued to:          W.R.GRACE & CO.

ADJUSTMENT CLAUSE.

Notwithstanding anything stated herein to the contrary, it is hereby agreed that the premium for this Policy comprises three annual Minimum and Deposit Premiums subject to adjustment at each anniversary with the Earned Premium to be calculated at the rate of $0.0350 per $1,000 of the Assured's Gross Sales.

The Assured shall declare to Underwriters as soon as possible after each anniversary date the total amount of his Gross Sales during the preceding Policy period and should the Earned Premium for said annual period exceed the Minimum and Deposit Premium paid for such period then the balance shall be immediately payable by the Assured to the Underwriters.

Notwithstanding anything contained herein to the contrary, if this Policy shall be cancelled by the Assured, Underwriters shall be entitled to the Earned Premium for the period that this Policy has been in force or the short rate proportion of the Minimum Premium whichever is the greater.   If this Policy is cancelled by Underwriters they shall be entitled to the Earned Premium for the period that this Policy has been in force or Pro Rata of the Minimum Premium whichever is the greater.

All other terms and conditions of the Policy remaining unchanged.

ADDENDUM NO. 3

Attaching to and forming part of Policy No. KY017782

Issued to:        W.R.GRACE & CO.

It is hereby understood and agreed that the premium set forth herein is the
Minimum and Deposit Premium for the period 30th June, 1982 to 30th June, 1985.
Further amounts become due and payable as follows:-

| Date Due | Minimum and Deposit Premium |
|---|---|
| 30th June, 1983 | $ 154,642.50 part of $900,000 |
| 30th June, 1984 | $ 167,529.37 part of $900,000 |

All other terms and conditions of the Policy remaining unchanged.
PSGB/sc

ADDENDUM NO. 4

Attaching to and forming part of Policy No. KYO17782

Issued to    W. R. GRACE & CO.

It is hereby understood and agreed that the following attached clause shall apply in respect of the Assured's oil and/or gas operations on, over and/or under water:

### SEEPAGE, POLLUTION AND CONTAMINATION EXCLUSION CLAUSE No. 2    H.S.W. (U)A.
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination.
(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances.
(3) Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by sub-surface operations of the Assured.
(4) Removal of, loss of or damage to sub-surface oil, gas or any other substance, the property of others.
(5) Fines, penalties, punitive or exemplary damages.
22/1/70.
N.M.A. 1684.

It is also understood and agreed that the following attached clause shall apply in respect of the Assured's oil and/or gas operations other than those on, over and/or under water:

### SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE NO. 1
*(Approved by Lloyd's Underwriters' Non-Marine Association)*    H.S.W. (U)A.

This Insurance does not cover any liability for:
(1) Removal of, loss of or damage to sub-surface oil, gas or any other substance, the property of others, provided always that this paragraph (1) shall not apply to any liability which would otherwise be covered under this Insurance for such removal, loss, or damage directly attributable to blow-out, cratering or fire of an oil or gas well owned or operated by, or under the control of, the Assured.
(2) Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by sub-surface operations of the Assured.
(3) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (3) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(4) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(5) Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.

22/1/70.
N.M.A. 1683

It is further understood and agreed that the following attached clause shall apply in respect of all operations of the Assured, other than oil and/or gas operations.

### INDUSTRIES, SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 3
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (1) shall not apply for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(3) Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.

22/1/70.
N.M.A. 1685

Attaching to and forming part of Policy No. KYO17782

Reference No

63.75% (31.18% WALBROOK INSURANCE COMPANY LIMITED.
       (10.75% EL PASO INSURANCE COMPANY LIMITED
       (18.82% DART & KRAFT INSURANCE COMPANY LIMITED.
       ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED
       ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED.
       (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY
       ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED
       ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES INDUSTRIELLES S.A.
       Per:H.S.Weavers (Underwriting)Agencies Limited.          82LO3D40098'S

U)A.

11.95%  LEXINGTON INSURANCE COMPANY                              B3-CTB-651-
                                                                 70336-20
15.94%  ENGLISH & AMERICAN INSURANCE COMPANY LIMITED.

H.S.W.(U)A.

6577,3⁰⁶

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwrite (hereinafter called the "Named Assured").

