# 1B

| PRODUCER'S CODE | NAME AND LOCATION | PREVIOUS POLICY NUMBER | POLICY PREFIX AND NUMBER |
|---|---|---|---|
| 31-519-420MM | MARSH & McLEN J | XLX 153 22 27   3- | XLX- 168 80 67 |
| BRANCH | | | O |
| CO. 01 | COVERAGE PROVIDED IN COMPANY DESIGNATED BY NUMBER   01 FIREMAN'S FUND  10 THE AMERICAN  07 NATIONAL SURETY | | 3328971415 |

ITEM 1. INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

W.R. GRACE & CO.
1114 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

POLICY PERIOD:
ITEM 2.  INCEPTION (MO DAY YR): 6/30/84    EXPIRATION (MO DAY YR): 6/30/85
12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN

AGENT PLEASE SHOW RATE OF COMMISSION

ITEM 3. LIMIT OF LIABILITY:
$ NIL          . EACH OCCURRENCE
$ EXC'T #1     . AGGREGATE

ITEM 4. UNDERLYING INSURANCE LIMIT OF LIABILITY
$ 150,000,000.  . EACH OCCURRENCE
$ 150,000,000.  . AGGREGATE

ITEM 5. PREMIUM BASIS: FLAT CHARGE
ITEM 6. ADVANCE PREMIUM: $ 10,000.
ANNUAL MINIMUM PREMIUM: $ 10,000.

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $ ___ AS THE POLICY MINIMUM PREMIUM

ITEM 7. SCHEDULE OF UNDERLYING INSURANCE:

AS PER SCHEDULE ON FILE WITH THE COMPANY

BPIS
JUN 4 1985

TAX TERR CODE 06079   FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

INSURING AGREEMENTS

1. Coverage. To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereinafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

2. Limit of Liability. The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this

policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

2. Policy Period. This policy applies only to occurrences which take place during the policy period.

DEFINITIONS

"Ultimate net loss" means all sums actually paid or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

CONDITIONS

1. Maintenance of Primary Insurance. The Insured warrants and it is a condition of this policy, that at the inception of this policy insurance afforded by the underlying policies of insurance (apply-

(Continued on Page Two)

| COUNTERSIGNATURE DATE | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|
| 6/20/85  JMP | |

BLANKET EXCESS LIABILITY POLICY (FOLLOWING FORM) 5902—2-72

CHANGE ENDORSEMENT                      3328971416

TYPE OF COVERAGE:  ☐ SUPERCOVER-UMBRELLA AND EXCESS LIABILITY
                   ☐ CAPE - Commercial and Personal Excess
                   ☒ FOLLOWING FORM BLANKET EXCESS LIABILITY

ENDORSEMENT NO.: 3
ENDORSEMENT TITLE: ASBESTOS EXCLUSION

IF THE FOLLOWING INFORMATION IS NOT COMPLETE, REFER TO THE APPROPRIATE DECLARATIONS.

| INSURED | POLICY NUMBER |
|---|---|
| W.R. GRACE & CO. | 3-80 XLX 168 80 67 |
| PRODUCER | EFFECTIVE DATE |
| MARSH & MCLENNAN   6/20/85  jmp | 6/30/84 |

THE PREMIUM FOR THIS AMENDMENT IS INCLUDED IN THE PREMIUM SHOWN ON THE APPROPRIATE DECLARATIONS UNLESS A SPECIFIC AMOUNT IS SHOWN HERE:

☐ ADDITIONAL PREMIUM $ _____        ☐ RETURN PREMIUM $ _____

AMENDMENT

IT IS AGREED THAT THE COVERAGE AFFORDED UNDER THIS POLICY, INCLUDING DEFENSE THEREOF, SHALL NOT APPLY TO ANY DAMAGE, INJURY OR LIABILITY ARISING OUT OF THE USE, SALE, HANDLING, MANUFACTURE OR INSTALLATION OF ANY PRODUCT CONTAINING ASBESTOS, NOR SHALL THIS COVERAGE APPLY TO ANY LIABILITY ARISING FROM THE EXPOSURE TO ASBESTOS.

IT IS FURTHER AGREED IN THE EVENT OF REDUCTION OR EXHAUSTION OF THE APPLICABLE AGGREGATE LIMIT OR LIMITS OF LIABILITY UNDER SAID UNDERLYING POLICY OR POLICIES SOLELY BY REASON OF LOSSES PAID THEREUNDER ON ACCOUNT OR OCCURRENCES DURING THIS POLICY PERIOD AND FOR WHICH COVERAGE IS NOT AFFORDED BY THIS POLICY AS EXCLUDED IN THIS ENDORSEMENT, THE INSURANCE AFFORDED BY THIS POLICY SHALL APPLY IN THE SAME MANNER AS THOUGH SUCH SCHEDULED UNDERLYING INSURANCE AND LIMITS OF LIABILITY HAD BEEN IN EFFECT, SO MAINTAINED AND UNCHANGED.

