# 2A
# PART 2

COPY 02597

ADDENDUM NO 18

Attaching to and forming part of Policy No KY017582

Issued to: W.R.GRACE AND CO.

It is understood and agreed that with effect from 2nd December, 1983, solely as respects ownership of tracts of land, the following entity is included hereon as an Additional Named Assured:-

Trust Fund of W.R.Grace and Co. Retirement Plans.

It is however understood and agreed that, as respects the foregoing, this Policy shall only apply insofar as such coverage is available to the Assured in the Scheduled Underlying Insurances.

All other terms and conditions remain unchanged.
PSGB/sc

82L03B40079

25884

02598

ADDENDUM NO. 19

Attaching to and forming part of Policy No. KY017582

Issued to: W.R. GRACE AND CO.

Effective 30th June, 1982.

BROAD AS PRIMARY RIDER

IT IS HEREBY understood and agreed that in the event the Assured suffers a loss which is covered under the policies of the underlying insurances as set out in the schedule attached to this Policy, the excess of which would be payable under this Policy, except for terms and conditions of this Policy which are not consistent with the underlying insurances, then notwith standing anything contained in this Policy to the contrary this Policy shall be amended to follow and be subject to the terms and conditions of such underlying insurances in respect of such loss.

THE FOREGOING SHALL NOT, HOWEVER, APPLY TO:-

1. Any coverage given under the underlying insurances for limits less than the full limit of the said underlying policy as stated in the schedule hereto;

2. Any Nuclear Incident Exclusion Clause and Radioactive Contamination Exclusion Clause attached to this Policy;

3. Any Seepage and Pollution Exclusion Clause attached to this Policy;

4. Exclusion a) of this Policy;

5. Exclusion c) of this Policy;

6. Exclusion e) of this Policy;

7. Any liability arising out of the Employee Retirement Income Security Act of 1974 as excluded in this Policy;

8. The exclusions as set forth in Addendum No. 3 of this Policy labelled A(1) to A(7) inclusive, B(1) and B(2), and C(i) and C(ii);

9. Any Automobile Physical Damage Coverage;

10. Real and/or Personal Property of the Assured;

02509

11. Malpractice Liability;

12. Definition 3 of this Policy;

13. Definition 7 of this Policy;

14. Claims based upon the Motor Carriers Act of 1980;

15. The title of the Named Assured which shall remain as set forth in Item 1 of the Declarations of this Policy;

16. The period of this Policy which shall remain in accordance with Item 3 of the Declarations of this Policy;

17. Liability arising out of the ownership, maintenance or use of property in any trust for which the Assured is acting in a fiduciary or representative capacity;

18. Any liability arising out of any occurrence occurring or commencing or alleged to have occurred or commenced prior to 30th June, 1982 at 12.01 a.m. Local Standard Time;

19. The provisions of this Policy as respects "joint ventures".

It is further understood and agreed that coverage provided by the Underlying Comprehensive General Liability Policies No. CCP 2483440 with the CNA and 80-133116 with the American International Underwriters will not be further extended without obtaining agreement from Underwriters hereon. In the event of Underwriters hereon not agreeing to such further extension coverage will be provided hereon as if such extension had not been granted.

821038400T9

291084 HQ

DIRECTOR

H. S. WEAVERS (UNDERWRITING) AGENCIES LTD

All other terms and conditions remain unchanged.
PSGB/rjb

PREMIUM NOTICE

The premium for this insurance is due and payable as of the attachment date unless otherwise agreed by the Underwriters as indicated on the corresponding premium invoice.

By acceptance of this Confirmation of Insurance the interests named hereunder agree that all losses and or return premiums due under the policies for this insurance or any other policies effected for and/or payable, in whole or in part, to the same interests on this or any other properties or risks shall first be payable to Marsh & McLennan Incorporated to the extent of all premium or other indebtedness then due and unpaid to them.

1879G/JLC

COVER NOTE

# Bowring

C. T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR LONDON EC3
TELEX: 882191
Registered No. 78170 London

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

Please always quote this No. KY017582

Date 19th July, 1982

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

TYPE: UMBRELLA LIABILITY INCLUDING WORKER'S COMPENSATION ACT AND EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974), AS EXPIRING.

FORM: WORDING AS EXPIRING AS FAR AS APPLICABLE TO BE AGREED BY UNDERWRITERS.

ASSURED: W.R. GRACE & COMPANY ETAL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANISATIONS OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED PLUS JOINT VENTURES AS EXPIRING.

PERIOD: 36 months at 30th June, 1982.

INTEREST: Coverage in respect of all of the Insured's operations.

SUM INSURED: 80% of
$ 5,000,000 Each Occurrence (Aggregate Products and Occupational Disease)

EXCESS OF:-

A) The amount covered under underlying insurances as per schedule attached.

B) $ 100,000 Each Occurrence in respect of losses not covered by said underlying insurances.

SITUATION: WORLDWIDE.

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

No. ________

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

CONDITIONS:

Service of Suit Clause (U.S.A.)
Tax Clause (if applicable)
Exhaustion of Aggregate Endorsement - subject primaries unimpaired at inception hereon.
60 Days Cancellation Clause.
N.M.A. 1687 (amended as expiring).
Broad as primary rider as agreed by Underwriters.
Warranties as attached.
N.M.A. 1685 except in respect oil and gas operations which subject to N.M.A. 1683 other than operations on, over or under water which subject to N.M.A. 1684.

Exclusions
Additional to Form

Part I

(A) Property Damage arising from:-

1) Erroneous delivery of seeds, erroneous substitution of one seed for another, or mislabeling of seeds;

2) Cross Pollination;

3) Germination failure;

4) The presence of noxious weed seed;

5) Natural shrinkage of grain;

6) Loss of and/or damage and/or deterioration from delay or from moisture content of grain;

7) Commingling of grain;

(B) 1) To liability arising under any policy of insurance or reinsurance;

2) To liability arising out of the issuance, non-issuance, declination or cancellation of, or the imposition of special terms to any policy of insurance or reinsurance;

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

No. KY01/362

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

(c) In respect of oil/gas drilling and/or exploration operations:-

i. Cost of control of any oil/gas well.
ii. Loss of hole and/or in hole equipment.

Part II

(A) Charterers Liability;
(B) Safe berthing of any marine vessel
(C) Marine vessels in Assured's Care, Custody and Control.
(D) Non-owned watercraft Liability;
(E) Contractural;
(F) Incidental Malpractice;
(G) In respect of oil/gas drilling and/or exploration operations:-

i. Explosion, blowout and/or cratering
ii. Underground Property Damage not already excluded by N.M.A. 1683/4/5;

(H) Data Processors Errors and Omissions;
(I) Liability resulting from ownership, maintenance, and/or operations of any dock, wharf and/or quay facility;
(J) Insurance Brokers errors and omissions;
(K) Punitive and/or Exemplary Damages;
(L) Pharmacists Liability.

PREMIUM: 80% of Minimum and Deposit
$1,525,000 (payable 30th June, 1982 Minimum and Deposit $475,000
30th June, 1983 Minimum and Deposit $510,000
30th June, 1984 Minimum and Deposit $540,000
adjustable annually at 5.85c%o on Gross Sales).
Plus additional Premium $ 16,750 annual in respect of coverage provided hereon by Part II Exclusion (A) (B) (C).

Less 4% Federal Excise Tax (where applicable).

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

02334

13829

W.R. GRACE COMPANY

Warranties:-

(1) Notwithstanding scheduled underlying policies contain limits in respect of products recall and architects E and O, no coverage provided hereon and for the purposes of the policy underlying coverages not be impaired by such exposure.

(2) Physical damage coverage maintained for 100% values in respect of all properties for at least $125,000,000 excess $1,000,000 deductible maintained for all other real property, all property in Assured's C.C.C. covered by such policies.

(3) No step down excess of S.I.R. hereon in the event of any loss not being covered by scheduled primaries due to deductible contained therein.

