# 3A
# PART 1

# Lloyd's

## Policy No. KYO 17582

### 06/30/82 – 06/30/85

No. K7017582

**Whereas** W.R. GRACE AND CO. (as more fully described herein) of 1114 Avenue of the Americas, New York, N.Y. 10036, U.S.A. hereinafter called the Assured, have paid U.S.$393,400.00 Premium or Consideration to Us, the undersigned Assurers to ~~insurance to also carry~~ indemnify the Assured in respect of UMBRELLA LIABILITY as per wording attached hereto,

100% of 80% of the limits stated herein

during the period commencing at the thirtieth day of June, 19 82, and ending at the thirtiet day of June, 19 85. both days at 12.01 a.m. Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company** for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding ~~xxxxxx~~ ONE HUNDRED PER CENT of EIGHTY PER CENT of the limits stated herein

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this 23rd day of November 1983

PSGB/rjb

Named Assured:   As stated in Item 1 of the Declarations forming a part hereof ~~and/or subsidiary, associated, affiliated, companies or owned and controlled companies, as now or hereafter constituted~~ and of which prompt notice has been given to Underwriters (hereinafter called the "Named Assured").

INSURING AGREEMENTS:

1.   COVERAGE  –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:-

    (a)   imposed upon the Assured by law,

or  (b)   assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:-

    (i)   Personal Injuries

    (ii)   Property Damage

    (iii)   Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world.

11.   LIMIT OF LIABILITY  –

Underwriters hereon shall be only liable for the ultimate net loss the excess of either:-

    (a)   the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances,

or  (b)   $ 100,000          ultimate net loss in respect of each occurrence not covered by said underlying insurances,

               (hereinafter called the "underlying limits"):

and then only up to a further sum as stated in Item 2(a) of the Declarations in all in respect of each occurrence – subject to a limit as stated in Item 2(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this Policy subject to all the terms, conditions and definitions hereof shall:-

    (1)   in the event of reduction pay the excess of the reduced underlying limit

    (2)   in the event of exhaustion continue in force as underlying insurance.

The inclusion or addition hereunder of more than one Assured shall not operate to increase Underwriters' limits of liability beyond those set forth in the Declarations.

THIS POLICY IS SUBJECT TO THE FOLLOWING DEFINITIONS:

1.   ASSURED –

The unqualified word "Assured", wherever used in this Policy, includes:-

(a)   The Named Assured, and, if the Named Assured is designated in Item 1 of the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(b)   any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such, and any organisation or proprietor with respect to real estate management for the Named Assured;

(c)   any person, organisation, trustee or estate to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only to the extent of such obligation and in respect of operations by or on behalf of the Named Assured or of facilities of the Named Assured or of facilities used by the Named Assured;

(d)   any additional Assured (not being the Named Assured under this policy) included in the Underlying Insurances, subject to the provisions in Condition B; but not for broader coverage than is available to such additional Assured under any underlying insurances as set out in attached schedule;

(e)   with respect to any automobile owned by the Named Assured or hired for use in behalf of the Named Assured, or to any aircraft owned by or hired for use in behalf of the Named Assured, any person while using such automobile or aircraft and any person or organisation legally responsible for the use thereof, provided the actual use of the automobile or aircraft is with the permission of the Named Assured.   The insurance extended by this sub-division (e), with respect to any person or organisation other than the Named Assured shall not apply:-

1.   to any person or organisation, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any occurrence arising out of the operation thereof;

2.   to any manufacturer of aircraft, aircraft engines, or aviation accessories, or any aviation sales or service or repair organisation or airport or hangar operator or their respective employees or agents with respect to any occurrence arising out of any of the aforementioned;

3.   with respect to any hired automobile or aircraft, to the owner thereof or any employee of such owner;

4.   with respect to any non-owned automobile to any officer, director, stockholder, partner or employee of the Named Assured if such automobile is owned in full or in part by him or a member of his household.

This sub-division (e) shall not apply if it restricts the insurance granted under sub-division (d) above.

2.    PERSONAL INJURIES –

The term "Personal Injuries", wherever used herein, means bodily injury (including death at any time resulting therefrom), mental injury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, humiliation; also libel, slander or defamation of character or invasion of rights of privacy, except that which arises out of any advertising activities.

3.    PROPERTY DAMAGE –

The term "Property Damage", wherever used herein, shall mean loss of or direct damage to or destruction of tangible property (other than property owned by the Named Assured).

4.    ADVERTISING LIABILITY –

The term "Advertising Liability", wherever used herein, shall mean:-

(1)    Libel, slander or defamation;

(2)    Any infringement of copyright or of title or of slogan;

(3)    Piracy or unfair competition or idea misappropriation under an implied contract;

(4)    Any invasion of right of privacy;

committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Assured's advertising activities.

