# 3A
# PART 2

02391

COPY    ADDENDUM NO 12

Attaching to and forming part of Policy No KYO17582


Issued to:            W.R.GRACE & CO.


It is hereby understood and agreed that with effect from 30th June ,1982
this Policy shall not apply to Chemed Corporation and or any subsidiary,
organisation or company, including subsidiaries of a subsidiary company,
owned controlled or coming under the active management of Chemed Corporation.


All other terms and conditions of the Policy remaining unchanged.
PSGB/sc

14.3.84                    82103 B 40099 S
                           DIRECTOR
W. B. WEAVERS (UNDERWRITING) AGENCIES LTD

COPY

ADDENDUM NO 13

Attaching to and forming part of Policy No KY017582

Issued to:        W.R.GRACE AND CO.

Notwithstanding anything contained herein to the contrary it is hereby
understood and agreed that with effect from 30th June,1982 Exclusion C
and Exclusion G appearing in Addendum No. 3 are amended to read as
follows:-

C. In respect of the Assured's Oil and/or Gas drilling and/or exploration
operations to:-

       i) the cost of Control of any oil and/or gas well,

      ii) loss of hole and/or in-hole equipment.

G. In respect of the Assured's Oil and/or Gas drilling and/or exploration
operations to:-

       i) explosion blowout and/or cratering

      ii) underground Property Damage not already excluded by the Seepage,
         Pollution and Contamination Clause No.1 and the Seepage, Pollution
         and Contamination Exclusion Clause No 2 and the Industries, Seepage,
         Pollution, and Contamination Clause No 3.

All other terms and conditions of the Policy remaining unchanged.
PS GE 'sc.

30 384        82L038 40099S
                 DIRECTOR
H  B  WEAVERS UNDERWRITING AGENCIES LTD

ADDENDUM NO 14

Attaching to and forming part of Policy No KYO17582

Issued to:        W.R.GRACE AND CO.

It is hereby understood and agreed that with effect from 30th June,1982,
in the event of the Assured leasing one of their aircraft to another
Corporation who give the understanding that they will provide insurance,
should there be a breach of contract, then W.R.Grace's Primary Aviation
Policy will respond for any contingent liability that may exist.

All other terms and conditions of the Policy remaining unchanged.
PS GB/sc

2484/R/ 821038400995
DIRECTOR
M. S. WEAVERS (UNDERWRITING) AGENCIES LTD

ADDENDUM NO 15

Attaching to and forming part of Policy No KYO17582

Issued to:        W.R. GRACE AND CO.

It is understood and agreed that with effect from 30th June, 1982 this Policy
shall apply in respect of the Joint Venture known as Four Corners Mine and
International Minerals And Chemical Corporation is included hereon in respect
of their interest in this Joint Venture.  Also included as an Additional Assured
is Morgan Guaranty Trust Company of New York, but only in respect of their
interest as Mortgagee in the Four Corners Mine Joint Venture and persuant to
the terms and conditions of the credit agreement dated 27th January, 1981.

It is further understood and agreed that coverage provided hereon shall
apply separately in excess of the following underlying insurances in respect
of the Four Corners Mine Joint Venture.

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| A)General Liability | $1,000,000 (applies separately to each contractor but is subject to a combined $5,000,000 limit for any one occurrence) | Hartford Insurance Company |
| B)Employers Liability | $   500,000 | Hartford Insurance Company |
| C)Umbrella Liability (To apply excess of A and B above) | $29,000,000 | Hartford Insurance Company |

It is further understood and agreed that the Joint Venture Clause incorporated
in Addendum No 4 will not apply to this Joint Venture.

All other terms and conditions of this Policy remaining unchanged.
PSGB/sc

25984

COPY

ADDENDUM NO 18

Attaching to and forming part of Policy No KYO17582

Issued to:          W.R.GRACE & CO.


It is hereby understood and agreed that with effect from  30th June,1982
BOOKER DRILLING COMPANY is included herein as an additional Assured.
In consequence of the above, the C.N.A.Casualty Company of Illinois will
provide underlying coverage on a "Difference Between" basis up to the
appropriate underlying limits as expressed in the schedule attached hereto
until such time as the existing underlying insurances of Booker Drilling
Company are cancelled and the coverages are included within the C.N.A.
underlying insurance programme.

Gross receipts from the aforementioned entity shall be included in the
premium adjustment in accordance with Addendum No 6.




All other terms and conditions of this Policy remaining unchanged.
PSGB/sc

02506

COPY

ADDENDUM NO 17

Attaching to and forming part of Policy No KYO17582

Issued to:        W.R.GRACE AND CO.

It is understood and agreed that with effect from 31st August, 1983 the
coverage provided for the Joint Venture Four Corners Mine and International
Minerals and Chemical Corporation shall apply in excess of the following
underlying insurances and not as formerly:-

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| A)Completed Operations and Products Liability Insurance only. | $1,000,000 (applies separately to each contractor but is subject to a combined $5,000,000 limit for any one occurrence) | Hartford Insurance Corp |
| B)Umbrella Liability (Excess of A) | $29,000,000 | Hartford Insurance Corp |

All other terms and conditions of this Policy remaining unchanged.
PSGB 'sc

25984              82LO3B40099,

COPY                              02597

ADDENDUM NO 18

Attaching to and forming part of Policy No KYO17582

Issued to:        W.R.GRACE AND CO.

It is understood and agreed that with effect from 2nd December,1983,
solely as respects ownership of tracts of land, the following entity
is included hereon as an Additional Named Assured:-

        Trust Fund of W.R.Grace and Co. Retirement Plans.

It is however understood and agreed that, as respects the foregoing,
this Policy shall only apply insofar as such coverage is available to
the Assured in the Scheduled Underlying Insurances.

All other terms and conditions remain unchanged.
PSGB/sc

62398

ADDENDUM NO. 19

Attaching to and forming part of Policy No. KY017582

Issued to:    W.R. GRACE AND CO.

Effective 30th June, 1982.

BROAD AS PRIMARY RIDER

IT IS HEREBY understood and agreed that in the event the Assured suffers a
loss which is covered under the policies of the underlying insurances as set
out in the schedule attached to this Policy, the excess of which would be payable
under this Policy, except for terms and conditions of this Policy which are not
consistent with the underlying insurances, then notwithstanding anything
contained in this Policy to the contrary this Policy shall be amended to follow
and be subject to the terms and conditions of such underlying insurances in
respect of such loss.

