# 3A
# PART 3

Pacific Employers

Policy No.  XMO 01 72 04

06/30/84 – 06/30/85

**INA**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| W.R. Grace & Co., Etal | | | 5 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XMO | 01 72 04 | 6/30/84 to 6/30/85 | 6/30/84 |
| Issued By (Name of Insurance Company) | | | |
| Pacific Employers Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the polic

In consideration of the premium charged for this policy it is agreed that

in the event of cancellation for other than non-payment of premium,

sixty (60) days notice will be sent to the Insured.

6/14/85

Authorized Agent

CC-1E15  Ptd. in U.S.A.

ORIGINAL

**INA**   PACIFIC EMPLOYERS INSURANCE COMPANY, LOS ANGELES, CALIFORNIA

| EXCESS BLANKET CATASTROPHE LIABILITY POLICY | DECLARATIONS |
|---|---|

XMO  01 72 04

**Named Insured** W.R. GRACE & CO., ETAL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANIZATIONS OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED PLUS JOINT VENTURES AS EXPIRING

**Address** GRACE PLAZA, 1114 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK 10036

12:01 A.M., standard time at the address of the Named Insured as stated herein

Policy Period: From   6/30/84   to   6/30/85

Audit Period: Annual, unless otherwise stated   5.85% RATE ON GROSS SALES

Endorsements attached to policy at inception:   Nuclear Energy Liability Exclusion

---

**LIMITS OF LIABILITY**

PEIC'S LIMIT OF LIABILITY:

ITEM 1.  $  250,000.
PTO  5,000,000.

arising out of any one occurrence because of personal injury, property damage or advertising injury or any combination thereof.

ITEM 2. PTO  250,000.
5,000,000.

arising out of all occurrences during each policy year because of the products hazard, or the completed operations hazard, or both combined.

INSURED'S RETAINED LIMIT:

Underlying Insurance, or

ITEM 3.  $  100,000.

because of personal injury, property damage or advertising injury arising out of any one occurrence not within the terms of coverage of underlying insurance but within the terms of the coverage of this insurance.

**PREMIUM COMPUTATION**

| Estimated | Rate per | Total Advance Premium |
|---|---|---|
| $27,000. | 5.85% PER 100 GROSS SALES WHICH IS 100% OF 5,000,000. LAYER PRICE | $27,000.00 |

MINIMUM PREMIUM $  10,000.

in the event of cancellation by the Named Insured, PEIC shall receive and retain not less than $ 10,000.   as the Minimum Premium

8/1/84

Countersigned By _____
Authorized Agent

LO-6993 Ptd in U.S.A.

# INA

## PACIFIC EMPLOYERS INSURANCE COMPANY, LOS ANGELES, CALIFORNIA

after such operations have been completed or abandoned and
from premises owned by or rented to the Insured. "Operations"
als, parts or equipment furnished in connection therewith.
all be deemed completed at the earliest of the following times:
perations to be performed by or on behalf of the Insured under
ct have been completed,
erations to be performed by or on behalf of the Insured at the

EXCESS BLANKET CATASTROPHE

LIABILITY POLICY

### A Stock Insurance Company, herein called PEIC

In consideration of the premium to be paid, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms o
policy, agrees with the Named Insured as follows:

## INSURING AGREEMENT

**Coverage A—Personal Injury Liability**
**Coverage B—Property Damage Liability**
**Coverage C—Advertising Liability**

PEIC will indemnify the Insured for ultimate net loss in excess of the re-
tained limit hereinafter stated which the Insured shall become legally
obligated to pay as damages because of

    A. personal injury or
    B. property damage or
    C. advertising injury

to which this insurance applies, caused by an occurrence, and

(1) With respect to any personal injury, property damage or advertising
injury not within the terms of the coverage of underlying insurance but
within the terms of coverage of this insurance; or

(2) If limits of liability of the underlying insurance are exhausted because of
personal injury, property damage or advertising injury during the period
of this policy

    PEIC will

    (a) have the right and duty to defend any suit against the Insured seeking
damages on account of such personal injury, property damage or ad-
vertising injury, even if any of the allegations of the suit are ground-
less, false or fraudulent, and may make such investigation and
settlement of any claim or suit as it deems expedient; but PEIC shall
not be obligated to pay any claim or judgment or to defend any suit

after PEIC's limit of liability has been exhausted by paymer
judgments or settlements;

(b) in addition to the amount of ultimate net loss payable: \

    (i) pay all expenses incurred by PEIC, all costs taxed against
Insured in any suit defended by PEIC and all interest on
entire amount of any judgment therein which accrues after a
of the judgment and before PEIC has paid or tendered o
posited in court that part of the judgment which does not ex
the limit of PEIC's liability thereon;

    (ii) pay premiums on appeal bonds required in any suit, premiur
bonds to release attachments in any such suit for an amount
in excess of the applicable limit of liability of this policy,
the cost of bail bonds required of the Insured because of
dent or traffic law violation arising out of the use of any vei
to which this policy applies but PEIC shall have no obligatio
apply for or furnish any such bonds;

    (iii) pay reasonable expenses incurred by the Insured at PE
request in assisting PEIC in the investigation or defense of
claim or suit, including actual loss of earnings not to ex
$50 per day.

In jurisdictions where PEIC may be prevented by law or otherwise t
carrying out this agreement, PEIC will indemnify the Insured for
expense incurred with its written consent in accordance with this provi

## PERSONS OR ENTITIES INSURED

(1) The Named Insured is the organization(s) named in the declarations of
this policy and includes:

    (a) any subsidiary company (including subsidiaries thereof) and any other
company under their control and active management at the inception
date of this policy;

    (b) new organizations acquired by the Named Insured during the policy
period, through consolidation, merger, purchase of the assets of, or
assumption of control and active management; provided such acquisi-
tion or assumption is reported to PEIC within 60 days after it is
effected and provided further such acquisition is endorsed on this
policy;

    (c) If the Named Insured in the declarations is a partnership or joint
venture, any partner or member thereof is included as a Named
Insured but only with respect to his liability as a partner or member
of such partnership or joint venture.

(2) Each of the following is an Insured under this policy to the extent set
forth below:

    (a) any person, organization, trustee or estate to whom or to which the

Named Insured is obligated by virtue of a written contract or per
to provide insurance such as is afforded by the terms of this pol
but only with respect to operations by or on behalf of the Nar
Insured or to facilities of or facilities used by the Named Insured
then only to the extent of the coverage required by such contract
for the limits of liability specified in such contract, but in no ev
for insurance not afforded by this policy nor for limits of liabilit
excess of the applicable limits of liability of this policy;

    (b) at the option of the Named Insured and subject to the terms of
coverage of this insurance, any additional Insured(s) included in
underlying insurance listed in Schedule A, but only to the ext
that insurance is provided for such additional Insured(s) thereun

    (c) except with respect to the ownership, maintenance or use, incluc
loading or unloading, of automobiles or aircraft,

        (i) any officer, executive, employee, director or stockholder of
Named Insured while acting on behalf of such Named Insur

        (ii) any person or organization while acting as real estate mana
for the Named Insured;

LD-5802

### PERSONS OR ENTITIES INSURED
(continued)

(d) any person while using, with the permission of the Named Insured, any automobile or aircraft owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission, and any officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured but only while such automobile or aircraft is being used in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under this paragraph (d):

   (i) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place;

   (ii) to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee (of

whom the Named Insured is a sub-lessee) thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

   (iii) to any manufacturer of aircraft, aircraft engines or aviation accessories, or any aviation sales, service or repair organization or airport or hangar operator or their respective employees or agents.



