# 5E

Riunione Adriatica Di Sicurta

Policy No. EL 79 4416

06/30/80 – 06/30/81

vol. 12, fab. 27
02096



# RIUNIONE ADRIATICA DI SICURTA'
ESTABLISHED AT TRIESTE IN 1838 — REG. OFFICE IN MILAN, ITALY
(ADRIATIC INSURANCE COMPANY)

2130

This policy is made and accepted subject to the provisions and stipulations hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

JA7

EXCESS LIABILITY POLICY

NO. EL 79 4416
EL 79 4120
RENEWAL OF NUMBER

0209712



# RIUNIONE ADRIATICA DI SICURTA'
ESTABLISHED AT TRIESTE IN 1838 — REG. OFFICE IN MILAN, ITALY
(ADRIATIC INSURANCE COMPANY)

Declarations  This policy insures:

| Item | | | |
|---|---|---|---|
| 1. | Named Insured, Address and Zip Code | Producer No. | Producer's Name, Address and Zip Code |
| | W.R. Grace & Company<br>Attn: Mr. Charles F. Krauter<br>Ass't. Treasurer, Director<br>Corporate Risk Management Dept.<br>1114 Avenue of the Americas<br>New York, New York 10036 | | Marsh & McLennan, Inc.<br>1221 Avenue of the Americas<br>New York, New York 10020 |

2. Business:

Name and Address of employer

Policy Period:  12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN
From: June 30, 1980   To: June 30, 1981   Term: 1 Year

| | Location of Coverage: | | | | | |
|---|---|---|---|---|---|---|
| | and as further defined in the Primary Policy. | | | | | |
| 3. | Primary Insurance: (1) Insurer, (2) Policy number (including renewals/or replacements thereof)<br>(1) as on file<br>(2) | | | | | |
| 4. | Description of Coverage: Excess Umbrella Liability | | | | | |
| 5. | The Insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto. | | | | | |

| COVERAGES | PREMIUM | SECTION I | IN EXCESS OF | SECTION II | SECTION III |
|---|---|---|---|---|---|
| | | COMPANY LIMITS | | Underlying Limits | Total Limits |
| A. Bodily Injury — Auto | $<br>$ | $<br>$ | Each Person<br>Each Occurrence | $<br>$ | $<br>$ |
| B. Bodily Injury — Other | $<br>$<br>$ | $<br>$<br>$ | Each Person<br>Each Occurrence<br>Aggregate | $<br>$<br>$ | $<br>$<br>$ |
| C. Property Damage Automobile | $ | $ | Each Occurrence | $ | $ |
| D. Property Damage Except Automobile | $<br>$ | $<br>$ | Each Occurrence<br>Aggregate | $<br>$ | $<br>$ |
| E. Combined Single Limit Bodily Injury and Property Damage Automobile | $<br>$<br>$ | $<br>$<br>$ | Each Occurrence | $<br>$<br>$ | $<br>$<br>$ |
| F. Combined Single Limit Bodily Injury and/or Property Damage except Automobile | $<br>$ | $<br>$ | Each Occurrence<br>Aggregate | $<br>$ | $<br>$ |
| G. Other Excess Umbrella Liability | $<br>$ 2,250. | $1,000,000. part of $25,000,000. | | $75,000,000 | $100,000,000. |
| | Total  $ | | | | |

02098



# RIUNIONE ADRIATICA DI SICURTA'
ESTABLISHED AT TRIESTE IN 1838 – REG. OFFICE IN MILAN, ITALY
(ADRIATIC INSURANCE COMPANY)

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.

