6A

Lloyd's

Policy No.  79 DD 1633C

06/30/79 – 06/30/82

VOL XII   TAB 1

01539

No. _____

**Whereas** W.R. GRACE AND COMPANY (as more fully described in item 1 (A) of the declarations herein) of 1114 Avenue of the Americas, New York, N.Y. 10036 hereinafter called the Assured, have paid U.S.$444,000.00 Premium or Consideration to Us, the undersigned Assurers to indemnify the Assured in respect of UMBRELLA LIABILITY as per wording attached hereto.

100% of 80% of the limits stated herein

during the period commencing at **Thirtieth** day of **June,** 19 79 , and ending at **Thirtieth** day of **June,** 19 82 . Both days at 12.01 a.m. Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company** for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding ONE HUNDRED PER CENT of EIGHTY PER CENT of the limits stated herein,

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this 25d day of November 1980

DD/la

DIRECTOR
H. S. WEAVERS (UNDERWRITING) AGENCIES LTD

01540

Policy No.

LO3816002727

100%       (48.03% WALBROOK INSURANCE COMPANY LIMITED
           ( 6.47% EL PASO INSURANCE COMPANY LIMITED
           (11.89% MUTUAL REINSURANCE COMPANY LIMITED
           (12.84% DART INSURANCE COMPANY LIMITED
           (11.04% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
           ( 9.74% ST. KATHERINE INSURANCE COMPANY LIMITED
           per: K.F. Weavers (Underwriting) Agencies Limited

ADDENDUM

Attaching to and forming part of Policy No.79DD1633C

of    CERTAIN INSURANCE COMPANIES.

Issued to        W.R.GRACE AND COMPANY.

It is understood and agreed that following an adjustment of premium for
the period 30th June 1979 to 30th June 1980 the earned premium does not
exceed the minimum premium paid, therefore the Minimum and Deposit
provisions of this Policy apply.

All other terms and conditions of the Policy remaining unchanged.

Dated London, 28th August 1980

DJB/lc

                                          27/1.80
LO3816027275        DIRECTOR
K.E. WEAVERS (UNDERWRITING) AGENCIES LTD

WRG    0676

01341

## UMBRELLA POLICY (LONDON 19:1)

Named Assured:   As stated in Item 1 of the Declarations forming a part hereof

> [illegible text ...] and of which prompt notice has
> been given to Underwriters (hereinafter called the "Named Assured").

### INSURING AGREEMENTS:

1.   COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter
mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to
pay by reason of the liability:-

|   | (a) | imposed upon the Assured by law, |
|---|---|---|
| or | (b) | assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such, |

for damages on account of:-

(i)    Personal Injuries

(ii)   Property Damage

(iii)  Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world.

11.   LIMIT OF LIABILITY –

Underwriters hereon shall be only liable for the ultimate net loss the excess of either:-

|   | (a) | the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances, |
|---|---|---|
| or | (b) | $   100,000    ultimate net loss in respect of each occurrence not covered by said underlying insurances, |

(hereinafter called the "underlying limit"):

and then only up to a further sum as stated in Item 2(a) of the Declarations in all in respect
of each occurrence – subject to a limit as stated in Item 2(b) of the Declarations in the
aggregate for each annual period during the currency of this Policy, separately in respect
of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational
Disease sustained by any employees of the Assured.

In the event of reduction or exhaustion of the aggregate limits of liability under said
underlying insurance by reason of losses paid thereunder, this Policy subject to all the
terms, conditions and definitions hereof shall:-

(1)    in the event of reduction pay the excess of the reduced underlying limit

(2)    in the event of exhaustion continue in force as underlying insurance.

The inclusion or addition hereunder of more than one Assured shall not operate to increase
Underwriters' limits of liability beyond those set forth in the Declarations.

L. P. O. 354B (8/76)                                                                    Page 1 of 11

WRG — 0677

01542

2.   ~PERSONAL INJURIES –

The term "Personal Injuries", wherever used herein means bodily injury (including death at any time resulting therefrom), mental injury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, humiliation; also libel, slander or defamation of character or invasion of rights of privacy, except that which arises out of any advertising activities.

3.   ~PROPERTY DAMAGE –

The term "Property Damage", wherever used herein, shall mean loss of or direct damage to or destruction of tangible property (other than property owned by the Named Assured).

4.   ADVERTISING LIABILITY –

The term "Advertising Liability", wherever used herein, shall mean:-

(1)   Libel, slander or defamation;

(2)   Any infringement of copyright or of title or of slogan;

(3)   Piracy or unfair competition or idea misappropriation under an implied contract;

(4)   Any invasion of right of privacy;

committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Assured's advertising activities.

5.   OCCURRENCE –

The term "Occurrence", wherever used herein, shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

6.   DAMAGES –

The term "Damages" includes damages for death and for care and loss of services resulting from personal injury and damages for loss of use of property resulting from property damage.

7.   ULTIMATE NET LOSS –.

The term "Ultimate Net Loss" shall mean the total sum which the Assured, or his Underlying Insurers as scheduled, or both, become obligated to pay by reason of personal injuries, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's or of any underlying Insurers permanent employees.

The Underwriters shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance.

L.P.O.354B (8/76)                                                                                                    Page 3 of 11

(b)    to personal injury, property damage or advertising liability arising out of the conduct of any partnership or joint venture of which the Assured is a partner or member and which is not designated in this policy as a Named Assured;

(c)    to claims made against the Assured:—

(i)    on account of Personal Injuries or Property Damage resulting from the failure of the Assured's products or work completed by or for the Assured to perform the function or serve the purpose intended by the Assured, if such failure is due to a mistake or deficiency in any design, formula, plan, specification, advertising material or printed instructions prepared or developed by the Assured; but this exclusion (i) does not apply to Personal Injuries or Property Damage resulting from the active malfunctioning of such products or work;

(ii)    on account of Property Damage to the Assured's products arising out of such products or any part of such products;

(iii)    on account of Property Damage to work performed by or on behalf of the Assured arising out of work or any portion thereof, or out of the materials, parts or equipment furnished in connection therewith;

(iv)    for the withdrawal, inspection, repair, replacement, or loss of use of the Assured's products or work completed by or for the Assured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(d)    with respect to advertising activities, to claims made against the Assured for:—

(i)    failure of performance of contract, but this shall not relate to claims for unauthorised appropriation of ideas based upon alleged breach of an implied contract;

(ii)    infringement of registered trade marks, service mark or trade name by use thereof as the registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans;

(iii)    incorrect description of any article or commodity;

(iv)    mistake in advertised price;

(e)    except in respect of occurrences taking place in the United States of America, its territories or possessions, or Canada, to any liability of the Assured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

(f)    to any liability arising out of the violation of any statute, law, ordinance or regulation prohibiting discrimination or humiliation because of race, creed, colour or national origin,

S.G.2548 (8/76)

WRG    0679

01544

E.   INSPECTION AND AUDIT –

Underwriters shall be permitted but not obligated to inspect the Assured's property and operations at any time. Neither the Underwriters' right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Assured or others, to determine or warrant that such property or operations are safe.

Underwriters may examine and audit the Assured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, or for as they relate to the subject matter of this insurance.

F.   CROSS LIABILITY –

In the event of claims being made by reason of personal injury suffered by any employee of one Assured hereunder for which another Assured hereunder is or may be liable, then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

In the event of claims being made by reason of damage to property belonging to any Assured hereunder for which another Assured is, or may be, liable then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

Nothing contained herein shall operate to increase Underwriters' limit of liability as set forth in Insuring Agreement 11.

G.   NOTICE OF OCCURRENCE –

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this policy, notice shall be sent as stated in Item 4 of the Declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

H.   ASSISTANCE AND CO-OPERATION –

The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers or both in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

I.   APPEALS –

In the event the Assured or the Assured's underlying insurers elect not to appeal a judgment in excess of the underlying limits, Underwriters may elect to make such appeal at their own cost and expense, and shall be liable for the taxable costs and disbursements and interest on judgments incidental thereto, but in no event shall the liability of Underwriters for ultimate net loss exceed the amount set forth in Insuring Agreement 11 for any one occurrence and in addition the cost and expense of such appeal.

.O.354B (6/76)                                                               Page 7 of 11

WRG    0680

01545

P.  CANCELLATION –

This policy may be cancelled by the Named Assured or by the Underwriters or their representatives by sending by registered mail notice to the other party stating when, not less than (sixty60) days thereafter, cancellation shall be effective. The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at the address shown in this policy shall be sufficient proof of notice, and the insurance under this policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Underwriters or their representatives shall be equivalent to mailing.

If this policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this policy has been in force. If this policy shall be cancelled by the Underwriters the Underwriters shall retain the pro rata proportion of the premium for the period this policy has been in force. Notice of cancellation by the Underwriters shall be effective even though Underwriters make no payment or tender of return premium with such notice.

Q.  CURRENCY –

The premiums and losses under this policy are payable in the currency stated in Item 5 of the Declarations. Payment of Premium shall be made as stated in Item 6 of the Declarations.

