10

# BLANKET EXCESS LIABILITY POLICY
## (FOLLOWING FORM)



Coverage is provided in the Company designated by number,
a stock insurance Company (herein called the Company)

## DECLARATIONS
INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

FIREMAN'S
FUND
INSURANCE
COMPANIES
MAIL ADDRESS
SAN FRANCISCO
CALIFORNIA

**01 FIREMAN'S FUND**
INSURANCE COMPANY          SAN FRANCISCO, CALIFORNIA

**18 THE AMERICAN**
INSURANCE COMPANY          PARSIPPANY, NEW JERSEY

**07 NATIONAL SURETY**
CORPORATION          CHICAGO, ILLINOIS

**13 ASSOCIATED INDEMNITY**
CORPORATION          SAN FRANCISCO, CALIFORNIA

**15 AMERICAN AUTOMOBILE**
INSURANCE COMPANY          CREVE COEUR, MISSOURI

POLICY PERIOD:

ITEM 2.
INCEPTION (MO. DAY YR.)          EXPIRATION (MO. DAY YR.)
12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

| ITEM 3. | LIMIT OF LIABILITY: | | |
|---|---|---|---|
| | | $ | . EACH OCCURRENCE |
| | | $ | . AGGREGATE |
| ITEM 4. | UNDERLYING INSURANCE LIMIT OF LIABILITY | | |
| | | $ | . EACH OCCURRENCE |
| | | $ | . AGGREGATE |
| ITEM 5. | PREMIUM BASIS | ITEM 6. | |
| | | ADVANCE PREMIUM: $ | |
| | $ | ANNUAL MINIMUM PREMIUM: $ | |

THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $
HE POLICY MINIMUM PREMIUM.

7. SCHEDULE OF UNDERLYING INSURANCE:

## FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

### INSURING AGREEMENTS

**1. Coverage.** To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

**2. Limit of Liability.** The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereon account of occurrences during this policy period, this

policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

**3. Policy Period.** This policy applies only to occurrences which take place during the policy period.

### DEFINITIONS

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

### CONDITIONS

**1. Maintenance of Primary Insurance.** The Insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (apply-

(Continued on Page Two)

| COUNTERSIGNATURE DATE | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|
| | |

5902—2-72

IV—D

(Continued from Preceding Page)

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, ...pt for reduction of aggregate limits solely as a result of pay-...t of claims arising out of occurrences during this policy period. ...uch underlying insurance is not maintained in full effect by the Insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

**2. Notice of Occurance.** The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

**3. Payment of Loss.** It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the liability of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Com-...in conformity with this policy. Bankruptcy or insolvency of ...ured shall not relieve the Company of any of its obligations hereunder.

**4. Payment of Expenses.** Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the

Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

**5. Appeal.** In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

**6. Subrogation.** In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

**7. Premium.** The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

**8. Cancellation.** This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate, and if cancelled by the Company, adjustment sh...... pro rata. However, in the event of cancellation or terminati... the underlying insurance, this policy shall cease to ......same time without notice to the Insured. Notice shall be ...... the Company to the Insured at the address shown in the .......... Payment or tender of unearned premium is not a condition of cancellation.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

## (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom; or

b) ...nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means a fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating

(Continued on Next Page)

(Continued from Preceding Page)

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

SECRETARY

PRESIDENT

FINAL PAGE



# FIREMAN'S FUND INSURANCE COMPANY

**A STOCK COMPANY**
HOME OFFICE: SAN FRANCISCO, CALIFORNIA

P.W.D.

# NEW YORK BR.

POLICY NO. **XLX 102 68 77**

## DECLARATIONS

**DESTROY**
6 86
MONTH   YEAR

Item 1.  NAMED INSURED:  **W. R. Grace & Co.**

Item 2.  ADDRESS:  **7 Hanover Square, New York, New York**

Item 3.  POLICY PERIOD: From: **10-20-68**   To: **6-30-71**
(12:01 A.M. Standard Time at address of the Insured)

Item 4.  PREMIUM BASIS:  **Flat Charge**

Item 5.  ADVANCE PREMIUM: **$8,970.00**   ANNUAL MINIMUM PREMIUM: **$**

In the event of cancellation by the Named Insured, the Company shall
receive and retain not less than **$250.00**   as the Policy
Minimum Premium.

