# EXHIBIT D

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
---------------------------------X
In Re:                              Chapter 11

                                    Case No.

                                    01-01139 JKF
W.R. Grace & Co., et al.,

                                    (Jointly
         Debtors.                   Administered)
---------------------------------X


* * * CONFIDENTIAL * * *

— — —

May 13, 2009

— — —

DEPOSITION of RICHARD FINKE, held at the offices of Kirkland & Ellis, 655 Fifteenth Street, N.W., Washington, DC, commencing at 9:32 A.M., on the above date, before Lisa Lynch, a Registered Merit Reporter, New Jersey Certified Court Reporter, License No. XI00825, and Certified Realtime Reporter

— — —

MAGNA LEGAL SERVICES, LLP

7 Penn Center, 8th Floor
1635 Market Street
Philadelphia, PA  19103

## Page 2

```
 1  APPEARANCES:
 2
    DRINKER BIDDLE & REATH, LLP
 3  BY: MICHAEL F. BROWN, ESQUIRE
    One Logan Square
 4  18th and Cherry Streets
    Philadelphia, Pennsylvania 19103-6996
 5  (brownmf@dbr.com)
    Representing OneBeacon America Insurance
 6  Company, Seaton Insurance Company,
    Government Employees Insurance Company,
 7  Columbia Insurance Company f/k/a Republic
    Insurance Company
 8
 9  CAPLIN & DRYSDALE, CHARTERED
    BY: JEFFREY A. LIESEMER, ESQUIRE
10  One Thomas Circle NW
    Suite 1100
11  Washington, DD 20005
    202.862.7801
12  (jal@capdale.com)
    Representing Grace, Official Committee of
13  Asbestos Personal Injury Claimants ("ACC")
14
    KIRKLAND & ELLIS, LP
15  BY: BARBARA M. HARDING, ESQUIRE
        THEODORE L. FREEDMAN, ESQUIRE
16  655 Fifteenth Street, N.W.
    Washington, DC 20005-5793
17  202.879.5081
    (barbara.harding@kirkland.com)
18  (tfreedman@kirkland.com)
    Representing the Debtors
19
20  THE LAW OFFICES OF JANET S. BAER, P.C.
    BY: JANET S. BAER, ESQUIRE
21  70 West Madison Street
    Suite 2100
22  Chicago, Illinois 60602
    jbaer@jsbpc.com
23  Representing W.R. Grace
24
```

## Page 3

```
 1  APPEARANCES: (continued)
 2  SIMPSON THACHER & BARTLETT, LLP
    BY: ELISA ALCABES, ESQUIRE
 3  425 Lexington Avenue
    New York, New York 10017-3954
 4  212.455.2846
    (ealcabes@stblaw.com)
 5  Representing Travelers Casualty and Surety
    Company
 6
 7  VORYS, SATER, SEYMOUR AND PEASE, LLP
    BY: WILLIAM J. POHLMAN, ESQUIRE*
 8      PHILIP DOWNEY, ESQUIRE*
    (*VIA TELECONFERENCE)
 9  52 East Gay Street
    Columbus, Ohio 43215
10  614.464.8349
    (wjpohlman@vorys.com)
11  Representing The Scotts Company, LLC
12
    LEWIS, SLOVAK & KOVACICH, PC
13  BY: TOM L. LEWIS, ESQUIRE
    P.O. Box 2325
14  723 Third Avenue
    Great Falls, Montana 59403
15  406.761.5595
    tom@lsklaw.net
16  Representing the Libby Claimants
17
    SPEIGHTS & RUNYAN
18  BY: DANIEL H. SPEIGHTS, ESQUIRE*
    (*VIA TELECONFERENCE)
19  200 Jackson Avenue East
    P.O. Box 685
20  Hampton, South Carolina 29924
    803.943.4444
21  (dspeights@speightsrunyan.com)
    Representing Anderson Memorial Hospital
22
23
24
```

## Page 4

```
 1  APPEARANCES: (continued)
 2  MENDES & MOUNT, LLP
    BY: ALEXANDER MUELLER, ESQUIRE
 3  750 Seventh Avenue
    New York, New York 10019
 4  212.261.8296
    (alexander.mueller@mendes.com)
 5  Representing London Market Companies
 6
    FORD MARRIN ESPOSITO & WITNEYER & GLESER
 7  BY: ELIZABETH M. DeCRISTOFARO, ESQUIRE*
    (*VIA TELECONFERENCE)
 8  Wall Street Plaza
    New York, New York 10005-1875
 9  212.269.4900
    Representing Continental Casualty Company
10  and Continental Insurance Company
11
    BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
12  BY: MATTHEW I. KRAMER, ESQUIRE*
    (*VIA TELECONFERENCE)
13  200 South Biscayne Boulevard
    Suite 2500
14  Miami, Florida 33131-5340
    305.450.7246
15  (mkramer@bilzin.com)
    Representing Property Damage Committee
16
17  STROOCK & STROOCK & LAVAN, LLP
    BY: ARLENE G. KRIEGER, ESQUIRE*
18      LEWIS KRUGER, ESQUIRE*
    (*VIA TELECONFERENCE)
19  180 Maiden Lane
    New York, New York 10038-4982
20  212.806.5400
    (akrieger@stroock.com)
21  Representing Official Committee of
    Unsecured Creditors
22
23
24
```

