# EXHIBIT E

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

— — —

In Re:                    : Chapter 11
                          :
                          : Case No.
W.R. GRACE & CO., et al,  : 01-01139 JKF
                          :
                          : (Jointly
          Debtors         : Administered)


— — —          \


Friday, May 1, 2009

— — —


          Oral deposition of PETER VAN

N. LOCKWOOD, ESQUIRE, taken pursuant to

notice, was held at the offices of CAPLIN

& DRYSDALE, One Thomas Circle N.W., Suite

1100, Washington, DC  20005, commencing

at 9:43 a.m., on the above date, before

Lori A. Zabielski, a Registered

Professional Reporter and Notary Public

in and for the Commonwealth of

Pennsylvania.


— — —

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

## Page 2

```
 1   APPEARANCES:
 2
 3   DRINKER BIDDLE & REATH, LLP
     BY: MICHAEL F. BROWN, ESQUIRE
 4       JEFFREY M. BOERGER, ESQUIRE
     One Logan Square
 5   18th & Cherry Streets
     Philadelphia, Pennsylvania 19103-6996
 6   215.988.2988
     (brownmf@dbr.com)
 7   (jeffrey.boerger@dbr.com)
     Representing OneBeacon America Insurance
 8   Company, Seaton Insurance Company,
     Government Employees Insurance Company,
 9   Columbia Insurance Company f/k/a Republic
     Insurance Company
10
11   CAPLIN & DRYSDALE, CHARTERED
12   BY: NATHAN D. FINCH, ESQUIRE
         JEFFREY A. LIESEMER, ESQUIRE*
13       (*VIA TELECONFERENCE)
     One Thomas Circle N.W.
14   Suite 1100
     Washington, DC 20005
15   202.862.7801
     (ndf@capdale.com)
16   (jal@capdale.com)
     Representing Grace, Official Committee of
17   Asbestos Personal Injury Claimants
     ("ACC"), and Witness
18
19
     W.R. GRACE & CO.
20   BY: RICHARD C. FINKE, ESQUIRE*
         ASSISTANT GENERAL COUNSEL
21       (*VIA TELECONFERENCE)
     5400 Broken Sound Boulevard, NW
22   Suite 300
     Boca Raton, Florida 33487
23   561.362.1533
     Representing W.R. Grace & Co.
```

## Page 3

```
 1   APPEARANCES (continued)
 2
 3   KIRKLAND & ELLIS, LLP
     BY: BARBARA M. HARDING, ESQUIRE
 4       THEODORE L. FREEDMAN, ESQUIRE
     655 Fifteenth Street, N.W.
 5   Washington, DC 20005-5793
     202.879.5081
 6   (barbara.harding@kirkland.com)
     (tfreedman@kirkland.com)
 7   Representing the Debtors
 8
 9   SIMPSON THACHER & BARTLETT, LLP
     BY: ELISA ALCABES, ESQUIRE
10   425 Lexington Avenue
     New York, New York 10017-3954
11   212.455.3133
     (ealcabes@stblaw.com)
12   Representing Travelers Casualty and
     Surety Company
13
14   VORYS, SATER, SEYMOUR AND PEASE, LLP
15   BY: TIFFANY STRELOW COBB, ESQUIRE*
         ROBERT J. SIDMAN, ESQUIRE*
16       (*VIA TELECONFERENCE)
     52 East Gay Street
17   Columbus, Ohio 43215
     614.464.8322
18   (tscobb@vorys.com)
     Representing The Scotts Company, LLC
19
20
     COHN WHITESELL & GOLDBERG, LLP
21   BY: DANIEL C. COHN, ESQUIRE
     101 Arch Street
22   Boston, Massachusetts 02110
     617.951.2505
23   (cohn@cwg11.com)
     Representing the Libby Claimants
24
```

## Page 4

```
 1   APPEARANCES (continued)
 2
 3   SPEIGHTS & RUNYAN
     BY: DANIEL H. SPEIGHTS, ESQUIRE*
 4       (* VIA TELECONFERENCE)
     200 Jackson Avenue East
 5   P.O. Box 685
     Hampton, South Carolina 29924
 6   803.943.4444
     (dspeights@speightsrunyan.com)
 7   Representing Anderson Memorial Hospital
 8
 9   TUCKER ARENSBERG
     BY: MICHAEL A. SHINER, ESQUIRE
10   1500 One PPG Place
     Pittsburgh, Pennsylvania 15222
11   412.594.5586
     (mshiner@tuckerlaw.com)
12   Representing Certain London Market
     Insurers and AXA Belgium
13
14
     MENDES & MOUNT, LLP
15   BY: CAROLINA ACEVEDO, ESQUIRE*
         (*VIA TELECONFERENCE)
16   750 Seventh Avenue
     New York, New York 10019
17   212.261.8262
     (carolina.acevedo@mendes.com)
18   Representing AXA Belgium as Successor to
     Royale Belge SSA
19
20
     MENDES & MOUNT, LLP
21   BY: ALEXANDER MUELLER, ESQUIRE*
         (*VIA TELECONFERENCE)
22   750 Seventh Avenue
     New York, New York 10019-6829
23   212.261.8296
     (alexander.mueller@mendes.com)
24   Representing London Market Companies
```

## Page 5

```
 1   APPEARANCE (continued)
 2
 3   FORD MARRIN ESPOSITO & WITMEYER & GLESER
     BY: ELIZABETH M. DeCRISTOFARO, ESQUIRE
 4   Wall Street Plaza
     New York, New York 10005-1875
 5   212.269.4900
     Representing Continental Casualty Company
 6   and Continental Insurance Company
 7
 8   BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
     BY: MATTHEW I. KRAMER, ESQUIRE
 9   200 South Biscayne Boulevard
     Suite 2500
10   Miami, Florida 33131-5340
     305.450.7246
11   (mkramer@bilzin.com)
     Representing Property Damage Committee
12
13
14   STROOCK & STROOCK & LAVAN, LLP
     BY: ARLENE G. KRIEGER, ESQUIRE
15   180 Maiden Lane
     New York, New York 10038-4982
     212.806.5400
16   (akrieger@stroock.com)
     Representing Official Committee of
17   Unsecured Creditors
18
19   CROWELL & MORING, LLP
     BY: MARK PLEVIN, ESQUIRE
20       NOAH S. BLOOMBERG, ESQUIRE
     1001 Pennsylvania Avenue NW
21   Washington, DC 20004-2595
     202.624.2913
22   (mplevin@crowell.com)
     (nbloomberg@crowell.com)
23   Representing Fireman's Fund Insurance
     (Surety Bond)
24
```

