# EXHIBIT F
# PART 1

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) Case No. 01-1139 (JKF) |
| W.R. GRACE & CO., et al., | ) (Jointly Administered) |
|  | ) |
| Debtors. | ) |
|  | ) |

### DEBTORS' RESPONSE TO CERTAIN INSURERS' FIRST REQUESTS FOR ADMISSION, (REVISED) FIRST SET OF INTERROGATORIES AND FIRST SET OF REQUESTS FOR DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 26, 33, 34 and 36, applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026, 7033, 7034, 7036 and 9014, the Debtors hereby respond to the Certain Insurers' First Requests for Admission, (Revised) First Set of Interrogatories and First Set of Requests for Documents Directed to the Asbestos PI Future Claimants' Representative (collectively, the "Requests") propounded by Fireman's Fund Insurance Company, Allianz S.p.A., f/k/a Riunione Adriatica di Sicurta, and possibly other related insurance companies, and AXA Belgium, as successor to Royale Belge SA (collectively, the "Discovering Parties"), which were served by the Discovering Parties on January 5, 2009.

### GENERAL OBJECTIONS AND RESERVATIONS OF RIGHTS

1.      The Debtors note that the Requests are based on the Joint Plan of Reorganization, dated December 19, 2008, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, including all attachments, schedules and exhibits thereto. To be clear, these responses are based on the most recent versions of the Plan and the Plan Documents (as defined in the Plan) on file with the Court as of the date of these responses.

2.      By responding to these Requests, the Debtors should not be construed as accepting the definitions that the Discovering Parties have provided. In his responses below, the

Debtors have used what they believe is an appropriate and reasonable understanding of the words that the Requests purport to define. In addition, to the extent not otherwise defined herein or in the Requests, any capitalized terms in these responses shall have the meaning attributed to them in the Plan and the other Plan Documents.

3.      The Debtors further note, in lieu of repeating throughout these responses, that, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or consummation of the Plan shall limit the right, if any, of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

4.      Any and all non-privileged and non-confidential documents produced in response to the Requests will be made available for inspection and copying at a mutually convenient time and place. If the responses indicate that documents are being produced, such statements do not mean, and should not be construed to suggest, that the Debtors possess documents responsive to all of the Requests.

5.      The Debtors object to the Requests on the ground that the Discovering Parties lack standing to object to the confirmation of the Plan because the Plan is insurance neutral, as set forth in Section 7.15 of the Plan. In responding to the Discovering Parties' Requests, and in producing any documents requested by the Discovering Parties, the Debtor does not waive, and

expressly reserves, its objection that the Discovering Parties lack standing to pursue any objection to confirmation of the Plan and all matters related thereto.

6.    The Debtors object generally to the instructions and definitions set forth in the Requests to the extent they seek to impose any obligation beyond that which is required by the Federal Rules of Civil Procedure, as applicable by the Federal Rules of Bankruptcy Procedure, the Local Rules for the United States Bankruptcy Court for the District of Delaware, or any case management or other applicable order entered by the Bankruptcy Court.

7.    The Debtors object to the Requests to the extent they seek to require the Debtors to speculate about the actions of others outside of the direct knowledge of the Debtors and to the extent that they seek to require the Debtors to provide information that will be or is more properly and easily provided by W.R. Grace & Co., *et al.* (the "Debtors"), and/or the Official Committee of Asbestos Personal Injury Claimants (the "ACC"), both of whom were served with requests similar or identical to the Requests.

8.    The Debtors object to any Request seeking information protected by the attorney-client privilege, work product doctrine, common-interest privilege, or any other applicable privilege, doctrine or protection.  The production of any information and/or documentation by the Debtors is without waiver of any claim of privilege or confidentiality.  If privileged or confidential information or documentation is inadvertently produced by the Debtors, its production does not constitute a waiver of any applicable privilege, doctrine or protection.

9.    The Debtors object to the Requests to the extent that they seek information and/or documents that are not relevant to the confirmation of the Plan, and/or are overly broad, unduly burdensome, harassing or not reasonably calculated to lead to the discovery of admissible evidence.

10.     The Debtors object to the Requests to the extent that they seek disclosure of communications in connection with negotiations of a plan of reorganization and/or draft plan documents.  Numerous bankruptcy courts have prohibited discovery into and the disclosure of such information.  See In re Federal-Mogul Global, Inc., Case No. 01-10578 (JKF) (Bankr. D. Del. Feb. 26, 2007) (Hr'g Tr. at 31) (finding that draft plan documents are not properly discoverable); In re Pittsburgh Corning Corp., Case No. 00-22876 (JKF) (Bankr. W.D. Pa. Feb. 19, 2004) (Hr'g Tr. at 64-66) (finding that drafts of plan documents are not discoverable); In re Combustion Eng'g, Case No. 03-10495 (JKF) (Bankr. D. Del. May 2, 2003) (Hr'g Tr. at 301) (observing that "drafts generally are not relevant to anything"); In re Babcock & Wilcox Co., No. 00-10992 (JAB) (Bankr. E.D. La. Aug. 20, 2003) (Hr'g Tr. 84) (denying insurers' motion to compel discovery on draft plan of reorganization documents and confidential plan of reorganization negotiations); In re ACandS, Inc., No. 02-12687 (RJN) (Bankr. D. Del. Sept. 30, 2003) (Hr'g Tr. at 42-45) (denying discovery into plan negotiations on the grounds that such discovery is irrelevant to the issue of good faith in proposing the plan); In re Eagle-Picher Indus., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (finding that creditors were not entitled to drafts of proposed plans of reorganization).

