# Exhibit 2

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| W.R. GRACE & CO., *et al.*, | : | Case No. 01-1139 (JKF) |
|  | : | Jointly Administered |
| Debtors-in-possession. | : |  |
|  | : |  |

## OBJECTIONS AND RESPONSES OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS TO DISCOVERY REQUESTS PROPOUNDED BY THE CNA COMPANIES

Pursuant to Federal Rules of Civil Procedure 26, 33, 34 and 36, and Federal Rules of Bankruptcy Procedure 3020(b)(1), 7026, 7033, 7034, 7036 and 9014, the Official Committee of Asbestos Personal Injury Claimants ("**ACC**"), by and through its undersigned counsel, hereby responds to the First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents (collectively, the "**Requests**") propounded by Continental Casualty Company ("**Continental Casualty**") and Continental Insurance Company ("**Continental Insurance**"), on their behalf and on behalf of their predecessor companies, affiliates, and subsidiaries, which issued insurance policies to the Debtors (collectively, the "**Discovering Parties**").

### GENERAL OBJECTIONS AND RESERVATIONS OF RIGHTS

1.      For purposes of responding to these Requests, the ACC assumes that the Requests are directed at Continental Casualty's and Continental Insurance's non-settled Asbestos Insurance Policies and are not directed at any Asbestos Insurance Settlement Agreement or Asbestos Insurance Reimbursement Agreement to which Continental Casualty is a party.

2.      The ACC notes that the Requests are based on the First Amended Joint Plan of Reorganization, as amended, filed at Docket No. 19579.  To be clear, these responses are based

on the most recent versions of the Plan and the Plan Documents (as defined in the Plan) on file with the Court as of the date of these responses.

3.    By responding to these Requests, the ACC should not be construed as accepting the definitions that the Discovering Parties have provided.  In its responses below, the ACC has used what it believes is an appropriate and reasonable understanding of the words that the Requests purport to define.  In addition, to the extent not otherwise defined herein or in the Requests, any capitalized terms in these responses shall have the meaning attributed to them in the Plan and the other Plan Documents.

4.    The ACC further notes, in lieu of repeating throughout these responses, that, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or consummation of the Plan shall limit the right, if any, of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

5.    Any and all non-privileged and non-confidential documents produced in response to the Requests will be made available for inspection and copying at a mutually convenient time and place.  If the responses indicate that documents are being produced, such statements do not mean, and should not be construed to suggest, that the ACC possesses documents responsive to all of the Requests.

6.     The ACC objects to the Requests on the ground that the Discovering Parties lack standing to object to the confirmation of the Plan because the Plan is insurance neutral, as set forth in Section 7.15 of the Plan.  In responding to the Discovering Parties' Requests, and in producing any documents requested by the Discovering Parties, the ACC does not waive, and expressly reserves, its objection that the Discovering Parties lack standing to pursue any objection to confirmation of the Plan and all matters related thereto.

7.     The ACC objects generally to the instructions and definitions set forth in the Requests to the extent they seek to impose any obligation beyond that which is required by the Federal Rules of Civil Procedure, as applicable by the Federal Rules of Bankruptcy Procedure, the Local Rules for the United States Bankruptcy Court for the District of Delaware, or any case management or other applicable order entered by the Bankruptcy Court.

8.     The ACC objects to the Requests to the extent they seek to require the ACC to speculate about the actions of others outside of the direct knowledge of the ACC and to the extent that they seek to require the ACC to provide information that will be duplicative of information provided by one or more parties who were served with requests similar or identical to the Requests.

9.     The ACC objects to the Requests to the extent they seek information that is not known by or within the possession or control of the ACC or seek to define the ACC to include the individual members who comprise the ACC and their respective attorneys, or experts retained by the ACC.

10.     The ACC objects to the Requests to the extent they ask the ACC to speak, or make binding representations, on behalf of the Asbestos PI TAC, which has not yet been created or established, or any of the Asbestos PI TAC's proposed members.

11.      The ACC objects to any Request seeking information protected by the attorney-client privilege, work product doctrine, common-interest privilege, or any other applicable privilege, doctrine or protection.  The production of any information and/or documentation by the ACC is without waiver of any claim of privilege or confidentiality.  If privileged or confidential information or documentation is inadvertently produced by the ACC, its production does not constitute a waiver of any applicable privilege, doctrine or protection.

12.      The ACC objects to the Requests to the extent that they seek information and/or documents that are not relevant to the confirmation of the Plan, and/or are overly broad, unduly burdensome, harassing or not reasonably calculated to lead to the discovery of admissible evidence.

13.      The ACC objects to the Requests to the extent that they seek disclosure of communications in connection with negotiations of a plan of reorganization and/or draft plan documents.  Numerous bankruptcy courts have prohibited discovery into and the disclosure of such information.  See In re Federal-Mogul Global, Inc., Case No. 01-10578 (JKF) (Bankr. D. Del. Feb. 26, 2007) (Hr'g Tr. at 31) (finding that draft plan documents are not properly discoverable); In re Pittsburgh Corning Corp., Case No. 00-22876 (JKF) (Bankr. W.D. Pa. Feb. 19, 2004) (Hr'g Tr. at 64-66) (finding that drafts of plan documents are not discoverable); In re Combustion Eng'g, Case No. 03-10495 (JKF) (Bankr. D. Del. May 2, 2003) (Hr'g Tr. at 301) (observing that "drafts generally are not relevant to anything"); In re Babcock & Wilcox Co., No. 00-10992 (JAB) (Bankr. E.D. La. Aug. 20, 2003) (Hr'g Tr. 84) (denying insurers' motion to compel discovery on draft plan of reorganization documents and confidential plan of reorganization negotiations); In re ACandS, Inc., No. 02-12687 (RJN) (Bankr. D. Del. Sept. 30, 2003) (Hr'g Tr. at 42-45) (denying discovery into plan negotiations on the grounds that such

discovery is irrelevant to the issue of good faith in proposing the plan); In re Eagle-Picher Indus., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (finding that creditors were not entitled to drafts of proposed plans of reorganization).

14.    The ACC objects to the Requests to the extent that they seek information that is protected from disclosure by FED. R. EVID. 408.

15.    The ACC objects to the Requests to the extent they seek proprietary information. To the extent there are responsive proprietary documents in the ACC's possession, the ACC will seek the entry of a protective order and such documents will be produced subject to that order.

16.    The ACC objects to the Requests to the extent that they are vague or ambiguous or fail to describe the information sought with sufficient particularity to allow for a meaningful response by the ACC.

