# Exhibit 7

# DEDUCTIBLE REIMBURSEMENT CONTRACT
## (WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY)

THIS AGREEMENT, DATED JUNE 30, 1993 IS MADE BETWEEN CONTINENTAL CASUALTY COMPANY, CNA PLAZA, CHICAGO, ILLINOIS 60685 (HEREINAFTER CALLED "CNA") AND, W.R. GRACE & CO. (HEREINAFTER CALLED THE "CLIENT").

WHEREAS, CNA HAS ISSUED TO THE CLIENT THE INSURANCE POLICY OR POLICIES (HEREINAFTER CALLED THE "POLICIES") DESCRIBED IN THE SCHEDULE OF THIS AGREEMENT WHICH INCLUDES A DEDUCTIBLE ENDORSEMENT (HEREINAFTER CALLED THE "DEDUCTIBLE") IN AN AMOUNT STATED IN THE ATTACHED SCHEDULE AND

WHEREAS, THE CLIENT SHALL REIMBURSE CNA FOR ALL CLAIM PAYMENTS WITHIN THE DEDUCTIBLE.

NOW, THEREFORE, CNA AND THE CLIENT MUTUALLY AGREE AS FOLLOWS:

1. (a) CNA AGREES TO EXAMINE ALL CLAIM AND LOSS REPORTS OF INJURY, SICKNESS, DISEASE OR DEATH INCURRED DURING THE TERM OF THIS CONTRACT SUSTAINED BY AN EMPLOYEE OF THE CLIENT FOR WHICH BENEFITS ARE OR MAY BE PAYABLE UNDER A STATE OR OCCUPATIONAL DISEASE LAW OR FOR WHICH THE CLIENT AS AN EMPLOYER MAY BE LIABLE FOR DAMAGES COVERED BY EMPLOYERS' LIABILITY INSURANCE, ALL AS MORE FULLY DESCRIBED IN THE POLICIES AND IN THE SCHEDULE.

   (b) CNA AGREES TO CONDUCT AN INVESTIGATION OF THE REPORTED CLAIMS AND LOSSES QUALIFYING UNDER (1. (a)) ABOVE TO THE EXTENT DEEMED NECESSARY IN THE JUDGMENT OF CNA TO ADJUST AND HANDLE TO A CONCLUSION THOSE CLAIMS CNA IN ITS JUDGMENT BELIEVES THE CLIENT IS LEGALLY OBLIGATED TO PAY INCLUDING THE NECESSARY PREPARATION FOR
   ANY SUBROGATION OR CONTRIBUTION ACTION WHICH IN THE JUDGMENT OF CNA MAY INURE TO THE BENEFIT OF THE CLIENT.

   (c) CNA AGREES TO PERFORM ALL REASONABLE AND NECESSARY ADMINISTRATIVE AND CLERICAL WORK IN CONNECTION WITH CLAIM OR LOSS REPORTS QUALIFYING UNDER PROVISIONS (1. (a)).

   (d) CNA AGREES TO ADJUST, SETTLE, OR RESIST ALL QUALIFYING CLAIMS AND LOSSES AND LITIGATION ARISING THEREFROM WITHIN THE DISCRETIONARY SETTLEMENT AUTHORITY LIMIT.

2. THE CLIENT SHALL BE CHARGED A LOSS FUND CHARGE TO COMPENSATE CNA FOR LOSS OF USE OF ITS FUNDS FOR PAYING THE CLIENTS' CLAIM PAYMENTS AND ALLOCATED CLAIM EXPENSES PRIOR TO RECEIVING REIMBURSEMENT. THIS LOSS FUND CHARGE SHALL BE COMPUTED AT 100% OF EACH QUARTER'S BILLING DESCRIBED IN PROVISION 3 (a), 3 (b) AND 3 (c) MULTIPLIED TIMES ONE-FOURTH (-1/4) OF THE 90 DAY COMMERCIAL PAPER DEALER RATE APPLICABLE TO THE FIRST FRIDAY OF THE FIRST MONTH OF THE QUARTER BEING BILLED AS PUBLISHED IN

A2:267E3B31     -1-     EXHIBIT B

THE MIDWEST EDITION OF THE WALL STREET JOURNAL UNDER THE SECTION ENTITLED "MONEY RATES" OR ANY SUCCESSOR SECTION.

