# Tab (b)

THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 02-12687 (JKF) |
| | ) | |
| ACandS, INC., | ) | CHAPTER 11 |
| | ) | |
| | ) | Related Docket No. 3109 and 3291 |
| Debtor | ) | 5/6/08 Hearing; Agenda Item No. 1 |

**Objection Deadline: March 24, 2008**
**Hearing Date: May 6, 2008 at 11:00 a.m.**

**ORDER CONFIRMING ACANDS'S SECOND PLAN OF REORGANIZATION DATED NOVEMBER 19, 2007**

ACandS, Inc., as debtor and debtor in possession in the above captioned chapter 11 case ("ACandS" or the "Debtor"), has proposed and filed ACandS's Second Plan of Reorganization, dated November 19, 2007 (the "Plan"),[1] and a Disclosure Statement, dated November 19, 2007 (the "Disclosure Statement") approved by the Bankruptcy Court pursuant to an order dated January 4, 2008 as containing "adequate information" pursuant to section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (the "Disclosure Statement Order").

This Court has reviewed the brief submitted in support of confirmation of the Plan, listened to the oral arguments of counsel for all interested parties appearing at the hearing, reviewed the evidence admitted to the Confirmation Hearing, and taken notice of the pleadings, orders, and proceedings in the Chapter 11 Case.

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan or the Plan Documents.

This Court has also reviewed: (a) the Affidavit of Jeffrey Stein (Docket No. 3286) reflecting service of the Debtor's Solicitation Package which included the Plan Documents to all known Creditors who were entitled to vote to accept or reject the Modified Plan and (b) the Affidavit of Curtis Hehn concerning publication notice (Docket No. 3238).

NOW THEREFORE, It is DECREED, ORDERED AND CONFIRMATION OF THE PLAN ADJUDGED as follows:

**CONFIRMATION OF THE PLAN**

1. The Plan is hereby confirmed.

2. The record of the Confirmation Hearing is closed.

3. All objections to confirmation of the Plan have been withdrawn prior to entry of this Order and are deemed withdrawn with prejudice.

4. ACandS is, subject to further order of the Court, authorized to amend or modify the Plan at any time prior to the Effective Date, but only in accordance with section 1127(b) of the Bankruptcy Code.

5. In the event of any inconsistency between the Plan and any agreement, instrument or document intended to implement the Plan and this Order, the provisions of this Order shall govern and shall supersede any orders of the Court issued prior to the Effective Date that may be inconsistent herewith (other than the Approval Order).

6. In accordance with section 1141(a) of the Bankruptcy Code, the provisions of the Plan are binding upon ACandS and its respective successors and assigns, the holders of Claims and Interests and their respective successors and assigns (whether or not they

voted to accept the Plan, whether or not they are impaired under the Plan, and whether or not any such holder has filed, or is deemed to have filed, a proof of Claim or proof of Interest), any other Entity giving, acquiring or receiving property under the Plan, and any lessor or lessee of property to or from ACandS.

7. The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against ACandS or its estate, assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, the Reorganized Debtor shall not be responsible for any Claims against ACandS, except those expressly assumed by the Reorganized Debtor in the Plan. Except as specifically provided in the Plan or in the Confirmation Order, effective on the Effective Date, Confirmation shall (a) discharge the Debtor and Reorganized Debtor from any and all Claims and Demands including any Claim of a kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a Proof of Claim based on such Claim was filed or deemed filed under section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of the Debtor, (ii) such Claim is or was Allowed under section 502 of the Bankruptcy Code, or (iii) the holder of such Claim has voted on or accepted the Plan, and (b) preserve all rights and interests of the holder of Interests in respect of the Debtor or Reorganized Debtor for the purposes of and subject to the terms of the Irex Settlement Agreement. Except as specifically provided in this Plan to the contrary, the rights that are provided in this Plan shall be in complete discharge of all Claims or

Demands against, Liens on, and Interests in the Debtor, Reorganized Debtor, or the Trust or the assets and properties of the Debtor, Reorganized Debtor, or the Trust. For the avoidance of doubt, Confirmation shall not discharge any claim that Travelers may have against the Debtor or Reorganized Debtor for retrospective premiums arising under any Excluded Contract, or that is not otherwise released under the settlement and Buyback Arrangement. Except as specifically provided in the Plan Documents to the contrary, the satisfaction, release, and discharge set forth in Sections 10.1, of the Plan shall also operate as an injunction prohibiting and enjoining the commencement or continuation of any action, the employment of process or any act to collect, recover from, or offset any Claim or Demand against or Interest in the Debtor, the Reorganized Debtor, or the Trust by any Entity, including all Claims and Demands discharged in Section 10.1 of the Plan.

8. In accordance with section 1141(b) of the Bankruptcy Code and Section 11.6 of the Plan, title to all of ACandS's assets, properties and interests in property, other than the Trust Assets to be transferred to the Trust, shall revest in the Reorganized Debtor on the Effective Date. Except as otherwise provided herein or in the Plan, title to all assets and properties and interests in property dealt with by the Plan shall be revested in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, and other interests, and all such Claims, Liens, encumbrances and other interests shall be extinguished.

9. In accordance with section 1142 of the Bankruptcy Code, ACandS and any other Entity designated pursuant to the Plan are authorized, empowered and directed to execute, deliver, file and record any document, and to take any action necessary or appropriate

DOCS_DE:137155.4

to implement, consummate and otherwise effect the Plan in accordance with its terms in all material respects, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them necessary or appropriate to effectuate the transactions contemplated by the Plan.

10. The parties to any Plan Documents are authorized to execute such Plan Documents and modify the same consistent with the terms of the Plan Documents without further order of the Court or further notice to any entities.

11. All Entities holding Claims against or an Interest in ACandS that are treated under the Plan are directed to execute, deliver, file or record any document, and to take any action necessary to implement, consummate and otherwise effect the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

**CREATION OF THE TRUST**

12. On the later of the execution of the Trust Agreement by the Trustee and the Effective Date, the Trust shall be created in accordance with the Plan and the Trust Agreement. Upon the creation of the Trust, all right, title, and interest in and to the Trust Assets shall be transferred to, and vested in, the Trust. The Trust and the Trustee are hereby authorized and empowered to receive the Trust Assets.

13. The Trust shall be a "qualified settlement fund" within the meaning of regulations issued pursuant to section 468B of the Internal Revenue Code. The purpose of the

Trust shall be to, among other things, assume all Trust Claims and to use the Trust Assets to pay holders of Trust Claims, in accordance with the Trust Agreement and the TDP.

