# Tab (d)

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: | ) | CIVIL ACTION NO. 00-558 |
| | ) | |
| THE BABCOCK & WILCOX COMPANY, | ) | HONORABLE SARAH S. VANCE |
| DEBTOR. | ) | MAGISTRATE ALMA L. CHASEZ |
| | ) | |
| Jointly Administered with | ) | FROM BANKRUPTCY CASE NOs. |
| | ) | (00-10992 - 00-10995) |
| DIAMOND POWER INTERNATIONAL, | ) | Section "R" (5) |
| INC., BABCOCK & WILCOX | ) | |
| CONSTRUCTION CO., INC., AMERICON, | ) | |
| INC. | ) | |
| | ) | |

## ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION AS OF SEPTEMBER 28, 2005, AS AMENDED THROUGH JANUARY 17, 2006, PROPOSED BY THE DEBTORS, THE ASBESTOS CLAIMANTS' COMMITTEE, THE FUTURE ASBESTOS-RELATED CLAIMANTS' REPRESENTATIVE, AND MCDERMOTT INCORPORATED AND ISSUING INJUNCTIONS

This matter is before the Court for entry of an order confirming the Joint Plan of

Reorganization as of September 28, 2005, as amended through January 17, 2006 (and as

thereafter amended), proposed by the Debtors, the Asbestos Claimants' Committee (the "ACC")

the Future Asbestos-Related Claimants' Representative ("FCR"), and McDermott Incorporated

(the "Sept. 28 Plan").[1]

After considering the record of the confirmation hearing held before the Bankruptcy

Court on December 22, 2005, the Bankruptcy Court's Findings of Fact and Conclusions of Law

With Respect to Core Matters and Proposed Findings of Fact and Conclusions of Law With

Respect to Non-Core Matters ("Findings of Fact and Conclusions of Law"), and the Bankruptcy

Court's Order Recommending Confirmation of the Joint Plan of Reorganization as of September

---

[1]    Capitalized terms used herein and not otherwise defined shall have the meanings ascribed
to such terms in the Sept. 28 Plan or Exhibits thereto.

___ Fee_____
___ Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No._____

28, 2005, as Amended Through December 22, 2005 (And As Thereafter Amended), Proposed by

the Debtors, the Asbestos Claimants' Committee (the "ACC"), the Future Asbestos-Related

Claimants' Representative (the "FCR"), and McDermott Incorporated ("MI"), finding that due

and proper notice of the Motion for Order Confirming the Joint Plan of Reorganization As of

September 28, 2005, As Amended Through November 10, 2005 (With Technical Modifications

As of December 22, 2005) Pursuant to Section 524(g) of the United States Bankruptcy Code has

been given to all parties in interest, it is hereby ordered as follows:

1.      The record of the Confirmation Hearing, as made before the Bankruptcy Court, is

closed.

2.      The Bankruptcy Court's proposed Findings of Fact and Conclusions of Law,

including those findings specifically required by Sections 524(g) and 105(a) for implementation

of the injunctions set forth in Paragraphs 32, 35, 37, and 39, are hereby adopted as the findings

and conclusions of this Court pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 52.

This Confirmation Order shall constitute the judgment of this Court pursuant to Fed. R. Civ. P.

58.

3.      The Sept. 28 Plan is hereby confirmed in its entirety, and each and every

provision contained therein is approved in its entirety. Without limiting the preceding, all

technical modifications to the Sept. 28 Plan are hereby approved in all respects and are

incorporated into the Sept. 28 Plan to the extent that they were not already approved by prior

order of the Bankruptcy Court.

4.      The holders of impaired Class 5, Class 6, Class 7 and Class 11A Claims have

voted to accept the Sept. 28 Plan in the numbers and amounts required by section 1126(b) of the

Bankruptcy Code. The holders of Class 6 Claims also have voted to accept the Sept. 28 Plan in

sufficient numbers to meet the requirements of section 524(g)(2)(B)(ii)(iv)(bb) of the
Bankruptcy Code.

5.      All other Classes of Claims are unimpaired under the Sept. 28 Plan and are
exclusively presumed to have accepted the Sept. 28 Plan pursuant to section 1126(f) of the
Bankruptcy Code.

6.      The Plan Documents as they exist on the record as of the time of the entry of this
Confirmation Order, including, without limitation, the documents related to the Asbestos PI
Trust, together with all amendments, modifications, and supplements thereto, and all annexes,
exhibits, and schedules thereto, and all terms and conditions thereof, are hereby approved.

7.      The Non-Debtor Affiliate Settlement Agreement, in substantially the form
attached to the Sept. 28 Plan as Exhibit C, is hereby approved in form and substance. The
Debtors are hereby authorized to enter into the Non-Debtor Affiliate Settlement Agreement in
substantially such form, as amended and modified in order to complete such document and effect
the terms of the Sept. 28 Plan.

8.      All of the objections to the confirmation of the Sept. 28 Plan were withdrawn or
overruled prior to or on the record at the Confirmation Hearing, and all objections to
confirmation of the Sept. 28 Plan or the entry of this Confirmation Order are hereby overruled.

9.      Except as otherwise provided in this Order, all payments made or to be made by
the Debtors, or by any Entity to the extent, if any, that such Entity issues or delivers securities or
acquires property under or pursuant to the Sept. 28 Plan, for services or for costs and expenses in
or in connection with the Chapter 11 Cases, or in connection with the Sept. 28 Plan and incident
to the Chapter 11 Cases, are hereby approved as reasonable.

- 3 -

10.     The Effective Date of the Sept. 28 Plan constitutes the date on which the Sept. 28
Plan is substantially consummated, all conditions of the Effective Date set forth in Section 7.13
of the Sept. 28 Plan have been satisfied or waived, and the injunctions set forth in Paragraphs 32,
35, 37, and 39 shall become effective. The Effective Date shall be February 22, 2006, or such
other date as may be agreed upon in writing by the Plan Proponents. Notice of the occurrence of
the Effective Date, specifying the date on which the Effective Date occurred, shall be filed in
both this Court (Civil Action No. 00-558) and the Bankruptcy Court (Case Nos. 00-10992 - 00-
10995) within one day following the occurrence of the Effective Date. If the Effective Date does
not occur pursuant to the terms of the Sept. 28 Plan, the terms of this Confirmation Order and all
Findings of Fact and Conclusions of Law shall be vacated and be null and void, the injunctions
set forth in Paragraphs 32, 35, 37, and 39 shall not become effective, and the Debtors and holders
of Claims and Equity Interests shall stand in the same position in which such Entities would have
stood if this Confirmation Order had not been entered.

11.     The provisions of section 7.12.1 of the Sept. 28 Plan are incorporated herein and
this Court specifically makes the findings and determinations stated therein.

12.     The president, vice president, secretary, treasurer, or any other officer of the
Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments,
settlement agreements, releases, indentures, and other agreements or documents and to take or
direct such actions as may be necessary or appropriate on behalf of the Debtors or Reorganized
Debtors to effectuate and further evidence the terms and conditions of the Sept. 28 Plan and Plan
Documents, all of which are consistent with the Debtors' constituent documents. The secretary
or any other officer of the Debtors shall be authorized to certify or attest to any of the foregoing
actions.

- 4 -

Case 01-01139-AMC   Doc 21942-12   Filed 06/01/09   Page 6 of 47

13. All matters provided for under the Sept. 28 Plan involving any corporate action to be taken by, or required of, the Debtors or the Reorganized Debtors, shall be deemed to have occurred and be effective as provided in the Sept. 28 Plan, and shall be authorized and approved in all respects without any requirement for further action by the stockholders or directors of any such entities. This Confirmation Order constitutes all authority, if any, required by the General Corporation Law of the State of Delaware, as applicable, and any other applicable business corporation, trust, and other laws of the applicable Governmental Units with respect to the implementation and consummation of the Sept. 28 Plan.

14. On and after the Effective Date and until their respective successors are duly elected or appointed and qualified, the business and affairs of the Reorganized Debtors will be managed by the board of directors and officers of the Debtors set forth in the Notice Pursuant to 11 U.S.C. § 1129(a)(5)(A)(i) of Proposed Officers and Directors of the Reorganized Debtors.

15. On the Effective Date, the Reorganized Debtors, respectively, shall be vested with all of the assets and property of their former Bankruptcy Estates, free and clear of all Claims, liens, charges, and other interests of holders of Claims or Equity Interests, except to the extent specifically provided herein, in another order of this Court or the Bankruptcy Court, in the Sept. 28 Plan, or pursuant to the collateral arrangements entered into by the Reorganized Debtors in connection with the Exit Financing, and may operate their businesses free of any restrictions imposed by the Bankruptcy Code.

16. Except as provided in section 11.4 of the Sept. 28 Plan, as of the Effective Date, the Asbestos PI Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos PI Trust, including, without limitation, the Asbestos Insurance Rights. Subject to the Sept. 28 Plan

- 5 -

and the other Plan Documents, the Asbestos PI Trust shall be responsible for the payment of all
damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred by or
on behalf of the Asbestos PI Trust subsequent to the Effective Date arising from, or associated
with, any legal action or other proceeding that is the subject of this paragraph. The Insurance
Contributors shall be empowered to initiate, prosecute, defend, settle, maintain, administer,
preserve, pursue, and resolve all actions arising from or related to their respective insurance
rights to the extent permitted or required by the Asbestos Insurance Rights Assignment
Agreement and the Sept. 28 Plan. Pursuant to the Sept. 28 Plan and the Asbestos Insurance
Rights Assignment Agreement, at the reasonable direction and request of the Asbestos PI Trust,
and at the expense of the Asbestos PI Trust, an Insurance Contributor, or the Reorganized
Debtors, as applicable, shall pursue any Asbestos Insurance Rights for the benefit of and to the
fullest extent required by the Asbestos PI Trust, by negotiation or, if necessary, by the initiation
and prosecution of all appropriate and necessary legal action to secure such Asbestos Insurance
Rights and shall take such other action as the Asbestos PI Trust may reasonably request,
including granting a security interest in the Asbestos Insurance Rights.

17.     All causes of action which remain property of or are revested in the Reorganized
Debtors pursuant to the Sept. 28 Plan may be pursued or compromised as deemed fit by the
Reorganized Debtors in their sole discretion without need for this Court's approval, and
confirmation of the Sept. 28 Plan does not constitute a discharge or release by the Reorganized
Debtors of any such preserved causes of action.

