# Tab (e)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 03-10495 JKF |
| COMBUSTION ENGINEERING, INC., | ) | Chapter 11 |
| | ) | Dkt. No. 2590 |
| | ) | |
| Debtor. | ) | |

**ORDER CONFIRMING (AND RECOMMENDING AFFIRMANCE
BY THE U.S. DISTRICT COURT) DEBTOR'S PLAN OF REORGANIZATION
AS MODIFIED THROUGH OCTOBER 7, 2005 AND
SETTING BAR DATES TO FILE CERTAIN CLAIMS IN
PARAGRAPHS 50, 51, 52, 53 AND 73**

This matter comes before this Court on the Motion of Combustion Engineering, Inc.,

debtor and debtor-in-possession herein (the "Debtor"), for an order confirming the Debtor's Plan

of Reorganization as Modified Through October 7, 2005 and filed of record on October 7, 2005,

(the "Modified Plan").[1] This Court has reviewed the briefs submitted in support of, and in

opposition to, confirmation of the Modified Plan, listened to the oral arguments of all interested

parties appearing at the hearing or their counsel, reviewed the testimony of witnesses and other

evidence admitted at the Confirmation Hearing, and taken notice of the pleadings, orders, and

proceedings in the Chapter 11 Case.

---

[1]    Capitalized terms used herein without definition shall have the meanings ascribed to such
terms in the Glossary of Terms for Plan Documents, filed of record on October 14, 2005 (the
"Glossary") and the Order of the Bankruptcy Court dated August 19, 2005 (A) Approving
Adequacy of Debtor's Disclosure Statement; (B) Approving Form of Ballots, Voting Deadline,
and Resolicitation Procedures; (C) Approving Form and Manner of Notices; and (D) Approving
the Form of Letters in Support of the Modified Plan (the "Approval Order") (Dkt. No. 2422).
Any capitalized term used but not defined herein, in the Glossary or the Approval Order, but that
is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to
such term in the Bankruptcy Code or the Bankruptcy Rules. Such meanings shall be equally
applicable to both the singular and the plural forms of such terms.

1

This Court also has reviewed: (a) the Affidavit of BSI Services, LLC by Cassandra Murray, sworn to September 23, 2005 (Dkt. No. 2543) reflecting (i) service of the Debtor's Solicitation Package which included the Plan Documents to all known Class 5 and Class 6 Claimants and/or their counsel of record entitled to vote on the Modified Plan and the Non-Voting Notice to all known Class 1, 2, 3 and 4 Claimants and those persons requesting notice pursuant to Bankruptcy Rule 2002 who were not entitled to vote to accept or reject the Modified Plan, and (ii) service of the Confirmation Hearing Notice on (1) the US Trustee, (2) counsel who previously submitted a valid Master Ballot, (3) all creditors on the list of creditors maintained by the Debtor's Solicitation Agent in the Chapter 11 Case who previously submitted an individual Ballot, (4) counsel for the Unsecured Creditors' Committee, and (5) those parties who requested notice pursuant to Bankruptcy Rule 2002 and (b) the Certificate of Publication filed September 20, 2005, reflecting publication of the Notice of (I) Hearing to Confirm Modified Plan of Reorganization and (II) Date by Which to File and Serve Objections (the "Confirmation Hearing Notice") in the August 25, 2005 edition of The Wall Street Journal (National Edition) (Dkt. No. 2514).

After due deliberation and sufficient cause appearing therefore, IT IS HEREBY ORDERED THAT:

## A.    **General Decrees and Implementation**

1.    The Modified Plan is confirmed, and each and every provision contained therein is approved in its entirety, except that any reference to 11 U.S.C. § 105 as a basis to support the injunction entered pursuant to § 524(g) is stricken and is not utilized as a basis to support said injunction. All technical modifications to the Modified Plan are approved and are incorporated into the Modified Plan as previously approved by prior orders of this Court.

2

2.    The record of the Confirmation Hearing is closed.

3.    The holders of impaired Class 5 and Class 6 Claims have voted to accept the

Modified Plan in the numbers and amounts required by section 1126(b) of the Bankruptcy Code.

The holders of Class 5 and Class 6 Claims also have voted to accept the Modified Plan in

sufficient numbers to meet the requirements of section 524(g)(2)(B)(ii)(iv)(bb) of the

Bankruptcy Code.

4.    No entity has asserted a claim that falls within Class 7.

5.    Class 8 (Equity Interests) has voted to accept the Modified Plan in the numbers

and amounts required by sections 1126(b) and (d), respectively of the Bankruptcy Code.

6.    All other Classes of Claims are unimpaired under the Modified Plan and are

deemed to have accepted the Modified Plan pursuant to section 1126(f) of the Bankruptcy Code.

7.    The Plan Documents as they exist on the record as of the time of the entry of this

Order, including, without limitation, the Asbestos PI Trust Documents, together with all

amendments, modifications, and supplements thereto, and all annexes, exhibits, and schedules

thereto, and all terms and conditions thereof, except as to the § 105 references detailed in ¶ 1

above, are hereby approved.

8.    All of the insurers' objections to the confirmation of the Modified Plan were

withdrawn prior to or on the record at the Confirmation Hearing. Although the Court is unaware

of any, all other objections, other than those withdrawn in writing prior to, or on the record at,

the Confirmation Hearing are hereby overruled.

9.    Except as otherwise provided in this Order, all payments made or to be made by

the Debtor, or by any Entity to the extent, if any, that such Entity issues or delivers securities or

acquires property under or pursuant to the Modified Plan, for services or for costs and expenses

3

in or in connection with the Chapter 11 Case, or in connection with the Modified Plan and incident to the Chapter 11 Case, are hereby approved as reasonable.

10.     Nothing in this Order shall in any way affect the provisions of section 7.11 of the Modified Plan, which provide that "the effective date of the Plan," as used in section 1129 of the Bankruptcy Code, shall not occur, and that the Modified Plan shall be of no force and effect, until the Effective Date and, more specifically, unless and until the conditions in section 7.11 of the Modified Plan have been satisfied or waived by the appropriate parties as more fully provided in section 7.11 of the Modified Plan.

11.     If the Effective Date does not occur pursuant to the terms of the Modified Plan, the Debtor (including the Reorganized Debtor) shall immediately file a notice that the Effective Date has not occurred, and the terms of this Order and all Findings of Fact and Conclusions of Law shall be vacated and be null and void, and the Debtor and holders of Claims and Equity Interests shall stand in the same position in which such Entity would have stood if this Order had not been entered. In that event, the exclusive period to file a plan shall terminate and, the Debtor or a party in interest with standing to do so shall file a disclosure statement and plan within 90 days after the Debtor files notice that the Effective Date has not occurred. If no party files a disclosure statement and plan on or before 90 days, as ordered herein, this case shall be converted to Chapter 7, without further notice or hearing, on the next business day after the 90 days expire. Notwithstanding this provision, this Court finds that it is more likely than not that the Effective Date will occur and that § 1129(a)(11) of the Bankruptcy Code is satisfied.

