# Tab (g)

# THE FLINTKOTE COMPANY AND
# FLINTKOTE MINES LIMITED

## ASBESTOS PERSONAL INJURY TRUST AGREEMENT

## THE FLINTKOTE COMPANY AND
## FLINTKOTE MINES LIMITED

### ASBESTOS PERSONAL INJURY TRUST AGREEMENT

#### TABLE OF CONTENTS                                    Page

| | | |
|---|---|---|
| Article I. | Agreement of Trust | 2 |
| 1.1 | Creation and Name | 2 |
| 1.2 | Purpose | 2 |
| 1.3 | Transfer of Assets | 2 |
| 1.4 | Assumption of Liabilities and Certain Obligations | 2 |
| Article II. | Powers and Trust Administration | 3 |
| 2.1 | Powers | 3 |
| 2.2 | General Administration | 5 |
| 2.3 | Claims Administration | 8 |
| Article III. | Qualified Settlement Fund | 8 |
| 3.1 | Tax Treatment | 8 |
| 3.2 | No Right to Reversion with respect to Trust Assets | 8 |
| 3.3 | Obligations of the Trustees | 8 |
| 3.4 | Obligations of the Debtors | 8 |
| 3.5 | No Contravention of Requirements | 9 |
| Article IV. | Accounts, Investments and Payments | 9 |
| 4.1 | Accounts | 9 |
| 4.2 | Investments | 9 |
| 4.3 | Source of Payments | 10 |
| Article V. | Trustees; Delaware Trust | 11 |
| 5.1 | Initial Trustees | 11 |
| 5.2 | Term of Service | 11 |
| 5.3 | Successor Trustees | 11 |
| 5.4 | Liability of Trustees, Delaware Trustee, Officers and Employees | 12 |
| 5.5 | Compensation and Expenses of Trustees | 12 |
| 5.6 | Indemnification of Trustees and Additional Indemnitees | 13 |

**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| 5.7 | Trustees' Lien | 13 |
| 5.8 | Trustees' Employment of Experts; Delaware Trustee's Employment of Counsel | 13 |
| 5.9 | Trustees' Independence | 14 |
| 5.10 | Bond | 14 |
| 5.11 | Delaware Trustee | 14 |
| Article VI. | Trust Advisory Committee | 15 |
| 6.1 | Initial Members of the TAC | 15 |
| 6.2 | Duties | 15 |
| 6.3 | Term of Office | 15 |
| 6.4 | Successor Members of the TAC | 16 |
| 6.5 | TAC's Employment of Professionals | 16 |
| 6.6 | Compensation and Expenses of TAC | 17 |
| 6.7 | Procedures for Consultation with and Obtaining the Consent of the TAC | 17 |
| Article VII. | The Future Claimants' Representative | 19 |
| 7.1 | Appointment of Initial Future Claimants' Representative | 19 |
| 7.2 | Duties | 19 |
| 7.3 | Term of Office | 19 |
| 7.4 | Appointment of Successor | 19 |
| 7.5 | Future Claimants' Representative's Employment of Professionals | 20 |
| 7.6 | Compensation and Expenses of the Future Claimants' Representative | 21 |
| 7.7 | Procedures for Consultation with and Obtaining the Consent of the Future Claimants' Representative | 21 |
| Article VIII. | General Provisions | 22 |
| 8.1 | Irrevocability | 22 |
| 8.2 | Termination | 22 |
| 8.3 | Amendments | 23 |
| 8.4 | Severability | 24 |
| 8.5 | Notices | 24 |
| 8.6 | Successors and Assigns | 25 |

**TABLE OF CONTENTS**
(continued)

Page

| 8.7 | Limitation on Claim Interests for Securities Laws Purposes | 26 |
|-----|-----------------------------------------------------------|----|
| 8.8 | Entire Agreement; No Waiver | 26 |
| 8.9 | Headings | 26 |
| 8.10 | Governing Law | 26 |
| 8.11 | Settlor Representative and Cooperation | 26 |
| 8.12 | Dispute Resolution | 26 |
| 8.13 | Enforcement and Administration | 27 |
| 8.14 | Effectiveness | 27 |
| 8.15 | Counterpart Signatures | 27 |

## ASBESTOS PERSONAL INJURY TRUST AGREEMENT

This ASBESTOS PERSONAL INJURY TRUST AGREEMENT (this "Trust Agreement"), dated as of [_____], 2007, is made by and among The Flintkote Company and Flintkote Mines Limited (collectively, the "Debtors"), debtors-in-possession in Jointly Administered Case No. 04-11300 (JKF) in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), as the settlors of the trust established pursuant to this Trust Agreement (the "Trust") in accordance with the Joint Plan of Reorganization in Respect of The Flintkote Company and Flintkote Mines Limited filed pursuant to section 1121(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and confirmed by an order of the Bankruptcy Court dated [_____], 2007 (the "Plan"), the trustees of the Trust appointed as contemplated by Section 5.1 below (the "Trustees"), Wilmington Trust Company, (the "Delaware Trustee"), the members of the Trust Advisory Committee established pursuant to this Agreement and the Plan (the "TAC") appointed as contemplated by Section 6.1 below, and the legal representative for the holders of future Asbestos Personal Injury Claims (hereinafter for ease of reference "Asbestos Trust Claims") appointed as contemplated by Section 7.1 below (the "Future Claimants' Representative"). All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. All terms used but not defined herein or in the Plan but defined in the Bankruptcy Code or Bankruptcy Rules shall have the meanings ascribed to them in the Bankruptcy Code and Bankruptcy Rules, as the case may be.

WHEREAS, at the time of the entry of the order for relief in its Reorganization Case, the Debtors were named as defendants in actions involving Asbestos Trust Claims; and

WHEREAS, the Debtors have reorganized under the provisions of chapter 11 of the Bankruptcy Code in a case pending in the Bankruptcy Court known as In re The Flintkote Company and Flintkote Mines Limited, Debtors, Jointly Administered Case No. 04-11300 (JKF); and

WHEREAS, the Plan has been confirmed by the Bankruptcy Court; and

WHEREAS, the Plan provides, *inter alia*, for the creation of the Trust in accordance with this Trust Agreement; and

WHEREAS, pursuant to the Plan, the Trust is to use its assets and income to satisfy all Asbestos Trust Claims; and

WHEREAS, it is the intent of each of the Debtors, the Trustees, the TAC and the Future Claimants' Representative that the Trust be administered, maintained and operated at all times through mechanisms that provide reasonable assurance that the Trust will satisfy all Asbestos Trust Claims paid in accordance with the Trust Distribution Procedures in substantially the form of Exhibit B to the Plan (the "Trust Distribution Procedures" or "TDP") in substantially the same manner and in strict compliance with this Trust Agreement; and

WHEREAS, pursuant to the Plan, the Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC; and

WHEREAS, the Bankruptcy Court has determined that the Trust and the Plan satisfy all the prerequisites for an injunction pursuant to section 524(g) of the Bankruptcy Code and such injunction has been entered in connection with the Confirmation Order;

NOW, THEREFORE, it is hereby agreed as follows:

## Article I.    Agreement of Trust

1.1    Creation and Name. The Company, as the settlor of the Trust, hereby creates a trust known as "The Flintkote Asbestos Trust," which is the Trust provided for and referred to in the Plan. The Trustees may transact the business and affairs of the Trust in the name of the Trust. It is the intention of the parties hereto that the trust created hereby constitute a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the "Act") and that this document, together with the by-laws described herein, constitute the governing instruments of the Trust. The Trustees and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State.

