Tab (h)

## KAISER ALUMINUM & CHEMICAL CORPORATION
## ASBESTOS PERSONAL INJURY TRUST AGREEMENT

dated as of

JULY 6, 2006

by and among

Kaiser Aluminum & Chemical Corporation

and

the persons listed on the signature pages attached hereto

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| Article I. | Agreement of Trust | 2 |
| 1.1 | Creation and Name | 2 |
| 1.2 | Purpose | 2 |
| 1.3 | Transfer of Assets | 2 |
| 1.4 | Assumption of Liabilities and Certain Obligations | 3 |
| 1.5 | PI Trust Funding Agreement | 4 |
| 1.6 | Beneficial Owners | 4 |
| Article II. | Powers and Trust Administration | 4 |
| 2.1 | Powers | 4 |
| 2.2 | General Administration | 7 |
| 2.3 | Claims Administration | 10 |
| Article III. | Qualified Settlement Fund | 10 |
| 3.1 | Tax Treatment | 10 |
| 3.2 | No Right to Reversion with respect to Asbestos PI Trust Assets | 10 |
| 3.3 | Obligations of the Asbestos PI Trustees | 10 |
| 3.4 | Obligations of the Company | 11 |
| 3.5 | No Contravention of Requirements | 11 |
| Article IV. | Accounts, Investments and Payments | 11 |
| 4.1 | Accounts | 11 |
| 4.2 | Investments | 12 |
| 4.3 | Source of Payments | 13 |
| Article V. | Asbestos PI Trustees; Delaware Trustee | 13 |
| 5.1 | Initial Asbestos PI Trustees | 13 |
| 5.2 | Term of Service | 14 |
| 5.3 | Successor Asbestos PI Trustees | 14 |
| 5.4 | Liability of Asbestos PI Trustees, Delaware Trustee and Others | 15 |
| 5.5 | Compensation and Expenses of Asbestos PI Trustees | 16 |
| 5.6 | Indemnification of Asbestos PI Trustees, Delaware Trustee and Additional Indemnitees | 16 |
| 5.7 | Asbestos PI Trustees' Lien | 17 |

**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| 5.8 | Asbestos PI Trustees' Employment of Experts; Delaware Trustee's Employment of Counsel | 17 |
| 5.9 | Asbestos PI Trustees' Independence | 17 |
| 5.10 | Bond | 18 |
| 5.11 | Delaware Trustee | 18 |
| Article VI. | Trust Advisory Committee | 19 |
| 6.1 | Initial Members of the Asbestos PI TAC | 19 |
| 6.2 | Duties | 19 |
| 6.3 | Term of Office | 19 |
| 6.4 | Successor Members of the Asbestos PI TAC | 20 |
| 6.5 | Asbestos PI TAC's Employment of Professionals | 20 |
| 6.6 | Compensation and Expenses of Asbestos PI TAC | 21 |
| 6.7 | Procedures for Consultation with and Obtaining the Consent of the Asbestos PI TAC | 21 |
| Article VII. | The Future Asbestos Claimants' Representative | 23 |
| 7.1 | Appointment of Initial Future Asbestos Claimants' Representative | 23 |
| 7.2 | Duties | 23 |
| 7.3 | Term of Office | 23 |
| 7.4 | Appointment of Successor | 24 |
| 7.5 | Future Asbestos Claimants' Representative's Employment of Professionals | 24 |
| 7.6 | Compensation and Expenses of the Future Asbestos Claimants' Representative | 25 |
| 7.7 | Procedures for Consultation with and Obtaining the Consent of the Future Claimants' Representative | 25 |
| Article VIII. | General Provisions | 27 |
| 8.1 | Irrevocability | 27 |
| 8.2 | Termination | 27 |
| 8.3 | Amendments | 28 |
| 8.4 | Severability | 29 |
| 8.5 | Notices | 29 |
| 8.6 | Successors and Assigns | 32 |

**TABLE OF CONTENTS**
(continued)

**Page**

8.7 Limitation on Claim Interests for Securities Laws Purposes ..... 32
8.8 Entire Agreement; No Waiver ..... 32
8.9 Headings ..... 32
8.10 Governing Law ..... 32
8.11 Settlor Representative and Cooperation ..... 33
8.12 Dispute Resolution ..... 33
8.13 Enforcement and Administration ..... 33
8.14 Effectiveness ..... 33
8.15 Counterpart Signatures ..... 33

## ASBESTOS PERSONAL INJURY TRUST AGREEMENT

This ASBESTOS PERSONAL INJURY TRUST AGREEMENT (this "Agreement"), dated as of July 6, 2006, is made by and among Kaiser Aluminum & Chemical Corporation (the "Company"), a Delaware corporation and a debtor-in-possession in Jointly Administered Case No. 02-10429 (JKF) in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), as the settlor of the trust established pursuant to this Agreement (the "Asbestos PI Trust") in accordance with the Second Amended Joint Plan of Reorganization of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation and Certain of their Debtor Affiliates, as modified, filed pursuant to section 1121(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and confirmed by an order of the Bankruptcy Court entered on February 6, 2006, which confirmation was affirmed by an order of the United States District Court for the District of Delaware entered on May 11, 2006 (the "Plan"), the trustees of the Asbestos PI Trust appointed as contemplated by Section 5.1 below (the "Asbestos PI Trustees"), Wilmington Trust Company ("Wilmington Trust"), as the initial "Delaware Trustee" (as defined in Section 5.11), the members of the Asbestos PI Trust Advisory Committee established pursuant to this Agreement and the Plan (the "Asbestos PI TAC") appointed as contemplated by Section 6.1 below, and the legal representative for the holders of future Asbestos Personal Injury Claims appointed as contemplated by Section 7.1 below (the "Future Asbestos Claimants' Representative"). All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. All terms used but not defined herein or in the Plan but defined in the Bankruptcy Code or Bankruptcy Rules shall have the meanings ascribed to them in the Bankruptcy Code and Bankruptcy Rules, as the case may be.

WHEREAS, at the time of the entry of the order for relief in its Reorganization Case, the Company and certain other Debtors were named as defendants in actions involving Asbestos Personal Injury Claims; and

WHEREAS, the Company and the other Debtors have reorganized under the provisions of chapter 11 of the Bankruptcy Code in a case pending in the Bankruptcy Court known as In re Kaiser Aluminum Corporation, a Delaware corporation, *et al.*, Debtors, Jointly Administered Case No. 02-10429 (JKF); and

WHEREAS, the Plan has been confirmed by the Bankruptcy Court; and

WHEREAS, the Plan provides, *inter alia*, for the creation of the Asbestos PI Trust in accordance with this Agreement; and

WHEREAS, pursuant to the Plan, the Asbestos PI Trust is to use its assets and income to satisfy all Asbestos Personal Injury Claims; and

WHEREAS, it is the intent of each of the Company, the Asbestos PI Trustees, the Asbestos PI TAC and the Future Asbestos Claimants' Representative that the Asbestos PI Trust be administered, maintained and operated at all times through mechanisms that provide reasonable assurance that the Asbestos PI Trust will satisfy all Asbestos Personal Injury Claims paid in accordance with the Asbestos Distribution Procedures in substantially the form of Exhibit

1.1(34) to the Plan (the "Asbestos Distribution Procedures") in substantially the same manner and in strict compliance with this Agreement; and

WHEREAS, pursuant to the Plan, the Asbestos PI Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC; and

WHEREAS, the Bankruptcy Court has determined that the Asbestos PI Trust, the Plan and the Asbestos PI Channeling Injunction satisfy all the prerequisites for an injunction pursuant to section 524(g) of the Bankruptcy Code and the Asbestos PI Channeling Injunction has been entered in connection with the Confirmation Order;

NOW, THEREFORE, it is hereby agreed as follows:

## Article I.    Agreement of Trust

1.1    Creation and Name. The Company, as the settlor of the Asbestos PI Trust, hereby creates a trust known as the "Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust," which is the Asbestos PI Trust provided for and referred to in the Plan. The Asbestos PI Trustees may transact the business and affairs of the Asbestos PI Trust in the name of the Asbestos PI Trust. It is the intention of the parties hereto that the trust created hereby constitute a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the "Act") and that this document, together with the bylaws described in Section 2.2, constitute the governing instruments of the Asbestos PI Trust. The Asbestos PI Trustees and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as Exhibit A.

1.2    Purpose. The purpose of the Asbestos PI Trust is to (a) assume the liabilities of the Reorganized Debtors and their predecessors and successors in interest for all Asbestos Personal Injury Claims, (b) preserve, hold, manage and maximize the Asbestos PI Trust Assets (as defined below) for use in paying and otherwise satisfying Asbestos Personal Injury Claims and paying the Trust Expenses of the Asbestos PI Trust, (c) direct the processing, liquidation and payment of all Asbestos Personal Injury Claims in accordance with the Asbestos Distribution Procedures, and (d) otherwise comply in all respects with the requirements of a trust set forth in section 524(g)(2)(B) of the Bankruptcy Code, all in accordance with the Plan, the PI Trust Funding Agreement and this Agreement.

1.3    Transfer of Assets.

(a)    Pursuant to the Plan, (i) 94% of the common stock of Reorganized Kaiser Trading and (ii) 70.5% of the KFC Claim (together, the "Initial Asbestos PI Trust Assets") have been issued or transferred to the Asbestos PI Trust free and clear of any liens, security interests and other claims or causes of action. In furtherance of the purpose of the Asbestos PI Trust, the Asbestos PI Trustees, on behalf of the Asbestos PI Trust, hereby expressly accept such issuance and transfer to the Asbestos PI Trust of the Initial Asbestos PI Trust Assets. The Asbestos PI Trust will be entitled to receive its Pro Rata Share of the New Common Stock distributable under the Plan to holders of Claims in Class 9 on account of its 70.5% of the KFC Claim (which is an

Allowed General Unsecured Claim in Class 9) and to receive distributions from the Funding Vehicle Trust in accordance with the PI Trust Funding Agreement.

(b)     The Company shall not unreasonably withhold consent to the Asbestos PI Trust's retention of the professional services of the counsel retained by the Debtors in connection with matters pertaining to the Channeled Personal Injury Claims, including without limitation the Company's National Coordinating Counsel, Wharton Levin Ehrmantraut & Klein, P.A.

1.4     Assumption of Liabilities and Certain Obligations.

(a)     In furtherance of the purpose of the Asbestos PI Trust, the Asbestos PI Trustees, on behalf of the Asbestos PI Trust, expressly assume all liability and responsibility for (i) all Asbestos Personal Injury Claims and (ii) the Trust Expenses of the Asbestos PI Trust. The Asbestos PI Trustees, on behalf of the Asbestos PI Trust, shall cooperate with the Reorganized Debtors and use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things that the Reorganized Debtors may reasonably consider necessary, appropriate or desirable to effect such assumption.

(b)     The Asbestos PI Trust shall advocate in any and all actions and proceedings brought against any Reorganized Debtor that involve Asbestos Personal Injury Claims that such Claims are and have been channeled to the Asbestos PI Trust and shall cooperate with such Reorganized Debtor in any and all such actions and proceedings.

(c)     Except as otherwise provided in this Agreement, including without limitation Section 2.1(d)(ii) below, and the Asbestos Distribution Procedures, the Asbestos PI Trust shall have all defenses, cross-claims, offsets and recoupments, as well as rights of indemnification, contribution, subrogation and similar rights, regarding Asbestos Personal Injury Claims that any Reorganized Debtor has under applicable law. Regardless of the foregoing, however, except as otherwise provided in Section 5.1(a)(2) of the Asbestos Distribution Procedures, a claimant must meet otherwise applicable federal, state and foreign statutes of limitations and repose.

