# Tab (i)

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | ) |
| | ) |
| MID-VALLEY, INC., *et al.*, | ) |
| | ) |
| Debtors. | ) |
| | ) |

Jointly Administered at
Case No. 03-35592 JKF

Chapter 11

Docket No. _____
Related to Docket Nos. 1511, 1513,
1514, 1544

## ORDER (I) APPROVING DEBTORS' DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES AND (II) CONFIRMING DEBTORS' FOURTH AMENDED AND RESTATED JOINT PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

This matter comes before this Court on the Motion of Mid-Valley, Inc., DII Industries,

LLC, Kellogg Brown & Root, Inc., KBR Technical Services, Inc., Kellogg Brown & Root

Engineering Corporation, Kellogg Brown & Root International, Inc., a Delaware corporation,

Kellogg Brown & Root International, Inc., a Panamanian corporation, and BPM Minerals, LLC,

debtors and debtors-in-possession herein (collectively, the "Debtors"), for an order (I) approving

the Debtors' Disclosure Statement and the procedures used to solicit votes on the Debtors'

prepackaged plan of reorganization and (II) confirming the Debtors' Fourth Amended and

Restated Joint Prepackaged Plan of Reorganization Under Chapter 11 of the United States

Bankruptcy Code dated and filed of record on May 17, 2004 (Docket No. 1513), as amended by

the First Technical Plan Amendment to the Fourth Amended and Restated Joint Prepackaged

Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated and filed of record on

May 27, 2004 (Docket No. 1544) (collectively referred to hereinafter as the "Plan").[1]  This Court

---

[1]     Capitalized terms used herein without definition shall have the meaning ascribed to such terms in
the Uniform Glossary of Defined Terms for Plan Documents filed of record on May 17, 2004 (the
"Glossary") (Docket No. 1514). Any capitalized term used but not defined herein, or in the Glossary, but
that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such

has reviewed the briefs submitted in support of, and in opposition to, confirmation of the Plan

and approval of the adequacy of the Disclosure Statement and the procedures used to solicit

votes on the Plan, listened to the oral arguments of all interested parties appearing at the hearing

or their counsel, reviewed the testimony of witnesses and other evidence admitted at the

Confirmation Hearing, and taken notice of the pleadings, orders, and proceedings in the

Reorganization Cases.

This Court also has reviewed: (i) the Affidavit of The Trumbull Group, LLC by Brendan

Halley, Notice Coordinator for The Trumbull Group, L.L.C., sworn to January 27, 2004 (Docket

No. 460); (ii) the Certificate of Service of Kirkpatrick & Lockhart LLP by Jeffrey N. Rich dated

January 26, 2004 (Docket No. 444), reflecting service of the Debtors' Notice of Disclosure

Statement and Chapter 11 Plan Confirmation Hearings and Related Deadlines dated March 19,

2004 (the "Confirmation Notice"); (iii) the Certificates of Publication (Docket Nos. 499, 500,

and 501), reflecting publication of notice of Debtors' vote solicitation in the October 3, 2003

edition of USA Today, the October 2003 issue of Mealey's Silica Litigation Report, the October

17, 2003 issue of Mealey's Emerging Toxic Tort Report, and the October 15, 2003 issue of

Mealey's Asbestos Litigation Report; (iv) the Affidavit by The Trumbull Group, L.L.C. f/k/a

Trumbull Associates of Publication of Debtors' Notice of Disclosure Statement and Chapter 11

Plan Confirmation Hearings and Related Deadlines dated March 19, 2004, reflecting publication

of the Confirmation Notice in the February 5, 2004 edition of USA Today and publication in the

February 12, 2004 issue of Mealey's Asbestos Bankruptcy Litigation Report of the Confirmation

Notice (Docket No. 847); (v) the Affidavit of The Trumbull Group, L.L.C. f/k/a Trumbull

Associates, L.L.C. and Trumbull Services, L.L.C. dated March 31, 2004 (Docket No. 932),

---

term in the Bankruptcy Code or the Bankruptcy Rules. Such meanings shall be equally applicable to both
the singular and the plural forms of such terms.

2

reflecting service of the Confirmation Notice on all known potential holders of Class 4 Indirect

Asbestos PI Trust Claims and Class 6 Indirect Silica PI Trust Claims and other individual

claimants identified on Exhibit C thereto; (vi) the Affidavit of The Trumbull Group, L.L.C. f/k/a

Trumbull Associates, L.L.C. and Trumbull Services, L.L.C. dated April 20, 2004 (Docket No.

1078), reflecting service of the Confirmation Notice on all known, or alleged Class 4 and Class 6

asbestos and silica-related personal-injury claimants; and (vi) the Amended Affidavit of Daniel

McSwigan dated April 21, 2004 (Docket No. 1104), reflecting service of the Debtors'

solicitation packages which included the Plan Documents to all known Class 4 and Class 6

asbestos and silica-related personal-injury claimants and their counsel of record.

After due deliberation and sufficient cause appearing therefore, IT IS HEREBY

ORDERED THAT:

## A.   **General Decrees and Implementation**

1.      The Disclosure Statement dated September 18, 2003 (Docket No. 48) and the

Supplemental Disclosure Statement dated November 14, 2003 (Docket No. 49) are hereby

approved as containing adequate information within the meaning of section 1125 of the

Bankruptcy Code.

2.      All objections to the Disclosure Statement, other than those withdrawn in writing

prior to, or on the record at, the Confirmation Hearing are hereby overruled.

3.      The Debtors' solicitation of acceptances of the Plan is approved as being in

compliance with all applicable requirements of section 1126(b) of the Bankruptcy Code,

Bankruptcy Rules 3017 and 3018, and all applicable non-bankruptcy law.

4.      The ballots in the form transmitted with the Disclosure Statement and the ballots

in the form transmitted with the Supplemental Disclosure Statement are approved in all respects.

3

5.      The holders of impaired Class 4 and Class 6 Claims have voted to accept the Plan
in the numbers and amounts required by section 1126(b) of the Bankruptcy Code. The holders
of Class 4 Claims also have voted to accept the Plan in sufficient numbers to meet the
requirements of section 524(g)(2)(B)(ii)(iv)(bb) of the Bankruptcy Code. All other Classes of
Claims and Interests are unimpaired under the Plan and are deemed pursuant to section 1126(f)
of the Bankruptcy Code to have accepted the Plan.

