# Tab (l)

**Exhibit A to**
**Modified Third Amended**
**Plan of Reorganization**

# PITTSBURGH CORNING CORPORATION

## ASBESTOS PI TRUST AGREEMENT

ASBESTOS PI TRUST AGREEMENT

## TABLE OF CONTENTS

SECTION 1—Agreement of Trust                                                          2

   1.1   Creation and Name                                                        2
   1.2   Purpose                                                                  2
   1.3   Transfer of Assets                                                       3
   1.4   Acceptance of Assets and Assumption of Liabilities                       3

SECTION 2—Powers and Trust Administration                                             4

   2.1   Powers                                                                   4
   2.2   General Administration                                                   7
   2.3   Claims Administration                                                   11

SECTION 3—Accounts, Investments, and Payments                                        11

   3.1   Accounts                                                                11
   3.2   Investments                                                             11
   3.3   Source of Payments                                                      13

SECTION 4—Trustees                                                                   13

   4.1   Number                                                                  13
   4.2   Term of Service                                                         13
   4.3   Appointment of Successor Trustees                                       14
   4.4   Liability of Trustees, Members of the TAC and the Future Claimants'
        Representative                                                       15
   4.5   Compensation and Expenses of Trustees                                   15
   4.6   Indemnification of Trustees and Additional Indemnitees                  15
   4.7   Trustees' Lien                                                          16
   4.8   Trustees' Employment of Experts                                         16
   4.9   Trustees' Independence                                                  16
   4.10 Bond                                                                    17

SECTION 5—Trust Advisory Committee                                                   17

   5.1   Members                                                                 17
   5.2   Duties                                                                  17
   5.3   Term of Office                                                          17
   5.4   Appointment of Successor                                                17
   5.5   TAC's Employment of Professionals                                       18
   5.6   Compensation and Expenses of TAC                                        19

5.7   Procedures for Consultation with and Obtaining the Consent of the TAC         19
    (a)    Consultation Process         19
    (b)    Consent Process         20

SECTION 6—The Future Claimants' Representative         20

6.1   Duties         20
6.2   Term of Office         21
6.3   Appointment of Successor         21
6.4   Future Claimants' Representative's Employment of Professionals         21
6.5   Compensation and Expenses of the Future Claimants' Representative         22

6.6   Procedures for Consultation with and Obtaining the Consent of the Future
    Claimants' Representative         23
    (a)    Consultation Process         23
    (b)    Consent Process         23

SECTION 7—General Provisions         24

7.1   Irrevocability         24
7.2   Termination         24
7.3   Amendments         25
7.4   Severability         26
7.5   Notices         26
7.6   Successors and Assigns         29
7.7   Entire Agreement; No Waiver         29
7.8   Headings         29
7.9   Governing Law         29
7.10  Settlors' Representations and Cooperation         29
7.11  Dispute Resolution         29
7.12  Enforcement and Administration         30
7.13  Effectiveness         30
7.14  Counterpart Signatures         30

# PITTSBURGH CORNING CORPORATION

## ASBESTOS PI TRUST AGREEMENT

This Pittsburgh Corning Corporation Asbestos PI Trust Agreement ("Asbestos PI Trust Agreement"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into by Pittsburgh Corning Corporation ("PCC," the "Settlor," or the "Debtor"), a Pennsylvania corporation, the Debtor and debtor-in-possession in Case No. 00-22876 JKF in the United States Bankruptcy Court for the Western District of Pennsylvania, and its Shareholders, PPG Industries, Inc. ("PPG") and Corning Incorporated ("Corning"), as Settlors; the Future Claimants' Representative; the Official Committee of Asbestos Creditors ("Committee"); the Trustees ("Trustees") and the members of the Asbestos PI Trust Advisory Committee ("TAC"), who are further identified on the signature pages hereof and appointed at Confirmation pursuant to the Third Amended Pittsburgh Corning Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, dated as of August 8, 2008 ("Plan"), as such Plan may be amended, modified or supplemented from time to time. All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or defined in the Plan, but defined in the Bankruptcy Code or Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Rules, and such definitions are incorporated herein by reference.

WHEREAS, at the time of the entry of the order for relief in the Chapter 11 Case, PCC and other Asbestos Protected Parties were named as defendants in actions involving Asbestos PI Trust Claims that are subject to the Asbestos Permanent Channeling Injunction, as those terms are defined in the Plan (hereinafter "Channeled Asbestos PI Trust Claims"); and

WHEREAS, PCC has reorganized under the provisions of Chapter 11 of the Bankruptcy Code in a case pending in the United States Bankruptcy Court for the Western District of Pennsylvania, known as *In re Pittsburgh Corning Corporation, Debtor*, Case No. 00-22876 JKF; and

WHEREAS, the Plan has been confirmed by the Bankruptcy Court; and

WHEREAS, the Plan provides, *inter alia*, for the creation of the Pittsburgh Corning Corporation Asbestos PI Trust ("Asbestos PI Trust"); and

WHEREAS, pursuant to the Plan, PCC will make certain contributions to the Asbestos PI Trust; and

WHEREAS, pursuant to the Plan, PPG, the PPG Participating Insurers, and Corning will make certain contributions to the Asbestos PI Trust in accordance with the PPG Trust Funding Agreement and the Corning Trust Funding Agreement, respectively; and

WHEREAS, pursuant to the Plan, the Asbestos PI Trust Assets (defined below) will be used to resolve Channeled Asbestos PI Trust Claims; and

WHEREAS, it is the intent of PCC, PPG, Corning, the Trustees, the Committee, the TAC, and the Future Claimants' Representative that the Asbestos PI Trust be administered, maintained, and operated at all times through mechanisms that provide reasonable assurance that the Asbestos PI Trust will resolve all Channeled Asbestos PI Trust Claims pursuant to the Pittsburgh Corning Corporation Asbestos PI Trust Distribution Procedures (the "TDP") that are attached as Exhibit B to the Plan in substantially the same manner, and in strict compliance with the terms of this Asbestos PI Trust Agreement; and

WHEREAS, pursuant to the Plan, the Asbestos PI Trust is intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code (the "IRC"); and

WHEREAS, the Bankruptcy Court has determined that the Asbestos PI Trust and the Plan satisfy all the prerequisites for issuing an injunction pursuant to Section 524(g) of the Bankruptcy Code, and such injunction has been entered in connection with the Confirmation Order;

NOW, THEREFORE, it is hereby agreed as follows:

## SECTION 1

## AGREEMENT OF TRUST

**1.1    Creation and Name.**  PCC, PPG and Corning as Settlors hereby create a trust known as the "Pittsburgh Corning Corporation Asbestos Personal Injury Settlement Trust," which is the Asbestos PI Trust provided for and referred to in the Plan. The Trustees of the Asbestos PI Trust may transact the business and affairs of the Asbestos PI Trust in the name of the Asbestos PI Trust.

**1.2    Purpose.**  The purpose of the Asbestos PI Trust is to assume all liabilities for and with respect to all Channeled Asbestos PI Trust Claims, and to use the assets contributed by PCC, PPG, the PPG Participating Insurers, the PCC Settled Insurers and Corning to the Asbestos PI Trust pursuant to the Plan and any other assets that may be contributed to or acquired by the Asbestos PI Trust from time to time and the proceeds and income from such assets (collectively, the "Asbestos PI Trust Assets") to resolve all Channeled Asbestos PI Trust Claims in accordance with this Asbestos PI Trust Agreement and the TDP in such a way that such holders of such claims are treated fairly, equitably and reasonably in light of the limited assets available to satisfy such claims, and to otherwise comply in all respects with the requirements of a trust set forth in Section 524(g)(2)(B) of the Bankruptcy Code. The Asbestos PI Trust Assets, as they relate to contributions from PPG and the PPG Participating Insurers, and from Corning, are

limited to the contributions set forth in the PPG Trust Funding Agreement and the Corning Trust Funding Agreement, respectively.

