# Tab (m)

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| USG CORPORATION, *et al.*, | ) | Jointly Administered |
| | ) | Case No. 01-2094 (JKF) |
| Debtors. | ) | |

ANNUAL REPORT AND ACCOUNT OF THE
UNITED STATES GYPSUM ASBESTOS PERSONAL INJURY SETTLEMENT TRUST
FOR THE FISCAL YEAR ENDING DECEMBER 31, 2008

Philip A. Pahigian, Lewis R. Sifford, and Charles A. Koppelman, the Trustees of the United States Gypsum Asbestos Personal Injury Settlement Trust (the "Trust"), created pursuant to the Joint Plan of Reorganization of USG Corporation and its Debtor Subsidiaries, dated as of February 17, 2006, as amended or modified (the "Plan") submit this Annual Report, Financial Statements, and Claims Summary for the fiscal year ending December 31, 2008.

I.   INTRODUCTION

The purpose of this Annual Report is to fulfill the reporting requirements of the United States Gypsum Asbestos Personal Injury Settlement Trust Agreement (the "Trust Agreement") and to report to the Court on the actions taken by the Trustees on behalf of the Trust during the period January 1, 2008 to December 31, 2008 (the "Reporting Period").

Section 2.2(c) of the Trust Agreement provides:

The Trustees shall timely account to the Bankruptcy Court as follows:

(i)     The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "Annual Report") containing financial statements of the PI Trust (including, without limitation, a balance sheet of the PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles.  The Trustees shall provide a copy of such report to the TAC, the FCR,

{D0151719.1}

and the Reorganized USG when such reports are filed with the Bankruptcy Court.

(ii) Simultaneously with the filing of the Annual Report, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Trustees shall provide a copy of such report to the TAC, the FCR, and the Reorganized Debtors when such report is filed.

(iii) All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

The Trust Agreement further provides for the inclusion of a description of the amounts paid to the Trustees, TAC, and FCR in the accounts filed with the Bankruptcy Court. See Sections 4.5(c), 5.6, and 6.5.

II. BACKGROUND

On June 25, 2001, USG Corporation, United States Gypsum Company, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC, B-R Pipeline Company, La Miranda Products Co., Inc, Stocking Specialists, Inc., USG Industries, Inc., and USG Pipeline Company (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code. The Chapter 11 cases were consolidated for procedural purposes and jointly administered pursuant to an order of the Court. On June 16, 2006, the Bankruptcy Court and the United States District Court for the District of Delaware entered an order in these cases confirming the Plan. On June 20, 2006 (the "Effective Date"), the Plan became effective and the Trustees began to operate the Trust.

The Trust was funded in accordance with Article IV, Paragraph G.2 of the Plan. The purpose of the Trust is to assume all responsibility for PI Trust Claims, as defined in the Plan, and to use the assets of the Trust to pay both present and future asbestos claimants in such a way

that such holders of PI Trust Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims.

III. TRUST ADMINISTRATION

    A.    Trustees

Charles A. Koppelman, Philip A. Pahigian and Lewis R. Sifford served as the Trustees of the Trust during the Reporting Period. Philip A. Pahigian was selected by the Trustees to serve as the Managing Trustee during the Reporting Period.

        1.    Meetings

During the Reporting Period, the Trustees held formal meetings in accordance with the requirements of the United States Gypsum Asbestos Personal Injury Settlement Trust Agreement. These meetings were designated as "regular meetings" under the Trust's By-laws. Each meeting was in person and was attended by representatives of the Trust Advisory Committee and Futures Representative. In addition to these formal meetings, the Trustees held executive session and special purpose meetings, including meetings to address Trust policies and claim processing matters and meetings with the Trust's investment advisor, investment managers, held regularly scheduled weekly teleconferences, and devoted considerable time to Trust matters outside of scheduled meetings. Activities included preparing for the timely transfer of the trust assets, receiving and deploying these assets with investment managers, designing and implementing processes to receive, process, and pay claims pursuant to the Trust Distribution Procedures, communicating with claimants regarding the processing of claims, and continual monitoring of the claims and investment processes.

        2.    Compensation

The compensation and expenses paid to the Trustees during the Reporting Period is set forth in the Trust's financial statements attached hereto as Exhibit "A." The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 4.5(c) of the Trust Agreement. All distributions related to Trustee compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines and applicable By-laws.

B. Trust Officers

Analysis Research Planning Consulting ("ARPC") served as the Trust's Executive Director during the Reporting Period.

C. Trust Advisory Committee

Russell W. Budd, John D. Cooney, Theodore Goldberg, Steven Kazan, Perry Weitz and Joseph F. Rice served as Members of the Trust Advisory Committee (the "TAC Members") during the Reporting Period. The compensation and expenses paid to the TAC Members during the Reporting Period are set forth in the Trust's financial statements. The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 5.6 of the Trust Agreement. All distributions related to TAC Member compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines and applicable By-laws.

D. Futures Representative

Dean M. Trafelet served as the Futures Representative (the "FR") during the Reporting Period. The compensation paid to the FR during the Reporting Period is set forth in the Trust's financial statements. The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 6.5 of the Trust Agreement. All distributions related to FR compensation and expense reimbursements were made in

accordance with the Trust Agreement guidelines and applicable By-laws.

