# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

—————————————————— X

In Re:                          Chapter 11

                                Case No.
                                01-01139 JKF
W.R. Grace & Co., et al.,

                                (Jointly
              Debtors.          Administered)
—————————————————— X


—   —   —

May 6, 2009


—   —   —

DEPOSITION of JEFFREY POSNER, held

at the offices of Kirkland & Ellis, 655

Fifteenth Street, N.W., Washington, DC,

commencing at 9:08 A.M., on the above

date, before Lisa Lynch, a Registered

Merit Reporter, New Jersey Certified Court

Reporter, License No. XI00825, and

Certified Realtime Reporter


—   —   —

MAGNA LEGAL SERVICES, LLP

7 Penn Center, 8th Floor

1635 Market Street

Philadelphia, PA   19103

1.866.MAGNA.21

## Page 2

```
 1   A P P E A R A N C E S:
 2
 3   DRINKER BIDDLE & REATH, LLP
     BY:  MICHAEL F. BROWN, ESQUIRE
     One Logan Square
     18th and Cherry Streets
     Philadelphia, Pennsylvania 19103-6996
 5   (brownmf@dbr.com)
     Representing OneBeacon America Insurance
 6   Company, Seaton Insurance Company,
     Government Employees Insurance Company,
 7   Columbia Insurance Company f/k/a Republic
     Insurance Company
 8
 9   ANDERSON KILL & OLICK, PC
     BY:  ROBERT M. HORKOVICH, ESQUIRE
10   1251 Avenue of the Americas
     New York, New York 10020
11   212.278.1322
     (rhorkovich@andersonkill.com)
12   Representing Grace, Official Committee of
     Asbestos Personal Injury Claimants ("ACC")
13
14   W.R. GRACE & CO.
     BY:  RICHARD C. FINKE, ESQUIRE*
15      ASSISTANT GENERAL COUNSEL
        (*VIA TELECONFERENCE)
16   5400 Broken Sound Boulevard, NW
     Suite 300
17   Boca Raton, Florida 33487
     561.362.1533
18   Representing W.R. Grace & Co.
19
     KIRKLAND & ELLIS, LP
20   BY:  LISA G. ESAYIAN, ESQUIRE
     300 North LaSalle Street
21   Chicago, Illinois 60654
     312.862.2226
22   (lisa.esayian@kirkland.com)
     Representing the Debtors
23
24
```

## Page 3

```
 1   A P P E A R A N C E S: (continued)
 2   SIMPSON THACHER & BARTLETT, LLP
     BY:  MARY BETH FORSHAW, ESQUIRE
 3   425 Lexington Avenue
     New York, New York 10017-3954
 4   212.455.2846
     (mbforshaw@stblaw.com)
 5   Representing Travelers Casualty and Surety
     Company
 6
 7   VORYS, SATER, SEYMOUR AND PEASE, LLP
     BY:  WILLIAM J. POHLMAN, ESQUIRE
 8   52 East Gay Street
     Columbus, Ohio 43215
 9   614.464.8349
     (wjpohlman@vorys.com)
10   Representing The Scotts Company, LLC
11
     COHN WHITESELL & GOLDBERG, LLP
12   BY:  DANIEL C. COHN, ESQUIRE
     101 Arch Street
13   Boston, Massachusetts 02110
     617.951.2505
14   (cohn@cwgfl.com)
     Representing the Libby Claimants
15
16   LEWIS, SLOVAK & KOVACICH, PC
     BY:  MARK M. KOVACICH, ESQUIRE
17   P.O. Box 2325
     723 Third Avenue
18   Great Falls, Montana 59403
     406.761.5595
19   mark@lsklaw.net
     Representing the Libby Claimants
20
     SPEIGHTS & RUNYAN
21   BY:  DANIEL H. SPEIGHTS, ESQUIRE*
        (*VIA TELECONFERENCE)
22   200 Jackson Avenue East
     P.O. Box 685
23   Hampton, South Carolina 29924
24   803.943.4444
```

## Page 4

```
 1   Representing Anderson Memorial Hospital
 2   A P P E A R A N C E S: (continued)
 3
     MENDES & MOUNT, LLP
 4   BY:  CAROLINA ACEVEDO, ESQUIRE
     750 Seventh Avenue
 5   New York, New York 10019
     212.261.8262
 6   (carolina.acevedo@mendes.com)
     Representing AXA Belgium as Successor to
 7   Royale Belge SSA
 8
     MENDES & MOUNT, LLP
 9   BY:  ALEXANDER MUELLER, ESQUIRE
     750 Seventh Avenue
10   New York, New York 10019
     212.261.8296
11   (alexander.mueller@mendes.com)
     Representing London Market Companies
12
13   FORD MARRIN ESPOSITO & WITNEYER & GLESER
     BY:  ELIZABETH M. DeCRISTOFARO, ESQUIRE
14   Wall Street Plaza
     New York, New York 10005-1875
15   212.269.4900
     Representing Continental Casualty Company
16   and Continental Insurance Company
17
     BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
18   BY:  MATTHEW I. KRAMER, ESQUIRE*
        (*VIA TELECONFERENCE)
19   200 South Biscayne Boulevard
     Suite 2500
20   Miami, Florida 33131-5340
     305.450.7246
21   (mkramer@bilzin.com)
     Representing Property Damage Committee
22
23
24
```

