# EXHIBIT 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 01-01139 JKF |
| W.R. Grace & Co., *et al.* | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |

## DECLARATION OF MICHAEL J. POWERS
## PURSUANT TO 28 U.S.C. § 1746

I, Michael J. Powers, do hereby declare as follows:

1.     I am Assistant Vice President – Direct Claims at Resolute Management, Inc. –
New England Division ("Resolute-NE"), with offices at Two Central Square, Cambridge,
Massachusetts 02139-3111.

2.     Resolute-NE has been designated by Seaton Insurance Company, as successor in
interest to Unigard Mutual Insurance Company and Unigard Security Insurance Company
("Seaton"), as its Claims Administrator with respect to certain claims and coverage issues related
to certain policies of insurance issued by Seaton to W.R. Grace & Company, *et al.* I am the
Resolute-NE employee charged with handling this account, and in that capacity I have
knowledge regarding the documents attached and described below.

3.     I make this declaration in support of the Final Objections of OneBeacon America
Insurance Company and Seaton Insurance Company to Confirmation of Amended Joint Plan of
Reorganization (the "Plan Objections"), as well as to put certain information and documents
before the Court that are pertinent to the Plan Objections.

4.     Attached hereto as Exhibit A is a true and correct copy of Seaton Policy No.
1-2517, issued to W.R. Grace & Company, *et al.*, by Unigard Mutual Insurance Company for the

period 6/30/74 to 6/30/75, as obtained from records maintained by Seaton in the regular course of business.

I, Michael J. Powers, do hereby declare under penalty of perjury that the foregoing is true and correct. Executed on May 19 , 2009 at Cambridge, Massachusetts.

Michael J. Powers

# EXHIBIT A

# UNIGARD MUTUAL INSURANCE COMPANY

DECLARATIONS — PART B

No. 2517

| AMOUNT | RATE | PREMIUM |
|---|---|---|
| 10 MILLION | | $ 590,000. |
| EXCESS UNDERLYING | | $ |
| | | $ |
| | | $ |
| TOTAL ▶ | | $590,000. |

**ASSURED'S NAME**
W. R. GRACE AND COMPANY, INC. ET AL.

**ADDRESS**
114 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK

**POLICY PERIOD**
FROM JUNE 30, 1974 TO JUNE 30, 1977
BOTH DAYS AT 12:01 A.M. (STANDARD TIME) AT THE LOCATION(S) OF THE RISK(S) INSURED AND IN ACCORD WITH THE TERMS AND CONDITIONS OF THE FORM(S) ATTACHED.

## COVERAGE

MARSH & McLENNAN
7-1/2%
NEW

ALLEN, MILLER & ASSOCIATES, INC.
Underwriting Managers

AUTHORIZED BY _____

THIS DECLARATIONS PAGE, WITH "POLICY PROVISIONS—PART A", AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THE ABOVE POLICY.
OFFICE COPY

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SEA-000080

DECLARATIONS

POLICY NUMBER:  1-2517

ITEM 1.  NAMED INSURED:

W. R. GRACE & CO. AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED
COMPANIES OR OWNED AND CONTROLLED AND/OR MANAGED COMPANIES AS
NOW OR HEREAFTER CONSTITUTED.

ADDRESS:

1114 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK

ITEM 2.  POLICY PERIOD:

FROM JUNE 30, 1974 TO JUNE 30, 1977
12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED
AS STATED HEREIN

ITEM 3.  UNDERLYING INSURANCE

(SEE ATTACHED)

ITEM 4.  UNDERLYING LIMITS:

$100,000.00 UNITED STATES, ITS TERRITORIES, POSSESSIONS, AND
CANADA
$250,000.00 FOREIGN

ITEM 5.  LIMITS OF LIABILITY - ULTIMATE NET LOSS:

$10,000,000.00 EACH OCCURRENCE
$10,000,000.00 AGGREGATE

ITEM 6.  PREMIUM:  $590,000.

ALLEN, MILLER & ASSOCIATES, INC.
Underwriting Managers

BY:  _____

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SCHEDULE OF UNDERLYING INSURANCE - ITEM 3.

| | | |
|---|---|---|
| GENERAL LIABILITY | BI | $1,000,000 EACH OCCURRENCE |
| | PD | 1,000,000 EACH OCCURRENCE |
| AUTOMOBILE LIABILITY | BI | 1,000,000 EACH OCCURRENCE |
| | PD | 1,000,000 EACH OCCURRENCE |
| PRODUCTS LIABILITY | BI | 1,000,000 EACH OCCURRENCE |
| | | 2,000,000 ANNUAL AGGREGATE |
| | PD | 1,000,000 EACH OCCURRENCE |
| | | 2,000,000 ANNUAL AGGREGATE |
| ARCHITECTS AND ENGINEERS | | 5,000,000 PER CLAIM AND AGGREGATE |
| ERRORS AND OMISSIONS | | |
| E.L. E.L.O.D. | | 100/100,000 |
| JONES ACT | | 100/100,000 |
| F.L.H.W.A. | | 100/100,000 |
| ADVERTISERS LIABILITY | | 250,000 EACH OCCURRENCE |
| AIRCRAFT LIABILITY | | 10,000,000 CSL |
| PASSENGER LIABILITY | | 100,000 PER PERSON (INCLUDING CREW) |
| BAGGAGE LIABILITY | | 2,500 PER PASSENGER |
| CARE, CUSTODY OR CONTROL | | 1,000,000 (WITH RESPECT TO HANGARS, |
| | | BUILDINGS OR OTHER PROPERTY OR CONTEN |
| | | THEREOF NOT OWNED BY INSURED, EXCEPT |
| | | IF REQUIRED BY LEASE OR OTHER AGREEM |
| | | OR IF INSURANCE IS PURCHASED.) |
| NON-OWNERSHIP HULL LIABILITY | | 100,000 |
| WATERCRAFT LIABILITY | | |
| CHARTERER'S LIABILITY | | 2,000,000 DAMAGE TO VESSEL & CARGO |
| | | 2,000,000 DEMURRAGE AND REMOVAL OF WI |
| | | 2,000,000 COLLISION (THIRD PARTY) |
| | | INCLUDING DEMURRAGE |
| | | 2,000,000 EACH PERSON |
| | | 2,000,000 EACH OCCURRENCE THIRD PART |
| | | BODILY INJURY LIABILITY INCLUDING |
| | | LIABILITY TO CREW OF CHARTERED VESS |

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

| | | | |
|---|---|---|---|
| CHARTERER'S LIABILITY | | | $2,000,000 DAMAGE T<br>AND CARGO $2,000,0<br>DEMURRAGE AND REMO<br>WRECK<br>$2,000,000 COLLISIO<br>(THIRD PARTY) INCL<br>DEMURRAGE<br>$2,000,000 EACH PER<br>$2,000,000 EACH OCC<br>THIRD PARTY BODILY<br>LIABILITY INCLUDIN<br>LIABILITY TO CREW (<br>CHARTERED VESSEL |
| AUTOMOBILE NON-OWNERSHIP<br>WORLDWIDE EXCLUDING USA<br>AND IRON CURTIN COUNTRIES | B.I.<br><br>P.D. | $ 250,000 EACH PER<br>$1,000,000 EACH ACC<br>$ 250,000 EACH ACC |

II.   GRACE PETROLEUM CORPORATION - LIBYA

| | | | |
|---|---|---|---|
| GENERAL/AUTOMOBILE LIABILITY | B.I.<br><br>P.D. | $ 250,000 EACH PERS<br>$ 300,000 EACH OCCU<br>$ 250,000 EACH ACCI<br>AND AGGREGATE |
| EMPLOYERS LIABILITY | | $ 250,000 EACH PERS<br>$ 250,000 EACH ACCI |

III.   GRACY Y CIA PERU.

| | | |
|---|---|---|
| EMPLOYERS LIABILITY | $ 100,000 EACH PERS<br>$ 500,000 EACH ACCI |

IV.   FEDERATION CHEMCIALS LTD., ETAL

| | | | |
|---|---|---|---|
| EMPLOYERS LIABILITY | | | $ 500,000 EACH ACCI |
| GENERAL LIABILITY INCLUDING<br>30 FEET OR LESS OWNED WATER CRAFT | B.I.<br><br><br>P.D. | $ 250,000 EACH PERS<br>$1,000,000 EACH ACCI<br>$1,000,000 AGGREGATE<br>PRODUCTS<br>$1,000,000 AGGREGATE<br>OPERATIONS, PROTECT<br>PRODUCTS AND CONTRA |

