# EXHIBIT 17

Westlaw.

140 Cong.Rec. S4521-01                                                                                   Page 1
140 Cong. Rec. S4521-01, 1994 WL 139961 (Cong.Rec.)
**(Cite as: 140 Cong. Rec. S4521-01)**

Congressional Record --- Senate
Proceedings and Debates of the 103rd Congress, Second Session
Wednesday, April 20, 1994

*S4521 BANKRUPTCY AMENDMENTS ACT OF 1993

The Senate continued with the consideration of the bill.

Mr. HEFLIN addressed the Chair.

The PRESIDING OFFICER.

The Senator from Alabama is recognized.

AMENDMENT NO. 1633

(Purpose: To amend section 524 of title 11, United States Code, to authorize the issuance of supplemental injunctions)

Mr. HEFLIN.

Mr. President, I send an amendment to the desk on behalf of Senator BROWN and ask for its immediate consideration.

The PRESIDING OFFICER.

The clerk will report.

*S4522 The assistant legislative clerk read as follows:

The Senator from Alabama <Mr. HEFLIN>, for Mr. BROWN, for himself and Mr. GRAHAM, proposes an amendment numbered 1633.

Mr. HEFLIN.

Mr. President, I ask unanimous consent that reading of the amendment be dispensed with.

The PRESIDING OFFICER.

Without objection, it is so ordered.

The amendment is as follows:

On page 211, after line 21 insert the following:

SEC. 222. SUPPLEMENTAL INJUNCTIONS.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

140 Cong.Rec. S4521-01                                                                 Page 5
140 Cong. Rec. S4521-01, 1994 WL 139961 (Cong.Rec.)
**(Cite as: 140 Cong. Rec. S4521-01)**

"(C) pursuant to the plan, is to be paid by a trust described in paragraph (2)(B)(i).

"(6) Paragraph (3)(A)(i) does not bar an action taken by or at the direction of an appellate court on appeal of an injunction issued under paragraph (1) or of the order of confirmation that relates to the injunction.

"(7) This subsection applies to an injunction of the nature described in paragraph (1)(B) in effect, and any trust of the nature described in paragraph (2)(B) in existence, on or after the date of enactment of this subsection.

"(8) This subsection does not affect the operation of section 1144 or the power of the district court to refer a proceeding under section 157 of title 28 or any reference of a proceeding made prior to the date of enactment of this subsection.

"(9) Nothing in subsection (g) shall affect the court's authority to issue an injunction (including an injunction that requires claims and demands to be presented for payment solely to a trust or any other type of court approved settlement vehicle) which is entered pursuant to an order approving a plan of reorganization.

"(10)(A) If, upon a motion by a representative appointed by the court identified in paragraph (1)(A) to protect the interests of persons with demands of the kind described in paragraph (2)(B)(ii)(I) or on its own motion, the court finds, as a result of enhanced credible estimating procedures with respect of such demands, inequities in the distribution process of a trust of the nature described in paragraph (2)(B), the court shall have, in addition to the powers over the trust that the court may lawfully exercise under applicable nonbankruptcy law, plenary equitable power to reform, restructure, or modify the trust, the procedures under which it operates, or the timing, manner, and amount of distributions to its beneficiaries and other rights of the beneficiaries, giving special attention to cases presenting exigent circumstances, as it shall determine to be fair, just, and reasonable in light of the circumstances prevailing at the time of reformation, restructure or modification.

"(B) Nothing in this paragraph shall be construed to grant the court authority to modify or in any way alter the debtor's obligation to comply with the terms of the plan of reorganization.".

Mr. BROWN.

Mr. President, the proposed amendment would codify a court's existing authority to issue a permanent injunction to channel claims to an independent trust funded by the securities and future earnings of *S4523 the debtor. In plain English, this means that when an asbestos-producing company goes into bankruptcy and is faced with present and future asbestos-related claims, the bankruptcy court can set up a trust to pay the victims. The underlying company funds the trust with securities and the company remains viable. Thus, the company continues to generate assets to

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 01-01139-AMC    Doc 21943-19    Filed 06/01/09    Page 4 of 4

140 Cong.Rec. S4521-01                                                                Page 6
140 Cong. Rec. S4521-01, 1994 WL 139961 (Cong.Rec.)
**(Cite as: 140 Cong. Rec. S4521-01)**

pay claims today and into the future. In essence, the reorganized company becomes the goose that lays the golden egg by remaining a viable operation and maximizing the trust's assets to pay claims.

Without a clear statement in the code of a court's authority to issue such injunctions, the financial markets tend to discount the securities of the reorganized debtor. This in turn diminishes the trust's assets and its resources to pay victims. The amendment is intended to eliminate that speculation so that the marketplace values the trust's assets fairly.

This amendment is about growing the pie available to victims. The result could be significant. In the case of one such trust, for instance, every dollar increase in the value of the reorganized company's stock translates to $96 million more for compensating asbestos victims.

Some suggest that claimants should be able to sue the reorganized debtor again. Such suits would fly in the face of the fundamental rationale of chapter 11, that a reorganized debtor emerges from bankruptcy free and clear other than the liability set by the plan. Unfortunately, the very speculation that a claimant may be allowed to sue the company hurts its ability to maximize the trust's assets to pay victim's claims.

Essentially, this amendment means more money for the victims of asbestos exposure. It also means added stability and job security for the thousands of workers employed by reorganized companies. This amendment is a good public policy in that it not only serves the interest of reorganizing the debtor but in that it maximizes amount existing and future asbestos claimants can recover.

Mr. GRAHAM.

Mr. President, this legislation provides companies who are seeking to fairly address the burden of thousands of current asbestos injury claims and unknown future claims, and who are willing to submit to the jurisdiction of the U.S. Bankruptcy Courts, a method to pay their current asbestos claims and provide for equitable treatment of future asbestos claims. It will preserve the going concern value of those companies, thus providing a source of payment for those future claims. The legislation recognizes the inherent equitable power of the bankruptcy courts to provide for equitable treatment of all of a debtor's creditors, including those having claims arising out of asbestos products. This legislation also recognizes the bankruptcy courts' injunctive powers to implement fair distribution of payments to claimants. The amendment recognizes the need to provide an on-going source of payment for future asbestos-products claims against a debtor within the fabric of a centralized claims mechanism.

It is the uncertainty of the number and amount of these future claims, and the need to implement a procedure that recognizes these future claimants as creditors under the U.S. Bankruptcy Code, that necessitates this amendment, as well as the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.