# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE


——————————————————————————X

In Re:                           Chapter 11

                                 Case No.

                                 01-01139 JKF

W.R. Grace & Co., et al.,

                                 (Jointly

              Debtors.          Administered)

——————————————————————————X


—    —    —

May 6, 2009

—    —    —

        DEPOSITION of JEFFREY POSNER, held

at the offices of Kirkland & Ellis, 655

Fifteenth Street, N.W., Washington, DC,

commencing at 9:08 A.M., on the above

date, before Lisa Lynch, a Registered

Merit Reporter, New Jersey Certified Court

Reporter, License No. XI00825, and

Certified Realtime Reporter

—    —    —

MAGNA LEGAL SERVICES, LLP

7 Penn Center, 8th Floor

1635 Market Street

Philadelphia, PA   19103

1.866.MAGNA.21

```
 1   A P P E A R A N C E S:
 2
     DRINKER BIDDLE & REATH, LLP
 3   BY:  MICHAEL F. BROWN, ESQUIRE
     One Logan Square
 4   18th and Cherry Streets
     Philadelphia, Pennsylvania 19103-6996
 5   (brownmf@dbr.com)
     Representing OneBeacon America Insurance
 6   Company, Seaton Insurance Company,
     Government Employees Insurance Company,
 7   Columbia Insurance Company f/k/a Republic
     Insurance Company
 8
 9   ANDERSON KILL & OLICK, PC
     BY:  ROBERT M. HORKOVICH, ESQUIRE
10   1251 Avenue of the Americas
     New York, New York 10020
11   212.278.1322
     (rhorkovich@andersonkill.com)
12   Representing Grace, Official Committee of
     Asbestos Personal Injury Claimants ("ACC")
13
14   W.R. GRACE & CO.
     BY:  RICHARD C. FINKE, ESQUIRE*
15       ASSISTANT GENERAL COUNSEL
         (*VIA TELECONFERENCE)
16   5400 Broken Sound Boulevard, NW
     Suite 300
17   Boca Raton, Florida 33487
     561.362.1533
18   Representing W.R. Grace & Co.
19
     KIRKLAND & ELLIS, LP
20   BY:  LISA G. ESAYIAN, ESQUIRE
     300 North LaSalle Street
21   Chicago, Illinois 60654
     312.862.2226
22   (lisa.esayian@kirkland.com)
     Representing the Debtors
23
24
```

```
 1    A P P E A R A N C E S: (continued)
 2    SIMPSON THACHER & BARTLETT, LLP
      BY:  MARY BETH FORSHAW, ESQUIRE
 3    425 Lexington Avenue
      New York, New York 10017-3954
 4    212.455.2846
      (mbforshaw@stblaw.com)
 5    Representing Travelers Casualty and Surety
      Company
 6
 7    VORYS, SATER, SEYMOUR AND PEASE, LLP
      BY:  WILLIAM J. POHLMAN, ESQUIRE
 8    52 East Gay Street
      Columbus, Ohio 43215
 9    614.464.8349
      (wjpohlman@vorys.com)
10    Representing The Scotts Company, LLC
11
      COHN WHITESELL & GOLDBERG, LLP
12    BY:  DANIEL C. COHN, ESQUIRE
      101 Arch Street
13    Boston, Massachusetts 02110
      617.951.2505
14    (cohn@cwgll.com)
      Representing the Libby Claimants
15
16    LEWIS, SLOVAK & KOVACICH, PC
      BY:  MARK M. KOVACICH, ESQUIRE
17    P.O. Box 2325
      723 Third Avenue
18    Great Falls, Montana 59403
      406.761.5595
19    mark@lsklaw.net
      Representing the Libby Claimants
20
21    SPEIGHTS & RUNYAN
      BY:  DANIEL H. SPEIGHTS, ESQUIRE*
22         (*VIA TELECONFERENCE)
      200 Jackson Avenue East
23    P.O. Box 685
      Hampton, South Carolina 29924
24    803.943.4444
```

```
 1    Representing Anderson Memorial Hospital
 2    A P P E A R A N C E S: (continued)
 3
      MENDES & MOUNT, LLP
 4    BY:  CAROLINA ACEVEDO, ESQUIRE
      750 Seventh Avenue
 5    New York, New York 10019
      212.261.8262
 6    (carolina.acevedo@mendes.com)
      Representing AXA Belgium as Successor to
 7    Royale Belge SSA
 8
      MENDES & MOUNT, LLP
 9    BY:  ALEXANDER MUELLER, ESQUIRE
      750 Seventh Avenue
10    New York, New York 10019
      212.261.8296
11    (alexander.mueller@mendes.com)
      Representing London Market Companies
12
13    FORD MARRIN ESPOSITO & WITNEYER & GLESER
      BY:  ELIZABETH M. DeCRISTOFARO, ESQUIRE
14    Wall Street Plaza
      New York, New York 10005-1875
15    212.269.4900
      Representing Continental Casualty Company
16    and Continental Insurance Company
17
      BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
18    BY:  MATTHEW I. KRAMER, ESQUIRE*
           (*VIA TELECONFERENCE)
19    200 South Biscayne Boulevard
      Suite 2500
20    Miami, Florida 33131-5340
      305.450.7246
21    (mkramer@bilzin.com)
