# EXHIBIT B

Page 449

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
-   -   -

In Re:                    : Chapter 11
                          :
                          : Case No.
W.R. GRACE & CO., et al,  : 01-01139 JKF
                          :
                          : (Jointly
            Debtors       : Administered)


-   -   -

Monday, May 4, 2009

-   -   -

Continuation of oral

deposition of PETER VAN N. LOCKWOOD,

ESQUIRE, taken pursuant to notice, was

held at the offices of CAPLIN & DRYSDALE,

One Thomas Circle N.W., Suite 1100,

Washington, DC  20005, commencing at

12:05 p.m., on the above date, before

Lori A. Zabielski, a Registered

Professional Reporter and Notary Public

in and for the Commonwealth of

Pennsylvania.
-   -   -

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

2 (Pages 450 to 453)

Page 450

```
1   APPEARANCES:
2
3   DRINKER BIDDLE & REATH, LLP
    BY: MICHAEL F. BROWN, ESQUIRE
4   One Logan Square
    18th & Cherry Streets
5   Philadelphia, Pennsylvania 19103-6996
    215.988.2988
6   (brownmf@dbr.com)
    (jeffrey.boerger@dbr.com)
7   Representing OneBeacon America Insurance
    Company, Seaton Insurance Company,
8   Government Employees Insurance Company,
    Columbia Insurance Company f/k/a Republic
9   Insurance Company
10
11  CAPLIN & DRYSDALE, CHARTERED
    BY: NATHAN D. FINCH, ESQUIRE
12      JEFFREY A. LIESEMER, ESQUIRE*
        (*VIA TELECONFERENCE)
13  One Thomas Circle N.W.
    Suite 1100
14  Washington, DC 20005
    202.862.7801
15  (ndf@capdale.com)
    (jal@capdale.com)
16  Representing Grace, Official Committee of
    Asbestos Personal Injury Claimants
17  ("ACC"), and Witness
18
    ANDERSON KILL & OLICK, P.C.
19  BY: ROBERT M. HORKOVICH, ESQUIRE
    1251 Avenue of the Americas
20  New York, New York 10020
    212.278.1322
21  (rhorkovitz@andersonkill.com)
    Representing the ACC
22
23
```

Page 451

```
1   APPEARANCES (continued)
2
3   KIRKLAND & ELLIS, LLP
    BY: THEODORE L. FREEDMAN, ESQUIRE
4   655 Fifteenth Street, N.W.
    Washington, DC 20005-5793
5   202.879.5081
    (tfreedman@kirkland.com)
6   Representing the Debtors
7
8   THE LAW OFFICES OF JANET S. BAER, P.C.
    BY: JANET S. BAER, ESQUIRE
9   70 West Madison Street
    Suite 2100
10  Chicago, Illinois 606002
    312.641.2162
11  Representing the Debtors
12
13  SIMPSON THACHER & BARTLETT, LLP
    BY: SAMUEL J. RUBIN, ESQUIRE*
14      (*VIA TELECONFERENCE)
    425 Lexington Avenue
15  New York, New York 10017-3954
    212.455.3122
16  (srubin@stblaw.com)
    Representing Travelers Casualty and
17  Surety Company
18
19  VORYS, SATER, SEYMOUR AND PEASE, LLP
    BY: TIFFANY STRELOW COBB, ESQUIRE*
20      (*VIA TELECONFERENCE)
    52 East Gay Street
21  Columbus, Ohio 43215
    614.464.8322
22  (tscobb@vorys.com)
    Representing The Scotts Company, LLC
23
24
```

