# EXHIBIT A


Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
- - -

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| | : | Case No. |
| W.R. GRACE & CO., et al, | : | 01-01139 JKF |
| | : | |
| | : | (Jointly |
| Debtors | : | Administered) |

- - -

Friday, May 15, 2009

- - -

Oral deposition of DAVID T. AUSTERN, ESQUIRE, taken pursuant to notice, was held at the offices of ORRICK HERRINGTON & SUTCLIFFE, LLP, Columbia Center, 1152 15th Street, N.W., Washington, DC 20005-1706, commencing at 10:07 a.m., on the above date, before Lori A. Żabielski, a Registered Professional Reporter and Notary Public in and for the Commonwealth of Pennsylvania.

- - -

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

## Page 2

```
 1  APPEARANCES:
 2
 3  DRINKER BIDDLE & REATH, LLP
    BY: MICHAEL F. BROWN, ESQUIRE
 4  One Logan Square
    18th & Cherry Streets
 5  Philadelphia, Pennsylvania 19103-6996
    215.988.2988
 6  (brownmf@dbr.com)
    (jeffrey.boerger@dbr.com)
 7  Representing OneBeacon America Insurance
    Company, Seaton Insurance Company,
 8  Government Employees Insurance Company,
    Columbia Insurance Company f/k/a Republic
 9  Insurance Company
10
11  ORRICK HERRINGTON & SUTCLIFFE, LLP
    BY: JONATHAN P. GUY, ESQUIRE
12      ROGER FRANKEL, ESQUIRE
        JOSHUA M. CUTLER, ESQUIRE
13  Columbia Center
    1152 15th Street, N.W.
14  Washington, DC 20005-1706
    202.339.8427
15  (jguy@orrick.com)
    Representing Future Claimants
16  Representative
17
18  CAPLIN & DRYSDALE, CHARTERED
    BY: JEFFREY A. LIESEMER, ESQUIRE
19  One Thomas Circle, NW
    Suite 1100
20  Washington, DC 20005
    202.862.5000
21  (jal@capdale.com)
    Representing Grace, Official Committee of
22  Asbestos Personal Injury Claimants
    ("ACC")
23
24
```

## Page 3

```
 1  APPEARANCES (continued)
 2
 3  KIRKLAND & ELLIS, LLP
    BY: THEODORE L. FREEDMAN, ESQUIRE*
 4      (*VIA TELECONFERENCE)
    Citigroup Center
 5  153 East 53rd Street
    New York, New York 10022-4611
 6  212.446.4800
    (theodore.freedman@kirkland.com)
 7  Representing the Debtors
 8
 9  THE LAW OFFICES OF JANET S. BAER, P.C.
    BY: JANET S. BAER, ESQUIRE
10  70 West Madison Street
    Suite 2100
11  Chicago, Illinois 606002
    312.641.2162
12  Representing the Debtors
13
14  SIMPSON THACHER & BARTLETT, LLP
    BY: ELISA ALCABES, ESQUIRE
15      KAREN E. ABRAVANEL, ESQUIRE*
        (*VIA TELECONFERENCE)
16  425 Lexington Avenue
    New York, New York 10017-3954
17  212.455.3133
    (ealcabes@stblaw.com)
18  (kabravenel@stblaw.com)
    Representing Travelers Casualty and
19  Surety Company
20
21
22
23
24
```

