# EXHIBIT B

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

─────────────────────── X
In Re:                      Chapter 11

                            Case No.

                            01-01139 JKF
W.R. Grace & Co., et al.,

                            (Jointly
           Debtors.         Administered)
─────────────────────── X


\* \* \* CONFIDENTIAL \* \* \*

— — —

May 13, 2009

— — —

DEPOSITION of RICHARD FINKE, held at the offices of Kirkland & Ellis, 655 Fifteenth Street, N.W., Washington, DC, commencing at 9:32 A.M., on the above date, before Lisa Lynch, a Registered Merit Reporter, New Jersey Certified Court Reporter, License No. XI00825, and Certified Realtime Reporter

— — —

MAGNA LEGAL SERVICES, LLP

7 Penn Center, 8th Floor
1635 Market Street
Philadelphia, PA  19103

## Page 2

APPEARANCES:

DRINKER BIDDLE & REATH, LLP
BY: MICHAEL F. BROWN, ESQUIRE
One Logan Square
18th and Cherry Streets
Philadelphia, Pennsylvania 19103-6996
(brownmf@dbr.com)
Representing OneBeacon America Insurance Company, Seaton Insurance Company, Government Employees Insurance Company, Columbia Insurance Company f/k/a Republic Insurance Company

CAPLIN & DRYSDALE, CHARTERED
BY: JEFFREY A. LIESEMER, ESQUIRE
One Thomas Circle NW
Suite 1100
Washington, DD 20005
202.862.7801
(jal@capdale.com)
Representing Grace, Official Committee of Asbestos Personal Injury Claimants ("ACC")

KIRKLAND & ELLIS, LP
BY: BARBARA M. HARDING, ESQUIRE
     THEODORE L. FREEDMAN, ESQUIRE
655 Fifteenth Street, N.W.
Washington, DC 20005-5793
202.879.5081
(barbara.harding@kirkland.com)
(tfreedman@kirkland.com)
Representing the Debtors

THE LAW OFFICES OF JANET S. BAER, P.C.
BY: JANET S. BAER, ESQUIRE
70 West Madison Street
Suite 2100
Chicago, Illinois 60602
jbaer@jsbpc.com
Representing W.R. Grace

## Page 3

APPEARANCES: (continued)
SIMPSON THACHER & BARTLETT, LLP
BY: ELISA ALCABES, ESQUIRE
425 Lexington Avenue
New York, New York 10017-3954
212.455.2846
(ealcabes@stblaw.com)
Representing Travelers Casualty and Surety Company

VORYS, SATER, SEYMOUR AND PEASE, LLP
BY: WILLIAM J. POHLMAN, ESQUIRE*
    PHILIP DOWNEY, ESQUIRE*
(*VIA TELECONFERENCE)
52 East Gay Street
Columbus, Ohio 43215
614.464.8349
(wjpohlman@vorys.com)
Representing The Scotts Company, LLC

LEWIS, SLOVAK & KOVACICH, PC
BY: TOM L. LEWIS, ESQUIRE
P.O. Box 2325
723 Third Avenue
Great Falls, Montana 59403
406.761.5595
tom@lsklaw.net
Representing the Libby Claimants

SPEIGHTS & RUNYAN
BY: DANIEL H. SPEIGHTS, ESQUIRE*
(*VIA TELECONFERENCE)
200 Jackson Avenue East
P.O. Box 685
Hampton, South Carolina 29924
803.943.4444
(dspeights@speightsrunyan.com)
Representing Anderson Memorial Hospital

## Page 4

APPEARANCES: (continued)
MENDES & MOUNT, LLP
BY: ALEXANDER MUELLER, ESQUIRE
750 Seventh Avenue
New York, New York 10019
212.261.8296
(alexander.mueller@mendes.com)
Representing London Market Companies

FORD MARRIN ESPOSITO & WITNEYER & GLESER
BY: ELIZABETH M. DeCRISTOFARO, ESQUIRE*
(*VIA TELECONFERENCE)
Wall Street Plaza
New York, New York 10005-1875
212.269.4900
Representing Continental Casualty Company and Continental Insurance Company

BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
BY: MATTHEW I. KRAMER, ESQUIRE*
(*VIA TELECONFERENCE)
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-5340
305.450.7246
(mkramer@bilzin.com)
Representing Property Damage Committee

STROOCK & STROOCK & LAVAN, LLP
BY: ARLENE G. KRIEGER, ESQUIRE*
    LEWIS KRUGER, ESQUIRE*
(*VIA TELECONFERENCE)
180 Maiden Lane
New York, New York 10038-4982
212.806.5400
(akrieger@stroock.com)
Representing Official Committee of Unsecured Creditors

## Page 5

APPEARANCES: (continued)

CROWELL & MORING, LLP
BY: MARK D. PLEVIN, ESQUIRE
    NOAH S. BLOOMBERG, ESQUIRE
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
202.624.2913
(mplevin@crowell.com)
(nbloomberg@crowell.com)
Representing Fireman's Fund Insurance (Surety Bond)

STEVENS & LEE, P.C.
BY: MARNIE E. SIMON, ESQUIRE
1818 Market Street, 29th Floor
Philadelphia, Pennsylvania 19103-1702
215.751.2885
(mes@stevenslee.com)
Representing Fireman's Fund Insurance

LAW OFFICES OF ALAN B. RICH
BY: ALAN B. RICH, ESQUIRE
Elm Place, Suite 4620
1401 Elm Street
Dallas, Texas 75202
214.744.5100
(arich@alanrichlaw.com)
Representing Property Damage PCR

CONNOLLY BOVE LODGE & HUTZ, LLP
BY: JEFFREY C. WISLER, ESQUIRE
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
302.888.6528
(jwisler@cblh.com)
Representing Maryland Casualty

Page 6

```
 1   APPEARANCES: (continued)
 2   ECKERT SEAMANS CHERIN & MELLOTT, LLC
     BY: EDWARD J. LONGOSZ, II, ESQUIRE
 3   1747 Pennsylvania Avenue, N.W.
     12th Floor
 4   Washington, DC 20006
     202.659.6619
 5   (elongosz@eckertseamans.com)
     Representing Maryland Casualty and Zurich
 6
 7   WILEY REIN, LLP
     BY: RICHARD A. IFFT, ESQUIRE
 8   1776 K Street NW
     Washington, DC 20006
 9   202.719.7170
     (rifft@wileyrein.com)
10   Representing Maryland Casualty and Zurich
11
     COZEN O'CONNOR
12   BY: JACOB C. COHN, ESQUIRE
     1900 Market Street
13   Philadelphia, Pennsylvania 19103-3508
     215.665.2147
14   (jcohn@cozen.com)
     Representing Federal Insurance Company
15
16   ORRICK HERRINGTON & SUTCLIFFE, LLP
     BY: PERI N. MAHALEY, ESQUIRE
17   Columbia Center
     1152 15th Street, N.W.
18   Washington, DC 20005-1706
     202.339.8516
19   (pmahaley@orrick.com)
     Representing PI Future Claimants'
20   Representative
21
     CUYLER BURK, P.C.
22   BY: ANDREW CRAIG, ESQUIRE
     4 Century Drive
23   Parsippany, New Jersey 07054
     973.734.3200
 4   (acraig@cuyler.com)
```

Page 7

```
 1   APPEARANCES: (continued)
 2   O'MELVENY & MEYERS LLP
     BY: TANCRED SCHIAVONI, ESQUIRE*
 3   (*VIA TELEPHONE)
     7 Times Square
 4   New York, New York 10036
     212.326.2267
 5   (tschiavoni@omm.com)
     Representing Arrowood Indemnity Company
 6
 7   WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
     BY: KEVIN J. MANGAN, ESQUIRE*
 8   (*VIA TELECONFERENCE)
     222 Delaware Avenue
 9   Suite 1501
     Wilmington, Delaware 19801
10   302.252.4361
     (kmangan@wcsr.com)
11   Representing State of Montana
12
     PEPPER HAMILTON, LLP
13   BY: LINDA J. CASEY, ESQUIRE*
     (*VIA TELECONFERENCE)
14   3000 Two Logan Square
     Philadelphia, Pennsylvania 19103
15   215.981.4000
     (caseyl@pepperlaw.com)
16   Representing BNSF Railway Company
17   KRAMER LEVIN NAFTALIS & FRANKEL, LLP
     BY: SARAH SCHINDLER-WILLIAMS, ESQUIRE*
18   (*VIA TELECONFERENCE)
     1177 Avenue of the Americas
19   New York, New York 10036
     212.715.9515
 0   (SSchindlerWilliams@kramerlevin.com)
     Representing the Equity Committee
21
22
23
24
```

