# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-  -  -

```
In Re:                      : Chapter 11
                            :
                            : Case No.
W.R. GRACE & CO., et al,    : 01-01139 JKF
                            :
                            : (Jointly
              Debtors       : Administered)
```

-  -  -

Friday, May 1, 2009

-  -  -

Oral deposition of PETER VAN

N. LOCKWOOD, ESQUIRE, taken pursuant to

notice, was held at the offices of CAPLIN

& DRYSDALE, One Thomas Circle N.W., Suite

1100, Washington, DC  20005, commencing

at 9:43 a.m., on the above date, before

Lori A. Zabielski, a Registered

Professional Reporter and Notary Public

in and for the Commonwealth of

Pennsylvania.

-  -  -

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

Page 58

1    assigned to the Trust, that the
2    Trust would be able to obtain such
3    coverage, either by agreement with
4    the asbestos insurance companies
5    or through coverage litigation in
6    some coverage court, which
7    coverage litigation might entail a
8    decision by a judge that in some
9    manner or another what the Trust
10   was doing pursuant to the Plan in
11   terms of resolving individual
12   asbestos claims was, in fact,
13   binding on the insurers. That's
14   about the best I can do.
15   BY MR. BROWN:
16       Q.   Okay.  To the extent it
17   constitutes a settlement of asbestos PI
18   claims, is it superseded by Section 7.15
19   entitled Insurance Neutrality?
20       A.   That question is almost
21   incomprehensible to me, because Section
22   7.15 is sort of a form selection
23   provision.  Essentially, in my view of
24   it, what it does is it says to the extent

Page 59

1    that there are disagreements about the
2    Trust's rights under transferred
3    insurance assets, those disputes are
4    going to get resolved by the parties, the
5    insurers, and the Trust at a later date
6    in front of a later court.
7            And so some later court
8    would determine whether it was a
9    settlement or not.  The 7.15 itself
10   doesn't purport to say whether it is or
11   isn't a settlement.  It says essentially
12   that some other court, if necessary, will
13   have to decide that issue because the
14   insurers don't want to have coverage
15   litigation in this bankruptcy case.
16       Q.   All right.  But the sentence
17   that we are referring to on page 1 says,
18   "The Plan constitutes a settlement of all
19   Claims and Demands against the Debtors
20   on, and subject to, the terms described
21   herein and the other the Plan Documents."
22       A.   That is --
23       Q.   My question is, is that
24   language superseded by the insurance

Page 60

1    neutrality language that appears in 7.15?
2        MS. HARDING:  Objection.
3        MR. FINCH:  Objection, asked
4    and answered.
5        THE WITNESS:  I cannot give
6    you any better answer to that than
7    the one I gave you already.
8            You are asking me whether a
9    descriptive sentence in a Plan
10   supersedes a form selection clause
11   in some other part of the Plan,
12   and, to me, that's just -- I don't
13   even understand how one could
14   supersede the other in the first
15   place.  I mean, if you can explain
16   to me why you think it supersedes
17   it, maybe I could have a more
18   specific answer.
19   BY MR. BROWN:
20       Q.   Well, why don't you look at
21   7.15 A on page 87 of the Plan.
22       A.   Okay.
23       Q.   As I read that sentence,
24   other than what appears in the other

Page 61

1    portions of 7.15, nothing in the Plan,
2    the Plan documents, the Confirmation
3    Order, is to operate or shall operate --
4    "shall in any way operate to, or have the
5    effect of, impairing any Asbestos
6    Insurance Entity's legal, equitable or
7    contractual rights, if any, in any
8    respect."
9        A.   Yeah?
10       MS. HARDING:  Object to
11   form.  Is there a question?
12       MR. BROWN:  I am reading the
13   language first.  Can I finish?
14       MS. HARDING:  I am sorry.  I
15   thought you were asking a
16   question.  I didn't hear it.
17   BY MR. BROWN:
18       Q.   To the extent that the Plan
19   or the Confirmation Order constitutes a
20   settlement of asbestos PI claims against
21   the Debtors, is that going to then be
22   binding upon the insurers in coverage
23   litigation?
24       MS. HARDING:  Object to

Page 62

1      form.  It calls for a legal
2      conclusion.
3           THE WITNESS:  If a coverage
4      court decides that it's a
5      settlement and that it's a
6      settlement that's reasonable and
7      that it doesn't have to be
8      consented to by insurers, then the
9      coverage court will have decided
10     that the settlement isn't
11     impairing the insurers' rights
12     under their policies.
13          That's what I mean by it's
14     up to the coverage court.  Your
15     question assumes that for it to be
16     a settlement, it would have to
17     impair the insurers' rights.  My
18     limited understanding of insurance
19     law is that that may be true or it
20     may not be true.  But what this
21     says is that the Plan and the
22     Confirmation Order aren't
23     purporting to resolve that issue.
24          Your rights are what they

