## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |
| | **Proposed Hearing Date: June 18, 2009 at 1:00 p.m.** <br> **Objection Deadline: TBD** |
| | **Re: Docket Nos. 21544, 21747** |

## BANK LENDER GROUP MOTION TO MODIFY
## THE THIRD AMENDED CASE MANAGEMENT ORDER RELATED
## TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION

Certain lenders under the Prepetition Bank Credit Facilities[1] (the "Bank Lender Group"),[2] by their undersigned counsel, submit this motion (the "Motion") for an order modifying the Third Amended Case Management Order Related to the First Amended Joint Plan of Reorganization, dated May 5, 2009 [Dkt. No. 21544] (the "CMO"), to defer this Court's consideration and resolution of issues designated to be heard during Phase I of the hearing to confirm the Plan (the "Confirmation Hearing") regarding certain confirmation objections raised on behalf of and specific to the lenders of the Pre-Petition Credit Facilities and other Class 9

---

[1]  The Prepetition Bank Credit Facilities include (i) that certain Credit Agreement, dated May 14, 1998, among the W.R. Grace & Co. (the "Company"), W.R. Grace & Co.-Conn, The Chase Manhattan Bank, as Administrative Agent, Chase Securities Inc., as arranger, and certain Banks party thereto (the "1998 Credit Agreement"), and (ii) that certain 364-Day Credit Agreement, dated May 5, 1999, among the Company, W.R. Grace & Co.-Conn, Bank of America National Trust Savings Assoc., as documentation agent, The Chase Manhattan Bank, as administrative agent, Chase Securities Inc., as book manager, and certain Banks party thereto (as amended, the "1999 Credit Agreement", together with the 1998 Credit Agreement, the "Credit Agreements").  The Credit Agreements are attached as Exs. A and B to the Affidavit of Charles O. Freedgood of JPMorgan Chase Bank, N.A., filed August 15, 2008 [Dkt No. 19322].

[2]  The Bank Lender Group includes (i) Anchorage Advisors, LLC; (ii) Allen & Co., (iii) Avenue Capital Group; (iv) Babson Capital Management LLC; (v) Bass Companies; (vi) Caspian Capital Advisors, LLC; (vii) Catalyst Investment Management Co., LLC; (viii) Cetus Capital, LLC, (ix) DE Shaw Laminar Portfolios, LLC; (x) Goldman Sachs & Co. (as ex officio member); (xi) Halcyon Asset Management LLC; (xii) Intermarket Corp.; (xiii) JP Morgan Chase, N.A. Credit Trading Group; (xiv) Loeb Partners Corporation; (xv) MSD Capital, L.P.; (xvi) Normandy Hill Capital, L.P.; (xvii) Onex Debt Opportunity Fund Ltd.; (xviii) P. Schoenfeld Asset Management, LLC; (xix) Restoration Capital Management, LLC; and (xx) Royal Bank of Scotland, PLC.  The Bank Lender Group, together with all holders of claims under the Credit Agreements, including the previous holders of such claims, are collectively referred to as the "Bank Lenders."

Creditors with respect to impairment[3] (the "Impairment Confirmation Issue") and related confirmation issues.

The Bank Lender Group and the Official Committee of Unsecured Creditors ("Creditors Committee") have each appealed this Court's Memorandum Opinion (the "May 19 Opinion"), and accompanying Order Sustaining Debtors' Objection to Unsecured Claims Insofar as Claims Include Postpetition Interest at the Contract Default Rate (the "May 19 Order"), each dated May 19, 2009 [Dkt. No. 21747] (the May 19 Opinion together with the May 19 Order, referred to collectively as the "May 19 Decision"). Those appeals have divested this Court of jurisdiction over the Impairment Confirmation Issue and related issues, and this Court accordingly cannot consider these issues until resolution of the appeals. In support of the Motion, the Bank Lender Group respectfully states as follows:

## PRELIMINARY STATEMENT

1.      By the May 19 Decision, this Court rendered a final decision on the objection to the Bank Lenders' proof of claim filed by the above-captioned debtors (collectively, "Grace") on June 13, 2008 [Dkt No. 18922] (the "Objection") and held that the Bank Lenders are not entitled to postpetition interest at the default rate. The Court's May 19 Decision pre-determined various confirmation issues and accordingly, eliminates the Bank Lender Group's ability to argue certain objections to confirmation.

