# EXHIBIT A

**AFFIDAVIT**

**STATE OF TEXAS )**
**) ss:**
**CITY AND COUNTY OF DALLAS)**

I, Erin Ostenson, being duly sworn, depose and say that I am the Advertising Clerk of the Publisher of THE WALL STREET JOURNAL, a daily national newspaper of general circulation throughout the United States, and that the Notice attached to this Affidavit has been regularly published in THE WALL STREET JOURNAL for national distribution for one insertion(s) on the following date(s): March 23, 2009; advertiser: W.R. Grace & Co., et al.; and that the foregoing statements are true and correct to the best of my knowledge.

E. Ostenson

Sworn to before me this
23rd day of March, 2009.

Notary Public



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

**In re:** ) Chapter 11
**W. R. GRACE & CO., *et al.*[1]** ) Case No. 01-01139 (JKF)
**Debtors.** ) Jointly Administered

**NOTICE OF CONFIRMATION HEARING AND IMPORTANT DEADLINES IN RELATION TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF W. R. GRACE & CO., ET AL.**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. The above-captioned debtors and debtors in possession (collectively, the "Debtors") have filed (i) the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al.; the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (as it may be amended or supplemented, the "Plan") and (ii) the Disclosure Statement, pursuant to section 1125 of the Bankruptcy Code, for the Plan (the "Disclosure Statement").[2]

2. **APPROVAL OF DISCLOSURE STATEMENT**: On March 9, 2009, after notice and a hearing, pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Confirmation Procedures Order") (i) approving the Disclosure Statement as providing adequate information for Holders of Claims and Equity Interests to make a decision as to whether to accept or reject the Plan, (ii) approving certain procedures (the "Voting Procedures") for the Debtors to solicit and tabulate votes to accept or reject the Plan and (iii) scheduling certain dates in connection with Plan confirmation.

3. **VOTING DEADLINE**: Pursuant to the Confirmation Procedures Order, the Bankruptcy Court established the deadline by which votes to accept or reject the Plan must be actually received by BMC Group, Inc. (the "Voting Agent") as **May 20, 2009 at 4:00 p.m. (EDT)** (the "Voting Deadline"). Subject to the provisions for filing a Voting Motion or Disputed Classification Declaration (as described in Paragraph 10 below), to be counted, a Ballot (or Master Ballot) to accept or reject the Plan must be actually received by the Voting Agent on or before the Voting Deadline as follows:

| **By U.S. Mail:** | **By Courier:** |
|---|---|
| BMC Group, Inc. | BMC Group, Inc. |
| Attn: W. R. Grace Voting Agent | Attn: W. R. Grace Voting Agent |
| P.O. Box 2007 | 18750 Lake Drive East |
| Chanhassen, MN 55317-2007 | Chanhassen, MN 55317 |

4. **CONFIRMATION HEARING**: As set forth in the Bankruptcy Court's *Second Amended Case Management Order Related to the First Amended Joint Plan of Reorganization*, dated January 29, 2009 (the "CMO"), a hearing (the "Confirmation Hearing") to consider the entry of an order confirming the Plan under section 1129 of the Bankruptcy Code will take place in two phases. Phase I shall address (i) whether the Plan improperly affects the rights of the Debtors' insurers (in their capacity as insurers, but not creditors); (ii) the standing of the Debtors' insurers (in their capacity as insurers, but not creditors) to litigate confirmation objections that do not involve insurance issues covered by item (i); and (iii) the confirmation objections raised on behalf of and specific to lenders under the Pre-Petition Credit Facilities and other Class 9 creditors with respect to impairment. Phase II shall address the objections of (i) parties classified under the Plan as Holders of Indirect PI or PD Trust Claims (including insurers as Holders of Indirect PI or PD Trust Claims with respect to such Claims); (ii) the objections of the Libby Claimants and (iii) any other confirmation objections not addressed and resolved in Phase I. Each Phase of the Confirmation Hearing shall take place before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. Phase I of the Confirmation Hearing shall take place on **June 22-25, 2009 commencing at 9:00 a.m. (EDT)** and Phase II of the Confirmation Hearing shall take place on **September 8-11, 2009 commencing at 9:00 a.m. (EDT)**, except that the **September 8, 2009 hearing shall commence at 11:00 a.m (EDT)**.

5. **INJUNCTIONS: The Plan proposes injunctions under sections 524(g) and 105 of the Bankruptcy Code, applicable to all persons and entities, that result in the permanent channeling of (i) all Asbestos PI Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to an Asbestos PI Trust, (ii) all Asbestos PD Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to an Asbestos PD Trust and (iii) all CDN ZAI PD Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to the CDN ZAI PD Claims Fund, all as more specifically described in the Plan. The Plan also proposes an injunction applicable to all persons and entities that enjoins all Successor Claims against the Asbestos Protected Parties based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction, as more specifically described in the Plan. These injunctions enjoin all persons and entities from bringing claims covered by the particular injunctions against the Debtors and the other identified parties in the Plan. You should read the Plan and the Disclosure Statement for a more complete discussion of how such injunctions will operate and affect your rights.**

6. **SPECIFIC RELEASES BY HOLDERS OF CLAIMS OR EQUITY INTERESTS: As more fully provided for in Section 8.8.7 of the Plan, each Holder of a Claim or Equity Interest who votes in favor of the Plan shall be deemed to have unconditionally released the Asbestos Protected Parties, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee, the Asbestos PI FCR and the Asbestos PD FCR, and each party's Representatives, as of the Effective Date, from any and all Claims, SA Claims, SA Damages, obligations, rights, suits, damages, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, their operations on or before the Effective Date, their respective property, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments, or other documents. In addition to the foregoing, each Holder of a Claim or Equity Interest who receives or retains any property under this Plan shall also be deemed to unconditionally release the Fresenius Indemnified Parties to the same extent as the release in the preceding sentence.**

7. **EXECUTORY CONTRACTS**: The Plan constitutes a motion to assume certain executory contracts and unexpired leases as of the Effective Date and provides for the rejection of certain other executory contracts and unexpired leases as of the Effective Date. Section 9.1 of the Plan sets forth (i) the treatment of executory contracts and unexpired leases under the Plan, (ii) the procedures relating to assumption of executory contracts and unexpired leases under the Plan, including procedures and deadlines for counterparties to assert or object to any cure amount that may be owing in relation to the assumption of an executory contract or unexpired lease, and (iii) the procedures for filing proofs of claim arising from any contract that will be rejected under the Plan. Counterparties to executory contracts or unexpired leases should receive separate notice of these procedures and may obtain a copy of that notice as described in Paragraph 9 below.

8. **POST-PETITION INTEREST**: Section 3.1.9(b) of the Plan provides for the payment of post-petition interest to Holders of General Unsecured Claims and provides procedures for such Holders to (i) assert an entitlement to petition interest in a different amount than provided for in the Plan (a "Petition Interest Determination Notice") or (ii) identify a non-default con rate of interest to which the Holder is entitled under the Plan (a "Noti Non-Default Contract Rate of Interest"). A Post-Petition Interest Determin Notice must comply with the requirements of Section 3.1.9(d) of the Plar be filed with the Bankruptcy Court **on or before the Voting Deadline of 20, 2009.** A Notice of Non-Default Contract Rate of Interest must comply the requirements of Section 3.1.9(e) of the Plan and be received by the V Agent (at the address listed in Paragraph 9) **on or before the Voting Dea of May 20, 2009.** Holders of General Unsecured Claims should receive s rate notice of these procedures and obtain a copy of that notice as desc in Paragraph 9 below.

9. **SOLICITATION PACKAGES**: In accordance with the Confirmatior cedures Order, certain materials (the "Solicitation Package"), including a of the Disclosure Statement, Plan and Voting Procedures, are being pro with this Notice to Holders of Claims and Equity Interests in impaired cla under the Plan and to Holders of Claims in Classes 7A and 9 under the F In addition, the Confirmation Procedures Order authorizes the Debto distribute (i) a notice to counterparties to executory contracts and unex leases describing the treatment of executory contracts and unexpired le under the Plan, and (ii) a notice to Holders of Class 9 General Unse Claims regarding the Plan's procedures with respect to the payment of petition interest in relation to General Unsecured Claims. The Plan, Discl Statement, Voting Procedures and related documents and notices are available via the Internet on the Debtors' website at www.wrgrace.com on the Voting Agent's website at www.bmcgroup.com/wrgrace. If you di receive a Solicitation Package, but wish to receive one, you should send a ten request by U.S. Mail to BMC Group, Inc., Attn: W. R. Grace Voting A P.O. Box 913, El Segundo, CA 90245-0913 or call the Voting Agent at ( 909-0100. Creditors and Equity Interest Holders who are entitled to vo the Plan should receive Ballots and instructions for voting in their Solicit Package. Holders of Claims that are not entitled to vote on the Plan wi receive a Solicitation Package.

10. **VOTING MOTIONS AND DISPUTED CLASSIFICATION DECLARATI** If a Holder of a Claim is not entitled to vote under the Voting Procedures c agrees with the amount of its Claim for voting purposes, such Holder may motion with the Bankruptcy Court, pursuant to Bankruptcy Rule 3018(a Section 10(f)(i) of the Voting Procedures, requesting temporary allowan such Claim in an amount which the Bankruptcy Court deems proper sole the purpose of casting a vote to accept or reject the Plan (a "Voting Mot **All Voting Motions must be filed and served in accordance with the V Procedures on or before the Voting Deadline of May 20, 2009.** If a H of a Claim intends to pursue an objection to confirmation of the Plan o grounds that such Holder's Claim is not properly classified, such Holde request a Ballot from the Voting Agent for provisional voting under a diff Class and may vote to accept or reject the Plan by filing with the Bankr Court a Disputed Classification Declaration **on or before the Voting Dea of May 20, 2009** pursuant to Section 10(f)(ii) of the Voting Procedures Voting Procedures may be obtained from the Voting Agent as describ Paragraph 9 above.

11. **OBJECTION DEADLINE**: Responses and objections, if any, to the c mation of the Plan or any relief sought by the Debtors in connection with firmation of the Plan, must: (i) be in writing; (ii) state the name and addre the objecting party and the amount and nature of the claim or interest of party; (iii) state with particularity the basis and nature of any objection t Plan and, if practicable, proposed modification to the Plan that would re such objection; (iv) conform to the Bankruptcy Rules and the Local F and (v) be filed, together with proof of service, with the Bankruptcy Cour served in a manner so as to be received by **May 20, 2009 at 4:00 p.m.** on (a) counsel to the Debtors, (b) counsel to each of the statutory cor tees appointed in these chapter 11 cases, (c) counsel to each of the f claimants' representatives appointed in these chapter 11 cases, (d) co to Sealed Air Corporation and Cryovac, Inc., (e) counsel to Fresenius, a the United States Trustee, whose addresses are set forth in Section 11. the Plan, except for the United States Trustee, who shall be served at: ( of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, 2207, Wilmington, Delaware 19801.

**ANY OBJECTION TO THE CONFIRMATION OF THE PLAN THAT IS NOT F AND SERVED STRICTLY AS PRESCRIBED HEREIN SHALL NOT BE CO ERED.**

12. The Confirmation Hearing may be adjourned from time to time wi further notice to creditors or parties in interest other than by an anno ment in the Bankruptcy Court of such adjournment at the Confirmation I ing or any continued hearing.

Dated: March 9, 2009

| KIRKLAND & ELLIS LLP | THE LAW OFFICES OF | PACHULSKI STANG ZIEHL |
|---|---|---|
| David M. Bernick, P.C. | JANET S. BAER, P.C. | & JONES LLP |
| Theodore L. Freedman | Janet S. Baer, P.C. | Laura Davis Jones |
| Deanna D. Boll | 70 W. Madison St. | James E. O'Neill |
| Craig A. Bruens | Ste 2100 | Timothy P. Cairns |
| 153 East 53rd Street | Chicago, IL 60602 | 919 North Market Street |
| New York, NY 10022 | Tel: (312) 641-2162 | 17th Floor, P.O. Box 8705 |
| Tel: (212) 446-4800 | | Wilmington, DE 19899-8 |
| | | Tel: (302) 652-4100 |

Co-Counsel for the Debtors and Debtors in Possession

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. ( Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Too Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Bior cal, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coal II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco taurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), E Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace C Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Ma ment, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thoma Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grac II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., ( Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., ( Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services C ration, Grace International Holdings, Inc. (f/k/a Dearborn International ings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petro Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., ( Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Cor tion, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Cor tion, Hanover Square Corporation, Homco International, Inc., Kootenai D opment Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a ( Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith E prises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a N BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Reme Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquid Corp.; Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a ( Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not otherwise defined herein have the meanings giv them in the Plan.

[3] Contents of the Solicitation Package are described in the Voting P dures.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| W. R. GRACE & CO., *et al.*[1] | ) Case No. 01-01139 (JKF) |
| Debtors. | ) Jointly Administered |

**NOTICE OF CONFIRMATION HEARING AND IMPORTANT DEADLINES IN RELATION TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF W. R. GRACE & CO., ET AL.**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. The above-captioned debtors and debtors in possession (collectively, the "Debtors") have filed (i) the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (as it may be amended or supplemented, the "Plan") and (ii) the Disclosure Statement, pursuant to section 1125 of the Bankruptcy Code, for the Plan (the "Disclosure Statement").[2]

2. **APPROVAL OF DISCLOSURE STATEMENT**: On March 9, 2009, after notice and a hearing, pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Confirmation Procedures Order") (i) approving the Disclosure Statement as providing adequate information for Holders of Claims and Equity Interests to make a decision as to whether to accept or reject the Plan, (ii) approving certain procedures (the "Voting Procedures") for the Debtors to solicit and tabulate votes to accept or reject the Plan and (iii) scheduling certain dates in connection with Plan confirmation.

