IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. [1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: June 18, 2009** |
| | | **Re: Docket Nos. 21972, 21959** |

**PLAN PROPONENTS' RESPONSE IN OPPOSITION TO MOTIONS OF THE
LENDERS AND UNSECURED CREDITORS' COMMITTEE TO MODIFY THIRD
AMENDED CASE MANAGEMENT ORDER RELATED TO THE FIRST AMENDED
JOINT PLAN OF REORGANIZATION**

The Official Committee of Unsecured Creditors ( the "Committee") and the Bank Lender

Group (the "Lenders") have filed motions seeking to amend the Third Amended Case

Management Order Related to the First Amended Joint Plan of Reorganization, dated May 5,

2009 [Dkt. No. 21544] (the "CMO") in order to delay plan confirmation.  They allege that the

appeal from this Court's May 19, 2009 Memorandum Opinion regarding the allowance of their

claims pursuant to § 502(b) of the Bankruptcy Code ("Claims Objection Opinion") has somehow

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

divested this Court of jurisdiction to decide Plan confirmation issues related to the Lenders' impairment.[2] Accordingly, they argue that the current schedule, which has been embodied in the initial plan confirmation case management order since December 5, 2008 ("Initial CMO"),[3] and pursuant to which the hearing on the issue of the Lenders' impairment is to be addressed in Phase I of the Confirmation Hearing on June 22, should be abandoned until the issue of the Lenders' claim to default interest is resolved on appeal. There is simply no basis in law to grant such relief and the appropriate management of these confirmation proceedings also mandates the denial of the relief sought.

In addition, the Lenders and the Committee have failed to present *any* evidence of the Debtors' solvency -- a necessary predicate under bankruptcy law for an award of default interest. The Lenders and Committee have also failed to present *any* evidence of a default under the Pre-Petition Credit Facilities that might entitle them to default interest in the event of a breach of certain contractual terms thereunder. The Committee and the Lenders have had these issues in front of them from at least as far back as *June 2008*, when the Debtors filed their objection to the Lenders' claims. They have had countless opportunities to present evidence on these points, but they chose to sit on their hands and do nothing. They should not be allowed to now delay confirmation at this late hour simply because they have decided they do not like the outcome of the Claims Objection Opinion. As a result, the Debtors, together with the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Equity Security Holders, and the

---

[2]    Motion of the Official Committee of Unsecured Creditors to Modify Third Amended Case Management Order Related to the First Amended Joint Plan of Reorganization, dated June 2, 2009 ("Committee Motion") [Dkt. No. 21959]; Bank Lender Group Motion to Modify the Third Amended Case Management Order Related to the First Amended Joint Plan of Reorganization, dated June 3, 2009 ("Lenders' Motion") [Dkt. No. 21972].

[3]    *See* Initial Case Management Order Related to the First Amended Joint Plan of Reorganization, dated December 5, 2008 [Dkt. No. 20204].

Asbestos PI Future Claimants' Representative (collectively the "Plan Proponents"), respectfully

request that this Court deny the motions of the Committee and the Lenders and decline to modify

the CMO with respect to determination of the Lenders' impairment under the Joint Plan.

## ARGUMENT

## I.     THIS COURT HAS JURISDICTION TO ADJUDICATE CLASS 9 IMPAIRMENT ISSUES AS PART OF PHASE I OF THE CONFIRMATION HEARING.

The Committee and the Lenders argue that this Court has been divested of jurisdiction to

decide issues related to the Lenders' impairment because the Claims Objection Opinion is the

subject of appeal. This contention is wrong. The filing of a notice of appeal only divests the

lower court "of its control over *those aspects* of the case involved in the appeal." *Griggs v.

Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (emphasis added). The purpose of

this judge-made rule is "to prevent the confusion and inefficiency that would result if both the

district court and court of appeals were adjudicating the *same issues* simultaneously." *Mary Ann

Pensiero, Inc. v. Lingle*, 847 F.2d 90, 97 (3rd Cir. 1988) (emphasis added).

Although an appeal divests a court's control over those aspects involved in the specific

appeal, a bankruptcy court clearly does not lose jurisdiction over every *other* aspect of the case.

