# EXHIBIT B

1

1       IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE DISTRICT OF DELAWARE
2                   - - -
3
        In Re:                 : Chapter 11
4                              :
                               : Case No.
5       W.R. GRACE & CO., et al, : 01-01139 JKF
                               :
6                              : (Jointly
                    Debtors    : Administered)
7
8                   - - -
9           Thursday, May 7, 2009
10                  - - -
11              Oral deposition of GEORGE L.
12      PRIEST, taken pursuant to notice, was
13      held at the offices of DRINKER BIDDLE &
14      REATH, Two Logan Square, 18th & Cherry
15      Streets, Philadelphia, Pennsylvania
16      19103, commencing at 10:18 a.m., on the
17      above date, before Lori A. Zabielski, a
18      Registered Professional Reporter and
19      Notary Public in and for the Commonwealth
20      of Pennsylvania.
                    - - -
21              MAGNA LEGAL SERVICES
                    Seven Penn Center
22              1635 Market Street
                    8th Floor
23          Philadelphia, Pennsylvania 19103
                    866.624.6221
24

```
 1   APPEARANCES:
 2
 3   DRINKER BIDDLE & REATH, LLP
     BY:  MICHAEL F. BROWN, ESQUIRE
 4   One Logan Square
     18th & Cherry Streets
 5   Philadelphia, Pennsylvania  19103-6996
     215.988.2988
 6   (brownmf@dbr.com)
     (jeffrey.boerger@dbr.com)
 7   Representing OneBeacon America Insurance
     Company, Seaton Insurance Company,
 8   Government Employees Insurance Company,
     Columbia Insurance Company f/k/a Republic
 9   Insurance Company
10
11   CAPLIN & DRYSDALE, CHARTERED
     BY:  PETER VAN N. LOCKWOOD, ESQUIRE
12   One Thomas Circle N.W.
     Suite 1100
13   Washington, DC  20005
     202.862.7801
14   (pvnl@capdale.com)
     Representing Grace, Official Committee of
15   Asbestos Personal Injury Claimants
     ("ACC")
16
17
     ANDERSON KILL & OLICK, P.C.
18   BY:  ROBERT M. HORKOVICH, ESQUIRE*
              (*VIA TELECONFERENCE)
19   1251 Avenue of the Americas
     New York, New York 10020
20   212.278.1322
     (rhorkorvitz@andersonkill.com)
21   Representing the ACC
22
23
24
```

```
1    APPEARANCES (continued)
2
3    CAMPBELL & LEVINE, LLC
     BY:   MARK T. HURFORD, ESQUIRE*
4         (*VIA TELECONFERENCE)
     800 North King Street, Suite 300
5    Wilmington, Delaware  19801
     302.426.1900
6    (mhurford@camlev.com)
     Representing Official Committee of
7    Asbestos Personal Injury Claimants
8
9    KIRKLAND & ELLIS, LLP
     BY:   LISA G. ESAYIAN, ESQUIRE
10   300 North LaSalle Street
     Chicago, Illinois  60654
11   312.862.2226
     (lisa.esaylan@kirkland.com)
12   Representing the Debtors
13
14   SIMPSON THACHER & BARTLETT, LLP
     BY:   SAMUEL J. RUBIN, ESQUIRE*
15        (*VIA TELECONFERENCE)
     425 Lexington Avenue
16   New York, New York  10017-3954
     212.455.3122
17   (srubin@stblaw.com)
     Representing Travelers Casualty and
18   Surety Company
19
20   FORD MARRIN ESPOSITO & WITMEYER & GLESER
     BY:   ELIZABETH M. DeCRISTOFARO, ESQUIRE*
21        (*VIA TELECONFERENCE)
     Wall Street Plaza
22   New York, New York  10005-1875
     212.269.4900
23   Representing Continental Casualty Company
     and Continental Insurance Company
24
```

```
1    APPEARANCES (continued)
2
3    BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
     BY:   JEFFREY I. SNYDER, ESQUIRE*
4          (*VIA TELECONFERENCE)
     200 South Biscayne Boulevard
5    Suite 2500
     Miami, Florida  33131-5340
6    305.375.6148
     (jsnyder@bilzin.com)
7    Representing Property Damage Committee
8
9    STROOCK & STROOCK & LAVAN, LLP
     BY:   ARLENE G. KRIEGER, ESQUIRE*
10         (*VIA TELECONFERENCE)
     180 Maiden Lane
11   New York, New York  10038-4982
     212.806.5400
12   (akrieger@stroock.com)
     Representing Official Committee of
13   Unsecured Creditors
14
15   STEVENS & LEE, P.C.
     BY:   MARNIE E. SIMON, ESQUIRE
16   1818 Market Street, 29th Floor
     Philadelphia, Pennsylvania  19103-1702
17   215.751.2885
     (mes@stevenslee.com)
18   Representing Fireman's Fund Insurance
19
20   ALAN B. RICH LAW OFFICES
     BY:   ALAN B. RICH, ESQUIRE
21   Elm Place, Suite 4620
     1401 Elm Street
22   Dallas, Texas  75202
     214.744.5100
23   (arich@alanrichlaw.com)
     Representing Property Damage FCR
24
```

```
 1    APPEARANCES (continued)
 2
 3    ECKERT SEAMANS CHERIN & MELLOTT, LLC
      BY:   LAURA G. STOVER, ESQUIRE
 4    1747 Pennsylvania Avenue, NW
      12th Floor
 5    Washington, DC  20006
      202.659.6619
 6    (lstover@eckertseamans.com)
      Representing Maryland Casualty and Zurich
 7
 8
      WILEY REIN, LLP
 9    BY:   KARALEE C. MORELL, ESQUIRE*
            (*VIA TELECONFERENCE)
10    1776 K Street NW
      Washington, DC  20006
11    202.719.7520
      (kmorell@wileyrein.com)
12    Representing Maryland Casualty and Zurich
13
14    COZEN O'CONNOR
      BY:   ILAN ROSENBERG, ESQUIRE*
15          (*VIA TELECONFERENCE)
      1900 Market Street
16    Philadelphia, Pennsylvania  19103-3508
      215.665.2147
17    (irosenberg@cozen.com)
      Representing Federal Insurance Company
18
19
      ORRICK HERRINGTON & SUTCLIFFE, LLP
20    BY:   PERI N. MAHALEY, ESQUIRE
      Columbia Center
21    1152 15th Street, N.W.
      Washington, DC  20005-1706
22    202.339.8427
      (pmahaley@orrick.com)
23    Representing Future Claimants
      Representative
24
```

```
1     APPEARANCES (continued)
2
3     CUYLER BURK, P.C.
      BY:   EDWARD V. COLLINS, ESQUIRE*
4           (*VIA TELECONFERENCE)
      4 Century Drive
5     Parsippany, New Jersey  07054
      973.734.3200
6     (ecollins@cuyler.com)
      Representing Allstate Insurance Company
7
8
      WILSON ELSER MOSKOWITZ EDELMAN & DICKER,
9     LLP
      BY:   CARL PERNICONE, ESQUIRE*
10          (*VIA TELECONFERENCE)
      150 East 42nd Street
11    New York, New York  10017-5639
      212.915.5656
12    (carl.pernicone@wilsonelser.com)
      Representing Arrowood Indemnity Company
13
14
      GOODWIN PROCTER, LLP
15    BY:   MICHAEL S. GIANNOTTO, ESQUIRE*
            (*VIA TELECONFERENCE)
16    901 New York Avenue, N.W.
      Washington, DC  20001
17    202.346.4124
      (mgiannotto@goodwinprocter.com)
18    Representing CNA Insurance
19
20    KRAMER LEVIN NAFTALIS & FRANKEL, LLP
      BY:   GREGORY A. HOROWITZ, ESQUIRE*
21          (*VIA TELECONFERENCE)
      1177 Avenue of the Americas
22    New York, New York 10036
      212.715.9571
23    (ghorowitz@kramerlevin.com)
      Representing Official Committee of Equity
24    Holders
```

