# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

---------------------------X

In Re:                          Chapter 11

                                Case No.

                                01-01139 JKF

W.R. Grace & Co., et al.,

                                (Jointly

            Debtors.            Administered)

---------------------------X

- - -

May 6, 2009

- - -

DEPOSITION of JEFFREY POSNER, held

at the offices of Kirkland & Ellis, 655

Fifteenth Street, N.W., Washington, DC,

commencing at 9:08 A.M., on the above

date, before Lisa Lynch, a Registered

Merit Reporter, New Jersey Certified Court

Reporter, License No. XI00825, and

Certified Realtime Reporter

- - -

MAGNA LEGAL SERVICES, LLP

7 Penn Center, 8th Floor

1635 Market Street

Philadelphia, PA   19103

1.866.MAGNA.21

```
 1   A P P E A R A N C E S:
 2
     DRINKER BIDDLE & REATH, LLP
 3   BY:   MICHAEL F. BROWN, ESQUIRE
     One Logan Square
 4   18th and Cherry Streets
     Philadelphia, Pennsylvania 19103-6996
 5   (brownmf@dbr.com)
     Representing OneBeacon America Insurance
 6   Company, Seaton Insurance Company,
     Government Employees Insurance Company,
 7   Columbia Insurance Company f/k/a Republic
     Insurance Company
 8
 9   ANDERSON KILL & OLICK, PC
     BY:   ROBERT M. HORKOVICH, ESQUIRE
10   1251 Avenue of the Americas
     New York, New York 10020
11   212.278.1322
     (rhorkovich@andersonkill.com)
12   Representing Grace, Official Committee of
     Asbestos Personal Injury Claimants ("ACC")
13
14   W.R. GRACE & CO.
     BY:   RICHARD C. FINKE, ESQUIRE*
15         ASSISTANT GENERAL COUNSEL
           (*VIA TELECONFERENCE)
16   5400 Broken Sound Boulevard, NW
     Suite 300
17   Boca Raton, Florida 33487
     561.362.1533
18   Representing W.R. Grace & Co.
19
     KIRKLAND & ELLIS, LP
20   BY:   LISA G. ESAYIAN, ESQUIRE
     300 North LaSalle Street
21   Chicago, Illinois 60654
     312.862.2226
22   (lisa.esayian@kirkland.com)
     Representing the Debtors
23
24
```

```
 1   A P P E A R A N C E S: (continued)
 2   SIMPSON THACHER & BARTLETT, LLP
     BY:  MARY BETH FORSHAW, ESQUIRE
 3   425 Lexington Avenue
     New York, New York 10017-3954
 4   212.455.2846
     (mbforshaw@stblaw.com)
 5   Representing Travelers Casualty and Surety
     Company
 6
 7   VORYS, SATER, SEYMOUR AND PEASE, LLP
     BY:  WILLIAM J. POHLMAN, ESQUIRE
 8   52 East Gay Street
     Columbus, Ohio 43215
 9   614.464.8349
     (wjpohlman@vorys.com)
10   Representing The Scotts Company, LLC
11
     COHN WHITESELL & GOLDBERG, LLP
12   BY:  DANIEL C. COHN, ESQUIRE
     101 Arch Street
13   Boston, Massachusetts 02110
     617.951.2505
14   (cohn@cwgll.com)
     Representing the Libby Claimants
15
16   LEWIS, SLOVAK & KOVACICH, PC
     BY:  MARK M. KOVACICH, ESQUIRE
17   P.O. Box 2325
     723 Third Avenue
18   Great Falls, Montana 59403
     406.761.5595
19   mark@lsklaw.net
     Representing the Libby Claimants
20
21   SPEIGHTS & RUNYAN
     BY:  DANIEL H. SPEIGHTS, ESQUIRE*
22        (*VIA TELECONFERENCE)
     200 Jackson Avenue East
23   P.O. Box 685
     Hampton, South Carolina 29924
24   803.943.4444
```

```
 1   Representing Anderson Memorial Hospital
 2   A P P E A R A N C E S: (continued)
 3
     MENDES & MOUNT, LLP
 4   BY:  CAROLINA ACEVEDO, ESQUIRE
     750 Seventh Avenue
 5   New York, New York 10019
     212.261.8262
 6   (carolina.acevedo@mendes.com)
     Representing AXA Belgium as Successor to
 7   Royale Belge SSA
 8
     MENDES & MOUNT, LLP
 9   BY:  ALEXANDER MUELLER, ESQUIRE
     750 Seventh Avenue
10   New York, New York 10019
     212.261.8296
11   (alexander.mueller@mendes.com)
     Representing London Market Companies
12
13   FORD MARRIN ESPOSITO & WITNEYER & GLESER
     BY:  ELIZABETH M. DeCRISTOFARO, ESQUIRE
14   Wall Street Plaza
     New York, New York 10005-1875
15   212.269.4900
     Representing Continental Casualty Company
16   and Continental Insurance Company
17
     BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
18   BY:  MATTHEW I. KRAMER, ESQUIRE*
             (*VIA TELECONFERENCE)
19   200 South Biscayne Boulevard
     Suite 2500
20   Miami, Florida 33131-5340
     305.450.7246
21   (mkramer@bilzin.com)
     Representing Property Damage Committee
22
23
24
```

```
 1   A P P E A R A N C E S: (continued)
