# Exhibit D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - -

| | |
|---|---|
| In Re: | : Chapter 11 |
| | : |
| | : Case No. |
| W.R. GRACE & CO., et al, | : 01-01139 JKF |
| | : |
| | : (Jointly |
| Debtors | : Administered) |

- - -

Thursday, June 11, 2009

- - -

Oral deposition of JAY W. HUGHES, JR., ESQUIRE, taken pursuant to notice, was held at the offices of KIRKLAND & ELLIS, 665 Fifteenth Street, NW, Washington, DC  20005, commencing at 9:07 a.m., on the above date, before Lori A. Zabielski, a Registered Professional Reporter and Notary Public in and for the Commonwealth of Pennsylvania.

- - -

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

```
 1   APPEARANCES:
 2
 3   LEWIS SLOVAK KOVACICH, P.C.
     BY:   TOM L. LEWIS, ESQUIRE
 4   725 Third Avenue North
     Great Falls, Montana   59401
 5   406.761.5595
     (tom@lsklaw.net)
 6   Representing the Libby Claimants
 7
 8   COHN WHITESELL & GOLDBERG, LLP
     BY:   DANIEL C. COHN, ESQUIRE
 9   101 Arch Street
     Boston, Massachusetts 02110
10   617.951.2505
     (cohn@cwg11.com)
11   Representing the Libby Claimants
12
13   KIRKLAND & ELLIS, LLP
     BY:   BARBARA M. HARDING, ESQUIRE
14   655 Fifteenth Street, N.W.
     Washington, DC   20005-5793
15   202.879.5081
     (barbara.harding@kirkland.com)
16   Representing the Debtors and Witness
17
18   KIRKLAND & ELLIS, LLP
     BY:   THEODORE L. FREEDMAN, ESQUIRE*
19       (*VIA TELECONFERENCE)
     601 Lexington Avenue
20   New York, New York   10022
     212.446.4800
21   (theodore.freedman@kirkland.com)
     Representing the Debtors
22
23
24
```

```
 1   APPEARANCES (continued)
 2
 3   THE LAW OFFICES OF JANET S. BAER, P.C.
     BY:   JANET S. BAER, ESQUIRE
 4   70 West Madison Street
     Suite 2100
 5   Chicago, Illinois   606002
     312.641.2162
 6   Representing the Debtors
 7
 8   SPEIGHTS & RUNYAN
     BY:   DANIEL H. SPEIGHTS, ESQUIRE*
 9        (*VIA TELECONFERENCE)
     200 Jackson Avenue East
10   P.O. Box 685
     Hampton, South Carolina   29924
11   803.943.4444
     (dspeights@speightsrunyan.com)
12   Representing Anderson Memorial Hospital
13
14
     DRINKER BIDDLE & REATH, LLP
15   BY:   MICHAEL F. BROWN, ESQUIRE
     One Logan Square
16   18th & Cherry Streets
     Philadelphia, Pennsylvania   19103-6996
17   215.988.2988
     (brownmf@dbr.com)
18   Representing OneBeacon America Insurance
     Company, Seaton Insurance Company,
19   Government Employees Insurance Company,
     Republic Insurance Company n/k/a Starr
20   Indemnity & Liability Company
21
22
23
24
```

```
 1   APPEARANCES (continued)
 2
 3   CAPLIN & DRYSDALE, CHARTERED
     BY:   JEFFREY A. LIESEMER, ESQUIRE
 4   One Thomas Circle N.W.
     Suite 1100
 5   Washington, DC   20005
     202.862.7801
 6   (jal@capdale.com)
     Representing Grace, Official Committee of
 7   Asbestos Personal Injury Claimants
     ("ACC")
 8
 9
     ANDERSON KILL & OLICK, P.C.
10   BY:   ROBERT M. HORKOVICH, ESQUIRE*
           (*VIA TELECONFERENCE)
11   1251 Avenue of the Americas
     New York, New York 10020
12   212.278.1322
     (rhorkorvitz@andersonkill.com)
13   Representing the ACC
14
15   SIMPSON THACHER & BARTLETT, LLP
     BY:   ELISA ALCABES, ESQUIRE*
16         (*VIA TELECONFERENCE)
     425 Lexington Avenue
17   New York, New York   10017-3954
     212.455.3133
18   (ealcabes@stblaw.com)
     Representing Travelers Casualty and
19   Surety Company
20
21   VORYS, SATER, SEYMOUR AND PEASE, LLP
     BY:   PHILIP F. DOWNEY, ESQUIRE*
22         (*VIA TELECONFERENCE)
     52 East Gay Street
23   Columbus, Ohio   43215
     330.208.1152
24   (pdowney@vorys.com)
```

```
 1   APPEARANCES (continued)
 2
 3   MENDES & MOUNT, LLP
     BY:  EILEEN T. McCABE, ESQUIRE
 4   750 Seventh Avenue
     New York, New York  10019
 5   212.261.8262
     (eileen.mccabe@mendes.com)
 6   Representing AXA Belgium as Successor to
     Royale Belge SSA
 7
 8
     MENDES & MOUNT, LLP
 9   BY:  ALEXANDER MUELLER, ESQUIRE
     750 Seventh Avenue
