IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors | ) | |
| | ) | **Hearing Date:  July 27, 2009 at 10:30 a.m.** |
| | ) | **Objection Deadline:  July 10, 2009** |
| | ) | **Agenda No. _____** |

## DEBTORS' MOTION FOR AN ORDER APPROVING SETTLEMENT AGREEMENT AND MUTUAL RELEASE WITH THE ROYAL PARTIES

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby submit this motion (the "Motion") pursuant to Sections 105(a), 1107 and 1108 of Title 11

of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 9014 and 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in support of their Motion (the

"Motion") for the entry of an Order Pursuant to Sections 105, 1107 and 1108 of the Bankruptcy

Code and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure,

Authorizing Debtors to Enter into a Settlement Agreement and Mutual Release (the "Settlement

Agreement") by and between the Debtors and Arrowood Indemnity Company ("Arrowood") as

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

corporate successor-in-interest to Royal Indemnity Company, Arrowpoint Capital Corp. and Royal Indemnity Co. ("Royal") (collectively, "Royal Parties," as further defined in Settlement Agreement). A copy of the Settlement Agreement is attached as Exhibit A. In support of the Motion, the Debtors respectfully state as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction over these jointly administered cases pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a) and 524(g) of the Bankruptcy Code.

## Background

2.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession. The Office of the United States Trustee has appointed an Official Committee of Asbestos Claimants (the "Committee") in the case which consists entirely of Asbestos Personal Injury Claimants. In addition, in accordance with section 524(g) of the Bankruptcy Code, this Court has appointed a representative for Future Asbestos Personal Injury Claimants (the "Futures Representative").

## The Disputes with the Royal Parties

3.      Royal issued two high level excess policies that provide insurance coverage to W.R. Grace & Co. and W.R. Grace & Co. - Conn. (collectively, "Grace").[2] In addition, Royal issued certain policies issued to the Zonolite Company prior to 1963. As described more fully in Section 2.10.2 of the Disclosure Statement, the coverage issued by Royal to Zonolite was fully settled as to all asbestos related claims in a January 5, 1995 Settlement Agreement.[3] Accordingly, Royal is designated in the Plan as a Settling Asbestos Insurance Company with respect to these previously settled policies. The January 5, 1995 Settlement Agreement did not address the two high level late-year excess policies issued by Royal to Grace.

4.      The Grace Parties and Royal Parties dispute the extent of the Royal Parties' obligations under the one high level excess policy without an asbestos exclusion. In addition, the Royal Parties have raised, or have indicated that they will raise, certain objections to the Plan of Reorganization and other matters and certain of the Royal Parties filed a Proof of Claim in the Bankruptcy Case in an unliquidated amount.[4]

---

[2] One of the two excess policies contains an asbestos exclusion.

[3] *See* Jeff Posner May 6, 2009, Deposition Tr. pages 143:12-148:12, 148:13-149:23 and 308:8-314:7 (attesting to good faith and arms length nature of the 1995 settlement); Jay Hughes June 11, 2009, Deposition Tr. pages 367:6-371:12 (confirming that "Grace had fully and finally released Royal from any further liability for asbestos-related claims under the Grace/Zonolite policies").

[4] *See* Royal's Preliminary Objections to Debtors' Joint Plan of Reorganization (Dk. 20450); Arrowood Indemnity Company, f/k/a Royal Indemnity Company's Objections to Debtors' Amended Joint Plan of Reorganization (Dk. 21814); Arrowood's Phase II Objections to the Non-Debtor Release and Exculpation Provisions and the Injunction Impairing its Rights of Contribution, Subrogation and Reimbursement that are Contained in the Amended Joint Plan of Reorganization (Dk. 21815); Arrowood's Phase I Trial Brief Objecting to the Amended Joint Plan's Non-Debtor Release and Exculpation Provisions and the Injunction that Impairs Arrowood's Rights of Contribution, Subrogation and Reimbursement (Dk. 21945); Arrowood's Phase I Trial Brief Objecting to the Plan Proponents' First Amended Joint Plan of Reorganization (Dk. 21946).

**The Settlement Agreement**

5.    The Grace Parties and the Royal Parties have entered into a Settlement Agreement which, subject to the approval of the Court, compromises and resolves the disputes concerning the Royal coverage.  A copy of the Settlement Agreement is annexed hereto as Exhibit A.  The Parties to the Settlement Agreement are the Grace Parties and the Royal Parties, both as defined in the Settlement Agreement.  The Committee and the Futures Representative are not parties to the Settlement Agreement but their consent to the Grace Parties' entry into the Settlement Agreement is a condition precedent to the effectiveness of the Settlement Agreement.

