**EXHIBIT A**

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into as of the Execution Date by and between the Grace Parties and the Royal Parties (capitalized terms as defined below).

## RECITALS

WHEREAS, the Royal Parties issued or allegedly issued certain liability insurance policies to certain of the Grace Parties; and

WHEREAS, one or more of the Grace Parties have been or were named as defendants in actions alleging personal injury or property damage arising out of exposure to asbestos or asbestos-containing materials; and

WHEREAS, a January 5, 1995 Settlement Agreement between the certain of the Grace Parties and Royal settled insurance coverage allegedly issued by Royal to certain of the Grace Parties for the period from March 31, 1953 to April 1, 1963 as to all asbestos-related claims, and a May 2, 1994 Settlement Agreement between Royal and certain of the Grace Parties fully resolved disputes regarding certain alleged or missing Royal policies; and

WHEREAS, the January 5, 1995 Settlement Agreement did not address two high level late-year excess policies allegedly issued by Royal to certain of the Grace Parties as part of a separate program and the coverage, if any, provided by these two policies remains in dispute; and

WHEREAS, on or about April 4, 2001, W.R. Grace & Co. and various affiliated companies filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code in the United States District Court for Delaware, In re W.R. Grace & Co., et al., No. 01-01139 (JKF), and they continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, the Parties disagree with respect to whether and to what extent the two unsettled high level late-year Royal excess policies may afford coverage for Asbestos Claims (the "Coverage Disputes"); and

WHEREAS, the Royal Parties have raised certain objections in the Bankruptcy Case to the proposed Joint Plan of Reorganization and other matters; and

WHEREAS, the Parties, subject to the terms and conditions of this Agreement, now wish fully and finally to compromise and resolve the Coverage Disputes and other disputes between or among them, including those arising in the Bankruptcy Case.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and intending to be legally bound hereby, the Parties hereby agree as follows:

## I.    **DEFINITIONS**

The following definitions apply to the capitalized terms herein wherever those terms appear in this Settlement Agreement, including the prefatory paragraph, recitals, the sections below and any exhibits hereto.  Capitalized terms in the prefatory paragraph, recitals, exhibits, and in the sections below have the meanings ascribed to them therein to the extent they are not otherwise defined in this Definitions section.  Moreover, each defined term stated in the singular shall include the plural and each defined term stated in the plural shall include the singular.  The word "including" when used in this Settlement Agreement means "including but not limited to."

A.    **"Agreement"** or **"Settlement Agreement"** means this Settlement Agreement, including all Exhibits hereto.

B.    **"Approval Motion"** means "Approval Motion" as defined in Section III(A) hereto.

C.    **"Approval Order"** means an order of the Bankruptcy Court, to be entered in the Bankruptcy Case, in form and substance satisfactory to the Parties and substantially in the form

2

attached hereto as Exhibit 1, with only such modifications as to which the Parties have consented

in writing, which order shall, among other things:  (1) approve this Agreement and the

compromise and settlement memorialized herein; (2) authorize the Debtors to perform under the

Agreement in accordance with its terms; (3) authorize and approve, as of the Release Date, the

designation of the Royal Affiliated Companies as Settled Asbestos Insurance Companies under

the Joint Plan of Reorganization who have satisfied all requirements necessary to be deemed

Asbestos Protected Parties with respect to the Subject Insurance Policies, entitling them to the

full benefits and protections of the Asbestos PI Channeling Injunction contemplated by the Joint

Plan of Reorganization and such other benefits and protections as are afforded under the Joint

Plan of Reorganization with respect to the Subject Insurance Policies.

        D.      **"Asbestos Claims"** has the meaning set forth in the Joint Plan of Reorganization.

        E.      **"Asbestos Insurance Policy"** has the meaning set forth in the Joint Plan of

Reorganization.

        F.      **"Asbestos Insurance Settlement Agreement"** has the meaning set forth in the

Joint Plan of Reorganization.

        G.      **"Asbestos PI Channeling Injunction"** has the meaning set forth in the Joint Plan

of Reorganization.

        H.      **"Asbestos PI Claim"** has the meaning set forth in the Joint Plan of

Reorganization.

        I.      **"Asbestos Protected Party"** has the meaning set forth in the Joint Plan of

Reorganization.

J.      **"Bankruptcy Case"** means <u>In re W.R. Grace & Co., et al.</u>, No. 01-1139 (JKF) and the other bankruptcy cases that are jointly administered under Case No. 01-00139, including any appeals of decisions in the Bankruptcy Case.

K.      **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

L.      **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

M.      **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

N.      **"BNSF"** means BNSF Railway Company and its successors and predecessors including Great Northern Railway Company, Burlington Northern Railroad Company, and The Burlington Northern & Santa Fe Railway Company.

O.      **"Business Day"** means any day that is not a Saturday, Sunday or Federal holiday in the United States of America.

P.      **"Claim"** means any past, present, or future claim, demand, action, cause of action, suit or liability of any kind or nature whatsoever, whether at law or in equity, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability (including Potentially Responsible Party or "PRP" notices), arbitrations, actions, rights, requests, causes of

action or orders. "Claim" also includes "claim" as defined in Bankruptcy Code Section 101(5), and "demand" as defined in Bankruptcy Code Section 524(g)(5).

Q.      **"Committee"** means the Official Committee of Asbestos Personal Injury Claimants appointed in the Bankruptcy Case.

R.      **"Confirmation Date"** means the date on which the District Court in the Bankruptcy Case enters an order confirming the Joint Plan of Reorganization or affirms or reissues an order of the Bankruptcy Court confirming the Joint Plan of Reorganization.

S.      **"Confirmation Order"** means an order entered on the Confirmation Date by the District Court in the Bankruptcy Case confirming the Joint Plan of Reorganization or affirming or reissuing the order of the Bankruptcy Court confirming the Joint Plan of Reorganization.

T.      **"Debtors"** means, collectively, W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co: Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (a/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated,

Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

U.    **"Effective Date"** means "Effective Date" as that term is defined in the Joint Plan of Reorganization.

V.    **"Escrow Account"** means an escrow account established pursuant to the Escrow Agreement to hold the payment made by the Arrowood Indemnity Company pursuant to this Agreement. If legally permissible, the Escrow Account shall be a "qualified settlement fund" under and pursuant to Section 468B of the U.S. Internal Revenue Code, and the regulations promulgated thereunder at Treasury Regulations §§ 1.468B-1, 2, 3 and 4, unless this latter condition imposes cost or burden on the Escrow Agent.

W.    **"Escrow Agent"** means the "Escrow Agent" as defined in the Escrow Agreement. The Escrow Agent shall be a mutually acceptable bank or another Person selected pursuant to the Escrow Agreement.

X.    **"Escrow Agreement"** means the agreement establishing the Escrow Account, which agreement shall be mutually acceptable to the Parties.

Y.    **"Escrow Amount"** means the Settlement Amount and all income and interest earned thereon while the Settlement Amount is held in the Escrow Account, less any amounts paid by the Escrow Agent consistent with the Escrow Agreement.

Z.    **"Execution Date"** means the first date on which: (1) both the Grace Parties and the Royal Parties have executed this Agreement; and (2) both the Committee and the Futures Representative have consented to this Agreement in writing pursuant to Section XXII(A) of this Agreement.

AA.    **"Extra-Contractual Claim"** means any Claim by any Grace Party or the Trust against a Royal Released Party, or by any Royal Party against any Grace Released Party or the Trust, as the context requires, seeking any type of relief, including compensatory, exemplary or punitive damages, on account of alleged bad faith; failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act, unfair trade practices act, or similar statutes, regulations or codes; or any other similar type of alleged misconduct or omission. "Extra-Contractual Claim" does not mean Claims for insurance coverage and/or benefits under any insurance policy.

BB.    **"Final Order"** means an order or judgment (including any modification or amendment thereof) that remains in effect and has not been reversed, vacated, stayed, or amended and as to which the time to appeal or seek review, rehearing or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing or certiorari has been taken or, if taken, remains pending.

CC.    **"Futures Representative"** means David Austern, the Asbestos PI Future Claimants' Representative appointed, for each Debtor, by Orders of the Bankruptcy Court dated May 24, 2004, and any successor to him.

