## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 01-1139 (JKF) |
| W.R. GRACE & CO., et al., | (Jointly Administered) |
|  |  |
| Debtors. |  |

## DEBTORS' RESPONSE TO ONEBEACON AMERICA INSURANCE COMPANY AND SEATON INSURANCE COMPANY'S REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rule of Civil Procedure, 26, 33, 34 and 36, applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026, 7033, 7034, 7036 and 9014, the Debtors hereby respond to the Requests for Admission, Interrogatories and Requests for Production of Documents (the "Requests") propounded by OneBeacon America Insurance Company and Seaton Insurance Company (collectively, the "Discovering Parties").

### GENERAL OBJECTIONS AND RESERVATIONS OF RIGHTS

1.      The Debtors note that the Requests are based on the Joint Plan of Reorganization, dated December 19, 2008, as it may be amended. To be clear, these responses are based on the most recent versions of the Plan and the Plan Documents (as defined in the Plan) on file with the Court as of the date of these responses.

2.      By responding to these Requests, the Debtors should not be construed as accepting the definitions that the Discovering Parties have provided. In their responses below, the Debtors have used what they believe is an appropriate and reasonable understanding of the words that the Requests purport to define. In addition, to the extent



DEPOSITION
EXHIBIT
#16

not otherwise defined herein or in the Requests, any capitalized terms in these responses shall have the meaning attributed to them in the Plan and the other Plan Documents.

3.    The Debtors further note, in lieu of repeating throughout these responses, that, as set forth in Sections 7.15(a) and (f) of the Plan and except as otherwise provided in Section 7.15 of the Plan, the Plan provides that (i) nothing in the Confirmation Order, the Plan or any of the Plan Documents shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the confirmation or consummation of the Plan shall limit the right, if any, of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense.

4.    Any and all non-privileged and non-confidential documents produced in response to the Requests will be produced by the Debtors to the virtual data room. If the responses indicate that documents are being produced, such statements do not mean, and should not be construed to suggest, that the Debtors  possesses documents responsive to all of the Requests.

5.    The Debtors object generally to the instructions and definitions set forth in the Requests to the extent they seek to impose any obligation beyond that which is required by the Federal Rules of Civil Procedure, as applicable by the Federal Rules of Bankruptcy Procedure, the Local Rules for the United States Bankruptcy Court for the District of Delaware, or any case management or other applicable order entered by the Bankruptcy Court.

6.      The Debtors object to the Requests to the extent they seek to require the Debtors to speculate about the actions of others outside of the direct knowledge of the Debtors and to the extent that they seek to require the Debtors to provide information that will be duplicative of information provided by one or more parties who were served with requests similar or identical to the Requests.

7.      The Debtors object to any Request seeking information protected by the attorney-client privilege, work product doctrine, common-interest privilege, or any other applicable privilege, doctrine or protection. The production of any information and/or documentation by the Debtors is without waiver of any claim of privilege or confidentiality. If privileged or confidential information or documentation is inadvertently produced by the Debtors, its production does not constitute a waiver of any applicable privilege, doctrine or protection.

8.      The Debtors object to the Requests to the extent that they seek information and/or documents that are not relevant to the confirmation of the Plan, and/or are overly broad, unduly burdensome, harassing or not reasonably calculated to lead to the discovery of admissible evidence.

9.      The Debtors object to the Requests to the extent that they seek disclosure of communications in connection with negotiations of a plan of reorganization and/or draft plan documents. Numerous bankruptcy courts have prohibited discovery into and the disclosure of such information. See In re Federal-Mogul Global, Inc., Case No. 01-10578 (JKF) (Bankr. D. Del. Feb. 26, 2007) (Hr'g Tr. at 31) (finding that draft plan documents are not properly discoverable); In re Pittsburgh Corning Corp., Case No. 00-22876 (JKF) (Bankr. W.D. Pa. Feb. 19, 2004) (Hr'g Tr. at 64-66) (finding that drafts of

plan documents are not discoverable); In re Combustion Eng'g, Case No. 03-10495 (JKF)

(Bankr. D. Del. May 2, 2003) (Hr'g Tr. at 301) (observing that "drafts generally are not

relevant to anything"); In re Babcock & Wilcox Co., No. 00-10992 (JAB) (Bankr. E.D.

La. Aug. 20, 2003) (Hr'g Tr. 84) (denying insurers' motion to compel discovery on draft

plan of reorganization documents and confidential plan of reorganization negotiations);

In re ACandS, Inc., No. 02-12687 (RJN) (Bankr. D. Del. Sept. 30, 2003) (Hr'g Tr. at 42-

45) (denying discovery into plan negotiations on the grounds that such discovery is

irrelevant to the issue of good faith in proposing the plan); In re Eagle-Picher Indus., 169

B.R. 130, 134 (Bankr. S.D. Ohio 1994) (finding that creditors were not entitled to drafts

of proposed plans of reorganization).

     10.    The Debtors object to the Requests to the extent that they seek information

that is protected from disclosure by FED. R. EVID. 408.

     11.    The Debtors object to the Requests to the extent they seek proprietary

information. To the extent there are responsive proprietary documents in their

possession, the Debtors will seek the entry of a protective order and such documents will

be produced subject to that order.

     12.    The Debtors object to the Requests to the extent that they are vague or

ambiguous or fail to describe the information sought with sufficient particularity to allow

for a meaningful response by the Debtors.

