# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

———————————————————————————X
In Re:                          Chapter 11

                                Case No.
                                01-01139 JKF

W.R. Grace & Co., et al.,

                                (Jointly
            Debtors.            Administered)
———————————————————————————X

—   —   —

May 6, 2009

—   —   —

DEPOSITION of JEFFREY POSNER, held

at the offices of Kirkland & Ellis, 655

Fifteenth Street, N.W., Washington, DC,

commencing at 9:08 A.M., on the above

date, before Lisa Lynch, a Registered

Merit Reporter, New Jersey Certified Court

Reporter, License No. XI00825, and

Certified Realtime Reporter

—   —   —

MAGNA LEGAL SERVICES, LLP

7 Penn Center, 8th Floor

1635 Market Street

Philadelphia, PA  19103

1.866.MAGNA.21

Page 2

```
 1   A P P E A R A N C E S:
 2
     DRINKER BIDDLE & REATH, LLP
 3   BY:  MICHAEL F. BROWN, ESQUIRE
        One Logan Square
 4      18th and Cherry Streets
        Philadelphia, Pennsylvania 19103-6996
 5      (brownmf@dbr.com)
        Representing OneBeacon America Insurance
 6      Company, Seaton Insurance Company,
        Government Employees Insurance Company,
 7      Columbia Insurance Company f/k/a Republic
        Insurance Company
 8
 9   ANDERSON KILL & OLICK, PC
     BY:  ROBERT M. HORKOVICH, ESQUIRE
10      1251 Avenue of the Americas
        New York, New York 10020
11      212.278.1322
        (rhorkovich@andersonkill.com)
12      Representing Grace, Official Committee of
        Asbestos Personal Injury Claimants ("ACC")
13
14   W.R. GRACE & CO.
     BY:  RICHARD C. FINKE, ESQUIRE*
15       ASSISTANT GENERAL COUNSEL
        (*VIA TELECONFERENCE)
16      5400 Broken Sound Boulevard, NW
        Suite 300
17      Boca Raton, Florida 33487
        561.362.1533
18      Representing W.R. Grace & Co.
19
     KIRKLAND & ELLIS, LP
20   BY:  LISA G. ESAYIAN, ESQUIRE
        300 North LaSalle Street
21      Chicago, Illinois 60654
        312.862.2226
22      (lisa.esayian@kirkland.com)
        Representing the Debtors
23
24
```

Page 3

```
 1   A P P E A R A N C E S: (continued)
 2   SIMPSON THACHER & BARTLETT, LLP
     BY:  MARY BETH FORSHAW, ESQUIRE
 3      425 Lexington Avenue
        New York, New York 10017-3954
 4      212.455.2846
        (mbforshaw@stblaw.com)
 5      Representing Travelers Casualty and Surety
        Company
 6
 7   VORYS, SATER, SEYMOUR AND PEASE, LLP
     BY:  WILLIAM J. POHLMAN, ESQUIRE
 8      52 East Gay Street
        Columbus, Ohio 43215
 9      614.464.8349
        (wjpohlman@vorys.com)
10      Representing The Scotts Company, LLC
11
     COHN WHITESELL & GOLDBERG, LLP
12   BY:  DANIEL C. COHN, ESQUIRE
        101 Arch Street
13      Boston, Massachusetts 02110
        617.951.2505
14      (cohn@cwgll.com)
        Representing the Libby Claimants
15
16   LEWIS, SLOVAK & KOVACICH, PC
     BY:  MARK M. KOVACICH, ESQUIRE
17      P.O. Box 2325
        723 Third Avenue
18      Great Falls, Montana 59403
        406.761.5595
19      mark@lsklaw.net
        Representing the Libby Claimants
20
21   SPEIGHTS & RUNYAN
     BY:  DANIEL H. SPEIGHTS, ESQUIRE*
22      (*VIA TELECONFERENCE)
        200 Jackson Avenue East
23      P.O. Box 685
        Hampton, South Carolina 29924
24      803.943.4444
```

Page 4

```
 1      Representing Anderson Memorial Hospital
 2   A P P E A R A N C E S: (continued)
 3
     MENDES & MOUNT, LLP
 4   BY:  CAROLINA ACEVEDO, ESQUIRE
        750 Seventh Avenue
 5      New York, New York 10019
        212.261.8262
 6      (carolina.acevedo@mendes.com)
        Representing AXA Belgium as Successor to
 7      Royale Belge SSA
 8
     MENDES & MOUNT, LLP
 9   BY:  ALEXANDER MUELLER, ESQUIRE
        750 Seventh Avenue
10      New York, New York 10019
        212.261.8296
11      (alexander.mueller@mendes.com)
        Representing London Market Companies
12
13   FORD MARRIN ESPOSITO & WITNEYER & GLESER
     BY:  ELIZABETH M. DeCRISTOFARO, ESQUIRE
14      Wall Street Plaza
        New York, New York 10005-1875
15      212.269.4900
        Representing Continental Casualty Company
16      and Continental Insurance Company
17
     BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
18   BY:  MATTHEW I. KRAMER, ESQUIRE*
        (*VIA TELECONFERENCE)
19      200 South Biscayne Boulevard
        Suite 2500
20      Miami, Florida 33131-5340
        305.450.7246
21      (mkramer@bilzin.com)
        Representing Property Damage Committee
22
23
24
```

