| | | |
|---|---|---|
| No.<br>**CDE 0749**<br>Renewal of No.<br>New | ARATIONS — SPECIAL COVERAGE POLI... | STOCK COMPANY |

☒ **REPUBLIC INSURANCE COMPANY**
☐ **VANGUARD INSURANCE COMPANY**
2727 TURTLE CREEK BOULEVARD, DALLAS, TEXAS 75219

Named Insured and Mailing Address

W. R. Grace & Company Ltd. and/or subsidiary, associated,
affiliated companies and/or organizations owned, controlled
and/or managed companies as now or hereinafter constituted.
1114 Avenue of the Americas
New York, NY 10036

Item 1.  Policy Period:  From  June 30, 1983  To  June 30, 1984

12:01 A.M., Standard Time at the address of the named Insured as stated herein.

Item 2.  Premium:  Advance Premium: $ 3,750.00
Rate: Flat

Minimum Premium: $ 3,750.00

If the Policy Period is more than one year and the premium is to be paid in installments, premium is payable on:

Effective Date          1st Anniversary          2nd Anniversary
$                       $                        $

Item 3.  Coverage:  Excess umbrella

Item 4.  Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

$3,000,000 p/o $75,000,000 excess of $75,000,000 each occurrence/aggregate.

Item 5.  During the past three years no insurer has cancelled insurance issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein.

Item 6.  Endorsement: G/L 120-1

Countersigned by _Robert A. Neilson_
Authorized

Date of Issue: August 1, 1983bm

CDE-2-(9-73)

COMPANY COPY

**EXHIBIT GRS-11**

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000004

# REPUBLIC INSURANCE COMPANY

(A Stock Insurance Company, Herein Called the Company)

## EXCESS UMBRELLA POLICY
## INSURING AGREEMENTS

### 1. COVERAGE

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Named Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom,

(b) Property Damage,

(c) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

### UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:

Lloyds KY017582 and various

### 2. LIMIT OF LIABILITY – UNDERLYING LIMITS

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $75,000,000.00     ultimate net loss in respect of each occurrence, but

(b) $75,000,000.00     in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $3,000,000.00       ultimate net loss in all respect of each occurrence – subject to a limit of
P/O $75,000,000.00

(d) $3,000,000.00       in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.
P/O $75,000,000.00

### DEFINITIONS

### 1. NAMED INSURED:

The words "Named Insured" includes The Named Insured Stated in The Declarations forming a part hereof and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.

### 2. INSURED:

The word "Insured" includes The Named Insured and/or any Officer, Director, Stockholder, Partner or Employee of The Named Insured, while acting in his capacity as such.

CDEU-1 (9-73)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000005

## CONDITIONS

### 1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY —

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess Policy issued to the Insured prior to the inception date hereof the limit of liability hereon as stated in Insuring Agreements 2c and 2d shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions of this Policy in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Insured for liability in respect of such personal injury or property damage without payment of additional premium.

### 2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE —

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Insuring Agreement 1 prior to the happening of a ccurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of Condition of the Underlying Umbrella Policies.

### 3. NOTICE OF OCCURRENCE —

Whenever the Insured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Insured shall be held liable, is likely to involve this Policy, notice shall be given by or on behalf of the insured to Cravens, Dargan & Company Special Risks and/or American Adjustment Company, P. O. Box 1660, Houston, Texas 77001 as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

### 4. OTHER INSURANCE —

If other valid and collectible insurance with any other Insurer is available to the Insured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000006

It is agreed that except only with respect to policy period, premium and limits of liability, this policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the first layer umbrella policy, (LONDON AND VARIOUS BRITISH) KY017582 and all renewals and replacements thereof. It is further agreed that all pre-printed terms and conditions hereon are deleted to the extent that they vary from or are inconsistent with the terms and conditions of the first layer umbrella.

Nothing herein contained shall vary, alter, waive or extend any of the terms, representations, declarations, exclusions, conditions or agreements of the Policy other than as above stated.

The information below is required only when this endorsement is issued subsequent to preparation of the policy.

To be attached to and forming part of Policy No. _____

Issued to _____

Endorsement No. _____

Effective _____ 19____

S/L 120-1
REV. (06/83)

CRAVENS, DARGAN & COMPANY

By _____ *Robert A. Neilson*

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000007

☐ **REPUBLIC INSURANCE COMPANY**    STOCK COMPANY
☐ **VANGUARD INSURANCE COMPANY**

Member Of
REPUBLIC INSURANCE COMPANY GROUP
A CAPITAL STOCK COMPANY

2727 Turtle Creek Boulevard, Dallas, Texas 75219

EFFECTED THROUGH

CRAVENS, DARGAN & CO., SPECIAL RISKS

P. O. Box 1660 — Houston, Texas 77001

This policy is made and accepted subject to the provisions and stipulations hereinafter stated, which are hereby made a part of 1is policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

CDE-1 (9-73) REV. 4/81     10842

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000001

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of the policy.

The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.

## CONDITIONS

1. **Premium Computation:** The deposit premium stated in the declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

2. **Inspection and Audit:** The Company Shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

   The Company may examine and audit the Named Insured's books and records, at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

3. **Action Against Company:** No action shall lie against the company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the insured, the claimant and the company.

4. **Subrogation:** In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

5. **Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

6. **Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Named Insured's legal representative as Named Insured; provided that notice of cancellation addressed to the Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

7. **Cancellation:** This policy may be canceled by the Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the company by mailing to the Insured at the address shown in this policy written notice stating when not less than thirty days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. If the insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

8. **Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

*Thomas H. Bradley*
Secretary

*John F. Knight*
President

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000002

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

This policy shall not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
   (c) the injury, sickness, disease, death, or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this policy:

"hazardous properties" includes radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

"Waste" means any waste material (1) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof.

"nuclear facility" means:
(a) any nuclear reactor,
(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste.
(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such Operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination or property.

## WAR RISK EXCLUSION ENDORSEMENT

This policy shall not apply to any liability of the Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

REP- 000003