# BLACKLINED CHART

**FINAL OBJECTIONS TO W.R. GRACE JOINT CHAPTER 11 PLAN**

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| **I.** | **PHASE I ISSUES[1]** | | |
| **A.** | **ISSUES RELATED TO THE IMPACT OF PLAN ON INSURERS AS INSURERS** | | |
| 1. | Plan is not insurance neutral because it alters and impairs the insurers' contractual rights under their policies to evaluate, defend and settle PI claims and it violates contractual rights under applicable law.  Therefore, the Plan does not satisfy the requirements of 1129(a)(3).  It also violates § 1129(a)(1). | Fireman's Fund (¶¶ 25-27)  GEICO (¶¶ 25-30)  Federal ((¶¶ 16-34)  AXA Belgium (pp. 3-4)  ~~Arrowood (pp. 3-5, 8-9)~~ | Under § 7.15, all Insurers' rights are expressly preserved. To the extent this complaint has any validity, it has been preserved as a coverage defense, a treatment that the Third Circuit found appropriate in *Combustion Engineering*.  *See* Trial Brief at 27-28 |
| 2. | The Plan is not insurance neutral in that § 7.15 of the Plan is unintelligible or otherwise confusing with respect to Insurers' rights.  CNA, in particular, questions whether insurance neutrality is "swallowed" because Asbestos Insurer Coverage Defenses under § 1.1.16 of the Plan "do not include any defense that (i) the Plan or any of the Plan Documents do not comply with the Bankruptcy Code." | GEICO (¶¶ 19-24)  CNA (pp. 9-11)  Federal (¶¶ 31-34) | The super-preemptory language of § 7.15 makes it explicitly clear that the plan shall not impair any Asbestos Insurance Entity's legal, equitable or contractual rights. *See* Trial Brief at 8-11. |

[1]    Under the Third Amended Case Management Order Phase I shall address: (i) whether the Plan improperly affects the rights of Debtors' insurers (in their capacity as insurers, but not creditors); (ii) the standing of Debtors' insurers (in their capacity as insurers, but not creditors, to litigate confirmation objections that involve issues other than those described in section (i) herein provided, however, that the Plan Proponents shall not challenge the standing of the insurers to the extent they are parties to Asbestos Insurances Reimbursement Agreements, to object to, in Phase II, the Plan's proposed treatment of the Asbestos Reimbursement Agreements under the Plan; and (iii)  the confirmation objections raised on behalf of and specific to lenders under the Pre-Petition Credit Facilities and other Class 9 creditors with respect to Impairment.

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 3. | § 7.15 of the Plan does not appear to preserve Insurance Neutrality because § 8.1.1 discharges all Claims of "any nature whatsoever," and § 7.13 also casts doubt on whether the Debtors obligations remain undiminished and/or are transferred to the Trust. | Allstate (pp. 4-6)<br><br>Federal (¶¶ 21-23)<br><br>CNA (pp. 8-13)<br><br>~~General~~ | Neither §§ 7.13 nor 8.1.1 or any other provision of the Plan excuse the Debtors from their obligations. *See Id* at 16.<br><br>Phase II issue as to Insurers who may be creditors. |
| 4. | To be insurance neutral, the Plan should have a "no use" provision like *Federal-Mogul* did, barring confirmation of the plan as evidence in any forum to prove any liability on the part of the Asbestos Insurance Company. | General (pp. 6-8) | Such a provision would be an impermissible attempt to strip the findings of this Court of binding force and would be contrary to basic principles of *res judicata. See* Trial Brief at 12. |
| 5. | To obtain insurance neutrality, the language used in *Combustion Engineering* must be mirrored. Here, the Plan is not neutral because the Asbestos Insurance Coverage Defenses are too restrictive. | London (¶¶ 26-32) | The Plan's insurance neutrality language mirrors *Combustion Engineering* with changes made to address the unique issues raised by this case. |
| 6. | Parties should not have to pay to the Trust any amount in excess of the amount actually paid by the Trust to the holder of a claim. (cites *Fuller Austin*). | AXA Belgium (p. 5)<br><br>Zurich (¶ 9)<br><br>~~Travelers (¶¶ 36-40)~~ | § 7.15 of the Plan leaves the Insurers' rights unaltered. This is an Insurance coverage issue. |
| 7. | Despite Plan Proponents' denials that this could occur, the Plan needs to clarify that there is no acceleration of any of the Asbestos Insurance Entity obligations. (cites *UNR*) | Federal (¶¶ 34, fn 10) | § 7.15 of the Plan leaves the Insurers' rights unaltered. There is no need to amend the Plan to provide that something that is not in the Plan is not in the Plan. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| **B.** | **ISSUES ON WHICH OBJECTING INSURERS HAVE NO STANDING** | | |
| 1. | Plan is not "fair and equitable" under § 1129(b). Fireman's Fund is potentially liable to provide insurance coverage and other performance under the Policies but does not have the corresponding ability to exercise its rights, and enforce its remedies, thereunder. | Fireman's Fund (¶¶ 52-54) | §7.15 of the Plan preserves all of Fireman Fund's rights under its policies. Moreover, Insurers have no standing to bring arguments under the various §§ of 1129. These sections do not concern the legal or pecuniary rights of insurers. *See* Trial Brief at 23-24. The "fair and equitable" requirement of § 1129(b), in particular, is limited to creditors whose claims are part of an impaired class. *Id.* at 47. |
| 2. | Plan ~~cancels the requirement in § 501 that claimants have allowed claims before they can vote or be paid (Arrowood only) and~~ overrides parties' rights under § 502 of the Bankruptcy Code to object to claims. The exclusive review of the claims by the Trust is improper. | ~~Arrowood (p. 5, 11)~~  Fireman's Fund (¶ 39) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 3. | Plan is not insurance neutral because it purports to enjoin contribution claims against released third party non-debtors. | Federal (¶¶ 35-37)  ~~Arrowood (p. 3)~~  GEICO (¶¶ 69-70)  Fireman's Fund (¶¶ 21-22) | § 7.15 of Plan preserves all Insurers' rights under their policies.  Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 4. | Plan improperly eliminates Federal's Contractual Indemnity Rights with respect to claims other than Asbestos PI Claims. | Federal (¶¶ 62-63) | § 7.15 of Plan preserves all Insurers' rights under their policies.  Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | issue in Phase II. |
| 5. | The Court does not have subject matter jurisdiction over Fireman's Fund's coverage disputes, including adjudication of its rights against affiliates, released parties, or any other non debtor third party.  § 7.15(e) violates §  1129(a)(3)  of the Code because it attempts to confer jurisdiction over these issues. | Fireman's Fund (¶ 56) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 6. | TAC members suffer an irreconcilable conflict of interest because they represent individual clients with claims against the Trust.[2] This is a defect in the structure of the Trust.  Federal asks that the Court insist the TAC be composed of individuals with no conflicting interests and also select new trustees. | CNA (pp. 17-22)<br><br>GEICO (¶¶ 40-53)<br><br>Federal (¶¶ 38-51) | Insurers have no standing to make this argument. The only parties whose rights are affected by the provisions to which the Insurers object are others such as Asbestos PI Claimants. The Insurers, whose interests are adverse to the such parties, cannot raise this argument on their behalf.  *See* Trial Brief at 26. |
| 7. | Because the Plan is not insurance neutral, it was not proposed in good faith in violation of § 1129(a)(3) of the Code.[3] | ~~Arrowood (pp. 13-15)~~<br><br>CNA (p. 6)<br><br>Firemen's Fund (¶¶ 44-45) | Plan is insurance neutral.  Insurers remain free to raise defenses involving the good faith or reasonableness of a particular settlement, or any other defense to coverage they wish to assert, if any, when the Asbestos PI Trust presents Claims for payment.  *See* Trial Brief at 14.  Insurers do not have standing to challenge confirmation on the grounds that the requisite good faith is lacking.  *Id.* at 27. |
| 8. | Plan not filed in good faith and thus violates § 1129(a)(3) | | Insurers, as insurers, have no standing to raise |

