No. 79PP1633C

**Whereas** W.R. GRACE AND COMPANY (as more fully described in item 1 (a) of the declarations herein)

of  1114 Avenue of the Americas, New York, N.Y. 10038

hereinafter called the Assured,   have   paid U.S.$454,400.00

Premium or Consideration to Us, the undersigned Assurers to

insure against loss as follows viz;  indemnify the Assured in

respect of UMBRELLA LIABILITY as per wording attached hereto.

100% of 80% of the
limits stated herein

during the period commencing at   Thirtieth   day of

June,   19 79 , and ending at  Thirtieth

day of   June,   19 82 .

both days at 12.01 a.m. Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company** for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding the sum of ONE HUNDRED PER CENT OF EIGHTY PER CENT of the limits stated herein,

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this  25d   day of

November   1980

DB/io

EXHIBIT

GRS-13

PENGAD 800-631-6989

DIRECTOR
H. S. WEAVERS (UNDERWRITING) AGENCIES LTi

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000065

Policy No.

L03B169027273

100%

(48.05% WALBROOK INSURANCE COMPANY LIMITED
( 6.49% EL PASO INSURANCE COMPANY LIMITED
(11.69% MUTUAL REINSURANCE COMPANY LIMITED
(12.99% DART INSURANCE COMPANY LIMITED
(11.04% BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED
( 9.74% ST. KATHERINE INSURANCE COMPANY LIMITED
per: H.S. Weavers (Underwriting) Agencies Limited

ADDENDUM

Attaching to and forming part of Policy No.79DD1633C

of    CERTAIN INSURANCE COMPANIES.

Issued to            W.R.GRACE AND COMPANY.

It is understood and agreed that following an adjustment of premium for
the period 30th June 1979 to 30th June 1980 the earned premium does not
exceed the minimum premium paid, therefore the Minimum and Deposit
provisions of this Policy apply.

All other terms and conditions of the Policy remaining unchanged.

Dated London, 28th August 1980

DJB/lc

27.11.80

DIRECTOR
H. S. WEAVERS (UNDERWRITING) AGENCIES LTD

L03B169027273

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

ADDENDUM NO.3

Attaching to and forming part of Policy No.79DD1633C


Issued to                W.R.GRACE & CO.



Notwithstanding anything contained herein to the contrary, it is hereby understood and agreed that this Policy shall not apply:-

A       To Property Damage claims arising from:-

        (1) Erroneous delivery of seeds, erroneous substitution of one
            seed from another, or mislabelling of seeds;
        (2) Cross pollination;
        (3) Germination failure;
        (4) The presence of noxious weed seed;
        (5) Natural shrinkage of grain;
        (6) Loss of and/or damage and/or deterioration from delay or
            from moisture content of grain;
        (7) Commingling of grain.

B       (1) To liability arising under any policy of insurance or reinsurance;
        (2) To liability arising out of the issuance,non-issuance,declination
            or cancellation of, or the imposition of special terms to any policy
            of insurance or reinsurance.

C       In respect of oil and/or gas drilling and/or exploration operations to:-

        (i)  the cost of control of any oil and/or gas well
        (ii) loss of hole and/or in hole equipment.


        It is further understood and agreed that except insofar as coverage is available to the Assured in the Underlying Insurances as set out in the attached Schedule,this Policy shall not apply:-

        (A) To Charterers liability;
        (B) To the safe berthing of any marine vessel;
        (C) To marine vessels in the Assured's Care,Custody or Control;
        (D) To Non-owned watercraft liability;
        (E) To Contractual Liability;
        (F) To Incidental Malpractice Liability;
        (G) In respect of oil and/or gas drilling and/or exploration operations
            to:-
            (i)     explosion,blowout and/or cratering;
            (ii)    underground Property Damage not already excluded by the
                    Seepage,Pollution and Contamination Clause No.1 and the
                    Seepage, Pollution and Contamination Exclusion Clause No.2.

        (H) To liability resulting from the ownership,maintenance and/or
            operations of any dock,wharf and/or quay facility.

        (I) To Punitive and/or Exemplary Damages
        (J) To Pharmacists Liability.


All other terms and conditions of the Policy remaining unchanged.

Dated ,10th December 1979                   CONFIDENTIAL                GEI-000067
DD/sc                                  SUBJECT TO APRIL 2009
                                        PROTECTIVE ORDER

ADDENDUM NO.4

Attaching to and forming part of Policy No.79DD1633C

Notwithstanding anything contained herein to the contrary it is hereby understood and agreed that this Policy shall apply to "Joint Ventures" subject always to the following attached "Joint Venture Clause" given below except in respect of those Joint Ventures which are excepted by virtue of Addendum No.(5)

### JOINT VENTURE CLAUSE
#### (THIRD PARTY LIABILITY)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

(1) It is hereby understood and agreed by the Assured and Underwriters that, as regards any liability of the Assured which is insured under this Policy and arises in any manner whatsoever out of the operations or existence of any joint venture, co-venture, joint lease, joint operating agreement or partnership (hereinafter called " Joint Venture ") in which the Assured has an interest, the liability of Underwriters under this Policy shall be limited to the product of (a) the percentage interest of the Assured in the said Joint Venture and (b) the total limit of liability insurance afforded the Assured by this Policy. Where the percentage interest of the Assured in said Joint Venture is not set forth in writing, the percentage to be applied shall be that which would be imposed by law at the inception of the Joint Venture. Such percentage shall not be increased by the insolvency of others interested in the said Joint Venture.

