# EXHIBIT 9
(May 10, 1993 Agreement)

## SETTLEMENT AGREEMENT

This Agreement ("Agreement") is made and entered into by and between, on the one hand, W. R. GRACE & CO.-CONN. and W. R. GRACE & CO. and, on the other hand, COMMERCIAL UNION INSURANCE COMPANY as successor in interest to EMPLOYERS' COMMERCIAL UNION INSURANCE COMPANY OF AMERICA and EMPLOYERS' COMMERCIAL UNION INSURANCE COMPANY, and AMERICAN EMPLOYERS' INSURANCE COMPANY.

### RECITALS

WHEREAS, the Party Insurers issued or are alleged to have issued certain liability insurance policies to Grace, which Policies are more particularly described below; and

WHEREAS, Grace has been, is and expects to be in the future, a defendant in numerous Asbestos-Related Claims and lawsuits asserted by or on behalf of persons alleging (1) personal injury, bodily injury, sickness, disease and/or death as a result of exposure to asbestos, and (2) damages for injury or damage to buildings and property allegedly caused by asbestos or asbestos-containing materials; and

WHEREAS, certain disputes and differences have arisen between Grace and the Party Insurers as to their respective rights and obligations as to the administration, defense, payment and disposition of the Asbestos-Related Claims, and Grace and the Party Insurers wish to settle those disputes and differences in accordance with the terms of this Agreement; and

WHEREAS, one or more of the Party Insurers are parties to various actions involving claims by Grace or others against one or

1

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

more of the Party Insurers relating to Asbestos-Related Claims; and

WHEREAS, Grace and the Party Insurers have entered into this Agreement solely to resolve their disputes concerning coverage for Products Claims and Asbestos-Related Claims, to afford the Party Insurers final and complete repose with respect to their alleged obligations under or by virtue of the Policies for Products Claims and Asbestos-Related Claims, and to avoid, among other things, the uncertainty and expense attendant to such disputes and the related litigation; and

WHEREAS, by virtue of this Agreement, neither Grace nor the Party Insurers admit or concede in any way the validity of the positions or arguments advanced by the other or by any third party;

NOW, THEREFORE, in consideration of the mutual covenants and subject to the terms and conditions herein contained, Grace and the Party Insurers hereby agree as follows:

## I.   DEFINITIONS

1.0   <u>Agreement</u> shall mean this settlement agreement entered into by Grace and the Party Insurers.

1.1   <u>Grace</u> means W. R. Grace & Co.-Conn. and/or W. R. Grace & Co., their respective predecessors-in-interest and successors-in-interest.

1.2   <u>Indemnitor</u> means W. R. Grace & Co. and W. R. Grace & Co.-Conn. and their respective successors-in-interest.

1.3   <u>Party Insurers</u> means Commercial Union Insurance Company as successor in interest to Employers' Commercial Union Insurance

2

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

Company of America and Employers' Commercial Union Insurance
Company, and American Employers' Insurance Company and their
respective predecessors-in-interest, and successors-in-interest,
divisions, subdivisions, departments, subsidiaries, parents,
agents, employees, officers, affiliates, assigns and companies or
corporations owned, controlled or under common control or ownership
with the Party Insurers.

1.4  Party and/or Parties shall mean Grace and the Party
Insurers.

1.5  Policy or Policies means the insurance policies, issued
or alleged by Grace to have been issued, to or for the benefit of
Grace by the Party Insurers, which policies are listed in Exhibit
"A". The Party Insurers represent and warrant that they are
unaware of any other contracts of insurance they issued or are
alleged to have issued to Grace except those listed in Exhibit "A".
Grace represents and warrants that it is unaware of having
purchased any comprehensive general liability insurance from the
Party Insurers except those policies listed in Exhibit "A". To the
extent the World Auxiliary Insurance Corporation could be
considered contained within the definition of "Party Insurers",
which the Party Insurers specifically deny, Grace's representation
and warranty specifically excludes any and all contracts of
insurance issued by the World Auxiliary Insurance Corporation.

1.6  Aggregate Product Limits means the total aggregate limits
of liability contained within the Policies of the Party Insurers
for all personal injury claims, bodily injury claims, property
damage claims and advertising liability claims included within the
"products - completed operations hazards" definitions. For

3

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

purposes of this Agreement, any claim for occupational disease shall be included within the definition of Aggregate Product Limits.

1.7 <u>Bodily Injury Claim Plaintiff</u> means any entity, person, assignee, executor or administrator who has, at any time, threatened, asserted or filed any claim, right, demand, lawsuit, cause of action or proceeding arising out of personal injury, bodily injury, employer's liability or advertising liability involving any entity, person, assignee, executor or administrator who does so in the future.

