# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**DECLARATION OF MARK A. SHELNITZ**

I, Mark A. Shelnitz, hereby declare that the following is true to the best of my knowledge, information and belief:

1. I am the Vice President, General Counsel, and Secretary of W. R. Grace & Co., which has offices located at 7500 Grace Drive, Columbia, Maryland 21044. I am fully familiar with the facts set forth in this declaration (the "Declaration").

2. Debtors, W. R. Grace & Co. and its subsidiary W. R. Grace & Co. - Conn. (collectively, "Grace"), are respectively the guarantor and borrower under two pre-petition bank credit

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

facilities: (1) the Credit Agreement dated as of May 14, 1998, as amended, among W. R. Grace & Co., W. R. Grace & Co.-Conn., the Banks Party Thereto, JPMorgan Chase Bank N.A. (then known as The Chase Manhattan Bank), as Administrative Agent, and Chase Securities Inc., as Arranger, and (2) the 364-Day Credit Agreement, dated as of May 9, 1999, as amended, among W. R. Grace & Co., W. R. Grace & Co.-Conn., the Banks Party Thereto, Bank of America National Trust and Savings Association, as Documentation Agent, JPMorgan Chase Bank N.A. ("JPMorgan"), as Administrative Agent, and Chase Securities Inc., as Book Manager (collectively, the "Credit Agreements").

3. JPMorgan serves as the Administrative Agent for the Lenders under the Credit Agreements. In addition, Mr. Charles O. Freedgood of JPMorgan serves as the Chairperson of the Official Committee of Unsecured Creditors (the "Creditors' Committee"). To the best of my recollection, Mr. Thomas Maher of JPMorgan Chase served as the Chairperson of the Creditors' Committee from the filing of Grace's bankruptcy petition at least through the summer of 2006, after which Mr. Freedgood succeeded him in this role.

4. Prior to the Petition Date, there were no breaches of the reporting and notice requirements of the Credit Agreements or any Defaults under the Credit Agreements.

5. Grace filed for bankruptcy on April 2, 2001. Beginning shortly after the filing of the Petition, Robert Tarola, then Chief Financial Officer of Grace, regularly hosted quarterly calls with the financial advisors of all official committees, including the Creditors' Committee, within approximately 60 days of the quarter's end. The purpose of these

quarterly conference calls was to update the financial advisors of the official committees about the financial condition of Grace and its recent operating performance. After reviewing the quarterly information discussed in these calls, Capstone Corporate Recovery, LLC routinely submitted a detailed follow-up list of questions, and management at Grace has been responsive in answering those questions.

6.  In addition to these quarterly conference calls, the Grace management team also attended annual conferences with representatives of the Creditors' Committee, its financial advisors, and lawyers from Stroock & Stroock & Lavan LLP, the Committee's counsel. JPMorgan was a regular participant at the annual conferences. The purpose of these meetings was to report on Grace's prior year financial performance, its annual operating plan for the current year and various issues relating to the bankruptcy.

7.  In addition to the telephone conferences and meetings discussed above, Grace has also provided JPMorgan or the Creditors' Committee's financial advisors with a wealth of other information concerning its financial condition since the filing of the bankruptcy petition. The information provided by Grace to JPMorgan or the Creditors' Committee's financial advisors includes, but is by no means limited to, the following:

    - Monthly operating reports filed with the Bankruptcy Court;
    - Quarterly press releases discussing in detail the Debtors' earnings for the prior calendar quarter and year to date;
    - Quarterly 10-Q reports filed with the Securities and Exchange Commission (the "SEC"), which are certified by the Debtors' Chief Executive Officer and Chief Financial Officer and reviewed by PricewaterhouseCoopers as independent accountants;

3

- Annual 10-K reports filed with the SEC, which are certified by the Debtors' Chief Executive Officer and Chief Financial Officer and audited by PricewaterhouseCoopers LLP as independent accountants;

- Summaries of annual operating plans; and

- Projections and pro forma financial information prepared in connection with the Debtors' original plan of reorganization and their current joint plan of reorganization.

8. I am aware that in an Affidavit dated August 18, 2008, Charles O. Freedgood of JPMorgan, in its capacity as Administrative Agent under the Credit Agreements, alleged that after the petition date Grace was in Default under the Credit Agreements by, among other things, "not furnishing to each Bank all certificates and other information required by section 8.2(a)-(c), not promptly giving notices to JPMorgan, as required by section 8.7, and not remedying such breaches within 30 days."

9. JPMorgan, in its capacity as Administrative Agent, never provided notice of acceleration on account of any such alleged default under Sections 8.2 and 8.7 in accordance with the terms of the Credit Agreements. In particular, under Section 10(B)(ii) of the Credit Agreements the Administrator may accelerate the loans, "making them immediately due and payable" by "notice of default to the Company and the Parent."

10. Grace believes that the Lenders must comply with the requirements of Section 13.2 of the Credit Agreements, which is entitled "Notices." Section 13.2 provides, in pertinent part, that "[a]ll notices, requests and demands to or upon the respective parties here to be effective shall be in writing ... and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made on receipt, addressed as follows in the case of the Company, the Parent and the Administrative Agent..." [addresses omitted].

11. JPMorgan, in its capacity as Administrative Agent, never provided either W. R. Grace & Co. or W. R. Grace & Co. - Conn. with a written notice of a default based on Grace's alleged non-compliance with Sections 8.2 and 8.7 of the Credit Agreements.

12. The information contained in this Declaration is true and correct to the best of my knowledge and belief.

June 26, 2009

*Mark A. Shelnitz*
Mark A. Shelnitz
Vice President, General Counsel and Secretary

Subscribed and sworn to before me
this 26th day of June 2009

*Diane E. Armstrong*
NOTARY PUBLIC, State of __Maryland__
My Commission Expires: __09/18/2012__

DIANE Z. ARMSTRONG
Notary Public, State of Maryland
County of Howard
My Commission Expires September 18, 2012