UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 01-01139(JKF)
                                .
W. R. GRACE & CO.,              . 5414 U.S. Steel Tower
                                . Pittsburgh, PA 15219
            Debtors.            .
                                . June 29, 2009
. . . . . . . . . . . . . . . . 10:30 a.m.

TRANSCRIPT OF TELEPHONIC MOTION HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Kirkland & Ellis, LLP
                            By:  DAVID BERNICK, ESQ.
                                 BARBARA HARDING, ESQ.
                                 JANET BAER, ESQ.
                                 LISA ESAYIAN, ESQ.
                                 CRAIG BRUENS, ESQ.
                                 BRIAN STANSBURY, ESQ.
                            200 East Randolph Drive
                            Chicago, IL  60601

                            Kirkland & Ellis, LLP
                            By:  THEODORE FREEDMAN, ESQ.
                                 CHRISTOPHER GRECO, ESQ.
                                 DEANNA BOLL, ESQ.
                                 RASHAD W. EVANS, ESQ.
                                 MARC LEWINSTEIN, ESQ.
                                 MAGALI LEE, ESQ.
                            Citigroup Center, 153 East 53rd St.
                            New York, NY  10022

Audio Operator:             Janet Heller

 Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311 Fax No. (609) 587-3599**

**APPEARANCES (Contd'):**

| | |
|---|---|
| For the Debtors: | Pachulski, Stang, Ziehl & Jones<br>By:  JAMES O'NEILL, ESQ.<br>919 North Market Street<br>17th Floor<br>Wilmington, DE  19899-8705 |
| | Reed Smith, LLP<br>By:  JAMES RESTIVO, ESQ.<br>435 Sixth Avenue<br>Pittsburgh, PA  15219 |
| For Official Committee:<br>of Asbestos Personal<br>Injury Claimants: | Caplin & Drysdale, Chartered<br>By:  PETER LOCKWOOD, ESQ.<br>     JEFF LIESEMER, ESQ.<br>     NATHAN FINCH. ESQ.<br>     WALTER SLOCOMBE, ESQ.<br>     KEVIN MACLAY, ESQ.<br>One Thomas Circle, NW<br>Washington, D.C.  20005 |
| | Caplin & Drysdale, Chartered<br>By:  RITA TOBIN, ESQ.<br>375 Park Avenue<br>New York, NY  10152 |
| For the Unsecured<br>Creditors' Committee: | Stroock & Stroock & Lavan<br>By:  KENNETH PASQUALE, ESQ.<br>     ARLENE KRIEGER, ESQ.<br>     LEWIS KRUGER, ESQ.<br>180 Maiden Lane<br>New York, NY  10038-4982 |
| For Official Committee<br>of Unsecured Creditors: | Duane Morris, LLP<br>By:  MICHAEL LASTOWSKI, ESQ.<br>1100 North Market Street, Ste 1200<br>Wilmington, DE  19801-1246 |
| For the Property<br>Damage Committee: | Bilzin, Sumberg, Baena, Price &<br>  Axelrod, LLP<br>By:  MATTHEW KRAMER, ESQ.<br>     SCOTT BAENA, ESQ.<br>     JAY SAKALO, ESQ.<br>200 South Biscayne Boulevard<br>Suite 2500<br>Miami, FL  33131 |

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Cont'd):**

| | |
|---|---|
| For the Ad Hoc Committee of Equity Sec. Holders: | Dewey & LeBoeuf, LLP<br>By:  JENNIFER WHITENER, ESQ.<br>125 West 55th Street<br>New York, NY  10019 |
| For the Future Claimants Representatives: | Orrick, Herrington & Sutcliffe, LLP<br>By:  ROGER FRANKEL, ESQ.<br>     RICHARD WYRON, ESQ.<br>Washington Harbour<br>3050 K Street, N.W.<br>Washington, D.C.  20007 |
| For Maryland Casualty and Zurich Intl.: | Connelly Bove Lodge & Hutz, LLP<br>By:  JEFFREY WISLER, ESQ.<br>The Nemours Building<br>1007 North Orange Street<br>Wilmington, DE  19899<br><br>Eckert Seamans Cherin & Mellott,<br>  LLC<br>By:  EDWARD LONGOSZ, II, ESQ.<br>     LAURA STOVER, ESQ.<br>1747 Pennsylvania Avenue, N.W.<br>Suite 1200<br>Washington, D.C.  20006 |
| For Sealed Air: | Skadden, Arps, Slate, Meagher &<br>  Flom, LLP<br>By:  DAVID TURETSKY, ESQ.<br>     JAN BAKER, ESQ.<br>One Rodney Square<br>Wilmington, DE  19801 |
| Co-Counsel to Libby Claimants: | Cohn, Whitesell & Goldberg, LLP<br>By:  DANIEL C. COHN, ESQ.<br>     CHRISTOPHER CANDON, ESQ.<br>101 Arch Street<br>Boston, MA  02110<br><br>Lewis, Slovak & Kovacich<br>By:  MARK KOVACICH, ESQ.<br>725 Third Avenue North<br>Great Falls, MT  59403 |

**APPEARANCES (Contd'):**

```
For the Bank Lenders:      Landis Rath & Cobb, LLP
                           By:  RICHARD S. COBB, ESQ.
                                KERRI KING MUMFORD, ESQ.
                                JAMES GREEN, JR., ESQ.
                           919 Market Street
                           Wilmington, DE  19801

                           Paul Weiss Rifkind Wharton
                             & Garrison, LLP.
                           By: DANIEL BELLER, ESQ.
                               SARAH HARNETT, ESQ.
                               MARGARET PHILLIPS, ESQ.
                               REBECCA ZUBATY, ESQ.
                           1285 Avenue of the Americas
                           New York, NY  10019

For Continental            Ford, Marrin, Esposito,
Casualty Company:            Witmeyer & Gleser, LLP
                           By: ELIZABETH DeCRISTOFARO, ESQ.
                           Wall Street Plaza, 23rd Floor
                           New York, NY  10005-1875

For Official Committee     Dies & Hile, LLP
of Asbestos Property       By:  MARTIN DIES, ESQ.
Damage Claimants:          1601 Rio Grande, Suite 330
                           Austin, TX  78701

                           LECG
                           By:  ELIZABETH DEVINE, ESQ.

For Various Claimant       Stutzman, Bromberg, Esserman &
Firms:                       Plifka
                           By:  DAVID J. PARSONS, ESQ.
                                SANDER L. ESSERMAN, ESQ.
                           2323 Bryan Street
                           Suite 2200
                           Dallas, TX  75201

For Firemen's Fund:        Stevens & Lee, P.C.
                           By:  JOHN DEMMY, ESQ.
                           1105 North Market Street, 7th Fl.
                           Wilmington, DE  19801
```

**APPEARANCES (Contd'):**


For Fireman's Fund:              Stevens & Lee
                                 By:  DAVID R. BEANE, ESQ.
                                 111 North Sixth Street
                                 Reading, PA  19603

For Owens-Illinois:              McCarter & English
                                 By: KATHARINE MAYER, ESQ.
                                 Renaissance Centre, 405 N. King St.
                                 Wilmington, DE  19801

For Asbestos Property            Scott Law Group
Damage Claimants:                By:  DARRELL SCOTT, ESQ.
                                 1001 East Main Street, Suite 500
                                 Sevierville, TN  37864

For National Union Fire          Zeichner Ellman & Krause, LLP
Insurance Co.:                   By:  MATTHEW RUSSELL, ESQ.
                                      ROBERT GUTTMANN, ESQ.
                                      MICHAEL DAVIS, ESQ.
                                 575 Lexington Avenue
                                 New York, NY  10022

For the Future                   Orrick, Herrington & Sutcliffe, LLP
Claimants                        By:  DEBRA FELDER, ESQ.
Representatives:                      JOSHUA CUTLER, ESQ.
                                      JONATHAN GUY, ESQ
                                 Washington Harbour
                                 3050 K Street, N.W.
                                 Washington, D.C.  20007 For

For Federal Insurance            Cozen O'Connor
Company:                         By:  JACOB C. COHN, ESQ.
                                      ILAN ROSENBERG, ESQ.
                                 1900 Market Street
                                 Philadelphia, PA  19103

                                 Cozen O'Connor
                                 By:  JEFFREY WAXMAN, ESQ.
                                 Chase Manhattan Centre
                                 1201 North Market Street
                                 Wilmington, DE  19801

**APPEARANCES (Contd'):**

For Allstate Insurance:    Cuyler Burk, LLP
    By:  STEFANO CALOGERO, ESQ.
    Parsippany Corporate Center
    Four Century Drive
    Parsippany, NJ  07054

For W.R. Grace:    W.R. Grace
    By: WILLIAM CORCORAN, ESQ.
       MARK SHELNITZ, ESQ.
       PAUL NORRIS, ESQ.
    7500 Grace Drive
    Columbia, MD  21044

For State of Montana
Department of
Environmental Quality:    Womble Carlyle Sandridge & Rice
    By:  FRANCIS MONACO, ESQ.
       KEVIN J. MANGAN, ESQ.
    222 Delaware Avenue
    Suite 1501
    Wilmington, DE  19801

For State of Montana:    Christensen, Moore, Cockrell,
      Cummings & Axelberg, P.C.
    By:  DALE R. COCKRELL, ESQ.
    Two Medicine Building
    160 Heritage Way, Suite 104
    Kalispell, MT  59904

For Official Committee
of Asbestos Personal
Injury Claimants:    Anderson Kill & Olick
    By:  ROBERT M. HORKOVICH, ESQ.
    1251 Avenue of the Americas
    New York, NY  10020-1186

For Official Committee
ov Asbestos Personal
Injury Claimants:    Campbell & Levine
    By:  MARK T. HURFORD, ESQ.
    800 North King Street
    Suite 300
    Wilmington, DE  19701

For CNA:    Goodwin Procter, LLP
    By:  DANIEL GLOSBAND, ESQ.
       BRIAN MUKHERJEE, ESQ.
    Exchange Place
    Boston, MA  02109-2881

