IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | |

**Hearing Date: August 24, 2009 at 10:30 a.m. (ET)**
**Objection Deadline: August 7, 2009 at 4:00 p.m. (ET)**

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING STIPULATION RESOLVING PROOF OF CLAIM NO. 13961 OF ICI AMERICAS, INC.

The Debtors respectfully move this Court (the "Motion") for the entry of an order

approving the stipulation (the "Stipulation"), a copy of which is attached hereto as Exhibit A,

resolving proof of claim no. 13961 of ICI Americas, Inc. (the "Claimant"). In support of this

Motion, the Debtors state the following:

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for this Motion are section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9019.

## Background and Proofs of Claim

3.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      On or about March 31, 2003, the Claimant filed proofs of claim numbered 13960, 13961, and 13962 (the "Proofs of Claim") relating to the obligations and liabilities of the Debtors arising from environmental contamination at the Joplin, MO Plant, the portion of the Joplin Plant leased by Claimant to Debtor (the "Leased Property"), and the separate property owned by Claimant (the "Owned Property"), all as defined in the Proofs of Claim (taken together, these properties, and any other properties contaminated or affected by contamination from those properties shall be referred to as the "Site"). The Site was primarily used for the production of NPK fertilizer (nitrogen, phosphorus, and potassium), single superphosphate, sulfuric acid and for the storage of pesticides.

5.      Each Proof of Claim asserted an unsecured non-priority claim for $10,577,000 arising from environmental response costs at the Site. Proofs of claim nos. 13960 and 13962

2

were expunged by that certain *Order Granting Relief in Debtors' Twenty-First Omnibus Objection to Claims (Substantive)*, entered on April 2, 2007 (Docket No. 15073).

6.      The parties have agreed to resolve the remaining claim on the terms and conditions stated in the Stipulation.

## Relief Requested

7.      Pursuant to the *Amended Order Authorizing and Approving An Omnibus Procedure For Settling Certain Claims And Causes Of Action Brought By Or Against The Debtors In a Judicial, Administrative, Arbitral Or Other Action Or Proceeding* (the "Amended Order") (Dkt. No. 936), the Debtors are authorized to settle claims that exceed $1,000,000 only upon separate order of the Court upon a motion of the Debtors served upon the necessary parties-in-interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

8.      Therefore, by this Motion, the Debtors respectfully seek the entry of an order, substantially in the form attached hereto as Exhibit B, pursuant to section 105 of the Bankruptcy Code, Bankruptcy Rule 9019 and the Amended Order, (i) approving the Debtors' execution of the Stipulation and (ii) allowing claim 13961 as an unsecured, pre-petition, non-priority claim against the chapter 11 estates of the Debtors in the total amount of $3,500,000, with no prepetition or postpetition interest on claim 13961 with respect to any period prior to the effective date of the Plan.

## Basis for Relief

### Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a)

9.      Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides in

pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. Pro. 9019(a).

10.    Courts generally favor minimizing litigation and expediting the administration of a bankruptcy case. See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., No. 03-10323, 2006 U.S. Dist. WL 2842462, at *3 (D. Del. Oct. 2, 2006). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Indeed, compromises are favored in bankruptcy. Martin, 91 F.3d at 393.

11.    Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See id. at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate'."). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

12.    The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. at 393; see also In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006).

4

13.    It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 1114 (citations omitted).

## Application of Standards for Approval of a Settlement to the Facts of This Case

14.    The Debtors have determined that entry into the Stipulation is in the best interests of the Debtors and their estates.    The Stipulation is fair and reasonable, and is within the reasonable range of litigation possibilities.

15.    The Stipulation provides a final resolution to what began as three separate proofs of claim totaling in excess of $30,000,000.  Even after two of the three claims were expunged as duplicative, the Stipulation settles what is a potential $10,577,000 claim for a sum certain of $3,500,000, capping liability at a far lesser amount than claimed and giving the Debtors certainty with respect to a site that continues to incur ongoing remediation costs.

16.    The Debtors have spent a substantial amount of time and resources reviewing their potential liability with respect to the Site.  After this review, the Debtors began negotiations with the Claimant regarding the claim 13961.  While the Claimant sought a significantly higher settlement amount, including the possibility that the Debtors would be liable for ongoing remediation costs in the event that the costs of remediation prove to be higher than anticipated, the Debtors were able to cap their liability, including future liability, at the sum of $3,500,000. The Debtors' environmental experts believe that the settlement amount of $3,500,000 with

5

respect to the Debtors' potential liability at the Site represents a benefit to the estate and is a fair and reasonable settlement amount.

17.     In addition, the Debtors successfully negotiated with the Claimant so that the Stipulation does not allow for any pre-petition or post-petition interest, unlike other general unsecured claims as currently contemplated in the Debtors' proposed plan of reorganization. The agreement to avoid paying postpetition interest on claim 13961 provides an additional significant cost savings to the Debtors' estates.

18.     Furthermore, as noted above, the Stipulation allows the Debtors to avoid potential additional or increased obligations.  The Stipulation will preclude any future claims, liabilities, and obligations relating to claim 13961 and the Site and will constitute a final resolution of the Debtors' liability relating thereto.

19.     Finally, approval of the Stipulation benefits the public.  Approval of the Stipulation will support the remediation of the Site and provide additional funding for the Claimant to complete remediation of the Site.  Clearly, the resolution of environmental claims at the Site and support for the remediation of sites serve the public interest.

20.     For the above reasons, the Debtors believe that the Stipulation represents a reasonable settlement of claim 13961 and the Court should approve the Stipulation.  The Stipulation is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest.  In addition, the Debtors reasonably believe that the relief requested in this Motion will aid in the expeditious resolution of these Chapter 11 Cases. Accordingly, the Debtors have demonstrated a sound business justification and public interest for the execution and consummation of the Stipulation.

6

## Notice

21.     Notice of this Motion has been given to:  (i) the office of the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in these Chapter 11 Cases, (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) counsel to the Claimant.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

7

WHEREFORE, the Debtors respectfully seek the entry of an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Debtors' execution of the Stipulation, (ii) allowing claim 13961 as an unsecured, pre-petition, non-priority claim against the chapter 11 estates of the Debtors in the total amount of $3,500,000, with no prepetition or postpetition interest on claim 13961 with respect to any period prior to the effective date of the Plan and (iii) granting such other relief as may be appropriate.

Dated: July 8, 2009

KIRKLAND & ELLIS LLP
Theodore L. Freedman
Christopher T. Greco
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
70 W. Madison St.
Suite 2100
Chicago, IL 60602
(312) 641-2162

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

8