IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br><br>(Jointly Administered)<br><br>**Ref. Nos. 19803, 20313, 20872, 21811 and 21859** |

### SUPPLEMENT TO LIBBY CLAIMANTS' OBJECTION TO FIRST AMENDED JOINT PLAN OF REORGANIZATION

Claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, hereby submit this supplement to the Libby Claimants' Objection to the First Amended Joint Plan of Reorganization dated May 20, 2009 [Docket No. 21811] (the "Objection"). In addition to the arguments set forth in the Objection, the Libby Claimants assert the following additional objections to the Plan:

### I.   TDP Medical Criteria

In the Objection, the Libby Claimants identify numerous defects in the TDP, many having to do with the discriminatory medical criteria. In its present form, the TDP operates to exclude legitimate Libby Claims by creating disease and diagnostic criteria that are not consistent with standard practice in medicine.[2] In addition to the TDP medical criteria objections specifically identified in the Objection, the Libby Claimants assert that (1) the TDP criteria for "Severe Asbestosis" and "Severe Disabling Pleural Disease" is discriminatory because the TDP

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 21365], as it may be amended and restated from time to time.

[2] Objection, pp. 27-33.

improperly (a) requires an FEV1/FVC[3] ratio of over 65% and (b) excludes the use of CT scans; and (2) the TDP medical criteria arbitrarily exclude patients with unilateral disease.

### A. The TDP Medical Criteria for "Severe Asbestosis" and "Severe Disabling Pleural Disease" is Discriminatory

#### 1. The requirement that the FEV1/FVC ratio be over 65% discriminates against patients who have obstructive disease along with restrictive disease.

The TDP uses forced vital capacity (FVC) as a measure of severity of asbestos disease in both severe pleural (Level IV-B) and moderate asbestosis/pleural disease (Level III). But the TDP qualifies use of FVC at Level IV by also requiring an "FEV1/FVC ratio greater than 65%."[4] The FEV1/FVC ratio is the hallmark for measuring the presence of obstructive disease,[5] meaning that the patient's ability to exhale is obstructed.[6] Asbestos disease causes both restrictive disease (meaning that the patient's ability to inhale is restricted) and obstructive disease.[7] Indeed, diffuse pleural thickening causes obstructive defect.[8] This is particularly the case with the Libby Claimants.[9] Accordingly, imposing a FEV1/FVC ratio requirement of 65% or higher—indicating the *absence* of obstructive disease—discriminates against the large group of patients, especially in Libby, who have an obstructive defect along with asbestos disease.

An FEV1/FVC ratio of 70% or above is considered normal. For patients over the age of 60, 65% may be considered normal. This is important for Libby Claimants, because the average age at diagnosis in the CARD mortality study was 69 and the average age at death was 76. In the

---

[3] "FEV1" means forced expiratory volume in one second; "FVC" means forced vital capacity and is a measure of lung volume. The FEV1/FVC ratio measures how quickly air can be expelled from the lungs.

[4] Inexplicably, the TDP uses "FEV1/FVC ratio greater than 65%" for Level IV-B (severe pleural disease) and "FEV1/FVC ratio greater than or equal to 65%" for Level III (moderate "asbestosis/pleural disease"). TDP § 5.3(a)(3).

[5] Whitehouse Report ¶ 64.

[6] Id.

[7] Whitehouse Report ¶ 63.

[8] Whitehouse Report ¶ 29, 66.

[9] Id.

2

CARD mortality study, among those who died of non-malignant asbestos disease, 40% (29/72) had an FEV1/FVC ratio of 65% or less. The concern voiced by the Plan Proponents' medical witnesses is that without use of the ratio for exclusion, patients with smoking disease may be compensated. But claimants who reach this point have a diagnosis of asbestos-related disease. The only question is whether the asbestos-related disease is a substantial factor in causing the obstructive defect. Additionally, the diagnosis of asbestos-related disease requires "exclusion of alternative plausible causes for the findings."[10] Where the physician's report rules out smoking disease, then that should be sufficient. It is not medically reasonable and is discriminatory to arbitrarily apply the requirement that the FEV1/FVC ratio exceed 65% in order to meet the TDP definition of "Severe Asbestosis" and "Severe Disabling Pleural Disease."

