# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>          Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>Jointly Administered<br><br>**Re: Docket No. 22017**<br><br>**Hearing Date: July 27, 2009 @ 10:30 a.m. (EST)** |

**OPPOSITION TO LIBBY PLAINTIFF LAWYERS' MOTION TO
RECONSIDER THE COURT'S ORDER GRANTING IN PART ARROWOOD'S
MOTION TO STRIKE WHITEHOUSE EXPERT REPORT**

Garvan F. McDaniel, Esq. (#4167)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, DE 19801
(302) 429-1900 Phone
(302) 429-8600 Fax

-and-

Carl J. Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER, LLP
150 East 42nd Street
New York, NY 10017-5639
Telephone: (212) 490-3000

-and-

Tancred V. Schiavoni, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York
(212) 326-2267

*Counsel to Arrowood Indemnity
Company, f/k/a Royal Indemnity Company*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 3

POINT I.    THE LIBBY PLAINTIFFS LAWYERS DO NOT MEET
            THE STANDARD FOR RECONSIDERATION.................................................. 3

POINT II.   THE LIBBY CLAIMANTS' ADMISSIONS ARE FATAL TO THE
            ADMISSIBILITY OF DR. WHITEHOUSE'S TESTIMONY ............................ 7

POINT III.  DR. WHITEHOUSE'S PURPORTED "EXPERT" OPINIONS ON THE
            TOPICS ON WHICH HE IS NOW BEING OFFERED HAVE BEEN
            FOUND TO BE UNRELIABLE. ......................................................................... 9

POINT IV.   THE LIBBY CLAIMANTS HAVE YET TO DISCLOSE HOW MUCH
            WHITEHOUSE HAS BEEN PAID AND PROMISED.................................... 12

CONCLUSION................................................................................................................ 13

# TABLE OF AUTHORITIES

## CASES

*In re Christie*, 222 B.R. 64 (Bankr. D.N.J. 1998) ............................................................................ 4

*Database America, Inc. v. Bell South Adver. & Publ'g. Corp.,* 825 F.Supp. 1216 (D.N.J. 1993) .................................................................................................................... 4

*In re Crofford*, 286 B.R. 366 (Bankr. E.D. Ark, 2002) ................................................................... 7

*In re Oak Park Calabasas Condominium Ass'n.,* 302 B.R. 682 (Bankr. C.D. Cal. 2003)

*McDowell v. Calderon,* 197 F.3d 1253 (9th Cir. 1999) ................................................................ 5

*Lony v. E.I. DuPont de Nemours & Co,* 935 F.2d 604 (3d Cir. 1991) ............................................ 4

*Marshall v. Southeastern Pennsylvania Transportation Authority*, 587 F.Supp. 258 (ED. Pa. 1984) .................................................................................................................... 6

*Smith v. Stoner*, 594 F. Supp. 1091 (N.D. Ind. 1984) .................................................................... 6

*United States v. W.R. Grace*, 9:05-cr-00007-DWM-1 (D. Mont. 2009) ................................. 9, 10

*W.C. & A.N. Miller Companies*, 173 F.R.D. 1 (D.D.C. 1997) ...................................................... 6

*Zyko v. Dept. of Defense*, 180 F.Supp. 2d 89 (D.D.C. 2001) ......................................................... 6

## STATUTES

Fed. R. Civ. P. 59(e) .................................................................................................................. 4, 6

Fed. R. Bankr. P. 9023 ................................................................................................................... 4

Local Bankruptcy Rule 9013-1(h) ................................................................................................. 4

## OTHER SOURCES

Tristan Scott, *W. R. Grace Trial: Defense Requests Testimony Be Stricken*, Missoulian, Mar. 19, 2009 ...................................................................................................... 10

Arrowood,[1] by and through their undersigned counsel, hereby submits this Opposition to the Libby Claimants' Motion to Reconsider Modified Order Granting in Part Motion of Arrowood to Strike Whitehouse Expert Report ("Motion for Reconsideration").

