IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br><br>(Jointly Administered)<br><br>Objection Deadline: July 10, 2009<br>Hearing Date: July 27, 2009 at 10:30 a.m.<br>Related Docket No. 22153 |

## LIBBY CLAIMANTS' OBJECTION TO DEBTORS' MOTION TO APPROVE SETTLEMENT WITH ROYAL PARTIES

Claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, hereby object to the Debtors' Motion for an Order Approving the Settlement Agreement and Mutual Release with Royal Parties dated June 17, 2009 [Docket No. 22153] (the "Motion"). As more fully set forth below, the Motion should be denied because:

- Approval of the Motion at this time would violate the Libby Claimants' right to due process of law. The Motion fails to disclose even minimal facts demonstrating that the Settlement Agreement attached thereto (the "Proposed Settlement") meets the standards established by the Third Circuit for approval of settlements in bankruptcy. The Libby Claimants have not yet had the opportunity to complete discovery concerning the Proposed Settlement.[2]

- The Proposed Settlement releases insurance coverage that is available to the Libby Claimants, not in competition with any other creditors of the Debtors' estate and as to which Libby Claimants have a vested interest under Montana law. Accordingly, the Proposed Settlement cannot be approved without the Libby Claimants' consent or, in the alternative, may be approved only if the Debtors

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 21365], as it may be amended and restated from time to time.

[2] The Libby Claimants intend to withdraw this ground for objection assuming that they are able (a) to obtain adequate discovery sufficiently in advance of the hearing on the Motion to be able to prepare adequately, and (b) are permitted to assert at the hearing matters resulting from such discovery, regardless of whether included in this Objection.

{393.001-W0001175.}

provide adequate protection of the Libby Claimants' interests. No offer of adequate protection has been made.

- The Proposed Settlement requires this Court to enter, in conjunction with confirmation of a plan, injunctions and releases in favor of the Royal Parties that are impermissibly broad because (a) such injunctions include parties that may not be beneficiaries of an injunction under Section 524(g), and (b) any injunction protecting the Royal Parties should not include insurance coverage for which they are paying nothing for such protection.The Proposed Settlement may not be approved because it is a *sub rosa* plan of reorganization. Alternatively, consideration of the Motion should be deferred to the hearing on confirmation of the proposed Chapter 11 plan.

In support of this Objection, the Libby Claimants state:

## I. Background

1. On April 2, 2001, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

2. On June 17, 2009, the Debtors filed the Motion seeking this Court's approval of the Proposed Settlement, whereby the Debtors would receive $5.8 million in exchange for releasing the Royal Parties from all of their obligations under the Subject Policies. Apart from stating that the Subject Policies include two high level excess policies that were provided to the Debtors and certain other policies issued to the Zonolite Company prior to 1963 that the Debtors claim were fully settled pursuant to the 1995 Settlement Agreement, the Motion says nothing about the types of coverage provided by the Subject Policies, any aggregate limits on claims payable under one or more of the coverages provided, or the Libby Claimants' Objection to the First Amended Joint Plan of Reorganization dated May 20, 2009 [Docket No. 21811] that relates, in part, to the Proposed Settlement—in short, no information on which this Court or any

2

interested party could make a reasonably informed decision about whether or not the Proposed Settlement is in the best interest of the Debtors' estate.

3. Like other comprehensive general liability policies of the same era, the Debtors' insurance distinguishes between "non-products" claims and "products" claims. Products (a/k/a completed operations) coverage addresses liability from products that have been placed in the stream of commerce either through sale/transfer of a product or completion of an operation or service.[3] In addition to being subject to per-claim and per-occurrence limits, products coverage is subject to an aggregate cap on claims. By contrast, non-products (a/k/a non-completed operations) coverage addresses liability that arises from operations (including harmful materials that have not yet been placed in the stream of commerce). While subject to per-claim and per-occurrence limits, non-products coverage is *not* subject to any aggregate limit. This means that even in a mass tort case, injured people do not compete with each other for non-products coverage. The only issue is whether an injury is covered by the policy, not whether the coverage has been exhausted.

