**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Related to Docket No.20872 |

---

**PHASE II TRIAL BRIEF ON BEHALF OF ALLSTATE INSURANCE
COMPANY, SOLELY AS SUCCESSOR IN INTEREST TO NORTHBROOK
EXCESS AND SURPLUS INSURANCE COMPANY, FORMERLY
NORTHROOK INSURANCE COMPANY, IN OPPOSITION TO
CONFIRMATION OF FIRST AMENDED JOINT PLAN OF
REORGANIZATION**

---

James S. Yoder, Esq. (DE #2643)
WHITE & WILLIAMS, L.L.P.
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899
(302) 467-4524

-and-

Stefano Calogero Esq.
Andrew K. Craig, Esq.
Edgar M. Whiting, Esq.
CUYLER BURK, P.C.
Parsippany Corporate Center
Four Century Drive
Parsippany, NJ 0705

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS........................................................................................... 3

ARGUMENT

      I.    THE PLAN PROPONENTS BEAR THE BURDEN OF PROVING
           THAT THE PLAN COMPLIES WITH 11 U.S.C §1129 .......................... 6

      II.   THE PLAN IMPERMISSIBLY ALTERS ALLSTATE'S RIGHTS
           UNDER THE 1996 SETTLEMENT AGREEMENT ................................ 6

      III.  THE PLAN IMPROPERLY TREATS ALLSTATE'S
           INDEMNIFICATION RIGHTS ("INDIRECT PI TRUST
           CLAIMS") UNDER BOTH THE 1994 AND 1996 SETTLEMENT
           AGREEMENTS ........................................................................................ 10

      IV.  ALLSTATE'S CONTRACTUAL INDEMNIFICATION CLAIMS
           ARE IMPROPERLY CLASSIFIED ........................................................ 14

      V.   TO THE EXTENT ANY POTENTIAL THIRD PARTY CLAIMS
           AGAINST ALLSTATE ARE NOT CHANNELED TO THE TRUST,
           ALLSTATE'S RIGHTS UNDER THE SETTLEMENT
           AGREEMENTS ARE FURTHER IMPAIRED ...................................... 14

      VI.  THE PROVISIONS FOR RETENTION OF JURISDICTION
           ARE IMPROPER AND OVERLY BROAD .......................................... 15

      VII. JOINDER OF OTHER INSURERS' PHASE II TRIAL BRIEFS ....... 15

CONCLUSION ......................................................................................................... 16

  
# TABLE OF AUTHORITIES

**Cases**

*Butner v. U.S.*, 440 U.S. 48 (1979) ................................................................. 8

*Fuller-Austin Insulation Co. v. Highlands Insurance Co.*, 135 Cal. App. 4th 958 (2d Dist. 2006) ................................................................................................. 8

*Harstad v. First American Bank*, 39 F.3d 898, 902 n.7 (8th Cir. 1994) ........................... 16

*Hays and Company v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3rd Cir. 1989) ............................................................................................. 13

*In re Amatex Corp.*, 97 B.R. 220, 221 (Bankr. E.D. Pa 1989) ................................. 13, 14

*In re Union Meeting Partners*, 165 B.R. 553 (Bankr. E.D. Pa. 1994, *aff'd*, 52 F.3d 317 (3d Cir. 1995) ............................................................................. 6

*In re Yates Development, Inc.* 256 F.3d 1285, 1290 (11th Cir. 2001) ............................. 13

*U.S. Commodities Futures Trading Commission v. NRG Energy, Inc.*, 457 F.3d 776 (8th Cir. 2006) .................................................................................... 16

**Other Authorities**

11 U.S.C. §105 ......................................................................................... 14

11 U.S.C. §1129(a)(1) ............................................................................. 6, 8, 9

11 U.S.C §1129(a)(3) ............................................................................. 6, 8, 9

28 U.S.C. §1334(c)(1) ............................................................................ 15, 16

28 U.S.C. §1334(c)(2) ................................................................................ 15

11 U.S.C. §§ 365(b)(1)(c) ............................................................................ 13

11 U.S.C. §§ 365(f)(2)(B) ............................................................................ 13

Allstate Insurance Company ("Allstate"), solely as successor in interest to Northbrook Excess and Surplus Insurance Company, formerly Northbrook Insurance Company ("Northbrook"), hereby submits this Phase II Trial Brief in opposition to confirmation of the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, and The Official Committee of Equity Security Holders (collectively the "Plan Proponents"), dated February 27, 2009 (the "Plan").

