IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |
| | Ref. No. 22178 |

## LIBBY CLAIMANTS' OBJECTION TO PLAN PROPONENTS' MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF DR. TERRY M. SPEAR

Claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, hereby object to the Plan Proponents' Joint Expedited Motion In Limine to Exclude the Expert Report and Testimony of Dr. Terry M. Spear dated June 18, 2009 [Docket No. 22178] (the "Motion"), whereby the Plan Proponents move the Court, in limine, to exclude testimony from the Libby Claimants' expert, Dr. Terry M. Spear, at the confirmation hearing. Dr. Spear is an industrial hygienist with more than 10 years of personal experience evaluating asbestos hazards in and around Libby, Montana. He will provide both fact and expert testimony which is relevant to, and will assist the trier of fact to understand, issues raised by the Libby Claimants' Objection to the First Amended Joint Plan of Reorganization [Docket No. 21811] (the "Libby Claimants' Plan Objection"). The Libby Claimants respectfully request an order denying the Motion. In support of this Objection, the Libby Claimants state:

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 21365], as it may be amended and restated from time to time.

{393.001-W0001183.}

## LEGAL STANDARD

Pursuant to Rule 702, F.R.Evid., a witness qualified as an expert may provide opinion testimony which "will assist the trier of fact to understand the evidence or to determine a fact in issue. . ." Expert testimony should be freely admitted where helpful to the trier of fact. In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 857-58 (3d Cir. 1990) (the Federal Rules of Evidence "embody a strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact."). The Third Circuit Court of Appeals interprets the "helpfulness standard" in Rule 702 "broadly." American Tech. Res. v. U.S., 893 F.2d 651, 655-56 (3d Cir. 1990). Thus, any doubts as to whether an expert's testimony will be useful "should generally be resolved in favor of admissibility." In re Japanese Elec. Prods., 723 F.2d 238, 279 (3d Cir. 1983). The policy favoring admissibility of such evidence is particularly strong in bankruptcy courts, which have broad latitude to consider evidence relevant to the equities of a plan of reorganization. See N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 527 (1984).

## ARGUMENT

I. **Dr. Spear's fact and opinion testimony is relevant to the issues raised by the Libby Claimants' Objection to the Plan, and should be admitted to assist the trier of fact in understanding those issues.**

The basis for the Plan Proponents' motion is that Dr. Spear's testimony does not support or even relate to the issues raised by the Libby Claimants' Plan Objection. The Plan Proponents' argument, however, mischaracterizes, and demonstrates a misunderstanding of, the Libby Claimants' Plan Objection.

The Libby Claimants object to the Plan because, among the other defects, it violates the Bankruptcy Code's policy of equality of distribution and several provisions of the code enacted in furtherance thereof. "Equality of distribution among creditors is a central policy of the

Bankruptcy Code." In re Combustion Engineering, Inc., 391 F.3d 190, 239 (3d Cir. 2004). To achieve equality of distribution among creditors, the Bankruptcy Code requires that a plan of reorganization provide similar treatment to similarly situated claims, and further requires that only "substantially similar" claims be classified together. Id. The stated goal of the Plan is "paying all claimants over time as equivalent a share as possible of the value of their claims based on historical values for substantially similar claims in the tort system." TDP, § 2.1. Combustion Engineering and the Bankruptcy Code itself require that the goal be pursued on a basis that does not discriminate against the Libby Claimants.

To achieve the goal of paying claims proportionally to their tort system value, the Plan promulgates Trust Distribution Procedures that categorize asbestos injury claims based on disease categories and assign values to the claims with corresponding maximum values beyond which the claimant cannot recover under any circumstance, including a jury verdict exceeding the maximum value. TDP, § 5.3. One of the primary problems with the Plan is that it fails to account for factors, aside from the disease categories, which profoundly impact the value of claims in the tort system. Dr. Spear's testimony directly addresses those non-medical factors.[2]

Pursuant to the Plan, claimants suffering from mesothelioma receive the most favorable treatment. The rationale for treating mesothelioma claims favorably is that mesothelioma claims had higher values than other disease claims in the tort system, prior to Grace's petition for bankruptcy. Prior to Grace's petition for bankruptcy, the average mesothelioma settlement was for approximately $90,000. See Deposition of Jay Hughes, p. 159. In the same time-frame, however, the average settlement for a claim arising in Libby, at any disease level, was $268,000. Jay Hughes depo, p. 109. By contrast, the average settlement for any disease category

---

[2] Separately, the Libby Claimants argue that the medical criteria contained in the TDP are improper. Dr. Spear does not address this issue.

{393.001-W0001183.}                             3

nationwide was less than $2,500. Jay Hughes depo, Exhibit 1. Despite the fact that similar Libby claims settled for roughly three times the settlement average for mesothelioma claims pre-bankruptcy, the Plan values most of the Libby claims at a small fraction of the value for mesothelioma claims. Despite the fact that similar Libby claims settled for more than 100 times the nationwide settlement average, the Plan values the Libby claims in the same manner it values factually and legally distinct, and less valuable, claims held by other claimants.

