**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. Grace & Co., et al., | : | Case No. 01-1139 (JKF) |
| | : | |
| Debtors. | : | (Jointly Administered) |

**Related to Docket No. 22331**

**OBJECTION OF FIREMAN'S FUND INSURANCE COMPANY,**
**ALLIANZ S.P.A., F/K/A RIUNIONE ADRIATICA DI SICURTA,**
**AND ALLIANZ SE, F/K/A ALLIANZ AKTIENGESELLSCHAFT TO**
**THE PLAN PROPONENTS' MOTION TO EXCLUDE SUCH EXHIBITS**

Fireman's Fund Insurance Company, Allianz S.p.A., f/k/a Riunione Adriatica Di Sicurta, and Allianz SE, f/k/a Allianz Aktiengesellschaft (collectively, "FFIC/Allianz"), hereby respond to *Plan Proponents' Objection To Proffered Trial Exhibits For Phase I Of The Confirmation Hearing and Motion To Exclude Such Exhibits* [Docket No. 22331] (the "Motion").

**Introduction and Background Facts**

The Phase I Confirmation Hearing in respect of the First Amended Plan[1] was conducted on June 22 and 23, 2009, on "(i) whether the First Amended Plan improperly affects the rights of the Debtors' insurers (in their capacity as insurers, but not creditors); [and] (ii) the standing of the Debtors' insurers (in their capacity as insurers, but not creditors) to litigate confirmation objections that involve issues other than those described in Section (i) ...." Third Amended Case Management Order [Docket No. 21544] (the "CMO"), at ¶ 1.

---

[1] The *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of February 27, 2009*. All capitalized terms not otherwise defined in this Phase II Trial Brief refer to those terms as currently defined in the First Amended Plan and/or in the Disclosure Statement relating to the First Amended Plan (the "Disclosure Statement") in the forms in which such documents appear on the docket as of this date.

SL1 934533v1/021630.00003

In accordance with the CMO, on May 20, 2009, and on June 6, 2009, respectively, FFIC/Allianz filed (i) *Final Phase I And Non-Surety Claim Related Phase II Objections Of Fireman's Fund Insurance Company, Allianz S.P.A., F/K/A Riunione Adriatica Di Sicurta, And Allianz Se, F/K/A Allianz Aktiengesellschaft To Confirmation Of The First Amended Joint Plan Of Reorganization* [Docket No. 21781] (the "Final Objections"), and (ii) *Phase I Trial Brief Of Fireman's Fund Insurance Company, Allianz S.P.A., F/K/A Riunione Adriatica Di Sicurta, And Allianz Se, F/K/A Allianz Aktiengesellschaft Pursuant to Third Amended Case Management Order* [Docket No. 21929] (the "Phase I Trial Brief") FFIC/Allianz incorporate their Final Objections and Phase I Trial Brief herein, as such serve as context and predicate for admission of evidence proffered by FFIC/Allianz in connection with the Phase I Confirmation Hearing. *See Notice of Service of Amended Hearing Exhibits of FFIC/Allianz With Respect To Phase I Confirmation Hearing Pursuant To Third Amended Case Management Order,* [Docket No. 22252], for a complete list of the proffered exhibits (the "FFIC/Allianz Exhibits").

On July 2, 2009, Plan Proponents filed the Motion, in which they object to:

- FFIC/Allianz Exhibits 1-32 (authentic and genuine copies of insurance policies) on relevance grounds;

- FFIC/Allianz Exhibit 33 (a true and correct copy of FFIC's Proof of Claim that appears on the claims register maintained for this case) on relevance, hearsay, authenticity, and foundation grounds;

- FFIC/Allianz Exhibits 34-36 (Plan Proponents admissions and verified interrogatory responses to FFIC/Allianz's written discovery) on relevance and hearsay grounds.

**ARGUMENT**

**The FFIC/Allianz Exhibits All Are Admissible
And Plan Proponents Objections Must be Denied**

The Plan Proponents' essential proposition is that no evidence is needed in respect of Phase I issues and, thus, none of the evidence offered by FFIC/Allianz (or other insurers) is "relevant" to the Court's determination of what the Plan Proponents submit are legal issues. Plan Proponents rely on *In re Combustion Engineering*, 391 F.3d 190, 217-18 (3d Cir. 2004) ("*Combustion Engineering")* but this decision does not support Plan Proponents' argument. Rather, it supports, at best, merely an argument that use of the identical "neutrality" language used there, which is not being used here, under identical circumstances, which do not exist here, could satisfy concerns over whether the First Amended Plan is "insurance neutral." But the insurance neutrality provisions contained in the First Amended Plan are not the same as *Combustion Engineering* – this Court already has observed during the Phase I Confirmation Hearing that aspects of the proposed neutrality language are confusing and require "tweaking."[2] Nor have the Plan Proponents put on any case establishing, or even suggesting, that the factual record established in *Combustion Engineering*, upon which the Third Circuit made its observations with respect to the insurance neutrality language originally drafted by this Court, are identical to those presented here.

