# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| In re | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W.R. GRACE & CO., *et al.,* | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Related to Dkt. No. 20872** |

## FIREMAN'S FUND INSURANCE COMPANY'S PHASE II TRIAL BRIEF RELATING TO ITS "SURETY CLAIM"

John D. Demmy (DE Bar No. 2802)
STEVENS & LEE, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone:  (302) 425-3308
Telecopier:  (610) 371-8515
Email:  jdd@stevenslee.com

Leonard P. Goldberger
Marnie E. Simon
STEVENS & LEE, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA  19103-1702
Telephone:  (215) 751-2864/2885
Telecopier:  (610) 371-7376/8505
Email:  lpg@stevenslee.com
Email:  mes@stevenslee.com

Mark D. Plevin
Leslie A. Davis
Tacie H. Yoon
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 624-2500
Telecopier:  (202) 628-5116
Email:  mplevin@crowell.com
Email:  ldavis@crowell.com
Email:  tyoon@crowell.com


Attorneys for Fireman's Fund Insurance Company


Dated:  July 13, 2009

# TABLE OF CONTENTS

**Page**

**TABLE OF CONTENTS**............................................................................... i

**TABLE OF AUTHORITIES**.................................................................... iii

**FACTUAL BACKGROUND** ...................................................................4

    A.    The Supersedeas Bond Fireman's Fund Posted To Secure
        Grace's Appeal Of The <u>Edwards</u> Judgment.................................4

    B.    Fireman's Fund's Surety Claim Against Grace ........................6

    C.    Fireman's Fund's Right To Setoff............................................8

**ARGUMENT** ............................................................................................9

I.    The Plan Does Not Meet The Confirmation Requirements Of
    § 1129(a) Because Of Its Improper Treatment Of Fireman's Fund's
    Surety Claim And Its Abridgment Of Fireman's Fund's Legal Right
    To Setoff...................................................................................................9

    A.    The Plan Violates § 1129(a)(1) Because It Fails To Comply
        With Numerous Provisions Of Chapter 11 Of The Bankruptcy
        Code.........................................................................................9

            1.    The Plan fails to preserve Fireman's Fund's statutory
                right, pursuant to § 553(a), to set off amounts that
                Grace owes to Fireman's Fund under the Indemnity
                Agreement against any obligations allegedly owed
                under Fireman's Fund's insurance policies ....................9

            2.    The Plan violates § 1122(a) because it improperly
                classifies Fireman's Fund's entire claim under the
                Indemnity Agreement in Class 6 with Asbestos PI
                Claims, instead of in Class 9, with respect to its
                unsecured claim, and Class 2 with respect to the part of
                its claim that is secured by the Wachovia Letter of
                Credit……………………………..………..................................12

            3.    The Plan violates §§ 1123(a)(3) and 1123(a)(4) because
                it fails to specify the treatment of Fireman's Fund's
                Surety Claim, and it discriminates among claimants
                within the same class...............................................18

B.   The Plan Does Not Satisfy The Requirement Under
§ 1129(a)(3) That It Be Proposed In "Good Faith And Not By
Any Means Forbidden By Law" ............................................................22

1.   The Plan was not proposed in good faith .....................................22

2.   The Plan violates Fireman's Fund's contractual rights
under applicable non-bankruptcy law ..........................................24

II.   The Plan Violates § 524(g) By Improperly Channeling Fireman's
Fund's Indemnity Claim To The Asbestos PI Trust ...........................................27

**CONCLUSION** ........................................................................................29

# TABLE OF AUTHORITIES

**FEDERAL CASES** <u>**Page**</u>

In re ACandS, Inc., 311 B.R. 36 (Bankr. D. Del. 2004)..................................................22

In re AOV Indus., Inc., 792 F.2d 1140 (D.C. Cir. 1986),
     vacated on other grounds, 797 F.3d 1004 (D.C. Cir. 1986).................................13, 20

Barnes v. Whelan, 689 F.2d 193 (D.C. Cir. 1982) ..........................................................13

In re Butler, 42 B.R. 777 (Bankr. D. Ark. 1984).............................................................19

In re Cajun Electric Power Coop., Inc., 230 B.R. 715 (M.D. La. 1999) ..........................24

Citizens Bank of Maryland v. Strumpf, 516 U.S. 286 (1995) ..........................................10

In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004) ...................................28

In re Communications Dynamics, Inc., 382 B.R. 219
     (Bankr. D. Del. 2008)..............................................................................................10

In re Congoleum Corp., 362 B.R. 167 (Bankr. D.N.J. 2007)....................................13, 14

In re Coram Healthcare Corp., 315 B.R. 321 (Bankr. D. Del. 2004) ...................13, 15, 22

In re Dow Corning Corp., 244 B.R. 634 (Bankr. E.D. Mich. 1999),
     aff'd, 255 B.R. 445 (E.D. Mich. 2000),
     aff'd and remanded, 280 F.3d 648 (6th Cir. 2002).....................................................13

In re Jersey City Med. Ctr., 817 F.2d 1055 (3d Cir. 1987)..............................................13

In re Jorgensen, 66 B.R. 104 (9th Cir. B.A.P. 1986)......................................................22

In re Lund, 136 B.R. 237 (Bankr. N.D. 1990) ...............................................................10

Lundell v. Anchor Construction Specialists, Inc.
     223 F.3d 1035 (9th Cir. 2000) ...................................................................................7

M&T Elec. Contractors, Inc. v. Capital Lighting & Supply, Inc.
     (In re M&T Elec. Contractors, Inc.), 267 B.R. 434 (Bankr. D.D.C. 2001) .................7

Matter of Bevill, Bresler & Schulman Asset Mgt., 896 F.2d 54 (3d Cir. 1990)...............10

Matter of Farley Inc., 236 F.3d 359 (7th Cir. 2000)......................................................27

Matter of Isis Foods, Inc., 24 B.R. 75 (Bankr. W.D. Mo. 1982)......................................12

Metco Mining & Minerals, Inc. v. PBS Coals, Inc.
    (In re Metco Mining & Minerals, Inc.),
    171 B.R. 210 (Bankr. W.D. Pa. 1994) ....................................................................10

Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392 (9th Cir. 1996)......................12

In re Northeast Dairy Cooperative Federation,
    73 B.R. 239 (Bankr. N.D.N.Y. 1987) ......................................................................14

In re Phoenix Petroleum Co., 278 B.R. 385 (Bankr. E.D. Pa. 2001) ...............................10

In re Planet Hollywood International, 274 B.R. 391 (Bankr. D. Del. 2001) ...................21

In re Richard Buick, Inc., 126 B.R. 840 (Bankr. E.D. Pa. 1991) ..............................13, 14

In re Salem Suede, Inc., 219 B.R. 922 (Bankr. D. Mass. 1998)......................................14

In re Smith, 123 B.R. 863 (C.D. Cal. 1991).............................................................20, 21

Steelcase, Inc. v. Johnston (In re Johnston), 21 F.3d 323 (9th Cir. 1994)......................14

United States v. Continental Airlines (In re Continental Airlines),
    134 F.3d 536 (3d Cir. 1998) ....................................................................................12

In re Walker, 165 B.R. 994 (E.D. Va. 1994)..................................................................21

Williams v. American Bank of the Mid-Cities, N.A.
    (In re Williams), 61 B.R. 567 (Bankr. N.D. Tex. 1986) ...........................................12

In re Zenith Elec. Corp., 241 B.R. 92 (Bankr. D. Del. 1999) .........................................24

**STATE CASES**

Cohen v. Karp, 122 A. 524 (Md. 1923).........................................................................10

Edwards, et al. v. Pittsburgh Corning Corp., et al., No. B-150,896-J
    (Tex. Dist. Ct., Jefferson Cty., 60th Judicial Dist.) (Final Judgment) .........................4

Gingher v. Fanseen, 172 A. 75 (Md. 1934) ...................................................................10

Harrison v. Adams, 128 P.2d 9 (Cal. 1942)...................................................................10

In re Lumbermen's Mutual, 184 S.W.3d 718 (Tex. 2006) ..............................................25

Mid-Century Insurance Co. v. Boyte, 80 S.W.3d 546 (Tex. 2002)....................................5

Muniz v. Vasquez, 797 S.W.2d 147 (Tex. App. – Houston [14th Dist.] 1990)...............16

Sommers v. Concepcion, 20 S.W.3d 27 (Tex. App. 2000)..............................................10

State v. Watts, 197 S.W.2d 197 (Tex. Civ. App. – Austin 1946) ...................................16

