# EXHIBIT 1

```
   IN THE UNITED STATES BANKRUPTCY COURT
      FOR THE DISTRICT OF DELAWARE
_____X
In Re:                          Chapter 11


                                Case No.
                                01-01139 JKF
W.R. Grace & Co., et al.,

                                (Jointly
             Debtors.           Administered)
_____X


         * * * CONFIDENTIAL * * *

                 -  -  -

            May 13, 2009

                 -  -  -

      DEPOSITION of RICHARD FINKE, held
at the offices of Kirkland & Ellis, 655
Fifteenth Street, N.W., Washington, DC,
commencing at 9:32 A.M., on the above
date, before Lisa Lynch, a Registered
Merit Reporter, New Jersey Certified Court
Reporter, License No. XI00825, and
Certified Realtime Reporter

                 -  -  -

      MAGNA LEGAL SERVICES, LLP

      7 Penn Center, 8th Floor
         1635 Market Street
         Philadelphia, PA  19103
```

Page 2

```
 1  A P P E A R A N C E S:
 2
    DRINKER BIDDLE & REATH, LLP
 3  BY: MICHAEL F. BROWN, ESQUIRE
    One Logan Square
 4  18th and Cherry Streets
    Philadelphia, Pennsylvania 19103-6996
 5  (brownmf@dbr.com)
    Representing OneBeacon America Insurance
 6  Company, Seaton Insurance Company,
    Government Employees Insurance Company,
 7  Columbia Insurance Company f/k/a Republic
    Insurance Company
 8
 9  CAPLIN & DRYSDALE, CHARTERED
    BY: JEFFREY A. LIESEMER, ESQUIRE
10  One Thomas Circle NW
    Suite 1100
11  Washington, DD 20005
    202.862.7801
12  (jal@capdale.com)
    Representing Grace, Official Committee of
13  Asbestos Personal Injury Claimants ("ACC")
14
    KIRKLAND & ELLIS, LP
15  BY: BARBARA M. HARDING, ESQUIRE
        THEODORE L. FREEDMAN, ESQUIRE
16  655 Fifteenth Street, N.W.
    Washington, DC  20005-5793
17  202.879.5081
    (barbara.harding@kirkland.com)
18  (tfreedman@kirkland.com)
    Representing the Debtors
19
20  THE LAW OFFICES OF JANET S. BAER, P.C.
    BY: JANET S. BAER, ESQUIRE
21  70 West Madison Street
    Suite 2100
22  Chicago, Illinois 60602
    jbaer@jsbpc.com
23  Representing W.R. Grace
24
```

Page 3

```
 1  A P P E A R A N C E S: (continued)
 2  SIMPSON THACHER & BARTLETT, LLP
    BY: ELISA ALCABES, ESQUIRE
 3  425 Lexington Avenue
    New York, New York 10017-3954
 4  212.455.2846
    (ealcabes@stblaw.com)
 5  Representing Travelers Casualty and Surety
    Company
 6
 7  VORYS, SATER, SEYMOUR AND PEASE, LLP
    BY: WILLIAM J. POHLMAN, ESQUIRE*
 8      PHILIP DOWNEY, ESQUIRE*
    (*VIA TELECONFERENCE)
 9  52 East Gay Street
    Columbus, Ohio 43215
10  614.464.8349
    (wjpohlman@vorys.com)
11  Representing The Scotts Company, LLC
12
    LEWIS, SLOVAK & KOVACICH, PC
13  BY: TOM L. LEWIS, ESQUIRE
    P.O. Box 2325
14  723 Third Avenue
    Great Falls, Montana 59403
15  406.761.5595
    tom@lsklaw.net
16  Representing the Libby Claimants
17
    SPEIGHTS & RUNYAN
18  BY: DANIEL H. SPEIGHTS, ESQUIRE*
    (*VIA TELECONFERENCE)
19  200 Jackson Avenue East
    P.O. Box 685
20  Hampton, South Carolina 29924
    803.943.4444
21  (dspeights@speightsrunyan.com)
    Representing Anderson Memorial Hospital
22
23
24
```