## INSURING AGREEMENTS:

### I.   COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:–

(a)   imposed upon the Assured by law,

or (b)   assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:–

(i)   Personal Injuries

(ii)   Property Damage

(iii)   Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policie stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

### II.   LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of the respective ultimate net loss liability as follows:–

$ (as stated in Item 3 of the Declarations)   ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations)

in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured ~~and in respect of any other hazard subject~~ ~~to an aggregate limit in the Underlying~~ ~~Umbrella Policies~~

of the Declarations)                    each occurrence – subject to a limit
                                        of

$ (as stated in Item 6          in the aggregate for each annual
of the Declarations)            period during the currency of this
                                Policy, separately in respect of
                                Products Liability and in respect of
                                Personal Injury (fatal or non-fatal)
                                by Occupational Disease sustained
                                by any employees of the Assured and
                                ~~in respect of any other hazard subject~~
                                ~~to an aggregate limit in the Underlying~~
                                ~~Umbrella Policies.~~

## CONDITIONS:

1.    PRIOR INSURANCE AND NON CUMULATION OF LIABILITY  –

It is agreed that if any loss covered hereunder is also covered in whole or in part unde
any other excess policy issued to the Assured prior to the inception date hereof the lim
of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by a
amounts due to the Assured on account of such loss under such prior insurance.

2.    MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE  –

This Policy is subject to the same terms, definitions, exclusions and conditions (except
as regards the premium, the amount and limits of liability and except as otherwise
provided herein) as are contained in or as may be added to the Underlying Umbrella
Policies stated in Item 2 of the Declarations prior to the happening of an occurrence
for which claim is made hereunder.   Should, however, any alteration be made in the
premium for the Underlying Umbrella Policies during the currency of this Policy Under
writers reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintain
in full effect during the Policy period without reduction of coverage or limits except
for any reduction of the aggregate limits contained therein solely by payment of claim
in respect of accidents and/or occurrences occurring during the period of this Policy o
by the operation of Condition C. of the Underlying Umbrella Policies.

3.    CANCELLATION  –.

This Policy may be cancelled by the Named Assured or by the Underwriters or their
representatives by sending by registered mail notice to the other party stating when, r
less than ~~thirty (30)~~ sixty (60) days thereafter, cancellation shall be effective.   The mailing of
notice as aforesaid by Underwriters or their representatives to the Named Assured at th
address shown in this Policy shall be sufficient proof of notice, and the insurance und
this Policy shall end on the effective date and hour of cancellation stated in the notic
Delivery of such written notice either by the Named Assured or by the Underwriters or
their representatives shall be equivalent to mailing.  –

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain
the customary short rate proportion of the premium for the period this Policy has been

been in force. Notice of cancellation by the Underwriters shall be effective even
though Underwriters make no payment or tender of return premium with such notice.

4.    NOTICE OF OCCURRENCE  -

Whenever the Assured has information from which the Assured may reasonably conclude
that an occurrence covered hereunder involves injuries or damages which, in the event
that the Assured should be held liable, is likely to involve this Policy, notice shall be
sent as stated in Item 8 of the Declarations as soon as practicable, provided, however,
that failure to give notice of any occurrence which at the time of its happening did not
appear to involve this Policy, but which, at a later date, would appear to give rise to
claims hereunder, shall not prejudice such claims.

5.    OTHER INSURANCE  -

If other valid and collectible insurance with any other insurer is available to the Assured
covering a loss also covered by this Policy, other than insurance that is specifically stated
to be excess of this Policy, the insurance afforded by this Policy shall be in excess of
and shall not contribute with such other insurance.    Nothing herein shall be construed
to make this Policy subject to the terms, conditions and limitations of other insurance.

6.    SERVICE OF SUIT CLAUSE  -

It is agreed that in the event of the failure of Underwriters hereon to pay any amount
claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will
submit to the jurisdiction of any Court of competent jurisdiction within the United States
and will comply with all requirements necessary to give such Court jurisdiction and all
matters arising hereunder shall be determined in accordance with the law and practice
of such Court.

It is further agreed that service of process in such suit may be made as stated in Item 9
of the Declarations, and that in any suit instituted against any one of them upon this
Policy, Underwriters will abide by the final decision of such Court or of any Appellate
Court in the event of an appeal.   The person or firm named in Item 9 are authorised and
directed to accept service of process on behalf of Underwriters in any such suit and/or
upon the request of the Assured to give a written undertaking to the Assured that they
will enter a general appearance upon Underwriters' behalf in the event such a suit shall
be instituted.