Accepted by _____
                (AUTHORIZED SIGNATURE)

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| ONE OF THE FIREMAN'S FUND INSURANCE COMPANIES AS NAMED IN THE POLICY  /s/ _____ PRESIDENT  10X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|

STOCK NO. 175125-9-82

BRANCH COPY

3328971417

UMBRELLA AND EXCESS LIABILITY POLICY

| 175201-5-84 | AMENDMENT—LIMIT OF LIABILITY (QUOTA SHARE) | #1 |

In consideration of the premium paid, it is agreed that Item 3. of the Declarations is amended to read as follows:

**LIMIT OF LIABILITY**

$ __10,000,000.__ Each Occurrence

$ __10,000,000.__ Aggregate.

For each dollar of the ULTIMATE NET LOSS, payment shall be based upon the proportion the LIMIT OF LIABILITY bears to the Total Layer Limit of Liability ($ __150,000,000.__ Each Occurrence / $ __150,000,000.__ Aggregate), whether collectible or not, up to the LIMIT OF LIABILITY.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

This endorsement must be attached to Change Endorsement when issued after the Policy is written.

6/20/85  5mp

ONE OF THE FIREMAN'S FUND INSURANCE COMPANIES AS NAMED IN THE POLICY

_[signature]_
PRESIDENT

175201-5-84                        BRANCH COPY

3328971418

POLLUTION ENDORSEMENT                                                     #2

| INSURED | | POLICY NUMBER |
|---|---|---|
| PRODUCER | 6/20/85  JMP | EFFECTIVE DATE |

IT IS AGREED THAT THE COVERAGE PROVIDED FOR POLLUTION LIABILITY UNDER THIS POLICY, INCLUDING DEFENSE THEREOF, IS LIMITED AS FOLLOWS:

> "to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gases, waste material or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental".

IT IS FURTHER AGREED THAT THE UNDERLYING AGGREGATE LIMIT OF LIABILITY SHALL NOT BE DEPLETED BY POLLUTION LIABILITY OTHER THAN SUDDEN AND ACCIDENTAL AS ABOVE.

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

ONE OF THE
FIREMAN'S FUND INSURANCE COMPANIES
AS NAMED IN THE POLICY
PRESIDENT

COUNTERSIGNATURE OF AUTHORIZED AGENT

180001—1-66

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period.

ch underlying insurance is not maintained in full effect by the insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

2. Notice of Occurance. The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

3. Payment of Loss. It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the liability of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Company in conformity with this policy. Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations under.

4. Payment of Expenses. Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

5. Appeal. In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

6. Subrogation. In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

7. Premium. The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

8. Cancellation. This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate, and if cancelled by the Company, adjustment shall be made pro rata. However, in the event of cancellation or termination of the underlying insurance, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be given by the Company to the Insured at the address shown in the declarations. Payment or tender of unearned premium is not a condition of cancellation.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means and fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating

(Continued from Preceding Page)

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

*[Signature]*
SECRETARY

*[Signature]*
PRESIDENT

FINAL PAGE

| BLANKET EXCESS LIABILITY POLICY (FOLLOWING FORM) | | |
|---|---|---|
| Coverage is provided in the Company designated by number, a stock insurance Company (herein called the Company) | FIREMAN'S FUND INSURANCE COMPANIES MAIL ADDRESS SAN FRANCISCO CALIFORNIA | 01 FIREMAN'S FUND  INSURANCE COMPANY   SAN FRANCISCO, CALIFORNIA<br>18 THE AMERICAN  INSURANCE COMPANY   PARSIPPANY, NEW JERSEY<br>07 NATIONAL SURETY  CORPORATION   CHICAGO, ILLINOIS<br>13 ASSOCIATED INDEMNITY  CORPORATION   SAN FRANCISCO, CALIFORNIA<br>15 AMERICAN AUTOMOBILE  INSURANCE COMPANY   CREVE COEUR, MISSOURI |

## DECLARATIONS

1. INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

POLICY PERIOD:

ITEM 2.
INCEPTION (MO. DAY YR.)   EXPIRATION (MO. DAY YR.)
12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

ITEM 3.   LIMIT OF LIABILITY:
$ ............ EACH OCCURRENCE
$ ............ AGGREGATE

ITEM 4.   UNDERLYING INSURANCE LIMIT OF LIABILITY
$ ............ EACH OCCURRENCE
$ ............ AGGREGATE

ITEM 5.   PREMIUM BASIS
$
ITEM 6.   ADVANCE PREMIUM: $
ANNUAL MINIMUM PREMIUM: $

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $ THE POLICY MINIMUM PREMIUM.

7. SCHEDULE OF UNDERLYING INSURANCE:

## FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

### INSURING AGREEMENTS

1. **Coverage.** To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

2. **Limit of Liability.** The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

3. **Policy Period.** This policy applies only to occurrences which take place during the policy period.

### DEFINITIONS

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

### CONDITIONS

1. **Maintenance of Primary Insurance.** The Insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (apply-

(Continued on Page Two)

| COUNTERSIGNATURE DATE | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|

PAGE ONE

5902—2-72

IV—D