No. K101/562

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

4

02306

W.R. GRACE & COMPANY

Schedule of Underlying Insurance

| Coverage | Limit | | Carrier |
|---|---|---|---|
| 1. DOMESTIC GL AND AL:- | | | |
| A) General/Products Liability | B.I. $1,000,000 each occ.<br>P.D. $1,000,000 each occ. | $4,000,000 Aggregate<br>B.I. & P.D. combined | C.N.A. |
| B) Employee Benefits | $ 500,000 each claim<br>$ 750,000 annual aggregate. | | C.N.A. |
| C) Care Custody & Control | $1,000,000 each occ.<br>$1,000,000 annual aggregate | | C.N.A. |
| D) Advertisers Liability | $ 500,000 each occ. | | C.N.A. |
| E) Automobile Liability | B.I. $1,000,000 each occ.<br>P.D. $1,000,000 each occ. | | C.N.A. |

• W.R. Grace & Co. assumes the first $500,000 of each loss within the framework of a retrospective rating plan. The premiums indicated are for insurance excess of $500,000 up to policy limits.
The combination of the $500,000. loss assumption and pure insurance is equal to the limits shown above.

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

No. KYU17562

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

02607
1556

W.R. GRACE & COMPANY

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| II EMPLOYER'S LIABILITY:- | | |
| A.) Employer's Liability Including Occupational Disease | $ 500,000 Each Employee<br>$ 500,000 Each Accident | C.N.A. |
| B.) Amendments of Coverage B Maritime (Jones Act) | Bodily Injury by Accident<br>$ 500,000 Each Employee<br>$ 500,000 Each Accident<br>Bodily Injury by Disease<br>$ 500,000 Each Employee<br>$ 500,000 Aggregate Disease (Per State) | C.N.A. |
| C.) U.S. F.L. & H.W.A. | $ 250,000 Each Employee<br>$ 250,000 Each Accident | C.N.A. |
| III 1 AIRCRAFT LIABILITY (Excluding Non-Ownership) | $15,000,000 CSL Including Voluntary Settlements of $250,000 per Person-Including Crew (Part Of and Not In Addition to the $15,000,000 Limit) | U.S.A. I G. |
| A.) Care Custody or Control | $ 1,000,000 - Each Occurrence (With Respect to Hangars, Buildings or Other Property or Contents Thereof Required by Lease or Other Agreement or if Insurance is Purchased). | |
| B.) Non-Ownership Hull Liability | $ 5,000,000 Per Occurrence and Aggregate | U.S.A. I G. |
| C.) Aircraft Non-Ownership Liability | $15,000,000 CSL | U.S.A. I G. |
| 2. GROUND HANGARKEEPERS LIABILITY | $ 2,000,000 Each Aircraft<br>$ 2,000,000 Each Occurrence | U.S.A. I G. |

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

No. K101/562

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

6

02603

W.R. GRACE & COMPANY

| COVERAGE | | LIMIT | CARRIER |
|---|---|---|---|
| IV. | A.) CHARTERER'S LIABILITY/ WHARFINGER'S LIABILITY for W.R. Grace & Co. | *$2,000,000 Damage to Vessel and Cargo<br>$2,000,000 Demmurage and removal of Wreck<br>$2,000,000 Collision (Third Party Including Demmurage - P.D.<br>$2,000,000 Each Person<br>$2,000,000 Each Accident<br>Third Party Bodily Injury Liability including Liability to Crew of Chartered Vessel<br>$ 5,000. Deductible Each Accident. | Arkwrigl Boston Manufact urers In Co. |

* Limits will increase to $5,000,000 when and if a sulphur shipment takes place. The increased limit will remain in effect for the duration of policy term. To date no sulphur shipments have taken place and none anticipated for current policy period.

| COVERAGE | | LIMIT | CARRIER |
|---|---|---|---|
| | B.) CHARTERER'S LIABILITY for Aruba Chemical Industries, N.V. | $2,000,000 Damage to Vessel and Cargo<br>$2,000,000 Demmurage or Removal of Wreck<br>$2,000,000 Collision (Third Party Including Demmurage - P.D.<br>$2,000,000 Each Person<br>$2,000,000 Each Accident<br>Third Party Bodily Injury Liability including Liability to Crew of Chartered Vessel<br>$ 5,000. Deductible Each Accident. | Arkwrigl Boston Manufact urers In Co |
| V. | FOREIGN INSURANCE | | |
| | A.) W.R. Grace & Co. | $1,000,000 per Occurrence BI and PD CSL for GL and AL Combined | AIG |

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

No. KY017582

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

.. 102309

W.R. GRACE & COMPANY

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| Worldwide Comprehensive General and Automobile Liability Program* | \$ 2,000,000 Aggregate Products<br>\$ 2,000,000 Aggregate Property Damage Per Location<br>\$ 50,000 Per Occurrence/\$500,000 Aggregate for Property in Insured's Care, Custody, and Control. | |

* This is a master DIC and/or excess policy for a combination of local admitted contracts for various Grace foreign units.

VI.COLOWYO COAL COMPANY

| | | |
|---|---|---|
| Excess Workers' Compensation and Employers' Liability Reinsurance (excluding Federal Black Lung) | \$10,000,000 Each Accident WC and/or EL<br>Combined in excess of \$250,000 retention | General Reinsurance |

VII BOOKER DRILLING

| | | |
|---|---|---|
| Employers' Liability | \$ 500,000 | North West Ins. Co. |

VIII EASTERN COAL JOINT VENTURE (47.5% ownership interest)

| | | |
|---|---|---|
| A.) General Liability | B.I. \$ 1,000,000 Occurrence/Aggregate<br>P.D. \$ 1,000,000 Occurrence/Aggregate | Federal Insurance Company |
| B.) Auto Liability | \$ 1,000,000 CSL | Federal Insurance Company |
| C.) Aviation | \$50,000,000 CSL | Associated Aviation Underwriters |

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

No. [illegible]

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

- 108310

W.R. GRACE & COMPANY

| COVERAGE IN RESPECT OF EASTERN COAL JOINT VENTURE. | LIMIT | CARRIER |
|---|---|---|
| D.) Employers Liability | | |
| 1) Rapoca Energy Company a) Coal Mines | $ 500,000 | Old Republic |
| b) Helicopter Pilot | $ 500,000 | Aetna Casualty & Surety |
| 2) Terry Eagle Coal Company | $ 500,000 | Federal Insurance Co |
| 3) Paramont Coal Company | $10,150,000 WC & EL Excess of $ 350,000 Self Insured Retention | Various |
| 4) GHL Management Inc. and Neville Coal Sales | $ 500,000 | Commercial Union |
| E.) Umbrella Excess Liability* | $50,000,000 | Various |

* This Policy includes all of the above Eastern Coal coverages within the underlying schedule including Paramont Mining's excess W.C. program.

N.B. 47-1/2% of the above limits apply to Grace interest and NMA 1687 (as amended) applies hereon.

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

No. KY017582

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

02811

100.00% (24.73% WALBROOK INSURANCE COMPANY LIMITED
(10.75% EL PASO INSURANCE COMPANY LIMITED
(18.82% DART & KRAFT INSURANCE COMPANY LIMITED
( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED
( 6.45% LUDGATE INSURANCE COMPANY LIMITED
* ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
* (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY
* ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED
* ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES
( INDUSTRIELLES S.A.
(per H.S. Weavers (Underwriting) Agencies Ltd.

Hereon 100.00%

* These Companies allow Federal Excise Tax.

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C. T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR LONDON EC3
TELEX: 882191
Registered No. 76170 London

02312

Date 10th August, 1982.

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

A/C W.R. GRACE & COMPANY ETAL

With effect from inception the companies underwritten for by H.S. Weavers (Underwriting) Agencies Ltd are amended to read:-

| | | |
|---|---|---|
| | 100.00% | (31.18% WALBROOK INSURANCE COMPANY LIMITED |
| | | (10.75% EL PASO INSURANCE COMPANY LIMITED |
| | | (18.82% DART & KRAFT INSURANCE COMPANY LIMITED |
| | | ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED |
| * | | ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED |
| * | | (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY |
| * | | ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED |
| * | | ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES INDUSTRIELLES S.A. |
| | | (per H.S. Weavers (Underwriting) Agencies Ltd. |
| Hereon | 100.00% | |

* (These Companies allow Federal Excise Tax).

Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

All Other Terms and Conditions Remaining Unchanged

C. T. BOWRING & CO. (INSURANCE) LTD.

C. T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

P.O. BOX 145.
THE BOWRING BUILDING.
TOWER PLACE.
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR LONDON EC3
TELEX: 882191
Registered No. 78170 London

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

02613 3816

Date 10th August, 1982.