5.    OCCURRENCE –

The term "Occurrence", wherever used herein, shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

6.    DAMAGES –

The term "Damages" includes damages for death and for care and loss of services resulting from personal injury and damages for loss of use of property resulting from property damage.

7.    ULTIMATE NET LOSS –

The term "Ultimate Net Loss" shall mean the total sum which the Assured, or his Underlying Insurers as scheduled, or both, become obligated to pay by reason of personal injuries, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's or of any underlying insurers permanent employees.

The Underwriters shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance.

8.    AUTOMOBILE –

The term "Automobile", wherever used herein, shall mean a land motor vehicle, trailer or semi-trailer.

9.    AIRCRAFT –

The term "Aircraft", wherever used herein, shall mean any heavier than air or lighter than air aircraft designed to transport persons or property.

10.    PRODUCTS LIABILITY –

The term "Products Liability" means :–

(a)    Liability arising out of goods or products manufactured, sold, handled or distributed by the Assured or by others trading under his name (herein-after called "the Assured's products") if the occurrence occurs after possession of such goods or products has been relinquished to others by the Assured or by others trading under his name and if such occurrence occurs away from premises owned, rented or controlled by the Assured; provided such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

(b)    Liability arising out of operations, if the occurrence occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the Assured; provided operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further the following shall not be deemed to be "operations" within the meaning of this paragraph:–

(i)    pick-up or delivery, except from or onto a railroad car;
(ii)    the maintenance of vehicles owned or used by or in behalf of the Assured;
(iii)    the existence of tools, uninstalled equipment and abandoned or unused materials.

11.    ANNUAL PERIOD –

The term "Annual Period" shall mean each consecutive period of one year commencing from the inception date of this Policy.

THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS:

This Policy shall not apply:–

(a)    to any obligation for which the Assured and any company as its insurer may be held liable under any Workmen's Compensation, unemployment compensation or disability benefits law provided, however, that this exclusion does not apply to liability of others assumed by the Named Assured under contract or agreement;

(b)   to personal injury, property damage or advertising liability arising out of the conduct of any partnership or joint venture of which the Assured is a partner or member and which is not designated in this policy as a Named Assured;

(c)   to claims made against the Assured:-

   (i)   on account of Personal Injuries or Property Damage resulting from the failure of the Assured's products or work completed by or for the Assured to perform the function or serve the purpose intended by the Assured, if such failure is due to a mistake or deficiency in any design, formula, plan, specification, advertising material or printed instructions prepared or developed by the Assured; but this exclusion (i) does not apply to Personal Injuries or Property Damage resulting from the active malfunctioning of such products or work;

   (ii)   on account of Property Damage to the Assured's products arising out of such products or any part of such products;

   (iii)   on account of Property Damage to work performed by or on behalf of the Assured arising out of work or any portion thereof, or out of the materials, parts or equipment furnished in connection therewith;

   (iv)   for the withdrawal, inspection, repair, replacement, or loss of use of the Assured's products or work completed by or for the Assured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(d)   with respect to advertising activities, to claims made against the Assured for:-

   (i)   failure of performance of contract, but this shall not relate to claims for unauthorised appropriation of ideas based upon alleged breach of an implied contract;

   (ii)   infringement of registered trade marks, service mark or trade name by use thereof as the registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans;

   (iii)   incorrect description of any article or commodity;

   (iv)   mistake in advertised price;

(e)   except in respect of occurrences taking place in the United States of America, its territories or possessions, or Canada, to any liability of the Assured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

(f)   to any liability arising out of the violation of any statute, law, ordinance or regulation prohibiting discrimination or humiliation because of race, creed, colour or national origin,

Except insofar as coverage is available to the Assured in the underlying insurances as set out in the attached Schedule, this policy shall not apply:—

(g)  to the liability of any Assured hereunder for assault and battery committed by or at the direction of such Assured except liability for Personal Injuries resulting from any act alleged to be assault and battery committed for the purpose of preventing or eliminating danger in the operation of aircraft, or for the purpose of preventing Personal Injuries or Property Damage; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(h)  with respect to any aircraft owned by the Assured except liability of the Named Assured for aircraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(i)  with respect to any watercraft owned by the Assured, while away from premises owned, rented or controlled by the Assured, except liability of the Named Assured for watercraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(j)  to any employee with respect to injury to or the death of another employee of the same Employer injured in the course of such employment.

THIS POLICY IS SUBJECT TO THE FOLLOWING CONDITIONS:

A.   PREMIUM –

Unless otherwise provided for the premium for this Policy is a flat premium and is not subject to adjustment except as provided in Conditions B and P.