THE FOREGOING SHALL NOT, HOWEVER, APPLY TO:-

1.    Any coverage given under the underlying insurances for limits less than
      the full limit of the said underlying policy as stated in the schedule
      hereto;

2.    Any Nuclear Incident Exclusion Clause and Radioactive Contamination
      Exclusion Clause attached to this Policy;

3.    Any Seepage and Pollution Exclusion Clause attached to this Policy;

4.    Exclusion a) of this Policy;

5.    Exclusion c) of this Policy;

6.    Exclusion e) of this Policy;

7.    Any liability arising out of the Employee Retirement Income Security Act
      of 1974 as excluded in this Policy;

8.    The exclusions as set forth in Addendum No. 3 of this Policy labelled
      A(1) to A(7) inclusive, B(1) and B(2), and C(i) and C(ii);

9.    Any Automobile Physical Damage Coverage;

10.   Real and/or Personal Property of the Assured;

- 1 -

62599

11.  Malpractice Liability;

12.  Definition 3 of this Policy;

13.  Definition 7 of this Policy;

14.  Claims based upon the Motor Carriers Act of 1980;

15.  The title of the Named Assured which shall remain as set forth in Item
     1 of the Declarations of this Policy;

16.  The period of this Policy which shall remain in accordance with Item
     3 of the Declarations of this Policy;

17.  Liability arising out of the ownership, maintenance or use of property in
     any trust for which the Assured is acting in a fiduciary or representative
     capacity;

18.  Any liability arising out of any occurrence occurring or commencing or
     alleged to have occurred or commenced prior to 30th June, 1982 at 12.01 a.m.
     Local Standard Time;

19.  The provisions of this Policy as respects "joint ventures".

It is further understood and agreed that coverage provided by the Underlying
Comprehensive General Liability Policies No. CCP 2483440 with the CNA and
80-133116 with the American International Underwriters will not be further
extended without obtaining agreement from Underwriters hereon.  In the event
of Underwriters hereon not agreeing to such further extension coverage will be
provided hereon as if such extension had not been granted.

291084 [signature]                    82L03840077
H. B. WEAVERS UNDER WRITING AGENCIES LTD    DIRECTOR

All other terms and conditions remain  unchanged.
PSG3/rjb

- 2 -

PREMIUM NOTICE

The premium for this insurance is due and payable as of the attachment date unless otherwise agreed by the Underwriters as indicated on the corresponding premium invoice.

By acceptance of this Confirmation of Insurance the interests named hereunder agree that all losses and/or return premiums due under the policies for this insurance or any other policies effected for and/or payable, in whole or in part, to the same interests on this or any other properties or risks shall first be payable to Marsh & McLennan Incorporated to the extent of all premium or other indebtedness then due and unpaid to them

1879G/JLC

# Bowring

COVER NOTE

C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

| | |
|---|---|
| P.O. BOX 145. | TELEPHONE: 01-283 3100 |
| THE BOWRING BUILDING. | TELEGRAMS: BOWINSUR |
| TOWER PLACE. | LONDON EC3 |
| LONDON EC3P 3BE | TELEX: 882191 |
| (Registered Office) | Registered No. 78170 London |

Please always          KY017582
quote this No.

19th July, 1982
Date...................................

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

**TYPE:**        UMBRELLA LIABILITY INCLUDING WORKER'S COMPENSATION ACT AND
                EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM
                E.R.I.S.A. (1974), AS EXPIRING.

**FORM:**        WORDING AS EXPIRING AS FAR AS APPLICABLE TO BE AGREED BY
                UNDERWRITERS.

**ASSURED:**      W.R. GRACE & COMPANY ETAL AND/OR SUBSIDIARY, ASSOCIATED,
                AFFILIATED COMPANIES AND/OR ORGANISATIONS OWNED, CONTROLLED
                AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED PLUS
                JOINT VENTURES AS EXPIRING.

**PERIOD:**       36 months at 30th June, 1982.

**INTEREST:**     Coverage in respect of all of the Insured's operations.

**SUM INSURED:**  80% of
                $ 5,000,000     Each Occurrence (Aggregate Products and
                                Occupational Disease)

                EXCESS OF:-

                A)   The amount covered under underlying insurances as per
                     schedule attached.

                B)   $ 100,000 Each Occurrence in respect of losses not covered
                     by said underlying insurances.

**SITUATION:**    WORLDWIDE.

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

2

CONDITIONS:   Service of Suit Clause (U.S.A.)
Tax Clause (if applicable)
Exhaustion of Aggregate Endorsement - subject primaries
unimpaired at inception hereon.
60 Days Cancellation Clause.
N.M.A. 1687 (amended as expiring).
Broad as primary rider as agreed by Underwriters.
Warranties as attached.
N.M.A. 1685 except in respect oil and gas operations which
subject to N.M.A. 1683 other than operations on, over or under
water which subject to N.M.A. 1684.

Exclusions
Additional to Form

Part I

(A) Property Damage arising from:-

   1)   Erroneous delivery of seeds, erroneous substitution of
        one seed for another, or mislabeling of seeds;

   2)   Cross Pollination;

   3)   Germination failure;

   4)   The presence of noxious weed seed;

   5)   Natural shrinkage of grain;

   6)   Loss of and/or damage and/or deterioration from delay
        or from moisture content of grain;

   7)   Commingling of grain;

(B) 1)   To liability arising under any policy of insurance or
         reinsurance;

   2)   To liability arising out of the issuance,
        non-issuance, declination or cancellation of, or the
        imposition of special terms to any policy of insurance
        or reinsurance;

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

3

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

(c)   In respect of oil/gas drilling and/or exploration
      operations:-

i.    Cost of control of any oil/gas well.
ii.   Loss of hole and/or in hole equipment.


## Part II

(A)   Charterers' Liability;
(B)   Safe berthing of any marine vessel
(C)   Marine vessels in Assured's Care, Custody and Control.
(D)   Non-owned watercraft Liability;
(E)   Contractural;
(F)   Incidental Malpractice;
(G)   In respect of oil/gas drilling and/or exploration
      operations:-

      i.    Explosion, blowout and/or cratering
      ii.   Underground Property Damage not already excluded by
            N.M.A. 1683/4/5;

(H)   Data Processors Errors and Omissions;
(I)   Liability resulting from ownership, maintenance, and/or
      operations of any dock, wharf and/or quay facility;
(J)   Insurance Brokers errors and omissions;
(K)   Punitive and/or Exemplary Damages;
(L)   Pharmacists Liability.

PREMIUM:          80% of Minimum and Deposit
                  $1,525,000 (payable 30th June, 1982 Minimum and Deposit $475,000
                                      30th June, 1983 Minimum and Deposit $510,000
                                      30th June, 1984 Minimum and Deposit $540,000
                  adjustable annually at 5.85c%o on Gross Sales).
                  Plus additional Premium $ 16,750 annual in respect of coverage
                  provided hereon by Part II Exclusion (A) (B) (C).

                  Less 4% Federal Excise Tax (where applicable).


For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

W.R. GRACE COMPANY

Warranties:-

(1)  Notwithstanding scheduled underlying policies contain
limits in respect of products recall and architects
E and O, no coverage provided hereon and for
the purposes of the policy underlying coverages
not be impaired by such exposure.

(2)  Physical damage coverage maintained for 100% values
in respect of all properties for at least
$125,000,000 excess $1,000,000 deductible maintained
for all other real property, all property in
Assured's C.C.C. covered by such policies.