### RETAINED LIMIT—PEIC'S LIMIT OF LIABILITY

Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain injury or damage, or (3) claims made or suits brought because of personal injury, property damage, or advertising injury, PEIC's liability is limited as follows:

With respect to personal injury, property damage or advertising injury, or any combination thereof, PEIC's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of:

(a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured; or

(b) the amount specified in Item 3. of the Limits of Liability section of the declarations because of personal injury, property damage or advertising injury not within the terms of the coverage of the underlying insurance listed in Schedule A;

then for an amount not exceeding the amount specified in Item 1. of a Limits of Liability section of the declarations arising out of any one occurrence.

There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of PEIC, because of

either the products hazard or the completed operations hazard, or both combined, arising out of all occurrences during each policy year shall not exceed the amount specified in Item 2. of the Limits of Liability section of the declarations.

If the aggregate limits of liability of the underlying insurance listed in Schedule A are reduced or exhausted because of personal injury, property damage or advertising injury during the period of this policy, PEIN will, subject to PEIC's limit of liability stated above, continue such coverage as is afforded by such listed underlying insurance for the remainder of the policy year of such underlying insurance in excess of the reduced or exhausted limits.

For the purpose of determining the limits of PEIC's liability, (1) all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence, and (2) with respect to advertising injury, all injury arising out of any advertisement, publicity article, broadcast or telecast or any combination thereof involving the same injurious material or act, regardless of the frequency of repetition thereof or the number or kind of media used, whether claim is made by one or more persons, shall be deemed to arise out of one occurrence.

### POLICY PERIOD, TERRITORY

This policy applies to personal injury, property damage or advertising injury which occurs anywhere during the policy period.

### EXCLUSIONS

This policy does not apply:

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to property damage to (1) property owned by the Insured, or (2) the Insured's products arising out of such products or any part of such products, or (3) work performed by or on behalf of the Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(c) to loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an insured;

(d) to damages claimed for the withdrawal, inspection, repair, replacement or loss of the use of the Insured's products or work completed by or for the Insured or of any property of which such products or work form a part,

if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(e) to advertising injury resulting from (1) failure of performance of contract, (2) infringement of trade mark, service mark or trade name by use thereof as the trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

(f) to property damage in accordance with the provisions of the property damage exclusion endorsement attached hereto;

(g) as respects parts (b), (c), and (d) of the definition of personal injury, to injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the Named Insured;

(h) as respects part (c) of the definition of personal injury, to injury arising out of any publication or utterance, if the first injurious publication or utterance of the same or similar material by or on behalf of the Named Insured was made prior to the effective date of this policy;

(i) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

"advertising injury" means libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy, arising out of the Insured's advertising activities;

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"completed operations hazard" includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(a) when all operations to be performed by or on behalf of the Insured under the contract have been completed,

(b) when all operations to be performed by or on behalf of the Insured at the site of the operations have been completed, or

(c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operation which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete shall be deemed completed.

The completed operations hazard does not include personal injury or property damage arising out of (1) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof, (2) the existence of tools, uninstalled equipment or abandoned or unused materials;

"damages" means only those damages which are payable because of personal injury, property damage or advertising injury to which this insurance applies and includes damages for (1) death and for care and loss of services resulting from personal injury, (2) loss of use of property resulting from property damage, and (3) advertising injury;

"Insured" means any person or organization qualifying as an Insured under the Persons or Entities Insured section of this policy. The insurance afforded applies separately to each Insured against whom claim is made or suit is

brought, except with respect to the limits of PEIC's liability;

"Insured's products" means goods or products manufactured, sold, handled or distributed by the Insured or by others trading under his name, includir any container thereof (other than a vehicle) but "Insured's products" shal not include a vending machine or any property other than such a container rented to or located for use of others but not sold;

"Named Insured" means the organization(s) named in the declarations of this policy;

The word "Insured" includes the Named Insured;

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the Insured;

"personal injury" means, (a) bodily injury; (b) false arrest, detention or in prisonment or malicious prosecution; (c) the publication or utterance of libel or slander or of other defamatory or derogatory material, or a publica tion or utterance in violation of an individual's right of privacy, except whe any of the foregoing of this part (c) arises from publications or utterances i the course of or related to advertising, broadcasting or telecasting activitie conducted by or on behalf of the Named Insured; (d) wrongful entry o eviction, or other invasion of the right of private occupancy; (e) assault an battery not committed by or at the direction of the Insured, unless com mitted for the purpose of protecting persons or property;

"products hazard" includes bodily injury and property damage arising out o the Insured's products or reliance upon a representation or warranty made a any time with respect thereto, but only if the bodily injury or propert damage occurs away from premises owned by or rented to the Insured and after physical possession of such products has been relinquished to others;

"property damage" means (1) physical injury to or destruction of tangibl property which occurs during the policy period, including the loss of us thereof at any time resulting therefrom, or (2) loss of use of tangible pro perty which has not been physically injured or destroyed provided such los of use is caused by an occurrence during the policy period;

"ultimate net loss" means the sum actually paid or payable in cash in th settlement or satisfaction of losses for which the Insured is liable either by adjudication or compromise with the written consent of PEIC, after making proper deduction for all recoveries and salvages collectible, but excludes al loss expenses and legal expenses (including attorneys' fees, court costs anc interest on any judgment or award) and all salaries of employees and office expenses of the Insured, PEIC or any underlying insurer so incurred.

## CONDITIONS

**1. Premium**

The premium for this policy shall be as stated in the Declarations.

If the premium as stated in the declarations is an advance premium, it shall be computed in accordance with the premium computation endorsement attached to the policy. If the Named Insured includes more than one person, partnership or organization they shall be jointly and severally liable for the premium for this policy.

**2. Inspection and Audit**

PEIC shall be permitted but not obligated to PEIC's inspect the Named Insured's property and operations at any time. Neither PEIC's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation. PEIC may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an occurrence, reasonably likely to exceed the retained limit, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to PEIC or any of its authorized agents as soon as practicable.

(b) if claim is made or suit is brought against the Insured, the Insured shall immediately forward to PEIC every demand, notice, summons

or other process received by him or his representative.