## CONDITIONS

1. **Premium Computation:** The deposit premium stated in the declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

2. **Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

3. **Action Against Company:** No action shall lie against the company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

4. **Subrogation:** In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

5. **Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

6. **Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Named Insured's legal representative as Named Insured; provided that notice of cancellation addressed to the Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

7. **Cancellation:** This policy may be canceled by the insured by surrender thereof to the Company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the insured or by the company shall be equivalent to mailing. If the insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

8. **Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

M. ALBERTO RAVANO, Vice-Président du Conseil d'Administration;

M. GIORGIO GARABELLI, Directeur Général;

02099

such Coverage Part(s) and Endorsement(s) Here

27131

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

This policy shall not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
   (c) the injury, sickness, disease, death, or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this policy:
   "hazardous properties" include radioactive, toxic or explosive properties;
   "nuclear material" means source material, special nuclear material or byproduct material;
   "source material", "special nuclear material" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
   "spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;
   "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
   "nuclear facility" means:
   (a) any nuclear reactor,
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste.
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
   "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
   with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

### SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon Mendes & Mount, 3 Park Avenue, New York, New York and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to statute of any state, territory or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

### 4% TAX CLAUSE

Notice is hereby given that the Company has agreed to allow for the purpose of paying the Federal Excise Tax 4% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Company will deduct 4% from the amount of the return and the insured or his agent should take steps to recover the Tax from the U.S. Government.

### WAR RISK EXCLUSION ENDORSEMENT

This policy shall not apply to any liability of the insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not) civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

Hereon____ ____% of totals shown below:

## ENDORSEMENT

02100

#1      Additional Premium _____
        State Tax
        Return Premium _____

As: W.R. Grace & Company

Effective: June 30, 1980

In consideration of the premium charged, it is hereby understood and agreed that item #3 of the Declarations, "Primary Insurer" is amended to include the following.

### Participation

**First Layer - $5 Million Excess of Primary**

| | |
|---|---:|
| Lloyds & British Companies | $ 4,000,000. |
| Northbrook Ins., Co. | 1,000,000. |
| | $ 5,000,000. |

Arkwright Boston - Charters Liability

**Second Layer - $20 Million Excess of $5 Million**

| | |
|---|---:|
| Lloyds & British Companies | $11,250,000. |
| Northbrook Ins., Co. | 3,750,000. |
| Granite State Ins., Co. | 4,000,000. |
| Transit Casualty Co. | 1,000,000. |
| | $20,000,000. |

**Third Layer - $25 Million Excess of $25 Million**

| | |
|---|---:|
| Lloyds & British Companies | $12,000,000. |
| American Int'l Underwriters | 2,000,000. |
| Hartford Acc. & Ind. Co. | 1,500,000. |
| Granite States Ins., Co. | 6,000,000. |
| Transit Casualty Co. | 2,000,000. |
| Gerling Konzern | 1,000,000. |
| Bermuda Fire & Marine | 500,000. |
| | $25,000,000. |

**Fourth Layer - $25 Million Excess of $50 Million**

| | |
|---|---:|
| Lloyds & British Companies | $ 4,000,000. |
| Northbrook Ins., Co. | 7,000,000. |
| Integrity Ins., Co. | 2,000,000. |
| National Union Fire Ins., Co. | 1,000,000. |
| Granite State Ins., Co. | 4,000,000. |
| American Int'l Underwriters | 2,000,000. |
| Transit Casualty Co. | 5,000,000. |
| Adriatic Ins., Co. | |
| | $25,000,000. |

Attached to and forming part of Cover Note/Certificate E1 79 4416
All other terms and conditions remain unchanged.

Dates:   9/24/80 ac

Page 1 of 2

WOHLREICH & ANDERSON, LTD.

## ENDORSEMENT

Hereon___ __% of totals shown below:

02101

Additional Premium _____
State Tax _____
Return Premium _____

As: W.R. Grace & Company

Effective: June 30, 1980

Fifth Layer — $25 Million Excess of $75 Million

| | |
|---|---|
| Gibraltar Ins., Co. | $ 2,500,000. |
| Ideal Mutual Ins., Co. | 3,000,000. |
| Granite State Ins., Co. | 8,500,000. |
| Hartford Acc. & Ind. Co. | 1,000,000. |
| National Union Fire Ins. Co. | 6,000,000. |
| Transit Casualty Co. | 3,000,000. |
| Reunion Adriatica | 1,000,000. |
| | $25,000,000. |

Attached to and forming part of Cover Note/Certificate  E1 79 4416 Adriatic Ins., Co.
All other terms and conditions remain unchanged.

Dated: 9/24/80 ac

Page 2 of 2

WOHLREICH & ANDERSON, LTD.