R.  CONFLICTING STATUTES –

In the event that any provision of this policy is unenforceable by the Assured under the laws of any State or other jurisdiction wherein it is claimed that the Assured is liable for any injury covered hereby, because of non-compliance with any statute thereof, then this policy shall be enforceable by the Assured with the same effect as if it complied with such Statute.

S.  SERVICE OF SUIT CLAUSE –

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made as stated in Item 7 of the Declarations, and that in any suit instituted against any one of them upon this policy, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The person or firm named in Item 7 are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this policy of insurance, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

C.354B (2/76)

WRG    0681

01546

ATTACHING TO AND FORMING PART OF POLICY No. 79DD1633C

### DECLARATIONS:

ITEM 1.  (a)  Named Assured:—  W.R. GRACE & CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

 (b)  Address of Named Assured:—  1114 Avenue of the Americas, New York, N.Y. 10038

ITEM 2.  Limit of Liability — at Insuring Agreement 11 :—

 (a)  Limit in all in respect of each occurrence  U.S.$ 5,000,000

 (b)  Limit in the aggregate for each annual period where applicable  U.S.$ 5,000,000

ITEM 3.  Policy Period:—  30th June, 1979 to 30th June, 1982 (both days at 12.01 a.m. Local Standard Time)

ITEM 4.  Notice of Occurrence (Condition G) to:—  Marsh & McLennan, Incorporated, 1221 Avenue of the Americas, New York, N.Y. 10020.

ITEM 5.  Currency (Condition Q):—  United States Dollars

ITEM 6.  Payment of Premium (Condition Q) to:—  Marsh & McLennan, Incorporated, 1221 Avenue of the Americas, New York, N.Y. 10020.

ITEM 7.  Service of Process (Condition S) upon:—  Messrs. Mendes and Mount, 3, Park Avenue, New York, N.Y. 10016, U.S.A.

L.P.O.354S (8/76)                                                    Page 11 of 11

WRG    0682

01547

Attaching to and forming part of Policy No.7W001623C

Issued to     W.R.GRACE & CO.

## SCHEDULE OF UNDERLYING INSURANCES:

| COVERAGE | LIMIT | | CARRIER |
|---|---|---|---|
| I. DOMESTIC GENERAL LIABILITY AND AUTOMOBILE LIABILITY. | | | |
| • A.) General Liability Products Liability | Bodily Injury | $1,000,000 Each Occurrence $2,000,000 Aggregate Products Liability only | C.N.A.of Illinois. |
| | Property Damage | $1,000,000 Each Occurrence $2,000,000 Aggregate Products Liability only | C.N.A.of Illinois. |
| B.) Employee Benefits | | $ 500,000 Each Claim $ 750,000 Annual Aggregate | C.N.A.of Illinois. |
| C.) Care Custody and Control | | $1,000,000 Each Occurrence | C.N.A.of Illinois. |
| D.) Advertisers Liability | | $ 600,000 Each Occurrence | C.N.A.of Illinois, |
| E.) Automobile Liability | Bodily Injury | $1,000,000 Each Occurrence | C.N.A.of Illinois, |
| | Property Damage | $1,000,000 Each Occurrence | C.N.A.of Illinois, |

• W.R.Grace & Co..assumes the first $500,000.of each loss within the framework of a retrospective rating plan.
The premiums indicated are for insurance excess of $500,000, up to policy limits. The combination of the $500,000.
Loss Assumption and pure insurance is equal to the limits shown above.

| II EMPLOYERS LIABILITY: | | |
|---|---|---|
| A.) Employers' Liability including Employers Liability as respects Occupational Disease | $ 500,000 each Employee $ 500,000 each Accident | C.N.A.of Illinois. |
| B.) Amendment of Coverage B Maritime (Jones Act) | Bodily Injury by Accident $ 500,000 Each Employee $ 500,000 Each Accident Bodily Injury by Disease $ 500,000 Each Employee $ 500,000 Aggregate Disease (Per State) | C.N.A.of Illinois. |

WRG   0683

01548

-2-

| COVERAGE | LIMIT | CARRIER |
| --- | --- | --- |
| C) United States Federal Longshoremens and Harbor Workers Act. | $ 250,000 Each Employee<br>$ 500,000 Each Accident | C.N.A.of Illinois |
| III.<br>1. AIRCRAFT LIABILITY (Excluding Non-Ownership) | $15,000,000 Combined Single Limit Including Voluntary Settlement of $250,000 Per Person - Including Crew (Part of and not in Addition to the $15,000,000 Limit) | United States Aviation Insurance Group. |
| A) Care, Custody or Control | $ 1,000,000 each and every occurrence (With Respect to Hangars, Buildings or Other Property or Contents thereof required by lessor or lessee Agreement or if insurance is purchased) | United States Aviation Insurance Group. |
| B) Non-Ownership/Hull Liability | $ 5,000,000 for occurrence and Aggregate | United States Aviation Insurance Group. |
| C) Aircraft Non-Ownership Liability | $10,000,000 Combined Single Limit. | United States Aviation Insurance Group. |
| 2) GROUND HANGARKEEPERS LIABILITY. | $ 2,000,000 Each Aircraft<br>$ 2,000,000 Each Occurrence | United States Aviation Insurance Group. |
| V. A) CHARTERERS LIABILITY/WHARFINGERS LIABILITY for W.R.Grace & Co. | *$ 2,000,000 Damage to Vessel and Cargo<br>$ 2,000,000 Demurrage and removal of Wreck Including Demurrage,Property Damage.<br>$ 2,000,000 Collision (Third Party including Bodily Injury Liability Third Party)<br>$ 2,000,000 Each Person<br>$ 2,000,000 Each Accident<br>Including liability to Crew of Chartered Vessel<br>$ 5,000 Deductible Each Accident. | Arkwright-Boston Manufacturers Insurance Co. |

* Limits will increase to $5,000,000 when and if a sulphur shipment takes place. The increased limits will remain in effect for the duration of policy term. To date no sulphur shipments have taken place and none anticipated for current policy period.

01549

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| B) CHARTERER'S LIABILITY for Aruba Chemical Industries, N.V. | $2,000,000 Damage to Vessel and Cargo<br>$2,000,000 Demurrage or Removal of Wreck, including demurrage Property Damage<br>$2,000,000 Collision (Third Party)<br>$2,000,000 Each Person<br>$2,000,000 Each Accident<br>Third Party Bodily Injury Liability including Liability to Crew Chartered vessel.<br>$5,000 Deductible Each Accident. | Arkwright-Boston Manufacturers Insurance Co. |
| V. P.W.L.G.ASSOCIATES,INC.<br>A)Insurance Brokers Errors and Omission Coverage | $2,000,000 Each Claim/Aggregate<br>$ 5,000 Deductible Per Claim | Employers Reinsurance Corporation |
| B)Excess Insurance Brokers Errors and Omission Coverage | $1,000,000 Each Claim/Aggregate Excess of $2,000,000<br>$2,000,000 Excess of $3,000,000 | Airlistica Insurance Company, North River Ins.Co. |
| VI. FOREIGN INSURANCE<br>A)W.R.Grace & Co. | $1,000,000 Per Occurrence combined single Limit Bodily Injury and Property Damage for General Liability and Automobile Liability combined | Granite State |
| Worldwide Comprehensive General and Automobile Liability Program | $2,000,000 Aggregate Products Liability<br>$2,000,000 Aggregate Property Damage<br>$ 250,000 Self-Insured for Property) in Insured's Care,Custody and Control<br>(2nd Self-Insured for Property) Per Location | |
| B) Grace Petroleum Libya Inc.<br>1) General Liability including Products Liability | Bodily Injury $300,000 each Occurrence<br>$300,000 Annual Aggregate<br>Property Damage$250,000 Each Occurrence<br>$300,000 Annual Aggregate | Granite State Insurance Co. |

-3-

01550

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| B) 2 Automobile Liability | Bodily Injury $250,000 each Person<br>$300,000 each Occurrence<br>Property Damage $250,000 each Occurrence | Granite State Insurance Co. |
| 3 Employer's Liability | $250,000 each Person<br>$250,000 each Accident | Granite State Insurance Co. |

WRG   0686

01331

ADDENDUM NO. 1

Attaching to and forming part of Policy No.79DD1633C

Issued to                    W.R. GRACE & CO.

As respects the Assured's operations outside the United States of
America and/or Canada Insuring Agreement II is amended to read as follows:-

"...Underwriters hereon shall be only liable for the ultimate net
loss the excess of either:-

(a) the limits of the underlying insurances as set out in the
    attached schedule in respect of each occurrence covered by said
    underlying insurances;

or  (b) $250,000.00 ultimate net loss in respect of each occurrence,

    whichever is the greater,

or  (c) $250,000.00 ultimate net loss in respect of each occurrence not
    covered by said underlying insurances,

                                        ................."


All other terms and conditions of the Policy remaining unchanged.

Dated,London 10th December 1979

DB/sc

WRG    0687

01552

ADDENDUM NO. 2

Attaching to and forming part of Policy No. 79DD163JC

Issued to:                    W.R. GRACE & CO.