Item 6.  SCHEDULE OF UNDERLYING INSURANCE:
1. American Employers   $5,000,000. XS of Primary
2. Home Insurance Co.   $5,000,000. XS of $5,000,000.
3. Ins. Co. of No.America   $10,000,000.XS of $10,000,000.

31 559 920
Marsh & McLennan Inc.
70 Pine Street,
New York, N.Y.

Commission 10 %

N-ES 34A-TJ-7-63



# NEW YORK BR

IT IS UNDERSTOOD AND AGREED THAT THE SECOND SENTENCE OF PARAGRAPH 12 OF THE POLICY IS AMENDED TO READ AS FOLLOWS:

IN THE EVENT OF FAILURE BY THE INSURED SO TO MAINTAIN SUCH INSURANCE OR TO MEET ALL CONDITIONS THEREIN, THE INSURANCE AFFORDED BY THIS POLICY SHALL APPLY IN THE SAME MANNER IT WOULD HAVE APPLIED HAD SUCH INSURANCE BEEN SO MAINTAINED IN FORCE.

| POLICY NUMBER | INSURED | EFFECTIVE |
|---|---|---|
| XLX-102 6877 | W.R. GRACE & CO. | 9/15/69 |

| FIREMAN'S FUND INSURANCE COMPANY<br>THE AMERICAN INSURANCE COMPANY<br>NATIONAL SURETY CORPORATION<br>ASSOCIATED INDEMNITY CORPORATION<br>AMERICAN AUTOMOBILE INSURANCE COMPANY<br>FIREMAN'S FUND INSURANCE COMPANY OF TEXAS | PRODUCER<br><br>MARSH & MC LENNAN, INC.   9/29/69 HR |
|---|---|
| _signature_   PRESIDENT | COUNTERSIGNATURE OF AUTHORIZED AGENT |



180009 – 6-65  SETS

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

FIREMAN'S FUND INSURANCE COMPANY
THE AMERICAN INSURANCE COMPANY
NATIONAL SURETY CORPORATION
ASSOCIATED INDEMNITY CORPORATION
AMERICAN AUTOMOBILE INSURANCE COMPANY       71-X

*Fred H. Meriel*       PRESIDENT

## FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

Policy of Excess Insurance issued by the Fireman's Fund Insurance Company (here-inafter called the "Company") to   W.R.Grace & Co.
(hereinafter called the "Insured").

In consideration of the payment of premium stated in the Declarations,

### THE COMPANY AGREES WITH THE INSURED

1.  To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 6 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy.

2.  The Insured warrants, and it is a condition of this policy, that underlying insurance (applying as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance in an amount not less than $20,000,000. each occurrence is in full force and effect at the inception of this policy, and further that such underlying insurance shall be maintained in full force and effect during the period of this policy, except for reduction of aggregate limits solely as the result of payment of claims arising out of occurrences during the policy period.

3.  The limit of the Company's liability under the policy shall be as follows:

    $5,000,000.    each occurrence   Quota Share Part of
                                     ) $30,000,000. XS of
    $5,000,000.    aggregate         ) $20,000,000.

4.  Except as otherwise provided herein the insurance afforded by this policy shall follow the terms, conditions and definitions as stated in the policies of underlying insurance, except for limits of liability, any renewal agreement and any obligation to investigate or defend.

5.  It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted, provided that the insurance for injury to or destruction of property under this policy shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

6.  The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claim made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

7.  Upon final determination by settlement, award or verdict of the liability
    of the Insured, the Company shall promptly pay the Insured as the Insured
    shall pay, or be required to pay, the amounts of any losses falling within
    the terms or limits of this insurance. All losses covered under this policy
    shall be due and payable by the Company within 30 days after they are
    respectively claimed and proof of loss filed with the Company in conformity
    with this policy. Bankruptcy or insolvency of the Insured shall not
    relieve the Company of any of its obligations hereunder.