## Page 5

```
 1  APPEARANCES: (continued)
 2
    CROWELL & MORING, LLP
 3  BY: MARK D. PLEVIN, ESQUIRE
        NOAH S. BLOOMBERG, ESQUIRE
 4  1001 Pennsylvania Avenue, N.W.
    Washington, DC 20004-2595
 5  202.624.2913
    (mplevin@crowell.com)
 6  (nbloomberg@crowell.com)
    Representing Fireman's Fund Insurance
 7  (Surety Bond)
 8
    STEVENS & LEE, P.C.
 9  BY: MARNIE E. SIMON, ESQUIRE
    1818 Market Street, 29th Floor
10  Philadelphia, Pennsylvania 19103-1702
    215.751.2885
11  (mes@stevenslee.com)
    Representing Fireman's Fund Insurance
12
13  LAW OFFICES OF ALAN B. RICH
    BY: ALAN B. RICH, ESQUIRE
14  Elm Place, Suite 4620
    1401 Elm Street
15  Dallas, Texas 75202
    214.744.5100
16  (arich@alanrichlaw.com)
    Representing Property Damage PCR
17
    CONNOLLY BOVE LODGE & HUTZ, LLP
18  BY: JEFFREY C. WISLER, ESQUIRE
    The Nemours Building
19  1007 North Orange Street
    P.O. Box 2207
20  Wilmington, Delaware 19899
    302.888.6528
21  (jwisler@cblh.com)
    Representing Maryland Casualty
22
23
24
```

Page 6

```
 1  A P P E A R A N C E S: (continued)
 2  ECKERT SEAMANS CHERIN & MELLOTT, LLC
    BY: EDWARD J. LONGOSZ, II, ESQUIRE
 3  1747 Pennsylvania Avenue, N.W.
    12th Floor
 4  Washington, DC 20006
    202.659.6619
 5  (elongosz@eckertseamans.com)
    Representing Maryland Casualty and Zurich
 6
 7  WILEY REIN, LLP
    BY: RICHARD A. IFFT, ESQUIRE
 8  1776 K Street NW
    Washington, DC 20006
 9  202.719.7170
    (rifft@wileyrein.com)
10  Representing Maryland Casualty and Zurich
11
    COZEN O'CONNOR
12  BY: JACOB C. COHN, ESQUIRE
    1900 Market Street
13  Philadelphia, Pennsylvania 19103-3508
    215.665.2147
14  (jcohn@cozen.com)
    Representing Federal Insurance Company
15
16  ORRICK HERRINGTON & SUTCLIFFE, LLP
    BY: PERI N. MAHALEY, ESQUIRE
17  Columbia Center
    1152 15th Street, N.W.
18  Washington, DC 20005-1706
    202.339.8516
19  (pmahaley@orrick.com)
    Representing PI Future Claimants'
20  Representative
21
    CUYLER BURK, P.C.
22  BY: ANDREW CRAIG, ESQUIRE
    4 Century Drive
23  Parsippany, New Jersey 07054
    973.734.3200
 4  (acraig@cuyler.com)
```

Page 7

```
 1  A P P E A R A N C E S: (continued)
 2  O'MELVENY & MEYERS LLP
    BY: TANCRED SCHIAVONI, ESQUIRE*
 3  (*VIA TELEPHONE)
    7 Times Square
 4  New York, New York 10036
    212.326.2267
 5  (tschiavoni@omm.com)
    Representing Arrowood Indemnity Company
 6
 7  WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
    BY: KEVIN J. MANGAN, ESQUIRE*
 8  (*VIA TELECONFERENCE)
    222 Delaware Avenue
 9  Suite 1501
    Wilmington, Delaware 19801
10  302.252.4361
    (kmangan@wcsr.com)
11  Representing State of Montana
12
    PEPPER HAMILTON, LLP
13  BY: LINDA J. CASEY, ESQUIRE*
    (*VIA TELECONFERENCE)
14  3000 Two Logan Square
    Philadelphia, Pennsylvania 19103
15  215.981.4000
    (caseyl@pepperlaw.com)
16  Representing BNSF Railway Company
17  KRAMER LEVIN NAFTALIS & FRANKEL, LLP
    BY: SARAH SCHINDLER-WILLIAMS, ESQUIRE*
18  (*VIA TELECONFERENCE)
    1177 Avenue of the Americas
19  New York, New York 10036
    212.715.9515
 0  (SSchindlerWilliams@kramerlevin.com)
    Representing the Equity Committee
21
22
23
24
```

Page 8

```
 1              INDEX
              EXAMINATION
 2
    Witness Name           Page
 3  RICHARD FINKE
 4    BY MR. BROWN         12,333
 5    BY MS. ALCABES       129
 6    BY MR. LEWIS         187
 7    BY MR. PLEVIN        265
 8    BY MR. WISLER        285
 9    BY MR. COHN          289
10    BY MR. MANGAN        296
11    BY MR. DOWNEY        305, 371
12    BY MR. SCHIAVONI     343
13    BY MR. SPEIGHTS      347
14
15          EXHIBITS
    EXHIBIT  DESCRIPTION         ID
16
    Exhibit 1  Notice of Deposition of   16
17     Debtors Pursuant to Rule
       30(b)(6)
18
    Exhibit 2  Document entitled W.R.    16
19     Grace/Confirmation Hearing
       30(b)(6) Deposition Notice
20
    Exhibit 3  SEC Form 8-K              25
21
    Exhibit 4  Exhibit 6 to Exhibit Book, 41
22     Asbestos Insurance
       Transfer Agreement
23
    Exhibit 5  Exhibit 19 to Exhibit     53
24     Book, Retained Causes of
```