## Page 6

1  APPEARANCES (continued)
2
3  STEVENS & LEE, P.C.
   BY: JOHN D. DEMMY, ESQUIRE
   1105 North Market Street, 7th Floor
4  Wilmington, Delaware 19801
   302.654.5180
5  (jdd@stevenslee.com)
   Representing Fireman's Fund Insurance
6
7
   ALAN B. RICH LAW OFFICES
8  BY: ALAN B. RICH, ESQUIRE
   Elm Place, Suite 4620
9  1401 Elm Street
   Dallas, Texas 75202
10 214.744.5100
   (arich@alanrichlaw.com)
11 Representing Property Damage FCR
12
13 CONNOLLY BOVE LODGE & HUTZ, LLP
   BY: JEFFREY C. WISLER, ESQUIRE
14 The Nemours Building
   1007 North Orange Street
15 P.O. Box 2207
   Wilmington, Delaware 19899
16 302.88.6528
   (jwisler@cblh.com)
17 Representing Maryland Casualty
18
19 ECKERT SEAMANS CHERIN & MELLOTT, LLC
   BY: EDWARD J. LONGOSZ, II, ESQUIRE
20 1747 Pennsylvania Avenue, NW
   12th Floor
21 Washington, DC 20006
   202.659.6619
22 (elongosz@eckertseamans.com)
   Representing Maryland Casualty and Zurich
23

## Page 7

1  APPEARANCES (continued)
2
   WILEY REIN, LLP
3  BY: KARALEE C. MORELL, ESQUIRE
   1776 K Street NW
4  Washington, DC 20006
   202.719.7520
5  (kmorell@wileyrein.com)
   Representing Maryland Casualty and Zurich
6
7
   COZEN O'CONNOR
8  BY: JACOB C. COHN, ESQUIRE
   1900 Market Street
9  Philadelphia, Pennsylvania 19103-3508
   215.665.2147
10 (jcohn@cozen.com)
   Representing Federal Insurance Company
11
12
   ORRICK HERRINGTON & SUTCLIFFE, LLP
13 BY: JONATHAN P. GUY, ESQUIRE
       JOSHUA M. CUTLER, ESQUIRE
14 Columbia Center
   1152 15th Street, N.W.
15 Washington, DC 20005-1706
   202.339.8516
16 (jguy@orrick.com)
   Representing Future Claimants
17 Representative
18
19 CUYLER BURK, P.C.
   BY: ANDREW CRAIG, ESQUIRE
   4 Century Drive
   Parsippany, New Jersey 07054
   973.734.3200
   (acraig@cuyler.com)
22 Representing Allstate Insurance Company
23
24

## Page 8

1  APPEARANCES (continued)
2
3  WILSON ELSER MOSKOWITZ EDELMAN & DICKER,
   LLP
4  BY: CARL PERNICONE, ESQUIRE*
       (*VIA TELECONFERENCE)
5  150 East 42nd Street
   New York, New York 10017-5639
6  212.915.5656
   (carl.pernicone@wilsonelser.com)
7  Representing Arrowood Indemnity Company
8
9  WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
   BY: KEVIN J. MANGAN, ESQUIRE*
10    (*VIA TELECONFERENCE)
   222 Delaware Avenue
11 Suite 1501
   Wilmington, Delaware 19801
12 302.252.4361
   (kmangan@wcsr.com)
13 Representing State of Montana
14
15 PEPPER HAMILTON, LLP
   BY: LINDA J. CASEY, ESQUIRE*
16    (*VIA TELECONFERENCE)
17 3000 Two Logan Square
   Philadelphia, Pennsylvania 19103
   215.981.4000
18 (caseyl@pepperlaw.com)
   Representing BNSF Railway Company
19
20          - - -
21
22
23
24

## Page 9

1          - - -
2        I N D E X
3          - - -
4
5  Testimony of:
6  PETER VAN N. LOCKWOOD, ESQUIRE
7
8  By Mr. Brown        Page 12
9  By Ms. Alcabes      Page 267
10 By Ms. Cobb         Page 339
11 By Mr. Cohn         Page 368
12
13
14          - - -
15        E X H I B I T S
16          - - -
17 NO.   DESCRIPTION           PAGE
18 1    Amended Notice of Deposition
        of Asbestos PI Committee...   12
19
     2    Objections to the Official
20        Committee...          12
21 3    Form 8-K and Term Sheet    15
22 4    Exhibit-6 to Exhibit Book   26
23 5    First Amended Joint Plan of
        Reorganization...      27
24

Page 10

1  EXHIBITS (continued)
2
3  NO.  DESCRIPTION           PAGE
4  6   Exhibit-19 to Exhibit Book   83
5  7   Settlement Agreement
        * CONFIDENTIAL *          144
6
   8   Complaint for Declaration of
7      the Relief...              175
8  9   Diagram                    175
9  10  Exhibit-2 to Exhibit Book  196
10 11  Exhibit-4 to Exhibit Book  224
11 12  Exhibit-10 to Exhibit Book 260
12 13  Travelers Casualty and Surety
        Company's Notice of Deposition
13      to the Official Committee of
        Asbestos Personal Injury
14      Claimants...              267
15 14  Debtors' Disclosure...     280
16 15  Documents bearing Bates stamps
        TRAVAS0000019 through 141
17      * CONFIDENTIAL *          289
18 16  Notice of Service of Discovery 324
19
        - - -
20
21
22
23

Page 11

1         - - -
2     DEPOSITION SUPPORT INDEX
3         - - -
4
5  Direction to Witness Not to Answer:
6  Page Line      Page Line
7  NONE
8
9
10 Request for Production of Documents:
11 Page Line      Page Line
12 NONE
13
14
15 Stipulations:
16 Page Line      Page Line
17 12   02
18
19
20 Area(s) Marked Confidential:
21 Page Line      Page Line
   152  01  through 168   03
   292  01  through 311   14
23
24

Page 12

1         - - -
2         (It is hereby stipulated and
3     agreed by and among counsel for
4     the respective parties that the
5     filing, sealing and certification
6     of the deposition are waived; and
7     that all objections, except as to
8     the form of the question, will be
9     reserved until the time of trial.)
10        PETER VAN N. LOCKWOOD,
11    ESQUIRE, after having been first
12    duly sworn, was examined and
13    testified as follows:
14
15        EXAMINATION
16        - - -
17    (ACC 30(b)(6)-1 and 2
18    premarked for identification.)
19        - - -
20 BY MR. BROWN:
21    Q.   Good morning, Mr. Lockwood.
22    A.   Good morning, Mr. Brown.
23    Q.   You are appearing here today