11.     The Debtors object to the Requests to the extent that they seek information that is protected from disclosure by FED. R. EVID. 408.

12.     The Debtors object to the Requests to the extent they seek proprietary information.  To the extent there are responsive proprietary documents in the Debtors' possession, the Debtors will seek the entry of a protective order and such documents will be produced subject to that order.

13.     The Debtors object to the Requests to the extent that they are vague or ambiguous or fail to describe the information sought with sufficient particularity to allow for a meaningful response by the Debtors.

14.     The Debtors object to the Requests to the extent that they call for the Debtors to produce documents or information on behalf of any other party and/or seek discovery of information or documents no longer in existence or not within the Debtors' possession, custody or control.

15.     The Debtors object to the Requests to the extent that they request information or documents that are not responsive, but may be attached to a responsive document.

16.     The Debtors object to the Requests to the extent that the Requests are being improperly used to obtain discovery for use in connection with other disputes and not for purposes of the confirmation of the Plan.

17.     The Debtors object to the Requests insofar as they require, or purport to require, the Debtors to turn over or otherwise surrender to the Discovering Parties, or their counsel, the original or only copy of a document or other tangible item in the Debtors' possession.  The Debtors shall permit the Discovering Parties' counsel to inspect the original or only copy of any such document or other tangible item in the Debtors' possession (to the extent the same is subject to production) and shall make reasonable arrangements to permit the Debtors' counsel to make copies thereof, at the Debtors' expense (as such arrangements may be agreed upon by the parties or directed by the Court).

18.     The Debtors object to the Requests to the extent that they seek discovery of confidential business information, confidential settlement information, and/or information subject to confidentiality agreements with third parties.

19.     The Debtors object to the Requests to the extent that any portion of any of the Requests seeks discovery of information that is equally accessible and available to the Discovering Parties or that is already in their possession, custody or control, or is available as a matter of public record.

20.     The Debtors object to the Requests to the extent they seek material only discoverable upon a showing that the Discovering Parties have substantial need for the materials pursuant to Rule 26(b)(3) and Rule 26(b)(4) of the Federal Rules of Civil Procedure, applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7026.

21.     The Debtors object to the Interrogatories and Requests for Production to the extent they state assumptions of law or fact, which the Debtors neither admits nor denies. The provision of any response or answer to any of the Interrogatories or Requests for Production may not be construed as, and is not an admission to, any of the facts or legal assumptions stated in any such request. Nothing in the Debtors' responses to any Interrogatory or Request for Production should be construed as an admission respecting the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization of any kind contained in the Interrogatories or Requests for Production.

22.     The information provided in the responses set forth below is that currently available to the Debtors, unless privileged or otherwise protected. The responses herein are made without waiver of and with specific preservation of: (a) questions and objections as to competence, relevance, materiality, privilege and admissibility; (b) the right to object to the use of any objections, response or answer, or any documents produced, in whole or in part, on any ground; (c) the right to object on any ground at any time to a demand for further productions, responses or answers involving or relating to the subject matter of the Requests; (d) the right at

any time to revise, correct, add to or clarify any of the objections, responses and answers propounded herein; and (e) the right to move for an appropriate protective order.

23.     The Debtors' decision to provide responses notwithstanding the objectionable nature of any of the Requests should not be construed as a waiver of any of the general or specific objections.

24.     These General Objections and Reservations of Rights are incorporated by reference into the following specific objections and responses, and an objection or response by the Debtors to any Request is made without waiver of, and subject to, these General Objections and Reservation of Rights.

25.     The Debtors reserve the right to amend or supplement these responses.

## REQUESTS FOR ADMISSIONS

1.     Admit that You did not obtain either of the Certain Insurers consent to the assignment of Asbestos Insurance Rights as contemplated by the Asbestos Insurance Rights Transfer Agreement and Section 7.2 of the Plan.

**RESPONSE:**  Admitted that the Certain Insurers did not provide such consent but clarified that received various versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the Debtors

beginning in September 2008 and, therefore, were given the opportunity to comment on and

consent to the Plan and the Asbestos Insurance Transfer Agreement.

2.      Admit that You did not consult with either of the certain insurers regarding the

assignment of the Policies or any of the rights or proceeds thereof.