17.    The ACC objects to the Requests to the extent that they call for the ACC to produce documents or information on behalf of any other party and/or seek discovery of information or documents no longer in existence or not within the ACC's possession, custody or control.

18.    The ACC objects to the Requests to the extent that they request information or documents that are not responsive, but may be attached to a responsive document.

19.    The ACC objects to the Requests to the extent that the Requests are being improperly used to obtain discovery for use in connection with other disputes, including, but not limited to, future coverage litigation, and not for purposes of the confirmation of the Plan.

20.    The ACC objects to the Requests insofar as they require, or purport to require, the ACC to turn over or otherwise surrender to the Discovering Parties, or their counsel, the original or only copy of a document or other tangible item in the ACC's possession.  The ACC shall

permit the Discovering Parties' counsel to inspect the original or only copy of any such document or other tangible item in the ACC's possession (to the extent the same is subject to production) and shall make reasonable arrangements to permit the ACC's counsel to make copies thereof, at the ACC's expense (as such arrangements may be agreed upon by the parties or directed by the Court).

21.    The ACC objects to the Requests to the extent that they seek discovery of confidential business information, confidential settlement information, and/or information subject to confidentiality agreements with third parties.

22.    The ACC objects to the Requests to the extent that any portion of any of the Requests seeks discovery of information that is equally accessible and available to the Discovering Parties or that is already in their possession, custody or control, or is available as a matter of public record.

23.    The ACC objects to the Requests to the extent they seek material only discoverable upon a showing that the Discovering Parties have substantial need for the materials pursuant to Rule 26(b)(3) and Rule 26(b)(4) of the Federal Rules of Civil Procedure, applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7026.

24.    The ACC objects to the Interrogatories and Requests for Production to the extent they state assumptions of law or fact, which the ACC neither admits nor denies.  The provision of any response or answer to any of the Interrogatories or Requests for Production may not be construed as, and is not an admission to, any of the facts or legal assumptions stated in any such request.  Nothing in the ACC's responses to any Interrogatory or Request for Production should be construed as an admission respecting the admissibility or relevance of any fact or document or

of the truth or accuracy of any characterization of any kind contained in the Interrogatories or Requests for Production.

25.    The information provided in the responses set forth below is that currently available to the ACC, unless privileged or otherwise protected.  The responses herein are made without waiver of and with specific preservation of: (a) questions and objections as to competence, relevance, materiality, privilege and admissibility; (b) the right to object to the use of any objections, response or answer, or any documents produced, in whole or in part, on any ground; (c) the right to object on any ground at any time to a demand for further productions, responses or answers involving or relating to the subject matter of the Requests; (d) the right at any time to revise, correct, add to or clarify any of the objections, responses and answers propounded herein; and (e) the right to move for an appropriate protective order.

26.    The ACC's decision to provide responses notwithstanding the objectionable nature of any of the Requests should not be construed as a waiver of any of the general or specific objections.

27.    These General Objections and Reservations of Rights are incorporated by reference into the following specific objections and responses, and an objection or response by the ACC to any Request is made without waiver of, and subject to, these General Objections and Reservation of Rights.

28.    The ACC reserves the right to amend or supplement these responses.

## **OBJECTIONS AND ANSWERS TO REQUESTS FOR ADMISSIONS**

## **REQUEST FOR ADMISSION NO. 1:**

Admit that the Debtors did not obtain CNA's consent to the transfer of Asbestos Insurance Rights as contemplated by the Plan and the Asbestos Insurance Rights Transfer

Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Admitted but further clarified that counsel for the Discovering Parties received various versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the Debtors and, therefore, the Discovering Parties were given the opportunity to comment on and consent to the transfer of Asbestos Insurance Rights.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the Debtors did not consult with CNA regarding, or seek CNA's consent to, the transfer of the Asbestos Insurance Rights as contemplated by the Plan and the Asbestos Insurance Rights Transfer Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Admitted that the Debtors did not initially consult with the Discovering Parties concerning the transfer of the Asbestos Insurance Rights and denied that the Debtors did not seek the Discovering Parties' consent to the transfer of the Asbestos Insurance Rights. Counsel for the Discovering Parties received various versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579,

19580); Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the Debtors and, therefore, the Discovering Parties were given the opportunity to comment on and consent to the transfer of the Asbestos Insurance Rights.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the Asbestos Insurance Policies issued by CNA to Debtors require that Debtors obtain CNA's consent for any transfer or assignment of the Policies, or any interest in the Policies (including Asbestos Insurance Rights), to be valid and enforceable against CNA.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Objection.  This Request purports to summarize or characterize the Asbestos Insurance Policies or requires the ACC to summarize or characterize information about the Policies, which Policies, being in writing, speak for themselves.  Further, even assuming the Policies contain language similar to that described above, the ACC objects to this Request insofar as an accurate response would require the application of substantive law from each state and federal jurisdiction to numerous and varied hypothetical fact patterns, which would be both burdensome and oppressive.  Moreover, the ACC objects to this Request as assuming that the Policies, rather than the Asbestos Insurance Rights with respect to the Policies, will be assigned pursuant to the Plan and the Asbestos Insurance Transfer Agreement.  Subject to those objections and the General Objections and Reservation of Rights set forth above, the ACC notes that the transfer of the

Asbestos Insurance Rights with respect to the Policies provided for in the Plan and the Asbestos Insurance Transfer Agreement is valid and enforceable under federal law against the Discovering Parties, without regard to consent, and that contrary state law, if any, is preempted.  See In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2005); In re Federal-Mogul Global Inc., 385 B.R. 560 (Bankr. D. Del. 2008).  To the extent a further response is required, denied.

**REQUEST FOR ADMISSION NO. 4:**

Admit that the transfer of Asbestos Insurance Rights as contemplated in the Plan and the Asbestos Insurance Rights Transfer Agreement is not valid and enforceable against CNA.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Denied.  The transfer of Asbestos Insurance Rights pursuant to the Asbestos Insurance Transfer Agreement and Section 7.2 of the Plan is valid and enforceable against the Discovering Parties.  See In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2005); In re Federal-Mogul Global Inc., 385 B.R. 560 (Bankr. D. Del. 2008).

**REQUEST FOR ADMISSION NO. 5:**

Admit that the Debtors did not obtain CNA's consent to the proposed Trust Distribution Procedures.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Admitted that the Discovering Parties did not provide such consent but further clarified that counsel for the Discovering Parties received various versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan Documents, filed December 19, 2008

(Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the Debtors and, therefore, the Discovering Parties were given the opportunity to comment on and consent to the proposed Trust Distribution Procedures.