3. CNA WILL PROVIDE THE CLIENT WITH A QUARTERLY REIMBURSEMENT STATEMENT (HEREINAFTER CALLED THE "STATEMENT") FOR THE FOLLOWING ITEMS:

   (a) CLAIM PAYMENTS AND ALLOCATED CLAIM EXPENSES DURING THE PERIOD COVERED BY THE "STATEMENT", AND

   (b) ALL CLAIM SERVICE FEES EARNED DURING THE PERIOD COVERED BY THE STATEMENT, AND

   (c) ALL PREMIUM, SALES OR SERVICES TAXES OR ASSESSMENTS INCURRED DURING THE PERIOD COVERED BY THE STATEMENT, OR IMPOSED UPON CNA DURING SUCH PERIOD IF NOT PREVIOUSLY PAID BY THE CLIENT, ON CLAIM PAYMENTS WITHIN THE DEDUCTIBLE ON ALL ALLOCATED CLAIM EXPENSES AND ON ALL CLAIM SERVICE FEES, AND

   (d) LOSS FUND CHARGE AS PROVIDED UNDER PROVISION 2.

   CNA WILL OVERNIGHT THE QUARTERLY STATEMENT COVERING ALL MONIES DUE TO CNA FOR THE POLICY PERIOD JUNE 30, 1993 TO JUNE 30, 1994 TO W.R. GRACE & CO. WITH TWO COPIES TO MARSH & MCLENNAN, INC. ON THE DATE BILLED BY CNA. THE CLIENT WILL REMIT TO CNA PAYMENT WITHIN FIFTEEN (15) DAYS AFTER THE BILLING DATE, AFTER WHICH PAYMENT IS PAST DUE; UNLESS AN ERROR OR OMISSION WHICH IS THE FAULT OF CNA IS THE PRINCIPAL CAUSE OF THE ITEMS AND THE AMOUNTS IN DISPUTE, IN WHICH CASE INTEREST BEGINS TO ACCRUE FOURTEEN (14) DAYS AFTER CNA HAS BILLED THE CLIENT FOR OPEN ITEMS AFTER RESOLUTION THEREOF.

   PAYMENTS SHALL BE REMITTED BY THE CLIENT VIA WIRE TRANSFER TO:

   > MONEY TRANSFER DEPARTMENT
   > HARRIS TRUST & SAVINGS BANK
   > 111 WEST MONROE
   > CHICAGO, ILLINOIS 60690
   > ACCT. OF CONTINENTAL CASUALTY CO.
   > NO.: 000-432-5

   AS OF EIGHTEEN (18) MONTHS FOLLOWING THE EFFECTIVE DATE OF THIS AGREEMENT, AND ANNUALLY THEREAFTER, DURING THE PAID LOSS PERIOD, THE INSURER WILL CALCULATE INTEREST DUE AS DESCRIBED IN ARTICLE 10 HEREOF ON ANY AMOUNTS BILLED TO THE INSURED UNDER THE PROVISIONS OF ARTICLE 3 THAT ARE NOT PAID WHEN DUE. INTEREST WILL ACCRUE FROM THE DUE DATE OF THE BILLING TO THE ACTUAL DATE PAYMENT WAS RECEIVED. THE INSURED SHALL PAY TO THE INSURER ANY INTEREST AMOUNTS BILLED TO IT UNDER THIS ARTICLE WITHIN THIRTY (30) DAYS OF THE BILLING DATE.

   CNA SHALL CONTINUE TO SUBMIT SUCH STATEMENTS UNTIL ALL CLAIMS

SERVICED UNDER THIS AGREEMENT ARE CLOSED OR UNTIL THE PARTIES AGREE UPON AN EARLIER DATE FOR THE FINAL STATEMENT.