14. The appointment of the Honorable Alfred M. Wolin (Ret.), as the initial Trustee is hereby approved. As of the Effective Date, the initial Trustee shall serve as Trustee in accordance with the terms of the Trust Agreement. The Trustee shall execute each Plan Document which contemplates that the Trustee shall be a signatory thereto, each such Plan Document in the form approved by the Bankruptcy Court; provided, however, that this requirement may be waived by the Debtor, with the consent of Irex.

15. The appointment of Matthew Bergman, Bryan O. Blevins, Jr., John D. Cooney, Steven Kazan, Joseph F. Rice, Armand J. Volta, Jr., and Perry Weitz as the seven initial members of the Trust Advisory Committee (the "TAC") is hereby approved. Effective as of the Effective Date, the initial members of the TAC shall serve as members of the TAC in accordance with the terms of the Trust Agreement.

16. In consideration for the property transferred to the Trust pursuant to Section 9.1 of the Plan, and in furtherance of the purposes of the Trust and the Plan, the Trust shall assume all liability and responsibility for all Trust Claims, and Reorganized ACandS and each other Released Party shall have no further financial or other responsibility or liability therefor.

17. With respect to any Trust Claim that is allowed by the Trust in accordance with the Trust Agreement and the TDP, such allowance shall establish the amount

~~of legal liability against the Trust in the amount of the liquidated value of such Claim, as determined in accordance with the TDP.~~

**ORDERS REGARDING TRAVELERS**

18. Travelers is specifically denominated as a Settling Asbestos Insurance Company under the Plan.

19. Effective as of the Trigger Date, all of the Debtor's rights, title and interest in the Travelers Insurance Policies shall be deemed sold to Travelers pursuant to 11 U.S.C. §§ 363(b) and (f), free and clear of any Claims, liens, encumbrances, and/or interests of any kind and/or nature whatsoever of any other Entity in such rights, title and interest, as previously authorized by the Approval Order.

20. No Entity may at any time, without Travelers' written consent, change, terminate, reduce or limit the scope of (1) the Travelers-Related Injunction (as defined in the Settlement and Buyback Agreement), (2) the 363 Injunction, or (3) the releases provided to Travelers in the Settlement and Buyback Agreement and in the Plan.

21. All of the obligations and rights of the Debtor under the Settlement and Buyback Agreement are binding on and inure to the benefit of the Trust and the Trustee, and the Trust and the Trustee shall be bound to all of such terms and conditions of the Settlement and Buyback Agreement.

## INJUNCTIONS

**A. Section 524(g) Injunction.**

22. Terms. In order to preserve and promote the settlements contemplated by and provided for in the Plan and agreements approved by the Bankruptcy Court and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 524(g) of the Bankruptcy Code, and subject to the provisions of Paragraph 23 below, all Entities which have held or asserted, which hold or assert, or which may in the future hold or assert any Asbestos Personal Injury Claim, Indirect Asbestos Personal Injury Claim or Direct Action against the Protected Parties (or any of them) shall be permanently stayed, restrained, and enjoined, from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments or recovery with respect to any such Asbestos Personal Injury Claim, Indirect Asbestos Personal Injury Claim or Direct Action against the Protected Parties (or any of them), including, but not limited to:

(A) commencing, conducting or continuing in any manner any action, suit or other proceeding of any kind (including a judicial, arbitration or other proceeding) against any Protected Party, or against the property of any Protected Party, with respect to any such Asbestos Personal Injury Claim, Indirect Asbestos Personal Injury Claim or Direct Action;

(B) enforcing, levying, attaching, collecting or otherwise recovering, by any means or in any manner, directly or indirectly, any judgment, award, decree, or other order against any Protected Party, or against the property of any Protected Party, with respect to

any such Asbestos Personal Injury Claim, Indirect Asbestos Personal Injury Claim or Direct Action;

(C) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance against any Protected Party, or the property of any Protected Party, with respect to any such Asbestos Personal Injury Claim, Indirect Asbestos Personal Injury Claim or Direct Action;

(D) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, directly or indirectly, against any obligation due any Protected Party, or against the property of any Protected Party, with respect to any such Asbestos Personal Injury Claim, Indirect Asbestos Personal Injury Claim or Direct Action; and

(E) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents relating to such Asbestos Personal Injury Claim, Indirect Asbestos Personal Injury Claim or Direct Action.

23. Reservations. Notwithstanding anything to the contrary in the Plan, this Section 524(g) Injunction shall not:

(A) enjoin the rights of Entities to the treatment accorded them under the Plan, including the rights of Entities with Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims against the Trust in accordance with the TDP;

(B) enjoin any Claims (as defined in the Settlement and Buyback Agreement) against Travelers that do not arise directly or indirectly from the conduct of or

Claims against the Debtor, the Travelers Insurance Policies and/or the Insurance Relationship as between the Debtor and Travelers;

(C) enjoin the rights of Entities to assert any claim, debt, obligation, cause of action or liability for payment of Trust Expenses against the Trust;

(D) enjoin the rights of the Trust and/or the Reorganized Debtor to take any action or assert any claim, debt, obligation, cause of action or liability for payments with respect to any and all of the Transferred Insurance Rights, including, without limitation, the rights of the Trust or the Reorganized Debtor to prosecute any Asbestos Insurance Action, subject to the terms of any applicable Asbestos Insurance Settlement Agreement and any Asbestos Insurer Coverage Defenses;

(E) enjoin the rights of any Entity, including without limitation the Trust and the Reorganized Debtor, to assert any claim, debt, obligation, or liability for payment against any Settling Asbestos Insurance Company to the extent any coverages were not resolved and released in the Asbestos Insurance Settlement Agreement with that Settling Asbestos Insurance Company, subject to the terms of any Asbestos Insurance Settlement Agreement and any Asbestos Insurer Coverage Defenses;

(F) enjoin the rights of any Entity to which the Trust has assigned any of the Transferred Insurance Rights to take any action with respect to such Transferred Insurance Right, subject to any applicable Asbestos Insurance Settlement Agreement and any Asbestos Insurer Coverage Defense;

(G) enjoin the rights of any Irex Entity or ACandS Related Party as an insured to assert any claim, debt, obligation, or liability for payment against an Asbestos Insurance Company, subject to and in accordance with the terms of the Irex Insurance Relinquishment, the Irex Settlement Agreement, any Asbestos Insurance Settlement Agreement, and any Asbestos Insurer Coverage Defense;