18.     Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or
exchange of any of the securities issued, transferred, or exchanged under, or the transfer of any
other assets or property pursuant to, or in connection with, the Sept. 28 Plan, or the making or

- 6 -

delivery of an instrument of transfer under, or in connection with, the Sept. 28 Plan shall not be taxed under any law imposing a stamp tax, transfer tax, or other similar tax.

19.     Upon the satisfaction of the conditions set forth in Article VI of the Non-Debtor Affiliate Settlement Agreement, the McDermott Consideration shall be transferred to the Asbestos PI Trust as specified in Section 2.1 of the Non-Debtor Affiliate Settlement Agreement. The Asbestos PI Trust shall be a "qualified settlement fund" within the meaning of regulations issued pursuant to section 468B of the IRC. The purpose of the Asbestos PI Trust shall be to, among other things, assume all Asbestos PI Trust Claims and to use the Asbestos PI Trust Assets to pay holders of Asbestos PI Trust Claims in accordance with the Asbestos PI Trust Agreement and the Asbestos PI TDP.

20.     The Asbestos PI Trust shall, subject to the other provisions of the Plan Documents, receive the McDermott Consideration. Holders of Asbestos PI Trust Claims shall receive payment in accordance with the Asbestos PI TDP.

21.     The initial trustees of the Asbestos PI Trust shall be Judge James McMonagle, Phil Pahigian, and Victor Busey. Effective as of the Effective Date, the Trustees shall serve in accordance with the Asbestos PI Trust Agreement.

22.     The initial members of the Trust Advisory Commitee shall be J. Burton LeBlanc, Mark C. Meyer, Steven Kazan, Joseph F. Rice, Perry Weitz, Steven D. Wolens, and Peter A. Kraus. Effective as of the Effective Date, the initial members of the Trust Advisory Committee shall serve in accordance with the Asbestos PI Trust Agreement.

23.     Eric D. Green shall continue to serve as the FCR on and after the Effective Date pursuant to Section 6 of the Asbestos PI Trust Agreement unless and until a successor is duly appointed.

24.     On the Effective Date, Basile Uddo, the Apollo FCR, shall be deemed to have
completely fulfilled all of his duties in his capacity as Apollo FCR, and his appointment as
Apollo FCR shall automatically terminate as of the Effective Date, without any further action or
formality. Nothing in the Sept. 28 Plan, any other Plan Documents, or this Order shall diminish,
impair, restrict or discharge the Order on Ex Parte Motion to Provide Administrative Expense
Claim and Related Protection to Apollo Future Claimants' Representative signed on September
19, 2003, which shall remain in full force and effect.

25.     Notwithstanding anything to the contrary in the Sept. 28 Plan, any other Plan
Documents (including any other provision that purports to be preemptory or supervening), or this
Confirmation Order, nothing in any such document shall in any way operate to impair, or have
the effect of impairing, the Apollo/Parks Township Insurers'[2] legal, equitable or contractual
rights, if any, in any respect. The rights of the Apollo/Parks Township Insurers shall be
determined under the Apollo/Parks Township Insurance Policies as interpreted under applicable
non-bankruptcy law.

26.     Nothing in the Sept. 28 Plan, the Plan Documents or this Confirmation Order
shall preclude any Entity from asserting in any proceeding any and all claims, defenses, rights or
causes of action that it has or may have under or in connection with any of the Apollo/Parks
Township Insurance Policies. Nothing in the Sept. 28 Plan, the Plan Documents or this
Confirmation Order shall be deemed to waive or impair any claims, defenses, rights or causes of
action that any Entity has or may have under the provisions, terms, conditions, defenses, and/or

---

[2]     "Apollo/Parks Township Insurers" and "Apollo/Parks Township Insurance Policies" as
used in this paragraph and the following paragraph shall have the meanings ascribed to those
terms in Article I of the Apollo/Parks Township Settlement Agreement that was Exhibit A to the
Third Amended Joint Plan of Reorganization filed on June 25, 2003 With Technical
Modifications as of June 21, 2004.

- 8 -

exclusions contained in any of the Apollo/Parks Township Insurance Policies. Nothing in the

Sept. 28 Plan, the Plan Documents or this Confirmation Order is intended to or shall be deemed

to be a finding, conclusion, or determination regarding (i) the merits of any one or more of the

Apollo/Parks Township Claims for insurance coverage purposes, (ii) whether any settlement of

any Apollo/Parks Township Claim is reasonable or appropriate for insurance coverage purposes,

or (iii) any issue of fact or law relating to insurance coverage (if any) for any settlement of any

Apollo/Parks Township Claim approved pursuant to Bankruptcy Rule 9019. Nothing in the

Sept. 28 Plan, the Plan Documents or this Confirmation Order is intended to or shall be deemed

to have any preclusive effect (whether by *res judicata*, collateral estoppel or any other doctrine

of preclusion) as against the Apollo/Parks Township Insurers in any proceeding.

27.     Except as specifically provided in the Sept. 28 Plan, the Plan Documents or in this

Confirmation Order, the rights afforded in the Sept. 28 Plan and Plan Documents and the

treatment of all Claims and Equity Interests therein shall be in exchange for and in complete

satisfaction, discharge and release of all Claims, Demands and Equity Interests of any nature

whatsoever, against the Debtors, the Debtors in Possession, and the Reorganized Debtors, or

their assets, properties, or interests in property. Except as otherwise provided in the Sept. 28

Plan, the Plan Documents or in this Confirmation Order, on the Effective Date all Claims against

and Equity Interests in the Debtors, the Debtors in Possession, and the Reorganized Debtors shall

be satisfied, discharged, and released in full. Except as otherwise provided in the Sept. 28 Plan,

the Plan Documents or this Confirmation Order, the Reorganized Debtors shall not be

responsible for any obligations of the Debtors or the Debtors in Possession except those

expressly assumed by the Reorganized Debtors pursuant to the Sept. 28 Plan and the other Plan

Documents and such settlement agreements relating to objections to confirmation as are

- 9 -

expressly approved by this Court, and those claims that pass through the Sept. 28 Plan
unimpaired pursuant to section 3.2.8 therein. To the extent provided in the Sept. 28 Plan and/or
Plan Documents, all Entities shall be precluded and forever barred from asserting, against the
Asbestos PI Trust and the Asbestos Protected Parties, or their assets, properties, or interests in
property any other or further Claims or Demands based upon any act or omission, transaction, or
other activity, event, or occurrence of any kind or nature that occurred prior to the Effective
Date, whether or not the facts of or legal bases therefor were known or existed prior to the
Effective Date, except as expressly provided in the Sept. 28 Plan and Plan Documents or in this
Confirmation Order.

28.     To the extent provided in the Sept. 28 Plan and the other Plan Documents, the
transfer to, vesting in, and assumption by the Asbestos PI Trust of the McDermott Consideration
as contemplated by the Sept. 28 Plan, the Non-Debtor Affiliate Settlement Agreement and the
Asbestos Insurance Rights Assignment Agreement shall, among other things, on the Effective
Date (a) discharge the Debtors and the Reorganized Debtors for and in respect of all Asbestos PI
Trust Claims and (b) release and extinguish all obligations and liabilities of the Released Parties
for and in respect of all Asbestos PI Trust Claims. On the Effective Date, subject to the terms of
the Sept. 28 Plan and the other Plan Documents, the Asbestos PI Trust shall assume all Asbestos
PI Trust Claims and shall evaluate, determine and pay (if and to the extent entitled to payment)
Asbestos PI Trust Claims, in accordance with the Asbestos PI Trust Agreement and the Asbestos
PI TDP.

29.     On and after the Effective Date, the Debtors shall be fully and finally discharged
of any liability or obligation on a Disallowed Claim, and any order creating a Disallowed Claim
which is not a final order as of the Effective Date solely because of an Entity's right to move for

- 10 -

reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy
Rule 3008 shall nevertheless become and be deemed to be a final order on the Effective Date for
the purpose of, and shall then be, subject to appeal.

## Injunctions

### *Asbestos PI Channeling Injunction*

30.     In connection with the creation of the Asbestos PI Trust and to supplement the
injunctive relief of a discharge under section 524 of the Bankruptcy Code, the Asbestos PI
Channeling Injunction, set forth in Paragraph 32 of this Confirmation Order, shall be, and hereby
is, issued and approved as of the Effective Date pursuant to sections 105(a) and 524(g) of the
Bankruptcy Code. The Asbestos PI Channeling Injunction applies to all Asbestos PI Trust
Claims.

31.     The sole recourse of the holder of an Asbestos PI Trust Claim on account of such
claim shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling
Injunction, set forth in Paragraph 32 of this Confirmation Order, and the Asbestos PI Trust
Distribution Procedures and such holder shall have no right whatsoever at any time to assert its
Asbestos PI Trust Claim against the Debtors, Reorganized Debtors, any other Asbestos Protected
Party, any Settling Asbestos Insurance Entity, or any property or interest in property of the
Debtors, the Reorganized Debtors, or any other Asbestos Protected Party. The definitions of
Debtors, Reorganized Debtors, Asbestos Protected Parties, and Settling Asbestos Insurance
Entities are found in the Sept. 28 Plan and reproduced in Exhibit A hereto.