12.     The provisions of section 7.10.1 of the Modified Plan are incorporated herein and this Court specifically makes the findings and determinations stated therein. Notwithstanding

4

the preceding, the condition set forth in section 7.10.1.6 has been waived by the appropriate parties pursuant to the Modified Plan.

**B.    Certain Matters Relating to Implementation of the Modified Plan**

**Certain Corporate Filings; Management of the Reorganized Debtor**

13.    The president, vice president, secretary, treasurer, or any other officer of the Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, settlement agreements, releases, indentures, and other agreements or documents and to take or direct such actions as may be necessary or appropriate on behalf of the Debtor or Reorganized Debtor to effectuate and further evidence the terms and conditions of the Modified Plan and Plan Documents, all of which are consistent with the Debtor's constituent documents. The secretary or any other officer of the Debtor shall be authorized to certify or attest to any of the foregoing actions.

14.    All matters provided for under the Modified Plan involving any corporate action to be taken by, or required of, the Debtor or the Reorganized Debtor, shall be deemed to have occurred and be effective as provided in the Modified Plan, and shall be authorized and approved in all respects without any requirement for further action by the stockholders or directors of any such entities. This Order constitutes all authority, if any, required by the General Corporation Law of the State of Delaware, as applicable, and any other applicable business corporation, trust, and other laws of the applicable Governmental Units with respect to the implementation and consummation of the Modified Plan.

15.    On and after the Effective Date and until their successors are duly elected or appointed and qualified, the business and affairs of the Reorganized Debtor will be managed by

5

the board of directors and officers of the Debtor serving immediately prior to the occurrence of the Effective Date.

**Vesting of Assets; Continued Corporate Existence**

16. On the Effective Date, the Reorganized Debtor shall be vested with all of the assets and property of its former Bankruptcy Estate, free and clear of all Claims, liens, charges, and other interests of holders of Claims or Equity Interests, except to the extent specifically provided herein, in another order of this Court, or in the Modified Plan, and may operate its business free of any restrictions imposed by the Bankruptcy Code.

**Institution and Maintenance of Legal and Other Proceedings**

17. Except as provided in section 11.4 of the Modified Plan, as of the Effective Date, the Asbestos PI Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos PI Trust, including, without limitation, the Asbestos Insurance Rights. Subject to the Modified Plan and the other Plan Documents, the Asbestos PI Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred by or on behalf of the Asbestos PI Trust subsequent to the Effective Date arising from, or associated with, any legal action or other proceeding that is the subject of this paragraph. The Insurance Contributors shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all actions arising from or related to their respective insurance rights to the extent permitted or required by the Insurance Assignment Agreement and the Modified Plan. Pursuant to the Modified Plan and the Insurance Assignment Agreement, at the reasonable direction and request of the Asbestos PI Trust, and at the expense of the Asbestos PI Trust, an Insurance Contributor, or the Reorganized Debtor, as applicable, shall pursue any

6

Asbestos Insurance Rights for the benefit of and to the fullest extent required by the Asbestos PI Trust, by negotiation or, if necessary, by the initiation and prosecution of all appropriate and necessary legal action to secure such Asbestos Insurance Rights and shall take such other action as the Asbestos PI Trust may request, including granting a security interest in the Asbestos Insurance Rights.

**Vesting and Enforcement of Causes of Action in Reorganized Debtor**

18.     On and after the Effective Date, all causes of action which remain property of the Reorganized Debtor pursuant to the Modified Plan may be pursued or compromised as deemed fit by the Reorganized Debtor in its sole discretion without need for this Court's approval. Prior to the Effective Date, Debtor or Reorganized Debtor shall file motions to approve any and all compromises and settlements.

**No Transfer Taxes**

19.     Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any of the securities issued, transferred, or exchanged under, or the transfer of any other assets or property pursuant to, or in connection with, the Modified Plan, or the making or delivery of an instrument of transfer under, or in connection with, the Modified Plan shall not be taxed under any law imposing a stamp tax, transfer tax, or other similar tax.

**C.      The Asbestos PI Trust**

**Establishment and Purpose of Asbestos PI Trust**

20.     On the Effective Date, the Asbestos PI Trust shall be established in accordance with the Plan Documents. The Asbestos PI Trust shall be a "qualified settlement fund" within the meaning of regulations issued pursuant to section 468B of the IRC. The purpose of the Asbestos PI Trust shall be to, among other things, assume all Asbestos PI Trust Claims and to

7

use the Asbestos PI Trust Assets to pay holders of Asbestos PI Trust Claims, Certified Unpaid Settlement Trust Claims, and Non-Qualified Claims in accordance with the Asbestos PI Trust Agreement and the TDP.

21. On the Effective Date, all right, title and interest in and to the Asbestos PI Trust Assets and any proceeds or causes of action thereunder shall be transferred to, and vested in, the Asbestos PI Trust free and clear of all Claims, interests, Encumbrances and other interests of any Entity without any further action of any Entity. The Asbestos PI Trust and the Trustees are hereby authorized and empowered to receive the Asbestos PI Trust Assets.

**The Appointment of Trustees, TAC Members, and the Future Claimants' Representative**

22. The initial trustees of the Asbestos PI Trust shall be the Honorable Ken M. Kawaichi (retired), Ellen S. Pryor and Larry T. Tersigni. Effective as of the Effective Date, the Trustees shall serve in accordance with the Asbestos PI Trust Agreement.

23. The initial members of the TAC shall be Russell W. Budd, John D. Cooney, Brent Coon, Steven Kazan and Matthew P. Bergman. Effective as of the Effective Date, the initial members of the TAC shall serve in accordance with the Asbestos PI Trust Agreement.

24. David Austern shall continue to serve as the Future Claimants' Representative on and after the Effective Date pursuant to Article VI of the Asbestos PI Trust Agreement.

**D. Insurance**

25. Notwithstanding anything to the contrary in this Order, the Modified Plan, or any of the Plan Documents, nothing in this Order, the Modified Plan or any of the Plan Documents (including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing the insurers' legal, equitable, or contractual rights, if

8

any, in any respect. The rights of insurers shall be determined under the Subject Insurance Policies or Subject Insurance Settlement Agreements as applicable.

26.     No party may use for any purpose in any other proceeding: (i) any testimony by any witness (including witness affidavits and attachments thereto); or (ii) any materials and/or work product generated or created by or for any expert witness; or (iii) this Court's findings and conclusions, relating to the actual, estimated, or projected amount or value of the Debtor's asbestos-related future liability or the insurance available to pay the Debtor's asbestos-related liability.