1.2    Purpose. The purpose of the Trust is to (a) assume the liabilities of the Reorganized Debtors and their predecessors and successors in interest for all Asbestos Trust Claims, (b) preserve, hold, manage and maximize the Trust Assets (as defined below) for use in paying and otherwise satisfying Asbestos Trust Claims and paying the Trust Expenses, (c) direct the processing, liquidation and payment of all Asbestos Trust Claims in accordance with the Trust Distribution Procedures, and (d) otherwise comply in all respects with the requirements of a trust set forth in section 524(g)(2)(B) of the Bankruptcy Code, all in accordance with the Plan and this Trust Agreement.

1.3    Transfer of Assets. Pursuant to the Plan, the Trust Assets as defined in the Plan have been issued or transferred to the Trust free and clear of any liens, security interests and other claims or causes of action. In furtherance of the purpose of the Trust, the Trustees, on behalf of the Trust, hereby expressly accept such issuance and transfer to the Trust of the Trust Assets.

1.4    Assumption of Liabilities and Certain Obligations.

(a)    In furtherance of the purpose of the Trust, the Trustees, on behalf of the Trust, expressly assume all liability and responsibility for (i) all Asbestos Trust Claims and (ii) the Trust Expenses. The Trustees, on behalf of the Trust, shall cooperate with the Reorganized Debtors and use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things that the Reorganized Debtors may reasonably consider necessary, appropriate or desirable to effect such assumption.

(b)    The Trust shall advocate in any and all actions and proceedings brought against any Reorganized Debtor that involve Asbestos Trust Claims that such Claims are and have been channeled to the Trust and shall cooperate with such Reorganized Debtor in any and all such actions and proceedings.

(c)    Except as otherwise provided in this Trust Agreement and the Trust Distribution Procedures, the Trust shall have all defenses, cross-claims, offsets and recoupments,

- 2 -

as well as rights of indemnification, contribution, subrogation and similar rights, regarding Asbestos Trust Claims that any Reorganized Debtor has under applicable law. Regardless of the foregoing, however, except as otherwise provided in Section 5.1(a)(2) of the Trust Distribution Procedures, a claimant must meet otherwise applicable federal, state and foreign statutes of limitations and repose.

(d)     Each Reorganized Debtor shall be entitled to indemnification from the Trust for any out-of-pocket fees and expenses and attorneys' fees and expenses, judgments, settlements or other liabilities arising from or reasonably incurred by or on behalf of such Reorganized Debtor on or after the Effective Date in connection with any action, suit or proceeding related to Asbestos Trust Claims, whether civil, administrative or arbitrative, including without limitation indemnification or contribution for such Claims prosecuted against such Reorganized Debtor.

(e)     Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability or effectiveness of the Section 524(g) injunction issued in connection with the Plan or the Trust's assumption of all liability for Asbestos Trust Claims, subject to the provisions of Section 1.4(c) above.

Article II.     Powers and Trust Administration

2.1     Powers.

(a)     The Trustees are, and shall act as, the fiduciaries to the Trust in accordance with the provisions of this Trust Agreement, the Trust Distribution Procedures and the Plan. The Trustees shall at all times administer the Trust and the Trust Assets in accordance with the purpose set forth in Section 1.2 above. Subject to the Plan and this Trust Agreement, the Trustees shall have the power to take any and all actions that they may consider necessary, appropriate or desirable to fulfill the purpose of the Trust, including without limitation each power expressly granted in this Section 2.1, any power reasonably incidental thereto and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)     Except as required by applicable law, the Plan or this Trust Agreement, the Trustees need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)     Subject to and without limiting the generality of Section 2.1(a) above, and except as limited below, the Trustees shall have the power to:

(i)     receive and hold the Trust Assets and exercise all rights and powers with respect thereto, including without limitation voting and dispositive powers with respect thereto;

(ii)     invest the monies held from time to time by the Trust;

(iii)     sell, transfer or exchange any or all of the Trust Assets at such prices and upon such terms as the Trustees may consider necessary, appropriate or desirable in fulfilling the purpose of the Trust;

- 3 -

(iv)    enter into such leasing and financing agreements with third parties as the Trustees may consider necessary, appropriate or desirable in fulfilling the purpose of the Trust;

(v)    pay liabilities and expenses of the Trust, including without limitation the Trust Expenses;

(vi)    establish funds, reserves and accounts within the Trust estate, as contemplated by Article IV below;

(vii)    sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding;

(viii)    establish, supervise and administer the Trust in accordance with this Trust Agreement and the Trust Distribution Procedures;

(ix)    appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing and forecasting and other advisors, consultants, independent contractors and agents and, to the extent permitted by the fiduciary duties of the Trustees, delegate to such persons such powers and authorities, in each case as the Trustees may consider necessary, appropriate or desirable in fulfilling the purpose of the Trust;

(x)    pay any officers, employees, legal, financial, accounting, investment, auditing and forecasting and other advisors, consultants, independent contractors and agents engaged by the Trust, including without limitation those engaged by the Trust in connection with its alternative dispute resolution activities pursuant to Section 8.12 below, reasonable compensation;

(xi)    compensate (A) each Trustee, (B) the Delaware Trustee and (C) each member of the TAC, the Future Claimants' Representative and their respective officers, employees, legal, financial, accounting, investment, auditing and forecasting and other advisors, consultants, independent contractors and agents, and reimburse each Trustee, each member of the TAC and the Future Claimants' Representative any out-of-pocket fees and expenses reasonably incurred by or on behalf of him or her in connection with the performance of his or her duties hereunder, all as provided below;

(xii)    execute and deliver such instruments as the Trustees may consider necessary, appropriate or desirable in fulfilling the purpose of the Trust;

(xiii)    enter into such other arrangements with third parties as the Trustees may consider necessary, appropriate or desirable in fulfilling the purpose of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement;

(xiv)    in accordance with Section 5.6 below, defend, indemnify and hold harmless (and purchase insurance indemnifying) (A) the Trustees and (B) the TAC, the Future Claimants' Representative, the officers and employees of the Trust and any advisors, consultants and agents of the Trust, the TAC or the Future Claimants' Representative (collectively, the "Additional Indemnitees"), to the fullest extent that a statutory trust organized under the laws of

- 4 -

the State of Delaware is from time to time entitled to indemnify and/or insure its directors, trustees, officers, employees, advisors, consultants and agents;

(xv) delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Section 5.4 below; and

(xvi) consult with the Debtors, the TAC or the Future Claimants' Representative at such times and with respect to such issues relating to the conduct of the Trust as the Trustees may consider necessary, appropriate or desirable; and

(xvii) make, pursue (by litigation or otherwise), collect, compromise or settle, in the name of the Trust, any claim, right, action or cause of action included in the Trust Assets including, but not limited to, insurance recoveries, before any court of competent jurisdiction; provided that settlement of actions before the Bankruptcy Court require the approval of the Bankruptcy Court after notice to the Reorganized Debtors.

(d) Notwithstanding anything to the contrary contained herein, the Trustees shall not have the power to guarantee any debt of other persons.

(e) The Trustees shall give the TAC and the Future Claimants' Representative prompt notice of any act performed or taken pursuant to Section 2.1(c)(i), (iii), (vii) or (xvi) above and any act proposed to be performed or taken of the type described in Section 2.2(e) below.

2.2 General Administration.

(a) The Trustees shall adopt and act in accordance with written bylaws (the "Trust Bylaws"). To the extent not inconsistent with this Trust Agreement, the Trust Bylaws shall govern the affairs of the Trust. In the event of an inconsistency between the Trust Bylaws and this Trust Agreement, this Trust Agreement shall govern.

(b) The Trustees shall timely account to the Bankruptcy Court as follows:

(i) The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available and in any event within one hundred twenty (120) days following the end of each fiscal year of the Trust, an annual report containing financial statements of the Trust (including without limitation a balance sheet of the Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of Asbestos Trust Claims and as to the conformity of the financial statements with generally accepted accounting principles. The Trustees shall provide a copy of such report to the TAC and the Future Claimants' Representative when such reports are filed with the Bankruptcy Court.