(d)     Each Reorganized Debtor and each other Kaiser Company shall be entitled to indemnification from the Asbestos PI Trust for any out-of-pocket fees and expenses and attorneys' fees and expenses, judgments, settlements or other liabilities arising from or reasonably incurred by or on behalf of such Reorganized Debtor or other Kaiser Company on or after the Effective Date in connection with any action, suit or proceeding related to Asbestos Personal Injury Claims, whether civil, administrative or arbitrative, including without limitation indemnification or contribution for such Claims prosecuted against such Reorganized Debtor or other Kaiser Company.

(e)     Nothing in this Agreement shall be construed in any way to limit the scope, enforceability or effectiveness of the Asbestos PI Channeling Injunction issued in connection with the Plan or the Asbestos PI Trust's assumption of all liability for Asbestos Personal Injury Claims, subject to the provisions of Section 1.4(c) above.

(f)     Upon the request of the Funding Vehicle Trust, the Asbestos PI Trust shall (i) provide to the Funding Vehicle Trust any authorization or assignment of rights from the

{ KAISER / 001 / 00006951.DOC / 4}                    3

Asbestos PI Trust that the Funding Vehicle Trust may reasonably consider necessary, appropriate or desirable to permit the Funding Vehicle Trust to pursue recovery under any Included PI Trust Insurance Policy in respect of Asbestos Personal Injury Claims or Trust Expenses of the Asbestos PI Trust and (ii) otherwise cooperate with the Funding Vehicle Trust and use commercially reasonable efforts to take, or cause to be taken, all other actions and to do, or cause to be done, all other things that the Funding Vehicle Trust may reasonably consider necessary, appropriate or desirable to effect such recovery, including providing to the Funding Vehicle Trust information relating to Asbestos Personal Injury Claims available to the Asbestos PI Trust and required to be provided or otherwise made available by the Funding Vehicle Trust pursuant to any insurance settlement agreement assumed by the Funding Vehicle Trust pursuant to the Plan.

1.5     PI Trust Funding Agreement. The Asbestos PI Trust shall be a party to, and bound by the terms of, the PI Trust Funding Agreement to the same extent it would be as a signatory of the PI Trust Funding Agreement. The Asbestos PI Trust will be entitled to receive distributions from the Funding Vehicle Trust in accordance with the PI Trust Funding Agreement. The Asbestos PI Trustees, on behalf of the Asbestos PI Trust, will accept the transfer of Cash from the Funding Vehicle Trust to the Asbestos PI Trust in accordance with, and will otherwise enforce the rights of the Asbestos PI Trust under, the PI Trust Funding Agreement. For purposes of this Agreement, such Cash, the Initial Asbestos PI Trust Assets and any other assets from time to time held by the Asbestos PI Trust are collectively referred to as the "Asbestos PI Trust Assets." The Asbestos PI Trustees, on behalf of the Asbestos PI Trust, will also perform, or cause to be performed, all obligations of the Asbestos PI Trust under the PI Trust Funding Agreement.

1.6     Beneficial Owners. To the extent required by the Act, the beneficial owners (within the meaning of the Act) of the Asbestos PI Trust shall be deemed to be the holders of Asbestos Personal Injury Claims (the "Beneficial Owners"); provided that (i) the holders of Asbestos Personal Injury Claims, as such Beneficial Owners, shall have only such rights with respect to the Asbestos PI Trust and its assets as are set forth in the Asbestos Distribution Procedures, and (ii) no greater or other rights, including upon dissolution, liquidation or winding up of the Asbestos PI Trust, shall be deemed to apply to the holders of Asbestos Personal Injury Claims in their capacity as Beneficial Owners.

Article II.     Powers and Trust Administration

2.1     Powers.

(a)     The Asbestos PI Trustees are, and shall act as, the fiduciaries to the Asbestos PI Trust in accordance with the provisions of this Agreement, the Asbestos Distribution Procedures, the Plan and Delaware law. The Asbestos PI Trustees shall at all times administer the Asbestos PI Trust and the Asbestos PI Trust Assets in accordance with the purpose set forth in Section 1.2 above. Subject to the Plan and this Agreement, the Asbestos PI Trustees shall have the power to take any and all actions that they may consider necessary, appropriate or desirable to fulfill the purpose of the Asbestos PI Trust, including without limitation each power expressly granted in this Section 2.1, any power reasonably incidental thereto and any statutory trust power now or hereafter permitted under the laws of the State of Delaware.

{ KAISER / 001 / 00006951.DOC / 4}     4

(b)     Except as required by applicable law, the Plan or this Agreement, the Asbestos PI Trustees need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)     Subject to and without limiting the generality of Section 2.1(a) above, and except as limited below, the Asbestos PI Trustees shall have the power to:

(i)     receive and hold the Asbestos PI Trust Assets and exercise all rights and powers with respect thereto, including without limitation voting and dispositive powers with respect to (A) the common stock of Reorganized Kaiser Trading transferred to the Asbestos PI Trust and (B) subject to any restrictions set forth in the Certificate of Incorporation of Reorganized KAC, any New Common Stock issued in respect of the 70.5% of the KFC Claim transferred to the Asbestos PI Trust;

(ii)     invest the monies held from time to time by the Asbestos PI Trust;

(iii)     sell, transfer or exchange any or all of the Asbestos PI Trust Assets at such prices and upon such terms as the Asbestos PI Trustees may consider necessary, appropriate or desirable in fulfilling the purpose of the Asbestos PI Trust;

(iv)     enter into such leasing and financing agreements with third parties as the Asbestos PI Trustees may consider necessary, appropriate or desirable in fulfilling the purpose of the Asbestos PI Trust;

(v)     pay liabilities and expenses of the Asbestos PI Trust, including without limitation the Trust Expenses;

(vi)     establish funds, reserves and accounts within the Asbestos PI Trust estate, as contemplated by Article IV below;

(vii)     sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding;

(viii)     establish, supervise and administer the Asbestos PI Trust in accordance with this Agreement and the Asbestos Distribution Procedures;

(ix)     appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing and forecasting and other advisors, consultants, independent contractors and agents and, to the extent permitted by the fiduciary duties of the Asbestos PI Trustees, delegate to such persons such powers and authorities, in each case as the Asbestos PI Trustees may consider necessary, appropriate or desirable in fulfilling the purpose of the Asbestos PI Trust;

(x)     pay any officers, employees, legal, financial, accounting, investment, auditing and forecasting and other advisors, consultants, independent contractors and agents engaged by the Asbestos PI Trust, including without limitation those engaged by the Asbestos PI Trust in connection with its alternative dispute resolution activities pursuant to Section 8.12 below, reasonable compensation;

{ KAISER / 001 / 00006951 DOC / 4}                    5

(xi)    compensate (A) each Asbestos PI Trustee, (B) the Delaware Trustee and (C) each member of the Asbestos PI TAC, the Future Asbestos Claimants' Representative and their respective officers, employees, legal, financial, accounting, investment, auditing and forecasting and other advisors, consultants, independent contractors and agents, and reimburse each Asbestos PI Trustee, the Delaware Trustee, each member of the Asbestos PI TAC and the Future Asbestos Claimants' Representative any out-of-pocket fees and expenses reasonably incurred by or on behalf of it, him or her in connection with the performance of its, his or her duties hereunder, all as provided below;

(xii)    execute and deliver such instruments as the Asbestos PI Trustees may consider necessary, appropriate or desirable in fulfilling the purpose of the Asbestos PI Trust;

(xiii)    enter into such other arrangements with third parties as the Asbestos PI Trustees may consider necessary, appropriate or desirable in fulfilling the purpose of the Asbestos PI Trust, provided such arrangements do not conflict with any other provision of this Agreement;

(xiv)    take such actions as the Asbestos PI Trustees may consider necessary, appropriate or desirable in enforcing the rights or fulfilling the obligations of the Asbestos PI Trust under the Funding Vehicle Trust Agreement or the PI Trust Funding Agreement;

(xv)    in accordance with Section 5.6 below, defend, indemnify and hold harmless (and purchase insurance indemnifying) (A) the Asbestos PI Trustees, (B) the Delaware Trustee and (C) the members of the Asbestos PI TAC, the Future Asbestos Claimants' Representative, the officers and employees of the Asbestos PI Trust and any advisors, consultants and agents of the Asbestos PI Trust, the Asbestos PI Trustees, the Delaware Trustee, the Asbestos PI TAC or the Future Asbestos Claimants' Representative (collectively, the "Additional Indemnitees"), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and/or insure its directors, trustees, officers, employees, advisors, consultants and agents;

(xvi)    delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Asbestos PI Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Section 5.4 below; and

(xvii)    consult with the Company, the Asbestos PI TAC or the Future Asbestos Claimants' Representative at such times and with respect to such issues relating to the conduct of the Asbestos PI Trust as the Asbestos PI Trustees may consider necessary, appropriate or desirable.

(d)    Notwithstanding anything to the contrary contained herein, the Asbestos PI Trustees shall not have the power to:

(i)    guarantee any debt of other persons; or

(ii)     except as requested by the Funding Vehicle Trust as contemplated by Section 1.4(f) above, take any action with respect to any PI Insurance Coverage Action or the PI Insurance Assets other than to enforce the rights of the Asbestos PI Trust under the Funding Vehicle Trust Agreement and the PI Trust Funding Agreement.

(e)     The Asbestos PI Trustees shall give the Company prompt notice of any sale or other disposition of New Common Stock and shall give the Asbestos PI TAC and the Future Asbestos Claimants' Representative prompt notice of any act performed or taken pursuant to Section 2.1(c)(i), (iii), (vii) or (xvi) above and any act proposed to be performed or taken of the type described in Section 2.2(e) below.

2.2     General Administration.

(a)     The Asbestos PI Trustees shall adopt and act in accordance with written bylaws (the "Asbestos PI Trust Bylaws"). To the extent not inconsistent with this Agreement, the Asbestos PI Trust Bylaws shall govern the affairs of the Asbestos PI Trust. In the event of an inconsistency between the Asbestos PI Trust Bylaws and this Agreement, this Agreement shall govern.

(b)     The Asbestos PI Trustees shall timely account to the Bankruptcy Court as follows:

(i)     The Asbestos PI Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available and in any event within one hundred twenty (120) days following the end of each fiscal year of the Asbestos PI Trust, an annual report containing financial statements of the Asbestos PI Trust (including without limitation a balance sheet of the Asbestos PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Asbestos PI Trustees and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of Asbestos Personal Injury Claims and as to the conformity of the financial statements with generally accepted accounting principles. The Asbestos PI Trustees shall provide a copy of such report to the Company, the Asbestos PI TAC and the Future Asbestos Claimants' Representative when such reports are filed with the Bankruptcy Court.

(ii)     Simultaneously with delivery of each set of financial statements referred to in Section 2.2(b)(i) above, the Asbestos PI Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of Asbestos Personal Injury Claims disposed of during the period covered by the financial statements. The Asbestos PI Trustees shall provide a copy of such report to the Company, the Asbestos PI TAC and the Future Asbestos Claimants' Representatives when such report is filed.

(iii)     All materials required to be filed with the Bankruptcy Court by this Section 2.2(b) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the US Trustee.