6.      All objections related to the Debtors' solicitation process and ballot tabulation
procedures, other than those withdrawn in writing prior to, or on the record at, the Confirmation
Hearing are hereby overruled.

7.      The Plan is hereby confirmed in its entirety, and each and every provision
contained therein is approved in its entirety.

8.      The Plan Documents, including, without limitation, the Asbestos PI Trust
Documents and the Silica PI Trust Documents together with all amendments, modifications, and
supplements thereto, and all annexes, exhibits, and schedules thereto, and all terms and
conditions thereof, are hereby approved.

9.      The Debtors and/or Reorganized Debtors may amend Exhibit 2 to the Plan after
the Confirmation Date by filing an amended exhibit with the clerk of the Bankruptcy Court and
serving such exhibit on the Official Service List and the 2002 Service List. Upon the filing of
such exhibit, the Plan shall be deemed to have been amended without need for further action.

10.     All objections to the confirmation of the Plan, other than those withdrawn in
writing prior to, or on the record at, the Confirmation Hearing are hereby overruled.

11.     All transactions effected by the Debtors during the period from the Petition Date,
through and including the Confirmation Date, are hereby approved, ratified, and confirmed.

4

12.   Except as otherwise provided in this Order, all payments made or to be made by the Debtors, or by an Entity to the extent, if any, that such Entity issues or delivers securities or acquires property under or pursuant to the Plan, for services or for costs and expenses in or in connection with the Reorganization Cases, or in connection with the Plan and incident to the Reorganization Cases, are hereby approved as reasonable.

13.   The record of the Confirmation Hearing is closed.

14.   Nothing in this Order shall in any way affect the provisions of article 8.1 of the Plan, which provide that "the Effective Date of the Plan" shall not occur, and that the Plan shall be of no force and effect, until the conditions in article 8.1 of the Plan have been satisfied or, if applicable, waived pursuant to article 8.2 of the Plan.

15.   If the Effective Date does not occur, the terms of this Order and all Findings of Fact and Conclusions of Law shall be null and void, and the Debtors and holders of Claims and Interests shall stand in the same position in which such persons would have stood if this Order had not been entered.

## B.   Certain Matters Relating to Implementation of the Plan

### Certain Corporate Filings; Management of the Reorganized Debtors

16.   The managing member, chief executive officer, president, vice president, general counsel, secretary, treasurer, or any other officer of each Debtor shall be authorized, to the extent consistent with each respective Debtor's constituent documents, to execute, deliver, file, or record such contracts, instruments, settlement agreements, releases, indentures, and other agreements or documents and to take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary, any assistant secretary, managing member, or officer of a Debtor shall be authorized to certify or attest to any of the foregoing actions.

5

17.    All matters provided for under the Plan involving the corporate structure of the

Debtors or the Reorganized Debtors, or any corporate action to be taken by, or required of, the

Debtors or the Reorganized Debtors, shall be deemed to have occurred and be effective as

provided in the Plan, and shall be authorized and approved in all respects without any

requirement for further action by the stockholders or directors of any such entities.

18.    On and after the Effective Date, the business and affairs of the Reorganized

Debtors will be managed (a) in the case of DII Industries, by HESI, as the managing member of

DII Industries, and by the officers of DII Industries serving immediately prior to the occurrence

of the Effective Date and (b) in the case of the other Reorganized Debtors, by the respective

boards of directors and officers of the Reorganized Debtors serving immediately prior to the

occurrence of the Effective Date.

### Vesting of Assets; Continued Corporate Existence

19.    Except as otherwise expressly provided herein or in the Plan, on the Effective

Date, the Reorganized Debtors shall be vested with all of the assets and property of their former

Estates, free and clear of all Claims, Liens, charges, and other interests of holders of Claims or

Interests, except to the extent specifically provided herein, in an order of this Court, or in the

Plan, and may operate their businesses free of any restrictions imposed by the Bankruptcy Code.

### Substantive Consolidation for Certain Purposes

20.    Pursuant to article 9.1 of the Plan, the Debtors' Estates shall be substantively

consolidated on the Effective Date for purposes of funding the Asbestos PI Trust and the Silica

PI Trust. Such substantive consolidation shall not affect the Debtors' obligations to holders of

Claims in Classes other than Class 4 and Class 6, which shall continue to be obligations solely of

the specific entities that were obligated on a Claim on the Petition Date. Except as provided in

article 9.1 of the Plan, the Reorganized Debtors shall continue to maintain their separate

6

corporate existence for all purposes other than funding the Asbestos PI Trust and the Silica PI
Trust.

### Institution and Maintenance of Legal and Other Proceedings

21.    Except as provided in articles 11.4 and 12.1 of the Plan, as of the Effective Date,
the Asbestos PI Trust and the Silica PI Trust shall be empowered to initiate, prosecute, defend,
settle, and resolve all legal actions and other proceedings related to any asset, liability, or
responsibility of the Asbestos PI Trust and the Silica PI Trust, as the case may be. The Asbestos
PI Trust and the Silica PI Trust, as the case may be, shall be responsible for the payment of all
damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred by or
on behalf of such trust subsequent to the Effective Date arising from, or associated with, any
legal action or other proceeding that is the subject of this paragraph.

### Vesting and Enforcement of Causes of Action in Reorganized Debtors

22.    All causes of action shall remain property of the Reorganized Debtors, except to
the extent provided in the Plan, and may be pursued or compromised as deemed fit by the
Reorganized Debtors in their sole discretion without need for this Court's approval. Proceeds, if
any, of such causes of action shall be retained by the Reorganized Debtors for general corporate
purposes.

### No Transfer Taxes

23.    Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or
exchange of any of the securities issued, transferred, or exchanged under, or the transfer of any
other assets or property pursuant to, or in connection with, the Plan, or the making or delivery of
an instrument of transfer under, or in connection with, the Plan shall not be taxed under any law
imposing a stamp tax, transfer tax, or other similar tax.