**1.3    Transfer of Assets**. The assets referenced in Section 9.1.3 of the Plan will be transferred and assigned to the Asbestos PI Trust to resolve all Channeled Asbestos PI Trust Claims. All assets transferred to the Asbestos PI Trust shall be free and clear of any liens or other claims by PCC, PPG, the PPG Participating Insurers, the PCC Settled Insurers, Corning, Reorganized PCC, any creditor, or other entity. PCC, PPG, the PPG Participating Insurers, Corning, Reorganized PCC, and any other transferors shall also execute and deliver such documents to the Asbestos PI Trust as the Trustees reasonably request to transfer and assign the Asbestos PI Trust Assets to the Asbestos PI Trust.

**1.4    Acceptance of Assets and Assumption of Liabilities**

(a)    In furtherance of the purposes of the Asbestos PI Trust, the Trustees, on behalf of the Asbestos PI Trust, hereby expressly accept the transfer and assignment to the Asbestos PI Trust of the Asbestos PI Trust Assets in the time and manner contemplated in the Plan. The Asbestos PI Trust shall receive the benefits of and shall be bound by the PPG Trust Funding Agreement and the Corning Trust Funding Agreement.

(b)    In furtherance of the purposes of the Asbestos PI Trust, the Trustees, on behalf of the Asbestos PI Trust, expressly assume all liability for all Channeled Asbestos PI Trust Claims. Subject to and as otherwise provided in the Plan and exhibits thereto, the Asbestos PI Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such claims that PCC, any PPG Entity and any Corning Entity has or would have had under applicable law provided, however, that the Asbestos PI Trust shall not have any cross-claims, rights of recovery, reimbursement, defense, indemnity, offset, recoupment, contribution, subrogation and similar rights against: (i) the PPG Entities; (ii) the PPG-Affiliated Parties; (iii) the PPG Participating Insurer Entities in their capacity as such and/or as issuers of policies issued to or covering the Debtor; (iv) the PPG Non-Participating Insurers in their capacity as insurers of the PPG Policyholder Companies and as issuers of the PPG Non-Participating Insurance Policies; (v) the PCC Settled Insurer Entities; (vii)  the Corning Entities; (vii) the Corning-Affiliated Parties; (viii) the Corning Insurers in their capacity as insurers of the Corning Policyholder Companies and as issuers of the Corning Insurance Policies; and (ix) Reorganized PCC and its insurers; nor shall the Asbestos PI Trust have any right to pursue defense, indemnity, reimbursement, and/or payment against the Corning Insurance Policies. Regardless of the foregoing, however, a claimant must meet otherwise applicable federal, state and foreign statutes of limitations and repose, except as otherwise provided in Section 5.1(a)(2) of the TDP.

(c)    No provision herein or in the TDP shall be construed to mandate distributions on any claims or other actions that would contravene the Asbestos PI Trust's compliance with the requirements of a qualified settlement fund within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.

(d)    The Asbestos PI Trust will indemnify PCC, Reorganized PCC, the PCC-Affiliated Parties, the PPG Entities, the PPG-Affiliated Parties, the PPG Participating Insurer Entities in their capacity as such and/or as issuers of policies issued to or covering the Debtor, the PCC Settled Insurer Entities, the Corning Entities and the Corning-Affiliated Parties in their capacity as Asbestos Protected Parties for any expenses, costs, and fees (including attorneys' fees and costs, but excluding any such judgments, awards, settlements, expenses, costs, and fees incurred prior to the Effective Date), judgments, settlements, or other liabilities arising from or incurred in connection with any action based on, arising out of, or attributable to Channeled Asbestos PI Trust Claims, including, but not limited to, indemnification or contribution for such claims prosecuted against Reorganized PCC, the PCC-Affiliated Parties, the PPG Entities, the PPG-Affiliated Parties, the PPG Participating Insurer Entities in their capacity as such and/or as issuers of policies issued to or covering the Debtor, the Corning Entities and the Corning-Affiliated Parties.

(e)    Nothing in this Asbestos PI Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Section 524(g) injunction issued in connection with the Plan or the Asbestos PI Trust's assumption of all liability for Channeled Asbestos PI Trust Claims, subject to the provisions of Section 1.4(b) above.

(f)    The sole and exclusive remedy on account of Channeled Asbestos PI Trust Claims shall be against the Asbestos PI Trust, and no such Claims or Demands may be asserted against the Debtor, Reorganized PCC, or any Asbestos Protected Party, directly or indirectly, and should a legal action based on or arising from any Channeled Asbestos PI Trust Claim be commenced against any Asbestos Protected Party, the Asbestos PI Trust shall, upon reasonable notice, execute appropriate legal documents stipulating to the substitution of the Asbestos PI Trust as a party defendant, or should such substitution not be permitted under applicable laws or court rules, the joinder of the Asbestos PI Trust as a party defendant in any federal or state action as permitted by applicable law.

(g)    The Asbestos PI Trust agrees to release any claims, rights and/or demands it has or may have against the PPG Insurance Policies, the PCC Settled Insurance Policies and the Corning Insurance Policies.


## SECTION 2

## POWERS AND TRUST ADMINISTRATION

### 2.1    Powers.

(a)    The Trustees are and shall act as the fiduciaries to the Asbestos PI Trust in accordance with the provisions of this Asbestos PI Trust Agreement and the Plan and shall have the power, on behalf of the Asbestos PI Trust, to exercise all rights and fulfill all obligations of the Asbestos PI Trust under the Plan. The Trustees shall, at all times,

-4-

administer the Asbestos PI Trust and the Asbestos PI Trust Assets in accordance with the purposes set forth in Section 1.2 above. Subject to the limitations set forth in this Asbestos PI Trust Agreement, the Trustees shall have the power to take any and all actions that, in the judgment of the Trustees, are necessary or proper to fulfill the purposes of the Asbestos PI Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto, and any trust power now or hereafter permitted under the laws of the Commonwealth of Pennsylvania.

(b)    Except as required by applicable law or otherwise specified herein, the Trustees need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)    In addition to the powers set forth in Section 7.3 below, and without limiting the generality of Section 2.1(a) above, and except as limited below, the Trustees shall have the power to:

(i)    receive and hold the Asbestos PI Trust Assets, vote the Reorganized PCC common stock, and exercise all rights with respect to, and sell, any securities issued by Reorganized PCC, PPG, Pittsburgh Corning Europe N.V. ("PCE"), or Corning that are included in the Asbestos PI Trust Assets, subject to any restrictions set forth in the Restated Certificate of Reorganized PCC or in the Corning Registration Rights Agreement;

(ii)    invest the monies held from time to time by the Asbestos PI Trust;

(iii)    sell, transfer, or exchange any or all of the Asbestos PI Trust Assets at such prices and upon such terms as the Trustees may consider proper, consistent with the other terms of this Asbestos PI Trust Agreement and the Corning Registration Rights Agreement;

(iv)    enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the Asbestos PI Trust to operate;

(v)    pay liabilities and expenses of the Asbestos PI Trust, including, but not limited to, Asbestos PI Trust expenses;

(vi)    establish such reserves and accounts with the Asbestos PI Trust Assets, as deemed by the Trustees to be useful in carrying out the purposes of the Asbestos PI Trust;

(vii)    sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;

(viii)    establish, supervise and administer the Asbestos PI Trust in accordance with this Asbestos PI Trust Agreement and the TDP and the terms thereof;

(ix)    appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing and forecasting, and other consultants and agents as the business of the Asbestos PI Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustees permit and as the Trustees, in their discretion, deem advisable or necessary in order to carry out the terms of the Asbestos PI Trust;

(x)    pay employees, legal, financial, accounting, investment, auditing, and forecasting, and other consultants, advisors, and agents, including those engaged by the Asbestos PI Trust in connection with its alternative dispute resolution activities, reasonable compensation;

(xi)    compensate the Trustees, the TAC members, and the Future Claimants' Representative as provided below, and their employees, legal, financial, accounting, investment and other advisors, consultants, independent contractors, and agents, and reimburse the Trustees, the TAC members and the Future Claimants' Representative all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xii)    execute and deliver such instruments as the Trustees consider proper in administering the Asbestos PI Trust;

(xiii)    enter into such other arrangements with third parties as are deemed by the Trustees to be useful in carrying out the purposes of the Asbestos PI Trust, provided such arrangements do not conflict with any other provision of this Asbestos PI Trust Agreement;