E.    Claims Processing

Delaware Claims Processing Facility continues to process the Trust's claims. The terms of the Trust's ownership interest in the Delaware Claims Processing Facility are detailed in the Audited Financial Statements[1].

F.    Investment Management

Cambridge Associates, LLC of Boston, Massachusetts continues to serve as the Trust's investment advisor. Cambridge Associates represents other asbestos settlement trusts and has significant experience advising such trusts on investment management. Cambridge Associates advises the Trustees on asset allocation, meeting liquidity needs, and the selection and oversight of individual investment managers for the investable portions of the Trust's portfolio. The Trust's invested assets are allocated in compliance with the Trust's investment guidelines as follows: 89.6% of the Trust's invested assets are committed to fixed income, of which 36.0% is allocated to short-term municipal bonds and 53.6% to intermediate-term municipal bonds; the remaining 10.4% of the Trust's invested assets are committed to equities, of which 4.1% of the Trust's assets are allocated to U.S. equity managers and 6.3% are allocated to non-U.S. equity managers.

The Trust continues to retain: Northern Trust, Mercator, Hansberger, Southeastern and Gryphon as non-U.S. equity managers; Northern Trust as U.S. equity manager; BlackRock, Schroders, Northern Trust and M.D. Sass as intermediate-term municipal bond managers; and BlackRock and Columbia as short-term municipal bond managers. Morgan Stanley, an intermediate-term bond manager, was terminated by the Trust in 2008 because of significant

---

[1] Audited Financial Statements at Note 3.

changes to the portfolio management team. The municipal bond team at M.D. Sass was acquired by Eaton Vance on December 31, 2008, and was renamed Eaton Vance Tax-Advantaged Bond Strategy (TABS). Northern Trust served as Custodian for the Trust's investment accounts.

During the Reporting Period, the Trustees regularly met with Cambridge Associates for updates and reports on the investments. In addition, in March 2008, the Trustees had an Annual Review meeting where they met with investment managers to review each organization, investment strategy, performance and market outlook for the upcoming year.

G.  General Counsel

Campbell & Levine, LLC of Pittsburgh, Pennsylvania and Wilmington, Delaware continues to serve as general counsel to the Trust.

IV.  ANNUAL REPORT AND ACCOUNT

A.  Summary of Claims

The Trust began accepting and processing Unliquidated claims on February 19, 2007. As of December 31, 2008, the Trust had paid a total of 2,152 Pre-Petition Liquidated PI Trust Claims. Of the claims paid, there were 142 malignancy claims and 2,010 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $11.52 million to asbestos victims in settlement of their Pre-Petition Liquidated PI Trust Claims. The malignant to nonmalignant ratio of the Pre-Petition Liquidated PI Trust Claims paid in number was 1/14 and the malignant to nonmalignant ratio of the Pre-Petition Liquidated Trust Claims in dollars paid was 2/1.

As of December 31, 2008, the Trust had received 214,469 Unliquidated PI Trust Claims and paid a total of 54,986 claims. Of the claims paid, there were 7,650 malignancy claims and 47,336 non-malignancy claims. After application of the payment percentage and applicable

sequencing adjustment, the Trust paid approximately $600.61 million to asbestos victims in settlement of their Unliquidated PI Trust Claims. The malignant to nonmalignant ratio of the Unliquidated PI Trust Claims paid in number was 1/6 and the malignant to nonmalignant ratio of the Unliquidated Trust Claims in dollars paid was 4/1.

During the reporting period, the Trust paid a total of 1,729 Pre-Petition Liquidated PI Trust Claims. Of the claims paid, there were 73 malignancy claims and 1,656 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $3.46 million to asbestos victims in settlement of their Pre-Petition Liquidated PI Trust Claims. The malignant to nonmalignant ratio of the Pre-Petition Liquidated PI Trust Claims paid in number was 1/25 and the malignant to nonmalignant ratio of the Pre-Petition Liquidated Trust Claims in dollars paid was 1/1.

During the reporting period, the Trust received 90,756 Unliquidated PI Trust Claims and paid a total of 49,805 claims. Of the claims paid, there were 7,146 malignancy claims and 42,659 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $562.96 million to asbestos victims in settlement of their Unliquidated PI Trust Claims. The malignant to nonmalignant ratio of the Unliquidated PI Trust Claims paid in number was 1/6 and the malignant to nonmalignant ratio of the Unliquidated Trust Claims in dollars paid was 4/1.

A summary of the claims processing procedures and policies may be found at the Trust website at www.usgasbestostrust.com.

B.  Financial Information

The Trust's audited financial statements for the Reporting Period are attached hereto as Exhibit "A." The financial statements were audited by Argy, Wiltse & Robinson, P.C.

Date:  April 30, 2009  CAMPBELL & LEVINE, LLC

*/s/ Kathleen Campbell Davis*
Marla Rosoff Eskin (No. 2989)
Kathleen Campbell Davis (No. 4229)
800 N. King Street, Suite 300
Wilmington, DE 19801
Tel. 302.426.1900
Fax 302.426.9947

-and-

Douglas A. Campbell
Philip E. Milch
1700 Grant Building
Pittsburgh, PA 15219
Tel. 412.261.0310
Fax 412.261.5066

*Counsel to United States Gypsum Asbestos Personal Injury Settlement Trust*