## Page 5

```
 1   A P P E A R A N C E S: (continued)
 2
     STROOCK & STROOCK & LAVAN, LLP
 3   BY:  ARLENE G. KRIEGER, ESQUIRE*
        (*VIA TELECONFERENCE)
 4   180 Maiden Lane
     New York, New York 10038-4982
 5   212.806.5400
     (akrieger@stroock.com)
 6   Representing Official Committee of
     Unsecured Creditors
 7
 8   CROWELL & MORING, LLP
     BY:  PATRICIA CONNALLY, ESQUIRE
 9   1001 Pennsylvania Avenue, N.W.
     Washington, DC 20004-2595
10   202.624.2913
     (pconnally@crowell.com)
11   Representing Fireman's Fund Insurance
     (Surety Bond)
12
13   STEVENS & LEE, P.C.
     BY:  JOHN D. DEMMY, ESQUIRE*
14      (*VIA TELECONFERENCE)
     1105 North Market Street, 7th Floor
15   Wilmington, Delaware 19801
     302.654.5180
16   (jdd@stevenslee.com)
     Representing Fireman's Fund Insurance
17
18   LAW OFFICES OF ALAN B. RICH
     BY:  ALAN B. RICH, ESQUIRE
19   Elm Place, Suite 4620
     1401 Elm Street
20   Dallas, Texas 75202
     214.744.5100
21   (arich@alanrichlaw.com)
     Representing Property Damage PCR
22
23
24
```

## Page 6

1   A P P E A R A N C E S: (continued)
2
3   CONNOLLY BOVE LODGE & HUTZ, LLP
    BY: JEFFREY C. WISLER, ESQUIRE
    The Nemours Building
4      1007 North Orange Street
    P.O. Box 2207
5   Wilmington, Delaware 19899
    302.888.6528
6   (jwisler@cblh.com)
    Representing Maryland Casualty
7
8   ECKERT SEAMANS CHERIN & MELLOTT, LLC
    BY: EDWARD J. LONGOSZ, II, ESQUIRE
9   1747 Pennsylvania Avenue, N.W.
    12th Floor
10   Washington, DC 20006
    202.659.6619
11   (elongosz@eckertseamans.com)
    Representing Maryland Casualty and Zurich
12
13   WILEY REIN, LLP
    BY: KARALEE C. MORELL, ESQUIRE
14   1776 K Street NW
    Washington, DC 20006
15   202.719.7520
    (kmorell@wileyrein.com)
16   Representing Maryland Casualty and Zurich
17
    COZEN O'CONNOR
18   BY: ILAN ROSENBERG, ESQUIRE*
       (*VIA TELECONFERENCE)
19   1900 Market Street
    Philadelphia, Pennsylvania 19103-3508
20   215.665.4621
    (irosenberg@cozen.com)
21   Representing Federal Insurance Company
22
23

## Page 7

1   A P P E A R A N C E S: (continued)
2
3   ORRICK HERRINGTON & SUTCLIFFE, LLP
    BY: JONATHAN P. GUY, ESQUIRE
4      PERI N. MAHALEY, ESQUIRE
    Columbia Center
5   1152 15th Street, N.W.
    Washington, DC 20005-1706
6   202.339.8516
    (jguy@orrick.com)
7   (pmahaley@orrick.com)
    Representing PI Future Claimants'
8   Representative
9
    CUYLER BURK, P.C.
10   BY: ANDREW CRAIG, ESQUIRE*
       (*VIA TELECONFERENCE)
11   4 Century Drive
    Parsippany, New Jersey 07054
12   973.734.3200
    (acraig@cuyler.com)
13   Representing Allstate Insurance Company
14
    WILSON ELSER MOSKOWITZ
15   EDELMAN & DICKER, LLP
    BY: CARL J. PERNICONE, ESQUIRE
16   150 East 42nd Street
    New York, New York 10017-5639
17   212.915.5656
    (carl.pernicone@wilsonelser.com)
18   Representing Arrowood Indemnity Company
19
    O'MELVENY & MEYERS LLP
20   BY: TANCRED SCHIAVONI, ESQUIRE
    7 Times Square
21   New York, New York 10036
    212.326.2267
22   (tschiavoni@omm.com)
    Representing Arrowood Indemnity Company
23
24

## Page 8

1   A P P E A R A N C E S: (continued)
2
3   WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
    BY: KEVIN J. MANGAN, ESQUIRE*
       (*VIA TELECONFERENCE)
4   222 Delaware Avenue
    Suite 1501
5   Wilmington, Delaware 19801
    302.252.4361
6   (kmangan@wcsr.com)
    Representing State of Montana
7
8   PEPPER HAMILTON, LLP
    BY: LINDA J. CASEY, ESQUIRE*
9      (*VIA TELECONFERENCE)
    3000 Two Logan Square
10   Philadelphia, Pennsylvania 19103
    215.981.4000
11   (caseyl@pepperlaw.com)
    Representing BNSF Railway Company
12
13
    ALSO PRESENT:
14
    ALLEN SCHWARTZ, O'Melveny & Meyers LLP
15                    – – –
16
17
18
19
20
21
22
23
24

## Page 9

1                  INDEX
               EXAMINATION
2
    Witness Name                Page
3   JEFFREY POSNER
4      BY MS. FORSHAW       14
5      BY MR. KOVACICH      108
6      BY MR. MUELLER       229
7      BY MS. CASEY         236
8      BY MR. LONGOZ        256
9      BY MR. BROWN         269
10      BY MS. DeCRISTOFARO  294, 338
11      BY MR. SCHIAVONI     308, 334
12      BY MR. POHLMAN       314
13      BY MR. SPEIGHTS      339
14              EXHIBITS
15   EXHIBIT               ID
16   Exhibit 1             14
       Notice of Deposition of Jeffery
17      Posner
18   Exhibit 2             14
       Curriculum vitae of Jeffery M.
19      Posner
20   Exhibit 3             14
       Affidavit Under 11 USC 327(e)
21
    Exhibit 4             41
22      Asbestos Settlement Agreement
       between W.R. Grace & Company-Conn.
23      and the Aetna Casualty & Surety
       Company dated May 12th, 1996
24