V.   PM & G. ASSOCIATES, INC., AND HARRY<br>HENNER & SONS, INC.

| | |
|---|---|
| INSURANCE BROKERS ERROR & OMISSIONS | $ 250,000 INDEMNITY |
| EXCESS INSURANCE BROKERS ERRORS &<br>OMMISSIONS | $5,000,000 |

ATTACHED TO AND FORMING PART OF POLICY NUMBER 1-2517 OF THE UNIGARD MUTUA
INSURANCE COMPANY

ALLEN, MILLER AND ASSOCIATES, INC.
Underwriting Managers

BY _____

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SEA-000083

AMENDED

SCHEDULE OF UNDERLYING INSURANCE – ITEM 3

| | | |
|---|---|---|
| GENERAL LIABILITY | B.I. | $1,000,000 EACH OCCURR |
| (INCLUDING WATERCRAFT) | P.D. | $1,000,000 EACH OCCURR |
| (A) EMPLOYEE BENEFITS | | $ 250,000 EACH CLAIM |
| | | $ 750,000 AGGREGATE |
| (B) CARE CUSTODY AND CONTROL | | $ 200,000 EACH OCCURR |
| | | AND AGGREGATE |
| AUTOMOBILE LIABILITY | B.I. | $1,000,000 EACH OCCURR |
| | P.D. | $1,000,000 EACH OCCURR |
| PRODUCTS LIABILITY | B.I. | $1,000,000 EACH OCCURR |
| | | $2,000,000 ANNUAL AGGR |
| | P.D. | $1,000,000 EACH OCCURR |
| | | $2,000,000 ANNUAL AGGR |
| (A) PRODUCTS RECALL EXPENSE | | $ 200,000 AGGREGATE |
| ARCHITECTS AND ENGINEERS | | |
| ERRORS AND OMMISSIONS | | $5,000,000 PER CLAIM A |
| | | AGGREGATE |
| E.L.E.L.O.D. | | $ 100/100,000 |
| JONES ACT | | $ 100/100,000 |
| F.L.H.W.A. | | $ 100/100,000 |
| ADVERTISERS LIABILITY | | $ 250,000 EACH OCCURR |
| AIRCRAFT LIABILITY | | $10,000,000 CSL INCLUD |
| (EXCLUDING NON-OWNERSHIP) | | VOLUNTARY SETTLEMENTS |
| | | $100,000 PER PERSON – |
| | | INCLUDING CREW (PART : |
| | | NOT IN ADDITION TO TH |
| | | $10,000,000 LIMIT) |
| (A) BAGGAGE LIABILITY | | $ 2,500 PER PASSEN |
| (B) CARE, CUSTODY OR CONTROL | | $1,000,000 (WITH RESPE |
| | | HANGERS, BUILDINGS OR |
| | | PROPERTY OR CONTENTS |
| | | OF NOT OWNED BY INSUR |
| | | EXCEPT IF REQUIRED BY |
| | | OR OTHER AGREEMENT OR |
| | | INSURANCE IS PURCHASE |
| (C) NON-OWNERSHIP HULL LIABILITY | | $ 100,000 PER OCCURRE |
| | | AND AGGREGATE |
| (D) AIRCRAFT NON-OWNERSHIP LIABILITY | | $10,000,000 CSL EXCLUD |
| | | VOLUNTARY PAYMENTS EX |
| | | FOR THE OPERATIONS OF |
| | | AGRICULTURAL CHEMICAL |
| | | GROUP OF WHICH $100,0 |
| | | PERSON AND $700,000 P |
| | | ACCIDENT IS AFFORDED : |
| | | $100,000 PER PERSON A |
| | | $500,000 FOR MULTI-EN |
| | | AIRCRAFT OPERATED BY : |
| | | S.A., FAUCETT, S.A., |
| | | SATCO AND HIRED BY GR |
| | | CIA. |

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SEA-000084

UNIGARD MUTUAL INSURANCE COMPANY

(HEREIN CALLED THE COMPANY)

AGREES WITH THE INSURED, NAMED IN THE DECLARATIONS MADE A PART HEREOF, IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM AND IN RELIANCE UPON THE STATEMENTS IN THE DECLARATIONS AND SUBJECT TO THE LIMITS OF LIABILITY, EXCLUSIONS, CONDITIONS AND ALL OTHER TERMS OF THIS POLICY:

## INSURING AGREEMENTS

I.  COVERAGES:  TO INDEMNIFY THE INSURED FOR ALL SUMS WHICH THE INSURED SHALL BE OBLIGATED TO PAY BY REASON OF THE LIABILITY IMPOSED UPON HIM BY LAW, OR LIABILITY ASSUMED BY HIM UNDER CONTRACT OR AGREEMENT FOR DAMAGE, AND EXPENSES, ALL AS INCLUDED IN THE DEFINITION OF "ULTIMATE NET LOSS", BECAUSE OF:

    (A)  PERSONAL INJURIES, AS HEREINAFTER DEFINED;

    (B)  PROPERTY DAMAGE, AS HEREINAFTER DEFINED;

    (C)  ADVERTISING LIABILITY, AS HEREINAFTER DEFINED.

II.  DEFINITIONS:

    1.  INSURED.

        THE UNQUALIFIED WORD "INSURED" INCLUDES THE NAMED INSURED AND ALSO INCLUDES:

        (A)  EXCEPT WITH RESPECT TO LIABILITY ARISING OUT OF THE OWNER-SHIP, OPERATION, MAINTENANCE, USE, LOADING AND UNLOADING OF AUTOMOBILES, AIRCRAFT AND WATERCRAFT, ANY OFFICER, DIRECTOR, STOCKHOLDER, OR EMPLOYEE OF THE NAMED INSURED, WHILE ACTING WITHIN THE SCOPE OF HIS DUTIES AS SUCH, AND ANY ORGANIZATION OR PROPRIETOR WITH RESPECT TO REAL ESTATE MANAGEMENT FOR THE NAMED INSURED.  IF THE NAMED INSURED IS A PARTNERSHIP, ANY PARTNER THEREIN BUT ONLY WITH RESPECT TO HIS LIABILITY AS SUCH;

        (B)  ANY OTHER PERSON OR ORGANIZATION WHO IS AN ADDITIONAL INSURED UNDER ANY UNDERLYING POLICY OF INSURANCE SUBJECT TO ALL THE LIMITATIONS UPON COVERAGE UNDER SUCH POLICY OTHER THAN THE LIMITS OF THE UNDERLYING INSURER'S LIABILITY;

        (C)  WITH RESPECT TO ANY AUTOMOBILE OWNED BY THE NAMED INSURED OR HIRED FOR USE BY OR ON BEHALF OF THE NAMED INSURED, OR TO ANY AIRCRAFT HIRED FOR USE BY OR ON BEHALF OF THE NAMED INSURED, ANY PERSON WHILE USING SUCH AUTOMOBILE OR SUCH AIRCRAFT AND ANY PERSON OR ORGANIZATION LEGALLY RES-PONSIBLE FOR THE USE THEREOF, PROVIDED THE ACTUAL USE THEREOF IS WITH THE PERMISSION OF THE NAMED INSURED.  THE INSURANCE AFFORDED BY THIS SUB-DIVISION (C), WITH RESPECT TO ANY PERSON OR ORGANIZATION OTHER THAN THE NAMED INSURED DOES NOT APPLY —

            1.  TO ANY PERSON OR ORGANIZATION, OR TO ANY AGENT OR EMPLOYEE THEREOF, OPERATING AN AUTOMOBILE REPAIR SHOP, PUBLIC GARAGE, SALES AGENCY, SERVICE STATION OR PUBLIC PARKING PLACE, WITH RESPECT TO ANY OCCURRENCE ARISING OUT OF THE OPERATION THEREOF;

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

2. TO (i) ANY MANUFACTURER OF AIRCRAFT ENGINES OR COMPONENT PARTS OF AIRCRAFT, OR AVIATION ACCESSORIES, OR (ii) ANY AIRCRAFT SALES OR SERVICE OR REPAIR ORGANIZATION, OR (iii) ANY SELLER OF AIRCRAFT SUPPLIES, ACCESSORIES, EQUIPMENT OR COMPONENT PARTS OF AIRCRAFT OR (iv) ANY AIRPORT OR HANGAR OPERATOR OR (v) THE RESPECTIVE EMPLOYEES OR AGENTS OF ANY OF THE AFOREMENTIONED WITH RESPECT TO ANY OCCURRENCE ARISING OUT OF THE OPERATIONS OF ANY OF THE AFOREMENTIONED;

3. WITH RESPECT TO ANY HIRED AUTOMOBILE OR AIRCRAFT, TO THE OWNER OR LESSEE THEREOF, OTHER THAN THE NAMED INSURED, OR ANY EMPLOYEE OF SUCH OWNER OR LESSEE.