      Representing Property Damage Committee
22
23
24
```

```
 1    A  P  P  E  A  R  A  N  C  E  S: (continued)
 2
      STROOCK & STROOCK & LAVAN, LLP
 3    BY:   ARLENE G. KRIEGER, ESQUIRE*
             (*VIA TELECONFERENCE)
 4    180 Maiden Lane
      New York, New York 10038-4982
 5    212.806.5400
      (akrieger@stroock.com)
 6    Representing Official Committee of
      Unsecured Creditors
 7
 8    CROWELL & MORING, LLP
      BY:   PATRICIA CONNALLY, ESQUIRE
 9    1001 Pennsylvania Avenue, N.W.
      Washington, DC 20004-2595
10    202.624.2913
      (pconnally@crowell.com)
11    Representing Fireman's Fund Insurance
      (Surety Bond)
12
13    STEVENS & LEE, P.C.
      BY: JOHN D. DEMMY, ESQUIRE*
14        (*VIA TELECONFERENCE)
      1105 North Market Street, 7th Floor
15    Wilmington, Delaware 19801
      302.654.5180
16    (jdd@stevenslee.com)
      Representing Fireman's Fund Insurance
17
18    LAW OFFICES OF ALAN B. RICH
      BY:   ALAN B. RICH, ESQUIRE
19    Elm Place, Suite 4620
      1401 Elm Street
20    Dallas, Texas 75202
      214.744.5100
21    (arich@alanrichlaw.com)
      Representing Property Damage PCR
22
23
24
```

```
 1    A P P E A R A N C E S: (continued)
 2
      CONNOLLY BOVE LODGE & HUTZ, LLP
 3    BY:   JEFFREY C. WISLER, ESQUIRE
      The Nemours Building
 4    1007 North Orange Street
      P.O. Box 2207
 5    Wilmington, Delaware 19899
      302.888.6528
 6    (jwisler@cblh.com)
      Representing Maryland Casualty
 7
 8    ECKERT SEAMANS CHERIN & MELLOTT, LLC
      BY:   EDWARD J. LONGOSZ, II, ESQUIRE
 9    1747 Pennsylvania Avenue, N.W.
      12th Floor
10    Washington, DC 20006
      202.659.6619
11    (elongosz@eckertseamans.com)
      Representing Maryland Casualty and Zurich
12
13    WILEY REIN, LLP
      BY:   KARALEE C. MORELL, ESQUIRE
14    1776 K Street NW
      Washington, DC 20006
15    202.719.7520
      (kmorell@wileyrein.com)
16    Representing Maryland Casualty and Zurich
17
      COZEN O'CONNOR
18    BY:   ILAN ROSENBERG, ESQUIRE*
            (*VIA TELECONFERENCE)
19    1900 Market Street
      Philadelphia, Pennsylvania 19103-3508
20    215.665.4621
      (irosenberg@cozen.com)
21    Representing Federal Insurance Company
22
23
24
```

```
 1   A P P E A R A N C E S: (continued)
 2
 3   ORRICK HERRINGTON & SUTCLIFFE, LLP
     BY:   JONATHAN P. GUY, ESQUIRE
 4         PERI N. MAHALEY, ESQUIRE
     Columbia Center
 5   1152 15th Street, N.W.
     Washington, DC 20005-1706
 6   202.339.8516
     (jguy@orrick.com)
 7   (pmahaley@orrick.com)
     Representing PI Future Claimants'
 8   Representative
 9
     CUYLER BURK, P.C.
10   BY:   ANDREW CRAIG, ESQUIRE*
            (*VIA TELECONFERENCE)
11   4 Century Drive
     Parsippany, New Jersey 07054
12   973.734.3200
     (acraig@cuyler.com)
13   Representing Allstate Insurance Company
14
     WILSON ELSER MOSKOWITZ
15   EDELMAN & DICKER, LLP
     BY:   CARL J. PERNICONE, ESQUIRE
16   150 East 42nd Street
     New York, New York 10017-5639
17   212.915.5656
     (carl.pernicone@wilsonelser.com)
18   Representing Arrowood Indemnity Company
19
     O'MELVENY & MEYERS LLP
20   BY:   TANCRED SCHIAVONI, ESQUIRE
     7 Times Square    .
21   New York, New York 10036
     212.326.2267
22   (tschiavoni@omm.com)
     Representing Arrowood Indemnity Company
23
24
```

```
 1    A P P E A R A N C E S: (continued)
 2
      WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
 3    BY:   KEVIN J. MANGAN, ESQUIRE*
              (*VIA TELECONFERENCE)
 4    222 Delaware Avenue
      Suite 1501
 5    Wilmington, Delaware 19801
      302.252.4361
 6    (kmangan@wcsr.com)
      Representing State of Montana
 7
 8    PEPPER HAMILTON, LLP
      BY: LINDA J. CASEY, ESQUIRE*
 9        (*VIA TELECONFERENCE)
      3000 Two Logan Square
10    Philadelphia, Pennsylvania 19103
      215.981.4000
11    (casey1@pepperlaw.com)
      Representing BNSF Railway Company
12
13
      ALSO   PRESENT:
14
      ALLEN SCHWARTZ, O'Melveny & Meyers LLP
15                         —    —    —
16
17
18
19
20
21
22
23
24
```

```
1                    INDEX
                  EXAMINATION
2

  Witness Name                    Page
3  JEFFREY POSNER
4      BY MS. FORSHAW          14
5      BY MR. KOVACICH         108
6      BY MR. MUELLER          229
7      BY MS. CASEY            236
8      BY MR. LONGOZ           256