Page 452

```
1   APPEARANCES (continued)
2
3   COHN WHITESELL & GOLDBERG, LLP
    BY: DANIEL C. COHN, ESQUIRE
4   101 Arch Street
    Boston, Massachusetts 02110
5   617.951.2505
    (cohn@cwg11.com)
6   Representing the Libby Claimants
7
8   SPEIGHTS & RUNYAN
    BY: DANIEL H. SPEIGHTS, ESQUIRE*
9       (*VIA TELECONFERENCE)
    200 Jackson Avenue East
10  P.O. Box 685
    Hampton, South Carolina 29924
11  803.943.4444
    (dspeights@speightsrunyan.com)
12  Representing Anderson Memorial Hospital
13
14  TUCKER ARENSBERG
    BY: MICHAEL A. SHINER, ESQUIRE*
15      (*VIA TELECONFERENCE)
    1500 One PPG Place
16  Pittsburgh, Pennsylvania 15222
    412.594.5586
17  (mshiner@tuckerlaw.com)
    Representing Certain London Market
18  Insurers and AXA Belgium
19
20  FORD MARRIN ESPOSITO & WITMEYER & GLESER
    BY: ELIZABETH M. DeCRISTOFARO, ESQUIRE
21  Wall Street Plaza
    New York, New York 10005-1875
22  212.269.4900
    Representing Continental Casualty Company
23  and Continental Insurance Company
24
```

Page 453

```
1   APPEARANCES (continued)
2
3   BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
    BY: MATTHEW I. KRAMER, ESQUIRE*
4       (*VIA TELECONFERENCE)
    200 South Biscayne Boulevard
5   Suite 2500
    Miami, Florida 33131-5340
6   305.450.7246
    (mkramer@bilzin.com)
7   Representing Property Damage Committee
8
9   STROOCK & STROOCK & LAVAN, LLP
    BY: ARLENE G. KRIEGER, ESQUIRE*
10      (*VIA TELECONFERENCE)
    180 Maiden Lane
11  New York, New York 10038-4982
    212.806.5400
12  (akrieger@stroock.com)
    Representing Official Committee of
13  Unsecured Creditors
14
15  CROWELL & MORING, LLP
    BY: MARK PLEVIN, ESQUIRE
16      NOAH S. BLOOMBERG, ESQUIRE
    1001 Pennsylvania Avenue NW
17  Washington, DC 20004-2595
    202.624.2913
18  (mplevin@crowell.com)
    (nbloomberg@crowell.com)
19  Representing Fireman's Fund Insurance
    (Surety Bond)
20
21
22
23
24
```

Page 454

APPEARANCES (continued)

STEVENS & LEE, P.C.
BY: JOHN D. DEMMY, ESQUIRE*
    (*VIA TELECONFERENCE)
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801
302.654.5180
(jdd@stevenslee.com)
Representing Fireman's Fund Insurance


ALAN B. RICH LAW OFFICES
BY: ALAN B. RICH, ESQUIRE*
    (*VIA TELECONFERENCE)
Elm Place, Suite 4620
1401 Elm Street
Dallas, Texas 75202
214.744.5100
(arich@alanrichlaw.com)
Representing Property Damage FCR


CONNOLLY BOVE LODGE & HUTZ, LLP
BY: JEFFREY C. WISLER, ESQUIRE
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
302.88.6528
(jwisler@cblh.com)
Representing Maryland Casualty


ECKERT SEAMANS CHERIN & MELLOTT, LLC
BY: EDWARD J. LONGOSZ, II, ESQUIRE
1747 Pennsylvania Avenue, NW
12th Floor
Washington, DC 20006
202.659.6619
(elongosz@eckertseamans.com)
Representing Maryland Casualty and Zurich

Page 455

APPEARANCES (continued)

WILEY REIN, LLP
BY: KARALEE C. MORELL, ESQUIRE
1776 K Street NW
Washington, DC 20006
202.719.7520
(kmorell@wileyrein.com)
Representing Maryland Casualty and Zurich

COZEN O'CONNOR
BY: ILAN ROSENBERG, ESQUIRE*
    (*VIA TELECONFERENCE)
1900 Market Street
Philadelphia, Pennsylvania 19103-3508
215.665.4621
(irosenberg@cozen.com)
Representing Federal Insurance Company


ORRICK HERRINGTON & SUTCLIFFE, LLP
BY: JONATHAN P. GUY, ESQUIRE
    JOSHUA M. CUTLER, ESQUIRE
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
202 339.8516
(jguy@orrick.com)
Representing Future Claimants
Representative


CUYLER BURK, P.C.
BY  TANYA M. MASCARICH, ESQUIRE*
    (*VIA TELECONFERENCE)
4 Century Drive
Parsippany, New Jersey 07054
973 734 3200
(tmascarich@cuyler.com)
Representing Allstate Insurance Company