## Page 4

```
 1  APPEARANCES (continued)
 2
 3  VORYS, SATER, SEYMOUR AND PEASE, LLP
    BY: WILLIAM J. POHLMAN, ESQUIRE*
 4      TIFFANY STRELOW COBB, ESQUIRE*
        (*VIA TELECONFERENCE)
 5  52 East Gay Street
    Columbus, Ohio 43215
 6  614.464.8322
    (wjpohlman@vorys.com)
 7  (tscobb@vorys.com)
    Representing The Scotts Company, LLC
 8
 9  COHN WHITESELL & GOLDBERG, LLP
10  BY: CHRISTOPHER M. CANDON, ESQUIRE
    101 Arch Street
11  Boston, Massachusetts 02110
    617.951.2505
12  (ccandon@cwg11.com)
    Representing the Libby Claimants
13
14
    SPEIGHTS & RUNYAN
15  BY: DANIEL H. SPEIGHTS, ESQUIRE*
        (* VIA TELECONFERENCE)
16  200 Jackson Avenue East
    P.O. Box 685
17  Hampton, South Carolina 29924
    803.943.4444
18  (dspeights@speightsrunyan.com)
    Representing Anderson Memorial Hospital
19
20
    TUCKER ARENSBERG, P.C.
21  BY: MICHAEL A. SHINER, ESQUIRE*
        (*VIA TELECONFERENCE)
22  1500 One PPG Place
    Pittsburgh, Pennsylvania 15222
23  412.594.5586
    (mshiner@tuckerlaw.com)
24  Representing Certain London Market
```

## Page 5

```
 1  APPEARANCES (continued)
 2
 3  BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
    BY: MATTHEW I. KRAMER, ESQUIRE*
 4      (*VIA TELECONFERENCE)
    200 South Biscayne Boulevard
 5  Suite 2500
    Miami, Florida 33131-5340
 6  305.450.7246
    (mkramer@bilzin.com)
 7  Representing Property Damage Committee
 8
 9  STROOCK & STROOCK & LAVAN, LLP
    BY: DANIEL J. HARRIS, ESQUIRE*
10      (*VIA TELECONFERENCE)
    180 Maiden Lane
11  New York, New York 10038-4982
    212.806.5400
12  (djharris@stroock.com)
    Representing Official Committee of
13  Unsecured Creditors
14
15  CROWELL & MORING, LLP
    BY: MARK PLEVIN, ESQUIRE
16      NOAH S. BLOOMBERG, ESQUIRE
    1001 Pennsylvania Avenue NW
17  Washington, DC 20004-2595
    202.624.2913
18  (mplevin@crowell.com)
    (nbloomberg@crowell.com)
19  Representing Fireman's Fund Insurance
    (Surety Bond)
20
21
    STEVENS & LEE, P.C.
22  BY: JOHN D. DEMMY, ESQUIRE
    1818 Market Street, 29th Floor
23  Philadelphia, Pennsylvania 19103-1702
    215.751.2885
24  (jdd@stevenslee.com)
```

### Page 6

APPEARANCES (continued)

ALAN B. RICH LAW OFFICES
BY: ALAN B. RICH, ESQUIRE
Elm Place, Suite 4620
1401 Elm Street
Dallas, Texas 75202
214.744.5100
(arich@alanrichlaw.com)
Representing Property Damage FCR

CONNOLLY BOVE LODGE & HUTZ, LLP
BY: JEFFREY C. WISLER, ESQUIRE
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
302.88.6528
(jwisler@cblh.com)
Representing Maryland Casualty

ECKERT SEAMANS CHERIN & MELLOTT, LLC
BY: EDWARD J. LONGOSZ, II, ESQUIRE
1747 Pennsylvania Avenue, NW
12th Floor
Washington, DC 20006
202.659.6619
(elongosz@eckertseamans.com)
Representing Maryland Casualty and Zurich

COZEN O'CONNOR
BY: JACOB C. COHN, ESQUIRE
1900 Market Street
Philadelphia, Pennsylvania 19103-3508
215.665.2147
(jcohn@cozen.com)
Representing Federal Insurance Company

### Page 7

APPEARANCES (continued)

CUYLER BURK, P.C.
BY: STEFANO V. CALOGERO, ESQUIRE
Parsippany Corporate Center
Four Century Drive
Parsippany, New Jersey 07054
973.734.3200
(scalogero@cuyler.com)
Representing Allstate Insurance Company