Page 8

```
 1              INDEX
              EXAMINATION
 2
     Witness Name              Page
 3   RICHARD FINKE
 4      BY MR. BROWN           12,333
 5      BY MS. ALCABES         129
 6      BY MR. LEWIS           187
 7      BY MR. PLEVIN          265
 8      BY MR. WISLER          285
 9      BY MR. COHN            289
10      BY MR. MANGAN          296
11      BY MR. DOWNEY          305, 371
12      BY MR. SCHIAVONI       343
13      BY MR. SPEIGHTS        347
14
15            EXHIBITS
     EXHIBIT    DESCRIPTION           ID
16
     Exhibit 1  Notice of Deposition of   16
17              Debtors Pursuant to Rule
                30(b)(6)
18
     Exhibit 2  Document entitled W.R.    16
19              Grace/Confirmation Hearing
                30(b)(6) Deposition Notice
20
     Exhibit 3  SEC Form 8-K              25
21
     Exhibit 4  Exhibit 6 to Exhibit Book, 41
22              Asbestos Insurance
                Transfer Agreement
23
     Exhibit 5  Exhibit 19 to Exhibit     53
24              Book, Retained Causes of
```

Page 9

```
 1            EXHIBITS
     EXHIBIT    DESCRIPTION           ID
 2
 3   Exhibit 6  Exhibit 2 to Exhibit Book, 55
                Asbestos PI Trust Agreement
 4
     Exhibit 7  Exhibit 4 to Exhibit Book, 55
 5              Trust Distribution
                Procedures
 6
     Exhibit 8  First Amended Joint Plan  70
 7              of Reorganization
 8   Exhibit 9  Exhibit 5 to Exhibit Book, 92
                Schedule of Settled
 9              Asbestos Insurers Entitled
                to 524(g) Protection
10
     Exhibit    Settlement Agreement     98
11   10         Bates stamped OB 1 through
                33
12
     Exhibit    Travelers/Allstate       135
13   11         30(b)(6) deposition notice
14   Exhibit    Travelers 30(b)(6)       136
     12         supplemental deposition
15              notice
16   Exhibit    Grace/Aetna Asbestos     149
     13         Settlement Agreement dated
17              May 22, 1996
18   Exhibit    Exhibit 25 to Exhibit    178
     14         Book, CMO for Class 7A
19              Asbestos PD Claims
20
21
22
23
24
```

Page 10

DEPOSITION SUPPORT INDEX

Direction to Witness Not To Answer
| Page | Line | Page | Line |
|---|---|---|---|
| 30 | 2 | 37 | 12 |
| 37 | 17 | 39 | 8 |
| 39 | 15 | 369 | 1 |

Request For Production of Documents
Page Line    Page Line
(None)

Stipulations
Page Line    Page Line
(None)

Questions Marked
Page Line    Page Line
(None)

---

Page 11

1  RICHARD FINKE,
2     having been sworn by the Notary
3     Public of the States of New York
4     and New Jersey, was examined and
5     testified as follows:
6
7  EXAMINATION BY
8  MR. BROWN:
9     Q. Good morning, Mr. Finke.
10 My name is Michael Brown. I represent One
11 Beacon, Seaton, Geico and Republic for the
12 objecting insurance companies in the Grace
13 bankruptcy. You've been deposed several
14 times before, correct?
15    A. Yes, I have.
16    Q. Okay. So we can dispense
17 with the formalities of what a
18 deposition's all about?
19    A. Yes, we can.
20    Q. Okay.
21       MS. HARDING: Michael,
22    would you mind if I made a quick
23    statement on the record?
24       MR. BROWN: Sure.