Page 63

1      are; you will be able to present
2      them to a coverage court.  And the
3      coverage court, if it agrees with
4      you, will say, first, the Plan
5      doesn't control the outcome of
6      this decision because that's what
7      7.15(a) says, and, secondly, you
8      are correct in asserting that this
9      is an unconsented-to settlement or
10     it's not a settlement or whatever
11     defense you have applies.  And it
12     will say you win, you don't have
13     any coverage obligations for this
14     claim or these claims or whatever.
15     That's my understanding of how
16     this is supposed to work.
17     BY MR. BROWN:
18     Q.    Okay.  I am going to go
19     through the Plan and various items.  We
20     are going to jump around a little bit.
21     So why don't we first turn to page 5.
22     A.    I have it.
23     Q.    And the definition -- we
24     looked at this earlier -- 13,

Page 64

1      specifically (a) under 13.
2      A.    I see it.
3      Q.    Is that language intended to
4      include any property damage-related
5      causes of action?
6      A.    It depends on what you mean
7      by included.  What it basically means is
8      that, as I understand it, that the Trust
9      gets the rights; nobody else gets the
10     rights.  The Trust can then seek coverage
11     from the insurers.
12          Since the Trust has no
13     asbestos property damage claims to assert
14     against the insurers, it will not be
15     asserting asbestos property claims
16     against the insurers.  But the effect of
17     the transfer would mean that, for
18     example, Grace or a property damage
19     claimant could not assert property damage
20     claims under that insurance coverage
21     because those rights have been assigned
22     to the Trust and they are, therefore, no
23     longer available to be invoked or
24     utilized by anybody else.

Page 65

1      Q.    Okay.  Let's turn to page 6,
2      Asbestos Insurance Coverage Defenses, 6
3      and 7.
4      A.    Definition 16.
5      Q.    Correct.
6      A.    I see it.
7      Q.    Did you have a chance to
8      read it?
9      A.    Yes.
10     Q.    And there are two exceptions
11     that are listed there to asbestos
12     insurance coverage defenses?
13     A.    Correct.
14     Q.    And the first one says,
15     "...the Plan or any of the Plan documents
16     do not comply with the Bankruptcy
17     Code..."
18          So, as I understand that, if
19     in a subsequent coverage action, an
20     insurer sought to argue that the Plan or
21     Plan documents don't comply with the
22     bankruptcy code, they would be precluded
23     from doing so by virtue of the
24     confirmation of the Plan; is that

Page 170

1    at that injunction.
2         I can't recall ever having
3    spent a lot of time thinking about that
4    issue before, but it seems possible that
5    that hypothetical claim could be enjoined
6    by the successor claims injunction in
7    Section 8.5 of the Plan as against
8    Fresenius and Sealed Air.
9         Q.   I want to turn your
10   attention now to Section 7.15.  We have
11   talked about it a little bit already,
12   Insurance Neutrality.
13        A.   I have it.
14        Q.   Okay.  Other than the
15   conditions set forth in (g) under 7.15,
16   are asbestos insurance entities bound by
17   any other findings or conclusions
18   contained in the Plan?
19        A.   Yes, potentially under
20   Section 7.15(j).
21        Q.   Okay.  Anything else?
22        A.   Well, yes, two other
23   categories of things.  One would be
24   rulings on compliance with the bankruptcy

Page 171

1    code provisions, which are not under the
2    definition of asbestos coverage defenses
3    preserved, as we had discussed earlier.
4         Q.   Okay.
5         A.   And, secondly, there is a
6    race judicata provision in Section
7    7.15(e) that, in effect, says that if an
8    asbestos insurer actually litigates some
9    claim in the bankruptcy case, it could
10   be -- assuming that otherwise
11   non-bankruptcy principles of race
12   judicata or collateral estoppel would
13   apply, it could be bound by the outcome
14   of any such litigation that it initiated.
15        Q.   Okay.
16        A.   Other than that, I believe
17   the answer to your question, those are
18   the only conditions that I am aware of.
19        Q.   Okay.  Would it be correct
20   to say that this provision overrides the
21   exculpation provision in the Plan which
22   appears at Section 11.9?
23        MR. FINCH:  Object to form.
24        MS. HARDING:  Object to