2.      Key to the Court's May 19 Decision on the Objection was its determination that there was no "evidence presented to substantiate a [postpetition] default on Bank Lenders' claims" and, accordingly, that the "Bank Lenders have not shown entitlement to default interest" (May 19 Opinion at p. 3).

---

[3]    *See* CMO at paragraph 1 (iii).

3.    Although this Court purported to defer decisions regarding confirmation related issues until the Confirmation Hearing, by the May 19 Decision, the Court made several determinations of legal and factual issues that effectively disposed of the Impairment Confirmation Issue, as well as other related confirmation issues, including but not limited to, (a) the Bank Lenders' right to postpetition interest, (b) whether the Plan complies with section 1122 of the Bankruptcy Code, (c) whether the Plan satisfies the "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code, (d) whether the Plan violates the absolute priority rule and the fair and equitable requirements of section 1129(b) of the Bankruptcy Code, and (e) whether the Plan was proposed in good faith in compliance with section 1129(a)(3) of the Bankruptcy Code.

4.    As of May 29, 2009, the Bank Lender Group and the Creditors Committee appealed the May 19 Decision (the "Appeals") and the confirmation-related questions of fact and law decided therein.  The pendency of the Appeals divests this Court of jurisdiction with respect to the issues on appeal, which include, but are not limited to, the Impairment Confirmation Issue scheduled by the CMO to be decided as part of Phase I of the Confirmation Hearing.

5.    The Impairment Confirmation Issue is the lynchpin to the Bank Lender Group's opposition to confirmation of the Plan because all of its other confirmation objections, including violation of the absolute priority rule, turn on the question of whether the Bank Lenders are impaired pursuant to section 1124 of the Bankruptcy Code.  The Impairment Confirmation Issue boils down to whether or not the Bank Lenders are entitled to the default rate under the Credit Agreements.  The Bank Lender Group argues that the Bank Lenders are impaired because they are entitled to payment at the contract default rate and the Plan pays them less than the contract default rate; Grace argues that the Bank Lenders are not entitled to payment of the contract

default rate, and thus are not impaired by the Plan.  By the May 19 Decision, this Court has already decided that the Bank Lenders are not entitled to payment of the contract default rate. "For the reasons which follow *we hold that the Bank Lenders are not entitled to postpetition interest at the default rate* and we will sustain Debtors' objection on the limited §502(b) and § 726 grounds asserted in the objection."  *May 19 Opinion* at p. 1 (emphasis supplied). Specifically, this Court held that the Bank Lenders have no state law right to default interest under the Credit Agreements themselves.  In light of the decision that the Bank Lenders have not established a right to default interest under the contracts themselves, there is no argument which the Bank Lender Group can make with respect to the Impairment Confirmation Issue (or other confirmation issues for that matter).

6.      Accordingly, any decision rendered by this Court on the Impairment Confirmation Issue or any other issue on appeal before it is revested with authority to consider those issues would be *void ab initio* and thus, a waste of judicial and estate resources— particularly if the May 19 Decision is reversed on appeal.

## BACKGROUND

7.      On April 2, 2001, Grace filed voluntary petitions for relief under chapter 11 of title 11, United States Code, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and thereby commenced these cases.

8.      Prepetition, Grace entered into the Credit Agreements.  Under them, Grace owes the Bank Lenders $500 million in aggregate principal amount.[4]  The Credit Agreements both

---

[4]    *See* 1998 Credit Agreement, Sch. 1; 1999 Credit Agreement, Sch. 1.

matured several years ago during the pendency of these cases.[5]   Both contracts have a non-default interest rate equal to the Prime Rate, with a default rate of Prime Rate plus 2%.  (Credit Agreements §§ 5.1(c), 5.5.)   In addition to specifying interest rates, the Credit Agreements provide for payment of facility fees, attorneys' fees, and a specified method for calculating interest which Grace owes the Bank Lenders.  (Credit Agreements §§ 1.1, 5.1, 5.2, 5.7, 5.13.)