3. **VOTING DEADLINE**: Pursuant to the Confirmation Procedures Order, the Bankruptcy Court established the deadline by which votes to accept or reject the Plan must be actually received by BMC Group, Inc. (the "Voting Agent") as **May 20, 2009 at 4:00 p.m. (EDT)** (the "Voting Deadline"). Subject to the provisions for filing a Voting Motion or Disputed Classification Declaration (as described in Paragraph 10 below), to be counted, a Ballot (or Master Ballot) to accept or reject the Plan must be actually received by the Voting Agent on or before the Voting Deadline as follows:

| **By U.S. Mail:** | **By Courier:** |
|---|---|
| BMC Group, Inc. | BMC Group, Inc. |
| Attn: W. R. Grace Voting Agent | Attn: W. R. Grace Voting Agent |
| P.O. Box 2007 | 18750 Lake Drive East |
| Chanhassen, MN 55317-2007 | Chanhassen, MN 55317 |

4. **CONFIRMATION HEARING**: As set forth in the Bankruptcy Court's *Second Amended Case Management Order Related to the First Amended Joint Plan of Reorganization*, dated January 29, 2009 (the "CMO"), a hearing (the "Confirmation Hearing") to consider the entry of an order confirming the Plan under section 1129 of the Bankruptcy Code will take place in two phases. Phase I shall address (i) whether the Plan improperly affects the rights of the Debtors' insurers (in their capacity as insurers, but not creditors); (ii) the standing of the Debtors' insurers (in their capacity as insurers, but not creditors) to litigate confirmation objections that do not involve insurance issues covered by item (i); and (iii) the confirmation objections raised on behalf of and specific to lenders under the Pre-Petition Credit Facilities and other Class 9 creditors with respect to impairment. Phase II shall address the objections of (i) parties classified under the Plan as Holders of Indirect PI or PD Trust Claims (including insurers as Holders of Indirect PI or PD Trust Claims with respect to such Claims); (ii) the objections of the Libby Claimants and (iii) any other confirmation objections not addressed and resolved in Phase I. Each Phase of the Confirmation Hearing shall take place before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. Phase I of the Confirmation Hearing shall take place on **June 22-25, 2009 commencing at 9:00 a.m. (EDT)** and Phase II of the Confirmation Hearing shall take place on **September 8-11, 2009 commencing at 9:00 a.m. (EDT)**, except that the **September 8, 2009 hearing shall commence at 11:00 a.m (EDT).**

5. **INJUNCTIONS: The Plan proposes injunctions under sections 524(g) and 105 of the Bankruptcy Code, applicable to all persons and entities, that result in the permanent channeling of (i) all Asbestos PI Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to an Asbestos PI Trust, (ii) all Asbestos PD Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to an Asbestos PD Trust and (iii) all CDN ZAI PD Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to the CDN ZAI PD Claims Fund, all as more specifically described in the Plan. The Plan also proposes an injunction applicable to all persons and entities that enjoins all Successor Claims against the Asbestos Protected Parties based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction, as more specifically described in the Plan. These injunctions enjoin all persons and entities from bringing claims covered by the particular injunctions against the Debtors and the other identified parties in the Plan. You should read the Plan and the Disclosure Statement for a more complete discussion of how such injunctions will operate and affect your rights.**

6. **SPECIFIC RELEASES BY HOLDERS OF CLAIMS OR EQUITY INTERESTS: As more fully provided for in Section 8.8.7 of the Plan, each Holder of a Claim or Equity Interest who votes in favor of the Plan shall be deemed to have unconditionally released the Asbestos Protected Parties, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee, the Asbestos PI FCR and the Asbestos PD FCR, and each party's Representatives, as of the Effective Date, from any and all Claims, SA Claims, SA Damages, obligations, rights, suits, damages, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, their operations on or before the Effective Date, their respective property, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments, or other documents. In addition to the foregoing, each Holder of a Claim or Equity Interest who receives or retains any property under this Plan shall also be deemed to unconditionally release the Fresenius Indemnified Parties to the same extent as the release in the preceding sentence.**

7. **EXECUTORY CONTRACTS**: The Plan constitutes a motion to assume certain executory contracts and unexpired leases as of the Effective Date and provides for the rejection of certain other executory contracts and unexpired leases as of the Effective Date. Section 9.1 of the Plan sets forth (i) the treatment of executory contracts and unexpired leases under the Plan, (ii) the procedures relating to assumption of executory contracts and unexpired leases under the Plan, including procedures and deadlines for counterparties to assert or object to any cure amount that may be owing in relation to the assumption of an executory contract or unexpired lease, and (iii) the procedures for filing proofs of claim arising from any contract that will be rejected under the Plan. Counterparties to executory contracts or unexpired leases should receive separate notice of these procedures and may obtain a copy of that notice as described in Paragraph 9 below.

8. **POST-PETITION INTEREST**: Section 3.1.9(b) of the Plan provides for the payment of post-petition interest to Holders of General Unsecured Claims and provides procedures for such Holders to (i) assert an entitlement to p[ost-]petition interest in a different amount than provided for in the Plan (a "P[ost-]Petition Interest Determination Notice") or (ii) identify a non-default con[tract] rate of interest to which the Holder is entitled under the Plan (a "Notic[e of] Non-Default Contract Rate of Interest"). A Post-Petition Interest Determina[tion] Notice must comply with the requirements of Section 3.1.9(d) of the Plan [and] be filed with the Bankruptcy Court **on or before the Voting Deadline of [May] 20, 2009**. A Notice of Non-Default Contract Rate of Interest must comply [with] the requirements of Section 3.1.9(e) of the Plan and be received by the Vo[ting] Agent (at the address listed in Paragraph 9) **on or before the Voting Dead[line] of May 20, 2009.** Holders of General Unsecured Claims should receive s[epa]rate notice of these procedures and obtain a copy of that notice as descr[ibed] in Paragraph 9 below.

9. **SOLICITATION PACKAGES**: In accordance with the Confirmation [Pro]cedures Order, certain materials (the "Solicitation Package"), including a [copy] of the Disclosure Statement, Plan and Voting Procedures, are being provi[ded] with this Notice to Holders of Claims and Equity Interests in impaired clas[ses] under the Plan and to Holders of Claims in Classes 7A and 9 under the Pl[an]. In addition, the Confirmation Procedures Order authorizes the Debtor[s to] distribute (i) a notice to counterparties to executory contracts and unexp[ired] leases describing the treatment of executory contracts and unexpired lea[ses] under the Plan, and (ii) a notice to Holders of Class 9 General Unsecu[red] Claims regarding the Plan's procedures with respect to the payment of p[ost-]petition interest in relation to General Unsecured Claims. The Plan, Disclos[ure] Statement, Voting Procedures and related documents and notices are [also] available via the Internet on the Debtors' website at www.wrgrace.com [and] on the Voting Agent's website at www.bmcgroup.com/wrgrace. If you did [not] receive a Solicitation Package, but wish to receive one, you should send a w[rit]ten request by U.S. Mail to BMC Group, Inc., Attn: W. R. Grace Voting Ag[ent], P.O. Box 913, El Segundo, CA 90245-0913 or call the Voting Agent at (8[88]) 909-0100. Creditors and Equity Interest Holders who are entitled to vote [on] the Plan should receive Ballots and instructions for voting in their Solicitat[ion] Package. Holders of Claims that are not entitled to vote on the Plan will [not] receive a Solicitation Package.

10. **VOTING MOTIONS AND DISPUTED CLASSIFICATION DECLARATIO[NS]**: If a Holder of a Claim is not entitled to vote under the Voting Procedures or [dis]agrees with the amount of its Claim for voting purposes, such Holder may fil[e a] motion with the Bankruptcy Court, pursuant to Bankruptcy Rule 3018(a) a[nd] Section 10(f)(i) of the Voting Procedures, requesting temporary allowance [of] such Claim in an amount which the Bankruptcy Court deems proper solely [for] the purpose of casting a vote to accept or reject the Plan (a "Voting Motion"). **All Voting Motions must be filed and served in accordance with the Voti[ng] Procedures on or before the Voting Deadline of May 20, 2009.** If a Hol[der] of a Claim intends to pursue an objection to confirmation of the Plan on t[he] grounds that such Holder's Claim is not properly classified, such Holder m[ay] request a Ballot from the Voting Agent for provisional voting under a differe[nt] Class and may vote to accept or reject the Plan by filing with the Bankrup[tcy] Court a Disputed Classification Declaration **on or before the Voting Deadli[ne] of May 20, 2009** pursuant to Section 10(f)(ii) of the Voting Procedures. T[he] Voting Procedures may be obtained from the Voting Agent as described [in] Paragraph 9 above.

11. **OBJECTION DEADLINE**: Responses and objections, if any, to the con[fir]mation of the Plan or any relief sought by the Debtors in connection with co[n]firmation of the Plan, must: (i) be in writing; (ii) state the name and address [of] the objecting party and the amount and nature of the claim or interest of su[ch] party; (iii) state with particularity the basis and nature of any objection to t[he] Plan and, if practicable, proposed modification to the Plan that would resol[ve] such objection; (iv) conform to the Bankruptcy Rules and the Local Rule[s;] and (v) be filed, together with proof of service, with the Bankruptcy Court a[nd] served in a manner so as to be received by **May 20, 2009 at 4:00 p.m. (ED[T])** on (a) counsel to the Debtors, (b) counsel to each of the statutory comm[it]tees appointed in these chapter 11 cases, (c) counsel to each of the futu[re] claimants' representatives appointed in these chapter 11 cases, (d) couns[el] to Sealed Air Corporation and Cryovac, Inc., (e) counsel to Fresenius, and [(f)] the United States Trustee, whose addresses are set forth in Section 11.12 [of] the Plan, except for the United States Trustee, who shall be served at: Offi[ce] of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Sui[te] 2207, Wilmington, Delaware 19801.

**ANY OBJECTION TO THE CONFIRMATION OF THE PLAN THAT IS NOT FILE[D] AND SERVED STRICTLY AS PRESCRIBED HEREIN SHALL NOT BE CONSI[D]ERED.**

12. The Confirmation Hearing may be adjourned from time to time witho[ut] further notice to creditors or parties in interest other than by an announc[e]ment in the Bankruptcy Court of such adjournment at the Confirmation Hea[ring] or any continued hearing.

Dated: March 9, 2009

| KIRKLAND & ELLIS LLP | THE LAW OFFICES OF JANET S. BAER, P.C. | PACHULSKI STANG ZIEHL & JONES LLP |
|---|---|---|
| David M. Bernick, P.C. | Janet S. Baer, P.C. | Laura Davis Jones |
| Theodore L. Freedman | 70 W. Madison St. | James E. O'Neill |
| Deanna D. Boll | Ste 2100 | Timothy P. Cairns |
| Craig A. Bruens | Chicago, IL 60602 | 919 North Market Street |
| 153 East 53rd Street | Tel: (312) 641-2162 | 17th Floor, P.O. Box 8705 |
| New York, NY 10022 | | Wilmington, DE 19899-8705 |
| Tel: (212) 446-4800 | | Tel: (302) 652-4100 |

Co-Counsel for the Debtors and Debtors in Possession

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/[a] Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomed[i]cal, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrac[e] II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Res[]taurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Coco[a] Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Manage[]ment, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasvill[e] Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-[B] II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grac[e] Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grac[e] Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corpo[]ration, Grace International Holdings, Inc. (f/k/a Dearborn International Hold[]ings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grac[e] Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corpora[]tion, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corpora[]tion, Hanover Square Corporation, Homco International, Inc., Kootenai Devel[]opment Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enter[]prises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

[3] Contents of the Solicitation Package are described in the Voting Procedures.

# EXHIBIT B

**The New York Times**
620 8TH AVENUE • NEW YORK, NY 10018

SEC. 3 PG 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re: ) Chapter 11
W. R. GRACE & CO., et al., ) Case No. 01-01139 (JKF)
Debtors. ) Jointly Administered

NOTICE OF CONFIRMATION HEARING AND IMPORTANT DEADLINES IN RELATION TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF W. R. GRACE & CO., ET AL.

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. The above-captioned debtors and debtors in possession (col[illegible]tively, the "Debtors") have filed (i) the *First Amended Joint Plan of [illegible]organization under Chapter 11 of the Bankruptcy Code of W. R. Grace & [illegible], et al., the Official Committee of Asbestos Personal Injury Claimants, the [illegible]bestos PI Future Claimants' Representative, and the Official Committee of [illegible]uity Security Holders Dated February 27, 2009* (as it may be amended [illegible] supplemented, the "Plan") and (ii) the Disclosure Statement, pursu[illegible]t to section 1125 of the Bankruptcy Code, for the Plan (the "Disclosure [illegible]tement").

2. APPROVAL OF DISCLOSURE STATEMENT. On March 9, 2009, [illegible]er notice and a hearing, pursuant to section 1125 of title 11 of the [illegible]ited States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), [illegible] United States Bankruptcy Court for the District of Delaware (the "[illegible]ankruptcy Court") entered an order (the "Confirmation Procedures [illegible]der") (i) approving the Disclosure Statement as providing adequate [illegible]ormation for Holders of Claims and Equity Interests to make a decision [illegible] to whether to accept or reject the Plan, (ii) approving certain proce[illegible]res (the "Voting Procedures") for the Debtors to solicit and tabulate [illegible]es to accept or reject the Plan and (iii) scheduling certain dates in con[illegible]ction with Plan confirmation.

3. VOTING DEADLINE. Pursuant to the Confirmation Procedures [illegible]der, the Bankruptcy Court established the deadline by which votes [illegible] accept or reject the Plan must be actually received by BMC Group [illegible] (the "Voting Agent") as **May 20, 2009 at 4:00 p.m. (EDT)** (the "[illegible]ting Deadline"). Subject to the provisions for filing a Voting Motion or [illegible]puted Classification Declaration (as described in Paragraph 10 below), [illegible]e counted, a Ballot (or Master Ballot) to accept or reject the Plan must [illegible] actually received by the Voting Agent on or before the Voting Deadline [illegible] follows:

| U.S. Mail: | By Courier: |
|---|---|
| [illegible]C Group, Inc. | BMC Group, Inc. |
| [illegible]n: W.R. Grace Voting Agent | Attn: W.R. Grace Voting Agent |
| [illegible] Box 20[illegible] | 18750 Lake Drive East |
| [illegible]anhassen, MN 55317-2007 | Chanhassen, MN 55317 |

4. CONFIRMATION HEARING. As set forth in the Bankruptcy [illegible]urt's *Second Amended Case Management Order Related to the First [illegible]ended Joint Plan of Reorganization*, dated January 29, 2009 (the "[illegible]MO"), a hearing (the "Confirmation Hearing") to consider the entry of [illegible] order confirming the Plan under section 1129 of the Bankruptcy Code [illegible] take place in two phases. Phase I shall address (i) whether the Plan [illegible]properly affects the rights of the Debtors' insurers (in their capacity [illegible] insurers, but not creditors), (ii) the standing of the Debtors' insurers [illegible] their capacity as insurers, but not creditors) to litigate confirma[illegible] objections that do not involve insurance issues covered by item (i), [illegible] (iii) the confirmation objections raised on behalf of and specific to [illegible]ders under the Pre-Petition Credit Facilities and other Class 9 credi[illegible] with respect to impairment. Phase II shall address the objections of [illegible]parties classified under the Plan as Holders of Indirect PI or PD Trust [illegible]ms (including insurers as Holders of Indirect PI or PD Trust Claims [illegible]h respect to such Claims), (ii) the objections of the Libby Claimants [illegible] (iii) any other confirmation objections not addressed and resolved [illegible]hase I. Each Phase of the Confirmation Hearing shall take place before [illegible] Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at [illegible] United States Bankruptcy Court, Western District of Pennsylvania, [illegible]4 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. Phase I of [illegible] Confirmation Hearing shall take place on **June 22-25, 2009 com[illegible]ncing at 9:00 a.m. (EDT)** and Phase II of the Confirmation Hearing [illegible]ll take place on **September 8-11, 2009 commencing at 9:00 a.m. [illegible]T)**, except that the **September 8, 2009 hearing shall commence [illegible]1:00 a.m. (EDT)**.

5. INJUNCTIONS. **The Plan proposes injunctions under sec[illegible]ns 524(g) and 105 of the Bankruptcy Code, applicable to all [illegible]sons and entities, that result in the permanent channel[illegible] of (i) all Asbestos PI Claims against the Debtors and various [illegible]er entities (including the Asbestos Protected Parties) to an [illegible]estos PI Trust, (ii) all Asbestos PD Claims against the Debtors [illegible] various other entities (including the Asbestos Protected [illegible]ties) to an Asbestos PD Trust and (iii) all CDN ZAI PD Claims [illegible]inst the Debtors and various other entities (including the [illegible]estos Protected Parties) to the CDN ZAI PD Claims Fund, all as [illegible]re specifically described in the Plan. The Plan also proposes [illegible] injunction applicable to all persons and entities that enjoins [illegible] Successor Claims against the Asbestos Protected Parties [illegible]ed on or arising from, in whole or in part, directly or indi[illegible]tly, the Cryovac Transaction or the Fresenius Transaction, as** [illegible]

[illegible] of these procedures and may obtain a copy of that notice as described in Paragraph 9 below.

8. POST-PETITION INTEREST. Section 3.1.9(b) of the Plan provides for the payment of post-petition interest to Holders of General Unsecured Claims and provides procedures for such Holders to (i) assert an entitlement to post-petition interest in a different amount than provided for in the Plan (a "Post-Petition Interest Determination Notice") or (ii) identify a non-default contract rate of interest to which the Holder is entitled under the Plan (a "Notice of Non-Default Contract Rate of Interest"). A Post-Petition Interest Determination Notice must comply with the requirements of Section 3.1.9(d) of the Plan and be filed with the Bankruptcy Court **on or before the Voting Deadline of May 20, 2009.** A Notice of Non-Default Contract Rate of Interest must comply with the requirements of Section 3.1.9(e) of the Plan and be received by the Voting Agent (at the address listed in Paragraph 9) **on or before the Voting Deadline of May 20, 2009.** Holders of General Unsecured Claims should receive separate notice of these procedures and obtain a copy of that notice as described in Paragraph 9 below.