*See In re Board of Directors of Hopewell Int'l Ins. Ltd.,* 258 B.R. 580, 583 (Bankr. S.D.N.Y.

2001) (finding that the bankruptcy court *has* jurisdiction to decide discovery issues and

proceedings different from, and collateral to, an appeal of a bankruptcy court order sustaining a

petition ancillary to a foreign proceeding); *In re Strawberry Square Associates*, 152 B.R. 699,

702 (Bankr. E.D.N.Y. 1993) (finding that the bankruptcy court retained jurisdiction to address

the prerequisites to plan confirmation because those issues were distinct from the issues the

appellate court needed to consider to resolve the appropriateness of a stay, noting that an appeal

does not deprive a bankruptcy court of jurisdiction over other aspects of the case because doing

so "would freeze the case at the procedural posture reached when the appeal was filed, and

would inure unjustly to the benefit of any party whose interests were furthered by delay"); *In re*

*J.M. Fields, Inc.*, 8 B.R. 638, 641 (Bankr. S.D.N.Y. 1981) (appeal from order of bankruptcy

court authorizing debtor to transfer a leasehold interest only divested court of its jurisdiction with

respect to the questions raised and decided in that order, and the court retained jurisdiction to

adjudicate all other matters, including whether the debtor had a right to terminate a contract of

sale); *In re Urban Dev. Ltd., Inc.*, 42 B.R. 741, 745 (Bankr. Fla. 1984) (finding that the

bankruptcy court had jurisdiction to consider the debtor's request to sell estate property free and

clear of a lien because the issues involved were sufficiently distinct from the issues of lack of

adequate protection, lack of equity, and lack of need to preserve the property for an effective

reorganization that the appellate court needed to address to determine whether an automatic stay

under was appropriate).

Here, *confirmation* issues relating to default interest were not addressed in the Claims

Objection Opinion, which denied default interest as part of the Lenders' allowed claims with

respect to the pre-petition credit agreements. As the Court explained in its Claims Objection

Opinion:

> In summary, we find that the Bank Lenders are not entitled to the
> postpetition default rate of interest as part of their allowed claims
> pursuant to § 502 ...Whether default interest is appropriate to be
> paid on the Bank Lenders' allowed claims in the context of plan
> confirmation must await the plan confirmation hearing and the
> evidence adduced at that time.[4]

---

[4]    Indeed, the Court made it explicitly clear that, "[t]he only issue ripe for adjudication is whether, as
unsecured creditors, Bank Lenders are entitled to the default rate of interest as a matter of claim allowance and we
conclude that they are not. Whether as a matter of plan confirmation default interest should be awarded on the Bank

Claims Objection Opinion at 12. Thus, the Court simply did not address the impairment issue in

its prior order, and the issue of impairment is simply not part of the appeal from the Court's

Claims Objection Opinion. The appeal is limited to default interest in the context of claims

allowance. These are two distinct events in these chapter 11 cases. Accordingly, there is no

divestiture of this Court's jurisdiction to address whether the Lenders are impaired under §§

1123(a)(4) and 1129 of the Bankruptcy Code with respect to their treatment in Class 9 of the

Joint Plan while an appeal goes forward on issues related to disallowance of the Lenders' claims

for default interest under § 502(b) of the Bankruptcy Code.

Indeed, the cases that Lenders and the Committee cite do not support a contrary result.

All of their cases involve appeals where the lower court is divested of jurisdiction to rule on the

*same* issue presented in the appeal or where the court must decide whether it has jurisdiction to

rule on a motion for stay pending appeal once the appeal is filed.[5]

Moreover, it is well-settled law that a bankruptcy court retains jurisdiction while an

appeal is pending, and in the absence of a stay, it may implement its order or judgment appealed

from. *See In re Mazzocone,* Nos. 93-12296S, CIV. A. 94-5068, Civ. A. 94-5201, 1995 WL

113110, at *4 (E.D. Pa. Mar. 16, 1995) ("most courts have also held that bankruptcy courts retain

jurisdiction to enforce, implement, and otherwise treat as valid judgments and orders that are the

subject of pending appeals, as long as that enforcement and implementation does not require

---

Lenders' claims is not before us as: (a) we are not at the plan confirmation stage." Claims Objection Opinion at 8-9 [Dkt. No. 21747].