7

```
1                    -  -  -
2                   I N D E X
3                    -  -  -
4
5     Testimony of:    GEORGE L. PRIEST
6
7     By Mr. Lockwood        Page  09, 239
8     By Ms. Esayian         Page  213
9     By Mr. Brown           Page  233
10    By Mr. Pernicone       Page  234
11
12                   -  -  -
13                 E X H I B I T S
14                   -  -  -
15    NO.         DESCRIPTION          PAGE
16    Priest-1    Exhibit Book to First
                  Amended Joint Plan of
17                Reorganization and
                  Disclosure Statement as
18                of February 27, 2009    09
19    Priest-2    Debtors' Disclosure
                  Statement for the First
20                Amended Joint Plan of
                  Reorganization under
21                Chapter 11...           09
22    Priest-3    Certain Insurers' Notice
                  of Filing of the Expert
23                Report of Professor
                  George L. Priest        09
24                   -  -  -
```

```
1                    -- -  -

2            DEPOSITION SUPPORT INDEX

3                    -- -  -

4

5     Direction to Witness Not to Answer:

6     Page   Line          Page    Line

7     NONE

8

9

10    Request for Production of Documents:

11    Page   Line          Page    Line

12    NONE

13

14

15    Stipulations:

16    Page   Line          Page    Line

17    09     02

18

19

20    Area(s) Marked Confidential:

21    Page   Line          Page    Line

22    NONE

23

24
```

```
 1                    -   -   -

 2                    (It is hereby stipulated and

 3              agreed by and among counsel for

 4              the respective parties that the

 5              filing, sealing and certification

 6              of the deposition are waived; and

 7              that all objections, except as to

 8              the form of the question, will be

 9              reserved until the time of trial.)

10                    -   -   -

11                    (Exhibits Priest-1, 2, and 3

12              premarked for identification.)

13                    -   -   -

14              GEORGE L. PRIEST, after

15              having been first duly sworn, was

16              examined and testified as follows:

17                    -   -   -

18              EXAMINATION

19                    -   -   -

20    BY MR. LOCKWOOD:

21              Q.    Good morning, Professor

22    Priest.

23              A.    Good morning.

24              Q.    You have been deposed
```