 2
     STROOCK & STROOCK & LAVAN, LLP
 3   BY:   ARLENE G. KRIEGER, ESQUIRE*
             (*VIA TELECONFERENCE)
 4   180 Maiden Lane
     New York, New York 10038-4982
 5   212.806.5400
     (akrieger@stroock.com)
 6   Representing Official Committee of
     Unsecured Creditors
 7
 8   CROWELL & MORING, LLP
     BY:   PATRICIA CONNALLY, ESQUIRE
 9   1001 Pennsylvania Avenue, N.W.
     Washington, DC 20004-2595
10   202.624.2913
     (pconnally@crowell.com)
11   Representing Fireman's Fund Insurance
     (Surety Bond)
12
13   STEVENS & LEE, P.C.
     BY: JOHN D. DEMMY, ESQUIRE*
14        (*VIA TELECONFERENCE)
     1105 North Market Street, 7th Floor
15   Wilmington, Delaware 19801
     302.654.5180
16   (jdd@stevenslee.com)
     Representing Fireman's Fund Insurance
17
18   LAW OFFICES OF ALAN B. RICH
     BY:   ALAN B. RICH, ESQUIRE
19   Elm Place, Suite 4620
     1401 Elm Street
20   Dallas, Texas 75202
     214.744.5100
21   (arich@alanrichlaw.com)
     Representing Property Damage PCR
22
23
24
```

```
 1   A P P E A R A N C E S: (continued)
 2
     CONNOLLY BOVE LODGE & HUTZ, LLP
 3   BY:   JEFFREY C. WISLER, ESQUIRE
     The Nemours Building
 4   1007 North Orange Street
     P.O. Box 2207
 5   Wilmington, Delaware 19899
     302.888.6528
 6   (jwisler@cblh.com)
     Representing Maryland Casualty
 7
 8   ECKERT SEAMANS CHERIN & MELLOTT, LLC
     BY:   EDWARD J. LONGOSZ, II, ESQUIRE
 9   1747 Pennsylvania Avenue, N.W.
     12th Floor
10   Washington, DC 20006
     202.659.6619
11   (elongosz@eckertseamans.com)
     Representing Maryland Casualty and Zurich
12
13   WILEY REIN, LLP
     BY:   KARALEE C. MORELL, ESQUIRE
14   1776 K Street NW
     Washington, DC 20006
15   202.719.7520
     (kmorell@wileyrein.com)
16   Representing Maryland Casualty and Zurich
17
     COZEN O'CONNOR
18   BY:   ILAN ROSENBERG, ESQUIRE*
           (*VIA TELECONFERENCE)
19   1900 Market Street
     Philadelphia, Pennsylvania 19103-3508
20   215.665.4621
     (irosenberg@cozen.com)
21   Representing Federal Insurance Company
22
23
24
```

```
 1   A P P E A R A N C E S: (continued)
 2
 3   ORRICK HERRINGTON & SUTCLIFFE, LLP
     BY:   JONATHAN P. GUY, ESQUIRE
 4         PERI N. MAHALEY, ESQUIRE
     Columbia Center
 5   1152 15th Street, N.W.
     Washington, DC 20005-1706
 6   202.339.8516
     (jguy@orrick.com)
 7   (pmahaley@orrick.com)
     Representing PI Future Claimants'
 8   Representative
 9
     CUYLER BURK, P.C.
10   BY:   ANDREW CRAIG, ESQUIRE*
           (*VIA TELECONFERENCE)
11   4 Century Drive
     Parsippany, New Jersey 07054
12   973.734.3200
     (acraig@cuyler.com)
13   Representing Allstate Insurance Company
14
     WILSON ELSER MOSKOWITZ
15   EDELMAN & DICKER, LLP
     BY:   CARL J. PERNICONE, ESQUIRE
16   150 East 42nd Street
     New York, New York 10017-5639
17   212.915.5656
     (carl.pernicone@wilsonelser.com)
18   Representing Arrowood Indemnity Company
19
     O'MELVENY & MEYERS LLP
20   BY:   TANCRED SCHIAVONI, ESQUIRE
     7 Times Square
21   New York, New York 10036
     212.326.2267
22   (tschiavoni@omm.com)
     Representing Arrowood Indemnity Company
23
24
```

```
 1   A P P E A R A N C E S: (continued)
 2
     WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
 3   BY:   KEVIN J. MANGAN, ESQUIRE*
             (*VIA TELECONFERENCE)
 4   222 Delaware Avenue
     Suite 1501
 5   Wilmington, Delaware 19801
     302.252.4361
 6   (kmangan@wcsr.com)
     Representing State of Montana
 7
 8   PEPPER HAMILTON, LLP
     BY: LINDA J. CASEY, ESQUIRE*
 9       (*VIA TELECONFERENCE)
     3000 Two Logan Square
10   Philadelphia, Pennsylvania 19103
     215.981.4000
11   (caseyl@pepperlaw.com)
     Representing BNSF Railway Company
12
13
     ALSO   PRESENT:
14
     ALLEN SCHWARTZ, O'Melveny & Meyers LLP
15                        —   —   —
16
17
18
19
20
21
22
23
24
```

```
1                    INDEX
                  EXAMINATION
2
   Witness Name                    Page
3  JEFFREY POSNER
4     BY MS. FORSHAW             14
5     BY MR. KOVACICH           108
6     BY MR. MUELLER            229
7     BY MS. CASEY              236
8     BY MR. LONGOZ             256
9     BY MR. BROWN              269
10    BY MS. DeCRISTOFARO       294, 338
11    BY MR. SCHIAVONI          308, 334