10   New York, New York  10019-6829
     212.261.8296
11   (alexander.mueller@mendes.com)
     Representing London Market Companies
12
13
     FORD MARRIN ESPOSITO & WITMEYER & GLESER
14   BY:  ELIZABETH M. DeCRISTOFARO, ESQUIRE
     Wall Street Plaza
15   New York, New York  10005-1875
     212.269.4900
16   Representing Continental Casualty Company
     and Continental Insurance Company
17
18
     STROOCK & STROOCK & LAVAN, LLP
19   BY:  KENNETH PASQUALE, ESQUIRE*
          (*VIA TELECONFERENCE)
20   180 Maiden Lane
     New York, New York  10038-4982
21   212.806.5400
     (kpasquale@stroock.com)
22   Representing Official Committee of
     Unsecured Creditors
23
24
```

```
 1    APPEARANCES (continued)
 2
 3    CROWELL & MORING, LLP
      BY:   NOAH S. BLOOMBERG, ESQUIRE*
 4        (*VIA TELECONFERENCE)
      1001 Pennsylvania Avenue NW
 5    Washington, DC  20004-2595
      202.624.2913
 6    (nbloomberg@crowell.com)
      Representing Fireman's Fund Insurance
 7    (Surety Bond)
 8
 9    STEVENS & LEE, P.C.
      BY:   MARNIE E. SIMON, ESQUIRE
10    1818 Market Street, 29th Floor
      Philadelphia, Pennsylvania  19103-1702
11    215.751.2885
      (mes@stevenslee.com)
12    Representing Fireman's Fund Insurance
13
14    ECKERT SEAMANS CHERIN & MELLOTT, LLC
      BY:   EDWARD J. LONGOSZ, II, ESQUIRE
15    1747 Pennsylvania Avenue, NW
      12th Floor
16    Washington, DC  20006
      202.659.6619
17    (elongosz@eckertseamans.com)
      Representing Maryland Casualty and Zurich
18
19
      WILEY REIN, LLP
20    BY:   RICHARD A. IFFT, ESQUIRE
      1776 K Street NW
21    Washington, DC  20006
      202.719.7520
22    (rifft@wileyrein.com)
      Representing Maryland Casualty and Zurich
23
24
```

```
 1   APPEARANCES (continued)
 2
 3   COZEN O'CONNOR
     BY:   JACOB C. COHN, ESQUIRE
 4   1900 Market Street
     Philadelphia, Pennsylvania  19103-3508
 5   215.665.2147
     (jcohn@cozen.com)
 6   Representing Federal Insurance Company
 7
 8   ORRICK HERRINGTON & SUTCLIFFE, LLP
     BY:   PERI N. MAHALEY, ESQUIRE
 9   Columbia Center
     1152 15th Street, N.W.
10   Washington, DC  20005-1706
     202.339.8516
11   (pmahaley@orrick.com)
     Representing Future Claimants
12   Representative
13
14   CUYLER BURK, P.C.
     BY:   STEFANO V. CALOGERO, ESQUIRE
15   Parsippany Corporate Center
     4 Century Drive
16   Parsippany, New Jersey  07054
     973.734.3200
17   (scalogero@cuyler.com)
     Representing Allstate Insurance Company
18
19
     WILSON ELSER MOSKOWITZ EDELMAN & DICKER,
20   LLP
     BY:   CARL PERNICONE, ESQUIRE
21   150 East 42nd Street
     New York, New York  10017-5639
22   212.915.5656
     (carl.pernicone@wilsonelser.com)
23   Representing Arrowood Indemnity Company
24
```

```
 1   APPEARANCES (continued)
 2
 3   O'MELVENY & MYERS, LLP
     BY:   TANCRED SCHIAVONI, ESQUIRE
 4   Times Square Tower
     7 Times Square
 5   New York, New York 10036
     212.326.2267
 6   (tschiavoni@omm.com)
     Representing Arrowood Indemnity Company
 7
 8
     WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
 9   BY:   KEVIN J. MANGAN, ESQUIRE
     222 Delaware Avenue
10   Suite 1501
     Wilmington, Delaware   19801
11   302.252.4361
     (kmangan@wcsr.com)
12   Representing State of Montana
13
14   PEPPER HAMILTON, LLP
     BY:   LINDA J. CASEY, ESQUIRE
15   3000 Two Logan Square
     Philadelphia, Pennsylvania   19103
16   215.981.4000
     (casey1@pepperlaw.com)
17   Representing BNSF Railway Company
18
                           -   -   -
19
20
21
22
23
24
```

```
 1                    -   -   -
 2                I  N  D  E  X
 3                    -   -   -
 4
 5   Testimony of:
 6          JAY W. HUGHES, JR., ESQUIRE
 7
 8   By Mr. Lewis              Page  13,  424
 9   By Mr. Mangan             Page  211
10   By Ms. Casey              Page  240
11   By Mr. Brown              Page  296,  479
12   By Mr. Jacob Cohn         Page  344
13   By Ms. Simon              Page  358
14   By Ms. McCabe             Page  360