**Summary of the Settlement Agreement**

6.    The Settlement Agreement provides that on or before the Payment Date (the first day that is thirty calendar days after the Approval Order becomes a Final Order), Arrowood is required to pay, in full, the Settlement Amount to the Escrow Agent for deposit into the Escrow Account.[5]

7.    The Escrow Agent is required to release the Escrow Amount (1) to the Trust ten calendar days after receipt by the Escrow Agent of written certification from counsel or other authorized agent of the Trust, the Committee, the Futures Representative, or the Grace Parties that the Trigger Date has occurred; or (2) to Arrowood ten calendar days after receipt by the Escrow Agent, with notice to the Committee, the Futures Representative and the Trust of written certification from authorized agents of both the Royal Parties and the Grace Parties that the Settlement Agreement has become void in accordance with its terms.

8.    Effective upon the Release Date:

---

[5] Capitalized terms that are not defined herein are defined in the Settlement Agreement or Plan.  The description of the terms of the settlement in this motion are intended as a mere general summary.  The Debtors refer the Court and interested parties to the Settlement Agreement for a full statement of its terms.

A.    Effective upon the Release Date, the Grace Parties and the Trust will release the Royal Released Parties forever from any and all Claims, whether known or unknown, for or with respect to: (1) insurance coverage and/or other benefits under the Subject Insurance Policies, including, without limitation, any and all coverage and/or other benefits for, or in connection with, or arising out of, any Asbestos Claims; (2) Extra-Contractual Claims arising in connection with, or based on, the Claims released in subsection (1) above; and (3) any and all deductibles, self-insured retentions, retrospective premiums or other deductions or charges of any kind, with respect to the Claims released in subsections (1) and (2) above.

B.    Effective upon the Release Date, the Royal Parties release the Grace Released Parties forever from any and all Claims, whether known or unknown, for or with respect to: (1) insurance coverage and/or other benefits under the Subject Insurance Policies, including, without limitation, any and all coverage and/or other benefits for, or in connection with, or arising out of, any Asbestos Claims; (2) Extra-Contractual Claims arising in connection with or based on the Claims released in subsection (1) above; and (3) any and all deductibles, self-insured retentions, retrospective premiums or other deductions or charges of any kind, with respect to the Claims released in subsections (1) and (2) above.

9.    Following the Execution Date, the Royal Parties (1) will suspend prosecution of all of their objections to the Plan or Plan documents, to confirmation of a Plan, or to the Debtors', Committee's or Futures Representative's motions or applications pending in the Bankruptcy Case (including any appeals of decisions in the Bankruptcy Case); (2) will suspend prosecution of their proof of claim; (3) will take no further actions of any nature (including filing new objections to a Plan or Plan documents and initiating or taking discovery) that may hinder, delay or oppose actions of Debtors, the Committee or the Futures Representative in the

Bankruptcy Case, including actions to confirm a Plan; and (4) will not oppose the entry of a

Confirmation Order; provided; however, that in the event that the Bankruptcy Court does not

issue an Approval Order or the Approval Order does not become a Final Order, the Royal Parties

may renew prosecution of their objections and of their proof of claim, which shall be deemed to

be preserved in the interim, in which event any filing deadlines shall be deemed to have been

tolled.

10.     Upon the Bankruptcy Court's Approval Order becoming a Final Order, the Royal

Parties are required to withdraw all of their objections to a Plan or Plan documents, to

confirmation of a Plan, or to the Debtors', Committee's or Futures Representative's motions or

applications pending in the Bankruptcy Case (including any appeals of decisions in the

Bankruptcy Case); provided, however, that, if the Settlement Agreement becomes void pursuant

to its terms, the Royal Parties will be deemed to have reserved their rights and objections in

connection with confirmation-related proceedings and proceedings concerning the assertion by

the Royal Parties of Claims in the Bankruptcy Case, including the deadlines for filings, until the

Release Date, at which time any reservation shall be withdrawn with prejudice.

11.     If the Joint Plan of Reorganization is changed or another Plan is filed, the Royal

Parties may object to confirmation of the revised or new plan of organization, if such

modifications or the terms of such other plan of reorganization: (1) are inconsistent with the

terms of the Settlement Agreement; (2) materially and adversely affect the interests of the Royal

Parties under the Settlement Agreement; and/or (3) the revised plan or new plan does not include

the Asbestos PI Channeling Injunction.