DD.    **"Grace Parties"** means (1) the Debtors, (2) Montana Vermiculite Company, (3) Zonolite Company, (4) the respective directors, members, officers, shareholders, agents, and employees of each of the foregoing Persons identified in subsection (1) and (2) but only when acting in their capacity as such, and (5) each other Person over which, as of the Execution Date, the Persons listed in (1) and (2) above have the legal right, by way of contract, express corporate authority, or direct or indirect majority ownership, to act on behalf of or to bind and which are Insureds under a Subject Insurance Policy, including each of the respective directors, members, officers, shareholders, agents, and employees of the Persons listed above, solely in their capacities as such.  Any Person who meets the definition set forth above shall be individually referred to as a "Grace Party."  For the avoidance of doubt, "Grace Parties" does not include BNSF.

EE.    **"Grace Released Parties"** means (1) each of the Grace Parties; (2) each of their respective parents, trustees, subsidiaries, divisions, holding companies, merged companies, acquired companies, members, predecessors-in-interest, successors-in-interest, and assigns, solely in their capacities as such; (3) the directors, members, officers, shareholders, agents, attorneys and employees of the foregoing, solely in their capacities as such; and (4) the Committee, the Futures Representative and, as of the Release Date, the Trust.

FF.    **"Insurance Coverage Claim"** means any Claim for insurance coverage and/or other benefits under the Subject Insurance Policies.

8

GG.    **"Insured"** means any Person entitled to insurance coverage and/or other benefits under the Subject Insurance Policies, including "insureds," "named insureds" or "additional insureds" as those terms are defined or used in the Subject Insurance Policies.

HH.    **"Joint Plan of Reorganization"** means the Grace Parties' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009, including all exhibits thereto.

II.    **"Parties"** means the Grace Parties and the Royal Parties.

JJ.    **"Payment Date"** means the first day that is thirty (30) calendar days after the Approval Order becomes a Final Order.

KK.    **"Person"** means an individual, a corporation, a partnership, a joint venture, an association, a joint stock company, a limited liability company, a limited liability partnership, an estate, an unincorporated organization, a trust, a class or group of individuals, or any other entity or organization, including any federal, state or local governmental or quasi-governmental body or political subdivision, department, agency or instrumentality thereof.

LL.    **"Plan"** means the Joint Plan of Reorganization, as such plan may be modified from time to time in accordance with the terms thereof, or any other plan of reorganization filed by the Debtors (and all exhibits thereto); provided, however, that such modifications or the terms of such other plan of reorganization: (1) are not inconsistent with the terms of this Agreement; (2) do not materially and adversely affect the interests of the Royal Parties under this Agreement and (3) include the Asbestos PI Channeling Injunction.

MM.    **"Release Date"** means the date when the Escrow Amount is released to the Trust in accordance with Section II(C) of this Agreement.

NN.    **"Reserved Claims"** means "Reserved Claims" as defined in Section IV(D) of this Agreement.

OO.    **"Royal Affiliated Companies"** means Arrowood Capital Corp., Arrowood Indemnity Company, individually, and as corporate successor-in-interest to Royal Indemnity Company, and Royal Indemnity Company.

PP.    **"Royal"** means Royal Indemnity Company n/k/a Arrowood Indemnity Company.

QQ.    **"Royal Parties"** means (1) Arrowood Indemnity Company, individually, and as corporate successor-in-interest to Royal Indemnity Company, and its parent company, Arrowpoint Capital Corp., and Royal Indemnity Company; (2) each other Person over which, as of the Execution Date, the Persons listed in (1) above have the legal right, by way of contract, express corporate authority, or direct or indirect majority ownership, to act on behalf of or to bind, including each of the respective directors, members, officers, shareholders, agents, and employees of the Persons listed above, solely in their capacities as such.  Any Person who meets the definition set forth above shall be individually referred to as a "Royal Party."

RR.    **"Royal Released Parties"** means (1) each of the Royal Parties; (2) each of their respective past or present parents, affiliates, subsidiaries, divisions, holding companies, merged companies, acquired companies, members, predecessors-in-interest, successors-in-interest and assigns, solely in their capacities as such; and (3) the directors, members, officers, attorneys, shareholders, agents, and employees of the foregoing, solely in their capacities as such, and (4) each other Person over which, as of the date all Parties have executed the Agreement, any Royal Party has the legal right, by way of contract, express corporate authority, or direct or

10

indirect majority ownership, to act on behalf of or to bind and which have any obligation under a Subject Insurance Policy, including each of the respective directors, members, officers, shareholders, agents, and employees of the Persons listed above, solely in their capacities as such.

SS.    **"Settlement Amount"** means the sum of $5,800,000 (Five Million Eight Hundred Thousand United States Dollars).

TT.    **"Settled Asbestos Insurance Company"** means "Settled Asbestos Insurance Company," as that term is defined in the Joint Plan of Reorganization, or the equivalent term in any Plan.

UU.    **"Subject Insurance Policies"** means all of the following insurance policies:

(1)    any insurance policy listed on the schedules attached as Exhibit 2 ("Additional Identified Royal Insurance Policies") and Exhibit 3 ("Previously Settled Royal Policies") hereto; and

(2)    any Asbestos Insurance Policy (whether known or unknown) that was issued by a Royal Party to a Grace Party.

For the avoidance of doubt, Subject Insurance Policies do not include insurance policies issued or allegedly issued by a Royal Party to BNSF ("BNSF Policies"). It is understood and agreed that none of the policies identified in Exhibits 2 and 3 shall be deemed to be a BNSF Policy.

VV.    **"Trigger Date"** means the first day upon which all of the following have occurred or have been waived (to the extent they may be waived under Section VIII(A) hereto): (1) the Approval Order has been become a Final Order; (2) the Confirmation Order has become a Final Order; (3) the plan of reorganization as confirmed is a Plan, as defined above; (4) the Effective Date has occurred; and (5) the Committee and the Futures Representative have consented in writing to the Agreement.

11

WW.   **"Trust"** means the WRG Asbestos PI Trust established pursuant to the Joint Plan of Reorganization.

XX.   **"Workers' Compensation Insurance"** means that portion of any insurance policy that provides insurance coverage for Claims by present or former employees of any Grace Party under a government-mandated workers' compensation system.  Workers' Compensation Insurance expressly does not mean portions of any insurance policy entitled "Employer's Liability Insurance" or otherwise providing liability insurance coverage for employee claims outside a government-mandated workers' compensation system.

YY.   **"1995 Settlement Agreement"** means the January 5, 1995 Settlement Agreement between W.R. Grace & Co.-Conn. and Royal.

## II.   <u>PAYMENT OF SETTLEMENT AMOUNT</u>

A.   On or before the Payment Date, Arrowood Indemnity Company shall pay, in full, the Settlement Amount to the Escrow Agent for deposit into the Escrow Account.  Such payment shall be by wire transfer, cashier's check or other instrument that provides immediate same-day-available funds pursuant to account instructions to be provided by the Escrow Agent in the Escrow Agreement or as the Escrow Agent later notifies the Parties in writing consistent with the Escrow Agreement.  Only Arrowood Indemnity Company, and no other party, is obligated to pay the Settlement Amount.

B.   On the same day that it pays the Settlement Amount to the Escrow Agent pursuant to Section II(A) above, Arrowood Indemnity Company shall notify in writing by email the Grace Parties, the Committee, and the Futures Representative that it has made such payment.  Such notice shall attach or include a copy of written evidence of payment (as a .pdf attachment).

C.   The Escrow Agent shall release the Escrow Amount (1) to the Trust after ten (10) calendar days after receipt by the Escrow Agent (with notice to the Grace Parties, the

Committee, the Futures Representative, the Royal Parties, and the Trust) of written certification from counsel or other authorized agent of the Trust, the Committee, the Futures Representative, or the Grace Parties that the Trigger Date has occurred; or (2) to Arrowood Indemnity Company after ten (10) calendar days after receipt by the Escrow Agent, with notice to the Committee, the Futures Representative and the Trust (or to so many of them as exist at the time such notice is required to be given) of written certification from authorized agents of both the Royal Parties and the Grace Parties that this Agreement has become void in accordance with Section VIII. If the Trust does not yet exist at the time that the Escrow Agent is required to release the Escrow Amount to the Trust pursuant to Section II(C)(1) above, then the Escrow Agent shall hold the Escrow Amount pursuant to the Escrow Agreement until the Trust comes into existence, and shall then release the Escrow Amount to the Trust within five (5) calendar days of the date when the Trust provides written payment instructions to the Escrow Agent.

D.     No part of the Settlement Amount shall be subject to or give rise to any obligation for payment or reimbursement to any Royal Released Party by the Grace Released Parties, or the Trust at any time, including through retrospective premiums, deductibles or self-insured retentions, Claim-related charges or otherwise.

E.     Subject to the terms and conditions of this Agreement and the Approval Order having become a Final Order, the Settlement Amount is the total amount the Royal Released Parties are obligated to pay to the Grace Parties or the Trust on account of any and all Claims of any kind alleged to be covered by the Subject Insurance Policies. Effective upon the Release Date, the Parties shall treat all limits of liability of the Subject Insurance Policies, including all per occurrence and aggregate limits, as fully exhausted.

F.      The Royal Parties are not acting as volunteers in paying the Settlement Amount, and the Royal Parties' payment of the Settlement Amount reflects alleged liabilities and obligations to the Grace Parties for amounts one or more of the Grace Parties contend that the Royal Parties are or may become liable on account of certain Claims.

G.      The Royal Parties shall not seek reimbursement from any Person for any payments the Royal Parties are obligated to make under this Agreement, whether by way of a Claim for contribution, apportionment, subrogation, indemnification, retrospective premiums, deductibles, self-insured retentions, other Claim-related charges, or otherwise, other than from the Royal Parties' reinsurers solely in their capacities as reinsurers of the Royal Parties. Notwithstanding the foregoing, if a third party pursues a claim for contribution, apportionment, subrogation, indemnification, or comparable remedies, against a Royal Released Party relating to or arising out of any of the Claims released pursuant to Section IV hereto, then the Royal Parties shall be free to assert all Claims and defenses, including a claim for contribution, apportionment, subrogation, indemnification, or any other comparable remedy, against such third party. The Grace Parties shall use their best efforts to obtain agreements similar to those contained in this Section II(G) from all Persons with which they settle with respect to Claims of the type released pursuant to Section IV hereto.

H.      In the event that one or more of the Grace Parties receives payment from another insurer of the Grace Parties and such other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from a Royal Released Party as a result of a Claim for contribution, apportionment, subrogation, indemnification or other comparable remedy for the Royal Released Party's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity of any Grace Party for any Claims released

14

pursuant to this Agreement, such Grace Party shall voluntarily reduce its judgment or Claim

against, or settlement with, such other insurer to the extent necessary to eliminate any such claim

for contribution, apportionment, subrogation, indemnification, or other comparable remedy,

against the Royal Released Party.  To ensure that such a reduction is accomplished, the Royal

Released Party shall be entitled to assert this Section as a defense to any action against it for any

such portion of the judgment or Claim and shall be entitled to have the court or appropriate

tribunal issue such orders as are necessary to effectuate the reduction to protect the Royal

Released Party from any liability for the judgment or Claim.

## III.   BANKRUPTCY-RELATED OBLIGATIONS

     A.    As soon as practicable after the Execution Date, the Debtors will file a motion

seeking entry of the Approval Order (the "Approval Motion"), and the Parties shall use their

reasonable best efforts promptly to obtain entry of the Approval Order as a Final Order as soon

as reasonably possible.  The Royal Parties, at their own expense, will cooperate with the Debtors

in obtaining the Approval Order.

     B.    The Debtors shall serve notice of the hearing on the Approval Motion on the

parties and in the manner prescribed by Fed. R. Bankr. P. 2002(a) and Del. Local Bankr. R.

9006-1.  In addition, the Royal Parties, in their discretion and at their sole cost and expense, may,

but shall not be required to, cause a notice of the hearing on the Approval Motion to be mailed or

published, as they deem desirable.

     C.    The Debtors shall, following the Approval Order becoming a Final Order, but

subject to the occurrence of the Release Date:  (1) designate the Royal Affiliated Companies as

Settled Asbestos Insurance Companies under the Joint Plan of Reorganization who have satisfied

all requirements necessary to be deemed Asbestos Protected Parties with respect to the Subject

Insurance Policies, entitling them to the full benefits and protections of the Asbestos PI

Channeling Injunction contemplated by the Joint Plan of Reorganization and such other benefits

and protections as are afforded under the Joint Plan of Reorganization with respect to the Subject

Insurance Policies; and (2) designate this Agreement as an Asbestos Insurance Settlement

Agreement under the Joint Plan of Reorganization. The Committee's and the Futures

Representative's written consent to this Agreement shall constitute their consent to these

designations.

D.      The Debtors, Committee and Futures Representative will exercise their reasonable

best efforts to obtain an Asbestos PI Channeling Injunction and to confirm a plan of

reorganization that is a Plan.

E.      The Debtors and, upon its creation, the Trust, covenant that they shall not at any

time from and after the Release Date take any action to terminate, reduce or limit the scope of

the Asbestos PI Channeling Injunction as it applies, upon the Release Date, to any Royal

Affiliated Companies.

F.      Effective upon the Release Date, the Trust shall be bound to this Agreement as if

it were a party hereto, and thereupon shall be entitled to enforce this Agreement and have the

Agreement enforced against it.

G.      Pending the occurrence of the Release Date (unless the Agreement otherwise is

terminated in accordance with its terms), no Party will seek to reject or to compel rejection of

this Agreement as an executory contract in the Bankruptcy Case or any other bankruptcy case.

H.      Upon, or promptly after the occurrence of, the Trigger Date, the Debtors shall file

a written notice in the Bankruptcy Court, with service of such notice on the Royal Parties, stating

that the Effective Date and Trigger Date have occurred.

I.      Following the Execution Date, the Royal Parties (1) will suspend prosecution of all of their objections to the Plan or Plan documents, to confirmation of a Plan, or to the Debtors', Committee's or Futures Representative's motions or applications pending in the Bankruptcy Case (including any appeals of decisions in the Bankruptcy Case); (2) will suspend prosecution of their proof of claim; (3) will take no further actions of any nature (including filing new objections to a Plan or Plan documents and initiating or taking discovery) that may hinder, delay or oppose actions of Debtors, the Committee or the Futures Representative in the Bankruptcy Case, including actions to confirm a Plan; and (4) will not oppose the entry of a Confirmation Order; provided; however, that in the event that the Bankruptcy Court does not issue an Approval Order or the Approval Order does not become a Final Order, the Royal Parties may renew prosecution of their objections and of their proof of claim, which shall be deemed to be preserved in the interim, in which event any filing deadlines shall be deemed to have been tolled.

J.      Upon the Bankruptcy Court's Approval Order becoming a Final Order, the Royal Parties shall withdraw all of their objections to a Plan or Plan documents, to confirmation of a Plan, or to the Debtors', Committee's or Futures Representative's motions or applications pending in the Bankruptcy Case (including any appeals of decisions in the Bankruptcy Case); provided, however, that, if the Agreement becomes void pursuant to Section VIII of this Agreement, the Royal Parties will be deemed to have reserved their rights and objections in connection with confirmation-related proceedings and proceedings concerning the assertion by the Royal Parties of Claims in the Bankruptcy Case, including the deadlines for filings, until the Release Date, at which time any reservation shall be withdrawn with prejudice.

K.    Notwithstanding any of the foregoing, if the Joint Plan of Reorganization is changed or another Plan is filed, the Royal Parties may object to confirmation of the revised or new plan of organization, if such modifications or the terms of such other plan of reorganization: (1) are inconsistent with the terms of this Agreement; (2) materially and adversely affect the interests of the Royal Parties under this Agreement; and/or (3) the revised plan or new plan does not include the Asbestos PI Channeling Injunction.

L.    The Royal Parties further reserve their rights, notwithstanding any other provision of this Agreement, to object and be heard in the Bankruptcy Case (i) in response to any opposition to entry of the Approval Order, (ii) to protect their rights in connection with the Reserved Claims, including, without limitation, in connection with the Libby Claimants' appeal of the preliminary injunction against the assertion of certain claims against BNSF and any other Royal coverage not released under this Settlement Agreement, and (iii) to the extent that any objector to the Plan or other Person takes any action inconsistent with this Agreement that materially and adversely affects the interests of the Royal Parties under this Agreement.

M.    Unless this Agreement is otherwise terminated in accordance with its terms, indemnification claims under the 1995 Settlement Agreement shall be treated under the Joint Plan of Reorganization and the Grace Parties shall not prosecute any objection to the Royal Parties' proof of claim or take any other action that would have the effect of releasing any such proof of claim. Effective upon the Release Date, Royal's proof of claim shall be deemed withdrawn and resolved pursuant to the terms of this Agreement, such that Royal's right to seek indemnification from the Debtors for Claims with respect to the 1995 Settlement Agreement on account of, or with respect to, Asbestos PI Claims shall survive after the Release Date and shall be channeled to the Trust in accordance with the terms of the Joint Plan of Reorganization.

## IV.    **RELEASES**

A.    Effective upon the Release Date, the Grace Parties and the Trust release the Royal Released Parties forever from any and all Claims, whether known or unknown, for or with respect to:  (1) insurance coverage and/or other benefits under the Subject Insurance Policies, including, without limitation, any and all coverage and/or other benefits for, or in connection with, or arising out of, any Asbestos Claims; (2) Extra-Contractual Claims arising in connection with, or based on, the Claims released in subsection (1) above; and (3) any and all deductibles, self-insured retentions, retrospective premiums or other deductions or charges of any kind, with respect to the Claims released in subsections (1) and (2) above.  For the avoidance of doubt, effective upon the Release Date, the Grace Parties shall be deemed to have fully released and extinguished all Claims against the Royal Released Parties under the Subject Insurance Policies in connection with, or arising out of, any Asbestos Claims and all Extra-Contractual Claims arising in connection with, or based on, any Asbestos Claims.  The Royal Released Parties shall have no further obligation to the Grace Parties under the Subject Insurance Policies for any Asbestos Claims or Extra-Contractual Claims arising in connection with, or based on, Asbestos Claims.  The Grace Parties acknowledge that they have no rights to insurance coverage and/or other benefits under the BNSF Policies.  To the extent that the Grace Parties may be deemed to have any rights to insurance coverage and/or other benefits under the BNSF Policies, the Grace Parties hereby fully release and extinguish such rights and any Claims they may have against the Royal Released Parties arising under the BNSF Policies.

B.    Effective upon the Release Date, the Royal Parties release the Grace Released Parties forever from any and all Claims, whether known or unknown, for or with respect to: (1) insurance coverage and/or other benefits under the Subject Insurance Policies, including, without limitation, any and all coverage and/or other benefits for, or in connection with, or

19

arising out of, any Asbestos Claims; (2) Extra-Contractual Claims arising in connection with or based on the Claims released in subsection (1) above; and (3) any and all deductibles, self-insured retentions, retrospective premiums or other deductions or charges of any kind, with respect to the Claims released in subsections (1) and (2) above.

   C.  The Royal Parties agree that they will not seek reimbursement of the Settlement Amount, or of any other payments the Royal Parties have made to or for the benefit of Grace under or in connection with the Subject Insurance Policies or the 1995 Settlement Agreement, whether by way of contribution, subrogation, reimbursement, indemnification or otherwise, from any Person, other than the Royal Parties' reinsurers in their capacities as such. Notwithstanding the foregoing, if another insurer of the Grace Parties pursues a Claim sounding in contribution, subrogation, reimbursement, indemnification or otherwise, against the Royal Parties, then the Royal Parties will be free to assert a Claim sounding in contribution, subrogation, reimbursement, indemnification or otherwise against such other insurer. To the extent that a Royal Party recovers a judgment or settlement against such other insurer with respect to a payment made to Grace under this Agreement or the 1995 Settlement Agreement, the net proceeds thereof (*i.e.* less any fees, costs and expenses incurred by the Royal Party in prosecuting and defending such Claim) will be distributed promptly to the Grace Parties or, after the Effective Date, the Trust. The Grace Parties will use their reasonable best efforts to obtain from all insurers with which they settle disputes regarding coverage for Asbestos PI Claims an agreement similar to the conditions set forth in this Section IV(C).

   D.  Notwithstanding Section IV(C), any rights, interests and/or Claims, including any contractual indemnity Claim, that the Royal Parties may have against anyone including the Debtor, whether by way of contribution, subrogation, reimbursement, indemnity or otherwise, as

a result of (i) Claims that are asserted by BNSF against Royal based on the BNSF Policies, or (ii) direct actions against Royal based on the BNSF Policies, are preserved and not released pursuant to this Agreement ("Reserved Claims").  If and to the extent that any Reserved Claim is an Asbestos PI Claim, it will be subject to the Asbestos PI Channeling Injunction.

E.    The Committee's and the Futures Representative's written consent to this Agreement shall constitute their agreement to the releases set forth in Sections IV(A).

F.    Following the Release Date, neither any Grace Party nor the Trust shall seek coverage from or tender any Claims to any Royal Released Party for any Asbestos Claim under any of the Subject Insurance Policies or cooperate with any Person in bringing such claim.  The Grace Parties further agree that they will not cooperate with any Person in the attempted assignment of contribution or any other rights under the Subject Insurance Policies, except as expressly provided in Section 7.2.2(d) of the Joint Plan of Reorganization and in the Asbestos Insurance Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization.

G.    The Grace Parties or, upon its creation, the Trust shall use its best efforts to require that any Person who accepts payment from the Trust shall be deemed to have finally and completely released and waived any and all Asbestos PI Claims against any of the Grace Released Parties and Royal Released Parties.

H.    The Parties recognize and understand that Claims that have been or may be asserted against the Grace Parties and/or the Trust may increase or decrease in amount or in severity over time, that Claims that have been or may be asserted against the Grace Parties and/or the Trust may include progressive, cumulative, unknown, and/or unforeseen elements, and that there may be hidden, unknown, and unknowable damages, defense expenses, or other

costs related to such Claims. Nevertheless, the Parties willingly enter into this Agreement, including the releases set forth in this Section IV.

I.        The Parties acknowledge they have been advised by their respective legal counsel and are familiar with the provisions of Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of the executing of the release which if known by him or her must have materially affected his or her settlement with the debtor.

In furtherance of this Agreement, the Parties expressly waive any and all rights they may have under any contract, statute, code, regulation, ordinance, or the common law, which may limit or restrict the effect of a general release as to Claims, including Insurance Coverage Claims, that they do not know or suspect to exist in their favor at the time of the execution of this Agreement.

J.        Nothing in this Agreement is intended to, nor shall be construed to, release, waive or otherwise affect the Parties' rights and obligations under this Agreement.

K.        Nothing in this Agreement shall constitute a release, waiver or assignment of any of the Royal Released Parties' rights against their reinsurers, solely in their capacities as such, which rights are expressly retained by the Royal Released Parties.

## V.        DEFENSE OF THE CHANNELING INJUNCTION

A.        Following the Release Date, if any Person asserts against the Royal Parties an Asbestos PI Claim that is subject to the Asbestos PI Channeling Injunction ("Royal Channeling Injunction Claim") based on or arising under the Subject Insurance Policies, the Trust will expend its reasonable best efforts to establish that such Royal Channeling Injunction Claim is enjoined as to the Royal Parties and channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Bankruptcy Code Section 524(g).

22

B.     Except as provided hereafter, the Trust shall bear the costs and expenses, including attorneys' fees, of defending the application of the Asbestos PI Channeling Injunction to any Royal Channeling Injunction Claim, provided that the Trust's total obligation to bear the cost of defending the application of the Asbestos PI Channeling Injunction to any Royal Channeling Injunction Claims (including the portion of any Claim that is a Royal Channeling Injunction Claim but that also names as defendants Persons other than Royal Parties) shall not exceed an amount equal to the Settlement Amount.  When the Trust has expended an amount equal to the Settlement Amount in defending the application of the Asbestos PI Channeling Injunction to Royal Channeling Injunction Claims, the Trust will have no further obligation to defend the Asbestos PI Channeling Injunction with respect to any Royal Channeling Injunction Claim.  For the avoidance of doubt, this Section V shall not obligate the Trust to retain counsel to represent the Royal Parties or to pay the costs and expenses, including attorneys' fees, associated with such legal, consulting or expert representation as the Royal Parties may choose to engage in connection with any Claim against the Royal Parties.

C.     Notwithstanding the foregoing, after the Trust has expended an amount equal to the Settlement Amount in defending the application of the Asbestos PI Channeling Injunction to Royal Channeling Injunction Claims, the Trust shall continue to cooperate with the Royal Parties, at the Royal Parties' request and expense, by assisting the Royal Parties to establish that any Royal Channeling Injunction Claim is enjoined as to the Royal Parties and channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Bankruptcy Code Section 524(g).

D.     The Royal Parties shall promptly notify the Trust in writing of any demand, notice, summons or other process received by a Royal Party that the Royal Parties reasonably believe is a Royal Channeling Injunction Claim.  If the Trust determines that a Claim presented

23

by the Royal Parties is not a Royal Channeling Injunction Claim because it is not an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction, the Trust will promptly notify the Royal Parties and will not undertake to defend the application of the Asbestos PI Channeling Injunction as to such Claim. In the event of a dispute as to whether a Claim triggers the Trust's obligations under Sections V(A) and (B), the Trust and the Royal Parties shall meet and confer to attempt to resolve any such dispute. If they are unable to resolve such dispute through meeting and conferring, they may litigate the issue before the Bankruptcy Court, or, if the Bankruptcy Court refuses to exercise jurisdiction, before any court of competent jurisdiction. If the Trust undertakes to defend the application of the Asbestos PI Channeling Injunction to a Claim presented by the Royal Parties, but a court of competent jurisdiction thereafter determines that the Claim is not an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction and such order becomes a Final Order, the Trust will have no further obligation to defend the application of the Asbestos PI Channeling Injunction to such Claim.

## VI.    NO PREJUDICE AND STAY OF PROCEEDINGS

The Grace Parties and the Royal Parties will not file any proceeding against one another with respect to the Subject Insurance Policies and the Claims that are the subject of the releases under this Agreement, except any action to enforce the obligations under this Agreement, unless the Agreement becomes null and void pursuant to Section VIII. If the Agreement becomes void under Section VIII, any statute of limitations or repose, or other time-related limitation, shall be deemed to have been tolled from the Execution Date until thirty (30) calendar days after the effective date of termination under Section VIII.

## VII.    REPRESENTATIONS AND WARRANTIES OF THE PARTIES

Each of the Parties separately represents and warrants (in the case of the Grace Parties, subject to the entry of the Approval Order) as follows:

24

A.      The Grace Parties and the Royal Parties have the requisite power and authority to enter into this Agreement and to perform the obligations imposed on them by this Agreement.

B.      The execution and delivery of, and the performance of the obligations contemplated by, this Agreement have been approved by duly authorized representatives of each Party, and by all other necessary actions of the Party.

C.      The making and performance of this Agreement will not violate any provision of each Party's respective articles of incorporation, charter or bylaws.

D.      The Grace Parties and the Royal Parties have expressly authorized their undersigned representatives to execute this Agreement on their behalf as their duly authorized agents.

E.      The Grace Parties and the Royal Parties have read the entire Agreement and knows the contents hereof, that the terms hereof are contractual and not merely recitals, that they have signed this Agreement of their own free act, and that in making this Agreement they have obtained the advice of legal counsel.

F.      This Agreement has been thoroughly negotiated and analyzed by counsel for the Parties and has been executed and delivered in good faith, pursuant to arm's length negotiations, and for valuable consideration.

G.      The Grace Parties and the Royal Parties have conducted diligent, good faith searches for any third-party liability policy that was issued by a Royal Party to a Grace Party or that provides insurance coverage and/or other benefits to a Grace Party and as to which the policy term expired prior to the Execution Date, and that they are not aware of any such insurance policy, secondary evidence of any such insurance policy or any reason to believe such an insurance policy exists, other than the Subject Insurance Policies listed on Exhibits 2 and 3,

and Workers' Compensation Insurance and such secondary evidence as has previously been exchanged by the Parties. The search conducted by the Grace Parties consisted of a review of relevant archives for copies of general liability, wrap-up and workers' compensation/ employers' liability insurance policies, and a review of available insurance schedules. The search conducted by the Royal Parties consisted of searches of internal corporate databases in which extant historical policy information is maintained. The Parties agree that the searches described in the prior two sentences constitute "diligent, good faith searches."

H.      Neither the Grace Parties nor the Royal Parties, nor any of their predecessors, successors, assigns or affiliates have previously assigned, transferred or purported to assign or transfer to any other Person any right, Claim, Demand, claim of right or cause of action released, waived or assigned herein; provided, however, that the Royal Parties have previously disclosed that Royal Indemnity Company is n/k/a Arrowood Indemnity Company.

## VIII.  **TERMINATION OF AGREEMENT**

A.      After the Execution Date, this Agreement shall become null and void upon the occurrence of any of the following events (the "Voiding Contingencies"):

> (1)     The entry of an order by the Bankruptcy Court denying approval of this Agreement or entry of an order approving this Agreement that is not the Approval Order;
>
> (2)     The entry of an order dismissing the Bankruptcy Case prior to the Effective Date of the Joint Plan of Reorganization;
>
> (3)     The entry of an order by the Bankruptcy Court that holds that the Royal Parties are not Settled Asbestos Insurance Companies and thus Asbestos Protected Parties with respect to the Subject Insurance Policies;
>
> (4)     The entry of an order by the Bankruptcy Court converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code;
>
> (5)     The filing of a plan of reorganization by the Debtors, the Committee and/or the Futures Representative that is not a Plan;

(6)     The entry by the Bankruptcy Court of an order confirming a Chapter 11 plan of reorganization for the Debtors that is not a Plan; or

(7)     The failure by Arrowood Indemnity Company to make the payment required by Section II(A);

provided, however, that the Royal Parties (acting collectively, and not individually) may, at their sole option and in their sole discretion, irrevocably waive any of the contingencies set forth in Sections VIII(A)(3-6) by providing written notice to the Grace Parties, the Committee and the Futures Representative within thirty (30) calendar days after the occurrence of a Voiding Contingency, in which event the Agreement shall remain in force.  Any Voiding Contingency(ies) so waived shall be deemed irrevocably waived for all purposes.

B.      Notwithstanding anything in this Agreement to the contrary, in the event that this Agreement becomes null and void pursuant to Section VIII(A) hereto:

(1)     The Agreement, except for Sections I, II(D), IX, XIII, XIV and XXI (which Sections shall remain in full force and effect), shall be vitiated and shall be a nullity;

(2)     None of the Royal Parties shall be obligated to pay the Settlement Amount pursuant to this Agreement, or, if the Settlement Amount has already been paid to the Escrow Agent, the Escrow Amount shall be returned to Arrowood Indemnity Company in accordance with Section II(C)(2);

(3)     None of the Royal Parties and none of the Grace Parties shall be bound by the terms of any Approval Order;

(4)     The releases set forth in Section IV hereto shall become null and void *ab initio*;

(5)     Except as otherwise provided in subparagraph (6) immediately below, the Subject Insurance Policies shall remain in the same force and effect as if this Agreement had never existed, and the Parties shall have all of the rights, defenses, and obligations under or with respect to the Subject Insurance Policies, if any, that they would have had if this Agreement had never existed;

(6)     The 1995 Settlement Agreement shall remain in the same force and effect as if this Agreement had never existed, and the Royal Parties shall have all of the rights, protections and obligations under or with respect to the 1995 Settlement Agreement that they would have had if this Agreement had never existed;

(7)     Any and all statutes of limitation or repose, or other time-related limitations, shall be deemed to have been tolled for the period from the Execution Date, through the date that is thirty (30) calendar days following the date on which the Agreement becomes null and void, and no Party shall assert or rely on any time-related defense to any Claim or Demand by any other Party related to such period.

## IX.    ENTIRE AGREEMENT

A.     This Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between the Parties.  Except as otherwise expressly provided, this Agreement supersedes all prior communications and understandings between the Parties and their representatives regarding the matters addressed by this Agreement.  Except as explicitly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms.  Any statements, promises, or inducements, whether made by any Party or any agents of any Party, that are not contained in this Agreement shall not be valid or binding.

B.     Notwithstanding the foregoing, except as otherwise expressly provided herein, the Parties intend that the 1995 Settlement Agreement shall remain in full force and effect.

## X.    NO ADMISSION OF LIABILITY/NO ENDORSEMENT OF PLAN

A.     Except as necessary to enforce any undertakings set forth in this Agreement, nothing contained in this Agreement is or shall be deemed to be (1) an admission by any of the Royal Parties that any Grace Party or the Trust was or is entitled to any insurance coverage with respect to Asbestos Claims or any other Claims or as to the validity of any of the coverage positions that have been or could have been asserted by the Grace Parties and/or the Trust; or (2) an admission by the Grace Parties as to the validity of any of the coverage positions or

28

defenses to coverage that have been or could have been asserted by the Royal Parties with respect to Asbestos Claims or any other Claims.

B.      By entering into this Agreement, the Parties have not waived nor shall be deemed to have waived any right, obligation, privilege, defense or position they may have asserted or might assert in connection with any Claim, matter, Person or insurance policy outside the scope of this Agreement.  No Person other than the Parties, the Grace Released Parties, the Royal Released Parties, the Committee, the Futures Representative and the Trust shall have any legally enforceable rights or benefits under this Agreement.  The Parties, the Grace Released Parties, the Royal Released Parties, the Committee, the Futures Representative and the Trust are intended third-party beneficiaries of this Agreement.

C.      This Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession by any Party of liability, culpability, or wrongdoing.  The Royal Parties' entry into this Agreement does not constitute an endorsement of any plan of reorganization for the Grace Parties or a statement of position of any kind as to whether any such plan of reorganization as proposed or confirmed is lawful or unlawful.

## XI.    **RIGHT OF REVIEW**

The Royal Parties shall have the right, at their own expense, upon reasonable notice, at a time and place convenient to the Trust, to review records relating to Asbestos PI Claims paid by the Trust solely for the purpose of obtaining reinsurance for any portion of the Settlement Amount or of complying with applicable regulations.  The Trust shall have no obligation to create any new documents or to collect any information in connection with any such review beyond the documents or information ordinarily created or maintained by the Trust, and the Royal Parties shall not be permitted to challenge the review, determination or payment of any Claims by the Trust or the payment of any expenses or costs of the Trust; provided, however that

the determination or payment of any Claim by the Trust shall have no collateral estoppel effect as to the Royal Parties with respect to Claims asserted against the Royal Parties by Persons not parties to this Agreement. This Section XI, and any results of such a review, shall not affect the Royal Parties' payment obligations under this Agreement. The Royal Parties shall not provide any information, documents, notes, or other results of such review to any other Person and shall keep any and all such information, documents, notes, and other results confidential, except that the Royal Parties may provide such information, documents, notes, or other results to any of their auditors, regulators, or reinsurers solely for the purpose of obtaining reinsurance for any portion of the Settlement Amount or of complying with applicable regulations, provided that the Royal Parties shall first obtain from such parties a written pledge to maintain the confidentiality of the information, documents, notes, and other results and not to disclose such information, documents, notes or other results to any other Person.

## XII.   **COOPERATION**

In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person other than the Trust, the Committee, the Futures Representative, the Grace Released Parties, the Royal Released Parties or a Party hereto to invalidate, interpret, or prevent the validation, enforcement, or carrying out of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding. The Parties further agree to cooperate fully in the enforcement of this Agreement and at no time will they act in any manner which will have the effect of depriving the other Party of the right to receive the benefits of this Agreement. The Trust shall be deemed to have agreed to, and to have become bound by, the obligations under this paragraph upon the occurrence of the Release Date.

30

## XIII.  **CONSTRUCTION**

This Agreement was negotiated among the Parties hereto at arm's length and in good faith, with each Party receiving advice from independent legal counsel.  It is the intent of the Parties that no part of this Agreement be construed against any of the Parties hereto because of the identity of the drafter or the fact that the Royal Parties are insurance companies.  It is agreed among the Parties hereto that this is not an insurance contract and that no special rules of construction apply to this Agreement, including the doctrine of contra proferentem.  The releases, benefits and protections afforded to the Royal Parties under this agreement are intended to supplement those granted under the 1995 Settlement Agreement which remains in full force and effect.

## XIV.  **NOTICE**

All notices, demands, payments, accountings or other communications that any Party desires or is required to give shall be given in writing and shall be deemed to have been given if hand delivered, faxed, emailed (as a .pdf attachment), or if mailed by United States first-class mail, postage prepaid, to the Parties at the addresses noted below, or such other address as any Party may designate in writing from time to time:

If to the Grace Parties:     W. R. Grace & Co.
            7500 Grace Drive
            Columbia, MD  21044
            Attn: General Counsel
            Telephone:  (410) 531-4000
            Facsimile:  (410) 531-4545

With a copy to:       Kirkland & Ellis LLP
            Citigroup Center
            153 East 53rd Street
            New York, NY  10022
            Attn:  Theodore L. Freedman
            Telephone:  (212) 446-4800
            Facsimile:  (212) 446-4900

and

Pachulski, Stang, Ziehl, & Jones LLP
919 North Market Street, 17th Floor

P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier
19801)
Attn:  Laura Davis Jones/James E. O'Neill
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

If to the Royal Parties:                        Arrowpoint Capital
                                                3600 Arco Corporate Drive
                                                Charlotte, NC  28273
                                                Attn:  Timothy P. O'Reilly
                                                Telephone:  (704) 522-2214
                                                Facsimile:  (704) 522-2414

With a copy to:                                 Wilson Elser Moskowitz Edelman & Dicker LLP
                                                150 East 42nd Street
                                                New York, NY  10017-5639
                                                Attn: Carl J. Pernicone
                                                Telephone: (212) 490-3000 x2656
                                                Fascimile: (212) 490-3038

                                                and

                                                O'Melveny & Myers LLP
                                                Seven Times Square
                                                New York, New York  10024
                                                Attn: Paul Koepff
                                                Telephone: (212) 326-2000
                                                Facsimile: (212) 326-2061

If to the Committee:                            Caplin & Drysdale, Chartered
                                                One Thomas Circle, NW, Suite 1100
                                                Washington, DC  20005
                                                Attn:  Peter Lockwood
                                                Telephone:  (202) 862-5000
                                                Facsimile:  (202) 862-3301

                                                and

                                                Caplin & Drysdale, Chartered
                                                375 Park Avenue, 35th Floor
                                                New York, NY  10152

<table>
<tr><td></td><td>Attn: Elihu Inselbuch<br>Telephone: (212) 319-7125<br>Facsimile: (212) 644-6755</td></tr>
<tr><td>With a copy to:</td><td>Anderson Kill & Olick, PC<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Attn: Robert M. Horkovich<br>Telephone: (212) 278-1322<br>Facsimile: (212) 278-1733</td></tr>
<tr><td>If to the Futures Representative:</td><td>David T. Austern<br>3110 Fairview Park Drive<br>Suite 200<br>Falls Church, VA 22042-0683<br>Telephone: (703) 205-0835<br>Facsimile: (703) 205-6249</td></tr>
<tr><td>With a copy to:</td><td>Orrick, Herrington & Sutcliffe LLP<br>1152 15th Street, N.W.<br>Washington, D.C. 20005-1706<br>Attn: Roger Frankel<br>Telephone: (202) 339-8400<br>Facsimile: (202) 339-8500</td></tr>
</table>

Notice shall be provided to the Trust to such Person(s) as the Trust may designate in writing.

## XV.    **HEADINGS**

Titles and captions contained in the Agreement are inserted only as a matter of convenience and are for reference purposes only. Such titles and captions in no way are intended to define, limit, expand or describe the scope of this Agreement, nor the intent of any provision thereof.

## XVI.   **EXECUTION AND DELIVERY**

This Agreement may be executed in counterpart originals, all of which, when so executed and taken together, shall be deemed an original and all of which shall constitute one and the same instrument. Each counterpart may be delivered by facsimile or email (as a .pdf

attachment), and a faxed or emailed signature shall have the same force and effect as an original signature.

## XVII. **DISPUTE RESOLUTION**

The Parties agree that before resorting to litigation they will attempt to resolve informally any disputes arising under this Agreement through good faith negotiations for a period of thirty (30) days after written notification regarding such dispute. The Parties agree to submit all disputes relating to this Agreement to the Bankruptcy Court. If the Bankruptcy Court refuses to exercise jurisdiction over any such dispute, the Parties may submit such dispute to any court of competent jurisdiction.

## XVIII. **ASSIGNMENT**

Except as expressly provided by this Agreement or by the Joint Plan of Reorganization, this Agreement shall not be assignable by any Party hereto without the prior written consent (which shall not be unreasonably withheld) of (1) the other Parties, (2) the Committee and the Futures Representative to the extent each exists, and (3) the Trust if it exists.

## XIX. **AMENDMENT**

This Agreement may not be amended, altered or modified except by a written agreement duly executed by each Party (or its successors or assigns) and with the consent of the Committee, the Futures Representative, or, following the Effective Date, the Trust.

## XX. **NO WAIVER**

Neither the waiver by a Party hereto of a breach of or a default under any of the provisions of this Agreement, nor the failure of a Party, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege hereunder shall thereafter be construed as a waiver of any subsequent breach or default of a similar nature, or as a waiver of any such provisions, rights, or privileges hereunder.

## XXI.    **AGREEMENT INADMISSIBLE**

Settlement negotiations leading up to this Agreement and all related discussions and negotiations shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions.  Except as necessary with respect to the motion seeking the Approval Order, any evidence of the terms of this Agreement or negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except in (1) an action or proceeding to enforce the terms of this Agreement, (2) any possible action or proceeding between the Royal Parties and any of their reinsurers, (3) as otherwise directed by any court of competent jurisdiction, or (4) as otherwise provided herein.  Other than to enforce the terms of this Agreement, this Agreement shall not be used as evidence or precedent or in any other manner, in any court, dispute resolution proceeding, or negotiation, or to create, prove, or interpret the Parties' obligations under any insurance policy or any agreement between any Grace Party and any insurer other than the Royal Parties.

## XXII.  **CONDITIONS PRECEDENT**

A.    It is a condition precedent to the effectiveness of this Agreement that the Committee and the Futures Representative consent in writing to the Grace Parties' entry into this Agreement, and this Agreement is subject to such consent.  Such consent by the Committee and the Futures Representative shall be made solely in their capacities as such.

B.    Consummation of the transactions contemplated by this Agreement is expressly conditioned upon (1) entry of the Approval Order; (2) the Approval Order becoming a Final Order; and (3) the occurrence of each of the Effective Date, the Trigger Date and the Release Date.

## XXIII. SUCCESSORS

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns, including the Reorganized Debtors and the Trust.

[remainder of page intentionally left blank]

IN WITNESS WHEREOF, the Parties, by their duly authorized representatives, have caused this Agreement to be duly executed as of the date set forth with the respective signatures below:

**FOR EACH OF THE GRACE PARTIES
(conditioned upon the entry of the Approval
Order)**

By:  *Richard C. Finke*

Name:  RICHARD C. FINKE

Title:  ASSISTANT GENERAL COUNSEL

Date:  JUNE 17, 2009

**FOR EACH OF THE ROYAL PARTIES**

By:  _____

Name:  _____

Title:  _____

Date:  _____

37

IN WITNESS WHEREOF, the Parties, by their duly authorized representatives, have caused this Agreement to be duly executed as of the date set forth with the respective signatures below:

**FOR EACH OF THE GRACE PARTIES (conditioned upon the entry of the Approval Order)**

By: _____

Name: _____

Title: _____

Date: _____

**FOR EACH OF THE ROYAL PARTIES**

By: _T. Kemp Hooper_____

Name: _T. KEMP HOOPER_____

Title: _REGIONAL CLAIM MANAGER_____

Date: _6/17/09_____

38

In accordance with Section XXII(A) of the Agreement, the following Persons are executing this Agreement below solely to evidence their consent to (1) the Grace Parties' entry into this Agreement, (2) the designation of the Royal Parties as Settled Asbestos Insurance Companies as required by Section III(C) hereto, and (3) the releases given on their behalf as provided in Section IV(A) hereto:

**FOR THE FUTURES REPRESENTATIVE**

_____

Name: David T. Austern

Title: Asbestos PI Future Claimants' Representative

Date: _____

**FOR THE COMMITTEE**

By: _____

Name: _____

Title: _____

Date: _____

**EXHIBITS**

1.    Approval Order

2.    Additional Identified Royal Insurance Policies

3.    Previously Settled Royal Policies

**EXHIBIT 1**

**Approval Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*, [1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors | ) | |
| | ) | **Hearing Date:  July 27, 2009 at 10:30 a.m.** |
| | ) | **Objection Deadline:  July 10, 2009** |
| | ) | **Agenda No._____** |

### ORDER PURSUANT TO SECTIONS 105, 1107 AND 1108 OF THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING AND APPROVING THE DEBTORS ENTERING INTO THE SETTLEMENT AGREEMENT WITH THE ROYAL PARTIES

Upon the motion dated June 17, 2009 (the "Motion") of the above-captioned debtors and

debtors-in-possession (the "Debtors") for entry of an order pursuant to sections 105, 1107 and

1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 9014

and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving

the Settlement Agreement by and between the Grace Parties and the Royal Parties (the

---

[1] The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co: Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (a/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

"Settlement Agreement" or "Agreement"), and the compromise and settlement memorialized therein; and (ii) authorizing and approving, as of the Release Date[2], the designation of Royal Affiliated Companies as Settled Asbestos Insurance Companies under the Joint Plan of Reorganization who have satisfied such requirements as may be necessary to be deemed Asbestos Protected Parties with respect to the Subject Insurance Policies, entitling them to the full benefits and protections of the Asbestos PI Channeling Injunction and such other protections and benefits as are provided for in the Joint Plan of Reorganization to Settled Asbestos Insurance Companies.

And the Court having conducted a hearing on the Motion in open court on July 27, 2009, and having noted the appearances of all interested parties and all responses and objections to the Motion, if any, in the record of the hearing and after due deliberation sufficient cause appearing for the entry of this Order, and the Committee and the Futures Representative having appeared at the hearing and supported the relief requested by the Motion; the Court hereby makes the following:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction, Final Order and Statutory Predicates

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2] All capitalized terms have the meanings set forth in the Settlement Agreement unless otherwise stated.

D.      This Order constitutes a final and immediately appealable order within the meaning of 28 U.S.C. § 158(a).

E.      The statutory predicates for the relief sought in the Motion are sections 105(a) and 524(g) of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

## Notice of the Motion

F.      The Debtors have provided due and adequate notice of the Motion, the Agreement, and the subject matter thereof to all parties in interest pursuant to Bankruptcy Rules 2002 and 6004, including good and sufficient notice by publication under Rule 2002(1). Notice was sufficient and proper and complied with all applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and Local Rules of this Court. No additional notice of the Motion or this Order is required. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested parties and entities. This Court hereby further finds that notice to an attorney for the holder of a Claim constitutes notice to such holder for purposes of notice of the Motion, the approval hearing, the Settlement Agreement and this Approval Order.

G.      To the extent that any Person (i) either (a) received proper notice of these matters (or is represented by a Person, including, without limitation, the Futures Representative or counsel, that received such notice) or (b) having had notice of these Chapter 11 Cases, elected not to request notices regarding these Chapter 11 Cases, and (ii) failed to object to the Motion and the entry of this Approval Order, then such Persons, including without limitation, the Debtors and the Trust (or, to the extent that it has not yet been formed or does not yet exist, its predecessor(s) in interest), the Futures Representative, and the Committee, hereby shall have no right to file or prosecute an appeal of this Approval Order.

## Sound Business Judgment and Reasonableness

H.      The relief requested in the Motion is in the best interests of the bankruptcy estate, its creditors, and the holders of Asbestos Related Claims against the bankruptcy estate and other parties-in-interest. The Debtors have demonstrated good, sufficient and sound business purposes and justifications for the relief requested in the Motion. The settlement and compromise with the Royal Parties embodied in the Agreement is consistent with the reasonable range of litigation outcomes if Debtors were to litigate the matters resolved pursuant to this Order. The releases to be made by the Grace Parties pursuant to the Settlement Agreement are appropriate and should be approved. The Royal Parties would not have entered into the Settlement Agreement or any of the compromises and settlements contained therein, or agreed to withdrawal their objections to the Plan and pay the Settlement Amount, without the benefit of obtaining the releases contained in the

Settlement Agreement and the protections of the injunctions contained in the Plan and the Confirmation Order.

I.     The Debtors have due and proper corporate authority to enter into the Settlement Agreement and perform all of their obligations thereunder. No consents or approvals, other than this Approval Order, are required for the Debtors to perform all of their obligations thereunder, including as of the Release Date the releases of all insurance coverage or other benefits under the Subject Insurance Policies. The consummation of the Settlement Agreement by the Debtors does not conflict, contravene, or cause a breach, default or violation of any law, rule, regulation, contractual obligation or organizational or formation document.

## Good Faith and Substantial Contribution

J.     The Agreement was negotiated and proposed, and has been entered into by the Parties, in good faith, from arm's-length bargaining positions, and without collusion. Each Party to the Agreement was represented by counsel.

K.     The consideration to be realized by the bankruptcy estate pursuant to this Agreement is fair and reasonable. Upon the Release Date, the Royal Affiliated Companies shall be designated as Settled Asbestos Insurance Companies under the Joint Plan of Reorganization and the Court finds them to have satisfied such requirements as may be necessary to be deemed Asbestos Protected Parties with respect to the Subject Insurance Policies, entitling them to the full benefits and protections of the Asbestos PI Channeling Injunction and such other protections and benefits as are provided for in the Joint Plan of Reorganization to Settled Asbestos Insurance Companies. The Agreement is sufficiently comprehensive to warrant treatment under section 524(g) of the Bankruptcy Code and the contribution by the Royal Parties is sufficiently substantial to warrant the Royal Affiliated Companies' being designated, upon the Release Date, as Settled Asbestos Insurance Companies under the Joint Plan of Reorganization who have satisfied all requirements necessary to be deemed Asbestos Protected Parties with respect to the Subject Insurance Policies, entitling them to the full benefits and protections of the Asbestos PI Channeling Injunction and such other protections and benefits as are provided for in the Joint Plan of Reorganization.

L.     Neither the Grace Parties nor any of the Royal Parties has engaged in any conduct that would cause or permit the Agreement, or the releases contained therein, to be avoided under any provision of the Bankruptcy Code.

## Retention of Jurisdiction

M.     It is necessary and appropriate for the Court to retain jurisdiction, among other things, to interpret and enforce the terms and provisions of this Order and the Agreement, and to adjudicate, if necessary, any and all disputes arising under or

relating in any way to, or affecting, any of the transactions contemplated under the Agreement.

For all of the foregoing reasons and after due deliberation, pursuant to Bankruptcy Code Sections 105(a), 1107 and 1108 and Bankruptcy Rules 2002, 6004, 9014 and 9019(a), **IT IS ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The motion is **GRANTED** and **APPROVED** in all respects.

2.      For the reasons set forth herein and on the record at the hearing, all objections to the motion and the relief requested therein and/or granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled on the merits.

3.      The Debtors are authorized and directed to enter into the Agreement and the Escrow Agreement and undertake all acts as are necessary to consummate the transactions contemplated by the Agreement in accordance with the terms, and to execute and deliver all documents as may be required to effectuate the transactions contemplated by the Agreement, subject only to the conditions specified herein and in the Agreement.

4.      The Grace Parties are authorized and directed to release, effective on the Release Date, the Royal Parties in accordance with the terms and subject only to the conditions specified herein and the Agreement.

5.      The terms of the Agreement are approved in their entirety. Subject to the payment by Arrowood Indemnity Company of the Settlement Amount as provided for in the Agreement and as of the Release Date, the release of the Royal Parties shall constitute a legal, valid and effective release and shall extinguish all right, title and interest of the bankruptcy estate in and to the Subject Insurance Policies.

5

6.      The Grace Parties and the Royal Parties are each hereby authorized to take all action and execute all documents and instruments that the Grace Parties and the Royal Parties deem necessary or appropriate to implement and effectuate the rights, obligations and transactions contemplated by the Agreement.

7.      Pursuant to Bankruptcy Rule 9019, the settlement and mutual release of all claims as set forth in the Agreement and the designation, effective upon the Release Date, of the Royal Affiliated Companies as Settled Asbestos Insurance Companies under the Joint Plan of Reorganization who have satisfied such requirements as may be necessary to be deemed Asbestos Protected Parties with respect to the Subject Insurance Policies, entitling them to the full benefits and protections of the Asbestos PI Channeling Injunction and such other protections and benefits as are provided for in the Joint Plan of Reorganization to Settled Asbestos Insurance Companies, is hereby approved.  This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Bankruptcy Rule 6004(g).

8.      The Royal Parties are not, and shall not be deemed to be, successors to the bankruptcy estate by reason of any theory of law or equity or as a result of the consummation of the transaction contemplated in the Agreement or otherwise.  The Royal Parties shall not assume any liabilities of the bankruptcy estate.

10.      If the Agreement becomes void pursuant to its terms, the Royal Parties shall be deemed to have reserved their rights in connection with all confirmation-related proceedings and proceedings concerning the assertion of claims by the Royal Parties in the Bankruptcy Case, including the deadlines for court filings, until the Release Date, at which time any reservation shall be deemed withdrawn with prejudice and be permanent, as appropriate.

11.     The failure specifically to include or refer to any particular term or provision of the Settlement Agreement in this Approval Order shall not diminish or impair the effectiveness of such term and provision, it being the intent of the Court that the Settlement Agreement be authorized and approved in its entirety.

12.     This Court shall retain jurisdiction to interpret and enforce the provisions of the Agreement and this Order and the protections afforded by the Agreement and Order in all respects.


Dated:_____, 2009          _____

                                        The Honorable Judith K. Fitzgerald
                                        United States Bankruptcy Judge

**EXHIBIT 2**

**Additional Identified Royal Insurance Policies**

| Carrier | Policy Number | Policy Period + |
|---|---|---|
| Royal Indemnity Company | ED102071 | 6/30/83-6/30/84 |
| Royal Indemnity Company | ED102834 | 6/30/84-6/30/85 |

+   The "Policy Period" legend is not binding and is provided only for purposes of generally assisting in identifying the policies and is not intended as a full statement of the Parties' positions.

## EXHIBIT 3

### Previously Settled Royal Policies

| Insurer | Policy Number | Policy Period + |
|---|---|---|
| Royal Indemnity Company | RLG017235 | 03/31/50-03/31/53 |
| Royal Indemnity Company | RLG027635 | 03/31/53-03/31/54 |
| Royal Indemnity Company | RLG031840 | 03/31/54-04/01/55 |
| Royal Indemnity Company | RLG035805 | 04/01/55-04/01/56 |
| Royal Indemnity Company | RLG045762 | 04/01/56-04/01/57 |
| Royal Indemnity Company | RLG045836 | 04/01/57-04/01/58 |
| Royal Indemnity Company | RLG053959 | 04/01/58-04/01/59 |
| Royal Indemnity Company | RLG021629 | 04/01/59-04/01/60 |
| Royal Indemnity Company | RLG021620 | 04/01/60-04/01/61 |
| Royal Indemnity Company | RLG021621 | 04/01/61-04/01/62 |
| Royal Indemnity Company | RLG021622 | 04/01/62-04/01/63 |
| Royal Indemnity Company | LU273162 | 00/00/00-5/26/68 |

+ The "Policy Period" legend is not binding and is provided only for purposes of generally assisting in identifying the policies and is not intended as a full statement of the Parties' positions. The listing of a policy on this schedule is not an admission that such policy exists or was issued.