     13.    The Debtors object to the Requests to the extent that they call for the

Debtors to produce documents or information on behalf of any other party and/or seek

discovery of information or documents no longer in existence or not within the Debtors'

possession, custody or control.

4

14.     The Debtors object to the Requests to the extent that they request information or documents that are not responsive, but may be attached to a responsive document.

15.     The Debtors object to the Requests to the extent that the Requests are being improperly used to obtain discovery for use in connection with other disputes, including, but not limited to, future coverage litigation, and not for purposes of the confirmation of the Plan.

16.     The Debtors object to the Requests insofar as they require, or purport to require, the Debtors to turn over or otherwise surrender to the Discovering Parties, or their counsel, the original or only copy of a document or other tangible item in the Debtors' possession.  The Debtors shall permit the Discovering Parties' counsel to inspect the original or only copy of any such document or other tangible item in the Debtors' possession (to the extent the same is subject to production) and shall make reasonable arrangements to permit the Debtors' counsel to make copies thereof, at the Debtors' expense (as such arrangements may be agreed upon by the parties or directed by the Court).

17.     The Debtors object to the Requests to the extent that they seek discovery of confidential business information, confidential settlement information, and/or information subject to confidentiality agreements with third parties.

18.     The Debtors object to the Requests to the extent that any portion of any of the Requests seeks discovery of information that is equally accessible and available to the Discovering Parties or that is already in their possession, custody or control, or is available as a matter of public record.

19.     The Debtors object to the Requests to the extent they seek material only discoverable upon a showing that the Discovering Parties have substantial need for the materials pursuant to Rule 26(b)(3) and Rule 26(b)(4) of the Federal Rules of Civil Procedure, applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7026.

20.     The Debtors object to the Interrogatories and Requests for Production to the extent they state assumptions of law or fact, which the Debtors neither admit nor deny. The provision of any response or answer to any of the Interrogatories or Requests for Production may not be construed as, and is not an admission to, any of the facts or legal assumptions stated in any such request. Nothing in the Debtors' responses to any Interrogatory or Request for Production should be construed as an admission respecting the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization of any kind contained in the Interrogatories or Requests for Production.

21.     The information provided in the responses set forth below is that currently available to the Debtors, unless privileged or otherwise protected. The responses herein are made without waiver of and with specific preservation of: (a) questions and objections as to competence, relevance, materiality, privilege and admissibility; (b) the right to object to the use of any objections, response or answer, or any documents produced, in whole or in part, on any ground; (c) the right to object on any ground at any time to a demand for further productions, responses or answers involving or relating to the subject matter of the Requests; (d) the right at any time to revise, correct, add to or clarify any of the objections, responses and answers propounded herein; and (e) the right to move for an appropriate protective order.

22.     The Debtors' decision to provide responses notwithstanding the objectionable nature of any of the Requests should not be construed as a waiver of any of the general or specific objections.

23.     These General Objections and Reservations of Rights are incorporated by reference into the following specific objections and responses, and an objection or response by the Debtors to any Request is made without waiver of, and subject to, these General Objections and Reservation of Rights.

24.     The Debtors reserves the right to amend or supplement these responses.

## REQUEST FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Seaton is an Asbestos Protected Party under the Plan.

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Admitted to the extent that Seaton is listed as a Settled Asbestos Insurance Company on Exhibit 5 to the Exhibit Book (the Schedule of Settled Asbestos Insurers Entitled to 524(g) Protection). If the Plan, as proposed by the Plan Proponents, is confirmed, Seaton will become an Asbestos Protected Party in accordance with the terms of the Plan.

### REQUEST FOR ADMISSION NO. 2:

OneBeacon is an Asbestos Protected Party under the Plan.

### RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Admitted to the extent that OneBeacon is listed as a Settled Asbestos Insurance Company on Exhibit 5 to the Exhibit Book (the Schedule of Settled Asbestos Insurers Entitled to 524(g) Protection). If the Plan, as proposed by the Plan Proponents, is

confirmed, OneBeacon will become an Asbestos Protected Party in accordance with the terms of the Plan.

**REQUEST FOR ADMISSION NO. 3:**

The claims asserted by Scotts against OneBeacon in the Scotts Adversary Proceeding are, in their entirety, Asbestos PI Claims under the Plan.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Admitted.

**REQUEST FOR ADMISSION NO. 4:**

The claims asserted by Scotts against Seaton in the Scotts Adversary Proceeding are, in their entirety, Asbestos PI Claims under the Plan.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Admitted.

**REQUEST FOR ADMISSION NO. 5:**

Pursuant to § 7.2.3 of the Plan, on the Effective Date, all liabilities and obligations, if any, of Seaton with respect to Scotts' claims against Seaton in the Scotts Adversary Proceeding shall be channeled to and assumed by the Asbestos PI Trust.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Admitted.

**REQUEST FOR ADMISSION NO. 6:**

Pursuant to § 7.2.3 of the Plan, on the Effective Date, all liabilities and obligations, if any, of OneBeacon with respect to Scotts' claims against OneBeacon in the Scotts Adversary Proceeding shall be channeled to and assumed by the Asbestos PI Trust.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Admitted.

**REQUEST FOR ADMISSION NO. 7:**

The Asbestos PI Channeling Injunction will permanently enjoin Scotts from pursuing all of the claims it has asserted against Seaton in the Scotts Adversary Proceeding.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Admitted.

**REQUEST FOR ADMISSION NO. 8:**

The Asbestos PI Channeling Injunction will permanently enjoin Scotts from pursuing all of the claims it has asserted against OneBeacon in the Scotts Adversary Proceeding.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Admitted.

**REQUEST FOR ADMISSION NO. 9:**

Seaton has claims against Grace under Section V of the August 6, 1992 Unigard Settlement Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

This Request is vague and ambiguous insofar as the meaning of "claims" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that Seaton asserts that it has claims against Grace under Section V of the August 6, 1992 Unigard Settlement Agreement.

## REQUEST FOR ADMISSION NO. 10:

The claims that Seaton has against Grace under Section V of the August 6, 1992 Unigard Settlement Agreement are classified as Class 6 Asbestos PI Claims (specifically, Indirect PI Trust Claims) under the Plan to the extent such claims arise from Asbestos PI Claims asserted by third-parties against Seaton, and are otherwise classified as Class 9 General Unsecured Claims.

## RESPONSE TO REQUEST FOR ADMISSION NO. 10:

This Request is vague and ambiguous insofar as the meaning of "claims" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that, to the extent that the claims Seaton asserts it has against Grace under Section V of the August 6, 1992 Unigard Settlement Agreement are included within the definitions of Asbestos PI Claims and/or Indirect PI Trust Claims pursuant to the Plan, such claims are classified as Class 6 Asbestos PI Claims and are subject to the Asbestos PI Channeling Injunction pursuant to Section 8.2 of the Plan. To the extent such claims are not included within the definitions of Asbestos PI Claims and/or Indirect PI Trust Claims pursuant to the Plan, such claims are not subject to the Asbestos PI Channeling Injunction pursuant to Section 8.2 of the Plan and therefore may be classified as Class 9 General Unsecured Claims.

## REQUEST FOR ADMISSION NO. 11:

Seaton has claims against Grace under Section V of the May 15, 1995 Unigard Settlement Agreement.

## RESPONSE TO REQUEST FOR ADMISSION NO. 11:

This Request is vague and ambiguous insofar as the meaning of "claims" is

unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that Seaton asserts that it has claims against Grace under Section V of the May 15, 1995 Unigard Settlement Agreement.

**REQUEST FOR ADMISSION NO. 12:**

The claims that Seaton has against Grace under Section V of the May 15, 1995 Unigard Settlement Agreement are classified as Class 6 Asbestos PI Claims (specifically, Indirect PI Trust Claims) under the Plan to the extent such claims arise from Asbestos PI Claims asserted by third-parties against Seaton, and are otherwise classified as Class 9 General Unsecured Claims.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

This Request is vague and ambiguous insofar as the meaning of "claims" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that, to the extent that the claims Seaton asserts it has against Grace under Section V of the May 15, 1995 Unigard Settlement Agreement are included within the definitions of Asbestos PI Claims and/or Indirect PI Trust Claims pursuant to the Plan, such claims are classified as Class 6 Asbestos PI Claims and are subject to the Asbestos PI Channeling Injunction pursuant to Section 8.2 of the Plan. To the extent such claims are not included within the definitions of Asbestos PI Claims and/or Indirect PI Trust Claims pursuant to the Plan, such claims are not subject to the Asbestos PI Channeling Injunction pursuant to Section 8.2 of the Plan and therefore may be classified as Class 9 General Unsecured Claims.

**REQUEST FOR ADMISSION NO. 13:**

Seaton has claims against Grace under Section VI of the July 11, 1996 Unigard

11

Settlement Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

This Request is vague and ambiguous insofar as the meaning of "claims" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that Seaton asserts that it has claims against Grace under Section VI of the July 11, 1996 Unigard Settlement Agreement.

**REQUEST FOR ADMISSION NO. 14:**

Any claims that Seaton has against Grace under Section VI of the July 11, 1996 Unigard Settlement Agreement are classified as Class 9 General Unsecured Claims under the Plan.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

This Request is vague and ambiguous insofar as the meaning of "claims" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted to the extent that the claims Seaton asserts it has against Grace under Section VI of the July 11, 1996 Unigard Settlement Agreement are included within the definition of General Unsecured Claims pursuant to the Plan. Otherwise, denied.

**REQUEST FOR ADMISSION NO. 15:**

OneBeacon has claims against Grace under Section V of the May 14, 1993 Commercial Union Settlement Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

This Request is vague and ambiguous insofar as the meaning of "claims" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that OneBeacon asserts that it has claims against Grace under

Section V of the May 14, 1993 Commercial Union Settlement Agreement.

**REQUEST FOR ADMISSION NO. 16:**

The claims that OneBeacon has against Grace under Section V of the May 14, 1993 Commercial Union Settlement Agreement are classified as Class 6 Asbestos PI Claims (specifically, Indirect PI Trust Claims) under the Plan to the extent such claims arise from Asbestos PI Claims asserted by third-parties against OneBeacon, and are otherwise classified as Class 9 General Unsecured Claims.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

This Request is vague and ambiguous insofar as the meaning of "claims" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that, to the extent that the claims OneBeacon asserts it has against Grace under Section V of the May 14, 1993 Commerical Union Settlement Agreement are included within the definitions of Asbestos PI Claims and/or Indirect PI Trust Claims pursuant to the Plan, such claims are classified as Class 6 Asbestos PI Claims and are subject to the Asbestos PI Channeling Injunction pursuant to Section 8.2 of the Plan. To the extent such claims are not included within the definitions of Asbestos PI Claims and/or Indirect PI Trust Claims pursuant to the Plan, such claims are not subject to the Asbestos PI Channeling Injunction pursuant to Section 8.2 of the Plan and therefore may be classified as Class 9 General Unsecured Claims.

**REQUEST FOR ADMISSION NO. 17:**

OneBeacon has claims against Grace under Section VI of the December 17, 1996 Commercial Union Settlement Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

This Request is vague and ambiguous insofar as the meaning of "claims" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that OneBeacon asserts that it has claims against Grace under Section VI of the December 17, 1996 Commercial Union Settlement Agreement.

**REQUEST FOR ADMISSION NO. 18:**

Any claims that OneBeacon has against Grace under Section VI of the December 17, 1996 Commercial Union Settlement Agreement are classified as Class 9 General Unsecured Claims under the Plan.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

This Request is vague and ambiguous insofar as the meaning of "claims" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted to the extent that the claims OneBeacon asserts it has against Grace under Section VI of the December 17, 1996 Commercial Union Settlement Agreement are included within the definition of General Unsecured Claims pursuant to the Plan. Otherwise, denied.

**REQUEST FOR ADMISSION NO. 19:**

OneBeacon has claims against Grace under Section VI of the October 7, 1998 Commercial Union Settlement Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

This Request is vague and ambiguous insofar as the meaning of "claims" is unclear. Subject to that objection and the General Objections and Reservations of Rights set forth above, admitted that OneBeacon asserts that it has claims against Grace under

Section VI of the October 7, 1998 Commercial Union Settlement Agreement.

## REQUEST FOR ADMISSION NO. 20:

Any claims that OneBeacon has against Grace under Section VI of the October 7,

1998 Commercial Union Settlement Agreement are classified as Class 9 General

Unsecured Claims.

## RESPONSE TO REQUEST FOR ADMISSION NO. 20:

This Request is vague and ambiguous insofar as the meaning of "claims" is

unclear. Subject to that objection and the General Objections and Reservations of Rights

set forth above, admitted to the extent that the claims OneBeacon asserts it has against

Grace under Section VI of the October 7, 1998 Commercial Union Settlement Agreement

are included within the definition of General Unsecured Claims pursuant to the Plan.

Otherwise, denied.

## REQUEST FOR ADMISSION NO. 21:

Under the Plan, all Indirect PI Trust Claims are channeled to the Asbestos PI

Trust.

## RESPONSE TO REQUEST FOR ADMISSION NO. 21:

Admitted.

## REQUEST FOR ADMISSION NO. 22:

Section 5.6 of the TDP is the provision that addresses how Indirect PI Trust

Claims are treated.

## RESPONSE TO REQUEST FOR ADMISSION NO. 22:

Admitted that Section 5.6 of the Asbestos PI TDP is one of the provisions that

address how Indirect PI Trust Claims are treated. The Debtors also note that Section 5.6

of the Asbestos PI TDP incorporates and/or refers to defined terms from other provisions

of the Plan Documents.  In addition, Sections 5.12 and 5.13 of the Asbestos PI TDP

address claims that could fall within the definition of Indirect Asbestos PI Trust Claims.

**REQUEST FOR ADMISSION NO. 23:**

Section 5.6 of the TDP contains no mechanism to resolve or pay that portion of

the Indirect PI Trust Claims held by Seaton consisting of legal fees and costs incurred by

Seaton in defending against claims asserted by Scotts in the Scotts Adversary Proceeding.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Admitted but the Debtors note that Section 5.13 of the Asbestos PI TDP contains

such a mechanism to the extent any claims arise for which Seaton asserts indemnification

from the Debtors.

**REQUEST FOR ADMISSION NO. 24:**

Section 5.6 of the TDP contains no mechanism to resolve or pay that portion of

the Indirect PI Trust Claims held by OneBeacon consisting of legal fees and costs

incurred by OneBeacon in defending against claims asserted by Scotts in the Scotts

Adversary Proceeding.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Admitted but the Debtor note that Section 5.13 of the Asbestos PI TDP contains

such a mechanism to the extent any claims arise for which OneBeacon asserts

indemnification from the Debtors.

**REQUEST FOR ADMISSION NO. 25:**

Section 5.6 of the TDP contains no mechanism to resolve or pay that portion of

the Indirect PI Trust Claims held by Seaton consisting of indemnity payments that Seaton

might be required to pay Scotts with respect to Scotts' own liability, if any, in selling

16

products that allegedly contained asbestos contaminated vermiculite supplied by Grace.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

This Request is vague and ambiguous insofar as the meanings of "Scotts' own liability" and "indemnity payments" are unclear and therefore the Debtors are unable to admit or deny this Request. However, see response to Request 23 above.

**REQUEST FOR ADMISSION NO. 26:**

Section 5.6 of the TDP contains no mechanism to resolve or pay that portion of the Indirect PI Trust Claims held by OneBeacon consisting of indemnity payments that OneBeacon might be required to pay Scotts with respect to Scotts' own liability, if any, in selling products that allegedly contained asbestos contaminated vermiculite supplied by Grace.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

This Request is vague and ambiguous insofar as the meanings of "Scotts' own liability" and "indemnity payments" are unclear and therefore the Debtors are unable to admit or deny this Request. However, see response to Request 24 above.

**REQUEST FOR ADMISSION NO. 27:**

Grace is a party to Asbestos Insurance Settlement Agreements with Seaton, including the August 6, 1992 Unigard Settlement Agreement, the May 15, 1995 Unigard Settlement Agreement, and the July 11, 1996 Unigard Settlement Agreement (collectively, the "Unigard Settlement Agreements").

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Admitted that Grace is a party to the Unigard Settlement Agreements, but denied that the July 11, 1996 Unigard Settlement Agreement is an Asbestos Insurance

Settlement Agreement.

**REQUEST FOR ADMISSION NO. 28:**

The Unigard Settlement Agreements are executory contracts to be assumed under

Section 9.1.1 of the Plan.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Denied.

**REQUEST FOR ADMISSION NO. 29:**

Upon the Effective Date, having assumed the Unigard Settlement Agreements, the

Reorganized Debtors will remain bound to perform all their obligations under such

agreements according to their terms.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

The Debtors object to this Request as vague and ambiguous insofar as the

meaning of "bound" is unclear. Subject to that objection and the General Objections and

Reservation of Rights set forth above, denied. The Unigard Settlement Agreements are

not executory contracts and therefore cannot be assumed by the Reorganized Debtors.

**REQUEST FOR ADMISSION NO. 30:**

Upon the Effective Date, the Asbestos PI Trust will be bound to perform all of the

Debtors' obligations under the Unigard Settlement Agreements according to their terms.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

The Debtors object to this Request as vague and ambiguous insofar as the

meaning of "bound" is unclear. Subject to that objection and the General Objections and

Reservation of Rights set forth above, denied.

**REQUEST FOR ADMISSION NO. 31:**

Grace is a party to Asbestos Insurance Settlement Agreements with OneBeacon, including the May 14, 1993 Commercial Union Settlement Agreement, the December 17, 1996 Commercial Union Settlement Agreement, and the October 7, 1998 Commercial Union Settlement Agreement (collectively, the "Commercial Union Settlement Agreements").

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Admitted that Grace is a party to the Commercial Union Settlement Agreements, but denied that the December 17, 1996 Commercial Union Settlement Agreement is an Asbestos Insurance Settlement Agreement.

**REQUEST FOR ADMISSION NO. 32:**

The Commercial Union Settlement Agreements are executory contracts to be assumed under Section 9.1.1 of the Plan.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Denied.

**REQUEST FOR ADMISSION NO. 33:**

Upon the Effective Date, having assumed the Commercial Union Settlement Agreements, the Reorganized Debtors will remain bound to perform all their obligations under such agreements according to their terms.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

The Debtors object to this Request as vague and ambiguous insofar as the meaning of "bound" is unclear. Subject to that objection and the General Objections and Reservation of Rights set forth above, denied. The Commercial Union Settlement

Agreements are not executory contracts and therefore cannot be assumed by the

Reorganized Debtors.

**REQUEST FOR ADMISSION NO. 34:**

Upon the Effective Date, the Asbestos PI Trust will be bound to perform all of the

Debtors' obligations under the Commercial Union Settlement Agreements according to

their terms.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

The Debtors object to this Request as vague and ambiguous insofar as the

meaning of "bound" is unclear.  Subject to that objection and the General Objections and

Reservation of Rights set forth above, denied.

**REQUEST FOR ADMISSION NO. 35:**

The Asbestos PI Committee is a fiduciary for all holders of Asbestos PI Claims,

including those holding Indirect PI Trust Claims.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Admitted that the Asbestos PI Committee is a fiduciary for the constituency of

holders of present Asbestos PI Claims, including those holding present Indirect PI Trust

Claims.

**REQUEST FOR ADMISSION NO. 36:**

Under the Plan, Seaton is the holder of an Indirect PI Trust Claim.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

Admitted to the extent that the claim(s) Seaton asserts it holds is/are included

within the definition of Indirect PI Trust Claims pursuant to the Plan.  Otherwise, denied.

**REQUEST FOR ADMISSION NO. 37:**

Under the Plan, OneBeacon is the holder of an Indirect PI Trust Claim.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

Admitted to the extent that the claim(s) OneBeacon asserts it holds is/are included

within the definition of Indirect PI Trust Claims pursuant to the Plan. Otherwise, denied.

**REQUEST FOR ADMISSION NO. 38:**

The Asbestos PI Committee is a fiduciary for Seaton.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

Admitted that the Asbestos PI Committee is a fiduciary for the constituency of

holders of present Asbestos PI Claims, which constituency includes Seaton to the extent

that Seaton is the holder of a present Asbestos PI Claim.

**REQUEST FOR ADMISSION NO. 39:**

The Asbestos PI Committee is a fiduciary for OneBeacon.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Admitted that the Asbestos PI Committee is a fiduciary for the constituency of

holders of present Asbestos PI Claims, which constituency includes OneBeacon to the

extent that OneBeacon is the holder of a present Asbestos PI Claim.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Does any of the Debtors contend that they have any remaining insurance coverage

available to them under any of the Commercial Union Policies?  If so, on a policy by

policy basis, indentify [sic] the type and amount of insurance coverage that the Debtors

contend is still available.

**RESPONSE TO INTERROGATORY NO. 1:**

The Debtors do not contend that they have any remaining insurance coverage available to them under any of the Commercial Union Policies.

**INTERROGATORY NO. 2:**

Do any of the Debtors contend that they have any remaining insurance coverage available to them under any of the Unigard Policies? If so, on a policy by policy basis, indentify [sic] the type and amount of insurance coverage that the Debtors contend is still available.

**RESPONSE TO INTERROGATORY NO. 2:**

To the extent the releases contained in the August 6, 1992 Unigard Settlement Agreement and the May 15, 1995 Unigard Settlement Agreement do not constitute complete releases of all Asbestos PI Claims, the Debtors contend that they have remaining insurance coverage available to them for Asbestos PI Claims under those agreements. The Debtors refer the Discovering Parties to the August 6, 1992 Unigard Settlement Agreement and the May 15, 1995 Unigard Settlement Agreement, which are equally accessible and available to the Discovering Parties or are already in their possession, custody or control, for the type and amount of insurance coverage available for Asbestos PI Claims under those agreements.

**INTERROGATORY NO. 3:**

On what basis did the Debtors change the designation of the Unigard Policy bearing Policy No. 1-0589 from "Resolved" as it appeared in Exhibit 10 to the Amended Exhibit Book to their January 13, 2005 Amended Joint Plan of Reorganization, and accompanying disclosure statement, to the description of that policy that now appears on

Exhibit 5 to the Exhibit Book?

## RESPONSE TO INTERROGATORY NO. 3:

The First Amended Joint Plan of Reorganization dated February 27, 2009, which was proposed jointly by the Debtors, FCR, Official Committee of Asbestos Personal Injury Claimants, and Official Committee of Equity Security Holders, does not include the defined term "Resolved," and thus no insurance companies are referred to as "Resolved." Other terms in are used in the First Amended Joint Plan of Reorganization dated February 27, 2009 to describe the status of the various insurance companies.

## INTERROGATORY NO. 4:

After the Effective Date, if an Entity, other than one of the Debtors or the Asbestos PI Trust, attempts to assert a claim against OneBeacon under any of the Commercial Union Policies, and the claim so asserted is an Asbestos PI Claim, will said claim be enjoined and channeled to the Asbestos PI Trust pursuant to the Asbestos PI Channeling Injunction?  If not, explain why.

## RESPONSE TO INTERROGATORY NO. 4:

The Debtors state that if an Entity, other than the Asbestos PI Trust or, to the extent permitted by the Asbestos Insurance Transfer Agreement, an Insurance Contributor, attempts to assert a claim against OneBeacon under any of the Commercial Union Policies, and the claim so asserted is included within the definition of Asbestos PI Claim pursuant to the Plan, then such claim will be channeled to the Asbestos PI Trust pursuant to the Asbestos PI Channeling Injunction under the Plan.

**INTERROGATORY NO. 5:**

After the Effective Date, if an Entity, other than one of the Debtors or the Asbestos PI Trust, attempts to assert a claim against Seaton under any of the Unigard Policies, and the claim so asserted is an Asbestos PI Claim, will said claim be enjoined and channeled to the Asbestos PI Trust pursuant to the Asbestos PI Channeling Injunction? If not, explain why.

**RESPONSE TO INTERROGATORY NO. 5:**

No, only Asbestos PI Claims that fall within the scope of the indemnity contained in the August 6, 1992 Unigard Settlement Agreement and the May 15, 1995 Unigard Settlement are channeled to the Asbestos PI Trust pursuant to the Asbestos PI Channeling Injunction under the Plan.

**INTERROGATORY NO. 6:**

After the Effective Date, if an Entity, other than one of the Debtors or the Asbestos PI Trust, asserts a claim against OneBeacon under any of the Commercial Union Policies, and the claim so asserted is not an Asbestos PI Claim, will any contractual indemnity claim that OneBeacon has against Grace as a result thereof under any of the Commercial Union Settlement Agreements be treated as a Class 9 General Unsecured Claim? If not, explain why.

**RESPONSE TO INTERROGATORY NO. 6:**

The Debtors object to this interrogatory on the grounds that it calls for speculation regarding potential future events. Subject to that objection and the General Objections and Reservations of Rights set forth above, the Debtors state that to the extent OneBeacon asserts a contractual indemnity claim against the Reorganized Debtors after

the Effective Date with respect to a claim against OneBeacon under any of the Unigard

Policies that is not for an Asbestos PI Claim, any such indemnity claim will be treated

under the appropriate provisions in the First Amended Joint Plan of Reorganization dated

February 27, 2009 for such claim.

**INTERROGATORY NO. 7:**

      After the Effective Date, if an Entity, other than one of the Debtors or the

Asbestos PI Trust, asserts a claim against Seaton under any of the Unigard Policies, and

the claim so asserted is not an Asbestos PI Claim, will any contractual indemnity claim

that Seaton has against Grace as a result thereof under any of the Unigard Settlement

Agreements be treated as a Class 9 General Unsecured Claim? If not, explain why.

**RESPONSE TO INTERROGATORY NO. 7:**

      The Debtors object to this interrogatory on the grounds that it calls for speculation

regarding potential future events. Subject to that objection and the General Objections

and Reservations of Rights set forth above, the Debtors state that to the extent Seaton

asserts a contractual indemnity claim against the Reorganized Debtors after the Effective

Date with respect to a claim against Seaton under any of the Unigard Policies that is not

for an Asbestos PI Claim, any such indemnity claim will be treated under the appropriate

provisions in the First Amended Joint Plan of Reorganization dated February 27, 2009 for

such claim.

**INTERROGATORY NO. 8:**

      What percentage of the reasonable legal fees and costs incurred by Seaton in

defending against Scotts' claims in the Scotts Adversary Proceeding will be paid by the

Asbestos PI Trust under Section 5.6 of the TDP or otherwise?

**RESPONSE TO INTERROGATORY NO. 8:**

If the legal fees and costs incurred by Seaton in defending against Scotts' claims in the Scotts Adversary Proceeding are determined to be valid Asbestos PI Claims then such legal fees and costs will be subject to payment under the Asbestos PI TDP pursuant to the applicable payment percentage.

**INTERROGATORY NO. 9:**

What percentage of the reasonable legal fees and costs incurred by OneBeacon in defending against Scotts' claims in the Scotts Adversary Proceeding will be paid by the Asbestos PI Trust under Section 5.6 of the TDP or otherwise?

**RESPONSE TO INTERROGATORY NO. 9:**

If the legal fees and costs incurred by OneBeacon in defending against Scotts' claims in the Scotts Adversary Proceeding are determined to be valid Asbestos PI Claims then such legal fees and costs will be subject to payment under the Asbestos PI TDP pursuant to the applicable payment percentage.

**INTERROGATORY NO. 10:**

Identify each individual that had any role, other than merely clerical, in the preparation of the Debtors' responses to these Interrogatories and the Debtors' responses to OneBeacon America Insurance Company's and Seaton Insurance Company's Requests for Admission Directed to the Debtors ("RFAs") and, as to each, describe what role he/she had and with respect to which Interrogatories and RFAs.

**RESPONSE TO INTERROGATORY NO. 10:**

The Debtors object to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product doctrine and/or

the extension of those privileges by the joint defense and/or common interest doctrines. Subject to that objection and the General Objections and Reservations of Rights set forth above, the Debtors' responses to the Interrogatories and RFAs were prepared by the Debtors and their counsel.

**INTERROGATORY NO. 11:**

Identify:

(a)    Each individual that the Debtors anticipate calling to testify at the Confirmation Hearing; and, state for each such individual the substance of the testimony that the Debtors anticipate they will give at the Confirmation Hearing and

(b)    Any expert witness that the Debtors intend to call to testify at the Confirmation Hearing and for each such individual identified provide (i) the information required by Fed. R. Civ. P. 26(a)(2), and otherwise (ii) an overview of the testimony that will be provided by each such individual identified.

**RESPONSE TO INTERROGATORY NO. 11:**

The Debtors object to this Interrogatory insofar as it requires them to identify witnesses that they anticipate or intend to call to testify at the Confirmation Hearing, which identification, pursuant to the Second Amended Case Management Order Relating to the First Amended Joint Plan of Reorganization, entered on January 29, 2009 (the "CMO"), is not yet due.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Documents that Scotts, BNSF, the Libby Claimants, or Kaneb have produced or do produce to You, or that You have produced or do produce to any of them, whether

informally or in response to each others' written discovery, with respect to the Disclosure

Statement Hearing, the Confirmation Hearing, or the Scotts Adversary Proceeding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

The Debtors object to this Request to the extent it is overly broad and unduly

burdensome.  The Debtors also object to this Request to the extent it seeks to require

them to produce documents protected by Rule 408 of the Federal Rules of Evidence.  In

addition, the Debtors object to this Request as seeking disclosure of communications in

connection with negotiations of a plan of reorganization and/or draft plan documents,

which are not properly discoverable.  See In re Federal-Mogul Global, Inc., Case No. 01-

10578 (JKF) (Bankr. D. Del. Feb. 26, 2007) (Hr'g Tr. at 31); In re Pittsburgh Corning

Corp., Case No. 00-22876 (JKF) (Bankr. W.D. Pa. Feb. 19, 2004) (Hr'g Tr. at 64-66); In

re Combustion Eng'g, Case No. 03-10495 (JKF) (Bankr. D. Del. May 2, 2003) (Hr'g Tr.

at 301); In re Babcock & Wilcox Co., No. 00-10992 (JAB) (Bankr. E.D. La. Aug. 20,

2003) (Hr'g Tr. 84); In re ACandS, Inc., No. 02-12687 (RJN) (Bankr. D. Del. Sept. 30,

2003) (Hr'g Tr. at 42-45); In re Eagle-Picher Indus., 169 B.R. 130, 134 (Bankr. S.D.

Ohio 1994).

Subject to those objections and the General Objections and Reservations of Rights

set forth above, the Debtors refer the Discovering Parties to the proposed Plan

Documents that were filed in the above-captioned case (see Joint Plan Documents, filed

September 19, 2008 (Dkt. Nos. 19579, 19580); Amendments to Joint Plan Documents,

filed November 11, 2008 (Dkt. Nos. 19988, 19989); Further Amendments to Joint Plan

Documents, filed November 21, 2008 (Dkt. No. 20121); Further Amendments to Joint

Plan Documents, filed December 19, 2008 (Dkt. No. 20304); First Amended Joint Plan,

filed February 3, 2009 (Dkt. Nos. 20666, 20667, 20668) First Amended Joint Plan, Disclosure Statement and Exhibit Book, filed February 27, 2009 (Dkt. Nos. 20872, 20873, 20874 and 20877)), and to the various draft Plan Documents that Scotts, BNSF, the Libby Claimants, and Kaneb received via electronic mail from the Debtors.

In addition, the Debtors refer the Discovering Parties to the virtual data-room established by the Debtors, which contains (and/or will contain) any and all documents produced by the Debtors in response to written discovery directed to them by any party in connection with the Disclosure Statement Hearing and Confirmation Hearing. The web address, login and password information for the virtual data-room was provided to the Discovering Parties on February 26, 2009 in a letter from Lisa Esayian of Kirkland & Ellis LLP, counsel to the Debtors. If the Discovering Parties are unable to locate a copy of this letter, the Debtors will provide an additional copy upon request. It is also possible that certain documents that Scotts, BNSF, the Libby Claimants or Kaneb may, in the future, produce to the Debtors in connection with the Disclosure Statement Hearing, the Confirmation Hearing, or the Scotts Adversary Proceeding, or that the Debtors may, in the future, produce to Scotts, BNSF, the Libby Claimants or Kaneb in connection with the Disclosure Statement Hearing, the Confirmation Hearing, or the Scotts Adversary Proceeding are subject to express confidentiality provisions which would prohibit the Debtors from disclosing such documents to third parties without the consent of the producing party. In the event such confidential documents are produced, the Debtors will request the producing party's consent to post such confidential documents in the virtual data-room and the Discovering Parties may be required to enter into an appropriate protective order. If such consent is not received from the producing party, the Debtors

respectfully suggests that the Discovering Parties and the producing party confer

regarding production of such confidential documents. Further, to the extent Scotts,

BNSF, the Libby Claimants, or Kaneb have signed on to those certain Protective Orders

Regarding Confidential Information, entered by the Bankruptcy Court on December 17,

2008 [Dkt. Nos. 20286 and 20287], such parties have access to another virtual data-room

established by the Debtors, which contains, among other things: (i) the Debtors' historical

case management system database, which includes information about pending asbestos

personal injury litigation claims and resolved asbestos personal injury claims that were

asserted against the Debtors prior to the Petition Date; (ii) transcripts and exhibits from

the Estimation Hearing; and (iii) the estimation expert reports produced in connection

with the Estimation Hearing.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents that You refer to, or rely upon, in responding to the Interrogatories

and Requests for Admission served by OneBeacon and Seaton.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

The Debtors refer the Discovering Parties to the following documents, which are

either publicly available or already in the possession, custody or control of the

Discovering Parties (if the Discovering Parties cannot locate these documents, the

Debtors will provide an additional copy upon request):

> (a) the Plan Documents;
> (b) the CMO;
> (c) the August 6, 1992 Unigard Settlement Agreement;
> (d) the May 15, 1995 Unigard Settlement Agreement;
> (e) the July 11, 1996 Unigard Settlement Agreement;
> (f) the May 14, 1993 Commercial Union Settlement Agreement;
> (g) the December 17, 1996 Commercial Union Settlement Agreement; and
> (h) the October 7, 1998 Commercial Union Settlement Agreement.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents that You have produced, or do produce, in response to written discovery directed to You by any Asbestos Insurance Entity in connection with the Confirmation Hearing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

The Debtors refer the Discovering Parties to the virtual data-room established by the Debtors, which contains (and/or will contain), any and all documents produced by the Debtors in response to written discovery directed to them by any party in connection with the Confirmation Hearing. The web address, login and password information for the virtual data-room was provided to the Discovering Parties on February 26, 2009 in a letter from Lisa Esayian of Kirkland & Ellis LLP, counsel to the Debtors. If the Discovering Parties are unable to locate a copy of this letter, the Debtors will provide an additional copy upon request.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents that You will rely upon in contesting Seaton and OneBeacon's preliminary objections to the Plan filed on or about January 5, 2009, or Seaton and OneBeacon's final plan objections.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

The Debtors object to this Request insofar as it requires them to produce documents that he will rely upon in connection with his trial brief, which, pursuant to the CMO, is not yet due. Subject to that objection and the General Objections and Reservation of Rights set forth above, the Debtors refer the Discovering Parties to the Plan Documents, which are publicly available.

**For purposes of objections under Federal Rule of Civil Procedure 33(b)(5) (made applicable by Rule 7033 of the Federal Rules of Bankruptcy Procedure):**

Dated: March 6, 2009

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Lisa G. Esayian
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

Theodore L. Freedman
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446 - 4800
Facsimile: (212) 446 - 4900

and

PACHULSKI STANG ZIEHL & JONES LLP.
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

## VERIFICATION

I, Richard C. Finke, am Assistant General Counsel - Litigation for W. R. Grace &

Co. I declare under penalty of perjury that I am authorized to make this declaration on

behalf of W. R. Grace & Co., that I have read the above and foregoing Objections and

Answers of W. R. Grace & Co. to the Interrogatories Propounded by OneBeacon

America Insurance Company and Seaton Insurance Company, that the facts and

statements contained therein are true and correct to the best of my personal knowledge or

based on information supplied to me by others, including counsel, and as such are true

and correct to the best of my knowledge, information, and belief. In verifying the

foregoing Objections and Answers of the Plan Proponents to Interrogatories Propounded

by OneBeacon America Insurance Company and Seaton Insurance Company, I have

relied upon the assistance of counsel and the investigation they have undertaken to

compile the information upon which these Objections and Answers are based and the

statements contained therein. W. R. Grace & Co. hereby reserve the right to modify,

clarify, or supplement these discovery responses should new information warrant such

modification, clarification, or supplementation.

Richard C. Finke

March 6, 2009