Page 5

```
 1   A P P E A R A N C E S: (continued)
 2
     STROOCK & STROOCK & LAVAN, LLP
 3   BY:  ARLENE G. KRIEGER, ESQUIRE*
        (*VIA TELECONFERENCE)
 4      180 Maiden Lane
        New York, New York 10038-4982
 5      212.806.5400
        (akrieger@stroock.com)
 6      Representing Official Committee of
        Unsecured Creditors
 7
 8   CROWELL & MORING, LLP
     BY:  PATRICIA CONNALLY, ESQUIRE
 9      1001 Pennsylvania Avenue, N.W.
        Washington, DC 20004-2595
10      202.624.2913
        (pconnally@crowell.com)
11      Representing Fireman's Fund Insurance
        (Surety Bond)
12
13   STEVENS & LEE, P.C.
     BY:  JOHN D. DEMMY, ESQUIRE*
14      (*VIA TELECONFERENCE)
        1105 North Market Street, 7th Floor
15      Wilmington, Delaware 19801
        302.654.5180
16      (jdd@stevenslee.com)
        Representing Fireman's Fund Insurance
17
18   LAW OFFICES OF ALAN B. RICH
     BY:  ALAN B. RICH, ESQUIRE
19      Elm Place, Suite 4620
        1401 Elm Street
20      Dallas, Texas 75202
        214.744.5100
21      (arich@alanrichlaw.com)
        Representing Property Damage PCR
22
23
24
```

Page 6

1  A P P E A R A N C E S: (continued)
2
3  CONNOLLY BOVE LODGE & HUTZ, LLP
   BY:  JEFFREY C. WISLER, ESQUIRE
   The Nemours Building
4  1007 North Orange Street
   P.O. Box 2207
5  Wilmington, Delaware 19899
   302.888.6528
6  (jwisler@cblh.com)
   Representing Maryland Casualty
7
8  ECKERT SEAMANS CHERIN & MELLOTT, LLC
   BY:  EDWARD J. LONGOSZ, II, ESQUIRE
9  1747 Pennsylvania Avenue, N.W.
   12th Floor
10 Washington, DC 20006
   202.659.6619
11 (elongosz@eckertseamans.com)
   Representing Maryland Casualty and Zurich
12
13 WILEY REIN, LLP
   BY:  KARALEE C. MORELL, ESQUIRE
14 1776 K Street NW
   Washington, DC 20006
15 202.719.7520
   (kmorell@wileyrein.com)
16 Representing Maryland Casualty and Zurich
17
   COZEN O'CONNOR
18 BY:  ILAN ROSENBERG, ESQUIRE*
      (*VIA TELECONFERENCE)
19 1900 Market Street
   Philadelphia, Pennsylvania 19103-3508
20 215.665.4621
   (irosenberg@cozen.com)
21 Representing Federal Insurance Company
22
23
24

Page 7

1  A P P E A R A N C E S: (continued)
2
3  ORRICK HERRINGTON & SUTCLIFFE, LLP
   BY:  JONATHAN P. GUY, ESQUIRE
4     PERI N. MAHALEY, ESQUIRE
   Columbia Center
5  1152 15th Street, N.W.
   Washington, DC 20005-1706
6  202.339.8516
   (jguy@orrick.com)
7  (pmahaley@orrick.com)
   Representing PI Future Claimants'
8  Representative
9
   CUYLER BURK, P.C.
10 BY:  ANDREW CRAIG, ESQUIRE*
      (*VIA TELECONFERENCE)
11 4 Century Drive
   Parsippany, New Jersey 07054
12 973.734.3200
   (acraig@cuyler.com)
13 Representing Allstate Insurance Company
14
   WILSON ELSER MOSKOWITZ
15 EDELMAN & DICKER, LLP
   BY:  CARL J. PERNICONE, ESQUIRE
16 150 East 42nd Street
   New York, New York 10017-5639
17 212.915.5656
   (carl.pernicone@wilsonelser.com)
18 Representing Arrowood Indemnity Company
19
   O'MELVENY & MEYERS LLP
20 BY:  TANCRED SCHIAVONI, ESQUIRE
   7 Times Square
21 New York, New York 10036
   212.326.2267
22 (tschiavoni@omm.com)
   Representing Arrowood Indemnity Company
23
24

Page 8

1  A P P E A R A N C E S: (continued)
2
3  WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
   BY:  KEVIN J. MANGAN, ESQUIRE*
      (*VIA TELECONFERENCE)
4  222 Delaware Avenue
   Suite 1501
5  Wilmington, Delaware 19801
   302.252.4361
6  (kmangan@wcsr.com)
   Representing State of Montana
7
8  PEPPER HAMILTON, LLP
   BY:  LINDA J. CASEY, ESQUIRE*
9     (*VIA TELECONFERENCE)
   3000 Two Logan Square
10 Philadelphia, Pennsylvania 19103
   215.981.4000
11 (caseyl@pepperlaw.com)
   Representing BNSF Railway Company
12
13
   ALSO  PRESENT:
14
   ALLEN SCHWARTZ, O'Melveny & Meyers LLP
15
16          – – –
17
18
19
20
21
22
23
24

Page 9

1          INDEX
          EXAMINATION
2
   Witness Name            Page
3  JEFFREY POSNER
4    BY MS. FORSHAW        14
5    BY MR. KOVACICH       108
6    BY MR. MUELLER        229
7    BY MS. CASEY          236
8    BY MR. LONGOZ         256
9    BY MR. BROWN          269
10   BY MS. DeCRISTOFARO    294, 338
11   BY MR. SCHIAVONI      308, 334
12   BY MR. POHLMAN        314
13   BY MR. SPEIGHTS       339
14          EXHIBITS
15 EXHIBIT                 ID
16 Exhibit 1               14
     Notice of Deposition of Jeffery
17   Posner
18 Exhibit 2               14
     Curriculum vitae of Jeffery M.
19   Posner
20 Exhibit 3               14
     Affidavit Under 11 USC 327(e)
21
   Exhibit 4               41
22   Asbestos Settlement Agreement
     between W.R. Grace & Company-Conn.
23   and the Aetna Casualty & Surety
     Company dated May 12th, 1996
24

Page 10

EXHIBITS
EXHIBIT                    ID

Exhibit 5            68
    Exhibit 4 to Exhibit Book Trust
    Distribution Procedures

Exhibit 6            82
    First Amended Joint Plan of
    Reorganization

Exhibit 7            96
    Agreement between W.R. Grace &
    Company-Connecticut and the
    Travelers Casualty & Surety
    Company dated February 20, 1992

Exhibit 8            106
    Exhibit 19 to Exhibit Book,
    Retained Causes of Action

Exhibit 9            113
    Answer, Cross-claims and
    Counterclaims of Defendant W.R.
    Grace in re: Maryland Casualty v.
    Grace, et al.

Exhibit 10            118
    Royal Indemnity Company
    declaration sheets and
    endorsements SA-870, 891, 939,
    945-946

Exhibit 11            137
    Letter dated December 9, 1999 to
    Royal & SunAlliance from Marsh USA

Exhibit 12            143
    Letter dated January 12, 2000 from
    Royal and SunAlliance to J.M.
    Posner, Inc., two pages
Exhibit 13            196
    E-mail string between Janet Baer
    and Dan Cohn, three pages

Page 11

EXHIBITS
EXHIBIT                ID

Exhibit 14            216
    Monthly asbestos litigation
    summary Bates stamped 91-1614
    through 1639
Exhibit 15            270
    Settlement agreement Bates stamped
    OB 1 through 33
Exhibit 16            273
    Settlement Agreement and Release
    Bates stamped OB 34 through 66
Exhibit 17            277
    Settlement Agreement and Release
    Bates stamped OB 67 through 92
Exhibit 18            279
    Settlement Agreement, Release and
    Indemnification/Hold Harmless
    Agreement Bates stamped SEA 1
    through 16
Exhibit 19            280
    Settlement Agreement, Release and
    Indemnification/Hold Harmless
    Agreement Bates stamped SEA 17
    through 31
Exhibit 20            283
    Settlement Agreement, Release and
    Indemnification/Hold Harmless
    Agreement Bates stamped SEA 32
    through 47
Exhibit 21            285
    Settlement Agreement & Release
    Bates stamped SEA 48 through 61
Exhibit 22            294
    LexisNexis printout in re:
    Maryland Casualty v. Grace, et al.

Page 12

EXHIBITS
EXHIBIT                    ID

Exhibit 23            317
    Exhibit 6 to Exhibit Book,
    Asbestos Insurance Transfer
    Agreement

Page 13

DEPOSITION SUPPORT INDEX

Direction to Witness Not To Answer
Page  Line    Page  Line
209    1      239    6

Request For Production of Documents
Page  Line    Page  Line
142    11      149    24
169    18
Stipulations
Page  Line    Page  Line
(None)
Questions Marked
Page  Line    Page  Line
(None)

Page 14

1          (Notice of Deposition of
2    Jeffery Posner received and marked
3    for identification as Posner
4    Exhibit 1.)
5          (Curriculum vitae of
6    Jeffery M. Posner received and
7    marked for identification as Posner
8    Exhibit 2.)
9          (Affidavit Under 11 USC
10   327(e) received and marked for
11   identification as Posner Exhibit
12   3.)
13
14   J E F F R E Y   P O S N E R,
15        having been sworn by the Notary
16        Public of the States of New York
17        and New Jersey, was examined and
18        testified as follows:
19
20   EXAMINATION BY
21   MS. FORSHAW:
22        Q.   Good morning.  Mr. Posner.
23        A.   Good morning.
24        Q.   Good to see you again.  I

Page 15

1    know you've been through this drill many
2    times.  If I talk too fast, just stop me.
3    If you have any questions about my
4    questions, let me know.  If you need to
5    take a break, let me know.
6        A.   Definitely.
7        Q.   Okay.  I'm just --
8             MR. KRAMER:  I'm sorry.
9    Who's asking the questions, please?
10            MS. FORSHAW:  Sure.  It's
11   Mary Beth Forshaw from Simpson
12   Thacher representing Travelers
13   Casualty.  If you guys have a hard
14   team hearing us, will you let us
15   know?
16            MS. KRIEGER:  Yes, we will.
17   Thank you.
18        Q.   Mr. Posner, I'm going to
19   put before you a Notice of Deposition of
20   Jeffery Posner.  Do you understand you're
21   here to testify in response to that notice
22   today?
23        A.   Yes, I do.
24            MS. FORSHAW:  I have eight

Page 16

1    or nine copies of exhibits which
2    I'll pass out through the
3    deposition.  You can put that
4    aside.  For the record, I've marked
5    the Notice of Deposition of Jeffery
6    Posner as Exhibit 1.
7    BY MS. FORSHAW:
8        Q.   Mr. Posner, let me put
9    before you what I've marked as Exhibit 2,
10   which is a resume of Jeffery Posner.  Do
11   you recognize this document as your
12   resume?
13        A.   Yes, but it appears to me
14   to be an outdated copy of it.
15        Q.   Okay.  And for the record,
16   can you tell us in what way is this resume
17   outdated?
18        A.   My business address, it's
19   an old business address which leads me to
20   believe that's a version that I kept
21   several years ago.
22        Q.   Is the professional
23   experience described in your resume true
24   and accurate?

Page 17

1        A.   Yes, I'm sure it is.
2        Q.   And this resume indicates
3    that you were employed at W.R.
4    Grace & Company from 1982 to 1999.  Is
5    that correct?
6        A.   Yes, it is.
7        Q.   And for the record, can you
8    give us an overview of your employment
9    experience at W.R. Grace listing your
10   positions and the approximate years you
11   held each position?
12        A.   I started with Grace in
13   1982 as an assistant claims manager.  In
14   1986 I assumed the duties of a risk
15   analyst.  Thereafter I became the
16   assistant director of risk management
17   sometime, I think, in 1987 and then in
18   1988 I was promoted to the director of
19   risk management and I became an assistant
20   vice president of the company.
21        Q.   And during your tenure at
22   W.R. Grace, were you responsible for
23   overseeing asbestos-related coverage
24   litigations?

Page 18

1    A.   Yes, I was.
2    Q.   And when did those duties
3 commence?
4    A.   Well, Grace's coverage
5 litigation began in 1983 and I became
6 involved at that time and ultimately
7 assumed additional responsibilities as the
8 litigation had progressed through the
9 years.
10    Q.   And I note that your resume
11 says at the top that you in the past have
12 negotiated one billion of insurance
13 settlements relating to asbestos and
14 environmental litigation.  Do you see
15 that?  It's under Summary of
16 Qualifications.
17    A.   Yes, I do.
18    Q.   Were those negotiations,
19 negotiations on W.R. Grace's behalf?
20    A.   Yes.  I mean, there may
21 have been some other negotiations but
22 principally it's W.R. Grace.
23    Q.   Okay.  And at W.R. Grace,
24 did you negotiate settlements with my

Page 19

1 client, Aetna Casualty & Surety Company,
2 which I'm going to call Travelers Casualty
3 interchangeably because it's changed its
4 name?
5    A.   Yes, I did.
6    Q.   And do you recall generally
7 when those settlements with Travelers
8 Casualty were signed up?
9    A.   The first one involving
10 some old policies from one of the
11 predecessor companies, I'm speculating a
12 little, but it was probably sometime in
13 the early '90's and then there was a
14 settlement involving the excess policies,
15 and that probably was later on in
16 the '90's, I suspect.  I can't remember
17 the precise dates.
18    Q.   And were you the person at
19 Grace who was principally responsible for
20 negotiating with Travelers Casualty?
21    A.   Yes, I was.
22    Q.   With respect to both
23 settlements?
24    A.   Yes.

Page 20

1    Q.   And after the settlements
2 were signed, were you responsible for
3 administering the settlements?
4    MS. ESAYIAN:  Objection to
5 form.  You can answer if you can.
6    A.   I was involved.  There were
7 people that were actually doing the detail
8 work.  You know, it involved keeping track
9 of payments of claims and things of that
10 nature and sending out bills.  I didn't do
11 that but I was involved and had some
12 oversight responsibility for that.
13    Q.   Let me restate the
14 question.  Were you involved in ensuring
15 that Grace performed its obligations under
16 the settlements Grace had executed with
17 Travelers Casualty?
18    MR. HORKOVICH:  Objection,
19 compound.
20    THE WITNESS:  Can I have
21 that read back, please?
22    (The reporter reads the
23 pending question.)
24    A.   I certainly had a role in

Page 21

1 that.
2    Q.   Who else was involved in
3 making sure that Grace performed its
4 obligations under the settlements Grace
5 executed with Travelers Casualty?
6    A.   Well, the settlements
7 required Grace to obtain certain
8 information so we had to put procedures in
9 place to ensure that information was
10 obtained, that we kept track of that
11 information, and that we allocated --
12 allocated claim payments in accordance
13 with the procedures set forth in the
14 agreement.  So there were a number of
15 people.  Obviously, outside counsel was
16 involved in providing information to us,
17 we had people in-house, we had computer
18 programmers that were programming the
19 computers and writing programs for the
20 process.  So there were a number of people
21 in the process but certainly I was, you
22 know, involved in ensuring that those
23 procedures were in place and that the
24 proper information was obtained and, you

# REMAINDER OF DEPOSITION TRANSCRIPT OMITTED FROM THIS PUBLICLY REDACTED VERSION

Certain designated portions of the Deposition Transcript (as defined in the attached Notice), which are set forth below by page and line number, have been **Filed Under Seal Pursuant to May 2009 Protective Order**.  The omitted portions of the Deposition Transcript are sealed pursuant to an order of this Court and contain Confidential Information filed by Certain Insurers (as defined in the attached Notice) and are not to be opened or the contents thereof displayed or revealed except by order of this Court or pursuant to a written agreement by and among the Parties to that certain May 2009 Protective Order.

The designated portions of the Deposition Transcript that have been omitted from this publicly redacted version and filed under seal include:

> page 32, line 20 to page 33, line 21
> page 33, line 24 to page 34, line 24
> page 35, line 6 to page 38, line 3
> page 38, line 8 to page 38, line 16
> page 41, line 4 to page 41, line 8
> page 265, line 4 to page 266, line 19
> page 269, line 10 to page 269, line 15
> page 279, line 11 to page 280, line 14
> page 296, line 10 to page 297, line 12
> page 297, line 15 to page 297, line 19
> page 299, line 20 to page 300, line 18
> page 300, line 23 to page 302, line 7
> page 302, line 10 to page 304, line 7
> page 304, line 10 to page 304, line 14
> page 304, line 17 to page 304, line 24



Δ π EXHIBIT ___2___
Deponent Posner
Date 5-6-07 Rptr. UL
WWW.DEPOBOOK.COM

# JEFFREY M. POSNER

2333 North State Road 7, Suite B, Margate, Florida 33063
Telephone: (954) 590-3454 • Fax: (954) 590-3455 • Email: jmposner@bellsouth.net

## SUMMARY OF QUALIFICATIONS

Insurance and risk management professional with more than 30 years of experience in the insurance, claims, brokerage and risk management areas. Extensive expertise in the development and implementation of highly sophisticated risk management programs, insurance policy interpretation, insurer and broker custom and practice, claims handling custom and practice as well as the management of all insurance aspects of complex coverage litigation including allocation and exhaustion analysis. Negotiated $1 billion of insurance settlements related to asbestos and environmental litigation.

## PROFESSIONAL EXPERIENCE

**JM Posner, Inc.,** Margate, Florida                                                1999 to Present
*Principal and Founder*

- Purchase domestic and international insurance polices for large commercial risks. Manage risk management and claim handling programs on an outsourced basis including formulating and implementing insurance and self-insurance strategies on a national and international basis.
- Develop and implement strategies to settle and resolve complex coverage litigation including conducting settlement negotiations and performing coverage analysis.
- Provide litigation support for complex coverage litigation in the areas of financial and insurance policy exhaustion analysis and allocation of claims to multiple policy years using state of the art computer models.
- Provide expert witness testimony on a broad range of issues involving disputes between policyholders and insurers including insurer and brokerage related issues, claims handling issues, bad faith and policy interpretation issues.
- Conduct reviews and audits of corporate insurance programs to meet the needs of policyholders both in terms of cost and quality of protection.
- Represent policyholders in insurance- related transactions, e.g., the purchasing and implementation of commercial insurance programs. Conduct insurance-related due diligence for acquisitions and divestitures.

**W. R. Grace & Co.,** Boca Raton, Florida                                        1982 to 1999
*Assistant Vice President, Director of Corporate Risk Management* (1988-1999)

- Managed worldwide risk management programs with annual costs exceeding $50 million while continuously redesigning programs to reduce costs and improve overall operating efficiencies.
- Managed all aspects of insured and self-insured claims handling programs, which included negotiating and settling claims and negotiating and resolving claim's handling issues.
- Determined risks to be insured and self-insured and developed alternative risk financing solutions; negotiated and purchased domestic and international policies covering a broad range of exposures including general and products liability, workers' compensation, first party property, director's & officer's liability and medical malpractice; managed captive insurance company and served as Chairman of the Board.
- Directed all aspects of insurance- related coverage litigation including negotiating approximately $1 billion of insurance settlements related to asbestos and environmental litigation; developed settlement and other resolution strategies; performed financial analysis for balance sheet and P&L purposes; implemented a computer allocation system to allocate costs utilizing different triggers and acted as company witness at depositions and trials.

- Managed all insurance and risk management aspects of acquisitions and divestitures including the design and implementation of insurance procedures' agreements.

*Assistant Director of Corporate Risk Management* (1987 - 1988)

**JEFFREY M. POSNER**

Page Two

*Risk Analyst* (1986 - 1987)

*Assistant Claims Manager* (1982 - 1986)

**Marsh & McLennan, Inc.,** New York, New York                1980 - 1982

*Senior Accounts Representative (Licensed NYS Insurance Broker)*

- Worked as senior claim broker for major Fortune 500 clients, which involved resolution of coverage disputes with insurers.
- Negotiated with insurance carriers to ensure adequate and proper reserve amounts.
- Designed, negotiated and implemented claim handling procedures.
- Conducted claim audits to ensure compliance with established procedures.

**Reliance Insurance Co.,** New York, New York                1975 - 1980

*Claims Supervisor and Suit Adjuster*

- Supervised general liability, product liability, auto liability, employer's liability and commercial property cases from inception to conclusion. Reviewed policies in conjunction with claims and authorized and/or denied coverage.  Authorized large settlements and supervised a staff of adjusters.
- Managed litigation unit and supervised cases on court docket including management of outside counsel and the negotiation and supervision of fees.
- Served as arbitrator to resolve inter-company disputes.

**Liberty Mutual Insurance Co.,** Forest Hills, New York                1973 - 1975

*Field Claims Representative and Suit Adjuster*

- Investigated general liability, product liability and auto liability claims.
- Negotiated and settled litigated and non-litigated claims.
- Served as company's representative in Civil Court, Queens County.

## EDUCATION

Fairleigh Dickinson University
Teaneck, New Jersey
Bachelor of Science Degree in Business Management (May 1973)

## PROFESSIONAL DESIGNATIONS

Associate in Risk Management
Insurance Institute of America

## PUBLICATIONS

Resolving The Long Tail Claim, February 2000, Mealey's Conference Handouts
Duty To Defend: Getting What You Pay For, Co-Author, February 2003, Risk Management Magazine.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

FILED

2001 JUN -1 PM 1:51

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re: )    Chapter 11
)
W. R. GRACE & CO., et al.,[1] )    Case No. 01-01139 (JJF)
)    (Jointly Administered)
)
Debtors. )

Δ π EXHIBIT __3__
Deponent _Posner_
Date _5-6-07_ Rptr. _LV_
WWW.DEPOBOOK.COM

## AFFIDAVIT UNDER 11 U.S.C. 327(e)

STATE OF _Florida_ )
) ss:
COUNTY OF _Broward_ )

_Jeffrey Posner_, being duly sworn, upon his/her oath, deposes and says:

1. I am ~~a partner~~ _President_ of _JM Posner Inc_, located at
_8730 N.W. 54th St, Coral Springs, Fl 33067_ (the "Firm").

_Insurance and Risk Management Cons_

2. The Debtors have requested that the Firm provide ~~legal~~ services to the

Debtors, and the Firm has consented to provide such services.

---

[1]The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

3.    The Firm may have performed services in the past and may perform services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties-in-interest in the Debtors' chapter 11 cases.

4.    As part of its customary practice, the Firm is retained in cases, proceedings and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants and parties-in-interest in these chapter 11 cases. The Firm does not perform services for any such person in connection with these chapter 11 cases, or have any relationship with any such person, their attorneys or accountants that would be adverse to the Debtors or their estates.

5.    Neither I nor any principal of or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm.

6.    Neither I nor any principal of or professional employed by the Firm, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates.

7.    The Debtors owe the Firm $ _O_ for prepetition services.

8.    The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.

Executed on [ May 11 ], 2001.

Sworn to and subscribed before me
this 18th day of May , 2001

Notary Public
My Commission expires: _____



Chuny Wong
Commission # CC 944089
Expires July 25, 2004
Bonded Thru
Atlantic Bonding Co., Inc.



## SETTLEMENT AGREEMENT, RELEASE AND
## INDEMNIFICATION/HOLD HARMLESS AGREEMENT

This Settlement Agreement, Release and Indemnification/Hold Harmless Agreement is entered into this _6th_ day of _August_, 1992 by W. R. Grace & Co.-Conn., a Connecticut Corporation, formerly W. R. Grace & Co. ("Grace") (as defined in Section II., H. of this Agreement) and Unigard Security Insurance Company, formerly Unigard Mutual Insurance Company ("Unigard") (as defined in Section II., I. of this Agreement).

I.    RECITALS

WHEREAS, Grace and Unigard entered into a contract of insurance, Policy No. 1-2517 with a policy period of June 30, 1974 to June 30, 1975 which has limits of liability of Ten Million Dollars ($10,000,000.00) in the aggregate for claims arising out of the "Products-Completed Operations Hazards," as those terms are defined under Policy No. 1-2517 ("the Unigard Policy") or any other policy whose form Unigard may be held to follow.

WHEREAS, numerous Asbestos-Related Claims (as defined in Section II.G. of this Agreement) have been made against Grace.

WHEREAS, in the following lawsuits, there are claims pending between Grace and a number of insurers, including Unigard, seeking declaratory relief and damages with respect to the alleged obligations of the insurers, including Unigard, to defend and indemnify Grace for Asbestos-Related Claims (as defined in Section II., G. of this Agreement) against Grace:

**CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER**

SEA-000001

Moore, ex rel. State of Mississippi v. The Flintkote Co., et al. v. Maryland Casualty Co., et al., No. 89-5138(2), filed in the Circuit Court of Jackson County Mississippi (the "Mississippi Action");

Independent School District 197, et al. and W. R. Grace & Co.-Conn. v. Accident & Casualty Co. of Winterthur, et al. No. 19-C4-88-007950, filed in the District Court of the County of Dakota, Minnesota (the "Minnesota Action");

W. R. Grace & Co.-Conn. v. Admiral Insurance Co., et al., No. 91-048251, filed in the District Court of Harris County, Texas (the "Houston Action");

Dayton Independent School District, et al. v. United States Mineral Products Co. and W. R. Grace & Co.-Conn. v. Admiral Insurance Co., et al., No. B-87-00507, filed in the United States District Court for the Eastern District of Texas, Beaumont (the "Beaumont Action");

Maryland Casualty Company v. W. R. Grace & Co., et al., No. 88 Civ. 2613 (SWK), filed in the United States District Court for the Southern District of New York (the "New York Action");

American Employers Insurance Company, et al. v. W.R. Grace & Co.-Conn., et al., No. 6241-92, filed in the Supreme Court of the State of New York, County of New York (the "New York State Court Action"); and

W. R. Grace & Co.-Conn. v. Admiral Insurance Company, et al., No. BC 050432, filed in the Superior Court of the County of Los Angeles, California (the "California Action").

2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000002

These lawsuits shall be referred to collectively as "the insurance coverage litigation."

WHEREAS, Unigard denies that it has any obligation to defend or indemnify Grace in connection with any Asbestos-Related Claims.

WHEREAS, Grace and Unigard have incurred attorneys' fees and other expenses in connection with the insurance coverage litigation.

WHEREAS, Grace and Unigard anticipate that additional attorneys' fees and expenses will be incurred by each of them if they are required to pursue further and defend against the insurance coverage litigation, and Grace and Unigard desire to resolve amicably and discontinue the insurance coverage litigation with respect to the Unigard Policy and to avoid the costs and risks of such litigation by entering into this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and intending to be legally bound hereby, Grace and Unigard agree as follows:

II.   DEFINITIONS

A.   The definitions of the terms "Personal Injuries" and "Property Damage" shall be the same as those terms are defined in the Unigard Policy or any other policy whose form the Unigard Policy may be held to follow.

3

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000003

B.   "Asbestos-Related Products Personal Injury Claims"
shall mean any and all claims for Personal Injuries arising from
asbestos products manufactured, sold, handled or distributed by
Grace or by others trading under its name or arising from
products manufactured, sold, handled or distributed by Grace
which allegedly contain asbestos or to which asbestos was
allegedly added as an ingredient.

C.   "Asbestos-Related Products Property Damage Claims"
shall mean any and all claims for Property Damage arising from
asbestos products manufactured, sold, handled or distributed by
Grace or by others trading under its name or arising from
products manufactured, sold, handled or distributed by Grace
which allegedly contain asbestos or to which asbestos was
allegedly added as an ingredient.

D.   "Products Personal Injury Claims" shall mean claims
for Personal Injuries that fall within the "Products-Completed
Operations Hazards," as those terms are defined in the Unigard
Policy or any other policy whose form the Unigard Policy may be
held to follow.  Products Personal Injury Claims include, but are
not limited to, Asbestos-Related Products Personal Injury Claims.

E.   "Products Property Damage Claims" shall mean claims
for Property Damage that fall within the "Products-Completed
Operations Hazards," as those terms are defined in the Unigard
Policy or any other policy whose form the Unigard Policy may be
held to follow.  Products Property Damage Claims include, but are
not limited to, Asbestos-Related Products Property Damage Claims.

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000004

F.    "Products Claims" shall mean both Products Personal Injury Claims and Products Property Damage Claims as those terms are defined above.

G.    "Asbestos-Related Claims" shall mean both Asbestos-Related Products Personal Injury Claims and Asbestos-Related Products Property Damage Claims as those terms are defined above.

H.    "Grace" shall mean W.R. Grace & Co. -- Conn., its predecessors, successors, divisions, subdivisions, departments and subsidiary companies or corporations.

I.    "Unigard" shall mean Unigard Security Insurance Company, John Hancock Mutual Life Insurance Company, John Hancock Property & Casualty Holding Company, John Hancock Management Company, any entity owned or controlled by any of them, and the past and present directors, officers, employees, parents, subsidiaries, predecessors, and successors of each of the foregoing, together with the assigns of any rights or obligations of any of them under the Unigard Policy.

III.    PAYMENT BY UNIGARD IN COMPROMISE OF DISPUTED CLAIMS

Within twenty one days after the date of the execution of this Agreement, Unigard will pay to Grace the sum of Ten Million Dollars ($10,000,000.00), the full aggregate limits of liability under the Unigard Policy for claims arising out of the "Products-Completed Operations Hazards," as those terms are defined under the Unigard Policy or any other policy whose form

5

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

Unigard may be held to follow (the "Settlement Amount").  Grace will provide to Unigard any information that Unigard shall reasonably request relating to the Products Claims.  Unigard shall not seek to recover from any of Grace's insurers any portion of the Settlement Amount other than any amounts owed to Unigard arising out of agreements to provide reinsurance to Unigard under the Unigard Policy.

   IV.  RELEASE

        In consideration of the payment by Unigard of the Settlement Amount and the mutual release of rights contained herein, Grace does hereby fully and forever release and discharge Unigard, its agents, reinsurers and attorneys from any obligation under the Unigard Policy for any and all past, present, or future claims, demands, obligations, suits, actions, causes of action and rights whatsoever for indemnity, defense and/or damages (including compensatory, punitive, exemplary, extracontractual or statutory) or other payments of any nature, which Grace may have or otherwise be required to pay, or which may hereafter accrue, (a) on account of, in any way growing out of, or in any way related to Products Claims under the Unigard Policy, whether known or unknown as of the date of execution of this Agreement; and (b) for any damages (including compensatory, punitive, exemplary, extracontractual or statutory) based upon any allegations of bad faith, unfair claim practice, unfair trade practice or other act or failure to act arising out of Unigard's

6

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

role as an insurer under the Unigard Policy with respect to any Products Claims whatsoever.

Grace's release of Unigard shall in no event inure to the benefit of any other insurance company that, at any time after the date this Agreement is executed, is merged into Unigard, or in which Unigard, at any time after the date this Agreement is executed, acquires a controlling interest. This release shall not prevent Grace from asserting against Unigard, its agents, reinsurers and attorneys any claim which Grace may have, or which may hereafter accrue, (a) on account of, in any way growing out of, or in any way related to Products Claims, whether known or unknown as of the date of this Agreement, under any insurance policy issued by Unigard other than the Unigard Policy; and (b) for any damages (including compensatory, punitive, exemplary, extracontractual or statutory) based upon any allegations of bad faith, unfair claim practice, unfair trade practice or other act or failure to act arising out of Unigard's role as an insurer under any insurance policy issued by Unigard other than the Unigard Policy with respect to any Products Claims whatsoever.

### V.   INDEMNIFICATION/HOLD HARMLESS AGREEMENT

A.   In further consideration of the Settlement Amount, Grace agrees to indemnify, to hold Unigard harmless from and to reimburse Unigard for the full amount of any judgment, award, payment, settlement, suit or claim against Unigard by any other insurance carrier seeking contribution under the Unigard Policy

7

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000007

for Product Claims, or by any other person or entity claiming any right, assignment of rights, rights of subrogation, title or interest in or under the Unigard Policy for Product Claims, including without limitation claims for damages (including compensatory, punitive, exemplary, extracontractual or statutory) caused or allegedly caused in whole or in part by the conduct of Unigard under the Unigard Policy with respect to such Product Claims; but provided, however, that in no event shall Grace be obligated to indemnify, to hold Unigard harmless from or to reimburse Unigard for (i) any claim arising out of reinsurance provided to Unigard under the Unigard Policy, or (ii) the amount of any payment or settlement entered into by Unigard without the prior consent of Grace, which consent shall not be unreasonably withheld.

B.    Grace also agrees to indemnify Unigard for all costs and reasonable attorneys' fees associated with the claims for which Grace is obligated to indemnify Unigard as set forth in paragraph A of this Article, and which are incurred after the execution of this Agreement, but excluding any costs associated with the enforcement of this Agreement.  Unigard immediately shall advise Grace of the pendency of any suit or claim for which Grace is obligated to indemnify Unigard as set forth in Article V of this Agreement and keep Grace informed of any developments with respect to such claims or suits, including but not limited to any discovery requests and any motions.

C.    Unigard shall defend diligently and in good faith

8

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000008

any claim for which Grace is obligated to indemnify Unigard as
set forth in paragraph A of this Article, utilizing the services
of Taylor, Anderson & Travers or, at Unigard's option, other
counsel approved by Grace.

     D.  Unigard shall not incur costs or attorneys' fees
without the prior approval of Grace, which approval shall not be
unreasonably withheld.

     E.  Grace has the right, at its own expense, to
participate in the defense of Unigard.

     F.  In the event that Unigard, while defending any
claim described in paragraph A of this Article, incurs costs or
attorneys' fees relating both to the Unigard Policy and other
insurance policies issued by Unigard, Grace shall only be
required to indemnify Unigard for that portion of such costs
relating to the Unigard Policy.  The parties agree to use their
best efforts to reach agreement on allocation of such costs.  Any
dispute between the parties over the allocation of such costs
which cannot be resolved by agreement shall be resolved through
arbitration.

     VI.  <u>NO ADMISSIONS BY THE PARTIES</u>

     A.  The payment by Unigard of the Settlement Amount
and its receipt by Grace is for the compromise of disputed
claims, and neither such payment nor its receipt shall be
construed as an admission by Unigard or Grace that any coverage
or obligation to pay exists or does not exist under any Unigard

9

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

policy for defense or indemnity of Grace for claims of any nature. By entering into this Agreement, Unigard does not admit that it has any liability or obligation to Grace or to any other person.

      B.    Further, this Agreement is not intended to be, nor shall it be construed as, an admission with respect to policy interpretation or as an admission by any party regarding any duties, rights or obligations arising under the Unigard Policy or any other policy of insurance issued by Unigard to Grace or anyone else. Nothing in this Agreement shall be deemed to constitute a release, compromise, waiver or an estoppel of any right of Grace or Unigard to assert any claim or defense pursuant to any policy of insurance issued by Unigard or any other insurer.

## VII. DISMISSAL WITH PREJUDICE OF CERTAIN ACTIONS, CLAIMS, AND CAUSES OF ACTION

      A.    Upon the execution of this Agreement by the parties, Grace will dismiss with prejudice the claims and causes of action Grace has asserted against Unigard relating to the Unigard Policy in the Mississippi Action, the Minnesota Action, the Houston Action, the Beaumont Action, the New York Action and the California Action. Further, Grace will make all reasonable efforts to cause the remaining plaintiffs in the Minnesota Action to dismiss with prejudice the claims and causes of action they have asserted against Unigard relating to the Unigard Policy in the Minnesota Action. Further, Grace will dismiss with prejudice

10

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

SEA-000010

its Sixth Cause of Action for Breach of Implied Covenant of Good
Faith and Fair Dealing against Unigard under the Unigard Policy
contained in the First Amended Complaint for Declaratory Relief,
Breach of Contract and Breach of the Implied Covenant of Good
Faith and Fair Dealing in the California Action.

B.    Unigard will dismiss with prejudice the claims and
causes of action Unigard has asserted against Grace relating to
the Unigard Policy in the New York State Court Action.

C.    Each party shall bear its own past costs and
attorneys' fees incurred in connection with the insurance
coverage litigation and any such costs and fees incurred to
negotiate or implement the terms of this Agreement.

D.    Grace will cooperate with Unigard to minimize and
prevent the possibility of the prosecution of cross-claims or
other actions against Unigard by any other party.

VIII.    <u>NO CONSTRUCTION AGAINST EITHER PARTY</u>

The wording of this Agreement was reviewed and accepted
by legal counsel for Grace and Unigard prior to its being signed
by them.    Any ambiguities in the language of this Agreement
shall not be construed against either party on the grounds that
the party was the alleged drafter of the language in the event of
any dispute arising between them in connection with this
Agreement.

11

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000011

## IX.  INADMISSIBILITY OF AGREEMENT

Any evidence of the existence, terms or negotiation of this Agreement shall be inadmissible in any litigation, action or other proceeding, provided, however, that such evidence may be offered in an action seeking solely to enforce the terms of this Agreement or in connection with any litigation, action or other proceeding, between Unigard and any of its reinsurers or in connection with any litigation, action or other proceeding to establish exhaustion of the Unigard Policy.  In any litigation, action or other proceeding where exhaustion of the Unigard Policy is at issue, Unigard shall, subject to the provisions of Article VI of this Agreement, reasonably assist Grace in establishing that the Unigard Policy's limits of liability applicable to Products Claims properly have been exhausted.  This Agreement has been entered into in reliance upon the provisions of Rule 408 of the Federal Rules of Evidence and similar state law provisions which preclude the introduction of evidence regarding settlement negotiations or agreements.

## X.  APPLICATION OF AGREEMENT ONLY TO THE PARTIES

This Agreement is intended to confer rights and benefits only on the parties hereto and only with respect to the terms and conditions set forth herein.

12

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000012

## XI.   ENTIRE AGREEMENT/AMENDMENTS TO AGREEMENT

This Agreement is the complete and entire agreement of the parties and may not be modified, changed, contradicted, added to, or altered in any way by any previous written or oral agreements or any subsequent oral agreements.  No amendments or variations of the terms of the Agreement shall be valid unless made in writing and signed by both parties.

## XII.   CONFIDENTIALITY

The terms and conditions of this Agreement shall remain confidential and shall not be disclosed to any person or entity without the prior written consent of both parties, except: as required by contract or by authority of a court, administrative tribunal, arbitration panel, regulatory agency; in the normal course of business for such purposes as audits and accounting; or, where exhaustion of the Unigard Policy's limits of liability applicable to Products Claims are at issue, to Grace's other insurers, to underlying claimants and to any other person or entity.  Should a court order the disclosure of the terms of this Agreement to any other person or entity, the parties shall use their reasonable efforts to maintain its terms under seal and/or protective order.

13

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

## XIII.  REPRESENTATION AND WARRANTIES

Each party represents and warrants to the other:

A.   that it is fully authorized to enter into this
     Agreement;

B.   that it is a corporation, duly organized and
     validly existing in good standing under the laws
     of one of the states of the United States of
     America;

C.   that it has taken all necessary corporate and
     internal legal actions to duly approve the making
     and performance of this Agreement and that no
     further governmental, regulatory, corporate or
     other internal approval is necessary;

D.   that the making and performance of this Agreement
     will not violate any provision of law or of its
     articles of incorporation, charter or by-laws;

E.   that it has read this entire Agreement and knows
     the contents hereof, that the terms hereof are
     contractual and not merely recitals, and that it
     has signed this Agreement of its own free act;

F.   that in making this Agreement, it
     has obtained the advice of legal counsel; and

G.   that there are no pending agreements, transactions
     or negotiations to which it is a party that would
     render this Agreement or any part thereof void,
     voidable or unenforceable.

14

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000014

## XIV. <u>NOTICE</u>

All notices or other communications which any party desires or is required to give shall be given in writing and shall be deemed to have been given if sent by certified mail to the party at the address noted below or such other address as a party may designate in writing from time to time:

        W. R. Grace & Co. - Conn.
        Attn: Secretary
        W. R. Grace & Co.
        One Town Center Road
        Boca Raton, Florida  33486

with a copy to:

        Director of Corporate Risk Management
        W. R. Grace & Co.
        One Town Center Road
        Boca Raton, Florida  33486


        Unigard Security Insurance Company
        Attn:  General Counsel
        P.O. Box 90701
        15805 N.E. 24th Street
        Bellevue, Washington  98008

                and

        John Hancock Property and Casualty Company
        Attn: General Counsel
        P.O. Box 854
        3 Copley Place
        Boston, Massachusetts  02117

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

SEA-000015

with a copy to:

      Allan E. Taylor, Esq.
      Taylor, Anderson & Travers
      75 Federal Street
      Boston, Massachusetts  02110

          **W. R. GRACE & CO.-CONN.**

Date: _8/6/92_       By _____

               Its _VICE PRESIDENT_

          **UNIGARD SECURITY INSURANCE COMPANY**

Date: _8/3/92_       By _____

               Its   Assistant Secretary

16

**CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER**

                              **SEA-000016**