[2] *See also* Section II.E.

[3] See also section II. F

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | because of various violations of the Bankruptcy Code. | Travelers (¶¶ 45-50)<br><br>London (¶¶ 33-40) | this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 9. | Sealed Air and Fresenius are inappropriately granted preferential treatment under the Plan in that they get protection from asbestos claims and attorneys fees unlike other contractual indemnity claims. Thus, the Plan violates § 1123(a)(4). | Seaton One Beacon (¶ 31-32) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 10. | The Plan fails to comply with the funding requirements in 524(g). Warrants and the deferred payment agreement do not constitute "securities" under 524(g) as used by the Third Circuit in *Congoleum* as they have no value at present and no certainty of attaining value post-confirmation. Nor is the Asbestos PI Deferred Agreement a "security."<br><br>Further, by having two trusts, the Plan violates the requirement that a Trust must own a majority of the securities of one or more of the debtors. Here, at best, the two trusts share ownership.<br><br>The Plan purports to satisfy the majority ownership requirement by giving the Asbestos PI Trust, in conjunction with the Asbestos PD Trust, the right to obtain jointly 50.1% of the common stock. It does not. This right is conditioned on the Reorganized Debtor's default on its deferred payment obligation. By this point, the common stock would be worthless, and §524(g) is not satisfied by majority ownership only under such | Seaton One Beacon (¶¶ 68-79)<br><br>CNA (pp. 32-34)<br><br>GEICO (¶¶ 54-63)<br><br>Fireman's Fund (¶ 38) | Insurers, as insurers, have no standing to raise these issues. To the extent an insurer is a creditor, it will have standing to raise these issues in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | conditions (CNA only). | | |
| 11. | Plan violates 524(g)(2)(B)(ii)(V) in that there is no judicial oversight or insurer participation to make sure that the requirement to pay present claims and future demands that involve similar claims in substantially the same manner is satisfied. | AXA Belgium (p. 4) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| ~~12.~~ | ~~Breadth of the releases and exculpation provisions violates the good faith requirement under 1129(a)(3).~~ | ~~Arrowood (Phase II Objections at. pp. 39-41)~~ | ~~*See* I.B. above.~~ |
| ~~13.~~**12.** | The § 8.8.7 releases of certain non-debtors, such as Fresenius and Sealed Air, are "illegal on [their] face." | GEICO (¶¶ 68-69)  AXA Belgium (p. 4-5)  London (¶ 41) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| ~~14.~~**13.** | Exculpation provisions set forth in § 11.9 impermissibly include non-debtors such as Sealed Air and Fresenius and may  provide prospective immunity from liability to the Asbestos PI Trust. | AXA Belgium (p. 4-5)  London (¶ 41) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| ~~15.~~**14.** | The Plan may violate 524(g)(2)(B)(ii)(I)(II) and (III) as there appears to be little or no evidence of PD future demands. | Seaton One Beacon (¶ 80)  GEICO (¶ 64) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| ~~16.~~ | ~~The bankruptcy court does not have jurisdiction to approve the releases and exculpation for certain of the non-debtors as they purport to release third parties from all liability having nothing to do with the Debtors, for conduct going back decades.~~ | ~~Arrowood[4] (Phase II. Objections at pp. 19-20)~~ | ~~Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this~~ |

~~[4]  Arrowood filed Objections and a Trial Brief devoted exclusively to the Exculpation and Release provisions of the Plan.  However, Arrowood  conceded in its brief that these are Phase II issues and it only asserts that it should have standing to be heard on these Objections at Phase II of the Confirmation Hearing.  The Court should not make this determination until Phase II, and Arrowood should only have standing, if at all, as a creditor to raise such issues.~~

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | issue in Phase II. |
| 17. | 524(g) imposes strict requirements for third party releases as does the Third Circuit, and the Debtors do not meet the standard here as the releases are exceedingly broad. | Arrowood (Phase II Objections at pp. 21-22) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 18. | The Plan does not establish that non-debtors have derivative liability. Some non-debtors are making little or no contributions. Even if that was the case, it would not guarantee that exculpation is lawful. | Arrowood (Phase II Objections at p. 29) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 19. | The discharges under the Plan appears to discharge liabilities of non-debtors in violation of 524(e) and 1141. | Arrowood (Phase II Objections at pp. 21-24) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 20. **15.** | If the Trustees, TAC, Trust Agreement and TDP are to remain as proposed, the broad exculpation and indemnification provisions should be dropped so as to give beneficiaries at least one means of promoting fairness of treatment in the trust distribution process. | Federal (¶¶ 52-53) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 21. | By exonerating lawyers even from their own clients, the exculpations in 11.9 violate ethical norms and public policy. | Arrowood (Phase II Objections at pp. 35-36) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 22. **16.** | Plan violates 1129(a)(4) because the compensation to be provided to the members of the TAC by the PI Trust is not set forth in the Plan or in any of the Plan Documents. | Fireman's Fund (¶ 42) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | issue in Phase II. |
| ~~23.~~**17.** | The Plan does not satisfy §§1129(a)(5)(A)(ii) or § 1129(a)(3) because the TAC is in a position to control the Trust, and the appointment of the TAC members is not consistent with the interests of creditors or with public policy. | Fireman's Fund (¶ 43) Seaton One Beacon (¶¶ 53-64) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| ~~24.~~**18.** | Medical criteria of the TDP are too lax and it compensates meritless claims.  Thus, the Plan is not proposed in good faith. | Fireman's Fund (¶¶ 46-47) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| ~~25.~~**19.** | The scope of the Channeling Injunction violates 1123(a)(5) and its timing restriction impedes the rights of nonsettling insurers who would settle post-confirmation in violation of § 524(g). Federal requests that the timing restriction be eliminated.  Fireman's Fund contends that the Plan is unconfirmable under § 1129(a)(1) with the restriction. | CNA (pp. 23-34) Federal (¶¶ 54-61) Fireman's Fund (¶ 34-37) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| ~~26.~~**20.** | The Channeling Injunction is unduly narrow in violation of § 1123(a)(5) in that it is policy specific. It should be insurer specific. | CNA (p. 25) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| ~~27.~~**21.** | Because the Plan is not feasible under § 1129(a)(11), it should not be confirmed under § 1129(a)(1). | ~~Arrowood (p. 15-16)~~ Zurich (¶ 11) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| ~~28.~~**22.** | If the Plan alters the creditors' indemnification rights, it | | Insurers, as insurers, have no standing to raise |

8

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
|  | violates § 365.  If settlement agreements are executory and being assumed, then the Plan can not impair the claims of those who are party to the agreements and send them to the Trust. | Allstate (pp. 6-8) | this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 29. 23. | If the settlement agreements are not executory, any provision of the Plan that precludes an argument by Allstate that the Plan's treatment of Grace's indemnification obligations constitutes a breach or an anticipatory breach of the settlement agreements violates § 1129. | Allstate (p. 8) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| **C.** | **IMPAIRMENT OF CLASS 9 CREDITORS** | | |
| 1. | Plan violates § 1124(1) by classifying the Lenders' claims as unimpaired. The Lenders are impaired as their legal, equitable, and contractual rights are altered. | Bank Lenders (¶¶ 15-39) | The Bank Lenders are not impaired. They will be paid 100% of the allowed amount of their claims plus post-petition interest in excess of the contract non-default rate.  Trial Brief at 39. Under Third Circuit law, and as this Court has already determined, Lenders have no entitlement to contractual default interest, and thus the Lenders cannot claim that they are impaired.  *Id.* |
| 2. | Grace does not and cannot challenge the Bank Lenders' right to default interest under applicable state law. "There is simply no federal interest or any Bankruptcy Code provision or caselaw that permits a court to rewrite a contract so as to read valid state law property rights to default interset out of a contract entirely."  Nor do state law property rights vanish in Bankruptcy.  A contrary | Bank Lenders (¶ 37-38) | The issue of preemption by the Bankruptcy Code is a Phase II issue. That said, the Third Circuit has made it explicitly clear that "a creditor's claim outside of bankruptcy is not the relevant barometer for impairment."  *In re PPI Enter. U.S.) Inc.)*, 324 F.3d 197, 204 (3d Cir. 2003). Instead, "a creditor's rights must be |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
|  | holding would violate the Supreme Court's mandate in *Butner*. |  | ascertained with regard to applicable statutes . . ." *Id. See  see also* Trial Brief at 46. Here, this Court has already determined that the Lenders are not entitled to contractual default interest. |
| 3. | In order for a class to be unimpaired, every claim in the class must be unimpaired.  Here, the rights of some claimants have been altered.  They should all get the rate of interest that they bargained for in the contract regardless of whether it is default or non-default interest because the Debtors are solvent. | Morgan Stanley (¶¶ 11-16)  GUCs (pp. 6-8) | There has been no default and no finding of solvency.  Thus, Class 9 creditors are not entitled to interest at the default rate. |
| 4. | Because the dispute resolution procedures under § 3.1.9(d) are not appropriate, and the Plan fails to affirmatively state it will leave the legal, equitable, and contractual rate of creditors unaltered, it is unclear that they will be able to receive the full amount of post-petition interest. | GUCs (pp. 11-12) | The Plan unequivocally provides for post-petition interest on these claims, as provided for in each creditor's agreement, and claimants dissatisfied may challenge the interest rate. (Plan §3.1.9(d)). *See* 3 above. |
| 5. | While the Bank Lenders' post-petition interest under § 502(b)(2) may be disallowed as part of the "allowed pre-petition amount," this has not eliminated and has nothing to do with a creditor's entitlement to post-petition interest which is preserved under §§ 1129(a)(7), 726(a)(5), and 1129(b). | Bank Lenders (¶¶ 25-30) | The Bank Lenders lack standing to raise this issue as their claims are unimpaired. |
| ~~6.~~ | ~~The procedures outlined in Plan § 3.1.4(b) *create* impairment because parties who do not accept the post-petition rate and choose to litigate are bound by a court's~~ | ~~Longacre (¶¶ 19-21)~~ | ~~A party is not impaired because it pursues litigation rather than accepting the post-petition rate, and the court determines it deserves less after full and fair adjudication.~~ |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | ~~determination if it is less than what the Plan awards.~~ | | *~~Id.~~* |
| II. | **PHASE II ISSUES**[5][4] | | |
| A. | **CLASSIFICATION ISSUES AND TREATMENT OF CLAIMS**[6] | | |
| 1. | The claims of the following creditors are misclassified as Class 6 claims in violation of § 1122 which requires that all "substantially similar" claims be treated equally. In most cases, they should be Class 9 claim:<br><br>(a) Longacre's claim, purchased from National Union which is substantially dissimilar to traditional tort claims and similar to the Morgan Stanley claim, which was properly reclassified as a Class 9 claims;<br><br>(b) Montana's contribution and indemnification claims;<br><br>(c) Scotts' PI claims and insurance claims;<br><br>(d) MCC's indemnity and contribution claims;<br><br>(e) Seaton One Beacon's indemnity claims, which are, in fact contract claims and broader than the Class 6 tort claims; | Longacre (¶¶ 8-18)<br><br>Montana (pp. 6-7)<br><br>Scotts (¶¶ 46-48)<br><br>MCC (¶ 7)<br><br>Seaton One Beacon (¶ 33)<br><br>National Union (pp. 2-3)<br><br>Allstate (pp. 8-9)<br><br>Fireman's Fund (*see* Surety Claim Brief at pp. 10-16)<br><br>~~Arrowood (pp. 7-8)~~ | To be addressed in Phase II. |

[5][4]   The Debtors herein list and summarize the Phase II Objections which have been filed. However, the Debtors reserve the right to supplement and revise this chart to further discuss these Objections and the responses thereto in conjunction with preparation for the Phase II hearing and the Trial Briefs therein. Pursuant to the CMO, Phase II issues are to address the objections of: (i) parties classified under the Plan as Holders of Indirect PI or PD Trust Claims (including insurers as Holders of Indirect PI or PD Trust Claims with respect to such Claims); (ii) the objections of the Libby Claimants and (iii) any other confirmation objections not addressed and resolved in Phase I.
**To the extent an Insurer is listed in this section, that Insurer only has standing to address these issues as a creditor.**

[6]   ~~To the extent an Insurer is listed in this section, that Insurer only has standing to address these issues as a creditor.~~

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | (f) National Union's claim 9553 because it bargained for a release of potential secured status, and the claim is a pure contract claim;<br><br>(g) Allstate's contractual indemnity claims;<br><br>(h) Traveler's Surety claim;<br><br>(i) Fireman Fund's Surety Claim~~,~~<br><br>~~(j) Arrowood's contract claims~~; and<br><br>(k) General's contract claims. | General (pp. 10-13) | |
| 2. | Indirect PI Trust Claims are not substantially similar to the underlying asbestos claims and should be separately classified for voting purposes. | BNSF (¶¶ 63) | To be addressed in Phase II. |
| 3 | The ACC and PI FCR have been representing the interests of tort claimants, but no one has been representing the interest of Indirect PI Trust Claims as class 6 claims. This further suggests that it is unfair to classify such claims as Class 6 claims. | Longacre (¶ 14) | To be addressed in Phase II. |
| 4. | The Plan may discriminate against Indirect Claims by making them subject to disallowance on the ground that they constitute Demands | BNSF (¶¶ 56-61) | To be addressed in Phase II. |
| 5. | ~~The~~ Plan discriminates against Indirect PI claimants by only allowing the trust to satisfy indemnity claims at a fraction of the price required by the controlling contracts. | Travelers (¶¶ 25-27) | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 6. | Plan does not provide for fair and equitable treatment of indemnity claims that may arise and/or be liquidated after the Effective Date; thus, it fails to comply with §§ 1123(a)(4) and 1129(a)(3). | MCC (¶ 8) | To be addressed in Phase II. |
| 7. | Because the Plan Proponents have sought disallowance of the MCC Claims under 502(e), the Plan unfairly discriminates against MCC in violation of § 1123(a)(4). | MCC (¶ 13) | To be addressed in Phase II. |
| 8 | Class 7A should be classified as impaired under § 1124(1) because equity is retained while interest is not being paid on claims. | Anderson Memorial (pp. 19-21) | To be addressed in Phase II. |
| 9 | Plan violates § 1122 because it groups the Bank Lenders' claims with substantially dissimilar claims of other unsecured creditors, whose claims may or may not be entitled to default interest. | Bank Lenders (¶¶ 40-45) | To be addressed in Phase II. |
| 10 | Libby claims are not substantially similar to other claims in their class in violation of § 1122 and because of the nature of their injuries and the insurance coverage available to them alone, they should be separately classified. | Libby (pp. 49-55) | To be addressed in Phase II. |
| 11. | Plan violates § 1123(a)(4) by providing different treatment to different claims in Class 9: Banks get 6.09% interest, environmental gets 4.19% interest, contract claims get the non-default contract rate, and "other" claims get 4.19% interest.  Everyone should get the same rate. | Morgan Stanley (¶¶ 7-9) ~~Longacre (¶¶ 18-21)~~ | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 12. | The Joint Plan violates the fundamental principle of bankruptcy law that debtors are bound by their pre-petition non-executory contracts as it abrogates Travelers' right to receive payment in full of indemnity claims. | Travelers (¶¶ 23-33) | To be addressed in Phase II. |
| 13. | Plan's classification scheme amounts to improper gerrymandering to avoid having to satisfy cramdown. Class 9 is impaired and must be "crammed down" under 1129(b). | Morgan Stanley (¶ 10)<br><br>Bank Lenders (¶ 39) | To be addressed in Phase II. |
| 14. | Plan violates 1123(a)(4) because it provides different treatment to claims in the same class for allowance, rights versus third parties, and the terms on which claims are paid.<br><br>(a) All Creditors in Class 7 should be treated equally as *Combustion Engineering* makes clear.<br><br>(b) The criteria for treating different PI claims differently, such as disease type, is not appropriate. | Anderson Memorial (pp. 12-17 | To be addressed in Phase II. |
| 15. | Plan violates § 1123(a)(4) by providing different treatment to PI claims based on inappropriate factors such as (a) the type of disease, (b) whether the claim is based on a jury verdict, (c) whether the claim is liquidated by the Trust, (d) whether the claim is for wrongful death, and (e) whether the claim is for compensatory or punitive damages. | Libby (pp. 59-66) | To be addressed in Phase II. |
| 16. | PD CMO is discriminates against and is directed almost exclusively at Anderson. *Solow* claim goes back to state | Anderson Memorial (pp. | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | court. Other PD claims go to District Court. PI Trust provides for lessened standards of proof and evidentiary burdens. | 11-12) | |
| 17. | Plan discriminates against Montana in violation of the Montana Constitution and inflicts a taking on BNSF without just compensation in violation of the U.S. Constitution | Montana (pp. 19-20)  BNSF (¶ 44) | To be addressed in Phase II. |
| 18. | Plan provides for no meaningful opt out option for ZAI Claimants -- opt outs should be able to address their claims outside of the ZAI TDP. | Anderson Memorial (pp. 22-23) | Anderson Memorial is not a ZAI claimant, and has no standing to make this argument. |
| 19. | Libby Claimants have the right to have their claims allowed in accordance with applicable non-bankruptcy law. The failure to so provide makes the Plan unconfirmable. | Libby (pp. 72-79) | To be addressed in Phase II. |
| 20. | Plan violates Libby's Seventh Amendment right to Jury Trial | Libby (pp. 69-72) | To be addressed in Phase II. |
| 21. | Plan violates § 1123(a)(4) by taking away Libby's insurance rights. | Libby (pp. 67-68) | To be addressed in Phase II. |
| 22. | As an executory contract, Trust can only transfer 1995 London Asbestos Settlement to the Trust if Debtor can comply with the requirements of § 365(b) concerning assumption and assignment of executory contracts.  Even if not executory, this transfer violates § 365(c)(1)(A) because applicable law excuses London from having to perform if the contract is assigned to the | London (¶¶ 12-25) | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | trust. | | |
| 23. | Debtors **should not be permitted to** use insurance policies that are not property of the estate to fund the Trusts. | Kaneb (*see* several pleadings) | To be addressed in Phase II. |
| 24. | TDP discriminates against holders of Indirect PI Trust Claims by abrogating state law rights to join Grace in litigation as the responsible (or jointly responsible) party to lawsuits such as those being pursued by Libby Claimants, Scotts, and BNSF. The TDP should be modified to adopt the procedures adopted by the Manville Trust, which were negotiated in a process that included input from co-defendants.  This would give Indirect PI Claimants the option to (a) pursue contribution claims against the Trust or TDP or (b) receive a credit against any verdict in the tort system that would treat the Trust as a settled tortfeasor. | CNA (pp. 30-32) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| 25. | The Plan should provide for reimbursement of actions brought against insurers by PI Claimants. | Certain AIU Insurers (¶¶ 3-7) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| **B.** | **524(g) INJUNCTION** | | |
| 1. | The timing established by the Plan's TDP is flawed and violates 524(g)(2)(B) as the Trust may only settle an Indirect PI Trust claims after the Indirect Claimant has paid the Trust's liability to the Direct Claimant. Parties cannot assert contribution and indemnification claims | Montana (pp. 20-24)<br><br>Garlock Sealing (¶¶ 16-24) | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
|  | until liability of the underlying claim of failure to warn is established. |  |  |
| 2. | The Channeling Injunction violates 524(g)(1)(B) because it fails to cover derivative claims asserted against BNSF. | BNSF (¶¶ 52-55) | To be addressed in Phase II. |
| 3. | The injunction fails to satisfy 524(g)(4)(A)(iii) in that it enjoins BNSF's contractual rights under the policies issued to Grace, and claims asserting such rights do not "arise by reason of" the insurers "provision of insurance to the Debtors" as the provision requires. | BNSF (¶¶ 31-32) | To be addressed in Phase II. |
| 4. | Uncertainty in the TDP regarding the amount of distributions and procedures for distributions violates 524(g)(4).[5] | Montana (pp. 24-25) | To be addressed in Phase II. |
| 5. | Enjoining third-party actions against non-settling insurers and granting the Asbestos PI Trust the authority to settle any claims against the insurers is not "fair and equitable" under 524(g)(4)(B) because the provision requires the injunction to be tied to value contributed, and Settled Insurers are contributing nothing to the Plan. | BNSF (¶¶ 48-51) | To be addressed in Phase II. |
| 6. | In violation of 524(g), the trust is not a genuine trust in any meaningful sense for Class 7A.  It is simply a conduit for the payment of funds by the Reorganized Debtors.  There are no trust mechanisms or procedures in Plan for determining or valuing claims.  Unresolved claims and future claims are simply re-directed back into litigation, the defense of which is controlled by the | Anderson Memorial (pp. 18-19) | To be addressed in Phase II. |

[5] Note that Montana's objection appears to be an objection more properly brought under 524(g)(2)(B)(ii)(V).

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | Reorganized Debtors. | | |
| 7. | The Plan violates 524(g)(B)(ii)(V) because it treats substantially similar present and future claims differently (Garlock Sealing) and substantially similar PD claims differently (Anderson) | Anderson Memorial (p. 17) | To be addressed in Phase II. |
| 8. | Asbestos Insurance Entity Injunction enjoins Libby from pursuing Insurance coverage as to which they did not complete with other claimants.  The is not fair and equitable under § 524(g)(4)(B)(ii) | Libby (p. 80) | To be addressed in Phase II. |
| 9. | Section 524(g) does not permit channeling of General's contract claims. | General (pp. 10-12) | To be addressed in Phase II. |
| ~~10.~~ | ~~The Channeling Injunction impairs Arrowood by channeling its claims to an impaired class.~~ | ~~Arrowood (Phase II Objections at p. 38)~~ | ~~Phase II issue, which may only be raised by creditors.~~ |
| ~~11.~~**10.** | §105 of the Bankruptcy Code may not be used to circumvent the requirements of § 524(g) and the holding in *Combustion Engineering.* | US Trustee (¶ 11) | To be addressed in Phase II. |
| ~~12.~~**11.** | Plan violates § 524(g) in that it improperly channels Fireman Fund's Surety Claim against Grace to the Trust because §  524(g) is designed to "provide reasonable assurance that the Trust will value, and be in a position to pay, present and future claims that involved similar claims in substantially the same manner."  Fireman's Fund Surety Claim is the only claim of its type. | Fireman's Fund (*see* Surety Claim Brief at pp. 26-28) | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| **C.** | **ASBESTOS INSURANCE REIMBURSEMENT AGREEMENT ISSUES** | | |
| 1. | Plan impairs CNA's rights under the Asbestos Insurance Reimbursement Agreement. Modifications of CNA's rights are not authorized by bankruptcy law and violate otherwise applicable state law, failing to satisfy 1129(a)(1) and (3). | CNA (pp. 6-7, 26-28) | To be addressed in Phase II. |
| 2. | PI channeling injunction should extend to insurers with respect to claims allegedly arising out of liability policies that are the subject of an Asbestos Insurance Reimbursement Agreement listed in Plan Exhibit 6. | CNA (p. 24) | To be addressed in Phase II. |
| 3. | Plan defines "Indirect PI Trust Claims" such that they may not be considered "insurance settlement agreements" and may not be properly covered despite the language in §5.6. | Allstate (p. 7) | To be addressed in Phase II. |
| 4. | § 7.2.2(d)(iv) eviscerates all contractual rights, impairing payment under a particular 1996 Settlement Agreement | Allstate (p. 4) | To be addressed in Phase II. |
| 5. | Plan alters or entirely eliminates, Allstate's indemnification rights. | Allstate (p. 4) | To be addressed in Phase II. |
| ~~6.~~**6.** | To the extent that any potential third party claims against Allstate are not channeled to the Trust, Allstate's rights under the settlement agreements are further impaired. | Allstate (p. 9) | To be addressed in Phase II. |
| ~~7~~**7.** | ~~Plan impairs its rights under the Asbestos Insurance Reimbursement Agreement~~**Parties should not have to pay to the Trust any amount in excess of the amount** | ~~CNA~~**Travelers** (~~pp. 6-7~~**¶¶ 36-40**) | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | **actually paid by the Trust to the holder of a claim.** | | |
| **D.** | **EXCULPATION, RELEASE, AND OTHER INJUNCTIONS** | | |
| 1. | The release, injunction, and exculpation language in §§ 8.8.7 and 8.8.8 of the Plan, is too broad and violates § 524(g), does not meet the *Zenith* test, and should only apply to non-debtor defendants who are making substantial financial contributions to the Trust as required by § 524(g)(4)(B).<br><br>Concerned about the alleged conflict of interest of TAC representatives, CNA recommends that the exculpation provision be clarified to provide that individuals remain liable, *inter alia*, for "bad faith, including bad faith breach of the covenant of good faith and fair dealing owed to Asbestos PI Trust beneficiaries" and "willful misappropriation."  The change allegedly incorporates the provision of 12 Del. Code § 3806(e). | ERISA Plaintiffs (Exhibit B at ¶¶ 15-25)<br><br>US Trustee (¶¶ 12-14)<br><br>Libby (pp. 79-84)<br><br>Anderson Memorial (pp. 23-25)<br><br>Scotts (¶¶ 30-45)<br><br>Seaton One Beacon (¶¶ 81-85)<br><br>CNA (p. 22) | To be addressed in Phase II. |
| 2. | The Plan does not satisfy the minimal requirements for a non-consensual release of third-party claims.  Plan injunctions also cannot abrogate express contractual rights in the absence of consideration from settled and non-settled insurers. | BNSF (¶ 42-43) | To be addressed in Phase II. |
| 3. | The releases improperly impede Fireman's Fund's rights including, without limitation, any rights to subrogation, contribution, recoupment and setoff. | Fireman's Fund (¶ 31) | To be addressed in Phase II. |
| 4. | The § 8.8.7 releases of certain non-debtors, such as | Seaton One Beacon (¶¶ | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | Fresenius and Sealed Air, are "illegal on [their] face." | 83-84) | |
| 5. | Exculpation provisions are too broad as a general matter:<br><br>(a) They violate *PWS* and Third Circuit Law such as *Congoleum* and *Genesis Health*<br><br>(b) They should not apply to former directors, and officers of Non-Debtor Affiliates who should not qualify as "Representatives" or those who engage in gross negligence or willful misconduct (US Trustee, Zurich, Seaton One Beacon).<br><br>Exculpation clause impermissibly goes beyond activities related to the prosecution of the bankruptcy case (Seaton One Beacon)<br><br>§ 11.9  of the Plan is too broad with respect to the Trustees and TAC, and in conjunction with their conflicts of interest, violates § 1129(a)(3) of the Code. (CNA)<br><br>§ 11.9 of the Plan violates the rule against prospective waivers of malpractice claims and may violate applicable state trust law. Thus, it violates § 1129(a)(3) of the Code. | Seaton One Beacon (¶¶ 81-82)<br><br>US Trustee (¶¶ 15-17)<br><br>CNA (pp. 22-23)<br><br>Firemen's Fund (¶ 32)<br><br>Zurich (¶ 12)<br><br>London (¶ 41)<br><br>MCC (¶ 12) | To be addressed in Phase II. |
| 6. | The Asbestos Insurance Entity Injunction is too broad and should not be able to bar coverage or other actions against Nonsettling Asbestos Insurance Companies.  This violates § 524(g), and § 105 of cannot be used to broaden | BNSF (¶¶ 45-47)<br><br>Scotts (¶¶ 38-43)<br><br>US Trustee (¶¶ 9-11) | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | application of § 524(g) | | |
| 7. | The discharge under § 8.1 is inappropriately broad under §524(g) and § 1141 of the Bankruptcy Code as it bars all claims against the Reorganized Debtors in perpetuity and inappropriately bars state court proceedings with respect to Kaneb and other ongoing litigations with respect to Kaneb. | Kaneb (*see* various pleadings) | To be addressed in Phase II. |
| 8. | Plan usurps Court's function to modify or dissolve preliminary injunctions in 8.7.1 of the Plan -- there is cause for the court to dissolve the injunction in the *Chakarian* case so Libby can pursue claims against BNSF. | Libby (pp. 84-85) | To be addressed in Phase II. |
| **E.** | **OBJECTIONS TO THE TAC AND TDP** | | |
| 1. | TAC representatives who represent Direct Claimants have actual and apparent conflicts with the interests of Indirect Claimants.<br><br>The Trust could fix this by requiring that TAC members be neutral or reducing the TAC to an advisory role. Or the Court could require the TAC to have an equal number of representatives of Indirect Claimants. (Garlock) | Garlock Sealing(¶¶ 25-31)<br><br>BNSF (¶ 60) | To be addressed in Phase II. |
| 2. | TDP fails to protect the rights of Indirect PI Trust Claimholders as it has too many restrictions on allowed claims, such as not including attorneys fees and defense costs in what is considered an "allowed claim" and requiring them to obtain a full release from the | BNSF (¶¶ 56-58) | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | underlying asbestos creditor in order to be granted an allowed claim. | | |
| 3. | Unclear how the liquidated claims of judgment creditors secured by bonds will be paid under the TDP. *If the Edwards Judgment Claims secured by the supersedeas bonds are treated as unliquidated, this strips them of their security interest and constitutes unfair and impermissible discrimination.* They request that the italicized language be removed from 5.2(a) of the TDP, as follows:<br><br>"(ii) a jury verdict or non-final judgment in the tort system obtained prior to the Petition Date, *provided there is no supersedeas bond associated with such verdict or judgment*" | Edwards Judgment Claimants (pp. 6-13) | To be addressed in Phase II. |
| 4. | Medical criteria of the TDP provisions are discriminatory | Libby (pp. 25-33) | To be addressed in Phase II. |
| 5. | TAC members suffer from irreconcilable conflicts of interest. (Seaton One Beacon only). | Federal (¶¶ 44-50) ←<br><br>Seaton One Beacon (¶ 53-67)<br><br>GEICO (¶¶ 40-53)<br><br>CNA (pp. 17-23) | Insurers, as insurers, have no standing to raise this issue. To the extent an insurer is a creditor, it will have standing to raise this issue in Phase II. |
| **F.** | **VIOLATIONS OF GOOD FAITH[6]** | | |
| 1. | Plan not filed in good faith and thus violates § 1129(a)(3) | Montana (pp. 26-27) | To be addressed in Phase II. |

[6] *See also* I.B.7.

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | because of various violations of the Bankruptcy Code. | Scotts (¶ 49) | |
| 2. | Plan violates § 1129(a)(3) because it seeks to maximize value for equity at the expense of the creditors. | **Travelers (¶¶ 45-50)**<br><br>Bank Lenders **(¶¶ 56-58)** | To be addressed in Phase II. |
| 3. | Plan not filed in good faith and violates § 1129(a)(3) because it singles out Anderson for disparate treatment. | Anderson Memorial (pp. 25-27) | To be addressed in Phase II. |
| ~~4.~~ | ~~Plan violates § 1129(a)(7) by providing Libby less than in a liquidation where Libby claimants could pursue insurance coverage directly from insurers outside Bankruptcy.~~ | ~~Libby (p. 73)~~ | ~~To be addressed in Phase II.~~ |
| **G.** | **VIOLATIONS OF THE ABSOLUTE PRIORITY RULE AND FAIR AND EQUITABLE TEST** | | |
| 1. | The Plan violates the "absolute priority rule" of § 1129(b) because it will be crammed down upon Class 6. | Montana (pp. 18-19) | To be addressed in Phase II. |
| 2. | The Plan violates the "absolute priority rule" of § 1129(b) if *any* class votes against it. | BNSF (¶ 62) | To be addressed in Phase II. |
| **3.** | **Plan violates § 1129(a)(7) by providing Libby less than in a liquidation where Libby claimants could pursue insurance coverage directly from insurers outside Bankruptcy.** | **Libby (p. 73)** | **To be addressed in Phase II.** |
| ~~3.~~ **4.** | The Plan violates the "best interests" requirement of § 1129(a)(7) and "fair and equitable test" and "absolute priority rule" of § 1129(b) in that Equity Interests are being retained while the Class 9 claims are not being | Bank Lenders (¶¶ 46-55)<br><br>GUCs (pp. 14-18)<br><br>Morgan Stanley (¶¶ 17- | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | paid in full. | 20)<br><br>MCC (¶ 10)<br><br>Travelers (¶¶ 51-54) | |
| 4.5. | As a non-accepting holder of an impaired claim in Class 6, Travelers is entitled to the protection of the "best interests" test.  Plan violates this test by providing less of a recovery on Traveler's indemnification claim that would be available in liquidation. | Travelers (¶¶ 51-54) | To be addressed in Phase II. |
| 5.6. | Plan does not satisfy 1129(a)(1) because it violates 1124(1), 1122(a), 1129(a)(7), 1129(b), and 1129(a)(3) | Bank Lenders (¶ 14) | Bank lenders are unimpaired and lack standing to raise issues under §1129. |
| **H.** | **JURISDICTIONAL ARGUMENTS** | | |
| 1. | The Court does not have subject matter jurisdiction over:<br><br>(a) the contract claims that creditors  have against Sealed Air and Fresenius as they are direct claims (Seaton One Beacon)<br><br>(b) BNSF's contractual claims against insurers because the policies Grace purchased on behalf of  BNSF because do not list Grace list as an insured.  The Court cannot enjoin such claims.<br><br>(c) "all matters concerning the Asbestos Insurance Policies, Asbestos-In Place Insurance Coverage, Asbestos Insurance Reimbursement Agreements" as Article 10 claims.  Permissive or mandatory abstention | Seaton One Beacon (¶¶ 37-47)<br><br>BNSF (¶¶ 29-32)<br><br>Allstate (pp. 9-10) | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | provisions set forth in 28 U.S.C. § 1334(c)(1) and (2) apply (Allstate). | | |
| 2. | Court lacks subject matter jurisdiction to issue the Channeling Injunction, the Asbestos Insurance Entity Injunction or Releases to the extent that they contain third party releases outside the scope of the Code. | Scotts (¶ 44) | To be addressed in Phase II. |
| **I.** | **VOTING RIGHTS** | | |
| 1. | Libby is deprived of effective voting rights. | Libby (pp. 68-69) | To be addressed in Phase II. |
| 2. | Because Class 7A is impaired, Class 7A should be able to vote not just "for 524(g) purposes" and the voting should not be permitted by Class 7A Claimants who settled their claims and are no longer impaired. | Anderson Memorial (pp. 20-21) | To be addressed in Phase II. |
| **J.** | **PARTY-SPECIFIC OBJECTIONS/ISSUES** | | |
| 1. | The Plan violates § 553(a) by failing to preserve Firemen's Fund's right to set off the amounts owed to it under the Indemnity Agreement for its "Surety Claim" | Firemen's Fund (Surety Claim Brief at pp. 19-22) | To be addressed in Phase II. |
| 2. | Fireman's Fund should be able to control the prosecution of the *Edwards* Appeal under Texas Law. | Fireman's Fund (Surety Claim Brief at pp. 24-~~260~~**26**) | To be addressed in Phase II. |
| 3. | Plan must clarify that the term "Asbestos Insurance Settlement Agreements" used in § 7.15(c) includes General's Insurance Settlement Agreement with Grace. | General (p. 8) | To be addressed in Phase II. |
| 4. | Appeal Bond in the *Solow* matter must be paid in full, | | |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | including any fees and costs, PD Trust or Reorganized Debtors must assume General Contracts of Indemnity and Plan should preserve and reserve all of Travelers' claims and defenses against any entities in terms of these *Solow* claims. | Travelers | To be addressed in Phase II. |
| 5 | § 7.2.2(d)(iv) vitiates the 1995 London Asbestos Agreement. | London (¶ 32) | To be addressed in Phase II. |
| 6. | Plan should explicitly reference stipulation between them and the Debtors relating to the Superfund site of Blackburn & Union Privileges similar to its language in § 3.1.9(c) for the EPA Multi-Site Agreement Obligations. | Tyco/Covidien (¶¶ 1-5) | Unnecessary.  The stipulation outlines how the claim is treated. The Plan should not have to spell out the individual treatment of every claim. |
| 7. | Plan shouldn't affect Kaneb's rights under its Merger Agreement as that is an executory contract. | Kaneb | To be addressed in Phase II. |
| 8. | The cap on PI Claims should be lifted  to take into account futures | Pro Se ZAI Claimant (p. 1) | To be addressed in Phase II. |
| 9. | Art. 8.1 of the Plan attempts to enjoin setoff rights of taxing authorities when the state should be able to exercise setoff under state law in order to recover admin claim by applying any post-petition refund claims held by the Debtors. | Texas Comptroller (¶ 1) | To be addressed in Phase II. |
| 10. | Objects to 4.19% interest rate for priority tax claims. Under 1129(a)(9)(c), interest must be determined by the prevailing market rate for a loan of a term equal to the payment period, with due consideration of the quality of the security and the risk of subsequent default.  Michigan Dept. of Treasury proposed revised language under | Michigan Dept. of Treasury (¶¶ 3-5) | To be addressed in Phase II. |

27

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | which "Interest will be paid on priority tax claims at the applicable non-bankruptcy rate." | | |
| 11. | Plan should be revised to provide that it does not modify the parties' rights under certain insurance programs with the Fresenius Indemnified Parties and the Sealed Air Indemnified Parties. Any such modification renders the Plan unconfirmable under § 1129(a)(1). | CNA (p. 15) | No amendment necessary. Plan does not alter or address these rights. |
| 12. | Plan should be modified to clarify the post-confirmation handling of the workers' comp claims -- if the Debtors intend for CNA to continue handling the workers' comp claims in the ordinary course, the Plan injunctions need to be expressly modified for that purpose. | CNA (p. 16) | No amendment necessary. Plan expressly provides that workers comp. claims are left unaltered by the Plan (3.1.4(b)). |
| 13 | Phase I-Exhibit 5 does not list all of the CNA insurance settlement agreements. | CNA (p. 3, fn 3) | This will be reviewed and corrected if necessary. |
| 14 | Plan violates §§ 1129(a)(1) and 1103 by dissolving the Creditors' Committee on the Effective Date in section § 11.8 of the Plan, notwithstanding pending Bank Claim litigation that may not be concluded at that time. | GUCs (pp. 18-20) | To be addressed in Phase II. |
| **K.** | **ANTI-ASSIGNMENT** | | |
| 1. | The Plan impairs the rights of insurers as it improperly abrogates the anti-assignment provisions of their policies by assigning insurance rights of non-debtor affiliates to the Trust. | CNA (pp. 6, 36-38)  Fireman's Fund (¶¶ 16-20)  ~~Arrowood (p. 3, 11)~~ | To be addressed in Phase II. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | Zurich (¶ 8, 10)<br><br>GEICO (¶¶ 31-29)<br><br>Federal (¶¶ 9-15)<br><br>AXA Belgium (pp. 3-4) | |
| 2. | § 1123(a)(5) of the Bankruptcy Code does not preempt the anti-assignment provisions.<br><br>Preemption only applies to non-bankruptcy law relating to the financial condition of a debtor and not to insurance policies (GEICO only) | GEICO (¶ 36)<br><br>Fireman's Fund (¶ 17) | To be addressed in Phase II. |
| 3. | The Plan violates §1129(a)(1) of the Bankruptcy Code because it is not insurance neutral and purports to release Grace from the anti-assignment provisions of its contracts. | CNA (pp. 37-39) | To be addressed in Phase II. |
| | **III.    Feasibility** | | |
| 1. | Because the Plan isn't feasible under § 1129(a)(11), it should not be confirmed under § 1129(a)(1).<br><br>Plan isn't feasible if Montana's claims are not dischargeable. Because its claims aren't "claims" as used in the Code, confirmation would likely still need to be followed by liquidation or further reorganization of the Debtors. | Montana (pp. 25-26)<br><br>MCC (¶ 9) | To be addressed in Phase II. Feasibility objections are not due until 8/25/09. |

Document comparison done by Workshare DeltaView on Friday, June 19, 2009 7:21:45 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://NYDMS/LEGAL/14856832/13 |
| Document 2 | interwovenSite://NYDMS/LEGAL/14856832/14 |
| Rendering set | color with status no summary |

| Legend: | |
|---|---|
| **Insertion** | |
| Deletion | |
| *Moved from* | |
| *Moved to* | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 40 |
| Deletions | 86 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 126 |