(2) It is further understood and agreed that, where any underlying insurance(s) have been reduced by a clause having the same effect as paragraph (1), the liability of Underwriters under this Policy, as limited by paragraph (1), shall be excess of the sum of (a) such reduced limits of any underlying insurance(s) and (b) the limits of any underlying insurance(s) not reduced.

22/1/70

N.M.A. 1687

It is further understood and agreed that the term "Joint Venture" as used in the above attached "Joint Venture Clause" or elsewhere within the Policy wording shall be understood to mean:

"Any joining together of two or more companies, either legally or contractually, for the purpose of any business undertaking where joint financial or corporeal benefit is intended."

All other terms and conditions of the Policy remaining unchanged.

Dated,London 10th December 1979
DB/sc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000068

ADDENDUM NO.5

Attaching to and forming part of Policy No 79DD1633C

Issued to                    W.R.GRACE & CO.

It is hereby understood and agreed that the "Joint Venture Clause"
contained in Addendum No.4 shall not apply in respect of any co-venture or
partnership where:

    (A) The Assured's financial interest is at least 50%;

    (B) The Assured has sole responsibility for the management and
        operation;

    (C) The Assured is obligated to provide full insurance.

Notwithstanding the foregoing, it is understood and agreed that any
future contractual agreement issued by the Assured to its co-venturers or
partners will specify that the insurance provided by the Assured's insurers
shall be the sole and exclusive protection afforded to any and all members of
such ventures.

All other terms and conditions of the Policy remaining unchanged.

Dated, London 10th December 1979

DB/sc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000069

ADDENDUM NO. 6

Attaching to and forming part of Policy No. 79DD1633C

Issued to                W.R.GRACE & CO.

ADJUSTMENT CLAUSE.

Notwithstanding anything stated herein to the contrary, it is hereby agreed that the premium charged hereon is comprised of a Minimum and Deposit of $1,320,000.00 part of $1,650,000.00 plus an annual flat premium charge of $14,400.00 part of $18,000.00 in respect of Charterers Liability and in respect of the coverage provided hereunder for the safe berthing of any marine vessel and marine vessels in the Assured's care, custody or control and shall be due and payable as follows:-

| 30th June 1979 | - | $440,000.00 part of $550,000.00 (Minimum and Deposit) |
| | plus | $ 14,400.00 part of $ 18,000.00 (Flat Premium) |
| 30th June 1980 | - | $440,000.00 part of $550,000.00 (Minimum and Deposit) |
| | plus | $ 14,400.00 part of $ 18,000.00 (Flat Premium) |
| 30th June 1981 | - | $440,000.00 part of $550,000.00 (Minimum and Deposit) |
| | plus | $ 14,400.00 part of $ 18,000.00 (Flat Premium) |

It is further understood and agreed that the Minimum and Deposit Premium specified above is subject to adjustment with Earned Premium to be calculated at a rate of 0.0925 per $1,000.00 of the Assured's Gross Receipts.

The Assured shall declare to Underwriters as soon as possible after each anniversary date (commencing with the 30th June 1980) the total amount of their Gross Receipts during the preceding annual period and should the Earned Premium so computed exceed the Deposit Premium charged for said annual period then the balance shall be immediately payable by the Assured to the Underwriters.

Notwithstanding anything contained herein to the contrary, if this Policy shall be cancelled by the Assured, Underwriters shall be entitled to the Earned Premium for the period that this Policy has been in force or the short rate proportion of the Minimum Premium whichever is the greater, plus the short rate proportion of the flat premium charge. If this Policy is cancelled by Underwriters they shall be entitled to the Earned Premium for the period that this Policy has been in force or pro rata of the Minimum Premium whichever is the greater, plus the pro rata proportion of the flat premium charge.

All other terms and conditions of the Policy remaining unchanged.

Dated ,London 10th December 1979

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000070

ADDENDUM NO. 7

Attaching to and forming part of Policy No. 79DD1633C

Issued to:                    W.R. GRACE & CO.


Notwithstanding the fact that the Assured has underlying insurance in force providing coverage in respect of Products Recall and Architects Errors and Omissions Insurance, it is specifically understood and agreed that no such coverage shall be provided hereunder and for the purposes of this Policy the underlying coverage shall not be impaired by such exposures.


It is further understood and agreed that this Policy shall not apply to any loss which would have been covered by the scheduled underlying policies, except for the deductible provisions contained therein.


All other terms and conditions of the Policy remaining unchanged.

Dated, London, 10th December, 1979

DB/sc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

ADDENDUM NO.1

Attaching to and forming part of Policy No.79DD1633C

Issued to                        W.R.GRACE & CO.

As respects the Assured's operations outside the United States of America and/or Canada Insuring Agreement II is amended to read as follows:-

"...Underwriters hereon shall be only liable for the ultimate net loss the excess of either:-

(a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances;

or  (b) $250,000.00 ultimate net loss in respect of each occurrence.

       whichever is the greater,

or  (c) $250,000.00 ultimate net loss in respect of each occurrence not covered by said underlying insurances,

                                        ................."

All other terms and conditions of the Policy remaining unchanged.

Dated,London 10th December 1979

DB/sc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000072

ADDENDUM NO. 2

Attaching to and forming part of Policy No. 79DD1633C

Issued to:                    W.R. GRACE & CO.


It is hereby understood and agreed that this policy is extended
to include "Employee Benefit Liability", as more fully defined in the
scheduled underlying policies and that as respects such coverage this
policy is subject to the same warranties, terms and conditions (except
as regards the premium, the obligation to investigate and defend, the
amount and limits of liability and the renewal agreement, if any) as
are contained in the said underlying policies.


It is however further understood and agreed that the above extension
in coverage shall not apply to claims based upon the Employee Retirement
Income Security Act of 1974, Public Law 93-406 commonly referred to as
the Pension Reform Act of 1974 and amendments thereto, or similar
provisions of any Federal, State or Local Statutory Law or Common Law.


All other terms and conditions of the Policy remaining unchanged.

Dated, London, 10th December, 1979

DB/sc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000073

 ADDENDUM 8

Attaching to and forming part of Policy No. 79DD1633C

Issued to:                     W.R. GRACE & CO.

It is hereby understood and agreed that the following attached clause shall apply in respect of the Assured's oil and/or gas operations on, over and/or under water:

SEEPAGE, POLLUTION AND CONTAMINATION EXCLUSION CLAUSE No. 2
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination.
(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances.
(3) Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by sub-surface operations of the Assured.
(4) Removal of, loss of or damage to sub-surface oil, gas or any other substance, the property of others.
(5) Fines, penalties, punitive or exemplary damages.

22/1/70.
N.M.A. 1684.

It is also understood and agreed that the following attached clause shall apply in respect of the Assured's oil and/or gas operations other than those on, over and/or under water:

SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 1
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1) Removal of, loss of or damage to sub-surface oil, gas or any other substance, the property of others, provided always that this paragraph (1) shall not apply to any liability which would otherwise be covered under this Insurance for such removal, loss or damage directly attributable to blow-out, cratering or fire of an oil or gas well owned or operated by, or under the control of, the Assured.
(2) Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by sub-surface operations of the Assured.
(3) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (3) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(4) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(5) Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.

22/1/70.
N.M.A. 1683.

It is further understood and agreed that the following attached clause shall apply in respect of all operations of the Assured, other than oil and/or gas operations.

INDUSTRIES, SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 3
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(3) Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.

22/1/70.
N.M.A. 1685.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000074

All other terms and conditions of the Policy remaining unchanged.

<u>ADDENDUM NO. 9</u>

Attaching to and forming part of Policy No. 79DD1633C

Issued to:                    W.R. GRACE & CO.

    It is hereby understood and agreed that the BOOKER DRILLING COMPANY is included herein as an additional Assured.    In consequence of the above the CNA Casualty Company of Illinois will provide underlying coverage on a "Difference Between" basis up to the appropriate underlying limits as expressed in the schedule attached hereto until such time as the existing underlying insurances of Booker Drilling Company are cancelled and the coverages are included within the CNA underlying insurance programme.

    Gross Receipts from the aforementioned entity shall be included in the premium adjustment in accordance with Addendum No. 6.

All other terms and conditions of the Policy remaining unchanged.

Dated, London,  10th December, 1979

DB/lc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000075

ADDENDUM NO. 10

Attaching to and forming part of Policy No. 79DD1633C

Issued to                W.R. GRACE & CO.

WARRANTY

    It is hereby warranted by the Assured that Physical Damage coverage is maintained for 100% values in respect of all Highly Protected Risk properties and that a blanket block policy for $50,000,000 excess of a $1,000,000 deductible is maintained for all other real property; all property in the Assured's care, custody or control being covered by such policies.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000076

<u>ADDENDUM NO. 11</u>

Attaching to and forming part of Policy No. 79DD1633C

Issued to:                W.R. GRACE & CO.

       It is hereby understood and agreed that this Policy is extended
to include "Data Processors Errors and Omissions" and "Insurance
Brokers Errors and Omissions".

       It is however specifically understood and agreed that the above
extension in coverage is only applicable insofar as such coverage is
available to the Assured in the schedule of Underlying Insurances
attached hereto and that as respects such coverages this Policy is
subject to the same warranties, terms and conditions (except as regards
the premium, the obligation to investigate and defend, the amount and
limits of liability and the renewal agreement, if any), as are contained
in said Underlying Insurances.

All other terms and conditions of the Policy remaining unchanged.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000077

COPY    ADDENDUM NO 13

Attaching to and forming part of Policy No 79DD1633C

Issued to:    W.R.GRACE & CO.

It is understood and agreed that, with effect from 1st October 1980 this Policy shall apply in respect of the Joint Venture known as Four Corners Mine and International Minerals & Chemical Corporation is included hereon in respect of their interest in this Joint Venture. Also included as an Additional Assured is Morgan Guaranty Trust Company of New York, but only in respect of their interest as mortgagee in the Four Corners Mine Joint Venture and pursuant to the terms and conditions of the credit agreement dated January 27, 1981.

It is further understood and agreed that coverage provided hereon shall apply separately in excess of the following underlying insurances in respect of the Four Corners Mine Joint Venture.

| Coverage | Limit | Carrier |
|---|---|---|
| A. General Liability | $1,000,000 (applies separately to each contractor but is subject to a combined $5,000,000 limit for any one occurrence. | Hartford Insurance Company. |
| B. Employers Liability | $ 500,000 | Hartford Insurance Company. |
| C. Umbrella Liability (To apply excess of A and B above) | $29,000,000 | Hartford Insurance Company. |

It is further understood and agreed that the Joint Venture Clause incorporated in Addendum No 4 will not apply to this Joint Venture.

1.1183    LO38169
027275
DIRECTOR
H. S. WEAVERS (UNDERWRITING) AGENCIES LTD

All other terms and conditions of the Policy remaining unchanged.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000078

DENDUM NO 14

Attaching to and forming part of Policy No 79DD1G33C

Issued to;          W.R.GRACE & CO.

It is hereby understood and agreed that with effect from 10th March,1982
this Policy shall not apply to Chemed Corporation and/or any subsidiary,
organisation or company, including subsidiaries of a subsidiary company,
owned controlled or coming under the active management of Chemed Corporation.

23,1,83

DIRECTOR
H. B. WEAVERS (UNDERWRITING) AGENCIES LTD

All other terms and conditions of the Policy remaining unchanged
PSGB/sc

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000079

COPY

ADDENDUM NO 15

Attaching to and forming part of Policy No 79DD1633C

Issued to:    W.R.GRACE AND CO.

It is understood and agreed that with effect from 30th April,1982 the
Assured leased an aircraft (Gulf Stream II No.227-GL) to Mobil, who
give the understanding that they will provide insurance.  If there
should be a breach of contract, W.R.Grace's primary Aviation Policy
will respond for any contingent liability that may exist.

All other terms and conditions of the Policy remaining unchanged.
PSGB/sc

30384                          L03816902727S
                                    DIRECTOR
H. S. WEAVERS (UNDERWRITING) AGENCIES LT:

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000080

## UMBRELLA POLICY (LONDON 1971)

Named Assured:   As stated in Item 1 of the Declarations forming a part hereof and/or subsidiary, associated, affiliated companies as now and and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwriters (hereinafter called the "Named Assured").

### INSURING AGREEMENTS:

1.   COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:-

    (a)   imposed upon the Assured by law,

or  (b)   assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:-

    (i)   Personal Injuries

    (ii)   Property Damage

    (iii)   Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world.

11.   LIMIT OF LIABILITY –

Underwriters hereon shall be only liable for the ultimate net loss the excess of either:-

    (a)   the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances,

or  (b)   $ 100,000   ultimate net loss in respect of each occurrence not covered by said underlying insurances,

                  (hereinafter called the "underlying limits"):

and then only up to a further sum as stated in Item 2(a) of the Declarations in all in respect of each occurrence – subject to a limit as stated in Item 2(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this Policy subject to all the terms, conditions and definitions hereof shall:-

    (1)   in the event of reduction pay the excess of the reduced underlying limit

    (2)   in the event of exhaustion continue in force as underlying insurance.

The Inclusion or addition hereunder of more than one Assured shall not operate to increase Underwriters' limits of liability beyond those set forth in the Declarations.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER
GEI-000081

THIS POLICY IS SUBJECT TO THE FOLLOWING DEFINITIONS:

1.  ASSURED –

The unqualified word "Assured", wherever used in this Policy, includes:–

(a)  The Named Assured, and, if the Named Assured is designated in Item 1 of the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(b)  any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such, and any organisation or proprietor with respect to real estate management for the Named Assured;

(c)  any person, organisation, trustee or estate to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only to the extent of such obligation and in respect of operations by or on behalf of the Named Assured or of facilities of the Named Assured or of facilities used by the Named Assured;

(d)  any additional Assured (not being the Named Assured under this policy) included in the Underlying Insurances, subject to the provisions in Condition B; but not for broader coverage than is available to such additional Assured under any underlying insurances as set out in attached schedule;

(e)  with respect to any automobile owned by the Named Assured or hired for use in behalf of the Named Assured, or to any aircraft owned by or hired for use in behalf of the Named Assured, any person while using such automobile or aircraft and any person or organisation legally responsible for the use thereof, provided the actual use of the automobile or aircraft is with the permission of the Named Assured.  The insurance extended by this sub-division (e), with respect to any person or organisation other than the Named Assured shall not apply:–

1.  to any person or organisation, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any occurrence arising out of the operation thereof;

2.  to any manufacturer of aircraft, aircraft engines, or aviation accessories, or any aviation sales or service or repair organisation or airport or hangar operator or their respective employees or agents with respect to any occurrence arising out of any of the aforementioned;

3.  with respect to any hired automobile or aircraft, to the owner thereof or any employee of such owner;

4.  with respect to any non-owned automobile to any officer, director, stockholder, partner or employee of the Named Assured if such automobile is owned in full or in part by him or a member of his household.

This sub-division (e) shall not apply if it restricts the insurance granted under sub-division (d) above.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000082                Page 2 of 11

2.    PERSONAL INJURIES -

The term "Personal Injuries", wherever used herein, means bodily injury (including death at any time resulting therefrom), mental injury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, humiliation; also libel, slander or defamation of character or invasion of rights of privacy, except that which arises out of any advertising activities.

3.    PROPERTY DAMAGE -

The term "Property Damage", wherever used herein, shall mean loss of or direct damage to or destruction of tangible property (other than property owned by the Named Assured).

4.    ADVERTISING LIABILITY -

The term "Advertising Liability", wherever used herein , shall mean:-

(1)    Libel, slander or defamation;

(2)    Any infringement of copyright or of title or of slogan;

(3)    Piracy or unfair competition or idea misappropriation under an implied contract;

(4)    Any invasion of right of privacy;

committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Assured's advertising activities.

5.    OCCURRENCE -

The term "Occurrence", wherever used herein, shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

6.    DAMAGES -

The term "Damages" includes damages for death and for care and loss of services resulting from personal injury and damages for loss of use of property resulting from property damage.

7.    ULTIMATE NET LOSS -

The term "Ultimate Net Loss" shall mean the total sum which the Assured, or his Underlying Insurers or both, become obligated to pay by reason of personal injuries, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's or of any underlying insurers permanent employees.

The Underwriters shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000083

8.  **AUTOMOBILE** –

The term "Automobile", wherever used herein, shall mean a land motor vehicle, trailer or semi-trailer.

9.  **AIRCRAFT** –

The term "Aircraft", wherever used herein, shall mean any heavier than air or lighter than air aircraft designed to transport persons or property.

10. **PRODUCTS LIABILITY** –

The term "Products Liability" means :–

(a)  Liability arising out of goods or products manufactured, sold, handled or distributed by the Assured or by others trading under his name (hereinafter called "the Assured's products") if the occurrence occurs after possession of such goods or products has been relinquished to others by the Assured or by others trading under his name and if such occurrence occurs away from premises owned, rented or controlled by the Assured; provided such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

(b)  Liability arising out of operations, if the occurrence occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the Assured; provided operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further the following shall not be deemed to be "operations" within the meaning of this paragraph:–

    (i)  pick-up or delivery, except from or onto a railroad car;
    (ii) the maintenance of vehicles owned or used by or in behalf of the Assured;
    (iii) the existence of tools, uninstalled equipment and abandoned or unused materials.

11. **ANNUAL PERIOD** –

The term "Annual Period" shall mean each consecutive period of one year commencing from the inception date of this Policy.

**THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS:**

This Policy shall not apply:–

(a)  to any obligation for which the Assured and any company as its insurer may be held liable under any Workmen's Compensation, unemployment compensation or disability benefits law provided, however, that this exclusion does not apply to liability of others assumed by the Named Assured under contract or agreement;

L.P.O.354B (8/76)

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000084

(b)   to personal injury, property damage or advertising liability arising out of the conduct of any partnership or joint venture of which the Assured is a partner or member and which is not designated in this policy as a Named Assured;

(c)   to claims made against the Assured:-

(i)   on account of Personal Injuries or Property Damage resulting from the failure of the Assured's products or work completed by or for the Assured to perform the function or serve the purpose intended by the Assured, if such failure is due to a mistake or deficiency in any design, formula, plan, specification, advertising material or printed instructions prepared or developed by the Assured; but this exclusion (i) does not apply to Personal Injuries or Property Damage resulting from the active malfunctioning of such products or work;

(ii)  on account of Property Damage to the Assured's products arising out of such products or any part of such products;

(iii) on account of Property Damage to work performed by or on behalf of the Assured arising out of work or any portion thereof, or out of the materials, parts or equipment furnished in connection therewith;

(iv)  for the withdrawal, inspection, repair, replacement, or loss of use of the Assured's products or work completed by or for the Assured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(d)   with respect to advertising activities, to claims made against the Assured for:-

(i)   failure of performance of contract, but this shall not relate to claims for unauthorised appropriation of ideas based upon alleged breach of an implied contract;

(ii)  Infringement of registered trade marks, service mark or trade name by use thereof as the registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans;

(iii) Incorrect description of any article or commodity;

(iv)  mistake in advertised price;

(e)   except in respect of occurrences taking place in the United States of America, its territories or possessions, or Canada, to any liability of the Assured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

(f)   to any liability arising out of the violation of any statute, law, ordinance or regulation prohibiting discrimination or humiliation because of race, creed, colour or national origin,

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000085

Except insofar as coverage is available to the Assured in the underlying insurances as set out in the attached Schedule, this policy shall not apply:—

(g)  to the liability of any Assured hereunder for assault and battery committed by or at the direction of such Assured except liability for Personal Injuries resulting from any act alleged to be assault and battery committed for the purpose of preventing or eliminating danger in the operation of aircraft, or for the purpose of preventing Personal Injuries or Property Damage; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(h)  with respect to any aircraft owned by the Assured except liability of the Named Assured for aircraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(i)  with respect to any watercraft owned by the Assured, while away from premises owned, rented or controlled by the Assured, except liability of the Named Assured for watercraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(j)  to any employee with respect to injury to or the death of another employee of the same Employer injured in the course of such employment.

THIS POLICY IS SUBJECT TO THE FOLLOWING CONDITIONS:

A.  PREMIUM –

Unless otherwise provided for the premium for this Policy is a flat premium and is not subject to adjustment except as provided in Conditions B and P.

B.  ADDITIONAL ASSUREDS –

In the event of additional assureds being added to the coverage under the underlying insurance during currency hereof prompt notice shall be given to Underwriters hereon who shall be entitled to charge an appropriate additional premium hereon.

C.  PRIOR INSURANCE AND NON CUMULATION OF LIABILITY –

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in item 2 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

D.  SPECIAL CONDITIONS APPLICABLE TO OCCUPATIONAL DISEASE –

As regards personal injury (fatal or non-fatal) by occupational disease sustained by any employee of the Assured, this policy is subject to the same warranties, terms and conditions (except as regards the premium, the amounts and limits of liability and the renewal agreement, if any) as are contained in or as may be added to the underlying insurance prior to the happening of an occurrence for which claim is made hereunder.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

E.    INSPECTION AND 'DIT –

Underwriters shall be permitted but not obligated to inspect the Assured's property and operations at any time. Neither the Underwriters' right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Assured or others, to determine or warrant that such property or operations are safe.

Underwriters may examine and audit the Assured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

F.    CROSS LIABILITY –

In the event of claims being made by reason of personal injury suffered by any employee of one Assured hereunder for which another Assured hereunder is or may be liable, then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

In the event of claims being made by reason of damage to property belonging to any Assured hereunder for which another Assured is, or may be, liable then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

Nothing contained herein shall operate to increase Underwriters' limit of liability as set forth in Insuring Agreement 11.

G.    NOTICE OF OCCURRENCE –

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this policy, notice shall be sent as stated in Item 4 of the Declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

H.    ASSISTANCE AND CO-OPERATION –

The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers or both in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

I.    APPEALS –

In the event the Assured or the Assured's underlying insurers elect not to appeal a judgment in excess of the underlying limits, Underwriters may elect to make such appeal at their own cost and expense, and shall be liable for the taxable costs and disbursements and interest on judgments incidental thereto, but in no event shall the liability of Underwriters for ultimate net loss exceed the amount set forth in Insuring Agreement 11 for any one occurrence and in addition the cost and expense of such appeal.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000087

**J.    LOSS PAYABLE –**

Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurers, shall have paid the amount of the underlying limits on account of such occurrence. The Assured shall make a definite claim for any loss for which the Underwriters may be liable under this policy within twelve (12) months after the Assured shall have paid an amount of ultimate net loss in excess of the amount borne by the Assured or after the Assured's liability shall have been fixed and rendered certain either by final judgment against the Assured after actual trial or by written agreement of the Assured, the claimant, and Underwriters. If any subsequent payments shall be made by the Assured on account of the same occurrence, additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

**K.    BANKRUPTCY AND INSOLVENCY –**

In the event of the bankruptcy or insolvency of the Assured or any entity comprising the Assured, the Underwriters shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

**L.    OTHER INSURANCE –**

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is specifically stated to be excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

**M.    SUBROGATION –**

Inasmuch as this policy is "Excess Coverage", the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

**N.    CHANGES –**

Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop Underwriters from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by Underwriters.

**O.    ASSIGNMENT –**

Assignment of interest under this policy shall not bind Underwriters unless and until their consent is endorsed hereon.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

P.  CANCELLATION -

This policy may be cancelled by the Named Assured or by the Underwriters or their representatives by sending by registered mail notice to the other party stating when, not less than sixty (60) days thereafter, cancellation shall be effective.   The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at the address shown in this policy shall be sufficient proof of notice, and the insurance under this policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Underwriters or their representatives shall be equivalent to mailing.

If this policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this policy has been in force. If this policy shall be cancelled by the Underwriters the Underwriters shall retain the pro rata proportion of the premium for the period this policy has been in force.    Notice of cancellation by the Underwriters shall be effective even though Underwriters make no payment or tender of return premium with such notice.

Q.  CURRENCY -

The premiums and losses under this policy are payable in the currency stated in Item 5 of the Declarations.   Payment of Premium shall be made as stated in Item 6 of the Declarations.

R.  CONFLICTING STATUTES -

In the event that any provision of this policy is unenforceable by the Assured under the laws of any State or other jurisdiction wherein it is claimed that the Assured is liable for any injury covered hereby, because of non-compliance with any statute thereof, then this policy shall be enforceable by the Assured with the same effect as if it complied with such Statute.

S.  SERVICE OF SUIT CLAUSE -

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made as stated in Item 7 of the Declarations, and that in any suit instituted against any one of them upon this policy, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.   The person or firm named in Item 7 are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this policy of insurance, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

P. O. 354B (8/76)                                    GEI-000089                    Page 9 of 11

T.    MAINTENANCE OF AND RESTRICTIONS IN UNDERLYING INSURANCES –

It is a condition of this policy that the policy or policies referred to in the attached
"Schedule of Underlying Insurances" shall be maintained in full effect during the policy
period without reduction of coverage or limits except for any reduction in the aggregate
limit or limits contained therein solely by payment of claims in respect of accidents and/or
occurrences occurring during the period of this policy.   Failure of the Named Assured to
comply with the foregoing shall not invalidate this policy but in the event of such failure,
the Underwriters shall only be liable to the same extent as they would have been had the
Named Assured complied with the said condition.

L.P.O.354B (8/76)

ATTACHING TO AND FORMING PART OF POLICY No. 79DD1633C

## DECLARATIONS:

ITEM 1.　(a)　Named Assured:—　W.R. GRACE & CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

(b)　Address of Named Assured:—

1114 Avenue of the Americas,
New York, N.Y. 10038

ITEM 2.　Limit of Liability — as Insuring Agreement 11 :—

(a)　Limit in all in respect of each occurrence　　　U.S.$ 5,000,000

(b)　Limit in the aggregate for each annual period where applicable　　　U.S.$ 5,000,000

ITEM 3.　Policy Period:—　30th June, 1979 to 30th June, 1982 (both days at 12.01 a.m. Local Standard Time)

ITEM 4.　Notice of Occurrence (Condition G) to:—
Marsh & McLennan, Incorporated,
1221 Avenue of the Americas, New York, N.Y. 10020.

ITEM 5.　Currency (Condition Q):—
United States Dollars

ITEM 6.　Payment of Premium (Condition Q) to:—
Marsh & McLennan, Incorporated,
1221 Avenue of the Americas, New York, N.Y. 10020.

ITEM 7.　Service of Process (Condition S) upon:—
Messrs. Mendes and Mount,
3, Park Avenue, New York,
N.Y. 10016, U.S.A.

L.P.O.354B (8/76)　　　　　　　　　　　　　　　　　　　　　Page 11 of 11

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000091

Attaching to and forming part of Policy No.78001633C

Issued to     W.R.GRACE & CO.

## SCHEDULE OF UNDERLYING INSURANCES:

### COVERAGE

**I.DOMESTIC GENERAL LIABILITY AND AUTOMOBILE LIABILITY.**

| | LIMIT | CARRIER |
|---|---|---|
| • A) General Liability Products Liability | | |
| Bodily Injury | $1,000,000 Each Occurrence<br>$2,000,000 Aggregate Products Liability only | C.N.A.of Illinois. |
| Property Damage | $1,000,000 Each Occurrence<br>$2,000,000 Aggregate Products Liability only | C.N.A.of Illinois. |
| B.) Employee Benefits | $ 500,000 Each Claim<br>$ 750,000 Annual Aggregate | C.N.A.of Illinois. |
| C.) Care Custody and Control | $1,000,000 Each Occurrence. | C.N.A.of Illinois. |
| D.) Advertisers Liability | $ 500,000 Each Occurrence. | C.N.A.of Illinois. |
| E.) Automobile Liability | | |
| Bodily Injury | $1,000,000 Each Occurrence. | C.N.A.of Illinois. |
| Property Damage | $1,000,000 Each Occurrence | C.N.A.of Illinois. |

• W.R.Grace & Co.assumes the first $500,000.of each loss within the framework of a retrospective rating plan. The premiums indicated are for insurance excess of $500,000. up to policy limits. The combination of the $500,000. Loss Assumption and pure insurance is equal to the limits shown above.

**II  EMPLOYERS LIABILITY:**

| | | |
|---|---|---|
| A) Employers' Liability Including Employers Liability as respects Occupational Disease | $ 500,000 each Employee<br>$ 500,000 each Accident | C.N.A.of Illinois. |
| B) Amendment of Coverage B Maritime (Jones Act) | Bodily Injury by Accident<br>$ 500,000 Each Employee<br>$ 500,000 Each Accident<br>Bodily Injury by Disease<br>$ 500,000 Each Employee<br>$ 300,000 Each Employee<br>$ 800,000 Aggregate Disease<br>(Per State) | C.N.A.of Illinois. |

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000092

-2-

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| C) United States Federal Longshoremans and Harbor Workers Act, | $ 250,000 Each Employee<br>$ 500,000 Each Accident | C.N.A. of Illinois |
| III.<br>1. AIRCRAFT LIABILITY (Excluding Non-Ownership) | $15,000,000 Combined Single Limit Including Voluntary Settlements of $250,000 Per Person - Including Crew (Part of and not in Addition to the $15,000,000 Limit) | United States Aviation Insurance Group. |
| A) Care, Custody or Control | $ 1,000,000 each and every occurrence (With Respect to Hangars, Buildings or Other Property or Contents thereof required by lease or other Agreement or if insurance is purchased) | United States Aviation Insurance Group. |
| B) Non-Ownership Hull Liability | $ 5,000,000 Per Occurrence and Aggregate | United States Aviation Insurance Group. |
| C) Aircraft Non-Ownership Liability | $10,000,000 Combined-Single Limit. | United States Aviation Insurance Group. |
| 2) GROUND HANGARKEEPERS LIABILITY, | $ 2,000,000 Each Aircraft<br>$ 2,000,000 Each Occurrence | United States Aviation Insurance Group. |
| V. A) CHARTERERS LIABILITY/WHARFINGERS LIABILITY for W.R.Grace & Co. | *$ 2,000,000 Damage to Vessel and Cargo<br>$ 2,000,000 Demurrage and removal of Wreck<br>$ 2,000,000 Collision (Third Party Including Demurrage.Property Damage.<br>$ 2,000,000 Each Person<br>$ 2,000,000 Each Accident<br>Third Party Bodily Injury Liability Including liability to Crew of Chartered Vessel<br>$ 5,000 Deductible Each Accident. | Arkwright-Boston Manufacturers Insurance Co. |

* Limits will increase to $5,000,000 when and if a sulphur shipment takes place. The increased limit will remain in effect for the duration of policy term. To date no sulphur shipments have taken place and none anticipated for current policy period.

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000093

-3-

| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| B) CHARTERER'S LIABILITY for Aruba Chemical Industries, N.V. | $2,000,000 Damage to Vessel and Cargo<br>$2,000,000 Demurrage or Removal of Wreck, including demurrage Property Damage<br>$2,000,000 Collision (Third Party)<br>$2,000,000 Each Person<br>$2,000,000 Each Accident Third Party Bodily Injury Liability including Liability to Crew Chartered vessel,<br>$5,000 Deductible Each Accident. | Arkwright-Boston Manufacturers Insurance Co. |
| P.M. & G.ASSOCIATES,INC.<br>A) Insurance Brokers Errors and Omission Coverage | $2,000,000 Each Claim/Aggregate<br>$ 5,000 Deductible Per Claim | Employers Reinsurance Corporation |
| B) Excess Insurance Brokers Errors and Omission Coverage | $1,000,000 Each Claim/aggregate Excess of $2,000,000<br>$2,000,000 Excess of $3,000,000 | Adriatica Insurance Company, North River Ins.Co. |
| VI FOREIGN INSURANCE<br>A) W.R.Grace & Co.<br><br>Worldwide Comprehensive General and Automobile Liability Program | $1,000,000 Per Occurrence combined single Limit Bodily Injury and Property Damage for General Liability and Automobile Liability combined<br>$2,000,000 Aggregate Products Liability<br>$2,000,000 Aggregate Property Damage Per Location<br>$ 250,000 Self-Insured for Property in Insured's Care, Custody and Control | Granite State |
| B) Grace Petroleum Libya Inc.<br>1) General Liability including Products Liability | Bodily Injury $300,000 each Occurrence $300,000 Annual Aggregate<br>Property Damage $250,000 Each Occurrence $300,000 Annual Aggregate | Granite State Insurance Co. |

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000094

-4-



| COVERAGE | LIMIT | CARRIER |
|---|---|---|
| B) 2  Automobile Liability | Bodily Injury $250,000 each Person<br>$300,000 each Occurrence<br>Property Damage $250,000 each Occurrence | Granite State Insurance Co. |
| 3  Employer's Liability | $250,000 each Person<br>$250,000 each Accident | Granite State Insurance Co. |

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000095



U.S.A.

H.S.W. (U)A.

**NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)**
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

U.S.A.

H.S.W. (U)A.

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT**
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

— Liability—

U.S.A.

H.S.W. (U)A.

**4% TAX CLAUSE**
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

Notice is hereby given that the Underwriters have agreed to allow for the purpose of paying the Federal Excise Tax 4% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Underwriters will deduct 4% from the amount of the return and the Assured or his agent should take steps to recover the Tax from the U.S. Government.

14/3/64
N.M.A. 1546

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.*

17/3/60
N.M.A. 1254

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000096



U.S.A.

H.S.W. (U)A.

**NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)**
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

U.S.A.

H.S.W. (U)A.

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE—LIABILITY—DIRECT**
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/3/64
N.M.A. 1477

Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom; or

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.
*NOTE:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.*

17/3/60
N.M.A. 1256

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000097

U.S.A.

H.S.W. (U)A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroads) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

This policy*                                                                   does not apply:—

I.   Under any Liability Coverage, to injury, sickness, disease, death or destruction
    (a)  with respect to which an insured under the policy is also an insured under a nuclear energy
         liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic
         Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an
         insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any
         person or organization is required to maintain financial protection pursuant to the Atomic
         Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not
         been issued would be, entitled to indemnity from the United States of America, or any agency
         thereof, under any agreement entered into by the United States of America, or any agency
         thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to
    immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease
    or death resulting from the hazardous properties of nuclear material and arising out of the operation of a
    nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the
    hazardous properties of nuclear material, if
    (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an
         insured or (2) has been discharged or dispersed therefrom;
    (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used,
         processed, stored, transported or disposed of by or on behalf of an insured; or
    (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of
         services, materials, parts or equipment in connection with the planning, construction,
         maintenance, operation or use of any nuclear facility, but if such facility is located within the
         United States of America, its territories or possessions or Canada, this exclusion (c) applies only
         to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement:
    "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means
    source material, special nuclear material or byproduct material; "source material", "special nuclear
    material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in
    any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid,
    which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1)
    containing byproduct material and (2) resulting from the operation by any person or organization of any
    nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
    "nuclear facility" means
    (a)  any nuclear reactor,
    (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or
         plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging
         waste,
    (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear
         material if at any time the total amount of such material in the custody of the insured at the
         premises where such equipment or device is located consists of or contains more than 25 grams
         of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium
         235,
    (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal
         of waste,
    and includes the site on which any of the foregoing is located, all operations conducted on such site and all
    premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain
    nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
    With respect to injury to or destruction of property, the word "injury" or "destruction" includes all
    forms of radioactive contamination of property.

    It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject
    to the terms, exclusions, conditions and limitations of the Policy to which it is attached.
    *NOTE:—As respects policies which afford liability coverages and other forms of coverage in addition, the words
    underlined should be amended to designate the liability coverage to which this clause is to apply.*

17/3/60
N.M.A. 1256

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

No....7ADD1633C.....

LONDON,

A/C W.R. GRACE AND COMPANY

# Insurance Policy
# [Companies]

Date of expiry...30th June, 1982

CONFIDENTIAL
SUBJECT TO APRIL 2009
PROTECTIVE ORDER

GEI-000099