1.8 <u>Building Damage Claim Plaintiff</u> means any entity, person, assignee, executor or administrator who has, at any time, threatened, asserted or filed any claim, right, demand, lawsuit, cause of action or proceeding arising out of alleged property damage or advertising liability involving or relating to asbestos in buildings or any entity, person, assignee, executor or administrator who does so in the future. By agreeing to this term, the Party Insurers seek to resolve their dispute with Grace and do not acknowledge that any Asbestos-Related Claims arising from buildings, other structures or property involve property damage.

1.9 <u>Asbestos-Related Claim</u> means a claim brought by a Bodily Injury Claim Plaintiff or a Building Damage Claim Plaintiff for advertising liability, personal injury, bodily injury, employer's liability, sickness or disease and/or death at any time as a result of exposure or alleged exposure to asbestos or asbestos-containing products and/or a claim arising from asbestos- containing products in buildings, other structures, or property and/or a claim arising

4

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000004

from injury or damage to buildings, other structures or property caused or allegedly caused by asbestos or asbestos-containing products. "Asbestos-Related Claim" shall also include any claim for unfair competition and/or invasion of right or privacy either committed or alleged to have been committed in any publication or video or audio transmission and arising out of Grace's advertising activities concerning the mining, distribution and/or sale of asbestos and asbestos-containing products. "Asbestos-Related Claim" shall also include any claim for conspiracy, concert of action, intentional tort, fraud, misrepresentation, gross negligence and/or punitive damages, fines or penalties arising from the mining, distribution, and/or sale of asbestos and asbestos-containing products.

1.10 <u>Products Claims</u> means all claims which allege personal injury, bodily injury, property damage or advertising liability that fall within the Aggregate Product Limits in each of the Policies. "Products Claims" shall also include any claim for extra-contractual damages, whether statutory or common law, asserted by Grace and/or its assignees and/or judgment creditor/garnishors that alleges misconduct, bad faith, unfair claims practices, violations of an insurance code or other statutory scheme, or any other alleged wrongdoing of the Party Insurers in connection with or relating in any respect to the performance by the Party Insurers of their alleged obligations under or by virtue of any of the Policies concerning any claim which alleges personal injury, bodily injury, property damage or

5

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

advertising liability that falls within the Aggregate Product Limits.

1.11 Effective Date means the date both Grace and the Party Insurers exchange executed Agreements.

1.12 Coverage Actions shall mean those actions involving claims between Grace and the Party Insurers relating to insurance coverage for Products Claims and/or Asbestos-Related Claims. These actions include, but are not limited to:

(1) Maryland Casualty Company v. W. R. Grace & Co., et al., No. 88 Civ. 2613 (SWK), filed in the United States District Court for the Southern District of New York;

(2) Moore, ex rel. State of Mississippi v. The Flintkote Co., et al. v. Maryland Casualty Co., et al., No. 89-5138(2), filed in the Circuit Court of Jackson County Mississippi;

(3) Independent School District 197, et al. and W. R. Grace & Co.-Conn. v. Accident & Casualty Insurance of Winterthur, et al., No. 19-C4-88-007950, filed in the District Court of the County of Dakota, Minnesota;

(4) W.R. Grace & Co.-Conn. v. Admiral Insurance Co., et al., No. 91-048251, filed in the District Court of Harris County, Texas;

(5) Dayton Independent School District, et al. v. United States Mineral Products Co. and W. R. Grace & Co.-Conn. v. Admiral Insurance Co., et al., No. B-87-00507, filed in the United States District Court for the Eastern District of Texas, Beaumont;

(6) W. R. Grace & Co.-Conn. v. Admiral Insurance Company, et al., No. BC 050432, filed in the Superior Court of the County of Los Angeles, California; and

(7) American Employers Insurance Company, et al. v. W. R. Grace & Co.-Conn., et al., No. 6241-92, filed in the Supreme Court of the State of New York, County of New York.

1.13 Confidential Documents and Information means those documents, transcripts, writings, photographs and that information

6

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000006

so designated pursuant to any case management order or protective
order entered, stipulated or agreed to in any of the Coverage
Actions.  Documents may be designated as "Confidential Documents
and Information" by the Parties after execution of this Agreement
by identifying such document, transcript, writing, photograph or
information in writing to a Party and by designating that such
document, transcript, writing, photograph and/or information is a
"Confidential Document and Information".

## II.  SCOPE OF AGREEMENT

2.0  It is the intention of the Parties to resolve, terminate
and cancel any and all obligations, alleged or actual, past,
present, future, known or unknown, that the Party Insurers had or
may have had under the Policies with respect to Products Claims and
Asbestos-Related Claims.

2.1  This Agreement is the product of informed negotiations
between the Parties assisted by counsel and involves compromises of
previously stated legal positions.  This Agreement does not
necessarily reflect the view of any of the Parties as to rights and
obligations with regard to matters outside of this Agreement.  For
all other purposes and in all other matters, each Party reserves
all previously held positions and all other rights and privileges.

2.2  This Agreement is intended to confer rights, benefits and
obligations only upon Grace and the Party Insurers, and is not
intended to confer any right, benefit or obligation upon any other
person.  No person other than Grace or the Party Insurers shall

7

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

have any legally enforceable right under this Agreement.

2.3   The Party Insurers and Grace request all courts to take notice of the underlying scope and purpose of this Agreement and to accord the Parties and their representatives full privilege and protection with respect to the disclosure of their actions, statements, documents, papers and other materials relating to this Agreement, including its development and implementation.

2.4   This Agreement is the entire agreement between Grace and the Party Insurers relating to coverage for Products Claims and Asbestos-Related Claims under the Policies.   All antecedent or contemporaneous extrinsic representations, warranties or collateral provisions concerning the negotiation and preparation of this Agreement are intended to be discharged and nullified.

2.5   This Agreement is not a contract of insurance and the Parties agree that it shall not be interpreted according to the rules of construction applicable to insurance contracts.   In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principles of <u>contra proferentum</u> or other principles which would result in the interpretation of any ambiguities against a Party.  No Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of the Party's identity as an insurance company or as the drafter of any part of this Agreement.

2.6   Grace hereby represents and warrants to the Party

8

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

Insurers as follows:

(a) Grace is a corporation, duly organized, validly existing and in good standing under the laws of its jurisdictions of incorporation with full corporate power and authority to enter into this Agreement and perform its obligations hereunder.

(b) The execution and delivery of this Agreement by Grace and the performance by Grace of its obligations hereunder have been duly authorized by the Board of Directors of Grace and by all other necessary corporate action of Grace.

(c) This Agreement has been duly executed and validly delivered by Grace and constitutes a valid and binding obligation of Grace enforceable against Grace in accordance with its terms.

(d) The execution and delivery of this Agreement by Grace and the performance by Grace of its obligations hereunder will not violate any provision of its charter or by-laws or any consent or order of any governmental authority by which it may be bound.

(e) Grace has read this entire Agreement and knows the contents hereof and that the terms hereof are contractual and not in any way a recital; Grace has executed this Agreement as its own free act.

(f) In making this Agreement, Grace has obtained the advice of legal counsel.

2.7 The Party Insurers, jointly and severally, hereby represent and warrant to Grace as follows:

(a) Each of the Party Insurers is a corporation, duly

9

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

organized, validly existing and in good standing under the laws of its jurisdiction of incorporation with full corporate power and authority to enter into this Agreement and perform its obligations hereunder.

(b) The execution and delivery of this Agreement by the Party Insurers and the performance by the Party Insurers of their obligations hereunder have been duly authorized by all persons with necessary authority to act on behalf of the Party Insurers.

(c) This Agreement has been duly executed and validly delivered by each of the Party Insurers and constitutes a valid and binding obligation of each of the Party Insurers enforceable against the Party Insurers in accordance with its terms.

(d) The execution and delivery of this Agreement by each of the Party Insurers and the performance by the Party Insurers of their respective obligations hereunder will not violate any provisions of the charter or by-laws of any of the Party Insurers or any consent or order of any governmental authority by which any of the Party Insurers may be bound.

(e) Each of the Party Insurers has read this entire Agreement and knows the contents hereof and that the terms hereof are contractual and not in any way a recital; each of the Party Insurers has executed this Agreement as its own free act.

(f) In making this Agreement, each of the Party Insurers has obtained the advice of legal counsel.

2.8 Each Party agrees as to its own breach of any warranty expressly stated in this Agreement to indemnify and hold harmless

10

CONFIDENTIAL SUBJECT TO MARCH 2000 PROTECTIVE ORDER

the other Parties.

### III.   CANCELLATION OF COVERAGE; SETTLEMENT PAYMENTS

3.0   Upon the Effective Date of this Agreement, Grace hereby agrees to the cancellation of all insurance coverage for Products Claims and Asbestos-Related Claims under the Policies in exchange for payments by the Party Insurers to Grace in the aggregate amount of Eighty-One Million, Two Hundred Thousand Dollars ($81,200,000) as provided in Section 3.1.

3.1   (a)   Within three (3) business days after the Effective Date, the Party Insurers shall make a settlement payment to Grace in the amount of Twenty-Five Million Dollars ($25,000,000).

(b)   Within  three  (3)  business  days  after  the anniversary of the Effective Date in each year through 1999, commencing in 1994 and ending in 1999, the Party Insurers shall make a settlement payment to Grace, as follows:

| | | |
|---|---|---|
| (i) | 1994 - | Ten Million Dollars ($10,000,000) |
| (ii) | 1995 - | Ten Million Dollars ($10,000,000) |
| (iii) | 1996 - | Nine Million Fifty  Thousand Dollars ($ 9,050,000) |
| (iv) | 1997 - | Nine Million Fifty Thousand Dollars ($ 9,050,000) |
| (v) | 1998 - | Nine Million Fifty Thousand Dollars ($ 9,050,000) |
| (vi) | 1999 - | Nine Million Fifty Thousand Dollars ($ 9,050,000) |

11

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000011

(c)    In the event that the anniversary of the Effective Date falls on a holiday or weekend day, the anniversary date and all obligations of payment attendant thereto shall be deemed to fall on the next business day.  If the Party Insurers fail to make all or any portion of any payment to Grace provided for in this Section on or before the due date thereof, the Party Insurers shall pay interest to Grace on the unpaid amount of that particular payment for the period commencing on the date such amount was due and ending on the actual date of payment at a rate of interest equal to five percentage points over the rate of interest of the then prevailing prime rate as announced by the main office of Citibank N.A. in New York, New York.

3.2    All settlement payments to Grace under Section 3.1 shall be made by wire transfer to Grace's account at ~~Morgan Guaranty~~ *Chemical Bank* ~~Trust Company~~ (ABA Number ~~021000238~~ 021000128, Account Number ~~090-04-901~~ 01600 1257, further identified as W. R. Grace & Co. account) or to such other account as may be specified by Grace in a written notice to the Party Insurers in accordance with Section 9.2.

3.3    The Party Insurers shall not have the right to seek contribution or indemnity from other insurers of Grace for settlement payments made to Grace under Section 3.1.  The Parties recognize that various excess insurers other than the Party Insurers have available remaining aggregate limits for contracts of insurance which may underlie the Policies.  Nothing in this section is intended to preclude or limit in any way the Party Insurers' rights to pursue recovery from their reinsurers, if any, for some

· 12

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

or all settlement payments made to Grace under Section 3.1.

3.4 The Parties also acknowledge that Grace's acceptance of the payments provided in Section 3.1 is in full satisfaction of the Party Insurers' obligations with respect to Products Claims and Asbestos-Related Claims under the Policies, notwithstanding the amount of the Aggregate Product Limits for all of the Policies.

3.5 It is the intention of the Parties that such settlement payments by the Party Insurers shall not be construed as constituting a set-off for other insurers under contracts of insurance issued by such other insurers which may underlie the Policies.

3.6 The liability of the Party Insurers for the payments to be made to Grace pursuant to this Section shall be joint and several.

## IV.  DISMISSALS AND RELEASES

4.0 Concurrently with the exchange of executed Agreements by all Parties, Grace shall deliver to the Party Insurers executed dismissals with prejudice of the claims brought by Grace and shall use all reasonable efforts to obtain executed dismissals with prejudice of the claims brought by Grace's assignees and/or judgment creditor/garnishors in the Coverage Actions with respect to any and all allegations or claims against the Party Insurers for declaratory relief, damage or other relief relating to the application of insurance to the investigation, settlement, defense or indemnification of claims set forth in the various applicable pleadings in the Coverage Actions. Said dismissals with prejudice

13

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000013

shall include all claims by Grace and/or its assignees and/or judgment creditor/garnishors for extra-contractual damages including, but not limited to, liens of garnishors, bad faith tort claims, and statutory claims for damages, punitive or actual, for the alleged failure of the Party Insurers to defend, settle or handle any Products Claim and/or Asbestos-Related Claim under the Policies. The Party Insurers will file and serve said dismissals with prejudice. Said dismissals with prejudice shall indicate that the Parties will bear their own attorneys' fees and costs incurred prior to the filing and service of said dismissals with prejudice in connection with the Coverage Actions. Grace shall file all documents necessary to satisfy and cancel any and all judgments of record against the Party Insurers, release all supersedeas bonds and dismiss all appeals related to the Coverage Actions.

4.1 Concurrently with the exchange of executed Agreements by all Parties, the Party Insurers shall deliver to Grace executed dismissals with prejudice of the applicable Coverage Actions with respect to any and all allegations or claims against Grace or the other insurers in said Coverage Actions or for declaratory relief, damage or other relief. Grace will file and serve said dismissals with prejudice. Said dismissals with prejudice shall indicate that the Parties will bear their own attorney's fees and costs incurred prior to the filing and service of said dismissals with prejudice. in connection with the Coverage Actions. The Party Insurers shall also take all necessary steps to dismiss all appeals related to the Coverage Actions.

14

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000014

4.2  Except for the obligations set forth in this Agreement, Grace releases and forever discharges the Party Insurers of and from any and all actions, causes of action in law or in equity, suits, debts, liens, contracts, indemnity and defense obligations, agreements, promises, liabilities, claims, demands, losses, costs or expenses of any kind or nature, known or unknown, fixed or contingent, direct or indirect, which Grace now has or may have against the Party Insurers in any way relating to Products Claims and/or Asbestos-Related Claims under the Policies.

4.3  Except as to the obligations set forth in this Agreement, the Party Insurers hereby release and forever discharge Grace of and from any and all actions, causes of action in law or in equity, suits, debts, liens, contracts, indemnity and defense obligations, agreements, promises, liabilities, claims, demands, losses, costs or expenses of any kind or nature, known or unknown, fixed or contingent, direct or indirect, which the Party Insurers now have or may have against Grace in any way relating to  Products Claims and/or Asbestos-Related Claims under the Policies.

## V.  INDEMNIFICATION

5.0  The Indemnitor shall indemnify and hold the Party Insurers harmless at all times from and after the Effective Date from and against any and all liability, loss, cost or expense whenever arising  (except as otherwise provided in Section 5.1(a)(ii)) imposed upon or incurred by any Party Insurer as a result of any known or unknown, past, pending, future, or

15

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000015

threatened claims, rights, demands, lawsuits, causes of action or proceedings that are asserted, initiated or continued by Grace or any person or entity not a party to this Agreement against such Party Insurer in any way relating to Products Claims and/or Asbestos-Related Claims under the Policies.

5.1   (a)(i)   After receipt by a Party Insurer of notice of any complaint or the commencement or continuation of any action or proceeding with respect to which indemnification is being sought hereunder, such Party Insurer shall notify Grace in accordance with Section 9.2 and as soon as practicable in writing of such complaint or of the commencement or continuation of such action or proceeding and shall thereafter tender the defense thereof to Grace.   Should Grace fail to obtain executed dismissals with prejudice of the claims brought by Grace's assignees and/or judgment-creditor/garnishors in any Coverage Action, Grace is deemed to have notice of the continuation of the Coverage Action and a tender of the defense by the Party Insurers of the Coverage Action.

(ii) Any failure by such Party Insurer to so notify Grace or to so tender the defense of such action or proceeding will relieve  the Indemnitor from any indemnification obligation with respect thereto.

(b)   After Grace receives any notice pursuant to Section 5.1(a)(i),   the Indemnitor shall promptly determine whether it will respond to that notice and assume the

16

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

defense of a Party Insurer named in a complaint or the commencement or continuation of any action.

(c)   (i)   If the Indemnitor so elects, the Indemnitor will assume the defense of such action or proceeding. The Indemnitor and the Party Insurers shall mutually agree upon a choice of counsel to represent the Party Insurers (which may not include counsel presently representing either Grace or the Indemnitor), and the Indemnitor shall assume   the payment of the fees and disbursements of such counsel.   The Indemnitor will consult with and allow the Party Insurers complete control over the positions asserted in the interpretation of the language of the Policies, and will consult with the Party Insurers in the defense of any notice of any complaint or the defense of the commencement or continuation of any. action.

(ii)   The Indemnitor and the Party Insurers will consult to the extent practicable about all decisions to be made, either procedural or substantive, by counsel retained on behalf of the Party Insurers pertaining in any material manner to the Party Insurers.     The Indemnitor will have such time as is practicable to review each matter and to present its views to the Party Insurers.     The Party Insurers will make reasonable efforts to accommodate the litigation suggestions of the Indemnitor before directing counsel to take any action.

17

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000017

In the event the Parties are unable to agree, the final decision with respect to the defense of the Party Insurers, either procedural or substantive, with the exception of settlement or compromise of the action, will rest with the Party Insurers. The Indemnitor will not dispute any decision of the Party Insurers that is lawful and that is reasonably made within the discretion of the Party Insurers.

(iii) The Indemnitor shall keep the involved Party Insurer apprised in a timely manner of all significant developments in such defense,and shall provide the Party Insurer, at the Party Insurer's request, status reports that advise the Party Insurer of such developments.

(iv) Any settlement or compromise made by the Indemnitor on behalf of any Party Insurer shall not require that Party Insurer's approval, but shall provide that it is not an admission of liability by the Party Insurer, is without precedent beyond the scope of the matters addressed by such compromise or settlement. The Indemnitor shall give notice and provide reasonable and timely disclosure as soon as is practicable to the Party Insurers of any proposed settlement or compromise. The Party Insurers shall have such time as is practicable to review the proposed settlement or compromise and to present their views to the Indemnitor. The Indemnitor will make reasonable efforts to accommodate the Party

18

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

Insurers before agreeing to any settlement or compromise. The Party Insurers will not dispute any decision that was lawful and that was reasonably made within the discretion of the Indemnitor. The Indemnitor shall use best efforts to keep such settlement or compromise confidential.

(v)    In any action or proceeding in which  the Indemnitor assumes the defense of a Party Insurer, such Party Insurer will have the right to participate in such litigation and to retain its own counsel at such Party Insurer's own expense.

(d) (i)  If  the Indemnitor fails, or declines, to assume the defense of the action or proceeding in a timely manner, then such Party Insurer may employ and exclusively direct counsel to represent or defend it in any such action or proceeding, and the Indemnitor will pay the reasonable fees and disbursements of such counsel; provided, however, that  the Indemnitor shall not be required to pay the fees and disbursements of more than one law firm  for all Party Insurers in any jurisdiction in any single action or proceeding.

(ii) If the Party Insurers settle any such claims without previously obtaining the Indemnitor's consent, which consent shall not be unreasonably withheld, then the Indemnitor shall be relieved of any obligation to indemnify the Party Insurers for such settlement.  The Party Insurers shall use best efforts to keep such

19

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000019

settlement or compromise confidential.

(e)   Nothing herein shall constitute any waiver of each Party Insurer's attorney-client privilege, which privilege shall extend only to such counsel retained to represent the particular Party Insurer and shall not extend to the Indemnitor or its counsel unless specifically waived by the Party Insurer in writing with reference to a particular attorney-client communication.

5.2   The Party Insurers and the Indemnitor shall cooperate reasonably with each other to protect their respective interests with respect to claims for which the Indemnitor may be liable for indemnification under Article V.

5.3   If the Indemnitor has assumed the defense of any action or proceeding, the Party Insurers shall comply in a timely manner with the Indemnitor's appointed counsel's requests for access to documentation or information requested by the Indemnitor's appointed counsel for purposes of defense.   The Indemnitor shall cooperate with the Party Insurers to avoid taking any positions in such litigation which are adverse to the general business interests of the Party Insurers.

5.4   If the Indemnitor has failed or declined to assume the defense of any action or proceeding, the Indemnitor shall comply in a timely manner with any Party Insurer's requests for access to documentation or information requested by that Party Insurer for purposes of such defense.

20

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000020

## VI.   RESERVATION OF RIGHTS

6.0  Nothing in this Agreement, nor in any aspect of its implementation or negotiation, shall be construed or asserted by any person as admissible or relevant in any case or proceeding as giving rise to or creating any waiver or estoppel of the Party Insurers or Grace with respect to any of their rights under any Policies, or as constituting or evidencing either an interpretation by the Party Insurers or Grace of any portion of any Policies or a course of performance (or non-performance) thereunder.   Except as otherwise provided under this Agreement, all of the Party Insurers' and Grace's rights, duties and privileges under the provisions, exclusions, conditions, endorsements and other terms of the Policies issued to Grace are hereby preserved.

6.1  No Party may assign this Agreement or any of its rights, benefits or obligations hereunder without the prior written consent of the other Parties hereto, which consent shall not be unreasonably withheld. All rights of action for any breach of this Agreement are hereby reserved to Grace and the Party Insurers. All actions taken and statements made by the Parties or their representatives relating to their participation in this Agreement, including its development and implementation, are taken and made in the context of privileged settlement negotiations, shall be without prejudice or value as precedent and shall not be taken as the standard by which other matters may be judged or against which other matters may be compared.  This Agreement is the product of arm's length negotiations.   It is the compromise of disputed

21

CONFIDENTIAL SUBJECT TO MARCH 2005 PROTECTIVE ORDER

OB-000021

claims, and it is not intended to be, nor shall it be construed as, an admission of coverage or a policy interpretation or evidence of any Party's conduct or response to claims of any kind, including by way of example and without limitation, Asbestos-Related Claims. Neither this Agreement nor any statement made by any Party in negotiating, executing or performing this Agreement shall be used in court, or formal or informal dispute resolution proceedings, or otherwise, to create or interpret any obligation by any Party under any insurance policy, including but not limited to the Policies. The Party Insurers do not admit coverage by entering into this Agreement and enter into it for business reasons and in the spirit of compromise.

6.2  Nothing in this Agreement is intended to create any rights in any person or entity as to any Policy or alleged policy or certificate of insurance. Neither this Agreement nor any part hereof may be used as evidence or in any other manner in any litigation, dispute resolution or other proceeding, to create, prove, or interpret the respective rights, duties or obligations of Grace and the Party Insurers or any of them. This restriction shall not apply to any litigation or proceeding brought to enforce or defend the terms of this Agreement. This Agreement shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and similar state law provisions.

6.3  The cancellation of insurance coverage for Products Claims and Asbestos-Related Claims under the Policies shall not

22

CONFIDENTIAL SUBJECT TO MARCH 2008 PROTECTIVE ORDER

affect the alleged rights and alleged obligations of Grace and the Party Insurers, if any, under the Policies with respect to insurance coverage for other claims that do not constitute Products Claims or Asbestos-Related Claims.

6.4   Neither the terms of this Agreement nor its negotiation, execution, or any action in performance of this Agreement shall be invoked by any of the Parties hereto or their attorneys or agents in any proceeding for the purpose of attempting to establish or prove the acceptance by the Party Insurers or Grace of any particular interpretation of any insurance policy with respect to any claim.

## VII.   CONFIDENTIALITY

7.0   This Agreement and all matters relating to its existence, terms, negotiations and implementation are confidential.   This Agreement and the implementation of its terms are to be disclosed pursuant only to an order of court or by written agreement by all the Parties except that:

(a)   the Agreement may be disclosed to the reinsurers of the Party Insurers provided that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound;

(b)   the Agreement may be disclosed in any action to enforce its terms;

(c)   to the extent necessary to obtain insurance coverage from an entity other than a Party Insurer, the Agreement may

23

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000023

be disclosed, provided that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound;

(d) any Party may make copies of this Agreement available to its accountants, to its counsel, to its lenders or underwriters and to counsel for such lenders or underwriters, provided, that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound; and

(e) any Party may make reference to or describe this Agreement to the extent that such disclosure is required to comply with any government, regulatory or accounting/auditing requirement applicable to a Party, but shall not make available a copy of the Agreement nor shall the reporting Party identify any other Parties to this Agreement. In the event that either a governmental agency or any other entity requests a copy of the Agreement or requests the identity of the other Parties to the Agreement, the Party to whom the request is made shall, prior to disclosure, and as soon as practicable, notify all other Parties to permit a Party(ies) the opportunity to participate in opposing such request. The Parties must agree upon the wording of any press release or governmental or public filing relating to this Agreement. The Parties shall limit any responses to press or public inquiry to the information contained within the above-mentioned press release.

24

CONFIDENTIAL SUBJECT TO MARCH 2000 PROTECTIVE ORDER

OB-000024

7.1    (a)    Except as expressly set forth in Section 7.0, in the event that any entity not a Party shall seek disclosure of this Agreement from any Party, the Party from whom disclosure is sought shall notify the other Parties. The Parties shall confer and, if all Parties consent, the Parties may provide this Agreement to an entity not a Party under such terms and conditions as the Parties shall designate.

(b)    Where one or more Parties object to disclosure of the Agreement to the entity not a Party, the objecting Party shall be responsible for taking all necessary actions to prevent disclosure of this Agreement to the entity not a Party. The costs associated with the prevention of disclosure of this Agreement shall be borne equally by the Parties and each Party shall take such steps as are necessary to aid the objecting Party in attempting to prevent disclosure of this Agreement to an entity not a Party.

7.2    Except as expressly set forth in Section 7.0, in any action in which a Party has been ordered to produce this Agreement, related communications and drafts, the producing Party shall seek a protective order limiting the use of this Agreement, related communications and drafts, to the particular purpose of the pending litigation in which it is produced and take all steps necessary to bar the disclosure to any entity not a Party.

7.3    Except as expressly set forth in Section 7.0, any Party which has produced Confidential Documents and Information may require the other Parties to return all specifically designated

25

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000025

Confidential Documents and Information in their possession, as well as in the possession of their counsel, retained experts, and/or consultants, including all copies. In lieu of returning all·such Confidential Documents and Information, the Party from whom the Confidential Documents and Information has been requested may certify in writing that all such requested Confidential Documents and Information have been destroyed.

7.4  The provisions of this Article VII shall also apply to the files, records, papers and documents generated in connection with any dispute resolution pursuant to Section 8.0.

## VIII. ARBITRATION

8.0  The Parties agree to resolve any dispute which arises regarding the terms of this Agreement or the implementation thereof (a "Dispute") by way of binding arbitration in accordance with the Center for Public Resources Rules for Non-Administered Arbitration of Business Disputes (the "Rules") and the provisions of this Section.

(a)  In the event any Dispute arises that the Parties are unable to resolve by agreement, any Party to such Dispute shall have the right to commence binding arbitration of such Dispute under this Section 8.0 by sending written notice to the other Parties in accordance with Section 9.2 demanding such arbitration. Such notice shall briefly describe the Dispute as well as the relief sought by the Party demanding arbitration. Promptly following receipt of any such notice, the Parties shall attempt to

26

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

agree upon the selection of an arbitrator (the "Arbitrator") to resolve such Dispute.  If the Parties have not agreed upon the selection of the Arbitrator by the fifteenth day following delivery of the notice demanding arbitration, then any Party may request the Center for Public Resources to select the Arbitrator, provided that any Arbitrator selected by the Center for Public Resources shall be conclusive and binding on the Parties.

(b)    All arbitrations under this Section 8.0 shall be conducted in accordance with the Rules and the Parties shall faithfully abide by the Rules and abide by and perform any award rendered by the Arbitrator.  All such arbitrations shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16 and judgment upon the award may be entered by any court having jurisdiction thereof.  Any such arbitration shall be conducted in New York, New York.

## IX.  MISCELLANEOUS PROVISIONS

9.0  This Agreement shall become binding upon each Party from and after the Effective Date.

9.1  (a)    Grace    acknowledges    that,    notwithstanding    the cancellation of coverage under the Policies for Products Claims and Asbestos-Related Claims pursuant to this Agreement, the Party Insurers may require information concerning Products Claims and Asbestos-Related Claims for purposes of establishing their rights with respect to their reinsurers.  Grace shall cooperate reasonably with the Party Insurers for such purposes by providing to the Party

27

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

Insurers on a continuing basis *non-privileged information* about the progress and resolution of the litigation of Products Claims and Asbestos-Related Claims as well as access to non-privileged documentation with respect thereto, including but not limited to the right to audit individual claim files at a mutually agreed upon location.

(b)    From and after the Effective Date, Grace agrees to *obtain, if reasonably possible,* and make available to the Party Insurers, information and documentation concerning:

(i)    exposure to asbestos and asbestos-containing products and diagnosis, death, first claim and filing of all Asbestos-Related Claims against Grace of each Bodily Injury Claim Plaintiff;

(ii)    installation of asbestos-containing materials *in buildings by Building    Damage Claim Plaintiffs* with Asbestos-Related Claims against Grace as well as knowledge of the presence of asbestos products and/or the existence of asbestos requiring remediation and/or encapsulation in buildings owned, leased or occupied by Building Damage Claim Plaintiffs with Asbestos-Related Claims against Grace; and

(iii) other Products Claims.

(c)    Upon reasonable notice, Grace shall allow the Party Insurers to review all books and records maintained by Grace and/or those entities under its control to ascertain and establish the amount of payment of defense costs and costs of judgments and settlements of Products Claims and Asbestos-Related Claims.

28

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

9.2  All notifications, notices, bills, demands, payments, accounting or other communications which any Party desires or is required to give to another Party, shall be given in writing and shall be deemed to have been given as if hand delivered, sent by Certified U.S. Mail, Federal Express or overnight equivalent or by courier service, addressed to the Party or Parties at the address set forth below or such other address as a Party may designate in writing from time to time by notice to the other Parties in accordance with this Section:

If to Grace:

        W.R. Grace & Co.
        One Town Center Road
        Boca Raton, Florida   33486-1010
        ATTENTION:    Secretary

If to the Party Insurers:

        Commercial Union Insurance Co.
        Executive Offices  B10-09
        One Beacon Street
        Boston, MA 02108-3100
        ATTENTION:  Mr. Joseph Dalton, AVP

9.3  This Agreement may be amended, modified, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes or cancels this Agreement, executed by each and all of the Parties.

9.4  In the case of a waiver, the Party waiving compliance may unilaterally execute a written instrument evidencing its waiver. The failure of any Party at any time or times to require performance of any provision of this Agreement shall in no manner

29

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000029

affect the right at a later time to enforce the same. No waiver by any Party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant or warranty.

9.5 The article headings contained in this Agreement are for convenient reference only and shall not in any way affect the meaning or interpretation of this Agreement.

9.6 This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

9.7 This Agreement shall be construed in accordance with the laws of the state of New York. However, nothing contained herein shall be an admission by the Parties of the law or laws applicable to the interpretation of the Policies.

IN WITNESS WHEREOF, this Agreement has been read and signed by the duly authorized officers of the Parties, effective as of the Effective Date.

W. R. GRACE & CO.

WITNESS
Jeffrey M. Posner

By

Robert H. Beber
Senior Vice President

ADDRESS
Date 5/7/93

Date 5/7/93

30

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000030

W. R. GRACE & CO. — CONN.

By _____

Robert H. Beber
Senior Vice President

Date _5/7/53_____

WITNESS
Jeffrey M. Posner

ADDRESS
Date _5/7/53_____

COMMERCIAL      UNION    INSURANCE
COMPANY AS SUCCESSOR IN
INTEREST     TO     EMPLOYERS'
COMMERCIAL     UNION    INSURANCE
COMPANY    OF    AMERICA    AND
EMPLOYERS'   COMMERCIAL   UNION
INSURANCE COMPANY

By _____
Richard A. Jordan
Senior Vice President

Date _5/10/93_____

WITNESS
Harvey G. Lewis

ONE BEACON ST., BOSTON MASS.
ADDRESS
Date _5/10/93_____

AMERICAN EMPLOYERS' INSURANCE
COMPANY

By _____
Richard A. Jordan
Senior Vice President

Date _5/10/93_____

WITNESS
Harvey G. Lewis

ONE BEACON ST., BOSTON, MASS.
ADDRESS
Date _5/10/93_____

31

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000031

# SETTLEMENT AGREEMENT

## EXHIBIT "A"

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000032

**Insurance Policies Issued Or Alleged To Have Been Issued**

| Insurance Company | Policy No. | Coverage Period |
|---|---|---|
| American Employers' Insurance Company | A15-2127-51 | October 20, 1962 through October 20, 1965 |
| | A15-8138-001 | January 27, 1965 through October 20, 1965 |
| | A16-8220-001 | October 20, 1965 through October 20, 1968 |
| | A16-8220-002 | October 20, 1965 through October 20, 1968 |
| | A16-8220-003 | October 20, 1968 through June 30, 1971 |
| | A16-8220-004 | October 20, 1968 through June 30, 1971 |
| Employers' Commercial Union Insurance Company (of America) | EY-8220-005 | June 30, 1971 through June 30, 1974 |
| Employers' Commercial Union Insurance Company (of America) | EY-8220-006 | June 30, 1971 through June 30, 1974 |

14323

CONFIDENTIAL SUBJECT TO MARCH 2000 PROTECTIVE ORDER

OB-000033