**APPEARANCES (Contd'):**

```
For Grace Certain          Montgomery, McCracken, Walker
Cancer Claimants:            & Rhoads, LLP
                           By:  NATALIE D. RAMSEY, ESQ.
                           300 Delaware Avenue, Ste. 750
                           Wilmington, DE  19801

For David T. Austern,      Phillips, Goldman & Spence, P.A.
the Future Claimants'      By:  JOHN C. PHILLIPS, ESQ.
Representative:            1200 North Broom Street
                           Wilmington, DE  19806

                           Tre Angeli, LLC
                           By:  JOSEPH RADECKI, ESQ.

For David T. Austern:      Piper Jaffray & Co.
                           By:  JASON SOLGANICK


For the Property           Ferry Joseph & Pearce, P.A.
Damage Committee:          By:  THEODORE TACCONELLI, ESQ.
                           824 Market Street, Suite 19899
                           Wilmington, DE  19899

For Ford, Marin,           Ford, Marrin, Esposito, Witmeyer &
Esposito, Witmeyer           Gleser
& Gleser:                  By:  SHAYNE SPENCER, ESQ.
                           Wall Street Plaza
                           New York, NY  10005

For Official Committee     Brandi Law Firm
of Asbestos Property       By: THOMAS BRANDI, ESQ.
Damage Claimants:               TERENCE D. EDWARDS, ESQ.
                           44 Montgomery St., Suite 1050
                           San Francisco, CA  94104

For the State of CA,       Hahn & Hessen, LLP
Dept. of Gen. Services:    By:  CHRISTINA J. KANG, ESQ.
                           488 Madison Avenue, 14th Fl.
                           New York, NY  10022

For Baron & Budd,          Hogan Firm Attorneys at Law
et al.:                    By:  DANIEL K. HOGAN, ESQ.
                           1311 Delaware Avenue
                           Wilmington, DE  19801
```

**APPEARANCES (Contd'):**

For the PD Committee:          Speights & Runyan
                               By:  DANIEL SPEIGHTS, ESQ.
                                    ALAN RUNYAN, ESQ.
                                    MARION FAIREY, ESQ.
                               200 Jackson Avenue, East
                               Hampton, SC  29924

For Anderson Memorial          Kozyak, Tropin & Throckmorton, PA
Hospital:                      By:  JOHN KOZYAK, ESQ.
                                    DAVID L. ROSENDORF, ESQ.
                               2525 Ponce de Leon, 9th Floor
                               Miami, FL

For Scotts Company:            Vorys, Sater, Seymour & Pease, LLP
                               By:  TIFFANY COBB, ESQ.
                                    ROBERT J. SIDMAN, ESQ.
                               52 East Gay Street
                               Columbus, OH  43216

For Official Committee         Richardson Patrick Westbrook &
of Asbestos Property             Brickman, P.C.
Claimants:                     By:  EDWARD J. WESTBROOK, ESQ.
                               174 East Bay Street
                               Charleston, SC  29401

For Official Committee         Hamilton, Rabinovitz & Alschuler
of Asbestos Property           By:  FRANCINE RABINOVITZ, ESQ.
Claimants:                     26384 Carmel Rancho Lane, Suite 202
                               Carmel, CA  93923

                               Conway Del Genio, Gries & Co, LLC

                               By:  GREGORY BOYER, ESQ.

For Official Committee         Lieff, Cabraser, Heinmann &
of Asbestos Property             Bernstein
Claimants:                     By:  ELIZABETH J. CABRASER, ESQ.
                               275 Battery Street, Suite 3000
                               San Francisco, CA  94111

                               Pryor Cashman LLP
                               By:  RICHARD LEVY, ESQ.
                               410 Park Avenue
                               New York, NY  10022

**APPEARANCES (Contd'):**

| | |
|---|---|
| For Official Committee<br>of Asbestos Property<br>Claimants: | Riker, Danzig, Scherer, Hyland<br>   & Perretti, LLP<br>By:  CURTIS PLAZA, ESQ.<br>One Speedwell Avenue<br>Morristown, NJ  07962 |
| For W.R. Grace: | WILLIAM SPARKS, ESQ.<br><br>DAVID SIEGEL<br>PAUL NORRIS<br>RICHARD FINKE |
| For Lehman Brothers: | Lehman Brothers<br>By:  ANDREW CHAN |
| For Dow Jones<br>News Wires: | Dow Jones News Wires<br>By:  PEG BRICKLEY |
| For Citadel Investment<br>Group: | Citadel Investment Group<br>By:  ASHOK VASVANI |
| For Murray Capital<br>Management: | Murray Capital Management, Inc.<br>By:  MARTI MURRAY |
| For ERISA: | Lowenstein Sandler, PC<br>By:  IRA LEVEE, ESQ.<br>65 Livingston Avenue<br>Roseland, NJ  07068 |
| For Morgan Stanley<br>Senior Funding, Inc.: | Katten, Muchin, Rosenman, LLP<br>By:  NOAH HELLER, ESQ.<br>    MERRITT PARDINI, ESQ.<br>    JEFF FRIEDMAN, ESQ.<br>575 Madison Avenue<br>New York, NY |
| For Her Majesty the<br>Queen in Right of<br>Canada: | Office of the Attorney General<br>By:  JACQUELINE DAIS-VISCA, ESQ. |
| For Bank of America: | Richards, Layton & Finger, P.A.<br>By:  JASON MADRON, ESQ.<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE 19899 |

**APPEARANCES (Contd'):**

```
For PD/FCR:                 ALAN RICH, ESQ.

For Loan Maker/Long Acre:   Pepper Hamilton
                            By:  DENNIS R. VERY, ESQ.
                            500 Grant Street, 50th Floor
                            Pittsburgh, PA

For Seaton Ins. Co.:        Drinker Biddle & Reath, LLP
                            By:  MICHAEL F. BROWN, ESQ.
                                 JEFFREY BOERGER, ESQ.
                            One Logan Square
                            18th & Cherry Streets
                            Philadelphia, PA  19103

For Arrowwood Indemnity     Wilson, Elser, Moskowitz, Edelman
f/k/a Royal Indemnity:        & Dicker, LLP
                            By: CARL PERNICONE, ESQ.
                            New York, NY 10019

                            Bifferato, Gentilotti, Biden
                              & Balick, LLC
                            By:  GARVAN McDANIEL, ESQ.
                            800 N. King Street
                            Wilmington, DE  19899

For Arrowwood Indemnity     O'Melveney & Meyers, LLP
f/k/a Royal Indemnity:      By:  TANCRID SCHIAVONI, ESQ.
                            Times Square Tower, 7 Times Square
                            New York, NY  10036

For JD Capital:             JD Capital
                            By:  RYAN DUFFY, ESQ.
                                 TAI CURION

For the Equity Committee:   Kramer, Levin, Naftalis & Frankel,
                              LLP
                            By:  DOUGLAS MANNAL, ESQ.
                                 DAVID BLAVEY, ESQ.
                            1177 Avenue of the Americas
                            New York, NY  10036

For the Equity             Kramer Levin Naftalis & Frankel
Committee:                 By:  GREGORY HOROWITZ, ESQ.
                            919 Third Avenue
                            New York, NY  10022
```

**APPEARANCES (Contd'):**

| | |
|---|---|
| For the Blackstone Group: | The Blackstone Group<br>By: BRIAN BRESNAHAN |
| For the U.S. Trustee: | United States Trustee Department<br>By: DAVID KLAUDER, AUSA<br>833 Chestnut Street<br>Suite 500<br>Philadelphia, PA  19107 |
| For Fair Harbor Capital LLC: | Fair Harbor Capital, LLC<br>By: FRED GLASS |
| For Fresenius Medical Care Holdings, Inc.: | McDermott, Will & Emery<br>By: DAVID S. ROSENBLOOM, ESQ.<br>227 West Monroe Street<br>Chicago, IL  60606 |
| For Century Indemnity: | White & Williams, LLP<br>By: JOSEPH GIBBONS, ESQ.<br>1800 One Liberty Place<br>Philadelphia, PA  19103 |
| For Loeb Partners: | Paul Weiss Rifkind Wharton<br>  & Garrison, LLP.<br>By: ANDREW ROSENBERG, ESQ.<br>1285 Avenue of the Americas<br>New York, NY  10019 |
| For Kaneb Pipe Line Operating Partnership, et al.: | Fulbright & Jaworski<br>By: STEVE PEIRCE, ESQ.<br>300 Convent Street<br>Suite 2200<br>San Antonio, TX  78205 |
| | Smith, Katzenstein & Furlow, LLP<br>By: KATHLEEN MILLER, ESQ.<br>800 Delaware Avenue<br>Wilmington, DE  19899 |
| | Gilbert & Renton, Inc.<br>By: ROBERT GILBERT |
| For Bloomberg, LLP | Bloomberg, LLP<br>By: STEVEN H. CHURCH |

**APPEARANCES (Contd'):**

For Travelers:                    Simpson, Thacher & Bartlett
                                  By:  SAMUEL RUBIN, ESQ.
                                  425 Lexington Avenue
                                  New York, NY  10017

For Anderson Hospital:            BUD FERRY, ESQ.

For Certain London Market         Mendes & Mount, LLP
Companies:                        By:  ALEXANDER MUELLER, ESQ.
                                  750 Seventh Avenue
                                  New York, NY  10019-6829

For Certain London Market         Tucker Arensberg, P.C.
Companies:                        By:  MICHAEL A. SHINER, ESQ.
                                  1500 One PPG Place
                                  Pittsburgh, PA  15222

For Everest Reinsurance           Marks, O'Neill, O'Brien &
Co. & McKinley Ins. Co.:             Courtney, P.C.
                                  By:  JOHN D. MATTEY, ESQ.
                                       BRIAN KASPRZAK, ESQ.
                                  913 North Market St., Suite 800
                                  Wilmington, DE  19801

For Everest Reinsurance           Crowell & Moring, LLP
Co. & McKinley Ins. Co.:          By: MARK D. PLEVIN, ESQ.
                                       LESLIE A. EPLEY, ESQ.
                                       LESLIE DAVIS, ESQ.
                                  1001 Pennsylvania Avenue, NW
                                  Washington, DC  20004

For Borrowers Committee:          Zuckerman Spaeder, LLP
                                  By:  VIRGINIA GULDI, ESQ.
                                  1800 M. Street, N.W. Suite 1000
                                  Washington, D.C.  20036

For SNSF Railway Co:              Pepper Hamilton, LLP
                                  By:  LINDA CASEY, ESQ.
                                  3000 Two Logan Square
                                  18th & Arch Streets
                                  Philadelphia, PA  19103

**APPEARANCES (Contd'):**

For SNSF Railway Co.:      Pepper Hamilton, LLP
                                       By: JOHN H. SCHANNE, ESQ.
                                       Suite 5100
                                       1313 Market Street
                                       Wilmington, DE 19899

For Fee Auditor:          Warren H. Smith & Associates, PC
                                       By:  WARREN H. SMITH, ESQ.
                                           BOBBIE RUHLANDER, ESQ.
                                       325 North St. Paul, Suite 1250
                                       Dallas, TX  75201

For Hartford Financial    Wilmer, Cutler, Pickering, Hale
Service Group:           & Dorr, LLP
                                       By:  MELANIE DRITZ, ESQ.
                                       399 Park Avenue
                                       New York, NY  10022

For Serengeti:           Vinson & Elkins, LLP
                                       By:  ARI BERMAN, ESQ.
                                       Trammell Crow Center
                                       2001 Ross Avenue, Suite 3700
                                       Dallas, TX  75201

For RBS Greenwich Capital:  RBS Greenwich Capital
                                       By:  JEFFREY FARKAS, ESQ.


- - -

1        THE COURT:  This is the matter of W.R. Grace,

2   Bankruptcy Number 01-1139 pending in the District of Delaware.

3   Mona, if you could read the list for me, please.

4        MS. BAKER:  Yes.  Scott Baena, Janet Baer, Daniel

5   Beller, Ari Berman, David Bernick, Jeffrey Boerger, Thomas

6   Brandi, Michael Brown, Elizabeth Cabraser, Stefano Calogero,

7   Linda Casey, Richard Cobb, Tiffany Cobb, Jacob Cohn, Leslie

8   Davis, Michael Davis, Elizabeth DeCristofaro, Elizabeth Devine,

9   Martin Dies, Melanie Dritz, Terence Edwards, Sander Esserman,

10  Marion Fairey, Jeffrey Farkas, Nathan Finch, Richard Finke,

11  Roger Frankel, Theodore Freedman, Robert Gilbert, James Green,

12  Robert Guttmann, Jonathan Guy, Barbara Harding, Sarah Harnett,

13  Robert Horkovich, Mark Hurford, Brian Kasprzak, David Klauder,

14  Mark Kovacich, John Kozyak, Matthew Kramer, Arlene Krieger,

15  Magali Lee, Richard Levy, Peter Lockwood, Edward Longosz, Kevin

16  Maclay, Kevin Mangan, Douglas Mannal, John Mattey, Garvan

17  McDaniel, Kathleen Miller, Alex Mueller, Marti Murray, James

18  O'Neill, David Parsons, Steve Peirce, Margaret Phillips, John

19  Phillips, Mark Plevin, Joseph Radecki, Natalie Ramsey, James

20  Restivo, Alan Rich, Andrew Rosenberg -- I think it's Ian

21  Rosenberg, also -- David Rosendorf, Samuel Rubin, Alan Runyan,

22  Jay Sakalo, John Schanne, Darrell Scott, Mark Shelnitz, Michael

23  Shiner, Walter Slocombe, Warren Smith, Jason Solganick, Daniel

24  Speights, Shayne Spencer, Laura Stover, Theodore Tacconelli,

25  Edward Westbrook, Jennifer Whitener, Jeffrey Wisler, Richard

1  Wyron, Elizabeth Yu, Rebecca Zubaty, and that's it, Judge.

2          THE COURT:  All right, thank you.  Ms. Baer?

3          MS. BAER:  Yes, Your Honor, good morning.

4          THE COURT:  Good morning.

5          MS. BAER:  We have a fairly long agenda, but the good

6  news is, there's only one contested matter, so since we're on

7  the phone, I think if it's okay with you, I'll just run through

8  the agenda and talk about what's continued to what, and take

9  the contested matter with respect to the Kaneb motion, last.

10          THE COURT:  All right.

11          MS. BAER:  Your Honor, Number 1 was the debtors'

12  objection to the claim filed by the Massachusetts Department of

13  Revenue.  That's being continued to the next omnibus hearing on

14  July 27th.

15          THE COURT:  Okay.

16          MS. BAER:  Matter Number 2, the debtors' 25th omnibus

17  objections.  We still have some contested objections on that

18  omnibus objection.  Those are also being continued to July

19  27th.

20          THE COURT:  All right.

21          MS. BAER:  Number 3, Your Honor, is the debtors'

22  objection to a claim filed by Massachusetts Casualty Company.

23  Your Honor, the agenda that was sent out indicates that that

24  matter is being continued to July 27.  It's actually being

25  continued to August 24th.  The parties are talking about the

1  matter and have agreed that it'll be continued to August 24.

2          THE COURT:  All right.

3          MS. BAER:  Matter Number 4, Your Honor, was the

4  debtors' motion to approve the continued retention of Deloitte

5  Tax, LLP.  You entered that order.

6          THE COURT:  Okay.

7          MS. BAER:  Matter Number 5, Your Honor, was the

8  debtors' motion for entry of an order authorizing the debtors

9  to enter into a settlement to resolve some pending ERISA

10 litigation.  You already entered an order on that one.

11         THE COURT:  Okay.

12         MS. BAER:  Number 6 was the debtors' motion for an

13 order authorizing the settlement with the Internal Revenue

14 Service.  You've also entered an order on that.

15         THE COURT:  All right.

16         MS. BAER:  Matters 7 and 8 are the Kaneb motions with

17 respect to the Otis Pipeline in Macon, Georgia and we'll take

18 those last, as those are the contested matters.

19         THE COURT:  All right.

20         MS. BAER:  Matter Number 9, Your Honor, is a status

21 report on asbestos property damage claims.  I believe that Mr.

22 Restivo is on the phone and wanted to give a brief status

23 report on that matter.

24         THE COURT:  Okay.  Mr. Restivo?

25         MR. RESTIVO:  Jim Restivo, Your Honor.  Good morning.

1  With respect to asbestos property damage claims, addressing

2  first, claims by Speights and Runyan.  As reported previously,

3  the 16 remaining United States claims are settled.  Indeed,

4  they have been settled for about eight or nine months.  We are

5  simply waiting for completion of the paperwork from Mr.

6  Speights.  I did talk to him last week and I think he has all

7  but one or two signed agreements in hand and, hopefully, we

8  will file motions to approve those settled cases in the very

9  near future.

10        We have also settled, I believe it's 19 Canadian

11 claims.  Again, Mr. Speights, I believe, is close to having all

12 of the settlement agreements signed up and, hopefully, we will

13 be able to file motions to approve those settlements, in the

14 very near future.

15        There are two Canadian cases, Your Honor, which are

16 pending and unresolved, City of Vancouver and Naniamo.  Those

17 are cases out of the British of Columbia.  It appears from the

18 claim information, not necessarily the claim forms, that both

19 of those buildings were built more than 30 years prior to the

20 filing of the claim.  We were not aware of that when we filed

21 our motion for summary judgment on the ultimate statute of

22 limitations.  And so, our intent is to file a motion for

23 summary judgment on the same grounds with respect to those two

24 claims which have not been settled, and because they were not

25 included in our motion, have not been resolved and we intend to

1  file that very soon.

2          I believe the Court has approved the Fresno, Macerich

3  Property DM made settlement agreement, and so that is complete.

4          With respect to the Court's opinion on the 35 claims

5  dismissed under the Canadian ultimate statute, an appeal has

6  been filed by the claimants and that is pending in the district

7  court.  With respect to this Court's decision dismissing 16

8  claims of the California Department of General Services, that

9  is also in the district court.  That has been fully briefed and

10  the parties are awaiting an opinion on that appeal.  And then

11  lastly, Your Honor, we have the Solo claim which is a litigated

12  claim in New York, which was on appeal when the bankruptcy was

13  filed and the parties to that claim are going to go to a

14  mediation before Judge Diane Welch in New York, and I believe

15  that's scheduled for August 12.

16          And I think that takes care of all of the property

17  damage claims, with the exception of the Anderson Memorial

18  claim or claims, which I believe is on appeal to the district

19  court.

20          THE COURT:  Okay.  Anyone have any comments with

21  respect to the status report?

22                  (No audible response)

23          THE COURT:  Okay, thank you.

24          MS. BAER:  Thank you, Your Honor.  That takes us,

25  then, to agenda item Number 11, which is the Libby Claimants'

1  motion to strike to the expert report of Thomas Florence.

2          THE COURT:  I'm sorry, what was 10?

3          MS. BAER:  Oh, I'm sorry, 10 was the pretrial

4  conference on Plan 1 confirmation.  That has already been held.

5  Because this agenda started off as the June 1st agenda, and

6  that got continued to June 18th, it remained on the agenda, but

7  it has already been held and done.

8          THE COURT:  Okay.

9          MS. BAER:  Agenda Item 11, the Libby Claimants'

10 motion to strike the expert report of Thomas Florence.  That

11 matter, Your Honor, by your order has been continued for

12 argument on July 9th, at 9:30, telephonically.

13         THE COURT:  All right.

14         MS. BAER:  Agenda item Number 10 (sic) Anderson

15 Memorial Hospital's motion for temporary allowance of claim for

16 voting purposes.  Your Honor, 12, 13 and 14 are all related

17 motions filed by the Speights & Runyan firm for temporary

18 allowance of claims -- property damages claims.  Those matters,

19 pursuant to your order, have also been continued for telephonic

20 hearing on July 9th at 9:30.

21         THE COURT:  Okay.

22         MS. BAER:  Agenda item Number 15, Your Honor, the

23 debtors' objection to the claim filed by Madison Complex.

24         Your Honor, the parties have been engaged in

25 settlement negotiations with respect to that claim objection

1  and as a result we're going to ask that it be continued to July

2  27th, while we see if we can complete those settlement

3  negotiations.

4          THE COURT:  All right.

5          MS. BAER:  Agenda item Number 16, Your Honor, the

6  debtors' motion to make the legally required contribution to

7  the defined benefit plan, that order has been entered by Your

8  Honor.

9          THE COURT:  Sixteen through 19 all should have been

10 entered.

11         MS. BAER:  Yes.  I see all of them have.

12         THE COURT:  In fact, have.  Twenty should have been

13 entered, the fees.

14         MS. BAER:  Your Honor, I have not seen the order on

15 fees.  I don't know if Mr. Smith is on the phone, or Mr.

16 O'Neill.

17         MS. BAKER:  Judge, it's Ramona Baker, that order is

18 the one, I believe, we were talking about via e-mail and we can

19 talk about it after the hearing.

20         THE COURT:  Oh, okay, yes, I'm sorry.  There was one

21 issue that I had to address in the fee application that my

22 clerk and I have been talking back and forth about.  But, I

23 think we will -- we may need some information, but at the

24 moment because of where I am, I'm not able to address it

25 further.  So, if I don't have an order entered between now and

1  July 9th, let's continue that until the July 9th, at 9:30.

2        MS. BAER:  Okay.

3        THE COURT:  If I need some additional information,

4  I'll simply do an order.  There was a confusion as to one issue

5  in that order.

6        MS. BAER:  Thank you, Your Honor.  If we can help in

7  any way, please let us know.

8        MS. RUHLANDER:  Yes, Your Honor, Bobbie Ruhlander

9  here for Warren Smith.  Please let us know if you need any

10 additional information.  We'd be happy to supply it.

11       THE COURT:  All right, thank you.

12       MS. BAER:  Your Honor, with that, then, that

13 completes everything but agenda Items 7 and 8, which are the

14 Kaneb motions to lift stay, so I would imagine many people on

15 the phone may want to drop off at this point.

16       THE COURT:  Okay.  Anyone who wishes to terminate

17 from the rest of this proceeding, is free to go.  There's going

18 to be an argument, a supplemental argument on the Kaneb motions

19 at this point in time and it's limited to half an hour.

20       MS. BAER:  Okay.  Your Honor, with respect to the

21 Kaneb matter, as you may recall that --

22       THE COURT:  Ms. Baer, may I ask you to hold on just a

23 second, please?  I need to get some additional paper.  I

24 thought I had extra blank sheets here and I don't, so I need to

25 put the phone down one second, I'm sorry.

1           MS. BAER:  Sure, no problem.

2           THE COURT:  All right.

3                       (Pause)

4           THE COURT:  Okay, thank you.

5           MS. BAER:  Thank you, Your Honor.  As you will

6 recall, Your Honor, these are two motions filed by what I'll

7 abbreviate to the moving party to be Kaneb, to lift the

8 automatic stay in order to do two things.  Number one, to

9 pursue certain litigation with respect to the Otis Pipeline and

10 number two, to pursue the insurance coverage litigation against

11 the Grace insurance carriers for potential coverage of both the

12 Otis Pipeline site and the Macon, Georgia site.

13          Your Honor, last time we were before you in April,

14 you actually had ruled that you were going to deny the Kaneb

15 motion to lift stay with respect to Otis Pipeline, on the issue

16 of going forward with the Texas litigation and I believe in the

17 supplemental submissions, that was understood.

18          Your Honor ordered the supplemental submissions for

19 the purpose of submitting policies and settlement agreements to

20 the Court and as you said at the April hearing, put into

21 context, those policies and settlement agreements.

22          As the Kaneb folks put it into words at the last

23 hearing, they said, to demonstrate why the indemnity

24 obligations that the debtors and the insurance carriers are

25 claiming exist, are hugely overblown.

                    **J&J COURT TRANSCRIBERS, INC.**

1         Your Honor, I know you've limited this argument to 15

2    minutes per side, I really don't think it will take even that

3    long.  From the debtors' perspective, however, Your Honor, I

4    certainly want to share that time with counsel for Continental

5    Casualty Company and One Beacon Seaton, because that is really,

6    especially the Continental Casualty Company's position, is one

7    of the keys to the supplemental submissions and what it all

8    really means.

9         There's very little dispute with respect to One

10   Beacon Seaton.  They do have a policy that is at issue, it is a

11   policy that was settled.  There are certainly questions as to

12   whether or not Kaneb has any rights under that policy and there

13   are also questions with respect to what the debtors'

14   obligations would be.  As One Beacon pointed out in its papers,

15   we're not just talking about the amount of the coverage, and it

16   was an umbrella policy at a higher level, but we're also

17   talking about the potential for attorneys' fees and costs and

18   the like, that One Beacon claims would all be part of any

19   indemnity obligation that, ultimately, the debtors would be

20   responsible for.  Key, Your Honor --

21         THE COURT:  Ms. Baer, just a minute, I'm sorry, hold

22   on.

23         MS. BAER:  No problem.

24              (Pause)

25         THE COURT:  I'm sorry, Ms. Baer, go ahead.

1          MS. BAER:  No problem.  I remember a few telephonic

2    hearings I had like that with my own children.

3          THE COURT:  I have -- yes, unfortunately, my daughter

4    is coming back from the hospital today, and so I'm here alone,

5    so I apologize for the interruption, but okay, go ahead.

6          MS. BAER:  Your Honor, the key really here is,

7    Grace's primary insurance coverage with Continental.  From all

8    review of the documents, that appears to be what Kaneb believes

9    that they have some rights to.  They claim that they don't seek

10   to pursue CNA coverage for gradual pollution and they claim

11   that as a result, there should be no implications on the

12   debtor.  But, in reading the policies, in reading the Kaneb

13   papers and in reading the Continental Casualty papers, it's

14   very clear this is not clear.  It's a very confusing situation.

15   Kaneb takes the position that because the gradual pollution

16   parts of the coverage were settled with the debtor and because

17   the debtor gave an indemnity, if they were seeking gradual

18   pollution coverage, then maybe the indemnity would be

19   implicated and, therefore, maybe the debtors' estates would be

20   implicated, but they say because they have agreed to not pursue

21   gradual pollution coverage, there should be no implication on

22   the debtor, they should be able to go along their merry way,

23   sue Continental Casualty for coverage, litigate the coverage

24   and not involve the debtor.

25          Your Honor, that is just simply way too simple and

1  not the case here.  CNA has made it very, very clear in their

2  papers and in their previous arguments, that they believe that

3  this policy and what has been settled is very much a question

4  mark.  They believe that to the extent that there is a

5  settlement, that they are fully indemnified for all

6  responsibilities that would relate to the insurance and,

7  therefore, they are fully indemnified and will seek

8  indemnification from the debtors for any coverage that Kaneb

9  may attempt to pursue with them.

10          Your Honor, from the debtors' perspective, we don't

11 believe that the indemnities we gave to CNA are nearly all as

12 encompassing as CNA would say they are, but those are all, Your

13 Honor, coverage type issues.  There is a significant question

14 here as to what kind of coverage, if any, Kaneb would be

15 entitled to, there's a significant question with respect to

16 what kind of indemnity obligations the debtors would have to

17 CNA if this coverage were pursued, and there's pending

18 litigation in the State of New York over this very issue, over

19 the policies, over what's settled, over what's open and it

20 includes any coverage that would be involved in the litigation

21 with Kaneb or any environmental liabilities with Kaneb.

22          THE COURT:  And is Kaneb a party to that litigation?

23          MS. BAER:  No, it is not, Your Honor.

24          THE COURT:  Okay.

25          MS. BAER:  Your Honor, in addition, the insurance

1 policies we're talking about are insurance policies that to the

2 extent that the debtor still has rights in those policies, are

3 being transferred to the asbestos trust under the Grace Chapter

4 11 plan.

5          As Your Honor knows, insurance policies are not just

6 for asbestos and non-asbestos, these insurance policies are for

7 coverage in general.  And once the Chapter 11 plan is confirmed

8 and if the Chapter 11 plan is confirmed in the form in which

9 we've currently submitted it, it will implicate the trust, it

10 will implicate insurance being transferred to the trust and

11 there will also be implications with respect to the insurance

12 entity injunction as to what is enjoined and what is not.  And

13 it's very clear from the current Chapter 11 plan on the table,

14 that to the extent that there is going to be pursuit of this

15 coverage, the trust will be the interested party.  The trust

16 will, effectively, step into the shoes of the debtor in the New

17 York litigation.

18          Your Honor, we just completed a couple of days last

19 week in the Phase I confirmation hearing.  I think we came out

20 of that hearing with a number of questions and a lot of work to

21 do on various briefing, post trial briefing, and the like and

22 we have a tremendous amount still of discovery to do and

23 preparation for our September confirmation hearing.

24          It's very clear from these last couple of days, last

25 week in our hearings, that the insurance carriers are a very,

1  very significant part of the confirmation process.  Pursuing

2  insurance coverage litigation right now, especially against

3  Continental Casualty who is the primary carrier and, therefore,

4  probably the most significant of all the insurance carriers

5  here, would be a huge distraction to the debtor.  It would be a

6  huge distraction to the insurers and all, frankly, the parties

7  in interest, other than Kaneb, as we move towards confirmation.

8          I remind you, Your Honor, that Kaneb did not file a

9  proof of claim.  The only way that they're going to get any

10 recovery on this environmental liability is if they ultimately

11 find insurance coverage somewhere.

12         Although I am sympathetic to their position, I know

13 that the EPA has set up a mediation for later this summer to

14 discuss the responsibilities of the various parties with

15 respect to the Otis Pipeline, but the debtor and the insurance

16 carriers, and the Asbestos Creditors' Committee are all very

17 focused, Your Honor, right now in getting the plan confirmed.

18 And under those circumstances, lifting the automatic stay to

19 permit Kaneb to pursue Continental Casualty or the debtors'

20 other insurers, for that matter, would be a tremendous

21 distraction and, truly, there is no justification for doing so

22 right now.

23         THE COURT:  Would the same parties from the debtor,

24 both in terms of management and counsel, be involved?

25         MS. BAER:  It is, Your Honor.  In fact, the assistant

1  general counsel of Grace is responsible for the Kaneb, Otis

2  Pipeline and Macon, Georgia litigation, so it's the very same

3  person who is also, essentially, is the lawyer at Grace who is

4  responsible for overseeing the Chapter 11 case and seeing this

5  one through to confirmation.

6          THE COURT:  All right, thank you.  Who wants to speak

7  for Continental, please?

8          MS. DeCRISTOFARO:  Good morning, Your Honor.  This is

9  Elizabeth DeCristofaro.  Perhaps -- Your Honor, I'll just

10  reserve -- I think the debtor covered a number of points and we

11  argued this before, so I'll just reserve a little time after

12  Kaneb argues.

13          THE COURT:  All right.  Anyone for Seaton and One

14  Beacon?

15          MR. BROWN:  Your Honor, this is Michael Brown, can

16  you hear me?

17          THE COURT:  Yes.

18          MR. BROWN:  Okay.  Just one point of clarification.

19  Seaton and One Beacon, Your Honor, are distinct companies.  I

20  think sometimes they tend to be glommed together.

21          We agree, obviously, with the debtor that there is a

22  contractual indemnity obligation on the part of the debtor with

23  respect to One Beacon.  With respect to Seaton, under its

24  settlement agreements, there is not a contractual indemnity

25  provision in the applicable agreement.  I should say, though,

1 in the interest of full disclosure, that we have some concerns

2 on behalf of Seaton that may give rise to other types of claims

3 under the Seaton Uniguard agreement that pertains to this

4 particular policy and those claims, if they are valid claims,

5 may arise as against two signatories to the agreement which we

6 believe to be Fresenius and Sealed Air.  I'm not saying that

7 the claim by Kaneb would necessarily give rise to a claim, but

8 it may give rise to a claim against those non-debtors and

9 that's something that we've been exploring.

10        On the actual motions themselves, filed by Kaneb

11 seeking a lifting of the stay, we have not taken a position and

12 we don't have a position on that particular issue, Your Honor,

13 either on behalf of Seaton or One Beacon.

14        THE COURT:  All right, thank you.  Anyone else before

15 I turn to Kaneb?

16                    (No audible response)

17        THE COURT:  Okay.  Who is arguing for Kaneb, please?

18        MR. GILBERT:  Your Honor, this is Robert Gilbert

19 arguing on behalf of Kaneb.

20        THE COURT:  Mr. Gilbert, are you on a speaker phone?

21        MR. GILBERT:  I -- head phones.  Hang on, Your Honor.

22 Your Honor?

23        THE COURT:  Yes.

24        MR. GILBERT:  Yes, is that better?

25        THE COURT:  Yes.

1          MR. GILBERT:  Yes, I apologize for that.  On behalf

2   of Kaneb, the issue before the Court emanates directly from the

3   automatic stay that's provided under Section 362(a) and there

4   are two objectives under that provision that are spelled out

5   right in the statute, that are relevant here.

6          The first is to prevent the commencement or

7   continuation of actions against the debtor, and the second is

8   to protect property of the estate.  I think we've established

9   that what Kaneb is pursuing are its own rights under these

10  policies and that because of the absence of aggregate limits

11  under those policies, there is no sense, in any way, in which

12  Kaneb's pursuit of these insurance rights can impact any

13  property of the estate.

14          THE COURT:  Well, there can if there are indemnities

15  that have been given as to settled policies.

16          MR. GILBERT:  The indemnity raises a different set of

17  issues, which we can address.  But, the policies themselves, if

18  we recover under the policies, we do not reduce the amount of

19  coverage that's available under those policies.  So, I will

20  talk about these.

21          THE COURT:  I'm not sure that's the issue, though,

22  with respect to the indemnities.

23          MR. GILBERT:  With respect to the indemnities, the

24  issue that's now being raised really goes to the first concern

25  of the automatic stay which is preventing the commencement of

1    actions against the debtor, and the issue is, will the lift

2    stay relief that Kaneb is seeking, not that the insurers are

3    seeking because they have not sought any relief to pursue the

4    debtors, it's what Kaneb is seeking, will that cause the

5    commencement of actions against the debtor and if so, is this

6    something that should require denial of the relief.

7            Ostensibly, the whole reason that we are here in the

8    first place today, for a continuation, was because during the

9    last hearing on April 1st, I described to you the confidential

10   settlement agreement that had been provided and counsel for CNA

11   said, wait a second, he misrepresented what those agreements

12   said and the Court quite correctly said, well, okay, let me

13   look at the agreements and let's have supplemental briefing

14   directed at what the agreements say, and that's what Kaneb did.

15   We did address the agreements and I think it's now clear that

16   what I said on April 1st is accurate.  There's only one

17   agreement that creates an actual indemnity obligation that

18   would arise out of what we're trying to do and that's the One

19   Beacon policy.  It's an excess policy that was issued in the

20   first year for $5 million in coverage for defense and indemnity

21   costs.

22           With respect to the Continental settlement

23   agreements, there were two agreements that were examined.  The

24   only possible indemnity obligation that arises would be with

25   respect to gradual pollution limits, and we spent a lot of our

1    supplemental briefing going through and citing chapter and

2    verse, which Continental did not dispute.  The Hatco claim

3    creates an indemnity, that's not implicated here.  The Hatco

4    site is not at issue.  The release of all environmental claims

5    did not create an indemnity because by its terms, coverage for

6    environmental claims is released only to the extent that W.R.

7    Grace has the legal capacity to bind such entities, and on the

8    date of that agreement, which was December 14th, 2004, Grace

9    had no legal capacity to bind Kaneb.

10              So, the only thing as to which there was a live

11    indemnity claim was with respect to the gradual pollution limit

12    claims.  And as set forth at the oral argument, as well as in

13    the proposed order that we submitted with our supplemental

14    brief, we have stipulated that we are not seeking relief from

15    the lift stay -- relief through the lift stay motion to pursue

16    gradual pollution limit claims.

17              So, really, the key thing that Ms. Baer said to you

18    in her portion of the argument, is that they disagree with what

19    Continental is saying and we disagree with what Continental is

20    saying, but we don't have to resolve today, whether Continental

21    is correct or not, because Continental has not sought

22    permission from the Court to pursue an indemnity claim against

23    the debtors and they would have to do so under Section 362(a).

24    And in order to do that, they would have to sign a pleading

25    under penalties of perjury, and under applicable Rule 11

1 principles, setting forth the basis why they believe that they

2 had a valid claim for indemnity and that it would be

3 appropriate at this time to cause what Ms. Baer has described

4 as great confusion and great distraction, and pursue a claim

5 that, by all accounts, would be frivolous.

6　　　　They've had two opportunities now in briefing and two

7 opportunities in oral argument, Continental has, to lay out a

8 theory on which they would have an indemnity claim against the

9 debtors.  It's one thing for them to say, vaguely, yeah, we

10 would have an indemnity claim and we have a view the debtors

11 contest about what this applies to, but Your Honor actually has

12 the agreements and Your Honor actually has briefing that by

13 order was supposed to be directed towards those agreements to

14 identify what the indemnity obligations would be.

15　　　　Everyone agrees, the principle target in this

16 insurance case is the Continental policies.  But, neither

17 Continental nor the debtors, has laid out to you any indemnity

18 obligation that actually would be implicated by those

19 agreements, that would even give rise to the first thing that

20 would have to happen, which is a motion by Continental for

21 permission to pursue an indemnity claim.

22　　　　So, that circles us back to what Section 362(a) says

23 about an automatic stay, which is that the purpose of it is to

24 prevent actions against the debtor.  If Kaneb goes after these

25 insurance companies, as it proposes to do, we've identified the

1  insurers and the policies and the claims, that will not result

2  in debtor being brought into the litigation, under any theory,

3  unless something else happens, which nobody has proposed to do,

4  which is to bring debtors in on a current basis, into those

5  actions.  We don't think there's any valid basis for

6  Continental to do so.  And with respect to the One Beacon

7  policy, that settlement agreement provides that One Beacon

8  itself is able to control the coverage positions that are being

9  taken in litigation, therefore, there would be no basis for

10  debtor to have to come in on a current basis to do anything in

11  that case.  One Beacon would be controlling the decisions that

12  are being made with respect to coverage.

13        So, the only thing debtor, ultimately, would have to

14  do would be to make good on the $5 million policy limits, plus

15  repay any attorneys' fees and expenses that were incurred by

16  One Beacon's attorneys and those would probably be small, One

17  Beacon would be one of 57 -- one of 19 insurers, one of 57

18  carriers, and an excess carrier at that.

19        But, this is a full paid plan, Your Honor, and,

20  therefore, at some point debtor will have to pay that money, at

21  some point this coverage action will go forward.  It's not as

22  if there's something that they're going to avoid paying by

23  having this motion denied.  The only thing that will happen to

24  them is that at some point an indemnity claim is brought by One

25  Beacon, but they do not have to be part of this litigation.

1             I'd like to address specifically some of the

2  arguments that were raised by the debtors and by the insurers

3  in their brief.  Again, the supplemental briefs were not

4  supposed to be directed at new argument.  That's kind of what

5  happened, and we have not addressed those in writing, I'd like

6  to very quickly go through those.

7             The first is, that there would be excess

8  entanglement.  The excess entanglement and distraction are

9  inevitable.  The question is really, how would that be?  I've

10 gone through how the indemnities just don't -- or the

11 settlement agreements don't create those indemnities.

12            The second thing that they argue is that there are

13 some unidentified other insurers who would assert indemnity

14 claims under settlement agreements that supposedly are out

15 there.  With respect, Your Honor, this claim has no factual

16 basis for it.  Since January, debtors have known the identity

17 of every single policy and every single insurer that Kaneb

18 intends to pursue, they've come forward with only two insurers

19 that even arguably have indemnity obligations.  They've had an

20 opportunity to submit to the Court, under seal, any other

21 settlement agreements they believe to be applicable.  It's

22 impossible for anybody, for Kaneb or for the Court, to even

23 comment on an allegation that there are other indemnity claims

24 out there.

25            And there's a new case that came down on June 10th of

1  this year, in the Lyondell Chemical bankruptcy, out of the

2  southern district, involving another effort by a third party to

3  the bankruptcy, to lift the stay for purposes of pursuing a

4  claim against another non-debtor.  And in that case, the court

5  rejected a claim by the debtor that they would be excessively

6  entangled in any litigation between two non-debtors, by looking

7  very specifically at the evidentiary record provided by the

8  debtor and saying, you know what, these affidavits don't get

9  you over the hump, you have to come forward with record

10 evidence, admissible evidence, that's competent to show that

11 you would be excessively entangled.  And even in that case,

12 where several affidavits were submitted, the court said, you

13 haven't gotten over the evidentiary hump of showing that you

14 would be excessively entangled in these third party actions.

15          But, if you look at Lyondell -- that's on Pages 19

16 through 21, I've provided the authority to opposing counsel and

17 we'll submit that to the Court, as well -- but if you look at

18 Lyondell Chemical and then compare it to this case, in this

19 case there are claims that people would be involved, there are

20 claims that the team the debtors have involved in this

21 bankruptcy would be the exact people who would have to be

22 involved in the theoretical involvement of debtors, in an

23 indemnity claim that hasn't been brought, but there's no

24 affidavit to prove that, there's no affidavit that allows the

25 Court and Kaneb to evaluate whether they're really being

1 accurate and complete in describing the amount of entanglement

2 that they claim they would have.  They just don't have the

3 evidentiary record to prove that they would be implicated by

4 the claim by Kaneb against the insurers.

5        And so, their argument, where they say, "Debtors

6 unavoidably would be involved in any coverage litigation," just

7 doesn't hold up.  The following facts are undisputed.  These

8 are Kaneb's rights under the policies, not debtors'.  Kaneb has

9 separate rights.

10       THE COURT:  Well, that's an issue.  I'm not sure, in

11 having looked at the policies, I can't see Kaneb named

12 anywhere, based on the date at which the debtor and Kaneb

13 formed their relationship, which I believe was in 1995.  It

14 appears that, perhaps, one policy in the event that there's a

15 construction that says that Kaneb is somehow covered under that

16 policy may be involved, but I can't see anything in the

17 policies that names Kaneb.  So, the issue of whether Kaneb has

18 rights under those policies, itself, is contested and I think

19 that the debtors, as the insureds under the policies, are

20 clearly the entity that will be implicated.  I don't know that

21 I need an affidavit in construing the insurance policies that

22 way.

23       MR. GILBERT:  But, Your Honor, I would suggest this.

24 We went to the effort in our initial filing with the Court, of

25 putting in the precise language from each of the policies that

1  identify who the named insured was --

2          THE COURT:  Yes.

3          MR. GILBERT:  -- and the language varied a little

4  bit, but, in essence, what the language said was, Grace, all

5  the subsidiary corporations, subsidiary and affiliate

6  corporations are now or hereafter constituted.  They have not

7  argued --

8          THE COURT:  But, I think you've lost that issue in

9  the state court.  I mean, that's not an issue that I'm going to

10 take up, but I understand that there may be an appeal, but

11 that's, I think at this point in time, Kaneb has lost that

12 issue, at least with respect to where the obligation to satisfy

13 certain claims is, isn't it?

14         MR. GILBERT:  I'm not sure how we've lost the issue.

15 We've demonstrated we provided the corporate history of Kaneb.

16 Kaneb acquired Standard Transpipe which, itself, had been a

17 Grace subsidiary and, therefore, would fall under the

18 definition of who is an insured.  There was a merger --

19         THE COURT:  But, that was in 1995, correct?

20         MR. GILBERT:  That was in 1992, I believe.

21         THE COURT:  Okay, I thought it was '95, all right.

22         MR. GILBERT:  Okay.  It was some time in the early

23 90s.  But, there was a merger transaction where the subsidiary

24 of Grace, which falls within the definition of named insured,

25 is merged into Kaneb.

1          THE COURT:  Oh, maybe that was the 1995.

2          MR. GILBERT:  And so by that merger, Kaneb succeeds

3  to the rights that the subsidiary, the Grace subsidiary, that

4  they acquired, had under the policies.

5          In any event, Your Honor is correct, it's not

6  something that has to be decided by this Court.  It can't be

7  decided by this Court, it's something that is raised in the

8  form of an affirmative defense.  I just got done arguing the

9  exact issue in Los Angeles with respect to another very

10 complicated corporate succession issue.

11         THE COURT:  But, the point is, that the debtor is the

12 entity, if it's contested, who has to argue against Kaneb's

13 construction of the policy and its rights under the policy.

14         MR. GILBERT:  That's not correct, Your Honor.  And

15 that's not how it came down in the large Rockwell case either.

16 In that case, Rockwell, a new Rockwell had been created, the

17 old Rockwell became Boeing.  The insurers disputed that the new

18 Rockwell was an insured under these old policies.  Boeing was

19 not present in the courtroom for any of that.  It was a dispute

20 between the insurers and the party claiming to have rights

21 under the policy.

22         Because the way it comes down in this sort of

23 litigation, Kaneb sues, the insurers assert an affirmative

24 defense that you're not an insured under the policy, it's

25 Kaneb's burden to demonstrate that they're an insured under the

1 policy, it is not necessary for the asserted owner of the

2 policies to be present to do that.

3        THE COURT:  Well, but these are still -- I think it's

4 undisputed that these are Grace's policies, therefore, it's

5 property of Grace's estate.

6        To the extent that Kaneb contends that it's an

7 insured under these policies, this doesn't just implicate the

8 debtor, it implicates assets of the estate and Kaneb hasn't

9 filed a proof of claim.  I just don't see whether under this

10 set of circumstances, at least at this point in time, relief

11 from stay is appropriate.  It may be that -- it may be, I'm not

12 making findings, it just simply may be, one way or the other,

13 that Kaneb is correct, that at some point there will be

14 litigation over this.  But, the issue is, why does it have to

15 be now when it's been eight years in this case and Kaneb hasn't

16 filed a proof of claim and this clearly implicates assets of

17 the estate?

18        So, I just don't see at this point the need for

19 pursuing it now.  I looked at the policies to see whether Kaneb

20 was a named insured and it's not.

21        MR. GILBERT:  Well, Kaneb couldn't possibly be a

22 named insured, Your Honor.  Kaneb was a stranger to all this

23 until it acquired and merged into itself one of the named

24 insureds.

25        THE COURT:  Well, and I thought that the issue to

1 whether or not the merger was complete, itself, was in dispute,

2 according to what some -- I don't remember who, I'm sorry --

3 argued at the last hearing.

4          MR. GILBERT:  But, Your Honor, these are issues that

5 are classic insurance coverage issues.  For us to have to --

6          THE COURT:  Well, they still may be -- they may be

7 but they're also issues that the debtor is concerned with

8 because the debtor intends to transfer the insurance policy

9 rights to an asbestos trust for payment to a certain class of

10 creditors, and Kaneb is not a creditor, it's not filed a claim.

11          So, to the extent that Kaneb is now going to

12 implicate the debtors' property, in addition to an action

13 against the debtor at this time, I simply don't see why that's

14 appropriate right now.

15          MR. GILBERT:  Well, I think you've identified two

16 issues and I'd like to briefly address both of those.

17          The reason that it's of high moment right now, is

18 because the Department of Justice is pursuing a $72 million

19 claim that will result in litigation and it will probably

20 result in litigation not just against us, but against debtors,

21 if it's not resolved in mediation this summer.

22          In fact, debtors have voluntarily started

23 participating in the mediation.  The problem is, how do you get

24 the insurers to participate in the mediation.  And there's no

25 way to accomplish a successful mediation without insurers

1 present, and there's no way to get insurers present without

2 having an actual coverage claim being pursued against them.

3 So, that's why it's critical.

4         We understand Your Honor's concern with respect to

5 the Macon site and there's nothing nearly so exigent happening

6 at this exact moment.  But, with respect to the Otis Pipeline

7 site, the action is happening here and now.  In fact, an

8 attorney from the Department of Justice is on the phone right

9 now, listening to see how this is going to turn out.  So, when

10 Your Honor says, why is it necessary to happen now, the reason

11 is, the mediation is happening now.  Linda Singer has been

12 appointed the mediator, she's in the process of organizing

13 plenary sessions with each of the interested parties; Sampson,

14 debtors, the Department of Justice, and Kaneb.  It's going to

15 culminate this fall in a plenary mediation session.

16         THE COURT:  But, this isn't stopping Kaneb from

17 participating in a mediation.  All it's doing is asking for an

18 opportunity to essentially force the debtor in by virtue of

19 Kaneb, then bringing some action against the debtor or claim

20 under the debtors' policy.  There's nothing that prohibits

21 Kaneb from participating in the mediation on its own.

22         MR. GILBERT:  No, and we are not arguing that this is

23 necessary for Kaneb to participate, we're arguing that it's

24 necessary to get meaningful involvement from the insurers.

25         Just listening to the agenda today, it's clear that

1  practically every issue before the Court, in some important

2  way, involves insurance coverage.  It's no different in trying

3  to resolve the Department of Justice claims that are being

4  brought against Kaneb.  And if we don't have the insurers

5  involved, then it's unrealistic to expect the mediation to be

6  successful and that, in the end, will re-down to the detriment

7  not just of Kaneb and the Department of Justice and Sampson,

8  but also ultimately to the debtors.

9           THE COURT:  Well, that's debatable.  I mean, that's

10 the proposition that the debtor is advancing which is what is

11 debatable and that is whether or not it will re-down to the

12 detriment of the debtor or any insurer because of the issue of

13 coverage.  So, to get the insurers to mediation, clearly if the

14 insurers believe at this point that they've got some liability

15 somewhere down the line, regardless of how it's going to come

16 up, it would be advisable for them to participate in this

17 mediation.  But, the issue with respect to the debtor, I think,

18 is simply a different, slightly different -- presented in a

19 slightly different posture and that is, there is no claim filed

20 against the debtor as to one of the issues that are raising and

21 the Court has already disallowed the claim as to the other on

22 behalf of Kaneb.

23          MR. GILBERT:  Yes, but the absence of a claim against

24 debtors is a red herring with respect to rights that Kaneb has

25 against the insurers.  And that brings to the second -- to the

1 fore the second issue which is what I think is another obvious

2 red herring which is the transfer of insurance rights to the

3 asbestos properties, to the asbestos PI trust.

4        I went through and looked at those documents in

5 considerable detail because there have been some vague and

6 blanket assertions about what's actually happening.  In fact,

7 the asbestos insurance transfer agreement is between what are

8 defined as insurance contributors in the asbestos PI trust.

9 That's at Page 1 of the transfer agreement.

10        The transfer agreement provides that the defined

11 terms shall have the same meanings given to them in the plan,

12 itself.  And the insurance contributors are defined in the plan

13 at Page 26 and in the agreement at Page 1, as any of the

14 debtors, the reorganized debtors or the non-debtor affiliates

15 identified in Exhibit 16.  Well, neither Kaneb Pipeline

16 Operating Service Partnership, nor Support Terminal Services,

17 is either a debtor or a reorganized debtor, and neither of them

18 is named as a non-debtor affiliate in Exhibit 16.  None of them

19 are insurance contributors, none of their separate rights under

20 the policies are being contributed to the asbestos PI trust.

21        There's an aura that surrounds insurance litigation,

22 but it's really not that complicated.  Kaneb claims to have

23 rights under these policies.  They claim to have them against

24 insurance companies, not against debtors.  They claim to have

25 their own separate rights.  The insurance companies, in the

1   first instance, are going to look at that and say, yes, you do

2   have rights under the policy, let's determine what they are, or

3   no you don't, let's have discovery, let's have motion practice

4   and let's determine if, through these merger transactions, you

5   succeeded to the rights of Standard Transpipe.  That's all that

6   happens.  The debtors would be complete strangers to that.

7   They don't have to be involved in those discussions, in that

8   litigation, because it's simply a claim by Kaneb against

9   insurance companies.

10          If the insurance companies believe that they have

11  indemnity rights out of these settlement agreements -- and

12  remember, that's what the supplemental briefing was supposedly

13  about -- if they believe they have them, identify what they

14  think those indemnity rights are.  Continental was unable to

15  come up with anything.  Gradual pollution limits have been

16  stipulated out of the relief that we're seeking.  There's

17  nothing else there even conceivably implicating an indemnity

18  right against the debtors.

19          So, then it comes down to only one policy, an excess

20  policy, for relatively low limits, in the very first year of

21  the coverage program, the One Beacon policy.  That's the extent

22  of even the theoretical involvement that the debtors would

23  have, and even that would not happen and even that would not

24  create distraction for the debtors unless this Court were to

25  issue further relief allowing the insurance companies to go

1  forward with their own claim against the debtors.

2          That's the choke point.  That's the point at which

3  the Court can say, no, we're not going to distract the debtors,

4  but that doesn't have to happen at this point.  It's only if

5  the insurance companies decide they do have a valid indemnity

6  claim and do persuade the Court that it would be appropriate to

7  pursue their indemnity claim at this point.

8          THE COURT:  All right.  What do I have in the way of

9  an affidavit or some declaration or something from the insurers

10 that indicates that, in fact, there is an indemnity claim that

11 can or will be pursued in the event that this litigation goes

12 forward?  Ms. DeCristofaro?

13         MS. DeCRISTOFARO:  Yes, Your Honor.  There's a number

14 of things with which I disagree and I'll try to limit it to.

15 But, with respect to our claim, as Your Honor knows, we've

16 spent a number of years litigating gradual pollution claims and

17 generally all of the claims involving the debtors' property

18 involve gradual pollution and we have two settlement

19 agreements, one of which was approved by Your Honor.

20         We think that we put forward the prima facie case,

21 and they have not disputed it, that this is a long term

22 pollution claim.  Part of our issue is that we fought very hard

23 and we negotiated a long time, two different settlement

24 agreements.  The first settlement agreement gave us an

25 indemnity that we think gives us an indemnity as to all gradual

1 pollution claims.  It arised (sic) in the earlier settlement

2 agreement before the Court and vis-a-vis Grace, we think we

3 have an indemnity claim and, if fact --

4        THE COURT:  But, my question was, what evidence do I

5 have of it, not just what you think and not just want your

6 construction of the policy is, what's before me by way of

7 evidence, that will (indiscernible) this issue?

8        MS. DeCRISTOFARO:  It's the 1997 settlement agreement

9 submitted to Your Honor.

10        THE COURT:  So, I have no affidavit that indicates

11 that in the event that relief from stay is granted, CNA is

12 going to file some indemnity claim against the debtor if it's

13 unsuccessful and defeat the --

14        MS. DeCRISTOFARO:  Your Honor, we -- I'm sorry.  We

15 have a proof of claim pending with respect to all of our

16 indemnities relating to the settlement agreement.  We would

17 amend that proof of claim to add this in.

18        THE COURT:  All right.

19        MS. DeCRISTOFARO:  And the other points simply are

20 this.  Although there is a discussion that the primary is most

21 significant, as Your Honor will see before you in the insurance

22 policies, the primary policies only provide one million per

23 occurrence.  In our view, if you look at the terms, the most

24 they can get from the primary policy is 2.5 million, even if

25 you accept all their arguments, which we dispute.  That means

1  $73 million implicates the excess, five of which clearly has

2  indemnity as they concede.  And, the insured, Grace, would have

3  to defend one of the insurers for indemnity.

4            THE COURT:  Well, maybe.  That's the problem, I

5  think.  I mean, the issue is, whether the debtor does or

6  doesn't have to defend as to the indemnity, but I agree that

7  that is an issue that the coverage courts would have to be

8  looking at, not this court.  And my concern is, Kaneb has not

9  filed a proof of claim, or the one that was filed was

10 disallowed by this Court, and so, I'm just simply not sure at

11 this stage of this litigation, why it's significant that it go

12 forward now.

13           But, to the extent that the insurers may, in fact,

14 have some liability to -- I'm not sure whether the settlements

15 include all of the subsidiary entities of Grace or not.  I

16 guess that's the first question.  I'm hearing from Grace and

17 from CNA that they believe that all of the subsidiary entities

18 are covered in the settlement, is that correct?

19           MS. DeCRISTOFARO:  Your Honor, we would also point

20 you to the Insurance Procedures Agreement which was attached to

21 Ms. Baer's February objection and is Exhibit A.  It's called

22 the Insurance Procedures Agreement.

23           THE COURT:  All right.

24           MS. DeCRISTOFARO:  There's a Paragraph 7 that says

25 that, among other things, that W.R. Grace shall have the right

1  to direct the investigation, negotiations, and if implicable

2  (sic), the defense of such claim, and to settle or otherwise

3  dispose of such claim with the insurance companies.  I think

4  that provision also raises an issue of whether Kaneb would be

5  bound by the settlements that were entered into by

6  W.R. Grace.

7           THE COURT:  Well, I think the issue with respect to

8  the settlement --

9           UNIDENTIFIED MALE SPEAKER:  Your Honor, while we're

10  on that subject, may I address the insurance --

11          THE COURT:  -- I believe the position with respect to

12  the debtors' authority is correctly stated by Kaneb.  The

13  debtor can only bind an entity for which it can lawfully speak.

14  To the extent that it can speak for one of its subsidiaries, it

15  clearly can bind it, but if Kaneb isn't a subsidiary, it can't

16  bind Kaneb, can it?  Kaneb is not a party.

17          MS. DeCRISTOFARO:  Unless Kaneb gave it the right to

18  settle under this agreement.

19          THE COURT:  Well, I mean, I don't have any evidence

20  of that.

21          MS. DeCRISTOFARO:  No one --

22          MR. BROWN:  Your Honor, this is Michael Brown.  I

23  mean, that's a coverage issue.  I think that that particular

24  issue that you identified would be hotly contested, but

25  obviously there would be -- Kaneb's position would be that

1  they're not bound and I think the insurer's position would be

2  that they would be bound and that would, obviously, be a hotly

3  contested issue in the coverage litigation.

4           MS. DeCRISTOFARO:  And I agree with that, with Mr.

5  Brown.

6           THE COURT:  All right.

7           MS. DeCRISTOFARO:  Your Honor, the only -- I know

8  Your Honor wanted to limit this argument and I don't want to

9  repeat everything Ms. Baer said, but we do consider that the

10 debtors would be at the heart of this claim, not only under all

11 the issues raised by the insurance procedures agreement, by

12 issues raised by policy, by issues raised by the settlement

13 agreement, we think that we have put forward, both in terms of

14 the additional evidence we submitted and by the terms of our

15 settlement agreement, a proper claim.  We do have a pending

16 proof of claim against the debtor which reserves our right to

17 go against the debtor for all of the indemnities they've given

18 us.

19          As we've also pointed out, and Your Honor noted and

20 already remarked, there is a coverage action pending prior to

21 this litigation that involves the same policies.  If the debtor

22 successfully assigns that litigation to the trust, then we will

23 be litigating on the same exact terms, the same exact issues.

24

25          And then, finally, Your Honor, with respect to the

1   keynote issue with respect to the urgency of this, we note that

2   this has been going on a long time, we've put the settlement

3   agreement in front of Your Honor regarding all these issues,

4   Kaneb never came forward about anything.  A coverage litigation

5   would be no way resolved in two months.  We think that this

6   claim falls within our settlement agreement, that coverage is

7   exhausted and done.  I think all of the issues, the preliminary

8   issues involving the debtor immediately and the fact that a

9   coverage litigation would in no way be resolved in 60 days,

10  obviates that issue entirely.

11         I think they have the burden of proof to show there's

12  no impact on the estate.  I think there are so many different

13  ways in which the debtor would be involved in this, both from

14  the corporate transactions, from the terms of the agreements,

15  from the terms of the settlement agreements, from the operation

16  of the pipeline, all of it puts the debtor at the center of

17  this whole matter, and for those reasons, we think for at least

18  the moment, Your Honor should deny the motion to lift the stay.

19         MS. BAER:  Your Honor, it's Janet Baer on behalf of

20  the debtors.  I wanted to just highlight one thing that nobody

21  else really talked about that Mr. Gilbert said very early on in

22  his argument that's extremely significant in considering this

23  motion.

24         Kaneb is seeking to lift the automatic stay with

25  respect to all of the insurance policies that potentially

1  covered the debtor at the time involved, not just CNA and One

2  Beacon.  And, in fact, Mr. Gilbert early on said, oh, the One

3  Beacon policy is only one of 19 policies.  Your Honor, he's

4  right.  We keep talking about One Beacon and Seaton, but he

5  seeks to pursue 19 of Grace's insurance carriers.

6       Mr. Gilbert argued that Grace had not submitted as

7  part of its submissions here, any of the other settlement

8  agreements.  Your Honor, we pointed it out very early on that

9  Exhibit 5 to the Chapter 11 plan was, in fact, a listing of all

10 of the policies that had been settled.  If you compare Exhibit

11 5 to the listing of policies that Mr. Gilbert had listed, a

12 number of them are policies that are settled and do have

13 indemnity agreements.  We can't produce those to Mr. Gilbert,

14 and we've indicated this.  Those are all subject to

15 confidentiality restrictions.  The debtor can waive its rights,

16 and has, in the protective order that's before the Court, but

17 the insurance carriers that are involved have not waived

18 confidentiality.

19      Mr. Gilbert knows who those carriers are.  I, to the

20 best of my knowledge, have never seen that he pursued discovery

21 to get those other settlement agreements.  But, Your Honor,

22 lifting the stay here, in addition to all of the things we've

23 already talked about in terms of adverse impact on the debtor,

24 also would highly adversely impact the debtor because he wants

25 to pursue all of these people, many of whom have indemnity

1 claims against the debtor, not just CNA.

2          MR. GILBERT:  Your Honor --

3          THE COURT:  All right.  Why hasn't the debtor filed

4 an affidavit with respect to the impact?

5          MS. BAER:  Excuse me, Your Honor, I didn't hear the

6 first part of what you asked.

7          THE COURT:  I'm asking why the debtor has not

8 submitted an affidavit with respect to the impact that this

9 would have on the debtors' management and plan confirmation

10 process?

11          MS. BAER:  Well, Your Honor, we certainly can, the

12 debtor has submitted now several pleadings filed by an officer

13 of the court, on behalf of the debtor, that says exactly that.

14          THE COURT:  That's -- but that's not an evidentiary

15 submission that the Court can consider.

16          MS. BAER:  I mean, we can certainly provide that,

17 Your Honor, if we need to do that to complete the record.

18          THE COURT:  All right.  Mr. Gilbert, go ahead.

19          MR. GILBERT:  Yes, I was just going to say, all of

20 this presupposes that the carriers are then going to turn

21 around and ask Your Honor for permission not just to file a

22 proof of claim, which they've done, that will be decided in the

23 ordinary course and will be resolved because of the full pay

24 nature of this plan, but that they'll seek relief from stay and

25 that's really --

1          THE COURT:  Well, they may not need it, Mr. Gilbert.

2   The issue is, they may not need relief from stay to pursue the

3   indemnity.  To the extent that the indemnities are already

4   raised in the proofs of claim, then they're there.  And the

5   insurers have already asserted, even though it may at this

6   point be a contingent claim because there isn't anything fixed

7   that would prompt that liability on behalf of the debtor, to

8   the extent that a proof of claim is filed, it's there, they've

9   raised their rights.  And to the extent that they have to amend

10  it to assert some different liability based on some action that

11  hadn't been contemplated, they probably have the right to do

12  that.  The problem here is that Kaneb has no proofs of claim

13  against the debtor.  So, starting with the very fundamental

14  issue as to how someone else with an indemnity, based on

15  something that Kaneb may do, can file a proof of claim when

16  Kaneb hasn't done so, is somewhat problematic.

17         So, they preserve the rights that they assert and to

18  the extent that there's a different right that pops up later

19  that's subject to the proofs of claim, then at that point they

20  may be able to amend to assert it.  But, I don't -- that's only

21  part of the issue.  I think the issue really at this point is

22  what I went back to before, this case is over eight years old.

23  There were settlements that were brought before the Court.

24  Kaneb didn't participate in or object to those settlement

25  agreements.  At this stage with the plan confirmation hearing

1  having started last week, I'm just simply not convinced that

2  this is the time to put any kind of a monkeywrench into this

3  issue.

4       And if Kaneb hasn't brought forth any reason that I

5  can see, yes, there is a mediation that's been scheduled this

6  summer by the EPA, but that doesn't prohibit Kaneb, or the

7  insurers or even Grace, voluntarily, from participating in the

8  mediation if they so choose.

9       So, at this point I simply don't see the need to have

10  the debtor break the automatic stay, pursue litigation and if

11  the CNA policies permit the debtor to assume that litigation,

12  then they'll have to be involved.  So, it simply doesn't make

13  sense at this point, in this case, to allow relief from stay to

14  go forward.

15       The plan confirmation should be finished, hopefully,

16  by the end of the year, if not sooner, but definitely by the

17  end of the year, I simply can't see that at this point that is

18  going to cause such a serious disruption to anyone, frankly,

19  even including the EPA.  If the mediation is scheduled in the

20  summer, and the EPA wants to know what the outcome is with

21  respect to Kaneb and the insurers and Grace, it seems to me the

22  EPA isn't jeopardized by putting it off a couple of months

23  either.

24       So, I just don't see a basis for granting relief from

25  stay today.

1           MR. GILBERT:  I assume, Your Honor, this is without

2  prejudice?

3           THE COURT:  Oh, yes, yes.  It is without prejudice

4  because the reasons I'm doing it are because the plan

5  confirmation process at the moment is clearly underway.  I

6  don't think it's appropriate to have the debtor or any of the

7  other parties, frankly, distracted.  This has been a very long

8  time coming and to try to get to a confirmable plan will take

9  significant effort by everyone, as was apparent from the last

10 hearing.  And it seems to me that that should be -- when I mean

11 the last hearing, I mean the beginning of the plan confirmation

12 hearing last week.  So, that should be the main focus of

13 everyone's attention right now, and I don't believe any

14 distraction would be beneficial to this estate, the debtor, the

15 reorganized debtor or any other party in interest.

16          MR. GILBERT:  I would just request, Your Honor, that

17 before a formal order be issued to that effect, that you

18 reflect on what the actual state of the evidentiary record is,

19 because we believe that there are issues that they've raised

20 that there is no evidentiary basis for whatsoever, even after

21 these extra rounds of briefing.  I do believe that --

22          THE COURT:  Well, the only evidentiary base that I

23 don't see in the record, because most of this is based on a

24 construction of policies and the settlements that are of

25 record, and I agree, some are not, but to the extent that Kaneb

1 intends to try to pursue those, that's Kaneb's burden to come

2 forward to show where there is an entitlement.  So, to the

3 extent that they're not of record even yet, and part of the

4 reason that I deferred this was so that Kaneb could file the

5 insurance policies and settlements under which it was claiming

6 the --

7          MR. GILBERT:  Your Honor, they have been filed.  They

8 were filed, initially.  We submitted the policy language from

9 each of the policies and --

10          THE COURT:  Yes, I understand --

11          MR. GILBERT:  -- it sets forth that subsidiaries

12 were covered and we set forth the evidence --

13          THE COURT:  Mr. Gilbert, I've heard that.  I'm making

14 a ruling now.  I've heard your argument, I've denied the

15 motion, you're asking that I reconsider and I've told you why I

16 have already considered -- I'm trying to tell you why I've

17 already considered what you've asked me to consider.  But,

18 since you are not interested in hearing it, I just will deny it

19 without prejudice for the reasons that I've stated.

20          I'll take an order from the debtor, but, please, run

21 it past Mr. Gilbert first to make sure that it simply says that

22 the motion is denied without prejudice.

23          MS. BAER:  I will do so, Your Honor.

24          THE COURT:  For the reasons that I've expressed.

25          MS. BAER:  Right.

1          THE COURT:  All right.

2          MR. GILBERT:  Thank you, Your Honor.

3          THE COURT:  Anything else, Ms. Baer?

4          MS. BAER:  No, Your Honor, that's the end of the

5   agenda.

6          THE COURT:  All right, we're adjourned, thank you.

7          MS. BAER:  Thank you, Your Honor.

8          MS. DeCRISTOFARO:  Thank you, Your Honor.

9                        * * * * *

10                **C E R T I F I C A T I O N**

11

12          I, ELAINE HOWELL, court approved transcriber, certify

13   that the foregoing is a correct transcript from the official

14   electronic sound recording of the proceedings in the

15   above-entitled matter, and to the best of my ability.

16

17

18

19   /s/ Elaine Howell            Date:  July 5, 2009

20   ELAINE HOWELL

21   J&J COURT TRANSCRIBERS, INC.

22

23

24

25   (CR)

                **J&J COURT TRANSCRIBERS, INC.**