### 2. The exclusion of CT scans is arbitrary. Without CT scans the severity of the Libby Claimants' disease is not adequately observed.

The TDP provides that "evidence of bilateral asbestos-related non-malignant disease" specially includes use of CT scans for Levels II (mild asbestosis/pleural disease), III (moderate asbestosis/pleural disease), V and VI (cancers), but not for Level IV-A (severe asbestosis) or Level IV-B (severe pleural disease). This is not medically reasonable, since the same diagnostic criteria are used for asbestos-related disease whether mild, moderate, or severe.

At the deposition of Asbestos PI Committee's medical expert, Dr. Laura Welch, on June 3, 2009, the Libby Claimants discovered that the Plan Proponents interpret the TDP medical criteria as not permitting use of CT scans for Level IV. This means the TDP will not permit the use of CT scans in the diagnosis and evaluation of severe disease (Level IV), but allows it for

---

[10] Whitehouse Report ¶ 16, citing ATS (2004).

moderate and mild disease (Levels II and III). This is not at all medically reasonable, and discriminates against patients whose asbestos-related disease appears more clearly on CT scan.

Use of CT scans in diagnosing and evaluating asbestos-related disease is standard practice. ATS Official Statement (2004), p.696 states: "Only 50/80% of cases of documented pleural thickening demonstrated by autopsy, conventional CT or high resolution CT are detected by chest radiographs (42/43)." In other words, x-rays miss up to half of the cases of pleural thickening. With CARD patients it has been observed that HRCT is far superior to plain chest film x-ray in identifying pleural abnormalities. Blunting of the costophrenic angle can be visualized on CT and measurement of extent and thickness of pleural thickening is better on CT scan than on plain chest x-ray.[11]

Denial of the use of CT scans at Level IV is not medically reasonable and is discriminatory against the class of patients—many of them Libby Claimants—whose disease is more clearly seen on CT scan.

### B. The TDP Medical Criteria Arbitrarily Exclude Patients With Unilateral Disease

The TDP is not clear whether the requirements of blunting of the costophrenic angle, extent greater than 25%, and 3mm thickness are met if present in either the right or left lung, or must be present in both lungs.[12] If all requirements must be met in both lungs, the TDP medical criteria arbitrarily exclude patients with unilateral disease. This is not medically reasonable and operates to exclude many legitimate claims.

---

[11] Whitehouse Report ¶ 77a.

[12] Through interrogatory responses, the Asbestos PI Committee has informed the Libby Claimants that unilateral blunting, extent greater than 25%, and 3mm thickness "will suffice, as long as there is some radiographic evidence of bilateral pleural disease." See Objections and Answers of Official Committee of Asbestos Personal Injury Claimants to Elmer Biladeau's and Robert Barnes's Interrogatories Propounded Upon Asbestos PI Committee.

4

## II. Release of Fresenius Indemnified Parties

Section 8.8.7 of the Plan provides that "each Holder of a Claim . . . who *receives or retains any property under this Plan* shall also be deemed to unconditionally release the Fresenius Indemnified Parties . . . ."[13] A provision deeming a creditor to give a release by reason of receiving a distribution under a plan is impermissible. <u>In re Zenith Electronics Corp.</u>, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (Walrath, J.) ("[A] release of third party claims . . . cannot be accomplished without the affirmative agreement of the creditor affected."), and authorities cited therein. This Court indicated from the bench at the October 27, 2008 hearing that claimants may not be deemed to grant a release solely by reason of receiving or retaining property under the Plan. <u>See</u> Hr'g Transcript, October 27, 2008, pp. 102, 107. Thereafter, the Plan was amended to scale back but not eliminate this provision. The Plan is unconfirmable as a matter of law unless the words "or receives or retains any property under this Plan" are stricken from this provision of the Plan.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

---

[13] Plan § 8.8.7 (emphasis added).

Dated: July 10, 2009
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Kerri Mumford
_____
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Daniel C. Cohn
Christopher M. Candon
**COHN WHITESELL & GOLDBERG LLP**
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679

*Counsel for Libby Claimants*