## **PRELIMINARY STATEMENT**

The beginning and end point for deciding this motion is evaluating whether under a motion for reconsideration a party is permitted to reargue points it has already raised, and that were already rejected, on the very same issues. This is a pure issue of law. As a matter of black letter law in the Third Circuit, resubmitting points that the Court already rejected is not a basis for granting reconsideration. The Libby Plaintiffs Lawyers present no new evidence that was not previously available, and they can point to no intervening change in the law since May 14 when the Whitehouse Motion was argued and decided. They cannot show that reconsideration of this Court's Whitehouse Order—that merely required them to comply with the requirements of the Federal Rules of Civil Procedure if they wanted to offer Dr. Whitehouse's expert—is in any way necessary in order to correct a clear error of law or to prevent manifest injustice. None of the grounds for reconsideration have been met. Accordingly, the Court should deny their Motion for Reconsideration.

Just a little more than one month ago, on May 27 this Court issued its order granting in part Arrowood's motion to strike the Whitehouse report ("Whitehouse Order"). Requiring the Libby Plaintiff Lawyers to meet their basic disclosure obligations under the Federal Rules, this Court ordered that the Libby Plaintiff Lawyers produce the medical records and case histories of the population of 1800 patients upon which Dr. Whitehouse bases his opinions, including his

---

[1] "Arrowood" refers to Arrowood Indemnity Company f/k/a Royal Indemnity Company. The declaration of Allen Schwartz dated July 9, 2009 is submitted in support of this motion. (hereinafter Schw. Decl.__").

1

opinion that there is a special form of asbestos disease unique to Libby, Montana by May 21, 2009.

While the Court was well within its power to strike the Whitehouse Report completely under the Federal Rules of Civil Procedure at that time, this Court gave the Libby Plaintiffs Lawyers an extra week to meet their basic disclosure obligations. The Court noted that the Libby Plaintiffs Lawyers "should have dealt with it earlier . . . I'll give them this last chance. But it has to be produced within a week."[2] At the hearing, the Court said it was barring "any testimony in the event that the documents aren't produced within a week."[3] The Court explicitly ruled in its Order that failure to provide the medical records of the 1800 patients would "bar Dr. Whitehouse from offering any expert opinion that was formed based upon reliance, in whole or in part, on the records."[4] The Court also dismissed any argument with regard to costs and held in its Order that all costs associated with the production of the records would be borne by the Libby Claimants.

The Libby Plaintiff Lawyers admit in their Motion for Reconsideration that they did not produce all the records of at least 850 patients prior to the final deadline set by the Court. This, by itself, means that Dr. Whitehouse's opinions which are based on the records cannot be admitted. Beyond their openly-admitted failure to produce the records of nearly half of the individuals in Whitehouse's patient population, the Libby Claimants disregarded the Whitehouse Order in other meaningful ways that have compounded the prejudice caused by their disclosure violations.

---

[2] Schwartz Decl. Ex. A (May 14, 2009 Transcript Hearing at 120).

[3] *Id*. at 124.

[4] Whitehouse Order, May 21, 2009, Dkt. No. 21874 at 2.

On the eve of the second Whitehouse deposition, and weeks after the court-mandated deadline, the Libby Plaintiff Lawyers produced a batch of previously withheld records on June 9.[5] These records were produced after the court-mandated deadline had passed, the day after Grace noticed the second Whitehouse deposition, and just a few business days before the June 16 deposition of Dr. Whitehouse, making it impossible for any party to meaningfully review them before the deposition. The Libby Plaintiff Lawyers also have not produced un-redacted records for all the claimant-patients, making it impossible to tell whether they have actually produced the full records of the 850 claimants.

Now, after failing to comply, they have filed a Motion for Reconsideration, offering no new evidence previously unavailable, and a smorgasbord of the very same arguments, which the Court considered and rejected at the May 14 hearing. They cannot point to any new law, and the "new" arguments they purport to raise could have been presented at the prior hearing. The Libby Plaintiffs Lawyers have no legal basis for filing their Motion for Reconsideration and it should be denied.

## ARGUMENT

### POINT I.

### THE LIBBY PLAINTIFFS LAWYERS DO NOT MEET THE STANDARD FOR RECONSIDERATION

The Libby Plaintiffs Lawyers fail to meet the legal standard required for a Court in this Circuit to reconsider a prior ruling. Even before reaching the merits of any of their arguments, the Libby Plaintiffs Lawyers must show that they have met the strict standards in this Circuit governing the appropriateness of reconsideration of prior rulings. The Libby Plaintiffs Lawyers

---

[5] Schwartz Decl. Ex. B (June 9, 2009 cover letter from Libby Plaintiff Lawyer, John F. Lacey, to, amongst a few others, Grace's and Arrowood's counsel, stating that the Libby Plaintiffs Lawyers were producing as of June 9, 2009, certain claimant and non-claimant radiographic images related to the CARD mortality study and that they had received "permission" from St. Johns to produce the non-claimant radiographic images they were sending.)

3

do not meet these requirements. As such, their Motion for Reconsideration should be rejected as a matter of law.

As made applicable by Federal Rule of Bankruptcy Procedure 9023 and Local Bankruptcy Rule 9013-1(h), Federal Rule of Civil Procedure 59(e) governs motions for reconsideration. Pursuant to F.R.C.P. 59(e), "any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed. R. Civ. Pro. 59(e) (2004). In the Third Circuit, granting a motion for reconsideration is limited to exceptional circumstances. *Lony v. E.I. DuPont de Nemours & Co,* 935 F.2d 604, 608 (3d Cir. 1991); *In re Christie*, 222 B.R. 64, 68 (Bankr. D.N.J. 1998). There are three reasons why a court may grant a motion for reconsideration: "(1) an intervening change of controlling law has occurred, (2) evidence not previously available has become available, or (3) it is necessary to correct a clear error of law or prevent manifest injustice." *In re Christie*, 222 B.R. at 67 (quoting *Database America, Inc. v. Bell South Adver. & Publ'g. Corp.,* 825 F.Supp. 1216, 1219 (D.N.J. 1993)).

None of these factors are present here. The Libby Plaintiff Lawyers cannot credibly allege that there has been a change in controlling law or that evidence not previously available has become available in just the past month or so. The alleged "new" evidence is nothing more than affidavits from the clinics at which Dr. Whitehouse worked that effectively state the unremarkable policy that "absent either a specific court order, express authorization from a patient, or a legally recognized special circumstance, it is the policy of St. John's not to produce or allow access to a patient's medical records."[6]

These affidavits are hardly new evidence that was previously unavailable. Indeed, they could have been presented at the prior hearing, as the Libby Plaintiff Lawyers all along have

---

[6] Motion to Reconsider Exhibit 2 (St. Johns Affidavit) ¶ 4; *see also* Motion to Reconsider Exhibit 3 (CARD Affidavit) ¶ 7.

maintained "that neither they nor Dr. Whitehouse have control of or a right to produce medical records for individuals who are not claimants in these bankruptcy proceedings."[7] Furthermore, the argument the Libby Plaintiffs Lawyers are using these affidavits to buttress--that they cannot get the medical records Dr. Whitehouse relied on for his opinion--was an argument they presented to the Court at the May 14, 2009 hearing,[8] and the Court never disputed the factual accuracy of this assertion.[9] Indeed, the Court did not issue the Whitehouse Order on the factual predicate that the Libby Plaintiffs lawyers could get the records.[10] Rather, the basis of the Court's ruling was that Dr. Whitehouse had to provide the medical records if he wanted to offer epidemiological opinions on the special nature of Libby asbestos, and it was his fault for relying on data he could not provide.[11] These affidavits are irrelevant because, in addition to offering nothing new, they also do not in any way touch on the legal basis for the Court's decision. At the hearing, the Court explicitly stated that "[i]f he's [Dr. Whitehouse] being called as an expert he has to disclose the underlying data. He should have taken care of that issue before he relied on it."[12]

The argument that a "manifest injustice" will occur if the Whitehouse Order is not overturned is similarly frivolous and should be dismissed. This argument does not even begin to approach the threshold requirements for meeting the manifest injustice test for motions to reconsider. Manifest injustice is an extremely demanding standard, defined as: "'[A]n error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is

---

[7] Motion to Reconsider ¶ 7.

[8] Schwartz Decl. Ex. A (May 14, 2009 Transcript Hearing at 101-02).

[9] *Id.* at 101-05.

[10] *Id*.

[11] *Id*.

[12] *Id.* at 102.

5

involuntary or that is based on a plea agreement that the prosecution rescinds." *In re Oak Park Calabasas Condominium Ass'n.,* 302 B.R. 682 (Bankr. C.D. Cal. 2003)(quoting *McDowell v. Calderon,* 197 F.3d 1253, 1255 (9th Cir. 1999), *cert. denied*, 529 U.S. 1082, 120 S.Ct. 1708, 146 L.Ed. 2d 511 (2000)).  Although the Libby Plaintiff Lawyers assert that reconsideration is necessary to prevent manifest injustice, they cannot demonstrate any error by the Court that is direct, obvious and observable.[13]  The Libby Claimants did not meet their burden under the Federal Rules of Civil Procedure and flouted their discovery obligations.  The Court was well within its authority to strike Dr. Whitehouse's testimony entirely without any second chances.  Instead, the court generously gave the Libby Claimants the opportunity to rectify their violation.

Additionally, because the Libby Plaintiff Lawyers could have and should have raised any arguments in their Opposition Brief to the Whitehouse Motion or at the Hearing, they do not now have the legal right to raise new arguments in their Motion for Reconsideration.  It is well-settled that issues which could originally have been presented to the Court are not the proper subject of a motion for reconsideration.  *See Smith v. Stoner*, 594 F. Supp. 1091, 1118 (N.D. Ind. 1984)("[i]ssues which could have been presented to the court for consideration previously, but which were not, are not the proper subject of Rule 59(e) relief; the issues are waived").  *See also Zyko v. Dept. of Defense*, 180 F.Supp. 2d 89, 91 (D.D.C. 2001)(Rule 59(e) "is not a vehicle for presenting theories or arguments that could have been advanced earlier"); *W.C. & A.N. Miller*

---

[13] The Libby Claimants also offer various arguments they have previously offered.  For example, the Libby Claimants make the incredible argument that, while Dr. Whitehouse is offering epidemiological opinions about the alleged unique nature of Libby asbestos, he is not required to provide this information because he also happens to be a treating physician and was, the Libby Claimants allege, " not 'retained or specifically employed' for purposes of this litigation.  Rather, his experience as a treating physician of Libby asbestos disease defines his primary obligation to produce expert reliance materials."  Motion to Reconsider ¶ 11 (emphasis in original).  But that is false.  Dr. Whitehouse has been retained specifically for purposes of this litigation, has submitted expert reports that state his opinion that Libby asbestos is unique--in order to buttress the argument that the Libby Claimants are different from other claimants and that Libby asbestos is a special form of asbestos. It makes no difference that among the bases for his opinion are the histories of the 1800 patients he treated and from which he deduces the existence of a unique form of Libby asbestos.  The entire argument is thus a red herring, a patently obvious attempt to throw the kitchen-sink in their effort to have this court excuse their failure to satisfy their basic discovery obligations.

*Companies*, 173 F.R.D. 1, 3 (D.D.C. 1997); *Marshall v. Southeastern Pennsylvania Transportation Authority*, 587 F.Supp. 258, 265 (ED. Pa. 1984)("Under Rule 59 ... it is clear that new trials should not be granted solely to permit the losing party to present arguments which could have been raised at trial but were not"); *In re Crofford*, 286 B.R. 366, 372 (Bankr. E.D. Ark, 2002).  It is the Libby Plaintiffs Lawyers own fault if they failed to present a given argument when they easily could have at the time of the hearing.  There is no legal right to wait and see what happens at a first hearing, so as to be able to come back to the court for a second bite at the apple.

## POINT II.

### THE LIBBY CLAIMANTS' ADMISSIONS ARE FATAL TO THE ADMISSIBILITY OF DR. WHITEHOUSE'S TESTIMONY

The Libby Plaintiffs Lawyers admit in their Motion for Reconsideration that they failed to produce the records of nearly half the patients upon whom Dr. Whitehouse bases his opinion.[14]  Dr. Whitehouse's opinions based--in whole or in part--on these records should be disallowed pursuant to the Court's Whitehouse Order.[15]  These admissions are fatal to the purported expert testimony of Dr. Whitehouse.

At the May 14 hearing on the Whitehouse Motion, Libby Claimants' counsel stated that "where Dr. Whitehouse's expertise comes from is, he has reviewed . . . about 1800 medical records of Libby Asbestos disease victims.  That's where his expertise comes from."[16]  They state that Dr. Whitehouse "has the legitimate and undeniable ability to rely upon his decades of general clinical experience with Libby asbestos to offer opinions [about how Libby

---

[14]  *See* Motion to Reconsider ¶ 30-32.

[15]  Modified Whitehouse Order, May 27, 2009, Dkt. No. 21874 at 2.

[16]  Schwartz Decl. Ex. A (May 14, 2009 Transcript Hearing at 97).

7

asbestos is unique] in this case."[17] To the extent the Libby Plaintiffs Lawyers continue to recycle the argument that the claimant records are sufficient, this Court has already rejected this argument in noting that Dr. Whitehouse has relied on self-selected studies:

> MR. COHN: Well, Your Honor, first of all 900 patients, which is the population of the Libby claimant, in other words, our client database, that's a huge amount of data for one of these studies. Most medical studies are not going to be based on anything nearly like that. And all the phenomenon Dr. Whitehouse says are associated with asbestos disease in Libby, manifest themselves in the clients and therefore are present in the client medical records which have been produced. . . . So why people need the other records is, you know--
>
> THE COURT: Because it's a self-selecting database. I mean, the problem is that from an epidemiological study you draft things from a scientific methodology. You don't back into picking the database first in a self-selected form. . . . This is clearly not a blind study. This is self-selecting the population and then figuring out with the criteria that you've set, whether the population fits. . . .[18]

The Court said "[a]s I understood it, Dr. Whitehouse is essentially being called to say that there is something--these are my words, not his -- more carcinogenic about Libby asbestos than other asbestos. And the only way you can to that is to look at the data that he looked at and have somebody else's expert evaluate that data."[19]

The Libby Plaintiffs Lawyers admit that they have failed to produce the records of nearly half of the patients Dr. Whitehouse has used in formulating his opinion. While the Court was well within its authority to strike the Whitehouse Report completely under the Federal Rules of Civil Procedure at the May 14 hearing, this Court gave the Libby Plaintiffs Lawyers an extra week to cure the breach of their basic discovery obligations. With the Libby Claimants now directly admitting to this Court that they have failed to produce these records, nothing more need

---

[17] Motion to Reconsider ¶ 21.

[18] Schwartz Decl. Ex. A (May 14, 2009 Transcript Hearing at 100).

[19] *Id*. at 98.

be shown. On the basis of this admission alone, and even putting aside their other failures and non-compliance, the Court should now strike the testimony of Dr. Whitehouse.

### POINT III.

### DR. WHITEHOUSE PURPORTED "EXPERT" OPINIONS ON THE TOPICS ON WHICH HE IS NOW BEING OFFERED HAVE BEEN FOUND TO BE UNRELIABLE

The plaintiffs' lawyers who purport to represent the Libby Claimants served Dr. Alan Whitehouse's 2006 and 2008 reports, and his 2009 supplemental report, on Grace and certain other parties. The sum and substance of his opinion is that people in Libby, Montana have a singularly unique and different asbestos-related disease than those in other locations who have been exposed to asbestos.[20]

Dr. Whitehouse did not perform epidemiological studies to reach any of his conclusions and there is no reliable academic support for his opinion in his expert report.[21] Instead, he relied mainly on case histories and extrapolated from his observations to reach conclusions about causation.[22] Dr. Whitehouse purportedly reached his opinions without using a database, records reflecting that a statistical analysis of any kind was performed, or any other analytical records, leaving the parties to take it on faith that Dr. Whitehouse is able to keep the results of hundreds of medical tests and histories in his head. On top of this, Dr. Whitehouse has been criticized, among other things, for relying on physicians without training in the field in which they work[23]

---

[20] *See* Schwartz Decl. Ex. H at Dkt. No. 21245 (Dr. Whitehouse's September 25, 2006 report) ¶ 27; *See* W.R. Grace & Co's Response in Support of Motion to Strike Whitehouse Report, May 8, 2009 at Dkt. No. 21591, Exhibit B (Dr. Whitehouse's December 29, 2008 Report) ¶ 34 ("There generally appears to be a distinct pattern for Libby asbestos disease.").

[21] *See United States v. W.R. Grace*, 9:05-cr-00007-DWM-1, dkt no. 976, W.R. Grace's Motion to Strike Dr. Alan C. Whitehouse's Testimony (D. Mont. March 10, 2009).

[22] *Id.*

[23] Dr. Whitehouse has acknowledged using a doctor trained in pediatric medicine for his studies. Schwartz Decl. Ex. G at Dkt. No. 21245 (March 19, 2009 Whitehouse Dep. Tr.) at 42-43 ("[Mr. Stansbury]: 'And Dr. Brad Black has not completed a residency or a fellowship in radiology, pulmonology or occupational medicine,

9

and for his close association to the plaintiffs' lawyers who are funding the lawyers representing the Libby Claimants.[24]

Five world-renowned scientists and medical doctors, who are leaders in their respective fields, have reviewed Dr. Whitehouse's reports and found them unscientific and deeply flawed.[25] Moreover, on March 18, Judge Molloy, who presided over Grace's criminal trial, expressed concern about the lack of any scientific method in Dr. Whitehouse's opinion: "Doesn't [Dr. Whitehouse] undermine his own opinion when he says that he's relying on his common sense? . . . We've got 15 people here with common sense. They need, if anything, his science."[26]

Indeed, Dr. Whitehouse admitted that he relied on common sense rather than epidemiological studies:

> I'm not familiar with [the Bradford Hill criteria for determining causation]. I'm a much more practical person. You know, I see 11 cases of mesothelioma come out of Libby, there is a lot of exposure there, that's causation as far as I'm concerned. And from a practice standpoint from a physician, that's what you need, and that's the sort of thing that physicians rely on, basically.[27]

---

correct?' [Dr. Whitehouse]: 'That's correct.' [Mr. Stansbury]: 'His primary training is a pediatrician, correct?' . . . [Dr. Whitehouse]: 'Yes. That's correct.'").

[24] *See Id.* at 206-218 (testimony regarding the numerous "thank you" letters Dr. Whitehouse sent to Libby Claimants' *counsel* John Heberling for referring patients to Dr. Whitehouse for diagnosis of asbestosis.).

[25] These doctors include Dr. Gary K. Friedman of the Texas Lung Institute ("It is my opinion that Dr. Whitehouse's medical or scientific opinions differ materially from the authoritative sources which he has identified in the bibliographies *attached* to his publications and reports. . . . Dr. Whitehouse has failed to demonstrate a scientific basis for alleging that individuals exposed to "Libby Asbestos" products in Libby Montana would have any different disease or risk of progression than individuals exposed to "Libby Asbestos" in other geographic locations." ); Dr. Laura S. Welch ("Dr. Whitehouse's report draws a number of conclusions about deaths from asbestos-related disease in the Libby population, and how these patterns differ from patterns seen in other asbestos-exposed groups . . . these comparisons are not valid. . . .The methods Dr. Whitehouse used for assigning cause of death are not what are generally accepted in use for cohort mortality studies."); and Dr. Gail D. Stockman, a medical doctor with a Ph.D. in experimental biology and a former faculty member at the University of Texas M.D. Anderson Hospital ("When one piece of data from pulmonary function testing is extracted and discussed separately from the tests as a whole, as when Dr. Whitehouse states, 'We find that the DLCO defect is the leading indicator of severity in the Libby cohort,' the conclusions are at best meaningless, and at worse, deceptive.")

[26] *See* Tristan *Scott, W. R. Grace Trial: Defense Requests Testimony Be Stricken*, Missoulian, Mar. 19, 2009, http://www.missoulian.com/articles/2009/03/19/news/mtregional/news06.txt.

[27] *United States v. W.R. Grace,* 9:05-cr-00007-DWM-1, Trial Tr. vol. 7, 1522, March 4, 2009 (emphasis added).

Dr. Whitehouse also testified at the criminal trial that he has no scientific basis for his opinion that a wave or asbestos-related disease in Libby will continue into the future:

> Q. . . . And you don't have the science to make a scientific prediction, do you?
>
> A. Not to the numbers, no.
>
> Q. You don't have the exposure numbers and you don't have a curve. True or not?
>
> A. I don't have exposure numbers and I do not have a curve.[28]

Given this backdrop and the nature of Dr. Whitehouse's "common sense" opinions, it was all the more important, as this Court recognized when it discussed the self-selecting nature of his studies,[29] that the Libby Plaintiffs Lawyers supply the medical records on which Dr. Whitehouse bases his purportedly expert opinion that there is a special and unique form of asbestos disease only in Libby. The Court ruled that Dr. Whitehouse could not fail to produce the records and still offer this ground-breaking opinion.[30] If the Libby Plaintiff Lawyers wanted to use his testimony to show that there is a previously undiscovered and new asbestos disease in Libby, they had to produce the records on which this opinion was based.[31]

---

[28] *Id.* at 1512.

[29] Schwartz Decl. Ex. A (May 14, 2009 Transcript Hearing at 100, 110-111).

[30] *Id.* at 104-105, 112

[31] *Id.*

## POINT VI.

## THE LIBBY CLAIMANTS HAVE YET TO DISCLOSE HOW MUCH WHITEHOUSE HAS BEEN PAID AND PROMISED

The Libby Claimants have not disclosed the full amount Dr. Whitehouse has been paid. It is evident from his deposition testimony that he has received one or more referrals from the Libby Plaintiffs Lawyers.[32] Yet, the Libby Claimants have not discussed the full extent of the referrals, or the documents concerning them. The parties are entitled to know how much he has been paid and promised.

[remainder of page left blank]

---

[32] Schwartz Decl. Ex. G at Dkt. No. 21245 (March 19, 2009 Whitehouse Dep. Tr.) at 206-218 (testimony regarding the numerous "thank you" letters Dr. Whitehouse sent to Libby Claimants' *counsel* John Heberling for referring patients to Dr. Whitehouse for diagnosis of asbestosis.).

## CONCLUSION

Arrowood respectfully requests that the Motion for Reconsideration be denied. Further, based on their admitted failure to turn over nearly half the patient records, Arrowood respectfully requests the Court strike Dr. Whitehouse's testimony in accordance with this Court's Whitehouse Order.[33]

Dated: July 10, 2009
       Wilmington, Delaware

By:  /s/ Garvan F. McDaniel
Garvan F. McDaniel, Esq. (#4167)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, DE 19801
(302) 429-1900 Phone
(302) 429-8600 Fax

-and-

Carl J. Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ EDELMAN & DICKER, LLP
150 East 42nd Street
New York, NY 10017-5639
Telephone: (212) 490-3000

-and-

Tancred V. Schiavoni, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York
(212) 326-2267

*Counsel to Arrowood Indemnity Company, f/k/a Royal Indemnity Company*

---

[33] Modified Whitehouse Order, May 27, 2009, Dkt. No. 21874.