4. Unlike the vast majority of Asbestos PI Claims which are products claims because they result from exposure to the Debtors' products, Libby Claims are non-products claims because the Libby Claimants were injured by harmful materials generated in the course of the Debtors' operations. Comprehensive general liability insurance, including primary coverage of non-products and products claims, was supplied by Royal Indemnity Company[4] for the period

---

[3] For example, a construction worker exposed to the Debtors' asbestos-containing products would have a products/completed operations claim because the harmful material had left the Debtors' possession at the time the injury occurred.

[4] N/k/a Arrowood Indemnity Company.

3

{393.001-W0001175.}

from 1954-1963 (the "Primary Policies").[5] Unlike the excess policies referred to in the Motion, the Primary Policies provide for Royal to pay the first dollars of any asbestos claims.

5. Grace and Royal entered into a settlement agreement in 1995 concerning the Primary Policies (the "1995 Settlement Agreement"). The 1995 Settlement Agreement indisputably settled products coverage under the Primary Policies. There is a dispute concerning whether non-products asbestos coverage was also settled. The Libby Claimants assert that the 1995 Settlement Agreement is limited solely to products claims, leaving non-products coverage intact. The proponents of the Proposed Settlement take the position that the 1995 Settlement Agreement released non-products asbestos coverage. However, as explained below, the 1995 Settlement Agreement is at best ambiguous on this point.[6] And even if the 1995 Settlement Agreement did somehow settle non-products coverage, the Libby Claimants assert that they are not bound to the Debtors' settlement because they were not parties to it and, as explained below, under state law their rights against Royal had already vested at the time of the settlement, their vested rights could not be dealt away by a settlement between insurer and insured, and (again, because there is no aggregate cap on non-products coverage) the insurance was not exhausted either before or by reason of the settlement.

6. The Proposed Settlement was negotiated on the premise—accepted by both the estate representatives and insurer—that the 1995 Settlement Agreement had already disposed of all asbestos coverage under the primary policies. Upon information and belief, the estate

---

[5] The insurance was purchased by The Zonolite Company, n/k/a Montana Vermiculite Company. As part of the purchase of Zonolite's assets, the Debtors "obtained all rights under the insurance policies purchased by Zonolite." Disclosure Statement § 2.10.2.1.

[6] The Libby Claimants have sought discovery of parol evidence concerning the meaning of the 1995 Settlement Agreement. To date, they have received only a partial response to their request for production of documents on this issue. After receiving a complete production of documents concerning this issue, the Libby Claimants may (or may not) need to depose a Royal and/or a Grace witness concerning the 1995 Settlement Agreement.

4

representatives did not bargain for any consideration whatsoever for the release, under the Proposed Settlement, of unresolved coverage under the primary policies.[7]

7.   Having received confidential information and analysis through their seat on the Asbestos PI Claimants' Committee, the Libby Claimants have concluded that the consideration to be paid by Royal under the Proposed Settlement represents a fair price to settle the excess insurance coverage that was the subject of the parties' negotiations. The Libby Claimants do not challenge the Proposed Settlement on that basis. However, the Proposed Settlement contains a release of all insurance coverage—including the Primary Policies that Royal is paying nothing to settle. Upon information and belief, the estate representatives who negotiated the Proposed Settlement did not demand or receive any consideration to relinquish the valuable insurance coverage under the Primary Policies.[8] The Motion offers no reason why it is prudent, fair or even legally permissible for the Debtors to discard this valuable insurance coverage for the Libby Claimants.

## II.    Argument

### A.    Approval of the Motion at this Time Would Violate the Libby Claimants' Rights to Due Process.

8.   Approval of the Motion would violate due process of the law because (a) the Libby Claimants have not been provided adequate time to prepare a complete objection to the Motion as discovery requests related to the Motion remain outstanding, and (b) the Motion fails to make adequate disclosure of material facts related to the Proposed Settlement. Shortly after the filing of the Motion, the Libby Claimants initiated formal and informal discovery concerning

---

[7] The Libby Claimants have also sought, but not yet obtained, discovery on this issue.

[8] If Royal were paying appropriate consideration to settle the Primary Policies, Libby Claimants would be entitled to adequate protection of their interest in such consideration and, under the Chapter 11 plan, distribution of such consideration to Libby Claimants with claims covered by the Primary Policies as well as any other claimant (believed to be few or none) who could demonstrate an entitlement to non-products coverage dating from the period of 1953-1963.

matters raised herein and participated in several "meet and confer" sessions with the proponents of the Proposed Settlement. Unfortunately, the proponents of the Proposed Settlement did not accept the Libby Claimants' proposal for an expedited discovery program that would enable the Libby Claimants to adequately respond to the Motion and Proposed Settlement within the time-frame of the currently scheduled hearing. As a result, the Libby Claimants have not yet had the opportunity to complete discovery concerning the Proposed Settlement.

9. The Debtors bear the burden of persuading the Court that the Proposed Settlement should be approved. See In re Key3Media Group, Inc., 336 B.R. 87, 93 (Bankr. D. Del. 2005). The Motion does not even attempt to articulate the facts that would permit parties to evaluate, and this Court to determine, that the Proposed Settlement is fair, reasonable and in the best interest of the estate, let alone whether it meets the four-part Martin standard. See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).

10. The paucity of information contained in the Motion, combined with the short period provided for parties to respond, makes it impossible for parties such as the Libby Claimants to comprehensively evaluate the Proposed Settlement. As noted above, the Motion is completely silent as to the types of coverage provided by the Subject Policies, any aggregate limits on claims payable under one or more of the coverages provided, or the pending Libby Plan Objection that relates, in part, to the Proposed Settlement. Instead, as justification for the Proposed Settlement, the Debtors make sweeping generalizations without providing the financial analysis on which parties would responsibly need to review in order to consider the Proposed Settlement. For example, the Debtors state that the Proposed Settlement "represents another step forward in the Debtors' efforts to emerge from Chapter 11," "will increase assets available to the

{393.001-W0001175.}

Trust," and "will remove the Royal Parties as potential objectors to Plan confirmation."[9] While these statements may be true, they hardly qualify as information on which this Court or any interested party could make a reasonably informed decision about whether or not the Proposed Settlement is in the best interest of the Debtors' estate. Without the completion of discovery, including a full disclosure of the consideration exchanged in the Proposed Settlement, it would be a violation of due process for this Court even to consider the Proposed Settlement for approval,[10] let alone enter the order of approval sought by the Debtors.

### B. The Proposed Settlement is Impermissible Because Proceeds of Premises/Operations Coverage Under the Subject Policies Are Not Property of the Estate.

11. As a general matter, proceeds of a liability insurance policy are not property of the insured's bankruptcy estate. As the Court of Appeals for the Fifth Circuit has held:

> [W]hen the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.
> Examples of insurance policies whose proceeds are property of the estate include casualty, collision, life, and fire insurance policies in which the debtor is a beneficiary.... But under the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.

Houston v. Edgeworth, 993 F.2d 51, 55 (5th Cir. 1993). Judicial decisions that have trumped this rule in the mass tort context are based on circumstances not present here: the need to channel proceeds of products/completed operations coverage *where those proceeds are insufficient to pay all claims*, with the purpose and effect of providing for an orderly and ratable distribution to victims who are beneficiaries of the coverage. The Debtors have not alleged,

---

[9] Motion ¶ 18.

[10] The Libby Claimants have separately filed their Motion to Defer Consideration of Debtors' Motion to Approve Settlement with Royal Parties, whereby they request this Court to continue the Motion to at least the August omnibus hearing in order for the Libby Claimants and other parties to have a fair opportunity to conduct discovery and respond.

7

{393.001-W0001175.}

much less attempted to demonstrate with specific reference to their insurance policies as now in effect, that they have insufficient premises/operations coverage to pay the Libby Claimants (and anyone else with a premises/operations claim) in full.[11]

12. The Proposed Settlement is impermissible because it purports to dispose of an asset—namely, proceeds of premises/operations coverage under the Subject Policies—that is not property of the estate.

### C. Even if Proceeds of Premises/Operations Coverage Under the Subject Policies Were to be Treated as Property of the Estate, the Motion Must Nevertheless be Denied in the Absence of Adequate Protection of the Libby Claimants' Interest.

13. As a threshold matter, the Libby Claimants assert that non-products coverage against Royal is unresolved because the 1995 Settlement Agreement is limited solely to products claims, leaving non-products coverage intact. Specifically, the 1995 Settlement Agreement provides:

> Royal agrees to pay Grace the sum of [REDACTED] in full satisfaction of Royal's alleged obligation to indemnify Grace, Zonolite, and any Other Insureds for Loss arising out of **Products Claims** under the Primary Policies and in full satisfaction of Royal's alleged obligation to defend Grace, Zonolite or any Other Insureds or to pay Defense Expenses arising out of **Products Claims** under the Primary Policies.

1995 Settlement Agreement, Section 2.0 (Emphasis added). Coverage not released under the 1995 Settlement Agreement was expressly preserved. 1995 Settlement Agreement, Section 3.0. The 1995 Settlement Agreement does contain language that might be construed to release even non-products asbestos claims. The proponents of the Proposed Settlement contend that all asbestos coverage under the primary policies was settled by the 1995 Settlement Agreement. However, at best, the agreement is ambiguous as to this issue.

---

[11] If the Debtors were to make this allegation, then of course the Libby Claimants would have the right to reasonable discovery, pursuant to Bankruptcy Rule 9014(c) (incorporating rules of discovery to contested matters), and opportunity to brief and otherwise be heard on the issue.

8

14. Parol evidence is relevant to construe an ambiguous contract. The Libby Claimants are entitled to adequate discovery of such evidence, including all documents related to the 1995 Settlement Agreement. Yet Royal has expressly withheld production to the Libby Claimants of drafts of the 1995 Settlement Agreement. During discovery related to plan confirmation, the Libby Claimants learned that in 1999, well after the 1995 Settlement Agreement, Grace submitted to Royal for coverage under the Primary Policies a claim arising in Libby. See Deposition Transcript of Jeffrey Posner (May 6, 2009), pp. 138-39, Exhibit 11. As recently as last fall, the Debtors submitted a disclosure statement exhibit stating that non-products asbestos coverage under the Primary Policies remains unsettled. See Exhibit A, attached hereto. Since then, Grace has abandoned this position. However, Grace's long-standing prior position that non-products asbestos coverage under the Primary Policies remains available certainly supports the Libby Claimants insistence on a careful and comprehensive inquiry into just what coverage was resolved the 1995 Settlement Agreement.

15. Even if the 1995 Settlement Agreement did somehow settle non-products coverage, the Libby Claimants are not bound to the Debtors' settlement because their rights against Royal had already vested at the time of the settlement and the insurance was not exhausted either before or by reason of the settlement. Under Montana law, once Grace obtained insurance from Royal, that insurance created rights in favor of the Libby Claimants that could not be abrogated by agreement between Grace and Royal. McLane v. Farmers Ins. Exchange, 432 P.2d 98 (Mont. 1967). McLane involved a liability insurance policy that, based on misrepresentations of the insured, was rescinded by the insurer after the occurrence of an accident giving rise to coverage under the policy. The insurer obtained a judgment rescinding the policy and contended that the judgment determined the rights of the injured third party

9

claimant, arguing that "the [third party] plaintiff can have no more rights in the policy than [the insured]." The Montana Supreme Court rejected that argument:

> [The insurance company's] judgment against [its insured] cannot affect the rights of the [third party] plaintiff for his rights vested prior to the attempted rescission. (45 C.J.S. Insurance s 453) They vested at either the time of the accident or at the time of the implied waiver of the right to rescind. Exactly which of the two possible times this court need not decide. <u>In either case [the insured] and the [insurer] cannot do anything either in concert or through the failure of [the insured] to defend to effect the rights of plaintiff after they vested</u>. 45 C.J.S Insurance s 455a(2).

<u>McLane</u>, 432 P.2d at 100 (emphasis added).

    16.    The Montana Supreme Court's decision in <u>McLane</u> follows the well-established rule that:

> The liability of the insurer with respect to insurance ... becomes absolute whenever injury or damage covered by such policy occurs. The policy may not be cancelled or annulled as to such liability by agreement between the insurer and the insured after the occurrence of the injury or damage.

1 Long, <u>The Law of Liability Insurance</u>, section 325; <u>see also</u> <u>Link v. Continental Casualty Company</u>, 470 F.2d 1133, 1138 (9th Cir. 1973) (citing <u>McLane</u> favorably in ruling that injured party had vested interest in liability policy notwithstanding insurer's success in coverage dispute with insured); <u>Spann v. Commercial Standard Ins. Co. of Dallas, Tex.</u>, 82 F.2d 593 (8th Cir. 1936) ("The rights of the injured party ... cannot be destroyed by an attempted subsequent cancellation, release, or compromise by the insured and insurer"); <u>Madar v. League Gen. Ins. Co.</u>, 394 N.W. 2d 90, 93-4 (Mich. Ct. App. 1986)("where coverage existed at the time of the accident, no subsequent acts by the parties could void that coverage"); <u>Bassett v. Federal Kemper Ins. Co.</u>, 565 S.W. 2d 823, 826 (Mo. Ct. App. 1978); <u>Charter Bank of Boonville v. Shelter Gen. Ins.</u>, 533 S.W. 2d 44, 47 (Mo. Ct. App 1984); <u>Bujol v. Entergy Services, Inc.</u>, 833 So.2d 947, 978 (La. Ct. App. 2002).

17.     Adequate protection of the Libby Claimants would certainly be accomplished by modifying the Proposed Settlement so as to preserve premises/operations coverage (see footnote 8 above). This was apparently the approach taken in other settlements between Grace and its insurers; Grace has provided no explanation why a different approach is taken in the Proposed Settlement. In the absence of any rationale for surrendering premises/operations coverage, no other type of adequate protection should be deemed sufficient.

### D.     The Motion Should be Denied Because the Proposed Settlement Provides Impermissibly Broad Injunctions and Releases in Favor of the Royal Parties.

#### 1.     The Proposed Settlement Violates Section 524(g)

18.     In conjunction with a Chapter 11 plan governed by Section 524(g), courts may not enter injunctions inconsistent with the limitations of Section 524(g). <u>In re Combustion Engineering</u>, 391 F.3d 190, 235-38 (3d Cir. 2004). The Proposed Settlement runs afoul of Section 524(g) in three respects:

- Section 524(g) permits injunctions to protect claims arising out of the four specific relationships with the debtor set forth in Section 524(g)(4)(A)(ii) (the "Four Categories"). Although, as an insurer, Royal itself may be protected under Section 524(g), the Proposed Settlement contemplates extension of the injunction far beyond permissible parties under Section 524(g).

- Section 524(g) permits protection only of a party who is identifiable by the terms of the injunction. The Proposed Settlement contemplates extension of the injunction too persons who are not identified or identifiable.

- Section 524(g) permits issuance of an injunction only where fair and equitable in light of the benefits provided by the beneficiary of the injunction. Under this standard, Royal may not be protected in relation to the Primary Policies because it is providing no consideration for such release.

11

## 2. The Proposed Settlement Commits the Asbestos PI Trust to Spend the Entire Settlement Amount Defending the Application of the Asbestos PI Channeling Injunction to Persons Beyond Its Permitted (or Actual) Scope

19. Section 524(g)(4)(A)(ii) establishes four categories of persons (the "Four Categories") who may be protected by an injunction under Section 524(g):

> [S]uch an injunction may bar any action directed against a third party who is identifiable from the terms of such injunction (by name or as part of an identifiable group) and is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability of such third party arises by reason of—
>
> **(I)** the third party's ownership of a financial interest in the debtor, a past or present affiliate of the debtor, or a predecessor in interest of the debtor;
>
> **(II)** the third party's involvement in the management of the debtor or a predecessor in interest of the debtor, or service as an officer, director or employee of the debtor or a related party;
>
> **(III)** the third party's provision of insurance to the debtor or a related party; or
>
> **(IV)** the third party's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the debtor or a related party, including but not limited to—
>
> **(aa)** involvement in providing financing (debt or equity), or advice to an entity involved in such a transaction; or
>
> **(bb)** acquiring or selling a financial interest in an entity as part of such a transaction.

In the case of the Proposed Settlement, only the third category—persons who supplied insurance to the debtor or a related party—applies.

20. The Proposed Settlement creates a broad definition of "Royal Parties":

> "Royal Parties" means (1) Arrowood Indemnity Company, individually, and as corporate successor-in-interest to Royal Indemnity Company, and its parent company, Arrowpoint Capital Corp., and Royal Indemnity Company; (2) each other Person over which, as of the Execution Date, the Persons listed in (1) above have the legal right, by way of contract, express corporate authority, or direct or indirect majority ownership, to act on behalf of or to bind, including each of the respective directors, members, officers, shareholders, agents, and employees of the Persons listed above, solely in their capacities as such.

Proposed Settlement § I.QQ (on page 10). The Libby Claimants acknowledge that Royal Indemnity Company is a person who supplied insurance to a related party of the Debtors. If the proponents of the Proposed Settlement demonstrate that Arrowood Indemnity Company ("Arrowood") is the actual corporate successor to Royal, then Arrowood, too, would qualify as a person who supplied insurance to a related party of the Debtors. But all the rest of the persons within the definition of Royal Parties—including Arrowood's parent company—do not qualify.

21.    Furthermore, the language of Section 524(g)(4)(A)(ii) quoted above requires that each beneficiary of a Section 524(g) injunction be "identifiable from the terms of such injunction (by name or as part of an identifiable group)." While the companies in part (1) of the definition of Royal Parties are identifiable, the persons in part (2) of the definition are not.

22.    Even though only (at most) two of the potentially hundreds of persons and entities swept up by the definition of Royal Parties are permissible beneficiaries of a Section 524(g) injunction, Section V.A of the Proposed Settlement requires that

> if any Person asserts against the Royal Parties an Asbestos PI Claim that is subject to the Asbestos PI Channeling Injunction ("Royal Channeling Injunction Claim") based on or arising under the Subject Insurance Policies, the [Asbestos PI Trust established under the proposed Chapter 11 plan] will expend its reasonable best efforts to establish that such Royal Channeling Injunction Claim is enjoined as to the Royal Parties and channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Bankruptcy Code Section 524(g).

The Proposed Settlement goes on to provide (Section V.B) that

> the Trust shall bear the costs and expenses, including attorneys' fees, of defending the application of the Asbestos PI Channeling Injunction to any Royal Channeling Injunction Claim, provided that the Trust's total obligation . . . shall not exceed an amount equal to the Settlement Amount.

Thus, the Proposed Settlement commits the Asbestos PI Trust to expend the entire $5.8 million that Royal will pay under the Proposed Settlement, to pay lawyers to advance the position that

{393.001-W0001175.}

persons who may not by the very terms of Section 524(g) be included in the Asbestos PI Channeling Injunction are in fact so included.

23.     It gets even worse. While the Asbestos PI Channeling Injunction under the proposed plan would, by its terms, include Royal itself and most likely Arrowood within its protection, the Asbestos PI Channeling Injunction does not even purport to protect the rest of the Royal Parties.[12] So under the Proposed Settlement, the Asbestos PI Trust will be committed to expend the entire amount paid by Royal in order to advance the position that the Asbestos PI Channeling Injunction protects parties who by its very terms are beyond the scope of its protection.

### 3. Royal Should Not Receive Injunctive Protection from Insurance Coverage It Has Not Paid to Settle

24.     Even as to persons who fit within the Four Categories of third parties who may be beneficiaries of a Section 524(g) injunction, there is the additional requirement: Such injunction must be "fair and equitable . . . in light of the benefits provided, or to be provided, to [the asbestos] trust on behalf of such . . . third party." 11 U.S.C. § 524(g)(4)(B)(ii). Largely this has been construed to mean that in order to be protected by an injunction, a third party must make a substantial financial contribution to the plan. In re Congoleum Corp., 362 B.R. 167, 179-80 (Bankr. D. N.J. 2007), and authorities cited therein.

25.     For the reasons just discussed, Royal's financial contribution is so illusory as to fail the "fair and equitable test." But even treating the $5.8 million Settlement Amount as real, the Proposed Settlement provides Royal with an injunction that is far broader than its financial

---

[12] Under the Plan, the Asbestos PI Channeling Injunction protects Asbestos Protected Parties. The only insurer-related parties included in the Plan's definition of Asbestos Protected Parties are Settled Asbestos Insurance Companies. A Settled Asbestos Insurance Company is an Asbestos Insurance Entity that meets various requirements. Asbestos Insurance Entity is defined to mean the insurance company alone, not its directors, officers, affiliates, etc.

{393.001-W0001175.}

contribution can justify.  It appears that the Settlement Amount was negotiated solely with reference to Royal's unsettled excess coverage.  If the Proposed Settlement could otherwise pass muster, it would certainly be permissible for Royal to receive Section 524(g) protection *against claims under the excess policies*.  But Royal should not receive protection against claims under the Primary Policies—at least, not without making an appropriate financial contribution in relation to the value of that coverage.  It is understandable that Royal would want injunctive protection equivalent in scope to a general release.  This Court need not decide whether an insurer may, over objection, receive this scope of injunctive protection where the general scope of the injunction is a "throw-in" to assure the settling insurer of comprehensive protection even from claims that no one thinks would be asserted.  In this instance, the general scope of the injunction is not a *throw-in* but a *throw-away*, because it has the effect of discarding valuable insurance rights that the Libby Claimants most certainly will assert to the full extent permitted by law.

### 4. The Proposed Settlement Impermissibly Requires the Asbestos Trust to Extract from Asbestos PI Claimants a Release of the Royal Parties in Order to Receive a Distribution from the Trust.

26.     Section IV(G) of the Proposed Settlement provides that the "Trust shall use its best efforts to require that any Person who accepts payments from the Trust shall be deemed to have finally and completely released and waived any and all Asbestos PI Claims against any of the Grace Released Parties and Royal Released Parties." Proposed Settlement, Section IV(G).  A provision deeming a creditor to give a release by reason of receiving a distribution under a plan is impermissible.  In re Zenith Electronics Corp., 241 B.R. 92, 111 (Bankr. D. Del. 1999) (Walrath, J.) ("[A] release of third party claims . . . cannot be accomplished without the affirmative agreement of the creditor affected.").  This Court indicated from the bench at the

October 27, 2008 hearing that claimants may not be deemed to grant a release solely by reason of receiving or retaining property under the Plan. See Hr'g Transcript, October 27, 2008, pp. 102, 107. Accordingly, this provision of the Proposed Settlement is improper and requires that the Motion be denied.

### E. The Proposed Settlement May Not Be Approved Because it is a Sub Rosa Plan of Reorganization.

27. The settlement agreement requires the Debtors, the Asbestos PI Committee and Asbestos PI Future Claimants' Representative to use reasonable best efforts to obtain an Asbestos PI Channeling Injunction and to confirm a plan that is a Plan, *i.e.*, conforms to the requirements of the Proposed Settlement. Proposed Settlement, III.D. As noted above, the provisions of the Proposed Settlement are entangled with the provisions of the Plan. Presumably, if the Proposed Settlement is approved, Royal would have an administrative expense claim for damages if this requirement were breached. By subjecting the estate to damages if the Plan Proponents go in a different direction concerning a plan, the settlement is effectively a *sub rosa* plan. See Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 700 F.2d 935, 940 (5th Cir. 1983). Accordingly, the Court should either deny approval of the Proposed Settlement or should defer consideration to the confirmation such that the settlement would only be approved if this Court decided to approve the existing Plan (or another plan).

### F. The Motion Should be Denied Because the Proposed Settlement is Unduly Prejudicial to the Libby Claimants.

28. Even if the Debtors were to demonstrate that the Proposed Settlement is otherwise in the best interest of the estate, the Motion must be denied because the Proposed Settlement is

{393.001-W0001175.}

unduly prejudicial to the Libby Claimants. In considering a settlement, the bankruptcy court must consider the rights and interests of all affected parties, not just the parties to the settlement:

> The fairness to the settling parties of a proposed settlement agreement may not warrant its approval if the rights of others who are not parties to the settlement agreement are unduly prejudiced. We must further determine that "no one has been set apart for unfair treatment." Cullen v. Riley (In re Masters Mates & Pilots Pension Plan), 957 F.2d 1020, 1026, 1031 (2d Cir. 1992). Ignoring the effect of a proposed [settlement] upon the rights of third parties "contravenes a basic notion of fairness. In re AWECO, 725 F.2d [293,] 298 [(5th Cir. 1984)]."

In re Medical Asset Mgmt., 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000). The surrender of valuable insurance coverage for the Libby Claimants is unfairly prejudicial to them, whether or not the Debtors might be able to portray the Proposed Settlement as otherwise advantageous to the Debtors' estate.

### III. Conclusion

29. Based on the foregoing, the Motion should be denied.

Respectfully submitted this 10th day of July, 2009.

Dated: July 10, 2009
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Daniel C. Cohn
Christopher M. Candon
**COHN WHITESELL & GOLDBERG LLP**
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679

*Counsel for Libby Claimants*

17

{393.001-W0001175.}