## PRELIMINARY STATEMENT

In 1994 and 1996, Allstate and W.R. Grace & Co. ("Grace") entered into two separate settlement agreements resolving disputes under fifteen Northbrook policies relating to alleged coverage of asbestos claims asserted against Grace.[1]  Under the 1994 Settlement Agreement, Allstate paid a considerable sum in exchange for, among other things, releases of coverage under the "products" coverage portions of eight of the policies together with Grace's agreement to indemnify Allstate against any liability and for defense costs arising from asbestos-related claims by any third-party based upon the released portions of those policies.  To the extent the Plan enjoins any such third-party claims against Allstate and channels them to the Asbestos PI Trust, Allstate raises no objection.  Certain provisions of the Asbestos PI Trust Agreement, however, limit Allstate's rights under the 1994 Agreement to be reimbursed the full amount of any

---

[1] The 1994 and 1996 Settlement Agreements are subject to the terms of a confidentiality provision and accordingly are not being included as an exhibit hereto.  They will be produced, subject to the terms of the protective order entered in this matter, pursuant to the Third Amended Case Management Order (Docket #21544).

indemnity claims it may have against Grace, and ultimately the Trust. Therefore, the Plan is simply not feasible.

The 1996 Settlement Agreement resolved the above coverage disputes arising from the other seven Northbrook policies. That agreement is a classic "coverage-in-place" type agreement that provides that once there is evidence of underlying exhaustion, properly documented claims are submitted to Allstate pursuant to a trigger and allocation framework for payment. Upon payment by Allstate in accordance with the terms of the 1996 Settlement Agreement, Allstate is to receive releases of coverage for those policies. Those payments have not yet become due. The 1996 Settlement Agreement further accords Allstate significant rights and Grace (the Trust under the Plan) certain obligations. Like the 1994 Settlement Agreement, it also requires Grace to indemnify Allstate against any liability and for defense of certain third-party claims asserted against Allstate. Under the Plan, however, the Plan Proponents seek to assign all of Grace's rights under the 1996 Settlement Agreement to the Asbestos PI Trust, but to seemingly avoid Grace's concomitant obligations. This is irreconcilable with the Plan's purported "insurer neutrality" provisions and applicable case law with respect to the assumption of executory or non-executory contracts.

In addition, the Plan seeks to channel any indemnification claims by Allstate under the 1996 Settlement Agreement to the Asbestos PI Trust, but unlike the treatment afforded the 1994 Settlement Agreement, does not enjoin those claims against Allstate and channel them to the trust. Thus, Allstate is left bearing its full obligations to the Asbestos PI Trust without the benefit of the Trust assuming those obligations under the

2

1996 Agreement, faces full exposure on potential third-party claims under both the 1994

and 1996 Agreements, and yet ostensibly has limited recourse against that the Trust.

Additional legal infirmities are also discussed in detail below.  In summary, in its

current form the Plan cannot be confirmed.

### STATEMENT OF FACTS

Northbrook issued fifteen (15) excess liability insurance policies to Grace

covering policy years ranging from June 30, 1975 through June 30, 1982.   Eight

Northbrook policies[2] are subject to releases of coverage in consideration for payments

that were made by Allstate in accordance with the terms of a Settlement Agreement that

became effective on June 7, 1994 (the "1994 Settlement Agreement").   All of those

policies are included by the Plan Proponents as "Asbestos Insurance Policies" identified

as the subject of an "Asbestos Insurance Settlement Agreement" in Exhibits 5 and 6 of

the Exhibit Book to the Plan.[3]  According to the Plan, the releases of coverage under the

1994 Settlement Agreement are limited to the "products" coverage under the policies, as

identified in Exhibit 5 to the Exhibit Book.

Pursuant to the terms of the 1994 Settlement Agreement, Grace is obligated to

indemnify Allstate against any liability, loss, cost or expense (with certain specified

exceptions) arising from any Asbestos-Related Claims (as defined by the 1994 Settlement

Agreement) by any third party that are based upon the aforesaid policies and arise out of

the Products/Completed Operations coverage portions of the policies (as defined in the

1994 Settlement Agreement).  Any such potential third party claims against Allstate are

---

[2]        The policies are 63 001 170, 63 002 048, 63 005 793, 63 001 171, 63 005 794, 63 006 854, 63 008
153, and 63 001 172.
[3]        All capitalized terms, unless otherwise defined herein, have the meanings given to them in the
First Amended Plan.

defined in the Plan as "Indirect PI Trust Claims" and are channeled to the Asbestos PI Trust to the extent Insurer is an "Asbestos Protected Party".  Allstate is an "Asbestos Protected Party" with respect to the 1994 Settlement Agreement.  In addition, any indemnification claim by Allstate against Grace pursuant to the 1994 Settlement Agreement is considered an Indirect PI Trust Claim and is likewise channeled to the Asbestos PI Trust.  All Indirect PI Trust Claims are to be resolved in accordance with the Trust Distribution Procedures.  Grace is to receive a discharge from all indemnification claims.

Seven additional Northbrook policies[4] are subject to releases of coverage once certain payments are made by Allstate in accordance with the terms of a Settlement Agreement that became effective on February 9, 1996 (the "1996 Settlement Agreement") (the 1994 Settlement Agreement and the 1996 Settlement Agreement are collectively referred to as the "Settlement Agreements").  Under the Plan, the rights to any payments from Allstate under the 1996 Settlement Agreement are also assigned to the Asbestos PI Trust.  As to the 1996 Settlement Agreement, Allstate is not considered a "Settled Asbestos Insurance Company" and receives no protection from the proposed Asbestos PI Channeling Injunction despite the fact that the terms of the 1996 Agreement meet the standards for Bankruptcy Code section 524(g) protection.  The 1996 Settlement Agreement is included by the Plan Proponents as "Asbestos Insurance Reimbursement Agreements" identified on Schedule 3 to Exhibit 6 to the Exhibit Book, the Asbestos Insurance Transfer Agreement.  Any potential recourse Allstate might have against Grace and/or the Asbestos PI Trust in the event third-party claims are asserted against Allstate

---

[4]     The policies are 63 005 795, 63 006 855, 63 008 154, 63 002 049, 63 004 784, 63 001 173, and 63 003 296.

directly would also constitute an Indirect PI Trust Claim and similarly be channeled to the Asbestos PI Trust.  All Indirect PI Trust Claims are to be resolved in accordance with the Trust Distribution Procedures.   Grace is to receive a discharge from those indemnification claims.

The 1996 Settlement Agreement permits Grace to seek reimbursement from Allstate only for amounts actually paid to claimants.  As noted above, all amounts sought by Grace under the policies identified in the 1994 Settlement Agreement have been paid, and Allstate has received a release of coverage for claims arising out of the Products/Completed Operations coverage portions of the applicable policies.  To date, no funds have become due from Allstate to Grace under the 1996 Settlement Agreement.  It is, however, anticipated that if the Plan is confirmed and Grace's rights under that agreement are assigned to the Asbestos PI Trust, the Trust will eventually make reimbursement demands upon Allstate as asbestos claims are paid.  Allstate has significant protections built into the 1996 Settlement Agreement to, among other things, ensure that any reimbursement demands are in conformity with the terms and conditions of the 1996 Settlement Agreement.  For example, Grace is obligated to permit Allstate to review Grace's files relating to both defense costs and indemnity payments for the applicable Asbestos-Related Claims; to provide quarterly reports to Allstate setting forth specific information relating to defense costs or indemnity payments allocable to the subject policies; and to participate in arbitration to resolve any dispute involving the Settlement Agreements.  Those are material terms to the 1996 Settlement Agreement that must be assumed by the Trust under the Plan if the Trust is to be assigned the rights under the 1996 Settlement Agreement.

5431824v.1

**ARGUMENT**

## I.    THE PLAN PROPONENTS BEAR THE BURDEN OF PROVING THAT THE PLAN COMPLIES WITH 11 U.S.C. §1129

Bankruptcy Code section 1129(a) provides that the court "shall confirm a plan only if all of" certain requirements are met.  Among those requirements are that "[t]he plan complies with the applicable provisions of this title" (11. U.S.C. §1129(a)(1)) and "has been proposed in good faith and not by any means forbidden by law" (*id.*, §1129(a)(3)).  The Plan Proponents have the burden of proving that the Plan complies with all applicable requirements of §1129.  *In re Union Meeting Partners*, 165 B.R. 553, 574 (Bankr. E.D. Pa. 1994, *aff'd*, 52 F.3d 317 (3d Cir. 1995).

## II.    THE PLAN IMPERMISSIBLY ALTERS ALLSTATE'S RIGHTS UNDER THE 1996 SETTLEMENT AGREEMENT

Under the Plan, Allstate's 1996 Agreement is defined as an "Asbestos Insurance Reimbursement Agreement" ("AIRA").  As to these policies, Allstate is not considered a "Settled Asbestos Insurance Company" and receives no protection from the proposed Asbestos PI Channeling Injunction despite the fact that the terms of the 1996 Agreement meet the standards for Bankruptcy Code section 524(g) protection.  The 1996 Settlement Agreement is included by the Plan Proponents as one of the "Asbestos Insurance Reimbursement Agreements" identified on Schedule 3 to Exhibit 6 to the Exhibit Book, the Asbestos Insurance Transfer Agreement.

Section 7.2.2(d)(iv) of the Plan provides that "[o]n the Effective Date, the Asbestos PI Trust shall be the successor to all rights of the Debtors and Non-Debtor Affiliates under each Asbestos Insurance Reimbursement Agreement.  The Asbestos PI Trust's payment of an Asbestos PI Claim under the PI TDP shall be deemed to constitute

settlement and payment of such claim by or on behalf of the Debtors or Non-Debtor Affiliates **within the meaning of, and in full compliance with,** each Asbestos Insurance Reimbursement Agreement." (emphasis added).  This provision of the Plan ostensibly eviscerates all contractual rights Allstate has to ensure that the various prerequisites for payment under the 1996 Settlement Agreement have been met and that payment is in fact contractually due.

Under the 1996 Settlement Agreement Allstate has certain rights and Grace has certain obligations which must be assumed by the Trust if the Trust is to receive the benefit of the proceeds of the 1996 Settlement Agreement.  As discussed above, the 1996 Settlement Agreement is a classic "coverage-in-place" type agreement with a specific process dictating how Grace will submit claims for payment and how Allstate will pay those claims.  By way of example, under the 1996 Settlement Agreement Grace has the following obligations and Allstate has the following rights:

- The Agreement has a specific detailed set of procedures for establishing which policies are triggered and for calculating the appropriate allocation of asbestos claims

- The Agreement grants auditing rights to Allstate to insure that any payments under the Agreement have been properly tendered and allocated.

- The Agreement requires that any revisions to the Agreement only be by written amendment consented to by both parties.

- The Agreement provides that Grace must provide detailed reports to Allstate setting forth payments made and the manner of allocation.

- The Agreement provides Allstate with a release(s) once Allstate pays the products/completed operations limits of its policies.

- The Agreement provides for an arbitration provision in the event of any dispute arising from the Agreement.

5431824v.1

Section 7.2.2(d)(iv) of the Plan clearly evidences the Plan Proponents' intent not to perform the above material terms, or in fact any terms, of the 1996 Settlement Agreement. Simply put the Plan's treatment of the AIRAs generally, and specifically Allstate's 1996 Settlement Agreement, is not proposed in good faith under Section 1129(a)(1) and (3), fails to find support in any Code provision, and therefore cannot be confirmed.

Moreover, the Plan and Trust Agreement provide that the Trust will pay only an as yet to be determined payment percentage to a direct asbestos bodily injury claimant. Accordingly, the Plan must provide that the Trust will only seek reimbursement from Allstate under the 1996 Settlement Agreement only that amount which it actually pays a claimant, rather than the full "scheduled value" of the claim. *Fuller-Austin Insulation Co. v. Highlands Insurance Co.*, 135 Cal. App. 4th 958 (2d Dist. 2006). To allow otherwise would permit the Trust to gain a "windfall" that the Supreme Court has condemned. *Butner v. U.S.*, 440 U.S. 48, 55 (1979). For example, using a mesothelioma claim as an example, under the TDPs the scheduled value would be $180,000 but applying a payment percentage of 30% results in a payment of $54,000. If the Trust was able to collect the scheduled value from Allstate it would result in an impermissible "windfall" of $126,000 to the Trust. *Id.*

In addition, to the extent that Sections 8.1.1 and 7.15 of the Plan fail to preserve Allstate's rights under the Code and the 1996 Agreement, the Plan is not proposed in good faith and contrary to 11 U.S.C. 1129(a)(1) and (3). Section 8.1.1 discharges all "Claims, Plan Claims, demands and Equity Interests of any nature whatsoever" against the Debtors and enjoins any actions to collect, recover or offset any such debt.

8

Section 7.15 of the Plan provides, in part, that

> (a)    Except to the extent provided in this Section 7.15, notwithstanding anything to the contrary in the Confirmation Order, the Plan or any of the Plan Documents, nothing in the Confirmation Order, the Plan or any of the Plan Documents (including any other provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect.

That same section, however, then carves out a substantial portion of the protections it purports to offer:

> (h)    The Asbestos Insurance Entities shall be subject to the releases and injunctions to the extent described in this Plan, and this Section 7.15 is not intended nor shall it be construed to limit the protections afforded to the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties by such releases and injunctions or to allow the Asbestos Insurance Entities to undertake any action against any of the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties that is contrary to such releases and/or injunctions.

> * * *

> (j)    Asbestos Insurance Entities that are parties to Asbestos Insurance Reimbursement Agreements shall be bound by the provisions of Section 7.2.2(d)(iv) with respect to such Asbestos Insurance Reimbursement Agreements.

By altering or altogether eliminating Allstate's rights (discussed above) under the 1996 Settlement Agreement and, second, to the extent Section 7.15 or any other provision that purports to preserve insurer neutrality is construed to be inapplicable to preserve Allstate's full and complete rights against Grace in light of the releases and discharges contained in sections 7.15 and 8.1.1 (or anywhere else in the Plan), the Plan impermissibly alters Allstate's rights under the policies and the 1996 Settlement Agreement, has not been proposed in good faith and contains terms forbidden by law, and therefore fails to comply with 11 U.S.C. §§1129(a)(1) and (3).

5431824v.1

III.    **THE PLAN IMPROPERLY TREATS ALLSTATE'S INDEMNIFICATION RIGHTS ("INDIRECT PI TRUST CLAIMS") UNDER BOTH THE 1994 AND 1996 SETTLEMENT AGREEMENTS**

The Plan, coupled with the Asbestos PI Trust Distribution Procedures ("Asbestos PI TDPs"), is woefully confusing as to the characterization and classification of indemnification claims by insurers who are parties to pre-petition settlement agreements with Grace.  Section 5.13 of the Asbestos PI TDPs states: "[a]ny claim of a Settled Asbestos Insurance Company seeking indemnification from Grace based upon or arising out of an Asbestos PI Claim (individually, an "**Indemnified Insurer TDP Claim"**) that is channeled to the PI Trust shall be reviewed, processed and if entitled to payment, paid by the PI Trust in accordance with this Section 5.13." The remainder of that section purports to set forth how such claims shall be reviewed, processed and if entitled to payment, paid by the PI Trust.

The Asbestos PI Trust definition of "Settled Asbestos Insurance Company" incorporates the definition utilized in the Plan, as follows:

> **"Settled Asbestos Insurance Company"** shall mean any Asbestos Insurance Entity that has entered into an Asbestos Insurance Settlement Agreement prior to the conclusion of the Confirmation Hearing; *but only* with respect to, and only to the extent of, any Asbestos Insurance Policy (or any portion thereof) identified as the subject of an Asbestos Insurance Settlement Agreement in Exhibit 5 in the Exhibit Book; *provided, however,* that (i) each such Asbestos Insurance Settlement Agreement is listed by the Plan Proponents, acting together, in Exhibit 5 and (ii) the Asbestos Insurance Settlement Agreement is approved by the Court as sufficiently comprehensive to warrant treatment under section 524(g) of the Bankruptcy Code; and *further provided*, for the avoidance of doubt, that an Asbestos Insurance Entity is a Settled Asbestos Insurance Company to the fullest extent, but only to the extent, provided by section 524(g) in respect of any claim that arises by reason of one of the activities enumerated in section 524(g)(4)(A)(ii).

The definition of "Asbestos Insurance Settlement Agreement", however, specifically excludes AIRAs like Allstate's 1996 Settlement Agreement.  The Plan defines that term as follows (emphasis supplied):

> **"Asbestos Insurance Settlement Agreement"** shall mean any settlement agreement between or among any of the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, or any of them or their predecessors, and any Asbestos Insurance Entity involving any Asbestos Insurance Policy, *provided, however*, that the term "Asbestos Insurance Settlement Agreement" **shall not include any Asbestos Insurance Reimbursement Agreement**, and further provided that the parties to an Asbestos Insurance Reimbursement may agree to modify such agreement to become an Asbestos Insurance Settlement Agreement.

Moreover, the Asbestos PI TDPs provides: "[a]s set forth in Section 5.6 below, Indirect PI Trust Claims, if any, shall be subject to the same categorization, evaluation, and payment provisions of this TDP as all other PI Trust Claims."  *See* Section 2.6. Section 5.6 of the Asbestos PI TDPs reference a definition of "Indirect PI Trust Claims" that is at odds with the Plan and excludes Allstate's potential indemnity claims.  The Plan defines "Indirect PI Trust Claims" as a "Claim or remedy, liability, or Demand against the Debtors, now existing or hereafter arising . . . that is . . . (y) held by any Entity that is a claim seeking payment, repayment, reimbursement, indemnification, subrogation, or contribution from the Debtors with respect to any **insurance settlement agreement**, surety bond, letter of credit, or other financial assurance issued or entered into by any Entity on account of, or with respect to, Asbestos PI Claims . . .."  Plan, § 1.1(138) (emphasis added).  The Asbestos PI TDPs define "Indirect PI Trust Claims" in a manner that eliminates the above-emphasized reference to "insurance settlement agreements." That conflict alone, if not rectified, should preclude plan confirmation.

In short, the Plan and Asbestos PI TDPs conflict and are confusing as to the treatment of insurer indemnification claims and also impermissibly exclude Allstate's indemnification claims altogether under its 1996 Settlement Agreement. Even assuming that the Plan Proponents intend to treat Allstate's (and other AIRA insurers') indemnification claims under the 1996 Settlement Agreement as Indirect PI Trust Claims and remedy the above, they are improperly treated as Class 6 claims (discussed in Point IV below) and furthermore impair Allstate's rights under both of its Settlement Agreements.

Under the Plan, any insurers' Indirect PI Trust Claim would not be paid in full as it would be subject to the payment percentage under the Trust Agreement, which is currently estimated to be a fraction (between 25-35%) of the actual value of such a claim. This impermissibly alters the terms and conditions of the Allstate Settlement Agreements by requiring Allstate to shoulder the majority of a claim that would otherwise be fully indemnified by Grace. Moreover, by subjecting Allstate's potential indemnity claims to the procedures and payment distribution percentages outlined in the Asbestos PI Trust Agreement, the Plan plainly purports to alter Allstate's contractual rights. For example, under the Plan, insurers' Indirect PI Trust Claims would be impermissibly lumped together with Direct PI Trust Claims (and other potential non-insurer Indirect PI Trust Claims), subject to the procedures in the Trust Distribution Procedures ("TDPs") that are clearly inapplicable to insurer indemnification claims and/or in conflict with the same procedures applicable to Direct PI Trust Claims. Further, the Trust fails to adequately address the manner and means by which an insurer could possibly assert a "valid"

Indirect PI Trust Claim where the insurer must provide (at minimum) proof of full payment to the direct claimant and a full and final release from the direct claimant.

In addition, the Plan Proponents contend that the Settlement Agreements are not executory contracts.[5]  However, nothing in the Agreements allows Grace to modify its indemnification obligations or to reduce the amounts paid, yet, as set forth above, this is precisely what the Plan does. Therefore, the Plan impermissibly seeks to alter the Settlement Agreements' express terms.

It is well established that debtors are bound by their pre-petition contracts. *Hays and Company v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153 (3rd Cir. 1989) (general rule "bind[s] trustees to pre-petition non-executory contracts"); *In re Amatex Corp.*, 97 B.R. 220, 221 (Bankr. E.D. Pa 1989).  Nor does the court have the power to rewrite contracts to allow debtors to perform on more favorable terms or otherwise enlarge the debtor's contractual rights.   *In re Yates Development, Inc.* 256 F.3d 1285, 1290 (11th Cir. 2001); *In re Amatex Corp.*, 97 B.R. at 221.  In *In re Amatex*, for example, the court rejected a debtor's argument that Bankruptcy Code section 105 authorized the court to compel various insurers to make lump-sum payments prior to their coming due under the terms of the policies.

Regardless of whether the Plan's treatment of the Settlement Agreements is analyzed under principles applicable to executory contracts or non-executory contracts, the result is the same – it does not comply with applicable provisions of Title 11 because

---

[5]  To the extent the Settlement Agreements are executory contracts to be assumed by the Debtors, the Plan cannot satisfy the Bankruptcy Code §§ 365(b)(1)(C) and 365(f)(2)(B) requirements that the Debtor, or assignee as the case may be, provide adequate assurance of its future performance.  On their face, the Plan and Asbestos PI Trust Agreement establish that Grace's obligations under the Settlement Agreements will unequivocally not be performed.

it either overreaches under 11 U.S.C. §105 or provides for treatment of contracts not otherwise authorized under the Bankruptcy Code.

## IV.     ALLSTATE'S CONTRACTUAL INDEMNIFICATION CLAIMS ARE IMPROPERLY CLASSIFIED

The Plan defines "General Unsecured Claims" to exclude Asbestos PI Claims. Plan, § 1.1(126).  The Plan provides, in general, for the payment in full of the allowed amount of General Unsecured Claims.   By including Allstate's contractual indemnification claims arising under the Settlement Agreements as "Asbestos PI Claims", and thereby (1) failing to classify them (and similar claims) separately or, alternatively, (2) excluding them as General Unsecured Claims, the Plan improperly classifies Allstate's claims.

## V.     TO THE EXTENT ANY POTENTIAL THIRD PARTY CLAIMS AGAINST ALLSTATE ARE NOT CHANNELED TO THE TRUST, ALLSTATE'S RIGHTS UNDER THE SETTLEMENT AGREEMENTS ARE FURTHER IMPAIRED

Various third parties who have asserted Asbestos PI Claims against the Debtors, which the Debtors have or may contend give rise to a reimbursement or payment obligation by Allstate, have objected or may object to the Plan.  If and to the extent any such objection is resolved or adjudicated in a manner that does not enjoin or prohibit direct action by such third parties against Allstate, the treatment of those claims will further impair Allstate's rights under the Settlement Agreements.  The practical effect of leaving Allstate with any direct exposure to third party claims, while at the same time limiting its indemnification claims, is that Allstate's exposure will be magnified, its contractual rights impaired and its benefit of the bargain denied.

## VI.    THE PROVISIONS FOR RETENTION OF JURISDICTION ARE IMPROPER AND OVERLY BROAD

Article 10 of the Plan contains numerous provisions for the "retention" of jurisdiction by the bankruptcy court to hear and determine a wide variety of matters. Among those, Article 10.9 provides that the bankruptcy court will retain jurisdiction "[t]o hear and determine matters concerning the Asbestos Insurance Policies, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreements, and Asbestos Insurance Settlement Agreements; *provided, however,* that the Court shall have nonexclusive jurisdiction over such matters."  To the extent this Court determines that it will retain jurisdiction over any matters, the scope of the retention can be no broader than would otherwise be permissible under applicable law.  The retention should not and cannot, for example, alter or otherwise limit the permissive or mandatory abstention provisions set forth in 28 U.S.C. §1334(c)(1) and (2).

A court cannot, by its own orders, expand its jurisdiction.  *U.S. Commodities Futures Trading Commission v. NRG Energy, Inc.*, 457 F.3d 776, 780 (8th Cir. 2006). Nor, in light of this principle, can a chapter 11 plan confer post-confirmation jurisdiction upon a court beyond that permitted by Congress.  *Harstad v. First American Bank*, 39 F.3d 898, 902 n.7 (8th Cir. 1994).  Accordingly, any retention of jurisdiction post-confirmation must be consistent with the Court's general jurisdictional grant and must respect the abstention provisions of 28 U.S.C. §1334.

## VII.    JOINDER OF OTHER INSURERS' PHASE II TRIAL BRIEFS

Allstate joins in the Phase II Trial Briefs by all other insurers to the extent not already identified above

## CONCLUSION

For the reasons set forth above, Allstate respectfully submits that the Court must deny confirmation of the Plan.

Dated: July 13, 2009
      Wilmington, Delaware

Respectfully submitted,

White & Williams, LLP

By: _____
JAMES S. YODER, ESQ. (DE #2643)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899
(302) 467-4524

-and-

Stefano Calogero Esq.
Andrew K. Craig, Esq.
Edgar Whiting, Esq.
CUYLER BURK, P.C.
Parsippany Corporate Center
Four Century Drive
Parsippany, NJ 07054

16