In their Motion, the Plan Proponents claim none of the issues about which Dr. Spear would testify, including the conditions of Grace's worksite in Libby, are relevant. The argument ignores the undisputable fact that issues apart from disease level affect claim value. When asked why Grace paid substantially more to settle claims in Libby than it paid to settle other claims, the Grace attorney responsible for handling most of the claims nationwide explained:

> . . . the combination of the fact that we were the only defendant and the exposure issues were much different caused the cases to have higher values.
> \* \* \* \* \*
> . . . in a typical [non-Libby] case, we talked about the credibility of the witnesses; we talked about exposure; we often had information in our files that were either inconsistent with the presence of exposure at a particular building or the technical information we had about the products was inconsistent with the use they were talking about.
>
> But in Libby, we had a known commodity in terms of the process, the employment years, the people's role or function at the mine and mill. So we had a better idea. And it wouldn't typically have been an issue whether or not they were exposed to asbestos. . .

Jay Hughes depo, pp. 111-12.

Another Grace representative, Jeff Posner, testified 99.999% of the claims against Grace were products claims, the kinds of claims with which Mr. Hughes contrasted the Libby claims in his testimony. Jeff Posner depo, p. 193. The Libby claims involve exposure to asbestos generated during Grace's mining and milling activities in Libby. The claims involve exposure to

only Grace asbestos, as well as exposure to different levels of a different type of asbestos. Thus, as confirmed by the pre-bankruptcy settlement averages and acknowledged in Mr. Hughes' testimony, the Libby claims had substantially higher values than the products claims. The Plan Proponents' motion in limine, as well as the Plan itself, reflects a misunderstanding of these important factors driving the value of claims in the tort system. As a result, the Plan improperly classifies and values the Libby claims together with dissimilar products claims.

As an industrial hygienist with 11 years of personal experience evaluating industrial hygiene and exposure issues in Libby, Dr. Spear is uniquely qualified to testify regarding exposures to amphibole asbestos generated by Grace in Libby. His testimony is necessary to put the nature of the Libby claims in context, and to establish the similarity between the current Libby claims and the Libby claims settled for more than $250,000 on average prior to the bankruptcy. The testimony is necessary to assist the Court in understanding why the Libby claims are not substantially similar to the other claims with which the plan classifies and values them.[3]

In a footnote to their brief, the Plan Proponents complain that allowing Dr. Spear's testimony "would open the door to rebuttal testimony, causing unnecessary delay litigating tangential and irrelevant issues." Plan Proponents' Joint Expedited Motion in Limine to Exclude the Expert Report and Testimony of Dr. Terry M. Spear, p. 3, n.5. As noted herein, factors which Grace's own representatives acknowledge as causing the value of claims in Libby to exceed the value of the other claims against Grace by more than 100 times are not tangential and irrelevant issues. To the extent the Plan Proponents can properly present evidence addressing

---

[3] Prior to joining in this Motion, the Official Committee of Asbestos Personal Injury Claimants apparently recognized that issues involving exposure are relevant to Plan confirmation when they identified William Longo as an expert witness to testify regarding asbestos exposures outside of Libby. See Expert Report of William Longo dated December 29, 2008.

those issues, the Libby Claimants agree it should be presented to the Court. The Plan Proponents reference to "Grace's experts" who apparently disagree with Dr. Spear as to certain matters must be disregarded, however, because no such experts were properly identified or disclosed in this case. Dr. Spear was properly disclosed as an expert in December of last year. The deadline under the CMO to disclose expert testimony intended to rebut Dr. Spear's testimony passed long before the Plan Proponents attached the report of Dr. Joseph Rodricks to their motion on June 18, 2009.

Contrary to the Plan Proponents' argument, Dr. Spear's testimony is relevant to several important issues requiring resolution at the confirmation hearing. By explaining Grace's operations in Libby, the conditions at the Libby mine and mill, and the impact of the mining and milling activity to the town of Libby, Dr. Spear's testimony will assist the Court in understanding the nature of the Libby claims, including the manner in which the Libby claimants were exposed to Grace asbestos. Such an understanding is critical to assessing whether the Plan improperly classifies and values the Libby claims together with other claims which are not substantially similar. Understanding the nature of the Libby claims is also critical to assessing whether the value caps in the Plan improperly deprive the Libby Claimants of their right to have a jury fairly assess the value of their claims under the tort system.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

**CONCLUSION**

For the reasons set forth herein, the Court should deny the Plan Proponents' Motion and allow Dr. Terry Spear to testify at the confirmation hearing.

Dated: Wilmington, Delaware
July 13, 2009

**LANDIS RATH & COBB LLP**

*/s/ Kerri Mumford*

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Daniel C. Cohn
Christopher M. Candon
**COHN WHITESELL & GOLDBERG LLP**
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679

Counsel for Libby Claimants