As *Combustion Engineering* makes clear, the inquiry for this Court in regards to insurance neutrality is whether the rights of insurers are impaired by the First Amended Plan. In *Combustion Engineering* this inquiry was conducted against an evidentiary record with respect to whether and how insurer rights could be affected by confirmation of the plan in that

---

[2] As they argued at the Phase I Confirmation Hearing, FFIC/Allianz and other objecting insurers involved in the Phase I proceedings believe that the neutrality provisions of the First Amended Plan require substantially more than a tweak, and, to that end, have proposed alternative neutrality language to the Plan Proponents.

case. *See Id.* at 217; *In re Combustion Engineering*, 295 B.R. 459, 473 (Bankr. D. Del. 2003). Nothing in *Combustion Engineering* suggests that it addresses, as a legal proposition, in this still unsettled area, all situations upon which neutrality may impact – particularly where the insurance neutrality language at issue here is substantially different than the language before the *Combustion Engineering* court.[3]

---

[3] During argument on June 23, 2009, Debtors' counsel asserted (i) that the *Combustion Engineering* super-preemptory and neutrality language the Third Circuit *reviewed* was the "sole" vehicle by which insurance neutrality could be achieved in the plan confirmation context, and (ii) the Third Circuit had "fashioned" such language to "fix the problem" that had arisen in mass tort bankruptcies with respect to maintaining coverage defenses notwithstanding confirmation of a plan. Debtors' counsel is wrong on both points. The Third Circuit did not "fashion" the CE super-preemptory and neutrality language (which, although they refer to it as the "gold standard", the Plan Proponents have not adopted here). The Third Circuit held insurers lacked appellate standing under the "person aggrieved" standing doctrine to challenge the neutrality language that the Bankruptcy Court included in the order confirming the *Combustion Engineering* plan; but that they had standing on appeal to challenge the District Court's (at the behest of the asbestos claimants committee and the future claims representative) revision of the Bankruptcy Court's super-preemptory language. The Third Circuit did not draft either the neutrality or the super-preemptory language. Rather, as all appellate courts do, the Third Circuit simply reviewed what the District Court had done, pursuant to the insurer appeals, and determined that the District Court had erred in revising the Bankruptcy Court's super-preemptory language.

> The District Court modified the super-preemptory provision to apply more narrowly to "the insurers' legal, equitable or contractual rights, if any, *in respect of any claims* (as defined by section 101(5) of the Bankruptcy Code)" (emphasis added). . . . But by limiting the scope of the super-preemptory provision only to "claims" and not to broader "rights," the District Court exposed the Objecting Insurers and London Market Insurers to the possibility that other Plan provisions could affect aspects of subject policies and settlement agreements. As such, we conclude the Objecting Insurers and London Market Insurers have standing to challenge this modification. Although the District court found that "all substantive rights of the insurers were expressly preserved under the Plan per the order of" the Bankruptcy Court, it nevertheless altered the language of the provision in a manner the insurers claim was adverse to their rights. We agree with the insurers on this point. ***To resolve this matter, we note that at oral argument Combustion Engineering stated it would be amenable to reinstating the super-preemptory provision as drafted by the Bankruptcy Court. In this context, we will vacate the District Court's modification, restoring the provision as drafted by the Bankruptcy Court.***

391 F. 3d at 217-18 (emphasis supplied).

Nor did the Third Circuit hold that the neutrality language drafted by the Bankruptcy Court was the ***only*** vehicle by which neutrality can be achieved. Nowhere in the *Combustion Engineering* opinion is such a statement made, explicitly or implicitly. Of course, the *Combustion Engineering* language is not the only manner of expression when it comes to insurance neutrality, as since then, this Court has approved neutrality language in the *Kaiser Aluminum* and *Federal-Mogul* chapter 11 cases that goes well beyond the *Combustion Engineering* language. Moreover, the Plan Proponents themselves, while arguing that the *Combustion Engineering* language is the "gold standard" and claiming such as the "only" way that neutrality can be expressed, have abandoned the *Combustion Engineering* language in favor of section 7.15, which is substantially different from, and in several respects, at odds with, the *Combustion Engineering* language. Their stated justification for alteration of the *Combustion Engineering* language – the need for clarification of, and protections above that provided by, the *Combustion Engineering* language – is equally applicable to insurers' concerns about section 7.15 and the need for clarification of that language, which the Court also has acknowledged.

Any consideration of whether the First Amended Plan, inclusive of the neutrality language, affects insurer rights necessarily requires consideration of a factual record including evidence of what those rights are and how the First Amended Plan may affect them.[4] The evidence proffered by FFIC/Allianz relates to their rights that may be affected by confirmation of the First Amended Plan; thus, it is relevant under Federal Rule of Evidence 401, as such evidence tends to "make the existence of any fact that is of consequence to the determination of an action more probable … than it would be without the evidence." *See* Fed. R. Evid. 401.[5]

1.  Insurance Policies:

FFIC/Allianz provided excess liability insurance policies (the "FFIC/Allianz Policies") to Debtors pre-petition. The FFIC/Allianz Policies generally "follow form," except as otherwise noted in the FFIC/Allianz Policies, to certain underlying insurance policies (the "London Policies"). The FFIC/Allianz Policies expressly incorporate certain terms and conditions of the London Policies. Each of the FFIC/Allianz Policies contain, *inter alia*, anti-assignment, right (but not the obligation) to associate in the investigation and defense of claims for which coverage is sought, cooperation, consent to settlement provisions. FFIC/Allianz Exhibits 1-32 are the FFIC/Allianz Policies and the London Policies, which, as set forth on the record on June 23, 2009, are admissible (for the purposes only of the Phase I proceedings)

---

[4] FFIC/Allianz does not intend for any discussion herein to raise coverage issues and does not intend herein or otherwise in these cases to litigate or for this Court to determine issues that are properly reserved for a coverage court.

[5] "[U]nder Federal Rule of Evidence 401, a wide variety of information should be relevant to the issues in all but the most narrow and simple of lawsuits. Background information about witnesses, disputes and documents therefore is routinely received as relevant under Federal Rule of Evidence 401, so long as it is not prejudicial and is not unduly cumulative." J. McLaughlin, FED. EVID. PRACTICE GUIDE, Sec. 6.01[1][b] (Matthew Bender 2009).

pursuant to agreement between FFIC/Allianz and the Plan Proponents, subject only to the Plan Proponents "relevance" objection.

Rights of FFIC/Allianz are set forth in the policy documents. The Plan Proponents have offered nothing more than a conclusory "relevance" objection without specifics, relying solely on their view, contrary to the teaching of *Combustion Engineering*, that the First Amended Plan neutrality language can be considered in a vacuum, and without reference to the rights that they claim are being preserved by such language. But the Court cannot decide whether the First Amended Plan is insurance neutral without knowing what insurer rights may be affected. Thus, the Plan Proponents' relevance objection as to FFIC/Allianz Exhibits 1-32 must be overruled.

2. FFIC's Proof of Claim:

FFIC/Allianz Exhibit 33 is a true and correct copy of FFIC's Proof of Claim (Claim No. 15175 on the official claims docket), filed on March 28, 2003 (the "Proof of Claim").[6]

The Plan Proponents' objections of "hearsay", "authenticity", and "foundation" with regard to FFIC/Allianz Exhibit 33 should be summarily denied. Pursuant to Fed. R. Evid. 103, the mere invocation of such labels as "hearsay", "authenticity" or "foundation" are insufficient without at least some explanation, which is not provided, as to how the evidence in question runs afoul of these principles. *See, e.g., Noonan v. Caledonia Gold Mining Co.*, 121

---

[6] By way of background, FFIC is a creditor of Grace (the "Surety Claim") under a pre-petition "Indemnity Agreement" under which Grace assumed a contractual obligation to indemnify FFIC for any loss FFIC suffered under a supersedeas bond in excess of $43 million (the "Bond"). The Proof of Claim asserts an unsecured claim for the full amount of the Bond, $43,038,931.91, which is the maximum amount that Grace is obligated to pay to FFIC pursuant to the Indemnity Agreement should FFIC incur any loss as a result of furnishing the Bond. The Proof of Claim also asserts a secured claim based on a $13 million letter of credit provided by Wachovia Bank to secure Grace's obligations to FFIC under the Indemnity Agreement, including the payment of premiums. That FFIC is a creditor makes the neutrality and standing arguments that the Plan Proponents are advancing moot as against FFIC.

U.S. 393, 400 (1887) ("Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if, under the circumstances, that can be done.")

To the extent FFIC/Allianz are able to guess what the Plan Proponents are attempting to convey with respect to these vague objections, the objections are without merit. The Proof of Claim is not hearsay and there is a proper foundation for it because it is not being proffered to prove the amount and validity of the claim, but rather to show simply that FFIC has asserted a claim as a creditor against Grace. Moreover, the authenticity objection lacks merit as FFIC/Allianz Exhibit 33 is exactly the same as the Proof of Claim for FFIC maintained by Debtors' claims agent on the claim register for this case.[7]

3.  Plan Proponents' Discovery Responses:

Aside from the general relevance objection raised by Plan Proponents to the entirety of insurers' evidence, which has been addressed above, they also raise hearsay objections with respect to their discovery responses to FFIC/Allianz's written discovery (FFIC/Allianz Exhibits 34-36). After "culling" the responses, those that FFIC/Allianz seeks to admit are Requests for Admission ("RFA") Nos. 5-8, 13-19, 28-29, 33-35, 88-92, and 96 and Interrogatory ("Interrog.") No. 21, which are generally described below:

> \*   RFA Nos. 5-8 relate to the Plan Proponents not seeking or obtaining FFIC/Allianz's consent to the proposed TDPs and the Plan Proponents decision not to include FFIC/Allianz in the drafting and development of the TDPs.

---

[7] We note that the Court may in any event take judicial notice of its own records. *See, e.g., In Re Indian Palms Assoc.*, 61 F.3d 197, 204-205 (3d Cir. 1995) ("[I]t is not seriously questioned that the filing of documents in the case record provides competent evidence of certain facts – that a specific document was filed, that a party took a certain position, that certain judicial findings, allegations, or admissions were made." )

\*       RFA Nos. 13-19 relate to the Trust's exclusive right to process and pay Asbestos PI Claims and that the TDP does not allow participation by FFIC/Allianz in the investigation, defense, or settlement of Asbestos PI Claims.

\*       RFA Nos. 28-29 relate to the Reorganized Debtors and/or the Trust's obligations to cooperate in the defense of claims under the FFIC/Allianz Policies.

\*       RFA Nos. 33-35 relate to the fact that Plan Proponents did not include FFIC/Allianz in any negotiations that led to or resulted in the First Amended Plan and that FFIC/Allianz did not consent to nor did they approve the First Amended Plan or TDP procedures for processing and paying Asbestos PI Claims.

\*       RFA Nos. 88-92 relate to what type of claims the Trust will make against FFIC/Allianz in the future and how the Confirmation Order, findings of fact, and any related orders may be used by the Trust against FFIC/Allianz in any subsequent coverage litigation.

\*       RFA No. 96 relates to the applicability of the exculpation and release provisions of section 11.9 of the First Amended Plan to FFIC/Allianz.

\*       Interrog. No. 21 seeks the names of all Representatives, Entities, and individuals who are subject to the exculpation and release provisions of section 11.9 of the First Amended Plan; and evidences that the Plan Proponents will not, or cannot, identify such people.

Clearly, a parties' discovery responses are admissions, and, thus, are not hearsay under Federal Rule of Evidence 801(d)(2). Plan Proponents have not cited any authority to the contrary. Their admissions relate to the operation of the First Amended Plan with respect to FFIC/Allianz's rights and Debtors' obligations and should be admitted as such.

SL1 934533v1/021630.00003

## **Joinder**

FFIC/Allianz also hereby joins any other insurer response to the Motion, and to modify and/or supplement this Response based on ongoing discovery and any revisions to the First Amended Joint Plan.

Dated: July 13, 2009
      Wilmington, Delaware

STEVENS & LEE, P.C.

 /s/ *John D. Demmy.*
John D. Demmy (DE Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

-and-

Leonard P. Goldberger
Marnie E. Simon
(Members PA Bar)
1818 Market Street, 29th Floor
Philadelphia, PA 19103-1702
Telephone: (215) 751-2864/2885
Telecopier: (610) 371-7376/8505
Email: lpg@stevenslee.com
Email: mes@stevenslee.com

ATTORNEYS FOR FIREMAN'S FUND INSURANCE COMPANY, ALLIANZ S.p.A., f/k/a RIUNIONE ADRIATICA DI SICURTA, AND ALLIANZ SE, f/k/a ALLIANZ AKTIENGESELLSCHAFT