W.R. Grace & Co. v. Edwards, et al., Opinion dated April 13, 2001,
No. 06-00-00112-CV (Tex. App. April 13, 2001) ...........................................................6

**FEDERAL STATUTES**

11 U.S.C. § 524(g).....................................................................................................27, 28

11 U.S.C. § 553(a)....................................................................................................*passim*

11 U.S.C. § 1122(a)..................................................................................................*passim*

11 U.S.C. § 1123(a)..................................................................................................*passim*

11 U.S.C. § 1129(a)..................................................................................................*passim*

**RULES**

Fed. R. Bankr. R. 3007 .....................................................................................................7

Texas Rule of Appellate Procedure 24.1  ..........................................................................5

Texas Civil Practice & Remedies Code Annotated § 52.001 ...........................................5

**OTHER**

Restatement (First) Of Security § 103 ..............................................................................7

Restatement (Third) of Suretyship § 21(1) ...................................................... 7, 17, 22, 27

Fireman's Fund Insurance Company ("Fireman's Fund") is both an insurer and a creditor of the Debtors. This Phase II Trial Brief discusses the grounds for denying confirmation of the First Amended Joint Plan Of Reorganization of W.R. Grace & Co. (the "Plan," Dkt. No. 20872) and the evidence that Fireman's Fund will prove during the Phase II confirmation hearing, with respect to its status as the holder of a $43+ million contingent contractual indemnity claim that is subject to setoff (the "Surety Claim"). Fireman's Fund is also filing today a separate Phase II Trial Brief with respect to non-Surety Claim-related issues.

We believe that the material facts relating to Fireman's Fund's Surety Claim-related objections are not contested. Fireman Fund's Surety Claim arises from (i) a pre-petition supersedeas bond (the "Bond") posted by Fireman's Fund on behalf of W.R. Grace & Co. and W.R. Grace & Co.-Conn. (together, "Grace") in connection with Grace's appeal of a Texas state court judgment against it in five consolidated asbestos personal injury cases (collectively, "Edwards") and (ii) a related pre-petition "Indemnity Agreement" under which Grace assumed a contractual obligation to indemnify Fireman's Fund for any and all loss Fireman's Fund suffers under the Bond. The face amount of the Bond is slightly more than $43 million. Grace obtained the Bond to forestall efforts by the Edwards plaintiffs to execute their judgment against Grace's assets while the appeal was pending.

The appeal that is the subject of the Bond has been stayed by Grace's bankruptcy case. Once the appeal resumes and the amount of Grace's liability (if any) for the underlying judgment is determined, Fireman's Fund will be entitled to set off Grace's obligation to Fireman's Fund under the Indemnity Agreement (reflecting any amounts Fireman's Fund is required to pay under the Bond) against Grace's claim for insurance coverage of underlying asbestos liabilities under insurance policies issued by Fireman's Fund, since both obligations are mutual and arose pre-petition.

- 1 -

Fireman's Fund will demonstrate during the Phase II Confirmation Hearing that the Plan fails to meet the requirements of § 1129(a) and thus cannot be confirmed.  In particular, Fireman's Fund will present evidence and argument to show the following:

1.    The Plan violates § 1129(a)(1) because it fails to comply with numerous provisions of Chapter 11 of the Bankruptcy Code.

a.    The Plan violates § 553(a) by failing to preserve Fireman's Fund's right, under applicable non-bankruptcy law, to set off the amounts allegedly owed by Fireman's Fund to Grace under Fireman's Fund's insurance policies against the obligations that Grace owes to Fireman's Fund under the Indemnity Agreement.

b.    The Plan violates § 1122(a) by improperly classifying Fireman's Fund's Surety Claim as an Indirect PI Trust Claim within Class 6 (Asbestos PI Claims), rather than classifying it as a General Unsecured Claim in Class 9.

c.    The Plan violates § 1123(a)(3) because it fails to specify the treatment of Fireman's Fund's Surety Claim, assuming it remains classified in Class 6.  Rather, the TDPs provide that Indirect PI Trust Claims "shall be processed in accordance with procedures *to be developed* and implemented by the Trustees."[1]  That is simply too vague and uncertain to pass muster.

d.    The Plan violates § 1123(a)(4) by failing to "provide the same treatment for each claim or interest of a particular class."  The Plan purports to establish procedures to pay Asbestos PI Claims pursuant to a

---

[1]    TDP § 5.6 (emphasis added).

matrix set forth in the TDP, but the TDP fails to set out any procedures for the treatment of Indirect PI Trust Claims, which under the Plan are classified in the same class as Asbestos PI Claims.  The Plan is also silent as to the treatment of the portion of Fireman's Fund's Surety Claim that is secured by a letter of credit that was issued in favor of Fireman's Fund pre-petition.  Therefore, there is no indication that the Plan will provide the same treatment for the type of Indirect PI Trust Claim that Grace contends Fireman's Fund holds as it does for Asbestos PI Claims.

2.      The Plan does not satisfy the requirement under § 1129(a)(3) that it be "proposed in good faith and not by any means forbidden by law."

a.      The Plan has not been proposed in good faith because, as the evidence will show, the Plan Proponents were aware of the Indemnity Agreement and Fireman's Fund's right thereunder to be fully indemnified for any amounts it is required to pay under the Bond, but they nevertheless drafted the Plan in a way that violates Fireman's Fund's contractual rights and eliminates its setoff rights.

b.      The Plan violates Fireman's Fund's contractual rights under the Bond and the Indemnity Agreement by, among other things, (i) imposing extracontractual conditions on Fireman's Fund being paid and (ii) improperly converting the Bond, which is a form of guaranty, into an asset at Debtors' disposal.

c.      The Plan improperly vests in the Asbestos PI Trust the exclusive right to control the prosecution of the Edwards appeal by assigning to, and "indefeasibly vest[ing]" in the Trust "all of the actions, claims, rights,

defenses, counterclaims, suits, and causes of action of the Debtors" and
granting the Asbestos PI Trust the "exclusive right" to enforce the Asbestos
PI Trust Causes Of Action.[2]  In fact, under the Indemnity Agreement and
applicable Texas law, Fireman's Fund has the right to control prosecution of
the appeal, if Grace fails to do so.

Fireman's Fund will also demonstrate that the attempt to channel Fireman's
Fund's Surety Claim to the Asbestos PI Trust pursuant to § 524(g) is improper and precludes
confirmation.

For all of these reasons, the Plan in its present form cannot be confirmed.

## FACTUAL BACKGROUND

A.    **The Supersedeas Bond Fireman's Fund Posted To Secure Grace's
       Appeal Of The __Edwards__ Judgment**

In April, 2000, Grace suffered a judgment in Texas state court under which the
Edwards plaintiffs were awarded compensatory damages against Grace totaling $21 million,
punitive damages against Grace in the amount of $21.5 million, and post-judgment interest at the
rate of 12 percent per annum.[3]  (Interest accrued to date on the compensatory damages portion of
the judgment amounts to approximately $22 million.)  Grace has appealed the judgment.[4]

Under Texas law, a judgment holder may immediately begin execution against a
judgment debtor's assets, notwithstanding the pendency of an appeal, unless collateral is posted

---

[2]    Plan §§ 1.1.47, 7.2.4, 7.2.8.

[3]    *See* Final Judgment, Edwards, *et al.* v. Pittsburgh Corning Corp., *et al.*, No. B-150,896-J (Tex. Dist.
Ct., Jefferson Cty., 60th Judicial Dist.).  A true and correct copy of the judgment is attached to Fireman's
Fund's proof of claim.  *See* Declaration of Richard Kowalczyk In Support Of Motion By Fireman's Fund
Insurance Company Pursuant To Bankruptcy Rule 3018 For Temporary Allowance Of Proof Of Claim
No. 15175 (the "Kowalczyk Decl.") (Dkt. No. 21788), at Exh. 3.

to secure payment of the judgment in the event the appeal is unsuccessful and the judgment

debtor fails to satisfy the judgment.[5]  In order to stay execution of the judgment against its assets

while it appealed, Grace obtained the Bond from Fireman's Fund.  The Bond is a supersedeas

bond in the amount of $43,038,931.91.[6]

    The uncontested evidence will show that as an express precondition to its

willingness to issue the Bond, Fireman's Fund required that Grace enter into the Indemnity

Agreement, pursuant to which Grace is obligated to indemnify Fireman's Fund for any and all

loss that Fireman's Fund incurs as a result of issuing the Bond:

> The Indemnitors [Grace] will indemnify the Surety [Fireman's Fund] against any and
> all liability, loss, costs, damages, fees of attorneys and other expenses which the
> Surety may sustain or incur by reason of, or in consequence of the execution of such
> Bonds and any renewal, continuation or successor thereof, including but not limited
> to sums paid or liabilities incurred in settlement of and expenses paid or incurred in
> connection with claims, suits or judgments under such Bonds, expenses paid or
> incurred in enforcing the terms hereof, in procuring or attempting to procure release
> from liability, or in recovering or attempting to recover losses or expenses paid or
> incurred, as aforesaid.[7]

    The Indemnity Agreement also obligates Grace to pay premiums for the Bond, as

---

*(Continued from previous page)*

[4]  *See* Transcript of May 13, 2009 Deposition of Richard Finke ("Finke Tr.") at 267:16-19, Exh. 1 to the accompanying Declaration of Leslie A. Davis In Support Of Fireman's Fund Insurance Company's Phase II Trial Brief Relating To Its Surety Claim (the "Davis Decl.").

[5]  *See* Mid-Century Ins. Co. of Texas v. Boyte, 80 S.W.3d 546, 548 (Tex. 2002) ("parties become judgment debtor and judgment creditor at the entry of the trial court's judgment, not when all appeals are finalized"); Tex. R. App. P. 24.1 (setting forth the manner in which a judgment debtor can suspend enforcement of a judgment, including by "filing with the trial court clerk a good and sufficient bond" or "making a deposit with the trial court clerk in lieu of a bond"); Tex. Civ. Prac. & Rem. Code Ann. § 52.001 (defining "security" as "a bond or deposit posted, as provided by the Texas Rules of Appellate Procedure, by a judgment debtor to ***suspend execution of the judgment during appeal of the judgment***") (emphasis added).

[6]  *See* Finke Tr. at 269:2-16.  A true and correct copy of the Bond is attached to Fireman's Fund's Proof of Claim No. 15715.

[7]  Finke Tr. at 269:17-270:7 (Grace's Rule 30(b)(6) witness testifying that Fireman's Fund required that Grace enter into the Indemnity Agreement as a condition of Fireman's Fund's issuance of the Bond and

*(Continued)*

long as potential liability under the Bond continues.[8]

Grace's obligations under the Indemnity Agreement are secured by an Irrevocable Letter Of Credit in the amount of $13 million issued by Wachovia Bank, N.A. that names Fireman's Fund as the Beneficiary (the "Letter of Credit").[9]  To date, Fireman's Fund has drawn approximately $1.8 million on the Letter of Credit due to Grace's failure to pay premiums owed on the Bond, leaving approximately $11,204,000.00 available.[10]

On April 13, 2001, after learning of Debtors' bankruptcy filing and the consequent automatic stay, the Texas Court of Appeals suspended the Edwards appeal, and entered an order stating that "for administrative purposes this case is abated and will be treated as closed."[11]  At that time, Grace had filed its opening appellate brief, but no other proceedings had taken place.  In particular, the appellees had not yet filed any response to Grace's opening appellate brief.  The appeal remains abated, and no decision has yet been rendered.[12]

### B.     Fireman's Fund's Surety Claim Against Grace

On March 27, 2003, Fireman's Fund timely filed its proof of claim in this bankruptcy case, asserting the Surety Claim.[13]  The proof of claim asserts an unsecured claim for the full amount of the Bond, $43,038,931.91, which is the maximum amount that Grace could be

---

*(Continued from previous page)*
that the Indemnity Agreement requires Grace to reimburse amounts paid by Fireman's Fund under the Bond).

[8]     Indemnity Agreement at ¶¶ 1, 2.  A true and correct copy of the Indemnity Agreement is attached to Fireman's Fund's Proof of Claim No. 15715.

[9]     *See* Finke Tr. at 275:16-276:2; Kowalczyk Decl. at ¶ 5.

[10]    *See* Finke Tr. at 276:3-11; Kowalczyk Decl. at ¶ 6.

[11]    Opinion dated April 13, 2001, W.R. Grace & Co. v. Edwards, *et al.*, No. 06-00-00112-CV (Tex. App. April 13, 2001).  A true and correct copy of the April 13, 2001 Opinion is attached to the Kowalczyk Decl. as Exh. 4.

[12]    *See* Finke Tr. at 268:15-18.

[13]    *See* Proof of Claim No. 15715.

obligated to pay to Fireman's Fund pursuant to the Indemnity Agreement, should Fireman's

Fund incur any loss as a result of furnishing the Bond.  The proof of claim also asserts a secured

claim based on the $13 million Letter of Credit.  No one has objected to Fireman's Fund's proof

of claim, hence the claim is deemed allowed in the full amount.[14]

Fireman's Fund's Surety Claim is contingent on Grace failing to pay a final

judgment to the Edwards plaintiffs if Grace's appeal is unsuccessful.  Grace, of course, is the

primary obligor on any final judgment in favor of the Edwards plaintiffs; Fireman's Fund, as the

surety under the Bond, is only a secondary obligor, and is obligated to pay only in the event that

Grace fails to do so.  The Indemnity Agreement ensures that the ultimate obligation to pay the

judgment remains with Grace, where it belongs.[15]  Under the Indemnity Agreement, Grace is

liable to reimburse Fireman's Fund for 100 percent of any payment Fireman's Fund makes under

the Bond.  The amount of Grace's obligation to Fireman's Fund under the Indemnity Agreement

is presently uncertain, because it is uncertain how much, if anything, Fireman's Fund may be

required to pay under the Bond.  Grace has never contended that the Indemnity Agreement is

unenforceable, and the undisputed evidence shows that Grace is aware of no facts to suggest that

---

[14]   See, e.g., Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000) ("A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes 'prima facie evidence of the validity and amount of the claim' pursuant to Bankruptcy Rule 3001(f)").  See also Fed. R. Bankr. P. 3007.

[15]   M&T Elec. Contractors, Inc. v. Capital Lighting & Supply, Inc. (In re M&T Elec. Contractors, Inc.), 267 B.R. 434, 446 (Bankr. D.D.C. 2001) ("As between the surety and the surety's principal, the surety is only secondarily liable to the obligee:  the surety's principal is the principal obligor liable to the obligee, with the surety obligated to pay only when the obligor fails timely to pay the obligee").  See also Restatement (First) of Security § 103 ("Where suretyship exists, it is the duty of the principal to the surety to satisfy the surety's obligation by performing his own duty to the creditor"); Restatement (Third) of Suretyship § 21(1) ("If the principal obligor is charged with notice of the secondary obligation . . . the principal obligor has the duty to the secondary obligor (a) to perform the underlying obligation . . . and (b) to refrain from conduct that impairs the expectation of the secondary obligor that the principal obligor will honor its duty of performance").

the Indemnity Agreement is unenforceable.[16]

Grace could owe Fireman's Fund as much as $43,038,931.91, if (i) the appeal is reinstated on the docket of the Texas Court of Appeals, (ii) the trial court's judgment in favor of the Edwards plaintiffs is affirmed (both in the Texas Court of Appeals and in any subsequent proceedings before the Texas Supreme Court), (iii) Grace fails to pay the final judgment, and (iv) Fireman's Fund is required to pay the judgment pursuant to the Bond.  The amount Grace would then owe Fireman's Fund would be the full amount paid by Fireman's Fund (*i.e.*, the amount of the judgment and accrued post-judgment interest (but likely excluding punitive damages), up to the $43+ million face amount of the Bond, less whatever remaining collateral Fireman's Fund is able to draw under the Letter of Credit.

Based on the numerous errors committed by the trial court, the likelihood of Grace's appeal being successful is very high.  As Grace's Rule 30(b)(6) witness testified in this case, "Grace believes it has a very strong position on the appeal and that the appeal should be pursued."[17]

C.    **Fireman's Fund's Right To Setoff**

Fireman's Fund is one of several insurance companies that, pre-petition, issued comprehensive general liability insurance policies to Grace that Grace asserts provide coverage for its liability to asbestos personal injury claimants.  Grace seeks to apply the proceeds of the Fireman's Fund policies, if any, to fund its proposed § 524(g) Trust.[18]  Grace's claims to the

---

[16]    *See* Finke Tr. at 277:20-278:2 (Grace's Rule 30(b)(6) witness testifying that he is "not aware of any facts" suggesting "that the indemnity agreement is not enforceable according to its terms").

[17]    *Id*. at 283:10-12.  *See also id*. at 267:16-24 (Grace's Rule 30(b)(6) witness testifying that Grace appealed the judgment for the Edwards plaintiffs because "Grace felt that the trial had been infected with errors as set forth in the brief that Grace filed in the [Texas] Court of Appeals").

[18]    Plan at § 7.2.2.

Fireman's Fund insurance proceeds are unquestionably pre-petition claims because the Fireman's Fund policies were issued long before Grace filed for bankruptcy.

Fireman's Fund's Surety Claim against Grace under the pre-petition Indemnity Agreement is also a pre-petition claim, albeit contingent on a post-petition event. As discussed below, Fireman's Fund has an absolute right under § 553(a) of the Bankruptcy Code to use the amount of Grace's payment obligation under the Indemnity Agreement as an offset to reduce the amount of insurance policy proceeds that Grace claims Fireman's Fund is obligated to pay under the policies it issued to Grace. That setoff right existed before Grace filed for bankruptcy, and the Bankruptcy Code requires that it be preserved. Indeed, undisputed evidence shows that at the time the Plan was being negotiated, Grace was aware of Fireman's Fund's setoff rights, based on Grace's direct involvement in the Edwards appeal, the issuance by Fireman's Fund of the supersedeas bond, and the Indemnity Agreement.[19] But despite its knowledge of Fireman's Fund's setoff rights, Grace and the other Plan Proponents have failed to preserve Fireman's Fund's right of setoff through the Plan. Therefore, the Plan cannot be confirmed.

## ARGUMENT

I.    **The Plan Does Not Meet The Confirmation Requirements Of § 1129(a) Because Of Its Improper Treatment Of Fireman's Fund's Surety Claim And Its Abridgment Of Fireman's Fund's Legal Right To Setoff.**

    A.    **The Plan Violates § 1129(a)(1) Because It Fails To Comply With Numerous Provisions Of The Bankruptcy Code.**

        1.    **The Plan fails to preserve Fireman's Fund's statutory right, pursuant to § 553(a), to set off amounts that Grace owes to Fireman's Fund under the Indemnity Agreement against any obligations allegedly owed under Fireman's Fund's insurance policies.**

Section 553(a) of the Bankruptcy Code provides that "this title does not affect any

---

[19]    *See* Finke Tr. at 283:15-21.

right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before

the commencement of the case . . . against a claim of such creditor against the debtor that arose

before the commencement of the case."[20]  This language not only establishes a right to setoff in

bankruptcy, it is also controlling notwithstanding any other provision of the Bankruptcy Code.

In other words, a creditor's right to setoff cannot be affected by a plan.[21]  Nevertheless, the Plan

in this case purports to cut off Fireman's Fund's setoff rights.  As a result, the Plan cannot be

confirmed.

Section 553(a) preserves in bankruptcy any setoff rights that exist under

applicable non-bankruptcy law.[22]  As one bankruptcy court has explained, the right to setoff

allows "[p]arties owing mutual debts . . . to state the accounts between them, to subtract the one

from the other, and to pay only the balance.  This practice is grounded in avoiding the absurdity

of 'making A pay B when B owes A.'"[23]

---

[20]   11 U.S.C. § 553(a).

[21]   *See*, *e.g.*, In re Phoenix Petroleum Co., 278 B.R. 385, 400 (Bankr. E.D. Pa. 2001) ("a creditor does
not lose its setoff rights when it properly asserts that right prior to confirmation"); In re Lund, 136 B.R.
237, 241 (Bankr. N.D. 1990) (plan could not be confirmed because it "fails to preserve [a party's]
contractual right of setoff").

[22]   11 U.S.C. § 553(a); Citizens Bank of Maryland v. Strumpf, 516 U.S. 286, 289 (1995); Metco Mining
& Minerals, Inc. v. PBS Coals, Inc. (In re Metco Mining & Minerals, Inc.), 171 B.R. 210, 216 (Bankr.
W.D. Pa. 1994).  A right to set off mutual debts has long been recognized in Texas (where the Edwards
trial took place), Maryland (where Grace is located, and where it signed the Indemnity Agreement), and
California (where Fireman's Fund is located).  *See, e.g.,* Sommers v. Concepcion, 20 S.W.3d 27, 35 (Tex.
App. 2000) ("The right of setoff allows entities that owe each other money to apply their debts to each
other"); Gingher v. Fanseen, 172 A. 75, 78 (Md. 1934) ("'The defense of set-off, technically, means a
cross-claim, and is confined to mutual debts between the plaintiff and defendant'"), quoting Cohen v.
Karp, 122 A. 524, 525 (Md. 1923); Harrison v. Adams, 128 P.2d 9, 11 (Cal. 1942) ("it is well settled that
a court of equity will compel a set-off when mutual demands are held under such circumstances that one
of them should be applied against the other and only the balance recovered").

[23]   Metco, 171 B.R. at 216, quoting Matter of Bevill, Bresler & Schulman Asset Mgt., 896 F.2d 54, 57
(3d Cir. 1990). *See also* In re Communications Dynamics, Inc., 382 B.R. 219, 228 (Bankr. D. Del. 2008)
("Courts have allowed this right [of setoff] because without it, it would be unfair to require a creditor to
pay in full what is owed to the debtor only to receive a portion, if that, of its claim against the debtor").

But although § 553 mandates that setoff rights are preserved notwithstanding any other provision of the Bankruptcy Code, it appears that the Plan improperly purports to eliminate Fireman's Fund's setoff rights (to the extent Fireman's Fund's claim remains classified as a Class 6 Indirect PI Trust Claim). In response to interrogatories propounded by Fireman's Fund, Grace stated that the Surety Claim and Fireman's Fund's setoff rights would be treated as Asbestos PI Claims pursuant to § 3.1.6(b) of the Plan, and resolved pursuant to the "Indirect PI Trust Claims" provision set forth in § 5.6 of the TDP.[24] The Asbestos PI Channeling Injunction described in § 8.2.1 of the Plan expressly enjoins holders of Asbestos PI Claims (defined to include Indirect PI Trust Claims), from "setting off . . . or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any [Debtors], or any property or interest in property of any [Debtors]."[25] The "sole recourse" of the holder of an Asbestos PI Claim under the Plan "shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling Injunction and the Asbestos PI TDP."[26] But the Asbestos PI TDP fails to specify how a claim like Fireman's Fund's will be treated if it remains in Class 6, and, in any event, nowhere permits a party such as Fireman's Fund to exercise its setoff rights.

The Plan must fully preserve Fireman's Fund's setoff rights even though the Surety Claim is presently contingent and unliquidated. As the Ninth Circuit held in Newbery, "'a claim may . . . be set off without regard to whether it is contingent or unliquidated, as long as the

---

[24] *See* Debtor W.R. Grace's Responses To Fireman's Fund's First Set Of Contention Interrogatories Regarding First Amended Joint Plan Of Reorganization (Surety Bond Issues), Responses to Interrogatory Nos. 2 and 8, attached as Exh. 2 to the Davis Decl.

[25] Plan § 8.2.1.(d).

[26] *Id.* § 8.2.1.

claim qualifies as 'mutual' under applicable nonbankruptcy law. . . .'"[27]  Texas law likewise

permits a creditor to pursue an unmatured set-off claim, provided the obligor is insolvent.[28]  In

Williams, a Texas bankruptcy court upheld a bank's setoff claim against an account holder,

finding that "it is clear that the Bank also had a valid [setoff] right on the petition date, even

though the note had not 'matured' by its terms.  Under Texas law, it is clear that a bank may

offset an unmatured debt if the customer is 'insolvent.'"[29]  The debtor's bankruptcy filing itself

was considered a judicial admission of insolvency.[30]

      Here, where Fireman's Fund indisputably has a right of setoff, the Plan must

preserve Fireman's Fund's ability to exercise that right when and if the Surety Claim becomes

liquidated.[31]  Because it does not, the Plan violates §§ 553 and 1129(a)(1) of the Bankruptcy

Code and cannot be confirmed.

> **2.**      **The Plan violates § 1122(a) because it improperly classifies Fireman's Fund's entire claim under the Indemnity Agreement in Class 6 with Asbestos PI Claims, instead of in Class 9, with respect to its unsecured claim, and Class 2 with respect to the part of its claim that is secured by the Wachovia Letter of Credit.**

      The Plan classifies Fireman's Fund's Surety Claim, which is a contractual

indemnity claim, as an Indirect PI Trust Claim within Class 6, along with the claims of thousands

---

[27]   Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1398-99 (9th Cir. 1996) (citation omitted). *See also* Matter of Isis Foods, Inc., 24 B.R. 75, 76 (Bankr. W.D. Mo. 1982) ("It is patent law on the issue of setoff [ ] that 'the right of setoff may be asserted in the bankruptcy case even though at the time the petition is filed one of the debts involved is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated.  Nor is it necessary that the debt sought to be setoff be due when the case is commenced'") (citation omitted).

[28]   Williams v. American Bank of the Mid-Cities, N.A. (In re Williams), 61 B.R. 567, 571 n.4 (Bankr. N.D. Tex. 1986).

[29]   *Id.*

[30]   *Id.*

[31]   *See* United States v. Continental Airlines (In re Continental Airlines), 134 F.3d 536, 541 (3d Cir. 1998) ("a right to set-off is preserved under § 553 in a bankruptcy proceeding").

of asbestos personal injury plaintiffs whose claims, referred to as "Asbestos PI Claims," all arise

in tort. But since Fireman's Fund's Surety Claim is completely different in nature and legal

character from the Asbestos PI Claims, it should properly be classified as a General Unsecured

Claim in Class 9. The failure of the Plan to properly classify Fireman's Fund's claim violates §

1122(a) of the Bankruptcy Code, which permits claims to be placed in the same class only if they

are "substantially similar."[32]

> The purpose of classifying similar claims together is to "insure[ ] that 'classes of

claims will have similar interests and that votes cast by the class will reflect joint interests of the

class.'"[33] There are no such joint interests here between the Asbestos PI Claimants – who allege

that Grace is liable to them in tort for personal injuries they have allegedly suffered – and

Fireman's Fund, to whom Grace is liable under a written indemnification contract whose purpose

is to make Fireman's Fund whole for any amounts it advances on behalf of Grace, the primary

obligor under any final judgment in favor of the <u>Edwards</u> plaintiffs. Therefore, the classification

of Fireman's Fund's Surety Claim in Class 6 does not satisfy the Bankruptcy Code's requirement

that "classification of the claims or interests must be reasonable."[34]

> In classifying claims and determining what claims are "substantially similar"

under § 1122(a), "what matters is the legal character of the claim."[35] The Ninth Circuit's ruling

---

[32] <u>In re Jersey City Med. Ctr.</u>, 817 F.2d 1055, 1060 (3d Cir. 1987). *See also* <u>In re AOV Indus., Inc.</u>, 792 F.2d 1140, 1150 (D.C. Cir. 1986) ("any group created must be homogeneous"), quoting <u>Barnes v. Whelan</u>, 689 F.2d 193, 201 (D.C. Cir. 1982), *vacated on other grounds*, 797 F.2d 1004 (D.C. Cir. 1986).

[33] <u>In re Richard Buick, Inc.</u>, 126 B.R. 840, 853 (Bankr. E.D. Pa. 1991) (citation omitted).

[34] <u>Jersey City Med. Ctr.</u>, 817 F.2d at 1061.

[35] <u>In re Congoleum Corp.</u>, 362 B.R. 167, 183 (Bankr. D.N.J. 2007). *See also* <u>In re Coram Healthcare Corp.</u>, 315 B.R. 321, 349 (Bankr. D. Del. 2004) ("A proper determination of whether claims are 'substantially similar' focuses on the nature of the claims"); <u>In re Dow Corning Corp.</u>, 244 B.R. 634, 644 (Bankr. E.D. Mich. 1999), *aff'd*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002) (in determining whether claims are "substantially similar," courts examine whether they are

*(Continued)*

in Steelcase[36] is instructive.  In that case, the court affirmed lower court rulings approving a plan that classified the claim of one unsecured creditor, Steelcase, separately from the claims of other unsecured creditors.  The Ninth Circuit framed the relevant question as follows:  "Whether the issue [ ] is denial of separate classification or approval of separate classification, the question . . . is the same:  are the claims substantially similar?"[37]  Answering that question, the Ninth Circuit found that Steelcase's claim was not substantially similar to other unsecured claims, and therefore was properly classified separately, because "the legal character of [Steelcase's] claim is ***not*** 'substantially similar to the other claims or interests of such [unsecured] class[es].'"[38]

> [Steelcase's] claim, unlike all others, is partially secured by collateral . . . Steelcase . . . unlike all other unsecured creditors, is embroiled in litigation with [debtor], and [ ] its claim thus may be offset. . . .  Steelcase cannot deny the possibility, if not necessarily the probability, that, if successful in the litigation, it could be paid in full before all other unsecured creditors.[39]

The court in Congoleum likewise examined the "legal character" of asbestos claims that had been placed into four separate classes, and concluded that there was no reasonable justification for separately classifying those claims because "the nature of the Class 2, 3, 10 and 11 claims vis-à-vis the bankruptcy estate is the same – they are tort claims."[40]

Similarly, in Coram, the court held that the claims of one group of unsecured creditors, arising

---

*(Continued from previous page)*
similar in "legal nature, character, or effect"); Richard Buick, 126 B.R. at 853 ("'the primary analysis centers upon the legal attributes of the claims. . . .  Emphasis is not upon the holder so much as it is upon that which is held'"), quoting In re Northeast Dairy Cooperative Federation, Inc., 73 B.R. 239, 250 (Bankr. N.D.N.Y. 1987).

[36]   Steelcase, Inc. v. Johnston (In re Johnston), 21 F.3d 323 (9th Cir. 1994).

[37]   *Id*. at 328.

[38]   *Id*. (emphasis in original).

[39]   *Id*.

[40]   Congoleum, 362 B.R. at 184.  *See also* In re Salem Suede, Inc., 219 B.R. 922, 933 (Bankr. D. Mass. 1998) (placing judgment creditors' secured and unsecured claims in the same class, and also separately

*(Continued)*

- 14 -

from the purchase of notes (the "Noteholders"), were properly classified separately from the unsecured claims of trade creditors, because (i) while the trade creditors' claims arose from the provision of services to the debtor, the Noteholders' claims did not, (ii) the Noteholders' claims were being treated differently by the plan, and (iii) the Noteholders "represent a voting interest that is sufficiently distinct from the trade creditors to merit a separate voice in this reorganization case."[41]

Fireman's Fund expects the Plan Proponents to argue that it is reasonable to classify the Surety Claim as an Asbestos PI Claim because it derives, at bottom, from Grace's alleged liability for an asbestos personal injury claim. In reality, as Fireman's Fund will show during the Phase II Confirmation Hearing, classifying the Surety Claim as an Asbestos PI Claim is not "reasonable" simply because it somehow relates to asbestos. Fireman's Fund will demonstrate the significant differences between the legal nature of the Surety Claim, on the one hand, and the thousands of Asbestos PI Claims in Class 6 and the handful of other indemnity/contribution claims that have also been classified as Indirect PI Trust Claims in Class 6, on the other hand. In particular, Fireman's Fund will prove that:

- Fireman's Fund's Surety Claim, unlike the other Asbestos PI Claims, is at least partially secured by (i) the Letter of Credit and (ii) its right to setoff the amount of the Surety Claim against its obligations, if any, to Grace under liability insurance policies issued by Fireman's Fund to Grace, which Grace contends provide coverage for Grace's asbestos liabilities.

---

*(Continued from previous page)*
classifying the judgment creditors' unsecured claims in a different class from the claims of other unsecured creditors, was improper).

[41]   <u>Coram</u>, 315 B.R. at 350-51.

- Fireman's Fund's Surety Claim is a contractual indemnity claim, whereas the Asbestos PI Claims arise in tort and the Indirect PI Trust Claims are mostly contribution claims by tort system co-defendants of Grace.

- The loss that Fireman's Fund would incur if it is required to make payment on the Bond is purely financial and contractual; there is no element of negligence on the part of Grace, and no bodily injury to Fireman's Fund, as there is regarding the tort claims of the Asbestos PI Claimants.

- Grace is the primary obligor to the Edwards plaintiffs, just as it is the primary obligor to all other Asbestos PI Claimants.  Grace is also the primary obligor with respect to contribution claims asserted against it by Indirect PI Trust Claimants who assert that they have settled a portion of Grace's liability to tort claimants.  In contrast, as surety under the Bond, Fireman's Fund is merely a secondary obligor, backstopping Grace's obligation to the Edwards plaintiffs under any final judgment.[42]  If Grace, as the primary obligor, fails to fulfill its obligations to asbestos claimants in the Edwards matter, and Fireman's Fund is forced to pay on the Bond, its contractual Surety Claim against Grace under the Indemnity Agreement is not somehow converted into an asbestos-related tort claim that can properly be classified in Class 6.

- Finally, the Bond which Fireman's Fund provided at Grace's request benefited Grace, by making it possible for Grace to avoid committing its own funds to stay execution of the

---

[42]  *See*, *e.g.*, Muniz v. Vasquez, 797 S.W.2d 147, 150 (Tex. App. – Houston [14th Dist.] 1990) ("The supersedeas bond is not an unconditional agreement to pay a stated sum of money; but imposes only a contingent or conditional liability, and its primary purpose is security"), citing State v. Watts, 197 S.W.2d 197, 199 (Tex. Civ. App. – Austin 1946).

Edwards judgment.[43]  This is a clear distinction between Fireman's Fund's Surety Claim and the tort claims of the Asbestos PI Claimants which are not based on any benefit they conferred on Grace.

For each of these reasons, the "legal character" of Fireman's Fund's claim is not substantially similar to that of the Asbestos PI Claims in Class 6, and Fireman's Fund's Surety Claim consequently cannot be included within Class 6.

Even Grace has expressed doubts about the correctness of having classified the Fireman's Fund Surety Claim in Class 6:  Grace's Rule 30(b)(6) witness testified that, although he was not surprised to learn that Fireman's Fund had been sent a Class 6 ballot, the classification of Fireman's Fund's claim was nevertheless "still under discussion and consideration at Grace" and the claim ultimately may be "classified differently."[44]  But for reasons unknown to Fireman's Fund, Grace apparently has decided to keep the Surety Claim in Class 6 – at least so far.[45]

Another problem with the proposed classification of the Surety Claim in Class 6 is that the Plan completely fails to address the portion of Fireman's Fund's claim that is

---

[43]    *See* Restatement (Third) of Suretyship § 21 cmt. a ("The existence of the secondary obligation, typically having served as inducement to an action or forbearance by the obligee, is beneficial to the principal obligor").

[44]    *See* Finke Tr. at 270:17-271:2; 336:24-337:13.

[45]    *See* Debtor W.R. Grace's Responses To Fireman's Fund's First Set Of Contention Interrogatories Regarding First Amended Joint Plan Of Reorganization (Surety Bond Issues), Responses to Interrogatory Nos. 1, 2, and 5, Exh. 2 to the Davis Decl.  *See also* Transcript of May 4, 2009 Deposition of Peter Van N. Lockwood at 616:23-617:22, Exh. 3 to the Davis Decl. (ACC's Rule 30(b)(6) witness testifying that he could not think of another asbestos bankruptcy in which a claim by an entity that had issued a supersedeas bond or letter of credit was treated as an indirect asbestos claim subject to a payment percentage).

secured.[46]  The Disclosure Statement states that the estimated amount of all secured claims in

Class 2 is only $4.7 million,[47] which indicates that the Plan is not taking into consideration the

Letter of Credit securing Grace's payment of Fireman's Fund's Surety Claim.  The remaining

collateral under the Letter of Credit is now approximately $11.2 million.  To the extent that the

Plan disregards the secured portion of Fireman's Fund's Surety Claim, and treats the entire claim

as an unsecured Indirect PI Trust Claim notwithstanding the existence of the Letter of Credit

protecting Fireman's Fund, the Plan violates § 1122(a).

> **3.      The Plan violates §§ 1123(a)(3) and 1123(a)(4) because it fails to specify the treatment of Fireman's Fund's Surety Claim, and it discriminates among claimants within the same class.**

Section 1123(a)(3) of the Bankruptcy Code requires that a plan must specify "the

treatment of any class of claims or interests that is impaired under the plan."  Further, Code

§ 1123(a)(4) requires that a plan must "provide the same treatment for each claim or interest of a

particular class."  But the Plan fails to satisfy both of these requirements as to the Surety Claim,

should it remain in Class 6.

Class 6 includes two separate types of claims, Asbestos PI Claims and Indirect PI

Trust Claims.  The Plan, however, only specifies the treatment of Asbestos PI Claims, stating in

§ 3.1.6 that "All Asbestos PI Claims shall be resolved in accordance with the terms, provisions,

and procedures of the Asbestos PI Trust Agreement and the Asbestos PI TDP."  While Section V

of the TDPs sets out detailed procedures for the processing and payment of Asbestos PI Claims,

TDP § 5.6 states that "Indirect PI Trust Claims that have not been disallowed, discharged, or

---

[46]   *See* Fireman's Fund's Proof of Claim No. 15715 (stating that the claim is supported by a letter of credit in the amount of $13,000,000).  As noted above, a portion of the Letter of Credit was previously drawn down to pay premiums to keep the Bond in force.

[47]   Disclosure Statement § 1.2.1, at p.6.

otherwise resolved by prior order of the Bankruptcy Court shall be processed in accordance with procedures *to be developed and implemented by the Trustees*."[48]  In other words, rather than specify now how Indirect PI Trust Claims will be treated post-confirmation, the Plan provides that the Trustees will make it up as they go along.

As a consequence of the Plan's failure to set forth the particulars of any mechanism for allowance or payment of the type of Indirect PI Trust Claim that Grace contends Fireman's Fund holds, there is no way to tell how such claims will be treated.  The Plan's failure to specify how and when Indirect PI Trust Claims will be paid violates the requirements of § 1123(a)(3).[49]

Because the Plan and TDPs are explicit as to the treatment of tort-based Asbestos PI Claims, which are also classified in Class 6, the failure to specify the treatment of Indirect PI Trust Claims suggests that they will not be treated in the same manner as "direct" Asbestos PI Trust claims.  What little the Plan contains about the treatment of Indirect PI Trust Claims plainly demonstrates that Indirect PI Trust Claims, although classified within the same class as "direct" Asbestos PI Claims, will not be treated the same as those claims, contrary to the requirements of § 1123(a)(4).

Specifically, a direct claimant can be paid simply based on its rights under state law.  Indirect PI Trust Claimants, however, must establish more than a right to payment under state law, as the TDP requires holders of such claims to also prove that they paid a liability that would otherwise be payable by the Trust.  Moreover, direct claimants are immediately eligible

---

[48]    TDP § 5.6 (emphasis added).

[49]    *See*, *e.g*,. In re Butler, 42 B.R. 777, 780 (Bankr. D. Ark. 1984) (§ 1123(a)(3) "requires the plan to specify the amount of payments to be made and the date when such payments will be due," and the proposed plan in that case failed to satisfy that requirement because "[n]ot one sentence" specified the payments that a certain class of claims will receive, or when those claims would be paid).

for payment in FIFO order "based on the date their liquidation becomes final."[50]  Indirect PI

Trust Claims, on the other hand, will not be paid unless, among other things, the claimant

asserting an Indirect PI Trust Claim obtains a release of the PI Trust from all liability to the

direct claimant.[51]  Such a requirement may make sense for tort system co-defendants of Grace

whose "indirect" claim against Grace is based on a contention that their settlement payments to

asbestos claimants resolved Grace's liability as well.  But such an extracontractual requirement

cannot be justified with respect to Fireman's Fund, whose Surety Claim against Grace will result

from Fireman's Fund paying a judgment under compulsion, not entering into a settlement.  If the

Edwards plaintiffs still have a judgment after appellate proceedings are completed, they will

simply demand payment of the judgment, and cannot be compelled also to execute releases.  The

increased burdens placed on Fireman's Fund as a purported Indirect PI Trust Claimant

demonstrates inequality of treatment in violation of § 1129(a)(4).[52]

            The court's ruling in In re Smith is instructive.[53]  In that case, the debtor placed

the claim of a plaintiff who had sued the debtor in the same class with all other unsecured

creditors.  The plan proposed to pay unsecured creditors in full within 30 days of confirmation,

except for the plaintiff and the holder of one other "disputed" claim.  Those two creditors were to

receive nothing under the plan, but would retain the right to pursue their causes of action outside

of the bankruptcy forum.  Later, the debtor proposed to modify the plan, leaving the plaintiff as

the only class member who would not be paid shortly after confirmation.  In response to the

---

[50]    TDP § 5.1(c).

[51]    Id. § 5.6.

[52]    See AOV Industries, 792 F.2d at 1152 ("It is disparate treatment when members of a common class
are required to tender more valuable consideration – be it their claim against specific property of the
debtor or some other cognizable chose in action – in exchange for the same percentage of recovery").

[53]    In re Smith, 123 B.R. 863 (Bankr. C.D. Cal. 1991).

proposed modification, the bankruptcy court found that "[the plaintiff's treatment] alone, is enough to deny the Debtor confirmation of her plan, for it violates the dictates of 11 U.S.C. § 1123(a)(4) which requires that all claims within a given class receive 'the same treatment.'"[54]

Similarly, this Court in Planet Hollywood rejected a proposed plan modification that would have treated one creditor with a "disputed claim" differently from other creditors in the same class with "disputed claims," on the ground that the modification would have violated § 1123(a)(4).[55]  Originally, the plan required payment of only "allowed claims," defined as claims that had been allowed by a final order no longer subject to appeal.  The debtor did not make payments to a particular unsecured creditor because the debtor appealed an order allowing that creditor's claim.  The creditor moved to modify the plan to provide that its claim would be paid immediately, or that payments to it would be put in escrow until the appeal was completed.  The court found that the proposed modification was improper because it would have treated that one creditor differently than other creditors of the same class who also had "disputed claims."[56]

As in Smith and Planet Hollywood, the Plan's failure to specify how Indirect Asbestos PI Claims will be processed and paid, despite the detailed treatment set forth in the Plan for holders of direct Asbestos PI Claims, and its imposition of burdens on holders of Indirect Asbestos PI Claims that exceed those placed on holders of direct Asbestos PI Claims in order to recover on their claims, necessarily means that holders of Indirect Asbestos PI Claims will not receive the "same treatment" as holders of direct Asbestos PI Claims who are in the same class.  The Plan's failure to ensure the "same treatment" of Indirect Asbestos PI Claims and

---

[54]  Id. at 865.

[55]  In re Planet Hollywood Int'l, 274 B.R. 391, 401 (Bankr. D. Del. 2001).

[56]  Id.

direct Asbestos PI Claims in the same class violates the requirements of § 1123(a)(4), thereby prohibiting confirmation of the Plan.

**B.      The Plan Does Not Satisfy The Requirement Under § 1129(a)(3) That It Be Proposed In "Good Faith And Not By Any Means Forbidden By Law."**

Section 1129(a)(3) of the Bankruptcy Code explicitly conditions confirmation of a Chapter 11 plan on a judicial finding that the plan was "proposed in good faith and not by any means forbidden by law." The treatment of Fireman's Fund's claim under the Plan demonstrates that Plan Proponents cannot meet this requirement.

**1.      The Plan was not proposed in good faith.**

The good faith requirement "is designed to 'prevent abuse of the bankruptcy laws and protect jurisdictional integrity.'"[57] Thus, for a plan to be proposed in good faith, it must exhibit "a fundamental fairness in dealing with one's creditors."[58] Fundamental fairness "'requires that the plan be proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.'"[59]

Here, Grace is improperly using the Plan as a means of transferring its payment obligation, as principal obligor to the Edwards plaintiffs (should their judgment be affirmed on appeal), to Fireman's Fund – the secondary obligor, pursuant to the Bond – in breach of Grace's obligation "to refrain from conduct that impairs the expectation of the secondary obligor that the principal obligor will honor its duty of performance."[60] Proposing a Plan that would effect such

---

[57]    In re Walker, 165 B.R. 994, 1001 (E.D. Va. 1994) (citation omitted).

[58]    In re Jorgensen, 66 B.R. 104, 109 (9th Cir. B.A.P. 1986).

[59]    In re ACandS, Inc., 311 B.R. 36, 43 (Bankr. D. Del. 2004), quoting Coram Healthcare, 271 B.R. at 234 (internal quotation marks omitted).

[60]    Restatement (Third) of Suretyship § 21(1)(b).

an improper transfer, in light of Grace's admitted knowledge of the Surety Claim and its
acknowledgment that it is "not aware of any facts" suggesting that the Indemnity Agreement is
not enforceable according to its terms," is not in good faith.[61]  That the Plan was not proposed in
good faith is further evidenced by the Plan Proponents' decision to draft the Plan in a way that (i)
violates Fireman's Fund's contractual rights under its Indemnity Agreement, as set forth below,
and (ii) eliminates, by fiat, Fireman's Fund's statutorily-preserved setoff rights.

      Further, Grace sponsored fundamentally unfair voting procedures that have
effectively disenfranchised Fireman's Fund.  Grace (i) classified Fireman's Fund's claim in the
wrong class, in order to avoid Grace's obligation to pay Fireman's Fund's claim in full together
with other Class 9 claims, and (ii) valued Fireman's Fund's $43+ million claim at just $1.00 for
purposes of voting.  Although Grace later agreed that Fireman's Fund's claim could be
temporarily allowed at $3.86 million for purposes of casting a Class 6 vote,[62] the results of the
balloting process show that classifying Fireman's Fund's claim within Class 6 prevented it from
having any meaningful voice on the Plan's inappropriate treatment of its rights.  Class 6 was
composed overwhelmingly of asbestos personal injury plaintiffs who submitted votes valued at
more than $4.2 billion.[63]  99.5% of the Class 6 claimants voted in favor of the Plan.[64]  Lumping
Fireman's Fund within Class 6 (instead of in Class 9, as Fireman's Fund has requested in its
Disputed Classification Declaration (Dkt. No. 21774)) thus had the effect of reducing Fireman's
Fund's substantial opposition to the Plan to a mere whisper.

---

[61]   Finke Tr. at 277:20-278:2 (testimony of Grace's Rule 30(b)(6) witness).  *See also id.* at 283:15-21.

[62]   *See* Order Approving Stipulation Between Debtors And Fireman's Fund Insurance Company For
Temporary Allowance Of Proof Of Claim Pursuant To Bankruptcy Rule 3018 (Dkt. No. 22243).

[63]   *See* Declaration of Kevin A. Martin Certifying Tabulation Of Ballots Regarding Vote On First
Amended Joint Plan Of Reorganization (Dkt. No. 22020) ("Martin Decl.") at Exh. A.

[64]   *Id.*

By disenfranchising Fireman's Fund so that its voice could not be heard, and proposing a Plan that substantially harms Fireman's Fund's rights with respect to the Surety Claim despite the Plan Proponents' undisputed knowledge of the Surety Claim, Grace demonstrated that this Plan was not proposed in good faith.  As a result, Grace cannot satisfy the confirmation requirement of § 1129(a)(3), and therefore the Plan cannot be confirmed.

### 2.    The Plan violates Fireman's Fund's contractual rights under applicable non-bankruptcy law

Courts that have considered the language "forbidden by law" in § 1129(a)(3) have held that it incorporates all applicable non-bankruptcy law.[65]  Here, the Plan violates § 1129(a)(3) because it contains provisions that violate Fireman's Fund's contractual rights under state law.

As discussed above, the Plan burdens Fireman's Fund's ability to recover on its Surety Claim by adding additional requirements not found in the Indemnity Agreement between Grace and Fireman's Fund.  Under the Indemnity Agreement, Grace agreed to reimburse Fireman's Fund for any loss Fireman's Fund suffers under the Bond, which would occur if Fireman's Fund were to pay any portion of a final judgment in the Edwards case in the event Grace fails to do so.  But the Plan imposes a new extracontractual requirement on Fireman's Fund as a pre-condition to Fireman's Fund obtaining any payment on its claim against Grace, which is that Fireman's Fund must first obtain a release in favor of the Asbestos PI Trust from the Edwards plaintiffs.  Nothing in the Indemnity Agreement requires Fireman's Fund to obtain

---

[65]   In re Zenith Elec. Corp., 241 B.R. 92, 108 (Bankr. D. Del. 1999) (determining whether a transaction between a controlling shareholder and its corporation contemplated in the debtor's plan violated Delaware corporations law); In re Cajun Elec. Power Coop., Inc., 230 B.R. 715, 737 (M.D. La. 1999) (plan did not satisfy the good faith requirement of § 1129(a)(3) because it attempted to improperly modify contracts, contrary to state law).

any such releases before it is entitled to be indemnified by Grace.  Moreover, as discussed above, it is highly unlikely that if Fireman's Fund pays a final judgment in favor of the Edwards plaintiffs in conformity with the Bond, the Edwards plaintiffs would agree to sign releases in favor of Grace.  At a minimum, they cannot be compelled to do so.  In that circumstance, the Plan would preclude Fireman's Fund from recovering from Grace under the Indemnity Agreement, thus overturning the entire structure of the transaction under which Fireman's Fund agreed to issue the Bond in favor of Grace and to protect Grace's assets from execution, but only on the condition that Grace remain ultimately financially liable for the judgment.

The Plan also purports to usurp Fireman's Fund's "exclusive right" under the Indemnity Agreement to "decide and determine whether any claim, liability, suit or judgment made or brought against the Surety [Fireman's Fund] or the Indemnitors [Grace] or any one of them on any such Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed"[66] – a right that is separately recognized under Texas law.[67]  Under § 7.2.4 of the Plan, however, all Asbestos PI Trust Causes of Action shall be "indefeasibly vested in" the Asbestos PI Trust, and pursuant to § 7.2.8, the Asbestos PI Trust is empowered to "initiate, prosecute, defend, and resolve all legal actions . . . related to any asset, liability, or responsibility of the Asbestos PI Trust."  The reason the Indemnity Agreement and Texas law give Fireman's Fund the right to assume control of the bonded appeal is to protect itself from financial risk if the appellant (Grace), having secured the Bond, attempts to evade its responsibility to prosecute the appeal.  But the Plan would wrest control of the appeal from Grace and Fireman's Fund and hand

---

[66]    Indemnity Agreement at ¶ 5.

[67]    See, e.g., In re Lumbermens Mutual, 184 S.W.3d 718, 720-21, 724 (Tex. 2006) (permitting surety that had issued a $29 million supersedeas bond to intervene in the principal's appeal in order to assert a potentially dispositive issue that the principal had abandoned, in order to "protect[ ] the funds that the underlying judgment puts at risk").

it over to the Trust, which – to the extent it can evade Fireman's Fund's setoff rights – may not have any financial incentive to continue prosecuting the appeal.  Given that the Trust is being established as a mechanism to streamline the claims resolution process, there is no reason to believe that it will have any incentive to actively pursue the Edwards appeal (particularly if, pursuant to other provisions of the Plan, Fireman's Fund rather than Grace or the Trust can be stuck with ultimate responsibility for payment of the judgment).  This is particularly troubling in the face of testimony by Grace's Rule 30(b)(6) witness that Grace believes that it is likely to be meritorious in the Edwards appeal and that the appeal should be pursued.[68]

In fact, there would be an obvious element of self-dealing involved if the Trust were the one to decide whether to continue the appeal.  Pre-bankruptcy, Grace had every incentive to press its appeal of an erroneous judgment against it since, one way or the other, Grace would be financially responsible for payment of the judgment (either by paying a judgment directly, or by reimbursing Fireman's Fund as required by the Indemnity Agreement).  But the Trust has no similar concerns, particularly if the Plan can be twisted to force Fireman's Fund to pay the judgment while, at the same time, stripping it of both (i) its contractual right to be fully reimbursed (through an unlawful classification of its Surety Claim) and (ii) its statutory right to assert the defense of setoff.  The self-dealing embodied by these Plan provisions is also strong evidence that the Plan does not meet the requirement of § 1129(a)(3) that it be proposed in good faith.

The Plan's treatment of Fireman's Fund's Surety Claim also turns the supersedeas bond relationship on its head, first by purporting to make Fireman's Fund the primary obligor to the Edwards plaintiffs when, in reality, it is merely a guarantor of Grace's potential obligation to

---

[68]   See Finke Tr. at 283:10-12.

them, and second by relegating Fireman's Fund to a cents-on-the-dollar recovery from the

Asbestos PI Trust even though Grace agreed to fully indemnify Fireman's Fund against any loss

Fireman's Fund may suffer by virtue of guaranteeing Grace's performance.  That is not the

relationship that Fireman's Fund agreed to when it issued the Bond and required Grace to enter

into the Indemnity Agreement, and the premium that Grace is obligated to pay for the Bond does

not reflect risk of the magnitude potentially created by the Plan.[69]

Therefore, the Plan cannot be confirmed because it improperly forces Fireman's

Fund to take on Grace's principal obligation under the Surety Bond, and because – by classifying

Fireman's Fund's Surety Claim in Class 6 instead of in Class 9 – it deprives Fireman's Fund of

the right to be paid in full.

## II.    The Plan Violates § 524(g) By Improperly Channeling Fireman's Fund's Indemnity Claim To The Asbestos PI Trust

Section 524(g) affords broad injunctive relief to a debtor who can meet the

specific requirements set forth therein.  That relief applies, however, only to "the liabilities of a

debtor which at the time of entry of the order for relief has been named as a defendant in

personal injury, wrongful death, or property-damage actions seeking recovery for damages

allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products."[70]

Thus, while § 524(g) may afford broad relief, it is not infinite, and specifically only applies to a

---

[69]    Restatement (Third) of Suretyship § 21 cmt. a (while a secondary obligor has a right of reimbursement from the primary obligor, "realization of this right obviously involves expense and uncertainty").  *See also* <u>Matter of Farley Inc.</u>, 236 F.3d 359, 361 (7th Cir. 2000) (reversing orders disallowing surety's claim for reimbursement from debtor for payment of workers' compensation benefits to debtor's employees, because debtor's payment of premiums for surety bond did not satisfy all of its obligations to the surety or foreclose surety from recovering from debtor's estate; premium was to cover cost of carrying out surety's secondary obligation and the risk associated with attempting to recover from the debtor).

[70]    11 U.S.C. § 524(g)(2)(B)(i)(I).

debtor's alleged asbestos-related personal injury, wrongful death, or property damage liability. It cannot be construed so broadly as to include discrete contractual claims, such as Fireman's Fund's, arising from a financial instrument that was intended by the parties only to guarantee satisfaction of a judgment against Grace, and to preserve Grace's assets in the process.

Yet the Asbestos PI Channeling Injunction described in § 8.2.1 of the Plan purports to sweep Fireman's Fund's contractual claim for indemnity into the Asbestos PI Trust, and to enjoin Fireman's Fund from asserting its Surety Claim directly against its contractual counter-party, Grace. Channeling Fireman's Fund's Surety Claim to the Trust is antithetical to the purposes for which the channeling injunction/trust mechanism was enacted. As the Third Circuit explained in Combustion Engineering:

> Channeling asbestos-related claims to a personal injury trust relieves the debtor of the uncertainty of future asbestos liabilities. This helps achieve the purpose of Chapter 11 by facilitating the reorganization and rehabilitation of the debtor as an economically viable entity. At the same time, the rehabilitation process served by the channeling injunction supports the equitable resolution of asbestos-related claims. In theory, a debtor emerging from a Chapter 11 reorganization as a going-concern cleansed of asbestos liability will provide the asbestos personal injury trust with an "evergreen" source of funding to pay future claims. This unique funding mechanism makes it possible for future asbestos claimants to obtain substantially similar recoveries as current claimants in a manner consistent with due process.[71]

The type of trust authorized under § 524(g) was conceived of to handle massive numbers of future personal injury claims where the extent of the debtor's future liability could not be determined, and to streamline the process of providing fair and reasonable compensation to injured persons. Section 524(g)(2)(B)(ii)(V) requires that the trust mechanism "provide reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner." But nothing

---

[71] In re Combustion Engineering, Inc., 391 F.3d 190, 234 (3d Cir. 2004).

in the Disclosure Statement or the Plan suggests that Grace is likely to confront an overwhelming number of claims that are "similar" to Fireman's Fund's Surety Claim under the Indemnity Agreement.  In fact, as Fireman's Fund will demonstrate during the Phase II confirmation hearing, the Surety Claim is unique among all the claims against Grace.

Therefore, applying the channeling injunction mechanism of § 524(g) to Fireman's Fund's Surety Claim, where Grace's potential liability is both contractual and limited, is an abuse of the purpose for which § 524(g) was enacted.

### CONCLUSION

For the reasons stated above, and as Fireman's Fund will demonstrate through largely undisputed evidence at trial, the Plan fails to satisfy the requirements of § 1129 of the Bankruptcy Code and cannot be confirmed as written.  The Court should only confirm the Plan if (i) Fireman's Fund's Surety Claim is classified and treated as a Class 9 claim entitled to 100% payment like other claims in Class 9, and (ii) the Plan is modified to preserve Fireman's Fund's setoff rights.

Dated:  July 13, 2009                    Respectfully submitted,


                                         /s/ John D. Demmy
                                         John D. Demmy (DE Bar No. 2802)
                                         STEVENS & LEE, P.C.
                                         1105 North Market Street, 7th Floor
                                         Wilmington, DE 19801
                                         Telephone:  (302) 425-3308
                                         Telecopier:  (610) 371-8515
                                         Email:  jdd@stevenslee.com

                                         Mark D. Plevin
                                         Leslie A. Davis
                                         Tacie H. Yoon
                                         CROWELL & MORING LLP
                                         1001 Pennsylvania Avenue, N.W.
                                         Washington, D.C. 20004
                                         Telephone:  (202) 624-2500

- 29 -

Telecopier:  (202) 628-5116
Email:  mplevin@crowell.com
Email:  ldavis@crowell.com
Email:  tyoon@crowell.com

Leonard P. Goldberger
Marnie E. Simon
(Members PA Bar)
STEVENS & LEE, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA  19103-1702
Telephone:  (215) 751-2864/2885
Telecopier:  (610) 371-7376/8505
Email:  lpg@stevenslee.com
Email:  mes@stevenslee.com

Attorneys for Fireman's Fund Insurance Company

8135277.02