Page 4

```
 1  A P P E A R A N C E S:(continued)
 2  MENDES & MOUNT, LLP
    BY: ALEXANDER MUELLER, ESQUIRE
 3  750 Seventh Avenue
    New York, New York 10019
 4  212.261.8296
    (alexander.mueller@mendes.com)
 5  Representing London Market Companies
 6
    FORD MARRIN ESPOSITO & WITNEYER & GLESER
 7  BY: ELIZABETH M. DeCRISTOFARO, ESQUIRE*
    (*VIA TELECONFERENCE)
 8  Wall Street Plaza
    New York, New York 10005-1875
 9  212.269.4900
    Representing Continental Casualty Company
10  and Continental Insurance Company
11
    BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
12  BY: MATTHEW I. KRAMER, ESQUIRE*
    (*VIA TELECONFERENCE)
13  200 South Biscayne Boulevard
    Suite 2500
14  Miami, Florida 33131-5340
    305.450.7246
15  (mkramer@bilzin.com)
    Representing Property Damage Committee
16
17  STROOCK & STROOCK & LAVAN, LLP
    BY: ARLENE G. KRIEGER, ESQUIRE*
18      LEWIS KRUGER, ESQUIRE*
    (*VIA TELECONFERENCE)
19  180 Maiden Lane
    New York, New York 10038-4982
20  212.806.5400
    (akrieger@stroock.com)
21  Representing Official Committee of
    Unsecured Creditors
22
23
24
```

Page 5

```
 1  A P P E A R A N C E S: (continued)
 2
    CROWELL & MORING, LLP
 3  BY: MARK D. PLEVIN, ESQUIRE
        NOAH S. BLOOMBERG, ESQUIRE
 4  1001 Pennsylvania Avenue, N.W.
    Washington, DC 20004-2595
 5  202.624.2913
    (mplevin@crowell.com)
 6  (nbloomberg@crowell.com)
    Representing Fireman's Fund Insurance
 7  (Surety Bond)
 8
    STEVENS & LEE, P.C.
 9  BY: MARNIE E. SIMON, ESQUIRE
    1818 Market Street, 29th Floor
10  Philadelphia, Pennsylvania 19103-1702
    215.751.2885
11  (mes@stevenslee.com)
    Representing Fireman's Fund Insurance
12
13  LAW OFFICES OF ALAN B. RICH
    BY: ALAN B. RICH, ESQUIRE
14  Elm Place, Suite 4620
    1401 Elm Street
15  Dallas, Texas 75202
    214.744.5100
16  (arich@alanrichlaw.com)
    Representing Property Damage PCR
17
18  CONNOLLY BOVE LODGE & HUTZ, LLP
    BY: JEFFREY C. WISLER, ESQUIRE
19  The Nemours Building
    1007 North Orange Street
20  P.O. Box 2207
    Wilmington, Delaware 19899
21  302.888.6528
    (jwisler@cblh.com)
22  Representing Maryland Casualty
23
24
```

Page 6

```
 1   A P P E A R A N C E S: (continued)
 2   ECKERT SEAMANS CHERIN & MELLOTT, LLC
     BY:  EDWARD J. LONGOSZ, II, ESQUIRE
 3   1747 Pennsylvania Avenue, N.W.
     12th Floor
 4   Washington, DC 20006
     202.659.6619
 5   (elongosz@eckertseamans.com)
     Representing Maryland Casualty and Zurich
 6
 7   WILEY REIN, LLP
     BY:  RICHARD A. IFFT, ESQUIRE
 8   1776 K Street NW
     Washington, DC 20006
 9   202.719.7170
     (rifft@wileyrein.com)
10   Representing Maryland Casualty and Zurich
11
     COZEN O'CONNOR
12   BY:  JACOB C. COHN, ESQUIRE
     1900 Market Street
13   Philadelphia, Pennsylvania 19103-3508
     215.665.2147
14   (jcohn@cozen.com)
     Representing Federal Insurance Company
15
16   ORRICK HERRINGTON & SUTCLIFFE, LLP
     BY:  PERI N. MAHALEY, ESQUIRE
17   Columbia Center
     1152 15th Street, N.W.
18   Washington, DC 20005-1706
     202.339.8516
19   (pmahaley@orrick.com)
     Representing PI Future Claimants'
20   Representative
21
     CUYLER BURK, P.C.
22   BY:  ANDREW CRAIG, ESQUIRE
     4 Century Drive
23   Parsippany, New Jersey 07054
     973.734.3200
24   (acraig@cuyler.com)
```

Page 7

```
 1   A P P E A R A N C E S: (continued)
 2   O'MELVENY & MEYERS LLP
     BY:  TANCRED SCHIAVONI, ESQUIRE*
 3   (*VIA TELEPHONE)
     7 Times Square
 4   New York, New York 10036
     212.326.2267
 5   (tschiavoni@omm.com)
     Representing Arrowood Indemnity Company
 6
 7   WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
     BY:  KEVIN J. MANGAN, ESQUIRE*
 8   (*VIA TELECONFERENCE)
     222 Delaware Avenue
 9   Suite 1501
     Wilmington, Delaware 19801
10   302.252.4361
     (kmangan@wcsr.com)
11   Representing State of Montana
12
     PEPPER HAMILTON, LLP
13   BY: LINDA J. CASEY, ESQUIRE*
     (*VIA TELECONFERENCE)
14   3000 Two Logan Square
     Philadelphia, Pennsylvania 19103
15   215.981.4000
     (caseyl@pepperlaw.com)
16   Representing BNSF Railway Company
17   KRAMER LEVIN NAFTALIS & FRANKEL, LLP
     BY:  SARAH SCHINDLER-WILLAIMS, ESQUIRE*
18   (*VIA TELECONFERENCE)
     1177 Avenue of the Americas
19   New York, New York 10036
     212.715.9515
20   (SSchindlerWilliams@kramerlevin.com)
     Representing the Equity Committee
21
22
23
24
```

Page 8

```
 1            INDEX
            EXAMINATION
 2
     Witness Name                 Page
 3   RICHARD FINKE
 4     BY MR. BROWN               12,333
 5     BY MS. ALCABES             129
 6     BY MR. LEWIS               187
 7     BY MR. PLEVIN              265
 8     BY MR. WISLER              285
 9     BY MR. COHN                289
10     BY MR. MANGAN              296
11     BY MR. DOWNEY              305, 371
12     BY MR. SCHIAVONI           343
13     BY MR. SPEIGHTS            347
14
15           EXHIBITS
     EXHIBIT    DESCRIPTION              ID
16
     Exhibit 1  Notice of Deposition of   16
17      Debtors Pursuant to Rule
        30(b)(6)
18
     Exhibit 2  Document entitled W.R.    16
19      Grace/Confirmation Hearing
        30(b)(6) Deposition Notice
20
     Exhibit 3  SEC Form 8-K              25
21
     Exhibit 4  Exhibit 6 to Exhibit Book, 41
22      Asbestos Insurance
        Transfer Agreement
23
     Exhibit 5  Exhibit 19 to Exhibit     53
24      Book, Retained Causes of
```

Page 9

```
 1            EXHIBITS
     EXHIBIT    DESCRIPTION              ID
 2
 3   Exhibit 6  Exhibit 2 to Exhibit Book, 55
        Asbestos PI Trust Agreement
 4
     Exhibit 7  Exhibit 4 to Exhibit Book, 55
 5      Trust Distribution
        Procedures
 6
     Exhibit 8  First Amended Joint Plan  70
 7      of Reorganization
 8   Exhibit 9  Exhibit 5 to Exhibit Book, 92
        Schedule of Settled
 9      Asbestos Insurers Entitled
        to 524(g) Protection
10
     Exhibit    Settlement Agreement     98
11   10   Bates stamped OB 1 through
          33
12
     Exhibit    Travelers/Allstate       135
13   11    30(b)(6) deposition notice
14   Exhibit   Travelers 30(b)(6)        136
     12    supplemental deposition
15         notice
16   Exhibit   Grace/Aetna Asbestos      149
     13    Settlement Agreement dated
17         May 22, 1996
18   Exhibit   Exhibit 25 to Exhibit     178
     14    Book, CMO for Class 7A
19         Asbestos PD Claims
20
21
22
23
24
```

Page 10

DEPOSITION SUPPORT INDEX

Direction to Witness Not To Answer
Page  Line    Page  Line
 30    2      37    12
 37    17     39    8
 39    15     369   1

Request For Production of Documents
Page  Line    Page  Line
(None)

Stipulations
Page  Line    Page  Line
(None)

Questions Marked
Page  Line    Page  Line
(None)

_ _ _

Page 11

1  RICHARD FINKE,
2    having been sworn by the Notary
3    Public of the States of New York
4    and New Jersey, was examined and
5    testified as follows:
6           _ _ _
7  EXAMINATION BY
8  MR. BROWN:
9    Q.  Good morning, Mr. Finke.
10 My name is Michael Brown.  I represent One
11 Beacon, Seaton, Geico and Republic for the
12 objecting insurance companies in the Grace
13 bankruptcy.  You've been deposed several
14 times before, correct?
15   A.  Yes, I have.
16   Q.  Okay.  So we can dispense
17 with the formalities of what a
18 deposition's all about?
19   A.  Yes, we can.
20   Q.  Okay.
21       MS. HARDING:  Michael,
22   would you mind if I made a quick
23   statement on the record?
24       MR. BROWN:  Sure.

Page 12

1       MS. HARDING:  I just wanted
2   to make a statement on the record
3   that the debtors have designated
4   Mr. Finke to answer certain
5   appropriate questions related to
6   certain 30(b)(6) topics.
7       As we've indicated, Mr.
8   Finke will be available for seven
9   hours today.  We've also designated
10  Mr. Hughes and Mr. LaForce to
11  answer other 30(b)(6) topic
12  questions.  We are hoping and
13  expecting that the parties seeking
14  to ask questions have coordinated
15  so that we can end in seven hours
16  and we think it's a reasonable
17  expectation.
18      The debtors have reviewed
19  the deposition of Mr. Lockwood and
20  agree, in essence, with Mr.
21  Lockwood's answers with respect to
22  how the Plan operates and so we
23  think and are very hopeful that
24  there will not be a need to go

Page 13

1  further than seven hours to get to
2  the appropriate inquiry as to how
3  the Plan operates.  So I just
4  wanted to get that on the record.
5       MR. BROWN:  Okay.
6  Actually, that's helpful.  Maybe I
7  could follow up with a question for
8  Mr. Finke.
9    Q.  Mr. Finke, have you
10 reviewed Mr. Lockwood's Rule 30(b)(6)
11 deposition transcript?
12   A.  Yes, I have.
13   Q.  Okay.  Is there anything
14 that you read in that transcript that you
15 disagreed with?
16   A.  No, nothing of substance.
17   Q.  Okay.  How about anything
18 not of substance?
19   A.  There are a few occasions,
20 I think, where I either would have worded
21 something differently or where I think Mr.
22 Lockwood may have been either in error --
23 might have been in error depending on
24 whether he was -- depending on the

Page 266

1 counsel for a minute?
2    Q. Sure.
3      (Off the record.)
4    A. The answer is yes, I am.
5    Q. Okay. Mr. Finke, I'd like
6 to first go through some of the background
7 for the bond. Do you understand that
8 there was a lawsuit in Texas against Grace
9 brought by five plaintiffs known
10 collectively as the Edwards case?
11    A. Yes.
12    Q. And that after trial in
13 that case a judgment was rendered in favor
14 of the plaintiffs?
15    A. Yes.
16    Q. And that there was an award
17 of compensatory damages against Grace
18 jointly and severally with Pittsburgh
19 Corning Company?
20    A. Yes, that's my
21 understanding.
22    Q. Also that there was an
23 award of punitive damages against Grace?
24    A. Yes.

Page 267

1    Q. And that the court also
2 awarded post-judgment interest at the rate
3 of, I think, the Texas statutory rate
4 which I believe is about 12 percent?
5    A. That sounds familiar,
6 although I think that's right but I --
7    Q. Are you having a problem
8 with the exact percentage or the fact that
9 there was post-judgment interest?
10    A. Yeah, the exact percentage
11 I'm not aware of.
12    Q. Okay. But you are aware
13 that there was --
14    A. I'm just generally aware
15 that there was, yes, interest running.
16    Q. And Grace appealed that
17 judgment to the Texas Court of Appeals,
18 correct?
19    A. Yes.
20    Q. In doing so, Grace felt
21 that the trial had been infected with
22 errors as set forth in the brief that
23 Grace filed in the Court of Appeals?
24    A. Yes.

Page 268

1    Q. And their brief was
2 something that Grace's counsel was
3 authorized to file on Grace's behalf?
4    A. Yes.
5    Q. Are you familiar with the
6 fact that the appellees never responded to
7 Grace's opening appellate brief because of
8 the automatic stay that followed from
9 Grace's bankruptcy filing?
10    A. Again, I was not aware of
11 that or, if I was, I've forgotten it. I
12 do recall that the appeal -- the timing of
13 the appeal coincided with the filing of
14 the Chapter 11 petition.
15    Q. Are you aware that the
16 appeal is still undecided by the Texas
17 Court of Appeals?
18    A. Correct.
19    Q. And that the Texas Court of
20 Appeals abated the appeal in view of the
21 pendency of the bankruptcy case?
22     MS. HARDING: Object to the
23    form in terms of abated. But if
24    you know the answer, go ahead.

Page 269

1    A. I was not aware of that.
2    Q. In order to appeal the
3 judgment of the trial court to the Texas
4 Court of Appeals, Grace obtained a
5 supercedeas bond, correct?
6    A. Yes.
7    Q. And the purpose of the
8 supercedeas bond was to ensure that the
9 plaintiffs/appellees would be paid in the
10 event that they prevailed in the appeal,
11 correct?
12    A. Yes.
13    Q. The supercedeas bond was
14 issued on Grace's behalf by Fireman's Fund
15 Insurance Company, correct?
16    A. Yes.
17    Q. And in connection with the
18 issuance of the supercedeas bond,
19 Fireman's Fund required that Grace enter
20 into an indemnity agreement with Fireman's
21 Fund, correct?
22    A. Yes, that's my
23 understanding.
24    Q. And in rough summary,

Page 270

1 subject of course to the terms of the
2 indemnity agreement, it provides that, to
3 the extent Fireman's Fund pays under the
4 supercedeas bond, Grace will reimburse
5 Fireman's Fund up to the amount of the
6 bond?
7    A.   Yes, I understand that.
8    Q.   Okay. Are you aware that
9 Fireman's Fund filed a proof of claim that
10 is a contingent claim for any amounts that
11 it is entitled to under the indemnity
12 agreement from Grace in the event that
13 Fireman's Fund pays on the supercedeas
14 bond?
15    A.   That's my understanding,
16 yes.
17    Q.   Has Grace classified that
18 claim by Fireman's Fund under its Plan, to
19 your knowledge?
20    A.   My understanding --
21       MS. HARDING: Object to
22    form but go ahead.
23       THE WITNESS: Sorry.
24    A.   My understanding is that

Page 271

1 that is still under discussion and
2 consideration at Grace.
3    Q.   Okay. If I were to tell
4 you that Fireman's Fund was sent a ballot
5 to vote in Class 6 as an indirect asbestos
6 PI claim, would that surprise you?
7    A.   No, from the standpoint
8 that the bond was issued in connection
9 with an asbestos personal injury case and
10 trial.
11    Q.   Can you identify any other
12 claim that you know of that has been
13 classified by Grace as a Class 6 claim
14 that is based on a contract such as the
15 indemnity agreement between Fireman's Fund
16 and Grace?
17    A.   Let's see.
18       MS. HARDING: You're asking
19    if he can recall, if he knows?
20       MR. PLEVIN: If he knows.
21    A.   There is a claim by, I
22 believe, National Union concerning -- it's
23 not a supercedeas bond or appeal bond but
24 a bond to secure a settlement with some

Page 272

1 asbestos personal injury claimants. I
2 believe the claim they filed based on that
3 bond has been classified as a Class 6.
4    Q.   Was the -- was there an
5 adversary proceeding in the bankruptcy
6 case concerning the allowance and
7 classification of the National Union bond
8 claim?
9    A.   I believe there was.
10    Q.   And was there a settlement
11 approved by the Bankruptcy Court?
12    A.   I believe there was a
13 settlement. I honestly can't remember
14 right now if it was approved by the
15 Bankruptcy Court. It wouldn't surprise me
16 if it was but I just don't recall.
17    Q.   Okay. And as far as you
18 recall, does the settlement between
19 National Union and Grace provide for how
20 the National Union bond claim would be
21 classified?
22    A.   That I don't know.
23    Q.   Your best recollection and
24 understanding as you sit here today is

Page 273

1 that the National Union bond claim is
2 classified as a Class 6 claim?
3    A.   That is my understanding,
4 yes.
5    Q.   Assuming that's the case,
6 can you think of any other contractual
7 claim that has been classified as Class 6
8 besides the Fireman's Fund claim and the
9 National Union claim?
10    A.   Well, when you say
11 "contractual," I don't have a specific
12 claim in mind, but any contractual
13 indemnification claim that is based on an
14 asbestos personal injury claim would be
15 classified as Class 6.
16    Q.   But you can't think of any
17 particular claim as you sit here today
18 that fits that --
19    A.   No.
20    Q.   -- category other than the
21 Fireman's Fund claim?
22    A.   That's correct.
23       MS. HARDING: Are you
24    asking for a specific entity's

Page 274

1 claim?
2     MR. PLEVIN: Yes.
3     MS. HARDING: Is that what
4     you meant?
5     MR. PLEVIN: Or any
6     specific proof of claim.
7  Q.  Now, you said that in
8 response to one of my earlier questions
9 that the classification of the Fireman's
10 Fund claim was under consideration.
11  A.  Yes.
12  Q.  What did you mean by
13 that?
14     MS. HARDING: Well, object
15     to form and to the extent it calls
16     for attorney-client privilege or
17     work product, joint interest
18     privilege, I instruct the witness
19     not to answer. But to the extent
20     that it doesn't, you can answer.
21  A.  I think beyond saying that
22 it is under discussion and under
23 consideration, I don't know that there's
24 anything I could add to that that wouldn't

Page 275

1 disclose privileged communication.
2  Q.  Okay. And pursuant to your
3 counsel's instruction, you don't intend to
4 disclose privileged information, do you?
5  A.  That's correct.
6  Q.  Okay. During the pendency
7 of the bankruptcy case, were any premiums
8 due in order to keep the bond in effect
9 and in place?
10  A.  That I do not know.
11  Q.  Do you know whether during
12 the pendency of the bankruptcy case there
13 were any drawdowns -- well, let me
14 withdraw that question and step back and
15 ask a foundational question.
16    Are you aware that a portion of the
17 bond is secured by a letter of credit
18 issued by Wachovia Bank on behalf of
19 Grace?
20  A.  Yes.
21  Q.  Do you know the amount of
22 the bond when -- rather, the amount of the
23 letter of credit when it was first
24 issued?

Page 276

1  A.  I believe it was about --
2 around 13 million dollars.
3  Q.  Do you know if any part of
4 that letter of credit has been drawn down
5 during the bankruptcy case either to pay
6 premiums on the bond or for any other
7 purpose?
8  A.  My understanding is that it
9 was drawn down in the amount of
10 approximately two million dollars to pay
11 for premiums.
12  Q.  Has Wachovia made a claim
13 against Grace for the portion that it paid
14 under the letter of credit?
15  A.  I don't know.
16     MS. HARDING: Object to
17     form. Go ahead.
18  A.  I don't know.
19  Q.  Do you know when the
20 drawdown of approximately two million
21 dollars occurred?
22  A.  No, I don't.
23  Q.  Does Grace contend that the
24 drawdowns were improper in any way?

Page 277

1     MS. HARDING: Object to
2     form. And to the extent it calls
3     for privileged communications or
4     work product -- I'm not saying it
5     does. I'm just saying to the
6     extent it does...
7     THE WITNESS: Yeah.
8  A.  I don't know the answer.
9  Q.  Focusing on the indemnity
10 agreement between Fireman's Fund and Grace
11 that relates to the supercedeas bond, does
12 Grace contend that the indemnity agreement
13 is unenforceable for any reason?
14     MS. HARDING: Same
15     objection.
16  A.  Yeah, I don't -- I don't
17 know what positions we have taken, if any,
18 with respect to the Fireman's Fund claim.
19 No, I don't know.
20  Q.  Let me move it off
21 contentions and ask whether you're aware
22 of any facts that suggest that the
23 indemnity agreement is not enforceable
24 according to its terms.

Page 282

1 that.
2     When Grace entered into the
3 indemnity agreement with Fireman's Fund
4 with respect to the bond, was Grace
5 entering into that on its own account or
6 on behalf of somebody else as a fiduciary,
7 trustee or other representative?
8     MS. HARDING: Object to
9     form. Attorney-client privilege,
10     work product. To the extent that
11     you can answer without revealing
12     those...
13     A. I'm not personally aware of
14 the circumstances in which Grace entered
15 into that indemnification agreement, but I
16 will add I'm not aware of any
17 circumstances under which it would have
18 entered into it on another's behalf.
19     Q. Does the -- if the Plan is
20 confirmed, does Grace have a position one
21 way or the other as to whether it would
22 continue with the Edwards appeal to the
23 extent that issue is not resolved
24 consensually among the parties to the

Page 283

1 bankruptcy case?
2     MS. HARDING: Object to
3     form and calls for speculation.
4     And to the extent it calls for
5     attorney-client privilege or work
6     product communications, I instruct
7     the witness not to answer.
8     Otherwise, you can answer.
9     A. I will say that, yeah,
10 Grace believes it has a very strong
11 position on the appeal and that the appeal
12 should be pursued.
13     Q. Okay. I think this may be
14 my last question, Mr. Finke.
15     At the time of the negotiations
16 relating to the Plan, was Grace aware of
17 the Edwards appeal, the supercedeas bond
18 issued by Fireman's Fund and the indemnity
19 agreement between Fireman's Fund and
20 Grace?
21     A. Yes.
22     Q. And were those items in
23 fact the subject of discussion among Grace
24 and other parties with whom it negotiated

Page 284

1 the Plan?
2     MS. HARDING: Object to
3     form. And to the extent that it
4     calls for attorney-client
5     privilege, work product, joint
6     interest claims, instruct the
7     witness not to answer.
8     A. I can't answer that
9 question.
10     Q. And is the reason you can't
11 answer it because you don't have knowledge
12 about it or because of your counsel's
13 instruction?
14     A. Because of my counsel's
15 instructions.
16     MR. PLEVIN: I have no
17     further questions. Thank you.
18     (Off the record.)
19 EXAMINATION BY
20 MR. WISLER:
21     Q. Good afternoon, Mr. Finke.
22 My name is Jeffrey Wisler and I represent
23 Maryland Casualty Company and Zurich in
24 these bankruptcy cases.

Page 285

1 You've been designated by Grace to
2 testify on its behalf as to the 17 topics
3 identified by Maryland Casualty in its
4 30(b)(6) deposition notice. Is that
5 correct?
6     A. Yes, I believe so.
7     Q. And you testified earlier
8 that you've reviewed the deposition
9 transcript -- the transcript from Mr.
10 Lockwood's deposition. Is that correct?
11     A. Yes, that is correct.
12     Q. Is there any testimony
13 given by Mr. Lockwood during his
14 deposition relating to those 17 Maryland
15 Casualty topics to which you as the
16 designated Grace representative
17 disagree?
18     (The witness reviews the document.)
19     A. No, I don't recall any.
20     Q. Same question as to Mr.
21 Posner. You listened in on his
22 deposition?
23     A. Correct.
24     Q. Is there any testimony he

Page 334

1 settlement agreement in front of you
2 involving Commercial Union?
3    A.  Yes.
4    Q.  And there was a contractual
5 indemnity provision in there?  Do you
6 recall that?
7    A.  Yes.
8    Q.  And we had a discussion as
9 to what type of claim that was and you
10 indicated that that was an insurer
11 indemnified TDP claim?
12       MR. LIESEMER:  Object to
13    the form.
14    Q.  Do you recall that?
15       MS. HARDING:  Object to
16    form and to the question to the
17    extent that it's maybe mixing
18    apples and oranges; I'm not sure.
19    I'm just confused.
20    A.  I believe -- I don't think
21 I identified it as such.  I think I might
22 have agreed that it fit the definition
23 that's in the TDP.
24    Q.  Yes.  I thought you said

Page 335

1 that's what it was, but maybe I'm wrong.
2    A.  Okay, maybe I'm wrong.  At
3 this hour, it could go either way.
4    Q.  Well, I'm not sure what to
5 make of that.  Maybe I should go fishing
6 here.
7    What I'm driving at, is to the
8 extent that settled asbestos insurance
9 entities have contractual indemnity claims
10 against Grace under their respective
11 settlement agreements, those are
12 classified as Class 6 claims, are they
13 not?
14    A.  Yes.
15       MR. LIESEMER:  Object to
16    form.
17    Q.  That's why my client, One
18 Beacon, got a Class 6 ballot, I presume?
19    A.  Yes.
20    Q.  And that's why my other
21 client, Seaton, got a Class 6 ballot,
22 correct?
23    A.  Yes.
24       MS. HARDING:  Object to

Page 336

1    form.  To the extent you know,
2    but...
3    Q.  So would those be examples
4 of other contractual indemnity claims in
5 response to Mr. Plevin's question to you
6 of earlier today that are classified as
7 Class 6 claims?
8    A.  Yes, I believe they would
9 be.
10    Q.  Okay.  And I think you
11 mentioned -- you reiterated here just a
12 moment ago that the classification of the
13 Fireman's Fund Insurance Company
14 contractual indemnity claim was something
15 that was under discussion, I think was the
16 term you used.
17    A.  Yes, sir.
18    Q.  Is that also true of the
19 contractual indemnity claims held by
20 settled asbestos insurance companies?
21       MS. HARDING:  Object to
22    form.
23    A.  Not to my knowledge.
24    Q.  With respect to the

Page 337

1 Fireman's Fund Insurance Company claim,
2 when you say it's under discussion, do you
3 mean to suggest that it may be classified
4 differently than Class 6?
5       MS. HARDING:  Object to the
6    extent that it calls for
7    attorney-client, work product or
8    joint interest communications.  If
9    you can answer without divulging
10    those, go for it.
11    A.  Yeah, I think that follows
12 from that, that it's some aspect that's
13 under discussion.
14    Q.  Is one of the other
15 classifications being considered Class
16 9?
17    A.  I don't feel I can answer
18 that.
19    Q.  Different subject.
20    Earlier today I was asking you a
21 series of questions regarding Section 7.15
22 in the Plan.  That's the insurance
23 neutrality provision.  We had a lengthy
24 discussion about 7.15 and its interaction

Page 374

1  recess to confer.
2          MR. BROWN:  Can you give us
3  two minutes?
4          MS. HARDING:  We'll try to
5  make it fast.
6          MR. LIESEMER:  Might even
7  be 10.
8          (Recess taken.)
9          MS. HARDING:  No further
10 questions.
11         (Time noted: 6:32 PM)
12             _ _ _

Page 375

1              CERTIFICATE
2
3
4       I HEREBY CERTIFY that the
5  witness was duly sworn by me and
6  that the deposition is a true
7  record of the testimony given by
8  the witness
9
10
11 _____
12     Lisa Lynch, RMR, CCR, CRR, CLR
13     Registered Merit Reporter
14     Certified Court Reporter
15     Certified Realtime Reporter
16     Certified LiveNote Reporter
17     Dated:  May 14, 2008
18
19         (The foregoing
20 certification of this transcript does not
21 apply to any reproduction of the same by
22 any means, unless under the direct control
23 and/or supervision of the certifying
24 reporter.)

Page 376

1         INSTRUCTIONS TO WITNESS
2
3       Please read your deposition over
4  carefully and make any necessary
5  corrections.  You should state the reason
6  in the appropriate space on the errata
7  sheet for any corrections that are made.
8       After doing so, please sign the
9  errata sheet and date it.
10      You are signing same subject to the
11 changes you have noted on the errata
12 sheet, which will be attached to your
13 deposition.
14      It is imperative that you return
15 the original errata sheet to the deposing
16 attorney within thirty (30) days of
17 receipt of the deposition transcript by
18 you.  If you fail to do so, the deposition
19 transcript may be deemed to be accurate
20 and may be used in court.

Page 377

1            - - - - - -
2            E R R A T A
3            - - - - - -
4  PAGE  LINE  CHANGE
5  ____  ____  _____
6  ____  ____  _____
7  ____  ____  _____
8  ____  ____  _____
9  ____  ____  _____
10 ____  ____  _____
11 ____  ____  _____
12 ____  ____  _____
13 ____  ____  _____
14 ____  ____  _____
15 ____  ____  _____
16 ____  ____  _____
17 ____  ____  _____
18 ____  ____  _____
19 ____  ____  _____
20 ____  ____  _____
21 ____  ____  _____
22 ____  ____  _____
23 ____  ____  _____
24 ____  ____  _____

Page 378

1      ACKNOWLEDGMENT OF DEPONENT
2
3     I, RICHARD FINKE, do hereby certify
4  that I have read the foregoing pages,
5  369, and that the same is a correct
6  transcription of the answers given by me
7  to the questions therein propounded,
8  except for the corrections or changes in
9  form or substance, if any, noted in the
10 attached errata sheet.
11
12 _____
13 RICHARD FINKE              DATE
14 Subscribed and sworn
15    to before me this
16    _____ day of _____, 20____.
17
18 My commission expires:_____
19
20 _____
21 Notary Public
22
23
24

Page 379

1         LAWYERS' NOTES
2  PAGE  LINE
3  ____ ____ _____
4  ____ ____ _____
5  ____ ____ _____
6  ____ ____ _____
7  ____ ____ _____
8  ____ ____ _____
9  ____ ____ _____
10 ____ ____ _____
11 ____ ____ _____
12 ____ ____ _____
13 ____ ____ _____
14 ____ ____ _____
15 ____ ____ _____
16 ____ ____ _____
17 ____ ____ _____
18 ____ ____ _____
19 ____ ____ _____
20 ____ ____ _____
21 ____ ____ _____
22 ____ ____ _____
23 ____ ____ _____
24 ____ ____ _____