Further, pursuant to any statute of any state, territory or district of the United States
which makes provision therefor, Underwriters hereon hereby designate the Superintendent
Commissioner or Director of Insurance or other officers specified for that purpose in the
statute, or his successor or successors in office, as their true and lawful attorney upon
whom may be served any lawful process in any action, suit or proceeding instituted by
or on behalf of the Assured or any beneficiary hereunder arising out of this Policy of
insurance, and hereby designate the above-named as the person to whom the said officer
is authorised to mail such process or a true copy thereof.

## DECLARATIONS:

ITEM 1.    (a)    Named Assured:- W.R.GRACE AND CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

           (b)    Address of Named Assured:-    1114 Avenue of the Americas, New York, N.Y.10038.

ITEM 2.    (a)    Underlying Umbrella Policies:- 79DD1633C
                                                  KY017582

           (b)    Underlying Umbrella Insurers:- Certain Insurance Companies

ITEM 3.    Underlying Umbrella Limits
           (Insuring Agreement II):-                           U.S $  5,000,000

ITEM 4.    Underlying Umbrella Aggregate Limits
           (Insuring Agreement II):-                           U.S. $  5,000,000

ITEM 5.    Limit of Liability
           (Insuring Agreement II):-                           U.S. $ 20,000,000

ITEM 6.    Aggregate Limit of Liability
           (Insuring Agreement II):-                           U.S. $ 20,000,000

ITEM 7.    Policy Period:- 30th June, 1982 to 30th June 1985
                           both days at 12.01 A.M.Local Standard Time

ITEM 8.    Notice of Occurrence (Condition 4) to:-

                      Marsh & McLennan Inc.,
                      1221 Avenue of the Americas,
                      New York, N.Y.10020.

ITEM 9:    Service of Process (Condition 6) upon:-

                      Messrs Mendes and Mount.
                      3 Park Avenue,
                      New York, N.Y.10016
                      U.S.A.

L.P.O.355A (12/76)                                            Page 4 of 4

LONDON,

A/C W.R. GRACE AND CO

# Insurance Policy
# [Companies]

Date of expiry................ 30th June 1985 ........................



# Lloyd's Policy

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters'),

**Now We the Underwriters** hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Now know Ye** that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of Us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.
*General Manager*

LLOYD'S
POLICY SIGNING
OFFICE
EMBOSSMENT
APPEARS HERE
ON ORIGINAL
DOCUMENT

J(A)  NMA 2002 (11.4.74)

U.S.A.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
### (Approved by Lloyd's Underwriters' Non-Marine Association)

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording world wide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

The

imm

U.S.A.

In :

Sche

In tl

imm

NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment to insurances in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

This policy*                                                                              does not apply:—

I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction
    (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:
    "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
    (a) any nuclear reactor,
    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
    With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
N.M.A. 1256

ADDENDUM NO 1

Attaching to and forming part of Policy No KYO17782

Issued to:        W.R. GRACE & CO.

It is hereby understood and agreed that this policy is extended to cover
"Employee Benefit Liability," as more fully defined in the Underlying
Umbrella Policy(ies) as referred to in the wording of this policy.

Notwithstanding anything stated above to the contrary, it is understood
and agreed that the above extension in coverage shall not apply to claims
based upon the Employee Retirement Income Security Act of 1974 Public
Law 93-406 commonly referred to as the Pension Reform Act of 1974 and
amendments thereto, or similar provisions of any Federal, State or Local
Statutory Law or Common Law.

All other terms and conditions of the Policy remaining unchanged.

ADDENDUM NO 2

Attaching to and forming part of Policy No KYO17782

Issued to:          W.R. GRACE & CO.

### ADJUSTMENT CLAUSE.

Notwithstanding anything stated herein to the contrary, it is hereby agreed that the premium for this Policy comprises three annual Minimum and Deposit Premiums subject to adjustment at each anniversary with the Earned Premium to be calculated at the rate of $0.0350 per $1,000 of the Assured's Gross Sales.

The Assured shall declare to Underwriters as soon as possible after each anniversary date the total amount of his Gross Sales during the preceding Policy period and should the Earned Premium for said annual period exceed the Minimum and Deposit Premium paid for such period then the balance shall be immediately payable by the Assured to the Underwriters.

Notwithstanding anything contained herein to the contrary, if this Policy shall be cancelled by the Assured, Underwriters shall be entitled to the Earned Premium for the period that this Policy has been in force or the short rate proportion of the Minimum Premium whichever is the greater.  If this Policy is cancelled by Underwriters they shall be entitled to the Earned Premium for the period that this Policy has been in force or Pro Rata of the Minimum Premium whichever is the greater.

All other terms and conditions of the Policy remaining unchanged.

ADDENDUM NO 3

Attaching to and forming part of Policy No KYO17782

Issued to:                  W.R.GRACE & CO.

It is hereby understood and agreed that the premium set forth herein is the
Minimum and Deposit Premium for the period 30th June, 1982 to 30th June, 1985.
Further amounts become due and payable as follows:—

| Date Due | Minimum and Deposit Premium |
|---|---|
| 30th June, 1983 | $14,107.50  part of $900,000 |
| 30th June, 1984 | $15,283.13  part of $900,000 |

All other terms and conditions of the Policy remaining unchanged.

DECLARATIONS:

ITEM 1.    (a)    Named Assured:- W.R.GRACE AND CO. and/or Subsidiary, Associated,Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

           (b)    Address of Named Assured:- 1114 Avenue of the Americas, New York, N.Y.10038.

ITEM 2.    (a)    Underlying Umbrella Policies:- 79DD1633C
                                                 KYO17582

           (b)    Underlying Umbrella Insurers:- Certain Insurance Companies

ITEM 3.    Underlying Umbrella Limits
           (Insuring Agreement II):-                    U.S $ 5,000,000

ITEM 4.    Underlying Umbrella Aggregate Limits
           (Insuring Agreement II):-                    U.S. $ 5,000,000

ITEM 5.    Limit of Liability
           (Insuring Agreement II):-                    U.S $ 20,000,000

ITEM 6.    Aggregate Limit of Liability
           (Insuring Agreement II):-                    U.S. $ 20,000,000

ITEM 7.    Policy Period:- 30th June, 1982 to 30th June 1985
                           both days at 12.01 A.M.Local Standard Time

ITEM 8.    Notice of Occurrence (Condition 4) to:-

                   Marsh & McLennan Inc.,
                   1221 Avenue of the Americas,
                   New York, N.Y.10020.

ITEM 9:    Service of Process (Condition 6) upon:-

                   Messrs Mendes and Mount.
                   3 Park Avenue,
                   New York, N.Y.10016
                   U.S.A.

L.P.O.355A (12/76)                                      Page 4 of 4

shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Underwriters shall be effective even though Underwriters make no payment or tender of return premium with such notice.

4. NOTICE OF OCCURRENCE —

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy; notice shall be sent as stated in Item 8 of the Declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

5. OTHER INSURANCE —

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is specifically stated to be excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

6. SERVICE OF SUIT CLAUSE —

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made as stated in Item 9 of the Declarations, and that in any suit instituted against any one of them upon this Policy, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The person or firm named in Item 9 are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.—

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this Policy of insurance, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

of the Declarations)                                            each occurrence – subject to a limit of

$ (as stated in Item 6
of the Declarations),

in the aggregate for each annual
period during the currency of this
Policy, separately in respect of
Products Liability and in respect of
Personal Injury (fatal or non-fatal)
by Occupational Disease sustained
by any employees of the Assured and
in respect of any other hazard subject
to an aggregate limit in the Underlying
Umbrella Policies.


CONDITIONS:

1.    PRIOR INSURANCE AND NON CUMULATION OF LIABILITY   –

It is agreed that if any loss covered hereunder is also covered in whole or in part un
any other excess policy issued to the Assured prior to the inception date hereof the
of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by
amounts due to the Assured on account of such loss under such prior insurance.


2.    MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE   –

This Policy is subject to the same terms, definitions, exclusions and conditions (exce
as regards the premium, the amount and limits of liability and except as otherwise
provided herein) as are contained in or as may be added to the Underlying Umbrella
Policies stated in Item 2 of the Declarations prior to the happening of an occurrence
for which claim is made hereunder.   Should, however, any alteration be made in tl
premium for the Underlying Umbrella Policies during the currency of this Policy Unc
writers reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be mainte
in full effect during the Policy period without reduction of coverage or limits excep
for any reduction of the aggregate limits contained therein solely by payment of cla
in respect of accidents and/or occurrences occurring during the period of this Policy
by the operation of Condition C. of the Underlying Umbrella Policies.


3.    CANCELLATION  –

This Policy may be cancelled by the Named Assured or by the Underwriters or their
representatives by sending by registered mail notice to the other party stating when,
less than ~~thirty (30)~~ SIXTY (60) days thereafter, cancellation shall be effective.   The mailing
notice as aforesaid by Underwriters or their representatives to the Named Assured at
address shown in this Policy shall be sufficient proof of notice, and the insurance ur
this Policy shall end on the effective date and hour of cancellation stated in the not
Delivery of such written notice either by the Named Assured or by the Underwriters
their representatives shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain
the customary short rate proportion of the premium for the period this Policy has bee

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwrite (Hereinafter called the "Named Assured").

## INSURING AGREEMENTS:

I.     COVERAGE -

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:-

     (a)     imposed upon the Assured by law,

or (b)     assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:-

     (i)     Personal Injuries

     (ii)     Property Damage

     (iii)     Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policie stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

II.     LIMIT OF LIABILITY -

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of the respective ultimate net loss liability as follows:-

        $ (as stated in Item 3            ultimate net loss in respect of each
           of the Declarations)            occurrence, but

        $ (as stated in Item 4
           of the Declarations)            in the aggregate for each annual
                                          period during the currency of this
                                          Policy, separately in respect of
                                          Products Liability and in respect of
                                          Personal Injury (fatal or non-fatal)
                                          by Occupational Disease sustained
                                          by any employees of the Assured and
                                          in respect of any other hazard subject
                                          to an aggregate limit in the Underlying
                                          Umbrella Policies

## Schedule

Policy or Certificate No.          509  /  KY017782          Contract No. (if any)

The name and address of the Assured

    **W.R. GRACE AND CO.**
    **1114 Avenue of the Americas,**
    **New York, N.Y.10036.**

The risk and sum insured hereunder    **8.36% of 56.25% of the limits stated in the**
    **wording attached hereto.**

    **INTEREST - as per wording attached hereto.**

The Premium    **U.S.$12,931.88.**

The period of Insurance from    **30th June,1982**    to    **30th June,1983**
both days inclusive and for such further period or periods as may be mutually agreed upon
    **/at 12.01 A.M.Local Standard Time**

Dated in    **LONDON**    the    **10th January,1984**

this policy being for 8.36% of 56.25% insures its pro rata proportion of the
liability(ies) expressed herein and the lines (percentages) signed in the Table
are in percentages of 100% of 56.25%

---

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Insured
hereunder shared between the Members of those Syndicates.

| FOR LPSO USE ONLY | BROKER | LPSO NO. & DATE | | |
|---|---|---|---|---|
| 4762 | 509 | 62701   6 12 82 | | |
| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | PAGE | |
| | | | 1 | |
| PERCENT | | | | |
| 3.98 | 210 | E2017777 | | |
| 2.39 | 918 | LH2HX09U2131 | | |
| 1.99 | 342 | F90WWXXXD536 | | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1982/ 12

| TOTAL LINE | NO. OF SYND. | FOR LPSO USE ONLY | |
|---|---|---|---|
| 8.36 | 3 | 5D      1470 | |

# Lloyd's Policy

A/C W.R.GRACE AND CO.



J(A)

Lloyd's, London

COVER NOTE

# Bowring

C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
                        LONDON EC3
TELEX: 882191
Registered No. 76170 London

Please always   KYO17782
quote this No. .........................

Date   19th July, 1982
..............................

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

TYPE:        EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT
             LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974)

FORM:        Short Excess Form as expiring as far as applicable amendments if
             any to be agreed by Underwriters

ASSURED:     W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated,
             Affiliated Companies, and/or Organisations owned, controlled
             and/or managed Companies as now or hereinafter constituted plus
             joint ventures as expiring

PERIOD:      36 months at 30th June, 1982

INTEREST:    Coverage in respect Assured's Operations

SUM INSURED: 56.25% of
             $20,000,000    each occurrence (Aggregate Products and
                            Occupational Disease)

             EXCESS OF:-

             $ 5,000,000    each occurrence (Aggregate Products and
                            Occupational Disease)

             WHICH IN TURN EXCESS OF:-

             Scheduled Primaries or $100,000 Self Insured Retention where no
             concurrent insurance

SITUATION:   Worldwide

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

No._____                KY0L7782

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

2

CONDITIONS:          N.M.A. 1256/1477
                     60 Days Cancellation Clause
                     4% Tax Clause (where applicable)
                     Service of Suit Clause (U.S.A.)
                     Seepage and Pollution Clauses as underlying
                     ALL AS UNDERLYING in respect of Conditions, Warranties, Clauses
                     and Exclusions attached thereto


PREMIUM:             56.25% of
                     Minimum and Deposit $900,000 payable (30th June, 1982 $275,000
                                                           (30th June, 1983 $300,000
                                                           (30th June, 1984 $325,000
                     adjustable annually at 3-1/2¢%o on Gross Sales


Hereon               LLOYD'S 8.36%


                     Syndicate No.        %

                     210                 3.98%
                     918                 2.39%
                     342                 1.99%


For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

COVER NOTE

# Bowring

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
                        LONDON EC3
TELEX: 882191
Registered No. 76170 London

Please always    KYC17782
quote this No. ...........................

Date    19th July, 1982
...........................

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

TYPE:          —    EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT
                    LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974)

FORM:               Short Excess Form as expiring as far as applicable amendments if
                    any to be agreed by Underwriters

ASSURED:            W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated,
                    Affiliated Companies, and/or Organisations owned, controlled
                    and/or managed Companies as now or hereinafter constituted plus
                    joint ventures as expiring

PERIOD:             36 months at 30th June, 1982

INTEREST:           Coverage in respect Assured's Operations

SUM INSURED:        56.25% of
                    $20,000,000    each occurrence (Aggregate Products and
                                   Occupational Disease)

                    EXCESS OF:-

                    $ 5,000,000    each occurrence (Aggregate Products and
                                   Occupational Disease)

                    WHICH IN TURN EXCESS OF:-

                    Scheduled Primaries or $100,000 Self Insured Retention where no
                    concurrent insurance

SITUATION:          Worldwide

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

2

CONDITIONS:        N.M.A. 1256/1477
                   60 Days Cancellation Clause
                   4% Tax Clause (where applicable)
                   Service of Suit Clause (U.S.A.)
                   Seepage and Pollution Clauses as underlying
                   ALL AS UNDERLYING in respect of Conditions, Warranties, Clauses
                   and Exclusions attached thereto


PREMIUM:           56.25% of
                   Minimum and Deposit $900,000 payable (30th June, 1982 $275,000
                                                         (30th June, 1983 $300,000
                                                         (30th June, 1984 $325,000
                   adjustable annually at 3-1/2% on Gross Sales


                   Less 4% Federal Excise Tax (where applicable)



                   15.94% ENGLISH & AMERICAN INSURANCE COMPANY LIMITED
                   63.75% (24.73% WALBROOK INSURANCE COMPANY LIMITED
                          (10.75% EL PASO INSURANCE COMPANY LIMITED
                          (18.82% DART & KRAFT INSURANCE COMPANY LIMITED
                          ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED
                          ( 6.45% LUDGATE INSURANCE COMPANY LIMITED
           *          ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
           *          (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY
           *          ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED
           *          ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES
                      (          INDUSTRIELLES S.A.
                      (per H.S. Weavers (Underwriting) Agencies Ltd.
                   11.95% LEXINGTON INSURANCE COMPANY

Hereon         91.64%


* These Companies allow Federal Excise Tax



For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

# Bowring

ADDENDUM

*Att.*   *g to and forming part of Cover Note No.............   ...............*

C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE

(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
                        LONDON EC3
TELEX: 882191
Registered No. 76170 London

19th August 1982

Date.................................................

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

## A/C W.R. GRACE & CO. ETAL

With effect from inception the companies underwritten for by H.S. Weavers
(Underwriting) Agencies Ltd., are amended to read:-

|  | 63.75% | (31.18% WALBROOK INSURANCE COMPANY LIMITED |
|---|---|---|
|  |  | (10.75% EL PASO INSURANCE COMPANY LIMITED |
|  |  | (18.82% DART & KRAFT INSURANCE COMPANY LIMITED |
|  |  | ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED |
| * |  | ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED |
| * |  | (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY |
| * |  | ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED |
| * |  | ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES |
|  |  | (         INDUSTRIELLES S.A. |
|  |  | (per H.S. Weavers (Underwriting) Agencies Ltd. |

* (These Companies allow Federal Excise Tax).

All Other Terms and Conditions Remaining Unchanged

Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

............................................. Director/Manager

AO 255A