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

A/C W.R. GRACE & COMPANY ETAL

With effect from inception the companies underwritten for by H.S. Weavers (Underwriting) Agencies Ltd are amended to read:-

| | | |
|---|---|---|
| | 100.00% | (31.18% WALBROOK INSURANCE COMPANY LIMITED |
| | | (10.75% EL PASO INSURANCE COMPANY LIMITED |
| | | (18.82% DART & KRAFT INSURANCE COMPANY LIMITED |
| | | ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED |
| * | | ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED |
| * | | (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY |
| * | | ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED |
| * | | ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES INDUSTRIELLES S.A. |
| | | (per H.S. Weavers (Underwriting) Agencies Ltd. |

Hereon 100.00%

* (These Companies allow Federal Excise Tax).

Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

All Other Terms and Conditions Remaining Unchanged

C.T. BOWRING & CO. (INSURANCE) LTD.

[signature]

Director/Mar

5238A HM

**Bowring**

# ADDENDUM

Attaching to and forming part of Cover Note No. KY017582

02314

C. T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

P.O. BOX 145.
THE BOWRING BUILDING.
TOWER PLACE.
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR LONDON EC3
TELEX: 882191
Registered No. 76170 London

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

13823

Date 5th July, 1983.

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

A/C: W.R. GRACE AND COMPANY

With effect from 30th June, 1983 the Schedule of Primary Insurance is amended as follows:-

1A General/Products Liability.

| | | |
|---|---|---|
| Bodily Injury | $1,000,000 each occurrence) | $4,000,000 Aggregate |
| Property Damage | $1,000,000 each occurrence) | Bodily Injury and |
| | ) | Property Damage Combined |

Sublimit
Personal Injury $1,000,000/$2,000,000 Aggregate.

All Other Terms and Conditions Remaining Unchanged

For the Attention of Mr. T. Clarke,
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C. T. BOWRING & CO. (INSURANCE) LTD.

[signature]
Director/Manager

AO 256A

Transit Casualty

Policy No. UMB 950-239

06/30/82 – 06/30/85

# ENDORSEMENT

W.R. GRACE & COMPANY

POLICY NO. UMB 950239
END'T. NO. 5

Effective Date: June 30, 1982

With respect to the leases dated December 30, 1981 between Grace Natural Resources Corp. and Mercantile Leasing Company Limited and between TRG Drilling Corp. and Mercantile Leasing Company Limited, it is agreed that this policy is amended to include the following:

(1) Owner as Joint Insured:
Mercantile Leasing Company Limited
Elizabethan House
Great Queen Street
London WC2B 5DP England

(2) Immediate notice to owner for any material change in policy for which lessee is responsible under insurance clause 5(A) of leases, on file with this company.

(3) 60 day notice to owner if:

(a) Insurer cancels the insurance with respect to any of the rigs.

(b) Such insurance coverage is reduced.

10 day notice to owner if such insurance is allowed to lapse for non-payment of premium.

Countersignature Date: February 16, 1983

TV 9820

Authorized Representative

ns

ENDORSEMENT W.R. GRACE & COMPANY

POLICY NO. UMB 950-
ENDT. NO. 4

Effective date: June 30, 1982

It is understood and agreed that Items 2 and 4 of the Declarations are amended to read as follows:

Item 2. Policy Period: From: June 30, 1982 To: June 30, 1985
12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 4. Premium:

June 30, 1982 to June 30, 1983

Advance Premium: $95,000.
Minimum Premium: $95,000.

Rate: 20% $.0585 per $1,000 sales

June 30, 1983 to June 30, 1984

Premium to be determined.

June 30, 1984 to June 30, 1985

Premium to be determined.

ntersignature Date: November 4, 19 82

Authorized Representative

# ENDORSEMENT

W.R. GRACE & COMPANY

POLICY NO. UMB 950239
END'T. NO. 6

Effective Date: June 30, 1982

In consideration of the premium charged, it is agreed that with respect to the leases dated March 30, 1982 between Grace Natural Resources Corp. and LBI Leasing Limited and between TRG Drilling Corp. and LBI Leasing Limited, this policy is amended to include the following:

(1) Owner as Joint Insured:
LBI Leasing Limited
40-66 Queen Victoria St.
London EC4P 4EL, England

(2) Thirty days prior notice of cancellation or a material change in coverage will be provided to LBI Leasing Limited. (10 day notice if coverage cancelled for non-payment of premium).

This endorsement to take effect on the 30th day of June 1982. All other terms and conditions remain unchanged.

Richard [signature]

Authorized Representative

Countersignature Date: February 16, 19 83

TV 9820

ns

UMBRELLA LIABILITY POLICY

# Transit Casualty Company

3700 WILSHIRE BOULEVARD LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A Stock insurance company, herein called the company)

TRANSIT CASUALTY COMPANY
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI

Agrees with the NAMED INSURED in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy;

## INSURING AGREEMENTS

I. COVERAGE

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

A. PERSONAL INJURY, as hereinafter defined;
B. PROPERTY DAMAGE, as hereinafter defined;
C. ADVERTISING INJURY OR DAMAGE, as hereinafter defined,

to which this policy applies, caused by an OCCURRENCE, as hereafter defined, happening anywhere in the world.

II. UNDERLYING LIMIT—RETAINED LIMIT

The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

A. UNDERLYING LIMIT—an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; or

B. RETAINED LIMIT—The amount specified in Item 3 I. B of the Declarations as the result of any one occurrence not covered by said underlying insurance, and which shall be borne by the INSURED.

III. LIMITS OF LIABILITY

Regardless of the number of persons and organizations who are INSUREDS under this policy and regardless of the number of claims made and suits brought against any or all INSUREDS, the total limit of the Company's liability for ULTIMATE NET LOSS resulting from any one OCCURRENCE shall not exceed the amount specified in Item 3 I. of the declarations.

The Company's liability shall be further limited to the amount stated as the annual aggregate limit in Item 3 II. of the declarations on account of all OCCURRENCES during each policy year arising out of:

A. either the PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined; or
B. occupational disease by all employees of the INSURED.

In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, are exhausted solely as the result of OCCURRENCES taking place after the inception date of this policy, this policy shall, subject to the Company's limit of liability and to other terms of this policy, with respect to OCCURRENCES which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the aggregate limit of liability as stated in Item 3 II. is exhausted, but not for broader coverage than was provided by the exhausted underlying insurance.

In the event that the aggregate limits of liability of the underlying insurance are exhausted or reduced as the result of OCCURRENCES taking place prior to the inception date of this policy, the Company shall only be liable to the same extent as if the aggregate limits had not been so exhausted or reduced.

For the purpose of determining the limit of the Company's liability:

(a) all PERSONAL INJURY and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions, and

(b) all ADVERTISING INJURY OR DAMAGE involving the same injurious material or act, regardless of the number or kind of media used, or frequency of repetition thereof, whether claim is made by one or more persons

shall be considered as arising out of one OCCURRENCE.

IV. DEFENSE—SETTLEMENT

A. With respect to any OCCURRENCE not covered, as warranted, by the underlying policies listed in Schedule A hereof, whether collectible or not, or not covered by any other underlying insurance collectible by the INSURED, but covered by the terms and conditions of this policy, except for the RETAINED LIMIT stated in Item 3 I. B of the Declarations, the Company shall:

(1) defend any suit against the insured alleging PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE and seeking damages therefore, even if such suit is groundless, false or fraudulent; but the COMPANY may make such investigation, negotiation or settlement of any claim or suit as it deems expedient. The INSURED shall promptly reimburse the COMPANY for any amount paid in the satisfaction of cases defended hereunder within the retained limit after making proper deduction for all recoveries and salvage collectible, but excluding all loss expense and legal expense

(2) with respect to any suit defended under the terms of this coverage, in addition to the applicable limit of liability under this policy the COMPANY shall:

(a) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds;

(b) pay all expenses incurred by the COMPANY, all costs taxed against the INSURED in any such suit and all interest accruing after the entry of judgment until the COMPANY has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the COMPANY'S liability thereon;

(c) pay reasonable expenses incurred by the INSURED at the COMPANY'S request in assisting the COMPANY in the investigation or defense of any claim or suit including actual loss of earnings not to exceed $25 per day, but the COMPANY shall not be required to reimburse the INSURED for salaries of employees of the INSURED.

In jurisdictions where the COMPANY may be prevented by law or otherwise from carrying out this agreement, the COMPANY shall pay any expense incurred with its written consent in accordance with this agreement.

B. When underlying insurance, whether or not listed in Schedule A, does apply to an OCCURRENCE, the COMPANY shall have no duty to pay defense, investigations, settlement or legal expenses covered by such underlying insurance; however, the COMPANY shall have the right and opportunity to associate with the INSURED and any underlying insurer in the defense and control of any claim or suit reasonably likely to involve the COMPANY under this policy.

EXCLUSIONS

This policy shall not apply:

A. under Coverage I (A), to any obligation for which the INSURED or any of its insurers may be held liable under any worker's or employment compensation, disability benefits or similar law, provided, however, that this exclusion does not apply to liability of others assumed by the NAMED INSURED under contract;

B. under Coverage I (B), to injury to or destruction of or loss of (1) property owned by the INSURED or (2) property rented to, occupied or used by or in the care, custody or control of the INSURED to the extent the INSURED is under contract to provide insurance therefore; or (3) any goods, products or containers thereof, manufactured, sold, handled or distributed, or work completed by or for the INSURED, out of which the OCCURRENCE arises.

C. under Coverage I (A) and I (B) for PERSONAL INJURY or PROPERTY DAMAGE, or under I (B) to loss of use of tangible property which has not been physically injured or destroyed, resulting from:

(1) a delay in or lack of performance by or on behalf of the INSURED of any contract or agreement or

(2) the failure of the INSURED'S products or work performed by or on behalf of the INSURED to meet the level of performance, quality, fitness or durability warranted or represented by the INSURED; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the INSURED'S products or work performed by or on behalf of the INSURED after such products or work performed by or on behalf of the INSURED have been put to use by any person or organization other than an INSURED.

(3) damages claimed for the withdrawal, inspection, repair, replacement or loss of use of the INSURED'S products or work completed by or for the INSURED, or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

D. to any liability of any INSURED arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

E. under Coverage I (C), to liability for (1) failure of performance of contract, (2) infringement of a registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

F. under Coverage I (A) and I (B) for PERSONAL INJURY or PROPERTY DAMAGE arising out of AIRCRAFT PRODUCTS and/or all sums which any INSURED shall become legally obligated to pay as damages resulting in or from GROUNDING of any AIRCRAFT.

G. I. under any Liability Coverage, to injury, sickness, disease, death or destruction.

(a) with respect to which an INSURED under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization;

II. under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

III. under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an INSURED; or

(c) the injury, sickness, disease, death, or destruction arises out of the furnishing by an INSURED of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this policy:

"hazardous properties" means source material, special nuclear material or byproduct material;

"source material", "special nuclear materials" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any product or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste.

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used where any of the foregoing is located, all operations conducted on such site and all premises used for operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; with respect to injury to or destruction" includes all forms of radioactive contamination of property.

H. to any liability of the INSURED directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or naturalization or requisition of destruction of damage to property by or under the order of any government or public or local authority.

I. to any liability of any INSURED arising out of racial, religious, sex or age discrimination.

J. "to any claim based upon any actual or alleged error or omission or breach of duty, committed or alleged to have been committed in the discharge of Fiduciary duties, obligations or responsibilities imposed by the Federal Employee Retirement Income Security Act of 1974 or amendments thereto."

K. unless insurance is provided by a policy listed in the schedule of underlying insurance, and then for no broader coverage than is afforded by such insurance:

I. to liability of any INSURED hereunder for assault and battery committed by or at the direction of the INSURED except liability for personal battery committed for the purpose of preventing or eliminating danger in the operation of AIRCRAFT, or for the purpose of preventing PERSONAL INJURY or PROPERTY DAMAGE, it being understood and agreed that this exclusion shall not apply to the liability of the NAMED INSURED for PERSONAL INJURY to their employees, unless such liability is already excluded under Exclusion (a) above:

II. with respect to any watercraft owned by an INSURED, while away from premises owned, rented or controlled by the INSURED, except liability of the NAMED INSURED for watercraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability

Attach Declarations and Endorsement(s) Here

of the NAMED INSURED for personal injury to their employees, unless such liability is already excluded under Exclusion (A) above;

III. to liability of any INSURED or any employee of said INSURED with respect to personal injury to or death of another employee of the same employer injured in the course of such employment.

IV. to any liability of any INSURED for property damage to the property of another INSURED;

V. under Coverage I (A) and I (B), to liability arising out of ownership, maintenance, operation, use, loading, or unloading of AIRCRAFT owned by the Insured, or, without crew, loaned to, leased to, rented to or chartered by or on behalf of the INSURED;

VI. to punitive or exemplary damages awarded against any INSURED.

DEFINITIONS

When used in this policy, the following words and phrases shall have the following meaning:

A. ADVERTISING INJURY OR DAMAGE: means

(1) libel, slander or defamation,
(2) any infringement of copyright or title or slogan,
(3) piracy or unfair competition or idea misappropriation under an implied contract,
(4) any invasion of right of privacy;

committed or alleged to have been committed during the policy period, in any advertisement, publicity article, broadcast or telecast and arising out of insured's advertising activities.

B. AIRCRAFT:

Means any heavier than air or lighter than air AIRCRAFT designed to transport persons or property (including missiles or spacecraft).

C. AIRCRAFT PRODUCTS:

Means AIRCRAFT and/or AIRCRAFT PRODUCTS which are specifically designed, manufactured or sold as parts, components or assemblies for the flight, navigation or communication of AIRCRAFT or ground support equipment.

D. AUTOMOBILE:

Means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment.

E. COMPLETED OPERATIONS HAZARD:

(1) Includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the INSURED. "Operations" include materials, parts or equipment furnished in connection therewith.

Operations shall be deemed completed at the earliest of the following times:

(a) when all operations to be performed by or on behalf of the insured under the contract have been completed,
(b) when all operations to be performed by or on behalf of the insured at the site of the operations have been completed, or
(c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

(2) The completed operations hazard does not include personal injury or property damage arising out of:

(a) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof.
(b) the existence of tools, uninstalled equipment or abandoned or unused materials.

F. GROUNDING:

Means the withdrawal, at or about the same time, in the interest of safety, of one or more AIRCRAFT from flight operations because of a like condition or suspicion thereof in two or more such AIRCRAFT whether such AIRCRAFT so withdrawn are owned or operated by the same or different persons, firms or corporations. A GROUNDING shall be deemed to commence on the date of an accident or OCCURRENCE which discloses such condition, or on the date an AIRCRAFT is first withdrawn from service on account of such condition, whichever first occurs;

G. INSURED:

Each of the following is an INSURED to the extent set forth below:

(1) the NAMED INSURED, meaning the NAMED INSURED stated in Item 1 of the declarations and any subsidiary, owned or controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company,
(2) any person (other than an employee of the NAMED INSURED) or organization while acting as real estate manager for the NAMED INSURED,
(3) any INSURED (not being the NAMED INSURED under this policy) included in the schedule of underlying insurance, but not for broader coverage than is available to such INSURED under the scheduled underlying insurance,
(4) except with respect to the ownership, maintenance, operation, use, loading or unloading of automobiles, aircraft or watercraft, any officer, director or stockholder of the NAMED INSURED, while acting within the scope of his duties as such: but this subparagraph (4) shall not apply if it restricts the insurance granted under subparagraph (3) above.
(5) if the NAMED INSURED is designated in the declarations as a partnership or joint venture, any partner or member thereof, but only with respect to the liability incurred in the operation of that partnership or joint venture; however, this policy does not apply to any automobile owned by or registered in the name of any partner.

H. INSURED'S PRODUCTS:

Means goods or products manufactured, sold, handled or distributed by the INSURED or by others trading under the INSURED'S name, including any container thereof (other than a vehicle), but the INSURED'S products shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

I. MOBILE EQUIPMENT:

Means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled:

(1) not subject to motor vehicle registration, or
(2) maintained for use exclusively on premises owned by or rented to the INSURED, including the ways immediately adjoining, or
(3) designed for use principally off public roads, or
(4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills, concrete mixers (other than the mix-in-transit type), graders, scrapers, rollers and other road construction or repair equipment, air compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment.

J. OCCURRENCE:

With respect to Coverage I (A) and I (B) "OCCURRENCE" shall mean an accident or event including continuous repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purpose of determining the limit of the Company's liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE.

With respect to Coverage I (C), all damages involving the same injurious material or act, regardless of the frequency of repetition thereof, the number or kind of media used, and the number of persons shall be deemed to arise out of one "OCCURRENCE."

K. PERSONAL INJURY:

The term PERSONAL INJURY wherever used herein means:

(1) bodily injury, sickness, disease, disability or shock, including death at any time resulting therefrom, mental anguish and mental injury,
(2) false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention or malicious prosecution,
(3) Libel, slander, defamation of character, humiliation or in-

vasion of the rights of privacy, unless arising out of advertising activities.

which occurs during the policy period.

L. PREMIUM BASIS:

... used as a premium basis:

(1) "admissions" means the total number of persons, other than employees of the NAMED INSURED, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(2) "cost" means the total cost to the NAMED INSURED with respect to operations performed for the NAMED INSURED during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due.

(3) "receipts" means the gross amount of money charged by the NAMED INSURED for such operations by the NAMED INSURED or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the NAMED INSURED collects as a separate item and remits directly to a governmental division;

(4) "remuneration" means the entire remuneration earned during the policy period by proprietors and by all employees of the NAMED INSURED, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company.

(5) "sales" means the gross amount of money charged by the NAMED INSURED or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the NAMED INSURED and such others collect as a separate item and remit directly to a governmental division.

M. PRODUCTS HAZARD:

Includes PERSONAL INJURY and PROPERTY DAMAGE arising out of the INSURED'S products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the INSURED and after physical possession of such products has been relinquished to others.

N. PROPERTY DAMAGE:

The term PROPERTY DAMAGE wherever used herein means:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period.

O. ULTIMATE NET LOSS:

Means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the INSURED is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the INSURED with respect to damages covered hereunder. "ULTIMATE NET LOSS" does not incude (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the INSURED, (b) office costs and expenses of the INSURED and salaries and expenses of employees of the INSURED or (c) general retainer fees of counsel retained by the INSURED.

## CONDITIONS

**A. Premium Computations:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the NAMED INSURED shall pay the excess to the COMPANY; if less, the COMPANY shall return to the NAMED INSURED the unearned portion paid by such INSURED. The NAMED INSURED shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the COMPANY at the end of the policy period, as the COMPANY may direct.

**B. Inspection and Audit:** The COMPANY shall be permitted but not obligated to inspect the NAMED INSURED'S property and operations at any time. Neither the COMPANY'S right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the NAMED INSURED or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The COMPANY may examine and audit the NAMED INSURED'S books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**C. Severability of Interest:** The term "INSURED" is used severally and not collectively except with respect to Insuring Agreement II (UNDERLYING LIMITS—RETAINED LIMITS), Insuring Agreement III (LIMITS OF LIABILITY) and Condition H (Other Insurance). The inclusion in this policy of more than one INSURED shall not operate to increase the COMPANY'S total liability for all INSURED'S covered by this policy beyond the limits set forth in Item 3 I, 3 I B and 3 II of the Declarations.

**D. Notice of Occurrence, Claim or Legal Proceeding:** Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.

The INSURED shall give like notice of any claim made or legal proceeding commenced on account of such occurrence. If legal proceedings are begun, the INSURED, when requested by the COMPANY, shall forward to it each paper thereon, or a copy thereof, received by the INSURED or the INSURED'S representatives, together with copies of reports of investigations made by the INSURED with respect to such claim proceedings.

**E. Action Against COMPANY:** No action shall lie against the COMPANY unless, as a condition precedent thereto, the INSURED shall have fully complied with all the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the COMPANY.

**F. Appeals:** In the event the INSURED or the INSURED's underlying insurer elects not to appeal a judgment in excess of the RETAINED LIMIT, the COMPANY may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the COMPANY for ULTIMATE NET LOSS exceed the amount set forth in Insuring Agreement II (UNDERLYING LIMIT—RETAINED LIMIT) and Insurance Agreement III (LIMITS OF LIABILITY) for any one OCCURRENCE plus the taxable costs, disbursements and interests incidental to such appeal.

**G. Payment of ULTIMATE NET LOSS:** Coverage under this policy shall not apply unless and until the INSURED, or the INSURED'S underlying insurer, shall be obligated to pay the amount of the UNDERLYING LIMIT or RETAINED LIMIT on account of PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE. When the amount of ULTIMATE NET LOSS has finally been determined, the COMPANY shall promptly indemnify the INSURED the amount of ULTIMATE NET LOSS falling within the terms of this policy.

**H. Other Insurance:** If other collectible insurance with any other INSURER is available to the INSURED covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of the RETAINED LIMIT and LIMIT OF LIABILITY hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If collectible insurance under any other policy(ies) of the COMPANY is available to the INSURED, covering a loss also covered hereunder (other than underlying insurance of which the insurance afforded by this policy is in excess), the COMPANY'S total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies). If other collectible insurance under any policy(ies) of the COMPANY is available to the INSURED, the ULTIMATE NET LOSS as the result of any one OCCURRENCE not covered by underlying insurance shall not be cumulative.

**I. Underlying Insurance:** If underlying insurance applicable in any one OCCURRENCE is exhausted by payment of judgment or settlement on behalf of the INSURED, the COMPANY shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the INSURED resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another insurer.

**J. Bankruptcy and Insolvency:** In the event of the bankruptcy or insolvency of the INSURED or any entity comprising the INSURED, the

COMPANY shall not be relieved thereby of the pa ment of any claims hereunder because of such bankruptcy or insolv

**K. Subrogation:** In the event of any payment under this policy, the COMPANY shall be subrogated to all the INSURED'S rights of recovery against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.
The amount recovered as subrogation shall be apportioned in the inverse order of payment of ULTIMATE NET LOSS to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

**L. Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the COMPANY from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the COMPANY.

**M. Assignment:** Assignment of interest under this policy shall not bind the COMPANY until its consent is endorsed hereon; if, however, the NAMED INSURED shall be adjudged bankrupt or insolvent, this policy shall cover the NAMED INSURED'S legal representative as NAMED INSURED; provided that notice of cancellation addressed to the INSURED named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**N. Sole Agent Clause:** The NAMED INSURED as stated in the DECLARATIONS shall be primarily responsible for payment of all premiums and shall act on behalf of all other INSUREDS with respect to the giving and receipt of any return premium that may become payable under this policy.

**O. Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of th policy period. Delivery o h written notice either by the NAME INSURED or by the COM. NY shall be equivalent to mailing. If th NAMED INSURED cancels, earned premium shall be computed accordance with the customary short rate table and procedure. If th COMPANY cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is e fected or as soon as practicable thereafter. The check of the COM PANY or its representative, mailed or delivered, shall be sufficie tender of any refund due the NAMED INSURED.

If this policy insures more than one NAMED INSURED, cancellati may be effected by the first of such NAMED INSUREDS for the a count of all INSUREDS; and notice of cancellation by the COMPAN to such first NAMED INSURED shall be notice to all INSUREDS. Pa ment of any unearned premium to such first NAMED INSURED sh be for the account of all interests therein.

**P. Maintenance of Underlying Insurance:** It is warranted by th Insured that the underlying policy(ies) listed in Schedule A, or r newals or replacements thereof not more restrictive in coverag shall be maintained in force during the currency of this policy, e cept for any reduction in the aggregate limit(s) contained there solely by payment of claims in respect of OCCURRENCES happe ing during the period of this policy. In the event of failure by t INSURED so to maintain such policy(ies) in force, the Insuran afforded by this policy shall apply in the same manner it wou have applied had such policy(ies) been so maintained in force.

**Q. Employers' Liability—Common Law Defenses:** As a condition the recovery of any loss under this policy, with respect to persor injury to or the death of any employee arising out of and in the cour of employment by the NAMED INSURED, the NAMED INSURED wa rants that it has not and will not abrogate its common law defens under any worker's compensation or occupational disease law rejection thereof, or otherwise in the event the NAMED INSURI should, at any time during the policy period, abrogate such defens such insurance as is afforded with respect to such employee sh automatically terminate at the same time.

**R. Terms of Policy Conformed to Statute:** Terms of this poli which are in conflict with the statutes of the State wherein this poli is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Transit Casualty Company has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

NO. UMB 950239

STOCK COMPANY

DECLARATIONS — UMBRELLA LIABILITY POLICY

New
Renewal of No.

—sit Casualty Company

... BOULEVARD LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A stock insurance company, herein called the company)

Item 1. Named Insured: W. R. Grace & Company

Address: 1114 Avenue of the Americas
New York, New York 10036

Item 2. Policy Period: From June 30, 1982 To: June 30, 1983
12:01 A.M., Standard Time at the address of the Named Insured as stated herein.

Item 3. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

I. $See Endt #1 Single limit any one OCCURRENCE combined PERSONAL INJURY, PROPERTY DAMAGE and ADVERTISING INJURY or DAMAGE in excess of:

A. The amount recoverable under the underlying insurance as set out in Schedule A attached or

B. $See Endt #1 Ultimate net loss as the result of any one occurrence not covered by said underlying insurance.

II. $See Endt #1 Limit in the aggregate for each annual period with respect to:

A. The PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined, or

B. Occupational Disease sustained by employees of the INSURED.

Item 4. Premium: $95,000.

Advance Premium $95,000. Rate Premium Basis
209 $.0585 per $1,000 Sales
Minimum Premium $95,000.

Items 5. Warranted that, during the past three years, no insurer has cancelled insurance issued to the NAMED INSURED, similar to that afforded hereunder, unless otherwise stated herein.

Countersigned by: ______________________

10/04/82

ENDORSEMENT W. R. GRACE & COMPANY

POLICY NO. UMB 950-2:
END'T. NO. 1

Effective date: June 30, 1982

It is hereby agreed that Item 3, Limits of Liability, is completed to read as follows:

1. $1,000,000 single limit any one occurrence part of $5,000,000 single limit any one occurrence combined Personal Injury, Property Damage and Advertising Injury or Damage in excess of:

   A. the amount recoverable under the underlying insurance as set out in Schedule A attached, or

   B. $25,000 ultimate net loss as the result of any one occurrence not covered by said underlying insurance.

2. $1,000,000 single limit in the aggregate part of $5,000,000 single in the aggregate for each annual period with respect to:

   A. the Products Hazard or Completed Operations Hazard or both combined, or

   B. Occupational Disease sustained by employes of the Insured.

Countersignature Date: October 4, 1982

Authorized Representative

TV 9820

# ENDORSEMENT

W.R. GRACE & COMPANY

POLICY NO. UMB 950-
END'T. NO. 2

Effective date: June 30, 1982

In consideration of the premium charged, it is agreed that the coverage provided under this policy is warranted to the same terms and conditions as policy issued by Lloyd's of London & Other British Ins. Co's. through page no. 9 of the cover note, and all preprinted terms and conditions contained herein are deleted to the extent that they vary or are inconsistant with the terms and conditions of the above mentioned policy.

Countersignature Date: October 4, 19 82

Authorized Representative

TV 9820

mcc

# ENDORSEMENT. W.R. GRACE & COMPANY

POLICY NO. UMB 950-2
ENDT. NO. 3

Effective date: June 30, 1982

It is understood and agreed that Item 1 of the Declarations is amended, in part, to read as follows:

> W.R. Grace & Co. and/or subsidiary, associated, affiliated companies and/or organizations, owned, controlled and/or managed companies as now or hereinafter constituted.

Countersignature Date: November 4, 19 82

Authorized Representative

TV

mcc

Pacific Employers

Policy No.  XMO 01 72 04

06/30/84 – 06/30/85

INA

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| W.R. Grace & Co., Etal | | | 5 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XMO | 01 72 04 | 6/30/84 to 6/30/85 | 6/30/84 |
| Issued By (Name of Insurance Company) | | | |
| Pacific Employers Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the polic

In consideration of the premium charged for this policy it is agreed that in the event of cancellation for other than non-payment of premium, sixty (60) days notice will be sent to the Insured.

6/14/85

Authorized Agent

CC-1E15 Ptd. in U.S.A.

ORIGINAL

INA PACIFIC EMPLOYERS INSURANCE COMPANY, LOS ANGELES, CALIFORNIA

EXCESS BLANKET CATASTROPHE LIABILITY POLICY

DECLARATIONS

XMO 01 72 04

Named Insured Address: W.R. GRACE & CO., ETAL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANIZATIONS OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED PLUS JOINT VENTURES AS EXPIRING
GRACE PLAZA, 1114 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK 10036

Policy Period: From 6/30/84 to 6/30/85 12:01 A.M., standard time at the address of the Named Insured as stated herein

Audit Period: Annual, unless otherwise stated 5.85% RATE ON GROSS SALES

Endorsements attached to policy at inception: Nuclear Energy Liability Exclusion

LIMITS OF LIABILITY

PEIC'S LIMIT OF LIABILITY:

ITEM 1. $ 250,000. P/O 5,000,000. arising out of any one occurrence because of personal injury, property damage or advertising injury or any combination thereof.

ITEM 2. 250,000. P/O 5,000,000. arising out of all occurrences during each policy year because of the products hazard, or the completed operations hazard, or both combined.

INSURED'S RETAINED LIMIT:
Underlying Insurance, or

ITEM 3. $ 100,000. because of personal injury, property damage or advertising injury arising out of any one occurrence not within the terms of coverage of underlying insurance but within the terms of the coverage of this insurance.

PREMIUM COMPUTATION

| Estimated | Rate per | Total Advance Premium |
|---|---|---|
| $27,000. | 5.85% PER 100 GROSS SALES WHICH IS 100% OF 5,000,000. LAYER PRICE | $27,000.00 |

MINIMUM PREMIUM $ 10,000.

in the event of cancellation by the Named Insured, PEIC shall receive and retain not less than $ 10,000. as the Minimum Premium

8/1/84

Countersigned By [signature] Authorized Agent

LD-6893 Ptd in U.S.A.

**INA** PACIFIC EMPLOYERS INSURANCE COMPANY, LOS ANGELES, CALIFORNIA

after such operations have been completed or abandoned and ... from premises owned by or rented to the Insured. "Operations" ... ials, parts or equipment furnished in connection therewith. ... all be deemed completed at the earliest of the following times: ... operations to be performed by or on behalf of the Insured under ... ct have been completed, ... operations to be performed by or on behalf of the Insured at the ...

to co... expect... "perso... prisonm... libel or... tion of... any of...

# EXCESS BLANKET CATASTROPHE LIABILITY POLICY

A Stock Insurance Company, herein called PEIC

In consideration of the premium to be paid, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms o policy, agrees with the Named Insured as follows:

## INSURING AGREEMENT

Coverage A—Personal Injury Liability

Coverage B—Property Damage Liability

Coverage C—Advertising Liability

PEIC will indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become legally obligated to pay as damages because of

A. personal injury or

B. property damage or

C. advertising injury

to which this insurance applies, caused by an occurrence, and

(1) With respect to any personal injury, property damage or advertising injury not within the terms of the coverage of underlying insurance but within the terms of coverage of this insurance; or

(2) If limits of liability of the underlying insurance are exhausted because of personal injury, property damage or advertising injury during the period of this policy

PEIC will

(a) have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury, property damage or advertising injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient; but PEIC shall not be obligated to pay any claim or judgment or to defend any suit after PEIC's limit of liability has been exhausted by paymer judgments or settlements;

(b) in addition to the amount of ultimate net loss payable: i

(i) pay all expenses incurred by PEIC, all costs taxed against Insured in any suit defended by PEIC and all interest on entire amount of any judgment therein which accrues after a of the judgment and before PEIC has paid or tendered o posited in court that part of the judgment which does not ex the limit of PEIC's liability thereon;

(ii) pay premiums on appeal bonds required in any suit, premiur bonds to release attachments in any such suit for an amount in excess of the applicable limit of liability of this policy, the cost of bail bonds required of the Insured because of dent or traffic law violation arising out of the use of any vei to which this policy applies but PEIC shall have no obligatio apply for or furnish any such bonds;

(iii) pay reasonable expenses incurred by the Insured at PE request in assisting PEIC in the investigation or defense of claim or suit, including actual loss of earnings not to ex $50 per day.

In jurisdictions where PEIC may be prevented by law or otherwise f carrying out this agreement, PEIC will indemnify the Insured for expense incurred with its written consent in accordance with this provi

## PERSONS OR ENTITIES INSURED

(1) The Named Insured is the organization(s) named in the declarations of this policy and includes:

(a) any subsidiary company (including subsidiaries thereof) and any other company under their control and active management at the inception date of this policy;

(b) new organizations acquired by the Named Insured during the policy period, through consolidation, merger, purchase of the assets of, or assumption of control and active management; provided such acquisition or assumption is reported to PEIC within 60 days after it is effected and provided further such acquisition is endorsed on this policy;

(c) If the Named Insured in the declarations is a partnership or joint venture, any partner or member thereof is included as a Named Insured but only with respect to his liability as a partner or member of such partnership or joint venture.

(2) Each of the following is an Insured under this policy to the extent set forth below:

(a) any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract or per to provide insurance such as is afforded by the terms of this pol but only with respect to operations by or on behalf of the Nar Insured or to facilities of or facilities used by the Named Insured then only to the extent of the coverage required by such contract for the limits of liability specified in such contract, but in no ev for insurance not afforded by this policy nor for limits of liabilir excess of the applicable limits of liability of this policy;

(b) at the option of the Named Insured and subject to the terms of coverage of this insurance, any additional Insured(s) included in underlying insurance listed in Schedule A, but only to the ext that insurance is provided for such additional Insured(s) thereun

(c) except with respect to the ownership, maintenance or use, incluc loading or unloading, of automobiles or aircraft,

(i) any officer, executive, employee, director or stockholder of Named Insured while acting on behalf of such Named Insur

(ii) any person or organization while acting as real estate mana for the Named Insured;

PERSONS OR ENTITIES INSURED
(continued)

(d) any person while using, with the permission of the Named Insured, any automobile or aircraft owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission, and any officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured but only while such automobile or aircraft is being used in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under this paragraph (d):

(i) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place;

(ii) to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee (of whom the Named Insured is a sub-lessee) thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

(iii) to any manufacturer of aircraft, aircraft engines or aviation accessories, or any aviation sales, service or repair organization or airport or hangar operator or their respective employees or agents.

RETAINED LIMIT—PEIC'S LIMIT OF LIABILITY

R- -less of the number of (1) Insureds under this policy, (2) persons or o..- zations who sustain injury or damage, or (3) claims made or suits brought because of personal injury, property damage, or advertising injury, PEIC's liability is limited as follows:

With respect to personal injury, property damage or advertising injury, or any combination thereof, PEIC's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of:

(a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured; or

(b) the amount specified in Item 3. of the Limits of Liability section of the declarations because of personal injury, property damage or advertising injury not within the terms of the coverage of the underlying insurance listed in Schedule A:

-l then for an amount not exceeding the amount specified in Item 1. of -e Limits of Liability section of the declarations arising out of any one occurrence.

There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of PEIC, because of either the products hazard or the completed operations hazard, or both combined, arising out of all occurrences during each policy year shall not exceed the amount specified in Item 2. of the Limits of Liability section of the declarations.

If the aggregate limits of liability of the underlying insurance listed in Schedule A are reduced or exhausted because of personal injury, property damage or advertising injury during the period of this policy, PEIN will, subject to PEIC's limit of liability stated above, continue such coverage as is afforded by such listed underlying insurance for the remainder of the policy year of such underlying insurance in excess of the reduced or exhausted limits.

For the purpose of determining the limits of PEIC's liability, (1) all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence, and (2) with respect to advertising injury, all injury arising out of any advertisement, publicity article, broadcast or telecast or any combination thereof involving the same injurious material or act, regardless of the frequency of repetition thereof or the number or kind of media used, whether claim is made by one or more persons, shall be deemed to arise out of one occurrence.

POLICY PERIOD, TERRITORY

T' -olicy applies to personal injury, property damage or advertising injury which occurs anywhere during the policy period.

EXCLUSIONS

This policy does not apply:

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to property damage to (1) property owned by the Insured, or (2) the Insured's products arising out of such products or any part of such products, or (3) work performed by or on behalf of the Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(c) to loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an insured;

(d) to damages claimed for the withdrawal, inspection, repair, replacement or loss of the use of the Insured's products or work completed by or for the Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(e) to advertising injury resulting from (1) failure of performance of contract, (2) infringement of trade mark, service mark or trade name by use thereof as the trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

(f) to property damage in accordance with the provisions of the property damage exclusion endorsement attached hereto;

(g) as respects parts (b), (c), and (d) of the definition of personal injury, to injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the Named Insured;

(h) as respects part (c) of the definition of personal injury, to injury arising out of any publication or utterance, if the first injurious publication or utterance of the same or similar material by or on behalf of the Named Insured was made prior to the effective date of this policy;

(i) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

"advertising injury" means libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy, arising out of the Insured's advertising activities;

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"completed operations hazard" includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(a) when all operations to be performed by or on behalf of the Insured under the contract have been completed,

(b) when all operations to be performed by or on behalf of the Insured at the site of the operations have been completed, or

(c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete shall be deemed completed.

The completed operations hazard does not include personal injury or property damage arising out of (1) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof, (2) the existence of tools, uninstalled equipment or abandoned or unused materials;

"damages" means only those damages which are payable because of personal injury, property damage or advertising injury to which this insurance applies and includes damages for (1) death and for care and loss of services resulting from personal injury, (2) loss of use of property resulting from property damage, and (3) advertising injury;

"Insured" means any person or organization qualifying as an Insured under the Persons or Entities Insured section of this policy. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of PEIC's liability;

"Insured's products" means goods or products manufactured, sold, handle[d] or distributed by the Insured or by others trading under his name, includin[g] any container thereof (other than a vehicle) but "Insured's products" sha[ll] not include a vending machine or any property other than such a containe[r] rented to or located for use of others but not sold;

"Named Insured" means the organization(s) named in the declarations [o]f this policy;

The word "Insured" includes the Named Insured;

"occurrence" means an accident, including continuous or repeated exposu[re] to conditions, which results in personal injury or property damage neithe[r] expected nor intended from the standpoint of the Insured;

"personal injury" means, (a) bodily injury; (b) false arrest, detention or imprisonment or malicious prosecution; (c) the publication or utterance of libel or slander or of other defamatory or derogatory material, or a publication or utterance in violation of an individual's right of privacy, except whe[n] any of the foregoing of this part (c) arises from publications or utterances i[n] the course of or related to advertising, broadcasting or telecasting activitie[s] conducted by or on behalf of the Named Insured; (d) wrongful entry o[r] eviction, or other invasion of the right of private occupancy; (e) assault an[d] battery not committed by or at the direction of the Insured, unless committed for the purpose of protecting persons or property;

"products hazard" includes bodily injury and property damage arising out o[f] the Insured's products or reliance upon a representation or warranty made a[t] any time with respect thereto, but only if the bodily injury or propert[y] damage occurs away from premises owned by or rented to the Insured an[d] after physical possession of such products has been relinquished to others;

"property damage" means (1) physical injury to or destruction of tangibl[e] property which occurs during the policy period, including the loss of us[e] thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such los[s] of use is caused by an occurrence during the policy period;

"ultimate net loss" means the sum actually paid or payable in cash in th[e] settlement or satisfaction of losses for which the Insured is liable either b[y] adjudication or compromise with the written consent of PEIC, after makin[g] proper deduction for all recoveries and salvages collectible, but excludes al[l] loss expenses and legal expenses (including attorneys' fees, court costs an[d] interest on any judgment or award) and all salaries of employees and offic[e] expenses of the Insured, PEIC or any underlying insurer so incurred.

## CONDITIONS

1. Premium

The premium for this policy shall be as stated in the Declarations.

If the premium as stated in the declarations is an advance premium, it shall be computed in accordance with the premium computation endorsement attached to the policy. If the Named Insured includes more than one person, partnership or organization they shall be jointly and severally liable for the premium for this policy.

2. Inspection and Audit

PEIC shall be permitted but not obligated to PEIC's inspect the Named Insured's property and operations at any time. Neither PEIC's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation. PEIC may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

3. Insured's Duties in the Event of Occurrence, Claim or Suit

(a) In the event of an occurrence, reasonably likely to exceed the retained limit, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to PEIC or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to PEIC every demand, notice, summons or other process received by him or his representative.

(c) The Insured shall cooperate with PEIC and upon PEIC's request assist in making settlements, in the conduct of suits and in enforcin[g] any right of contribution or indemnity against any person o[r] organization who may be liable to the Insured because of persona[l] injury or property damage or advertising injury with respect t[o] which insurance is afforded under this policy; and the Insured sha[ll] attend hearings and trials and assist in securing and giving evidenc[e] and obtaining the attendance of witnesses. The Insured shall not except at his own cost, voluntarily make any payment, assume any obligation or incur any expense; however, if the amount of ultimate net loss becomes certain either through trial court judgment o[r] agreement among the Insured, the claimant and PEIC, then, the Insured may pay the amount of ultimate net loss to the claimant to effect settlement and, upon submission of due proof thereof, PEIC shall indemnify the Insured for that part of such payment which is in excess of the retained limit, or, PEIC will, upon request of the Insured, make such payment to the claimant on behalf of the Insured.

(d) The Named Insured shall promptly reimburse PEIC for any amount of ultimate net loss paid on behalf of any Insured within the retained limit.

(e) As this policy is excess insurance, the Insured warrants that coverage under the uninsured motorist laws will be maintained during the policy period. It is agreed that the Named Insured shall promptly reimburse PEIC for any amount of ultimate net loss paid on behalf of any Insured as respects any payment made under an uninsured motorist law, or any similar law.

4. Appeals

If the Insured or the Insured's underlying insurer elects not to appeal a judgment in excess of the retained limit, PEIC may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of PEIC for ultimate net loss exceed the amount specified in the Limits of Liability section of the Declarations plus the taxable costs, disbursements and interest incidental to such appeal.

5. Action Against PEIC

No action shall lie against PEIC unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and PEIC. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join PEIC as a co-defendant in any action against the Insured to determine the Insured's liability, nor shall PEIC be impleaded by the Insured or his Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve PEIC of any of its obligations hereunder.

6. Other Insurance

If collectible insurance with any insurer is available to the Insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over PEIC's limit of liability provided in this policy.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, PEIC shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

7. Subrogation

In the event of any payment under this policy, PEIC shall be subrogated to all the Insured's rights of recovery therefor against any person or organization; and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Any amount so recovered shall be apportioned as follows:

Any interest (including the Insured's) having paid an amount in excess of the retained limit plus PEIC's limit of liability hereunder shall be reimbursed first to the extent of actual payment. PEIC shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the Insured or any underlying insurer, as their interest may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by PEIC, it shall bear the expenses thereof.

8. Changes

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop PEIC from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

9. Assignment

Assignment of interest under this policy shall not bind PEIC until its consent is endorsed hereon; if, however, the Named Insured shall die, or be adjudged bankrupt or insolvent, such insurance as is afforded by this policy shall apply (a) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (b) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

10. Three Year Policy

If this policy is issued for a period of three years, the limits of PEIC's liability shall apply separately to each consecutive policy year thereof.

11. Maintenance of Underlying Policies

The Named Insured shall maintain the underlying policies (and renewals thereof) with limits of liability as stated in Schedule A in full effect during this policy period, except for any reduction or exhaustion of the aggregate limit or limits contained in such policies solely by payment of claims arising out of occurrences which happen during this policy period. Failure of the Named Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure PEIC shall be liable only to the extent that it would have been liable had the Named Insured complied therewith.

The Named Insured shall give PEIC written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any underlying policy, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

12. Cancellation

This policy may be cancelled by the Named Insured by surrender thereof to PEIC or any of its authorized agents or by mailing to PEIC written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by PEIC by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by PEIC shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If PEIC cancels, earned premium shall be computed pro rata. When this policy insures more than one Named Insured cancellation may be effected by the first named of such Named Insured for the account of all Insureds. Notice of cancellation by PEIC to the first Named Insured shall be deemed notice to all Insureds and payment of any unearned premium to such first named Named Insured shall be for the account of all Insureds. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

13. Acceptance

By acceptance of this policy, the Insured agrees that this policy embodies all agreements existing between himself and PEIC or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the PACIFIC EMPLOYERS INSURANCE COMPANY has caused this policy to be signed by its President and a Secretary at Los Angeles, California, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

DENNIS C. POULSEN, Secretary

BERNARD A. BUGE, JR., President

**ENDORSEMENT** #1 BE17a

Attached to and forming part of Policy Number XMO 01 72 04

issued to W.R. GRACE & CO., ETAL by PACIFIC EMPLOYERS INSURANCE COMPANY

Date of Endorsement 6/30/84 located SAN FRANCISCO, CA. (City and State)

WITH RESPECT TO THE LEASES DATED DECEMBER 30, 1981 BETWEEN GRACE NATURAL RESOURCES CORP. AND MERCANTILE LEASING COMPANY LIMITED AND BETWEEN TRG DRILLING CORP. AND MERCANTILE LEASING COMPANY LIMITED, IT IS AGREED THAT THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

(1) OWNER AS JOINT INSURED:
MERCANTILE LEASING COMPANY LIMITED
ELIZABETHAN HOUSE
GREAT QUEEN STREET
LONDON WC2B 5DP ENGLAND

(2) IMMEDIATE NOTICE TO OWNER FOR ANY MATERIAL CHANGE IN POLICY FOR WHICH LEASEE IS RESPONSIBLE UNDER INSURANCE CLAUSE 5 (A) OF LEASES, ON FILE WITH THIS COMPANY.

(3) 60 DAY NOTICE TO OWNER IF:

(a) INSURER CANCELS THE INSURANCE WITH RESPECT TO ANY OF THE RIGS.

(b) SUCH INSURANCE COVERAGE IS REDUCED.

10 DAY NOTICE TO OWNER IF SUCH INSURANCE IS ALLOWED TO LAPSE FOR NON-PAYMENT OF PREMIUM.

All other terms and conditions of this policy remain unchanged.

8/9/84

(Agent)

DCW-8156 Ptd in U.S.A.

**ENDORSEMENT #2** ..132 BE17a

Attached to and forming part of Policy Number XCC 01 22 83

issued to W.R. GRACE & CO., ETAL by PACIFIC EMPLOYERS INSURANCE COMPANY

Date of Endorsement 6/30/84 located SAN FRANCISCO, CA. (City and State)

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT WITH RESPECT TO THE LEASES DATED MARCH 30, 1982 BETWEEN GRACE NATURAL RESOURCES CORP. AND LBI LEASING LIMITED AND BETWEEN TRG DRILLING CORP. AND LBI LEASING LIMITED, THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

(1) OWNER AS JOINT INSURED:
LBI LEASING LIMITED
40-66 QUENN VICTORIA ST.
LONDON EC4P 4EL, ENGLAND

(2) THIRTY DAYS PRIOR NOTICE OF CANCELLATION OR A MATERIAL CHANGE IN COVERAGE WILL BE PROVIDED TO LBI LEASING LIMITED. (10 DAY NOTICE IF COVERAGE CANCELLED FOR NON-PAYMENT OF PREMIUM).

THIS ENDORSEMENT TO TAKE EFFECT ON THE 30TH DAY OF JUNE 1984.

All other terms and conditions of this policy remain unchanged.

8/9/84

(Agent)

DCW-8156 Ptd in U.S.A.

INA

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| W.R. Grace & Co., Etal | | | 4 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XMO | 01 72 04 | 6/30/84 to 6/30/85 | 6/30/84 |
| Issued By (Name of Insurance Company) | | | |
| Pacific Employers Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the pol

Follow Form Endorsement

"It is agreed that except only with respect to policy period, premium and limits of liability, this policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the first layer Umbrella policy, (London and various British) KYO17582 and all renewals and replacements thereof. It is further agreed that all pre-printed terms and conditions hereon are deleted to the extent that they vary from or are inconsistent with the terms and conditions of the first layer Umbrella."

6/14/85

Authorized Agent

CC-1E15 Ptd. in U.S.A.

ORIGINAL

**Lloyd's**

**Policy No. KYO 17782**

**06/30/82 – 06/30/85**