B.   ADDITIONAL ASSUREDS –

In the event of additional assureds being added to the coverage under the underlying insurance during currency hereof prompt notice shall be given to Underwriters hereon who shall be entitled to charge an appropriate additional premium hereon.

C.   PRIOR INSURANCE AND NON CUMULATION OF LIABILITY –

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in item 2 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

D.   SPECIAL CONDITIONS APPLICABLE TO OCCUPATIONAL DISEASE –

As regards personal injury (fatal or non-fatal) by occupational disease sustained by any employee of the Assured, this policy is subject to the same warranties, terms and conditions (except as regards the premium, the amounts and limits of liability and the renewal agreement, if any) as are contained in or as may be added to the underlying insurance prior to the happening of an occurrence for which claim is made hereunder.

E.   INSPECTION AND AUDIT –

Underwriters shall be permitted but not obligated to inspect the Assured's property and operations at any time.   Neither the Underwriters' right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Assured or others, to determine or warrant that such property or operations are safe.

Underwriters may examine and audit the Assured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

F.   CROSS LIABILITY –

In the event of claims being made by reason of personal injury suffered by any employee of one Assured hereunder for which another Assured hereunder is or may be liable, then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

In the event of claims being made by reason of damage to property belonging to any Assured hereunder for which another Assured is, or may be, liable then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

Nothing contained herein shall operate to increase Underwriters' limit of liability as set forth in Insuring Agreement 11.

G.   NOTICE OF OCCURRENCE –

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this policy, notice shall be sent as stated in Item 4 of the Declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

H.   ASSISTANCE AND CO-OPERATION –

The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers or both in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

I.   APPEALS –

In the event the Assured or the Assured's underlying insurers elect not to appeal a judgment in excess of the underlying limits, Underwriters may elect to make such appeal at their own cost and expense, and shall be liable for the taxable costs and disbursements and interest on judgments incidental thereto, but in no event shall the liability of Underwriters for ultimate net loss exceed the amount set forth in Insuring Agreement 11 for any one occurrence and in addition the cost and expense of such appeal.

This policy may be cancelled by the Named Assured or by the Underwriters or their representatives by sending by registered mail notice to the other party stating when, not less than sixty(60) days thereafter, cancellation shall be effective. The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at the address shown in this policy shall be sufficient proof of notice, and the insurance under this policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Underwriters or their representatives shall be equivalent to mailing.

If this policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this policy has been in force. If this policy shall be cancelled by the Underwriters the Underwriters shall retain the pro rata proportion of the premium for the period this policy has been in force. Notice of cancellation by the Underwriters shall be effective even though Underwriters make no payment or tender of return premium with such notice.

Q.    CURRENCY –

The premiums and losses under this policy are payable in the currency stated in Item 5 of the Declarations. Payment of Premium shall be made as stated in Item 6 of the Declarations.

R.    CONFLICTING STATUTES –

In the event that any provision of this policy is unenforceable by the Assured under the laws of any State or other jurisdiction wherein it is claimed that the Assured is liable for any injury covered hereby, because of non-compliance with any statute thereof, then this policy shall be enforceable by the Assured with the same effect as if it complied with such Statute.

S.    SERVICE OF SUIT CLAUSE –

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made as stated in Item 7 of the Declarations, and that in any suit instituted against any one of them upon this policy, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The person or firm named in Item 7 are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this policy of insurance, and hereby designate the above-named as the person to whom the said officer is authorised to

T.    MAINTENANCE OF AND RESTRICTIONS IN UNDERLYING INSURANCES –

It is a condition of this policy that the policy or policies referred to in the attached "Schedule of Underlying Insurances", shall be maintained in full effect during the policy period without reduction of coverage or limits except for any reduction in the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and occurrences occurring during the period of this policy.   Failure of the Named Assured t comply with the foregoing shall not invalidate this policy but in the event of such failur the Underwriters shall only be liable to the same extent as they would have been had th Named Assured complied with the said condition.

L.P.O.354B (8/76)

ATTACHING TO AND FORMING PART OF POLICY No. XY017582

## DECLARATIONS:

ITEM 1.     (a)    Named Assured:-    W.R.GRACE & CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned controlled and/or managed Companies as now or hereinafter constituted.

            (b)    Address of Named Assured:-
                                1114 Avenue of the Americas,
                                New York N.Y.10036.
                                U.S.A.

ITEM 2.     Limit of Liability - as Insuring Agreement II :-

            (a)    Limit in all in respect of each occurrence    $   5,000,000

            (b)    Limit in the aggregate for each annual
                   period where applicable                       $   5,000,000


ITEM 3.     Policy Period:-    30th June 1982 to 30th June 1985.
                               both days at 12.01 A.M.Local Standard Time


ITEM 4.     Notice of Occurrence (Condition G) to:-
                               Marsh & McLennan, Incorporated,
                               1221 Avenue of the Americas,New York,N.Y.10036. U.S.A

ITEM 5.     Currency (Condition Q):- United States Dollars.


ITEM 6.     Payment of Premium (Condition Q) to:-
                               Marsh & McLennan Incorporated,
                               1221 Avenue of the Americas,New York,N.Y.10036, U.S.A

ITEM 7.     Service of Process (Condition S) upon:-
                               Messrs Mendes and Mount.
                               3 Park Avenue,
                               New York N.Y.10016
                               U.S.A.

E.P.O.354B (8/76)

aching to and forming part of Policy No KYO175

W.R. GRACE & CO.

Schedule of Underlying Insurances

COVERAGE | LIMIT

DOMESTIC GENERAL LIABILITY AND AUTOMOBILE
LIABILITY.

) General Liability/Products Liability.

Bodily Injury $1,000,000 Each Occurrence. $4,000,000 aggregate
Property Damage $1,000,000 Each Occurrence. Bodily Injury and
Property Damage
combined.

l) Employee Benefits

$   500,000 Each Claim
$   750,000 annual aggregate.

:) Care Custody & Control.

$1,000,000 Each Occurrence.
$1,000,000 annual aggregate.

) Advertisers Liability.

$   500,000 Each Occurrence;

) Automobile Liability.

Bodily Injury $1,000,000 Each Occurrence
Property Damage $1,000,000 Each Occurrence.

.Grace & Co. assumes the first $500,000 of each loss within the framework of a retrospective rating plan.  The premiums
lcated in the plan are for insurance excess of $500,000 up to policy limits.  The combination of the $500,000, loss assumption
pure insurance is equal to the limits shown above.

EMPLOYER'S LIABILITY:

) Employers' Liability including
  Occupational Disease

$   500,000 Each Employee
$   500,000 Each Accident

) Amendment of Coverage B
  Maritime (Jones Act)

Bodily Injury by Accident
$   500,000 Each Employee
$   500,000 Each Accident
Bodily Injury by Disease
$   500,000 Each Employee
$   500,000 Aggregate Disease
     (Per State)

United States Longshoremen's and Harbor
Workers' Act Liability.

$   250,000 Each Employee
$   500,000 t · · ·

-2-

## LIMIT

AGE

1 AIRCRAFT LIABILITY
(Excluding Non-Ownership)

$15,000,000 Combined Single Limit Including
Voluntary Settlements of $250,000
Per Person - Including Crew (Part
Of and Not In Addition to the
$15,000,000 Limit)

A) Care, Custody and Control

$1,000,000 Each Occurrence (With respect to
Hangars, Buildings or Other Property
or Contents thereof required by Lease
or other Agreement or if Insurance is
purchased)

B) Non-Ownership Hull Liability

$6,000,000 Per Occurrence and Aggregate

C) Aircraft Non-Ownership Liability

$15,000,000 Combined Single Limit

2. GROUND HANGARKEEPERS LIABILITY

$2,000,000 Each Aircraft
$2,000,000 Each Occurrence

A) CHARTERER'S LIABILITY/ WHARFINGER'S
LIABILITY for W.R.Grace & Co

*$2,000,000 Damage to Vessel and Cargo
$2,000,000 Demurrage and removal of Wreck
$2,000,000 Collision (Third Party Including
Demurrage - Property Damage.
$2,000,000 Each Person
$2,000,000 Each Accident
Third Party Bodily Injury Liability including
Liability to Crew of Chartered Vessel
$5,000 Deductible Each Accident

ts will increase to $5,000,000 when and if a sulphur shipment takes place. The increased limit will remain in effect
the duration of policy term. To date no sulphur shipments have taken place and none anticipated for current policy period.

-3-

ERAGE | LIMIT

B) CHARTERER'S LIABILITY for
Aruba Chemical Industries, N.V.

$ 2,000,000 Damage to Vessel and Cargo
$ 2,000,000 Demurrage or Removal of Wreck
$ 2,000,000 collision (Third Party) including demurrage - Property Damage
$ 2,000,000 Each Person
$ 2,000,000 Each Accident
Third Party Bodily Injury Liability including Liability to Crew of Chartered Vessel
$ 5,000 Deductible Each Accident

FOREIGN INSURANCE

A) W.R.Grace & Co.

Worldwide Comprehensive General Liability
and Automobile Liability Programme *

$ 1,000,000 per Occurrence Bodily Injury and Property Damage Combined Single Limit for General Liability and Automobile Liability Combined.

$ 2,000,000 Aggregate Products Liability
$ 2,000,000 Aggregate Property Damage Per Location
$ 50,000 Per Occurrence / $500,000 Aggregate for Property in Assured's Care, Custody, and Control.

* is is a master Difference in Conditions and/or excess policy for a combination of local admitted contracts for various Grace reign units.

COLOWYO COAL COMPANY.

Excess Workers' Compensation
and Employers' Liability Reinsurance
(excluding Federal Black Lung)

$10,000,000 Each Accident Workers' Compensation and/or Employers' Liability Combined in excess of $250,000 retention

BOOKER DRILLING

Employers' Liability

$ 500,000

COVERAGE

LIMIT

III. EASTERN COAL JOINT VENTURE (47.5% ownership interest)

A) General Liability     Bodily Injury     $ 1,000,000 Occurrence/Aggregate
                       Property Damage    $ 1,000,000 Occurrence/Aggregate

B) Automobile Liability                 $ 1,000,000 Combined Single Limit

C) Aviation Liability                   $50,000,000 Combined Single Limit

D) Employers Liability

1) Rapoca Energy Company
    a) Coal Mines                       $    500,000

    b) Helicopter Pilot            $    500,000

2) Terry Eagle Coal Company         $    500,000

3) Paramont Coal Company            $10,150,000 Workers' Compensation and
                                            Employers' Liability Excess of
                         $    350,000 Self Insured Retention

4) GHL Management Inc. and
    Neville Coal Sales              $    500,000

E) Umbrella Excess Liability *         $50,000,000

This policy includes all of the above Eastern Coal coverages within the underlying schedule including
Paramont Mining's excess Workers' Compensation programs.

Attaching to and forming part of Policy No KY017582

Reference No

100%        (31.18% WALBROOK INSURANCE COMPANY LIMITED.
            (10.75% EL PASO INSURANCE COMPANY LIMITED.
            (18.82% DART & KRAFT INSURANCE COMPANY LIMITED.
            ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED.
            ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY
            (        LIMITED.
            (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY.
            ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED.
            ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES
            (        INDUSTRIELLES S.A.
            Per:H.S.Weavers (Underwriting)Agencies Limited.82/LO3B/40099'S'

U.S.A.

NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

> *Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

This policy*

does not apply:—

I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction
(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials—parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV  As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
(a) any nuclear reactor.
(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste;
(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.
(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE.—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.*

17/3/60
N.M.A. 1256

U.S

Pos

nos
Dirt

This

U.S.A.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
### (Approved by Lloyd's Underwriters' Non-Marine Association)

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording world-wide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

12/7/44

U.S.A.

### 4% TAX CLAUSE
#### (Approved by Lloyd's Underwriters' Non-Marine Association)

Notice is hereby given that the Underwriters have agreed to allow for the purpose of paying the Federal Excise Tax 4% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Underwriters will deduct 4% from the amount of the return and the Assured or his agent should take steps to recover the Tax from the U.S. Government.

19/5/66
N.M.A. 1546

It
to th

unde

17/3
N.M

No. KX01

LONDON,

A/C W.R. GRACE AND CO.

# Insurance Poli [Companies]

Date of expiry 30th June, 198

ADDENDUM NO 1

Attaching to and forming part of Policy No KY017582


Issued to:        W.R.GRACE & CO.


As respects the Assured's operations outside the United States of America
and/or Canada Insuring Agreement II is amended to read as follows:-

"... Underwriters hereon shall be only liable for the ultimate net loss
the excess of either:-

(a) the limits of the underlying insurances as set out in the attached
schedule in respect of each occurrence covered by said underlying
insurances;

or

(b) $250,000.00 ultimate net loss in respect of each occurrence.

whichever is the greater,

or

(c) $250,000.00 ultimate net loss in respect of each occurrence not
covered by said underlying insurances,

. . . . . . . . "


All other terms and conditions of the Policy remaining unchanged.
PB/sc

62531

Attaching to and forming part of Policy No KY017582

Issued to:          W.R.GRACE & CO.

It is hereby understood and agreed that this Policy is extended to include
"Employee Benefit Liability" as more fully defined in the scheduled underlying
policies and that as respects such coverage this Policy is subject to the
same warranties, terms and conditions (except as regards the premium, the
obligation to investigate and defend, the amount and limits of liability and
the renewal agreement, if any) as are contained in the said underlying
policies.

It is however further understood and agreed that the above extension in
coverage shall not apply to claims based upon the Employee Retirement Income
Security Act of 1974, Public Law 93-406 commonly referred to as the Pension
Reform Act of 1974 and amendments thereto, or similar provisions of any
Federal, State or Local Statutory Law or Common Law.

All other terms and conditions of the Policy remaining unchanged.
PB/sc

Attaching to and forming part of Policy No. KYO17582

Issued to:   W.R. GRACE AND CO.

It is hereby understood and agreed that this Policy shall not apply:-

A    To Property Damage claims arising from:-

    (1)  Erroneous delivery of seeds, erroneous substitution of one
         seed for another, or mislabelling of seeds;
    (2)  Cross pollination;
    (3)  Germination failure;
    (4)  The presence of noxious weed seed;
    (5)  Natural shrinkage of grain;
    (6)  Loss of and/or damage and/or deterioration from delay or
         from moisture content of grain;
    (7)  Commingling of grain.

B    (1)  To liability arising under any policy of insurance or
         reinsurance;
    (2)  To liability arising out of the issuance, non-issuance,
         declination or cancellation of, or the imposition of special
         terms to any policy of insurance or reinsurance.

C    In respect of oil and/or gas drilling and/or exploration operations
    to:-

    (i)   the cost of control of any oil and/or gas well
    (ii)  loss of hole and/or in-hole equipment.

Notwithstanding anything contained herein to the contrary, it is further
understood and agreed that except insofar as coverage is available to
the Assured in the Underlying Insurances as set out in the attached
Schedule, this Policy shall not apply:-

    (A)  To Charterers Liability;
    (B)  To the safe berthing of any marine vessel;
    (C)  To marine vessels in the Assured's Care, Custody or Control;
    (D)  To Non-owned watercraft liability;
    (E)  To Contractual Liability;
    (F)  To Incidental Malpractice Liability;
    (G)  In respect of oil and/or gas drilling and/or exploration
         operations to:-

        (i)   explosion, blowout and/or cratering;
        (ii)  underground Property Damage not already excluded by the
            Seepage, Pollution and Contamination Clause No. 1 and the
            Seepage, Pollution and Contamination Exclusion Clause No. 2
            and the Industries, Seepage, Pollution and Contamination
            Clause No. 3.

    (H)  To Data processors Errors and Omissions;
    (I)  To Liability resulting from ownership, maintenance, and/or
         operations of any dock, wharf and/or quay facility;
    (J)  To Insurance Brokers errors and omissions;
    (K)  To Punitive and/or Exemplary Damages not already excluded by the
         Seepage, Pollution and Contamination Clause No. 1 and the Seepage
         Pollution and Contamination Exclusion Clause No. 2 and the
         Industries, Seepage, Pollution and Contamination Clause No. 3;
    (L)  To Pharmacists Liability.

ADDENDUM NO 4

02583

Attaching to and forming part of Policy No KY017582

Issued to:        W.R.GRACE & CO.


Notwithstanding anything contained herein to the contrary it is hereby
understood and agreed that this Policy shall apply to "Joint Ventures"
subject always to the following attached "Joint Venture Clause" except
in respect of those Joint Ventures which are excepted by virtue of
Addendum No 5.

### JOINT VENTURE CLAUSE

#### (THIRD PARTY LIABILITY)

##### (Approved by Lloyd's Underwriters' Non-Marine Association)

(1) It is hereby understood and agreed by the Assured and Underwriters that, as regards any liability
of the Assured which is insured under this Policy and arises in any manner whatsoever out of the
operations or existence of any joint venture, co-venture, joint lease, joint operating agreement or
partnership (hereinafter called "Joint Venture") in which the Assured has an interest, the liability of
Underwriters under this Policy shall be limited to the product of (a) the percentage interest of the Assured
in the said Joint Venture and (b) the total limit of liability insurance afforded the Assured by this Policy.
Where the percentage interest of the Assured in said Joint Venture is not set forth in writing, the
percentage to be applied shall be that which would be imposed by law at the inception of the Joint
Venture. Such percentage shall not be increased by the insolvency of others interested in the said Joint
Venture.

(2) It is further understood and agreed that, where any underlying insurance(s) have been reduced by
a clause having the same effect as paragraph (1), the liability of Underwriters under this Policy, as limited
by paragraph (1), shall be excess of the sum of (a) such reduced limits of any underlying insurance(s) and
(b) the limits of any underlying insurance(s) not reduced.

22/1/78

N.M.A. 1637


It is further understood and agreed that the term "Joint Venture" as used
in the above attached "Joint Venture Clause" or elsewhere within the Policy
wording shall be understood to mean:

> "Any joining together of two or more companies, either
> legally or contractually, for the purpose of any business
> undertaking where joint financial or corporeal benefit is
> intended."


All other terms and conditions of the Policy remaining unchanged.
PB/sc

ADDENDUM NO 5

Attaching to and forming part of Policy No KY017582

Issued to:        W.R. GRACE & CO.

It is hereby understood and agreed that the "Joint Venture Clause" contained
in Addendum No 4 shall not apply in respect of any co-venture or partnership
where:

    (A) The Assured's financial interest is at least 50%, or

    (B) The Assured has sole responsibility for the Management and operation,
       or

    (C) The Assured is obligated to provide full insurance.

Notwithstanding the foregoing, it is understood and agreed that any future
contractual agreement issued by the Assured to its co-venturers or partners
will specify that the insurance provided by the Assured's insurers shall be
the sole and exclusive protection afforded to any and all members of such
ventures.

All other terms and conditions of the Policy remaining unchanged.
PB/sc

ADDENDUM NO 6

Attaching to and forming part of Policy No KYO17582

Issued to:        W.R.GRACE & CO.

Notwithstanding anything stated herein to the contrary, it is hereby agreed
that the premium charged hereon comprises a Minimum and Deposit of $1,220,000
part of $1,525,000 plus a flat premium charge of $40,200.00 part of $50,250.00
in respect of Charterers Liability and in respect of the coverage provided
hereunder for the safe berthing of any marine vessel and marine vessels in
the Assured's care, custody or control and shall be due and payable as follows:-

30th June 1982   -   $380,000.00 part of
                     $475,000.00 (Minimum and Deposit)

         plus   $ 13,400.00 part of
                $ 16,750.00 (Flat Premium)

30th June 1983   -   $408,000.00 part of
                     $510,000.00 (Minimum and Deposit)

         plus   $ 13,400.00 part of
                $ 16,750.00 (Flat Premium)

30th June 1984   -   $432,000.00 part of
                     $540,000.00 (Minimum and Deposit)

         plus   $ 13,400.00 part of
                $ 16,750.00 (Flat Premium)

It is further understood and agreed that the Minimum and Deposit Premium
specified above is subject to adjustment with Earned Premium to be calculated at
a rate of 0.0585 per $1,000.00 of the Assured's Gross Sales.

The Assured shall declare to Underwriters as soon as possible after each anniversary
date (commencing with the 30th June—1983) the total amount of their Gross Sales
during the preceding annual period and should the Earned Premium so computed exceed
the Deposit Premium charged for said annual period then the balance shall be
immediately payable by the Assured to the Underwriters.

Notwithstanding anything contained herein to the contrary, if this Policy shall
be cancelled by the Assured, Underwriters shall be entitled to the Earned Premium
for the period that this Policy has been in force or the short rate proportion
of the Minimum Premium whichever is the greater, plus the short rate proportion
of the flat premium charge.  If this Policy is cancelled by Underwriters they
shall be entitled to the Earned Premium for the period that this Policy has been
in force or pro rata of the Minimum Premium whichever is the greater, plus the
pro rata proportion of the flat premium charge.

All other terms and conditions of the Policy remaining unchanged.
PB/sc

Attaching to and forming part of Policy No KYO17582

Issued to:          W.R.GRACE AND CO.


It is hereby warranted by the Assured that:

(1)      Notwithstanding that certain scheduled underlying policies
         contain limits in respect of Products Recall and Architects'
         Errors and Omissions, this Policy shall not apply to such
         hazards and, for the purposes of this Policy, such underlying
         policies are not to be impaired by such hazards.

(2)      Physical damage coverage shall be maintained for 100% values
         in respect of all properties.  A Blanket Block Policy for at
         least $125,000,000 excess of $1,000,000 deductible shall be
         maintained for all real property; all property in the Assured's
         Care, Custody and Control is covered by such policies.

(3)      There shall be no stop down excess of the Self Insured Retention
         referred to in Insuring Agreement II of this Policy in the event
         of any loss not being covered by scheduled underlying insurances
         due to a deductible contained therein.




All other terms and conditions of the Policy remaining unchanged.
PSGB/sc

ADDENDUM NO 8

Attaching to and forming part of Policy No KYO17582

Issued to:                    W.R.GRACE & CO.


It is hereby understood and agreed that the following attached clause
shall apply in respect of the Assured's oil and/or gas operations on,
over and/or under water:

### SEEPAGE, POLLUTION AND CONTAMINATION EXCLUSION CLAUSE No. 2
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly
or indirectly caused by seepage, pollution or contamination.
(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating
substances.
(3) Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence
caused by sub-surface operations of the Assured.
(4) Removal of, loss of or damage to sub-surface oil, gas or any other substance, the property
of others.
(5) Fines, penalties, punitive or exemplary damages.
22/1/70.
N.M.A. 1684.


It is also understood and agreed that the following attached clause shall
apply in respect of the Assured's oil and/or gas operations other than those
on, over and/or under water:

### SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE NO. 1
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1) Removal of, loss of or damage to sub-surface oil, gas or any other substance, the property of others, provided
always that this paragraph (1) shall not apply to any liability which would otherwise be covered under this
Insurance for such removal, loss, or damage directly attributable to blow-out, cratering or fire of an oil or gas
well owned or operated by, or under the control of, the Assured.
(2) Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by sub-
surface operations of the Assured.
(3) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by
seepage, pollution or contamination, provided always that this paragraph (3) shall not apply to liability for
Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of
use of such property damaged or destroyed where such seepage, pollution or contamination is caused by a sudden,
unintended and unexpected happening during the period of this Insurance.
(4) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the
seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the
period of this Insurance.
(5) Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this
Insurance had this Clause not been attached

22/1/70.
N.M.A. 1685


It is further understood and agreed that the following attached clause shall
apply in respect of all operations of the Assured, other than oil and/or gas
operations.

### INDUSTRIES SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 3
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by
seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for
Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of
use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a
sudden, unintended and unexpected happening during the period of this Insurance.
(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the
seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the
period of this Insurance.
(3) Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this
Insurance had this Clause not been attached.

22/1/70
N.M.A. 1685

02588

ADDENDUM NO 9

Attaching to and forming part of Policy No KYO17582

Issued to:      W.R.GRACE & CO.


Notwithstanding anything contained herein to the contrary it is hereby
understood and agreed that this Policy is extended to include Workmen's
Compensation Act liability in those States where the Assured is a duly
qualified self-insurer.

It is further understood and agreed that as respects such coverage this
Policy is subject to the same warranties, terms and conditions (except
as regards the obligation to investigate and defend, and the amounts
and limits of liability) as are applicable to the Assured in respect of
the amounts as specified in the Schedule of Underlying Insurance.

It is however understood and agreed that not later than twenty-four months
from the expiry date of this Policy, the Assured shall advise the Underwriters
of all claims not finally settled which are likely to result in claims under
this Policy.  The Underwriters may then or at any time thereafter intimate
to the Assured their desire to be released from liability in respect of any
one or more such claims.  In such event, the Assured and the Underwriters
shall mutually appoint an Actuary or Appraiser to investigate, determine
and capitalise such claim or claims and the payment by the Underwriters of
their portion of the amount so ascertained to be the capitalised value of
such claim or claims shall constitute a complete and final release of the
Underwriters.

It is further understood and agreed that nothing contained in the foregoing
extension shall be deemed to amend or alter the aggregate provisions of this
Policy applicable to Occupational Disease.


All other terms and conditions of the Policy remaining unchanged.
PSGB/sc

63539

ADDENDUM NO 10

Attaching to and forming part of Policy No KY017582

Issued to:        W.R.GRACE & CO.


It is hereby understood and agreed that this Policy is extended to include
"Data Processors Errors and Omissions" and "Insurance Brokers Errors and
Omissions".

It is however specifically understood and agreed that the above extension
in coverage is only applicable insofar as such coverage is available to
the Assured in the scheduled Underlying Insurances attached hereto and
that as respects such coverage this Policy is subject to the same warranties,
terms and conditions (except as regards the premium, the obligation to
investigate and defend, the amount and limits of liability and the renewal
agreement, if any), as are contained in said Underlying Insurances.




All other terms and conditions of the Policy remaining unchanged.
PB/sc

ADDENDUM NO 11

Attaching to and forming part of Policy No KYO17582


Issued to:        W.R.GRACE AND CO.


It is understood and agreed that with effect from 1st December, 1982
W.R.Grace and Co. is involved in a Joint Venture with U.S.Steel
Corporation for the operation of two sulphuric acid plants, one
phosphoric acid plant and power generating station in Ft. Meade,
Florida. Coverage is provided hereon in respect of W.R.Grace and Co's
interest following the terms of the Joint Venture Clause incorporated
in Addendum 4 attached hereto, excess of a separate primary limit of
$1,000,000.

In respect of the foregoing, Underwriters agree to waive their rights
of subrogation against U.S.Steel Corporation and the Lenders who are
financing the construction.

It is further agreed that in respect of the foregoing, Underwriters
agree to give equal rights to U.S.Steel Corporation in the settlement
of claims within the area of $24,000,000 excess of $1,000,000 which
U.S.Steel Corporation self insure for their portion.


All other terms and conditions of the Policy remaining unchanged.
PSGB/sc