(3)  No step down excess of S.I.R. hereon in the event
of any loss not being covered by scheduled primaries
due to deductible contained therein.

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

4

W.R. GRACE & COMPANY

Schedule of Underlying Insurance

| Coverage | Limit | | Carrier |
|---|---|---|---|
| 1. DOMESTIC GL AND AL:- | | | |
| A) General/Products Liability | B.I. $1,000,000 each occ. P.D. $1,000,000 each occ. | $4,000,000 Aggregate B.I. & P.D. combined | C.N.A. |
| B) Employee Benefits | $ 500,000 each claim $ 750,000 annual aggregate. | | C.N.A. |
| C) Care Custody & Control | $1,000,000 each occ. $1,000,000 annual aggregate | | C.N.A. |
| D) Advertisers Liability | $ 500,000 each occ. | | C.N.A. |
| E) Automobile Liability | B.I. $1,000,000 each occ. P.D. $1,000,000 each occ. | | C.N.A. |

* W.R. Grace & Co. assumes the first $500,000 of each loss within the framework of a retrospective rating plan. The premiums indicated are for insurance excess of $500,000 up to policy limits.
    The combination of the $500,000. loss assumption and pure insurance is equal to the limits shown above.

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

5

02807

W.R. GRACE & COMPANY

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| II EMPLOYER'S LIABILITY:- | | |
| A.) Employer's Liability Including Occupational Disease | $    500,000 Each Employee<br>$    500,000 Each Accident | C.N.A. |
| B.) Amendments of Coverage B Maritime (Jones Act) | Bodily Injury by Accident<br>$    500,000 Each Employee<br>$    500,000 Each Accident<br>Bodily Injury by Disease<br>$    500,000 Each Employee<br>$    500,000 Aggregate Disease<br>              (Per State) | C.N.A. |
| C.) U.S. F.L. & H.W.A. | $    250,000 Each Employee<br>$    250,000 Each Accident | C.N.A. |
| III    1 AIRCRAFT LIABILITY (Excluding Non-Ownership) | $15,000,000 CSL Including Voluntary Settlements of $250,000 per Person-Including Crew (Part Of and Not In Addition to the $15,000,000 Limit) | U.S.A. I G. |
| A.) Care Custody or Control | $ 1,000,000 - Each Occurrence (With Respect to Hangars, Buildings or Other Property or Contents Thereof Required by Lease or Other Agreement or if Insurance is Purchased). | |
| B.) Non-Ownership Hull Liability | $ 5,000,000 Per Occurrence and Aggregate | U.S.A. I G. |
| C.) Aircraft Non-Ownership Liability | $15,000,000 CSL | U.S.A. I G. |
| 2.   GROUND HANGARKEEPERS LIABILITY | $ 2,000,000 Each Aircraft<br>$ 2,000,000 Each Occurrence | U.S.A. I G. |

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

6

02603

# W.R. GRACE & COMPANY

| COVERAGE | | LIMIT | CARRIER |
|---|---|---|---|
| IV. | A.) CHARTERER'S LIABILITY/ WHARFINGER'S LIABILITY for W.R. Grace & Co. | *$2,000,000 Damage to Vessel and Cargo<br>$2,000,000 Demmurage and removal of Wreck<br>$2,000,000 Collision (Third Party Including Demmurage - P.D.<br>$2,000,000 Each Person<br>$2,000,000 Each Accident<br>Third Party Bodily Injury Liability including Liability to Crew of Chartered Vessel<br>$    5,000. Deductible Each Accident. | Arkwrigh Boston Manufact urers In Co. |

\* Limits will increase to $5,000,000 when and if a sulphur shipment takes place. The increased limit will remain in effect for the duration of policy term. To date no sulphur shipments have taken place and none anticipated for current policy period.

| | B.) CHARTERER'S LIABILITY for Aruba Chemical Industries, N.V. | $2,000,000 Damage to Vessel and Cargo<br>$2,000,000 Demmurage or Removal of Wreck<br>$2,000,000 Collision (Third Party Including Demmurage - P.D.<br>$2,000,000 Each Person<br>$2,000,000 Each Accident<br>Third Party Bodily Injury Liability including Liability to Crew of Chartered Vessel<br>$    5,000. Deductible Each Accident. | Arkwrigh Boston Manufact urers In Co |

| V. | FOREIGN INSURANCE | | |
|---|---|---|---|
| | A.)   W.R. Grace & Co. | $1,000,000 per Occurrence BI and PD<br>CSL for GL and AL Combined | AIG |

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

7

\_ :03609

## W.R. GRACE & COMPANY

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| Worldwide Comprehensive General and Automobile Liability Program* | $ 2,000,000 Aggregate Products<br>$ 2,000,000 Aggregate Property Damage Per Location<br>$    50,000 Per Occurrence/$500,000 Aggregate for Property in Insured's Care, Custody, and Control. | |

* This is a master DIC and/or excess policy for a combination of local admitted contracts for various Grace foreign units.

VI. COLOWYO COAL COMPANY

| | | |
|---|---|---|
| Excess Workers' Compensation and Employers' Liability Reinsurance (excluding Federal Black Lung) | $10,000,000 Each Accident WC and/or EL<br><br>Combined in excess of $250,000 retention | General Reinsurance |

VII BOOKER DRILLING

| | | |
|---|---|---|
| Employers' Liability | $   500,000 | North West Ins. Co. |

VIII EASTERN COAL JOINT VENTURE
     (47.5% ownership interest)

| | | |
|---|---|---|
| A.) General Liability | B.I. $ 1,000,000 Occurrence/Aggregate<br>P.D. $ 1,000,000 Occurrence/Aggregate | Federal Insurance Company |
| B.) Auto Liability | $ 1,000,000 CSL | Federal Insurance Company |
| C.) Aviation | $50,000,000 CSL | Associated Aviation Underwriters |

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

8

- □ 103010

## W.R. GRACE & COMPANY

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| IN RESPECT OF EASTERN COAL JOINT VENTURE. | | |
| D.) Employers Liability | | |
| 1) Rapoca Energy Company a) Coal Mines | $  500,000 | Old Republic |
| b) Helicopter Pilot | $  500,000 | Aetna Casualty & Surety |
| 2) Terry Eagle Coal Company | $  500,000 | Federal Insurance Co |
| 3) Paramont Coal Company | $10,150,000 WC & EL Excess of $   350,000 Self Insured Retention | Various |
| 4) G-L Management Inc. and Neville Coal Sales | $  500,000 | Commercial Union |
| E.)       Umbrella Excess Liability* | $50,000,000 | Various |

* This Policy includes all of the above Eastern Coal coverages within the underlying schedule including Paramont Mining's excess W.C. program.

N.B. 47-1/2% of the above limits apply to Grace interest and NMA 1687 (as amended) applies hereon.

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

9

02011

```
100.00% (24.73% WALBROOK INSURANCE COMPANY LIMITED
        (10.75% EL PASO INSURANCE COMPANY LIMITED
        (18.82% DART & KRAFT INSURANCE COMPANY LIMITED
        ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED
        ( 6.45% LUDGATE INSURANCE COMPANY LIMITED
        ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
        (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY
        ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED
        ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES
        (         INDUSTRIELLES S.A.
        (per H.S. Weavers (Underwriting) Agencies Ltd.
```

Hereon        100.00%

* These Companies allow Federal Excise Tax.

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE

(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
                        LONDON EC3

TELEX: 882191

Registered No. 76170 London

02312

10th August, 1982

Date.

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

## A/C W.R. GRACE & COMPANY ETAL

With effect from inception the companies underwritten for by H.S. Weavers
(Underwriting) Agencies Ltd are amended to read:-

```
100.00% (31.18% WALBROOK INSURANCE COMPANY LIMITED
        (10.75% EL PASO INSURANCE COMPANY LIMITED
        (18.82% DART & KRAFT INSURANCE COMPANY LIMITED
        ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED
*       ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
*       (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY
*       ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED
*       ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES
        (        INDUSTRIELLES S.A.
        (per H.S. Weavers (Underwriting) Agencies Ltd.
```

Hereon          100.00%

\* (These Companies allow Federal Excise Tax).

Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

All Other Terms and Conditions Remaining Unchanged

C.T. BOWRING & CO. (INSURANCE) LTD.

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
LONDON EC3
TELEX: 882191
Registered No. 78170 London

026143816

10th August, 1982.

Date ..............................................

VAT No. 244 251779

In accordance with your instructions we have arranged cover as follows:

A/C W.R. GRACE & COMPANY ETAL

With effect from inception the companies underwritten for by H.S. Weavers
(Underwriting) Agencies Ltd are amended to read:-

```
        100.00% (31.18% WALBROOK INSURANCE COMPANY LIMITED
                (10.75% EL PASO INSURANCE COMPANY LIMITED
                (18.82% DART & KRAFT INSURANCE COMPANY LIMITED
                ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED
     *          ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
     *          (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY
     *          ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED
     *          ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES
                (         INDUSTRIELLES S.A.
                (per H.S. Weavers (Underwriting) Agencies Ltd.
```

Hereon          100.00%

* (These Companies allow Federal Excise Tax).

Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

All Other Terms and Conditions Remaining Unchanged

C.T. BOWRING & CO. (INSURANCE) LTD.

Director/Mgr.

5238A HM

# Bowring

**ADDENDUM**

Attaching to and forming part of Cover Note No. ........ KY017582 ............

03314

C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

P.O. BOX 145,                    TELEPHONE: 01-283 3100
THE BOWRING BUILDING,            TELEGRAMS: BOWINSUR
TOWER PLACE,                                  LONDON EC3
LONDON EC3P 3BE                  TELEX: 882191
(Registered Office)              Registered No. 78170 London

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

13829

Date ....5th July, 1983..............
VAT No. 244 2617 79

In accordance with your instructions we have arranged cover as follows:

A/C: W.R. GRACE AND COMPANY

With effect from 30th June, 1983 the Schedule of Primary Insurance is amended as follows:-

1A General/Products Liability.

| | | |
|---|---|---|
| Bodily Injury | $1,000,000 each occurrence) | $4,000,000 Aggregate |
| Property Damage | $1,000,000 each occurrence) | Bodily Injury and |
| | ) | Property Damage Combined |

Sublimit
Personal Injury $1,000,000/$2,000,000 Aggregate.

All Other Terms and Conditions Remaining Unchanged

For the Attention of Mr. T. Clarke,
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

......................................... Director/Manager

MD 255A

Transit Casualty

Policy No.  UMB 950-239

06/30/82 – 06/30/85

# ENDORSEMENT

W.R. GRACE & COMPANY

POLICY NO. UMB 950239
END'T. NO. 5

Effective Date:  June 30, 1982

With respect to the leases dated December 30, 1981 between Grace Natural
Resources Corp. and Marcantile Leasing Company Limited and between TRG
Drilling Corp. and Marcantile Leasing Company Limited, it is agreed that
this policy is amended to include the following:

(1)  Owner as Joint Insured:
     Marcantile Leasing Company Limited
     Elizabethan House
     Great Queen Street
     London WC2B 5DP England

(2)  Immediate notice to owner for any material
     change in policy for which leasee is re-
     sponsible under insurance clause 5(A) of
     leases, on file with this company.

(3)  60 day notice to owner if:

     (a)  Insurer cancels the insurance with
          respect to any of the rigs.

     (b)  Such insurance coverage is reduced.

     10 day notice to owner if such insurance is
     allowed to lapse for non-payment of premium.

Countersignature Date: February 16,          1983
TV 0820

n=

_____
Authorized Representative

# ENDORSEMENT   W.R. GRACE & COMPANY

POLICY NO.   UMB 950·
ENDT. NO.   4

Effective date:  June 30, 1982

It is understood and agreed that Items 2 and 4 of the Declarations are
amended to read as follows:

Item 2.  Policy Period:  From:  June 30, 1982  To:  June 30, 1985
12:01 A.M. Standard Time at the address
of the Named Insured as stated herein.

Item 4.  Premium:

June 30, 1982 to June 30, 1983

Advance Premium:  $95,000.
Minimum Premium:  $95,000.

Rate:  20% $.0585 per $1,000 sales

June 30, 1983 to June 30, 1984

Premium to be determined.

June 30, 1984 to June 30, 1985

Premium to be determined

Countersignature Date:      November 4,      19  82                  Authorized Representative

# ENDORSEMENT    W.R. GRACE & COMPANY

POLICY NO. UMB 950239
END'T. NO.    6

Effective Date:  June 30, 1982

In consideration of the premium charged, it is agreed that
with respect to the leases dated March 30, 1982 between
Grace Natural Resources Corp. and LBI Leasing Limited and
between TRG Drilling Corp. and LBI Leasing Limited, this
policy is amended to include the following:

(1)    Owner as Joint Insured:
       LBI Leasing Limited
       40-66 Queen Victoria St.
       London EC4P 4EL, England

(2)    Thirty days prior notice of cancellation
       or a material change in coverage will
       be provided to LBI Leasing Limited.
       (10 day notice if coverage cancelled for
       non-payment of premium).

This endorsement to take effect on the 30th day of June 1982.
All other terms and conditions remain unchanged.

Countersignature Date: February 16,        19 83              Authorized Representative
TV 9600

ns

UMBRELLA LIABILITY POLICY

# Transit Casualty Company

3700 WILSHIRE BOULEVARD   LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A Stock insurance company, herein called the company)

## TRANSIT CASUALTY COMPANY
### LOS ANGELES, CALIFORNIA
### ST. LOUIS, MISSOURI

Agrees with the NAMED INSURED in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy;

### INSURING AGREEMENTS

**I.    COVERAGE**

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

A. PERSONAL INJURY, as hereinafter defined;
B. PROPERTY DAMAGE, as hereinafter defined;
C. ADVERTISING INJURY OR DAMAGE, as hereinafter defined, in which this policy applies, caused by an OCCURRENCE, as hereafter defined, happening anywhere in the world.

**II.    UNDERLYING LIMIT—RETAINED LIMIT**

The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

A. UNDERLYING LIMIT—an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; or
B. RETAINED LIMIT—The amount specified in Item 3 L B of the Declarations as the result of any one occurrence not covered by said underlying insurance, and which shall be borne by the INSURED.

**III.    LIMITS OF LIABILITY**

Regardless of the number of persons and organizations who are INSUREDS under this policy and regardless of the number of claims made and suits brought against any or all INSUREDS, the total limit of the Company's liability for ULTIMATE NET LOSS resulting from any one OCCURRENCE shall not exceed the amount specified in Item 3 L of the declarations.

The Company's liability shall be further limited to the amount stated as the annual aggregate limit in Item 3 II. of the declarations on account of all OCCURRENCES during each policy year arising out of:

A. either the PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined; or
B. occupational disease by all employees of the INSURED.

In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, are exhausted solely as the result of OCCURRENCES taking place after the inception date of this policy, this policy shall, subject to the Company's limit of liability and to other terms of this policy, with respect to OCCURRENCES which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the aggregate limit of liability as stated in Item 3 II. is exhausted, but not for greater coverage than was provided by the exhausted underlying insurance.

In the event that the aggregate limits of liability of the underlying insurance are exhausted or reduced as the result of OCCURRENCES taking place prior to the inception date of this policy, the Company shall only be liable to the same extent as if the aggregate limits had not been so exhausted or reduced.

For the purpose of determining the limit of the Company's liability: (a) all PERSONAL INJURY and PROPERTY DAMAGE arising out

of continuous or repeated exposure to substantially the same general conditions, and

(b) all ADVERTISING INJURY OR DAMAGE involving the same injurious material or act, regardless of the number or kind of media used, or frequency of repetition thereof, whether claim is made by one or more persons

shall be considered as arising out of one OCCURRENCE.

**IV.    DEFENSE—SETTLEMENT**

A. With respect to any OCCURRENCE not covered, as warranted, by the underlying policies listed in Schedule A hereof, whether collectible or not, or not covered by any other underlying insurance collectible by the INSURED, but covered by the terms and conditions of this policy, except for the RETAINED LIMIT stated in Item 3 L B of the Declarations, the Company shall:

(1) defend any suit against the insured alleging PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE and seeking damages therefore, even if such suit is groundless, false or fraudulent; but the COMPANY may make such investigation, negotiation or settlement of any claim or suit as it deems expedient. The INSURED shall promptly reimburse the COMPANY for any amount paid in the satisfaction of cases defended hereunder within the retained limit after making proper deduction for all recoveries and salvage collectible, but excluding all loss expense and legal expense.

(2) with respect to any suit defended under the terms of this coverage, in addition to the applicable limit of liability under this policy the COMPANY shall:

(a) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds;

(b) pay all expenses incurred by the COMPANY, all costs taxed against the INSURED in any such suit and all interest accruing after the entry of judgment until the COMPANY has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the COMPANY'S liability thereon;

(c) pay reasonable expenses incurred by the INSURED at the COMPANY'S request in assisting the COMPANY in the investigation or defense of any claim or suit including actual loss of earnings not to exceed $25 per day, but the COMPANY shall not be required to reimburse the INSURED for salaries of employees of the INSURED.

In jurisdictions where the COMPANY may be prevented by law or otherwise from carrying out this agreement, the COMPANY shall pay any expense incurred with its written consent in accordance with this agreement.

B. When underlying insurance, whether or not listed in Schedule A, does apply to an OCCURRENCE, the COMPANY shall have no duty to pay defense, investigations, settlement or legal expenses covered by such underlying insurance; however, the COMPANY shall have the right and opportunity to associate with the INSURED and any underlying insurer in the defense and control of any claim or suit reasonably likely to involve the COMPANY under this policy.

TV 9800 A (Rev 3 82)

EXCLUSIONS

This policy shall not apply:

A.  under Coverage I (A), to any obligation for which the INSURED
    r any of its insurers may be held liable under any worker's or
    employment compensation, disability benefits or similar law,
    evided, however, that this exclusion does not apply to liability
    of others assumed by the NAMED INSURED under contract;

B.  under Coverage I (B), to injury to or destruction of or loss of (1)
    property owned by the INSURED or (2) property rented to, oc-
    cupied or used by or in the care, custody or control of the IN-
    SURED to the extent the INSURED is under contract to provide
    insurance therefore; or (3) any goods, products or containers
    thereof, manufactured, sold, handled or distributed, or work
    completed by or for the INSURED, out of which the OCCUR-
    RENCE arises.

C.  under Coverage I (A) and I (B) for PERSONAL INJURY or
    PROPERTY DAMAGE, or under I (G) to loss of use of tangible
    property which has not been physically injured or destroyed,
    resulting from:

    (1)  a delay in or lack of performance by or on behalf of the
         INSURED of any contract or agreement or

    (2)  the failure of the INSURED's products or work performed
         by or on behalf of the INSURED to meet the level of per-
         formance, quality, fitness or durability warranted or repre-
         sented by the INSURED; but this exclusion does not apply
         to loss of use of other tangible property resulting from the
         sudden and accidental physical injury to or destruction of
         the INSURED's products or work performed by or on behalf
         of the INSURED after such products or work performed by
         or on behalf of the INSURED have been put to use by any
         person or organization other than an INSURED.

    (3)  damages claimed for the withdrawal, inspection, repair, re-
         placement or loss of use of the INSURED's products or work
         completed by or for the INSURED, or at any property of which
         such products or work form a part, if such products, work or
         property are withdrawn from the market or from use because of
         any known or suspected defect or deficiency therein.

D.  to any liability of any INSURED arising out of the discharge,
    dispersal, release or escape of smoke, vapors, soot, fumes,
    acids, alkalis, toxic chemicals, solids, liquids or gases, waste
    materials or other irritants, contaminants or pollutants into or
    upon land, the atmosphere or any watercourse or body of water
    unless such discharge, dispersal, release or escape is sudden
    and accidental.

E.  under Coverage I (C), to liability for (1) failure of performance
    of contract, (2) infringement of a registered trade mark, service
    mark or trade name of goods or services sold, offered for sale
    or advertised, but this shall not relate to titles or slogans, (3)
    incorrect description of any article or commodity, or (4) mistake
    in advertised price;

F.  under Coverage I (A) and I (B) for PERSONAL INJURY or
    PROPERTY DAMAGE arising out of AIRCRAFT PRODUCTS
    and/or all sums which any INSURED shall become legally
    obligated to pay as damages resulting in or from GROUNDING
    of any AIRCRAFT.

G.  I.    under any Liability Coverage, to injury, sickness, disease,
          death or destruction.

    (a)   with respect to which an INSURED under the policy is also
          an Insured under a nuclear energy liability policy issued by
          Nuclear Energy Liability Insurance Association, Mutual
          Atomic Energy Liability Underwriters or Nuclear Insurance
          Association of Canada, or would be an Insured under any
          such policy but for its termination upon exhaustion of its
          limit of liability; or

    (b)   resulting from the hazardous properties of nuclear material
          and with respect to which (1) any person or organization is
          required to maintain financial protection pursuant to the
          Atomic Energy Act of 1954, or any law amendatory thereof,
          or (2) the Insured is, or had this policy not been issued
          would be, entitled to indemnity from the United States of
          America, or any agency thereof, under any agreement en-
          tered into by the United States of America or any agency
          thereof, with any person or organization;

    II.   under any Medical Payments Coverage, or under any Sup-
          plementary Payments provision relating to immediate medi-
          cal or surgical relief to expenses incurred with respect to
          bodily injury, sickness, disease or death resulting from the
          hazardous properties of nuclear material and arising out of
          the operation of a nuclear facility by any person or organi-
          zation;

    III.  under any Liability Coverage, to injury, sickness, disease,
          death or destruction resulting from the hazardous proper-
          ties of nuclear material, if

          (a)  the nuclear material (1) is at any nuclear facility owned

    or operated by or on behalf of, an Insured or (2) has been
    discharged or dispersed therefrom;

    (b)  the nuclear material is contained in spent fuel or waste
         at any time possessed, handled, used, processed,
         stored, transported or disposed of by or on behalf of
         an INSURED; or

    (c)  the injury, sickness, disease, death, or destruction
         arises out of the furnishing by an INSURED of services,
         materials, parts or equipment in connection with the
         planning, construction, maintenance, operation or use
         of any nuclear facility, but if such facility is located
         within the United States of America, its territories or
         possessions or Canada, this exclusion (c) applies only
         to injury to or destruction of property at such nuclear
         facility.

IV.  As used in this policy:

    "hazardous properties" means source material, special nu-
    clear material or byproduct material;

    "source material", "special nuclear materials" and "by-
    product material" have the meanings given them in the
    Atomic Energy Act of 1954 or in any law amendatory thereof;
    "spent fuel" means any fuel element or fuel component,
    solid or liquid which has been used or exposed to radiation
    in a nuclear reactor;

    "waste" means any waste material (1) containing byproduct
    material and (2) resulting from the operation by any prod-
    uct or organization of any nuclear facility included within
    the definition of nuclear facility under paragraph (a) or (b)
    thereof;

    "nuclear facility" means:

    (a)  any nuclear reactor.

    (b)  any equipment or device designed or used for (1)
         separating the isotopes of uranium or plutonium, (2)
         processing or utilizing spent fuel, or (3) handling, proc-
         essing or packaging waste.

    (c)  any equipment or device used for the processing, fabri-
         cating or alloying of special nuclear material if at any
         time the total amount of such material in the custody of
         the Insured at the premises where such equipment or
         device is located consists of or contains more than 25
         grams of plutonium or uranium 233 or any combination
         thereof, or more than 250 grams of uranium 235.

    (d)  any structure, basin, excavation, premises or place
         prepared or used where any of the foregoing is located,
         all operations conducted on such site and all premises
         used for operations;

    "Nuclear reactor" means any apparatus designed or used
    to sustain nuclear fission in a self-supporting chain reac-
    tion or to contain a critical mass of fissionable material;
    with respect to injury to or destruction" includes all forms
    of radioactive contamination of property.

H.  to any liability of the INSURED directly or indirectly occasioned
    by, happening through or in consequence of war, invasion, acts
    of foreign enemies, hostilities (whether war be declared or not),
    civil war, rebellion, revolution, insurrection, military or usurped
    power or confiscation or naturalization or requisition or de-
    struction of damage to property by or under the order of any
    government or public or local authority.

I.  to any liability of any INSURED arising out of racial, religious,
    sex or age discrimination.

J.  "to any claim based upon any actual or alleged error or omis-
    sion or breach of duty, committed or alleged to have been com-
    mitted in the discharge of Fiduciary duties, obligations or re-
    sponsibilities imposed by the Federal Employee Retirement
    Income Security Act of 1974 or amendments thereto."

K.  unless insurance is provided by a policy listed in the schedule of
    underlying insurance, and then for no broader coverage than is
    afforded by such insurance:

    I.    to liability of any INSURED hereunder for assault and bat-
          tery committed by or at the direction of the INSURED ex-
          cept liability for personal battery committed for the purpose
          of preventing or eliminating danger in the operation of
          AIRCRAFT, or for the purpose of preventing PERSONAL
          INJURY or PROPERTY DAMAGE, it being understood and
          agreed that this exclusion shall not apply to the liability
          of the NAMED INSURED for PERSONAL INJURY to their
          employees, unless such liability is already excluded under
          Exclusion (H) above.

    II.   with respect to any watercraft owned by an INSURED,
          while away from premises owned, rented or controlled by
          the INSURED, except liability of the NAMED INSURED for
          watercraft not owned by them; it being understood and
          agreed that this exclusion shall not apply to the liability

Attach Declarations and Endorsement(s) Here

of the NAMED INSURED for personal injury to their employees, unless such liability is already excluded under Exclusion (A) above;

III. to liability of any INSURED or any employee of said INSURED with respect to personal injury to or death of another employee of the same employer injured in the course of such employment;

IV. to any liability of any INSURED for property damage to the

property of another INSURED;

V. under Coverage I (A) and I (B), to liability arising out of ownership, maintenance, operation, use, loading, or unloading of AIRCRAFT owned by the insured, or, without crew, loaned to, leased to, rented or chartered by or on behalf of the INSURED;

VI. to punitive or exemplary damages awarded against any INSURED.

## DEFINITIONS

When used in this policy, the following words and phrases shall have the following meaning:

A. **ADVERTISING INJURY OR DAMAGE: means**
(1) libel, slander or defamation,
(2) any infringement of copyright or title or slogan,
(3) piracy or unfair competition or idea misappropriation under an implied contract,
(4) any invasion of right of privacy;
committed or alleged to have been committed during the policy period, in any advertisement, publicity article, broadcast or telecast and arising out of insured's advertising activities.

B. **AIRCRAFT:**
Means any heavier than air or lighter than air AIRCRAFT designed to transport persons or property (including missiles or spacecraft).

C. **AIRCRAFT PRODUCTS:**
Means AIRCRAFT and/or AIRCRAFT PRODUCTS which are specifically designed, manufactured or sold as parts, components or assemblies for the flight, navigation or communication of AIRCRAFT or ground support equipment.

D. **AUTOMOBILE:**
Means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment.

E. **COMPLETED OPERATIONS HAZARD:**
(1) Includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the INSURED. "Operations" include materials, parts or equipment furnished in connection therewith.
Operations shall be deemed completed at the earliest of the following times:
(a) when all operations to be performed by or on behalf of the insured under the contract have been completed,
(b) when all operations to be performed by or on behalf of the insured at the site of the operations have been completed, or
(c) when that portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
(2) The completed operations hazard does not include personal injury or property damage arising out of:
(a) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,
(b) the existence of tools, uninstalled equipment or abandoned or unused materials.

F. **GROUNDING:**
Means the withdrawal, at or about the same time, in the interest of safety, of one or more AIRCRAFT from flight operations because of a like condition or suspicion thereof in two or more such AIRCRAFT whether such AIRCRAFT so withdrawn are owned or operated by the same or different persons, firms or corporations. A GROUNDING shall be deemed to commence on the date of an accident or OCCURRENCE which discloses such condition, or on the date an AIRCRAFT is first withdrawn from service on account of such condition, whichever first occurs.

G. **INSURED:**
Each of the following is an INSURED to the extent set forth below:
(1) the NAMED INSURED, meaning the NAMED INSURED

stated in Item 1 of the declarations and any subsidiary, owned or controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company,
(2) any person (other than the NAMED INSURED) or organization while acting as real estate manager for the NAMED INSURED,
(3) any INSURED (not being the NAMED INSURED under this policy) included in the schedule of underlying insurance, but not for broader coverage than is available to such INSURED under the scheduled underlying insurance,
(4) except with respect to the ownership, maintenance, operation, use, loading or unloading of automobiles, aircraft or watercraft, any officer, director or stockholder of the NAMED INSURED, while acting within the scope of his duties as such; but this subparagraph (4) shall not apply if it restricts the insurance granted under subparagraph (3) above,
(5) if the NAMED INSURED is designated in the declarations as a partnership or joint venture, any partner or member thereof, but only with respect to the liability incurred in the operation of that partnership or joint venture; however, this policy does not apply to any automobile owned by or registered in the name of any partner.

H. **INSURED'S PRODUCTS:**
Means goods or products manufactured, sold, handled or distributed by the INSURED or by others trading under the INSURED'S name, including any container thereof (other than a vehicle), but the INSURED'S products shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

I. **MOBILE EQUIPMENT:**
Means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled:
(1) not subject to motor vehicle registration, or
(2) maintained for use exclusively on premises owned by or rented to the INSURED, including the ways immediately adjoining, or
(3) designed for use principally off public roads, or
(4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle; power cranes, shovels, loaders, diggers and drills, concrete mixers (other than the mix-in-transit type), graders, scrapers, rollers and other road construction or repair equipment, air compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment.

J. **OCCURRENCE:**
With respect to Coverage I (A) and I (B) "OCCURRENCE" shall mean an accident or event including continuous repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the stand-point of the INSURED. For the purpose of determining the limit of the Company's liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE.
With respect to Coverage I (C), all damages involving the same injurious material or act, regardless of the frequency of repetition thereof, the number or kind of media used, and the number of persons shall be deemed to arise out of one "OCCURRENCE."

K. **PERSONAL INJURY:**
The term PERSONAL INJURY wherever used herein means:
(1) bodily injury, sickness, disease, disability or shock, including death at any time resulting therefrom, mental anguish and mental injury,
(2) false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention or malicious prosecution.
(3) libel, slander, defamation of character, humiliation or in-

vasion of the rights of privacy, unless arising out of advertising activities,
which occurs during the policy period.

L. PREMIUM BASIS:
As used as a premium basis:

(1) "admissions" means the total number of persons, other than employees of the NAMED INSURED, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(2) "cost" means the total cost to the NAMED INSURED with respect to operations performed for the NAMED INSURED during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due.

(3) "receipts" means the gross amount of money charged by the NAMED INSURED for such operations by the NAMED INSURED or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the NAMED INSURED collects as a separate item and remits directly to a governmental division;

(4) "remuneration" means the entire remuneration earned during the policy period by all employees of the NAMED INSURED, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company.

(5) "sales" means the gross amount of money charged by the NAMED INSURED or by others trading under his name for all

goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the NAMED INSURED and such others collect as a separate item and remit directly to a governmental division.

M. PRODUCTS HAZARD:
Includes PERSONAL INJURY and PROPERTY DAMAGE arising out of the INSURED'S products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the INSURED and after physical possession of such products has been relinquished to others.

N. PROPERTY DAMAGE:
The term PROPERTY DAMAGE wherever used herein means:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period.

O. ULTIMATE NET LOSS:
Means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the INSURED is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the INSURED with respect to damages covered hereunder. "ULTIMATE NET LOSS" does not include (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the INSURED, (b) office costs and expenses of the INSURED and salaries and expenses of employees of the INSURED or (c) general retainer fees of counsel retained by the INSURED.

## CONDITIONS

A. Premium Computations: The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the NAMED INSURED shall pay the excess to the COMPANY; if less, the COMPANY shall return to the NAMED INSURED the unearned portion paid by such INSURED. The NAMED INSURED shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the COMPANY at the end of the policy period, as the COMPANY may direct.

B. Inspection and Audit: The COMPANY shall be permitted but not obligated to inspect the NAMED INSURED'S property and operations at any time. Neither the COMPANY'S right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the NAMED INSURED or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.
The COMPANY may examine and audit the NAMED INSURED'S books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

C. Severability of Interest: The term "INSURED" is used severally and not collectively except with respect to Insuring Agreement II (UNDERLYING LIMITS—RETAINED LIMITS), Insuring Agreement III (LIMITS OF LIABILITY) and Condition H (Other Insurance). The inclusion in this policy of more than one INSURED shall not operate to increase the COMPANY'S total liability for all INSURED'S covered by this policy beyond the limits set forth in Item 3.1, 3.1.B and 3.II of the Declarations.

D. Notice of Occurrence, Claim or Legal Proceeding: Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.
The INSURED shall give like notice of any claim made or legal proceeding commenced on account of such occurrence. If legal proceedings are begun, the INSURED, when requested by the COMPANY, shall forward to it each paper thereon, or a copy thereof, received by the INSURED or the INSURED'S representatives, together with copies of reports of investigations made by the INSURED with respect to such claim proceedings.

E. Action Against COMPANY: No action shall lie against the COMPANY unless, as a condition precedent thereto, the INSURED shall have fully complied with all the terms of this policy, nor until the

amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the COMPANY.

F. Appeals: In the event the INSURED or the INSURED'S underlying insurer elects not to appeal a judgment in excess of the RETAINED LIMIT, the COMPANY may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the COMPANY for ULTIMATE NET LOSS exceed the amount set forth in Insuring Agreement II (UNDERLYING LIMIT—RETAINED LIMIT) and Insurance Agreement III (LIMITS OF LIABILITY) for any one OCCURRENCE plus the taxable costs, disbursements and interests incidental to such appeal.

G. Payment of ULTIMATE NET LOSS: Coverage under this policy shall not apply unless and until the INSURED, or the INSURED'S underlying insurer, shall be obligated to pay the amount of the UNDERLYING LIMIT or RETAINED LIMIT on account of PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE. When the amount of ULTIMATE NET LOSS has finally been determined, the COMPANY shall promptly indemnify the INSURED the amount of ULTIMATE NET LOSS falling within the terms of this policy.

H. Other Insurance: If other collectible insurance with any other INSURER is available to the INSURED covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of the RETAINED LIMIT and LIMIT OF LIABILITY hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If collectible insurance under any other policy(ies) of the INSURED is available to the INSURED, covering a loss also covered hereunder (other than underlying insurance of which the insurance afforded by this policy is in excess), the COMPANY'S total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies). If other collectible insurance under any policy(ies) of the COMPANY is available to the INSURED, the ULTIMATE NET LOSS as the result of any one OCCURRENCE not covered by underlying insurance shall not be cumulative.

I. Underlying Insurance: If underlying insurance applicable in any one OCCURRENCE is exhausted by payment of judgment or settlement on behalf of the INSURED, the COMPANY shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the INSURED resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another insurer.

J. Bankruptcy and Insolvency: In the event of the bankruptcy or insolvency of the INSURED or any entity comprising the INSURED, the

COMPANY shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

**K.** Subrogation: In the event of any payment under this policy, the COMPANY shall be subrogated to all the INSURED'S rights of recovery against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The amount recovered as subrogation shall be apportioned in the inverse order of payment of ULTIMATE NET LOSS to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

**L.** Changes: Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the COMPANY from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the COMPANY.

**M.** Assignment: Assignment of interest under this policy shall not bind the COMPANY until its consent is endorsed hereon; if, however, the NAMED INSURED shall be adjudged bankrupt or insolvent, this policy shall cover the NAMED INSURED'S legal representative as NAMED INSURED; provided that notice of cancellation addressed to the INSURED named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**N.** Sole Agent Clause: The NAMED INSURED as stated in the DECLARATIONS shall be primarily responsible for payment of all premiums and shall act on behalf of all other INSUREDS with respect to the giving and receipt of any return premium that may become payable under this policy.

**O.** Cancellation: This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date

of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED.

If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

**P.** Maintenance of Underlying Insurance: It is warranted by the Insured that the underlying policy(ies) listed in Schedule A, or renewals or replacements thereof not more restrictive in coverage, shall be maintained in force during the currency of this policy, except for any reduction in the aggregate limit(s) contained therein solely by payment of claims in respect of OCCURRENCES happening during the period of this policy. In the event of failure by the INSURED so to maintain such policy(ies) in force, the Insurance afforded by this policy shall apply in the same manner it would have applied had such policy(ies) been so maintained in force.

**Q.** Employers' Liability—Common Law Defenses: As a condition to the recovery of any loss under this policy, with respect to personal injury to or the death of any employee arising out of and in the course of employment by the NAMED INSURED, the NAMED INSURED warrants that it has not and will not abrogate its common law defenses under any worker's compensation or occupational disease law rejection thereof, or otherwise in the event the NAMED INSURED should, at any time during the policy period, abrogate such defense, such insurance as is afforded with respect to such employee shall automatically terminate at the same time.

**R.** Terms of Policy Conformed to Statute: Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.



IN WITNESS WHEREOF, the Transit Casualty Company has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

NO. UMB950239

STOCK COMPANY

DECLARATIONS — UMBRELLA LIABILITY POLICY

New

Renewal of No.

## ⸻it Casualty Company

⸻ BOULEVARD   LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A stock insurance company, herein called the company)



Item 1. Named Insured:   W. R. Grace & Company

Address:   1114 Avenue of the Americas
New York, New York 10036

Item 2. Policy Period: From   June 30, 1982   To:   June 30, 1983
12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 3. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this
policy having reference thereto.

I. $ See Endt #1 Single limit any one OCCURRENCE combined PERSONAL INJURY, PROPERTY DAMAGE and
ADVERTISING INJURY or DAMAGE in excess of:

A. The amount recoverable under the underlying insurance as set out in Schedule A attached or

B. $See Endt #1 Ultimate net loss as the result of any one occurrence not covered by said underlying
insurance.

II. $See Endt #1 Limit in the aggregate for each annual period with respect to:

A. The PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined, or

B. Occupational Disease sustained by employees of the INSURED.

Item 4. Premium:   $95,000.

Advance Premium $95,000.   Rate   Premium Basis

20% $.0525 per $1,000 Sales

Minimum Premium $95,000.

Items 5. Warranted that, during the past three years, no insurer has cancelled insurance issued to the NAMED INSURED,
similar to that afforded hereunder, unless otherwise stated herein.

Countersigned by:

10/04/82

# ENDORSEMENT   W. R. GRACE & COMPANY

Effective date:  June 30, 1982

It is hereby agreed that Item 3, Limits of Liability, is completed to read as follows:

1.  $1,000,000 single limit any one occurrence part of $5,000,000 single limit any one occurrence combined Personal Injury, Property Damage and Advertising Injury or Damage in excess of:

    A.  the amount recoverable under the underlying insurance as set out in Schedule A attached, or

    B.  $25,000 ultimate net loss as the result of any one occurrence not covered by said underlying insurance.

2.  $1,000,000 single limit in the aggregate part of $5,000,000 single in the aggregate for each annual period with respect to:

    A.  the Products Hazard or Completed Operations Hazard or both combined, or

    B.  Occupational Disease sustained by employee of the Insured.

Countersignature Date:        October 4,        19 82

AUTHORIZED REPRESENTATIVE

# ENDORSEMENT    W.R. GRACE & COMPANY

POLICY NO. IRB 950-.
END'T. NO. 2

Effective date:  June 30, 1982

In consideration of the premium charged, it is agreed that the coverage
provided under this policy is warranted to the same terms and conditions
as policy issued by Lloyd's of London & Other British Ins. Co's. through
page no. 9 of the cover note, and all preprinted terms and conditions contained
herein are deleted to the extent that they vary or are inconsistent with
the terms and conditions of the above mentioned policy.

Countersignature Date:      October 4,        19 82              Authorized Representative
TV 9820
DCG

# ENDORSEMENT.    W.R. GRACE & COMPANY

POLICY NO.   UMB 950-2
ENDT. NO.    3

Effective date:  June 30, 1982

It is understood and agreed that Item 1 of the Declarations is amended, in part, to read as follows:

W.R. Grace & Co. and/or subsidiary, associated, affiliated companies and/or organizations, owned, controlled and/or managed companies as now or hereinafter constituted.

Countersignature Date:      November 4,      19 82            Authorized Representative
TV mcs

        mcc