(c) The Insured shall cooperate with PEIC and upon PEIC's request assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person o organization who may be liable to the Insured because of persona injury or property damage or advertising injury with respect to which insurance is afforded under this policy; and the Insured shal attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not except at his own cost, voluntarily make any payment, assume any obligation or incur any expense; however, if the amount of ultimate net loss becomes certain either through trial court judgment or agreement among the Insured, the claimant and PEIC, then, the Insured may pay the amount of ultimate net loss to the claimant to effect settlement and, upon submission of due proof thereof, PEIC shall indemnify the Insured for that part of such payment which is in excess of the retained limit, or, PEIC will, upon request of the Insured, make such payment to the claimant on behalf of the Insured.

(d) The Named Insured shall promptly reimburse PEIC for any amount of ultimate net loss paid on behalf of any Insured within the retained limit.

(e) As this policy is excess insurance, the Insured warrants that coverage under the uninsured motorist laws will be maintained during the policy period. It is agreed that the Named Insured shall promptly reimburse PEIC for any amount of ultimate net loss paid on behalf of any Insured as respects any payment made under an uninsured motorist law, or any similar law.

**4. Appeals**

If the Insured or the Insured's underlying insurer elects not to appeal a judgment in excess of the retained limit, PEIC may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of PEIC for ultimate net loss exceed the amount specified in the Limits of Liability section of the Declarations plus the taxable costs, disbursements and interest incidental to such appeal.

**5. Action Against PEIC**

No action shall lie against PEIC unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and PEIC. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join PEIC as a co-defendant in any action against the Insured to determine the Insured's liability, nor shall PEIC be impleaded by the Insured or his Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve PEIC of any of its obligations hereunder.

**6. Other Insurance**

If collectible insurance with any insurer is available to the Insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over PEIC's limit of liability provided in this policy.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, PEIC shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7. Subrogation**

In the event of any payment under this policy, PEIC shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Any amount so recovered shall be apportioned as follows:

Any interest (including the Insured's) having paid an amount in excess of the retained limit plus PEIC's limit of liability hereunder shall be reimbursed first to the extent of actual payment. PEIC shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the Insured or any underlying insurer, as their interest may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by PEIC, it shall bear the expenses thereof.

**8. Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop PEIC from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**9. Assignment**

Assignment of interest under this policy shall not bind PEIC until its consent is endorsed hereon; if, however, the Named Insured shall die, or be adjudged bankrupt or insolvent, such insurance as is afforded by this policy shall apply (a) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (b) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy**

If this policy is issued for a period of three years, the limits of PEIC's liability shall apply separately to each consecutive policy year thereof.

**11. Maintenance of Underlying Policies**

The Named Insured shall maintain the underlying policies (and renewals thereof) with limits of liability as stated in Schedule A in full effect during this policy period, except for any reduction or exhaustion of the aggregate limit or limits contained in such policies solely by payment of claims arising out of occurrences which happen during this policy period. Failure of the Named Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure PEIC shall be liable only to the extent that it would have been liable had the Named Insured complied therewith.

The Named Insured shall give PEIC written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any underlying policy, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer' liability.

**12. Cancellation**

This policy may be cancelled by the Named Insured by surrender thereof to PEIC or any of its authorized agents or by mailing to PEIC written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by PEIC by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by PEIC shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If PEIC cancels, earned premium shall be computed pro rata. When this policy insures more than one Named Insured cancellation may be effected by the first named of such Named Insured for the account of all Insureds. Notice of cancellation by PEIC to the first Named Insured shall be deemed notice to all Insureds and payment any unearned premium to such first named Named Insured shall be for the account of all Insureds. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**13. Acceptance**

By acceptance of this policy, the Insured agrees that this policy embodies all agreements existing between himself and PEIC or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the PACIFIC EMPLOYERS INSURANCE COMPANY has caused this policy to be signed by its President and a Secretary at Los Angeles, California, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

DENNIS C. POULSEN, Secretary

BERNARD A. BUGE, JR., President

ENDORSEMENT  #1                              BE17a

Attached to and forming part of Policy Number _____ XMO 01 72 04 _____

issued to ____ W.R. GRACE & CO., ETAL _____ by __ PACIFIC EMPLOYERS INSURANCE COMPANY

Date of Endorsement ____ 6/30/84 _____ located __ SAN FRANCISCO, CA. _____
                                                              (City and State)

WITH RESPECT TO THE LEASES DATED DECEMBER 30, 1981 BETWEEN GRACE NATURAL
RESOURCES CORP. AND MERCANTILE LEASING COMPANY LIMITED AND BETWEEN TRG
DRILLING CORP. AND MERCANTILE LEASING COMPANY LIMITED, IT IS AGREED THAT
THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

    (1)   OWNER AS JOINT INSURED:
            MERCANTILE LEASING COMPANY LIMITED
            ELIZABETHAN HOUSE
            GREAT QUEEN STREET
            LONDON WC2B 5DP ENGLAND

    (2)   IMMEDIATE NOTICE TO OWNER FOR ANY MATERIAL CHANGE IN
        POLICY FOR WHICH LEASEE IS RESPONSIBLE UNDER INSURANCE
        CLAUSE 5 (A) OF LEASES, ON FILE WITH THIS COMPANY.

    (3)   60 DAY NOTICE TO OWNER IF:

        (a)   INSURER CANCELS THE INSURANCE WITH RESPECT
             TO ANY OF THE RIGS.

        (b)   SUCH INSURANCE COVERAGE IS REDUCED.

        10 DAY NOTICE TO OWNER IF SUCH INSURANCE IS ALLOWED TO
        LAPSE FOR NON-PAYMENT OF PREMIUM.

All other terms and conditions of this policy remain unchanged.

8/9/84

_____
(Agent)

DCW-8156  Ptd in U.S.A

ENDORSEMENT #2          132          BE17a

Attached to and forming part of Policy Number ___XCC 01 22 83___

issued to ___W.R. GRACE & CO., ETAL___ by ___PACIFIC EMPLOYERS INSURANCE COMPANY___

Date of Endorsement ___6/30/84___ located ___SAN FRANCISCO, CA.___
                                                                    (City and State)

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT WITH RESPECT
TO THE LEASES DATED MARCH 30, 1982 BETWEEN GRACE NATURAL RESOURCES CORP.
AND LBI LEASING LIMITED AND BETWEEN TRG DRILLING CORP. AND LBI LEASING LIMITED,
THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

    (1)  OWNER AS JOINT INSURED:
          LBI LEASING LIMITED
          40-66 QUENN VICTORIA ST.
          LONDON EC4P 4EL, ENGLAND

    (2)  THIRTY DAYS PRIOR NOTICE OF CANCELLATION
          OR A MATERIAL CHANGE IN COVERAGE WILL
          BE PROVIDED TO LBI LEASING LIMITED.
          (10 DAY NOTICE IF COVERAGE CANCELLED FOR
           NON-PAYMENT OF PREMIUM).

THIS ENDORSEMENT TO TAKE EFFECT ON THE 30TH DAY OF JUNE 1984.

All other terms and conditions of this policy remain unchanged.

                                          (Agent)

8/9/84

DCW-8156  Ptd in U.S.A

# INA

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| W.R. Grace & Co., Etal | | | | 4 |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| XMO | 01 72 04 | 6/30/84 to 6/30/85 | | 6/30/84 |
| Issued By (Name of Insurance Company) | | | | |
| Pacific Employers Insurance Company | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the pol

Follow Form Endorsement

"It is agreed that except only with respect to policy period, premium
and limits of liability, this policy is hereby amended to follow all the
terms, conditions, definitions and exclusions of the first layer Umbrella
policy, (London and various British) KYO17582 and all renewals and replacements
thereof. It is further agreed that all pre-printed terms and conditions
hereon are deleted to the extent that they vary from or are inconsistent
with the terms and conditions of the first layer Umbrella."

6/14/85

_____
Authorized Agent

CC-1E15  Ptd. in U.S.A.

ORIGINAL

# Lloyd's

## Policy No.  KYO 17782

### 06/30/82 – 06/30/85

COPY

VOL XVI, TAB 4

No:............

**Whereas** W.R. GRACE AND CO (as more fully described
in Item 1 (a) of the declarations attached hereto
of 1114 Avenue of the Americas, New York N.Y.10036

91.645 of 56.25% of the
limits stated herein

hereinafter called the Assured;   having   paid U.S. $000,000.00
Premium or Consideration to Us; the undersigned Assurers to
............................................ indemnify the Assured in
respect of EXCESS UMBRELLA LIABILITY as per wording attached
hereto,

during the period commencing at   **Thirtieth**          day of

**June**            **1982** , and ending at **Thirtieth**

day of   **June**       **1985** . both days at 12.01 A.M.
Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company**
for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors,
Administrators and Assigns, all such loss as above stated, not exceeding ........ NINETY-ONE DECIMAL
SIX FOUR PER CENT OF FIFTY-SIX DECIMAL TWO FIVE PER CENT of the limits stated
herein,

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that
in proportion to the several sums by each of us subscribed against our respective names not exceeding the several
sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or
otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the
Assurers have hereunto subscribed my name on their behalf this   FOURTH          day of
MAY           19 84

NCB/sc

DIRECTOR

H. S. WEAVERS (UNDERWRITING AGENCIES LTD.

U

H.S.W.(U)A.

D₁

C₂
or
nu

..

U.S.A.

**4% TAX CLAUSE**
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

Notice is hereby given that the Underwriters have agreed to allow for the purpose of paying the Federal Excise Tax 4% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Underwriters will deduct 4% from the amount of the return and the Assured or his agent should take steps to recover the Tax from the U.S. Government.

19/5/66
N.M.A. 1546

U.S.A.

H.S.W.(U)A.

RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
(Approved by Lloyd's Underwriters' Non-Marine Association)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

3/2/64
I.M.A. 1477

H.S.W.(U)A.

U.S.A.

NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability— Direct (Limited) applies.*

This policy*

does not apply:—

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
"nuclear facility" means
   (a) any nuclear reactor,
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if, at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
N.M.A. 1256

ADDENDUM NO 1

Attaching to and forming part of Policy No. KYO17782

Issued to:      W.R.GRACE & CO.

It is hereby understood and agreed that this policy is extended to cover
"Employee Benefit Liability," as more fully defined in the Underlying
Umbrella Policy(ies) as referred to in the wording of this policy.

Notwithstanding anything stated above to the contrary, it is understood
and agreed that the above extension in coverage shall not apply to claims
based upon the Employee Retirement Income Security Act of 1974 Public
Law 93-406 commonly referred to as the Pension Reform Act of 1974 and
amendments thereto, or similar provisions of any Federal, State or Local
Statutory Law or Common Law.

All other terms and conditions of the Policy remaining unchanged.

ADDENDUM NO 2

Attaching to and forming part of Policy No. KY017782

Issued to:        W.R. GRACE & CO.

### ADJUSTMENT CLAUSE.

Notwithstanding anything stated herein to the contrary, it is hereby agreed that the premium for this Policy comprises three annual Minimum and Deposit Premiums subject to adjustment at each anniversary with the Earned Premium to be calculated at the rate of $0.0350 per $1,000 of the Assured's Gross Sales.

The Assured shall declare to Underwriters as soon as possible after each anniversary date the total amount of his Gross Sales during the preceding Policy period and should the Earned Premium for said annual period exceed the Minimum and Deposit Premium paid for such period then the balance shall be immediately payable by the Assured to the Underwriters.

Notwithstanding anything contained herein to the contrary, if this Policy shall be cancelled by the Assured, Underwriters shall be entitled to the Earned Premium for the period that this Policy has been in force or the short rate proportion of the Minimum Premium whichever is the greater.   If this Policy is cancelled by Underwriters they shall be entitled to the Earned Premium for the period that this Policy has been in force or Pro Rata of the Minimum Premium whichever is the greater.

All other terms and conditions of the Policy remaining unchanged.

ADDENDUM NO. 3

Attaching to and forming part of Policy No. KY017782

Issued to:          W.R.GRACE & CO.

It is hereby understood and agreed that the premium set forth herein is the
Minimum and Deposit Premium for the period 30th June,1982 to 30th June, 1985.
Further amounts become due and payable as follows:-

| Date Due | Minimum and Deposit Premium |
|---|---|
| 30th June,1983 | $ 154,642.50 part of $900,000 |
| 30th June,1984 | $ 167,529.37 part of $900,000 |

All other terms and conditions of the Policy remaining unchanged.
PSGB/sc

ADDENDUM NO 4

Attaching to and forming part of Policy No. KYO17782

Issued to      W.R. GRACE & CO.

It is hereby understood and agreed that the following attached clause shall
apply in respect of the Assured's oil and/or gas operations on, over and/or
under water:

### SEEPAGE, POLLUTION AND CONTAMINATION EXCLUSION CLAUSE No. 2
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

H.S.W.(U)A.

This Insurance does not cover any liability for:
(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly
    or indirectly caused by seepage, pollution or contamination.
(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating
    substances.
(3) Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence
    caused by sub-surface operations of the Assured.
(4) Removal of, loss of or damage to sub-surface oil, gas or any other substance, the property
    of others.
(5) Fines, penalties, punitive or exemplary damages.
22/1/70.
N.M.A. 1684.

It is also understood and agreed that the following attached clause shall apply
in respect of the Assured's oil and/or gas operations other than those on, over
and/or under water:

### SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE NO. 1
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

H.S.W.(U)A.

This Insurance does not cover any liability for:
(1)  Removal of, loss of or damage to sub-surface oil, gas or any other substance, the property of others, provided
     always that this paragraph (1) shall not apply to any liability which would otherwise be covered under this
     Insurance for such removal, loss, or damage directly attributable to blow-out, cratering or fire of an oil or gas
     well owned or operated by, or under the control of, the Assured.
(2)  Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by sub-
     surface operations of the Assured.
(3)  Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by
     seepage, pollution or contamination, provided always that this paragraph (3) shall not apply to liability for
     Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of
     use of such property damaged or destroyed where such seepage, pollution or contamination is caused by a sudden,
     unintended and unexpected happening during the period of this Insurance.
(4)  The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the
     seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the
     period of this Insurance.
(5)  Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this
Insurance had this Clause not been attached.

22/1/70.
N.M.A. 1683

It is further understood and agreed that the following attached clause shall
apply in respect of all operations of the Assured, other than oil and/or gas
operations.

### INDUSTRIES, SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 3
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1)  Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by
     seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for
     Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of
     use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a
     sudden, unintended and unexpected happening during the period of this Insurance.
(2)  The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the
     seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the
     period of this Insurance.
(3)  Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this
Insurance had this Clause not been attached.

22/1/70.
N.M.A. 1685

Attaching to and forming part of Policy No. KYO17782

Reference No

63.75% (31.18% WALBROOK INSURANCE COMPANY LIMITED.
        (10.75% EL PASO INSURANCE COMPANY LIMITED
        (18.82% DART & KRAFT INSURANCE COMPANY LIMITED.
        ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED
        ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED.
        (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY
        ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED
        ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES INDUSTRIELLES S.A.
        Per:H.S.Weavers (Underwriting)Agencies Limited.                82LO3D40098'S

U)A.    11.95% LEXINGTON INSURANCE COMPANY                              B3-CTB-651-
                                                                       70336-20

        15.94% ENGLISH & AMERICAN INSURANCE COMPANY LIMITED.

H.S.W.IU)A

6577,706

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwrite (Hereinafter called the "Named Assured").

**A.**

## INSURING AGREEMENTS:

1.   COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:-

   (a)   imposed upon the Assured by law,

or (b)   assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:-

   (i)    Personal Injuries

   (ii)   Property Damage

   (iii)  Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

II.   LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of the respective ultimate net loss liability as follows:-

$ (as stated in Item 3 of the Declarations)    ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations)    in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured ~~and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies~~

H.S.Y.(U)A.                              J.S.W.(U)A.

of the Declarations)                    each occurrence – subject to a limit
                                        of

$ (as stated in Item 6          in the aggregate for each annual
  of the Declarations)          period during the currency of this
                                Policy, separately in respect of
                                Products Liability and in respect of
                                Personal Injury (fatal or non-fatal)
                                by Occupational Disease sustained
                                by any employees of the Assured ~~and~~
                                ~~in respect of any other hazard subject~~
                                ~~to an aggregate limit in the Underlying~~
                                ~~Umbrella Policies.~~

## CONDITIONS:

1.    PRIOR INSURANCE AND NON CUMULATION OF LIABILITY  –

It is agreed that if any loss covered hereunder is also covered in whole or in part unde
any other excess policy issued to the Assured prior to the inception date hereof the lin
of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by a
amounts due to the Assured on account of such loss under such prior insurance.

2.    MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE  –

This Policy is subject to the same terms, definitions, exclusions and conditions (except
as regards the premium, the amount and limits of liability and except as otherwise
provided herein) as are contained in or as may be added to the Underlying Umbrella
Policies stated in Item 2 of the Declarations prior to the happening of an occurrence
for which claim is made hereunder.  Should, however, any alteration be made in the
premium for the Underlying Umbrella Policies during the currency of this Policy Under
writers reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintain
in full effect during the Policy period without reduction of coverage or limits except
for any reduction of the aggregate limits contained therein solely by payment of claim
in respect of accidents and/or occurrences occurring during the period of this Policy o
by the operation of Condition C. of the Underlying Umbrella Policies.

3.    CANCELLATION  –

This Policy may be cancelled by the Named Assured or by the Underwriters or their
representatives by sending by registered mail notice to the other party stating when, r
less than ~~thirty (30)~~ sixty days thereafter, cancellation shall be effective.   The mailing of
notice as aforesaid by Underwriters or their representatives to the Named Assured at th
address shown in this Policy shall be sufficient proof of notice, and the insurance und
this Policy shall end on the effective date and hour of cancellation stated in the notic
Delivery of such written notice either by the Named Assured or by the Underwriters or
their representatives shall be equivalent to mailing.  –

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain
the customary short rate proportion of the premium for the period this Policy has been

been in force.   Notice of cancellation by the Underwriters shall be effective even though Underwriters make no payment or tender of return premium with such notice.

4.   NOTICE OF OCCURRENCE   -

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 8 of the Declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

5.   OTHER INSURANCE   -

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is specifically stated to be excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.   Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

6.   SERVICE OF SUIT CLAUSE   -

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made as stated in Item 9 of the Declarations, and that in any suit instituted against any one of them upon this Policy, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.   The person or firm named in Item 9 are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this Policy of insurance, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

P.O.355A (12/76)                                                                                          Page 3 of 4

DECLARATIONS:

ITEM 1. (a) Named Assured:- W.R. GRACE AND CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

(b) Address of Named Assured:- 1114 Avenue of the Americas, New York, N.Y. 10038.

ITEM 2. (a) Underlying Umbrella Policies:- 79DD1633C
KV017582

(b) Underlying Umbrella Insurers:- Certain Insurance Companies

ITEM 3. Underlying Umbrella Limits
(Insuring Agreement II):- U.S $ 5,000,000

ITEM 4. Underlying Umbrella Aggregate Limits
(Insuring Agreement II):- U.S. $ 5,000,000

ITEM 5. Limit of Liability
(Insuring Agreement II):- U.S. $ 20,000,000

ITEM 6. Aggregate Limit of Liability
(Insuring Agreement II):- U.S. $ 20,000,000

ITEM 7. Policy Period:- 30th June, 1982 to 30th June 1985
both days at 12.01 A.M. Local Standard Time

ITEM 8. Notice of Occurrence (Condition 4) to:-

Marsh & McLennan Inc.,
1221 Avenue of the Americas,
New York, N.Y. 10020.

ITEM 9: Service of Process (Condition 6) upon:-

Messrs Mendes and Mount.
3 Park Avenue,
New York, N.Y. 10016
U.S.A.

L.P.O.355A (12/76)

LONDON,

A/C W.R. GRACE AND CO

# Insurance Policy
# [Companies]

COPY

Date of expiry......30th June 1985.........................



# Lloyd's Policy

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters'),

**Now We the Underwriters** hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Now know Ye** that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of Us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE,
*General Manager*

LLOYD'S
POLICY SIGNING
OFFICE
EMBOSSMENT
APPEARS HERE
ON ORIGINAL
DOCUMENT

J(A)   NMA 2002 (11.4.74)

U.S.A.

RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT
(Approved by Lloyd's Underwriters' Non-Marine Association)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording world wide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

The
imm

In :        U.S.A.
Sche
          NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
                  (Approved by Lloyd's Underwriters' Non-Marine Association)
        *For attachment to insurances of the following classifications in the U.S.A., its Territories and*
In tl        *Possessions, Puerto Rico and the Canal Zone:—*
imm          *Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners*
          *or Contractors (including railroad) Protective Liability, Manufacturers and Contractors*
          *Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability,*
          *Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage*
          *Liability),*
*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—*
*Direct (Limited) applies.*

This policy*

                                                        does not apply:—

I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction
     (a)  with respect to which an insured under the policy is also an insured under a nuclear energy
         liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic
         Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an
         insured under any such policy but for its termination upon exhaustion of its limit of liability; or
     (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any
         person or organization is required to maintain financial protection pursuant to the Atomic
         Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not
         been issued would be, entitled to indemnity from the United States of America, or any agency
         thereof, under any agreement entered into by the United States of America, or any agency
         thereof, with any person or organization.
II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to
    immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease
    or death resulting from the hazardous properties of nuclear material and arising out of the operation of a
    nuclear facility by any person or organization.
III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the
    hazardous properties of nuclear material, if
     (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an
         insured or (2) has been discharged or dispersed therefrom;
     (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used,
         processed, stored, transported or disposed of by or on behalf of an insured; or
     (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of
         services, materials, parts or equipment in connection with the planning, construction,
         maintenance, operation or use of any nuclear facility, but if such facility is located within the
         United States of America, its territories or possessions or Canada, this exclusion (c) applies only
         to injury to or destruction of property at such nuclear facility.
IV.  As used in this endorsement:
    "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means
    source material, special nuclear material or byproduct material; "source material", "special nuclear
    material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in
    any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid,
    which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1)
    containing byproduct material and (2) resulting from the operation by any person or organization of any
    nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
    "nuclear facility" means
     (a)  any nuclear reactor,
     (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or
         plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging
         waste,
     (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear
         material if at any time the total amount of such material in the custody of the insured at the
         premises where such equipment or device is located consists of or contains more than 25 grams
         of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium
         235,
     (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal
         of waste,
    and includes the site on which any of the foregoing is located, all operations conducted on such site and all
    premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain
    nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
    With respect to injury to or destruction of property, the word "injury" or "destruction" includes all
    forms of radioactive contamination of property.
    It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject
to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

    *NOTE:—As respects policies which afford liability coverages and other forms of coverage in addition, the words
underlined should be amended to designate the liability coverage to which this clause is to apply.*

17/3/60
N.M.A. 1256

ADDENDUM NO 1

Attaching to and forming part of Policy No KYO17782

Issued to:        W.R. GRACE & CO.

It is hereby understood and agreed that this policy is extended to cover
"Employee Benefit Liability," as more fully defined in the Underlying
Umbrella Policy(ies) as referred to in the wording of this policy.

Notwithstanding anything stated above to the contrary, it is understood
and agreed that the above extension in coverage shall not apply to claims
based upon the Employee Retirement Income Security Act of 1974 Public
Law 93-406 commonly referred to as the Pension Reform Act of 1974 and
amendments thereto, or similar provisions of any Federal, State or Local
Statutory Law or Common Law.

All other terms and conditions of the Policy remaining unchanged.

ADDENDUM NO 2

Attaching to and forming part of Policy No KYO17782

Issued to:        W.R. GRACE & CO.

ADJUSTMENT CLAUSE.

Notwithstanding anything stated herein to the contrary, it is hereby agreed
that the premium for this Policy comprises three annual Minimum and Deposit
Premiums subject to adjustment at each anniversary with the Earned Premium
to be calculated at the rate of $0.0350 per $1,000 of the Assured's Gross
Sales.

The Assured shall declare to Underwriters as soon as possible after each
anniversary date the total amount of his Gross Sales during the preceding
Policy period and should the Earned Premium for said annual period exceed
the Minimum and Deposit Premium paid for such period then the balance shall
be immediately payable by the Assured to the Underwriters.

Notwithstanding anything contained herein to the contrary, if this Policy
shall be cancelled by the Assured, Underwriters shall be entitled to the
Earned Premium for the period that this Policy has been in force or the short
rate proportion of the Minimum Premium whichever is the greater.   If this
Policy is cancelled by Underwriters they shall be entitled to the Earned
Premium for the period that this Policy has been in force or Pro Rata of the
Minimum Premium whichever is the greater.

All other terms and conditions of the Policy remaining unchanged.

ADDENDUM NO 3

Attaching to and forming part of Policy No KYO17782

Issued to:            W.R.GRACE & CO.

It is hereby understood and agreed that the premium set forth herein is the
Minimum and Deposit Premium for the period 30th June, 1982 to 30th June, 1985.
Further amounts become due and payable as follows:-

| Date Due | Minimum and Deposit Premium | |
|---|---|---|
| 30th June, 1983 | $14,107.50 | part of $900,000 |
| 30th June, 1984 | $15,283.13 | part of $900,000 |

All other terms and conditions of the Policy remaining unchanged.

DECLARATIONS:

ITEM 1.    (a)    Named Assured:-    W.R. GRACE AND CO. and/or Subsidiary,
Associated, Affiliated Companies and/or
Organisations owned, controlled and/or managed
Companies as now or hereinafter constituted

(b)    Address of Named Assured:-    1114 Avenue of the Americas,
New York, N.Y. 10038.

ITEM 2.    (a)    Underlying Umbrella Policies:- 79DD1633C
KYO17582

(b)    Underlying Umbrella Insurers:- Certain Insurance Companies

ITEM 3.    Underlying Umbrella Limits
(Insuring Agreement II):-                    U.S $ 5,000,000

ITEM 4.    Underlying Umbrella Aggregate Limits
(Insuring Agreement II):-                    U.S. $ 5,000,000

ITEM 5.    Limit of Liability
(Insuring Agreement II):-                    U.S. $ 20,000,000

ITEM 6.    Aggregate Limit of Liability
(Insuring Agreement II):-                    U.S. $ 20,000,000

ITEM 7.    Policy Period:- 30th June, 1982 to 30th June 1985
both days at 12.01 A.M. Local Standard Time

ITEM 8.    Notice of Occurrence (Condition 4) to:-

Marsh & McLennan Inc.,
1221 Avenue of the Americas,
New York, N.Y. 10020.

ITEM 9:    Service of Process (Condition 6) upon:-

Messrs Mendes and Mount.
3 Park Avenue,
New York, N.Y. 10016
U.S.A.

L.P.O.355A (12/76)                                                Page 4 of 4

shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Underwriters shall be effective even though Underwriters make no payment or tender of return premium with such notice.

4.  NOTICE OF OCCURRENCE —

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 8 of the Declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

5.  OTHER INSURANCE —

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is specifically stated to be excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

6.  SERVICE OF SUIT CLAUSE —

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made as stated in Item 9 of the Declarations, and that in any suit instituted against any one of them upon this Policy, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The person or firm named in Item 9 are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted —

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this Policy of insurance, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

L.P.O.355A (12/76)

...pect of
each occurrence – subject to a limit
of

$ (as stated in Item 6      in the aggregate for each annual
of the Declarations).     period during the currency of this
Policy, separately in respect of
Products Liability and in respect of
Personal Injury (fatal or non-fatal)
by Occupational Disease sustained
by any employees of the Assured and
in respect of any other hazard subject
to an aggregate limit in the Underlying
Umbrella Policies.

## CONDITIONS:

1.    PRIOR INSURANCE AND NON CUMULATION OF LIABILITY –

It is agreed that if any loss covered hereunder is also covered in whole or in part un
any other excess policy issued to the Assured prior to the inception date hereof the
of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by
amounts due to the Assured on account of such loss under such prior insurance.

2.    MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE –

This Policy is subject to the same terms, definitions, exclusions and conditions (exce
as regards the premium, the amount and limits of liability and except as otherwise
provided herein) as are contained in or as may be added to the Underlying Umbrella
Policies stated in Item 2 of the Declarations prior to the happening of an occurrence
for which claim is made hereunder. Should, however, any alteration be made in tl
premium for the Underlying Umbrella Policies during the currency of this Policy Und
writers reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be mainte
in full effect during the Policy period without reduction of coverage or limits excep
for any reduction of the aggregate limits contained therein solely by payment of cla
in respect of accidents and/or occurrences occurring during the period of this Policy
by the operation of Condition C. of the Underlying Umbrella Policies.

3.    CANCELLATION –

This Policy may be cancelled by the Named Assured or by the Underwriters or their
representatives by sending by registered mail notice to the other party stating when,
less than ~~thirty (30)~~ SIXTY (60) days thereafter, cancellation shall be effective. The mailing
notice as aforesaid by Underwriters or their representatives to the Named Assured at
address shown in this Policy shall be sufficient proof of notice, and the insurance un
this Policy shall end on the effective date and hour of cancellation stated in the not
Delivery of such written notice either by the Named Assured or by the Underwriters
their representatives shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain
the customary short rate proportion of the premium for the period this Policy has bee

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwrite (Hereinafter called the "Named Assured")

## INSURING AGREEMENTS:

I.    COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:–

    (a)    imposed upon the Assured by law,

or  (b)    assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:–

    (i)    Personal Injuries

    (ii)    Property Damage

    (iii)    Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policie stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

II.    LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Under lying Umbrella Insurers have paid or have been held liable to pay the full amount of the respective ultimate net loss liability as follows:–

      $ (as stated in Item 3 of the Declarations)      ultimate net loss in respect of each occurrence, but

      $ (as stated in Item 4 of the Declarations)      in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies

## Schedule

Policy or Certificate No.      509      KY017782      Contract No. (if any)

The name and address of the Assured

**W.R.GRACE AND CO.**
**1114 Avenue of the Americas,**
**New York, N.Y.10036.**

The risk and sum insured hereunder      **8.36% of 56.25% of the limits stated in the**
**wording attached hereto.**

**INTEREST - as per wording attached hereto.**

The Premium      **U.S.$12,931.88.**

The period of Insurance from      **30th June,1982**      to      **30th June,1983**
both days inclusive and for such further period or periods as may be mutually agreed upon
**/at 12.01 A.M.Local Standard Time**

Dated in      **LONDON**      the      **10th January,1984**

liability(ies) expressed herein and the lines (percentages) signed in the Table are in percentages of 100% of 56.25%

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Insured hereunder shared between the Members of those Syndicates.

| FOR LPSO USE ONLY | BROKER | LPSO NO. & DATE | | |
|---|---|---|---|---|
| 4762 | 509 | 62701   6 | 12 | 82 |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REF. | PAGE |
|---|---|---|---|
| | | | 1 |
| PERCENT | | | |
| 3.98 | 210 | E2017777 | |
| 2.39 | 918 | LH2HX09U2131 | |
| 1.99 | 342 | F90WWXXXD536 | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1982/ 12

| TOTAL LINE | NO. OF SYND. | FOR LPSO USE ONLY | |
|---|---|---|---|
| 8.36 | 3 | 5D | 1470 |

# Lloyd's
# Policy

A/C W.R.GRACE AND CO.



Lloyd's, London

J(A)

COVER NOTE

# Bowring

C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

P.O. BOX 145.
THE BOWRING BUILDING.
TOWER PLACE,
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
          LONDON EC3
TELEX: 882191
Registered No. 76170 London

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

Please always    KYO17782
quote this No. ..........................

Date .. 19th July, 1982.
.......................

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

TYPE:          EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT
               LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974)

FORM:          Short Excess Form as expiring as far as applicable amendments if
               any to be agreed by Underwriters

ASSURED:       W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated,
               Affiliated Companies, and/or Organisations owned, controlled
               and/or managed Companies as now or hereinafter constituted plus
               joint ventures as expiring

PERIOD:        36 months at 30th June, 1982

INTEREST:      Coverage in respect Assured's Operations

SUM INSURED:   56.25% of
               $20,000,000    each occurrence (Aggregate Products and
                              Occupational Disease)

               EXCESS OF:-

               $ 5,000,000    each occurrence (Aggregate Products and
                              Occupational Disease)

               WHICH IN TURN EXCESS OF:-

               Scheduled Primaries or $100,000 Self Insured Retention where no
               concurrent insurance

SITUATION:     Worldwide

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

2

CONDITIONS:     N.M.A. 1256/1477
                60 Days Cancellation Clause
                4% Tax Clause (where applicable)
                Service of Suit Clause (U.S.A.)
                Seepage and Pollution Clauses as underlying
                ALL AS UNDERLYING in respect of Conditions, Warranties, Clauses
                and Exclusions attached thereto

PREMIUM:        56.25% of
                Minimum and Deposit $900,000 payable (30th June, 1982 $275,000
                                                      (30th June, 1983 $300,000
                                                      (30th June, 1984 $325,000
                adjustable annually at 3-1/2‰ on Gross Sales

Hereon          LLOYD'S 8.36%


                Syndicate No.        %

                210                3.98%
                918                2.39%
                342                1.99%


For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

# Bowring

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

| | |
|---|---|
| P.O. BOX 145. | TELEPHONE: 01-283 3100 |
| THE BOWRING BUILDING. | TELEGRAMS: BOWINSUR |
| TOWER PLACE. | LONDON EC3 |
| LONDON EC3P 3BE | TELEX: 882191 |
| (Registered Office) | Registered No. 76170 London |

Please always quote this No. ....... KYC17782

Date ...... 19th July, 1982 ......

VAT No. 244 251779

In accordance with your instructions we have arranged cover as follows:

TYPE:   —   EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT
LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974)

FORM:   Short Excess Form as expiring as far as applicable amendments if
any to be agreed by Underwriters

ASSURED:   W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated,
Affiliated Companies, and/or Organisations owned, controlled
and/or managed Companies as now or hereinafter constituted plus
joint ventures as expiring

PERIOD:   36 months at 30th June, 1982

INTEREST:   Coverage in respect Assured's Operations

SUM INSURED:   56.25% of
$20,000,000   each occurrence (Aggregate Products and
Occupational Disease)

EXCESS OF:-

$ 5,000,000   each occurrence (Aggregate Products and
Occupational Disease)

WHICH IN TURN EXCESS OF:-

Scheduled Primaries or $100,000 Self Insured Retention where no
concurrent insurance

SITUATION:   Worldwide

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

2

CONDITIONS:          N.M.A. 1256/1477
                     60 Days Cancellation Clause
                     4% Tax Clause (where applicable)
                     Service of Suit Clause (U.S.A.)
                     Seepage and Pollution Clauses as underlying
                     ALL AS UNDERLYING in respect of Conditions, Warranties, Clauses
                     and Exclusions attached thereto


PREMIUM:             56.25% of
                     Minimum and Deposit $900,000 payable (30th June, 1982 $275,000
                                                           (30th June, 1983 $300,000
                                                           (30th June, 1984 $325,000
                     adjustable annually at 3-1/2¢%o on Gross Sales


                     Less 4% Federal Excise Tax (where applicable)


                     15.94% ENGLISH & AMERICAN INSURANCE COMPANY LIMITED
                     63.75% (24.73% WALBROOK INSURANCE COMPANY LIMITED
                            (10.75% EL PASO INSURANCE COMPANY LIMITED
                            (18.82% DART & KRAFT INSURANCE COMPANY LIMITED
                            ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED
                            ( 6.45% LUDGATE INSURANCE COMPANY LIMITED
*                           ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
*                           (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY
*                           ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED
*.                          ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES
                            (         INDUSTRIELLES S.A.
                            (per H.S. Weavers (Underwriting) Agencies Ltd.
                     11.95% LEXINGTON INSURANCE COMPANY

Hereon               91.64%


* These Companies allow Federal Excise Tax


┌                                                    ┐

└

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

# Bowring

C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE

(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
LONDON EC3

TELEX: 882191

Registered No. 76170 London

19th August 1982

Date ...........................................

VAT No. 244 251779

In accordance with your instructions we have arranged cover as follows:

## A/C W.R. GRACE & CO. ETAL

With effect from inception the companies underwritten for by H.S. Weavers
(Underwriting) Agencies Ltd., are amended to read:-

63.75%
```
        (31.18% WALBROOK INSURANCE COMPANY LIMITED
        (10.75% EL PASO INSURANCE COMPANY LIMITED
        (18.82% DART & KRAFT INSURANCE COMPANY LIMITED
        ( 8.06% LOUISVILLE INSURANCE COMPANY LIMITED
    *   ( 8.61% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
    *   (10.75% "WINTERTHUR" SWISS INSURANCE COMPANY
    *   ( 9.68% MUTUAL REINSURANCE COMPANY LIMITED
    *   ( 2.15% COMPAGNIE EUROPEENNE D'ASSURANCES
        (          INDUSTRIELLES S.A.
        (per H.S. Weavers (Underwriting) Agencies Ltd.
```

* (These Companies allow Federal Excise Tax).

Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

All Other Terms and Conditions Remaining Unchanged

C.T. BOWRING & CO. (INSURANCE) LTD.

Director/Manager

AO 295A

# BLANKET EXCESS LIABILITY POLICY
## (FOLLOWING FORM)

Coverage is provided in the Company designated by number,
a stock insurance Company (herein called the Company)

## DECLARATIONS

INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

| | FIREMAN'S FUND INSURANCE COMPANIES MAIL ADDRESS SAN FRANCISCO CALIFORNIA |
|---|---|
| **01 FIREMAN'S FUND** INSURANCE COMPANY | SAN FRANCISCO, CALIFORNIA |
| **18 THE AMERICAN** INSURANCE COMPANY | PARSIPPANY, NEW JERSEY |
| **07 NATIONAL SURETY** CORPORATION | CHICAGO, ILLINOIS |
| **13 ASSOCIATED INDEMNITY** CORPORATION | SAN FRANCISCO, CALIFORNIA |
| **15 AMERICAN AUTOMOBILE** INSURANCE COMPANY | CREVE COEUR, MISSOURI |

POLICY PERIOD:

ITEM 2.

INCEPTION (MO. DAY YR.)          EXPIRATION (MO. DAY YR.)
12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

---

**ITEM 3.**          LIMIT OF LIABILITY:

$             EACH OCCURRENCE

$             AGGREGATE

**ITEM 4.**          UNDERLYING INSURANCE LIMIT OF LIABILITY

$             EACH OCCURRENCE

$             AGGREGATE

**ITEM 5.**          PREMIUM BASIS          **ITEM 6.**          ADVANCE PREMIUM: $

$                                           ANNUAL MINIMUM PREMIUM: $

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $
THE POLICY MINIMUM PREMIUM.

7. SCHEDULE OF UNDERLYING INSURANCE:

---

## FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy.

### INSURING AGREEMENTS

**1. Coverage.** To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

**2. Limit of Liability.** The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

**3. Policy Period.** This policy applies only to occurrences which take place during the policy period.

### DEFINITIONS

"Ultimate net loss" means all sums actually paid, or which the insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

### CONDITIONS

**1. Maintenance of Primary Insurance.** The Insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (apply-

(Continued on Page Two)

COUNTERSIGNATURE DATE          COUNTERSIGNATURE OF AUTHORIZED AGENT

PAGE ONE

5902—2-72

IV–D

(Continued from Preceding Page)

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period. Such underlying insurance is not maintained in full effect by the Insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided, in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

**2. Notice of Occurrence.** The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

**3. Payment of Loss.** It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the liability of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Company in conformity with this policy. Bankruptcy or insolvency of Insured shall not relieve the Company of any of its obligations hereunder.

**4. Payment of Expenses.** Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

**5. Appeal.** In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

**6. Subrogation.** In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

**7. Premium.** The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

**8. Cancellation.** This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured adjustment of premium shall be at short rate, and if cancelled by the Company, adjustment shall be made pro rata. However, in the event of cancellation or termination of the underlying insurance, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be given by the Company to the Insured at the address shown in the declarations. Payment or tender of unearned premium is not a condition of cancellation.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating

(Continued on Next Page)

(Continued from Preceding Page)

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

SECRETARY

PRESIDENT

FINAL PAGE