It is hereby understood and agreed that this policy is extended to include "Employee Benefit Liability", as more fully defined in the scheduled underlying policies and that as respects such coverage this policy is subject to the same warranties, terms and conditions (except as regards the premium, the obligation to investigate and defend, the amount and limits of liability and the renewal agreement, if any) as are contained in the said underlying policies.

It is however further understood and agreed that the above extension in coverage shall not apply to claims based upon the Employee Retirement Income Security Act of 1974, Public Law 93-406 commonly referred to as the Pension Reform Act of 1974 and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law.


All other terms and conditions of the Policy remaining unchanged.

Dated, London,  10th December, 1979

DB/sc

61353

ADDENDUM NO.3

Attaching to and forming part of Policy No.79DD16330

Issued to :        W.R.GRACE & CO.

Notwithstanding anything contained herein to the contrary, it is hereby understood and agreed that this Policy shall not apply:-

A     To Property Damage claims arising from:-

(1) Erroneous delivery of seeds, erroneous substitution of one
    seed from another, or mislabelling of seeds;
(2) Cross pollination;
(3) Germination failure;
(4) The presence of noxious weed seed;
(5) Natural shrinkage of grain;
(6) Loss of and/or damage and/or deterioration from delay or
    from moisture content of grain;
(7) Commingling of grain.

B     (1) To liability arising under any policy of insurance or reinsurance;
      (2) To liability arising out of the issuance,non-issuance,declination
          or cancellation of, or the imposition of special terms to any policy
          of insurance or reinsurance.

C     In respect of oil and/or gas drilling and/or exploration operations to:-

(i) the cost of control of any oil and/or gas well
(ii) loss of hole and/or in hole equipment.

It is further understood and agreed that except insofar as coverage is
available to the Assured in the Underlying Insurances as set out in the attached
Schedule,this Policy shall not apply:-

(A) To Charterers Liability;
(B) To the safe berthing of any marine vessel;
(C) To marine vessels in the Assured's Care,Custody or Control;
(D) To Non-owned watercraft liability;
(E) To Contractual Liability;
(F) To Incidental Malpractice Liability;
(G) In respect of oil and/or gas drilling and/or exploration operations
    to:-
    (i)     explosion,blowout and/or cratering;
    (ii)    underground Property Damage not already excluded by the
            Seepage,Pollution and Contamination Clause No.1 and the
            Seepage, Pollution and Contamination Exclusion Clause No.2.

(H) To liability resulting from the ownership,maintenance and/or
    operations of any dock,wharf and/or quay facility.

(I) To Punitive and/or Exemplary Damages
(J) To Pharmacists Liability.

All other terms and conditions of the Policy remaining unchanged.

Dated ,30th December 1979
DU/st

81554

ADDENDUM NO.4

Attaching to and forming part of Policy No.79DD1633C

Notwithstanding anything contained herein to the contrary it is hereby understood and agreed that this Policy shall apply to "Joint Ventures" subject always to the following attached "Joint Venture Clause" given below except in respect of those Joint Ventures which are excepted by virtue of Addendum No.(3)

JOINT VENTURE CLAUSE
(Third Party Liability)
(Approved by Lloyd's Underwriters' Non-Marine Association)

(1) It is hereby understood and agreed by the Assured and Underwriters that, as regards any liability of the Assured which is insured under this Policy and arises in any manner whatsoever out of the operations or existence of any joint venture, operators, joint lease, joint operating agreement or partnership thereunder (called a "Joint Venture") in which the Assured has an interest, the liability of Underwriters under this Policy shall be limited to the product of (a) the percentage interest of the Assured in the said Joint Venture and (b) the total limit of indemnity afforded under this Policy. Where the percentage interest of the Assured in said Joint Venture is not known or is not certain, the percentage to be applied shall be that which would represent the interest at the inception of the Joint Venture. Such percentage shall not be increased by the insolvency of others interested in the said Joint Venture.

(2) It is further understood and agreed that, where any additional insured(s) have been reduced by a clause having the same effect as paragraph (1) of this insurance the sum of (a) such reduced limits of any underlying insurance shall not exceed and (b) the sum of any underlying insurance(s) not reduced.

23.1170
N.M.A. 1487

It is further understood and agreed that the term "Joint Venture" as used in the above attached "Joint Venture Clause" or elsewhere within the Policy wording shall be understood to mean:

"Any joining together of two or more companies, either legally or contractually, for the purpose of any business undertaking where joint financial or corporeal benefit is intended."

All other terms and conditions of the Policy remaining unchanged.

Dated, London 10th December 1979
DB/ac

ADDENDUM NO.5

Attaching to and forming part of Policy No 79DD163JC

Issued to                    W.R.GRACE & CO.

It is hereby understood and agreed that the "Joint Venture Clause" contained in Addendum No.4 shall not apply in respect of any co-venture or partnership where:

(A) The Assured's financial interest is at least 50%;

(B) The Assured has sole responsibility for the management and operation;

(C) The Assured is obligated to provide full insurance.

Notwithstanding the foregoing, it is understood and agreed that any future contractual agreement issued by the Assured to its co-venturers or partners will specify that the insurance provided by the Assured's insurers shall be the sole and exclusive protection afforded to any and all members of such ventures.

All other terms and conditions of the Policy remaining unchanged.

Dated,London 10th December 1979

DD/sc

WRG    0691

ADDENDUM NO. 6

Attaching to and forming part of Policy No.7WDD16JJC

Issued to          W.R. GRACE & CO.

### ADJUSTMENT CLAUSE.

Notwithstanding anything stated herein to the contrary, it is
hereby agreed that the premium charged hereon is comprised of a Minimum and
Deposit of $3,520,000.00 part of $1,650,000.00 plus an annual flat premium
charge of $14,400.00 part of $18,000.00 in respect of Charterers Liability
and in respect of the coverage provided hereunder for the safe berthing of
any marine vessel and marine vessels in the Assured's care, custody or control
and shall be due and payable as follows:-

30th June 1979        —      $440,000.00 part of
                             $550,000.00 (Minimum and Deposit)

                   plus      $ 14,400.00 part of
                             $ 18,000.00 (Flat Premium)

30th June 1980        —      $440,000.00 part of
                             $550,000.00 (Minimum and Deposit)

                   plus      $ 14,400.00 part of
                             $ 18,000.00 (Flat Premium)

30th June 1981        —      $440,000.00 part of
                             $550,000.00 (Minimum and Deposit)

                   plus      $ 14,400.00 part of
                             $ 18,000.00 (Flat Premium)

It is further understood and agreed that the Minimum and Deposit Premium
specified above is subject to adjustment in agreement with Earned Premium to be calculated at
a rate of 0.0825 per $1,000.00 of the Assured's Gross Receipts.

The Assured shall declare to Underwriters as soon as possible after each
anniversary date (commencing with the 30th June 1980) the total amount of their Gross
Receipts during  the preceding annual period and should the Earned Premium so
computed exceed the Deposit Premium charged for said annual period then the
balance shall be immediately payable by the Assured to the Underwriters.

Notwithstanding anything contained herein to the contrary, if this Policy
shall be cancelled by the Assured, Underwriters shall be entitled to the Earned
Premium for the period that this Policy has been in force or the short rate
proportion of the Minimum Premium whichever is the greater, plus the short rate
proportion of the flat premium charge.  If this Policy is cancelled by
Underwriters they shall be entitled to the Earned Premium for the period that this
Policy  has been in force or pro rata of the Minimum Premium whichever is the
greater, plus the pro rata proportion of the flat premium charge.

All other terms and conditions of the Policy remaining unchanged.

Dated ,London 10th December 1979

WRG - 0692

01337

ADDENDUM NO. 7

Attaching to and forming part of Policy No. 79DD1633C

Issued to:              W.R. GRACE & CO.

Notwithstanding the fact that the Assured has underlying insurance in force providing coverage in respect of Products Recall and Architects Errors and Omissions Insurance, it is specifically understood and agreed that no such coverage shall be provided hereunder and for the purposes of this Policy the underlying coverage shall not be impaired by such exposures.

It is further understood and agreed that this Policy shall not apply to any loss which would have been covered by the scheduled underlying policies, except for the deductible provisions contained therein.

All other terms and conditions of the Policy remaining unchanged.

Dated, London,   10th December, 1979

DB/sc

WRG --- 0693

ADDENDUM 8

Attaching to and forming part of Policy No.79DD1633C

Issued to:            W.R. GRACE & CO.

It is hereby understood and agreed that the following attached clause shall apply in respect of the Assured's oil and/or gas operations on, over and/or under water:

SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE (OIL) No. 2
(Approved by Lloyd's Underwriters' Non-Marine Association)

This Insurance does not cover any liability for:
(1) Personal Injury or Bodily Injury or loss, damage to or loss of use of property directly or indirectly caused by seepage, pollution or contamination.
(2) The cost of removing, nullifying or cleaning up seeping, polluting or contaminating substances.
(3) Loss of, damage to, or loss of use of property directly or indirectly caused by subsurface operations of the Assured.
(4) Removal of, loss of or damage to subsurface oil, gas or any other substances, the property of others.
(5) Fines, penalties, punitive or exemplary damages.
22/1/70.
N.M.A. 1684.

It is also understood and agreed that the following attached clause shall apply in respect of the Assured's oil and/or gas operations other than those on, over and/or under water:

SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 1
(Approved by Lloyd's Underwriters' Non-Marine Association)

This Insurance does not cover any liability for:
(1) Removal of, loss of or damage to subsurface oil, gas or any other substances, the property of others, provided always that this paragraph (1) shall not apply to any such loss or damage which would otherwise be covered under this Insurance if not attributable to Non-seepage, scattering or loss of an oil or gas well attributable to blow-out under its control of the Assured.
(2) Loss of, damage to, or loss of use of property directly or indirectly caused by subsurface operations of the Assured.
(3) Personal Injury or Bodily Injury or loss, damage to or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (3) shall not apply to liability for Personal Injury or Bodily Injury or physical damage to or destruction of tangible property, including the loss of use thereof, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(4) The cost of removing, nullifying or cleaning up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(5) Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.
22/1/70.
N.M.A. 1685.

It is further understood and agreed that the following attached clause shall apply in respect of all operations of the Assured, other than oil and/or gas operations.

INDUSTRIES SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE

This Insurance does not cover any liability for:

[text illegible]

22/1/70.
N.M.A. 1685.

All other terms and conditions of the Policy remaining unchanged.

WRG    0694

01559

ADDENDUM NO. 9

Attaching to and forming part of Policy No. 7800163JC

Issued to:          W.R. GRACE & CO.


It is hereby understood and agreed that the BOOKER DRILLING COMPANY
is included herein as an additional Assured.   In consequence of the
above the CNA Casualty Company of Illinois will provide underlying
coverage on a "Difference Between" basis up to the appropriate underlying
limits as expressed in the schedule attached hereto until such time
as the existing underlying insurances of Booker Drilling Company are
cancelled and the coverages are included within the CNA underlying
insurance programme.

Gross Receipts from the aforementioned entity shall be included in
the premium adjustment in accordance with Addendum No. 6.


All other terms and conditions of the Policy remaining unchanged.

Dated, London,  10th December, 1979

Db/lc


WRG    .0695

01560

ADDENDUM NO. 10

Attaching to and forming part of Policy No. 79DD1633C

Issued to          W.R. GRACE & CO.

### WARRANTY

It is hereby warranted by the Assured that Physical Damage coverage
is maintained for 100% values in respect of all Highly Protected Risk
properties and that a blanket block policy for $50,000,000 excess of a
$1,000,000 deductible is maintained for all other real property; all
property in the Assured's care, custody or control being covered by such
policies.

WRG    0696

01561



ADDENDUM NO. 11

Attaching to and forming part of Policy No. 79DD163JC

Issued to:-·.                    W.R. GRACE & CO.


It is hereby understood and agreed that this Policy is extended
to include "Data Processors Errors and Omissions" and "Insurance
Brokers Errors and Omissions".

It is however specifically understood and agreed that the above
extension in coverage is only applicable insofar as such coverage is
available to the Assured in the schedule of Underlying Insurances
attached hereto and that as respects such coverages this Policy is
subject to the same warranties, terms and conditions (except as regards
the premium, the obligation to investigate and defend, the amount and
limits of liability and the renewal agreement, if any), as are contained
in said Underlying Insurances.

All other terms and conditions of the Policy remaining unchanged.

WRG    0697

01362

ADDENDUM NO. 12

Attaching to and forming part of Policy No.79DD163XC

Issued to:  W R GRACE & COMPANY

It is hereby understood and agreed that with effect from 30th June,
1979, Addendum No.3 of this Policy is deleted and replaced by the
following:-

> It is hereby understood and agreed that the
> "Joint Venture Clause" contained in Addendum
> No.4 shall not apply in respect of any
> co-venture or partnership where:
>
> (A)  The Assured's financial interest is at
>      least 50%, or
>
> (B)  The Assured has sole responsibility for
>      the Management and operation, or
>
> (C)  The Assured is obligated to provide full
>      insurance.
>
> Notwithstanding the foregoing, it is understood
> and agreed that any future contractual agree-
> ment issued by the Assured to its co-venturers
> or partners will specify that the insurance
> provided by the Assured's insurers shall be the
> sole and exclusive protection afforded to any
> and all members of such ventures.

All other terms and conditions of the Policy remaining unchanged.


DF/rjb

LO8K9017275

01563

COPY    ADDENDUM NO 13

Attaching to and forming part of Policy No 79DD1633C

Issued to: - ⁻⁴  W.R.GRACE & CO.

It is understood and agreed that, with effect from 1st October 1980 this Policy shall apply in respect of the Joint Venture known as Four Corners Mine and International Minerals & Chemical Corporation is included hereon in respect of their interest in this Joint Venture.  Also included as an Additional Assured is Morgan Guaranty Trust Company of New York, but only in respect of their interest as mortgagee in the Four Corners Mine Joint Venture and pursuant to the terms and conditions of the credit agreement dated January 27, 1981.

It is further understood and agreed that coverage provided hereon shall apply separately in excess of the following underlying insurances in respect of the Four Corners Mine Joint Venture.

| Coverage | Limit | Carrier |
|---|---|---|
| A.General Liability | $1,000,000 (Applies separately to each contractor but is subject to a combined $3,000,000 limit for any one occurrence. | Hartford Insurance Company. |
| B.Employers Liability | $ 500,000 | Hartford Insurance Company. |
| C.Umbrella Liability (To apply excess of A and B above) | $20,000,000 | Hartford Insurance Company. |

It is further understood and agreed that the Joint Venture Clause incorporated in Addendum No 4 will not apply to this Joint Venture.

1.1153  L-38164
R-7175
DIRECTOR

All other terms and conditions of the Policy remaining unchanged.

01564

ADENDUM NO 14

Attaching to and forming part of Policy No 79DD1G33C

Issued to:        W.R.GRACE & CO.

It is hereby understood and agreed that with effect from 10th March,1982
this Policy shall not apply to Chemed Corporation and/or any subsidiary,
organisation or company, including subsidiaries of a subsidiary company,
owned controlled or coming under the active management of Chemed Corporation.

2028 16902
DIRECTOR
23.11.82

All other terms and conditions of the Policy remaining unchanged
PSCB/sc

WR-G 0700

01585

CC TY   ( )

ADDENDUM NO 15

Attaching to and forming part of Policy No 79DD1633C

Issued to:      W.R.GRACE AND CO.

It is understood and agreed that with effect from 30th April,1982 the
Assured leased an aircraft (Gulf Stream II No.227-GL) to Mobil, who
give the understanding that they will provide insurance.  If there
should be a breach of contract, W.R.Grace's primary Aviation Policy
will respond for any contingent liability that may exist.

All other terms and conditions of the Policy remaining unchanged.
PSCB/sc

L03B 16902727S
30384          DIRECTOR

WRG     0701

01566

**U.S.A.**

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE — LIABILITY — DIRECT**
(Approved by Lloyd's Underwriters' Non-Marine Association)

*For attachment in addition to the appropriate war and nuclear Exclusion Clauses.* Liability and Contract policies in addition to Affording worldwide coverage.

In respect to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/7/64
N M A 1477

**N.S.M. U.S.A.**

**NUCLEAR INCIDENT EXCLUSION CLAUSE — LIABILITY —**
(Approved by Lloyd's Underwriters' Non-Marine Association)

For attachment to insurances of the following types, Liability in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone —

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability, including Massachusetts Motor Vehicle or Garage Liability

not being insurances of the classifications to which the Nuclear Incident Exclusion Clauses — Liability — Direct (Limited) applies.

This Policy —

I.  does not apply under any Liability Coverage, to injury, sickness, disease, death or destruction
    (a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**U.S.A.**

**4% TAX CLAUSE**
(Approved by Lloyd's Underwriters, Non-Marine Association)

Inasmuch as the Underwriters have agreed to allow for the purpose of paying the Federal Excise Tax 4% of the premium payable hereon in the event such premium is subject to Federal Excise Tax.

It is understood and agreed that, in the event of any return of premium becoming due hereunder the Underwriters will deduct 4% from the amount of the return and the Assured or his agents should take note to recover the Tax from the United States Government.

29/8/66
N M A 1540

II.  does not apply to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
    (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
    (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
    (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III.  As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
    (a)  any nuclear reactor,
    (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
    (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
    (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except in respect of any provision for any premium or other charge or subject to audit, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

7/1/60
N M A 1256

C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers
AMERICAN NON-MARINE DIVISION

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

| | | |
|---|---|---|
| P.O. BOX 145, | TELEPHONE: 01-283 3100 | |
| THE BOWRING BUILDING, | TELEGRAMS: BOWINSUR | |
| TOWER PLACE, | LONDON EC3 | |
| LONDON, EC3P 3BE | TELEX: 882191 | |
| (Registered Office) | Registered No. 76170 London | |

Please always quote this No. __PY107779__

Date __2nd August, 1979__

VAT No. 244 2517 73

Renewing No. 35446

In accordance with your instructions we have arranged cover as follows:

**TYPE**  UMBRELLA LIABILITY INCLUDING EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974). EXCLUSIONS AS ATTACHED.

**FORM**  WORDING AS EXPIRING AS FAR AS APPLICABLE TO BE AGREED BY UNDERWRITERS.

**ASSURED**  W.R. GRACE & CO. et al and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter consituted plus joint ventures as expiring.

**PERIOD**  36 months at 30th June, 1979.

**INTEREST**  Coverage in respect of all the insureds operations.

**SUM INSURED**  80% of
$5,000,000      each occurrence (Aggregates Products and Occupational Disease)
Excess of
(A)  The amount covered under underlying insurances as per schedule
(B)  $100,000 each occurrence in respect of losses not covered by said underlying insurances.

**SITUATION**  Worldwide.

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING      (INSURANCE) LTD.

Director

W.R.G   0703

2

and advise us immediately if it is incorrect
or does not meet your requirements.

CONDITIONS        Service of Suit Clause (U.S.A.).
                  4% Tax Clause (if applicable).
                  2x. Agg. Endorsement – subject primaries unimpaired at
                  inception hereon.
                  Cancellation Clause 60 days.
                  N.M.A. 1687 (amended as expiring).
                  N.M.A. 1685 except in respect of oil and gas operations which
                  subject N.M.A. 1683 other than operations on, over or under
                  water which subject to N.M.A. 1684.

PREMIUM           80% of Minimum and Deposit $1,650,000 (payable 1/3rd annually)
                  adjustable annually at 9-1/4£%o on gross receipts.
                  Plus Additional Premium $18,000 annual in respect of coverage
                  provided hereon by Part II Exclusions (A) (B) & (C).

                  Less 4% Federal Excise Tax.

INFORMATION       As over

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG    0704

and advise us immediately if it is incorrect
or does not meet your requirements.

01569

INFORMATION        Assureds operations are basically involved in 3 areas being:

1)   Chemicals which total 54.10% and is split 40.70%
     Industrial and Specialty 13.40%

2)   Consumer Products which total 38.90% and split 9.10% U.S.
     Specialty Retailing, 6.00% U.S. Restaurants, 23.80% other
     than above plus total Foreign Consumer.

3)   Natural Resources 7%

Estimated Annual Sales:

1979 $4,930,000,000
1980 $5,666,800,000
1981 $6,383,400,000

1979 Annual Payroll $493,749,143

No manufacturing or relabelling on packaging of Pharmaceutical
Products by the Assured other than resulting from operations of
HPI Hospital Pharmacies Division of Daylin Inc.
No change in expiring information regarding Mining Operations
and Aviation Products Exposure.

Hereon         COMPANIES (as attached) 100%

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG    0705

4

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

C137 0

## EXCLUSIONS (ADDITIONAL TO FORM)

### W.R. GRACE.

## PART 1

(A) Property Damage arising from:

1) Erroneous delivery of seeds, erroneous substitution of one seed for another, or mislabeling of seeds;
2) Cross pollination;
3) Germination failure;
4) The presence of noxious weed seed;
5) Natural shrinkage of grain;
6) Loss of and/or damage and/or deterioration from delay or from moisture content of grain;
7) Commingling of grain;

(B) 1) To liability arising under any policy of insurance or reinsurance;.
   2) To liability arising out of the issuance, non-issuance, declination or cancellation of, or the imposition of special terms to any policy of insurance or reinsurance;

(C)    In respect of oil/gas drilling and/or exploration operations:

   (i)  cost of control of any oil/gas well
   (ii) loss of hole and/or in hole equipment

## PART II

(A) Charterers Liability;
(B) Safe berthing of any marine vessel;
(C) Marine vessels in Assureds Care, Custody or Control;
(D) Non owned watercraft liability
(E) Contractual;
(F) Incidental malpractice

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

5

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

(G)  In respect of oil/gas drilling and/or exploraion operations:

       (i)   explosion, blowout and/or cratering
      (ii)  underground Property Damage not already excluded by N.M.A.
          1683/4/5;

(H)  Data processors Errors and Omissions;
(I)  Liability resulting form ownership, maintenance and/or operations of any dock,
     wharf and/or quay facility
(J)  Insurance brokers errors and omissions;
(K)  Punitive and/or Exemplary Damages;
(L)  Pharmacists Liability.

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc.
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG    0707

6

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

01572

## WARRANTIES - W.R. GRACE UMBRELLA.

(1) Notwithstanding scheduled underlying polices contain limits in respect of products recall and architects Errors and Omissions, no coverage provided hereon and for the purposes of the policy Underlying Coverages not be impaired by such exposure.

(2) Physical damage coverage maintained for 100% values in respect of all H.P.R. properties and blanket block policy for $50,000,000 excess of $1,000,000 deductible maintained for all other real property, all property in Assured's Care, Custody and Control coverd by such policies.

(3) No step down excess of Self Insured Retention hereon in the event of any loss not being covered by scheduled primaries due to deductible contained therein.

For the attention of Tom Clarke/Frank Masalla,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG    0708

7

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

## W.R. GRACE & CO.
### SCHEDULE OF UNDERLYING INSURANCE

01573

| COVERAGE | | LIMIT | CARRIER |
|---|---|---|---|
| **I. DOMESTIC GL AND AL:** | | | |
| * A.) General/Products Liability | B.I. | $1,000,000 Each Occurrence<br>$2,000,000 Aggregate Products Only | C.N.A. |
| | P.D. | $1,000,000 Each Occurrence<br>$2,000,000 Aggregate Products Only | C.N.A. |
| B.) Employee Benefits | | $ 500,000 Each Claim<br>$ 750,000 Annual Aggregate | C.N.A. |
| C.) Care, Custody and Control | | $1,000,000 Each Occurrence | C.N.A. |
| D.) Advertisers Liability | | $ 500,000 Each Occurrence | C.N.A. |
| E.) Automobile Liability | B.I. | $1,000,000 Each Occurrence | C.N.A. |
| | P.D. | $1,000,000 Each Occurrence | C.N.A. |

\* W.R. Grace & Co. assumes the first $500,000 of each loss within the
framework of a retrospective rating plan. The premiums indicated are for
insurance excess of $500,000 up to policy limits. The combination of the
$500,000 Loss Assumption and pure insurance is equal to the limits shown
above.

| II. EMPLOYERS LIABILITY: | | |
|---|---|---|
| A) Employers' Liability including Occupational Disease | $ 500,000 Each Employee<br>$ 500,000 Each Accident | C.N.A. |

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc.
1221, Avenue of the Americas,
New York.
N.Y. 10020
U.S.A.

8

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

| | | |
|---|---|---|
| B) Amendment of Coverage B Maritime (Jones Act) | Bodily Injury by Accident $500,000 Each Employee $500,000 Each Accident Bodily Injury by Disease $300,000 Each Employee $500,000 Aggregate Disease (Per State) | C.N.A. 01374 |
| C) U.S. F.L. & H.W.A. | $250,000 Each Employee $500,000 Each Accident | C.N.A. |
| IV.1. AIRCRAFT LIABILITY (Excluding Non-Ownership) | $15,000,000 Combined Single Limit including Voluntary Settlements of $250,000 Per Person – including Crew (Part of and not in addition to the $10,000,000 Limit) | U.S.A.I.G. |
| A) Care, Custody or Control | $ 1,000,000 Each and Every Loss (with respect to Hangars, Buildings or Other Property or Contents thereof required by Lease or Other Agreement or if Insurance is purchased) | U.S.A.I.G. |
| B) Non-Ownership Hull Liability | $ 5,000,000 Per Occurrence and Aggregate | U.S.A.I.G. |
| C) Aircraft Non-Ownership Liability | $10,000,000 Combined Single Limit | U.S.A.I.G. |
| 2) GROUND HANGARKEEPERS LIABILITY | $2,000,000 Each Aircraft $2,000,000 Each Occurrence | U.S.A.I.G. |

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
J    nue of the Americas,
N.Y  ,020
U.S.A.

9

and advise us immediately if it is incorrect
or does not meet your requirements.

01575

| | | |
|---|---|---|
| IV. A) CHARTERER'S LIABILITY/ <br><br> WHARFINGERS LIABILITY <br> for W.R. Grace & Co. | *$2,000,000 Damage to Vessel <br> and Cargo <br> $2,000,000 Demurrage and <br> removal of Wreck <br> $2,000,000 Collision (Third Party <br> Including Demurrage - P.D.) <br> $2,000,000 Each Person <br> $2,000,000 Each Accident <br> Third Party Bodily Injury <br> Liability including Liability to <br> Crew of Chartered Vessel <br> $    5,000 Deductible Each Accident | Arkwright-Boston <br> Manufacturers <br> Insurance Co. |

* Limit will increase to $5,000,000 when and if a sulphur shipment takes place. The increased limit will remain in effect for the duration of policy term. To date no sulphur shipments have taken place and none anticipated for current policy period.

| | | |
|---|---|---|
| B) CHARTERER'S LIABILITY <br><br> for Aruba Chemical <br> Industries, N.V. | $2,000,000 Damage to Vessel <br> and Cargo <br><br> $2,000,000 Demurrage or Removal <br> of Wreck. <br> $2,000,000 Collision (Third Party) <br> including Demurrage - P.D. <br> $2,000,000 Each Person <br> $2,000,000 Each Accident <br> Third Party Bodily Injury <br> Liability including Liability to <br> Crew of Chartered vessel. <br> $    5,000 Deductible Each Accident. | Arkwright-Boston <br> Manufacturers <br> Insurance Co. |

| | | |
|---|---|---|
| V. P.M. & G. ASSOCIATES, INC. <br> A) Insurance Brokers Errors <br> and Omission Coverage | $2,000,000 Each Claim/Aggregate <br> $    5,000 Deductible Per Claim | Employers <br> Reinsurance <br> Corporation |
| B) Excess Insurance Brokers <br> Errors and Omission Coverage | $1,000,000 Each Claim/Aggregate <br> Excess of $2,000,000 <br><br> $2,000,000 Excess of <br> $3,000,000 | Adriatica <br> Insurance <br> Company. <br> North River <br> Ins. Co. |

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG     0711

10

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

01576

# VII. FOREIGN INSURANCE

A) W.R. Grace & Co.

$1,000,000 Per Occurrence B.I. & P.D.    Granite State
CSL for G.L. and A.L. Combined

Worldwide Comprehensive        $2,000,000 Aggregate Products
General and Automobile         $2,000,000 Aggregate Property Damage
                                          Per Location
Liability Program              $ 250,000 Self-Insured for Property
                                          in Insured's Care, Custody
                                          and Control

B) Grace Petroleum Libya Inc.

1) General Liability        B.I. $300,000 each Occurrence      Granite
   including Products Liability   $300,000 Annual Aggregate     State
                            P.D. $250,000 Each Occurrence
                                 $300,000 Annual Aggregate

2) Automobile Liability     B.I. $250,000 each Person          Granite
                                 $300,000 each Occurrence       State
                            P.D. $250,000 each Occurrence

3) Employer's Liability          $250,000 each Person          Granite
                                 $250,000 each Accident         State.

For the attention of Tom Clarke/Frank Masella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG    0712

11

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements 01577

100% (48.05% WALBROOK INSURANCE COMPANY LIMITED
( 6.49% EL PASO INSURANCE COMPANY LIMITED
(11.69% MUTUAL REINSURANCE COMPANY LIMITED
(12.99% DART INSURANCE COMPANY LIMITED
(11.04% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
( 9.74% ST. KATHERINE INSURANCE COMPANY LIMITED

Hereon                100%

For the attention of Tom Clarke/Frank Masella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG    0713

C. T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers
NORTH AMERICAN NON-MARINE INSURANCE DIVISION

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

01578

| | |
|---|---|
| P.O. BOX 145. | TELEPHONE: 01-283 3100 |
| THE BOWRING BUILDING. | TELEGRAMS: BOWINSUR |
| TOWER PLACE, | LONDON EC3 |
| LONDON. EC3P 3BZ | TELEX: 882191 |
| (Registered Office) | Registered No. 76170 London |

Date  8th August, 1979

VAT No. 244 2817 79

In accordance with instructions we have amended cover as follows:

### A/C: W.R. GRACE & CO. ET AL.

Agreed include BOOKER DRILLING COMPANY effective inception.

W.R. GRACE primary carrier (CNA) will include BOOKER on a "Difference Between" basis up to CNA total primary limits until BOOKER totally absorbed when BOOKER'S existing Primary Policies will be cancelled and totally included in the CNA programme.

INFORMATION.

CNA Primary Premiums:     GL $ 11,218 AUTO $ 192

Receipts $28,465,000 (1979 estimated) (.4% of W.R. GRACE)

Payroll  $ 7,600,000

Loss Experience:    1976 $147,533 Total GL
                    1977 $ 73,165 Total GL

No owned/non owned Watercraft/Aircraft

8 Auto units.

BOOKER perform "workover" and "completion work" operations. No drilling of either production or exploratory wells.

Receipts to be included in Adjustment hereon.

For the attention of Tom Clarke/Frank Masella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

All Other Terms and Conditions Remaining Unchanged

C. T. BOWRING & CO. (INSURANCE) LTD.

Director

C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers
NORTH AMERICAN NON-MARINE INSURANCE DIVISION

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

C1579

P.O. BOX 145.              TELEPHONE: 01-283 3100

THE BOWRING BUILDING.     TELEGRAMS: BOWINSUR
TOWER PLACE.                          LONDON EC3
LONDON. EC3P 3BE          TELEX: 882191

(Registered Office)       Registered No. 78170 London

Date _____ 6th September, 1979 _____

VAT No. 244 2517 79

In accordance with instructions we have amended cover as follows:

## A/C: W.R. GRACE & CO. ETAL.

Noted and agreed affective inception that in reference to the inclusion of
Booker Drilling Company the W.R. GRACE primary carrier (CNA) is excess and
difference in conditions over Bookers existing program and not as stated
in the previous addendum attaching hereto.

$\beta\gamma$ 11/5/79

All Other Terms and Conditions Remaining Unchanged

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWR··    ··CO. (INSURANCE) LTD.

_Alc_____ p.p.   Director

WRG __ 0715

# Bowring

COPY COVER NOTE

01580

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers
AMERICAN NON-MARINE DIVISION

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

| | |
|---|---|
| P.O. BOX 145, | TELEPHONE: 01-283 3100 |
| THE BOWRING BUILDING, | TELEGRAMS: BOWINSUR LONDON EC3 |
| TOWER PLACE, | |
| LONDON, EC3P 3BE | TELEX: 882151 |
| (Registered Office) | Registered No. 78170 London |

Please always quote this No. **PY107779**

Date **2nd August, 1979**

VAT No. 244 2517 79

Renewing No. 35446

In accordance with your instructions we have arranged cover as follows:

**TYPE** — UMBRELLA LIABILITY INCLUDING EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974). EXCLUSIONS AS ATTACHED.

**FORM** — WORDING AS EXPIRING AS FAR AS APPLICABLE TO BE AGREED BY UNDERWRITERS.

**ASSURED** — W.R. GRACE & CO. et al and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter consituted plus joint ventures as expiring.

**PERIOD** — 36 months at 30th June, 1979.

**INTEREST** — Coverage in respect of all the insureds operations.

**SUM INSURED** — 80% of
$5,000,000     each occurrence (Aggregates Products and Occupational Disease)
Excess of
(A)  The amount covered under underlying insurances as per schedule
(B)  $100,000 each occurrence in respect of losses not covered by said underlying insurances.

**SITUATION** — Worldwide.

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE)

CONTINUATION SHEET

No.     FY107779

01581

2

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

| | |
|---|---|
| <u>CONDITIONS</u> | Service of Suit Clause (U.S.A.). |
| | 4% Tax Clause (if applicable). |
| | Ex. Agg. Endorsement - subject primaries unimpaired at ~ 87% inception hereon. |
| | Cancellation Clause 60 days. |
| | N.M.A. 1687 (amended as expiring). |
| | N.M.A. 1685 except in respect of oil and gas operations which subject N.M.A. 1683 other than operations on, over or under water which subject to N.M.A. 1684. |
| | |
| <u>PREMIUM</u> | 80% of Minimum and Deposit $1,650,000 (payable 1/3rd annually) adjustable annually at 9-1/4% on gross receipts. |
| | Plus Additional Premium $18,000 annual in respect of coverage provided hereon by Part II Exclusions (A) (B) & (C). |
| | |
| | Less 4% Federal Excise Tax. |
| | |
| <u>INFORMATION</u> | As over |

For the attention of Tom Clarke/Frank Nasello,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

CONTINUATION SHEET   No   )   PY137779           01382

3                    Please examine this document carefully
                     and advise us immediately if it is incorrect
                     or does not meet your requirements.

INFORMATION          Assureds operations are basically involved in 3 areas being:

                     1)  Chemicals which total 54.10% and is split 40.70%
                         Industrial and Specialty 13.40%

                     2)  Consumer Products which total 38.90% and split 9.10% U.S.
                         Specialty Retailing, 6.00% U.S. Restaurants, 23.80% other
                         than above plus total Foreign Consumer.

                     3)  Natural Resources 7%

                     Estimated Annual Sales:

                     1979 $4,930,000,000
                     1980 $5,666,800,000
                     1981 $6,383,400,000

                     1979 Annual Payroll $493,749,143

                     No manufacturing or relabelling on packaging of Pharmaceutical
                     Products by the Assured other than resulting from operations of
                     HPI Hospital Pharmacies Division of Daylin Inc.
                     No change in expiring information regarding Mining Operations
                     and Aviation Products Exposure.


Hereon               COMPANIES (as attached) 100%


For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG    0718

4                    Please examine this document carefully
                     and advise us immediately if it is incorrect
                     or does not meet your requirements.

## EXCLUSIONS (ADDITIONAL TO FORM)

### W.R. GRACE.

PART 1

(A) Property Damage arising from:

1) Erroneous delivery of seeds, erroneous substitution of one seed for another, or mislabeling of seeds;
2) Cross pollination;
3) Germination failure;
4) The presence of noxious weed seed;
5) Natural shrinkage of grain;
6) Loss of and/or damage and/or deterioration from delay or from moisture content of grain;
7) Commingling of grain;

(B) 1) To liability arising under any policy of insurance or reinsurance;
2) To liability arising out of the issuance, non-issuance, declination or cancellation of, or the imposition of special terms to any policy of insurance or reinsurance;

(C) In respect of oil/gas drilling and/or exploration operations:

(i) cost of control of any oil/gas well
(ii) loss of hole and/or in hole equipment

PART II

(A) Charterers Liability;
(B) Safe berthing of any marine vessel;
(C) Marine vessels in Assureds Care, Custody or Control;
(D) Non owned watercraft liability
(E) Contractual;
(F) Incidental malpractice

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG    0719

CONTINUATION SHEET    No. F1107773

5.

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

(G) In respect of oil/gas drilling and/or exploration operations:

      (i)  explosion, blowout and/or cratering
      (ii) underground Property Damage not already excluded by N.M.A.
           1683/4/5;

(H) Data processors Errors and Omissions;
(I) Liability resulting form ownership, maintenance and/or operations of any dock,
    wharf and/or quay facility
(J) Insurance brokers errors and omissions;
(K) Punitive and/or Exemplary Damages;
(L) Pharmacists Liability.

For the attention of Tom Clarke/Frank Nazella,
Marsh & McLennan, Inc.
1221, Avenue of the Americas,
New York.
N.Y. 10070
U.S.A.

WRG    0720

6

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

## WARRANTIES – W.R. GRACE UMBRELLA.

(1) Notwithstanding scheduled underlying polices contain limits in respect of products recall and architects Errors and Omissions, no coverage provided hereon and for the purposes of the policy Underlying Coverages not be impaired by such exposure.

(2) Physical damage coverage maintained for 100% values in respect of all H.P.R. properties and blanket block policy for $50,000,000 excess of $1,000,000 deductible maintained for all other real property, all property in Assured's Care, Custody and Control coverd by such policies.

(3) No step down excess of Self Insured Retention hereon in the event of any loss not being covered by scheduled primaries due to deductible contained therein.

For the attention of Tom Clarke/Frank Natella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

CONTINUATION SHEET    No. PT107779    01586

7

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

W.R. GRACE & CO.
SCHEDULE OF UNDERLYING INSURANCE

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| I.  DOMESTIC GL AND AL: | | |
| * A.) General/Products Liability | B.I. $1,000,000 Each Occurrence | C.N.A. |
| | $2,000,000 Aggregate Products Only | |
| | P.D. $1,000,000 Each Occurrence | C.N.A. |
| | $2,000,000 Aggregate Products Only | |
| B.) Employee Benefits | $ 500,000 Each Claim | C.N.A. |
| | $ 750,000 Annual Aggregate | |
| C.) Care, Custody and Control | $1,000,000 Each Occurrence | C.N.A. |
| D.) Advertisers Liability | $ 500,000 Each Occurrence | C.N.A. |
| E.) Automobile Liability | B.I. $1,000,000 Each Occurrence | C.N.A. |
| | P.D. $1,000,000 Each Occurrence | C.N.A. |

* W.R. Grace & Co. assumes the first $500,000 of each loss within the
framework of a retrospective rating plan. The premiums indicated are for
insurance excess of $500,000 up to policy limits. The combination of the
$500,000 Loss Assumption and pure insurance is equal to the limits shown
above.

II. EMPLOYERS LIABILITY:

| | | |
|---|---|---|
| A) Employers' Liability including Occupational Disease | $ 500,000 Each Employee | C.N.A. |
| | $ 500,000 Each Accident | |

For the      tion of Tom Clarke/Frank Masella,
Marsh & M     man, Inc.
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG    0722

CONTINUATION SHEET    No.    — FY107779 —    C1587

8

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

| | | |
|---|---|---|
| B) Amendment of Coverage B Maritime (Jones Act) | Bodily Injury by Accident $500,000 Each Employee $500,000 Each Accident Bodily Injury by Disease $500,000 Each Employee $500,000 Aggregate Disease (Per State) | C.N.A. |
| C) U.S. F.L. & H.W.A. | $250,000 Each Employee $500,000 Each Accident | C.N.A. |
| III. 1. AIRCRAFT LIABILITY (Excluding Non-Ownership) | $15,000,000 Combined Single Limit including Voluntary Settlements of $250,000 Per Person – including Crew (Part of and not in addition to the $10,000,000 Limit) | U.S.A.I.G. |
| A) Care, Custody or Control | $ 1,000,000 Each and Every Loss (with respect to Hangars, Buildings or Other Property or Contents thereof required by Lease or Other Agreement or if Insurance is purchased) | U.S.A.I.G. |
| B) Non-Ownership Hull Liability | $ 5,000,000 Per Occurrence and Aggregate | U.S.A.I.G. |
| C) Aircraft Non-Ownership Liability | $10,000,000 Combined Single Limit | U.S.A.I.G. |
| 2) GROUND HANGARKEEPERS LIABILITY | $2,000,000 Each Aircraft $2,000,000 Each Occurrence | U.S.A.I.G. |

For the attention of Don Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG    0723

CONTINUATION SHEET

No   FY107779

9

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

IV
V. A) CHARTERER'S LIABILITY/         *$2,000,000 Damage to Vessel        Arkwright-Boston
                                        and Cargo                          Manufacturers
   WHARFINGERS LIABILITY            $2,000,000 Demurrage and             Insurance Co.
   for W.R. Grace & Co.                 removal of Wreck
                                    $2,000,000 Collision (Third Party
                                    Including Demurrage - P.D.)
                                    $2,000,000 Each Person
                                    $2,000,000 Each Accident
                                    Third Party Bodily Injury
                                    Liability including Liability to
                                    Crew of Chartered Vessel
                                    $   5,000 Deductible Each Accident

* Limit will increase to $5,000,000 when and if a sulphur shipment takes
place. The increased limit will remain in effect for the duration of
policy term. To date no sulphur shipments have taken place and none
anticipated for current policy period.

    B) CHARTERER'S LIABILITY         $2,000,000 Damage to Vessel        Arkwright-Boston
                                        and Cargo                          Manufacturers
       for Aruba Chemical                                                Insurance Co.
       Industries, N.V.             $2,000,000 Demurrage or Removal
                                        of Wreck.
                                    $2,000,000 Collision (Third Party)
                                    including Demurrage - P.D.
                                    $2,000,000 Each Person
                                    $2,000,000 Each Accident
                                    Third Party Bodily Injury
                                    Liability including Liability to
                                    Crew of Chartered vessel.
                                    $   5,000 Deductible Each Accident.

V
VI. P.M. & G. ASSOCIATES, INC.       $2,000,000 Each Claim/Aggregate    Employers
    A) Insurance Brokers Errors      $   5,000 Deductible Per Claim     Reinsurance
       and Omission Coverage                                            Corporation

    B) Excess Insurance Brokers      $1,000,000 Each Claim/Aggregate    Adriatica
       Errors and Omission Coverage  Excess of $2,000,000               Insurance
                                                                        Company.
                                     $2,000,000 Excess of               North River
                                     $3,000,000                         Ins. Co.

┌                        ┐

For the attention of Tom Cla___   ___nk Vasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG   0724

10

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

☑
VII. FOREIGN INSURANCE

A) W.R. Grace & Co.                    $1,000,000 Per Occurrence B.I. & P.D.     Granite State
                                       CSL for G.L. and A.L. Combined
   Worldwide Comprehensive            $2,000,000 Aggregate Products
   General and Automobile             $2,000,000 Aggregate Property Damage
                                                  Per Location
   Liability Program                  $  250,000 Self-Insured for Property
                                                  in Insured's Care, Custody
                                                  and Control

B) Grace Petroleum Libya Inc.

   1) General Liability          B.I. $300,000 each Occurrence          Granite
      including Products Liability     $300,000 Annual Aggregate          State
                                 P.D. $250,000 Each Occurrence
                                      $300,000 Annual Aggregate

   2) Automobile Liability       B.I. $250,000 each Person               Granite
                                      $300,000 each Occurrence            State
                                 P.D. $250,000 each Occurrence

   3) Employer's Liability            $250,000 each Person               Granite
                                      $250,000 each Accident              State.

For the attention of Tom Clarke/Frank
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

CONTINUATION SHEET

No. ) -    C1590

11

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

100% (48.05% WALBROOK INSURANCE COMPANY LIMITED
     ( 6.49% EL PASO INSURANCE COMPANY LIMITED
     (11.69% MUTUAL REINSURANCE COMPANY LIMITED
     (12.99% DART INSURANCE COMPANY LIMITED
     (11.04% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
     ( 9.74% ST. KATHERINE INSURANCE COMPANY LIMITED

Hereon    100%

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

WRG    0726

Attaching to and forming part of Cover Note No.                    T107779

# Bowring

## C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers
NORTH AMERICAN NON-MARINE INSURANCE DIVISION

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.       01591

P.O. BOX 145.                TELEPHONE: 01-283 3100

THE BOWRING BUILDING.        TELEGRAMS: BOWINSUR
TOWER PLACE.                              LONDON EC3
LONDON, EC3P 3BE             TELEX: 882191                  Date  8th August, 1979
(Registered Office)          Registered No. 78170 London    VAT No. 244 2517 78

In accordance with instructions we have amended cover as follows:

## A/C: W.R. GRACE & CO. ET AL.

Agreed include BOOKER DRILLING COMPANY effective inception.

W.R. GRACE primary carrier (CNA) will include BOOKER on a "Difference
Between" basis up to CNA total primary limits until BOOKER totally
absorbed when BOOKER'S existing Primary Policies will be cancelled and
totally included in the CNA programme.

## INFORMATION.

CNA Primary Premiums:   GL $ 11,218 AUTO $ 192

Receipts $23,465,000 (1979 estimated) (.4% of W.R. GRACE)

Payroll  $ 7,600,000

Loss Experience:   1976 $147,533 Total GL
                   1977 $ 73,165 Total GL

No owned/non owned Watercraft/Aircraft

8 Auto units.

BOOKER perform "workover" and "completion work" operations. No drilling of
either production or exploratory wells.

Receipts to be included in Adjustment hereon.

All Other Terms and Conditions Remaining Unchanged

For the attention of Tom Clarke/Frank Masella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,        C.T. BOWRING        (INSURANCE) LTD.
New York,
N.Y. 10020
U.S.A.

WRG      0727



| R'S CODE | NAME AND LOCATION | | PREVIOUS POLICY NUMBER | ICY PREFIX AND NUMBER |
|---|---|---|---|---|
| 359 920 a | Marsh & McLennan | | New | J-80 | XLX-137 04 27 |

| BRANCH | | | | |
| | 3328971634 | | | 0 |

| CO 01 | COVERAGE PROVIDED IN COMPANY DESIG. INATED BY NUMBER | 01 FIREMAN'S FUND 18 THE AMERICAN 07 NATIONAL SURETY |

**ITEM 1.** INSURED'S NAME AND ADDRESS (NO. STREET, TOWN COUNTY, STATE)

W. R. Grace & Co.
1114 Avenue of the Americas
New York, NY 10036

**POLICY PERIOD:**

**ITEM 2.**

| 7-1-79 | 6-30-80 |
|---|---|
| INCEPTION (MO DAY YR ) | EXPIRATION (MO DAY YR ) |

12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

AGENT PLEASE SHOW RATE OF COMMISSION ▶

**ITEM 3.**   LIMIT OF LIABILITY:

| | | |
|---|---|---|
| $ 4,000,000 | EACH OCCURRENCE | P/O $50,000,000 |
| $ 4,000,000 | AGGREGATE | |

**ITEM 4.**   UNDERLYING INSURANCE LIMIT OF LIABILITY

| | |
|---|---|
| $ 150,000,000 | EACH OCCURRENCE |
| $ 150,000,000 | AGGREGATE |

**ITEM 5.**   PREMIUM BASIS

$ Flat charge

**ITEM 6.**

| ADVANCE PREMIUM: $ | 3,988. |
|---|---|
| ANNUAL MINIMUM PREMIUM: $ | 4,000. |

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $ 800. AS THE POLICY MINIMUM PREMIUM.

**ITEM 7.** SCHEDULE OF UNDERLYING INSURANCE.

See endorsement #1

## FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

### INSURING AGREEMENTS

**1. Coverage.** To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

**2. Limit of Liability.** The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this

policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

**3. Policy Period.** This policy applies only to occurrences which take place during the policy period.

### DEFINITIONS

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage

### CONDITIONS

**1. Maintenance of Primary Insurance.** The Insured warrants and it is a condition of this policy, that at the inception of this policy insurance afforded by the underlying policies of insurance is fully

(Continued on Page Two)

| COUNTERSIGNATURE DATE | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|
| 8-24-79 vs | |

BLANKET EXCESS LIABILITY POLICY (FOLLOWING FORM) 5902—2 72

BRANCH COPY

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period. such underlying insurance is not maintained in full effect by the ...sured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

**2. Notice of Occurance.** The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

**3. Payment of Loss.** It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the liability of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Company in conformity with this policy. Bankruptcy or insolvency of ...sured shall not relieve the Company of any of its obligations ...nder.

**4. Payment of Expenses.** Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the

Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

**5. Appeal.** In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

**6. Subrogation.** In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

**7. Premium.** The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

**8. Cancellation.** This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured adjustment of premium shall be at short rate, and if cancelled by the Company, adjustment shall be made pro rata. However, in the event of cancellation or termination of the underlying insurance, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be given by the Company to the Insured at the address shown in the declarations. Payment or tender of unearned premium is not a condition of cancellation.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

nuclear material is contained in spent fuel or waste at ... possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating

(Continued on Next Page)

(Continued from Preceding Page)

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

Benedict

SECRETARY

Myron Du Bain

PRESIDENT

FINAL PAGE

## SCHEDULE OF UNDERLYING INSURANCE

#1

| Layer | Participation |
|---|---|
| A) $5,000,000 XS primary | |
| London | $4,000,000 |
| Northbrook | 1,000,000 |
| | |
| B) $15,000,000 XS $5,000,000 | |
| London | $7,500,000 |
| Northbrook | 3,750,000 |
| Granite State | 3,750,000 |
| | |
| C) $30,000,000 XS $20,000,000 | |
| London | $15,000,000 |
| AIU Ins. Co. | 3,000,000 |
| Transit | 2,000,000 |
| Hartford | 2,000,000 |
| Granite State | 7,000,000 |
| Gerling Konzern | 1,000,000 |
| | |
| D) $25,000,000 XS $50,000,000 | |
| London | 4,000,000 |
| Integrity | 2,000,000 |
| Northbrook | 7,000,000 |
| National Union | 1,000,000 |
| Transit | 5,000,000 |
| Granite State | 4,000,000 |
| aiu | 2,000,000 |

| POLICY NUMBER | INSURED | EFFECTIVE |
|---|---|---|
| XLX-137 04 27 | W. R. Grace & Co. | 7-1-79 |

FIREMAN'S FUND INSURANCE COMPANY
THE AMERICAN INSURANCE COMPANY
NATIONAL SURETY CORPORATION
ASSOCIATED INDEMNITY CORPORATION
AMERICAN AUTOMOBILE INSURANCE COMPANY

*Myron du Bain*
PRESIDENT    70 A

PRODUCER

COUNTERSIGNATURE OF AUTHORIZED AGENT

180001—1-65  SETS

## SCHEDULE OF UNDERLYING INSURANCE

| Layer | Participation |
|---|---|
| **E) $25,000,000 XS $75,000,000** | |
| City Insurance | $5,500,000 |
| Granite State | 8,500,000 |
| Reunion Adriatica | 1,000,000 |
| National Union | 6,000,000 |
| Transit | 3,000,000 |
| Hartford | 1,000,000 |
| | |
| **F) $50,000,000 XS $100,000,000** | |
| National Union | $10,000,000 |
| Hartford | 2,000,000 |
| Federal | 5,000,000 |
| City Insurance | 5,000,000 |
| AIU Insurance | 1,500,000 |
| Allianz | 1,000,000 |
| Swiss Re | 2,000,000 |
| Zurich | 1,500,000 |
| Associated International | 5,000,000 |
| Bermuda Fire & Marine | 1,500,000 |
| Fireman's Fund | 4,000,000 |
| Centennial Insurance Co. | 4,000,000 |
| Midland | 3,000,000 |
| Birmingham Fire | 2,000,000 |
| London | 2,500,000 |

| POLICY NUMBER | INSURED | EFFECTIVE |
|---|---|---|
| XLX-137 04 27 | W. R. Grace & Co. | 7-1-79 |

| | PRODUCER |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY<br>THE AMERICAN INSURANCE COMPANY<br>NATIONAL SURETY CORPORATION<br>ASSOCIATED INDEMNITY CORPORATION<br>AMERICAN AUTOMOBILE INSURANCE COMPANY<br>*Mijun Du Bain*<br>PRESIDENT            70.X | COUNTERSIGNATURE OF AUTHORIZED AGENT |

180001—1-65  SETS

3328971637

Architects, Engineers or Surveyors-Professional Liability Exclusion 2          #2

It is agreed that this policy shall not apply to any liability arising out of any professional services performed by or for the Insured, including, but not limited to

(A) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and

(B) supervisory, inspection or engineering services.

Accepted:

Named Insured or Executive Officer

| POLICY NUMBER | INSURED | EFFECTIVE |
|---|---|---|
| XLX-117 04 27 | W. R. Grace & Co. | 7-1-79 |

FIREMAN'S FUND INSURANCE COMPANY
THE AMERICAN INSURANCE COMPANY
NATIONAL SURETY CORPORATION
ASSOCIATED INDEMNITY CORPORATION
AMERICAN AUTOMOBILE INSURANCE COMPANY

PRODUCER

COUNTERSIGNATURE OF AUTHORIZED AGENT

PRESIDENT

180009-6-65  SETS