8(a).  Loss expenses and legal expenses, including court costs and interest, if
    any, which may be incurred by the Insured with the consent of the Company
    in the adjustment or defense of claims, suits or proceedings shall be
    borne by the Company and the Insured in the proportion that each party's
    share of loss bears to the total amount of said loss. Loss expense
    hereunder shall not include salaries and expense of the Insured's employees
    incurred in investigation, adjustment and litigation.

8(b).  "Ultimate net loss" means all sums actually paid, or which the Insured is
    legally obligated to pay, as damages in settlement or satisfaction of claims
    or suits for which insurance is afforded by this policy, after proper
    deduction of all recoveries or salvage.

9.  In the event the Insured or any underlying insurer elects not to appeal a
    judgment in excess of the amount of the underlying insurance, the Company
    may elect to appeal at its expense and shall be liable for the expenses
    incidental thereto, but in no event shall the liability of the Company
    for ultimate net loss exceed the amount set forth in the policy plus the
    expenses incidental to such appeal.

10.  In the event of any payment under this policy, the Company shall be sub-
    rogated to all the Insured's rights of recovery therefor against any person
    or organization and the Insured shall execute and deliver instruments and
    papers and do whatever else is necessary to secure such rights. The
    Insured shall do nothing after loss to prejudice such rights.

    Any amount recovered as subrogation shall be apportioned in the inverse
    order of payment of loss to the extent of actual payment. The expenses
    of all such recovery proceedings shall be apportioned in the ratio of
    respective recoveries. If there is no recovery in proceedings conducted
    solely by the Company, the Company shall bear the expenses thereof.

11.  The premium for this policy shall be computed upon the basis stated in
    the Declarations. The advance premium stated in the Declarations, unless
    otherwise specified, is an estimated premium only. Upon termination of
    this policy the earned premium shall be computed and if the earned premium
    is more than the advance premium paid, the Named Insured shall pay the
    excess to the Company; if less, the Company shall return to the Named
    Insured the unearned portion, subject to the annual minimum premium stated
    in the Declarations for each twelve months of the policy period, and
    subject further to the policy minimum premium as stated in the Declarations.

12.   This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate, and if cancelled by the Company, adjustment shall be made pro rata.  However, in the event of cancellation or termination of the underlying insurance or a renewal thereof, this policy shall cease to apply at the same time without notice to the Insured.  Notice shall be given by the Company to the Insured at the address shown in the Declarations. Payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

SECRETARY                         PRESIDENT

October 21st, 1968.
COUNTERSIGNATURE DATE                    AUTHORIZED AGENT

FINAL PAGE

N-ES 34A  7-63

PRODUCER'S CODE

POLICY NUMBER

**XLX- 102 68 77**

## EXCESS LIABILITY POLICY



**FIREMAN'S FUND AMERICAN INSURANCE COMPANIES** · HOME OFFICE: SAN FRANCISCO CALIFORNIA

Coverage is provided in the Company designated by number, a stock insurance Company (herein called the Company)

01 FIREMAN'S FUND INSURANCE COMPANY

18 THE AMERICAN INSURANCE COMPANY

07 NATIONAL SURETY CORPORATION

## DECLARATIONS

**ITEM 1.** INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

**ITEM 2.**

| INCEPTION (MO. DAY YR.) | YEARS | EXPIRATION (MO. DAY YR.) |
|---|---|---|

12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

**ITEM 3.** THE INSURANCE AFFORDED IS ONLY WITH RESPECT TO SUCH AND SO MANY OF THE FOLLOWING COVERAGES AS ARE INDICATED BY SPECIFIC LIMIT OR LIMITS OF LIABILITY. AS RESPECTS SUCH COVERAGES THIS POLICY SHALL APPLY AS EXCESS OF THE PRIMARY LIMITS INDICATED, AND THE COMPANY SHALL BE LIABLE ONLY FOR THE DIFFERENCE BETWEEN SUCH PRIMARY LIMITS AND THE COMBINED LIMITS INDICATED, SO THAT THE TOTAL AMOUNT OF INSURANCE SHALL EQUAL SUCH COMBINED LIMITS.

| COVERAGE | | LIMITS OF LIABILITY | |
|---|---|---|---|
| | | PRIMARY LIMITS OF LIABILITY | COMBINED LIMITS OF LIABILITY |
| **A.** BODILY INJURY LIABILITY | | $ ,000 EACH PERSON | $ ,000 EACH PERSON |
| | | $ ,000 EACH ACCIDENT OR OCCURRENCE | $ ,000 EACH ACCIDENT OR OCCURRENCE |
| | | $ ,000 AGGREGATE PRODUCTS/ COMPLETED OPERATIONS | $ ,000 AGGREGATE PRODUCTS/ COMPLETED OPERATIONS |
| **B.** PROPERTY DAMAGE LIABILITY | | $ ,000 EACH ACCIDENT OR OCCURRENCE | $ ,000 EACH ACCIDENT OR OCCURRENCE |
| | | $ ,000 AGGREGATE OPERATIONS | $ ,000 AGGREGATE OPERATIONS |
| | | $ ,000 AGGREGATE PROTECTIVE | $ ,000 AGGREGATE PROTECTIVE |
| | | $ ,000 AGGREGATE PRODUCTS/ COMPLETED OPERATIONS | $ ,000 AGGREGATE PRODUCTS/ COMPLETED OPERATIONS |
| | | $ ,000 AGGREGATE CONTRACTUAL | $ ,000 AGGREGATE CONTRACTUAL |

**ITEM 4.**

**(A)** DEPOSIT PREMIUM $

**(B)** MINIMUM PREMIUM $ ANNUALLY

**(C)** THE FOLLOWING PERCENTAGES OF THE EARNED PREMIUMS PAID UNDER THE POLICY OF THE PRIMARY INSURER SHALL BE USED IN COMPUTATION OF THE FINAL EARNED PREMIUM HEREUNDER.

| | AUTOMOBILE | OTHER THAN AUTOMOBILE |
|---|---|---|
| BODILY INJURY LIABILITY | % | % |
| PROPERTY DAMAGE LIABILITY | % | % |

**ITEM 5.** SCHEDULE OF PRIMARY INSURANCE.

| NAME OF PRIMARY INSURER(S) | POLICY NUMBER(S) |
|---|---|
| | |

| COUNTERSIGNATURE DATE | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|

## THE COMPANY

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, conditions and other terms of this policy:

## INSURING AGREEMENTS

I. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

(a) Bodily injury, sickness or disease, including death at any time resulting therefrom, herein referred to as "bodily injury," sustained by any person or persons; and

(b) Injury to or destruction of property, including loss of use thereof, herein referred to as "property damage";

and arising out of the hazards covered by and as defined in the primary policy or policies specified in the declarations as primary insurance and issued by the Primary Insurer or Insurers indicated.

II. The insurance afforded by this policy is excess over the amount of primary limits stated in Item 3 of the declarations and applies only (1) after the Primary Insurer has paid or shall have been held liable to pay such primary limits plus costs, or (2) in the event the insured has by final judgment been adjudged to pay a sum which exceeds the limits of liability of the Primary Insurer and the Primary Insurer has admitted liability for the amount of such limits, plus costs covered by its policy which are incidental thereto.

## DEFINITIONS

1. COSTS. The word "Costs" means interest on judgments, investigation, adjustment and legal expenses excluding all expenses for salaried employees and retained counsel and all office expenses of the insured.

2. PERIOD OF INSURANCE. The words "period of insurance" mean the policy period stated in Item 2 of the declarations.

3. PRIMARY INSURER. "Primary Insurer" means the Insurer or Insurers specified in Item 5 of the declarations.

4. PRIMARY INSURANCE. "Primary insurance" means the policy or policies specified in Item 5 of the declarations and issued by the Primary Insurer.

5. PRIMARY LIMITS. "Primary limits" means the total amount of all policy limits of liability applicable under primary insurance.

6. COMBINED LIMITS. "Combined limits" means the total amount of all policy limits of liability applicable under both primary insurance and this policy combined.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

ATTACH ENDORSEMENTS HERE

# CONDITIONS

1. PAYMENT OF COSTS.

(a) In the event of claim or claims arising which are terminated by settlement or judgment for not more than the primary limits, then no costs shall be payable by the Company.

(b) Should, however, the amount of settlement or judgment for which such claim or claims are terminated exceed the primary limits, such costs as are incurred personally by the insured with the written consent of the Company and which are not covered by primary insurance, will be paid by the Company. Provided, however, that payment of interest shall be limited to interest accruing after entry of judgment on such part thereof as does not exceed the Company's limit of liability thereon, until the Company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon.

2. MAINTENANCE OF PRIMARY INSURANCE. At the inception of this policy the primary insurance with primary limits as stated in the declarations shall be in full force and effect and thereafter shall be maintained in full force and effect without change, except for reduction of the aggregate primary limits of liability solely by reason of claims with respect to bodily injury or property damage occurring during the period of this policy.

Failure to maintain the primary insurance, any change in the Primary Insurer or any change in the primary insurance, except as provided above with respect to aggregate primary limits of liability, shall constitute a breach of this condition by the named insured and shall automatically terminate this policy without notice unless the Company consents thereto by endorsement issued to form part of this policy. Premium adjustment shall be made as soon as practicable thereafter but payment or tender of unearned premium is not a condition of termination.

In the event of change in the premium or rating of the primary insurance while this policy is in force, the named insured shall notify the Company in writing as soon as practicable and, at the option of the Company, the premium hereon may be adjusted accordingly.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the primary insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to the following:

(a) premium;

(b) the obligation to investigate and defend;

(c) the amount and limits of liability;

(d) any renewal agreement.

3. PREMIUM. The deposit premium stated in the declarations is an estimated premium only. Upon termination of this policy, or at such other time as may be specified herein, the earned premium shall be computed in accordance with the method of computation stated in the declarations. If the earned premium thus computed exceeds the deposit premium paid, the named insured shall pay the amount in excess thereof to the Company; if less, the Company shall return to the named insured the unearned portion paid. In no event shall the earned premium be less than the minimum premium stated in the declarations, or the short rate or pro rata adjustment of the minimum premium

described in the Cancelation condition of this policy, if this policy is canceled as therein provided.

In the event of change in the premium or rating of any primary insurance while this policy is in force, the named insured shall notify the Company in writing as soon as practicable and, at the option of the Company, the premium hereon may be adjusted accordingly.

The Company shall have the right to examine the named insured's books and records at any time during the period of insurance and within one year thereafter for the purpose of determining actual earned premium.

4. RIGHT OF APPEAL. In the event the Primary Insurer or the insured elects not to appeal a judgment in excess of the primary limits, the Company may elect to conduct such appeal at its own expense and shall be liable for the taxable court costs, interest incidental thereto and for premium on required appeal bonds, which are not payable under primary insurance, provided that in no event shall the total liability of the Company exceed the difference between the primary limits and the combined limits stated in the declarations, plus taxable court costs and interest to the extent provided by Condition 1-(b).

5. SUBROGATION. In the event of any payment under this policy, the insured will notify the Company of any of the insured's rights of recovery therefor against any person or organization. The Company shall be subrogated to all such rights of the insured and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

Any amount recovered through subrogation or otherwise shall be apportioned in the inverse order of payment of the claim or claims involved to the extent of actual payment thereof by all interests and the expenses of all such recoveries and proceedings in connection therewith shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

6. NOTIFICATION OF CLAIMS. The insured upon knowledge of any accident or occurrence likely to give rise to a claim hereunder, shall give immediate written notice thereof to the Company.

7. CANCELATION. This policy may be canceled by the named insured by mailing to the Company written notice stating when thereafter such cancelation shall be effective. This policy may be canceled by the Company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the Company shall be equivalent to mailing. If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. In either event the minimum premium stated in the declarations shall be adjusted short rate or pro rata, as the case may be.

Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancelation.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary, but the same shall not be binding upon the Company unless countersigned by an authorized agent of the Company.

*Rent P. J. Comy*                                     *Fred H. Merrill*

SECRETARY                                                       PRESIDENT

# POOR

# QUALITY

# ORIGINAL



# FIREMAN'S FUND INSURANCE COMPANY

**A STOCK COMPANY**
HOME OFFICE: SAN FRANCISCO, CALIFORNIA

POLICY NO. <u>XLX 102 68 77</u>

## DECLARATIONS

**Item 1.**   NAMED INSURED:   W. R. Grace & Co.

**Item 2.**   ADDRESS:   7 Hanover Square, New York, New York

**Item 3.**   POLICY PERIOD: From: 10-20-68   To: 6-30-71
(12:01 A.M. Standard Time at address of the Insured)

**Item 4.**   PREMIUM BASIS:   Flat Charge

**Item 5.**   ADVANCE PREMIUM: $ 8,970.00   ANNUAL MINIMUM PREMIUM: $ -

In the event of cancellation by the Named Insured, the Company shall
receive and retain not less than $250.00   as the Policy
Minimum Premium.

**Item 6.**   SCHEDULE OF UNDERLYING INSURANCE:

1. American Employers   $5,000,000. XS of Primary

2. Home Insurance Co.   $5,000,000. XS of $5,000,000.

3. Ins. Co. of No. America   $10,000,000. XS of $10,000,000.

## FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

Policy of Excess Insurance issued by the Fireman's Fund Insurance Company (here-
inafter called the "Company") to     W.R.Grace & Co.
(hereinafter called the "Insured").

In consideration of the payment of premium stated in the Declarations,

### THE COMPANY AGREES WITH THE INSURED

1.  To indemnify the Insured for the Insured's ultimate net loss in excess of the
    insurance afforded under the Blanket Excess Liability or "Umbrella" policies
    specified in Item 6 of the Declarations, hereafter called underlying insurance,
    in full force and effect at the inception of this policy.

2.  The Insured warrants, and it is a condition of this policy, that underlying
    insurance (applying as excess over various policies of primary insurance)
    with combined limits of liability for said underlying insurance in an amount
    not less than $20,000,000. each occurrence is in full force and effect at
    the inception of this policy, and further that such underlying insurance shall
    be maintained in full force and effect during the period of this policy, except
    for reduction of aggregate limits solely as the result of payment of claims
    arising out of occurrences during the policy period.

3.  The limit of the Company's liability under the policy shall be as follows:

    $5,000,000.     each occurrence ) Quota Share Part of
                                    ) $30,000,000. XS of
    $5,000,000.     aggregate       ) $20,000,000.

4.  Except as otherwise provided herein the insurance afforded by this policy
    shall follow the terms, conditions and definitions as stated in the policies
    of underlying insurance, except for limits of liability, any renewal agree-
    ment and any obligation to investigate or defend.

5.  It is a condition of this policy that the insurance afforded under this
    policy shall apply only after all underlying insurance has been exhausted,
    provided that the insurance for injury to or destruction of property under
    this policy shall not apply except as respects injury to or destruction of
    corporeal property, including loss of use thereof.

6.  The Insured shall immediately advise the Company of any occurrence or disaster
    which will probably result in liability under this policy.  The Company
    shall not, however, be called upon to assume charge of the settlement or defense
    of any claim made, or suits brought, or proceedings instituted against the
    Insured, but shall have the right and opportunity to be associated with the
    Insured in the defense and trial of any such claims, suits or proceedings
    relative to any occurrence which, in the opinion of the Company, may create
    liability on the part of the Company under the terms of the policy.  If the
    Company avails itself of such right and opportunity, the Insured and the
    Company shall cooperate in all respects so as to effect a final determination
    of the claim or claims.

7.  Upon final determination by settlement, award or verdict of the liability of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Company in conformity with this policy. Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.

8(a).  Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

8(b).  "Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

9.  In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

10.  In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

11.  The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified, is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

12.     This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate, and if cancelled by the Company, adjustment shall be made pro rata. However, in the event of cancellation or termination of the underlying insurance or a renewal thereof, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be given by the Company to the Insured at the address shown in the Declarations. Payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

SECRETARY

PRESIDENT

October 21st, 1968.
COUNTERSIGNATURE DATE

AUTHORIZED AGENT

FINAL PAGE

N-ES 34A  7-63

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

It is agreed that the policy does not apply:

**I.** Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**II.** Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

**III.** Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

**IV.** As used in this endorsement;

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

FIREMAN'S FUND INSURANCE COMPANY
THE AMERICAN INSURANCE COMPANY
NATIONAL SURETY CORPORATION
ASSOCIATED INDEMNITY CORPORATION
AMERICAN AUTOMOBILE INSURANCE COMPANY       71-X       *Fred H Merrill*       PRESIDENT

80002—2-65

# BLANKET EXCESS LIABILITY POLICY
## (FOLLOWING FORM)

Coverage is provided in the Company designated by number,
a stock insurance Company (herein called the Company)

## DECLARATIONS

INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

**FIREMAN'S FUND INSURANCE COMPANIES**
MAIL ADDRESS
SAN FRANCISCO
CALIFORNIA

| | | |
|---|---|---|
| 01 | FIREMAN'S FUND INSURANCE COMPANY | SAN FRANCISCO, CALIFORNIA |
| 18 | THE AMERICAN INSURANCE COMPANY | PARSIPPANY, NEW JERSEY |
| 07 | NATIONAL SURETY CORPORATION | CHICAGO, ILLINOIS |
| 13 | ASSOCIATED INDEMNITY CORPORATION | SAN FRANCISCO, CALIFORNIA |
| 15 | AMERICAN AUTOMOBILE INSURANCE COMPANY | CREVE COEUR, MISSOURI |

**POLICY PERIOD:**

**ITEM 2.**
INCEPTION (MO. DAY YR.)          EXPIRATION (MO. DAY YR.)
12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

**ITEM 3.** LIMIT OF LIABILITY:
$ . EACH OCCURRENCE
$ . AGGREGATE

**ITEM 4.** UNDERLYING INSURANCE LIMIT OF LIABILITY
$ . EACH OCCURRENCE
$ . AGGREGATE

**ITEM 5.** PREMIUM BASIS
$

**ITEM 6.**
ADVANCE PREMIUM: $
ANNUAL MINIMUM PREMIUM: $

THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $
THE POLICY MINIMUM PREMIUM.

**7. SCHEDULE OF UNDERLYING INSURANCE:**

## FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

### INSURING AGREEMENTS

**1. Coverage.** To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

**2. Limit of Liability.** The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereon account of occurrences during this policy period, this policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

**3. Policy Period.** This policy applies only to occurrences which take place during the policy period.

### DEFINITIONS

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

### CONDITIONS

**1. Maintenance of Primary Insurance.** The Insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (apply-

(Continued on Page Two)

COUNTERSIGNATURE DATE          COUNTERSIGNATURE OF AUTHORIZED AGENT

5902-2-72

IV—D

(Continued from Preceding Page)

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, ept for reduction of aggregate limits solely as a result of pay-.t of claims arising out of occurrences during this policy period. .-such underlying insurance is not maintained in full effect by the Insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

**2. Notice of Occurance.** The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

**3. Payment of Loss.** It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the liability of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amount of the losses falling within the terms or limits of this insurance. ......... recovered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed .......... and loss filed with the Company in conformity with this ......... bankruptcy or insolvency of .sured shall not relieve the Company of any of its obligations hereunder.

**4. Payment of Expenses.** Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the

Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

**5. Appeal.** In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

**6. Subrogation.** In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

**7. Premium.** The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

**8. Cancellation.** This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate, and if cancelled by the Company, adjustment shall be on a pro rata. However, in the event of cancellation or termination of the underlying insurance, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be sent by the Company to the Insured at the address shown in the declarations. Payment or tender of unearned premium is not a condition of cancellation.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

I. Under any Liability Coverage, to injury, sickness, disease, death r destruction resulting from the hazardous properties of nuclear naterial, if

a) the nuclear material (1) is at any nuclear facility owned by, r operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

..... nuclear material is contained in spent fuel or waste at my time possessed, handled, used, processed, stored, transported disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means a fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating

AGE TWO

(Continued on Next Page)

(Continued from Preceding Page)

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste, (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235, (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

SECRETARY

PRESIDENT

FINAL PAGE