Page 9

```
 1           EXHIBITS
    EXHIBIT  DESCRIPTION         ID
 2
 3  Exhibit 6  Exhibit 2 to Exhibit Book, 55
       Asbestos PI Trust Agreement
 4
    Exhibit 7  Exhibit 4 to Exhibit Book, 55
 5     Trust Distribution
       Procedures
 6
    Exhibit 8  First Amended Joint Plan   70
 7     of Reorganization
 8  Exhibit 9  Exhibit 5 to Exhibit Book, 92
       Schedule of Settled
 9     Asbestos Insurers Entitled
       to 524(g) Protection
10
    Exhibit  Settlement Agreement        98
11   10  Bates stamped OB 1 through
           33
12
    Exhibit  Travelers/Allstate          135
13   11  30(b)(6) deposition notice
14  Exhibit  Travelers 30(b)(6)          136
     12  supplemental deposition
15       notice
16  Exhibit  Grace/Aetna Asbestos        149
     13  Settlement Agreement dated
17       May 22, 1996
18  Exhibit  Exhibit 25 to Exhibit       178
     14  Book, CMO for Class 7A
19       Asbestos PD Claims
20
21
22
23
24
```

Page 10

DEPOSITION SUPPORT INDEX

Direction to Witness Not To Answer
Page Line   Page Line
30   2     37   12
37   17    39   8
39   15    369  1

Request For Production of Documents
Page Line   Page Line
(None)

Stipulations
Page Line   Page Line
(None)

Questions Marked
Page Line   Page Line
(None)

Page 11

1  RICHARD FINKE,
2      having been sworn by the Notary
3      Public of the States of New York
4      and New Jersey, was examined and
5      testified as follows:
6
7  EXAMINATION BY
8  MR. BROWN:
9      Q.  Good morning, Mr. Finke.
10 My name is Michael Brown. I represent One
11 Beacon, Seaton, Geico and Republic for the
12 objecting insurance companies in the Grace
13 bankruptcy. You've been deposed several
14 times before, correct?
15     A.  Yes, I have.
16     Q.  Okay. So we can dispense
17 with the formalities of what a
18 deposition's all about?
19     A.  Yes, we can.
20     Q.  Okay.
21         MS. HARDING: Michael,
22     would you mind if I made a quick
23     statement on the record?
24         MR. BROWN: Sure.

Page 12

1          MS. HARDING: I just wanted
2      to make a statement on the record
3      that the debtors have designated
4      Mr. Finke to answer certain
5      appropriate questions related to
6      certain 30(b)(6) topics.
7          As we've indicated, Mr.
8      Finke will be available for seven
9      hours today. We've also designated
10     Mr. Hughes and Mr. LaForce to
11     answer other 30(b)(6) topic
12     questions. We are hoping and
13     expecting that the parties seeking
14     to ask questions have coordinated
15     so that we can end in seven hours
16     and we think it's a reasonable
17     expectation.
18         The debtors have reviewed
19     the deposition of Mr. Lockwood and
20     agree, in essence, with Mr.
21     Lockwood's answers with respect to
22     how the Plan operates and so we
23     think and are very hopeful that
24     there will not be a need to go

Page 13

1      further than seven hours to get to
2      the appropriate inquiry as to how
3      the Plan operates. So I just
4      wanted to get that on the record.
5          MR. BROWN: Okay.
6      Actually, that's helpful. Maybe I
7      could follow up with a question for
8      Mr. Finke.
9      Q.  Mr. Finke, have you
10 reviewed Mr. Lockwood's Rule 30(b)(6)
11 deposition transcript?
12     A.  Yes, I have.
13     Q.  Okay. Is there anything
14 that you read in that transcript that you
15 disagreed with?
16     A.  No, nothing of substance.
17     Q.  Okay. How about anything
18 not of substance?
19     A.  There are a few occasions,
20 I think, where I either would have worded
21 something differently or where I think Mr.
22 Lockwood may have been either in error --
23 might have been in error depending on
24 whether he was -- depending on the

Case 01-01139-AMC    Doc 21936-46    Filed 06/01/09    Page 6 of 14

5 (Pages 14 to 17)

Page 14

context. Let me give you one example of that.
Q. Sure.
A. He, I think, made a statement at one point where he equated asbestos in place coverage or insurance coverage with the asbestos insurance reimbursement agreements. I believe he said he thought they were the same thing, and perhaps in substance or in concept they are. I'm not an insurance lawyer, but I know that under the Plan definitionally the definition of asbestos (sic) in place insurance coverage specifically excludes asbestos reimbursement agreements from the definition.
Q. Okay.
A. Which would suggest they are not the same.
Q. All right. I'm going to suggest that Miss Alcabes, or one of the people whose issue that is, may want to follow up with you on that point.

Page 15

A. Sure.
Q. But let's pass on that. Other than what you've just described, is there anything else in Mr. Lockwood's deposition transcript that the debtors disagreed with?
A. Nothing that comes to mind.
MR. BROWN: Okay. Let me have the first exhibit marked, and can we go off the record for a second.
(Off the record.)
(Notice of Deposition of Debtors Pursuant to Rule 30(b)(6) marked for identification as Exhibit Finke-1.)
(Document entitled W.R. Grace/Confirmation Hearing 30(b)(6) Deposition Notice marked for identification as Exhibit Finke-2.)
BY MR. BROWN:
Q. Mr. Finke, I'm going to put

Page 16

before you two exhibits marked -- we're using the term Finke 30(b)(6) 1 and Finke 30(b)(6) 2. For shorthand during the deposition I'll just refer to them as Finke-1 and Finke-2. Could you identify Finke-1 for me, please?
A. It is a Notice of Deposition of Debtors Pursuant to Rule 30(b)(6) served by One Beacon, Seaton, Geico and Columbia.
Q. Going forward, it would be more accurate to refer to Columbia as Republic. I know it says Columbia there. The date on here is April 28th, 2009 and the site is Drinker Biddle & Reath's offices but we obviously changed those by agreement after this was scheduled.
Is it your understanding that you're appearing here today in response to this Rule 30(b)(6) notice?
A. Yes.
Q. And there were several others served on you as well?
A. Correct.

Page 17

Q. Correct, all right. If you look at what's been marked as Finke-2, can you identify that for me?
A. It is a chart 18 pages long entitled W.R. Grace/Confirmation Hearing 30(b)(6) Deposition Notice Witness Designations.
Q. Okay. And is it your understanding that this document was prepared by your counsel?
A. Yes, that's my understanding.
Q. And have you seen it before today?
A. Yes.
Q. Okay. And am I correct that it basically lists all the various topics from all the 30(b)(6) notices that were served on Grace and then designates one of, I believe, three individuals to testify about the various topics?
A. I would agree that it includes all 30(b)(6) notices that have

Page 70

1  you now what has been marked as Exhibit 8
2  to this deposition and what is Exhibit 1
3  to the Exhibit Book. First question is:
4  Would you identify the document, please?
5      A.  Yes. I think Exhibit 8 is
6  the First Amended Joint Plan of
7  Reorganization that was filed by Grace and
8  its co-proponents.
9      Q.  Okay.
10     A.  And the date is February --
11 date on the document is February 27,
12 2009.
13     Q.  Okay. Have you reviewed
14 this document in its entirety?
15     A.  Yes.
16     Q.  How many times?
17         MS. HARDING: You mean in
18 its entirety how many times?
19         MR. BROWN: Well, let's
20 start-up with that question.
21     A.  Interpreting review as
22 meaning a detailed word-for-word reading
23 of the entire document, I would say
1  once.

Page 71

1      Q.  Okay. And how many times
2  have you partially reviewed the
3  document?
4      A.  Many times.
5      Q.  Okay. Do you understand
6  it?
7      A.  I have an understanding of
8  it. I would not profess to have a
9  complete understanding of it.
10     Q.  Okay. Are there particular
11 provisions in the Plan that you're quite
12 certain you don't understand?
13         MS. HARDING: Object to
14 form and relevance and concern that
15 we're not going to the seven
16 hours -- I mean, if you have a
17 specific question about a specific
18 provision that you don't understand
19 as an insured, then I think you
20 should ask him questions about
21 that. I think...
22         MR. BROWN: Is that an
23 instruction not to answer the
24 question?

Page 72

1          MS. HARDING: No, it's
2  not.
3          MR. BROWN: Okay. It's
4  just --
5          MS. HARDING: It's just an
6  objection that...
7      A.  I'm sure that I do not
8  understand the annex or annexes that I
9  believe relate to tax issues.
10         MS. HARDING: I guess --
11 are you asking him in his personal
12 capacity?
13         MR. BROWN: I don't think
14 he's here in his personal capacity.
15 I think he's here in his capacity
16 as a designee for W.R. Grace or for
17 the debtors.
18         MS. HARDING: Okay. Are
19 you asking him if there's anybody
20 at W.R. Grace that has an
21 understanding of different
22 provisions of the Plan as lawyers
23 and --
24         MR. BROWN: I think he's

Page 73

1  here to testify about the operation
2  of the Plan. I think that was --
3  isn't he? So my question is
4  what --
5          MS. HARDING: He's here to
6  answer questions to help you
7  understand the Plan.
8          MR. BROWN: Barbara, can
9  we --
10         MS. HARDING: So I think if
11 there are questions that you don't
12 understand, I think you should ask
13 him those.
14         MR. BROWN: I would like to
15 know whether there are particular
16 provisions in the Plan that the
17 witness can identify that he is not
18 familiar with or that he doesn't
19 understand.
20         MS. HARDING: Well, I think
21 he's asked and answered, so...
22     A.  Yes, for myself there are
23 provisions that I do not understand, such
24 as the tax annexes. This --

Page 74

1  MS. HARDING: Which also
2  were not designated 30(b)(6) topics
3  by any person who --
4      MR. BROWN: Can I ask that
5  we just let the witness answer the
6  question?
7      MS. HARDING: Well, I think
8  if you want to ask him questions
9  about topics that were designated
10 that you asked him to become
11 familiar with, then --
12     MR. BROWN: I didn't ask
13 him a question about the tax annex.
14 It was in his answer.
15     MS. HARDING: Well, that's
16 because you asked him about any
17 provision of the Plan. You
18 asked -- we tried to prepare the
19 witness to answer questions about
20 topics that everybody asked about.
21     MR. BROWN: All right.
22 I'll ask my question again. If you
23 have an objection and you want to
24 instruct him not to answer, then do

Page 75

1  it and we'll move on.
2  BY MR. BROWN:
3      Q. Mr. Finke, as you sit here
4  today looking at the Joint Plan, can you
5  identify particular provisions that you do
6  not understand?
7      MS. HARDING: Object, asked
8  and answered, but answer one more
9  time if you'd like.
10     A. In addition to what I've
11 already identified, the provision on the
12 warrants is not entirely clear to me. And
13 if I spent the time to go through the
14 document page by page, there may be a few
15 other sections that I don't feel very
16 comfortable with in terms of the level of
17 my understanding.
18     Speaking on behalf of W.R. Grace as
19 a whole, there are individuals who
20 understand those sections and, taken as a
21 whole, I think W.R. Grace does have a good
22 understanding of the Plan.
23     Q. Okay. Well, let me take
24 your counsel up on her offer and direct

Page 76

1  your attention to page 87 of the Plan,
2  Section 7.15, and what I would like you to
3  do, because I have a series of questions
4  about it, is why don't you take a few
5  moments to review Section 7.15. In fact,
6  if you want to take a break at this
7  point --
8      MR. BROWN: Does that make
9  sense? Okay.
10     MS. HARDING: Well, I mean,
11 how long is it, again?
12     THE WITNESS: Seven
13 pages.
14     MS. HARDING: Five-minute
15 break?
16     MR. BROWN: That's fine,
17 yes.
18     (Recess taken.)
19 BY MR. BROWN:
20     Q. Mr. Finke, we had a short
21 break and before that I directed your
22 attention to Section 7.15 of the Plan
23 entitled Insurance Neutrality. Did you
24 have an opportunity to review that section

Page 77

1  during the break?
2      A. Yes.
3      Q. This was not one of the
4  sections that you mentioned in your prior
5  testimony that you were -- that you did
6  not understand. Is it safe to say that
7  this is a provision that you do
8  understand? And I'm asking that question,
9  really, in your capacity as an individual
10 and as the designee on this subject for
11 the debtors.
12     MS. HARDING: Object to
13 form.
14     A. Yes, I believe I understand
15 it.
16     Q. Okay. Can you turn to
17 Section 11.9 of the Plan, and that's
18 entitled Exculpation, and if you'd take a
19 moment to review that section.
20     (The witness reviews the document.)
21     A. Okay.
22     Q. Given the language in
23 Section 7.15, am I correct that asbestos
24 insurance entities are not bound by the

Page 78

1  exculpation provision in Section 11.9 of
2  the Plan?
3      MR. LIESEMER: Object to
4  the form.
5      MS. HARDING: Object to the
6  form.
7      A.  I believe they -- the
8  asbestos insurance companies are bound by
9  Section 11.9.
10     Q.  They are bound?
11     A.  Yes.
12     Q.  If you go back to 7.15,
13 where is that set forth?
14     MS. HARDING: Object to
15  form.
16     MR. LIESEMER: Same
17  objection.
18     A.  Well, of course, there's no
19  provision in Section 7.15 that
20  specifically states that the insurers are
21  bound by Section 11.9. I assume that's
22  not what you're asking, but -- well,
23  literally, I think that is what you asked,
24  so --

Page 79

1      Q.  Yes, that is what I asked.
2      A.  -- that's my answer then.
3      Q.  So there's nothing in 7.15
4  that says that they're bound by 11.9 but
5  your testimony is that they are in fact
6  bound by 11.9?
7      A.  Yes.
8      Q.  Are there any other
9  provisions in the Plan that are not
10 specifically spelled out in Section 7.15
11 for which the insurers are bound
12 notwithstanding Section 7.15?
13     MS. HARDING: Objection to
14  form, and I think it misstates his
15  testimony.
16     THE WITNESS: I'm sorry.
17  Could you read back the question?
18     (The reporter reads the
19  pending question.)
20     MS. HARDING: Object to
21  form. I think it's confusing,
22  speculative. I don't see how you
23  can possibly answer that question.
24  But if you can answer it, go ahead.

Page 80

1      It also calls for a legal
2  conclusion.
3      (The witness reviews the document.)
4      A.  Okay. I would direct you
5  to Section 7.15(h) which states that "the
6  asbestos insurance entities shall be
7  subject to the releases and injunctions to
8  the extent described in this Plan" so my
9  answer to your question is that I believe
10 any provisions in the Plan that would
11 constitute a release or an injunction, and
12 I would include 11.9 in that language, are
13 binding on the asbestos insurance
14 entities.
15     Q.  So your testimony is that
16 7.15(h) includes through its language
17 Section 11.9?
18     A.  Yes, that is how I read
19  it.
20     Q.  What consideration, if any,
21 are Grace's insureds getting under the
22 Plan in exchange for the exculpation
23 provision in 11.9?
24     MR. LIESEMER: Objection to

Page 81

1  form.
2      MS. HARDING: Objection to
3  form.
4      A.  All right. First, your
5  question assumes that the insurance
6  entities would be entitled to some
7  consideration in exchange for being bound
8  by Section 11.9. I don't know that to be
9  the case. I don't know that they're not
10 entitled to it either.
11     But as far as consideration, if one
12 had to justify being bound by Section 11.9
13 on the basis of consideration, I think the
14 answer with respect to asbestos insurance
15 entities would also apply to all parties
16 involved in the Chapter 11, which is that
17 the entities and individuals covered by
18 the exculpation have been active in the
19 business of these Chapter 11 cases, they
20 have had to take positions, make
21 arguments, make decisions, et cetera, that
22 affect one or more parties involved in the
23 Chapter 11 cases and have thereby exposed
24 themselves to potential liability, I

Page 82

1  suppose, for their acts or omissions. And
2  the Chapter 11 itself could not proceed to
3  the point of resolution without the
4  efforts of these entities and these
5  individuals. So to the extent -- so there
6  is a -- in order to encourage and
7  facilitate the activities of the parties
8  listed in Section 11.9, it is my
9  understanding that it is common in these
10 types of bankruptcies to provide
11 exculpation of those entities and
12 individuals for their activities, and I'm
13 quoting here from 11.9, "In connection
14 with or arising out of the Chapter 11
15 cases." It is their participation and the
16 fruits of their participation that would
17 constitute consideration.
18     Q.  I want to circle back to a
19 question that I asked a few questions ago
20 concerning 7.15 and I asked you a question
21 to the effect of other than what's
22 specifically set forth in Section 7.15 are
23 there any other provisions in the Plan or
24 Plan documents that are binding upon

Page 83

1  Grace's insurers, and in answer to that
2  question you referred me to subsection (h)
3  and how 11.9 in the debtor's view was
4  encompassed within the language of (h).
5      So I want to go back to that
6  question and ask: Other than 11.9, is
7  there anything else?
8      A.  I'm --
9          MS. HARDING: Object to
10         form. I think it's confusing
11         and I'll leave it at that. If you
12         can answer, go ahead.
13     A.  I believe there is a more
14 general provision relating to the binding
15 nature of court orders, findings, et
16 cetera. That is what I was looking for
17 initially in response to your answer and
18 then I remembered the provision in 7.15(h)
19 and so I've directed you to that
20 provision. If you want me to spend the
21 time -- I do not know where in that Plan
22 that more general provision is that I have
23 in mind.
24     Q.  Well --

Page 84

1      A.  I could spend the time to
2  look for it if you'd like.
3      Q.  No, let's try this a little
4  differently. Look at 7.15(a).
5      A.  Okay.
6      Q.  It says "Except to the
7  extent provided in this Section 7.15,
8  notwithstanding anything to the contrary
9  in the Confirmation Order, the Plan or any
10 of the Plan documents -- nothing in the
11 Confirmation Order, the Plan or the Plan
12 documents, including any other provision
13 that purports to be preemptory or
14 supervening, shall in any way operate to
15 or have the effect of impairing any
16 asbestos insurance entity's legal,
17 equitable or contractual rights, if any,
18 in any respect." Have I read that
19 correctly?
20     A.  I believe so.
21     Q.  Okay. And what I'm asking
22 is: Given that broad statement, are there
23 any other provisions in the plan that are
24 not set forth in 7.15 that override the

Page 85

1  language in 7.15(a)?
2          MS. HARDING: Object to
3          form.
4      A.  Based on the language of
5  7.15(a), and if I'm understanding it as it
6  was intended, it states by its terms that
7  nothing else in the Plan or any of the
8  Plan documents would operate, you know, to
9  impair the -- an asbestos insurance
10 entity's rights.
11     Q.  So is your answer no?
12         MS. HARDING: Object, asked
13         and answered, but...
14     A.  Based on the language in
15 7.15(a), my answer would be no, subject
16 to -- subject to wanting to review the
17 remainder of the Plan because, as I
18 mentioned, I do have in mind that there is
19 one or more general provisions concerning
20 the applicability or binding nature of
21 court orders, court findings and the like.
22     And while I understand 7.15(a)
23 appears to act in such a way that would
24 make my proviso in my answer irrelevant, I

Page 86

1  would still feel more comfortable having
2  found and reviewed those other provisions
3  before giving an unequivocal "no".
4  Q. Let's do this because we
5  don't want to waste time. Why don't we --
6  I'm going to continue on. We'll obviously
7  have breaks. And during one of those
8  breaks, why don't you look for whatever
9  provision it is that you -- or provisions
10 that you think you're talking about and
11 then when we return from our break, even
12 if I'm not the questioner, would you bring
13 those one or two sections up to me? That
14 will save us some time.
15 A. That's fine.
16 Q. All right. I want to focus
17 your attention now on 7.15(b).
18 (The witness reviews the document.)
19 A. Okay.
20 Q. You see on the second line
21 there rolling over to the third line the
22 phrase "The beneficiaries of the Asbestos
23 PI Trust"? Do you see that?
24 A. Yes.

Page 87

1  Q. What do you understand that
2  term to mean?
3  MR. LIESEMER: Object to
4  the form.
5  Q. What does that term mean?
6  A. I understand it to mean
7  holders of asbestos PI claims.
8  Q. Okay. And does that
9  include holders of indirect Asbestos PI
10 Trust claims?
11 MR. LIESEMER: Object to
12 form.
13 A. Yes.
14 Q. And does it include
15 indemnified insurer -- does it -- excuse
16 me.
17 Does that term include the holders
18 of indemnified insurer TDP claims?
19 MR. LIESEMER: Object to
20 the form.
21 A. Is that a defined term?
22 Q. Good question. It is a
23 term that appears in Section 5.13 of the
24 Trust Distribution Procedures. I don't

Page 88

1  know that it is, per se, defined.
2  MS. HARDING: Where is it
3  in the TDP?
4  MR. BROWN: It's in Section
5  5.13.
6  MR. COHN: Is that on page
7  49 of the TDP?
8  MR. BROWN: I don't know
9  the page number.
10 THE WITNESS: Page 49,
11 yes.
12 A. Based on Section 5.13 of
13 the TDP and on the basis that a holder of
14 an indemnified insured TDP claim
15 potentially may have that claim paid by
16 the PI Trust in accordance with Section
17 5.13, I would interpret such a holder to
18 be a beneficiary of the PI Trust.
19 Q. Okay. So let's just take
20 one of my clients, for example. Let's
21 take Seaton Insurance Company. If Seaton
22 Insurance Company has an indemnified
23 insured TDP claim, then Seaton Insurance
24 Company, as I understand 7.15(b), is bound

Page 89

1  by the Plan, the Plan documents and the
2  confirmation order?
3  MR. LIESEMER: Object to
4  the form.
5  MS. HARDING: Object to the
6  form.
7  Q. Do I have that correct?
8  A. I believe so, yes.
9  Q. Okay. And is it bound by
10 the Plan, Plan documents and confirmation
11 order insofar as it may also be listed as
12 being a partially settled insurer?
13 MS. HARDING: Object to the
14 form. And are you referring to
15 7.15(b)?
16 MR. BROWN: Yes.
17 MS. HARDING: Back to
18 7.15(b) when you asked that
19 question?
20 MR. BROWN: Yes.
21 A. I'm not sure I see the
22 connection between Section 5.13 of the TDP
23 and your question, if there is any.
24 The -- I believe the answer is they are

Page 90

1  bound to the same extent any asbestos
2  insurance entity is bound under the
3  Plan.
4      Q.  Mr. Finke, you understand,
5  don't you, that -- well, let's not do it
6  that way.  Let's go to -- I think it's the
7  asbestos insurance transfer agreement.
8      MS. HARDING:  Is that one
9  of our exhibits?
10     MR. BROWN:  No, I'm sorry,
11 it's not that.  It's Exhibit 5.
12     Q.  Do you have Exhibit 5?
13     A.  Retained causes of action?
14     Q.  No.  This is Exhibit 5 to
15 the Exhibit Book.
16     A.  To the Exhibit Book.
17     MS. HARDING:  I have a
18 copy.  It's not his but you can
19 look at it if you'd like.
20     MR. COHN:  What is the
21 document?
22     MS. BAER:  It's Exhibit 5
23 to the Exhibit Book, Schedule of
24 Settled Asbestos Insurers.

Page 91

1      (Exhibit 5 to Exhibit Book,
2  Schedule of Settled Asbestos
3  Insurers Entitled to 524(g)
4  Protection marked for
5  identification as Exhibit
6  Finke-9.)
7      Q.  What I'd like you, Mr.
8  Finke -- first of all, why don't you
9  identify what we've just marked as Exhibit
10 9?
11     A.  Okay.  Finke Exhibit 9 is
12 Exhibit 5 to the Exhibit Book.  It is
13 entitled Schedule of Settled Asbestos
14 Insurers Entitled to 524(g) Protection.
15     Q.  Now, you understand, don't
16 you, that at least some of the insurance
17 companies that are listed on this schedule
18 have indemnity claims against the
19 debtors?
20     MR. LIESEMER:  Object to
21 the form of the question.
22     A.  Yes, I believe that's
23 correct.
24     Q.  And to the extent that

Page 92

1  there are indemnity claims against the
2  debtor and to the extent that those are
3  asbestos-related, those fit within the
4  defined term "indemnified insured TDP
5  claims", correct?
6      MS. HARDING:  Object to
7  form.
8      MR. LIESEMER:  Join.
9      MS. HARDING:  Are you
10 looking for 7.15?
11     MS. ALCABES:  5.13.
12     MS. HARDING:  There you go.
13     A.  No, I don't agree.
14     MR. BROWN:  Could you read
15 back the last question?
16     (The reporter reads the
17 requested portion.)
18     A.  No, I don't agree.  My
19 understanding of Section 5.13 is this
20 provision would take effect only upon
21 confirmation of the Plan since the
22 definition indicates, or requires, that
23 the indemnified insuror TDP claim is
24 channeled to the PI Trust, which it can't

Page 93

1  be at this point.
2      Q.  All these questions are in
3  the context of the Plan being confirmed.
4      A.  Well, then I don't --
5      Q.  Let me back up.  I think
6  the record's kind of muddled at this
7  point.
8      A.  Okay.
9      Q.  Why don't you -- if you
10 look at the schedule of settled asbestos
11 insurance companies, I believe you'd
12 testified -- that's Exhibit 9 -- I believe
13 you'd testified that some of the companies
14 that are listed on there have contractual
15 indemnity claims against the debtors.
16     A.  That was under the
17 assumption we were talking about current
18 claims.  I didn't realize you had -- that
19 your questions were all in the context of
20 the assumption of a confirmed plan.
21     Q.  All right.  If you look at
22 the schedule, you understand that the
23 insureds that are listed on here have
24 settlement agreements with the debtors,

Page 94

1  correct?
2      A.  Yes.
3      Q.  And you also understand
4  that certain of those settlement
5  agreements have contractual indemnity
6  provisions in them, correct?
7      A.  Yes.
8      Q.  And I believe you testified
9  that those contractual indemnity
10 provisions are under the Plan to be
11 treated as indemnified insured TDP claims
12 under Section 5.13 of the TDP. Is that
13 correct?
14     A.  No, no, that certainly
15 wasn't my intent.
16     Q.  Okay. How are they being
17 treated under the Plan?
18     A.  As indirect PI Trust
19 claims.
20     Q.  Okay. Do you understand
21 indemnified insured TDP claims to be a
22 class of indirect PI Trust claims?
23     A.  It appears to me to be
24 that, that they are the same. Or at least

Page 95

1  I don't see a distinction. Whether they
2  are intended to be or not, I don't know.
3  Since we really were not involved in the
4  drafting of the TDP, my --
5      Q.  The "we" you're referring
6  to is Grace?
7      A.  Grace, yes. My bigger
8  problem is that once the plan is confirmed
9  I don't understand -- have not understood
10 and don't today how there can be such a
11 claim under 5.13 since my understanding of
12 the mechanics of the asbestos PI
13 channeling injunction is that any claim
14 against a settled insurer which is an
15 asbestos protected party would be barred
16 and that claim would be channeled to the
17 PI Trust and that that holder of that PI
18 claim, the sole resolution -- not
19 resolution -- the sole source for any
20 recovery for the holder of that claim is
21 the PI Trust.
22     So I have not understood, and still
23 don't, how any indemnified insurer TDP
24 claim could arise.

Page 96

1      Q.  Let's get back to the
2  insurance neutrality provision then, which
3  is 7.15.
4      A.  Okay.
5      Q.  Getting back to 7.15(b),
6  this line of questioning talked with or
7  started with the reference to the term,
8  the phrase, "the beneficiaries of the
9  Asbestos PI Trust".
10     A.  Uh-huh.
11     Q.  I'm a little confused by
12 your testimony at this point. If you are
13 the holder of an indemnified insurer TDP
14 claim post-confirmation, are you a
15 beneficiary of the Asbestos PI Trust?
16         MR. LIESEMER: Object to
17 the form of the question.
18         MS. HARDING: Object to
19 form.
20     A.  Assuming for the sake of
21 argument such a claim could arise, my
22 understanding would be yes.
23         MR. BROWN: All right. I'm
24 going to shift gears. We'll mark

Page 97

1  another document. The document I'm
2  about to mark is one of our
3  settlement agreements so we can
4  mark this portion of the deposition
5  subject to the protective order but
6  what I would like to do with this
7  one, like we did with Mr. Posner,
8  to the extent that no one objects
9  to the extent that we, my clients,
10 would like to use this portion of
11 the testimony without having it
12 under seal, we would be able to do
13 so without asking all parties to
14 agree. Is that fair?
15         MS. HARDING: That's up to
16 you.
17         MR. BROWN: All right.
18         MR. LEWIS: Did you say
19 Mr. Posner?
20         MR. BROWN: Yes.
21         MR. LEWIS: Okay.
22         (Settlement Agreement
23 Bates stamped OB 1 through 33
24 marked for identification as

Page 98

1  Exhibit Finke-10.)
2      MS. HARDING: And as I
3  understand it, all parties are -- I
4  think all parties in this room have
5  agreed to the protective order.
6      MR. BROWN: I don't know.
7  Is Mr. Speights on the line?
8      Mr. Speights?
9      MS. BAER: We can put on
10 the record that Mr. Speights never
11 objected to the provisions of the
12 protective order.
13     MR. BROWN: Okay.
14     Q. Mr. Finke, you have before
15 you a document which has been marked
16 Finke-10 and I'd like you to take a few
17 moments to review it and then tell me
18 whether you have ever seen the document
19 before.
20     A. No, I have not.
21     Q. Okay. Can you turn to
22 pages 30 and 31?
23     MR. LIESEMER: Are you
24 referring to the Bates numbering?

Page 99

1      MR. BROWN: Actually, it's
2  the same on these, on this
3  particular document, but OB 30 and
4  31.
5      Q. Do you recognize any of the
6  signatures that appear on either of those
7  pages?
8      MS. HARDING: You mean the
9  names of the people that have
10 signed or the actual signatures?
11     MR. BROWN: The latter.
12     A. The signature of Robert H.
13 Beber appears to be his signature, not --
14 I can't say that conclusively, but --
15     Q. Do you recognize --
16     A. -- it looks familiar.
17     Q. Do you recognize the
18 signature of Mr. Posner?
19     A. I don't.
20     Q. Who are the parties to the
21 agreement?
22     MS. HARDING: Object to
23 form and object to the extent that
24 he's testified that he's never seen

Page 100

1  the document before.
2      A. Based on the --
3      MS. HARDING: To the extent
4  that you know.
5      THE WITNESS: Sorry.
6      A. Based on the signature
7  page, the parties are W.R. Grace & Co.,
8  W.R. Grace & Co.-Conn., Commercial Union
9  Insurance Company as successor in interest
10 to Employers Commercial Union Insurance
11 Company of America and Employers
12 Commercial Union Insurance Company and
13 American Employers Insurance Company.
14     Q. Okay. And would you agree
15 with me that the parties that executed
16 this document appear, at least from what
17 is on the document, to have signed it in
18 or around May of 1993?
19     A. Yes.
20     Q. Okay. If you look at the
21 signature block for Mr. Beber, he's
22 indicated as having signed this document
23 on behalf of W.R. Grace & Co. Do you see
24 that?

Page 101

1      MS. HARDING: Which?
2      A. Yes.
3      MS. HARDING: Wait a
4  minute. What page? 30 or 31?
5      MR. BROWN: OB 30.
6      MS. HARDING: Right, I just
7  wanted to make it clear that he
8  appears to be in two different
9  places.
10     MR. BROWN: I'm focused on
11 the first signature on OB 30.
12     MS. HARDING: Page 30, all
13 right.
14     Q. The company that was called
15 W.R. Grace & Company in May of 1993 has a
16 different name today, doesn't it?
17     A. I believe that's correct.
18     Q. Okay. And the name is
19 Fresenius Medical Care Holdings, Inc., is
20 it not?
21     A. I don't know the answer off
22 the top of my head.
23     Q. Okay. Let me direct you to
24 a few things in the Plan. I'd like you to