Page 13

1  as the Rule 30(b)(6) designee for the
2  ACC, correct?
3     A.   Correct.
4     Q.   And that is with respect to
5  a number of 30(b)(6) notices, correct?
6     A.   A very large number, yes.
7     Q.   Can you look at the one
8  that's been put before you and marked ACC
9  Rule 30(b)(6)-1, which I will call ACC-1
10 here after.
11    A.   I have it.
12    Q.   Can you identify it?
13    A.   It is an Amended Notice of
14 Deposition of Asbestos PI Committee
15 Pursuant to Rule 30(b)(6) served by four
16 insurance companies, One Beacon, Seaton,
17 Geico, and Columbia.  And it contains an
18 attachment with definitions and topics
19 which are the subject matter of
20 testimony.
21    Q.   Okay.  And can you look at
22 the document that I put before you that's
23 marked ACC-2.
24    A.   I have it.

Page 14

1     Q.   And identify that document,
2  please.
3     A.   That document is the
4  Objections of the Official Committee of
5  Asbestos Personal Injury Claimants to
6  Rule 30(b)(6) Notices of Deposition
7  served by Certain Plan Objectors.
8     Q.   Okay.  And is it correct
9  that you are here today prepared to
10  testify about the topics that are listed
11  in ACC-1 subject to the objections that
12  appear in ACC-2?
13     A.   The answer to that question
14  is yes, subject to the following caveats:
15  To the extent that the topics in this
16  notice or any of the other notices are
17  subjects that the ACC has a person with
18  knowledge on, I am here to testify about
19  it.  To the extent that the ACC doesn't
20  have a person with knowledge on certain
21  topics, then I am here to testify that
22  the ACC doesn't have knowledge on those
23  topics.
24     Q.   Okay.  And --

Page 15

1     A.   And to the extent that
2  occurs, we will see how it occurs in the
3  course of the questions.
4     Q.   Okay.  And then you
5  mentioned ACC and a person with the ACC.
6          How are you using the term
7  "ACC"?
8     A.   I am using it as the entity
9  that was appointed in the bankruptcy case
10  by the U.S. Trustee.
11          MR. BROWN:  ACC-3.
12          (ACC 30(b)(6)-3 marked for
13    identification at this time.)
14  BY MR. BROWN:
15     Q.   Okay.  Mr. Lockwood, you now
16  have before you a document that should
17  have two exhibit labels on it.  One is an
18  Exhibit-12 from the deposition of
19  Mr. Finke, and the other is ACC-3.
20          Could you identify the
21  document that has been marked as ACC-3?
22     A.   It appears to be a Form 8-K
23  file by W.R. Grace & Company dated April
24  6, 2008.

Page 16

1     Q.   Have you ever seen this
2  document before?
3     A.   Frankly, I am not sure.
4     Q.   Okay.
5     A.   I may have.  I may not have.
6     Q.   All right.  Why don't you go
7  to the back of the document, starting
8  with page 9.
9     A.   Page 9 or page 8?
10     Q.   I am sorry.  Page 8.
11     A.   I am there.
12     Q.   Can you identify that
13  document?
14     A.   It appears to be a copy of a
15  Term Sheet for the Resolution of Asbestos
16  Personal Injury Claims entered into by a
17  variety of parties, including the ACC.
18     Q.   Okay.  Have you seen the
19  Term Sheet, either this Term Sheet or
20  some iteration of it previously?
21     A.   I have seen the original of
22  it.
23     Q.   Okay.  Can you take a look
24  at what you have before you and tell me

Page 17

1  whether it differs in any way from the
2  original?
3          MR. FINCH:  Objection.
4          THE WITNESS:  On the face of
5  it, it does not appear to
6  different.  I mean, obviously, a
7  comparison of the original and
8  this copy would be the definitive
9  way of determining whether there
10  is a difference, but this looks to
11  be the same, as best I can recall.
12  BY MR. BROWN:
13     Q.   Okay.  And this document was
14  negotiated by the parties that executed
15  it, is that correct, or their counsel?
16     A.   Broadly speaking, yes.  I
17  mean, negotiated implies human beings in
18  a room or in some communication, and
19  these are all entities.  So various
20  representatives of the entities that are
21  listed here in negotiated this document
22  on behalf of their respective principals.
23     Q.   Is there anything in the
24  Term Sheet that you can see that's

Page 18

1  inaccurate?
2      MR. FINCH: Object to form.
3      THE WITNESS: To answer that
4  question, I would have to read
5  every word in the Term Sheet and
6  determine whether or not there are
7  statements in here which are
8  contained facts which might be
9  erroneously stated. I am not sure
10  that there are any such things.
11  BY MR. BROWN:
12      Q.   Take a moment to review it,
13  if you would. It's not that long.
14      A.   Well, I have read it. As
15  far as I can tell, it is accurate in the
16  sense that it states the terms of an
17  agreement, and those are the terms of the
18  agreement. It doesn't purport to recite
19  facts.
20      Q.   Okay. Look at the first
21  sentence. There is a reference there to
22  certain of the principal terms and
23  conditions.
        Do you see that?

Page 19

1      A.   I do.
2      Q.   Were there other principal
3  terms and conditions that were left off
4  the Term Sheet?
5      A.   I don't believe there were
6  that had been negotiated, agreed on.
7      It is common that a Term
8  Sheet is subject to a definitive
9  agreement. And in a complicated
10  bankruptcy case, involving a complicated
11  settlement, it would be my understanding
12  and I believe the understanding of
13  everybody else that was involved in this
14  that this Term Sheet would only purport
15  to set out certain of the most -- what
16  the parties consider to be the most
17  important terms, and other terms would
18  remain to be negotiated as part of the
19  drafting of either the definitive Plan or
20  a more definitive settlement agreement or
21  whatever document would be required to
22  flesh out the details.
23      Q.   Okay. Can you turn to page
24  9, and you will see under the Romanette

Page 20

1  5, there is a sentence that begins,
2  "Provided however..."?
3      A.   Yes.
4      Q.   Do you know to what that
5  refers?
6      MR. FINCH: Objection. I
7  caution the witness not to reveal
8  any privileged communications. If
9  you can answer the question
10  without divulging privileged
11  information, you can do so.
12      MS. HARDING: And I am going
13  to object also as to privilege as
14  to the relevancy of negotiations,
15  and I believe that -- well --
16  okay.
17      THE WITNESS: I am trying to
18  remember what this phrase referred
19  to at the time this Term Sheet was
20  entered into. As best I can
21  recall, at the time of the Term
22  Sheet, the concept that was
23  reflected by this language was
24  that what was going to be

Page 21

1  transferred to the Trust was
2  coverage for asbestos personal
3  injury claims, and to the extent
4  that there was coverage that
5  didn't -- that somehow or another
6  didn't cover asbestos personal
7  injury claims, like, for example,
8  workers' compensation insurance,
9  that wouldn't be transferred to
10  the Trust.
11      But since this Term Sheet
12  was superseded by the Plan
13  ultimately, I am not sure exactly
14  what the significance of this
15  particular term at this time is.
16  BY MR. BROWN:
17      Q.   Okay. Well, putting aside
18  workers' compensation coverage, is there
19  any other coverage that you are aware of
20  that Grace has under the policies that
21  are being transferred to the Asbestos PI
22  Trust?
23      MR. FINCH: Objection to the
24  form.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

— — —

In Re:                      : Chapter 11
                            :
                            : Case No.
W.R. GRACE & CO., et al,    : 01-01139 JKF
                            :
                            : (Jointly
            Debtors         : Administered)


— — —


Monday, May 4, 2009

— — —


Continuation of oral

deposition of PETER VAN N. LOCKWOOD,

ESQUIRE, taken pursuant to notice, was

held at the offices of CAPLIN & DRYSDALE,

One Thomas Circle N.W., Suite 1100,

Washington, DC  20005, commencing at

12:05 p.m., on the above date, before

Lori A. Zabielski, a Registered

Professional Reporter and Notary Public

in and for the Commonwealth of

Pennsylvania.

— — —

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

## Page 450

```
 1   APPEARANCES:
 2
 3   DRINKER BIDDLE & REATH, LLP
     BY: MICHAEL F. BROWN, ESQUIRE
 4   One Logan Square
     18th & Cherry Streets
 5   Philadelphia, Pennsylvania 19103-6996
     215.988.2988
 6   (brownmf@dbr.com)
     (jeffrey.boerger@dbr.com)
 7   Representing OneBeacon America Insurance
     Company, Seaton Insurance Company,
 8   Government Employees Insurance Company,
     Columbia Insurance Company f/k/a Republic
 9   Insurance Company
10
11   CAPLIN & DRYSDALE, CHARTERED
     BY: NATHAN D. FINCH, ESQUIRE
12      JEFFREY A. LIESEMER, ESQUIRE*
        (*VIA TELECONFERENCE)
13   One Thomas Circle N.W.
     Suite 1100
14   Washington, DC 20005
     202.862.7801
15   (ndf@capdale.com)
     (jal@capdale.com)
16   Representing Grace, Official Committee of
     Asbestos Personal Injury Claimants
17   ("ACC"), and Witness
18
     ANDERSON KILL & OLICK, P.C.
19   BY: ROBERT M. HORKOVICH, ESQUIRE
     1251 Avenue of the Americas
20   New York, New York 10020
     212.278.1322
21   (rhorkorvitz@andersonkill.com)
     Representing the ACC
22
23
 4
```

## Page 451

```
 1   APPEARANCES (continued)
 2
 3   KIRKLAND & ELLIS, LLP
     BY: THEODORE L. FREEDMAN, ESQUIRE
 4   655 Fifteenth Street, N.W.
     Washington, DC 20005-5793
 5   202.879.5081
     (tfreedman@kirkland.com)
 6   Representing the Debtors
 7
 8   THE LAW OFFICES OF JANET S. BAER, P.C.
     BY: JANET S. BAER, ESQUIRE
 9   70 West Madison Street
     Suite 2100
10   Chicago, Illinois 606002
     312.641.2162
11   Representing the Debtors
12
13   SIMPSON THACHER & BARTLETT, LLP
     BY: SAMUEL J. RUBIN, ESQUIRE*
14      (*VIA TELECONFERENCE)
     425 Lexington Avenue
15   New York, New York 10017-3954
     212.455.3122
16   (srubin@stblaw.com)
     Representing Travelers Casualty and
17   Surety Company
18
19   VORYS, SATER, SEYMOUR AND PEASE, LLP
     BY: TIFFANY STRELOW COBB, ESQUIRE*
20      (*VIA TELECONFERENCE)
     52 East Gay Street
21   Columbus, Ohio 43215
     614.464.8322
22   (tscobb@vorys.com)
     Representing The Scotts Company, LLC
23
24
```

## Page 452

```
 1   APPEARANCES (continued)
 2
 3   COHN WHITESELL & GOLDBERG, LLP
     BY: DANIEL C. COHN, ESQUIRE
 4   101 Arch Street
     Boston, Massachusetts 02110
 5   617.951.2505
     (cohn@cwg11.com)
 6   Representing the Libby Claimants
 7
 8   SPEIGHTS & RUNYAN
     BY: DANIEL H. SPEIGHTS, ESQUIRE*
 9      (*VIA TELECONFERENCE)
     200 Jackson Avenue East
10   P.O. Box 685
     Hampton, South Carolina 29924
11   803.943.4444
     (dspeights@speightsrunyan.com)
12   Representing Anderson Memorial Hospital
13
14   TUCKER ARENSBERG
     BY: MICHAEL A. SHINER, ESQUIRE*
15      (*VIA TELECONFERENCE)
     1500 One PPG Place
16   Pittsburgh, Pennsylvania 15222
     412.594.5586
17   (mshiner@tuckerlaw.com)
     Representing Certain London Market
18   Insurers and AXA Belgium
19
20   FORD MARRIN ESPOSITO & WITMEYER & GLESER
     BY: ELIZABETH M. DeCRISTOFARO, ESQUIRE
21   Wall Street Plaza
     New York, New York 10005-1875
22   212.269.4900
     Representing Continental Casualty Company
23   and Continental Insurance Company
24
```

## Page 453

```
 1   APPEARANCES (continued)
 2
 3   BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
     BY: MATTHEW I. KRAMER, ESQUIRE*
 4      (*VIA TELECONFERENCE)
     200 South Biscayne Boulevard
 5   Suite 2500
     Miami, Florida 33131-5340
 6   305.450.7246
     (mkramer@bilzin.com)
 7   Representing Property Damage Committee
 8
 9   STROOCK & STROOCK & LAVAN, LLP
     BY: ARLENE G. KRIEGER, ESQUIRE*
10      (*VIA TELECONFERENCE)
     180 Maiden Lane
11   New York, New York 10038-4982
     212.806.5400
12   (akrieger@stroock.com)
     Representing Official Committee of
13   Unsecured Creditors
14
15   CROWELL & MORING, LLP
     BY: MARK PLEVIN, ESQUIRE
16      NOAH S. BLOOMBERG, ESQUIRE
     1001 Pennsylvania Avenue NW
17   Washington, DC 20004-2595
     202.624.2913
18   (mplevin@crowell.com)
     (nbloomberg@crowell.com)
19   Representing Fireman's Fund Insurance
     (Surety Bond)
20
21
22
23
24
```

Page 454

```
 1    APPEARANCES (continued)
 2
 3    STEVENS & LEE, P.C.
      BY: JOHN D. DEMMY, ESQUIRE*
 4      (* VIA TELECONFERENCE)
      1105 North Market Street, 7th Floor
 5    Wilmington, Delaware 19801
      302.654.5180
 6    (jdd@stevenslee.com)
      Representing Fireman's Fund Insurance
 7
 8
      ALAN B. RICH LAW OFFICES
 9    BY: ALAN B. RICH, ESQUIRE*
        (*VIA TELECONFERENCE)
10    Elm Place, Suite 4620
      1401 Elm Street
11    Dallas, Texas 75202
      214.744.5100
12    (arich@alanrichlaw.com)
      Representing Property Damage FCR
13
14
      CONNOLLY BOVE LODGE & HUTZ, LLP
15    BY: JEFFREY C. WISLER, ESQUIRE
      The Nemours Building
16    1007 North Orange Street
      P.O. Box 2207
17    Wilmington, Delaware 19899
      302.88.6528
18    (jwisler@cblh.com)
      Representing Maryland Casualty
19
20
      ECKERT SEAMANS CHERIN & MELLOTT, LLC
21    BY: EDWARD J. LONGOSZ, II, ESQUIRE
      1747 Pennsylvania Avenue, NW
22    12th Floor
      Washington, DC 20006
23    202.659.6619
      (elongosz@eckertseamans.com)
 4    Representing Maryland Casualty and Zurich
```

Page 456

```
 1    APPEARANCES (continued)
 2
 3    WILSON ELSER MOSKOWITZ EDELMAN & DICKER,
      LLP
 4    BY: CARL PERNICONE, ESQUIRE
      150 East 42nd Street
 5    New York, New York 10017-5639
      212.915.5656
 6    (carl.pernicone@wilsonelser.com)
      Representing Arrowood Indemnity Company
 7
 8    O'MELVENY & MYERS, LLP
      BY: TANCRED SCHIAVONI, ESQUIRE*
 9      (*VIA TELECONFERENCE)
      Times Square Tower
10    7 Times Square
      New York, New York 10036
11    212.326.2267
      (tschiavoni@omm.com)
12    Representing Arrowood Indemnity Company
13
14    WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
      BY: KEVIN J. MANGAN, ESQUIRE*
15      (*VIA TELECONFERENCE)
      222 Delaware Avenue
16    Suite 1501
      Wilmington, Delaware 19801
17    302.252.4361
      (kmangan@wcsr.com)
18    Representing State of Montana
19
20    PEPPER HAMILTON, LLP
      BY: LINDA J. CASEY, ESQUIRE*
21      (*VIA TELECONFERENCE)
      3000 Two Logan Square
22    Philadelphia, Pennsylvania 19103
      215.981.4000
23    (caseyl@pepperlaw.com)
      Representing BNSF Railway Company
24
```

Page 455

```
 1    APPEARANCES (continued)
 2
 3    WILEY REIN, LLP
      BY: KARALEE C. MORELL, ESQUIRE
 4    1776 K Street NW
      Washington, DC 20006
 5    202.719.7520
      (kmorell@wileyrein.com)
 6    Representing Maryland Casualty and Zurich
 7
 8    COZEN O'CONNOR
      BY: ILAN ROSENBERG, ESQUIRE*
 9      (*VIA TELECONFERENCE)
      1900 Market Street
10    Philadelphia, Pennsylvania 19103-3508
      215.665.4621
11    (irosenberg@cozen.com)
      Representing Federal Insurance Company
12
13
      ORRICK HERRINGTON & SUTCLIFFE, LLP
14    BY: JONATHAN P. GUY, ESQUIRE
        JOSHUA M. CUTLER, ESQUIRE
15    Columbia Center
      1152 15th Street, N.W.
16    Washington, DC 20005-1706
      202.339.8516
17    (jguy@orrick.com)
      Representing Future Claimants
18    Representative
19
20    CUYLER BURK, P.C.
      BY: TANYA M. MASCARICH, ESQUIRE*
21      (*VIA TELECONFERENCE)
      4 Century Drive
22    Parsippany, New Jersey 07054
      973.734.3200
23    (tmascarich@cuyler.com)
      Representing Allstate Insurance Company
24
```

Page 457

```
 1
      APPEARANCES (continued)
 2
 3
      GOODWIN PROCTER, LLP
 4    BY: DANIEL M. GLOSBAND, ESQUIRE*
        (*VIA TELECONFERENCE)
 5    Exchange Place
      53 State Street
 6    Boston, Massachusetts 02109
      617.570.1930
 7    (dglosband@goodwinprocter.com)
      Representing CNA Insurance
 8
 9
      KRAMER LEVIN NAFTALIS & FRANKEL, LLP
10    BY: GREGORY A. HOROWITZ, ESQUIRE
      1177 Avenue of the Americas
11    New York, New York 10036
      212.715.9571
12    (ghorowitz@kramerlevin.com)
      Representing Official Committee of Equity
13    Holders
14
                      - - -
15
16
17
18
19
20
21
22
23
24
```

Page 458

- - -

INDEX

- - -

Testimony of:
PETER VAN N. LOCKWOOD, ESQUIRE

By Mr. Cohn          Page 462
By Mr. Wisler         Page 531
By Mr. Mangan        Page 544
By Ms. Casey         Page 549
By Mr. Speights      Page 563
By Mr. Plevin        Page 606
By Mr. Schiavoni     Page 624
By Mr. Brown         Page 636

- - -

EXHIBITS

- - -

NO.  DESCRIPTION            PAGE
17   Notice of Deposition of
     Asbestos PI Committee Pursuant
     to Rule 30(b)(6)           460
18   Exhibit 8 to Exhibit Book    460

- - -

Page 459

- - -

DEPOSITION SUPPORT INDEX

- - -

Direction to Witness Not to Answer:
Page  Line      Page   Line
620   11        632    14

Request for Production of Documents:
Page  Line      Page   Line
NONE

Stipulations:
Page  Line      Page   Line
12    02
(Previously)

Area(s) Marked Confidential:
Page  Line      Page   Line
NONE

Page 460

- - -

PETER VAN N. LOCKWOOD,
ESQUIRE, after having been first
duly sworn, was examined and
testified as follows:

- - -

PROCEEDINGS

- - -

(ACC 30(b)(6)-17 and 18
premarked for identification at
this time.)

MR. COHN:  Go ahead,
Mr. Schiavoni.

MR. SCHIAVONI:  I just
wanted to object.  We have written
the Libby claimants separately
about this, but we object to them
doing any questioning of
Mr. Lockwood on the grounds that
the Libby claimants are members of
the committee; they have not
objected to Mr. Lockwood's
designation to testify on behalf

Page 461

of the committee; nor have they
offered in response to requests
any alternative witness to testify
on any topics on which they
disagree with Mr. Lockwood.
We see Mr. Lockwood's
testimony and the failure of the
Libby claimants to object to the
designation of Mr. Lockwood as an
adoptive omission by the Libby
claimants, and we object to any
questioning by them as essentially
questioning seeking to impeach
their own witness.  Thank you.
MR. COHN:  You are welcome.
We will respond to your
correspondence, but, for the
moment, let's simply say that we
reject the basis for your
objection.
MR. SCHIAVONI:  If there are
any topics that the Libby
claimants object to Mr. Lockwood's
designation on, we need to know

Page 462

1   what those topics are before this
2   deposition is completed so we can
3   question on those topics.
4           MR. COHN:  So far as the
5   Libby claimants are aware,
6   Mr. Lockwood has been properly
7   designated as the spokesman for
8   the Asbestos PI Committee as an
9   entity.
10          So with that, why don't we
11  start.
12              -  -  -
13          EXAMINATION
14              -  -  -
15  BY MR. COHN:
16      Q.   We didn't do this last time,
17  so let me hand you what has been marked
18  as ACC 30(b)(6) Exhibit-17 and ask
19  whether you recognize it.
20      A.   I do.
21      Q.   And what is it?
22      A.   It's a Notice of Deposition
23  of the ACC by the Libby claimants.
24      Q.   Okay.  And that's a

Page 463

1   deposition under Rule 30(b)(6)?
2       A.   Correct.
3       Q.   And you are the person who
4   has been designated by the Asbestos
5   Claimants Committee to appear on behalf
6   of the committee?
7       A.   To my great good fortune,
8   yes.
9       Q.   Okay.  Now, this deposition
10  was begun on Friday, May 1st; is that
11  correct?
12      A.   Yes.
13      Q.   And we suspended at about
14  7:45 in the evening?
15      A.   As best I can recall, that
16  seems about right.
17      Q.   Since that time, have you
18  spoken with your counsel at all?
19      A.   Do you mean Mr. Finch?
20      Q.   Or any of the lawyers
21  representing you?
22      A.   Well, Mr. Finch and I were
23  on a conference call this morning on
24  matters wholly unrelated to this case.  I

Page 464

1   haven't discussed my testimony with him,
2   if that's what you are inquiring about.
3       Q.   Yes.  The next question
4   would be whether you have discussed
5   either the testimony that you have given
6   or the testimony that you are going to
7   give in this deposition.
8       A.   I have not discussed that
9   with anybody --
10      Q.   Okay.
11      A.   -- since Friday, which, I
12  guess, was your question.
13      Q.   That was the question.
14          All right.  Is it the case
15  that any asbestos PI claimant may elect
16  individual review of his claim?
17          MS. BAIER:  Objection to
18  form.  Basis?  What are you
19  talking about, in the world?
20          MR. COHN:  Okay.  Let me
21  start again.
22  BY MR. COHN:
23      Q.   Let me refer you to the TDP,
24  which has been marked as ACC Exhibit-11.

Page 465

1       A.   I have it.
2       Q.   And ask you under the TDP
3   whether any asbestos PI claimant may
4   elect individual review of his claim?
5       A.   As best I can recall,
6   assuming the claimant has not previously
7   elected expedited review and subject to
8   the provisions relating to expedited
9   review, the answer to that question is
10  yes.  There are specific provisions in
11  the TDP that address individual review
12  and how it's to be elected and how it's
13  to proceed.
14      Q.   And when a claimant properly
15  in accordance with the TDP elects
16  individual review, what happens next?
17      A.   Well, that depends, frankly,
18  on how the trustees after consummation of
19  the Plan proceed to establish the claims
20  handling or resolution facility.  As of
21  right now, the Grace Trust doesn't exist,
22  doesn't have claims handling facility,
23  and, therefore, there is no specific set
24  of personnel or internal procedures that

Page 466

1  have yet been created for the mechanical
2  process of claims review.
3      Q.   Based on how similar trusts
4  have functioned in other cases, how would
5  you expect the Asbestos PI Trust to go
6  about the process of deciding what offer
7  to make on individual review?
8      MR. FINCH: Objection, form,
9  foundation.
10     You can answer.
11     THE WITNESS: I do not have
12  enough personal experience with
13  the actual practices of other
14  asbestos trusts to answer that
15  question.
16     It is possible Mr. Inselbuch
17  might be able to better answer
18  that question, although, to some
19  extent, what you are asking for is
20  speculation, because at the end of
21  the day, it's the trustees that
22  will decide how the Trust proceeds
23  to handle claims and not me,
24  Mr. Inselbuch, or the committee

Page 467

1  beyond what is set forth in the
2  TDP itself.
3  BY MR. COHN:
4      Q.   All right. Referring,
5  again, to Exhibit-11, if a person does
6  not fit the medical criteria for a
7  particular disease category set forth in
8  Section 5.3(a)(3), does the Trust have
9  discretion to allow the claim in that
10  category anyway?
11     MR. FINCH: Objection to
12  form and to the word "allow."
13     MR. COHN: Then why don't I
14  rephrase that.
15  BY MR. COHN:
16     Q.   Referring to the TDP, if a
17  person doesn't fit the medical criteria
18  for a particular disease category set
19  forth in Section 5.3(a)(3), does the
20  Trust have discretion to liquidate the
21  claim as a claim in that category?
22     MR. FINCH: Object to form.
23     THE WITNESS: Again, this is
24  something that Mr. Inselbuch might

Page 468

1  be able to give you a somewhat
2  more informed answer.
3      But my understanding of the
4  TDP is that the criteria that you
5  are referring to, which are set
6  forth in Section 5.3(a)(3) are, as
7  a general proposition, applicable
8  to what's called the expedited
9  review process.
10     And, by hypothesis, if you
11  are talking about individual
12  review, you are talking about
13  somebody who is not elected
14  expedited review. And it's my
15  understanding that, again, subject
16  to the specific provisions of the
17  TDP on this, that the trustees can
18  determine to liquidate and pay any
19  claim that they believe based on
20  whatever process they undertake,
21  would be legitimately compensable
22  under applicable state or federal
23  nonbankruptcy law.
24  BY MR. COHN:

Page 469

1      Q.   So failure to meet any
2  particular medical criterion that would
3  be required to have a claim allowed by
4  expedited review -- I didn't mean
5  allow -- I mean liquidated expedited
6  review would not be fatal to liquidating
7  the claim in that category upon
8  individual review?
9      A.   That's my understanding,
10  yes.
11     Q.   So, specifically, may the
12  Trust choose to liquidate a claim for
13  severe disabling pleural disease at the
14  level of compensation provided for claims
15  for severe disabling pleural disease even
16  though the claimant does not have
17  blunting of the costophrenic angle?
18     MR. FINCH: Object to form.
19     THE WITNESS: That is a very
20  compound question, because you
21  started talking about the value.
22  The values, just like the other
23  criteria, are set in the expedited
24  review errors. Individual review

Page 634

1    the same position and give the
2    same instruction.
3        If you ask about questions
4    that Libby claimants have taken in
5    papers filed in the court, for
6    example, in a Disclosure Statement
7    objections and the bullet point
8    Plan objections and the
9    committee's responses made to that
10   in open court, I will permit
11   Mr. Lockwood certainly to answer
12   those questions.
13       But anything that gets into
14   communications with between the
15   Libby claimants with the rest of
16   the ACC or counsel for the ACC
17   about their respective views of
18   insurance coverage, I am going to
19   take the position as privileged.
20       And so I think you have to
21   do it on a question-by-question
22   basis, but that's my general
23   position.
1    BY MR. SCHIAVONI:

Page 635

1        Q.   Okay.  Mr. Lockwood, I just
2    have one other brief topic.  And here is
3    the first question on that:  Does the
4    Plan purport to release claims that may
5    exist between insurers and Non-Debtors?
6        MR. FINCH:  Objection, form,
7    broad, vague.
8        THE WITNESS:  Phrased as
9    broadly as you have, I think the
10   answer is yes.
11       MR. SCHIAVONI:  Okay.  Thank
12   you.  I have no further questions.
13       MR. FINCH:  Is there anyone
14   else in the room who has
15   questions?
16       MR. BROWN:  I have some
17   follow-ups.
18       MR. FINCH:  Is there anyone
19   else on the telephone who has not
20   asked questions yet who has
21   questions?
22       (No response.)
23       MR. FINCH:  Hearing no
24   affirmative response, I will let

Page 636

1    you have follow-up until we run
2    out of time.
3        (There was a discussion held
4    off the record at this time.)
5        (There was a break from 3:55
6    p.m. to 4:03 p.m.)
7            - - -
8            EXAMINATION
9            - - -
10   BY MR. BROWN:
11       Q.   Mr. Lockwood, just a couple
12   of follow-ups.  The court reporter is
13   actually going to read back a question
14   and answer.  I think it's probably easier
15   to do that, and then I will ask my
16   follow-up question.  It was end of
17   Mr. Wisler's questioning of you.
18       A.   Okay.
19       (The reporter read from the
20   record as requested.)
21   BY MR. BROWN:
22       Q.   And after that,
23   Mr. Lockwood, Mr. Wisler asked you a
24   follow-up as to what type of claim it

Page 637

1    would be.
2        And is it correct that the
3    ACC does not have a position on what type
4    of claim it would be if it's not a Class
5    6 claim?
6        A.   Well, the ACC doesn't, as
7    such, have positions on hypothetical
8    questions.  So, yes, the ACC doesn't have
9    a position on that issue.  The ACC --
10   well, I will leave it at that.
11       Q.   On Friday, Mr. Cohn asked
12   you a question, who drafted the TDP.
13   That was the question, and you gave an
14   answer which I am happy to show you the
15   full answer.  But I WANT to repeat a
16   portion of your answer.  You said:  "The
17   participants that did it were basically
18   counsel for the ACC, counsel for the FCR,
19   and members of the ACC itself in terms of
20   reviewing and commenting on things, and
21   the FCR himself."
22       When you said the ACC
23   itself, what did you mean?
24       A.   I meant --

Page 638

1    Q.   I am sorry.  When you said
2  members of the ACC itself, what members
3  are you talking about?
4    A.   Well, I was referring to the
5  personal injury counsel who were the
6  delegated representatives of the
7  individual ACC members, if that's what
8  you are driving at.
9    Q.   That's what I am driving at.
10  And who specifically were
11  they?
12    A.   As far as I know -- well,
13  the way in which the process works, in
14  general, is sometimes the ACC has
15  in-person meetings, sometimes it has
16  telephonic meetings, sometimes documents
17  get sent to it by email as PDF
18  attachments or whatever, and the ACC has
19  asked do you want to have a meeting or is
20  this good enough for you.  So there is a
21  variety of ways in which the ACC views an
22  input as obtained.
23        And my answer was simply
1   that at the conclusion of a process, the

Page 639

1  members of the ACC had weighed in in one
2  or more of the ways in which I had
3  described some of them had; they all had
4  the opportunity to express their views;
5  and, therefore, the final product was the
6  product of their input.  And there was a
7  final vote to go forward with the
8  document.
9    Q.   Okay.  And when you say the
10  members, you are talking about their
11  actual personal injury counsel?
12    A.   As far as I know.  But,
13  again, I couldn't tell you whether an
14  individual personal injury lawyer might
15  have consulted with his client, the
16  member, on one or more aspects of the TDP
17  or, for that matter, even sent the client
18  a copy of the entire TDP and had a
19  discussion with him about it.  I
20  certainly couldn't exclude that.
21    Q.   Can you tell me the list of
22  counsel that you are talking about, the
23  actual names?
24    A.   They would be -- as a

Page 640

1  general proposition, I believe they are
2  in the Disclosure Statement.  If they
3  are, it's a hell of a lot better
4  description of them than my memory.  I
5  just --
6        MR. FINCH:  There is also an
7    order entered by the U.S. Trustee
8    that identifies the 11 individual
9    members of the ACC and their
10    counsel, care of their firms.
11  BY MR. BROWN:
12    Q.   That's what I am driving at.
13  I would like to know who the individuals
14  were at their firms that were involved.
15    A.   Well, let me just see.  I am
16  somewhat surprised.  The Disclosure
17  Statement does not appear to contain the
18  members of the ACC.  It just lists the
19  counsel representing the committee as a
20  whole.  I had misremembered.  I had
21  thought that it did.
22        I can't really remember.  I
23  mean, I know the four -- I identified
24  four earlier as being involved in the

Page 641

1  discussions with Grace.  They are
2  included.  I think there is at least nine
3  members of the ACC.  I do not recall, as
4  I sit here, who the other five members of
5  the ACC are.  I mean, they are of
6  record -- strike that.  I do not recall
7  who the other five lawyers for the
8  members of the ACC are.  They are of
9  record.
10    Q.   But the four to which you
11  are referring is Mr. Budd, Mr. Rice,
12  Mr. Cooney, and Mr. Weitz?
13    A.   Correct.
14    Q.   You were talking about the
15  Trust Distribution Procedures and who
16  drafted them.
17        Would your answer be the
18  same with respect to the Trust Agreement?
19    A.   On the Trust Agreement, I
20  think there was more input from Grace,
21  and, indeed, I think there may have been
22  some from counsel from Sealed Air, as I
23  think about it.  And, indeed, now that I
24  think about it, I think there may have

Page 642

1 even been a little input from the Sealed
2 Air counsel on the TDP. But, again, the
3 primary draftspersons were counsel for
4 the ACC and the FCR.
5    Q.   Okay.  Can I direct your
6 attention to the Plan, which I guess is
7 ACC-5, and specifically it's page 70 on
8 my copy.  It's under Section 7.7
9 Conditions to Occurrence of the
10 Confirmation Date, specifically condition
11 (j).
12    A.   I see it.
13    Q.   Can you just take a moment
14 to read that?  I have one question on
15 that.
16    A.   I have read it.
17    Q.   In the portion of that
18 condition dealing with asbestos PD
19 claims, second-to-the last line, you will
20 see the words "if any" appear there, but
21 the same language doesn't appear for
22 asbestos PI claims.
23       Why?
24       MR. FINCH:  Objection,

Page 643

1 foundation.
2       THE WITNESS:  I need to talk
3 to my counsel about this one.
4       (There was a discussion held
5 off the record between the witness
6 and counsel at this time.)
7       MR. FINCH:  The discussion
8 was with respect to whether I need
9 to instruct him not to answer the
10 question.  He is allowed to answer
11 the question as long as doing so
12 doesn't reveal privileged
13 communication.
14       I think you can answer.
15       THE WITNESS:  Barely.
16       The "if any" is in there, as
17 best I can recall, because the
18 Plan proponents -- in contrast of
19 PI, "if any" is under PD.  Because
20 the Plan proponents are quite
21 confident that there is going to
22 be lots of future PI demands and
23 are less confident that there is
24 going to be lots of future PD

Page 644

1 demands, or if there are, they
2 will be valid.
3       MR. BROWN:  Okay.  That's
4 all I have.
5       MR. FINCH:  Could you go
6 back to the question.I asked you
7 to find and read that question and
8 read the answer, and I will see if
9 I have got any redirect.
10       Does anybody else have any
11 questions?
12       (No response.)
13       MR. FINCH:  Hearing none,
14 let me just hear that back.
15       (The reporter read from the
16 record as requested.)
17       MR. FINCH:  No questions.
18       I think that is the end of
19 the deposition.
20       (The deposition concluded at
21 4:19 p.m.)
22
23
24

Page 645

1       CERTIFICATE
2
3
4    I HEREBY CERTIFY that the witness
5 was duly sworn by me and that the
6 deposition is a true record of the
7 testimony given by the witness.
8
9
10
11
12
13 _____
13 Lori A. Zabielski
14 Registered Professional Reporter
15 Dated: May 5, 2009
16
17
18
19
20       (The foregoing certification
21 of this transcript does not apply to any
22 reproduction of the same by any means,
23 unless under the direct control and/or
24 supervision of the certifying reporter.)

Page 646

## INSTRUCTIONS TO WITNESS

1
2
3        Please read your deposition over
4    carefully and make any necessary
5    corrections.  You should state the reason
6    in the appropriate space on the errata
7    sheet for any corrections that are made.
8        After doing so, please sign the
9    errata sheet and date it.
10   You are signing same subject to the
11   changes you have noted on the errata
12   sheet, which will be attached to your
13   deposition.
14       It is imperative that you return
15   the original errata sheet to the deposing
16   attorney within thirty (30) days of
17   receipt of the deposition transcript by
18   you.  If you fail to do so, the
19   deposition transcript may be deemed to be
20   accurate and may be used in court.
21
22
23
4

Page 648

## ACKNOWLEDGEMENT OF DEPONENT

1
2    I, _____, do
3    hereby certify that I have read the
4    foregoing pages,  1-  PGS, and that
5    the same is a correct transcription of
6    the answers given by me to the questions
7    therein propounded, except for the
8    correction or changes in form or
9    substance, if any, noted in the attached
10   Errata Sheet.
11
12
     _____
     WITNESS NAME            DATE
13
14
15
16
17   Subscribed and sown
18   to before me this
19   _____ day of _____, 20_____.
20   My commission expires:
21   _____.
22
23
     _____
     Notary Public
24

Page 647

1        - - - - -
2        E R R A T A
3        - - - - -
4    PAGE  LINE  CHANGE
5    _____ _____ _____
6    _____ _____ _____
7    _____ _____ _____
8    _____ _____ _____
9    _____ _____ _____
10   _____ _____ _____
11   _____ _____ _____
12   _____ _____ _____
13   _____ _____ _____
14   _____ _____ _____
15   _____ _____ _____
16   _____ _____ _____
17   _____ _____ _____
18   _____ _____ _____
19   _____ _____ _____
20   _____ _____ _____
22   _____ _____ _____
23   _____ _____ _____
24   _____ _____ _____

Page 649

1        LAWYER'S NOTES
2    PAGE  LINE
3    _____ _____ _____
4    _____ _____ _____
5    _____ _____ _____
6    _____ _____ _____
7    _____ _____ _____
8    _____ _____ _____
9    _____ _____ _____
10   _____ _____ _____
11   _____ _____ _____
12   _____ _____ _____
13   _____ _____ _____
14   _____ _____ _____
15   _____ _____ _____
16   _____ _____ _____
17   _____ _____ _____
18   _____ _____ _____
19   _____ _____ _____
20   _____ _____ _____
21   _____ _____ _____
22   _____ _____ _____
23   _____ _____ _____
24   _____ _____ _____