**RESPONSE:**  Admitted that the Debtors did not initially consult with either of the

Certain Insurers concerning the transfer of rights or proceeds of the Policies but further noted

that the Certain Insurers received various versions of the Plan Documents that were filed in the

above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579,

19580); Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988,

19989); Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No.

20121); Further Amendments to Joint Plan Documents, filed December 19, 2008 (Dkt. No.

20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First

Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos.

20872, 20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the

Debtors beginning in September 2008 and, therefore, were given the opportunity to comment on

such assignment.

3.      Admit that the Policies require that Debtors obtain the Certain Insurers' consent to

assignment for any assignment of the Policies to be valid and enforceable against the Certain

Insurers.

**RESPONSE:**  Objection.  This Request purports to summarize or characterize the

Policies or require the Debtors to summarize or characterize information about the Asbestos

Insurance Policies, which Policies, being in writing, speak for themselves.  Further, even

assuming the Policies contain language similar to that described above, the Debtors object to this

Request insofar as an accurate response would require the application of substantive law from each state and federal jurisdiction to numerous and varied hypothetical fact patterns, which would be both burdensome and oppressive. Moreover, the Debtors object to this Request as inaccurately providing or assuming that the Policies, rather than the proceeds of the Policies, will be transferred pursuant to the Plan and the Asbestos Insurance Transfer Agreement. Subject to those objections and the General Objections and Reservation of Rights set forth above, the Debtors note, by way of further response, that the transfer of the proceeds of the Policies provided for in the Plan and the Asbestos Insurance Transfer Agreement is valid and enforceable under federal law against the Certain Insurers, without regard to consent, and that contrary state law, if any, is preempted. See In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2005); In re Federal-Mogul Global Inc., 385 B.R. 560 (Bankr. D. Del. 2008). Otherwise, denied.

4.    Admit that the contemplated assignment of Asbestos Insurance Rights in the Asbestos Insurance Rights Transfer Agreement and Section 7.2 of the Plan is not valid and enforceable against the Certain Insurers.

**RESPONSE:** Denied. The transfer of Asbestos Insurance Rights in the Asbestos Insurance Transfer Agreement and Section 7.2 of the Plan is valid and enforceable against the Certain Insurers. See In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2005); In re Federal-Mogul Global Inc., 385 B.R. 560 (Bankr. D. Del. 2008).

5.    Admit that the You [sic] did not obtain either of the Certain Insurers' consent to the proposed Trust Distribution Procedures.

**RESPONSE:** Admitted that the Certain Insurers did not provide such consent, but clarified that they received various versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580);

Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989);

Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121);

Further Amendments to Joint Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First

Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended

Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872,

20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the Debtors

beginning in September 2008 and, therefore, were given the opportunity to comment on and

consent to the proposed Trust Distribution Procedures.

      6.    Admit that the You [sic] did not request either of the Certain Insurers' consent to

the proposed Trust Distribution Procedures.

      **RESPONSE:**  Denied.  The Certain Insurers received various versions of the Plan

Documents that were filed in the above-captioned case (see Joint Plan Documents, filed

September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan Documents, filed

November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan Documents,

filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan Documents, filed

December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt.

Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book,

filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877, 20905)) and draft Plan

Documents via electronic mail from the Debtors beginning in September 2008 and, therefore,

were given the opportunity to comment on and consent to the proposed Asbestos PI Trust

Distribution Procedures.

      7.    Admit that neither of the Certain Insurers were asked to participate in the drafting

of the Trust Distribution Procedures.

**RESPONSE:** Admitted that the Debtors did not ask the Certain Insurers to participate in the drafting of the Trust Distribution Procedures but further clarified that the Certain Insurers received various versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the Debtors beginning in September 2008 and, therefore, were given the opportunity to comment on drafts of the proposed Asbestos PI Trust Distribution Procedures.

8.    Admit that the You [sic] did not consult with either of the Certain Insurers concerning the development of the proposed Trust Distribution Procedures.

**RESPONSE:** Admitted that the Debtors did not initially consult with either of the Certain Insurers concerning the development of the proposed Trust Distribution Procedures but further noted that the Certain Insurers received various versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos.

20872, 20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the

Debtors beginning in September 2008 and, therefore, were given the opportunity to comment on

the proposed Asbestos PI Trust Distribution Procedures.

9.       Admit that the Policies require Debtors to obtain the Certain Insurers consent to

the settlement of any Asbestos PI Claim that may be subject to coverage under the Policies.

**RESPONSE:** Objection. This Request purports to summarize or characterize the

Asbestos Insurance Policies or requires the Debtors to summarize or characterize information

about the Policies, which Policies, being in writing, speak for themselves. Further, even

assuming the Policies contain language similar to that described above, the Debtors object to this

Request insofar as an accurate response would require the application of substantive law from

each state and federal jurisdiction to numerous and varied hypothetical fact patterns, which

would be both burdensome and oppressive. Moreover, with respect to some of the Policies,

Asbestos Insurance Settlement Agreements have become operative in lieu of the Policies. To the

extent a further response is required, this Request is denied.

10.       Admit that the Policies require Debtors to consult with the Certain Insurers

concerning the development of the Trust Distribution Procedures before the Certain Insurers

shall be obligated to pay for any Asbestos Personal Injury Claim pursuant to such Trust

Distribution Procedures.

**RESPONSE:** Objection. This Request purports to summarize or characterize the

Policies or requires the Debtors to summarize or characterize information about the Asbestos

Insurance Policies, which Policies, being in writing, speak for themselves. Further, even

assuming the Policies contain language similar to that described above, the Debtors object to this

Request insofar as an accurate response would require the application of substantive law from

each state and federal jurisdiction to numerous and varied hypothetical fact patterns, which would be both burdensome and oppressive. Moreover, with respect to some of the Policies, Asbestos Insurance Settlement Agreements have become operative in lieu of the Policies. To the extent a further response is required, this Request is denied.

11. Admit that the Trust Distribution Procedures are not valid and enforceable against the Certain Insurers.

**RESPONSE:** Denied. A court in coverage litigation may determine that the Asbestos PI TDPs are valid and enforceable against the Certain Insurers but, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan, or any of the Plan Documents (including the TDPs) shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusions of law with respect to confirmation or consummation of the Plan shall limit the right, if any, of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defenses.

12. Admit that the Policies are executory contracts within the meaning of Section 365 of the United States Bankruptcy Code.

**RESPONSE:** Denied. <u>See, e.g.</u>, <u>In re Federal-Mogul Global Inc.</u>, 385 B.R. 560, 576 (Bankr. D. Del. 2008) ("This court finds that, because the premiums are paid, the policy coverage periods have expired, and the remaining obligations of the insureds are ministerial, the Asbestos Insurance Policies are non-executory contracts and therefore, do not fall under § 365 of the Bankruptcy Code.").

13.    Admit that under the Plan, if confirmed, the Asbestos PI Trust will allow Asbestos PI Claims pursuant to section 502 of the Bankruptcy Code.

**RESPONSE:** Denied. Asbestos PI Claims will be reviewed, processed and, if entitled to payment, paid by the Asbestos PI Trust pursuant to the Plan Documents and Section 524(g) of the Bankruptcy Code.

14.    Admit that under the Plan, if confirmed, the Asbestos PI Trust will have exclusive authority to determine the validity and value of Asbestos PI Claims.

**RESPONSE:** Denied. As set forth in Sections 5.10, 5.11, and 7.6 of the TDP, Asbestos PI Claimants may arbitrate and/or litigate their claims in the tort system in certain specified circumstances. Moreover, as set forth in the provisions of Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan, or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to confirmation or consummation of the Plan shall limit the right, if any, of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defenses.

15.    Admit that under the Plan, if confirmed, the Asbestos PI Trust will have the exclusive authority to object to Asbestos PI Claims and litigate to judgment, settle, or withdraw such objections.

**RESPONSE:** Denied that the Asbestos PI Trust will have the exclusive authority to "object" to Asbestos PI Claims. Admitted that under the Plan, if confirmed, and as set forth in the Asbestos PI TDP, the Asbestos PI Trust will have the authority to review, process and, if

entitled to payment, pay Asbestos PI Claims. As further set forth in Sections 5.10, 5.11, and 7.6 of the TDP, however, Asbestos PI Claimants may also arbitrate and/or litigate their claims in the tort system in certain specified circumstances. Moreover, as set forth in the provisions of Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan, or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to confirmation or consummation of the Plan shall limit the right, if any, of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defenses. To the extent a further response is required, denied.

16.    Admit that the Plan, if confirmed, will permit no participation by either of the Certain Insurers in the investigation, defense or settlement of Asbestos PI Claims.

**RESPONSE:** Admitted that the Plan, if confirmed, does not provide for participation by the Certain Insurers in the investigation, defense or settlement of Asbestos PI Claims for purposes of making payment with respect to such claims out of the Asbestos PI Trust but also does not prohibit participation by the Certain Insurers in the investigation, defense or settlement of Asbestos PI Claims for purposes of making payment with respect to such claims out of the Asbestos PI Trust. Further, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan, or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or

any finding of fact and/or conclusion of law with respect to confirmation or consummation of the Plan shall limit the right, if any, of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defenses.  Otherwise, denied.

17.    Admit that under the Plan, if confirmed, the Certain Insurers will not be permitted to litigate any defenses to allowance of any Asbestos PI Claims asserted against the Asbestos PI Trust.

**RESPONSE:**  Objection.  This Request is improperly premised on a belief that claims channeled to the Asbestos PI Trust are "allowed" or "disallowed" under the TDP, which is not the case.  Subject to that objection and the General Objections and Reservation of Rights set forth above, it is further admitted that the Plan, if confirmed, does not provide for the Certain Insurers to litigate any defenses to payment out of the Asbestos PI Trust of any Asbestos PI Claim asserted against the Asbestos PI Trust but also does not prohibit the Certain Insurers from litigating any defenses to payment out of the Asbestos PI Trust of any Asbestos PI Claim asserted against the Asbestos PI Trust in the future if circumstances warrant.  Further, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan, or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to confirmation or consummation of the Plan shall limit the right, if any, of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defenses.  Otherwise, denied.

18.     Admit that Debtors have an affirmative, continuing duty to cooperate with the Certain Insurers in the defense and investigation of Asbestos PI Claims or Demands for which coverage is sought from the Certain Insurers.

**RESPONSE:** Objection. This Request purports to summarize or characterize the Policies or requires the Debtors to summarize or characterize information about the Policies, which Policies, being in writing, speak for themselves. Further, even assuming the Policies contain language similar to that described above, the Debtors object to this Request insofar as an accurate response would require the application of substantive law from each state and federal jurisdiction to numerous and varied hypothetical fact patterns, which would be both burdensome and oppressive. Moreover, with respect to some of the Policies, Asbestos Insurance Settlement Agreements have become operative in lieu of the Policies. To the extent a further response is required, this Request is denied.

19.     Admit that, insofar as coverage is sought from the Certain Insurers for any Asbestos PI Claims or Demands, the Certain Insurers have a right to defend, investigate and settle such Asbestos PI Claims or Demands pursuant to the terms of the Policies.

**RESPONSE:** Objection. This Request purports to summarize or characterize the Asbestos Insurance Policies or requires the Debtors to summarize or characterize information about the Policies, which Policies, being in writing, speak for themselves. In addition, even assuming the Policies contain language similar to that described above, the Debtors object to this Request insofar as an accurate response would require the application of substantive law from each state and federal jurisdiction to numerous and varied hypothetical fact patterns, which would be both burdensome and oppressive. Moreover, with respect to some of the Policies,

Asbestos Insurance Settlement Agreements have become operative in lieu of the Policies. To the extent a further response is required, this Request is denied.

20.    Admit that under the Plan, if confirmed, the Debtors and/or Reorganized Debtors will continue to assert that they have rights under the Policies.

**RESPONSE:** Objection. This Request calls for speculation about future conduct by other parties, which is not the proper subject of a Request for Admission under Federal Rule of Civil Procedure 36, applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7036, or any other applicable rule. Subject to that objection and the General Objections and Reservation of Rights set forth above, the Asbestos Insurance Transfer Agreement (Exhibit 6 to the Plan) speaks for itself regarding the transfer of the Debtors' Asbestos Insurance Rights if the Plan is confirmed, and the Debtors may not commence or pursue any claim against any Asbestos Insurance Entity with respect to any Asbestos Insurance Policy, Asbestos Insurance Settlement Agreement, or Asbestos In-Place Coverage without the prior written consent of the Asbestos PI Trust. Otherwise, denied.

21.    Admit that neither of the Certain Insurers is in breach of any of the Policies.

**RESPONSE:** The information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether the Certain Insurers are in breach of any of the Policies. Thus, denied.

22.    Admit that under the TDP, individuals will be permitted to recover from the Asbestos PI Trust who do not, in fact, suffer from any bodily injuries caused by exposure to asbestos or asbestos-containing products.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meaning of "bodily

injuries" is unclear. In addition, this Request calls for speculation about what claims will be submitted to the Asbestos PI Trust and how the Asbestos PI Trust will treat such claims, which is not the proper subject of a Request for Admission under Federal Rule of Civil Procedure 36, applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7036, or any other applicable rule. To the extent a further response is required, this Request is denied.

23. Admit that it is possible that under the Trust Distribution Procedures, individuals will be permitted to recover from the Asbestos PI Trust who do not, in fact, suffer from any bodily injuries caused by exposure to asbestos or asbestos-containing products.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meaning of "bodily injuries" is unclear. In addition, this Request calls for speculation about what claims will be submitted to the Asbestos PI Trust and how the Asbestos PI Trust will treat such claims, which is not the proper subject of a Request for Admission under Federal Rule of Civil Procedure 36, applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7036, or any other applicable rule. To the extent a further response is required, this Request is denied.

24. Admit that part of the Asbestos PI Trust Assets are being supplied by non-debtors.

**RESPONSE:** Admitted to the extent that part of the Asbestos PI Trust Assets are being supplied by non-debtors directly to the Asbestos PI Trust as part of settlements of claims asserted on behalf of the estate, including settlements with Sealed Air and Fresenius and settlements with insurance companies such as Lloyd's.

25. Admit that the Asbestos PI Trust will own, or by the exercise of rights granted under the Plan would be entitled to own if specified contingencies occur, a majority of the voting shares of each Debtor, the parent corporation of each Debtor, or a subsidiary of each Debtor that

is also a Debtor as required under Section 524(g)(2)(B)(III) of the United States Bankruptcy Code.

**RESPONSE:** The Debtors object to this Request to the extent that the Plan and Plan Documents speak for themselves and are the best information regarding these matters. In particular, the Debtors refer the Discovery Parties to the Asbestos PI Deferred Payment Agreement and the Share Issuance Agreement. Subject to these objections and documents, Admitted.

26.     Admit that under the Plan, if confirmed, the Certain Insurers will be enjoined from asserting any claims, rights and causes of action against the Debtors, Reorganized Debtors and/or the Asbestos PI Trust, including but not limited to claims for contribution, reimbursement or similar claims.

**RESPONSE:** Objection. This Request is vague and ambiguous insofar as the meaning of "enjoined" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, denied. By way of further response, Section 8.2 of the Plan sets out the terms and scope of the Asbestos PI Channeling Injunction.

27.     Admit that under the Plan, if confirmed, the Bankruptcy Court would retain nonexclusive subject matter jurisdiction over any coverage disputes arising under the Policies.

**RESPONSE:** Objection. This Request is vague and ambiguous insofar as the meaning of "coverage disputes" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that under the Plan, if confirmed, the Bankruptcy Court retains nonexclusive jurisdiction to hear and determine matters concerning the Asbestos Insurance Policies, Asbestos In-Place Insurance Coverage and Asbestos Insurance Settlement Agreements. Otherwise, denied.

28.    Admit that under the Plan, if confirmed, the Debtors' and/or Reorganized Debtors' obligation to assist the Certain Insurers in the defense of any Asbestos PI Claim would be discharged.

**RESPONSE:** Objection. This Request is vague and ambiguous insofar as the meaning of "discharged" is unclear. To the extent a further response is required, this Request is denied.

29.    Admit that under the Plan, if confirmed, the Asbestos PI Trust will not have any obligation to assist the Certain Insurers in the defense of any Asbestos PI Claims.

**RESPONSE:** Admitted that the Plan does not impose any obligation on the Asbestos PI Trust to assist the Certain Insurers in the defense of any Asbestos PI Claims.

30.    Admit that the Plan does not provide any mechanism for the inclusion of any Asbestos Insurance Entities which enter into settlement agreements with the Reorganized Debtors after confirmation of the Plan within the scope of the Asbestos PI Channeling Injunction.

**RESPONSE:** Admitted.

31.    Admit that under the Plan the Asbestos PI Trust will be entitled to receive proceeds of Asbestos Insurance Policies.

**RESPONSE:** Admitted, upon the Effective Date of the Plan.

32.    Admit that the Asbestos PI Trust will seek indemnity from the Certain Insurers for Asbestos PI Claims that the Asbestos PI Trust settles or pays without the Certain Insurers' prior consent.

**RESPONSE:** Objection. This Request is vague and ambiguous insofar as the meaning of "indemnity" is unclear. Further, this Request calls for speculation about future conduct by other parties, which is not the proper subject of a Request for Admission under Federal Rule of

Civil Procedure 36, applicable to this proceeding by Federal Rule of Bankruptcy Procedure

7036, or any other applicable rule. To the extent a further response is required, this Request is

denied.

33.    Admit that the Certain Insurers have not participated in any of the negotiations

that led to or resulted in the formulation of the Plan.

**RESPONSE:** Admitted but further clarified that the Certain Insurers received various

versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan

Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan

Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint

Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan

Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed

February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure

Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877,

20905)) and draft Plan Documents via electronic mail from the Debtors beginning in September

2008 and, therefore, were given the opportunity to comment on and participate in the formulation

of the Plan.

34.    Admit that You did not invite either of the Certain Insurers to participate in any of

the negotiations that led to or resulted in the formulation of the Plan.

**RESPONSE:** Admitted but further clarified that the Certain Insurers received various

versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan

Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan

Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint

Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan

Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the Debtors beginning in September 2008 and, therefore, were given the opportunity to comment on and participate in the formulation of the Plan.

35.    Admit that neither of the Certain Insurers has consented to or approved the procedures set forth in the Plan and TDP for paying Asbestos PI Claims.

**RESPONSE:** Admitted, as of the date of this response. The Debtors further note, however, that, as provided for in Section 7.15(e) of the Plan, if issues concerning the procedures set forth in the Plan and TDP for paying Asbestos PI Claims are the basis of an objection before the Bankruptcy Court that is not withdrawn prior to the beginning of the Confirmation Hearing, the Debtors reserve the right to take the position that principles of collateral estoppel and/or res judicata bar a subsequent re-litigation of those issues.

36.    Admit that if the Plan is approved, the Reorganized Debtors will have no interest in how Asbestos PI Claims are administered by the Asbestos PI Trust.

**RESPONSE:** Objection. This Request is vague and ambiguous insofar as the meaning of "interest" is unclear. To the extent a further response is required, this Request is denied.

37.    Admit that the TDPs allow for the payment of Asbestos PI Claims that were diagnosed by a physician who did not take the claimant's exposure and occupational history.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted but further noted that, pursuant to the TDP, before making any payment to

a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

38.    Admit that some of the Asbestos PI Claims are based, at least in part, on exposure and occupational histories taken by plaintiffs' lawyers and/or their employees.

**RESPONSE:**  Objection.  The Discovering Parties lack standing to propound this Request.  Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear.  Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtor or readily obtainable by the Debtor is insufficient to enable them to admit or deny whether some of the Asbestos PI Claims are based, at least in part, on exposure and occupational histories taken by plaintiffs' lawyers and/or their employees.  Therefore, denied.

39.    Admit that some of the Asbestos PI Claims are based, at least in part, on exposure and occupational histories taken by agents of plaintiffs' lawyers.

**RESPONSE:**  Objection.  The Discovering Parties lack standing to propound this Request.  Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear.  Moreover, the meaning of "taken" is unclear and, therefore, is vague and ambiguous.  Specifically, the Request does not specify what sort of conduct the word "taken" is referring to (e.g., does it mean directly interviewing a client or taking notes while an attorney conducts such an interview?).  Subject to those objections and the General Objections and Reservations of Rights set forth above, this Request is admitted in part, only insofar as evidence from the estimation proceedings suggest that in some instances, at one or more plaintiffs' law firms, a paralegal would interview a client about the products that the client was exposed to, and would prepare a work history based on that interview.  In all other respects,

the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the Asbestos PI Claims are based, at least in part, on exposure and occupational histories taken by agents of plaintiffs' lawyers. Accordingly, the remainder of the Request is denied.

40.    Admit that You do not intend for the Asbestos PI Trust to restrict or limit payment of Asbestos PI Claims by claimants screened by N&M, Inc. (a/k/a Netherland & Mason).

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, denied. The TDP provides that before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards. The Debtors intend that the Asbestos PI Trust will only pay claims for which it has reasonable confidence that the medical evidence provided in support of such claims is credible and consistent with recognized medical standards and expects the Asbestos PI Trust to develop appropriate procedures to do so.

41.    Admit that some of the Asbestos PI Claims are based, at least in part, on screenings by N&M, Inc. (a/k/a Netherland & Mason).

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear. Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the

Asbestos PI Claims are based, at least in part, on screenings by N&M, Inc. (a/k/a Netherland & Mason). Therefore, denied.

42.     Admit that the TDP fails to restrict or limit payment of Asbestos PI Claims by claimants screened by RTS Inc. (a/k/a Respiratory Testing Services).

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that the TDP does not restrict or limit payment of Asbestos PI Claims by claimants screened by RTS Inc. (a/k/a Respiratory Testing Services) but further noted that the TDP provides that before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

43.     Admit that some of the Asbestos PI Claims are based, at least in part, on screenings by RTS Inc. (a/k/a Respiratory Testing Services).

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear. Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the Asbestos PI Claims are based, at least in part, on screenings by RTS Inc. (a/k/a Respiratory Testing Services). Therefore, denied.

44.     Admit that the TDP fails to restrict or limit payment of Asbestos PI Claims by claimants screened by Healthscreen, Inc.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that the TDP does not restrict or limit payment of Asbestos PI Claims by claimants screened by Healthscreen, Inc. but further noted that the TDP provides that before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

45.    Admit that some of the Asbestos PI Claims are based, at least in part, on screenings by Healthscreen, Inc.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear. Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the Asbestos PI Claims are based, at least in part, on screenings by Healthscreen, Inc. Therefore, denied.

46.    Admit that the TDP fails to restrict or limit payment of Asbestos PI Claims by claimants screened by Occupational Diagnostics.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that the TDP does not restrict or limit payment of Asbestos PI Claims by claimants screened by Occupational Diagnostics but further noted that the TDP provides that before making any payment to a claimant, the Asbestos PI Trust must have reasonable

confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

47.    Admit that some of the Asbestos PI Claims are based, at least in part, on screenings by Occupational Diagnostics.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear. Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the Asbestos PI Claims are based, at least in part, on screenings by Occupational Diagnostics. Therefore, denied.

48.    Admit that the TDP fails to restrict or limit payment of Asbestos PI Claims by claimants screened by Pulmonary Testing Service.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that the TDP does not restrict or limit payment of Asbestos PI Claims by claimants screened by Pulmonary Testing Service but further noted that the TDP provides that before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

49.    Admit that some of the Asbestos PI Claims are based, at least in part, on screenings by Pulmonary Testing Service.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear. Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the Asbestos PI Claims are based, at least in part, on screenings by Pulmonary Testing Service. Therefore, denied.

50.    Admit that the TDP fails to restrict or limit payment of Asbestos PI Claims by claimants whose X-rays were ordered at the direction of a plaintiff's lawyer.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that the TDP does not restrict or limit payment of Asbestos PI Claims by claimants whose X-rays were ordered at the direction of a plaintiff's lawyer but further noted that the TDP provides that before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

51.    Admit that some of the Asbestos PI Claims are based, at least in part, on X-rays ordered at the direction of a plaintiff's lawyer.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear. Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the

Asbestos PI Claims are based, at least in part, on X-rays ordered at the direction of a plaintiff's lawyer. Therefore, denied.

52.    Admit that the TDP fails to restrict or limit payment of Asbestos PI Claims by claimants whose X-rays were not ordered at the request of a medical professional.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that the TDP does not restrict or limit payment of Asbestos PI Claims by claimants whose X-rays were not ordered at the request of a medical professional but further noted that the TDP provides that before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

53.    Admit that some of the Asbestos PI Claims are based, at least in part, on X-rays that were not ordered at the request of a medical professional.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear. Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the Asbestos PI Claims are based, at least in part, on X-rays that were not ordered at the request of a medical professional. Therefore, denied.

54.    Admit that the TDP allows payment of Asbestos PI Claims that were diagnosed by a physician who did not take the claimant's asbestos-exposure history.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted but further noted that, pursuant to the TDP, before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

55. Admit that the TDP fails to restrict or limit payment of Asbestos PI Claims that were diagnosed by a physician who did not take the claimant's asbestos-exposure history.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that the TDP does not restrict or limit payment of Asbestos PI Claims by claimants who were diagnosed by a physician who did not take the claimant's asbestos-exposure history but further noted that the TDP provides that before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

56. Admit that some of the Asbestos PI Claims are based, at least in part, on asbestos-exposure histories taken by Persons with no medical training.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear. Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the Asbestos PI Claims are based, at least in part, on asbestos-exposure histories taken by Persons with no medical training. Therefore, denied.

57.    Admit that the TDP fails to restrict or limit payment of Asbestos PI Claims by claimants whose chest X-rays were taken in mobile x-ray units.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that the TDP does not restrict or limit payment of Asbestos PI Claims by claimants whose chest X-rays were taken in mobile X-ray units but further noted that the TDP provides that before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

58.    Admit that some of the Asbestos PI Claims are based, at least in part, on chest X-rays taken in mobile x-ray units.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear. Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the Asbestos PI Claims are based, at least in part, on chest X-rays taken in mobile x-ray units. Therefore, denied.

59.    Admit that the TDP fails to restrict or limit payment of Asbestos PI Claims by claimants whose diagnoses were made by physicians who relied on work histories taken by non-medical personnel.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set

forth above, admitted that the TDP does not restrict or limit payment of Asbestos PI Claims by claimants whose diagnoses were made by physicians who relied on work histories taken by non-medical personnel but further noted that the TDP provides that before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

60.    Admit that some of the Asbestos PI Claims are based, at least in part, on diagnoses made by physicians who relied on work histories taken by non-medical personnel.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meanings of "some" and "based, at least in part," are unclear. Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the Asbestos PI Claims are based, at least in part, on diagnoses made by physicians who relied on work histories taken by non-medical personnel. Therefore, denied.

61.    Admit that the TDP fails to restrict or limit payment of Asbestos PI Claims by claimants who were referred to plaintiffs' attorneys by screening companies.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that the TDP does not restrict or limit payment of Asbestos PI Claims by claimants who were referred to plaintiffs' attorneys by screening companies but further noted that the TDP provides that before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.

62.    Admit that some of the Asbestos PI Claims are claims by people who were referred to plaintiffs' attorneys by screening companies.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Further, this Request is vague and ambiguous insofar as the meaning of "based, at least in part," is unclear. Subject to those objections and the General Objections and Reservations of Rights set forth above, the information known to the Debtors or readily obtainable by the Debtors is insufficient to enable them to admit or deny whether some of the Asbestos PI Claims are claims by people who were referred to plaintiffs' attorneys by screening companies. Therefore, denied.

63.    Admit that the asbestos-exposure and medical standards in the TDP were not developed, discussed or negotiated by or with qualified physicians.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, denied. The asbestos-exposure and medical standards in the TDP were developed, discussed or negotiated by or with at least one qualified physician.

64.    Admit that the asbestos-exposure standards in the TDP were not developed, discussed or negotiated by or with industrial hygienists.

**RESPONSE:** Objection. The Discovering Parties lack standing to propound this Request. Subject to that objection and the General Objections and Reservations of Rights set forth above, this Request is admitted only insofar as no industrial hygienist was actively and directly involved in the development of the TDP's exposure criteria, and the discussions and negotiations relating thereto. Nevertheless, by way of further response, the Debtors note that David Austern, the Asbestos PI Future Claimants' Representative, has been general counsel to