**REQUEST FOR ADMISSION NO. 6:**

Admit that the Debtors did not confer with CNA regarding, or seek CNA's consent to, the proposed Trust Distribution Procedures.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Admitted that the Debtors did not initially consult with the Discovering Parties concerning the development of the proposed Trust Distribution Procedures and denied that the Debtors did not seek the Discovering Parties' consent to the Trust Distribution Procedures. Counsel for the Discovering Parties received various versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the Debtors and, therefore, the Discovering Parties were given the opportunity to comment on and consent to the Trust Distribution Procedures.

**REQUEST FOR ADMISSION NO. 7:**

Admit that CNA was not asked to participate in the drafting of the Trust Distribution Procedures.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Admitted that the ACC did not ask the Discovering Parties to participate in the drafting of the Trust Distribution Procedures but further clarified that counsel for the Discovering Parties received various versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the Debtors and, therefore, the Discovering Parties were given the opportunity to comment on drafts of the proposed Trust Distribution Procedures.

**REQUEST FOR ADMISSION NO. 8:**

Admit that under the Plan the Asbestos PI Trust will have the exclusive authority to value and resolve Asbestos PI Claims.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Denied.  As set forth in Sections 5.10, 5.11, and 7.6 of the Asbestos PI TDP,  Asbestos PI Claimants may arbitrate and/or litigate their claims in the tort system in certain specified circumstances.  By way of further response, with respect to the Discovering Parties, although the Plan, if confirmed, does not provide for participation by the Discovering Parties in the valuing or

resolution of Asbestos PI Claims for purposes of making payment with respect to such claims out of the Asbestos PI Trust, it also does not prohibit such participation by the Discovering Parties.  Moreover, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing the Discovering Parties' legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or consummation of the Plan shall limit the right, if any, of the Discovering Parties, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

**REQUEST FOR ADMISSION NO. 9:**

Admit that the Plan, if confirmed, will permit no participation by CNA in the investigation, defense, or settlement of Asbestos PI Claims.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Admitted that the Plan, if confirmed, does not provide for participation by the Discovering Parties in the investigation, defense or settlement of Asbestos PI Claims for purposes of making payment with respect to such claims out of the Asbestos PI Trust but also does not prohibit such participation by the Discovering Parties.  Further, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing the Discovering Parties' legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the

confirmation or consummation of the Plan shall limit the right, if any, of the Discovering Parties, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

**REQUEST FOR ADMISSION NO. 10**:

Admit that CNA is not in breach of any provision of any Asbestos Insurance Policy issued by CNA to Debtors.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

The information known to the ACC or readily obtainable by the ACC is insufficient to enable it to admit or deny whether the Discovering Parties are in breach of any of the Policies. Thus, denied.

**REQUEST FOR ADMISSION NO. 11:**

Admit that each member of the Trust Advisory Committee will be representing and/or expects to represent one or more Asbestos PI Claimants in connection with submission of their Asbestos PI Claims for resolution by the Asbestos PI Trust.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Objection.   This Request is vague and ambiguous insofar as the meaning of "representing" or "represent" is unclear.   In addition, the ACC objects to this Request to the extent it calls for speculation about future conduct, which is not the proper subject of discovery here.   Furthermore, the ACC objects to this Request because it purports to call upon the ACC to speak, or make representations, on behalf of the individuals who have been designated to serve on the Asbestos PI TAC.   The ACC also objects insofar as this Request purports to call upon the ACC to canvass the proposed members of the Asbestos PI TAC as to their future plans.   Subject to those objections and the General Objections and Reservations of Rights set forth above, admitted that it is probable that each member of the Asbestos PI TAC will be representing one or

more Asbestos PI Claimants in connection with submission of their Asbestos PI Claims for resolution by the Asbestos PI Trust.

## REQUEST FOR ADMISSION NO. 12:

Admit that each member of the Trust Advisory Committee will receive, and/or expects to receive, payments from one or more Asbestos PI Claimants due to his/her representation of the Asbestos PI Claimant in connection with submission of Asbestos PI Claims to the Asbestos PI Trust.

## RESPONSE TO REQUEST FOR ADMISSION NO. 12:

Objection.   This Request is vague and ambiguous insofar as the meaning of "representation" is unclear.  In addition, the ACC objects to this Request to the extent it calls for speculation about future conduct, which is not the proper subject of discovery here.  Moreover, the ACC objects to this Request because it purports to call upon the ACC to speak, or make representations, on behalf of the individuals who have been designated to serve on the Asbestos PI TAC.  The ACC also objects insofar as this Request purports to call upon the ACC to canvass the proposed members of the Asbestos PI TAC as to their future plans and the compensation arrangements they or their law firms have entered into with their clients.  Subject to those objections and the General Objections and Reservations of Rights set forth above, admitted that it is likely that each proposed member of the Asbestos PI TAC, or his respective law firm, will receive, or plans to receive, compensation in exchange for representing Asbestos PI Claimants.

## OBJECTIONS AND ANSWERS TO INTERROGATORIES

## INTERROGATORY NO. 1:

Explain the meaning of the phrase "any defense that the Plan or any of the Plan Documents do not comply with the Bankruptcy Code" in Section 1.1(15)(i) of the Plan

(definition of "Asbestos Insurer Coverage Defenses"), including in Your explanation a description of each defense that would be precluded in any Asbestos Insurance Action or other coverage litigation were the Plan to be confirmed.

**RESPONSE TO INTERROGATORY NO. 1:**

The ACC objects to this Interrogatory as vague and ambiguous insofar as it asks the ACC to "explain the meaning" of a phrase that is already clear.  The ACC further objects to this Interrogatory to the extent it calls for speculation about future conduct, namely what defenses may be raised by others, which is not the proper subject of discovery here.  The ACC further notes that the Plan is a publicly available document and, being in writing, speaks for itself.

**INTERROGATORY NO. 2:**

Do You contend that Non-Settled Asbestos Insurance Entities will be responsible for paying all or part of any Asbestos PI Claim(s) resolved by the Asbestos PI Trust pursuant to the TDP or for indemnifying the Asbestos PI Trust for any payment it makes on account of Asbestos PI Claim(s)?

If Your answer is anything other than an unqualified "no," please explain which Asbestos PI Claims or portions thereof You contend Non-Settled Asbestos Insurance Entities will be responsible for, how those claims will be determined and based on what principles, and which court or tribunal will be responsible for making these determinations, and identify all facts, communications, witnesses and Documents that support your contention.

**RESPONSE TO INTERROGATORY NO. 2:**

The ACC objects to this Interrogatory to the extent that the term "Non-Settled Asbestos Insurance Entities" is not defined in the Plan and the definition of "Non-Settled Asbestos Insurance Entities" provided by the Discovering Parties is unclear and imprecise.  For example,

as defined by the Discovering Parties, the term "Non-Settled Asbestos Insurance Entities" includes insurers that are parties to Asbestos Insurance Reimbursement Agreements. The ACC further objects to this Interrogatory to the extent it calls for speculation about future conduct, which is not the proper subject of discovery here. Subject to those objections and the General Objections and Reservations of Rights set forth above, Asbestos Insurance Rights are being transferred to the Asbestos PI Trust pursuant to the Asbestos Insurance Transfer Agreement. The ACC would expect the Asbestos PI Trustees to pursue claims and to determine whether and in what manner to seek recoveries, as appropriate.

By way of further response, with respect to the Discovering Parties, the ACC further notes that, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing the Discovering Parties' legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or consummation of the Plan shall limit the right, if any, of the Discovering Parties, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

**<u>INTERROGATORY NO. 3</u>:**

Do You contend that TDP Disease Levels, Scheduled Values and/or Medical/Exposure Criteria will be admissible, in Asbestos Insurance Actions or other actions brought against the Non-Settled Asbestos Insurance Entities, as evidence of the actual value or insured value of any Asbestos PI Claim(s)?

If Your answer is anything other than an unqualified "no," please explain how and as to

what issues You contend the TDP Disease Levels, Scheduled Values and/or Medical/Exposure Criteria will be admissible in such actions, and identify all facts, documents, communications and witnesses supporting Your contentions.

**RESPONSE TO INTERROGATORY NO. 3:**

The ACC objects to this Interrogatory to the extent that the term "Non-Settled Asbestos Insurance Entities" is not defined in the Plan and the definition of "Non-Settled Asbestos Insurance Entities" provided by the Discovering Parties is unclear and imprecise. For example, as defined by the Discovering Parties, the term "Non-Settled Asbestos Insurance Entities" includes insurers that are parties to Asbestos Insurance Reimbursement Agreements. The ACC further objects to this Interrogatory to the extent it calls for speculation about future conduct, which is not the proper subject of discovery here.

Subject to those objections and the General Objections and Reservations of Rights set forth above, with respect to the Discovering Parties, the ACC states that a court in coverage litigation may determine that TDP Disease Levels, Scheduled Values and/or Medical/Exposure Criteria are admissible in Asbestos Insurance Actions or other actions brought against the Non-Settled Asbestos Insurance Entities as evidence of the actual value or insured value of any Asbestos PI Claims but, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing the Discovering Parties' legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or consummation of the

Plan shall limit the right, if any, of the Discovering Parties, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

## INTERROGATORY NO. 4:

Do You contend that the value of any Asbestos PI Claim(s) as resolved by the Asbestos PI Trust pursuant to the TDP will be admissible, in Asbestos Insurance Actions or other actions brought against Non-Settled Asbestos Insurance Entities, as evidence of the actual value or the insured value of any Asbestos PI Claim(s)?

If Your answer is anything other than an unqualified "no," please explain how and as to what issues You contend such value(s) will be admissible in such actions, and identify all facts, documents, communications and witnesses supporting Your contentions.

## RESPONSE TO INTERROGATORY NO. 4:

The ACC objects to this Interrogatory to the extent that the term "Non-Settled Asbestos Insurance Entities" is not defined in the Plan and the definition of "Non-Settled Asbestos Insurance Entities" provided by the Discovering Parties is unclear and imprecise.  For example, as defined by the Discovering Parties, the term "Non-Settled Asbestos Insurance Entities" includes insurers that are parties to Asbestos Insurance Reimbursement Agreements.  The ACC further objects to this Interrogatory to the extent it calls for speculation about future conduct, which is not the proper subject of discovery here.

Subject to those objections and the General Objections and Reservations of Rights set forth above, with respect to the Discovering Parties, the ACC states that a court in coverage litigation may determine that the value of Asbestos PI Claims, as resolved by the Asbestos PI Trust pursuant to the Asbestos PI TDP, will be admissible in Asbestos Insurance Actions or other actions brought against Non-Settled Asbestos Insurance Entities as evidence of the actual value

or the insured value of any Asbestos PI Claim but, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing the Discovering Parties' legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or consummation of the Plan shall limit the right, if any, of the Discovering Parties, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

**INTERROGATORY NO. 5:**

Do You contend that:

(a)     The Plan, if confirmed, will act as a settlement or judgment that will immediately trigger a payment obligation under the Asbestos Insurance Policies issued by Non-Settled Asbestos Insurance Entities; or

(b)     The Non-Settled Asbestos Insurance Entities' indemnity obligations for Asbestos PI Claim will be triggered due to the establishment of the Asbestos PI Trust and transfer of assets to the Trust; or

(c)     The value of the assets contributed to the Asbestos PI Trust establishes, or is admissible in any action against Non-Settled Asbestos Insurance Entities to establish, the amount of an Asbestos Insured Entity's liability under the Asbestos Insurance Policies; or

(d)     The Non-Settled Asbestos Insurance Entities' indemnity obligations for any Asbestos PI Claim will accrue or be triggered prior to the payment of that Asbestos PI Claim by the Asbestos PI Trust?

If Your answer to any of these questions is anything other than an unqualified "no,"

please explain how, and the extent to which, You believe that the Plan will trigger or accelerate any payment or other obligations for Non-Settled Asbestos Insurance Entities, and identify all facts, documents, communications and witnesses supporting Your contentions.

**RESPONSE TO INTERROGATORY NO. 5:**

The ACC objects to this Interrogatory to the extent that the term "Non-Settled Asbestos Insurance Entities" is not defined in the Plan and the definition of "Non-Settled Asbestos Insurance Entities" provided by the Discovering Parties is unclear and imprecise.  For example, as defined by the Discovering Parties, the term "Non-Settled Asbestos Insurance Entities" includes insurers that are parties to Asbestos Insurance Reimbursement Agreements.  The ACC further objects to this Interrogatory to the extent it calls for speculation about future conduct, namely the position the Asbestos PI Trustees may take in future coverage litigation, which is not the proper subject of discovery here.  Subject to those objections and the General Objections and Reservations of Rights set forth above, the ACC does not so contend.

By way of further response, with respect to the Discovering Parties, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or consummation of the Plan shall limit the right, if any, of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

**INTERROGATORY NO. 6:**

Do You contend that the Debtors (i) attempted to obtain and/or (ii) obtained the consent of CNA to the Plan or the proposed TDP?

If Your answer is anything other than an unqualified "no," please explain how and when the Debtors attempted to obtain or obtained the consent of CNA and identify all facts, documents, communications and witnesses supporting Your contentions.

**RESPONSE TO INTERROGATORY NO. 6:**

The ACC objects to this Interrogatory insofar as the information sought in this Interrogatory will be and/or is more properly and easily provided by the Debtors, who were served with an interrogatory identical to this Interrogatory.  Subject to that objection and the General Objections and Reservation of Rights set forth above, the Debtors attempted to obtain the consent of the Discovering Parties to the Plan and the proposed Asbestos PI TDP but have not yet been able to do so.  Specifically, counsel for the Discovering Parties received various versions of the Plan Documents that were filed in the above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877, 20905)) and draft Plan Documents via electronic mail from the Debtors and, therefore, the Discovering Parties were given the opportunity to comment on and consent to the Plan and Asbestos PI TDP.

**INTERROGATORY NO. 7:**

State the criteria that You used in order to identify potential candidates for Asbestos PI Trustees and to select the Asbestos PI Trustees identified in the Plan, and identify all facts, documents, communications and witnesses supporting Your responses.

**RESPONSE TO INTERROGATORY NO. 7:**

The ACC objects to this Interrogatory to the extent it improperly seeks irrelevant information, is overly broad and unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence.  In addition, the ACC objects to this Interrogatory to the extent it seeks discovery of information protected by the attorney client privilege, the work product doctrine and/or the extension of those privileges by the joint defense and/or common interest doctrine.  Moreover, the ACC objects to this Interrogatory as seeking disclosure of documents in connection with negotiations of the Plan Documents, which are not properly discoverable.  See In re Federal-Mogul Global, Inc., Case No. 01-10578 (JKF) (Bankr. D. Del. Feb. 26, 2007) (Hr'g Tr. at 31); In re Pittsburgh Corning Corp., Case No. 00-22876 (JKF) (Bankr. W.D. Pa. Feb. 19, 2004) (Hr'g Tr. at 64-66); In re Combustion Eng'g, Case No. 03-10495 (JKF) (Bankr. D. Del. May 2, 2003) (Hr'g Tr. at 301); In re Babcock & Wilcox Co., No. 00-10992 (JAB) (Bankr. E.D. La. Aug. 20, 2003) (Hr'g Tr. 84); In re ACandS, Inc., No. 02-12687 (RJN) (Bankr. D. Del. Sept. 30, 2003) (Hr'g Tr. at 42-45); In re Eagle-Picher Indus., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994).

Subject to these objections and the General Objections and Reservations of Rights set forth above, the ACC refers the Discovering Parties to the Asbestos PI Trust Agreement, in which the Asbestos PI Trustees are identified.  By way of further response, the ACC states that it is knowledgeable of the qualifications and experience of the proposed Asbestos PI Trustees, and

such knowledge informed the ACC's decision to agree to their appointment as Asbestos PI Trustees.

**INTERROGATORY NO. 8:**

With respect to the members of the TAC for the Asbestos PI Trust:

(a)    State the criteria which You used in order to identify potential candidates and to select the members of the TAC identified in the Plan;

(b)    State, as to each member of the TAC, whether he/she represents and/or plans to represent one or more Asbestos PI Claimants in seeking payments from the Trust, and the number of such Asbestos PI Claimants he/she represents or plans to represent;

(c)    State, as to each member of the TAC, whether he/she will receive or expects to receive payment, either on a contingency fee basis or otherwise, for assisting any Asbestos PI Claimants in having their claims resolved by the Trust, and the amount or nature of any such payments that will be received or are expected to be received; and

(d)    Identify all facts, documents, communications and witnesses supporting Your responses.

**RESPONSE TO INTERROGATORY NO. 8:**

(a)    The ACC objects to this Interrogatory to the extent it improperly seeks irrelevant information, is overly broad and unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence.  In addition, the ACC objects to this Interrogatory to the extent it seeks discovery of information protected by the attorney client privilege, the work product doctrine and/or the extension of those privileges by the joint defense and/or common interest doctrine.  Moreover, the ACC objects to this Interrogatory as seeking disclosure of documents in connection with negotiations of the Plan Documents, which are not properly

discoverable.  See In re Federal-Mogul Global, Inc., Case No. 01-10578 (JKF) (Bankr. D. Del. Feb. 26, 2007) (Hr'g Tr. at 31); In re Pittsburgh Corning Corp., Case No. 00-22876 (JKF) (Bankr. W.D. Pa. Feb. 19, 2004) (Hr'g Tr. at 64-66); In re Combustion Eng'g, Case No. 03-10495 (JKF) (Bankr. D. Del. May 2, 2003) (Hr'g Tr. at 301); In re Babcock & Wilcox Co., No. 00-10992 (JAB) (Bankr. E.D. La. Aug. 20, 2003) (Hr'g Tr. 84); In re ACandS, Inc., No. 02-12687 (RJN) (Bankr. D. Del. Sept. 30, 2003) (Hr'g Tr. at 42-45); In re Eagle-Picher Indus., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994).  Subject to these objections and the General Objections and Reservations of Rights set forth above,  the ACC notes that the proposed Asbestos PI TAC members were counsel to members of the ACC and were known to be such by the United States Trustee when such members were named to the ACC.  The ACC further notes that the proposed Asbestos PI TAC members' qualifications, experience, and involvement with other 524(g) trusts informed the ACC's decision to agree to their selection as Asbestos PI TAC members.  By way of further response, the ACC refers the Discovering Parties to the Asbestos PI Trust Agreement, in which the proposed members of the Asbestos PI TAC are identified.

(b)      See response to subparagraph (a) above.  This part of the Interrogatory is vague and ambiguous insofar as the meaning of "representing" or "represent" is unclear.  In addition, the ACC objects to this Interrogatory to the extent it calls for speculation about future conduct, which is not the proper subject of discovery here.   Furthermore, this Interrogatory is objectionable because it purports to call upon the ACC to speak, or make representations, on behalf of the proposed members of the Asbestos PI TAC.  Subject to all the foregoing objections, including those objections stated in subparagraph (a) above, it is probable that each member of the Asbestos PI TAC will be representing one or more Asbestos PI Claimants in connection with submission of their Asbestos PI Claims for resolution by the Asbestos PI Trust.

(c)      See responses to subparagraphs (a) and (b) above.  The ACC further objects to this Interrogatory to the extent it calls for speculation about future conduct, which is not the proper subject of discovery here.  Moreover, the ACC objects to this Interrogatory because it purports to call upon the ACC to speak, or make representations, on behalf of the individuals who have been designated to serve on the Asbestos PI TAC.  The ACC also objects insofar as this Interrogatory purports to call upon the ACC to canvass the proposed members of the Asbestos PI TAC as to their future plans and the compensation arrangements they or their law firms have entered into with their clients.  Subject to all the foregoing objections, including those stated in subparagraphs (a) and (b) above, the ACC believes it is likely that each proposed member of the Asbestos PI TAC, or his respective law firm, will represent, or plans to represent, one or more Asbestos PI Claimants, and it is likely that each proposed member of the Asbestos PI TAC, or his respective law firm, will receive, or plans to receive, compensation in exchange for such representation.  By way of further response, the ACC refers the Discovering Parties to the Asbestos PI Trust Agreement, which, being in writing, speaks for itself.

(d)      See responses to subparagraphs (a)-(c) above.  The ACC further objects to this Interrogatory to the extent it seeks discovery of documents protected by the attorney-client privilege, the work product doctrine and/or the extensions of those privileges by the joint defense and/or common interest doctrines.  In addition, the ACC objects to this Interrogatory to the extent that it calls upon the ACC to disclose facts and witnesses that the ACC may rely upon in connection with confirmation of the Plan, which disclosure by the ACC is not yet due pursuant to the Second Amended Case Management Order Related to the First Amended Joint Plan of Reorganization, entered January 29, 2009 (Dkt. No. 20622).  Subject to those objections, the objections set forth in subparagraphs (a)-(c) above and the objections and the General Objections

and Reservations of Rights set forth above, the ACC refers the Discovering Parties to the Asbestos PI Trust Agreement, which, being in writing, speaks for itself.

**INTERROGATORY NO. 9:**

Do You contend that pursuant to the Plan, the Debtors, upon transfer of the Asbestos Insurance Rights under the Asbestos Insurance Policies to the Asbestos PI Trust, will be relieved of any duties and obligations under the Asbestos Insurance Policies, including, among others, the duty to cooperate with the Asbestos Insurance Entity in the defense of claims, the duty to provide notice of claims, occurrences and/or accidents, the duty to not settle claims without the consent of the Asbestos Insurance Entity or to not make voluntary payments, the duty to meet any deductible or other self-insured or retention amounts under the Asbestos Insurance Policies, and the duty to pay retrospective premiums where called for by an Asbestos Insurance Policy?

If Your answer is other than an unqualified "no," please describe what, if any, duties and obligations under the policies will be relieved and extinguished and identify all facts, documents, communications and witnesses supporting Your contentions.

**RESPONSE TO INTERROGATORY NO. 9:**

The ACC objects to this Interrogatory to the extent it purports to summarize or characterize the Asbestos Insurance Policies or requires the ACC to summarize or characterize information about the Asbestos Insurance Policies, which Asbestos Insurance Policies, being in writing, speak for themselves.  Further, even assuming the Asbestos Insurance Policies contain language similar to that described above, the ACC objects to this Interrogatory insofar as an accurate response would require the application of substantive law from each state and federal jurisdiction to numerous and varied hypothetical fact patterns, which would be both burdensome and oppressive.  Moreover, with respect to some of the Asbestos Insurance Policies, Asbestos

Insurance Settlement Agreements or Asbestos Insurance Reimbursement Agreements have become operative in lieu of the Asbestos Insurance Policies.  As to those agreements, this Interrogatory is inapplicable by its terms.

Subject to those objections and the General Objections and Reservations of Rights set forth above, with respect to non-settled Asbestos Insurance Policies, as set forth in the Asbestos Insurance Transfer Agreement, under the Plan, if confirmed, Asbestos Insurance Rights are being transferred to the Asbestos PI Trust but, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or consummation of the Plan shall limit the right, if any, of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

**<u>INTERROGATORY NO. 10:</u>**

Do You contend that under the Plan, the duties and obligations of the Debtors under the Asbestos Insurance Policies will be transferred to the Asbestos PI Trust, including the duties and obligations to cooperate with the Asbestos Insurance Entity in the defense of claims, the duties to give notice of accidents, occurrences, and claims, the duty to not settle claims without the consent of the Asbestos Insurance Entity or to not make voluntary payments, the duty to satisfy any deductible amounts or other self insured or retention amounts specified in any Asbestos Insurance Policy, and the duty to pay retrospective premiums where called for by an Asbestos Insurance Policy?

Please identify all facts, documents, communications and witnesses supporting Your contentions.

**RESPONSE TO INTERROGATORY NO. 10:**

The ACC objects to this Interrogatory to the extent it purports to summarize or characterize the Asbestos Insurance Policies or requires the ACC to summarize or characterize information about the Asbestos Insurance Policies, which Asbestos Insurance Policies, being in writing, speak for themselves. Further, even assuming the Asbestos Insurance Policies contain language similar to that described above, the ACC objects to this Interrogatory insofar as an accurate response would require the application of substantive law from each state and federal jurisdiction to numerous and varied hypothetical fact patterns, which would be both burdensome and oppressive. Moreover, with respect to some of the Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements or Asbestos Insurance Reimbursement Agreements have become operative in lieu of the Asbestos Insurance Policies. As to those agreements, this Interrogatory is inapplicable by its terms.

Subject to those objections and the General Objections and Reservations of Rights set forth above, with respect to non-settled Asbestos Insurance Policies, as set forth in the Asbestos Insurance Transfer Agreement, under the Plan, if confirmed, Asbestos Insurance Rights are being transferred to the Asbestos PI Trust but, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or

consummation of the Plan shall limit the right, if any, of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

**INTERROGATORY NO. 11:**

Describe the role, if any, that You understand that the Non-Settled Asbestos Insurance Entities will have in the evaluation, defense, allowance, or settlement of Asbestos PI Claims channeled to or submitted to the Asbestos PI Trust, if the Plan is confirmed.

**RESPONSE TO INTERROGATORY NO. 11:**

The ACC objects to this Interrogatory to the extent that the term "Non-Settled Asbestos Insurance Entities" is not defined in the Plan and the definition of "Non-Settled Asbestos Insurance Entities" provided by the Discovering Parties is unclear and imprecise. For example, as defined by the Discovering Parties, the term "Non-Settled Asbestos Insurance Entities" includes insurers that are parties to Asbestos Insurance Reimbursement Agreements.

Subject to that objection and the General Objections and Reservations of Rights set forth above, with respect to the Discovering Parties, the Plan, if confirmed, does not provide for participation by the Discovering Parties in the investigation, defense or settlement of Asbestos PI Claims for purposes of making payment with respect to such claims out of the Asbestos PI Trust but also does not prohibit such participation by the Discovering Parties. Further, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or consummation of the Plan shall limit the right, if any, of

Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

**<u>INTERROGATORY NO. 12</u>:**

Do You contend that any of the Plan, Plan Documents, Confirmation Order, or any findings or conclusions entered with respect to Confirmation; or the Bankruptcy Court's or District Court's approval of the Plan or the Plan Documents; or any estimation or valuation of Asbestos PI Claims either individually or in the aggregate; or the value of the assets transferred to the Asbestos PI Trust may be used as evidence in any Asbestos Insurance Action or other action against a Non-Settled Asbestos Insurance Entity to prove:

(i)    that said Asbestos Insurance Entity is liable for, or otherwise obligated to pay with respect to, any Asbestos PI Claim(s) or Demand(s); or

(ii)    that the procedures established by the Plan, including the Trust Distribution Procedure(s), for evaluating and paying Asbestos PI Claims and Demands (including the medical, causation or exposure criteria and disease values) are reasonable or appropriate or are consistent with any procedures that were used to evaluate or settle Asbestos PI Claims against the Debtors before the Petition Date; or

(iii)    that the resolution of, or the value assigned to, any individual Asbestos PI Claim pursuant to the Trust Distribution Procedures was reasonable and/or otherwise appropriate; or

(iv)    that any of the Debtors or the Asbestos PI Trust has suffered an insured loss with respect to any Asbestos PI Claim or Demand?

If Your answer is anything other than an unqualified "no," please explain how, and the extent to which, You contend that any of the above matters may be used as evidence to prove

any of (i) through (iv), and identify all facts, documents, communications, and witnesses supporting Your contentions.

**RESPONSE TO INTERROGATORY NO. 12:**

The ACC objects to this Interrogatory to the extent that the term "Non-Settled Asbestos Insurance Entities" is not defined in the Plan and the definition of "Non-Settled Asbestos Insurance Entities" provided by the Discovering Parties is unclear and imprecise. For example, as defined by the Discovering Parties, the term "Non-Settled Asbestos Insurance Entities" includes insurers that are parties to Asbestos Insurance Reimbursement Agreements. The ACC further objects to this Interrogatory to the extent it calls for speculation about future conduct, namely the position the Asbestos PI Trustees may take in future coverage litigation, which is not the proper subject of discovery here. In addition, the ACC objects to this Interrogatory to the extent that it calls upon the ACC to disclose facts and witnesses that the ACC may rely upon in connection with confirmation of the Plan, which disclosure by the ACC is not yet due pursuant to the Second Amended Case Management Order Related to the First Amended Joint Plan of Reorganization, entered January 29, 2009 (Dkt. No. 20622).

Subject to those objections and the General Objections and Reservations of Rights set forth above, with respect to the Discovering Parties, the ACC contends that, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or consummation of the Plan shall limit the right, if any, of and

Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

**INTERROGATORY NO. 13:**

Identify all witnesses, including but not limited to experts, that You rely upon or will rely upon in opposition to the Disclosure Statement Objections and Plan Objections that have been and will be filed by CNA.

**RESPONSE TO INTERROGATORY NO. 13:**

The ACC objects to this Interrogatory to the extent that it calls upon the ACC to disclose all witnesses that the ACC  relied upon or will rely upon in connection with confirmation of the Plan, which disclosure by the ACC is not yet due pursuant to the Second Amended Case Management Order Related to the First Amended Joint Plan of Reorganization, entered January 29, 2009 (Dkt. No. 20622).

**OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS**

**DOCUMENT REQUEST NO. 1:**

All Documents identified in, referenced in, or relied upon in the preparation of, Your responses to CNA's First Set of Interrogatories and CNA's First Set of Requests for Admissions directed to You.

**RESPONSE TO DOCUMENT REQUEST NO. 1:**

Subject to the General Objections and Reservation of Rights set forth above, the ACC refers the Discovering Parties to the Plan and the Plan Documents.

**DOCUMENT REQUEST NO. 2:**

All Documents requested to be identified in CNA's First Set of Interrogatories directed to You.

**RESPONSE TO DOCUMENT REQUEST NO. 2:**

<u>See</u> response to Document Request No. 1 above.

**DOCUMENT REQUEST NO. 3:**

All Documents that are or will be referenced in, identified in, or relied upon in connection with, or that support, Your responses to the Preliminary Objections to the Plan filed by CNA on or about January 5, 2009, or CNA's Final Plan Objections.

**RESPONSE TO DOCUMENT REQUEST NO. 3:**

The ACC objects to this Request insofar as it requires the ACC to identify documents that will be referenced in, identified in, or relied upon in connection with the ACC's trial brief, which, pursuant to the Second Amended Case Management Order Relating to the First Amended Joint Plan of Reorganization, entered on January 29, 2009, is not yet due.

**DOCUMENT REQUEST NO. 4:**

All Documents concerning or relating to the identification, selection and role of (i) the Asbestos PI Trustees, and (ii) each TAC member.

**RESPONSE TO DOCUMENT REQUEST NO. 4:**

The ACC objects to this Request to the extent it seeks discovery of information protected by the attorney client privilege, the work product doctrine and/or the extension of those privileges by the joint defense and/or common interest doctrine.  In addition, the ACC objects to this Request as seeking disclosure of documents in connection with negotiations of the Plan Documents, which are not properly discoverable.  <u>See</u> <u>In re Federal-Mogul Global, Inc.</u>, Case No. 01-10578 (JKF) (Bankr. D. Del. Feb. 26, 2007) (Hr'g Tr. at 31); <u>In re Pittsburgh Corning Corp.</u>, Case No. 00-22876 (JKF) (Bankr. W.D. Pa. Feb. 19, 2004) (Hr'g Tr. at 64-66); <u>In re Combustion Eng'g</u>, Case No. 03-10495 (JKF) (Bankr. D. Del. May 2, 2003) (Hr'g Tr. at 301); <u>In</u>

re Babcock & Wilcox Co., No. 00-10992 (JAB) (Bankr. E.D. La. Aug. 20, 2003) (Hr'g Tr. 84);

In re ACandS, Inc., No. 02-12687 (RJN) (Bankr. D. Del. Sept. 30, 2003) (Hr'g Tr. at 42-45); In

re Eagle-Picher Indus., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994).  Subject to those objections

and the General Objections and Reservations of Rights set forth above, the ACC refers the

Discovering Parties to the proposed Plan Documents that were filed in the above-captioned case

(see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to

Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments

to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to

Joint Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan,

filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure

Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877,

20905)) and to the various draft Plan Documents that the Discovering Parties received via

electronic mail from the Debtors.

**DOCUMENT REQUEST NO. 5:**

 All Documents relating to potential insurance recoveries by You, the Asbestos PI Trust or

the Asbestos PI Trustees from the Asbestos Insurance Entities under or pursuant to the Plan,

including without limitation:

 (i)   All Documents reflecting Communications between or among any persons

regarding such potential insurance recoveries;

 (ii)   All Documents regarding the evaluations of whether or how the Plan may affect

such recoveries or the Asbestos Insurance Entities or the Asbestos Insurance Policies;

 (iii)   All Documents relating to treatment, transfer or assignment of rights under said

policies to the Asbestos PI Trust; and

(iv)    All Documents reflecting any settlements, agreements, contracts, deals, or understandings with current or future Asbestos PI Claimants or their representatives that relate in any way to the assignment or transfer of Asbestos Insurance Rights or insurance proceeds to the Asbestos PI Trust.

**RESPONSE TO DOCUMENT REQUEST NO. 5:**

(i) – (iii)    The ACC objects to this Request to the extent that it is overly broad, unduly burdensome, irrelevant and not reasonably calculated to the lead to the discovery of admissible evidence.  In addition, the ACC objects to this Request to the extent that it seeks discovery of documents protected by the attorney-client privilege, the work product doctrine and/or the extensions of those privileges by the joint defense and/or common interest doctrines. The ACC also objects to this Request to the extent it seeks documents and communications protected by Rule 408 of the Federal Rules of Civil Procedure, including confidential documents relating to settlement discussions with certain Asbestos Insurance Entities.  The ACC further objects to this Request as seeking disclosure of documents in connection with negotiations of the Plan Documents, which are not properly discoverable.  See In re Federal-Mogul Global, Inc., Case No. 01-10578 (JKF) (Bankr. D. Del. Feb. 26, 2007) (Hr'g Tr. at 31); In re Pittsburgh Corning Corp., Case No. 00-22876 (JKF) (Bankr. W.D. Pa. Feb. 19, 2004) (Hr'g Tr. at 64-66); In re Combustion Eng'g, Case No. 03-10495 (JKF) (Bankr. D. Del. May 2, 2003) (Hr'g Tr. at 301); In re Babcock & Wilcox Co., No. 00-10992 (JAB) (Bankr. E.D. La. Aug. 20, 2003) (Hr'g Tr. 84); In re ACandS, Inc., No. 02-12687 (RJN) (Bankr. D. Del. Sept. 30, 2003) (Hr'g Tr. at 42-45); In re Eagle-Picher Indus., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994).

Subject to those objections and the General Objections and Reservations of Rights set forth above, the ACC refers the Discovering Parties to (i) the proposed Plan Documents that

were filed in the above-captioned case (see Joint Plan Documents, filed September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan Documents, filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan, filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668); First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874, 20877, 20905)); (ii) the various draft Plan Documents that the Discovering Parties received via electronic mail from the Debtors; (iii) the virtual data-room established by the Debtors, which contains, among other things, the Debtors' insurance policy register, which identifies the Debtors' remaining excess solvent insurance; and (iv) the publicly filed motion, related pleadings and order in connection with the Debtors' motion to approve the settlement with Lloyd's Underwriters.

(iv)    See response to subparts (i) – (iii) above.  The ACC further objects to this Request as vague and ambiguous insofar as the meaning of "understandings with" is unclear.  Subject to that objection, the objections set forth in subparagraphs (i) through (iii) above, and the General Objections and Reservation of Rights set forth above, the ACC refers the Discovering Parties to the Asbestos Insurance Transfer Agreement.

**DOCUMENT REQUEST NO. 6:**

All Documents identified in paragraphs 3(d)(iv), (v), (vi), and (ix) of the December 19, 2008 draft Cooperation Agreement submitted by Debtors to the Court as Exhibit 10 to the Exhibit Book.

**RESPONSE TO DOCUMENT REQUEST NO. 6:**

The ACC objects to this Request insofar as the information sought in this Request will be and/or is more properly and easily provided by the Debtors, who were served with a request identical to this Request.

**DOCUMENT  REQUEST NO. 7:**

All Documents sent by You or received by You after the Petition Date concerning CNA's coverage of Asbestos PI Claims.

**RESPONSE TO DOCUMENT REQUEST NO. 7:**

The ACC objects to this Request as vague and ambiguous insofar as the meaning of "CNA's coverage of Asbestos PI Claims" in unclear.  The ACC further objects to this Request to the extent it seeks discovery of documents protected by the attorney-client privilege, the work product doctrine and/or the extensions of those privileges by the joint defense and/or common interest doctrines.  In addition, the ACC objects to this Request to the extent that it seeks discovery of information that is equally accessible and available to the Discovering Parties, including information available in the virtual data-room established by the Debtors, or that is already in their possession, custody or control.  Subject to those objections and the General Objections and Reservations of Rights set forth above, the ACC notes that a settlement demand was sent to the Discovering Parties on November 12, 2008, and that a reminder of such demand was sent to the Discovering Parties on February 6, 2009.

**DOCUMENT REQUEST NO. 8:**

All Documents identifying any Asbestos PI Claims that are asserted to be covered, or potentially covered, by any indemnity agreement between Debtors and CNA.

**RESPONSE TO DOCUMENT REQUEST NO. 8:**

The ACC is unaware of any such documents.

**DOCUMENT REQUEST NO. 9:**

All Documents that support, or that You rely upon in connection with, Your denial in whole or in part of any Request for Admission contained in CNA's First Set of Requests for Admissions served upon You.

**RESPONSE TO DOCUMENT REQUEST NO. 9:**

Subject to the General Objections and Reservation of Rights set forth above, the ACC refers the Discovering Parties to the Plan Documents.

**CAMPBELL & LEVINE, LLC**

*/s/ Mark T. Hurford*
Marla R. Eskin (No. 2989)
Mark T. Hurford (No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900
Telefax: (302) 426-9947

**CAPLIN & DRYSDALE, CHARTERED**
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125
Telefax: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
Jeffrey A. Liesemer
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Telefax: (202) 429-3301

Counsel for the Official Committee
of Asbestos Personal Injury Claimants

Dated: March 6, 2009