4. THE CLIENT HEREBY GRANTS CNA COMPLETE AND SOLE AUTHORITY AND DISCRETION TO SETTLE CLAIMS FOR AN AMOUNT OF $5,000.00 OR LESS. HOWEVER, CNA RESERVES THE RIGHT TO SETTLE A CLAIM IN EXCESS OF ITS DISCRETIONARY AUTHORITY, IF IN ITS SOLE OPINION, FAILURE TO SETTLE WILL SUBJECT CNA TO FINES, PENALTIES OR DAMAGES (INCLUDING BUT NOT LIMITED TO PUNITIVE AND EXEMPLARY DAMAGES) FOR UNFAIR, IMPROPER OR TORTIOUS CLAIM HANDLING ACTS, OMISSIONS OR PRACTICES.

5. CLAIM PAYMENTS WILL BE PAID BY AUTHORIZED CNA PERSONNEL USING CHECKS DRAWN ON CNA OR DRAFTS.

6. CNA WILL MAINTAIN A FILE FOR ALL CLAIMS SUBJECT TO THIS AGREEMENT. SUCH FILE SHALL CONTAIN ALL DOCUMENTS WHICH HAVE COME INTO THE POSSESSION OF CNA RELATING TO SUCH CLAIMS. THE CLIENT SHALL HAVE THE RIGHT TO INSPECT THE FILES AT ANY TIME DURING REGULAR BUSINESS HOURS OF CNA AT THE LOCATION FROM WHICH CLAIMS ARE BEING SERVICED OR SUCH OTHER MUTUALLY AGREED UPON LOCATION.

7. CANCELLATION OF THE POLICY(IES) BY EITHER THE CLIENT OR CNA OR THE EXPIRATION THEREOF DOES NOT ABSOLVE THE CLIENT OF ITS OBLIGATION TO PAY CNA AMOUNTS INCURRED AS OF THE CANCELLATION OR TERMINATION DATE NOR ANY AMOUNTS WHICH MAY SUBSEQUENTLY BECOME DUE IN CONNECTION WITH CLAIM SERVICES PERFORMED FOR THE CLIENT.

8. CNA'S FAILURE TO SETTLE A CLAIM WITHIN THE AMOUNT OF ITS DISCRETIONARY AUTHORITY SHALL NOT SUBJECT CNA TO ANY LIABILITY TO THE CLIENT IF THE CLAIM IS SUBSEQUENTLY SETTLED OR JUDGMENT IS RENDERED FOR AN AMOUNT GREATER THAN AN EARLIER SETTLEMENT OFFER.

    CLIENT ABSOLVES CNA FROM ANY AND ALL LIABILITIES TO CLIENT ARISING OUT OF ANY INADVERTENT OR GOOD FAITH ERROR OR OMISSION OF CNA, ITS OFFICERS, EMPLOYEES, AGENTS, REPRESENTATIVES OR COUNSELS IN THE PERFORMANCE OF THEIR DUTIES AND POWERS UNDER THIS AGREEMENT UNLESS SUCH ERROR OR OMISSION CONSTITUTES GROSS NEGLIGENCE; INCLUDING (BUT NOT LIMITED TO) THE SETTLEMENT OF CLAIMS IN EXCESS OF ITS DISCRETIONARY AUTHORITY, THE FAILURE TO CONSULT AND COMMUNICATE WITH CLIENT, THE FAILURE OR TIMELY FAILURE TO COMMUNICATE SETTLEMENT OFFERS TO CLIENT, THE FAILURE TO RETAIN SKILLED AND EXPERIENCED COUNSEL OR THE FAILURE TO SUPERVISE COUNSEL; PROVIDED ALWAYS THAT SUCH ERROR OR OMISSION IS INADVERTENT OR IN GOOD FAITH, AND DOES NOT CONSTITUTE GROSS NEGLIGENCE.

9. IF CNA RECOMMENDS SETTLEMENT OF A CLAIM TO THE CLIENT FOR AN AMOUNT IN EXCESS OF CNA'S DISCRETIONARY AUTHORITY AND IF THE CLIENT REFUSES TO AUTHORIZE SUCH SETTLEMENT, THEN THE CLIENT SHALL INDEMNIFY AND HOLD CNA HARMLESS FOR ANY COMPENSATORY AND PUNITIVE DAMAGES, INTEREST, AND DEFENSE FEES, COST AND EXPENSES FOR WHICH CNA IS FOUND LIABLE TO A CLAIMANT BECAUSE CNA HAS ENGAGED IN WRONGFUL CLAIMS HANDLING. CNA SHALL BE INDEMNIFIED AND HELD HARMLESS ONLY TO THE

EXTENT THAT ITS LIABILITY IS ATTRIBUTABLE TO CLIENT'S FAILURE TO AUTHORIZE SETTLEMENT. THIS PROVISION SURVIVES THE TERMINATION OF THIS AGREEMENT. AMOUNTS PAYABLE TO CNA BY THE CLIENT UNDER THIS PROVISION ARE DUE WITHIN FIFTEEN (15) DAYS AFTER CNA GIVES NOTICE TO THE CLIENT OF THE AMOUNT DUE, AFTER WHICH TIME PAYMENT IS CONSIDERED PAST DUE.

10. INTEREST SHALL ACCRUE ON EACH PAST DUE PAYMENT BASED ON THE DAILY EQUIVALENT OF 5% PER ANNUM PLUS THE NINETY (90) DAY COMMERCIAL PAPER DEALER RATE IN EFFECT ON THE FIRST FRIDAY OF EACH MONTH SUCH PAYMENT(S) IS/ARE PAST DUE, AS PUBLISHED IN THE MIDWEST EDITION OF THE WALL STREET JOURNAL UNDER THE SECTION ENTITLED "MONEY RATES" OR ANY SUCCESSOR SECTION. INTEREST WILL BE COMPOUNDED DAILY UNTIL FULL PAYMENT IS RECEIVED. ALL INTEREST THAT HAS ACCRUED ON SUCH PAST DUE PAYMENTS WILL BE BILLED AS SOON AS PRACTICABLE AND SHALL BE PAYABLE WITHIN FIFTEEN (15) DAYS OF THIS BILLING DATE, AFTER WHICH TIME PAYMENTS WILL BE CONSIDERED PAST DUE AND INTEREST WILL ACCRUE AS DESCRIBED ABOVE.

11. THIS AGREEMENT IS BINDING UPON AND INURES TO THE BENEFIT OF THE SUCCESSORS IN INTEREST OF CNA AND THE CLIENT. HOWEVER, NEITHER PARTY MAY ASSIGN ITS RIGHTS, DUTIES OR RESPONSIBILITIES UNDER THIS AGREEMENT WITHOUT THE WRITTEN CONSENT OF THE OTHER.

12. THE FAILURE OF EITHER PARTY TO INSIST UPON STRICT PERFORMANCE OF ANY DUTY OR RESPONSIBILITY OF THE OTHER PARTY UNDER THE AGREEMENT SHALL NOT BE DEEMED A WAIVER OF SUCH DUTY OR RESPONSIBILITY OR CREATE AN ESTOPPEL AGAINST SUCH PARTY.

13. AS PARTIAL CONSIDERATION FOR THIS AGREEMENT, THE CLIENT AGREES TO PROVIDE CNA WITH A CLEAN IRREVOCABLE UNCONDITIONAL LETTER OF CREDIT (HEREINAFTER CALLED THE "CREDIT"), THROUGH AN INSTITUTION ACCEPTABLE TO CNA, ACCUMULATING AUTOMATICALLY IN FOUR (4) QUARTERLY INSTALLMENTS AS FOLLOWS:

| DUE DATE | INSTALLMENT AMOUNT | FACE VALUE OF CREDIT |
|---|---|---|
| 06/30/93 | $1,714,284 | $1,714,284 |
| 09/30/93 | $1,714,285 | $3,428,569 |
| 12/30/93 | $1,714,285 | $5,142,854 |
| 03/30/94 | $1,714,285 | $6,857,139 |

THE CREDIT SHALL REMAIN IN FORCE UNTIL JUNE 30, 1994 AND BE AUTOMATICALLY RENEWABLE FOR TERMS OF TWELVE MONTHS. A PROVISION MUST BE INCLUDED WHEREBY THE ISSUING INSTITUTION AGREES TO PROVIDE CNA WITH WRITTEN NOTICE AT LEAST SIXTY (60) DAYS PRIOR TO EXPIRATION IN THE EVENT THE CREDIT WILL NOT BE RENEWED. AS OF EIGHTEEN (18) MONTHS AFTER THE DATE OF THIS AGREEMENT AND ANNUALLY THEREAFTER, (THE EVALUATION DATES,) THE CREDIT WILL BE ADJUSTED TO REFLECT OPEN CASE RESERVES AS OF EACH EVALUATION DATE AS MUTUALLY AGREED BETWEEN CNA AND CLIENT WHICH AGREEMENT SHALL NOT BE UNREASONABLY WITHHELD. THE CLIENT AGREES TO EXTEND OR REPLACE THE CREDIT TO EQUAL ANY SUCH

AMOUNT WITHIN THIRTY (30) DAYS NOTIFICATION THEREOF.

IN THE EVENT THERE IS A MATERIAL CHANGE IN OWNERSHIP OF THE CLIENT, MEANING ANY OF THE FOLLOWING:

A. AN INVESTOR OR A GROUP OF AFFILIATED INVESTORS HAS ACQUIRED MORE THAN 30% OF THE VOTING SHARES OF THE CLIENT, OR

B. THE BOARD OF DIRECTORS HAS AUTHORIZED A MERGER, CONSOLIDATION, REORGANIZATION WHICH WOULD RESULT IN A NEW INVESTOR OR A GROUP OF AFFILIATED INVESTORS ACQUIRING MORE THAN 30% OF THE VOTING STOCK OF THE CLIENT OR THE LIQUIDATION OF THE CLIENT, OR

C. THE BOARD OF DIRECTORS HAS AUTHORIZED THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE CLIENT, OR

D. THE BOARD OF DIRECTORS HAS AUTHORIZED A DISTRIBUTION OF ASSETS TO SHAREHOLDERS IN EXCESS OF 25% OF THE CLIENT'S ASSETS.

CNA SHALL HAVE THE RIGHT TO REQUIRE THE CLIENT TO INCREASE THE CREDIT BY AN AMOUNT TO BE DETERMINED BY CNA, WHICH AMOUNT SHALL NOT EXCEED THE ULTIMATE PROJECTED LOSSES AS DETERMINED BY CNA, THROUGH THE USE OF GENERALLY ACCEPTED ACTUARIAL METHODS WHICH TAKE INTO CONSIDERATION THE FOLLOWING FACTORS; THE CLIENT'S EXPECTED LOSSES AT THE TIME OF QUOTATION, AND LOSS DEVELOPMENT FACTORS GENERALLY USED BY CNA, AND BASED ON THE CLIENT'S INDIVIDUAL LOSS HISTORY. WHEN COMBINED WITH THE CREDIT PROVISIONS SET FORTH IN CLAIM SERVICE AGREEMENT NO. 202 514 778, CLAIM SERVICE AGREEMENT NO. 002 514 779 AND CLAIM SERVICE AGREEMENT (INSURANCE PLANS), ALL DATED JUNE 30, 1993, THE AMOUNT DETERMINED BY CNA SHALL NOT RESULT IN THE COMBINED AMOUNTS EXCEEDING THE PLAN MAXIMUM LESS ALL PAYMENTS TO DATE AS SET FORTH IN THE PLAN MAXIMUM AGREEMENT.

14. CNA SHALL HAVE THE OPTION OF DRAWING ON THE CREDIT FOR THE FULL AMOUNT THEREOF OR A LESSER AMOUNT IN THE EVENT:

A. THE CLIENT COMMITS AN ACT OF INSOLVENCY OR BANKRUPTCY (HOWEVER EXPRESSED OR INDICATED), INCLUDING BUT NOT LIMITED TO THE MAKING OF AN ASSIGNMENT FOR THE BENEFIT OF CREDITORS, ENTERING INTO A COMPOSITION OF DEBTS WITH CREDITORS OR NOT PAYING OR ADMITTING IN WRITING ITS INABILITY TO PAY ITS DEBTS GENERALLY AS THEY BECOME DUE, OR THE CLIENT OR ANY OF ITS CREDITORS FILES A PETITION IN A COURT OF COMPETENT JURISDICTION SEEKING LIQUIDATION, REORGANIZATION, ARRANGEMENT, REHABILITATION OR OTHER RELIEF FROM CREDITORS; WHICH IN THE CASE OF A CREDITOR'S ACTION IS NOT DISMISSED OR TERMINATED WITHIN 90 DAYS; OR

B. ANY PAYMENT DUE CNA FROM THE CLIENT ATTRIBUTED TO THE POLICY PERIOD JUNE 30, 1993 TO JUNE 30, 1994 IS PAST DUE UNDER THE TERMS OF THIS AGREEMENT, OR

C. WRITTEN NOTICE IS RECEIVED FROM THE ISSUING INSTITUTION THAT THE

CREDIT WILL NOT BE RENEWED AND/OR CNA IS NOT IN POSSESSION OF SATISFACTORY REPLACEMENT CREDIT THIRTY (30) DAYS PRIOR TO EXPIRATION; OR

D. THE AMOUNT OF THE CREDIT IS NOT ADJUSTED TO AN AMOUNT REQUIRED UNDER PROVISION 13 WITHIN THIRTY (30) DAYS NOTIFICATION THEREOF; OR

E. THE FINANCIAL CONDITION OF THE INSTITUTION ISSUING THE CREDIT BECOMES SUCH THAT IN CNA'S OPINION IT MAY BE UNABLE TO PAY ANY DRAW ON THE CREDIT AND THE CLIENT HAS BEEN NOTIFIED THAT THE INSTITUTION IS NO LONGER ACCEPTABLE AND CLIENT HAS FAILED TO REPLACE THE CREDIT WITHIN 45 DAYS AFTER NOTIFICATION. CNA WILL GIVE 15 DAYS PRIOR WRITTEN NOTICE BY CERTIFIED MAIL (RETURN RECEIPT REQUESTED) TO THE DIRECTOR OF CORPORATE RISK MANAGEMENT OF ITS INTENT TO DRAW UPON THE CREDIT AS A RESULT OF EITHER ITEMS B, D OR E ABOVE.

FAILURE BY CNA TO EXERCISE SAID OPTIONS AT ANY TIME SHALL NOT BE DEEMED AS A WAIVER BY CNA OF ITS RIGHTS HEREUNDER TO EXERCISE SUCH OPTIONS. THE RIGHTS OF CNA TO DRAW ON THE CREDIT ARE IN ADDITION TO ANY OTHER REMEDIES IT MAY HAVE AGAINST CLIENT AND NOT IN LIEU THEREOF.

IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT CANCELLATION OF THIS AGREEMENT BY EITHER THE CLIENT OR CNA DOES NOT RELEASE THE CLIENT FROM ITS OBLIGATION TO MAINTAIN THE CREDIT UNTIL SUCH TIME AS ALL CLAIMS ARE CLOSED. THROUGHOUT SUCH TIME CNA SHALL CONTINUE TO HAVE THE OPTION TO DRAW ON THE CREDIT SHOULD ANY CONTINGENCIES IN A, B, C, D OR E (ABOVE) TAKE PLACE.

ALL COLLATERAL INSTRUMENTS AND RELATED NOTICES SHOULD BE FORWARDED BY REGISTERED MAIL (RETURN RECEIPT REQUESTED) TO CNA ADDRESSED AS FOLLOWS:

THE CNA INSURANCE COMPANIES
CNA PLAZA
CHICAGO, ILLINOIS 60685
ATTN: MANAGER, ALTERNATIVE FUNDING ANALYSIS AND CONTROL
NATIONAL ACCOUNTS - 30 SOUTH

15. NOTHING IN THIS AGREEMENT SHALL BE CONSTRUED TO ALTER THE MEANING OR INTERPRETATION OF SIMILAR PROVISIONS OF PRIOR AGREEMENTS BETWEEN CNA AND SUBSIDIARIES OF THE CLIENT UNDER WHICH CNA HAS PROVIDED AND CONTINUES TO PROVIDE CLAIM SERVICES RELATING TO POLICY PERIODS COMMENCING PRIOR TO JUNE 30, 1993.

16. NOTHING CONTAINED IN THIS AGREEMENT SHALL BE CONSTRUED TO LIMIT THE SCOPE OF COVERAGE AFFORDED BY THE POLICY.

17. ALL NOTICES, REQUESTS, DEMANDS AND OTHER COMMUNICATIONS REQUIRED OR PERMITTED TO BE GIVEN UNDER SUCH AGREEMENTS SHALL BE DEEMED TO HAVE BEEN DULY GIVEN IF IN WRITING AND DELIVERED PERSONALLY OR BY

PREMIUM OVERNIGHT DELIVERY SERVICE, OR MAILED FIRST-CLASS, POSTAGE PREPAID, REGISTERED OR CERTIFIED MAIL, ADDRESSED AS FOLLOWS:

IF TO CLIENT:

> W.R. GRACE & CO.
> ONE TOWN CENTER ROAD
> BOCA RATON, FL. 33486
>
> ATTN: DIRECTOR OF CORPORATE RISK MANAGEMENT

IF TO CNA:

> THE CNA INSURANCE COMPANIES
> CNA PLAZA
> CHICAGO, IL 60685
>
> ATTN: MANAGER, ALTERNATIVE FUNDING ANALYSIS AND CONTROL
> NATIONAL ACCOUNTS - 30 SOUTH

IN WITNESS WHEREOF, CNA AND THE CLIENT HAVE CAUSED THIS AGREEMENT TO BE DULY EXECUTED BY THEIR RESPECTIVE OFFICERS IN MULTIPLE ORIGINALS EFFECTIVE AS OF THE DATE AND YEAR FIRST ABOVE STATED.

ATTEST: _[signature: Peter N. Cook]_

CLIENT: W.R. GRACE & CO.
BY: _[signature]_
Jeffrey H. Posner
PRINT OR TYPE OFFICER'S NAME
TITLE: Assistant Vice President/Director Corporate Risk Management
DATE: January 27, 1994

ATTEST: _[signature]_
ASSISTANT SECRETARY

CNA:
BY: _[signature]_
RICHARD E. DeCHENE
PRINT OR TYPE OFFICER'S NAME
TITLE: VICE PRESIDENT
DATE: 9/28/93

A2:267E3B31              -7-              W. R. GRACE & CO.

## SCHEDULE

### DESCRIPTION OF POLICY AND DEDUCTIBLE

**POLICY NUMBER:** WC 202514764

**POLICY PERIOD:**

JUNE 30, 1993 TO JUNE 30, 1994

**STATES WHERE DEDUCTIBLE APPLIES:**

AK, AL, CO, CT, DC, FL, GA, IA, IL, IN, KY, LA, MA, MD, MI, MS, NC, NH, NM, NY, PA, RI, SC, SD, TN, TX, UT, VA, VT.

**DEDUCTIBLE AMOUNT:**\*

$1,000,000. BODILY INJURY BY ACCIDENT - EACH ACCIDENT
$1,000,000. BODILY INJURY BY DISEASE - EACH EMPLOYEE

\*W.R. GRACE & CO. WILL BE RESPONSIBLE FOR ALL ALLOCATED EXPENSE UP TO OR INCLUSIVE OF LOSS LIMIT OR WORKERS' COMPENSATION DEDUCTIBLE LIMIT.

THE WORKERS' COMPENSATION DEDUCTIBLE AMOUNT IS INCLUSIVE OR COMBINED FOR WORKERS' COMPENSATION AND WORKERS' COMPENSATION ALLOCATED CLAIM EXPENSES, EMPLOYERS LIABILITY AND EMPLOYERS LIABILITY ALLOCATED CLAIM EXPENSES ARISING OUT OF A SINGLE ACCIDENT.