(H) enjoin the rights of parties to the Irex Settlement Agreement to assert claims against Protected Parties pursuant to the terms of the Irex Settlement Agreement;

(I) enjoin the rights any Party (as defined in the Settlement and Buyback Agreement) may have to enforce the Settlement and Buyback Agreement;

(J) enjoin the rights any Party (as defined in the Settlement and Buyback Agreement) may have to assert any Claim (as defined in the Settlement and Buyback Agreement), debt, obligation, or liability with respect to the Excluded Contracts to the extent such rights have not been released under the Settlement and Buyback Agreement, including any claim with respect to retrospective premium obligations under Excluded Contracts;

(K) (1) enjoin, impair or affect the validity and enforceability of the Statutory Direct Action Settlement Agreement, dated March 5, 2004 (as amended on March 26, 2004) (the "Statutory Settlement"), the Hawaii Direct Action Settlement Agreement, dated May 21, 2004 (the "Hawaii Settlement"), or the Common Law Direct Action Settlement Agreement, dated May 21, 2004 (the "Common Law Settlement"), each as it may be amended by the parties thereto, and each of which was the subject of the order issued in In re Johns-Manville Corp., 2004 WL 1876046 (Bankr. S.D.N.Y. Aug. 17, 2004) (No. 82 B 11656, 82 B 11661, 82 B 11675,

82 B 11657, 82 B 11665, 82 B 11676 (BRL), 82 B 11660, 82 B 11673), as modified by the order reported at In re Johns-Manville Corp., 340 B.R. 49 (S.D.N.Y. 2006), and appealed in Travelers Indemnity Co. v. OneBeacon America Ins. Co., Nos. 06-2009-bk (lead), 06-2103-bk, 06-2105-bk, 06-2118-bk, and 06-2186-bk (2d Cir., appeal pending) (the "Appeal").

(2) If the Statutory Settlement is not approved by a Final Order and fully funded by Travelers pursuant to its terms, then the Section 524(g) Injunction shall not enjoin any rights, Claims (as defined in the Settlement and Buyback Agreement) or causes of action asserted against Travelers (a) in (i) the lawsuits consolidated under In re Asbestos Unfair Trade Practices Insurance Cases, No. 02-C-700 (Circuit Court of Kanawha County, West Virginia), entitled Wise v. Travelers Indemnity Co. (Circuit Court of Berkeley County, West Virginia 2001), Wise v. OneBeacon Insurance Group (Circuit Court of Kanawha County, West Virginia 2002), Meninger v. Travelers Indemnity Company, Civil Action No. 02-C-1057 (Circuit Court of Kanawha County, West Virginia), and Adams v. Aetna Inc., Civil Action No. 02-C-1708 (Circuit Court of Kanawha County, West Virginia); or (ii) Cashman v. Travelers Indemnity Co., Civ. No. 02-2056-H (Superior Court of Suffolk County, Massachusetts 2002); or (b) in (i) an action which is a Statutory Direct Action Claim (as defined in the Statutory Settlement), and (ii) by any Person (as defined in the Settlement and Buyback Agreement) who would have met the criteria to receive a distribution as an Eligible Claimant (as defined in the Statutory Settlement) from the fund(s) created pursuant to the Statutory Settlement, had such settlement been finally approved and funded by Travelers; provided, however, this Paragraph 23(K)(2) shall expire and become null and void if (x) the order that is the subject of the Appeal becomes a Final

Order and all payments by Travelers pursuant to the terms of the Statutory Settlement have been made, and/or (y) if an order substantively the same in all material respects as the order that is the subject of the Appeal becomes a Final Order and all payments by Travelers pursuant to the terms of the Statutory Settlement (as such may be amended by the parties thereto) have been made; and

(3) if the Hawaii Settlement is not approved by a Final Order and fully funded by Travelers pursuant to its terms, enjoin any rights, Claims (as defined in the Settlement and Buyback Agreement) or causes of action asserted against Travelers (a) in Lorenzo Baclaan v. Combustion Engineering, Inc., Case No. 03-00325, U.S. District Court for the District of Hawaii, and George Toro v. Combustion Engineering, Inc., Case No. 03-00326, U.S. District Court for the District of Hawaii, or (b) in (i) an action brought under the statutes, laws, or regulations of Hawaii based on one or more legal theories substantially similar to those asserted in the lawsuits listed in Paragraph 23(K)(3)(a) above, and (ii) by any Person (as defined in the Settlement and Buyback Agreement) who would have met the criteria to receive a distribution as an Eligible Claimant (as defined in the Hawaii Settlement) from the fund(s) created pursuant to the Hawaii Settlement, had such settlement been finally approved and funded by Travelers; provided, however, this Paragraph 23(K)(3) shall expire and become null and void if (x) the order that is the subject of the Appeal becomes a Final Order (as defined in the Settlement and Buyback Agreement) and all payments by Travelers pursuant to the terms of the Hawaii Settlement have been made, and/or (y) if an order substantively the same in all material respects as the order that is the subject of the Appeal becomes a Final Order (as defined in the

Settlement and Buyback Agreement) and all payments by Travelers pursuant to the terms of the Hawaii Settlement (as such may be amended by the parties thereto) have been made.

24. Termination. The protection afforded by the Section 524(g) Injunction to any Asbestos Insurance Company other than Travelers shall terminate automatically in the event that all funds to which an Asbestos Insurance Company is entitled under the applicable Asbestos Insurance Settlement Agreement are returned to such Asbestos Insurance Company by operation of the terms of such Asbestos Insurance Settlement Agreement. The protection afforded by the Section 524(g) Injunction to Travelers shall terminate only if and when (i) the Settlement and Buyback Agreement becomes null and void pursuant to Section IV of the Settlement and Buyback Agreement, and (ii) the Settlement and Buyback Amount and any earnings thereon (less amounts properly charged by the escrow agent in accordance with the Settlement and Buyback Agreement) are returned to Travelers.

**B. Non-Settling Asbestos Insurance Company Injunction.**

25. Terms. In order to protect the Trust and to preserve the Trust assets, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under Section 105(a) of the Bankruptcy Code, and subject to the provisions set forth in Paragraph 26 below, all Entities (excluding, however, the Trust, the Asbestos Insurance Companies and the Reorganized Debtor to the extent they are permitted or required to pursue claims relating to any Asbestos Insurance Actions) that have held or asserted, that hold or assert, or that may in the future hold or assert any Direct Action claim against any Asbestos Insurance Company, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or

indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Direct Action claim including, without limitation:

(A) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such claim or cause of action against any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company, with respect to any such claim or cause of action;

(B) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company, with respect to any such claim or cause of action;

(C) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance against any Asbestos Insurance Company, or the property of any Asbestos Insurance Company, with respect to any such claim or cause of action; and

(D) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company, with respect to any such claim or cause of action; provided, however, that (i) the Trust shall have the sole and exclusive authority at any time, upon express notice to each affected Asbestos Insurance Company, to terminate, or reduce or limit the scope of, the Non-Settling Asbestos Insurance Company Injunction with

respect to such Asbestos Insurance Company (subject to the proviso that each affected Asbestos Insurance Company shall retain all rights and defenses, including the Asbestos Insurer Coverage Defenses, with respect to Claims asserted against it as a result of any such termination, reduction, or limitation of the Non-Settling Asbestos Insurance Company Injunction) and (ii) the Non-Settling Asbestos Insurance Company Injunction is not issued for the benefit of any Asbestos Insurance Company, and no Asbestos Insurance Company is a third-party beneficiary of the Non-Settling Asbestos Insurance Company Injunction.

26. Reservations. Notwithstanding anything to the contrary in the Plan, this Non-Settling Asbestos Insurance Company Injunction shall not:

(A) enjoin the rights of Entities to the treatment accorded them under the Plan, including the rights of Entities with Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims against the Trust in accordance with the TDP;

(B) enjoin any Claims (as defined in the Settlement and Buyback Agreement) against Travelers that do not arise directly or indirectly from the conduct of or Claims against the Debtor, the Travelers Insurance Policies and/or the Insurance Relationship as between the Debtor and Travelers;

(C) enjoin the rights of Entities to assert any claim, debt, obligation, cause of action or liability for payment of Trust Expenses against the Trust;

(D) enjoin the rights of the Trust and/or the Reorganized Debtor to take any action or assert any claim, debt, obligation, cause of action or liability for payments with respect to any and all of the Transferred Insurance Rights, including, without limitation, the

rights of the Trust or the Reorganized Debtor to prosecute any Asbestos Insurance Action, subject to the terms of any applicable Asbestos Insurance Settlement Agreement and any Asbestos Insurer Coverage Defenses;

(E) enjoin the rights of any Entity, including without limitation the Trust and the Reorganized Debtor, to assert any claim, debt, obligation, or liability for payment against any Settling Asbestos Insurance Company to the extent any coverages were not resolved and released in the Asbestos Insurance Settlement Agreement with that Settling Asbestos Insurance Company, subject to the terms of any Asbestos Insurance Settlement Agreement and any Asbestos Insurer Coverage Defenses;

(F) enjoin the rights of any Entity to which the Trust has assigned any of the Transferred Insurance Rights to take any action with respect to such Transferred Insurance Right, subject to any applicable Asbestos Insurance Settlement Agreement and any Asbestos Insurer Coverage Defense;

(G) enjoin the rights of any Irex Entity or any ACandS Related Party as an insured to assert any claim, debt, obligation, or liability for payment against an Asbestos Insurance Company, subject to and in accordance with the terms of the Irex Insurance Relinquishment, the Irex Settlement Agreement, any Asbestos Insurance Settlement Agreement, and any Asbestos Insurer Coverage Defense;

(H) enjoin the rights of parties to the Irex Settlement Agreement to assert claims against Protected Parties pursuant to the terms of the Irex Settlement Agreement;

(I) enjoin the rights any Party (as defined in the Settlement and Buyback Agreement) may have to enforce the Settlement and Buyback Agreement;

(J) enjoin the rights any Party (as defined in the Settlement and Buyback Agreement) may have to assert any Claim (as defined in the Settlement and Buyback Agreement), debt, obligation, or liability with respect to the Excluded Contracts to the extent such rights have not been released under the Settlement and Buyback Agreement, including any claim with respect to retrospective premium obligations under Excluded Contracts;

(K) (1) enjoin, impair or affect the validity and enforceability of the Statutory Direct Action Settlement Agreement, dated March 5, 2004 (as amended on March 26, 2004) (the "Statutory Settlement"), the Hawaii Direct Action Settlement Agreement, dated May 21, 2004 (the "Hawaii Settlement"), or the Common Law Direct Action Settlement Agreement, dated May 21, 2004 (the "Common Law Settlement"), each as it may be amended by the parties thereto, and each of which was the subject of the order issued in In re Johns-Manville Corp., 2004 WL 1876046 (Bankr. S.D.N.Y. Aug. 17, 2004) (No. 82 B 11656, 82 B 11661, 82 B 11675, 82 B 11657, 82 B 11665, 82 B 11676 (BRL), 82 B 11660, 82 B 11673), as modified by the order reported at In re Johns-Manville Corp., 340 B.R. 49 (S.D.N.Y. 2006), and appealed in Travelers Indemnity Co. v. OneBeacon America Ins. Co., Nos. 06-2009-bk (lead), 06-2103-bk, 06-2105-bk, 06-2118-bk, and 06-2186-bk (2d Cir., appeal pending) (the "Appeal").

(2) If the Statutory Settlement is not approved by a Final Order and fully funded by Travelers pursuant to its terms, then the Non-Settling Asbestos Insurance Company Injunction shall not enjoin any rights, Claims (as defined in the Settlement and

Buyback Agreement) or causes of action asserted against Travelers (a) in (i) the lawsuits consolidated under In re Asbestos Unfair Trade Practices Insurance Cases, No. 02-C-700 (Circuit Court of Kanawha County, West Virginia), entitled Wise v. Travelers Indemnity Co. (Circuit Court of Berkeley County, West Virginia 2001), Wise v. OneBeacon Insurance Group (Circuit Court of Kanawha County, West Virginia 2002), Meninger v. Travelers Indemnity Company, Civil Action No. 02-C-1057 (Circuit Court of Kanawha County, West Virginia), and Adams v. Aetna Inc., Civil Action No. 02-C-1708 (Circuit Court of Kanawha County, West Virginia); or (ii) Cashman v. Travelers Indemnity Co., Civ. No. 02-2056-H (Superior Court of Suffolk County, Massachusetts 2002); or (b) in (i) an action which is a Statutory Direct Action Claim (as defined in the Statutory Settlement), and (ii) by any Person (as defined in the Settlement and Buyback Agreement) who would have met the criteria to receive a distribution as an Eligible Claimant (as defined in the Statutory Settlement) from the funds created pursuant to the Statutory Settlement, had such settlement been finally approved and funded by Travelers; provided, however, this Paragraph 26(K)(2) shall expire and become null and void if (x) the order that is the subject of the Appeal becomes a Final Order and all payments by Travelers pursuant to the terms of the Statutory Settlement have been made, and/or (y) if an order substantively the same in all material respects as the order that is the subject of the Appeal becomes a Final Order and all payments by Travelers pursuant to the terms of the Statutory Settlement (as such may be amended by the parties thereto) have been made;

(3) if the Hawaii Settlement is not approved by a Final Order and fully funded by Travelers pursuant to its terms, enjoin any rights, Claims (as defined in the

Settlement and Buyback Agreement) or causes of action asserted against Travelers (a) in Lorenzo Baclaan v. Combustion Engineering, Inc., Case No. 03-00325, U.S. District Court for the District of Hawaii, and George Toro v. Combustion Engineering, Inc., Case No. 03-00326, U.S. District Court for the District of Hawaii, or (b) in (i) an action brought under the statutes, laws, or regulations of Hawaii based on one or more legal theories substantially similar to those asserted in the lawsuits listed in Paragraph 26(K)(3)(a) above, and (ii) by any Person (as defined in the Settlement and Buyback Agreement) who would have met the criteria to receive a distribution as an Eligible Claimant (as defined in the Hawaii Settlement) from the funds created pursuant to the Hawaii Settlement, had such settlement been finally approved and funded by Travelers; provided, however, this reservation shall expire and become null and void if (x) the order that is the subject of the Appeal becomes a Final Order (as defined in the Settlement and Buyback Agreement) and all payments by Travelers pursuant to the terms of the Hawaii Settlement have been made, and/or (y) if an order substantively the same in all material respects as the order that is the subject of the Appeal becomes a Final Order (as defined in the Settlement and Buyback Agreement) and all payments by Travelers pursuant to the terms of the Hawaii Settlement (as such may be amended by the parties thereto) have been made; and

(L) enjoin the rights of any Asbestos Insurance Company to assert any claim, debt, obligation, cause of action or liability for payment against any other Asbestos Insurance Company that is not a Settling Asbestos Insurance Company.

C. **The Irex Entities Injunction.**

27. Terms. In order to promote and give substance to the Irex Release, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under Section 105(a) of the Bankruptcy Code, and subject to the provisions of Paragraph 28 below, all Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any claim or cause of action against any Irex Entity based upon a Released Claim (other than an Asbestos Personal Injury Claim or an Asbestos Property Damage Claim), shall be stayed, restrained, and enjoined from taking any actions for the purpose of directly or indirectly, collecting, recovering, or receiving payment, satisfaction, or recovery with respect to any such Released Claim including, without limitation:

(A) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum against any Irex Entity, or against the property of any Irex Entity, with respect to any such Released Claim;

(B) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Irex Entity, or against the property of any Irex Entity, with respect to any such Released Claim;

(C) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance against any Irex Entity, or the property of any Irex Entity, with respect to any such Released Claim; and

(D) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Irex Entity, or against the property of any Irex Entity, with respect to any such Released Claim.

28. Reservations. Notwithstanding anything to the contrary above, the Irex Entities Injunction shall not:

(A) enjoin the rights of Entities to the treatment accorded them under the Plan, including the rights of Entities with Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims against the Trust in accordance with the TDP;

(B) enjoin the rights of Entities to assert any Claim, debt, obligation, or liability for payment of Trust Expenses against the Trust;

(C) enjoin the rights of parties to the Irex Settlement Agreement to assert claims against Protected Parties pursuant to the terms of the Irex Settlement Agreement;

(D) enjoin the rights any Party (as defined in the Settlement and Buyback Agreement) may have to enforce the Settlement and Buyback Agreement; and

(E) enjoin the rights any Party (as defined in the Settlement and Buyback Agreement) may have to assert any Claim (as defined in the Settlement and Buyback Agreement), debt, obligation, or liability with respect to the Excluded Contracts to the extent such rights have not been released under the Settlement and Buyback Agreement, including any claim with respect to retrospective premium obligations under Excluded Contracts.

## D. The Travelers Non-Asbestos Related Claim Injunction.

29. Terms. In order to give effect to the compromises and agreements made in and to preserve and promote the Settlement and Buyback Agreement, pursuant to the equitable and statutory jurisdiction and power of the Bankruptcy Court under Section 105(a) of the Bankruptcy Code, and subject to the provisions of Paragraph 30 below, all Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim (as defined in the Settlement and Buyback Agreement) based upon or attributable to any Non-Asbestos Related Claim against Travelers shall be stayed, restrained, and enjoined from taking any actions for the purpose of directly or indirectly collecting, recovering, or receiving payment, satisfaction, or recovery with respect to any such Claim (as defined in the Settlement and Buyback Agreement), including:

(A) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum against Travelers, or against the property of Travelers, with respect to any such Claim (as defined in the Settlement and Buyback Agreement);

(B) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against Travelers, or against the property of Travelers, with respect to any such Claim (as defined in the Settlement and Buyback Agreement);

(C) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance against Travelers, or the property of Travelers, with respect to any such Claim (as defined in the Settlement and Buyback Agreement); and

(D) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of Travelers, or against the property of Travelers, with respect to any such Claim (as defined in the Settlement and Buyback Agreement).

30. Reservations. Notwithstanding anything to the contrary in the Plan, the Travelers Non-Asbestos Related Claim Injunction shall not:

(A) enjoin the rights of Entities to the treatment accorded them under the Plan, including the rights of Entities with Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims against the Trust in accordance with the TDP;

(B) enjoin any Claims (as defined in the Settlement and Buyback Agreement) against Travelers that do not arise directly or indirectly from the conduct of or Claims against the Debtor, the Travelers Insurance Policies and/or the Insurance Relationship as between the Debtor and Travelers;

(C) enjoin the rights of any Entity, including without limitation the Trust and the Reorganized Debtor, to assert any claim, debt, obligation, or liability for payment against any Settling Asbestos Insurance Company to the extent any coverages were not resolved and released in the Asbestos Insurance Settlement Agreement with that Settling Asbestos

Insurance Company, subject to the terms of any Asbestos Insurance Settlement Agreement and any Asbestos Insurer Coverage Defenses;

(D) enjoin the rights of any Entity to which the Trust has assigned any of the Transferred Insurance Rights to take any action with respect to such Transferred Insurance Right, subject to any applicable Asbestos Insurance Settlement Agreement and any Asbestos Insurer Coverage Defense;

(E) enjoin the rights of any Irex Entity or any ACandS Related Party as an insured to assert any claim, debt, obligation, or liability for payment against an Asbestos Insurance Company, subject to and in accordance with the terms of the Irex Insurance Relinquishment, the Irex Settlement Agreement, any Asbestos Insurance Settlement Agreement, and any Asbestos Insurer Coverage Defense;

(F) enjoin the rights of parties to the Irex Settlement Agreement to assert claims against Protected Parties pursuant to the terms of the Irex Settlement Agreement;

(G) enjoin the rights any Party (as defined in the Settlement and Buyback Agreement) may have to enforce the Settlement and Buyback Agreement;

(H) enjoin the rights any Party (as defined in the Settlement and Buyback Agreement) may have to assert any Claim (as defined in the Settlement and Buyback Agreement), debt, obligation, or liability with respect to the Excluded Contracts to the extent such rights have not been released under the Settlement and Buyback Agreement, including any claim with respect to retrospective premium obligations under Excluded Contracts;

(I) (1) enjoin, impair or affect the validity and enforceability of the Statutory Direct Action Settlement Agreement, dated March 5, 2004 (as amended on March 26, 2004) (the "Statutory Settlement"), the Hawaii Direct Action Settlement Agreement, dated May 21, 2004 (the "Hawaii Settlement"), or the Common Law Direct Action Settlement Agreement, dated May 21, 2004 (the "Common Law Settlement"), each as it may be amended by the parties thereto, and each of which was the subject of the order issued in In re Johns-Manville Corp., 2004 WL 1876046 (Bankr. S.D.N.Y. Aug. 17, 2004) (No. 82 B 11656, 82 B 11661, 82 B 11675, 82 B 11657, 82 B 11665, 82 B 11676 (BRL), 82 B 11660, 82 B 11673), as modified by the order reported at In re Johns-Manville Corp., 340 B.R. 49 (S.D.N.Y. 2006), and appealed in Travelers Indemnity Co. v. OneBeacon America Ins. Co., Nos. 06-2009-bk (lead), 06-2103-bk, 06-2105-bk, 06-2118-bk, and 06-2186-bk (2d Cir., appeal pending) (the "Appeal").

(2) if the Statutory Settlement is not approved by a Final Order and fully funded by Travelers pursuant to its terms, then the Travelers Non-Asbestos Related Claim Injunction shall not enjoin any rights, Claims (as defined in the Settlement and Buyback Agreement) or causes of action asserted against Travelers (a) in (i) the lawsuits consolidated under In re Asbestos Unfair Trade Practices Insurance Cases, No. 02-C-700 (Circuit Court of Kanawha County, West Virginia), entitled Wise v. Travelers Indemnity Co. (Circuit Court of Berkeley County, West Virginia 2001), Wise v. OneBeacon Insurance Group (Circuit Court of Kanawha County, West Virginia 2002), Meninger v. Travelers Indemnity Company, Civil Action No. 02-C-1057 (Circuit Court of Kanawha County, West Virginia), and Adams v. Aetna Inc., Civil Action No. 02-C-1708 (Circuit Court of Kanawha County, West Virginia); or (ii)

Cashman v. Travelers Indemnity Co., Civ. No. 02-2056-H (Superior Court of Suffolk County, Massachusetts 2002); or (b) in (i) an action which is a Statutory Direct Action Claim (as defined in the Statutory Settlement), and (ii) by any Person (as defined in the Settlement and Buyback Agreement) who would have met the criteria to receive a distribution as an Eligible Claimant (as defined in the Statutory Settlement) from the funds created pursuant to the Statutory Settlement, had such settlement been finally approved and funded by Travelers; provided, however, this Paragraph 30(I)(2) shall expire and become null and void if (x) the order that is the subject of the Appeal becomes a Final Order and all payments by Travelers pursuant to the terms of the Statutory Settlement have been made, and/or (y) if an order substantively the same in all material respects as the order that is the subject of the Appeal becomes a Final Order and all payments by Travelers pursuant to the terms of the Statutory Settlement (as such may be amended by the parties thereto) have been made; and

(3) if the Hawaii Settlement is not approved by a Final Order and fully funded by Travelers pursuant to its terms, enjoin any rights, Claims (as defined in the Settlement and Buyback Agreement) or causes of action asserted against Travelers (a) in Lorenzo Baclaan v. Combustion Engineering, Inc., Case No. 03-00325, U.S. District Court for the District of Hawaii, and George Toro v. Combustion Engineering, Inc., Case No. 03-00326, U.S. District Court for the District of Hawaii, or (b) in (i) an action brought under the statutes, laws, or regulations of Hawaii based on one or more legal theories substantially similar to those asserted in the lawsuits listed in Paragraph 30(I)(3)(a) above, and (ii) by any Person (as defined in the Settlement and Buyback Agreement) who would have met the criteria to receive a distribution as an Eligible

Claimant (as defined in the Hawaii Settlement) from the funds created pursuant to the Hawaii Settlement, had such settlement been finally approved and funded by Travelers; provided, however, this Paragraph 30(I)(3) shall expire and become null and void if (x) the order that is the subject of the Appeal becomes a Final Order (as defined in the Settlement and Buyback Agreement) and all payments by Travelers pursuant to the terms of the Hawaii Settlement have been made, and/or (y) if an order substantively the same in all material respects as the order that is the subject of the Appeal becomes a Final Order (as defined in the Settlement and Buyback Agreement) and all payments by Travelers pursuant to the terms of the Hawaii Settlement (as such may be amended by the parties thereto) have been made

31. Termination. The protection afforded to Travelers by the Travelers Non-Asbestos Related Claim Injunction shall terminate only if and when (i) the Settlement and Buyback Agreement becomes null and void pursuant to Section IV of the Settlement and Buyback Agreement, and (ii) the Settlement and Buyback Amount and any earnings thereon (less amounts properly charged by the escrow agent in accordance with the Settlement and Buyback Agreement) are returned to Travelers.

## E. **Asbestos Property Damage Claim Injunction.**

32. Terms. In order to promote and give substance to the settlements contemplated by and provided for in the Plan and agreements approved by the Bankruptcy Court and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under Section 105(a) of the Bankruptcy Code, and subject to the provisions of Paragraph 33 below, all Entities that have held or asserted, that hold or assert, or that may in the future

hold or assert any Asbestos Property Damage Claim or (as to Travelers only) Asbestos-Related Property Damage Claim against any Protected Party shall be stayed, restrained, and enjoined from taking any actions for the purpose of directly or indirectly, collecting, recovering, or receiving payment, satisfaction, or recovery with respect to any such Asbestos Property Damage Claim or Asbestos-Related Property Damage Claim, including, without limitation:

(A) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum against any Protected Party, or against the property of any Protected Party, with respect to any such Asbestos Property Damage Claim or Asbestos-Related Property Damage Claim;

(B) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party, or against the property of any Protected Party, with respect to any such Asbestos Property Damage Claim or Asbestos-Related Property Damage Claim;

(C) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance against any Protected Party, or the property of any Protected Party, with respect to any such Asbestos Property Damage Claim or Asbestos-Related Property Damage Claim; and

(D) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any

kind, directly or indirectly, against any obligation of any Protected Party, or against the property of any Protected Party, with respect to any such Asbestos Property Damage Claim or Asbestos-Related Property Damage Claim.

33. Reservations. Notwithstanding anything to the contrary in the Plan, the Asbestos Property Damage Claim Injunction shall not:

(A) enjoin the rights of Entities to the treatment accorded them under the Plan, including the rights of Entities with Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims against the Trust in accordance with the TDP;

(B) enjoin any Claims (as defined in the Settlement and Buyback Agreement) against Travelers that do not arise directly or indirectly from the conduct of or Claims against the Debtor, the Travelers Insurance Policies and/or the Insurance Relationship as between the Debtor and Travelers;

(C) enjoin the rights of any Entity, including without limitation the Trust and the Reorganized Debtor, to assert any claim, debt, obligation, or liability for payment against any Settling Asbestos Insurance Company to the extent any coverages were not resolved and released in the Asbestos Insurance Settlement Agreement with that Settling Asbestos Insurance Company, subject to the terms of any Asbestos Insurance Settlement Agreement and any Asbestos Insurer Coverage Defenses;

(D) enjoin the rights of any Entity to which the Trust has assigned any of the Transferred Insurance Rights to take any action with respect to such Transferred Insurance

Right, subject to any applicable Asbestos Insurance Settlement Agreement and any Asbestos Insurer Coverage Defense;

(E) enjoin the rights of any Irex Entity or any ACandS Related Party as an insured to assert any claim, debt, obligation, or liability for payment against an Asbestos Insurance Company, subject to and in accordance with the terms of the Irex Insurance Relinquishment, the Irex Settlement Agreement, any Asbestos Insurance Settlement Agreement, and any Asbestos Insurer Coverage Defense;

(F) enjoin the rights of parties to the Irex Settlement Agreement to assert claims against Protected Parties pursuant to the terms of the Irex Settlement Agreement;

(G) enjoin the rights any Party (as defined in the Settlement and Buyback Agreement) may have to enforce the Settlement and Buyback Agreement;

(H) enjoin the rights any Party (as defined in the Settlement and Buyback Agreement) may have to assert any Claim (as defined in the Settlement and Buyback Agreement), debt, obligation, or liability with respect to the Excluded Contracts to the extent such rights have not been released under the Settlement and Buyback Agreement, including any claim with respect to retrospective premium obligations under Excluded Contracts;

(I) (1) enjoin, impair or affect the validity and enforceability of the Statutory Direct Action Settlement Agreement, dated March 5, 2004 (as amended on March 26, 2004) (the "Statutory Settlement"), the Hawaii Direct Action Settlement Agreement, dated May 21, 2004 (the "Hawaii Settlement"), or the Common Law Direct Action Settlement Agreement, dated May 21, 2004 (the "Common Law Settlement"), each as it may be amended by

the parties thereto, and each of which was the subject of the order issued in In re Johns-Manville Corp., 2004 WL 1876046 (Bankr. S.D.N.Y. Aug. 17, 2004) (No. 82 B 11656, 82 B 11661, 82 B 11675, 82 B 11657, 82 B 11665, 82 B 11676 (BRL), 82 B 11660, 82 B 11673), as modified by the order reported at In re Johns-Manville Corp., 340 B.R. 49 (S.D.N.Y. 2006), and appealed in Travelers Indemnity Co. v. OneBeacon America Ins. Co., Nos. 06-2009-bk (lead), 06-2103-bk, 06-2105-bk, 06-2118-bk, and 06-2186-bk (2d Cir., appeal pending) (the "Appeal").

(2) If the Statutory Settlement is not approved by a Final Order and fully funded by Travelers pursuant to its terms, then the Asbestos Property Damage Claim Injunction shall not enjoin any rights, Claims (as defined in the Settlement and Buyback Agreement) or causes of action asserted against Travelers (a) in (i) the lawsuits consolidated under In re Asbestos Unfair Trade Practices Insurance Cases, No. 02-C-700 (Circuit Court of Kanawha County, West Virginia), entitled Wise v. Travelers Indemnity Co. (Circuit Court of Berkeley County, West Virginia 2001), Wise v. OneBeacon Insurance Group (Circuit Court of Kanawha County, West Virginia 2002), Meninger v. Travelers Indemnity Company, Civil Action No. 02-C-1057 (Circuit Court of Kanawha County, West Virginia), and Adams v. Aetna Inc., Civil Action No. 02-C-1708 (Circuit Court of Kanawha County, West Virginia); or (ii) Cashman v. Travelers Indemnity Co., Civ. No. 02-2056-H (Superior Court of Suffolk County, Massachusetts 2002); or (b) in (i) an action which is a Statutory Direct Action Claim (as defined in the Statutory Settlement), and (ii) by any Person (as defined in the Settlement and Buyback Agreement) who would have met the criteria to receive a distribution as an Eligible Claimant (as defined in the Statutory Settlement) from the funds created pursuant to the Statutory Settlement,

had such settlement been finally approved and funded by Travelers; provided, however, this Paragraph 33(I)(2) shall expire and become null and void if (x) the order that is the subject of the Appeal becomes a Final Order and all payments by Travelers pursuant to the terms of the Statutory Settlement have been made, and/or (y) if an order substantively the same in all material respects as the order that is the subject of the Appeal becomes a Final Order and all payments by Travelers pursuant to the terms of the Statutory Settlement (as such may be amended by the parties thereto) have been made; and

(3) if the Hawaii Settlement is not approved by a Final Order and fully funded by Travelers pursuant to its terms, enjoin any rights, Claims (as defined in the Settlement and Buyback Agreement) or causes of action asserted against Travelers (a) in Lorenzo Baclaan v. Combustion Engineering, Inc., Case No. 03-00325, U.S. District Court for the District of Hawaii, and George Toro v. Combustion Engineering, Inc., Case No. 03-00326, U.S. District Court for the District of Hawaii, or (b) in (i) an action brought under the statutes, laws, or regulations of Hawaii based on one or more legal theories substantially similar to those asserted in the lawsuits listed in Paragraph 33(I)(3)(a) above, and (ii) by any Person (as defined in the Settlement and Buyback Agreement) who would have met the criteria to receive a distribution as an Eligible Claimant (as defined in the Hawaii Settlement) from the funds created pursuant to the Hawaii Settlement, had such settlement been finally approved and funded by Travelers; provided, however, this reservation shall expire and become null and void if (x) the order that is the subject of the Appeal becomes a Final Order (as defined in the Settlement and Buyback Agreement) and all payments by Travelers pursuant to the terms of the Hawaii

Settlement have been made, and/or (y) if an order substantively the same in all material respects as the order that is the subject of the Appeal becomes a Final Order (as defined in the Settlement and Buyback Agreement) and all payments by Travelers pursuant to the terms of the Hawaii Settlement (as such may be amended by the parties thereto) have been made.

34. Termination. The protection afforded by the Asbestos Property Damage Claim Injunction to any Asbestos Insurance Company other than Travelers shall terminate automatically in the event that all funds to which an Asbestos Insurance Company is entitled under the applicable Asbestos Insurance Settlement Agreement are returned to such Asbestos Insurance Company by operation of the terms of the Asbestos Insurance Settlement Agreement. The protection afforded by the Asbestos Property Damage Claim Injunction to Travelers shall terminate only if and when (i) the Settlement and Buyback Agreement becomes null and void pursuant to Section IV of the Settlement and Buyback Agreement, and (ii) the Settlement and Buyback Amount and any earnings thereon (less amounts properly charged by the escrow agent in accordance with the Settlement and Buyback Agreement) are returned to Travelers.

**ORDERS REGARDING BYRD OBJECTION**

35. Debtor's settlement with Byrd and Associates, PLLC (the "Byrd Firm") on its own behalf and on behalf of each of the persons listed or described on Exhibit "A" to the Settlement Agreement filed with the Court (Docket No. 3291) (the "Byrd Settlement"), is approved on the terms set forth in the Settlement Agreement. The Settlement Agreement is fair, just and reasonable under the facts and circumstances of this case. The parties to the

Settlement Agreement are authorized and directed to consummate the Byrd Settlement on the terms set forth in the Settlement Agreement.

36. The Exoneration set forth in Section 5 of the Settlement Agreement is fair, just and reasonable under the facts and circumstances of this case. Irex shall not have or incur any liability to the Debtor's estate or any other entity for any acts taken by or omissions of Irex in connection with the Byrd Settlement Agreement, including, without limitation, the negotiation, documentation or implementation thereof.

37. Upon the entry of this Order, the Byrd Settlement will be provisionally approved by the Court. Pursuant to the *Order Granting Debtor's Motion to Shorten Time of Notice of Time Period and Approving the Form and Manner Thereof* (Docket No. 3292), parties who have requested notice in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure will have until May 20, 2008 (the "Byrd Objection Deadline") to object to the Byrd Settlement. After the expiration of the Byrd Objection Deadline, notice of the Byrd Settlement, and the opportunity to object thereto, will be sufficient under the circumstances of the Debtor's case.

38. If no objections to the Byrd Settlement are filed by the Byrd Objection Deadline, then approval of the Byrd Settlement, as set forth herein, and the Confirmation Order will become final without any further action of the Court. If any objection to the Byrd Settlement is filed by the Byrd Objection Deadline, then Court will schedule a hearing on the Settlement Motion and the Confirmation Order will not become final automatically at the expiration of the Byrd Objection Deadline. If the Court denies approval of the Byrd

Settlement, or an order approving the Byrd Settlement is not entered or does not become final and non-appealable by July 15, 2008, or the Debtor terminates the Byrd Settlement in accordance with paragraph 6 of the Byrd Settlement Agreement then: (i) the Byrd Claimants will have an opportunity to pursue their objection to confirmation at a hearing held on no less than one week's notice and (ii) the Debtor shall be entitled to pursue confirmation of the Plan over the objection of the Byrd Claimants.

**MISCELLANEOUS**

39. All Entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under section 330 of the Bankruptcy Code or applications for allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred and applications for allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code by the date that is sixty days after the Effective Date. The Allowed Amount of all Administrative Expenses arising under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(5) of the Bankruptcy Code shall be paid in full, in cash, (a) the later of (i) the Effective Date and (ii) the date upon which any such Administrative Expense becomes Allowed or (b) at such later date or upon such other terms as may be mutually agreed upon between such holder of an Administrative Claim and Reorganized ACandS.

40. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court, shall be paid on the Effective Date or as soon as practicable thereafter. All post-confirmation and post-consummation fees that are due and payable shall be paid by Reorganized ACandS until the Chapter 11 Case is closed pursuant to section 305(a) of the Bankruptcy Code.

41. On the Effective Date, the Committee shall be released and discharged as provided in Section 13.4 of the Plan.

42. All of the Persons who have solicited acceptances or rejections of the Plan (including the Debtor, the Reorganized Debtor, and all of their respective officers, directors, shareholders, attorneys, agents, advisers and employees, all of the other Released Parties and The Garden City Group, Inc., as notice and balloting agent) have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and are not liable on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation or acceptances or rejections of the Plan or the offer, issuance, sale or purchase of securities.

43. The Reorganized Debtor shall file a notice that the Plan has become effective within ten (10) days after the Effective Date.

44. A copy of this Order shall be immediately served on the parties listed on the 2002 Notice List in this Chapter 11 Case.

45. Notwithstanding anything in this Order or the Plan to the contrary, no Debtors' professionals shall be released or exonerated in respect of any acts occurring prior to the Petition Date.

**SO ORDERED:**

Dated: May 6, 2008

Judith K. Fitzgerald
The Honorable Judith K. Fitzgerald,
United States Bankruptcy Judge