32.     Without limiting the foregoing, from and after the Effective Date, all holders of
Asbestos PI Trust Claims shall be permanently and forever enjoined from taking any of the
following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving

- 11 -

payment of, on, or with respect to any Asbestos PI Trust Claims other than from the Asbestos PI
Trust in accordance with the Asbestos PI Trust Distribution Procedures, including:

  (a)   commencing, conducting, or continuing in any manner, directly or indirectly, any
        suit, action, or other proceeding (including a judicial, arbitration, administrative,
        or other proceeding) in any forum against or affecting any Asbestos Protected
        Party, any Settling Asbestos Insurance Entity, or any property or interests in
        property of any Asbestos Protected Party or Settling Asbestos Insurance Entity;

  (b)   enforcing, levying, attaching (including any prejudgment attachment), collecting,
        or otherwise recovering by any means or in any manner, whether directly or
        indirectly, any judgment, award, decree, or other order against any
        Asbestos Protected Party, any Settling Asbestos Insurance Entity, or any property
        or interests in property of any Asbestos Protected Party or Settling Asbestos
        Insurance Entity;

  (c)   creating, perfecting, or otherwise enforcing in any manner, directly or indirectly,
        any Encumbrance against any Asbestos Protected Party, any Settling Asbestos
        Insurance Entity, or any property or interests in property of any
        Asbestos Protected Party or Settling Asbestos Insurance Entity;

  (d)   setting off, seeking reimbursement of, contribution from, or subrogation against,
        or otherwise recouping in any manner, directly or indirectly, any amount against
        any liability owed to any Asbestos Protected Party, any Settling Asbestos
        Insurance Entity,  or any property or interests in property of any Asbestos
        Protected Party or Settling Asbestos Insurance Entity; and

(e)     proceeding in any manner in any place with regard to any matter that is subject to
resolution pursuant to the Asbestos PI Trust, except in conformity and compliance
therewith.

Except as provided in the Sept. 28 Plan, the Non-Debtor Affiliate Settlement Agreement,

or this Confirmation Order, nothing contained in the Sept. 28 Plan or this Confirmation Order

shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the

Reorganized Debtors, or the Asbestos PI Trust may have against any Entity in connection with or

arising out of or related to an Asbestos PI Trust Claim, all of which claims, rights, or causes of

action are reserved.

### *Asbestos PD Channeling Injunction*

33.     The Asbestos PD Channeling Injunction, set forth in Paragraph 35 of this

Confirmation Order, shall be, and hereby is, issued and approved as of the Effective Date

pursuant to section 105(a) of the Bankruptcy Code. The Asbestos PD Channeling Injunction

applies to all Class 7 Claims.

34.     The sole recourse of the holder of a Class 7 Claim on account of such Class 7

Claim shall be to the Reorganized Debtors pursuant to the provisions of the Asbestos PD

Channeling Injunction, set forth in Paragraph 35 of this Confirmation Order, and the Sept. 28

Plan, and such holder shall have no right whatsoever at any time to assert its Class 7 Claim

against any other Asbestos Protected Party, any Settling Asbestos Insurance Entity, the Asbestos

PI Trust, or any property or interest in property of the Debtors, the Reorganized Debtors, or any

other Asbestos Protected Party. The definitions of Debtors, Reorganized Debtors, Asbestos

Protected Parties, and Settling Asbestos Insurance Entities are found in the Sept. 28 Plan and

reproduced in Exhibit A hereto.

35.   Without limiting the foregoing, from and after the Effective Date, all holders of
Class 7 Claims shall be permanently and forever enjoined from taking any of the following
actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of,
on, or with respect to any Class 7 Claim other than from the Reorganized Debtors, including:

(a)   commencing, conducting, or continuing in any manner, directly or indirectly, any
      suit, action, or other proceeding (including a judicial, arbitration, administrative,
      or other proceeding) in any forum against or affecting any Asbestos Protected
      Party (other than the Reorganized Debtors), any Settling Asbestos Insurance
      Entity, the Asbestos PI Trust, or any property or interests in property of any
      Asbestos Protected Party or Settling Asbestos Insurance Entity;

(b)   enforcing, levying, attaching (including any prejudgment attachment), collecting,
      or otherwise recovering by any means or in any manner, whether directly or
      indirectly, any judgment, award, decree, or other order against any
      Asbestos Protected Party (other than the Reorganized Debtors), any Settling
      Asbestos Insurance Entity, the Asbestos PI Trust, or any property or interests in
      property of any Asbestos Protected Party or Settling Asbestos Insurance Entity;

(c)   creating, perfecting, or otherwise enforcing in any manner, directly or indirectly,
      any Encumbrance against any Asbestos Protected Party (other than the
      Reorganized Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI
      Trust, or any property or interests in property of any Asbestos Protected Party or
      Settling Asbestos Insurance Entity;

(d)   setting off, seeking reimbursement of, contribution from, or subrogation against,
      or otherwise recouping in any manner, directly or indirectly, any amount against

- 14 -

any liability owed to any Asbestos Protected Party (other than the Reorganized
Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI Trust, or any
property or interests in property of any Asbestos Protected Party or Settling
Asbestos Insurance Entity; and

(e)     proceeding in any other manner with regard to any matter involving one or more
Class 7 Claims except in conformity and compliance with the Sept. 28 Plan.

Except as provided in the Sept. 28 Plan, the Non-Debtor Affiliate Settlement Agreement,
or this Confirmation Order, nothing contained in the Sept. 28 Plan or this Confirmation Order
shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors or
the Reorganized Debtors may have against any Entity in connection with or arising out of or
related to a Class 7 Claim, all of which claims, rights, or causes of action are reserved.

### *Asbestos Insurance Entity Injunction*

36.     In order to protect the Asbestos PI Trust and to preserve its assets, as described in
Section 7.4.2 of the Sept. 28 Plan, the Asbestos Insurance Entity Injunction, set forth in
Paragraph 37 of this Confirmation Order, shall be, and hereby is, issued and approved as of the
Effective Date pursuant to the equitable jurisdiction and power of this Court under Section
105(a) of the Bankruptcy Code; provided, however, that, except as otherwise provided in this
Confirmation Order or any Asbestos PI Settlement Agreement, (i) the Asbestos Insurance Entity
Injunction shall not impair in any way the Insurer Misconduct Actions; (ii) the Asbestos PI Trust
shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope
of, the Asbestos Insurance Entity Injunction with respect to any Asbestos Insurance Entity upon
express written notice to such Asbestos Insurance Entity; and (iii) the Asbestos Insurance Entity

- 15 -

Injunction is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos
Insurance Entity is a third-party beneficiary of the Asbestos Insurance Entity Injunction.

37.     Subject to the provisions of Sections 7.3 and 7.4.1 of the Sept. 28 Plan and
Paragraph 43 of this Confirmation Order, from and after the Effective Date, all Entities (not
including the Asbestos PI Trust, the Asbestos Insurance Entities, the Reorganized Debtors and
the Insurance Contributors) that have held or asserted, that hold or assert, or that may in the
future hold or assert any Claim, Demand or cause of action (including any Asbestos PI Trust
Claim or any Claim or Demand for or respecting any Trust Expenses) against any Asbestos
Insurance Entity, as this term is defined in the Sept. 28 Plan and includes, among others, the
Settling Asbestos Insurance Entities that are listed on Exhibit A hereto, based upon, relating to,
arising out of, or in any way connected with any Claim, Demand, Asbestos PI Insurance Rights,
Subject Asbestos Insurance Policies, or Subject Asbestos Insurance Settlement Agreements
whenever and wherever arisen or asserted (including all Claims in the nature of or sounding in
tort, or under contract, warranty, or any other theory of law, equity, or admiralty) shall be
enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or
receiving payments, satisfaction, or recovery with respect to any such Claim, Demand, or cause
of action, including:

(a)     commencing, conducting, or continuing, in any manner, directly or indirectly, any
         suit, action, or other proceeding of any kind (including a judicial, arbitration,
         administrative, or other proceeding) in any forum with respect to any such Claim,
         Demand, or cause of action against any Asbestos Insurance Entity, or against the
         property of any Asbestos Insurance Entity, with respect to any such Claim,
         Demand, or cause of action;

- 16 -

(b)     enforcing, levying, attaching, collecting, or otherwise recovering, by any means
        or in any manner, whether directly or indirectly, any judgment, award, decree, or
        other order against any Asbestos Insurance Entity, or against the property of any
        Asbestos Insurance Entity, with respect to any such Claim, Demand, or cause of
        action;

(c)     creating, perfecting, or enforcing in any manner, directly or indirectly, any
        encumbrance against any Asbestos Insurance Entity, or the property of any
        Asbestos Insurance Entity, with respect to any such Claim, Demand, or cause of
        action; and

(d)     except as otherwise specifically provided in the Sept. 28 Plan, asserting or
        accomplishing any setoff, right of subrogation, indemnity, contribution, or
        recoupment of any kind, directly or indirectly, against any obligation of any
        Asbestos Insurance Entity, or against the property of any Asbestos Insurance
        Entity, with respect to any such Claim, Demand or cause of action;

provided, however, that except as otherwise provided in this Confirmation Order or any Asbestos

PI Settlement Agreement, (i) the Asbestos Insurance Entity Injunction, set forth in this Paragraph

37, shall not impair in any way the Insurance Misconduct Actions; (ii) the Asbestos PI Trust

shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope

of, the Asbestos Insurance Entity Injunction with respect to any Asbestos Insurance Entity upon

express written notice to such Asbestos Insurance Entity; and (iii) the Asbestos Insurance Entity

Injunction is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos

Insurance Entity is a third-party beneficiary of the Asbestos Insurance Entity Injunction.

- 17 -

38.     Notwithstanding anything to the contrary above, the Asbestos Insurance Entity

Injunction, set forth in Paragraph 37 of this Confirmation Order shall not enjoin:

(a)     the rights of Entities to the treatment accorded them under Articles 2 and 3 of the

        Sept. 28 Plan, as applicable, including the rights of Entities with Asbestos PI

        Trust Claims or Class 7 Claims to assert such Asbestos PI Trust Claims or Class 7

        Claims against the Asbestos PI Trust or the Reorganized Debtors, as applicable, in

        accordance with the Asbestos PI Trust Distribution Procedures or the Asbestos

        PD Channeling Injunction and the terms of the Sept. 28 Plan;

(b)     the rights of Entities to assert any Claim, debt, obligation, or liability for payment

        of Trust Expenses against the Asbestos PI Trust;

(c)     the rights of the Asbestos PI Trust and the Reorganized Debtors and the Insurance

        Contributors (to the extent permitted or required under the Sept. 28 Plan or the

        Asbestos Insurance Rights Assignment Agreement) to prosecute any action based

        on or arising from Asbestos PI Insurance Rights;

(d)     the rights of the Asbestos PI Trust and the Reorganized Debtors to assert any

        claim, debt, obligation, or liability for payment against an Asbestos Insurance

        Entity based on or arising from Asbestos PI Insurance Rights; and

(e)     the rights of Entities to assert any claim, debt, right, obligation, or liability that (i)

        arises under or relates to any insurance policy that is not a Subject Asbestos

        Insurance Policy, (ii) has not been released or otherwise extinguished by a Subject

        Insurance Settlement Agreement, and (iii) is not subject to the Asbestos PI

        Channeling Injunction, set forth in Paragraph 32 of this Confirmation Order

- 18 -

and/or the Asbestos PD Channeling Injunction, set forth in Paragraph 35 of this
Confirmation Order.

***Other Injunctions***

      39.    In accordance with section 346 of the Bankruptcy Code, for purposes of any state
or local law imposing a tax, income will not be realized by the Debtors or Reorganized Debtors
by reason of forgiveness or discharge of indebtedness resulting from the consummation of the
Sept. 28 Plan. As a result, each state or local taxing authority that was provided with or is
chargeable with notice of this proceeding is permanently enjoined, after the Confirmation Date,
from commencing, continuing, or taking any act to impose, collect, or recover in any manner any
tax against the Debtors or Reorganized Debtors arising by reason of the forgiveness or discharge
of indebtedness under the Sept. 28 Plan.

***Other Provisions Relating To Injunctions***

      40.    All of the injunctions and/or automatic stays provided for, in or in connection
with the Chapter 11 Cases, whether pursuant to sections 105 and 362 of the Bankruptcy Code, or
any other provision of the Bankruptcy Code or other applicable law, in existence immediately
prior to the Confirmation Date shall remain in full force and effect until the injunctions
contemplated by the Sept. 28 Plan and set forth in Paragraphs 32, 35, 37, and 39 become
effective subject to Paragraph 43 hereof. In addition, on and after the Confirmation Date, the
Reorganized Debtors may seek such further orders as they may deem necessary or appropriate to
preserve the status quo during the time between the Confirmation Date and the Effective Date.

      41.    Each of the injunctions contemplated by the Sept. 28 Plan and set forth in
Paragraphs 32, 35, 37, and 39 of this Confirmation Order shall become effective on the Effective

- 19 -

Date and shall continue in effect at all times thereafter except as otherwise provided by the Sept. 28 Plan or herein.

42.    Notwithstanding anything to the contrary contained in the Sept. 28 Plan, all actions in the nature of those to be enjoined by the injunctions set forth in Paragraphs 32, 35, 37, and 39 shall be enjoined during the period between the Confirmation Date and the Effective Date.

## Other Provisions

43.    Notwithstanding any other provision of the Sept. 28 Plan or this Confirmation Order to the contrary (other than this Paragraph 43), nothing in the Sept. 28 Plan or this Confirmation Order shall have the effect of (i) limiting or prejudicing in any way the rights of Citgo Petroleum Corporation and its subrogated insurers ("Citgo"), PDV Midwest Refining L.L.C. ("PDVMR") or Lloyd's Intervenors as identified in that certain Joint Stipulation and Accord among those parties, The Babcock & Wilcox Company ("B&W"), McDermott International, Inc., and other McDermott Entities dated December 21, 2005, (the "Joint Stipulation"), as approved by the Bankruptcy Court on December 22, 2005, or (ii) precluding or hindering Citgo, PDVMR or Lloyd's Intervenors from pursuing claims against the Reorganized Debtors, any of their insurers or any third parties as set forth in the Joint Stipulation. Without limiting the generality of the foregoing, (A) any and all rights of Citgo, PDVMR and Lloyd's Intervenors against insurers or under insurance policies relating to their respective claims asserted in or arising out of the litigation styled *Citgo Petroleum Corp., et al. v. McDermott Int'l, Inc., et al.,* Cause No. 03-L 009812 and pending before the Circuit Court of Cook County, Illinois (the "Illinois Lawsuit," and the claims of Citgo, PDVMR and Lloyd's Intervenors asserted therein or arising therefrom, the "Illinois Lawsuit Claims"), are hereby fully preserved

- 20 -

(subject to the Joint Stipulation) and shall not under any circumstances be deemed enjoined,
discharged or modified in any way by the terms of the Sept. 28 Plan or this Confirmation Order
and (B) notwithstanding the Sept. 28 Plan or this Confirmation Order or any of the injunctions
contemplated by the Sept. 28 Plan or set forth in Paragraphs 32, 35, 37, and 39 of this
Confirmation Order, B&W and the other Reorganized Debtors may be pursued as defendants in
the Illinois Lawsuit with respect to the Illinois Lawsuit Claims pursuant to the terms of the Joint
Stipulation, and Citgo, PDVMR and Lloyd's Intervenors may pursue any and all of their rights
under the applicable insurance policies of B&W and the Reorganized Debtors consistent with the
terms of the Joint Stipulation. Nothing in this Confirmation Order, the Sept. 28 Plan or the Joint
Stipulation shall constitute or be deemed a release of any entity which has provided,
underwritten, issued or subscribed to any of the policies relating to or covering the Illinois
Lawsuit Claims with respect to such entity's obligations under such policies, which policies are
referenced in the Joint Stipulation. This Paragraph 43 shall not reduce, limit or eliminate the
effects of the Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this Confirmation
Order, the Asbestos Insurance Entity Injunction, set forth in Paragraph 37 of this Confirmation
Order, and/or the Asbestos PD Channeling Injunction, set forth in Paragraph 35 of this
Confirmation Order with respect to any Asbestos PI Trust Claim or Class 7 Claim under or
against any Subject Asbestos Insurance Policy or any Settling Asbestos Insurance Entity.

44.    Upon the Effective Date, the Asbestos PI Trust shall be bound by the terms of the
Certain Law Firms' Settlement Agreement dated as of December 22, 2005, and the trustees of
the Asbestos PI Trust shall execute an assumption and acknowledgment of the Asbestos PI
Trust's obligations under the Certain Law Firms' Settlement Agreement.

- 21 -

45.     Except for executory contracts that the Debtors reject prior to the Effective Date
or designate as being subject to rejection in connection with the Effective Date, as set forth in
section 8.1 of the Sept. 28 Plan, and in accordance with section 1123(b)(2) of the Bankruptcy
Code, all executory contracts and unexpired leases not previously assumed by the Debtors
pursuant to section 365 of the Bankruptcy Code shall be deemed to have been assumed by the
Reorganized Debtors on the Effective Date, provided that nothing in Article 8 of the Sept. 28
Plan shall (1) constitute a reinstatement, continuation or assumption of any warranty provision,
guaranty or any other contractual or other obligation, Demand or Claim by the Reorganized
Debtors to the extent that the Claim, Demand or obligation constitutes an Asbestos Property
Damage Claim, an Asbestos Personal Injury Claim, an Indirect Asbestos PI Claim, an Indirect
Asbestos PD Claim, or an Apollo/Parks Township Claim or (2) limit, restrict or otherwise impair
the releases afforded to the MII Indemnified Parties that are granted elsewhere in the Sept. 28
Plan or other Plan Documents.

46.     Professionals or other Entities requesting compensation or reimbursement of
expenses pursuant to sections 327, 328, 330, 331, and 503(b) of the Bankruptcy Code (including
compensation requested pursuant to section 503(b)(3) and (4) of the Bankruptcy Code by any
professional or other Entity for making a substantial contribution in the Chapter 11 Cases) must
file and serve on the Reorganized Debtors and on such Entities who are designated by the
Bankruptcy Rules an application for final allowance of compensation and reimbursement of
expenses no later than forty-five (45) days after the last date of the calendar month in which the
Effective Date occurs.

47.     Holders of Administrative Expense Claims based on obligations incurred by the
Debtors in the ordinary course of their businesses shall not be required to file or serve any

- 22 -

request for payment of such Claims and, to the extent such Administrative Expense Claims are due and owing, they shall be paid in full by the Debtors or such obligations shall be performed by the Reorganized Debtors, when due in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, if any.

48.     If the rejection of an executory contract or unexpired lease pursuant to section 8.1 of the Sept. 28 Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claims shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, their respective successors or their respective properties unless a Proof of Claim is filed on or before the later to occur of: (a) thirty (30) days after the date of entry of an order approving such rejection; or (b) thirty (30) days after the Effective Date of the Sept. 28 Plan. Objections to Claims filed as a result of the rejection of an executory contract or unexpired lease may be filed by the Reorganized Debtors within such reasonable period of time as the Court may order.

49.     Except as otherwise provided in this Confirmation Order or the Sept. 28 Plan, all Claims shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, their respective successors, or their respective properties.

50.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have jurisdiction in accordance with the Sept. 28 Plan and the other Plan Documents. The Bankruptcy Court shall also retain and have jurisdiction over the adversary proceeding captioned *Babcock & Wilcox Company v. McGriff Seibels & Williams, Inc. et al*, Adv. No. 05-01225, E.D. La. Bankr., filed Sept. 1, 2005.

51.     The Asbestos PI Trust shall be subject to the continuing jurisdiction of the

Bankruptcy Court in accordance with the requirements of section 468B of the IRC and the

regulations issued pursuant thereto.

52.     None of the Reorganized Debtors, the Debtors, the Non-Debtor Subsidiaries, the

Non-Debtor Affiliates, the MII Indemnified Parties, the Trustees of the Asbestos PI Trust, the

Asbestos Claimants' Committee, the Unsecured Creditors' Committee, the Future Claimants'

Representative, the Apollo FCR or any of their respective Representatives are to have or incur

any liability to any Entity for any act or omission in connection with or arising out of the

negotiation of the Sept. 28 Plan or the settlement provided in the Non-Debtor Affiliate

Settlement Agreement, the pursuit of confirmation of the Sept. 28 Plan, the consummation of the

Sept. 28 Plan or the settlement provided in the Non-Debtor Affiliate Settlement Agreement, or

the administration of the Sept. 28 Plan or the property to be distributed under the Sept. 28 Plan

(including any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and

liabilities based on conduct that constituted or may have constituted ordinary or gross negligence

or reckless, willful, or wanton misconduct − but not, in the case of any natural person included

among the Entities to which Section 11.7 of the Sept. 28 Plan applies, any claims against that

person based on intentional misconduct of that person that directly resulted in the unjust

enrichment of that person − of any of the Debtors, the Non-Debtor Subsidiaries, the Non-Debtor

Affiliates, the MII Indemnified Parties, the Trustees of the Asbestos PI Trust, the Asbestos

Claimants' Committee, the Unsecured Creditors' Committee, the Future Claimants'

Representative, the Apollo FCR or any of their respective Representatives or any conduct for

which any of those Entities may be deemed to have strict liability under any applicable law).  In

- 24 -

all respects, they will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Sept. 28 Plan.

53.    Except as otherwise specifically provided in the Sept. 28 Plan, on and after the Effective Date, and subject to Paragraph 43 hereof, each holder of a Claim (i) who has accepted the Sept. 28 Plan, or (ii) who is entitled to receive a Distribution of property under the Sept. 28 Plan shall be deemed to have unconditionally released the Debtors, the Reorganized Debtors, the Unsecured Creditors' Committee, the Asbestos Claimants' Committee, the Future Claimants' Representative, the Non-Debtor Affiliates, the MII Indemnified Parties, and the Apollo FCR from any and all claims (as defined in Section 101(5) of the Bankruptcy Code), obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Sept. 28 Plan or any related agreements, instruments, or other documents (including any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities based on conduct that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, the Reorganized Debtors, the Non-Debtor Subsidiaries, the Non-Debtor Affiliates, the MII Indemnified Parties, the Trustees of the Asbestos PI Trust, the Asbestos Claimants' Committee, the Unsecured Creditors' Committee, the Future Claimants' Representative, the Apollo FCR, or any of their respective Representatives

- 25 -

or any conduct for which any of those Entities may be deemed to have strict liability under any applicable law).

54.     Effective as of the Effective Date, except as otherwise provided in this Confirmation Order, the MII Indemnified Parties and the Non-Debtor Subsidiaries shall be released from all claims to the extent provided in the Sept. 28 Plan and the Non-Debtor Affiliate Settlement Agreement.

55.     Effective as of the Effective Date, the Asbestos PI Trust and the Reorganized Debtors shall have all of the obligations to indemnify the MII Indemnified Parties pursuant to and in accordance with the Non-Debtor Affiliate Settlement Agreement.

56.     On the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable it to implement effectively: (a) the provisions of the Sept. 28 Plan; and (b) the creation of the Asbestos PI Trust.

57.     On the Effective Date, the ACC and the Unsecured Creditors' Committee shall be released and discharged as provided in section 11.6 of the Sept. 28 Plan.

58.     On or before the Effective Date, all fees payable pursuant to 28 U.S.C. § 1930(a)(6), will be paid by the applicable Debtors or Reorganized Debtors. All fees payable pursuant to 28 U.S.C. § 1930(a)(6) will thereafter be paid by the Reorganized Debtors in accordance with applicable law until the Chapter 11 Cases are converted, dismissed, closed or final decreed pursuant to 11 U.S.C. § 350. In addition, the Reorganized Debtors shall file any and all post-confirmation reports in accordance with Bankruptcy Rule 2015, the United States trustee guidelines and any other applicable law.

59.     Except as otherwise expressly provided in the Sept. 28 Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty, or late charge arising after the Petition Date shall be Allowed on any Claim or Equity Interest.

60.     No attorneys' fees, Non-Compensatory Damages, penalties, or interest shall be paid with respect to any Claim or Equity Interest except as Allowed by a Final Order of the Bankruptcy Court or in accordance with the terms of the Asbestos PI TDP.

61.     On or before the Effective Date, the applicable Debtors, Reorganized Debtors and their respective subsidiaries are authorized to enter into agreements and other documents evidencing the Exit Financing and to grant liens and security interests in substantially all of their assets to the applicable secured parties as contemplated by such agreements and documents, and such agreements, documents, liens and security interests are hereby approved. All fees, costs and expenses paid or to be paid by B&W to Credit Suisse and the other agents and lenders in connection with the Exit Financing are hereby ratified and approved. In the event any of the agreements and other documents evidencing the Exit Financing are entered into by the Debtors prior to the Effective Date, they shall be deemed assumed by the Reorganized Debtors as of the Effective Date. Notwithstanding anything in the Sept. 28 Plan to the contrary, the Bankruptcy Court's retention of jurisdiction pursuant to this Confirmation Order shall not extend to the enforcement of the agreements and other documents evidencing the Exit Financing or ancillary thereto or any rights or remedies relating thereto after the Effective Date.

62.     The failure to reference or discuss any particular provision of the Sept. 28 Plan in this Confirmation Order shall have no effect on the validity, binding effect, and enforceability of such provision and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Sept. 28 Plan.

63. Unless this Confirmation Order is stayed pending appeal, its reversal or modification shall not affect the validity of the Sept. 28 Plan, the Plan Documents, or any other agreement, document, instrument, or action authorized by this Confirmation Order or under the Sept. 28 Plan as to the Debtors, Reorganized Debtors, the Asbestos PI Trust or any other Entity acting in good faith, whether or not that Entity knows of the appeal.

64. Notwithstanding any closing of the Chapter 11 Cases, any of the Debtors, the Reorganized Debtors, the Asbestos PI Trust, the Trust Advisory Committee, or the FCR may move, on notice to those persons on the Bankruptcy Rule 2002 Service List, to reopen the Chapter 11 Cases for the purpose of seeking relief pursuant to the retained jurisdiction of the Bankruptcy Court provided herein, in the Sept. 28 Plan or under applicable law.

65. In the event of any inconsistency between the Sept. 28 Plan and any other agreement, instrument, or document intended to implement the provisions of the Sept. 28 Plan, the provisions of the Sept. 28 Plan shall govern unless otherwise expressly provided for in such agreements, instruments or documents or this Confirmation Order. In the event of any inconsistency between and/or among the Sept. 28 Plan and this Confirmation Order, the provisions of this Confirmation Order shall govern. This Confirmation Order shall supersede any orders of this Court and the Bankruptcy Court issued prior to the Effective Date that may be inconsistent herewith.

## Insurer-Specific Provisions

### *Provisions Relating to Settling Asbestos Insurance Entities*

66. Certain Asbestos Insurance Entities have entered into settlement agreements with the Debtors, which have been approved by the Bankruptcy Court by Final Order. Those approved settlements satisfy the requirements for such settling insurers to be Settling Asbestos

- 28 -

Insurance Entities as defined in the Sept. 28 Plan because such settlement agreements: (a) are

sufficiently comprehensive to warrant treatment under Section 524(g) of the Bankruptcy Code in

the case of Asbestos PI Trust Claims or to warrant treatment under Section 105 of the

Bankruptcy Code in the case of Class 7 Claims, and (b) such settling insurers have been listed on

the schedule of Settling Asbestos Insurance Entities that is part of Exhibit A attached hereto.

67.    Certain other Asbestos Insurance Entities have entered into settlement agreements

with the Debtors, which are pending final execution and/or approval by Final Order of the

Bankruptcy Court and/or the Ontario Superior Court of Justice (Commercial List) in the Matter

of Babcock & Wilcox Canada (Court File No. 00-CL-3667). Subject to, and conditioned on,

such final execution and final court approvals, those settlement agreements will satisfy the

requirements for those settling insurers to be Settling Asbestos Insurance Entities as defined in

the Sept. 28 Plan because such settlement agreements: (a) are sufficiently comprehensive to

warrant treatment under Section 524(g) of the Bankruptcy Code in the case of Asbestos PI Trust

Claims or to warrant treatment under Section 105 of the Bankruptcy Code in the case of Class 7

Claims, and (b) such insurers have been listed on the schedule of Settling Asbestos Insurance

Entities that is part of Exhibit A attached hereto.

68.    Accordingly, the Entities identified on the Schedule of Settling Asbestos

Insurance Entities that is part of Exhibit A attached hereto, are Settling Asbestos Insurance

Entities (subject to any limitations and conditions identified thereon), entitled to all rights,

protections, and benefits provided to Settling Asbestos Insurance Entities under the Sept. 28

Plan, including any and all rights, protections and benefits provided to Settling Asbestos

Insurance Entities under the Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this

Confirmation Order, the Asbestos PD Channeling Injunction, set forth in Paragraph 35 of this Confirmation Order, and the Asbestos Insurance Entity Injunction, set forth in Paragraph 37 of this Confirmation Order.

69.     No ruling, proceeding or other matter in connection with the Sept. 28 Plan or the Chapter 11 Cases will impair, affect or modify the rights and obligations under any Asbestos PI Insurance Settlement Agreement of any party thereto.

## *Provisions Relating to Travelers Settlement Agreement[3]*

70.     The Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this Confirmation Order, applies in full to Travelers with respect to Asbestos PI Trust Claims. Travelers is entitled to all of the benefits of the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, set forth in Paragraph 35 of this Confirmation Order, and the Asbestos Insurance Entity Injunction, set forth in Paragraph 37 of this Confirmation Order.

71.     The Asbestos PD Channeling Injunction applies in full to Travelers with respect to Class 7 Claims.

72.     Consistent with Sections 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this Confirmation Order, none of the B&W/McDermott Parties, the ACC, the FCR and the Asbestos PI Trust may seek to terminate, or reduce or limit the scope of, the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, or the Asbestos Insurance Entity Injunction with respect to Travelers.

---

[3] Capitalized terms in Paragraphs 70 through 72 not defined herein or in the Sept. 28 Plan have the meanings ascribed thereto in the Settlement Agreement and Release between the B&W/McDermott Parties, the ACC, the FCR and Travelers, which was approved by the Bankruptcy Court on October 27, 2004 (the "Travelers Settlement Agreement").

- 30 -

## *Provisions Relating to the ACE Settlement Agreement[4]*

73.     The Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this Confirmation Order, applies in full to and for the benefit of the ACE Companies and their Predecessors with respect to Asbestos PI Trust Claims.

74.     The Asbestos PD Channeling Injunction, set forth in Paragraph 35 of this Confirmation Order, applies in full to and for the benefit of ACE Companies and their Predecessors with respect to Class 7 Claims.

75.     The ACE Companies shall have the right to enforce the Asbestos Insurance Entity Injunction, set forth in Paragraph 37 of this Confirmation Order with respect to the ACE Companies and their Predecessors.

76.     The ACE Parties (other than the ACE Companies) shall have the right to enforce the Asbestos Insurance Entity Injunction with respect to the ACE Parties and their Predecessors, but only with respect to insurance policies and the Prior Agreements under which (and only to the extent to which) such ACE Parties and their Predecessors are released pursuant to the ACE Settlement Agreement.

---

[4] Capitalized terms in Paragraphs 73 through 79 not defined herein or in the Sept. 28 Plan have the meanings ascribed thereto in the Settlement Agreement and Release between the B&W/McDermott Parties (other than the Asbestos PI Trust), the ACC, the FCR, and the ACE Parties (the "ACE Settlement Agreement"), which was approved by the Bankruptcy Court on December 28, 2005.

- 31 -

77.     Consistent with Sections 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this

Confirmation Order, none of the B&W/McDermott Parties, the ACC, or the FCR may seek to

terminate, or reduce or limit the scope of the Asbestos PI Channeling Injunction or the Asbestos

Insurance Entity Injunction with respect to (i) the ACE Companies and their Predecessors, or (ii)

the ACE Parties (other than the ACE Companies) and their Predecessors but only with respect to

the insurance policies and the Prior Agreements under which (and only to the extent to which)

such ACE Parties and their Predecessors are released pursuant to the ACE Settlement

Agreement.

78.     Except as released and/or modified in the ACE Settlement Agreement,

notwithstanding anything to the contrary in the Sept. 28 Plan or this Confirmation Order, the

ACE Collateral Insurance Policies, Programs and Security Agreements:

> a. To the extent they were entered into prior to the Petition Date, are deemed
>    to have been assumed by the Debtors to the extent of the Debtors' interests
>    therein pursuant to Section 365 of the Bankruptcy Code on the Effective
>    Date, and the Sept. 28 Plan constitutes a motion to assume the same as
>    executory contracts as of the Effective Date, which motion is hereby
>    granted in its entirety;
>
> b. Remain in full force and effect and survive, and remain unaffected,
>    unmodified and unimpaired by, the Sept. 28 Plan and the Confirmation
>    Order; and
>
> c. Are binding upon and enforceable against the respective parties to the
>    ACE Collateral Insurance Policies, Programs And Security Agreements,
>    including the Reorganized Debtors, in accordance with the terms and
>    conditions thereof as modified or released by the ACE Settlement
>    Agreement.

79.     Any Claim by the ACE Parties, arising under the ACE Collateral Insurance

Policies, Programs And Security Agreements, against

- 32 -

(i)     any B&W/McDermott Party, and/or

(ii)    any Entity (including any ACE Party) that issued, holds, or
        maintains any of the ACE collateral identified on Exhibit A
        of the ACE Settlement Agreement (solely in that Entity's
        capacity as such),

shall not be channeled to the Asbestos PI Trust.

## *Provisions Relating to Insurer Misconduct Actions*

80.     Notwithstanding anything in the Sept. 28 Plan, nothing in the Sept. 28 Plan or any

related documents (or in any release documents executed by holders of Asbestos PI Trust

Claims) shall extinguish, settle, waive, impair, enjoin, channel, or relinquish any Insurer

Misconduct Action against any Asbestos Insurance Entity, except as otherwise provided in this

Confirmation Order.

81.     Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this

Confirmation Order, the Asbestos Insurance Entity Injunction, set forth in Paragraph 37 of this

Confirmation Order, and the Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this

Confirmation Order, shall apply to B&W/AIG Insurer Misconduct Actions against Certain AIG

Member Companies.[5]

---

[5] The terms "B&W/AIG Insurer Misconduct Actions" and "Certain AIG Member Companies"
have the meanings ascribed to them in the Settlement Agreement and Release between the
Babcock Parties, the ACC, the FCR and Certain AIG Member Companies, which was approved
by the Bankruptcy Court on June 16, 2004. The term "New Hampshire" has the meaning
ascribed to it in the Amended and Restated Settlement Agreement and Release between the
Babcock Parties, the ACC, the FCR and Certain AIG Member Companies, for which execution
is pending (the "Amended and Restated AIG Settlement Agreement"). Notwithstanding
Paragraph 81 above, the application of the Asbestos PI Channeling Injunction to any Claims
against New Hampshire is conditioned on and subject to the final execution and approval by
Final Order of the Amended and Restated AIG Settlement Agreement.

82. Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this Confirmation Order, the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction shall apply to B&W/Underwriters Insurer Misconduct Actions against Underwriters and Equitas (in its capacity as Underwriters' reinsurer and run-off agent).[6]

83. Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this Confirmation Order, the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction shall apply to B&W/Participating London Companies Insurer Misconduct Actions against the Participating London Companies.[7]

84. Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this Confirmation Order, the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction shall apply to B&W/St. Paul Insurer Misconduct Actions against St. Paul.[8]

85. Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this Confirmation Order, the Asbestos PI Channeling Injunction, the Asbestos PD Channeling

---

[6] The terms "B&W/Underwriters Insurer Misconduct Actions," "Underwriters," and "Equitas" have the meanings ascribed to them in the Amended and Restated Settlement Agreement and Mutual Release between the Babcock Parties, the ACC, the FCR, and Underwriters, which was approved by the Bankruptcy Court on April 14, 2005.

[7] The terms "B&W/Participating London Companies Insurer Misconduct Actions" and "Participating London Companies" have the meanings ascribed to them in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and the Participating London Companies, which was approved by the Bankruptcy Court on November 28, 2005.

[8] The terms "B&W/St. Paul Insurer Misconduct Actions" and "St. Paul" have the meanings ascribed to them in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and St. Paul, which was executed on December 6, 2005, and filed for approval with the Bankruptcy Court on November 23, 2005 (the "St. Paul Settlement Agreement").

- 34 -

Injunction, and the Asbestos Insurance Entity Injunction shall apply to the B&W/Travelers Insurer Misconduct Actions against Travelers.[9]

86.     Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this Confirmation Order, the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction shall apply to B&W/ACE Companies Insurer Misconduct Actions in favor of the ACE Companies and their Predecessors.[10]

### Notice

87.     Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors shall be, and hereby are, directed to serve a notice of the (i) the entry of this Confirmation Order, (ii) the bar date for filing Claims based on the rejection of executory contracts or unexpired leases, (iii) the bar date for filing non-asbestos claims and (iv) the date for filing final applications for compensation and reimbursement of expenses hereunder. The Debtors shall submit a proposed form of notice (the "Confirmation Notice") to this Court within ten (10) days hereof.

88.     The Debtors shall be, and hereby are, directed to publish the Confirmation Notice once in The Wall Street Journal (National Edition); the Ohio Beacon Journal; the Baton Rouge Advocate; the New Orleans Times-Picayune; the Pittsburgh Post-Gazette; and the Tarentum Valley News Dispatch no later than ten (10) days after the Confirmation Date.

89.     No later than ten (10) days after the Effective Date, the Debtors shall publish once in The Wall Street Journal (National Edition); the Ohio Beacon Journal; the Baton Rouge

---

[9] The term "B&W/Travelers Insurer Misconduct Actions" has the meaning ascribed to it in the Travelers Settlement Agreement.

[10] The term "B&W/ACE Companies Insurer Misconduct Actions" has the meaning ascribed to it in the ACE Settlement Agreement.

- 35 -

Advocate; the New Orleans Times-Picayune; the Pittsburgh Post-Gazette; and the Tarentum

Valley News Dispatch notice of the occurrence of the Effective Date of the Sept. 28 Plan, which

notice shall state that the Apollo/Parks Township Claims are not affected by the Sept. 28 Plan

and shall reference the 30-day extension to file Apollo/Parks Township Claims against the

Debtors pursuant to Section 108 of the Bankruptcy Code. The Debtors will send the Apollo FCR

and his counsel an affidavit of publication from the Debtors' noticing agent confirming

publication. The Debtors will consult with the Apollo FCR regarding the content, timing and

size of the publication and any disputes arising with respect to such publication shall be resolved

by the Bankruptcy Court.

90.    A copy of this Confirmation Order shall be immediately served on the parties

listed on the 2002 Notice List.

91.    This Confirmation Order is hereby declared to be in recordable form and shall be

accepted by any recording officer for filing and recording purposes without further or additional

orders, certifications, or other supporting documents.

92.    This Court would like to express its appreciation to Mr. Justice James Farley of

the Ontario Superior Court of Justice for presiding over the ancillary proceedings in Canada and

would again seek his assistance in recognizing this order and giving effect to it in Canada.


THIS ORDER is hereby ENTERED in New Orleans, Louisiana on

Jan. 17,_____, 2006

_____
The Honorable Sarah S. Vance
United States District Judge

## EXHIBIT A

### Definitions of Parties Protected by the
### Asbestos PI Channeling Injunction and the Asbestos PD Channeling Injunction

1.    "Debtors" means The Babcock & Wilcox Company ("B&W"), Americon, Inc., Diamond
      Power International, Inc., and the Babcock & Wilcox Construction Co., Inc.

2.    "Reorganized Debtors" means the Debtors, or any successors in interest thereto, from and
      after the Effective Date of the Sept. 28 Plan.

3.    "Asbestos Protected Parties" means

      a)  the Debtors;

      b)  the Reorganized Debtors (except as to Class 7 Claims);

      c)  the Non-Debtor Subsidiaries (as defined below);

      d)  the MII Indemnified Parties (as defined below);

      e)  any Entity that, pursuant to the Sept. 28 Plan or otherwise after the Effective Date
          of the Sept. 28 Plan, becomes a direct or indirect transferee of, or successor to,
          any of the Debtors, the Reorganized Debtors, the Non-Debtor Subsidiaries, the
          Non-Debtor Affiliates (as defined below), or the MII Indemnified Parties, or any
          of their respective assets (but only to the extent that liability is asserted to exist as
          a result of its becoming such a transferee or successor);

      f)  any Entity that, pursuant to the Sept. 28 Plan or otherwise after the Effective Date
          of the Sept. 28 Plan, makes a loan to any of the Debtors, the Reorganized Debtors,
          the Non-Debtor Subsidiaries, the Non-Debtor Affiliates, the MII Indemnified
          Parties, the Asbestos PI Trust (as defined below), or to a successor to, or
          transferee of any of the respective assets of, the Debtors, the Reorganized
          Debtors, the Non-Debtor Subsidiaries, the Non-Debtor Affiliates, the MII
          Indemnified Parties, or the Asbestos PI Trust (but only to the extent that liability
          is asserted to exist by reason of such Entity's becoming such a lender or to the
          extent any pledge of assets made in connection with such a loan is sought to be
          upset or impaired);

      g)  each of the respective present and future Affiliates and Subsidiaries of each of the
          Debtors, each of the Reorganized Debtors, each of the Non-Debtor Subsidiaries,
          each of the Non-Debtor Affiliates, and each of the MII Indemnified Parties; or

      h)  each of the respective past, present, and future Representatives of each of the
          Debtors, each of the Reorganized Debtors, each of the Non-Debtor Subsidiaries,
          each of the Non-Debtor Affiliates, and each of the MII Indemnified Parties.

- 1 -

4.    "Non-Debtor Subsidiaries" means each of the following Entities:

Americon Equipment Services, Inc.
Applied Synergistics, Inc.
B&W Service Company
Babcock & Wilcox Canada Ltd.
Babcock & Wilcox China Holdings, Inc.
Babcock & Wilcox Denmark Holdings, Inc.
Babcock & Wilcox do Brasil Limitada
Babcock & Wilcox Ebensburg Power, Inc.
Babcock & Wilcox Equity Investments, Inc.
Babcock & Wilcox Foreign Sales Corporation
Babcock & Wilcox India Private Limited
Babcock & Wilcox International Sales and Service Corporation
Babcock & Wilcox International, Inc.
Babcock & Wilcox Volund ApS
Babcock & Wilcox Volund France SAS
Diamond Operating Co., Inc.
Diamond Power Australia Holdings, Inc.
Diamond Power China Holdings, Inc.
Diamond Power do Brasil Limitada
Diamond Power Equity Investments, Inc.
Diamond Power Finland OY
Diamond Power Importacao e Exportacao Ltda.
Diamond Power Machine (Hubei) Co., Inc.
Diamond Power Services S.E.A. Ltd.
Diamond Power Specialty (Proprietary) Limited
Diamond Power Specialty Limited
Diamond Power-Sturm GmbH
Diamond Power Sweden Aktiebolag
Diamond Power Sweden AB
Ebensburg Investors Limited Partnership
Ebensburg Power Company
Ejendomsaktieselskabet Falkevej2
LT Produkter i Skutskar AB
National Ecology Company
North County Recycling, Inc.
P. T. Babcock & Wilcox Asia
Palm Beach Resource Recovery Corporation
Power Systems Operations, Inc.
Revloc Reclamation Service, Inc.

5.    "MII Indemnified Parties" means

a)  McDermott International, Inc. ("MII");

b)  all Entities that Schedule 1.1(b) to the Non-Debtor Affiliate Settlement Agreement identifies as Affiliates of MII (listed below);

c)  all natural persons who are past or present Affiliates of MII or any of its Subsidiaries;

d)  all future Affiliates of MII or any of its Subsidiaries;

e)  Hudson Products Corporation, a Delaware corporation, and all of its present Subsidiaries;

f)  all the respective Representatives of the Entities described in clauses (a) through (e) of this definition,

g)  all the respective past, present and future Representatives of any of B&W and its Subsidiaries, and

h)  all the respective successors (by operation of law or otherwise) of the Entities described in clauses (a) through (g) of this definition.

The Affiliates identified on Schedule 1.1(b) to the Non-Debtor Affiliate Settlement Agreement include the following Entities:

| Name | Jurisdiction of Organization |
|---|---|
| B&W de Panama, Inc. | Panama |
| B&W SOFC G.P., Inc. | Delaware |
| B&W SOFC L.P., Inc. | Delaware |
| Babcock & Wilcox Asia Investment Company | Delaware |
| Babcock & Wilcox Asia Limited | Hong Kong |
| Babcock & Wilcox Beijing Company, Ltd. | China |
| Babcock & Wilcox China Investment Co., Inc. | Panama |
| Babcock & Wilcox Finance, Inc. | Delaware |
| Babcock & Wilcox HRSG Company | Delaware |
| Babcock & Wilcox International Investments Co., Inc. | Panama |
| Babcock & Wilcox Investment Company | Delaware |
| Babcock & Wilcox Investment Company | Louisiana |
| Barmada McDermott (L) Limited | Malaysia |
| Barmada McDermott Sdn. Bhd. | Malaysia |
| Bechtel B&W Idaho, LLC | Delaware |
| Bechtel BWXT Idaho, LLC | Delaware |
| Boudin Insurance Company, Ltd | Bermuda |
| Brick Insurance Company, Ltd. | Bermuda |
| BWX Technologies, Inc. | Delaware |
| BWXT Federal Services, Inc. | Delaware |
| BWXT Hanford Company | Delaware |
| BWXT of Idaho, Inc. | Delaware |

- 3 -

| Name | Jurisdiction of Organization |
|---|---|
| BWXT of Ohio, Inc. | Delaware |
| BWXT Pantex, L.L.C. | Delaware |
| BWXT Protec, Inc. | Delaware |
| BWXT Savannah River Company | Delaware |
| BWXT Services, Inc. | Delaware |
| BWXT Washington, Inc. | Delaware |
| BWXT Y-12, L.L.C. | Delaware |
| Caspian Offshore Fabricators LLC | Azerbaijan Republic |
| Cayenne Insurance Company, Ltd. | Bermuda |
| Ceramatec G.P., Inc. | Utah |
| Ceramatec SOFC, Inc. | Utah |
| Chartering Company (Singapore) Pte. Ltd. | Singapore |
| Columbia Basin Ventures, LLC | Delaware |
| Construcciones Maritimas Mexicanas, S.A. de C.V. | Mexico |
| Creole Insurance Company, Ltd. | Bermuda |
| CTR Solutions, LLC | Delaware |
| Deep Oil Technology, Inc. | California |
| Deepwater Marine Technology, L.L.C. | Cayman Islands |
| Delta Catalytic (Holland) B.V. | Netherlands |
| Delta Hudson Engineering Corporation | Texas |
| Delta Hudson International, Inc. | Panama |
| DHEC Corporation | Texas |
| Diamond Power (Australia) Pty. Limited | Australia |
| Diamond Power Hubei Machine Company, Ltd. | China |
| DynMcDermott Petroleum Operations Company | Louisiana |
| Eastern Marine Services, Inc. | Panama |
| Ebensburg Investors Limited Partnership* | Pennsylvania |
| Ebensburg Power Company* | Pennsylvania |
| First Emirates Trading Corporation | United Arab Emirates |
| FloaTEC, LLC | Delaware |
| Global Energy -McDermott Limited | British Virgin Islands |
| Greenbank Terotech Pty. Limited | Australia |
| Gumbo Insurance Company, Ltd. | Bermuda |
| Halley & Mellowes Pty. Ltd. | Australia |
| Honore Insurance Company, Ltd. | Bermuda |
| Hudson Engineering (Canada), Ltd. | Canada |
| Hudson Engineering Company, Inc. | Delaware |
| Hudson Engineering International, Inc. | Panama |
| Hydro Marine Services, Inc. | Panama |
| Initec, Astano y McDermott International Inc., S.A. | Spain |
| International Vessels Ltd. | Mauritius |

- 4 -

| Name | Jurisdiction of Organization |
|---|---|
| J. Ray McDermott (Aust.) Holding Pty. Limited | Australia |
| J. Ray McDermott (Nigeria) Ltd. | Nigeria |
| J. Ray McDermott Asia Pacific Pte. Ltd. | Singapore |
| J. Ray McDermott Contractors, Inc. | Panama |
| J. Ray McDermott de Mexico, S.A. de C. V. | Mexico |
| J. Ray McDermott Diving International, Inc. | Panama |
| J. Ray McDermott Eastern Hemisphere Limited | Mauritius |
| J. Ray McDermott Engineering Holdings, Inc. | Delaware |
| J. Ray McDermott Engineering, LLC | Texas |
| J. Ray McDermott Far East, Inc. | Panama |
| J. Ray McDermott Contractors, Inc. | Texas |
| J. Ray McDermott Holdings, Inc. | Delaware |
| J. Ray McDermott International Services Limited | United Kingdom |
| J. Ray McDermott International Vessels, Ltd. | Cayman Islands |
| J. Ray McDermott International, Inc. | Panama |
| J. Ray McDermott Investments B.V. | Netherlands |
| J. Ray McDermott Middle East (Indian Ocean), Ltd. | Mauritius |
| J. Ray McDermott Middle East, Inc. | Panama |
| J. Ray McDermott Newfoundland, Ltd. | Newfoundland |
| J. Ray McDermott Solutions, Inc. | Delaware |
| J. Ray McDermott Spars, Inc. | Delaware |
| J. Ray McDermott Technology, Inc. | Delaware |
| J. Ray McDermott Underwater Services, Inc. | Delaware |
| J. Ray McDermott Underwater Services, Inc. | Panama |
| J. Ray McDermott West Africa Holdings, Inc. | Delaware |
| J. Ray McDermott West Africa, Inc. | Delaware |
| J. Ray McDermott, Inc. | Delaware |
| J. Ray McDermott, S.A. | Panama |
| Lagniappe Insurance Company, Ltd. | Bermuda |
| Macshelf Ltd | United Kingdom |
| Malmac Sdn. Bhd. | Malaysia |
| Marine Contractors, Inc. | Panama |
| McDermott (Malaysia) Sendirian Berhad | Malaysia |
| McDermott Abu Dhabi Offshore Construction Company | United Arab Emirates |
| McDermott Amur, Inc. | Panama |
| McDermott APC Services Limited | United Kingdom |
| McDermott Arabia Company Limited | Saudi Arabia |
| McDermott Azerbaijan, Inc. | Panama |
| McDermott Azerbaijan Marine Construction, Inc. | Panama |
| McDermott Azerbaijan Pipelines, Inc. | Panama |
| McDermott Caspian Contractors, Inc. | Panama |
| McDermott Cayman Ltd. | Cayman Islands |
| McDermott Central & Eastern Europe, Inc. | Panama |

- 5 -

| Name | Jurisdiction of Organization |
|---|---|
| McDermott Employee Relief Fund | Texas |
| McDermott Far East, Inc. | Panama |
| McDermott Gulf Operating Company, Inc. | Panama |
| McDermott Holdings (U.K.) Limited | United Kingdom |
| McDermott Incorporated | Delaware |
| McDermott Industries (Aust.) Pty. Limited | Australia |
| McDermott International Asset Management, Ltd. | Bahamas |
| McDermott International B.V. | Netherlands |
| McDermott International Beijing, Inc. | Panama |
| McDermott International Engineering & Construction Co., Ltd. | Cayman Islands |
| McDermott International Investments Co., Inc. | Panama |
| McDermott International Marine Investments N.V. | Netherlands Antilles |
| McDermott International Marketing, Inc. | Panama |
| McDermott International Project Management, Inc. | Panama |
| McDermott International Trading (Holland1) B.V. | Netherlands |
| McDermott International Trading Co., Inc. | Panama |
| McDermott Marine Construction Limited | United Kingdom |
| McDermott Marine UK Limited | United Kingdom |
| McDermott Offshore Services Company, Inc. | Panama |
| McDermott Old JV Office, Inc. | Panama |
| McDermott Overseas Investment Co. N.V. | Netherlands Antilles |
| McDermott Overseas, Inc. | Panama |
| McDermott Sakhalin, Inc. | Panama |
| McDermott Servicos de Construcao, Ltda. | Brazil |
| McDermott Shipbuilding, Inc. | Delaware |
| McDermott South East Asia Pte. Ltd. | Singapore |
| McDermott Submarine Cable Systems Limited | United Kingdom |
| McDermott Technology, Inc. | Delaware |
| McDermott Trade Corporation | Delaware |
| McDermott West Indies Company | United Arab Emirates |
| Menck B.V. | Netherlands |
| Mentor Engineering Consultants Limited | United Kingdom |
| Mentor Subsea Technology Services, Inc. | Delaware |
| MIMCO, Inc. | Panama |
| Nooter/Eriksen -Babcock & Wilcox, L.L.C. | Missouri |
| North Atlantic Vessel, Inc. | Panama |
| Northern Marine Services, Inc. | Panama |
| Oak Ridge Security Associates, L.L.C. | Delaware |
| Oceanic Red Sea Company | United Arab Emirates |

- 6 -

| Name | Jurisdiction of Organization |
|---|---|
| Offshore Angola, Ltd. | Cayman Islands |
| Offshore Hyundai International, Ltd. | Cayman Islands |
| Offshore Pipelines Far East Limited | Vanuatu |
| Offshore Pipelines International Gulf E.C. | Bahrain |
| Offshore Pipelines International, Ltd. | Cayman Islands |
| Offshore Pipelines Nigeria Limited | Nigeria |
| Offshore Pipelines Sdn. Bhd. | Malaysia |
| Offshore Power Generation Ltd. | Cayman Islands |
| Offshore Production Vessels, Ltd. | Cayman Islands |
| OPI International Vessels, Ltd. | Cayman Islands |
| OPI Vessels, Inc. | Delaware |
| OPMI, E.C. | Bahrain |
| OPMI, Ltd. | Cayman Islands |
| P. T. Armandi Pranaupaya | Indonesia |
| P. T. Babcock & Wilcox Indonesia | Indonesia |
| P. T. Bataves Fabricators | Indonesia |
| P. T. Jay Ray | Indonesia |
| P. T. McDermott Indonesia | Indonesia |
| Pirogue Insurance Company, Ltd. | Bermuda |
| POGC Sensor Technology Pty. Limited | Australia |
| PT. J. Ray McDermott Indonesia | Indonesia |
| Rocky Flats Technical Associates, Inc. | Colorado |
| Sabine River Realty, Inc. | Louisiana |
| Safe Sites of Colorado, L.L.C. | Delaware |
| Saudi OPMI Company Limited | Saudi Arabia |
| SOFCo L. P. | Delaware |
| SOFCo-EFS Holdings LLC (formerly SOFCO Holdings LLC) | Delaware |
| Spars International Inc. | Texas |
| SparTEC, Inc. | Delaware |
| Tallares Navales del Golfo, S.A. de C.V. | Mexico |
| TL Marine Sdn. Bhd. | Malaysia |
| Trispec Technical Services Ltd. | Canada |
| Valveco Industries Pty. Ltd. | Australia |
| Varsy International N.V. | Netherlands Antilles |
| Wagley, Inc. | Alaska |
| Washington Group BWXT Operating Services, LLC | Delaware |
| WD 140 Platform LLC | Louisiana |

Any Entity which (i) at the time of its dissolution prior to February 22, 2000, was a wholly owned Subsidiary of MII or any of its wholly owned Subsidiaries, and (ii) will be included in a list of Non-Debtor Affiliates that is filed as part of the Plan Supplement on or before the Effective Date.

6.     "Non-Debtor Affiliates" means each of the MII Indemnified Parties and each of the
Entities identified on a supplement to Schedule 1.1(b) of the Non-Debtor Affiliate
Settlement Agreement included in the Plan Supplement.

7.     "Settling Asbestos Insurance Entities" means any Asbestos Insurance Entity that has
entered into an Asbestos PI Insurance Settlement Agreement (which may also include an
Asbestos PD Insurance Settlement Agreement) that is sufficiently comprehensive in the
determination of the Asbestos Claimants' Committee, the Future Claimants'
Representative, and the Debtors to warrant treatment under Section 524(g) of the
Bankruptcy Code in the case of Asbestos PI Trust Claims or to warrant treatment under
Section 105 of the Bankruptcy Code in the case of Class 7 Claims, and that is listed on
the following schedule:

### Schedule Of Settling Asbestos Insurance Entities
### (As of January 11, 2006)

1.     The ACE Companies, as defined in the Settlement Agreement and Release
between the B&W/McDermott Parties (other than the Asbestos PI Trust), the ACC, the FCR and
the ACE Parties (the "ACE Settlement Agreement"), which was approved by the Bankruptcy
Court on December 28, 2005.

2.     The ACE Parties (other than the ACE Companies), each as defined in the ACE
Settlement Agreement, but only with respect to insurance policies and the Prior Agreements
under which (and only to the extent to which) such ACE Parties are released pursuant to the
ACE Settlement Agreement.

3.     Affiliated/Appalachian, as defined in the Settlement Agreement and Release
between the Babcock Parties, the ACC, the FCR and Affiliated/Appalachian, which was
approved by the Bankruptcy Court on December 23, 2003.

4.     American General Insurers, as defined in the Settlement Agreement and Release
between the Babcock Parties, the ACC, the FCR and the Participating American General
Insurers, which was approved by the Bankruptcy Court on November 28, 2005.

5.     Arkwright, as defined in the Settlement Agreement and Release between the
Babcock Parties, the ACC, the FCR and Arkwright, which was approved by the Bankruptcy
Court on October 27, 2004.

6.     Associated International, as defined in the Settlement Agreement and Release
between the Babcock Parties, the ACC, the FCR and Associated International, which was
approved by the Bankruptcy Court on June 16, 2004.

7.     Certain AIG Member Companies, as defined in the Settlement Agreement and
Release between the Babcock Parties, the ACC, the FCR and Certain AIG Member Companies,
which was approved by the Bankruptcy Court on June 16, 2004.

8.     CNA, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and CNA, which was approved by the Bankruptcy Court on December 23, 2003.

9.     Federal, as defined in the Settlement Agreement and Complete Asbestos Claim Release between the Babcock Parties, the ACC, the FCR and Federal, which was approved by the Bankruptcy Court on November 28, 2005.

10.    Fireman's Fund, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Fireman's Fund, which was approved by the Bankruptcy Court on December 28, 2005.**

11.    First State Releasees, as defined in the Amended Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and First State, which was approved by the Bankruptcy Court on June 16, 2004.

12.    Mt. McKinley, as defined in the Settlement Agreement and Complete Asbestos Claim Release between the Babcock Parties, the ACC, the FCR and Mt. McKinley, which was approved by the Bankruptcy Court on October 27, 2004.

13.    New Hampshire, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and New Hampshire, for which execution is pending.**

14.    New York Marine Managers, Inc., West Coast Marine Managers, Inc., The Navigators Group, Inc., and Ranger, as identified in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR, the New York Marine Parties, and Ranger, which was approved by the Bankruptcy Court on December 28, 2005 (the "New York Marine Settlement Agreement").**

15.    New York Marine Participating Companies, as defined in the New York Marine Settlement Agreement, but solely with respect to the New York Marine Subject Policies and only to the extent such New York Marine Subject Policies are released pursuant to the New York Marine Settlement Agreement.**

16.    Northwestern, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Northwestern, which was approved by the Bankruptcy Court on June 24, 2004.

---

**Certain of the above-listed Asbestos Insurance Entities (designated on this Schedule by **) have entered into settlement agreements with the Debtors that are subject to final execution and/or approval by Final Order of the Bankruptcy Court, and/or the Ontario Superior Court of Justice (Commercial List) in the Matter of Babcock & Wilcox Canada (Court File No. 00-CL-3667). Designation on this Schedule of such Asbestos Insurance Entities is subject to, and conditioned upon, such final execution and the entry of such Final Orders.

17.     Orion, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Orion, for which execution is pending.**

18.     Participating London Companies, as defined in the Settlement Agreement and Mutual Release between the Babcock Parties, the ACC, the FCR and the Participating London Companies, which was approved by the Bankruptcy Court on November 28, 2005.

19.     Prudential and Pearl, each as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR, Prudential and Pearl, which was approved by the Bankruptcy Court on October 27, 2004.

20.     The RiverStone Insurers, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR, RiverStone and the RiverStone Insurers, which was approved by the Bankruptcy Court on October 27, 2004.

21.     Royal, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Royal, which was approved by the Bankruptcy Court on October 27, 2004.

22.     St. Paul, as defined in the Settlement Agreement and Complete Asbestos Claim Release between the Babcock Parties, the ACC, the FCR and St. Paul, which was approved by the Bankruptcy Court on December 28, 2005.

23.     Travelers, as defined in the Settlement Agreement and Release between the B&W/McDermott Parties, the ACC, the FCR and Travelers, which was approved by the Bankruptcy Court on October 27, 2004.

24.     Underwriters and Equitas (solely in its capacity as Underwriters' reinsurer and run-off agent), each as defined in the Amended and Restated Settlement Agreement and Mutual Release between the Babcock Parties, the ACC, the FCR and Underwriters (the "Amended and Restated Settlement Agreement"), which was approved by the Bankruptcy Court on April 14, 2005.