27.     Nothing in the Modified Plan or in this Order shall preclude any Entity from asserting in any proceeding any and all claims, defenses, rights or causes of action that it has or may have under or in connection with any Subject Insurance Policies or any Subject Insurance Settlement Agreement. Nothing in the Modified Plan or this Order shall be deemed to waive any claims, defenses, rights or causes of action that any Entity has or may have under the provisions, terms, conditions, defenses, and/or exclusions contained in the Subject Insurance Policies or any Subject Insurance Settlement Agreements, including, but not limited to, (a) any and all such claims, defenses, rights or causes of action based upon or arising out of Asbestos Claims that are liquidated, resolved, discharged, channeled or paid in connection with the Modified Plan, and (b) any Asbestos Insurance Entity's right to contest insurance coverage for any claim resolved pursuant to the TDP.

28.     Certain Asbestos Insurance Entities have entered into settlement agreements with the Debtor, which have been approved by this Court by Final Order. Those approved settlement agreements satisfy the requirements for such settling insurers to be Settling Asbestos Insurance Companies as defined in the Modified Plan because (a) such settlement agreements are

9

sufficiently comprehensive to warrant the settling insurers' treatment under section 524(g) of the Bankruptcy Code in the case of Asbestos Claims, and (b) such settling insurers have been listed on the schedule of Settling Asbestos Insurance Companies filed with the Court by the Debtor prior to the Confirmation Date. Certain other Asbestos Insurance Entities have entered into settlement agreements with the Debtor, which are or will be pending approval by this Court. Subject to, and conditioned on, this Court's approval of those settlement agreements, those settlement agreements will satisfy the requirements for those settling insurers to be Settling Asbestos Insurance Companies because (a) such settlement agreements are sufficiently comprehensive to warrant the settling insurers' treatment under section 524(g) of the Bankruptcy Code in the case of Asbestos Claims, and (b) such insurers have been listed on the schedule of Settling Asbestos Insurance Companies filed with the Court by the Debtor prior to the Confirmation Date subject to and conditioned on final approval.

29.     Certain of the Asbestos Insurance Settlement Agreements include a sale under section 363 of the Bankruptcy Code by the Debtor of certain Asbestos Insurance Rights under the insurance policies that are the subject of those settlement agreements. The Insurance Assignment Agreement shall not constitute a transfer, grant or assignment of any Asbestos Insurance Right which were sold by the Debtor prior to the Effective Date pursuant to a settlement agreement approved by Final Order of this Court under section 363 of the Bankruptcy Code.

30.     During the Confirmation Hearing on September 28, 2005, the Court was advised that the Debtor has reached an agreement-in-principle with Century Indemnity Company, Pacific Employers Insurance Company, and Central National Insurance Company of Omaha (collectively, "Century"), which provides, among other things, a mechanism for the resolution of

10

certain claims for indemnification that Century has asserted against the Debtor (the "Indemnity Claims") and, if determined by arbitration or otherwise agreed to be entitled to payment, the payment of some or all of the Indemnity Claims. If the agreement-in-principle between the Debtor and Century is reduced to a formal written settlement agreement that is submitted to this Court for approval pursuant to Bankruptcy Rule 9019, and if this Court enters an order approving such formal written settlement agreement, then any payment(s) determined to be owing by the Debtor to Century for any Indemnity Claims shall be made from the sources and in the sequence set forth in the order approving such settlement agreement.

## E.    Discharge, Releases and Injunctions

31.    Except as specifically provided in the Modified Plan or in this Order, the rights afforded in the Modified Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction, discharge and release of all Claims, Demands and Equity Interests of any nature whatsoever, against the Debtor and the Debtor in Possession, or its assets, properties, or interests in property. Except as otherwise provided in the Modified Plan or in this Order, on the Effective Date all Claims against and Equity Interests in the Debtor and the Debtor in Possession shall be satisfied, discharged, and released in full. Except as otherwise provided in the Modified Plan or this Order, the Reorganized Debtor shall not be responsible for any obligations of the Debtor or the Debtor in Possession except those expressly assumed by the Reorganized Debtor pursuant to the Modified Plan and the other Plan Documents and such settlement agreements relating to objections to confirmation as are expressly approved by this Court. To the extent provided in the Modified Plan and Plan Documents, all Entities shall be precluded and forever barred from asserting, against the Asbestos PI Trust and the Asbestos Protected Parties, or their assets, properties, or interests in

11

property any other or further Claims or Demands based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date, except as expressly provided in the Modified Plan.

32.     To the extent provided in the Modified Plan and the other Plan Documents, the transfer to, vesting in, and assumption by the Asbestos PI Trust of the Asbestos PI Trust Assets and the Asbestos Insurance Assignment as contemplated by the Modified Plan, the ABB and Non-Debtor Affiliate Settlement Agreement and the Insurance Assignment Agreement shall, among other things, on the Effective Date (a) discharge the Debtor and the Reorganized Debtor for and in respect of all Asbestos Claims and (b) release and extinguish all obligations and liabilities of the Released Parties for and in respect of all Asbestos Claims. On the Effective Date, subject to the terms of the Modified Plan and the other Plan Documents, the Asbestos PI Trust shall assume all Asbestos PI Trust Claims and shall evaluate, determine and pay (if and to the extent entitled to payment) Asbestos PI Trust Claims, Non-Qualified Claims, Certified Unpaid Settlement Trust Claims and Subsequent Malignancy Claims in accordance with the Asbestos PI Trust Agreement and the TDP.

33.     On and after the Effective Date, the Debtor shall be fully and finally discharged of any liability or obligation on a disallowed Claim, and any order creating a disallowed Claim which is not a final order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a final order on the Effective Date for the purpose of, and shall then be, subject to appeal.

12

34.    Except to the extent released pursuant to the Modified Plan or any of the Plan Documents including, without limitation, the ABB and Non-Debtor Affiliate Settlement Agreement, (i) any rights, claims, or causes of action accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including any avoidance or recovery actions under or through sections 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, (ii) any rights to, claims, or causes of action for recovery under any policies of insurance issued to, or on behalf of, or which provides indemnity or liability payments to or on behalf of, the Debtor and (iii) any rights, claims, and causes of action against third parties related to or arising out of Allowed Claims, except Claims that shall, pursuant to the Modified Plan, be retained and resolved by the Reorganized Debtor, shall, on the Effective Date, be transferred to the Asbestos PI Trust.

## F.    The Channeling Injunction

35.    In connection with the creation of the Asbestos PI Trust and to supplement the injunctive relief of a discharge under section 524 of the Bankruptcy Code, the Channeling Injunction shall be, and hereby is, issued and approved as of the Effective Date pursuant to section 524(g) of the Bankruptcy Code. The Channeling Injunction applies to all Asbestos Claims.

36.    Subject to paragraph 39 hereof, on and after the Effective Date, the Channeling Injunction shall apply to all present and future holders of Asbestos Claims, and all present and future holders of Asbestos Claims shall be permanently and forever stayed, restrained, and enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Claims, other than from the CE Settlement Trust in the case of Settlement Trust Claims and Category 4

13

Participating Claims, or the Asbestos PI Trust in the case of Asbestos PI Trust Claims, Non-

Qualified Claims, and Certified Unpaid Settlement Trust Claims, in each case in accordance with

the applicable trust distribution or payment procedures:

(a)     commencing, conducting, or continuing in any manner, directly or
indirectly, any suit, action, or other proceeding (including a judicial,
arbitration, administrative, or other proceeding) in any forum against or
affecting any Asbestos Protected Party, CE Settlement Trust Protected
Party, or Settling Asbestos Insurance Company or any property or
interests in property of any Asbestos Protected Party, CE Settlement Trust
Protected Party, or any Settling Asbestos Insurance Company;

(b)     enforcing, levying, attaching (including any prejudgment attachment),
collecting, or otherwise recovering by any means or in any manner,
whether directly or indirectly, any judgment, award, decree, or other order
against any Asbestos Protected Party, CE Settlement Trust Protected
Party, or Settling Asbestos Insurance Company or any property or
interests in property of any Asbestos Protected Party, CE Settlement Trust
Protected Party, or Settling Asbestos Insurance Company;

(c)     creating, perfecting, or otherwise enforcing in any manner, directly or
indirectly, any Encumbrance against any Asbestos Protected Party, CE
Settlement Trust Protected Party, or Settling Asbestos Insurance
Company, or any property or interests in property of any Asbestos
Protected Party, CE Settlement Trust Protected Party, or Settling Asbestos
Insurance Company;

(d)     setting off, seeking reimbursement of, contribution from, or subrogation
against, or otherwise recouping in any manner, directly or indirectly, any
amount against any liability owed to any Asbestos Protected Party, CE
Settlement Trust Protected Party, or Settling Asbestos Insurance Company
or any property or interests in property of any Asbestos Protected Party,
CE Settlement Trust Protected Party, or Settling Asbestos Insurance
Company;

(e)     proceeding in any manner in any place with regard to any matter that is
subject to resolution pursuant to the CE Settlement Trust, except in
conformity and compliance with the CE Settlement Trust Documents; and

(f)     proceeding in any manner in any place with regard to any matter that is
subject to resolution pursuant to the Asbestos PI Trust, except in
conformity and compliance with the Asbestos PI Trust Agreement and the
TDP.

14

37.        The sole recourse of the holder of a Settlement Trust Claim or Category 4

Participating Claim on account of such Settlement Trust Claim or Category 4 Participating

Claim shall be to the CE Settlement Trust pursuant to the provisions of the CE Settlement Trust

Documents and the Plan Documents, and such holder shall have no right whatsoever at any time

to assert its Settlement Trust Claim or Category 4 Participating Claim against the Debtor,

Reorganized Debtor, the Asbestos PI Trust, any Settling Asbestos Insurance Company, or any

Asbestos Protected Party, or any property or interest in property of the Debtor, the Reorganized

Debtor, any other Asbestos Protected Party, the Asbestos PI Trust, or any Settling Asbestos

Insurance Company.

38.        The sole recourse of the holder of an Asbestos PI Trust Claim, Non-

Qualified Claim, or Certified Unpaid Settlement Trust Claim on account of such Asbestos PI

Trust Claim, Non-Qualified Claim, or Certified Unpaid Settlement Trust Claim shall be to the

Asbestos PI Trust pursuant to the provisions of the Modified Plan, Channeling Injunction,

Asbestos PI Trust Agreement, and TDP, and such holder shall have no right whatsoever at any

time to assert its Asbestos PI Trust Claim, Non-Qualified Claim, or Certified Unpaid Settlement

Trust Claim against the Debtor, Reorganized Debtor, any Settling Asbestos Insurance Company

or any Asbestos Protected Party, or any property or interest in property of the Debtor, the

Reorganized Debtor, any other Asbestos Protected Party, or any Settling Asbestos Insurance

Company.

39.        Notwithstanding the terms of the Channeling Injunction or any other

provision in the Modified Plan, any other Plan Document, or this Order to the contrary:

    (a)        nothing in the Modified Plan shall be understood to channel, prevent,
           impair, or limit in any way enforcement against the Debtor, the
           Reorganized Debtor, or any other Asbestos Protected Party of (i) any

15

rights provided in     connection with any Workers' Compensation Claims; (ii) any policies issued by any of the CNA Insurers for a policy period that begins on or after January 1, 1986; or (iii) the Agreement of Settlement Compromise and Release between CE, Asea Brown Boveri and CNA Insurers dated December 28, 1998;

(b)     the Channeling Injunction may not be terminated, reduced, or limited in scope with respect to Travelers, except as Travelers expressly agrees in writing; provided, that this sentence, and the reference to the Travelers Coverage Settlement Agreement herein, shall be rendered null and void immediately and automatically if the Travelers Coverage Settlement Agreement is rendered null and void;

(c)     the Channeling Injunction also may not be terminated, reduced, or limited in scope with respect to Everest (as defined in the Schedule of Settling Asbestos Insurance Companies), except as Everest expressly agrees in writing; provided, that this sentence shall be rendered null and void immediately and automatically if (i) this Court or any court of competent jurisdiction denies by Final Order approval of the settlement agreement with Everest; or (ii) if the Everest settlement agreement is rendered null and void;

(d)     No holder of a Settlement Trust Claim or Category 4 Participating Claim that entered into the Master Settlement Agreement or an Adoption Agreement shall be enjoined from asserting such Settlement Trust Claim or Category 4 Participating Claim against the CE Settlement Trust for payment in accordance with the CE Settlement Trust Documents and the Plan Documents, and no such claim against the CE Settlement Trust shall be released by the Modified Plan or by the ABB and Non-Debtor Affiliate Settlement Agreement; and

(e)     No holder of an Asbestos PI Trust Claim, Non-Qualified Claim, Certified Unpaid Settlement Trust Claim, or Subsequent Malignancy Claim shall be enjoined from asserting, on or after the Effective Date, such claim against the Asbestos PI Trust in accordance with the Asbestos PI Trust Agreement and the TDP, and any such Asbestos PI Trust Claim, Non-Qualified Claim, Certified Unpaid Settlement Trust Claim, or Subsequent Malignancy Claim shall be evaluated, determined and paid (if and to the extent entitled to payment) by the Asbestos PI Trust pursuant to the Asbestos PI Trust Agreement and the TDP.

40.     As stated in section 7.15.2 of the Modified Plan, anything in the Modified Plan,

any Plan Document, this Order or the Channeling Injunction or otherwise to the contrary

notwithstanding, upon the entry of an order finding that an Injunction Default has occurred, (i) the Channeling Injunction, the provisions of sections 3.2.5.2, 3.2.6.2, 7.2.11 (as to clause (2)), 7.2.13, 7.15.1, 11.2, 11.7 (to the extent necessary to the assertion and prosecution of the claims referred to below), 11.8.4, 11.8.5 (to the extent necessary to the assertion and prosecution of the claims referred to below) of the Modified Plan, the provisions of section 7.2.9 of the Modified Plan to the extent necessary to permit the assertion of Asbestos PI Trust Claims, Non-Qualified Claims, and Certified Unpaid Settlement Trust Claims and claims to enforce the Modified Plan and the Plan Documents and all obligations and liabilities arising thereunder or in connection therewith, the provisions of sections 3.4 and 4.4 of the Asbestos PI Trust Agreement, the provisions of sections 3.1 and 3.2 of the ABB and Non-Debtor Affiliate Settlement Agreement and any other release, exculpation, injunction, indemnity or other limitation or any provision of the Modified Plan or any Plan Document or this Order effecting or purporting to effect any release, exculpation, injunction, indemnity or other limitation, relating to Asbestos PI Trust Claims, Non-Qualified Claims, and Certified Unpaid Settlement Trust Claims and claims to enforce the Modified Plan and the Plan Documents and all obligations and liabilities arising thereunder or in connection therewith, shall forthwith automatically and without further order or action whatsoever terminate and be of no force or effect with respect to ABB, ABB Inc., ABB Oil & Gas, ABB Holdings, any other obligor in respect of any obligation or liability arising under or in respect of the Modified Plan or any Plan Documents, and any Guarantor who or which, on the date of the Injunction Default, was an Affiliate of ABB, ABB Inc., ABB Oil & Gas, or ABB Holdings, (ii) thereupon and at all times thereafter (subject to the right of the Trustees of the Asbestos PI Trust to request that this Court reinstate the Channeling Injunction if, in such Trustees' absolute discretion, they deem such reinstatement to be in the best interests of

17

the Asbestos PI Trust), Asbestos PI Trust Claims, Non-Qualified Claims, Certified Unpaid

Settlement Trust Claims and claims to enforce the Modified Plan and the other Plan Documents

and all obligations and liabilities arising under the Modified Plan and the other Plan Documents

or in connection therewith may be freely asserted against ABB, ABB Inc., ABB Oil & Gas, ABB

Holdings, and/or any Guarantor who or which was, on the date of the Injunction Default, an

Affiliate of ABB or ABB Holdings, and (iii) none of ABB, ABB Inc., ABB Oil & Gas, ABB

Holdings, or any Guarantor who or which was, on the date of the Injunction Default, an Affiliate

of ABB or ABB Holdings shall be entitled or have the right to be indemnified by, make or assert

a claim against or otherwise recover from the Asbestos PI Trust (or any other Entity to the extent

any such claim against or recovery from such other Entity would give rise to any claim against

or recovery from the Asbestos PI Trust) for, on account of or in respect of any such Claim or

Demand. Notwithstanding the foregoing, an Injunction Default shall not be deemed to have

occurred (i) solely as a result of a failure by ABB or ABB, Inc. to make a Contingent Payment

pursuant to the ABB Promissory Note based solely upon ABB's reasonable assertion in good

faith that an EBIT Margin Event has not occurred, or in the case of any of the Contingent

Payments pursuant to sections 1.1(b)(i)(B) or 1.1(b)(ii)(B) of the ABB Promissory Note that

ABB has not declared and paid a cash dividend as described herein, or in the case of any of the

Contingent Payments pursuant to sections 1.1(b)(i)(C), 1.1(b)(ii)(C) or 1.1(b)(iii)(B) of the ABB

Promissory Note, the EBIT Margin set forth therein has not been achieved or as a result of a

good faith dispute in connection with the exercise of remedies pursuant to section 2.2 of the

ABB Promissory Note; or (ii) with respect to a payment required to be made under sections 3, 4,

or 10(c) of the Contribution Agreement (collectively a "Disputed Payment"), unless within ten

(10) days after the resolution of such dispute (whether by agreement of the parties or when an

18

order becomes a Final Order determining that such Disputed Payment is due), ABB (or an entity

acting on ABB's behalf) fails to pay such Disputed Payment in full together with, unless the

parties agree to the contrary, interest at a rate equal to the sum of (x) The Wall Street Journal

(National Edition) daily prime rate plus (y) four percent (4%) from the date such Contingent

Payment was originally due without regard to any dispute until the date such amount is paid in

full.  If it is determined that any or all of a Disputed Payment is due, then ABB and ABB, Inc.

shall also promptly pay the reasonable costs and expenses (including reasonable attorneys' fees)

paid or incurred by the Asbestos PI Trust in connection with such dispute or the resolution

thereof.

 41. No other provision of the Modified Plan, any Plan Document, this Order, the

Channeling Injunction or otherwise shall, or shall be deemed to, limit, modify, override or

supersede the provisions of section 7.15.2 of the Modified Plan and the remedies provided in

section 7.15.2 of the Modified Plan shall be in addition to any other remedy or remedies

provided in any Plan Document.

 42. Anything in the Modified Plan, any Plan Documents, this Order or the Channeling

Injunction or otherwise to the contrary notwithstanding, the Channeling Injunction shall operate

and be construed to stay, restrain and enjoin Asbestos Claims and Demands (subject also to the

other limitations set forth in the Modified Plan and Plan Documents) only as to such Asbestos

Claims and Demands (whether now existing or hereafter arising) based upon the Debtor's direct

or indirect liability or alleged liability.  For the sake of clarity, Asbestos Claims and Demands

based upon the Debtor's direct or indirect liability (or alleged liability) include Asbestos Claims

and Demands (whether now existing or hereafter arising) against any Alstom Protected Party

which is (i) a former Subsidiary of the Debtor, or (ii) a direct or indirect successor to, or

19

transferee of assets of, the Debtor or a former Subsidiary of the Debtor (or against any Entity

that, pursuant to the Modified Plan or otherwise after the Effective Date, becomes a direct or

indirect transferee of, or successor to, any such Alstom Protected Party or any of the assets of

any such Alstom Protected Party (but only to the extent that any such Entity is or may be alleged

to be directly or indirectly liable for Asbestos Claims and Demands and such liability is asserted

to exist as a result of its becoming such a transferee or successor)) in either case to the extent

such Asbestos Claims and Demands arise as a consequence of the acts, omissions, products,

business or operations of an Entity when such Entity was a Subsidiary of the Debtor.

### G.        The Asbestos Insurance Entity Injunction

43.    In connection with the creation of the Asbestos PI Trust and to supplement the

injunctive relief of a discharge under section 524 of the Bankruptcy Code, the Asbestos

Insurance Entity Injunction shall be, and hereby is, issued and approved as of the Effective Date

pursuant to section 524(g) of the Bankruptcy Code.  All Entities (not including the Asbestos PI

Trust or, to the extent permitted or required under sections 7.2.7 and 7.2.12 of the Modified Plan

or the Insurance Assignment Agreement, the Reorganized Debtor and the Insurance

Contributors) that have held or asserted, that hold or assert, or that may in the future hold or

assert any Claim, Demand, or cause of action (including any Asbestos Claim or any Claim or

Demand for or respecting any Trust Expenses), against any Asbestos Insurance Entity, based

upon, relating to, arising out of, or in any way connected with any Asbestos Claim, Demand,

Asbestos PI Insurance Rights, Subject Insurance Policies, or Subject Insurance Settlement

Agreements whenever and wherever arisen or asserted (including all Claims in the nature of or

sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty)

shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or

20

indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to

any such Claim, Demand, or cause of action, including:

    (a)    commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, Demand, or cause of action against any Asbestos Insurance Entity, or against the property of any Asbestos Insurance Entity, with respect to any such Claim, Demand, or cause of action;

    i.    enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Insurance Entity, or against the property of any Asbestos Insurance Entity, with respect to any such Claim, Demand, or cause of action;

    ii.    creating, perfecting, or enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Insurance Entity, or the property of any Asbestos Insurance Entity, with respect to any such Claim, Demand, or cause of action;

    iii.    except as otherwise specifically provided in the Modified Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation due any Asbestos Insurance Entity, or against the property of any Asbestos Insurance Entity, with respect to any such Claim, Demand, or cause of action; and

    iv.    taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents relating to such Claim, Demand, or cause of action.

provided, however, that (i) the Asbestos Insurance Entity Injunction shall not impair in any way

the rights, claims, or causes of action described in section 7.3 of the Modified Plan; (ii) the

Asbestos PI Trust shall have the sole and exclusive authority at any time to terminate, reduce, or

limit the scope of, the Asbestos Insurance Entity Injunction with respect to any Asbestos

Insurance Entity upon express written notice to such Asbestos Insurance Entity; and (iii) the

21

Asbestos Insurance Entity Injunction is issued solely for the benefit of the Asbestos PI Trust and

is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos Insurance Entity

is a third-party beneficiary of the Asbestos Insurance Entity Injunction. Notwithstanding the

foregoing, the Asbestos Insurance Entity Injunction may not be terminated, reduced, or limited

in scope as to Travelers and the Asbestos Insurance Entity Injunction shall inure to the benefit of

Travelers as a third-party beneficiary, except as Travelers expressly agrees in writing; provided,

that this sentence shall be rendered null and void immediately and automatically with respect to

Travelers if the Travelers Coverage Settlement Agreement is rendered null and void.

44.     Notwithstanding anything to the contrary in paragraph 40 above, the Asbestos

Insurance Entity Injunction shall not enjoin the rights, if any:

(a)     of Entities to the treatment accorded them under the Modified Plan,
        including the rights of Entities with Asbestos PI Trust Claims, Non-
        Qualified Claims, or Certified Unpaid Settlement Trust Claims to assert
        such Asbestos PI Trust Claims, Non-Qualified Claims, or Certified
        Unpaid Settlement Trust Claims against the Asbestos PI Trust in
        accordance with the Asbestos PI Trust Agreement and TDP;

(b)     of Entities to assert any claim, debt, obligation, or liability for payment of
        Trust Expenses against the Asbestos PI Trust;

(c)     of the Asbestos PI Trust to prosecute any action based on or arising from
        the Asbestos Insurance Rights;

(d)     of the Reorganized Debtor and the Insurance Contributors for the benefit
        of the Asbestos PI Trust (but only to the extent permitted or required
        under sections 7.2.7 and 7.2.12 of the Modified Plan or the Insurance
        Assignment Agreement) to prosecute any action based on or arising from
        Asbestos Insurance Rights;

(e)     of the Asbestos PI Trust to assert any claim, debt, obligation, or liability
        for payment against an Asbestos Insurance Entity based on or arising from
        the Asbestos Insurance Rights;

        v.      of the Reorganized Debtor and the Insurance Contributors for the
                benefit of the Asbestos PI Trust (but only to the extent permitted or

22

required under sections 7.2.7 and 7.2.12 of the Modified Plan or the Insurance Assignment Agreement) to assert any claim, debt, obligation, or liability for payment against an Asbestos Insurance Entity based on or arising from the Asbestos Insurance Rights under or arising from any policy of insurance under which Jamesbury Corp. n/k/a Neles-Jamesbury, Inc. and the Debtor were at any time both insured, including under the Subject Insurance Policies or policies that are the subject of the Subject Insurance Settlement Agreements, including any claims set forth in that certain declaratory action captioned as <u>Neles-Jamesbury, Inc. v. Liberty Mutual Ins. Co.</u> et al., Civil Action Number 02-0982A pending before the Superior Court Department of the Trial Court for Worcester County, Massachusetts, but only to the extent that such claims are not Asbestos Claims permanently enjoined from being asserted against Neles-Jamesbury pursuant to the Channeling Injunction; and

vi.    of the Reorganized Debtor and the Insurance Contributors for the benefit of the Asbestos PI Trust (but only to the extent permitted or required under sections 7.2.7 and 7.2.12 of the Modified Plan or the Insurance Assignment Agreement) to assign a cause of action against any Asbestos Insurance Entity to a holder of an Asbestos PI Trust Claim, Non-Qualified Claim, or Certified Unpaid Settlement Trust Claim and for such Claimant to assert any claim, debt, obligation, or liability for payment against such Asbestos Insurance Entity.

## H.    Section 346 Injunction

45.    In accordance with section 346 of the Bankruptcy Code, for purposes of any state or local law imposing a tax, income will not be realized by the Debtor or Reorganized Debtor by reason of forgiveness or discharge of indebtedness resulting from the consummation of the Modified Plan. As a result, each state or local taxing authority that was provided with notice of this proceeding is permanently enjoined and restrained, after the Confirmation Date, from commencing, continuing, or taking any act to impose, collect, or recover in any manner any tax against the Debtor or Reorganized Debtor arising by reason of the forgiveness or discharge of indebtedness under the Modified Plan.

23

## I.    Continuation of Prior Stays and Injunctions

46.    All of the injunctions and/or automatic stays provided for, in or in connection with the Chapter 11 Case, whether pursuant to sections 105 and 362 of the Bankruptcy Code, or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to the Confirmation Date shall remain in full force and effect until the injunctions set forth in the Modified Plan become effective.  In addition, on and after the Confirmation Date, the Reorganized Debtor may seek such further orders as it may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

47.    Each of the injunctions contained in the Modified Plan shall become effective on the Effective Date and shall continue in effect at all times thereafter except as otherwise provided by the Modified Plan or herein.

48.    Notwithstanding anything to the contrary contained in the Modified Plan, all actions in the nature of those to be enjoined by the injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

## J.    Executory Contracts

49.    Except for executory contracts that the Debtor has rejected prior to the Effective Date or designated as being subject to rejection in connection with the Effective Date, as set forth in section 8.1 of the Modified Plan, and in accordance with section 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases not previously assumed by the Debtor pursuant to section 365 of the Bankruptcy Code shall be deemed to have been assumed by the Reorganized Debtor on the Effective Date.

24

**K.**     <u>**Claims Bar Dates**</u>

**Bar Dates for Administrative Expense Claims, Fee Claims, and Professional Compensation**

50.     Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, and 503(b) of the Bankruptcy Code (including compensation requested pursuant to section 503(b)(3) and (4) of the Bankruptcy Code by any professional or other Entity for making a substantial contribution in the Chapter 11 Case) must file and serve on the Reorganized Debtor and on such Entities who are designated by the Bankruptcy Rules an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the last date of the calendar month in which the Effective Date occurs.

**No Bar Date for Ordinary Course Liabilities**

51.     Holders of Administrative Expense Claims based on obligations incurred by the Debtor in the ordinary course of its business shall not be required to file or serve any request for payment of such Claims and shall be paid in full by the Debtor or performed by the Reorganized Debtor, when due in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, if any.

**Bar Date for Rejection Damage Claims and Non-Asbestos Claims**

52.     If the rejection of an executory contract or unexpired lease pursuant to section 8.1 of the Modified Plan (<u>see</u> ¶ 49 above) gives rise to a Claim by the other party or parties to such contract or lease, such Claims shall be forever barred and shall not be enforceable against the

25

Debtor or the Reorganized Debtor, its successors or their respective properties unless a Proof of Claim is filed on or before the later to occur of: (a) thirty (30) days after the date of entry of an order of this Court approving such rejection; or (b) thirty (30) days after service of notice of such rejection, if such rejection occurs by expiration of the time fixed by this Court. Objections to Claims filed as a result of the rejection of an executory contract or unexpired lease shall be filed with this Court within thirty (30) days of such filing.

53.     Except as otherwise provided in paragraphs 50, 51 and 52 of this Order, all Claims other than Asbestos Claims shall be forever barred and shall not be enforceable against the Debtor or the Reorganized Debtor, its successors, or their respective properties unless a Proof of Claim is filed within ninety (90) days after the Confirmation Date.

**L.     Retention of Jurisdiction**

54.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court shall retain and shall have jurisdiction in accordance with the Modified Plan and the other Plan Documents.

55.     The Asbestos PI Trust shall be subject to the continuing jurisdiction of this Court in accordance with the requirements of section 468B of the IRC and the regulations issued pursuant thereto.

56.     ABB shall be subject to the jurisdiction of this Court as and to the extent provided in the Modified Plan and the other Plan Documents.

**M.     Exculpation**

57.     To the extent permitted by law applicable to cases under title 11 of the United States Code in the District of Delaware as of the Effective Date, the Reorganized Debtor, the

26

Debtor, the ABB Indemnified Parties, the Alstom Protected Parties, the CCC, the CE Settlement

Trust Protected Parties, the Trustees, each of the Additional Indemnitees and each of their

respective Representatives (i) shall not have or incur any liability to any Entity for any act or

omission in connection with or arising out of the negotiation of the Modified Plan, the Lummus

Plan, or any other prior plan of reorganization (or document, agreement or instrument related

thereto) proposed in or in connection with the Chapter 11 Case, negotiation of the settlement

provided in the ABB and Non-Debtor Affiliate Settlement Agreement, negotiation of the

settlement provided in the CE Settlement Trust Agreement, the CE Settlement Trust Settlement

Agreement, negotiation of the settlement provided in the Master Settlement Agreement, the

pursuit of confirmation of the Modified Plan, the Lummus Plan, or any other prior plan of

reorganization (or document, agreement or instrument related thereto) proposed in the Chapter 11

Case, the consummation of the Modified Plan or the settlements provided in the ABB and Non-

Debtor Affiliate Settlement Agreement, the CE Settlement Trust Agreement or the CE Settlement

Trust Settlement Agreement, the Master Settlement Agreement, any Adoption Agreement, or the

administration of the Modified Plan, the Lummus Plan, or the property to be distributed under the

Modified Plan; and (ii) in all respects shall be entitled to rely upon the advice of counsel with

respect to their duties and responsibilities under the Modified Plan and the other Plan Documents

or any other prior plan of reorganization (or document, agreement or instrument related thereto)

proposed in the Chapter 11 Case.

## N.    **Releases**

58.    To the extent permitted by law applicable to cases under title 11 of the United States Code in the District of Delaware as of the Effective Date, other than rights to the treatment provided in Article 3 of the Modified Plan or as otherwise provided herein, on and after the Effective Date, each holder of a Claim (i) who has accepted the Modified Plan, or (ii) who is entitled to receive a Distribution of property under the Modified Plan, shall be deemed to have unconditionally released the Released Parties, the Unsecured Creditors' Committee, the Future Claimants' Representative, the CCC, the CE Settlement Trustee, and their current and former Representatives from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtor or the Reorganized Debtor, the Chapter 11 Case, or the negotiation, formulation, and preparation of the Modified Plan or any related agreements, instruments, or other documents or any other prior plan of reorganization (or document, agreement or instrument related thereto) proposed in the Chapter 11 Case.

59.    With respect to Asbestos Claims and Demands, anything in the Modified Plan, any Plan Document, this Order, the Channeling Injunction or otherwise to the contrary notwithstanding, the releases, exculpatory provisions, injunctions, and indemnifications provided to or afforded any Released Party shall operate and be construed to release, exculpate, benefit, or indemnify such Released Party (subject also to the other limitations set forth in the Modified Plan

28

and Plan Documents) only as to such Asbestos Claims or Demands (whether now existing or hereafter arising) based upon the Debtor's direct or indirect liability or alleged liability. For the sake of clarity, Asbestos Claims and Demands "based upon the Debtor's direct or indirect liability or alleged liability" include Asbestos Claims and Demands (whether now existing or hereafter arising) against any Alstom Protected Party which is (i) a former subsidiary of the Debtor, or (ii) a direct or indirect successor to, or transferee of assets of, the Debtor or a former Subsidiary of the Debtor (or against any Entity that, pursuant to the Modified Plan or otherwise after the Effective Date, becomes a direct or indirect transferee of, or successor to, any such Alstom Protected Party or any of the assets of any such Alstom Protected Party (but only to the extent that any such Entity is or may be alleged to be directly or indirectly liable for Asbestos Claims and Demands and such liability is asserted to exist as a result of its becoming such a transferee or successor)), in either case to the extent such Asbestos Claims and Demands arise as a consequence of the products, business or operations of such Alstom Protected Party when such Alstom Protected Party was a Subsidiary of the Debtor.

60.     Effective as of the Effective Date, the Released Parties shall be released from all claims of the Debtor and the Asbestos PI Trust pursuant to and in accordance with the ABB and Non-Debtor Affiliate Settlement Agreement.

61.     Effective as of the Effective Date, the Asbestos PI Trust and the Reorganized Debtor shall have all of the obligations to indemnify the Released Parties pursuant to and in accordance with the ABB and Non-Debtor Affiliate Settlement Agreement.

29

## O.    Trinchese Adversary Proceeding

62.    The compromise and settlement of the Trinchese Adversary Proceeding on the terms and conditions set forth in the Modified Plan is approved in all respects and on or as soon as practicable (and not later than 60 days) after the Effective Date the plaintiffs and/or the Trustees are, and each of them hereby is, authorized and directed to file a discontinuance, with prejudice, of the Trinchese Adversary Proceeding.

## P.    Miscellaneous

63.    On the Confirmation Date, the Debtor shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable it to implement effectively: (a) the provisions of the Modified Plan; and (b) the creation of the Asbestos PI Trust.

64.    On the Effective Date, the Unsecured Creditors' Committee, shall be released and discharged as provided in section 11.6 of the Modified Plan.

65.    The Reorganized Debtor shall file a notice that the Modified Plan has become effective within ten (10) days after the Effective Date.

66.    On or before the Effective Date, all fees payable pursuant to 28 U.S.C. § 1930(a)(6), will be paid by the applicable Debtor or Reorganized Debtor.  All fees payable pursuant to 28 U.S.C. § 1930(a)(6) will thereafter be paid by the Reorganized Debtor in accordance with applicable law until the Chapter 11 Case is converted, dismissed, closed or final decreed pursuant to 11 U.S.C. § 350.  In addition, the Reorganized Debtor shall file any and all post-confirmation reports in accordance with Bankruptcy Rule 2015 and the United States trustee guidelines.

30

67.     Except as otherwise expressly provided in the Modified Plan or otherwise Allowed by Final Order of this Court, no interest, penalty, or late charge arising after the Petition Date shall be Allowed on any Claim or Equity Interest.

68.     No attorneys' fees, Non-Compensatory Damages, penalties, or interest shall be paid with respect to any Claim or Equity Interest except as Allowed by a Final Order of this Court or in accordance with the terms of the TDP.

69.     The failure to reference or discuss any particular provision of the Modified Plan in this Order shall have no effect on the validity, binding effect, and enforceability of such provision and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Modified Plan.

70.     Unless this Order is stayed pending appeal, its reversal or modification shall not affect the validity of the Modified Plan, the Plan Documents, or any other agreement, document, instrument, or action authorized by this Order or under the Modified Plan as to the Debtor, Reorganized Debtor, the Asbestos PI Trust, the CE Settlement Trust or any other Entity acting in good faith, whether or not that Entity knows of the appeal.

71.     The performance of all obligations which shall be due and owing on the Effective Date pursuant to the terms of the Modified Plan shall constitute substantial consummation of the Modified Plan within the meaning of section 1101(2) of the Bankruptcy Code. Notwithstanding any closing of this Chapter 11 Case, any of the Debtor, the Reorganized Debtor, the Asbestos PI Trust, the TAC, or the Future Claimants' Representative may move, on notice to those Persons on the master service list, to reopen the Chapter 11 Case for the purpose of seeking relief pursuant to the retained jurisdiction of the Bankruptcy Court provided herein, in the Modified Plan or under applicable law.

31

72.    In the event of any inconsistency between the Modified Plan and any other agreement, instrument, or document intended to implement the provisions of the Modified Plan, the provisions of the Modified Plan shall govern unless otherwise expressly provided for in such agreements, instruments or documents. In the event of any inconsistency between and/or among the Modified Plan and this Order, the provisions of this Order shall govern. This Order shall supersede any orders of this Court issued prior to the Effective Date that may be inconsistent herewith.

73.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtor shall be, and hereby is, directed to serve a notice of the (i) the entry of this Order, (ii) the bar date for filing Claims based on the rejection of executory contracts or unexpired leases, (iii) the bar date for filing non-asbestos claims and (iv) the date for filing final applications for compensation and reimbursement of expenses hereunder. The Debtor shall submit a proposed form of notice to this Court within ten (10) days hereof.

74.    The Debtor shall be, and hereby is, directed to publish the Confirmation Notice once in The Wall Street Journal (National Edition) no later than thirty (30) days after the Confirmation Date.

75.    Subject to the terms and applicable policy limits of the Subject Insurance Policies and section 7.4.3(h) of the Modified Plan, nothing in the Modified Plan, the Asbestos Insurance Assignment or this Order shall be deemed to impair or affect, in any way, the rights, claims and causes of action of Neles-Jamesbury, Inc., or its successors or assigns, under or arising from any policy of insurance under which Jamesbury Corp. n/k/a Neles-Jamesbury, Inc. and the Debtor were at any time both insured, including under the Subject Insurance Policies or policies that are the subject of the Subject Insurance Settlement Agreements, including any claims set forth in that

32

certain declaratory action captioned as <u>Neles-Jamesbury, Inc. v. Liberty Mutual Ins. Co. et al.</u>,
Civil Action Number 02-0982A pending before the Superior Court Department of the Trial Court
for Worcester County, Massachusetts, but only to the extent that such claims are not Asbestos
Claims permanently enjoined from being asserted against Neles-Jamesbury pursuant to the
Channeling Injunction.

76.    The Settlement Agreement dated as June 14, 2003 by and among Liberty Mutual
Insurance Company, ABB Lummus Global, Inc., ABB Holdings Inc., as successor by merger to
Asea Brown Boveri, Inc., and the Debtor is hereby incorporated herein by reference.

77.    A copy of this Order shall be immediately served on the parties listed on the 2002
Notice List and the Official Service List.

So ORDERED and RECOMMENDED FOR AFFIRMANCE BY THE U.S. DISTRICT
COURT this __19__ day of December, 2005.

_Judith K. Fitzgerald_
reb
_____
Judith K. Fitzgerald

U.S. Bankruptcy Judge

33