- 5 -

(ii)     Simultaneously with delivery of each set of financial statements referred to in Section 2.2(b)(i) above, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of Asbestos Trust Claims disposed of during the period covered by the financial statements. The Trustees shall provide a copy of such report to the TAC and the Future Claimants' Representatives when such report is filed.

(iii)    All materials required to be filed with the Bankruptcy Court by this Section 2.2(b) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the United States Trustee.

(c)     The Trustees shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year of the Trust a budget and cash flow projections covering such fiscal year and the succeeding four fiscal years. The budget and cash flow projections shall include a determination of the "Maximum Annual Payment" pursuant to Section 2.4 of the Trust Distribution Procedures and the "Claims Payment Ratio" pursuant to Section 2.5 of the Trust Distribution Procedures. Within ten (10) days of the preparation thereof, the Trustees shall provide a copy of the budget and cash flow projections to the TAC and the Future Claimants' Representative.

(d)     The Trustees shall consult with both the TAC and the Future Claimants' Representative (i) on the general implementation and administration of the Trust, including without limitation with respect to any account or reserve established in accordance with Section 4.1 below, (ii) on the general implementation and administration of the Trust Distribution Procedures, and (iii) on such other matters as may be required under this Trust Agreement or the Trust Distribution Procedures.

(e)     The Trustees shall be required to obtain the consent of both the TAC and the Future Claimants' Representative pursuant to the consent process set forth in Section 6.7(b) and 7.7(b) below, as the case may be, in addition to any other instances elsewhere enumerated herein, in order:

(i)     to change the "Claims Payment Ratio" described in Section 2.5 of the Trust Distribution Procedures in the event that the requirements for such a change set forth in such provision have been met;

(ii)    to change the "Disease Levels," "Scheduled Values" and/or "Medical/Exposure Criteria" set forth in Section 5.3(a)(3) of the Trust Distribution Procedures and/or the "Maximum Values" set forth in Section 5.3 and Section 5.4 of the Trust Distribution Procedures;

(iii)   to change the "Payment Percentage" described in Section 2.3 of the Trust Distribution Procedures as provided in Section 4.2 of the Trust Distribution Procedures;

(iv)    to establish and/or to change the "Claims Materials" to be provided holders of Asbestos Trust Claims under Section 6.1 of the Trust Distribution Procedures;

- 6 -

(v)     to require that claimants provide additional kinds of medical and/or exposure evidence pursuant to Section 5.7 of the Trust Distribution Procedures;

(vi)    to change the form of release to be provided pursuant to Section 7.8 of the Trust Distribution Procedures;

(vii)   to terminate the Trust pursuant to Section 8.2(a)(i) or (ii) below;

(viii)  to change the compensation of the Trustees, the Delaware Trustee, the members of the TAC or the Future Claimants' Representative, other than to reflect reasonable cost-of-living increases or changes approved by the Bankruptcy Court as otherwise provided herein;

(ix)    to take structural or other actions to minimize any tax on the Trust Assets;

(x)     to amend any provision of this Trust Agreement;

(xi)    to amend any provision of the Trust Distribution Procedures;

(xii)   to adopt the Trust Bylaws in accordance with Section 2.2(a) above or thereafter to amend the Trust Bylaws;

(xiii)  to merge with or to acquire an interest in any asbestos claims resolution organization formed by the Trust with another asbestos claims resolution organization that is not specifically created by this Trust Agreement or the Trust Distribution Procedures, contract with another asbestos claims resolution organization or any other entity that is not specifically created by this Trust Agreement or the Trust Distribution Procedures or permit any other party to join in any asbestos claims resolution organization that is formed by the Trust pursuant to this Trust Agreement or the Trust Distribution Procedures; provided that any such merger, acquisition, contract or joinder shall not (a) subject any Reorganized Debtor to any risk of having any Asbestos Personal Injury Claim asserted against it or (b) otherwise jeopardize the validity or enforceability of the section 524(g) injunction; and provided, further, that the terms of any such merger will require the surviving organization to make decisions about the allowability and value of Asbestos Trust Claims in accordance with Section V of the Trust Distribution Procedures.

(f)     The Trustees shall meet with the TAC and the Future Claimants' Representative no less often than quarterly. The Trustees shall meet with the TAC and the Future Claimants' Representative between such quarterly meetings at mutually convenient times and locations when so requested by either the TAC or the Future Claimants' Representative.

(g)     The Trustees, upon notice from either the TAC or the Future Claimants' Representative, if practicable in view of pending business, shall, at their next meeting with the TAC or the Future Claimants' Representative, as the case may be, consider issues submitted by either of them.

-7-

(h)     Periodically, but not less often than once a year, the Trustees shall make available to holders of Asbestos Trust Claims and other interested parties the number of Asbestos Trust Claims by disease levels that have been resolved both by individual review and by arbitration, as well as by trial, indicating the amounts of the awards and the averages of the awards by jurisdiction pursuant to Section 7.10 of the Trust Distribution Procedures.

2.3     Claims Administration.  The Trustees shall promptly proceed to implement the Trust Distribution Procedures.

Article III.     Qualified Settlement Fund

3.1     Tax Treatment.  The Trust is intended to be treated for U.S. federal income tax purposes as a "qualified settlement fund" as described within section 1.468B-1 *et seq.* of the Treasury Regulations.  Accordingly, for all U.S. federal income tax purposes the transfer of assets to the Trust will be treated as a transfer to a trust satisfying the requirements of section 1.468B-1(c) of the Treasury Regulations by the Debtors, as transferors, for distribution to holders of Asbestos Trust Claims and in complete settlement of such claims.  Any income on the assets of the Trust will be treated as subject to tax on a current basis, and all distributions pursuant to the Plan will be made net of provision for taxes and subject to the withholding and reporting requirements set forth in the Plan and this Trust Agreement.

3.2     No Right to Reversion with respect to Trust Assets.  The Reorganized Debtors will have no rights to any refunds or reversion with respect to any Trust Assets or any earnings thereon.

3.3     Obligations of the Trustees.  The Trustees shall be the "administrator" (as defined in section 1.468B-2(k) of the Treasury Regulations) of the Trust and shall (a) timely file such income tax and other returns and statements and timely pay all taxes required to be paid from the assets in the Trust as required by law and in accordance with the provisions of the Plan and this Trust Agreement, (b) comply with all withholding obligations, as required under the applicable provisions of the IRC and of any state law and the regulations promulgated thereunder, (c) meet all other requirements necessary to qualify and maintain qualification of the Trust as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations, and (d) take no action that could cause the Trust to fail to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations.

3.4     Obligations of the Debtors.

(a)     Within sixty (60) days after the date of any transfer of assets to the Trust, the Debtors shall obtain a Qualified Appraisal of the fair market value of the assets transferred to the Trust.

(b)     Following the funding of the Trust and the receipt of the Qualified Appraisal pursuant to Section 3.4(a) above (and in no event later than February 15th of the calendar year following the date of this Agreement), the Debtors shall provide, or cause to be provided, to the Trustees a "§ 1.468B-3 Statement" in accordance with section 1.468B-3 of the Treasury Regulations.  Following any subsequent transfers of cash or other property to the Trust,

- 8 -

the transferor shall provide, or cause to be provided, to the Trustees a "§ 1.468B-3 Statement" on or before February 15th of the calendar year following the date of each such transfer.

3.5    No Contravention of Requirements. No provision in this Trust Agreement or the Trust Distribution Procedures shall be construed to mandate any distribution on any Claim or other action that would contravene the Trust's compliance with the requirements of a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq*. of the Treasury Regulations promulgated under section 468B of the IRC.

Article IV.    Accounts, Investments and Payments

4.1    Accounts.

(a)    The Trustees may from time to time create such accounts and reserves within the Trust estate as they may consider necessary, appropriate or desirable in order to provide for payment, or to make provisions for future payment, of Asbestos Trust Claims in accordance with the Trust Distribution Procedures or to provide for payment, or to make provisions for future payment, of Trust Expenses in accordance with this Trust Agreement and may, with respect to any such account or reserve, restrict the use of monies therein.

(b)    The Trustees shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 4.1 and, with respect to any such account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account and the payments from each such account in the accounts to be filed with the Bankruptcy Court and provided to the TAC and the Future Claimants' Representative pursuant to Section 2.2(b)(i) above.

4.2    Investments. Investment of monies held in the Trust shall be administered in the manner consistent with the standards set forth in the Uniform Prudent Investor Act, subject to the following limitations and provisions:

(a)    The Trust shall not acquire, directly or indirectly, equity in any entity (other than Reorganized Flintkote, Reorganized Mines or any successor to either of them) or business enterprise if, immediately following such acquisition, the Trust would hold more than 5% of the equity in such entity or business enterprise. The Trust shall not hold, directly or indirectly, more than 10% of the equity in any entity (other than Reorganized Flintkote, Reorganized Mines or any successor to either of them) or business enterprise.

(b)    The Trust shall not acquire or hold any long-term debt securities unless such securities (i) are rated "Baa" or higher by Moody's, "BBB" or higher by Standard & Poor's ("S&P") or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency or (ii) have been issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(c)    The Trust shall not acquire or hold for longer than ninety (90) days any commercial paper unless such commercial paper is rated "Prime-1" or higher by Moody's or "A-1" or higher by S&P or has been given an equivalent rating by another nationally recognized statistical rating agency.

- 9 -

(d)      Excluding any securities issued by Reorganized Flintkote, Reorganized Mines or any successor to either of them, the Trust shall not acquire or hold any preferred stock or securities convertible into common stock unless such preferred stock or convertible securities are rated "A" or higher by Moody's or S&P or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency.

(e)      The Trust shall not acquire any debt securities or other debt instruments issued by any entity (other than debt securities or other debt instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof) if, following such acquisition, the aggregate market value of all such securities or instruments issued by such entity held by the Trust would exceed 2% of the then-current aggregate value of the Trust Assets. The Trust shall not hold any debt securities or other debt instruments issued by any entity (other than debt securities or other instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof) to the extent that the aggregate market value of all such securities and instruments issued by such entity held by the Trust would exceed 5% of the then-current aggregate value of the Trust Assets.

(f)      The Trust shall not acquire or hold any certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, meet the standards set forth in Section 4.2(b) above.

(g)      The Trust may, without regard to the limitations set forth in Subsections (a) - (f) above, acquire and hold any securities or instruments issued to it by Reorganized Flintkote or Reorganized Mines pursuant to the Plan or obtained by it from any entity or business enterprise as proceeds of litigation or otherwise to resolve disputes.

(h)      The Trust shall not acquire or hold any repurchase obligations unless, in the opinion of the Trustees, they are adequately collateralized.

(i)      The Trust shall not acquire or hold any rights, warrants, options or similar securities.

    4.3      Source of Payments.

(a)      All payments to be made by the Trust, including without limitation payments in respect of Asbestos Trust Claims and the Trust Expenses, shall be payable solely by the Trustees out of the Trust Assets. None of the Reorganized Debtors, their subsidiaries or the present or former directors, officers, employees, advisors, consultants or agents of any of them, or the Trustees, the TAC or the Future Claimants' Representative or the present or former officers, employees, advisors, consultants or agents of any of them, shall be liable for the payment of any Asbestos Personal Injury Claim or any Trust Expense or other liability of the Trust. Nothing herein shall be deemed to waive any rights under any Asbestos Insurance Policy in respect of Asbestos Trust Claims or Trust Expenses or other liability of the Trust.

(b)      The Trustees shall include a reasonably detailed description of any payments made in accordance with this Section 4.3 in the accounts to be filed with the

- 10 -

Bankruptcy Court and provided to the Company, the TAC and the Future Claimants' Representative pursuant to Section 2.2(b)(i) above.

Article V.    Trustees; Delaware Trustee

5.1    Initial Trustees.

(a)    In addition to the Delaware Trustee appointed pursuant to Section 5.11 hereof, there shall be three (3) Trustees. The initial Trustees are the individuals identified on the signature page hereof.

(b)    Each initial Trustee shall serve until the earliest of (i) the end of his or her term pursuant to Section 5.2(a) below, (ii) his or her death, (iii) his or her resignation pursuant to Section 5.2(b) below, (iv) his or her removal pursuant to Section 5.2(c) below, or (v) the termination of the Trust pursuant to Section 8.2 below.

5.2    Term of Service.

(a)    Subject to the other provisions of this Article V, (i) each Trustee appointed in accordance with Section 5.1 above shall serve for an initial term expiring on the date indicated on the signature page hereof as the expiration date of such Trustee's initial term and (ii) except with respect to such initial terms, each Trustee shall serve for a term expiring five (5) years from the date on which the preceding term expired.

(b)    A Trustee may resign at any time by written notice to the remaining Trustees, the TAC and the Future Claimants' Representative. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    A Trustee may be removed by unanimous vote of the other Trustees in the event that he or she becomes unable to discharge his or her duties hereunder or for other good cause. Such removal shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

5.3    Successor Trustees.

(a)    Upon the termination of service of any Trustee, whether as a result of the expiration of his or her term or his or her death, resignation or removal, the remaining Trustees shall consult with both the TAC and the Future Claimants' Representative concerning appointment of a successor Trustee and, unless a majority of the members of the TAC, or the Future Claimants' Representative, vetoes the appointment, the vacancy shall be filled by the unanimous vote of the remaining Trustees. If the remaining Trustees cannot agree on a successor Trustee or a majority of the members of the TAC or the Future Claimants' Representative vetoes the appointment of a successor Trustee, the Bankruptcy Court shall make the appointment. Nothing in this Agreement shall prevent the reappointment of an individual serving as a Trustee for an additional term or terms.

- 11 -

(b)    Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustees.

(c)    Each successor Trustee shall serve until the earliest of (i) the end of a full term of five (5) years for which he or she was appointed if his or her immediate predecessor Trustee completed his or her term pursuant to Section 5.2(a) above, (ii) the end of the term of the Trustee whom he or she replaced if his or her predecessor Trustee did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 5.2(b) above, (v) his or her removal pursuant to Section 5.2(c) above, or (vi) the termination of the Trust pursuant to Section 8.2 below.

5.4    Liability of Trustees, Delaware Trustee, Officers and Employees. The Trustees, the Delaware Trustee and the individuals identified as Additional Indemnitees in Section 2.1(c)(xiv) above shall not be liable to the Trust, to any individual holding an Asbestos Personal Injury Claim or to any other person, except for such individual's own breach of trust committed in bad faith or willful misconduct. In addition, no Trustee, Delaware Trustee or Additional Indemnitee shall be liable for any act or omission of any other Trustee, Delaware Trustee or Additional Indemnitee unless such person acted with bad faith in the selection or retention of such other Trustee, Delaware Trustee or Additional Indemnitee.

5.5    Compensation and Expenses of Trustees.

(a)    Each Trustee shall receive compensation from the Trust for his or her services as a Trustee in the amount of $60,000 per annum, payable in a lump sum at the beginning of each year of service plus a per diem allowance for meetings attended or other Trust business performed in the amount of $2,500. A meeting is any scheduled, emergency or sub-committee meeting of the Asbestos PI Trustees that is noticed and/or authorized by the Trustees in which participation is either in person or telephonic and the duration of which is not less than two hours and not more than five hours. Each Trustee shall receive compensation at the rate of (i) $500 per hour for all time expended in preparation, in authorized special projects, in meetings of less than two hours duration, and in meetings in excess of five hours, and (ii) $250 per hour for non-working travel with, in each case, the time computed on a quarter hour basis. Each Trustee shall maintain hourly time records for such time. The per annum compensation does not function as a retainer and the per diem and hourly items are not charged against the per annum compensation. The Trustees shall determine the scope and duration of activities that constitute a meeting or other Trust business and, if the Trustee elects to provide for payment for activities of less than a full day's duration, may provide for a partial payment of the per diem amount on a proportional basis for such activities. The per annum compensation payable to the Trustee hereunder shall be reviewed every three (3) years and appropriately adjusted with the consent of the TAC and the Future Asbestos Claimants' Representatives. The Delaware Trustee shall be paid such compensation as is agreed pursuant to a separate fee agreement.

(b)    The Trust shall promptly reimburse each Trustee and the Delaware Trustee for any reasonable out-of-pocket fees and expenses reasonably incurred by him or her in connection with the performance of his or her duties as a Trustee.

- 12 -

(c)      The Trustees shall include a reasonably detailed description of the amounts paid under this Section 5.5 in the accounts to be filed with the Bankruptcy Court and provided to the Debtors, the TAC and the Future Claimants' Representative pursuant to Section 2.2(b)(i) above.

5.6      Indemnification of Trustees and Additional Indemnitees.

(a)      The Trust shall indemnify and defend each Trustee and each Additional Indemnitee in the performance of his or her duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and defend such person against any and all liabilities, expenses, claims, damages or losses incurred by or on behalf of him or her in the performance of his or her duties. Notwithstanding the foregoing, no Trustee or Additional Indemnitee shall be indemnified or defended in any way for any liability, expense, claim, damage or loss for which he or she is ultimately liable under Section 5.4 above.

(b)      Any fees and expenses reasonably incurred by or on behalf of a Trustee or an Additional Indemnitee in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which he or she is indemnified by the Trust pursuant to Section 5.6(a) above, including without limitation out-of-pocket fees and expenses and attorneys' fees and expenses, shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trustee or Additional Indemnitee, as the case may be, to repay such amount in the event that it shall be determined by a Final Order that such Trustee or Additional Indemnitee is not entitled to be indemnified by the Trust.

(c)      The Trustees may purchase and maintain reasonable amounts and types of insurance on behalf of an individual who is or was a Trustee or an Additional Indemnitee, including against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, a member of the TAC, the Future Claimants' Representative, an officer or employee of the Trust or an advisor, consultant or agent of the Trust, the TAC or the Future Claimants' Representative.

5.7      Trustees' Lien. The Trustees and the Additional Indemnitees shall have a first priority lien upon the Trust Assets to secure the payment of any amounts payable to them pursuant to Section 5.6 above.

5.8      Trustees' Employment of Experts; Delaware Trustee's Employment of Counsel.

(a)      The Trustees may, but shall not be required to, retain and/or consult with counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties reasonably deemed by the Trustees to be qualified as experts on any matter submitted to them, and, in the absence of gross negligence, the written opinion of or information provided by any such party reasonably deemed by the Trustees to be an expert on the particular matter submitted to him or her by the Trustees shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustees hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

- 13 -

(b)     The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

5.9     Trustees' Independence. No Trustee shall, during the term of his or her service, (a) hold a financial interest in, or act as attorney or agent or serve as any other professional for, any Reorganized Debtor or (b) act as an attorney for any person who holds an Asbestos Personal Injury Claim.

5.10    Bond. The Trustees shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

5.11    Delaware Trustee

(a)     There shall at all times be a Delaware Trustee, The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 5.11, it shall resign immediately in the manner and with the effect hereinafter specified in Section 5.11(c) below. For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.

(b)     The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustees set forth herein. The Delaware Trustee shall be one of the trustees of the Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.

(c)     The Delaware Trustee shall serve until such time as the Trustees remove the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustees in accordance with the terms of Section 5.11(d) below. The Delaware Trustee may resign at any time upon the giving of at least 60 days' advance written notice to the Trustees; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustees in accordance with Section 5.11(d) below. If the Trustees do not act within such 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

- 14 -

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustees shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act and Section 5.11(a) above. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Asbestos PI Trustees and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Agreement.

Article VI.     Trust Advisory Committee

6.1     Initial Members of the TAC.

(a)     The TAC shall consist of six (6) individuals. The initial members of the TAC are those individuals selected by the Asbestos Claimants' Committee, identified on the signature page hereof and confirmed as the initial members of the TAC by the Bankruptcy Court pursuant to the Confirmation Order.

(b)     Each initial member of the TAC shall serve until the earliest of (i) the end of his or her term pursuant to Section 6.3(a) below, (ii) his or her death, (iii) his or her resignation pursuant to Section 6.3(b) below, (iv) his or her removal pursuant to Section 6.3(c) below, or (v) the termination of the Trust pursuant to Section 8.2 below.

6.2     Duties. The members of the TAC shall serve in a fiduciary capacity, representing all of the holders of present Asbestos Trust Claims for the purpose of protecting the rights of such persons. The Trustees must consult with the TAC on matters identified in Section 2.2(d) above and in other provisions herein and must obtain the consent of the TAC on matters identified in Section 2.2(e) above.

6.3     Term of Office.

(a)     The initial members of the TAC appointed in accordance with Section 6.1(a) above shall serve the staggered three-, four-, or five-year terms shown on the signatures pages hereof. Thereafter, each term of service shall be five (5) years. Each member of the TAC shall serve until the earliest of (i) the end of his or her first full term of office, (ii) his or her death, (iii) his or her resignation, (iv) his or her removal, or (v) the termination of the Trust, in each case as specified in Sections 6.1(b) or 6.4(b), as applicable.

(b)     A member of the TAC may resign at any time by written notice to the other members of the TAC, the Trustees and the Future Claimants' Representative. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

- 15 -

(c)     A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member (such as repeated nonattendance of scheduled meetings) or for other good cause. Such removal shall be made at the recommendation of the other members of the TAC with the approval of the Bankruptcy Court.

### 6.4    Successor Members of the TAC.

(a)     If, prior to the termination of service of a member of the TAC other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a member of the TAC, such individual shall be his or her successor. If such member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor. Either a TAC member or his or her law firm may designate such TAC member to serve a successive term. If (i) a member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) he or she is removed pursuant to Section 6.3(c) above, his or her successor shall be appointed by a majority of the remaining members of the TAC or, if such members cannot agree on a successor, the Bankruptcy Court. Nothing in this Trust Agreement shall prevent the reappointment of an individual serving as a member of the TAC for an additional term or terms.

(b)     Each successor member of the TAC shall serve until the earliest of (i) the end of a full term of five (5) years for which he or she was appointed if his or her immediate predecessor member of the TAC completed his or her term pursuant to Section 6.3(a) above, (ii) the end of the term of the member of the TAC whom he or she replaced if his or her predecessor member did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 6.3(c) above, (v) his or her removal pursuant to Section 6.3(c) above, or (vi) the termination of the Trust pursuant to Section 8.2 below.

### 6.5    TAC's Employment of Professionals.

(a)     The TAC may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the TAC to be qualified as experts (the "TAC Professionals") on any matter submitted to the TAC. The TAC and the TAC Professionals shall at all times have complete access to the Trust's officers, employees and agents, as well as to any counsel, accountants, appraisers, auditors, forecasters, experts and financial or investment advisors retained by the Trust ("Trust Professionals"), and shall also have complete access to all information generated by them or otherwise available to the Trust or the Trustees; provided that in no event shall the TAC, its members or the TAC Professionals (i) have any role, whether by consent, consultation or otherwise, in the Trust's selection of counsel, experts or other professionals to defend claims against the Trust that are tendered to any insurer for defense or (ii) have any right to consult with or obtain information from the Trust or anyone employed by the Trust concerning the defense of any such claims; and provided, further, that in no event shall the TAC, its members or the TAC Professionals have any right to consult with counsel to the

- 16 -

Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Trust. In the absence of gross negligence, the written opinion of or information provided by any TAC Professional or Trust Professional reasonably deemed by the TAC to be qualified as an expert on the particular matter submitted to the TAC shall be full and complete authorization and protection in support of any action taken or not taken by the TAC in good faith and in accordance with the written opinion of or information provided by such TAC Professional or Trust Professional.

(b)    The Trust shall promptly reimburse, or pay directly if so instructed, the TAC for any reasonable fees and expenses associated with the TAC's employment of legal counsel pursuant to this provision in connection with the TAC's performance of its duties hereunder. The Trust shall also promptly reimburse, or pay directly if so instructed, the TAC for any reasonable fees and expenses associated with the TAC's employment of any other TAC Professional pursuant to this provision in connection with the TAC's performance of its duties hereunder; provided, however, that (i) the TAC has first submitted to the Trust a written request for such reimbursement setting forth the reasons (A) why the TAC desires to employ such TAC Professional and (B) why the TAC cannot rely on Trust Professionals to meet the needs of the TAC for such expertise or advice and (ii) the Trust has approved the TAC's request for reimbursement in writing. If the Trust agrees to pay for the TAC Professional, such reimbursement shall be treated as a Trust Expense of the Trust. If the Trust declines to pay for the TAC Professional, it must set forth its reasons in writing. If the TAC still desires to employ such TAC Professional at the expense of the Trust, the TAC and/or the Trustees shall resolve their dispute in accordance with Section 8.12 below.

6.6    Compensation and Expenses of TAC. Each member of the TAC shall receive compensation from the Trust for attendance at meetings or other Trust business performed in the form of a reasonable hourly rate set by the Trustees. In addition, the Trust shall promptly reimburse each member of the TAC for any out-of-pocket fees and expenses reasonably incurred by him or her in connection with the performance of his or her duties as a member of the TAC. Such compensation or reimbursement shall be deemed a Trust Expense. The Trust shall include a reasonably detailed description of the amounts paid under this Section 6.6 in the accounts to be filed with the Bankruptcy Court and provided to the Debtors, the TAC and the Future Claimants' Representative pursuant to Section 2.2(b)(i) above.

6.7    Procedures for Consultation with and Obtaining the Consent of the TAC.

(a)    Consultation Process.

(i)    In the event the Trustees are required to consult with the TAC pursuant to Section 2.2(d) above or on other matters as provided herein, the Trustees shall provide the TAC with written advance notice of the matter under consideration and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustees shall also provide the TAC with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustees are considering such matter and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with

- 17 -

the Trustees; provided that in no event shall the TAC or its members (i) have any role, whether by consent, consultation or otherwise, in the Trust's selection of counsel, experts or other professionals to defend claims against the Trust that are tendered to any insurer for defense or (ii) have any right to consult with or obtain information from the Trust or anyone employed by the Trust concerning the defense of any such claims; and provided further, that in no event shall the TAC or its member have any right to consult with counsel to the Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Trust.

> (ii)    In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 6.7(a), the Trustees shall take into consideration the time required for the TAC, if its members so wish, to engage and consult with its own independent financial or investment advisors as to such matter. In any event, the Trustees shall not take definitive action on any such matter until at least thirty (30) days after providing the TAC with the initial written notice that such matter is under consideration by the Trustees, unless such time period is waived by the TAC.

> (b)    Consent Process.

> (i)    In the event the Trustees are required to obtain the consent of the TAC pursuant to Section 2.2(e) above, the Trustees shall provide the TAC with a written notice stating that its consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustees propose to take and explaining in detail the reasons why the Trustees desire to take such action. The Trustees shall provide the TAC as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Trustees shall also provide the TAC with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustees are considering such action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustees; provided that in no event shall the TAC or its members (i) have any role, whether by consent, consultation or otherwise, in the Trust's selection of counsel, experts or other professionals to defend claims against the Trust that are tendered to any insurer for defense or (ii) have any right to consult with or obtain information from the Trust or anyone employed by the Trust concerning the defense of any such claims; and provided further, that in no event shall the TAC or its member have any right to consult with counsel to the Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Trust.

> (ii)    The TAC must consider in good faith and in a timely fashion any request for its consent by the Trustees and must in any event advise the Trustees in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustees. The TAC may not withhold its consent unreasonably. If the TAC decides to withhold its consent, it must explain in detail its objections to the proposed action. If the TAC does not advise the Trustees in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding such request, the TAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

- 18 -

(iii)     If, after following the procedures specified in this Section 6.7(b), the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustees and/or the TAC shall resolve their dispute in accordance with Section 8.12 below. However, the burden of proof with respect to the validity of the TAC's objection and withholding of its consent shall be on the TAC.

Article VII.     The Future Claimants' Representative

7.1     Appointment of Initial Future Claimants' Representative. The initial Future Claimants' Representative shall be James J. McMonagle, the individual appointed by order of the Bankruptcy Court on October 26, 2004 as the legal representative for future asbestos-related claimants.

7.2     Duties. The Future Claimants' Representative shall serve in a fiduciary capacity, representing the interests of the holders of future Asbestos Trust Claims for the purpose of protecting the rights of such persons. The Trustees must consult with the Future Claimants' Representative on matters identified in Section 2.2(d) above and on certain other matters provided herein and must obtain the consent of the Future Claimants' Representative on matters identified in Section 2.2(e) above.

7.3     Term of Office.

(a)     Each Future Claimants' Representative shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 7.3(b) below, (iii) his or her removal pursuant to Section 7.3(c) below, or (iv) the termination of the Trust pursuant to Section 8.2 below.

(b)     The Future Claimants' Representative may resign at any time by written notice to the Trustees. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     At the request of the Trustees, the Future Claimants' Representative may be removed pursuant to an order of the Bankruptcy Court in the event he or she becomes unable to discharge his or her duties hereunder or for other good cause.

7.4     Appointment of Successor. If the Future Claimants' Representative dies or resigns and, prior to his or her death or the effectiveness of his or her resignation, he or she has designated in writing an individual to succeed him or her as the Future Claimants' Representative, subject to the approval of the Bankruptcy Court, such individual shall be his or her successor. If the Future Claimants' Representative is removed in accordance with Section 7.3(c) above, the Trustees, in consultation with the TAC and subject to the approval of the Bankruptcy Court, shall appoint such Future Claimants' Representative's successor. If (a) the Future Claimants' Representative dies or resigns and did not designate an individual to succeed him or her prior to such death or resignation as contemplated above or (b) he or she is removed in accordance with Section 7.3(c) above but the Trustees cannot agree on or otherwise do not appoint a successor for such Future Claimants' Representative, the Bankruptcy Court shall make such appointment.

- 19 -

7.5    Future Claimants' Representative's Employment of Professionals.

(a)    The Future Claimants' Representative may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the Future Claimants' Representative to be qualified as experts (the "Future Representative Professionals") on any matter submitted to the Future Claimants' Representative. The Future Claimants' Representative and the Future Representative Professionals shall at all times have complete access to the Trust's officers, employees and agents, as well as to Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the Trust or the Trustees; provided that in no event shall the Future Claimants' Representative or the Future Representative Professionals (i) have any role, whether by consent, consultation or otherwise, in the Trust's selection of counsel, experts or other professionals to defend claims against the Trust that are tendered to any insurer for defense or (ii) have any right to consult with or obtain information from the Trust or anyone employed by the Trust concerning the defense of any such claims; and provided further, that in no event shall the Future Claimants' Representative or the Future Representative Professionals have any right to consult with counsel to the Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Trust. In the absence of gross negligence, the written opinion of or information provided by any Future Representative Professional or Trust Professional reasonably deemed by the Future Claimants' Representative to be qualified as an expert on the particular matter submitted to the Future Claimants' Representative shall be full and complete authorization and protection in support of any action taken or not taken by the Future Claimants' Representative in good faith and in accordance with the written opinion of or information provided by such Future Representative Professional or Trust Professional.

(b)    The Trust shall promptly reimburse, or pay directly if so instructed, the Future Claimants' Representative for any reasonable fees and expenses associated with the Future Claimants' Representative's employment of legal counsel pursuant to this provision in connection with the Future Claimants' Representative's performance of his or her duties hereunder. The Trust shall also promptly reimburse, or pay directly if so instructed, the Future Claimants' Representative for any reasonable fees and expenses associated with the Future Claimants' Representative's employment of any other Future Representative Professional pursuant to this provision in connection with the Future Claimants' Representative's performance of his or her duties hereunder; provided, however, that (i) the Future Claimants' Representative has first submitted to the Trust a written request for such reimbursement setting forth the reasons (A) why the Future Claimants' Representative desires to employ such Future Representative Professional and (B) why the Future Claimants' Representative cannot rely on Trust Professionals to meet the needs of the Future Claimants' Representative for such expertise or advice and (ii) the Trust has approved the Future Claimants' Representative's request for reimbursement in writing. If the Trust agrees to pay for the Future Representative Professional, such reimbursement shall be treated as a Trust Expense of the Trust. If the Trust declines to pay for the Future Representative Professional, it must set forth its reasons in writing. If the Future Claimants' Representative still desires to employ such Future Representative Professional at the expense of the Trust, the Future Claimants' Representative and/or the Trustees shall resolve their dispute pursuant to Section 8.12 below.

- 20 -

7.6 Compensation and Expenses of the Future Claimants' Representative. The Future Claimants' Representative shall receive compensation from the Trust for attendance at meetings or other Trust business performed in the form of a reasonable hourly rate set by the Trustees, which is comparable to the rate of future claimants' representatives of other asbestos personal injury trusts. In addition, the Trust shall promptly reimburse the Future Claimants' Representative for any out-of-pocket fees and expenses reasonably incurred by him or her in connection with the performance of his or her duties as the Future Claimants' Representative. Such compensation or reimbursement shall be deemed a Trust Expense of the Trust. The Trustee shall include a reasonably detailed description of the amounts paid under this Section 7.6 in the accounts to be filed with the Bankruptcy Court and provided to the Debtors, the TAC and the Future Claimants' Representative pursuant to Section 2.2(b)(i) above.

7.7 Procedures for Consultation with and Obtaining the Consent of the Future Claimants' Representative.

(a)   Consultation Process.

(i)   In the event the Trustees are required to consult with the Future Claimants' Representative pursuant to Section 2.2(d) above or on any other matters specified herein, the Trustees shall provide the Future Claimants' Representative with written advance notice of the matter under consideration and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustees shall also provide the Future Claimants' Representative with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisor retained by the Trust and its staff (if any) as the Future Claimants' Representative may reasonably request during the time that the Trustees are considering such matter, and shall also provide the Future Claimants' Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustees; provided that in no event shall the Future Claimants' Representative (i) have any role, whether by consent, consultation or otherwise, in the Trust's selection of counsel, experts or other professionals to defend claims against the Trust that are tendered to any insurer for defense or (ii) have any right to consult with or obtain information from the Trust or anyone employed by the Trust concerning the defense of any such claims; and provided further, that in no event shall the Future Claimants' Representative have any right to consult with counsel to the Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Trust.

(ii)   In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 7.7(a), the Trustees shall take into consideration the time required for the Future Claimants' Representative, if he or she so wishes, to engage and consult with his or her own independent financial or investment advisors as to such matter. In any event, the Trustees shall not take definitive action on any such matter until at least thirty (30) days after providing the Future Claimants' Representative with the initial written notice that such matter is under consideration by the Trustees, unless such time period is waived by the Future Claimants' Representative.

- 21 -

(b)     Consent Process.

        (i)     In the event the Trustees are required to obtain the consent of the Future Claimants' Representative pursuant to Section 2.2(e) above, the Trustees shall provide the Future Claimants' Representative with a written notice stating that his or her consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustees propose to take and explaining in detail the reasons why the Trustees desire to take such action. The Trustees shall provide the Future Claimants' Representative as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Trustees shall also provide the Future Claimants' Representative with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Trust and its staff (if any) as the Future Claimants' Representative may reasonably request during the time that the Trustees are considering such action, and shall also provide the Future Claimants' Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustees; provided that in no event shall the Future Claimants' Representative (i) have any role, whether by consent, consultation or otherwise, in the Trust's selection of counsel, experts or other professionals to defend claims against the Trust that are tendered to any insurer for defense or (ii) have any right to consult with or obtain information from the Trust or anyone employed by the Trust concerning the defense of any such claims; and provided further, that in no event shall the Future Claimants' Representative have any right to consult with counsel to the Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Trust.

        (ii)    The Future Claimants' Representative must consider in good faith and in a timely fashion any request for his or her consent by the Trustees and must in any event advise the Trustees in writing of his or her consent or objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustees. The Future Claimants' Representative may not withhold his or her consent unreasonably. If the Future Claimants' Representative decides to withhold consent, he or she must explain in detail his or her objections to the proposed action. If the Future Claimants' Representative does not advise the Trustees in writing of his or her consent or objections to the proposed action within thirty (30) days of receiving the notice from the Trustees regarding such consent, the Future Claimants' Representative's consent shall be deemed to have been affirmatively granted.

        (iii)   If, after following the procedures specified in this Section 7.7(b), the Future Claimants' Representative continues to object to the proposed action and to withhold his or her consent to the proposed action, the Trustees and/or the Future Claimants' Representative shall resolve their dispute in accordance with Section 8.12 below. However, the burden of proof with respect to the validity of the Future Claimants' Representative's objection and withholding of his or her consent shall be on the Future Claimants' Representative.

Article VIII.    General Provisions

8.1     Irrevocability. The Trust is irrevocable.

- 22 -

8.2    Termination.

(a)    The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section 8.2 below.

(b)    The Trust shall automatically dissolve on the date ("Dissolution Date") ninety (90) days after the first to occur of the following:

(i)    the date on which the Trustees decide to dissolve the Trust because (A) the Trustees deem it unlikely that any new Asbestos Personal Injury Claim will be filed against the Trust, (B) all Asbestos Trust Claims duly filed with the Trust have been liquidated and, to the extent possible based upon the funds available to the Trust through the Plan, paid to the extent provided in this Agreement and the Trust Distribution Procedures or disallowed by a final, non-appealable order, and (C) twelve (12) consecutive months have elapsed during which no new Asbestos Personal Injury Claim has been filed with the Trust;

(ii)    if the Trustees have procured and have in place irrevocable insurance policies and have established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses (including without limitation Trust Expenses) of the Trust in a manner consistent with this Trust Agreement and the Trust Distribution Procedures, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a Final Order; or

(iii)    to the extent that any rule against perpetuities shall be deemed applicable to the Trust, that date which is twenty-one (21) years less ninety-one (91) days after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof.

(c)    On the Dissolution Date or as soon as reasonably practicable, after the wind-up of the Trust's affairs by the Trustees and payment of all the Trust's liabilities has been provided for (including without limitation Trust Expenses), as required by applicable law including Section 3808 of the Act, all assets remaining in the Trust estate shall be given to such organization(s) exempt from federal income tax under section 501(c)(3) of the IRC, which tax-exempt organization(s) shall be selected by the Trustees using their reasonable discretion; provided, however, that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on or the relief of suffering of individuals suffering from asbestos-related lung diseases or disorders and (ii) the tax-exempt organization(s) shall not bear any relationship to the Debtors within the meaning of section 468B(d)(3) of the IRC. Notwithstanding any contrary provision of the Plan and related documents, this Section 8.2(c) cannot be modified or amended.

(d)    Following the dissolution and distribution of the assets of the Trust, the Trust shall terminate and the Trustees, or any one of them, shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Trust to be filed in accordance with the Act.

- 23 -

Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

8.3     Amendments. The Trustees may modify or amend this Trust Agreement by a writing signed by each Trustee; provided, however, that any such amendment shall require the consent of each member of the TAC and the Future Claimants' Representative in accordance with Section 2.2(e) above; and provided, further, that no such modification or amendment, unless the writing evidencing such modification or amendment is signed by the Debtors, may (a) alter Article I above or (b) adversely affect the rights of the Debtors or any Reorganized Debtor or expand the obligations of the Debtors or Reorganized Debtors under this Agreement. The Trustees may modify or amend the Trust Distribution Procedures by a writing signed by each Trustee; provided, however, that any such amendment shall require the consent of a majority (x) of the members of the TAC; and (y) the Future Claimants' Representative; and provided, further, that no amendment to such procedures shall be inconsistent with the provisions limiting amendments to such procedures provided therein and, in particular, the provisions limiting amendment of the "Claims Payment Ratio" set forth in Section 2.5 of the Trust Distribution Procedures and of the "Payment Percentage" set forth in Section 4.2 of the Trust Distribution Procedures. Notwithstanding anything contained in this Trust Agreement to the contrary, none of this Trust Agreement, the Trust Distribution Procedures or the Trust Bylaws, or any document annexed to the foregoing, shall be modified or amended in any way that could jeopardize, impair or modify the applicability of section 524(g) of the Bankruptcy Code, the efficacy or enforceability of the injunction entered thereunder or the Trust's qualified settlement fund status under section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.

8.4     Severability. Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

8.5     Notices.

(a)     Any notices or other communications required or permitted hereunder to any person asserting an Asbestos Personal Injury Claim shall be in writing and delivered at the address for such person or, where applicable, such person's legal representative, in each case as provided on such person's claim form submitted to the Trust with respect to his or her Claim, or mailed by first class mail, postage prepaid, addressed to such address.

(b)     Any notices or other communications required or permitted hereunder to any of the following parties shall be in writing and delivered at the address for such party designated below, mailed by registered or certified mail, return receipt requested, postage prepaid, addressed to such address or sent by telex, telecopy or facsimile pursuant to the instructions listed below, in each case or to such other address or addresses or in accordance with such other instructions, as the case may be, as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

- 24 -

To the Debtors:

The Flintkote Company and Flintkote Mines Limited
Three Embarcadero Center, Suite 1190
San Francisco, California 94111
Facsimile: 415-989-5045
Attention: President
E-mail: _____

with a copy to:

Sidley Austin Brown & Wood
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Facsimile: 213-896-6600
Attention: Kevin T. Lantry, Esq.
E-mail: _____

and

Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P.C.
919 North Market Street, 16th Floor
Wilmington, Delaware 19801
Facsimile: 302-652-4400
Attention: Laura Davis Jones, Esq.
E-mail: _____

To the Trust through the Trustees:

[To come]

with a copy to:

[To come]

To the Delaware Trustee :

[To come]

To the TAC:

[To come]

To the Future Claimants' Representative:

[To come]

- 25 -

(c)     All notices and communications in accordance with this Section 8.5(b) shall be effective, if mailed, when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

8.6     Successors and Assigns. The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Debtors, the Trust, the Trustees, the members of the TAC, the Future Claimants' Representative and their respective successors and assigns, except that none of such persons may assign or otherwise transfer any of its rights or obligations under this Trust Agreement except, in the case of the Trust and the Trustees, as contemplated by Section 2.1 above.

8.7     Limitation on Claim Interests for Securities Laws Purposes. No Asbestos Personal Injury Claim or any interest therein shall (a) be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution, (b) be evidenced by a certificate or other instrument, (c) possess any voting rights, or (d) be entitled to receive any dividends or interest; provided, however, that clause (a) of this Section 8.7 shall not apply to the holder of a claim that is subrogated to an Asbestos Personal Injury Claim as a result of its satisfaction of such claim.

8.8     Entire Agreement: No Waiver. The entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

8.9     Headings. The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement or any manner affect the construction of the provisions of this Trust Agreement.

8.10    Governing Law. This Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to its conflict of law principles.

8.11    Settlor Representative and Cooperation. The Debtors are hereby irrevocably designated as the settlors of the Trust and they are hereby authorized to take any action required as such in connection with this Trust Agreement. The Debtors agree to cooperate in implementing the goals and objectives of the Trust.

8.12    Dispute Resolution. Any disputes that arise under this Trust Agreement or under the Trust Distribution Procedures shall be resolved by submission of the matter to an alternative dispute resolution ("ADR") process mutually agreeable to the parties involved. Should any party to the ADR process be dissatisfied with the decision of the arbitrator(s), that party may apply to the Bankruptcy Court for a judicial determination of the matter. In either case, if the dispute

- 26 -

arose pursuant to the consent provision set forth in Section 6.7(b) above or Section 7.7(b) above, the burden of proof shall be on the party or parties who withheld consent to show that the objection was valid. Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court. Notwithstanding anything else herein contained, to the extent any provision of this Trust Agreement is inconsistent with any provision of the Trust Distribution Procedures or the Plan, the Trust Distribution Procedures or the Plan, as the case may be, shall control.

8.13    Enforcement and Administration. The provisions of this Trust Agreement and the Trust Distribution Procedures attached hereto shall be enforced by the Bankruptcy Court pursuant to the Plan. The parties hereby further acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of the accounts of the Trustees and over any disputes hereunder not resolved by ADR in accordance with Section 8.12 above.

8.14    Effectiveness. This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

8.15    Counterpart Signatures. This Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.

- 27 -

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first written above.

THE FLINTKOTE COMPANY,
as a settlor of the Trust

By: _____
Name:
Title:

FLINTKOTE MINES LIMITED,
as a settlor of the Trust

By: _____
Name:
Title:

TRUSTEES

_____
Name:
Expiration Date of Initial Term: _____
anniversary of the date of this Agreement

_____
Name:
Expiration Date of Initial Term: _____
anniversary of the date of this Agreement

_____
Name:
Expiration Date of Initial Term: _____
anniversary of the date of this Agreement

DELAWARE TRUSTEE

_____

- 28 -

MEMBERS OF TRUST ADVISORY
COMMITTEE

_____

Name: Steven Kazan
Expiration Date of Initial Term: Fourth anniversary
of the date of this Agreement

_____

Name: Alan Kellman
Expiration Date of Initial Term: Third anniversary
of the date of this Agreement

_____

Name: J. Burton LeBlanc
Expiration Date of Initial Term: Fourth anniversary
of the date of this Agreement

_____

Name: David M. Lipman
Expiration Date of Initial Term: Third anniversary
of the date of this Agreement

_____

Name: Perry Weitz
Expiration Date of Initial Term: Fifth anniversary
of the date of this Agreement

_____

Name: Thomas Wilson
Expiration Date of Initial Term: Fifth anniversary
of the date of this Agreement

FUTURE CLAIMANTS' REPRESENTATIVE

By: _____
Name: James J. McMonagle

- 29 -