(c)    The Asbestos PI Trustees shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year of the Asbestos PI Trust a budget and cash flow projections covering such fiscal year and the succeeding four fiscal years. The budget and cash flow projections shall include a determination of the "Maximum Annual Payment" pursuant to Section 2.5 of the Asbestos Distribution Procedures and the "Asbestos Claims Payment Ratio" pursuant to Section 2.6 of the Asbestos Distribution Procedures. Within ten (10) days of the preparation thereof, the Asbestos PI Trustees shall provide a copy of the budget and cash flow projections to the Asbestos PI TAC and the Future Asbestos Claimants' Representative.

(d)    The Asbestos PI Trustees shall consult with both the Asbestos PI TAC and the Future Asbestos Claimants' Representative (i) on the general implementation and administration of the Asbestos PI Trust, including without limitation with respect to any account or reserve established in accordance with Section 4.1 below, (ii) on the general implementation and administration of the Asbestos Distribution Procedures, and (iii) on such other matters as may be required under this Agreement or the Asbestos Distribution Procedures.

(e)    The Asbestos PI Trustees shall be required to obtain the consent of both the Asbestos PI TAC and the Future Asbestos Claimants' Representative pursuant to the consent process set forth in Section 6.7(b) and 7.7(b) below, as the case may be, in addition to any other instances elsewhere enumerated herein, in order:

(i)    to change the "Claims Payment Ratio" described in Section 2.6 of the Asbestos Distribution Procedures in the event that the requirements for such a change set forth in such provision have been met;

(ii)    to change the "Disease Levels," "Scheduled Values" and/or "Medical/Exposure Criteria" set forth in Section 5.3(a)(3) of the Asbestos Distribution Procedures and/or the "Average Values" and/or "Maximum Values" set forth in Section 5.3(b)(3) and Section 5.4 of the Asbestos Distribution Procedures;

(iii)    to change the "Payment Percentage" described in Section 2.4 of the Asbestos Distribution Procedures as provided in Section 4.2 of the Asbestos Distribution Procedures;

(iv)    to establish and/or to change the "Claims Materials" to be provided holders of Asbestos Personal Injury Claims under Section 6.1 of the Asbestos Distribution Procedures;

(v)    to require that claimants provide additional kinds of medical and/or exposure evidence pursuant to Section 5.7 of the Asbestos Distribution Procedures;

(vi)    to change the form of release to be provided pursuant to Section 7.8 of the Asbestos Distribution Procedures;

(vii)    to terminate the Asbestos PI Trust pursuant to Section 8.2(a)(i) or (ii) below;

(viii)   to change the compensation of the Asbestos PI Trustees, the Delaware Trustee, the members of the Asbestos PI TAC or the Future Asbestos Claimants' Representative, other than to reflect reasonable cost-of-living increases or changes approved by the Bankruptcy Court as otherwise provided herein; provided that a change in the compensation of the Delaware Trustee shall also require the consent of the Delaware Trustee;

(ix)   to take structural or other actions to minimize any tax on the Asbestos PI Trust Assets;

(x)   to amend any provision of this Agreement in accordance with the terms hereof (and the consent of the Delaware Trustee solely to the extent any such amendment adversely affects the rights, duties and obligations of the Delaware Trustee hereunder);

(xi)   to amend any provision of the Asbestos Distribution Procedures in accordance with the terms thereof;

(xii)   to amend any provision of the PI Trust Funding Agreement in accordance with the terms thereof;

(xiii)   to adopt the Asbestos PI Trust Bylaws in accordance with Section 2.2(a) above or thereafter to amend the Asbestos PI Trust Bylaws in accordance with the terms thereof;

(xiv)   to vote the common stock of Reorganized Kaiser Trading held by the Asbestos PI Trust for the purpose of electing members of the Board of Directors of Reorganized Kaiser Trading or taking action with respect to any other business presented to the stockholders of Reorganized Kaiser Trading;

(xv)   to vote the New Common Stock held by the Asbestos PI Trust for the purpose of electing members of the Board of Directors of Reorganized KAC or taking action with respect to any other business presented to the stockholders of Reorganized KAC;

(xvi)   to merge any asbestos claims resolution organization formed by the Asbestos PI Trust with another asbestos claims resolution organization that is not specifically created by this Agreement or the Asbestos Distribution Procedures, acquire an interest in any asbestos claims resolution organization that is not specifically created by this Agreement or the Asbestos Distribution Procedures, contract with another asbestos claims resolution organization or any other entity that is not specifically created by this Agreement or the Asbestos Distribution Procedures or permit any other party to join in any asbestos claims resolution organization that is formed by the Asbestos PI Trust pursuant to this Agreement or the Asbestos Distribution Procedures; provided that any such merger, acquisition, contract or joinder shall not (a) subject any Reorganized Debtor to any risk of having any Asbestos Personal Injury Claim asserted against it or (b) otherwise jeopardize the validity or enforceability of the Asbestos PI Channeling Injunction; and provided, further, that the terms of any such merger will require the surviving organization to make decisions about the allowability and value of Asbestos Personal Injury Claims in accordance with Section V of the Asbestos Distribution Procedures; and

(xvii)  to cause the Asbestos PI Trust to take any action that it is expressly required or permitted to take under the Funding Vehicle Trust Agreement.

(f)     For all purposes of this Agreement and the Act, the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative shall be deemed the consent of the Beneficial Owners.

(g)     The Asbestos PI Trustees shall meet with the Asbestos PI TAC and the Future Asbestos Claimants' Representative no less often than quarterly. The Asbestos PI Trustees shall meet with the Asbestos PI TAC and the Future Asbestos Claimants' Representative between such quarterly meetings at mutually convenient times and locations when so requested by either the Asbestos PI TAC or the Future Asbestos Claimants' Representative. The Delaware Trustee shall not be required or permitted to attend meetings.

(h)     The Asbestos PI Trustees, upon notice from either the Asbestos PI TAC or the Future Asbestos Claimants' Representative, if practicable in view of pending business, shall, at their next meeting with the Asbestos PI TAC or the Future Asbestos Claimants' Representative, as the case may be, consider issues submitted by either of them.

(i)     Periodically, but not less often than once a year, the Asbestos PI Trustees shall make available to holders of Asbestos Personal Injury Claims and other interested parties the number of Asbestos Personal Injury Claims by disease levels that have been resolved both by individual review and by arbitration, as well as by trial, indicating the amounts of the awards and the averages of the awards by jurisdiction pursuant to Section 7.10 of the Asbestos Distribution Procedures.

2.3     Claims Administration. The Asbestos PI Trustees shall promptly proceed to implement the Asbestos Distribution Procedures.

Article III.     Qualified Settlement Fund

3.1     Tax Treatment. The Asbestos PI Trust is intended to be treated for U.S. federal income tax purposes as a "qualified settlement fund" as described within section 1.468B-1 *et seq.* of the Treasury Regulations. Accordingly, for all U.S. federal income tax purposes the transfer of assets to the Asbestos PI Trust will be treated as a transfer to a trust satisfying the requirements of section 1.468B-1(c) of the Treasury Regulations by the Debtors and the Funding Vehicle Trust, as transferors, for distribution to holders of Asbestos Personal Injury Claims and in complete settlement of such Claims. Any income on the assets of the Asbestos PI Trust will be treated as subject to tax on a current basis, and all distributions pursuant to the Plan will be made net of provision for taxes and subject to the withholding and reporting requirements set forth in the Plan and this Agreement.

3.2     No Right to Reversion with respect to Asbestos PI Trust Assets. The Reorganized Debtors will have no rights to any refunds or reversion with respect to any Asbestos PI Trust Assets or any earnings thereon.

3.3     Obligations of the Asbestos PI Trustees. The Asbestos PI Trustees shall be the "administrator" (as defined in section 1.468B-2(k) of the Treasury Regulations) of the Asbestos

PI Trust and shall (a) timely file such income tax and other returns and statements and timely pay all taxes required to be paid from the assets in the Asbestos PI Trust as required by law and in accordance with the provisions of the Plan and this Agreement, (b) comply with all withholding obligations, as required under the applicable provisions of the IRC and of any state law and the regulations promulgated thereunder, (c) meet all other requirements necessary to qualify and maintain qualification of the Asbestos PI Trust as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations, and (d) take no action that could cause the Asbestos PI Trust to fail to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations.

3.4    Obligations of the Company.

(a)    Within sixty (60) days after the date of this Agreement (but not later than February 14th of the calendar year following such date), the Company shall obtain a Qualified Appraisal of (i) the fair market value of the common stock of Reorganized Kaiser Trading transferred to the Asbestos PI Trust and (ii) any New Common Stock theretofore received by the Asbestos PI Trust in respect of the 70.5% of the KFC Claim transferred to the Asbestos PI Trust.

(b)    Following the funding of the Asbestos PI Trust and the receipt of the Qualified Appraisal pursuant to Section 3.4(a) above (and in no event later than February 15th of the calendar year following the date of this Agreement), the Company shall provide, or cause to be provided, to the Asbestos PI Trustees a "§ 1.468B-3 Statement" in accordance with section 1.468B-3 of the Treasury Regulations. Following any subsequent transfers of cash or other property to the Asbestos PI Trust, the transferor shall provide, or cause to be provided, to the Asbestos PI Trustees a "§ 1.468B-3 Statement" on or before February 15th of the calendar year following the date of each such transfer.

3.5    No Contravention of Requirements.    No provision in this Agreement or the Asbestos Distribution Procedures shall be construed to mandate any distribution on any Claim or other action that would contravene the Asbestos PI Trust's compliance with the requirements of a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.

Article IV.    Accounts, Investments and Payments

4.1    Accounts.

(a)    The Asbestos PI Trustees may from time to time create such accounts and reserves within the Asbestos PI Trust estate as they may consider necessary, appropriate or desirable in order to provide for payment, or to make provisions for future payment, of Asbestos Personal Injury Claims in accordance with the Asbestos Distribution Procedures or to provide for payment, or to make provisions for future payment, of Trust Expenses of the Asbestos PI Trust in accordance with this Agreement and may, with respect to any such account or reserve, restrict the use of monies therein.

(b)    The Asbestos PI Trustees shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 4.1 and, with respect to any such account, the transfers made to such account, the proceeds of or earnings on the assets

held in each such account and the payments from each such account in the accounts to be filed with the Bankruptcy Court and provided to the Company, the Asbestos PI TAC and the Future Asbestos Claimants' Representative pursuant to Section 2.2(b)(i) above.

4.2     Investments. Investment of monies held in the Asbestos PI Trust shall be administered in the manner in which an individual of ordinary prudence, discretion and judgment would act in the management of his or her own affairs, subject to the following limitations and provisions:

(a)     The Asbestos PI Trust shall not acquire, directly or indirectly, equity in any entity (other than Reorganized Kaiser Trading, Reorganized KAC or any successor to either of them) or business enterprise if, immediately following such acquisition, the Asbestos PI Trust would hold more than 5% of the equity in such entity or business enterprise. The Asbestos PI Trust shall not hold, directly or indirectly, more than 10% of the equity in any entity (other than Reorganized Kaiser Trading, Reorganized KAC or any successor to either of them) or business enterprise.

(b)     The Asbestos PI Trust shall not acquire or hold any long-term debt securities unless such securities (i) are rated "Baa" or higher by Moody's, "BBB" or higher by Standard & Poor's ("S&P") or have been given an equivalent investment grade rating by another nationally recognized credit rating agency or (ii) have been issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(c)     The Asbestos PI Trust shall not acquire or hold for longer than ninety (90) days any commercial paper unless such commercial paper is rated "Prime-1" or higher by Moody's or "A-1" or higher by S&P or has been given an equivalent rating by another nationally recognized credit rating agency.

(d)     Excluding any securities issued by Reorganized Kaiser Trading, Reorganized KAC or any successor to either of them, the Asbestos PI Trust shall not acquire or hold any preferred stock or securities convertible into common stock unless such preferred stock or convertible securities are rated "A" or higher by Moody's or S&P or have been given an equivalent investment grade rating by another nationally recognized credit rating agency.

(e)     The Asbestos PI Trust shall not acquire any debt securities or other debt instruments issued by any entity (other than debt securities or other debt instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof) if, following such acquisition, the aggregate market value of all such securities or instruments issued by such entity held by the Asbestos PI Trust would exceed 2% of the then-current aggregate value of the Asbestos PI Trust Assets. The Asbestos PI Trust shall not hold any debt securities or other debt instruments issued by any entity (other than debt securities or other instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof) to the extent that the aggregate market value of all such securities and instruments issued by such entity held by the Asbestos PI Trust would exceed 5% of the then-current aggregate value of the Asbestos PI Trust Assets.

(f)     The Asbestos PI Trust shall not acquire or hold any certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, meet the standards set forth in Section 4.2(b) above.

(g)     The Asbestos PI Trust may, without regard to the limitations set forth in Subsections (a) - (f) above, acquire and hold any securities or instruments issued to it by Reorganized Kaiser Trading or Reorganized KAC pursuant to the Plan or obtained by it from any entity or business enterprise as proceeds of litigation or otherwise to resolve disputes.

(h)     The Asbestos PI Trust shall not acquire or hold any repurchase obligations unless, in the opinion of the Asbestos PI Trustees, they are adequately collateralized.

(i)     The Asbestos PI Trust shall not acquire or hold any rights, warrants, options or similar securities.

### 4.3     Source of Payments.

(a)     All payments to be made by the Asbestos PI Trust, including without limitation payments in respect of Asbestos Personal Injury Claims and the Trust Expenses of the Asbestos PI Trust, shall be payable solely by the Asbestos PI Trust out of the Asbestos PI Trust Assets. None of the Reorganized Debtors, their subsidiaries or the present or former directors, officers, employees, advisors, consultants or agents of any of them, or the Asbestos PI Trustees, the Asbestos PI TAC or the Future Asbestos Claimants' Representative or the present or former officers, employees, advisors, consultants or agents of any of them, shall be liable for the payment of any Asbestos Personal Injury Claim or any Trust Expense or other liability of the Asbestos PI Trust. Nothing herein shall be deemed to waive any rights under any Included PI Trust Insurance Policy in respect of Asbestos Personal Injury Claims or Trust Expenses or other liability of the Asbestos PI Trust.

(b)     The Asbestos PI Trustees shall include a reasonably detailed description of any payments made in accordance with this Section 4.3 in the accounts to be filed with the Bankruptcy Court and provided to the Company, the Asbestos PI TAC and the Future Asbestos Claimants' Representative pursuant to Section 2.2(b)(i) above.

Article V.     Asbestos PI Trustees; Delaware Trustee

### 5.1     Initial Asbestos PI Trustees.

(a)     In addition to the Delaware Trustee appointed pursuant to Section 5.11 hereof, there shall be three (3) Asbestos PI Trustees. The initial Asbestos PI Trustees are the individuals selected jointly by the Asbestos Claimants' Committee and the Future Asbestos Claimants' Representative, after consultation with the Debtors, and confirmed as the initial Asbestos PI Trustees by the Bankruptcy Court pursuant to the Confirmation Order. Each Asbestos PI Trustee will serve as a Funding Vehicle Trustee in accordance with the Funding Vehicle Trust Agreement.

{ KAISER / 001 / 00006951.DOC / 4}          13

(b)    Each initial Asbestos PI Trustee shall serve until the earliest of (i) the end of his or her term pursuant to Section 5.2(a) below, (ii) his or her death, (iii) his or her resignation pursuant to Section 5.2(b) below, (iv) his or her removal pursuant to Section 5.2(c) below, or (v) the termination of the Asbestos PI Trust pursuant to Section 8.2 below.

5.2    Term of Service.

(a)    Subject to the other provisions of this Article V, (i) each Asbestos PI Trustee appointed in accordance with Section 5.1 above shall serve for an initial term expiring on the date indicated on the signature page hereof as the expiration date of such Asbestos PI Trustee's initial term and (ii) except with respect to such initial terms, each Asbestos PI Trustee shall serve for a term expiring five (5) years from the date on which the preceding term expired.

(b)    An Asbestos PI Trustee may resign at any time by written notice to the remaining Asbestos PI Trustees, the Asbestos PI TAC and the Future Asbestos Claimants' Representative. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    An Asbestos PI Trustee may be removed by unanimous vote of the other Asbestos PI Trustees in the event that he or she becomes unable to discharge his or her duties hereunder due to accident or physical or mental deterioration or for other good cause. Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of Section 2.2 above, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Asbestos PI Trustees hereunder, or repeated non-attendance at scheduled meetings. Such removal shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

5.3    Successor Asbestos PI Trustees.

(a)    Upon the termination of service of an Asbestos PI Trustee, whether as a result of the expiration of his or her term or his or her death, resignation or removal, the remaining Asbestos PI Trustees shall consult with both the Asbestos PI TAC and the Future Asbestos Claimants' Representative concerning appointment of a successor Asbestos PI Trustee and, unless a majority of the members of the Asbestos PI TAC or the Future Asbestos Claimants' Representative vetoes the appointment, the vacancy shall be filled by the unanimous vote of the remaining Asbestos PI Trustees. If the remaining Asbestos PI Trustees cannot agree on a successor Asbestos PI Trustee or a majority of the members of the Asbestos PI TAC or the Future Asbestos Claimants' Representative vetoes the appointment of a successor Asbestos PI Trustee, the Bankruptcy Court shall make the appointment. Nothing in this Agreement shall prevent the reappointment of an individual serving as an Asbestos PI Trustee for an additional term or terms.

(b)    Immediately upon the appointment of any successor Asbestos PI Trustee, all rights, titles, duties, powers and authority of the predecessor Asbestos PI Trustee hereunder shall be vested in, and undertaken by, the successor Asbestos PI Trustee without any further act. No successor Asbestos PI Trustee shall be liable personally for any act or omission of his or her predecessor Asbestos PI Trustees.

(c)     Each successor Asbestos PI Trustee shall serve until the earliest of (i) the end of a full term of five (5) years for which he or she was appointed if his or her immediate predecessor Asbestos PI Trustee completed his or her term pursuant to Section 5.2(a) above, (ii) the end of the term of the Asbestos PI Trustee whom he or she replaced if his or her predecessor Asbestos PI Trustee did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 5.2(b) above, (v) his or her removal pursuant to Section 5.2(c) above, or (vi) the termination of the Asbestos PI Trust pursuant to Section 8.2 below.

> 5.4     Liability of Asbestos PI Trustees, Delaware Trustee and Others.

(a)     The Asbestos PI Trustees, the Delaware Trustee and the Additional Indemnitees shall not be liable to the Asbestos PI Trust, to any Beneficial Owner or to any other Person (as defined in the Act), except for an Asbestos PI Trustee's, Delaware Trustee's or Additional Indemnitee's own breach of trust committed in bad faith or willful misappropriation. In addition, no Asbestos PI Trustee, Delaware Trustee or Additional Indemnitee shall be liable for any act or omission of any other Asbestos PI Trustee, Delaware Trustee or Additional Indemnitee unless such Person (as defined in the Act) acted with bad faith in the selection or retention of such other Asbestos PI Trustee, Delaware Trustee or Additional Indemnitee.

(b)     To the extent that, at law or in equity, the Asbestos PI Trustees, the Delaware Trustee and the Additional Indemnitees have duties (including fiduciary duties) and liabilities relating thereto to the Asbestos PI Trust, any Beneficial Owner, or to any other Person (as defined in the Act), the Asbestos PI Trustees, the Delaware Trustee and the Additional Indemnitees acting under this Agreement shall not be liable to the Asbestos PI Trust, any Beneficial Owner or to any other Person (as defined in the Act) for their good faith reliance on the provisions of this Agreement except as provided in Section 5.4(a). The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of the Asbestos PI Trustees, the Delaware Trustee and the Additional Indemnitees otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of the Asbestos PI Trustees, the Delaware Trustee and the Additional Indemnitees.

(c)     Notwithstanding any other provision of this Agreement or otherwise applicable law, whenever in this Agreement the Asbestos PI Trustees, the Delaware Trustee and the Additional Indemnitees are permitted or required to make a decision in their "*good faith*" or under another express standard, the Asbestos PI Trustees', the Delaware Trustee's and the Additional Indemnitees' actions shall be evaluated under such express standard and shall not be subject to any other or different standard.

(d)     The liability of the Asbestos PI Trustees, the Delaware Trustee and the Additional Indemnitees to any Person (as defined in the Act) other than the Asbestos PI Trust and the Beneficial Owners shall be further limited (*i.e.*, to the extent such limitation is greater than the limitation provided in the other subsections of this Section 5.4) to the fullest extent allowed by Section 3803 of the Act.

{ KAISER / 001 / 00006951.DOC / 4}          15

5.5    Compensation and Expenses of Asbestos PI Trustees and Delaware Trustee.

(a)    Each Asbestos PI Trustee shall receive compensation from the Asbestos PI Trust for his or her services as an Asbestos PI Trustee (including for his or her services as a Funding Vehicle Trustee in accordance with the Funding Vehicle Trust Agreement) in the amount of $60,000 per annum, payable in a lump sum at the beginning of each year of service, plus a per diem allowance for meetings attended or other Asbestos PI Trust business performed in the amount of $2,500. A meeting is any scheduled, emergency or sub-committee meeting of the Asbestos PI Trustees that is noticed and/or authorized by the Asbestos PI Trustees in which participation is either in person or telephonic and, for purposes of the fee set forth in the preceding sentence, the duration of which is not less than two hours and not more than five hours. Each Asbestos PI Trustee shall receive compensation at the rate of (i) $450 per hour for all time expended in preparation, in authorized special projects, in meetings of less than two hours duration, and in meetings in excess of five hours duration, and (ii) $250 per hour for non-working travel with, in each case, the time computed on a quarter-hour basis. Each Asbestos PI Trustee shall maintain hourly time records for such time. The per annum compensation does not function as a retainer and the per diem and hourly items are not charged against the per annum compensation. The compensation payable to the Asbestos PI Trustee hereunder shall be reviewed every three (3) years and appropriately adjusted with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representatives. The Delaware Trustee shall be paid such compensation as is agreed pursuant to a separate fee agreement.

(b)    The Asbestos PI Trust shall promptly reimburse each Asbestos PI Trustee and the Delaware Trustee for any out-of-pocket fees and expenses reasonably incurred by it, him or her in connection with the performance of its, his or her duties as an Asbestos PI Trustee (including those fees and expenses incurred in connection with the performance of his or her duties as a Funding Vehicle Trustee) or Delaware Trustee.

(c)    The Asbestos PI Trustees shall include a reasonably detailed description of the amounts paid under this Section 5.5 in the accounts to be filed with the Bankruptcy Court and provided to the Company, the Asbestos PI TAC and the Future Asbestos Claimants' Representative pursuant to Section 2.2(b)(i) above.

5.6    Indemnification of Asbestos PI Trustees, the Delaware Trustee and Additional Indemnitees.

(a)    The Asbestos PI Trust shall indemnify and defend each Asbestos PI Trustee, the Delaware Trustee and each Additional Indemnitee in the performance of its, his or her duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and defend such Person (as defined in the Act) against any and all liabilities, expenses, claims, damages or losses incurred by or on behalf of it, him or her in the performance of its, his or her duties. Notwithstanding the foregoing, no Asbestos PI Trustee, Delaware Trustee or Additional Indemnitee shall be indemnified or defended in any way for any liability, expense, claim, damage or loss for which it, he or she is ultimately liable under Section 5.4 above.

(b)     Any fees and expenses reasonably incurred by or on behalf of an Asbestos PI Trustee, the Delaware Trustee or an Additional Indemnitee in connection with any action. suit or proceeding, whether civil, administrative or arbitrative. from which it, he or she is indemnified by the Asbestos PI Trust pursuant to Section 5.6(a) above. including without limitation out-of-pocket fees and expenses and attorneys' fees and expenses, shall be paid by the Asbestos PI Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Asbestos PI Trustee, Delaware Trustee or Additional Indemnitee, as the case may be, to repay such amount in the event that it shall be determined by a Final Order that such Asbestos PI Trustee, Delaware Trustee or Additional Indemnitee is not entitled to be indemnified by the Asbestos PI Trust.

(c)     The Asbestos PI Trustees (i) may purchase and maintain reasonable amounts and types of insurance on behalf of any Person (as defined in the Act) who is or was an Asbestos PI Trustee or an Additional Indemnitee, and, (ii) if requested by the Asbestos PI TAC or the Future Asbestos Claimants' Representative, shall purchase and maintain reasonable amounts and types of insurance on behalf of the Asbestos PI TAC and the Future Asbestos Claimants' Representative, including, in either case, for liability asserted against or incurred by such Person (as defined in the Act) in that capacity or arising from its, his or her status with regard to the Asbestos PI Trust. To the extent the Asbestos PI TAC and/or the Future Asbestos Claimants' Representative requests insurance coverage pursuant to the preceding sentence, such Person (as defined in the Act) shall cooperate with the Asbestos PI Trust and the Asbestos PI Trustees in seeking the requested insurance coverage. The obligation of the Asbestos PI Trustees to provide insurance requested by the Asbestos PI TAC or the Future Asbestos Claimants' Representative shall be subject to the cooperation required in the preceding sentence and further subject to the determination of the Asbestos PI Trustees that the requested amounts and types of insurance are reasonable. Insurance coverage may, with agreement among the Asbestos PI Trustees, the Asbestos PI TAC and the Future Asbestos Claimants' Representative, be provided through self-insurance arrangements.

5.7     Asbestos PI Trustees' Lien. The Asbestos PI Trustees. the Delaware Trustee and the Additional Indemnitees shall have a first priority lien upon the Asbestos PI Trust Assets to secure the payment of any amounts payable to them pursuant to Section 5.6 above.

5.8     Asbestos PI Trustees' Employment of Experts; Delaware Trustee's Employment of Counsel.

(a)     The Asbestos PI Trustees may, but shall not be required to, retain and/or consult with counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the Asbestos PI Trustees to be qualified as experts ("Trust Professionals") on any matter submitted to them, and, in the absence of gross negligence, the written opinion of or information provided by any such party deemed by the Asbestos PI Trustees to be an expert on the particular matter submitted to him or her by the Asbestos PI Trustees shall be full and complete authorization and protection in respect of any action taken or not taken by the Asbestos PI Trustees hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

{ KAISER / 001 / 00006951.DOC / 4}                    17

(b)     The Delaware Trustee shall only be permitted to retain counsel and only in such circumstances as required in the exercise of its obligations hereunder, and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

5.9     Asbestos PI Trustees' Independence. No Asbestos PI Trustee shall, during the term of his or her service, (a) hold a financial interest in, or act as attorney or agent or serve as any other professional for, any Reorganized Debtor, (b) act as an attorney for any Person (as defined in the Act) who holds an Asbestos Personal Injury Claim, or (c) serve on the trust advisory committee for any PI Trust created pursuant to the Plan. For the avoidance of doubt, this Section 5.9 shall not be applicable to the Delaware Trustee.

5.10    Bond. The Asbestos PI Trustees and the Delaware Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

5.11    Delaware Trustee.

(a)     There shall at all times be a Delaware Trustee. The "Delaware Trustee" shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind such entity. The initial Delaware Trustee shall be Wilmington Trust. If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 5.11, it shall resign immediately in the manner and with the effect hereinafter specified in Section 5.11(c) below. For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.

(b)     The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Asbestos PI Trustees set forth herein. The Delaware Trustee shall be one of the trustees of the Asbestos PI Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Act and for taking such actions as are required to be taken by a Delaware trustee under the Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Asbestos PI Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.

(c)     The Delaware Trustee shall serve until such time as the Asbestos PI Trustees remove the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Asbestos PI Trustees in accordance with the terms of Section 5.11(d) below. The Delaware Trustee may resign at any time upon the giving of at least 60 days' advance written notice to the Asbestos PI Trustees; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the

Asbestos PI Trustees in accordance with Section 5.11(d) below. If the Asbestos PI Trustees do not act within such 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

       (d)      Upon the resignation or removal of the Delaware Trustee, the Asbestos PI Trustees shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Asbestos PI Trustees and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Agreement.

<div align="center">Article VI.    Trust Advisory Committee</div>

    6.1    Initial Members of the Asbestos PI TAC.

       (a)      The Asbestos PI TAC shall consist of five (5) individuals. The initial members of the Asbestos PI TAC are those five (5) individuals selected by the Asbestos Claimants' Committee, identified on the signature page hereof and confirmed as the initial members of the Asbestos PI TAC by the Bankruptcy Court pursuant to the Confirmation Order.

       (b)      Each initial member of the Asbestos PI TAC shall serve until the earliest of (i) the end of his or her term pursuant to Section 6.3(a) below, (ii) his or her death, (iii) his or her resignation pursuant to Section 6.3(b) below, (iv) his or her removal pursuant to Section 6.3(c) below, or (v) the termination of the Asbestos PI Trust pursuant to Section 8.2 below.

    6.2    Duties. The members of the Asbestos PI TAC shall serve in a fiduciary capacity, representing all of the holders of present Asbestos Personal Injury Claims for the purpose of protecting the rights of such persons. The Asbestos PI Trustees must consult with the Asbestos PI TAC on matters identified in Section 2.2(d) above and in other provisions herein and must obtain the consent of the Asbestos PI TAC on matters identified in Section 2.2(e) above. Where provided in the Asbestos Distribution Procedures, certain other actions of the Asbestos PI Trustees are also subject to the consent of the Asbestos PI TAC.

    6.3    Term of Office.

       (a)      The initial members of the Asbestos PI TAC appointed in accordance with Section 6.1(a) above shall serve the staggered three-, four-, or five-year terms shown on the signatures pages hereof. Thereafter, each term of service shall be five (5) years. Each member of the Asbestos PI TAC shall serve until the earliest of (i) the end of his or her first full term of office, (ii) his or her death, (iii) his or her resignation, (iv) his or her removal, or (v) the termination of the Asbestos PI Trust, in each case as specified in 6.1(b) or 6.4(b), as applicable.

(b)      A member of the Asbestos PI TAC may resign at any time by written notice to the other members of the Asbestos PI TAC, the Asbestos PI Trustees and the Future Asbestos Claimants' Representative. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)      A member of the Asbestos PI TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member (such as repeated nonattendance of scheduled meetings) or for other good cause. Such removal shall be made at the recommendation of the other members of the Asbestos PI TAC with the approval of the Bankruptcy Court.

6.4      Successor Members of the Asbestos PI TAC.

(a)      If, prior to the termination of service of a member of the Asbestos PI TAC other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a member of the Asbestos PI TAC, such individual shall be his or her successor. If such member of the Asbestos PI TAC did not designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor. If (i) a member of the Asbestos PI TAC did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) he or she is removed pursuant to Section 6.3(c) above, his or her successor shall be appointed by a majority of the remaining members of the Asbestos PI TAC or, if such members cannot agree on a successor, the Bankruptcy Court. Nothing in this Agreement shall prevent the reappointment of an individual serving as a member of the Asbestos PI TAC for an additional term or terms and there shall be no limit on the number of terms that an Asbestos PI TAC member may serve.

(b)      Each successor member of the Asbestos PI TAC shall serve until the earliest of (i) the end of a full term of five (5) years for which he or she was appointed if his or her immediate predecessor member of the Asbestos PI TAC completed his or her term pursuant to Section 6.3(a) above, (ii) the end of the term of the member of the Asbestos PI TAC whom he or she replaced if his or her predecessor member did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 6.3(c) above, (v) his or her removal pursuant to Section 6.3(d) above, or (vi) the termination of the Asbestos PI Trust pursuant to Section 8.2 below.

6.5      Asbestos PI TAC's Employment of Professionals.

(a)      The Asbestos PI TAC may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the Asbestos PI TAC to be qualified as experts on any matter submitted to the Asbestos PI TAC (the "TAC Professionals"). The Asbestos PI TAC and the TAC Professionals shall at all times have complete access to the Asbestos PI Trust's officers, employees and agents, as well as to any Trust Professionals, and shall also have complete access

to all information generated by them or otherwise available to the Asbestos PI Trust or the Asbestos PI Trustees; provided that in no event shall the Asbestos PI TAC, its members or the TAC Professionals (i) have any role, whether by consent, consultation or otherwise, in the Asbestos PI Trust's selection of counsel, experts or other professionals to defend claims against the Asbestos PI Trust that are tendered to any insurer for defense or (ii) have any right to consult with or obtain information from the Asbestos PI Trust or anyone employed by the Asbestos PI Trust concerning the defense of any such claims; and provided, further, that in no event shall the Asbestos PI TAC, its members or the TAC Professionals have any right to consult with counsel to the Asbestos PI Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Asbestos PI Trust. In the absence of gross negligence, the written opinion of or information provided by any TAC Professional or Trust Professional deemed by the Asbestos PI TAC to be qualified as an expert on the particular matter submitted to the Asbestos PI TAC shall be full and complete authorization and protection in support of any action taken or not taken by the Asbestos PI TAC in good faith and in accordance with the written opinion of or information provided by such TAC Professional or Trust Professional.

(b)     The Asbestos PI Trust shall promptly reimburse, or pay directly if so instructed, the Asbestos PI TAC for any reasonable fees and expenses associated with the Asbestos PI TAC's employment of legal counsel pursuant to this provision in connection with the Asbestos PI TAC's performance of its duties hereunder. The Asbestos PI Trust shall also promptly reimburse, or pay directly if so instructed, the Asbestos PI TAC for any reasonable fees and expenses associated with the Asbestos PI TAC's employment of any other TAC Professional pursuant to this provision in connection with the Asbestos PI TAC's performance of its duties hereunder; provided, however, that (i) the Asbestos PI TAC has first submitted to the Asbestos PI Trust a written request for such reimbursement setting forth the reasons (A) why the Asbestos PI TAC desires to employ such TAC Professional and (B) why the Asbestos PI TAC cannot rely on Trust Professionals to meet the needs of the Asbestos PI TAC for such expertise or advice and (ii) the Asbestos PI Trust has approved the Asbestos PI TAC's request for reimbursement in writing. If the Asbestos PI Trust agrees to pay for the TAC Professional, such reimbursement shall be treated as a Trust Expense of the Asbestos PI Trust. If the Asbestos PI Trust declines to pay for the TAC Professional, it must set forth its reasons in writing. If the Asbestos PI TAC still desires to employ such TAC Professional at the expense of the Asbestos PI Trust, the Asbestos PI TAC and/or the Asbestos PI Trustees shall resolve their dispute in accordance with Section 8.12 below.

6.6     Compensation and Expenses of Asbestos PI TAC. Each member of the Asbestos PI TAC shall receive compensation from the Asbestos PI Trust for attendance at meetings or other Asbestos PI Trust business performed in the form of a reasonable hourly rate set by the Asbestos PI Trustees. In addition, the Asbestos PI Trust shall promptly reimburse each member of the Asbestos PI TAC for any out-of-pocket fees and expenses reasonably incurred by him or her in connection with the performance of his or her duties as a member of the Asbestos PI TAC. Such compensation or reimbursement shall be deemed a Trust Expense of the Asbestos PI Trust. The Asbestos PI Trustee shall include a reasonably detailed description of the amounts paid under this Section 6.6 in the accounts to be filed with the Bankruptcy Court and provided to the Company, the Asbestos PI TAC and the Future Asbestos Claimants' Representative pursuant to Section 2.2(b)(i) above.

6.7    Procedures for Consultation with and Obtaining the Consent of the Asbestos PI TAC.

(a)    Consultation Process.

(i)    In the event the Asbestos PI Trustees are required to consult with the Asbestos PI TAC pursuant to Section 2.2(d) above or on other matters as provided herein, the Asbestos PI Trustees shall provide the Asbestos PI TAC with written advance notice of the matter under consideration and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Asbestos PI Trustees shall also provide the Asbestos PI TAC with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Asbestos PI Trust and its staff (if any) as the Asbestos PI TAC may reasonably request during the time that the Asbestos PI Trustees are considering such matter and shall also provide the Asbestos PI TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Asbestos PI Trustees; provided that in no event shall the Asbestos PI TAC or its members (i) have any role, whether by consent, consultation or otherwise, in the Asbestos PI Trust's selection of counsel, experts or other professionals to defend claims against the Asbestos PI Trust that are tendered to any insurer for defense or (ii) have any right to consult with or obtain information from the Asbestos PI Trust or anyone employed by the Asbestos PI Trust concerning the defense of any such claims; and provided further, that in no event shall the Asbestos PI TAC or its member have any right to consult with counsel to the Asbestos PI Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Asbestos PI Trust.

(ii)    In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 6.7(a), the Asbestos PI Trustees shall take into consideration the time required for the Asbestos PI TAC, if its members so wish, to engage and consult with its own independent financial or investment advisors as to such matter. In any event, the Asbestos PI Trustees shall not take definitive action on any such matter until at least thirty (30) days after providing the Asbestos PI TAC with the initial written notice that such matter is under consideration by the Asbestos PI Trustees, unless such time period is waived by the Asbestos PI TAC.

(b)    Consent Process.

(i)    In the event the Asbestos PI Trustees are required to obtain the consent of the Asbestos PI TAC pursuant to Section 2.2(e) above, the Asbestos PI Trustees shall provide the Asbestos PI TAC with a written notice stating that its consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Asbestos PI Trustees propose to take and explaining in detail the reasons why the Asbestos PI Trustees desire to take such action. The Asbestos PI Trustees shall provide the Asbestos PI TAC as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Asbestos PI Trustees shall also provide the Asbestos PI TAC with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Asbestos PI Trust and its staff (if any) as the Asbestos PI TAC may reasonably request during the time that the Asbestos PI Trustees are

considering such action, and shall also provide the Asbestos PI TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Asbestos PI Trustees; provided that in no event shall the Asbestos PI TAC or its members (i) have any role, whether by consent, consultation or otherwise, in the Asbestos PI Trust's selection of counsel, experts or other professionals to defend claims against the Asbestos PI Trust that are tendered to any insurer for defense or (ii) have any right to consult with or obtain information from the Asbestos PI Trust or anyone employed by the Asbestos PI Trust concerning the defense of any such claims; and provided further, that in no event shall the Asbestos PI TAC or its member have any right to consult with counsel to the Asbestos PI Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Asbestos PI Trust.

(ii)    The Asbestos PI TAC must consider in good faith and in a timely fashion any request for its consent by the Asbestos PI Trustees and must in any event advise the Asbestos PI Trustees in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Asbestos PI Trustees. The Asbestos PI TAC may not withhold its consent unreasonably. If the Asbestos PI TAC decides to withhold its consent, it must explain in detail its objections to the proposed action. If the Asbestos PI TAC does not advise the Asbestos PI Trustees in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding such request, the Asbestos PI TAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this Section 6.7(b), the Asbestos PI TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Asbestos PI Trustees and/or the Asbestos PI TAC shall resolve their dispute in accordance with Section 8.12 below. However, the burden of proof with respect to the validity of the Asbestos PI TAC's objection and withholding of its consent shall be on the Asbestos PI TAC.

Article VII.    The Future Asbestos Claimants' Representative

7.1    Appointment of Initial Future Asbestos Claimants' Representative. The initial Future Asbestos Claimants' Representative shall be the individual appointed by order of the Bankruptcy Court on January 27, 2003 as the legal representative for future asbestos-related claimants.

7.2    Duties. The Future Asbestos Claimants' Representative shall serve in a fiduciary capacity, representing the interests of the holders of future Asbestos Personal Injury Claims for the purpose of protecting the rights of such persons. The Asbestos PI Trustees must consult with the Future Asbestos Claimants' Representative on matters identified in Section 2.2(d) above and on certain other matters provided herein and must obtain the consent of the Future Asbestos Claimants' Representative on matters identified in Section 2.2(e) above. Where provided in the Asbestos Distribution Procedures, certain other actions by the Asbestos PI Trustees are also subject to the consent of the Future Asbestos Claimants' Representative.

7.3     Term of Office.

(a)     Each Future Asbestos Claimants' Representative shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 7.3(b) below, (iii) his or her removal pursuant to Section 7.3(c) below, or (iv) the termination of the Asbestos PI Trust pursuant to Section 8.2 below.

(b)     The Future Asbestos Claimants' Representative may resign at any time by written notice to the Asbestos PI Trustees. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     At the request of the Asbestos PI Trustees or the Asbestos PI TAC, the Future Asbestos Claimants' Representative may be removed pursuant to an order of the Bankruptcy Court in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, a consistent pattern of neglect and failure to perform, or to participate in performing, his or her duties hereunder (such as repeated nonattendance at scheduled meetings) or for other good cause.

7.4     Appointment of Successor. If the Future Asbestos Claimants' Representative dies or resigns and, prior to his or her death or the effectiveness of his or her resignation, he or she has designated in writing an individual to succeed him or her as the Future Asbestos Claimants' Representative, subject to the approval of the Bankruptcy Court, such individual shall be his or her successor. If the Future Asbestos Claimants' Representative is removed in accordance with Section 7.3(c) above, the Asbestos PI Trustees, in consultation with the Asbestos PI TAC and subject to the approval of the Bankruptcy Court, shall appoint such Future Asbestos Claimants' Representative's successor. If (a) the Future Asbestos Claimants' Representative dies or resigns and did not designate an individual to succeed him or her prior to such death or resignation as contemplated above or (b) he or she is removed in accordance with Section 7.3(c) above but the Asbestos PI Trustees cannot agree on or otherwise do not appoint a successor for such Future Asbestos Claimants' Representative, the Bankruptcy Court shall make such appointment.

7.5     Future Asbestos Claimants' Representative's Employment of Professionals.

(a)     The Future Asbestos Claimants' Representative may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the Future Asbestos Claimants' Representative to be qualified as experts on any matter submitted to the Future Asbestos Claimants' Representative (the "Future Representative Professionals"). The Future Asbestos Claimants' Representative and the Future Representative Professionals shall at all times have complete access to the Asbestos PI Trust's officers, employees and agents, as well as to Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the Asbestos PI Trust or the Asbestos PI Trustees; provided that in no event shall the Future Asbestos Claimants' Representative or the Future Representative Professionals (i) have any role, whether by consent, consultation or otherwise, in the Asbestos PI Trust's selection of counsel, experts or other professionals to defend claims against the Asbestos PI Trust that are tendered to any insurer for defense or (ii) have any right to consult with or

obtain information from the Asbestos PI Trust or anyone employed by the Asbestos PI Trust concerning the defense of any such claims; and provided further, that in no event shall the Future Asbestos Claimants' Representative or the Future Representative Professionals have any right to consult with counsel to the Asbestos PI Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Asbestos PI Trust. In the absence of gross negligence, the written opinion of or information provided by any Future Representative Professional or Trust Professional deemed by the Future Asbestos Claimants' Representative to be qualified as an expert on the particular matter submitted to the Future Asbestos Claimants' Representative shall be full and complete authorization and protection in support of any action taken or not taken by the Future Asbestos Claimants' Representative in good faith and in accordance with the written opinion of or information provided by such Future Representative Professional or Trust Professional.

(b)     The Asbestos PI Trust shall promptly reimburse, or pay directly if so instructed, the Future Asbestos Claimants' Representative for any reasonable fees and expenses associated with the Future Asbestos Claimants' Representative's employment of legal counsel pursuant to this provision in connection with the Future Asbestos Claimants' Representative's performance of his or her duties hereunder. The Asbestos PI Trust shall also promptly reimburse, or pay directly if so instructed, the Future Asbestos Claimants' Representative for any reasonable fees and expenses associated with the Future Asbestos Claimants' Representative's employment of any other Future Representative Professional pursuant to this provision in connection with the Future Asbestos Claimants' Representative's performance of his or her duties hereunder; provided, however, that (i) the Future Asbestos Claimants' Representative has first submitted to the Asbestos PI Trust a written request for such reimbursement setting forth the reasons (A) why the Future Asbestos Claimants' Representative desires to employ such Future Representative Professional and (B) why the Future Asbestos Claimants' Representative cannot rely on Trust Professionals to meet the needs of the Future Asbestos Claimants' Representative for such expertise or advice and (ii) the Asbestos PI Trust has approved the Future Asbestos Claimants' Representative's request for reimbursement in writing. If the Asbestos PI Trust agrees to pay for the Future Representative Professional, such reimbursement shall be treated as a Trust Expense of the Asbestos PI Trust. If the Asbestos PI Trust declines to pay for the Future Representative Professional, it must set forth its reasons in writing. If the Future Asbestos Claimants' Representative still desires to employ such Future Representative Professional at the expense of the Asbestos PI Trust, the Future Asbestos Claimants' Representative and/or the Asbestos PI Trustees shall resolve their dispute pursuant to Section 8.12 below.

7.6     Compensation and Expenses of the Future Asbestos Claimants' Representative. The Future Asbestos Claimants' Representative shall receive compensation from the Asbestos PI Trust for attendance at meetings or other Asbestos PI Trust business performed in the form of a reasonable hourly rate set by the Asbestos PI Trustees. In addition, the Asbestos PI Trust shall promptly reimburse the Future Asbestos Claimants' Representative for any out-of-pocket fees and expenses reasonably incurred by him or her in connection with the performance of his or her duties as the Future Asbestos Claimants' Representative. Such compensation or reimbursement shall be deemed a Trust Expense of the Asbestos PI Trust. The Asbestos PI Trustee shall include a reasonably detailed description of the amounts paid under this Section 7.6 in the accounts to be filed with the Bankruptcy Court and provided to the Company, the Asbestos PI TAC and the Future Asbestos Claimants' Representative pursuant to Section 2.2(b)(i) above.

7.7     Procedures for Consultation with and Obtaining the Consent of the Future Claimants' Representative.

(a)     Consultation Process.

(i)     In the event the Asbestos PI Trustees are required to consult with the Future Asbestos Claimants' Representative pursuant to Section 2.2(d) above or on any other matters specified herein, the Asbestos PI Trustees shall provide the Future Asbestos Claimants' Representative with written advance notice of the matter under consideration and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Asbestos PI Trustees shall also provide the Future Asbestos Claimants' Representative with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisor retained by the Asbestos PI Trust and its staff (if any) as the Future Asbestos Claimants' Representative may reasonably request during the time that the Asbestos PI Trustees are considering such matter, and shall also provide the Future Asbestos Claimants' Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Asbestos PI Trustees; provided that in no event shall the Future Asbestos Claimants' Representative have any right to consult with counsel to the Asbestos PI Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Asbestos PI Trust.

(ii)     In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 7.7(a), the Asbestos PI Trustees shall take into consideration the time required for the Future Asbestos Claimants' Representative, if he or she so wishes, to engage and consult with his or her own independent financial or investment advisors as to such matter. In any event, the Asbestos PI Trustees shall not take definitive action on any such matter until at least thirty (30) days after providing the Future Asbestos Claimants' Representative with the initial written notice that such matter is under consideration by the Asbestos PI Trustees, unless such time period is waived by the Future Asbestos Claimants' Representative.

(b)     Consent Process.

(i)     In the event the Asbestos PI Trustees are required to obtain the consent of the Future Asbestos Claimants' Representative pursuant to Section 2.2(e) above, the Asbestos PI Trustees shall provide the Future Asbestos Claimants' Representative with a written notice stating that his or her consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Asbestos PI Trustees propose to take and explaining in detail the reasons why the Asbestos PI Trustees desire to take such action. The Asbestos PI Trustees shall provide the Future Asbestos Claimants' Representative as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Asbestos PI Trustees shall also provide the Future Asbestos Claimants' Representative with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Asbestos PI Trust and its staff (if any) as the Future Asbestos Claimants' Representative may reasonably request during the time that the Asbestos PI Trustees are considering such action, and shall also provide the Future Asbestos Claimants' Representative the opportunity, at reasonable times and for

reasonable periods of time, to discuss and comment on such action with the Asbestos PI Trustees; provided that in no event shall the Future Asbestos Claimants' Representative have any right to consult with counsel to the Asbestos PI Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Asbestos PI Trust.

(ii)    The Future Asbestos Claimants' Representative must consider in good faith and in a timely fashion any request for his or her consent by the Asbestos PI Trustees and must in any event advise the Asbestos PI Trustees in writing of his or her consent or objection to the proposed action within thirty (30) days of receiving the original request for consent from the Asbestos PI Trustees. The Future Asbestos Claimants' Representative may not withhold his or her consent unreasonably. If the Future Asbestos Claimants' Representative decides to withhold consent, he or she must explain in detail his or her objections to the proposed action. If the Future Asbestos Claimants' Representative does not advise the Asbestos PI Trustees in writing of his or her consent or objections to the proposed action within thirty (30) days of receiving the notice from the Asbestos PI Trustees regarding such consent, the Future Asbestos Claimants' Representative's consent shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this Section 7.7(b), the Future Asbestos Claimants' Representative continues to object to the proposed action and to withhold his or her consent to the proposed action, the Asbestos PI Trustees and/or the Future Asbestos Claimants' Representative shall resolve their dispute in accordance with Section 8.12 below. However, the burden of proof with respect to the validity of the Future Asbestos Claimants' Representative's objection and withholding of his or her consent shall be on the Future Asbestos Claimants' Representative.

Article VIII.    General Provisions

8.1    Irrevocability.  The Asbestos PI Trust is irrevocable.

8.2    Termination.

(a)    The term for which the Asbestos PI Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section 8.2 below.

(b)    The Asbestos PI Trust shall automatically dissolve on the date (the "Dissolution Date") ninety (90) days after the first to occur of the following:

(i)    the date on which the Asbestos PI Trustees decide to dissolve the Asbestos PI Trust because (A) the Asbestos PI Trustees deem it unlikely that any new Asbestos Personal Injury Claim will be filed against the Asbestos PI Trust, (B) all Asbestos Personal Injury Claims duly filed with the Asbestos PI Trust have been liquidated and, to the extent possible based upon the funds available to such Trust through the Plan and in accordance with the PI Trust Funding Agreement, paid to the extent provided in this Agreement and the Asbestos Distribution Procedures or disallowed by a final, non-appealable order, and (C) twelve (12)

consecutive months have elapsed during which no new Asbestos Personal Injury Claim has been filed with the Asbestos PI Trust;

(ii) if the Asbestos PI Trustees have procured and have in place irrevocable insurance policies and have established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses (including without limitation Trust Expenses) of the Asbestos PI Trust in a manner consistent with this Agreement and the Asbestos Distribution Procedures, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a Final Order; or

(iii) to the extent that any rule against perpetuities shall be deemed applicable to the Asbestos PI Trust, that date which is twenty-one (21) years less ninety-one (91) days after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof.

(c) On the Dissolution Date or as soon as reasonably practicable, after the wind-up of the Asbestos PI Trust's affairs by the Asbestos PI Trustees and payment of all the Asbestos PI Trust's liabilities has been provided for (including without limitation Trust Expenses) as required by applicable law including Section 3808 of the Act, all assets remaining in the Asbestos PI Trust estate shall be given to such organization(s) exempt from federal income tax under section 501(c)(3) of the IRC, which tax-exempt organization(s) shall be selected by the Asbestos PI Trustees using their reasonable discretion; provided, however, that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on or the relief of suffering of individuals suffering from asbestos-related lung diseases or disorders and (ii) the tax-exempt organization(s) shall not bear any relationship to the Company within the meaning of section 468B(d)(3) of the IRC. Notwithstanding any contrary provision of the Plan and related documents, this Section 8.2(c) cannot be modified or amended.

(d) Following the dissolution and distribution of the assets of the Asbestos PI Trust, the Asbestos PI Trust shall terminate and the Asbestos PI Trustees, or any one of them, shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Asbestos PI Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Agreement, the existence of the Asbestos PI Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

8.3 Amendments. The Asbestos PI Trustees may modify or amend this Agreement by a writing signed by each Asbestos PI Trustee; provided, however, that any such amendment shall require the consent of each member of the Asbestos PI TAC and the Future Asbestos Claimants' Representative in accordance with Section 2.2(e) above; and provided, further, that no such modification or amendment, unless the writing evidencing such modification or amendment is signed by the Company, may (a) alter Article I above or (b) adversely affect the rights of the Company or any other Reorganized Debtor or expand the obligations of the Company under this Agreement; and provided, further, that no such modification or amendment, unless the modification or amendment is signed by the Delaware Trustee, may adversely affect the rights, duties or obligations of the Delaware Trustee. The Asbestos PI Trustees may modify or amend the Asbestos Distribution Procedures by a writing signed by each Asbestos PI Trustee;

provided, however, that any such amendment shall require the consent of a majority of the members of the Asbestos PI TAC and the Future Asbestos Claimants' Representative; and provided, further, that no amendment to such procedures shall be inconsistent with the provisions limiting amendments to such procedures provided therein and, in particular, the provisions limiting amendment of the "Claims Payment Ratio" set forth in Section 2.6 of the Asbestos Distribution Procedures and of the "Payment Percentage" set forth in Section 4.2 of the Asbestos Distribution Procedures. Notwithstanding anything contained in this Agreement to the contrary, none of this Agreement, the Asbestos Distribution Procedures or the Asbestos PI Trust Bylaws, or any document annexed to the foregoing, shall be modified or amended in any way that could jeopardize, impair or modify the applicability of section 524(g) of the Bankruptcy Code, the efficacy or enforceability of the Asbestos PI Channeling Injunction or the Asbestos PI Trust's qualified settlement fund status under section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.

8.4    Severability. Should any provision in this Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Agreement.

8.5    Notices.

(a)    Any notices or other communications required or permitted hereunder to any person asserting an Asbestos Personal Injury Claim shall be in writing and delivered at the address for such person or, where applicable, such person's legal representative, in each case as provided on such person's claim form submitted to the Asbestos PI Trust with respect to his or her Claim, or mailed by first class mail, postage prepaid, addressed to such address.

(b)    Any notices or other communications required or permitted hereunder to any of the following parties shall be in writing and delivered at the address for such party designated below, mailed by registered or certified mail, return receipt requested, postage prepaid, addressed to such address or sent by electronic mail or facsimile pursuant to the instructions listed below, in each case or to such other address or addresses or in accordance with such other instructions, as the case may be, as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Company:

Kaiser Aluminum & Chemical Corporation
27422 Portola Parkway, Suite 350
Foothill Ranch, California 92610-2831
Facsimile: 949-614-1930
Attention: John M. Donnan, General Counsel
E-mail: john.donnan@kaiseraluminum.com

with a copy to:

Jones Day
2727 N. Harwood Street

Dallas, Texas 75223
Facsimile: 214-969-5100
Attention: Gregory M. Gordon, Esq.
E-mail: gmgordon@jonesday.com

To the Asbestos PI Trust through the Asbestos PI Trustees:

Mark M. Gleason
Gleason & Associates
One Gateway Center, Suite 525
420 Ft. Duquesne Blvd.
Pittsburgh, Pennsylvania 15222
Facsimile: 412-391-1790
E-mail: mgleason@gleason-cpa.com

Ken M. Kawaichi
JAMS - Attn: Lisa Savetti
100 Pringle Avenue, Suite 700
Walnut Creek, California 94596
Facsimile: 925-938-6732
E-mail: kkawaichi@sbcglobal.com

Robert A. Marcis
E-mail: MARCIS4@sbcglobal.net

Hard copy to:

Robert A. Marcis
c/o Frank/Gecker LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60610
Attention: Frances Gecker

with a copy to:

Frank/Gecker LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60610
Facsimile: 312-276-0035
Attention: Frances Gecker
E-mail: fgecker@fgllp.com

To the Delaware Trustee:

Wilmington Trust Company
1100 N. Market Street
Wilmington, Delaware 19890-1625
Attention: Joseph B. Feil
Email: jfeil@wilmingtontrust.com


To the Asbestos PI TAC:

Matthew P. Bergman
Bergman & Frockt
Post Office Box 2010
17530 Vashon Highway SW
Vashon, Washington 98070
Facsimile: 206-463-4470
E-mail: matt@bergmanlegal.com

Alan R. Brayton
Brayton & Purcell
222 Rush Landing Road
Post Office Box 6169
Novato, California 94948-6169
Facsimile: 415-898-1247
E-mail: Abrayton@braytonlaw.com

Perry Weitz
Weitz & Luxenberg
180 Maiden Lane
New York, New York 10038
Facsimile: 212-344-5461
E-mail: pweitz@weitzlux.com

John D. Cooney
Cooney & Conway
120 N. LaSalle Street, 30th Floor
Chicago, Illinois 60602
Facsimile: 312-236-3029
E-mail: jcooney@cooneyconway.com

Steven Kazan
Kazan, McClain, Abrams, Fernandez, Lyons & Farrise
171 Twelfth Street, Third Floor
Oakland, California 94607
Facsimile: 510-835-4913
E-mail: skazan@kazanlaw.com

To the Future Asbestos Claimants' Representative:

Martin J. Murphy
Davis & Young
1700 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115-1027
Facsimile: 216-621-0602
E-mail: mmurphy@davisyoung.com

(c)     All notices and communications in accordance with this Section 8.5 shall be effective, if mailed, when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

8.6     Successors and Assigns. The provisions of this Agreement shall be binding upon and inure to the benefit of the Company, the Asbestos PI Trust, the Asbestos PI Trustees, the Delaware Trustee, the members of the Asbestos PI TAC, the Future Asbestos Claimants' Representative and their respective successors and assigns, except that none of such persons may assign or otherwise transfer any of its rights or obligations under this Agreement except, in the case of the Asbestos PI Trust and the Asbestos PI Trustees, as contemplated by Section 2.1 above.

8.7     Limitation on Claim Interests for Securities Laws Purposes. No Asbestos Personal Injury Claim or any interest therein shall (a) be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution, (b) be evidenced by a certificate or other instrument, (c) possess any voting rights, or (d) be entitled to receive any dividends or interest; provided, however, that clause (a) of this Section 8.7 shall not apply to the holder of a claim that is subrogated to an Asbestos Personal Injury Claim as a result of its satisfaction of such claim.

8.8     Entire Agreement; No Waiver. The entire agreement of the parties relating to the subject matter of this Agreement is contained herein and in the documents referred to herein, and this Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

8.9     Headings. The headings used in this Agreement are inserted for convenience only and do not constitute a portion of this Agreement or any manner affect the construction of the provisions of this Agreement.

8.10    Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware without regard to Delaware conflict of laws principles; *provided, however*, that there shall not be applicable to the parties hereunder or this

Agreement any provision of the laws (common or statutory) of the state of Delaware pertaining to trusts that relate to or regulate, in a manner inconsistent with the terms hereof, (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding or investing trust assets or (g) the establishment of fiduciary or other standards of responsibility or limitations on the acts or powers of trustees that are inconsistent with the limitations or authorities and powers of the Asbestos PI Trustees and Delaware Trustee hereunder as set forth or referenced in this Agreement. Section 3540 of title 12 of the Delaware Code shall not apply to the Asbestos PI Trust.

      8.11   Settlor Representative and Cooperation. The Company is hereby irrevocably designated as the settlor of the Asbestos PI Trust and it is hereby authorized to take any action required as such in connection with this Agreement. The Company agrees to cooperate in implementing the goals and objectives of the Asbestos PI Trust.

      8.12   Dispute Resolution. Any disputes that arise under this Agreement or under the Asbestos Distribution Procedures shall be resolved by submission of the matter to an alternative dispute resolution ("ADR") process mutually agreeable to the parties involved. Should any party to the ADR process be dissatisfied with the decision of the arbitrator(s), that party may apply to the Bankruptcy Court for a judicial determination of the matter. In either case, if the dispute arose pursuant to the consent provision set forth in Section 6.7(b) above or Section 7.7(b) above, the burden of proof shall be on the party or parties who withheld consent to show that the objection was valid. Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court. Notwithstanding anything else herein contained, to the extent any provision of this Agreement is inconsistent with any provision of the Asbestos Distribution Procedures or the Plan, the Asbestos Distribution Procedures or the Plan, as the case may be, shall control.

      8.13   Enforcement and Administration. The provisions of this Agreement and the Asbestos Distribution Procedures attached hereto shall be enforced by the Bankruptcy Court pursuant to the Plan. The parties hereby further acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of the accounts of the Asbestos PI Trustees and over any disputes hereunder not resolved by ADR in accordance with Section 8.12 above.

      8.14   Effectiveness. This Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

      8.15   Counterpart Signatures. This Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first written above.

KAISER ALUMINUM & CHEMICAL
CORPORATION,
as the settlor of the Asbestos PI Trust

By: _____

Name: John M. Donnan
Title: Vice President, Secretary & General Counsel

ASBESTOS PI TRUSTEES

_____

Name: Mark M. Gleason
Expiration Date of Initial Term: Third anniversary
of the date of this Agreement

_____

Name: Ken M. Kawaichi
Expiration Date of Initial Term: Fourth anniversary
of the date of this Agreement

_____

Name: Robert A. Marcis
Expiration Date of Initial Term: Fifth anniversary
of the date of this Agreement

DELAWARE TRUSTEE
Wilmington Trust Company

By: _____
Name: _____
Title: _____

34

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first written above.

KAISER ALUMINUM & CHEMICAL
CORPORATION,
as the settlor of the Asbestos PI Trust

By: _____

Name: John M. Donnan
Title: Vice President, Secretary & General Counsel

ASBESTOS PI TRUSTEES

_____

Name: Mark M. Gleason
Expiration Date of Initial Term: Third anniversary
of the date of this Agreement

_____

Name: Ken M. Kawaichi
Expiration Date of Initial Term: Fourth anniversary
of the date of this Agreement

_____

Name: Robert A. Marcis
Expiration Date of Initial Term: Fifth anniversary
of the date of this Agreement

DELAWARE TRUSTEE
Wilmington Trust Company

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first written above.

> KAISER ALUMINUM & CHEMICAL
> CORPORATION,
> as the settlor of the Asbestos PI Trust
>
> By: _____
> Name:  John M. Donnan
> Title:  Vice President, Secretary & General Counsel
>
> ASBESTOS PI TRUSTEES
>
> _____
> Name: Mark M. Gleason
> Expiration Date of Initial Term:  Third anniversary
> of the date of this Agreement
>
> _____
> Name: Ken M. Kawaichi
> Expiration Date of Initial Term:  Fourth anniversary
> of the date of this Agreement
>
> _____
> Name: Robert A. Marcis
> Expiration Date of Initial Term:  Fifth anniversary
> of the date of this Agreement
>
> DELAWARE TRUSTEE
> Wilmington Trust Company
>
> By: _____
> Name: Joseph D. Feil
> Title: Assistant Vice President

MEMBERS OF ASBESTOS PI TRUST
ADVISORY COMMITTEE

Name: Matthew P. Bergman, Esq.
Expiration Date of Initial Term:  Third anniversary
of the date of this Agreement


Name: Alan R. Brayton, Esq.
Expiration Date of Initial Term:  Fourth anniversary
of the date of this Agreement


Name: Perry Weitz, Esq.
Expiration Date of Initial Term:  Fourth anniversary
of the date of this Agreement


Name: John D. Cooney, Esq.
Expiration Date of Initial Term:  Fifth anniversary
of the date of this Agreement


Name: Steven Kazan, Esq.
Expiration Date of Initial Term:  Fifth anniversary
of the date of this Agreement


FUTURE ASBESTOS CLAIMANTS'
REPRESENTATIVE


Name:  Martin J. Murphy, Esq.

MEMBERS OF ASBESTOS PI TRUST
ADVISORY COMMITTEE

_____
Name: Matthew P. Bergman, Esq.
Expiration Date of Initial Term:  Third anniversary
of the date of this Agreement

_____
Name: Alan R. Brayton, Esq.
Expiration Date of Initial Term:  Fourth anniversary
of the date of this Agreement

_____
Name: Perry Weitz, Esq.
Expiration Date of Initial Term:  Fourth anniversary
of the date of this Agreement

_____
Name: John D. Cooney, Esq.
Expiration Date of Initial Term:  Fifth anniversary
of the date of this Agreement

_____
Name: Steven Kazan, Esq.
Expiration Date of Initial Term:  Fifth anniversary
of the date of this Agreement

FUTURE ASBESTOS CLAIMANTS'
REPRESENTATIVE

_____
Name:  Martin J. Murphy, Esq.

MEMBERS OF ASBESTOS PI TRUST
ADVISORY COMMITTEE

_____

Name: Matthew P. Bergman, Esq.
Expiration Date of Initial Term:  Third anniversary
of the date of this Agreement

_____

Name: Alan R. Brayton, Esq.
Expiration Date of Initial Term:  Fourth anniversary
of the date of this Agreement

Name: Perry Weitz, Esq.
Expiration Date of Initial Term:  Fourth anniversary
of the date of this Agreement

_____

Name: John D. Cooney, Esq.
Expiration Date of Initial Term:  Fifth anniversary
of the date of this Agreement

_____

Name: Steven Kazan, Esq.
Expiration Date of Initial Term:  Fifth anniversary
of the date of this Agreement

FUTURE ASBESTOS CLAIMANTS'
REPRESENTATIVE

_____

Name:  Martin J. Murphy, Esq.

MEMBERS OF ASBESTOS PI TRUST ADVISORY
COMMITTEE

Name: Matthew P. Bergman, Esq.
Expiration Date of Initial Term:  Third anniversary of the date
of this Agreement

Name: Alan R. Brayton, Esq.
Expiration Date of Initial Term:  Fourth anniversary of the
date of this Agreement

Name: Perry Weitz, Esq.
Expiration Date of Initial Term:  Fourth anniversary of the
date of this Agreement

Name: John D. Cooney, Esq.
Expiration Date of Initial Term:  Fifth anniversary of the date
of this Agreement

Name: Steven Kazan, Esq.
Expiration Date of Initial Term:  Fifth anniversary of the date
of this Agreement

FUTURE ASBESTOS CLAIMANTS' REPRESENTATIVE

Name: Martin J. Murphy, Esq.

MEMBERS OF ASBESTOS PI TRUST
ADVISORY COMMITTEE

_____
Name: Matthew P. Bergman, Esq.
Expiration Date of Initial Term:  Third anniversary
of the date of this Agreement

_____
Name: Alan R. Brayton, Esq.
Expiration Date of Initial Term:  Fourth anniversary
of the date of this Agreement

_____
Name: Perry Weitz, Esq.
Expiration Date of Initial Term:  Fourth anniversary
of the date of this Agreement

_____
Name: John D. Cooney, Esq.
Expiration Date of Initial Term:  Fifth anniversary
of the date of this Agreement

_____
Name: Steven Kazan, Esq.
Expiration Date of Initial Term:  Fifth anniversary
of the date of this Agreement

FUTURE ASBESTOS CLAIMANTS'
REPRESENTATIVE

_____
Name:  Martin J. Murphy, Esq.

MEMBERS OF ASBESTOS PI TRUST
ADVISORY COMMITTEE

_____

Name: Matthew P. Bergman, Esq.
Expiration Date of Initial Term:  Third anniversary
of the date of this Agreement

_____

Name: Alan R. Brayton, Esq.
Expiration Date of Initial Term:  Fourth anniversary
of the date of this Agreement

_____

Name: Perry Weitz, Esq.
Expiration Date of Initial Term:  Fourth anniversary
of the date of this Agreement

_____

Name: John D. Cooney, Esq.
Expiration Date of Initial Term:  Fifth anniversary
of the date of this Agreement

_____

Name: Steven Kazan, Esq.
Expiration Date of Initial Term:  Fifth anniversary
of the date of this Agreement

FUTURE ASBESTOS CLAIMANTS'
REPRESENTATIVE

_____

Name: Martin J. Murphy, Esq.

35