7

## The Asbestos PI Trust

### (a)   Establishment and Purpose of Asbestos PI Trust

24.    On the Effective Date, the Asbestos PI Trust shall be established in accordance
with the Plan Documents. The Asbestos PI Trust shall be a "qualified settlement fund" within
the meaning of regulations issued pursuant to section 468B of the IRC. The purpose of the
Asbestos PI Trust shall be to, among other things, (1) liquidate, resolve, pay, and satisfy all
Asbestos PI Trust Claims in accordance with the Plan, the Asbestos TDP, procedures to be
developed and implemented by the Trustees for the processing of, and where applicable, the
liquidation of, Indirect Asbestos PI Trust Claims (as required by the Asbestos TDP and subject to
the rights of parties under the applicable TDP), and this Order, and (2) preserve, hold, manage,
and maximize the Asbestos PI Trust Assets for use in paying and satisfying Liquidated Asbestos
PI Trust Claims in accordance with the terms of the Asbestos PI Trust Agreement.

### (b)   The Appointment of Trustees, Asbestos TAC Members, and Legal
         Representative

25.    The initial trustees of the Asbestos PI Trust shall be Mark A. Gleason, Alan R.
Kahn, and the Honorable Robert M. Parker.

26.    The initial members of the Asbestos TAC shall be Steven Baron, John Cooney,
Theodore Goldberg, Steven Kazan, Michael Kelley, Glen Morgan, and Perry Weitz.

27.    Eric D. Green shall continue to serve as Legal Representative on and after the
Effective Date pursuant to article 5 of the Asbestos PI Trust Agreement.

## The Silica PI Trust

### (a)   Establishment and Purpose of Silica PI Trust

28.    On the Effective Date, the Silica PI Trust shall be established in accordance with
the Plan Documents. The Silica PI Trust shall be a "qualified settlement fund" within the

8

meaning of regulations issued pursuant to section 468B of the IRC. The purpose of the Silica PI
Trust shall be to, among other things, (1) direct the liquidation, resolution, payment, and
satisfaction of all Silica PI Trust Claims in accordance with the Plan, the Silica TDP, procedures
to be developed and implemented by the Trustees for the processing of, and where applicable,
the liquidation of, Indirect Silica PI Trust Claims (as required by the Silica TDP and subject to
the rights of parties under the applicable TDP), and this Order, and (2) preserve, hold, manage,
and maximize the Silica PI Trust Assets for use in paying and satisfying Liquidated Silica PI
Trust Claims in accordance with the terms of the Silica PI Trust Agreement.

### (b)   The Appointment of Trustee, Silica TAC Members, and Legal Representative

29.     The initial trustee of the Silica PI Trust shall be Martin J. Murphy.

30.     The initial members of the Silica TAC shall be Steven Baron, Bryan Blevins, and
Joseph Rice.

31.     Eric D. Green shall continue to serve as the Legal Representative on and after the
Effective Date pursuant to article 5 of the Silica PI Trust Agreement.

### C.   Insurance

32.     Except for those rights provided to the Asbestos PI Trust in the Asbestos PI Trust
Additional Funding Agreement, all rights to recoveries under any insurance policy providing the
Debtors, Halliburton, and/or the Halliburton Current Affiliates with coverage for asbestos-related
liabilities, the right to control insurance-coverage litigation, negotiations, and settlements shall be
vested and remain, as applicable, with the Reorganized Debtors, Halliburton, or the Halliburton
Current Affiliates on and after the Effective Date.

33.     Article 11.4 of the Plan is incorporated in its entirety into, and made a part of, this
Order.

9

34. The Order Granting Debtors' Motion for an Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019 (a) Approving (I) Settlement Agreement and Mutual Release Between DII Industries, LLC, Halliburton Company and Certain Underwriters at Lloyd's, London (the "Lloyd's, London Settlement Agreement") and (II) Related Technical Plan Amendment entered on March 10, 2004 (Docket No. 806) is incorporated in its entirety into, and made a part of, this Order. The provisions of the Lloyd's, London Settlement Agreement are binding on the Reorganized Debtors, and the obligations of DII Industries under the agreement shall become the joint and several obligations of the Reorganized Debtors.

35. The Order Granting Debtors' Motion for an Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019 (a) Approving (I) Settlement Agreement and Mutual Release Between DII Industries, LLC and Liberty Mutual Insurance Company (the "Liberty Mutual Settlement Agreement"), and (II) Related Technical Plan Amendment entered on May 6, 2004 (Docket No. 1410) is incorporated in its entirety into, and made a part of, this Order, and the provisions of the Liberty Mutual Settlement Agreement are binding on the Reorganized Debtors.

36. The Stipulated Order Granting Debtors' Expedited Motion for an Order Pursuant to 11 U.S.C. §§ 105(a) and 365(a) Authorizing Debtors' Assumption of Asbestos and Silica-Related Insurance Coverage-In-Place Agreements entered on May 10, 2004 (Docket No. 1492) is incorporated in its entirety into, and made a part of, this Order.

**D.   Discharge and Release**

37. Except as specifically provided in the Plan or in this Order, effective on the Effective Date, to the fullest extent permitted under applicable law, the rights provided in the Plan shall (a) discharge the Debtors and Reorganized Debtors and (b) release each of the Halliburton Entities and the Harbison-Walker Entities, in the case of both (a) and (b) from any and all Asbestos Unsecured PI Trust Claims and Silica Unsecured PI Trust Claims, whether or

10

not (i) a Proof of Claim based on such Claim was filed or deemed filed under section 501 of the

Bankruptcy Code, (ii) such Claim is or was Allowed under section 502 of the Bankruptcy Code,

(iii) such Claim was listed on the schedules of a Debtor, or (iv) the holder of such Claim has

voted on or accepted the Plan.

(a) The Plan proposes 100% payment of asbestos-related and silica-related claims. Approximately $4.2 billion in funding is being provided under the Plan. Of that amount, more than $1.8 billion, measured on a net present value basis, is dedicated to payment of unsettled and future asbestos-related personal-injury claims. With respect to the Silica PI Trust, under the Plan, DII Industries and KBR will issue a note, guaranteed by Halliburton, that will provide payment of up to $450 million over a thirty-year period, and up to $750 million over a fifty-year period if the Silica PI Trust Note is extended, pursuant to its terms, to ensure that the Silica PI Trust has sufficient assets to meet projected future Demands. Based upon the foregoing, the analyses performed by the professionals of the Debtors and Legal Representative, and the Legal Representative's testimony, the funding provided to the Asbestos and Silica PI Trusts is sufficient to provide 100% payment to all claims liquidated under both trusts.

(b) For Qualifying Settled Asbestos PI Trust Claims, Qualifying Settled Silica PI Trust Claims, Asbestos Final Judgment Claims, and Silica Final Judgment Claims, amendments to the Plan provide that the Payment Percentage will be the Initial Payment Percentage calculated on the 105th day after entry of the Confirmation Order by dividing $2.775 billion by the aggregate dollar value of Qualified Claims. In total, there are $3.085 billion in claims that potentially could be Qualified Claims based upon agreements with the Asbestos Committee.

(c) As of May 7, 2004, the number of Qualified Claimants totaled 307,632 with claims totaling $2,557,653,842. While the review of claims is not yet complete, and will not be complete until the 105th day after entry of the Confirmation Order, the Debtors and the Legal Representative expect that the Initial Payment Percentage for Qualified Claimants will be 100%. Debtors and the Legal Representative expect that the Initial Payment Percentage for Qualified Claimants will be 100%. The Court finds that the Initial Payment Percentage under the unique facts of this case must be 100%.

(d) For claims liquidated under the Asbestos TDP (other than claims for Disease Level 1 (Other Asbestos Disease)) and claims liquidated under the Silica TDP, the Payment Percentage will be established by the trustee(s) of the respective trust with the consent of the Legal Representative and the Asbestos TAC in the case of Asbestos Unsecured PI Trust Claims, and with the consent of the Legal Representative and the Silica TAC in the case of Silica Unsecured PI Trust Claims. Professor Green testified that the Payment Percentage for these claimants also likely will be 100%.

(e) The DII Industries, LLC. Asbestos PI Trust Distribution Procedures, Plan Exhibit 4, Amended Annex 3, makes certain provisions in Section 4, Payment Percentage; Periodic Estimates. Section 4.1 acknowledges the uncertainty of the Halliburton Entities' and the

11

Harbison-Walker Entities' asbestos personal injury liabilities and notes that there is uncertainty regarding the amounts that the holders of those Asbestos PI Trust Claims will receive. The Silica PI Trust Distribution Procedures, Amended Annex 3 to Silica PI Trust Agreement, Plan Exhibit 10, provides a procedure in Section 4, Resolution of Silica Unsecured PI Trust Claims, for the processing and payment of silica claims. The Plan is structured so that the Asbestos and Silica PI Trusts are funded sufficiently to provide 100% payment to all claims liquidated under the Trusts.

(f) Under the Halliburton Intercompany Settlement Agreement, Halliburton has agreed, on behalf of itself and the other parties to be protected under the Permanent Channeling Injunction, to:

• issue 59.5 million shares of Halliburton stock which DII Industries will contribute to the Asbestos PI Trust on the Effective Date;

• raise or obtain commitments for the approximately $2.4 billion that will be needed to fund cash contributions to the asbestos and silica trusts;

• guarantee the obligations of DII Industries under the Asbestos PI Trust Note;

• guarantee the obligations of DII Industries and KBR under the Silica PI Trust Note;

• guarantee the obligations of the Debtors under the Asbestos PI Trust Funding Agreement and the Silica PI Trust Funding Agreement;

• perform various other undertakings in connection with the Plan;

• provide up to $350 million in DIP financing in order for the Debtors to meet financial obligations during and after the Reorganization Cases; and

• enter into a third-party master letter of credit facility covering draws on approximately $1.1 billion in letters of credit issued on behalf of various Debtors.

(g)    Because Halliburton is solvent, 11 U.S.C. §524(g) requires that Halliburton pay 100% of the claims against it in order to receive the benefit of the Channeling Injunction. The testimony and evidence of record establish that Halliburton's contributions as listed above will be sufficient to accomplish 100% payment of its obligations under the Plan.

## Discharge Injunction

38.    Except as specifically provided in the Plan Documents of this Order to the

contrary, the satisfaction, release, and discharge set forth in article 10.1 of the Plan shall operate

as an injunction permanently prohibiting and enjoining the commencement or continuation of

any action, the employment of process or any act to collect, recover from, or offset (a) any Claim

or Demand against or Interest in the Debtors, the Reorganized Debtors, the Asbestos PI Trust, or

the Silica PI Trust by any Entity, including all Claims and Demands discharged and released in

article 10.1 of the Plan, and (b) any cause of action, whether known or unknown, against any

Halliburton Entity or Harbison-Walker Entity that is derivative of, or based upon, any Claim or

Interest discharged and released in article 10.1 of the Plan.

## E.   The Permanent Channeling Injunction and the Asbestos/Silica Insurance Company Injunction

### 39.   The Permanent Channeling Injunction

(a)   Terms.  In order to preserve and promote the settlements contemplated by

and provided for in the Plan and to supplement, where necessary, the injunctive effect of

the discharge both provided by sections 1141 and 524 of the Bankruptcy Code and

pursuant to the exercise of the equitable jurisdiction and power of this Court under

sections 524(g) or 105(a) (or both) of the Bankruptcy Code, the Permanent Channeling

Injunction set forth in article 10.3(a) of the Plan shall be, and hereby is, issued and

approved as of the Effective Date.  Pursuant to the Permanent Channeling Injunction, all

Entities which have held or asserted, which hold or assert, or which may in the future

hold or assert any Asbestos PI Trust Claim, any Silica PI Trust Claim, or Claim or

Demand for or respecting any Asbestos PI Trust Expense or Silica PI Trust Expense

against any of the Debtor-Affiliated Protected Parties based upon, arising out of,

attributable to, or in any way causally connected with, any Released Claim whenever and

wherever arising or asserted (including, but not limited to, all such Claims in the nature

of or sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty,

whether by common law or by statute) shall be permanently and forever stayed,

restrained, and enjoined from taking any action for the purpose of directly or indirectly

13

collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor-

Affiliated Protected Party with respect to any Released Claim, including, but not limited

to:

(i)     commencing, conducting, or continuing in any manner, directly or

indirectly, any suit, action, or other proceeding of any kind (including a judicial,

arbitration, administrative, or other proceeding) in any forum with respect to any

Released Claim against any of the Debtor-Affiliated Protected Parties, or against the

property or interests in property of any Debtor-Affiliated Protected Party, with respect to

any Released Claim;

(ii)    enforcing, levying, attaching (including prejudgment attachment)

collecting, or otherwise recovering, by any manner or means, whether directly or

indirectly, any judgment, award, decree, or other order against any of the Debtor-

Affiliated Protected Parties, or against the property or interests in property of any Debtor-

Affiliated Protected Parties, with respect to any Released Claim;

(iii)   creating, perfecting, or otherwise enforcing in any manner, directly or

indirectly, any Lien of any kind against any Debtor-Affiliated Protected Party, or the

property or interests in property of any Debtor-Affiliated Protected Party, with respect to

any Released Claim;

(iv)    except as otherwise specifically provided in the Plan, asserting or

accomplishing any setoff, right of subrogation, indemnity, contribution, reimbursement

or recoupment of any kind and in any manner, directly or indirectly against any

obligation due any Debtor-Affiliated Protected Party, or against the property or interests

14

in property of any Debtor-Affiliated Protected Party, with respect to any Released Claim;
and

(v)     proceeding or taking any action, in any manner, in any place whatsoever,
that does not conform to, or comply with, the provisions of the Plan Documents, the
Asbestos PI Trust Documents, or the Silica PI Trust Documents, relating to any Released
Claim.

(b)     Reservations. Notwithstanding anything to the contrary above, this
Permanent Channeling Injunction shall not enjoin:

(i)     the rights of Entities to the treatment accorded them under articles II and
IV of the Plan, as applicable, including the rights of Entities with Asbestos PI Trust
Claims and Silica PI Trust Claims to assert such Asbestos PI Trust Claims in accordance
with the Asbestos TDP and Silica PI Trust Claims in accordance with the Silica TDP;

(ii)    the rights of Entities to assert any Claim, debt, obligation, or liability for
payment of Asbestos PI Trust Expenses against the Asbestos PI Trust or Silica PI Trust
Expenses against the Silica PI Trust;

(iii)   the rights of any Reorganized Debtor, Halliburton, or any Halliburton
Current Affiliate to prosecute any Asbestos/Silica Insurance Action;

(iv)    the rights of Entities to assert any Claim, Demand, debt, obligation, or
liability for payment against an Asbestos/Silica Insurance Company that is not a Debtor-
Affiliated Protected Party unless otherwise enjoined by order of this Court or estopped by
any provision of the Plan;

(v)     the rights of the trustees of the Asbestos PI Trust to assert any claim under
the Asbestos PI Trust Funding Agreement or the Asbestos PI Trust Additional Funding

15

Agreement or the rights of the trustee of the Silica PI Trust to assert any claim under the
Silica PI Trust Funding Agreement;

(vi)    the rights of any holder of a Settled Asbestos PI Trust Claim or a Settled
Silica PI Trust Claim, whose claim is determined by the Debtors or the Reorganized
Debtors not to be a Qualifying Settled Asbestos PI Trust Claim or a Qualifying Settled
Silica PI Trust Claim, as the case may be, to exercise any alternative dispute resolution
rights under an applicable Asbestos/Silica PI Trust Claimant Settlement Agreement in
accordance with article 12.2 of the Plan; or

(vii)   the right of the holder, if any, of an Asbestos Secured PI Trust Claim or a
Silica Secured PI Trust Claim to exercise the holder's legal, equitable, or contractual
rights on account of such Claim, subject to, and in accordance with, the provisions of
articles 4.2(e) and (g) of the Plan.

40.    **Asbestos/Silica Insurance Company Injunction**

(a)    Terms. In order to preserve and promote the property of the Estates, as
well as the settlements contemplated by and provided for in the Plan, and to supplement,
where necessary, the injunctive effect of the discharge and releases detailed herein, and
pursuant to the exercise of the equitable jurisdiction and power of this Court under
sections 524(g) or 105(a) (or both) of the Bankruptcy Code, the Asbestos/Silica Insurance
Company Injunction set forth in article 10.3(b) of the Plan shall be, and hereby is, issued
and approved as of the Effective Date. Pursuant to the Asbestos/Silica Insurance
Company Injunction, all Entities which have held or asserted, which hold or assert, or
which may in the future hold or assert any Claim, Demand, or cause of action (including,
but not limited to, any Asbestos PI Trust Claim, Silica PI Trust Claim, or any Claim or
Demand for or respecting any Asbestos PI Trust Expense or Silica PI Trust Expense),

16

against a Settling Asbestos/Silica Insurance Company based upon, arising out of,
attributable to, or in any way connected causally with, any Claim against or relating to
Asbestos/Silica In-Place Insurance Coverage, or an Asbestos/Silica Insurance Policy,
whenever and wherever arising or asserted (including, but not limited to, all Claims in the
nature of or sounding in tort, contract, warranty, or any other theory of law, equity, or
admiralty, whether under common law or by statute) shall be permanently and forever
stayed, restrained, and enjoined from taking any action for the purpose of directly or
indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with
respect to any such Claim, Demand, or cause of action, including, but not limited to:

 (i) commencing, conducting, or continuing, in any manner, directly or
indirectly, any suit, action or other proceeding of any kind (including a judicial,
arbitration, administrative, or other proceeding) in any forum with respect to any such
Claim, Demand, or cause of action against any Settling Asbestos/Silica Insurance
Company, or against the property or interests in property of any Settling Asbestos/Silica
Insurance Company, with respect to any such Claim, Demand, or cause of action;

 (ii) enforcing, levying, attaching, collecting, or otherwise recovering, by any
manner or means, whether directly or indirectly, any judgment, award, decree, or order
against any Settling Asbestos/Silica Insurance Company, or against the property or
interests in property of any Settling Asbestos/Silica Insurance Company, with respect to
any such Claim, Demand, or cause of action;

 (iii) creating, perfecting, or otherwise enforcing, in any manner, directly or
indirectly, any Lien of any kind against any Settling Asbestos/Silica Insurance Company,

17

or the property or interests in property of any Settling Asbestos/Silica Insurance

Company, with respect to any such Claim, Demand, or cause of action;

    (iv)    except as otherwise specifically provided in the Plan, asserting or

accomplishing any setoff, right of subrogation, indemnity, contribution, reimbursement

or recoupment of any kind and in any manner, directly or indirectly, against any

obligation due any Settling Asbestos/Silica Insurance Company, or against the property

or interests in property of any Settling Asbestos/Silica Insurance Company, with respect

to any such Claim, Demand, or cause of action; and

    (v)    taking any act, in any manner, in any place whatsoever, that does not

conform to, or comply with, the provisions of the Plan Documents, relating to such

Claim, Demand, or cause of action.

    (b)    Reservations.  Notwithstanding anything to the contrary above, this

Asbestos/Silica Insurance Company Injunction shall not enjoin:

    (i)    the rights of Entities to the treatment accorded them under articles II and

IV of the Plan, as applicable, including the rights of Entities with Asbestos PI Trust

Claims or Silica PI Trust Claims to assert Asbestos PI Trust Claims against the Asbestos

PI Trust in accordance with the Asbestos TDP or Silica PI Trust Claims against the Silica

PI Trust in accordance with the Silica TDP;

    (ii)    the rights of Entities to assert any Claim, debt, obligation, or liability for

payment of Asbestos PI Trust Expenses against the Asbestos PI Trust or Silica PI Trust

Expenses against the Silica PI Trust; or

18

(iii)   the rights of the Reorganized Debtors and the Released Non-Debtor

Affiliates to prosecute any Asbestos/Silica Insurance Action subject, however, to the

terms of any Asbestos/Silica Insurance Settlement Agreement.

## F.   Limitation of Injunctions

41.   Notwithstanding any other provision of the Plan to the contrary, the releases set

forth in article 10.1 and the Discharge Injunction, Permanent Channeling Injunction, and the

Asbestos/Silica Insurance Company Injunction set forth in articles 10.2 and 10.3, respectively,

shall not serve to satisfy, discharge, release, or enjoin claims by any Entity against (a) the

Asbestos PI Trust or the Silica PI Trust for the payment of Asbestos PI Trust Claims and Silica

PI Trust Claims in accordance with the Asbestos TDP and the Silica TDP, respectively or (b) the

Asbestos PI Trust and the Silica PI Trust for the payment of Asbestos PI Trust Expenses and

Silica PI Trust Expenses, respectively.

## G.   Section 346 Injunction

42.   In accordance with section 346 of the Bankruptcy Code, for purposes of any state

or local law imposing a tax, the Debtors or the Reorganized Debtors will not realize income by

reason of any forgiveness or discharge of indebtedness resulting from the consummation of the

Plan. As a result, each state or local taxing authority is permanently enjoined and restrained,

after the Effective Date, from commencing, continuing, or taking any act to impose, collect, or

recover in any manner any tax against the Debtors or the Reorganized Debtors, arising by reason

of the forgiveness or the discharge of indebtedness under the Plan.

## H.   Continuation of Prior Stays and Injunctions

43.   All of the injunctions and/or automatic stays provided for in connection with the

Reorganization Cases, whether pursuant to section 105, section 362, or any other provision of the

Bankruptcy Code or other applicable law, in existence immediately prior to Confirmation of the

19

Plan shall remain in full force and effect until the Discharge Injunction, Permanent Channeling Injunction and the Asbestos/Silica Insurance Company Injunction become effective, and thereafter, if so provided by the Plan, this Order, or by their own terms. In addition, on and after the Confirmation Date, the Debtors may seek such further orders as they may deem necessary to preserve the status quo during the time between the Confirmation Date and the Effective Date.

44.     The Discharge Injunction, the Permanent Channeling Injunction, and the Asbestos/Silica Insurance Company Injunction shall become effective on the Effective Date and shall continue in effect at all times thereafter.

45.     Notwithstanding anything to the contrary contained in the Plan, all actions in the nature of those to be enjoined by the Discharge Injunction, the Permanent Channeling Injunction and the Asbestos/Silica Insurance Company Injunction shall be enjoined during the period between the Confirmation Date and the Effective Date.

I.      **Exoneration and Reliance**

46.     The Plan-Process Participants shall not be liable other than for willful misconduct or gross negligence to any holder of a Claim, Demand, or Interest, or to any other Entity, with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time through the Effective Date in connection with: (a) the management or operation of the Debtors and/or the Reorganized Debtors, or the discharge of their duties under the Bankruptcy Code, (b) the implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Documents, (c) any action taken in connection with either the enforcement of the rights of any Debtor against any Entities or the defense of Claims asserted against any such Debtor with regard to the Reorganization Cases, (d) any action taken in the negotiation, formulation, development, proposal, solicitation, disclosure, Confirmation, or implementation of the Plan or the Plan Documents filed in the Reorganization Cases, or (e) the

20

administration of the Plan or the assets or property to be distributed pursuant to the Plan. The

Plan-Process Participants may reasonably rely upon the opinions of their respective counsel,

accountants, and other experts or professionals, and such reliance, if reasonable, shall

conclusively establish the absence of willful misconduct; provided, however, that a

determination that such reliance is unreasonable shall not, by itself, constitute a determination of

willful misconduct. In any action, suit, or proceeding by any holder of a Claim or Interest or any

other Entity contesting any action by, or non-action of, a Plan-Process Participant, the reasonable

attorneys' fees and costs of the prevailing party shall be paid by the losing party, and as a

condition to going forward with such action, suit, or proceeding at the outset thereof, all parties

thereto shall be required to provide appropriate proof and assurances of their capacity to make

such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

## J.    Release of Intercompany Settlement Claims

47.    In accordance with the terms of article 10.6 of the Plan and the Halliburton

Intercompany Settlement Agreement, neither the Debtors, nor any representative of their Estates,

nor the Reorganized Debtors shall commence or prosecute any Intercompany Settlement Claim

against a Settlement Released Party. Pursuant to article 10.6 of the Plan, all Intercompany

Settlement Claims shall be deemed to have been unconditionally and absolutely released by the

Debtors (on behalf of themselves and their Estates) and the Reorganized Debtors, without need

for further action, on the Effective Date.

## K.    Treatment of Executory Contracts and Unexpired Leases

### Assumption and Rejection of Certain Unexpired Leases and Executory Contracts

48.    Except as otherwise provided in the Plan Documents, pursuant to article 6.1 of the

Plan, any unexpired lease or executory contract that has not been expressly assumed or rejected

by the Debtors with approval of this Court on or prior to the Confirmation Date shall, as of the

21

Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been assumed by the Debtors under sections 365(a) and 1123 of the Bankruptcy Code; provided, however, that this provision shall not apply to (a) Asbestos/Silica PI Trust Claimant Settlement Agreements, to the extent executory, or (b) agreements, to the extent executory, providing for indemnification of third parties for Asbestos PI Trust Claims and Silica PI Trust Claims. To the extent executory, all Asbestos/Silica PI Trust Claimant Settlement Agreements set forth on Exhibit 3 to the Plan and agreements providing for indemnification of third parties for Asbestos PI Trust Claims and Silica PI Trust Claims shall be deemed rejected by operation of law or entry of this Order unless expressly identified and assumed pursuant to other order of this Court. Upon rejection, each Claimant under an Asbestos/Silica PI Trust Settlement Agreement shall be deemed to have a claim for damages equal to the amount payable to such Claimant under the applicable agreement subject to the satisfaction of the preconditions to payment.

### Compensation and Benefits Program

49.    Unless otherwise agreed to by the affected parties, all of the Debtors' obligations under employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their present and former employees, officers, and directors, including, but not limited to, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, and life, accidental death, and dismemberment insurance plans, shall be deemed to be, and shall be treated as though they are, executory contracts that are deemed assumed under the Plan, and the Debtors' obligations under such plans, policies, and programs shall be deemed assumed pursuant to sections 365(a) and 1123 of the Bankruptcy Code, survive Confirmation of the Plan, remain unaffected thereby, and shall not be discharged in accordance with section 1141 of the Bankruptcy Code. Any defaults

22

existing as of the Effective Date under any of such plans, policies, and programs shall be cured
promptly after the Debtors become aware of them.

### Letters of Credit, Surety Bonds, Corporate Guaranties, Indemnity Agreements, and Post-Petition Contracts

50.     Unless otherwise agreed to by the affected parties, all of the Debtors' obligations
under letters of credit, surety bonds, corporate guaranties, and indemnity agreements (except for
agreements providing for indemnification for liabilities related to Asbestos PI Trust Claims and
Silica PI Trust Claims) existing immediately prior to the Effective Date (including guaranties or
contractual obligations related to letters of credit and/or surety bonds issued on behalf of the
Debtors or on behalf of subsidiaries of the Debtors), and post-petition contracts entered by the
Debtors after the Petition Date, shall be deemed to be, and shall be treated as though they are,
executory contracts that are assumed under the Plan. The Debtors' obligations under such letters
of credit and surety bonds, corporate guaranties, indemnity agreements, and post-petition
contracts shall be deemed assumed pursuant to sections 365(a) and 1123 of the Bankruptcy
Code, survive entry of this Order, and occurrence of the Effective Date, remain unaffected
thereby (except as provided in this paragraph and article 6.3 of the Plan), and not be discharged
in accordance with section 1141 of the Bankruptcy Code. The Reorganized Debtors shall have
the right to cure any defaults existing as of the Effective Date under any such letters of credit and
surety bonds (including guaranties or contractual obligations related to letters of credit and/or
surety bonds issued on behalf of the Debtors or on behalf of subsidiaries of the Debtors),
corporate guaranties, indemnity agreements (except to the extent such indemnity agreements
provide indemnification for liabilities related to Asbestos PI Trust Claims or Silica PI Trust
Claims), or post-petition contracts in the ordinary course of the Debtors' business promptly after
any such default becomes known to the Debtors or the Reorganized Debtors and, if disputed,

23

established pursuant to applicable law. All letters of credit, surety bonds, corporate guaranties, indemnity agreements, and post-petition contracts of the Debtors shall be deemed reinstated on the Effective Date notwithstanding any default therein by the Debtors, any delay in the cure thereof by the Debtors, or the filing or existence of the Reorganization Cases, or any action taken in connection therewith, and shall be binding upon, and enforceable against all parties thereto, subject to any rights and defenses existing thereunder; provided, however, that such reinstatement shall not apply to guarantees and indemnity agreements related to Claims to be addressed by the Asbestos PI Trust or the Silica PI Trust.

## L.    Claims Bar Dates

### Professionals and Administrative Claims

51. Unless otherwise ordered by the

Bankruptcy Court, the bar date for filing and serving requests for allowance of Administrative Claims (including requests for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, or 503(b) of the Bankruptcy Code and requests based upon an asserted substantial contribution in the Reorganization Cases) shall be the forty-fifth (45th) day after the Effective Date (the "Administrative Claims Bar Date"). Other than Professional Persons required to do so pursuant to the terms of their retention, Claimants holding Administrative Claims that have arisen in the ordinary course of Debtors' business shall not be required to submit a Request for Payment of Administrative Expense, unless otherwise ordered by this Court. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002 and 3020(c) will set forth such date and constitute notice of the Administrative Claims Bar Date. The Reorganized Debtors and any other party in interest will have thirty (30) days after the Administrative Claims Bar Date to review and object to such Claims before a hearing for determination of such Administrative

24

Claims is held by this Court, provided that such thirty (30) day period of review may be extended
by this Court upon the request of the Reorganized Debtors.

**Resolution of Disputed Claims**

52. On the Effective Date, the parties who accepted the Plan agree that the Reorganized
Debtors shall have the sole and exclusive authority to file objections to Claims, other than
Asbestos Unsecured PI Trust Claims and Silica Unsecured PI Trust Claims, in accordance with
article 12.1 of the Plan. Non-accepting creditors may file objections to claims.  11 U.S.C. § 502.

## M.   Retention of Jurisdiction

53. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court shall
retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy
Code, (b) arising in or related to the Reorganization Cases or the Plan for which the reference has
not been withdrawn to the District Court, or (c) that relates to any of the matters set forth in
articles 13.1, 13.2, and 13.3 of the Plan. Without limiting the preceding, this Court shall retain
jurisdiction to correct any defect, cure any omission, reconcile any inconsistency, or make any
other necessary changes or modifications in or to the Asbestos TDP and the Silica TDP,
including procedures to be developed and implemented by the Trustees for the processing of, and
where applicable, the liquidation of, Indirect Asbestos PI Trust Claims and Indirect Silica PI
Trust Claims, in accordance with the procedures set forth in the Asbestos PI Trust Agreement
and the Silica PI Trust Agreement. Notwithstanding the foregoing, nothing in this Order or
article 13.3 of the Plan shall be construed to give this Court exclusive jurisdiction over any
Asbestos/Silica Insurance Action.

54. The Asbestos PI Trust and the Silica PI Trust shall be subject to the continuing
jurisdiction of this Court in accordance with the requirements of regulations issued pursuant to
section 468B of the IRC.

25

55.     Except as may have been agreed to between the Asbestos PI Trust or the Silica PI Trust, as the case may be, and the holder of an Asbestos Unsecured PI Trust Claim or Silica Unsecured PI Trust Claim, pursuant to the Plan, the parties have agreed that the District Court shall have exclusive jurisdiction to conduct a trial to liquidate the Asbestos PI Trust Claim or the Silica PI Trust Claim of any holder of an Asbestos Unsecured PI Trust Claim or Silica Unsecured PI Trust Claim who elects, pursuant to the Asbestos TDP or the Silica TDP, to have the amount of such Claim determined through a jury trial.

**N.      Miscellaneous**

56.     On the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively (a) the provisions of the Plan, (b) the creation of the Asbestos PI Trust, and (c) the creation of the Silica PI Trust.

57.     All fees payable pursuant to 28 U.S.C. § 1930, as determined herein, shall be paid by the Debtors on or before the Effective Date.

58.     The Debtors, the Reorganized Debtors, the Legal Representative, the Trustees of the Asbestos PI Trust and the Silica PI Trust, and any beneficiary of the Permanent Channeling Injunction or the Asbestos/Silica Insurance Company Injunction, if, and to the extent necessary, may seek such orders, judgments, injunctions, and rulings that any of them deems necessary to carry out the intentions and purposes of, and to give full effect to the provisions of, the Plan or any Plan Document.

59.     The failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on the validity, binding effect, and/or enforceability of such provision and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan.

60.     Unless this Order is stayed pending appeal, its reversal or modification shall not
affect the validity of the Plan, the Plan Documents, or any other agreement, document,
instrument, or action authorized by this Order or under the Plan as to the Debtors, the
Reorganized Debtors, the Asbestos PI Trust, the Silica PI Trust, or any other Entity acting in
good faith, whether or not that Entity knows of the appeal.

61.     The performance of all obligations due and owing on the Effective Date, pursuant
to the terms of the Plan, shall constitute substantial consummation of the Plan within the
meaning of section 1101(2) of the Bankruptcy Code.

62.     All funds held in escrow pursuant to this Court's (i) Order Authorizing Debtors
and Debtors in Possession to Pay Prepetition Claims of Creditors Incurred in the Ordinary
Course of Business entered on December 18, 2003 (Docket No. 114) and (ii) Order Authorizing
(A) The Debtors to Pay Prepetition Wages, Salaries, Other Compensation, and Employee
Benefits, (B) The Debtors to Reimburse Prepetition Employee Business Expenses, and (C)
Applicable Banks and Other Financial Institutions to Receive, Process, Honor, and Pay All
Checks Presented for Payment Made by the Debtors Relating to the Foregoing entered on
December 18, 2003 (Docket No. 115), shall be released on the Effective Date.

63.     In the event of any inconsistency between the Plan and any other agreement,
instrument, or document intended to implement the provisions of the Plan, the provisions of the
Plan shall govern unless otherwise expressly provided for in such agreements, instruments, or
documents. In the event of any inconsistency between and/or among the Plan and this Order, the
provisions of this Order shall govern, unless another order expressly provides that it will have
precedence over this Order. This Order shall supersede any orders of this Court issued prior to
the date hereof that may be inconsistent herewith.

27

## O.   Notice of Entry of Order and Administrative Claims Bar Date

64.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors hereby are

directed to serve a notice of the (a) the entry of this Order and (b) the bar date for filing and

serving applications for allowance of Administrative Claims, substantially in the form of Exhibit

A attached hereto and incorporated by reference herein (the "Confirmation Order Notice"), on all

holders of Claims and Professional Persons, in the same manner as service of the notice of the

Confirmation Hearing, and on all persons or entities on the Debtors' Official Service List and

2002 List Service List as of the date hereof, not later than thirty (30) days after the Confirmation

Date; provided, however, that the Debtors shall be obligated to serve the Confirmation Order

Notice only on the record holders of such Claims or Interests, or on their counsel of record.

28

65.    The Debtors hereby are directed to publish the Confirmation Order Notice once in

USA Today and Mealey's Asbestos Bankruptcy Litigation Report, not later than thirty (30) days

after the Confirmation Date.

ORDERED in Pittsburgh, Pennsylvania on _____ July 16 ___, 2004

_Judith K. Fitzgerald_

Judith K. Fitzgerald
Chief United States Bankruptcy Judge

        THIS ORDER IS HEREBY DECLARED TO BE IN
        RECORDABLE FORM AND SHALL BE ACCEPTED BY ANY
        RECORDING OFFICER FOR FILING AND RECORDING
        PURPOSES WITHOUT FURTHER OR ADDITIONAL
        ORDERS, CERTIFICATIONS, OR OTHER SUPPORTING
        DOCUMENTS.

Copies to:

        Jeffrey N. Rich
        Michael G. Zanic
        Counsel to the Debtors and Debtors-in-Possession

FILED

JUL 1 6 2004

JUDITH K. FITZGERALD
BANKRUPTCY JUDGE

29