(xiv)    in accordance with Section 4.6 below, defend, indemnify and hold harmless (and purchase insurance indemnifying) (A) the Trustees, the TAC, and the Future Claimants' Representative and (B) the officers and employees of the Asbestos PI Trust, and any agents, advisors and consultants of the Asbestos PI Trust, the TAC or the Future Claimants' Representative (the "Additional Indemnitees"), to the fullest extent that a corporation or trust organized under the law of the Asbestos PI Trust's situs is from time to time entitled to indemnify and/or insure its directors, trustees, officers, employees, agents, advisors and representatives;

(xv)    in accordance with Section 1.4(d) above and Articles 11.7.2 and 11.8 of the Plan, indemnify Reorganized PCC, the PCC-Affiliated Parties, the PPG Entities, the PPG-Affiliated Parties, the PPG Participating Insurer Entities in their capacity as such and/or as issuers of policies issued to or covering the Debtor, the PCC Settled Insurer Entities, the Corning Entities and the Corning-Affiliated Parties in their capacity as Asbestos Protected Parties by reason of any present or future Channeled Asbestos PI Trust Claims against all expenses, costs, fees (including attorneys' fees), judgments, awards, settlements, and other liabilities incurred in connection

therewith, and defend and indemnify the Corning Entities, the PPG Entities, the PPG Participating Insurer Entities and the PCC Settled Insurer Entities (to the extent provided for as to the Asbestos PI Trust in any PCC Insurance Settlement Agreement) for Plan Participation Claims;

(xvi)    delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Asbestos PI Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Section 4.4 below;

(xvii)    consult with Reorganized PCC, the TAC and the Future Claimants' Representative at such times and with respect to such issues relating to the conduct of the Asbestos PI Trust as the Trustees consider desirable; and

(xviii)    make, pursue (by litigation or otherwise), collect, compromise or settle, in the name of the Asbestos PI Trust or in the name of Reorganized PCC, PPG or Corning, any claim, right, action, or cause of action included in the Asbestos PI Trust Assets before any court of competent jurisdiction; provided that settlement of actions before the Bankruptcy Court require the approval of the Bankruptcy Court after notice to Reorganized PCC, PPG or Corning as the case may be.

(d)    The Trustees shall not have the power to cause the Asbestos PI Trust to guarantee any debt of other persons.

(e)    The Trustees shall give the TAC, the Future Claimants' Representative, and Reorganized PCC prompt notice of any act performed or taken pursuant to Sections 2.1(c)(i), (iii), (vii), or (xv) above, and any act proposed to be performed or taken pursuant to Section 2.2(f) below.

(f)    The Trustees shall have the power to seek or sue for insurance coverage proceeds only in connection with the rights transferred to the Asbestos PI Trust pursuant to Section 9.1.3 of the Plan.

(g)    Notwithstanding anything to the contrary herein or in the Plan or the attachments, exhibits or schedules thereto, the Trustees shall not have the power to share information, whether oral, electronic or written, regarding the defense of asbestos personal injury claims against the PPG Entities or the Corning Entities with the TAC or the Future Claimants' Representative.

## 2.2    General Administration.

(a)    The Trustees shall act in accordance with this Asbestos PI Trust Agreement, and the Trustees shall adopt and act in accordance with the Asbestos PI Trust Bylaws. To the extent not inconsistent with the terms of this Asbestos PI Trust Agreement, the Asbestos PI Trust Bylaws shall govern the affairs of the Asbestos PI Trust. In the event

of an inconsistency between the Asbestos PI Trust Bylaws and this Asbestos PI Trust Agreement, the Asbestos PI Trust Agreement shall govern.

(b)   The Trustees shall (i) timely file such income tax and other returns and statements and shall timely pay all taxes required to be paid, (ii) comply with all withholding obligations, as required under the applicable provisions of the IRC and of any state law and the regulations promulgated thereunder, (iii) meet without limitation all requirements necessary to qualify and maintain qualification of the Asbestos PI Trust as a qualified settlement fund within the meaning of Section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under Section 468B of the IRC, and (iv) take no action that could cause the Asbestos PI Trust to fail to qualify as a qualified settlement fund within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the IRC.

(c)   The Trustees shall timely account to the Bankruptcy Court as follows:

(i)   The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report containing *inter alia* financial statements of the Asbestos PI Trust (including, without limitation, a balance sheet of the Asbestos PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles. The Trustees shall provide a copy of such report to the TAC, the Future Claimants' Representative, and Reorganized PCC when such reports are filed with the Bankruptcy Court.

(ii)   Simultaneously with delivery of each set of financial statements referred to in Article 2.2(c)(i) above, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Trustees shall provide a copy of such report to the TAC, the Future Claimants' Representatives, and Reorganized PCC when such report is filed.

(iii)   All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for the Western District of Pennsylvania.

(d)   The Trustees shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year and the succeeding four fiscal years. The budget and cash flow projections shall include a determination of the Maximum Annual Payment pursuant to Section 2.4

of the TDP, and the Asbestos Personal Injury Claims Payment Ratio pursuant to Section 2.5 of the TDP. The Trustees shall provide a copy of the budget and cash flow projections to the TAC and the Future Claimants' Representative.

(e)    The Trustees shall consult with the TAC and the Future Claimants' Representative (i) on the general implementation and administration of the Asbestos PI Trust; (ii) on the general implementation and administration of the TDP; and (iii) on such other matters as may be required under this Asbestos PI Trust Agreement and the TDP.

(f)    The Trustees shall be required to obtain the consent of the TAC and the Future Claimants' Representative pursuant to the Consent Process set forth in Section 5.7(b) and 6.6(b) below, in addition to any other instances elsewhere enumerated, in order:

(i)    to change the Claims Payment Ratio described in Section 2.5 of the TDP in the event that the requirements for such a change as set forth in said provision have been met;

(ii)    to change the Disease Levels, Medical/Exposure Criteria set forth in Section 5.3(a)(3) of the TDP, and/or the Scheduled, Average and/or Maximum Values set forth in Section 5.3(c) of the TDP;

(iii)    to change the Payment Percentage described in Section 4.2 of the TDP;

(iv)    to establish and/or to change the proof of claim forms and other claims materials to be provided holders of Channeled Asbestos PI Trust Claims under Section 6.1 of the TDP, provided that the proof of claim form must be consistent with the requirements of the Plan, the TDP (and specifically Section 6.2 of the TDP), the PPG Trust Funding Agreement, and the Corning Trust Funding Agreement;

(v)    to require that claimants provide additional kinds of medical or exposure evidence pursuant to Section 5.7 of the TDP;

(vi)    to change the form of release to be provided pursuant to Section 7.8 of the TDP, provided that the changed release must be consistent with the requirements of the Plan, the PPG Trust Funding Agreement, and the Corning Trust Funding Agreement, and provided further that the Trustees shall give PPG and Corning prior notice of the proposed changes;

(vii)    to terminate the Asbestos PI Trust pursuant to Section 7.2 below;

(viii)    to settle rights assigned to the Asbestos PI Trust by PCC;

(ix)    to change the compensation of the members of the TAC, the Future Claimants' Representative or Trustees, other than to reflect cost-of-living increases or changes approved by the Bankruptcy Court as otherwise provided herein;

(x)    to take structural or other actions to minimize any tax on the Asbestos PI Trust Assets;

(xi)    to adopt the Asbestos PI Trust Bylaws in accordance with Section 2.2(a) above or to amend the Asbestos PI Trust Bylaws in accordance with the terms thereof;

(xii)    to amend any provision of the Asbestos PI Trust Agreement or the TDP in accordance with the terms thereof, provided that any such amendments must be consistent with the requirements of the Plan, the PPG Trust Funding Agreement, and the Corning Trust Funding Agreement;

(xiii)    to vote the shares of Reorganized PCC Common Stock and the stock of PPG and Corning held by the Asbestos PI Trust for purposes of electing members of the Board of Directors of the Reorganized PCC, PPG and Corning and such other matters as may be submitted to shareholders;

(xiv)    to acquire an interest in, or to merge any asbestos claims resolution organization formed by the Asbestos PI Trust with, another asbestos claims resolution organization that is not specifically created by this Asbestos PI Trust Agreement or the TDP, or to contract with another asbestos claims resolution organization or other entity that is not specifically created by this Asbestos PI Trust Agreement or the TDP, or permit any other party to join in any asbestos claims resolution organization that is formed by the Asbestos PI Trust pursuant to the Asbestos PI Trust Agreement or the TDP; provided that such merger, acquisition, contract or joinder shall not (a) subject Reorganized PCC or the other Asbestos Protected Parties or any successors in interest thereto, to any risk of having any Channeled Asbestos PI Trust Claim asserted against it or them, or (b) otherwise jeopardize the validity or enforceability of the Section 524(g) injunction; and provided further that the terms of such merger or contract will require the surviving organization or other asbestos claims resolution organization to make decisions about the allowability and value of claims in accordance with Section 2.1 of the TDP which requires that such decisions be based on the provisions of the TDP;

(xv)    to establish a separate valuation matrix for any Foreign Claims at such time as the Asbestos PI Trust has sufficient historical settlement, verdict and other valuation data for claims from a particular foreign jurisdiction pursuant to Section 5.3(b) of the TDP; or

(xvi)    to develop methods for auditing the reliability of medical evidence, including additional reading of X-rays, CT scans and verification of pulmonary function tests, as well as the reliability of evidence of exposure to asbestos, including exposure to asbestos-containing products for which the Asbestos PI Trust has liability, pursuant to Section 5.8 of the TDP.

(g) The Trustees shall meet with the TAC and the Future Claimants' Representative no less often than quarterly. The Trustees shall meet in the interim with the TAC and the Future Claimants' Representative when so requested by either.

(h) The Trustees, upon notice from either the TAC or the Future Claimants' Representative, if practicable in view of pending business, shall at their next meeting with the TAC or the Future Claimants' Representative consider issues submitted by the TAC or the Future Claimants' Representative.

(i) Periodically, but not less often than once a year, the Trustees shall make available to claimants and other interested parties the number of claims by Disease Levels that have been resolved both by individual review and by arbitration, as well as by trial, indicating the amounts of the awards and the averages of the awards by jurisdiction pursuant to Section 7.10 of the TDP.

**2.3   Claims Administration.**

The Trustees shall promptly proceed to implement the TDP.

## SECTION 3

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

**3.1   Accounts.**   The Trustees may, from time to time, create such accounts and reserves within the Asbestos PI Trust estate as they may deem necessary, prudent, or useful in order to provide for the payment, or to make provision for future payment, of expenses and payment of Channeled Asbestos PI Trust Claims, and may, with respect to any such account or reserve, restrict the use of monies therein. The Trustees shall include a reasonably detailed description of any account or reserve created in accordance with this Section 3.1 in the annual reports described in Section 2.2(c)(i) hereof, which description shall include with respect to any such account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account, and the payments from each such account.

**3.2   Investments.**   Investment of monies held in the Asbestos PI Trust shall be administered in a manner consistent with the standards set forth in the Uniform Prudent Investor Act, subject to the following limitations and provisions:

(a) The Asbestos PI Trust may invest in well diversified equity portfolios whose benchmark is a broad equity market index such as, but not limited to, the S&P 500 Index, Russell 1000 Index, S&P ADR Index or MSCI EAFE Index. The Asbestos PI Trust shall not acquire, directly or indirectly, equity in any entity (other than Reorganized PCC, PPG, PCE, or Corning, or any successor to Reorganized PCC, PPG, PCE or Corning) or business enterprise if, immediately following such acquisition, the Asbestos PI Trust would hold more than 5% of the equity in such entity or business enterprise. The Asbestos PI Trust shall not hold, directly or indirectly, more than 10% of the equity in

- 11 -

any entity (other than Reorganized PCC, any successor to Reorganized PCC, PCE, PPG or Corning) or business enterprise.

(b) The Asbestos PI Trust shall not acquire or hold any long-term debt securities unless (i) such securities are included in the Asbestos PI Trust Assets under the Plan, (ii) such securities are rated "Baa" or higher by Moody's, "BBB" or higher by Standard & Poor's ("S&P's"), or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency, or (iii) have been issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof. This restriction does not apply to any pooled investment vehicles where pooled assets receive an investment grade rating (i.e., "BBB" rating or above) by a nationally recognized rating agency.

(c) Notwithstanding (b) above, the Asbestos PI Trust may acquire or hold additional non-investment grade debt securities for longer than ninety (90) days if the Asbestos PI Trust holds these securities as part of the Asbestos PI Trust's intermediate-term bond manager portfolio, and such securities represent no more than 5% of the bond manager's portfolio.

(d) The Asbestos PI Trust shall not acquire or hold for longer than ninety (90) days any commercial paper unless such commercial paper is rated "Prime-1" or higher by Moody's or "A-1" or higher by S&P's or has been given an equivalent rating by another nationally recognized statistical rating agency.

(e) The Asbestos PI Trust shall not acquire any debt securities or other instruments issued by any entity if, following such acquisition, the aggregate market value of all debt securities and instruments issued by such entity held by the Asbestos PI Trust would exceed 5% of the aggregate value of the Asbestos PI Trust Assets. There is no limitation on holding debt securities or other instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(f) The Asbestos PI Trust shall not acquire or hold any certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, meet the standards set forth in Section 3.2(b) above.

(g) The Asbestos PI Trust may acquire and hold any securities or instruments issued by Reorganized PCC, PPG or Corning or any successor to Reorganized PCC, PPG or Corning, or obtained as proceeds of litigation or otherwise to resolve disputes, without regard to the limitations set forth in Subsections (a)-(f) above.

(h) The Asbestos PI Trust shall not acquire or hold any repurchase obligations unless, in the opinion of the Trustees, they are adequately collateralized.

(i) Based on the advice and recommendation of its investment managers, the Asbestos PI Trust may allow its investment managers to acquire prudently or hold

- 12 –

derivative instruments like options and futures in the normal course of portfolio management. Specifically, the Asbestos PI Trust may acquire or hold derivatives to manage or mitigate portfolio risk, including, but not limited to, interest rate risk and equity market risk. Using derivative instruments to leverage a portfolio to enhance returns (at a much greater risk to the portfolio) is prohibited.

(j) The Asbestos PI Trust may lend securities on a short-term basis, subject to adequate, normal and customary collateral arrangements.

(k) Notwithstanding (a) above, the Asbestos PI Trust may acquire and hold an equity interest in a claims resolution organization without limitation as to the size of the equity interest acquired and held if prior to such acquisition, the Asbestos PI Trust complies with the provisions of Section 2.2(f)(xiv) hereof with respect to the acquisition.

**3.3   Source of Payments.**   All Asbestos PI Trust expenses and all liabilities shall be payable solely by the Trustees out of the Asbestos PI Trust Assets. Neither PCC, Reorganized PCC, PCE, the PPG Entities, the PPG-Affiliated Parties, the PPG Participating Insurer Entities, the PCC Settled Insurer Entities, the Corning Entities, the Corning-Affiliated Parties or their respective subsidiaries, successors in interest, or the present or former shareholders, directors, officers, employees or agents of PCC, Reorganized PCC, PCE, the PPG Entities, the PPG Participating Insurer Entities, the PCC Settled Insurer Entities, the Corning Entities, or their respective subsidiaries, nor the Trustees, the TAC or Future Claimants' Representative, or any of their officers, agents, advisors, or employees shall be liable for the payment of any Asbestos PI Trust expense or any other liability of the Asbestos PI Trust. The Trustees shall include a reasonably detailed description of any payments made in accordance with this Section 3.3 in the annual reports described in Section 2.2(c)(i) hereof.

## SECTION 4

### TRUSTEES

**4.1   Number.**   There shall be three (3) Trustees. The initial Trustees shall be those persons named on the signature page hereof.

**4.2   Term of Service.**

(a)   The initial Trustees named pursuant to Article 4.1 above shall serve the staggered terms of three (3), four (4) and five (5) years as shown on the signature page hereof. Thereafter each term of service shall be five (5) years. The initial Trustees shall serve from the Effective Date until the earlier of (i) the end of his or her term, (ii) his or her death, (iii) his or her resignation pursuant to Section 4.2(b) below, (iv) his or her removal pursuant to Section 4.2(c) below, or (v) the termination of the Asbestos PI Trust pursuant to Section 7.2 below.

(b)    A Trustee may resign at any time by written notice to the remaining Trustees, the TAC and the Future Claimants' Representative. Such notice shall specify a date when such resignation shall take place, which shall not be less than 90 days after the date such notice is given, where practicable.

(c)    A Trustee may be removed (i) by unanimous vote of the remaining Trustees or (ii) at the recommendation of the TAC and the Future Claimants' Representative with the approval of the Bankruptcy Court in the event that he or she becomes unable to discharge his or her duties hereunder due to accident or physical or mental deterioration, or for other good cause. Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of Section 2.2 above, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustees hereunder, or repeated non-attendance at scheduled meetings. Such removal shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

### 4.3    Appointment of Successor Trustees.

(a)    In the event of a vacancy in the position of a Trustee, whether by death, term expiration, resignation or removal, the remaining Trustees shall consult with the TAC and the Future Claimants' Representative concerning appointment of a successor Trustee (a "Successor Trustee"). The vacancy shall be filled by the unanimous vote of the remaining Trustees unless a majority of the TAC or the Future Claimants' Representative vetoes the appointment. In the event that the remaining Trustees cannot agree on a Successor Trustee, or a majority of the TAC or the Future Claimants' Representative vetoes the appointment of the proposed successor Trustee, the Bankruptcy Court shall make the appointment. Nothing shall prevent the reappointment of a Trustee for an additional term or terms.

(b)    Immediately upon the appointment of any Successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the Successor Trustee without any further act. No Successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustees.

(c)    Each Successor Trustee shall serve until the earlier of (i) the end of a full term of five (5) years if the predecessor Trustee completed his or her term, (ii) the end of the remainder of the term of the Trustee whom he or she is replacing if said predecessor Trustee did not complete said term, (iii) his or her death, (iv) his or her resignation pursuant to Section 4.2(b) above, (v) his or her removal pursuant to Section 4.2(c) above, or (vi) the termination of the Asbestos PI Trust pursuant to Section 7.2 below.

### 4.4    Liability of Trustees, Members of the TAC and the Future Claimants' Representative.

The Trustees, the members of the TAC and the Future Claimants' Representative shall not be liable to the Asbestos PI Trust, to any individual holding an asbestos claim, or to any other person, except for such individual's own breach of trust committed in bad faith or willful misappropriation.

### 4.5    Compensation and Expenses of Trustees.

(a)    Each Trustee shall receive a retainer from the Asbestos PI Trust for his or her service as a Trustee in the amount of $60,000 per annum, which amount shall be payable in quarterly installments. In addition, for all time expended attending Trustee meetings, preparing for such meetings and working on authorized special projects, the Trustees shall receive the sum of $500 per hour, and the sum of $250 per hour for non-working travel time, in both cases computed on a quarter-hour basis. The Trustees shall record all hourly time to be charged to the Trust on a daily basis. The per annum retainer and the hourly compensation payable to the Trustees hereunder shall be reviewed every year by the Trustees and, after consultation with the members of the TAC and the Future Claimants' Representative, appropriately adjusted for changes in the cost of living.

(b)    The Asbestos PI Trust will promptly reimburse the Trustees for all reasonable out-of-pocket costs and expenses incurred by the Trustees in connection with the performance of their duties hereunder.

(c)    The Asbestos PI Trust shall include a description of the amounts paid under this Section 4.5 in the accounts to be filed with the Bankruptcy Court and provided to the TAC, the Future Claimants' Representative, and Reorganized PCC pursuant to Section 2.2(c)(i).

### 4.6    Indemnification of Trustees and Additional Indemnitees.

(a)    The Asbestos PI Trust shall indemnify and defend the Trustees, the members of the TAC and the Future Claimants' Representative in the performance of their respective duties hereunder to the fullest extent that a corporation or trust organized under the laws of the Asbestos PI Trust's situs is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment or funding of the Asbestos PI Trust. The Asbestos PI Trust may indemnify and defend the Additional Indemnitees in the performance of their duties hereunder to the fullest extent that a corporation or trust organized under the laws of the Asbestos PI Trust's situs is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment or funding of the Asbestos PI Trust. Notwithstanding the foregoing, no individual shall be indemnified or defended in any way for any liability, expense, claim,

- 15 -

damage, or loss for which he or she is ultimately held liable as a result of such individual's own breach of trust committed in bad faith or willful misappropriation.

(b)    Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of a Trustee, member of the TAC, the Future Claimants' Representative or an Additional Indemnitee in connection with any action, suit, or proceeding, whether civil, administrative or arbitrative from which they are indemnified by the Asbestos PI Trust pursuant to Section 4.6(a) above, shall be paid by the Asbestos PI Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of such individual to repay such amount in the event that it shall be determined ultimately by final order that such individual is not entitled to be indemnified by the Asbestos PI Trust.

(c)    The Trustees may purchase and maintain reasonable amounts and types of insurance on behalf of an individual who is or was a Trustee, member of the TAC, the Future Claimants' Representative or an Additional Indemnitee including against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, TAC member, Future Claimants' Representative, an officer or employee of the Asbestos PI Trust, or an advisor, consultant or agent of the Asbestos PI Trust, the TAC or the Future Claimants' Representative.

**4.7    Trustees' Lien.**    The Trustees, the members of the TAC, the Future Claimants' Representative and the Additional Indemnitees shall have a first priority lien upon the Asbestos PI Trust Assets to secure the payment of any amounts payable to them pursuant to Section 4.6 above.

**4.8    Trustees' Employment of Experts.**    The Trustees may, but shall not be required to, retain and/or consult with counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the Trustees to be qualified as experts on the matters submitted to them (the "Trust Professionals"), and in the absence of gross negligence, the written opinion of or information provided by any such party deemed by the Trustees to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustees hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

**4.9    Trustees' Independence.**    The Trustees shall not, during the term of their service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for Reorganized PCC. Notwithstanding the foregoing, any Trustee may serve, without any additional compensation other than the per diem compensation to be paid by the Asbestos PI Trust pursuant to Section 4.5(a) above, as a director of Reorganized PCC. No Trustee shall act as an attorney for any person who holds an asbestos claim.

- 16 –

**4.10    Bond.**    The Trustees shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

## SECTION 5

## TRUST ADVISORY COMMITTEE

**5.1    Members.**    The TAC shall consist of five (5) members, who shall initially be the persons named on the signature page hereof.

**5.2    Duties.**    The members of the TAC shall serve in a fiduciary capacity representing all holders of present Channeled Asbestos PI Trust Claims. The Trustees must consult with the TAC on matters identified in Section 2.2(e) above and in other provisions herein, and must obtain the consent of the TAC on matters identified in Section 2.2(f) above. Where provided in the TDP, certain other actions by the Trustees are also subject to the consent of the TAC.

### 5.3    Term of Office.

(a)    The initial members of the TAC appointed in accordance with Section 5.1 above shall serve the staggered three-, four-, or five-year terms shown on the signature pages hereof. Thereafter, each term of office shall be five (5) years. Each member of the TAC shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.3(b) below, (iii) his or her removal pursuant to Section 5.3(c) below, (iv) the end of his or her term as provided above, or (v) the termination of the Asbestos PI Trust pursuant to Section 7.2 below.

(b)    A member of the TAC may resign at any time by written notice to the other members of the TAC, the Trustees and the Future Claimants' Representative. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause. Such removal shall be made at the recommendation of the remaining members of the TAC with the approval of the Bankruptcy Court.

### 5.4    Appointment of Successor.

(a)    If prior to the termination of service of a member of the TAC other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a member of the TAC, such individual shall be his or her successor. If such member of the TAC did not designate an individual to succeed him or her prior to the termination

- 17 -

of his or her service as contemplated above, such member's law firm may designate his or her successor. If (a) a member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) he or she is removed pursuant to Section 5.3(c) above, his or her successor shall be appointed by a majority of the remaining members of the TAC or, if such members cannot agree on a successor, the Bankruptcy Court. Nothing in this Asbestos PI Trust Agreement shall prevent the reappointment of an individual serving as a member of the TAC for an additional term or terms, and there shall be no limitation on the number of terms that a TAC member may serve.

(b)    Each successor TAC member shall serve until the earlier of (i) the end of the full term of five (5) years for which he or she was appointed if his or her immediate predecessor member of the TAC completed his or her term, (ii) the end of the term of the member of the TAC whom he or she replaced if his or her predecessor member did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 5.3(b) above, (v) his or her removal pursuant to Section 5.3(c) above, or (vi) the termination of the Asbestos PI Trust pursuant to Section 7.2 below.

## 5.5    TAC's Employment of Professionals.

(a)    The TAC may but is not required to retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and financial and investment advisors, and such other parties deemed by the TAC to be qualified as experts on matters submitted to the TAC (the "TAC Professionals"). The TAC and the TAC Professionals shall at all times have complete access to the Asbestos PI Trust's officers, employees and agents, as well as to the Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the Asbestos PI Trust or the Trustees, except that the TAC and the TAC Professionals may not have access to any information relating to the defense of asbestos personal injury claims against the PPG Entities or the Corning Entities and provided that any information provided by the Trust Professionals shall not constitute a waiver of any applicable privilege. In the absence of gross negligence, the written opinion of or information provided by any TAC Professional or Trust Professional deemed by the TAC to be qualified as an expert on the particular matter submitted to the TAC shall be full and complete authorization and protection in support of any action taken or not taken by the TAC in good faith and in accordance with the written opinion of or information provided by the TAC Professional or Trust Professional.

(b)    The Asbestos PI Trust shall promptly reimburse, or pay directly if so instructed, the TAC for all reasonable fees and costs associated with the TAC's employment of legal counsel pursuant to this provision in connection with the TAC's performance of its duties hereunder. The Asbestos PI Trust shall also promptly reimburse, or pay directly if so instructed, the TAC for all reasonable fees and costs associated with the TAC's employment of any other TAC Professional pursuant to this provision in connection with the TAC's performance of its duties hereunder; provided,

however, that (i) the TAC has first submitted to the Asbestos PI Trust a written request for such reimbursement setting forth the reasons (A) why the TAC desires to employ such TAC Professional, and (B) why the TAC cannot rely on Trust Professionals to meet the need of the TAC for such expertise or advice, and (ii) the Asbestos PI Trust has approved the TAC's request for reimbursement in writing. If the Asbestos PI Trust agrees to pay for the TAC Professional, such reimbursement shall be treated as an Asbestos PI Trust expense. If the Asbestos PI Trust declines to pay for the TAC Professional, it must set forth its reasons in writing. If the TAC still desires to employ such TAC Professional at the Asbestos PI Trust's expense, the TAC and the Trustees shall resolve their dispute pursuant to Section 7.11 below.

### 5.6    Compensation and Expenses of TAC.

The members of the TAC shall receive compensation from the Asbestos PI Trust for their services as TAC members in the form of a reasonable hourly rate set by the Trustees for attendance at meetings or other conduct of Asbestos PI Trust business. The members of the TAC shall also be reimbursed promptly for all reasonable out-of-pocket costs and expenses incurred by the TAC members in connection with the performance of their duties hereunder. Such reimbursement or direct payment shall be deemed an Asbestos PI Trust expense. The Asbestos PI Trust shall include a description of the amounts paid under this Section 5.6 in the accounts to be filed with the Bankruptcy Court and provided to the Trustees, the TAC, the Future Claimants' Representative, and Reorganized PCC pursuant to Section 2.2(c)(i).

### 5.7    Procedures for Consultation with and Obtaining the Consent of the TAC.

### (a)    Consultation Process.

(i)    In the event the Trustees are required to consult with the TAC pursuant to Section 2.2(e) above or on other matters as provided herein, the Trustees shall provide the TAC with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustees shall also provide the TAC with such reasonable access to Trust Professionals and other experts retained by the Asbestos PI Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustees are considering such matter, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustees; provided that in no event shall the TAC or its members (A) have any role, whether by consent, consultation or otherwise, in the Asbestos PI Trust's selection of counsel, experts or other professionals to defend Channeled Asbestos PI Trust Claims against the Asbestos PI Trust, or (B) have any right to consult with or obtain information from the Asbestos PI Trust or anyone employed by the Asbestos PI Trust concerning the defense of any such claims.

(ii)    In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 5.7(a), the Trustees shall take into

consideration the time required for the TAC, if its members so wish, to engage and consult with its own independent financial or investment advisors as to such matter. In any event, the Trustees shall not take definitive action on any such matter until at least thirty (30) days after providing the TAC with the initial written notice that such matter is under consideration by the Trustees, unless such time period is waived by the TAC.

**(b)  Consent Process.**

(i)    In the event the Trustees are required to obtain the consent of the TAC pursuant to Section 2.2(f) above, the Trustees shall provide the TAC with a written notice stating that their consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustees propose to take, and explaining in detail the reasons why the Trustees desire to take such action. The Trustees shall provide the TAC as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Trustees shall also provide the TAC with such reasonable access to Trust Professionals and other experts retained by the Asbestos PI Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustees are considering such action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustees.

(ii)    The TAC must consider in good faith and in a timely fashion any request for its consent by the Trustees, and must in any event advise the Trustees in writing of its consent or its objection to the proposed action within 30 days of receiving the original request for consent from the Trustees. The TAC may not withhold its consent unreasonably. If the TAC decides to withhold its consent, it must explain in detail its objections to the proposed action. If the TAC does not advise the Trustees in writing of its consent or its objections to the action within 30 days of receiving notice regarding such request, the TAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this Section 5.7(b), the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustees and/or the TAC shall resolve their dispute pursuant to Section 7.11. However, the burden of proof with respect to the validity of the TAC's objection and withholding of its consent shall be on the TAC.

## SECTION 6

### THE FUTURE CLAIMANTS' REPRESENTATIVE

**6.1  Duties.**  The Future Claimants' Representative shall be the individual identified on the signature pages hereto. He or she shall serve in a fiduciary capacity, representing the interests of the holders of future Channeled Asbestos PI Trust Claims for the purpose of protecting the rights of such persons. The Trustees must consult with the Future Claimants' Representative on matters identified in Section 2.2(e) above and on

certain other matters provided herein, and must obtain the consent of the Future Claimants' Representative on matters identified in Section 2.2(f) above. Where provided in the TDP, certain other actions by the Trustees are also subject to the consent of the Future Claimants' Representative.

**6.2   Term of Office.**

(a)    The Future Claimants' Representative shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 6.2(b) below, (iii) his or her removal pursuant to Section 6.2(c) below, or (iv) the termination of the Asbestos PI Trust pursuant to Section 7.2 below.

(b)    The Future Claimants' Representative may resign at any time by written notice to the Trustees. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    The Future Claimants' Representative may be removed by the Bankruptcy Court in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.

**6.3   Appointment of Successor.**    A vacancy caused by death or resignation shall be filled with an individual nominated prior to the effective date of the resignation or the death by the resigning or deceased Future Claimants' Representative, and a vacancy caused by the removal of the Future Claimants' Representative shall be filled with an individual nominated by the Trustees in consultation with the TAC, subject, in each case, to the approval of the Bankruptcy Court. In the event a majority of the Trustees cannot agree, or a nominee has not been pre-selected, the successor shall be chosen by the Bankruptcy Court.

**6.4   Future Claimants' Representative's Employment of Professionals.**

(a)    The Future Claimants' Representative may but is not required to retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and financial and investment advisors, and such other parties deemed by the Future Claimants' Representative to be qualified as experts on matters submitted to the Future Claimants' Representative (the "FCR Professionals"). The Future Claimants' Representative and the FCR Professionals shall at all times have complete access to the Asbestos PI Trust's officers, employees and agents, as well as to the Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the Asbestos PI Trust or the Trustees, except that the Future Claimants' Representative and the FCR Professionals may not have access to any information relating to the defense of asbestos personal injury claims against the PPG Entities or the Corning Entities and provided that any information provided by the Trust Professionals

-21-

shall not constitute a waiver of any applicable privilege. In the absence of gross negligence, the written opinion of or information provided by any FCR Professional or Trust Professional deemed by the Future Claimants' Representative to be qualified as an expert on the particular matter submitted to the Future Claimants' Representative shall be full and complete authorization and protection in support of any action taken or not taken by the Future Claimants' Representative in good faith and in accordance with the written opinion of or information provided by the FCR Professional or Trust Professional.

(b)    The Asbestos PI Trust shall promptly reimburse, or pay directly if so instructed, the Future Claimants' Representative for all reasonable fees and costs associated with the Future Claimants' Representative's employment of legal counsel pursuant to this provision in connection with the Future Claimants' Representative's performance of his or her duties hereunder. The Asbestos PI Trust shall also promptly reimburse, or pay directly if so instructed, the Future Claimants' Representative for all reasonable fees and costs associated with the Future Claimants' Representative's employment of any other FCR Professionals pursuant to this provision in connection with the Future Claimants' Representative's performance of his or her duties hereunder; provided, however, that (i) the Future Claimants' Representative has first submitted to the Asbestos PI Trust a written request for such reimbursement setting forth the reasons (A) why the Future Claimants' Representative desires to employ the FCR Professional, and (B) why the Future Claimants' Representative cannot rely on Trust Professionals to meet the need of the Future Claimants' Representative for such expertise or advice, and (ii) the Asbestos PI Trust has approved the Future Claimants' Representative's request for reimbursement in writing. If the Asbestos PI Trust agrees to pay for the FCR Professional, such reimbursement shall be treated as an Asbestos PI Trust expense. If the Asbestos PI Trust declines to pay for the FCR Professional, it must set forth its reasons in writing. If the Future Claimants' Representative still desires to employ the FCR Professional at Asbestos PI Trust expense, the Future Claimants' Representative and the Trustees shall resolve their dispute pursuant to Section 7.11 below.

### 6.5    Compensation and Expenses of the Future Claimants' Representative.

The Future Claimants' Representative shall receive compensation from the Asbestos PI Trust in the form of the Future Claimants' Representative's normal hourly rate for services performed. The Asbestos PI Trust will promptly reimburse the Future Claimants' Representative for all reasonable out-of-pocket costs and expenses incurred by the Future Claimants' Representative in connection with the performance of his or her duties hereunder. Such reimbursement or direct payment shall be deemed an Asbestos PI Trust expense. The Asbestos PI Trust shall include a description of the amounts paid under this Section 6.5 in the accounts to be filed with the Bankruptcy Court and provided to the Trustees, the TAC, the Future Claimants' Representative, and Reorganized PCC pursuant to Section 2.2(c)(i).

**6.6    Procedures for Consultation with and Obtaining the Consent of the Future Claimants' Representative.**

**(a)    Consultation Process.**

(i)    In the event the Trustees are required to consult with the Future Claimants' Representative pursuant to Section 2.2(e) above or on any other matters specified herein, the Trustees shall provide the Future Claimants' Representative with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustees shall also provide the Future Claimants' Representative with such reasonable access to the Trust Professionals and other experts retained by the Asbestos PI Trust and its staff (if any) as the Future Claimants' Representative may reasonably request during the time that the Trustees are considering such matter, and shall also provide the Future Claimants' Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustees.

(ii)    In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 6.6(a), the Trustees shall take into consideration the time required for the Future Claimants' Representative, if he or she so wishes, to engage and consult with his or her own independent financial or investment advisors as to such matter.. In any event, the Trustees shall not take definitive action on any such matter until at least thirty (30) days after providing the Future Claimants' Representative with the initial written notice that such matter is under consideration by the Trustees, unless such time period is waived by the Future Claimants' Representative.

**(b)    Consent Process.**

(i)    In the event the Trustees are required to obtain the consent of the Future Claimants' Representative pursuant to Section 2.2(f) above, the Trustees shall provide the Future Claimants' Representative with a written notice stating that his or her consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustees propose to take, and explaining in detail the reasons why the Trustees desire to take such action. The Trustees shall provide the Future Claimants' Representative as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Trustees shall also provide the Future Claimants' Representative with such reasonable access to the Trust Professionals and other experts retained by the Asbestos PI Trust and its staff (if any) as the Future Claimants' Representative may reasonably request during the time that the Trustees are considering such action, and shall also provide the Future Claimants' Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustees.

(ii)   The Future Claimants' Representative must consider in good faith and in a timely fashion any request for his or her consent by the Trustees, and must in any event advise the Trustees in writing of his or her consent or objection to the proposed action within 30 days of receiving the original request for consent from the Trustees. The Future Claimants' Representative may not withhold his or her consent unreasonably. If the Future Claimants' Representative decides to withhold consent, he or she must explain in detail his or her objections to the proposed action. If the Future Claimants' Representative does not advise the Trustees in writing of his or her consent or objections to the proposed action within 30 days of receiving the notice from the Trustees regarding such consent, the Future Claimants' Representative's consent shall be deemed to have been affirmatively granted.

(iii)   If, after following the procedures specified in this Section 5.7(b), the Future Claimants' Representative continues to object to the proposed action and to withhold its consent to the proposed action, the Trustees and/or the Future Claimants' Representative shall resolve their dispute pursuant to Section 7.11. However, the burden of proof with respect to the validity of the Future Claimants' Representative's objection and withholding of his or her consent shall be on the Future Claimants' Representative.

## SECTION 7

## GENERAL PROVISIONS

**7.1   Irrevocability.**   The Asbestos PI Trust is irrevocable.

**7.2   Termination.**

(a)   The Asbestos PI Trust shall automatically terminate on the date ninety (90) days after the first to occur of the following events (the "Termination Date"):

(i)   the Trustees decide to terminate the Asbestos PI Trust because (A) they deem it unlikely that new Channeled Asbestos PI Trust Claims will be filed against the Asbestos PI Trust, (B) all Channeled Asbestos PI Trust Claims duly filed with the Asbestos PI Trust have been liquidated and paid to the extent provided in this Asbestos PI Trust Agreement and the TDP or disallowed by a final, non-appealable order, to the extent possible based upon the funds available through the Plan, and (C) twelve (12) consecutive months have elapsed during which no new Channeled Asbestos PI Trust Claim has been filed with the Asbestos PI Trust; or

(ii)   if the Trustees have procured and have in place irrevocable insurance policies and have established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the Asbestos PI Trust in a manner consistent with this Asbestos PI Trust Agreement and the TDP, the date on which the

Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a Final Order; or

(iii)  to the extent that any rule against perpetuities shall be deemed applicable to the Asbestos PI Trust, twenty-one (21) years less ninety-one (91) days pass after the death of the last survivor of all of the descendants of Joseph P. Kennedy, Sr., of Massachusetts, father of the late President John F. Kennedy, living on the date hereof.

(b)  On the Termination Date, after payment of all the Asbestos PI Trust's liabilities have been provided for, all monies remaining in the Asbestos PI Trust estate shall be given to such organization(s) exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code, which tax-exempt organization(s) shall be selected by the Trustees using their reasonable discretion; provided, however, that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from asbestos related lung disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to Reorganized PCC within the meaning of Section 468B(d)(3) of the Internal Revenue Code. Notwithstanding any contrary provision of the Plan and related documents, this Section 7.2(b) cannot be modified or amended.

**7.3  Amendments.**  The Trustees, after consultation with the TAC and the Future Claimants' Representative, and subject to the unanimous consent of the TAC and the Future Claimants' Representative, may modify or amend this Asbestos PI Trust Agreement and the Asbestos PI Trust By-laws, provided that any such amendments must be consistent with the requirements of the Plan, the PPG Trust Funding Agreement, and the Corning Trust Funding Agreement. The Trustees, after consultation with the TAC and the Future Claimants' Representative, and subject to the consent of the TAC and the Future Claimants' Representative, may modify or amend the TDP, provided, however, that no amendment to the TDP shall be inconsistent with the limitations on amendments provided therein, and, in particular, the provisions limiting amendment of the Claims Payment Ratio set forth in Section 2.5 of the TDP and of the Payment Percentage set forth in Section 4.2 of the TDP, and provided further that any such amendments must be consistent with the requirements of the Plan, the PPG Trust Funding Agreement, and the Corning Trust Funding Agreement, and that the Trustees shall give PPG and Corning prior notice of the proposed amendments. Any modification or amendment made pursuant to this Article must be done in writing. Notwithstanding anything contained in this Asbestos PI Trust Agreement or the TDP to the contrary, neither this Asbestos PI Trust Agreement, the Asbestos PI Trust Bylaws, the TDP, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify the applicability of Section 524(g) of the Bankruptcy Code to the Plan and the Confirmation Order, the efficacy or enforceability of the injunction entered thereunder, or the Asbestos PI Trust's qualified settlement fund status under Section 468B of the Internal Revenue Code.

**7.4   Severability.**   Should any provision in this Asbestos PI Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Asbestos PI Trust Agreement.

**7.5   Notices.**   Notices to persons asserting claims shall be given by first class mail, postage prepaid, at the address of such person, or, where applicable, such person's Future Claimants' Representative, in each case as provided on such person's claim form submitted to the Asbestos PI Trust with respect to his or her Asbestos PI Trust Claim.

(a)   Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by e-mail or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Asbestos PI Trust through the Trustees:

[TO BE PROVIDED]

To Reorganized PCC:

> James J. Restivo, Esq.
> Douglas E. Cameron, Esq.
> David Ziegler, Esq.
> Reed Smith Shaw & McClay
> 435 Sixth Avenue
> Pittsburgh, Pennsylvania  15219-1886
> Facsimile:  (412) 288-3063

To PPG:

> James C. Diggs, Esq.
> Senior Vice President and General Counsel
> David C. Gallagher, Esq.
> Senior Counsel
> PPG Industries, Inc.
> One PPG Place, 39th Floor
> Pittsburgh, Pennsylvania 15272

With a copy to:

    Peter J. Kalis, Esq.
    Donald E. Seymour, Esq.
    David F. McGonigle, Esq.
    K&L Gates LLP
    Henry W. Oliver Building
    535 Smithfield Street
    Pittsburgh, Pennsylvania 15222

To Corning:

    Vincent P. Hatton, Esq.
    Senior Vice President and General Counsel
    Corning Incorporated
    One Riverfront Plaza
    MP-HQ-E2-03
    Corning, New York 14831

With a copy to:

    Kimberly Luff Wakim, Esq.
    Elene Mountis Moran, Esq.
    Thorp Reed & Armstrong, LLP
    One Oxford Centre
    301 Grant Street, 14th Floor
    Pittsburgh, Pennsylvania 15219

To the TAC:

    Bryan O. Blevins, Jr., Esq.
    Provost & Umphrey Law Firm, L.L.P.
    490 Park Street
    Beaumont, TX 77701
    Facsimile: (409) 838-8888
    E-mail: bblevins@provostumphrey.com

    Russell Budd, Esq.
    Baron & Budd, PC
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219
    Facsimile: (214) 520-1181
    E-mail: rbudd@baronbudd.com

Theodore Goldberg, Esq.
Goldberg, Persky & White, PC
1030 Fifth Avenue, 3rd Floor
Pittsburgh, PA 15219
Facsimile: (412) 471-8308
E-mail: tgoldberg@gpwlaw.com

Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, NC 29464
Facsimile: (843) 216-9450
E-mail: jrice@motleyrice.com

Perry Weitz, Esq.
Weitz & Luxenberg
180 Maiden Lane
New York, NY 10038
Facsimile: (212) 344-5461
E-mail: pweitz@weitzlux.com


To the Future Claimants' Representative:

Lawrence Fitzpatrick
1009 Lenox Drive, Building 4
Suite 101
Lawrenceville, NJ 08648

With a copy to:

Edwin J. Harron, Esq.
Sharon M. Zieg, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: 302-571-6600
Facsimile: 302-571-1253


(b) All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.


- 28 -

**7.6    Successors and Assigns.**    The provisions of this Asbestos PI Trust Agreement shall be binding upon and inure to the benefit of PCC, the other Asbestos Protected Parties, the Asbestos PI Trust, the Trustees and Reorganized PCC, and their respective successors and assigns, except that neither PCC, any PPG Entities, any Corning Entities, the Asbestos PI Trust, the Trustees nor Reorganized PCC may assign or otherwise transfer any of its, or their, rights or obligations under this Asbestos PI Trust Agreement except, in the case of the Asbestos PI Trust and the Trustees, as contemplated by Section 2.1 above.

**7.7    Entire Agreement; No Waiver.**    The entire agreement of the parties relating to the subject matter of this Asbestos PI Trust Agreement is contained herein and in the documents referred to herein, and this Asbestos PI Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

**7.8    Headings.**    The headings used in this Asbestos PI Trust Agreement are inserted for convenience only and do not constitute a portion of this Asbestos PI Trust Agreement, nor in any manner affect the construction of the provisions of this Asbestos PI Trust Agreement.

**7.9    Governing Law.**    This Asbestos PI Trust Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania, without regard to Pennsylvania conflict of law principles.

**7.10    Settlors' Representations and Cooperation.**    PCC, PPG and Corning are hereby irrevocably designated as the Settlors, and are hereby authorized to take any action required of the Settlors in connection with the Asbestos PI Trust Agreement. PCC, PPG and Corning agree to cooperate in implementing the goals and objectives of this Asbestos PI Trust.

**7.11    Dispute Resolution.**    Any disputes that arise under this Asbestos PI Trust Agreement or under the TDP among the parties hereto shall be resolved by submission of the matter to an alternative dispute resolution ("ADR") process mutually agreeable to the parties involved. Should any party to the ADR process be dissatisfied with the decision of the arbitrator(s), that party may apply to the Bankruptcy Court for a judicial determination of the matter. Any review conducted by the Bankruptcy Court shall be *de novo.*  In any case, if the dispute arose pursuant to the consent provision set forth in Section 5.7(b) (in the case of the TAC) or Section 6.6(b) (in the case of the Future Claimants' Representative), the burden of proof shall be on the party or parties who withheld consent to show that the objection was valid. Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the parties are relieved of

the requirement to pursue ADR prior to application to the Bankruptcy Court. Notwithstanding anything else herein contained, to the extent any provision of this Asbestos PI Trust Agreement is inconsistent with any provision of the Plan, the Plan shall control.

    **7.12   Enforcement and Administration.**   The provisions of this Asbestos PI Trust Agreement and the TDP attached hereto shall be enforced by the Bankruptcy Court pursuant to the Plan. The parties hereby further acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of the accounts of the Trustees and over any disputes hereunder not resolved by alternative dispute resolution in accordance with Section 7.11 above.

    **7.13   Effectiveness.**   This Asbestos PI Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

    **7.14   Counterpart Signatures.**   This Asbestos PI Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Asbestos PI Trust
Agreement this _____ day of _____, 2008.

SETTLOR: Pittsburgh Corning
    Corporation

By:   _____

Name and Title:

SETTLOR: PPG Industries, Inc.

By:   _____

Name and Title:

SETTLOR: Corning Incorporated

By:   _____

Name and Title:


TRUSTEES


_____
Jack Marionneaux
Expiration Date of Initial
   Term:_____
Anniversary of the date of this PI
   Trust
Agreement


_____
Philip A. Pahigian
Expiration Date of Initial
   Term:_____
Anniversary of the date of this PI
   Trust
Agreement

_____
A. Andrew MacQueen
Expiration Date of Initial
   Term:_____
Anniversary of the date of this PI
   Trust
Agreement


ASBESTOS CREDITORS
   COMMITTEE

By: _____


TRUST ADVISORY
   COMMITTEE


_____
Bryan O. Blevins
Expiration Date of Initial
   Term:_____
Anniversary of the date of this PI
   Trust
Agreement


_____
Russell W. Budd
Expiration Date of Initial
   Term:_____
Anniversary of the date of this PI
   Trust
Agreement


_____
Theodore Goldberg
Expiration Date of Initial
   Term:_____

_____

Anniversary of the date of this PI
   Trust
Agreement

_____

Joseph F. Rice
Expiration Date of Initial
   Term:_____
Anniversary of the date of this PI
   Trust
Agreement

_____

Perry Weitz
Expiration Date of Initial
   Term:_____
Anniversary of the date of this PI
   Trust
Agreement

FUTURE CLAIMANTS'
REPRESENTATIVE

_____

Lawrence Fitzpatrick