Page 10

```
1          EXHIBITS
      EXHIBIT          ID
2
   Exhibit 5          68
3     Exhibit 4 to Exhibit Book Trust
      Distribution Procedures
4
   Exhibit 6          82
5     First Amended Joint Plan of
      Reorganization
6
   Exhibit 7          96
7     Agreement between W.R. Grace &
      Company-Connecticut and the
8     Travelers Casualty & Surety
      Company dated February 20, 1992
9
   Exhibit 8          106
10    Exhibit 19 to Exhibit Book,
      Retained Causes of Action
11
   Exhibit 9          113
12    Answer, Cross-claims and
      Counterclaims of Defendant W.R.
13    Grace in re: Maryland Casualty v.
      Grace, et al.
14
   Exhibit 10         118
15    Royal Indemnity Company
      declaration sheets and
16    endorsements SA-870, 891, 939,
      945-946
17
   Exhibit 11         137
18    Letter dated December 9, 1999 to
      Royal & SunAlliance from Marsh USA
19
   Exhibit 12         143
20    Letter dated January 12, 2000 from
      Royal and SunAlliance to J.M.
21    Posner, Inc., two pages
22 Exhibit 13         196
      E-mail string between Janet Baer
23    and Dan Cohn, three pages
24
```

Page 11

```
1          EXHIBITS
      EXHIBIT          ID
2
   Exhibit 14         216
3     Monthly asbestos litigation
      summary Bates stamped 91-1614
4     through 1639
5  Exhibit 15         270
      Settlement agreement Bates stamped
6     OB 1 through 33
7  Exhibit 16         273
      Settlement Agreement and Release
8     Bates stamped OB 34 through 66
9  Exhibit 17         277
      Settlement Agreement and Release
10    Bates stamped OB 67 through 92
11 Exhibit 18         279
      Settlement Agreement, Release and
12    Indemnification/Hold Harmless
      Agreement Bates stamped SEA 1
13    through 16
14 Exhibit 19         280
      Settlement Agreement, Release and
15    Indemnification/Hold Harmless
      Agreement Bates stamped SEA 17
16    through 31
17 Exhibit 20         283
      Settlement Agreement, Release and
18    Indemnification/Hold Harmless
      Agreement Bates stamped SEA 32
19    through 47
20 Exhibit 21         285
      Settlement Agreement & Release
21    Bates stamped SEA 48 through 61
22 Exhibit 22         294
      LexisNexis printout in re:
23    Maryland Casualty v. Grace, et al.
24
```

Page 12

```
1          EXHIBITS
      EXHIBIT          ID
2
   Exhibit 23         317
3     Exhibit 6 to Exhibit Book,
      Asbestos Insurance Transfer
4     Agreement
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 13

```
1       DEPOSITION SUPPORT INDEX
2
   Direction to Witness Not To Answer
3  Page  Line    Page  Line
   209   1       239   6
4
   Request For Production of Documents
5  Page  Line    Page  Line
   142   11      149   24
6  169   18
7  Stipulations
   Page  Line    Page  Line
8  (None)
9  Questions Marked
   Page  Line    Page  Line
10 (None)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 14

1          (Notice of Deposition of
2   Jeffery Posner received and marked
3   for identification as Posner
4   Exhibit 1.)
5          (Curriculum vitae of
6   Jeffery M. Posner received and
7   marked for identification as Posner
8   Exhibit 2.)
9          (Affidavit Under 11 USC
10  327(e) received and marked for
11  identification as Posner Exhibit
12  3.)
13
14  J E F F R E Y   P O S N E R,
15      having been sworn by the Notary
16      Public of the States of New York
17      and New Jersey, was examined and
18      testified as follows:
19
20  EXAMINATION BY
21  MS. FORSHAW:
22      Q.   Good morning.  Mr. Posner.
23      A.   Good morning.
        Q.   Good to see you again.  I

Page 15

1   know you've been through this drill many
2   times.  If I talk too fast, just stop me.
3   If you have any questions about my
4   questions, let me know.  If you need to
5   take a break, let me know.
6       A.   Definitely.
7       Q.   Okay.  I'm just --
8           MR. KRAMER:  I'm sorry.
9       Who's asking the questions, please?
10          MS. FORSHAW:  Sure.  It's
11      Mary Beth Forshaw from Simpson
12      Thacher representing Travelers
13      Casualty.  If you guys have a hard
14      team hearing us, will you let us
15      know?
16          MS. KRIEGER:  Yes, we will.
17      Thank you.
18      Q.   Mr. Posner, I'm going to
19  put before you a Notice of Deposition of
20  Jeffery Posner.  Do you understand you're
21  here to testify in response to that notice
22  today?
23      A.   Yes, I do.
24          MS. FORSHAW:  I have eight

Page 16

1   or nine copies of exhibits which
2   I'll pass out through the
3   deposition.  You can put that
4   aside.  For the record, I've marked
5   the Notice of Deposition of Jeffery
6   Posner as Exhibit 1.
7   BY MS. FORSHAW:
8       Q.   Mr. Posner, let me put
9   before you what I've marked as Exhibit 2,
10  which is a resume of Jeffery Posner.  Do
11  you recognize this document as your
12  resume?
13      A.   Yes, but it appears to me
14  to be an outdated copy of it.
15      Q.   Okay.  And for the record,
16  can you tell us in what way is this resume
17  outdated?
18      A.   My business address, it's
19  an old business address which leads me to
20  believe that's a version that I kept
21  several years ago.
22      Q.   Is the professional
23  experience described in your resume true
24  and accurate?

Page 17

1       A.   Yes, I'm sure it is.
2       Q.   And this resume indicates
3   that you were employed at W.R.
4   Grace & Company from 1982 to 1999.  Is
5   that correct?
6       A.   Yes, it is.
7       Q.   And for the record, can you
8   give us an overview of your employment
9   experience at W.R. Grace listing your
10  positions and the approximate years you
11  held each position?
12      A.   I started with Grace in
13  1982 as an assistant claims manager.  In
14  1986 I assumed the duties of a risk
15  analyst.  Thereafter I became the
16  assistant director of risk management
17  sometime, I think, in 1987 and then in
18  1988 I was promoted to the director of
19  risk management and I became an assistant
20  vice president of the company.
21      Q.   And during your tenure at
22  W.R. Grace, were you responsible for
23  overseeing asbestos-related coverage
24  litigations?

Page 274

1  Lewis signed it on behalf of Commercial
2  Union.
3       Q.   Okay.  Now, when you --
4  well, let me ask you this: Did you
5  participate in the negotiations of this
6  agreement?
7       A.   Yes, I did.
8       Q.   And were the payments by
9  Commercial Union and its affiliates that
10 are set forth in this agreement actually
11 made?
12      A.   Yes, they were.
13      Q.   All right.  You indicated
14 that you signed this on behalf of Grace
15 and there are two Grace entities listed on
16 page 32 and there is a third Grace entity
17 listed on -- well, let me use the Bates
18 numbers.  On page 65 and 66 there's W.R.
19 Grace & Company-Conn, there is W.R. Grace
20 & Co.-Delaware and then on the next page
21 W.R. Grace & Co., a New York corporation
22 which has changed its name to Fresenius
23 National Medical Care Holdings, Inc.  Do
1  you see that?

Page 275

1       A.   Yes.
2       Q.   At the time that this
3  agreement was executed in 1996, this was
4  immediately following one of the two
5  restructurings of Grace.  Is that
6  correct?
7       A.   I don't remember the date
8  of the restructuring, but obviously it was
9  after the -- I guess it had to be because
10 it references the -- I'm going to call it
11 the National Medical Care restructuring.
12 So I'm presuming that was executed after
13 that restructuring took place and I think
14 that took place after the Sealed Air
15 transaction so I think this is being
16 signed after both transactions.  That is
17 my recollection.
18      Q.   Let's look at page 66.
19      A.   Okay.
20      Q.   When you signed this
21 document back on December 17th, 1996 on
22 behalf of W.R. Grace & Co., a New York
23 corporation, et cetera, you were obviously
24 authorized to do so?

Page 276

1       A.   Yes.
2       Q.   Okay.  Is the company that
3  you signed the document on behalf of back
4  then now known as Fresenius Medical Care
5  Holdings, Inc.?
6       A.   It was at one time.  I
7  don't know if today it is.  It may be.  I
8  haven't heard that it's changed its name
9  but I don't think I've heard much about
10 but, yeah, I believe certainly that was
11 the name at the time.
12      Q.   Is it your understanding
13 that that entity is a non-debtor?
14           MS. ESAYIAN:  If you know.
15           MR. HORKOVICH:  Objection
16      to form.
17      A.   Yeah, I believe that entity
18 would be a non-debtor.
19      Q.   Okay.  And if you go back
20 to page 65, do you know what the name of
21 the company is today that back in December
22 of 1996 was called W.R. Grace &
23 Co.-Delaware?
24      A.   I think it's W.R. Grace &

Page 277

1  Co.-Delaware today, unless it's changed
2  its name.  I don't recall.  I thought it
3  was Delaware today as well, unless they
4  took the Delaware out of it.
5       Q.   It's not Sealed Air
6  Corporation?
7           MS. ESAYIAN:  Objection to
8  foundation.  You can answer if you
9  can.
10          THE WITNESS:  I'm thinking.
11      A.   Sitting here, I don't
12 know.
13      Q.   Okay.
14          (Settlement Agreement and
15      Release Bates stamped OB 67 through
16      92 received and marked for
17      identification as Posner Exhibit
18      17.)
19      Q.   Take a few moments to look
20 at what's been marked as Posner-17,
21 please.
22      A.   Okay, I looked at it.
23      Q.   Can you identify this
24 document?

Page 278

1     A.   This is the settlement
2  agreement entered into by Grace and
3  Commercial Union in 1998, I'm going to
4  call it, relating to environmental claims
5  but it may encompass more than that but I
6  remember it as the environmental
7  settlement agreement.
8     Q.   Okay.  Do you recognize the
9  signatures on page 25 and 26?
10    A.   Yes, I do.
11    Q.   Who signed on behalf of
12 W.R. Grace & Co.?
13    A.   Paul McMahon signed on
14 behalf of Grace and James McKay signed on
15 behalf of Commercial Union.
16    Q.   Were you involved in the
17 negotiation of this settlement
18 agreement?
19    A.   Yes, I was.
20    Q.   And were the payments that
21 were contemplated by this settlement
22 agreement made?
23    A.   Yes, they were.
24    Q.   Do you know whether the

Page 279

1  company on page 35 that's listed as W.R.
2  Grace & Co. is the lead debtor in this
3  bankruptcy case today?
4        MS. ESAYIAN:  Page 25, you
5  mean?
6        MR. BROWN:  Yes, page 25.
7  OB 91 is the Bates number.
8     A.   I assume that it is but
9  it's an assumption.
10    Q.   Okay.
11       (Settlement Agreement,
12    Release and Indemnification/Hold
13    Harmless Agreement Bates stamped
14    SEA 1 through 16 received and
15    marked for identification as Posner
16    Exhibit 18.)
17    Q.   You have before you a
18 document marked Posner-18 and my first
19 question is:  Can you identify this
20 document?
21    A.   This is a settlement
22 agreement entered into by Grace with
23 Unigard -- it's called Unigard Insurance
24 Company here -- relating to

Page 280

1  asbestos-related claims under an excess
2  policy issued by Unigard to Grace.
3     Q.   Were you involved in the
4  negotiation of this agreement?
5     A.   Yes, I was.
6     Q.   Can you identify the
7  signatures that appear on page 16, SEA
8  16?
9     A.   Yeah, Brian Burns signed it
10 on behalf of W.R. Grace and I can't make
11 out the signature of the Unigard person.
12    Q.   Okay.  Were the payments
13 contemplated by this agreement made?
14    A.   Yes.
15       (Settlement Agreement,
16    Release and Indemnification/Hold
17    Harmless Agreement Bates stamped
18    SEA 17 through 31 received and
19    marked for identification as Posner
20    Exhibit 19.)
21    Q.   All right, Mr. Posner, you
22 now have before you Posner-19 and my first
23 question with respect to this document is:
24 Can you identify it for me?

Page 281

1     A.   This is another agreement
2  between Grace and Unigard -- here it says
3  Unigard Security Insurance Company.  I
4  guess the other one does as well --
5  involving another excess policy that
6  Unigard had issued to Grace and this
7  settlement appears to relate to
8  asbestos-related claims.
9     Q.   And it's dated from May of
10 1995?
11    A.   That is correct.
12    Q.   And the two Grace entities
13 that executed the agreement are W.R. Grace
14 & Co.-Conn. and W.R. Grace & Co.,
15 correct?
16    A.   Correct.
17    Q.   And you signed it on behalf
18 of both of those entities?
19    A.   That is correct.
20    Q.   Can you tell me what name
21 W.R. Grace & Co. goes by today that is the
22 entity that signed this agreement?
23    A.   Well, W.R. Grace &
24 Co.-Conn. still exists.  W.R. Grace & Co.

Page 282

1  -- I think when this was signed, I think
2  the W.R. Grace & Co. listed here, I think,
3  was a New York corporation, although maybe
4  I'm confused, so much time has passed.
5  And I think this may be the entity that
6  changed its name to Fresenius. I'm not
7  quite sure. There's been a number of
8  changes over the years.
9      Q.   If it is Fresenius,
10 Fresenius is the -- that's Medical Care
11 Holdings, Inc.?
12     A.   Yes.
13     Q.   Okay.
14     A.   If it is. I'm just not
15 sure. I'm using recollection now. It's
16 going back 14 years. But Conn is listed.
17 I seem to recall the original company was
18 Grace & Co., and Grace & Co. changed its
19 name to W.R. Grace & Co.-Conn. and then
20 they created another corporation, W.R.
21 Grace & Co., and I think that was a New
22 York corporation.
23     Q.   Okay.
24     A.   But again I'm speaking from

Page 283

1  recollection.
2      Q.   And Fresenius Medical Care
3  Holdings, Inc. is not a debtor, correct?
4      A.   They are not a debtor,
5  that's correct.
6      Q.   Were you involved in the
7  negotiations of this agreement?
8      A.   Yes.
9      Q.   And were the payments that
10 were contemplated by this agreement made
11 by Unigard?
12     A.   Yes.
13         (Settlement Agreement,
14         Release and Indemnification/Hold
15         Harmless Agreement Bates stamped
16         SEA 32 through 47 received and
17         marked for identification as Posner
18         Exhibit 20.)
19     Q.   All right, Mr. Posner, you
20 have before you Posner-20. Again, the
21 first question is: Can you identify the
22 document for me?
23     A.   Yeah. This is an
24 agreement -- another agreement entered

Page 284

1  into by Grace and Unigard Security
2  Insurance and this one appears to relate
3  to the Hatco -- I'll call it the Hatco
4  environmental site which is in New Jersey,
5  and this agreement was entered into in
6  July of 1996.
7      Q.   Okay. And who were the
8  entities that are parties to the
9  agreement?
10     A.   W.R. Grace & Co.-Conn.,
11 W.R. Grace & Co. and Unigard Security
12 Insurance Company are the ones that
13 executed the agreement.
14     Q.   And you executed it on
15 behalf of both of the Grace entities?
16     A.   That is correct, yes.
17     Q.   And that was on or around
18 July 11th, 1996?
19     A.   That is correct.
20     Q.   Were you involved in the
21 negotiations of this agreement?
22     A.   Yes, I was.
23     Q.   And I may have asked you
24 this, but were the payments contemplated

Page 285

1  by this agreement made by Unigard?
2      A.   Yes.
3      Q.   Okay. The entity W.R.
4  Grace & Co. that executed this agreement
5  is, to the best of your understanding,
6  Fresenius Medical Care Holdings, Inc.
7  today. Is that correct?
8      A.   Now again I'm speaking from
9  recollection so I think so but I'm just
10 not 100 percent sure because again I think
11 it's the New York corporation. Conn is
12 certainly the Connecticut corporation and
13 Grace & Co. at the time was a New York
14 corporation but I'm speaking from
15 recollection. I mean, it is what it is.
16     Q.   Okay.
17     A.   That's my best
18 recollection.
19         MR. BROWN:  Last one.
20         (Settlement Agreement &
21         Release Bates stamped SEA 48
22         through 61 received and marked for
23         identification as Posner Exhibit
24         21.)



Δ π EXHIBIT __11__
Deponent OSher
Date 5-6-09 Rptr. LL
WWW.DEPOBOOK.COM

## SETTLEMENT AGREEMENT, RELEASE AND
## INDEMNIFICATION/HOLD HARMLESS AGREEMENT

This Settlement Agreement, Release and Indemnification/Hold Harmless Agreement is entered into this __6th__ day of __August__, 1992 by W. R. Grace & Co.-Conn., a Connecticut Corporation, formerly W. R. Grace & Co. ("Grace") (as defined in Section II., H. of this Agreement) and Unigard Security Insurance Company, formerly Unigard Mutual Insurance Company ("Unigard") (as defined in Section II., I. of this Agreement).

### I.    RECITALS

WHEREAS, Grace and Unigard entered into a contract of insurance, Policy No. 1-2517 with a policy period of June 30, 1974 to June 30, 1975 which has limits of liability of Ten Million Dollars ($10,000,000.00) in the aggregate for claims arising out of the "Products-Completed Operations Hazards," as those terms are defined under Policy No. 1-2517 ("the Unigard Policy") or any other policy whose form Unigard may be held to follow.

WHEREAS, numerous Asbestos-Related Claims (as defined in Section II.G. of this Agreement) have been made against Grace.

WHEREAS, in the following lawsuits, there are claims pending between Grace and a number of insurers, including Unigard, seeking declaratory relief and damages with respect to the alleged obligations of the insurers, including Unigard, to defend and indemnify Grace for Asbestos-Related Claims (as defined in Section II., G. of this Agreement) against Grace:

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

Moore, ex rel. State of Mississippi v. The Flintkote
Co., et al. v. Maryland Casualty Co., et al., No. 89-5138(2),
filed in the Circuit Court of Jackson County Mississippi (the
"Mississippi Action");

Independent School District 197, et al. and W. R. Grace
& Co.-Conn. v. Accident & Casualty Co. of Winterthur, et al. No.
19-C4-88-007950, filed in the District Court of the County of
Dakota, Minnesota (the "Minnesota Action");

W. R. Grace & Co.-Conn. v. Admiral Insurance Co., et
al., No. 91-048251, filed in the District Court of Harris County,
Texas (the "Houston Action");

Dayton Independent School District, et al. v. United
States Mineral Products Co. and W. R. Grace & Co.-Conn. v.
Admiral Insurance Co., et al., No. B-87-00507, filed in the
United States District Court for the Eastern District of Texas,
Beaumont (the "Beaumont Action");

Maryland Casualty Company v. W. R. Grace & Co., et al.,
No. 88 Civ. 2613 (SWK), filed in the United States District Court
for the Southern District of New York (the "New York Action");

American Employers Insurance Company, et al. v. W.R.
Grace & Co.-Conn., et al., No. 6241-92, filed in the Supreme
Court of the State of New York, County of New York (the "New York
State Court Action"); and

W. R. Grace & Co.-Conn. v. Admiral Insurance Company,
et al., No. BC 050432, filed in the Superior Court of the County
of Los Angeles, California (the "California Action").

2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000002

These lawsuits shall be referred to collectively as "the insurance coverage litigation."

WHEREAS, Unigard denies that it has any obligation to defend or indemnify Grace in connection with any Asbestos-Related Claims.

WHEREAS, Grace and Unigard have incurred attorneys' fees and other expenses in connection with the insurance coverage litigation.

WHEREAS, Grace and Unigard anticipate that additional attorneys' fees and expenses will be incurred by each of them if they are required to pursue further and defend against the insurance coverage litigation, and Grace and Unigard desire to resolve amicably and discontinue the insurance coverage litigation with respect to the Unigard Policy and to avoid the costs and risks of such litigation by entering into this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and intending to be legally bound hereby, Grace and Unigard agree as follows:

II.   <u>DEFINITIONS</u>

A.   The definitions of the terms "Personal Injuries" and "Property Damage" shall be the same as those terms are defined in the Unigard Policy or any other policy whose form the Unigard Policy may be held to follow.

3

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000003

B.   "Asbestos-Related Products Personal Injury Claims" shall mean any and all claims for Personal Injuries arising from asbestos products manufactured, sold, handled or distributed by Grace or by others trading under its name or arising from products manufactured, sold, handled or distributed by Grace which allegedly contain asbestos or to which asbestos was allegedly added as an ingredient.

C.   "Asbestos-Related Products Property Damage Claims" shall mean any and all claims for Property Damage arising from asbestos products manufactured, sold, handled or distributed by Grace or by others trading under its name or arising from products manufactured, sold, handled or distributed by Grace which allegedly contain asbestos or to which asbestos was allegedly added as an ingredient.

D.   "Products Personal Injury Claims" shall mean claims for Personal Injuries that fall within the "Products-Completed Operations Hazards," as those terms are defined in the Unigard Policy or any other policy whose form the Unigard Policy may be held to follow.   Products Personal Injury Claims include, but are not limited to, Asbestos-Related Products Personal Injury Claims.

E.   "Products Property Damage Claims" shall mean claims for Property Damage that fall within the "Products-Completed Operations Hazards," as those terms are defined in the Unigard Policy or any other policy whose form the Unigard Policy may be held to follow.   Products Property Damage Claims include, but are not limited to, Asbestos-Related Products Property Damage Claims.

4

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

F.   "Products Claims" shall mean both Products Personal Injury Claims and Products Property Damage Claims as those terms are defined above.

G.   "Asbestos-Related Claims" shall mean both Asbestos-Related Products Personal Injury Claims and Asbestos-Related Products Property Damage Claims as those terms are defined above.

H.   "Grace" shall mean W.R. Grace & Co. -- Conn., its predecessors, successors, divisions, subdivisions, departments and subsidiary companies or corporations.

I.   "Unigard" shall mean Unigard Security Insurance Company, John Hancock Mutual Life Insurance Company, John Hancock Property & Casualty Holding Company, John Hancock Management Company, any entity owned or controlled by any of them, and the past and present directors, officers, employees, parents, subsidiaries, predecessors, and successors of each of the foregoing, together with the assigns of any rights or obligations of any of them under the Unigard Policy.

III.  PAYMENT BY UNIGARD IN COMPROMISE OF DISPUTED CLAIMS

Within twenty one days after the date of the execution of this Agreement, Unigard will pay to Grace the sum of Ten Million Dollars ($10,000,000.00), the full aggregate limits of liability under the Unigard Policy for claims arising out of the "Products-Completed Operations Hazards," as those terms are defined under the Unigard Policy or any other policy whose form

5

SEA-000005

Unigard may be held to follow (the "Settlement Amount").  Grace
will provide to Unigard any information that Unigard shall
reasonably request relating to the Products Claims.  Unigard
shall not seek to recover from any of Grace's insurers any
portion of the Settlement Amount other than any amounts owed to
Unigard arising out of agreements to provide reinsurance to
Unigard under the Unigard Policy.

IV.   <u>RELEASE</u>

In consideration of the payment by Unigard of the
Settlement Amount and the mutual release of rights contained
herein, Grace does hereby fully and forever release and discharge
Unigard, its agents, reinsurers and attorneys from any obligation
under the Unigard Policy for any and all past, present, or future
claims, demands, obligations, suits, actions, causes of action
and rights whatsoever for indemnity, defense and/or damages
(including compensatory, punitive, exemplary, extracontractual or
statutory) or other payments of any nature, which Grace may have
or otherwise be required to pay, or which may hereafter accrue,
(a) on account of, in any way growing out of, or in any way
related to Products Claims under the Unigard Policy, whether
known or unknown as of the date of execution of this Agreement;
and (b) for any damages (including compensatory, punitive,
exemplary, extracontractual or statutory) based upon any
allegations of bad faith, unfair claim practice, unfair trade
practice or other act or failure to act arising out of Unigard's

6

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

role as an insurer under the Unigard Policy with respect to any Products Claims whatsoever.

Grace's release of Unigard shall in no event inure to the benefit of any other insurance company that, at any time after the date this Agreement is executed, is merged into Unigard, or in which Unigard, at any time after the date this Agreement is executed, acquires a controlling interest. This release shall not prevent Grace from asserting against Unigard, its agents, reinsurers and attorneys any claim which Grace may have, or which may hereafter accrue, (a) on account of, in any way growing out of, or in any way related to Products Claims, whether known or unknown as of the date of this Agreement, under any insurance policy issued by Unigard other than the Unigard Policy; and (b) for any damages (including compensatory, punitive, exemplary, extracontractual or statutory) based upon any allegations of bad faith, unfair claim practice, unfair trade practice or other act or failure to act arising out of Unigard's role as an insurer under any insurance policy issued by Unigard other than the Unigard Policy with respect to any Products Claims whatsoever.

V.    INDEMNIFICATION/HOLD HARMLESS AGREEMENT

A.    In further consideration of the Settlement Amount, Grace agrees to indemnify, to hold Unigard harmless from and to reimburse Unigard for the full amount of any judgment, award, payment, settlement, suit or claim against Unigard by any other insurance carrier seeking contribution under the Unigard Policy

7

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000007

for Product Claims, or by any other person or entity claiming any right, assignment of rights, rights of subrogation, title or interest in or under the Unigard Policy for Product Claims, including without limitation claims for damages (including compensatory, punitive, exemplary, extracontractual or statutory) caused or allegedly caused in whole or in part by the conduct of Unigard under the Unigard Policy with respect to such Product Claims; but provided, however, that in no event shall Grace be obligated to indemnify, to hold Unigard harmless from or to reimburse Unigard for (i) any claim arising out of reinsurance provided to Unigard under the Unigard Policy, or (ii) the amount of any payment or settlement entered into by Unigard without the prior consent of Grace, which consent shall not be unreasonably withheld.

      B.   Grace also agrees to indemnify Unigard for all costs and reasonable attorneys' fees associated with the claims for which Grace is obligated to indemnify Unigard as set forth in paragraph A of this Article, and which are incurred after the execution of this Agreement, but excluding any costs associated with the enforcement of this Agreement. Unigard immediately shall advise Grace of the pendency of any suit or claim for which Grace is obligated to indemnify Unigard as set forth in Article V of this Agreement and keep Grace informed of any developments with respect to such claims or suits, including but not limited to any discovery requests and any motions.

      C.   Unigard shall defend diligently and in good faith

8

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000008

any claim for which Grace is obligated to indemnify Unigard as set forth in paragraph A of this Article, utilizing the services of Taylor, Anderson & Travers or, at Unigard's option, other counsel approved by Grace.

D.    Unigard shall not incur costs or attorneys' fees without the prior approval of Grace, which approval shall not be unreasonably withheld.

E.    Grace has the right, at its own expense, to participate in the defense of Unigard.

F.    In the event that Unigard, while defending any claim described in paragraph A of this Article, incurs costs or attorneys' fees relating both to the Unigard Policy and other insurance policies issued by Unigard, Grace shall only be required to indemnify Unigard for that portion of such costs relating to the Unigard Policy.   The parties agree to use their best efforts to reach agreement on allocation of such costs.    Any dispute between the parties over the allocation of such costs which cannot be resolved by agreement shall be resolved through arbitration.

VI.    NO ADMISSIONS BY THE PARTIES

A.    The payment by Unigard of the Settlement Amount and its receipt by Grace is for the compromise of disputed claims, and neither such payment nor its receipt shall be construed as an admission by Unigard or Grace that any coverage or obligation to pay exists or does not exist under any Unigard

9

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

policy for defense or indemnity of Grace for claims of any
nature.  By entering into this Agreement, Unigard does not admit
that it has any liability or obligation to Grace or to any other
person.

   B. Further, this Agreement is not intended to be, nor
shall it be construed as, an admission with respect to policy
interpretation or as an admission by any party regarding any
duties, rights or obligations arising under the Unigard Policy or
any other policy of insurance issued by Unigard to Grace or
anyone else.  Nothing in this Agreement shall be deemed to
constitute a release, compromise, waiver or an estoppel of any
right of Grace or Unigard to assert any claim or defense pursuant
to any policy of insurance issued by Unigard or any other
insurer.

### VII. DISMISSAL WITH PREJUDICE OF CERTAIN ACTIONS, CLAIMS, AND CAUSES OF ACTION

   A. Upon the execution of this Agreement by the
parties, Grace will dismiss with prejudice the claims and causes
of action Grace has asserted against Unigard relating to the
Unigard Policy in the Mississippi Action, the Minnesota Action,
the Houston Action, the Beaumont Action, the New York Action and
the California Action.  Further, Grace will make all reasonable
efforts to cause the remaining plaintiffs in the Minnesota Action
to dismiss with prejudice the claims and causes of action they
have asserted against Unigard relating to the Unigard Policy in
the Minnesota Action.  Further, Grace will dismiss with prejudice

10

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000010

its Sixth Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing against Unigard under the Unigard Policy contained in the First Amended Complaint for Declaratory Relief, Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing in the California Action.

B.    Unigard will dismiss with prejudice the claims and causes of action Unigard has asserted against Grace relating to the Unigard Policy in the New York State Court Action.

C.    Each party shall bear its own past costs and attorneys' fees incurred in connection with the insurance coverage litigation and any such costs and fees incurred to negotiate or implement the terms of this Agreement.

D.    Grace will cooperate with Unigard to minimize and prevent the possibility of the prosecution of cross-claims or other actions against Unigard by any other party.

VIII.    NO CONSTRUCTION AGAINST EITHER PARTY

The wording of this Agreement was reviewed and accepted by legal counsel for Grace and Unigard prior to its being signed by them.    Any ambiguities in the language of this Agreement shall not be construed against either party on the grounds that the party was the alleged drafter of the language in the event of any dispute arising between them in connection with this Agreement.

11

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000011

## IX.    INADMISSIBILITY OF AGREEMENT

Any evidence of the existence, terms or negotiation of
this Agreement shall be inadmissible in any litigation, action or
other proceeding, provided, however, that such evidence may be
offered in an action seeking solely to enforce the terms of this
Agreement or in connection with any litigation, action or other
proceeding, between Unigard and any of its reinsurers or in
connection with any litigation, action or other proceeding to
establish exhaustion of the Unigard Policy.  In any litigation,
action or other proceeding where exhaustion of the Unigard Policy
is at issue, Unigard shall, subject to the provisions of Article
VI of this Agreement, reasonably assist Grace in establishing
that the Unigard Policy's limits of liability applicable to
Products Claims properly have been exhausted.  This Agreement has
been entered into in reliance upon the provisions of Rule 408 of
the Federal Rules of Evidence and similar state law provisions
which preclude the introduction of evidence regarding settlement
negotiations or agreements.

## X.    APPLICATION OF AGREEMENT ONLY TO THE PARTIES

This Agreement is intended to confer rights and
benefits only on the parties hereto and only with respect to the
terms and conditions set forth herein.

12

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000012

XI. **ENTIRE AGREEMENT/AMENDMENTS TO AGREEMENT**

This Agreement is the complete and entire agreement of the parties and may not be modified, changed, contradicted, added to, or altered in any way by any previous written or oral agreements or any subsequent oral agreements. No amendments or variations of the terms of the Agreement shall be valid unless made in writing and signed by both parties.

XII. **CONFIDENTIALITY**

The terms and conditions of this Agreement shall remain confidential and shall not be disclosed to any person or entity without the prior written consent of both parties, except: as required by contract or by authority of a court, administrative tribunal, arbitration panel, regulatory agency; in the normal course of business for such purposes as audits and accounting; or, where exhaustion of the Unigard Policy's limits of liability applicable to Products Claims are at issue, to Grace's other insurers, to underlying claimants and to any other person or entity. Should a court order the disclosure of the terms of this Agreement to any other person or entity, the parties shall use their reasonable efforts to maintain its terms under seal and/or protective order.

13

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000013

## XIII.    REPRESENTATION AND WARRANTIES

Each party represents and warrants to the other:

A.    that it is fully authorized to enter into this Agreement;

B.    that it is a corporation, duly organized and validly existing in good standing under the laws of one of the states of the United States of America;

C.    that it has taken all necessary corporate and internal legal actions to duly approve the making and performance of this Agreement and that no further governmental, regulatory, corporate or other internal approval is necessary;

D.    that the making and performance of this Agreement will not violate any provision of law or of its articles of incorporation, charter or by-laws;

E.    that it has read this entire Agreement and knows the contents hereof, that the terms hereof are contractual and not merely recitals, and that it has signed this Agreement of its own free act;

F.    that in making this Agreement, it has obtained the advice of legal counsel; and

G.    that there are no pending agreements, transactions or negotiations to which it is a party that would render this Agreement or any part thereof void, voidable or unenforceable.

14

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

XIV. <u>NOTICE</u>

All notices or other communications which any party desires or is required to give shall be given in writing and shall be deemed to have been given if sent by certified mail to the party at the address noted below or such other address as a party may designate in writing from time to time:

```
W. R. Grace & Co. - Conn.
Attn: Secretary
W. R. Grace & Co.
One Town Center Road
Boca Raton, Florida  33486
```

with a copy to:

```
Director of Corporate Risk Management
W. R. Grace & Co.
One Town Center Road
Boca Raton, Florida  33486
```

```
Unigard Security Insurance Company
Attn:  General Counsel
P.O. Box 90701
15805 N.E. 24th Street
Bellevue, Washington  98008
```

and

```
John Hancock Property and Casualty Company
Attn: General Counsel
P.O. Box 854
3 Copley Place
Boston, Massachusetts  02117
```

15

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000015

with a copy to:

      Allan E. Taylor, Esq.
      Taylor, Anderson & Travers
      75 Federal Street
      Boston, Massachusetts  02110

                W. R. GRACE & CO.–CONN.

Date:  8/6/92                  By _____
                   Its  VICE PRESIDENT

                UNIGARD SECURITY INSURANCE COMPANY

Date:  8/3/92                  By _____
                   Its  Assistant Secretary

16

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000016