EXCEPT WITH RESPECT TO SUB-PARAGRAPH 2 HEREOF, THIS SUB-DIVISION (C) SHALL NOT APPLY IF IT RESTRICTS THE INSURANCE GRANTED UNDER SUB-DIVISION (B) ABOVE.

(D) ANY PERSON, ORGANIZATION, TRUSTEE OR ESTATE OTHER THAN AS DESCRIBED IN SUB-DIVISION (A), (B) AND (C) HEREOF AND OTHER THAN AS EXCLUDED IN SUB-PARAGRAPHS 1, 2 AND 3 OF SUB-DIVISION (C) HEREOF, TO THE EXTENT THAT AND FOR SUCH LIMITS OF LIABILITY AS THE NAMED INSURED HAS AGREED IN WRITING PRIOR TO THE HAPPENING OF ANY OCCURRENCE COVERED HEREUNDER TO PROVIDE INSURANCE FOR SUCH INTERESTS, BUT ONLY WITH RESPECT TO OPERATIONS PERFORMED BY OR ON BEHALF OF THE NAMED INSURED; PROVIDED, HOWEVER, IN NO EVENT SHALL SUCH INSURANCE EXCEED THE INSURANCE OTHERWISE PROVIDED UNDER THIS POLICY, INCLUDING THE APPLICABLE LIMITS OF LIABILITY OF THIS POLICY.

2. PERSONAL INJURIES.

THE TERM "PERSONAL INJURIES" SHALL MEAN BODILY INJURY, SICKNESS OR DISEASE, MENTAL INJURY, MENTAL ANGUISH, MALPRACTICE, SHOCK, DISABILITY, FALSE ARREST, FALSE IMPRISONMENT, WRONGFUL EVICTION, DETENTION, MALICIOUS PROSECUTION, DISCRIMINATION, HUMILIATION, INVASION OF RIGHT OF PRIVACY, LIBEL, SLANDER OR DEFAMATION OF CHARACTER, INCLUDING DEATH AT ANY TIME RESULTING THEREFROM.

3. PROPERTY DAMAGE.

THE TERM "PROPERTY DAMAGE" MEANS (A) INJURY TO, OR DESTRUCTION OF PROPERTY, INCLUDING THE LOSS OF USE THEREOF, OR (B) LOSS OR USE OF PROPERTY WHICH HAS NOT BEEN PHYSICALLY INJURED OR DESTROYED PROVIDED SUCH LOSS OF USE IS CAUSED BY AN OCCURRENCE.

4. ADVERTISING LIABILITY.

THE TERM "ADVERTISING LIABILITY" SHALL MEAN (1) LIBEL, SLANDER OR DEFAMATION, (2) ANY INFRINGEMENT OF COPYRIGHT OR OF TITLE OR OF SLOGAN, PIRACY OR UNFAIR COMPETITION OR IDEA MISAPPROPRIATION UNDER AN IMPLIED CONTRACT, OR (3) ANY INVASION OR RIGHT OF PRIVACY - ALL COMMITTED OR ALLEGED TO HAVE BEEN COMMITTED IN ANY ADVERTISEMENT, PUBLICITY ARTICLE, BROADCAST OR TELECAST AND ARISING OUT OF THE NAMED INSURED'S ADVERTISING ACTIVITIES.

5. ULTIMATE NET LOSS.

THE TERM "ULTIMATE NET LOSS" SHALL MEAN THE TOTAL SUM WHICH THE INSURED, OR ANY COMPANY AS HIS INSURER, OR BOTH, BECOMES LEGALLY OBLIGATED TO PAY AS DAMAGES BECAUSE OF PERSONAL INJURY, PROPERTY DAMAGE, OR ADVERTISING LIABILITY CLAIMS, EITHER THROUGH ADJUDI-CATION OR COMPROMISE, AND SHALL ALSO INCLUDE HOSPITAL, MEDICAL AND FUNERAL CHARGES AND ALL SUMS PAID AS SALARIES, WAGES COM-PENSATION, FEES, CHARGES AND LAW COSTS, PREMIUMS ON ATTACHMENT OR APPEAL BONDS, INTEREST ON JUDGMENTS, EXPENSES FOR DOCTORS,

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

LAWYERS, NURSES, AND INVESTIGATORS AND OTHER PERSONS, AND FOR LITIGATION, SETTLEMENT, ADJUSTMENT AND INVESTIGATION OF CLAIMS AND SUITS WHICH ARE PAID AS A CONSEQUENCE OF ANY OCCURRENCE COVERED HEREUNDER, EXCLUDING ONLY THE SALARIES OF THE NAMED INSURED'S OR OF ANY UNDERLYING INSURER'S PERMANENT EMPLOYEES.

THE COMPANY SHALL NOT BE LIABLE FOR ANY EXPENSES AS AFORESAID WHEN PAYMENT OF SUCH EXPENSES IS INCLUDED IN OTHER VALID AND COLLECTIBLE INSURANCE.

6.  AUTOMOBILE.

THE TERM "AUTOMOBILE" SHALL MEAN A LAND MOTOR VEHICLE, TRAILER OR SEMI-TRAILER.

7.  AIRCRAFT.

THE WORD "AIRCRAFT" SHALL MEAN HEAVIER THAN AIR OR LIGHTER THAN AIR AIRCRAFT DESIGNED TO TRANSPORT PERSONS OR PROPERTY.

8.  PRODUCTS - COMPLETED OPERATIONS HAZARDS.

THE TERM "PRODUCTS - COMPLETED OPERATIONS HAZARDS" SHALL MEAN LIABILITY ARISING OUT OF.

(1)  GOODS OR PRODUCTS MANUFACTURED, SOLD, HANDLED OR DISTRIBUTED BY THE NAMED INSURED OR BY OTHERS TRADING UNDER HIS NAME, IF THE OCCURRENCE HAPPENS AFTER POSSESSION OF SUCH GOODS OR PRODUCTS HAS BEEN RELINQUISHED TO OTHERS BY THE NAMED INSURED OR BY OTHERS TRADING UNDER HIS NAME AND IF SUCH OCCURRENCE HAPPENS AWAY FROM PREMISES OWNED, RENTED OR CONTROLLED BY THE NAMED INSURED; PROVIDED, SUCH GOODS OR PRODUCTS SHALL BE DEEMED TO INCLUDE ANY CONTAINER THEREOF, OTHER THAN A VEHICLE, BUT SHALL NOT INCLUDE ANY VENDING MACHINE OR ANY PROPERTY, OTHER THAN SUCH CONTAINER, RENTED TO OR LOCATED FOR USE OF OTHERS BUT NOT SOLD;

(2)  OPERATIONS, IF THE OCCURRENCE HAPPENS AFTER SUCH OPERATIONS HAVE BEEN COMPLETED OR ABANDONED AND OCCURS AWAY FROM PREMISES OWNED, RENTED OR CONTROLLED BY THE NAMED INSURED; PROVIDED, OPERATIONS SHALL NOT BE DEEMED INCOMPLETE BECAUSE IMPROPERLY OR DEFECTIVELY PERFORMED OR BECAUSE FURTHER OPERATIONS MAY BE REQUIRED PURSUANT TO AN AGREEMENT; PROVIDED FURTHER, THE FOLLOWING SHALL NOT BE DEEMED TO BE "OPERATIONS" WITHIN THE MEANING OF THIS PARAGRAPH: (A) PICK-UP OR DELIVERY, EXCEPT FROM OR ONTO A RAILROAD CAR, (B) THE MAINTENANCE OF VEHICLES OWNED OR USED BY OR IN BEHALF OF THE INSURED, (C) THE EXISTENCE OF TOOLS, UN-INSTALLED EQUIPMENT AND ABANDONED OR UNUSED MATERIALS. THE WORD "OPERATIONS" INCLUDES ANY ACT OR OMISSION IN CONNECTION WITH OPERATIONS PERFORMED BY OR ON BEHALF OF THE NAMED INSURED ON THE PREMISES OR ELSEWHERE, WHETHER OR NOT GOODS OR PRODUCTS ARE INVOLVED IN SUCH OPERATIONS.

9.  OCCURRENCE.

THE TERM "OCCURRENCE" SHALL MEAN (A) AN ACCIDENT, OR A HAPPENING (B) AN EVENT, OR CONTINUOUS OR REPEATED EXPOSURE TO CONDITIONS, WHICH UNEXPECTEDLY RESULTS IN PERSONAL INJURY, PROPERTY DAMAGE, OR ADVERTISING LIABILITY (EITHER ALONE OR IN ANY COMBINATION) DURING THE POLICY PERIOD. WITH RESPECT TO COVERAGES I (A) AND I (B), EXCEPT WITH RESPECT TO THE PRODUCTS - COMPLETED OPERATIONS HAZARDS, ALL PERSONAL INJURY AND PROPERTY DAMAGE (EITHER ALONE OR IN COMBINATION) ARISING OUT OF ONE EVENT OR CONTINUOUS OR REPEATED EXPOSURE TO SUBSTANTIALLY THE SAME GENERAL CONDITIONS EXISTING AT OR EMANATING FROM ONE PREMISES

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

LOCATION SHALL BE DEEMED TO BE ONE OCCURRENCE.  WITH RESPECT TO
COVERAGES I.(A) AND I.(B), ALL PERSONAL INJURY AND PROPERTY
DAMAGE (EITHER ALONE OR IN COMBINATION) ARISING OUT OF THE
PRODUCTS - COMPLETED OPERATIONS HAZARDS SHALL BE DEEMED TO BE
ONE OCCURRENCE IF ARISING OUT OF ONE LOT OF GOODS OR PRODUCTS
PREPARED OR ACQUIRED BY THE NAMED INSURED OR OTHERS TRADING
UNDER HIS NAME.  WITH RESPECT TO COVERAGE I (C), ALL PERSONAL
INJURY AND PROPERTY DAMAGE (EITHER ALONE OR IN COMBINATION)
INVOLVING THE SAME INJURIOUS MATERIAL OR ACT, REGARDLESS OF
THE FREQUENCY OR REPETITION THEREOF, THE NUMBER OR KIND OF
MEDIA USED, AND THE NUMBER OF CLAIMANTS, SHALL BE DEEMED TO
ARISE OUT OF ONE OCCURRENCE.

III. POLICY PERIOD: - TERRITORY:

THIS POLICY APPLIES ONLY TO OCCURRENCE, AS HEREIN DEFINED, WHICH
HAPPEN DURING THE POLICY PERIOD ANYWHERE IN THE WORLD; PROVIDED, HOWEVI
IF ANY OCCURRENCE HAPPENS DURING THE POLICY PERIOD OF THIS POLICY WHICI
RESULTS IN PERSONAL INJURY, PROPERTY DAMAGE OR ADVERTISING LIABILITY
OF THE TYPE WHICH WOULD BE INSURED UNDER THE PROVISIONS OF THIS POLICY
AND IF PERSONAL INJURY, PROPERTY DAMAGE OR ADVERTISING LIABILITY RE-
SULTING FROM THAT SAME OCCURRENCE HAS ALSO HAPPENED DURING THE POLICY
PERIOD OF ANY SIMILAR POLICY OF INSURANCE ISSUED BY THE COMPANY TO ANY
NAMED INSURED HEREUNDER PRIOR TO THE POLICY PERIOD OF THIS POLICY, THA'
POLICY ISSUED BY THE COMPANY WHICH IS IN FORCE AT THE TIME THE FIRST
CLAIM IS MADE AGAINST THE INSURED WHICH COULD RESULT IN ULTIMATE NET
LOSS PAYABLE THEREUNDER SHALL CONSTITUTE THE ONLY POLICY OF THE COMPAN
WHICH SHALL APPLY TO SUCH OCCURRENCE AND TO ALL PERSONAL INJURY,
PROPERTY DAMAGE AND ADVERTISING LIABILITY (EITHER ALONE OR IN COMBINA-
TION) AT ANY TIME RESULTING FROM SUCH OCCURRENCE, REGARDLESS OF THE
NUMBER OF SIMILAR POLICIES OF INSURANCE ISSUED BY THE COMPANY WHICH
COULD OTHERWISE APPLY IN ABSENCE OF THIS AGREEMENT.

EXCLUSIONS

THIS POLICY DOES NOT APPLY:

(A)  TO INJURY TO OR DESTRUCTION OF PROPERTY OWNED BY ANY NAMED INSUREI

(B)  EXCEPT AS PROVIDED IN EXCLUSION (H), TO BODILY INJURY, SICKNESS,
     DISEASE OR DEATH RESULTING THEREFROM, OR PROPERTY DAMAGE, CAUSED
     INTENTIONALLY BY OR AT THE DIRECTION OF THE INSURED;

(C)  IT IS AGREED THAT THE INSURANCE DOES NOT APPLY TO BODILY INJURY
     OR PROPERTY DAMAGE ARISING OUT OF THE DISCHARGE, DISPERSAL,
     RELEASE OR ESCAPE OF SMOKE, VAPORS, SOOT, FUMES, ACIDS, ALKALIS,
     TOXIC CHEMICALS, LIQUIDS OR GASES, WASTE MATERIALS OR OTHER IRRI-
     TANTS, CONTAMINANTS OR POLLUTANTS INTO OR UPON LAND, THE ATMOS-
     PHERE OR ANY WATERCOURSE OR BODY OF WATER; BUT THIS EXCLUSION
     DOES NOT APPLY IF SUCH DISCHARGE, DISPERSAL, RELEASE OR ESCAPE
     IS SUDDEN AND ACCIDENTAL.

     THIS POLICY DOES NOT APPLY, EXCEPT INSOFAR AS COVERAGE IS AVAIL-
     ABLE TO THE INSURED UNDER THE UNDERLYING POLICIES OF INSURANCE
     SET FORTH IN THE DECLARATIONS, OR IN FORCE AT THE TIME OF THE
     OCCURRENCE.

(D)  WITH RESPECT TO ADVERTISING LIABILITY, TO CLAIMS MADE AGAINST THE
     INSURED:

     (I) FOR FAILURE OF PERFORMANCE OF CONTRACT, BUT THIS SHALL NOT
         RELATE TO CLAIMS FOR UNAUTHORIZED APPROPRIATION OF IDEAS;

(2) FOR INFRINGEMENT OF REGISTERED TRADE-MARK, SERVICE MARK OR TRADE-NAME BY USE THEREOF AS THE REGISTERED TRADE-MARK, SERVICE MARK OR TRADE-NAME OF GOODS OR SERVICES SOLD, OFFERED FOR SALE OR ADVERTISED, BUT THIS SHALL NOT RELATE TO TITLES OR SLOGANS;

(3) FOR INCORRECT DESCRIPTION OF ANY ARTICLE OR COMMODITY;

(4) FOR MISTAKE IN ADVERTISED PRICE.

(E) TO ANY OBLIGATION FOR WHICH THE INSURED OR ANY CARRIER AS HIS INSURER MAY BE HELD LIABLE UNDER ANY WORKMEN'S COMPENSATION, UN-EMPLOYMENT, COMPENSATION OR DISABILITY BENEFITS LAW, OR UNDER ANY SIMILAR LAW, PROVIDED, HOWEVER, THAT THIS EXCLUSION DOES NOT APPLY TO LIABILITY OF OTHERS ASSUMED BY THE NAMED INSURED UNDER ANY CONTRACT OR AGREEMENT;

(F) TO CLAIMS MADE AGAINST THE INSURED:

(1) FOR REPAIRING OR REPLACING ANY DEFECTIVE PRODUCT OR PRODUCTS MANUFACTURED, SOLD, HANDLED OR DISTRIBUTED BY THE INSURED OR ANY DEFECTIVE PART OR PARTS THEREOF NOR FOR THE COST OF SUCH REPAIR OR REPLACEMENT;

(2) FOR THE LOSS OF USE OF ANY SUCH DEFECTIVE PRODUCT OR PRODUCTS OR PART OR PARTS THEREOF;

(3) FOR DAMAGES FOR THE WITHDRAWAL, INSPECTION, REPAIR, REPLACE-MENT, OR LOSS OF USE OF THE NAMED INSURED'S PRODUCTS OR WORK COMPLETED BY OR FOR THE NAMED INSURED OR FOR ANY PROPERTY OF WHICH SUCH PRODUCTS OR WORK FORM A PART, IF SUCH PRODUCTS, WORK OR PROPERTY ARE WITHDRAWN FROM THE MARKET OR FROM USE BECAUSE OF ANY KNOWN OR SUSPECTED DEFECT OR DEFICIENCY THEREI

(4) FOR IMPROPER OR INADEQUATE PERFORMANCE, DESIGN OR SPECIFICA-TION, BUT NOTHING HEREIN CONTAINED SHALL BE CONSTRUED TO EXCLUDE CLAIMS MADE AGAINST THE INSURED FOR PERSONAL INJURIES OR PROPERTY DAMAGE (OTHER THAN PROPERTY DAMAGE TO A PRODUCT OF THE INSURED) RESULTING FROM IMPROPER OR INADEQUATE PERFOR-MANCE, DESIGN OR SPECIFICATION.

(G) TO LIABILITY OF ANY INSURED FOR ASSAULT AND BATTERY COMMITTED BY OR AT THE DIRECTION OF SUCH INSURED EXCEPT LIABILITY FOR PER-SONAL INJURY OR DEATH RESULTING FROM ANY ACT ALLEGED TO BE AN ASSAULT AND BATTERY BUT WHICH WAS ACTUALLY COMMITTED FOR THE PURPOSE OF PREVENTING OR ELIMINATING DANGER TO LIFE OR PROPERTY;

(H) TO ANY EMPLOYEE WITH RESPECT TO PERSONAL INJURY TO OR DEATH OF ANOTHER EMPLOYEE OF THE SAME EMPLOYER INJURED IN THE COURSE OF SUCH EMPLOYMENT;

(I) EXCEPT WITH RESPECT TO OCCURENCE TAKING PLACE IN THE UNITED STATES, ITS TERRITORIES, OR POSSESSIONS, OR CANADA TO ANY LIA-BILITY OF THE INSURED DIRECTLY OR INDIRECTLY OCCASIONED BY A HAPPENING THROUGH OR IN CONSEQUENCE OF WAR, INVASION, ACTS OF FOREIGN ENEMIES, HOSTILITIES (WHETHER WAR BE DECLARED OR NOT), CIVIL WAR, REBELLION, REVOLUTION, INSURRECTION, MILITARY OR USURP POWER OR CONFISCATION OR NATIONALIZATION OR REQUISITION OR DE-STRUCTION OF OR DAMAGE TO PROPERTY BY OR UNDER THE ORDER OF ANY GOVERNMENT OR PUBLIC OR LOCAL AUTHORITY;

(J) EXCEPT WITH RESPECT TO OPERATIONS PERFORMED BY INDEPENDENT CON-TRACTORS, TO LIABILITY ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OPERATION, USE LOADING OR UNLOADING OF ANY WATERCRAFT, PROVIDED, HOWEVER, THIS EXCLUSION SHALL NOT APPLY TO LIABILITY OF THE NAMED INSURED FOR WATERCRAFT NOT OWNED BY SUCH INSURED, OR BARGES OWNED BY THE INSURED;

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SEA-000089

(K)  TO LIABILITY ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OPERATION,
USE, LOADING OR UNLOADING OF ANY AIRCRAFT; PROVIDED, HOWEVER, THIS
EXCLUSION SHALL NOT APPLY TO LIABILITY OF THE NAMED INSURED FOR
AIRCRAFT NOT OWNED BY SUCH INSURED.

## CONDITIONS

1.  PREMIUM.

THE PREMIUM FOR THIS POLICY SHALL BE AS STATED ON THE DECLARATIONS
PAGE.

2.  INSPECTION AND AUDIT.

THE COMPANY SHALL BE PERMITTED TO INSPECT THE INSURED'S PREMISES,
OPERATIONS, AND ELEVATORS AND TO EXAMINE AND AUDIT THE INSURED'S
BOOKS AND RECORDS AT ANY TIME DURING THE POLICY PERIOD AND ANY
EXTENSION THEREOF AND WITHIN THREE YEARS AFTER THE FINAL TERMINA-
TION OF THIS POLICY, AS FAR AS THEY RELATE TO THE PREMIUM BASIS
OR THE SUBJECT MATTER OF THIS INSURANCE.

3.  SPECIAL CONDITIONS APPLICABLE TO OCCUPATIONAL DISEASE.

AS REGARDS PERSONAL INJURY (FATAL OR NON-FATAL) BY OCCUPATIONAL
DISEASE SUSTAINED BY ANY EMPLOYEE OF THE INSURED, THIS POLICY IS
SUBJECT TO THE SAME WARRANTIES, TERMS OR CONDITIONS (EXCEPT AS
REGARDS THE PREMIUM, THE AMOUNT AND LIMITS OF LIABILITY, ANY
CONDITION RESPECTING "OTHER INSURANCE" AND THE RENEWAL AGREEMENT,
IF ANY) AS ARE CONTAINED IN OR AS MAY BE ADDED TO THE POLICIES OF
UNDERLYING INSURANCES SET FORTH IN THE DECLARATIONS PRIOR TO THE
HAPPENING OF AN OCCURRENCE FOR WHICH CLAIM IS MADE HEREUNDER.

4.  LIMITS OF LIABILITY.

THE COMPANY SHALL ONLY BE LIABLE FOR ULTIMATE NET LOSS IN EXCESS
OF EITHER:

(A) EXCEPT AS PROVIDED IN SUB-PARAGRAPH (B) HEREOF, THE APPLI-
CABLE LIMITS OF LIABILITY OF THE POLICIES OF UNDERLYING INSUR-
ANCE SET FORTH IN ITEM 3 OF THE DECLARATIONS; OR

(B) AS RESPECTS EACH OCCURRENCE NOT COVERED BY SUCH UNDERLYING
INSURANCE, OR WHERE EACH OCCURRENCE IS COVERED BY SUCH UNDER-
LYING INSURANCE BUT IN RECOVERABLE AMOUNTS LESS THAN THE
UNDERLYING LIMITS SET FORTH IN ITEM 4 OF THE DECLARATIONS,
THE AMOUNT OF ULTIMATE NET LOSS SET FORTH IN THE DECLARATIONS
AS "UNDERLYING LIMITS",

BUT IN NO EVENT SHALL THE COMPANY BE LIABLE FOR AN AMOUNT IN
EXCESS OF THE APPLICABLE LIMIT OF LIABILITY SET FORTH IN ITEM 5
OF THE DECLARATIONS.

THE LIMIT OF LIABILITY STATED IN ITEM 5 OF THE DECLARATIONS AS
APPLICABLE TO "EACH OCCURRENCE" IS THE TOTAL LIMIT OF THE COMPANY'
LIABILITY UNDER THIS POLICY FOR ULTIMATE NET LOSS AS A RESULT OF
ANY ONE OCCURRENCE. SUBJECT TO THE LIMIT OF LIABILITY SET FORTH
IN ITEM 5 OF THE DECLARATIONS WITH RESPECT TO "EACH OCCURRENCE",
THE LIMIT OF LIABILITY SO SET FORTH AS "AGGREGATE" SHALL BE THE
TOTAL LIMIT OF THE COMPANY'S LIABILITY UNDER THIS POLICY FOR UL-
TIMATE NET LOSS;

(1) BECAUSE OF ALL PERSONAL INJURY AND PROPERTY DAMAGE DURING
EACH CONSECUTIVE TWELVE MONTHS OF THE POLICY PERIOD, ARISING
OUT OF THE PRODUCTS-COMPLETED OPERATIONS HAZARDS, AND

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

(2) BECAUSE OF ALL PERSONAL INJURY DURING EACH CONSECUTIVE TWELV
MONTHS OF THE POLICY PERIOD SUSTAINED FROM OCCUPATIONAL
DISEASE BY ANY EMPLOYEE OF THE INSURED.

IN THE EVENT OF REDUCTION OR EXHAUSTION OF THE AGGREGATE LIMITS
OF LIABILITY UNDER THE POLICIES OF UNDERLYING INSURANCE BY REASO
OF LOSSES PAID THEREUNDER, THIS POLICY SHALL:

(1) IN THE EVENT OF REDUCTION, PAY THE EXCESS OF THE REDUCED
UNDERLYING INSURANCE, AND

(2) IN THE EVENT OF EXHAUSTION, CONTINUE IN FORCE AS UNDERLYING
INSURANCE,

BUT NOTHING IN THIS PARAGRAPH SHALL OEPRATE TO INCREASE THE LIMI
OF THE COMPANY'S LIABILITY.

IN THE EVENT OF REDUCTION OR EXHAUSTION OF THE AGGREGATE LIMIT
OR LIMITS DESIGNATED IN THE UNDERLYING POLICY OR POLICIES SOLELY
BY PAYMENT OF LOSSES IN RESPECT TO ACCIDENTS OR OCCURRENCES DURI
THE PERIOD OF SUCH UNDERLYING POLICY OR POLICIES, IT IS HEREBY
UNDERSTOOD AND AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THIS
POLICY SHALL APPLY IN EXCESS OF THE REDUCED UNDERLYING LIMIT OR,
IF SUCH LIMIT IS EXHAUSTED, SHALL APPLY AS UNDERLYING INSURANCE,
NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE TERMS AND CONDI-
TIONS OF THIS POLICY.

5.   SEVERABILITY OF INTERESTS.

THE TERM "THE INSURED" IS USED SEVERALLY AND NOT COLLECTIVELY, B
THE INCLUSION HEREIN OF MORE THAN ONE INSURED SHALL NOT OPERATE
TO INCREASE THE LIMITS OF THE COMPANY'S LIABILITY.  IF MORE THAN
ONE INSURED IS NAMED IN ITEM 1 OF THE DECLARATIONS, IT IS AGREED
THAT THE LIMITS OF THE COMPANY'S LIABILITY SHALL NOT APPLY SEPAR
TO EACH SUCH INSURED.

6.   NOTICE OF OCCURRENCE.

WHEN AN OCCURRENCE TAKES PLACE WHICH, IN THE OPINION OF THE INSU
INVOLVES OR MAY INVOLVE LIABILITY ON THE PART OF THE COMPANY,
PROMPT WRITTEN NOTICE SHALL BE GIVEN BY OR ON BEHALF OF THE
INSURED TO THE COMPANY OR ANY OF ITS AUTHORIZED REPRESENTATIVES.
SUCH NOTICE SHALL CONTAIN PARTICULARS SUFFICIENT TO IDENTIFY
THE INSURED AND ALSO REASONABLY OBTAINABLE INFORMATION RESPECTIN
THE TIME, PLACE AND CIRCUMSTANCES OF THE OCCURRENCE.  FAILURE
TO SO NOTIFY THE COMPANY OF ANY OCCURRENCE WHICH AT THE TIME
OF ITS HAPPENING DID NOT APPEAR TO INVOLVE THIS POLICY BUT WHICH,
AT A LATER DATE, WOULD APPEAR TO GIVE RISE TO A CLAIM HEREUNDER
SHALL NOT PREJUDICE SUCH CLAIM PROVIDED SUCH NOTICE IS THEN GIVEN
IT SHALL BE AGREED THAT AWARENESS OF CLAIM BY THE CORPORATE RISK
MANAGEMENT DEPARTMENT OF THE INSURED SHALL BE THE SAME AS NOTICE
GIVEN THE COMPANY.

7.   ASSISTANCE AND COOPERATION OF THE INSURED.

THE COMPANY SHALL NOT BE CALLED UPON TO ASSUME CHARGE OF THE
SETTLEMENT OR DEFENSE OF ANY CLAIM MADE, SUIT BROUGHT OR PROCEEDI
INSTITUTED AGAINST THE INSURED BUT THE COMPANY SHALL HAVE THE
RIGHT AND SHALL BE GIVEN THE OPPORTUNITY TO ASSOCIATE WITH THE
INSURED OR THE INSURED'S UNDERLYING INSURERS, OR BOTH, IN THE
DEFENSE AND CONTROL OF ANY CLAIM, SUIT OR PROCEEDING RELATIVE TO
AN OCCURRENCE WHERE THE CLAIM OR SUIT INVOLVES OR APPEARS REASONA
LIKELY TO INVOLVE THE COMPANY IN WHICH EVENT THE INSURED AND THE
COMPANY SHALL COOPERATE IN ALL THINGS IN THE DEFENSE OF SUCH
CLAIM, SUIT OR PROCEEDING.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

8. APPEALS.

IN THE EVENT THE INSURED OR THE INSURED'S UNDERLYING INSURER(S
ELECT NOT TO APPEAL A JUDGMENT IN EXCESS OF THE UNDERLYING LIM
THE COMPANY MAY ELECT TO MAKE SUCH APPEAL AT ITS OWN COST AND
EXPENSE, AND SHALL BE LIABLE FOR THE TAXABLE COSTS, DISBURSEME
AND INTEREST ON JUDGMENTS, INCIDENTAL THERETO, BUT IN NO EVENT
SHALL THE LIABILITY OF THE COMPANY FOR ULTIMATE NET LOSS EXCEE
THE LIMIT OF ITS LIABILITY STATED IN THIS POLICY AND, IN ADDIT
THE COST AND EXPENSE OF SUCH APPEAL.

9. LOSS PAYABLE.

LIABILITY UNDER THIS POLICY WITH RESPECT TO ANY OCCURRENCE SHAI
NOT ATTACH UNLESS AND UNTIL THE INSURED, OR THE INSURED'S UNDEI
LYING INSURER, SHALL HAVE PAID THE AMOUNT OF THE UNDERLYING LIM
ON ACCOUNT OF SUCH OCCURRENCE. THE INSURED SHALL MAKE A DEFINI
CLAIM FOR ANY LOSS FOR WHICH THE COMPANY MAY BE LIABLE UNDER
THE POLICY WITHIN TWELVE (12) MONTHS AFTER THE INSURED SHALL HA
PAID AN AMOUNT OF ULTIMATE NET LOSS IN EXCESS OF THE AMOUNT BOR
BY THE INSURED OR AFTER THE INSURED'S LIABILITY SHALL HAVE BEEN
FIXED AND RENDERED CERTAIN EITHER BY FINAL JUDGMENT AGAINST THE
INSURED AFTER ACTUAL TRIAL OR BY WRITTEN AGREEMENT OF THE INSUR
THE CLAIMANT AND THE COMPANY. IF ANY SUBSEQUENT PAYMENTS SHALL
BE MADE BY THE INSURED ON ACCOUNT OF THE SAME OCCURRENCE, ADDI-
TIONAL CLAIMS SHALL BE MADE SIMILARLY FROM TIME TO TIME. SUCH
LOSSES SHALL BE DUE AND PAYABLE WITHIN THIRTY DAYS AFTER THEY A
RESPECTIVELY CLAIMED AND PROVEN IN CONFORMITY WITH THIS POLICY.

10. OTHER INSURANCE.

IF ANY OTHER VALID OR COLLECTIBLE INSURANCE EXISTS PROTECTING
THE INSURED AGAINST ULTIMATE NET LOSS COVERED BY THIS POLICY
(OTHER THAN THE POLICIES OF UNDERLYING INSURNACE SPECIFIED IN
ITEM 3 OF THE DECLARATIONS AND OTHER THAN ANY POLICY WITH RESPEC
TO WHICH THIS POLICY IS SPECIFIED THEREIN AS UNDERLYING INSURANC
THIS POLICY SHALL BE NULL AND VOID WITH RESPECT TO SUCH LOSS
WHETHER THE INSURED IS SPECIFICALLY NAMED IN SUCH OTHER POLICY
OF INSURANCE OR NOT) PROVIDED, HOWEVER, IF THE AMOUNTS RECOVERAB
BY THE INSURED UNDER SUCH OTHER INSURANCE ARE NOT SUFFICIENT TO
COMPLETELY PROTECT THE INSURED AGAINST SUCH LOSS, THIS POLICY
SHALL APPLY BUT ONLY AS EXCESS INSURANCE OVER SUCH OTHER VALID
AND COLLECTIBLE INSURANCE, IN AN AMOUNT NOT TO EXCEED THE LIMIT
OF THE COMPANY'S LIABILITY STATED IN THIS POLICY, AND NOT AS
CONTRIBUTING INSURANCE.

11. SUBROGATION.

INASMUCH AS THIS POLICY IS EXCESS COVERAGE, THE INSURED'S RIGHT
OF RECOVERY AGAINST ANY PERSON, FIRM OR CORPORATION CANNOT BE
EXCLUSIVELY SUBROGATED TO THE COMPANY; THEREFORE, IN CASE OF ANY
PAYMENT HEREUNDER, THE COMPANY WILL ACT IN CONCERT WITH ALL OTHER
INTERESTS, INCLUDING THE INSURED, CONCERNED IN THE EXERCISE OF
SUCH RIGHTS OF RECOVERY. THE APPORTIONING OF ANY AMOUNTS WHICH
MAY BE SO RECOVERED SHALL FOLLOW THE PRINCIPLE THAT ANY INTEREST,
INCLUDING THE INSURED, THAT SHALL HAVE PAID AN AMOUNT OVER AND
ABOVE ANY PAYMENT HEREUNDER, SHALL FIRST BE REIMBURSED UP TO THE
AMOUNT PAID BY THEM; THE COMPANY IS THEN TO BE REIMBURSED OUT OF
ANY BALANCE THEN REMAINING UP TO THE AMOUNT PAID HEREUNDER;
LASTLY, THE INTEREST, INCLUDING THE INSURED, OF WHICH THIS
COVERAGE IS IN EXCESS ARE ENTITLED TO CLAIM THE RESIDUE, IF ANY,
EXPENSES NECESSARY TO THE RECOVERY OF ANY SUCH AMOUNTS SHALL BE
APPORTIONED BETWEEN THE INTERESTS, INCLUDING THE INSURED, CONCERNI
IN THE RATIO OF THEIR RESPECTIVE RECOVERIES AS FINALLY SETTLED.

12. CHANGES

NOTICE TO OR KNOWLEDGE POSSESSED BY ANY PERSON SHALL NOT EFFECT
A WAIVER OR A CHANGE IN ANY PART OF THIS POLICY OR STOP THE COMPAN

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SEA-000092

FROM ASSERTING ANY RIGHTS UNDER THE TERMS OF THIS POLICY, NOR
SHALL THE TERMS OF THIS POLICY BE WAIVED OR CHANGED EXCEPT BY
ENDORSEMENT ISSUED TO FORM A PART OF THIS POLICY.

13.  ASSIGNMENT.

ASSIGNMENT OF INTEREST UNDER THIS POLICY SHALL NOT BIND THE
COMPANY UNTIL ITS CONSENT IS ENDORSED HEREON.

14.  CANCELLATION.

THIS POLICY MAY BE CANCELLED AT ANY TIME BY THE INSURED FIRST
NAMED IN ITEM 1 OF THE DECLARATIONS BY MAILING TO THE COMPANY
OR ANY OF ITS AUTHORIZED REPRESENTATIVES, WRITTEN NOTICE STATING
WHEN THEREAFTER SUCH CANCELLATION SHALL BECOME EFFECTIVE.  THIS
POLICY MAY BE CANCELLED BY THE COMPANY BY MAILING TO THE INSURED
MANAGER, CORPORATE RISK MANAGEMENT DEPARTMENT, AT THE ADDRESS
SHOWN IN THE DECLARATIONS, WRITTEN NOTICE STATING WHEN, EITHER
NOT LESS THAN 90 DAYS THEREAFTER OR THE MAXIMUM CANCELLATION
NOTICE PERIOD STATED IN THE POLICIES OF UNDERLYING INSURANCE
SET FORTH IN THE DECLARATIONS, WHICHEVER IS THE LESSER, SUCH
CANCELLATION SHALL BE EFFECTIVE.  THE MAILING OF NOTICE AS AFORE
SAID SHALL BE SUFFICIENT PROOF OF NOTICE.  THE EFFECTIVE DATE AN
HOUR STATED IN SUCH NOTICE SHALL BECOME THE END OF THE POLICY
PERIOD.  DELIVERY OF SUCH WRITTEN NOTICE EITHER BY SUCH INSURED
OR THE COMPANY SHALL BE EQUIVALENT TO MAILING.  IF SUCH INSURED
CANCELS, EARNED PREMIUM SHALL BE COMPUTED IN ACCORDANCE WITH THE
CUSTOMARY SHORT RATE TABLE AND PROCEDURE.  IF THE COMPANY CANCEL
EARNED PREMIUM SHALL BE COMPUTED PRO-RATA.  PREMIUM ADJUSTMENT
MAY BE MADE EITHER AT THE TIME CANCELLATION IS EFFECTED OR AS SO
AS PRACTICABLE AFTER CANCELLATION BECOMES EFFECTIVE, BUT PAYMENT
OR TENDER OF UNEARNED PREMIUM IS NOT A CONDITION OF CANCELLATION

15.  MAINTENANCE OF UNDERLYING INSURANCE.

THE POLICY OR POLICIES SET FORTH IN THE DECLARATIONS AS UNDERLYIN
INSURANCE SHALL BE MAINTAINED IN FULL EFFECT DURING THE PERIOD
THIS POLICY REMAINS IN FORCE EXCEPT FOR ANY REDUCTION OF THE
AGGREGATE LIMITS CONTAINED THEREIN SOLELY BY PAYMENT OF CLAIMS
FOR OCCURRENCES WHICH TAKE PLACE DURING THIS POLICY PERIOD.
FAILURE OF THE INSURED TO COMPLY WITH THE FOREGOING SHALL NOT
INVALIDATE THIS POLICY BUT IN THE EVENT OF SUCH FAILURE, THE
COMPANY SHALL ONLY BE LIABLE TO THE SAME EXTENT AS IT WOULD HAVE
BEEN IF THE INSURED HAD COMPLIED WITH THIS CONDITION.

IT IS FURTHER UNDERSTOOD AND AGREED THAT IN THE EVENT OF LOSS
FOR WHICH THE INSURED HAS COVERAGE UNDER THE UNDERLYING INSURANCE
SCHEDULED HEREIN, THE EXCESS OF WHICH WOULD BE RECOVERABLE HERE-
UNDER EXCEPT FOR TERMS AND CONDITIONS OF THIS POLICY WHICH ARE
NOT CONSISTENT WITH THE UNDERLYING, THEN NOTWITHSTANDING ANY-
THING CONTAINED HEREIN TO THE CONTRARY THIS POLICY SHALL BE
AMENDED TO FOLLOW THE TERMS AND CONDITIONS OF THE APPLICABLE
UNDERLYING INSURANCE IN RESPECT OF SUCH LOSS.

ALLEN, MILLER & ASSOCIATES, INC.
Underwriting Managers

BY:

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

NAMED INSURED:   W. R. GRACE & CO.

POLICY NUMBER:   1-2517

IT IS AGREED THAT SUCH COVERAGE AS IS AFFORDED BY THIS POLICY WITH RESPECT
TO FOREIGN SUBSIDIARIES LOCATED OUTSIDE THE UNITED STATES, ITS TERRITORIES
OR POSSESSIONS, PUERTO RICO OR CANADA SHALL APPLY IN EXCESS OF THE LIMITS
OF LIABILITY OF ANY UNDERLYING INSURANCE OR THE UNDERLYING LIMITS OF
$250,000. IN UNITED STATES CURRENCY WHICHEVER IS GREATER.

IT IS FURTHER AGREED THAT THIS POLICY WILL NOT APPLY OVER A REDUCED UNDER-
LYING LIMIT OF LIABILITY BY REASON OF REDUCTION OR EXHAUSTION OF THE
AGGREGATE LIMITS OF LIABILITY UNDER THE POLICIES OF UNDERLYING INSURANCE
AFFORDED FOR THE PRODUCTS-COMPLETED OPERATIONS HAZARD FOR THE FOREIGN
SUBSIDIARIES OF THE NAMED INSURED.

ALLEN, MILLER & ASSOCIATES, INC.
Underwriting Managers

COUNTERSIGNED

AUTHORIZED AGENT

ENDORSEMENT # 1

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SEA-000094

THIS ENDORSEMENT, EFFECTIVE JUNE 30, 1974, FORMS PART OF POLICY NO. 1-2517 ISSUED TO W. R. GRACE & COMPANY BY UNIGARD MUTUAL INSURANCE CO

IT IS AGREED THAT THE INSURANCE PROVIDED BY THIS POLICY APPLIES TO DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE OR USE OF PROPERTY IN ANY TRUST FOR WHICH THE INSURED IS ACTING IN A FIDUCIARY OR RE-PRESENTATIVE CAPACITY, SUCH AS, BUT NOT LIMITED TO, "TRUSTEE", "ADVISER", "AFFILIATE" OR "HOLDER OF MORTGAGES OF SECURITIES".

1.  THE DEFINITION OF INSURED UNDER II.  DEFINITION OF THE POLICY IS AMENDED TO INCLUDE, IN ADDITION TO THOSE ALREADY COVERED, THE FOLLOWING:

    A.  HANOVER SQUARE REALTY INVESTORS

    B.  ANY "TRUSTEE", "OFFICER", "EMPLOYEE", "DIRECTOR", OR "SHAREHOL THEREOF WHILE ACTING WITHIN THE SCOPE OF THEIR DUTIES AS SUCH.

    C.  ANY "ADVISOR", "AFFILIATE", "AFFILIATED TRUSTEE", "PERSON", "SHAREHOLDER", "AGENT", "INVESTMENT ADVISERS", "COMMITTEES", OR "ANY OTHER BUSINESS ENTITY" ASSOCIATED THERE WITH RESPECT TO ANY ACTION TAKEN OR OMMITTED AND WHILE ACTING WITHIN THE SCOPE OF THEIR DUTIES.

                                        ALLEN, MILLER & ASSOCIATES, INC.
                                        Underwriting Managers


                            BY: _____


                        ENDORSEMENT #2

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

Endorsement No. _____ 3 _____    Additional Premium _____    Return Premium _____

Name of Assured _____ W. R. GRACE AND COMPANY, INC. _____

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED
THAT THE NAMED INSURED SHALL READ:

W. R. GRACE & CO.

NAMED INSURED UMBRELLA LIABILITY POLICIES

W. R. GRACE & CO., AND/OR SUBSIDIARY, ASSOCIATES, AFFILIATED COMPANIES
AND/OR ORGANIZATIONS, OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS
NOW OR HEREINAFTER CONSTITUTED.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as be
set forth.

This endorsement is effective _____ JUNE 30, 1974 _____

Attached to and forming part of Policy No. _____ 1-2517 _____ of the

UNIGARD MUTUAL INSURANCE COMPANY

ALLEN, MILLER & ASSOCIATES, INC.
Underwriting Managers

By _____

AMAI-9

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SEA-000096

Endorsement No. _____ 4 _____ Additional Premium _____ Return Premium _____

Name of Assured _____ W. R. GRACE & CO., ETAL _____

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND
AGREED THAT THE SECOND PARAGRAPH AFTER EXCLUSION C OF THIS POLICY
IS NOT A PART OF EXCLUSION C, BUT THAT IT IS THE CONDITIONAL
EXCLUSION FOR EXCLUSIONS D THROUGH K.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as hereinabove set forth.

This endorsement is effective _____ JUNE 30, 1974 _____

Attached to and forming part of Policy No. _____ 1-2517 _____ of the

UNIGARD MUTUAL INSURANCE COMPANY

ALLEN, MILLER AND ASSOCIATES, I
Underwriting Managers

By _____

AMAI-9

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SEA-000097

Endorsement No. _____ ___Additional Premium _____ _____Return Premium _____

Name of Assured ___W. R. GRACE & CO., ETAL_____

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED THAT
THE SCHEDULE OF UNDERLYING INSURANCE, AS RESPECTS EMPLOYERS LIABILITY,
IS AMENDED TO READ AS FOLLOWS:

EMPLOYERS LIABILITY:

| | | |
|---|---|---|
| A) | EMPLOYERS LIABILITY INCLUDING OCCUPATIONAL DISEASE | $100,000. EA. EMPLOYEE<br>$100,000. EA. ACCIDENT |
| B) | AMENDMENT OF COVERAGE B – MARITIME (JONES ACT) | BODILY INJURY BY ACCIDENT<br>$100,000. EA. EMPLOYEE<br>$100,000. EA. ACCIDENT.<br>BODILY INJURY BY DISEASE<br>$100,000. EA. EMPLOYEE<br>$100,000. AGGREGATE DISEAS<br>(PER STATE) |
| C) | F.L.H.W.A. | $100,000. EA. EMPLOYEE<br>$100,000. EA. ACCIDENT |

IT IS FURTHER UNDERSTOOD AND AGREED THAT THE SCHEDULE OF UNDERLYING
INSURANCE IS AMENDED TO INCLUDE THE FOLLOWING ITEM:

VI.   NEWFOUNDLAND QUICK FREEZE            $100,000. EA. VESSEL
                                           PROTECTION & INDEMNITY
                                           INSURANCE ANY ONE ACCIDENT
                                           OR OCCURRENCE

IT IS ALSO UNDERSTOOD AND AGREED THAT THE FOREIGN POLICIES THAT ARE
SCHEDULED IN THE SCHEDULE OF UNDERLYING INSURANCE ARE NOT THE ONLY
FOREIGN POLICIES MAINTAINED BY THE INSURED, BUT ONLY THOSE HANDLED
IN THE UNITED STATES.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as hereinabove set fo

This endorsement is effective__JUNE 30, 1974_____

Attached to and forming part of Policy No.____I-2517_____of the

UNIGARD MUTUAL INSURANCE COMPANY

                                           ALLEN, MILLER & ASSOCIATES, INC.
                                           Underwriting Managers

WMAI-8                      By_____

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SEA-000098

Endorsement No. ____6____ ___Additional Premium_____ ___Return Premium_____

Name of Assured    W. R. GRACE & CO., ETAL

 

     IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND
AGREED THAT CONDITION 6, NOTICE OF OCCURRENCE, IS AMENDED TO READ
AS FOLLOWS:

     "IN THE EVENT OF AN OCCURRENCE, CLAIM OR SUIT, WRITTEN
NOTICE TO THE COMPANY WILL BE GIVEN AS SOON AS PRACTICABLE
AFTER AN OCCURRENCE, CLAIM OR SUIT IS KNOWN TO THE
DIRECTOR, CORPORATE RISK MANAGEMENT DEPT., OF W. R. GRACE & CO.

 

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as her set forth.

This endorsement is effective____JUNE 30, 1974____

Attached to and forming part of Policy No.____1-2517____ of the

_____UNIGARD MUTUAL INSURANCE COMPANY_____

     ALLEN, MILLER AND ASSOCIATES,
     Underwriting Managers

By _____

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SEA-000099

Endorsement No. _____ 7 _____    Additional Premium _____    Return Premium    $393,530.00

Name of Assured    W. R. GRACE & CO., ET AL.

IN CONSIDERATION OF A RETURN PREMIUM OF $393,530.00, IT
IS UNDERSTOOD AND AGREED THAT SUCH INSURANCE AS IS AFFORDED
HEREUNDER IS TERMINATED EFFECTIVE JUNE 30, 1975.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as hereinabove set forth.

This endorsement is effective _____ JUNE 30, 1975 _____

Attached to and forming part of Policy No. _____ 1-7517 _____ of the

UNIGARD MUTUAL INSURANCE COMPANY

ALLEN, MILLER AND ASSOCIATES, INC.
Underwriting Managers

6/1h
9/16/75
4AM-8

By _____

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

SEA-000100