9      BY MR. BROWN            269
10     BY MS. DeCRISTOFARO     294, 338
11     BY MR. SCHIAVONI        308, 334
12     BY MR. POHLMAN          314
13     BY MR. SPEIGHTS         339
14                  EXHIBITS
15  EXHIBIT                            ID
16  Exhibit 1                          14
       Notice of Deposition of Jeffery
17     Posner
18  Exhibit 2                          14
       Curriculum vitae of Jeffery M.
19     Posner
20  Exhibit 3                          14
       Affidavit Under 11 USC 327(e)
21
    Exhibit 4                          41
22     Asbestos Settlement Agreement
       between W.R. Grace & Company-Conn.
23     and the Aetna Casualty & Surety
       Company dated May 12th, 1996
24
```

```
 1                    EXHIBITS
     EXHIBIT                              ID
 2
     Exhibit 5                            68
 3       Exhibit 4 to Exhibit Book Trust
         Distribution Procedures
 4
     Exhibit 6                            82
 5       First Amended Joint Plan of
         Reorganization
 6
     Exhibit 7                            96
 7       Agreement between W.R. Grace &
         Company-Connecticut and the
 8       Travelers Casualty & Surety
         Company dated February 20, 1992
 9
     Exhibit 8                            106
10       Exhibit 19 to Exhibit Book,
         Retained Causes of Action
11
     Exhibit 9                            113
12       Answer, Cross-claims and
         Counterclaims of Defendant W.R.
13       Grace in re: Maryland Casualty v.
         Grace, et al.
14
     Exhibit 10                           118
15       Royal Indemnity Company
         declaration sheets and
16       endorsements SA-870, 891, 939,
         945-946
17
     Exhibit 11                           137
18       Letter dated December 9, 1999 to
         Royal & SunAlliance from Marsh USA
19
     Exhibit 12                           143
20       Letter dated January 12, 2000 from
         Royal and SunAlliance to J.M.
21       Posner, Inc., two pages
22   Exhibit 13                           196
         E-mail string between Janet Baer
23       and Dan Cohn, three pages
24
```

```
 1                    EXHIBITS
    EXHIBIT                              ID
 2
    Exhibit 14                          216
 3     Monthly asbestos litigation
       summary Bates stamped 91-1614
 4     through 1639
 5  Exhibit 15                          270
       Settlement agreement Bates stamped
 6     OB 1 through 33
 7  Exhibit 16                          273
       Settlement Agreement and Release
 8     Bates stamped OB 34 through 66
 9  Exhibit 17                          277
       Settlement Agreement and Release
10     Bates stamped OB 67 through 92
11  Exhibit 18                          279
       Settlement Agreement, Release and
12     Indemnification/Hold Harmless
       Agreement Bates stamped SEA 1
13     through 16
14  Exhibit 19                          280
       Settlement Agreement, Release and
15     Indemnification/Hold Harmless
       Agreement Bates stamped SEA 17
16     through 31
17  Exhibit 20                          283
       Settlement Agreement, Release and
18     Indemnification/Hold Harmless
       Agreement Bates stamped SEA 32
19     through 47
20  Exhibit 21                          285
       Settlement Agreement & Release
21     Bates stamped SEA 48 through 61
22  Exhibit 22                          294
       LexisNexis printout in re:
23     Maryland Casualty v. Grace, et al.
24
```

```
 1                        EXHIBITS
     EXHIBIT                            ID
 2
     Exhibit 23                         317
 3       Exhibit 6 to Exhibit Book,
         Asbestos Insurance Transfer
 4       Agreement
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22                        .
23
24
```

```
 1              DEPOSITION SUPPORT INDEX
 2

    Direction to Witness Not To Answer
 3  Page    Line        Page    Line
    209     1           239     6
 4

    Request For Production of Documents
 5  Page    Line        Page    Line
    142     11          149     24
 6  169     18
 7  Stipulations
    Page    Line        Page    Line
 8  (None)
 9  Questions Marked
    Page    Line        Page    Line
10  (None)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

```
 1                    (Notice of Deposition of

 2              Jeffery Posner received and marked

 3              for identification as Posner

 4              Exhibit 1.)

 5                    (Curriculum vitae of

 6              Jeffery M. Posner received and

 7              marked for identification as Posner

 8              Exhibit 2.)

 9                    (Affidavit Under 11 USC

10              327(e) received and marked for

11              identification as Posner Exhibit

12              3.)

13

14  J E F F R E Y    P O S N E R,

15              having been sworn by the Notary

16              Public of the States of New York

17              and New Jersey, was examined and

18              testified as follows:

19                        -    -    -

20  EXAMINATION BY

21  MS. FORSHAW:

22         Q.    Good morning.  Mr. Posner.

23         A.    Good morning.

24         Q.    Good to see you again.  I
```

```
 1    to asbestos injury claims arising in

 2    Libby, Montana?

 3           A.    Let me say -- let me answer

 4    it this way:  I would not have made a

 5    demand -- well, to the extent the letter

 6    went to them, it would have gone to them

 7    in error or just as a matter of routine.

 8    But the reality is, is that since I had

 9    negotiated the 1995 agreement, I knew that

10    Grace had released all asbestos-related

11    claims which would encompass the Libby

12    claims so I would not have made a demand

13    upon them to the extent we sent them a

14    letter providing information because it

15    simply went to them as a matter of

16    routine.  Had I gotten a phone call, I

17    probably would have told Royal that, yeah,

18    I mean, I agree with them that the claims

19    were released.

20           Q.    Do you agree with me that

21    based on Exhibit 11 it certainly appears

22    that you made a demand for coverage on

23    somebody with reference to the Libby

24    claims in 1999?
```

```
1                    MS. ESAYIAN:  Objection to

2          form.

3                    MR. SCHIAVONI:  Objection,

4          calls for speculation and I think

5          this is also a document speaks for

6          itself objection.

7          A.    Well, I mean, I think if

8   you look at the December 9 letter, it's

9   not a demand.  It's simply a notice of

10  claim.  So I don't -- I mean, I don't see

11  it as a demand.  It's a notice of

12  potential loss.  But, again, I mean, as I

13  indicated before, because I negotiated the

14  agreement, you know, I knew that we had

15  released those claims.

16         Q.    Can you think of any reason

17  that you would provide a notice of

18  potential loss to an insurance company

19  that you do not believe has coverage

20  applicable to the loss?

21                   MR. SCHIAVONI:  Objection,

22         asked and answered.

23         A.    What had happened at Grace

24  was that we were getting in so many claims
```

Case 01-01139-AMC Doc 21946-1 Filed 06/02/09 Page 18 of 27

Page 147

1    and we were involved with so many

2    insurance carriers and I always had this

3    concern about missing an insurance carrier

4    that owed us an obligation so I had always

5    instructed the broker that whenever we got

6    claims in to simply send them to everybody

7    on the list, and that list included

8    companies that Grace had settled with and

9    then I indicated to them I would sort it

10   out later.

11                    I didn't, you know, want an

12   insurance company to come back to me and

13   say that we failed to notify them of a

14   claim through some inadvertent error so I

15   went through the extra precaution of

16   notifying all carriers, even those with

17   whom we had settled, just to preclude a

18   claim by some carrier that we may have

19   inadvertently missed.

20             Q.    Did you ever take the

21   position at any time after the 1995

22   settlement agreement on behalf of Grace

23   that Royal had an obligation to cover

24   claims for personal injury from asbestos

1    exposure arising out of Libby, Montana?

2         A.    No, I don't recall I ever

3    did, nor would I, because, again, I

4    negotiated the agreement.  I understood

5    how the release worked.  Despite the fact

6    that there may be letters going to Royal

7    at various points in time, I had always

8    understood that the claims were released

9    by the agreement and I never made a demand

10   upon Royal nor did I ever have any

11   discussions with them claiming

12   otherwise.

13        Q.    Did you ever take the

14   position on behalf of Grace at any time

15   after the 1995 settlement agreement was

16   entered into that the settlement agreement

17   did not release claims for premises

18   coverage as opposed to products

19   coverage?

20        A.    I -- my recollection -- I

21   don't have the agreement in front of me.

22   My recollection of the agreement is that

23   we gave them two releases.  We gave them a

24   complete products release and we gave them

1   what I'm going to call an asbestos-related

2   release, and the asbestos-related release

3   encompassed not only asbestos products

4   claims but asbestos premises claims.

5          Q.   Do you recall any further

6   discussions about Royal's obligation to

7   provide coverage to Grace for the Libby

8   claims subsequent to the letter marked as

9   Exhibit 12?

10         A.    I'm sorry.  Conversations

11   with Royal?

12         Q.   Conversations or

13   correspondence with Royal.

14         A.    I don't have any

15   recollection of corresponding with Royal.

16   Again, Royal may have gotten, you know,

17   letters from Grace as a matter of routine

18   when claims came in but I certainly never

19   had any substantive discussions with them

20   claiming that they owed coverage for

21   asbestos-related claims because, again, I

22   knew that we had released them as part of

23   the 1995 agreement.

24                   MR. KOVACICH:  For the

```
 1   a fair statement but I don't recall
 2   specifically.
 3          Q.    Were the negotiations of
 4   the 1995 Grace-Royal settlement agreement
 5   conducted at arm's length between Grace
 6   and Royal?
 7                MR. COHN:  Object to
 8          form.
 9          A.    And by arm's length you
10   mean?
11          Q.    That it was an arm's length
12   negotiation, that there were -- you had no
13   control over each other, you acted on
14   behalf of your own interests and not on
15   behalf of anyone else's interests.
16          A.    I think that's a fair
17   statement, yes.
18          Q.    Was the 1995 Grace-Royal
19   settlement agreement negotiated by Grace
20   in good faith?
21          A.    Yes.
22          Q.    Do you have any reason to
23   believe that the 1995 Grace-Royal
24   settlement agreement was not negotiated in
```

1    good faith by the Royal folks?

2         A.    No.

3         Q.    Did you, Mr. Posner, do

4    your best as part of the negotiation of

5    the 1995 Grace-Royal settlement agreement

6    to obtain as large a settlement payment as

7    possible from Royal?

8         A.    Yes.

9         Q.    Did you, Mr. Posner, do

10   your best as part of the 1995 Grace-Royal

11   settlement negotiations to try to obtain

12   the best possible terms for Grace from

13   Royal?

14        A.    Yes.

15        Q.    Did Grace do due diligence

16   on the coverage that was allegedly issued

17   by Royal as part of the negotiations of

18   the 1995 Grace-Royal settlement

19   agreement?

20        A.    Yes.

21        Q.    And were you personally

22   involved in those due diligence efforts,

23   Mr. Posner?

24        A.    Yes.

```
 1            Q.    And did the due diligence
 2    efforts that were done by Grace include a
 3    review of the policies and the terms of
 4    the policies allegedly issued by Royal?
 5            A.    Yes.
 6            Q.    Counsel for the Libby
 7    claimants asked you some questions about
 8    what he referred to as premises/operations
 9    coverage.  Do you remember generally that
10    line of questioning?
11            A.   Yes, I do.
12            Q.    Were you aware at the time
13    that you negotiated the 1995 Grace-Royal
14    settlement agreement that there was
15    possible coverage for certain types of
16    asbestos bodily injury claims under the
17    premises/operations provisions of the
18    Royal policies?
19            A.    Yes.
20            Q.    The counsel for the Libby
21    claimants also asked you some questions
22    where I guess he suggested that there
23    might be no aggregate limits for the
24    premises/operations portions of the
```

1    coverage under the Royal policies.  Do you

2    remember generally those questions?

3              A.    Yes, I do.

4              Q.    Were you aware at the time

5    that you negotiated the 1995 Grace-Royal

6    settlement agreement that there was a

7    possibility that there might be no

8    aggregate limits for certain asbestos

9    bodily injury claims under the

10   premises/operations provisions of the

11   Royal policies?

12             A.    I was aware of that, yes.

13             Q.    Was the settlement

14   payment -- the 1995 Royal -- Grace-Royal

15   settlement agreement, it required that a

16   settlement payment be made to Grace.  Is

17   that right?

18             A.    Yes.

19             Q.    Was the settlement payment

20   that was required under the 1995

21   Grace-Royal settlement agreement actually

22   paid to Grace?

23             A.    Yes.

24             Q.    And was the settlement

```
 1    amount that was due under the 1995

 2    Grace-Royal settlement agreement paid in

 3    full to Grace?

 4          A.   Yes.

 5               MR. SCHIAVONI:  Thank you .

 6          very much, sir.

 7               THE WITNESS:  Thank you.

 8    EXAMINATION BY

 9    MR. POHLMAN:

10          Q.   Mr. Posner, my name is Bill

11    Pohlman.  I represent The Scotts Company.

12          You were involved in negotiating

13    settlement agreements on behalf of Grace

14    with a variety of different insurers with

15    respect to asbestos claims, correct?

16          A.   Yes.

17          Q.   And you were personally

18    involved in the first settlement

19    negotiation that Grace reached with an

20    insurer with respect to asbestos claims?

21          A.   Yes.

22          Q.   And the most recent

23    settlement in 2006?

24          A.   Yes.
```