Page 456

APPEARANCES (continued)

WILSON ELSER MOSKOWITZ EDELMAN & DICKER,
LLP
BY: CARL PERNICONE, ESQUIRE
150 East 42nd Street
New York, New York 10017-5639
212.915.5656
(carl.pernicone@wilsonelser.com)
Representing Arrowood Indemnity Company


O'MELVENY & MYERS, LLP
BY: TANCRED SCHIAVONI, ESQUIRE*
    (*VIA TELECONFERENCE)
Times Square Tower
7 Times Square
New York, New York 10036
212.326.2267
(tschiavoni@omm.com)
Representing Arrowood Indemnity Company


WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
BY: KEVIN J. MANGAN, ESQUIRE*
    (*VIA TELECONFERENCE)
222 Delaware Avenue
Suite 1501
Wilmington, Delaware 19801
302.252.4361
(kmangan@wcsr.com)
Representing State of Montana


PEPPER HAMILTON, LLP
BY: LINDA J. CASEY, ESQUIRE*
    (*VIA TELECONFERENCE)
3000 Two Logan Square
Philadelphia, Pennsylvania 19103
215.981.4000
(caseyl@pepperlaw.com)
Representing BNSF Railway Company

Page 457

APPEARANCES (continued)


GOODWIN PROCTER, LLP
BY: DANIEL M. GLOSBAND, ESQUIRE*
    (*VIA TELECONFERENCE)
Exchange Place
53 State Street
Boston, Massachusetts 02109
617.570.1930
(dglosband@goodwinprocter.com)
Representing CNA Insurance


KRAMER LEVIN NAFTALIS & FRANKEL, LLP
BY: GREGORY A. HOROWITZ, ESQUIRE
1177 Avenue of the Americas
New York, New York 10036
212.715.9571
(ghorowitz@kramerlevin.com)
Representing Official Committee of Equity
Holders

- - -

Page 458

1               - - -
2           I N D E X
3               - - -
4
5   Testimony of:
6       PETER VAN N. LOCKWOOD, ESQUIRE
7
8   By Mr. Cohn          Page 462
9   By Mr. Wisler        Page 531
10  By Mr. Mangan        Page 544
11  By Ms. Casey         Page 549
12  By Mr. Speights      Page 563
13  By Mr. Plevin        Page 606
14  By Mr. Schiavoni     Page 624
15  By Mr. Brown         Page 636
16
17              - - -
18          E X H I B I T S
19              - - -
20  NO.  DESCRIPTION              PAGE
21  17   Notice of Deposition of
         Asbestos PI Committee Pursuant
22       to Rule 30(b)(6)         460
23  18   Exhibit 8 to Exhibit Book   460
              - - -

Page 459

1               - - -
2       DEPOSITION SUPPORT INDEX
3               - - -
4
5   Direction to Witness Not to Answer:
6   Page   Line      Page   Line
7   620    11        632    14
8
9
10  Request for Production of Documents:
11  Page Line       Page   Line
12  NONE
13
14
15  Stipulations:
16  Page   Line      Page   Line
17  12     02
    (Previously)
18
19
20  Area(s) Marked Confidential:
21  Page   Line      Page   Line
22  NONE
23
24

Page 460

1               - - -
2       PETER VAN N. LOCKWOOD,
3   ESQUIRE, after having been first
4   duly sworn, was examined and
5   testified as follows:
6               - - -
7           PROCEEDINGS
8               - - -
9       (ACC 30(b)(6)-17 and 18
10  premarked for identification at
11  this time.)
12              - - -
13      MR. COHN:  Go ahead,
14  Mr. Schiavoni.
15      MR. SCHIAVONI:  I just
16  wanted to object.  We have written
17  the Libby claimants separately
18  about this, but we object to them
19  doing any questioning of
20  Mr. Lockwood on the grounds that
21  the Libby claimants are members of
22  the committee; they have not
23  objected to Mr. Lockwood's
24  designation to testify on behalf

Page 461

1   of the committee; nor have they
2   offered in response to requests
3   any alternative witness to testify
4   on any topics on which they
5   disagree with Mr. Lockwood.
6       We see Mr. Lockwood's
7   testimony and the failure of the
8   Libby claimants to object to the
9   designation of Mr. Lockwood as an
10  adoptive omission by the Libby
11  claimants, and we object to any
12  questioning by them as essentially
13  questioning seeking to impeach
14  their own witness.  Thank you.
15      MR. COHN:  You are welcome.
16  We will respond to your
17  correspondence, but, for the
18  moment, let's simply say that we
19  reject the basis for your
20  objection.
21      MR. SCHIAVONI:  If there are
22  any topics that the Libby
23  claimants object to Mr. Lockwood's
24  designation on, we need to know

Page 462

1  what those topics are before this
2  deposition is completed so we can
3  question on those topics.
4      MR. COHN: So far as the
5  Libby claimants are aware,
6  Mr. Lockwood has been properly
7  designated as the spokesman for
8  the Asbestos PI Committee as an
9  entity.
10      So with that, why don't we
11  start.
12          - - -
13      EXAMINATION
14          - - -
15  BY MR. COHN:
16  Q.  We didn't do this last time,
17  so let me hand you what has been marked
18  as ACC 30(b)(6) Exhibit-17 and ask
19  whether you recognize it.
20  A.  I do.
21  Q.  And what is it?
22  A.  It's a Notice of Deposition
23  of the ACC by the Libby claimants.
24  Q.  Okay.  And that's a

Page 463

1  deposition under Rule 30(b)(6)?
2  A.  Correct.
3  Q.  And you are the person who
4  has been designated by the Asbestos
5  Claimants Committee to appear on behalf
6  of the committee?
7  A.  To my great good fortune,
8  yes.
9  Q.  Okay.  Now, this deposition
10  was begun on Friday, May 1st; is that
11  correct?
12  A.  Yes.
13  Q.  And we suspended at about
14  7:45 in the evening?
15  A.  As best I can recall, that
16  seems about right.
17  Q.  Since that time, have you
18  spoken with your counsel at all?
19  A.  Do you mean Mr. Finch?
20  Q.  Or any of the lawyers
21  representing you?
22  A.  Well, Mr. Finch and I were
23  on a conference call this morning on
24  matters wholly unrelated to this case.  I

Page 464

1  haven't discussed my testimony with him,
2  if that's what you are inquiring about.
3  Q.  Yes.  The next question
4  would be whether you have discussed
5  either the testimony that you have given
6  or the testimony that you are going to
7  give in this deposition.
8  A.  I have not discussed that
9  with anybody --
10  Q.  Okay.
11  A.  -- since Friday, which, I
12  guess, was your question.
13  Q.  That was the question.
14      All right.  Is it the case
15  that any asbestos PI claimant may elect
16  individual review of his claim?
17      MS. BAIER: Objection to
18  form. Basis?  What are you
19  talking about, in the world?
20      MR. COHN: Okay.  Let me
21  start again.
22  BY MR. COHN:
23  Q.  Let me refer you to the TDP,
24  which has been marked as ACC Exhibit-11.

Page 465

1  A.  I have it.
2  Q.  And ask you under the TDP
3  whether any asbestos PI claimant may
4  elect individual review of his claim?
5  A.  As best I can recall,
6  assuming the claimant has not previously
7  elected expedited review and subject to
8  the provisions relating to expedited
9  review, the answer to that question is
10  yes.  There are specific provisions in
11  the TDP that address individual review
12  and how it's to be elected and how it's
13  to proceed.
14  Q.  And when a claimant properly
15  in accordance with the TDP elects
16  individual review, what happens next?
17  A.  Well, that depends, frankly,
18  on how the trustees after consummation of
19  the Plan proceed to establish the claims
20  handling or resolution facility.  As of
21  right now, the Grace Trust doesn't exist,
22  doesn't have claims handling facility,
23  and, therefore, there is no specific set
24  of personnel or internal procedures that

45 (Pages 622 to 625)

Page 622

1  constituencies in the case are making a
2  claim on Fireman's Fund for payment
3  pursuant to those policies?
4          MR. FINCH: Object to form.
5          THE WITNESS: Well, my
6  awareness of that is that the
7  rights under those policies are
8  being assigned to the Trust under
9  the Plan. And my expectation is,
10  therefore, that any such demands
11  that you just described would be
12  made on behalf of the Trust, not
13  on behalf of Grace.
14          But subject to that caveat
15  or correction, if you will, I am
16  aware that there have been
17  discussions of a possible
18  resolution of that insurance.
19  BY MR. PLEVIN:
20      Q.  Does the committee have a
21  position as to the right of Fireman's
22  Fund to set-off against any amounts it is
23  obligated to pay as coverage under the
24  policies for asbestos liabilities any

Page 623

1  amounts owing from Grace to Fireman's
2  Fund under the indemnity agreement in the
3  event that Fireman's Fund pays under the
4  bond for the Edwards claim?
5          MS. BAIER: Objection to the
6  extent you are asking for a legal
7  opinion or conclusion from a fact
8  witness.
9          MR. FINCH: I join in that.
10          THE WITNESS: As of now, the
11  answer to that question is not
12  yet.
13  BY MR. PLEVIN:
14      Q.  Okay. Do you know when --
15  do you have an expectation, rather, as to
16  when the committee will have a position
17  on that?
18      A.  Well, all I can say is that
19  that question is being analyzed, to my
20  understanding, in connection with
21  discussions that insurance counsel for
22  the committee and others are having with
23  representatives of Fireman's Fund.
24          MR. PLEVIN: All right. I

Page 624

1  have no further questions. Thank
2  you.
3          - - -
4          EXAMINATION
5          - - -
6  BY MR. SCHIAVONI:
7      Q.  Mr. Lockwood, I have a
8  couple of softballs for you.
9          Did you review the
10  description of the status of the coverage
11  that Grace claims that Royal issued to
12  Zonolite in the Disclosure Statement?
13      A.  Do you mean did I review the
14  portions of the Disclosure Statement
15  purporting to describe that?
16      Q.  Yes.
17      A.  I think I did, yes.
18      Q.  Okay. Did you review the
19  description of the January 5, 1995
20  settlement agreement between Grace and
21  Royal in the Disclosure Statement?
22      A.  If you could refer me to the
23  particular provision in the Disclosure
24  Statement to which you are referring, it

Page 625

1  would probably expedite this.
2          I think I probably did, if
3  it's in the Disclosure Statement, but it
4  would be easier to answer the question
5  definitively if I could look at the
6  Disclosure Statement, which I have
7  available.
8          MR. SCHIAVONI: Carl, if you
9  could hand a copy of the
10  Disclosure Statement to
11  Mr. Lockwood.
12          MR. PERNICONE: I just did.
13          THE WITNESS: Could you give
14  the page or section number?
15  BY MR. SCHIAVONI:
16      Q.  The provision I have on mine
17  is on page 41. I believe it's 2.10.2.2.
18      A.  I see that provision.
19      Q.  All right. Let me just ask
20  you the question clean again that I just
21  asked you.
22      A.  Okay.
23      Q.  Did you review the
24  description of the January 5, 1995

Page 626

1  settlement agreement between Grace and
2  Royal that's in the Disclosure Statement?
3     A.  Yes.
4     Q.  Okay.  Is it fair to say
5  that it's the committee's position that
6  the Disclosure Statement accurately
7  describes the January 5, 1995 settlement
8  agreement between Grace and Royal?
9     A.  The answer to that is yes
10  subject to the qualification that the
11  committee is to an significant extent
12  relying on Grace as the source of the
13  information that is contained in that.
14     But the committee is
15  certainly not challenging that statement
16  or disagreeing with it.  And it's in a
17  document that the committee is a
18  co-proponent of.  So, in effect, the
19  committee is adopting it.
20     Q.  Is it fair to say,
21  Mr. Lockwood, that it is also the
22  committee's position that the Disclosure
23  Statement accurately describes the status
24  of the coverage that Grace alleges that

Page 627

1  Royal issued to Zonolite?
2     A.  As far as the committee is
3  aware, that description is accurate, for
4  the same reasons I described in my answer
5  to the previous question.
6     Q.  And that is, that you are
7  relying to some extent on Grace having
8  provided you information?
9     A.  That's correct.  I mean, the
10  only -- we get documents; we get
11  descriptions.  The only conceivable
12  source of those documents to us, short of
13  going out and doing discovery of Royal
14  and what have you, was Grace.
15     So if they, for example,
16  left out a document that was relevant or
17  something like that, then we wouldn't
18  necessarily know about it.  But we don't
19  have any reason to believe that that's
20  the case.
21     Q.  Let me ask it that way.  Is
22  it fair to say that, sitting here today,
23  the committee doesn't have any reason to
24  believe that the Disclosure Statement in

Page 628

1  any way inaccurately describes the
2  January 5, 1995 settlement agreement
3  between Grace and Royal?
4     A.  Correct.
5     Q.  Is it also fair to say that,
6  sitting here today, the committee doesn't
7  have any reason to believe that the
8  Disclosure Statement inaccurately
9  describes the status of the coverage that
10  Grace alleges that Royal issued to
11  Zonolite?
12     A.  That is also correct.
13     Q.  Are the Libby claimants that
14  are represented by Mr. Cohn a member of
15  the Asbestos PI Committee?
16     A.  No.  One Libby claimant that
17  is represented by Mr. Heberling is a
18  member of the committee.  To my
19  knowledge, the balance of the so-called
20  Libby claimants are represented by
21  primarily, if not exclusively, two
22  plaintiffs firms in Montana, one of which
23  is Mr. Heberling's, the other which is
24  not, and that Mr. Cohn has been employed

Page 629

1  by those two firms to act as bankruptcy
2  counsel for their collective clients.
3     But as far as I am aware,
4  Mr. Cohn is not a member of the ACC.
5     Q.  All right.  Is Mr. Heberling
6  a member of the Asbestos PI Committee?
7     A.  Mr. Heberling, like the
8  other lawyers that are the personal
9  injury lawyers for members of the
10  committee, my understanding, has been
11  delegated by his client who is on the
12  committee to act in the client's stead on
13  most, if not all, matters coming before
14  the committee.
15     Q.  Did either Mr. Heberling or
16  his client, that is, a member of the
17  committee, object to your designation as
18  a 30(b)(6) witness for the committee?
19     A.  Not to my knowledge.
20     Q.  Did the Libby claimants --
21  strike that.
22     Did either Mr. Heberling or
23  his client that's a member of the
24  committee object to you offering

Page 630

1  testimony on behalf of the committee with
2  respect to any of the topics on which the
3  committee's designated you as a 30(b)(6)
4  witness?
5      A.  Not that I recall.
6      Q.  Did either Mr. Heberling or
7  his client, which is a member of the
8  committee, convey any position to the
9  committee concerning the treatment of
10 asbestos PI claims that's in any way
11 inconsistent with the testimony that you
12 have offered today?
13     MR. FINCH: Objection, form,
14 foundation. To the extent that
15 calls for privileged
16 communications, I instruct the
17 witness not to answer. To the
18 extent that calls for settlement
19 communications, I instruct the
20 witness not to answer.
21     If you can answer subject to
22 either of those instructions, you
23 can do so.
24     THE WITNESS: Mr. Cohn and

Page 631

1  his clients have filed voluminous
2  papers in this case expressing
3  positions with which the majority
4  of the committee is in
5  disagreement, and the committee
6  has filed papers in opposition or
7  otherwise in response to those
8  papers.
9      You have asked me whether or
10 not anything I have said in the
11 course of a day and a half of
12 testimony is inconsistent with the
13 positions expressed by the Libby
14 claimants in those papers. I
15 would have to say it strikes me as
16 probable that I have said things
17 that were inconsistent with those
18 positions. But for me to go back
19 and recite from memory everything
20 that I might have said that might
21 be so inconsistent, I could not
22 begin to accomplish.
23 BY MR. SCHIAVONI:
24     Q.  Have Mr. Heberling and his

Page 632

1  client taken positions inconsistent with
2  the other committee members with regard
3  to the Plan that's now on file?
4      A.  Yes.
5      Q.  And has that been the case
6  for the last year?
7      A.  Probably, I would say so, at
8  least.
9      Q.  Would you tell us what
10 positions the Libby claimants took in
11 meetings with the other ACC members with
12 regard to the insurance coverage that's
13 alleged to be issued to Grace?
14     MR. FINCH: Objection. To
15 the extent he is calling for
16 discussions between committee
17 members in the presence of
18 committee counsel that would
19 reveal privileged communications
20 or work product communications, I
21 instruct you not to answer the
22 question.
23     I think on its face, the
24 question invades the privilege,

Page 633

1  but if you can answer the question
2  without so doing, you may do so,
3  although I tend to doubt it.
4      THE WITNESS:  Read the
5  question back.
6      (The reporter read from the
7  record as requested.)
8      THE WITNESS:  I have been
9  instructed not to answer that
10 question by my understanding my
11 instructions.
12     MR. SCHIAVONI:  And, Nate, I
13 don't want to belabor the point,
14 but this would be the case with
15 regard to other questions about
16 what positions the Libby claimants
17 had communicated to the other
18 committee members in which they
19 are in opposition to the other
20 committee members, right?
21     THE WITNESS:  Any
22 communication that happened that
23 wasn't as a result of them filing
24 something in court, I would take

Page 634

1    the same position and give the
2    same instruction.
3        If you ask about questions
4    that Libby claimants have taken in
5    papers filed in the court, for
6    example, in a Disclosure Statement
7    objections and the bullet point
8    Plan objections and the
9    committee's responses made to that
10   in open court, I will permit
11   Mr. Lockwood certainly to answer
12   those questions.
13       But anything that gets into
14   communications with between the
15   Libby claimants with the rest of
16   the ACC or counsel for the ACC
17   about their respective views of
18   insurance coverage, I am going to
19   take the position as privileged.
20       And so I think you have to
21   do it on a question-by-question
22   basis, but that's my general
23   position.
24   BY MR. SCHIAVONI:

Page 635

1        Q.   Okay.  Mr. Lockwood, I just
2    have one other brief topic.  And here is
3    the first question on that:  Does the
4    Plan purport to release claims that may
5    exist between insurers and Non-Debtors?
6        MR. FINCH:  Objection, form,
7    broad, vague.
8        THE WITNESS:  Phrased as
9    broadly as you have, I think the
10   answer is yes.
11       MR. SCHIAVONI:  Okay.  Thank
12   you.  I have no further questions.
13       MR. FINCH:  Is there anyone
14   else in the room who has
15   questions?
16       MR. BROWN:  I have some
17   follow-ups.
18       MR. FINCH:  Is there anyone
19   else on the telephone who has not
20   asked questions yet who has
21   questions?
22       (No response.)
23       MR. FINCH:  Hearing no
24   affirmative response, I will let

Page 636

1    you have follow-up until we run
2    out of time.
3        (There was a discussion held
4    off the record at this time.)
5        (There was a break from 3:55
6    p.m. to 4:03 p.m.)
7        - - -
8        EXAMINATION
9        - - -
10   BY MR. BROWN:
11       Q.   Mr. Lockwood, just a couple
12   of follow-ups.  The court reporter is
13   actually going to read back a question
14   and answer.  I think it's probably easier
15   to do that, and then I will ask my
16   follow-up question.  It was end of
17   Mr. Wisler's questioning of you.
18       A.   Okay.
19       (The reporter read from the
20   record as requested.)
21   BY MR. BROWN:
22       Q.   And after that,
23   Mr. Lockwood, Mr. Wisler asked you a
24   follow-up as to what type of claim it

Page 637

1    would be.
2        And is it correct that the
3    ACC does not have a position on what type
4    of claim it would be if it's not a Class
5    6 claim?
6        A.   Well, the ACC doesn't, as
7    such, have positions on hypothetical
8    questions.  So, yes, the ACC doesn't have
9    a position on that issue.  The ACC --
10   well, I will leave it at that.
11       Q.   On Friday, Mr. Cohn asked
12   you a question, who drafted the TDP.
13   That was the question, and you gave an
14   answer which I am happy to show you the
15   full answer.  But I WANT to repeat a
16   portion of your answer.  You said:  "The
17   participants that did it were basically
18   counsel for the ACC, counsel for the FCR,
19   and members of the ACC itself in terms of
20   reviewing and commenting on things, and
21   the FCR himself."
22       When you said the ACC
23   itself, what did you mean?
24       A.   I meant --