GOODWIN PROCTER, LLP
BY: BRIAN H. MUKHERJEE, ESQUIRE*
(*VIA TELECONFERENCE)
901 New York Avenue, N.W.
Washington, DC 20001
202.346.4124
(bmukherjee@goodwinprocter.com)
Representing CNA Insurance

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
BY: KEVIN J. MANGAN, ESQUIRE*
(*VIA TELECONFERENCE)
222 Delaware Avenue
Suite 1501
Wilmington, Delaware 19801
302.252.4361
(kmangan@wcsr.com)
Representing State of Montana

PEPPER HAMILTON, LLP
BY: LINDA J. CASEY, ESQUIRE*
(*VIA TELECONFERENCE)
3000 Two Logan Square
Philadelphia, Pennsylvania 19103
215.981.4000
(caseyl@pepperlaw.com)
Representing BNSF Railway Company

### Page 8

I N D E X

Testimony of:
DAVID T. AUSTERN, ESQUIRE

| | |
|---|---|
| By Mr. Brown | Page 12, 242 |
| By Ms. Alcabes | Page 95 |
| By Mr. Candon | Page 123, 251 |
| By Mr. Demmy | Page 164 |
| By Mr. Cohn | Page 173 |
| By Mr. Plevin | Page 192 |
| By Ms. Cobb | Page 207 |
| By Ms. Casey | Page 219 |
| By Mr. Mangan | Page 221 |
| By Mr. Speights | Page 222 |

### Page 9

E X H I B I T S

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Austern-1 | Amended Notice of Deposition Of David T. Austern | 31 |
| Austern-2 | Exhibit 2 to Exhibit Book Asbestos PI Trust Agreement | 32 |
| Austern-3 | First Amended Joint Plan of Reorganization... | 43 |
| Austern-4 | Exhibit 6 to Exhibit Book Asbestos Insurance Transfer Agreement | 80 |
| Austern-5 | Exhibit 4 to Exhibit Book Trust Distribution Procedures | 90 |
| Austern-6 | Exhibit 10 to Exhibit Book Cooperation Agreement | 92 |
| Austern-7 | Notice of Deposition of David Austern | 95 |
| Austern-8 | Debtors' Disclosure Statement for the First Amended Joint Plan of Reorganization... | 118 |
| Austern-9 | Notice of Deposition of David T. Austern | 124 |

Page 10

EXHIBITS (continued)

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Austern-10 | Form 8-K | 124 |
| Austern-11 | Exhibit 8 to Exhibit Book Best Interests Analysis | 156 |

Page 11

DEPOSITION SUPPORT INDEX

Direction to Witness Not to Answer:
| Page | Line | Page | Line |
|---|---|---|---|
| 181 | 13 | 225 | 16 |
| 229 | 04 | 239 | 03 |

Request for Production of Documents:
Page  Line    Page  Line
NONE

Stipulations:
Page  Line    Page  Line
NONE

Area(s) Marked Confidential:
Page  Line    Page  Line
NONE

Page 12

---
PROCEEDINGS
---
MR. GUY: We will follow the federal rules.
---
DAVID T. AUSTERN, ESQUIRE, after having been first duly sworn, was examined and testified as follows:
---
EXAMINATION
---
BY MR. BROWN:
Q. Good morning, Mr. Austern. My name is Michael Brown. I represent OneBeacon American Insurance Company, Seaton Insurance Company, GEICO, and Republic Insurance Company.
    Could you state your full name for the record, please?
A. David Thomas Austern.
Q. Have you ever been deposed before?

Page 13

A. Yes.
Q. How many times?
A. Somewhere between 25 and 30 times.
Q. So it's fair to say that you are familiar with the protocol for a deposition then?
A. I am.
Q. Okay. Can you give me a summary of your professional background?
A. I was an assistant district attorney in the New York County District Attorney's Office for four years; I was an assistant United States attorney in the United States Attorney's Office in Washington, D.C. for four years; I was a law professor for two years; I was in the private practice of law for something like 12 years; and I've been general counsel of the Manville Personal Injury Settlement Trust, and I have had some other asbestos matters for the last 21 and a half years. That doesn't add up to 45, and it should, but...

Case 01-01139-AMC    Doc 21962-1    Filed 06/02/09    Page 6 of 11

12 (Pages 42 to 45)

Page 42

1  Q. Do you have any
2  understanding at all of what a demand is?
3  A. In bankruptcy law, no.
4  Q. Who do you understand to be
5  your constituency?
6  A. Future claimants.
7  Q. Do you have an understanding
8  that future claimants are the holders of
9  future demands?
10 A. I don't know.
11 Q. Do you have an understanding
12 as to whether the Debtors face the
13 prospect of any future asbestos PD
14 demands or asbestos PD claims?
15 A. I believe there are
16 scenarios in which they do.
17 Q. Could you describe them?
18 A. No, but I believe that there
19 are property damage claims that -- that
20 the Debtor is responsible
21 post-confirmation for certain property
22 damage claims.
23 Q. And that those property
24 damage claims would fit within what you

Page 43

1  understand to be a future property damage
2  claim as opposed to a current property
3  damage claim?
4  A. I am not sure.
5  Q. All right.
6     MR. BROWN: We will mark
7  this Austern-3.
8     (Austern-3 marked for
9  identification at this time.)
10 BY MR. BROWN:
11 Q. Mr. Austern, you have before
12 you a document that we have marked
13 Austern-3.
14    My first question is, can
15 you identify it?
16 A. It's the first Amended Joint
17 Plan of Reorganization.
18 Q. And this is one of the
19 documents you indicated previously that
20 you reviewed in preparation for this
21 deposition, correct?
22 A. Yes.
23 Q. Are there particular
24 provisions in the Plan, as you sit here

Page 44

1  today, for which you -- strike that.
2     Are there particular
3  provisions in the Plan that you don't
4  understand?
5  A. Yes.
6  Q. Are there any that stick out
7  in your mind in that regard?
8  A. Can I look at the Plan for a
9  moment?
10 Q. Sure.
11 A. By way of example, 7.15 of
12 the document.
13 Q. That's one that you do not
14 understand?
15 A. Well, it's one I have
16 trouble trying to understand.
17 Q. You are in good company.
18 A. There are other sections of
19 the Plan and other documents I reviewed
20 that address insurance issues, which I
21 have trouble understanding and rely on
22 counsel to explain to me.
23 Q. Well, as would have it, 7.15
24 is an area that I wanted to question you

Page 45

1  about. So why don't we turn to that
2  section.
3  A. (Witness complies with
4  request.)
5  Q. And why don't you take a
6  moment to review it. It's not terribly
7  long.
8     MR. GUY: Is there any
9  particular section, Michael?
10    MR. BROWN: Well, I have
11 questions about a few sections, so
12 it might be easiest if he reads
13 the whole thing.
14    THE WITNESS: Okay. I have
15 reviewed it.
16 BY MR. BROWN:
17 Q. Okay. Recognizing that you
18 don't understand it fully, do you have an
19 idea of what its intended purpose is?
20 A. Its intended purpose, as I
21 understand it, is to create insurance
22 neutrality.
23 Q. And what do you understand
24 insurance neutrality to be?

Page 46

1  A. That the Plan does not
2  interfere with the rights of the
3  insurance companies.
4  Q. Okay. Are there any
5  exceptions to that broad statement, as
6  you understand Section 7.15?
7  MR. COHN: You might want to
8  rephrase that because you just
9  changed from his understanding of
10 insurance neutrality in the broad
11 concept to a provision that very
12 clearly is not what it was
13 announced to be.
14 MR. BROWN: Can you read the
15 last question?
16 (The reporter read from the
17 record as requested.)
18 BY MR. BROWN:
19 Q. You understand Section 7.15
20 to be intended to preserve the insurers'
21 rights; is that a fair statement?
22 A. Yes.
23 Q. Okay. Is it your belief
24 that that's what it accomplishes?

Page 47

1  A. I don't know.
2  (There was a discussion held
3  off the record at this time.)
4  BY MR. BROWN:
5  Q. Mr. Austern, are you
6  familiar with the UNR decision in the
7  Seventh Circuit, the citation to which is
8  942 F.2d 1101?
9  A. I am familiar with the UNR
10 Trust. I am not familiar with the
11 decision.
12 Q. Are you familiar with what
13 happened in the trial court in the
14 Fuller-Austin coverage case?
15 MR. GUY: Objection, vague.
16 THE WITNESS: No.
17 BY MR. BROWN:
18 Q. You said you just read
19 Section 7.15. Let's focus on (a).
20 Is your understanding that
21 (a) is a preemptory provision with
22 respect to the Plan, Plan documents, and
23 Confirmation Order except as specifically
24 set forth in Section 7.15?

Page 48

1  MR. GUY: Objection.
2  MR. LIESEMER: Object to the
3  form of the question.
4  MR. GUY: It calls for a
5  legal conclusion. The witness is
6  a fact witness.
7  MS. BAER: Same objection.
8  THE WITNESS: I am not
9  positive I know what you mean by
10 preemptory. You sort of focused
11 on my problem with 7.15. I don't
12 know how you read the successive
13 paragraphs as impacting on each
14 other.
15 BY MR. BROWN:
16 Q. Do you believe Section 7.15
17 to be unclear?
18 A. To me.
19 MR. GUY: Objection.
20 BY MR. BROWN:
21 Q. Okay. Well, let's explore
22 that a little bit.
23 Let's look at Section
24 7.15(b), and you will see that there is a

Page 49

1  reference in subsection (b) to, quote,
2  the beneficiaries of the Asbestos PI
3  Trust?
4  Do you see that?
5  A. Yes.
6  Q. Do you have any
7  understanding as to what that means?
8  A. It means what it states, the
9  beneficiaries of the Personal Injury
10 Trust.
11 Q. And who are they?
12 A. Well, there are personal
13 injury claimants obviously, and there
14 are, under certain circumstances,
15 indirect personal injury claimants.
16 Q. Okay. And who do you
17 understand to be within the definition of
18 indirect PI Trust claimants?
19 A. Entities that can bring
20 claims as indirect claimants on the
21 grounds that they have paid dollars that
22 the Personal Injury Trust should
23 reimburse them for.
24 Q. Okay. Are you familiar at

Page 50

1  all with any of the Debtors' pre-petition
2  settlements with insurance companies?
3      A.  I have seen a list, and
4  that's the extent of my knowledge.
5      Q.  Are you aware that at least
6  certain of those insurers have
7  contractual indemnity provisions against
8  the Debtors in those settlement
9  agreements?
10     A.  Can you explain to me what
11 you mean by contractual?
12     Q.  Sure. I will represent to
13 you that there are settlement agreements
14 that are pre-petition settlement
15 agreements in which the insurer paid a
16 sum of money to the Debtors, and in
17 exchange for paying that money, the
18 Debtors agreed to indemnify the insurer
19 in the event that claims were asserted
20 against the policy after the settlement
21 by other parties.
22     A.  Third party claimants?
23     Q.  Third parties.
24         Do you understand the term

Page 51

1  "indirect PI Trust claims" to include the
2  insurers insofar as they have the type of
3  contractual indemnity claim that I just
4  described?
5      MR. LIESEMER: Object to the
6  form of the question.
7      MR. GUY: Same objection.
8      THE WITNESS: Mr. Brown, I
9  understand that all asbestos
10 personal injury insurance has been
11 channelled to the Asbestos
12 Personal Injury Trust. And there
13 are settled insurance companies
14 that -- how would I describe it --
15 their obligations have been
16 settled with the Debtor; there are
17 unsettled ones; and then there are
18 those that have coverage in place
19 agreements or reimbursement
20 agreements.
21     I don't know where your
22 question fits into my
23 understanding of those buckets of
24 insurance entities.

Page 52

1  BY MR. BROWN:
2      Q.  Okay. Let me parse that
3  out. Do you understand certain of the
4  Debtors' insurance companies to have
5  indirect asbestos PI claims?
6      A.  They could. They could have
7  the right to file them, yes.
8      Q.  Okay. And do you understand
9  those insurers to fit within the phrase
10 in (b), the beneficiaries of the Asbestos
11 PI Trust? In other words, are the
12 insurers that have the contractual
13 indemnity claims against the Debtors,
14 quote, beneficiaries of the Asbestos PI
15 Trust, as that term is used in 7.15(b)?
16     MR. LIESEMER: Object to the
17 form of the question.
18     MR. GUY: Objection, asked
19 and answered, compound.
20     MS. BAER: Same objection.
21     MR. GUY: You may answer.
22     THE WITNESS: As far as I
23 know, they could be under certain
24 circumstances.

Page 53

1  BY MR. BROWN:
2      Q.  All right. Then I would now
3  like you to compare the language in (a)
4  and the language in (b) based on the
5  assumption that they are.
6      MR. GUY: Now I am confused.
7      MR. BROWN: Anyone who reads
8  this provision is confused.
9      MR. GUY: I am confused.
10 It's talking --
11     THE WITNESS: You are asking
12 me to compare (a) to (b) or (b) to
13 (a)?
14     MR. GUY: For what purpose?
15 BY MR. BROWN:
16     Q.  If the insurer that I just
17 described is a beneficiary of the
18 Asbestos PI Trust, then, according to
19 (b), it is bound by the Plan, the Plan
20 documents, and the Confirmation Order,
21 correct?
22     A.  That's what (b) says, yes.
23     Q.  So does (b) then supersede
24 subsection (a)?

Page 54

1   A.  I don't know.
2   Q.  Let's go to a defined term
3   in the Plan which appears on page 6,
4   number 16, quote, asbestos insurer
5   coverage defenses. Take a moment to
6   review that provision.
7       MR. GUY: So that I don't
8   have to repeat it throughout, I am
9   going to enter a standing
10  objection. The witness is here
11  not as a 30(b)(6) witness on
12  insurer issues, and the Plan says
13  what it says.
14      MR. BROWN: I understand.
15      MR. COHN: Can you keep your
16  voice up, Tom?
17      MR. GUY: We will go off the
18  record.
19      (There was a discussion held
20  off the record at this time.)
21  BY MR. BROWN:
22  Q.  Have you had a chance to
23  review the definition of asbestos insurer
24  coverage defenses?

Page 55

1   A.  Yes.
2   Q.  Do you understand it?
3   A.  No.
4   Q.  Fair enough. You are not
5   alone.
6       Let's get back to 7.15.
7   A.  Can you give me the page
8   again?
9   Q.  I am sorry. It's page 87.
10  Actually, what I would like to do is I
11  want to do a comparison. Can you also
12  look at Section 11.9? You might want to
13  take a moment to read 11.9.
14  A.  Can you give me a page
15  number?
16  Q.  Yes. Page 115, Section 11.9
17  entitled Exculpation.
18  A.  Okay.
19  Q.  If you keep that page handy
20  and go back and look at Section 7.15, I
21  will represent to you, feel free to look
22  yourself, that there is no specific
23  reference in 7.15 to Section 11.9.
24  A.  I believe that's correct.

Page 56

1   Q.  Okay. My question is, do
2   you have an understanding as to whether
3   the language in 7.15(a) supersedes the
4   language in 11.9?
5   A.  I don't know.
6   Q.  Do you know whether it's
7   intended to?
8   A.  No.
9   Q.  Reading both of those
10  provisions, do you understand whether it
11  does?
12      MR. GUY: Objection, calls
13  for a legal conclusion.
14      MR. BROWN: It just calls
15  for his understanding.
16      THE WITNESS: Mr. Brown, I
17  must confess to you when I read
18  11.9 both the first time and the
19  second time, what I concentrated
20  on was on the fact that I had
21  exculpation, and I didn't
22  concentrate very much more.
23  BY MR. BROWN:
24  Q.  So you have been exculpated

Page 57

1   if the Plan is confirmed?
2   A.  Yes.
3   Q.  Let's just use that as an
4   example, not to pick on you, but since
5   you understand at least that much in
6   11.9.
7       Insofar as an insurer had a
8   claim against you, would you still be
9   exculpated in light of Section 7.15 as
10  you understand it?
11      MR. LIESEMER: Object to the
12  form of the question.
13      MR. GUY: Objection, calls
14  for a legal conclusion.
15      THE WITNESS: The first part
16  of the answer is that in the Trust
17  Agreement, I also have what is not
18  labeled as exculpation but
19  indemnification rights, not
20  including gross negligence.
21      The answer is I don't know
22  the answer to that question.
23  BY MR. BROWN:
24  Q.  Does that concern you?

Page 58

1     A.   Does a possible conflict of
2 7.15 to 11.9 concern me?
3     Q.   Well, yes.
4     A.   No.
5     Q.   Okay. Would you go back to
6 Section 7.7 of the Plan?
7     A.   Did you say 7.7?
8     Q.   Yes. 7.7 entitled
9 Conditions to Occurrence of the
10 Confirmation Date.
11     MR. GUY: What page is that?
12     MR. BROWN: I am sorry. It
13 starts on page 69, and there are a
14 lot of conditions. So it runs to
15 page 81.
16     THE WITNESS: Okay.
17 BY MR. BROWN:
18     Q.   You are free to look at
19 that, if you want, but I understand you
20 have already reviewed the Plan.
21     A.   Yes.
22     Q.   My question is, do you have
23 an understanding as to whether Section
24 7.15 entitled Insurance Neutrality

Page 59

1 preempts Section 7.7 insofar as the
2 Debtors's insurers are concerned?
3     MR. GUY: Objection, calls
4 for a legal conclusion.
5     THE WITNESS: I don't know.
6 BY MR. BROWN:
7     Q.   Okay. If you look at
8 Section 7.8, which begins on page 81,
9 that one is entitled Conditions to
10 Occurrence of the Effective Date.
11     If I asked you the same
12 question, would your answer be the same
13 with respect to Section 7.8?
14     A.   Can I look at 7.8 for a
15 moment?
16     Q.   Sure.
17     A.   I am sorry. Could you
18 repeat the question?
19     Q.   Let me see if I can rephrase
20 it. My question is whether the
21 preemptory language that appears in
22 Section 7.15(a) preempts the conditions
23 set forth in Section 7.8, as understand
24 it?

Page 60

1     MR. GUY: Objection.
2     MR. LIESEMER: I join in
3 that objection.
4     MR. GUY: It calls for a
5 legal conclusion.
6     THE WITNESS: I don't know.
7 BY MR. BROWN:
8     Q.   Okay. Can you now look at
9 7.15(h)?
10     A.   Did you say (e)?
11     Q.   (H). It appears on page 88.
12     A.   Yes.
13     Q.   Do you understand 7.15(h) to
14 bind all of the Debtors' insurers to all
15 of the releases and injunctions set forth
16 in the Plan?
17     MR. GUY: Objection, calls
18 for a legal conclusion.
19     THE WITNESS: I don't know.
20 BY MR. BROWN:
21     Q.   Let's go to page 97 of the
22 Plan, Section 8.5 entitled Successor
23 Claims Injunction.
24     MR. GUY: When you get to a

Page 61

1 point for a break, can we take
2 one?
3     MR. BROWN: Why don't we do
4 that right now.
5     (There was a break from
6 11:03 a.m. to 11:13 a.m.)
7     (The reporter read from the
8 record as requested.)
9 BY MR. BROWN:
10     Q.   Mr. Austern, I don't know if
11 you have had a chance to review that
12 section during the break, but if not, can
13 you take a look at it?
14     A.   Yes, I have reviewed this.
15     Q.   Do you have an understanding
16 as to the purpose of the successor claims
17 injunction?
18     MR. LIESEMER: Object to the
19 form of the question.
20     THE WITNESS: Well, as its
21 name implies, it is intended to
22 enjoin certain conduct. Beyond
23 that, I, of course, was not part
24 of this case when either the

Page 62

1  Sealed Air or the Fresenius
2  actions were commenced and
3  concluded and settled.
4  BY MR. BROWN:
5     Q.   Do you understand the
6  Fresenius indemnified parties and the
7  Sealed Air indemnified parties to be the
8  beneficiaries of the successor claims
9  injunction?
10    A.   I believe they are.
11    Q.   Okay. The successor claims
12 injunction is a 105 injunction, correct?
13    A.   Correct. It's not a 524(g)
14 injunction.
15    Q.   I gather from your answer
16 that you understand the difference
17 between a Section 105 injunction and a
18 Section 524(g) injunction?
19    A.   To the extent that Manville
20 had only a Section 105 injunction, yes.
21    Q.   Okay. Do you have an
22 understanding as to whether the successor
23 claims injunction enjoins any claims that
24 are asbestos-related claims?

Page 63

1        MR. GUY: Objection, calls
2     for a legal conclusion.
3        THE WITNESS: Do you mean
4     asbestos personal injury, or no?
5  BY MR. BROWN:
6     Q.   Could be, or any other type
7  of asbestos-related claim.
8     A.   I am not sure.
9     Q.   Do you understand there to
10 be a problem with using a Section 105
11 injunction to enjoin asbestos-related
12 claims?
13       MR. GUY: Objection, vague
14    as to problem.
15       MR. LIESEMER: I join in the
16    objection.
17       THE WITNESS: There are
18    certain 105 injunctions that can
19    be lifted. I assume you cannot do
20    that with a 524(g) injunction as
21    it is inexorably intertwined with
22    the Plan itself. I don't know of
23    any other distinctions.
24 BY MR. BROWN:

Page 64

1     Q.   The successor claims
2  injunction by its terms cannot be lifted?
3     A.   It cannot, as I understand
4  it.
5     Q.   If a claim fits within the
6  definition of the successor claim, as
7  that term is defined in the Plan, do you
8  understand the successor claims
9  injunction to enjoin that claim?
10       MR. LIESEMER: Object to the
11    form of the question.
12       MR. GUY: Same objection.
13       MS. BAER: Same objection.
14       THE WITNESS: I don't know.
15 BY MR. BROWN:
16    Q.   Let's turn back for a moment
17 to asbestos PI channelling injunction,
18 page 90, Section 8.2.
19    A.   Okay.
20    Q.   Do you understand the
21 asbestos PI channelling injunction to be
22 purely a 524(g) injunction?
23       MR. GUY: Objection.
24       THE WITNESS: I don't know.

Page 65

1     I don't know if it is or not.
2  BY MR. BROWN:
3     Q.   All right. Mr. Austern, I
4  want to shift gears here and turn back to
5  the Asbestos PI Trust Agreement, which we
6  marked as Austern-2. And I would like to
7  direct your attention to Section 6.1.
8  And you are going to want a page.
9     A.   It's 34.
10    Q.   In 6.1, the second sentence
11 says, "He shall serve in a fiduciary
12 capacity, representing the interests of
13 the holders of future PI Trust Claims for
14 the purpose of protecting the rights of
15 such persons."
16       Do you see that?
17    A.   Yes.
18    Q.   And the "he" there is you,
19 correct?
20    A.   Yes.
21    Q.   What do you understand your
22 obligations to be to the holders of
23 future PI Trust claims?
24    A.   I represent them, and, as to