Page 12

1       MS. HARDING: I just wanted
2    to make a statement on the record
3    that the debtors have designated
4    Mr. Finke to answer certain
5    appropriate questions related to
6    certain 30(b)(6) topics.
7       As we've indicated, Mr.
8    Finke will be available for seven
9    hours today. We've also designated
10   Mr. Hughes and Mr. LaForce to
11   answer other 30(b)(6) topic
12   questions. We are hoping and
13   expecting that the parties seeking
14   to ask questions have coordinated
15   so that we can end in seven hours
16   and we think it's a reasonable
17   expectation.
18      The debtors have reviewed
19   the deposition of Mr. Lockwood and
20   agree, in essence, with Mr.
21   Lockwood's answers with respect to
22   how the Plan operates and so we
23   think and are very hopeful that
24   there will not be a need to go

Page 13

1    further than seven hours to get to
2    the appropriate inquiry as to how
3    the Plan operates. So I just
4    wanted to get that on the record.
5       MR. BROWN: Okay.
6    Actually, that's helpful. Maybe I
7    could follow up with a question for
8    Mr. Finke.
9       Q. Mr. Finke, have you
10 reviewed Mr. Lockwood's Rule 30(b)(6)
11 deposition transcript?
12    A. Yes, I have.
13    Q. Okay. Is there anything
14 that you read in that transcript that you
15 disagreed with?
16    A. No, nothing of substance.
17    Q. Okay. How about anything
18 not of substance?
19    A. There are a few occasions,
20 I think, where I either would have worded
21 something differently or where I think Mr.
22 Lockwood may have been either in error --
23 might have been in error depending on
24 whether he was -- depending on the

Page 70

1  you now what has been marked as Exhibit 8
2  to this deposition and what is Exhibit 1
3  to the Exhibit Book. First question is:
4  Would you identify the document, please?
5      A.  Yes. I think Exhibit 8 is
6  the First Amended Joint Plan of
7  Reorganization that was filed by Grace and
8  its co-proponents.
9      Q.  Okay.
10     A.  And the date is February --
11 date on the document is February 27,
12 2009.
13     Q.  Okay. Have you reviewed
14 this document in its entirety?
15     A.  Yes.
16     Q.  How many times?
17         MS. HARDING: You mean in
18     its entirety how many times?
19         MR. BROWN: Well, let's
20     start-up with that question.
21     A.  Interpreting review as
22 meaning a detailed word-for-word reading
23 of the entire document, I would say
1  once.

Page 71

1      Q.  Okay. And how many times
2  have you partially reviewed the
3  document?
4      A.  Many times.
5      Q.  Okay. Do you understand
6  it?
7      A.  I have an understanding of
8  it. I would not profess to have a
9  complete understanding of it.
10     Q.  Okay. Are there particular
11 provisions in the Plan that you're quite
12 certain you don't understand?
13         MS. HARDING: Object to
14     form and relevance and concern that
15     we're not going to the seven
16     hours -- I mean, if you have a
17     specific question about a specific
18     provision that you don't understand
19     as an insured, then I think you
20     should ask him questions about
21     that. I think...
22         MR. BROWN: Is that an
23     instruction not to answer the
24     question?

Page 72

1         MS. HARDING: No, it's
2     not.
3         MR. BROWN: Okay. It's
4     just --
5         MS. HARDING: It's just an
6     objection that...
7     A.  I'm sure that I do not
8  understand the annex or annexes that I
9  believe relate to tax issues.
10        MS. HARDING: I guess --
11    are you asking him in his personal
12    capacity?
13        MR. BROWN: I don't think
14    he's here in his personal capacity.
15    I think he's here in his capacity
16    as a designee for W.R. Grace or for
17    the debtors.
18        MS. HARDING: Okay. Are
19    you asking him if there's anybody
20    at W.R. Grace that has an
21    understanding of different
22    provisions of the Plan as lawyers
23    and --
24        MR. BROWN: I think he's

Page 73

1  here to testify about the operation
2  of the Plan. I think that was --
3  isn't he? So my question is
4  what --
5         MS. HARDING: He's here to
6     answer questions to help you
7     understand the Plan.
8         MR. BROWN: Barbara, can
9     we --
10        MS. HARDING: So I think if
11    there are questions that you don't
12    understand, I think you should ask
13    him those.
14        MR. BROWN: I would like to
15    know whether there are particular
16    provisions in the Plan that the
17    witness can identify that he is not
18    familiar with or that he doesn't
19    understand.
20        MS. HARDING: Well, I think
21    he's asked and answered, so...
22    A.  Yes, for myself there are
23 provisions that I do not understand, such
24 as the tax annexes. This --

Page 74

MS. HARDING: Which also were not designated 30(b)(6) topics by any person who --
MR. BROWN: Can I ask that we just let the witness answer the question?
MS. HARDING: Well, I think if you want to ask him questions about topics that were designated that you asked him to become familiar with, then --
MR. BROWN: I didn't ask him a question about the tax annex. It was in his answer.
MS. HARDING: Well, that's because you asked him about any provision of the Plan. You asked -- we tried to prepare the witness to answer questions about topics that everybody asked about.
MR. BROWN: All right. I'll ask my question again. If you have an objection and you want to instruct him not to answer, then do

Page 75

it and we'll move on.
BY MR. BROWN:
Q. Mr. Finke, as you sit here today looking at the Joint Plan, can you identify particular provisions that you do not understand?
MS. HARDING: Object, asked and answered, but answer one more time if you'd like.
A. In addition to what I've already identified, the provision on the warrants is not entirely clear to me. And if I spent the time to go through the document page by page, there may be a few other sections that I don't feel very comfortable with in terms of the level of my understanding.
Speaking on behalf of W.R. Grace as a whole, there are individuals who understand those sections and, taken as a whole, I think W.R. Grace does have a good understanding of the Plan.
Q. Okay. Well, let me take your counsel up on her offer and direct

Page 76

your attention to page 87 of the Plan, Section 7.15, and what I would like you to do, because I have a series of questions about it, is why don't you take a few moments to review Section 7.15. In fact, if you want to take a break at this point --
MR. BROWN: Does that make sense? Okay.
MS. HARDING: Well, I mean, how long is it, again?
THE WITNESS: Seven pages.
MS. HARDING: Five-minute break?
MR. BROWN: That's fine, yes.
(Recess taken.)
BY MR. BROWN:
Q. Mr. Finke, we had a short break and before that I directed your attention to Section 7.15 of the Plan entitled Insurance Neutrality. Did you have an opportunity to review that section

Page 77

during the break?
A. Yes.
Q. This was not one of the sections that you mentioned in your prior testimony that you were -- that you did not understand. Is it safe to say that this is a provision that you do understand? And I'm asking that question, really, in your capacity as an individual and as the designee on this subject for the debtors.
MS. HARDING: Object to form.
A. Yes, I believe I understand it.
Q. Okay. Can you turn to Section 11.9 of the Plan, and that's entitled Exculpation, and if you'd take a moment to review that section.
(The witness reviews the document.)
A. Okay.
Q. Given the language in Section 7.15, am I correct that asbestos insurance entities are not bound by the

Page 78

1  exculpation provision in Section 11.9 of
2  the Plan?
3      MR. LIESEMER: Object to
4  the form.
5      MS. HARDING: Object to the
6  form.
7      A. I believe they -- the
8  asbestos insurance companies are bound by
9  Section 11.9.
10     Q. They are bound?
11     A. Yes.
12     Q. If you go back to 7.15,
13  where is that set forth?
14     MS. HARDING: Object to
15  form.
16     MR. LIESEMER: Same
17  objection.
18     A. Well, of course, there's no
19  provision in Section 7.15 that
20  specifically states that the insurers are
21  bound by Section 11.9. I assume that's
22  not what you're asking, but -- well,
23  literally, I think that is what you asked,
24  so --

Page 79

1      Q. Yes, that is what I asked.
2      A. -- that's my answer then.
3      Q. So there's nothing in 7.15
4  that says that they're bound by 11.9 but
5  your testimony is that they are in fact
6  bound by 11.9?
7      A. Yes.
8      Q. Are there any other
9  provisions in the Plan that are not
10 specifically spelled out in Section 7.15
11 for which the insurers are bound
12 notwithstanding Section 7.15?
13     MS. HARDING: Objection to
14 form, and I think it misstates his
15 testimony.
16     THE WITNESS: I'm sorry.
17 Could you read back the question?
18     (The reporter reads the
19 pending question.)
20     MS. HARDING: Object to
21 form. I think it's confusing,
22 speculative. I don't see how you
23 can possibly answer that question.
24 But if you can answer it, go ahead.

Page 80

1      It also calls for a legal
2  conclusion.
3      (The witness reviews the document.)
4      A. Okay. I would direct you
5  to Section 7.15(h) which states that "the
6  asbestos insurance entities shall be
7  subject to the releases and injunctions to
8  the extent described in this Plan" so my
9  answer to your question is that I believe
10 any provisions in the Plan that would
11 constitute a release or an injunction, and
12 I would include 11.9 in that language, are
13 binding on the asbestos insurance
14 entities.
15     Q. So your testimony is that
16 7.15(h) includes through its language
17 Section 11.9?
18     A. Yes, that is how I read
19 it.
20     Q. What consideration, if any,
21 are Grace's insureds getting under the
22 Plan in exchange for the exculpation
23 provision in 11.9?
24     MR. LIESEMER: Objection to

Page 81

1  form.
2      MS. HARDING: Objection to
3  form.
4      A. All right. First, your
5  question assumes that the insurance
6  entities would be entitled to some
7  consideration in exchange for being bound
8  by Section 11.9. I don't know that to be
9  the case. I don't know that they're not
10 entitled to it either.
11     But as far as consideration, if one
12 had to justify being bound by Section 11.9
13 on the basis of consideration, I think the
14 answer with respect to asbestos insurance
15 entities would also apply to all parties
16 involved in the Chapter 11, which is that
17 the entities and individuals covered by
18 the exculpation have been active in the
19 business of these Chapter 11 cases, they
20 have had to take positions, make
21 arguments, make decisions, et cetera, that
22 affect one or more parties involved in the
23 Chapter 11 cases and have thereby exposed
24 themselves to potential liability, I

Page 82

1  suppose, for their acts or omissions. And
2  the Chapter 11 itself could not proceed to
3  the point of resolution without the
4  efforts of these entities and these
5  individuals. So to the extent -- so there
6  is a -- in order to encourage and
7  facilitate the activities of the parties
8  listed in Section 11.9, it is my
9  understanding that it is common in these
10 types of bankruptcies to provide
11 exculpation of those entities and
12 individuals for their activities, and I'm
13 quoting here from 11.9, "In connection
14 with or arising out of the Chapter 11
15 cases." It is their participation and the
16 fruits of their participation that would
17 constitute consideration.
18    Q.  I want to circle back to a
19 question that I asked a few questions ago
20 concerning 7.15 and I asked you a question
21 to the effect of other than what's
22 specifically set forth in Section 7.15 are
23 there any other provisions in the Plan or
1  Plan documents that are binding upon

Page 83

1  Grace's insurers, and in answer to that
2  question you referred me to subsection (h)
3  and how 11.9 in the debtor's view was
4  encompassed within the language of (h).
5     So I want to go back to that
6  question and ask: Other than 11.9, is
7  there anything else?
8     A.  I'm --
9        MS. HARDING: Object to
10    form. I think it's confusing
11    and I'll leave it at that. If you
12    can answer, go ahead.
13    A.  I believe there is a more
14 general provision relating to the binding
15 nature of court orders, findings, et
16 cetera. That is what I was looking for
17 initially in response to your answer and
18 then I remembered the provision in 7.15(h)
19 and so I've directed you to that
20 provision. If you want me to spend the
21 time -- I do not know where in that Plan
22 that more general provision is that I have
23 in mind.
24    Q.  Well --

Page 84

1     A.  I could spend the time to
2  look for it if you'd like.
3     Q.  No, let's try this a little
4  differently. Look at 7.15(a).
5     A.  Okay.
6     Q.  It says "Except to the
7  extent provided in this Section 7.15,
8  notwithstanding anything to the contrary
9  in the Confirmation Order, the Plan or any
10 of the Plan documents -- nothing in the
11 Confirmation Order, the Plan or the Plan
12 documents, including any other provision
13 that purports to be preemptory or
14 supervening, shall in any way operate to
15 or have the effect of impairing any
16 asbestos insurance entity's legal,
17 equitable or contractual rights, if any,
18 in any respect." Have I read that
19 correctly?
20    A.  I believe so.
21    Q.  Okay. And what I'm asking
22 is: Given that broad statement, are there
23 any other provisions in the plan that are
24 not set forth in 7.15 that override the

Page 85

1  language in 7.15(a)?
2        MS. HARDING: Object to
3     form.
4     A.  Based on the language of
5  7.15(a), and if I'm understanding it as it
6  was intended, it states by its terms that
7  nothing else in the Plan or any of the
8  Plan documents would operate, you know, to
9  impair the -- an asbestos insurance
10 entity's rights.
11    Q.  So is your answer no?
12        MS. HARDING: Object, asked
13    and answered, but...
14    A.  Based on the language in
15 7.15(a), my answer would be no, subject
16 to -- subject to wanting to review the
17 remainder of the Plan because, as I
18 mentioned, I do have in mind that there is
19 one or more general provisions concerning
20 the applicability or binding nature of
21 court orders, court findings and the like.
22       And while I understand 7.15(a)
23 appears to act in such a way that would
24 make my proviso in my answer irrelevant, I

Page 86

1 would still feel more comfortable having
2 found and reviewed those other provisions
3 before giving an unequivocal "no".
4     Q. Let's do this because we
5 don't want to waste time. Why don't we --
6 I'm going to continue on. We'll obviously
7 have breaks. And during one of those
8 breaks, why don't you look for whatever
9 provision it is that you -- or provisions
10 that you think you're talking about and
11 then when we return from our break, even
12 if I'm not the questioner, would you bring
13 those one or two sections up to me? That
14 will save us some time.
15     A. That's fine.
16     Q. All right. I want to focus
17 your attention now on 7.15(b).
18     (The witness reviews the document.)
19     A. Okay.
20     Q. You see on the second line
21 there rolling over to the third line the
22 phrase "The beneficiaries of the Asbestos
23 PI Trust"? Do you see that?
24     A. Yes.

Page 87

1     Q. What do you understand that
2 term to mean?
3     MR. LIESEMER: Object to
4     the form.
5     Q. What does that term mean?
6     A. I understand it to mean
7 holders of asbestos PI claims.
8     Q. Okay. And does that
9 include holders of indirect Asbestos PI
10 Trust claims?
11     MR. LIESEMER: Object to
12     form.
13     A. Yes.
14     Q. And does it include
15 indemnified insurer -- does it -- excuse
16 me.
17     Does that term include the holders
18 of indemnified insurer TDP claims?
19     MR. LIESEMER: Object to
20     the form.
21     A. Is that a defined term?
22     Q. Good question. It is a
23 term that appears in Section 5.13 of the
24 Trust Distribution Procedures. I don't

Page 88

1 know that it is, per se, defined.
2     MS. HARDING: Where is it
3 in the TDP?
4     MR. BROWN: It's in Section
5 5.13.
6     MR. COHN: Is that on page
7 49 of the TDP?
8     MR. BROWN: I don't know
9 the page number.
10     THE WITNESS: Page 49,
11 yes.
12     A. Based on Section 5.13 of
13 the TDP and on the basis that a holder of
14 an indemnified insured TDP claim
15 potentially may have that claim paid by
16 the PI Trust in accordance with Section
17 5.13, I would interpret such a holder to
18 be a beneficiary of the PI Trust.
19     Q. Okay. So let's just take
20 one of my clients, for example. Let's
21 take Seaton Insurance Company. If Seaton
22 Insurance Company has an indemnified
23 insured TDP claim, then Seaton Insurance
24 Company, as I understand 7.15(b), is bound

Page 89

1 by the Plan, the Plan documents and the
2 confirmation order?
3     MR. LIESEMER: Object to
4     the form.
5     MS. HARDING: Object to the
6     form.
7     Q. Do I have that correct?
8     A. I believe so, yes.
9     Q. Okay. And is it bound by
10 the Plan, Plan documents and confirmation
11 order insofar as it may also be listed as
12 being a partially settled insurer?
13     MS. HARDING: Object to the
14     form. And are you referring to
15     7.15(b)?
16     MR. BROWN: Yes.
17     MS. HARDING: Back to
18     7.15(b) when you asked that
19     question?
20     MR. BROWN: Yes.
21     A. I'm not sure I see the
22 connection between Section 5.13 of the TDP
23 and your question, if there is any.
24 The -- I believe the answer is they are

Page 90

1  bound to the same extent any asbestos
2  insurance entity is bound under the
3  Plan.
4      Q.  Mr. Finke, you understand,
5  don't you, that -- well, let's not do it
6  that way. Let's go to -- I think it's the
7  asbestos insurance transfer agreement.
8      MS. HARDING: Is that one
9  of our exhibits?
10     MR. BROWN: No, I'm sorry,
11 it's not that. It's Exhibit 5.
12     Q.  Do you have Exhibit 5?
13     A.  Retained causes of action?
14     Q.  No. This is Exhibit 5 to
15 the Exhibit Book.
16     A.  To the Exhibit Book.
17     MS. HARDING: I have a
18 copy. It's not his but you can
19 look at it if you'd like.
20     MR. COHN: What is the
21 document?
22     MS. BAER: It's Exhibit 5
23 to the Exhibit Book, Schedule of
1  Settled Asbestos Insurers.

Page 91

1      (Exhibit 5 to Exhibit Book,
2  Schedule of Settled Asbestos
3  Insurers Entitled to 524(g)
4  Protection marked for
5  identification as Exhibit
6  Finke-9.)
7      Q.  What I'd like you, Mr.
8  Finke -- first of all, why don't you
9  identify what we've just marked as Exhibit
10 9?
11     A.  Okay. Finke Exhibit 9 is
12 Exhibit 5 to the Exhibit Book. It is
13 entitled Schedule of Settled Asbestos
14 Insurers Entitled to 524(g) Protection.
15     Q.  Now, you understand, don't
16 you, that at least some of the insurance
17 companies that are listed on this schedule
18 have indemnity claims against the
19 debtors?
20     MR. LIESEMER: Object to
21 the form of the question.
22     A.  Yes, I believe that's
23 correct.
24     Q.  And to the extent that

Page 92

1  there are indemnity claims against the
2  debtor and to the extent that those are
3  asbestos-related, those fit within the
4  defined term "indemnified insured TDP
5  claims", correct?
6      MS. HARDING: Object to
7  form.
8      MR. LIESEMER: Join.
9      MS. HARDING: Are you
10 looking for 7.15?
11     MS. ALCABES: 5.13.
12     MS. HARDING: There you go.
13     A.  No, I don't agree.
14     MR. BROWN: Could you read
15 back the last question?
16     (The reporter reads the
17 requested portion.)
18     A.  No, I don't agree. My
19 understanding of Section 5.13 is this
20 provision would take effect only upon
21 confirmation of the Plan since the
22 definition indicates, or requires, that
23 the indemnified insuror TDP claim is
24 channeled to the PI Trust, which it can't

Page 93

1  be at this point.
2      Q.  All these questions are in
3  the context of the Plan being confirmed.
4      A.  Well, then I don't --
5      Q.  Let me back up. I think
6  the record's kind of muddled at this
7  point.
8      A.  Okay.
9      Q.  Why don't you -- if you
10 look at the schedule of settled asbestos
11 insurance companies, I believe you'd
12 testified -- that's Exhibit 9 -- I believe
13 you'd testified that some of the companies
14 that are listed on there have contractual
15 indemnity claims against the debtors.
16     A.  That was under the
17 assumption we were talking about current
18 claims. I didn't realize you had -- that
19 your questions were all in the context of
20 the assumption of a confirmed plan.
21     Q.  All right. If you look at
22 the schedule, you understand that the
23 insureds that are listed on here have
24 settlement agreements with the debtors,