Page 172

1    form.
2         THE WITNESS:  Let me turn to
3    Section 11.9.  I don't think so,
4    because I think the exculpation
5    provision comes under the heading
6    bankruptcy issues.
7         The exculpation provision is
8    pretty limited.  What it applies
9    to are acts or omissions in
10   connection with or arising out of
11   the Chapter 11 cases.  And my
12   understanding of what is intended
13   to be covered by that is some
14   claim that one of the parties
15   covered by it engaged in some sort
16   of misconduct during the course of
17   the bankruptcy case -- I don't
18   know -- a claim, to put it
19   personally, the Asbestos Claimants
20   Committee somehow or another
21   breached a fiduciary duty to its
22   constituency by proposing a Plan
23   that this exculpation provision
24   would apply to that sort of a

Page 173

1    claim or a similar claim against
2    the Debtors.
3         But those types of claims
4    are not insurance coverage claims
5    or defenses.  They would just be
6    some sort of -- and, indeed, it's
7    almost inconceivable to me how an
8    insurance company could ever have
9    the sort of claim that would be
10   exculpated by Section 11.9,
11   frankly.
12   BY MR. BROWN:
13        Q.   Well, if they did --
14        MR. FINCH:  Object to the
15   form.
16   BY MR. BROWN:
17        Q.   -- would the exculpation
18   provision take precedence over Section
19   7.15?
20        MR. FINCH:  Object to form.
21        MS. HARDING:  Object to
22   form.
23        THE WITNESS:  That question
24   is almost impossible to answer,

Page 174

1  because without knowing what the
2  claim is -- I mean, 7.15 addresses
3  specific types of situations
4  having to do with insurance.
5        11.9 addresses claims that,
6  on their face, have no apparent
7  relationship to insurance, and,
8  therefore, to know whether there
9  is any overlap between the two to
10 determine which one would prevail
11 in the event that there was an
12 overlap, you would have to have
13 some idea what kind of claim you
14 are talking about. And, frankly,
15 I have no idea what kind of claim
16 you want me to hypothesize for
17 purposes of that question.
18 BY MR. BROWN:
19     Q.   All right. There are some
20 releases that are mentioned in Section
21 7.15, and I want you to put those aside
22 for a moment.
23        Other than the releases that
24 are cited in 7.15, are any other releases

Page 175

1  that appear in the Plan or Plan documents
2  binding on asbestos insurance entities?
3        MS. HARDING: Object to
4  form.
5        THE WITNESS: I would have
6  to give you a very similar answer
7  to the one I just gave you on
8  exculpation because I would have
9  to know what kind of claims you
10 are talking about.
11       7.15 is intended to deal
12 with insurance policy/settlement,
13 insurance settlement, insurance
14 reimbursement situations, and
15 preservation of insurer rights
16 with respect to those types of
17 agreements. Releases in the Plan
18 may or may not cover those
19 situations.
20       As a general proposition, I
21 don't think the Plan purports to
22 release claims by asbestos
23 insurers sort of generically
24 against a whole lot of different

Page 176

1  people. There are some specific
2  releases that we have talked about
3  already.
4        Without knowing what sort of
5  a claim you believe the Plan
6  releases and being able to figure
7  out whether that claim ties into
8  the sort of relationships that
9  7.15 -- policy type relationships
10 that 7.15 is intended to address,
11 I really can't answer. I am not
12 trying to evade the question. I
13 just can't answer it for the
14 reasons I stated.
15       MR. BROWN: Okay.
16       (ACC 30(b)(6)-8 and 9 marked
17 for identification at this time.)
18 BY MR. BROWN:
19     Q.   All right. Mr. Lockwood,
20 you have before you two documents, ACC-8
21 and ACC-9. Let's start with 8.
22     A.   I have it.
23     Q.   Have you ever seen that
24 document before?

Page 177

1  A.   Yes.
2  Q.   What is it?
3  A.   It is a complaint by The
4  Scotts Company attempting to initiate an
5  adversary proceeding in the Grace
6  bankruptcy case against various insurers
7  and Grace.
8  Q.   Okay. And is the relief
9  that is sought by Scotts in this
10 adversary complaint as against the
11 insurers that are defendants, who are
12 also settled asbestos insurance
13 companies, enjoined in its totality?
14 A.   As of right now or under the
15 Plan?
16 Q.   Under the Plan.
17 A.   I want to say yes to that,
18 but I would have to say this: I believe
19 that Scotts is asserting claims in this
20 action as asserted additional insured
21 under vendor coverage in W.R. Grace
22 insurance policies, point one.
23       I believe the basis is suits
24 against Scotts for Scotts' liability for