9.       After the Petition Date, Grace did not perform a number of its obligations under the Credit Agreements.  As outlined in the Affidavit of Charles O. Freedgood dated August 14, 2008, which was Exhibit 1 to the Compendium of Exhibits to the Pre-Trial Memorandum of the Bank Lender Group in Opposition to the Debtors' Objection to the Claims Asserted Under the Debtors' Credit Agreements Dated as of May 14, 1998 and May 5, 1999 dated September 5, 2008 ("Bank Lenders' Pre-Trial Mem.") [Dkt. No. 19478],[6] the Debtors' failure to perform its obligations under the Credit Agreements—which the Debtors have not refuted—included, among other things:  failure to pay the principal amount of the loans and notes when due in accordance with the terms thereof, including upon the stated maturity dates; failure to pay interest on the loans and notes within five business days after such interest became due in accordance with the terms of the Credit Agreements; failure to furnish to each bank all certificates and other information required by section 8.2(a)-(c) of the Credit Agreements; failure to promptly give notices to JPMorgan Chase Bank, N.A. as required by section 8.7, and failure to remedy such breaches within 30 days.  (See Freedgood Aff. at ¶ 13.)   Under the Credit Agreements, such failures on the part of Grace triggered the default rate of interest.  (See Credit

---

[5]      The 1998 Credit Agreement matured on May 16, 2003, and the 1999 Credit Agreement matured on May 2, 2001. (1998 Credit Agreement §§ 1.1, 2.2. and Amendment to 1999 Credit Agreement, dated May 3, 2000, § 1.2.)

[6]      The Court may take judicial notice of pleadings filed on the docket in these bankruptcy cases. See Fed. R. Evid. 201 (a court may take notice of judicially noticed facts "not subject to reasonable dispute"); Waltz v. County of Lycoming, 974 F.2d 387, 389 (3d Cir. 1992) (pleadings, motions, and briefs that were part of the record were "subject to judicial notice" without further proof).

Agreements §§8, 10(d).)  Grace did not refute (and has never refuted in any pleading filed with this Court) that it did not perform these specified obligations as required by the Credit Agreements.

10.    On or about April 7, 2008, Grace publicly announced its proposed settlement with certain asbestos claimants (the "Proposed Settlement"), embodied in a term sheet for its chapter 11 plan, seeking to pay Bank Lenders postpetition interest at a rate that is less than that provided by the Credit Agreements and also failing to pay the facility fees and attorneys' fees due under such contracts.

11.    On June 13, 2008, Grace filed its Objection to the Proofs of Claim to the extent that such claims sought to include postpetition interest at the contract default rate as part of the "allowed" amount of the Bank Lenders' claims.

12.    On September 19, 2008, Grace filed the first version of the Disclosure Statement and First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, [Dkt No. 20872] (the "Plan")[7] incorporating the Proposed Settlement.  Subsequently, the Disclosure Statement [Dkt. No. 20873] and Plan were revised on February 27, 2009.  The Plan Proponents classify the Bank Lenders' claims as "unimpaired" to establish the irrebuttable presumption that the Bank Lenders have accepted the Plan.  (See Plan at §3.1.9(c).)

13.    On December 5, 2008, this Court entered the initial version of the CMO, which governs the schedule for the Confirmation Hearing [Dkt. No. 20204] as well as the issues to be considered during Phase I and Phase II of the Confirmation Hearing.  The initial CMO was subsequently amended on January 29, 2009[8] and May 5, 2009.  Pursuant to the latest amended CMO, the issues to be heard during Phase I of the Confirmation Hearing, beginning on June 22,

---

[7]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[8]    The Second Amended Case Management Order was entered on January 29, 2009 [Dkt. No. 20622].

2009, include, among other issues, the Impairment Confirmation Issue. All confirmation issues not designated to be heard during Phase I are scheduled to be heard during Phase II of the Confirmation Hearing.

14.     As referenced above, this Court rendered its decision sustaining the Objection on May 19, 2009 and purported to rule on narrow grounds.[9]

15.     In compliance with the CMO, on May 20, 2009, the Bank Lender Group filed its objection to the confirmation of the Plan [Dkt. No. 21789] ("Confirmation Objection").

16.     The Bank Lender Group and the Creditors Committee appealed the May 19 Decision on May 29, 2009.[10]

## RELIEF REQUESTED

17.     By this Motion, the Bank Lender Group respectfully requests entry of a order modifying the CMO to defer resolution of the Impairment Confirmation Issue until resolution of the Appeals.

## ARGUMENT

A.     **Notice of Appeal Divests Bankruptcy Court of Jurisdiction Over Issues on Appeal**

18.     It is well settled that the timely filing of a notice of appeal is an event of jurisdictional significance that "immediately confer[s] jurisdiction on a Court of Appeals and divest[s] a district court of its control over those aspects of the case involved in the appeal." *Venen* v. *Sweet*, 758 F.2d 117, 120-121 (3d Cir. 1985) (citing *Griggs* v. *Provident Consumer*

---

[9]     (May 19 Opinion at p. 1 ("[W]e hold that the Bank Lenders are not entitled to postpetition interest at the default rate and will sustain Debtors' objection on the limited § 502(b)(2) and § 726 grounds asserted in the objection. We defer decision regarding § 1129."); May 19 Order at p. 1 ("[F]or the reasons expressed in the foregoing Memorandum Opinion, it is ORDERED that Debtors' objection to the claims of Bank Lenders is SUSTAINED insofar as there is no entitlement to postpetition interest at the contract default rate on the principal balance of claims 9159 and 9168, which are unsecured. Plan Confirmation issues are preserved.").)

[10]    Bank Lender Group Notice of Appeal, dated May 29, 2009 [Dkt. No. 21911]; Creditors Committee Notice of Appeal, dated May 29, 2009 [Dkt. No.21905].

*Discount Co.,* 459 U.S. 56, 58 (1982)); *see also W.R. Grace & Co.* v. *Libby Claimants (In re W.R. Grace & Co.*), 2008 WL 5978951, at *6 (D. Del. October 28, 2008) (accord). This rule of divestment applies to bankruptcy proceedings. *In re Trimble*, 2008 WL 782581, at *2 (Bankr. D.N.J. March 18, 2008) (finding that "the divestiture rule applies to appeals of bankruptcy proceedings") (citation omitted).

19.    The Third Circuit in *Venen* noted that there are limited exceptions to when the lower court retained power to act and noted that one exception was where the order or judgment was not appealable. *Venen*, 758 F.2d at 121.[11] However, no such exception applies to the Bank Lender Group's appeal of the May 19 Decision because an order "allowing or disallowing" a proof of claim in bankruptcy is a final and thus, appealable order. *See Youngman* v. *Fleet Bank (In re A&P Diversified Technologies Realty, Inc.)*, 467 F.3d 337, 341 (3d Cir. 2006); *Abel* v. *U.S. (In re Abel)*, 200 B.R. 816, 818 (E.D. Pa. 1996).

20.    The divestment of jurisdiction as a result of an appeal is automatic. *In re Main Line Fed. Savings & Loan Assc. v. Tri-Kell, Inc.*, 721 F.2d 904 (3d Cir. 1983). "'Divest' means what it says-the power to act, in all but a limited number of circumstances, has been taken away and placed elsewhere." *Venen*, 758 F.2d at 121. The jurisdiction principal regarding divestment is to avoid "the confusion and inefficiency which would of necessity result were two courts to be considering the same issue or issues simultaneously." *Id.*

21.    Those principles articulated in *Venen* apply here—any ruling of this Court on the confirmation related issues, including the Impairment Confirmation Issue, during either Phase I or Phase II of the Confirmation Hearing while jurisdiction of the issues remain before the District Court or Third Circuit of Appeals would be void for lack of subject matter jurisdiction

---

[11]    This is because appellate jurisdiction is limited to final orders. *Clark* v. *First State Bank (In re White Beauty View, Inc.)*, 841 F.2d 524, 525 (3d Cir. 1988); *see also* 28 U.S.C. § 158(a).

and necessarily create confusion and inefficiency. Accordingly, this Court must defer consideration of those issues on appeal until the time that it is revested with authority.

**B.      This Court is Divested of Jurisdiction to Adjudicate the Impairment Confirmation Issue and all Related Confirmation Issues on Appeal**

22.      As a result of the appeal of the May 19 Decision, this Court has been divested of a number of issues that bear directly on confirmation which include, but are not limited to, the following:

*The Impairment Confirmation Issue*

23.      First, this Court is divested of jurisdiction over the Impairment Confirmation Issue which requires it to decide whether the Plan violates section 1124 of the Bankruptcy Code.

24.      In its Confirmation Objection, the Bank Lender Group argues that the Plan violates section 1124 of the Bankruptcy Code because it misclassifies the Bank Lenders as unimpaired even though it does not "leave unaltered the legal, equitable, and contractual rights" of the Bank Lenders under the Credit Agreements and applicable state and federal law. (*See* Confirmation Objection at ¶¶ 13, 15.)

25.      The Plan provides that each holder of an allowed general unsecured claim shall be paid "the Allowed Amount of its Allowed General Unsecured Claim" with postpetition interest on the allowed claim "calculated at the rate of 6.09% from the Petition Date through December 31, 2005 and thereafter at floating prime, in each case compounded quarterly." (Plan at §3.1.9(b)(i)(A).) This rate is less than the contract default rate set forth in the Credit Agreements to which the Bank Lenders are entitled under state and federal law as a result of the postpetition defaults that triggered the contract default interest rate. (*See generally* Confirmation Objection ¶¶ 13, 31-38.)

26.     Here the Bank Lender Group submits that the Bank Lenders are impaired because their contracts provide for payment of a default rate of interest which they will not receive under the Plan.  Grace states that the Bank Lenders are not impaired because they have no entitlement to default interest and thus, they are not impaired since they are receiving more interest under the Plan to than they deserve to receive.  By its May 19 Decision, this Court held that the default interest rate provision under the Credit Agreements was not enforceable.  (May 19 Opinion at pp. 4-5.)     Specifically, the Court held that the Bank Lender Group presented "no evidence of postpetition defaults that would trigger any default interest provisions in the loan documents" as a matter of applicable nonbankruptcy law (May 19 Opinion at p. 9; *see also id.* at pp. 4-5.)   That ruling eliminates the Bank Lender Group's ability to argue that the Plan's failure to pay the contract default rate results in impairment under section 1124.  This Court also held that the default rate provision in the Credit Agreements constituted an unenforceable *ipso facto* clause. (*Id.* at pp. 4-5.)

27.     By this Court's determination that no default had occured as a matter of fact or could occur as a matter of law that triggered the default rate under the Credit Agreements, it has already concluded that the Bank Lenders are not "impaired" pursuant to section 1124 of the Bankruptcy Code.  Because this Court found by its May 19 Decision that the Bank Lenders are not entitled to the contract default rate, it has already concluded that the Bank Lenders are being paid at least what they are contractually entitled to be paid under the Plan.  As a result, based on the May 19 Decision, it is impossible for the Bank Lender Group to argue at Phase I of the Confirmation Hearing that they are impaired because the Plan pays them *less* than what they are contractually entitled to receive when the Court has already ruled that the Plan awards the Bank Lenders what they are contractually entitled to receive.  There is no argument that the Bank

Lender Group can make before this Court on the Impairment Confirmation Issue or any other confirmation issue which does not start from the premise that the Bank Lenders are contractually entitled to default interest,  Consequently, having decided that there is no contractual entitled to default interest per the terms of the contracts themselves, there is nothing more for this Court to rule upon.

### *Classification*

28.    <u>Second,</u> this Court is divested of jurisdiction over the issue of whether the Plan violates section 1122 of the Bankruptcy Code by misclassifying the Bank Lenders with other general unsecured creditors.

29.     In the Confirmation Objection, the Bank Lender Group challenged the Plan's classification scheme as improper.  Section 1122 provides, in pertinent part, that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  The Bank Lender Group argues that the Plan violates section 1122 because it groups the Bank Lenders' claims under the Credit Agreements with substantially dissimilar claims of other unsecured creditors arising under different agreements, which may or may not provide for payment of interest at a higher rate following a default.  The Bank Lender Group maintains that the claimants in each of the four different categories of claims in Class 9, which includes the Bank Lenders, have separate and different legal, equitable, and contractual rights with respect to postpetition interest, and that the Plan's classification scheme is improper as a result.  (*See generally* Confirmation Objection ¶¶ 40-45.)  However, to the extent that the Bank Lenders are *un*impaired based on the findings of the May 19 Decision (which they must be based on those findings), the Bank Lender

Group is deemed to have voted in favor of the Plan and will be unable to argue that the Plan's classification scheme violates section 1122.

***Best Interests of Creditors***

30.     <u>Third</u>, this Court is divested of jurisdiction over the issue of whether the Plan violates the "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code and whether the "legal rate" of interest as used in section 726(a)(5) of the Bankruptcy Code is the federal judgment rate.

31.     In the Confirmation Objection, the Bank Lender Group disputes Grace's argument that payment of interest at the federal judgment rate satisfies the "best interests of creditors" test of section 1129(a)(7), arguing that it is simply incorrect to read, even in the context of a chapter 7 case, section 726(a)(5) as some courts recently have (*see, e.g., In Cardelucci*, 285 F.3d 1231, 1234-35 (9th Cir. 2002) as evidence of Congressional intent to override state law with a uniform federal postpetition interest rate. (*See generally* Confirmation Objection ¶¶ 46-51.)

32.     In its May 19 Decision, this Court held that under section 726(a)(5), the "legal rate" is the federal judgment rate, citing *Cardelucci* with approval.  (May 19 Opinion at 9.) Because the Bank Lender Group has appealed this ruling, this Court is also divested of jurisdiction to decide whether the "best interests of creditors test" is satisfied as to the Bank Lenders.

***Fair and Equitable***

33.     <u>Fourth</u>, this Court is divested of jurisdiction over the issue of whether the Plan violates the absolute priority rule and the "fair and equitable" requirement of section 1129(b) of the Bankruptcy Code.

34.     By its Confirmation Objection, the Bank Lender Group argues that the Plan violates the absolute priority rule because equity was receiving a substantial recovery although an impaired dissenting class of more senior creditors—the Bank Lenders—were not being paid in full (which the Bank Lender Group contends includes payment of postpetition interest at the contract default rate, which had been triggered as a result of Grace's failure to perform numerous obligations under the Credit Agreements on a postpetition basis).  (*See generally* Confirmation Objection ¶¶ 52-55.)

35.     This Court's conclusive findings in the May 19 Decision regarding whether, as a matter of fact and law, a default had occurred and whether the contract default rate had been triggered as a matter of state law dictates the outcome of any future decision on the issues regarding the Plan's violation of section 1129(b), which turns, in part, on the issue of whether the Bank Lenders are impaired and whether the Plan pays them in full.  By the May 19 Decision, this Court expressly ruled that the Bank Lender Group will be paid in full under the Plan for purposes of section 1129(b)(2)(B).  (*See* May 19 Opinion at p. 11 ("*Armstrong* is of no use to the Bank Lenders here inasmuch as the 2008 plan proposes to pay them 100 percent of the allowed amount of their claims in accord with section 1129(b)(2)(B), plus interest in excess of the nondefault rate provided in their contract.").)

36.     In addition, because the Court found that there was no default triggering the contract default rate and because it further found that the Plan provides payment at at least equal to the contractual non-default rate, but less than the contract default rate, in deciding this issue during the Confirmation Hearing, this Court will necessarily conclude that the Plan pays the Bank Lenders in full and thus, there is no violation of the absolute priority rule.

**_Authority of the Chairman of the Creditors Committee to Bind Bank Lenders_**

37.     <u>Fifth</u>, this Court's discussion in footnote 3 of the May 19 Opinion provides an independent basis for the divestment of its jurisdiction over the "fair and equitable" requirement of section 1129.  In footnote 3, this Court held that the chairman of the Creditors Committee, acting in his capacity as Committee chair, had the authority to bind individual creditors to agreements that would modify their rights and further, that he did enter into an agreement on behalf of the individual committee members and their successors in interest.  (_See_ May 19 Opinion at p. 2, n.3.)    In so ruling, this Court pre-determined that the Plan is fair and equitable because the Bank Lenders already "agreed to the deal."[12]   This Court is divested of jurisdiction over this issue because the Bank Lender Group maintains that the Committee chair lacked any legal authority to bind individual Bank Lenders as a matter of law, and appeals this ruling of law in the May 19 Decision.

**_Good Faith_**

38.     <u>Sixth</u>, this Court is divested of jurisdiction regarding the issue of whether the Plan complies with section 1129(a)(3) of the Bankruptcy Code.

39.     In its Confirmation Objection, the Bank Lender Group argues that Grace has failed to comply with its fiduciary duties to act on behalf of creditors by proposing a Plan that violates the absolute priority rule and benefits shareholders at the expense of creditors and seeks to deprive creditors of their right to vote on the Plan and to dilute their votes.  Accordingly, the Bank Lender Group argues that the Plan cannot be confirmed because the Plan Proponents have not proposed it in good faith as required by section 1129(a)(3).  (See generally Confirmation Objection ¶¶ 56-58.)

---

[12]    (_See_ Objection at pp. 12-17.)

40.    As discussed above, based on the May 19 Decision, this Court has already pre-determined the answer to the question of whether the Plan violates the absolute priority rule, as well as the Impairment Confirmation Issue, which eliminates the creditors' ability to complain about their disenfranchisement since the Court has already concluded that they are unimpaired and thus not entitled to vote because they are being paid in full.  Because of the Bank Lender Group's appeal, this Court is also divested of jurisdiction over this confirmation issue.

41.    In sum, by the May 19 Decision, this Court rendered decisions on several questions of fact and law that that bear directly on and pre-determine confirmation issues, including the Impairment Confirmation Issue raised in the Confirmation Objection. Accordingly, because the Impairment Confirmation Issue and the other confirmation related issues are on appeal, this Court is currently divested of jurisdiction over each of these issues.

42.    To avoid a waste of judicial and estate resources, the Bank Lender Group requests that the CMO be modified to defer consideration of the Impairment Confirmation Issue and related confirmation issues until the appeals are resolved and this Court is revested with authority to adjudicate these issues.

## CONCLUSION

For the reasons set forth above, the Bank Lender Group respectfully requests that the CMO be amended to defer consideration of the Impairment Confirmation Issue and related confirmation issues until the issues on appeal are resolved, and that this Court grant such other relief as it may deem proper in the circumstances.

Dated:  Wilmington, Delaware     **LANDIS RATH & COBB LLP**
        June 3, 2009

/s/ _____

Richard Cobb (No. 3157)
James S. Green, Jr. (No. 4406)
J. Landon Ellis (No. 4852)
919 Market Street, Suite 1800
Post Office Box 2087
Wilmington, Delaware  19899
Telephone:  (302) 467-4400
Telecopier:  (302) 467-4450

-and-

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Stephen J. Shimshak
Andrew N. Rosenberg
Margaret A. Phillips
Rebecca R. Zubaty
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Telecopier:  (212) 757-3990

*Attorneys for The Bank Lender Group*

16