9. SOLICITATION PACKAGES. In accordance with the Confirmation Procedures Order, certain materials (the "Solicitation Package") including a copy of the Disclosure Statement, Plan and Voting Procedures, are being provided with this Notice to Holders of Claims and Equity Interests in Impaired classes under the Plan and to Holders of Claims in Classes 7A and 9 under the Plan. In addition, the Confirmation Procedures Order authorizes the Debtors to distribute (i) a notice to counterparties to executory contracts and unexpired leases describing the treatment of executory contracts and unexpired leases under the Plan and (ii) a notice to Holders of Class 9 General Unsecured Claims regarding the Plan's procedures with respect to the payment of post-petition interest in relation to General Unsecured Claims. The Plan, Disclosure Statement, Voting Procedures and related documents and notices are also available via the Internet on the Debtors' website at www.wrgrace.com and on the Voting Agent's website at www.bmcgroup.com/wrgrace. If you did not receive a Solicitation Package but wish to receive one, you should send a written request by U.S. Mail to BMC Group, Inc., Attn: W.R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913 or call the Voting Agent at (888) 909-0100. Creditors and Equity Interest Holders who are entitled to vote on the Plan should receive Ballots and instructions for voting in their Solicitation Package. Holders of Claims that are not entitled to vote on the Plan will not receive a Solicitation Package.

10. VOTING MOTIONS AND DISPUTED CLASSIFICATION DECLARATIONS. If a Holder of a Claim is not entitled to vote under the Voting Procedures or disagrees with the amount of its Claim for voting purposes, such Holder may file a motion with the Bankruptcy Court, pursuant to Bankruptcy Rule 3018(a) and Section 10(f)(i) of the Voting Procedures, requesting temporary allowance of such Claim in an amount which the Bankruptcy Court deems proper solely for the purpose of casting a vote to accept or reject the Plan (a "Voting Motion"). **All Voting Motions must be filed and served in accordance with the Voting Procedures on or before the Voting Deadline of May 20, 2009.** If a Holder of a Claim intends to pursue an objection to confirmation of the Plan on the grounds that such Holder's Claim is not properly classified, such Holder may request a Ballot from the Voting Agent for provisional voting under a different Class and may vote to accept or reject the Plan by filing with the Bankruptcy Court a Disputed Classification Declaration **on or before the Voting Deadline of May 20, 2009** pursuant to Section 10(f)(ii) of the Voting Procedures. The Voting Procedures may be obtained from the Voting Agent as described in Paragraph 9 above.

11. OBJECTION DEADLINE. Responses and objections, if any, to the confirmation of the Plan or any relief sought by the Debtors in connection with confirmation of the Plan, must (i) be in writing, (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection to the Plan and if practicable, proposed modification to the Plan that would resolve such objection, (iv) conform to the Bankruptcy Rules and the Local Rules, and (v) be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by **May 20, 2009 at 4:00 p.m. (EDT)** on (a) counsel to the Debtors, (b) counsel to each of the statutory committees appointed in these chapter 11 cases, (c) counsel to each of the future claimants' representatives appointed in these chapter 11 cases, (d) counsel to Sealed Air Corporation and Cryovac, Inc., (e) counsel to Fresenius, and (f) the United States Trustee, whose addresses are set forth in Section 11.12 of the Plan, except for the United States Trustee, who shall be served at: Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, Delaware 19801.

**ANY OBJECTION TO THE CONFIRMATION OF THE PLAN THAT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN SHALL NOT BE CONSIDERED.**

12. The Confirmation Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by an announcement in the Bankruptcy Court of such adjournment at the Confirmation Hearing or any continued hearing.

Dated: March 9, 2009

KIRKLAND & ELLIS LLP, David M. Bernick, P.C. [illegible]

# CERTIFICATION OF PUBLICATION

MAR 2 3 2009 20 ____

Alice Weber, in my capacity as a Principal Clerk of the Publisher of **The New York Times** a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of **The New York Times** on the following date or dates, to wit on

MAR 2 3 2009 20 ____

Alice Weber

Approved:

Maria Pannullo

THIS CERTIFICATION NOT VALID WITHOUT NYT RAISED SEAL

[illegible] parties in the Plan. You should read the Plan and the Disclosure Statement for a more complete discussion of how such injunctions will operate and affect your rights.

6. **SPECIFIC RELEASES BY HOLDERS OF CLAIMS OR EQUITY INTERESTS**: As more fully provided for in Section 8.8.7 of the Plan, each Holder of a Claim or Equity Interest who votes in favor of the Plan shall be deemed to have unconditionally released the Asbestos Protected Parties, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee, the Asbestos PI FCR and the Asbestos PD FCR, and each party's Representatives as of the Effective Date, from any and all Claims, SA Claims, SA Damages, obligations, rights, suits, damages, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, their operations on or before the Effective Date, their respective property, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments, or other documents. In addition to the foregoing, each Holder of a Claim or Equity Interest who receives or retains any property under this Plan shall also be deemed to unconditionally release the Fresenius Indemnified Parties to the same extent as the release in the preceding sentence.

7. **EXECUTORY CONTRACTS**: The Plan constitutes a motion to assume certain executory contracts and unexpired leases as of the Effective Date and provides for the rejection of certain other executory contracts and unexpired leases as of the Effective Date. Section 9.1 of the Plan sets forth (i) the treatment of executory contracts and unexpired leases under the Plan, (ii) the procedures relating to assumption of executory contracts and unexpired leases under the Plan including procedures and deadlines for counterparties to assert or object to any cure amount that may be owing in relation to the assumption of an executory contract or unexpired lease, and (iii) the procedures for filing proofs of claim arising from any contract that will be rejected under the Plan. Counterparties to executory contracts or unexpired leases should receive separate notice [illegible]

70 W. Madison St., Ste 2100, Chicago, IL 60602, Tel: (312) 641-2162

PACHULSKI STANG ZIEHL & JONES LLP, Laura Davis Jones, James E. O'Neill, Timothy P. Cairns, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705, Tel: (302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

1. The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2. Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

3. Contents of the Solicitation Package are described in the Voting Procedures [illegible]

# EXHIBIT C



7950 Jones Branch Drive • McLean, Virginia 22108
(703) 854-3400



# VERIFICATION OF PUBLICATION

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

Being duly sworn, Alison Gonzalez says that she is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: March 23rd 2009 on the following legal advertisement- **In re: W.R. GRACE & CO., et al.** published in the national edition of **USA Today.**

Principal Clerk of USA TODAY
March 23rd 2009

This 23rd day of March month 2009 year.

Notary Public

Marcus Dane Edmonds
Notary Public ID 7165468
Commonwealth of Virginia
My commission expires
09/30/2012

bankruptcy insu-
dependent research
organization.
ankruptcy filings
ing dramatically in
nued to climb un-
they hit a record 2
he reform passed,
d dramatically, as
hoped, but in part
ay debtors had
: before the law
ast year, filings in-
o 1.1 million, ac-
ER, a bankruptcy-
npany.




rce: AACER

By Karl Gelles, USA TODAY

lings are expected
arly 1.4 million, al-
offs continue and
lit continues to be
oy, they may reach
ys Robert Lawless,
w at the University
February, filings
highest rate since
ed.
reform, a family
with home mort-
lit card debt most
Chapter 7, which
em to have all un-
s, including credit
harged. That might
e family to pay the
keep their home.
goal of the reform
ach families to rely
3 bankruptcy in-
equires them to re-
ull, or in part, over

't seem to have
st year, Chapter 7
ounting for 76% of
gs — continued to
er 13 filings. Chap-
ade up 80% of the
2005; 72% in 2004.
s of families who
bankruptcy since
stinguishable from
ed before the law
rding to a study by
professors, includ-
The study, "Did
Reform Fail?" was
year by *The Ameri-
y Law Journal*.
ovision of the re-
d higher-income
now have to un-
test. "The law now
an individual filing

ive in Prescott, Ariz., say credit card bills buried them in debt and made them unable to cope with unexpected problems.

Before their finances fell apart, they had used Steve's 401(k) retirement savings to buy a new home and furnishings. Because he had a full-time job and Shirley worked part time, they thought that they could cover their two car payments and mortgage. Rising home equity, they figured, would help rebuild their retirement savings. But in 2007, Steve needed emergency gall bladder surgery. He charged what insurance didn't cover on credit cards. Then Shirley became sick and lost her job. While she was ill, Steve was fired.

Late last year, the Morses filed for Chapter 7 bankruptcy, which cost them about $2,560 in fees.

"Not cheap for people in trouble money-wise," Shirley says. And filing didn't exactly wipe the slate clean for them: They've moved in with a family member after losing their house and have given up one car.

"Their health care cost precipitated the bankruptcy filing, and the job loss in the midst of that was the final blow," says their bankruptcy lawyer, Monte Rich. It's unclear if filing under the old law would have helped save their home, he says. But filing would have been easier, faster and less expensive, he says.

Filing fees have gone up, and because the process is more complex and time-consuming, associated legal fees are costlier. And many debtors must pay for credit counseling and debtor education courses that are required to complete filing.

It all leads to delays in filing for bankruptcy, consumer experts say. "That means somebody with credit card debt is kept longer in what some call the 'sweat box,'" Whitehouse says. His legislation would eliminate the means-test requirement for those who have been hit by excessive rates.

### Credit card fees pile on profits

Credit card fees and interest rates were at the center of the reform debate. During a multiyear, multimillion-dollar lobbying effort by credit card companies to change the law, Americans were told that they had to pay higher credit card fees because bankruptcy filings had caused the industry to lose about $40 billion a year. "Congress should do as much as possible to reduce the $400 hidden tax on every American family due to the increasing number of bankruptcies that are filed in this country," said then-Rep. Steve Chabot, R-Ohio, during a House subcommittee meeting in 1997 at the outset of the eight-year battle for reform.

Since the reform passed, the credit card industry's profits have grown. It earned $19.9 billion

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| **W. R. GRACE & CO., *et al.*[1]** | ) | Case No. 01-01139 (JKF) |
| **Debtors.** | ) | Jointly Administered |

**NOTICE OF CONFIRMATION HEARING AND IMPORTANT DEADLINES IN RELATION TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF W. R. GRACE & CO., ET AL.**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. The above-captioned debtors and debtors in possession (collectively, the "Debtors") have filed (i) the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (as it may be amended or supplemented, the "Plan") and (ii) the Disclosure Statement, pursuant to section 1125 of the Bankruptcy Code, for the Plan (the "Disclosure Statement").[2]

2. APPROVAL OF DISCLOSURE STATEMENT: On March 9, 2009, after notice and a hearing, pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Confirmation Procedures Order") (i) approving the Disclosure Statement as providing adequate information for Holders of Claims and Equity Interests to make a decision as to whether to accept or reject the Plan, (ii) approving certain procedures (the "Voting Procedures") for the Debtors to solicit and tabulate votes to accept or reject the Plan and (iii) scheduling certain dates in connection with Plan confirmation.

3. VOTING DEADLINE: Pursuant to the Confirmation Procedures Order, the Bankruptcy Court established the deadline by which votes to accept or reject the Plan must be actually received by BMC Group, Inc. (the "Voting Agent") as **May 20, 2009 at 4:00 p.m. (EDT)** (the "Voting Deadline"). Subject to the provisions for filing a Voting Motion or Disputed Classification Declaration (as described in Paragraph 10 below), to be counted, a Ballot (or Master Ballot) to accept or reject the Plan must be actually received by the Voting Agent on or before the Voting Deadline as follows:

| By U.S. Mail: | By Courier: |
|---|---|
| BMC Group, Inc. | BMC Group, Inc. |
| Attn: W.R. Grace Voting Agent | Attn: W.R. Grace Voting Agent |
| P.O. Box 2007 | 18750 Lake Drive East |
| Chanhassen, MN 55317-2007 | Chanhassen, MN 55317 |

4. CONFIRMATION HEARING: As set forth in the Bankruptcy Court's *Second Amended Case Management Order Related to the First Amended Joint Plan of Reorganization*, dated January 29, 2009 (the "CMO"), a hearing (the "Confirmation Hearing") to consider the entry of an order confirming the Plan under section 1129 of the Bankruptcy Code will take place in two phases. Phase I shall address (i) whether the Plan improperly affects the rights of the Debtors' insurers (in their capacity as insurers, but not creditors); (ii) the standing of the Debtors' insurers (in their capacity as insurers, but not creditors) to litigate confirmation objections that do not involve insurance issues covered by item (i); and (iii) the confirmation objections raised on behalf of and specific to lenders under the Pre-Petition Credit Facilities and other Class 9 creditors with respect to impairment. Phase II shall address the objections of (i) parties classified under the Plan as Holders of Indirect PI or PD Trust Claims (including insurers as Holders of Indirect PI or PD Trust Claims with respect to such Claims); (ii) the objections of the Libby Claimants and (iii) any other confirmation objections not addressed and resolved in Phase I. Each Phase of the Confirmation Hearing shall take place before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. Phase I of the Confirmation Hearing shall take place **on June 22-25, 2009 commencing at 9:00 a.m. (EDT)** and Phase II of the Confirmation Hearing shall take place on **September 8-11, 2009 commencing at 9:00 a.m. (EDT)**, except that the **September 8, 2009 hearing shall commence at 11:00 a.m (EDT).**

5. INJUNCTIONS: **The Plan proposes injunctions under sections 524(g) and 105 of the Bankruptcy Code, applicable to all persons and entities, that result in the permanent channeling of (i) all Asbestos PI Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to an Asbestos PI Trust, (ii) all Asbestos PD Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to an Asbestos PD Trust and (iii) all CDN ZAI PD Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to the CDN ZAI PD Claims Fund, all as more specifically described in the Plan. The Plan also proposes an injunction applicable to all persons and entities that enjoins all Successor Claims against the Asbestos Protected Parties based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction, as more specifically described in the Plan. These injunctions enjoin all persons and entities from bringing claims covered by the particular injunctions against the Debtors and the other identified parties in the Plan. You should read the Plan and the Disclosure Statement for a more complete discussion of how such injunctions will operate and affect your rights.**

6. SPECIFIC RELEASES BY HOLDERS OF CLAIMS OR EQUITY INTERESTS: **As more fully provided for in Section 8.8.7 of the Plan, each Holder of a Claim or Equity Interest who votes in favor of the Plan shall be deemed to have unconditionally released the Asbestos Protected Parties, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee, the Asbestos PI FCR and the Asbestos PD FCR, and each party's Representatives, as of the Effective Date, from any and all Claims, SA Claims, SA Damages, obligations, rights, suits, damages, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, their operations on or before the Effective Date, their respective property, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments, or other documents. In addition to the foregoing, each Holder of a Claim or Equity Interest who receives or retains any property under this Plan shall also be deemed to unconditionally release the Fresenius Indemnified Parties to the same extent as the release in the preceding sentence.**

7. EXECUTORY CONTRACTS: The Plan constitutes a motion to assume certain executory contracts and unexpired leases as of the Effective Date and provides for the rejection of certain other executory contracts and unexpired leases as of the Effective Date. Section 9.1 of the Plan sets forth (i) the treatment of executory contracts and unexpired leases under the Plan, (ii) the procedures relating to assumption of executory contracts and unexpired leases under the Plan, including procedures and deadlines for counterparties to assert or object to any cure amount that may be owing in relation to the assumption of an executory contract or unexpired lease, and (iii) the procedures for filing proofs of claim arising from any contract that will be rejected under the Plan. Counterparties to executory contracts or unexpired leases should receive separate notice of these procedures and may obtain a copy of that notice as described in Paragraph 9 below.

8. POST-PETITION INTEREST: Section 3.1.9(b) of the Plan provides for the payment of post-petition interest to Holders of General Unsecured Claims and provides procedures for such Holders to (i) assert an entitlement to post-petition interest in a different amount than provided for in the Plan (a "Post-Petition Interest Determination Notice") or (ii) identify a non-default contract rate of interest to which the Holder is entitled under the Plan (a "Notice of Non-Default Contract Rate of Interest"). A Post-Petition Interest Determination Notice must comply with the requirements of Section 3.1.9(d) of the Plan and be filed with the Bankruptcy Court **on or before the Voting Deadline of May 20, 2009.** A Notice of Non-Default Contract Rate of Interest must comply with the requirements of Section 3.1.9(e) of the Plan and be received by the Voting Agent (at the address listed in Paragraph 9) **on or before the Voting Deadline of May 20, 2009.** Holders of General Unsecured Claims should receive separate notice of these procedures and obtain a copy of that notice as described in Paragraph 9 below.

9. SOLICITATION PACKAGES: In accordance with the Confirmation Procedures Order, certain materials (the "Solicitation Package"), including a copy of the Disclosure Statement, Plan and Voting Procedures, are being provided with this Notice to Holders of Claims and Equity Interests in impaired classes under the Plan and to Holders of Claims in Classes 7A and 9 under the Plan.[3] In addition, the Confirmation Procedures Order authorizes the Debtors to distribute (i) a notice to counterparties to executory contracts and unexpired leases describing the treatment of executory contracts and unexpired leases under the Plan, and (ii) a notice to Holders of Class 9 General Unsecured Claims regarding the Plan's procedures with respect to the payment of post-petition interest in relation to General Unsecured Claims. The Plan, Disclosure Statement, Voting Procedures and related documents and notices are also available via the Internet on the Debtors' website at www.wrgrace.com and on the Voting Agent's website at www.bmcgroup.com/wrgrace. If you did not receive a Solicitation Package, but wish to receive one, you should send a written request by U.S. Mail to BMC Group, Inc., Attn: W.R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913 or call the Voting Agent at (888) 909-0100. Creditors and Equity Interest Holders who are entitled to vote on the Plan should receive Ballots and instructions for voting in their Solicitation Package. Holders of Claims that are not entitled to vote on the Plan will not receive a Solicitation Package.

10. VOTING MOTIONS AND DISPUTED CLASSIFICATION DECLARATIONS: If a Holder of a Claim is not entitled to vote under the Voting Procedures or disagrees with the amount of its Claim for voting purposes, such Holder may file a motion with the Bankruptcy Court, pursuant to Bankruptcy Rule 3018(a) and Section 10(f)(i) of the Voting Procedures, requesting temporary allowance of such Claim in an amount which the Bankruptcy Court deems proper solely for the purpose of casting a vote to accept or reject the Plan (a "Voting Motion"). **All Voting Motions must be filed and served in accordance with the Voting Procedures on or before the Voting Deadline of May 20, 2009.** If a Holder of a Claim intends to pursue an objection to confirmation of the Plan on the grounds that such Holder's Claim is not properly classified, such Holder may request a Ballot from the Voting Agent for provisional voting under a different Class and may vote to accept or reject the Plan by filing with the Bankruptcy Court a Disputed Classification Declaration **on or before the Voting Deadline of May 20, 2009** pursuant to Section 10(f)(ii) of the Voting Procedures. The Voting Procedures may be obtained from the Voting Agent as described in Paragraph 9 above.

11. OBJECTION DEADLINE: Responses and objections, if any, to the confirmation of the Plan or any relief sought by the Debtors in connection with confirmation of the Plan, must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection to the Plan and, if practicable, proposed modification to the Plan that would resolve such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received **by May 20, 2009 at 4:00 p.m. (EDT)** on (a) counsel to the Debtors, (b) counsel to each of the statutory committees appointed in these chapter 11 cases, (c) counsel to each of the future claimants' representatives appointed in these chapter 11 cases, (d) counsel to Sealed Air Corporation and Cryovac, Inc., (e) counsel to Fresenius, and (f) the United States Trustee, whose addresses are set forth in Section 11.12 of the Plan, except for the United States Trustee, who shall be served at: Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, Delaware 19801.

**ANY OBJECTION TO THE CONFIRMATION OF THE PLAN THAT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN SHALL NOT BE CONSIDERED.**

12. The Confirmation Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by an announcement in the Bankruptcy Court of such adjournment at the Confirmation Hearing or any continued hearing.

Dated: March 9, 2009

KIRKLAND & ELLIS LLP, David M. Bernick, P.C., Theodore L. Freedman, Deanna D. Boll, Craig A. Bruens, 153 East 53rd Street, New York, NY 10022, Tel: (212) 446-4800

THE LAW OFFICES OF JANET S. BAER, P.C., Janet S. Baer, P.C., 70 W. Madison St., Ste 2100, Chicago, IL 60602, Tel: (312) 641-2162

PACHULSKI STANG ZIEHL & JONES LLP, Laura Davis Jones, James E. O'Neill, Timothy P. Cairns, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705, Tel: (302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation., W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

[3] Contents of the Solicitation Package are described in the Voting Procedures.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| NetEffect, Inc.,[1] | ) | Case No. 08-12008 (KJC) |
| Debtor. | ) | |

**NOTICE OF: (I) ENTRY OF ORDER APPROVING DISCLOSURE STATEMENT; (II) HEARING TO CONFIRM PLAN OF REORGANIZATION; AND (III) RELATED IMPORTANT DATES**

**PLEASE TAKE NOTICE THAT:**

1. By order dated March 10, 2009 (the "Disclosure Statement Order"), the United States Bankruptcy Court for the District of Delaware (the "Court") approved the *Disclosure Statement for Plan of Liquidation of NetEffect, Inc., Under Chapter 11 of the Bankruptcy Code* (as such may be amended, the "Disclosure Statement"), with respect to the *Plan of Liquidation of NetEffect, Inc. Under Chapter 11 of the Bankruptcy Code* (as such may be amended, the "Plan"), as providing adequate information for holders of claims against and interests in the Debtor, to make a decision as to whether to accept or reject the Plan.[2]

2. In addition to establishing the above-noted deadlines, the Disclosure Statement Order also approved certain voting procedures to be used in connection with the Plan (the "Voting Procedures"). Creditors and equity security interest holders should review the Voting Procedures carefully. The deadline by which votes to accept or reject the Plan must be ***actually received*** by Epiq Bankruptcy Solutions, LLC (the "Notice and Balloting Agent") is **4:00 p.m. (Prevailing Eastern Time) on April 27, 2009** (the "Voting Deadline").

3. The deadline by which objections to the confirmation of the Plan must be filed with the Court is **4:00 p.m. (Prevailing Eastern Time) on April 27, 2009** (the "Objection Deadline"). Objections not timely filed and received in the manner set forth herein shall not be considered by the Court. Objections to the confirmation of, or proposed modifications to, the Plan, if any, must (i) be in writing, (ii) state the name and address of the objecting party and the nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection or proposed modification, and (iv) be filed, together with proof of service, with the Court and served so that they are ***actually received*** no later than the Objection Deadline by all of the following parties: (i) counsel to the Debtor, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Laura Davis Jones, Esq. and Joshua M. Fried; and (ii) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801.

4. A hearing (the "Confirmation Hearing") to consider the confirmation of the Plan will be held on **May 12, 2009 at 1:00 p.m. (Prevailing Eastern Time)**, before the Honorable Kevin Carey, United States Bankruptcy Judge for the District of Delaware, at the United States Bankruptcy Court located at 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, DE 19801. The Confirmation Hearing may be continued from time to time without further notice other than the announcement by the Debtor of the adjourned date(s) at the Confirmation Hearing or any continued hearing. The Plan may be modified, if necessary, pursuant to 11 U.S.C. § 1127 prior to, during, or as a result of the Confirmation Hearing, without further notice to interested parties other than by filing such modifications with the Court prior to the Confirmation Hearing or announcing any such modifications at the Confirmation Hearing.

5. If you would like to obtain a copy of the Plan, Disclosure Statement or notice of the hearing to consider confirmation of the Plan and the procedures relating thereto, contact the Notice and Balloting Agent at the address listed in paragraph 6 below.

6. For any vote to accept or reject the Plan to be counted, a Ballot must be ***actually received*** by the Notice and Balloting Agent by the Voting Deadline. In accordance with the Voting Procedures, all Ballots are to be returned by standard mail (including U.S. Express Mail) to: NetEffect, Inc., Ballot Processing; c/o Epiq Bankruptcy Solutions, LLC; FDR Station, P.O. Box 5014; New York, NY 10150-5014. Ballots may also be returned by overnight courier or hand delivery to: NetEffect, Inc., Ballot Processing; c/o Epiq Bankruptcy Solutions, LLC; 757 Third Avenue, 3rd Floor; New York, NY 10017. Any party in interest wishing to obtain (i) information about the Voting Procedures, or (ii) copies of the Disclosure Statement, the Plan, or the Voting Procedures Order may also contact the Notice and Balloting Agent at (646) 282-2500.

7. All documents that are filed with the Court may be reviewed during regular business hours (8:00 a.m. to 4:00 p.m. weekdays, except legal holidays) at the United States Bankruptcy Court for the District of Delaware, Marine Midland Plaza, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.

/s/ Laura Davis Jones, Laura Davis Jones (2436), Joshua M. Fried (CA Bar No. 181541), Curtis A. Hehn (Bar No. 4264), PACHULSKI STANG ZIEHL & JONES LLP, 919 Market Street, 17th Floor, Wilmington, DE 19801, Telephone: (302) 652-4100, Facsimile: (302) 652-4400, Counsel for Debtor and Debtor In Possession.

[1] Debtor's EIN: XX-XXX8071; Debtor's former address: 9211 Waterford Centre Blvd, Austin, TX 78758.

[2] Capitalized terms used herein, but not otherwise defined herein, shall have the meanings ascribed to such terms in the Plan, Disclosure Statement, and/or Disclosure Statement Order.

For more information on how to place your advertisement in Legal Monday, contact a sales representative at:

1-800-872-3433

Toll-free in the U.S. only

# EXHIBIT D

LexisNexis®

April 2, 2009

Mr. Adam Levin
Miller Legal Services, *a division of Miller Advertising Agency, Inc.*
2442 N. Lincoln Ave., 2nd Floor
Chicago, IL 60614

Dear Mr. Levin:

This letter is to certify that Miller Advertising placed a half page legal notice upon the behalf of W.R. Grace. The notice was inserted in:

- Mealey's Litigation Report: Asbestos, April 1 issue (Volume 24, Issue # 5)

If you have any questions or require further information or assistance, please feel free to contact me directly at 610-205-1906 or by email at michele.rogers@lexisnexis.com.

Sincerely,

Michele D. Rogers

Michele D. Rogers

**Injury:** Mesothelioma

**Defense:** The defendants argued that the mesothelioma was caused by exposure to other insulation materials found throughout the facility, not their products, and that Skelly's employers failed to protect their employees from the danger.

**Plaintiff experts:** Arnold Brody, Ph.D., radiologist, Oakland, Calif.; Edwin Holstein, M.D., occupational medicine, Boston

**Defense experts:** Paul Carlson, industrial hygienist, C.I.H., Portland, Ore.; Donna Ringo, industrial hygienist, Louisville, Ky.; James Crapo, M.D., pulmonologist, National Jewish Hospital, Denver; Samuel Hammar, M.D., pathologist, Bremerton, Wash.

**Other:** Only Flowserve Corp. and Scapa Dryer Fabrics Inc. remained at trial. After a 14-day trial, the jury deliberated for more than four hours before returning its verdict. The jury found design defect in products from nonparty defendants Johns-Manville Corp. and Owens Corning Fiberglass. The jury also found that their defective products directly harmed Gordon Skelly and that they failed to warn him of the dangers. The jury found Blandin Paper negligent and that the negligence was a direct cause of Skelly's injuries. The jury apportioned 70 percent liability to Blandin Paper, 20 percent liability to Johns-Manville Corp. and 10 percent to Owens Corning Fiberglass. Under Minnesota law, the jury had to answer the question of damages, even though neither of the defendants left at trial were found liable.

**Plaintiff attorneys:** Waters & Kraus, Dallas; Jekel & Doolittle, Mount Pleasant, S.C.

**Defense attorneys:** For Flowserve — Stephen J. Foley and Christopher Goodman, Foley & Mansfield, Minneapolis; Erich Gleber, Segal McCambridge Singer & Mahoney, New York. For Scapa — Lane Young and Elizabeth O'Neill, Hawkins & Parnell, Atlanta; Jamie L. Habeck, Foley & Mansfield, Minneapolis

**Key related documents: Verdict sheet in Section A.** Document #01-090401-107V. ■

Legal Notice Legal Notice

**Notice of Voting Rights and Hearing to Consider Approval of First Amended Joint Plan of Reorganization for W. R. Grace & Co. and its Related Debtors**

A First Amended Joint Plan ("Plan") to reorganize W. R. Grace & Co. and its related Debtors ("Grace") has been filed in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). Persons or entities with claims against or interests in Grace, including persons with Asbestos Personal Injury ("PI"), Asbestos Property Damage ("PD") or Zonolite Attic Insulation ("ZAI") claims against Grace, may be entitled to vote to accept or reject the Plan. A list of the Debtors may be found at www.bmcgroup.com/wrgrace.

A detailed document describing the Plan, called the "Disclosure Statement," was approved by the Bankruptcy Court on March 9, 2009. The Disclosure Statement, a copy of the Plan itself, and voting materials called a "Solicitation Package" are being mailed to known persons or entities entitled to vote to accept or reject the Plan or to their lawyers.

**What Does the Plan Say?**

The Plan proposes injunctions and third-party releases under the Bankruptcy Code resulting in the permanent channeling of PI, PD and ZAI Claims into various Trusts and Funds. This means that Grace and other "Asbestos Protected Parties" will no longer be liable for PI, PD and ZAI Claims because these claims will now be paid by the Trusts or Funds. The Plan also proposes an injunction that enjoins all "Successor Claims" against the Asbestos Protected Parties, as more specifically described in the Plan. You should read the Plan and Disclosure Statement for a more complete discussion of how these releases and injunctions will operate and affect your rights.

**How Do I Know If I Am Eligible to Vote?**

The Bankruptcy Court has approved certain "Voting Procedures" describing who can vote on the Plan and how to vote. You may obtain a copy of the Voting Procedures by writing or calling the Voting Agent at the address or number below. The Disclosure Statement contains information that will help you decide how to vote on the Plan if you are entitled to do so. **Your legal rights may be affected if you do not vote on the Plan.** If you are not entitled to vote or you disagree with the amount or classification of your claim for voting purposes, you may file a motion or a declaration with the Bankruptcy Court on or before the Voting Deadline as described in the Voting Procedures.

**Votes Must Be Received By May 20, 2009 ("Voting Deadline")**

**Can I Respond or Object to the Plan?**

The Bankruptcy Court has ordered that responses and objections to the Plan must:

- Be in writing;
- State the name and address of the objecting party and the amount and nature of the claim or interest of such party;
- Explicitly state the basis and nature of any objection to the Plan and any proposed modification to the Plan that would resolve such objection;
- Conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and
- Be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by **May 20, 2009 at 4:00 PM EDT.**

Objections must be served on certain parties whose addresses are set forth in Section 11.12 of the Plan. In addition, objections must be served on the Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, DE 19801. **Any objection that is not filed and served as described above shall not be considered.**

**How Will the Plan Be Approved?**

A Confirmation Hearing will be held before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. As established by a Case Management Order dated January 29, 2009, the Confirmation Hearing will be held in two phases. Phase I of the Confirmation Hearing shall take place from **June 22-25, 2009** and Phase II shall take place from **September 8-11, 2009.** The Confirmation Hearing may be adjourned from time to time by an announcement at the Confirmation Hearing or any continued hearing.

**To obtain the Plan, Disclosure Statement, Voting Procedures, and/or a Ballot**
**Visit: www.bmcgroup.com/wrgrace**
**Write: BMC Group, Inc., Attn: W. R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913**
**Call: (888) 909-0100**

# EXHIBIT E

**Andrews Publications**
175 Strafford Avenue
Suite 140
Wayne, PA 19087
west.thomson.com
Phone: 1-877-595-0449
Fax: 1-800-220-1640

THOMSON WEST

April 28, 2009

Adam Levin
Miller Legal Services, a division of Miller Advertising Agency, Inc.
2442 N. Lincoln Avenue, 2nd floor
Chicago, IL 60614

Mr. Levin:

This letter is to certify that Miller Advertising placed a legal ad notice in the Andrews' Asbestos Litigation Reporter on behalf of client W.R. Grace.

Andrews Asbestos Litigation Reporter
April 3, 2009
Volume 31, Issue 12

Thank you.

Kathleen M. Regan

Kathleen M. Regan
Manager, Marketing and Conferences
Andrews Publications, a Thomson Reuters business

from suit under Louisiana's Workers Compensation Law, La. Rev. Stat. Ann. § 23:1032.

Kenneth Shepherd was a senior petroleum inspector at SGS. He sued the company and Exxon Mobil Corp., alleging he was doused with toxic chemicals after attempting to inspect a barge on Exxon's premises.

Shepherd said SGS knew a chemical release occurred in the rigging equipment that likely contained benzene but nevertheless ordered him to "wade in the water" knowing he would be exposed to the chemical.

As a result of his exposure, Shepherd claims lost wages, impairment of earning capacity, mental anguish and serious personal injuries.

SGS moved for summary judgment, arguing that Shepherd's lawsuit was barred since worker's compensation is his sole avenue of compensation.

Judge Brady agreed.

The judge said Section 23:1032 provides that unless an employee's injury resulted from an intentional tort, workers' compensation is a worker's exclusive remedy for injuries incurred in the normal scope of employment.

Citing the Louisiana Supreme Court's ruling in *Reeves v. Structural Preservation System*, 731 So. 2d 208 (La. 1999), Judge Brady said, "employees are not liable under the intentional-act exemption for violations of safety standards or for failing to provide safety equipment ... believing that someone may, or even probably will, eventually get hurt if the workplace practices continue does not rise to the level of an intentional tort."

The judge said Shepherd failed to prove that the incident was intentional.

Even if SGS knew of the dangers associated with benzene exposure without the use of safety equipment, the lack of evidence that the company consciously desired the result of any chemical exposure means state law limits Shepherd to recovery against SGS in workers' compensation, the judge held.

He did not reach the claims against Exxon Mobil, saying the record did not establish what relationship Shepherd had with the company.

**To retrieve the opinion (2009 WL 667180), visit westlaw.com.**

Legal Notice Legal Notice

## Notice of Voting Rights and Hearing to Consider Approval of First Amended Joint Plan of Reorganization for W. R. Grace & Co. and its Related Debtors

A First Amended Joint Plan ("Plan") to reorganize W. R. Grace & Co. and its related Debtors ("Grace") has been filed in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). Persons or entities with claims against or interests in Grace, including persons with Asbestos Personal Injury ("PI"), Asbestos Property Damage ("PD") or Zonolite Attic Insulation ("ZAI") claims against Grace, may be entitled to vote to accept or reject the Plan. A list of the Debtors may be found at www.bmcgroup.com/wrgrace.

A detailed document describing the Plan, called the "Disclosure Statement," was approved by the Bankruptcy Court on March 9, 2009. The Disclosure Statement, a copy of the Plan itself, and voting materials called a "Solicitation Package" are being mailed to known persons or entities entitled to vote to accept or reject the Plan or to their lawyers.

**What Does the Plan Say?**

The Plan proposes injunctions and third-party releases under the Bankruptcy Code resulting in the permanent channeling of PI, PD and ZAI Claims into various Trusts and Funds. This means that Grace and other "Asbestos Protected Parties" will no longer be liable for PI, PD and ZAI Claims because these claims will now be paid by the Trusts or Funds. The Plan also proposes an injunction that enjoins all "Successor Claims" against the Asbestos Protected Parties, as more specifically described in the Plan. You should read the Plan and Disclosure Statement for a more complete discussion of how these releases and injunctions will operate and affect your rights.

**How Do I Know If I Am Eligible to Vote?**

The Bankruptcy Court has approved certain "Voting Procedures" describing who can vote on the Plan and how to vote. You may obtain a copy of the Voting Procedures by writing or calling the Voting Agent at the address or number below. The Disclosure Statement contains information that will help you decide how to vote on the Plan if you are entitled to do so. **Your legal rights may be affected if you do not vote on the Plan.** If you are not entitled to vote or you disagree with the amount or classification of your claim for voting purposes, you may file a motion or a declaration with the Bankruptcy Court on or before the Voting Deadline as described in the Voting Procedures.

**Votes Must Be Received By May 20, 2009 ("Voting Deadline")**

**Can I Respond or Object to the Plan?**

The Bankruptcy Court has ordered that responses and objections to the Plan must:

- Be in writing;
- State the name and address of the objecting party and the amount and nature of the claim or interest of such party;
- Explicitly state the basis and nature of any objection to the Plan and any proposed modification to the Plan that would resolve such objection;
- Conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and
- Be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by **May 20, 2009 at 4:00 PM EDT.**

Objections must be served on certain parties whose addresses are set forth in Section 11.12 of the Plan. In addition, objections must be served on the Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, DE 19801. **Any objection that is not filed and served as described above shall not be considered.**

**How Will the Plan Be Approved?**

A Confirmation Hearing will be held before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. As established by a Case Management Order dated January 29, 2009, the Confirmation Hearing will be held in two phases. Phase I of the Confirmation Hearing shall take place from **June 22-25, 2009** and Phase II shall take place from **September 8-11, 2009.** The Confirmation Hearing may be adjourned from time to time by an announcement at the Confirmation Hearing or any continued hearing.

**To obtain the Plan, Disclosure Statement, Voting Procedures, and/or a Ballot**
**Visit: www.bmcgroup.com/wrgrace**
**Write: BMC Group, Inc., Attn: W. R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913**
**Call: (888) 909-0100**

© 2009 Thomson Reuters. For reproduction information call the Copyright Clearance Center at (978)750-8400 or visit www.copyright.com.

# EXHIBIT F

PARADE

PUBLICATIONS

GEORGE PAPADOPOULOS
*Distribution Manager*

# CIRCULATION AFFIDAVIT

**Adam B. Levin**
Miller Legal Services
*a division of Miller Advertising Agency, Inc.*
2442 N. Lincoln Ave., 2nd Floor
Chicago, IL 60614
Phone: 773.388.3393
Fax: 773.871.2365
alevin@milleraa.com

I, George Papadopoulos, being Distribution Manager of Parade Publications, hereby certify as follows:

Parade ran the W. R. Grace & Co legal notice in the April 12, 2009 issue with an ad circulation of 33,016,886.

Sincerely, [signature]

Subscribed and sworn before me this 15th day of April 2009

[signature]
MARIA C. BETITA
Notary Public, State of New York
No. 4983578
Qualified in Queens County
Commission Expires July 1, 2013

Legal Notice

Legal Notice

## Notice of Voting Rights and Hearing to Consider Approval of First Amended Joint Plan of Reorganization for W. R. Grace & Co. and its Related Debtors

A First Amended Joint Plan ("Plan") to reorganize W. R. Grace & Co. and its related Debtors ("Grace") has been filed in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). Persons or entities with claims against or interests in Grace, including persons with Asbestos Personal Injury ("PI"), Asbestos Property Damage ("PD") or Zonolite Attic Insulation ("ZAI") claims against Grace, may be entitled to vote to accept or reject the Plan. A list of the Debtors may be found at www.bmcgroup.com/wrgrace.

A detailed document describing the Plan, called the "Disclosure Statement," was approved by the Bankruptcy Court on March 9, 2009. The Disclosure Statement, a copy of the Plan itself, and voting materials called a "Solicitation Package" are being mailed to known persons or entities entitled to vote to accept or reject the Plan or to their lawyers.

### What Does the Plan Say?

The Plan proposes injunctions and third-party releases under the Bankruptcy Code resulting in the permanent channeling of PI, PD and ZAI Claims into various Trusts and Funds. This means that Grace and other "Asbestos Protected Parties" will no longer be liable for PI, PD and ZAI Claims because these claims will now be paid by the Trusts or Funds. The Plan also proposes an injunction that enjoins all "Successor Claims" against the Asbestos Protected Parties, as more specifically described in the Plan. You should read the Plan and Disclosure Statement for a more complete discussion of how these releases and injunctions will operate and affect your rights.

### How Do I Know If I Am Eligible to Vote?

The Bankruptcy Court has approved certain "Voting Procedures" describing who can vote on the Plan and how to vote. You may obtain a copy of the Voting Procedures by writing or calling the Voting Agent at the address or number below. The Disclosure Statement contains information that will help you decide how to vote on the Plan if you are entitled to do so. **Your legal rights may be affected if you do not vote on the Plan.** If you are not entitled to vote or you disagree with the amount or classification of your claim for voting purposes, you may file a motion or a declaration with the Bankruptcy Court on or before the Voting Deadline as described in the Voting Procedures.

**Votes Must Be Received By May 20, 2009 ("Voting Deadline")**

### Can I Respond or Object to the Plan?

The Bankruptcy Court has ordered that responses and objections to the Plan must:

- Be in writing;
- State the name and address of the objecting party and the amount and nature of the claim or interest of such party;
- Explicitly state the basis and nature of any objection to the Plan and any proposed modification to the Plan that would resolve such objection;
- Conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and
- Be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by **May 20, 2009 at 4:00 PM EDT**.

Objections must be served on certain parties whose addresses are set forth in Section 11.12 of the Plan. In addition, objections must be served on the Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, DE 19801. **Any objection that is not filed and served as described above shall not be considered.**

### How Will the Plan Be Approved?

A Confirmation Hearing will be held before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. As established by a Case Management Order dated January 29, 2009, the Confirmation Hearing will be held in two phases. Phase I of the Confirmation Hearing shall take place from **June 22-25, 2009** and Phase II shall take place from **September 8-11, 2009.** The Confirmation Hearing may be adjourned from time to time by an announcement at the Confirmation Hearing or any continued hearing.

**To obtain the Plan, Disclosure Statement, Voting Procedures, and/or a Ballot**

**Visit: www.bmcgroup.com/wrgrace**

**Write: BMC Group, Inc., Attn: W. R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913**

**Call: (888) 909-0100**

# Why I Like My Job...

## In the Auto Industry



Alex Hatt, 40
Auto technician
Edmonds, Wash.
$48,000

**"More people opt to fix their cars these days instead of buying new ones. I've always liked finding out what makes things tick."**

At the end of 2008, the U.S. auto industry employed more than 2.2 million workers at an average salary of $29,437. Only 9% work in assembly; 27% manufacture car parts and 50% work in new-car dealerships.

## As an Entrepreneur



Tim Daniel, 33
Business owner
Carlsbad, Calif.
$100,000

**"My job can be stressful, but it's exciting, too. I'm willing to trade some financial security for the freedom to be creative and call all the shots."**

Small business generated up to 80% of new job growth in the U.S. over the last decade. Recently, some people who've been laid off are starting their own companies. More than 16 million Americans already work for themselves.



William Bailey, 55
Federal investigator
Fort Washington, Md.
$111,100



Ken Lewis, 62
CEO, Bank of America
Charlotte, N.C.
$10 million



Cindy
Actre
Miam
$200



David Borst, 66
Gambling counselor
Syracuse, N.Y.
$30,000



Karen Carter, 41
Insurance agent
Oklahoma City, Okla.
$27,000

Nancy
Feder
McDo
$147,



Linda Tillman, 53
School principal
Wichita, Kan.
$102,800



Tiger Woods, 33
Pro golfer
Orlando, Fla.
$110 million



Bret C
Golf-c
Kirklan
$72,00



Gloria Gomez, 53
Courtroom clerk
Waterford, Calif.
$47,600



Janice O'Connell, 57
Finance director
Weare, N.H.
$76,000



John C
Highwa
Custer,
$43,500



David Chmielewski, 62
School bus driver
Land O'Lakes, Fla.
$18,700

Ricky McAfee, 46
Paint blender
Milwaukee, Wis.
$34,600



Carolyn
Superm
Los An
$4.5 mi

# EXHIBIT G




7950 Jones Branch Drive • Floor 2 • McLean, Virginia 22107

**Affidavit of Publication**

USA Weekend
7950 Jones Branch Drive
McLean, VA 22107
703-854-6503

I, Brian C. Jones, Senior Manager/Advertising Operations for the Publisher of USA WEEKEND magazine, hereby certify that the ad creative for Miller Advertising ran as instructed nationally in the April 12, 2009 edition of USA WEEKEND magazine.

Given under my hand this 16 day of April, 2009

Signature: Brian C. Jones

Sworn to and subscribed before me this ____ day of ________, 2009

*(provide name of notary public here, place of work, state, and county)*

*Barbara Callow*
*Gannett Co., Inc.*
*7950 Jones Branch Drive*
*McLean, VA 22102*

Signature of Notary Public: Barbara J. Callow

My Commission Expires: 9/30/2011

Seal:

BARBARA J. CALLOW
NOTARY PUBLIC
REG # 135352
MY COMMISSION EXPIRES 09/30/2011
COMMONWEALTH OF VIRGINIA

Legal Notice Legal Notice

# Notice of Voting Rights and Hearing to Consider Approval of First Amended Joint Plan of Reorganization for W. R. Grace & Co. and its Related Debtors

A First Amended Joint Plan ("Plan") to reorganize W. R. Grace & Co. and its related Debtors ("Grace") has been filed in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). Persons or entities with claims against or interests in Grace, including persons with Asbestos Personal Injury ("PI"), Asbestos Property Damage ("PD") or Zonolite Attic Insulation ("ZAI") claims against Grace, may be entitled to vote to accept or reject the Plan. A list of the Debtors may be found at www.bmcgroup.com/wrgrace.

A detailed document describing the Plan, called the "Disclosure Statement," was approved by the Bankruptcy Court on March 9, 2009. The Disclosure Statement, a copy of the Plan itself, and voting materials called a "Solicitation Package" are being mailed to known persons or entities entitled to vote to accept or reject the Plan or to their lawyers.

**What Does the Plan Say?**

The Plan proposes injunctions and third-party releases under the Bankruptcy Code resulting in the permanent channeling of PI, PD and ZAI Claims into various Trusts and Funds. This means that Grace and other "Asbestos Protected Parties" will no longer be liable for PI, PD and ZAI Claims because these claims will now be paid by the Trusts or Funds. The Plan also proposes an injunction that enjoins all "Successor Claims" against the Asbestos Protected Parties, as more specifically described in the Plan. You should read the Plan and Disclosure Statement for a more complete discussion of how these releases and injunctions will operate and affect your rights.

**How Do I Know If I Am Eligible to Vote?**

The Bankruptcy Court has approved certain "Voting Procedures" describing who can vote on the Plan and how to vote. You may obtain a copy of the Voting Procedures by writing or calling the Voting Agent at the address or number below. The Disclosure Statement contains information that will help you decide how to vote on the Plan if you are entitled to do so. **Your legal rights may be affected if you do not vote on the Plan.** If you are not entitled to vote or you disagree with the amount or classification of your claim for voting purposes, you may file a motion or a declaration with the Bankruptcy Court on or before the Voting Deadline as described in the Voting Procedures.

**Votes Must Be Received By May 20, 2009 ("Voting Deadline")**

**Can I Respond or Object to the Plan?**

The Bankruptcy Court has ordered that responses and objections to the Plan must:

- Be in writing;
- State the name and address of the objecting party and the amount and nature of the claim or interest of such party;
- Explicitly state the basis and nature of any objection to the Plan and any proposed modification to the Plan that would resolve such objection;
- Conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and
- Be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by **May 20, 2009 at 4:00 PM EDT**.

Objections must be served on certain parties whose addresses are set forth in Section 11.12 of the Plan. In addition, objections must be served on the Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, DE 19801. **Any objection that is not filed and served as described above shall not be considered.**

**How Will the Plan Be Approved?**

A Confirmation Hearing will be held before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. As established by a Case Management Order dated January 29, 2009, the Confirmation Hearing will be held in two phases. Phase I of the Confirmation Hearing shall take place from **June 22-25, 2009** and Phase II shall take place from **September 8-11, 2009**. The Confirmation Hearing may be adjourned from time to time by an announcement at the Confirmation Hearing or any continued hearing.

**To obtain the Plan, Disclosure Statement, Voting Procedures, and/or a Ballot**
**Visit: www.bmcgroup.com/wrgrace.**
**Write: BMC Group, Inc., Attn: W. R. Grace Voting Agent,**
**P.O. Box 913, El Segundo, CA 90245-0913**
**Call: (888) 909-0100**

JUST MINUTES A DAY AND FOOT PAIN GOES AWAY!

The Secret To Healthier Feet




This yoga inspired exercise device helps to realign bones, stretch Achilles tendons, relieve pain and stress caused by hammer toes and bunions while increasing flexibility & circulation. Wear them for just 10 minutes a day while in the tub, reading or watching TV and feel the relief begin. Set of 2 made of comfortable stretch foam, one size fits all.

Satisfaction Guaranteed or Return For Your Money Back

www.DreamProductsCatalog.com (Web Offers May Vary)

**1. Internet** (24 hrs - 7 days a week)
www.DreamProductsCatalog.com, (Refer To Dept. 61049)

**2. Phone** (24 hrs - 7 days a week)
1-800-528-0197, (Refer To Dept. 61049)

**3. Mail** On a separate piece of paper, provide us with your:
A. Name, Address, City, State, Zip & Phone number
B. If paying by credit card (we accept MasterCard®, VISA® or Discover®/NOVUS®), include the credit card number, expiration date and billing address (if different from your shipping address). You may also mail a check or money order.
C. Dept. 61049
D. Item Number #96826, Flexible Toes
E. Specify: quantity ordered. ($12.97 each set of 2)
F. California residents add 7.25% sales tax
G. Shipping: FREE
Handling: $1.00 (No matter how many you order!)
H. Total your order and mail to:
Dream Products, Inc. 412 DREAM LANE, VAN NUYS, CA 91496




## A chronic lung disease is our nation's No. 4 killer. Anc to 90% of those deaths come from one cause: smoki



By DR. TEDD MITCHELL

THERE'S AN old Scottish proverb that goes something like this: "We'll never know the worth of water till the well goes dry." Unfortunately, for millions of Americans, chronic obstructive pulmonary disease (COPD) has caused their lungs' wells to "go dry." For a doctor, few things are as difficult to watch as someone suffering from severe obstructive lung disease.

**The two main types of COPD are emphysema and chronic bronchitis.**

COPD encompasses several lung ailments; all are characterized by the obstruction of airflow. The two primary types of COPD are emphysema and chronic bronchitis. More than 11 million people have the disease, according to the American Lung Association.

As the fourth leading cause of death after heart disease, cancer and stroke, COPD is no trivial problem for our nation. Still, COPD is preventable. That's because 80% to 90% of all COPD deaths result from just one cause: smoking.

As a physician, I worry tha think we harp on them abou as though it were a chara not a health risk. That's no It's simply that cigarette s a primary contributor to so ments, including COPD, wh only after years of habitual Young smokers don't under They feel great. They feel b

In short, they they're healthy.' realize what life like without the breathe normal did, they'd ne that first cigar or cigar.

The best wa vent COPD is never to smo you're a smoker — even ready have impaired airflo can help put the brakes on decline in lung function b smoking. Talk to your doc the commitment to stop n your lungs' wells go dry.

*TEDD MITCHELL, M.D., preside and CEO of Dallas' Cooper Clin writes HealthSmart every week*

# EXHIBIT H

**Newsweek**

251 West 57th Street | New York | NY | 10019-1894

(212) 445-4848

April 9, 2009

Mr. Peter D. Egloff
Miller Legal Services
2442 North Lincoln Avenue
Chicago, IL 60614

Dear Mr. Egloff:

Enclosed is the April 13, 2009 issue of Newsweek with the W.R. Grace & Company legal notice appearing on page 54. The advertisement ran in the full circulation of 2.6 million copies.

Sincerely,

John M. Ernst
Vice President
Sales Operations

Sworn to me this 9th day April 2009

STEPHEN FUZESI JR.
Notary Public, State of New York
No. 02FU5032241
Qualified in New York County
Commission Expires August 22, 2010

Notarized Affidavit

Legal Notice Legal Notice

## Notice of Voting Rights and Hearing to Consider Approval of First Amended Joint Plan of Reorganization for W. R. Grace & Co. and its Related Debtors

A First Amended Joint Plan ("Plan") to reorganize W. R. Grace & Co. and its related Debtors ("Grace") has been filed in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). Persons or entities with claims against or interests in Grace, including persons with Asbestos Personal Injury ("PI"), Asbestos Property Damage ("PD") or Zonolite Attic Insulation ("ZAI") claims against Grace, may be entitled to vote to accept or reject the Plan. A list of the Debtors may be found at www.bmcgroup.com/wrgrace.

A detailed document describing the Plan, called the "Disclosure Statement," was approved by the Bankruptcy Court on March 9, 2009. The Disclosure Statement, a copy of the Plan itself, and voting materials called a "Solicitation Package" are being mailed to known persons or entities entitled to vote to accept or reject the Plan or to their lawyers.

**What Does the Plan Say?**

The Plan proposes injunctions and third-party releases under the Bankruptcy Code resulting in the permanent channeling of PI, PD and ZAI Claims into various Trusts and Funds. This means that Grace and other "Asbestos Protected Parties" will no longer be liable for PI, PD and ZAI Claims because these claims will now be paid by the Trusts or Funds. The Plan also proposes an injunction that enjoins all "Successor Claims" against the Asbestos Protected Parties, as more specifically described in the Plan. You should read the Plan and Disclosure Statement for a more complete discussion of how these releases and injunctions will operate and affect your rights.

**How Do I Know If I Am Eligible to Vote?**

The Bankruptcy Court has approved certain "Voting Procedures" describing who can vote on the Plan and how to vote. You may obtain a copy of the Voting Procedures by writing or calling the Voting Agent at the address or number below. The Disclosure Statement contains information that will help you decide how to vote on the Plan if you are entitled to do so. **Your legal rights may be affected if you do not vote on the Plan.** If you are not entitled to vote or you disagree with the amount or classification of your claim for voting purposes, you may file a motion or a declaration with the Bankruptcy Court on or before the Voting Deadline as described in the Voting Procedures.

**Votes Must Be Received By May 20, 2009 ("Voting Deadline")**

**Can I Respond or Object to the Plan?**

The Bankruptcy Court has ordered that responses and objections to the Plan must:

- Be in writing;
- State the name and address of the objecting party and the amount and nature of the claim or interest of such party;
- Explicitly state the basis and nature of any objection to the Plan and any proposed modification to the Plan that would resolve such objection;
- Conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and
- Be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by **May 20, 2009 at 4:00 PM EDT.**

Objections must be served on certain parties whose addresses are set forth in Section 11.12 of the Plan. In addition, objections must be served on the Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, DE 19801. **Any objection that is not filed and served as described above shall not be considered.**

**How Will the Plan Be Approved?**

A Confirmation Hearing will be held before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. As established by a Case Management Order dated January 29, 2009, the Confirmation Hearing will be held in two phases. Phase I of the Confirmation Hearing shall take place from **June 22-25, 2009** and Phase II shall take place from **September 8-11, 2009**. The Confirmation Hearing may be adjourned from time to time by an announcement at the Confirmation Hearing or any continued hearing.

**To obtain the Plan, Disclosure Statement, Voting Procedures, and/or a Ballot**
**Visit: www.bmcgroup.com/wrgrace**
**Write: BMC Group, Inc., Attn: W. R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913**
**Call: (888) 909-0100**

SOCIETY

business that is out of our hands. Japan, Mexico—all these countries are taking our jobs," he says.

Not every Amish or Mennonite breeder treats his dogs harshly: some let their dogs out of their cages to exercise and are scrupulous about vaccinations. And there are plenty of unethical breeders who aren't Amish or Mennonite—including the owners of the Tennessee farm that authorities raided in February, who have not yet been charged but could face jail sentences. Some Lancaster breeders visited by NEWSWEEK defended their practices, saying the dogs are happy in their cages. As Elmer Zimmerman's father puts it, "it's the only way to keep a lot of dogs—to keep them penned up."

The Zimmermans did particularly well selling designer dogs—Elmer favored cockapoos, a cocker spaniel-poodle mix. "They don't shed and then people's houses don't get dirty," Elmer's father says. Amish and Mennonite dog breeders on some of the eight other farms NEWSWEEK visited cited other reasons for favoring hybrids. "It's less paperwork for me—you don't have to register them," says one Lancaster County breeder, who declined to be named—but who, according to rescue officials, has kept as many as 500 dogs on his farm. No matter which breed farmers choose, the costs of these businesses are astonishingly low, critics say. "Once they set up their cages all they have to pay for is staff and vaccines," says Kathleen Summers, director of the Humane Society's Stop Puppy Mills campaign. By some accounts, there are Amish breeders earning hundreds of thousands of dollars a year.

It's a business that creates strange bedfellows. Last year animal activist Bill Smith, who runs Main Line Animal Rescue in Chester Springs, Penn., noticed that some of the farms alleged to mistreat puppies were also producing organic dairy products, the kind bought by affluent consumers who'd be horrified their milk and yogurt are being produced alongside dogs in tiny, filthy cages. Indeed, NEWSWEEK visited one farm where a sign identified it as producing Horizon Organics dairy products, which are sold by upscale retailers like Whole Foods Market and in big-box stores like Wal-Mart. That farm, B&R Puppies in Parkesburg, Penn., was recently licensed to hold up to 250 dogs a year; inspection reports from 2007 and 2008 cited conditions as "unsatisfactory" because of squalid cages, sick dogs, pests and failure to vaccinate for rabies. When NEWSWEEK informed Horizon of B&R's puppy business, the company sent a representative to investigate. Upon finding breeding dogs at the farm, Horizon suspended its dealings with the farm. In a statement, Horizon said the farmer promised to "[close] that operation and [find] appropriate and humane homes for all of the dogs." Indeed, late last week farm owner John Stoltzfus told NEWSWEEK he'd already found new homes for the dogs "so we can still send milk to Horizon."

Most of the farms NEWSWEEK visited sold hybrid dogs. According to experts, about 20 percent of the dogs raised in puppy mills are designer breeds, with puggles, Labradoodles and Yorkiepoos (Yorkshire terrier-poodle mixes) among the most popular. Breeders are often able to sell a designer dog for far more than the cost of the two breeds they mate to produce it. For instance, if a puppy mill breeds a $50 beagle with an $800 pug, the litter of puggles can sell for nearly $1,000 apiece. A farmer might keep one male pug and four female beagles. Since beagles average six puppies a litter and two litters a year, a five-dog operation like this could yield 48 puggles annually. "Where else do you get something where two ingredients that cost almost nothing give you a combination that is worth a lot?" says Caroline Coile, a canine expert who's written a book on designer dogs.

Mostly, though, breeders engage in this mix-and-match mating because consumers have been led to believe that hybrid dogs combine the best features of two breeds into one. Consider the Labradoodle, first bred in Australia in the early 1980s as guide

dogs fc came t sumers got one to app dog—p cidents France the bo "Of cou Poo becaus smart, ing a p



CROWD

a dog v negativ existed ers bel ing nev on har thing y Willian Main I The practic non fa wheth mothe predic throug proble nonall dog's l until i third o that's The v

COURTESY

# EXHIBIT I



Gary Kleinman
VP, Associate Publisher

TV Guide Magazine
11 West 42nd Street
New York, NY 10036
212-852-7304

April 16, 2009

**Adam B. Levin**
Miller Legal Services
*a division of Miller Advertising Agency, Inc.*
2442 N. Lincoln Ave., 2nd Floor
Chicago, IL 60614

Dear Mr. Levin:

Enclosed is the April 13-19, 2009 issue of ***TV Guide Magazine*** with the W. R. Grace & Company legal notice appearing on page 19. The advertisement ran in full circulation of 2.9 million copies.

Sincerely,

Gary Kleinman
VP, Associate Publisher

4/17/09

Notarized Affidavit

LELAWATTIE JODAH
Notary Public - State of New York
NO. 01JO6142178
Qualified in Queens County
My Commission Expires 3-13-2010

Lelawattie Jodah

### Danny's Glasses

*The combination of black and clear frames keeps specs like Danny Gokey's modern without looking too heavy on his face.* **Ray-Ban style RX5163, $119, LensCrafters stores**





### Adam's Jacket

*Adam Lambert's blue topper "tied in really well with his blue-streaked hair," says An. "The quality of the leather is amazing."* **Diesel Black Gold Lemblud jacket, $800, Diesel stores (available in black)**



### Kris' Shirt

*Kris Allen stays laid-back and cool in jeans, Converse sneakers and a colorful button-down.* **Ben Sherman Deep plaid shirt, $89, Ben Sherman stores**

IDOLS, CLOCKWISE FROM TOP RIGHT: MICHAEL BECKER/FOX; RAY MICKSHAW/FOX (3); F. MICELOTTA/GETTY IMAGES; MICHAEL BECKER/FOX



# Notice of Voting Rights and Hearing to Consider Approval of First Amended Joint Plan of Reorganization for W. R. Grace & Co. and its Related Debtors

A First Amended Joint Plan ("Plan") to reorganize W. R. Grace & Co. and its related Debtors ("Grace") has been filed in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). Persons or entities with claims against or interests in Grace, including persons with Asbestos Personal Injury ("PI"), Asbestos Property Damage ("PD") or Zonolite Attic Insulation ("ZAI") claims against Grace, may be entitled to vote to accept or reject the Plan. A list of the Debtors may be found at www.bmcgroup.com/wrgrace.

A detailed document describing the Plan, called the "Disclosure Statement," was approved by the Bankruptcy Court on March 9, 2009. The Disclosure Statement, a copy of the Plan itself, and voting materials called a "Solicitation Package" are being mailed to known persons or entities entitled to vote to accept or reject the Plan or to their lawyers.

**What Does the Plan Say?**

The Plan proposes injunctions and third-party releases under the Bankruptcy Code resulting in the permanent channeling of PI, PD and ZAI Claims into various Trusts and Funds. This means that Grace and other "Asbestos Protected Parties" will no longer be liable for PI, PD and ZAI Claims because these claims will now be paid by the Trusts or Funds. The Plan also proposes an injunction that enjoins all "Successor Claims" against the Asbestos Protected Parties, as more specifically described in the Plan. You should read the Plan and Disclosure Statement for a more complete discussion of how these releases and injunctions will operate and affect your rights.

**How Do I Know If I Am Eligible to Vote?**

The Bankruptcy Court has approved certain "Voting Procedures" describing who can vote on the Plan and how to vote. You may obtain a copy of the Voting Procedures by writing or calling the Voting Agent at the address or number below. The Disclosure Statement contains information that will help you decide how to vote on the Plan if you are entitled to do so. **Your legal rights may be affected if you do not vote on the Plan.** If you are not entitled to vote or you disagree with the amount or classification of your claim for voting purposes, you may file a motion or a declaration with the Bankruptcy Court on or before the Voting Deadline as described in the Voting Procedures.

**Votes Must Be Received By May 20, 2009 ("Voting Deadline")**

**Can I Respond or Object to the Plan?**

The Bankruptcy Court has ordered that responses and objections to the Plan must:

- Be in writing;
- State the name and address of the objecting party and the amount and nature of the claim or interest of such party;
- Explicitly state the basis and nature of any objection to the Plan and any proposed modification to the Plan that would resolve such objection;
- Conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and
- Be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by **May 20, 2009 at 4:00 PM EDT.**

Objections must be served on certain parties whose addresses are set forth in Section 11.12 of the Plan. In addition, objections must be served on the Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, DE 19801. **Any objection that is not filed and served as described above shall not be considered.**

**How Will the Plan Be Approved?**

A Confirmation Hearing will be held before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. As established by a Case Management Order dated January 29, 2009, the Confirmation Hearing will be held in two phases. Phase I of the Confirmation Hearing shall take place from **June 22-25, 2009** and Phase II shall take place from **September 8-11, 2009.** The Confirmation Hearing may be adjourned from time to time by an announcement at the Confirmation Hearing or any continued hearing.

**To obtain the Plan, Disclosure Statement, Voting Procedures, and/or a Ballot**
**Visit: www.bmcgroup.com/wrgrace**
**Write: BMC Group, Inc., Attn: W. R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913**
**Call: (888) 909-0100**

# EXHIBIT J



Time Inc.
A TimeWarner Company

Sports Illustrated
1271 Avenue of the Americas
33rd Floor
New York NY 10020-1300

April 16, 2009

Mr. Peter D. Egloff
Miller Legal Services
2442 North Lincoln Avenue
Chicago, IL 60614

Dear Mr. Egloff:

Enclosed is the April 20, 2009 issue of Sports Illustrated with the Kirkland & Ellis LLP legal notice appearing on page 62. The advertisement ran in SI National to a circulation of 3,150,000.

Sincerely,

Michael Safran
NY Advertising Director
1271 Avenue of the Americas
212.522.5608

Notarized Affidavit

LISA EMOVI
NOTARY PUBLIC, STATE OF NEW YORK
No. 01EM6030824
Qualified in Kings County
Commission Expires Sept. 20, 2009

Legal Notice Legal Notice

# Notice of Voting Rights and Hearing to Consider Approval of First Amended Joint Plan of Reorganization for W. R. Grace & Co. and its Related Debtors

A First Amended Joint Plan ("Plan") to reorganize W. R. Grace & Co. and its related Debtors ("Grace") has been filed in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). Persons or entities with claims against or interests in Grace, including persons with Asbestos Personal Injury ("PI"), Asbestos Property Damage ("PD") or Zonolite Attic Insulation ("ZAI") claims against Grace, may be entitled to vote to accept or reject the Plan. A list of the Debtors may be found at www.bmcgroup.com/wrgrace.

A detailed document describing the Plan, called the "Disclosure Statement," was approved by the Bankruptcy Court on March 9, 2009. The Disclosure Statement, a copy of the Plan itself, and voting materials called a "Solicitation Package" are being mailed to known persons or entities entitled to vote to accept or reject the Plan or to their lawyers.

**What Does the Plan Say?**

The Plan proposes injunctions and third-party releases under the Bankruptcy Code resulting in the permanent channeling of PI, PD and ZAI Claims into various Trusts and Funds. This means that Grace and other "Asbestos Protected Parties" will no longer be liable for PI, PD and ZAI Claims because these claims will now be paid by the Trusts or Funds. The Plan also proposes an injunction that enjoins all "Successor Claims" against the Asbestos Protected Parties, as more specifically described in the Plan. You should read the Plan and Disclosure Statement for a more complete discussion of how these releases and injunctions will operate and affect your rights.

**How Do I Know If I Am Eligible to Vote?**

The Bankruptcy Court has approved certain "Voting Procedures" describing who can vote on the Plan and how to vote. You may obtain a copy of the Voting Procedures by writing or calling the Voting Agent at the address or number below. The Disclosure Statement contains information that will help you decide how to vote on the Plan if you are entitled to do so. **Your legal rights may be affected if you do not vote on the Plan.** If you are not entitled to vote or you disagree with the amount or classification of your claim for voting purposes, you may file a motion or a declaration with the Bankruptcy Court on or before the Voting Deadline as described in the Voting Procedures.

**Votes Must Be Received By May 20, 2009 ("Voting Deadline")**

**Can I Respond or Object to the Plan?**

The Bankruptcy Court has ordered that responses and objections to the Plan must:

- Be in writing;
- State the name and address of the objecting party and the amount and nature of the claim or interest of such party;
- Explicitly state the basis and nature of any objection to the Plan and any proposed modification to the Plan that would resolve such objection;
- Conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and
- Be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by **May 20, 2009 at 4:00 PM EDT**.

Objections must be served on certain parties whose addresses are set forth in Section 11.12 of the Plan. In addition, objections must be served on the Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, DE 19801. **Any objection that is not filed and served as described above shall not be considered.**

**How Will the Plan Be Approved?**

A Confirmation Hearing will be held before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. As established by a Case Management Order dated January 29, 2009, the Confirmation Hearing will be held in two phases. Phase I of the Confirmation Hearing shall take place from **June 22-25, 2009** and Phase II shall take place from **September 8-11, 2009**. The Confirmation Hearing may be adjourned from time to time by an announcement at the Confirmation Hearing or any continued hearing.

**To obtain the Plan, Disclosure Statement, Voting Procedures, and/or a Ballot**
**Visit: www.bmcgroup.com/wrgrace**
**Write: BMC Group, Inc., Attn: W. R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913**
**Call: (888) 909-0100**

## DEADLY BASEBALLS

ballparks like Tampa's George M. Steinbrenner Field, which has signs at lower-level entrances reading, CAUTION: WATCH FOR LIVE BATS AND BALLS LEAVING THE FIELD AT ALL TIMES. But with no standard, pro baseball leaves the decision on such signage, as well as the breadth of netting in each park, to the discretion of each team.

"It's about balancing the need to protect the fans with maintaining the baseball atmosphere we traditionally enjoy," says Dan Halem, senior vice president and general counsel of labor for Major League Baseball and a member of the game's Safety and Health Advisory Committee. "Netting in the ball fields would certainly change the experience of the game." What fan, after all, doesn't like to take home a foul ball? "Fans demand seats with no netting in front," Halem says. "That's the reality."

But if professional baseball is protected from legal action because of the 145-word warning on the back of each ticket that shifts all responsibility for injury to the fan, it doesn't lessen the danger. "Somebody's going to get hurt," says Hamilton, the pitcher who beaned Conigliaro. "Somebody's going to get hit with one of those broken bats, too, before long." Indeed, since baseball's Safety and Health Advisory Committee was reconstituted in 2008, all of its time—and some $500,000—has been spent studying the increasing trend of bats splintering into dangerous flying shards. "The foul-ball issue has not been discussed," Halem says.

Veteran ballplayers, though, think about it constantly, and many insist that their loved ones sit behind protective netting. First baseman Alan Zinter, who retired in 2007 after playing nearly all of his 19-year career in the minor leagues, took it a step further; he urged complete strangers to sit behind the screen. "I've seen people get hit in the face, just crushed, blood everywhere," Zinter says. "The worst thing I saw was in Nashville: I was hitting lefthanded and I check-swinged and hit a line shot over the dugout that hit a six-year-old boy right in the temple. It was slow motion for me; I'm looking right down the barrel and thinking, *Oh, God,* and it's heading right toward this family, and the father's not even watching. The kid was looking into leftfield, so he's not watching, and *whack!* Right in the head. They carried him out of the stadium.

"I couldn't even concentrate after that. I struck out. I kept calling after the game. Kid was in the hospital, and they said he's going to be O.K. Had a concussion, stayed that night. I said, 'Give me his number,' and I ended up calling him when I made it to the big leagues [later that season]." Zinter pauses, watching the moment unreel again in his mind. "His dad ran him up the steps. . . ."

ON MARCH 4, 2007, Mike Coolbaugh and his close friend Jay Maldonado walked onto the field at Theodore Roosevelt High in San Antonio. They'd both been baseball stars there in the late 1980s, but this was no exercise in nostalgia. After 17 years in the minor leagues, Coolbaugh's playing options had seemingly dried up, but an offer had suddenly come from a professional team in Tabasco, Mexico: $10,000 just to show up and try out. Coolbaugh needed to get ready, and Maldonado had come to help; he could still roll out of bed and throw 88 mph.

Coolbaugh was one of those players who feared that his wife or children would get hit by a baseball ripped into the stands. "He was more worried about it than anybody I've ever met," says his wife, Mandy. "He was so aware of what a foul ball could do."

Maldonado and Coolbaugh set up the protective L screen in the grass in front of the pitcher's mound. Maldonado began to throw—slurves, changeups and fastballs, mixing location in and

# EXHIBIT K



trust matters

PAMELA CONRAD
Associate Account Manager

April 20, 2009

**Adam B. Levin**
Miller Legal Services
*a division of Miller Advertising Agency, Inc.*
2442 N. Lincoln Ave., 2nd Floor
Chicago, IL 60614

***W.R. Grace's Position in USNews & World Report***

Dear Mr. Levin:

Enclosed please find the April 2009 issue of ***U.S. News***. You will find **W.R. Grace & Co.'s** legal advertisement prominently featured on **page 43**, a right hand page opposite full editorial within the front of book. W.R. Grace's advertisement ran in our National Edition of 1,300,000 circulation. Thank you so much for your advertising support.

Enjoy the issue! I look forward to working with you in the future.

Sincerely,

Pamela Conrad

Pamela Conrad * Senior Account Manager
***U.S. News & World Report***
Tel: 212 916 8782
Fax: 212 916 7400

CARMEN CARABALLO
Notary Public, State of New York
No. 24-4970768
Qualified in Kings County
Commission Expires August 20, 2010

Carmen Caraballo.

450 West 33rd Street, 11th Floor • New York, NY 10001-2681
P: 212.916.8782 F: 212.916.7400
pconrad@usnews.com
http://www.usnews.com



**State College,** Pa., even has a retirement community on campus. Residents can take free courses, pick up priority football and basketball tickets, and visit an on-site ice creamery.

The healthcare industry has proved itself resilient in this economic environment. Almost half of the 30 fastest-growing occupations named by the Bureau of Labor Statistics are within health services, such as home health aides and pharmacy technicians. The nonprofit Charleston Area Medical Center in **Charleston,** W.Va., one of the state's largest hospitals, employs more than 5,000 people, including Carolyn Stevens, 68. She plans to continue to work as manager of the CAMC cytology department for at least five more years because it gives her a sense of purpose that she feels would be lost if she retired. "There is one test we perform where you can detect cancer cells before they can even be seen by the eye of a physician," says Stevens.

In **Rochester,** Minn., the Mayo Clinic employs more than 28,000 people. "You can work here forever if your body and mind are still intact," says Richard Emslander, 81, a Mayo Clinic endocrinologist who works half of the year and takes half of the year off. "I have to go through a rigorous exam every year to make sure all my mental facilities are intact, but as long as I am capable, I will keep on working."

Public-sector jobs can provide a sense of security during turbulent times. Although they tend to pay on the low side, government jobs typically offer generous health and pension benefits, which many private companies have been slashing. Darlene Hieb, 76, who officially retired in 2006, now works two days a week as an office assistant for the city government of **Bismarck,** N.D. "I was able to work up a very nice pension, which I am drawing, and I always had health benefits, vacation, and sick leave," she says. State capitals are often prime spots to land a local, state, or federal government post. Plum jobs at the North Dakota State Capitol Building Tower, constructed during the Great Depression, come with a view of a 132-acre park.

Some of the best cities to find retirement jobs support multiple industries that tend to hold up well in turbulent economies. **Huntsville,** Ala., for example, has a mix of government jobs at the Redstone Arsenal and NASA's Marshall Space Flight Center, healthcare opportunities within the Huntsville Hospital System, and positions at the University of Alabama–Huntsville. At Intuitive Research and Technology Corp., an engineering and research company based in Huntsville, approximately 20 percent of employees have retired from another job. President Harold Brewer says the company maintains a list of retirees who want to work on a part-time or temporary basis and notifies them when work is available. "The thing we like about hiring folks later on is their multidisciplinary experience that they can apply to all different kinds of problems that come up," says Brewer. ●

# Notice of Voting Rights and Hearing to Consider Approval of First Amended Joint Plan of Reorganization for W. R. Grace & Co. and its Related Debtors

A First Amended Joint Plan ("Plan") to reorganize W. R. Grace & Co. and its related Debtors ("Grace") has been filed in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). Persons or entities with claims against or interests in Grace, including persons with Asbestos Personal Injury ("PI"), Asbestos Property Damage ("PD") or Zonolite Attic Insulation ("ZAI") claims against Grace, may be entitled to vote to accept or reject the Plan. A list of the Debtors may be found at www.bmcgroup.com/wrgrace.

A detailed document describing the Plan, called the "Disclosure Statement," was approved by the Bankruptcy Court on March 9, 2009. The Disclosure Statement, a copy of the Plan itself, and voting materials called a "Solicitation Package" are being mailed to known persons or entities entitled to vote to accept or reject the Plan or to their lawyers.

**What Does the Plan Say?**

The Plan proposes injunctions and third-party releases under the Bankruptcy Code resulting in the permanent channeling of PI, PD and ZAI Claims into various Trusts and Funds. This means that Grace and other "Asbestos Protected Parties" will no longer be liable for PI, PD and ZAI Claims because these claims will now be paid by the Trusts or Funds. The Plan also proposes an injunction that enjoins all "Successor Claims" against the Asbestos Protected Parties, as more specifically described in the Plan. You should read the Plan and Disclosure Statement for a more complete discussion of how these releases and injunctions will operate and affect your rights.

**How Do I Know If I Am Eligible to Vote?**

The Bankruptcy Court has approved certain "Voting Procedures" describing who can vote on the Plan and how to vote. You may obtain a copy of the Voting Procedures by writing or calling the Voting Agent at the address or number below. The Disclosure Statement contains information that will help you decide how to vote on the Plan if you are entitled to do so. **Your legal rights may be affected if you do not vote on the Plan.** If you are not entitled to vote or you disagree with the amount or classification of your claim for voting purposes, you may file a motion or a declaration with the Bankruptcy Court on or before the Voting Deadline as described in the Voting Procedures.

**Votes Must Be Received By May 20, 2009 ("Voting Deadline")**

**Can I Respond or Object to the Plan?**

The Bankruptcy Court has ordered that responses and objections to the Plan must:

- Be in writing;
- State the name and address of the objecting party and the amount and nature of the claim or interest of such party;
- Explicitly state the basis and nature of any objection to the Plan and any proposed modification to the Plan that would resolve such objection;
- Conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and
- Be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by **May 20, 2009 at 4:00 PM EDT**.

Objections must be served on certain parties whose addresses are set forth in Section 11.12 of the Plan. In addition, objections must be served on the Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, DE 19801. **Any objection that is not filed and served as described above shall not be considered.**

**How Will the Plan Be Approved?**

A Confirmation Hearing will be held before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. As established by a Case Management Order dated January 29, 2009, the Confirmation Hearing will be held in two phases. Phase I of the Confirmation Hearing shall take place from **June 22-25, 2009** and Phase II shall take place from **September 8-11, 2009.** The Confirmation Hearing may be adjourned from time to time by an announcement at the Confirmation Hearing or any continued hearing.

**To obtain the Plan, Disclosure Statement, Voting Procedures, and/or a Ballot**
**Visit: www.bmcgroup.com/wrgrace**
**Write: BMC Group, Inc., Attn: W. R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913**
**Call: (888) 909-0100**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re: ) Chapter 11
W. R. GRACE & CO., *et al.*[1] ) Case No. 01-01139 (JKF)
Debtors. ) Jointly Administered

**NOTICE OF CONFIRMATION HEARING AND IMPORTANT DEADLINES IN RELATION TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF W. R. GRACE & CO., ET AL.**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. The above-captioned debtors and debtors in possession (collectively, the "Debtors") have filed (i) the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (as it may be amended or supplemented, the "Plan") and (ii) the Disclosure Statement, pursuant to section 1125 of the Bankruptcy Code, for the Plan (the "Disclosure Statement").[2]

2. APPROVAL OF DISCLOSURE STATEMENT: On March 9, 2009, after notice and a hearing, pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Confirmation Procedures Order") (i) approving the Disclosure Statement as providing adequate information for Holders of Claims and Equity Interests to make a decision as to whether to accept or reject the Plan, (ii) approving certain procedures (the "Voting Procedures") for the Debtors to solicit and tabulate votes to accept or reject the Plan and (iii) scheduling certain dates in connection with Plan confirmation.

3. VOTING DEADLINE: Pursuant to the Confirmation Procedures Order, the Bankruptcy Court established the deadline by which votes to accept or reject the Plan must be actually received by BMC Group, Inc. (the "Voting Agent") as **May 20, 2009 at 4:00 p.m. (EDT)** (the "Voting Deadline"). Subject to the provisions for filing a Voting Motion or Disputed Classification Declaration (as described in Paragraph 10 below), to be counted, a Ballot (or Master Ballot) to accept or reject the Plan must be actually received by the Voting Agent on or before the Voting Deadline as follows:

| By U.S. Mail: | By Courier: |
|---|---|
| BMC Group, Inc. | BMC Group, Inc. |
| Attn: W.R. Grace Voting Agent | Attn: W.R. Grace Voting Agent |
| P.O. Box 2007 | 18750 Lake Drive East |
| Chanhassen, MN 55317-2007 | Chanhassen, MN 55317 |

4. CONFIRMATION HEARING: As set forth in the Bankruptcy Court's *Second Amended Case Management Order Related to the First Amended Joint Plan of Reorganization*, dated January 29, 2009 (the "CMO"), a hearing (the "Confirmation Hearing") to consider the entry of an order confirming the Plan under section 1129 of the Bankruptcy Code will take place in two phases. Phase I shall address (i) whether the Plan improperly affects the rights of the Debtors' insurers (in their capacity as insurers, but not creditors); (ii) the standing of the Debtors' insurers (in their capacity as insurers, but not creditors) to litigate confirmation objections that do not involve insurance issues covered by item (i); and (iii) the confirmation objections raised on behalf of and specific to lenders under the Pre-Petition Credit Facilities and other Class 9 creditors with respect to impairment. Phase II shall address the objections of (i) parties classified under the Plan as Holders of Indirect PI or PD Trust Claims (including insurers as Holders of Indirect PI or PD Trust Claims with respect to such Claims); (ii) the objections of the Libby Claimants and (iii) any other confirmation objections not addressed and resolved in Phase I. Each Phase of the Confirmation Hearing shall take place before the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, at the United States Bankruptcy Court, Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219. Phase I of the Confirmation Hearing shall take place on **June 22-25, 2009 commencing at 9:00 a.m. (EDT)** and Phase II of the Confirmation Hearing **shall take place on September 8-11, 2009 commencing at 9:00 a.m. (EDT), except that the September 8, 2009 hearing shall commence at 11:00 a.m. (EDT).**

5. **INJUNCTIONS: The Plan proposes injunctions under sections 524(g) and 105 of the Bankruptcy Code, applicable to all persons and entities, that result in the permanent channeling of (i) all Asbestos PI Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to an Asbestos PI Trust, (ii) all Asbestos PD Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to an Asbestos PD Trust and (iii) all CDN ZAI PD Claims against the Debtors and various other entities (including the Asbestos Protected Parties) to the CDN ZAI PD Claims Fund, all as more specifically described in the Plan. The Plan also proposes an injunction applicable to all persons and entities that enjoins all Successor Claims against the Asbestos Protected Parties based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction, as more specifically described in the Plan. These injunctions enjoin all persons and entities from bringing claims covered by the particular injunctions against the Debtors and the other identified parties in the Plan. You should read the Plan and the Disclosure Statement for a more complete discussion of how such injunctions will operate and affect your rights.**

6. **SPECIFIC RELEASES BY HOLDERS OF CLAIMS OR EQUITY INTERESTS: As more fully provided for in Section 8.8.7 of the Plan, each Holder of a Claim or Equity Interest who votes in favor of the Plan shall be deemed to have unconditionally released the Asbestos Protected Parties, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee, the Asbestos PI FCR and the Asbestos PD FCR, and each party's Representatives, as of the Effective Date, from any and all Claims, SA Claims, SA Damages, obligations, rights, suits, damages, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, their operations on or before the Effective Date, their respective property, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments, or other documents. In addition to the foregoing, each Holder of a Claim or Equity Interest who receives or retains any property under this Plan shall also be deemed to unconditionally release the Fresenius Indemnified Parties to the same extent as the release in the preceding sentence.**

7. EXECUTORY CONTRACTS: The Plan constitutes a motion to assume certain executory contracts and unexpired leases as of the Effective Date and provides for the rejection of certain other executory contracts and unexpired leases as of the Effective Date. Section 9.1 of the Plan sets forth (i) the treatment of executory contracts and unexpired leases under the Plan, (ii) the procedures relating to assumption of executory contracts and unexpired leases under the Plan, including procedures and deadlines for counterparties to assert or object to any cure amount that may be owing in relation to the assumption of an executory contract or unexpired lease, and (iii) the procedures for filing proofs of claim arising from any contract that will be rejected under the Plan. Counterparties to executory contracts or unexpired leases should receive separate notice ... a copy of that notice as described in Paragraph 9 below.

8. POST-PETITION INTEREST: Section 3.1.9(b) of the Plan provides for the payment of post-petition interest to Holders of General Unsecured Claims and provides procedures for such Holders to (i) assert an entitlement to post-petition interest in a different amount than provided for in the Plan (a "Post-Petition Interest Determination Notice") or (ii) identify a non-default contract rate of interest to which the Holder is entitled under the Plan (a "Notice of Non-Default Contract Rate of Interest"). A Post-Petition Interest Determination Notice must comply with the requirements of Section 3.1.9(d) of the Plan and be filed with the Bankruptcy Court **on or before the Voting Deadline of May 20, 2009**. A Notice of Non-Default Contract Rate of Interest must comply with the requirements of Section 3.1.9(e) of the Plan and be received by the Voting Agent (at the address listed in Paragraph 9) **on or before the Voting Deadline of May 20, 2009.** Holders of General Unsecured Claims should receive separate notice of these procedures and obtain a copy of that notice as described in Paragraph 9 below.

9. SOLICITATION PACKAGES: In accordance with the Confirmation Procedures Order, certain materials (the "Solicitation Package"), including a copy of the Disclosure Statement, Plan and Voting Procedures, are being provided with this Notice to Holders of Claims and Equity Interests in impaired classes under the Plan and to Holders of Claims in Classes 7A and 9 under the Plan.[3] In addition, the Confirmation Procedures Order authorizes the Debtors to distribute (i) a notice to counterparties to executory contracts and unexpired leases describing the treatment of executory contracts and unexpired leases under the Plan, and (ii) a notice to Holders of Class 9 General Unsecured Claims regarding the Plan's procedures with respect to the payment of post-petition interest in relation to General Unsecured Claims. The Plan, Disclosure Statement, Voting Procedures and related documents and notices are also available via the Internet on the Debtors' website at www.wrgrace.com and on the Voting Agent's website at www.bmcgroup.com/wrgrace. If you did not receive a Solicitation Package, but wish to receive one, you should send a written request by U.S. Mail to BMC Group, Inc., Attn: W. R. Grace Voting Agent, P.O. Box 913, El Segundo, CA 90245-0913 or call the Voting Agent at (888) 909-0100. Creditors and Equity Interest Holders who are entitled to vote on the Plan should receive Ballots and instructions for voting in their Solicitation Package. Holders of Claims that are not entitled to vote on the Plan will not receive a Solicitation Package.

10. VOTING MOTIONS AND DISPUTED CLASSIFICATION DECLARATIONS: If a Holder of a Claim is not entitled to vote under the Voting Procedures or disagrees with the amount of its Claim for voting purposes, such Holder may file a motion with the Bankruptcy Court, pursuant to Bankruptcy Rule 3018(a) and Section 10(f)(i) of the Voting Procedures, requesting temporary allowance of such Claim in an amount which the Bankruptcy Court deems proper solely for the purpose of casting a vote to accept or reject the Plan (a "Voting Motion"). **All Voting Motions must be filed and served in accordance with the Voting Procedures on or before the Voting Deadline of May 20, 2009.** If a Holder of a Claim intends to pursue an objection to confirmation of the Plan on the grounds that such Holder's Claim is not properly classified, such Holder may request a Ballot from the Voting Agent for provisional voting under a different Class and may vote to accept or reject the Plan by filing with the Bankruptcy Court a Disputed Classification Declaration **on or before the Voting Deadline of May 20, 2009** pursuant to Section 10(f)(ii) of the Voting Procedures. The Voting Procedures may be obtained from the Voting Agent as described in Paragraph 9 above.

11. OBJECTION DEADLINE: Responses and objections, if any, to the confirmation of the Plan or any relief sought by the Debtors in connection with confirmation of the Plan, must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection to the Plan and, if practicable, proposed modification to the Plan that would resolve such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed, together with proof of service, with the Bankruptcy Court and served in a manner so as to be received by **May 20, 2009 at 4:00 p.m. (EDT)** on (a) counsel to the Debtors, (b) counsel to each of the statutory committees appointed in these chapter 11 cases, (c) counsel to each of the future claimants' representatives appointed in these chapter 11 cases, (d) counsel to Sealed Air Corporation and Cryovac, Inc., (e) counsel to Fresenius, and (f) the United States Trustee, whose addresses are set forth in Section 11.12 of the Plan, except for the United States Trustee, who shall be served at: Office of the United States Trustee, Attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, Delaware 19801.

**ANY OBJECTION TO THE CONFIRMATION OF THE PLAN THAT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN SHALL NOT BE CONSIDERED.**

12. The Confirmation Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by an announcement in the Bankruptcy Court of such adjournment at the Confirmation Hearing or any continued hearing.

Dated: March 9, 2009

KIRKLAND & ELLIS LLP, David M. Bernick, P.C., Theodore L. Freedman, Deanna D. Boll, Craig A. Bruens, 153 East 53rd Street, New York, NY 10022, Tel: (212) 446-4800

THE LAW OFFICES OF JANET S. BAER, P.C., Janet S. Baer, P.C., 70 W. Madison St., Ste 2100, Chicago, IL 60602, Tel: (312) 641-2162

PACHULSKI STANG ZIEHL & JONES LLP, Laura Davis Jones, James E. O'Neill, Timothy P. Cairns, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705, Tel: (302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

[3] Contents of the Solicitation Package are described in the Voting Procedures.

progress in their restructurin
G.M. has borrowed $13.4 billi
from the government since D
cember and is requesting acce
to $16.6 billion more, while Chry
ler has borrowed $4 billion a
wants $5 billion more.

Ahead of that deadline, G.
and Chrysler have been slashi
costs and pressing for conce
sions from their debt holders, u
ions and other stakeholders th
would improve the companie
viability. G.M. this month d
ferred its request for another
billion infusion from the gover
ment because it said cost-cutti
efforts had been working bett
than expected.

But the G.M. bondhold
group, which met with the ta
force on March 5, is skeptical t
G.M. is moving fast enough to
main solvent, even with billio
of dollars more from the gover
ment.

"We are concerned that t
company is putting too mu
faith in a near-term turnarou

**NOTICE OF PUBLIC SALE OF LI**

**PLEASE TAKE NOTICE**, that by virtue of a default un
ment dated as of June 11, 2007 (the "Loan Agreeme
pany ("Lender"), in accordance with its rights as hol
the Loan (the "Security") and its rights under the U
610, 9-611, and 9-613 of the New York Uniform Co
the Rotunda of the Supreme Court Building of the
sale of the Security. Lender has appointed Mr. Will
public sale. This public sale involves the sale of int
and does not involve the direct sale of real property

The subject Loan Agreement was entered into b
Hills Apartments Mezz, LLC, Bethany Rolling Hills M
mon Apartments Associates Mezz, LLC (individually
original lender). Lender is currently the owner and
the owner and holder of all of the loan documents d
of the Loan.

**The Security consists of the followi**

(1) The "rights and interests" (desc
nies (each, a "Property Owner" and collectively the

(a) Waterfield Apartment Associates, LLC, a Del
Apartment Associates, LLC, a Colorado limited liabi
Waterfield is the owner of the real property and impr
ments," a multi-family residential project located a
Assessor's Parcel Numbers 1975-33-3-24-002 and

(b) Rolling Hills Apartments, LLC, a Delaware lim
lieves that Rolling Hills is an owner of the real prope
Apartments," a multi-family residential project loca
80104, Assessor's Parcel Numbers 2505-13-1-12-

(c) Bethany Rolling Hills, LLC, a Delaware limited
believes that Bethany Rolling Hills is an owner of th
"Rolling Hills Apartments" (described above). Lend
and holder of an interest as manager in Rolling Hill

(d) Falcon Pointe Apartment Associates, LLC, a
Pointe Apartment Associates, LLC, a Colorado limit
lieves that Falcon Pointe is the owner of the real p
Ridge Apartments," a multi-family residential proje
Colorado 80910, Assessor's Parcel Number 64281

(e) Rockrimmon Apartment Associates, LLC, a D
mon Apartment Associates, LLC, a Colorado limited
that Rockrimmon is the owner of the real property a
Apartments," a multi-family residential project loca
80919, Assessor's Parcel Number 7313401001.

(2) The "rights and interests" (de
Colorado BREM, Inc., a Delaware corporation ("Ma
pendent manager of each of the Property Owners.

With respect to each Property Owner and Mana
(as defined in the Loan Documents; definition avail
and under any policy of insurance payable by reas
eral for the Loan; (iii) All "accounts," general intan
defined in the Uniform Commercial Code) constitu
After Debt Service" (as defined in the Loan Agreem
erwise part of the Pledged Interests, all Proceeds
quest), income and profits thereof and all property
property of Borrower.

The aforementioned public sale shall be con
$32,600,000, together with interest thereon and
Documents, subject to all prior liens, all expenses
of Bidding and Sale (which are available in their e

The Security shall be sold AS IS and WHERE IS,
excluded. Lender makes no representation or war
the underlying real property or any other asset, (ii)
ager to any underlying real property or any other as
to its assets, (iv) the physical, financial, or environ
validity, or amount of any liens or claims senior or
any asset or entity. Lender is informed and believ
gage loan and various liens; however, no represent
gage loan and liens.

The Security will be sold only as a block to a sin
be continued from time to time, without further no
and absolute discretion of Lender.

Prior to bidding, each interested bidder shall d
or cashier's check made payable to DLA Piper LL
eer, with all deposits (except that of the highest b
process. The deposit of the highest bidder shall b
process, the highest bidder will be required to inc
cessful bid. If the highest bidder fails to so increas
and the Security, at the option of Lender, may be
Lender by cashier's or certified check, or by wire
of the public auction, but may be continued to a
faults upon the balance, its deposit is forfeited an
est bidder. The Lender, either directly or indirect
sale without certified or cashier's check deposit,
curity, at a closing to take place immediately after
discretion, through one or more nominees or assi

For additional information respecting the Sec
warranty) and a copy of the Terms and Conditio
Sohn, Esq., DLA Piper LLP (US), 1251 Avenue of t
(212) 884-8492 (facsimile), or joshua.sohn@dla
Dated: February 25, 2009