[5]      *Venen v. Sweet,* 758 F.2d 117 (3d Cir. 1985) (Third Circuit held that the district court did not have jurisdiction to reconsider a motion it had dismissed when the appellate court was ruling on whether its dismissal of this motion was appropriate); *In re AWC Liquidation Corp.,* 292 B.R. 239 (D. Del. 2003) (district court lacked jurisdiction to hear motion for stay of its disallowance of the claim in its entirety when the disallowance was already on appeal before the Third Circuit); *In re Transtexas Gas Corp.,* 303 F.3d 571 (5th Cir. 2002) (bankruptcy court lacked jurisdiction to modify a confirmation order when the confirmation order was on appeal); *W. R. Grace & Co. v. Libby Claimants (In re W. R. Grace & Co.),* C.A. No. 08-246, 2008 WL 5978951 (D. Del. Oct. 28, 2008) (jurisdictional issues addressed regarding motion for stay pending appeal of same issue that was subject to appeal).

redeciding [sic] issues that are on appeal"); *In re Board of Directors of Hopewel*, 258 B.R. at 583

(citing *In re Prudential Lines, Inc.*, 170 B.R. 222, 243 (S.D.N.Y. 1994), *appeal dismissed*, 59

F.3d 327 (2d Cir. 1995) ("'This is true because in implementing an appealed order, the court

does not disrupt the appellate process so long as its decision remains intact for the appellate court

to review'")); *In re Mirant Corp.*, 334 B.R. 800, 826 (Bankr. N.D. Tex. 2005) ("Until the appeal

is decided, this Court's findings of fact and conclusions of law on these issues remains [sic] the

law of the case and is [sic] binding upon all parties.") (quoting *In re Tex. Health Enters., Inc.*,

255 B.R. 181, 183 (Bankr. E.D. Tex. 2000)).  In the absence of a proper stay, this Court may and

should implement  its order that the Lenders' claim for default interest is disallowed and

continue to adjudicate the separate issue of Lender impairment which remains before it in Phase

I of the Confirmation Hearing.

## II.   IF THE COMMITTEE AND LENDERS DID NOT WANT THE COURT'S RULING TO BE ENFORCED, THEY SHOULD HAVE SOUGHT A STAY PENDING APPEAL UNDER BANKRUPTCY RULE 8005.

### A.   A Stay Will Not Be Granted Under Bankruptcy Rule 8005 Unless Strict Criteria Are Satisfied.

The Committee and the Lenders filed notices of appeal, but they failed to move for the

only relief that could have prevented enforcement of this Court's Claim Objection Opinion:  a

stay pending appeal as required by Bankruptcy Rule 8005.  Bankruptcy Rule 8005 provides:

> A motion for a stay of the judgment, order, or decree of a
> bankruptcy judge, for approval of a supersedeas bond, or for other
> relief pending appeal must ordinarily be presented to the
> bankruptcy judge in the first instance.... A motion for such relief,
> or for modification or termination of relief granted by a bankruptcy
> judge, may be made to the district court or the bankruptcy
> appellate panel, but the motion shall show why the relief,
> modification, or termination was not obtained from the bankruptcy
> judge.

Fed. R. Bankr. P. 8005.  In order to obtain a stay under this rule, a movant must establish the

same elements necessary to obtain a preliminary injunction: (1) a strong likelihood of success on

the merits; (2) irreparable injury absent a stay; (3) the stay will not substantially injure the other

parties interested in the proceeding; and (4) the stay would not be against public interest.

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991) (citing

*Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)); *In re Genesis Health Ventures, Inc.*, 367 B.R.

516, 519 (Bankr. D. Del. 2007); *In re ANC Rental Corp.*, Nos. 01-11220(MFW), 2002 WL

1058196, at *2 (D. Del. May 22, 2002).  "If the movant fails to make a showing on any one of

these four factors, the court may deny the stay." *Genesis*, 367 B.R. at 519; *ANC*, 2002 WL

1058196 at *2; *In re Blackwell*, 162 B.R. 117, 120 (E.D.Pa.1993).

### B.      The Lenders Did Not Seek a Stay Under Bankruptcy Rule 8005 Because They Cannot Make The Necessary Showing Required To Obtain Such A Stay.

Although Bankruptcy Rule 8005 is the only appropriate vehicle for staying the

enforcement of the factual and legal findings in the Claims Objection Opinion pending appeal,

the Committee and Lenders did not seek a stay.  They instead proceeded with their motions to

postpone confirmation issues under the CMO.  Moving to amend the CMO is not enough.  The

Plan Proponents assert that the Lenders and the Committee failed to follow the procedure set

forth under Rule 8005 because they could not meet the applicable standard and establish that a

stay was warranted.  As noted above, in order to obtain a stay, the movant must show that the

stay will not substantially injure other parties in interest and is not against public interest,

irreparable harm will result if the stay is not granted, and the movant is likely to succeed on the

merits. *Westinghouse*, 949 F.2d at 658.  The Lenders and the Committee cannot make this

showing.

Here, the harm to all other constituencies from delay in the proceedings outweighs the harm to the Committee and Lenders from proceeding with confirmation and is contrary to the public interest. This case has been going on for 8 years, the schedule has been extensively negotiated, the overwhelming number of parties now eagerly await confirmation, and any further delay may harm all of these constituencies. *See e.g. ANC*, 2002 WL 1058196 at *3 (denying a stay where delay would prevent significant savings to the bankrupt estate and "might well seriously jeopardize the plan," and thus "produce substantial harm to other parties."); *see also In re Shenandoah Realty Partners, L.P.*, 248 B.R. 505, 511 (W.D. Va. 2000) (refusing to grant a stay pending appeal of order confirming Chapter 11 plan because the alleged harm to the movant was outweighed by the more severe potential harm to debtor's other creditors and employees, notwithstanding the fact that debtor had the ability to remain in business during pendency of appeal).

Nor could the Committee and the Lenders establish irreparable injury. Putting aside whether it is applicable here, even "equitable mootness of an appeal, without more, does not constitute irreparable harm." *In re 15375 Memorial Corp.*, Bankr. No. 06-10859-KG., slip op. 2009 WL 393948, at *1 (D. Del. Feb. 18, 2009); *In re Global Home Products, LLC*, No. 06-10340-KG, 2006 WL 2381918, at *1 (D.Del. Aug. 17, 2006) (same); *In re Trans World Airlines, Inc.*, No. 01-0056(PJW), 2001 WL 1820325, at *10 (Bankr. D. Del. Mar. 27, 2001) (same); *In re 203 North LaSalle Street P'ship*, 190 B.R. 595, 598 (N.D.Ill.1995) (same). Here, the Court has simply determined that the Committee and the Lenders are not entitled to default interest as a matter of claims allowance, and as a mere calculable, financial injury, this does not constitute irreparable harm. *See e.g. ANC*, 2002 WL 1058196 at *2 (endorsing the principle that "if injury

is 'at bottom, financial' and could be calculated, there [is] no irreparable injury."); *see also In re Shelly's, Inc.,* 87 B.R. 931, 935 (Bankr. S.D. Ohio 1988) (same).

Finally, the Committee and Lenders cannot establish that they are likely to succeed on the merits. "Likelihood of success on the merits means that a movant has a 'substantial case,' or a strong case on appeal." *In re Polaroid Corp.*, No. Civ.A. 02-1353, 2004 WL 253477, at *1 (D. Del. Feb. 9, 2004) (internal citations omitted); *In re The Columbia Gas Sys., Inc.,* Civ. A. No. 92-127-SLR, 1992 U.S. Dist. LEXIS 3253, at *4 (D. Del. Mar. 10, 1992); *see also In re Public Serv. Co. of N.H.*, 116 BR 347, 349 (Bankr. D.N.H. 1990) (rejecting that movant could succeed on the merits because this requires a determination that the Court's factual findings were "clearly erroneous" and movant could not satisfy this high threshold). To satisfy this criteria, the movant must identify orders, decrees, or judgments by the Bankruptcy Court that are clearly erroneous and thus potentially reversible on appeal, and identify potentially incorrect factual findings or legal conclusions reached by the Bankruptcy Court. *Polaroid Corp.*, 2004 WL 2543477 at *1. Here, the Committee and the Lenders cannot establish that this Court's findings were clearly erroneous. The fact is that the Committee and the Lenders have put forth absolutely no evidence to support their conclusion that they are entitled to default interest.

Because the factors that courts consider in evaluating the appropriateness of a stay under Bankruptcy Rule 8005 mandate against a stay of these proceedings, and the Committee and Lenders had no hope of obtaining such a stay, they attempted to backdoor their way to the same result by advancing the disingenuous argument that this Court lacks jurisdiction to rule on Class 9 impairment issues pending appeal. Such an approach should not be countenanced.

III.   **THE EQUITIES HERE DO NOT SUPPORT FURTHER DELAY OF THE CONFIRMATION PROCEEDINGS.**

In addition to having no legal basis to modify the CMO for the purpose of delaying the confirmation proceedings, such a result is against the interests of all other constituencies in these Chapter 11 Cases.

A.     **At This Point, The Joint Plan Enjoys Overwhelming Support, And The Confirmation Schedule Has Been Agreed Upon By Numerous Parties and the Court.**

Grace has now been in bankruptcy for over 8 years.   The parties worked diligently over the years to get to where we are, namely, formulation of the Joint Plan, solicitation of votes for the Joint Plan, and commencement of the Confirmation Hearing.  All of the impaired classes[6] have overwhelmingly accepted the Joint Plan, and the June 22, 2009 Phase I Confirmation Hearing should mark the beginning of the end of 8 long years in Chapter 11.  In terms of the Confirmation Hearing schedule, the Debtors initially proposed a case management order as early as November 2008, and the Initial CMO included June 22 as the first day of Phase I of the Confirmation Hearing.  The adjudication of issues of impairment on June 22, 2009 has always been an integral component of the CMO, and discovery dates were set based on this schedule. Until receiving a ruling they did not like, but have no grounds to dispute, the Committee and Lenders also agreed that this schedule was appropriate.  Now, in pursuit of their own selfish interests, they attempt to derail the entire confirmation agenda at the eleventh hour by inappropriately attempting to intertwine their claims allowance appeal with impairment issues that this Court properly reserved for confirmation.  If confirmation matters are delayed until their

---

[6]     The Class 9 vote was provisionally taken, and while they overwhelmingly accepted the Joint Plan in number, they did not accept in dollar amount.  However, as the Court is aware, it is the Plan Proponents' position that none of the holders of Claims in Class 9, including, but not limited to, the Lenders are impaired under the Joint Plan.

claims allowance appeal is resolved, which could be many months from now,[7] such a delay at

this late date will harm all other constituencies for no justifiable legal or equitable reason.

**B.      The Committee And Lenders Have Only Advanced This Jurisdictional Argument Only Because They Have Not And Cannot Show They Are Impaired Under Bankruptcy Law.**

The Committee and Lenders assert their baseless jurisdictional argument only because

they cannot establish that they are impaired under bankruptcy law.  Even if the Lenders were

entitled to assert that a default had occurred under the Pre-Petition Credit Facilities that would

trigger their contractual claim for default interest (which the Court has found they cannot do),

they would still be barred from claiming that they are impaired by the Joint Plan absent a

showing that post-petition interest must accrue on their claims at the default rate under

bankruptcy law.  They cannot make such a showing.

**1.      The law is clear that a debtor must be determined to be solvent in order for a bankruptcy court to consider awarding post-petition default interest.**

In particular, as a threshold matter, the Committee and Lenders must show that the

Debtors are solvent.  It is black letter law under the Bankruptcy Code that the Debtors' solvency

must be established, and may not merely be presumed, before Lenders are entitled to claim any

post-petition interest.  Insolvent debtors are not required to pay post-petition interest to

unsecured creditors. *See e.g. In re Allegheny Int'l, Inc.*, 118 B.R. 282, 314 (Bankr. W.D. Pa.

1990).

Thus, even a reversal of the Claims Objection Opinion on the issue of whether there were

defaults under the Pre-Petition Credit Facilities does nothing to establish impairment.

Irrespective of the opinion of the appellate court, the Committee and the Lenders ultimately must

---

[7]      There is no indication that the Lenders and the Committee are seeking an expedited appeal of the Claims Objection Opinion.

show that the Debtors are solvent and that the equities counsel in favor of awarding post-petition

default interest. As discussed below, to date, they have utterly failed to make the predicate

showing of solvency, and they will be entirely unprepared to so when the Phase I Confirmation

Hearing commences.

> **2.     The Lenders and the Committee have had their "eyes wide open" to
> the fact that they needed to present evidence of solvency, yet they have
> ignored doing this for nearly a year.**

The Debtors filed their objection to the Lenders' claims in mid-June 2008.[8] The Debtors

made clear in their objection that solvency must be established and not merely presumed.[9] The

Court even attempted early on in this process, at a status conference in June 2008, to frame the

issue for the Lenders and the Committee, and make clear that solvency was critical to the default

interest determination:

> THE COURT: But the problem I'm having is this. I've looked at
> the motion. I think the issue is pretty clear. The unsecured
> creditors, unless the debtor is solvent, aren't entitled to any
> interest. It doesn't matter -- default interest, not default interest.
> It's no interest. So, unless we're going into a solvency hearing,
> then I think the issue that you face is it's not any interest, folks, it's
> no interest.

6/23/08 Hrg. Tr. 75:14-21 (JFK) [Dkt. No. 19036]. The Lenders ignored the Court and the law

on this subject, and instead argued to the Court that solvency should merely be presumed.[10]

Again, at a July 2008 status conference, the Court tried to make it clear to the Lenders and the

Committee that a presumption of solvency is not the legal standard here:

---

[8]     Debtors' Objection to the Unsecured Claims Asserted Under the Debtors' Credit Agreements Dated As of
May 14, 1998 and May 5, 1999, dated June 13, 2008 [Dkt. No. 18922].

[9]     *Id.* at ¶¶ 2, 13, 22, 24, 26-27, 35.

[10]     Response of the Bank Lender Group in Oppositions to the Debtors' Objection to Claims Asserted Under
the Debtors' Credit Agreements Dated as of May 14, 1998 and May 5, 1999, dated July 11, 2008, at ¶¶ 7-9 [Dkt.
No. 19073].

> THE COURT: I am not aware that there is a presumption of either
> solvency or insolvency anywhere in the Bankruptcy Code having
> to do with the issue we're about to litigate.

7/21/08 Hrg. Tr. 95:20-23 (JFK) [Dkt. No. 19210]. The Lenders and the Committee again

ignored the elephant in the room and sought no discovery on solvency.[11] And by the time that

the parties' trial briefs were due in early September 2008, there was *still no evidence* put forth of

solvency. Indeed, as of that time, the only "evidence" was the Committee arguing that the

Debtors' stock price proves solvency, which argument was abandoned by the Committee's own

expert, who reviewed the market capitalization of the Debtors, but offered no opinion regarding

solvency.[12] Nor did the Committee's expert contest the affidavit of the Debtors' financial

advisor, Pamela Zilly, who opined that stock price is driven by many factors and does not

establish solvency.[13]

The claims allowance hearing itself in late September 2008 proved to be another point in

time where the Court made clear to the Lenders and the Committee that there was no evidence

presented respecting solvency:

> THE COURT: I cannot see how in the context of a case in which there has not
> been an estimation of the ZAI liabilities, the property damage liabilities, the
> asbestos personal injury liabilities, the Canadian liabilities, the U.S. liabilities,
> you can state as a matter of fact that this debtor is solvent. I have no evidence of
> that. I don't know that the debtor's solvent or not solvent. 74:8-15.

9/29/08 Hrg. Tr. 74:8-15 [Dkt. No. 19874].

---

[11]   The Debtors responded to the Lenders' and Committee's discovery in mid-August 2008, and there were no
questions posed even remotely related to solvency.

[12]   Debtors' Trial Brief in Support of Objection to the Unsecured Claims Asserted Under the Debtors' Credit
Agreements Dated as of May 14, 1998 and May 5, 1999, dated September 5, 2008, at ¶ 4 [Dkt. No. 19476].

[13]   *Id.*

Thus, the Lenders and the Committee were put on notice *months ago* that the Court needed some evidence of solvency in order to award default interest in connection with this Confirmation Hearing. They instead continued to do nothing as the Confirmation Hearing approached, notwithstanding the fact that they had an opportunity to seek discovery on solvency issues for purposes of the Confirmation Hearing since December 2008.[14]

It was not until this Court noted in its Claims Objection Opinion that there was no evidence before it of either solvency or insolvency (Claims Objection Opinion at 9) that the Lenders and the Committee decided they need to delay Phase I issues on impairment, which dates have been agreed-to and binding for months, simply so they can have another chance to try to establish the record that they have entirely failed to establish during either the discovery period and hearing on the allowance of the Lenders' claims or the designated pre-trial discovery period leading up to the Confirmation Hearing. There is no justification for this, and the Court should not allow them this "second bite at the apple" so late in this process.[15]

---

[14]     *See* Initial Case Management Order Related to the First Amended Joint Plan of Reorganization, dated December 5, 2008, at ¶ 15 ("All parties preserve all rights and objections. This includes the right to seek . . . discovery regarding solvency . . .") [Dkt. No. 20204]; Third Amended Case Management Order Related to the First Amended Joint Plan of Reorganization, dated May 5, 2009 at ¶ 13 (same) [Dkt. No. 21544].

[15]     Even if they had established solvency, they could not prevail on this claim because the appropriate rate of post-petition interest payable to unsecured creditors in solvent debtor cases ultimately hinges upon a "balance of equities." *See In re Coram Healthcare Corp*, 315 B.R. 321, 346 (Bankr. D. Del. 2004) ("[T]he specific facts of each case will determine what rate of [postpetition] interest is 'fair and equitable.'"); *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156 (1946) (in order to show impairment, the movant must establish a right to default interest on the grounds that the debtor is both solvent and that the equities of the case demand it under § 1129(b)). Here, in particular because of the Lenders' and the Committee's prior agreement to accept the rate of postpetition interest which is contemplated by the Plan, the equities do not counsel for such an award.

## CONCLUSION

Because this Court has jurisdiction to address Class 9 impairment at Phase I of the Confirmation Hearing, and because delay will harm all other constituencies in these Chapter 11 Cases, the Court should proceed as planned and overrule the Lenders' and Committees' motions to amend the CMO.

*[Remainder of Page Intentionally Left Blank]*

Date:  June 11, 2009

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore L. Freedman
Deanna D. Boll
Justin S. Brooks
601 Lexington Avenue
New York, NY 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
70 W. Madison Street
Suite 2100
Chicago, IL 60602
Telephone: (312) 641-2162

and

PACHULSKI STANG ZIEHL JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4338)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

*Co-Counsel for the Debtors and Debtors in Possession*

CAMPBELL & LEVINE, LLC

/s/ Mark T. Hurford
Mark T. Hurford (No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900
Facsimile: (302) 426-9947

and

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
Jeffrey A. Liesemer
Kevin Maclay
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

*Counsel for the Official Committee of Asbestos
Personal Injury Claimants*

PHILIPS, GOLDMAN & SPENCE, P .A.

/s/ Johns C. Philips
John C. Philips (Bar No.110)
1200 North Broom Street
Wilmington, DE 19806
Telephone: (302) 655-4200
Facsimile: (302) 655-4210

and

ORRICK, HERRINGTON & SUTCLIFFE LLP
Roger Frankel
Richard H. Wyron
Jonathan P. Guy
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8400
Facsimile: (202) 339-8500

*Counsel for David T Austern, Asbestos PI Future Claimants' Representative*

18

SAUL EWING LLP

/s/ Teresa K.D. Currier
Teresa K.D. Currier (Bar No. 3080)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Facsimile: (302) 421-6813

and

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Philip Bentley
Gregory Harowitz
Douglas Mannal
David Blabey
1177 Avenue of the Americas
New York, NY 10022
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee of Equity Security
Holders*