1    before, correct?

2         A.    I have.

3         Q.    So I don't need to explain

4    the procedures and the process to you?

5         A.    I feel confident about the

6    procedures, unless you are trying

7    something new.

8         Q.    And if I ask you a question

9    that you don't understand, you will tell

10   me that you don't understand it and ask

11   me to rephrase it, if you would, please.

12        A.    Yes.  Thank you.  I will.

13        Q.    You understand that you have

14   prepared an expert report in this case?

15        A.    That's correct, I have.

16        Q.    And just for the record, the

17   case is In Re: W.R. Grace & Company, et

18   al, pending in the United States

19   Bankruptcy Court for the District of

20   Delaware?

21        A.    That's correct.

22        Q.    And I am going to be asking

23   you questions today about your report.  I

24   have premarked an exhibit as Priest

1            for.

2                    THE WITNESS:  No, it

3            wouldn't surprise me.  Is that

4            what the question was?  Would it

5            surprise me?

6    BY MS. ESAYIAN:

7            Q.   Yes.

8            A.   No.  It would not surprise

9    me.

10           Q.   In fact, is it your

11   understanding that Grace's insurers did

12   pay sums to defend and indemnify Grace in

13   property damage cases as well as in

14   personal injury cases?

15                   MR. BROWN:  Object to the

16           form.

17                   THE WITNESS:  That would be

18           my understanding, yes.

19   BY MS. ESAYIAN:

20           Q.   All right.  Now, you also

21   understand that there is an asbestos

22   Property Damage Claims Trust that is to

23   be established under this proposed Plan

24   of Reorganization?

1          A.    Yes, I have seen that.

2          Q.    Are you aware that the same

3    Grace insurance policies that afford

4    coverage for asbestos personal injury

5    claims also afford coverage for asbestos

6    property damage claims?

7          A.    Yes.

8          Q.    And are you aware that the

9    Asbestos Property Damage Trust is not

10   receiving any rights to those insurance

11   policies?

12         A.    I didn't know that, no.

13         Q.    Okay.  If you assume that,

14   that the Asbestos Property Damage Trust

15   is not receiving any rights to Grace's

16   insurance policies, is that an economic

17   benefit to Grace's insurers?

18              MR. BROWN:  Object to the

19         form.

20              THE WITNESS:  I don't know

21         the context at all of how that was

22         agreed to or how that was provided

23         or what was done there.  So I

24         can't really comment on that.

1               Again, I was asked -- I did

2          look at the entire Disclosure

3          Statement, but I was asked to

4          focus on the a personal injury

5          asbestos model or personal injury

6          claims.  And so I looked at the

7          property damage discussion, but I

8          didn't study it carefully.

9     BY MS. ESAYIAN:

10         Q.    Okay.  So you just can't

11    comment at all and you don't have any

12    opinions on whether the fact that the

13    Asbestos Property Damage Trust is not

14    going to be able to access Grace's

15    insurance provides any economic benefit

16    to Grace's insurers?

17         A.    I can't answer that.

18               MS. ESAYIAN:  Okay.  That's

19          all I have.  Thank you.

20               THE WITNESS:  Thank you.

21               MR. BROWN:  I have a couple

22          of questions.

23                    -  -  -

24               EXAMINATION

1

2      BY MR. BROWN:

3           Q.    Professor Priest, can you

4      take a look at Section 7.15 of the Plan,

5      specifically take a look at sections (a)

6      and (b), if you would.

7           A.    Okay.

8           Q.    Now, focusing on (b), on the

9      second line, there is a term that says

10     "beneficiaries of the Asbestos PI Trust."

11               Do you see that?

12          A.    Yes.

13          Q.    As a factual matter, do you

14     know whether any of Grace's insurers are

15     beneficiaries of the Asbestos PI Trust?

16          A.    I do not know that.

17          Q.    Okay.   Focusing on

18     subsection (h), again, as a factual

19     matter, do you know whether any of

20     Grace's insurers have claims against the

21     entities listed there, the Sealed Air

22     indemnified parties or the Fresenius

23     indemnified parties?

24          A.    I do not know that.

```
 1                    MR. BROWN:  Thank you.

 2                    MR. PERNICONE:  Michael,

 3               this is Carl Pernicone.  Does

 4               anybody have any follow-up

 5               questions on the phone?  I have

 6               just a few questions.

 7                    MR. BROWN:  You are on.

 8                         -- -- --

 9                    EXAMINATION

10                       -- -- --

11   BY MR. PERNICONE:

12          Q.    Mr. Priest, can you hear me?

13          A.    Yes, very well.  Thank you.

14          Q.    This is Carl Pernicone,

15   co-counsel for Arrowood Indemnity.  I

16   will try to be brief.

17                    I want to focus on your

18   testimony, Section 11.9, the exculpation

19   clause.  I believe you testified just a

20   few minutes ago that, while you didn't

21   address it in your report, it was your

22   opinion that it affected the insurers'

23   rights?

24                    Do you remember that
```

1    testimony?

2              MR. LOCKWOOD:  Well, I am

3         going to object to this line of

4         questioning because the case

5         management order contemplated that

6         expert reports were to be filed by

7         a specific date and contained all

8         of the experts' conclusions, et

9         cetera.

10             An while Professor Priest

11        may after that deadline in reading

12        some documents come up with some

13        additional opinions, I don't

14        believe that they are properly

15        subject to either the case

16        management ordered deadline for

17        being included as part of his

18        testimony in this case, and,

19        therefore, I don't believe they

20        are proper subjects for a

21        deposition.

22             MR. PERNICONE:  Okay.  Your

23        objection is noted, Mr. Lockwood.

24   BY MR. PERNICONE:

1          Q.    I just want to follow up on

2    that testimony.

3                 Do you remember giving that

4    testimony?

5          A.    Yes, I do.

6          Q.    Here is my first follow-up

7    question:  Based on your review of the

8    Plan, is it your understanding that

9    Section 11.9 purports to release claims,

10   including claims insurers might have

11   against a number of Non-Debtors?

12         A.    Yes, that's how I read it.

13         Q.    Okay.  Now, you testified

14   earlier that you had reviewed the Plan

15   carefully.

16                Do you remember that?

17         A.    Yes.

18         Q.    In the course of that

19   careful review of the Plan, did you come

20   across any provision that would purport

21   to compensate insurers for the release

22   under Section 11.9 of any claims that

23   they might have against Non-Debtors?

24                MR. LOCKWOOD:    Same

1          objection.

2                    THE WITNESS:  No, I did not.

3     BY MR. PERNICONE:

4          Q.   Okay.  In your expert

5     opinion, Professor, would there be any

6     economic implications for insurers if any

7     claims they might have against

8     Non-Debtors are released pursuant to

9     Section 11.9?

10                   MR. LOCKWOOD:  Same

11              objection.

12                   THE WITNESS:  Yes, there are

13              economic implications.

14    BY MR. PERNICONE:

15         Q.   Okay.  Could you describe

16    for us what those economic implications

17    would be?

18                   MR. LOCKWOOD:  Can I have a

19              standing objection to testimony

20              about this subject rather than

21              having to interject?

22                   MR. PERNICONE:  Absolutely,

23              Mr. Lockwood.

24                   MR. LOCKWOOD:  Thank you.

```
 1                    MR. PERNICONE:  Could the
 2             reporter just read back my last
 3             question?
 4                    THE WITNESS:  I remember it.
 5   BY MR. PERNICONE:
 6             Q.   Okay.
 7             A.    The economic implications,
 8   whatever those claims are, are released
 9   by this exculpation clause.  And so if
10   the claims had merit or had value, that
11   value that is been eliminated by this
12   provision.
13                    MR. PERNICONE:  Thank you,
14             Professor.  I have no further
15             questions.
16                    MR. LOCKWOOD:  Well, given
17             the lack of assurance that my
18             objections to this line of
19             questioning will be upheld, I am
20             going to conditionally ask a few
21             follow-up questions on
22             Mr. Pernicone's line of questions.
23                     -  -  -
24                    EXAMINATION
```

1                   -  -  -

2    BY MR. LOCKWOOD:

3         Q.    Do you have Section 11.9 of

4    the Plan before you in Priest Exhibit-1,

5    Professor Priest?

6         A.    I do.

7         Q.    Could you tell us for the

8    record your understanding of what claims

9    are being, as you put it, released by

10   this provision?

11        A.    Well, I don't have specific

12   claims in mind, but the provision must

13   have some meaning for an able person like

14   you to have put it in the Plan.

15               It refers to any claims with

16   regard to liability for any act or

17   omission in connection with or arising

18   out of the Chapter 11 cases, including

19   the negotiation under this Plan or the

20   settlements provided, and it goes on in

21   that regard.

22               I don't know what the claims

23   might be, but if the provision eliminates

24   liability for all of those actions, then

240

 1    whatever claims there might have been

 2    are, as I said, released or, to use your

 3    term, vitiated.

 4            Q.    Well, first, as your answer

 5    indicated, the claims covered by this

 6    exculpation provision are for acts or

 7    omissions in connection with or arising

 8    out of the Chapter 11 cases, correct?

 9                    MR. PERNICONE: , objection,

10            mischaracterizes his testimony.

11                    THE WITNESS:  Well, that's

12            first, yes, including.  And then

13            it goes on.  It's a long sentence.

14    BY MR. LOCKWOOD:

15            Q.    But under normal corporate

16    drafting principles, doesn't the word

17    "including" refer to subsets of claims as

18    opposed to additional claims?

19                    MR. PERNICONE:  Same

20            objection.

21                    THE WITNESS:  Well, again,

22            the way I read it is it says,

23            first, "in connection with or

24            arising out of the Chapter 11

1           Cases."  Now, if all the rest

2           refers to the Chapter 11 cases,

3           which is including the negotiation

4           of this Plan or the settlements --

5           then it says, "or the settlements

6           provided in the Sealed Air

7           Settlement Agreement and the

8           Fresenius Settlement Agreement"

9           that's part of the Chapter 11

10          cases, then it is.

11                The pursuit of confirmation

12          of this Plan, again, that would

13          seem to be additive, although

14          maybe that's incorporated in -- I

15          didn't look up how the term

16          "Chapter 11 Cases," which is

17          initial capped, is defined.

18                Maybe all of these

19          subsequent clauses are captured by

20          the term "Chapter 11 Cases."  In

21          that case, it's captured by the

22          term "Chapter 11 Cases."  Not

23          knowing and not cross-checking the

24          definition of Chapter 11 cases, it

242

1          seemed to me that these later

2          clauses may be additive.

3     BY MR. LOCKWOOD:

4          Q.   Well, are you aware, for

5     example, that the Sealed Air Settlement

6     Agreement and the Fresenius Settlement

7     Agreement related to adversary

8     proceedings that the ACC and the Property

9     Damage Committee had filed against those

10    folks in this bankruptcy case?

11         A.   I believe I knew that from

12    reading the Disclosure Statement, yes.

13         Q.   So if Chapter 11 cases

14    includes this bankruptcy case, then

15    wouldn't those settlements be in

16    connection with or arising out of the

17    Chapter 11 case?

18              MR. PERNICONE:   Objection to

19         form.

20              THE WITNESS:   It could be.

21         If it's so clear, what the term

22         "Chapter 11 Cases" means, I don't

23         know why we have all of this to

24         follow.

```
 1                    It goes on to say, "or the

 2              administration of this Plan or the

 3              property to be distributed under

 4              this Plan so long as, in each case

 5              such action, or failure to act,

 6              did not constitute gross

 7              negligence or willful misconduct."

 8                    If the administration of

 9              this Plan is part of the Chapter

10              11 cases, then I will concede the

11              point.  I will again ask you as a

12              drafter, why do you need to put

13              all that in?

14   BY MR. LOCKWOOD:

15        Q.    Not to put too fine a point

16   on it, Professor Priest, you have

17   absolutely no idea whether there would be

18   any factual or legal justification for

19   any insurer to file any claim against any

20   of the parties listed in Section 11.9, do

21   you?

22        A.    The only knowledge that I

23   have about a factual or legal

24   justification is having read, as I
```

1    mentioned, lots of plans in the context

2    of asbestos bankruptcies and in the

3    context of other legal matters.  A

4    provision like this is not introduced if

5    there is no possibility of any legal or

6    factual justification for a lawsuit

7    against the parties who are released --

8    or exculpated in the first five lines of

9    the provision.

10            But you are quite right.  I

11   have no factual -- I haven't studied this

12   at all.

13        Q.    This provision, which

14   Mr. Pernicone got you to say. included

15   insurers --

16            MR. PERNICONE:  Objection as

17        to form.

18   BY MR. LOCKWOOD:

19        Q.    -- is not limited to

20   insurers, is it?

21            MR. PERNICONE:  Objection as

22        to form.

23            THE WITNESS:  I don't think

24        it's limited as to insurers, no.

```
 1   BY MR. LOCKWOOD:

 2          Q.   So, as far as you know, the

 3   purpose of this provision being inserted

 4   in this Plan might have to do with all

 5   sort of claims that have nothing

 6   whatsoever to do with insurers?

 7              MR. PERNICONE:  Objection to

 8          form.  It's a hypothetical.  No

 9          foundation.

10   BY MR. LOCKWOOD:

11          Q.   Correct?

12          A.   It might.  I don't know.  It

13   certainly doesn't except the insurers

14   from the operation of the provision.  If

15   insurers have no factual -- no possible

16   factual or legal justification for a

17   claim against these entities, then except

18   them from the operation of the provision,

19   and that will calm them down.

20              MR. LOCKWOOD:  No further

21          questions.

22              MR. PERNICONE:  No further

23          questions.

24              (The deposition concluded at
```

246

1          4:05 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
1                    CERTIFICATE
2
3
4          I HEREBY CERTIFY that the witness
5     was duly sworn by me and that the
6     deposition is a true record of the
7     testimony given by the witness.
8
9
10
11
12    _____
3           Lori A. Zabielski
14          Registered Professional Reporter
15          Dated:  MAY 8, 2009
16
17
18
19
20               (The foregoing certification
21    of this transcript does not apply to any
22    reproduction of the same by any means,
23    unless under the direct control and/or
24    supervision of the certifying reporter.)
```

```
1            INSTRUCTIONS TO WITNESS
2
3            Please read your deposition over
4       carefully and make any necessary
5       corrections.  You should state the reason
6       in the appropriate space on the errata
7       sheet for any corrections that are made.
8            After doing so, please sign the
9       errata sheet and date it.
10      You are signing same subject to the
11      changes you have noted on the errata
12      sheet, which will be attached to your
3       deposition.
14           It is imperative that you return
15      the original errata sheet to the deposing
16      attorney within thirty (30) days of
17      receipt of the deposition transcript by
18      you.  If you fail to do so, the
19      deposition transcript may be deemed to be
20      accurate and may be used in court.
21
22
23
24
```

```
 1              -   -   -   -   -   -

 2                  E  R  R  A  T  A

 3              -   -   -   -   -   -

 4    PAGE    LINE   CHANGE

 5    _____  _____  _____

 6    _____  _____  _____

 7    _____  _____  _____

 8    _____  _____  _____

 9    _____  _____  _____

10    _____  _____  _____

11    _____  _____  _____

12    _____  _____  _____

 3    _____  _____  _____

14    _____  _____  _____

15    _____  _____  _____

16    _____  _____  _____

17    _____  _____  _____

18    _____  _____  _____

19    _____  _____  _____

20    _____  _____  _____

21    _____  _____  _____

22    _____  _____  _____

23    _____  _____  _____

24    _____  _____  _____
```

-

```
1              ACKNOWLEDGEMENT OF DEPONENT

2              I, _____, do

3    hereby certify that I have read the

4    foregoing pages,   1-    PGS, and that

5    the same is a correct transcription of

6    the answers given by me to the questions

7    therein propounded, except for the

8    correction or changes in form or

9    substance, if any, noted in the attached

10   Errata Sheet.

11

12   _____

     WITNESS NAME              DATE

13

14

15

16

17   Subscribed and sown

18   to before me this

19   _____ day of _____, 20_____.

20   My commission expires:

21   _____.

22

23   _____

     Notary Public

24
```