12    BY MR. POHLMAN            314
13    BY MR. SPEIGHTS           339
14                  EXHIBITS
15 EXHIBIT                             ID
16 Exhibit 1                           14
      Notice of Deposition of Jeffery
17    Posner
18 Exhibit 2                           14
      Curriculum vitae of Jeffery M.
19    Posner
20 Exhibit 3                           14
      Affidavit Under 11 USC 327(e)
21
   Exhibit 4                           41
22    Asbestos Settlement Agreement
      between W.R. Grace & Company-Conn.
23    and the Aetna Casualty & Surety
      Company dated May 12th, 1996
24
```

```
 1                    EXHIBITS
     EXHIBIT                            ID
 2
     Exhibit 5                          68
 3       Exhibit 4 to Exhibit Book Trust
         Distribution Procedures
 4
     Exhibit 6                          82
 5       First Amended Joint Plan of
         Reorganization
 6
     Exhibit 7                          96
 7       Agreement between W.R. Grace &
         Company-Connecticut and the
 8       Travelers Casualty & Surety
         Company dated February 20, 1992
 9
     Exhibit 8                          106
10       Exhibit 19 to Exhibit Book,
         Retained Causes of Action
11
     Exhibit 9                          113
12       Answer, Cross-claims and
         Counterclaims of Defendant W.R.
13       Grace in re: Maryland Casualty v.
         Grace, et al.
14
     Exhibit 10                         118
15       Royal Indemnity Company
         declaration sheets and
16       endorsements SA-870, 891, 939,
         945-946
17
     Exhibit 11                         137
18       Letter dated December 9, 1999 to
         Royal & SunAlliance from Marsh USA
19
     Exhibit 12                         143
20       Letter dated January 12, 2000 from
         Royal and SunAlliance to J.M.
21       Posner, Inc., two pages
22   Exhibit 13                         196
         E-mail string between Janet Baer
23       and Dan Cohn, three pages
24
```

```
1                         EXHIBITS
     EXHIBIT                                    ID
2
     Exhibit 14                                 216
3        Monthly asbestos litigation
         summary Bates stamped 91-1614
4        through 1639
5    Exhibit 15                                 270
         Settlement agreement Bates stamped
6        OB 1 through 33
7    Exhibit 16                                 273
         Settlement Agreement and Release
8        Bates stamped OB 34 through 66
9    Exhibit 17                                 277
         Settlement Agreement and Release
10       Bates stamped OB 67 through 92
11   Exhibit 18                                 279
         Settlement Agreement, Release and
12       Indemnification/Hold Harmless
         Agreement Bates stamped SEA 1
13       through 16
14   Exhibit 19                                 280
         Settlement Agreement, Release and
15       Indemnification/Hold Harmless
         Agreement Bates stamped SEA 17
16       through 31
17   Exhibit 20                                 283
         Settlement Agreement, Release and
18       Indemnification/Hold Harmless
         Agreement Bates stamped SEA 32
19       through 47
20   Exhibit 21                                 285
         Settlement Agreement & Release
21       Bates stamped SEA 48 through 61
22   Exhibit 22                                 294
         LexisNexis printout in re:
23       Maryland Casualty v. Grace, et al.
24
```

```
 1                    EXHIBITS

    EXHIBIT                              ID

 2

    Exhibit 23                          317

 3      Exhibit 6 to Exhibit Book,

        Asbestos Insurance Transfer

 4      Agreement

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18           .

19

20

21

22

23

24           .
```

```
 1              DEPOSITION SUPPORT INDEX
 2

    Direction to Witness Not To Answer
 3   Page    Line       Page    Line
     209     1          239     6
 4

    Request For Production of Documents
 5   Page    Line       Page    Line
     142     11         149     24
 6   169     18
 7   Stipulations
     Page    Line       Page    Line
 8   (None)
 9   Questions Marked
     Page    Line       Page    Line
10   (None)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

```
 1                    (Notice of Deposition of
 2           Jeffery Posner received and marked
 3           for identification as Posner
 4           Exhibit 1.)
 5                    (Curriculum vitae of
 6           Jeffery M. Posner received and
 7           marked for identification as Posner
 8           Exhibit 2.)
 9                    (Affidavit Under 11 USC
10           327(e) received and marked for
11           identification as Posner Exhibit
12           3.)
13
14   J E F F R E Y    P O S N E R,
15           having been sworn by the Notary
16           Public of the States of New York
17           and New Jersey, was examined and
18           testified as follows:
19
20   EXAMINATION BY
21   MS. FORSHAW:
22           Q.    Good morning. Mr. Posner.
23           A.    Good morning.
24           Q.    Good to see you again. I
```

```
 1   recollection of the conversation.  That's,
 2   you know, more than nine years ago.
 3          Q.    For example --
 4          A.    I'm not saying it didn't
 5   happen.  I just don't have a
 6   recollection.
 7          Q.    For example, the first line
 8   on this letter references a December 10
 9   telephone conversation between yourself
10   and John Pizetoski.  Do you see that?
11          A.    Yes, I do.
12          Q.    Do you remember talking to
13   Mr. Pizetoski about the applicability of
14   Royal's coverage for claims arising in
15   Libby in 1999?
16          A.    I don't have a specific
17   recollection.  I mean, I know John
18   Pizetoski.  I just simply don't have a
19   recollection of this specific
20   conversation.  Again, it was more than
21   nine years ago.
22          Q.    Do you recall making a
23   demand on Royal in the 1999-2000 time
24   frame for coverage with specific reference
```

1    **to asbestos injury claims arising in**
2    **Libby, Montana?**

3          A.    Let me say -- let me answer
4    it this way:  I would not have made a
5    demand -- well, to the extent the letter
6    went to them, it would have gone to them
7    in error or just as a matter of routine.
8    But the reality is, is that since I had
9    negotiated the 1995 agreement, I knew that
10   Grace had released all asbestos-related
11   claims which would encompass the Libby
12   claims so I would not have made a demand
13   upon them to the extent we sent them a
14   letter providing information because it
15   simply went to them as a matter of
16   routine.  Had I gotten a phone call, I
17   probably would have told Royal that, yeah,
18   I mean, I agree with them that the claims
19   were released.

20          Q.    Do you agree with me that
21   **based on Exhibit 11 it certainly appears**
22   **that you made a demand for coverage on**
23   **somebody with reference to the Libby**
24   **claims in 1999?**

```
 1                    MS. ESAYIAN: Objection to

 2          form.

 3                    MR. SCHIAVONI: Objection,

 4          calls for speculation and I think

 5          ·  this is also a document speaks for

 6          itself objection.

 7          A.    Well, I mean, I think if

 8   you look at the December 9 letter, it's

 9   not a demand.  It's simply a notice of

10   claim.  So I don't -- I mean, I don't see

11   it as a demand.  It's a notice of

12   potential loss.  But, again, I mean, as I

13   indicated before, because I negotiated the

14   agreement, you know, I knew that we had

15   released those claims.

16          Q.    Can you think of any reason

17   that you would provide a notice of

18   potential loss to an insurance company

19   that you do not believe has coverage

20   applicable to the loss?

21                    MR. SCHIAVONI: Objection,

22          asked and answered.

23          A.    What had happened at Grace

24   was that we were getting in so many claims
```

1    and we were involved with so many

2    insurance carriers and I always had this

3    concern about missing an insurance carrier

4    that owed us an obligation so I had always

5    instructed the broker that whenever we got

6    claims in to simply send them to everybody

7    on the list, and that list included

8    companies that Grace had settled with and

9    then I indicated to them I would sort it

10   out later.

11              I didn't, you know, want an

12   insurance company to come back to me and

13   say that we failed to notify them of a

14   claim through some inadvertent error so I

15   went through the extra precaution of

16   notifying all carriers, even those with

17   whom we had settled, just to preclude a

18   claim by some carrier that we may have

19   inadvertently missed.

20         Q.    Did you ever take the

21   position at any time after the 1995

22   settlement agreement on behalf of Grace

23   that Royal had an obligation to cover

24   claims for personal injury from asbestos

1    **exposure arising out of Libby, Montana?**

2              A.    No, I don't recall I ever

3    did, nor would I, because, again, I

4    negotiated the agreement.  I understood

5    how the release worked.  Despite the fact

6    that there may be letters going to Royal

7    at various points in time, I had always

8    understood that the claims were released

9    by the agreement and I never made a demand

10   upon Royal nor did I ever have any

11   discussions with them claiming

12   otherwise.

13             Q.    **Did you ever take the**

14   **position on behalf of Grace at any time**

15   **after the 1995 settlement agreement was**

16   **entered into that the settlement agreement**

17   **did not release claims for premises**

18   **coverage as opposed to products**

19   **coverage?**

20             A.    I -- my recollection -- I

21   don't have the agreement in front of me.

22   My recollection of the agreement is that

23   we gave them two releases.  We gave them a

24   complete products release and we gave them

1    what I'm going to call an asbestos-related

2    release, and the asbestos-related release

3    encompassed not only asbestos products

4    claims but asbestos premises claims.

5            **Q.    Do you recall any further**

6    **discussions about Royal's obligation to**

7    **provide coverage to Grace for the Libby**

8    **claims subsequent to the letter marked as**

9    **Exhibit 12?**

10           A.    I'm sorry.  Conversations

11   with Royal?

12           **Q.    Conversations or**

13   **correspondence with Royal.**

14           A.    I don't have any

15   recollection of corresponding with Royal.

16   Again, Royal may have gotten, you know,

17   letters from Grace as a matter of routine

18   when claims came in but I certainly never

19   had any substantive discussions with them

20   claiming that they owed coverage for

21   asbestos-related claims because, again, I

22   knew that we had released them as part of

23   the 1995 agreement.

24                    MR. KOVACICH:   For the

```
 1              MS. ESAYIAN:  Is anyone
 2         else in the room going to ask
 3         questions after Tanc because, if
 4         not, then I think Matt might want
 5         to get a heads up with Dan Speights
 6         that we're getting close.
 7                   (Off the record.)
```

```
 8    EXAMINATION BY
 9    MR. SCHIAVONI:
10         Q.    Mr. Posner, were you
11    personally involved in the negotiations of
12    the 1995 Grace-Royal settlement
13    agreement?
14         A.    Yes.
15         Q.    Is it fair to say that you
16    participated directly in the negotiation
17    of the 1995 Grace-Royal settlement
18    agreement?
19         A.    Yes.
20         Q.    Was the 1995 Grace-Royal
21    settlement agreement the product of
22    negotiations between Grace and Royal?
23         A.    Yes.
24         Q.    Did the negotiations
```

1    between Grace and Royal over the 1995

2    settlement agreement span over a period of

3    time?

4         A.    Yes.

5         Q.    Can you tell us

6    approximately how long those negotiations

7    took place over?

8         A.    I can't.  I mean, we had

9    preliminary discussions which broke down

10   and subsequent discussions but, I mean, it

11   could have been more than a year.  I mean,

12   I don't really remember, sitting here

13   today.

14        Q.    It's fair to say that the

15   negotiation of the Grace-Royal settlement

16   agreement wasn't something that took place

17   over a day or two days, right?

18        A.    It was certainly longer

19   than that period of time, yes.

20        Q.    Is it fair to say that the

21   negotiations of the Grace-Royal settlement

22   agreement took place over a period of at

23   least months?

24        A.    To my recollection, that's

```
 1   a fair statement but I don't recall
 2   specifically.
 3              Q.    Were the negotiations of
 4   the 1995 Grace-Royal settlement agreement
 5   conducted at arm's length between Grace
 6   and Royal?
 7              MR. COHN:   Object to
 8         form.
 9         A.    And by arm's length you
10   mean?
11              Q.    That it was an arm's length
12   negotiation, that there were -- you had no
13   control over each other, you acted on
14   behalf of your own interests and not on
15   behalf of anyone else's interests.
16         A.    I think that's a fair
17   statement, yes.
18              Q.    Was the 1995 Grace-Royal
19   settlement agreement negotiated by Grace
20   in good faith?
21         A.    Yes.
22              Q.    Do you have any reason to
23   believe that the 1995 Grace-Royal
24   settlement agreement was not negotiated in
```

 1  good faith by the Royal folks?

 2          A.   No.

 3          Q.   Did you, Mr. Posner, do

 4  your best as part of the negotiation of

 5  the 1995 Grace-Royal settlement agreement

 6  to obtain as large a settlement payment as

 7  possible from Royal?

 8          A.   Yes.

 9          Q.   Did you, Mr. Posner, do

10  your best as part of the 1995 Grace-Royal

11  settlement negotiations to try to obtain

12  the best possible terms for Grace from

13  Royal?

14          A.   Yes.

15          Q.   Did Grace do due diligence

16  on the coverage that was allegedly issued

17  by Royal as part of the negotiations of

18  the 1995 Grace-Royal settlement

19  agreement?

20          A.   Yes.

21          Q.   And were you personally

22  involved in those due diligence efforts,

23  Mr. Posner?

24          A.   Yes.

1          Q.    And did the due diligence

2     efforts that were done by Grace include a

3     review of the policies and the terms of

4     the policies allegedly issued by Royal?

5          A.    Yes.

6          Q.    Counsel for the Libby

7     claimants asked you some questions about

8     what he referred to as premises/operations

9     coverage.  Do you remember generally that

10    line of questioning?

11         A.    Yes, I do.

12         Q.    Were you aware at the time

13    that you negotiated the 1995 Grace-Royal

14    settlement agreement that there was

15    possible coverage for certain types of

16    asbestos bodily injury claims under the

17    premises/operations provisions of the

18    Royal policies?

19         A.    Yes.

20         Q.    The counsel for the Libby

21    claimants also asked you some questions

22    where I guess he suggested that there

23    might be no aggregate limits for the

24    premises/operations portions of the

```
 1    coverage under the Royal policies.  Do you
 2    remember generally those questions?
 3          A.    Yes, I do.
 4          Q.    Were you aware at the time
 5    that you negotiated the 1995 Grace-Royal
 6    settlement agreement that there was a
 7    possibility that there might be no
 8    aggregate limits for certain asbestos
 9    bodily injury claims under the
10    premises/operations provisions of the
11    Royal policies?
12          A.    I was aware of that, yes.
13          Q.    Was the settlement
14    payment -- the 1995 Royal -- Grace-Royal
15    settlement agreement, it required that a
16    settlement payment be made to Grace.  Is
17    that right?
18          A.    Yes.
19          Q.    Was the settlement payment
20    that was required under the 1995
21    Grace-Royal settlement agreement actually
22    paid to Grace?
23          A.    Yes.
24          Q.    And was the settlement
```

```
 1   amount that was due under the 1995
 2   Grace-Royal settlement agreement paid in
 3   full to Grace?
 4           A.    Yes.
 5                 MR. SCHIAVONI:   Thank you
 6           very much, sir.
 7                 THE WITNESS:   Thank you.
 8   EXAMINATION BY
 9   MR. POHLMAN:
10           Q.    Mr. Posner, my name is Bill
11   Pohlman.   I represent The Scotts Company.
12                 You were involved in negotiating
13   settlement agreements on behalf of Grace
14   with a variety of different insurers with
15   respect to asbestos claims, correct?
16           A.    Yes.
17           Q.    And you were personally
18   involved in the first settlement
19   negotiation that Grace reached with an
20   insurer with respect to asbestos claims?
21           A.    Yes.
22           Q.    And the most recent
23   settlement in 2006?
24           A.    Yes.
```

1    Companies is still in place.

2                    MR. POHLMAN:  To the extent

3              we have not been provided with

4              copies of the settlement agreements

5              in advance of this deposition, I

6              would reserve any rights to examine

7              the witness further about those

8              agreements but for the time being

9              I'm finished.  Thank you.

10                   THE WITNESS:  Thank you.

11                   MR. SCHIAVONI:  I have one

12             really quick follow-up.

13                   MS. ESAYIAN:  Okay.

14   EXAMINATION BY

15   MR. SCHIAVONI:

16        Q.    The last question I asked

17   you about, in fact there were two Royal

18   settlement agreements, right?

19        A.    Yes.

20        Q.    The prior one, I asked you

21   about the 1995 settlement agreement.

22   There was one done in May of 1994 between

23   Royal and Grace, right?

24        A.    Correct.

```
 1              Q.    And it's fair to say you
 2    were personally involved with the
 3    negotiations of the May 1994 Grace-Royal
 4    settlement agreement.  Am I right?
 5              A.    Yes.
 6              Q.    And is it fair to say that
 7    the 1994 Grace-Royal settlement agreement
 8    was the product of negotiations between
 9    Grace and Royal?
10                    MR. KOVACICH:  I'm going to
11              object to the leading questions at
12              this point.  It's obvious the
13              witness is not adverse on this
14              subject of your examination.
15                    MR. SCHIAVONI:  Haste makes
16              waste so I'll withdraw the
17              question.
18              Q.    Was the May 1994
19    Grace-Royal settlement agreement the
20    product of arm's length good faith
21    negotiations between Grace and Royal?
22                    MR. KOVACICH:  Objection as
23              still leading.
24              A.    Yes.  I mean, not only
```

1    that, we were involved in litigation with

2    Royal and, as I recall, the case got

3    settled while the case was being tried.

4           **Q.    And did the negotiations of**

5    **the May 1994 Grace-Royal settlement**

6    **agreement take place over a span of**

7    **time?**

8                  MR. KOVACICH:   Objection,

9           leading.

10          A.    Yes.

11          **Q.    And can you give us a sense**

12   **of how long that took to negotiate?**

13          A.    I mean, I really can't.

14   Again, it was a lost policies issue.  You

15   know, Royal was disputing some of the

16   policies.  Litigation, as I recall, began

17   in New York to determine, you know, what

18   the policies were.  During the course of

19   that litigation, you know, we settled.  We

20   settled it.

21          **Q.    Okay.  But were the**

22   **negotiations of the May 1994 Grace-Royal**

23   **settlement agreement the product of days**

24   **of negotiations --**

```
1                    MR. KOVACICH:  Objection,
2          leading.
3          Q.    -- at a minimum?
4          A.    I mean, I don't know.
5    These issues, you know, were being
6    discussed with Royal over a period of
7    time.  I don't think it would be fair to
8    say that we were negotiating for days over
9    this.  Again, trial had started --
10         Q.    Right.
11         A.    -- on this issue and, you
12   know, during the trial we had reached a --
13   we reached a settlement.
14         Q.    Okay.  Did you, Mr. Posner,
15   do your best as part of the negotiation of
16   the May 1994 Grace-Royal settlement
17   agreement to obtain the best possible
18   terms for Grace?
19         A.    Yes.
20               MR. SCHIAVONI:  Thank you.
21               THE WITNESS:  Thank you.
22               MS. ESAYIAN:  Okay.  So is
23   Dan Speights on the line now?
24               MS. DeCRISTOFARO:  Lisa,
```