15   By Mr. Schiavoni          Page  361,  483
16   By Mr. Ifft               Page  380
17   By Ms. DeCristofaro       Page  386
18   By Ms. Alcabes            Page  388
19   By Mr. Speights           Page  397
20   By Mr. Downey             Page  418
21
22
23
24
```

```
 1                          -   -   -
 2                    E X H I B I T S
 3                          -   -   -
 4    NO.    DESCRIPTION                         PAGE
 5    Hughes-1
             Monthly Asbestos Litigation
 6           Summary - March                     86
 7    Hughes-2
             Letter dated 3/27/01 to
 8           Allan McGarvey from Terry
             MacDonald                           168
 9
      Hughes-3
10           Exhibit 4 to Exhibit Book
             Trust Distribution Procedures  211
11
      Hughes-4
12           Documents bearing Bates stamps
             GCO 000023 through 000026      242
13
      Hughes-5
14           Documents bearing Bates stamps
             GCO 000081 through 000091      254
15
      Hughes-6
16           Document bearing Bates stamp
             GCO 000174                          257
17
      Hughes-7
18           Documents bearing Bates stamps
             GCO 000111 through 000112      275
19
      Hughes-8
20           Document bearing Bates stamp
             GCO 000173                          280
21
      Hughes-9
22           Document bearing Bates stamp
             GCO 000140                          281
23
24
```

```
 1    EXHIBITS (continued)
 2
      NO.    DESCRIPTION                      PAGE
 3
      Hughes-10
 4           Documents bearing Bates stamps
             GCO 000207 through 000215     282
 5
      Hughes-11
 6           Letter dated 4/25/09 to Counsel
             from Barbara Harding with
 7           attachment                    296
 8    Hughes-12
             Exhibit 6 to Exhibit Book
 9           Asbestos Insurance Transfer
             Agreement                     299
10
      Hughes-13
11           Document bearing Bates stamp
             GCO 000219                    362
12
      Hugbhes-14
13           Documents bearing Bates stamps
             GCO 000199 through 000200     367
14
      Hughes-15
15           Exhibit 5 to Exhibit Book
             Schedule of Settled Asbestos
16           Insurers Entitled to 524(g)
             Protection                    479
17
18                   -   -   -
19
20
21
22
23
24
```

```
 1                  -   -   -

 2           DEPOSITION SUPPORT INDEX

 3                  -   -   -

 4

 5   Direction to Witness Not to Answer:

 6   Page    Line              Page        Line

 7   408     22

 8

 9

10   Request for Production of Documents:

11   Page    Line              Page        Line

12   NONE

13

14

15   Stipulations:

16   Page    Line              Page        Line

17   NONE

18

19

20   Area(s) Marked Confidential:

21   Page    Line              Page        Line

22

             (Mr. Speights dropped of

23              teleconference from:)

24   285     01      to     299         24
```

```
 1                      -   -   -

 2                  PROCEEDINGS

 3                      -   -   -

 4              MR. LEWIS:  Federal rules.

 5                      -   -   -

 6              JAY W. HUGHES, JR., ESQUIRE,

 7         after having been first duly

 8         sworn, was examined and testified

 9         as follows:

10                      -   -   -

11                  EXAMINATION

12                      -   -   -

13  BY MR. LEWIS:

14         Q.    Good morning, Mr. Hughes.

15  My name is Tom Lewis.  We met sometime

16  ago when we were negotiating on some

17  settlements out of Libby, Montana.

18              Do you recall that?

19         A.    Yes, I do.

20         Q.    What's your full name?

21         A.    Jay, J-A-Y, W. Hughes, Jr.

22         Q.    Who is your employer?

23         A.    W.R. Grace & Company.

24         Q.    And what is your position
```

1          Q.    I am here today on behalf of

2    AXA Belgium as a successor to Royale

3    Belge.

4                And just to make this go

5    quickly, if I could follow up with the

6    same questions that were just asked to

7    you with regard to the Royale Belge

8    policies that appear on page 16 of what's

9    been designated Hughes Exhibit-12.  There

10   are three policies that are identified

11   there for excess policies.

12               Are you aware of any

13   agreement that Royale Belge had

14   pre-petition pursuant to Royale Belge

15   ceded or waived any of its rights under

16   excess policies that are listed on that

17   policy?

18               MS. HARDING:  Object to

19       form.

20               THE WITNESS:  No, I am not.

21               MS. McCABE:  That's it.

22                    -   -   -

23                 EXAMINATION

24                    -   -   -

1    BY MR. SCHIAVONI:

2         Q.    Mr. Hughes, hi.   I am Tank

3    Schiavoni from O'Melveny for Arrowwood.

4              Mr. Hughes, you were asked

5    some questions about BNSF.   Do you recall

6    that generally?

7         A.    Yes.

8         Q.    BNSF was asking about or

9    their counsel was asking about whether

10   claims against them were broadly covered

11   in the policy issued to Grace.

12             Do you remember that line of

13   questioning, just the line of questioning

14   generally?

15        A.    Yes.

16        Q.    In February of 2006, did

17   Royal give notice to you and to Grace

18   that BNSF was seeking coverage from Royal

19   under Grace's Zonolite policies for

20   claims against BNSF by Libby claimants?

21        A.    I recall discussions at that

22   period of time between Grace and Royal

23   concerning BNSF claims, yes.

24             MR. SCHIAVONI:   13 is next.

```
 1                    (Hughes-13 marked for

 2            identification at this time.)

 3    BY MR. SCHIAVONI:

 4            Q.    Would you take a minute to

 5    read Exhibit-13.  And then my question,

 6    Mr. Hughes, is whether you have seen

 7    Exhibit-13 before.

 8            A.    I do recall seeing this,

 9    yes.

10            Q.    And can you tell us what

11    Exhibit-13 is?

12            A.    It's a letter from Carl

13    Pernicone to me dated February 24th,

14    2006, and he is writing on behalf of

15    Royal, advising Grace that BNSF Railway

16    is seeking coverage from Royal under the

17    Zonolite policies for the Libby claims.

18            Q.    Okay.  And did you receive a

19    copy of Exhibit-13 on or about February

20    24, 2006?

21            A.    I believe so.

22            Q.    And --

23            A.    Although it looks like the

24    stamp is March, but...
```

1          Q.    You may have received it as

2    late as March, right?

3          A.    Uh-huh.

4          Q.    And did you receive a copy

5    of Exhibit-13 in the ordinary course of

6    your business?

7          A.    Yes.

8          Q.    Okay.  And having reviewed

9    Exhibit-13, does it refresh your memory

10   that Royal gave you notice in February of

11   2006 that BNSF was seeking coverage from

12   Royal under Grace's Zonolite policies for

13   claims asserted against BNSF by the Libby

14   claimants?

15         A.    Yes.

16         Q.    Did Royal provide Grace with

17   a copy of the January 31 letter from BNSF

18   to Royal demanding coverage under Grace's

19   Zonolite policies?

20         A.    Yes.

21         Q.    Am I correct that Royal

22   advised Grace in February of 2006 that

23   Royal had declined to accept the tender

24   of claims by BNSF under Grace's Zonolite

```
 1    policies?

 2           A.    Yes.

 3           Q.    Am I also correct that in

 4    February of 2006, Royal advised Grace

 5    that it was referring to Grace the BNSF

 6    claims that were being made under the

 7    Grace/Zonolite policies?

 8           A.    Repeat that question.

 9                 MS. HARDING:  Object to

10           form.

11                 MR. SCHIAVONI:  Why don't is

12           we have it read again.

13                 (The reporter read from the

14           record as requested.)

15                 THE WITNESS:  Yes.

16    BY MR. SCHIAVONI:

17           Q.    Is one of the things that

18    Royal did in February of 2006 was invoke

19    the indemnity of the 1995 settlement

20    agreement that it had with Grace?

21           A.    Yes, it did.

22           Q.    Am I correct in May of 2006,

23    Grace joined Royal in jointly responding

24    to BNSF's request for coverage under the
```

```
 1    Grace's Zonolite policies?

 2         A.    Yes.

 3         Q.    And am I correct,

 4    Mr. Hughes, that Grace advised BNSF in

 5    May of 2006 that Royal had fully

 6    discharged and satisfied any obligation

 7    it may have owed to Grace for

 8    asbestos-related claims under the

 9    Zonolite policies?

10              MS. HARDING:  Object to

11         form.

12              But go ahead.

13              THE WITNESS:  Yeah, my

14         recollection was that that was the

15         general message in the letter.

16    BY MR. SCHIAVONI:

17         Q.    Is it also true, Mr. Hughes,

18    that Grace told Royal -- and this is in

19    May of 2006 -- that Royal had fully

20    discharged and satisfied any obligations

21    it may have owed to Grace for

22    asbestos-related claims under the

23    Zonolite policies?

24         A.    We may have told them that,
```

 1    but the agreement itself had -- I think

 2    the answer to your question is yes.

 3                MR. SCHIAVONI:  Okay.  I am

 4          going to hand you a copy, and we

 5          will mark this as Exhibit-14.

 6                (Hughes-14 marked for

 7          identification at this time.)

 8    BY MR. SCHIAVONI:

 9          Q.    Have you seen a copy of

10    Exhibit-14 before, Mr. Hughes?

11          A.    Yes, I have.

12          Q.    And can you tell us what it

13    is generally?

14          A.    It's a letter on Wilson

15    Elser letterhead that was sent by Royal

16    and Grace to attorneys for BNSF Railway

17    in Montana indicating that we had -- that

18    Royal had discharged its obligations

19    under the policies and that if they

20    intended to proceed against Grace, that

21    we would have to take action in the

22    bankruptcy court.

23          Q.    Mr. Hughes, on the second

24    page of this letter, the page that's

```
 1    marked GCO 000200, does your signature
 2    appear on the bottom?
 3          A.    Somebody signed it on my
 4    behalf.  Anybody who knows my writing
 5    knows that's definitely not my writing.
 6          Q.    Did you authorize had person
 7    to sign on your behalf?
 8          A.    Yes.
 9          Q.    And were you authorized to
10    enter into this letter on behalf of
11    Grace?
12          A.    Yes, I was.
13          Q.    And your entry into this
14    letter or author -- was your
15    authorization of this letter part of the
16    ordinary course of your duties at Grace?
17          A.    Yes.
18          Q.    Were the statements that are
19    made in Exhibit-14 true and correct when
20    they were made?
21          A.    I believe so, yes.
22          Q.    Prior to issuing the May 5th
23    letter that's marked as Exhibit-14, did
24    you review the 1995 Grace/Royal
```

```
 1    settlement?
 2             A.      Yes, I did.
 3             Q.      And prior to issuing the May
 4    5, 2006 letter that's marked as
 5    Exhibit-14, did you have occasion to
 6    speak to anybody at Grace who was
 7    involved in the 1995 Grace/Royal
 8    settlement?
 9             A.      Yes.
10             Q.      And did you speak to
11    Mr. Posner?
12             A.      Yes, I did.
13             Q.      Did you speak to anyone
14    else?
15             A.      I think that Mr. Finke and
16    Grace counsel were also involved in this
17    letter.
18             Q.      And am I correct that in May
19    of 2006, one of the other things you did
20    was that you advised BNSF that Grace had
21    fully and finally released Royal from any
22    further liability for asbestos-related
23    claims under the Grace/Zonolite policies?
24                     MR. LEWIS:  Objection,
```

```
 1          leading.
 2                MR. SCHIAVONI:  All right.
 3          I will rephrase the question.
 4     BY MR. SCHIAVONI:
 5          Q.   Did you --
 6                MR. JACOB COHN:  This is
 7          cross.
 8                MR. LEWIS:  It's not cross.
 9          These guys are in perfect symphony
10          here.
11     BY MR. SCHIAVONI:
12          Q.   In May of 2006, Mr. Hughes,
13     did you advise BNSF on behalf of Grace
14     that Grace had fully and finally released
15     Royal from any further liability for
16     asbestos-related claims under the
17     Grace/Zonolite policies?
18                MR. LEWIS:  Same objection,
19          leading.
20                THE WITNESS:  This letter
21          says that.
22     BY MR. SCHIAVONI:
23          Q.   And that's a statement you
24     authorized to be made to BNSF, right?
```

```
 1                    MR. LEWIS:  Same objection,
 2         leading.
 3                    THE WITNESS:  Yes.  Grace
 4         authorized, yes.
 5    BY MR. SCHIAVONI:
 6         Q.    And, Mr. Hughes, did you
 7    believe that statement to be a true and
 8    correct statement at the time it was
 9    made?
10                    MR. LEWIS:  Objection, asked
11         and answered.
12                    THE WITNESS:  Yes.
13    BY MR. SCHIAVONI:
14         Q.    And is one of the other --
15    strike that.
16                    Mr. Hughes, did you also
17    advise BNSF in May of 2006 that there was
18    no basis for BNSF to pursue coverage from
19    Royal for asbestos-related claims under
20    the Grace/Zonolite policies?
21                    MR. LEWIS:  Objection,
22         leading.
23                    THE WITNESS:  Where does it
24         say that in this letter?
```

```
 1   BY MR. SCHIAVONI:

 2           Q.    Let's look together.

 3           A.    "There is no basis for BNSF

 4   to pursue coverage from Royal for

 5   asbestos related claims under the

 6   Zonolite policies," is the final sentence

 7   of the first paragraph on page 2.  But

 8   that's not how I understood your

 9   question.

10           Q.    Let me see if I can ask it

11   again.  Okay.

12                 In May of 2006, did you

13   advise BNSF that there was no basis for

14   BNSF to pursue coverage from Royal for

15   asbestos-related claims under the

16   Zonolite policies?

17           A.    Yes.

18                 MR. LEWIS:  Objection,

19           leading.  Let the record reflect

20           that the witness answered before I

21           had an opportunity to state my

22           objection.

23   BY MR. SCHIAVONI:

24           Q.    And was that a true and
```

```
 1    correct statement when it was made?
 2              MR. LEWIS:  Objection, asked
 3         and answered.
 4              THE WITNESS:  Yes.
 5    BY MR. SCHIAVONI:
 6         Q.   You were asked some
 7    questions by Libby's counsel about your
 8    knowledge of the exposure that the manner
 9    in which folks were exposed in Libby.
10              Do you recall generally
11    those questions?
12         A.   Yes.
13         Q.   Do you have any personal
14    knowledge based on your own observations
15    of how anybody in Libby was, in fact,
16    exposed to asbestos?
17              MR. LEWIS:  Objection.  That
18         question is loaded up and leading.
19              MS. HARDING:  I will object
20         to form as well.
21              Go ahead.
22              THE WITNESS:  I never was
23         personally present at the Libby
24         mine and mill and the Libby
```

```
 1              operation, but there is a

 2              substantial amount of documentary

 3              evidence and scientific evidence,

 4              industrial hygiene records and so

 5              on concerning the exposure levels

 6              of employees at the mine and mill.

 7              And my earlier testimony was based

 8              on my familiarity generally with

 9              that information.

10   BY MR. SCHIAVONI:

11              Q.   Okay.  So you were relying

12   on general documentation about things

13   that occurred in Libby; is that right?

14              MS. HARDING:  Object to form

15              as to things that occurred in

16              Libby.

17              But go ahead.

18              THE WITNESS:  I was relying

19              on air sampling data that had been

20              collected by the company, by the

21              State of Montana, by the United

22              States Federal Government, by

23              insurance carriers providing

24              coverage to Grace, I believe as
```

```
 1              well on air sampling and personal
 2              air sampling that was for
 3              employees involved in the mine and
 4              milling of vermiculite.  So I
 5              think that's a significant body of
 6              data out there, and that's what I
 7              was relying on.
 8    BY MR. SCHIAVONI:
 9         Q.   Would it be fair to say that
10    you can't offer any testimony about how
11    any individual Libby claimant was, in
12    fact, exposed to asbestos based on any
13    personal knowledge that you might have
14    with regard to that Libby claimant?
15              MS. HARDING:  Objection.
16              MR. LEWIS:  Objection,
17         leading.
18              MS. HARDING:  Objection to
19         form and to the broad
20         characterization of Libby
21         claimant.
22              THE WITNESS:  Again, I was
23         never present in Libby during the
24         manufacture and mining and milling
```

```
 1              of vermiculite and vermiculite

 2              concentrate.  So to that extent,

 3              no.

 4                   But, again, there is a body

 5              of data out there that I am very

 6              familiar with that was created by

 7              various individuals, trained

 8              industrial hygienists, measuring

 9              the exposures associated with the

10              Libby work, and that's what was

11              the basis for what my earlier

12              testimony.

13   BY MR. SCHIAVONI:

14         Q.   Is it true that some of the

15   people in Libby that have brought claims

16   against Grace also asserted that they

17   were exposed to asbestos from non-Grace

18   sources?

19         A.   Yes.

20         Q.   Okay.  And the lumber yard

21   out there is one such source, right?

22         A.   Yes.

23         Q.   And is it also true that

24   some of the people in Libby have
```

1    identified other sources of asbestos that

2    are unrelated to Grace besides the lumber

3    yard?

4         A.    Yes.

5         Q.    You were shown a copy of

6    Exhibit Hughes-1.  Let me hand you what

7    was previously marked as Exhibit-1.

8              Did you prepare Exhibit-1?

9         A.    No.

10        Q.    Was Exhibit-1 prepared under

11   your supervision?

12        A.    No.  I think I testified to

13   this earlier that I was involved in the

14   collection of the data a lot of which is

15   reported in the report.  But Mr. Port

16   didn't directly report to me, and I

17   didn't draft the report itself or the

18   attached tables.

19        Q.    So some of the data in

20   Exhibit-1 may have been collected by you,

21   but you didn't prepare the exhibit and

22   you didn't supervise its preparation; is

23   that right?

24        A.    No.

```
 1                    MS. HARDING:  His question
 2            was correct, that you didn't -- it
 3            was one of those backwards things.
 4                    THE WITNESS:  Sorry.
 5   BY MR. SCHIAVONI:
 6            Q.   Some of your data may be in
 7   Exhibit-1, but you didn't prepare
 8   Exhibit-1 and you didn't supervise the
 9   preparation of Exhibit-1; is that right?
10            A.   I did not prepare Exhibit-1,
11   nor did I supervise the preparation of
12   Exhibit-1.
13            Q.   The 1995 Grace/Royal
14   settlement covered policies issued to the
15   Zonolite Company; is that generally
16   right?
17            A.   Yes.
18            Q.   Okay.  Are you aware whether
19   Royal's also alleged to have issued,
20   entirely separate from that, a high level
21   excess policy in the 1980s to Grace?
22            A.   I learned that in connection
23   with the bankruptcy.  I am not sure I
24   knew that beforehand.
```

```
 1              Q.    Okay.  But sitting here
 2    today, you are familiar with the fact
 3    that there is a separate high level
 4    excess policy that Royal has issued in
 5    '80s to Grace; is that right?
 6              A.    I believe so, yes.
 7              Q.    And Mr. Brown asked you some
 8    questions about whether or not rights to
 9    associate in the defense and to cooperate
10    had been ceded by his clients to Grace.
11                   Do you remember those
12    questions generally?
13                   MS. HARDING:  Object to
14         form.
15                   But go ahead.
16                   MR. SCHIAVONI:  All right.
17                   THE WITNESS:  There are
18         questions about it.  I think the
19         question was whether we had waived
20         or all agreed, and the answer was
21         no, I wasn't aware of any such
22         agreement.
23    BY MR. SCHIAVONI:
24              Q.    Has either Royal or
```

```
 1    Arrowwood ceded or in any way waived or
 2    given up any of its rights to associate
 3    in the defense or cooperate or any other
 4    rights under its high level excess
 5    policy?
 6           A.    Not that I am aware of.
 7               MS. HARDING:  Object the
 8         form with respect to rights.
 9    BY MR. SCHIAVONI:
10           Q.    And am I correct that prior
11    to the bankruptcy filing, Grace hadn't
12    tendered any claims to Royal under that
13    high level excess policy?
14           A.    I don't know the extent to
15    which we were tendered claims
16    pre-petition to high level excess
17    policies.  Generally, the notice of the
18    claims was done by our insurance broker.
19           Q.    Okay.  So you don't know one
20    way or the other?
21           A.    I don't.
22               MR. SCHIAVONI:  That's all I
23         have.  Thank you, Mr. Hughes.
24                   -   -   -
```

1              That's an impertinent question,

2                   THE WITNESS:  I was 6 years

3         old.

4                   MR. SCHIAVONI:  It

5         demonstrates how silly your

6         questions were, sir.

7    BY MR. SCHIAVONI:

8              Q.    How old were you in 1963?

9              A.    I was 6.

10             Q.    Is it fair to say you didn't

11   work at Grace in the '50s and '60s,

12   right?

13             A.    No, I didn't.

14             Q.    And you never worked at the

15   Zonolite Company; is that right?

16             A.    No, I didn't.

17             Q.    Is it fair to say that you,

18   Mr. Hughes, have no personal knowledge as

19   to whether or not any policies were

20   actually issued to BNSF in the '50s or

21   '60s, do you, because you weren't around

22   then?

23             A.    No, I don't.

24                   MR. SCHIAVONI:  Thank you,

1          sir.

2                    MS. HARDING:   All right.

3                    (The deposition concluded at

4          6:42 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24