12.     The Debtors are required, following the Approval Order becoming a Final Order,

but subject to the occurrence of the Release Date, to: (1) designate the Royal Affiliated

Companies as Settled Asbestos Insurance Companies under the Joint Plan of Reorganization who

have satisfied all requirements necessary to be deemed Asbestos Protected Parties with respect to

the Subject Insurance Policies, entitling them to the full benefits and protections of the Asbestos

PI Channeling Injunction contemplated by the Joint Plan of Reorganization and such other

benefits and protections as are afforded under the Joint Plan of Reorganization with respect to

the Subject Insurance Policies; and (2) designate the Settlement Agreement as an Asbestos

Insurance Settlement Agreement under the Joint Plan of Reorganization. The Committee's and

the Futures Representative's written consent to the Settlement Agreement shall constitute their

consent to these designations. The Committee and the Futures Representative support this

Motion.

### Basis for Relief

13.    This Court has statutory authority to authorize and approve the Debtors' entry into

the Settlement Agreement pursuant to sections 105 and 363(b)(l) of the Bankruptcy Code.

Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any

order, process or judgment that is necessary or appropriate to carry out the provisions" of the

Bankruptcy Code.  11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy Code provides, in

relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the

ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1).  A settlement of

claims and causes of action by a debtor in possession constitutes a use of property of the estate.

*See Northview Motors. Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999).  If a

settlement is outside of the ordinary course of business of the debtor, it requires approval of the

bankruptcy court pursuant to section 363(b) of the Bankruptcy Code.  *See id.*  The Settlement

Agreement is such a settlement.

14. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *See Martin*, 91 F.3d at 393.

15. The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The standards set forth above are plainly met in this case.

16.    A court deciding whether to approve a settlement in bankruptcy "relies heavily on the trustee," and "under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification." *Meyers*, 91 F.3d at 395.

17.    Based on the foregoing, the Debtors submit that the Settlement Agreement is in the best interests of the Debtors, their estates, and their creditors.

18.    The Settlement Agreement represents another step forward in the Debtors' efforts to emerge from Chapter 11.  The payment of the Settlement Amount will increase the assets available to the Trust to pay asbestos claims and will remove the Royal Parties as potential objectors to Plan confirmation.

19.    The Settlement Agreement resolves claims against Royal Parties.  Therefore, the Debtors' estates and the Trust will save substantial litigation costs that would be involved in litigating these matters with the Royal Parties.

20.    While the Debtors believe that the Royal Parties' objections to the Plan would not prevent confirmation, the issues raised by the Royal Parties are not free from doubt and the settlement avoids the risk that the Royal Parties' objections would be sustained by the Court. *See In re Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J. decision read into record Sept. 11, 2006, Hearing Tr. at 67) (No. 4568) (when approving a proposed settlement between an insurer and a debtor, "the Court must consider the objections to confirmation that are also being settled as part of this settlement").  The Debtors' estates and the Trust will also save the litigation costs that would be involved in litigating these matters with the Royal Parties.

21.    Similarly, while the Debtors believe that their claims against Royal are meritorious, the issues in dispute are complex, and the outcome is not certain.

22.    Furthermore, Royal is in run-off and is actively regulated by the Delaware Insurance Department.[6] It no longer underwrites policies and has no source of new insurance revenues.[7] Moody's, A.M. Best, and Fitch withdrew Royal's ratings in 2005 when the company announced its intention to enter into run-off.[8] These ratings were below investment grade before they were withdrawn.[9] *See In re Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J. decision read into record Sept. 11, 2006, Hearing Tr. at 66) (No. 4568) ("Next, the Court must consider any possible difficulties in collection. Here it is significant to the Court that [the settling insurer] is in a runoff, which means that it is no longer writing any new policies and is merely concerned with fixing liability. As this Court noted in approving the Mt. McKinley settlement, when that is the case there are advantages to prompt payments rather than payment over a protracted period of time.").

23.    Accordingly, in the Debtors' business judgment, the Settlement Agreement is fair, equitable and in the best interests of the estates.

24.    The terms of the Settlement Agreement and Mutual Release are the product of arm's-length negotiations.

### Notice

25.    Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, and (iv) those parties that requested papers under Bankruptcy Rule

---

[6] *See* Royal Objection to Disclosure Statement, p. 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Settlement Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: June 17, 2009

KIRKLAND & ELLIS LLP
David M. Bernick
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Theodore Freedman
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

PACHULSKI STANG ZIEHL & JONES LLP

_/s/ Kathleen P. Makowski_
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession